## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

## MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email: mandolina@whitecase.com
       mlinder@whitecase.com
       laura.baccash@whitecase.com
       blair.warner@whitecase.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email: dabbott@morrisnichols.com
       aremming@morrisnichols.com
       ptopper@morrisnichols.com

*Attorneys for the Debtors and Debtors in Possession*

Dated: September 27, 2021
        Wilmington, Delaware

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, TX 75038.

# TABLE OF CONTENTS

Article I. Definitions and Rules of Interpretation ..........................................................................1

    A.    Definitions............................................................................................................1

    B.    Interpretation; Application of Definitions and Rules of Construction..................42

    C.    Reference to Monetary Figures............................................................................43

    D.    Consent Rights.....................................................................................................43

    E.    Controlling Document .........................................................................................43

Article II. Administrative Expense and Priority Claims ...............................................................44

    A.    Administrative Expense Claims............................................................................44

    B.    Priority Tax Claims...............................................................................................46

Article III. Classification and Treatment of Claims and Interests ................................................46

    A.    Classification of Claims and Interests..................................................................46

    B.    Treatment of Claims and Interests .......................................................................47

    C.    Elimination of Vacant Classes .............................................................................55

    D.    Cramdown.............................................................................................................55

Article IV. Settlement Trust..........................................................................................................55

    A.    Establishment of the Settlement Trust .................................................................55

    B.    Purposes of the Settlement Trust .........................................................................56

    C.    Transfer of Claims to the Settlement Trust...........................................................56

    D.    Transfer of Settlement Trust Assets to the Settlement Trust ................................57

    E.    Settlement Trustee ...............................................................................................59

    F.    Settlement Trust Advisory Committee .................................................................59

    G.    Future Claimants' Representative.........................................................................60

    H.    Trust Distribution Procedures ..............................................................................60

    I.    Post-Effective Date Contributing Chartered Organizations. ................................60

    J.    Post-Effective Date Participating Chartered Organizations. ................................60

    K.    Post-Effective Date Settling Insurance Companies. .............................................61

    L.    Settlement Trust Expenses ...................................................................................61

    M.    Reimbursement by Settlement Trust.....................................................................62

    N.    Trust Defense of TCJC Settlement ......................................................................62

    O.    Assignment of Claims and Defenses ...................................................................63

    P.    Investment Guidelines .........................................................................................63

    Q.    Excess Settlement Trust Assets ...........................................................................63

    R.    Document Agreement ..........................................................................................63

S.      Privileged Information ...................................................................................63

T.      No Liability ...................................................................................................64

U.      U.S. Federal Income Tax Treatment of the Settlement Trust .................64

V.      Institution and Maintenance of Legal and Other Proceedings ..............64

W.      Notation on Claims Register Regarding Abuse Claims...........................64

Article V. Means for Implementation of the Plan..................................................................65

A.      General ...........................................................................................................65

B.      Operations of the Debtors between Confirmation and the Effective Date ...........65

C.      BSA Governance Documents ......................................................................65

D.      Continued Legal Existence of BSA ...........................................................65

E.      Reorganized BSA's Directors and Senior Management..........................65

F.      Dissolution of Delaware BSA .....................................................................65

G.      Due Authorization .......................................................................................65

H.      Cancellation of Interests .............................................................................66

I.      Restatement of Indebtedness.......................................................................66

J.      Cancellation of Liens ...................................................................................66

K.      Effectuating Documents and Further Transactions.................................66

L.      Sources of Consideration for Distributions...............................................67

M.      Calculation of Minimum Unrestricted Cash and Investments ...............67

N.      Resolution of Abuse Claims ........................................................................68

O.      Funding by the Settlement Trust................................................................68

P.      Core Value Cash Pool ..................................................................................68

Q.      Creditor Representative ...............................................................................68

R.      Residual Cash in Core Value Cash Pool....................................................68

S.      Compromise and Settlement of Claims, Interests and Controversies....69

T.      Payment of Coalition Restructuring Expenses ........................................74

U.      Good-Faith Compromise and Settlement...................................................75

V.      Restated Debt and Security Documents.....................................................75

W.      Foundation Loan ..........................................................................................78

X.      BSA Settlement Trust Note .........................................................................79

Y.      DST .................................................................................................................79

Z.      Pension Plan...................................................................................................79

AA.     Single Satisfaction of Allowed General Unsecured Claims .....................80

BB.     Exemption from Certain Transfer Taxes and Recording Fees................80

| | CC. | Non-Monetary Commitments | 80 |

**Article VI. Executory Contracts and Unexpired Leases** ........................................................82

| | A. | Assumption and Rejection of Executory Contracts and Unexpired Leases | 82 |
| | B. | Rejection Damages Claims | 83 |
| | C. | Cure of Defaults under Executory Contracts and Unexpired Leases | 83 |
| | D. | Dispute Resolution | 84 |
| | E. | Contracts and Leases Entered into After the Petition Date | 85 |
| | F. | Insurance Policies | 85 |
| | G. | Compensation and Benefits Programs | 86 |
| | H. | Restoration Plan and Deferred Compensation Plan | 86 |
| | I. | Workers' Compensation Program | 86 |
| | J. | Indemnification Obligations | 87 |
| | K. | Gift Annuity Agreements and Life-Income Agreements | 87 |
| | L. | Modifications, Amendments, Supplements, Restatements, or Other Agreements | 87 |
| | M. | Reservation of Rights | 88 |
| | N. | Nonoccurrence of Effective Date; Bankruptcy Code Section 365(d)(4) | 88 |

**Article VII. Provisions Governing Distributions** ........................................................88

| | A. | Applicability | 88 |
| | B. | Distributions Generally | 88 |
| | C. | Distributions on Account of Certain Claims Allowed as of the Effective Date | 88 |
| | D. | Distributions on Account of Allowed General Unsecured Claims | 88 |
| | E. | Distributions on Account of Disputed Claims Allowed After the Effective Date | 88 |
| | F. | Rights and Powers of Disbursing Agent | 89 |
| | G. | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 89 |
| | H. | Undeliverable and Non-Negotiated Distributions | 90 |
| | I. | Manner of Payment under the Plan | 90 |
| | J. | Satisfaction of Claims | 90 |
| | K. | Minimum Cash Distributions | 90 |
| | L. | Postpetition Interest | 91 |
| | M. | Setoffs | 91 |
| | N. | Claims Paid or Payable by Third Parties | 91 |
| | O. | Compliance with Tax Requirements and Allocations | 92 |

Article VIII. Procedures for Resolving Contingent, Unliquidated, and Disputed Claims............92

    A.    Applicability ....................................................................................................92

    B.    Allowance of Claims.........................................................................................92

    C.    Claims Administration Responsibilities ...........................................................92

    D.    Estimation of Claims........................................................................................93

    E.    No Distributions Pending Allowance ...............................................................93

    F.    Distributions after Allowance ..........................................................................93

    G.    Disputed Claims Reserve .................................................................................93

    H.    Adjustment to Claims Register without Objection ...........................................94

    I.    Time to File Objections to Claims ...................................................................95

    J.    Treatment of Untimely Claims ........................................................................95

Article IX. Conditions Precedent to Confirmation and Effective Date ........................................95

    A.    Conditions Precedent to Confirmation of the Plan ...........................................95

    B.    Conditions Precedent to the Effective Date .....................................................98

    C.    Waiver of Conditions Precedent ......................................................................99

    D.    Substantial Consummation of the Plan...........................................................100

    E.    *Vacatur* of Confirmation Order; Non-Occurrence of Effective Date .................100

Article X. Effect of Plan Confirmation.......................................................................................100

    A.    Vesting of Assets in Reorganized BSA ...........................................................100

    B.    Retention of Certain Causes of Action ...........................................................100

    C.    Binding Effect................................................................................................101

    D.    Pre-Confirmation Injunctions and Stays.........................................................101

    E.    Discharge ......................................................................................................101

    F.    **Channeling Injunction**...............................................................................102

    G.    Provisions Relating to Channeling Injunction ................................................104

    H.    **Insurance Entity Injunction** .....................................................................105

    I.    **Injunction against Interference with Plan** .................................................108

    J.    **Releases** ....................................................................................................108

    K.    **Exculpation** ..............................................................................................113

    L.    **Injunctions Related to Releases and Exculpation** ...........................................113

    M.    Insurance Provisions ......................................................................................114

    N.    Judgment Reduction.......................................................................................114

    O.    Reservation of Rights.....................................................................................116

    P.    Disallowed Claims.........................................................................................116

Q.      No Successor Liability ......................................................................116

R.      Indemnities........................................................................................116

S.      The Official Committees and the Future Claimants' Representative ................117

Article XI. Retention of Jurisdiction............................................................................117

A.      Jurisdiction .......................................................................................117

B.      General Retention .............................................................................118

C.      Specific Purposes .............................................................................118

D.      Courts of Competent Jurisdiction ....................................................121

Article XII. MISCELLANEOUS PROVISIONS .........................................................121

A.      Closing of Chapter 11 Cases ............................................................121

B.      Amendment or Modification of the Plan ..........................................121

C.      Revocation or Withdrawal of Plan....................................................122

D.      Request for Expedited Determination of Taxes................................122

E.      Non-Severability of Plan Provisions.................................................122

F.      Notices ..............................................................................................123

G.      Notices to Other Persons ..................................................................124

H.      Governing Law ..................................................................................124

I.      Immediate Binding Effect..................................................................124

J.      Timing of Distributions or Actions...................................................124

K.      Deemed Acts .....................................................................................124

L.      Entire Agreement ..............................................................................124

M.      Plan Supplement ...............................................................................124

N.      Withholding of Taxes ........................................................................125

O.      Payment of Quarterly Fees................................................................125

P.      Effective Date Actions Simultaneous ...............................................125

Q.      Consent to Jurisdiction......................................................................125

## EXHIBITS

| | |
|---|---|
| Exhibit A | Trust Distribution Procedures |
| Exhibit B | Settlement Trust Agreement |
| Exhibit C | Contributing Chartered Organization Settlement Contribution |
| Exhibit D | Contributing Chartered Organizations |
| Exhibit E | Foundation Loan Facility Term Sheet |
| Exhibit F | Local Council Settlement Contribution |
| Exhibit G | Local Councils |
| Exhibit H | Related Non-Debtor Entities |
| Exhibit I-1 | Hartford Insurance Settlement Agreement |
| Exhibit J-1 | TCJC Settlement Agreement |
| Exhibit K | Non-Participating Chartered Organizations |

## SCHEDULES

| | |
|---|---|
| Schedule 1 | Artwork |
| Schedule 2 | BSA Insurance Policies |
| Schedule 3 | Local Council Insurance Policies |
| Schedule 4 | Oil and Gas Interests |

## PLAN SUPPLEMENT DOCUMENTS

Amended BSA Bylaws
Assumed Contracts and Unexpired Leases Schedule
BSA Settlement Trust Note
Creditor Representative
Directors and Officers of Reorganized BSA
Document Agreement
DST Agreement
DST Note
Foundation Loan Agreement
Leaseback Requirement Agreement
Rejected Contracts and Unexpired Leases Schedule
Restated 2010 Bond Documents
Restated 2012 Bond Documents
Restated Credit Facility Documents
Restated Security Agreement
Settlement Trust Advisory Committee
Initial Special Reviewer

## INTRODUCTION

Boy Scouts of America and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases, hereby propose this plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings ascribed to such terms in Article I.A. The Plan provides for the global resolution of Abuse Claims against the Debtors, Related Non-Debtor Entities, Local Councils, Contributing Chartered Organizations, Settling Insurance Companies, and their respective Representatives. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. The Plan is also proposed in accordance with the JPM / Creditors' Committee Term Sheet, pursuant to which the Debtors, the Creditors' Committee and JPM have agreed to take certain actions to support the prosecution and consummation of the Plan. The Coalition and the Future Claimants' Representative also support the Plan. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, charitable mission, operations, projections for those operations, risk factors, and certain related matters. The Disclosure Statement also provides a summary and analysis of the Plan. YOU ARE URGED TO READ THE DISCLOSURE STATEMENT AND THE PLAN WITH CARE IN EVALUATING HOW THE PLAN WILL AFFECT YOUR CLAIM(S) BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.

## DEFINITIONS AND RULES OF INTERPRETATION

A.    Definitions.    The capitalized terms used in the Plan shall have the respective meanings set forth below.

1.    "2010 Bond" means The County Commission of Fayette County (West Virginia) Commercial Development Revenue Bond (Arrow WV Project) Series 2010B in an aggregate principal amount of $50,000,000, issued by the Bond Issuer pursuant to the 2010 Bond Agreement, the proceeds of which were loaned to the BSA pursuant to the 2010 Note.

2.    "2010 Bond Agreement" means that certain Bond Purchase and Loan Agreement dated as of November 5, 2010, by and among the Bond Issuer, JPM, the BSA and Arrow, as amended, restated, supplemented or otherwise modified from time to time.

3.    "2010 Bond Claim" means any Claim against the Debtors arising under, derived from, or based upon the 2010 Bond Documents, including any Claim for obligations, indebtedness, and liabilities of the BSA arising pursuant to any of the 2010 Bond Documents, whether now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several, including the obligation of the BSA to repay the 2010 Note, interest on the 2010 Note, and all fees, costs, expenses and obligations of any kind or character due or recoverable from the Debtors under the 2010 Bond Documents.

4.      "<u>2010 Bond Documents</u>" means collectively, the 2010 Bond, the 2010 Bond Agreement, the 2010 Note, the Prepetition Security Documents (2019), the Prepetition Security Agreement (2020) (in the case of the Prepetition Security Documents (2019) and the Prepetition Security Agreement (2020), solely as such documents and agreements pertain to obligations under the other 2010 Bond Documents), and all documentation executed and delivered in connection therewith, as amended, restated, supplemented or otherwise modified from time to time.

5.      "<u>2010 Credit Agreement</u>" means that certain Credit Agreement dated as of August 11, 2010, by and between the BSA, as borrower, and JPM, as lender, as amended by that certain First Amendment to Credit Agreement dated as of November 5, 2010, that certain Second Amendment to Credit Agreement dated as of November 11, 2011, that certain Third Amendment to Credit Agreement dated as of March 9, 2012, that certain Fourth Amendment to Credit Agreement dated as of April 25, 2016, that certain Fifth Amendment to Credit Agreement dated as of March 2, 2017, that certain Sixth Amendment to Credit Agreement dated as of February 15, 2018, and that certain Seventh Amendment to Credit Agreement, dated as of March 21, 2019, pursuant to which JPM agreed to make term loans to the BSA in an aggregate amount of $25,000,000 and agreed to make revolving loans to the BSA and issue letters of credit on behalf of the BSA in an aggregate amount not to exceed $75,000,000.

6.      "<u>2010 Credit Facility Claim</u>" means any Claim against the Debtors arising under, derived from, or based upon the 2010 Credit Facility Documents, including any Claim for obligations, indebtedness, and liabilities of the BSA arising pursuant to any of the 2010 Credit Facility Documents, whether now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several, including the obligation of the BSA to pay principal and interest, and all fees, costs, expenses and other obligations of any kind or character due or recoverable under the 2010 Credit Facility Documents.

7.      "<u>2010 Credit Facility Documents</u>" means, collectively, the 2010 Credit Agreement, the Prepetition Security Documents (2019), the Prepetition Security Agreement (2020) (in the case of the Prepetition Security Documents (2019) and the Prepetition Security Agreement (2020), solely as such documents and agreements pertain to obligations under the other 2010 Credit Facility Documents), and all documentation executed and delivered in connection therewith, as amended, restated, supplemented or otherwise modified from time to time.

8.      "<u>2010 Note</u>" means that certain Promissory Note – 2010B executed by the BSA, as borrower, and payable to the order of the Bond Issuer in the original principal amount of $50,000,000, which note was pledged by the Bond Issuer to JPM pursuant to the 2010 Bond Agreement to secure the repayment of the 2010 Bond, as amended, restated, supplemented or otherwise modified from time to time.

9.      "<u>2012 Bond</u>" means The County Commission of Fayette County (West Virginia) Commercial Development Revenue Bond (Arrow WV Project), Series 2012, in an aggregate principal amount of $175,000,000, issued by the Bond Issuer pursuant to the

2012 Bond Agreement, the proceeds of which were loaned to the BSA pursuant to the 2012 Note.

10.    "2012 Bond Agreement" means that certain Bond Purchase and Loan Agreement dated as of March 9, 2012, between the Bond Issuer, JPM, the BSA and Arrow, as amended, restated, supplemented or otherwise modified from time to time.

11.    "2012 Bond Claim" means any Claim against the Debtors arising under, derived from, or based upon the 2012 Bond Documents, including any Claim for obligations, indebtedness, and liabilities of the BSA arising pursuant to any of the 2012 Bond Documents, whether now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several, including the obligation of the BSA to repay the 2012 Note, interest on the 2012 Note, and all fees, costs, expenses and obligations of any kind or character due or recoverable from the Debtors under the 2012 Bond Documents.

12.    "2012 Bond Documents" means collectively, the 2012 Bond, the 2012 Bond Agreement, the 2012 Note, the Prepetition Security Documents (2019), the Prepetition Security Agreement (2020) (in the case of the Prepetition Security Documents (2019) and the Prepetition Security Agreement (2020), solely as such documents and agreements pertain to obligations under the other 2012 Bond Documents), and all documentation executed and delivered in connection therewith, as amended, restated, supplemented or otherwise modified from time to time.

13.    "2012 Note" means that certain Promissory Note – 2012, executed by the BSA, as borrower, and payable to the order of the Bond Issuer in the original principal amount of $175,000,000, which note was pledged by the Bond Issuer to JPM pursuant to the 2012 Bond Agreement to secure the repayment of the 2012 Bond, as amended, restated, supplemented or otherwise modified from time to time.

14.    "2019 RCF Agreement" means that certain Credit Agreement, dated as of March 21, 2019, by and between the BSA, as borrower, and JPM, as lender, pursuant to which JPM agreed to make revolving loans to the BSA and issue letters of credit on behalf of the BSA in an aggregate amount not to exceed $71,500,000, the maturity date of which was extended pursuant to that certain Consent to Extension of Maturity Date dated as of January 16, 2020.

15.    "2019 RCF Claim" means any Claim against the Debtors arising under, derived from, or based upon the 2019 RCF Documents, including any Claim for obligations, indebtedness, and liabilities of the BSA arising pursuant to any of the 2019 RCF Documents, whether now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several, including the obligation of the BSA to pay principal and interest, and all fees, costs, expenses and other obligations of any kind or character due or recoverable under the 2019 RCF Documents.

16.    "2019 RCF Documents" means, collectively, the 2019 RCF Agreement, the Prepetition Security Documents (2019), the Prepetition Security Agreement (2020) (in the case of the Prepetition Security Documents (2019) and the Prepetition Security Agreement (2020), solely as such documents and agreements pertain to obligations under the other 2019 RCF Documents), and all documentation executed and delivered in connection therewith, as amended, restated, supplemented or otherwise modified from time to time.

17.    "Abuse" means sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, indecent assault or battery, rape, pedophilia, ephebophilia, sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction, or intimidation, any other sexual misconduct or injury, contacts or interactions of a sexual nature, including the use of photography, video, or digital media, or other physical abuse or bullying or harassment without regard to whether such physical abuse or bullying is of a sexual nature, between a child and an adult, between a child and another child, or between a non-consenting adult and another adult, in each instance without regard to whether such activity involved explicit force, whether such activity involved genital or other physical contact, and whether there is or was any associated physical, psychological, or emotional harm to the child or non-consenting adult.

18.    "Abuse Claim" means a liquidated or unliquidated Claim against a Protected Party or a Limited Protected Party that is attributable to, arises from, is based upon, relates to, or results from, in whole or in part, directly, indirectly, or derivatively, alleged Abuse that occurred prior to the Petition Date (and in the case of Limited Protected Parties, on or after January 1, 1976), including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based on misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory, including any theory based on public policy or any act or failure to act by a Protected Party, a Limited Protected Party or any other Person for whom any Protected Party or Limited Protected Party is alleged to be responsible; provided, however, that with respect to any Contributing Chartered Organization or its personnel or affiliates, the term "Abuse Claim" shall be limited to any such Claim that is attributable to, arises from, is based upon, or results from, in whole or in part, directly, indirectly, or derivatively, alleged Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory, including any theory based on public policy or any act or failure to act by a Protected Party, a Limited Protected Party or any other Person for whom any Protected Party or Limited Protected Party is alleged to be responsible, in connection, in whole or in part, with the Contributing Chartered Organization's involvement in, or sponsorship of, one or more Scouting units (including

any Claim that has been asserted or may be amended to assert in a proof of claim alleging Abuse, whether or not timely filed, in the Chapter 11 Cases); provided further, however, that with respect to any Participating Chartered Organization, the term "Abuse Claim" shall be limited to Post-1975 Chartered Organization Abuse Claims. Abuse Claims include any Future Abuse Claims, any Indirect Abuse Claims, and any Claim that is attributable to, arises from, is based upon, relates to, or results from, alleged Abuse regardless of whether, as of the Petition Date, such Claim was barred by any applicable statute of limitations.

19.    "Abuse Claims Settlement" has the meaning ascribed to such term in Article V..S.

20.    "Abuse Insurance Policies" means, collectively, the BSA Insurance Policies and the Local Council Insurance Policies. Abuse Insurance Policies do not include Non-Abuse Insurance Policies.

21.    "Accrued Professional Fees" means, as of any date, and regardless of whether such amounts are billed or unbilled, all of a Professional's or Coalition Professional's accrued fees and reimbursable expenses for services rendered in the Chapter 11 Cases up to and including such date, whether or not such Professional or Coalition Professional has then filed an application for the Allowance and payment of such fees and expenses: (a) to the extent that any such fees and expenses have not been previously paid by the Debtors; and (b) after each Professional has applied to such accrued fees and expenses the balance of any retainer that has been provided by the Debtors to such Professional, if applicable. No amount of a Professional's or Coalition Professional's fees or expenses denied by a Final Order of the Bankruptcy Court shall constitute Accrued Professional Fees.

22.    "Ad Hoc Committee" means the Ad Hoc Committee of Local Councils of the Boy Scouts of America.

23.    "Administrative Expense Claim" means any right to payment from the Debtors that constitutes a cost or expense of administration incurred during the Chapter 11 Cases of the kind specified under 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates or continuing the operations of the Debtors incurred during the period from the Petition Date to the Effective Date; (b) the Hartford Administrative Expense Claim and, if applicable in accordance with the Hartford Insurance Settlement Agreement, the Hartford Additional Administrative Expense Claim; (c) Professional Fee Claims; and (d) Quarterly Fees.

24.    "Affiliate" has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code. With respect to any Person that is not a Debtor in the Chapter 11 Cases, the term "Affiliate" shall apply to such Person as if the Person were a Debtor.

25.    "Affirmation Order" means an order of the District Court affirming Confirmation of the Plan and issuing or affirming the issuance of the Channeling Injunction in favor of the Protected Parties and the Limited Protected Parties, which shall be in form and substance acceptable to (a) the Debtors, the Ad Hoc Committee, the Coalition, the Future Claimants' Representative and Hartford and (b) the Creditors' Committee and JPM in accordance with their respective consent rights under the JPM / Creditors' Committee Term Sheet.

26.    "Allowed" has the following meanings for Non-Abuse Claims:

a.    with respect to any Claim that is asserted to constitute an Administrative Expense Claim: (i) a Claim that represents an actual and necessary cost or expense of preserving the Estates or continuing the operations of the Debtors incurred during the period from the Petition Date to the Effective Date for which a request for payment is filed, (A) to the extent such Claim is determined by the Debtors to constitute an Administrative Expense Claim or allowed by a Final Order of the Bankruptcy Court or (B) as to which no objection to allowance has been interposed and not withdrawn within the applicable period fixed by the Plan or applicable law; (ii) other than with respect to a Professional Fee Claim, a Claim that arises during the period from the Petition Date to the Effective Date for which a request for payment is filed that is Disputed by the Debtors, which Claim is allowed in whole or in part by a Final Order of the Bankruptcy Court to the extent that such allowed portion is determined by a Final Order to constitute a cost or expense of administration under sections 503(b) and 507(a)(1) of the Bankruptcy Code; (iii) a Claim that arises during the period from the Petition Date to the Effective Date in the ordinary course of the Debtors' non-profit operations that is determined by the Debtors to constitute an Administrative Expense Claim; (iv) a Professional Fee Claim, to the extent allowed by a Final Order of the Bankruptcy Court; or (v) any Claim that is expressly allowed as provided in Article II.A.1;

b.    with respect to any 2010 Credit Facility Claim, 2019 RCF Claim, 2010 Bond Claim, or 2012 Bond Claim, any such Claim that is expressly allowed as provided under Article III; and

c.    with respect to any Priority Tax Claim, Other Priority Claim, Other Secured Claim, Convenience Claim, General Unsecured Claim, Non-Abuse Litigation Claim, or any portion of any of the foregoing, a Claim that is: (i) listed in the Schedules as not being disputed, contingent or unliquidated and with respect to which no contrary or superseding Proof of Claim has been filed, and that has not been paid pursuant to an order of this Court prior to the Effective Date; (ii) evidenced by a Proof of Claim filed on or before the applicable Bar Date, not listed in the Schedules as disputed, contingent or unliquidated, and as to which no objection has been filed on or before the Claims Objection Deadline; (iii) not the subject of an objection to Allowance, which Claim (A) was filed on or before the Claims Objection Deadline and (B) has not been settled, waived, withdrawn or Disallowed pursuant to a Final Order; or (iv) expressly Allowed

6

(x) pursuant to a Final Order, (y) pursuant to an agreement between the holder of such Claim and the Debtors or Reorganized BSA, as applicable, or (z) pursuant to the terms of the Plan.  For the avoidance of doubt, the holder of a Claim evidenced by a Proof of Claim filed after the applicable Bar Date shall not be treated as a creditor with respect to such Claim for the purposes of voting and distribution.

"Allowance" and "Allowing" have correlative meanings.

27.     "Amended BSA Bylaws" means the amended and restated bylaws of the BSA, substantially in the form contained in the Plan Supplement.

28.     "Arrow" means Arrow WV, Inc., a West Virginia non-profit corporation.

29.     "Arrow Collateral Assignment" means that certain Collateral Assignment of Promissory Note and Credit Line Deed of Trust, dated as of March 21, 2019, by and between the BSA, as assignor, and JPM, as lender, pursuant to which BSA assigned the Arrow Intercompany Note and Arrow Deed of Trust to JPM to secure the obligations under the 2010 Credit Facility Documents, the 2019 RCF Documents, the 2010 Bond Documents, and the 2012 Bond Documents.

30.     "Arrow Deed of Trust" means that certain Credit Line Deed of Trust, dated as of June 30, 2010, made and executed by Arrow, as grantor, to Leslie Miller-Stover, as trustee, for the benefit of the BSA, as amended by that certain First Amendment to Credit Line Deed of Trust, dated as of March 21, 2019.

31.     "Arrow Intercompany Note" means that certain Amended and Restated Promissory Note dated as of March 21, 2019, issued by Arrow to the BSA in an original principal amount of $350,000,000.

32.     "Artwork" means the artwork listed on Schedule 1.

33.     "Assumed Contracts and Unexpired Leases Schedule" means the schedule of Executory Contracts or Unexpired Leases to be assumed by the BSA under the Plan and the Cure Amount for each such Executory Contract or Unexpired Lease, as set forth in the Plan Supplement, as may be amended, modified, or supplemented from time to time in accordance with the terms hereof.

34.     "Avoidance Actions" means any and all actual or potential avoidance, recovery, subordination or other Claims, causes of action or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including Claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) were commenced prior to the Effective Date.

35.     "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as in effect on the Petition Date.

36.     "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware or such other court having jurisdiction over the Chapter 11 Cases.

37.     "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases, and the general, local, and chambers rules of the Bankruptcy Court, each as amended from time to time.

38.     "Bar Date" means (a) November 16, 2020 for any Claim (other than an Administrative Expense Claim or a Claim of a Governmental Unit), or (b) August 17, 2020 for any Claim of a Governmental Unit, in each case as established by the Bar Date Order.

39.     "Bar Date Order" means the *Order, Pursuant to 11 U.S.C. §§ 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-1(e), 3001-1, and 3003-1, (I) Establishing Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, (III) Approving Procedures for Providing Notice of Bar Date and Other Important Information to Abuse Survivors, and (IV) Approving Confidentiality Procedures for Abuse Survivors*, entered by the Bankruptcy Court on May 26, 2020 at Docket No. 695, as amended, modified or supplemented by order of the Bankruptcy Court from time to time.

40.     "Bond Issuer" means The County Commission of Fayette County (West Virginia) in its capacity as the issuer under the 2010 Bond Agreement and the 2012 Bond Agreement.

41.     "BSA" means Boy Scouts of America, a congressionally chartered non-profit corporation under title 36 of the United States Code.

42.     "BSA Charter" means the congressional charter of the BSA, enacted on June 15, 1916, as amended.

43.     "BSA Insurance Policies" means any and all known and unknown contracts, binders, certificates or Insurance Policies currently or previously in effect at any time on or before the Effective Date naming the Debtors, or either of them, or any predecessor, subsidiary, or past or present Affiliate of the Debtors, as an insured (whether as the primary or an additional insured), or otherwise alleged to afford the Debtors insurance coverage, upon which any claim could have been, has been, or may be made with respect to any Abuse Claim, including the policies listed on Schedule 2. For the avoidance of doubt, BSA Insurance Policies shall not include: (a) any policy providing reinsurance to any Settling Insurance Company; (b) any Non-Abuse Insurance Policy; or (c) any Local Council Insurance Policy.

44.    "<u>BSA Settlement Trust Contribution</u>" means:

a.    all of the Net Unrestricted Cash and Investments, which are forecasted to total approximately $90,000,000, subject to potential variance depending upon the timing of the Effective Date and the BSA's cash flow performance up to and including the Effective Date;

b.    the BSA Settlement Trust Note, in the principal amount of $80,000,000, subject to the terms of <u>Article V.S.3</u>;

c.    the BSA's right, title and interest in and to the Artwork, which are deemed to be valued at approximately $59,000,000, and the rights to any insurance or the proceeds thereof with respect to missing, damaged, or destroyed Artwork, if any;

d.    all of the BSA's right, title and interest in and to the Warehouse and Distribution Center, subject to the Leaseback Requirement, or the proceeds of a third-party sale-leaseback of the Warehouse and Distribution Center for fair market value, which is valued at approximately $11,600,000;

e.    the BSA's right, title and interest in and to the Oil and Gas Interests, which are valued at approximately $7,600,000;

f.    the net proceeds of the sale of Scouting University, which equal approximately $1,962,000;

g.    the Insurance Assignment;

h.    the Debtors' Settlement Trust Causes of Action; and

i.    the assignment of any and all Perpetrator Indemnification Claims held by the BSA.

For the avoidance of doubt, the BSA Settlement Trust Contribution shall not include: (i) the proceeds of the Foundation Loan Facility; or (ii) any Causes of Action against Released Parties or holders of General Unsecured Claims, Non-Abuse Litigation Claims, or Convenience Claims released by the Debtors and their Estates under <u>Article X.J</u>.

45.    "<u>BSA Settlement Trust Note</u>" means the secured, interest-bearing promissory note in the principal amount of $80,000,000, substantially in the form contained in the Plan Supplement, to be issued to the Settlement Trust by Reorganized BSA on the Effective Date in accordance with <u>Article V.S.3</u> and <u>Article V.X</u>.

46.    "<u>Business Day</u>" means any day, other than a Saturday, Sunday or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

47.    "<u>Cash</u>" means legal tender of the United States of America.

48. "Cash Collateral Order" means the *Final Order (I) Authorizing the Debtors to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363; (II) Granting Adequate Protection to the Prepetition Secured Party Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 363, 503, and 507; and (III) Granting Related Relief*, entered by the Bankruptcy Court on April 15, 2020 at Docket No. 433.

49. "Causes of Action" means any claims, interests, damages, remedies, causes of action, demands, rights, actions (including Avoidance Actions), suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, capable of being asserted, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, whether arising before, on, or after the Petition Date. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (d) any claim under any local, state, federal or foreign law, including any fraudulent transfer or similar claim.

50. "Channeling Injunction" means the permanent injunction provided for in Article X.F with respect to (a) Abuse Claims against the Protected Parties and (b) Post-1975 Chartered Organization Abuse Claims against the Limited Protected Parties, to be issued pursuant to the Confirmation Order.

51. "Chapter 11 Cases" means the cases filed by the Debtors under chapter 11 of the Bankruptcy Code, which are jointly administered under Case No. 20-10343 (LSS).

52. "Chartered Organizations" means each and every civic, faith-based, educational or business organization, governmental entity or organization, other entity or organization, or group of individual citizens, in each case presently or formerly authorized by the BSA to operate, sponsor or otherwise support one or more Scouting units.

53. "Chartered Organization Reserved Policies" shall mean liability insurance policies, if any, that (a) (i) were issued to individual Local Councils before January 1, 1976 or (ii) were issued to the BSA before January 1, 1976, (b) have a policy period that ends before January 1, 1976, and (c) name Chartered Organizations as insureds, either individually or collectively.

54. "Claim" means any "claim," as defined in section 101(5) of the Bankruptcy Code, which, for the avoidance of doubt, shall include any Abuse Claim.

55. "Claims Objection Deadline" means the deadline for filing an objection to any Administrative Expense Claim (other than a Professional Fee Claim), Priority Tax Claim, Other Priority Claim, Other Secured Claim, Convenience Claim, General

Unsecured Claim, or Non-Abuse Litigation Claim, which deadline shall be: (a) 180 days after the Effective Date with respect to all such Claims and Interests other than Convenience Claims, General Unsecured Claims, and Non-Abuse Claims, subject to any extensions approved by an order of the Bankruptcy Court; and (b) sixty (60) days after the Effective Date with respect to Convenience Claims, General Unsecured Claims, and Non-Abuse Litigation Claims, subject to any extensions approved by an order of the Bankruptcy Court with the consent of the Creditor Representative (such consent not to be unreasonably withheld); provided, however, that the Debtors shall not be bound by the Claims Objection Deadline with respect to any Claim filed after the Bar Date; provided further, however, that the Claims Objection Deadline shall not apply to Abuse Claims, which shall be administered exclusively in accordance with the Settlement Trust Documents.

56. "Claims Record Date" means the Voting Deadline, which is the date on which the transfer register for each Class of Non-Abuse Claims against or Interests in the Debtors, as such register is maintained by the Debtors or their agents, shall be deemed closed.

57. "Claims Register" means the official register of Claims maintained by the Notice and Claims Agent in the Chapter 11 Cases.

58. "Class" means each category of holders of Claims or Interests as set forth in Article III pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

59. "Coalition" means the Coalition of Abused Scouts for Justice, an *ad hoc* committee composed of thousands of holders of Direct Abuse Claims that filed a notice of appearance in the Chapter 11 Cases on July 24, 2020 at Docket No. 1040.

60. "Coalition Professionals" means (a) Brown Rudnick LLP, (b) Robbins, Russell, Englert, Orseck & Untereiner LLP, (c) Monzack, Mersky and Browder, P.A., (d) Province, LLC, and (e) Parsons, Farnell & Grein, LLP.

61. "Coalition Restructuring Expenses" has the meaning ascribed to such term in Article V.T.

62. "Common-Interest Communications with Insurers" means documents, information, or communications that are subject to the attorney-client privilege, attorney-work product doctrine, or other privilege or protection from disclosure, and are shared between or among (a) the Debtors and/or any Protected Party or Limited Protected Party, on the one hand, and (b) any Insurance Company or its Representatives, on the other hand, including documents that reflect defense strategy, case evaluations, discussions of settlements or resolutions, and communications regarding underlying litigation. Common-Interest Communications with Insurers do not include any communications between or among the Debtors and any Insurance Company relating to matters on which an Insurance Company has denied coverage.

63. "Compensation and Benefits Programs" means all employment agreements and policies, and all employment, compensation, and benefit plans, policies,

11

savings plans, retirement plans (including the Pension Plan), deferred compensation plans, supplemental executive retirement plans, healthcare plans, disability plans, severance benefit agreements, plans or policies, incentive plans, life and accidental death and dismemberment insurance plans, and programs of the Debtors, and all amendments and modifications thereto, applicable to the Debtors' employees, former employees, retirees, and non-employee directors, and the employees, retirees and non-employee directors of the Local Councils and the Related Non-Debtor Entities. Notwithstanding the foregoing, the Compensation and Benefits Programs shall not include the Deferred Compensation Plan or the Restoration Plan.

64.    "Compensation Procedures Order" means the *Order (I) Approving Procedures for (A) Interim Compensation and Reimbursement of Expenses of Retained Professionals and (B) Expense Reimbursement for Official Committee Members and (II) Granting Related Relief* entered by the Bankruptcy Court on April 6, 2020 at Docket No. 341, as amended by the *Order Amending the Order (I) Approving Procedures for (A) Interim Compensation and Reimbursement of Expenses of Retained Professionals and (B) Expense Reimbursement for Official Committee Members and (II) Granting Related Relief* entered by the Bankruptcy Court on August 6, 2021 at Docket No. 5899.

65.    "Confirmation" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases. "Confirm," "Confirmed" and "Confirmability" shall have correlative meanings.

66.    "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

67.    "Confirmation Hearing" means the hearing(s) held by the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order.

68.    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to (a) the Debtors, the Ad Hoc Committee, the Coalition. the Future Claimants' Representative and Hartford and (b) the Creditors' Committee and JPM in accordance with their respective consent rights under the JPM / Creditors' Committee Term Sheet, as incorporated by reference in Article I.D.

69.    "Contributing Chartered Organization Settlement Contribution" means the following:

a.    the contributions to the Settlement Trust by the Contributing Chartered Organizations, including the TCJC Settlement Contribution, as set forth on Exhibit C, and including contributions made after the Effective Date in accordance with Article IV.I;

b.    to the maximum extent permitted by applicable law, any and all of the Contributing Chartered Organizations' rights, titles, privileges, interests,

claims, demands or entitlements, as of the Effective Date, to any proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, arising under or attributable to: (i) the Abuse Insurance Policies, the Insurance Settlement Agreements, and claims thereunder and proceeds thereof; (ii) the Insurance Actions; and (iii) the Insurance Action Recoveries;

c. the waiver, release, and expungement from the Claims Register, as of the Effective Date, of any and all Claims that have been asserted in the Chapter 11 Cases by or on behalf of any Contributing Chartered Organization, including any Indirect Abuse Claims, without any further notice to or action, order, or approval of the Bankruptcy Court, and the agreement of each Contributing Chartered Organization not to (i) file or assert any Claim or Claims against the Settlement Trust, the Debtors, or Reorganized BSA arising from any act or omission of the Debtors on or prior to the Confirmation Date or (ii) file or assert any rights or interests in any property transferred to the Settlement Trust under the Plan; provided, however, that the Indirect Abuse Claims (Claim Nos. 1248 and 12530) filed by TCJC relating to the payment of costs to defend and resolve Abuse Claims shall be subordinated and not otherwise receive distributions until the date that the Confirmation Order and Affirmation Order become Final Orders;

d. the Contributing Chartered Organizations' Settlement Trust Causes of Action; and

e. the assignment of any and all Perpetrator Indemnification Claims held by the Contributing Chartered Organizations.

70.    "Contributing Chartered Organizations" means the current or former Chartered Organizations listed on Exhibit D hereto, including any Chartered Organization made a Protected Party under a Post-Effective Date Chartered Organization Settlement approved by the Bankruptcy Court in accordance with Article IV.I.  No Participating Chartered Organization shall be considered a Contributing Chartered Organization based solely on the Participating Chartered Organization Insurance Assignment.  Without limiting the foregoing, subject to Confirmation of the Plan and approval of the TCJC Settlement Agreement by an order of the Bankruptcy Court (including in the Confirmation Order), TCJC is a Contributing Chartered Organization and shall be designated as such in the Confirmation Order and the Affirmation Order.

71.    "Contributing Chartered Organization Insurance Rights" has the meaning ascribed to such term in Article V.S.1.b.

72.    "Convenience Claim" means any Claim that would otherwise be a General Unsecured Claim that is Allowed in an amount of $50,000 or less; provided that a holder of a General Unsecured Claim that is Allowed in an amount greater than $50,000 may irrevocably elect, as evidenced on the Ballot (as defined in the Voting Procedures) timely and validly submitted by such holder (or other writing acceptable to the Debtors), to have

such Claim irrevocably reduced to $50,000 and treated as a Convenience Claim (upon Allowance) for purposes of the Plan, in full and final satisfaction of such Claim; provided further that a General Unsecured Claim may not be subdivided into multiple Convenience Claims.  The holder of an Allowed Non-Abuse Litigation Claim may elect to have such Allowed Claim treated as a Convenience Claim solely in accordance with the terms of Article III.B.9.  For the avoidance of doubt, the holder of an Abuse Claim (including Direct Abuse Claims and Indirect Abuse Claims) may not elect to have such Claim treated as a Convenience Claim.

73.    "Core Value Cash Pool" means Cash in the aggregate amount of $25,000,000 for purposes of making Distributions to holders of Allowed General Unsecured Claims and, subject to the terms of Article III.B.9, holders of Allowed Non-Abuse Litigation Claims.  Reorganized BSA shall fund the Core Value Cash Pool in accordance with Article V.P.

74.    "Creditor Representative" means the creditor representative to be appointed as of the Effective Date in accordance with Article V.P.  The Creditor Representative will be identified in the Plan Supplement.

75.    "Creditor Representative Fee Cap" the maximum amount of reasonable compensation and reimbursement of expenses that shall payable by Reorganized BSA to the Creditor Representative on account of its services, which shall be equal to $100,000.

76.    "Creditors' Committee" means the official committee of unsecured creditors appointed by the United States Trustee in the Chapter 11 Cases under section 1102(a) of the Bankruptcy Code.

77.    "Cure Amount" means, with respect to any Executory Contract or Unexpired Lease sought to be assumed or assumed and assigned by the Debtors, the monetary amount, if any, required to cure the Debtors' defaults under any such Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the non-Debtor party to an Executory Contract or Unexpired Lease) at the time such Executory Contract or Unexpired Lease is assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

78.    "Cure and Assumption Notice" means the notice of proposed assumption of, and proposed Cure Amount payable in connection with, an Executory Contract or Unexpired Lease (and, to the extent the Debtors seek to assume and assign any such Executory Contract or Unexpired Lease pursuant to the Plan, adequate assurance of future performance within the meaning of section 365 of the Bankruptcy Code), to be served in accordance with Article VI.C.

79.    "D&O Liability Insurance Policies" means all Insurance Policies issued at any time to any of the Debtors for directors', managers', and officers' liability (including any "tail policy" or run-off coverage) and all agreements, documents, or instruments relating thereto.

80. "De Minimis Asset" means any miscellaneous asset that is valued by the Debtors at $10,000 or less and that is located at the premises subject to any Unexpired Leases rejected by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code, including furniture and equipment.

81. "Debtors" means the BSA and Delaware BSA, the non-profit corporations that are debtors and debtors in possession in the Chapter 11 Cases.

82. "Deferred Compensation Plan" means the Boy Scouts of America 457(b) Plan, a non-qualified deferred compensation plan under section 457(b) of the Internal Revenue Code, which allows eligible BSA and Local Council employees to make elections to defer the payment of a certain amount or percentage of their regular base salary or bonus for future payment.

83. "Delaware BSA" means Delaware BSA, LLC, a Delaware limited liability company.

84. "Direct Abuse Claim" means an Abuse Claim that is not an Indirect Abuse Claim.

85. "Disallowed" means, as to any Administrative Expense Claim, Priority Tax Claim, Other Priority Claim, Other Secured Claim, Convenience Claim, General Unsecured Claim, or Non-Abuse Litigation Claim, any such Claim or portion thereof that: (a) has been disallowed, denied, dismissed, expunged, or overruled pursuant to the terms of the Plan or a Final Order of the Bankruptcy Court or any other court of competent jurisdiction or by a settlement; (b) has been listed on the Schedules at an amount of $0.00 or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, including the Bar Date Order, or otherwise deemed timely filed under applicable law; or (c) has not been scheduled and as to which a Bar Date has been established but no Proof of Claim has been timely filed, such that the creditor holding such Claim shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution. "Disallowance" and "Disallowing" have correlative meanings. With respect to any 2010 Credit Facility Claim, 2019 RCF Claim, 2010 Bond Claim, 2012 Bond Claim, Direct Abuse Claim, Indirect Abuse Claim, or Interest, the term "Disallowed" shall not apply.

86. "Disbursing Agent" means, with respect to all Claims other than Abuse Claims, Reorganized BSA or a Person or Persons selected by the Debtors or Reorganized BSA to make or facilitate Distributions contemplated under the Plan.

87. "Discharge Injunction" means the injunction issued in accordance with sections 524 and 1141 of the Bankruptcy Code and contained in Article X.E.2 of the Plan.

88. "Discharges" means the discharges set forth in Article X.E.

89. "<u>Disclosure Statement</u>" means the disclosure statement for the Plan, including all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, which is in form and substance acceptable to (a) the Debtors, the Ad Hoc Committee, the Coalition and the Future Claimants' Representative and (b) the Creditors' Committee and JPM in accordance with their respective consent rights under the JPM / Creditors' Committee Term Sheet.

90. "<u>Disclosure Statement Order</u>" means one or more orders entered by the Bankruptcy Court, in form and substance reasonably acceptable to (a) the Debtors, the Ad Hoc Committee, the Coalition and the Future Claimants' Representative and (b) the Creditors' Committee and JPM in accordance with their respective consent rights under the JPM / Creditors' Committee Term Sheet: (i) finding that the Disclosure Statement (including any amendment, supplement, or modification thereto) contains adequate information pursuant to section 1125 of the Bankruptcy Code; (ii) fixing the amounts of Claims solely for voting purposes and not for purposes of distributions; (iii) approving the Voting Procedures; and (iv) authorizing solicitation of the Plan.

91. "<u>Disputed</u>" means, as to any Administrative Expense Claim, Priority Tax Claim, Other Priority Claim, Other Secured Claim, Convenience Claim, General Unsecured Claim, or Non-Abuse Litigation Claim, any such Claim (or portion thereof) (a) that is neither Allowed nor Disallowed, (b) that is listed on the Schedules as "disputed," "contingent," or "unliquidated" or (c) for which a Proof of Claim has been filed or a written request for payment has been made to the extent that any party in interest has interposed a timely objection to such Claim, which objection has not been withdrawn or adjudicated pursuant to a Final Order. The term "Disputed" does not apply to Abuse Claims.

92. "<u>Disputed Claims Reserve</u>" means the reserve of Cash within the Core Value Cash Pool to be Distributed to holders of Disputed General Unsecured Claims, if and when such Disputed Claims become Allowed, which shall be funded with amounts and on terms acceptable to the Creditor Representative.

93. "<u>Distribution</u>" means the payment or delivery of Cash, property, or interests in property, as applicable, to holders of Allowed Non-Abuse Claims under the terms of the Plan. "Distributed" and "Distribution" have correlative meanings.

94. "<u>Distribution Date</u>" means the dates on which the Disbursing Agent makes a Distribution, or causes a Distribution to be made, from the Core Value Cash Pool to holders of Allowed General Unsecured Claims and, subject to the terms of <u>Article III.B.9</u>, holders of Allowed Non-Abuse Litigation Claims. Each Distribution Date shall occur as soon as practicable after Reorganized BSA makes each semi-annual installment payment of the Core Value Cash Pool in accordance with <u>Article V.P.</u>

95. "<u>District Court</u>" means the United States District Court for the District of Delaware.

96. "Document Agreement" means the document agreement, substantially in the form contained in the Plan Supplement, by and among Reorganized BSA, the Related Non-Debtor Entities, the Local Councils, the Contributing Chartered Organizations, and the Settlement Trust, in form and substance acceptable to the Debtors, the Ad Hoc Committee, the Coalition, the Future Claimants' Representative and TCJC.

97. "DST" means the Delaware statutory trust established under Article V.Y and the DST Agreement for the purposes set forth therein; provided, that the DST may be any other type of Entity, provided such Entity is not affiliated with Reorganized BSA or the Local Councils under principles of accounting.

98. "DST Agreement" means the agreement governing the DST, dated as of the Effective Date, the form of which shall be included in the Plan Supplement.

99. "DST Note" means the non-recourse interest-bearing promissory note in the principal amount of $100,000,000, substantially in the form contained in the Plan Supplement, to be issued to the Settlement Trust by the DST on the Effective Date in accordance with Article V.Y and the DST Note Mechanics.

100. "DST Note Mechanics" means the terms of Exhibit F as they relate to the payments that will be made by the DST following the Effective Date.

101. "Effective Date" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in Article IX.B shall have been satisfied or waived pursuant to Article IX.C.

102. "Encumbrance" means, with respect to any property (whether real or personal, tangible or intangible), any mortgage, Lien, pledge, charge, security interest, assignment, or encumbrance of any kind or nature in respect of such property, including any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction, to secure payment of a debt or performance of an obligation.

103. "Entity" means an entity as defined in section 101(15) of the Bankruptcy Code.

104. "Estate" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

105. "Estate Causes of Action" means any and all Causes of Action owned, held, or capable of being asserted by or on behalf of either Debtor or its Estate, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that: (a) arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtors or their respective Estates,

17

including actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estates, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estates under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise; or (b) seek to impose any liability upon, or injunctive relief on, any Protected Party or to satisfy, in whole or in part, any Abuse Claim.

106. "Excess Cash and Investments" means, as of any date on or after the Effective Date, the unrestricted Cash and balance sheet investments owned by Reorganized BSA that are not subject to legally enforceable restrictions on the use or disposition of such assets for a particular purpose.

107. "Excess Cash Sweep" has the meaning ascribed to such term in Article V.V.

108. "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Creditors' Committee; (d) the members of the Creditors' Committee in their capacities as such; (e) the Tort Claimants' Committee; (f) the members of the Tort Claimants' Committee in their capacities as such; (g) the Future Claimants' Representative; (h) the Creditor Representative; and (i) all of such Persons' current officers and directors, former officers and directors who served in such capacity during the pendency of the Chapter 11 Cases but are no longer officers or directors as of the Effective Date, employees, volunteers, agents, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals.

109. "Executory Contract" means any executory contract to which BSA is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

110. "Expedited Distribution" means a one-time Cash payment from the Settlement Trust in the amount of $3,500.00, conditioned upon satisfaction of the criteria set forth in the Trust Distribution Procedures.

111. "Fee Examiner" means Justin H. Rucki of Rucki Fee Review, LLC, in his capacity as the fee examiner appointed pursuant to the *Order Appointing Fee Examiner and Establishing Related Procedures for the Review of Applications of Retained Professionals*, entered by the Bankruptcy Court on September 18, 2020 at Docket No. 1342, or any successor appointed by the Bankruptcy Court.

112. "Final Order" means an order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) that has not been reversed, vacated, stayed, modified or amended, and as to which (a) the time to appeal, petition for *certiorari* or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument or rehearing shall

then be pending, or (b) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied or a new trial, reargument or rehearing shall have been denied with prejudice or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order to not be a Final Order.

113.    "Florida Sea Base Assignment" means the Assignment of Agreements, Licenses, Permits and Contracts, dated as of March 21, 2019, by and from the BSA, as assignor, and JPM, as assignee, which secures the BSA's obligations under the 2010 Credit Agreement, the 2010 Bond Agreement, the 2012 Bond Agreement, and the 2019 RCF Agreement.

114.    "Florida Sea Base Mortgage" means the Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing, dated as of March 21, 2019, by and from the BSA, as mortgagor, and JPM, as mortgagee, which secures the BSA's obligations under the 2010 Credit Agreement, the 2010 Bond Agreement, the 2012 Bond Agreement, and the 2019 RCF Agreement.

115.    "Foundation" means the National Boy Scouts of America Foundation, a District of Columbia nonprofit corporation.

116.    "Foundation Loan" means the new second-lien term loan lending facility pursuant to which the Foundation, as lender, shall make a term loan to Reorganized BSA, as borrower, in the principal amount of $42,800,000, which is equal to the appraised value of the Summit Bechtel Reserve.  The material terms of the Foundation Loan are set forth on the term sheet attached hereto as Exhibit E, which is qualified in its entirety by reference to the Foundation Loan Agreement.

117.    "Foundation Loan Agreement" means the credit agreement governing the Foundation Loan, dated as of the Effective Date, the form of which shall be included in the Plan Supplement.

118.    "Future Abuse Claim" means any Direct Abuse Claim against any Protected Party that is attributable to, arises from, is based upon, relates to, or results from, in whole or in part, directly, indirectly, or derivatively, alleged Abuse that occurred prior to the Petition Date but which, as of the date immediately preceding the Petition Date, was held by a Person who, as of such date, (a) had not attained eighteen (18) years of age, or (b) was not aware of such Direct Abuse Claim as a result of "repressed memory," to the extent the concept of repressed memory is recognized by the highest appellate court of the state or territory where the claim arose; provided, however, that with respect to any Contributing Chartered Organization, the term "Future Abuse Claim"

shall be limited to any such Direct Abuse Claim that satisfies either (a) or (b) in connection, in whole or in part, with the Contributing Chartered Organization's or its personnel's or affiliates' involvement in, or sponsorship of, one or more Scouting units.

119. "Future Claimants' Representative" means James L. Patton, Jr., the legal representative appointed by the Bankruptcy Court for holders of Future Abuse Claims, or any successor legal representative appointed by the Bankruptcy Court.

120. "General Unsecured Claim" means any Claim against the Debtors that is not an Administrative Expense Claim, a Priority Tax Claim, an Other Priority Claim, an Other Secured Claim, a 2010 Credit Facility Claim, a 2019 RCF Claim, a 2010 Bond Claim, a 2012 Bond Claim, a Convenience Claim, a Non-Abuse Litigation Claim, a Direct Abuse Claim, or an Indirect Abuse Claim. Claims arising under the Deferred Compensation Plan or the Restoration Plan shall be deemed to be General Unsecured Claims.

121. "Gift Annuity Agreements" mean the charitable gift annuity agreements described in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Maintain and Administer Prepetition Customer, Scout, and Donor Programs and Practices and (B) Pay and Honor Related Prepetition Obligations, and (II) Granting Related Relief*, filed by the Debtors on the Petition Date at Docket No. 8.

122. "Governmental Unit" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

123. "Hartford" means Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company and Navigators Specialty Insurance Company and each of their past, present and future direct or indirect parents, subsidiaries, affiliates and controlled entities, and each of their respective officers, directors, stockholders, members, partners, managers, employees, predecessors, successors and assigns, each in their capacity as such.

124. "Hartford Additional Administrative Expense Claim" means Hartford's administrative expense claim, in addition to the Hartford Administrative Expense Claim, of $23.61 million that Hartford may assert in accordance with the terms and conditions of the Hartford Insurance Settlement Agreement in the event that BSA exercises a Fiduciary Out or takes another Specified Action (as such capitalized terms are defined in the Hartford Insurance Settlement Agreement), which administrative expense claim shall be reserved for prior to distributions to unsecured creditors and to which the Debtors, the Ad Hoc Committee, the Future Claimants' Representative, the Coalition, and the State Court Counsel (as identified and defined in the Hartford Insurance Settlement Agreement) shall not object or argue that the claim should be allowed in an amount less than $23.61 million (except as permitted under the Hartford Insurance Settlement Agreement).

125. "Hartford Administrative Expense Claim" means Hartford's administrative expense claim for the Debtors' alleged breach of the Settlement Agreement and Release between Hartford and the Debtors, dated as of April 15, 2021, in

the amount of $2,000,000, which shall be paid in full in Cash to Hartford on, or as soon as reasonably practicable after, the Effective Date in accordance with the Hartford Insurance Settlement Agreement.

126.    "Hartford Insurance Settlement" has the meaning ascribed to such term in Article V.S.4.

127.    "Hartford Insurance Settlement Agreement" means that certain settlement agreement, which remains subject to definitive documentation, by and between Hartford, the Debtors, the Ad Hoc Committee, the Coalition, the Future Claimants' Representative, and certain state court counsel to holders of Direct Abuse Claims, as such agreement is described in the term sheet appended to the *Sixth Mediators' Report* [D.I. 6210] filed on September 14, 2021, and as such agreement may be subsequently set forth in a definitive written settlement agreement that is consistent with such term sheet and executed by all of the parties thereto (and any additional parties that execute a joinder thereto).  Upon its execution by all of the parties thereto, the Hartford Insurance Settlement Agreement shall be filed with the Plan Supplement and attached hereto as Exhibit I-1.

128.    "Hartford Policies" shall have the meaning set forth for such capitalized term in the Hartford Insurance Settlement Agreement.

129.    "Hartford Settlement Contribution" shall mean the "Settlement Amount" as defined in the Hartford Insurance Settlement Agreement, which is equal to Seven Hundred Eighty-Seven Million Dollars ($787,000,000).

130.    "Headquarters" means that certain parcel of real property owned by the BSA located at 1325 West Walnut Hill Lane, Irving, Texas 75038, together with the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and other improvements now or hereafter located thereon.

131.    "Headquarters Assignment" means that certain Assignment of Agreements, Licenses, Permits and Contracts, dated as of March 21, 2019, by and from the BSA, as assignor, and JPM, as assignee, which secures the BSA's obligations under the 2010 Credit Agreement, the 2010 Bond Agreement, the 2012 Bond Agreement, and the 2019 RCF Agreement.

132.    "Headquarters Deed of Trust" means that certain Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing, dated as of March 21, 2019, by and between the BSA and JPM.

133.    "High Adventure Base Participant" means a registered Youth Member who has paid the participation fee (which has not been refunded in whole or in part) for attending a BSA program at one of the four high adventure bases (Florida Sea Base, Northern Tier, Philmont or Summit Bechtel Reserve).  High Adventure Base Participants do not include Youth Members attending a Jamboree, an Order of the Arrow program, or an event sponsored by the World Organization of the Scouting Movement (WOSM) or a member of WOSM other than the BSA.

134.   "Impaired" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

135.   "Indemnification Obligations" means each of the Debtors' indemnification obligations in place as of the Effective Date, whether in the bylaws, limited liability company agreements, or other organizational or formation documents, board resolutions, management or indemnification agreements, employment or other contracts, or otherwise, for the past and present directors, officers, employees, attorneys, accountants, investment bankers, and other professionals and agents who provided services to the Debtors before, on, or after the Petition Date.

136.   "Indirect Abuse Claim" means a liquidated or unliquidated Abuse Claim for contribution, indemnity, reimbursement, or subrogation, whether contractual or implied by law (as those terms are defined by the applicable non-bankruptcy law of the relevant jurisdiction), and any other derivative Abuse Claim of any kind whatsoever, whether in the nature of or sounding in contract, tort, warranty or any other theory of law or equity whatsoever, including any indemnification, reimbursement, hold-harmless or other payment obligation provided for under any prepetition settlement, insurance policy, program agreement or contract; provided, however, that any retrospective premiums and self-insured retentions arising out of any Abuse Claims under the Abuse Insurance Policies shall not constitute an Indirect Abuse Claim and shall be treated in accordance with Article IV.D.1.

137.   "Injunctions" means the Discharge Injunction, the Channeling Injunction, the Insurance Entity Injunction, the Release Injunctions, and any other injunctions entered by the Bankruptcy Court or the District Court in connection with Confirmation of the Plan.

138.   "Insurance Action" means any claim, Cause of Action, or right of the Debtors, Related Non-Debtor Entities, Local Councils, Participating Chartered Organizations, and Contributing Chartered Organizations, or any of them, under the laws of any jurisdiction, against any Non-Settling Insurance Company, arising from or related to an Abuse Insurance Policy (except for Participating Chartered Organizations' claims, Causes of Action, or rights arising from or related to the Chartered Organization Reserved Policies), including: (a) any such Non-Settling Insurance Company's failure to provide coverage or otherwise pay under an Abuse Insurance Policy; (b) the refusal of any Non-Settling Insurance Company to compromise and settle any Abuse Claim under or pursuant to any Abuse Insurance Policy; (c) the interpretation or enforcement of the terms of any Abuse Insurance Policy with respect to any Abuse Claim; (d) any conduct by any Non-Settling Insurance Company constituting "bad faith" conduct or that could otherwise give rise to extra-contractual damages, or other wrongful conduct under applicable law; or (e) any right to receive proceeds held by such Person with respect to an Abuse Insurance Policy or an Insurance Coverage Action.  For the avoidance of doubt, no claim, Cause of Action, or right of the Debtors, Related Non-Debtor Entities, Local Councils, Participating Chartered Organizations or Contributing Chartered Organizations, or any of them, against any Settling Insurance Company shall be deemed an Insurance

Action, except for any Cause of Action arising from or related to an Insurance Settlement Agreement.

139.    "Insurance Action Recoveries" means (a) Cash or other proceeds derived from and paid by an Insurance Company pursuant to an Insurance Settlement Agreement and (b) the right to receive the proceeds or benefits of any Insurance Action.

140.    "Insurance Assignment" means (x) the assignment and transfer to the Settlement Trust of (a) the Insurance Actions, (b) the Insurance Action Recoveries, (c) the Insurance Settlement Agreements, and (d) all other rights, claims, benefits, or Causes of Action of the Debtors, Related Non-Debtor Entities, Local Councils, or Contributing Chartered Organizations under or with respect to the Abuse Insurance Policies (but not the policies themselves) and (y) the Participating Chartered Organization Insurance Assignment.  The Insurance Assignment does not include (i) any rights, claims, benefits, or Causes of Action under or with respect to any Non-Abuse Insurance Policies and D&O Liability Insurance Policies or (ii) any Local Council Reserved Rights.

141.    "Insurance Company" means any insurance company, insurance syndicate, coverholder, insurance broker or syndicate insurance broker, guaranty association, or any other Entity that has issued, or that has any actual, potential, demonstrated, or alleged liabilities, duties, or obligations under or with respect to, any Insurance Policy or Local Council Insurance Policy.

142.    "Insurance Coverage Actions" means any and all pending coverage litigation between the BSA and any Insurance Company as of the Effective Date, including: (a) *Boy Scouts of America, et al. v. Insurance Company of North America et al.*, Case No. DC-18-11896, pending in the 192nd Judicial District Court of Dallas County, Texas; (b) *Boy Scouts of America, et al. v. Hartford Accident and Indemnity Co.*, *et al.*, Case No. DC-18-07313, pending in the District Court of Dallas County, 95th Judicial District; (c) *National Surety Corp. v. Boy Scouts of America, et al.*, Case No. 2017-CH-14975, pending in the Circuit Court of Cook County, Illinois, Chancery Division; and (d) *Hartford Accident and Indemnity Co. and First State Ins. Co. v. Boy Scouts of America, et al.*, Adv. Pro. No. 20-50601 (LSS), pending before the Bankruptcy Court.

143.    "Insurance Coverage Defense" means, subject to Article X.M, all rights and defenses that any Insurance Company may have under any Insurance Policy and applicable law with respect to a claim seeking insurance coverage or to an Insurance Action, but Insurance Coverage Defenses do not include any defense that the Plan or any of the other Plan Documents do not comply with the Bankruptcy Code.  Upon entry of the Confirmation Order in the Chapter 11 Cases determining that the Insurance Assignment is authorized notwithstanding any terms or provisions of the Abuse Insurance Policies that any Insurance Company asserts or may assert otherwise prohibits the Insurance Assignment, an Insurance Coverage Defense shall not include any defense that the Insurance Assignment is prohibited by the Abuse Insurance Policies or applicable non-bankruptcy law.

144.    "Insurance Entity Injunction" means the injunction described in Article X.H.

145.    "Insurance Policies" means any and all known and unknown contracts, binders, certificates or insurance policies currently or previously in effect at any time on or before the Effective Date naming the Debtors, or either of them, or any predecessor, subsidiary, or past or present Affiliate of the Debtors, as an insured (whether as the primary or an additional insured), or otherwise alleged to afford the Debtors insurance coverage.  Insurance Policies include Abuse Insurance Policies, BSA Insurance Policies and Non-Abuse Insurance Policies.

146.    "Insurance Settlement Agreement" means: (a) the Hartford Insurance Settlement Agreement; (b) any other settlement agreement entered into after the Petition Date and before the Effective Date by and among (i) any Insurance Company, on the one hand, and (ii) one or more of the Debtors and/or any other Protected Party or Limited Protected Party, on the other hand, under which an Insurance Policy and/or the Debtors and/or other Protected Parties' or Limited Protected Parties' rights thereunder with respect to Abuse Claims or Non-Abuse Litigation Claims are, subject to Confirmation of the Plan and the entry of a Final Order approving such settlement agreement (which order may be the Confirmation Order), released; and (c) any Post-Effective Date Insurance Settlement entered into during the Insurance Settlement Period by and between (i) any Insurance Company, on the one hand, and (ii) the Settlement Trustee (or the Settlement Trustee and any other Protected Party), on the other hand, under which an Insurance Policy that is subject to the Insurance Assignment and/or the Settlement Trustee's and/or Protected Parties' or Limited Protected Parties' rights thereunder with respect to Abuse Claims or Non-Abuse Litigation Claims are released.    All Insurance Settlement Agreements entered into before the Effective Date related to Specified Primary Insurance Policies that release the applicable Insurance Company from liability arising from Non-Abuse Litigation Claims must be acceptable to the Creditors' Committee in accordance with the terms of the JPM / Creditors' Committee Term Sheet; provided, however, that with respect to proposed settlements of any Specified Excess Insurance Policy entered into before the Effective Date, the Creditors' Committee shall have consultation rights.

147.    "Insurance Settlement Period" has the meaning ascribed to such term in Article IV.K.

148.    "Interest" means any "equity security" as defined in section 101(16) of the Bankruptcy Code.

149.    "Internal Revenue Code" means title 26 of the United States Code, 26 U.S.C. §§ 1 *et seq.*, as in effect on the Petition Date, together with all amendments, modifications, and replacements of the foregoing as the same may exist on any relevant date to the extent applicable to the Chapter 11 Cases.

150.    "JPM" means JPMorgan Chase Bank, National Association and any successors and assigns.

151.   "JPM / Creditors' Committee Settlement" has the meaning ascribed to such term in Article V..S.

152.   "JPM / Creditors' Committee Term Sheet" means that certain settlement term sheet appended as Exhibit A to the *First Mediators' Report* filed on March 1, 2021 at Docket No. 2292.

153.   "JPM Exit Fee" means an exit fee to be paid by Reorganized BSA on the Effective Date, in an amount equal to the aggregate principal amount due and owing as of the Effective Date, plus the undrawn amount of any letters of credit then outstanding, under the Restated 2010 Bond Documents, the Restated 2012 Bond Documents and the Restated Credit Facility Documents, multiplied by 0.50%.

154.   "Leaseback Requirement" means the requirement that Reorganized BSA be entitled to lease the Warehouse and Distribution Center from the Settlement Trust for fair market value so long as the Settlement Trust holds title to such premises and that any sale or other transfer of the Warehouse and Distribution Center by the Settlement Trust be subject to Reorganized BSA's right to lease such premises from any Person that acquires the Warehouse and Distribution Center from the Settlement Trust (or any subsequent acquirer) for fair market value for a term of not less than two years with four two-year options to renew at the option of Reorganized BSA.  If as of the filing of the Plan Supplement the Bankruptcy Court has not approved a sale of the Warehouse and Distribution Center or if no motion to approve such sale is then pending before the Bankruptcy Court, then an agreement reflecting the terms of the Leaseback Requirement shall be filed with the Plan Supplement.

155.   "Lien" means any "lien" as defined in section 101(37) of the Bankruptcy Code.

156.   "Life-Income Agreement" means the agreements described in the *Supplement to Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Maintain and Administer Prepetition Customer, Scout, and Donor Programs and Practices and (B) Pay and Honor Related Prepetition Obligations, and (II) Granting Related Relief*, filed by the Debtors on March 3, 2020 at Docket No. 134.

157.   "Limited Protected Parties" means the Participating Chartered Organizations.

158.   "Local Council Insurance Policies" means any and all known and unknown contracts, binders, certificates or insurance policies currently or previously in effect at any time on or before the Effective Date naming the Local Councils, or any of them, or any predecessor, subsidiary, or past or present Affiliate of any Local Council, as an insured (whether as the primary or an additional insured), or otherwise alleged to afford any Local Council insurance coverage, upon which any claim could have been, has been or may be made with respect to any Abuse Claim, including the policies identified on Schedule 3.  Notwithstanding the foregoing, Local Council Insurance Policies shall not include any policy providing reinsurance to any Settling Insurance Company.  For the

avoidance of doubt, Local Council Insurance Policies do not include any BSA Insurance Policy or any insurance policy issued at any time to any of the Local Councils for directors', managers', and officers' liability (including any "tail policy" or run-off coverage) or any agreements, documents, or instruments relating thereto.

159.    "<u>Local Council Insurance Rights</u>" has the meaning ascribed to such term in <u>Article V.S.1.a.</u>

160.    "<u>Local Council Reserved Rights</u>" means any right of a Local Council under any Specified Insurance Policy with respect to any Non-Abuse Litigation Claim; <u>provided</u>, that such Local Council provides notice of such claim to the Debtors, the Coalition, and the Future Claimants' Representative prior to the Effective Date.

161.    "<u>Local Council Settlement Contribution</u>" means:

a.    the contributions to the Settlement Trust by the Local Councils, as set forth on <u>Exhibit F</u>;

b.    to the maximum extent permitted under applicable law, any and all of the Local Councils' rights, titles, privileges, interests, claims, demands or entitlements, as of the Effective Date, to any proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, arising under or attributable to: (i) the BSA Insurance Policies, the Insurance Settlement Agreements, and claims thereunder and proceeds thereof (but not the policies themselves); (ii) the Insurance Actions; and (iii) the Insurance Action Recoveries; <u>provided</u>, <u>however</u>, that the transfer set forth herein will not include the Local Council Reserved Rights;

c.    to the maximum extent permitted under applicable law, any and all of the Local Councils' rights, titles, privileges, interests, claims, demands or entitlements, as of the Effective Date, to any proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, arising under or attributable to: (i) the Local Council Insurance Policies, the Insurance Settlement Agreements, and claims thereunder and proceeds thereof; (ii) the Insurance Actions; and (iii) the Insurance Action Recoveries; <u>provided</u>, <u>however</u>, that the transfer set forth herein will not include the Local Council Reserved Rights;

d.    the waiver, release, and expungement from the Claims Register, as of the Effective Date, of any and all Claims that have been asserted in the Chapter 11 Cases by or on behalf of any Local Council, including any Indirect Abuse Claims, without any further notice to or action, order, or approval of the Bankruptcy Court, and the agreement of each Local Council not to (i) file or assert any Claim or Claims against the Settlement Trust, the Debtors, or

Reorganized BSA arising from any act or omission of the Debtors on or prior to the Confirmation Date or (ii) file or assert any rights or interests in any property transferred to the Settlement Trust under the Plan.

e.       the Local Councils' Settlement Trust Causes of Action; and

f.       the assignment of any and all Perpetrator Indemnification Claims held by the Local Councils.

162.    "Local Councils" means, collectively, each and every current or former local council of the BSA, including each and every current local council of the BSA as listed on Exhibit G hereto, "supporting organizations" within the meaning of 26 U.S.C. § 509 with respect to any Local Council, Scouting units (including "troops," "dens," "packs," "posts," "clubs," "crews," "ships," "tribes," "labs," "lodges," "councils," "districts," "areas," "regions," and "territories") associated with any Local Council, and all Entities that hold, own, or operate any camp or other property that is operated in the name of or for the benefit of any of the foregoing.

163.    "Mediators" means the Honorable Kevin J. Carey (Ret.), Paul A. Finn, and Timothy V.P. Gallagher, each of whom is appointed by the Bankruptcy Court as a mediator in the Chapter 11 Cases under the *Order (I) Appointing Mediators, (II) Referring Certain Matters to Mediation, and (III) Granting Related Relief* entered on June 9, 2020 at Docket No. 812.

164.    "Net Unrestricted Cash and Investments" means all of the Unrestricted Cash and Investments as of the Effective Date, after Reorganized BSA has received the proceeds of the Foundation Loan, less (a) $25,000,000 (subject to potential variance as set forth in Article V.M), which shall be funded first from the proceeds of the Foundation Loan, (b) an amount of Cash equal to the JPM Exit Fee, (c) an amount of Cash sufficient to fund all unpaid Allowed Administrative Expense Claims, (d) without duplication, an amount of Cash sufficient to fund the Professional Fee Reserve, (e) an amount of Cash equal to the Creditor Representative Fee Cap, (f) the amount of Cash estimated to be required to satisfy Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Secured Claims, and Allowed Convenience Claims, and (g) an amount of Cash sufficient to fund all accrued but unpaid interest and reasonable fees and expenses of JPM as of the Effective Date to the extent not paid pursuant to the Cash Collateral Order.

165.    "Non-Abuse Claim" means any Claim against the Debtors that is not an Abuse Claim.

166.    "Non-Abuse Insurance Policy" means any and all known and unknown contracts, binders, certificates or Insurance Policies currently or previously in effect at any time on or before the Effective Date naming the Debtors, or either of them, or any predecessor, subsidiary, or past or present Affiliate of the Debtors, as an insured (whether as the primary or an additional insured), or otherwise alleged to afford the Debtors insurance coverage, upon which any claim could have been, has been, or may be made with respect to any Non-Abuse Claim and which does not include coverage for Abuse

Claims.  Non-Abuse Insurance Policies do not include Abuse Insurance Policies (which Abuse Insurance Policies, for the avoidance of doubt, include the Specified Insurance Policies).

167.  "Non-Abuse Litigation Claim" means any Claim that is a prepetition unsecured non-priority Claim against the Debtors relating to pending or threatened litigation against one or both of the Debtors that does not relate to Abuse.  For the avoidance of doubt, Non-Abuse Litigation Claims include (a) all personal injury or wrongful death Claims against the Debtors that do not relate to Abuse and (b) all Claims against the Debtors asserted by the Girl Scouts of the United States of America.  Non-Abuse Litigation Claims do not include any Administrative Expense Claims that may be asserted by holders of Non-Abuse Litigation Claims.

168.  "Non-Settling Insurance Company" means any Insurance Company to the extent it is not a Settling Insurance Company.

169.  "Northern Tier Assignment" means that certain Assignment of Agreements, Licenses, Permits and Contracts, dated as of March 21, 2019, by and from the BSA, as assignor, and JPM, as assignee, which secures the BSA's obligations under the 2010 Credit Agreement, the 2010 Bond Agreement, the 2012 Bond Agreement, and the 2019 RCF Agreement.

170.  "Northern Tier Mortgage" means that certain Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing, dated as of March 21, 2019, by and from the BSA, as mortgagor, and JPM, as mortgagee, which secures the BSA's obligations under the 2010 Credit Agreement, the 2010 Bond Agreement, the 2012 Bond Agreement, and the 2019 RCF Agreement.

171.  "Notice and Claims Agent" means Omni Agent Solutions, in its capacity as "claims and noticing agent" for the Debtors, and any successor thereto.

172.  "Official Committees" means the Tort Claimants' Committee and the Creditors' Committee.

173.  "Oil and Gas Interests" means those certain mineral or royalty interests owned by the BSA, consisting of approximately 1,027 properties located in Alabama, Arkansas, California, Florida, Georgia, Illinois, Louisiana, Michigan, Mississippi, Nebraska, New Mexico, North Dakota, Oklahoma, Oregon, Texas, South Dakota and Wyoming.  The Oil and Gas Interests include those listed on Schedule 4.

174.  "Other Priority Claim" means any Claim against the Debtors that is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim or a Priority Tax Claim.

175.  "Other Secured Claim" means any Secured Claim against the Debtors other than any 2010 Credit Facility Claim, 2019 RCF Claim, 2010 Bond Claim, or 2012 Bond Claim.

176. "<u>Participating Chartered Organization</u>" means a Chartered Organization that does not (a) object to confirmation of the Plan or (b) inform Debtors' counsel in writing on or before the confirmation objection deadline that it does not wish to make the Participating Chartered Organization Insurance Assignment. Notwithstanding the foregoing, with respect to any Chartered Organization that is a debtor in bankruptcy as of the Confirmation Date, such Chartered Organization shall be a Participating Chartered Organization only if it advises Debtors' counsel in writing that it wishes to make the Participating Chartered Organization Insurance Assignment, and, for the avoidance of doubt, absent such written advisement, none of such Chartered Organization's rights to or under the Abuse Insurance Policies shall be subject to the Participating Chartered Organization Insurance Assignment. A list of Chartered Organizations that are not Participating Chartered Organizations is attached hereto as <u>Exhibit K</u>.

177. "<u>Participating Chartered Organization Insurance Action</u>" means any Cause of Action of the Participating Chartered Organizations, or any of them, under the laws of any jurisdiction, against any Non-Settling Insurance Company, arising from or related to an Abuse Insurance Policy (excluding Chartered Organization Reserved Policies), including: (a) any such Non-Settling Insurance Company's failure to provide coverage or otherwise pay under an Abuse Insurance Policy (excluding Chartered Organization Reserved Policies); (b) the refusal of any Non-Settling Insurance Company to compromise and settle any Abuse Claim under or pursuant to any Abuse Insurance Policy (excluding Chartered Organization Reserved Policies); (c) the interpretation or enforcement of the terms of any Abuse Insurance Policy (excluding Chartered Organization Reserved Policies) with respect to any Abuse Claim (excluding Abuse Claims that are not Post-1975 Chartered Organization Abuse Claims); (d) any conduct by any Non-Settling Insurance Company that could give rise to extra-contractual damages, or other wrongful conduct under applicable law (excluding conduct relating to Chartered Organization Reserved Policies); or (e) any right to receive proceeds held by such Participating Chartered Organization with respect to an Abuse Insurance Policy (excluding Chartered Organization Reserved Policies). For the avoidance of doubt, no Cause of Action of the Participating Chartered Organizations, or any of them, against any Settling Insurance Company shall be deemed a Chartered Organization Insurance Action, except for any Cause of Action arising from or related to an Insurance Settlement Agreement.

178. "<u>Participating Chartered Organization Insurance Assignment</u>" means the assignment and transfer by the Participating Chartering Organizations (and each of them) to the Settlement Trust of their rights in and to (a) the Participating Chartered Organization Insurance Actions, (b) the Insurance Action Recoveries, (c) the Insurance Settlement Agreements, and (d) all other rights, claims, benefits, or Causes of Action under or with respect to the Abuse Insurance Policies (but not the policies themselves); <u>provided</u>, <u>however</u>, that the Participating Chartered Organization Insurance Assignment shall not apply to Chartered Organization Reserved Policies or any rights, claims, benefits, or Causes of Action thereunder or with respect thereto.

179. "<u>Participating Chartered Organization Insurance Rights</u>" has the meaning ascribed to such term in <u>Article V.S.1.c</u>.

180.    "<u>Participating Chartered Organization Settlement Contribution</u>" means:

       a.    to the maximum extent permitted by applicable law, the Participating Chartered Organization Insurance Assignment;

       b.    the waiver, release, and expungement from the Claims Register, as of the Effective Date, of any and all Claims that have been asserted in the Chapter 11 Cases by or on behalf of any Participating Chartered Organization, including any Indirect Abuse Claims, without any further notice to or action, order, or approval of the Bankruptcy Court, and the agreement of each Participating Chartered Organization not to (i) file or assert any Claim or Claims against the Settlement Trust, the Debtors, or Reorganized BSA arising from any act or omission of the Debtors on or prior to the Confirmation Date or (ii) file or assert any rights or interests in any property transferred to the Settlement Trust under the Plan; and

       c.    the assignment of any and all Perpetrator Indemnification Claims held by the Participating Chartered Organizations.

181.    "<u>Pension Plan</u>" means the Boy Scouts of America Retirement Plan for Employees, a single-employer, qualified, defined benefit pension plan that is subject to the Employee Retirement Income Security Act of 1974, as amended, and the Internal Revenue Code, of which BSA is the sponsor.

182.    "<u>Perpetrator</u>" means any individual who personally committed or is alleged to have personally committed an act of Abuse that forms the basis for an Abuse Claim.  The term "Perpetrator" does not include any individual who did not personally commit or is not alleged to have personally committed an act of Abuse that forms the basis for an Abuse Claim, against whom an Abuse Claim is nevertheless asserted or may be asserted, including by virtue of such individual's position or service as an employee or volunteer of the Debtors or as a Scout participant, or by virtue of such individual's position or service as an employee or volunteer of a Local Council or a Chartered Organization or as a Scout participant.

183.    "<u>Perpetrator Indemnification Claim</u>" means a Claim against a Perpetrator for indemnification or contribution arising from or relating to an Abuse Claim.

184.    "<u>Person</u>" has the meaning set forth in section 101(41) of the Bankruptcy Code."

185.    "<u>Petition Date</u>" means February 18, 2020.

186.    "<u>Philmont Assignment</u>" means that certain Assignment of Agreements, Licenses, Permits and Contracts, dated as of March 21, 2019, by and from the BSA, as assignor, and JPM, as assignee, which secures the BSA's obligations under the 2010 Credit Agreement, the 2010 Bond Agreement, the 2012 Bond Agreement, and the 2019 RCF Agreement.

187.    "Philmont Mortgage" means that certain Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing, dated as of March 21, 2019, by and from the BSA, as mortgagor, and JPM, as mortgagee, which secures the BSA's obligations under the 2010 Credit Agreement, the 2010 Bond Agreement, the 2012 Bond Agreement, and the 2019 RCF Agreement.

188.    "Plan" means this *Fifth Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* filed by the Debtors, as the same may be amended or modified from time to time pursuant to section 1127 of the Bankruptcy Code.

189.    "Plan Documents" means, collectively, the Plan, the Disclosure Statement, the Disclosure Statement Order, each of the documents that comprises the Plan Supplement, and all of the exhibits and schedules attached to any of the foregoing (including the Settlement Trust Documents, the Hartford Insurance Settlement Agreement, and the TCJC Settlement Agreement). The Plan Documents shall be in form and substance acceptable to (a) the Debtors, the Ad Hoc Committee, the Coalition. the Future Claimants' Representative and Hartford and (b) the Creditors' Committee and JPM in accordance with their consent rights under the JPM / Creditors' Committee Term Sheet.

190.    "Plan Supplement" means the compilation of documents and forms of documents, agreements, schedules, exhibits, and annexes to the Plan, which the Debtors shall file no later than fourteen (14) days before the Voting Deadline, unless otherwise ordered by the Bankruptcy Court, and additional documents filed with the Bankruptcy Court before the Effective Date as amendments, modifications or supplements to the Plan Supplement. The Plan Supplement will include the following: (a) the Amended BSA Bylaws; (b) the Assumed Contracts and Unexpired Leases Schedule; (c) the form of the BSA Settlement Trust Note; (d) the form of the Document Agreement; (e) the form of the DST Agreement; (f) the form of the DST Note; (g) the name of the Creditor Representative; (h) changes, if any, to Reorganized BSA's directors and officers; (i) the form of the Foundation Loan Agreement; (j) the form of agreement reflecting the terms of the Leaseback Requirement; (k) the Rejected Contracts and Unexpired Leases Schedule; (l) the forms of  the Restated 2010 Bond Documents; (m) the forms of the Restated 2012 Bond Documents; (n) the forms of the Restated Credit Facility Documents; (o) the form of the Restated Security Agreement; (p) the names of the initial members of the Settlement Trust Advisory Committee; (q) the name of the initial Special Reviewer; (r) the execution copy of the Hartford Insurance Settlement Agreement once the settlement memorialized in the term sheet appended to the *Sixth Mediators' Report* [D.I. 6210] filed on September 14, 2021 is set forth in a definitive written settlement agreement that is consistent with such term sheet and executed by all parties thereto (and any additional parties that execute a joinder thereto from time to time); and (s) the execution copy of the TCJC Settlement Agreement once the settlement memorialized in the term sheet appended to the *Sixth Mediators' Report* [D.I. 6210] filed on September 14, 2021 is set forth in a definitive written settlement agreement that is consistent with such term sheet and executed by all parties thereto (and any additional parties that execute a joinder thereto from time to time); provided that the Plan Documents listed in clauses (b) and (k) of the foregoing sentence will be revised, in the Debtors' discretion,

subject to Article VI, to account for any additional Executory Contracts or Unexpired Leases to be assumed or rejected in advance of the Confirmation Hearing. The Plan Supplement shall be served only on those parties that have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 and any party in interest who requests in writing a copy from counsel to the Debtors. Once the Plan Supplement is filed, a copy will also be available for review on the Notice and Claims Agent's website free of charge at https://omniagentsolutions.com/BSA. The Plan Supplement shall be in form and substance reasonably acceptable to the Creditors' Committee and JPM.

191. "Post-1975 Chartered Organization Abuse Claims" means any Abuse Claim against a Participating Chartered Organization that relates to Abuse alleged to have first occurred on or after January 1, 1976; provided, however, that the term "Post-1975 Chartered Organization Abuse Claims" shall be limited to any Claim against a Participating Chartered Organization that is attributable to, arises from, is based upon, relates to, or results from Abuse that occurred in connection with the Participating Chartered Organization's sponsorship of one or more Scouting units.

192. "Post-Effective Date Chartered Organization Settlement" shall have the meaning ascribed to such term in Article IV.I.

193. "Post-Effective Date Insurance Settlement" shall have the meaning ascribed to such term in Article IV.K.

194. "Prepetition Debt and Security Documents" means, collectively, the 2010 Credit Facility Documents, the 2019 RCF Documents, the 2010 Bond Documents, the 2012 Bond Documents, the Prepetition Security Documents (2019), and the Prepetition Security Agreement (2020).

195. "Prepetition Security Agreement (2019)" means that certain Third Amended and Restated Security Agreement, dated as of March 21, 2019, by and among the BSA and Arrow, as debtors, JPM, in its capacity as collateral agent, JPM, in its capacity as the lender under each of the 2010 Credit Agreement and the 2019 RCF Agreement, and as holder under each of the 2010 Bond Agreement and the 2012 Bond Agreement.

196. "Prepetition Security Agreement (2020)" means that certain Consent and Security Agreement dated as of February 3, 2020, by and among Delaware BSA, the BSA, JPM, as collateral agent, and JPM, in its capacity as the lender under the 2010 Credit Agreement and the 2019 RCF Agreement, and as holder under the 2010 Bond Agreement and the 2012 Bond Agreement.

197. "Prepetition Security Documents (2019)" means, collectively, the Prepetition Security Agreement (2019), the Florida Sea Base Mortgage, the Florida Sea Base Assignment, the Headquarters Deed of Trust, the Headquarters Assignment, the Northern Tier Mortgage, the Northern Tier Assignment, the Philmont Mortgage, the Philmont Assignment, and the Arrow Collateral Assignment.

198.   "Priority Tax Claim" means any Claim of a Governmental Unit against the Debtors that is entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

199.   "Privileged Information" means any privileged information that relates, in whole or in part, to any Abuse Claim, including: (a) the Debtors' books and records transferred to the Settlement Trust in accordance with the Document Agreement; (b) any privileged information containing a factual or legal analysis or review of any Abuse Claim; (c) any privileged information evaluating the reasonableness, effectiveness, or Confirmability of the Plan or any other chapter 11 plan filed or that could be filed in the Chapter 11 Cases; (d) any privileged information exchanged by the Debtors or their professionals, on the one hand, and any of the Related Non-Debtor Entities, Local Councils, the Ad Hoc Committee, either Official Committee, the Future Claimants' Representative, or their respective Representatives, on the other hand, related to the Plan, the Plan Documents, or the Abuse Claims; and (e) information shared pursuant to that certain Joint Defense, Common Interest, and Confidentiality Agreement among the BSA, the Ad Hoc Committee, and each Local Council that executed a joinder to said agreement that was acknowledged in writing by the BSA and the Ad Hoc Committee; (f) any privileged information containing a factual or legal analysis of the Debtors' potential exposure in connection with any Abuse Claim or any litigation related thereto; and (g) any Common-Interest Communications with Insurers.

200.   "Pro Rata" means, at any time, with respect to any Claim, the proportion that the amount of such Claim in a particular Class or group of Classes bears to the aggregate amount of all Claims (including Disputed Claims) in such Class or group of Classes, unless in each case the Plan provides otherwise.

201.   "Pro Rata Share" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in that Class.

202.   "Professional" means any Person retained by the Debtors, the Tort Claimants' Committee, the Creditors' Committee, or the Future Claimants' Representative pursuant to a Final Order of the Bankruptcy Court entered under sections 327, 328, 363, or 1103 of the Bankruptcy Code.

203.   "Professional Fee Claim" means any Claim of a Professional or other Person for Allowance by the Bankruptcy Court and payment by the Debtors of compensation for services rendered and/or reimbursement of costs or expenses incurred in the Chapter 11 Cases for the period from the Petition Date to and including the Effective Date under sections 328, 330, 331, or 503(b) of the Bankruptcy Code, including a Claim for reimbursement and/or payment of Coalition Restructuring Expenses under Article V.T.

204.   "Professional Fee Reserve" means a segregated account funded from Unrestricted Cash and Investments on hand of the Debtors as of the Effective Date in an amount equal to the Professional Fee Reserve Amount as of such date, solely for the purpose of paying all Allowed Professional Fee Claims.

205.    "Professional Fee Reserve Amount" means the aggregate Accrued Professional Fees as of the Effective Date, as estimated by the Professionals in accordance with Article II.A.2.

206.    "Proof of Claim" means any proof of claim filed with the Bankruptcy Court or the Notice and Claims Agent pursuant to section 501 of the Bankruptcy Code and Bankruptcy Rules 3001 or 3002 that asserts a Claim against either of the Debtors.

207.    "Protected Parties" means the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Contributing Chartered Organizations; (f) the Settling Insurance Companies, including Hartford; and (g) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Protected Party.  Notwithstanding the foregoing, a Contributing Chartered Organization shall be a Protected Party with respect to Abuse Claims only as set forth in the definition of "Abuse Claim."

208.    "Quarterly Fees" means all fees due and payable pursuant to section 1930(a)(6) of title 28 of the United States Code.

209.    "Reinstatement" means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the holder of such Claim or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; (iv) if such Claim arises from any failure to perform a nonmonetary obligation, compensating the holder of such Claim (other than the Debtors or an "insider" of the Debtors within the meaning of section 101(31) of the Bankruptcy Code) for any actual pecuniary loss incurred by such holder as the result of such failure; and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the holder thereof.  "Reinstated" has a correlative meaning.

210.    "Rejected Contracts and Unexpired Leases Schedule" means the schedule of Executory Contracts or Unexpired Leases to be rejected by the BSA under the Plan, as set forth in the Plan Supplement, as may be amended, modified, or supplemented from time to time.

211.    "Rejection Damages Bar Date" has the meaning ascribed to such term in Article VI.B.

212.    "Rejection Damages Claim" means a Claim for damages alleged to arise from the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 or 1123 of the Bankruptcy Code.

213.    "Related Non-Debtor Entities" means the Entities listed on Exhibit H, including non-debtor Affiliates of the Debtors that are directly or indirectly wholly owned by, or subject to the control of, the BSA.  For the avoidance of doubt, Related Non-Debtor Entities do not include Local Councils or Chartered Organizations.

214.    "Release Injunctions" means the injunctions described in Article X.L.

215.    "Released Parties" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Creditors' Committee; (e) the members of the Creditors' Committee in their capacities as such; (f) the Tort Claimants' Committee; (g) the members of the Tort Claimants' Committee in their capacities as such; (h) the Future Claimants' Representative; (i) the Coalition; (j) JPM; (k) the Settling Insurance Companies, including Hartford; (l) the Contributing Chartered Organizations, including TCJC; (m) the Foundation, in its capacity as lender under the Foundation Loan Agreement; (n) the Ad Hoc Committee; (o) the members of the Ad Hoc Committee in their capacities as such; (p) the Creditor Representative; (q) the Mediators; and (r) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Released Party; provided further, that the definition of "Released Parties" shall in all instances be subject to Article X.J.

216.    "Releases" means the releases set forth in Article X.J.

217.    "Releasing Claim Holder" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in Article X.J.4; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in Article X.J.4; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in Article X.J.4; and (d) all of such Persons' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such.  No holder of a Claim in a Class that is Impaired under the Plan will be deemed a "Releasing Claim Holder" to the extent such holder abstained from voting.

218.    "Reorganized BSA" means the BSA, as reorganized pursuant to and under the Plan on or after the Effective Date.

219.    "Representatives" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, subsidiaries, and Affiliates, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

220.   "Restated 2010 Bond Documents" means those certain restated bond documents, including a restated revenue bond, bond purchase agreement, promissory note, security agreement, and all documentation executed and delivered in connection therewith, in each case containing substantially the same terms as the 2010 Bond Documents except that: (a) the amortization schedule attached to the 2010 Bond shall be amended and restated such that (i) interest is payable in monthly installments (at the same rates in the 2010 Bond Documents) beginning on the date that is one month after the Effective Date (as to be specified in the Restated 2010 Bond Documents) and ending on the Restated Maturity Date, and (ii) principal is payable in monthly installments (in the same monthly amounts as the periodic amortization amounts in the 2010 Bond Documents) beginning on the date that is two years after the Effective Date (as to be specified in the Restated 2010 Bond Documents) and ending on the Restated Maturity Date; and (b) the Restated 2010 Bond Documents shall be guaranteed by Arrow.  The covenants in the Restated 2010 Bond Documents shall be in form and substance acceptable to JPM and the BSA.  The obligations under the Restated 2010 Bond Documents shall be secured by the Restated Security Agreement.  The then-current forms of the Restated 2010 Bond Documents shall be filed with the Plan Supplement.

221.   "Restated 2012 Bond Documents" means those certain restated bond documents, including a restated revenue bond, bond purchase agreement, promissory note, security agreement, and all documentation executed and delivered in connection therewith, in each case containing substantially the same terms as the 2012 Bond Documents except that: (a) the amortization schedule attached to the 2012 Bond shall be amended and restated such that (i) interest is payable in monthly installments (at the same rates in the 2012 Bond Documents) beginning on the date that is one month after the Effective Date (as to be specified in the Restated 2012 Bond Documents) and ending on the Restated Maturity Date, and (ii) principal is payable in monthly installments (in the same monthly amounts as the periodic amortization amounts in the 2012 Bond Documents) beginning on the date that is two years after the Effective Date (as to be specified in the Restated 2012 Bond Documents) and ending on the Restated Maturity Date; and (b) the Restated 2012 Bond Documents shall be guaranteed by Arrow.  The covenants in the Restated 2012 Bond Documents shall be in form and substance acceptable to JPM and the BSA.  The obligations under the Restated 2012 Bond Documents shall be secured by the Restated Security Agreement.  The then-current forms of the Restated 2012 Bond Documents shall be filed with the Plan Supplement.

222.   "Restated Credit Facility Documents" means those certain restated credit facility documents, which shall contain substantially the same terms as the 2010 Credit Facility Documents and the 2019 RCF Documents, as applicable to the 2010 Credit Facility Claims and the 2019 RCF Claims, except that: (a) the revolving credit facilities provided under the 2010 Credit Facility Documents and the 2019 RCF Documents shall be frozen and converted to term loans; (b) the Revolving Maturity Date and the Term Loan Maturity Date (each as defined in the 2010 Credit Facility Documents) and the Maturity Date (as defined in the 2019 RCF Documents) shall be extended to the Restated Maturity Date; (c) interest is payable in quarterly installments (at the same rates in the applicable Prepetition Debt and Security Documents) beginning on the date that is three months after the Effective Date (as to be specified in the Restated Credit Facility

Documents) and ending on the Restated Maturity Date; (d) principal is payable in quarterly installments (at 1/40th of the outstanding balance on the Effective Date) beginning on the date that is two years after the Effective Date (as to be specified in the Restated Credit Facility Documents) and ending on the Restated Maturity Date; and (e) the Restated Credit Facility Documents shall be guaranteed by Arrow.  The covenants in the Restated Credit Facility Documents shall be in form and substance acceptable to JPM and the BSA.  The obligations under the Restated Credit Facility Documents shall be secured by the Restated Security Agreement.  The then-current forms of the Restated Credit Facility Documents shall be filed with the Plan Supplement.

223.    "Restated Debt and Security Documents" means, collectively, the Restated 2010 Bond Documents, the Restated 2012 Bond Documents, the Restated Credit Facility Documents, and the Restated Security Agreement.  The Restated Debt and Security Documents shall be on terms acceptable to JPM and the BSA, and reasonably acceptable to the Creditors' Committee.

224.    "Restated Maturity Date" means the maturity date applicable to each of the Restated Debt and Security Documents in accordance with the terms thereof, which shall in each case be the date that is ten (10) years after the Effective Date.

225.    "Restated Security Agreement" means that certain restated security agreement, pursuant to which Reorganized BSA and Arrow shall grant blanket first-priority liens on and security interests in all of Reorganized BSA's and Arrow's assets, including all collateral secured by the Prepetition Security Documents (2019), to JPM to secure Reorganized BSA's and Arrow's obligations under the Restated 2010 Bond Documents, the Restated 2012 Bond Documents and the Restated Credit Facility Documents.  The then-current form of the Restated Security Agreement shall be filed with the Plan Supplement.

226.    "Restoration Plan" means the Boy Scouts of America Retirement Benefit Restoration Plan, a non-qualified defined benefit retirement plan under section 457(f) of the Internal Revenue Code, which provides supplemental retirement benefits to certain current and former employees of the Debtors or Local Councils.

227.    "Schedules" means, with respect to each Debtor, the schedules of assets and liabilities and the statement of financial affairs filed by such Debtor with the Bankruptcy Court pursuant to sections 521 and 1106(a)(2) of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statements may be amended or supplemented from time to time prior to the Effective Date.

228.    "Scouting Released Claims" has the meaning ascribed to such term in Article X.J.

229.    "Scouting University" means that certain parcel of real property owned by the BSA located at 1301 Solana Boulevard, Westlake, Texas 76262, together with the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and other improvements now or hereafter located thereon, the sale of which

was approved pursuant to the *Order, Pursuant to Section 363 of the Bankruptcy Code, Authorizing the Sale of Certain Real Property Located in Westlake Texas*, entered by the Bankruptcy Court on June 14, 2021 at Docket No. 5326.

230. "Secured" means, with respect to any Claim, the extent to which the Claim is: (a) secured by a Lien on property of a Debtor's Estate (i) as set forth in the Plan, (ii) as agreed to by the holder of such Claim and the Debtors, or (iii) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (b) subject to any setoff right of the holder of such Claim under section 553 of the Bankruptcy Code, but, with respect to both of the foregoing clauses (a) and (b), only to the extent of the value of the interest of such holder in the Estate's interest in the property securing such Claim or the amount subject to setoff, as applicable.

231. "Settlement of Restricted and Core Asset Disputes" has the meaning ascribed to such term in Article V.S.3.

232. "Settlement Trust" means the trust organized under the laws of the state of Delaware and established under Article IV and the Settlement Trust Agreement for the purposes set forth therein, including assuming liability for all Abuse Claims, holding, preserving, maximizing, and administering the Settlement Trust Assets, and directing the processing, liquidation and payment of all compensable Abuse Claims in accordance with the Settlement Trust Documents.

233. "Settlement Trust Advisory Committee" or "STAC" means the committee serving in accordance with Article IV and the Settlement Trust Agreement, which shall have the powers, duties and obligations set forth in the applicable Settlement Trust Agreement. The initial members of the Settlement Trust Advisory Committee shall be identified in the Plan Supplement.

234. "Settlement Trust Agreement" means the Settlement Trust Agreement dated as of the Effective Date, substantially in the form attached hereto as Exhibit B, as the same may be amended or modified from time to time in accordance with the terms thereof, which shall be in form and substance acceptable to (a) the Debtors, the Ad Hoc Committee, the Coalition and the Future Claimants' Representative and (b) the Creditors' Committee with respect to the treatment of Non-Abuse Litigation Claims.

235. "Settlement Trust Assets" means the following assets and any income, profits and proceeds realized, received or derived from such assets subsequent to the transfer of such assets to the Settlement Trust:

        a.       the BSA Settlement Trust Contribution;

        b.       the Local Council Settlement Contribution;

        c.       the Contributing Chartered Organization Settlement Contribution, including the TCJC Settlement Contribution;

   d.  the Participating Chartered Organization Settlement Contribution; and

   e.  any and all funds, proceeds or other consideration contributed to the Settlement Trust under the terms of any Insurance Settlement Agreement, including the Hartford Settlement Contribution.

  236. "<u>Settlement Trust Causes of Action</u>" means any Estate Cause of Action and any Cause of Action held by any Local Council or other Person that is or becomes a Protected Party or a Limited Protected Party, which Estate Cause of Action or other such Cause of Action, as applicable, is not otherwise expressly released under the Plan or the Plan Documents, in each case solely attributable to: (a) all defenses to any Abuse Claim, including all defenses under section 502 of the Bankruptcy Code; (b) with respect to Abuse Claims, all rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted; (c) any other Causes of Action with respect to Abuse Claims that either Debtor, any Related Non-Debtor Entity, any Local Council or any other Protected Party or Limited Protected Party would have had under applicable law if the Chapter 11 Cases had not occurred and the holder of such Abuse Claim had asserted such Cause of Action by initiating civil litigation against either Debtor, any Related Non-Debtor Entity, any Local Council or any other Protected Party or Limited Protected Party (including any Causes of Action against co-defendants); and (d) any Cause of Action of either Debtor, any Related Non-Debtor Entity, any Local Council or any other Protected Party or Limited Protected Party, under the laws of any jurisdiction, for reimbursement, indemnity, contribution, breach of contract, or otherwise arising from or relating to any payments made by either Debtor, any Related Non-Debtor Entity, any Local Council or any other Protected Party or Limited Protected Party on account of Abuse Claims on or before the Effective Date.

  237. "<u>Settlement Trust Documents</u>" means, collectively, (a) the Settlement Trust Agreement, (b) the Trust Distribution Procedures, (c) the Document Agreement, (d) the Confirmation Order, and (e) any other agreements, instruments and documents governing the establishment, administration and operation of the Settlement Trust, which shall be substantially in the forms set forth as exhibits hereto or in the Plan Supplement, as the same may be amended or modified from time to time in accordance with the terms thereof.

  238. "<u>Settlement Trust Expenses</u>" means any liabilities, costs, or expenses of, or imposed upon, or in respect of, the Settlement Trust once established (except for payments to holders of Abuse Claims on account of such Claims).  Settlement Trust Expenses shall also expressly include: (a) any and all liabilities, costs, and expenses incurred subsequent to the Effective Date in connection with the Settlement Trust Assets (including the prosecution of any Settlement Trust Causes of Action and Insurance Actions), in each case whether or not any such action results in a recovery for the Settlement Trust; (b) the reasonable documented costs and expenses incurred by Reorganized BSA, the Related Non-Debtor Entities, the Local Councils, the Ad Hoc

Committee, or the Contributing Chartered Organizations in taking any action on behalf of or at the direction of the Settlement Trust, if any, following such Entities' transfer to the Settlement Trust of copies of all records and documents in their possession, custody or control pertaining to Abuse Claims in accordance with the Document Agreement; and (c) reasonable, documented and contractual professional or advisory fees incurred by the Coalition for up to thirty (30) days after the Effective Date in connection with the initial effectuation of the Plan and the Settlement Trust.

239.    "Settlement Trustee" means Eric D. Green or any successor trustee who may subsequently be appointed pursuant to the terms of the Settlement Trust Agreement.

240.    "Settling Insurance Company" means, solely with respect to Abuse Insurance Policies that are the subject of an Insurance Settlement Agreement, any Insurance Company that contributes funds, proceeds or other consideration to or for the benefit of the Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by (a) an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order or the Affirmation Order or (b) the Settlement Trust.  Without limiting the foregoing, subject to Confirmation of the Plan and approval of the Hartford Insurance Settlement Agreement by an order of the Bankruptcy Court (including in the Confirmation Order), Hartford is a Settling Insurance Company and shall be designated as such in the Confirmation Order and the Affirmation Order.

241.    "Special Reviewer" means the individual approved by the Coalition for the purposes set forth in the Settlement Trust Agreement.  The name of the initial Special Reviewer shall be identified in the Plan Supplement.

242.    "Specified Insurance Policy" means any BSA Insurance Policy with an inception date of March 1, 2013 to the present, except for the excess liability policy issued to the BSA by Navigators Specialty Insurance Company for the period from March 1, 2013 to February 28, 2014.

243.    "Specified Primary Insurance Policy" means any Specified Insurance Policy that is a primary Abuse Insurance Policy.  Specified Primary Insurance Policies include primary Abuse Insurance Policies issued by Old Republic Insurance Company for the periods of coverage between March 1, 2013 and February 28, 2019, and by Evanston Insurance Company for the period of coverage between March 1, 2019 and February 28, 2020.

244.    "Specified Excess Insurance Policy" means any Specified Insurance Policy that is an umbrella or excess Abuse Insurance Policy.

245.    "Summit Bechtel Reserve" means the parcels of real property that comprise the Summit Bechtel Family National Scout Reserve, together with the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and other improvements now or hereafter located thereon.

246.    "TCJC" means The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole, including any affiliates or personnel.

247.    "TCJC Settlement Contribution" shall mean the "Settlement Amount" as defined in the TCJC Settlement Agreement, which is equal to Two Hundred Fifty Million Dollars ($250,000,000).

248.    "TCJC Settlement" has the meaning ascribed to such term in Article V.S.5.

249.    "TCJC Settlement Agreement" means that certain settlement agreement, which remains subject to definitive documentation, by and between TCJC, the Debtors, the Ad Hoc Committee, the Coalition, the Future Claimants' Representative, and certain state court counsel to holders of Direct Abuse Claims, as such agreement is described in the term sheet appended to the *Sixth Mediators' Report* [D.I. 6210] filed on September 14, 2021.    Upon its execution by all of the parties thereto, the TCJC Settlement Agreement shall be filed with the Plan Supplement and attached hereto as Exhibit J-1.

250.    "Tort Claimants' Committee" means the official committee of tort claimants, consisting of survivors of childhood sexual abuse, appointed by the United States Trustee in the Chapter 11 Cases under section 1102(a) of the Bankruptcy Code.

251.    "Trust Distribution Procedures" means the Boy Scouts of America Trust Distribution Procedures for Abuse Claims, substantially in the form attached hereto as Exhibit A, as the same may be amended or modified from time to time in accordance with the terms thereof, which shall be acceptable to (a) the Debtors, the Ad Hoc Committee, the Coalition and the Future Claimants' Representative and (b) the Creditors' Committee with respect to the treatment of Non-Abuse Litigation Claims.

252.    "Unexpired Lease" means a lease to which BSA is a party, including any and all pre- and post-petition amendments thereto, that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

253.    "Unimpaired" means any Claim that is not Impaired, including any Claim that is Reinstated.

254.    "United States Trustee" means the Office of the United States Trustee for the District of Delaware.

255.    "Unrestricted Cash and Investments" means all Cash and balance sheet investments owned by the Debtors as of the date that is immediately prior to the Effective Date that are not subject to legally enforceable restrictions requiring the use or disposition of such assets for a particular purpose.

256.    "Volunteer Screening Database" is the database established and maintained by the BSA to, among other things, track and remove from Scouting volunteer leaders suspected of having acted in an inappropriate sexual manner with youth participants in Scouting.

257.    "Voting Deadline" means the date by which all Persons entitled to vote on the Plan must vote to accept or reject the Plan.

258.    "Voting Procedures" means those certain procedures and supplemental procedures approved by the Bankruptcy Court for soliciting and tabulating the votes to accept or reject the Plan cast by holders of Claims against the Debtors entitled to vote on the Plan.  The Voting Procedures shall be in form and substance reasonably acceptable to the Creditors' Committee as they pertain to Convenience Claims, General Unsecured Claims and Non-Abuse Litigation Claims.

259.    "Warehouse and Distribution Center" means that certain parcel of real property owned by the BSA located at 2109 Westinghouse Boulevard, Charlotte, North Carolina 28269, together with the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and other improvements now or hereafter located thereon.

260.    "Workers' Compensation Program" means the Debtors' (a) written contracts, agreements, agreements of indemnity, in each case relating to workers' compensation, (b) self-insured workers' compensation bonds, policies, programs, and plans for workers' compensation and (c) workers' compensation insurance issued to or entered into at any time by any of the Debtors.

261.    "Youth Member" means a youth member of the BSA registered as of December 31 of any applicable year in a core program (Cub Scouts, Scouts BSA (in each case under age 18), Sea Scouts, Venturing, or Exploring (in each case under age 21)), whose registration is current as of such date and who has paid the individual annual registration fee (which fee has not been refunded in whole or in part).

B.    Interpretation; Application of Definitions and Rules of Construction.    For purposes of the Plan, unless otherwise provided herein:  (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; provided, however, that the rule of interpretation set forth in clause (2) shall not be imputed to any contract, lease, instrument, release, or other agreement as to which JPM or the Creditors' Committee have consent rights pursuant to the JPM / Creditors' Committee Term Sheet, and such consent rights shall be as set forth in the JPM / Creditors' Committee Term Sheet and incorporated herein pursuant to Article I.D; (3) any reference in the Plan to an existing document, schedule or exhibit filed or to be filed means such document, schedule or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to the Plan; (4) any reference to a Person as a holder of a Claim or Interest includes that Person's successors and assigns; (5) unless otherwise stated, all references in the Plan to Articles are references to Articles of the Plan, as the same may be amended or modified from time to time in accordance with the terms hereof; (6) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the

Plan as a whole and not to any particular Article or clause contained in the Plan; (7) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (8) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (9) any immaterial effectuating provisions may be interpreted by Reorganized BSA in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Person; (10) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (11) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (12) any reference to a Person's "subsidiaries" means its direct and indirect subsidiaries; and (13) in computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

C.      <u>Reference to Monetary Figures</u>.  All references in the Plan to monetary figures shall refer to the legal tender of the United States of America unless otherwise expressly provided.

D.      <u>Consent Rights</u>.  Notwithstanding anything herein to the contrary, the consent rights of JPM and the Creditors' Committee, respectively, as set forth in the JPM / Creditors' Committee Term Sheet, with respect to the form and substance of the Plan, all exhibits and schedules to the Plan, the Plan Supplement, and the other Plan Documents, including any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, to the extent they pertain to the treatment of the 2010 Credit Facility Claims, the 2019 RCF Claims, the 2010 Bond Claims, or the 2012 Bond Claims (in the case of JPM) or Convenience Claims, General Unsecured Claims, or Non-Abuse Litigation Claims (in the case of the Creditors' Committee), shall be incorporated herein by this reference (including to the applicable definitions in <u>Article I.A</u>) and fully enforceable as if stated in full herein.  TCJC will have consent rights with respect to any modifications to the Plan, the Settlement Trust Documents, the Confirmation Order, and the Affirmation Order relating to the Channeling Injunction, releases by holders of Abuse Claims, and related definitional terms including, for the avoidance of doubt, "Abuse," "Abuse Claim," and "Protected Parties," but only to the extent that such modifications would affect TCJC.

E.      <u>Controlling Document</u>.  In the event of any conflict between the terms and provisions in the Plan (without reference to the Plan Supplement), on the one hand, and the terms and provisions in the Disclosure Statement, the Plan Supplement, any other instrument or document created or executed pursuant to the Plan, or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), on the other hand, the Plan (without reference to the Plan Supplement) shall govern and control; <u>provided</u>, <u>however</u>, that (1) in the event of a conflict between Confirmation Order, on the one hand, and any of the other Plan Documents, on the other hand, the Confirmation Order shall govern and control in all respects, and (2) in the event

43

of a conflict between the terms and provisions of the Plan, the Disclosure Statement, the Plan Supplement, or any other Plan Document, on the one hand, and the terms and provisions of the Hartford Insurance Settlement Agreement, on the other hand, the terms and provisions of the Hartford Insurance Settlement Agreement shall control.

## ARTICLE II.

## ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS

A.      Administrative Expense Claims.

1.      Administrative Expense Claims Generally.  Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment with respect to such Allowed Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim (other than Professional Fee Claims, which are governed by Article II.A.2) shall receive, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Claim, payment of Cash in an amount equal to the unpaid portion of such Allowed Administrative Expense Claim, or such amounts and on other such terms as may be agreed to by the holders of such Claims, on or as soon as reasonably practicable after the later of: (a) the Effective Date; (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; (c) such other date(s) as such holder and the Debtors or Reorganized BSA shall have agreed; or (d) such other date ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims that arise in the ordinary course of the Debtors' non-profit operations during the Chapter 11 Cases may be paid by the Debtors or Reorganized BSA in the ordinary course of operations and in accordance with the terms and conditions of the particular agreements governing such obligations, course of dealing, course of operations, or customary practice.  Notwithstanding anything to the contrary herein or in the Cash Collateral Order, no Claim on account of any diminution in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) (as each such capitalized term is defined in the Cash Collateral Order) from and after the Petition Date shall be Allowed unless such Claim is Allowed by a Final Order of the Bankruptcy Court. The Hartford Administrative Claim shall be an Allowed Administrative Expense Claim and shall be paid in full in cash to Hartford on, or as soon as reasonably practicable after, the Effective Date.

2.      Professional Fee Claims.

a.      Final Fee Applications.  All Professionals or other Persons requesting the final Allowance and payment of compensation and/or reimbursement of expenses pursuant to sections 328, 330, 331 and/or 503(b) or under Article V.T as described therein, for services rendered during the period from the Petition Date to and including the Effective Date shall file and serve final applications for Allowance and payment of Professional Fee Claims on counsel to the Debtors and the United States Trustee no later than the first Business Day that is forty-five (45) days after the Effective Date.  Objections to any Professional Fee Claim must be filed and served on Reorganized BSA and the

applicable Professional within twenty-one (21) calendar days after the filing of the final fee application that relates to the Professional Fee Claim (unless otherwise agreed by the Debtors or Reorganized BSA, as applicable, and the Professional requesting Allowance and payment of a Professional Fee Claim). The Fee Examiner shall continue to act in its appointed capacity unless and until all Professional Fee Claims have been approved by order of the Bankruptcy Court, and Reorganized BSA shall be responsible to pay the fees and expenses incurred by the Fee Examiner in rendering services after the Effective Date.

b.    Professional Fee Reserve.  On the Effective Date, the Debtors shall establish and fund the Professional Fee Reserve with Cash in an amount equal to the Professional Fee Reserve Amount plus a reasonable cushion amount determined by the Debtors.  Funds held in the Professional Fee Reserve shall not be considered property of the Debtors' Estates, Reorganized BSA, the Settlement Trust, or the Core Value Cash Pool.  Professional Fees owing on account of Allowed Professional Fee Claims shall be paid in Cash from funds held in the Professional Fee Reserve as soon as reasonably practicable after such Professional Fee Claims are Allowed by a Final Order of the Bankruptcy Court or authorized to be paid under the Compensation Procedures Order; provided, however, that Reorganized BSA's obligations with respect to Allowed Professional Fee Claims shall not be limited by or deemed limited to the balance of funds held in the Professional Fee Reserve.  To the extent the funds held in the Professional Fee Reserve are insufficient to satisfy the Allowed Professional Fee Claims in full, each holder of an Allowed Professional Fee Claim shall have an Allowed Administrative Expense Claim for any deficiency, which shall be satisfied in accordance with Article II.A.1.  No Liens, Claims, interests, charges, or other Encumbrances or liabilities of any kind shall encumber the Professional Fee Reserve in any way.  When all Allowed Professional Fee Claims have been paid in full, amounts remaining in the Professional Fee Reserve, if any, shall be transferred to the Settlement Trust.

c.    Professional Fee Reserve Amount.  To be eligible for payment for Accrued Professional Fees incurred up to and including the Effective Date, Professionals shall estimate their Accrued Professional Fees as of the Effective Date and deliver such estimate to the Debtors at least five (5) Business Days prior to the anticipated Effective Date, and Coalition Professionals shall provide the Debtors a reasonable estimate of total Coalition Restructuring Expenses in accordance with Article V.T.  If a Professional or Coalition Professional does not provide such estimate, the Debtors may estimate the unbilled fees and expenses of such Professional or Coalition Professional.  The total amount so estimated will constitute the Professional Fee Reserve Amount, provided that such estimate will not be considered an admission or limitation with respect to the fees and expenses of such Professional or Coalition Professional.

d.    Post-Effective Date Fees and Expenses.  From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 or 1103 of the Bankruptcy Code in seeking retention or

compensation for services rendered after such date shall terminate, and Professionals may be employed and paid in the ordinary course of operations without any further notice to or action, order, or approval of the Bankruptcy Court. The reasonable and documented fees and expenses incurred by the Professionals to the Creditors' Committee after the Effective Date until the complete dissolution of the Creditors' Committee for all purposes in accordance with <u>Article X.R</u> will be paid by Reorganized BSA in the ordinary course of business (and not later than thirty (30) days after submission of invoices).

B.    <u>Priority Tax Claims</u>. Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, at the sole option of the Debtors or Reorganized BSA, as applicable: (1) Cash in an amount equal to such Allowed Priority Tax Claim on or as soon as reasonably practicable after the later of (a) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date; (b) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course as such obligation becomes due; <u>provided</u>, <u>however</u>, that the Debtors reserve the right to prepay all or a portion of any such amounts at any time under this option without penalty or premium; or (2) regular installment payments in Cash of a total value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim over a period ending not later than five years after the Petition Date.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    <u>Classification of Claims and Interests</u>.

1.    <u>Grouping of Debtors for Convenience</u>. The Plan is being proposed as a joint plan of reorganization of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan of reorganization for each Debtor. The Plan is not premised upon the substantive consolidation of the Debtors with respect to the Classes of Claims or Interests set forth in the Plan.

2.    <u>Classification in General</u>. For purposes of organization, voting, and all matters related to Confirmation, and except as otherwise provided herein, all Claims (other than Administrative Expense Claims and Priority Tax Claims) against and Interests in the Debtors are classified as set forth in this <u>Article III</u>. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims described in <u>Article II</u> have not been classified and are excluded from the following Classes. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the description of such Class, and is classified in another Class or Classes to the extent that any remainder of the Claim or Interest falls within the description of such other Class or Classes. Notwithstanding anything to the contrary contained in the Plan, no distribution shall be made on account

of any Claim that is not Allowed for distribution purposes (if applicable) or any Claim that has been satisfied, released, or otherwise settled prior to the Effective Date.

       3.    <u>Summary of Classification</u>.  The following table designates the Classes of Claims against and Interests in the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; or (c) presumed to accept or deemed to reject the Plan.

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 2 | Other Secured Claims | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 3A | 2010 Credit Facility Claims | Impaired | Entitled to Vote |
| 3B | 2019 RCF Claims | Impaired | Entitled to Vote |
| 4A | 2010 Bond Claims | Impaired | Entitled to Vote |
| 4B | 2012 Bond Claims | Impaired | Entitled to Vote |
| 5 | Convenience Claims | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Non-Abuse Litigation Claims | Impaired | Entitled to Vote |
| 8 | Direct Abuse Claims | Impaired | Entitled to Vote |
| 9 | Indirect Abuse Claims | Impaired | Entitled to Vote |
| 10 | Interests in Delaware BSA | Impaired | Deemed to Reject; Not Entitled to Vote |

    B.    <u>Treatment of Claims and Interests</u>.

       1.    <u>Class 1 – Other Priority Claims</u>.

          a.    <u>Classification</u>:  Class 1 consists of all Other Priority Claims.

          b.    <u>Treatment</u>:  Except to the extent that a holder of an Allowed Other Priority Claim agrees to less favorable treatment of such Claim, in full and final satisfaction of such Allowed Other Priority Claim, at the sole option of Reorganized BSA: (i) each such holder shall receive payment in Cash in an amount equal to such Allowed Other Priority Claim, payable on or as soon as reasonably practicable after the last to occur of (x) the Effective Date, (y) the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, and (z) the date on which the holder of such Allowed Other Priority Claim and the Debtors or Reorganized BSA, as applicable, shall otherwise agree in writing; or (ii) satisfaction of such Allowed Other Priority Claim in any other manner that renders the Allowed Other Priority Claim Unimpaired, including Reinstatement.

          c.    <u>Voting</u>:  Class 1 is Unimpaired, and each holder of an Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Other Priority Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Other Priority Claims.

2.      Class 2 – Other Secured Claims.

a.      Classification:  Class 2 consists of all Other Secured Claims.  To the extent that Other Secured Claims are Secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 2 for purposes of voting to accept or reject the Plan and receiving Distributions under the Plan.

b.      Treatment:  Except to the extent that a holder of an Allowed Other Secured Claim agrees to less favorable treatment of such Claim, in full and final satisfaction of such Allowed Other Secured Claim, each holder of an Allowed Other Secured Claim will receive, at the sole option of Reorganized BSA: (i) Cash in an amount equal to the Allowed amount of such Claim, including the payment of any interest required to be paid under section 506(b) of the Bankruptcy Code, payable on or as soon as reasonably practicable after the last to occur of (x) the Effective Date, (y) the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, and (z) the date on which the holder of such Allowed Other Secured Claim and the Debtors or Reorganized BSA, as applicable, shall otherwise agree in writing; (ii) satisfaction of such Other Secured Claim in any other manner that renders the Allowed Other Secured Claim Unimpaired, including Reinstatement; or (iii) return of the applicable collateral on the Effective Date or as soon as reasonably practicable thereafter in satisfaction of the Allowed amount of such Other Secured Claim.

c.      Voting:  Class 2 is Unimpaired, and each holder of an Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.   Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Other Secured Claims.

3.      Class 3A – 2010 Credit Facility Claims.

a.      Classification:   Class 3A consists of all 2010 Credit Facility Claims.

b.      Allowance:  On the Effective Date, all 2010 Credit Facility Claims shall be deemed fully Secured and Allowed pursuant to section 506(a) of the Bankruptcy Code, and not subject to any counterclaim, defense, offset, or reduction of any kind, in an aggregate amount not less than $80,762,060 (including $44,299,743 of undrawn amounts under letters of credit issued under the 2010 Credit Facility Documents, provided such letters of credit are drawn on or before the Effective Date), plus any accrued but unpaid interest and reasonable fees and expenses as of the Effective Date to the extent not paid pursuant to the Cash Collateral Order.  Because all 2010 Credit Facility Claims are deemed fully Secured, there are no unsecured 2010 Credit Facility Claims, and the holders of such Claims do not have or hold any Class 6 Claims against the Debtors on account of any 2010 Credit Facility Claims.

48

c.    Treatment:  Except to the extent that a holder of an Allowed 2010 Credit Facility Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for an Allowed 2010 Credit Facility Claim, each holder of an Allowed 2010 Credit Facility Claim shall receive a Claim under the Restated Credit Facility Documents in an amount equal to the amount of such holder's Allowed 2010 Credit Facility Claim.

d.    Voting:  Class 3A is Impaired, and each holder of an Allowed 2010 Credit Facility Claim is entitled to vote to accept or reject the Plan.

4.    Class 3B – 2019 RCF Claims.

a.    Classification:  Class 3B consists of all 2019 RCF Claims.

b.    Allowance:  On the Effective Date, all 2019 RCF Claims shall be deemed fully Secured and Allowed pursuant to section 506(a) of the Bankruptcy Code, and not subject to any counterclaim, defense, offset, or reduction of any kind, in an aggregate amount not less than $61,542,720 (including $41,542,720 of undrawn amounts under letters of credit issued under the 2019 RCF Documents, provided such letters of credit are drawn on or before the Effective Date), plus any accrued but unpaid interest and reasonable fees and expenses as of the Effective Date to the extent not paid pursuant to the Cash Collateral Order. Because all 2019 RCF Claims are deemed fully Secured, there are no unsecured 2019 RCF Claims, and the holders of such Claims do not have or hold any Class 6 Claims against the Debtors on account of any 2019 RCF Claims.

c.    Treatment:  Except to the extent that a holder of an Allowed 2019 RCF Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for an Allowed 2019 RCF Claim, each holder of an Allowed 2019 RCF Claim shall receive a Claim under the Restated Credit Facility Documents in an amount equal to the amount of such holder's Allowed 2019 RCF Claim.

d.    Voting:  Class 3B is Impaired, and each holder of an Allowed 2019 RCF Claim is entitled to vote to accept or reject the Plan.

5.    Class 4A – 2010 Bond Claims.

a.    Classification:  Class 4A consists of all 2010 Bond Claims.

b.    Allowance:  On the Effective Date, all 2010 Bond Claims shall be deemed fully Secured and Allowed pursuant to section 506(a) of the Bankruptcy Code, and not subject to any counterclaim, defense, offset, or reduction of any kind, in an aggregate amount of not less than $40,137,274, plus any accrued but unpaid interest and reasonable fees and expenses as of the Effective Date to the extent not paid pursuant to the Cash Collateral Order.  Because all 2010 Bond Claims are deemed fully Secured, there are no unsecured 2010 Bond Claims, and

the holders of such Claims do not have or hold any Class 6 Claims against the Debtors on account of any 2010 Bond Claims.

      c.      <u>Treatment</u>:  Except to the extent that a holder of an Allowed 2010 Bond Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for an Allowed 2010 Bond Claim, each holder of an Allowed 2010 Bond Claim shall receive a Claim under the Restated 2010 Bond Documents in an amount equal to the amount of such holder's Allowed 2010 Bond Claim.

      d.      <u>Voting</u>:  Class 4A is Impaired, and each holder of an Allowed 2010 Bond Claim is entitled to vote to accept or reject the Plan.

6.      <u>Class 4B – 2012 Bond Claims</u>.

      a.      <u>Classification</u>:  Class 4B consists of all 2012 Bond Claims.

      b.      <u>Allowance</u>:  On the Effective Date, all 2012 Bond Claims shall be deemed fully Secured and Allowed pursuant to section 506(a) of the Bankruptcy Code, and not subject to any counterclaim, defense, offset, or reduction of any kind, in an aggregate amount of not less than $145,662,101, plus any accrued but unpaid interest and reasonable fees and expenses as of the Effective Date to the extent not paid pursuant to the Cash Collateral Order.  Because all 2012 Bond Claims are deemed fully Secured, there are no unsecured 2012 Bond Claims, and the holders of such Claims do not have or hold any Class 6 Claims against the Debtors on account of any 2012 Bond Claims.

      c.      <u>Treatment</u>:  Except to the extent that a holder of an Allowed 2012 Bond Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for an Allowed 2012 Bond Claim, each holder of an Allowed 2012 Bond Claim shall receive a Claim under the Restated 2012 Bond Documents in an amount equal to the amount of such holder's Allowed 2012 Bond Claim.

      d.      <u>Voting</u>:  Class 4B is Impaired, and each holder of an Allowed 2012 Bond Claim is entitled to vote to accept or reject the Plan.

7.      <u>Class 5 – Convenience Claims</u>.

      a.      <u>Classification</u>:  Class 5 consists of all Convenience Claims.

      b.      <u>Treatment</u>:  In full and final satisfaction, settlement, release, and discharge of, and in exchange for, an Allowed Convenience Claim, each holder of an Allowed Convenience Claim shall receive, on the Effective Date or within thirty (30) days following the date that such Convenience Claim becomes Allowed (if such Claim becomes Allowed after the Effective Date), Cash in an amount equal to 100% of such holder's Allowed Convenience Claim.

c.      Voting:  Class 5 is Impaired, and each holder of a Convenience Claim is entitled to vote to accept or reject the Plan.

8.      Class 6 – General Unsecured Claims.

a.      Classification:  Class 6 consists of all General Unsecured Claims.

b.      Treatment:   Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Claim, in exchange for full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall receive, subject to the holder's ability to elect Convenience Claim treatment on account of the Allowed General Unsecured Claim, its Pro Rata Share of the Core Value Cash Pool up to the full amount of such Allowed General Unsecured Claim in the manner described in Article VII.

c.      Voting:   Class 6 is Impaired, and each holder of a General Unsecured Claim is entitled to vote to accept or reject the Plan.

9.      Class 7 – Non-Abuse Litigation Claims.

a.      Classification:   Class 7 consists of all Non-Abuse Litigation Claims.

b.      Treatment:  Except to the extent that a holder of an Allowed Non-Abuse Litigation Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Non-Abuse Litigation Claim, each holder thereof shall, subject to (i) the holder's ability to elect Convenience Claim treatment as provided in the following sentence and (ii) the terms and conditions of Article IV.D.3 (as applicable), retain the right to recover up to the amount of such holder's Allowed Non-Abuse Litigation Claim from (x) available insurance coverage or the proceeds of any Insurance Policy, including any Abuse Insurance Policy or Non-Abuse Insurance Policy, (y) applicable proceeds of any Insurance Settlement Agreements, and (z) co-liable non-debtors (if any) or their insurance coverage. Solely to the extent that the holder of an Allowed Non-Abuse Litigation Claim fails to recover in full from the foregoing sources on account of such Allowed Claim after exhausting its remedies in respect thereof, such holder may elect to have the unsatisfied portion of its Allowed Claim treated as an Allowed Convenience Claim and receive cash in an amount equal to the lesser of (a) the amount of the unsatisfied portion of the Allowed Non-Abuse Litigation Claim and (b) $50,000.

c.      Voting:  Class 7 is Impaired, and each holder of a Non-Abuse Litigation Claim is entitled to vote to accept or reject the Plan.

10.    Class 8 – Direct Abuse Claims.

    a.    Classification:  Class 8 consists of all Direct Abuse Claims.

    b.    Treatment:

        (i)    The Settlement Trust shall receive, for the benefit of holders of Abuse Claims, the BSA Settlement Trust Contribution, the Local Council Settlement Contribution, the Contributing Chartered Organization Settlement Contribution, the Participating Chartered Organization Settlement Contribution, the Hartford Settlement Contribution (subject to the terms and conditions set forth in the Hartford Insurance Settlement Agreement), and the proceeds of any other applicable Insurance Settlement Agreements.  In addition, each holder of a properly completed non-duplicative proof of claim asserting a Direct Abuse Claim who filed such Claim by the Bar Date or was permitted by a Final Order of the Bankruptcy Court to file a late claim may, following the Effective Date, subject to criteria set forth in the Trust Distribution Procedures, elect to receive an Expedited Distribution in exchange for providing a full and final release in favor of the Settlement Trust, the Protected Parties and the Chartered Organizations.  The Settlement Trust shall make the Expedited Distributions on one or more dates occurring on or as soon as reasonably practicable after the latest to occur of (a) the date the applicable holders of Direct Abuse Claims who have elected to receive an Expedited Distribution have satisfied the criteria set forth in the Trust Distribution Procedures, and (b) the date upon which the Settlement Trust has sufficient Cash to fund the full amount of the Expedited Distributions while retaining sufficient Cash reserves to fund applicable Settlement Trust Expenses, as determined by the Settlement Trustee.

        (ii)    As of the Effective Date, the Protected Parties' liability for all Direct Abuse Claims shall be assumed in full by the Settlement Trust without further act, deed, or court order and shall be satisfied solely from the Settlement Trust as set forth in the Settlement Trust Documents.  Pursuant to the Channeling Injunction set forth in Article X.F, each holder of a Direct Abuse Claim shall have such holder's Direct Abuse Claim against the Protected Parties (and each of them) permanently channeled to the Settlement Trust, and such Direct Abuse Claim shall thereafter be asserted exclusively against the Settlement Trust and processed, liquidated, and paid in accordance with the terms, provisions, and procedures of the Settlement Trust Documents.  Holders of Direct Abuse Claims shall be enjoined from prosecuting any outstanding, or filing any future, litigation, Claims, or Causes of Action arising out of or related to such Direct Abuse Claims against any of the Protected Parties and may not proceed in any manner against any of the Protected Parties in any forum whatsoever, including any state, federal, or non-U.S. court or any administrative or arbitral forum, and are required to pursue such Direct

Abuse Claims solely against the Settlement Trust as provided in the Settlement Trust Documents.

(iii)    As of the Effective Date, the Limited Protected Parties' liability for all Post-1975 Chartered Organization Abuse Claims shall be assumed in full by the Settlement Trust without further act, deed, or court order and shall be satisfied solely from the Settlement Trust as set forth in the Settlement Trust Documents.  Pursuant to the Channeling Injunction set forth in Article X.F, each holder of a Post-1975 Chartered Organization Abuse Claim shall have such holder's Post-1975 Chartered Organization Abuse Claim against the Limited Protected Parties (and each of them) permanently channeled to the Settlement Trust, and such Post-1975 Chartered Organization Abuse Claim shall thereafter be asserted exclusively against the Settlement Trust and processed, liquidated, and paid in accordance with the terms, provisions, and procedures of the Settlement Trust Documents.  Holders of Post-1975 Chartered Organization Abuse Claims shall be enjoined from prosecuting any outstanding, or filing any future, litigation, Claims, or Causes of Action arising out of or related to such Post-1975 Chartered Organization Abuse Claim against any of the Limited Protected Parties and may not proceed in any manner against any of the Limited Protected Parties in any forum whatsoever, including any state, federal, or non-U.S. court or any administrative or arbitral forum, and are required to pursue such Post-1975 Chartered Organization Abuse Claims solely against the Settlement Trust as provided in the Settlement Trust Documents.

(iv)    For the avoidance of doubt, the Protected Parties shall include: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Contributing Chartered Organizations, including TCJC; (f) the Settling Insurance Companies, including Hartford; and (g) all of such Persons' Representatives.  The Limited Protected Parties shall include the Participating Chartered Organizations.

c.    Voting:  Class 8 is Impaired, and each holder of a Direct Abuse Claim is entitled to vote to accept or reject the Plan.

11.    Class 9 – Indirect Abuse Claims.

a.    Classification:  Class 9 consists of all Indirect Abuse Claims.

b.    Treatment:

(i)    As of the Effective Date, the Protected Parties' liability for all Indirect Abuse Claims shall be assumed in full by the Settlement Trust without further act, deed, or court order and shall be satisfied solely from the Settlement Trust as set forth in the Settlement Trust Documents solely

to the extent that an Indirect Abuse Claim has not been deemed withdrawn with prejudice, irrevocably waived, released and expunged in connection with the Local Council Settlement Contribution, the Contributing Chartered Organization Trust Contribution, the Participating Chartered Organization Trust Contribution, or the Hartford Insurance Settlement Agreement. Pursuant to the Channeling Injunction set forth in Article X.F, each holder of an Indirect Abuse Claim shall have such holder's Indirect Abuse Claim against the Protected Parties (and each of them) permanently channeled to the Settlement Trust, and such Indirect Abuse Claim shall thereafter be asserted exclusively against the Settlement Trust and processed, liquidated, and paid in accordance with the terms, provisions, and procedures of the Settlement Trust Documents. Holders of Indirect Abuse Claims shall be enjoined from prosecuting any outstanding, or filing any future, litigation, Claims, or Causes of Action arising out of or related to such Abuse Claims against any of the Protected Parties and may not proceed in any manner against any the Protected Parties in any forum whatsoever, including any state, federal, or non-U.S. court or any administrative or arbitral forum, and are required to pursue such Indirect Abuse Claims solely against the Settlement Trust as provided in the Settlement Trust Documents.

(ii)     As of the Effective Date, the Limited Protected Parties' liability for all Post-1975 Chartered Organization Abuse Claims shall be assumed in full by the Settlement Trust without further act, deed, or court order and shall be satisfied solely from the Settlement Trust as set forth in the Settlement Trust Documents. Pursuant to the Channeling Injunction set forth in Article X.F, each holder of a Post-1975 Chartered Organization Abuse Claim shall have such holder's Post-1975 Chartered Organization Abuse Claim against the Limited Protected Parties (and each of them) permanently channeled to the Settlement Trust, and such Post-1975 Chartered Organization Abuse Claim shall thereafter be asserted exclusively against the Settlement Trust and processed, liquidated, and paid in accordance with the terms, provisions, and procedures of the Settlement Trust Documents. Holders of Post-1975 Chartered Organization Abuse Claims shall be enjoined from prosecuting any outstanding, or filing any future, litigation, Claims, or Causes of Action arising out of or related to such Post-1975 Chartered Organization Abuse Claims against any of the Limited Protected Parties and may not proceed in any manner against any the Limited Protected Parties in any forum whatsoever, including any state, federal, or non-U.S. court or any administrative or arbitral forum, and are required to pursue such Post-1975 Chartered Organization Abuse Claims solely against the Settlement Trust as provided in the Settlement Trust Documents.

(iii)     For the avoidance of doubt, the Protected Parties shall include: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Contributing Chartered

Organizations, including TCJC; (f) the Settling Insurance Companies, including Hartford; and (g) all of such Persons' Representatives. The Limited Protected Parties shall include the Participating Chartered Organizations.

c.    <u>Voting</u>:  Class 9 is Impaired, and each holder of an Indirect Abuse Claim is entitled to vote to accept or reject the Plan.

12.    <u>Class 10 – Interests in Delaware BSA</u>.

a.    <u>Classification</u>:  Class 10 consists of all Interests in Delaware BSA.

b.    <u>Treatment</u>:  On the Effective Date, Interests in Delaware BSA shall be deemed cancelled without further action by or order of the Bankruptcy Court and shall be of no further force or effect, whether surrendered for cancellation or otherwise.

c.    <u>Voting</u>:  Class 10 is Impaired, and each holder of an Interest in Delaware BSA shall be conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Interests in Delaware BSA are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Interests in Delaware BSA.

C.    <u>Elimination of Vacant Classes</u>.  Any Class of Claims against or Interests in the Debtors that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

D.    <u>Cramdown</u>.  If any Class is deemed to reject the Plan or is entitled to vote on the Plan and does not vote to accept the Plan, the Debtors may (1) seek Confirmation of the Plan under section 1129(b) of the Bankruptcy Code or (2) amend or modify the Plan in accordance with the terms hereof and the Bankruptcy Code.  If a controversy arises as to whether any Claims are, or any class of Claims is, impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**ARTICLE IV.**

**SETTLEMENT TRUST**

A.    <u>Establishment of the Settlement Trust</u>.  The Settlement Trust shall be established on the Effective Date in accordance with the Plan Documents.  The Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code, with respect to which Reorganized BSA shall timely make an election to treat the Settlement Trust as a "grantor trust" for U.S. federal income tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes.

B.     Purposes of the Settlement Trust.

1.     The purposes of the Settlement Trust shall be to assume liability for all Abuse Claims, to hold, preserve, maximize and administer the Settlement Trust Assets, and to direct the processing, liquidation and payment of all compensable Abuse Claims in accordance with the Settlement Trust Documents.  The Settlement Trust shall resolve Abuse Claims in accordance with the Settlement Trust Documents in a fair, consistent, equitable manner, and on a pro rata basis, in compliance with the terms of the Settlement Trust Documents and to the extent of available Settlement Trust Assets.

2.     In the event of any ambiguity or conflict between the terms of the Settlement Trust Agreement or any related document required or provided for under the Settlement Trust Documents (other than the Confirmation Order), on the one hand, and the terms of the Plan and the Confirmation Order, on the other hand, the terms of the Plan and the Confirmation Order shall control, notwithstanding that the Settlement Trust Agreement and related documents required or provided for under the Settlement Trust Documents may be incorporated in or annexed to the Plan or the Confirmation Order.

C.     Transfer of Claims to the Settlement Trust.

1.     On the Effective Date or as otherwise provided herein, and without further action of any Person, the Settlement Trust shall assume the liabilities, obligations, and responsibilities, financial or otherwise, of (a) the Protected Parties for all Abuse Claims and (b) the Limited Protected Parties for all Post-1975 Chartered Organization Abuse Claims.  These assumptions by the Settlement Trust shall not affect (i) the application of the Discharge Injunction or the Channeling Injunction or (ii) any Non-Settling Insurance Company's obligation under any Abuse Insurance Policy or applicable law.

2.     Except as otherwise expressly provided in the Plan, the Settlement Trust Agreement, or the Trust Distribution Procedures, the Settlement Trust shall have control over the Settlement Trust Causes of Action and the Insurance Actions, and the Settlement Trust shall thereby become the estate representative pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with the exclusive right (except as otherwise provided in Article IV.D.4) to enforce each of the Settlement Trust Causes of Action and the Insurance Actions, and the proceeds of the recoveries on any of the Settlement Trust Causes of Action or the Insurance Actions shall be deposited in and become the property of the Settlement Trust, and the Settlement Trust shall have the right to enforce the Plan and any of the other Plan Documents (including the Document Agreement) according to their respective terms, including the right to receive the Settlement Trust Assets as provided in the Plan; provided, however, that (a) the Settlement Trust shall have no other rights against the Protected Parties except to enforce the Plan and any of the other Plan Documents; (b) the Settlement Trust shall have no other rights against the Limited Protected Parties with respect to Post-1975 Chartered Organization Abuse Claims; (c) the Settlement Trust Causes of Action, the Insurance Actions, and the Participating Chartered Organization Insurance Actions shall not include any Claims or Interests fully and finally released, compromised, or settled pursuant to the Plan or any Plan Documents, or any Claims against Hartford released, compromised and settled under the Hartford Insurance

Settlement Agreement; and (d) for the avoidance of doubt, the Settlement Trust Causes of Action, the Insurance Actions, and the Participating Chartered Organization Insurance Actions do not include any rights of the Protected Parties or the Limited Protected Parties arising under the Channeling Injunction or any of the Injunctions, Releases, or Discharges granted under the Plan and the Confirmation Order.

D.     Transfer of Settlement Trust Assets to the Settlement Trust.

    1.     Transfers on the Effective Date.  On the Effective Date, subject to Article IV.D.2, all right, title, and interest in and to the Settlement Trust Assets and any proceeds thereof shall be automatically, and without further act or deed, transferred to, vested in, and assumed by the Settlement Trust free and clear of all Encumbrances or Claims or other interests of any Person, subject to the Channeling Injunction and other provisions of the Plan.  Notwithstanding the foregoing, the Settlement Trust shall satisfy, to the extent required under applicable law and in accordance with the Trust Distribution Procedures, any retrospective premiums and self-insured retentions arising out of any Abuse Claims under the Abuse Insurance Policies.  The Debtors and the Local Councils shall establish an appropriate escrow mechanism to ensure that the Cash to be paid to the Settlement Trust by Local Councils on the Effective Date can be paid in a timely manner.

    2.     Transfers after the Effective Date.  To the extent any of the Settlement Trust Assets are not transferred to the Settlement Trust by operation of law on the Effective Date pursuant to the Plan, then when such assets accrue or become transferable subsequent to the Effective Date, they shall automatically and immediately transfer to the Settlement Trust free and clear of all Encumbrances and Claims or other interests of any Person, subject to the Channeling Injunction and other provisions of the Plan.  To the extent any Artwork is not physically transferred to the Settlement Trust on the Effective Date, the Debtors or Reorganized BSA and the Settlement Trust shall mutually agree on the terms of the storage and subsequent physical transfer thereof.  For the avoidance of doubt, title to the Artwork (and the risk of loss thereof) will transfer to the Settlement Trust on the Effective Date.  To the extent that any action of a Protected Party or Limited Protected Party is required to effectuate such transfer, such Protected Party or Limited Protected Party shall promptly transfer, assign, and contribute, such remaining Settlement Trust Assets to the Settlement Trust.  In the event a Protected Party or a Limited Protected Party breaches any obligation contained in this section, the Settlement Trust will have no adequate remedy at law and shall be entitled to preliminary and permanent declaratory and injunctive relief.  This Article IV.D.2 applies, without limitation, to (a) that portion of the Local Council Settlement Contribution required to be contributed to the Settlement Trust after the Effective Date and (b) the transfer to the Settlement Trust of the Warehouse and Distribution Center, subject to the Leaseback Requirement.

    3.     Specified Insurance Policies and Non-Abuse Litigation Claims.

        a.     The Settlement Trust shall have consent over any post-Effective Date settlement of any Non-Abuse Litigation Claim (such consent not to be unreasonably withheld) that is entitled to a recovery from the proceeds of Specified Insurance Policies.  A condition of payment of a Non-Abuse Litigation

Claim by the Settlement Trust from a Specified Insurance Policy shall be a release by the holder of such Non-Abuse Litigation Claim of the Debtors, the Local Councils, and any other insureds under applicable Specified Insurance Policies. Before the Settlement Trust settles any Specified Insurance Policy(ies) under which the holder of a Non-Abuse Litigation Claim is seeking to recover, the holder of a Non-Abuse Litigation Claim may recover up to the full amount of such Claim in the first instance from any such available unsettled Specified Primary Insurance Policy(ies) or unsettled Specified Excess Insurance Policy(ies). If and when the Settlement Trust settles one or more Specified Insurance Policies under which the holder of a Non-Abuse Litigation Claim is seeking to recover: (a) the holder of such Non-Abuse Litigation Claim shall remain entitled to recover up to $1,000,000 of such Claim under any such Specified Primary Insurance Policy(ies); and (b) any amounts exceeding $1,000,000 shall be recoverable in the first instance from any such available unsettled Specified Excess Insurance Policies.  Subject to a review of the details concerning a Non-Abuse Litigation Claim by the Settlement Trustee, to the extent that the holder of a Non-Abuse Litigation Claim cannot, as a result of the Settlement Trust's release of such Specified Insurance Policy(ies), recover the full amount of any judgment or settlement of such Claim consented to by the Settlement Trust (such consent not to be unreasonably withheld) from any Specified Insurance Policy(ies) under which the holder of a Non-Abuse Litigation Claim is seeking to recover, then any unpaid amounts (up to applicable policy limits) shall be submitted to the Settlement Trust, which shall pay such amounts out of the proceeds of the Specified Insurance Policies.

b. The Settlement Trustee shall have a duty to treat Direct Abuse Claims and Non-Abuse Litigation Claims that implicate the Specified Insurance Policies fairly and equally.  In negotiating any settlements involving Specified Insurance Policies, the Settlement Trustee shall bear in mind the interests of both Direct Abuse Claims and Non-Abuse Litigation Claims in structuring any settlement and use best efforts to maximize recoveries for both constituencies.

c. Notwithstanding anything to the contrary in the Plan, with respect to any Non-Abuse Litigation Claim that has been asserted or could be asserted against any Local Council, notice of which is provided to the Debtors, the Coalition, the Tort Claimants' Committee, and the Future Claimants' Representative prior to the Effective Date, the rights of the Local Council to recover for such Non-Abuse Litigation Claim under the Specified Insurance Policies up to the applicable coverage limits shall be preserved; provided, however, that if the holder of a Non-Abuse Litigation Claim provides a full and complete written release of any claims that such holder of a Non-Abuse Litigation Claim may have against the Local Council related to the Non-Abuse Litigation Claim, then the Local Council will be deemed to have waived any rights it may have against the Specified Insurance Policy with respect to such Non-Abuse Litigation Claim.

4.  <u>Settlement Trust Causes of Action</u>.  The transfer of the Settlement Trust Causes of Action to the Settlement Trust, insofar as they relate to the ability to defend against or reduce the amount of Abuse Claims, shall be considered the transfer of a non-exclusive right enabling the Settlement Trust to defend itself against asserted Abuse Claims, which transfer shall not impair, affect, alter, or modify the right of any Person, including the Protected Parties, the Limited Protected Parties, an insurer or alleged insurer, or co-obligor or alleged co-obligor, sued on account of an Abuse Claim or on account of any asserted right relating to any Abuse Insurance Policy, to assert each and every defense or basis for claim reduction such Person could have asserted had the Settlement Trust Causes of Action not been assigned to the Settlement Trust (including any defense or basis for claim reduction that any Insurance Company or other insurer or alleged insurer could have asserted under section 502 of the Bankruptcy Code, applicable non-bankruptcy law, or any Abuse Insurance Policy or other agreement with respect to (a) any alleged liability of the BSA or any Local Council, Contributing Chartered Organization, Participating Chartered Organization or any other insured Person for any Abuse Claim or (b) any alleged liability of any Insurance Company or other insurer or alleged insurer to provide indemnity or defense relating to any Abuse Claim or any alleged extracontractual liability of any Insurance Company or other insurer or alleged insurer relating to any Abuse Claim).

E.  <u>Settlement Trustee</u>.  There shall be one Settlement Trustee, who shall be appointed by the Bankruptcy Court in the Confirmation Order.  The initial Settlement Trustee shall be Eric D. Green.  Any successor Settlement Trustee shall be appointed in accordance with the terms of the Settlement Trust Agreement.  For purposes performing his or her duties and fulfilling his or her obligations under the Settlement Trust and the Plan, the Settlement Trustee shall be deemed to be, and the Confirmation Order shall provide that he or she is, a "party in interest" within the meaning of section 1109(b) of the Bankruptcy Code.  The Settlement Trustee shall be the "administrator" of the Settlement Trust as such term is used in Treas. Reg. Section 1.468B-2(k)(3).

F.  <u>Settlement Trust Advisory Committee</u>.

1.  The Settlement Trust Advisory Committee shall be established pursuant to the Settlement Trust Agreement.  The initial STAC shall be composed of seven (7) members, five (5) of which shall be selected by the Coalition and two (2) of which shall be selected by the Tort Claimants' Committee, subject to discussion between and the consent of the Coalition and the Tort Claimants' Committee.  The STAC members shall be reasonably acceptable to the Debtors and shall have the functions, duties, and rights provided in the Settlement Trust Agreement.  Each STAC member shall serve in accordance with the terms and conditions of the Settlement Trust Agreement.

2.  The commencement or continuation of a STAC Tort Election Claim (as defined in Article XII.B of the Trust Distribution Procedures) and the approval of any global settlement after the Effective Date that causes an Insurance Company or a Chartered Organization to become a Protected Party must be approved by the Settlement Trustee, the Future Claimants' Representative and the majority of the STAC, *provided*, *however*, that the refusal of any of the foregoing to (a) authorize the commencement or

continuation of a STAC Tort Election Claim or (b) approve a global settlement after the Effective Date that causes an Insurance Company or a Chartered Organization to become a Protected Party shall be subject to immediate review under the standard set forth in the Settlement Trust Agreement by the Special Reviewer if three (3) members of the STAC so require.

G.    <u>Future Claimants' Representative</u>.  The Settlement Trust Agreement shall provide for the continuation of the Future Claimants' Representative to represent the interests of holders of Future Abuse Claims.  The initial Future Claimants' Representative shall be James L. Patton, Jr. so long as he is the Future Claimants' Representative in the Chapter 11 Cases as of the Effective Date.

H.    <u>Trust Distribution Procedures</u>.  On the Effective Date, the Settlement Trust shall implement the Trust Distribution Procedures in accordance with the terms of the Settlement Trust Agreement.  From and after the Effective Date, the Settlement Trustee shall have the authority to administer, amend, supplement, or modify the Trust Distribution Procedures solely in accordance with the terms thereof and the Settlement Trust Agreement.

I.    <u>Post-Effective Date Contributing Chartered Organizations.</u>

1.    Notwithstanding any present exclusionary language in the Plan, after the Effective Date, any Chartered Organization that is not a Contributing Chartered Organization as of the Effective Date may become a Protected Party if the Bankruptcy Court, after notice and an opportunity for parties in interest to be heard, approves a settlement agreement between such Chartered Organization and the Settlement Trustee (a "<u>Post-Effective Date Chartered Organization Settlement</u>").  After the Effective Date, the Settlement Trustee shall have the exclusive authority to seek approval of a Post-Effective Date Chartered Organization Settlement.  Upon the Bankruptcy Court's entry of a Final Order approving a Post-Effective Date Chartered Organization Settlement, <u>Exhibit C</u> shall be amended by the Settlement Trustee to include such Chartered Organization, and such Chartered Organization (and any related Persons or Representatives, as applicable) shall be deemed to be a Contributing Chartered Organization and a Protected Party for all purposes hereunder.  **A list of Chartered Organizations that may potentially become Contributing Chartered Organization may be accessed at https://omniagentsolutions.com/bsa-SAballots**.

2.    Any Chartered Organization that becomes a Protected Party in accordance with this <u>Article IV.I</u> shall have all of the rights, remedies and obligations of a Protected Party under the Plan, including under the Channeling Injunction, notwithstanding that such Chartered Organization was not a Protected Party under the Plan as of the Effective Date.

J.    <u>Post-Effective Date Participating Chartered Organizations</u>.

1.    Notwithstanding any present exclusionary language in the Plan, after the Effective Date, any Chartered Organization that is not a Participating Chartered Organization as of the Effective Date may become a Participating Chartered Organization

by agreement with the Settlement Trustee and without further order of the Bankruptcy Court; provided, however, that the Settlement Trustee shall file a notice with the Bankruptcy Court within thirty (30) days of entering into any agreement with a Chartered Organization that deems such Chartered Organization to be a Limited Protected Party, together with an amendment to Exhibit J removing such Chartered Organization from the list of Chartered Organizations that are not Participating Chartered Organizations.

2.      Any Chartered Organization that becomes a Limited Protected Party in accordance with this Article IV.J shall have all of the rights, remedies and obligations of a Limited Protected Party under the Plan, including under the Limited Channeling Injunction, notwithstanding that such Chartered Organization was not a Limited Protected Party under the Plan as of the Effective Date.

K.      Post-Effective Date Settling Insurance Companies.

1.      Notwithstanding any present exclusionary language in the Plan, after the Effective Date, any Insurance Company that is a Non-Settling Insurance Company may, within twelve (12) months of the Effective Date (the "Insurance Settlement Period"), enter into an Insurance Settlement Agreement with the Settlement Trustee (a "Post-Effective Date Insurance Settlement"); provided, however, that the Settlement Trustee shall file a notice with the Bankruptcy Court within thirty (30) days of entering into any such Post-Effective Date Insurance Settlement, together with an amendment to Exhibit I including such Post-Effective Date Insurance Settlement, and such Insurance Company (and any related Persons or Representatives, as applicable) shall be deemed to be a Settling Insurance Company and a Protected Party for all purposes hereunder. The Post-Effective Date Insurance Settlement and amendment shall be deemed binding and effective absent objection by any Person within fifteen (15) calendar days. The Settlement Trustee shall have the sole discretion, upon order of the Bankruptcy Court, to extend the Insurance Settlement Period.

2.      Any Insurance Company that becomes a Protected Party in accordance with this Article IV.K shall have all of the rights, remedies and obligations of a Protected Party under the Plan, including under the Channeling Injunction, notwithstanding that such Insurance Company was not a Protected Party under the Plan as of the Effective Date.

L.      Settlement Trust Expenses. The Settlement Trust shall pay all Settlement Trust Expenses from the Settlement Trust Assets. The Settlement Trust shall bear sole responsibility with respect to the payment of the Settlement Trust Expenses. Additionally, the Settlement Trust shall promptly pay all reasonable and documented Settlement Trust Expenses incurred by any Protected Party for any and all liabilities, costs or expenses as a result of taking action on behalf of or at the direction of the Settlement Trust following the transfer to the Settlement Trust of copies of all records and documents in such Persons' possession, custody or control pertaining to Abuse Claims in accordance with the Document Agreement. To the maximum extent permitted by applicable law, the Settlement Trustee shall not have or incur any liability for actions taken or omitted in his or her capacity as Settlement Trustee, or on behalf of the Settlement Trust, except those acts found by Final Order to be arising out of his or her willful misconduct, bad faith, gross

negligence or fraud, and shall be entitled to indemnification and reimbursement for reasonable fees and expenses in defending any and all of his or her actions or omissions in his or her capacity as Settlement Trustee, or on behalf of the Settlement Trust, except for any actions or omissions found by Final Order to be arising out of his or her willful misconduct, bad faith, gross negligence or fraud.  Any valid indemnification claim of the Settlement Trustee shall be satisfied only from the Settlement Trust Assets.

M.    <u>Reimbursement by Settlement Trust</u>.  From and after the Effective Date, the Settlement Trust shall reimburse, to the fullest extent permitted by applicable law, Reorganized BSA and each of the Local Councils for any documented out-of-pocket, losses, costs, and expenses (including judgments, attorneys' fees, and expenses) incurred by Reorganized BSA or any Local Council after the Effective Date attributable to the defense of a Direct Abuse Claim that is channeled to the Settlement Trust if the holder of such Direct Abuse Claim seeks to hold Reorganized BSA or such Local Council liable for such Direct Abuse Claim in violation of the terms of the Confirmation Order; <u>provided</u> that the Settlement Trust's reimbursement obligations to Reorganized BSA and any Local Council for any Direct Abuse Claim shall be capped at and shall not exceed the amount actually payable by the Settlement Trust to the holder of such Direct Abuse Claim under the Trust Distribution Procedures (*i.e.*, the amount paid based on the Settlement Trust payment percentage) and shall be deducted on a dollar-for-dollar basis against such holder's distribution from the Settlement Trust on account of such Direct Abuse Claim. Reorganized BSA and any Local Council shall provide notice to the Settlement Trust within ten (10) business days of the service of any claim or lawsuit filed by a holder of an Abuse Claim that could result in any reimbursement obligations by the Settlement Trust under this provision.  In the event that any litigation asserting an Abuse Claim is filed naming Reorganized BSA or any Local Council as a defendant in violation of the terms of the Confirmation Order, the Settlement Trust shall, at the request of Reorganized BSA or such Local Council, promptly appear (1) before the Bankruptcy Court to obtain entry of an order enforcing the Channeling Injunction and (2) in such litigation and seek the dismissal of the case.  Other than this limited reimbursement obligation, the Settlement Trust shall not be required to reimburse or indemnify any Protected Parties or Limited Protected Parties for any claims, liabilities, losses, actions, suits, proceedings, third-party subpoenas, damages, costs and expenses, including any liabilities related to, arising out of, or in connection with any Abuse Claim.  Except for the right to seek reimbursement or indemnity set forth in this <u>Article IV.M</u>, the Debtors, the Local Councils, the Contributing Chartered Organizations, the Participating Chartered Organizations and any other Person that is or becomes a Protected Party shall be forever barred from seeking compensation from the Settlement Trust for or on account of any Claims arising prior to the Petition Date.

N.    <u>Trust Defense of TCJC Settlement</u>.  In the event that any litigation asserting an Abuse Claim is filed naming TCJC as a defendant in violation of the terms of the Confirmation Order, the Settlement Trust shall, at the request of TCJC, promptly appear (1) before the Bankruptcy Court to obtain entry of an order enforcing the Channeling Injunction and (2) in such litigation seek the dismissal of the case.  Under no circumstances shall the Settlement Trust be required to reimburse or indemnity TCJC for any claims, liabilities, losses, actions, suits, proceedings, third-party subpoenas, damages, costs, and expenses, including any liabilities related to, arising out of, or in connection with, any Abuse Claim.

O.    <u>Assignment of Claims and Defenses</u>.  Notwithstanding anything herein to the contrary, on the Effective Date, the Debtors, the Local Councils and any other party that is or becomes a Protected Party or a Limited Protected Party shall be deemed to assign any and all Claims and defenses to the Settlement Trust that arise from or relate to Abuse Claims, including any Claims and defenses against co-defendants; <u>provided</u>, <u>however</u>, that with respect to Limited Protected Parties, the foregoing assignment shall be limited to Claims and defenses that arise from or relate to Post-1975 Chartered Organization Abuse Claims.

P.    <u>Investment Guidelines</u>.  All monies held in the Settlement Trust shall be invested, subject to the investment limitations and provisions enumerated in the Settlement Trust Agreement.

Q.    <u>Excess Settlement Trust Assets</u>.  To the extent any Settlement Trust Assets remain at such time as the Settlement Trust is dissolved under the terms of the Settlement Trust Documents, any remaining Settlement Trust Assets shall be distributed to Reorganized BSA.

R.    <u>Document Agreement</u>.  Reorganized BSA, the Local Councils, the Contributing Chartered Organizations and the Settlement Trust shall enter into the Document Agreement on the Effective Date, substantially in the form contained in the Plan Supplement.  The Document Agreement shall provide for copies of certain documents, books and records of Reorganized BSA, the Local Councils, and any Contributing Chartered Organizations to be transferred to the Settlement Trust.  The parties to the Document Agreement shall be bound by the terms thereof.

S.    <u>Privileged Information</u>.  The transfer or assignment of any Privileged Information to the Settlement Trustee shall not result in the destruction or waiver of any applicable privileges pertaining thereto.  Further, with respect to such privileges: (1) they are transferred to or contributed for the purpose of enabling the Settlement Trustee to perform his or her duties to administer the Settlement Trust; (2) they are vested solely in the Settlement Trustee and not in the Settlement Trust, the STAC, the Future Claimants' Representative, the Special Reviewer, the SASAC (as defined in the Settlement Trust Agreement), any other Person, committee or subcomponent of the Settlement Trust, or any other Person (including counsel and other professionals) who has been engaged by, represents, or has represented any holder of an Abuse Claim; and (3) the Settlement Trustee shall keep, handle and maintain such Privileged Information in accordance with the terms of the Document Agreement.  The Settlement Trustee shall succeed to and hold all rights to and interest in and related to the Debtors', Local Councils' and Contributing Chartered Organizations' privileges, including the attorney-client privilege, any Common-Interest Communications with Insurers, and any protection granted by joint defense, common interest, and/or confidentiality agreement, as to all documents, communications, and other information, including any information transferred pursuant to the Document Agreement. The Settlement Trustee shall be permitted to use Privileged Information for any purpose related to the administration of the Settlement Trust and the settlement of Abuse Claims and shall be permitted to share Privileged Information with any professional retained by the Settlement Trust; <u>provided</u>, <u>however</u>, that the Settlement Trustee shall not share Privileged Information with the STAC or any holder of an Abuse Claim except as required by law or as the Settlement Trustee determines in good faith is required by law.  Notwithstanding the foregoing, nothing herein shall preclude the Settlement Trustee from providing Privileged Information to any Insurance

Company as necessary to preserve, secure, or obtain the benefit of any rights under any Abuse Insurance Policy.

T.    <u>No Liability</u>.  The Protected Parties and the Limited Protected Parties shall neither have nor incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance in connection with or related to the Settlement Trust, the Settlement Trustee, or the Settlement Trust Documents, including the administration of Abuse Claims and the distribution of Settlement Trust Assets by the Settlement Trust, or any related agreement.

U.    <u>U.S. Federal Income Tax Treatment of the Settlement Trust</u>.  The Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.  Reorganized BSA shall make a "grantor trust" election under Treasury Regulation section 1.468B-1(k) with respect to the Settlement Trust for U.S. federal income tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes.  All parties shall report consistently with such grantor trust election.  The Settlement Trust shall file (or cause to be filed) statements, returns, or disclosures relating to the Settlement Trust that are required by any Governmental Unit.  The Settlement Trustee shall be responsible for the payment of any taxes imposed on the Settlement Trust or the Settlement Trust Assets, including estimated and annual U.S. federal income taxes in accordance with the terms of the Settlement Trust Agreement.  The Settlement Trustee may request an expedited determination of taxes on the Settlement Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Settlement Trust for all taxable periods through the dissolution of the Settlement Trust.

V.    <u>Institution and Maintenance of Legal and Other Proceedings</u>.  As of the Effective Date, the Settlement Trust shall be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the Settlement Trust, including the Insurance Actions, Abuse Claims, and the Settlement Trust Causes of Action.  Without limiting the foregoing, on and after the Effective Date, the Settlement Trust shall be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all such actions, in the name of the Debtors or Reorganized BSA, if deemed necessary or appropriate by the Settlement Trust.  The Settlement Trust shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees, and other charges incurred on or after the Effective Date arising from, relating to, or associated with any legal action or other proceeding which is the subject of this <u>Article IV.V</u> and shall pay Indirect Abuse Claims, in accordance with the Trust Distribution Procedures, that may arise from deductibles or other charges.  Furthermore, without limiting the foregoing, the Settlement Trust shall be empowered to maintain, administer, preserve, or pursue the Insurance Actions and the Insurance Action Recoveries.

W.    <u>Notation on Claims Register Regarding Abuse Claims</u>.  On the Effective Date, all Abuse Claims filed against the Debtors in the Chapter 11 Cases shall be marked on the Claims Register as "Channeled to the Settlement Trust" and resolved exclusively in accordance with the Trust Distribution Procedures.

## ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    <u>General</u>.  On and after the Confirmation Date, the Debtors shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions consistent with the Plan as may be necessary or appropriate to enable them to implement the provisions of the Plan before, on, or after the Effective Date, including the creation of the Settlement Trust and the preparations for the transfer of the Settlement Trust Assets to the Settlement Trust.

B.    <u>Operations of the Debtors between Confirmation and the Effective Date</u>.  The Debtors shall continue to operate as debtors and debtors in possession during the period from the Confirmation Date to the Effective Date.

C.    <u>BSA Governance Documents</u>.  From and after the Effective Date, Reorganized BSA shall be governed pursuant to the BSA Charter and the Amended BSA Bylaws.  The Amended BSA Bylaws shall contain such provisions as are necessary to satisfy the provisions of the Plan, subject to further amendment thereof after the Effective Date as permitted by applicable law.  Under the BSA Charter, the BSA has no power to issue certificates of stock, its object and purpose being solely of a charitable character and not for pecuniary profit; accordingly, the requirement of section 1123(a)(6) does not apply to the BSA.

D.    <u>Continued Legal Existence of BSA</u>.  The BSA shall continue to exist on and after the Effective Date, with all of the powers it is entitled to exercise under applicable law and pursuant to the BSA Charter and the Amended BSA Bylaws, subject to further amendment of the Amended BSA Bylaws after the Effective Date, as permitted by applicable law.

E.    <u>Reorganized BSA's Directors and Senior Management</u>.  Pursuant to section 1129(a)(5) of the Bankruptcy Code, to the extent that there are anticipated changes in Reorganized BSA's directors and officers, the Debtors will identify any such changes in the Plan Supplement.  On and after the Effective Date, the Amended BSA Bylaws, as such may be amended thereafter from time to time, shall govern the designation and election of directors of Reorganized BSA.

F.    <u>Dissolution of Delaware BSA</u>.  On the Effective Date, Delaware BSA's members, directors, officers and employees shall be deemed to have resigned, and Delaware BSA shall be deemed to have dissolved for all purposes and be of no further legal existence under any applicable state or federal law, without the need for any further action or the filing of any plan of dissolution, notice, or application with the Secretary of State of the State of Delaware or any other state or government authority, and without the need to pay any franchise or similar taxes to effectuate such dissolution.  Any Allowed Claims against Delaware BSA will be treated as set forth in <u>Article III.B</u>.

G.    <u>Due Authorization</u>.  As of the Effective Date, all actions contemplated by the Plan that require corporate action of the Debtors, or either of them, including actions requiring a vote of the National Executive Board or the National Executive Committee of the BSA or the sole member of Delaware BSA, and execution of all documentation incident to the Plan, shall be

deemed to have been authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by the Bankruptcy Court, members, officers, or directors of the Debtors, Reorganized BSA, or any other Person.

H.    <u>Cancellation of Interests</u>.  As of the Effective Date, in accordance with <u>Article III.B.12</u>, Interests in Delaware BSA shall be deemed cancelled without further action by or order of the Bankruptcy Court and shall be of no further force or effect.

I.    <u>Restatement of Indebtedness</u>.

1.    Except as otherwise provided in the Plan, or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, and subject to the treatment afforded to holders of Allowed Claims in Class 3A, 3B, 4A, or 4B under <u>Article III</u>, on the Effective Date, all Prepetition Debt and Security Documents, including all agreements, instruments, and other documents evidencing or issued pursuant to the 2010 Credit Facility Documents, the 2019 RCF Documents, the 2010 Bond Documents, the 2012 Bond Documents, or any indebtedness or other obligations thereunder, and any rights of any holder in respect thereof, shall be deemed amended and restated in the form of the Restated Debt and Security Documents on the terms set forth herein.

2.    Any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtors as a result of the satisfactions, Injunctions, Releases, Discharges and other transactions provided for in the Plan shall be deemed null and void and shall be of no force or effect.  Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligation of the Debtors or any of their counterparties under any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed by the Debtors pursuant to a Final Order of the Bankruptcy Court, including the Confirmation Order.

J.    <u>Cancellation of Liens</u>.  Except as otherwise provided in the Plan, on the Effective Date, any Lien securing any Allowed Secured Claim (other than a Lien securing any Allowed Secured Claim that is Reinstated pursuant to the Plan, including, for avoidance of doubt, the liens securing the Restated Debt and Security Documents) shall be deemed released and the holder of such Allowed Secured Claim shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral) held by such holder and to take such actions as may be requested by the Debtors (or Reorganized BSA, as the case may be) to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases as may be requested by the Debtors (or Reorganized BSA, as the case may be).

K.    <u>Effectuating Documents and Further Transactions</u>.  The Chief Executive Officer and President, the Chief Financial Officer, and the General Counsel of the BSA are authorized to execute, deliver, file or record such contracts, instruments, releases, indentures, and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan in the name of and on behalf

of Reorganized BSA, without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant to the Plan.

      L.     <u>Sources of Consideration for Distributions</u>.  Distributions under the Plan shall be funded from the following sources:

      1.     the Debtors shall fund Distributions on account of and satisfy Allowed General Unsecured Claims exclusively from the Core Value Cash Pool;

      2.     the Settlement Trust shall fund distributions on account of and satisfy compensable Abuse Claims in accordance with the Trust Distribution Procedures from (a) the BSA Settlement Trust Contribution, (b) the Local Council Settlement Contribution, (c) the Contributing Chartered Organization Settlement Contribution, (d) the Participating Chartered Organization Settlement Contribution, (e) the Hartford Settlement Contribution, and (f) any and all funds, proceeds or other consideration contributed to the Settlement Trust under the terms of any Insurance Settlement Agreement;

      3.     the Debtors shall satisfy 2010 Credit Facility Claims, 2019 RCF Claims, 2010 Bond Claims, and 2012 Bond Claims in accordance with the terms of the Restated 2010 Bond Documents, the Restated 2012 Bond Documents and the Restated Credit Facility Documents, as applicable; and

      4.     the Debtors shall fund Distributions on account of and satisfy all other Allowed Claims with Unrestricted Cash and Investments on hand on or after the Effective Date in accordance with the terms of the Plan and the Confirmation Order.

      M.     <u>Calculation of Minimum Unrestricted Cash and Investments</u>.  The minimum amount of Unrestricted Cash and Investments to be retained by Reorganized BSA on the Effective Date shall be:

      1.     $25,000,000 if the Effective Date occurs on or before September 30, 2021;

      2.     $37,000,000 if the Effective Date occurs on or after October 1, 2021 but before November 1, 2021;

      3.     $36,000,000 if the Effective Date occurs on or after November 1, 2021 but before December 1, 2021;

      4.     $40,000,000 if the Effective Date occurs on or after December 1, 2021 but before January 1, 2022;

      5.     $57,000,000 if the Effective Date occurs on or after January 1, 2022 but before February 1, 2022;

      6.     $41,000,000 if the Effective Date occurs on or after February 1, 2022 but before March 1, 2022;

7.    $55,000,000 if the if the Effective Date occurs on or after March 1, 2022 but before April 1, 2022; and

8.    $54,000,000 if the Effective Date occurs on or after April 1, 2022.

Without limiting the foregoing, in accordance with the Hartford Insurance Settlement Agreement and the Allowance of the Hartford Administrative Expense Claim under the Plan, the Net Unrestricted Cash and Investments shall be reduced on a dollar-for-dollar basis equal to fifty percent (50%) of the Allowed Hartford Administrative Expense Claim, or $1,000,000.

N.    <u>Resolution of Abuse Claims</u>.    All Abuse Claims shall be channeled to and resolved by the Settlement Trust in accordance with the Trust Distribution Procedures; <u>provided</u>, that any Non-Settling Insurance Company may, subject to <u>Article X.M</u>, raise any valid Insurance Coverage Defense in response to a demand by the Settlement Trust, including any right of such Non-Settling Insurance Company to assert any defense that could, but for the Settlement Trust's assumption of the liabilities, obligations, and responsibilities of the Protected Parties for Abuse Claims, have been raised by the Debtors or other applicable Protected Party with respect to such Claim.

O.    <u>Funding by the Settlement Trust</u>.    The Settlement Trust shall have no obligation to fund costs or expenses other than those set forth in the Plan or the Settlement Trust Documents, as applicable.

P.    <u>Core Value Cash Pool</u>.    Reorganized BSA shall deposit Cash into the Core Value Cash Pool by making four semi-annual installment payments equal to $6,250,000.    Reorganized BSA shall make the first deposit six (6) months after the Effective Date; the second installment on the first anniversary after the Effective Date; the third installment eighteen (18) months after the Effective Date; and the fourth installment on the second anniversary of the Effective Date.

Q.    <u>Creditor Representative; Disbursing Agent</u>.    The Creditor Representative shall be appointed as of the Effective Date.    The Creditor Representative shall be responsible for assisting Reorganized BSA and its professionals in their efforts to efficiently reconcile Convenience Claims, General Unsecured Claims, and Non-Abuse Litigation Claims.    The identity of the Creditor Representative shall be determined by the Creditors' Committee, with the consent of the Debtors (such consent not to be unreasonably withheld).    The Debtors or Reorganized BSA, as applicable, will use commercially reasonable efforts to assist the Creditor Representative in reconciling Convenience Claims, General Unsecured Claims, and Non-Abuse Litigation Claims on or before the applicable Claims Objection Deadline.    The reasonable fees and actual and necessary costs and expenses of the Creditor Representative shall be paid by Reorganized BSA up to the Creditor Representative Fee Cap, and Reorganized BSA shall have no obligation to compensate or reimburse the costs or expenses of the Creditor Representative beyond the amount of the Creditor Representative Fee Cap.    The Disbursing Agent shall have the rights, powers and responsibilities provided in <u>Article VII</u>.    The reasonable fees and actual and necessary costs and expenses of the Disbursing Agent, if any, shall be paid by Reorganized BSA.

R.    <u>Residual Cash in Core Value Cash Pool</u>.    To the extent any Cash remains in the Core Value Cash Pool after all Allowed General Unsecured Claims have been satisfied in full,

such remaining Cash shall: (1) first, on account of any Allowed Non-Abuse Litigation Claims that shall not have elected to be treated as an Allowed Convenience Claim under Article III.B.9 to satisfy any deficiency in payments of such Allowed Claims (a) from available insurance coverage, including Abuse Insurance Policies and Non-Abuse Insurance Policies, (b) from applicable proceeds of any Insurance Settlement Agreements, and (c) from co-liable non-debtors (if any) or their insurance coverage; (2) second, to pay interest to holders of Allowed General Unsecured Claims in accordance with Article VII.L; and (3) third irrevocably re-vest in Reorganized BSA.

S.    Compromise and Settlement of Claims, Interests and Controversies.  Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan and the Plan Documents, as of the Effective Date, the provisions of the Plan, including the Abuse Claims Settlement, the Hartford Insurance Settlement, the JPM / Creditors' Committee Settlement, the TCJC Settlement, and the Settlement of Restricted and Core Asset Disputes set forth in this Article V.S, shall constitute good-faith compromises and settlements of Claims, Interests, and controversies among the parties thereto relating to the contractual, legal, equitable and subordination rights that holders of Claims or Interests may have with respect to any Claim or Interest under the Plan or any Distribution to be made on account of an Allowed Claim.  The Plan shall be deemed a motion, proposed by the Debtors and joined by the parties to the Abuse Claims Settlement, the Hartford Insurance Settlement Agreement, the JPM / Creditors' Committee Settlement, the TCJC Settlement, and the Settlement of Restricted and Core Asset Disputes, respectively, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, and controversies among the parties thereto, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of such Claims and Interests, and is fair, equitable and reasonable.

1.    Abuse Claims Settlement.  The treatment provided for Abuse Claims, including Post-1975 Chartered Organization Abuse Claims, under the Plan incorporates and reflects a proposed compromise and settlement of all Scouting Released Claims, including all Abuse Claims against the Protected Parties and all Post-1975 Chartered Organization Abuse Claims against the Limited Protected Parties (the "Abuse Claims Settlement"), and the Plan constitutes a request for the Bankruptcy Court to authorize and approve the Abuse Claims Settlement.  The following constitute the provisions and conditions of the Abuse Claims Settlement:

a.    Local Council Settlement Contribution.  The Local Councils shall make, cause to be made, or be deemed to have made, as applicable, the Local Council Settlement Contribution.  If a Local Council is unable to transfer its rights, titles, privileges, interests, claims, demands or entitlements, as of the Effective Date, to any proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, arising under or attributable to (i) the Abuse Insurance Policies, the Insurance Settlement Agreements, and claims thereunder and proceeds thereof; (ii) Insurance Actions, and (iii) the Insurance Action

Recoveries (the "<u>Local Council Insurance Rights</u>"), then the Local Council shall, at the sole cost and expense of the Settlement Trust: (a) take such actions reasonably requested by the Settlement Trustee to pursue any of the Local Council Insurance Rights for the benefit of the Settlement Trust; and (b) promptly transfer to the Settlement Trust any amounts recovered under or on account of any of the Local Council Insurance Rights; <u>provided</u>, <u>however</u>, that while any such amounts are held by or under the control of any Local Council, such amounts shall be held for the benefit of the Settlement Trust.

        b.      <u>Contributing Chartered Organization Settlement Contribution</u>.  The Contributing Chartered Organizations, including TCJC, shall make, cause to be made, or be deemed to have made, as applicable, the Contributing Chartered Organization Settlement Contribution, including the TCJC Settlement Contribution.  If a Contributing Chartered Organization is unable to transfer its rights, titles, privileges, interests, claims, demands or entitlements, if any, as of the Effective Date, to any proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, arising under or attributable to (i) the Abuse Insurance Policies, the Insurance Settlement Agreements, and claims thereunder and proceeds thereof, (ii) the Insurance Actions, and (iii) the Insurance Action Recoveries (the "<u>Contributing Chartered Organization Insurance Rights</u>"), then the Contributing Chartered Organization shall, at the sole cost and expense of the Settlement Trust: (a) take such actions reasonably requested by the Settlement Trustee to pursue any of the Contributing Chartered Organization Insurance Rights for the benefit of the Settlement Trust; and (b) promptly transfer to the Settlement Trust any amounts recovered under or on account of any of the Contributing Chartered Organization Insurance Rights; <u>provided</u>, <u>however</u>, that while any such amounts are held by or under the control of any Contributing Chartered Organization, such amounts shall be held for the benefit of the Settlement Trust.

        c.      <u>Participating Chartered Organization Settlement Contribution</u>.  The Participating Chartered Organizations shall make, cause to be made, or be deemed to have made, as applicable, the Participating Chartered Organization Settlement Contribution.  In addition, to the extent that the Settlement Trust's allowance of a particular Abuse Claim results in an Allowed Claim Amount (as defined in the Trust Distribution Procedures) for such Claim that exceeds the available limits of the Abuse Insurance Policies potentially applicable to such Claim, then, with respect to Post-1975 Chartered Organization Abuse Claims, the Settlement Trust shall have the right to assert a claim against applicable Participating Chartered Organizations solely to the extent and availability of such Participating Chartered Organizations' own liability insurance (or, if permitted by applicable law, directly against such liability insurance), in all cases without recourse to any non-insurance assets of such Participating Chartered Organizations.  If a Participating Chartered Organization is unable to transfer its rights, titles, privileges, interests, claims, demands or entitlements, if any, as of the Effective Date, to any proceeds,

payments, benefits, Causes of Action, choses in action, defense, or indemnity, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, arising under or attributable to (i) the Abuse Insurance Policies (excluding the Chartered Organization Reserved Policies), the Insurance Settlement Agreements, and claims thereunder and proceeds thereof, (ii) the Insurance Actions, and (iii) the Insurance Action Recoveries (the "Participating Chartered Organization Insurance Rights"), then the Participating Chartered Organization shall, at the sole cost and expense of the Settlement Trust: (a) take such actions reasonably requested by the Settlement Trustee to pursue any of the Participating Chartered Organization Insurance Rights for the benefit of the Settlement Trust; and (b) promptly transfer to the Settlement Trust any amounts recovered under or on account of any of the Participating Chartered Organization Insurance Rights; provided, however, that while any such amounts are held by or under the control of any Participating Chartered Organization, such amounts shall be held for the benefit of the Settlement Trust.

d.      Claims Deemed Withdrawn with Prejudice.  On the Effective Date, any and all Claims that have been asserted in the Chapter 11 Cases by or on behalf of any Local Council, Participating Chartered Organization, Contributing Chartered Organization, or Settling Insurance Company shall be deemed withdrawn with prejudice and irrevocably waived, released and expunged from the Claims Register without any further notice to or action, order, or approval of the Bankruptcy Court, except that any withdrawal, waiver, release or expungement of any Claims asserted by Hartford or TCJC shall be governed by the the terms and conditions of the Hartford Insurance Settlement Agreement and the TCJC Settlement Agreement, respectively.  Further, no Local Council, Participating Chartered Organization, Contributing Chartered Organization, or Settling Insurance Company shall file or assert any Claim or Claims against the Debtors or Reorganized BSA arising from any act or omission of the Debtors prior to the Confirmation Date, except as provided otherwise in the Hartford Insurance Settlement Agreement (including with respect to the Hartford Additional Administrative Expense Claim, if applicable).

e.      Entitlement to Become a Protected Party.  Notwithstanding anything to the contrary set forth in the Plan or any other document filed with the Bankruptcy Court: (i) no Local Council shall be treated as a Protected Party under the Plan if any part of the Cash or Property Contribution (as defined on Exhibit F) components of the Local Council Settlement Contribution is not contributed to the Settlement Trust on the Effective Date as described on Exhibit F, it being understood that the Property contribution shall be deemed to have been contributed on the Effective Date for Purposes of this provision when all individual Local Councils that are to make a Property Contribution have provided a notice of intent to contribute property to the Settlement Trust in accordance with the terms of the Property Contribution set forth on Exhibit F; (ii) no Contributing Chartered Organization shall be treated as a Protected Party under the Plan until its Contributing Chartered Organization Settlement Contribution shall have been

made; (iii) no Settling Insurance Company shall be treated as a Protected Party under the Plan until such Settling Insurance Company shall have made its contribution to the Settlement Trust pursuant to an Insurance Settlement Agreement, except that Hartford shall be treated as a Settling Insurance Company and Protected Party upon the payment of the Initial Payment to the Settlement Trust and the payment of the Additional Payment into the Escrow Account (as such capitalized terms are defined in the Hartford Insurance Settlement Agreement); and (iv) no Participating Chartered Organization shall be treated as a Protected Party solely based on the Participating Chartered Organization Insurance Assignment.

        f.    <u>Entitlement to Become a Limited Protected Party</u>. Notwithstanding anything to the contrary set forth in the Plan or any other document filed with the Bankruptcy Court, no Chartered Organization shall be treated as a Limited Protected Party under the Plan if it objects to Confirmation of the Plan or informs Debtors' counsel in writing on or before the deadline to object to Confirmation of the Plan that it does not wish to make the Chartered Organization Insurance Assignment.    Notwithstanding the foregoing, no Chartered Organization that is a debtor in bankruptcy as of the Confirmation Date (including the Archbishop of Agaña, a Corporation Sole) shall be treated as a Participating Chartered Organization unless it advises Debtors' counsel in writing that it wishes to make the Chartered Organization Insurance Assignment.

        2.    <u>JPM / Creditors' Committee Settlement</u>.  The treatment provided for under the Plan for Allowed 2010 Credit Facility Claims, Allowed 2019 RCF Claims, Allowed 2010 Bond Claims, Allowed 2012 Bond Claims, Allowed Convenience Claims, Allowed General Unsecured Claims, and Allowed Non-Abuse Litigation Claims, together with the terms and conditions of the JPM / Creditors' Committee Term Sheet, reflects a proposed compromise and settlement by and among the Debtors, the Creditors' Committee and JPM (the "<u>JPM / Creditors' Committee Settlement</u>").[2]  The following constitutes the provisions and conditions of the JPM / Creditors' Committee Settlement:

        a.    <u>Allowance and Treatment of 2010 Credit Facility Claims, 2019 RCF Claims, 2010 Bond Claims and 2012 Bond Claims</u>.  The 2010 Credit Facility Claims, the 2019 RCF Claims, the 2010 Bond Claims and the 2012 Bond Claims shall be Allowed in the amounts set forth in Article <u>III.B</u> and receive the treatment afforded to such Claims thereunder.  The Debtors acknowledge and agree that the Claims held by JPM (the 2010 Credit Facility Claims, the 2019 RCF Claims, the 2010 Bond Claims and the 2012 Bond Claims), are core to the Debtors' charitable mission and were incurred in furtherance of the Debtors' charitable mission.

        b.    <u>Treatment of Convenience Claims, General Unsecured Claims, and Non-Abuse Litigation Claims</u>.  Convenience Claims, General Unsecured Claims,

---

[2]    In the event of a conflict between the terms and conditions of the Plan, on the one hand, and the terms and conditions of the JPM / Creditors' Committee Term Sheet, on the other hand, the terms of the Plan shall control.

and Non-Abuse Litigation Claims shall receive the treatment afforded to such Claims under Article III.B.  The Debtors acknowledge and agree that General Unsecured Claims, Convenience Claims, and Non-Abuse Litigation Claims are held by creditors who are core to the Debtors' charitable mission or creditors whose Claims in such Classes, if Allowed, were incurred in furtherance of the Debtors' charitable mission; accordingly, payments by Reorganized BSA under the Plan on account of such Allowed Claims, if applicable, will be made from Cash relating to Reorganized BSA's core assets.

      c.      Challenge Period.  As of the Effective Date, (i) the Challenge Period (as defined in the Cash Collateral Order) shall be deemed to have expired with respect to the Creditors' Committee; (ii) the Stipulations (as defined in the Cash Collateral Order) and other admissions, agreements and releases set forth in the Cash Collateral Order shall be final and binding on the Creditors' Committee. The ability of any other party to bring a Challenge Proceeding (as defined in the Cash Collateral Order) shall be governed by the terms and conditions of the Cash Collateral Order.

      3.      Settlement of Restricted and Core Asset Disputes.  As a proposed compromise and settlement of any and all disputes concerning the Debtors' restricted and/or core assets, including the claims asserted in the complaint filed by the Tort Claimants' Committee in the adversary proceeding entitled *Official Tort Claimants' Committee of Boy Scouts of America and Delaware BSA, LLC v. Boy Scouts of America and Delaware BSA, LLC*, Adv. Pro. No. 21-50032 (LSS) (the "Settlement of Restricted and Core Asset Disputes"), the Debtors shall: (a) reduce the minimum amount of Unrestricted Cash and Investments to be retained by Reorganized BSA on the Effective Date from $75,000,000 to $25,000,000 (subject to potential variance as set forth in Article V.M); and (b) issue the BSA Settlement Trust Note to the Settlement Trust as of the Effective Date in accordance with Article V.X.  As further consideration in connection with the Settlement of Restricted and Core Asset Disputes, the Debtors have agreed under the Plan to: (i) fund the Core Value Cash Pool, in the amount of $25,000,000; and (ii) make the BSA Settlement Trust Contribution, including all of the Net Unrestricted Cash and Investments.  The proceeds of the Foundation Loan, in the amount of $42,800,000 (which Reorganized BSA will use exclusively for working capital and general corporate purposes), will permit the Debtors to contribute to the Settlement Trust a substantial amount of core value consideration in Cash on the Effective Date.

      4.      Hartford Insurance Settlement.  The Plan incorporates the Hartford Insurance Settlement Agreement, which, upon its execution by all of the parties thereto, shall be filed with the Plan Supplement and attached hereto as Exhibit I-1, and the Plan shall constitute a motion by the Debtors for the Bankruptcy Court to approve the proposed compromises and settlements and sale of the Hartford Policies set forth in the Hartford Insurance Settlement Agreement (the "Hartford Insurance Settlement"), pursuant to sections 363, 503(b), 507(a)(2), 1123 and 1141 of the Bankruptcy Code and Bankruptcy Rule 9019, including approval of (i) the Hartford Insurance Settlement Agreement, (ii) the sale by the Debtors and the Estates, and the purchase by Hartford, of the Hartford Policies, free and clear of all Interests of any Person or Entity (as such terms are defined in the Hartford Insurance Settlement Agreement; for the avoidance of doubt, the term "Interests" as used in this Article V.S.4 shall have the meaning

given to the term "'Interests" in the Hartford Insurance Settlement Agreement, rather than as such term is defined in Article I of this Plan), provided that the Interests, if any, of Chartered Organizations under the Hartford Policies shall, to the extent such Chartered Organizations are not beneficiaries of the Channeling Injunction, attach to the proceeds of the sale of the Hartford Policies, (iii) the settlement, compromise and release of the Hartford Released Claims (as defined in the Hartford Insurance Settlement Agreement) as provided in the Hartford Insurance Settlement Agreement, and (iv) the Allowance of the Hartford Administrative Expense Claim. The Confirmation Order shall constitute the Bankruptcy Court's approval of such motion pursuant to sections 363, 503(b), 507(a)(2), 1123 and 1141 of the Bankruptcy Code and Bankruptcy Rule 9019 and Allowance of the Hartford Administrative Expense Claim and shall include findings of fact and conclusions of law pertaining to such approval, in form and substance acceptable to Hartford, including findings and conclusions designating Hartford as a good-faith purchaser of the Hartford Policies.

5.     TCJC Settlement.  The Plan incorporates the TCJC Settlement Agreement, which, upon its execution by all of the parties thereto, shall be filed with the Plan Supplement and attached hereto as Exhibit J-1, and the Plan shall constitute a motion by the Debtors for the Bankruptcy Court to approve the proposed compromises and settlements set forth in the TCJC Settlement Agreement (the "TCJC Settlement") pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, including, as provided in the TCJC Settlement Agreement, payment of the TCJC Settlement Contribution to the Settlement Trust as a compromise and settlement of all TCJC Abuse Claims, TCJC Claims, and disputes relating to the Plan, including the TCJC Insurance Rights (as such terms are defined in the TCJC Settlement Agreement).  The Confirmation Order shall constitute the Bankruptcy Court's approval of such motion pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and shall include findings of fact and conclusions of law pertaining to such approval, in form and substance acceptable to TCJC.

T.     Payment of Coalition Restructuring Expenses.  On or as soon as reasonably practicable after the Effective Date, Reorganized BSA shall reimburse state court counsel for amounts they have paid to the Coalition Professionals for, and/or pay the Coalition Professionals for amounts payable by state court counsel but not yet paid to Coalition Professionals for, reasonable, documented, and contractual professional advisory fees and expenses incurred by the Coalition Professionals (the "Coalition Restructuring Expenses") from the Coalition's inception up to and including the Effective Date, up to a maximum amount equal to (a) $950,000 per month for the period from August 16, 2021 up to and including the Effective Date (pro-rated for any partial month), plus (b) $10,500,000; provided, however, that, without limiting the foregoing, under no circumstance shall the Debtors or Reorganized BSA have any obligation to (i) pay or reimburse the Coalition, any of its members, or any Persons affiliated with the Coalition for any costs, fees or expenses other than the Coalition Restructuring Expenses or (ii) pay or reimburse any Coalition Restructuring Expenses that constitute transaction, success or similar contingent fees.  The Coalition shall provide the Debtors a reasonable estimate of the total Coalition Restructuring Expenses as of the Effective Date no later than the date that is five (5) Business Days before the anticipated Effective Date.  Notwithstanding anything to the contrary in the Plan, the Coalition Restructuring Expenses shall be subject to the terms of Article II.A.2, with the following modifications: (x) Coalition Professionals shall comply with the procedures and processes set forth in Article II.A.2 by filing final fee application(s), which, for

attorneys or law firms who are Coalition Professionals, shall include time entry detail, which may be redacted for privilege; and (y) payment or reimbursement of Coalition Restructuring Expenses shall be subject to the review and procedure of the Fee Examiner. For the avoidance of doubt, the Coalition Professionals shall not be considered retained professionals of the Debtors, the Creditors' Committee, the Tort Claimants' Committee, or the Future Claimants' Representative, and the retention of the Coalition Professionals shall not have been required to satisfy the standards for retention set forth in sections 327, 328 or 1103 of the Bankruptcy Code.

U.    <u>Good-Faith Compromise and Settlement.</u>  The Plan (including its incorporation of the Abuse Claims Settlement, the Hartford Insurance Settlement, the JPM / Creditors' Committee Settlement, the TCJC Settlement, and the Settlement of Restricted and Core Asset Disputes), the Plan Documents, and the Confirmation Order constitute a good-faith compromise and settlement of Claims, Interests and controversies based upon the unique circumstances of these Chapter 11 Cases, and none of the foregoing documents, the Disclosure Statement, or any other papers filed in furtherance of Confirmation, nor any drafts of such documents, may be offered into evidence or deemed as an admission in any context whatsoever beyond the purposes of the Plan, in any other litigation or proceeding, except as necessary, and as admissible in such context, to enforce their terms before the Bankruptcy Court or any other court of competent jurisdiction. The Plan, the Abuse Claims Settlement, the Hartford Insurance Settlement, the JPM / Creditors' Committee Settlement, the TCJC Settlement, the Settlement of Restricted and Core Asset Disputes, the Plan Documents, and the Confirmation Order will be binding as to the matters and issues described therein, but will not be binding with respect to similar matters or issues that might arise in any other litigation or proceeding in which none of the Debtors, Reorganized BSA, the Protected Parties, or the Settlement Trust is a party.

V.    <u>Restated Debt and Security Documents.</u>

1.    On the Effective Date, the Prepetition Debt and Security Documents shall be amended and restated in the form of the Restated Debt and Security Documents, and Reorganized BSA, JPM and Arrow shall, and shall be authorized, to execute, deliver and enter into the Restated Debt and Security Documents as of such date, in principal amounts equal to the Allowed amounts set forth in <u>Article III.B.3</u>, <u>Article III.B.4</u>, <u>Article III.B.5</u>, and <u>Article III.B.6</u> without the need for any further corporate action or any further notice to or order of the Bankruptcy Court. The Debtors or Reorganized BSA, as applicable, JPM, and Arrow shall take all actions necessary to continue the Debtors' obligations under the Prepetition Debt and Security Documents, as amended and restated by the Restated Debt and Security Documents and to give effect to the Restated Debt and Security Documents, including surrendering any debt instruments or securities that are no longer applicable under the Restated Debt and Security Documents to the Debtors or Reorganized BSA. Entry of the Confirmation Order shall be deemed approval of the JPM Exit Fee, and Reorganized BSA is authorized and directed to pay the JPM Exit Fee to JPM on the Effective Date.

2.    Except as otherwise modified by the Restated Debt and Security Documents, all Liens, mortgages and security interests securing the obligations arising under the Restated Debt and Security Documents that were collateral securing the Debtors' obligations under the Prepetition Debt and Security Documents as of the

Petition Date are unaltered by the Plan, and all such Liens, mortgages and security interests are reaffirmed and perfected with respect to the Restated Debt and Security Documents to the same extent, in the same manner and on the same terms and priorities as they were under the Prepetition Debt and Security Documents, except as the foregoing may be modified pursuant to the Restated Debt and Security Documents.  All Liens and security interests granted and continuing pursuant to the Restated Debt and Security Documents shall be (a) valid, binding, perfected, and enforceable Liens and security interests in the personal and real property described in and subject to such documents, with the priorities established in respect thereof under applicable non-bankruptcy law; (b) granted in good faith and deemed not to constitute a fraudulent conveyance or fraudulent transfer; and (c) not otherwise subject to avoidance, recharacterization, or subordination (whether equitable, contractual or otherwise) under any applicable law.  The Debtors, Reorganized BSA, Arrow, and JPM are authorized to make, and to the extent required by the Restated Debt and Security Documents, the Debtors, Reorganized BSA, Arrow will make, all filings and recordings, and obtain all governmental approvals and consents necessary (but otherwise consistent with the consents and approvals obtained in connection with the Prepetition Debt and Security Documents) to establish, attach and perfect such Liens and security interests under any applicable law (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.  For purposes of all mortgages and deposit account control agreements that secured the obligations arising under the Prepetition Debt and Security Documents, the Restated Debt and Security Documents are deemed an amendment and restatement of the Prepetition Debt and Security Documents, and such mortgages and control agreements shall survive the Effective Date, shall not be cancelled, and shall continue to secure Reorganized BSA's obligations under the Restated Debt and Security Documents, except as expressly set forth therein.

3.    The definitive terms of the Restated Debt and Security Documents shall be (x) acceptable to JPM and the BSA, (y) reasonably acceptable to the Creditors' Committee, and (z) substantially the same as the Prepetition Debt and Security Documents, except that, as to be specified in the Restated Debt and Security Documents:

a.    the maturity dates under the Restated 2010 Bond Documents, the Restated 2012 Bond Documents, and the Restated Credit Facility Documents will be the Restated Maturity Date;

b.    principal under the Restated 2010 Bond Documents and the Restated 2012 Bond Documents shall be payable in monthly installments, in the same monthly amounts as the prepetition periodic amortization amounts, beginning on the date that is two (2) years after the Effective Date and ending on the Restated Maturity Date; provided, that the scheduled principal amounts payable under the Restated 2010 Bond Documents and the Restated 2012 Bond Documents shall be reduced, on a pro rata basis, by an amount equal to the Excess

Cash and Investments, if any, that are remitted to JPM under the Excess Cash Sweep;

c.      interest under the Restated 2010 Bond Documents and the Restated 2012 Bond Documents shall be payable in monthly installments, at the currently applicable existing rates in the 2010 Bond Documents and the 2012 Bond Documents, beginning on the date that is one month after the Effective Date and ending on the Restated Maturity Date;

d.      principal under the Restated Credit Facility Documents shall be payable in quarterly installments, set at 1/40th of the outstanding balance on the Effective Date, beginning on the date that is two (2) years after the Effective Date and ending on the Restated Maturity Date; provided, that the principal amounts payable under the Restated Credit Facility Documents shall be reduced, on a pro rata basis, by an amount equal to the Excess Cash and Investments, if any, that are remitted to JPM under the Excess Cash Sweep;

e.      interest under the Restated Credit Facility Documents shall be payable in quarterly installments at the applicable existing rates in the Prepetition Debt and Security Documents, beginning on the date that is three (3) months after the Effective Date and ending on the Restated Maturity Date;

f.      all of the obligations of Reorganized BSA under the Restated Debt and Security Documents shall be secured by first-priority liens on and security interests in all of the assets of Reorganized BSA;

g.      all of the obligations of Reorganized BSA under the Restated Debt and Security Documents shall be guaranteed by Arrow; and

h.      beginning on December 31 of the calendar year that is two (2) years after the Effective Date and continuing on December 31 of each successive calendar year until December 31 of the calendar year that is immediately prior to the calendar year of the Restated Maturity Date, Reorganized BSA shall remit to JPM, as soon as reasonably practicable but in no case later than thirty (30) days of such date, twenty-five percent (25%) of the Excess Cash and Investments in excess of $75,000,000, if any, as of such date, measured on a pro forma basis after having given effect to the principal payment, if any, due on February 15 of the following year under the BSA Settlement Trust Note, if applicable (the "Excess Cash Sweep"), and JPM shall apply any such amounts on a pro rata basis to the unpaid principal balances under the Restated Debt and Security Documents. For the avoidance of doubt, no payments shall be made on account of the Excess Cash Sweep until the last Distribution is made on account of Allowed General Unsecured Claims.

4.      Except as provided for in an Insurance Settlement Agreement, neither any provision of the Plan nor the occurrence of the Effective Date shall alter, amend, or otherwise impair the rights and obligations of the Debtors, Reorganized BSA, JPM, or

any applicable Insurance Company holding one or more letters of credit issued by JPM to secure obligations arising under one or more BSA Insurance Policies. Without limiting the foregoing, nothing in the Plan or the Confirmation Order shall preclude any such Insurance Company from exercising any applicable rights on any such letter of credit issued, or other security provided, for the benefit of the Insurance Company in accordance with the terms and conditions of the documents governing such letter of credit or other security, or applying amounts therefrom to any Claim secured by such letter of credit or other security, and the Debtors, Reorganized BSA, and JPM reserve any and all rights with respect to such Insurance Company's exercise of any applicable rights.

W.    Foundation Loan.

1.    On the Effective Date, the Foundation Loan Agreement and any applicable collateral and other loan documents governing the Foundation Loan shall be executed and delivered, and Reorganized BSA shall be authorized to execute, deliver and enter into, the Foundation Loan Agreement and related documentation governing the Foundation Loan without the need for any further corporate action or any further notice to or order of the Bankruptcy Court.

2.    As of the Effective Date, upon the granting of Liens in accordance with the Foundation Loan Agreement and any applicable collateral and other loan documents governing the Foundation Loan, all of the Liens and security interests granted thereunder (a) shall be deemed to have been granted, (b) shall be legal, binding, automatically perfected, non-avoidable, and enforceable Liens on, and security interests in, the applicable collateral as of the Effective Date in accordance with the respective terms of the Foundation Loan Agreement and related documentation, subject to the Liens and security interests set forth in the Restated Debt and Security Documents, as permitted under the Foundation Loan Agreement and related documentation. All Liens and security interests granted pursuant to the Foundation Loan Agreement and related documentation shall be (i) valid, binding, perfected, and enforceable Liens and security interests in the personal and property described in and subject to such documents, with the priorities established in respect thereof under applicable non-bankruptcy law; (ii) granted in good faith and deemed not to constitute a fraudulent conveyance or fraudulent transfer; and (c) not otherwise subject to avoidance, recharacterization, or subordination (whether equitable, contractual or otherwise) under any applicable law. The Debtors, Reorganized BSA, Arrow, and the Foundation are authorized to make, and to the extent contemplated by the Foundation Loan Agreement and related documentation, the Debtors, Reorganized BSA, Arrow will make, all filings and recordings, and obtain all governmental approvals and consents necessary to establish, attach and perfect such Liens and security interests under any applicable law (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interest to third parties.

X.     BSA Settlement Trust Note.  On the Effective Date, Reorganized BSA shall execute, issue and deliver the BSA Settlement Trust Note to the Settlement Trust and execute and deliver any related documentation governing the BSA Settlement Trust Note, including any related security agreement, without the need for any further corporate action or any further notice to or order of the Bankruptcy Court.  The BSA Settlement Trust Note will commence on the Effective Date and will be due ninety-one (91) days after the date that is ten (10) years after the Effective Date and shall bear interest at a rate of 5.5% per annum, payable semi-annually, subject to a payment-in-kind election for the eighteen (18) months immediately following the Effective Date.  The obligations of Reorganized BSA under the BSA Settlement Trust Note shall be secured by second-priority liens on and security interests in inventory, accounts receivable (except the Arrow Intercompany Note), Cash and the Headquarters.  Principal under the BSA Settlement Trust Note shall be payable in annual installments due on February 15 of each year during the term of the BSA Settlement Trust Note, commencing on February 15 of the second year following the Effective Date.  Such annual principal payments shall be equal to the sum of the following calculation: (a) $4,500,000; plus (b) $3.50 multiplied by the aggregate number of Youth Members as of December 31 of the preceding year up to the forecasted number of Youth Members for such year as set forth in the Debtors' five-year business plan; plus (c) $50 multiplied by the aggregate number of High Adventure Base Participants during the preceding calendar year; plus (d) $50 multiplied by the aggregate number of Youth Members in excess of the forecasted number of Youth Members for such year, excluding the portion of the excess that is comprised of members under the ScoutReach program, as set forth in the Debtors' five-year business plan; plus (e) $150 multiplied by the aggregate number of High Adventure Base Participants, excluding those attending events with a registration fee of less than $300 (*e.g.*, for non-typical High Adventure Base activities), in excess of the forecasted number of High Adventure Base Participants for such year as set forth in the Debtors' five-year business plan. The forecasted numbers of Youth Members and High Adventure Base Participants referenced in clauses (b), (d) and (e) of the foregoing sentence are included in the Financial Projections attached to the Disclosure Statement.  The forecast for years after 2025 shall be deemed to be the forecast for calendar year 2025.  The BSA Settlement Trust Note may be prepaid at any time without penalty.

Y.     DST.  The DST shall be established on the Effective Date in accordance with the DST Agreement.  The purposes of the DST shall be to: (1) issue the DST Note to the Settlement Trust as of the Effective Date; (2) collect, manage and invest Cash contributed by Local Councils on a monthly basis to an account (and any replacement thereof) owned by the DST in accordance with the DST Note Mechanics; and (3) make annual payments (a) to the Pension Plan or (b) toward principal and interest on the DST Note, as determined in accordance with the DST Note Mechanics and the DST Agreement.  In the event of a conflict between the terms or provisions of the Plan and the DST Agreement, the terms of the Plan shall control.

Z.     Pension Plan.  No provision contained in the Plan, Confirmation Order, the Bankruptcy Code (including section 1141 of the Bankruptcy Code), or any other document filed or order entered in the Chapter 11 Cases shall be construed to exculpate, discharge, release or relieve the Debtors, the Local Councils, or any other party, in any capacity, from any liability or responsibility to any Person with respect to the Pension Plan under any law, governmental policy, or regulatory provision.  The Pension Plan shall not be enjoined or precluded from enforcing any such liability or responsibility as a result of any of the provisions of the Plan

(including those provisions providing for exculpation, satisfaction, release and discharge of Claims against the Debtors), the Confirmation Order, the Bankruptcy Code (including section 1141 of the Bankruptcy Code), or any other document filed or order entered in the Chapter 11 Cases.  The Settlement Trust shall not have any liability to any Person on account of the Pension Plan, including liability as a member of a "Controlled Group" as defined in 29 U.S.C. § 1301(a)(14)(A) or on any other basis whatsoever.

As of the Effective Date, Reorganized BSA shall assume and continue the Pension Plan to the extent of its obligations under the Pension Plan and applicable law, including, as applicable, (1) satisfaction of the minimum funding requirements under 26 U.S.C. §§ 412 and 430 and 29 U.S.C. §§ 1082 and 1083, (2) payment of all required Pension Benefit Guaranty Corporation premiums in accordance with 29 U.S.C. §§ 1306 and 1307, and (3) administration of the Pension Plan in all material respects in accordance with the applicable provisions of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301 *et seq.*, and the Internal Revenue Code. Notwithstanding the foregoing, Reorganized BSA reserves all of its rights under the Pension Plan.  All Proofs of Claim filed by the Pension Benefit Guaranty Corporation with respect to the Pension Plan shall be deemed withdrawn on the Effective Date.

AA.    <u>Single Satisfaction of Allowed General Unsecured Claims</u>.  In no event shall any holder of an Allowed General Unsecured Claim recover more than the full amount of its Allowed General Unsecured Claim from the Core Value Cash Pool (plus interest from the Core Value Cash Pool at the federal judgment rate to the extent applicable under the terms hereof), and to the extent that the holder of an Allowed General Unsecured Claim has received, or in the future receives, payment on account of such Allowed General Unsecured Claim from a party that is not a Debtor or Reorganized BSA, such holder shall repay, return, or deliver to the Core Value Cash Pool any Distribution held by or transferred to such holder to the extent the holder's total recovery on account of its Allowed General Unsecured Claim from the third party and from the Core Value Cash Pool exceeds the amount of such holder's Allowed General Unsecured Claim (plus interest from the Core Value Cash Pool at the federal judgment rate to the extent applicable under the terms hereof).

BB.    <u>Exemption from Certain Transfer Taxes and Recording Fees</u>.  To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code and applicable law, any transfers of property pursuant to the Plan, including any transfers to the Settlement Trust by the Debtors, the Local Councils, the Contributing Chartered Organizations, and the Settling Insurance Companies, and payments by Reorganized BSA to or from the Core Value Cash Pool, shall not be taxed under any law imposing a stamp tax or similar tax.

CC.    <u>Non-Monetary Commitments</u>.  The Debtors shall take the following actions to promote healing and reconciliation and to continue the Debtors' efforts to prevent Abuse from occurring in Scouting in the future:

1.    The Debtors shall form a committee (the "<u>Child Protection Committee</u>") of members from the BSA, Local Councils, the Tort Claimants' Committee, and the Coalition (including survivors).  The functions of the Child Protection Committee include the following:

a.      No later than six months after the Effective Date, the BSA will present to the Committee on the BSA's current Youth Protection Program (the "Youth Protection Program").  The BSA will report to the Child Protection Committee regarding the Youth Protection Program and any changes thereto on an annual basis for a period of three years following the Effective Date.

b.      Following that presentation, the BSA and Child Protection Committee will work with an entity engaged by the BSA that is selected with the consultation of the Child Protection Committee that is not currently affiliated with the BSA to evaluate the Youth Protection Program (the "Evaluating Entity").  The Evaluating Entity will have expertise in the prevention of youth sexual abuse.

(i)      Any evaluation will be comprehensive in nature and include input from current BSA volunteers and professionals, survivors of sexual abuse while involved with Scouting, the members of the Child Protection Committee, and the Evaluating Entity.

(ii)      The Evaluating Entity will report to the Child Protection Committee assessing the current Youth Protection Program and make specific recommendations for reasonable improvements to the Youth Protection Program that may include mechanisms for the elimination of abuse and accurate and annual reporting regarding the results of the Youth Protection Program, including confirmed instances of sexual abuse that is made available to the public (the "Prospective Reporting").

(iii)      The BSA will engage with the Evaluating Entity, and the Child Protection Committee, and will take appropriate steps as necessary to improve the Program. Changes to the Youth Protection Program will be reported on the BSA's Youth Protection Program website and training will be reasonably adjusted to reflect changes.

c.      The BSA will propose and the Child Protection Committee will consider a protocol for the review and publication of information in the Volunteer Screening Database and the Prospective Reporting, which will take into account factors including: (i) the desire to make public credibly identified perpetrators of sexual abuse in Scouting; (ii) adequate protections for survivor identities; (iii) consideration regarding the protection of third parties, including survivor family members and volunteers; (iv) a notification process regarding any publication; (v) issues related to privacy and liability related to publication; and (vi) the potential appointment or retention of an appropriate neutral party to supervise the evaluation and review of the Volunteer Screening Database (the "Neutral Supervisor").  If the BSA and Child Protection Committee are unable to reach an agreement on the above protocol, the Neutral Supervisor shall mediate the dispute to resolution. In accordance with the process outlined above, information from the Volunteer Screening Database and Prospective Reporting shall be published annually after agreement among the parties or determination by the Neutral Supervisor.

d.      After consultation and recommendations from the Evaluating Entity, the Child Protection Committee may propose and the BSA will in good faith consider other issues relating to child protection, including: (i) special BSA Scouting programs for survivors; and (ii) participation and leadership in a comprehensive reporting program to include other youth-serving organizations.

e.      The BSA will engage with the Child Protection Committee and consider all appropriate measures proposed by the Child Protection Committee to improve transparency and accountability with respect to any future instances of sexual abuse, including the dissemination of information relating to abuse statistics, consistent with practices of other youth-serving organizations, including what information may be publically available on the BSA's website.

## ARTICLE VI.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>.

1.      On the Effective Date, except as otherwise provided herein, all Executory Contracts and Unexpired Leases shall be deemed assumed by Reorganized BSA without the need for any further notice to or action, order, or approval of the Bankruptcy Court under sections 365 or 1123 of the Bankruptcy Code, except for Executory Contracts or Unexpired Leases: (a) that are identified on the Rejected Contracts and Unexpired Leases Schedule; (b) that previously expired or terminated pursuant to their terms; (c) that the Debtors have previously assumed or rejected pursuant to a Final Order of the Bankruptcy Court; (d) that are the subject of a motion to reject that remains pending as of the Effective Date; (e) as to which the effective date of rejection will occur (or is requested by the Debtors to occur) after the Effective Date; or (f) as to which the Debtors or Reorganized BSA, as applicable, determine, in the exercise of their reasonable business judgment, that the Cure Amount, as determined by a Final Order or as otherwise finally resolved, would render assumption of such Executory Contract or Unexpired Lease unfavorable to Debtors or Reorganized BSA; <u>provided</u> that the Debtors reserve the right to seek enforcement of an assumed or assumed and assigned Executory Contract or Unexpired Lease following the Confirmation Date, including seeking an order of the Bankruptcy Court rejecting such Executory Contract or Unexpired Lease for cause.

2.      Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumption or rejection, as applicable, of Executory Contracts or Unexpired Leases pursuant to the Plan, pursuant to sections 365 and 1123 of the Bankruptcy Code.  Except as otherwise set forth herein, the assumption or rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall be effective as of the Effective Date; <u>provided</u> that the rejection of an Unexpired Lease shall be effective as of the later of: (a) the Effective Date; and (b) the date on which the leased premises are unconditionally surrendered to the non-Debtor counterparty to the rejected Unexpired Lease.  Reorganized BSA is authorized to abandon any De Minimis Assets at or on the premises subject to an Unexpired Lease that is rejected pursuant to the Plan, and the non-

Debtor counterparty to such Unexpired Lease may dispose of any such De Minimis Assets remaining at or on the leased premises on the applicable lease rejection date.

3.      Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or a Final Order of the Bankruptcy Court shall re-vest in and be fully enforceable by Reorganized BSA in accordance with its terms, except as such terms may have been modified by the provisions of the Plan, the Confirmation Order, or any Final Order of the Bankruptcy Court authorizing and providing for its assumption.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by Reorganized BSA.

B.      <u>Rejection Damages Claims</u>.  Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim for Rejection Damages Claims, if any, shall be filed within thirty (30) days after the latest to occur of: (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; (2) the effective date of the rejection of such Executory Contract or Unexpired Lease; or (3) the Effective Date (as applicable, the "<u>Rejection Damages Bar Date</u>").  Claims arising from the rejection of an Executory Contract or an Unexpired Lease shall be classified as General Unsecured Claims and subject to the provisions of <u>Article VII</u> and the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.  **Any holder of a Rejection Damages Claim that is required to file a Proof of Claim in accordance with this <u>Article VI.B</u> but fails to do so on or before the Rejection Damages Bar Date shall not be treated as a creditor with respect to such Claim for the purposes of voting or Distributions, and such Rejection Damages Claim shall be automatically Disallowed, forever barred from assertion, and unenforceable against the Debtors, their Estates, Reorganized BSA, or its or their respective property, whether by setoff, recoupment, or otherwise, without the need for any objection by the Debtors or Reorganized BSA or further notice to, or action, order, or approval of the Bankruptcy Court, and such Rejection Damages Claim shall be deemed fully satisfied, released, and discharged.**

C.      <u>Cure of Defaults under Executory Contracts and Unexpired Leases</u>.

1.      Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount in Cash on the Effective Date or in the ordinary course of the Debtors' or Reorganized BSA's non-profit operations, subject to the limitation described below.

2.      Except as otherwise provided in the Plan, the Debtors shall, on or before the date of filing of the Plan Supplement, cause the Cure and Assumption Notices to be served on counterparties to Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan.  Any objection by a non-Debtor counterparty to an Executory Contract or Unexpired Lease to the assumption, assumption and assignment, the related Cure Amount, or adequate assurance, must be filed, served, and actually received by the Debtors on or prior to the deadline for filing objections to the Plan (or such later date as may be provided in the applicable Cure and Assumption Notice); <u>provided</u> that each

counterparty to an Executory Contract or Unexpired Lease (a) that the Debtors later determine to assume or (b) as to which the Debtors modify the applicable Cure Amount, must object to the assumption or Cure Amount, as applicable, by the earlier of: (i) fourteen (14) days after the Debtors serve such counterparty with a corresponding Cure and Assumption Notice; and (ii) the Confirmation Hearing.  **Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease shall be forever barred, estopped, and enjoined from contesting the Debtors' assumption of the applicable Executory Contract or Unexpired Lease and from requesting payment of a Cure Amount that differs from the amounts paid or proposed to be paid by the Debtors or Reorganized BSA, in each case without the need for any objection by the Debtors or Reorganized BSA or any further notice to or action, order, or approval of the Bankruptcy Court.  Reorganized BSA may settle any dispute regarding a Cure Amount without any further notice to or action, order, or approval of the Bankruptcy Court.**

3.      To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed, or assumed and assigned, pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or would be deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any change of control or similar provision), then such provision shall be deemed preempted and modified such that neither the Debtors' assumption or assumption and assignment of the Executory Contract or Unexpired Lease nor any of the transactions contemplated by the Plan shall entitle the non-debtor counterparty to terminate or modify such Executory Contract or Unexpired Lease or to exercise any other purported default-related rights thereunder.

4.      **The Debtors' assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and payment of any applicable Cure Amount in accordance with the procedures set forth in this Article VI.C, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed, or assumed and assigned, Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed Disallowed and expunged as of the later of: (a) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption; (b) the effective date of such assumption; or (c) the Effective Date, in each case without the need for any objection by the Debtors or Reorganized BSA or any further notice to or action, order, or approval of the Bankruptcy Court.**

D.      Dispute Resolution.  In the event of a timely filed objection regarding: (1) a Cure Amount; (2) the ability of Reorganized BSA or any assignee to provide adequate assurance of future performance within the meaning of section 365 of the Bankruptcy Code under the

Executory Contract or Unexpired Lease to be assumed; or (3) any other matter pertaining to assumption or the requirements of section 365(b)(1) of the Bankruptcy Code, such dispute shall be resolved by a Final Order of the Bankruptcy Court (which may be the Confirmation Order) or as may be agreed upon by the Debtors or Reorganized BSA, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.  The Debtors or Reorganized BSA, applicable, shall pay the applicable Cure Amount as soon as reasonably practicable after entry of a Final Order resolving such dispute and approving such assumption, or as may otherwise be agreed upon by the Debtors or Reorganized BSA, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.  To the extent that a dispute regarding the applicable Cure Amount is resolved or determined unfavorably to the Debtors, the Debtors may, in their discretion, reject the applicable Executory Contract or Unexpired Lease after such determination, which rejection shall supersede, nullify, and render of no force or effect any earlier assumption or assumption and assignment.  Under no circumstances shall the status of payment of a Cure Amount required by section 365(b)(1) of the Bankruptcy Code following the entry of a Final Order resolving the dispute and approving the assumption prevent or delay implementation of the Plan or the occurrence of the Effective Date.

      E.    <u>Contracts and Leases Entered into After the Petition Date</u>.  Contracts and leases entered into after the Petition Date by the BSA, including any Executory Contracts and Unexpired Leases assumed by BSA, will be performed by the BSA or Reorganized BSA in the ordinary course of its charitable non-profit operations.  Accordingly, such contracts and leases (including any assumed Executory Contract and Unexpired Leases) shall survive and remain unaffected by entry of the Confirmation Order.

      F.    <u>Insurance Policies</u>.

      1.    Notwithstanding anything to the contrary herein, all Insurance Policies issued or entered into prior to the Petition Date shall not be considered Executory Contracts and shall neither be assumed nor rejected by the Debtors; provided, however, that to the extent any Insurance Policy is determined to be an Executory Contract, then, subject to <u>Article IV.V</u>, and notwithstanding anything contained in the Plan to the contrary, the Plan will constitute a motion to assume such Insurance Policy and pay all future obligations, if any, in respect thereof and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interests of the Debtors, their respective Estates and all parties in interest.  Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of any Debtor existing as of the Confirmation Date with respect to any Insurance Policy; and prior payments for premiums or other charges made prior to the Petition Date under or with respect to any Insurance Policy shall be indefeasible.  Moreover, as of the Effective Date, all payments of premiums or other charges made by the Debtors on or after the Petition Date under or with respect to any Insurance Policy shall be deemed to have been authorized, approved, and ratified in all respects without any requirement of further action by the Bankruptcy Court. Notwithstanding anything to the contrary contained herein, Confirmation shall not discharge, impair or otherwise modify any obligations assumed by the foregoing

assumption, and each such obligation shall be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed.

2.      Notwithstanding anything to the contrary contained in the Plan, entry of the Confirmation Order shall not discharge, impair, or otherwise modify any indemnity obligations assumed as a result of the foregoing assumption of the Insurance Policies that are D&O Liability Insurance Policies (and related documents), and each such indemnity obligations will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors under the Plan as to which no Proof of Claim need be filed.

3.      Other than the permissibility of the Insurance Assignment, or as otherwise provided in the Bankruptcy Code, applicable law, the findings made by the Bankruptcy Court in the Confirmation Order or the findings made by the District Court in the Affirmation Order, the rights and obligations of the parties under the Insurance Policies, including the question of whether any breach has occurred, shall be determined under applicable law.

G.      <u>Compensation and Benefits Programs</u>.    Other than those Compensation and Benefits Programs assumed by the Debtors prior to entry of the Confirmation Order, if any, all of the Compensation and Benefits Programs entered into before the Petition Date and not since terminated shall be deemed to be, and shall be treated as though they are, Executory Contracts under the Plan.  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of Reorganized BSA's assumption and continued maintenance and sponsorship of each of such Compensation and Benefits Plan under sections 365 and 1123 of the Bankruptcy Code, and the Debtors' and Reorganized BSA's obligations under the Compensation and Benefits Programs shall survive and remain unaffected by entry of the Confirmation Order and be fulfilled in the ordinary course of the Debtors' and Reorganized BSA's non-profit operations.  Compensation and Benefits Programs assumed by the Debtors prior to entry of the Confirmation Order shall continue to be fulfilled in the ordinary course of the Debtors' non-profit operations from and after the date of any order of the Bankruptcy Court authorizing the assumption of such Compensation and Benefits Program.  All Claims filed on account of an amounts asserted to be owed under Compensation and Benefits Programs shall be deemed satisfied and expunged from the Claims Register as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court.

H.      <u>Restoration Plan and Deferred Compensation Plan</u>.    On the Effective Date the Restoration Plan and the Deferred Compensation Plan shall be terminated and, to the extent applicable, shall be deemed rejected by Reorganized BSA pursuant to section 365 of the Bankruptcy Code and this <u>Article VI</u>.    Claims arising from the Debtors' rejection of the Restoration Plan and the Deferred Compensation Plan shall be treated as General Unsecured Claims hereunder.  Holders of Allowed Claims arising from such rejection shall be entitled to a recovery from the Core Value Cash Pool in accordance with the applicable terms of the Plan.

I.      <u>Workers' Compensation Program</u>.    As of the Effective Date, the Debtors and Reorganized BSA shall continue to honor their obligations under: (a) all applicable workers' compensation laws in all applicable states; and (b) the Workers' Compensation Program.  All

Proofs of Claims on account of workers' compensation, including the Workers' Compensation Program, shall be deemed withdrawn automatically and without any further notice to or action, order, or approval of the Bankruptcy Court; provided, however, that nothing in the Plan shall limit, diminish, or otherwise alter the Debtors' or Reorganized BSA's defenses, Causes of Action, or other rights under applicable non-bankruptcy law with respect to the Workers' Compensation Programs; provided further, however, that nothing herein shall be deemed to impose any obligations on the Debtors or their insurers in addition to what is provided for under the terms of the Workers' Compensation Programs and applicable state law.

     J.     <u>Indemnification Obligations</u>.

     1.     Notwithstanding anything in the Plan to the contrary, each Indemnification Obligation shall be assumed by Reorganized BSA effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code or otherwise, except for any Indemnification Obligation that is or is asserted to be owed to or for the benefit of any Perpetrator. Subject to the foregoing sentence, each Indemnification Obligation shall remain in full force and effect, shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose. For the avoidance of doubt, this <u>Article VI.J</u> affects only the obligations of the Debtors and Reorganized BSA with respect to any Indemnification Obligations owed to or for the benefit of past and present directors, officers, employees, attorneys, accountants, investment bankers, and other professionals and agents of the Debtors, and shall have no effect on nor in any way discharge or reduce, in whole or in part, any obligation of any other Person owed to or for the benefit of such directors, officers, employees, attorneys, accountants, investment bankers, and other professionals and agents of the Debtors.

     2.     All Proofs of Claim filed on account of an Indemnification Obligation to a current or former director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such Indemnification Obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

     K.     <u>Gift Annuity Agreements and Life-Income Agreements</u>. The Gift Annuity Agreements and Life-Income Agreements shall be deemed to be, and shall be treated as though they are, Executory Contracts under the Plan, and entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' assumption of each of such Executory Contract.

     L.     <u>Modifications, Amendments, Supplements, Restatements, or Other Agreements</u>. Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless the Debtors reject or repudiate any of the foregoing agreements. Modifications, amendments, and supplements to, or restatements of, prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not

be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

M.    Reservation of Rights.    Neither the inclusion of any Executory Contract or Unexpired Lease on the Schedules, a Cure and Assumption Notice, or the Rejected Executory contracts and Unexpired Leases Schedule, nor anything contained in any Plan Document, shall constitute an admission by the Debtors that a contract or lease is in fact an Executory Contract or Unexpired Lease or that Reorganized BSA has any liability thereunder.    If there is a dispute as of the Confirmation Date regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors, or, after the Effective Date, Reorganized BSA, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease *nunc pro tunc* to the Confirmation Date.

N.    Nonoccurrence of Effective Date; Bankruptcy Code Section 365(d)(4).    If the Effective Date fails to occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to further extend the deadline for assuming or rejecting Unexpired Leases under section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.    Applicability.    None of the terms or provision of this Article VII shall apply to Abuse Claims, which shall be exclusively processed, liquidated and paid by the Settlement Trust in accordance with the Settlement Trust Documents.

B.    Distributions Generally.    The Disbursing Agent shall make all Distributions to appropriate holders of Allowed Claims in accordance with the terms of the Plan.

C.    Distributions on Account of Certain Claims Allowed as of the Effective Date. Except as otherwise provided in the Plan, on or as soon as practicable after the Effective Date, the Disbursing Agent shall make Distributions in Cash in amounts equal to all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Other Secured Claims, and Allowed Convenience Claims.

D.    Distributions on Account of Allowed General Unsecured Claims.    On each Distribution Date, the Disbursing Agent shall Distribute to each holder of an Allowed General Unsecured Claim an amount equal to such holder's Pro Rata Share of (1) the total balance of the Core Value Cash Pool as of such date, less (2) the balance of the Disputed Claims Reserve.

E.    Distributions on Account of Disputed Claims Allowed After the Effective Date. Distributions on account of any Disputed Claim shall be made to the extent such Claim is Allowed in accordance with the provisions of Article VIII.    Except as otherwise provided in the Plan, the Confirmation Order, another order of the Bankruptcy Court, or as agreed to by the relevant parties, Distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made as soon as practicable after the Disputed Claim becomes an Allowed Claim.

F.      Rights and Powers of Disbursing Agent.

1.      The Disbursing Agent shall make all Distributions to the appropriate holders of Allowed Claims in accordance with the terms of the Plan, including this Article VII.  Except as otherwise ordered by the Bankruptcy Court, the Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.

2.      The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all Distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.  The Disbursing Agent may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns for all taxable periods through the date on which final Distributions are made.

G.      Delivery of Distributions and Undeliverable or Unclaimed Distributions.

1.      Claims Record Date.  As of the close of business on the Claims Record Date, the various transfer registers for each of the Classes of Claims as maintained by the Debtors or their agents shall be deemed closed for purposes of determining whether a holder of such a Claim is a record holder entitled to a Distribution under the Plan, and there shall be no further changes in the record holders or the permitted designees with respect to such Claims.  The Debtors or Reorganized BSA, as applicable, shall have no obligation to recognize any transfer or designation of such Claims occurring after the close of business on the Claims Record Date.  With respect to payment of any Cure Amounts or assumption disputes, neither the Debtors nor Reorganized BSA shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the close of business on the Claims Record Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.

2.      Delivery of Distributions.  If a Person holds more than one Claim in any one Class, in the Disbursing Agent's sole discretion, all such Claims will be aggregated into one Claim and one Distribution will be made with respect to the aggregated Claim.

3.      Special Rules for Distributions to Holders of Disputed Claims.  Except as otherwise provided in the Plan or agreed to by the relevant parties: (a) no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order; and (b) any Person that holds both an Allowed Claim and a Disputed Claim shall not receive any Distribution on account of the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order or the Disputed Claims have been Allowed or expunged.  Any Distributions arising from property Distributed to holders of Allowed Claims in a Class and paid to

such holders under the Plan shall also be paid, in the applicable amounts, to any holder of a Disputed Claim in such Class that becomes an Allowed Claim after the date or dates that such Distributions were earlier paid to holders of Allowed Claims in such Class.

H. <u>Undeliverable and Non-Negotiated Distributions</u>.

1. <u>Undeliverable Distributions</u>. If any Distribution to a holder of an Allowed Claim is returned to Reorganized BSA as undeliverable, no further Distributions shall be made to such holder unless and until Reorganized BSA is notified in writing of such holder's then-current address or other necessary information for delivery, at which time such previously undeliverable Distribution shall be made to such holder within ninety (90) days of receipt of such holder's then-current address or other necessary information; <u>provided</u>, <u>however</u>, that any such undeliverable Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 180 days after the date of the initial attempted Distribution. After such date, all unclaimed property or interests in property shall revert to Reorganized BSA automatically and without the need for any notice to or further order of the Bankruptcy Court (notwithstanding any applicable non-bankruptcy escheatment, abandoned, or unclaimed property laws to the contrary), and the right, title, and interest of any holder to such property or interest in property shall be discharged and forever barred; <u>provided</u> that Distributions made from the Core Value Cash Pool and returned as undeliverable shall revert to the Core Value Cash Pool.

2. <u>Non-Negotiated Distributions</u>. If any Distribution to a holder of an Allowed Claim is not negotiated for a period of 180 days after the Distribution, then such Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and re-vest in Reorganized BSA or re-vest in the Core Value Cash Pool if such Distribution was made from the Core Value Cash Pool. After such date, all non-negotiated property or interests in property shall revert to Reorganized BSA automatically and without the need for any notice to or further order of the Bankruptcy Court (notwithstanding any applicable non-bankruptcy escheatment, abandoned, or unclaimed property laws to the contrary), and the right, title, and interest of any holder to such property or interest in property shall be discharged and forever barred.

I. <u>Manner of Payment under the Plan</u>. Except as otherwise specifically provided in the Plan, at the option of Reorganized BSA, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of Reorganized BSA.

J. <u>Satisfaction of Claims</u>. Except as otherwise specifically provided in the Plan, any Distributions to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

K. <u>Minimum Cash Distributions</u>. Reorganized BSA shall not be required to make any Distribution of Cash less than twenty dollars ($20) to any holder of an Allowed Claim; <u>provided</u>, <u>however</u>, that if any Distribution is not made pursuant to this <u>Article VII.K</u>, such Distribution shall be added to any subsequent Distribution to be made on behalf of the holder's Allowed Claim.

L.    Postpetition Interest.  Except as provided in the Cash Collateral Order or in the following sentence, interest shall not accrue on Impaired Claims; no holder of an Impaired Claim shall be entitled to interest accruing on or after the Petition Date on any such Impaired Claim, and interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Petition Date to the date a Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.  Notwithstanding the foregoing, each holder of an Allowed General Unsecured Claim shall accrue interest on the Allowed amount of such Claim at the federal judgment rate applicable on the Effective Date; provided, that such interest shall be payable to each such holder only from the Core Value Cash Pool and only to the extent that the Core Value Cash Pool shall have been sufficient: (1) first, to satisfy the full amount of all Allowed General Unsecured Claims; and (2) second, on account of any Allowed Non-Abuse Litigation Claims that shall not have elected to be treated as an Allowed Convenience Claim under Article III.B.9, to satisfy any deficiency in payments of such Allowed Claims (a) from available insurance coverage, including Abuse Insurance Policies and Non-Abuse Insurance Policies, (b) from applicable proceeds of any Insurance Settlement Agreements, and (c) from co-liable non-debtors (if any) or their insurance coverage.  Neither the Debtors nor Reorganized BSA shall have any independent obligation to pay interest for or on account of any Allowed General Unsecured Claims other than from the Core Value Cash Pool in accordance with the terms of this Article VII.L.

M.    Setoffs.  The Debtors and Reorganized BSA may, pursuant to the applicable provisions of the Bankruptcy Code, or applicable non-bankruptcy law, set off against any applicable Allowed Claim (before any Distribution is made on account of such Claim) any and all claims, rights, Causes of Action, debts or liabilities of any nature that the Debtors or Reorganized BSA may hold against the holder of such Allowed Claim; provided, however, that the failure to effect such a setoff shall not constitute a waiver or release of any such claims, rights, Causes of Action, debts or liabilities.

N.    Claims Paid or Payable by Third Parties.

1.    Claims Paid by Third Parties.  A Claim shall be reduced in full, and such Claim shall be Disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized BSA.  To the extent a holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor or Reorganized BSA on account of such Claim, such holder shall repay, return, or deliver any Distribution held by or transferred to such holder to Reorganized BSA to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan.

2.    Non-Abuse Litigation Claims Payable from Insurance.  Subject to Article IV.D.3, no Distributions under the Plan shall be made on account of any Allowed Non-Abuse Litigation Claim that is payable pursuant to an Insurance Policy until the holder of such Allowed Non-Abuse Litigation Claim has exhausted all remedies with respect to such insurance policy, including pursuing such insurance through litigation and obtaining entry of a final, non-appealable order.  To the extent that one or more of the Insurance Companies satisfies in full or

in part an Allowed Non-Abuse Litigation Claim, then immediately upon such satisfaction, the portion of the Claim so satisfied may be expunged from the Claims Register by the Notice and Claims Agent without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

O.    <u>Compliance with Tax Requirements and Allocations</u>.

1.    In connection with the Plan and all Distributions hereunder, the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any federal, state or local taxing authority, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions including tax certification forms, or establishing any other mechanisms it believes are reasonable and appropriate.

2.    For tax purposes, Distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claim.

## ARTICLE VIII.

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.    <u>Applicability</u>.  All Disputed Claims against the Debtors, other than Administrative Expense Claims, shall be subject to the provisions of this <u>Article VIII</u>.  All Administrative Expense Claims shall be determined and, if Allowed, paid in accordance with <u>Article II</u>.  None of the terms or provision of this <u>Article VIII</u> shall apply to Abuse Claims, which shall be exclusively processed, liquidated and paid by the Settlement Trust in accordance with the Settlement Trust Documents.

B.    <u>Allowance of Claims</u>.  After the Effective Date, Reorganized BSA shall have and retain any and all rights and defenses that the Debtors, or either of them, had with respect to any Claim immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim becomes Allowed by Final Order of the Bankruptcy Court or by agreement between the Debtors or Reorganized BSA, on the one hand, and the holder of such Claim, on the other.

C.    <u>Claims Administration Responsibilities</u>.

1.    Except as otherwise expressly provided in the Plan, from and after the Effective Date, Reorganized BSA shall have the authority (a) to file, withdraw, or litigate to judgment objections to Claims; (b) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and

(c) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

2.      Reorganized BSA shall consult with the Creditor Representative in connection with the reconciliation, settlement and administration of Convenience Claims, General Unsecured Claims and Non-Abuse Litigation Claims and shall use commercially reasonable efforts to resolve such Claims before the applicable Claims Objection Deadline.

D.      Estimation of Claims.  The Debtors (before the Effective Date) or Reorganized BSA (on and after the Effective Date) may at any time request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim against any Person.  If the estimated amount of a Claim constitutes a maximum limitation on such Claim, the Debtors (before the Effective Date) or Reorganized BSA (on and after the Effective Date) may elect to pursue any supplemental proceedings to object to any ultimate Distribution on such Claim.  All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, objected to, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

E.      No Distributions Pending Allowance.  No Distributions or other consideration shall be paid with respect to any Claim that is a Disputed Claim unless and until all objections to such Disputed Claim are resolved and such Disputed Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court or agreement between the Debtors or Reorganized BSA, on the one hand, and the holder of such Claim, on the other.

F.      Distributions after Allowance.  To the extent that a Disputed Claim (or a portion thereof) becomes an Allowed Claim, Distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.

G.      Disputed Claims Reserve.  The provisions of this Article VIII.G apply only to the extent that any General Unsecured Claims remain Disputed as of any Distribution Date.

1.      If any General Unsecured Claims remain Disputed as of any Distribution Date, the undistributed portion of the Core Value Cash Pool shall be held in a segregated account.  Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, or the receipt of a determination from the IRS, the Disbursing Agent shall treat the Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 and, to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  All parties

(including the Debtors, Reorganized BSA, the Disbursing Agent, and holders of General Unsecured Claims) shall be required to report for tax purposes in a manner consistent with the foregoing.  The Disputed Claims Reserve shall be responsible for payment, out of the assets of the Disputed Claims Reserve, of any taxes imposed on the Disputed Claims Reserve or its assets.

2.      The Debtors or Reorganized BSA, as applicable, with the consent of the Creditor Representative, shall determine the amount of the Disputed Claims Reserve, if applicable, as of the initial Distribution Date, based on the least of: (a) the asserted amount of the Disputed General Unsecured Claims in the applicable Proofs of Claim; (b) the amount, if any, estimated by the Bankruptcy Court pursuant to (i) section 502(c) of the Bankruptcy Code or (ii) Article VIII.D if, after the Effective Date, a motion is filed by Reorganized BSA to estimate such Claim; (c) the amount otherwise agreed to by the Debtors (or Reorganized BSA, if after the Effective Date) and the holders of such Disputed General Unsecured Claims; or (d) any amount otherwise approved by the Bankruptcy Court.  Upon each Distribution Date, Reorganized BSA shall deposit into the Disputed Claims Reserve an amount of Cash equal to the amount sufficient to make the Distributions to which holders of Disputed General Unsecured Claims would be entitled under the Plan as of the applicable Distribution Date if the Disputed General Unsecured Claims were Allowed Claims as of such date.

3.      If a Disputed General Unsecured Claim becomes an Allowed Claim after the first Distribution Date, the Disbursing Agent shall, on the next Distribution Date after the Disputed General Unsecured Claim becomes an Allowed Claim (or, if the Disputed General Unsecured Claim becomes an Allowed Claim after the final Distribution Date, as soon as practicable after Allowance), Distribute to the holder of such Claim, exclusively from the Disputed Claims Reserve, the amount of Cash that such holder would have received in that Distribution and all prior Distributions (if any) if such holder's General Unsecured Claim had been Allowed as of the Effective Date, net of any allocable taxes imposed thereon or otherwise payable by the Disputed Claims Reserve.

4.      If a Disputed Claim is Disallowed, in whole or in part, then on the Distribution Date next following the date of Disallowance, Cash shall be released from the Disputed Claims Reserve and placed in the Core Value Cash Pool, which Cash shall then be unreserved and unrestricted, and which shall be available for Distribution to holders of Allowed General Unsecured Claims.

5.      If any assets remain in the Disputed Claims Reserve after all Disputed General Unsecured Claims have been resolved, such assets shall be placed in the Core Value Cash Pool and distributed Pro Rata to all holders of Allowed General Unsecured Claims on the next Distribution Date (or, if all Disputed General Unsecured Claims are resolved after the final Distribution Date, as soon as practicable thereafter).

H.      Adjustment to Claims Register without Objection.  Any duplicate Proof of Claim that has been paid or satisfied, or any Proof of Claim that is clearly marked as amended or superseded by a subsequently filed Proof of Claim that remains on the Claims Register, may be adjusted or expunged on the Claims Register by the Notice and Claims Agent at the direction of

Reorganized BSA upon stipulation between the parties in interest without an objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

I.      Time to File Objections to Claims.  Any objections to Claims must be filed on or before the applicable Claims Objection Deadline, as such deadline may be extended from time to time.  The expiration of the Claims Objection Deadline shall not limit or affect the Debtors' or Reorganized BSA's rights to dispute Claims asserted in the ordinary course of the Debtors or Reorganized BSA's non-profit operations other than through a Proof of Claim.

J.      Treatment of Untimely Claims.  Except as provided herein or otherwise agreed, any and all creditors that have filed Proofs of Claim after the applicable Bar Date shall not be treated as a creditor with respect to such Claim for the purposes of voting and distribution.

## ARTICLE IX.

## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE

A.      Conditions Precedent to Confirmation of the Plan.

Confirmation of the Plan shall not occur unless each of the following conditions precedent has been satisfied or waived in accordance with Article IX.C.

1.      The Bankruptcy Court shall have entered the Disclosure Statement Order, in form and substance reasonably acceptable to the Debtors, the Ad Hoc Committee, the Coalition, the Future Claimants' Representative, Hartford, the Creditors' Committee and JPM.

2.      The Debtors, the Ad Hoc Committee, the Coalition, the Future Claimants' Representative and Hartford shall have approved of or accepted the Confirmation Order, and the Creditors' Committee and JPM shall have approved of or accepted the Confirmation Order in accordance with their respective consent rights under the JPM / Creditors' Committee Term Sheet incorporated by reference in Article I.D;

3.      The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order and any other order in conjunction therewith, in form and substance acceptable to the Debtors, in accordance with the requirements of the JPM / Creditors' Committee Term Sheet.[3]  These findings and determinations are designed, among other things, to ensure that the

---

[3]    The findings and determinations set forth in Article IX.A.3.j, Article IX.A.3.r, Article IX.A.3.s, Article IX.A.3.t, and Article IX.A.3.t shall not be binding on Hartford to the extent that Hartford is a Settling Insurance Company and the transactions contemplated in the Hartford Insurance Settlement Agreement, including the release of the Hartford Settlement Contribution to the Settlement Trust, are fully consummated.  Hartford's agreement in the Hartford Insurance Settlement Agreement not to object to entry of such findings and determinations in the Confirmation Order does not indicate Hartford's support for such findings and determinations, and no party shall argue that Hartford agreed to or acquiesced in such findings and determinations in any proceeding.  Rather, Hartford is designated as a Settling Insurance Company and Protected Party under the Plan, and as a result, Hartford takes no position on such findings and determinations or on the Trust Distribution Procedures.

Injunctions, Releases and Discharges set forth in <u>Article X</u> shall be effective, binding and enforceable and shall, among other things, provide that:

a.    the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan be proposed in good faith and that the Confirmation Order not be procured by fraud;

b.    the Channeling Injunction and the Insurance Entity Injunction are to be implemented in connection with the Settlement Trust and shall be in full force and effect on the Effective Date;

c.    upon the Effective Date, the Settlement Trust shall assume the liabilities of the Protected Parties with respect to Abuse Claims and the liabilities of the Limited Protected Parties with respect to Post-1975 Chartered Organization Abuse Claims and have exclusive authority as of the Effective Date to satisfy or defend such Abuse Claims;

d.    the Settlement Trust will be funded with the Settlement Trust Assets;

e.    the Settlement Trust will use the Settlement Trust Assets to resolve Abuse Claims;

f.    the terms of the Discharge Injunction, the Channeling Injunction, the Release Injunctions, and the Insurance Entity Injunction, including any provisions barring actions against third parties, are set out in conspicuous language in the Plan and in the Disclosure Statement;

g.    the Future Claimants' Representative was appointed by the Bankruptcy Court as part of the proceedings leading to the issuance of the Channeling Injunction and the Insurance Entity Injunction for the purpose of, among other things, protecting the rights of persons who might subsequently assert Abuse Claims of the kind that are addressed in the Channeling Injunction and the Insurance Entity Injunction, which will be transferred to and assumed by the Settlement Trust;

h.    the Plan complies with section 105(a) of the Bankruptcy Code to the extent applicable;

i.    the Injunctions are essential to the Plan and the Debtors' reorganization efforts;

j.    the Insurance Assignment is authorized as provided in the Plan, notwithstanding any terms of any policies or provisions of non-bankruptcy law that is argued to prohibit the delegation, assignment, or other transfer of such rights, and the Settlement Trust (i) is a proper defendant for Abuse Claims to assert the liability of the Protected Parties to trigger such insurance rights and

(ii) is a proper defendant for Post-1975 Chartered Organization Abuse Claims to assert the liability of the Limited Protected Parties to trigger such insurance rights;

k.    the Insurance Settlement Agreements are approved, and any Insurance Company that has contributed funds, proceeds or other consideration to or for the benefit of the Settlement Trust pursuant to an Insurance Settlement Agreement is designated as a Settling Insurance Company;

l.    the Abuse Claims Settlement represents a sound exercise of the Debtors' business judgment, is in the best interest of the Debtors' Estates, complies with section 1123 of the Bankruptcy Code, and is approved pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019;

m.    the JPM / Creditors' Committee Settlement represents a sound exercise of the Debtors' business judgment, is in the best interest of the Debtors' Estates, complies with section 1123 of the Bankruptcy Code, and is approved pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019;

n.    the Settlement of Restricted and Core Asset Disputes represents a sound exercise of the Debtors' business judgment, is in the best interest of the Debtors' estates, complies with section 1123 of the Bankruptcy Code, and is approved pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019;

o.    the Hartford Insurance Settlement, including the sale of the Hartford Policies free and clear of all Interests of any Person or Entity (as such terms are defined in the Hartford Insurance Settlement Agreement) and the Allowance of the Hartford Administrative Expense Claim is approved in accordance with sections 363, 503(b), 507(a)(2), 1123 and 1141 of the Bankruptcy Code, Bankruptcy Rule 9019, and the findings of fact and conclusions of law made by the Bankruptcy Court pursuant to <u>Article V.S.4</u>;

p.    the TCJC Settlement is approved in accordance with the findings of fact and conclusions of law made by the Bankruptcy Court pursuant to <u>Article V.S.5</u>.

q.    the Plan, the Plan Documents, and the Confirmation Order shall be binding on all parties in interest;

r.    (i) the procedures included in the Trust Distribution Procedures pertaining to the allowance of Abuse Claims and (ii) the criteria included in the Trust Distribution Procedures pertaining to the calculation of the Allowed Claim Amounts, including the Trust Distribution Procedures' Claims Matrix, Base Matrix Values, Maximum Matrix Values, and Scaling Factors (each as defined in the Trust Distribution Procedures), are fair and reasonable based on the evidentiary record offered to the Bankruptcy Court;

s.    the right to payment that the holder of an Abuse Claim has against the Debtors or another Protected Party or a Limited Protected Party is the allowed value of such Abuse Claim as liquidated in accordance with the Trust Distribution Procedures and is not (i) the initial or supplemental payment percentages established under the Trust Distribution Procedures to make distributions to holders of allowed Abuse Claims or (ii) the contributions made by the Debtors or any Protected Party to the Settlement Trust; and

t.    the Plan and the Trust Distribution Procedures were proposed in good faith and are sufficient to satisfy the requirements of section 1129(a)(3) of the Bankruptcy Code.

B.    <u>Conditions Precedent to the Effective Date</u>.

Notwithstanding any other provision of the Plan or the Confirmation Order, the Effective Date shall occur on the first Business Day on which each of the following conditions precedent has been satisfied or waived pursuant to <u>Article IX.C</u>:

1.    (a) the Confirmation Order shall have been submitted to the District Court for affirmation; (b) the District Court shall have entered the Affirmation Order in form and substance acceptable to (i) the Debtors, the Ad Hoc Committee, the Coalition, the Future Claimants' Representative and Hartford and (ii) the Creditors' Committee and JPM, consistent with the JPM / Creditors' Committee Term Sheet; (c) at least fifteen (15) days shall have passed following entry of the Confirmation Order and the Affirmation Order; (d) no court shall have entered an order staying the occurrence of the Effective Date pending an appeal of the Confirmation Order or the Affirmation Order; and (e) no request for a stay of the occurrence of the Effective Date shall be pending;

2.    the Settlement Trust Assets shall, simultaneously with the occurrence of the Effective Date or as otherwise provided herein, be transferred to, vested in, and assumed by the Settlement Trust in accordance with <u>Article IV</u> and <u>Article V</u>;

3.    the Settlement Trust Documents and other applicable Plan Documents necessary or appropriate to implement the Plan shall have been executed, delivered and, if applicable, filed with the appropriate governmental authorities in compliance with the JPM / Creditors' Committee Term Sheet;

4.    the Restated Debt and Security Documents shall have been duly executed and delivered by all of the Entities that are parties thereto and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the effectiveness thereof shall have been satisfied or duly waived in writing in accordance with the terms of the Restated Debt and Security Documents, the closing shall have occurred thereunder, and Reorganized BSA shall have paid the JPM Exit Fee to JPM;

5.    the Foundation Loan Agreement and any applicable collateral and other loan documents governing the Foundation Loan shall have been duly executed and delivered by all of the Entities that are parties thereto and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the effectiveness

thereof shall have been satisfied or duly waived in writing in accordance with the terms of the Foundation Loan Agreement and related documentation, and the closing shall have occurred thereunder;

6.      the Debtors shall have adequately funded the Professional Fee Reserve so as to permit the Debtors to make Distributions on account of Allowed Professional Fee Claims in accordance with Article II;

7.      the Debtors shall have obtained all authorizations, consents, certifications, approvals, rulings, opinions or other documents that are necessary to implement and effectuate the Plan;

8.      all payments required to be made pursuant to the terms of the Cash Collateral Order shall have been paid;

9.      all actions, documents, and agreements necessary to implement and effectuate the Plan shall have been effected or executed;

10.      the transactions to be implemented on the Effective Date shall be materially consistent with the Plan Documents and the JPM / Creditors' Committee Term Sheet; and

11.      the Debtors shall have filed a notice of occurrence of the Effective Date.

C.      Waiver of Conditions Precedent.  To the fullest extent permitted by law, each of the conditions precedent in this Article IX may be waived or modified, in whole or in part, in the sole discretion of the Debtors; provided, however, that (1) the Creditors' Committee's consent (not to be unreasonably withheld) is required to the extent any such waiver or modification by the Debtors impacts the treatment of General Unsecured Claims, Non-Abuse Litigation Claims, or Convenience Claims; (2) the conditions precedent set forth in Article IX.B.4 and Article IX.B.8 may be waived or modified by the Debtors only with the prior written consent of JPM; (3) the condition precedent set forth in Article IX.A.3.o may be waived or modified by the Debtors only with the prior written consent of Hartford; (4) the condition precedent set forth in Article IX.A.3.p may be waived or modified by the Debtors only with the prior written consent of TCJC; (5) for Article IX.A.3.j, Article IX.A.3.p, Article IX.A.3.r, Article IX.A.3.s, Article IX.A.3.t, and any waiver or modification that impacts the treatment of Abuse Claims, the prior written consent of the Coalition and the Future Claimants' Representative shall be required as a condition to waiver or modification by the Debtors; and (6) the conditions precedent in Article IX.B.1 and Article IX.B.6 may be waived or modified by the Debtors only with the prior written consent of the Ad Hoc Committee, the Coalition and the Future Claimants' Representative.  Any waiver or modification of a condition precedent under this Article IX may be effectuated at any time, without notice, without leave or order of the Bankruptcy Court or the District Court, and without any other formal action other than proceedings to Confirm or consummate the Plan.  The failure to satisfy or waive any condition precedent to the Effective Date may be asserted by the Ad Hoc Committee, the Coalition, the Future Claimants' Representative, Hartford, the Creditors' Committee or JPM regardless of the circumstances giving rise to the failure of such condition to be satisfied or waived.

D.    <u>Substantial Consummation of the Plan</u>.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

E.    <u>*Vacatur* of Confirmation Order; Non-Occurrence of Effective Date</u>.    If the Confirmation Order is vacated or the Effective Date does not occur within 180 days after entry of the Confirmation Order (subject to extension by the Debtors in their sole discretion), the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall (1) constitute a waiver or release of any Causes of Action by or Claims against or Interests in the Debtors or any Person; (2) prejudice in any manner the rights of the Debtors, any holders of a Claim or Interest or any other Person; (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders of a Claim or Interest, or any other Person in any respect; or (4) be used by the Debtors or any other Person as evidence (or in any other way) in any litigation, including with respect to the strengths and weaknesses of positions, arguments or claims of any of the parties to such litigation.

## ARTICLE X.

## EFFECT OF PLAN CONFIRMATION

A.    <u>Vesting of Assets in Reorganized BSA</u>.  Except as otherwise expressly provided in the Plan (including with respect to the Core Value Cash Pool and the Restated Debt and Security Documents), on the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, all property comprising the Estates shall vest in Reorganized BSA free and clear of all Liens, Claims, interests, charges, other Encumbrances and liabilities of any kind.  On and after the Effective Date, Reorganized BSA may continue its operations and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

B.    <u>Retention of Certain Causes of Action</u>.  In accordance with section 1123(b)(3) of the Bankruptcy Code, subject to the transfer of the Debtors' Settlement Trust Causes of Action to the Settlement Trust under <u>Article IV.D</u> and the Debtors' and their Estates' release of certain Estate Causes of Action under <u>Article X.J</u>, all Causes of Action that a Debtor may hold against any Person shall vest in Reorganized BSA on the Effective Date.  Thereafter, subject to <u>Article IV.D</u> and <u>Article X.J</u>, Reorganized BSA shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, whether arising before or after the Petition Date, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.  No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any specific Cause of Action as any indication that the Debtors or Reorganized BSA, as applicable, will not pursue any and all available Causes of Action.  The Debtors or Reorganized BSA, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim

preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to any Cause of Action upon, after, or as a consequence of Confirmation or the occurrence of the Effective Date.

C.    <u>Binding Effect</u>.  As of the Effective Date, all provisions of the Plan, including all agreements, instruments and other documents entered into in connection with the Plan by the Debtors or Reorganized BSA, the Settlement Trust, or the Protected Parties, shall be binding upon the Debtors, the Estates, Reorganized BSA, all holders of Claims against and Interests in the Debtors, each such holder's respective successors and assigns, and all other Persons that are affected in any manner by the Plan, regardless of whether the Claim or Interest of such holder is Impaired under the Plan or whether such holder has accepted the Plan.  Except as otherwise expressly provided in the Plan, all agreements, instruments and other documents filed in connection with the Plan shall be given full force and effect and shall bind all Persons referred to therein on and after the Effective Date, whether or not such agreements are actually issued, delivered or recorded on or after the Effective Date and whether or not such Persons have actually executed such agreement.

D.    <u>Pre-Confirmation Injunctions and Stays</u>.  All injunctions and stays arising under or entered during the Chapter 11 Cases, whether under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay, if any.  The injunctions and stays referenced in this <u>Article X.D</u> includes the preliminary injunction imposed by the *Consent Order Pursuant to 11 U.S.C. §§ 105(a) and 362 Granting the BSA's Motion for a Preliminary Injunction* entered by the Bankruptcy Court on March 30, 2020 (Adv. Pro. No. 20-50527, Docket No. 54), as extended by the Bankruptcy Court from time to time.

E.    <u>Discharge</u>.

1.    <u>Discharge of the Debtors</u>.  Except as expressly provided in the Plan or the Confirmation Order, the treatment of Claims under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, termination and release of, all Claims and Interests of any nature whatsoever against or in the Debtors or any of their assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, and, as of the Effective Date, each of the Debtors shall be deemed discharged and released, and each holder of a Claim or Interest and any successor, assign, and affiliate of such holder shall be deemed to have forever waived, discharged and released each of the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights and liabilities, and all debts of the kind specified in section 502 of the Bankruptcy Code, based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, in each case whether or not (a) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (c) a Claim based upon such debt is or has been Disallowed by order of the Bankruptcy Court, or (d) the holder of a Claim based upon such debt is deemed to have accepted the Plan.  Notwithstanding the foregoing, nothing in this <u>Article X.E</u> shall be construed to modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-

Abuse Litigation Claim to recover on account of such Allowed Claim in accordance with <u>Article III.B.9</u> and <u>Article IV.D.3</u>.

2.      <u>Discharge Injunction</u>.   From and after the Effective Date, except as expressly provided in the Plan or the Confirmation Order, all holders of Claims or Interests of any nature whatsoever against or in the Debtors or any of their assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are discharged pursuant to the terms of the Plan shall be precluded and permanently enjoined from taking any of the following actions on account of, or on the basis of, such discharged Claims and Interests: (a) commencing or continuing any action or other proceeding of any kind against the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property; (b) enforcing, attaching, collecting, or recovering by any manner or means of judgment, award, decree or other against the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property; (c) creating, perfecting or enforcing any Lien or Encumbrance of any kind against the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property; or (d) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. The foregoing injunction shall extend to the successors and assigns of the Debtors (including Reorganized BSA) and its and their respective properties and interests in property.  In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge or termination of all Claims, Interests and other debts and liabilities against or in the Debtors pursuant to sections 105, 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time to the extent such judgment relates to a discharged Claim or Interest.

F.      **<u>Channeling Injunction</u>.**

1.      **<u>Terms</u>. Notwithstanding anything to the contrary herein, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Abuse Claims Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, and to supplement, where necessary, the injunctive effect of the Discharge as provided in sections 1141 and 524 of the Bankruptcy Code and as described in this <u>Article X</u>, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court and the District Court under section 105(a) of the Bankruptcy Code, (a) the sole recourse of any holder of an Abuse Claim against a Protected Party on account of such Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Protected Party or any property or interest in property of any Protected Party, and (b) the sole recourse of any holder of a Post-1975 Chartered Organization Abuse Claim against a Limited Protected Party on account of such Post-1975 Chartered Organization Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Post-1975 Chartered Organization Abuse Claim against any**

Limited Protected Party or any property or interest in property of any Limited Protected Party; accordingly, on and after the Effective Date, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Abuse Claim against the Protected Parties, or any of them, or any Post-1975 Chartered Organization Abuse Claim against the Limited Protected Parties, or any of them, shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Protected Party with respect to any such Abuse Claim or from any Limited Protected Party with respect to any such Post-1975 Chartered Organization Abuse Claim, other than from the Settlement Trust pursuant to the Settlement Trust Documents, including:

a.      commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

b.      enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

c.      creating, perfecting, or otherwise enforcing in any manner, whether directly or indirectly, any Encumbrance of any kind against any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

d.      asserting, implementing or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party; or

e.      taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Abuse Claim or Post-1975 Chartered Organization Abuse Claim.

2.    **Reservations**.    Notwithstanding anything to the contrary in this **Article X.F**, the Channeling Injunction shall not enjoin:

a.    **the rights of holders of Abuse Claims or Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims solely against the Settlement Trust in accordance with the Trust Distribution Procedures, including the ability to pursue the Settlement Trust in the tort system as described in Article XII of the Trust Distribution Procedures;**

b.    **the rights of holders of Abuse Claims to assert such Abuse Claims against anyone other than a Protected Party or, in the case of Post-1975 Chartered Organization Abuse Claims, against anyone other than a Limited Protected Party;**

c.    **prior to the date that an Entity (other than an Insurance Company) becomes a Protected Party under Article IV.I, the right of holders of Abuse Claims to assert such Abuse Claims against such Entity;**

d.    **prior to the date that a Chartered Organization becomes a Limited Protected Party under Article IV.J, the right of holders of Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims against such Entity;**

e.    **the rights of holders of Abuse Claims that are not Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims against any Limited Protected Party (unless such Limited Protected Party becomes a Protected Party under Article IV.I);**

f.    **the right of any Person to assert any Claim, debt, obligation or liability for payment of Settlement Trust Expenses solely against the Settlement Trust in accordance with the Settlement Trust Documents;**

g.    **the Settlement Trust from enforcing its rights under the Plan and the Settlement Trust Documents; or**

h.    **the rights of the Settlement Trust to prosecute any action against any Non-Settling Insurance Company based on or arising from Abuse Insurance Policies that are not the subject of an Insurance Settlement Agreement, subject to any Insurance Coverage Defenses.**

G.    Provisions Relating to Channeling Injunction.

1.    Modifications.    Subject to post-Effective Date settlements between the Settlement Trustee and Chartered Organizations or Insurance Companies under the applicable provisions of Article IV, there can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.

2.     Non-Limitation.  Nothing in the Plan or the Settlement Trust Documents shall or shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction or the Settlement Trust's assumption of all liability with respect to Abuse Claims.

3.     Bankruptcy Rule 3016 Compliance.  The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute or be deemed to constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

4.     Enforcement.  Any Protected Party or Limited Protected Party may enforce the Channeling Injunction as a defense to any Claim brought against such Protected Party or Limited Protected Party that is enjoined under the Plan as to such Protected Party or Limited Protected Party and may seek to enforce such injunction in a court of competent jurisdiction.

5.     Contribution Claims.  If a Non-Settling Insurance Company asserts that it has rights, whether legal, equitable, contractual, or otherwise, of contribution, indemnity, reimbursement, subrogation or other similar claims directly or indirectly arising out of or in any way relating to such Non-Settling Insurance Company's payment of loss on behalf of one or more of the Debtors in connection with any Abuse Claim against a Settling Insurance Company (collectively, "Contribution Claims"), (a) such Contribution Claims may be asserted as a defense or counterclaim against the Settlement Trust in any Insurance Action involving such Non-Settling Insurance Company, and the Settlement Trust may assert the legal or equitable rights (if any) of the Settling Insurance Company, and (b) to the extent such Contribution Claims are determined to be valid, the liability (if any) of such Non-Settling Insurance Company to the Settlement Trust shall be reduced by the amount of such Contribution Claims.

6.     No Duplicative Recovery.  In no event shall any holder of an Abuse Claim or a Post-1975 Chartered Organization Abuse Claim be entitled to receive any duplicative payment, reimbursement, or restitution from any Protected Party or Limited Protected Party under any theory of liability for the same loss, damage, or other Claim that is reimbursed by the Settlement Trust or is otherwise based on the same events, facts, matters, or circumstances that gave rise to the applicable Abuse Claim or Post-1975 Chartered Organization Abuse Claim.

7.     District Court Approval.  The Debtors shall seek entry of the Affirmation Order, which shall approve (a) the Channeling Injunction and the Settlement Trust's assumption of all liability with respect to Abuse Claims and (b) the releases by holders of Abuse Claims for the benefit of the Protected Parties and the Limited Protected Parties, each as set forth in this Article X.

H.     **Insurance Entity Injunction**.

1.     **Purpose.     To facilitate the Insurance Assignment, protect the Settlement Trust, and preserve the Settlement Trust Assets, pursuant to the**

equitable jurisdiction and power of the Bankruptcy Court and the District Court under section 105(a) of the Bankruptcy Code, the Bankruptcy Court shall issue the injunction set forth in this **Article X.H** (the "**Insurance Entity Injunction**"); **provided**, **however**, that the Insurance Entity Injunction is not issued for the benefit of any Insurance Company, and no Insurance Company is a third-party beneficiary of the Insurance Entity Injunction, except as otherwise specifically provided in any Insurance Settlement Agreement.

2.      **Terms Regarding Claims against Insurance Companies**.    Subject to the terms of **Article X.E** and **Article X.F**, and except for any Chartered Organization that is not a Participating Chartered Organization or a Contributing Chartered Organization, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any claim or cause of action (including any Abuse Claim or any claim for or respecting any Settlement Trust Expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Abuse Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such claim or cause of action, including:

a.      commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such claim, demand, or cause of action against any Insurance Company);

b.      enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such claim or cause of action;

c.      creating, perfecting, or enforcing in any manner, directly or indirectly, any Lien or Encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such claim or cause of action; and

d.      except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any

106

Insurance Company, or against the property of any Insurance Company, with respect to any such claim or cause of action;

provided, however, that: (i) the injunction set forth in this Article X.H shall not impair in any way any (a) actions brought by the Settlement Trust against any Non-Settling Insurance Company, (b) actions brought by Local Councils in connection with any Local Council Reserved Rights, (c) actions brought by holders of Non-Abuse Litigation Claims consistent with Article IV.D.3, (d) the rights, if any, of any Chartered Organization that is not a Participating Chartered Organization under any Chartered Organization Reserved Policy, or (e) the rights of any co-insured of the Debtors (x) under any Non-Abuse Insurance Policy and (y) as specified under any Final Order of the Bankruptcy Court approving an Insurance Settlement Agreement; and (ii) the Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction set forth in this Article X.H with respect to any Non-Settling Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Non-Settling Insurance Company, except that the Settlement Trust shall not have any authority to terminate, reduce or limit the scope of the injunction herein with respect to any Settling Insurance Company so long as, but only to the extent that, such Settling Insurance Company complies fully with its obligations under any applicable Insurance Settlement Agreement.

3.    Reservations.    Notwithstanding anything to the contrary in this Article X.H, the Insurance Entity Injunction shall not enjoin:

a.    the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of holders of Abuse Claims to assert such Claims, as applicable, in accordance with the Trust Distribution Procedures, and the rights of holders of Non-Abuse Litigation Claims to assert such Claims, as applicable in accordance with Article IV.D.3;

b.    the rights of any Person to assert any claim, debt, obligation, cause of action or liability for payment of Settlement Trust Expenses against the Settlement Trust;

c.    the rights of the Settlement Trust to prosecute any action based on or arising from Abuse Insurance Policies;

d.    the rights of any Person to assert or prosecute (i) an Abuse Claim against any Entity other than a Protected Party, or (ii) a Post-1975 Chartered Organization Abuse Claim against any Entity other than a Limited Protected Party;

e.    the rights of the Settlement Trust to assert any claim, debt, obligation, cause of action or liability for payment against an Insurance Company based on or arising from the Abuse Insurance Policies; or

f.      the rights of any Insurance Company to assert any claim, debt, obligation, cause of action or liability for payment against any Non-Settling Insurance Company.

I.      **Injunction against Interference with Plan**.  Upon entry of the Confirmation Order, all holders of Claims and Interests shall be precluded and enjoined from taking any actions to interfere with the implementation and consummation of the Plan.

J.      **Releases**.

1.      **Releases by the Debtors and the Estates**.

a.      **Releases by the Debtors and the Estates of the Released Parties**.  As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the Abuse Claims Settlement, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan,

the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in this <u>Article X.J.1</u> shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

b.    **<u>Releases by the Debtors and the Estates of Certain Avoidance Actions.</u>**  As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of Creditors' Committee and its members in their respective capacities as such in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Abuse Litigation Claims, and Convenience Claims of and from any and all Avoidance Actions.

2.    **<u>Releases by the Debtors and the Estates of the Local Councils, the Contributing Chartered Organizations, and the Participating Chartered Organizations</u>**.  In furtherance of the Abuse Claims Settlement, on the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, on their own behalf and as representatives of their respective Estates, and Reorganized BSA, are deemed to irrevocably and unconditionally, fully, finally, and forever waive, release, acquit, and discharge each and all of the Local Councils, the Contributing Chartered Organizations and the Participating Chartered Organizations of and from any and all claims, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, executions and demands whatsoever, of whatever kind or nature (including those arising under the Bankruptcy Code), whether known or unknown, suspected or unsuspected, in law or in equity, which the Debtors, their Estates, or Reorganized BSA have, had, may have, or may claim to have: (a) against any of the Local Councils and Contributing Chartered Organizations with respect to any Abuse Claims and (b) against any of the Participating Chartered Organizations with respect to any Post-1975 Chartered Organization Abuse Claims (collectively, the "<u>Scouting Released Claims</u>").

3.    **<u>Releases by Holders of Abuse Claims</u>**.  As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby

confirmed, including the service of the Protected Parties and the Limited Protected Parties to facilitate and implement the reorganization of the Debtors, including the settlements embodied in the Plan, including the Abuse Claims Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all holders of Abuse Claims shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release: (a) each and all of the Protected Parties and their respective property and successors and assigns of and from all Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Abuse Claims; and (b) each and all of the Limited Protected Parties and their respective property and successors and assigns of and from all Post-1975 Chartered Organization Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Post-1975 Chartered Organization Abuse Claims; provided, however, that the releases set forth in this Article X.J.3 shall not, and shall not be construed to: (i) release any Protected Party or Limited Protected Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (ii) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (iii) modify, reduce, impair or otherwise affect the ability of any holder of an Abuse Claim to recover on account of such Claim in accordance with Article III.B.10 or Article III.B.11, as applicable.

4.    Releases by Holders of Claims.  As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including

any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in this **Article X.J.4** shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Abuse Litigation Claim to recover on account of such Allowed Claim in accordance with **Article III.B.9.**  Notwithstanding the foregoing or anything to the contrary herein, (i) with respect to holders of Allowed General Unsecured Claims or Allowed Non-Abuse Litigation Claims, nothing in the Plan or the release set forth in **Article X.J.4** shall, or shall be construed to, release any claims or Causes of Action against any Local Council, Chartered Organization, or Non-Settling Insurance Company (subject to **Article IV.D.3**) and (ii) nothing in the Plan or the release set forth in **Article X.J.4** shall, or shall be construed to, release any claims or Causes of Action asserted by Century Indemnity Company against Sidley Austin LLP ("Sidley") related to Sidley's representation of the Debtors prior to the Petition Date.

5.    **Releases Among Contributing Chartered Organizations and Settlement Parties.**

a.    **In furtherance of the Abuse Claims Settlement, as of the date that the Confirmation Order and Affirmation Order become Final Orders, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Confirmation Order, and the terms of the TCJC Settlement Agreement, for good and valuable consideration, the adequacy of**

which is hereby confirmed, each of the Contributing Chartered Organizations, including TCJC, shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge the Debtors, Reorganized BSA, the Related Non-Debtor Entities, the Local Councils, the other Protected Parties, the Limited Protected Parties, the Settling Insurance Companies, including Hartford, the Future Claimants' Representative, the Coalition, the Settlement Trust, and each of its and their respective Representatives (collectively, the "<u>Settlement Parties</u>"), of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the date that the Confirmation Order and Affirmation Order become Final Orders (including before the Petition Date) in connection with or related to (i) Abuse Claims, (ii) the Chapter 11 Cases, (iii) the Plan, or (iv) any Claims that were or could have been asserted by the Contributing Chartered Organizations against the Settlement Parties or any of them.

b.     In furtherance of the Abuse Claims Settlement, as of the date that the Confirmation Order and Affirmation Order become Final Orders, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Confirmation Order, and the terms of the TCJC Settlement Agreement, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Settlement Parties shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each of the Contributing Chartered Organizations, including TCJC, of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the date that the Confirmation Order and Affirmation Order become Final Orders (including before the Petition Date) in connection with or related to (i) Abuse Claims, (ii) the Chapter 11 Cases, (iii) the Plan, or (iv) any Claims that were or could have been asserted by the Settlement Parties against the Contributing Chartered Organizations or any of them.

6.     <u>Releases Relating to Settling Insurance Companies</u>.  The releases of Settling Insurance Companies and certain other parties as set forth in the Insurance

Settlement Agreements, including the Hartford Insurance Settlement Agreement, are incorporated by reference as if fully set forth herein.

K.    **Exculpation.**  From and after the Effective Date, none of the Exculpated Parties shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or before the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement Agreement, the TCJC Settlement Agreement, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence.  Notwithstanding the foregoing or any provision of the Plan to the contrary, Sidley shall not be an Exculpated Party with respect to any claims that Century Indemnity Company asserts against Sidley related to Sidley's representation of the Debtors prior to the Petition Date.

L.    **Injunctions Related to Releases and Exculpation**.

1.    **Injunction Related to Releases**.  As of the Effective Date, all holders of Claims that are the subject of **Article X.J are**, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum;  (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order;  (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** or released under **Article X.J**; **provided**, **however**, that the injunctions set forth in this **Article X.L.1** shall not, and shall not be construed to, enjoin any holder of a Claim that is the subject of **Article X.J** from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

2.    **Injunction Related to Exculpation**.  As of the Effective Date, all holders of Claims that are the subject of **Article X.K are**, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions

113

**against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under <u>Article X.E</u> or released under <u>Article X.J</u>; <u>provided</u>, <u>however</u>, that the injunctions set forth in this <u>Article X.L.2</u> shall not, and shall not be construed to, enjoin any Person that is the subject of <u>Article X.K</u> from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.**

M.    <u>Insurance Provisions</u>.

1.    Except for the Insurance Assignment, or as otherwise provided in the Bankruptcy Code, applicable law, the findings made by the Bankruptcy Court in the Confirmation Order, or the findings made by the District Court in the Affirmation Order, nothing in the Plan shall modify, amend, or supplement, or be interpreted as modifying, amending, or supplementing, the terms of any Insurance Policy or rights or obligations under an Insurance Policy to the extent such rights and obligations are otherwise available under applicable law, and the rights and obligations, if any, of any Non-Settling Insurance Company relating to or arising out of the Plan Documents, including the Plan, the Confirmation Order, and the Affirmation Order, or any provision thereof, shall be determined pursuant to the terms and provisions of the Insurance Policies and applicable law.

2.    No provision of the Plan, other than those provisions contained in the applicable Injunctions contained in <u>Article X</u> of the Plan, shall be interpreted to affect or limit the protections afforded to any Settling Insurance Company by the Channeling Injunction.

3.    Nothing in this <u>Article X.M</u> is intended or shall be construed to preclude otherwise applicable principles of *res judicata* or collateral estoppel from being applied against any Person.

N.    <u>Judgment Reduction</u>.

1.    Without limiting the Discharges, Releases and Injunctions set forth above, if any Person, including a holder of an Abuse Claim ("<u>Plaintiff</u>"), asserts a Cause of Action against any other Person arising from or relating to Abuse that is the subject of a proof of claim filed against the Debtors in the Chapter 11 Cases, regardless of whether such Cause of Action may be asserted pursuant to the Bankruptcy Code or is in the nature

of or sounding in contract, tort, warranty or any other theory of law or equity whatsoever (each such Cause of Action, an "Abuse Cause of Action"), and such Abuse Cause of Action results in a determination by the court or tribunal hearing the Abuse Cause of Action (including by a jury empaneled by such court or tribunal) that any Person who is not a Protected Party or a Limited Protected Party (each, a "Specified Person") is liable in damages to Plaintiff, then, prior to final entry of any judgment, order or arbitration award ("Judgment") in such Abuse Cause of Action, Plaintiff shall provide notice and a copy of the Confirmation Order to the Trial Court.  Such court or tribunal shall determine whether the Abuse Cause of Action gives rise to any Cause of Action on which any Protected Party or Limited Protected Party would have been liable to Plaintiff in the absence of the Plan and Confirmation Order.  The court or tribunal shall reduce any Judgment against a Specified Person by an amount equal to the "Judgment Reduction Amount," which shall equal the greatest amount such Specified Person would be entitled, under applicable non-bankruptcy law, to set off or credit against the Judgment if such Protected Party or Limited Protected Party were not entitled to the benefits of the Discharges, Releases, or Injunctions set forth herein.  For the avoidance of doubt, a Limited Protected Party may be a Specified Person entitled to the judgment reduction provided for in this Article X.N with respect to an Abuse Cause of Action arising from or relating to Abuse that is not the subject of a Post-1975 Chartered Organization Abuse Claim.

2.      Nothing herein shall prejudice or operate to preclude the right of any Specified Person to (a) provide notice of the Confirmation Order to any court or tribunal hearing an Abuse Cause of Action, (b) raise any issues, claims or defenses regarding the Judgment Reduction Amount, including the contractual liability and/or relative or comparative fault of any Person, including any Protected Party or Limited Protected Party, in any court or tribunal hearing any Abuse Cause of Action in accordance with applicable law or procedure, or (c) take discovery of Protected Parties or Limited Protected Parties in accordance with applicable law or procedure; provided, however, that nothing herein shall in any way modify or affect the Discharges, Releases or Injunctions. For the avoidance of doubt, nothing herein shall (i) be deemed to entitle a Plaintiff to more than a single satisfaction with respect to any Abuse Cause of Action or (ii) prejudice or operate to preclude the rights of any Specified Person to assert any claims or causes of action that have not been discharged, released, or enjoined under the Plan or Confirmation Order.

3.      Each Plaintiff is hereby enjoined and restrained from seeking relief or collecting judgments against any Specified Person in a manner that fails to conform to the terms of this Article X.N.

4.      If any Plaintiff enters into a settlement with any Person with respect to one or more causes of action based upon, arising from, or related to an Abuse Cause of Action, then such Plaintiff shall cause to be included, and in all events, the settlement shall be deemed to include, a dismissal, release and waiver of any Abuse Cause of Action with respect to such settlement.

O.    <u>Reservation of Rights</u>.  Notwithstanding any other provision of the Plan to the contrary, no provision of this <u>Article X</u> shall be deemed or construed to satisfy, discharge, release or enjoin claims by the Settlement Trust, Reorganized BSA, or any other Person, as the case may be, against (1) the Settlement Trust for payment of Abuse Claims in accordance with the Trust Distribution Procedures, (2) the Settlement Trust for the payment of Settlement Trust Expenses, or (3) any Insurance Company that has not performed under an Insurance Policy or an Insurance Settlement Agreement.

P.    <u>Disallowed Claims</u>.    On and after the Effective Date, the Debtors and Reorganized BSA shall be fully and finally discharged of any and all liability or obligation on any and all Disallowed Claims, and any order Disallowing a Claim that is not a Final Order as of the Effective Date solely because of a Person's right to move for reconsideration of such order pursuant to section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Effective Date.

Q.    <u>No Successor Liability</u>.  Except as otherwise expressly provided in the Plan, Reorganized BSA does not, pursuant to the Plan or otherwise, assume, agree to perform, pay or indemnify any Person, or otherwise have any responsibility for any liabilities or obligations of the Debtors relating to or arising out of the operations of or assets of the Debtors, whether arising prior to, on or after the Effective Date.   Neither the Debtors, Reorganized BSA, nor the Settlement Trust is, or shall be deemed to be, a successor to any of the Debtors by reason of any theory of law or equity (except as otherwise provided in <u>Article IV.C</u>), and none shall have any successor or transferee liability of any kind or character; <u>provided</u>, <u>however</u>, that Reorganized BSA and the Settlement Trust shall assume and remain liable for their respective obligations specified in the Plan and the Confirmation Order.

R.    <u>Indemnities</u>.

1.    <u>Prepetition Indemnification and Reimbursement Obligations</u>.    The respective obligations of the Debtors to indemnify and reimburse Persons who are or were directors, officers or employees of the Debtors on the Petition Date or at any time thereafter up to and including the Effective Date, against and for any obligations pursuant to the bylaws, applicable state or non-bankruptcy law, or specific agreement or any combination of the foregoing, shall, except with respect to any Perpetrator: (a) survive Confirmation of the Plan and remain unaffected thereby; (b) be assumed by Reorganized BSA as of the Effective Date; and (c) not be discharged under section 1141 of the Bankruptcy Code, irrespective of whether indemnification or reimbursement is owed in connection with any event occurring before, on or after the Petition Date.  In furtherance of, and to implement the foregoing, as of the Effective Date, Reorganized BSA shall obtain and maintain in full force insurance for the benefit of each and all of the above-indemnified directors, officers and employees, at levels no less favorable than those existing as of the date of entry of the Confirmation Order, and for a period of no less than three (3) years following the Effective Date.

2.    <u>Plan Indemnity</u>.  In addition to the matters set forth above and not by way of limitation thereof, Reorganized BSA shall indemnify and hold harmless all Persons who are or were officers or directors of the Debtors on the Petition Date or at any time

thereafter up to and including the Effective Date on account of and with respect to any claim, cause of action, liability, judgment, settlement, cost or expense (including attorneys' fees) on account of claims or Causes of Action threatened or asserted by any third party against such officers or directors that seek contribution, indemnity, equitable indemnity, or any similar claim, based upon or as the result of the assertion of primary claims against such third party by any representative of the Debtors' Estates.

3.      Limitation on Indemnification.  Notwithstanding anything to the contrary set forth in the Plan or elsewhere, neither the Debtors, Reorganized BSA, the Local Councils, nor the Contributing Chartered Organizations, as applicable, shall be obligated to indemnify or hold harmless any Person for any claim, cause of action, liability, judgment, settlement, cost or expense that results primarily from (i) such Person's bad faith, gross negligence or willful misconduct or (ii) an Abuse Claim.

S.      The Official Committees and the Future Claimants' Representative.  Except as otherwise described in the Settlement Trust Documents with respect to the Future Claimants' Representative, the Official Committees and the Future Claimants' Representative shall continue in existence until the Effective Date, and after the Effective Date for the limited purposes of prosecuting requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date.  The Debtors shall pay the reasonable fees and actual and necessary expenses incurred by the Official Committees and the Future Claimants' Representative up to the Effective Date, and after the Effective Date solely for the purposes set forth in the preceding sentence, in accordance with the Compensation Procedures Order, the Fee Examiner Order, and the terms of the Plan, including Article II.  As of the Effective Date, the members of the Creditors' Committee shall be released and discharged from all further authority, duties, responsibilities, liabilities, and obligations involving the Chapter 11 Cases.  Upon the closing of the Chapter 11 Cases, the Official Committees shall be dissolved.  Neither the Debtors nor Reorganized BSA have any obligation to pay fees or expenses of any Professional retained by the Official Committees or the Future Claimants' Representative that are earned or incurred before the Effective Date to the extent such fees or expenses (or any portion thereof) qualify as Settlement Trust Expenses, in which case such fees and expenses (or the applicable portion thereof) shall be paid by the Settlement Trust in accordance with the Settlement Trust Documents.

## ARTICLE XI.

## RETENTION OF JURISDICTION

A.      Jurisdiction.  Until the Chapter 11 Cases are closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction that is permissible, including the jurisdiction necessary to ensure that the purposes and intent of the Plan are carried out.  Except as otherwise provided in the Plan or the Settlement Trust Agreement, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against and Interests in the Debtors, and to adjudicate and enforce the Insurance Actions, the Settlement Trust Causes of Action, and all other Causes of Action which may exist on behalf of the Debtors.  Nothing contained herein shall prevent Reorganized BSA or the Settlement Trust, as applicable, from taking such action as may be necessary in the enforcement of any Estate Cause of Action, Insurance Action,

Settlement Trust Cause of Action, or other Cause of Action which the Debtors have or may have and which may not have been enforced or prosecuted by the Debtors, which actions or other Causes of Action shall survive Confirmation of the Plan and shall not be affected thereby except as specifically provided herein.    Nothing contained herein concerning the retention of jurisdiction by the Bankruptcy Court shall be deemed to be a finding or conclusion that (1) the Bankruptcy Court in fact has jurisdiction with respect to any Insurance Action, (2) any such jurisdiction is exclusive with respect to any Insurance Action, or (3) abstention or dismissal of any Insurance Action pending in the Bankruptcy Court or the District Court as an adversary proceeding is or is not advisable or warranted, so that another court can hear and determine such Insurance Action(s).    Any court other than the Bankruptcy Court that has jurisdiction over an Insurance Action shall have the right to exercise such jurisdiction.

B.    General Retention.    Following Confirmation of the Plan, the administration of the Chapter 11 Cases will continue until the Chapter 11 Cases are closed by a Final Order of the Bankruptcy Court.    The Bankruptcy Court shall also retain jurisdiction for the purpose of classification of any Claims and the re-examination of Claims which have been Allowed for purposes of voting, and the determination of such objections as may be filed with the Bankruptcy Court with respect to any Claims.    The failure by the Debtors or Reorganized BSA to object to, or examine, any Claim for the purposes of voting, shall not be deemed a waiver of the rights of the Debtors, Reorganized BSA, or the Settlement Trust, as the case may be, to object to or reexamine such Claim in whole or part.

C.    Specific Purposes.    In addition to the foregoing, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1.    modify the Plan after Confirmation pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules;

2.    correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications in or to the Plan, the Trust Documents or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance in the Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

3.    assure performance by the Settlement Trust and the Disbursing Agent of their respective obligations to make distributions under the Plan;

4.    enforce and interpret the terms and conditions of the Plan, the Plan Documents, the Settlement Trust Documents, the DST Agreement, and any Insurance Settlement Agreements;

5.    enter such orders or judgments, including injunctions (a) as are necessary to enforce the title, rights and powers of Reorganized BSA and the Settlement Trust, (b) to execute, implement, or consummate the provisions of the Plan, the Confirmation Order, and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or the Confirmation Order, and (c) as are necessary to enable holders of Claims to

pursue their rights against any Person that may be liable therefor pursuant to applicable law or otherwise;

6.      hear and determine any and all motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date (which jurisdiction shall be non-exclusive as to any such non-core matters);

7.      hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters, including contested matters arising on account of transactions contemplated by the Plan, or relating to the period of administration of the Chapter 11 Cases;

8.      hear and determine all applications for compensation of Professionals and reimbursement of expenses under sections 328, 330, 331, or 503(b) of the Bankruptcy Code;

9.      hear and determine any Causes of Action arising during the period from the Petition Date to the Effective Date, or in any way related to the Plan or the transactions contemplated hereby, against the Debtors, Reorganized BSA, the Settlement Trust, the DST, and their respective Representatives;

10.      hear and determine any and all motions for the rejection, assumption or assignment of Executory Contracts or Unexpired Leases and the Allowance of any Claims resulting therefrom;

11.      hear and determine such other matters and for such other purposes as may be provided in the Confirmation Order;

12.      hear and determine the Allowance and/or Disallowance of any Claims, including Administrative Expense Claims, against or Interests in the Debtors or their Estates, including any objections to any such Claims or Interests, and the compromise and settlement of any Claim, including Administrative Expense Claims, against or Interest in the Debtors or their Estates;

13.      hear and resolve disputes concerning any reserves under the Plan or the administration thereof;

14.      hear and determine all questions and disputes regarding title to the assets of the Debtors, their Estates or the Settlement Trust;

15.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated, or if distributions pursuant to the Plan or under the Settlement Trust Documents are enjoined or stayed;

16.      hear and determine all questions and disputes regarding, and to enforce, the Abuse Claims Settlement;

17.      hear and determine the Insurance Actions, any Settlement Trust Cause of Action and any similar claims, Causes of Action or rights of the Settlement Trust to construe and take any action to enforce any Abuse Insurance Policy, and to issue such orders as may be

necessary for the execution, consummation and implementation of any Abuse Insurance Policy, and to determine all questions and issues arising thereunder; provided, that such retention of jurisdiction shall not constitute a waiver of any right of a Non-Settling Insurance Company to seek to remove or withdraw the reference of any Insurance Action filed after the Effective Date;

18.    hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Chapter 11 Cases;

19.    resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, the Bar Date established in the Chapter 11 Cases, or any deadline for responding or objecting to a Cure Amount, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

20.    enter in aid of implementation of the Plan such orders as are necessary, including the implementation and enforcement of the Injunctions, Releases, and Discharges described herein, including the Channeling Injunction;

21.    hearing a petition for relief by a Specified Person or any other party in interest in the event that a court or tribunal hearing an Abuse Cause of Action fails to apply the judgment reduction provisions of Article X.N;

22.    approve any Post-Effective Date Chartered Organization Settlement and determine the adequacy of notice of a motion by the Settlement Trustee to approve such a settlement;

23.    approve any extension of the Insurance Settlement Period, approve any Post-Effective Date Insurance Settlement and determine the adequacy of notice of a Post-Effective Date Insurance Settlement provided by the Settlement Trustee;

24.    hear and determine any questions and disputes pertaining to, and to enforce, the Abuse Claims Settlement, including the Local Council Settlement Contribution, the Contributing Chartered Organization Settlement Contribution, including the TCJC Settlement Contribution, the Participating Chartered Organization Settlement Contribution, and the Hartford Settlement Contribution;

25.    hear and determine any questions and disputes pertaining to, and to enforce, the JPM / Creditors' Committee Settlement;

26.    hear and determine any questions and disputes pertaining to, and to enforce, the Hartford Insurance Settlement;

27.    hear and determine any questions and disputes pertaining to, and to enforce, the TCJC Settlement;

28.    hear and determine all questions and disputes regarding matters pertaining to the DST Agreement;

29.    enter a Final Order or decree concluding or closing the Chapter 11 Cases; and

30.    to enter and implement such orders as may be necessary or appropriate if any aspect of the Plan, the Settlement Trust, or the Confirmation Order is, for any reason or in any respect, determined by a court to be inconsistent with, to violate, or insufficient to satisfy any of the terms, conditions, or other duties associated with any Abuse Insurance Policies; provided, however, that (a) such orders shall not impair the Insurance Coverage Defenses or the rights, claims, or defenses, if any, of any Insurance Company that are set forth or provided for in the Plan, the Plan Documents, the Confirmation Order, or any other Final Orders entered in the Debtors' Chapter 11 Cases, (b) this provision does not, in and of itself, grant this Court jurisdiction to hear and decide disputes arising out of or relating to the Abuse Insurance Policies, and (c) all interested parties, including any Insurance Company, reserve the right to oppose or object to any such motion or order seeking such relief.

As of the Effective Date, notwithstanding anything in this <u>Article XI</u> to the contrary, the Restated Debt and Security Documents and any documents related thereto shall be governed by the jurisdictional provisions thereof and the Bankruptcy Court shall not retain jurisdiction with respect thereto.

D.    <u>Courts of Competent Jurisdiction</u>.  To the extent that the Bankruptcy Court is not permitted under applicable law to preside over any of the foregoing matters, the reference to the "Bankruptcy Court" in this <u>Article XI</u> shall be deemed to be replaced by the "District Court."  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XII.

## MISCELLANEOUS PROVISIONS

A.    <u>Closing of Chapter 11 Cases</u>.  After each Chapter 11 Case has been fully administered, Reorganized BSA shall file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close such Chapter 11 Case.

B.    <u>Amendment or Modification of the Plan</u>.

1.    <u>Plan Modifications</u>.    Subject to the terms of the JPM / Creditors' Committee Term Sheet, the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and after entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend, modify or supplement the Plan in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code unless section 1127 of the Bankruptcy Code requires additional disclosure.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to the Plan, the Debtors may

remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of the Plan, and any holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented. All amendments to the Plan (a) must be reasonably acceptable to JPM and the Creditors' Committee to the extent they pertain to the treatment of the 2010 Credit Facility Claims, the 2019 RCF Claims, the 2010 Bond Claims, or the 2012 Bond Claims (in the case of JPM) or Convenience Claims, General Unsecured Claims, or Non-Abuse Litigation Claims (in the case of the Creditors' Committee), (b) shall not be inconsistent with the terms of the Hartford Insurance Settlement Agreement, and (c) shall not be inconsistent with the terms of the TCJC Settlement Agreement. The designation of Chartered Organizations as Contributing Chartered Organizations or Participating Chartered Organizations and the designation of Non-Settling Insurance Companies as Settling Insurance Companies after the Effective Date in accordance with <u>Article IV.I</u>, <u>Article IV.J</u>, or <u>Article IV.K</u> shall not be a modification or amendment to the Plan and instead is an act that may be done to effectuate the terms of the Plan.

2. <u>Other Amendments</u>. Before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

C. <u>Revocation or Withdrawal of Plan</u>. The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date. If the Plan has been revoked or withdrawn prior to the Effective Date, or if Confirmation of the Plan or the occurrence of the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan, including the Settlement Trust Documents, shall be deemed null and void (except that the Hartford Insurance Settlement Agreement shall remain in full force and effect to the extent provided in such agreement in accordance with its terms); and (3) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim against, or any Interest in, the Debtors or any other Person; (ii) prejudice in any manner the rights of the Debtors or any other Person; or (iii) constitute an admission of any sort by the Debtors or any other Person.

D. <u>Request for Expedited Determination of Taxes</u>. The Debtors and Reorganized BSA, as applicable, shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date to and including the Effective Date.

E. <u>Non-Severability of Plan Provisions</u>. If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.

Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms, (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors or Reorganized BSA (as the case may be), and (3) nonseverable and mutually dependent.

      F.    <u>Notices</u>.    All notices, requests, and demands to or upon the Debtors or Reorganized BSA to be effective shall be in writing (including by email transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, addressed as follows:

> Boy Scouts of America
> 1325 W. Walnut Hill Lane
> Irving, Texas 75015
> Attn:  Steven McGowan, General Counsel
> Email: Steve.McGowan@scouting.org
>
> with copies to:
>
> White & Case LLP
> 1221 Avenue of the Americas
> New York, New York 10020
> Attn:  Jessica C. Lauria
> Email:  jessica.lauria@whitecase.com
>
> – and –
>
> White & Case LLP
> 111 South Wacker Drive, Suite 5100
> Chicago, Illinois 60606
> Attn:  Michael C. Andolina
>        Matthew E. Linder
> Email: mandolina@whitecase.com
>        mlinder@whitecase.com
>
> – and –
>
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 North Market Street, 16th Floor
> P.O. Box 1347
> Wilmington, Delaware 19899-1347
> Attn:  Derek C. Abbott
> Email:  dabbott@morrisnichols.com

G.    Notices to Other Persons.    After the occurrence of the Effective Date, Reorganized BSA has authority to send a notice to any Person providing that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Person must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002; provided, however, that the U.S. Trustee need not file such a renewed request and shall continue to receive documents without any further action being necessary.    After the occurrence of the Effective Date, Reorganized BSA is authorized to limit the list of Persons receiving documents pursuant to Bankruptcy Rule 2002 to the U.S. Trustee and those Persons that have filed such renewed requests:

H.    Governing Law.    Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement or any other Plan Document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof; provided, however, that governance matters relating to Reorganized BSA shall be governed by the laws of the District of Columbia.

I.    Immediate Binding Effect.    Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of any Person named or referred to in the Plan and the successors and assigns of such Person.

J.    Timing of Distributions or Actions.    In the event that any payment, Distribution, act or deadline under the Plan is required to be made or performed or occurs on a day that is not a Business Day, then such payment, Distribution, act or deadline shall be deemed to occur on the next succeeding Business Day, but if so made, performed or completed by such next succeeding Business Day, shall be deemed to have been completed or to have occurred as of the required date.

K.    Deemed Acts.    Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred by virtue of the Plan or the Confirmation Order without any further act by any Person.

L.    Entire Agreement.    The Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions, negotiations, understandings and documents.    No Person shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for in the Plan or the other Plan Documents or as may hereafter be agreed to by the affected parties in writing.

M.    Plan Supplement.    Any and all exhibits, lists, or schedules referred to herein but not filed with the Plan shall be contained in the Plan Supplement to be filed with the Clerk of the Bankruptcy Court prior to the Confirmation Hearing on the Plan, and such Plan Supplement is incorporated into and is part of the Plan as if set forth in full herein.    The Plan Supplement will be available for inspection in the office of the Clerk of the Bankruptcy Court during normal court hours,    at    the    website    maintained    by    the    Notice    and    Claims    Agent

124

(https://cases.omniagentsolutions.com/BSA), and at the Bankruptcy Court's website (ecf.deb.uscourts.gov).

N.    <u>Withholding of Taxes</u>.  The Disbursing Agent, the Settlement Trust or any other applicable withholding agent, as applicable, shall withhold from any assets or property distributed under the Plan any assets or property which must be withheld for foreign, federal, state and local taxes payable with respect thereto or payable by the Person entitled to such assets to the extent required by applicable law.

O.    <u>Payment of Quarterly Fees</u>.  All Quarterly Fees due and payable prior to the Effective Date shall be paid on or before the Effective Date.  The Reorganized Debtors shall pay all such fees that arise after the Effective Date, but before the closing of the Chapter 11 Cases, and shall comply with all applicable statutory reporting requirements.

P.    <u>Effective Date Actions Simultaneous</u>.  Unless the Plan or the Confirmation Order provides otherwise, actions required to be taken on the Effective Date shall take place and be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

Q.    <u>Consent to Jurisdiction</u>.  Upon default under the Plan, Reorganized BSA, the Settlement Trust, the Settlement Trustee, the Official Committees, the Future Claimants' Representative, and the Protected Parties, or any successor thereto, respectively, consent to the jurisdiction of the Bankruptcy Court, and agree that it shall be the preferred forum for all proceedings relating to any such default.

*[Remainder of Page Intentionally Left Blank]*

Dated:  September 27, 2021

Boy Scouts of America
Delaware BSA, LLC

*/s/ Roger C. Mosby*
Roger C. Mosby
Chief Executive Officer and President

**EXHIBIT A**

**TRUST DISTRIBUTION PROCEDURES**

**BOY SCOUTS OF AMERICA**

**TRUST DISTRIBUTION PROCEDURES FOR ABUSE CLAIMS**

**ARTICLE I**
**PURPOSE AND GENERAL GUIDELINES**

**A.    Purpose**.  The purpose of the Settlement Trust is to, among other things, assume liability for all Abuse Claims, to hold, preserve, maximize and administer the Settlement Trust Assets, and to employ procedures to allow valid Abuse Claims against the Debtors and other Protected Parties in accordance with section 502 of the Bankruptcy Code and/or applicable law (each, an "**Allowed Abuse Claim**"), determine an allowed liability amount for each Allowed Abuse claim (the "**Allowed Claim Amount**"), determine payment methodology and direct payment of all Allowed Abuse Claims, and obtain insurance coverage for the Allowed Claim Amount of such Allowed Abuse Claims that are Insured Abuse Claims (as defined below).  These Trust Distribution Procedures (the "**TDP**") are adopted pursuant to the Settlement Trust Agreement and have been approved as reasonable by the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").  These TDP are designed to provide fair, equitable, and substantially similar treatment for Allowed Abuse Claims.  These TDP provide the means for resolving all Abuse Claims for which the Protected Parties have or are alleged to have legal responsibility as provided in and required by the Plan, the Confirmation Order, and the Settlement Trust Agreement.  The Settlement Trustee shall implement and administer these TDP in consultation with the Claims Administrator, Future Claimants' Representative, and Trust Professionals with the goals of securing the just, speedy, and cost-efficient determination of every Abuse Claim, providing substantially similar treatment to holders of similar, legally valid and supported Allowed Abuse Claims in accordance with the procedures set forth herein, and obtaining and maximizing the benefits of the Settlement Trust Assets.

**B.    General Principles**.  To achieve maximum fairness and efficiency, and recoveries for holders of Allowed Abuse Claims, these TDP are founded on the following principles:

1.    objective Claim eligibility criteria;

2.    clear and reliable proof requirements;

3.    administrative transparency;

4.    a rigorous review and evidentiary process that requires the Settlement Trustee to determine Allowed Claim Amounts in accordance with applicable law;

5.    prevention and detection of any fraud; and

6.    independence of the Settlement Trust and Settlement Trustee.

1

**C.**     **Payment of Allowed Abuse Claims and Insurance Recoveries**.  Pursuant to the terms of the Plan, the Settlement Trust has assumed the Debtors' legal liability for, and obligation to pay, Allowed Abuse Claims.  The Settlement Trust Assets, including the proceeds of the assigned insurance rights, shall be used to fund distributions to Abuse Claimants under these TDP.  The amounts that Abuse Claimants will ultimately be paid on account of their Allowed Abuse Claims will depend on, among other things, the Settlement Trust's ability to liquidate and recover the proceeds of the assigned insurance rights.  The amount of any installment payments, initial payments, or payment percentages established under these TDP or the Settlement Trust Agreement are not the equivalent of (i) any Abuse Claimant's Allowed Claim Amount or (ii) the right to payment that the holder of an Allowed Abuse Claim has against the Debtors and/or Protected Parties, as assumed by the Settlement Trust.

**D.**     **Sole and Exclusive Method**.  These TDP and any procedures designated in these TDP shall be the sole and exclusive methods by which an Abuse Claimant may seek allowance and distribution on an Abuse Claim with respect to the Protected Parties.

**E.**     **Interpretation**.  The terms of the Plan and Confirmation Order shall prevail if there is any discrepancy between the terms of the Plan or Confirmation Order and the terms of these TDP.

**F.**     **Confidentiality**.  All submissions to the Settlement Trust by an Abuse Claimant shall be treated as confidential and shall be protected by all applicable state and federal privileges, including those directly applicable to settlement discussions.  The Settlement Trust will preserve the confidentiality of such submissions, and shall disclose the contents thereof only to such persons as authorized by the Abuse Claimant, or in response to a valid subpoena of such materials issued by the Bankruptcy Court, a Delaware state court, the United States District Court for the District of Delaware or any other court of competent jurisdiction.  Notwithstanding anything in the foregoing to the contrary, the Settlement Trust may disclose information, documents, or other materials reasonably necessary in the Settlement Trust's judgment to preserve, obtain, litigate, resolve, or settle insurance coverage, or to comply with an applicable obligation under an Insurance Policy, indemnity, or settlement agreement.  Nothing in these TDP shall be construed to authorize the Settlement Trustee to waive privilege or disseminate documents to any Abuse Claimants or their respective counsel, except as provided for in the Document Agreement.

## ARTICLE II
## DEFINITIONS AND RULES OF INTERPRETATION

**A.**     **Incorporation of Plan Definitions**.  Capitalized terms used but not defined in these TDP have the meanings ascribed to them in the Plan or the Settlement Trust Agreement and such definitions are incorporated in these TDP by reference.  To the extent that a term is defined in these TDP and the Plan and/or the Settlement Trust Agreement, the definition contained in these TDP controls.

**B.**     **Definitions**.  The following terms have the respective meanings set forth below:

2

1.    "**Abuse Claims**" shall mean Direct Abuse Claims, Indirect Abuse Claims, and Future Abuse Claims.

2.    "**Abuse Claimants**" shall mean the holder of a Direct Abuse Claim, an Indirect Abuse Claim, or a Future Abuse Claim.

3.    "**Base Matrix Value**" shall mean the base case value for each tier of Abuse Type (labeled as such in the Claims Matrix and more specifically defined and described in Article VIII.C) to be used to value Abuse Claims and that may be identified in connection with the description of the Scaling Factors in Article VIII.C.

4.    "**Claims Matrix**" shall mean (as specifically defined and described in Article VIII.B) a table scheduling the six tiers of Abuse Types, and identifying the Base Matrix Value, and Maximum Matrix Value for each tier.

5.    "**CPI-U**" shall mean the Consumer Price Index For All Urban Consumers: All Items Less Food & Energy, published by the United States Department of Labor, Bureau of Labor Statistics.

6.    "**Direct Abuse Claimant**" or "**Survivor**" shall mean the holder of a Direct Abuse Claim or a Future Abuse Claim.

7.    "**Indirect Abuse Claimant**" shall mean the holder of an Indirect Abuse Claim.

8.    "**Exigent Health Claim**" shall mean a Direct Abuse Claim for which the Direct Abuse Claimant has provided a declaration under penalty of perjury from a physician who has examined the Direct Abuse Claimant within one hundred and twenty (120) days of the declaration in which the physician states that there is substantial medical doubt that the Direct Abuse Claimant will survive beyond six (6) months from the date of the declaration.

9.    "**FIFO**" shall mean "first-in-first-out" and refers to the impartial basis for establishing a sequence pursuant to which Abuse Claims shall be determined and paid by the Settlement Trust.

10.    "**FIFO Processing Queue**" shall mean the FIFO line-up on which the Settlement Trust reviews Trust Claims Submissions.

11.    "**Maximum Matrix Value**" shall mean the value for each tier of Abuse Type (labeled as such in the Claims Matrix and more specifically defined and described in Article VIII.B) that represents the maximum Allowed Claim Amount achievable through the matrix calculation for an Allowed Abuse Claim assigned to a given tier after application of the Scaling Factors described in Article VIII.C.

3

12. "**Non-BSA Sourced Assets**" shall mean Settlement Trust Assets that represent assets received as a result of or in connection with a global settlement between the Debtors or the Settlement Trust, on the one hand, and a Chartered Organization that is or becomes a Protected Party, on the other hand. For the avoidance of doubt, Non-BSA Sourced Assets shall not include any assets received from the Debtors, the Local Councils, or any Settling Insurance Companies.

13. "**Scaling Factors**" shall mean (as specifically defined and described in Article VIII.C) the factors identified to consider with respect to each Abuse Claim and to apply to the Base Matrix Value for the applicable tier of Abuse Type for such Abuse Claim to arrive at its Proposed Allowed Claim Amount.

**C.** **Interpretation; Application of Definitions and Rules of Construction**. For purposes of these TDP, unless otherwise provided herein: (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference to a person as a holder of a Claim includes that person's successors and assigns; (3) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to these TDP as a whole and not to any particular article, section, subsection, or clause; (4) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation and shall be deemed to be followed by the words "without limitation;" (5) any effectuating provisions of these TDP may be reasonably interpreted by the Settlement Trustee in such a manner that is consistent with the overall purpose and intent of these TDP without further notice to or action, order, or approval of the Bankruptcy Court; (6) the headings in these TDP are for convenience of reference only and shall not limit or otherwise affect the provisions hereof; (7) in computing any period of time prescribed or allowed by these TDP, unless otherwise expressly provided herein, the provisions of Bankruptcy Rule 9006(a) shall apply; and (8) all provisions requiring the consent of a person shall be deemed to mean that such consent shall not be unreasonably withheld.

**ARTICLE III**
**TDP ADMINISTRATION**

**A.** **Administration**. Pursuant to the Plan and the Settlement Trust Agreement, the Settlement Trust and these TDP shall be administered by the Settlement Trustee in consultation with the STAC and the Future Claimants' Representative, which represents the interests of holders of present Abuse Claims in the administration of the Settlement Trust, and the Future Claimants' Representative, who represents the interests of holders of Future Abuse Claims. The Claims Administrator shall assist the Settlement Trustee in the resolution of Abuse Claims in accordance with these TDP and provide information necessary for the Settlement Trustee to implement these TDP.

**B.** **Powers and Obligations**. The powers and obligations of the Settlement Trustee, the STAC, the Future Claimants' Representative, and the Claims Administrator are set forth in the

4

Settlement Trust Agreement.  The STAC and the Future Claimants' Representative shall have no authority or ability to modify, reject, or influence any claim allowance or Allowed Claim Amount determination under these TDP.

**C.**    **Consent Procedures**.  The Settlement Trustee shall obtain the consent of the STAC and the Future Claimants' Representative on any amendments to these TDP pursuant to Article XIII.B below, and on such matters as are otherwise required below and in Article 1.6 of the Settlement Trust Agreement.  Such consent shall not be unreasonably withheld.

## ARTICLE IV
## CLAIMANT ELIGIBILITY

**A.**    **Direct Abuse Claims**.  To be eligible to potentially receive compensation from the Settlement Trust on account of a Direct Abuse Claim, a Direct Abuse Claimant must:

(1)    have a Direct Abuse Claim;

(2)    have timely submitted an Abuse Claim Proof of Claim or Trust Claim Submission to the Settlement Trust as provided below; and

(3)    submit supporting documentation and evidence to the Settlement Trust as provided below.

Direct Abuse Claims can only be timely submitted as follows:

(i)    a Direct Abuse Claim for which a Proof of Claim was filed in the Chapter 11 Cases before the Bar Date or if determined timely by the Bankruptcy Court (each a "**Chapter 11 POC**") shall, without any further action by the Abuse Claimant, be deemed a timely submitted Abuse Proof of Claim to the Settlement Trust;

(ii)    a Direct Abuse Claim alleging abuse against a Local Council (alleged to be connected to Scouting related to or sponsored by the BSA) (a) for which, as of the time the Claim is submitted to the Settlement Trust in accordance with the Settlement Trustee's designated procedures, a pending state court action had been timely filed under state law naming the Local Council as a defendant or (b) which is submitted to the Settlement Trust at a time when the Claim would be timely under applicable state law if a state court action were filed against the Local Council on the date on which the Direct Abuse Claim is submitted to the Settlement Trust, shall be deemed a timely submitted Abuse Proof of Claim to the Settlement Trust; or

(iii)    a Direct Abuse Claim alleging abuse against any Protected Party other than a Local Council (alleged to be connected to Scouting related to or sponsored by the BSA) (a) for which, as of the time the Claim is submitted to the Settlement Trust in accordance with the Settlement Trustee's designated procedures, a pending state court action had been timely filed under state law naming the Protected Party as a defendant or (b) which is submitted to the Settlement Trust at a time when the Claim and would be (x) timely under applicable state law if a state court action were

5

filed against the Protected Party on the date on which the Direct Abuse Claim is submitted to the Settlement Trust and (y) meets any applicable deadline that may be set by the Bankruptcy Court in connection with such Protected Party becoming a Protected Party in accordance with the Plan and Confirmation Order, shall be deemed a timely submitted Abuse Proof of Claim to the Settlement Trust.

Any Direct Abuse Claim that is not timely submitted based on the foregoing shall be deemed untimely and Disallowed.

**B.    Indirect Abuse Claims**.[1]    To be eligible to receive compensation from the Settlement Trust, an Indirect Abuse Claimant:

(1)    must have an Indirect Abuse Claim that satisfies the requirements of the Bar Date Order;

(2)    must establish to the satisfaction of the Settlement Trustee that the claim is not of a nature that it would be otherwise subject to disallowance under section 502 of the Bankruptcy Code, including subsection (e) thereof (subject to the right of the holder of the Indirect Abuse Claim to seek reconsideration by the Settlement Trustee under section 502(j) of the Bankruptcy Code), or subordination under sections 509(c) or 510 of the Bankruptcy Code; and

(3)    must establish to the satisfaction of the Settlement Trustee that:

(a)    such Indirect Abuse Claimant has paid in full the liability and/or obligation of the Settlement Trust to a Direct Abuse Claimant to whom the Settlement Trust would otherwise have had a liability or obligation under these TDP (and which has not been paid by the Settlement Trust);

(b)    the Indirect Abuse Claimant and the person(s) to whose claim(s) the Indirect Abuse Claim relates, have forever and fully released the Settlement Trust and the Protected Parties from all liability for or related to the subject Direct Abuse Claim (other than the Indirect Abuse Claimant's assertion of its Indirect Abuse Claim);

(c)    the Indirect Abuse Claim is not otherwise barred by a statute of limitations or repose or by other applicable law; and

---

[1] For the avoidance of doubt, Indirect Abuse Claims may include claims for the payment of defense costs, deductibles, or indemnification obligations.

(d)     the Indirect Abuse Claimant does not owe the Debtors, Reorganized Debtors, or the Settlement Trust an obligation to indemnify the liability so satisfied.

In no event shall any Indirect Abuse Claimant have any rights against the Settlement Trust superior to the rights that the Direct Abuse Claimant to whose claim the Indirect Abuse Claim relates, would have against the Settlement Trust, including any rights with respect to timing, amount, percentage, priority, or manner of payment.  In addition, no Indirect Abuse Claim may be liquidated and paid in an amount that exceeds what the Indirect Abuse Claimant has paid to the related Direct Claimant in respect of such claim for which the Settlement Trust would have liability.  Further, in no event shall any Indirect Abuse Claim exceed the Allowed Claim Amount of the related Direct Abuse Claim.

**C.**     **Future Abuse Claims**.  To be eligible to potentially receive compensation from the Settlement Trust on account of a Future Abuse Claim, a Future Abuse Claimant must:

(1)     have a Direct Abuse Claim that arises from Abuse that occurred prior to the Petition Date;

(2)     as of the date immediately preceding the Petition Date, had not attained eighteen (18) years of age or was not aware of such Direct Abuse Claim as a result of "repressed memory," to the extent the concept of repressed memory is recognized by the highest appellate court of the state or territory where the claim arose;

(3)     submit the Future Abuse Claim to the Settlement Trust in accordance with these TDP, (i) at a time when the Claim would be timely under applicable state law if a state court action were filed on the date on which the Future Abuse Claim is submitted to the Settlement Trust, or (ii), if the Future Abuse Claim is not timely under (i) above, it will be eliminated or decreased in accordance with Article VIII.E(iii) below; and

(4)     have not filed a Chapter 11 POC.

Future Abuse Claims that meet the foregoing eligibility criteria shall be treated as Direct Abuse Claims hereunder.

**ARTICLE V**
**GENERAL TRUST PROCEDURES**

**A.**     **Document Agreement**.  As more fully described in the Document Agreement, the Settlement Trustee may require other parties to the Document Agreement to provide the Settlement Trust with documents, witnesses, or other information as provided therein (the "**Document Obligations**").

7

**B.** **Document Access**. The Settlement Trust shall afford access for Direct Abuse Claimants to relevant, otherwise discoverable non-privileged documents obtained by the Settlement Trust pursuant to the Document Agreement to facilitate their submissions with respect to their Direct Abuse Claims, including access to IV files (the Volunteer Screening Database) and to all Troop Rosters in the possession, custody or control of the Debtors, each Protected Party or the Settlement Trust. A court of competent jurisdiction shall be able to determine whether allegedly privileged documents should be required to be produced by the Settlement Trust. The Settlement Trust also may perform any and all obligations necessary to recover assigned proceeds under the assigned insurance rights in connection with the administration of these TDP.

**C.** **Assignment of Insurance Rights**. The Bankruptcy Court has authorized the Insurance Assignment pursuant to the Plan and the Confirmation Order, and the Settlement Trust has received the assignment and transfer of the Insurance Actions, the Insurance Action Recoveries, the Insurance Settlement Agreements (if applicable), the Insurance Coverage, and all other rights or obligations under or with respect to the Insurance Policies (but not the policies themselves) in accordance with the Bankruptcy Code. Nothing in these TDP shall modify, amend, or supplement, or be interpreted as modifying, amending, or supplementing, the terms of any Insurance Policy or rights and obligations under an Insurance Policy assigned to the Settlement Trust to the extent such rights and obligations are otherwise available under applicable law and subject to the Plan and Confirmation Order. The rights and obligations, if any, of any Non-Settling Insurance Company relating to or arising out of these TDP, or any provision hereof, shall be determined pursuant to the terms and provisions of the Insurance Policies and applicable law. Notwithstanding the foregoing, the Settlement Trust shall satisfy, to the extent required under the relevant policies and applicable law, any retrospective premiums and self-insured retentions arising out of any Abuse Claims under the Abuse Insurance Policies. In the event that a Non-Settling Insurance Company pays such self-insured retention and is entitled to reimbursement from the Settlement Trust under applicable law, such Non-Settling Insurance Company shall receive that reimbursement in the form of a set-off against any claim for coverage by the Settlement Trust against that Non-Settling Insurance Company with respect to the relevant Abuse Claim.

**D.** **Deceased Abuse Survivor**. The Settlement Trustee shall consider, and if an Allowed Claim Amount is determined, pay under these TDP, the claim of a deceased Direct Abuse Claimant without regard to the Direct Abuse Claimant's death, except that the Settlement Trustee may require evidence that the person submitting the claim on behalf of the decedent is authorized to do so.

**E.** **Statute of Limitations or Repose**. The statute of limitations, statute of repose, and the choice of law determination applicable to an Abuse Claim against the Settlement Trust shall be determined by reference to the tort system where such Abuse Claim was pending on the Petition Date (so long as the Protected Party was subject to personal jurisdiction in that location), or where such Abuse Claim could have been timely and properly filed as asserted by the Abuse Claimant under applicable law.

## ARTICLE VI
## EXPEDITED DISTRIBUTIONS

**A.**      **Minimum Payment Criteria**.  A Direct Abuse Claimant who meets the following criteria may elect to resolve his or her Direct Abuse Claim for an expedited distribution of $3,500 (the "**Expedited Distribution**"):  (i) the Direct Abuse Claimant elects to resolve his or her Direct Abuse Claim for the Expedited Distribution (the "**Expedited Distribution Election**"); (ii) in connection with the Expedited Distribution Election, the Direct Abuse Claimant has timely submitted to the Settlement Trust a properly and substantially completed, non-duplicative Chapter 11 POC or Future Abuse Claim; and  (iii) the Direct Abuse Claimant has personally signed his or her Proof of Claim or Future Abuse Claim attesting to the truth of its contents under penalty of perjury, or supplements his or her Abuse Claim Proof of Claim to so provide such verification. Direct Abuse Claimants that make the Expedited Distribution Election will not have to submit any additional information to the Settlement Trust to receive payment of the Expedited Distribution from the Settlement Trust.

**B.**      **Process and Payment of Expedited Distributions**.  Pursuant to a form of notice with an election option to be developed by the Settlement Trustee with the approval of the STAC and Future Claimants' Representative, Direct Abuse Claimants that filed a Chapter 11 POC will have the opportunity to elect to receive an Expedited Distribution, provided, that any such election will be subject to the requirements set forth in Section VI.A above and provided further that any Expedited Distribution Election must be made prior to, and in lieu of, the submission of a Trust Claim Submission (as defined below).  Direct Abuse Claimants who have properly made the Expedited Distribution Election and who met the criteria set forth in Article VI.A(ii) and (iii) above, shall be entitled to receive their Expedited Payment upon executing an appropriate release, which will include a release of the Settlement Trust, the Protected Parties, and all Chartered Organizations.  The form of release agreement that a Direct Abuse Claimant who makes the Expedited Distribution Election must execute is attached as **Exhibit A**.  A Direct Abuse Claimant who does not make the Expedited Distribution Election and a Future Abuse Claimant who does not elect to receive the Expedited Distribution in accordance with the deadlines and procedures established by the Settlement Trust may not later elect to receive the Expedited Distribution.  A Direct Abuse Claimant who makes the Expedited Distribution Election (or Future Abuse Claimant who elects to receive the Expedited Distribution) shall have no other remedies with respect to any Direct Abuse Claim he or she has against the Settlement Trust, Protected Parties, Chartered Organizations, or any Non-Settling Insurance Company.  Direct Abuse Claimants that make the Expedited Distribution Election (or Future Abuse Claimant who elects to receive the Expedited Distribution) will not be eligible to receive any further distribution on account of their Direct Abuse Claim pursuant to these TDP.

## ARTICLE VII
## CLAIMS ALLOWANCE PROCESS

**A.**      **Trust Claim Submissions**.  Each Abuse Claimant that does not make the Expedited Distribution Election and instead elects to pursue recovery from the Settlement Trust

pursuant to these TDP must submit his or her Abuse Claim for allowance and potential valuation and determination of insurance status by the Settlement Trustee pursuant to the requirements set forth herein (each, a "**Trust Claim Submission**").  In order to properly make a Trust Claim Submission, each submitting Abuse Claimant must (i) complete under oath a questionnaire to be developed by the Settlement Trustee and submitted to the STAC and the Future Claimants' Representative for approval; (ii) produce all records and documents in his or her possession, custody or control related to the Abuse Claim, including all documents pertaining to all settlements, awards, or contributions already received or that are expected to be received from a Protected Party or other sources; and (iii) execute an agreement to be provided or made available by the Settlement Trust with the questionnaire (1) to produce any further records and documents in his or her possession, custody or control related to the Abuse Claim reasonably requested by the Settlement Trustee, (2) consent to and agree to cooperate in any examinations requested by the Settlement Trustee (including by healthcare professionals selected by the Settlement Trustee) (a "**Trustee Interview**"); and (3) consent to and agree to cooperate in a written and/or oral examination under oath if requested to do so by the Settlement Trustee.  The date on which an Abuse Claimant submits (i), (ii) and (iii) above to the Settlement Trust shall be the "**Trust Claim Submission Date**".  The Abuse Claimant's breach or failure to comply with the terms of his or her agreement made in connection with his or her Trust Claim Submission shall be grounds for disallowance or significant reduction of his or her Abuse Claim.  To complete the evaluation of each Abuse Claim submitted through a Trust Claim Submission (each a "**Submitted Abuse Claim**"), the Settlement Trustee also may, but is not required to, obtain additional evidence from the Abuse Claimant or from other parties pursuant to the Document Obligations and shall consider supplemental information timely provided by the Abuse Claimant, including information obtained pursuant to the Document Obligations.  Non-material changes to the claims questionnaire may be made by the Settlement Trustee with the consent of the STAC and the Future Claimants' Representative.

B.    **Claims Evaluation**.  The Settlement Trustee shall evaluate each Trust Claim Submission individually and will follow the uniform procedures and guidelines set forth below to determine, based on the evidence obtained by the Settlement Trust, whether or not a Submitted Abuse Claim should be allowed.  After a review of the documentation provided by the Abuse Claimant in his or her Proof of Claim, Trust Claim Submission, materials received pursuant to the Document Obligations, and any follow-up materials or examinations (including, without limitation, any Trustee Interview), the Settlement Trustee will either find the Abuse Claim to be legally valid and an Allowed Abuse Claim, or legally invalid and a Disallowed Claim.

C.    **Settlement Trustee Review Procedures**.  The Settlement Trustee must evaluate each Submitted Abuse Claim, including the underlying Proof of Claim, the Trust Claim Submission and/or the Trustee Interview or any other follow-up, and documents obtained through the Document Obligations, and determine whether such Claim is a legally valid Allowed Abuse Claim, based on the following criteria:

1.    **Initial Evaluation Criteria**.  The Settlement Trustee shall perform an initial evaluation (the "**Initial Evaluation**") of a Submitted Abuse Claim to determine whether:

   (a)    the Abuse Claimant's Proof of Claim or Trust Claim Submission is substantially and substantively completed and signed under penalty of perjury;

   (b)    the Direct Abuse Claim was timely submitted to the Settlement Trust under Article IV.A; and

   (c)    the Submitted Abuse Claim had not previously been resolved by litigation and/or settlement involving a Protected Party.

   If any of these criteria are not met, then the Submitted Abuse Claim shall be a Disallowed Claim.

2.    **General Criteria for Evaluating Submitted Abuse Claims**.  To the extent a Submitted Abuse Claim is not disallowed based on the Initial Evaluation, then the Settlement Trustee will evaluate the following factors to determine if the evidence related to the Submitted Abuse Claim is credible and demonstrates, by a preponderance of the evidence, that the Submitted Abuse Claim is entitled to a recovery and should be allowed (the "**General Criteria**"):

   (a)    Alleged Abuse.  The Abuse Claimant has identified alleged acts of Abuse that he or she suffered;

   (b)    Alleged Abuser Identification.  The Abuse Claimant has either (i) identified an alleged abuser (*e.g.*, by the full name or last name) or (ii) provided specific information (*e.g.*, a physical description of an alleged abuser combined with the name or location of the Abuse Claimant's troop) about the alleged abuser such that the Settlement Trustee can make a reasonable determination that the alleged abuser was an employee, agent or volunteer of a Protected Party, the alleged abuser was a registered Scout, or the alleged abuser participated in Scouting or a Scouting activity and the Abuse was directly related to Scouting activities;

   (c)    Connection to Scouting.  The Abuse Claimant has provided information showing (or the Settlement Trustee otherwise determines) that the Abuse Claimant was abused during a Scouting activity or that the Abuse resulted from involvement in Scouting activities;

11

(d)    <u>Date and Age</u>.  The Abuse Claimant has either:  (i) identified the date of the alleged abuse and/or his or her age at the time of the alleged Abuse, or (ii) provided additional facts (*e.g.*, the approximate date and/or age at the time of alleged Abuse coupled with the names of additional scouts or leaders in the troop) sufficient for the Settlement Trustee to determine the date of the alleged Abuse and age of the Abuse Claimant at the time of such alleged Abuse; and

(e)    <u>Location of Abuse</u>.  The Abuse Claimant has identified the venue or location of the alleged Abuse.

**3.**    **<u>Submitted Abuse Claims That Satisfy the General Criteria</u>**.  To the extent that a Submitted Abuse Claim meets the evidentiary standard set forth in the General Criteria and the Settlement Trustee has verified such information and determined that no materials submitted or information received in connection with the Submitted Abuse Claim are deceptive or fraudulent, the Submitted Abuse Claim will be, and will be deemed to be, an Allowed Abuse Claim.

**4**.    **<u>Submitted Abuse Claims That Do Not Satisfy the General Criteria</u>**.  If the Settlement Trustee determines that any Submitted Abuse Claim materials provided by an Abuse Claimant include fraudulent and/or deceptive information, the Submitted Abuse Claim will be, and will be deemed to be, a Disallowed Claim.  To the extent that a Submitted Abuse Claim – after an opportunity for the Abuse Claimant to discover information from the Settlement Trust as provided in these TDP – does not meet the evidentiary standard set forth in the General Criteria, the Settlement Trustee can disallow such Claim, or request further information from the Abuse Claimant in question necessary to satisfy the General Criteria requirements.  If the Settlement Trustee finds that any of the factors set forth in Article VII.C.2(a)-(c) with respect to any Submitted Abuse Claim are not satisfied, the Claim will be *per se* disallowed and will be, and will be deemed to be, a Disallowed Claim.

**D.**    **<u>Disallowed Claims</u>**.  If the Settlement Trustee finds that a Submitted Abuse Claim is a Disallowed Claim, the Settlement Trustee shall provide written notice of its determination to the relevant Abuse Claimant (a "**Disallowed Claim Notice**").  If the Settlement Trustee finds that a Submitted Abuse Claim is a Disallowed Claim, the Settlement Trustee will not perform the Allowed Abuse Claim valuation analysis described below in Article VIII.  Abuse Claimants shall have the ability to seek reconsideration of the Settlement Trustee's determination set forth in the Disallowed Claim Notice as described in Article VII.G below.

**E.**     **Allowed Abuse Claims**.  If the Settlement Trustee finds that a Submitted Abuse Claim is an Allowed Abuse Claim, the Settlement Trustee shall utilize the procedures described below in Article VIII to determine the proposed Claims Matrix tier and Scaling Factors for such Abuse Claim (the "**Proposed Allowed Claim Amount**"), and provide written notice of allowance and the Proposed Allowed Claim Amount to the Abuse Claimant (an "**Allowed Claim Notice**" and together with the Disallowed Claim Notice, a "**Claim Notice**") as set forth in Article VII.F below.

**F.**     **Claims Determination**.  If the Abuse Claimant accepts the Proposed Allowed Claim Amount in the Allowed Claim Notice or the reconsideration process set forth below in Article VII.G has been exhausted (and no further action has been taken by the Abuse Claimant in the tort system pursuant to Article XII below), the Proposed Allowed Claim Amount shall become the Allowed Claim Amount for such Claim (a "**Final Determination**"), and the holder of such Allowed Abuse Claim shall receive payment in accordance with Article IX, subject to the Abuse Claimant executing the form of release set forth in Article IX.D.

**G.**     **Reconsideration of Settlement Trustee's Determination**.  An Abuse Claimant may make a request for reconsideration of (i) the disallowance of his or her Submitted Abuse Claim, or (ii) the Proposed Allowed Claim Amount (a "**Reconsideration Request**") within thirty (30) days of receiving a Disallowed Claim Notice or an Allowed Claim Notice (the "**Reconsideration Deadline**").  Any Abuse Claimant who fails to submit a Reconsideration Request to the Settlement Trust by the Reconsideration Deadline shall be deemed to accept the disallowance of the Abuse Claim or the Proposed Allowed Claim Amount.  Each Reconsideration Request must be accompanied by a check or money order for $1,000 as an administrative fee for reconsideration.  The Abuse Claimant may submit further evidence in support of the Submitted Abuse Claim with the Reconsideration Request.  The Settlement Trustee will have sole discretion whether to grant the Reconsideration Request.  The decision to grant the Reconsideration Request does not guarantee that the Settlement Trustee will reach a different result after reconsideration.

If the Reconsideration Request is denied, the administrative fee will not be returned, and the Settlement Trustee will notify the Abuse Claimant within thirty (30) days of receiving the request that it will not reconsider the Abuse Claimant's Submitted Abuse Claim.  The Abuse Claimant shall retain the ability to pursue the Settlement Trust in the tort system as described in Article XII below.

If the Reconsideration Request is granted, the Settlement Trustee will provide the Abuse Claimant written notice within thirty (30) days of receiving the Reconsideration Request that it is reconsidering the Abuse Claimant's Submitted Abuse Claim.  The Settlement Trustee will then reconsider the Submitted Abuse Claim—including all new information provided by the Abuse Claimant in the Reconsideration Request and any additional Trustee Interview—and will have the discretion to maintain the prior determination or find that the Submitted Abuse Claim in question is an Allowed Abuse Claim or should receive a new Proposed Allowed Claim Amount.

13

If the Settlement Trustee determines upon reconsideration that a Submitted Abuse Claim is an Allowed Abuse Claim and/or should receive a new Proposed Allowed Claim Amount, the Settlement Trustee will deliver an Allowed Claim Notice and return the administrative fee to the relevant Abuse Claimant.  If the Settlement Trustee determines upon reconsideration that the totality of the evidence submitted by the Abuse Claimant does not support changing the earlier finding that the Submitted Abuse Claim is a Disallowed Claim, or that the Claim in question is not deserving of a new Proposed Allowed Claim Amount, the Settlement Trustee's earlier allowance determination and/or Proposed Allowed Claim Amount shall stand and the Settlement Trustee will provide a Claim Notice to the Abuse Claimant of either result within ninety (90) days of the Settlement Trust having sent notice that it was reconsidering the Abuse Claimant's Submitted Abuse Claim.  Thereafter, the Abuse Claimant shall retain the ability to pursue the Settlement Trust in the tort system as described below in Article XII.

**H.**    **Claim Determination Deferral**.  For a period of up to twelve (12) months from the Effective Date, and by an election exercised at the time of the Trust Claim Submission, Direct Abuse Claimants whose Direct Abuse Claims may be substantially reduced by the Scaling Factor described below in Article VIII.E.(iii) (statute of limitations defense) may elect to defer the determination of their Proposed Allowed Claim Amounts to see if statute of limitations revival legislation occurs, *provided*, *however*, that this claim determination deferral window shall close for all Direct Abuse Claims twelve (12) months from the Effective Date at which time such Submitted Abuse Claims shall be determined based on then applicable Scaling Factors.

**I.**    **Prevention and Detection of Fraud**.  The Settlement Trustee shall work with the Claims Administrator to institute auditing and other procedures to detect and prevent the allowance of Abuse Claims based on fraudulent Trust Claim Submissions.  Among other things, such procedures will permit the Settlement Trustee or Claims Auditor to conduct random audits to verify supporting documentation submitted in randomly selected Trust Claim Submissions, as well as targeted audits of individual Trust Claim Submissions or groups of Trust Claim Submissions, any of which may include Trustee Interviews.  Trust Claim Submissions must be signed under the pains and penalties of perjury and to the extent of applicable law, the submission of a fraudulent Trust Claim Submission may violate the criminal laws of the United States, including the criminal provisions applicable to Bankruptcy Crimes, 18 U.S.C. § 152, and may subject those responsible to criminal prosecution in the Federal Courts.

### ARTICLE VIII
### CLAIMS MATRIX AND SCALING FACTORS

**A.**    **Claims Matrix and Scaling Factors**.  These TDP establish certain criteria for unliquidated claims seeking compensation from the Settlement Trust, a claims matrix below (the "**Claims Matrix**") that schedules six types of Abuse (the "**Abuse Types**") and designates for each Abuse Type a Base Matrix Value, and Maximum Matrix Value, and certain scaling factors (the "**Scaling Factors**") identified below to apply to the Base Matrix Values to determine the liquidated values for certain unliquidated Abuse Claims.  The Abuse Types, Scaling Factors, Base Matrix Values, and Maximum Matrix Values that are set forth in the Claims Matrix have all been

14

selected and derived with the intention of achieving a fair and reasonable Abuse Claim valuation range in light of the best available information, considering the settlement, verdict and/or judgments that Abuse Claimants would receive in the tort system against the Protected Parties absent the bankruptcy. The Settlement Trustee shall utilize the Claims Matrix and Scaling Factors as the basis to determine a Proposed Allowed Claim Amount for each Allowed Abuse Claim that does not receive an Expedited Distribution or become a STAC Tort Election Claim. The Proposed Allowed Claim Amount agreed to by the Direct Abuse Claimant as the Allowed Claim Amount for an Allowed Abuse Claim shall be deemed to be the Protected Parties' liability for such Direct Abuse Claim (*i.e.*, the claimant's right to payment for his or her Direct Abuse Claim), irrespective of how much the holder of such Abuse Claim actually receives from the Settlement Trust pursuant to the payment provisions set forth in Article IX. In no circumstance shall the amount of a Protected Party's legal obligation to pay any Direct Abuse Claim be determined to be any payment percentages hereunder or under the Settlement Trust Agreement (rather than the liquidated value of such Direct Abuse Claim as determined under the TDP).

B.    **Claims Matrix**. The Claims Matrix establishes six tiers of Abuse Types, and provides the range of potential Allowed Claim Amounts assignable to an Allowed Abuse Claim in each tier. The first two columns of the Claims Matrix delineate the six possible tiers to which an Allowed Abuse Claim can be assigned based on the nature of the abuse. The Base Matrix value column for each tier represents the default Allowed Claim Amount for an Allowed Abuse Claim assigned to a given tier, in each case based on historical abuse settlements and litigation outcomes which included release for all BSA-related parties, including the BSA and all other putative Protected Parties to such actions, prior to application of the Scaling Factors described in Article VIII.D (the "**Base Matrix Value**"). The maximum Claims Matrix value column for each tier represents the maximum Allowed Claim Amount for an Allowed Abuse Claim assigned to a given tier after Claims Matrix review and application of the Scaling Factors described in Article VIII.C (the "**Maximum Matrix Value**"). The ultimate distribution(s) to the holder of an Allowed Abuse Claim that has received a Final Determination may vary upward (in the case of a larger-than-expected Settlement Trust corpus) or downward (in the case of a smaller-than-expected Settlement Trust corpus) from the holder's Allowed Claim Amount based on the payment percentages determined by the Settlement Trustee. If an Allowed Abuse Claim would fall into more than one tier, it will be placed in the highest applicable tier. An Abuse Claimant cannot have multiple Allowed Abuse Claims assigned to different tiers. Commencing on the second anniversary of the Effective Date, the Settlement Trust shall adjust the valuation amounts for yearly inflation based on the CPI-U. The CPI-U adjustment may not exceed 3% annually, and the first adjustment shall not be cumulative.

| Tier | Type of Abuse | Base Matrix Value | Maximum Matrix Value |
|------|---------------|-------------------|----------------------|
| 1 | Anal or Vaginal Penetration by Adult Perpetrator—includes anal or vaginal sexual intercourse, anal or vaginal digital penetration, | $600,000 | $2,700,000 |

15

| | | | |
|---|---|---|---|
| | or anal or vaginal penetration with a foreign, inanimate object. | | |
| 2 | Oral Contact by Adult Perpetrator—includes oral sexual intercourse, which means contact between the mouth and penis, the mouth and anus, or the mouth and vulva or vagina.<br><br>Anal or Vaginal Penetration by a Youth Perpetrator—includes anal or vaginal sexual intercourse, anal or vaginal digital penetration, or anal or vaginal penetration with a foreign, inanimate object. | $450,000 | $2,025,000 |
| 3 | Masturbation by Adult Perpetrator—includes touching of the male or female genitals that involves masturbation of the abuser or claimant.<br><br>Oral Contact by a Youth Perpetrator—includes oral sexual intercourse, which means contact between the mouth and penis, the mouth and anus, or the mouth and vulva or vagina. | $300,000 | $1,350,000 |
| 4 | Masturbation by Youth Perpetrator—includes touching of the male or female genitals that involves masturbation of the abuser or claimant.<br><br>Touching of the Sexual or Other Intimate Parts (unclothed) by Adult Perpetrator. | $150,000 | $675,000 |
| 5 | Touching of the Sexual or Other Intimate Parts (unclothed) by a Youth Perpetrator.<br><br>Touching of the Sexual or Other Intimate Parts (clothed), regardless of who is touching whom and not including masturbation.<br><br>Exploitation for child pornography. | $75,000 | $337,500 |
| 6 | Sexual Abuse-No Touching.<br><br>Adult Abuse Claims. | $3,500 | $8,500 |

     **C.**    **Scaling Factors**.  After the Settlement Trustee has assigned an Allowed Abuse Claim to one of the six tiers in the Claims Matrix, the Settlement Trustee will utilize the Scaling Factors described below to determine the Proposed Allowed Claim Amount for each Allowed Abuse Claim.  The Scaling Factors are based on evidence regarding the BSA's and other putative

16

Protected Parties' historical abuse settlements, litigation outcomes, and other evidence supporting the Scaling Factors. Each Allowed Abuse Claim will be evaluated for each factor by the Settlement Trustee through his or her review of the evidence obtained through the relevant Proof of Claim, Trust Claim Submission and any related or follow-up materials, interviews or examinations, as well as materials obtained by the Settlement Trust through the Document Obligations. These scaling factors can increase or decrease the Proposed Allowed Claim Amount for an Allowed Abuse Claim depending on the severity of the facts underlying the Claim. By default, the value of each scaling factor is one (1), meaning that in the absence of the application of the scaling factor, the Base Matrix Value assigned to a Claim is not affected by that factor. In contrast, if the Settlement Trustee determines that a particular scaling factor as applied to a given Allowed Abuse Claim is 1.5, the Proposed Allowed Claim Amount for the Allowed Abuse Claim will be increased by 50%, the result of multiplying the Base Matrix Value of the Allowed Abuse Claim by 1.5. The combined effect of all scaling factors is determined by multiplying the scaling factors together then multiplying the result by the Base Matrix Value of the Allowed Abuse Claim. *See* Article VIII.F for illustrative example.

    **D.**    **Aggravating Scaling Factors**. The Settlement Trustee may assign upward Scaling Factors to each Allowed Abuse Claim based on the following categories:

    (i)    **Nature of Abuse and Circumstances**. To account for particularly severe Abuse or aggravating circumstances, the Settlement Trustee may assign an upward Scaling Factor of up to 1.5 to each Allowed Abuse Claim. The hypothetical base case scenario for this scaling factor would involve a single incident of Abuse with a single perpetrator with such perpetrator having accessed the victim as an employee or volunteer within BSA-sponsored scouting. The hypothetical base case is incorporated into the Base Matrix Value in the Claims Matrix' tiers and would not receive an increase on account of this factor. By way of example, aggravating factors that can give rise to a higher scaling factor include the following factors:

    a.    Extended duration and/or frequency of the Abuse;

    b.    Exploitation of the Abuse Claimant for child pornography;

    c.    Coercion or threat or use of force or violence, stalking; and

    d.    Multiple perpetrators involved in sexual misconduct.

    (ii)    **Abuser Profile**. To account for the alleged abuser's profile, the Settlement Trustee may assign an upward Scaling Factor of up to 2.0 to an Allowed Abuse Claim. This factor is to be evaluated relative to a hypothetical base case scenario involving a perpetrator as to whom there is no other known allegations of Abuse. The hypothetical base case is incorporated into the Base Matrix Value in the Claims Matrix' tiers and would not receive an increase on account of this factor. An upward Scaling Factor may be applied for this category as follows (the Settlement

17

Trustee may only apply the scaling factor of the single highest applicable category listed below):

a.   1.25 if the abuser was accused by at least one (1) other alleged victim of Abuse;

b.   1.5 if the abuser was accused by five (5) or more other alleged victims of Abuse;

c.   2.0 if the abuser was accused by ten (10) or more other alleged victims of Abuse; and

d.   1.25 to 2.0 if there is evidence of negligence of a Protected Party (*e.g.*, the inclusion of the perpetrator in the IV files (Volunteer Screening Database) for abuse reasons).

(iii)   **Impact of the Abuse**.  To account for the impact of the alleged Abuse on the Abuse Claimant's mental health, physical health, inter-personal relationships, vocational capacity or success, academic capacity or success, and whether the alleged Abuse at issue resulted in legal difficulties for the Abuse Claimant, the Settlement Trustee may assign an upward Scaling Factor of up to 1.5.  This factor is to be evaluated relative to a hypothetical base case scenario of a victim of Abuse who suffered the typical level of Abuse-related distress within the tier to which the Allowed Abuse Claim was assigned.  The hypothetical base case is incorporated into the Base Matrix Values in the Claims Matrix' tiers and would not receive an increase on account of this factor.  The Settlement Trustee will consider, along with any and all other relevant factors, whether the Abuse at issue manifested or otherwise led the Abuse Claimant to experience or engage in behaviors resulting from:

a.   <u>Mental Health Issues</u>:  This includes anxiety, depression, post-traumatic stress disorder, substance abuse, addiction, embarrassment, fear, flashbacks, nightmares, sleep issues, sleep disturbances, exaggerated startle response, boundary issues, self-destructive behaviors, guilt, grief, homophobia, hostility, humiliation, anger, isolation, hollowness, regret, shame, isolation, sexual addiction, sexual problems, sexual identity confusion, low self-esteem or self-image, bitterness, suicidal ideation, suicide attempts, and hospitalization or receipt of treatment for any of the foregoing.

b.   <u>Physical Health Issues</u>:  This includes physical manifestations of emotional distress, gastrointestinal issues, headaches, high blood pressure, physical manifestations of anxiety, erectile dysfunction, heart palpitations, sexually-transmitted diseases, physical damage caused by acts of Abuse, reproductive damage, self-cutting, other self-injurious behavior, and hospitalization or receipt of treatment for any of the foregoing.

18

c.    <u>Interpersonal Relationships</u>:  This includes problems with authority figures, hypervigilance, sexual problems, marital difficulties, problems with intimacy, lack of trust, isolation, betrayal, impaired relations, secrecy, social discreditation and isolation, damage to family relationships, and fear of children or parenting.

d.    <u>Vocational Capacity</u>:  This includes under- and un-employment, difficulty with authority figures, difficulty changing and maintaining employment, feelings of unworthiness, or guilt related to financial success.

e.    <u>Academic Capacity</u>:  This includes school behavior problems.

f.    <u>Legal Difficulties</u>:  This includes criminal difficulties, bankruptcy, and fraud.

**E.**    **<u>Mitigating Scaling Factors</u>**.  The Settlement Trustee may assign a mitigating Scaling Factor in the range of 0 to 1.0 except as specifically provided below to each Allowed Abuse Claim to eliminate or decrease the Proposed Allowed Claim Amount for such Claim.  Each mitigating factor is to be evaluated relative to a hypothetical base case scenario of a timely asserted Abuse Claim with supporting evidence that demonstrates, by a preponderance of the evidence, Abuse by a perpetrator that accessed the victim as an employee, agent or volunteer of a Protected Party, as a registered Scout or as a participant in Scouting within BSA-sponsored Scouting.  If statute of limitations revival legislation occurs in a particular jurisdiction, the Settlement Trustee may modify the applicable Scaling Factor (as described below) relevant thereto on a go-forward basis and determine Proposed Allowed Claim Amounts for Abuse Claims in such jurisdiction thereafter based on such modified Scaling Factor.  Included in the hypothetical base case scenario is that the applicable period under a statute of limitations or repose for timely asserting such Abuse Claim against any potentially responsible party will not have passed.  The hypothetical base case is incorporated into the Base Matrix Values in the Claims Matrix tiers and would not receive a decrease on account of these factors.  Such factors may include the following:

(i)    **Absence of Protected Party Relationship or Presence of a Responsible Party that Is Not a Protected Party**.

a.    <u>Familial Relationship</u>.  A Protected Party's responsibility for a perpetrator may be factually or legally attenuated or mitigated where the perpetrator also had a familial relationship with the Abuse Claimant.  Familial Abuse— even if the perpetrator was an employee, agent or volunteer of a Protected Party, and the Abuse occurred in connection with BSA-related Scouting— should result in a significant reduction of the Proposed Allowed Claim Amount.

b.    <u>Other Non-Scouting Relationship</u>.  A Protected Party's responsibility for a perpetrator may be factually or legally attenuated or mitigated where the perpetrator also maintained a non-familial relationship with the Abuse

19

Claimant through a separate affiliation, such as a school, or a religious organization, even if the perpetrator was an employee, agent or volunteer of a Protected Party, or the Abuse occurred in settings where a Protected Party did not have the ability or responsibility to exercise control. Factors to consider include how close the relationship was between the perpetrator and the victim outside of their Scouting-related relationship, whether Abuse occurred and the extent of such Abuse outside of their Scouting relationship, and applicable law related to apportionment of liability. In such event, the Settlement Trustee shall determine and apply a mitigating Scaling Factor that accounts for such other relationship and the related Abuse. By way of example, if the Settlement Trustee determines after evaluation of an Allowed Abuse Claim and application of all of the other Scaling Factors that the perpetrator, who was an employee, agent or volunteer of a Protected Party for BSA-related Scouting, also was the primary teacher (at a non-Protected Party entity or institution) of the Abuse Claimant outside of BSA-related Scouting, and if numerous incidents of Abuse occurred outside of Scouting before one incident of BSA-related Scouting Abuse occurred, the Settlement Trustee shall apply a mitigating Scaling Factor as a material reduction of the Proposed Allowed Claim Amount.

c.    <u>Other Responsible Non-Protected Party</u>. The Abuse Claimant may have a cause of action under applicable law for a portion of his or her Direct Abuse Claim against a responsible entity, such as a Chartered Organization, that is not a Protected Party. By way of example, if the Settlement Trustee determines after evaluation of a Submitted Abuse Claim that (i) a Chartered Organization that is not a Protected Party is responsible under applicable law for a portion of the liability and (ii) a Protected Party(ies) are not also liable for the same portion of the liability) (taking into account the relevant jurisdiction's prevailing law on apportionment of damages), the Settlement Trustee shall apply a final Scaling Factor to account for such non-Protected Party's portion of the liability.

(ii)    **Other Settlements, Awards, Contributions, or Limitations**. The Settlement Trustee may consider any further limitations on the Abuse Claimant's recovery in the tort system. The Settlement Trustee also should consider the amounts of any settlements or awards already received by the Abuse Claimant from other, non-Protected Party sources as well as agreed and reasonably likely to be received contributions from other, non-Protected Party sources that are related to the Abuse. By way of example, the Settlement Trustee should assign an appropriate Scaling Factor to Allowed Abuse Claims capped by charitable immunity under the laws of the jurisdiction where the Abuse occurred. Notwithstanding the foregoing, where an Abuse Claimant has obtained a recovery based on the independent liability of a third party for separate instances of Abuse that occurred without connection to

20

Scouting activities, no mitigating factor or reduction in value will be applied based on that recovery.

(iii) **Statute of Limitations or Repose**. If the evidence provided by the Abuse Claimant or otherwise obtained by the Settlement Trustee results in the Settlement Trustee concluding that the subject Direct Abuse Claim could be dismissed or denied in the tort system as to all Protected Parties against whom the Direct Abuse Claim was timely submitted (as set forth in Articles IV.A) due to the passage of a statute of limitations or a statute of repose, the Settlement Trustee shall apply an appropriate Scaling Factor based on the ranges set forth in Schedule 1 hereof; *provided*, *however,* the Settlement Trustee will weigh the strength of any relevant evidence submitted by the Abuse Claimant to determine whether the statute of limitations could be tolled under applicable law, and may apply a higher Scaling Factor if such evidence demonstrates to the Settlement Trustee that tolling would be appropriate under applicable state law.

(iv) **Absence of a Putative Defendant.** If the Direct Abuse Claim could be diminished because such claim was not timely submitted against BSA or another Protected Party (as set forth in Articles IV.A) (a "**Missing Party**"), such that in a suit in the tort system, such Direct Abuse Claim would be burdened by an "empty chair" defense due to the absence of a Missing Party(ies), the Settlement Trustee shall apply a mitigating Scaling Factor to account for a Missing Party's absence. By way of example, where a timely submitted Direct Abuse Claim was not timely submitted against BSA (*i.e.*, the Abuse Claimant failed to timely file a Chapter 11 POC) but was only timely submitted against the Local Council and/or another Protected Party (as set forth in Articles IV.A(ii) and (iii)), such absence of the BSA due to BSA's discharge would be the basis for such a substantial reduction. Any Direct Abuse Claim that is reduced due to the absence of the BSA under this mitigating Scaling Factor shall only be payable, as reduced, from Settlement Trust Assets contributed by the applicable Local Council or Chartered Organization, pro rata with all other Direct Abuse entitled to share in the Settlement Trust Assets contributed by such Local Council or Chartered Organization.

**F.**    **Allowed Abuse Claim Calculus**. After the Settlement Trustee assigns an Allowed Abuse Claim to a Claims Matrix tier and determines the appropriate Scaling Factors that apply to the Claim, the Proposed Allowed Claim Amount for the Allowed Abuse Claim is the product of the Base Matrix Value of the Claim and the Scaling Factors applied to the Claim. In no event can an Allowed Abuse Claim's Proposed Allowed Claim Amount (or Allowed Claim Amount) exceed the Maximum Matrix Value for the Claim's assigned Claims Matrix tier. By way of example, if an Allowed Abuse Claim is determined by the Settlement Trustee to be a tier 1 claim (Base Matrix Value of $600,000) with a Scaling Factor of 1.5 for the nature and circumstances of the abuse, and a mitigating Scaling Factor of 0.75, and no other Scaling Factors, the Proposed Allowed Claim Amount for the Allowed Abuse Claim would be $675,000, calculated as $600,000 x 1.5 x 0.75 = $675,000. As a further example, if, in addition to the above Scaling Factors, the same Allowed

Abuse Claim had an additional aggravating Scaling Factor of 2.0 on account of the abuser's profile, the Proposed Allowed Claim Amount for the Allowed Abuse Claim would be $1,350,000 (calculated as $600,000 x 1.5 x .75 x 2.0).

**G.** **Optional Chartered Organization Release**.    To have the opportunity to exclusively share in any settlement proceeds received from a Chartered Organization that becomes a Protected Party as provided below in Article IX.F, a Direct Abuse Claimant must execute either (i) the conditional release of the Charitable Organization(s) against whom the Abuse Claimant has an Abuse Claim, that will become effective as to that Abuse Claimant if the Charitable Organization(s) against whom the Abuse Claimant conditionally released becomes a Protected Party(ies), in the form attached as **Exhibit B** (the "**Settling Chartered Organizations Release**"), or (ii) the non-conditional release of all Chartered Organizations in the form attached as **Exhibit C** (the "**Voluntary Chartered Organization Release**").

**ARTICLE IX**
**PAYMENT OF FINAL DETERMINATION ALLOWED ABUSE CLAIM**

**A.** **Payment Upon Final Determination**.    Only after the Settlement Trustee has established an Initial Payment Percentage in accordance with Section 4.1 of the Settlement Trust Agreement, then once there is a Final Determination of an Abuse Claim pursuant to Article VII.F, the Claimant will receive a payment of such Final Determination based on the Payment Percentage then in effect as described in Article IX.B and IX.C.  For the purpose of payment by the Settlement Trust, a Final Judicial Determination (as defined in Article XII.H hereof) shall constitute a Final Determination.

**B.** **Initial Payment Percentage**.    After the Claimant accepts the Proposed Allowed Claim Amount and there is a Final Determination of the Abuse Claim, the Settlement Trust shall pay an initial distribution ("**Initial Distribution**") based on the Initial Payment Percentage established by the Settlement Trustee in accordance with the Settlement Trust Agreement.

**C.** **Supplemental Payment Percentage**.    When the Settlement Trustee determines that the then-current estimates of the Settlement Trust's assets and its liabilities, as well as then-estimated value of then-pending Abuse Claims, warrant additional distributions on account of the Final Determinations, the Settlement Trustee shall set a Supplemental Payment Percentage in accordance with the Settlement Trust Agreement.  Such Supplemental Payment Percentages shall be applied to all Final Determinations that became final prior to the establishment of such Supplemental Payment Percentage.    Claimants whose Abuse Claim becomes a Final Determination after a Supplemental Payment Percentage is set shall receive an Initial Distribution equal to the then existing payment percentage.  For the avoidance of doubt, the Allowed Claim Amount of each Allowed Abuse Claim after Final Determination shall be deemed to be the Protected Parties' liability for such Allowed Abuse Claim irrespective of how much the holder of such Abuse Claim actually receives from the Settlement Trust pursuant to the payment provisions set forth in this Article IX.  For example if the Allowed Claim Amount for an Allowed Abuse Claim that has received a Final Determination is $1,350,000, even if the Settlement Trust

22

distributes less than $1,350,000 to the Abuse Claimant on account of such Allowed Abuse Claim based on application of the Initial Payment Percentage and any Subsequent Payment Percentage(s), the Allowed Claim Amount for the Abuse Claim is still $1,350,000.

**D.**     **Release**.  In order for an Allowed Abuse Claim to receive a Final Determination and for the relevant Abuse Claimant to receive any payment from the Settlement Trust, the Abuse Claimant must submit, as a precondition to receiving any payment from the Settlement Trust, an executed form of release to be developed, in each case, by the Coalition and the Future Claimants' Representative, in consultation with BSA (which form(s) of release shall provide a full and final release, in form and substance acceptable to Hartford, of the Hartford Protected Parties in accordance with the Hartford Insurance Settlement Agreement).  The form of release agreement that a Direct Abuse Claimant who makes the Expedited Distribution Election must execute is attached as **Exhibit A** hereto.  The form of the Settling Chartered Organization Release applicable to an Abuse Claimant who has elected to provide a conditional release to certain Chartered Organizations shall be substantially in the form of **Exhibit B** hereto.  The form of the Voluntary Chartered Organization Release applicable to an Abuse Claimant who has selected a Final Determination based on the Proposed Allowed Claim Amount shall be substantially in the form of **Exhibit C** hereto.  The form of the release applicable to an Abuse Claimant who has selected a Final Determination based on the Proposed Allowed Claim Amount but who does not elect to execute the Voluntary Chartered Organization Release shall be substantially in the form of **Exhibit D** hereto.

**E.**     **FIFO Claims Process Queuing and Exigent Health Claims**.  The Settlement Trust shall review all Trust Claim Submissions for processing purposes on a FIFO basis as set forth below, except as otherwise provided herein with respect to Expedited Distributions, Exigent Health Claims, or Submitted Abuse Claims electing to defer determination of their Allowed Claim Amounts for up to twelve (12) months from the Effective Date pursuant to Article VII.H above. An Abuse Claimant's position in the FIFO Processing Queue shall be determined as of the Abuse Claimant's Trust Claim Submission Date.  If any Trust Claim Submissions are filed on the same date, an Abuse Claimant's position in the applicable FIFO Processing Queue vis-à-vis such other same-day claims shall be determined by the claimant's date of birth, with older Abuse Claimants given priority over younger Abuse Claimants.  An Abuse Claimant that seeks recovery on account of an Exigent Health Claim based on an Allowed Claim Amount determined through the matrix shall be moved in front of the FIFO Processing Queue no matter what the order of processing otherwise would have been under these TDP.  Following receipt of a Final Determination on account of an Exigent Health Claim, the holder of an Exigent Health Claim shall receive an Initial Distribution from the Settlement Trust (subject to the payment percentages then in effect), within thirty (30) days of executing the release as set forth in Article IX.D above.

**F.**     **Source Affected Weighting**.  Notwithstanding the Initial Payment Percentage and the Supplemental Payment Percentages applied hereunder, Non-BSA Sourced Assets shall be allocated (after deducting an estimated pro rata share of Settlement Trust expenses and direct expenses related to the collection of such Non-BSA Sourced Assets) all or in part (the "Source Allocated Portion") only among the holders of Allowed Abuse Claims that (1) could have been

satisfied from the source of such Non-BSA Assets absent the Plan's Discharge and Channeling Injunction and (2) are held by Direct Abuse Claimants that execute a conditional release, the form of which is attached as **Exhibit B**, releasing all claims against all Chartered Organizations if the Settlement Trust enters into a global settlement making such Chartered Organization a Protected Party. The Settlement Trustee shall establish separate payment percentages (each, a "Source Allocated Payment Percentage") in accordance with the Settlement Trust Agreement to effectuate the distribution of the Source Allocated Portions of any Non-BSA Sourced Assets. For the avoidance of doubt, irrespective of the establishment of any Source Allocated Payment Percentage under this Article IX.F and the Settlement Trust Agreement that allocates Source Allocated Portions of Non-BSA Assets to holders of certain eligible Allowed Abuse Claims, the maximum payment that an Abuse Claimant can recover from the Settlement Trust before all other Allowed Abuse Claims are paid in full is the Final Determination Allowed Abuse Claim Amount for his or her Claim. If there is a remainder of a Source Allocated Portion after satisfaction of all holders of applicable eligible Allowed Abuse Claims, then that remainder shall be distributed to all holders of Allowed Abuse Claims pursuant to the applicable payment percentage.

## ARTICLE X
## RIGHTS OF SETTLEMENT TRUST
## AGAINST NON-SETTLING INSURANCE COMPANIES

Pursuant to the Plan, the Settlement Trust has taken an assignment of BSA's and any other Protected Party's (to the extent provided for in the Plan) rights and obligations under the Insurance Policies. For any Abuse Claim that the Settlement Trustee determines is an Allowed Abuse Claim pursuant to Article VII above, the Settlement Trustee will determine, based on the relevant Trust Claim Submission and any other information submitted in connection with that submission and in the materials obtained through the Document Obligations, whether any Non-Settling Insurance Company issued coverage that is available to respond to such Claim (an "**Insured Abuse Claim**"). The Settlement Trustee may determine that multiple Non-Settling Insurance Companies have responsibility for an Insured Abuse Claim. The Settlement Trustee shall seek reimbursement for each Insured Abuse Claim that is an Insured Abuse Claim, including the Proposed Allowed Claim Amount, from the applicable Non-Settling Insurance Company(ies) pursuant to the Insurance Policies and applicable law. The Settlement Trustee shall have the ability to exercise all of the rights and interests in the Insurance Policies assigned to the Settlement Trust as set forth in the Plan, including the right to resolve any disputes with a Non-Settling Insurance Company regarding their obligation to pay some or all of an Insured Abuse Claim. The Settlement Trustee will exercise those rights consistent with their duty to preserve and maximize the assets of the Settlement Trust. The Settlement Trustee will have the ability to request further information from Abuse Claimants in connection with seeking reimbursement for Insured Abuse Claims.

## ARTICLE XI
## INDIRECT ABUSE CLAIMS

**A.**     **Indirect Abuse Claims**.    To be eligible to receive compensation from the Settlement Trust, the holder of an Indirect Abuse Claim must satisfy Article IV.B hereof. Indirect

24

Abuse Claims that become Allowed Indirect Abuse Claims shall receive distributions in accordance with Article IX hereof and shall be subject to the same liquidation and payment procedures as the Settlement Trust would have afforded the holders of the underlying valid Direct Abuse Claims pursuant to Articles VIII and IX hereof.

**B.** **Offset**.  The liquidated value of any Indirect Abuse Claim paid by the Settlement Trust shall be treated as an offset to or reduction of the full liquidated value of any related Direct Abuse Claim that might be subsequently asserted against the Settlement Trust as being against any Protected Party(ies) whose liability was paid by the Indirect Abuse Claimant.

## ARTICLE XII
## TORT SYSTEM ALTERNATIVE

**A.** **Remedies after Disallowance or Exhaustion of Claims Allowance Procedures**. Within thirty (30) days after a Direct Abuse Claimant receives an Allowed Claim Notice or Claim Notice following a Reconsideration Request in accordance with Article VII.G (the "**Tort Election Deadline**"), a Direct Abuse Claimant may notify the Settlement Trust of his or her intention to seek a *de novo* determination of its Direct Abuse Claim by a court of competent jurisdiction (a "**TDP Tort Election Claim**"), subject to the limitations set forth in this Article XII.  Such notification shall be made by submitting a written notice to the Settlement Trustee (a "**Judicial Election Notice**") by the Tort Election Deadline.  Unless the Settlement Trustee agrees to extend the Tort Election Deadline, Abuse Claimants who fail to so submit and/or file a Judicial Election Notice by the Tort Election Deadline shall be deemed to accept the disallowance of their Abuse Claims or the Proposed Abuse Claim Amounts (as applicable) and shall have no right to seek any further review of their Abuse Claims.  An Abuse Claimant that asserts a TDP Tort Election Claim may not seek costs or expenses against the Settlement Trust in the lawsuit filed and the Settlement Trust may not seek costs or expenses against the Abuse Claimant.  Any recoveries for a TDP Tort Election Claim from outside the Settlement Trust in respect of a Protected Party's liability are payable to the Settlement Trust and the Abuse Claimant shall be paid in accordance with Articles XII.G and IX hereof.

**B.** **Supporting Evidence for TDP Tort Election Claims**.  TDP Tort Election Claims in the federal courts shall be governed by the rights and obligations imposed upon parties to a contested matter under the Federal Rules of Bankruptcy Procedure, *provided*, *however*, that an Abuse Claimant that prosecutes in any court a TDP Tort Election Claim after seeking reconsideration from the Settlement Trust shall not have the right to introduce into evidence to the applicable court any information or documents that (i) were requested by the Settlement Trustee and (ii) were in the possession, custody or control of the Abuse Claimant at the time of a request by the Settlement Trust, but which the Abuse Claimant failed to or refused to provide to the Settlement Trust in connection with the claims evaluation process in these TDP.  The Abuse Claimant's responses to requests by the Settlement Trustee for documents or information shall be subject to Rule 37 of the Federal Rules of Civil Procedure, as applicable under the Federal Rules of Bankruptcy Procedure, and/or any comparable State Rule of Civil Procedure.  An Abuse Claimant shall not have the right to disclose any Proposed Abuse Claim Amount received from

the Settlement Trust to any court in connection with a Tort Election Claim. Subject to the terms of any protective order entered by a court, the Settlement Trustee shall be permitted to introduce as evidence before a court all information and documents submitted to the Settlement Trust under these TDP, and the Abuse Claimant may introduce any and all information and documents that he or she submitted to the Settlement Trust under these TDP.

**C.    Authorization of Settlement Trustee and Settlement Trust Advisory Committee**. The Settlement Trustee may authorize the commencement or continuation of a lawsuit by a Direct Abuse Claimant in any court of competent jurisdiction against the Settlement Trust to obtain the Allowed Claim Amount of a Direct Abuse Claim (a "**STAC Tort Election Claim**" and together with a TDP Tort Election Claim, "**Tort Election Claims**"). STAC Tort Election Claims shall not be required to exhaust any remedies under these TDP before commencing or continuing such lawsuit. No Abuse Claimant may pursue a STAC Tort Election Claim without the prior written approval of the Settlement Trustee in accordance with the Settlement Trust Agreement. Fifty percent (50%) (or less if determined by the Settlement Trustee) of any amounts paid with respect to a judgment for, or a settlement of, a STAC Tort Election Claim by a Non-Settling Insurance Company, as to a policy as to which a Protected Party has assigned relevant insurance rights to the Settlement Trust, shall be paid over to the Settlement Trust.

**D.    Tender to Non-Settling Insurance Company**. If an Abuse Claimant is authorized to file suit against the Settlement Trust as provided in Article XII.A and XII.C herein, the Settlement Trustee shall determine, based on the Trust Claim Submission and any other information obtained in connection with that submission and materials received in connection with the Document Obligations, whether any Non-Settling Insurance Company issued coverage that is available to respond to the lawsuit (an "**Insured Lawsuit**"). The Settlement Trustee may determine that there are multiple Non-Settling Insurance Companies that have responsibility to defend an Insured Lawsuit. The Settlement Trustee shall provide notice, and if applicable, seek defense, of any Insured Lawsuit to each Non-Settling Insurance Company from whom the Settlement Trustee determines insurance coverage may be available in accordance with the terms of each applicable Insurance Policy.

**E.    Parties to Lawsuit**. Any lawsuit commenced under Article XII of these TDP must be filed by the Abuse Claimant in his or her own right and name and not as a member or representative of a class, and no such lawsuit may be consolidated with any other lawsuit. The Abuse Claimant may assert its Abuse Claim against the Settlement Trust as if the Abuse Claimant were asserting such claim against either the Debtors or another Protected Party and the discharge and injunctions in the Plan had not been issued. The Abuse Claimant may name any person or entity that is not a Protected Party, including Non-Settling Insurance Companies to the extent permitted by applicable law. Abuse Claimants may pursue in any manner or take any action otherwise permitted by law against persons or entities that are not Protected Parties so long as they are not an additional insured or an Insurance Company as to an Insurance Policy issues to the BSA.

**F.    Defenses**. All defenses (including, with respect to the Settlement Trust, all defenses that could have been asserted by the Debtors or Protected Parties, except as otherwise provided in

26

the Plan) shall be available to both sides (which may include any Non-Settling Insurance Company) at trial.

G.    **Settlement Trust Liability for Tort Election Claims**.  An Abuse Claimant who pursues a Tort Election Claim shall have an Allowed Claim Amount equal to zero if the litigation is dismissed or claim denied.  If the matter is litigated, the Allowed Claim Amount shall be equal to the settlement or final judgment amount obtained in the tort system less any payments actually received and retained by the Abuse Claimant, *provided that*, exclusive of amounts payable pursuant to Article XII.C (in the event such amounts exceed the Maximum Matrix Value in the applicable tier set forth in the Claims Matrix), any amount of such Allowed Claim Amount for a Tort Election Claim in excess of the Maximum Matrix Value in the applicable tier set forth in the Claims Matrix shall be subordinate and junior in right for distribution from the Settlement Trust to the prior payment by the Settlement Trust in full of all Direct Abuse Claims that are Allowed Abuse Claims as liquidated under these TDP (excluding this Article XII).  By way of example, presume (1) there is an Abuse Claimant asserting tier one abuse that achieves a $5 million verdict for his or her STAC Tort Election Claim against the Settlement Trust, and (2) a Non-Settling Insurance Company pays $750,000 in coverage under a policy providing primary coverage, $375,000 of which is paid directly to the Abuse Claimant and $375,000 of which is paid over to the Settlement Trust pursuant to Article XII.C.  Although the unpaid amount of such Allowed Abuse Claim would be $4,625,000, the maximum total payment that the Abuse Claimant can recover from the Settlement Trust (before the non-subordinated portion of all other Direct Abuse Claims that are Allowed Abuse Claims are paid in full) is $2,700,000 (the Maximum Matrix Value in tier one), or an additional $2,325,000, paid pursuant to the terms of Article IX hereof.  For the avoidance of doubt, the limit on the Settlement Trust liability under this Article XII.G shall not apply or inure to the benefit of any Non-Settling Insurance Company, and the Settlement Trust shall be able to obtain coverage, subject to Article X hereof, for the full Allowed Claim Amount obtained by the Abuse Claimant through a Tort Election Claim.

H.    **Settlement or Final Judgment**.  If the Settlement Trust reaches a global settlement making a Protected Party of a Non-Settling Insurance Company or other person or entity involved in a Tort Election Claim or obtains a final judgment in a suit against such person or entity terminating liability for such person or entity to the Abuse Claimant, the Abuse Claimant shall be entitled to proceed with the Tort Election Claim for any reason (*e.g.*, if there are persons or entities that are not Protected Parties to collect from).  Alternatively, the Abuse Claimant can elect to terminate the Tort Election Claim without prejudice and have its Abuse Claim determined through these TDP (*i.e.*, as if no STAC Tort Election Claim had been made), in which event the Abuse Claimant may submit relevant evidence from the Tort Election Claim that the Settlement Trustee shall take into account in evaluating the Abuse Claim under these TDP.  Such Abuse Claimant may be provided other alternatives by the Settlement Trust if it had been pursuing a STAC Tort Election Claim.

I.    **Payment of Judgments by the Settlement Trust**.  Subject to Article XII.G hereof, if and when an Abuse Claimant obtains a final judgment or settlement against the Settlement Trust in the tort system (a "**Final Judicial Determination**"), such judgment or settlement amount shall

27

be treated for purposes of distribution under these TDP as the Abuse Claimant's Final Determination, and such Allowed Claim Amount shall also constitute the applicable Protected Parties' liability for such Abuse Claim.  Within thirty (30) days of executing the release as set forth in Article IX.D above, the Abuse Claimant shall receive an Initial Distribution from the Settlement Trust (assuming an Initial Payment Percentage has been established by the Settlement Trust at that time).  Thereafter, the Abuse Claimant shall receive any subsequent distributions based on any applicable Payment Percentage as determined by the Settlement Trust.

**J.    Litigation Results and Other Abuse Claims**.  To the extent that a Final Judicial Determination of an Abuse Claim or changes in applicable law implicate the appropriateness of the Scaling Factors or General Criteria, the Settlement Trustee, subject to the terms of these TDP and the Settlement Trust Agreement and the approval of the Bankruptcy Court or District Court, after appropriate notice and opportunity to object, may appropriately modify the Scaling Factors or General Criteria on a go-forward basis for use in evaluation of Future Abuse Claims and other Abuse Claims as to which no Allowed Claim Amount Final Determination had previously been made.

**K.    Tolling of Limitations Period**.  The running of the relevant statute of limitation shall be tolled as to each Abuse Claimant's Abuse Claim against each Protected Party from the earliest of (A) the actual filing of the claim against the Protected Party prior to the Petition Date, whether in the tort system or by submission of the claim to the Protected Party pursuant to an administrative settlement agreement; (B) the tolling of the claim against a Debtor prior to the Petition Date by an agreement or otherwise, provided such tolling is still in effect on the Petition Date; or (C) the Petition Date, and shall continue until one (1) year following release of the Abuse Claim into the tort system hereunder.

**ARTICLE XIII
MISCELLANEOUS PROVISIONS**

**A.    Non-Binding Effect of Settlement Trust and/or Litigation Outcome**. Notwithstanding any other provision of these TDP, the outcome of litigation against the Debtors by the holder of an Indirect Abuse Claim shall not be used in, be admissible as evidence in, binding in or have any other preclusive effect in connection with the Settlement Trust's resolution or valuation of an Indirect Abuse Claim.

**B.    Amendments**.  Except as otherwise provided herein, the Settlement Trustee may not amend, modify, delete, or add to any provisions of these TDP without the written consent of the STAC and the Future Claimants' Representative, as provided in the Settlement Trust Agreement, including amendments to modify the system for Tort Election Claims.  Nothing herein is intended to preclude the STAC and/or the Future Claimants' Representative from proposing to the Settlement Trustee, in writing, amendments to these TDP.  Notwithstanding the foregoing, absent Bankruptcy Court or District Court approval after appropriate notice and opportunity to object, neither the Settlement Trustee nor the STAC or Future Claimants' Representative may amend these TDP in a material manner, including (i) to provide for materially different treatment

for Abuse Claims, (ii) to materially change the system for Tort Election Claimants, or (iii) in a manner that is otherwise inconsistent with the Confirmation Order or Plan.  Notwithstanding the foregoing, neither the Settlement Trustee nor the STAC or the Future Claimants' Representative may amend any of the forms of release set forth in Article IX.D without the consent of Reorganized BSA, or remove the requirement of a release in connection with an Expedited Distribution.

C.      **Severability**.  Should any provision contained in these TDP be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of these TDP.

D.      **Offsets**.  The Settlement Trust shall have the right to offset or reduce the Allowed Claim Amount of any Allowed Abuse Claim, without duplication as to the mitigating factors (*e.g.*, as to other responsible parties) on a dollar for dollar basis based on any amounts paid, agreed, or reasonably likely to be paid to the holder of such Claim on account of such Claim as against a Protected Party (or that reduces the liability thereof under applicable law) from any source other than the Settlement Trust.

E.      **Governing Law**.  These TDP shall be interpreted in accordance with the laws of the State of Delaware.  Notwithstanding the foregoing, the evaluation of Abuse Claims under these TDP and the law governing litigation in the tort system shall be the law of the jurisdiction in which the Abuse Claimant files the lawsuit as described in Article XII or the jurisdiction where such Abuse Claim could have been filed under applicable law.

## Schedule 1

### Mitigating Scaling Factor Ranges for Statutes of Limitation or Repose By State

Legend

| Tier | Scaling Factor |
|------|----------------|
| Open | 1.0 |
| Gray 1 | .50-.70 |
| Gray 2 | .30-.45 |
| Gray 3 | .10-.25 |
| Closed | .01-.10 |

| State | Tier |
|-------|------|
| Alabama | Closed |
| Kansas | Closed |
| Oklahoma | Closed |
| Puerto Rico | Closed |
| South Dakota | Closed |
| Utah | Closed |
| Wyoming | Closed |
| ZZ / Federal | Closed |
| Connecticut | Gray 1 |
| DC | Gray 1 |
| Delaware | Gray 1 |
| Georgia | Gray 1 |
| Illinois | Gray 1 |
| Massachusetts | Gray 1 |
| New Mexico | Gray 1 |
| Oregon | Gray 1 |
| Washington | Gray 1 |
| Iowa | Gray 2 |
| Minnesota | Gray 2 |
| New Hampshire | Gray 2 |
| North Dakota | Gray 2 |
| Ohio | Gray 2 |
| Pennsylvania | Gray 2 |
| South Carolina | Gray 2 |
| Tennessee | Gray 2 |
| West Virginia | Gray 2 |
| Alaska | Gray 3 |

| | |
|---|---|
| Florida | Gray 3 |
| Idaho | Gray 3 |
| Indiana | Gray 3 |
| Kentucky | Gray 3 |
| Maryland | Gray 3 |
| Michigan | Gray 3 |
| Mississippi | Gray 3 |
| Missouri | Gray 3 |
| Nebraska | Gray 3 |
| Nevada | Gray 3 |
| Rhode Island | Gray 3 |
| Texas | Gray 3 |
| Virgin Islands | Gray 3 |
| Virginia | Gray 3 |
| Wisconsin | Gray 3 |
| Arizona | Open |
| Arkansas | Open |
| California | Open |
| Colorado | Open |
| Guam | Open |
| Hawaii | Open |
| Louisiana | Open |
| Maine | Open |
| Montana | Open |
| New Jersey | Open |
| New York | Open |
| North Carolina | Open |
| Vermont | Open |

**EXHIBIT B**

**SETTLEMENT TRUST AGREEMENT**

*Subject to Material Revision*

# BSA SETTLEMENT TRUST AGREEMENT

## DATED AS OF [●], 2021

## PURSUANT TO THE [●] AMENDED CHAPTER 11 PLAN OF

## REORGANIZATION FOR BOY SCOUTS OF AMERICA

## AND DELAWARE BSA, LLC

*Subject to Material Revision*

## Table of Contents

**ARTICLE 1. AGREEMENT OF TRUST** .................................................................................. **2**

**Section 1.1**    **Creation and Name.** ......................................................................................**2**

**Section 1.2**    **Purposes.** .........................................................................................................**2**

**Section 1.3**    **Transfer of Assets.** ........................................................................................**2**

**Section 1.4**    **Acceptance of Assets.** ....................................................................................**3**

**Section 1.5**    **Receipt of Proceeds.** ......................................................................................**3**

**Section 1.6**    **Beneficiaries.** ..................................................................................................**3**

**Section 1.7**    **Jurisdiction.** ....................................................................................................**4**

**Section 1.8**    **Privileged and confidential information.** ....................................................**4**

**Section 1.9**    **Relation-back election.** ..................................................................................**4**

**Section 1.10**    **Employer identification number.** ..............................................................**4**

**Section 1.11**    **Relationship to Plan.** .................................................................................**4**

**ARTICLE 2. POWERS AND TRUST ADMINISTRATION** ..................................................... **5**

**Section 2.1**    **Powers.** .............................................................................................................**5**

**Section 2.2**    **Limitations on the Trustee.** ...........................................................................**8**

**Section 2.3**    **General Administration.** ................................................................................**9**

**Section 2.4**    **Accounting.** .....................................................................................................**9**

**Section 2.5**    **Financial Reporting.** ......................................................................................**9**

**Section 2.6**    **Claims Reporting.** ..........................................................................................**9**

**Section 2.7**    **Names and addresses.** ...................................................................................**10**

**Section 2.8**    **Sexual Abuse Survivors Advisory Committee.** ..........................................**10**

**Section 2.9**    **Transfers of the Trust Corpus.** ...................................................................**10**

i

*Subject to Material Revision*

**ARTICLE 3. ACCOUNTS, INVESTMENTS, EXPENSES** .................................................... 11

**Section 3.1    Accounts.** ....................................................................................................................11

**Section 3.2    Investment Guidelines.** ................................................................................................12

**Section 3.3    Payment of Trust Operating Expenses.** .......................................................................12

**ARTICLE 4. CLAIMS ADMINISTRATION AND DISTRIBUTIONS** .............................. 12

**Section 4.1    Claims Administration and Distributions.** ...................................................................12

**Section 4.2    Applicability and Review of Payment Percentage.** ......................................................12

**Section 4.3    Supplemental Payments.** .............................................................................................13

**Section 4.4    Manner of Payment.** ....................................................................................................14

**Section 4.5    Delivery of Distributions.** ...........................................................................................14

**Section 4.6    Medicare Reimbursement and Reporting Obligations.** ................................................14

**ARTICLE 5. TRUSTEE; DELAWARE TRUSTEE** ............................................................ 15

**Section 5.1    Number of Trustees.** ...................................................................................................15

**Section 5.2    Term of Service, Successor Trustee.** ...........................................................................15

**Section 5.3    Appointment of Successor Trustee.** ............................................................................15

**Section 5.4    Trustee Meetings.** .......................................................................................................16

**Section 5.5    Compensation and Expenses of Trustee.** ....................................................................17

**Section 5.6    Trustee's Independence.** .............................................................................................17

**Section 5.7    Standard of Care; Exculpation.** ..................................................................................17

**Section 5.8    Protective Provisions.** .................................................................................................19

**Section 5.9    Indemnification.** .........................................................................................................19

**Section 5.10    Bond.** ........................................................................................................................20

**Section 5.11    Delaware Trustee.** ....................................................................................................20

*Subject to Material Revision*

Section 5.12    Meeting Minutes...............................................................................................23

Section 5.13    Matters Requiring Consultation with STAC and FCR. .............................................23

Section 5.14    Matters Requiring Consent of STAC and FCR. .......................................................23

## ARTICLE 6. SETTLEMENT TRUST ADVISORY COMMITTEE .....................................24

Section 6.1    Members; Action by Members. .............................................................................24

Section 6.2    Duties. .................................................................................................................24

Section 6.3    STAC Information Rights. .....................................................................................24

Section 6.4    Additional Provisions regarding Certain STAC Consent Rights. ...........................24

Section 6.5    Term of Office. ....................................................................................................25

Section 6.6    Appointment of Successor. ...................................................................................26

Section 6.7    Compensation and Expenses of the STAC. ...........................................................26

Section 6.8    Procedures for Consultation with and Obtaining the Consent of the STAC..............26

## ARTICLE 7. THE FCR ..........................................................................................28

Section 7.1    Duties. .................................................................................................................28

Section 7.2    FCR Information Rights. .......................................................................................28

Section 7.3    Term of Office. ....................................................................................................28

Section 7.4    Appointment of Successor. ...................................................................................28

Section 7.5    FCR's Employment of Professionals. ....................................................................29

Section 7.6    Compensation and Expenses of the FCR. ..............................................................29

Section 7.7    Procedures for Consultation with and Obtaining the Consent of the FCR. ..............29

## ARTICLE 8. GENERAL PROVISIONS ..................................................................31

Section 8.1    Irrevocability........................................................................................................31

Section 8.2    Term; Termination. ..............................................................................................31

iii

*Subject to Material Revision*

**Section 8.3**    **Outgoing Trustee Obligations**..................................................**32**

**Section 8.4**    **Taxes.** .....................................................................................**32**

**Section 8.5**    **Modification.** ...........................................................................**33**

**Section 8.6**    **Communications.** ....................................................................**34**

**Section 8.7**    **Severability.**............................................................................**34**

**Section 8.8**    **Notices.** ...................................................................................**34**

**Section 8.9**    **Successors and Assigns.** ..........................................................**35**

**Section 8.10**    **Limitation on Transferability; Beneficiaries' Interests.** ...........**35**

**Section 8.11**    **Exemption from Registration.**.................................................**35**

**Section 8.12**    **Entire Agreement; No Waiver.** ...............................................**36**

**Section 8.13**    **Headings.**................................................................................**36**

**Section 8.14**    **Governing Law.**.......................................................................**36**

**Section 8.15**    **Settlor's Representative.**..........................................................**36**

**Section 8.16**    **Dispute Resolution.** ................................................................**37**

**Section 8.17**    **Independent Legal and Tax Counsel.**......................................**38**

**Section 8.18**    **Waiver of Jury Trial.** ..............................................................**38**

**Section 8.19**    **Effectiveness.** ..........................................................................**38**

**Section 8.20**    **Counterpart Signatures.**..........................................................**38**

**EXHIBIT 1  AGGREGATE SETTLEMENT CONSIDERATION**......................................**40**

**EXHIBIT 2  CERTIFICATE OF TRUST** ...............................................................**41**

**EXHIBIT 3  TRUST DISTRIBUTION PROCEDURES FOR ABUSE CLAIMS** ..............**42**

**EXHIBIT 4  INVESTMENT GUIDELINES** .............................................................**43**

*Subject to Material Revision*

## BSA SETTLEMENT TRUST AGREEMENT

This BSA Settlement Trust Agreement (this "**Trust Agreement**"), dated as of [●], 2021, and effective as of the Effective Date, is entered in accordance with the *[●] Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, dated as of [●], 2021 (as it may be amended, modified, or supplemented, the "**Plan**"),[1] by Boy Scouts of America (the "**Settlor**," the "**BSA**" or, after the Effective Date (as defined in the Plan) "**Reorganized BSA**"); the Future Claimants' Representative for the Trust identified in Section 7.1 hereof (together with any successor serving in such capacity, the "**FCR**"); Eric D. Green, as trustee (together with any successor serving in such capacity, the "**Trustee**"); [●] as the Delaware Trustee (together with any successor serving in such capacity, the "**Delaware Trustee**"); and the members of the Settlement Trust Advisory Committee who are the individuals further identified on the signature pages here (together with any successors serving in such capacity, the "**STAC**").[2]

## RECITALS

(A)     The BSA and its affiliate, Delaware BSA, LLC (together, the "**Debtors**") have, or contemporaneously with the execution of this Trust Agreement will have, reorganized under the provisions of chapter 11 of the Bankruptcy Code in a case filed in the Bankruptcy Court, administered and known as In re Boy Scouts of America and Delaware BSA, LLC, Case No. 20-10343 (Bankr. D. Del. 2020) (LSS) (collectively, the "**Chapter 11 Cases**").

(B)     BSA is executing this Trust Agreement in its capacity as Settlor to implement the Plan and to create the BSA Settlement Trust (the "**Trust**") for the benefit of the holders of Class 8 Direct Abuse Claims and Class 9 Indirect Abuse Claims (together, the "**Abuse Claims**").

(C)     The Confirmation Order has been entered by the Bankruptcy Court and is in full force and effect.

(D)     The Plan and Confirmation Order provide, among other things, for the creation of the Trust to satisfy all Abuse Claims in accordance with this Trust Agreement, the Plan and the Confirmation Order.

(E)     The Bankruptcy Court held in the Confirmation Order that all the prerequisites for the Channeling Injunction have been satisfied, and such Channeling Injunction is fully effective and enforceable as provided in the Plan and Confirmation Order with respect to the channeled Abuse Claims, as provided therein (the "**Channeled Claims**").

---

[1]     All capitalized terms used but not otherwise defined herein shall have their respective meanings as set forth in the Plan or in the Confirmation Order, as applicable.

[2]     The STAC shall initially consist of (a) five (5) individuals selected by the Coalition of Abused Scouts for Justice (the "**Coalition**" and such individuals, the "**Coalition Appointees**") and (b) two (2) individuals selected by the Official Committee of Tort Claimants (the "**TCC**" and such individuals, the "**Committee Appointees**"), subject to the reasonable consent of the Coalition. The initial STAC members shall be [●].

(F)     The Plan and Confirmation Order provide that, on the Effective Date and continuing thereafter until fully funded by the Debtors in accordance with the Plan, the Aggregate Settlement Consideration (as defined in Section 1.3), as described in **Exhibit 1** shall be transferred to and vested in the Trust free and clear of all liens, encumbrances, charges, claims, interests or other liabilities of any kind of the Debtors or their affiliates, any creditor or any other entity, other than as provided in the Channeling Injunction with respect to the Channeled Claims.

**NOW, THEREFORE**, it is hereby agreed as follows:

## ARTICLE 1.
## AGREEMENT OF TRUST

Section 1.1     *Creation and Name.* BSA as Settlor hereby creates a trust known as the "**BSA Settlement Trust**" which is the Trust provided for and referred to in the Plan. The Trustee may transact the business and affairs of the Trust in the name of the BSA Settlement Trust Fund and references herein to the Trust shall include the Trustee acting on behalf of the Trust. It is the intention of the parties hereto that the Trust created hereby constitutes a statutory trust under Chapter 38 of title 12 of the Delaware Code, 12 Del. C. §§ 3801 *et seq*. (the "**Act**") and that the Confirmation Order, the Plan and this Trust Agreement, including the Exhibits hereto (the Confirmation Order, the Plan and this Trust Agreement, including all Exhibits hereto, which includes the TDP as defined in Section 1.2 below, collectively, the "**Trust Documents**"), constitute the governing instruments of the Trust. The Trustee and the Delaware Trustee are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto as **Exhibit 2**.

Section 1.2     *Purposes.* The purposes of the Trust are to (i) assume all liability for the Channeled Claims, (ii) administer the Channeled Claims and (iii) make distributions to holders of compensable Abuse Claims, in each case in accordance with the Trust Distributions Procedures for Abuse Claims attached hereto as **Exhibit 3** (the "**TDP**"). In connection therewith, the Trust shall hold, manage, protect and monetize the Trust Assets (as defined in Section 1.3 below) in accordance with the terms of the Trust Documents for the benefit of the Beneficiaries (as defined in Section 1.6(a) below). For the avoidance of doubt, all Abuse Claims asserted against the Debtors in the Chapter 11 Cases shall be resolved exclusively in accordance with the TDP.

Section 1.3     *Transfer of Assets.* Pursuant to the Plan, on the Effective Date, the Trust will receive and hold all right, title and interest in and to the consideration described in Article IV.D of the Plan and set forth on **Exhibit 1** hereto (the "**Aggregate Settlement Consideration**" and together with any income or gain earned thereon and proceeds derived therefrom, collectively, the "**Trust Assets**"). The Aggregate Settlement Consideration shall be transferred to the Trust free and clear of any liens, encumbrances, charges, claims, interests or other liabilities of any kind of the Debtors or their affiliates, any creditor or any other person or entity, other than as provided in the Channeling Injunction with respect to Channeled Claims. The Debtors or Reorganized BSA shall execute and deliver such documents to the Trust as the Trustee reasonably requests to transfer and

*Subject to Material Revision*

assign any assets comprising all or a portion of the Aggregate Settlement Consideration to the Trust.

Section 1.4      *Acceptance of Assets.* In furtherance of the purposes of the Trust, the Trustee, on behalf of the Trust, hereby expressly accepts the transfer to the Trust of the Aggregate Settlement Consideration, subject to the terms of the Trust Documents. The Trust shall succeed to all of the Debtors' respective right, title, and interest, including all legal privileges, in the Aggregate Settlement Consideration and neither the Debtors nor any other person or entity transferring such Aggregate Settlement Consideration will have any further equitable or legal interest in, or with respect to, the Trust Assets, including the Aggregate Settlement Consideration, or the Trust.

(b)      Except as otherwise provided in the Plan, Confirmation Order or Trust Documents, the Trust shall have all defenses, cross-claims, offsets, and recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding such claims that the Debtors or the Reorganized BSA have or would have had under applicable law.

(c)      No provision herein or in the TDP shall be construed or implemented in a manner that would cause the Trust to fail to qualify as a "qualified settlement fund" under the QSF Regulations (as defined in Section 8.4(a) below).

(d)      Nothing in this Trust Agreement shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction or other terms of the Plan or Confirmation Order.

(e)      In this Trust Agreement and the TDP, the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory.

Section 1.5      *Receipt of Proceeds.*

The proceeds of any recoveries from any litigation or claims of the Trust (including the Actions) will be deposited in the Trust's accounts and become the property of the Trust.

Section 1.6      *Beneficiaries.*

(a)      The beneficial owners (within the meaning of the Act) of the Trust shall be the holders of Abuse Claims (the "**Beneficiaries**").

(b)      The Beneficiaries shall be subject to the terms of this Trust Agreement and Trust Documents, including without limitation, the TDP.

*Subject to Material Revision*

Section 1.7    *Jurisdiction.* The Bankruptcy Court shall have continuing jurisdiction with respect to the Trust; provided however, the courts of the State of Delaware, including any federal court located therein, shall also have jurisdiction over the Trust.

Section 1.8    *Privileged and confidential information.*

The transfer or assignment of any Privileged Information to the Trustee pursuant to the Document Agreement (as defined in the Plan) shall not result in the destruction or waiver of any applicable privileges pertaining thereto. Further, with respect to any such privileges: (a) they are transferred to or contributed for the purpose of enabling the Trustee to perform his or her duties to administer the Trust; (b) they are vested solely in the Trustee and not in the Trust, the STAC, the FCR, the Special Reviewer (as defined in Section 2.1(d)(xi) below), the SASAC (as defined in Section 2.8(a) below), or any other person, committee or subcomponent of the Trust, or any other person (including counsel and other professionals) who has been engaged by, represents, or has represented any holder of an Abuse Claim; and (c) the Trustee shall keep, handle and maintain such Privileged Information in accordance with the terms of the Document Agreement.[3] Notwithstanding the foregoing, nothing shall preclude the Trustee from providing Privileged Information to any Insurance Company as necessary to preserve, secure, or obtain the benefit of any rights under any Insurance Policy.

Section 1.9    *Relation-back election.*

Pursuant to the Document Agreement, if applicable, the Trustee and the Debtor shall fully cooperate in filing a relation-back election under Treasury Regulation Section 1.468B-1(j)(2), to treat the Settlement Trust as coming into existence as a settlement fund as of the earliest possible date.

Section 1.10    *Employer identification number.*

Upon establishment of the Trust, the Trustee shall apply for an employer identification number for the Trust in accordance with Treasury Regulation Section 1.468B-2(k)(4).

Section 1.11    *Relationship to Plan.*

The principal purpose of this Trust Agreement is to aid in the implementation of the Plan and the Confirmation Order and therefore, this Trust Agreement incorporates the provisions of the Plan and the Confirmation Order (which may amend or supplement the Plan). To the extent that there is conflict between the provisions of this Trust Agreement, the TDP, the provisions of the Plan or the Confirmation Order, each document shall have controlling effect in the following order: (1) the Confirmation Order; (2) the Plan; (3) this Trust Agreement; and (4) the TDP.

---

[3]    The Document Agreement will be filed with the Plan Supplement.

*Subject to Material Revision*

# ARTICLE 2.
# POWERS AND TRUST ADMINISTRATION

Section 2.1    *Powers.*

     (a)    The Trustee is empowered to take all actions, including such actions as may be consistent with those expressly set forth above, as the Trustee deems necessary to reasonably ensure that the Trust is treated as a "qualified settlement fund" under Section 468B of the Tax Code and the regulations promulgated pursuant thereto. Further, the Trustee may, unilaterally and without court order, amend, either in whole or in part, any administrative provision of this Trust Agreement which causes unanticipated tax consequences or liabilities inconsistent with the foregoing.

     (b)    The Trustee is and shall act as the fiduciary to the Trust in accordance with the provisions of this Trust Agreement. The Trustee shall administer the Trust, the Trust Assets, and any other amounts to be received under the terms of the Trust Documents in accordance with the purposes set forth in Section 1.2 above and in the manner prescribed by the Trust Documents. Subject to the limitations set forth in the Trust Documents, the Trustee shall have the power to take any and all actions that in the judgment of the Trustee are necessary or advisable to fulfill the purposes of the Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto and any trust power now or hereafter permitted under the laws of the State of Delaware. Nothing in the Trust Documents or any related document shall require the Trustee to take any action if the Trustee reasonably believes that such action is contrary to law. In addition to all powers enumerated in the Trust Documents, including, but not limited to, the Trustee's powers and authority in respect of the interpretation, application of definitions and rules of construction set forth in Article I of the Plan to the fullest extent set forth therein, from and after the Effective Date, the Trust shall succeed to all of the rights and standing of the Debtors with respect to the Aggregate Settlement Consideration in its capacity as a trust administering assets for the benefit of the Beneficiaries.

     (c)    Except as required by applicable law or the Trust Documents, the Trustee need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

     (d)    Without limiting the generality of Sections 2.1(a) and (b) above, and except as limited in the Trust Documents and by applicable law, the Trustee shall have the power to:

     (i)    supervise and administer the Trust in accordance with the Trust Documents, including the TDP;

     (ii)    adopt procedures to allow valid Abuse Claims ("**Allowed Abuse Claims**"), and determine an allowed liability amount for each Allowed Abuse Claim (the "**Allowed Claim Amount**") in accordance with the TDP;

     (iii)    establish an initial payment percentage (the "**Initial Payment Percentage**") with respect to Allowed Abuse Claims and adjust the Initial Payment Percentage and any subsequent Payment Percentage as set forth in Section 4.2 below;

(iv)    receive and hold the Trust Assets, and exercise all rights with respect thereto including the right to vote and sell any securities that are included in such funds;

(v)    invest the monies held from time to time by the Trust in accordance with Section 3.2;

(vi)    sell, transfer or exchange any or all of the Trust Assets at such prices and upon such terms as the Trustee may determine proper and consistent with the other terms of the Trust Documents;

(vii)    enter into leasing, financing or other agreements with third parties, as determined by the Trustee, in his or her discretion, to be useful in carrying out the purposes of the Trust;

(viii)    determine and pay liabilities and pay all fees and expenses incurred in administering the Trust, managing the Trust Assets and making distributions in accordance with the Trust Documents (the "**Trust Operating Expenses**");

(ix)    establish accounts and reasonable reserves within the Trust, as determined by the Trustee, in his or her discretion, to be necessary, prudent or useful in administering the Trust;

(x)    sue, be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative or other proceeding;

(xi)    appoint such officers and retain such employees, consultants, advisors, independent contractors, experts and agents and engage in such legal, financial, administrative, accounting, investment, auditing and alternative dispute resolution services and activities as the Trust requires, including without limitation the special reviewer and successor thereto (the "**Special Reviewer**"),[4] and delegate to such persons such powers and authorities as this Trust Agreement provides or the fiduciary duties of the Trustee permits and as the Trustee, in his or her discretion, deems advisable or necessary in order to carry out the terms of this Trust Agreement;

(xii)    pay reasonable compensation and reimbursement of expenses to any of the Trust's employees, consultants, advisors, independent contractors, experts and agents for legal, financial, administrative, accounting, investment, auditing and alternative dispute resolution services and activities as the Trust requires;

(xiii)    compensate the Trustee, Delaware Trustee, the FCR and their employees, consultants, advisors, independent contractors, experts and agents, and reimburse the Trustee, the Delaware Trustee, the STAC members, and the FCR for all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder;

---

[4]    The initial Special Reviewer shall be subject to the approval of the Coalition and the TCC and identified in the Plan Supplement.

(xiv)    compensate professionals for services, costs and expenses incurred prior to the Effective Date in accordance with the terms of the Plan and Confirmation Order;

(xv)    execute and deliver such instruments as the Trustee considers advisable or necessary in administering the Trust;

(xvi)    timely file such income tax and other tax returns and statements required to be filed and timely pay all taxes, if any, required to be paid from the Settlement Trust Assets and comply with all applicable tax reporting and withholding obligations;

(xvii)    require, in respect of any distribution of Settlement Trust Assets, the timely receipt of properly executed documentation (including, without limitation, IRS Form W-9) as the Trustee determines in his or her discretion necessary or appropriate to comply with applicable tax laws;

(xviii)  [resolve all applicable lien resolution matters;]

(xix)    register as a responsible reporting entity ("**RRE**") and timely submit all reports under the reporting provisions of section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (Pub. L. 110-173) ("**MMSEA**") as required under Section 4.4 below;

(xx)    determine the form(s) of release required to be executed by a Beneficiary in connection with a distribution on account of an Abuse Claim in accordance with the TDP;

(xxi)    enter into such other arrangements with third parties as are deemed by the Trustee to be useful in carrying out the purposes of the Trust, provided such arrangements do not conflict with any other provision of the Trust Documents;

(xxii)  in accordance with Section 5.9 below, defend, indemnify, and hold harmless (and purchase insurance indemnifying) the Trust Indemnified Parties (as defined in Section 5.7(a) below) solely from the Trust Assets and to the fullest extent permitted by law;

(xxiii)  delegate any or all of the authority herein conferred with respect to the investment of all or any portion of the Trust Assets to any one or more reputable investment advisors or investment managers without liability for any action taken or omission made because of any such delegation;

(xxiv)  delegate any or all of the authority conferred with respect to the protection, preservation, and monetization of the non-cash Trust Assets;

(xxv)    initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, all legal actions and other proceedings related to any asset, liability, or responsibility of the Trust, including the Actions (as defined in the Plan);

(xxvi)  enter into structured settlements and other similar arrangements with any Beneficiary (including a minor or other person in need of special consideration) upon such

terms as the Trustee and such Beneficiary (or such Beneficiary's counsel or other authorized person) agree, in all cases in accordance with the TDP;

(xxvii) contract for the establishment and continuing maintenance of a website (the "**Trust Website**") to aid in communicating information to the Beneficiaries and their counsel or other authorized persons;

(xxviii) take any and all actions appropriate or necessary in order to carry out the terms of the Trust Documents; and

(xxix) except as otherwise expressly provided in the Trust Documents, exercise any other powers now or hereafter conferred upon or permitted to be exercised by a trustee under the laws of the State of Delaware.

(e)    The Trustee shall have the power to (i) authorize the commencement or continuation of a lawsuit by a Direct Abuse Claimants against the Trust to obtain the Allowed Claim Amount of a Direct Abuse Claim in accordance with the provisions of Article XII.B of the TDP (a "**STAC Tort Election Claim**"), and (ii) enter into any global settlement that causes an Insurance Company or a Chartered Organization to become a Protected Party within the meaning of the Plan (a "**Global Settlement**"), provided however, the powers set forth in this Section 2.1(e) shall in each case be subject to the provisions of Sections 5.13 and 5.14 below.

(f)    The Trustee shall take all actions necessary or advisable for the enforcement of the non-monetary commitments of Reorganized BSA with respect to Child Protection as set forth in the Plan and Confirmation Order.

(g)    The Trustee shall consult with the STAC and the FCR on the matters set forth in Section 5.13 below. The Trustee shall obtain the consent of the STAC and the FCR prior to taking action with respect to the matters set forth in Section 5.14 below, as and to the extent set forth therein, and subject to the provisions of Section 6.4 below.

Section 2.2    *Limitations on the Trustee.*

Notwithstanding anything in the Trust Documents to the contrary, the Trustee shall not do or undertake any of the following:

(a)    guaranty any debt;

(b)    make or enter into any loan of Trust Assets;

(c)    make any transfer or distribution of Trust Assets other than those authorized by the Trust Documents;

(d)    engage in any trade or business with respect to the Trust Assets or proceeds therefrom, other than managing such assets;

(e)    engage in any investment of the Trust Assets, other than as explicitly authorized by this Trust Agreement; and

*Subject to Material Revision*

(f)      engage in any activities inconsistent with the treatment of the Trust as a "qualified settlement fund" within the meaning of Treasury Regulations issued under Section 468B of the Tax Code.

Section 2.3      *General Administration.* The Trustee shall act in accordance with the Trust Documents. The Trustee shall establish the location of the principal office of the Trust and may change the location of the principal office or establish other offices at other locations in his or her discretion.

Section 2.4      *Accounting.* The fiscal year of the Trust shall begin on January 1 and shall end on December 31 of each calendar year. The Trustee shall maintain the books and records relating to the Trust Assets and income and the payment of Trust Operating Expenses and other liabilities of the Trust. The detail of these books and records and the duration of time during which the Trustee shall keep such books and records shall be such as to allow the Trustee to make a full and accurate accounting of all Trust Assets, as well as to comply with applicable provisions of law and standard accounting practices necessary or appropriate to produce an annual report containing special-purpose financial statements of the Trust, including, without limitation, the assets and liabilities of the Trust as of the end of such fiscal year and the additions, deductions and cash flows for such fiscal year (the "**Annual Report**"); provided however, that the Trustee shall maintain such books and records until the wind-up of the Trust's affairs and satisfaction of all of Trust liabilities.

Section 2.5      *Financial Reporting.*

(a)      The Trustee shall engage a firm of independent certified public accountants (the "**Independent Auditors**") selected by the Trustee, to audit the Annual Report. Within one hundred twenty (120) days following the end of each calendar year, the Trustee shall file with the Bankruptcy Court the Annual Report audited by the Independent Auditors and accompanied by an opinion of such firm as to the fairness in all material respects of the special-purpose financial statements. The Trustee shall publish a copy of such Annual Report on the Trust Website when such report is filed with the Bankruptcy Court.

(b)      All materials filed with the Bankruptcy Court pursuant to this Section 2.4 need not be served on any parties in the Chapter 11 Cases but shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court.

Section 2.6      *Claims Reporting.* Within one hundred twenty (120) days following the end of each calendar year, the Trustee shall cause to be prepared and filed with the Bankruptcy Court an annual report containing a summary regarding the number and type of Abuse Claims disposed of during the period covered by the financial statements (the "**Annual Claims Report**"). The Trustee shall post a copy of the Annual Claims Report on the Trust Website when such report is filed with the Bankruptcy Court.

(b)      Within forty-five (45) days following the end of each calendar quarter, the Trustee shall cause to be prepared a quarterly claims report containing a summary regarding the number and type of Abuse Claims disposed of during the quarter (the "**Quarterly Claims Report**"). The financial information set forth in the Quarterly Claims Report shall be unaudited.

The Trustee shall post a copy of the Quarterly Claims Report on the Trust Website; the Quarterly Claims Report need not be filed with the Bankruptcy Court.

Section 2.7    *Names and addresses.*

The Trustee shall keep a register (the "**Register**") in which the Trustee shall at all times maintain the names and addresses of the Beneficiaries and the awards made to the Beneficiaries pursuant to the Trust Documents. The Trustee may rely upon this Register for the purposes of delivering distributions or notices. In preparing and maintaining this Register, the Trustee may rely on the name and address of each Abuse Claim holder as set forth in a proof of claim filed by such holder, or proper notice of a name or address change, which has been delivered by such Beneficiary to the Trustee. The Trustee may deliver distributions and notices to counsel for any Beneficiary identified in such Beneficiary's proof of claim or proper notice of a name or address change.

Section 2.8    *Sexual Abuse Survivors Advisory Committee.*

(a)    There shall be a Sexual Abuse Survivors Advisory Committee which shall consist of five (5) individual abuse survivors (such individuals, together with their successors, the "**SASAC**").[5]

(b)    The SASAC may attend and participate in such meetings as shall be called by the Trustee and/or the STAC ("**SASAC Meetings**") from time to time as determined by the Trustee and/or STAC respectively in their discretion, and the Trustee and STAC shall provide periodic reporting to the SASAC. There shall be not less than one (1) SASAC Meetings in each calendar year. The Trustee and/or the STAC shall propose to consult with the SASAC at least quarterly, and shall use their reasonable best efforts to keep the SASAC advised of any material matters of the Trust, as determined by the Trustee and/or STAC in their reasonable judgment.

(c)    The SASAC may have reasonable access to the Trust's consultants and other advisors retained by the Trust and its staff (if any), which access may be made available as determined by the Trustee.

(d)    The members of the SASAC shall not be entitled to compensation for their services; the members of the SASAC shall be reimbursed promptly for all reasonable and documented out-of-pocket costs and expenses incurred in connection with their attendance at all SASAC Meetings set forth in Section 2.8(b). [The Trust shall include a description of the amounts paid under this Section 2.8 in the Annual Report to be posted on the Trust's Website.]

Section 2.9    *Transfers of the Trust Corpus.*

To the fullest extent permitted by law, neither the principal nor income of the Trust, in whole or part, shall be subject to any legal or equitable claims of creditors of any Beneficiary or others, nor to legal process, nor be voluntarily or involuntarily transferred, assigned, anticipated,

---

[5]    The initial members of the SASAC shall consist of two (2) individuals selected by the Coalition and three (3) individuals selected by the TCC, subject to the approval of the Coalition.

*Subject to Material Revision*

pledged or otherwise alienated or encumbered except as may be ordered by the Bankruptcy Court or other competent court of jurisdiction.

# ARTICLE 3.
## ACCOUNTS, INVESTMENTS, EXPENSES

Section 3.1       *Accounts.*

(a)       The Trustee shall maintain one or more accounts ("**Trust Accounts**") on behalf of the Trust with one or more financial depository institutions (each a "**Financial Institution**"). Candidates for the positions of Financial Institution shall fully disclose to the Trustee any interest in or relationship with Reorganized BSA or their affiliated persons or [others]. Any such interest or relationship shall not be an automatic disqualification for the position, but the Trustee shall take any such interest or relationship into account in selecting a Financial Institution.

(b)       The Trustee may replace any retained Financial Institution with a successor Financial Institution at any time, and such successor shall be subject to the considerations set forth in Section 3.1(a).

(c)       The Trustee may maintain a segregated account to hold any assets thereof for the benefit of the holders of Future Abuse Claims (the "**Future Abuse Claims Reserve**") to the extent required to implement the TDP. Trust Operating Expenses directly allocable to the administration of Future Abuse Claims and the Future Abuse Claims Reserve shall be charged against the Future Abuse Claims Reserve, as reasonably determined by the Trustee.

(i)       [Reserved for the administration of the Future Abuse Claims Reserve.]

(d)       The Trustee may maintain segregated accounts to hold any assets received as a result of or in connection with a Global Settlement between the Debtors or the Trust, on the one hand, and a Chartered Organization that is or becomes a Protected Party, on the other hand (the "**Chartered Organization Abuse Claims Reserve**") to the extent required to implement the TDP. The Trust shall hold the assets thereof for the benefit of holders of Allowed Abuse Claims that (i) could have been satisfied from that source absent the Plan's Discharge and Channeling Injunction and (ii) are held by Direct Abuse Claimants that execute a conditional release releasing all claims against all Chartered Organizations pursuant to the terms of the TDP ("**Chartered Organization Abuse Claims**"). Trust Operating Expenses directly allocable to the administration of Chartered Organization Abuse Claims and the Chartered Organization Abuse Claims Reserve shall be charged against the Chartered Organization Abuse Claims Reserve, as reasonably determined by the Trustee.

(i)       [Reserved for the administration of the Chartered Organization Abuse Claims Reserve.]

(e)       The Trustee may, from time to time, create such accounts and reasonable reserves within the Trust Accounts as authorized in this Section 3.1 and as he or she may deem necessary, prudent or useful in order to provide for distributions to the Beneficiaries and the payment of Trust Operating Expenses and may, with respect to any such account or reserve, restrict

the use of money therein for a specified purpose (the "**Trust Subaccounts**"). [Any such Trust Subaccounts established by the Trustee shall be held as Trust Assets and are not intended to be subject to separate entity tax treatment as a "disputed claims reserve" or a "disputed ownership fund" within the meaning of the Internal Revenue Code ("**IRC**") or Treasury Regulations.]

Section 3.2    *Investment Guidelines.*

(a)    The Trustee may invest the Trust Assets in accordance with the Investment Guidelines, attached hereto as Exhibit 4 (the "**Investment Guidelines**").

(b)    Pursuant to the Plan, the Trust shall hold certain non-liquid assets. The Trustee shall own, protect, oversee, insure and monetize such non-liquid assets in accordance with the Trust Documents. This Section 3.2(b) is intended to modify the application to the Trust of the "prudent person" rule, "prudent investor" rule and any other rule of law that would require the Trustee to diversify the Trust Assets.

(c)    Cash proceeds received by the Trust in connection with its monetization of the non-liquid Trust Assets shall be invested in accordance with the Investment Guidelines until needed for the purposes of the Trust as set forth in Section 1.2 above.

Section 3.3    *Payment of Trust Operating Expenses.* All Trust Operating Expenses shall be payable out of the Trust Assets. None of the Trustee, Delaware Trustee, the STAC, the FCR, the Beneficiaries nor any of their officers, agents, advisors, professionals or employees shall be personally liable for the payment of any Trust Operating Expense or any other liability of the Trust.

# ARTICLE 4.
## CLAIMS ADMINISTRATION AND DISTRIBUTIONS

Section 4.1    *Claims Administration and Distributions.* The Trust shall fairly and reasonably compensate Allowed Abuse Claims and shall pay up to the full value of such claims, solely in accordance with the Trust Documents, including the TDP (and, for the avoidance of doubt, including without limitation the provisions of Article XI and Article XII.C. and G of the TDP). The TDP shall be subject to amendment or modification only to the extent expressly set forth in the TDP.

Section 4.2    *Applicability and Review of Payment Percentage.*

(a)    Because there is uncertainty in the prediction of both the total amount of the Trust's liabilities and the amount of the Trust Assets, no guarantee can be made as to the total payment the Trust will be able to pay for any Allowed Abuse Claim. The Trustee shall determine from time to time the percentage of value that holders of present and future Abuse Claims are likely to receive from the Trust Assets available for distribution on account of compensable Abuse Claims. As soon as practicable after the Effective Date, the Trustee shall establish an Initial Payment Percentage.

(b)    The Initial Payment Percentage shall apply to all Allowed Abuse Claims to be paid by the Trust until the Trustee, with the consent of the STAC and the FCR, determines that the Initial Payment Percentage should be changed to assure that the Trust shall be in a financial

position to pay present and future holders of similar Allowed Abuse Claims in substantially the same manner (the Initial Payment Percentage, as it may be changed from time to time pursuant to this Section 4.2, the "**Payment Percentage**").

(c)      No less frequently than once every twelve (12) months, commencing on the first anniversary of the Effective Date, the Trustee shall compare the Abuse Claims distribution forecasts for the Trust on which the then-existing Payment Percentage was based with the actual Abuse Claims filings and distributions of the Trust to date. If the results of the comparison suggest the potential for shortfalls in Trust Assets for continued Abuse Claims distributions at the then applicable Payment Percentage, the Trustee shall undertake a reconsideration of the Payment Percentage. The Trustee may reconsider the Payment Percentage at shorter intervals if the Trustee deems such reconsideration is appropriate or if requested to do so by the STAC or the FCR. The provisions of this Section 4.2(d) may be modified by the Trustee with the consent of the STAC and the FCR.

(d)      The Trustee shall base the determination of any Payment Percentage on current estimates of the number, types, and values of present and future Abuse Claims, the current Trust Assets, all anticipated Trust Operating Expenses, and any other material matters that are reasonably likely to affect the sufficiency of Trust Assets available to pay the present and future holders of Abuse Claims.

Section 4.3      *Supplemental Payments.*

(a)      If the Trustee, with the consent of the STAC and the FCR, increases the Payment Percentage, the Trust shall make supplemental payments to all Beneficiaries who previously liquidated their Abuse Claims and received payments based on a lower Payment Percentage (with adjustments, if any, as set forth in the TDP). The amount of any such supplemental payment to a Beneficiary shall be the liquidated value of the Abuse Claim in question times the applicable newly adjusted Payment Percentage, less all amounts previously paid by the Trust to the Beneficiary (with adjustments, if any, as set forth in the TDP) with respect to the Abuse Claim.

(b)      The Trustee's obligation to make a supplemental payment to a Beneficiary shall be suspended in the event the payment in question would be less than $250 after application of the Payment Percentage at that time. The amount of a suspended payment to the holder of any Abuse Claim shall be added to the amount of any prior supplemental payment(s) that was/were also suspended because it/they collectively would have been less than $250, and the Trustee's obligation shall resume to pay any such aggregate supplemental payments due the Beneficiary at such time that the cumulative aggregate amount exceeds $250.

(c)      Notwithstanding anything herein or in the TDP, the Trustee reserves all powers expressly granted to him or her by the Plan and the Confirmation Order with respect to the administration of Abuse Claims.

Section 4.4    *Manner of Payment.* Distributions from the Trust to the Beneficiaries may be made by the Trustee on behalf of the Trust or by a disbursing agent retained by the Trust to make distributions on behalf of the Trust.

Section 4.5    *Delivery of Distributions.*

(a)    Distributions shall be payable to the Beneficiary (or to counsel for the Beneficiary) on the date approved for distribution by the Trustee (the "**Distribution Date**") in accordance with the terms of the Trust Documents, including the TDP. With respect to each compensable Abuse Claim approved for payment, distributions shall be made only after the Trustee has determined that all obligations of the Trust with respect to each such Abuse Claim have been satisfied. In the event that any distribution to a Beneficiary is returned as undeliverable, no further distribution to such Beneficiary shall be made unless and until the Trustee has been notified of the then current address of such Beneficiary, at which time such distribution shall be made to such Beneficiary without interest; provided however, that all distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the applicable Distribution Date. After such date, (i) all unclaimed property or interests in property shall revert to the Trust (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary), (ii) the Abuse Claim of such Beneficiary shall be released, settled, compromised and forever barred as against the Trust, and (iii) all unclaimed property interests shall be distributed to other Beneficiaries in accordance with the Trust Documents, as if the Abuse Claim of such Beneficiary had been disallowed as of the date the undeliverable distribution was first made. The Trustee shall take reasonable efforts to obtain a current address for any Beneficiary with respect to which any distribution is returned as undeliverable.

(b)    In the event the Trust holds cash after paying all Trust Operating Expenses and making all distributions contemplated under the Trust Documents, such remaining cash shall be distributed to a national recognized charitable organization of the Trustee's choice to the extent economically feasible, which charitable organization shall be independent of the Trustee, the STAC and the FCR and, to the extent possible, shall have a charitable purpose consistent with the protection of children from sexual abuse or its ramifications. No Trust Asset or any unclaimed property shall escheat to any federal, state, or local government or any other entity.

(c)    Notwithstanding any provision in the Trust Documents to the contrary, no payment shall be made to any Beneficiary on account of any Abuse Claim if the Trustee determines that the costs of making such distribution is greater than the amount of the distribution to be made.

Section 4.6    *Medicare Reimbursement and Reporting Obligations.*

(a)    The Trust shall register as an RRE under the reporting provisions of section 111 of MMSEA.

(b)    The Trust shall, at its sole expense, timely submit all reports that are required under MMSEA on account of any claims settled, resolved, paid, or otherwise liquidated by the Trust or with respect to contributions to the Trust. The Trust, in its capacity as an RRE, shall follow all applicable guidance published by the Centers for Medicare & Medicaid Services

*Subject to Material Revision*

of the United States Department of Health and Human Services and/or any other agency or successor entity charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA (collectively, "**CMS**") to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.

(c)     Before remitting funds to claimants' counsel, or to the claimant if such claimant is acting *pro se*, in respect of any Abuse Claim, the Trustee shall obtain a certification that said claimant (or such claimant's authorized representative) has provided or will provide for the payment and/or resolution of any obligations owing or potentially owing under 42 U.S.C. § 1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Abuse Claim.

## ARTICLE 5.
## TRUSTEE; DELAWARE TRUSTEE

Section 5.1     *Number of Trustees.* In addition to the Delaware Trustee appointed pursuant to Section 5.11 hereof, there shall be one (1) Trustee. The initial Trustee shall be Eric D. Green. For the avoidance of doubt, there shall be at least one (1) Trustee serving at all times (in addition to the Delaware Trustee).

Section 5.2     *Term of Service, Successor Trustee.*

(a)     The Trustee shall serve from the Effective Date until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 5.2(b) below, (iii) his or her removal pursuant to Section 5.2(c) below, and (iv) the termination of the Trust pursuant to Section 8.2 below.

(b)     The Trustee may resign at any time upon written notice to the STAC and FCR with such notice filed with the Bankruptcy Court. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)     The Trustee may be removed by consent of (i) at least two/thirds (2/3) majority of the STAC and (ii) the FCR, in the event that the Trustee becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence or for other good cause, provided the Trustee has received reasonable notice and an opportunity to be heard. Other good cause shall mean fraud, self-dealing, intentional misrepresentation, willful misconduct, indictment for or conviction of a felony in each case whether or not connected to the Trust, any substantial failure to comply with the administration of the Trust or a consistent pattern of neglect and failure to perform or participate in performing the duties of Trustee hereunder. For the avoidance of doubt, any removal of a Trustee pursuant to this Section 5.2(c) shall require the approval of the Bankruptcy Court and shall take effect at such time as the Bankruptcy Court shall determine.

Section 5.3     *Appointment of Successor Trustee.*

(a)     In the event of the death, resignation or removal of Eric D. Green as Trustee (the "**Initial Trustee**"), such vacancy shall immediately be filled by [●], who shall thereafter serve

as Trustee pursuant to the terms of the Trust Documents, provided that if [●] is unable to serve as the successor Trustee, the successor Trustee shall be appointed in accordance with the terms of the following sentence. In the event of any vacancy in the office of the Trustee, including the death, resignation or removal of any successor Trustee, such vacancy shall be filled by the STAC and the FCR as set forth herein. The STAC will nominate an individual to serve as successor Trustee. If the majority of the STAC then in office and the FCR agree upon a successor Trustee, then, subject to the approval of the Bankruptcy Court, such individual shall become the Trustee. In the event that a majority of the STAC and the FCR cannot agree on a successor Trustee, the matter will be resolved pursuant to Section 8.16 below.

(b)    Immediately upon the appointment of any successor Trustee pursuant to Section 5.3(a) above, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in and undertaken by the successor Trustee without any further act. No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee. No predecessor Trustee shall be liable personally for any act or omission of his or her successor Trustee. No successor Trustee shall have any duty to investigate the acts or omissions of his or her predecessor Trustee.

(c)    Each successor Trustee shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 5.2(b) above, (iii) his or her removal pursuant to Section 5.2(c) above, and (iv) the termination of the Trust pursuant to Section 8.2 below.

Section 5.4    *Trustee Meetings.*

(a)    **Regular Meeting**. The Trustee shall hold regular meetings with the STAC and the FCR not less than quarterly, which may be held at such times and at such places as may be determined from time to time by the Trustee. For the avoidance of doubt, the Delaware Trustee shall not be required or permitted to attend any meetings of the Trustee contemplated by this Section 5.4.

(b)    **Special Meetings**. Special meetings of the Trustee with the STAC, the SASAC and/or the FCR, either jointly or separately, may be called by the Trustee by giving written notice to the STAC, the SASAC and/or the FCR not less than one (1) business day prior to the date of the meeting. Any such notice shall include the time, place and purpose of the meeting, given by overnight courier, personal delivery, facsimile, electronic mail or other similar means of communication. Notice shall be addressed or delivered to the address as shown upon the records of the Trust or as may have been given to the Trustee for purposes of notice. Notice by overnight courier shall be deemed to have been given one (1) business day after the time that written notice is provided to such overnight courier. Any other written notice shall be deemed to have been given at the time it is personally delivered to the recipient or actually transmitted by the person giving the notice by electronic means to the recipient.

(c)    **Participation in Meetings by Telephone Conference**. The Trustee may convene, and persons may participate in, a meeting by conference telephone or similar communications equipment (which shall include virtual meetings via video conferencing software), as long as all persons participating in such meeting can hear one another. Participation in a meeting pursuant to this Section 5.4(c) shall constitute presence in person at such meeting.

(d)    **Waiver of Notice**. Notice of a meeting need not be given to any person who signs a waiver of notice, whether before or after the meeting. All such waivers shall be filed with the Trust records or made a part of the minutes of the meeting. Attendance at a meeting shall constitute a waiver of notice of such meeting. Neither the business to be transacted at, nor the purpose of, any Trustee meeting need be specified in any waiver of notice.

(e)    **Adjournment**. A meeting may be adjourned by the Trustee to another time and place.

Section 5.5    *Compensation and Expenses of Trustee.* The Trustee shall receive compensation from the Trust for his or her services as Trustee. The initial amount of the Trustee's compensation shall be [●] and shall be adjusted annually thereafter as reasonably determined by the majority of the STAC and FCR. The Trust shall also, upon receipt of appropriate documentation, reimburse all reasonable out-of-pocket costs and expenses incurred by the Trustee in the course of carrying out his or her duties as Trustee in accordance with reasonable policies and procedures as may be adopted from time to time, including in connection with attending meetings of the Trustee. The amounts paid to the Trustee for compensation and expenses shall be disclosed in the Annual Report.

Section 5.6    *Trustee's Independence.*

(a)    The Trustee shall not, during his or her service, hold a financial interest in, act as attorney or agent for or serve as any other professional for Reorganized BSA, their affiliated persons, or [others]. No Trustee shall act as an attorney for, or otherwise represent, any Person who holds a claim in the Chapter 11 Cases. For the avoidance of doubt, this provision shall not apply to the Delaware Trustee.

(b)    The Trustee, and the Delaware Trustee, shall be indemnified by the Trust in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties.

(c)    Persons dealing with the Trust, the Trustee, and the Delaware Trustee with respect to the affairs of the Trust, shall have recourse only to the Trust Assets to satisfy any liability incurred by the Trust, the Trustee or the Delaware Trustee to such Person in carrying out the terms of this Trust Agreement, and neither the Trustee, the Delaware Trustee, the Beneficiaries, nor any of their professionals, advisors, officers, agents, consultants or lawyers shall have any personal obligation to satisfy any such liability.

Section 5.7    *Standard of Care; Exculpation.*

(a)    As used herein, the term "**Trust Indemnified Party**" shall mean the Trustee, the Delaware Trustee, the members of the STAC, the FCR, the SASAC and each of their respective members, officers, employees, agents, consultants, lawyers, advisors or professionals (collectively, the "**Trust Indemnified Parties**").

(b)    No Trust Indemnified Party shall be liable to the Trust, any other Trust Indemnified Party, any Beneficiary or any other Person for any damages arising out of the creation,

*Subject to Material Revision*

operation, administration, enforcement or termination of the Trust, except in the case of such Trust Indemnified Party's willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction. To the fullest extent permitted by applicable law, the Trust Indemnified Parties shall have no liability for any action in performance of their duties under this Trust Agreement taken in good faith with or without the advice of counsel, accountants, appraisers and other professionals retained by the Trust Indemnified Parties. None of the provisions of this Trust Agreement shall require the Trust Indemnified Parties to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of their respective rights and powers. Any Trust Indemnified Party may rely, without inquiry, upon writings delivered to it under any of the Trust Documents, which the Trust Indemnified Party reasonably believes to be genuine and to have been given by a proper person. Notwithstanding the foregoing, nothing in this Section 5.7 shall relieve the Trust Indemnified Parties from any liability for any actions or omissions arising out of the willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction; provided that in no event will any such person be liable for punitive, exemplary, consequential or special damages under any circumstances. Any action taken or omitted by the Trust Indemnified Parties with the approval of the Bankruptcy Court, or any other court of competent jurisdiction, will conclusively be deemed not to constitute willful misconduct, bad faith, or fraud.

(c)     The Trust Indemnified Parties shall not be subject to any personal liability whatsoever, whether in tort, contract or otherwise, to any Person in connection with the affairs of the Trust or for any liabilities or obligations of the Trust except for those acts that are finally judicially determined by a court of competent jurisdiction to have arisen out of their own willful misconduct, bad faith, or fraud, and all Persons claiming against the Trust Indemnified Parties, or otherwise asserting claims of any nature in connection with affairs of the Trust, shall look solely to the Trust Assets for satisfaction of any such claims.

(d)     To the extent that, at law or in equity, the Trust Indemnified Parties have duties (including fiduciary duties) or liability related thereto, to the Trust or the Beneficiaries, it is hereby understood and agreed by the parties hereto and the Beneficiaries that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, [including Section 3806 of the Act,] and replaced by the duties and liabilities expressly set forth in this Trust Agreement with respect to the Trust Indemnified Parties, provided however, that the duties of care and loyalty are not eliminated but are limited and subject to the terms of this Trust Agreement, including but not limited to this Section 5.7 and its subparts.

(e)     The Trust Indemnified Parties shall be indemnified to the fullest extent permitted by law by the Trust against all liabilities arising out of the creation, operation, administration, enforcement or termination of the Trust, including actions taken or omitted in fulfillment of their duties with respect to the Trust, except for those acts that are finally judicially determined by a court of competent jurisdiction to have arisen out of their own willful misconduct, bad faith, or fraud.

(f)     The Trust will maintain appropriate insurance coverage for the protection of the Trust Indemnified Parties, as determined by the Trustee in his or her discretion.

Section 5.8        *Protective Provisions.*

(a)        Every provision of this Trust Agreement relating to the conduct or affecting the liability of or affording protection to Trust Indemnified Parties shall be subject to the provisions of this Section 5.8.

(b)        In the event the Trustee retains counsel (including at the expense of the Trust), the Trustee shall be afforded the benefit of the attorney-client privilege with respect to all communications with such counsel, and in no event shall the Trustee be deemed to have waived any right or privilege including, without limitation, the attorney-client privilege even if the communications with counsel had the effect of guiding the Trustee in the performance of duties hereunder. A successor to any Trustee shall succeed to and hold the same respective rights and benefits of the predecessor for purposes of privilege, including the attorney-client privilege. No Beneficiary or other party may raise any exception to the attorney-client privilege discussed herein as any such exceptions are hereby waived by all parties.

(c)        To the extent that, at law or in equity, the Trustee has duties (including fiduciary duties) and liabilities relating hereto, to the Trust or to the Beneficiaries, it is hereby understood and agreed by the Parties and the Beneficiaries that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, including Section 3806 of the Act, and replaced by the duties and liabilities expressly set forth in this Trust Agreement with respect to the Trustee, provided however, that the duties of care and loyalty are not eliminated but are limited and subject to the terms of this Trust Agreement, including but not limited to Section 5.7 herein.

(d)        No Trust Indemnified Party shall be personally liable under any circumstances, except for their own willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction.

(e)        No provision of this Trust Agreement shall require the Trust Indemnified Parties to expend or risk their own personal funds or otherwise incur financial liability in the performance of their rights, duties, and powers hereunder.

(f)        In the exercise or administration of the Trust hereunder, the Trust Indemnified Parties (i) may act directly or through their respective agents or attorneys pursuant to agreements entered into with any of them, and the Trust Indemnified Parties shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys have been selected by the Trust Indemnified Parties in good faith and with due care, and (ii) may consult with counsel, accountants and other professionals to be selected by them in good faith and with due care and employed by them, and shall not be liable for anything done, suffered or omitted in good faith by them in accordance with the advice or opinion of any such counsel, accountants or other professionals.

Section 5.9        *Indemnification.*

(a)        Without the need for further court approval, the Trust hereby indemnifies, holds harmless, and defends the Trust Indemnified Parties in the performance of their duties hereunder to the fullest extent that a trust, including a statutory trust organized under the laws of the State of Delaware, is entitled to indemnify, hold harmless and defend such persons against any

and all liabilities, expenses, claims, damages or losses (including attorneys' fees and costs) incurred by them in the performance of their duties hereunder or in connection with activities undertaken by them prior to or after the Effective Date in connection with the formation, establishment, funding or operations of the Trust except for those acts that are finally judicially determined by a court of competent jurisdiction to have arisen out of their own willful misconduct, bad faith, or fraud.

(b)     Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of the Trust Indemnified Parties in connection with any action, suit or proceeding, whether civil, administrative or arbitrative, from which they are indemnified by the Trust shall be paid by the Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trust Indemnified Parties, to repay such amount in the event that it shall be determined ultimately by final order of the Bankruptcy Court that the Trust Indemnified Parties or any other potential indemnitee are not entitled to be indemnified by the Trust.

(c)     The Trustee shall purchase and maintain appropriate amounts and types of insurance on behalf of the Trust Indemnified Parties, as determined by the Trustee, which may include liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trust Indemnified Party, and/or as an employee, agent, lawyer, advisor or consultant of any such person.

(d)     The indemnification provisions of this Trust Agreement with respect to any Trust Indemnified Party shall survive the termination of such Trust Indemnified Party from the capacity for which such Trust Indemnified Party is indemnified. Termination or modification of this Trust Agreement shall not affect any indemnification rights or obligations in existence at such time. In making a determination with respect to entitlement to indemnification of any Trust Indemnified Party hereunder, the person, persons or entity making such determination shall presume that such Trust Indemnified Party is entitled to indemnification under this Trust Agreement, and any person seeking to overcome such presumption shall have the burden of proof to overcome the presumption.

(e)     The rights to indemnification hereunder are not exclusive of other rights which any Trust Indemnified Party may otherwise have at law or in equity, including common law rights to indemnification or contribution.

Section 5.10    *Bond.* The Trustee and the Delaware Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

Section 5.11    *Delaware Trustee.*

(a)     There shall at all times be a Delaware Trustee. The Delaware Trustee shall either be (i) a natural person who is at least twenty-one (21) years of age and a resident of the State of Delaware, or (ii) a legal entity that has its principal place of business in the State of Delaware, otherwise meets the requirements of applicable Delaware law to be eligible to serve as the Delaware Trustee and shall act through one or more persons authorized to bind such entity. If at any time the Delaware Trustee shall cease to be eligible in accordance with the provisions of this

*Subject to Material Revision*

Section 5.11, it shall resign immediately in the manner and with the effect hereinafter specified in Section 5.11(c) below. For the avoidance of doubt, the Delaware Trustee will only have such rights, duties and obligations as expressly provided by reference to the Delaware Trustee hereunder. The Trustee shall have no liability for the acts or omissions of any Delaware Trustee.

(b)    The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities of the Trustee set forth herein. The Delaware Trustee shall be a trustee of the Trust for the sole and limited purpose of fulfilling the requirements of Section 3807(a) of the Act and for taking such actions as are required to be taken by a Delaware Trustee under the Act. The duties (including fiduciary duties), liabilities and obligations of the Delaware Trustee shall be limited to accepting legal process served on the Trust in the State of Delaware and the execution of any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute under Section 3811 of the Act. There shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee. To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating to the Trust or the Beneficiaries, such duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Trust Agreement. The Delaware Trustee shall have no liability for the acts or omissions of the Trustee. Any permissive rights of the Delaware Trustee to do things enumerated in this Trust Agreement shall not be construed as a duty and, with respect to any such permissive rights, the Delaware Trustee shall not be answerable for other than its willful misconduct, bad faith or fraud. The Delaware Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Trust Agreement at the request or direction of the Trustee or any other person pursuant to the provisions of this Trust Agreement unless the Trustee or such other person shall have offered to the Delaware Trustee security or indemnity (satisfactory to the Delaware Trustee in its discretion) against the costs, expenses and liabilities that may be incurred by it in compliance with such request or direction. The Delaware Trustee shall be entitled to request and receive written instructions from the Trustee and shall have no responsibility or liability for any losses or damages of any nature that may arise from any action taken or not taken by the Delaware Trustee in accordance with the written direction of the Trustee. The Delaware Trustee may, at the expense of the Trust, request, rely on and act in accordance with officer's certificates and/or opinions of counsel, and shall incur no liability and shall be fully protected in acting or refraining from acting in accordance with such officer's certificates and opinions of counsel.

(c)    The Delaware Trustee shall serve until such time as the Trustee removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Trustee in accordance with the terms of Section 5.11(d) below. The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days' advance written notice to the Trustee, provided that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Trustee in accordance with Section 5.11(d) below, provided further, that if any amounts due and owing to the Delaware Trustee hereunder remain unpaid for more than ninety (90) days, the Delaware Trustee shall be entitled to resign immediately by giving written notice to the Trustee. If the Trustee does not act within such sixty (60) day period, the Delaware Trustee, at the expense of the Trust, may apply to the Court of Chancery of the State of Delaware or any other court of competent jurisdiction for the appointment of a successor Delaware Trustee.

(d)     Upon the resignation or removal of the Delaware Trustee, the Trustee shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee. Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Act. Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Trustee, and any fees and expenses due to the outgoing Delaware Trustee are paid. Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Trust Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of his or her duties and obligations under this Trust Agreement. The successor Delaware Trustee shall make any related filings required under the Act, including filing a Certificate of Amendment to the Certificate of Trust in accordance with Section 3810 of the Act.

(e)     Notwithstanding anything herein to the contrary, any business entity into which the Delaware Trustee may be merged or converted or with which it may be consolidated or any entity resulting from any merger, conversion or consolidation to which the Delaware Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor of the Delaware Trustee hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto.

(f)     The Delaware Trustee shall be entitled to compensation for its services as agreed pursuant to a separate fee agreement between the Trust and the Delaware Trustee, which compensation shall be paid by the Trust. Such compensation is intended for the Delaware Trustee's services as contemplated by this Trust Agreement. The terms of this paragraph shall survive termination of this Trust Agreement and/or the earlier resignation or removal of the Delaware Trustee.

(g)     The Delaware Trustee shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument or document, other than this Trust Agreement, whether or not, an original or a copy of such agreement has been provided to the Delaware Trustee. The Delaware Trustee shall have no duty to know or inquire as to the performance or nonperformance of any provision of any other agreement, instrument or document, other than this Trust Agreement. Neither the Delaware Trustee nor any of its directors, officers, employees, agents or affiliates shall be responsible for nor have any duty to monitor the performance or any action of the Trust, the Trustee or any other person, or any of their directors, members, officers, agents, affiliates or employee, nor shall it have any liability in connection with the malfeasance or nonfeasance by such party. The Delaware Trustee may assume performance by all such persons of their respective obligations. The Delaware Trustee shall have no enforcement or notification obligations relating to breaches of representations or warranties of any other person. The Delaware Trustee shall have no responsibilities (except as expressly set forth herein) as to the validity, sufficiency, value, genuineness, ownership or transferability of any Trust Asset, written instructions, or any other documents in connection therewith, and will not, be regarded as making nor be required to make, any representations thereto.

(h)     The Delaware Trustee shall not be responsible or liable for any failure or delay in the performance of its obligations under this Trust Agreement arising out of, or caused,

directly or indirectly, by circumstances beyond its control, including without limitation, any act or provision of any present or future law or regulation or governmental authority; acts of God; earthquakes; fires; floods; wars; terrorism; civil or military disturbances; sabotage; epidemics; riots; interruptions, loss or malfunctions of utilities, computer (hardware or software) or communications service; accidents; labor disputes; acts of civil or military authority or governmental actions; or the unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility.

Section 5.12    *Meeting Minutes.*

The minutes of proceedings of the Trustee shall be kept in written form (which may be electronic) at such place or places designated by the Trustee, or, in the absence of such designation, at the principal office of the Trust.

Section 5.13    *Matters Requiring Consultation with STAC and FCR.*

The Trustee shall consult with the STAC and the FCR on each of the following:

(a)    The selection and/or replacement of the claims processor;

(b)    The form(s) of release to be executed by a Beneficiary;

(c)    An annual estimate of the budget for the Trust Operating Expenses; and

(d)    The administration, investment of assets of, and expenses to be charged against the Future Abuse Claims Reserve;

Section 5.14    *Matters Requiring Consent of STAC and FCR.*

The Trustee shall obtain the consent of the STAC and the FCR for each of the following:

(a)    The determination of the Initial Payment Percentage and any subsequent adjustment to the Payment Percentage;

(b)    Any proposed modification to the indemnification provisions of the Trust Agreement;

(c)    Any proposed sale, transfer or exchange of Trust Assets above $[●] (any proposed sale of Trust Assets below such amount shall not require STAC and FCR consent);

(d)    Any appointment or retention of the Special Reviewer or any successor Special Reviewer in the event of a vacancy in such position for any reason;

(e)    Any proposed material modifications to the Trust Agreement and/or the TDP, if and as required by the consent provisions set forth therein;

*Subject to Material Revision*

(f)     Any proposed increase or decrease in the size of the Future Abuse Claims Reserve; and

(g)     The (i) commencement or continuation of a lawsuit by Direct Abuse Claimants against the Trust pursuant to a STAC Tort Election Claim, as set forth in Article XII.C of the TDP subject to the terms of Section 6.4(a) below, and (ii) approval and execution of any Global Settlement, subject to the terms of Section 6.4(b) below.

## ARTICLE 6.
## SETTLEMENT TRUST ADVISORY COMMITTEE

Section 6.1     *Members; Action by Members.* The STAC shall consist of seven (7) members selected to represent the interests of holders of current Abuse Claims. Five (5) members of the STAC shall be "**Coalition Appointees**" and two (2) members of the STAC shall be "**Committee Appointees**." Except as otherwise set forth in this ARTICLE 6, the STAC shall act by majority vote of STAC members then serving, provided however, the STAC may continue to act in the event of one or more vacancies on the STAC, in which case majority vote of the STAC members then serving shall be required for action by the STAC.

Section 6.2     *Duties.* The members of the STAC (and their designees) shall serve in a fiduciary capacity representing current holders of Abuse Claims. The STAC shall not have any fiduciary duties or responsibilities to any party other than holders of current Abuse Claims. Except for the duties and obligations expressed in this Trust Agreement and the TDP, there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the STAC. To the extent that, at law or in equity, the STAC has duties (including fiduciary duties) and liabilities relating thereto to the Trust, the other parties hereto, or any Beneficiary, such duties and liabilities are replaced by the duties and liabilities of the STAC expressly set forth in this Trust Agreement and the TDP.

Section 6.3     *STAC Information Rights.*

The STAC shall have reasonable access to the Trust's consultants and other advisors retained by the Trust and its staff (if any), and information available to the Trustee, which access shall be made available as determined by the Trustee in his or her discretion.

Section 6.4     *Additional Provisions regarding Certain STAC Consent Rights.*

(a)     Notwithstanding Section 5.14(g) above, any consent of the STAC and the FCR with respect to any request to the Trustee to authorize the commencement or continuation of a lawsuit by a Direct Abuse Claimant against the Trustee pursuant to a STAC Tort Election Claim, as set forth in Article XII.C of the TDP, shall be subject to the following provisions:

In the event the Trustee determines, or would be required based on the consent provisions above, not to authorize the commencement or continuation of a lawsuit by a Direct Abuse Claimant with respect to a STAC Tort Election Claim, then any three (3) members of the STAC may request a special review by providing such a request to the Trustee in writing (the date on which such request is received by the Trustee, the "**Tort Election Request Date**"), in which case the matter shall be referred to the **Special Reviewer** for further consideration. The

Special Reviewer shall consider the matter and shall solicit or receive such information from the Trustee, the FCR and any STAC members as any of them deems appropriate or necessary. The Special Reviewer shall evaluate the matter pursuant to the following standard: whether the determination not to authorize the commencement or continuation of a lawsuit by a Direct Abuse Claimant with respect to a STAC Tort Election Claim, was, under all the relevant circumstances, unreasonable. The Special Reviewer shall require that the burden of proof be on the three (3) objecting STAC members to show by a preponderance of the evidence that the Trustee's determination not to authorize the commencement or continuation of a such lawsuit was, under all the relevant circumstances, unreasonable. The Special Reviewer shall deliver a written determination of such matter within ten (10) business days from the Tort Election Request Date, unless the Trustee reasonably requests an expedited determination. [The determination of the Special Reviewer shall be final and shall be binding on all parties.]

(b) Notwithstanding Section 5.14(g) above, with respect to the authorization of the Trustee to enter into a Global Settlement, the following provisions shall apply:

In the event the Trustee determines to proceed with the Global Settlement, then notwithstanding the majority vote of the STAC approving the Trustee's determination to proceed with the Global Settlement, any three (3) members of the STAC may request a special review by providing such a request to the Trustee in writing (the date on which such request is received by the Trustee, the "**Global Settlement Request Date**"), in which case the matter shall be referred to the Special Reviewer for further consideration. The Special Reviewer shall consider the matter and shall solicit or receive such information from the Trustee, the FCR and any STAC members as any of them deems appropriate or necessary. The Special Reviewer shall evaluate the matter pursuant to the following standard: whether the Trustee's determination to approve a Global Settlement that causes an Insurance Company or a Chartered Organization to become a Protected Party within the meaning of the Plan was, under all the relevant circumstances, unreasonable. The Special Reviewer shall require that the burden of proof be on the three (3) objecting STAC members to show by a preponderance of the evidence that the Trustee's determination to approve such Global Settlement was, under all the relevant circumstances, unreasonable. The Special Reviewer shall deliver a written determination of such matter within ten (10) business days from the Global Settlement Request Date, unless the Trustee reasonably requests an expedited determination. [The determination of the Special Reviewer shall be final and shall be binding on all parties.]

Section 6.5    *Term of Office.*

(a)    Each Member of the STAC shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 6.5(b) below, (iii) his or her removal pursuant to Section 6.5(c) below, and (iv) the termination of the Trust pursuant to Section 8.2 below.

(b)    A member of the STAC may resign at any time by written notice to the other members of the STAC and the Trustee. Such notice shall specify a date when such resignation shall take effect, which shall not be less than thirty (30) days after the date such notice is given, where practicable.

(c)     A member of the STAC may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or for other good cause, provided the member of the STAC has received reasonable notice and an opportunity to be heard. Other good cause shall mean fraud, self-dealing, intentional misrepresentation, willful misconduct, indictment for or conviction of a felony in each case whether or not connected to the Trust or a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, such as repeated non-attendance at scheduled meetings. Such removal shall require the majority vote of the other members of the STAC and such removal shall take effect only upon the approval of the Bankruptcy Court.

Section 6.6     *Appointment of Successor.*

(a)     In the event of a STAC member vacancy, (i) if the vacancy has occurred with respect to a Coalition Member, the remaining Coalition Members shall nominate a successor STAC Member, provided however, that if there are no remaining Coalition Members, then the Trustee shall select the successor Coalition Members, and (ii) if the vacancy has occurred with respect to a Committee Member, the remaining Committee Member shall nominate a successor STAC Member who shall be reasonably acceptable to the majority of the Coalition Members, provided however that in the event there are no remaining Committee Members, then the Special Reviewer shall nominate two individuals to serve as Committee Members, who shall be reasonably acceptable to the majority of the Coalition Members. The Special Reviewer may consult with the SASAC regarding the nomination of such individuals. In the event of a dispute or deadlock with respect to filling any vacancy with respect to any STAC Member as set forth in this Section 6.6, the dispute resolution provisions of Section 8.16 below shall apply.

(b)     Each successor member of the STAC shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 6.5(b) above, (iii) his or her removal pursuant to Section 6.5(c) above, and (iv) the termination of the Trust pursuant to Section 8.2 below.

(c)     No successor STAC member shall be liable personally for any act or omission of his or her predecessor STAC member. No successor STAC member shall have any duty to investigate the acts or omissions of his or her predecessor STAC member. No STAC member shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

Section 6.7     *Compensation and Expenses of the STAC.* The members of the STAC (or their designees, as applicable) shall not be entitled to compensation for their services but shall be reimbursed promptly for all reasonable and documented ordinary and customary out-of-pocket costs and expenses incurred in connection with the performance of their duties hereunder, subject to the limitation of Section 8.16 below. The Trust shall include a description of the amounts paid under this Section 6.7 in the Annual Report to be posted on the Trust's Website.

Section 6.8     *Procedures for Consultation with and Obtaining the Consent of the STAC.*

(a)     Consultation Process.

*Subject to Material Revision*

(i)      In the event the Trustee is required to consult with the STAC pursuant to Section 5.13 above, the Trustee shall provide the STAC with written advance notice of the matter under consideration, to the extent practicable, and with all relevant information and documents concerning the matter as is reasonably practicable under the circumstances. The Trustee shall also provide the STAC with such reasonable access to the consultants and other advisors retained by the Trust and its staff (if any) as the STAC may reasonably request during the time that the Trustee is considering such matter, and shall also provide the STAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustee, to the extent practicable.

(ii)     In determining when to take definitive action on any matter subject to the consultation procedures set forth in this Section 6.8(a), the Trustee shall take into consideration the time required for the STAC to meet and consult as to such matter. In any event, the Trustee shall not take definitive action on any such matter until at least [●] business days after providing the STAC with the initial written notice that such matter is under consideration by the Trustee, unless such time period is waived in writing by the STAC or at a meeting where the STAC and Trustee are present, or the Trustee determines in his reasonable discretion that definitive action is required earlier.

(b)      Consent Process. Subject to the provisions of Section 5.14 above, the following consent process shall apply.

(i)      In the event the Trustee is required to obtain the consent of the STAC pursuant to Section 5.14 above, the Trustee shall provide the STAC with a written notice stating that its consent is being sought, describing in detail the nature and scope of the action the Trustee proposes to take, and explaining in detail the reasons why the Trustee desires to take such action. The Trustee shall provide the STAC as much relevant additional information concerning the proposed action as is requested by the STAC and as is reasonably practicable under the circumstances. The Trustee shall also provide the STAC with such reasonable access to the Trust consultants and other advisors retained by the Trust and its staff (if any) as the STAC may reasonably request during the time that the Trustee is considering such action, and shall also provide the STAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustee.

(ii)     The STAC must consider in good faith and in a timely fashion any request for its consent by the Trustee, and must in any event advise the Trustee, in writing, of its consent or its objection to the proposed action within [●] business days of receiving the original request for consent from the Trustee, unless the Trustee extends the time for such response. The STAC may not withhold its consent unreasonably. If the STAC decides to withhold its consent, it must explain in detail its objections to the proposed action. If the STAC does not advise the Trustee, in writing, of its consent or its objections to the action within [●] business days of receiving notice regarding such request (or within such additional time as may be granted by the Trustee in his or her discretion), the STAC's consent to the proposed actions shall be deemed to have been affirmatively granted.

(iii)    If, after following the procedures specified in this Section 6.8(b), the STAC continues to object to the proposed action and to withhold its consent to the proposed action,

the Trustee and/or the STAC shall resolve their dispute pursuant to Section 8.16 below, provided however in that event the STAC shall have the burden of proof to show the validity of the STAC's objection. For the avoidance of doubt, the matters described in Section 5.14(g) above shall be determined solely in accordance with the terms of that Section 5.14(g).

# ARTICLE 7.
# THE FCR

Section 7.1     *Duties.* There shall be one FCR for the Trust. The initial FCR is James L. Patton, Jr. The FCR shall serve in a fiduciary capacity on behalf of the holders of Future Abuse Claims, representing the interests of holders of Future Abuse Claims against the Debtors for the purpose of protecting the rights of such persons. The FCR shall not have any fiduciary duties or responsibilities to any party other than the holders of Future Abuse Claims. Except for the duties and obligations expressed in the Trust Documents, there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the FCR. To the extent that, at law or in equity, the FCR has duties (including fiduciary duties) and liabilities relating thereto to the Trust, the other parties hereto, or to any Beneficiary, such duties and liabilities are replaced by the duties and liabilities of the FCR expressly set forth in the Trust Documents.

Section 7.2     *FCR Information Rights.*

The FCR shall have reasonable access to the Trust's consultants and other advisors retained by the Trust and its staff (if any), and information available to the Trustee, which access shall be made available as determined by the Trustee.

Section 7.3     *Term of Office.*

(a)     The FCR shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 7.3(b) below, (iii) his or her removal pursuant to Section 7.3(c) below, and (iv) the termination of the Trust pursuant to Section 8.2 below.

(b)     The FCR may resign at any time by written notice to the Trustee. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)     At the request of the Trustee, the FCR may be removed by the Bankruptcy Court in the event he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or for other good cause, provided the FCR has received notice and an opportunity to be heard. Other good cause shall mean fraud, self-dealing, intentional misrepresentation, willful misconduct, indictment for or conviction of a felony in each case whether or not connected to the Trust or a consistent pattern of neglect and failure to perform or to participate in performing the duties hereunder, such as a pattern of repeated non-attendance at scheduled meetings.

Section 7.4     *Appointment of Successor.* In the event of the death, resignation or removal of James L. Patton, Jr. as the initial FCR, such vacancy shall immediately be filled by a successor to be appointed pursuant to the terms and conditions of this agreement, who shall thereafter serve as FCR pursuant to the terms of the Trust Documents. In the event of the death, resignation, or

removal of any successor FCR, such vacancy shall be filled with an individual nominated by the Trustee, with the consent of the STAC. In the event the STAC does not consent to the individual nominated by the Trustee, then the successor FCR shall be appointed by the Bankruptcy Court. Immediately upon any successor FCR filing a vacancy as provided in this Section 7.4, all rights, titles, duties, powers and authority of the predecessor FCR hereunder shall be vested in and undertaken by the successor FCR without any further act. No successor FCR shall be liable personally for any act or omission of any predecessor FCR. No predecessor FCR shall be liable personally for any act or omission of any successor FCR. No FCR shall be required to post any bond or other form of surety of security unless otherwise ordered by the Bankruptcy Court.

Section 7.5    *FCR's Employment of Professionals.* The FCR may, but is not required to, retain and/or consult legal counsel, accountants, appraisers, auditors, forecasters, experts, financial and investment advisors and such other parties deemed by the FCR to be qualified as experts on matters submitted to the FCR (the "**FCR Professionals**"), provided however that no FCR Professionals may be retained to act on behalf of any individual holder of an Abuse Claim.

(b)    The fees and expenses of the FCR Professionals shall be paid from the Future Abuse Reserve Fund and a description of the amounts paid under this Section 7.5 (in the aggregate with the amounts paid under Section 7.6 below) shall be described in the Annual Report to be posted on the Trust Website.

Section 7.6    *Compensation and Expenses of the FCR.*

(a)    The FCR shall receive compensation from the Trust in the form of payment at the FCR's normal hourly rate, as such rate may be adjusted by the FCR from time to time, for services performed, subject to the approval of the Trustee. The Trust will promptly reimburse the FCR for all reasonable and documented out-of-pocket costs and expenses incurred by the FCR in connection with the performance of his or her duties hereunder.

(b)    The compensation, out-of-pocket costs and expenses of the FCR shall be paid from the Future Abuse Reserve Fund and a description of the amounts paid under this Section 7.6 (in the aggregate with the amounts paid under Section 7.5 above) shall be described in the Annual Report to be posted on the Trust Website.

Section 7.7    *Procedures for Consultation with and Obtaining the Consent of the FCR.*

(a)    Consultation Process.

(i)    In the event the Trustee is required to consult with the FCR pursuant to Section 5.13 above, the Trustee shall provide the FCR with written advance notice of the matter under consideration, and with all relevant information and documents concerning the matter as is reasonably practicable under the circumstances, to the extent practicable. The Trustee shall also provide the FCR with such reasonable access to the Trust's consultants and other advisors retained by the Trust and its staff (if any) as the FCR may reasonably request during the time that the Trustee is considering such matter, and shall also provide the FCR the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustee, to the extent practicable.

(ii)     In determining when to take definitive action on any matter subject to the consultation process set forth in this Section 7.7(a), the Trustee shall take into consideration the time required for the FCR, if he or she so wishes, to engage and consult with his or her own independent advisors as to such matter. In any event, the Trustee shall not take definitive action on any such matter until at least [●] business days after providing the FCR with the initial written notice that such matter is under consideration by the Trustee, unless such period is waived in writing by the FCR or at a meeting where the FCR and Trustee are present or the Trustee determines in his reasonable discretion that definitive action is required earlier.

(b)     Consent Process.

(i)     In the event the Trustee is required to obtain the consent of the FCR pursuant to Section 5.14 above, the Trustee shall provide the FCR with a written notice stating that his or her consent is being sought, describing in detail the nature and scope of the action the Trustee proposes to take, and explaining in detail the reasons why the Trustee desires to take such action, to the extent practicable. The Trustee shall provide the FCR as much relevant additional information concerning the proposed action as is requested by the FCR and as is reasonably practicable under the circumstances. The Trustee shall also provide the FCR with such reasonable access to the Trust's consultants and other advisors retained by the Trust and its staff (if any) as the FCR may reasonably request during the time that the Trustee is considering such action, and shall also provide the FCR the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustee, to the extent practicable.

(ii)     The FCR must consider in good faith and in a timely fashion any request for his or her consent by the Trustee, and must in any event advise the Trustee, in writing, of his or her consent or objection to the proposed action within [●] business days of receiving the original request for consent from the Trustee, unless the Trustee extends the time for such response. The FCR may not withhold his or her consent unreasonably. If the FCR decides to withhold consent, he or she must explain in detail his or her objections to the proposed action. If the FCR does not advise the Trustee, in writing, of his or her consent or objection to the proposed action within [●] business days of receiving the notice from the Trustee regarding such request (or within such additional time as may be granted by the Trustee in his or her discretion), the FCR's consent shall be deemed to have been affirmatively granted.

(iii)     If, after following, the procedures specified in this Section 7.7(b), the FCR continues to object to the proposed action and to withhold his or her consent to the proposed action, the Trustee and/or the FCR shall resolve their dispute pursuant to Section 8.16 below, provided however in that event the FCR shall have the burden of proof to show the validity of the FCR's objection. For the avoidance of doubt, notwithstanding the foregoing provisions of this Section 7.7(b), in the event any matter has been referred to the Special Reviewer pursuant to Sections 6.4(a) or (b) above, then the final decision of the Special Reviewer shall be final and binding on all parties, without regard to any consent of the FCR or lack thereof.

*Subject to Material Revision*

## ARTICLE 8.
## GENERAL PROVISIONS

Section 8.1    *Irrevocability.* To the fullest extent permitted by applicable law, the Trust is irrevocable. The Settlor shall not (i) retain any ownership or residual interest whatsoever with respect to any Trust Assets, including, but not limited to, the funds transferred to fund the Trust, and (ii) have any rights or role with respect to the management or operation of the Trust, or the Trustee's administration of the Trust.

Section 8.2    *Term; Termination.*

(a)    The term for which the Trust is to exist shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the following provisions.

(b)    The Trust shall automatically dissolve as soon as practicable but no later than ninety (90) days after the date on which the Bankruptcy Court approves the dissolution of the Trust because (i) all reasonably expected assets have been collected by the Trust, (ii) all distributions have been made to the extent set forth in the TDP, (iii) necessary arrangements and reserves have been made to discharge all anticipated remaining Trust obligations and Trust Operating Expenses in a manner consistent with the Trust Documents, and (iv) a final accounting has been filed and approved by the Bankruptcy Court (the "**Dissolution Date**").

(c)    Following the dissolution and distribution of the Trust Assets, the Trust shall terminate, and the Trustee and the Delaware Trustee (acting solely at the written direction of the Trustee) shall execute and cause a Certificate of Cancellation of the Certificate of Trust to be filed in accordance with the Act. Notwithstanding anything to the contrary contained in this Trust Agreement, the existence of the Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation.

(d)    After termination of the Trust and solely for the purpose of liquidating and winding up its affairs, the Trustee shall continue to act as Trustee until its duties hereunder have been fully performed. The Trustee shall retain the books, records, documents and files that shall have been delivered to or created by the Trustee until distribution of all the Trust Assets. For purposes of this provision, Trust Assets will be deemed distributed when the total amount remaining in the Trust is less than $50,000 and no further actions are pending or have yet to be brought. At the Trustee's discretion, all of such books, records, documents and files may be destroyed at any time following the later of: (i) the first anniversary of the final distribution of the Trust Assets, and (ii) the date until which the Trustee is required by applicable law to retain such books, records, documents and files; provided however, that, notwithstanding the foregoing, the Trustee shall not destroy or discard any books, records, documents or files relating to the Trust without giving Reorganized BSA the opportunity to take control of such books, records, documents and/or files.

(e)    Upon termination of the Trust and accomplishment of all activities described in this agreement, the Trustee and its professionals shall be discharged and exculpated from liability (except for acts or omissions resulting from the recklessness, gross negligence, willful misconduct, knowing and material violation of law or fraud of the Trustee or his agents or

31

representatives). The Trustee may, at the expense of the Trust, seek an Order of the Bankruptcy Court confirming the discharges, exculpations and exoneration referenced in the preceding sentence.

Section 8.3    *Outgoing Trustee Obligations.*

In the event of the resignation or removal of the Trustee, the resigning or removed Trustee shall:

(a)    execute and deliver by the effective date of resignation or removal such documents, instruments, records and other writings as may be reasonably requested by the successor Trustee to effect such resignation or removal and the conveyance of the Trust Assets then held by the resigning or removed Trustee to the successor Trustee;

(b)    deliver to the successor Trustee all documents, instruments, records and other writings relating to the Trust Assets as may be in the possession or under the control of the resigning or removed Trustee;

(c)    otherwise assist and cooperate in effecting the assumption of the resigning or removed Trustee's obligations and functions by the successor Trustee; and

(d)    irrevocably appoint the successor Trustee (and any interim trustee) as its attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such resigning or removed Trustee is obligated to perform under this Trust Agreement. Such appointment shall not be affected by the subsequent disability or incompetence of the Trustee making such appointment. The Bankruptcy Court also may enter such orders as are necessary to effect the termination of the appointment of the Trustee and the appointment of the successor Trustee.

Section 8.4    *Taxes.*

(a)    The Trust is intended to qualify as a "qualified settlement fund" within the meaning of Section 1.468B-1 et seq. of the Treasury Regulations promulgated under Section 468B of the IRC, as amended (the "**QSF Regulations**"), with respect to which Reorganized BSA shall timely make an election to treat the Trust as a "grantor trust" for U.S. federal income tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes.

(b)    The Trustee shall be the "administrator" of the Trust within the meaning of Section 1.468B-2(k)(3) of the Treasury Regulations and, in such capacity, such administrator shall (i) prepare and timely file, or cause to be prepared and timely filed, such income tax and other tax returns and statements required to be filed and shall timely pay all taxes required to be paid by the Trust out of the Trust Assets, which assets may be sold by the Trustee to the extent necessary to satisfy tax liabilities of the Trust, (ii) comply with all applicable tax reporting and withholding obligations, (iii) satisfy all requirements necessary to qualify and maintain qualification of Trust as a qualified settlement fund and a grantor trust, within the meaning of the QSF Regulations, and (iv) take no action that could cause the Trust to fail to qualify as a qualified settlement fund and a grantor trust within the meaning of the QSF Regulations. The Trustee may request an expedited

determination under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the Trust for all taxable periods through the Dissolution Date.

(c)      As soon as reasonably practicable after the Effective Date, but in no event later than one hundred twenty (120) days thereafter, the Trust shall make a good faith valuation of the Aggregate Settlement Consideration and such valuation shall be used consistently by all parties for all U.S. federal income tax purposes. In connection with the preparation of the valuation contemplated hereby, the Trust shall be entitled to retain such professionals and advisors as the Trustee shall determine to be appropriate or necessary, and the Trustee shall take such other actions in connection therewith as he or she determines to be appropriate or necessary.

(d)      The Trustee may withhold and pay to the appropriate tax authority all amounts required to be withheld pursuant to the IRC or any provision of any foreign, state or local tax law with respect to any payment or distribution. All such amounts withheld and paid to the appropriate tax authority (or placed in escrow pending resolution of the need to withhold) shall be treated as amounts distributed or paid for all purposes of this Trust Agreement. The Trustee shall be authorized to collect such tax information (including tax identification numbers) as in his or her sole discretion is deemed necessary to effectuate the Plan, the Confirmation Order and this Trust Agreement. In order to receive distributions, all Beneficiaries shall be required to provide tax information to the Trustee to the extent the Trustee deems appropriate in the manner and in accordance with the procedures from time to time established by the Trustee for these purposes. The Trustee may refuse to make a payment or distribution unless or until such information is delivered; provided however, that, upon the delivery of such information, the Trustee shall make such delayed payment or distribution, without interest. Notwithstanding the foregoing, if a person fails to furnish any tax information reasonably requested by the Trustee before the date that is three hundred sixty-five (365) calendar days after the request is made, the amount of such distribution shall irrevocably revert to the Trust. In no event shall any escheat to any federal, state or local government or any other entity.

(e)      The Trust agrees to indemnify, defend and hold Reorganized BSA and its affiliates harmless on an after-tax basis from and against: (i) all taxes, losses, claims and expenses imposed on, asserted against or attributable to the properties, income or operations of Reorganized BSA or its affiliates or any Taxes for which Reorganized BSA or its affiliates are otherwise liable, in each case resulting from, arising out of, or incurred with respect to, any claims that may be asserted by any party based on, attributable to, or resulting from the election to treat the Trust as a "grantor trust" within the meaning of the QSF Regulations pursuant to Section 8.4(a).

Section 8.5      *Modification.*

(a)      Material modifications to this Trust Agreement, including Exhibits hereto, may be made only with the consent of the Trustee, the majority of the STAC, and the FCR (which consent in each case shall not be unreasonably withheld, conditioned or delayed) and subject to the approval of the Bankruptcy Court; provided however, that the Trustee may amend this Trust Agreement from time to time without the consent, approval or other authorization of, but with notice to, the Bankruptcy Court, to make minor corrective or clarifying amendments necessary to enable the Trustee to effectuate the provisions of this Trust Agreement, provided such minor corrective or clarifying amendments shall not take effect until ten (10) days after notice to the

Bankruptcy Court. Except as permitted pursuant to the preceding sentence, the Trustee shall not modify this Trust Agreement in any manner that is inconsistent with the Plan or the Confirmation Order without the approval of the Bankruptcy Court. The Trustee shall file notice of any modification of this Trust Agreement with the Bankruptcy Court and post such notice on the Trust Website.

(b)        Notwithstanding anything set forth in this Trust Agreement to the contrary, none of this Trust Agreement, nor any document related thereto shall be modified or amended in any way that could jeopardize or impair (i) the applicability of section 105 of the Bankruptcy Code to the Plan and the Confirmation Order, (ii) the efficacy or enforceability of the Channeling Injunction or any other injunction or release issued or granted in connection with the Plan and Confirmation Order, (iii) the Trust's qualified settlement fund status and grantor trust status under the QSF Regulations, or (iv) the rights, duties, liabilities and obligations of the Delaware Trustee without the written consent of the Delaware Trustee.

Section 8.6    *Communications.* The Trustee shall establish and maintain the Trust Website and post on the Trust Website the information required by this Trust Agreement, and such other information as the Trustee determines.

Section 8.7    *Severability.* If any provision of this Trust Agreement or application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provisions to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

Section 8.8    *Notices.* Any notices or other communications required or permitted hereunder to the following parties shall be in writing and delivered at the addresses designated below, or sent by email or facsimile pursuant to the instructions listed below, or mailed by overnight courier, addressed as follows, or to such other address or addresses as may hereafter be furnished in writing to each of the other parties listed below in compliance with the terms hereof.

To the Trustee:

with a copy (which shall not constitute notice) to:

To the Delaware Trustee:

with a copy (which shall not constitute notice) to:

To the FCR:

with a copy (which shall not constitute notice) to:

*Subject to Material Revision*

To the STAC:

with a copy (which shall not constitute notice) to:


To Reorganized BSA:

with a copy (which shall not constitute notice) to:

All such notices and communications, if mailed, shall be effective when physically delivered at the designated addresses, or if electronically transmitted, shall be effective upon transmission.

Section 8.9    *Successors and Assigns.* The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Trust, the Trustee, the STAC, the FCR, the Delaware Trustee and their respective successors and assigns, except that none of such persons may assign or otherwise transfer any of its, or their, rights or obligations under this Trust Agreement except, in the case of the Trust and the Trustee, as contemplated by Section 2.1 and Section 5.2 above, and in the case of the Delaware Trustee, as contemplated by Section 5.11 above.

Section 8.10    *Limitation on Transferability; Beneficiaries' Interests.* The Beneficiaries' interests in the Trust shall not (a) be assigned, conveyed, hypothecated, pledged or otherwise transferred, voluntarily or involuntarily, directly or indirectly and any purported assignment, conveyance, pledge or transfer shall be null and void *ab initio*; (b) be evidenced by a certificate or other instrument; (c) possess any voting rights; (d) give rise to any right or rights to participate in the management or administration of the Trust or the Trust Assets; (e) entitle the holders thereof to seek the removal or replacement of any Trustee, whether by petition to the Bankruptcy Court or any other court or otherwise; (f) entitle the holders thereof to receive any interest on distributions; and (g) give rise to any rights to seek a partition or division of the Trust Assets. In accordance with the Act, the Beneficiaries shall have no interest of any kind in any of the Trust Assets; rather, the Beneficiaries shall have an undivided beneficial interest only in cash assets of but only to the extent such cash assets are declared by the Trustee to be distributable as distributions in accordance with the Trust Documents. For the avoidance of doubt, the Beneficiaries shall have only such rights as expressly set forth in the Trust Documents.

Section 8.11    *Exemption from Registration.*

The Parties hereto intend that the rights of the Beneficiaries arising under this Trust Agreement shall not be "securities" under applicable laws, but none of the Parties hereto represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If it should be determined that any such interests constitute "securities," the Parties hereto intend that the exemption provisions of section 1145 of the Bankruptcy Code will be satisfied and the offer and sale under the Plan of the beneficial interests in the Trust will be exempt from registration under the Securities Act, all rules and regulations promulgated thereunder, and all applicable state and local securities laws and regulations.

*Subject to Material Revision*

Section 8.12    *Entire Agreement; No Waiver.*

The entire agreement of the parties relating to the subject matter of this Trust Agreement is contained herein and in the documents referred to herein, and this Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

Section 8.13    *Headings.* The headings used in this Trust Agreement are inserted for convenience only and do not constitute a portion of this Trust Agreement, nor in any manner affect the construction of the provisions of this Trust Agreement.

Section 8.14    *Governing Law.*

This Trust Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware, without regard to the conflicts of law provisions thereof which would purport to apply the law of any other jurisdiction. For the avoidance of doubt, none of the following provisions of Delaware law shall apply to the extent inconsistent with the terms of the Trust Documents: (a) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges, (b) affirmative requirements to post bonds for trustees, officers, agents or employees of a trust, (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding or disposition of property, (d) fees or other sums payable to trustees, officers, agents or employees of a trust, (e) the allocation of receipts and expenditures to income or principal, (f) restrictions or limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage or other manner of holding of trust assets, (g) the existence of rights or interests (beneficial or otherwise) in trust assets, (h) the ability of beneficial owners or other persons to terminate or dissolve a trust, and (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of trustees or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Trustee, the Delaware Trustee, the STAC, or the FCR set forth or referenced in this Trust Agreement. 12 Del. C. § 3540 shall not apply to the Trust.

Section 8.15    *Settlor's Representative.*

Pursuant to the Document Agreement (as defined in the Plan), Reorganized BSA is hereby irrevocably designated as the "**Settlor's Representative**" and is hereby authorized to take any action consistent with Reorganized BSA's obligations under the Document Agreement that is reasonably requested of the Settlor by the Trustee. Pursuant to the Document Agreement, the Settlor's Representative shall cooperate with the Trustee and the Trust's officers, employees and professionals in connection with the Trust's administration of the Aggregate Settlement Consideration, including, but not limited to, providing the Trustee or his or her officers, employees and professionals, upon written request (including e-mail), reasonable access to information related to the Aggregate Settlement Consideration, including, without limitation, delivery of documents in the possession of, or witnesses under the control of, Reorganized BSA [and others]

to the extent that the Trustee could obtain the same by subpoena, notice of deposition or other permissible discovery request, without the need for a formal discovery request.

Section 8.16    *Dispute Resolution.*

(a)    Unless otherwise expressly provided for herein, the dispute resolution procedures of this Section 8.16 shall be the exclusive mechanism to resolve any dispute between or among the parties hereto, and the Beneficiaries hereof, arising under or with respect to this Trust Agreement.

(b)    **Informal Dispute Resolution**. Any dispute under this Trust Agreement shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when a disputing party sends to the counterparty or counterparties a written notice of dispute ("**Notice of Dispute**"). Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed thirty (30) days from the date the Notice of Dispute is received by the counterparty or counterparties, unless that period is modified by written agreement of the disputing party and counterparty or counterparties. If the disputing party and the counterparty or counterparties cannot resolve the dispute by informal negotiations, then the disputing party may invoke the formal dispute resolution procedures as set forth below.

(c)    **Formal Dispute Resolution**. The disputing party shall invoke formal dispute resolution procedures, within the time period provided in the preceding subparagraph, by serving on the counterparty or counterparties a written statement of position regarding the matter in dispute ("**Statement of Position**"). The Statement of Position shall include, but need not be limited to, any factual data, analysis or opinion supporting the disputing party's position and any supporting documentation and legal authorities relied upon by the disputing party. Each counterparty shall serve its Statement of Position within thirty (30) days of receipt of the disputing party's Statement of Position, which shall also include, but need not be limited to, any factual data, analysis or opinion supporting the counterparty's position and any supporting documentation and legal authorities relied upon by the counterparty. If the disputing party and the counterparty or counterparties are unable to consensually resolve the dispute within thirty (30) days after the last of all counterparties have served its Statement of Position on the disputing party, the disputing party may file with the Bankruptcy Court a motion for judicial review of the dispute in accordance with Section 8.16(d) below. In the case of any dispute pursuant to this Section 8.16(c), if the dispute arose pursuant to the consent provision set forth in Section 5.14, the burden of proof shall be on the party or parties who withheld consent to show by a preponderance of the evidence that consent was not unreasonably withheld.

(d)    **Judicial Review**. The disputing party may seek judicial review of the dispute by filing with the Bankruptcy Court (or, if the Bankruptcy Court shall not have jurisdiction over any dispute, such court as has jurisdiction under Section 1.7 above) and serving on the counterparty or counterparties and the Trustee, a motion requesting judicial resolution of the dispute. The motion must be filed within forty-five (45) days of receipt of the last counterparty's Statement of Position pursuant to the preceding subparagraph. The motion shall contain a written statement of the disputing party's position on the matter in dispute, including any supporting factual data, analysis, opinion, documentation and legal authorities, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly administration

of the Trust. Each counterparty shall respond to the motion within the time period allowed by the rules the court, and the disputing party may file a reply memorandum, to the extent permitted by the rules of the court. In the case of any dispute pursuant to this Section 8.16(d), if the dispute arose pursuant to the consent provision set forth in Section 5.14, the burden of proof shall be on the party or parties who withheld consent to show by a preponderance of the evidence that consent was not unreasonably withheld. Each party shall bear its own costs and expenses of any judicial review under this Section 8.16(d), except that the Trust shall bear the reasonable costs and expenses of the STAC and the FCR in connection with any dispute described in the immediately preceding sentence.

Section 8.17    *Independent Legal and Tax Counsel.*

All parties to this Trust Agreement have been represented by counsel and advisors of their own selection in this matter. Consequently, the parties agree that the language in all parts of this Trust Agreement shall in all cases be construed as a whole according to its fair meaning and shall not be construed either strictly for or against any party. It is specifically acknowledged and understood that this Trust Agreement has not been submitted to, nor reviewed or approved by, the IRS or the taxing authorities of any state or territory of the United States of America.

Section 8.18    *Waiver of Jury Trial.*

Each party hereto and each Beneficiary hereof hereby irrevocably waives, to the fullest extent permitted by applicable law, any and all right to a trial by jury in any legal proceeding arising out of or relating to this Trust Agreement.

Section 8.19    *Effectiveness.*

This Trust Agreement shall not become effective until it has been executed and delivered by all the parties hereto.

Section 8.20    *Counterpart Signatures.*

This Trust Agreement may be executed in any number of counterparts, each of which shall constitute an original, but such counterparts shall together constitute but one and the same instrument. A signed copy of this Trust Agreement or any amendment hereto delivered by facsimile, email or other means of Electronic Transmission, shall be treated in all manner and respects as an original agreement or instrument and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

*[SIGNATURE PAGES TO FOLLOW]*

IN WITNESS WHEREOF, the parties have executed this Trust Agreement as of the date first set forth above to be effective as of the Effective Date.

[SETTLOR]

[TRUSTEE]

[DELAWARE TRUSTEE]

[STAC MEMBERS]

[FCR]

*Subject to Material Revision*

**EXHIBIT 1**
**AGGREGATE SETTLEMENT CONSIDERATION**

*Subject to Material Revision*

**EXHIBIT 2**
**CERTIFICATE OF TRUST**

*Subject to Material Revision*

**EXHIBIT 3**
**TRUST DISTRIBUTION PROCEDURES FOR ABUSE CLAIMS**

*Subject to Material Revision*

**EXHIBIT 4**
**INVESTMENT GUIDELINES**

**EXHIBIT C**

**CONTRIBUTING CHARTERED ORGANIZATION
SETTLEMENT CONTRIBUTION**

The Contributing Chartered Organization Settlement Contribution is comprised of the following monetary contributions, which shall be contributed to the Settlement Trust on the terms set forth in the applicable settlement agreements attached to the Plan as <u>Exhibit J</u>.

| TCJC | $250,000,000 |

**EXHIBIT D**

**CONTRIBUTING CHARTERED ORGANIZATIONS**

1.      The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole, including any affiliates or personnel.

**EXHIBIT E**

**FOUNDATION LOAN TERM SHEET**

National Boy Scouts of America Foundation Loan to Boy Scouts of America

Summary of Terms and Conditions

| Lender | National Boy Scouts of America Foundation (the "*Lender*") |
|---|---|
| Borrower | Boy Scouts of America (the "*Borrower*") |
| Guarantor | Arrow WV, Inc. (the "*Guarantor*") |
| Facility | $42.8 million term loan (the "*Loan*"), which shall be borrowed in a single draw on the effective date of the Plan (the "*Effective Date*"). <br><br> As used herein, the "*Plan*" means the Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [Dkt. No. 20], as may be amended on terms acceptable to Lender. |
| Term | 10 years commencing on the Effective Date. |
| Interest Rate & Interest Payments | 6.5%, subject to default interest of 2.0% on overdue amounts. <br><br> Interest shall be payable on a quarterly basis, with the first payment due at the end of the first fiscal quarter ended after the Effective Date. All outstanding interest shall be due and payable at maturity of the Loan. |
| Principal Payments | Principal payments shall be based on 10% per annum amortization. Such payments shall be made in equal quarterly installments for the duration of the Loan with the first payment due at the end of the first fiscal quarter ended after the Effective Date.  All outstanding principal shall be due and payable at maturity of the Loan. |
| Prepayments | Voluntary prepayments permitted without penalty. |
| Security | Second lien pledge of the Arrow Intercompany Note and proceeds received in respect thereof. <br><br> As used herein, the "*Arrow Intercompany Note*" means that certain Amended and Restated Promissory Note dated as of March 21, 2019 in the original principal amount of $350,000,000, executed by the Guarantor and payable to the Borrower. |
| Use of Proceeds | To fund working capital and general corporate purposes of the Borrower; provided that, for the avoidance of doubt, proceeds of the Loan shall not be used for Unauthorized Purposes. <br><br> As used herein, "*Unauthorized Purposes*" includes, without limitation, payments to any creditors' trust pursuant to the terms of the confirmed Plan, any direct or indirect payments to tort claimants, and any payments or transactions that would be considered "self-dealing" under the Internal Revenue Code or could otherwise give rise to excise tax. |
| Representations and Warranties | Usual and customary for loans of this type. |

| | |
|---|---|
| **Affirmative and Negative Covenants** | Usual and customary for loans of this type, including, without limitation, (a) prohibitions on actions that could be construed as self-dealing, and (b) extension of the maturity of the Arrow Intercompany Note from March 31, 2029 to a date that is later than the maturity date of the Loan. |
| **Financial Covenants** | Usual and customary for loans of this type with customary cushions. |
| **Reporting Requirements** | Usual and customary for loans of this type. |
| **Events of Default** | Usual and customary for loans of this type, including cross-acceleration solely to the JPMorgan Bank, N.A. credit facilities in existence on the Effective Date that are senior by way of contract to the Loan, as such credit facilities may be amended from time to time. |
| **Remedies** | Usual and customary for loans of this type. |
| **Assignment** | The Borrower cannot assign the Loan without the consent of the Lender. The Lender can assign the Loan at any time with the Borrower's consent, provided that if the Borrower is in payment or bankruptcy default under the Loan, then the Lender can assign the Loan without the consent of the Borrower. |
| **Conditions Precedent to the Loan** | Usual and customary for loans of this type, including, without limitation: (a) the execution and delivery of loan documentation reasonably satisfactory to the Borrower and the Lender and consistent with this Summary of Terms and Conditions, containing conditions to borrowing, repayment terms, representations, warranties, covenants, and events of default usual and customary for this type of loan; (b) the execution and delivery of an intercreditor and subordination agreement reasonably satisfactory to the Lender, between the Borrower, the Lender, and JPMorgan Chase Bank, N.A.; (c) JPMorgan Chase Bank, N.A. shall have consented to the Borrower's pledge to Lender of a second lien security interest in the Arrow Intercompany Note and proceeds received in respect thereof; (d) the satisfactory completion of the Lender's reasonable due diligence and the obtaining of any approvals or consents deemed necessary or appropriate upon the advice of counsel to the Lender; (e) entry of a confirmation order on terms reasonably acceptable to the Lender; and (f) the effectiveness of the Plan containing terms acceptable to the Borrower and the Lender. |
| **Expenses and Indemnification** | Usual and customary for loans of this type, including, without limitation, indemnification by the Borrower of the Lender of any losses suffered by the |

2

| | Lender in the event that it is ultimately determined that the Borrower used the loan proceeds for Unauthorized Purposes. |
|---|---|
| **Governing Law** | Texas. |
| **Release** | The release by the Borrower of the Lender with respect to any and all claims, and inclusion of the Lender within all Plan releases, including as a "***Released Party***" and "***Protected Party***" under the Plan. |
| **Payment of Fees and Expenses** | The Borrower will pay the fees and expenses, including reasonable attorneys' fees, of the Lender associated with the preparation, execution, administration, and enforcement of the Loan and any subsequent amendment or waiver with respect thereto. The Lender shall not be required to file an application for payment of fees and expenses with the bankruptcy court. |

**EXHIBIT F**

**LOCAL COUNCIL SETTLEMENT CONTRIBUTION**

## I.    Local Council Settlement Contribution – General

In addition to the other components of the Local Council Settlement Contribution specified in the Plan,[1] the Local Councils shall contribute the following to the Settlement Trust on the Effective Date:

    (1)    at least $300 million of Cash to be paid on the Effective Date (the "<u>Cash Contribution</u>");

    (2)    Unrestricted properties[2] with a combined Appraised Value (as defined below) of $200 million (the "<u>Property Contribution</u>"), which shall be reduced on a dollar-for-dollar basis by any Cash Contribution in excess of $300 million, *provided* that the methodology and procedures related to property selection and acceptance are provided for below; and

    (3)    the DST Note, in the principal amount of $100 million, issued by the DST on or as soon as practicable after the Effective Date.[3]  The principal terms of the DST Note are set forth in the DST Note Mechanics described below.

A listing of each Local Council's total expected contribution is included in the Disclosure Statement, including a specific break-down between the (i) Cash Contribution and (ii) Property Contribution.  Any actual or anticipated changes in contributions for any Local Council will be set forth in the Plan Supplement.  Notwithstanding any change in the Cash Contribution or Property Contribution for any Local Council, the aggregate amount of the Cash Contribution and the Property Contribution shall not be less than $500 million in any circumstance (and the Cash Contribution shall not be less than $300 million in any circumstance).

## II.    Property Contribution

The Property Contribution shall be structured as follows:  The relevant Local Council shall agree to (a) retain title to the property (and pay insurance, property taxes, other associated ownership costs and any yet unremoved debt, all on a current basis), subject to, at the election, cost, and expense of the Settlement Trust, a mortgage in favor of the Settlement Trust, (b) post (and keep continuously posted unless otherwise agreed by the Settlement Trust) the property for sale within thirty days following the Effective Date with a qualified real estate broker that will use standard and customary marketing practices, (c) present any written sale offer to the Settlement Trust for approval, (d) present to the Settlement Trust for its review and approval all final proposed terms of any sale and purchase offers (including price, timing and other terms) ("<u>Proposed Final</u>

---

[1] All terms that are capitalized but not otherwise defined on this Exhibit F have the meanings ascribed to such terms in the Plan.

[2] "<u>Unrestricted</u>" properties are defined as those properties not included in the BSA-defined Restriction Tiers 1 – 2 (Tier 1: Property limited to Boy Scout use only – any conveyance causes reversion or transfer of property to 3rd party. Tier 2: Property limited to Boy Scout use only – no reversionary clause).

[3] The DST may be any other type of entity that ensures the DST Note is balance-sheet neutral as to the BSA and Local Councils, as determined by the BSA in consultation with the Ad Hoc Committee, and, in such event, each reference in the Plan, including this Exhibit F, to DST shall be deemed a reference to the actual entity that issues the DST Note.

Terms"); *provided* that if any Proposed Final Terms would impose additional costs on the Local Council and the Settlement Trust accepts such Proposed Final Terms, at the Local Council's option any such additional costs shall be deducted from the proceeds or paid by the Settlement Trust, and not by the Local Council,[4] (e) remit the proceeds of the sale to the Settlement Trust at closing net of posting/listing/marketing fees, escrow fees, sales commissions, and other typical costs of sale.[5] The Settlement Trust may review the marketing and sales efforts undertaken by the Local Council and request that the Local Council make changes to such marketing and sales efforts as are appropriate and lawful; provided that any costs associated with such changes will be paid, at the option of the Local Council, by the Settlement Trust or out of the proceeds of any sale. If the Settlement Trust is unsatisfied with the sales and marketing effort, the Settlement Trust shall have the right to require the Local Council to promptly transfer the property to the Settlement Trust by quitclaim deed. If there is a shortfall or surplus of net proceeds as compared to Appraised Value, the Settlement Trust shall bear the risk of the shortfall and keep the surplus. If the property is not sold on or before the third anniversary of the Effective Date, the Local Council and the Settlement Trust each shall have the right to require the prompt transfer of the property to the Settlement Trust by quitclaim deed. If the Local Council receives a cash offer for the property the value of which is at least equal to its Appraised Value, the Settlement Trust shall accept the offer if no superior offer is made within thirty days (or, if a lesser time is specified in an offer received, then such lesser time) or accept a quitclaim deed for the property.

The "Appraised Value" shall be determined as follows:

    (A)    In the case of the contribution of an entire Camp, Service Center, Scout Shop or other property that does not have a restriction in Restriction Tiers 3-5[6] ("Lower Tier Restriction"), as reasonably determined by the Debtors' property review counsel and specified on Exhibit 2 to Exhibit B to the Disclosure Statement, which summarizes the restricted appraisal reports or broker opinions of value conducted by JLL Valuation & Advisory Services, LLC ("JLL"), CBRE, Inc. ("CBRE") or Keen-Summit Capital Partners LLC in connection the BSA's chapter 11 case prior to June 10, 2021 (the "Specified Appraisals"): (1) the appraised amount set forth in any such Specified Appraisal (using the average of high and low values of such Specified Appraisal, if applicable) or (2) if the applicable Local Council elects a Qualified On-Site Appraisal, the amount established by the average of (1) and the appraised amount in such Qualified On-Site Appraisal (using, for the Qualified On-Site Appraisal, the average of high and low values, if applicable);

---

[4] By way of non-exclusive example, if the Proposed Final Terms requires the Local Council to retrofit a water system and the Settlement Trust accepts the Proposed Final Terms, the costs of the retrofit will, at the Local Council's option be paid (or reimbursed) out of the sale proceeds or paid by the Settlement Trust.

[5] For the avoidance of doubt, the proceeds of the sale shall be first applied to any debt or liens remaining on the property, which debt shall have already been reflected in the Appraised Value of the property as described below.

[6] A Tier 3-5 Restriction shall mean any of the following: (1) Tier 3: property limited to Boy Scout or similar use or recreational area; (2) Tier 4: Property subject to conservation easement or other grantor or donor restrictions on development; (3) Tier 5: Property subject to leases to 3rd party (*e.g.*, office space, cell tower, oil and gas), zoning restrictions, easements or other similar encumbrances.

2

(B)     In the case of the contribution of an entire Camp, Service Center, Scout Shop or other property that has a Lower Tier Restriction: (a) the appraised amount set forth in a Specified Appraisal if such Specified Appraisal accounts for such Lower Tier Restriction or (b) if the Specified Appraisal does not account for such Lower Tier Restriction, the amount established by a Qualified On-Site Appraisal (using the average of high and low values, if applicable) of the property taking into account the Lower Tier Restriction.

(C)     In the case of a contribution of only a portion of a particular Camp, Service Center, Scout Shop or other property to the Settlement Trust, whether or not subject to a Lower Tier Restriction, the amount established by a Qualified On-Site Appraisal (using the average of high and low values, if applicable) of the specific parcel and acreage proposed to be contributed, taking into account any Lower Tier Restriction;

provided, that, in the case of (A), (B), or (C) the Appraised Value shall be net of any debt encumbering the property and that no new debts shall be placed on any property subject to the Property Contribution except any mortgages in favor of the Settlement Trust.

The applicable Local Councils and the BSA shall engage in reasonable good faith efforts to ensure all properties subject to the Property Contribution accurately reflect all restrictions that are known to (or should be reasonably known to) exist in any appraisal that is used to determine a property's Appraised Value.

In the event a restriction that was not considered by any appraisal used to determine Appraised Value is subsequently determined to exist, such appraisal shall not be eligible to determine Appraised Value, and, to the extent necessary, within a reasonable period of time, new appraisals shall be conducted and/or the relevant Local Council shall contribute additional unrestricted properties or cash to the Settlement Trust to the extent necessary to ensure the total Appraised Value of all property or properties contributed by such Local Council is equal to or exceeds the Appraised Value of property that such Local Council had originally agreed to contribute.

A "Qualified On-Site Appraisal" shall mean an appraisal conducted by a licensed real property appraiser from the geographic region where the property is located and conducted in compliance with the Uniform Standards of Professional Appraisal Practice; provided that the Coalition (or, if the appraisal is commenced after the Effective Date, the Settlement Trust) shall have five (5) business days to object to any licensed real property appraiser selected by the Local Council if such appraiser is either affiliated with the Local Council or is not qualified to conduct such an appraisal by the applicable licensing authority in the geographic region where the property is located.  The costs associated with any Qualified On-Site Appraisals will be borne by the Local Council.  If the applicable Local Council has not commissioned a Qualified On-Site Appraisal as of the date that the Plan is filed, it will do so as soon as possible.

3

### III.    DST Note Mechanics

On the Effective Date, at the request of the Ad Hoc Committee, solely to facilitate payments from the LC Reserve Account, the DST shall be established, and the DST shall issue the DST Note in favor of the Settlement Trust in the principal amount of $100 million.  Local Councils shall make monthly contributions into an account (and any replacement thereof) owned by the DST (the "LC Reserve Account") in an amount equal to the Required Percentage of the Local Councils' respective payrolls.  Until the DST Note is extinguished, the LC Reserve Account shall be used only to fund contributions to the Pension Plan in accordance with the next sentence and, to the extent of any excess, to pay any Payment Amounts due under the DST Note.  If at any time (including the end of any Plan Year) (a) the present value of the accumulated benefits for the Pension Plan, as determined in accordance with the requirements set forth in the definition of "Excess Balance" below for the most recently ended Plan Year, exceeds (b) the market value of the assets of the Pension Plan (clause (a) minus clause (b) being the "Shortfall Amount"), funds in the LC Reserve Account will be deposited into the Pension Plan up to the lesser of the Local Councils' collective pro rata share of the Shortfall Amount or the balance in the LC Reserve Account.

The DST Note shall be: (i) interest bearing at a rate of 1.5% per annum and without recourse except as to the LC Reserve Account; (ii) secured by a lien on the LC Reserve Account; (iii) payable on each Payment Date in an amount equal to the applicable Payment Amount; and (iv) prepayable in whole or in part at any time without premium or penalty.  The unpaid balance of the DST Note (if any) remaining on the Payment Date that is the fifteenth anniversary of the First Payment Date (the "DST Note Maturity Date") shall be automatically extinguished and shall be considered forgiven and satisfied after giving effect to any required payment on such date.  Other than the lien on the LC Reserve Account, the Settlement Trust shall have no other recourse for payment under the DST Note.

"Cushion Amount" means: (i) from the Effective Date until the first June 1 that is at least one year after the Effective Date (the "First Cushion Date"), $134.86 million; (ii) from the day following the First Cushion Date until June 1 of the following year (the "Second Cushion Date"), $124.86 million; (iii) from the day following the Second Cushion Date until June 1 of the following year (the "Third Cushion Date"), $114.86 million; (iv) from the day following the Third Cushion Date until June 1 of the following year (the "Fourth Cushion Date"), $104.86 million; and (v) from the day following the Fourth Cushion Date until June 1 of the following year (the "Fifth Cushion Date"), $100 million; and (vi) from the day following the Fifth Cushion Date to and including the DST Note Maturity Date, $100 million.

"Excess Balance" means the amount in excess of the applicable Cushion Amount, if any, by which (a) the sum of (i) the market value of the assets of the Pension Plan as set forth in the actuarial report for the Pension Plan for the most recently ended Plan Year plus (ii) the balance of the LC Reserve Account as of the month-end preceding the applicable Payment Date exceeds (b) the present value of the accumulated benefits for the Pension Plan as set forth in the actuarial report for the Pension Plan for the most recently ended Plan Year calculated using a 6.5% annual interest rate, net of expenses, so long as the Pension Plan continues to be a Cooperative and Small Employer Charity (CSEC) plan.  The actuarial report shall be prepared in accordance with actuarial standards, past practice, and applicable law.

The Debtors have conducted a current experience study by the Pension Plan actuary with respect to the demographic assumptions for the Pension Plan (*e.g.*, rates of retirement, termination, spousal age difference, commencement age and forms of payment) (the "2021 Experience Study").  After implementing changes based on the 2021 Experience Study, demographic assumption changes, with the exception of annual updates to mortality improvement projection scales, will not be made without a subsequent experience study, and economic assumption changes will not be made without an asset liability management study.  Reorganized BSA will not commission any such studies until five (5) years after the Effective Date of the Amended Plan unless there are material changes to Internal Revenue Code § 433 (governing CSEC plans).  In the event of such a material change, Reorganized BSA shall commission any such studies only if it reasonably believes, in consultation with the Pension Plan actuary, that such study is required.  During the term of the DST Note, on an annual basis, Reorganized BSA will provide advance notice to the Settlement Trustee of any proposed material changes that the Pension Plan actuary intends to make to its actuarial assumptions and methodologies that increase the present value of accumulated benefits under the Pension Plan by more than 1.0%.  Reorganized BSA will confer in good faith with the Settlement Trustee regarding any such proposed changes.  In addition, if the Pension Plan is amended in any regard which increases the present value of benefits under the Pension Plan, such amendments will be disregarded in the calculation of the present value of accumulated benefits for the purposes of the DST Note.

"Payment Amount" means an amount, if any, on each Payment Date, payable solely from the LC Reserve Account, equal to the least of: (x) the Excess Balance on such Payment Date, (y) the remainder of the balance of $100 million accumulated at 1.5% annual interest, as amortized by any amounts previously paid; and (z) the amount in the LC Reserve Account.

"Payment Date" means, unless the DST Note is prepaid in full, May 31 of each year starting on the first May 31 after the Effective Date (or starting on the first business day that is at least thirty (30) days after the Effective Date if the Effective Date occurs between May 1 and May 31) (the "First Payment Date") until the fifteenth anniversary of the First Payment Date.

"Plan Year" means the period from February 1 to and including January 31 of the following year.

"Required Percentage" means an amount equal to 12% of a Local Council's payroll, less any pension plan related expenses which are estimated to be approximately 0.50% of such payroll, less the Local Council employer contribution match for employee contributions to the section 403(b) defined contribution benefit plan, which percentage will not exceed 4.5% of participating employee payroll until at least $50 million of the DST Note principal has been paid, at which point the employer contribution match percentage will not exceed 6% until the DST Note has been paid in full (principal and interest).

*[Remainder of Page Intentionally Left Blank]*

**EXHIBIT G**

**LOCAL COUNCILS**

Abraham Lincoln
Alabama-Florida
Alamo Area
Allegheny Highlands
Aloha
Andrew Jackson
Anthony Wayne Area
Arbuckle Area
Atlanta Area
Baden-Powell
Baltimore Area
Bay Area
Bay-Lakes
Black Hills Area
Black Swamp Area
Black Warrior
Blackhawk Area
Blue Grass
Blue Mountain
Blue Ridge
Blue Ridge Mountains
Buckeye
Buckskin
Bucktail
Buffalo Trace
Buffalo Trail
Caddo Area
Calcasieu Area
California Inland Empire
Cape Cod and Islands
Cape Fear
Capitol Area
Cascade Pacific
Catalina
Central Florida
Central Georgia
Central Minnesota
Central North Carolina
Chattahoochee
Cherokee Area (469)
Cherokee Area (556)
Chester County
Chickasaw
Chief Cornplanter
Chief Seattle
Chippewa Valley

Choctaw Area
Cimarron
Circle Ten
Coastal Carolina
Coastal Georgia
Colonial Virginia
Columbia-Montour
Connecticut Rivers
Connecticut Yankee
Conquistador
Cornhusker
Coronado Area
Cradle of Liberty
Crater Lake
Crossroads of America
Crossroads of the West
Dan Beard
Daniel Boone
Daniel Webster
De Soto Area
Del-Mar-Va
Denver Area
East Carolina
East Texas Area
Erie Shores
Evangeline Area
Far East
Five Rivers
Flint River
French Creek
Gamehaven
Garden State
Gateway Area
Georgia-Carolina
Glacier's Edge
Golden Empire
Golden Gate Area
Golden Spread
Grand Canyon
Grand Columbia
Grand Teton
Great Alaska
Great Rivers
Great Salt Lake
Great Smoky Mountain
Great Southwest

Great Trail
Greater Alabama
Greater Hudson Valley
Greater Los Angeles Area
Greater New York
Greater Niagara Frontier
Greater St. Louis Area
Greater Tampa Bay Area
Greater Wyoming
Greater Yosemite
Green Mountain
Greenwich
Gulf Coast
Gulf Stream
Hawk Mountain
Hawkeye Area
Heart of America
Heart of New England
Heart of Virginia
Hoosier Trails
Housatonic
Illowa
Indian Nations
Indian Waters
Inland Northwest
Iroquois Trail
Istrouma Area
Jayhawk Area
Jersey Shore
Juniata Valley
Katahdin Area
Lake Erie
Las Vegas Area
LaSalle
Last Frontier
Laurel Highlands
Leatherstocking
Lincoln Heritage
Long Beach Area
Longhorn
Longhouse
Longs Peak
Los Padres
Louisiana Purchase
Marin
Mason-Dixon

Mayflower
Mecklenburg County
Miami Valley
Michigan Crossroads
Mid-America
Middle Tennessee
Mid-Iowa
Midnight Sun
Minsi Trails
Mississippi Valley
Mobile Area
Monmouth
Montana
Moraine Trails
Mount Baker
Mount Diablo Silverado
Mountain West
Mountaineer Area
Muskingum Valley
Narragansett
National Capital Area
Nevada Area
New Birth of Freedom
North Florida
Northeast Georgia
Northeast Illinois
Northeast Iowa
Northeastern Pennsylvania
Northern Lights
Northern New Jersey
Northern Star
Northwest Georgia
Northwest Texas
Norwela
Occoneechee
Ohio River Valley
Old Hickory
Old North State
Orange County
Oregon Trail
Ore-Ida
Overland Trails
Ozark Trails
Pacific Harbors
Pacific Skyline
Palmetto

Pathway to Adventure
Patriots' Path
Pee Dee Area
Pennsylvania Dutch
Piedmont
Piedmont
Pikes Peak
Pine Burr Area
Pine Tree
Pony Express
Potawatomi Area
Prairielands
Puerto Rico
Pushmataha Area
Quapaw Area
Quivira
Rainbow
Redwood Empire
Rio Grande
Rip Van Winkle
Rocky Mountain
Sagamore
Sam Houston Area
Samoset
San Diego-Imperial
San Francisco Bay Area
Santa Fe Trail
Seneca Waterways
Sequoia
Sequoyah
Shenandoah Area
Silicon Valley Monterey Bay
Simon Kenton
Sioux
Snake River
South Florida
South Georgia

South Plains
South Texas
Southeast Louisiana
Southern Sierra
Southwest Florida
Spirit of Adventure
Suffolk County
Susquehanna
Suwannee River Area
Tecumseh
Texas Southwest
Texas Trails
Theodore Roosevelt
Three Fires
Three Harbors
Three Rivers
Tidewater
Transatlantic
Trapper Trails
Tukabatchee Area
Tuscarora
Twin Rivers
Twin Valley
Ventura County
Verdugo Hills
Virginia Headwaters
Voyageurs Area
W.D. Boyce
Washington Crossing
West Tennessee Area
Westark Area
Western Los Angeles County
Western Massachusetts
Westmoreland-Fayette
Winnebago
Yocona Area
Yucca

**EXHIBIT H**

**RELATED NON-DEBTOR ENTITIES**

Arrow WV, Inc.
Atikaki Youth Ventures Inc.
Atikokan Youth Ventures Inc.
BSA Asset Management, LLC
BSA Endowment Master Trust
Learning for Life
National Boy Scouts of America Foundation

**EXHIBIT I-1**

**HARTFORD INSURANCE SETTLEMENT AGREEMENT**

*(to be supplemented; refer to D.I. 6210-1 for the Hartford Term Sheet)*

**EXHIBIT J-1**

**TCJC SETTLEMENT AGREEMENT**

*(to be supplemented; refer to D.I. 6210-2 for the TCJC Term Sheet)*

**<u>EXHIBIT K</u>**

**NON-PARTICIPATING CHARTERED ORGANIZATIONS**

**(SUBJECT TO CHANGE)**

**THE FOLLOWING IS A LIST OF CHARTERED ORGANIZATIONS THAT THE BSA IS AWARE ARE CURRENTLY DEBTORS IN BANKRUPTCY.    IF THE BSA BECOMES AWARE OF ADDITIONAL CHARTERED ORGANIZATIONS IN BANKRUPTCY, IT WILL PROMPTLY REVISE THIS EXHIBIT.**

1.    Archbishop of Agaña, a Corporation Sole, Chapter 11 Debtor in Possession, District Court of Guam, Territory of Guam, Bankruptcy Division, Case 19-00010.

2.    The Diocese of Buffalo, N.Y., Chapter 11 Debtor in Possession, United States Bankruptcy Court for the Western District of New York, Case No. 20-10322.

3.    The Diocese of Rochester, Chapter 11 Debtor in Possession, United States Bankruptcy Court for the Western District of New York, Case No. 19-20905.

4.    The Roman Catholic Diocese of Syracuse, New York, Chapter 11 Debtor in Possession, United States Bankruptcy Court for the Northern District of New York, Case No. 20-30663.

5.    The Roman Catholic Diocese of Rockville Centre, New York, Chapter 11 Debtor in Possession, United States Bankruptcy Court for the Southern District of New York, Case No. 20-12345.

6.    Roman Catholic Church of the Archdiocese of Santa Fe, Chapter 11 Debtor in Possession, United States District Court for the District of New Mexico, Case No. 18-13027.

7.    The Norwich Roman Catholic Diocesan Corporation, Chapter 11 Debtor in Possession, United States District Court for the District of Connecticut, Case No. 21-20687.

**THE FOLLOWING IS A LIST OF CHARTERED ORGANIZATIONS (IN ADDITION TO CHARTERED ORGANIZATIONS THAT ARE CURRENTLY DEBTORS IN BANKRUPTCY) THAT HAVE ELECTED TO OPT OUT OF BECOMING PARTICIPATING CHARTERED ORGANIZATIONS.**

None.

**SCHEDULE 1**

**ARTWORK**

**ARTWORK**

| OBJECT ID | TITLE | CREATOR | DATE | IMAGE SIZE | MEDIUM |
|---|---|---|---|---|---|
| 2011.064.167 | Where Brook and River Meet | A. Boulard after a painting by B. W. Leader | n. d. | 17 5/8" x 27 1/8" with margins | Hand colored etching |
| 2011.064.306 | Portrait of Abraham Lincoln | After George Henry Hall by an Unknown artist (Contemporary) | n. d. | 33 1/8" x 24 1/2" | Oil on relined canvas |
| 2011.064.242 | Dr. James E. West | Albert A. Rose (Contemporary) | n. d. | 40" x 30" | Oil on canvas |
| 2011.064.241 | Portrait of Gale F. Johnson | Albert A. Rose (Contemporary) | n. d. | 30" x 25" | Oil on canvas |
| 2011.064.204 | Native American Village | Andy Jansen (Contemporary) | n. d. | 10" x 13" | Ink on paper |
| 2011.064.315 | Triumph and Tragedy | Angelini | 2008 | | Oil on Canvas |
| 2012.051 | Big Doing's When King Richard Had a Rodeo | Beard, Daniel Carter | n.d. | | |
| Johnston gift | Fight Scene | Beard, Daniel Carter | n.d. | | Ink on Paper |
| 2011.064.181 | Lord Baden Powell | Benjamin Eggleston (Contemporary) | n. d. | 51 1/2" x 43" | |
| 2011.064.159 | Butterfly's | Bentley and Bentley (Contemporary) | 1990 | 30" x 24" x 3" | Butterfly triptych collage with Plexiglas box |
| 2011.064.160 | Butterfly's | Bentley and Bentley (Contemporary) | 1990 | 30" x 24" x 3" | Butterfly triptych collage with Plexiglas box |
| 2011.064.161 | Butterfly's | Bentley and Bentley (Contemporary) | 1990 | 30" x 24" x 3" | Butterfly triptych collage with Plexiglas box |
| 2011.064.162 | Butterfly's | Bentley and Bentley (Contemporary) | 1990 | 30" x 24" x 3" | Butterfly triptych collage with Plexiglas box |
| 2011.064.163 | Butterfly's | Bentley and Bentley (Contemporary) | 1990 | 30" x 24" x 3" | Butterfly triptych collage with Plexiglas box |
| 2011.064.217 | Old Ironside | Betty Mahony (Contemporary) | n. d. | 18" x 24" | Oil on canvas |
| Unknown | A Century of Values | Bill Manilow | n.d. | | Acrylic? |

| OBJECT ID | TITLE | CREATOR | DATE | IMAGE SIZE | MEDIUM |
|---|---|---|---|---|---|
| 2011.064.164 | Boyscout Membership | C. K. Berryman (Contemporary) | 1940 | 12 1/2" x 14 1/8" | Ink on paper |
| 2011.064.243 | The Mountaineer | Carl Clemens Moritz Rungius (1869-1959) | n. d. | 50" x 60" | Oil on canvas |
| Unknown | Scout's Signaling Friendship | Caserta | 1945 | | |
| 2011.064.170 | In a Welch Valley | Charles Chauvel after a painting by B. W. Leader | n. d. | 18 1/2" x 28 1/2" with margins | Hand colored etching |
| 2011.064.171 | Surrey's Pleasant Hills | Charles Chauvel after a painting by B. W. Leader | n. d. | 21 1/2" x 17" with margins | Hand colored etching |
| 2016.019 | Scouts at Campfire Singing | Charles Towne | 1930s | | Oil on unstretched canvas |
| Unknown | New Jersey State Trooper and Scout | Dave ? | n.d. | | |
| 2011.064.225 | Greenhead Alert | David Moss (Contemporary) | n. d. | 16 1/4" x 24 7/8" with margins | Color off-set lithograph |
| 2011.064.226 | Pheasants in the Snow | David Moss (Contemporary) | n. d. | 16 3/8" x 24 7/8" with margins | Color off-set lithograph |
| 2011.064.227 | Wild Wings | David Moss (Contemporary) | 1985 | 16 1/2" x 24 7/8" with margins | Color off-set lithograph |
| 2011.064.176 | Lincoln Memorial | Dean Cornwell ( 1892- 1960) | n. d. | 38" x 35" | Oil on canvas |
| 2011.064.175 | Uncle Sam's Air Force; "Boy Scout and Pilot" | Dean Cornwell ( 1892- 1960) | 1952 | 38 1/8" x 35 1/2" | Oil on canvas |
| 2011.064.177 | Wright Brothers | Dean Cornwell ( 1892- 1960) | n. d. | 38" x 35" | Oil on canvas |
| 2011.064.174 | Boy Scout and Father at Nathan Hale Statue | Dean Cornwell (1892- 1960) | n. d. | 40" x 36 1/4" | Oil on relined canvas |
| 2011.064.215 | America's Strength | Don Lupo (Contemporary) | n. d. | 26" x 19 1/2" | Watercolour over off-set lithograph |
| Unknown | Your Career in Scouting | Don Lupo (Contemporary) | n.d. | | |
| OA | Brotherhood Barn | E. Urner Goodman | n.d. | | Oil on Canvas |
| 2011.064.316 | Treasure Island | E. Urner Goodman | | | Oil on Canvas |

| OBJECT ID | TITLE | CREATOR | DATE | IMAGE SIZE | MEDIUM |
|---|---|---|---|---|---|
| 2011.064.187 | Liberty Bell | Earnest Henry (Contemporary) | n. d. | 25" x 26" | Oil on canvas |
| 2011.064.231 | Forward on Liberty's Team | Earnest Pascoe (1922- 1996) | 1954 | 33" x 23" | Oil on canvas |
| 2011.064.211 | The Measure of a Man | Edward D. Kuekes (Born 1901) | 1957 | 20" x 16" | Ink on paper |
| 2011.064.222 | Ellsworth H. Augustus | Eugene A. Montgomery (Contemporary) | n. d. | 40" x 30" | Oil on canvas |
| 2011.064.223 | Portrait of Alden G. Barber | Eugene A. Montgomery (Contemporary) | n. d. | 42" x 32" | Oil on canvas |
| 2011.064.224 | Portrait of Irving Feist | Eugene A. Montgomery (Contemporary) | n. d. | 42" x 32" | Oil on canvas |
| Unknown | Eagle in Flight | F.P. Smith | n.d. | | |
| 2011.064.182 | General Omar Bradley | Frank Eliscu (Born 1912) | 1990 | 16 1/2" high without base | Cast bronze sculpture with brown patina |
| 2011.064.220 | Coke,  "Boy Scouts Come to a Halt" | Fredric Kimball Mizen (1888- 1965) | n. d. | 32 1/2" x 37 1/2" | Oil on canvas which has been relined |
| 2011.064.119 | Scout Bugler, Swimming Call | Harold N. Anderson (Contemporary) | n.d. | 28" x 21 1/2" | Oil on Canvas |
| 2011.064.120 | Sea Scout at Ship's Wheel | Harold N. Anderson (Contemporary) | n.d. | 30" x 20" | Oil on Canvas |
| 2011.064.244 | They See a Vision That Once Was Yours | Harold van Schmidt (Contemporary) | 1951 | 29" x 37" | Oil on canvas |
| 2011.064.168 | Boy's Life Cover | Harrison Cady (1877- 1970) | 1938 | 17 5/8" x 27 1/8" | Ink and watercolour on paper |
| 2011.064.191 | A Scout is Brave | Henry "Hy" Hintermeister (1902- 1972) | n. d. | 15" x 10" | Gouache on paper |
| 2011.064.192 | A Scout is Cheerful | Henry "Hy" Hintermeister (1902- 1972) | n. d. | 15" x 10" | Gouache on paper |
| 2011.064.193 | A Scout is Clean | Henry "Hy" Hintermeister (1902- 1972) | n. d. | 15" x 10" | Gouache on paper |
| 2011.064.194 | A Scout is Courteous | Henry "Hy" Hintermeister (1902- 1972) | n. d. | 15" x 10" | Gouache on paper |
| 2011.064.195 | A Scout is Friendly | Henry "Hy" Hintermeister (1902- 1972) | n. d. | 15" x 10" | Gouache on paper |
| 2011.064.196 | A Scout is Helpful | Henry "Hy" Hintermeister (1902- 1972) | n. d. | 15" x 10" | Gouache on paper |
| 2011.064.197 | A Scout is Kind | Henry "Hy" Hintermeister (1902- 1972) | n. d. | 15" x 10" | Gouache on paper |
| 2011.064.198 | A Scout is Loyal | Henry "Hy" Hintermeister (1902- 1972) | n. d. | 15" x 10" | Gouache on paper |

| OBJECT ID | TITLE | CREATOR | DATE | IMAGE SIZE | MEDIUM |
|---|---|---|---|---|---|
| 2011.064.199 | A Scout is Obedient | Henry "Hy" Hintermeister (1902-1972) | n. d. | 15" x 10" | Gouache on paper |
| 2011.064.200 | A Scout is Reverent | Henry "Hy" Hintermeister (1902-1972) | n. d. | 15" x 10" | Gouache on paper |
| 2011.064.201 | A Scout is Thrifty | Henry "Hy" Hintermeister (1902-1972) | n. d. | 15" x 10" | Gouache on paper |
| 2011.064.202 | A Scout is Trustworthy | Henry "Hy" Hintermeister (1902-1972) | n. d. | 15" x 10" | Gouache on paper |
| 2011.064.189 | Achievement | Henry "Hy" Hintermeister (1902-1972) | n. d. | 24" x 18" | Oil on canvas |
| 2011.064.190 | Adventure | Henry "Hy" Hintermeister (1902-1972) | n. d. | 24" x 18" | Oil on canvas |
| 2011.064.228 | Johnston Historical Museum | Herbert Mott (Contemporary) | n. d. | 10 1/2" x 22 1/2" | Gouache and pencil on paper |
| 2011.064.230 | Portrait of Baden-Powell | Hjordis Nyberg (Contemporary) | n. d. | 40" x 30" | Oil on canvas |
| 2011.064.188 | Tait McKenzie Statue | Homer Hill (Contemporary) | n. d. | 24" x 18" | Gouache on paper and collage |
| 2011.064.172 | Boy Scout | Howard Chandler Christy (1873- 1952) | 1936 | 60" x 40" | Oil on canvas |
| 2011.064.312 | Portrait of Norton Clapp | J. Anthony Wills (Contemporary) | n. d. | 43" x 34" | Oil on masonite |
| 2011.064.165 | Giant Eagle, Planes, and Scout | James Bingham (Contemporary) | n. d. | 34 1/2" x 30 1/4" | Oil on relined canvas |
| 2011.064.130 | "Common Puffin": "Tufted Puffin"; and "Rhinoceros Auklet" | James Carter Beard (1837- 1913) | 1904 | 6 3/4" x 5 1/16" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.140 | "Hudson Bay Lemming"; "Field Mouse"; "Red Backed Mouse"; and "Northwest Vole" | James Carter Beard (1837- 1913) | 1904 | 12" x 11" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.150 | "Sunfish"; "Calico Bass"; Yellow Perch"; and "Small Mounted Black Bass" | James Carter Beard (1837- 1913) | 1904 | 9 1/2" x 12 7/8" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.121 | American Spotted Chimera | James Carter Beard (1837- 1913) | 1904 | 6" x 11" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.123 | Australian Lung Fish | James Carter Beard (1837- 1913) | 1904 | 6 3/4" x 12 3/4" | Ink and watercolour on paper mounted to cardboard |

| OBJECT ID | TITLE | CREATOR | DATE | IMAGE SIZE | MEDIUM |
|---|---|---|---|---|---|
| 2011.064.124 | Black Footed Albatross | James Carter Beard (1837- 1913) | 1904 | 9 1/8" x 10 1/4" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.125 | Bluefish | James Carter Beard (1837- 1913) | 1904 | 4 5/8" x 7" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.126 | Bullhead Catfish | James Carter Beard (1837- 1913) | 1904 | 6" x 7 3/4" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.127 | California Grey Whales Attacked by Killer Whales | James Carter Beard (1837- 1913) | 1904 | 10 3/8" x 15 1/2" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.128 | Canadian Lynx | James Carter Beard (1837- 1913) | 1904 | 8 1/2" x 10 3/4" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.129 | Common Dolphins | James Carter Beard (1837- 1913) | 1904 | 10 1/2" x 15 5/8" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.131 | Congo Snake | James Carter Beard (1837- 1913) | 1904 | 13 1/4" x 18 1/4" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.132 | Devil Fish | James Carter Beard (1837- 1913) | 1904 | 9 1/4" x 14 3/8" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.133 | Elaine Eel | James Carter Beard (1837- 1913) | 1904 | 5 7/8" x 10 7/8" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.134 | Florida Wood Rat | James Carter Beard (1837- 1913) | 1904 | 9 1/8" x 11" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.135 | Flying Fish | James Carter Beard (1837- 1913) | 1904 | 5 5/8" x 9 1/2" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.136 | Flying Foxes (Bats) | James Carter Beard (1837- 1913) | 1904 | 17" x 12 1/4" | Ink and watercolour on paper mounted to cardboard |

| OBJECT ID | TITLE | CREATOR | DATE | IMAGE SIZE | MEDIUM |
|---|---|---|---|---|---|
| 2011.064.137 | Glacier Bear | James Carter Beard (1837- 1913) | 1904 | 9 7/8" x 11 3/8" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.138 | Grey Squirrel | James Carter Beard (1837- 1913) | 1904 | 9 1/4" x 14 1/2" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.139 | Hell Bender | James Carter Beard (1837- 1913) | 1904 | 12" x 16 1/2" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.141 | Jumping Mouse | James Carter Beard (1837- 1913) | 1904 | 8 1/2" x 7" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.142 | Loon and Murres | James Carter Beard (1837- 1913) | 1904 | 6 7/8" x 8 1/2" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.143 | Manatee | James Carter Beard (1837- 1913) | 1904 | 14" x 8 7/8" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.144 | Menobranchas | James Carter Beard (1837- 1913) | 1904 | 13" x 18" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.145 | Pocket Gophers | James Carter Beard (1837- 1913) | 1904 | 6" x 11" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.146 | Ribbon Seals | James Carter Beard (1837- 1913) | 1904 | 12 3/8" x 15 1/2" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.148 | Spider Monkeys | James Carter Beard (1837- 1913) | 1904 | 13 7/8" x 9 1/8" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.149 | Squirrel | James Carter Beard (1837- 1913) | 1904 | 10 1/2" x 15 1/2" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.151 | Stellar's Sea Lions | James Carter Beard (1837- 1913) | 1904 | 9 1/4" x 13 7/8" | Ink and watercolour on paper mounted to cardboard |

| OBJECT ID | TITLE | CREATOR | DATE | IMAGE SIZE | MEDIUM |
|---|---|---|---|---|---|
| 2011.064.152 | Stormy Petrel | James Carter Beard (1837- 1913) | 1904 | 8 1/4" x 8 1/8" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.153 | Tarpon | James Carter Beard (1837- 1913) | 1904 | 5 1/4" x 9 1/16" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.122 | The Angler | James Carter Beard (1837- 1913) | 1904 | 5 7/8" x 10 3/4" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.147 | The Spanish Mackerel | James Carter Beard (1837- 1913) | 1904 | 5" x 5 1/2" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.154 | Two Spined Stickleback | James Carter Beard (1837- 1913) | 1904 | 3 1/2" x 11 1/2" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.155 | Typical Pocket-Mouse and Kangaroo Rat | James Carter Beard (1837- 1913) | 1904 | 10 3/4" x 10 7/8" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.156 | Unicorn Whales | James Carter Beard (1837- 1913) | 1904 | 10 1/2" x 16 1/2" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.157 | Woodchuck | James Carter Beard (1837- 1913) | 1904 | 8 1/8" x 10" | Ink and watercolour on paper mounted to cardboard |
| 2011.064.158 | Daniel Carter Beard | James Henry Beard (1812- 1893) | 1888 | 12" x 19 3/8" | Oil on board |
| 2011.064.212 | Saturday Evening Post Cover | James Lewicki (Born 1917) | 1960 | 23 1/2" x 21 1/2" | Ink and watercolour on board |
| 2011.064.309 / 1998.111 | Santa Claus and Scout | Jay Vance (Contemporary) | n. d. | 13 1/2" x 10 1/4" | Gouache on paper |
| None | Scout Crossing-Jamboree | Jeff Segler | 2017 | | |
| None | Scouting's Tribute to Law Enforcement | Jeff Segler | 2018 | | |
| 2011.064.278 | Untitled Scout | Jeff Segler (Contemporary) | n. d. | 36" x 28" | Oil on canvas |
| 2011.064.166 | Mustangs | John Gutson (La Mothe) Borglum (1867- 1941) | 1904 | 20 3/4" x 32" x 16" | Cast bronze multiple sculpture with green-brown patina |

7

| OBJECT ID | TITLE | CREATOR | DATE | IMAGE SIZE | MEDIUM |
|---|---|---|---|---|---|
| Unknown | Eagle and Eagle Scout Medal | John Steven Wilson | n.d. | | |
| 2011.064.214 | "Weapons for Liberty"; March 2 Saturday Evening Post Cover | Joseph Christain Leyendecker (1874-1951) | 1918 | 40" x 27 1/4" | Oil on canvas |
| 2011.064.213 | Saturday Evening Post Cover/ Scouts Signaling | Joseph Christain Leyendecker (1874-1951) | 1911 | 30 1/4" x 21 1/4" | Oil on canvas |
| None | 100th Anniversary of the Order of the Arrow | Joseph Csatari | 2012 | | |
| 2003.111 | Portrait of Chope Phillips | Joseph Csatari | 1971 | | Oil on masonite |
| Unknown | "100th Anniversary of World Scouting" | Joseph Csatari | 2007 | 32" x 26" | Oil on Canvas |
| Unknown | 100th Anniversary of Eagle Scouts | Joseph Csatari | 2012 | | Oil on Canvas |
| Unknown | 90th Anniversary of Boys Life | Joseph Csatari | 2001 | | Oil on Canvas |
| Unknown | A Scout is Reverent, Study | Joseph Csatari | n.d. | | |
| Unknown | Reading Partners | Joseph Csatari | 2002 | 30" x 24" | Oil on Canvas |
| Unknown | Scouting Hero's | Joseph Csatari | 2007 | 32" x 26" | Oil on Canvas |
| Unknown | Scouting Salutes Community Organizatons | Joseph Csatari | 2009 | 32" x 25" | Oil on Canvas |
| Unknown | Scouting through the Years | Joseph Csatari | 1978 | | Oil on Canvas |
| Unknown | Scoutmaster and Scout, study | Joseph Csatari | n.d. | | Pencil on paper |
| Unknown | Sketch, "To Rich" | Joseph Csatari | n.d. | | sketch |
| None | Walter Scott, Jr. | Joseph Csatari | 2012 | | |
| Unknown | Year of the Volunteer | Joseph Csatari | 2008 | 32" x 25" | Oil on Canvas |
| 2011.064.088 | "Prepared To Do a Good Turn" or "9/11" | Joseph Csatari (Contemporary) | 2002 | 40" x 31" | oil on canvas |
| 2011.064.118 | 100th Anniversary Salute to Scouting | Joseph Csatari (Contemporary) | 2009 | | Oil on Canvas |
| 2011.064.066 | 1976 Handbook Cover | Joseph Csatari (Contemporary) | 1975 | 27 1/2" x 38" | oil on board |
| 2011.064.082 | A Good Turn | Joseph Csatari (Contemporary) | 1992 | 40" x 32" | oil on canvas |
| 2011.064.110 | A Good Turn, study | Joseph Csatari (Contemporary) | n. d. | 10" x 8" | pencil on paper |
| 2011.064.092 | A Scout is Reverent | Joseph Csatari (Contemporary) | ca. 1994 | 20" x 16" | oil on board |
| 2011.064.116 | A Winner, study | Joseph Csatari (Contemporary) | n. d. | 10 1/4" x 7 3/4" | pencil on paper |

| OBJECT ID | TITLE | CREATOR | DATE | IMAGE SIZE | MEDIUM |
|---|---|---|---|---|---|
| 2011.064.070 | After Hours | Joseph Csatari (Contemporary) | 1980 | 30" x 24" | oil on canvas |
| 2011.064.107 | After Hours, study | Joseph Csatari (Contemporary) | n. d. | 9 1/2" x 7 1/2" | pencil on paper |
| 2011.064.109 | Building a Fire, study | Joseph Csatari (Contemporary) | 1987 | 14" x 10" | pencil on paper |
| 2011.064.083 | Character Counts | Joseph Csatari (Contemporary) | 1994 | 36" x 30" | oil on canvas |
| 2011.064.091 | Charles L. Sommers, High Adventure Base | Joseph Csatari (Contemporary) | ca. 1999 | 36" x 30" | oil on canvas |
| 2011.064.093 | Come On, Join Us | Joseph Csatari (Contemporary) | n. d. | 24" x 19" | acrylic on canvas |
| 2011.064.090 | Cub Scout 75th Anniversary "Cub Scout 75th Anniversary" or "A Winner" | Joseph Csatari (Contemporary) | 2004 | 34" x 27" | oil on canvas |
| 2011.064.089 | Dreams Become a Reality in Venturing | Joseph Csatari (Contemporary) | 2003 | 34" x 27" | oil on canvas |
| 2011.064.114 | Duty to God and Country, study | Joseph Csatari (Contemporary) | n. d. | 13 1/2" x 10 1/2" | pencil on paper |
| 2011.064.105 | Eagle Court of Honor | Joseph Csatari (Contemporary) | n. d. | 31" x 23" | oil on canvas |
| 2011.064.106 | Eagle Court of Honor, study | Joseph Csatari (Contemporary) | n. d. | 30" x 22" | pencil on paper |
| 2011.064.068 | Eagle Service Project | Joseph Csatari (Contemporary) | 1978 | 38" x 29" | oil on canvas |
| 2011.064.072 | Family Camping | Joseph Csatari (Contemporary) | 1982 | 32 1/2" x 25" | oil on canvas |
| 2011.064.081 | Florida Sea Base | Joseph Csatari (Contemporary) | 1991 | 41" x 32" | oil on canvas |
| 2011.064.115 | Florida Sea Base, study | Joseph Csatari (Contemporary) | n. d. | 20" x 15 1/2" | pencil on paper |
| 2011.064.065 | Gift of a Lifetime | Joseph Csatari (Contemporary) | 1968 | 20 1/4" x 16 1/4" | oil on canvas |
| 2011.064.062 | Higher Vision | Joseph Csatari (Contemporary) | 1964 | 22 5/16" x 18 5/16" | oil on canvas |
| 2011.064.075 | It's a Boy's Life | Joseph Csatari (Contemporary) | 1985 | 32" x 24" | oil on canvas |
| 2011.064.087 | National Jamboree Fort A. P. Hill, Virginia | Joseph Csatari (Contemporary) | 2001 | 30" x 24" | oil on canvas |
| 2011.064.314 | National Scouting Museum Founders | Joseph Csatari (Contemporary) | 2013 | 35.75" x 24.50" with margin | Oil on Canvas |
| 2011.064.111 | Official Call, study | Joseph Csatari (Contemporary) | n. d. | 11 1/2" x 8 1/2" | pencil on paper |
| 2011.064.084 | Out of the Past Into the Future (Pass it On?) | Joseph Csatari (Contemporary) | 1996 | 34" x 27" | oil on canvas |
| 2011.064.104 | Pass It On | Joseph Csatari (Contemporary) | n. d. | 36" x 28" | oil on canvas |
| 2011.064.098 | Portrait of Arch Munson, Jr. | Joseph Csatari (Contemporary) | n. d. | 40" x 30 1/4" | oil on canvas |
| 2011.064.095 | Portrait of Ben H. Love | Joseph Csatari (Contemporary) | n. d. | 36" x 30" | oil on canvas |
| 2011.064.099 | Portrait of Charles M. Pigott | Joseph Csatari (Contemporary) | n. d. | 36" x 30" | oil on canvas |

| OBJECT ID | TITLE | CREATOR | DATE | IMAGE SIZE | MEDIUM |
|---|---|---|---|---|---|
| 2011.064.096 | Portrait of Dr. Thomas C. MacAvoy | Joseph Csatari (Contemporary) | n. d. | 36" x 30" | oil on canvas |
| 2011.064.094 | Portrait of Edward Joullian III | Joseph Csatari (Contemporary) | n. d. | 36" x 30" | oil on canvas |
| 2011.064.100 | Portrait of Harvey L. Price | Joseph Csatari (Contemporary) | n. d. | 31" x 25" | oil on canvas |
| 2011.064.103 | Portrait of J. L. Tarr | Joseph Csatari (Contemporary) | n. d. | 36" x 30" | oil on canvas |
| 2011.064.101 | Portrait of Jere B. Ratcliff | Joseph Csatari (Contemporary) | n. d. | 36" x 30" | oil on canvas |
| 2011.064.102 | Portrait of Robert W. Reneker | Joseph Csatari (Contemporary) | n. d. | 40" x 30 3/8" | oil on canvas |
| 2011.064.097 | Portrait of Sanford N. McDonnell | Joseph Csatari (Contemporary) | n. d. | 40" x 30" | oil on canvas |
| 2011.064.080 | Scouting for all Seasons | Joseph Csatari (Contemporary) | 1990 | 40" x 34" | oil on canvas |
| 2011.064.117 | Scouting For All Seasons, study | Joseph Csatari (Contemporary) | n. d. | 15 3/4" x 15" | pencil on paper |
| 2011.064.085 | Scouting Values | Joseph Csatari (Contemporary) | 1996 | 36" x 28" | oil on canvas |
| 2011.064.113 | Scoutmaster, study | Joseph Csatari (Contemporary) | n. d. | 13 1/2" x 10 1/2" | pencil on paper |
| 2011.064.108 | Scouts Are Patriotic, study | Joseph Csatari (Contemporary) | n. d. | 13" x 9 1/2" | pencil on paper |
| 2011.064.112 | Scouts Hiking, study | Joseph Csatari (Contemporary) | n. d. | 14" x 12" | pencil on paper |
| 2011.064.074 | Spirit Lives On | Joseph Csatari (Contemporary) | 1985 | 34" x 26" | oil on canvas |
| 2011.064.067 | The New Spirit | Joseph Csatari (Contemporary) | 1976 | 33" x 25" | oil on canvas |
| 2011.064.064 | The Ordeal | Joseph Csatari (Contemporary) | 1967 | 22" x 18" | oil on canvas |
| 2011.064.071 | The Patrol Leader | Joseph Csatari (Contemporary) | 1981 | 26" x 21" | oil on canvas |
| 2011.064.069 | The Reunion | Joseph Csatari (Contemporary) | 1979 | 32" x 24" | oil on canvas |
| 2011.064.079 | The Scoutmaster | Joseph Csatari (Contemporary) | 1989 | 44" x 36" | oil on canvas |
| 2011.064.073 | The Strength of Scouting Through Volunteers OR Thank You, Scout Volunteers | Joseph Csatari (Contemporary) | 1983 | 30" x 24" | oil on canvas |
| 2011.064.063 | Thomas J. Watson, Jr. | Joseph Csatari (Contemporary) | 1965 | 28" x 22" | oil on canvas |
| 2011.064.086 | Urban Good Turn | Joseph Csatari (Contemporary) | 1997 | 30" x 25" | oil on canvas |
| 2011.064.076 | Values That Last a Lifetime | Joseph Csatari (Contemporary) | 1986 | 36" x 28" | oil on canvas |
| 2011.064.077 | Winter Camping Scene | Joseph Csatari (Contemporary) | 1987 | 40" x 30" | oil on canvas |
| 2011.064.078 | You Can Do It | Joseph Csatari (Contemporary) | 1988 | 30" x 24" | oil on canvas |
| 2011.064.317 | Happy 90th Birthday BSA | Joseph Csatari (Contemporary) Artist | 2000 | | Oil on Canvas |
| 2011.064.318 | The Summit or Summit Bechtel Reserve | Joseph Csatari (Contemporary) Artist | 2013 | | Oil on Canvas |
| None | Live Scouting's Adventures | Josh Hunt | n.d. | | |
| 2011.064.206 | Brown and Bigelow Calendar | Keely (Contemporary) | 1970 | 33" x 11" | Oil on board |
| 2011.064.310 | Man to Man | L. D. Warren (Born 1906) | 1956 | 10 1/2" x 8 7/8" | Ink on paper |

| OBJECT ID | TITLE | CREATOR | DATE | IMAGE SIZE | MEDIUM |
|---|---|---|---|---|---|
| 2011.064.186 | The Spirit Lives On | Larry Frost (Contemporary) | n. d. | 44" x 36" | Oil on masonite |
| 2011.064.311 | Boy Scout Saluting | Lawrence Wilbur (1897- 1988) | n. d. | 16 1/2" x 13 1/2" | Oil on unstretched canvas |
| 2012.056 | Lady with Scarf | Leyendecker, J.C. | n.d. | | Oil Study |
| 2011.064.216 | Portrait of George H. Fisher | Lurtos (Contemporary) | n. d. | 26" x 19 1/2" | Oil on board |
| 2011.064.205 | Miriam Lumpkin Rand Johnston | Marion D. Johnson (1892- 1966) | n. d. | 23 1/2" x 19 1/2" | Pastel on paper |
| 2011.064.282 | Scouting in the World | Martha Jane Starr (Contemporary) | n. d. | 49" x 19" | 25 petit points on three panels |
| 2011.064.283 | Scouting in the World | Martha Jane Starr (Contemporary) | n. d. | 49" x 19" | 25 petit points on three panels |
| 2011.064.281 | Scouting in the World | Martha Jane Starr (Contemporary) | n. d. | 49" x 19" | 25 petit points on three panels |
| 2011.064.284 | Trail to Eagle | Martha Jane Starr (Contemporary) | n. d. | 24 3/8" x 19 3/8" | 8 petit points on three panels |
| 2011.064.221 | Portrait of Elbert Fretwell in a Scout Uniform | Martin Mockford (Contemporary) | 1954 | 20" x 16" | Oil on canvas |
| 2011.064.238 / 1999.050 | Eagle in Flight / "The Eagle" | Maynard Reece (Born 1920) | 1980 | 16" x 24" | Oil on canvas |
| Unknown | Portrait of Baden-Powell | McKean | 1967 | | |
| 2011.064.169 | Fort A. P. Hill | Milton Arthur Candiff ( Born 1907) | 1981 | 14" x 10 1/4" | Ink and pencil on paper and collage |
| Unknown | 1939 World's Fair | Monte Crews | n.d. | | Oil on Canvas |
| 2011.064.239 | Onward...For God and My Country | Paul Remmey (Contemporary) | n. d. | 18 1/4" x 37" | Oil on canvas |
| 2011.064.286 | Portrait of Dr. Arthur Schuck | Paul Trebilcock (1902- 1981) | n. d. | 44" x 34" | Oil on canvas |
| 2011.064.300 | America's Boypower, Project SOAR | Paul Troth (Contemporary) | 1971 | 9" x 7 1/4" | Ink on paper |
| 2011.064.184 | "Trail to Manhood" | Peter M. Fillerup (Contemporary) | 1984 | 84" high | Cast bronze sculpture with brown patina |
| 2011.064.183 | Maquette for "Trail to Manhood" | Peter M. Fillerup (Contemporary) | 1991 | 16 1/4" without base | Cast bronze sculpture with brown patina |
| 2011.064.279 | Scouting Family | R. Skemp (Contemporary) R.S. Kemp or R. Skemp | n. d. | 18" x 14 1/2" | Oil on board |
| Unknown | Citizenship: BSA | Remington Schuyler (1884- 1955) | 1925 | 30" x 21 1/2" | Oil on Canvas |

| OBJECT ID | TITLE | CREATOR | DATE | IMAGE SIZE | MEDIUM |
|---|---|---|---|---|---|
| 2011.064.245 | Cub Scouts Running an Indoor Course | Remington Schuyler (1884- 1955) | n. d. | 6 1/2" x 22 1/2" | Ink on paper |
| 2011.064.246 | Indian and Travois | Remington Schuyler (1884- 1955) | 1920 | 10" x 30" | Oil on canvas |
| 2011.064.247 / 1988.045 | Indian in Canoe (triptych) | Remington Schuyler (1884- 1955) | 1922 | 20" x 11"; 20" x 33"; and 20" x 11" | Oil on canvas |
| 2011.064.249 | Scout Sign Up | Remington Schuyler (1884- 1955) | n. d. | 13 1/2" x 12 5/8" | Ink on paper |
| 2011.064.250 | Scout with Binoculars | Remington Schuyler (1884- 1955) | n. d. | 4 1/2" x 6 1/2" | Ink on paper |
| 2011.064.251 | Scout with Native American | Remington Schuyler (1884- 1955) | n. d. | 7 5/8" x 7 5/8" | Ink on paper |
| 2011.064.252 | Scouts and Important Holidays | Remington Schuyler (1884- 1955) | n. d. | 9 1/4" x 27" | Ink and coloured pencil on paper |
| 2011.064.253 | Scouts Around a Campfire | Remington Schuyler (1884- 1955) | n. d. | 8 1/2" x 7 3/4" | Ink on paper |
| 2011.064.254 | Scouts at Doorway to Sky Patrol Building | Remington Schuyler (1884- 1955) | n. d. | 8 3/4" x 8 1/2" | Ink on paper |
| 2011.064.255 | Scouts Building a Log Structure | Remington Schuyler (1884- 1955) | n. d. | 7 3/4" x 6 1/2" | Ink on paper |
| 2011.064.256 | Scouts Cooking at Camp | Remington Schuyler (1884- 1955) | n. d. | 5 7/8" x 6 7/8" | Ink on paper |
| 2011.064.257 | Scouts Hiking Near Totem Pole | Remington Schuyler (1884- 1955) | n. d. | 9" x 7 1/2" | Ink on paper |
| 2011.064.261 | Scouts in Winter Camp (One of ten in the series) | Remington Schuyler (1884- 1955) | n. d. | 31" x 27" | Charcoal on paper |
| 2011.064.262 | Scouts in Winter Camp (One of ten in the series) | Remington Schuyler (1884- 1955) | n. d. | 36" x 26 1/2" | Charcoal on paper |
| 2011.064.263 | Scouts in Winter Camp (One of ten in the series) | Remington Schuyler (1884- 1955) | n. d. | 32" x 27" | Charcoal on paper |
| 2011.064.264 | Scouts in Winter Camp (One of ten in the series) | Remington Schuyler (1884- 1955) | n. d. | 31" x 27" | Charcoal on paper |
| 2011.064.265 | Scouts in Winter Camp (One of ten in the series) | Remington Schuyler (1884- 1955) | n. d. | 30" x 27" | Charcoal on paper |
| 2011.064.258 | Scouts in Winter Camp (One of ten in the series) | Remington Schuyler (1884- 1955) | n. d. | 27 1/2" x 27" | Charcoal on paper |
| 2011.064.259 | Scouts in Winter Camp (One of ten in the series) | Remington Schuyler (1884- 1955) | n. d. | 28 1/2" x 27" | Charcoal on paper |
| 2011.064.260 | Scouts in Winter Camp (One of ten in the series) | Remington Schuyler (1884- 1955) | n. d. | 29 1/2" x 27" | Charcoal on paper |
| 2011.064.266 | Scouts on a Hike | Remington Schuyler (1884- 1955) | n. d. | 16" x 14" | Ink on paper |
| 2011.064.267 | Scouts on Hike Near Seashore | Remington Schuyler (1884- 1955) | n. d. | 7 3/4" x 7" | Ink on paper |

| OBJECT ID | TITLE | CREATOR | DATE | IMAGE SIZE | MEDIUM |
|---|---|---|---|---|---|
| Unknown | Scouts on Lookout (with binoculars)( | Remington Schuyler (1884- 1955) | n.d. | | Oil on Canvas |
| 2011.064.268 | Scouts Resting Along a Trail | Remington Schuyler (1884- 1955) | n. d. | 22 1/2" x 19 1/4" | Charcoal on paper |
| 2011.064.269 | Scouts Setting Up Camp Near a Lake | Remington Schuyler (1884- 1955) | n. d. | 6" x 6 7/8" | Ink on paper |
| 2011.064.270 | Scouts Sitting in Front of a Teepee | Remington Schuyler (1884- 1955) | n. d. | 8" x 8" | Ink on paper |
| 2011.064.271 | Scouts Swimming and Diving | Remington Schuyler (1884- 1955) | n. d. | 7 1/2" x 7 1/2" | Ink on paper |
| 2011.064.272 | Scouts Washing Up at Camp | Remington Schuyler (1884- 1955) | n. d. | 9 3/8" x 8 1/4" | Ink on paper |
| 2011.064.273 | Scouts Welcoming a New Member | Remington Schuyler (1884- 1955) | n. d. | 9 1/2" x 7" | Ink on paper |
| 2011.064.248 | Sitting Scouts Dressed as Native Americans | Remington Schuyler (1884- 1955) | n. d. | 7 3/4" x 7 3/4" | Ink on paper |
| 2011.064.274 | The Second Class Requirements | Remington Schuyler (1884- 1955) | n. d. | 11 1/2" x 6 5/8" | Ink on paper |
| 2011.064.275 | The Tenderfoot Requirements | Remington Schuyler (1884- 1955) | n. d. | 11 1/4" x 6 5/8" | Ink on paper |
| 2011.064.276 | Tippy | Remington Schuyler (1884- 1955) | n. d. | 12" x 15 5/8" | Ink on jointed irregular paper |
| 2011.064.277 | Two Scouts at Picketburg Sign Post | Remington Schuyler (1884- 1955) | n. d. | 15" x 14" | Ink on paper |
| 2011.064.207 | Portrait of Gale F. Johnson (Johnston?) | Robert "Bob" Kovacs (Contemporary) | 1966 | 24" x 20" | Oil on canvas |
| 2011.064.208 | Portrait of J. F. Kennedy in Scout Uniform | Robert "Bob" Kovacs (Contemporary) | 1966 | 34" x 29 1/2" | Acrylic on rawhide |
| 2011.064.209 | Portrait of Joseph A. Burton, Jr. | Robert "Bob" Kovacs (Contemporary) | 1967 | 30" x 24" | Oil on canvas |
| 2011.064.210 | Portrait of Lady Baden-Powell | Robert "Bob" Kovacs (Contemporary) | 1967 | 24" x 20" | Oil on canvas |
| 2011.064.219 | The Boy Scout | Robert Tait McKenzie (1867- 1938) | 1937 | 73" high | Cast bronze sculpture with brown patina |
| 1992.060.001 -.004 | "Four Season" portfolio | Rockwell, Norman (1894-1978) | 1976 | 13 1/2" x 13 1/4" | Lithograph |
| 2011.064.001 | A Daily Good Turn | Rockwell, Norman (1894-1978) | 1918 | 30.25 x 22.25" | Oil on canvas |
| 2011.064.036 | A Good Sign All Over the World | Rockwell, Norman (1894-1978) | 1961 | 29" x 25" | Oil on relined canvas |
| 2011.064.005 | A Good Turn | Rockwell, Norman (1894-1978) | 1924 | 32.125 x 27.125" | Oil on relined canvas |
| 2011.064.038 | A Great Moment | Rockwell, Norman (1894-1978) | 1963 | 43 1/4" x 35 x 1/4" | Oil on canvas |
| 2011.064.017 | A Guiding Hand | Rockwell, Norman (1894-1978) | 1944 | 38 x 29.125" | Oil on canvas |
| 2011.064.013 | A Scout is Friendly | Rockwell, Norman (1894-1978) | 1941 | 33 x 22" | Oil on relined canvas |
| 2011.064.006 | A Scout is Loyal | Rockwell, Norman (1894-1978) | 1930 | 44 x 34" | Oil on relined canvas |
| 2011.064.024 | A Scout is Reverent | Rockwell, Norman (1894-1978) | 1952 | 28 x 22" | Oil on canvas |
| 2011.064.016 | All Together | Rockwell, Norman (1894-1978) | 1945 | 30 x 24" | Oil on canvas |

| OBJECT ID | TITLE | CREATOR | DATE | IMAGE SIZE | MEDIUM |
|---|---|---|---|---|---|
| 2011.064.011 | America Builds for Tomorrow | Rockwell, Norman (1894-1978) | 1936 | 34 x 25" | Oil on relined canvas |
| 2011.064.045 | America's Manpower Begins with Boypower | Rockwell, Norman (1894-1978) | 1969 | 34" x 26" | Oil on canvas |
| 2011.064.042 | Beyond the Easel | Rockwell, Norman (1894-1978) | 1967 | 29 1/4" x 27" | Oil on canvas |
| 2011.064.029 | Boy and Dogs, New Puppies | Rockwell, Norman (1894-1978) | 1956 | 27 1/4" x 25 1/4" | Oil on canvas |
| 2011.064.031 | Boy Scout Hiking | Rockwell, Norman (1894-1978) | 1957 | 35 1/4" x 21" | Oil on canvas |
| 2011.064.051 | Boy Scouts Pledging 60th Boy's Life | Rockwell, Norman (1894-1978) | c. 1968 | 13" x 12" | oil on canvas |
| 2011.064.052 | Boypower, Manpower | Rockwell, Norman (1894-1978) | 1970 | 24" x 24" | charcoal on paper |
| 2011.064.040 | Breakthrough for Freedom | Rockwell, Norman (1894-1978) | 1965 | 23 x 18" | Oil on canvas |
| 2011.064.035 | Can't Wait | Rockwell, Norman (1894-1978) | 1970 | 39" x 29" | Oil on canvas |
| 2011.064.057 | Can't Wait | Rockwell, Norman (1894-1978) | 1960 | 23 1/2" x 18 3/4" with margins | colour lithograph |
| 2011.064.007 | Carry On | Rockwell, Norman (1894-1978) | 1932 | 45 x 31 1/2" | Oil on relined canvas |
| 2011.064.043 | Come and Get It | Rockwell, Norman (1894-1978) | 1968 | 37 1/4" x 31 1/4" | Oil on canvas |
| 2011.064.032 | Ever Onward | Rockwell, Norman (1894-1978) | 1958 | 37" x 29 1/8" | Oil on relined canvas |
| 2011.064.021 | Forward America | Rockwell, Norman (1894-1978) | 1949 | 46.5 x 36.125" | Oil on canvas |
| 2011.064.019 | Friend in Need | Rockwell, Norman (1894-1978) | 1947 | 38 x 19.125" | Oil on canvas |
| 2011.064.046 | From Concord to Tranquility | Rockwell, Norman (1894-1978) | 1971 | 26 1/2" x 21 1/4" | Oil on canvas |
| 2011.064.039 | Growth of a Leader | Rockwell, Norman (1894-1978) | 1964 | 30 1/4" x 23 1/4" | Oil on relined canvas |
| 2011.064.027 | High Adventure at Philmont | Rockwell, Norman (1894-1978) | 1955 | 52 1/2' x 44 1/4" | Oil on relined canvas |
| 2011.064.033 | Homecoming | Rockwell, Norman (1894-1978) | 1959 | 44" x 33" | Oil on relined canvas |
| 2011.064.015 | I Will Do My Best | Rockwell, Norman (1894-1978) | 1943 | 39 x 28" | Oil on canvas |
| 2011.064.044 | Irving Feist | Rockwell, Norman (1894-1978) | 1969 | 20" x 16" | Oil on masonite |
| 2011.064.018 | Men of Tomorrow | Rockwell, Norman (1894-1978) | 1946 | 37 x 29" | Oil on canvas |
| 2011.064.028 | Mighty Proud | Rockwell, Norman (1894-1978) | 1956 | 30 1/4" x 25" | Oil on canvas |
| 2011.064.023 | On My Honor | Rockwell, Norman (1894-1978) | 1951 | 46 x 34" | Oil on canvas |
| 2011.064.008 | On to Washington | Rockwell, Norman (1894-1978) | c. 1933 | 30.125 x 24.125" | Oil on relined canvas |

| OBJECT ID | TITLE | CREATOR | DATE | IMAGE SIZE | MEDIUM |
|---|---|---|---|---|---|
| 2011.064.020 | Our Heritage | Rockwell, Norman (1894-1978) | 1948 | 42.125 x 32.125" | Oil on canvas |
| 2011.064.034 | Pointing the Way | Rockwell, Norman (1894-1978) | 1960 | 37 1/2" x 28 3/4" | Oil on relined canvas |
| 2011.064.002 | Red Cross Man in the Making (A Good Scout) (A Scout is Kind) | Rockwell, Norman (1894-1978) | 1916 | 30 x 22" | Oil on canvas |
| 2011.064.041 | Scouting is Outing | Rockwell, Norman (1894-1978) | 1966 | 26 1/8" x 21" | Oil on canvas |
| 2011.064.003 | Scouting Makes Real Men Out of Boys (Some Day This May Save An Army) | Rockwell, Norman (1894-1978) | 1916 | 30.125 x 22.125" | Oil on canvas |
| 2011.064.010 | Scouts of Many Trails | Rockwell, Norman (1894-1978) | 1936 | 40.5 x 28.5" | Oil on relined canvas |
| 2011.064.004 | Straight Talks from the Scoutmaster | Rockwell, Norman (1894-1978) | 1923 | 30.125 x 22.125" | Oil on relined canvas |
| 1993.049.001 | Study for "The Scoutmaster" | Rockwell, Norman (1894-1978) | 1956 | 12 1/4" x 10" | Oil on posterboard with inscription on mat |
| 2011.064.056 | Study for Grandma's Recipe | Rockwell, Norman (1894-1978) | n. d. | 11" x 9 1/2 | oil on paper |
| 2011.064.048 | Study for Spirit of America | Rockwell, Norman (1894-1978) | c. 1928 | 17" x 10 7/8" | pencil on paper |
| 2011.064.050 | Study for The Spirit of 1976 | Rockwell, Norman (1894-1978) | 1974 | 14" x 10 1/2" | oil on paper |
| 2011.064.049 | Study for Washington or International Scouting | Rockwell, Norman (1894-1978) | c. 1933 | 13" x 10" | oil on paper |
| 2011.064.053 | Study for We Thank Thee, O'Lord | Rockwell, Norman (1894-1978) | 1972 | 1 1/2" x 9" | oil on canvas mounted to board with reverse oil on glass |
| 2011.064.055 | Study for Weapons for Liberty | Rockwell, Norman (1894-1978) | n. d. | 11" x 8" | oil on paper |
| 2011.064.022 | The Adventure Trail | Rockwell, Norman (1894-1978) | 1950 | 36 x 27.25" | Oil on canvas |
| 2011.064.009 | The Campfire Story | Rockwell, Norman (1894-1978) | 1934 | 32.125 x 24.125" | Oil on canvas |
| 2011.064.025 | The Right Way | Rockwell, Norman (1894-1978) | 1953 | 36 x 30" | Oil on canvas |
| 2011.064.012 | The Scouting Trail | Rockwell, Norman (1894-1978) | 1937 | 26 x 20" | Oil on relined canvas |
| 2011.064.026 | The Scoutmaster | Rockwell, Norman (1894-1978) | 1954 | 45x36" | Oil on canvas |
| 2011.064.037 | To Keep Myself Physically Strong | Rockwell, Norman (1894-1978) | 1962 | 35 1/4" x 29 1/4" | Oil on relined canvas |
| 2011.064.030 | Tomorrow's Leader | Rockwell, Norman (1894-1978) | 1957 | 40" x 34 1/8" | Oil on relined canvas |

| OBJECT ID | TITLE | CREATOR | DATE | IMAGE SIZE | MEDIUM |
|---|---|---|---|---|---|
| 2011.064.047 | We Thank Thee, O'Lord | Rockwell, Norman (1894-1978) | 1972 | 34 1/2" x 27 1/2" | Oil on canvas mounted to board |
| 2011.064.054 | We Thank Thee, O'Lord, study | Rockwell, Norman (1894-1978) | 1972 | 30 3/4" x 24 3/4" | charcoal on paper |
| 2011.064.014 | We, Too, Have A Job To Do | Rockwell, Norman (1894-1978) | 1942 | 32 x 21" | Oil on relined canvas |
| 2011.064.233 | Untitled from the "Health, Safety, and First Aid" series | Ruth Pisano (Contemporary) | n. d. | 25 1/2" x 40" | Pastel on paper |
| 2011.064.235 | Untitled from the "Health, Safety, and First Aid" series | Ruth Pisano (Contemporary) | n. d. | 25 1/2" x 30 1/2" | Pastel on paper |
| 2011.064.236 | Untitled from the "Health, Safety, and First Aid" series | Ruth Pisano (Contemporary) | n. d. | 28 1/2" x 31" | Pastel on paper |
| 2011.064.237 | Untitled from the "Health, Safety, and First Aid" series | Ruth Pisano (Contemporary) | n. d. | 25 1/2" x 32" | Pastel on paper |
| 2011.064.232 | Untitled from the "Health, Safety, and First Aid" series | Ruth Pisano (Contemporary) | n. d. | 24 1/2" x 21 1/2" | Pastel on paper |
| 2011.064.234 | Untitled from the "Health, Safety, and First Aid" series | Ruth Pisano (Contemporary) | n. d. | 19 1/2" x 24 1/2" | Pastel on paper |
| Unknown | Scouts | S. Johnson | n.d. | | Color Pencil on Paper |
| 2011.064.313 | James West | S. Posie Wood (Contemporary) | n. d. | 7 7/8" x 5 7/8" with margin | Mono- toned etching |
| 2011.064.185 | Monk and Jester | Salvatore Frangiamore (1853- 1915) | 1885 | 28" x 18" | Watercolour on paper |
| 2011.064.218 | Public Attention | Shaw McCutcheon (Contemporary) | 1969 | 18" x 14 1/2" | Ink on paper |
| 2011.064.285 / 1998.118 | Trail to Eagle | Ted Summers (Contemporary) | 1950s | 24" x 50" | |
| 2011.064.294 | Boy Scouts of America, Region Eight | Tricomi (Contemporary) | 1972 | 16" x 20" | Oil on canvas |
| 2011.064.297 | Boy Scouts of America, Region Eleven | Tricomi (Contemporary) | 1972 | 16" x 20" | Oil on canvas |
| 2011.064.291 | Boy Scouts of America, Region Five | Tricomi (Contemporary) | 1972 | 16" x 20" | Oil on canvas |
| 2011.064.290 | Boy Scouts of America, Region Four | Tricomi (Contemporary) | 1972 | 16" x 20" | Oil on canvas |
| 2011.064.295 | Boy Scouts of America, Region Nine | Tricomi (Contemporary) | 1972 | 16" x 20" | Oil on canvas |
| 2011.064.287 | Boy Scouts of America, Region One | Tricomi (Contemporary) | 1972 | 20" x 16" | Oil on canvas |
| 2011.064.293 | Boy Scouts of America, Region Seven | Tricomi (Contemporary) | 1972 | 20" x 16" | Oil on canvas |
| 2011.064.292 | Boy Scouts of America, Region Six | Tricomi (Contemporary) | 1972 | 20" x 16" | Oil on canvas |
| 2011.064.296 | Boy Scouts of America, Region Ten | Tricomi (Contemporary) | 1972 | 16" x 20" | Oil on canvas |
| 2011.064.289 | Boy Scouts of America, Region Three | Tricomi (Contemporary) | 1972 | 20" x 16" | Oil on canvas |
| 2011.064.298 | Boy Scouts of America, Region Twelve | Tricomi (Contemporary) | 1972 | 16" x 20" | Oil on canvas |

| OBJECT ID | TITLE | CREATOR | DATE | IMAGE SIZE | MEDIUM |
|---|---|---|---|---|---|
| 2011.064.288 | Boy Scouts of America, Region Two | Tricomi (Contemporary) | 1972 | 20" x 16" | Oil on canvas |
| 2011.064.299 | National Conference, Order of the Arrow | Tricomi (Contemporary) | 1971 | 20" x 24" | Oil on canvas |
| Unknown | Boy Scouts | Unknown | n.d. | | Goache on Paper |
| Unknown | Boy Scouts, Camping and Cooking | Unknown | n.d. | | Oil on Paper |
| Unknown | BSA National Museum in Kentucky | Unknown | n.d. | | |
| Unknown | Character Counts with #50 Race Car | unknown | n.d. | | |
| Unknown | Cub Scout | unknown | n.d. | | Oil on Canvas |
| Unknown | Cub Scout with Rocket and Bike | Unknown | n.d. | | |
| Unknown | Cub Scouts at a Picnic | Unknown | n.d. | | Oil on Paper |
| Unknown | Elbert Fretwell Portrait | unknown | n.d. | | |
| Unknown | Portrait of Glen | Unknown | n.d. | | |
| Unknown | Scout and Scoutmaster with People Looking On | Unknown | n.d. | | |
| None | Steady at the Helm | Unknown | n.d. | | |
| None | Stephen D. Bechtel, Jr. | Unknown | 2011 | | |
| 2011.064.304 | Lord Baden Powell | Unknown (19th- 20th century) | c. 1900 | 26" x 14" | Pastel on paper |
| 2011.064.305 | Perry R. Bass | Unknown (19th- 20th century) | 1984 | 19" high with base | Cast bronze sculpture with brown patina |
| 2011.064.301 | Edward C. Joullian III | Unknown (Contemporary) | 1985 | 19 3/4" high with base | Cast bronze sculpture with brown patina |
| 2011.064.302 | Ellsworth H. Augustus | Unknown (Contemporary) | 1985 | 19 1/4" high with base | Cast bronze sculpture with brown patina |
| 2011.064.303 | George W. Pirtle | Unknown (Contemporary) | 1984 | 18 3/4" high with base | Cast bronze sculpture with brown patina |
| 2011.064.307 | Public Relations | Unknown (Contemporary) | n. d. | 11 7/8" x 8 7/8" | Ink on paper |
| 2011.064.308 | Sanford N. McDonnel | Unknown (Contemporary) | 1985 | 21" high with base | Cast bronze sculpture with brown patina |
| Unknown | Portrait of Unknown Man | W. Scott | n.d. | | |
| 2011.064.178 | Dr. Fretwell, Donald, and Mickey | Walt Disney ( 1901- 1966) | 1944 | 26" x 26" | Pencil on paper (print?) |
| 2011.064.179 | Good Scouts | Walt Disney ( 1901- 1966) | n. d. | 15 3/8" x 13 1/8" | Ink wash on paper |

| OBJECT ID | TITLE | CREATOR | DATE | IMAGE SIZE | MEDIUM |
|---|---|---|---|---|---|
| 2011.064.180 / 1999.057 | Sea Scouts | Walt Disney ( 1901- 1966) | n. d. | 15 3/8" x 13 1/8" | Gouache on celluloid |
| 2011.064.203 | Boy Scouts of America, 25th Anniversary | Walter Beach Humphrey (1892- 1966) | 1935 | 30 1/4" x 26 1/4" | Oil on relined canvas |
| 2011.064.280 | National Archives | William Arthur Smith (1918- 1989) | n. d. | 38" x 35" | Oil on canvas |
| Unknown | Portrait of Mortimer Schiff | Wilson | n.d. | | Oil on Canvas |
| 2011.064.229 | Scout with English Sailor | Z. P. Nikolaki (Contemporary) | n. d. | 30" x 23" | Mixed media on unstretched canvas |

18

**SCHEDULE 2**

**BSA INSURANCE POLICIES**

BSA Insurance Policies

The insurance schedules and coverage charts attached as exhibits 2 and 3 to the Disclosure Statement represent only the Debtors' position as to its insurance coverage. The schedules were prepared by Debtors and not by the insurers. In fact, certain insurers dispute some of the information presented in the schedules and contend the information is not entirely accurate or complete. The Debtors agree that the schedules are not intended to be, and shall not be deemed to constitute, an admission by any insurer of liability under any insurance policy or the terms and conditions of the policies, and that all rights and defenses of the Debtors and all insurers are preserved and shall not be waived by inclusion of the schedules in, or the Court's approval of, this Disclosure Statement.

Even in situations in which there is no dispute about the original policy limits, in certain instances, the available limits have been eroded or exhausted in connection with earlier claims.

| Carrier | Policy Number | Start Date | End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE)[1] |
|---|---|---|---|---|---|---|---|---|---|
| Insurance Company of North America | Unknown | 1/1/1935 | 1/1/1936 | | Unknown | Unknown | Unknown | Unknown | SE |
| Insurance Company of North America | Unknown | 1/1/1936 | 1/1/1937 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Insurance Company of North America | Unknown | 1/1/1937 | 1/1/1938 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Insurance Company of North America | Unknown | 1/1/1938 | 1/1/1939 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Insurance Company of North America | Unknown | 1/1/1939 | 1/1/1940 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Insurance Company of North America | Unknown | 1/1/1940 | 1/1/1941 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Insurance Company of North America | Unknown | 1/1/1941 | 1/1/1942 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Insurance Company of North America | Unknown | 1/1/1942 | 1/1/1943 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Insurance Company of North America | Unknown | 1/1/1943 | 1/1/1944 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Insurance Company of North America | Unknown | 1/1/1944 | 1/1/1945 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Insurance Company of North America | Unknown | 1/1/1945 | 1/1/1946 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Insurance Company of North America | Unknown | 1/1/1946 | 1/1/1947 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Insurance Company of North America | Unknown | 1/1/1947 | 1/1/1948 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Insurance Company of North America | Unknown | 1/1/1948 | 1/1/1949 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Insurance Company of North America | Unknown | 1/1/1949 | 1/1/1950 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Insurance Company of North America | Unknown | 1/1/1950 | 1/1/1951 | $ - | $ 100,000.00 | $ 100,000.00 | None | Unknown | SE |
| Insurance Company of North America | CGL23729 | 1/1/1951 | 1/1/1952 | $ - | $ 100,000.00 | $ 100,000.00 | None | Unknown | SE |
| Insurance Company of North America | Unknown | 1/1/1952 | 1/1/1953 | $ - | $ 100,000.00 | $ 100,000.00 | None | Unknown | SE |
| Insurance Company of North America | Unknown | 1/1/1953 | 1/1/1954 | $ - | $ 100,000.00 | $ 100,000.00 | None | Unknown | SE |
| Insurance Company of North America | 9CGL41300 | 1/1/1954 | 1/1/1955 | $ - | $ 100,000.00 | $ 100,000.00 | None | Unknown | SE |
| Insurance Company of North America | Unknown | 1/1/1955 | 1/1/1956 | $ - | $ 100,000.00 | $ 100,000.00 | None | Unknown | SE |
| Insurance Company of North America | 9CGL 41300 | 1/1/1956 | 1/1/1957 | $ - | $ 250,000.00 | $ 250,000.00 | None | Unknown | SE |
| Insurance Company of North America | Unknown | 1/1/1957 | 1/1/1958 | $ - | $ 250,000.00 | $ 250,000.00 | None | Unknown | SE |
| Insurance Company of North America | CGL97448 | 1/1/1958 | 1/1/1959 | $ - | $ 250,000.00 | $ 250,000.00 | None | Unknown | SE |
| Insurance Company of North America | 9CGL 114 960 | 1/1/1959 | 1/1/1960 | $ - | $ 250,000.00 | $ 250,000.00 | None | Unknown | SE |
| Insurance Company of North America | CGL 121944 | 1/1/1960 | 1/1/1961 | $ - | $ 250,000.00 | $ 250,000.00 | None | Unknown | SE |
| Insurance Company of North America | CGL 122620 | 1/1/1960 | 1/1/1961 | $ - | $ 250,000.00 | $ 250,000.00 | None | Unknown | SE |
| Insurance Company of North America | CGL175782 | 1/1/1961 | 2/1/1961 | $ - | $ 250,000.00 | $ 250,000.00 | None | Unknown | SE |
| Insurance Company of North America | CGL175782 | 2/1/1961 | 1/1/1962 | $ - | $ 500,000.00 | $ 500,000.00 | None | Unknown | SE |
| Insurance Company of North America | CGL 19 18 36 | 1/1/1962 | 1/1/1963 | $ - | $ 500,000.00 | $ 500,000.00 | None | N | PE |
| Insurance Company of North America | CGL 20 46 80 | 1/1/1963 | 1/1/1964 | $ - | $ 500,000.00 | $ 500,000.00 | None | N | PE |
| Insurance Company of North America | CGL 21 29 22 | 1/1/1964 | 1/1/1965 | $ - | $ 500,000.00 | $ 500,000.00 | None | N | PE |
| Insurance Company of North America | CGL 23 24 70 | 1/1/1965 | 1/1/1966 | $ - | $ 500,000.00 | $ 500,000.00 | None | N | PE |
| Insurance Company of North America | CGL 24 88 96 | 1/1/1966 | 1/1/1967 | $ - | $ 500,000.00 | $ 500,000.00 | None | N | PE |
| Insurance Company of North America | GLP11200 | 1/1/1967 | 1/1/1968 | $ - | $ 500,000.00 | $ 500,000.00 | None | N | PE |
| Insurance Company of North America | GLP15 12 11 | 1/1/1968 | 1/1/1969 | $ - | $ 500,000.00 | $ 500,000.00 | None | N | PE |
| Insurance Company of North America | GLP 16 09 81 | 1/1/1969 | 1/1/1970 | $ - | $ 500,000.00 | $ 500,000.00 | None | N | PE |
| Insurance Company of North America | XBC43198 | 3/26/1969 | 1/1/1970 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | None | N | PE |
| Insurance Company of North America | BLB 51323 | 1/1/1970 | 9/21/1971 | $ - | $ 500,000.00 | $ 500,000.00 | None | N | PE |
| Insurance Company of North America | XBC 77302 | 1/1/1970 | 1/1/1971 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | None | N | PE |
| Insurance Company of North America | XBC85370 | 1/1/1971 | 5/1/1971 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | None | N | PE |
| Hartford Accident and Indemnity Company | 10 HUA 43300 | 5/1/1971 | 1/1/1972 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | None | N | PE |
| Hartford Accident and Indemnity Company | 10CA43315 | 9/21/1971 | 1/1/1972 | $ - | $ 500,000.00 | $ 500,000.00 | None | N | PE |
| Hartford Accident and Indemnity Company | 10CA43304 | 1/1/1972 | 1/1/1973 | $ - | $ 500,000.00 | $ 500,000.00 | None | N | PE |
| Hartford Accident and Indemnity Company | 10CA43303 | 1/1/1972 | 1/1/1974 | $ - | $ 500,000.00 | $ 500,000.00 | None | N | PE |
| Hartford Accident and Indemnity Company | 10HUA43302 | 1/1/1972 | 1/1/1974 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | None | N | PE |
| Argonaut Insurance Company | UL71286000088[2] | 5/1/1972 | 5/1/1973 | $ 2,500,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | None | N | PE |
| Hartford Accident and Indemnity Company | 10CA43304 | 1/1/1973 | 1/1/1974 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | None | N | PE |
| Hartford Accident and Indemnity Company | 10HUA43303 | 1/1/1973 | 5/1/1974 | $ 1,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | None | N | PE |
| Argonaut Insurance Company | UL 71-298-000088[2] | 5/1/1973 | 1/1/1975 | $ 2,500,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | None | N | PE |
| Hartford Accident and Indemnity Company | 10CA43324 | 1/1/1974 | 1/1/1975 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | None | N | PE |
| Hartford Accident and Indemnity Company | 10CA43329 | 1/1/1974 | 1/1/1975 | $ - | $ 500,000.00 | $ 500,000.00 | None | N | PE |
| Hartford Accident and Indemnity Company | 10HUA43331 | 1/1/1974 | 1/1/1975 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | None | N | PE |
| Hartford Accident and Indemnity Company | 10HUA43335 | 5/1/1974 | 1/1/1975 | $ 1,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | None | N | PE |
| Hartford Accident and Indemnity Company | 10CA43342E | 1/1/1975 | 1/1/1976 | $ - | $ 500,000.00 | $ 500,000.00 | None | N | PE |

BSA Insurance Policies

| Carrier | Policy Number | Start Date | End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE)[1] |
|---|---|---|---|---|---|---|---|---|---|
| National Union Fire Insurance Company of Pittsburgh, PA | BE1140592[3] | 1/1/1975 | 1/1/1976 | $ 500,000.00 | $ 7,500,000.00 | $ 7,500,000.00 | None | N | SE |
| Hartford Accident and Indemnity Company | 10CA43349E | 1/1/1976 | 1/1/1977 | $ - | $ 500,000.00 | $ 500,000.00 | None | N | PE |
| National Union Fire Insurance Company of Pittsburgh, PA | BE 115 15 59 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | None | N | PE |
| American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 5,000,000.00 | N | PE |
| London Market | 76-10-08-02 | 9/17/1976 | 1/1/1979 | $ 10,500,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | None | N | PE |
| Hartford Accident and Indemnity Company | 10CA43359E | 1/1/1977 | 1/1/1978 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | None | N | PE |
| Hartford Accident and Indemnity Company | 10JPA43360E | 1/1/1977 | 1/1/1978 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | PE |
| National Union Fire Insurance Company of Pittsburgh, PA | BE 121 82 55 | 1/1/1977 | 1/1/1978 | $ 1,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | None | N | BE |
| American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | $ 5,000,000.00 | N | PE |
| Insurance Company of North America | GLP 70 64 52 | 1/1/1978 | 1/1/1980 | $ - | $ 500,000.00 | $ 500,000.00 | None | N | PE |
| National Union Fire Insurance Company of Pittsburgh, PA | CE 115 77 77 | 1/1/1978 | 1/1/1979 | $ 500,000.00 | $ 500,000.00 | $ 500,000.00 | $ 500,000.00 | N | PE |
| First State Insurance Company | 908954 | 1/1/1978 | 1/1/1979 | $ 1,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | None | N | PE |
| Insurance Company of North America | XBC 151748 | 1/1/1979 | 1/1/1980 | $ 500,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | None | N | PE |
| Aetna Casualty and Surety Company | 01 XN 2046 WCA | 1/1/1979 | 1/1/1980 | $ 5,500,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | None | N | PE |
| First State Insurance Company | 927616 | 1/1/1979 | 1/1/1980 | $ 10,500,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | None | N | PE |
| Insurance Company of North America | GLP 70 64 52 | 1/1/1980 | 1/1/1981 | $ - | $ 500,000.00 | $ 500,000.00 | None | N | PE |
| Allianz Insurance Company | UMB 599346 | 1/1/1980 | 1/1/1981 | $ 500,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | None | N | PE |
| Aetna Casualty and Surety Company | 01 XN 2438 WCA | 1/1/1980 | 1/1/1981 | $ 5,500,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | None | N | PE |
| Insurance Company of North America | ISL1353 | 1/1/1981 | 1/1/1982 | $ - | $ 500,000.00 | $ 500,000.00 | None | N | PE |
| Transit Casualty Company | UMB964076 | 1/1/1981 | 1/1/1982 | $ 500,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| First State Insurance Company | 931255 | 1/1/1981 | 1/1/1983 | $ 5,500,000.00 | $ 4,150,000.00 | $ 7,650,000.00 | $ 4,150,000.00 | N | PE |
| London Market | 931255A | 1/1/1981 | 1/1/1983 | $ 5,500,000.00 | $ 3,500,000.00 | $ 7,650,000.00 | $ 3,500,000.00 | N | PE |
| First State Insurance Company | 931257 | 1/1/1981 | 1/1/1983 | $ 13,150,000.00 | $ 5,500,000.00 | $ 9,000,000.00 | $ 5,500,000.00 | N | PE |
| London Market | 931257A | 1/1/1981 | 1/1/1983 | $ 13,150,000.00 | $ 3,500,000.00 | $ 9,000,000.00 | $ 3,500,000.00 | N | PE |
| Insurance Company of North America | ISL1364 | 1/1/1982 | 1/1/1983 | $ - | $ 500,000.00 | $ 500,000.00 | None | N | PE |
| Twin City Fire Insurance Company | TXU 100325 | 1/1/1982 | 1/1/1983 | $ 500,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| Insurance Company of North America | XCP 144961 | 11/17/1982 | 1/1/1984 | $ 25,500,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | PE |
| Insurance Company of North America | ISL G0 28 34 57-1 | 1/1/1983 | 1/1/1984 | $ - | $ 500,000.00 | $ 500,000.00 | $ 2,000,000.00 | N | PE |
| Insurance Company of North America | XCP144965 | 1/1/1983 | 1/1/1984 | $ 500,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| Insurance Company of North America | XCP 144966 | 1/1/1983 | 1/1/1984 | $ 5,500,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| National Surety Corporation | XLX-148 43 09 | 1/1/1983 | 1/1/1984 | $ 10,500,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | N | PE |
| Mission National Insurance Company | MN 02 79 69 | 1/1/1984 | 1/1/1985 | $ 500,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| Insurance Company of North America | XCP 145365 | 1/1/1984 | 1/1/1985 | $ 5,500,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| National Surety Corporation | XLX1484392 | 1/1/1984 | 1/1/1985 | $ 10,500,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | N | PE |
| Insurance Company of North America | XCP 145366 | 1/1/1984 | 1/1/1985 | $ 25,500,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | PE |
| Insurance Company of North America | ISL G0 29 31 72 2 | 12/31/1984 | 3/1/1986 | $ - | $ 500,000.00 | $ 500,000.00 | $ 4,000,000.00 | N | PE |
| Mission National Insurance Company | MN 045730 | 1/1/1985 | 1/1/1986 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | N | PE |
| Landmark Insurance Company | FE4002136 | 1/1/1985 | 3/1/1986 | $ 1,500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | N | PE |
| Columbia Casualty Company | RDX 917 64 99 | 1/1/1985 | 3/1/1986 | $ 3,500,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| Insurance Company of North America | XCP 144232 | 1/1/1985 | 3/1/1986 | $ 8,500,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | N | PE |
| Highlands Insurance Company | SR 51238 | 1/1/1985 | 1/1/1986 | $ 18,500,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | Unknown | SE |
| Federal Insurance Company | (86) 7928-83-37 | 1/1/1985 | 3/1/1986 | $ 28,500,000.00 | $ 7,000,000.00 | $ 22,000,000.00 | $ 7,000,000.00 | N | PE |
| International Insurance Company | 522 048501 | 1/1/1985 | 3/1/1986 | $ 28,500,000.00 | $ 5,000,000.00 | $ 22,000,000.00 | $ 5,000,000.00 | N | PE |
| Royal Indemnity Company | ED 103126 | 1/1/1985 | 3/1/1986 | $ 28,500,000.00 | $ 10,000,000.00 | $ 22,000,000.00 | $ 10,000,000.00 | N | PE |
| Insurance Company of North America | ISG GO 293149-7 | 1/1/1986 | 3/1/1986 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | None | N | PE |
| Highlands Insurance Company | SR 51497 | 1/1/1986 | 3/1/1986 | $ 18,500,000.00 | $ 5,000,000.00 | $ 10,000,000.00 | $ 5,000,000.00 | N | PE |
| Unknown | Unknown | 1/1/1986 | 3/1/1986 | $ 18,500,000.00 | $ 5,000,000.00 | $ 10,000,000.00 | $ 5,000,000.00 | Unknown | SE |
| Insurance Company of North America | ISL G0 293184-9 | 3/1/1986 | 3/1/1987 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | TBD[4] | N | PE |
| Insurance Company of North America | ISL G0 293184-9 | 3/1/1986 | 3/1/1987 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | N | PE |
| U.S. Fire Insurance Company | 523 425440 7 | 3/1/1986 | 3/1/1987 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | N | PE |
| Utica Mutual Ins. Company | 10272 | 3/1/1986 | 3/1/1987 | $ 4,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Y | PE |
| National Union Fire Insurance Company of Pittsburgh, PA | 9607508 | 3/1/1986 | 3/1/1987 | $ 5,000,000.00 | $ 6,000,000.00 | $ 6,000,000.00 | $ 6,000,000.00 | Y | PE |
| Pacific Employers Ins. Company | XCC 001154 | 4/1/1986 | 3/1/1987 | $ 11,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | N | PE |
| Harbor Insurance Company | HI 218373 | 5/20/1986 | 3/1/1987 | $ 13,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Y | PE |
| St. Paul Surplus Lines Insurance Company | LCO 55 17312 | 5/28/1986 | 3/1/1987 | $ 15,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | N | PE |
| Chubb Custom Insurance Company | 7931-00-02 | 6/3/1986 | 3/1/1987 | $ 17,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Y | PE |
| National Union Fire Insurance Company of Pittsburgh, PA | 9601862 | 6/3/1986 | 3/1/1987 | $ 18,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Y | PE |
| Insurance Company of North America | ISL G0 997957 8 | 3/1/1987 | 3/1/1988 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | TBD[4] | N | PE |
| Insurance Company of North America | ISG GO 81 65 36-1 | 3/1/1987 | 3/1/1988 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | N | PE |
| U.S. Fire Insurance Company | 522 065060 1 | 3/1/1987 | 3/1/1988 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | N | PE |
| St. Paul Surplus Lines Insurance Company | LCO 55 18254 | 3/1/1987 | 3/1/1988 | $ 4,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | Y | PE |
| National Union Fire Insurance Company of Pittsburgh, PA | 9601888 | 3/1/1987 | 3/1/1988 | $ 9,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | Y | PE |
| Lexington Insurance Company | 5529760 | 3/1/1987 | 3/1/1988 | $ 19,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | Y | PE |

BSA Insurance Policies

| Carrier | Policy Number | Start Date | End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE)[1] |
|---|---|---|---|---|---|---|---|---|---|
| Insurance Company of North America | XCP-GO-816538-5 | 3/1/1987 | 3/1/1988 | $ 24,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Y | PE |
| Insurance Company of North America | HDO-G1-136741-0 | 3/1/1988 | 3/1/1990 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | TBD² | N | PE |
| Insurance Company of North America | CAO G1 135164-5 | 3/1/1988 | 3/1/1989 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | N | PE |
| U.S. Fire Insurance Company | 531-200-352-6 | 3/1/1988 | 3/1/1989 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | N | PE |
| St. Paul Surplus Lines Insurance Company | LCO 55 19006 | 3/1/1988 | 3/1/1989 | $ 4,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | Y | PE |
| Planet Ins. Company | NV 1253834 | 3/1/1988 | 3/1/1989 | $ 9,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | Y | PE |
| Lexington Insurance Company | 556-6184 | 3/1/1988 | 3/1/1989 | $ 19,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | Y | PE |
| Insurance Company of North America | XCPG1-135165-7 | 3/1/1988 | 3/1/1989 | $ 29,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | Y | PE |
| First State Insurance Company | EU 006921 | 3/1/1988 | 3/1/1989 | $ 34,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | None | Y | PE |
| Federal Insurance Company | (89) 7907-8617 | 3/1/1988 | 3/1/1989 | $ 39,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | Unknown | SE |
| Insurance Company of North America | CAO G1 135164-5 | 3/1/1989 | 3/1/1990 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | N | PE |
| U.S. Fire Insurance Company | 531-201-602-7 | 3/1/1989 | 3/1/1990 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | N | PE |
| National Union Fire Insurance Company of Pittsburgh, PA | 960-75-95 | 3/1/1989 | 3/1/1990 | $ 4,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| St. Paul Surplus Lines Insurance Company | LCO5519547 | 3/1/1989 | 3/1/1990 | $ 9,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| Royal Indemnity Company | RHA000409 | 3/1/1989 | 3/1/1990 | $ 14,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| Lexington Insurance Company | 556-7563 | 3/1/1989 | 3/1/1990 | $ 19,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | N | PE |
| American Zurich Insurance Company | CEO 6371780-00 | 3/1/1989 | 3/1/1990 | $ 29,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| Planet Ins. Company | NUA 149419100 | 3/1/1989 | 3/1/1990 | $ 34,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| Federal Insurance Company | (90)7907 86 17 | 3/1/1989 | 3/1/1990 | $ 39,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | N | PE |
| Insurance Company of North America | HDO-G1-075409-4 | 3/1/1990 | 3/1/1991 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | TBD² | N | PE |
| Insurance Company of North America | CAO G1 075410-0 | 3/1/1990 | 3/1/1991 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | N | PE |
| International Insurance Company | 531-202912-2 | 3/1/1990 | 3/1/1991 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | N | SE |
| General Star Indemnity Company | NEX036306 | 3/1/1990 | 3/1/1991 | $ 4,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| Industrial Insurance Company of Hawaii | JE 910 7188 | 3/1/1990 | 3/1/1991 | $ 9,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| Royal Indemnity Company | RHA4001621 | 3/1/1990 | 3/1/1991 | $ 14,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| Lexington Insurance Company | 556-9527 | 3/1/1990 | 3/1/1991 | $ 19,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | N | PE |
| Insurance Company of the State of Pennsylvania (The) | 4290-2158 | 3/1/1990 | 3/1/1991 | $ 29,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| Planet Ins. Company | NUA 149419101 | 3/1/1990 | 3/1/1991 | $ 34,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| Federal Insurance Company | (91)7907 86 17 | 3/1/1990 | 3/1/1991 | $ 39,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | N | PE |
| Niagara Fire Insurance Company | ERX-000 387 | 10/19/1990 | 3/1/1991 | $ 51,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | PE |
| Federal Insurance Company | (91)7929-52-34 | 10/19/1990 | 3/1/1991 | $ 76,000,000.00 | $ 10,000,000.00 | $ 25,000,000.00 | $ 10,000,000.00 | N | PE |
| Gulf Insurance Company | GFE-536 22 31 | 10/19/1990 | 3/1/1991 | $ 76,000,000.00 | $ 15,000,000.00 | $ 25,000,000.00 | $ 15,000,000.00 | N | PE |
| National Surety Corporation | XXK-211 24 33 | 10/19/1990 | 3/1/1991 | $ 76,000,000.00 | $ 15,000,000.00 | $ 25,000,000.00 | $ 15,000,000.00 | N | PE |
| Insurance Company of North America | HDO G1 07 54 47-1 | 3/1/1991 | 3/1/1992 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | TBD² | N | PE |
| Insurance Company of North America | CAO G1 075448-3 | 3/1/1991 | 3/1/1992 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | N | PE |
| International Insurance Company | 531-204182-1 | 3/1/1991 | 3/1/1992 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | N | PE |
| Industrial Indemnity | JE9108935 | 3/1/1991 | 3/1/1992 | $ 4,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | N | PE |
| Lexington Insurance Company | 8653405 | 3/1/1991 | 3/1/1992 | $ 14,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | N | PE |
| Niagara Fire Insurance Company | HXU 001040 | 3/1/1991 | 3/1/1992 | $ 24,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | PE |
| Planet Ins. Company | NUA 149419102 | 3/1/1991 | 3/1/1992 | $ 49,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | N | PE |
| Federal Insurance Company | (92) 7907 86 17 | 3/1/1991 | 3/1/1992 | $ 61,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | PE |
| Gulf Insurance Company | GFE 536 23 96 | 3/1/1991 | 3/1/1992 | $ 86,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | N | PE |
| National Surety Corporation | XXK-217 83 02 | 3/1/1991 | 3/1/1992 | $ 86,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | N | PE |
| Insurance Company of North America | HDO G1 549654-A | 3/1/1992 | 3/1/1993 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | TBD² | N | PE |
| Insurance Company of North America | CAO-G1-549655-1 | 3/1/1992 | 3/1/1993 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | N | PE |
| International Insurance Company | 531-205301-7 | 3/1/1992 | 3/1/1993 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | N | PE |
| General Star Indemnity Company | IXG-307138 | 3/1/1992 | 3/1/1993 | $ 4,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | N | PE |
| Lexington Insurance Company | 8654653 | 3/1/1992 | 3/1/1993 | $ 14,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | N | PE |
| Niagara Fire Insurance Company | HXU-001209 | 3/1/1992 | 3/1/1993 | $ 24,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | PE |
| California Union Insurance Company | ZCX 02 00 25 | 3/1/1992 | 3/1/1993 | $ 49,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | N | PE |
| Federal Insurance Company | (93) 7907-86-17 | 3/1/1992 | 3/1/1993 | $ 61,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | PE |
| Gulf Insurance Company | GFE-5450026 | 3/1/1992 | 3/1/1993 | $ 86,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | N | PE |
| National Surety Corporation | XXK-217 50 18 | 3/1/1992 | 3/1/1993 | $ 86,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | N | PE |
| Insurance Company of North America | HDO G1 549727-0 | 3/1/1993 | 3/1/1994 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | TBD² | N | PE |
| Insurance Company of North America | CAO-G1-5497701 | 3/1/1993 | 3/1/1994 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | N | PE |
| St. Paul Surplus Lines Insurance Company | LCO 55 2117 | 3/1/1993 | 3/1/1994 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | N | PE |
| General Star Indemnity Company | IXG-307138A | 3/1/1993 | 3/1/1994 | $ 4,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | N | PE |
| Lexington Insurance Company | 866-7104 | 3/1/1993 | 3/1/1994 | $ 14,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | N | PE |
| Niagara Fire Insurance Company | HXU 001262 | 3/1/1993 | 3/1/1994 | $ 24,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | PE |
| Agricultural Insurance Company | EXC-794-74-14-00 | 3/1/1993 | 3/1/1994 | $ 49,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | N | PE |
| Federal Insurance Company | (94) 7907-86-17 | 3/1/1993 | 3/1/1994 | $ 61,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | PE |
| National Surety Corporation | XXK-000-1462-6451 | 3/1/1993 | 3/1/1994 | $ 86,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | N | PE |

BSA Insurance Policies

| Carrier | Policy Number | Start Date | End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE)[1] |
|---|---|---|---|---|---|---|---|---|---|
| Insurance Company of North America | HDO G1 549769-5 | 3/1/1994 | 3/1/1995 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | TBD[4] | N | PE |
| Insurance Company of North America | CAO G1 549770-1 | 3/1/1994 | 3/1/1995 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | N | PE |
| St. Paul Surplus Lines Insurance Company | LCO 55 21644 | 3/1/1994 | 3/1/1996 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | N | PE |
| General Star Indemnity Company | IXG-307138B | 3/1/1994 | 3/1/1995 | $ 4,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | N | PE |
| St. Paul Surplus Lines Insurance Company | LCO 55 21645 | 3/1/1994 | 3/1/1995 | $ 19,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| Niagara Fire Insurance Company | HXU 001319 | 3/1/1994 | 3/1/1995 | $ 24,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | PE |
| Agricultural Insurance Company | EXC-7636343 | 3/1/1994 | 3/1/1995 | $ 49,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | N | PE |
| Texas Pacific Indemnity Company | (95) 7907-86-17 | 3/1/1994 | 3/1/1995 | $ 61,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | PE |
| National Surety Corporation | XXK0006560605 | 3/1/1994 | 3/1/1995 | $ 86,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | N | PE |
| Indemnity Insurance Company of North America | HDO G1 54 98 13 4 | 3/1/1995 | 3/1/1996 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | TBD[4] | N | PE |
| Indemnity Insurance Company of North America | CAO G1 549814 6 | 3/1/1995 | 3/1/1996 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | N | PE |
| General Star Indemnity Company | IXG-307138C | 3/1/1995 | 3/1/1996 | $ 4,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | N | PE |
| St. Paul Surplus Lines Insurance Company | LCO 55 23054 | 3/1/1995 | 3/1/1996 | $ 19,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| Niagara Fire Insurance Company | HXU 001363 | 3/1/1995 | 3/1/1996 | $ 24,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | PE |
| Agricultural Insurance Company | EXC 878-39-32-00 | 3/1/1995 | 3/1/1996 | $ 49,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | N | PE |
| Texas Pacific Indemnity Company | (96) 7907-86-17 | 3/1/1995 | 3/1/1996 | $ 61,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | PE |
| National Surety Corporation | XXK-000-9534-9775 | 3/1/1995 | 3/1/1996 | $ 86,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | N | PE |
| Liberty Mutual Insurance Company | TB1-191-409751-126 | 3/1/1996 | 3/1/1997 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | TBD[4] | N | PE |
| Liberty Mutual Insurance Company | TH1-191-409751-116 | 3/1/1996 | 3/1/1997 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | N | PE |
| St. Paul Surplus Lines Insurance Company | LCO 55 24186 | 3/1/1996 | 3/1/1997 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | N | PE |
| American Zurich Insurance Company | AUO-3657270-00 | 3/1/1996 | 3/1/1997 | $ 4,000,000.00 | $ 10,000,000.00 | $ 15,000,000.00 | $ 10,000,000.00 | N | PE |
| National Surety Corporation | CSR-283-95-07 | 3/1/1996 | 3/1/1997 | $ 4,000,000.00 | $ 5,000,000.00 | $ 15,000,000.00 | $ 5,000,000.00 | N | PE |
| St. Paul Surplus Lines Insurance Company | LCO 55 24187 | 3/1/1996 | 3/1/1997 | $ 19,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| Continental Insurance Company | 157334179 | 3/1/1996 | 3/1/1997 | $ 24,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | PE |
| Agricultural Insurance Company | EXC-878-0969 | 3/1/1996 | 3/1/1997 | $ 49,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | N | PE |
| Texas Pacific Indemnity Company | (97) 7907-86-17 RMG | 3/1/1996 | 3/1/1997 | $ 61,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | PE |
| Texas Pacific Indemnity Company | (97) 7907-86-17 CAS | 3/1/1996 | 3/1/1997 | $ 61,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | PE |
| National Surety Corporation | XXK-000-9551-6738 | 3/1/1996 | 3/1/1997 | $ 86,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | N | PE |
| American Excess Insurance Association | HR000105096 | 3/1/1996 | 3/1/1997 | $ 101,000,000.00 | $ 50,000,000.00 | $ 50,000,000.00 | $ 50,000,000.00 | N | PE |
| Liberty Mutual Insurance Company | TB1-191-409751-127 | 3/1/1997 | 3/1/1998 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | TBD[4] | N | PE |
| Liberty Mutual Insurance Company | TH1-191-409751-117 | 3/1/1997 | 3/1/1998 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | N | PE |
| St. Paul Surplus Lines Insurance Company | LCO 55 24948 | 3/1/1997 | 3/1/1998 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | N | PE |
| American Zurich Insurance Company | AUO 3657270-01 | 3/1/1997 | 3/1/1998 | $ 4,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | N | PE |
| Texas Pacific Indemnity Company | (98) 7907-86-17 CAS | 3/1/1997 | 3/1/1998 | $ 19,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | PE |
| National Union Fire Insurance Company of Pittsburgh, PA | 310 27 29 | 3/1/1997 | 3/1/1998 | $ 44,000,000.00 | $ 50,000,000.00 | $ 50,000,000.00 | $ 50,000,000.00 | N | PE |
| XL Insurance (Bermuda) Limited | XLUMB-02391 | 3/1/1997 | 3/1/1998 | $ 94,000,000.00 | $ 50,000,000.00 | $ 50,000,000.00 | $ 50,000,000.00 | N | PE |
| Liberty Mutual Insurance Company | TB1-191-409751-128 | 3/1/1998 | 3/1/1999 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | TBD[4] | N | PE |
| Liberty Mutual Insurance Company | TH1-191-409751-118 | 3/1/1998 | 3/1/1999 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | N | PE |
| St. Paul Surplus Lines Insurance Company | LCO 55 25809 | 3/1/1998 | 3/1/2000 | $ 2,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| American Zurich Insurance Company | EUO 3657270-02 | 3/1/1998 | 3/1/1999 | $ 7,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | N | PE |
| Texas Pacific Indemnity Company | (99) 7907-86-17 | 3/1/1998 | 3/1/1999 | $ 19,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | PE |
| National Union Fire Insurance Company of Pittsburgh, PA | BE 3463902 | 3/1/1998 | 3/1/1999 | $ 44,000,000.00 | $ 50,000,000.00 | $ 50,000,000.00 | $ 50,000,000.00 | N | PE |
| Gulf Insurance Company | GA 697623 | 3/1/1998 | 3/1/1999 | $ 94,000,000.00 | $ 50,000,000.00 | $ 50,000,000.00 | $ 50,000,000.00 | N | PE |
| Liberty Mutual Insurance Company | TB1-191-409751-129 | 3/1/1999 | 3/1/2001 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | TBD[4] | N | PE |
| Liberty Mutual Insurance Company | TH1-191-409751-119 | 3/1/1999 | 3/1/2001 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | N | PE |
| American Zurich Insurance Company | EUO 3657270-03 | 3/1/1999 | 3/1/2000 | $ 7,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | N | PE |
| Texas Pacific Indemnity Company | 7907-86-17 | 3/1/1999 | 3/1/2000 | $ 19,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | PE |
| National Union Fire Insurance Company of Pittsburgh, PA | BE 3463968 | 3/1/1999 | 3/1/2000 | $ 44,000,000.00 | $ 50,000,000.00 | $ 50,000,000.00 | $ 50,000,000.00 | N | PE |
| Gulf Insurance Company | GA0283547 | 3/1/1999 | 3/1/2000 | $ 94,000,000.00 | $ 50,000,000.00 | $ 50,000,000.00 | $ 50,000,000.00 | N | PE |
| Agricultural Excess & Surplus Insurance Company | ELD3211225 | 3/1/2000 | 3/1/2001 | $ 2,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| American Zurich Insurance Company | EUO 3657270-03 | 3/1/2000 | 3/1/2001 | $ 7,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | N | PE |
| Texas Pacific Indemnity Company | 7907-86-17 | 3/1/2000 | 3/1/2001 | $ 19,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | PE |
| National Union Fire Insurance Company of Pittsburgh, PA | BE 3463968 | 3/1/2000 | 3/1/2001 | $ 44,000,000.00 | $ 50,000,000.00 | $ 50,000,000.00 | $ 50,000,000.00 | N | PE |
| Gulf Insurance Company | GA0483924 | 3/1/2000 | 3/1/2001 | $ 94,000,000.00 | $ 50,000,000.00 | $ 50,000,000.00 | $ 50,000,000.00 | N | PE |
| Liberty Mutual Insurance Company | TB1-191-409751-121 | 3/1/2001 | 3/1/2002 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | TBD[4] | N | PE |
| Liberty Mutual Insurance Company | TH1-191-409751-111 | 3/1/2001 | 3/1/2002 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | N | PE |
| Agricultural Excess & Surplus Insurance Company | ELD3211225 | 3/1/2001 | 3/1/2002 | $ 2,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| American Guarantee and Liability Insurance Company | AEC 3657270-04 | 3/1/2001 | 3/1/2002 | $ 7,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | N | PE |
| St. Paul Surplus Lines Insurance Company | QY05501051 | 3/1/2001 | 3/1/2002 | $ 19,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | N | PE |
| Federal Insurance Company | 7907-86-17 | 3/1/2001 | 3/1/2002 | $ 34,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | N | PE |
| Interstate Fire & Casualty Company | XUO-1102139 | 3/1/2001 | 3/1/2002 | $ 44,000,000.00 | $ 10,000,000.00 | $ 30,000,000.00 | $ 10,000,000.00 | N | PE |
| Westchester Fire Insurance Company | HXS-648016 | 3/1/2001 | 3/1/2002 | $ 44,000,000.00 | $ 20,000,000.00 | $ 30,000,000.00 | $ 20,000,000.00 | N | PE |

BSA Insurance Policies

| Carrier | Policy Number | Start Date | End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE)[1] |
|---|---|---|---|---|---|---|---|---|---|
| Lumbermens Mutual Casualty Company | 9SR131379-00 | 3/1/2001 | 3/1/2002 | $ 74,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | PE |
| American Guarantee and Liability Insurance Company | AEC 9278457 00 | 3/1/2001 | 3/1/2002 | $ 99,000,000.00 | $ 20,000,000.00 | $ 20,000,000.00 | $ 20,000,000.00 | N | PE |
| Gulf Insurance Company | GA0720986 | 3/1/2001 | 3/1/2002 | $ 119,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | PE |
| Liberty Mutual Insurance Company | TB1-191-409751-122 | 3/1/2002 | 3/1/2003 | $          - | $ 1,000,000.00 | $ 1,000,000.00 | TBD[4] | N | PE |
| Liberty Mutual Insurance Company | TH1-191-409751-112 | 3/1/2002 | 3/1/2003 | $ 1,000,000.00 | $ 3,000,000.00 | $ 3,000,000.00 | $ 3,000,000.00 | N | PE |
| Agricultural Excess & Surplus Insurance Company | ELD3211225 | 3/1/2002 | 3/1/2003 | $ 4,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| American Guarantee and Liability Insurance Company | AEC 3657270 05 | 3/1/2002 | 3/1/2003 | $ 9,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | $ 12,000,000.00 | N | PE |
| Insurance Company of the State of Pennsylvania (The) | 4602-2491 | 3/1/2002 | 3/1/2003 | $ 21,000,000.00 | $ 5,000,000.00 | $ 13,000,000.00 | $ 5,000,000.00 | N | PE |
| Westchester Fire Insurance Company | MES-676215 | 3/1/2002 | 3/1/2003 | $ 21,000,000.00 | $ 8,000,000.00 | $ 13,000,000.00 | $ 8,000,000.00 | N | PE |
| Federal Insurance Company | 7907-86-17 DAL | 3/1/2002 | 3/1/2003 | $ 34,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | N | PE |
| Allied World Assurance Company, Ltd | C000112 | 3/1/2002 | 3/1/2003 | $ 44,000,000.00 | $ 10,000,000.00 | $ 30,000,000.00 | $ 10,000,000.00 | N | PE |
| Interstate Fire & Casualty Company | XUO1102274 | 3/1/2002 | 3/1/2003 | $ 44,000,000.00 | $ 10,000,000.00 | $ 30,000,000.00 | $ 10,000,000.00 | N | PE |
| Westchester Fire Insurance Company | HXS-648125 | 3/1/2002 | 3/1/2003 | $ 44,000,000.00 | $ 10,000,000.00 | $ 30,000,000.00 | $ 10,000,000.00 | N | PE |
| Lumbermens Mutual Casualty Company | 9SX 131379-01 | 3/1/2002 | 3/1/2003 | $ 74,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | PE |
| American Guarantee and Liability Insurance Company | AEC 9278457 01 | 3/1/2002 | 3/1/2003 | $ 99,000,000.00 | $ 20,000,000.00 | $ 45,000,000.00 | $ 20,000,000.00 | N | AEC |
| Gulf Insurance Company | GA2857739 | 3/1/2002 | 3/1/2003 | $ 99,000,000.00 | $ 25,000,000.00 | $ 45,000,000.00 | $ 25,000,000.00 | N | PE |
| Liberty Mutual Insurance Company | TB1-191-409751-123 | 3/1/2003 | 3/1/2004 | $          - | $ 1,000,000.00 | $ 1,000,000.00 | TBD[4] | N | PE |
| Liberty Mutual Insurance Company | TH1-191-409751-113 | 3/1/2003 | 3/1/2004 | $ 1,000,000.00 | $ 3,000,000.00 | $ 3,000,000.00 | $ 3,000,000.00 | N | PE |
| Agricultural Excess & Surplus Insurance Company | ELD3211225 | 3/1/2003 | 3/1/2004 | $ 4,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| Insurance Company of the State of Pennsylvania (The) | 4603-3681 | 3/1/2003 | 3/1/2004 | $ 9,000,000.00 | $ 5,000,000.00 | $ 10,000,000.00 | $ 5,000,000.00 | N | PE |
| Lexington Insurance Company | 3583189 | 3/1/2003 | 3/1/2004 | $ 9,000,000.00 | $ 5,000,000.00 | $ 10,000,000.00 | $ 5,000,000.00 | N | PE |
| American Guarantee and Liability Insurance Company | AEC 3657270 06 | 3/1/2003 | 3/1/2004 | $ 19,000,000.00 | $ 20,000,000.00 | $ 20,000,000.00 | $ 20,000,000.00 | N | PE |
| Clarendon America Insurance Company | XLX 39306224 | 3/1/2003 | 3/1/2004 | $ 39,000,000.00 | $ 5,000,000.00 | $ 30,000,000.00 | $ 5,000,000.00 | N | PE |
| Insurance Company of the State of Pennsylvania (The) | 4603-3682 | 3/1/2003 | 3/1/2004 | $ 39,000,000.00 | $ 5,000,000.00 | $ 30,000,000.00 | $ 5,000,000.00 | N | PE |
| Lexington Insurance Company | 3583190 | 3/1/2003 | 3/1/2004 | $ 39,000,000.00 | $ 5,000,000.00 | $ 30,000,000.00 | $ 5,000,000.00 | N | PE |
| St. Paul Surplus Lines Insurance Company | QY05501227 | 3/1/2003 | 3/1/2004 | $ 39,000,000.00 | $ 12,500,000.00 | $ 30,000,000.00 | $ 12,500,000.00 | N | PE |
| Westchester Fire Insurance Company | HXS-744263 | 3/1/2003 | 3/1/2004 | $ 39,000,000.00 | $ 2,500,000.00 | $ 30,000,000.00 | $ 2,500,000.00 | N | PE |
| Interstate Fire & Casualty Company | XSO 1014504 | 3/1/2003 | 3/1/2004 | $ 69,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | N | PE |
| American Guarantee and Liability Insurance Company | AEC 9278457 02 | 3/1/2003 | 3/1/2004 | $ 79,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | AEC |
| Gulf Insurance Company | GA1327247 | 3/1/2003 | 3/1/2004 | $ 104,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | Y | PE |
| Liberty Mutual Insurance Company | TB1-191-409751-124 | 3/1/2004 | 3/1/2005 | $          - | $ 1,000,000.00 | $ 1,000,000.00 | TBD[4] | N | PE |
| Liberty Mutual Insurance Company | TH1-191-409751-114 | 3/1/2004 | 3/1/2005 | $ 1,000,000.00 | $ 3,000,000.00 | $ 3,000,000.00 | $ 3,000,000.00 | N | PE |
| Agricultural Excess & Surplus Insurance Company | ELD3211225 | 3/1/2004 | 3/1/2005 | $ 4,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| Clarendon America Insurance Company | XLX 00310351 | 3/1/2004 | 3/1/2005 | $ 9,000,000.00 | $ 5,000,000.00 | $ 10,000,000.00 | $ 5,000,000.00 | N | PE |
| Insurance Company of the State of Pennsylvania (The) | 4604-4698 | 3/1/2004 | 3/1/2005 | $ 9,000,000.00 | $ 5,000,000.00 | $ 10,000,000.00 | $ 5,000,000.00 | N | PE |
| American Guarantee and Liability Insurance Company | AEC 3657270 07 | 3/1/2004 | 3/1/2005 | $ 19,000,000.00 | $ 20,000,000.00 | $ 20,000,000.00 | $ 20,000,000.00 | N | PE |
| Lexington Insurance Company | 3583264 | 3/1/2004 | 3/1/2005 | $ 39,000,000.00 | $ 11,000,000.00 | $ 30,000,000.00 | $ 11,000,000.00 | Y | PE |
| St. Paul Surplus Lines Insurance Company | QY06815029 | 3/1/2004 | 3/1/2005 | $ 39,000,000.00 | $ 16,500,000.00 | $ 30,000,000.00 | $ 16,500,000.00 | N | PE |
| Westchester Fire Insurance Company | HXW-776138 | 3/1/2004 | 3/1/2005 | $ 39,000,000.00 | $ 2,500,000.00 | $ 30,000,000.00 | $ 2,500,000.00 | N | PE |
| Lexington Insurance Company | 3583265 | 3/1/2004 | 3/1/2005 | $ 69,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | N | PE |
| American Guarantee and Liability Insurance Company | AEC 9278457 03 | 3/1/2004 | 3/1/2005 | $ 79,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | PE |
| XL Insurance (Dublin) Ltd. | XLEOCC-0488-04 | 3/1/2004 | 3/1/2005 | $ 104,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | N | PE |
| Liberty Mutual Insurance Company | TB1-191-409751-125 | 3/1/2005 | 3/1/2006 | $          - | $ 1,000,000.00 | $ 1,000,000.00 | TBD[4] | N | PE |
| Liberty Mutual Insurance Company | TH1-191-409751-115 | 3/1/2005 | 3/1/2006 | $ 1,000,000.00 | $ 3,000,000.00 | $ 3,000,000.00 | $ 3,000,000.00 | N | PE |
| Agricultural Excess & Surplus Insurance Company | ELD3211225 | 3/1/2005 | 3/1/2006 | $ 4,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| Clarendon America Insurance Company | XLX00311014 | 3/1/2005 | 3/1/2006 | $ 9,000,000.00 | $ 5,000,000.00 | $ 10,000,000.00 | $ 5,000,000.00 | N | PE |
| Insurance Company of the State of Pennsylvania (The) | 4605-1591 | 3/1/2005 | 3/1/2006 | $ 9,000,000.00 | $ 5,000,000.00 | $ 10,000,000.00 | $ 5,000,000.00 | N | PE |
| American Guarantee and Liability Insurance Company | AEC 3657270 08 | 3/1/2005 | 3/1/2006 | $ 19,000,000.00 | $ 20,000,000.00 | $ 20,000,000.00 | $ 20,000,000.00 | N | PE |
| Allied World Assurance Company, Ltd | AW2154834 | 3/1/2005 | 3/1/2006 | $ 39,000,000.00 | $ 5,000,000.00 | $ 30,000,000.00 | $ 5,000,000.00 | N | PE |
| Axis Speciality Insurance Company | AAU720252/01/2005 | 3/1/2005 | 3/1/2006 | $ 39,000,000.00 | $ 6,000,000.00 | $ 30,000,000.00 | $ 6,000,000.00 | N | PE |
| Lexington Insurance Company | 8851123 | 3/1/2005 | 3/1/2006 | $ 39,000,000.00 | $ 12,500,000.00 | $ 30,000,000.00 | $ 12,500,000.00 | Y | PE |
| St. Paul Surplus Lines Insurance Company | QY06825006 | 3/1/2005 | 3/1/2006 | $ 39,000,000.00 | $ 6,500,000.00 | $ 30,000,000.00 | $ 6,500,000.00 | N | PE |
| Lexington Insurance Company | 8851125 | 3/1/2005 | 3/1/2006 | $ 69,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | Y | PE |
| XL Europe Limited | IE00012302LI05A | 3/1/2005 | 3/1/2006 | $ 79,000,000.00 | $ 50,000,000.00 | $ 50,000,000.00 | $ 50,000,000.00 | N | PE |
| Liberty Mutual Insurance Company | TB1-191-409751-126 | 3/1/2006 | 3/1/2007 | $          - | $ 1,000,000.00 | $ 1,000,000.00 | TBD[4] | N | PE |
| Liberty Mutual Insurance Company | TH1-191-409751-116 | 3/1/2006 | 3/1/2007 | $ 1,000,000.00 | $ 4,000,000.00 | $ 4,000,000.00 | $ 4,000,000.00 | N | PE |
| Traders and Pacific Insurance Company | ELD 100000951 | 3/1/2006 | 3/1/2007 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| Insurance Company of the State of Pennsylvania (The) | 4606-2795 | 3/1/2006 | 3/1/2007 | $ 10,000,000.00 | $ 5,000,000.00 | $ 10,000,000.00 | $ 5,000,000.00 | N | PE |
| Lexington Insurance Company | 6679155 | 3/1/2006 | 3/1/2007 | $ 10,000,000.00 | $ 5,000,000.00 | $ 10,000,000.00 | $ 5,000,000.00 | Y | PE |
| Steadfast Insurance Company | AEC 3657270 09 | 3/1/2006 | 3/1/2007 | $ 20,000,000.00 | $ 20,000,000.00 | $ 20,000,000.00 | $ 20,000,000.00 | N | PE |
| Allied World Assurance Company, Ltd | AW1907934 | 3/1/2006 | 3/1/2007 | $ 40,000,000.00 | $ 5,000,000.00 | $ 30,000,000.00 | $ 5,000,000.00 | N | PE |
| Axis Insurance Company | EAU720252/01/2006 | 3/1/2006 | 3/1/2007 | $ 40,000,000.00 | $ 7,500,000.00 | $ 30,000,000.00 | $ 7,500,000.00 | N | PE |

**BSA Insurance Policies**

| Carrier | Policy Number | Start Date | End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE)[1] |
|---|---|---|---|---|---|---|---|---|---|
| Lexington Insurance Company | 6679156 | 3/1/2006 | 3/1/2007 | $ 40,000,000.00 | $ 12,500,000.00 | $ 30,000,000.00 | $ 12,500,000.00 | Y | PE |
| St. Paul Surplus Lines Insurance Company | QY01225190 | 3/1/2006 | 3/1/2007 | $ 40,000,000.00 | $ 5,000,000.00 | $ 30,000,000.00 | $ 5,000,000.00 | N | PE |
| Endurance American Specialty Insurance Company | ELD 100000952 | 3/1/2006 | 3/1/2007 | $ 70,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | N | PE |
| XL Europe Limited | IE00013105L106A | 3/1/2006 | 3/1/2007 | $ 80,000,000.00 | $ 50,000,000.00 | $ 50,000,000.00 | $ 50,000,000.00 | N | PE |
| Liberty Mutual Insurance Company | TB1-191-409751-127 | 3/1/2007 | 3/1/2008 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | TBD[4] | N | PE |
| Old Republic Insurance Company | MWZX 26633 | 3/1/2007 | 3/1/2008 | $ 1,000,000.00 | $ 4,000,000.00 | $ 4,000,000.00 | $ 4,000,000.00 | N | PE |
| Endurance American Specialty Insurance Company | ELD10000334501 | 3/1/2007 | 3/1/2008 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | N | PE |
| Insurance Company of the State of Pennsylvania (The) | 4890463 | 3/1/2007 | 3/1/2008 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | N | PE |
| Lexington Insurance Company | 51134 | 3/1/2007 | 3/1/2008 | $ 10,000,000.00 | $ 5,000,000.00 | $ 10,000,000.00 | $ 5,000,000.00 | Y | PE |
| Axis Surplus Insurance Company | EAU720252/01/2007 | 3/1/2007 | 3/1/2008 | $ 20,000,000.00 | $ 7,500,000.00 | $ 20,000,000.00 | $ 7,500,000.00 | N | PE |
| Interstate Fire & Casualty Company | HFX 1002516 | 3/1/2007 | 3/1/2008 | $ 20,000,000.00 | $ 12,500,000.00 | $ 20,000,000.00 | $ 12,500,000.00 | N | PE |
| Allied World Assurance Company, Ltd | C006822002 | 3/1/2007 | 3/1/2008 | $ 40,000,000.00 | $ 7,500,000.00 | $ 30,000,000.00 | $ 7,500,000.00 | N | PE |
| Everest National Insurance Company | 71G600050-071 | 3/1/2007 | 3/1/2008 | $ 40,000,000.00 | $ 7,500,000.00 | $ 30,000,000.00 | $ 7,500,000.00 | N | PE |
| Lexington Insurance Company | 501135 | 3/1/2007 | 3/1/2008 | $ 40,000,000.00 | $ 15,000,000.00 | $ 30,000,000.00 | $ 15,000,000.00 | Y | PE |
| Endurance American Specialty Insurance Company | ELD 100003346 01 | 3/1/2007 | 3/1/2008 | $ 70,000,000.00 | $ 20,000,000.00 | $ 20,000,000.00 | $ 20,000,000.00 | N | PE |
| XL Europe Limited | IE00013396L107A | 3/1/2007 | 3/1/2008 | $ 90,000,000.00 | $ 40,000,000.00 | $ 40,000,000.00 | $ 40,000,000.00 | N | PE |
| Old Republic Insurance Company | MWZY 57807 | 3/1/2008 | 3/1/2009 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | None | Unknown | PE |
| Old Republic Insurance Company | MWZX 26642 | 3/1/2008 | 3/1/2009 | $ 1,000,000.00 | $ 9,000,000.00 | $ 9,000,000.00 | $ 9,000,000.00 | Unknown | PE |
| Endurance American Specialty Insurance Company | ELD10000334502 | 3/1/2008 | 3/1/2009 | $ 10,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | Unknown | PE |
| Insurance Company of the State of Pennsylvania (The) | 4890599 | 3/1/2008 | 3/1/2009 | $ 15,000,000.00 | $ 5,000,000.00 | $ 10,000,000.00 | $ 5,000,000.00 | Unknown | PE |
| Lexington Insurance Company | 1172858 | 3/1/2008 | 3/1/2009 | $ 15,000,000.00 | $ 5,000,000.00 | $ 10,000,000.00 | $ 5,000,000.00 | Unknown | PE |
| Axis Insurance Company | EAU720252012008 | 3/1/2008 | 3/1/2009 | $ 25,000,000.00 | $ 7,500,000.00 | $ 20,000,000.00 | $ 7,500,000.00 | Unknown | PE |
| Interstate Fire & Casualty Company | HFX1002550 | 3/1/2008 | 3/1/2009 | $ 25,000,000.00 | $ 12,500,000.00 | $ 20,000,000.00 | $ 12,500,000.00 | Unknown | PE |
| Allied World Assurance Company, Ltd | C009030003 | 3/1/2008 | 3/1/2009 | $ 45,000,000.00 | $ 7,500,000.00 | $ 30,000,000.00 | $ 7,500,000.00 | Unknown | PE |
| Everest National Insurance Company | 71G600050081 | 3/1/2008 | 3/1/2009 | $ 45,000,000.00 | $ 7,500,000.00 | $ 30,000,000.00 | $ 7,500,000.00 | Unknown | PE |
| Lexington Insurance Company | 1172859 | 3/1/2008 | 3/1/2009 | $ 45,000,000.00 | $ 15,000,000.00 | $ 30,000,000.00 | $ 15,000,000.00 | Unknown | PE |
| Endurance American Specialty Insurance Company | ELD10000334602 | 3/1/2008 | 3/1/2009 | $ 75,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Axis Insurance Company | EAU737684012008 | 3/1/2008 | 3/1/2009 | $ 100,000,000.00 | $ 10,000,000.00 | $ 20,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Lexington Insurance Company | 1172861 | 3/1/2008 | 3/1/2009 | $ 100,000,000.00 | $ 10,000,000.00 | $ 20,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Arch Reinsurance Ltd. | UXP0025030 | 3/1/2008 | 3/1/2009 | $ 120,000,000.00 | $ 25,000,000.00 | $ 40,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Interstate Fire & Casualty Company | HFX1002552 | 3/1/2008 | 3/1/2009 | $ 120,000,000.00 | $ 15,000,000.00 | $ 40,000,000.00 | $ 15,000,000.00 | Unknown | PE |
| Ohio Casualty Insurance Company (The) | EC00953709960 | 3/1/2008 | 3/1/2009 | $ 160,000,000.00 | $ 20,000,000.00 | $ 20,000,000.00 | $ 20,000,000.00 | Unknown | PE |
| Old Republic Insurance Company | MWZY 58122 | 3/1/2009 | 3/1/2010 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | None | Unknown | PE |
| Old Republic Insurance Company | MWZX 26652 | 3/1/2009 | 3/1/2010 | $ 1,000,000.00 | $ 9,000,000.00 | $ 9,000,000.00 | $ 9,000,000.00 | Unknown | PE |
| Endurance American Specialty Insurance Company | ELD10000334503 | 3/1/2009 | 3/1/2010 | $ 10,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | Unknown | PE |
| Catlin Underwriting Agencies Limited | XSC942550310 | 3/1/2009 | 3/1/2010 | $ 15,000,000.00 | $ 5,000,000.00 | $ 10,000,000.00 | $ 5,000,000.00 | Unknown | PE |
| Everest National Insurance Company | 71G000200091 | 3/1/2009 | 3/1/2010 | $ 15,000,000.00 | $ 5,000,000.00 | $ 10,000,000.00 | $ 5,000,000.00 | Unknown | PE |
| Axis Insurance Company | EAU720252/01/2009 | 3/1/2009 | 3/1/2010 | $ 25,000,000.00 | $ 7,500,000.00 | $ 20,000,000.00 | $ 7,500,000.00 | Unknown | PE |
| Interstate Fire & Casualty Company | HFX00079995585 | 3/1/2009 | 3/1/2010 | $ 25,000,000.00 | $ 12,500,000.00 | $ 20,000,000.00 | $ 12,500,000.00 | Unknown | SE |
| Allied World Assurance Company, Ltd | C009030/004 | 3/1/2009 | 3/1/2010 | $ 45,000,000.00 | $ 25,000,000.00 | $ 30,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Everest National Insurance Company | 71G6000200-091 | 3/1/2009 | 3/1/2010 | $ 45,000,000.00 | $ 5,000,000.00 | $ 30,000,000.00 | $ 5,000,000.00 | Unknown | PE |
| Endurance American Specialty Insurance Company | ELD10001240600 | 3/1/2009 | 3/1/2010 | $ 75,000,000.00 | $ 35,000,000.00 | $ 35,000,000.00 | $ 35,000,000.00 | Unknown | PE |
| Arch Reinsurance Ltd. | UXP0025030-01 | 3/1/2009 | 3/1/2010 | $ 110,000,000.00 | $ 25,000,000.00 | $ 50,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Axis Insurance Company | EAU737684/01/2009 | 3/1/2009 | 3/1/2010 | $ 110,000,000.00 | $ 10,000,000.00 | $ 50,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Interstate Fire & Casualty Company | HFX00082075581 | 3/1/2009 | 3/1/2010 | $ 110,000,000.00 | $ 15,000,000.00 | $ 50,000,000.00 | $ 15,000,000.00 | Unknown | SE |
| Ohio Casualty Insurance Company (The) | ECO(10)53709*960 | 3/1/2009 | 3/1/2010 | $ 160,000,000.00 | $ 20,000,000.00 | $ 20,000,000.00 | $ 20,000,000.00 | Unknown | PE |
| Old Republic Insurance Company | MWZY 58666 | 3/1/2010 | 3/1/2011 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | None | Unknown | PE |
| Old Republic Insurance Company | MWZX 26667 | 3/1/2010 | 3/1/2011 | $ 1,000,000.00 | $ 9,000,000.00 | $ 9,000,000.00 | $ 9,000,000.00 | Unknown | PE |
| Endurance American Specialty Insurance Company | ELD10000334504 | 3/1/2010 | 3/1/2011 | $ 10,000,000.00 | $ 7,500,000.00 | $ 7,500,000.00 | $ 7,500,000.00 | Unknown | PE |
| Catlin Underwriting Agencies Limited | XSC942550311 | 3/1/2010 | 3/1/2011 | $ 17,500,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Everest National Insurance Company | 71G6000050101 | 3/1/2010 | 3/1/2011 | $ 27,500,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Allied World Assurance Company, Ltd | 0305-3351 | 3/1/2010 | 3/1/2011 | $ 37,500,000.00 | $ 25,000,000.00 | $ 50,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Axis Insurance Company | EAU720252/01/2010 | 3/1/2010 | 3/1/2011 | $ 37,500,000.00 | $ 25,000,000.00 | $ 50,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Endurance American Specialty Insurance Company | ELD1000019337 | 3/1/2010 | 3/1/2011 | $ 87,500,000.00 | $ 42,500,000.00 | $ 42,500,000.00 | $ 42,500,000.00 | Unknown | PE |
| Arch Reinsurance Ltd. | UXP0025030-02 | 3/1/2010 | 3/1/2011 | $ 130,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Ohio Casualty Insurance Company (The) | ECO 11 53 70 9960 | 3/1/2010 | 3/1/2011 | $ 155,000,000.00 | $ 20,000,000.00 | $ 40,000,000.00 | $ 20,000,000.00 | Unknown | PE |
| Westchester Fire Insurance Company | G24114673001 | 3/1/2010 | 3/1/2011 | $ 155,000,000.00 | $ 20,000,000.00 | $ 40,000,000.00 | $ 20,000,000.00 | Unknown | PE |
| Old Republic Insurance Company | MWZY 59097 | 3/1/2011 | 3/1/2012 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | None | Unknown | PE |
| Old Republic Insurance Company | MWZX 26702 | 3/1/2011 | 3/1/2012 | $ 1,000,000.00 | $ 9,000,000.00 | $ 9,000,000.00 | $ 9,000,000.00 | Unknown | PE |
| Endurance American Specialty Insurance Company | ELD10000334505 | 3/1/2011 | 3/1/2012 | $ 10,000,000.00 | $ 7,500,000.00 | $ 7,500,000.00 | $ 7,500,000.00 | Unknown | PE |
| Catlin Underwriting Agencies Limited | XSC-94255-0312 | 3/1/2011 | 3/1/2012 | $ 17,500,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Axis Insurance Company | EAU720252/01/2011 | 3/1/2011 | 3/1/2012 | $ 27,500,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Allied World Assurance Company, Ltd | 0305-3351 | 3/1/2011 | 3/1/2012 | $ 37,500,000.00 | $ 25,000,000.00 | $ 40,000,000.00 | $ 25,000,000.00 | Unknown | PE |

BSA Insurance Policies

| Carrier | Policy Number | Start Date | End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE)[1] |
|---|---|---|---|---|---|---|---|---|---|
| Axis Insurance Company | EAU758049012011 | 3/1/2011 | 3/1/2012 | $ 37,500,000.00 | $ 15,000,000.00 | $ 40,000,000.00 | $ 15,000,000.00 | Unknown | SE |
| Endurance American Specialty Insurance Company | ELD10003026000 | 3/1/2011 | 3/1/2012 | $ 77,500,000.00 | $ 42,500,000.00 | $ 42,500,000.00 | $ 42,500,000.00 | Unknown | PE |
| Arch Reinsurance Ltd. | UXP0042842 | 3/1/2011 | 3/1/2012 | $ 120,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Ohio Casualty Insurance Company (The) | ECO (12) 54 67 21 20 | 3/1/2011 | 3/1/2012 | $ 145,000,000.00 | $ 25,000,000.00 | $ 50,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Westchester Fire Insurance Company | G24114673002 | 3/1/2011 | 3/1/2012 | $ 145,000,000.00 | $ 25,000,000.00 | $ 50,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Liberty Insurance Underwriters, Inc. | EXCDA1205871 | 3/1/2011 | 3/1/2012 | $ 195,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | Unknown | PE |
| Old Republic Insurance Company | MWZY 59555 | 3/1/2012 | 3/1/2013 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | None | Unknown | PE |
| Old Republic Insurance Company | MWZX 26709 | 3/1/2012 | 3/1/2013 | $ 1,000,000.00 | $ 9,000,000.00 | $ 9,000,000.00 | $ 9,000,000.00 | Unknown | PE |
| Endurance American Specialty Insurance Company | ELD10000334S 06 | 3/1/2012 | 3/1/2013 | $ 10,000,000.00 | $ 7,500,000.00 | $ 7,500,000.00 | $ 7,500,000.00 | Unknown | PE |
| Catlin Underwriting Agencies Limited | XSC-94255-0313 | 3/1/2012 | 3/1/2013 | $ 17,500,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Axis Insurance Company | EAU720252/01/2012 | 3/1/2012 | 3/1/2013 | $ 27,500,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Allied World Assurance Company, Ltd | 0305-3351 | 3/1/2012 | 3/1/2013 | $ 37,500,000.00 | $ 25,000,000.00 | $ 40,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Axis Insurance Company | EAU758049/01/2012 | 3/1/2012 | 3/1/2013 | $ 37,500,000.00 | $ 15,000,000.00 | $ 40,000,000.00 | $ 15,000,000.00 | Unknown | PE |
| Alterra Excess & Surplus Insurance Company | MAX3EC30000062 | 3/1/2012 | 3/1/2013 | $ 77,500,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Endurance American Specialty Insurance Company | ELD10003553700 | 3/1/2012 | 3/1/2013 | $ 102,500,000.00 | $ 17,500,000.00 | $ 17,500,000.00 | $ 17,500,000.00 | Unknown | PE |
| Arch Reinsurance Ltd. | UXP0042842-01 | 3/1/2012 | 3/1/2013 | $ 120,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Ohio Casualty Insurance Company (The) | ECO 13 54672120 | 3/1/2012 | 3/1/2013 | $ 145,000,000.00 | $ 25,000,000.00 | $ 50,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Westchester Fire Insurance Company | G24114673003 | 3/1/2012 | 3/1/2013 | $ 145,000,000.00 | $ 25,000,000.00 | $ 50,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Navigators Specialty Insurance Company | CH12EXC7470341C | 3/1/2012 | 3/1/2013 | $ 195,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | Unknown | PE |
| Old Republic Insurance Company | MWZY 59997 | 3/1/2013 | 3/1/2014 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | None | Unknown | PE |
| Old Republic Insurance Company | MWZX 26713 | 3/1/2013 | 3/1/2014 | $ 1,000,000.00 | $ 9,000,000.00 | $ 9,000,000.00 | $ 9,000,000.00 | Unknown | PE |
| Gemini Insurance Company | CEX09600051-00 | 3/1/2013 | 3/1/2014 | $ 10,000,000.00 | $ 7,500,000.00 | $ 7,500,000.00 | $ 7,500,000.00 | Unknown | PE |
| First Specialty Insurance Corporation | IRE 2000295 00 | 3/1/2013 | 3/1/2014 | $ 17,500,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Catlin Underwriting Agencies Limited | XSC-94255-0314 | 3/1/2013 | 3/1/2014 | $ 27,500,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Allied World Assurance Company, Ltd | 0305-3351 | 3/1/2013 | 3/1/2014 | $ 37,500,000.00 | $ 25,000,000.00 | $ 40,000,000.00 | $ 25,000,000.00 | Unknown | SE |
| Gemini Insurance Company | CEX09600052-00 | 3/1/2013 | 3/1/2014 | $ 37,500,000.00 | $ 15,000,000.00 | $ 40,000,000.00 | $ 15,000,000.00 | Unknown | PE |
| Alterra Excess & Surplus Insurance Company | MAX3EC30000192 | 3/1/2013 | 3/1/2014 | $ 77,500,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Gemini Insurance Company | CEX09600166-00 | 3/1/2013 | 3/1/2014 | $ 102,500,000.00 | $ 17,500,000.00 | $ 17,500,000.00 | $ 17,500,000.00 | Unknown | PE |
| Liberty Surplus Insurance Corporation | 1000038829-01 | 3/1/2013 | 3/1/2014 | $ 120,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Ohio Casualty Insurance Company (The) | ECO (14) 54 67 21 20 | 3/1/2013 | 3/1/2014 | $ 145,000,000.00 | $ 25,000,000.00 | $ 50,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Westchester Fire Insurance Company | G24114673004 | 3/1/2013 | 3/1/2014 | $ 145,000,000.00 | $ 25,000,000.00 | $ 50,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Navigators Specialty Insurance Company | CH13EXC747034IC | 3/1/2013 | 3/1/2014 | $ 195,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | $ 15,000,000.00 | Unknown | PE |
| Old Republic Insurance Company | MWZY 301262 | 3/1/2014 | 3/1/2015 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | None | Unknown | PE |
| Old Republic Insurance Company | MWZX 300758 | 3/1/2014 | 3/1/2015 | $ 1,000,000.00 | $ 9,000,000.00 | $ 9,000,000.00 | $ 9,000,000.00 | Unknown | PE |
| Gemini Insurance Company | CEX09600051-01 | 3/1/2014 | 3/1/2015 | $ 10,000,000.00 | $ 7,500,000.00 | $ 7,500,000.00 | $ 7,500,000.00 | Unknown | PE |
| First Specialty Insurance Corporation | IRE 2000295 01 | 3/1/2014 | 3/1/2015 | $ 17,500,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Catlin Underwriting Agencies Limited | XSC-94255-0315 | 3/1/2014 | 3/1/2015 | $ 27,500,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Gemini Insurance Company | CEX09600052-01 | 3/1/2014 | 3/1/2015 | $ 37,500,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Allied World Assurance Company, Ltd | 0305-3351 | 3/1/2014 | 3/1/2018 | $ 47,500,000.00 | $ 25,000,000.00 | $ 40,000,000.00 | $ 25,000,000.00 | Unknown | SE |
| Lexington Insurance Company | 15375964 | 3/1/2014 | 3/1/2017 | $ 47,500,000.00 | $ 15,000,000.00 | $ 40,000,000.00 | $ 15,000,000.00 | Unknown | PE |
| Alterra Excess & Surplus Insurance Company | MAX3EC30000296 | 3/1/2014 | 3/1/2015 | $ 87,500,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Gemini Insurance Company | CEX09600166-01 | 3/1/2014 | 3/1/2015 | $ 112,500,000.00 | $ 32,500,000.00 | $ 32,500,000.00 | $ 32,500,000.00 | Unknown | PE |
| Westchester Fire Insurance Company | G24114673 005 | 3/1/2014 | 3/1/2015 | $ 145,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Endurance American Specialty Insurance Company | EXC10004584700 | 3/1/2014 | 3/1/2015 | $ 170,000,000.00 | $ 20,000,000.00 | $ 40,000,000.00 | $ 20,000,000.00 | Unknown | PE |
| Ohio Casualty Insurance Company (The) | ECO (15) 55 94 28 39 | 3/1/2014 | 3/1/2015 | $ 170,000,000.00 | $ 20,000,000.00 | $ 40,000,000.00 | $ 20,000,000.00 | Unknown | PE |
| Old Republic Insurance Company | MWZY 303431 | 3/1/2015 | 3/1/2016 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | None | Unknown | PE |
| Old Republic Insurance Company | MWZX 303430 | 3/1/2015 | 3/1/2016 | $ 1,000,000.00 | $ 9,000,000.00 | $ 9,000,000.00 | $ 9,000,000.00 | Unknown | PE |
| Gemini Insurance Company | CEX09600051-02 | 3/1/2015 | 3/1/2016 | $ 10,000,000.00 | $ 7,500,000.00 | $ 7,500,000.00 | $ 7,500,000.00 | Unknown | PE |
| First Specialty Insurance Corporation | IRE 2000295 02 | 3/1/2015 | 3/1/2016 | $ 17,500,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Catlin Underwriting Agencies Limited | XSC-94255-0316 | 3/1/2015 | 3/1/2016 | $ 27,500,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Gemini Insurance Company | CEX09600052-02 | 3/1/2015 | 3/1/2016 | $ 37,500,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Alterra Excess & Surplus Insurance Company | MAX3EC30000468 | 3/1/2015 | 3/1/2016 | $ 87,500,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Gemini Insurance Company | CEX09600166-02 | 3/1/2015 | 3/1/2016 | $ 112,500,000.00 | $ 32,500,000.00 | $ 42,500,000.00 | $ 32,500,000.00 | Unknown | PE |
| Lexington Insurance Company | 15375234 | 3/1/2015 | 3/1/2016 | $ 112,500,000.00 | $ 10,000,000.00 | $ 42,500,000.00 | $ 10,000,000.00 | Unknown | PE |
| Endurance American Specialty Insurance Company | EXC10004584701 | 3/1/2015 | 3/1/2016 | $ 155,000,000.00 | $ 25,000,000.00 | $ 55,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Ohio Casualty Insurance Company (The) | ECO (16) 55 94 28 39 | 3/1/2015 | 3/1/2016 | $ 155,000,000.00 | $ 30,000,000.00 | $ 55,000,000.00 | $ 30,000,000.00 | Unknown | PE |
| Old Republic Insurance Company | MWZY 306938 | 3/1/2016 | 3/1/2017 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | None | Unknown | PE |
| Old Republic Insurance Company | MWZX 306937 | 3/1/2016 | 3/1/2017 | $ 1,000,000.00 | $ 9,000,000.00 | $ 9,000,000.00 | $ 9,000,000.00 | Unknown | PE |
| Gemini Insurance Company | CEX09600051-03 | 3/1/2016 | 3/1/2017 | $ 10,000,000.00 | $ 7,500,000.00 | $ 7,500,000.00 | $ 7,500,000.00 | Unknown | PE |
| First Specialty Insurance Corporation | IRE 2000295 03 | 3/1/2016 | 3/1/2017 | $ 17,500,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Aspen | CX0043416 | 3/1/2016 | 3/1/2017 | $ 27,500,000.00 | $ 10,000,000.00 | $ 20,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Gemini Insurance Company | CEX09600052-03 | 3/1/2016 | 3/1/2017 | $ 27,500,000.00 | $ 10,000,000.00 | $ 20,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Aspen | CX0044G16 | 3/1/2016 | 3/1/2017 | $ 87,500,000.00 | $ 10,000,000.00 | $ 25,000,000.00 | $ 10,000,000.00 | Unknown | PE |

BSA Insurance Policies

| Carrier | Policy Number | Start Date | End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE)[1] |
|---|---|---|---|---|---|---|---|---|---|
| Evanston Insurance Company | MKLV40LE106420 | 3/1/2016 | 3/1/2017 | $ 87,500,000.00 | $ 15,000,000.00 | $ 25,000,000.00 | $ 15,000,000.00 | Unknown | PE |
| Gemini Insurance Company | CEX09600166-03 | 3/1/2016 | 3/1/2017 | $ 112,500,000.00 | $ 32,500,000.00 | $ 42,500,000.00 | $ 32,500,000.00 | Unknown | PE |
| Lexington Insurance Company | 15375234 | 3/1/2016 | 3/1/2017 | $ 112,500,000.00 | $ 10,000,000.00 | $ 42,500,000.00 | $ 10,000,000.00 | Unknown | PE |
| Endurance American Specialty Insurance Company | EXC10004584702 | 3/1/2016 | 3/1/2017 | $ 155,000,000.00 | $ 25,000,000.00 | $ 55,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Ohio Casualty Insurance Company (The) | ECO (17) 55 94 28 39 | 3/1/2016 | 3/1/2017 | $ 155,000,000.00 | $ 30,000,000.00 | $ 55,000,000.00 | $ 30,000,000.00 | Unknown | PE |
| Old Republic Insurance Company | MWZY 309927 | 3/1/2017 | 3/1/2018 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | None | Unknown | PE |
| Old Republic Insurance Company | MWZX 309926 | 3/1/2017 | 3/1/2018 | $ 1,000,000.00 | $ 9,000,000.00 | $ 9,000,000.00 | $ 9,000,000.00 | Unknown | PE |
| Gemini Insurance Company | CEX09600051-04 | 3/1/2017 | 3/1/2018 | $ 10,000,000.00 | $ 7,500,000.00 | $ 7,500,000.00 | $ 7,500,000.00 | Unknown | PE |
| First Specialty Insurance Corporation | IRE 2000295 04 | 3/1/2017 | 3/1/2018 | $ 17,500,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Aspen | CX0043417 | 3/1/2017 | 3/1/2018 | $ 27,500,000.00 | $ 10,000,000.00 | $ 20,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Gemini Insurance Company | CEX09600052-04 | 3/1/2017 | 3/1/2018 | $ 27,500,000.00 | $ 10,000,000.00 | $ 20,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Colony Insurance Company | AR3461897 | 3/1/2017 | 3/1/2018 | $ 47,500,000.00 | $ 15,000,000.00 | $ 40,000,000.00 | $ 15,000,000.00 | Unknown | SE |
| Aspen | CX0044G17 | 3/1/2017 | 3/1/2018 | $ 87,500,000.00 | $ 10,000,000.00 | $ 25,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Evanston Insurance Company | MKLV4EUE10037 | 3/1/2017 | 3/1/2018 | $ 87,500,000.00 | $ 15,000,000.00 | $ 25,000,000.00 | $ 15,000,000.00 | Unknown | PE |
| Gemini Insurance Company | CEX09600166-04 | 3/1/2017 | 3/1/2018 | $ 112,500,000.00 | $ 32,500,000.00 | $ 42,500,000.00 | $ 32,500,000.00 | Unknown | PE |
| Indian Harbor Insurance Company | SCS0049368 | 3/1/2017 | 3/1/2018 | $ 112,500,000.00 | $ 10,000,000.00 | $ 42,500,000.00 | $ 10,000,000.00 | Unknown | PE |
| Endurance American Specialty Insurance Company | EXC1004584703 | 3/1/2017 | 3/1/2018 | $ 155,000,000.00 | $ 25,000,000.00 | $ 55,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Ohio Casualty Insurance Company (The) | ECO (18) 55 94 28 39 | 3/1/2017 | 3/1/2018 | $ 155,000,000.00 | $ 30,000,000.00 | $ 55,000,000.00 | $ 30,000,000.00 | Unknown | PE |
| Old Republic Insurance Company | MWZY 312833 | 3/1/2018 | 3/1/2019 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | None | Unknown | PE |
| Old Republic Insurance Company | MWZX 312832 | 3/1/2018 | 3/1/2019 | $ 1,000,000.00 | $ 9,000,000.00 | $ 9,000,000.00 | $ 9,000,000.00 | Unknown | PE |
| Gemini Insurance Company | CEX0960051-05 | 3/1/2018 | 3/1/2019 | $ 10,000,000.00 | $ 7,500,000.00 | $ 7,500,000.00 | $ 7,500,000.00 | Unknown | PE |
| First Specialty Insurance Corporation | IRE 2000295 05 | 3/1/2018 | 3/1/2019 | $ 17,500,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | Unknown | SE |
| Aspen | CX0043418 | 3/1/2018 | 3/1/2019 | $ 27,500,000.00 | $ 10,000,000.00 | $ 20,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Gemini Insurance Company | CEX09600052-05 | 3/1/2018 | 3/1/2019 | $ 27,500,000.00 | $ 10,000,000.00 | $ 20,000,000.00 | $ 10,000,000.00 | Unknown | SE |
| Allied World Assurance Company, Ltd | 0305-3351 | 3/1/2018 | 3/1/2019 | $ 47,500,000.00 | $ 25,000,000.00 | $ 40,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Colony Insurance Company | AR4460619 | 3/1/2018 | 3/1/2019 | $ 47,500,000.00 | $ 15,000,000.00 | $ 40,000,000.00 | $ 15,000,000.00 | Unknown | PE |
| Aspen | CX0044G17 | 3/1/2018 | 3/1/2019 | $ 87,500,000.00 | $ 10,000,000.00 | $ 25,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Evanston Insurance Company | MKLV4EUE100128 | 3/1/2018 | 3/1/2019 | $ 87,500,000.00 | $ 15,000,000.00 | $ 25,000,000.00 | $ 15,000,000.00 | Unknown | PE |
| Gemini Insurance Company | CEX09600166-05 | 3/1/2018 | 3/1/2019 | $ 112,500,000.00 | $ 32,500,000.00 | $ 42,500,000.00 | $ 32,500,000.00 | Unknown | PE |
| XL Catlin | SXS004936801 | 3/1/2018 | 3/1/2019 | $ 112,500,000.00 | $ 10,000,000.00 | $ 42,500,000.00 | $ 10,000,000.00 | Unknown | PE |
| Endurance American Insurance Company | EXC10004584704 | 3/1/2018 | 3/1/2019 | $ 155,000,000.00 | $ 25,000,000.00 | $ 55,000,000.00 | $ 25,000,000.00 | Unknown | PE |
| Ohio Casualty Insurance Company (The) | ECO (19) 5594 2839 | 3/1/2018 | 3/1/2019 | $ 155,000,000.00 | $ 30,000,000.00 | $ 55,000,000.00 | $ 30,000,000.00 | Unknown | PE |
| Evanston Insurance Company | MKLV4PBC000310 | 3/1/2019 | 3/1/2020 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Evanston Insurance Company | MKLV4EUL102026 | 3/1/2019 | 3/1/2020 | $ 1,000,000.00 | $ 6,500,000.00 | $ 6,500,000.00 | $ 13,000,000.00 | Unknown | PE |
| Gemini Insurance Company | BXS0960355800 | 3/1/2019 | 3/1/2020 | $ 7,500,000.00 | $ 2,500,000.00 | $ 2,500,000.00 | $ 2,500,000.00 | Unknown | PE |
| Gemini Insurance Company | CEX09600S106 | 3/1/2019 | 3/1/2020 | $ 10,000,000.00 | $ 7,500,000.00 | $ 7,500,000.00 | $ 7,500,000.00 | Unknown | PE |
| Lexington Insurance Company | O23627630 | 3/1/2019 | 3/1/2020 | $ 17,500,000.00 | $ 5,000,000.00 | $ 10,000,000.00 | $ 5,000,000.00 | Unknown | PE |
| XL Catlin | SXS004936802 | 3/1/2019 | 3/1/2020 | $ 17,500,000.00 | $ 5,000,000.00 | $ 10,000,000.00 | $ 5,000,000.00 | Unknown | PE |
| Gemini Insurance Company | CEX0960005206 | 3/1/2019 | 3/1/2020 | $ 27,500,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Arch Reinsurance Ltd. | UXP102797700 | 3/1/2019 | 3/1/2020 | $ 37,500,000.00 | $ 5,000,000.00 | $ 10,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Westchester Surplus Lines Insurance Company | G71497094001 | 3/1/2019 | 3/1/2020 | $ 37,500,000.00 | $ 5,000,000.00 | $ 10,000,000.00 | $ 5,000,000.00 | Unknown | PE |
| Allied World Assurance Company (U.S.), Inc. | 3053351 | 3/1/2019 | 3/1/2020 | $ 47,500,000.00 | $ 20,000,000.00 | $ 40,000,000.00 | $ 20,000,000.00 | Unknown | PE |
| Ategrity Specialty Insurance Company | 01BXLP000012300 | 3/1/2019 | 3/1/2020 | $ 47,500,000.00 | $ 5,000,000.00 | $ 40,000,000.00 | $ 5,000,000.00 | Unknown | PE |
| Colony Insurance Company | AR4460619 | 3/1/2019 | 3/1/2020 | $ 47,500,000.00 | $ 15,000,000.00 | $ 40,000,000.00 | $ 15,000,000.00 | Unknown | PE |
| Endurance American Insurance Company | EXC10004584705 | 3/1/2019 | 3/1/2020 | $ 87,500,000.00 | $ 10,000,000.00 | $ 25,000,000.00 | $ 10,000,000.00 | Unknown | PE |
| Evanston Insurance Company | MKLV4EUE100212 | 3/1/2019 | 3/1/2020 | $ 87,500,000.00 | $ 15,000,000.00 | $ 25,000,000.00 | $ 15,000,000.00 | Unknown | PE |
| Gemini Insurance Company | CEX09600166606 | 3/1/2019 | 3/1/2020 | $ 112,500,000.00 | $ 32,500,000.00 | $ 32,500,000.00 | $ 32,500,000.00 | Unknown | PE |
| Liberty Insurance Underwriters, Inc. | 100032394701 | 3/1/2019 | 3/1/2020 | $ 145,000,000.00 | $ 30,000,000.00 | $ 30,000,000.00 | $ 30,000,000.00 | Unknown | PE |

*Policies highlighted in green contain deductibles that match their limits.*

[1] The insurers dispute what constitutes policy evidence and secondary evidence and the adequacy of the policy evidence and secondary evidence to establish the existence of the policy or the terms and conditions of the policy.

[2] Argonaut Insurance Company disputes the attachment point of this policy identified in this Schedule and contends that the attachment point is $5.5 million or greater. Argonaut reserves all of its rights in all respects.

[3] National Union contends there is a legal dispute regarding the existence of the National Union 1975 policy.

[4] There is a legal dispute over whether aggregate limits apply to abuse claims in these policies and, if so, the effect of such a finding on the excess policies for this period.

## SCHEDULE 3

## LOCAL COUNCIL INSURANCE POLICIES

**Local Council Insurance Policies**

The insurance schedules and coverage charts attached as exhibits 2 and 3 to the Disclosure Statement represent only the Debtors' position as to its insurance coverage. The schedules were prepared by Debtors and not by the insurers. In fact, certain insurers dispute some of the information presented in the schedules and contend the information is not entirely accurate or complete. The Debtors agree that the schedules are not intended to be, and shall not be deemed to constitute, an admission by any insurer of liability under any insurance policy or the terms and conditions of the policies, and that all rights and defenses of the Debtors and all insurers are preserved and shall not be waived by inclusion of the schedules in, or the Court's approval of, this Disclosure Statement.

The rows in the chart below reflect policy years (or other periods of time), not individual policies; in some instances multiple rows may represent a single policy. This chart does not reflect any position regarding the annualization or other availability of limits.

This chart includes only policies issued or allegedly issued to local councils, and does not include coverage that is alleged to be available to local councils under the policies issued (or allegedly issued) by the BSA. Parties in interest should consult the terms and conditions of the respective policies.

The Local Councils continue to search for and locate additional insurance policies and policy information, and this schedule will be updated if and/or when additional policy information becomes available.

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Abraham Lincoln (144): Abraham Lincoln (144) | Insurance Company of North America | SBL 25103 | 6/1/1967 | 6/1/1968 | 6/1/1967 | 6/1/1968 | | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Abraham Lincoln (144): Abraham Lincoln (144) | Insurance Company of North America | SBL 25103 | 6/1/1968 | 6/1/1969 | 6/1/1968 | 6/1/1969 | | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Abraham Lincoln (144): Abraham Lincoln (144) | Insurance Company of North America | SBL 25103 | 6/1/1969 | 6/1/1970 | 6/1/1969 | 6/1/1970 | - | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Abraham Lincoln (144): Abraham Lincoln (144) | Insurance Company of North America | SBL 25103 | 6/1/1970 | 6/1/1971 | 6/1/1970 | 6/1/1971 | | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Abraham Lincoln (144): Abraham Lincoln (144) | Insurance Company of North America | SBL 25103 | 6/1/1971 | 6/1/1972 | 6/1/1971 | 6/1/1972 | - | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Abraham Lincoln (144): Abraham Lincoln (144) | New Hampshire Insurance Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | | Unknown | Unknown | Unknown | Unknown | SE |
| Abraham Lincoln (144): Abraham Lincoln (144) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | | Unknown | Unknown | Unknown | Unknown | SE |
| Abraham Lincoln (144): Abraham Lincoln (144) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 26 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Abraham Lincoln (144): Abraham Lincoln (144) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Abraham Lincoln (144): Abraham Lincoln (144) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | | Unknown | Unknown | Unknown | Unknown | SE |
| Abraham Lincoln (144): Abraham Lincoln (144) | St. Paul Insurance Company of Illinois | 550TA8039 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | | $500,000.00 | $500,000.00 | Unknown | Unknown | SE |
| Abraham Lincoln (144): Abraham Lincoln (144) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219972 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Abraham Lincoln (144): Abraham Lincoln (144) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Alabama-Florida (3): Alabama-Florida 1963- (3) | Insurance Company of North America | SBL 48811 | 2/23/1970 | 2/23/1971 | 2/23/1970 | 2/23/1971 | | Unknown | Unknown | Unknown | Unknown | PE |
| Alabama-Florida (3): Alabama-Florida 1963- (3) | Insurance Company of North America | SBL 52409 | 2/23/1971 | 2/23/1972 | 2/23/1971 | 2/23/1972 | - | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Alabama-Florida (3): Alabama-Florida 1963- (3) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 09 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Alabama-Florida (3): Alabama-Florida 1963- (3) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Alabama-Florida (3): Alabama-Florida 1963- (3) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219859 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Alabama-Florida (3): Alabama-Florida 1963- (3) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Alamo Area (583): Alamo Area (583) | Maryland Casualty Company | 05-829567 | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | | $100,000.00 | $100,000.00 | Unknown | Unknown | SE |
| Alamo Area (583): Alamo Area (583) | St. Paul Fire and Marine Insurance Company | 542AG6620 | 2/1/1968 | 2/1/1969 | 2/1/1968 | 2/1/1969 | - | $100,000.00 | $100,000.00 | Unknown | Unknown | SE |
| Alamo Area (583): Alamo Area (583) | St. Paul Fire and Marine Insurance Company | 542AG6865 | 7/29/1968 | 7/29/1969 | 7/29/1968 | 7/29/1969 | | Unknown | Unknown | Unknown | Unknown | SE |
| Alamo Area (583): Alamo Area (583) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 87 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Alamo Area (583): Alamo Area (583) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Alamo Area (583): Alamo Area (583) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220218 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Alamo Area (583): Alamo Area (583) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Allegheny Highlands (382): Allegheny Highlands 1973- (382) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 56 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Allegheny Highlands (382): Allegheny Highlands 1973- (382) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Allegheny Highlands (382): Allegheny Highlands 1973- (382) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220009 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Allegheny Highlands (382): Allegheny Highlands 1973- (382) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Allegheny Highlands (382): Elk Lick 1947-1973 (499) | Insurance Company of North America | SBL xxx71 | 3/1/1965 | 3/1/1966 | 3/1/1965 | 3/1/1966 | | Unknown | Unknown | Unknown | Unknown | SE |
| Allegheny Highlands (382): Elk Lick 1947-1973 (499) | Insurance Company of North America | SBL xxx71 | 3/1/1966 | 3/1/1967 | 3/1/1966 | 3/1/1967 | | Unknown | Unknown | Unknown | Unknown | SE |
| Allegheny Highlands (382): Elk Lick 1947-1973 (499) | Insurance Company of North America | SBL xxx71 | 3/1/1967 | 3/1/1968 | 3/1/1967 | 3/1/1968 | | Unknown | Unknown | Unknown | Unknown | SE |
| Allegheny Highlands (382): Elk Lick 1947-1973 (499) | Insurance Company of North America | SBL 46909 | 3/1/1968 | 3/1/1969 | 3/1/1968 | 3/1/1969 | - | Unknown | Unknown | Unknown | Unknown | PE |
| Allegheny Highlands (382): Elk Lick 1947-1973 (499) | Insurance Company of North America | SBL 46909 | 3/1/1969 | 3/1/1970 | 3/1/1969 | 3/1/1970 | - | Unknown | Unknown | Unknown | Unknown | PE |
| Allegheny Highlands (382): Elk Lick 1947-1973 (499) | Insurance Company of North America | SBL 46909 | 3/1/1970 | 3/1/1971 | 3/1/1970 | 3/1/1971 | - | Unknown | Unknown | Unknown | Unknown | PE |
| Allegheny Highlands (382): Elk Lick 1947-1973 (499) | Insurance Company of North America | Unknown | 3/1/1971 | 3/1/1972 | 3/1/1971 | 3/1/1972 | | Unknown | Unknown | Unknown | Unknown | SE |
| Aloha (104): Aloha 1957- (104) | First Insurance Company of Hawaii, Ltd. | FGA 30916 | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | - | $500,000.00 | $500,000.00 | Unknown | Unknown | SE |
| Aloha (104): Aloha 1957- (104) | First Insurance Company of Hawaii, Ltd. | FGA 30916 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | - | $500,000.00 | $500,000.00 | Unknown | Unknown | SE |
| Aloha (104): Aloha 1957- (104) | First Insurance Company of Hawaii, Ltd. | FGA 30916 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | - | $500,000.00 | $500,000.00 | Unknown | Unknown | SE |
| Aloha (104): Aloha 1957- (104) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 00 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Aloha (104): Aloha 1957- (104) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Aloha (104): Aloha 1957- (104) | First Insurance Company of Hawaii, Ltd. | FGA 49459 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Aloha (104): Aloha 1957- (104) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219947 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Aloha (104): Aloha 1957- (104) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Aloha (104): Aloha 1957- (104) | First Insurance Company of Hawaii, Ltd. | FGA 49459 | 1/1/1978 | 1/1/1979 | 1/1/1978 | 1/1/1979 | - | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Aloha (104): Kilauea 1922-1972 (103) | Insurance Company of North America | Unknown | 3/1/1969 | 3/1/1970 | 3/1/1969 | 3/1/1970 | | Unknown | Unknown | Unknown | Unknown | PE |
| Aloha (104): Kilauea 1922-1972 (103) | Insurance Company of North America | SBL 46929 | 3/1/1970 | 3/1/1971 | 3/1/1970 | 3/1/1971 | - | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Aloha (104): Kilauea 1922-1972 (103) | Insurance Company of North America | SBL 51410 | 3/1/1971 | 3/1/1972 | 3/1/1971 | 3/1/1972 | - | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Aloha (104): Maui County 1915-2019 (102) | Insurance Company of North America | SBL 4 23 85 | 3/23/1965 | 3/23/1966 | 3/23/1965 | 3/23/1966 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Aloha (104): Maui County 1915-2019 (102) | Insurance Company of North America | SBL 4 23 85 | 3/23/1966 | 3/23/1967 | 3/23/1966 | 3/23/1967 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Aloha (104): Maui County 1915-2019 (102) | Insurance Company of North America | SBL 4 23 85 | 3/23/1967 | 3/23/1968 | 3/23/1967 | 3/23/1968 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Aloha (104): Maui County 1915-2019 (102) | Insurance Company of North America | SBL 4 69 28 | 3/23/1968 | 3/23/1969 | 3/23/1968 | 3/23/1969 | - | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Aloha (104): Maui County 1915-2019 (102) | Insurance Company of North America | SBL 4 69 28 | 3/23/1969 | 3/23/1970 | 3/23/1969 | 3/23/1970 | - | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Aloha (104): Maui County 1915-2019 (102) | Insurance Company of North America | SBL 4 69 28 | 3/23/1970 | 3/23/1971 | 3/23/1970 | 3/23/1971 | - | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Aloha (104): Maui County 1915-2019 (102) | Insurance Company of North America | SBL 51515 | 3/23/1971 | 3/23/1972 | 3/23/1971 | 3/23/1972 | - | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Aloha (104): Maui County 1915-2019 (102) | First Insurance Company of Hawaii, Ltd. | FGA 36020 | 3/5/1975 | 3/5/1976 | 3/5/1975 | 3/5/1976 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Aloha (104): Maui County 1915-2019 (102) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 01 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Aloha (104): Maui County 1915-2019 (102) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Aloha (104): Maui County 1915-2019 (102) | First Insurance Company of Hawaii, Ltd. | FGA 45292 | 3/5/1976 | 3/5/1977 | 3/5/1976 | 3/5/1977 | - | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Aloha (104): Maui County 1915-2019 (102) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219948 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Aloha (104): Maui County 1915-2019 (102) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Aloha (104): Maui County 1915-2019 (102) | First Insurance Company of Hawaii, Ltd. | Unknown | 3/5/1977 | 3/5/1978 | 3/5/1977 | 3/5/1978 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Andrew Jackson (303): Andrew Jackson (303) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | | Unknown | Unknown | Unknown | Unknown | SE |
| Andrew Jackson (303): Andrew Jackson (303) | Insurance Company of North America | Unknown | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | | Unknown | Unknown | Unknown | Unknown | SE |
| Andrew Jackson (303): Andrew Jackson (303) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 08 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Andrew Jackson (303): Andrew Jackson (303) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Andrew Jackson (303): Andrew Jackson (303) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220018 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Andrew Jackson (303): Andrew Jackson (303) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Anthony Wayne (157): Anthony Wayne (157) | Insurance Company of North America | SBL 41084 | 9/9/1965 | 9/9/1966 | 9/9/1965 | 9/9/1966 | - | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Anthony Wayne (157): Anthony Wayne (157) | Insurance Company of North America | SBL 41084 | 9/9/1966 | 9/9/1967 | 9/9/1966 | 9/9/1967 | - | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Anthony Wayne (157): Anthony Wayne (157) | Insurance Company of North America | SBL 41084 | 9/9/1967 | 9/9/1968 | 9/9/1967 | 9/9/1968 | - | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Anthony Wayne (157): Anthony Wayne (157) | Insurance Company of North America | SBL 41084 | 9/9/1968 | 9/9/1969 | 9/9/1968 | 9/9/1969 | - | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Anthony Wayne Area (157): Anthony Wayne Area (157) | Insurance Company of North America | SBL 41084 | 9/9/1969 | 9/9/1970 | 9/9/1969 | 9/9/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Anthony Wayne Area (157): Anthony Wayne Area (157) | Insurance Company of North America | Unknown | 9/9/1970 | 9/9/1971 | 9/9/1970 | 9/9/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Anthony Wayne Area (157): Anthony Wayne Area (157) | Insurance Company of North America | Unknown | 9/9/1971 | 9/9/1972 | 9/9/1971 | 9/9/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Anthony Wayne Area (157): Anthony Wayne Area (157) | Unknown | Unknown | 9/9/1972 | 9/9/1973 | 9/9/1972 | 9/9/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Anthony Wayne Area (157): Anthony Wayne Area (157) | Insurance Company of North America | XBC 89871 | 9/9/1972 | 9/9/1973 | 9/9/1972 | 9/9/1973 | $ 1,000,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Anthony Wayne Area (157): Anthony Wayne Area (157) | Unknown | Unknown | 9/9/1973 | 9/9/1974 | 9/9/1973 | 9/9/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Anthony Wayne Area (157): Anthony Wayne Area (157) | Insurance Company of North America | XBC 89871 | 9/9/1973 | 9/9/1974 | 9/9/1973 | 9/9/1974 | $ 1,000,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Anthony Wayne Area (157): Anthony Wayne Area (157) | Unknown | Unknown | 9/9/1974 | 9/9/1975 | 9/9/1974 | 9/9/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Anthony Wayne Area (157): Anthony Wayne Area (157) | Insurance Company of North America | XBC 89871 | 9/9/1974 | 9/9/1975 | 9/9/1974 | 9/9/1975 | $ 1,000,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Anthony Wayne Area (157): Anthony Wayne Area (157) | Insurance Company of North America | XBC 116559 | 9/9/1975 | 1/1/1976 | 9/9/1975 | 1/1/1976 | $ 1,000,000.00 | $ 1,500,000.00 | $ 1,500,000.00 | Unknown | Unknown | PE |
| Anthony Wayne Area (157): Anthony Wayne Area (157) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 31 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Anthony Wayne Area (157): Anthony Wayne Area (157) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Anthony Wayne Area (157): Anthony Wayne Area (157) | Insurance Company of North America | XBC 116559 | 9/9/1976 | 9/9/1977 | 9/9/1976 | 9/9/1977 | $ 1,000,000.00 | $ 1,500,000.00 | $ 1,500,000.00 | Unknown | Unknown | PE |
| Anthony Wayne Area (157): Anthony Wayne Area (157) | Insurance Company of North America | BE 1219977 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Anthony Wayne Area (157): Anthony Wayne Area (157) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Anthony Wayne Area (157): Anthony Wayne Area (157) | Insurance Company of North America | XBC 116559 | 9/9/1977 | 1/1/1978 | 9/9/1977 | 1/1/1978 | $ 1,000,000.00 | $ 1,500,000.00 | $ 1,500,000.00 | Unknown | Unknown | PE |
| Arbuckle Area (468): Arbuckle Area (468) | Insurance Company of North America | SBL 4 29 53 | 3/1/1965 | 3/1/1966 | 3/1/1965 | 3/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Arbuckle Area (468): Arbuckle Area (468) | Insurance Company of North America | SBL 4 29 53 | 3/1/1966 | 3/1/1967 | 3/1/1966 | 3/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Arbuckle Area (468): Arbuckle Area (468) | Insurance Company of North America | SBL 4 29 53 | 3/1/1967 | 3/1/1968 | 3/1/1967 | 3/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Arbuckle Area (468): Arbuckle Area (468) | Insurance Company of North America | SBL 46911 | 3/1/1968 | 3/1/1969 | 3/1/1968 | 3/1/1969 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Arbuckle Area (468): Arbuckle Area (468) | Insurance Company of North America | SBL 46911 | 3/1/1969 | 3/1/1970 | 3/1/1969 | 3/1/1970 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Arbuckle Area (468): Arbuckle Area (468) | Insurance Company of North America | SBL 46911 | 3/1/1970 | 3/1/1971 | 3/1/1970 | 3/1/1971 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Arbuckle Area (468): Arbuckle Area (468) | Insurance Company of North America | SBL 5 14 15 | 3/1/1971 | 3/1/1972 | 3/1/1971 | 3/1/1972 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Arbuckle Area (468): Arbuckle Area (468) | Insurance Company of North America | SBL 5 14 00 | 3/1/1972 | 3/1/1973 | 3/1/1972 | 3/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Arbuckle Area (468): Arbuckle Area (468) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 17 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Arbuckle Area (468): Arbuckle Area (468) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Arbuckle Area (468): Arbuckle Area (468) | New Hampshire Insurance Company | SLP 27 56 11 | 3/25/1976 | 3/25/1977 | 3/25/1976 | 3/25/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Arbuckle Area (468): Arbuckle Area (468) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220070 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Arbuckle Area (468): Arbuckle Area (468) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Arbuckle Area (468): Arbuckle Area (468) | New Hampshire Insurance Company | Unknown | 3/25/1977 | 3/25/1978 | 3/25/1977 | 3/25/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Atlanta Area (92): Atlanta Area (92) | Unknown | Unknown | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Atlanta Area (92): Atlanta Area (92) | Maryland Casualty Company | Unknown | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Atlanta Area (92): Atlanta Area (92) | Maryland Casualty Company | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Atlanta Area (92): Atlanta Area (92) | Maryland Casualty Company | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Atlanta Area (92): Atlanta Area (92) | Maryland Casualty Company | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Atlanta Area (92): Atlanta Area (92) | Maryland Casualty Company | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ 500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Atlanta Area (92): Atlanta Area (92) | Transamerica Insurance Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Atlanta Area (92): Atlanta Area (92) | Transamerica Insurance Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ 500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Atlanta Area (92): Atlanta Area (92) | Transamerica Insurance Company | (T6) 8785457 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Atlanta Area (92): Atlanta Area (92) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 89 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Atlanta Area (92): Atlanta Area (92) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Atlanta Area (92): Atlanta Area (92) | Transamerica Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Atlanta Area (92): Atlanta Area (92) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219937 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Atlanta Area (92): Atlanta Area (92) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Baden-Powell (368): Baden-Powell 1975-1998 (381) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 70 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Baden-Powell (368): Baden-Powell 1975-1998 (381) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Baden-Powell (368): Baden-Powell 1975-1998 (381) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220007 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Baden-Powell (368): Baden-Powell 1975-1998 (381) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Baden-Powell (368): Louis Agassiz Fuertes 1929-1975 (381) | General Accident Insurance Company of America | Unknown | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Baden-Powell (368): Susquenango 1925-1998 (368) | Insurance Company of North America | 9CGL 86259 | 3/19/1958 | 3/19/1959 | 3/19/1958 | 3/19/1959 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Baden-Powell (368): Susquenango 1925-1998 (368) | Insurance Company of North America | 9-CGL-86604 | 3/19/1959 | 3/19/1960 | 3/19/1959 | 3/19/1960 | $ - | $ 25,000.00 | $ 25,000.00 | Unknown | Unknown | PE |
| Baden-Powell (368): Susquenango 1925-1998 (368) | Insurance Company of North America | AGP 57 03 | 3/19/1966 | 3/19/1967 | 3/19/1966 | 3/19/1967 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Baden-Powell (368): Susquenango 1925-1998 (368) | Insurance Company of North America | AGP 57 03 | 3/19/1967 | 3/19/1968 | 3/19/1967 | 3/19/1968 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Baden-Powell (368): Susquenango 1925-1998 (368) | Insurance Company of North America | AGP 57 03 | 3/19/1968 | 3/19/1969 | 3/19/1968 | 3/19/1969 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Baden-Powell (368): Susquenango 1925-1998 (368) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 52 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Baden-Powell (368): Susquenango 1925-1998 (368) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Baden-Powell (368): Susquenango 1925-1998 (368) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220004 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Baden-Powell (368): Susquenango 1925-1998 (368) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Baden-Powell (368): Toughnioga 1940-1975 (383) | Insurance Company of North America | GLP 57 99 52 | 1/1/1975 | 5/14/1975 | 1/1/1975 | 5/14/1975 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Baden-Powell (368): Toughnioga 1940-1975 (383) | Unknown | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Baden-Powell (368): Toughnioga 1940-1975 (383) | Insurance Company of North America | X 07 3 14 17 | 1/1/1975 | 5/14/1975 | 1/1/1975 | 5/14/1975 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | SE |
| Baltimore Area (220): Baltimore Area (220) | Hartford Fire Insurance Company | 30 CBP 104757 | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Baltimore Area (220): Baltimore Area (220) | Hartford Fire Insurance Company | 30 CBP 108939 | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Baltimore Area (220): Baltimore Area (220) | Hartford Fire Insurance Company | 30 CBP 108939 | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Baltimore Area (220): Baltimore Area (220) | Hartford Fire Insurance Company | 30 CBP 108939 | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Baltimore Area (220): Baltimore Area (220) | Hartford Fire Insurance Company | 30 CBP 108939 | 5/1/1973 | 1/1/1974 | 5/1/1973 | 1/1/1974 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Baltimore Area (220): Baltimore Area (220) | Hartford Fire Insurance Company | 30 CBP 115631 | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Baltimore Area (220): Baltimore Area (220) | Hartford Fire Insurance Company | 30 CBP 115631 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Baltimore Area (220): Baltimore Area (220) | Hartford Fire Insurance Company | 30 CBP 115631 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Baltimore Area (220): Baltimore Area (220) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 65 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Baltimore Area (220): Baltimore Area (220) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Baltimore Area (220): Baltimore Area (220) | Hartford Fire Insurance Company | 30 CBP 115827 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Baltimore Area (220): Baltimore Area (220) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220113 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Baltimore Area (220): Baltimore Area (220) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Baltimore Area (220): Baltimore Area (220) | Hartford Fire Insurance Company | 30 CBP 115827 | 1/1/1978 | 1/1/1979 | 1/1/1978 | 1/1/1979 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Baltimore Area (220): Baltimore Area (220) | Hartford Fire Insurance Company | 30 CBP 115827 | 1/1/1979 | 1/1/1980 | 1/1/1979 | 1/1/1980 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Bay Area (574): Bay Area (574) | New Hampshire Insurance Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Bay Area (574): Bay Area (574) | New Hampshire Insurance Company | GLA 21 02 76 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Bay Area (574): Bay Area (574) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 79 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Bay Area (574): Bay Area (574) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Bay Area (574): Bay Area (574) | New Hampshire Insurance Company | GLA 33 23 36 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | $ 50,000.00 | $ 50,000.00 | Unknown | Unknown | PE |
| Bay Area (574): Bay Area (574) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220210 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Bay Area (574): Bay Area (574) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Badger 1926-1973 (622) | Insurance Company of North America | SBL 4 69 47 | 6/24/1968 | 6/24/1969 | 6/24/1968 | 6/24/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Badger 1926-1973 (622) | Insurance Company of North America | SBL 4 69 47 | 6/24/1969 | 6/24/1970 | 6/24/1969 | 6/24/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Badger 1926-1973 (622) | Insurance Company of North America | SBL 4 69 47 | 6/24/1970 | 6/24/1971 | 6/24/1970 | 6/24/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Badger 1926-1973 (622) | Insurance Company of North America | SBL 51563 | 6/24/1971 | 6/24/1972 | 6/24/1971 | 6/24/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bay-Lakes (635): Bay-Lakes (635) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Bay-Lakes (635): Bay-Lakes (635) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 45 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Bay-Lakes (635) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Bay-Lakes (635) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Bay-Lakes (635): Bay-Lakes (635) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220164 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Bay-Lakes (635) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Hiawathaland 1945-2012 (261) | Insurance Company of North America | SBL 4 53 79 | 2/10/1966 | 2/10/1967 | 2/10/1966 | 2/10/1967 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Hiawathaland 1945-2012 (261) | Insurance Company of North America | SBL-4-15-27 | 2/10/1967 | 2/10/1968 | 2/10/1967 | 2/10/1968 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Hiawathaland 1945-2012 (261) | Insurance Company of North America | SBL 4 13 34 | 2/10/1968 | 2/10/1969 | 2/10/1968 | 2/10/1969 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Bay-Lakes (635): Hiawathaland 1945-2012 (261) | Insurance Company of North America | SBL 4 15 46 | 2/10/1969 | 2/10/1970 | 2/10/1969 | 2/10/1970 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Hiawathaland 1945-2012 (261) | Insurance Company of North America | SBL 41553 | 2/10/1970 | 2/10/1971 | 2/10/1970 | 2/10/1971 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Hiawathaland 1945-2012 (261) | Insurance Company of North America | SBL 4 15 61 | 2/10/1971 | 2/10/1972 | 2/10/1971 | 2/10/1972 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Hiawathaland 1945-2012 (261) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 94 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Hiawathaland 1945-2012 (261) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Hiawathaland 1945-2012 (261) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220144 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Hiawathaland 1945-2012 (261) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Kettle Moraine 1935-1973 (632) | Insurance Company of North America | SBL 45395 | 1/3/1967 | 1/1/1968 | 1/3/1967 | 1/1/1968 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Bay-Lakes (635): Kettle Moraine 1935-1973 (632) | Insurance Company of North America | SBL 45395 | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Bay-Lakes (635): Kettle Moraine 1935-1973 (632) | Insurance Company of North America | SBL 45395 | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Bay-Lakes (635): Kettle Moraine 1935-1973 (632) | Insurance Company of North America | SBL 51311 | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Kettle Moraine 1935-1973 (632) | Insurance Company of North America | SBL 51311 | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Kettle Moraine 1935-1973 (632) | Insurance Company of North America | SBL 51311 | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Nicolet Area 1934-1973 (621) | Insurance Company of North America | SBL-4-15-18 | 7/1/1964 | 7/1/1965 | 7/1/1964 | 7/1/1965 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Bay-Lakes (635): Nicolet Area 1934-1973 (621) | Insurance Company of North America | SBL-4-15-18 | 7/1/1965 | 7/1/1966 | 7/1/1965 | 7/1/1966 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Bay-Lakes (635): Nicolet Area 1934-1973 (621) | Insurance Company of North America | SBL-4-15-18 | 7/1/1966 | 7/1/1967 | 7/1/1966 | 7/1/1967 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Bay-Lakes (635): Nicolet Area 1934-1973 (621) | Insurance Company of North America | SBL-4-15-29 | 7/1/1967 | 7/1/1968 | 7/1/1967 | 7/1/1968 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Nicolet Area 1934-1973 (621) | Insurance Company of North America | SBL 4 15 41 | 7/1/1968 | 7/1/1969 | 7/1/1968 | 7/1/1969 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Bay-Lakes (635): Nicolet Area 1934-1973 (621) | Insurance Company of North America | SBL 4 15 48 | 7/1/1969 | 7/1/1970 | 7/1/1969 | 7/1/1970 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Nicolet Area 1934-1973 (621) | Insurance Company of North America | SBL 4 15 55 | 7/1/1970 | 7/1/1971 | 7/1/1970 | 7/1/1971 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Nicolet Area 1934-1973 (621) | Insurance Company of North America | SBL 41567 | 7/1/1971 | 7/1/1972 | 7/1/1971 | 7/1/1972 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Valley 1925-1973 (635) | Insurance Company of North America | SBL 4 69 05 | 2/15/1970 | 2/15/1971 | 2/15/1970 | 2/15/1971 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Bay-Lakes (635): Valley 1925-1973 (635) | Insurance Company of North America | SBL 5 13 97 | 2/15/1971 | 2/15/1972 | 2/15/1971 | 2/15/1972 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Valley 1925-1973 (635) | Insurance Company of North America | SBL 5 13 97 | 2/15/1972 | 2/15/1973 | 2/15/1972 | 2/15/1973 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Waumegesako 1940-1973 (625) | Insurance Company of North America | SBL 5 04 23 | 5/25/1968 | 5/25/1969 | 5/25/1968 | 5/25/1969 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Waumegesako 1940-1973 (625) | Insurance Company of North America | SBL 5 04 23 | 5/25/1969 | 5/25/1970 | 5/25/1969 | 5/25/1970 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Waumegesako 1940-1973 (625) | Insurance Company of North America | SBL 5 04 23 | 5/25/1970 | 5/25/1971 | 5/25/1970 | 5/25/1971 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Bay-Lakes (635): Waumegesako 1940-1973 (625) | Insurance Company of North America | SBL 5 15 42 | 5/25/1971 | 5/25/1972 | 5/25/1971 | 5/25/1972 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Black Hills Area (695): Black Hills Area (695) | Indemnity Insurance Company of North America | 730859 | 9/15/1960 | 9/15/1961 | 9/15/1960 | 9/15/1961 | $ | $ 50,000.00 | $ 50,000.00 | Unknown | Unknown | SE |
| Black Hills Area (695): Black Hills Area (695) | Indemnity Insurance Company of North America | 730859 | 9/15/1961 | 9/15/1962 | 9/15/1961 | 9/15/1962 | $ | $ 50,000.00 | $ 50,000.00 | Unknown | Unknown | SE |
| Black Hills Area (695): Black Hills Area (695) | Insurance Company of North America | 758883 | 9/15/1962 | 9/15/1963 | 9/15/1962 | 9/15/1963 | $ | $ 50,000.00 | $ 50,000.00 | Unknown | Unknown | SE |
| Black Hills Area (695): Black Hills Area (695) | Insurance Company of North America | 758883 | 9/15/1963 | 9/15/1964 | 9/15/1963 | 9/15/1964 | $ | $ 50,000.00 | $ 50,000.00 | Unknown | Unknown | SE |
| Black Hills Area (695): Black Hills Area (695) | Insurance Company of North America | 758883 | 9/15/1964 | 10/15/1964 | 9/15/1964 | 10/15/1964 | $ | $ 50,000.00 | $ 50,000.00 | Unknown | Unknown | SE |
| Black Hills Area (695): Black Hills Area (695) | Insurance Company of North America | 37010 | 10/15/1964 | 10/15/1965 | 10/15/1964 | 10/15/1965 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | SE |
| Black Hills Area (695): Black Hills Area (695) | Insurance Company of North America | 37010 | 10/15/1965 | 4/1/1966 | 10/15/1965 | 4/1/1966 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | SE |
| Black Hills Area (695): Black Hills Area (695) | Insurance Company of North America | SBL 37016 | 10/1/1966 | 10/1/1967 | 10/1/1966 | 10/1/1967 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | SE |
| Black Hills Area (695): Black Hills Area (695) | Insurance Company of North America | SBL 46622 | 10/1/1967 | 10/1/1968 | 10/1/1967 | 10/1/1968 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Black Hills Area (695): Black Hills Area (695) | Insurance Company of North America | SBL 44640 | 10/1/1968 | 10/1/1969 | 10/1/1968 | 10/1/1969 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Black Hills Area (695): Black Hills Area (695) | Insurance Company of North America | SBL 44656 | 10/1/1969 | 10/1/1970 | 10/1/1969 | 10/1/1970 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Black Hills Area (695): Black Hills Area (695) | Insurance Company of North America | 12019 | 10/1/1970 | 10/1/1971 | 10/1/1970 | 10/1/1971 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Black Hills Area (695): Black Hills Area (695) | Insurance Company of North America | SBL 44675 | 10/1/1970 | 10/1/1971 | 10/1/1970 | 10/1/1971 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Black Hills Area (695): Black Hills Area (695) | Insurance Company of North America | 118045 | 10/1/1971 | 10/1/1972 | 10/1/1971 | 10/1/1972 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Black Hills Area (695): Black Hills Area (695) | Insurance Company of North America | GAL 136151 | 10/1/1972 | 10/1/1973 | 10/1/1972 | 10/1/1973 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Black Hills Area (695): Black Hills Area (695) | Insurance Company of North America | XBC 9 75 72 | 10/1/1972 | 10/1/1973 | 10/1/1972 | 10/1/1973 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | SE |
| Black Hills Area (695): Black Hills Area (695) | Insurance Company of North America | GAL 21 17 76 | 10/1/1973 | 10/1/1974 | 10/1/1973 | 10/1/1974 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Black Hills Area (695): Black Hills Area (695) | Insurance Company of North America | XBC 9 75 72 | 10/1/1973 | 10/1/1974 | 10/1/1973 | 10/1/1974 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | SE |
| Black Hills Area (695): Black Hills Area (695) | Insurance Company of North America | GAL214564 | 10/1/1974 | 10/1/1975 | 10/1/1974 | 10/1/1975 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Black Hills Area (695): Black Hills Area (695) | Insurance Company of North America | XBC 9 75 72 | 10/1/1974 | 10/1/1975 | 10/1/1974 | 10/1/1975 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | SE |
| Black Hills Area (695): Black Hills Area (695) | Insurance Company of North America | GAL214564 | 10/1/1975 | 10/1/1976 | 10/1/1975 | 10/1/1976 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Black Hills Area (695): Black Hills Area (695) | Insurance Company of North America | XBC 9 75 72 | 10/1/1975 | 10/1/1976 | 10/1/1975 | 10/1/1976 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | SE |
| Black Hills Area (695): Black Hills Area (695) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 62 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Black Hills Area (695): Black Hills Area (695) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Black Hills Area (695): Black Hills Area (695) | Insurance Company of North America | Unknown | 10/1/1976 | 10/1/1977 | 10/1/1976 | 10/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Black Hills Area (695): Black Hills Area (695) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220284 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Black Hills Area (695): Black Hills Area (695) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Black Hills Area (695): Black Hills Area (695) | Insurance Company of North America | Unknown | 10/1/1977 | 10/1/1978 | 10/1/1977 | 10/1/1978 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Black Hills Area (695): Black Hills Area (695) | Travelers Insurance Company | 650-198A177-A-IND-BB | 2/15/1984 | 2/15/1985 | 2/15/1984 | 2/15/1985 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Black Swamp Area (449): Put-Han-Sen Area 1930-1992 (449) | Unknown | Unknown | 1/1/1958 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Black Swamp Area (449): Put-Han-Sen Area 1930-1992 (449) | Hartford Accident and Indemnity Company | 45 CBP 130782 | 3/26/1975 | 3/26/1976 | 3/26/1975 | 3/26/1976 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Black Swamp Area (449): Put-Han-Sen Area 1930-1992 (449) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 01 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Black Swamp Area (449): Put-Han-Sen Area 1930-1992 (449) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Black Swamp Area (449): Put-Han-Sen Area 1930-1992 (449) | Hartford Accident and Indemnity Company | 45 CBP 130782 | 3/26/1976 | 3/26/1977 | 3/26/1976 | 3/26/1977 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Black Swamp Area (449): Put-Han-Sen Area 1930-1992 (449) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220054 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Black Swamp Area (449): Put-Han-Sen Area 1930-1992 (449) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Black Swamp Area (449): Put-Han-Sen Area 1930-1992 (449) | Hartford Accident and Indemnity Company | 45 CBP 130782 | 3/26/1977 | 3/26/1978 | 3/26/1977 | 3/26/1978 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Black Swamp Area (449): Shawnee 1926-1992 (452) | General Accident Insurance Company of America | 375514 | 7/20/1961 | 7/20/1962 | 7/20/1961 | 7/20/1962 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Black Swamp Area (449): Shawnee 1926-1992 (452) | General Accident Insurance Company of America | 375514 | 7/20/1962 | 7/20/1963 | 7/20/1962 | 7/20/1963 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Black Swamp Area (449): Shawnee 1926-1992 (452) | General Accident Insurance Company of America | 375514 | 7/20/1963 | 7/20/1964 | 7/20/1963 | 7/20/1964 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Black Swamp Area (449): Shawnee 1926-1992 (452) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 02 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Black Swamp Area (449): Shawnee 1926-1992 (452) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Black Swamp Area (449): Shawnee 1926-1992 (452) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220055 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Black Swamp Area (449): Shawnee 1926-1992 (452) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Black Warrior (6): Black Warrior (6) | Insurance Company of North America | SBL 45386 | 6/1/1966 | 6/1/1967 | 6/1/1966 | 6/1/1967 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Black Warrior (6): Black Warrior (6) | Insurance Company of North America | SBL 45386 | 6/1/1967 | 6/1/1968 | 6/1/1967 | 6/1/1968 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Black Warrior (6): Black Warrior (6) | Insurance Company of North America | SBL 45386 | 6/1/1968 | 6/1/1969 | 6/1/1968 | 6/1/1969 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Black Warrior (6): Black Warrior (6) | Insurance Company of North America | SBL 51185 | 6/1/1969 | 6/1/1970 | 6/1/1969 | 6/1/1970 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Black Warrior (6): Black Warrior (6) | Insurance Company of North America | SBL 51185 | 6/1/1970 | 6/1/1971 | 6/1/1970 | 6/1/1971 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Black Warrior (6): Black Warrior (6) | Insurance Company of North America | SBL 51185 | 6/1/1971 | 6/1/1972 | 6/1/1971 | 6/1/1972 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Black Warrior (6): Black Warrior (6) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Black Warrior (6): Black Warrior (6) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 14 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Black Warrior (6): Black Warrior (6) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Black Warrior (6): Black Warrior (6) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Black Warrior (6): Black Warrior (6) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219863 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Black Warrior (6): Black Warrior (6) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Blackhawk Area (660): Blackhawk Area 1971- (660) | Insurance Company of North America | SBL 25062 | 3/13/1967 | 3/13/1968 | 3/13/1967 | 3/13/1968 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Blackhawk Area (660): Blackhawk Area 1971- (660) | Insurance Company of North America | SBL 48 903 | 3/13/1968 | 3/13/1969 | 3/13/1968 | 3/13/1969 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Blackhawk Area (660): Blackhawk Area 1971- (660) | Insurance Company of North America | SBL 48907 | 3/13/1969 | 3/13/1970 | 3/13/1969 | 3/13/1970 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Blackhawk Area (660): Blackhawk Area 1971- (660) | Insurance Company of North America | SBL 48909 | 3/13/1970 | 3/13/1971 | 3/13/1970 | 3/13/1971 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Blackhawk Area (660): Blackhawk Area 1971- (660) | Insurance Company of North America | Unknown | 3/13/1971 | 7/1/1971 | 3/13/1971 | 7/1/1971 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Blackhawk Area (660): Blackhawk Area 1971- (660) | Insurance Company of North America | XBC 6 63 84 | 3/13/1972 | 3/13/1973 | 3/13/1972 | 3/13/1973 | $ 500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Blackhawk Area (660): Blackhawk Area 1971- (660) | Insurance Company of North America | GAL 21 08 60 | 3/13/1973 | 3/13/1974 | 3/13/1973 | 3/13/1974 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Blackhawk Area (660): Blackhawk Area 1971- (660) | Insurance Company of North America | XBC 6 63 84 | 3/13/1973 | 3/13/1974 | 3/13/1973 | 3/13/1974 | $ 500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Blackhawk Area (660): Blackhawk Area 1971- (660) | Insurance Company of North America | GAL 21 xx xx | 3/13/1974 | 3/13/1975 | 3/13/1974 | 3/13/1975 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Blackhawk Area (660): Blackhawk Area 1971- (660) | Insurance Company of North America | XBC 6 63 84 | 3/13/1974 | 3/13/1975 | 3/13/1974 | 3/13/1975 | $ 500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Blackhawk Area (660): Blackhawk Area 1971- (660) | Insurance Company of North America | GAL 21 10 26 | 3/13/1975 | 3/13/1976 | 3/13/1975 | 3/13/1976 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Blackhawk Area (660): Blackhawk Area 1971- (660) | Insurance Company of North America | XBC 11 31 12 | 3/13/1975 | 3/13/1976 | 3/13/1975 | 3/13/1976 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Blackhawk Area (660): Blackhawk Area 1971- (660) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 24 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Blackhawk Area (660): Blackhawk Area 1971- (660) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 500,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Blackhawk Area (660): Blackhawk Area 1971- (660) | Insurance Company of North America | GAL 21 10 48 | 3/13/1976 | 3/13/1977 | 3/13/1976 | 3/13/1977 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Blackhawk Area (660): Blackhawk Area 1971- (660) | National Union Fire Insurance Company of Pittsburgh, PA | CE 115 53 39 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Blackhawk Area (660): Blackhawk Area 1971- (660) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219970 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Blackhawk Area (660): Blackhawk Area 1971- (660) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Blackhawk Area (660): Blackhawk Area 1971- (660) | Insurance Company of North America | GAL 21 09 06 | 3/13/1977 | 1/1/1978 | 3/13/1977 | 1/1/1978 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Blue Grass (204): Blue Grass 1963- (204) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Blue Grass (204): Blue Grass 1963- (204) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 51 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Blue Grass (204): Blue Grass 1963- (204) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Blue Grass (204): Blue Grass 1963- (204) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Blue Grass (204): Blue Grass 1963- (204) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219999 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Blue Grass (204): Blue Grass 1963- (204) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Blue Grass (204): Lonesome Pine 1934-1979 (203) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 55 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Blue Grass (204): Lonesome Pine 1934-1979 (203) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Blue Grass (204): Lonesome Pine 1934-1979 (203) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220103 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Blue Grass (204): Lonesome Pine 1934-1979 (203) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Blue Mountain (604): Blue Mountain (604) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 27 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Blue Mountain (604): Blue Mountain (604) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Blue Mountain (604): Blue Mountain (604) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220246 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Blue Mountain (604): Blue Mountain (604) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Blue Ridge (551): Blue Ridge (551) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 59 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Blue Ridge (551): Blue Ridge (551) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Blue Ridge (551): Blue Ridge (551) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220281 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Blue Ridge (551): Blue Ridge (551) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Blue Ridge Mountains (599): Blue Ridge Mountains 1972- (599) | Royal Globe Insurance Company | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Blue Ridge Mountains (599): Blue Ridge Mountains 1972- (599) | Royal Globe Insurance Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Blue Ridge Mountains (599): Blue Ridge Mountains 1972- (599) | Royal Insurance Co. of America | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Blue Ridge Mountains (599): Blue Ridge Mountains 1972- (599) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 13 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Blue Ridge Mountains (599): Blue Ridge Mountains 1972- (599) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Blue Ridge Mountains (599): Blue Ridge Mountains 1972- (599) | Royal Insurance Co. of America | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Blue Ridge Mountains (599): Blue Ridge Mountains 1972- (599) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220234 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Blue Ridge Mountains (599): Blue Ridge Mountains 1972- (599) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Blue Ridge Mountains (599): Piedmont Area 1932-1972 (594) | Insurance Company of North America | LAB 1 72 22 | 4/1/1966 | 4/1/1967 | 4/1/1966 | 4/1/1967 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Blue Ridge Mountains (599): Piedmont Area 1932-1972 (594) | Insurance Company of North America | LAB 1 72 22 | 4/1/1967 | 4/1/1968 | 4/1/1967 | 4/1/1968 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Blue Ridge Mountains (599): Piedmont Area 1932-1972 (594) | Insurance Company of North America | LAB 1 72 22 | 4/1/1968 | 4/1/1969 | 4/1/1968 | 4/1/1969 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Blue Ridge Mountains (599): Piedmont Area 1932-1972 (594) | Insurance Company of North America | LAB 2 21 33 | 4/1/1969 | 4/1/1970 | 4/1/1969 | 4/1/1970 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Blue Ridge Mountains (599): Piedmont Area 1932-1972 (594) | Insurance Company of North America | LAB 2 21 33 | 4/1/1970 | 4/1/1971 | 4/1/1970 | 4/1/1971 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Blue Ridge Mountains (599): Piedmont Area 1932-1972 (594) | Insurance Company of North America | LAB 2 21 33 | 4/1/1971 | 4/1/1972 | 4/1/1971 | 4/1/1972 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Buckeye (436): Buckeye 1958- (436) | American States Insurance Company | CLB41-350 | 12/15/1973 | 12/15/1974 | 12/15/1973 | 12/15/1974 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Buckeye (436): Buckeye 1958- (436) | American States Insurance Company | SU 11399 | 12/15/1973 | 12/15/1974 | 12/15/1973 | 12/15/1974 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | SE |
| Buckeye (436): Buckeye 1958- (436) | Unknown | Unknown | 12/15/1974 | 12/15/1975 | 12/15/1974 | 12/15/1975 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Buckeye (436): Buckeye 1958- (436) | Unknown | Unknown | 12/15/1974 | 12/15/1975 | 12/15/1974 | 12/15/1975 | $ 500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Buckeye (436): Buckeye 1958- (436) | Unknown | Unknown | 12/15/1975 | 12/12/1976 | 12/15/1975 | 12/12/1976 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Buckeye (436): Buckeye 1958- (436) | Unknown | Unknown | 12/15/1975 | 1/1/1976 | 12/15/1975 | 1/1/1976 | $ 500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Buckeye (436): Buckeye 1958- (436) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 95 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Buckeye (436): Buckeye 1958- (436) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Buckeye (436): Buckeye 1958- (436) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220048 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Buckeye (436): Buckeye 1958- (436) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Buckeye (436): Columbiana 1953-1991 (455) | Insurance Company of North America | SBL 50425 | 6/11/1968 | 6/11/1969 | 6/11/1968 | 6/11/1969 | $ | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Buckeye (436): Columbiana 1953-1991 (455) | Insurance Company of North America | SBL 50425 | 6/11/1969 | 6/11/1970 | 6/11/1969 | 6/11/1970 | $ | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Buckeye (436): Columbiana 1953-1991 (455) | Insurance Company of North America | SBL 50425 | 6/11/1970 | 6/11/1971 | 6/11/1970 | 6/11/1971 | $ | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Buckeye (436): Columbiana 1953-1991 (455) | Insurance Company of North America | SBL 51560 | 6/11/1971 | 6/11/1972 | 6/11/1971 | 6/11/1972 | $ | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Buckeye (436): Columbiana 1953-1991 (455) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 03 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Buckeye (436): Columbiana 1953-1991 (455) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Buckeye (436): Columbiana 1953-1991 (455) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220056 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Buckeye (436): Columbiana 1953-1991 (455) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Appalachian 1946-1956 (673) | Insurance Company of North America | SBL 5 04 29 | 7/23/1968 | 7/23/1969 | 7/23/1968 | 7/23/1969 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Appalachian 1946-1956 (673) | Insurance Company of North America | SBL 5 04 29 | 7/23/1969 | 7/23/1970 | 7/23/1969 | 7/23/1970 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Appalachian 1946-1956 (673) | Insurance Company of North America | SBL 5 04 29 | 7/23/1970 | 7/23/1971 | 7/23/1970 | 7/23/1971 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Appalachian 1946-1956 (673) | Insurance Company of North America | SBL 5 13 19 | 7/23/1971 | 12/4/1971 | 7/23/1971 | 12/4/1971 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Appalachian 1956-1986 (707) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Buckskin (617): Appalachian 1956-1986 (707) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Appalachian 1956-1986 (707) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Buckskin (617): Appalachian 1956-1986 (707) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220249 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Appalachian 1956-1986 (707) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Buckskin 1949- (617) | Aetna Casualty and Surety Company | 29AU010580 | 4/10/1966 | 4/10/1967 | 4/10/1966 | 4/10/1967 | $ | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Buckskin (617): Buckskin 1949- (617) | Insurance Company of North America | XBC 22636 | 4/10/1966 | 4/10/1967 | 4/10/1966 | 4/10/1967 | $ 100,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | SE |
| Buckskin (617): Buckskin 1949- (617) | Unknown | Unknown | 4/10/1967 | 4/10/1968 | 4/10/1967 | 4/10/1968 | $ | Unknown | Unknown | Unknown | Unknown | SE |

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Buckskin (617): Buckskin 1949- (617) | Insurance Company of North America | XBC 22636 | 4/10/1967 | 4/10/1968 | 4/10/1967 | 4/10/1968 | $ 100,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Buckskin 1949- (617) | Unknown | Unknown | 4/10/1968 | 4/10/1969 | 4/10/1968 | 4/10/1969 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Buckskin (617): Buckskin 1949- (617) | Insurance Company of North America | XBC 22636 | 4/10/1968 | 4/10/1969 | 4/10/1968 | 4/10/1969 | $ 100,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Buckskin 1949- (617) | Unknown | Unknown | 4/10/1969 | 4/10/1970 | 4/10/1969 | 4/10/1970 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Buckskin (617): Buckskin 1949- (617) | Insurance Company of North America | XBC 2 29 75 | 4/10/1969 | 4/10/1970 | 4/10/1969 | 4/10/1970 | $ 100,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Buckskin 1949- (617) | Unknown | Unknown | 4/10/1970 | 4/10/1971 | 4/10/1970 | 4/10/1971 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Buckskin (617): Buckskin 1949- (617) | Insurance Company of North America | XBC 2 29 75 | 4/10/1970 | 4/10/1971 | 4/10/1970 | 4/10/1971 | $ 100,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Buckskin 1949- (617) | Unknown | Unknown | 4/10/1971 | 4/10/1972 | 4/10/1971 | 4/10/1972 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Buckskin (617): Buckskin 1949- (617) | Insurance Company of North America | XBC 2 29 75 | 4/10/1971 | 4/10/1972 | 4/10/1971 | 4/10/1972 | $ 100,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Buckskin 1949- (617) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 33 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Buckskin 1949- (617) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220250 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Central West Virginia 1941-1990 (616) | Insurance Company of North America | GLP 61 92 32 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Buckskin (617): Central West Virginia 1941-1990 (616) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 32 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Central West Virginia 1941-1990 (616) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 34 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Central West Virginia 1941-1990 (616) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Central West Virginia 1941-1990 (616) | Insurance Company of North America | GLP 65 21 69 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Buckskin (617): Central West Virginia 1941-1990 (616) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220251 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Central West Virginia 1941-1990 (616) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Chief Cornstalk 1954-1990 (756) | Insurance Company of North America | SBL 4 32 79 | 5/29/1970 | 5/29/1971 | 5/29/1970 | 5/29/1971 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Buckskin (617): Chief Cornstalk 1954-1990 (756) | Insurance Company of North America | Unknown | 5/29/1971 | 5/29/1972 | 5/29/1971 | 5/29/1972 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Buckskin (617): Chief Cornstalk 1954-1990 (756) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 38 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Chief Cornstalk 1954-1990 (756) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Chief Cornstalk 1954-1990 (756) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220254 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Chief Cornstalk 1954-1990 (756) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Kootaga Area 1933-1991 (618) | Insurance Company of North America | SBL 4 29 97 | 6/1/1965 | 6/1/1966 | 6/1/1965 | 6/1/1966 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Buckskin (617): Kootaga Area 1933-1991 (618) | Insurance Company of North America | SBL 4 29 97 | 6/1/1966 | 6/1/1967 | 6/1/1966 | 6/1/1967 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Buckskin (617): Kootaga Area 1933-1991 (618) | Insurance Company of North America | SBL 4 29 97 | 6/1/1967 | 6/1/1968 | 6/1/1967 | 6/1/1968 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Buckskin (617): Kootaga Area 1933-1991 (618) | Insurance Company of North America | SBL 5 04 05 | 6/1/1968 | 6/1/1969 | 6/1/1968 | 6/1/1969 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Buckskin (617): Kootaga Area 1933-1991 (618) | Insurance Company of North America | SBL 5 04 05 | 6/1/1969 | 6/1/1970 | 6/1/1969 | 6/1/1970 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Buckskin (617): Kootaga Area 1933-1991 (618) | Insurance Company of North America | SBL 5 04 05 | 6/1/1970 | 6/1/1971 | 6/1/1970 | 6/1/1971 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Kootaga Area 1933-1991 (618) | Insurance Company of North America | SBL 5 15 75 | 6/1/1971 | 6/1/1972 | 6/1/1971 | 6/1/1972 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Kootaga Area 1933-1991 (618) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Buckskin (617): Kootaga Area 1933-1991 (618) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 39 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Kootaga Area 1933-1991 (618) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Kootaga Area 1933-1991 (618) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Buckskin (617): Kootaga Area 1933-1991 (618) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220255 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Kootaga Area 1933-1991 (618) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Tri-State Area 1935-2014 (672) | Insurance Company of North America | SBL 4 29 77 | 4/1/1967 | 4/1/1968 | 4/1/1967 | 4/1/1968 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Buckskin (617): Tri-State Area 1935-2014 (672) | Insurance Company of North America | SBL 4 69 50 | 4/1/1968 | 4/1/1969 | 4/1/1968 | 4/1/1969 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Tri-State Area 1935-2014 (672) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Buckskin (617): Tri-State Area 1935-2014 (672) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 37 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Tri-State Area 1935-2014 (672) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Tri-State Area 1935-2014 (672) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Buckskin (617): Tri-State Area 1935-2014 (672) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220253 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buckskin (617): Tri-State Area 1935-2014 (672) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Bucktail (509): Bucktail (509) | Insurance Company of North America | SBL 43267 | 10/1/1968 | 10/1/1969 | 10/1/1968 | 10/1/1969 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Bucktail (509): Bucktail (509) | Insurance Company of North America | SBL 43267 | 10/1/1969 | 10/1/1970 | 10/1/1969 | 10/1/1970 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Bucktail (509): Bucktail (509) | Insurance Company of North America | SBL 43267 | 10/1/1970 | 10/1/1971 | 10/1/1970 | 10/1/1971 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Bucktail (509): Bucktail (509) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 34 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Bucktail (509): Bucktail (509) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Bucktail (509): Bucktail (509) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220089 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Bucktail (509): Bucktail (509) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Buffalo Trace (156): Buffalo Trace 1955- (156) | Aetna Casualty and Surety Company | Unknown | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Buffalo Trace (156): Buffalo Trace 1955- (156) | Aetna Casualty and Surety Company | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Buffalo Trace (156): Buffalo Trace 1955- (156) | Aetna Casualty and Surety Company | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Buffalo Trace (156): Buffalo Trace 1955- (156) | Aetna Casualty and Surety Company | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Buffalo Trace (156): Buffalo Trace 1955- (156) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 30 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buffalo Trace (156): Buffalo Trace 1955- (156) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buffalo Trace (156): Buffalo Trace 1955- (156) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219976 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buffalo Trace (156): Buffalo Trace 1955- (156) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Buffalo Trail (567): Buffalo Trail (567) | Insurance Company of North America | SBL 45419 | 7/13/1968 | 7/13/1969 | 7/13/1968 | 7/13/1969 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Buffalo Trail (567): Buffalo Trail (567) | Insurance Company of North America | SBL 45422 | 7/13/1969 | 7/13/1970 | 7/13/1969 | 7/13/1970 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Buffalo Trail (567): Buffalo Trail (567) | Insurance Company of North America | Unknown | 7/13/1970 | 7/13/1971 | 7/13/1970 | 7/13/1971 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Buffalo Trail (567): Buffalo Trail (567) | Insurance Company of North America | Unknown | 7/13/1971 | 7/13/1972 | 7/13/1971 | 7/13/1972 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Buffalo Trail (567): Buffalo Trail (567) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Buffalo Trail (567): Buffalo Trail (567) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 83 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buffalo Trail (567): Buffalo Trail (567) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buffalo Trail (567): Buffalo Trail (567) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Buffalo Trail (567): Buffalo Trail (567) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220224 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Buffalo Trail (567): Buffalo Trail (567) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Caddo Area (584): Caddo Area (584) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Caddo Area (584): Caddo Area (584) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 89 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Caddo Area (584): Caddo Area (584) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Caddo Area (584): Caddo Area (584) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Caddo Area (584): Caddo Area (584) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220230 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Caddo Area (584): Caddo Area (584) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Calcasieu Area (209): Calcasieu Area (209) | Insurance Company of North America | SBL 51302 | 11/26/1969 | 11/26/1970 | 11/26/1969 | 11/26/1970 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Calcasieu Area (209): Calcasieu Area (209) | Insurance Company of North America | SBL 51302 | 11/26/1970 | 11/26/1971 | 11/26/1970 | 11/26/1971 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Calcasieu Area (209): Calcasieu Area (209) | Insurance Company of North America | SBL 51302 | 11/26/1971 | 11/26/1972 | 11/26/1971 | 11/26/1972 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Calcasieu Area (209): Calcasieu Area (209) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Calcasieu Area (209): Calcasieu Area (209) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 59 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Calcasieu Area (209): Calcasieu Area (209) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Calcasieu Area (209): Calcasieu Area (209) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Calcasieu Area (209): Calcasieu Area (209) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220107 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Calcasieu Area (209): Calcasieu Area (209) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| California Inland Empire (45): Arrowhead Area 1933-1972 (48) | Insurance Company of North America | SBL 2 28 54 | 5/17/1965 | 5/17/1966 | 5/17/1965 | 5/17/1966 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| California Inland Empire (45): Arrowhead Area 1933-1972 (48) | Insurance Company of North America | SBL 2 28 54 | 5/17/1966 | 5/17/1967 | 5/17/1966 | 5/17/1967 | $ | Unknown | Unknown | Unknown | Unknown | SE |

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE)* |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| California Inland Empire (45): Arrowhead Area 1933-1972 (48) | Insurance Company of North America | SBL 2 28 54 | 5/17/1967 | 5/17/1968 | 5/17/1967 | 5/17/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| California Inland Empire (45): Arrowhead Area 1933-1972 (48) | Insurance Company of North America | SBL 4 59 02 | 5/17/1968 | 5/17/1969 | 5/17/1968 | 5/17/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| California Inland Empire (45): Arrowhead Area 1933-1972 (48) | Insurance Company of North America | SBL 4 59 02 | 5/17/1969 | 5/17/1970 | 5/17/1969 | 5/17/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| California Inland Empire (45): Arrowhead Area 1933-1972 (48) | Insurance Company of North America | SBL 4 59 02 | 5/17/1970 | 5/17/1971 | 5/17/1970 | 5/17/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| California Inland Empire (45): Arrowhead Area 1933-1972 (48) | Insurance Company of North America | Unknown | 5/17/1971 | 5/17/1972 | 5/17/1971 | 5/17/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| California Inland Empire (45): California Inland Empire 1972- (45) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| California Inland Empire (45): California Inland Empire 1972- (45) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 46 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| California Inland Empire (45): California Inland Empire 1972- (45) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| California Inland Empire (45): California Inland Empire 1972- (45) | New Hampshire Insurance Company | GLA 332382 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| California Inland Empire (45): California Inland Empire 1972- (45) | Ambassador Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 50,000.00 | $ 450,000.00 | $ 450,000.00 | Unknown | Unknown | SE |
| California Inland Empire (45): California Inland Empire 1972- (45) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1239894 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| California Inland Empire (45): California Inland Empire 1972- (45) | New Hampshire Insurance Company | GLA 332383 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| California Inland Empire (45): California Inland Empire 1972- (45) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| California Inland Empire (45): Grayback 1952-1974 (24) | Insurance Company of North America | SBL 4 53 77 | 1/10/1966 | 1/10/1967 | 1/10/1966 | 1/10/1967 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| California Inland Empire (45): Grayback 1952-1974 (24) | Insurance Company of North America | SBL 4 53 77 | 1/10/1967 | 1/10/1968 | 1/10/1967 | 1/10/1968 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| California Inland Empire (45): Grayback 1952-1974 (24) | Insurance Company of North America | SBL 4 53 77 | 1/10/1968 | 1/9/1969 | 1/10/1968 | 1/9/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| California Inland Empire (45): Grayback 1952-1974 (24) | Insurance Company of North America | SBL 50438 | 1/10/1969 | 1/10/1970 | 1/10/1969 | 1/10/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| California Inland Empire (45): Grayback 1952-1974 (24) | Insurance Company of North America | SBL 50438 | 1/10/1970 | 1/10/1971 | 1/10/1970 | 1/10/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| California Inland Empire (45): Grayback 1952-1974 (24) | Insurance Company of North America | SBL 50438 | 1/10/1971 | 1/10/1972 | 1/10/1971 | 1/10/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Cape Cod and Islands (224): Cape Cod 1925-1981 (224) | Insurance Company of North America | AGP-2-10-34 | 10/21/1969 | 10/21/1970 | 10/21/1969 | 10/21/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cape Cod and Islands (224): Cape Cod 1925-1981 (224) | Insurance Company of North America | Unknown | 10/21/1970 | 10/21/1971 | 10/21/1970 | 10/21/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cape Cod and Islands (224): Cape Cod 1925-1981 (224) | Insurance Company of North America | Unknown | 10/21/1971 | 6/3/1972 | 10/21/1971 | 6/3/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cape Cod and Islands (224): Cape Cod 1925-1981 (224) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 75 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cape Cod and Islands (224): Cape Cod 1925-1981 (224) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cape Cod and Islands (224): Cape Cod 1925-1981 (224) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220125 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cape Cod and Islands (224): Cape Cod 1925-1981 (224) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Cape Fear (425): Cape Fear Area 1930-1989 (425) | Unknown | Unknown | 1/1/1958 | 1/1/1959 | 1/1/1958 | 1/1/1959 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cape Fear (425): Cape Fear Area 1930-1989 (425) | Unknown | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cape Fear (425): Cape Fear Area 1930-1989 (425) | Unknown | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cape Fear (425): Cape Fear Area 1930-1989 (425) | Unknown | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cape Fear (425): Cape Fear Area 1930-1989 (425) | Insurance Company of North America | Unknown | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cape Fear (425): Cape Fear Area 1930-1989 (425) | Insurance Company of North America | Unknown | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cape Fear (425): Cape Fear Area 1930-1989 (425) | Insurance Company of North America | Unknown | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cape Fear (425): Cape Fear Area 1930-1989 (425) | Insurance Company of North America | Unknown | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cape Fear (425): Cape Fear Area 1930-1989 (425) | Insurance Company of North America | Unknown | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cape Fear (425): Cape Fear Area 1930-1989 (425) | Insurance Company of North America | Unknown | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cape Fear (425): Cape Fear Area 1930-1989 (425) | Insurance Company of North America | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cape Fear (425): Cape Fear Area 1930-1989 (425) | Insurance Company of North America | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cape Fear (425): Cape Fear Area 1930-1989 (425) | Insurance Company of North America | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cape Fear (425): Cape Fear Area 1930-1989 (425) | Insurance Company of North America | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cape Fear (425): Cape Fear Area 1930-1989 (425) | Insurance Company of North America | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cape Fear (425): Cape Fear Area 1930-1989 (425) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 90 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cape Fear (425): Cape Fear Area 1930-1989 (425) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cape Fear (425): Cape Fear Area 1930-1989 (425) | Insurance Company of North America | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cape Fear (425): Cape Fear Area 1930-1989 (425) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220044 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cape Fear (425): Cape Fear Area 1930-1989 (425) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Capitol Area (564): Capitol Area (564) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Capitol Area (564): Capitol Area (564) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 72 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Capitol Area (564): Capitol Area (564) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Capitol Area (564): Capitol Area (564) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | $ 50,000.00 | $ 50,000.00 | Unknown | Unknown | SE |
| Capitol Area (564): Capitol Area (564) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220203 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Capitol Area (564): Capitol Area (564) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Cascade Pacific (492): Cascade Area 1926-1993 (493) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 30 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cascade Pacific (492): Cascade Area 1926-1993 (493) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cascade Pacific (492): Cascade Area 1926-1993 (493) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220084 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cascade Pacific (492): Cascade Area 1926-1993 (493) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) | General Insurance Company of America | CP 209181 | 11/15/1968 | 11/15/1969 | 11/15/1968 | 11/15/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) | General Insurance Company of America | CP 209181 | 11/15/1969 | 11/15/1970 | 11/15/1969 | 11/15/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) | General Insurance Company of America | CP 209181 | 11/15/1970 | 11/15/1971 | 11/15/1970 | 11/15/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) | Maryland Casualty Company | 36307295 | 7/1/1975 | 7/1/1976 | 7/1/1975 | 7/1/1976 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) | Maryland Casualty Company | 3830-72-95 | 7/1/1975 | 7/1/1976 | 7/1/1975 | 7/1/1976 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 29 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) | Maryland Casualty Company | 36307295 | 7/1/1976 | 7/1/1977 | 7/1/1976 | 7/1/1977 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) | Maryland Casualty Company | 3830-72-95 | 7/1/1976 | 7/1/1977 | 7/1/1976 | 7/1/1977 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220083 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) | Maryland Casualty Company | 36307295 | 7/1/1977 | 7/1/1978 | 7/1/1977 | 7/1/1978 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) | Maryland Casualty Company | 3830-72-95 | 7/1/1977 | 7/1/1978 | 7/1/1977 | 7/1/1978 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Cascade Pacific (492): Portland Area 1925-1966 (492) | American Employers' Insurance Company | CL 562971 | 4/16/1945 | 4/16/1946 | 4/16/1945 | 4/16/1946 | $ - | $ 50,000.00 | $ 50,000.00 | Unknown | Unknown | SE |
| Cascade Pacific (492): Portland Area 1925-1966 (492) | American Employers' Insurance Company | CL 562971 | 4/16/1946 | 4/16/1947 | 4/16/1946 | 4/16/1947 | $ - | $ 50,000.00 | $ 50,000.00 | Unknown | Unknown | SE |
| Cascade Pacific (492): Portland Area 1925-1966 (492) | American Employers' Insurance Company | CL 562971 | 4/16/1947 | 4/16/1948 | 4/16/1947 | 4/16/1948 | $ - | $ 50,000.00 | $ 50,000.00 | Unknown | Unknown | SE |
| Cascade Pacific (492): Portland Area 1925-1966 (492) | General Casualty Company of America | BLP 38642 | 11/15/1947 | 11/15/1948 | 11/15/1947 | 11/15/1948 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Cascade Pacific (492): Portland Area 1925-1966 (492) | General Casualty Company of America | BLP 38642 | 11/15/1948 | 11/15/1949 | 11/15/1948 | 11/15/1949 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Cascade Pacific (492): Portland Area 1925-1966 (492) | General Casualty Company of America | BLP 38642 | 11/15/1949 | 11/15/1950 | 11/15/1949 | 11/15/1950 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Cascade Pacific (492): Portland Area 1925-1966 (492) | General Casualty Company of America | BLP 67048 | 11/15/1950 | 11/15/1951 | 11/15/1950 | 11/15/1951 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Cascade Pacific (492): Portland Area 1925-1966 (492) | General Casualty Company of America | BLP 67048 | 11/15/1951 | 11/15/1952 | 11/15/1951 | 11/15/1952 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Cascade Pacific (492): Portland Area 1925-1966 (492) | General Casualty Company of America | BLP 67048 | 11/15/1952 | 11/15/1953 | 11/15/1952 | 11/15/1953 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Cascade Pacific (492): Portland Area 1925-1966 (492) | General Casualty Company of America | BLP 24550 | 11/15/1953 | 11/15/1954 | 11/15/1953 | 11/15/1954 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Cascade Pacific (492): Portland Area 1925-1966 (492) | General Casualty Company of America | BLP 24550 | 11/15/1954 | 11/15/1955 | 11/15/1954 | 11/15/1955 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Cascade Pacific (492): Portland Area 1925-1966 (492) | General Casualty Company of America | BLP 24550 | 11/15/1955 | 11/15/1956 | 11/15/1955 | 11/15/1956 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Cascade Pacific (492): Portland Area 1925-1966 (492) | General Insurance Company of America | Unknown | 11/15/1956 | 11/15/1957 | 11/15/1956 | 11/15/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cascade Pacific (492): Portland Area 1925-1966 (492) | General Insurance Company of America | Unknown | 11/1/1957 | 11/1/1958 | 11/1/1957 | 11/1/1958 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cascade Pacific (492): Portland Area 1925-1966 (492) | General Insurance Company of America | Unknown | 11/15/1958 | 11/15/1959 | 11/15/1958 | 11/15/1959 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cascade Pacific (492): Portland Area 1925-1966 (492) | General Insurance Company of America | Unknown | 11/15/1959 | 11/15/1960 | 11/15/1959 | 11/15/1960 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cascade Pacific (492): Portland Area 1925-1966 (492) | General Insurance Company of America | Unknown | 11/15/1960 | 11/15/1961 | 11/15/1960 | 11/15/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cascade Pacific (492): Portland Area 1925-1966 (492) | General Insurance Company of America | Unknown | 11/15/1961 | 11/15/1962 | 11/15/1961 | 11/15/1962 | $ - | Unknown | Unknown | Unknown | Unknown | SE |

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cascade Pacific (492): Portland Area 1925-1966 (492) | General Insurance Company of America | Unknown | 11/15/1962 | 11/15/1963 | 11/15/1962 | 11/15/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cascade Pacific (492): Portland Area 1925-1966 (492) | General Insurance Company of America | Unknown | 11/15/1963 | 11/15/1964 | 11/15/1963 | 11/15/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cascade Pacific (492): Portland Area 1925-1966 (492) | General Insurance Company of America | Unknown | 11/15/1964 | 11/15/1965 | 11/15/1964 | 11/15/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cascade Pacific (492): Portland Area 1925-1966 (492) | General Insurance Company of America | BLP 264175 | 11/15/1965 | 11/15/1966 | 11/15/1965 | 11/15/1966 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Cascade Pacific (492): Portland Area 1925-1966 (492) | General Insurance Company of America | BLP 264175 | 11/15/1966 | 11/15/1967 | 11/15/1966 | 11/15/1967 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Cascade Pacific (492): Portland Area 1925-1966 (492) | General Insurance Company of America | BLP 264175 | 11/15/1967 | 11/15/1968 | 11/15/1967 | 11/15/1968 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Catalina (11): Catalina 1963- (11) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Catalina (11): Catalina 1963- (11) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Catalina (11): Catalina 1963- (11) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 21 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Catalina (11): Catalina 1963- (11) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Catalina (11): Catalina 1963- (11) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 5/8/1977 | 1/1/1977 | 5/8/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Catalina (11): Catalina 1963- (11) | Ambassador Insurance Company | Unknown | 1/1/1977 | 5/8/1977 | 1/1/1977 | 5/8/1977 | $ 50,000.00 | $ 450,000.00 | $ 450,000.00 | Unknown | Unknown | SE |
| Catalina (11): Catalina 1963- (11) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219870 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Catalina (11): Catalina 1963- (11) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Catalina (11): Catalina 1963- (11) | New Hampshire Insurance Company | GLA 282523 | 5/8/1977 | 5/1/1978 | 5/8/1977 | 5/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Catalina (11): Catalina 1963- (11) | Ambassador Insurance Company | Unknown | 5/8/1977 | 5/8/1978 | 5/8/1977 | 5/8/1978 | $ 50,000.00 | $ 450,000.00 | $ 450,000.00 | Unknown | Unknown | SE |
| Catalina (11): Catalina 1963- (11) | New Hampshire Insurance Company | GLA 282526 | 5/8/1977 | 5/8/1978 | 5/8/1977 | 5/8/1978 | $ 50,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Catalina (11): Catalina 1963- (11) | New Hampshire Insurance Company | GLA 282527 | 5/8/1977 | 5/8/1978 | 5/8/1977 | 5/8/1978 | $ 500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Central Florida (83): Central Florida (83) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 80 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Central Florida (83): Central Florida (83) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Central Florida (83): Central Florida (83) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219928 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Central Florida (83): Central Florida (83) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Central Georgia (96): Central Georgia (96) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 93 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Central Georgia (96): Central Georgia (96) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Central Georgia (96): Central Georgia (96) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219941 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Central Georgia (96): Central Georgia (96) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Central Minnesota (296): Central Minnesota (296) | Insurance Company of North America | SBL 5 04 26 | 8/5/1968 | 8/5/1969 | 8/5/1968 | 8/5/1969 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Central Minnesota (296): Central Minnesota (296) | Insurance Company of North America | SBL 5 04 26 | 8/5/1969 | 8/5/1970 | 8/5/1969 | 8/5/1970 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Central Minnesota (296): Central Minnesota (296) | Insurance Company of North America | SBL 5 04 26 | 8/5/1970 | 8/5/1971 | 8/5/1970 | 8/5/1971 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Central Minnesota (296): Central Minnesota (296) | Insurance Company of North America | Unknown | 8/5/1971 | 8/5/1972 | 8/5/1971 | 8/5/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Central Minnesota (296): Central Minnesota (296) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 03 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Central Minnesota (296): Central Minnesota (296) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Central Minnesota (296): Central Minnesota (296) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220153 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Central Minnesota (296): Central Minnesota (296) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Central North Carolina (416): Central North Carolina (416) | Unknown | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Central North Carolina (416): Central North Carolina (416) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 81 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Central North Carolina (416): Central North Carolina (416) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Central North Carolina (416): Central North Carolina (416) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220034 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Central North Carolina (416): Central North Carolina (416) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Chattahoochee (91): Chattahoochee 1964- (91) | Unknown | LAZ 41971 | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chattahoochee (91): Chattahoochee 1964- (91) | Unknown | LAZ 5226444 | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chattahoochee (91): Chattahoochee 1964- (91) | Unknown | Unknown | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chattahoochee (91): Chattahoochee 1964- (91) | Unknown | Unknown | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chattahoochee (91): Chattahoochee 1964- (91) | Unknown | Unknown | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chattahoochee (91): Chattahoochee 1964- (91) | Unknown | Unknown | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chattahoochee (91): Chattahoochee 1964- (91) | Unknown | Unknown | 1/1/1972 | 4/1/1972 | 1/1/1972 | 4/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chattahoochee (91): Chattahoochee 1964- (91) | Unknown | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chattahoochee (91): Chattahoochee 1964- (91) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Chattahoochee (91): Chattahoochee 1964- (91) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 91 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Chattahoochee (91): Chattahoochee 1964- (91) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Chattahoochee (91): Chattahoochee 1964- (91) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chattahoochee (91): Chattahoochee 1964- (91) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219939 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Chattahoochee (91): Chattahoochee 1964- (91) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Chattahoochee (91): George H. Lanier 1950-1989 (94) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 99 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Chattahoochee (91): George H. Lanier 1950-1989 (94) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Chattahoochee (91): George H. Lanier 1950-1989 (94) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219946 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Chattahoochee (91): George H. Lanier 1950-1989 (94) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Chattahoochee (91): Georgia-Alabama 1934-1964 (91) | Unknown | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chattahoochee (91): Georgia-Alabama 1934-1964 (91) | Unknown | Unknown | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cherokee Area (469): Cherokee Area (469) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cherokee Area (469): Cherokee Area (469) | Unknown | Unknown | 1/1/1957 | 1/1/1958 | 1/1/1957 | 1/1/1958 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cherokee Area (469): Cherokee Area (469) | Unknown | Unknown | 1/1/1958 | 1/1/1959 | 1/1/1958 | 1/1/1959 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cherokee Area (469): Cherokee Area (469) | Unknown | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cherokee Area (469): Cherokee Area (469) | Unknown | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cherokee Area (469): Cherokee Area (469) | Unknown | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cherokee Area (469): Cherokee Area (469) | Unknown | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cherokee Area (469): Cherokee Area (469) | Unknown | Unknown | 1/1/1963 | 1/1/1964 | 1/1/1963 | 1/1/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cherokee Area (469): Cherokee Area (469) | Unknown | Unknown | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cherokee Area (469): Cherokee Area (469) | Unknown | Unknown | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cherokee Area (469): Cherokee Area (469) | Unknown | Unknown | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cherokee Area (469): Cherokee Area (469) | Unknown | Unknown | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cherokee Area (469): Cherokee Area (469) | Unknown | Unknown | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cherokee Area (469): Cherokee Area (469) | Unknown | Unknown | 1/1/1969 | 7/5/1969 | 1/1/1969 | 7/5/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cherokee Area (469): Cherokee Area (469) | Insurance Company of North America | SBL 51195 | 7/5/1969 | 7/5/1970 | 7/5/1969 | 7/5/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cherokee Area (469): Cherokee Area (469) | Insurance Company of North America | SBL 51195 | 7/5/1970 | 7/5/1971 | 7/5/1970 | 7/5/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cherokee Area (469): Cherokee Area (469) | Insurance Company of North America | SBL 51195 | 7/5/1971 | 7/5/1972 | 7/5/1971 | 7/5/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cherokee Area (469): Cherokee Area (469) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 18 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cherokee Area (469): Cherokee Area (469) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cherokee Area (469): Cherokee Area (469) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Cherokee Area (556): Cherokee Area (556) | Insurance Company of North America | SBL 45397 | 3/17/1967 | 3/17/1968 | 3/17/1967 | 3/17/1968 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cherokee Area (556): Cherokee Area (556) | Insurance Company of North America | SBL 45397 | 3/17/1968 | 3/17/1969 | 3/17/1968 | 3/17/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cherokee Area (556): Cherokee Area (556) | Insurance Company of North America | SBL 45397 | 3/17/1969 | 3/17/1970 | 3/17/1969 | 3/17/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cherokee Area (556): Cherokee Area (556) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 64 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cherokee Area (556): Cherokee Area (556) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cherokee Area (556): Cherokee Area (556) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220072 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cherokee Area (556): Cherokee Area (556) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220286 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cherokee Area (556): Cherokee Area (556) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE)* |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chester County (539): Chester County (539) | Unknown | unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chester County (539): Chester County (539) | Unknown | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chester County (539): Chester County (539) | Insurance Company of North America | OLT 74 48 58 | 1/1/1963 | 1/1/1964 | 1/1/1963 | 1/1/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chester County (539): Chester County (539) | Insurance Company of North America | SBL 4-29-68 | 3/11/1965 | 3/11/1966 | 3/11/1965 | 3/11/1966 | $ - | Unknown | Unknown | Unknown | Unknown | PE |
| Chester County (539): Chester County (539) | Insurance Company of North America | SBL 4 36 81 | 3/11/1966 | 3/11/1967 | 3/11/1966 | 3/11/1967 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Chester County (539): Chester County (539) | Insurance Company of North America | SBL 4 36 81 | 3/11/1967 | 3/11/1968 | 3/11/1967 | 3/11/1968 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Chester County (539): Chester County (539) | Insurance Company of North America | SBL 4 36 81 | 3/11/1968 | 3/11/1969 | 3/11/1968 | 3/11/1969 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Chester County (539): Chester County (539) | Insurance Company of North America | SBL 4 42 98 | 3/11/1969 | 3/11/1970 | 3/11/1969 | 3/11/1970 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Chester County (539): Chester County (539) | Insurance Company of North America | SBL 53213 | 3/11/1970 | 3/11/1971 | 3/11/1970 | 3/11/1971 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Chester County (539): Chester County (539) | Insurance Company of North America | SBL 5 32 52 | 3/11/1971 | 3/11/1972 | 3/11/1971 | 3/11/1972 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Chester County (539): Chester County (539) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chester County (539): Chester County (539) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 50 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Chester County (539): Chester County (539) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Chester County (539): Chester County (539) | American Universal Insurance Company | AXTPL 5318 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chester County (539): Chester County (539) | New Hampshire Insurance Company | GLA 332358 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chester County (539): Chester County (539) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220272 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Chester County (539): Chester County (539) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Chickasaw (558): Chickasaw 1916- (558) | Maryland Casualty Company | 96-224611 | 1/1/1963 | 1/1/1964 | 1/1/1963 | 1/1/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chickasaw (558): Chickasaw 1916- (558) | Maryland Casualty Company | Unknown | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chickasaw (558): Chickasaw 1916- (558) | Maryland Casualty Company | Unknown | 1/1/1965 | 8/1/1965 | 1/1/1965 | 8/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chickasaw (558): Chickasaw 1916- (558) | Insurance Company of North America | SBL 4 53 64 | 8/1/1965 | 8/1/1966 | 8/1/1965 | 8/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chickasaw (558): Chickasaw 1916- (558) | Insurance Company of North America | SBL 4 53 64 | 8/1/1966 | 8/1/1967 | 8/1/1966 | 8/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chickasaw (558): Chickasaw 1916- (558) | Insurance Company of North America | SBL 4 53 64 | 8/1/1967 | 8/1/1968 | 8/1/1967 | 8/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chickasaw (558): Chickasaw 1916- (558) | Insurance Company of North America | SBL 5 04 15 | 8/1/1968 | 8/1/1969 | 8/1/1968 | 8/1/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Chickasaw (558): Chickasaw 1916- (558) | Insurance Company of North America | SBL 5 04 15 | 8/1/1969 | 8/1/1970 | 8/1/1969 | 8/1/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Chickasaw (558): Chickasaw 1916- (558) | Insurance Company of North America | SBL 5 04 15 | 8/1/1970 | 8/1/1971 | 8/1/1970 | 8/1/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Chickasaw (558): Chickasaw 1916- (558) | Insurance Company of North America | SBL 52766 | 8/1/1971 | 8/1/1972 | 8/1/1971 | 8/1/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Chickasaw (558): Chickasaw 1916- (558) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 68 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Chickasaw (558): Chickasaw 1916- (558) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220290 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Chickasaw (558): Delta Area 1924-1993 (300) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 05 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Chickasaw (558): Delta Area 1924-1993 (300) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Chickasaw (558): Delta Area 1924-1993 (300) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220155 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Chickasaw (558): Delta Area 1924-1993 (300) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Chief Cornplanter (538): Chief Cornplanter 1952- (538) | New Hampshire Insurance Company | SLP 29-02-40 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Chief Cornplanter (538): Chief Cornplanter 1952- (538) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 49 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Chief Cornplanter (538): Chief Cornplanter 1952- (538) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Chief Cornplanter (538): Chief Cornplanter 1952- (538) | New Hampshire Insurance Company | SLP 29-02-40 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Chief Cornplanter (538): Chief Cornplanter 1952- (538) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220271 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Chief Cornplanter (538): Chief Cornplanter 1952- (538) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Chief Seattle (609): Chief Seattle 1954- (609) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chief Seattle (609): Chief Seattle 1954- (609) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chief Seattle (609): Chief Seattle 1954- (609) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chief Seattle (609): Chief Seattle 1954- (609) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chief Seattle (609): Chief Seattle 1954- (609) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1976 | 12/31/1976 | 1/1/1976 | 12/31/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Chief Seattle (609): Chief Seattle 1954- (609) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 24 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Chief Seattle (609): Chief Seattle 1954- (609) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Chief Seattle (609): Chief Seattle 1954- (609) | St. Paul Fire and Marine Insurance Company | 58486378 | 12/31/1976 | 12/31/1977 | 12/31/1976 | 12/31/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Chief Seattle (609): Chief Seattle 1954- (609) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220243 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Chief Seattle (609): Chief Seattle 1954- (609) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Chief Seattle (609): Chief Seattle 1954- (609) | St. Paul Fire and Marine Insurance Company | Unknown | 12/31/1977 | 12/31/1978 | 12/31/1977 | 12/31/1978 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Chippewa Valley (637): Chippewa Valley (637) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 42 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Chippewa Valley (637): Chippewa Valley (637) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Chippewa Valley (637): Chippewa Valley (637) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220258 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Chippewa Valley (637): Chippewa Valley (637) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Choctaw Area (302): Choctaw Area (302) | Insurance Company of North America | SBL 4 29 67 | 3/15/1965 | 3/15/1966 | 3/15/1965 | 3/15/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Choctaw Area (302): Choctaw Area (302) | Insurance Company of North America | SBL 4 29 67 | 3/15/1966 | 3/15/1967 | 3/15/1966 | 3/15/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Choctaw Area (302): Choctaw Area (302) | Insurance Company of North America | SBL 4 29 67 | 3/15/1967 | 3/15/1968 | 3/15/1967 | 3/15/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Choctaw Area (302): Choctaw Area (302) | Insurance Company of North America | SBL 4 69 17 | 3/15/1968 | 3/15/1969 | 3/15/1968 | 3/15/1969 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Choctaw Area (302): Choctaw Area (302) | Insurance Company of North America | SBL 4 69 17 | 3/15/1969 | 3/15/1970 | 3/15/1969 | 3/15/1970 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Choctaw Area (302): Choctaw Area (302) | Insurance Company of North America | SBL 4 69 17 | 3/15/1970 | 3/15/1971 | 3/15/1970 | 3/15/1971 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Choctaw Area (302): Choctaw Area (302) | Insurance Company of North America | Unknown | 3/15/1971 | 3/15/1972 | 3/15/1971 | 3/15/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Choctaw Area (302): Choctaw Area (302) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Choctaw Area (302): Choctaw Area (302) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 09 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Choctaw Area (302): Choctaw Area (302) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Choctaw Area (302): Choctaw Area (302) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220158 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Choctaw Area (302): Choctaw Area (302) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Choctaw Area (302): Choctaw Area (302) | Jefferson Insurance Company of New York | JE 66157 | 3/1/1977 | 3/1/1978 | 3/1/1977 | 3/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Choctaw Area (302): Choctaw Area (302) | New Hampshire Insurance Company | GLA 282465 | 3/1/1977 | 3/1/1978 | 3/1/1977 | 3/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Choctaw Area (302): Choctaw Area (302) | Ambassador Insurance Company | Unknown | 3/1/1977 | 3/1/1978 | 3/1/1977 | 3/1/1978 | $ 50,000.00 | $ 450,000.00 | $ 450,000.00 | Unknown | Unknown | PE |
| Cimarron (474): Great Salt Plains 1927-2000 (474) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 20 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cimarron (474): Great Salt Plains 1927-2000 (474) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cimarron (474): Great Salt Plains 1927-2000 (474) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220273 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cimarron (474): Great Salt Plains 1927-2000 (474) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Cimarron (474): Will Rogers 1948-2000 (473) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 24 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cimarron (474): Will Rogers 1948-2000 (473) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cimarron (474): Will Rogers 1948-2000 (473) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220077 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cimarron (474): Will Rogers 1948-2000 (473) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Circle Ten (571): Circle Ten 1913- (571) | Insurance Company of North America | SBL 4 54 35 | 7/1/1971 | 7/1/1972 | 7/1/1971 | 7/1/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Circle Ten (571): Circle Ten 1913- (571) | Allied Insurance Company | Unknown | 7/1/1972 | 7/1/1973 | 7/1/1972 | 7/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Circle Ten (571): Circle Ten 1913- (571) | Allied Insurance Company | Unknown | 7/1/1973 | 1/1/1974 | 7/1/1973 | 1/1/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Circle Ten (571): Circle Ten 1913- (571) | Allied Insurance Company | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Circle Ten (571): Circle Ten 1913- (571) | Allied Insurance Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Circle Ten (571): Circle Ten 1913- (571) | American Fire & Casualty Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ 500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Circle Ten (571): Circle Ten 1913- (571) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Circle Ten (571): Circle Ten 1913- (571) | Allied Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Circle Ten (571): Circle Ten 1913- (571) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 76 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Circle Ten (571): Circle Ten 1913- (571) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Circle Ten (571): Circle Ten 1913- (571) | Allied Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | | Unknown | Unknown | Unknown | Unknown | SE |
| Circle Ten (571): Circle Ten 1913- (571) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220207 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Circle Ten (571): Circle Ten 1913- (571) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Circle Ten (571): NeTseO Trails 1955-2017 (580) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 85 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Circle Ten (571): NeTseO Trails 1955-2017 (580) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Circle Ten (571): NeTseO Trails 1955-2017 (580) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220216 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Circle Ten (571): NeTseO Trails 1955-2017 (580) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Circle Ten (571): Texoma Valley 1966-1993 (566) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 88 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Circle Ten (571): Texoma Valley 1966-1993 (566) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Circle Ten (571): Texoma Valley 1966-1993 (566) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220219 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Circle Ten (571): Texoma Valley 1966-1993 (566) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Coastal Carolina (550): Coastal Carolina (550) | Insurance Company of North America | SBL S 02 31 | 6/7/1968 | 6/7/1969 | 6/7/1968 | 6/7/1969 | | Unknown | Unknown | Unknown | Unknown | SE |
| Coastal Carolina (550): Coastal Carolina (550) | Insurance Company of North America | SBL S 10 71 | 6/7/1969 | 6/7/1970 | 6/7/1969 | 6/7/1970 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | SE |
| Coastal Carolina (550): Coastal Carolina (550) | Insurance Company of North America | SBL S 26 62 | 6/7/1970 | 6/7/1971 | 6/7/1970 | 6/7/1971 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Coastal Carolina (550): Coastal Carolina (550) | Insurance Company of North America | SBL S 36 40 | 6/7/1971 | 6/7/1972 | 6/7/1971 | 6/7/1972 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Coastal Carolina (550): Coastal Carolina (550) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 56 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Coastal Carolina (550): Coastal Carolina (550) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Coastal Carolina (550): Coastal Carolina (550) | Continental Insurance Company | CCP 3012802 | 7/9/1976 | 7/9/1977 | 7/9/1976 | 7/9/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Coastal Carolina (550): Coastal Carolina (550) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220278 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Coastal Carolina (550): Coastal Carolina (550) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Coastal Georgia (99): Coastal Empire -2014 (99) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 95 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Coastal Georgia (99): Coastal Empire -2014 (99) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Coastal Georgia (99): Coastal Empire -2014 (99) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219943 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Coastal Georgia (99): Coastal Empire -2014 (99) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Coastal Georgia (99): Coastal Empire -2014 (99) | Hartford Fire Insurance Company | 20 58M US2073 | 1/1/2007 | 1/1/2008 | 1/1/2007 | 1/1/2008 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Coastal Georgia (99): Coastal Empire -2014 (99) | Hartford Fire Insurance Company | 20 58M US2073 | 1/1/2007 | 1/1/2008 | 1/1/2007 | 1/1/2008 | $ 1,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Coastal Georgia (99): Okefenokee Area 1926-2014 (758) | Insurance Company of North America | SBL 51393 | 7/1/1970 | 7/1/1971 | 7/1/1970 | 7/1/1971 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Coastal Georgia (99): Okefenokee Area 1926-2014 (758) | Insurance Company of North America | SBL 51393 | 7/1/1971 | 7/1/1972 | 7/1/1971 | 7/1/1972 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Coastal Georgia (99): Okefenokee Area 1926-2014 (758) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Coastal Georgia (99): Okefenokee Area 1926-2014 (758) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 98 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Coastal Georgia (99): Okefenokee Area 1926-2014 (758) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Coastal Georgia (99): Okefenokee Area 1926-2014 (758) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Coastal Georgia (99): Okefenokee Area 1926-2014 (758) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219945 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Coastal Georgia (99): Okefenokee Area 1926-2014 (758) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Colonial Virginia (595): Old Dominion Area 1927-1992 (601) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Colonial Virginia (595): Old Dominion Area 1927-1992 (601) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 15 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Colonial Virginia (595): Old Dominion Area 1927-1992 (601) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Colonial Virginia (595): Old Dominion Area 1927-1992 (601) | Crum & Forster | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Colonial Virginia (595): Old Dominion Area 1927-1992 (601) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220236 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Colonial Virginia (595): Old Dominion Area 1927-1992 (601) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Colonial Virginia (595): Peninsula 1929-1992 (595) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Colonial Virginia (595): Peninsula 1929-1992 (595) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 09 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Colonial Virginia (595): Peninsula 1929-1992 (595) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Colonial Virginia (595): Peninsula 1929-1992 (595) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Colonial Virginia (595): Peninsula 1929-1992 (595) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220231 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Colonial Virginia (595): Peninsula 1929-1992 (595) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Columbia-Montour (504): Columbia-Montour (504) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 31 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Columbia-Montour (504): Columbia-Montour (504) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Columbia-Montour (504): Columbia-Montour (504) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220086 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Columbia-Montour (504): Columbia-Montour (504) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Connecticut Rivers (66): Charter Oak 1933-1972 (70) | Unknown | | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Connecticut Rivers (66): Eastern Connecticut 1929-1972 (76) | Insurance Company of North America | SBL 4 29 80 | 4/15/1965 | 4/15/1966 | 4/15/1965 | 4/15/1966 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Connecticut Rivers (66): Eastern Connecticut 1929-1972 (76) | Insurance Company of North America | SBL 4 29 80 | 4/15/1966 | 4/15/1967 | 4/15/1966 | 4/15/1967 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Connecticut Rivers (66): Eastern Connecticut 1929-1972 (76) | Insurance Company of North America | SBL 4 29 80 | 4/15/1967 | 4/15/1968 | 4/15/1967 | 4/15/1968 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Connecticut Rivers (66): Eastern Connecticut 1929-1972 (76) | Insurance Company of North America | SBL 4 69 37 | 4/15/1968 | 4/15/1969 | 4/15/1968 | 4/15/1969 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Rivers (66): Eastern Connecticut 1929-1972 (76) | Insurance Company of North America | SBL 4 69 37 | 4/15/1969 | 4/15/1970 | 4/15/1969 | 4/15/1970 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Rivers (66): Eastern Connecticut 1929-1972 (76) | Insurance Company of North America | SBL 4 69 37 | 4/15/1970 | 4/15/1971 | 4/15/1970 | 4/15/1971 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Rivers (66): Eastern Connecticut 1929-1972 (76) | Insurance Company of North America | SBL 5 14 99 | 10/1/1971 | 4/15/1972 | 10/1/1971 | 4/15/1972 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Rivers (66): Indian Trails 1971-1992 (73) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 72 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Rivers (66): Indian Trails 1971-1992 (73) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Rivers (66): Indian Trails 1971-1992 (73) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219920 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Rivers (66): Indian Trails 1971-1992 (73) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Connecticut Rivers (66): Long Rivers 1972-1995 (66) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Connecticut Rivers (66): Long Rivers 1972-1995 (66) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 70 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Rivers (66): Long Rivers 1972-1995 (66) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Rivers (66): Long Rivers 1972-1995 (66) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Connecticut Rivers (66): Long Rivers 1972-1995 (66) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219918 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Rivers (66): Long Rivers 1972-1995 (66) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Connecticut Rivers (66): Long Rivers 1972-1995 (66) | Aetna Insurance Company | 04 9734 60 | 5/1/1957 | 5/1/1958 | 5/1/1957 | 5/1/1958 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Connecticut Rivers (66): Long Rivers 1972-1995 (66) | Continental Insurance Company | L 3 07 95 74 | 1/23/1987 | 1/23/1988 | 1/23/1987 | 1/23/1988 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Connecticut Rivers (66): Long Rivers 1972-1995 (66) | Continental Insurance Company | CLP S045040 | 1/23/1988 | 1/23/1989 | 1/23/1988 | 1/23/1989 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Connecticut Rivers (66): Long Rivers 1972-1995 (66) | Continental Insurance Company | CLP S045040 | 1/23/1988 | 1/23/1989 | 1/23/1988 | 1/23/1989 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Connecticut Rivers (66): Long Rivers 1972-1995 (66) | Continental Insurance Company | CLP S045040 | 1/23/1989 | 1/23/1990 | 1/23/1989 | 1/23/1990 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Connecticut Rivers (66): Long Rivers 1972-1995 (66) | Continental Insurance Company | CLP S045040 | 1/23/1990 | 1/23/1991 | 1/23/1990 | 1/23/1991 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Connecticut Rivers (66): Long Rivers 1972-1995 (66) | Continental Insurance Company | CLP S045040 | 1/23/1991 | 1/23/1992 | 1/23/1991 | 1/23/1992 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Connecticut Rivers (66): Mattatuck 1935-1972 (80) | Unknown | | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Connecticut Rivers (66): Mattatuck 1935-1972 (80) | Unknown | | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Connecticut Rivers (66): Mattatuck 1935-1972 (80) | Unknown | | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Connecticut Rivers (66): Nathan Hale 1967-1972 (72) | Insurance Company of North America | SBL 4 29 78 | 3/20/1965 | 3/20/1966 | 3/20/1965 | 3/20/1966 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Connecticut Rivers (66): Nathan Hale 1967-1972 (72) | Insurance Company of North America | SBL 4 29 78 | 3/20/1966 | 3/20/1967 | 3/20/1966 | 3/20/1967 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Connecticut Rivers (66): Nathan Hale 1967-1972 (72) | Insurance Company of North America | SBL 4 29 78 | 3/20/1967 | 3/20/1968 | 3/20/1967 | 3/20/1968 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Connecticut Rivers (66): Nathan Hale 1967-1972 (72) | Insurance Company of North America | SBL 46918 | 3/20/1968 | 3/20/1969 | 3/20/1968 | 3/20/1969 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Connecticut Rivers (66): Nathan Hale 1967-1972 (72) | Insurance Company of North America | SBL 46918 | 3/20/1969 | 3/20/1970 | 3/20/1969 | 3/20/1970 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Connecticut Rivers (66): Nathan Hale 1967-1972 (72) | Insurance Company of North America | SBL 46918 | 3/20/1970 | 3/20/1971 | 3/20/1970 | 3/20/1971 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Connecticut Rivers (66): Nathan Hale 1967-1972 (72) | Insurance Company of North America | SBL 51411 | 3/20/1971 | 3/20/1972 | 3/20/1971 | 3/20/1972 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Connecticut Rivers (66): Pequot 1935-1971 (77) | Insurance Company of North America | SBL 5 04 09 | 5/1/1968 | 5/1/1969 | 5/1/1968 | 5/1/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Connecticut Rivers (66): Pequot 1935-1971 (77) | Insurance Company of North America | SBL 5 04 09 | 5/1/1969 | 5/1/1970 | 5/1/1969 | 5/1/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Connecticut Rivers (66): Pequot 1935-1971 (77) | Insurance Company of North America | SBL 5 04 09 | 5/1/1970 | 5/1/1971 | 5/1/1970 | 5/1/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Connecticut Rivers (66): Pequot 1935-1971 (77) | Insurance Company of North America | SBL 5 15 38 | 5/1/1971 | 10/1/1971 | 5/1/1971 | 10/1/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Connecticut Rivers (66): Tunxis 1947-1972 (79) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Connecticut Rivers (66): Tunxis 1947-1972 (79) | Insurance Company of North America | SBL 51586 | 6/28/1971 | 6/28/1972 | 6/28/1971 | 6/28/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Yankee (72): Alfred W. Dater 1939-1972 (78) | Insurance Company of North America | SBL 46808 | 3/5/1968 | 3/5/1969 | 3/5/1968 | 3/5/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Yankee (72): Alfred W. Dater 1939-1972 (78) | Insurance Company of North America | SBL 46808 | 3/5/1969 | 3/5/1970 | 3/5/1969 | 3/5/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Yankee (72): Alfred W. Dater 1939-1972 (78) | Insurance Company of North America | SBL 46808 | 3/5/1970 | 3/5/1971 | 3/5/1970 | 3/5/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Yankee (72): Alfred W. Dater 1939-1972 (78) | Insurance Company of North America | SBL 5 13 98 | 3/5/1971 | 3/5/1972 | 3/5/1971 | 3/5/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Yankee (72): Central Connecticut 1929-1978 (71) | Insurance Company of North America | SBL 5 04 10 | 5/14/1968 | 5/14/1969 | 5/14/1968 | 5/14/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Connecticut Yankee (72): Central Connecticut 1929-1978 (71) | Insurance Company of North America | SBL 5 04 10 | 5/14/1969 | 5/14/1970 | 5/14/1969 | 5/14/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Connecticut Yankee (72): Central Connecticut 1929-1978 (71) | Insurance Company of North America | SBL 5 04 10 | 5/14/1970 | 5/14/1971 | 5/14/1970 | 5/14/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Connecticut Yankee (72): Central Connecticut 1929-1978 (71) | Insurance Company of North America | SBL 51549 | 5/14/1971 | 5/14/1972 | 5/14/1971 | 5/14/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Yankee (72): Central Connecticut 1929-1978 (71) | Insurance Company of North America | GLP 59 87 52 | 2/13/1975 | 2/13/1976 | 2/13/1975 | 2/13/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Connecticut Yankee (72): Central Connecticut 1929-1978 (71) | Insurance Company of North America | XBC 11 73 80 | 7/1/1975 | 2/13/1976 | 7/1/1975 | 2/13/1976 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Connecticut Yankee (72): Central Connecticut 1929-1978 (71) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 71 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Yankee (72): Central Connecticut 1929-1978 (71) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Yankee (72): Central Connecticut 1929-1978 (71) | Insurance Company of North America | GLP 63 06 26 | 2/13/1976 | 2/13/1977 | 2/13/1976 | 2/13/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Connecticut Yankee (72): Central Connecticut 1929-1978 (71) | Insurance Company of North America | XBC 11 73 80 | 2/13/1976 | 2/13/1977 | 2/13/1976 | 2/13/1977 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Connecticut Yankee (72): Central Connecticut 1929-1978 (71) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1239919 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Yankee (72): Central Connecticut 1929-1978 (71) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Connecticut Yankee (72): Central Connecticut 1929-1978 (71) | Insurance Company of North America | GLP 66 59 57 | 2/13/1977 | 2/13/1978 | 2/13/1977 | 2/13/1978 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Connecticut Yankee (72): Central Connecticut 1929-1978 (71) | Insurance Company of North America | XBC 11 75 11 | 2/13/1977 | 2/13/1978 | 2/13/1977 | 2/13/1978 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Connecticut Yankee (72): Fairfield County 1972-1998 (68) | New Hampshire Insurance Company | 08-2484-SLP-063-47-79 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Connecticut Yankee (72): Fairfield County 1972-1998 (68) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 73 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Yankee (72): Fairfield County 1972-1998 (68) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Yankee (72): Fairfield County 1972-1998 (68) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1239921 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Yankee (72): Fairfield County 1972-1998 (68) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Connecticut Yankee (72): Quinnipiac 1935-1998 (74) | Insurance Company of North America | SBL 4 77 79 | 2/1/1970 | 2/1/1971 | 2/1/1970 | 2/1/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Connecticut Yankee (72): Quinnipiac 1935-1998 (74) | Insurance Company of North America | SBL 5 29 23 | 2/1/1971 | 2/1/1972 | 2/1/1971 | 2/1/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Yankee (72): Quinnipiac 1935-1998 (74) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 69 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Yankee (72): Quinnipiac 1935-1998 (74) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Yankee (72): Quinnipiac 1935-1998 (74) | New Hampshire Insurance Company | SLP 634924 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Connecticut Yankee (72): Quinnipiac 1935-1998 (74) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1239917 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Connecticut Yankee (72): Quinnipiac 1935-1998 (74) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Conquistador (413): Conquistador 1953- (413) | Fireman's Fund Insurance Company | MXP 1537195 | 1/12/1969 | 1/12/1970 | 1/12/1969 | 1/12/1970 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Conquistador (413): Conquistador 1953- (413) | Fireman's Fund Insurance Company | MXP 1537195 | 1/12/1970 | 1/12/1971 | 1/12/1970 | 1/12/1971 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Conquistador (413): Conquistador 1953- (413) | Fireman's Fund Insurance Company | MXP 1537195 | 1/12/1971 | 1/12/1972 | 1/12/1971 | 1/12/1972 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Conquistador (413): Conquistador 1953- (413) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 47 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Conquistador (413): Conquistador 1953- (413) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Conquistador (413): Conquistador 1953- (413) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220199 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Conquistador (413): Conquistador 1953- (413) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Conquistador (413): Conquistador 1953- (413) | Insurance Company of North America | GK-12042 | 1/1/1987 | 1/1/1988 | 1/1/1987 | 1/1/1988 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Conquistador (413): Eastern New Mexico 1925-1953 (413) | Anchor Casualty Company | 442398 | 6/29/1955 | 6/29/1956 | 6/29/1955 | 6/29/1956 | $ - | $ 10,000.00 | $ 10,000.00 | Unknown | Unknown | SE |
| Cornhusker (324): Cornhusker (324) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 19 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cornhusker (324): Cornhusker (324) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cornhusker (324): Cornhusker (324) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220170 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cornhusker (324): Cornhusker (324) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Coronado Area (192): Coronado Area (192) | Unknown | Unknown | 1/1/1958 | 1/1/1959 | 1/1/1958 | 1/1/1959 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Coronado Area (192): Coronado Area (192) | United States Fidelity & Warranty Company | CGL 235298 | 6/28/1961 | 6/28/1962 | 6/28/1961 | 6/28/1962 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Coronado Area (192): Coronado Area (192) | United States Fidelity & Warranty Company | Unknown | 6/28/1962 | 6/28/1963 | 6/28/1962 | 6/28/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Coronado Area (192): Coronado Area (192) | United States Fidelity & Warranty Company | Unknown | 6/28/1963 | 6/28/1964 | 6/28/1963 | 6/28/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Coronado Area (192): Coronado Area (192) | United States Fidelity & Warranty Company | Unknown | 6/28/1964 | 6/28/1965 | 6/28/1964 | 6/28/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Coronado Area (192): Coronado Area (192) | United States Fidelity & Warranty Company | GGA 324983 | 6/28/1965 | 3/1/1966 | 6/28/1965 | 3/1/1966 | $ - | $ 50,000.00 | $ 50,000.00 | Unknown | Unknown | SE |
| Coronado Area (192): Coronado Area (192) | Insurance Company of North America | SBL 28074 | 3/1/1966 | 3/1/1967 | 3/1/1966 | 3/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Coronado Area (192): Coronado Area (192) | Insurance Company of North America | SBL 28082 | 3/1/1967 | 3/1/1968 | 3/1/1967 | 3/1/1968 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Coronado Area (192): Coronado Area (192) | Insurance Company of North America | SBL 28082 | 3/1/1968 | 3/1/1969 | 3/1/1968 | 3/1/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Coronado Area (192): Coronado Area (192) | Insurance Company of North America | SBL 5 18 88 | 3/1/1969 | 3/1/1970 | 3/1/1969 | 3/1/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Coronado Area (192): Coronado Area (192) | Insurance Company of North America | SBL 5 08 57 | 3/1/1970 | 3/1/1971 | 3/1/1970 | 3/1/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Coronado Area (192): Coronado Area (192) | Insurance Company of North America | SBL 5 08 57 | 3/1/1971 | 3/1/1972 | 3/1/1971 | 3/1/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Coronado Area (192): Coronado Area (192) | Insurance Company of North America | SBL 5 08 57 | 3/1/1972 | 1/1/1973 | 3/1/1972 | 1/1/1973 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Coronado Area (192): Coronado Area (192) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 48 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Coronado Area (192): Coronado Area (192) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Coronado Area (192): Coronado Area (192) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1239996 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Coronado Area (192): Coronado Area (192) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Cradle of Liberty (525): Philadelphia 1914-1996 (525) | Insurance Company of North America | SBL 4 34 21 | 2/1/1965 | 2/1/1966 | 2/1/1965 | 2/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cradle of Liberty (525): Philadelphia 1914-1996 (525) | Insurance Company of North America | SBL 4 34 21 | 2/1/1966 | 2/1/1967 | 2/1/1966 | 2/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cradle of Liberty (525): Philadelphia 1914-1996 (525) | Insurance Company of North America | SBL 4 34 21 | 2/1/1967 | 2/1/1968 | 2/1/1967 | 2/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cradle of Liberty (525): Philadelphia 1914-1996 (525) | Insurance Company of North America | SBL 4 41 51 | 2/1/1968 | 2/1/1969 | 2/1/1968 | 2/1/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Cradle of Liberty (525): Philadelphia 1914-1996 (525) | Insurance Company of North America | SBL 4 41 51 | 2/1/1969 | 2/1/1970 | 2/1/1969 | 2/1/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Cradle of Liberty (525): Philadelphia 1914-1996 (525) | Insurance Company of North America | SBL 4 41 51 | 2/1/1970 | 2/1/1971 | 2/1/1970 | 2/1/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Cradle of Liberty (525): Philadelphia 1914-1996 (525) | Insurance Company of North America | SBL 5 17 27 | 2/1/1971 | 2/1/1972 | 2/1/1971 | 2/1/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Cradle of Liberty (525): Philadelphia 1914-1996 (525) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 42 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cradle of Liberty (525): Philadelphia 1914-1996 (525) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cradle of Liberty (525): Philadelphia 1914-1996 (525) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220097 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cradle of Liberty (525): Philadelphia 1914-1996 (525) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Cradle of Liberty (525): Valley Forge 1936-1996 (507) | Unknown | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cradle of Liberty (525): Valley Forge 1936-1996 (507) | Insurance Company of North America | SBL-4-34-60 | 3/14/1963 | 3/14/1964 | 3/14/1963 | 3/14/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Cradle of Liberty (525): Valley Forge 1936-1996 (507) | Insurance Company of North America | SBL 44 54 85 | 3/14/1968 | 3/14/1969 | 3/14/1968 | 3/14/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cradle of Liberty (525): Valley Forge 1936-1996 (507) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 48 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cradle of Liberty (525): Valley Forge 1936-1996 (507) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cradle of Liberty (525): Valley Forge 1936-1996 (507) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220270 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Cradle of Liberty (525): Valley Forge 1936-1996 (507) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Crater Lake (491): Crater Lake 1993- (491) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 28 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crater Lake (491): Crater Lake 1993- (491) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220080 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crater Lake (491): Modoc Area 1936-1993 (494) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 27 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Crater Lake (491): Modoc Area 1936-1993 (494) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crater Lake (491): Modoc Area 1936-1993 (494) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220082 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crater Lake (491): Modoc Area 1936-1993 (494) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Crossroads of America (160): Crossroads of America 1972- (160) | New Hampshire Insurance Company | GLA908991 | 6/1/1975 | 6/1/1976 | 6/1/1975 | 6/1/1976 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Crossroads of America (160): Crossroads of America 1972- (160) | New Hampshire Insurance Company | UL07-96-54 | 6/1/1975 | 6/1/1976 | 6/1/1975 | 6/1/1976 | $ 2,500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Crossroads of America (160): Crossroads of America 1972- (160) | Insurance Company of North America | XCF 10769 | 6/1/1975 | 6/1/1976 | 6/1/1975 | 6/1/1976 | $ 7,500,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | Unknown | Unknown | PE |
| Crossroads of America (160): Crossroads of America 1972- (160) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 32 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crossroads of America (160): Crossroads of America 1972- (160) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crossroads of America (160): Crossroads of America 1972- (160) | New Hampshire Insurance Company | GLA908991 | 6/1/1976 | 6/1/1977 | 6/1/1976 | 6/1/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Crossroads of America (160): Crossroads of America 1972- (160) | New Hampshire Insurance Company | UL07-96-54 | 6/1/1976 | 6/1/1977 | 6/1/1976 | 6/1/1977 | $ 2,500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Crossroads of America (160): Crossroads of America 1972- (160) | Insurance Company of North America | XCF 10769 | 6/1/1976 | 6/1/1977 | 6/1/1976 | 6/1/1977 | $ 7,500,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | Unknown | Unknown | PE |
| Crossroads of America (160): Crossroads of America 1972- (160) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219978 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crossroads of America (160): Crossroads of America 1972- (160) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Crossroads of America (160): Crossroads of America 1972- (160) | New Hampshire Insurance Company | GLA908991 | 6/1/1977 | 6/1/1978 | 6/1/1977 | 6/1/1978 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Crossroads of America (160): Crossroads of America 1972- (160) | New Hampshire Insurance Company | UL07-96-54 | 6/1/1977 | 6/1/1978 | 6/1/1977 | 6/1/1978 | $ 2,500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Crossroads of America (160): Crossroads of America 1972- (160) | Insurance Company of North America | XCF 10769 | 6/1/1977 | 6/1/1978 | 6/1/1977 | 6/1/1978 | $ 7,500,000.00 | $ 5,000,000.00 | $ 5,000,000.00 | Unknown | Unknown | PE |
| Crossroads of America (160): Delaware County 1924-1972 (679) | Insurance Company of North America | SBL 5 15 56 | 6/1/1971 | 6/1/1972 | 6/1/1971 | 6/1/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crossroads of America (160): Kikthawenund Area 1935-1972 (149) | Insurance Company of North America | SBL-4-67-60 | 6/9/1968 | 6/9/1969 | 6/9/1968 | 6/9/1969 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Crossroads of America (160): Kikthawenund Area 1935-1972 (149) | Insurance Company of North America | SBL 46771 | 6/9/1969 | 6/9/1970 | 6/9/1969 | 6/9/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Crossroads of America (160): Kikthawenund Area 1935-1972 (149) | Insurance Company of North America | SBL 46782 | 6/9/1970 | 6/9/1971 | 6/9/1970 | 6/9/1971 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Crossroads of America (160): Kikthawenund Area 1935-1972 (149) | Insurance Company of North America | Unknown | 6/9/1971 | 6/9/1972 | 6/9/1971 | 6/9/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Crossroads of America (160): Wabash Valley 1931-2002 (166) | Insurance Company of North America | SBL 46772 | 4/11/1969 | 4/11/1970 | 4/11/1969 | 4/11/1970 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Crossroads of America (160): Wabash Valley 1931-2002 (166) | Insurance Company of North America | SBL 46772 | 4/11/1970 | 4/11/1971 | 4/11/1970 | 4/11/1971 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Crossroads of America (160): Wabash Valley 1931-2002 (166) | Insurance Company of North America | SBL 46798 | 4/11/1971 | 4/11/1972 | 4/11/1971 | 4/11/1972 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Crossroads of America (160): Wabash Valley 1931-2002 (166) | Insurance Company of North America | ALB 54057 | 4/11/1972 | 4/11/1973 | 4/11/1972 | 4/11/1973 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Crossroads of America (160): Wabash Valley 1931-2002 (166) | Insurance Company of North America | GLP 42 18 47 | 4/11/1973 | 4/11/1974 | 4/11/1973 | 4/11/1974 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Crossroads of America (160): Wabash Valley 1931-2002 (166) | Insurance Company of North America | GLP 428340 | 4/11/1974 | 4/11/1975 | 4/11/1974 | 4/11/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Crossroads of America (160): Wabash Valley 1931-2002 (166) | Insurance Company of North America | GLP 59 24 34 | 4/11/1975 | 12/2/1975 | 4/11/1975 | 12/2/1975 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Crossroads of America (160): Wabash Valley 1931-2002 (166) | Insurance Company of North America | GLP 59 24 34 | 12/2/1975 | 4/11/1976 | 12/2/1975 | 4/11/1976 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Crossroads of America (160): Wabash Valley 1931-2002 (166) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Crossroads of America (160): Wabash Valley 1931-2002 (166) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 37 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Crossroads of America (160): Wabash Valley 1931-2002 (166) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crossroads of America (160): Wabash Valley 1931-2002 (166) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219983 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crossroads of America (160): Wabash Valley 1931-2002 (166) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Crossroads of America (160): Whitewater Valley 1935-1972 (151) | Insurance Company of North America | SBL 4 10 99 | 6/1/1966 | 6/1/1967 | 6/1/1966 | 6/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Crossroads of America (160): Whitewater Valley 1935-1972 (151) | Insurance Company of North America | SBL 4 67 34 | 6/1/1967 | 6/1/1968 | 6/1/1967 | 6/1/1968 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Crossroads of America (160): Whitewater Valley 1935-1972 (151) | Insurance Company of North America | SBL-4-67-59 | 6/1/1968 | 6/1/1969 | 6/1/1968 | 6/1/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Crossroads of America (160): Whitewater Valley 1935-1972 (151) | Insurance Company of North America | SBL 46781 | 6/1/1969 | 6/1/1970 | 6/1/1969 | 6/1/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Crossroads of America (160): Whitewater Valley 1935-1972 (151) | Insurance Company of North America | SBL 46781 | 6/1/1970 | 6/1/1971 | 6/1/1970 | 6/1/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Crossroads of America (160): Whitewater Valley 1935-1972 (151) | Insurance Company of North America | Unknown | 6/1/1971 | 6/1/1972 | 6/1/1971 | 6/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Crossroads of the West (590): Cache Valley Area 1924-1993 (588) | Insurance Company of North America | SBL 51307 | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Cache Valley Area 1924-1993 (588) | Insurance Company of North America | SBL 51307 | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Cache Valley Area 1924-1993 (588) | Insurance Company of North America | SBL 51307 | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Cache Valley Area 1924-1993 (588) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 01 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Cache Valley Area 1924-1993 (588) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Cache Valley Area 1924-1993 (588) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220225 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Cache Valley Area 1924-1993 (588) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Great Salt Lake 1951-2020 (590) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Great Salt Lake 1951-2020 (590) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220228 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Great Salt Lake 1951-2020 (590) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Jim Bridger 1946-1993 (639) | Insurance Company of North America | SBL 5 15 47 | 5/1/1971 | 5/1/1972 | 5/1/1971 | 5/1/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Jim Bridger 1946-1993 (639) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 50 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Jim Bridger 1946-1993 (639) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Jim Bridger 1946-1993 (639) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220267 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Jim Bridger 1946-1993 (639) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Lake Bonneville 1951-1993 (589) | SAFECO Ins. Co. of America | Unknown | 7/1/1970 | 7/1/1971 | 7/1/1970 | 7/1/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Crossroads of the West (590): Lake Bonneville 1951-1993 (589) | Charter Oak Fire Insurance Company | 650-217A646-3-COF-74 | 9/1/1974 | 9/1/1975 | 9/1/1974 | 9/1/1975 | $ - | $ 2,500,000.00 | $ 2,500,000.00 | Unknown | Unknown | SE |
| Crossroads of the West (590): Lake Bonneville 1951-1993 (589) | Charter Oak Fire Insurance Company | 650-217A646-3-COF-74 | 9/1/1975 | 9/1/1976 | 9/1/1975 | 9/1/1976 | $ - | $ 2,500,000.00 | $ 2,500,000.00 | Unknown | Unknown | SE |
| Crossroads of the West (590): Lake Bonneville 1951-1993 (589) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 04 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Lake Bonneville 1951-1993 (589) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Lake Bonneville 1951-1993 (589) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220226 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Lake Bonneville 1951-1993 (589) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Lake Bonneville 1951-1993 (589) | Charter Oak Fire Insurance Company | 650-217A646-3-COF-77 | 7/13/1977 | 7/13/1978 | 7/13/1977 | 7/13/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Crossroads of the West (590): Lake Bonneville 1951-1993 (589) | Charter Oak Fire Insurance Company | 650-217A646-3-COF-77 | 9/1/1978 | 9/1/1979 | 9/1/1978 | 9/1/1979 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Crossroads of the West (590): Salt Lake City Area 1926-1951 (590) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 06 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Utah National Parks- 2020 (591) | Insurance Company of North America | SBL 5 04 27 | 7/11/1968 | 7/11/1969 | 7/11/1968 | 7/11/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Utah National Parks- 2020 (591) | Insurance Company of North America | SBL 5 04 27 | 7/11/1969 | 7/11/1970 | 7/11/1969 | 7/11/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Utah National Parks- 2020 (591) | Insurance Company of North America | SBL 5 04 27 | 7/11/1970 | 7/11/1971 | 7/11/1970 | 7/11/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Utah National Parks- 2020 (591) | Insurance Company of North America | SBL 5 15 80 | 7/11/1971 | 7/11/1972 | 7/11/1971 | 7/11/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Utah National Parks- 2020 (591) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 05 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Utah National Parks- 2020 (591) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Utah National Parks- 2020 (591) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220227 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Crossroads of the West (590): Utah National Parks- 2020 (591) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Dan Beard (438): Dan Beard 1956- (438) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Dan Beard (438): Dan Beard 1956- (438) | Insurance Company of North America | SBL 4 53 74 | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Dan Beard (438): Dan Beard 1956- (438) | Insurance Company of North America | SBL 4 53 74 | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Dan Beard (438): Dan Beard 1956- (438) | Insurance Company of North America | SBL 4 53 74 | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Dan Beard (438): Dan Beard 1956- (438) | Insurance Company of North America | AGF 54 W 935 | 12/15/1972 | 12/15/1973 | 12/15/1972 | 12/15/1973 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Dan Beard (438): Dan Beard 1956- (438) | Insurance Company of North America | XBC 86565 | 12/15/1973 | 12/15/1974 | 12/15/1973 | 12/15/1974 | $ 2,500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | SE |
| Dan Beard (438): Dan Beard 1956- (438) | Insurance Company of North America | AGP 54 W 935 | 12/15/1973 | 12/15/1974 | 12/15/1973 | 12/15/1974 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Dan Beard (438): Dan Beard 1956- (438) | Insurance Company of North America | XBC 11 33 19 | 12/15/1974 | 12/15/1975 | 12/15/1974 | 12/15/1975 | $ 2,500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Dan Beard (438): Dan Beard 1956- (438) | Insurance Company of North America | XBC 11 37 84 | 12/15/1975 | 12/15/1976 | 12/15/1975 | 12/15/1976 | $ 2,500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Dan Beard (438): Dan Beard 1956- (438) | Insurance Company of North America | AGP 54 W 935 | 12/15/1975 | 12/15/1976 | 12/15/1975 | 12/15/1976 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Dan Beard (438): Dan Beard 1956- (438) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 97 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Dan Beard (438): Dan Beard 1956- (438) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dan Beard (438): Dan Beard 1956- (438) | Insurance Company of North America | AGP D0 00 83 93 8 | 12/1/1976 | 12/1/1977 | 12/1/1976 | 12/1/1977 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Dan Beard (438): Dan Beard 1956- (438) | Insurance Company of North America | XBC 14 35 33 | 12/15/1976 | 12/15/1977 | 12/15/1976 | 12/15/1977 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Dan Beard (438): Dan Beard 1956- (438) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220050 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Dan Beard (438): Dan Beard 1956- (438) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Dan Beard (438): Dan Beard 1956- (438) | Insurance Company of North America | AGP D0 00 83 93 8 | 12/1/1977 | 12/1/1978 | 12/1/1977 | 12/1/1978 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Dan Beard (438): Mound Builders Area 1932-1985 (454) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 06 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Dan Beard (438): Mound Builders Area 1932-1985 (454) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Dan Beard (438): Mound Builders Area 1932-1985 (454) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220059 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Dan Beard (438): Mound Builders Area 1932-1985 (454) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Daniel Boone (414): Daniel Boone (414) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 82 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Daniel Boone (414): Daniel Boone (414) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Daniel Boone (414): Daniel Boone (414) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220035 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Daniel Boone (414): Daniel Boone (414) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Daniel Webster (330): Daniel Webster (330) | Unknown | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Daniel Webster (330): Daniel Webster (330) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | SE |
| Daniel Webster (330): Daniel Webster (330) | Unknown | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Daniel Webster (330): Daniel Webster (330) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1974 | 1/1/1974 | 1/1/1974 | 1/1/1975 | $ | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | SE |
| Daniel Webster (330): Daniel Webster (330) | Unknown | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Daniel Webster (330): Daniel Webster (330) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | SE |
| Daniel Webster (330): Daniel Webster (330) | Unknown | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Daniel Webster (330): Daniel Webster (330) | Commercial Union Assurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Daniel Webster (330): Daniel Webster (330) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 24 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Daniel Webster (330): Daniel Webster (330) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Daniel Webster (330): Daniel Webster (330) | Commercial Union Assurance Company | AB 074-50-09 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Daniel Webster (330): Daniel Webster (330) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220176 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Daniel Webster (330): Daniel Webster (330) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| De Soto Area (13): De Soto Area (13) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| De Soto Area (13): De Soto Area (13) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 22 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| De Soto Area (13): De Soto Area (13) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| De Soto Area (13): De Soto Area (13) | Ambassador Insurance Company | 25830 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| De Soto Area (13): De Soto Area (13) | New Hampshire Insurance Company | GLA 332363 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| De Soto Area (13): De Soto Area (13) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219871 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| De Soto Area (13): De Soto Area (13) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Del-Mar-Va (81): Del-Mar-Va (81) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 74 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Del-Mar-Va (81): Del-Mar-Va (81) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Del-Mar-Va (81): Del-Mar-Va (81) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219922 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Del-Mar-Va (81): Del-Mar-Va (81) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Denver Area (61): Denver Area 1926- (61) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 63 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Denver Area (61): Denver Area 1926- (61) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Denver Area (61): Denver Area 1926- (61) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219911 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Denver Area (61): Denver Area 1926- (61) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Denver Area (61): Western Colorado 1942-2019 (64) | Insurance Company of North America | SBL 4 29 75 | 3/5/1965 | 3/5/1966 | 3/5/1965 | 3/5/1966 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Denver Area (61): Western Colorado 1942-2019 (64) | Insurance Company of North America | SBL 4 29 75 | 3/5/1966 | 3/5/1967 | 3/5/1966 | 3/5/1967 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Denver Area (61): Western Colorado 1942-2019 (64) | Insurance Company of North America | SBL 4 29 75 | 3/5/1967 | 3/5/1968 | 3/5/1967 | 3/5/1968 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Denver Area (61): Western Colorado 1942-2019 (64) | Insurance Company of North America | SBL 46921 | 3/5/1968 | 3/5/1969 | 3/5/1968 | 3/5/1969 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Denver Area (61): Western Colorado 1942-2019 (64) | Insurance Company of North America | SBL 46921 | 3/5/1969 | 3/5/1970 | 3/5/1969 | 3/5/1970 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Denver Area (61): Western Colorado 1942-2019 (64) | Insurance Company of North America | SBL 46921 | 3/5/1970 | 3/5/1971 | 3/5/1970 | 3/5/1971 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Denver Area (61): Western Colorado 1942-2019 (64) | Insurance Company of North America | SBL 51399 | 3/5/1971 | 3/5/1972 | 3/5/1971 | 3/5/1972 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Denver Area (61): Western Colorado 1942-2019 (64) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 64 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Denver Area (61): Western Colorado 1942-2019 (64) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Denver Area (61): Western Colorado 1942-2019 (64) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219912 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Denver Area (61): Western Colorado 1942-2019 (64) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Direct Service (800): Canal Zone 1933-1979 (801) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Direct Service (800): Canal Zone 1933-1979 (801) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 61 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Direct Service (800): Canal Zone 1933-1979 (801) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Direct Service (800): Canal Zone 1933-1979 (801) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Direct Service (800): Canal Zone 1933-1979 (801) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219909 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Direct Service (800): Canal Zone 1933-1979 (801) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Direct Service (800): Direct Service 1956-1979 (800) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Direct Service (800): Direct Service 1956-1979 (800) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| East Carolina (426): East Carolina (426) | North River Insurance Company | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| East Carolina (426): East Carolina (426) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 91 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| East Carolina (426): East Carolina (426) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| East Carolina (426): East Carolina (426) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220042 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| East Carolina (426): East Carolina (426) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| East Texas Area (585): East Texas Area (585) | U.S. Fire Insurance Company | GA-44-44-74 | 5/15/1970 | 5/15/1971 | 5/15/1970 | 5/15/1971 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| East Texas Area (585): East Texas Area (585) | U.S. Fire Insurance Company | GA-41-44-74 | 5/15/1971 | 5/15/1972 | 5/15/1971 | 5/15/1972 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| East Texas Area (585): East Texas Area (585) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 90 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| East Texas Area (585): East Texas Area (585) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| East Texas Area (585): East Texas Area (585) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220221 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| East Texas Area (585): East Texas Area (585) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Erie Shores (460): Toledo Area 1929-1999 (460) | Buckeye Union Insurance Company | Unknown | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Erie Shores (460): Toledo Area 1929-1999 (460) | Buckeye Union Insurance Company | Unknown | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Erie Shores (460): Toledo Area 1929-1999 (460) | Buckeye Union Insurance Company | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Erie Shores (460): Toledo Area 1929-1999 (460) | Buckeye Union Insurance Company | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Erie Shores (460): Toledo Area 1929-1999 (460) | Buckeye Union Insurance Company | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Erie Shores (460): Toledo Area 1929-1999 (460) | Buckeye Union Insurance Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Erie Shores (460): Toledo Area 1929-1999 (460) | Buckeye Union Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Erie Shores (460): Toledo Area 1929-1999 (460) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 13 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Erie Shores (460): Toledo Area 1929-1999 (460) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Erie Shores (460): Toledo Area 1929-1999 (460) | Buckeye Union Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Erie Shores (460): Toledo Area 1929-1999 (460) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220066 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Erie Shores (460): Toledo Area 1929-1999 (460) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Evangeline Area (212): Evangeline Area (212) | Insurance Company of North America | SBL 4 53 75 | 2/1/1966 | 2/1/1967 | 2/1/1966 | 2/1/1967 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Evangeline Area (212): Evangeline Area (212) | Insurance Company of North America | SBL 4 53 75 | 2/1/1967 | 2/1/1968 | 2/1/1967 | 2/1/1968 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Evangeline Area (212): Evangeline Area (212) | Insurance Company of North America | SBL 4 53 75 | 2/1/1968 | 2/1/1969 | 2/1/1968 | 2/1/1969 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Evangeline Area (212): Evangeline Area (212) | Hartford Accident and Indemnity Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ | Unknown | Unknown | Unknown | Unknown | SE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE)? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Evangeline Area (212): Evangeline Area (212) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Evangeline Area (212): Evangeline Area (212) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 58 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Evangeline Area (212): Evangeline Area (212) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Evangeline Area (212): Evangeline Area (212) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Evangeline Area (212): Evangeline Area (212) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220106 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Evangeline Area (212): Evangeline Area (212) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Far East (803): Far East (803) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Far East (803): Far East (803) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 76 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Far East (803): Far East (803) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Far East (803): Far East (803) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Far East (803): Far East (803) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219924 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Far East (803): Far East (803) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Five Rivers (375): General Sullivan 1927-1992 (779) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Five Rivers (375): General Sullivan 1927-1992 (779) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 47 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Five Rivers (375): General Sullivan 1927-1992 (779) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Five Rivers (375): General Sullivan 1927-1992 (779) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Five Rivers (375): General Sullivan 1927-1992 (779) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220269 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Five Rivers (375): General Sullivan 1927-1992 (779) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Five Rivers (375): Steuben Area 1931-1991 (402) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Five Rivers (375): Steuben Area 1931-1991 (402) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 51 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Five Rivers (375): Steuben Area 1931-1991 (402) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Five Rivers (375): Steuben Area 1931-1991 (402) | Insurance Company of North America | AGP 15 39 33 | 4/19/1976 | 4/19/1977 | 4/19/1976 | 4/19/1977 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Five Rivers (375): Steuben Area 1931-1991 (402) | Fireman's Fund Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Five Rivers (375): Steuben Area 1931-1991 (402) | Fireman's Insurance Company of Newark, NJ | L6263105 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Five Rivers (375): Steuben Area 1931-1991 (402) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220003 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Five Rivers (375): Steuben Area 1931-1991 (402) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Five Rivers (375): Sullivan Trail 1947-1991 (375) | Travelers Indemnity Company | Unknown | 1/1/1963 | 1/1/1964 | 1/1/1963 | 1/1/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Five Rivers (375): Sullivan Trail 1947-1991 (375) | Travelers Indemnity Company | Unknown | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Five Rivers (375): Sullivan Trail 1947-1991 (375) | Travelers Indemnity Company | Unknown | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Five Rivers (375): Sullivan Trail 1947-1991 (375) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 55 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Five Rivers (375): Sullivan Trail 1947-1991 (375) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Five Rivers (375): Sullivan Trail 1947-1991 (375) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220008 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Five Rivers (375): Sullivan Trail 1947-1991 (375) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Flint River (95): Flint River (95) | Hartford Fire Insurance Company | 01 UEC FN2321 | 10/28/1991 | 11/8/1992 | 10/28/1991 | 11/8/1992 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Flint River (95): Flint River (95) | Insurance Company of North America | SBL 48843 | 7/6/1971 | 7/5/1972 | 7/6/1971 | 7/5/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Flint River (95): Flint River (95) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 92 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Flint River (95): Flint River (95) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Flint River (95): Flint River (95) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219940 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Flint River (95): Flint River (95) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| French Creek (532): Custaloga 1969-1972 (531) | Insurance Company of North America | SBL 50421 | 11/29/1968 | 11/29/1969 | 11/29/1968 | 11/29/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| French Creek (532): Custaloga 1969-1972 (531) | Insurance Company of North America | SBL 50421 | 11/29/1969 | 11/29/1970 | 11/29/1969 | 11/29/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| French Creek (532): Custaloga 1969-1972 (531) | Insurance Company of North America | SBL 50421 | 11/29/1970 | 11/29/1971 | 11/29/1970 | 11/29/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| French Creek (532): French Creek 1972- (532) | Erie Family Life Insurance Company | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| French Creek (532): French Creek 1972- (532) | Erie Insurance Exchange | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| French Creek (532): French Creek 1972- (532) | Erie Insurance Exchange | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| French Creek (532): French Creek 1972- (532) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 35 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| French Creek (532): French Creek 1972- (532) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| French Creek (532): French Creek 1972- (532) | Erie Insurance Exchange | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| French Creek (532): French Creek 1972- (532) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220090 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| French Creek (532): French Creek 1972- (532) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| French Creek (532): Mercer County 1917-1969 (531) | Insurance Company of North America | SBL 4 53 73 | 11/29/1965 | 11/29/1966 | 11/29/1965 | 11/29/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| French Creek (532): Mercer County 1917-1969 (531) | Insurance Company of North America | SBL 4 53 73 | 11/29/1966 | 11/29/1967 | 11/29/1966 | 11/29/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| French Creek (532): Mercer County 1917-1969 (531) | Insurance Company of North America | SBL 4 53 73 | 11/29/1967 | 11/29/1968 | 11/29/1967 | 11/29/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| French Creek (532): Mercer County 1917-1969 (531) | Insurance Company of North America | SBL 50421 | 11/29/1968 | 11/29/1969 | 11/29/1968 | 11/29/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| French Creek (532): Mercer County 1917-1969 (531) | Insurance Company of North America | SBL 50421 | 11/29/1969 | 11/29/1970 | 11/29/1969 | 11/29/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| French Creek (532): Mercer County 1917-1969 (531) | Insurance Company of North America | SBL 50421 | 11/29/1970 | 11/29/1971 | 11/29/1970 | 11/29/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| French Creek (532): Washington Trail 1944-1972 (511) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| French Creek (532): Washington Trail 1944-1972 (511) | Unknown | Unknown | 1/1/1957 | 1/1/1958 | 1/1/1957 | 1/1/1958 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| French Creek (532): Washington Trail 1944-1972 (511) | Unknown | Unknown | 1/1/1958 | 1/1/1959 | 1/1/1958 | 1/1/1959 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| French Creek (532): Washington Trail 1944-1972 (511) | Unknown | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| French Creek (532): Washington Trail 1944-1972 (511) | Unknown | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| French Creek (532): Washington Trail 1944-1972 (511) | Unknown | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| French Creek (532): Washington Trail 1944-1972 (511) | Unknown | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| French Creek (532): Washington Trail 1944-1972 (511) | Unknown | Unknown | 1/1/1963 | 1/1/1964 | 1/1/1963 | 1/1/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| French Creek (532): Washington Trail 1944-1972 (511) | Unknown | Unknown | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| French Creek (532): Washington Trail 1944-1972 (511) | Unknown | Unknown | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| French Creek (532): Washington Trail 1944-1972 (511) | Unknown | Unknown | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| French Creek (532): Washington Trail 1944-1972 (511) | Unknown | Unknown | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| French Creek (532): Washington Trail 1944-1972 (511) | Unknown | Unknown | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| French Creek (532): Washington Trail 1944-1972 (511) | Unknown | Unknown | 1/1/1969 | 6/25/1969 | 1/1/1969 | 6/25/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| French Creek (532): Washington Trail 1944-1972 (511) | Insurance Company of North America | SBL-4-32-87 | 6/25/1969 | 1/15/1970 | 6/25/1969 | 1/15/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| French Creek (532): Washington Trail 1944-1972 (511) | Insurance Company of North America | SBL 4 32 98 | 1/15/1970 | 1/15/1971 | 1/15/1970 | 1/15/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| French Creek (532): Washington Trail 1944-1972 (511) | Insurance Company of North America | SBL 4 32 98 | 1/15/1971 | 1/15/1972 | 1/15/1971 | 1/15/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Gamehaven (299): Gamehaven (299) | Insurance Company of North America | SBL 3-70-22 | 6/1/1966 | 6/1/1967 | 6/1/1966 | 6/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Gamehaven (299): Gamehaven (299) | Insurance Company of North America | SBL 4-46-14 | 6/1/1967 | 6/1/1968 | 6/1/1967 | 6/1/1968 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Gamehaven (299): Gamehaven (299) | Insurance Company of North America | SBL-4-46-35 | 6/1/1968 | 6/1/1969 | 6/1/1968 | 6/1/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Gamehaven (299): Gamehaven (299) | Insurance Company of North America | SBL 4 46 49 | 6/1/1969 | 6/1/1970 | 6/1/1969 | 6/1/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Gamehaven (299): Gamehaven (299) | Insurance Company of North America | SBL 44671 | 6/1/1970 | 6/1/1971 | 6/1/1970 | 6/1/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Gamehaven (299): Gamehaven (299) | Insurance Company of North America | SBL 44689 | 6/1/1971 | 6/1/1972 | 6/1/1971 | 6/1/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Gamehaven (299): Gamehaven (299) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 02 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Gamehaven (299): Gamehaven (299) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Gamehaven (299): Gamehaven (299) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220152 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Gamehaven (299): Gamehaven (299) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Garden State (690): Burlington County 1925-2013 (690) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Garden State (690): Burlington County 1925-2013 (690) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Garden State (690): Burlington County 1925-2013 (690) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 45 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Garden State (690): Burlington County 1925-2013 (690) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |

Data Privacy - This document contains private information.
Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Garden State (690): Burlington County 1925-2013 (690) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Garden State (690): Burlington County 1925-2013 (690) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220197 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Garden State (690): Burlington County 1925-2013 (690) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Garden State (690): Camden County 1921-1998 (335) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Garden State (690): Camden County 1921-1998 (335) | Commercial Union Insurance Company | EP 4004433 | 12/7/1970 | 12/7/1971 | 12/7/1970 | 12/7/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Garden State (690): Camden County 1921-1998 (335) | Commercial Union Insurance Company | EP 4004433 | 12/7/1971 | 12/7/1972 | 12/7/1971 | 12/7/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Garden State (690): Camden County 1921-1998 (335) | Commercial Union Insurance Company | EP 4004433 | 12/7/1972 | 12/7/1973 | 12/7/1972 | 12/7/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Garden State (690): Camden County 1921-1998 (335) | Commercial Union Insurance Company | W18-36-37 | 12/7/1973 | 12/7/1974 | 12/7/1973 | 12/7/1974 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Garden State (690): Camden County 1921-1998 (335) | Commercial Union Insurance Company | CP-2067-64 | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ 500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Garden State (690): Camden County 1921-1998 (335) | Commercial Union Insurance Company | CLCP-012-86- | 6/5/1974 | 12/7/1974 | 6/5/1974 | 12/7/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Garden State (690): Camden County 1921-1998 (335) | Commercial Union Insurance Company | W18-36-37 | 12/7/1974 | 6/5/1975 | 12/7/1974 | 6/5/1975 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Garden State (690): Camden County 1921-1998 (335) | Commercial Union Insurance Company | CLCPO74-56-39 | 6/5/1975 | 6/5/1976 | 6/5/1975 | 6/5/1976 | $ - | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Garden State (690): Camden County 1921-1998 (335) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 44 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Garden State (690): Camden County 1921-1998 (335) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Garden State (690): Camden County 1921-1998 (335) | Commercial Union Insurance Company | CPO73 47 42 | 6/5/1976 | 6/5/1977 | 6/5/1976 | 6/5/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Garden State (690): Camden County 1921-1998 (335) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220196 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Garden State (690): Camden County 1921-1998 (335) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Garden State (690): Camden County 1921-1998 (335) | Commercial Union Insurance Company | CP 092 80 56 | 6/5/1977 | 6/5/1978 | 6/5/1977 | 6/5/1978 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Garden State (690): Southern New Jersey 1967-1990 (334) | Insurance Company of North America | SBL 4 29 99 | 4/1/1965 | 4/1/1966 | 4/1/1965 | 4/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Garden State (690): Southern New Jersey 1967-1990 (334) | Insurance Company of North America | SBL 4 29 99 | 4/1/1966 | 4/1/1967 | 4/1/1966 | 4/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Garden State (690): Southern New Jersey 1967-1990 (334) | Insurance Company of North America | SBL 4 29 99 | 4/1/1967 | 4/1/1968 | 4/1/1967 | 4/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Garden State (690): Southern New Jersey 1967-1990 (334) | Insurance Company of North America | SBL 4 69 40 | 4/1/1968 | 4/1/1969 | 4/1/1968 | 4/1/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Garden State (690): Southern New Jersey 1967-1990 (334) | Insurance Company of North America | SBL 4 69 40 | 4/1/1969 | 4/1/1970 | 4/1/1969 | 4/1/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Garden State (690): Southern New Jersey 1967-1990 (334) | Insurance Company of North America | SBL 4 69 40 | 4/1/1970 | 4/1/1971 | 4/1/1970 | 4/1/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Garden State (690): Southern New Jersey 1967-1990 (334) | Insurance Company of North America | SBL 5 15 14 | 4/1/1971 | 4/1/1972 | 4/1/1971 | 4/1/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Garden State (690): Southern New Jersey 1967-1990 (334) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Garden State (690): Southern New Jersey 1967-1990 (334) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 41 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Garden State (690): Southern New Jersey 1967-1990 (334) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Garden State (690): Southern New Jersey 1967-1990 (334) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Garden State (690): Southern New Jersey 1967-1990 (334) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220193 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Garden State (690): Southern New Jersey 1967-1990 (334) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Gateway (624): Gateway Area (624) | Hartford Accident and Indemnity Company | 714239 | 12/15/1961 | 12/15/1962 | 12/15/1961 | 12/15/1962 | $ - | $ 10,000.00 | $ 10,000.00 | Unknown | Unknown | SE |
| Gateway (624): Gateway Area (624) | Hartford Accident and Indemnity Company | 715173 | 12/15/1962 | 12/15/1963 | 12/15/1962 | 12/15/1963 | $ - | $ 10,000.00 | $ 10,000.00 | Unknown | Unknown | SE |
| Gateway (624): Gateway Area (624) | Hartford Accident and Indemnity Company | 716126 | 12/15/1963 | 12/15/1964 | 12/15/1963 | 12/15/1964 | $ - | $ 10,000.00 | $ 10,000.00 | Unknown | Unknown | SE |
| Gateway (624): Gateway Area (624) | Hartford Accident and Indemnity Company | 717220 | 12/15/1964 | 12/15/1965 | 12/15/1964 | 12/15/1965 | $ - | $ 10,000.00 | $ 10,000.00 | Unknown | Unknown | SE |
| Gateway (624): Gateway Area (624) | Hartford Accident and Indemnity Company | 86C718423 | 12/15/1965 | 12/15/1966 | 12/15/1965 | 12/15/1966 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Gateway (624): Gateway Area (624) | Hartford Accident and Indemnity Company | 86C718423 | 12/15/1966 | 12/15/1967 | 12/15/1966 | 12/15/1967 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Gateway (624): Gateway Area (624) | Hartford Accident and Indemnity Company | 86C718423 | 12/15/1967 | 12/15/1968 | 12/15/1967 | 12/15/1968 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Gateway (624): Gateway Area (624) | Hartford Accident and Indemnity Company | 86C807701 | 12/15/1968 | 12/15/1969 | 12/15/1968 | 12/15/1969 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Gateway (624): Gateway Area (624) | Hartford Accident and Indemnity Company | 86C807701 | 12/15/1969 | 12/15/1970 | 12/15/1969 | 12/15/1970 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Gateway (624): Gateway Area (624) | Hartford Accident and Indemnity Company | 86C807701 | 12/15/1970 | 12/15/1971 | 12/15/1970 | 12/15/1971 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Gateway (624): Gateway Area (624) | American States Insurance Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Gateway (624): Gateway Area (624) | American States Insurance Company | SU-15069 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | SE |
| Gateway (624): Gateway Area (624) | American States Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Gateway (624): Gateway Area (624) | American States Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Gateway (624): Gateway Area (624) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 43 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Gateway (624): Gateway Area (624) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Gateway (624): Gateway Area (624) | American States Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Gateway (624): Gateway Area (624) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220259 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Gateway (624): Gateway Area (624) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Georgia-Carolina (93): Georgia-Carolina (93) | Insurance Company of North America | SBL 4 88 14 | 5/30/1968 | 5/30/1969 | 5/30/1968 | 5/30/1969 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Georgia-Carolina (93): Georgia-Carolina (93) | Insurance Company of North America | SBL 48824 | 5/30/1969 | 5/30/1970 | 5/30/1969 | 5/30/1970 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Georgia-Carolina (93): Georgia-Carolina (93) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Georgia-Carolina (93): Georgia-Carolina (93) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 90 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Georgia-Carolina (93): Georgia-Carolina (93) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Georgia-Carolina (93): Georgia-Carolina (93) | New Hampshire Insurance Company | GLA 332323 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Georgia-Carolina (93): Georgia-Carolina (93) | New Hampshire Insurance Company | SLP 275540 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 50,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Georgia-Carolina (93): Georgia-Carolina (93) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219938 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Georgia-Carolina (93): Georgia-Carolina (93) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Glaciers Edge (620): Four Lakes 1928-2005 (628) | Insurance Company of North America | SBL 4 15 49 | 7/10/1969 | 7/10/1970 | 7/10/1969 | 7/10/1970 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Glaciers Edge (620): Four Lakes 1928-2005 (628) | Insurance Company of North America | SBL 4 15 56 | 7/10/1970 | 7/10/1971 | 7/10/1970 | 7/10/1971 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Glaciers Edge (620): Four Lakes 1928-2005 (628) | Insurance Company of North America | Unknown | 7/10/1971 | 7/10/1972 | 7/10/1971 | 7/10/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Glaciers Edge (620): Four Lakes 1928-2005 (628) | Insurance Company of North America | Unknown | 7/10/1972 | 11/16/1977 | 7/10/1972 | 11/16/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Glaciers Edge (620): Four Lakes 1928-2005 (628) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 44 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Glaciers Edge (620): Four Lakes 1928-2005 (628) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Glaciers Edge (620): Four Lakes 1928-2005 (628) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Glaciers Edge (620): Sinnissippi 1966-2005 (626) | Insurance Company of North America | SBL 45383 | 4/28/1966 | 4/28/1967 | 4/28/1966 | 4/28/1967 | $ - | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Glaciers Edge (620): Sinnissippi 1966-2005 (626) | Insurance Company of North America | SBL 45383 | 4/28/1967 | 4/28/1968 | 4/28/1967 | 4/28/1968 | $ - | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Glaciers Edge (620): Sinnissippi 1966-2005 (626) | Insurance Company of North America | SBL 45383 | 4/28/1968 | 4/28/1969 | 4/28/1968 | 4/28/1969 | $ - | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Glaciers Edge (620): Sinnissippi 1966-2005 (626) | Insurance Company of North America | SBL 50448 | 4/28/1969 | 4/28/1970 | 4/28/1969 | 4/28/1970 | $ - | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Glaciers Edge (620): Sinnissippi 1966-2005 (626) | Insurance Company of North America | SBL 50448 | 4/28/1970 | 4/28/1971 | 4/28/1970 | 4/28/1971 | $ - | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Glaciers Edge (620): Sinnissippi 1966-2005 (626) | Insurance Company of North America | SBL 50448 | 4/28/1971 | 4/28/1972 | 4/28/1971 | 4/28/1972 | $ - | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Glaciers Edge (620): Sinnissippi 1966-2005 (626) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 41 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Glaciers Edge (620): Sinnissippi 1966-2005 (626) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Glaciers Edge (620): Sinnissippi 1966-2005 (626) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220257 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Empire (47): Buttes Area 1924-1992 (647) | New Hampshire Insurance Company | GLA 332348 | 12/20/1976 | 12/20/1977 | 12/20/1976 | 12/20/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Golden Empire (47): Buttes Area 1924-1992 (647) | New Hampshire Insurance Company | SLP 290281 | 12/20/1976 | 12/20/1977 | 12/20/1976 | 12/20/1977 | $ 50,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Golden Empire (47): Buttes Area 1924-1992 (647) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219887 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Empire (47): Buttes Area 1924-1992 (647) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Golden Empire (47): Golden Empire 1937- (47) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Golden Empire (47): Golden Empire 1937- (47) | Hartford Accident and Indemnity Company | S 4 C 990478 | 7/1/1972 | 7/1/1973 | 7/1/1972 | 7/1/1973 | $ - | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE)? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Golden Empire (47): Golden Empire 1937- (47) | Hartford Accident and Indemnity Company | 54C 990478 | 7/1/1973 | 7/1/1974 | 7/1/1973 | 7/1/1974 | $ - | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Empire (47): Golden Empire 1937- (47) | Hartford Accident and Indemnity Company | 54C 990478 | 7/1/1974 | 7/1/1975 | 7/1/1974 | 7/1/1975 | $ - | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Empire (47): Golden Empire 1937- (47) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Golden Empire (47): Golden Empire 1937- (47) | National Union Fire Insurance Company of Pittsburgh, PA | 8E121 69 47 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Empire (47): Golden Empire 1937- (47) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Empire (47): Golden Empire 1937- (47) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Golden Empire (47): Golden Empire 1937- (47) | National Union Fire Insurance Company of Pittsburgh, PA | 8E 1219895 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Empire (47): Golden Empire 1937- (47) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Golden Empire (47): Mount Lassen Area 1924-1992 (36) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Golden Empire (47): Mount Lassen Area 1924-1992 (36) | National Union Fire Insurance Company of Pittsburgh, PA | 8E121 69 30 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Empire (47): Mount Lassen Area 1924-1992 (36) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Empire (47): Mount Lassen Area 1924-1992 (36) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 10/20/1977 | 1/1/1977 | 10/20/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Golden Empire (47): Mount Lassen Area 1924-1992 (36) | National Union Fire Insurance Company of Pittsburgh, PA | 8E 1219879 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Empire (47): Mount Lassen Area 1924-1992 (36) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): Alameda -2020 (22) | Insurance Company of North America | SBL 5 11 80 | 3/2/1969 | 3/2/1970 | 3/2/1969 | 3/2/1970 | $ - | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): Alameda -2020 (22) | Insurance Company of North America | SBL 5 11 80 | 3/2/1970 | 3/2/1971 | 3/2/1970 | 3/2/1971 | $ - | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): Alameda -2020 (22) | Insurance Company of North America | SBL 5 11 80 | 3/2/1971 | 3/1/1972 | 3/2/1971 | 3/1/1972 | $ - | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): Alameda -2020 (22) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Golden Gate Area (23): Alameda -2020 (22) | National Union Fire Insurance Company of Pittsburgh, PA | 8E121 69 27 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): Alameda -2020 (22) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): Alameda -2020 (22) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Golden Gate Area (23): Alameda -2020 (22) | National Union Fire Insurance Company of Pittsburgh, PA | 8E 1219876 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): Alameda -2020 (22) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): Mount Diablo 1951-1992 (23) | New Hampshire Insurance Company | Unknown | 6/1/1967 | 6/1/1968 | 6/1/1967 | 6/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Golden Gate Area (23): Mount Diablo 1951-1992 (23) | New Hampshire Insurance Company | Unknown | 6/1/1968 | 6/1/1969 | 6/1/1968 | 6/1/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Golden Gate Area (23): Mount Diablo 1951-1992 (23) | New Hampshire Insurance Company | Unknown | 6/1/1969 | 6/1/1970 | 6/1/1969 | 6/1/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Golden Gate Area (23): Mount Diablo 1951-1992 (23) | New Hampshire Insurance Company | SLP 29 01 82 | 6/1/1970 | 6/1/1971 | 6/1/1970 | 6/1/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Golden Gate Area (23): Mount Diablo 1951-1992 (23) | New Hampshire Insurance Company | SLP 29 01 82 | 6/1/1971 | 6/1/1972 | 6/1/1971 | 6/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Golden Gate Area (23): Mount Diablo 1951-1992 (23) | New Hampshire Insurance Company | SLP 29 01 82 | 6/1/1972 | 6/1/1973 | 6/1/1972 | 6/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Golden Gate Area (23): Mount Diablo 1951-1992 (23) | New Hampshire Insurance Company | UL 53-41-82 | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ 500,000.00 | $ 2,000,000.00 | $2,000,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): Mount Diablo 1951-1992 (23) | New Hampshire Insurance Company | SLP 29-02-40 | 6/1/1973 | 6/1/1974 | 6/1/1973 | 6/1/1974 | $ - | Unknown? | Unknown? | Unknown | Unknown | PE |
| Golden Gate Area (23): Mount Diablo 1951-1992 (23) | New Hampshire Insurance Company | UL 78-86-53 | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ 500,000.00 | $ 2,000,000.00 | $2,000,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): Mount Diablo 1951-1992 (23) | New Hampshire Insurance Company | SLP 29-02-40 | 6/1/1974 | 6/1/1975 | 6/1/1974 | 6/1/1975 | $ - | Unknown? | Unknown? | Unknown | Unknown | PE |
| Golden Gate Area (23): Mount Diablo 1951-1992 (23) | New Hampshire Insurance Company | UL 05-09-92 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ 500,000.00 | $ 2,000,000.00 | $2,000,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): Mount Diablo 1951-1992 (23) | New Hampshire Insurance Company | SLP 29-02-40 | 6/1/1975 | 6/1/1976 | 6/1/1975 | 6/1/1976 | $ - | Unknown? | Unknown? | Unknown | Unknown | PE |
| Golden Gate Area (23): Mount Diablo 1951-1992 (23) | National Union Fire Insurance Company of Pittsburgh, PA | 8E121 69 60 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): Mount Diablo 1951-1992 (23) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): Mount Diablo 1951-1992 (23) | New Hampshire Insurance Company | SLP 27-56-38 | 6/1/1976 | 6/1/1977 | 6/1/1976 | 6/1/1977 | $ - | Unknown? | Unknown? | Unknown | Unknown | PE |
| Golden Gate Area (23): Mount Diablo 1951-1992 (23) | National Union Fire Insurance Company of Pittsburgh, PA | 8E 1219908 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): Mount Diablo 1951-1992 (23) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): Mount Diablo 1951-1992 (23) | Jefferson Insurance Company of New York | GLA 303461 | 6/1/1977 | 6/1/1978 | 6/1/1977 | 6/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Golden Gate Area (23): Mount Diablo 1951-1992 (23) | Jefferson Insurance Company of New York | GLA 303463 | 6/1/1977 | 6/1/1978 | 6/1/1977 | 6/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Golden Gate Area (23): Mount Diablo 1951-1992 (23) | New Hampshire Insurance Company | GLA 282525 | 6/1/1977 | 6/1/1978 | 6/1/1977 | 6/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Golden Gate Area (23): Mount Diablo 1951-1992 (23) | Ambassador Insurance Company | 26094 | 6/1/1977 | 5/1/1978 | 6/1/1977 | 5/1/1978 | $ 50,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Golden Gate Area (23): Mount Diablo Silverado 1992-2020 (23) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): Mount Diablo Silverado 1992-2020 (23) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): San Francisco Bay Area 1965-2020 (28) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Golden Gate Area (23): San Francisco Bay Area 1965-2020 (28) | National Union Fire Insurance Company of Pittsburgh, PA | 8E121 69 41 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): San Francisco Bay Area 1965-2020 (28) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): San Francisco Bay Area 1965-2020 (28) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Golden Gate Area (23): San Francisco Bay Area 1965-2020 (28) | National Union Fire Insurance Company of Pittsburgh, PA | 8E 1219889 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): San Francisco Bay Area 1965-2020 (28) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): Silverado Area 1928-1992 (38) | Insurance Company of North America | SBL 4 29 83 | 4/28/1965 | 4/28/1966 | 4/28/1965 | 4/28/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Golden Gate Area (23): Silverado Area 1928-1992 (38) | Insurance Company of North America | SBL 4 29 83 | 4/28/1966 | 4/28/1967 | 4/28/1966 | 4/28/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Golden Gate Area (23): Silverado Area 1928-1992 (38) | Insurance Company of North America | SBL 4 29 83 | 4/28/1967 | 4/28/1968 | 4/28/1967 | 4/28/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Golden Gate Area (23): Silverado Area 1928-1992 (38) | Insurance Company of North America | SBL 4 69 32 | 4/28/1968 | 4/28/1969 | 4/28/1968 | 4/28/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): Silverado Area 1928-1992 (38) | Insurance Company of North America | SBL 4 69 32 | 4/28/1969 | 4/28/1970 | 4/28/1969 | 4/28/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): Silverado Area 1928-1992 (38) | Insurance Company of North America | SBL 4 69 32 | 4/28/1970 | 4/28/1971 | 4/28/1970 | 4/28/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): Silverado Area 1928-1992 (38) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Golden Gate Area (23): Silverado Area 1928-1992 (38) | National Union Fire Insurance Company of Pittsburgh, PA | 8E121 69 57 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): Silverado Area 1928-1992 (38) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): Silverado Area 1928-1992 (38) | New Hampshire Insurance Company | GLA 332356 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | $ 50,000.00 | $ 50,000.00 | Unknown | Unknown | SE |
| Golden Gate Area (23): Silverado Area 1928-1992 (38) | National Union Fire Insurance Company of Pittsburgh, PA | 8E 1219905 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Gate Area (23): Silverado Area 1928-1992 (38) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Golden Spread (562): Adobe Walls Area 1934-1986 (569) | National Union Fire Insurance Company of Pittsburgh, PA | 8E121 73 84 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Spread (562): Adobe Walls Area 1934-1986 (569) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Spread (562): Adobe Walls Area 1934-1986 (569) | National Union Fire Insurance Company of Pittsburgh, PA | 8E 1220215 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Spread (562): Adobe Walls Area 1934-1986 (569) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Golden Spread (562): Llano Estacado 1939-1986 (562) | National Union Fire Insurance Company of Pittsburgh, PA | 8E121 73 71 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Spread (562): Llano Estacado 1939-1986 (562) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Spread (562): Llano Estacado 1939-1986 (562) | National Union Fire Insurance Company of Pittsburgh, PA | 8E 1220202 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Golden Spread (562): Llano Estacado 1939-1986 (562) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Grand Canyon (10): Copper 1962-1977 (9) | National Union Fire Insurance Company of Pittsburgh, PA | 8E121 69 20 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Grand Canyon (10): Copper 1962-1977 (9) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Grand Canyon (10): Copper 1962-1977 (9) | National Union Fire Insurance Company of Pittsburgh, PA | 8E 1219869 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Grand Canyon (10): Copper 1962-1977 (9) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Grand Canyon (10): Grand Canyon 1944-1993 (12) | Insurance Company of North America | SBL 4 29 93 | 4/1/1965 | 4/1/1966 | 4/1/1965 | 4/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Grand Canyon (10): Grand Canyon 1944-1993 (12) | Insurance Company of North America | SBL 4 29 93 | 4/1/1966 | 4/1/1967 | 4/1/1966 | 4/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Grand Canyon (10): Grand Canyon 1944-1993 (12) | Insurance Company of North America | SBL 4 69 31 | 4/1/1968 | 4/1/1969 | 4/1/1968 | 4/1/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Grand Canyon (10): Grand Canyon 1944-1993 (12) | Insurance Company of North America | SBL 4 69 31 | 4/1/1969 | 4/1/1970 | 4/1/1969 | 4/1/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Grand Canyon (10): Grand Canyon 1944-1993 (12) | Insurance Company of North America | SBL 4 69 31 | 4/1/1970 | 4/1/1971 | 4/1/1970 | 4/1/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Grand Canyon (10): Grand Canyon 1944-1993 (12) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Grand Canyon (10): Grand Canyon 1944-1993 (12) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 18 | 1/1/1996 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Grand Canyon (10): Grand Canyon 1944-1993 (12) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Grand Canyon (10): Grand Canyon 1944-1993 (12) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Grand Canyon (10): Grand Canyon 1944-1993 (12) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1218867 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Grand Canyon (10): Grand Canyon 1944-1993 (12) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Grand Canyon (10): Theodore Roosevelt 1962-1993 (10) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Grand Canyon (10): Theodore Roosevelt 1962-1993 (10) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 19 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Grand Canyon (10): Theodore Roosevelt 1962-1993 (10) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Grand Canyon (10): Theodore Roosevelt 1962-1993 (10) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219868 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Grand Canyon (10): Theodore Roosevelt 1962-1993 (10) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Grand Canyon (10): Theodore Roosevelt 1962-1993 (10) | New Hampshire Insurance Company | GLA 282441 | 2/15/1977 | 2/15/1978 | 2/15/1977 | 2/15/1978 | $ - | $ 50,000.00 | $ 50,000.00 | Unknown | Unknown | SE |
| Grand Canyon (10): Theodore Roosevelt 1962-1993 (10) | Ambassador Insurance Company | GLA 282436 | 2/15/1977 | 2/15/1978 | 2/15/1977 | 2/15/1978 | $ 50,000.00 | $ 450,000.00 | $ 450,000.00 | Unknown | Unknown | SE |
| Grand Columbia (614): Fort Simcoe Area 1954-1992 (614) | Insurance Company of North America | SBL 5 15 52 | 5/7/1971 | 5/7/1972 | 5/7/1971 | 5/7/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Grand Columbia (614): Fort Simcoe Area 1954-1992 (614) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 31 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Grand Columbia (614): Fort Simcoe Area 1954-1992 (614) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Grand Columbia (614): Fort Simcoe Area 1954-1992 (614) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220248 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Grand Columbia (614): Fort Simcoe Area 1954-1992 (614) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Grand Columbia (614): North Central Washington 1924-1992 (613) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 30 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Grand Columbia (614): North Central Washington 1924-1992 (613) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Grand Columbia (614): North Central Washington 1924-1992 (613) | St. Paul Fire and Marine Insurance Company | 584IB6952 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Grand Columbia (614): North Central Washington 1924-1992 (613) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220247 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Grand Columbia (614): North Central Washington 1924-1992 (613) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Grand Teton (107): Tendoy Area 1934-1993 (109) | Insurance Company of North America | SBL 4 29 90 | 6/1/1965 | 6/1/1966 | 6/1/1965 | 6/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Grand Teton (107): Tendoy Area 1934-1993 (109) | Insurance Company of North America | SBL 4 29 90 | 6/1/1966 | 6/1/1967 | 6/1/1966 | 6/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Grand Teton (107): Tendoy Area 1934-1993 (109) | Insurance Company of North America | SBL 4 29 90 | 6/1/1967 | 6/1/1968 | 6/1/1967 | 6/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Grand Teton (107): Tendoy Area 1934-1993 (109) | Insurance Company of North America | SBL 4 69 48 | 6/1/1968 | 6/1/1969 | 6/1/1968 | 6/1/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Grand Teton (107): Tendoy Area 1934-1993 (109) | Insurance Company of North America | SBL 4 69 48 | 6/1/1969 | 6/1/1970 | 6/1/1969 | 6/1/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Grand Teton (107): Tendoy Area 1934-1993 (109) | Insurance Company of North America | SBL 4 69 48 | 6/1/1970 | 6/1/1971 | 6/1/1970 | 6/1/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Grand Teton (107): Tendoy Area 1934-1993 (109) | Insurance Company of North America | SBL 51558 | 6/1/1971 | 6/1/1972 | 6/1/1971 | 6/1/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Grand Teton (107): Tendoy Area 1934-1993 (109) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 06 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Grand Teton (107): Tendoy Area 1934-1993 (109) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Grand Teton (107): Tendoy Area 1934-1993 (109) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219953 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Grand Teton (107): Tendoy Area 1934-1993 (109) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Grand Teton (107): Teton Peaks 1925-1993 (107) | Insurance Company of North America | SBL 45400 | 12/1/1965 | 12/1/1966 | 12/1/1965 | 12/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Grand Teton (107): Teton Peaks 1925-1993 (107) | Insurance Company of North America | SBL 45400 | 12/1/1966 | 12/1/1967 | 12/1/1966 | 12/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Grand Teton (107): Teton Peaks 1925-1993 (107) | Insurance Company of North America | SBL 45400 | 12/1/1967 | 12/1/1968 | 12/1/1967 | 12/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Grand Teton (107): Teton Peaks 1925-1993 (107) | Insurance Company of North America | SBL 50432 | 12/1/1968 | 12/1/1969 | 12/1/1968 | 12/1/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Grand Teton (107): Teton Peaks 1925-1993 (107) | Insurance Company of North America | SBL 50432 | 12/1/1969 | 12/1/1970 | 12/1/1969 | 12/1/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Grand Teton (107): Teton Peaks 1925-1993 (107) | Insurance Company of North America | SBL 50432 | 12/1/1970 | 12/1/1971 | 12/1/1970 | 12/1/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Grand Teton (107): Teton Peaks 1925-1993 (107) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 04 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Grand Teton (107): Teton Peaks 1925-1993 (107) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Grand Teton (107): Teton Peaks 1925-1993 (107) | Western Casualty & Surety Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Grand Teton (107): Teton Peaks 1925-1993 (107) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219951 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Grand Teton (107): Teton Peaks 1925-1993 (107) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Great Alaska (610): Southeast Alaska 1955-2006 (608) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Great Alaska (610): Southeast Alaska 1955-2006 (608) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 17 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Alaska (610): Southeast Alaska 1955-2006 (608) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Alaska (610): Southeast Alaska 1955-2006 (608) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Great Alaska (610): Southeast Alaska 1955-2006 (608) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219866 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Alaska (610): Southeast Alaska 1955-2006 (608) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Great Alaska (610): Western Alaska 1954-2005 (610) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Great Alaska (610): Western Alaska 1954-2005 (610) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 15 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Alaska (610): Western Alaska 1954-2005 (610) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Alaska (610): Western Alaska 1954-2005 (610) | New Hampshire Insurance Company | GLA 282428 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Great Alaska (610): Western Alaska 1954-2005 (610) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219864 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Alaska (610): Western Alaska 1954-2005 (610) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Great Lakes FSC (784): Great Lakes FSC (784) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Lakes FSC (784): Great Lakes FSC (784) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Great Rivers (653): Great Rivers 1951- (653) | Insurance Company of North America | SBL 5 13 03 | 11/26/1969 | 1/1/1970 | 11/26/1969 | 1/1/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Rivers (653): Great Rivers 1951- (653) | Columbia Insurance Company | Unknown | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Great Rivers (653): Great Rivers 1951- (653) | Columbia Insurance Company | Unknown | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Great Rivers (653): Great Rivers 1951- (653) | Columbia Insurance Company | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Great Rivers (653): Great Rivers 1951- (653) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Great Rivers (653): Great Rivers 1951- (653) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Great Rivers (653): Great Rivers 1951- (653) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 12 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Rivers (653): Great Rivers 1951- (653) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Rivers (653): Great Rivers 1951- (653) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Great Rivers (653): Great Rivers 1951- (653) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220162 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Rivers (653): Great Rivers 1951- (653) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Great Smoky Mountain (557): Great Smoky Mountain (557) | Insurance Company of North America | Unknown | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Great Smoky Mountain (557): Great Smoky Mountain (557) | Insurance Company of North America | Unknown | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Great Smoky Mountain (557): Great Smoky Mountain (557) | Insurance Company of North America | Unknown | 1/1/1972 | 4/1/1972 | 1/1/1972 | 4/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Great Smoky Mountain (557): Great Smoky Mountain (557) | Unknown | Unknown | 4/1/1972 | 4/1/1973 | 4/1/1972 | 4/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Great Smoky Mountain (557): Great Smoky Mountain (557) | Unknown | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Great Smoky Mountain (557): Great Smoky Mountain (557) | Unknown | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ 500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Great Smoky Mountain (557): Great Smoky Mountain (557) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 67 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Smoky Mountain (557): Great Smoky Mountain (557) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Smoky Mountain (557): Great Smoky Mountain (557) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220269 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Smoky Mountain (557): Great Smoky Mountain (557) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Great Southwest (412): Great Southwest Area 1976-1982 (412) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Southwest (412): Great Southwest Area 1976-1982 (412) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220298 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Southwest (412): Great Southwest Area 1976-1982 (412) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Great Southwest (412): Kit Carson 1955-1976 (412) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 46 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Southwest (412): Kit Carson 1955-1976 (412) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Trail (433): Akron Area 1915-1971 (433) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Great Trail (433): Great Trail 1971- (433) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 73 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Great Trail (433): Great Trail 1971- (433) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 94 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Trail (433): Great Trail 1971- (433) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Trail (433): Great Trail 1971- (433) | National Union Fire Insurance Company of Pittsburgh, PA | BE 122024 I | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Trail (433): Great Trail 1971- (433) | National Union Fire Insurance Company of Pittsburgh, PA | BE 122024 I | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Trail (433): Great Trail 1971- (433) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Great Trail (433): Mahoning Valley 1927-1993 (466) | Insurance Company of North America | Unknown | 3/11/1964 | 3/11/1965 | 3/11/1964 | 3/11/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Great Trail (433): Mahoning Valley 1927-1993 (466) | Insurance Company of North America | Unknown | 3/11/1965 | 3/11/1966 | 3/11/1965 | 3/11/1966 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | SE |
| Great Trail (433): Mahoning Valley 1927-1993 (466) | Insurance Company of North America | Unknown | 3/11/1966 | 3/11/1967 | 3/11/1966 | 3/11/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Great Trail (433): Mahoning Valley 1927-1993 (466) | Insurance Company of North America | SBL 4 29 61 | 3/11/1967 | 3/11/1968 | 3/11/1967 | 3/11/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Great Trail (433): Mahoning Valley 1927-1993 (466) | Insurance Company of North America | SBL 4 69 16 | 3/11/1968 | 3/11/1969 | 3/11/1968 | 3/11/1969 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Great Trail (433): Mahoning Valley 1927-1993 (466) | Insurance Company of North America | SBL 4 69 16 | 3/11/1969 | 3/11/1970 | 3/11/1969 | 3/11/1970 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Great Trail (433): Mahoning Valley 1927-1993 (466) | Insurance Company of North America | SBL 4 69 16 | 3/11/1970 | 3/11/1971 | 3/11/1970 | 3/11/1971 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Great Trail (433): Mahoning Valley 1927-1993 (466) | Insurance Company of North America | Unknown | 3/11/1971 | 3/11/1972 | 3/11/1971 | 3/11/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Great Trail (433): Mahoning Valley 1927-1993 (466) | Buckeye Union Insurance Company | Unknown | 4/30/1975 | 4/30/1976 | 4/30/1975 | 4/30/1976 | $ - | $ 2,300,000.00 | $ 2,300,000.00 | Unknown | Unknown | SE |
| Great Trail (433): Mahoning Valley 1927-1993 (466) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 15 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Trail (433): Mahoning Valley 1927-1993 (466) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Trail (433): Mahoning Valley 1927-1993 (466) | Buckeye Union Insurance Company | Unknown | 4/30/1976 | 4/30/1977 | 4/30/1976 | 4/30/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Great Trail (433): Mahoning Valley 1927-1993 (466) | National Union Fire Insurance Company of Pittsburgh, PA | BE 122008 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Trail (433): Mahoning Valley 1927-1993 (466) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Great Trail (433): Mahoning Valley 1927-1993 (466) | Buckeye Union Insurance Company | Unknown | 4/30/1977 | 4/30/1978 | 4/30/1977 | 4/30/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Great Trail (433): Northeast Ohio 1929-1993 (463) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 08 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Trail (433): Northeast Ohio 1929-1993 (463) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Trail (433): Northeast Ohio 1929-1993 (463) | National Union Fire Insurance Company of Pittsburgh, PA | BE 122006 I | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Trail (433): Northeast Ohio 1929-1993 (463) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Great Trail (433): Northeast Ohio 1929-1993 (463) | Hartford Accident and Indemnity Company | 45 C8P 132079 | 8/1/1981 | 8/1/1982 | 8/1/1981 | 8/1/1982 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Great Trail (433): Northeast Ohio 1929-1993 (463) | Hartford Accident and Indemnity Company | 45 C8P 132079 | 8/1/1982 | 8/1/1983 | 8/1/1982 | 8/1/1983 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Great Trail (433): Northeast Ohio 1929-1993 (463) | Hartford Accident and Indemnity Company | 45 C8P 132079 | 8/1/1983 | 8/1/1984 | 8/1/1983 | 8/1/1984 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Great Trail (433): Western Reserve 1948-1993 (461) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 14 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Trail (433): Western Reserve 1948-1993 (461) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Trail (433): Western Reserve 1948-1993 (461) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 11/16/1977 | 1/1/1977 | 11/16/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Great Trail (433): Western Reserve 1948-1993 (461) | National Union Fire Insurance Company of Pittsburgh, PA | BE 122006 7 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Great Trail (433): Western Reserve 1948-1993 (461) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater Alabama (1): Birmingham Area 1915-1996 (2) | Unknown | Unknown | 8/1/1959 | 8/1/1960 | 8/1/1959 | 8/1/1960 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Alabama (1): Birmingham Area 1915-1996 (2) | Unknown | Unknown | 8/1/1960 | 8/1/1961 | 8/1/1960 | 8/1/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Alabama (1): Birmingham Area 1915-1996 (2) | Insurance Company of North America | Unknown | 8/1/1966 | 8/1/1967 | 8/1/1966 | 8/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Alabama (1): Birmingham Area 1915-1996 (2) | Insurance Company of North America | SBL 48816 | 8/4/1968 | 8/4/1969 | 8/4/1968 | 8/4/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Alabama (1): Birmingham Area 1915-1996 (2) | Insurance Company of North America | SBL 2 42 03 | 8/4/1969 | 8/4/1970 | 8/4/1969 | 8/4/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater Alabama (1): Birmingham Area 1915-1996 (2) | Insurance Company of North America | Unknown | 8/4/1970 | 8/4/1971 | 8/4/1970 | 8/4/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Alabama (1): Birmingham Area 1915-1996 (2) | Insurance Company of North America | Unknown | 8/4/1971 | 8/4/1972 | 8/4/1971 | 8/4/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Alabama (1): Birmingham Area 1915-1996 (2) | Insurance Company of North America | Unknown | 8/4/1972 | 9/16/1972 | 8/4/1972 | 9/16/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Alabama (1): Birmingham Area 1915-1996 (2) | New Hampshire Insurance Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Alabama (1): Birmingham Area 1915-1996 (2) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Alabama (1): Birmingham Area 1915-1996 (2) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 07 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Alabama (1): Birmingham Area 1915-1996 (2) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Alabama (1): Birmingham Area 1915-1996 (2) | National Union Fire Insurance Company of Pittsburgh, PA | BE 121985 8 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Alabama (1): Birmingham Area 1915-1996 (2) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater Alabama (1): Birmingham Area 1915-1996 (2) | Ambassador Insurance Company | Unknown | 1/14/1977 | 1/14/1978 | 1/14/1977 | 1/14/1978 | $ 50,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Alabama (1): Choccolocco 1921-1998 (1) | Insurance Company of North America | Unknown | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Alabama (1): Choccolocco 1921-1998 (1) | National Union Fire Insurance Company of Pittsburgh, PA | BE121696 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Alabama (1): Choccolocco 1921-1998 (1) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Alabama (1): Choccolocco 1921-1998 (1) | National Union Fire Insurance Company of Pittsburgh, PA | BE 121985 7 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Alabama (1): Choccolocco 1921-1998 (1) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater Alabama (1): Tennessee Valley 1934-1998 (659) | Insurance Company of North America | SBL 3 96 65 | 3/25/1966 | 3/25/1967 | 3/25/1966 | 3/25/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Alabama (1): Tennessee Valley 1934-1998 (659) | Insurance Company of North America | SBL 3 96 65 | 3/25/1967 | 3/25/1968 | 3/25/1967 | 3/25/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Alabama (1): Tennessee Valley 1934-1998 (659) | Insurance Company of North America | SBL 3 96 65 | 3/25/1968 | 3/25/1969 | 3/25/1968 | 3/25/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Alabama (1): Tennessee Valley 1934-1998 (659) | Insurance Company of North America | SBL 4 88 22 | 3/25/1969 | 3/25/1970 | 3/25/1969 | 3/25/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Alabama (1): Tennessee Valley 1934-1998 (659) | Insurance Company of North America | SBL 4 88 22 | 3/25/1970 | 3/25/1971 | 3/25/1970 | 3/25/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Alabama (1): Tennessee Valley 1934-1998 (659) | Insurance Company of North America | SBL 4 88 22 | 3/25/1971 | 3/25/1972 | 3/25/1971 | 3/25/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Alabama (1): Tennessee Valley 1934-1998 (659) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Alabama (1): Tennessee Valley 1934-1998 (659) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 10 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Alabama (1): Tennessee Valley 1934-1998 (659) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Alabama (1): Tennessee Valley 1934-1998 (659) | Insurance Company of North America | GLA 301317 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Alabama (1): Tennessee Valley 1934-1998 (659) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219860 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Alabama (1): Tennessee Valley 1934-1998 (659) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Dutchess County 1919-1996 (374) | Insurance Company of North America | GAL-40312 | 3/24/1968 | 3/24/1969 | 3/24/1968 | 3/24/1969 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Dutchess County 1919-1996 (374) | Insurance Company of North America | GAL-8-46-50 | 3/24/1969 | 3/24/1970 | 3/24/1969 | 3/24/1970 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Dutchess County 1919-1996 (374) | Insurance Company of North America | GAL-8-61-59 | 3/24/1970 | 3/24/1971 | 3/24/1970 | 3/24/1971 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Dutchess County 1919-1996 (374) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 61 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Dutchess County 1919-1996 (374) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Dutchess County 1919-1996 (374) | Unknown | VBP69823-04 | 9/1/1976 | 9/1/1977 | 9/1/1976 | 9/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Dutchess County 1919-1996 (374) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220014 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Dutchess County 1919-1996 (374) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Hudson-Delaware 1958-1996 (392) | Unknown | Unknown | 6/27/1973 | 6/27/1974 | 6/27/1973 | 6/27/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Hudson-Delaware 1958-1996 (392) | XBC 83413 | XBC 83413 | 6/27/1974 | 6/27/1975 | 6/27/1974 | 6/27/1975 | $ 300,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Hudson-Delaware 1958-1996 (392) | XBC 83413 | XBC 83413 | 6/27/1974 | 6/27/1975 | 6/27/1974 | 6/27/1975 | $ 300,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Hudson-Delaware 1958-1996 (392) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 67 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Hudson-Delaware 1958-1996 (392) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Hudson-Delaware 1958-1996 (392) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220018 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Hudson-Delaware 1958-1996 (392) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Hutchinson River 1962-1973 (401) | Aetna Casualty and Surety Company | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Hutchinson River 1962-1973 (401) | Aetna Casualty and Surety Company | Unknown | 1/1/1963 | 1/1/1964 | 1/1/1963 | 1/1/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Hutchinson River 1962-1973 (401) | Aetna Casualty and Surety Company | Unknown | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Hutchinson River 1962-1973 (401) | Aetna Casualty and Surety Company | Unknown | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |

Data Privacy - This document contains private information.
Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Greater Hudson Valley (388): Hutchinson River 1962-1973 (401) | Aetna Casualty and Surety Company | Unknown | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Hutchinson River 1962-1973 (401) | Aetna Casualty and Surety Company | Unknown | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Rockland County 1924-1996 (683) | Fireman's Fund Insurance Company | 16644883 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Rockland County 1924-1996 (683) | Fireman's Fund Insurance Company | LX2667007 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Rockland County 1924-1996 (683) | Fireman's Fund Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Rockland County 1924-1996 (683) | National Union Fire Insurance Company of Pittsburgh, PA | 8E121 71 75 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $  500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Rockland County 1924-1996 (683) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,500,000.00 | $ 1,500,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Rockland County 1924-1996 (683) | National Union Fire Insurance Company of Pittsburgh, PA | 8E 1220028 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $  500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Rockland County 1924-1996 (683) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Rockland County 1924-1996 (683) | New Hampshire Insurance Company | GLA 282494 | 5/10/1977 | 5/10/1978 | 5/10/1977 | 5/10/1978 | $  50,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Rockland County 1924-1996 (683) | New Hampshire Insurance Company | 5LP 275625 | 5/20/1977 | 5/20/1978 | 5/20/1977 | 5/20/1978 | $ - | $  50,000.00 | $  50,000.00 | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Rockland County 1924-1996 (683) | New Hampshire Insurance Company | GLA 282494 | 5/10/1978 | 5/20/1978 | 5/10/1978 | 5/20/1978 | $  50,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Swanoy 1922-1958 (401) | Travelers Indemnity Company | Unknown | 8/1/1950 | 8/1/1951 | 8/1/1950 | 8/1/1951 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Swanoy 1922-1958 (401) | Aetna Casualty and Surety Company | Unknown | 1/1/1953 | 1/1/1954 | 1/1/1953 | 1/1/1954 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Swanoy 1922-1958 (401) | Aetna Casualty and Surety Company | Unknown | 1/1/1954 | 1/1/1955 | 1/1/1954 | 1/1/1955 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Swanoy 1922-1958 (401) | Aetna Casualty and Surety Company | Unknown | 1/1/1955 | 1/1/1956 | 1/1/1955 | 1/1/1956 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Swanoy 1922-1958 (401) | Aetna Casualty and Surety Company | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Swanoy 1922-1958 (401) | Aetna Casualty and Surety Company | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Swanoy 1922-1958 (401) | Aetna Casualty and Surety Company | Unknown | 1/1/1957 | 1/1/1958 | 1/1/1957 | 1/1/1958 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Swanoy-Bronx Valley 1958-1962 (401) | Aetna Casualty and Surety Company | Unknown | 1/1/1958 | 1/1/1959 | 1/1/1958 | 1/1/1959 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Swanoy-Bronx Valley 1958-1962 (401) | Aetna Casualty and Surety Company | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Swanoy-Bronx Valley 1958-1962 (401) | Aetna Casualty and Surety Company | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Swanoy-Bronx Valley 1958-1962 (401) | Aetna Casualty and Surety Company | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Unknown | Unknown | 1/1/1951 | 1/1/1952 | 1/1/1951 | 1/1/1952 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Unknown | Unknown | 1/1/1952 | 1/1/1953 | 1/1/1952 | 1/1/1953 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Unknown | Unknown | 1/1/1953 | 1/1/1954 | 1/1/1953 | 1/1/1954 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Unknown | Unknown | 1/1/1954 | 1/1/1955 | 1/1/1954 | 1/1/1955 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Unknown | Unknown | 1/1/1955 | 1/1/1956 | 1/1/1955 | 1/1/1956 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Unknown | Unknown | 1/1/1957 | 1/1/1958 | 1/1/1957 | 1/1/1958 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Unknown | Unknown | 1/1/1958 | 1/1/1959 | 1/1/1958 | 1/1/1959 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Unknown | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Unknown | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Unknown | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Unknown | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Unknown | Unknown | 1/1/1963 | 1/1/1964 | 1/1/1963 | 1/1/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Unknown | Unknown | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Insurance Company of North America | Unknown | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Insurance Company of North America | XBC 27296 | 6/1/1968 | 6/1/1969 | 6/1/1968 | 6/1/1969 | $  500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Aetna Casualty and Surety Company | 74AL141036 | 2/1/1969 | 2/1/1970 | 2/1/1969 | 2/1/1970 | $ - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Insurance Company of North America | XBC 27379 | 6/1/1969 | 6/1/1970 | 6/1/1969 | 6/1/1970 | $  500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Aetna Casualty and Surety Company | 74AL141036 | 2/1/1970 | 6/1/1970 | 2/1/1970 | 6/1/1970 | $ - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | SE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Insurance Company of North America | XBC 27487 | 6/1/1970 | 6/1/1971 | 6/1/1970 | 6/1/1971 | $ - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Hartford Fire Insurance Company | 02 SMP 111101 | 1/20/1976 | 1/20/1977 | 1/20/1976 | 1/20/1977 | $ - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Hartford Fire Insurance Company | 02 SMP 111101 | 1/20/1977 | 1/20/1978 | 1/20/1977 | 1/20/1978 | $ - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Hartford Fire Insurance Company | 02 SMP 111101 | 1/20/1978 | 1/20/1979 | 1/20/1978 | 1/20/1979 | $ - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Hartford Fire Insurance Company | 02 SMP 117538 | 1/20/1979 | 1/20/1980 | 1/20/1979 | 1/20/1980 | $ - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Hartford Fire Insurance Company | 02 SMP 117538 | 1/20/1980 | 1/20/1981 | 1/20/1980 | 1/20/1981 | $ - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Hartford Fire Insurance Company | 02 SMP 117538 | 1/20/1981 | 1/20/1982 | 1/20/1981 | 1/20/1982 | $ - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Hartford Casualty Insurance Company | 02 SMP 118672 | 1/20/1982 | 1/20/1983 | 1/20/1982 | 1/20/1983 | $ - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Hartford Casualty Insurance Company | 02 SMP 118672 | 1/20/1983 | 1/20/1984 | 1/20/1983 | 1/20/1984 | $ - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Hartford Casualty Insurance Company | 02 SMP 118672 | 1/20/1984 | 1/20/1985 | 1/20/1984 | 1/20/1985 | $ - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Hartford Casualty Insurance Company | 02 SMP WC7495 | 1/20/1984 | 1/20/1985 | 1/20/1984 | 1/20/1985 | $ - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Washington Irving 1951-1973 (388) | Hartford Casualty Insurance Company | 02 UUC NW2936 | 1/20/1985 | 1/20/1986 | 1/20/1985 | 1/20/1986 | $ - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Westchester-Putnam 1973-2021 (388) | National Union Fire Insurance Company of Pittsburgh, PA | 8E121 71 79 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $  500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Westchester-Putnam 1973-2021 (388) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Westchester-Putnam 1973-2021 (388) | National Union Fire Insurance Company of Pittsburgh, PA | 8E 1220033 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $  500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Hudson Valley (388): Westchester-Putnam 1973-2021 (388) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Greater Los Angeles Area (33): Los Angeles Area 1945-2015 (33) | Insurance Company of North America | Unknown | 6/11/1964 | 6/11/1965 | 6/11/1964 | 6/11/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Los Angeles Area (33): Los Angeles Area 1945-2015 (33) | Insurance Company of North America | XBC 19014 | 6/11/1964 | 6/11/1965 | 6/11/1964 | 6/11/1965 | $  100,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Los Angeles Area (33): Los Angeles Area 1945-2015 (33) | Insurance Company of North America | Unknown | 6/11/1965 | 6/11/1966 | 6/11/1965 | 6/11/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Los Angeles Area (33): Los Angeles Area 1945-2015 (33) | Insurance Company of North America | XBC 19014 | 6/11/1965 | 6/11/1966 | 6/11/1965 | 6/11/1966 | $  100,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Los Angeles Area (33): Los Angeles Area 1945-2015 (33) | Insurance Company of North America | Unknown | 6/11/1966 | 6/11/1967 | 6/11/1966 | 6/11/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Los Angeles Area (33): Los Angeles Area 1945-2015 (33) | Insurance Company of North America | XBC 19014 | 6/11/1966 | 6/11/1967 | 6/11/1966 | 6/11/1967 | $  100,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Los Angeles Area (33): Los Angeles Area 1945-2015 (33) | Pacific Indemnity Company | Unknown | 11/19/1969 | 11/19/1970 | 11/19/1969 | 11/19/1970 | $ - | $  250,000.00 | $  250,000.00 | Unknown | Unknown | SE |
| Greater Los Angeles Area (33): Los Angeles Area 1945-2015 (33) | Employers Surplus Lines Insurance Company | E 60198 | 11/19/1969 | 11/19/1970 | 11/19/1969 | 11/19/1970 | $  250,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Greater Los Angeles Area (33): Los Angeles Area 1945-2015 (33) | Employers Surplus Lines Insurance Company | Unknown | 11/19/1970 | 11/19/1971 | 11/19/1970 | 11/19/1971 | $  250,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Los Angeles Area (33): Los Angeles Area 1945-2015 (33) | Employers Surplus Lines Insurance Company | Unknown | 11/19/1971 | 11/19/1972 | 11/19/1971 | 11/19/1972 | $  250,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Los Angeles Area (33): Los Angeles Area 1945-2015 (33) | Employers Surplus Lines Insurance Company | Unknown | 11/19/1972 | 11/19/1973 | 11/19/1972 | 11/19/1973 | $  250,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Los Angeles Area (33): Los Angeles Area 1945-2015 (33) | Employers Surplus Lines Insurance Company | Unknown | 11/19/1973 | 11/19/1974 | 11/19/1973 | 11/19/1974 | $  250,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Los Angeles Area (33): Los Angeles Area 1945-2015 (33) | Employers Surplus Lines Insurance Company | Unknown | 11/19/1974 | 1/1/1975 | 11/19/1974 | 1/1/1975 | $  250,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Los Angeles Area (33): Los Angeles Area 1945-2015 (33) | National Union Fire Insurance Company of Pittsburgh, PA | 8E121 69 38 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $  500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Los Angeles Area (33): Los Angeles Area 1945-2015 (33) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Los Angeles Area (33): Los Angeles Area 1945-2015 (33) | New Hampshire Insurance Company | 5LP 27 56 32 | 4/1/1976 | 4/1/1977 | 4/1/1976 | 4/1/1977 | $ - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Greater Los Angeles Area (33): Los Angeles Area 1945-2015 (33) | National Union Fire Insurance Company of Pittsburgh, PA | 8E 1219866 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $  500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Los Angeles Area (33): Los Angeles Area 1945-2015 (33) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Greater Los Angeles Area (33): Old Baldy 1921-2006 (43) | New Hampshire Insurance Company | Unknown | 4/1/1976 | 1/1/1977 | 4/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Los Angeles Area (33): Old Baldy 1921-2006 (43) | National Union Fire Insurance Company of Pittsburgh, PA | 8E121 69 31 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $  500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Los Angeles Area (33): Old Baldy 1921-2006 (43) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Los Angeles Area (33): Old Baldy 1921-2006 (43) | National Union Fire Insurance Company of Pittsburgh, PA | 8E 1219880 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $  500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Los Angeles Area (33): Old Baldy 1921-2006 (43) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Greater Los Angeles Area (33): Old Baldy 1921-2006 (43) | New Hampshire Insurance Company | GLA 282588 | 6/1/1977 | 6/1/1978 | 6/1/1977 | 6/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Los Angeles Area (33): San Gabriel Valley 1951-2015 (40) | National Union Fire Insurance Company of Pittsburgh, PA | 8E121 69 43 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $  500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Los Angeles Area (33): San Gabriel Valley 1951-2015 (40) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Los Angeles Area (33): San Gabriel Valley 1951-2015 (40) | National Union Fire Insurance Company of Pittsburgh, PA | 8E 1219891 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $  500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Los Angeles Area (33): San Gabriel Valley 1951-2015 (40) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE)² |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Greater New York (640): Greater New York 1936-1967 (719) | Indemnity Insurance Company of North America | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater New York (640): Greater New York 1936-1967 (719) | Insurance Company of North America | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater New York (640): Greater New York 1936-1967 (719) | Insurance Company of North America | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater New York (640): Greater New York 1936-1967 (719) | Insurance Company of North America | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater New York (640): Greater New York 1967- (640) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 68 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater New York (640): Greater New York 1967- (640) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater New York (640): Greater New York 1967- (640) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220021 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater New York (640): Greater New York 1967- (640) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater New York, Bronx Borough (641): Greater New York, Bronx Borough (641) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater New York, Bronx Borough (641): Greater New York, Bronx Borough (641) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater New York, Brooklyn Borough (642): Brooklyn 1911-1967 (369) | Insurance Company of North America | GLP 15 57 72 | 7/16/1966 | 7/16/1967 | 7/16/1966 | 7/16/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater New York, Brooklyn Borough (642): Brooklyn 1911-1967 (369) | Insurance Company of North America | GLP 15 57 72 | 7/16/1967 | 7/16/1968 | 7/16/1967 | 7/16/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater New York, Brooklyn Borough (642): Brooklyn 1911-1967 (369) | Insurance Company of North America | GLP 15 57 72 | 7/16/1968 | 7/16/1969 | 7/16/1968 | 7/16/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater New York, Brooklyn Borough (642): Greater New York, Brooklyn Borough (642) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater New York, Brooklyn Borough (642): Greater New York, Brooklyn Borough (642) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater New York, Manhattan Borough (643): Greater New York, Manhattan Borough (643) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater New York, Manhattan Borough (643): Greater New York, Manhattan Borough (643) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater New York, Queens Borough (644): Greater New York, Queens Borough (644) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater New York, Queens Borough (644): Greater New York, Queens Borough (644) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater New York, Staten Island Borough (645): Greater New York, Staten Island Borough (645) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater New York, Staten Island Borough (645): Greater New York, Staten Island Borough (645) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater Niagara Frontier (380): Buffalo Area 1949-1967 (380) | Unknown | Unknown | 6/26/1956 | 6/26/1957 | 6/26/1956 | 6/26/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Niagara Frontier (380): Buffalo Area 1949-1967 (380) | Unknown | Unknown | 6/26/1957 | 6/26/1958 | 6/26/1957 | 6/26/1958 | $ - | $ 50,000.00 | $ 50,000.00 | Unknown | Unknown | SE |
| Greater Niagara Frontier (380): Buffalo Area 1949-1967 (380) | Liberty Mutual Insurance Company | Unknown | 1/1/1958 | 1/1/1959 | 1/1/1958 | 1/1/1959 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Niagara Frontier (380): Buffalo Area 1949-1967 (380) | Unknown | Unknown | 6/26/1958 | 6/26/1959 | 6/26/1958 | 6/26/1959 | $ - | $ 50,000.00 | $ 50,000.00 | Unknown | Unknown | SE |
| Greater Niagara Frontier (380): Buffalo Area 1949-1967 (380) | Unknown | Unknown | 6/26/1959 | 6/26/1960 | 6/26/1959 | 6/26/1960 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | SE |
| Greater Niagara Frontier (380): Buffalo Area 1949-1967 (380) | Unknown | Unknown | 8/1/1960 | 8/1/1961 | 8/1/1960 | 8/1/1961 | $ - | $ 50,000.00 | $ 50,000.00 | Unknown | Unknown | SE |
| Greater Niagara Frontier (380): Greater Niagara Frontier 1967- (380) | Unknown | Unknown | 11/1/1966 | 11/1/1967 | 11/1/1966 | 11/1/1967 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Greater Niagara Frontier (380): Greater Niagara Frontier 1967- (380) | Royal Globe Insurance Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Niagara Frontier (380): Greater Niagara Frontier 1967- (380) | CNA | 59822227 | 1/1/1976 | 2/7/1976 | 1/1/1976 | 2/7/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Niagara Frontier (380): Greater Niagara Frontier 1967- (380) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 53 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Niagara Frontier (380): Greater Niagara Frontier 1967- (380) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Niagara Frontier (380): Greater Niagara Frontier 1967- (380) | CNA | Unknown | 2/19/1976 | 4/1/1976 | 2/19/1976 | 4/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Niagara Frontier (380): Greater Niagara Frontier 1967- (380) | Royal Globe Insurance Company | Unknown | 4/1/1976 | 4/1/1977 | 4/1/1976 | 4/1/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Greater Niagara Frontier (380): Greater Niagara Frontier 1967- (380) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220005 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Niagara Frontier (380): Greater Niagara Frontier 1967- (380) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater Niagara Frontier (380): Greater Niagara Frontier 1967- (380) | Royal Globe Insurance Company | Unknown | 4/1/1977 | 4/1/1978 | 4/1/1977 | 4/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Niagara Frontier (380): Greater Niagara Frontier 1967- (380) | Royal Insurance Co. of America | Unknown | 1/1/1981 | 1/1/1982 | 1/1/1981 | 1/1/1982 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Niagara Frontier (380): Greater Niagara Frontier 1967- (380) | Royal Globe Insurance Company | Unknown | 1/1/1982 | 1/1/1983 | 1/1/1982 | 1/1/1983 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater St. Louis Area (312): Cahokia Mound 1925-1991 (128) | Insurance Company of North America | SBL 45390 | 7/1/1966 | 7/1/1967 | 7/1/1966 | 7/1/1967 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Cahokia Mound 1925-1991 (128) | Insurance Company of North America | SBL 45390 | 7/1/1967 | 7/1/1968 | 7/1/1967 | 7/1/1968 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Cahokia Mound 1925-1991 (128) | Insurance Company of North America | SBL 45390 | 7/1/1968 | 4/1/1969 | 7/1/1968 | 4/1/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Cahokia Mound 1925-1991 (128) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 17 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Cahokia Mound 1925-1991 (128) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Cahokia Mound 1925-1991 (128) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219963 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Cahokia Mound 1925-1991 (128) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Egyptian 1940-1994 (120) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 18 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Egyptian 1940-1994 (120) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Egyptian 1940-1994 (120) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219964 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Egyptian 1940-1994 (120) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Lincoln Trails 1939-2018 (121) | Unknown | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater St. Louis Area (312): Lincoln Trails 1939-2018 (121) | Unknown | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater St. Louis Area (312): Lincoln Trails 1939-2018 (121) | Travelers Indemnity Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater St. Louis Area (312): Lincoln Trails 1939-2018 (121) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 14 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Lincoln Trails 1939-2018 (121) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Lincoln Trails 1939-2018 (121) | Cincinnati Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater St. Louis Area (312): Lincoln Trails 1939-2018 (121) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219960 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Lincoln Trails 1939-2018 (121) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Okaw Valley 1965-2017 (116) | Insurance Company of North America | SBL 4 23 73 | 4/1/1965 | 4/1/1966 | 4/1/1965 | 4/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater St. Louis Area (312): Okaw Valley 1965-2017 (116) | Insurance Company of North America | SBL 4 23 73 | 4/1/1966 | 4/1/1967 | 4/1/1966 | 4/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater St. Louis Area (312): Okaw Valley 1965-2017 (116) | Insurance Company of North America | SBL 4 23 73 | 4/1/1967 | 4/1/1968 | 4/1/1967 | 4/1/1968 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | SE |
| Greater St. Louis Area (312): Okaw Valley 1965-2017 (116) | Insurance Company of North America | SBL 4 69 33 | 4/1/1968 | 4/1/1969 | 4/1/1968 | 4/1/1969 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Okaw Valley 1965-2017 (116) | Insurance Company of North America | SBL 4 69 33 | 4/1/1969 | 4/1/1970 | 4/1/1969 | 4/1/1970 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Okaw Valley 1965-2017 (116) | Insurance Company of North America | SBL 4 69 33 | 4/1/1970 | 4/1/1971 | 4/1/1970 | 4/1/1971 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Okaw Valley 1965-2017 (116) | Insurance Company of North America | SBL 5 15 16 | 4/1/1971 | 4/1/1972 | 4/1/1971 | 4/1/1972 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Okaw Valley 1965-2017 (116) | INA Insurance Company of Illinois | GLP 770115 | 1/1/1975 | 10/1/1975 | 1/1/1975 | 10/1/1975 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Greater St. Louis Area (312): Okaw Valley 1965-2017 (116) | Insurance Company of North America | XBC 118599 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Okaw Valley 1965-2017 (116) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 09 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Okaw Valley 1965-2017 (116) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Okaw Valley 1965-2017 (116) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219950 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Okaw Valley 1965-2017 (116) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Piasa Bird 1930-1991 (112) | Unknown | Unknown | 1/1/1944 | 1/1/1945 | 1/1/1944 | 1/1/1945 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater St. Louis Area (312): Piasa Bird 1930-1991 (112) | Unknown | Unknown | 2/18/1969 | 2/18/1970 | 2/18/1969 | 2/18/1970 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | SE |
| Greater St. Louis Area (312): Piasa Bird 1930-1991 (112) | Unknown | Unknown | 2/18/1970 | 2/18/1971 | 2/18/1970 | 2/18/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Greater St. Louis Area (312): Piasa Bird 1930-1991 (112) | Unknown | Unknown | 2/18/1971 | 2/18/1972 | 2/18/1971 | 2/18/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Greater St. Louis Area (312): Piasa Bird 1930-1991 (112) | Unknown | Unknown | 2/18/1972 | 2/18/1973 | 2/18/1972 | 2/18/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater St. Louis Area (312): Piasa Bird 1930-1991 (112) | Unknown | Unknown | 2/18/1973 | 2/18/1974 | 2/18/1973 | 2/18/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater St. Louis Area (312): Piasa Bird 1930-1991 (112) | Unknown | Unknown | 2/18/1974 | 1/1/1975 | 2/18/1974 | 1/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater St. Louis Area (312): Piasa Bird 1930-1991 (112) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 28 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Piasa Bird 1930-1991 (112) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Piasa Bird 1930-1991 (112) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219974 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Piasa Bird 1930-1991 (112) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Saint Louis 1911-1995 (312) | Insurance Company of North America | GLP 429908 | 4/1/1974 | 4/1/1975 | 4/1/1974 | 4/1/1975 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Greater St. Louis Area (312): Saint Louis 1911-1995 (312) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 15 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Saint Louis 1911-1995 (312) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Greater St. Louis Area (312): Saint Louis 1911-1995 (312) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220166 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Saint Louis 1911-1995 (312) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Southeast Missouri 1930-1993 (305) | Insurance Company of North America | SBL 51306 | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Southeast Missouri 1930-1993 (305) | Insurance Company of North America | SBL 51306 | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Southeast Missouri 1930-1993 (305) | Insurance Company of North America | SBL 51306 | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Southeast Missouri 1930-1993 (305) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater St. Louis Area (312): Southeast Missouri 1930-1993 (305) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 11 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Southeast Missouri 1930-1993 (305) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Southeast Missouri 1930-1993 (305) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater St. Louis Area (312): Southeast Missouri 1930-1993 (305) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220161 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater St. Louis Area (312): Southeast Missouri 1930-1993 (305) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater Tampa Bay Area (89): Gulf Ridge -2016 (86) | Insurance Company of North America | SBL 46156 | 7/10/1969 | 7/10/1970 | 7/10/1969 | 7/10/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Tampa Bay Area (89): Gulf Ridge -2016 (86) | Insurance Company of North America | SBL 46177 | 7/10/1970 | 7/10/1971 | 7/10/1970 | 7/10/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater Tampa Bay Area (89): Gulf Ridge -2016 (86) | Insurance Company of North America | Unknown | 7/10/1971 | 7/1/1972 | 7/10/1971 | 7/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Tampa Bay Area (89): Gulf Ridge -2016 (86) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Tampa Bay Area (89): Gulf Ridge -2016 (86) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 85 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Tampa Bay Area (89): Gulf Ridge -2016 (86) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Tampa Bay Area (89): Gulf Ridge -2016 (86) | New Hampshire Insurance Company | GLA 332345 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Tampa Bay Area (89): Gulf Ridge -2016 (86) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219933 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Tampa Bay Area (89): Gulf Ridge -2016 (86) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater Tampa Bay Area (89): Pinellas 1930-1970 (89) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219931 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Tampa Bay Area (89): Pinellas Area 1970-1978 (89) | Insurance Company of North America | SBL 5 11 90 | 6/1/1969 | 6/1/1970 | 6/1/1969 | 6/1/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Tampa Bay Area (89): Pinellas Area 1970-1978 (89) | Insurance Company of North America | SBL 5 11 90 | 6/1/1970 | 6/1/1971 | 6/1/1970 | 6/1/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Tampa Bay Area (89): Pinellas Area 1970-1978 (89) | Insurance Company of North America | SBL 5 11 90 | 6/1/1971 | 6/1/1972 | 6/1/1971 | 6/1/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Tampa Bay Area (89): Pinellas Area 1970-1978 (89) | Hartford Accident and Indemnity Company | 21 CBP 158051 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown² | Unknown² | Unknown | Unknown | PE |
| Greater Tampa Bay Area (89): Pinellas Area 1970-1978 (89) | Hartford Accident and Indemnity Company | 21 CBP 158051 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown² | Unknown² | Unknown | Unknown | PE |
| Greater Tampa Bay Area (89): Pinellas Area 1970-1978 (89) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 83 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Tampa Bay Area (89): Pinellas Area 1970-1978 (89) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Tampa Bay Area (89): Pinellas Area 1970-1978 (89) | New Hampshire Insurance Company | GLA 282407 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Tampa Bay Area (89): Pinellas Area 1970-1978 (89) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater Wyoming (638): Central Wyoming 1918-2016 (638) | Insurance Company of North America | SBL 4 29 91 | 3/1/1965 | 3/1/1966 | 3/1/1965 | 3/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Wyoming (638): Central Wyoming 1918-2016 (638) | Insurance Company of North America | SBL 4 29 91 | 3/1/1966 | 3/1/1967 | 3/1/1966 | 3/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Wyoming (638): Central Wyoming 1918-2016 (638) | Insurance Company of North America | SBL 4 29 91 | 3/1/1967 | 3/1/1968 | 3/1/1967 | 3/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Wyoming (638): Central Wyoming 1918-2016 (638) | Insurance Company of North America | SBL 4 69 22 | 3/1/1968 | 3/1/1969 | 3/1/1968 | 3/1/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater Wyoming (638): Central Wyoming 1918-2016 (638) | Insurance Company of North America | SBL 4 69 22 | 3/1/1969 | 3/1/1970 | 3/1/1969 | 3/1/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater Wyoming (638): Central Wyoming 1918-2016 (638) | Insurance Company of North America | SBL 4 69 22 | 3/1/1970 | 3/1/1971 | 3/1/1970 | 3/1/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater Wyoming (638): Central Wyoming 1918-2016 (638) | Insurance Company of North America | SBL 5 15 17 | 3/1/1971 | 3/1/1972 | 3/1/1971 | 3/1/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater Wyoming (638): Central Wyoming 1918-2016 (638) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Wyoming (638): Central Wyoming 1918-2016 (638) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 49 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Wyoming (638): Central Wyoming 1918-2016 (638) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Wyoming (638): Central Wyoming 1918-2016 (638) | United States Fidelity and Guaranty Company | 1CCA35720 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Wyoming (638): Central Wyoming 1918-2016 (638) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220266 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Wyoming (638): Central Wyoming 1918-2016 (638) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater Yosemite (59): Forty-Niner 1957-1997 (52) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Yosemite (59): Forty-Niner 1957-1997 (52) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 56 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Yosemite (59): Forty-Niner 1957-1997 (52) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Yosemite (59): Forty-Niner 1957-1997 (52) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219904 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Yosemite (59): Forty-Niner 1957-1997 (52) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greater Yosemite (59): Forty-Niner 1957-1997 (52) | Unknown | VBP 39199-08 | 2/10/1977 | 2/10/1978 | 2/10/1977 | 2/10/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Yosemite (59): Forty-Niner 1957-1997 (52) | Unknown | VBP 39199-08 | 2/10/1978 | 2/10/1979 | 2/10/1978 | 2/10/1979 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Yosemite (59): Forty-Niner 1957-1997 (52) | Unknown | VBP 39199-08 | 2/10/1979 | 2/10/1980 | 2/10/1979 | 2/10/1980 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Yosemite (59): Yosemite Area 1922-1998 (59) | Insurance Company of North America | SBL 50441 | 1/25/1969 | 1/25/1970 | 1/25/1969 | 1/25/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Yosemite (59): Yosemite Area 1922-1998 (59) | Insurance Company of North America | SBL 50441 | 1/25/1970 | 1/25/1971 | 1/25/1970 | 1/25/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Yosemite (59): Yosemite Area 1922-1998 (59) | Insurance Company of North America | SBL 50441 | 1/25/1971 | 1/25/1972 | 1/25/1971 | 1/25/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Yosemite (59): Yosemite Area 1922-1998 (59) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Yosemite (59): Yosemite Area 1922-1998 (59) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 40 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Yosemite (59): Yosemite Area 1922-1998 (59) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Yosemite (59): Yosemite Area 1922-1998 (59) | New Hampshire Insurance Company | GLA 301313 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Yosemite (59): Yosemite Area 1922-1998 (59) | New Hampshire Insurance Company | GLA 332339 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 50,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Greater Yosemite (59): Yosemite Area 1922-1998 (59) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219888 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greater Yosemite (59): Yosemite Area 1922-1998 (59) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Green Mountain (592): Calvin Coolidge 1936-1965 (747) | American Fidelity Company | Unknown | 6/30/1961 | 6/30/1962 | 6/30/1961 | 6/30/1962 | $ - | $ 50,000.00 | $ 50,000.00 | Unknown | Unknown | SE |
| Green Mountain (592): Calvin Coolidge 1936-1965 (747) | American Fidelity & Casualty | Unknown | 1/1/1963 | 5/1/1963 | 1/1/1963 | 5/1/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Green Mountain (592): Calvin Coolidge 1936-1965 (747) | New Hampshire Insurance Company | BSA 600214 | 5/1/1963 | 11/1/1963 | 5/1/1963 | 11/1/1963 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Green Mountain (592): Calvin Coolidge 1936-1965 (747) | New Hampshire Insurance Company | BSA 600215 | 5/1/1964 | 11/1/1964 | 5/1/1964 | 11/1/1964 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Green Mountain (592): Calvin Coolidge 1936-1965 (747) | American Fidelity Company | Unknown | 11/1/1964 | 11/1/1965 | 11/1/1964 | 11/1/1965 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Green Mountain (592): Ethan Allen 1965-1972 (593) | Unknown | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Green Mountain (592): Ethan Allen 1965-1972 (593) | Unknown | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ 500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Green Mountain (592): Green Mountain 1929-1965 (593) | Glenfalls Indemnity Company | GLH 955316 | 11/14/1955 | 1/1/1956 | 11/14/1955 | 1/1/1956 | $ - | $ 25,000.00 | $ 25,000.00 | Unknown | Unknown | SE |
| Green Mountain (592): Green Mountain 1929-1965 (593) | Allstate Insurance Company | 19 527 058 | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown² | Unknown² | Unknown | Unknown | SE |
| Green Mountain (592): Green Mountain 1929-1965 (593) | Maryland Casualty Company | SMC 70 89 26 | 5/22/1957 | 5/22/1958 | 5/22/1957 | 5/22/1958 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Green Mountain (592): Green Mountain 1929-1965 (593) | SOL Insurance Company | 1A00 1 | 5/22/1957 | 5/22/1958 | 5/22/1957 | 5/22/1958 | $ - | Unknown² | Unknown² | Unknown | Unknown | SE |
| Green Mountain (592): Green Mountain 1929-1965 (593) | New England Insurance Company | 3 CL 3 72 50 | 5/28/1957 | 5/28/1958 | 5/28/1957 | 5/28/1958 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Green Mountain (592): Green Mountain 1929-1965 (593) | Maryland Casualty Company | 023N 129332 | 11/14/1957 | 11/14/1958 | 11/14/1957 | 11/14/1958 | $ - | $ 25,000.00 | $ 25,000.00 | Unknown | Unknown | SE |
| Green Mountain (592): Green Mountain 1929-1965 (593) | New England Insurance Company | SMC 80 08 71 | 5/28/1958 | 5/28/1959 | 5/28/1958 | 5/28/1959 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Green Mountain (592): Green Mountain 1929-1965 (593) | New England Insurance Company | SMC 80 10 71 | 5/28/1959 | 5/28/1960 | 5/28/1959 | 5/28/1960 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Green Mountain (592): Green Mountain 1929-1965 (593) | New England Insurance Company | RLH308743 | 5/28/1960 | 5/28/1961 | 5/28/1960 | 5/28/1961 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Green Mountain (592): Green Mountain 1929-1965 (593) | Royal Indemnity Company | RLH 313670 | 5/28/1961 | 5/28/1962 | 5/28/1961 | 5/28/1962 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Green Mountain (592): Green Mountain 1929-1965 (593) | Royal Indemnity Company | RLH319122 | 5/28/1962 | 5/28/1963 | 5/28/1962 | 5/28/1963 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Green Mountain (592): Green Mountain 1929-1965 (593) | American Fidelity & Casualty | Unknown | 4/1/1962 | 4/1/1963 | 4/1/1962 | 4/1/1963 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Green Mountain (592): Green Mountain 1929-1965 (593) | New Hampshire Insurance Company | Unknown | 5/1/1963 | 11/1/1963 | 5/1/1963 | 11/1/1963 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Green Mountain (592): Green Mountain 1972- (592) | New Hampshire Insurance Company | Unknown | 5/1/1974 | 5/1/1975 | 5/1/1974 | 5/1/1975 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Green Mountain (592): Green Mountain 1972- (592) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 07 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Green Mountain (592): Green Mountain 1972- (592) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Green Mountain (592): Green Mountain 1972- (592) | New Hampshire Insurance Company | Unknown | 5/1/1976 | 5/1/1977 | 5/1/1976 | 5/1/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Green Mountain (592): Green Mountain 1972- (592) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220229 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Green Mountain (592): Green Mountain 1972- (592) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Green Mountain (592): Green Mountain 1972- (592) | New Hampshire Insurance Company | Unknown | 5/1/1977 | 1/1/1978 | 5/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Green Mountain (592): Green Mountain 1972- (592) | General Accident | Unknown | 1/1/1978 | 1/1/1979 | 1/1/1978 | 1/1/1979 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Green Mountain (592): Green Mountain 1972- (592) | General Accident | Unknown | 1/1/1979 | 1/1/1980 | 1/1/1979 | 1/1/1980 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Green Mountain (592): Green Mountain 1972- (592) | Continental Casualty Company | C1 27645142 | 12/1/1993 | 12/30/1993 | 12/1/1993 | 12/30/1993 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Green Mountain (592): Green Mountain 1972- (592) | Continental Casualty Company | C1 34246094 | 12/31/1994 | 12/31/1994 | 11/27/1994 | 12/31/1994 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Green Mountain (592): Long Trail 1933-1972 (592) | Aetna Casualty and Surety Company | 09AL134423 | 6/25/1968 | 6/25/1969 | 6/25/1968 | 6/25/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Green Mountain (592): Long Trail 1933-1972 (592) | Aetna Casualty and Surety Company | 09AL137072 | 6/25/1969 | 6/25/1970 | 6/25/1969 | 6/25/1970 | $ - | $ 50,000.00 | $ 50,000.00 | Unknown | Unknown | SE |
| Green Mountain (592): Long Trail 1933-1972 (592) | Aetna Casualty and Surety Company | 9AL141700 | 6/25/1971 | 6/25/1972 | 6/25/1971 | 6/25/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greenwich (67): Greenwich (67) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Greenwich (67): Greenwich (67) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 68 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greenwich (67): Greenwich (67) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greenwich (67): Greenwich (67) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219916 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Greenwich (67): Greenwich (67) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Greenwich (67): Greenwich (67) | New Hampshire Insurance Company | GLA210242 | 2/4/1977 | 2/4/1978 | 2/4/1977 | 2/4/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Gulf Coast (773): Gulf Coast (773) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 81 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Gulf Coast (773): Gulf Coast (773) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Gulf Coast (773): Gulf Coast (773) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219929 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Gulf Coast (773): Gulf Coast (773) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Gulf Stream (85): Gulf Stream 1937-1995 (85) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 86 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Gulf Stream (85): Gulf Stream 1937-1995 (85) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Gulf Stream (85): Gulf Stream 1937-1995 (85) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219934 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Gulf Stream (85): Gulf Stream 1937-1995 (85) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Hawk Mountain (528): Daniel Boone 1936-1970 (528) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Hawk Mountain (528): Hawk Mountain 1970- (528) | Hartford Fire Insurance Company | 39 CBP 109170 | 10/29/1970 | 10/29/1971 | 10/29/1970 | 10/29/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Hawk Mountain (528): Hawk Mountain 1970- (528) | Hartford Fire Insurance Company | 39 CBP 109170 | 10/29/1971 | 10/29/1972 | 10/29/1971 | 10/29/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Hawk Mountain (528): Hawk Mountain 1970- (528) | Hartford Fire Insurance Company | 39 CBP 109170 | 10/29/1972 | 10/29/1973 | 10/29/1972 | 10/29/1973 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Hawk Mountain (528): Hawk Mountain 1970- (528) | Twin City Fire Insurance Company | 39 CBP 161610 | 10/29/1973 | 10/29/1974 | 10/29/1973 | 10/29/1974 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Hawk Mountain (528): Hawk Mountain 1970- (528) | Twin City Fire Insurance Company | 39 CBP 161610 | 10/29/1974 | 10/29/1975 | 10/29/1974 | 10/29/1975 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Hawk Mountain (528): Hawk Mountain 1970- (528) | Twin City Fire Insurance Company | 39 CBP 161610 | 10/29/1975 | 10/29/1976 | 10/29/1975 | 10/29/1976 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Hawk Mountain (528): Hawk Mountain 1970- (528) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 45 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Hawk Mountain (528): Hawk Mountain 1970- (528) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Hawk Mountain (528): Hawk Mountain 1970- (528) | Twin City Fire Insurance Company | 44 CBP 448087 | 10/29/1976 | 10/29/1977 | 10/29/1976 | 10/29/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Hawk Mountain (528): Hawk Mountain 1970- (528) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220100 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Hawk Mountain (528): Hawk Mountain 1970- (528) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Hawk Mountain (528): Hawk Mountain 1970- (528) | Twin City Fire Insurance Company | 44 CBP 448087 | 10/29/1977 | 10/29/1978 | 10/29/1977 | 10/29/1978 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Hawk Mountain (528): Hawk Mountain 1970- (528) | Twin City Fire Insurance Company | 44 CBP 448087 | 10/29/1978 | 10/29/1979 | 10/29/1978 | 10/29/1979 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Hawkeye Area (172): Hawkeye Area 1952- (172) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 40 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Hawkeye Area (172): Hawkeye Area 1952- (172) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Hawkeye Area (172): Hawkeye Area 1952- (172) | Crum & Forster | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Hawkeye Area (172): Hawkeye Area 1952- (172) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219886 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Hawkeye Area (172): Hawkeye Area 1952- (172) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Heart of America (307): Heart of America 1974- (307) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 47 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Heart of America (307): Heart of America 1974- (307) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Heart of America (307): Heart of America 1974- (307) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219995 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Heart of America (307): Heart of America 1974- (307) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Heart of America (307): Kansas City Area 1925-1974 (309) | Insurance Company of North America | Unknown | 5/14/1969 | 5/14/1970 | 5/14/1969 | 5/14/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Heart of America (307): Kansas City Area 1925-1974 (309) | Insurance Company of North America | Unknown | 5/14/1970 | 5/14/1971 | 5/14/1970 | 5/14/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Heart of America (307): Kansas City Area 1925-1974 (309) | Insurance Company of North America | Unknown | 5/14/1971 | 5/14/1972 | 5/14/1971 | 5/14/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Heart of America (307): Kansas City Area 1925-1974 (309) | Insurance Company of North America | Unknown | 5/14/1972 | 5/16/1972 | 5/14/1972 | 5/16/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Heart of America (307): Kansas City Area 1925-1974 (309) | Insurance Company of North America | GLP 42 40 26 | 6/18/1974 | 9/11/1974 | 6/18/1974 | 9/11/1974 | $ - | $ 25,000.00 | $ 25,000.00 | Unknown | Unknown | PE |
| Heart of New England (230): Mohegan 1955-2018 (254) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 85 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Heart of New England (230): Mohegan 1955-2018 (254) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Heart of New England (230): Mohegan 1955-2018 (254) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220116 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Heart of New England (230): Mohegan 1955-2018 (254) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Heart of New England (230): Monadnock 1924-1993 (232) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 73 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Heart of New England (230): Monadnock 1924-1993 (232) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Heart of New England (230): Monadnock 1924-1993 (232) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220123 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Heart of New England (230): Monadnock 1924-1993 (232) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Heart of New England (230): Nashua Valley -2018 (230) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 76 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Heart of New England (230): Nashua Valley -2018 (230) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Heart of New England (230): Nashua Valley -2018 (230) | New Hampshire Insurance Company | SCP 448251 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Heart of New England (230): Nashua Valley -2018 (230) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220126 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Heart of New England (230): Nashua Valley -2018 (230) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Heart of Virginia (602): Heart of Virginia (602) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Heart of Virginia (602): Heart of Virginia (602) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | Insurance Company of North America | CGL 20 87 40 | 5/27/1963 | 5/26/1964 | 5/27/1963 | 5/26/1964 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | Unknown | Unknown | 5/26/1964 | 1/1/1965 | 5/26/1964 | 1/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | Unknown | Unknown | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | Unknown | Unknown | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | Unknown | Unknown | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | Insurance Company of North America | Unknown | 1/1/1968 | 5/26/1968 | 1/1/1968 | 5/26/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | Insurance Company of North America | Unknown | 5/26/1968 | 5/26/1969 | 5/26/1968 | 5/26/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | Insurance Company of North America | Unknown | 5/26/1969 | 1/1/1970 | 5/26/1969 | 1/1/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | Insurance Company of North America | Unknown | 1/1/1970 | 5/27/1970 | 1/1/1970 | 5/27/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | Insurance Company of North America | ALB 48362 | 5/27/1970 | 5/27/1971 | 5/27/1970 | 5/27/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | Insurance Company of North America | ALB 48362 | 5/27/1971 | 5/27/1972 | 5/27/1971 | 5/27/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | Insurance Company of North America | ALB 48362 | 5/27/1972 | 5/27/1973 | 5/27/1972 | 5/27/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | Mutual Fire, Marine and Inland Insurance Company (The) | Unknown | 5/27/1973 | 5/27/1974 | 5/27/1973 | 5/27/1974 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | Insurance Company of North America | GLP 461031 | 5/27/1974 | 5/27/1975 | 5/27/1974 | 5/27/1975 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | North River Insurance Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | Insurance Company of North America | GLP 461031 | 5/27/1975 | 5/27/1976 | 5/27/1975 | 5/27/1976 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 12 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | North River Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | Insurance Company of North America | GLP 461031 | 5/27/1976 | 5/27/1977 | 5/27/1976 | 5/27/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220233 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | North River Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | Insurance Company of North America | Unknown | 5/27/1977 | 1/1/1978 | 5/27/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | Hartford Casualty Insurance Company | 14 UUC CZ6576 | 6/9/1998 | 6/9/1999 | 6/9/1998 | 6/9/1999 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | Hartford Casualty Insurance Company | 14 UUC CZ6576 | 6/9/1999 | 6/9/2000 | 6/9/1999 | 6/9/2000 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | Hartford Casualty Insurance Company | 14 UUC CZ6576 | 6/9/2000 | 6/9/2001 | 6/9/2000 | 6/9/2001 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Heart of Virginia (602): Robert E. Lee 1953-2003 (602) | Hartford Casualty Insurance Company | 14 UUC CZ6576 | 6/9/2001 | 6/9/2002 | 6/9/2001 | 6/9/2002 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Hoosier Trails (145): Hoosier Trails 1973- (145) | Twin City Fire Insurance Company | 736 CBP 109458 | 4/1/1973 | 4/1/1974 | 4/1/1973 | 4/1/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Hoosier Trails (145): Hoosier Trails 1973- (145) | Twin City Fire Insurance Company | 736 CBP 109458 | 4/1/1974 | 4/1/1975 | 4/1/1974 | 4/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Hoosier Trails (145): Hoosier Trails 1973- (145) | Twin City Fire Insurance Company | 736 CBP 109458 | 4/1/1975 | 4/1/1976 | 4/1/1975 | 4/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Hoosier Trails (145): Hoosier Trails 1973- (145) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 29 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Hoosier Trails (145): Hoosier Trails 1973- (145) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Hoosier Trails (145): Hoosier Trails 1973- (145) | Twin City Fire Insurance Company | 36 CBP 185443 | 4/1/1976 | 4/1/1977 | 4/1/1976 | 4/1/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Hoosier Trails (145): Hoosier Trails 1973- (145) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1239575 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Hoosier Trails (145): Hoosier Trails 1973- (145) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Hoosier Trails (145): Hoosier Trails 1973- (145) | Twin City Fire Insurance Company | 36 CBP 185443 | 4/1/1977 | 4/1/1978 | 4/1/1977 | 4/1/1978 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Hoosier Trails (145): Hoosier Trails 1973- (145) | Twin City Fire Insurance Company | 36 CBP 185443 | 4/1/1978 | 4/1/1979 | 4/1/1978 | 4/1/1979 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Hoosier Trails (145): White River Area 1927-1973 (145) | Insurance Company of North America | SBL-4-10-75 | 2/27/1966 | 2/27/1967 | 2/27/1966 | 2/27/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Hoosier Trails (145): White River Area 1927-1973 (145) | Insurance Company of North America | SBL-4-67-26 | 2/27/1967 | 2/27/1968 | 2/27/1967 | 2/27/1968 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Hoosier Trails (145): White River Area 1927-1973 (145) | Insurance Company of North America | SBL 46763 | 2/27/1969 | 2/27/1970 | 2/27/1969 | 2/27/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Hoosier Trails (145): White River Area 1927-1973 (145) | Insurance Company of North America | SBL 46763 | 2/27/1970 | 2/27/1971 | 2/27/1970 | 2/27/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Hoosier Trails (145): White River Area 1927-1973 (145) | Insurance Company of North America | SBL 4 67 96 | 2/27/1971 | 2/27/1972 | 2/27/1971 | 2/27/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Housatonic (69): Housatonic (69) | Insurance Company of North America | SBL 4 29 88 | 5/1/1965 | 5/1/1966 | 5/1/1965 | 5/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Housatonic (69): Housatonic (69) | Insurance Company of North America | SBL 4 29 88 | 5/1/1966 | 5/1/1967 | 5/1/1966 | 5/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Housatonic (69): Housatonic (69) | Insurance Company of North America | SBL 4 29 88 | 5/1/1967 | 5/1/1968 | 5/1/1967 | 5/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Housatonic (69): Housatonic (69) | Insurance Company of North America | SBL 4 69 43 | 5/1/1968 | 5/1/1969 | 5/1/1968 | 5/1/1969 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Housatonic (69): Housatonic (69) | Insurance Company of North America | SBL 4 69 43 | 5/1/1969 | 5/1/1970 | 5/1/1969 | 5/1/1970 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Housatonic (69): Housatonic (69) | Insurance Company of North America | SBL 4 69 43 | 5/1/1970 | 5/1/1971 | 5/1/1970 | 5/1/1971 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Housatonic (69): Housatonic (69) | Insurance Company of North America | SBL 51537 | 5/1/1971 | 5/1/1972 | 5/1/1971 | 5/1/1972 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Housatonic (69): Housatonic (69) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 67 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Housatonic (69): Housatonic (69) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Housatonic (69): Housatonic (69) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1239515 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Housatonic (69): Housatonic (69) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Illowa (133): Illowa 1967- (133) | Insurance Company of North America | SBL 4 78 99 | 6/1/1967 | 5/31/1968 | 6/1/1967 | 5/31/1968 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Illowa (133): Illowa 1967- (133) | Insurance Company of North America | SBL 47934 | 6/1/1968 | 6/1/1969 | 6/1/1968 | 6/1/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Illowa (133): Illowa 1967- (133) | Insurance Company of North America | SBL 52104 | 6/1/1969 | 6/1/1970 | 6/1/1969 | 6/1/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Illowa (133): Illowa 1967- (133) | Insurance Company of North America | SBL 52123 | 6/1/1970 | 6/1/1971 | 6/1/1970 | 6/1/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Illowa (133): Illowa 1967- (133) | Insurance Company of North America | Unknown | 6/1/1970 | 6/1/1971 | 6/1/1970 | 6/1/1971 | $ 500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Illowa (133): Illowa 1967- (133) | Insurance Company of North America | S8 52145 | 6/1/1971 | 6/1/1972 | 6/1/1971 | 6/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Illowa (133): Illowa 1967- (133) | Insurance Company of North America | GAL 12 73 95 | 6/1/1972 | 12/1/1972 | 6/1/1972 | 12/1/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Illowa (133): Illowa 1967- (133) | Insurance Company of North America | GAL 12 73 95 | 12/1/1972 | 6/1/1973 | 12/1/1972 | 6/1/1973 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Illowa (133): Illowa 1967- (133) | Insurance Company of North America | XBC 10 19 73 | 12/1/1972 | 6/1/1973 | 12/1/1972 | 6/1/1973 | $ 300,000.00 | $ 2,500,000.00 | $ 2,500,000.00 | Unknown | Unknown | PE |
| Illowa (133): Illowa 1967- (133) | Insurance Company of North America | GAL 21 38 79 | 6/1/1973 | 6/1/1974 | 6/1/1973 | 6/1/1974 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Illowa (133): Illowa 1967- (133) | Insurance Company of North America | XBC 10 20 50 | 6/1/1973 | 6/1/1974 | 6/1/1973 | 6/1/1974 | $ 300,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Illowa (133): Illowa 1967- (133) | Insurance Company of North America | GAL 21 50 78 | 6/1/1974 | 6/1/1975 | 6/1/1974 | 6/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Illowa (133): Illowa 1967- (133) | Insurance Company of North America | XBC 10 21 77 | 6/1/1974 | 6/1/1975 | 6/1/1974 | 6/1/1975 | $ 300,000.00 | $ 2,500,000.00 | $ 2,500,000.00 | Unknown | Unknown | PE |
| Illowa (133): Illowa 1967- (133) | Insurance Company of North America | GAL 32 96 17 | 6/1/1975 | 6/1/1976 | 6/1/1975 | 6/1/1976 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Illowa (133): Illowa 1967- (133) | Insurance Company of North America | Unknown | 6/1/1975 | 6/1/1976 | 6/1/1975 | 6/1/1976 | $ 300,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Illowa (133): Illowa 1967- (133) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 38 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Illowa (133): Illowa 1967- (133) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Illowa (133): Illowa 1967- (133) | Insurance Company of North America | GAL 34 36 68 | 6/1/1976 | 6/1/1977 | 6/1/1976 | 6/1/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Illowa (133): Illowa 1967- (133) | Insurance Company of North America | Unknown | 6/1/1976 | 6/1/1977 | 6/1/1976 | 6/1/1977 | $ 500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Illowa (133): Illowa 1967- (133) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1239984 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Illowa (133): Illowa 1967- (133) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Illowa (133): Illowa 1967- (133) | Insurance Company of North America | Unknown | 6/1/1977 | 6/1/1978 | 6/1/1977 | 6/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Illowa (133): Moline Area 1927-1959 (134) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Illowa (133): Prairie 1941-1993 (125) | Insurance Company of North America | SBL 4 29 95 | 3/25/1965 | 3/25/1966 | 3/25/1965 | 3/25/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Illowa (133): Prairie 1941-1993 (125) | Insurance Company of North America | SBL 4 29 95 | 3/25/1966 | 3/25/1967 | 3/25/1966 | 3/25/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Illowa (133): Prairie 1941-1993 (125) | Insurance Company of North America | SBL 4 29 95 | 3/25/1967 | 3/25/1968 | 3/25/1967 | 3/25/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Illowa (133): Prairie 1941-1993 (125) | Insurance Company of North America | SBL 4 69 13 | 3/25/1968 | 3/25/1969 | 3/25/1968 | 3/25/1969 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Illowa (133): Prairie 1941-1993 (125) | Insurance Company of North America | SBL 4 69 13 | 3/25/1969 | 3/25/1970 | 3/25/1969 | 3/25/1970 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Illowa (133): Prairie 1941-1993 (125) | Insurance Company of North America | SBL 4 69 13 | 3/25/1970 | 3/25/1971 | 3/25/1970 | 3/25/1971 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Illowa (133): Prairie 1941-1993 (125) | Insurance Company of North America | SBL 5 14 95 | 3/25/1971 | 3/25/1972 | 3/25/1971 | 3/25/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Illowa (133): Prairie 1941-1993 (125) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 15 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Illowa (133): Prairie 1941-1993 (125) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Illowa (133): Prairie 1941-1993 (125) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1239961 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Illowa (133): Prairie 1941-1993 (125) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Illowa (133): Sac-Fox 1959-1967 (134) | Insurance Company of North America | ABL 2 49 69 | 3/1/1965 | 3/1/1966 | 3/1/1965 | 3/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Illowa (133): Sac-Fox 1959-1967 (134) | Insurance Company of North America | SBL-2-50-18 | 3/1/1966 | 3/1/1967 | 3/1/1966 | 3/1/1967 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Illowa (133): Sac-Fox 1959-1967 (134) | Insurance Company of North America | SBL-2-50-18 | 3/1/1967 | 3/1/1968 | 3/1/1967 | 3/1/1968 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Indian Nations (488): Eastern Oklahoma Area 1949-1983 (478) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 22 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Indian Nations (488): Eastern Oklahoma Area 1949-1983 (478) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Indian Nations (488): Eastern Oklahoma Area 1949-1983 (478) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1239973 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Indian Nations (488): Eastern Oklahoma Area 1949-1983 (478) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Indian Nations (488): Indian Nations 1957- (488) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 25 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Indian Nations (488): Indian Nations 1957- (488) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Indian Nations (488): Indian Nations 1957- (488) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220078 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Indian Nations (488): Indian Nations 1957- (488) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Indian Waters (553): Central South Carolina 1929-1978 (553) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 57 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Indian Waters (553): Central South Carolina 1929-1978 (553) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Indian Waters (553): Central South Carolina 1929-1978 (553) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220070 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Indian Waters (553): Central South Carolina 1929-1978 (553) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Inland Northwest (611): Idaho Panhandle 1928-1992 (110) | Unknown | 117406 | 6/18/1953 | 6/18/1954 | 6/18/1953 | 6/18/1954 | $ - | $ 10,000.00 | $ 10,000.00 | Unknown | Unknown | SE |
| Inland Northwest (611): Idaho Panhandle 1928-1992 (110) | Unknown | 13174 | 6/18/1954 | 6/18/1955 | 6/18/1954 | 6/18/1955 | $ - | $ 10,000.00 | $ 10,000.00 | Unknown | Unknown | SE |
| Inland Northwest (611): Idaho Panhandle 1928-1992 (110) | Unknown | 843831 | 6/18/1955 | 6/18/1956 | 6/18/1955 | 6/18/1956 | $ - | $ 10,000.00 | $ 10,000.00 | Unknown | Unknown | SE |
| Inland Northwest (611): Idaho Panhandle 1928-1992 (110) | Unknown | 96459 | 6/18/1956 | 6/18/1957 | 6/18/1956 | 6/18/1957 | $ - | $ 50,000.00 | $ 50,000.00 | Unknown | Unknown | SE |
| Inland Northwest (611): Idaho Panhandle 1928-1992 (110) | Unknown | CLP16902 | 6/18/1959 | 6/18/1960 | 6/18/1959 | 6/18/1960 | $ - | $ 25,000.00 | $ 25,000.00 | Unknown | Unknown | SE |
| Inland Northwest (611): Idaho Panhandle 1928-1992 (110) | Unknown | CLP28202 | 6/18/1960 | 6/18/1961 | 6/18/1960 | 6/18/1961 | $ - | $ 50,000.00 | $ 50,000.00 | Unknown | Unknown | SE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE)* |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Inland Northwest (611): Idaho Panhandle 1928-1992 (110) | Unknown | CLP39610 | 6/18/1961 | 6/18/1962 | 6/18/1961 | 6/18/1962 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | SE |
| Inland Northwest (611): Idaho Panhandle 1928-1992 (110) | Unknown | CLP49931 | 6/18/1962 | 6/18/1963 | 6/18/1962 | 6/18/1963 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | SE |
| Inland Northwest (611): Idaho Panhandle 1928-1992 (110) | Unknown | NSLS41710 | 6/18/1963 | 6/18/1964 | 6/18/1963 | 6/18/1964 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | SE |
| Inland Northwest (611): Idaho Panhandle 1928-1992 (110) | Unknown | K230657G | 6/18/1964 | 6/18/1965 | 6/18/1964 | 6/18/1965 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | SE |
| Inland Northwest (611): Idaho Panhandle 1928-1992 (110) | Insurance Company of North America | SBL 4 53 57 | 6/21/1965 | 6/21/1966 | 6/21/1965 | 6/21/1966 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Inland Northwest (611): Idaho Panhandle 1928-1992 (110) | Insurance Company of North America | SBL 4 53 57 | 6/21/1966 | 6/21/1967 | 6/21/1966 | 6/21/1967 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Inland Northwest (611): Idaho Panhandle 1928-1992 (110) | Insurance Company of North America | SBL 4 53 57 | 6/21/1967 | 6/20/1968 | 6/21/1967 | 6/20/1968 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Inland Northwest (611): Idaho Panhandle 1928-1992 (110) | Insurance Company of North America | SBL 50408 | 6/21/1968 | 6/21/1969 | 6/21/1968 | 6/21/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Inland Northwest (611): Idaho Panhandle 1928-1992 (110) | Insurance Company of North America | SBL 50408 | 6/21/1969 | 6/21/1970 | 6/21/1969 | 6/21/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Inland Northwest (611): Idaho Panhandle 1928-1992 (110) | Insurance Company of North America | SBL 50408 | 6/21/1970 | 6/21/1971 | 6/21/1970 | 6/21/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Inland Northwest (611): Idaho Panhandle 1928-1992 (110) | Insurance Company of North America | SBL 51572 | 6/21/1971 | 6/21/1972 | 6/21/1971 | 6/21/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Inland Northwest (611): Idaho Panhandle 1928-1992 (110) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 03 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Inland Northwest (611): Idaho Panhandle 1928-1992 (110) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Inland Northwest (611): Idaho Panhandle 1928-1992 (110) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219950 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Inland Northwest (611): Idaho Panhandle 1928-1992 (110) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | Indemnity Insurance Company of North America | Unknown | 6/30/1961 | 6/30/1962 | 6/30/1961 | 6/30/1962 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | Unknown | Unknown | 6/30/1962 | 6/30/1963 | 6/30/1962 | 6/30/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | Unknown | Unknown | 6/30/1963 | 6/30/1964 | 6/30/1963 | 6/30/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | Unknown | Unknown | 6/30/1964 | 6/30/1965 | 6/30/1964 | 6/30/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | Unknown | Unknown | 6/30/1965 | 6/30/1966 | 6/30/1965 | 6/30/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | Unknown | Unknown | 6/30/1966 | 6/30/1967 | 6/30/1966 | 6/30/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | Western Casualty & Surety Company | P100-747 | 6/10/1967 | 3/14/1968 | 6/10/1967 | 3/14/1968 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | Unknown | Unknown | 6/30/1967 | 6/30/1968 | 6/30/1967 | 6/30/1968 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | SE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | Insurance Company of North America | XBC-24884 | 3/14/1968 | 3/14/1969 | 3/14/1968 | 3/14/1969 | $ 100,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | Unknown | Unknown | 3/25/1968 | 3/25/1969 | 3/25/1968 | 3/25/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | Western Casualty & Surety Company | P100-747 | 3/14/1969 | 6/10/1969 | 3/14/1969 | 6/10/1969 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | Insurance Company of North America | XBC-24884 | 3/14/1969 | 3/14/1970 | 3/14/1969 | 3/14/1970 | $ 100,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | Western Casualty & Surety Company | P100-747 | 6/10/1969 | 6/10/1970 | 6/10/1969 | 6/10/1970 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | Insurance Company of North America | XBC-24884 | 3/14/1970 | 3/14/1971 | 3/14/1970 | 3/14/1971 | $ 100,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | Western Casualty & Surety Company | P101 760 | 6/10/1970 | 6/10/1971 | 6/10/1970 | 6/10/1971 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | Western Casualty & Surety Company | P101 760 | 6/10/1971 | 6/10/1972 | 6/10/1971 | 6/10/1972 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | Insurance Company of North America | XBC 8 85 08 | 6/10/1971 | 6/10/1972 | 6/10/1971 | 6/10/1972 | $ 100,000.00 | Unknown | Unknown | Unknown | Unknown | PE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | Western Casualty & Surety Company | P101 760 | 6/10/1972 | 6/10/1973 | 6/10/1972 | 6/10/1973 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | Insurance Company of North America | XBC 8 89 86 | 6/10/1972 | 5/29/1973 | 6/10/1972 | 5/29/1973 | $ 100,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 25 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | St. Paul Fire and Marine Insurance Company | Unknown | 4/3/1976 | 4/3/1977 | 4/3/1976 | 4/3/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220244 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | St. Paul Fire and Marine Insurance Company | Unknown | 4/3/1977 | 4/3/1978 | 4/3/1977 | 4/3/1978 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | National Union Fire Insurance Company of Pittsburgh, PA | Unknown | 4/3/1978 | 4/3/1979 | 4/3/1978 | 4/3/1979 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Inland Northwest (611): Inland Empire 1931-1987 (611) | St. Paul Fire and Marine Insurance Company | Unknown | 4/3/1977 | 4/3/1978 | 4/3/1977 | 4/3/1978 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Inland Northwest (611): Lewis-Clark 1945-1992 (108) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 05 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Inland Northwest (611): Lewis-Clark 1945-1992 (108) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Inland Northwest (611): Lewis-Clark 1945-1992 (108) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219952 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Inland Northwest (611): Lewis-Clark 1945-1992 (108) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Iroquois Trail (376): Genesee 1925-1994 (367) | Insurance Company of North America | XBC 81983 | 11/1/1973 | 11/1/1974 | 11/1/1973 | 11/1/1974 | $ 300,000.00 | $ 2,500,000.00 | $ 2,500,000.00 | Unknown | Unknown | PE |
| Iroquois Trail (376): Genesee 1925-1994 (367) | Insurance Company of North America | XBC 81983 | 11/1/1974 | 11/1/1975 | 11/1/1974 | 11/1/1975 | $ 300,000.00 | $ 2,500,000.00 | $ 2,500,000.00 | Unknown | Unknown | PE |
| Iroquois Trail (376): Genesee 1925-1994 (367) | Insurance Company of North America | XBC 81983 | 11/1/1975 | 1/1/1976 | 11/1/1975 | 1/1/1976 | $ 300,000.00 | $ 2,500,000.00 | $ 2,500,000.00 | Unknown | Unknown | PE |
| Iroquois Trail (376): Genesee 1925-1994 (367) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 50 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Iroquois Trail (376): Genesee 1925-1994 (367) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Iroquois Trail (376): Genesee 1925-1994 (367) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220002 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Iroquois Trail (376): Genesee 1925-1994 (367) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Iroquois Trail (376): Lewiston Trail 1937-1994 (385) | Hartford Accident and Indemnity Company | 32 C 715130 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Iroquois Trail (376): Lewiston Trail 1937-1994 (385) | Hartford Accident and Indemnity Company | 32 HU 360257 | 3/10/1975 | 4/8/1975 | 3/10/1975 | 4/8/1975 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Iroquois Trail (376): Lewiston Trail 1937-1994 (385) | Hartford Accident and Indemnity Company | 32 HU 360257 | 4/8/1975 | 1/1/1976 | 4/8/1975 | 1/1/1976 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Iroquois Trail (376): Lewiston Trail 1937-1994 (385) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 64 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Iroquois Trail (376): Lewiston Trail 1937-1994 (385) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Iroquois Trail (376): Lewiston Trail 1937-1994 (385) | Hartford Accident and Indemnity Company | 32C719701 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Iroquois Trail (376): Lewiston Trail 1937-1994 (385) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220017 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Iroquois Trail (376): Lewiston Trail 1937-1994 (385) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Istrouma Area (211): Istrouma Area (211) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 57 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Istrouma Area (211): Istrouma Area (211) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Istrouma Area (211): Istrouma Area (211) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220105 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Istrouma Area (211): Istrouma Area (211) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Jayhawk Area (197): Jayhawk Area (197) | Unknown | Unknown | 11/1/1943 | 11/1/1944 | 11/1/1943 | 11/1/1944 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Jayhawk Area (197): Jayhawk Area (197) | Unknown | Unknown | 1/1/1955 | 1/1/1956 | 1/1/1955 | 1/1/1956 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Jayhawk Area (197): Jayhawk Area (197) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Jayhawk Area (197): Jayhawk Area (197) | Unknown | Unknown | 1/1/1957 | 1/1/1958 | 1/1/1957 | 1/1/1958 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Jayhawk Area (197): Jayhawk Area (197) | Unknown | Unknown | 1/1/1958 | 1/1/1959 | 1/1/1958 | 1/1/1959 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Jayhawk Area (197): Jayhawk Area (197) | Unknown | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Jayhawk Area (197): Jayhawk Area (197) | Unknown | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Jayhawk Area (197): Jayhawk Area (197) | Unknown | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Jayhawk Area (197): Jayhawk Area (197) | Unknown | Unknown | 1/1/1963 | 1/1/1964 | 1/1/1963 | 1/1/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Jayhawk Area (197): Jayhawk Area (197) | Unknown | Unknown | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Jayhawk Area (197): Jayhawk Area (197) | Unknown | Unknown | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Jayhawk Area (197): Jayhawk Area (197) | Unknown | Unknown | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Jayhawk Area (197): Jayhawk Area (197) | Insurance Company of North America | SBL-2-80-78 | 11/1/1966 | 11/1/1967 | 11/1/1966 | 11/1/1967 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Jayhawk Area (197): Jayhawk Area (197) | Insurance Company of North America | SBL-2-80-83 | 11/1/1966 | 11/1/1967 | 11/1/1966 | 11/1/1967 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Jayhawk Area (197): Jayhawk Area (197) | Insurance Company of North America | SBL 28094 | 11/1/1968 | 11/1/1969 | 11/1/1968 | 11/1/1969 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Jayhawk Area (197): Jayhawk Area (197) | Insurance Company of North America | SBL 50855 | 11/1/1969 | 11/1/1970 | 11/1/1969 | 11/1/1970 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Jayhawk Area (197): Jayhawk Area (197) | Insurance Company of North America | SBL 50861 | 11/1/1970 | 11/1/1971 | 11/1/1970 | 11/1/1971 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Jayhawk Area (197): Jayhawk Area (197) | Insurance Company of North America | Unknown | 11/1/1971 | 11/1/1972 | 11/1/1971 | 11/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Jayhawk Area (197): Jayhawk Area (197) | Insurance Company of North America | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Jayhawk Area (197): Jayhawk Area (197) | Insurance Company of North America | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Jayhawk Area (197): Jayhawk Area (197) | Insurance Company of North America | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Jayhawk Area (197): Jayhawk Area (197) | Insurance Company of North America | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Jayhawk Area (197): Jayhawk Area (197) | Insurance Company of North America | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Jayhawk Area (197): Jayhawk Area (197) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 49 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Jayhawk Area (197): Jayhawk Area (197) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Jayhawk Area (197): Jayhawk Area (197) | Insurance Company of North America | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | | Unknown | Unknown | Unknown | Unknown | SE |
| Jayhawk Area (197): Jayhawk Area (197) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219997 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Jayhawk Area (197): Jayhawk Area (197) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Jayhawk Area (197): Jayhawk Area (197) | Insurance Company of North America | Unknown | 1/1/1978 | 1/1/1979 | 1/1/1978 | 1/1/1979 | | Unknown | Unknown | Unknown | Unknown | SE |
| Jayhawk Area (197): Jayhawk Area (197) | Insurance Company of North America | Unknown | 1/1/1979 | 1/1/1980 | 1/1/1979 | 1/1/1980 | | Unknown | Unknown | Unknown | Unknown | SE |
| Jersey Shore (341): Atlantic Area 1926-1992 (331) | Insurance Company of North America | SBL 50022 | 5/6/1970 | 5/6/1971 | 5/6/1970 | 5/6/1971 | | Unknown | Unknown | Unknown | Unknown | PE |
| Jersey Shore (341): Atlantic Area 1926-1992 (331) | Insurance Company of North America | SBL 50088 | 5/6/1971 | 5/6/1972 | 5/6/1971 | 5/6/1972 | | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Jersey Shore (341): Atlantic Area 1926-1992 (331) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | | Unknown | Unknown | Unknown | Unknown | SE |
| Jersey Shore (341): Atlantic Area 1926-1992 (331) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 25 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Jersey Shore (341): Atlantic Area 1926-1992 (331) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Jersey Shore (341): Atlantic Area 1926-1992 (331) | Ambassador Insurance Company | GLA 332372 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | | Unknown | Unknown | Unknown | Unknown | SE |
| Jersey Shore (341): Atlantic Area 1926-1992 (331) | Ambassador Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 50,000.00 | $ 450,000.00 | $ 450,000.00 | Unknown | Unknown | SE |
| Jersey Shore (341): Atlantic Area 1926-1992 (331) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220177 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Jersey Shore (341): Atlantic Area 1926-1992 (331) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Jersey Shore (341): Ocean County 1940-1993 (341) | Insurance Company of North America | SBL 50087 | 5/11/1971 | 5/11/1972 | 5/11/1971 | 5/11/1972 | | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Jersey Shore (341): Ocean County 1940-1993 (341) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 38 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Jersey Shore (341): Ocean County 1940-1993 (341) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Jersey Shore (341): Ocean County 1940-1993 (341) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220189 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Jersey Shore (341): Ocean County 1940-1993 (341) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Juniata Valley (497): Juniata Valley (497) | Unknown | Unknown | 1/1/1951 | 1/1/1952 | 1/1/1951 | 1/1/1952 | | Unknown | Unknown | Unknown | Unknown | SE |
| Juniata Valley (497): Juniata Valley (497) | Unknown | Unknown | 2/25/1959 | 2/25/1960 | 2/25/1959 | 2/25/1960 | | $ 5,000.00 | $ 5,000.00 | Unknown | Unknown | SE |
| Juniata Valley (497): Juniata Valley (497) | Unknown | Unknown | 2/25/1960 | 1/1/1961 | 2/25/1960 | 1/1/1961 | | Unknown | Unknown | Unknown | Unknown | SE |
| Juniata Valley (497): Juniata Valley (497) | Unknown | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | | Unknown | Unknown | Unknown | Unknown | SE |
| Juniata Valley (497): Juniata Valley (497) | Unknown | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | | Unknown | Unknown | Unknown | Unknown | SE |
| Juniata Valley (497): Juniata Valley (497) | Insurance Company of North America | SBL 45396 | 2/22/1967 | 2/22/1968 | 2/22/1967 | 2/22/1968 | | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Juniata Valley (497): Juniata Valley (497) | Insurance Company of North America | SBL 45396 | 2/22/1968 | 2/22/1969 | 2/22/1968 | 2/22/1969 | | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Juniata Valley (497): Juniata Valley (497) | Insurance Company of North America | SBL 45396 | 2/22/1969 | 2/22/1970 | 2/22/1969 | 2/22/1970 | | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Juniata Valley (497): Juniata Valley (497) | Insurance Company of North America | Unknown | 2/22/1970 | 2/22/1971 | 2/22/1970 | 2/22/1971 | | Unknown | Unknown | Unknown | Unknown | SE |
| Juniata Valley (497): Juniata Valley (497) | Insurance Company of North America | Unknown | 2/22/1971 | 2/22/1972 | 2/22/1971 | 2/22/1972 | | Unknown | Unknown | Unknown | Unknown | SE |
| Juniata Valley (497): Juniata Valley (497) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 40 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Juniata Valley (497): Juniata Valley (497) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Juniata Valley (497): Juniata Valley (497) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220095 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Juniata Valley (497): Juniata Valley (497) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Katahdin Area (216): Katahdin Area 1929-1996 (216) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 63 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Katahdin Area (216): Katahdin Area 1929-1996 (216) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Katahdin Area (216): Katahdin Area 1929-1996 (216) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220111 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Katahdin Area (216): Katahdin Area 1929-1996 (216) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| La Salle (165): Northern Indiana 1973-1991 (165) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 36 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| La Salle (165): Northern Indiana 1973-1991 (165) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| La Salle (165): Northern Indiana 1973-1991 (165) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219982 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| La Salle (165): Northern Indiana 1973-1991 (165) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| La Salle (165): Pioneer Trails 1935-1972 (155) | Insurance Company of North America | SBL 4 53 65 | 7/15/1965 | 7/15/1966 | 7/15/1965 | 7/15/1966 | | Unknown | Unknown | Unknown | Unknown | SE |
| La Salle (165): Pioneer Trails 1935-1972 (155) | Insurance Company of North America | SBL 4 53 65 | 7/15/1966 | 7/15/1967 | 7/15/1966 | 7/15/1967 | | Unknown | Unknown | Unknown | Unknown | SE |
| La Salle (165): Pioneer Trails 1935-1972 (155) | Insurance Company of North America | SBL 4 53 65 | 7/15/1967 | 7/15/1968 | 7/15/1967 | 7/15/1968 | | Unknown | Unknown | Unknown | Unknown | SE |
| La Salle (165): Pioneer Trails 1935-1972 (155) | Insurance Company of North America | SBL S 04 14 | 7/15/1968 | 7/15/1969 | 7/15/1968 | 7/15/1969 | | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| La Salle (165): Pioneer Trails 1935-1972 (155) | Insurance Company of North America | SBL-4-67-66 | 12/29/1968 | 12/29/1969 | 12/29/1968 | 12/29/1969 | | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| La Salle (165): Pioneer Trails 1935-1972 (155) | Insurance Company of North America | SBL S 04 14 | 7/15/1969 | 7/15/1970 | 7/15/1969 | 7/15/1970 | | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| La Salle (165): Pioneer Trails 1935-1972 (155) | Insurance Company of North America | SBL S 04 14 | 7/15/1970 | 7/15/1971 | 7/15/1970 | 7/15/1971 | | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| La Salle (165): Pottawattomie 1926-1972 (731) | Insurance Company of North America | SBL-4-67-21 | 2/26/1967 | 2/26/1968 | 2/26/1967 | 2/26/1968 | | Unknown | Unknown | Unknown | Unknown | SE |
| La Salle (165): Pottawattomie 1926-1972 (731) | Insurance Company of North America | SBL-4-67-50 | 2/26/1968 | 2/26/1969 | 2/26/1968 | 2/26/1969 | | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| La Salle (165): Pottawattomie 1926-1972 (731) | Insurance Company of North America | SBL 50451 | 2/26/1969 | 2/26/1970 | 2/26/1969 | 2/26/1970 | | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| La Salle (165): Pottawattomie 1926-1972 (731) | Insurance Company of North America | SBL 50451 | 2/26/1970 | 2/26/1971 | 2/26/1970 | 2/26/1971 | | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| La Salle (165): Pottawattomie 1926-1972 (731) | Insurance Company of North America | SBL 50451 | 2/26/1971 | 2/26/1972 | 2/26/1971 | 2/26/1972 | | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Firelands Area 1925-1994 (458) | American States Insurance Company | CL 220-020 | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | | Unknown | Unknown | Unknown | Unknown | SE |
| Lake Erie (440): Firelands Area 1925-1994 (458) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 10 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Firelands Area 1925-1994 (458) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Firelands Area 1925-1994 (458) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220063 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Firelands Area 1925-1994 (458) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Greater Cleveland -2017 (440) | Indemnity Insurance Company of North America | Unknown | 1/1/1958 | 1/1/1959 | 1/1/1958 | 1/1/1959 | | Unknown | Unknown | Unknown | Unknown | SE |
| Lake Erie (440): Greater Cleveland -2017 (440) | Unknown | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | | Unknown | Unknown | Unknown | Unknown | SE |
| Lake Erie (440): Greater Cleveland -2017 (440) | Insurance Company of North America | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | $ 300,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Lake Erie (440): Greater Cleveland -2017 (440) | Insurance Company of North America | Unknown | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | | Unknown | Unknown | Unknown | Unknown | SE |
| Lake Erie (440): Greater Cleveland -2017 (440) | Insurance Company of North America | ALB 46445 | 6/28/1967 | 6/27/1968 | 6/28/1967 | 6/27/1968 | | Unknown | Unknown | Unknown | Unknown | SE |
| Lake Erie (440): Greater Cleveland -2017 (440) | Insurance Company of North America | ALB 46445 | 6/28/1968 | 6/28/1969 | 6/28/1968 | 6/28/1969 | | Unknown | Unknown | Unknown | Unknown | SE |
| Lake Erie (440): Greater Cleveland -2017 (440) | Insurance Company of North America | ALB 46445 | 6/28/1969 | 6/28/1970 | 6/28/1969 | 6/28/1970 | | Unknown | Unknown | Unknown | Unknown | SE |
| Lake Erie (440): Greater Cleveland -2017 (440) | Insurance Company of North America | SBL 51942 | 6/28/1970 | 6/28/1971 | 6/28/1970 | 6/28/1971 | | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Greater Cleveland -2017 (440) | Insurance Company of North America | SBL 51942 | 6/28/1971 | 6/27/1972 | 6/28/1971 | 6/27/1972 | | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Greater Cleveland -2017 (440) | Insurance Company of North America | SBL 51942 | 6/28/1972 | 1/1/1973 | 6/28/1972 | 1/1/1973 | | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Greater Cleveland -2017 (440) | Insurance Company of North America | SBL 51942 | 1/1/1973 | 6/28/1973 | 1/1/1973 | 6/28/1973 | | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Greater Cleveland -2017 (440) | Insurance Company of North America | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ 500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Lake Erie (440): Greater Cleveland -2017 (440) | Insurance Company of North America | Unknown | 6/28/1973 | 6/28/1974 | 6/28/1973 | 6/28/1974 | | Unknown | Unknown | Unknown | Unknown | SE |
| Lake Erie (440): Greater Cleveland -2017 (440) | Insurance Company of North America | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ 500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Lake Erie (440): Greater Cleveland -2017 (440) | Insurance Company of North America | Unknown | 6/28/1974 | 1/1/1975 | 6/28/1974 | 1/1/1975 | | Unknown | Unknown | Unknown | Unknown | SE |
| Lake Erie (440): Greater Cleveland -2017 (440) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 98 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Greater Cleveland -2017 (440) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Greater Cleveland -2017 (440) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220051 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Greater Cleveland -2017 (440) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Harding Area 1926-1994 (443) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 08 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Harding Area 1926-1994 (443) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Harding Area 1926-1994 (443) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220058 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Harding Area 1926-1994 (443) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Johnny Appleseed Area 1926-1994 (453) | Insurance Company of North America | SBL-4-64-52 | 1/22/1967 | 1/22/1968 | 1/22/1967 | 1/22/1968 | | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Lake Erie (440): Johnny Appleseed Area 1926-1994 (453) | Insurance Company of North America | SBL-4-64-52 | 1/22/1968 | 1/22/1969 | 1/22/1968 | 1/22/1969 | | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Johnny Appleseed Area 1926-1994 (453) | Insurance Company of North America | SBL-S-19-01 | 1/22/1969 | 1/22/1970 | 1/22/1969 | 1/22/1970 | | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Johnny Appleseed Area 1926-1994 (453) | Insurance Company of North America | SBL S 19 01 | 1/22/1970 | 1/22/1971 | 1/22/1970 | 1/22/1971 | | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Lake Erie (440): Johnny Appleseed Area 1926-1994 (453) | Insurance Company of North America | SBL 1 19 58 | 1/22/1971 | 1/22/1972 | 1/22/1971 | 1/22/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Johnny Appleseed Area 1926-1994 (453) | Insurance Company of North America | XUA 37 25 | 1/22/1971 | 1/22/1972 | 1/22/1971 | 1/22/1972 | $ 500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Johnny Appleseed Area 1926-1994 (453) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 04 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Johnny Appleseed Area 1926-1994 (453) | Insurance Company of North America | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Johnny Appleseed Area 1926-1994 (453) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220057 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Johnny Appleseed Area 1926-1994 (453) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Johnny Appleseed Area 1926-1994 (453) | Buckeye Union Insurance Company | CBP C6051512-92 | 1/22/1991 | 1/22/1992 | 1/22/1991 | 1/22/1992 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Lake Erie (440): Johnny Appleseed Area 1926-1994 (453) | Continental Insurance Company | CBP C6051512-93 | 1/22/1992 | 1/22/1993 | 1/22/1992 | 1/22/1993 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Johnny Appleseed Area 1926-1994 (453) | Continental Insurance Company | Unknown | 1/22/1993 | 1/22/1994 | 1/22/1993 | 1/22/1994 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Lake Erie (440): Johnny Appleseed Area 1926-1994 (453) | Buckeye Union Insurance Company | CBP C6051512-95 | 1/22/1994 | 1/22/1995 | 1/22/1994 | 1/22/1995 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Lake Erie (440): Johnny Appleseed Area 1926-1994 (453) | Buckeye Union Insurance Company | CBP C6051512-96 | 1/22/1995 | 1/22/1996 | 1/22/1995 | 1/22/1996 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Lake Erie (440): Johnny Appleseed Area 1926-1994 (453) | Continental Insurance Company | CBP C6051512 | 1/22/1996 | 1/22/1997 | 1/22/1996 | 1/22/1997 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Las Vegas Area (328): Boulder Dam Area 1944-2005 (328) | Insurance Company of North America | SBL 51318 | 2/17/1970 | 2/17/1971 | 2/17/1970 | 2/17/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Las Vegas Area (328): Boulder Dam Area 1944-2005 (328) | Insurance Company of North America | SBL 51318 | 2/17/1970 | 2/17/1971 | 2/17/1970 | 2/17/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Las Vegas Area (328): Boulder Dam Area 1944-2005 (328) | Insurance Company of North America | SBL 51318 | 2/17/1972 | 2/17/1973 | 2/17/1972 | 2/17/1973 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Las Vegas Area (328): Boulder Dam Area 1944-2005 (328) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Las Vegas Area (328): Boulder Dam Area 1944-2005 (328) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 22 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Las Vegas Area (328): Boulder Dam Area 1944-2005 (328) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Las Vegas Area (328): Boulder Dam Area 1944-2005 (328) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220174 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Las Vegas Area (328): Boulder Dam Area 1944-2005 (328) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Las Vegas Area (328): Boulder Dam Area 1944-2005 (328) | New Hampshire Insurance Company | GLA 332393 | 2/1/1977 | 2/1/1978 | 2/1/1977 | 2/1/1978 | $ - | $ 50,000.00 | $ 50,000.00 | Unknown | Unknown | SE |
| Last Frontier (480): Black Beaver 1930-1996 (471) | Westchester Fire Insurance Company | Unknown | 12/31/1974 | 1/1/1976 | 12/31/1974 | 1/1/1976 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | SE |
| Last Frontier (480): Black Beaver 1930-1996 (471) | U.S. Fire Insurance Company | DCL 72 60 41 | 12/31/1974 | 12/31/1975 | 12/31/1974 | 12/31/1975 | $ 300,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Last Frontier (480): Black Beaver 1930-1996 (471) | U.S. Fire Insurance Company | DCL 72 60 41 | 12/31/1975 | 12/31/1976 | 12/31/1975 | 12/31/1976 | $ 300,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Last Frontier (480): Black Beaver 1930-1996 (471) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Last Frontier (480): Black Beaver 1930-1996 (471) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 21 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Last Frontier (480): Black Beaver 1930-1996 (471) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Last Frontier (480): Black Beaver 1930-1996 (471) | U.S. Fire Insurance Company | DCL 72 60 41 | 12/31/1976 | 12/31/1977 | 12/31/1976 | 12/31/1977 | $ 300,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Last Frontier (480): Black Beaver 1930-1996 (471) | Westchester Fire Insurance Company | Unknown | 1/1/1977 | 12/31/1977 | 1/1/1977 | 12/31/1977 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | SE |
| Last Frontier (480): Black Beaver 1930-1996 (471) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220075 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Last Frontier (480): Black Beaver 1930-1996 (471) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Last Frontier (480): Last Frontier 1939- (480) | Insurance Company of North America | Unknown | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Last Frontier (480): Last Frontier 1939- (480) | Insurance Company of North America | Unknown | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Last Frontier (480): Last Frontier 1939- (480) | Insurance Company of North America | Unknown | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Last Frontier (480): Last Frontier 1939- (480) | Unknown | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Last Frontier (480): Last Frontier 1939- (480) | Unknown | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Last Frontier (480): Last Frontier 1939- (480) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 23 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Last Frontier (480): Last Frontier 1939- (480) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220076 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Allegheny 1921-1967 (527) | Insurance Company of North America | SBL 43224 | 7/1/1967 | 1/1/1968 | 7/1/1967 | 1/1/1968 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Allegheny Trails 1967-1993 (527) | Insurance Company of North America | SBL 4 32 55 | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Allegheny Trails 1967-1993 (527) | Insurance Company of North America | SBL43276 | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Allegheny Trails 1967-1993 (527) | Insurance Company of North America | SBL 43295 | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Allegheny Trails 1967-1993 (527) | Insurance Company of North America | SBL 52313 | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Allegheny Trails 1967-1993 (527) | Insurance Company of North America | GAL120157 | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Allegheny Trails 1967-1993 (527) | Insurance Company of North America | GLP 40 87 78 | 1/1/1973 | 5/31/1973 | 1/1/1973 | 5/31/1973 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Allegheny Trails 1967-1993 (527) | Travelers Indemnity Company | 650-668A711-3-IND | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | Unknown² | Unknown² | Unknown | Unknown | PE |
| Laurel Highlands (527): Allegheny Trails 1967-1993 (527) | Travelers Indemnity Company | CUP-950A149-4 | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ 500,000.00 | $ 2,500,000.00 | $ 2,500,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Allegheny Trails 1967-1993 (527) | Travelers Indemnity Company | 650 951A373-3-IND-75 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown² | Unknown² | Unknown | Unknown | PE |
| Laurel Highlands (527): Allegheny Trails 1967-1993 (527) | Travelers Indemnity Company | CUP-950A149-5 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Allegheny Trails 1967-1993 (527) | Travelers Indemnity Company | 650 951A373-3-IND-76 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown² | Unknown² | Unknown | Unknown | PE |
| Laurel Highlands (527): Allegheny Trails 1967-1993 (527) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 43 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Allegheny Trails 1967-1993 (527) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Allegheny Trails 1967-1993 (527) | Travelers Indemnity Company | 650-951A373-3-IND-77 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown² | Unknown² | Unknown | Unknown | PE |
| Laurel Highlands (527): Allegheny Trails 1967-1993 (527) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220098 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Allegheny Trails 1967-1993 (527) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Blair-Bedford 1929-1970 (496) | Insurance Company of North America | SBL 4 29 60 | 3/1/1965 | 3/1/1966 | 3/1/1965 | 3/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Laurel Highlands (527): Blair-Bedford 1929-1970 (496) | Insurance Company of North America | SBL 4 29 60 | 3/1/1966 | 3/1/1967 | 3/1/1966 | 3/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Laurel Highlands (527): Blair-Bedford 1929-1970 (496) | Insurance Company of North America | SBL 4 29 60 | 3/1/1967 | 3/1/1968 | 3/1/1967 | 3/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Laurel Highlands (527): Blair-Bedford 1929-1970 (496) | Insurance Company of North America | SBL 4 69 10 | 3/1/1968 | 3/1/1969 | 3/1/1968 | 3/1/1969 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Blair-Bedford 1929-1970 (496) | Insurance Company of North America | SBL 4 69 10 | 3/1/1969 | 3/1/1970 | 3/1/1969 | 3/1/1970 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Blair-Bedford 1929-1970 (496) | Insurance Company of North America | SBL 4 69 10 | 3/1/1970 | 3/1/1971 | 3/1/1970 | 3/1/1971 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): East Boroughs 1921-1973 (540) | Insurance Company of North America | SBL 51496 | 3/1/1971 | 3/1/1972 | 3/1/1971 | 3/1/1972 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): East Boroughs 1921-1973 (540) | Insurance Company of North America | SBL-4-32-15 | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Laurel Highlands (527): East Boroughs 1921-1973 (540) | Insurance Company of North America | SBL 4 32 56 | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): East Boroughs 1921-1973 (540) | Insurance Company of North America | SBL 4 32 78 | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): East Boroughs 1921-1973 (540) | Insurance Company of North America | SBL 52311 | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): East Valley Area 1973-1993 (530) | Insurance Company of North America | GAL 12 01 58 | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): East Valley Area 1973-1993 (530) | Insurance Company of North America | GAL 11 71 47 | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Laurel Highlands (527): East Valley Area 1973-1993 (530) | Insurance Company of North America | XBC 8 63 64 | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ 300,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): East Valley Area 1973-1993 (530) | Insurance Company of North America | GLP 408779 | 1/1/1973 | 5/31/1973 | 1/1/1973 | 5/31/1973 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): East Valley Area 1973-1993 (530) | Insurance Company of North America | GAL 20 60 95 | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): East Valley Area 1973-1993 (530) | Insurance Company of North America | XBC 110662 | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ 300,000.00 | $ 1,500,000.00 | $ 1,500,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): East Valley Area 1973-1993 (530) | Insurance Company of North America | GAL 20 63 77 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): East Valley Area 1973-1993 (530) | Insurance Company of North America | GAL 32 85 17 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): East Valley Area 1973-1993 (530) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 41 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): East Valley Area 1973-1993 (530) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): East Valley Area 1973-1993 (530) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220096 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): East Valley Area 1973-1993 (530) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Monongahela Valley 1952-1971 (516) | Insurance Company of North America | SBL 4-32-9 | 3/1/1967 | 3/1/1968 | 3/1/1967 | 3/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Laurel Highlands (527): Mon-Yough 1971-1973 (523) | Insurance Company of North America | GAL 12 01 59 | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Nemacolin Trails 1964-1967 (508) | Insurance Company of North America | SBL 45382 | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Nemacolin Trails 1964-1967 (508) | Insurance Company of North America | SBL 45382 | 4/1/1966 | 1/1/1967 | 4/1/1966 | 1/1/1967 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Penns Woods 1970-1992 (508) | Insurance Company of North America | SBL 5 15 22 | 2/16/1971 | 2/16/1972 | 2/16/1971 | 2/16/1972 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Penns Woods 1970-1992 (508) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Penns Woods 1970-1992 (508) | National Surety Corporation | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Laurel Highlands (527): Penns Woods 1970-1992 (508) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Penns Woods 1970-2011 (508) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 52 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Penns Woods 1970-2011 (508) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Penns Woods 1970-2011 (508) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220274 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Penns Woods 1970-2011 (508) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Potomac 1938-2014 (757) | Hartford Accident and Indemnity Company | 30 CBP 109015 | 6/1/1972 | 6/1/1973 | 6/1/1972 | 6/1/1973 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Laurel Highlands (527): Potomac 1938-2014 (757) | Hartford Accident and Indemnity Company | 30 CBP 109015 | 6/1/1973 | 6/1/1974 | 6/1/1973 | 6/1/1974 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Laurel Highlands (527): Potomac 1938-2014 (757) | Hartford Accident and Indemnity Company | 30 CBP 109015 | 6/1/1974 | 6/1/1975 | 6/1/1974 | 6/1/1975 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Laurel Highlands (527): Potomac 1938-2014 (757) | Hartford Accident and Indemnity Company | 30 CBP 115715 | 6/1/1975 | 6/1/1976 | 6/1/1975 | 6/1/1976 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Laurel Highlands (527): Potomac 1938-2014 (757) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 66 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Potomac 1938-2014 (757) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Potomac 1938-2014 (757) | Hartford Accident and Indemnity Company | 30 CBP 115715 | 6/1/1976 | 6/1/1977 | 6/1/1976 | 6/1/1977 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Laurel Highlands (527): Potomac 1938-2014 (757) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220114 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Potomac 1938-2014 (757) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Laurel Highlands (527): Potomac 1938-2014 (757) | Hartford Accident and Indemnity Company | 30 CBP 115715 | 6/1/1977 | 6/1/1978 | 6/1/1977 | 6/1/1978 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Leatherstocking (400): General Herkimer -2001 (400) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 60 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Leatherstocking (400): General Herkimer -2001 (400) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Leatherstocking (400): General Herkimer -2001 (400) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220013 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Leatherstocking (400): General Herkimer -2001 (400) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Leatherstocking (400): Iroquois 1969-1981 (395) | Unknown | Unknown | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Leatherstocking (400): Iroquois 1969-1981 (395) | Unknown | Unknown | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Leatherstocking (400): Iroquois 1969-1981 (395) | Unknown | Unknown | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Leatherstocking (400): Iroquois 1969-1981 (395) | Unknown | Unknown | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Leatherstocking (400): Iroquois 1969-1981 (395) | Unknown | Unknown | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Leatherstocking (400): Iroquois 1969-1981 (395) | Unknown | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Leatherstocking (400): Iroquois 1969-1981 (395) | Unknown | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Leatherstocking (400): Iroquois 1969-1981 (395) | Unknown | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Leatherstocking (400): Iroquois 1969-1981 (395) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 72 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Leatherstocking (400): Iroquois 1969-1981 (395) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Leatherstocking (400): Iroquois 1969-1981 (395) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220025 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Leatherstocking (400): Iroquois 1969-1981 (395) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Leatherstocking (400): Otschodela 1927-2016 (393) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 69 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Leatherstocking (400): Otschodela 1927-2016 (393) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Leatherstocking (400): Otschodela 1927-2016 (393) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220022 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Leatherstocking (400): Otschodela 1927-2016 (393) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Leatherstocking (400): Upper Mohawk 1937-1981 (406) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Leatherstocking (400): Upper Mohawk 1937-1981 (406) | Unknown | Unknown | 1/1/1957 | 1/1/1958 | 1/1/1957 | 1/1/1958 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Leatherstocking (400): Upper Mohawk 1937-1981 (406) | Unknown | Unknown | 1/1/1958 | 1/1/1959 | 1/1/1958 | 1/1/1959 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Leatherstocking (400): Upper Mohawk 1937-1981 (406) | Unknown | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Leatherstocking (400): Upper Mohawk 1937-1981 (406) | Unknown | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Leatherstocking (400): Upper Mohawk 1937-1981 (406) | Unknown | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Leatherstocking (400): Upper Mohawk 1937-1981 (406) | Unknown | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Leatherstocking (400): Upper Mohawk 1937-1981 (406) | Unknown | Unknown | 1/1/1963 | 1/1/1964 | 1/1/1963 | 1/1/1964 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Leatherstocking (400): Upper Mohawk 1937-1981 (406) | Unknown | Unknown | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Leatherstocking (400): Upper Mohawk 1937-1981 (406) | Unknown | Unknown | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Leatherstocking (400): Upper Mohawk 1937-1981 (406) | Unknown | Unknown | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | $ | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | SE |
| Leatherstocking (400): Upper Mohawk 1937-1981 (406) | Insurance Company of North America | GA048921 | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | $ | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | SE |
| Leatherstocking (400): Upper Mohawk 1937-1981 (406) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 77 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Leatherstocking (400): Upper Mohawk 1937-1981 (406) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Leatherstocking (400): Upper Mohawk 1937-1981 (406) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220030 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Leatherstocking (400): Upper Mohawk 1937-1981 (406) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): Audubon 1952-1994 (200) | Insurance Company of North America | SBL xxxxxii | 3/1/1967 | 3/1/1968 | 3/1/1967 | 3/1/1968 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Lincoln Heritage (205): Audubon 1952-1994 (200) | Insurance Company of North America | SBL 44476 | 3/1/1968 | 3/1/1969 | 3/1/1968 | 3/1/1969 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): Audubon 1952-1994 (200) | Insurance Company of North America | SBL S 11 78 | 3/1/1969 | 3/1/1970 | 3/1/1969 | 3/1/1970 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): Audubon 1952-1994 (200) | Insurance Company of North America | SBL S 11 78 | 3/1/1970 | 3/1/1971 | 3/1/1970 | 3/1/1971 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): Audubon 1952-1994 (200) | Insurance Company of North America | SBL S 11 78 | 3/1/1971 | 3/1/1972 | 3/1/1971 | 3/1/1972 | $ | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): Audubon 1952-1994 (200) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 53 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): Audubon 1952-1994 (200) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): Audubon 1952-1994 (200) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220101 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): Audubon 1952-1994 (200) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): Four Rivers 1940-1994 (207) | Insurance Company of North America | SBL 44415 | 5/7/1965 | 5/7/1966 | 5/7/1965 | 5/7/1966 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Lincoln Heritage (205): Four Rivers 1940-1994 (207) | Insurance Company of North America | SBL 44415 | 5/7/1966 | 5/7/1967 | 5/7/1966 | 5/7/1967 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Lincoln Heritage (205): Four Rivers 1940-1994 (207) | Insurance Company of North America | SBL 44415 | 5/7/1967 | 5/7/1968 | 5/7/1967 | 5/7/1968 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Lincoln Heritage (205): Four Rivers 1940-1994 (207) | Insurance Company of North America | SBL 44478 | 5/7/1968 | 5/7/1969 | 5/7/1968 | 5/7/1969 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): Four Rivers 1940-1994 (207) | Insurance Company of North America | SBL 44478 | 5/7/1969 | 5/7/1970 | 5/7/1969 | 5/7/1970 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): Four Rivers 1940-1994 (207) | Insurance Company of North America | SBL 44478 | 5/7/1970 | 5/7/1971 | 5/7/1970 | 5/7/1971 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): Four Rivers 1940-1994 (207) | Insurance Company of North America | SBL 44478 | 5/7/1971 | 5/7/1972 | 5/7/1971 | 5/7/1972 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): Four Rivers 1940-1994 (207) | Insurance Company of North America | SBL 44478 | 5/7/1972 | 5/7/1973 | 5/7/1972 | 5/7/1973 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Lincoln Heritage (205): Four Rivers 1940-1994 (207) | Unknown | Unknown | 5/7/1973 | 5/7/1974 | 5/7/1973 | 5/7/1974 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Lincoln Heritage (205): Four Rivers 1940-1994 (207) | Unknown | Unknown | 5/7/1974 | 5/7/1975 | 5/7/1974 | 5/7/1975 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Lincoln Heritage (205): Four Rivers 1940-1994 (207) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 54 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): Four Rivers 1940-1994 (207) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): Four Rivers 1940-1994 (207) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220102 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): Four Rivers 1940-1994 (207) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): George Rogers Clark Area 1927-1993 (143) | Insurance Company of North America | SBL S 04 28 | 11/19/1969 | 11/19/1970 | 11/19/1969 | 11/19/1970 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): George Rogers Clark Area 1927-1993 (143) | Insurance Company of North America | SBL S 04 28 | 11/19/1970 | 11/19/1971 | 11/19/1970 | 11/19/1971 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): George Rogers Clark Area 1927-1993 (143) | Insurance Company of North America | SBL S 04 28 | 11/19/1971 | 11/19/1972 | 11/19/1971 | 11/19/1972 | $ | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): George Rogers Clark Area 1927-1993 (143) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 55 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): George Rogers Clark Area 1927-1993 (143) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): George Rogers Clark Area 1927-1993 (143) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219981 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): George Rogers Clark Area 1927-1993 (143) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): Old Kentucky Home 1954-1993 (205) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ | $ 25,000.00 | $ 25,000.00 | Unknown | Unknown | SE |
| Lincoln Heritage (205): Old Kentucky Home 1954-1993 (205) | Unknown | Unknown | 1/1/1957 | 1/1/1958 | 1/1/1957 | 1/1/1958 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Lincoln Heritage (205): Old Kentucky Home 1954-1993 (205) | Unknown | Unknown | 1/1/1958 | 1/1/1959 | 1/1/1958 | 1/1/1959 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Lincoln Heritage (205): Old Kentucky Home 1954-1993 (205) | Unknown | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Lincoln Heritage (205): Old Kentucky Home 1954-1993 (205) | Unknown | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Lincoln Heritage (205): Old Kentucky Home 1954-1993 (205) | Unknown | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Lincoln Heritage (205): Old Kentucky Home 1954-1993 (205) | Unknown | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Lincoln Heritage (205): Old Kentucky Home 1954-1993 (205) | Unknown | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ | Unknown | Unknown | Unknown | Unknown | SE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Lincoln Heritage (205): Old Kentucky Home 1954-1993 (205) | Travelers Insurance Company | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Lincoln Heritage (205): Old Kentucky Home 1954-1993 (205) | Travelers Insurance Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Lincoln Heritage (205): Old Kentucky Home 1954-1993 (205) | Travelers Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Lincoln Heritage (205): Old Kentucky Home 1954-1993 (205) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 52 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): Old Kentucky Home 1954-1993 (205) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): Old Kentucky Home 1954-1993 (205) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220000 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Lincoln Heritage (205): Old Kentucky Home 1954-1993 (205) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Long Beach Area (32): Long Beach Area (32) | General Accident | Unknown | 12/22/1955 | 12/21/1956 | 12/22/1955 | 12/21/1956 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Long Beach Area (32): Long Beach Area (32) | General Accident | Unknown | 12/22/1956 | 12/22/1957 | 12/22/1956 | 12/22/1957 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Long Beach Area (32): Long Beach Area (32) | General Accident | Unknown | 12/22/1957 | 12/22/1958 | 12/22/1957 | 12/22/1958 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Long Beach Area (32): Long Beach Area (32) | General Accident | Unknown | 12/22/1958 | 12/22/1959 | 12/22/1958 | 12/22/1959 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Long Beach Area (32): Long Beach Area (32) | General Accident | Unknown | 12/22/1959 | 12/22/1960 | 12/22/1959 | 12/22/1960 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Long Beach Area (32): Long Beach Area (32) | General Accident | Unknown | 12/22/1960 | 12/22/1961 | 12/22/1960 | 12/22/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Long Beach Area (32): Long Beach Area (32) | General Accident | Unknown | 12/22/1961 | 1/1/1962 | 12/22/1961 | 1/1/1962 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Long Beach Area (32): Long Beach Area (32) | General Accident | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Long Beach Area (32): Long Beach Area (32) | General Accident | Unknown | 1/1/1963 | 1/1/1964 | 1/1/1963 | 1/1/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Long Beach Area (32): Long Beach Area (32) | Insurance Company of North America | SBL 42932 | 4/1/1965 | 4/1/1966 | 4/1/1965 | 4/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Long Beach Area (32): Long Beach Area (32) | Insurance Company of North America | SBL 42932 | 4/1/1966 | 4/1/1967 | 4/1/1966 | 4/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Long Beach Area (32): Long Beach Area (32) | Insurance Company of North America | SBL 42932 | 4/1/1967 | 4/1/1968 | 4/1/1967 | 4/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Long Beach Area (32): Long Beach Area (32) | Insurance Company of North America | SBL 46936 | 4/1/1968 | 4/1/1969 | 4/1/1968 | 4/1/1969 | $ - | $ 1,500,000.00 | $ 1,500,000.00 | Unknown | Unknown | PE |
| Long Beach Area (32): Long Beach Area (32) | Insurance Company of North America | SBL 46936 | 4/1/1969 | 4/1/1970 | 4/1/1969 | 4/1/1970 | $ - | $ 1,500,000.00 | $ 1,500,000.00 | Unknown | Unknown | PE |
| Long Beach Area (32): Long Beach Area (32) | Insurance Company of North America | SBL 46936 | 4/1/1970 | 4/1/1971 | 4/1/1970 | 4/1/1971 | $ - | $ 1,500,000.00 | $ 1,500,000.00 | Unknown | Unknown | PE |
| Long Beach Area (32): Long Beach Area (32) | Insurance Company of North America | SBL 51508 | 4/1/1971 | 4/1/1972 | 4/1/1971 | 4/1/1972 | $ - | $ 1,500,000.00 | $ 1,500,000.00 | Unknown | Unknown | PE |
| Long Beach Area (32): Long Beach Area (32) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Long Beach Area (32): Long Beach Area (32) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 36 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Long Beach Area (32): Long Beach Area (32) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Long Beach Area (32): Long Beach Area (32) | New Hampshire Insurance Company | GLA 332346 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Long Beach Area (32): Long Beach Area (32) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219885 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Long Beach Area (32): Long Beach Area (32) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Longhorn (662): Heart O Texas 1929-2001 (662) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 91 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Longhorn (662): Heart O Texas 1929-2001 (662) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Longhorn (662): Heart O Texas 1929-2001 (662) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220222 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Longhorn (662): Heart O Texas 1929-2001 (662) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Longhorn (662): Longhorn -2001 (582) | Unknown | Unknown | 1/1/1947 | 1/1/1948 | 1/1/1947 | 1/1/1948 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Unknown | Unknown | 1/1/1948 | 1/1/1949 | 1/1/1948 | 1/1/1949 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Unknown | Unknown | 1/1/1949 | 1/1/1950 | 1/1/1949 | 1/1/1950 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Unknown | Unknown | 1/1/1950 | 1/1/1951 | 1/1/1950 | 1/1/1951 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Unknown | Unknown | 1/1/1951 | 1/1/1952 | 1/1/1951 | 1/1/1952 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Unknown | Unknown | 1/1/1952 | 1/1/1953 | 1/1/1952 | 1/1/1953 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Unknown | Unknown | 1/1/1953 | 1/1/1954 | 1/1/1953 | 1/1/1954 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Unknown | Unknown | 1/1/1954 | 1/1/1955 | 1/1/1954 | 1/1/1955 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Unknown | Unknown | 1/1/1955 | 1/1/1956 | 1/1/1955 | 1/1/1956 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Unknown | Unknown | 1/1/1957 | 1/1/1958 | 1/1/1957 | 1/1/1958 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Unknown | Unknown | 1/1/1958 | 1/1/1959 | 1/1/1958 | 1/1/1959 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Unknown | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Unknown | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Unknown | Unknown | 1/1/1961 | 7/27/1961 | 1/1/1961 | 7/27/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Hartford Fire Insurance Company | Unknown | 7/27/1961 | 7/27/1962 | 7/27/1961 | 7/27/1962 | $ - | $ 25,000.00 | $ 25,000.00 | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Hartford Fire Insurance Company | Unknown | 7/27/1962 | 7/27/1963 | 7/27/1962 | 7/27/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Hartford Fire Insurance Company | Unknown | 7/27/1963 | 7/27/1964 | 7/27/1963 | 7/27/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Hartford Fire Insurance Company | Unknown | 7/27/1964 | 1/1/1965 | 7/27/1964 | 1/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Insurance Company of North America | Unknown | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Insurance Company of North America | Unknown | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Insurance Company of North America | Unknown | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Insurance Company of North America | Unknown | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Insurance Company of North America | Unknown | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Insurance Company of North America | Unknown | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Insurance Company of North America | Unknown | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Insurance Company of North America | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Insurance Company of North America | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | Insurance Company of North America | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 78 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Longhorn (662): Longhorn -2001 (582) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Longhorn (662): Longhorn -2001 (582) | Unknown | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhorn (662): Longhorn -2001 (582) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220209 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Longhorn (662): Longhorn -2001 (582) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Longhouse (373): Cayuga County 1924-2009 (366) | Fidelity and Casualty Co. of NY | XP 157455 | 6/1/1954 | 6/1/1955 | 6/1/1954 | 6/1/1955 | $ - | $ 5,000.00 | $ 5,000.00 | Unknown | Unknown | SE |
| Longhouse (373): Cayuga County 1924-2009 (366) | Fidelity and Casualty Co. of NY | Unknown | 6/1/1955 | 6/1/1956 | 6/1/1955 | 6/1/1956 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhouse (373): Cayuga County 1924-2009 (366) | Fidelity and Casualty Co. of NY | Unknown | 6/1/1956 | 6/1/1957 | 6/1/1956 | 6/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhouse (373): Cayuga County 1924-2009 (366) | Fidelity and Casualty Co. of NY | Unknown | 6/1/1957 | 1/1/1958 | 6/1/1957 | 1/1/1958 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhouse (373): Cayuga County 1924-2009 (366) | Fidelity and Casualty Co. of NY | XP 274 545 | 1/1/1958 | 1/1/1959 | 1/1/1958 | 1/1/1959 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhouse (373): Cayuga County 1924-2009 (366) | Manhattan Fire & Marine Insurance Company (The) | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhouse (373): Cayuga County 1924-2009 (366) | Manhattan Fire & Marine Insurance Company (The) | A337-256-A208 212 | 1/1/1960 | 6/1/1960 | 1/1/1960 | 6/1/1960 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhouse (373): Cayuga County 1924-2009 (366) | Travelers Insurance Company | SL-8640074 | 6/1/1960 | 6/1/1961 | 6/1/1960 | 6/1/1961 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Longhouse (373): Cayuga County 1924-2009 (366) | Travelers Indemnity Company | Unknown | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhouse (373): Cayuga County 1924-2009 (366) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 48 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Longhouse (373): Cayuga County 1924-2009 (366) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Longhouse (373): Cayuga County 1924-2009 (366) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220200 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Longhouse (373): Cayuga County 1924-2009 (366) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Longhouse (373): Cayuga County 1924-2009 (366) | United States Fidelity and Guaranty Company | 1-3900-377194 | 6/1/1977 | 6/1/1978 | 6/1/1977 | 6/1/1978 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Longhouse (373): Cayuga County 1924-2009 (366) | Security Mutual Insurance Company | CP-9360 | 3/5/1991 | 3/5/1992 | 3/5/1991 | 3/5/1992 | $ - | Unknown | Unknown | Unknown | Unknown | PE |
| Longhouse (373): Cayuga County 1924-2009 (366) | Security Mutual Insurance Company | CP-9360 | 3/5/1992 | 3/5/1993 | 3/5/1992 | 3/5/1993 | $ - | Unknown | Unknown | Unknown | Unknown | PE |
| Longhouse (373): Cayuga County 1924-2009 (366) | Security Mutual Insurance Company | CP-9360 | 3/5/1993 | 3/5/1994 | 3/5/1993 | 3/5/1994 | $ - | Unknown | Unknown | Unknown | Unknown | PE |
| Longhouse (373): Cayuga County 1924-2009 (366) | Security Mutual Insurance Company | CP12613 | 3/5/1994 | 3/5/1995 | 3/5/1994 | 3/5/1995 | $ - | Unknown² | Unknown² | Unknown | Unknown | PE |
| Longhouse (373): Cayuga County 1924-2009 (366) | Security Mutual Insurance Company | CP12613 | 3/5/1995 | 3/5/1996 | 3/5/1995 | 3/5/1996 | $ - | Unknown² | Unknown² | Unknown | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Longhouse (373): Cayuga County 1924-2009 (366) | Security Mutual Insurance Company | CP12613 | 3/5/1996 | 3/5/1997 | 3/5/1996 | 3/5/1997 | $ - | Unknown² | Unknown² | Unknown | Unknown | PE |
| Longhouse (373): Cayuga County 1924-2009 (366) | Security Mutual Insurance Company | CP 0050259 | 3/5/1997 | 4/5/1997 | 3/5/1997 | 4/5/1997 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Longhouse (373): Cayuga County 1924-2009 (366) | Erie and Niagara Insurance Association | 56 04 0399 | 4/5/1997 | 4/5/1998 | 4/5/1997 | 4/5/1998 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhouse (373): Hiawatha -1999 (373) | New Hampshire Insurance Company | Unknown | 1/3/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhouse (373): Hiawatha -1999 (373) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 76 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Longhouse (373): Hiawatha -1999 (373) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Longhouse (373): Hiawatha -1999 (373) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhouse (373): Hiawatha -1999 (373) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220029 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Longhouse (373): Hiawatha -1999 (373) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Longhouse (373): Jefferson Lewis 1932-1982 (408) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longhouse (373): Jefferson Lewis 1932-1982 (408) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 78 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Longhouse (373): Jefferson Lewis 1932-1982 (408) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Longhouse (373): Jefferson Lewis 1932-1982 (408) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | $ 50,000.00 | $ 50,000.00 | Unknown | Unknown | SE |
| Longhouse (373): Jefferson Lewis 1932-1982 (408) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220032 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Longhouse (373): Jefferson Lewis 1932-1982 (408) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Longhouse (373): Saint Lawrence 1938-1982 (403) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 54 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Longhouse (373): Saint Lawrence 1938-1982 (403) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Longhouse (373): Saint Lawrence 1938-1982 (403) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220006 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Longhouse (373): Saint Lawrence 1938-1982 (403) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Longhouse (373): Seaway Valley 1982-1995 (403) | Aetna Casualty and Surety Company | 45 8Y 100497785 8CA | 1/1/1991 | 1/1/1992 | 1/1/1991 | 1/1/1992 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Longs Peak (62): Longs Peak 1975- (62) | Travelers Insurance Company | 042 LB f181864 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longs Peak (62): Longs Peak 1975- (62) | Travelers Indemnity Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ 300,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Longs Peak (62): Longs Peak 1975- (62) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 65 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Longs Peak (62): Longs Peak 1975- (62) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Longs Peak (62): Longs Peak 1975- (62) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219913 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Longs Peak (62): Longs Peak 1975- (62) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Longs Peak (62): Longs Peak 1975- (62) | Travelers Indemnity Company | Unknown | 1/1/1981 | 1/1/1982 | 1/1/1981 | 1/1/1982 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Longs Peak (62): Wyo-Braska 1936-1975 (325) | Insurance Company of North America | SBL-4-79-46 | 11/12/1968 | 11/12/1969 | 11/12/1968 | 11/12/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Longs Peak (62): Wyo-Braska 1936-1975 (325) | Insurance Company of North America | SBL 52108 | 11/12/1969 | 11/12/1970 | 11/12/1969 | 11/12/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Longs Peak (62): Wyo-Braska 1936-1975 (325) | Insurance Company of North America | SBL 52126 | 11/12/1970 | 11/12/1971 | 11/12/1970 | 11/12/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Los Padres (53): Mission 1929-1994 (53) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Mission 1929-1994 (53) | Unknown | Unknown | 1/1/1957 | 1/1/1958 | 1/1/1957 | 1/1/1958 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Mission 1929-1994 (53) | Unknown | Unknown | 1/1/1958 | 1/1/1959 | 1/1/1958 | 1/1/1959 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Mission 1929-1994 (53) | Unknown | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Mission 1929-1994 (53) | Unknown | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Mission 1929-1994 (53) | Unknown | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Mission 1929-1994 (53) | Unknown | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Mission 1929-1994 (53) | Unknown | Unknown | 1/1/1963 | 1/1/1964 | 1/1/1963 | 1/1/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Mission 1929-1994 (53) | Unknown | Unknown | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Mission 1929-1994 (53) | Unknown | Unknown | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Mission 1929-1994 (53) | Unknown | Unknown | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Mission 1929-1994 (53) | Unknown | Unknown | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Mission 1929-1994 (53) | Unknown | Unknown | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Mission 1929-1994 (53) | Unknown | Unknown | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Mission 1929-1994 (53) | Unknown | Unknown | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Mission 1929-1994 (53) | Unknown | Unknown | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Mission 1929-1994 (53) | Unknown | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Mission 1929-1994 (53) | Unknown | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Mission 1929-1994 (53) | Unknown | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Mission 1929-1994 (53) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 9/9/1976 | 1/1/1976 | 9/9/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Mission 1929-1994 (53) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 55 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Los Padres (53): Mission 1929-1994 (53) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Los Padres (53): Mission 1929-1994 (53) | Jefferson Insurance Company of New York | GLA 209761 | 9/9/1976 | 8/1/1977 | 9/9/1976 | 8/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Mission 1929-1994 (53) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219903 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Los Padres (53): Mission 1929-1994 (53) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Los Padres (53): Mission 1929-1994 (53) | New Hampshire Insurance Company | Unknown | 8/1/1977 | 1/1/1978 | 8/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Santa Lucia Area 1939-1994 (56) | Insurance Company of North America | SBL 46901 | 1/14/1965 | 1/14/1966 | 1/14/1965 | 1/14/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Santa Lucia Area 1939-1994 (56) | Insurance Company of North America | SBL 46901 | 1/14/1966 | 1/14/1967 | 1/14/1966 | 1/14/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Santa Lucia Area 1939-1994 (56) | Insurance Company of North America | SBL 46901 | 1/14/1967 | 1/14/1968 | 1/14/1967 | 1/14/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Santa Lucia Area 1939-1994 (56) | Insurance Company of North America | SBL 46901 | 1/14/1968 | 1/14/1969 | 1/14/1968 | 1/14/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Los Padres (53): Santa Lucia Area 1939-1994 (56) | Insurance Company of North America | SBL 46901 | 1/14/1969 | 1/14/1970 | 1/14/1969 | 1/14/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Los Padres (53): Santa Lucia Area 1939-1994 (56) | Insurance Company of North America | SBL 46901 | 1/14/1970 | 1/14/1971 | 1/14/1970 | 1/14/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Los Padres (53): Santa Lucia Area 1939-1994 (56) | Insurance Company of North America | SBL 5 13 94 | 1/14/1971 | 1/14/1972 | 1/14/1971 | 1/14/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Los Padres (53): Santa Lucia Area 1939-1994 (56) | Insurance Company of North America | SBL 5 13 94 | 1/14/1972 | 1/14/1973 | 1/14/1972 | 1/14/1973 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Los Padres (53): Santa Lucia Area 1939-1994 (56) | Unknown | Unknown | 1/14/1973 | 1/14/1974 | 1/14/1973 | 1/14/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Santa Lucia Area 1939-1994 (56) | Unknown | Unknown | 1/14/1974 | 1/1/1975 | 1/14/1974 | 1/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Santa Lucia Area 1939-1994 (56) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Santa Lucia Area 1939-1994 (56) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 51 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Los Padres (53): Santa Lucia Area 1939-1994 (56) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Los Padres (53): Santa Lucia Area 1939-1994 (56) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Los Padres (53): Santa Lucia Area 1939-1994 (56) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219899 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Los Padres (53): Santa Lucia Area 1939-1994 (56) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Los Padres (53): Santa Lucia Area 1939-1994 (56) | United States Fidelity and Guaranty Company | 1CCA16993 | 1/15/1977 | 1/15/1978 | 1/15/1977 | 1/15/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Louisiana Purchase (213): Attakapas 1938-2003 (208) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Louisiana Purchase (213): Attakapas 1938-2003 (208) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 56 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Louisiana Purchase (213): Attakapas 1938-2003 (208) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Louisiana Purchase (213): Attakapas 1938-2003 (208) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Louisiana Purchase (213): Attakapas 1938-2003 (208) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220104 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Louisiana Purchase (213): Attakapas 1938-2003 (208) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Louisiana Purchase (213): Ouachita Valley 1925-2003 (213) | Insurance Company of North America | SBL 3 12 49 | 4/27/1966 | 4/27/1967 | 4/27/1966 | 4/27/1967 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Louisiana Purchase (213): Ouachita Valley 1925-2003 (213) | Insurance Company of North America | SBL 3 12 49 | 4/27/1967 | 4/27/1968 | 4/27/1967 | 4/27/1968 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Louisiana Purchase (213): Ouachita Valley 1925-2003 (213) | Insurance Company of North America | SBL 3 12 49 | 4/27/1968 | 4/27/1969 | 4/27/1968 | 4/27/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Louisiana Purchase (213): Ouachita Valley 1925-2003 (213) | Insurance Company of North America | SBL 3 12 49 | 4/27/1969 | 4/27/1970 | 4/27/1969 | 4/27/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Louisiana Purchase (213): Ouachita Valley 1925-2003 (213) | Insurance Company of North America | SBL 3 12 49 | 4/27/1970 | 4/27/1971 | 4/27/1970 | 4/27/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Louisiana Purchase (213): Ouachita Valley 1925-2003 (213) | Insurance Company of North America | SBL 3 12 49 | 4/27/1971 | 4/27/1972 | 4/27/1971 | 4/27/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Louisiana Purchase (213): Ouachita Valley 1925-2003 (213) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 61 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Louisiana Purchase (213): Ouachita Valley 1925-2003 (213) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE)* |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Louisiana Purchase (213): Ouachita Valley 1925-2003 (213) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220109 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Louisiana Purchase (213): Ouachita Valley 1925-2003 (213) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Marin (35): Marin (35) | Insurance Company of North America | SBL 51181 | 4/10/1969 | 4/10/1970 | 4/10/1969 | 4/10/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Marin (35): Marin (35) | Insurance Company of North America | SBL 51181 | 4/10/1970 | 4/10/1971 | 4/10/1970 | 4/10/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Marin (35): Marin (35) | Insurance Company of North America | SBL 51181 | 4/10/1971 | 4/10/1972 | 4/10/1971 | 4/10/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Marin (35): Marin (35) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Marin (35): Marin (35) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 53 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Marin (35): Marin (35) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Marin (35): Marin (35) | New Hampshire Insurance Company | GLA 282411 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Marin (35): Marin (35) | Ambassador Insurance Company | 25924 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 50,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Marin (35): Marin (35) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219901 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Marin (35): Marin (35) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Marin (35): Marin (35) | Scottsdale Insurance Company | CPS3255537 | 1/1/1995 | 1/1/1996 | 1/1/1995 | 1/1/1996 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mason-Dixon (221): Mason-Dixon 1956- (221) | Maryland Casualty Company | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mason-Dixon (221): Mason-Dixon 1956- (221) | Maryland Casualty Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mason-Dixon (221): Mason-Dixon 1956- (221) | Maryland Casualty Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mason-Dixon (221): Mason-Dixon 1956- (221) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 67 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mason-Dixon (221): Mason-Dixon 1956- (221) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mason-Dixon (221): Mason-Dixon 1956- (221) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220115 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mason-Dixon (221): Mason-Dixon 1956- (221) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Mason-Dixon (221): Mason-Dixon 1956- (221) | Maryland Casualty Company | Unknown | 7/24/1977 | 7/24/1978 | 7/24/1977 | 7/24/1978 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Mason-Dixon (221): Mason-Dixon 1956- (221) | Maryland Casualty Company | Unknown | 7/24/1978 | 7/24/1979 | 7/24/1978 | 7/24/1979 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Mason-Dixon (221): Mason-Dixon 1956- (221) | Maryland Casualty Company | Unknown | 7/24/1979 | 7/24/1980 | 7/24/1979 | 7/24/1980 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Mayflower (251): Algonquin 1925-1996 (241) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 72 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mayflower (251): Algonquin 1925-1996 (241) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mayflower (251): Algonquin 1925-1996 (241) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220122 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mayflower (251): Algonquin 1925-1996 (241) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Mayflower (251): Knox Trail 1996-2017 (244) | Pacific Insurance Company | ZG 0021837 | 6/20/2003 | 6/20/2004 | 6/20/2003 | 6/20/2004 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mayflower (251): Knox Trail 1996-2017 (244) | Pacific Insurance Company | ZG 0021837 | 6/20/2004 | 6/20/2005 | 6/20/2004 | 6/20/2005 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mayflower (251): Knox Trail 1996-2017 (244) | Hartford Accident and Indemnity Company | 34UUVI55513 | 6/20/2007 | 6/20/2008 | 6/20/2007 | 6/20/2008 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mayflower (251): Knox Trail 1996-2017 (244) | Hartford Accident and Indemnity Company | 34UUVI55513 | 6/20/2008 | 6/20/2009 | 6/20/2008 | 6/20/2009 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mayflower (251): Knox Trail 1996-2017 (244) | Hartford Accident and Indemnity Company | 34UUVI55513 | 6/20/2009 | 6/20/2010 | 6/20/2009 | 6/20/2010 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mayflower (251): Knox Trail 1996-2017 (244) | Hartford Accident and Indemnity Company | 34UUVI55513 | 6/20/2010 | 6/20/2011 | 6/20/2010 | 6/20/2011 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mayflower (251): Knox Trail 1996-2017 (244) | National Casualty Company | BINDER547998 | 6/20/2011 | 6/20/2012 | 6/20/2011 | 6/20/2012 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mayflower (251): Norumbega 1918-1996 (246) | Employers' Fire Insurance Company | EB-62085-97 | 3/26/1970 | 3/26/1971 | 3/26/1970 | 3/26/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mayflower (251): Norumbega 1918-1996 (246) | Employers' Fire Insurance Company | EB-62085-97 | 3/26/1971 | 3/26/1972 | 3/26/1971 | 3/26/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mayflower (251): Norumbega 1918-1996 (246) | Employers' Fire Insurance Company | EB-62085-97 | 3/26/1972 | 3/26/1973 | 3/26/1972 | 3/26/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mayflower (251): Norumbega 1918-1996 (246) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 83 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mayflower (251): Norumbega 1918-1996 (246) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mayflower (251): Norumbega 1918-1996 (246) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220134 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mayflower (251): Norumbega 1918-1996 (246) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Mayflower (251): Old Colony 1969-2017 (249) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 69 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mayflower (251): Old Colony 1969-2017 (249) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mayflower (251): Old Colony 1969-2017 (249) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220117 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mayflower (251): Old Colony 1969-2017 (249) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Mayflower (251): Squanto 1936-1969 (228) | New Hampshire Insurance Company | SL B5A 456135 | 7/1/1965 | 7/1/1966 | 7/1/1965 | 7/1/1966 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Mayflower (251): Squanto 1936-1969 (228) | Insurance Company of North America | SBL 51194 | 7/1/1969 | 10/30/1969 | 7/1/1969 | 10/30/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Mecklenburg County (415): Mecklenburg County (415) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 84 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mecklenburg County (415): Mecklenburg County (415) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mecklenburg County (415): Mecklenburg County (415) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220037 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mecklenburg County (415): Mecklenburg County (415) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Mecklenburg County (415): Mecklenburg County (415) | Amerisure Insurance Company | SA MGCPP-0243786-0000 | 1/1/1989 | 1/1/1990 | 1/1/1989 | 1/1/1990 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Miami Valley (444): Miami Valley (444) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 00 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Miami Valley (444): Miami Valley (444) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Miami Valley (444): Miami Valley (444) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220053 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Miami Valley (444): Miami Valley (444) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Blue Water 1939-2012 (277) | Allstate Insurance Company | Unknown | 6/1/1960 | 6/1/1961 | 6/1/1960 | 6/1/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Blue Water 1939-2012 (277) | Allstate Insurance Company | Unknown | 6/1/1961 | 6/1/1962 | 6/1/1961 | 6/1/1962 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Blue Water 1939-2012 (277) | Allstate Insurance Company | Unknown | 6/1/1962 | 6/1/1963 | 6/1/1962 | 6/1/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Blue Water 1939-2012 (277) | Allstate Insurance Company | Unknown | 6/1/1963 | 6/1/1964 | 6/1/1963 | 6/1/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Blue Water 1939-2012 (277) | Allstate Insurance Company | Unknown | 6/1/1964 | 3/29/1965 | 6/1/1964 | 3/29/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Blue Water 1939-2012 (277) | Insurance Company of North America | SBL 4 29 80 | 3/29/1965 | 3/29/1966 | 3/29/1965 | 3/29/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Blue Water 1939-2012 (277) | Insurance Company of North America | SBL 4 29 80 | 3/29/1966 | 3/29/1967 | 3/29/1966 | 3/29/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Blue Water 1939-2012 (277) | Insurance Company of North America | SBL 4 29 80 | 3/29/1967 | 3/29/1968 | 3/29/1967 | 3/29/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Blue Water 1939-2012 (277) | Insurance Company of North America | SBL 46919 | 3/29/1968 | 3/29/1969 | 3/29/1968 | 3/29/1969 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Blue Water 1939-2012 (277) | Insurance Company of North America | SBL 46919 | 3/29/1969 | 3/29/1970 | 3/29/1969 | 3/29/1970 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Blue Water 1939-2012 (277) | Insurance Company of North America | SBL 46919 | 3/29/1970 | 3/29/1971 | 3/29/1970 | 3/29/1971 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Blue Water 1939-2012 (277) | Insurance Company of North America | SBL 53414 | 3/29/1971 | 3/29/1972 | 3/29/1971 | 3/29/1972 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Blue Water 1939-2012 (277) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 96 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Blue Water 1939-2012 (277) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Blue Water 1939-2012 (277) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220146 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Blue Water 1939-2012 (277) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Chief Okemos 1932-2012 (271) | Insurance Company of North America | SBL 52003 | 5/1/1969 | 5/1/1970 | 5/1/1969 | 5/1/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Michigan Crossroads (780): Chief Okemos 1932-2012 (271) | Insurance Company of North America | SBL 52042 | 5/1/1970 | 5/1/1971 | 5/1/1970 | 5/1/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Michigan Crossroads (780): Chief Okemos 1932-2012 (271) | Insurance Company of North America | XPL 17689 | 5/1/1970 | 5/1/1971 | 5/1/1970 | 5/1/1971 | $ 500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Chief Okemos 1932-2012 (271) | Insurance Company of North America | SBL 52066 | 5/1/1971 | 5/1/1972 | 5/1/1971 | 5/1/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Michigan Crossroads (780): Chief Okemos 1932-2012 (271) | Insurance Company of North America | XPL 17748 | 5/1/1971 | 5/1/1972 | 5/1/1971 | 5/1/1972 | $ 500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Michigan Crossroads (780): Chief Okemos 1932-2012 (271) | Insurance Company of North America | Unknown | 5/1/1972 | 5/1/1973 | 5/1/1972 | 5/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Chief Okemos 1932-2012 (271) | Insurance Company of North America | XPL 17748 | 5/1/1972 | 5/1/1973 | 5/1/1972 | 5/1/1973 | $ 500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Michigan Crossroads (780): Chief Okemos 1932-2012 (271) | Insurance Company of North America | Unknown | 5/1/1973 | 5/1/1974 | 5/1/1973 | 5/1/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Chief Okemos 1932-2012 (271) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 93 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Chief Okemos 1932-2012 (271) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Chief Okemos 1932-2012 (271) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220143 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Chief Okemos 1932-2012 (271) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Clinton Valley 1937-2009 (276) | Insurance Company of North America | LB-3-79-18 | 6/1/1962 | 6/1/1963 | 6/1/1962 | 6/1/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Clinton Valley 1937-2009 (276) | Insurance Company of North America | LB-3-79-18 | 6/1/1963 | 6/1/1964 | 6/1/1963 | 6/1/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Michigan Crossroads (780): Clinton Valley 1937-2009 (276) | Insurance Company of North America | L8-3-79-18 | 6/1/1964 | 6/1/1965 | 6/1/1964 | 6/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Clinton Valley 1937-2009 (276) | Insurance Company of North America | SBL 4 24 72 | 6/1/1965 | 6/1/1966 | 6/1/1965 | 6/1/1966 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Clinton Valley 1937-2009 (276) | Insurance Company of North America | SBL 4 24 72 | 6/1/1966 | 6/1/1967 | 6/1/1966 | 6/1/1967 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Clinton Valley 1937-2009 (276) | Insurance Company of North America | SBL 4 24 72 | 6/1/1967 | 6/1/1968 | 6/1/1967 | 6/1/1968 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Clinton Valley 1937-2009 (276) | Insurance Company of North America | SBL 47729 | 6/1/1968 | 6/1/1969 | 6/1/1968 | 6/1/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Clinton Valley 1937-2009 (276) | Insurance Company of North America | SBL 47729 | 6/1/1969 | 6/1/1970 | 6/1/1969 | 6/1/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Clinton Valley 1937-2009 (276) | Insurance Company of North America | SBL 47729 | 6/1/1970 | 6/1/1971 | 6/1/1970 | 6/1/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Clinton Valley 1937-2009 (276) | Insurance Company of North America | SBL 52072 | 6/1/1971 | 6/1/1972 | 6/1/1971 | 6/1/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Clinton Valley 1937-2009 (276) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 95 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Clinton Valley 1937-2009 (276) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Clinton Valley 1937-2009 (276) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220145 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Clinton Valley 1937-2009 (276) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Detroit Area -2009 (262) | Insurance Company of North America | SBL 45740 | 2/13/1966 | 2/13/1967 | 2/13/1966 | 2/13/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Detroit Area -2009 (262) | Insurance Company of North America | SBL-4-76-71 | 2/13/1967 | 2/13/1968 | 2/13/1967 | 2/13/1968 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Detroit Area -2009 (262) | Insurance Company of North America | SBL 4 77 22 | 2/13/1968 | 2/13/1969 | 2/13/1968 | 2/13/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Detroit Area -2009 (262) | Insurance Company of North America | SBL 4 77 56 | 2/13/1969 | 2/13/1970 | 2/13/1969 | 2/13/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Detroit Area -2009 (262) | Insurance Company of North America | SBL 4 77 56 | 2/13/1970 | 2/13/1971 | 2/13/1970 | 2/13/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Detroit Area -2009 (262) | Insurance Company of North America | SBL 52065 | 2/13/1971 | 2/13/1972 | 2/13/1971 | 2/13/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Detroit Area -2009 (262) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Detroit Area -2009 (262) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 88 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Detroit Area -2009 (262) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Detroit Area -2009 (262) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Detroit Area -2009 (262) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220139 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Detroit Area -2009 (262) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Grand Valley 1936-1975 (266) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Grand Valley 1936-1975 (266) | Unknown | Unknown | 1/1/1957 | 1/1/1958 | 1/1/1957 | 1/1/1958 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Grand Valley 1936-1975 (266) | Unknown | Unknown | 1/1/1958 | 1/1/1959 | 1/1/1958 | 1/1/1959 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Grand Valley 1936-1975 (266) | Unknown | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Grand Valley 1936-1975 (266) | Unknown | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Grand Valley 1936-1975 (266) | Insurance Company of North America | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Grand Valley 1936-1975 (266) | Insurance Company of North America | Unknown | 1/1/1962 | 5/20/1962 | 1/1/1962 | 5/20/1962 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Grand Valley 1936-1975 (266) | Insurance Company of North America | SBL-4-95-05 | 5/20/1962 | 5/20/1963 | 5/20/1962 | 5/20/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Grand Valley 1936-1975 (266) | Insurance Company of North America | SBL-4-95-05 | 5/20/1963 | 5/19/1964 | 5/20/1963 | 5/19/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Grand Valley 1936-1975 (266) | Insurance Company of North America | SBL-4-95-05 | 5/20/1964 | 5/20/1965 | 5/20/1964 | 5/20/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Grand Valley 1936-1975 (266) | Insurance Company of North America | SBL-4-24-73 | 5/20/1965 | 5/20/1966 | 5/20/1965 | 5/20/1966 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Grand Valley 1936-1975 (266) | Insurance Company of North America | SBL-4-24-73 | 5/20/1966 | 5/20/1967 | 5/20/1966 | 5/20/1967 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Grand Valley 1936-1975 (266) | Insurance Company of North America | SBL-4-24-73 | 5/20/1967 | 5/20/1968 | 5/20/1967 | 5/20/1968 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Grand Valley 1936-1975 (266) | Insurance Company of North America | Unknown | 5/20/1968 | 5/20/1969 | 5/20/1968 | 5/20/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Grand Valley 1936-1975 (266) | Insurance Company of North America | SBL-4-77-27 | 5/20/1969 | 5/20/1970 | 5/20/1969 | 5/20/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Grand Valley 1936-1975 (266) | Insurance Company of North America | SBL-5-20-37 | 5/20/1970 | 5/20/1971 | 5/20/1970 | 5/20/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Grand Valley 1936-1975 (266) | Insurance Company of North America | SBL-5-20-37 | 5/20/1971 | 5/20/1972 | 5/20/1971 | 5/20/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Grand Valley 1936-1975 (266) | Insurance Company of North America | GLP 43 22 35 | 1/1/1975 | 6/2/1975 | 1/1/1975 | 6/2/1975 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Grand Valley 1936-1975 (266) | Insurance Company of North America | XBC 123702 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 6/2/1975 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Lake Huron Area 1971-2012 (265) | Insurance Company of North America | BE121 70 87 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Lake Huron Area 1971-2012 (265) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Lake Huron Area 1971-2012 (265) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220138 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Lake Huron Area 1971-2012 (265) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Land O Lakes 1937-1993 (269) | Insurance Company of North America | SBL 4 29 76 | 4/24/1965 | 4/24/1966 | 4/24/1965 | 4/24/1966 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Land O Lakes 1937-1993 (269) | Insurance Company of North America | SBL 4 29 76 | 4/24/1966 | 4/24/1967 | 4/24/1966 | 4/24/1967 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Land O Lakes 1937-1993 (269) | Insurance Company of North America | SBL 4 29 76 | 4/24/1967 | 4/24/1968 | 4/24/1967 | 4/24/1968 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Land O Lakes 1937-1993 (269) | Insurance Company of North America | SBL 4 69 30 | 4/24/1968 | 4/24/1969 | 4/24/1968 | 4/24/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Land O Lakes 1937-1993 (269) | Insurance Company of North America | SBL 4 69 30 | 4/24/1969 | 4/24/1970 | 4/24/1969 | 4/24/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Land O Lakes 1937-1993 (269) | Insurance Company of North America | SBL 4 69 30 | 4/24/1970 | 4/24/1971 | 4/24/1970 | 4/24/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Land O Lakes 1937-1993 (269) | Insurance Company of North America | SBL 5 15 06 | 4/24/1971 | 4/23/1972 | 4/24/1971 | 4/23/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Land O Lakes 1937-1993 (269) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Land O Lakes 1937-1993 (269) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 91 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Land O Lakes 1937-1993 (269) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Land O Lakes 1937-1993 (269) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Land O Lakes 1937-1993 (269) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220142 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Land O Lakes 1937-1993 (269) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Scenic Trails 1939-2012 (274) | Insurance Company of North America | SBL-4-24-74 | 6/4/1964 | 6/4/1965 | 6/4/1964 | 6/4/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Scenic Trails 1939-2012 (274) | Insurance Company of North America | SBL-4-24-74 | 6/4/1965 | 6/4/1966 | 6/4/1965 | 6/4/1966 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Scenic Trails 1939-2012 (274) | Insurance Company of North America | SBL-4-24-74 | 6/4/1966 | 6/4/1967 | 6/4/1966 | 6/4/1967 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Scenic Trails 1939-2012 (274) | Insurance Company of North America | SBL-4-24-74 | 6/4/1967 | 6/4/1968 | 6/4/1967 | 6/4/1968 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Scenic Trails 1939-2012 (274) | Insurance Company of North America | SBL-4-24-74 | 6/4/1968 | 6/4/1969 | 6/4/1968 | 6/4/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Scenic Trails 1939-2012 (274) | Insurance Company of North America | SBL-5-20-06 | 6/4/1969 | 6/4/1970 | 6/4/1969 | 6/4/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Scenic Trails 1939-2012 (274) | Insurance Company of North America | SBL 52038 | 6/4/1970 | 6/4/1971 | 6/4/1970 | 6/4/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Scenic Trails 1939-2012 (274) | Insurance Company of North America | SBL 52038 | 6/4/1971 | 6/4/1972 | 6/4/1971 | 6/4/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Scenic Trails 1939-2012 (274) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Scenic Trails 1939-2012 (274) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 97 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Scenic Trails 1939-2012 (274) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Scenic Trails 1939-2012 (274) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220147 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Scenic Trails 1939-2012 (274) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Southwest Michigan 1973-2012 (270) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 92 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Southwest Michigan 1973-2012 (270) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Southwest Michigan 1973-2012 (270) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220147 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Southwest Michigan 1973-2012 (270) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Southwestern Michigan 1941-1973 (258) | Insurance Company of North America | OBP 68693 | 10/29/1970 | 10/29/1971 | 10/29/1969 | 10/29/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Southwestern Michigan 1941-1973 (258) | Insurance Company of North America | OBP 68693 | 10/29/1970 | 10/29/1971 | 10/29/1970 | 10/29/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Southwestern Michigan 1941-1973 (258) | Insurance Company of North America | OBP 68693 | 10/29/1971 | 10/29/1972 | 10/29/1971 | 10/29/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Southwestern Michigan 1941-1973 (258) | Insurance Company of North America | OBP 12 49 64 | 10/29/1972 | 1/1/1973 | 10/29/1972 | 1/1/1973 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Tall Pine 1937-2012 (264) | Insurance Company of North America | SBL-4-24-59 | 6/12/1967 | 6/12/1968 | 6/12/1967 | 6/12/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Tall Pine 1937-2012 (264) | Insurance Company of North America | SBL-4-77-57 | 6/12/1968 | 6/12/1969 | 6/12/1968 | 6/12/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Tall Pine 1937-2012 (264) | Insurance Company of North America | SBL 52007 | 6/12/1969 | 6/12/1970 | 6/12/1969 | 6/12/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Tall Pine 1937-2012 (264) | Insurance Company of North America | SBL 52046 | 6/12/1970 | 6/12/1971 | 6/12/1970 | 6/12/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Tall Pine 1937-2012 (264) | Insurance Company of North America | Unknown | 6/12/1971 | 1/1/1972 | 6/12/1971 | 1/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |

Data Privacy - This document contains private information.
Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Michigan Crossroads (780): Tall Pine 1937-2012 (264) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 89 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Tall Pine 1937-2012 (264) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Tall Pine 1937-2012 (264) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220140 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Tall Pine 1937-2012 (264) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Timber Trails 1944-1975 (275) | Insurance Company of North America | SBL 4 57 66 | 7/27/1966 | 7/27/1967 | 7/27/1966 | 7/27/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Timber Trails 1944-1975 (275) | Insurance Company of North America | SBL-4-76-81 | 7/27/1967 | 7/27/1968 | 7/27/1967 | 7/27/1968 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Timber Trails 1944-1975 (275) | Insurance Company of North America | SBL-4-76-81 | 7/27/1968 | 7/27/1969 | 7/27/1968 | 7/27/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Timber Trails 1944-1975 (275) | Insurance Company of North America | SBL 52012 | 7/27/1969 | 7/27/1970 | 7/27/1969 | 7/27/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Timber Trails 1944-1975 (275) | Insurance Company of North America | Unknown | 7/27/1970 | 7/27/1971 | 7/27/1970 | 7/27/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Timber Trails 1944-1975 (275) | Insurance Company of North America | Unknown | 7/27/1971 | 1/1/1972 | 7/27/1971 | 1/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): West Michigan Shores 1975-1995 (266) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 90 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): West Michigan Shores 1975-1995 (266) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): West Michigan Shores 1975-1995 (266) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220141 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): West Michigan Shores 1975-1995 (266) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Wolverine 1925-1973 (711) | Insurance Company of North America | SBL 4 29 54 | 3/1/1965 | 3/1/1966 | 3/1/1965 | 3/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Wolverine 1925-1973 (711) | Insurance Company of North America | SBL 4 29 54 | 3/1/1966 | 3/1/1967 | 3/1/1966 | 3/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Wolverine 1925-1973 (711) | Insurance Company of North America | SBL 4 29 54 | 3/1/1967 | 3/1/1968 | 3/1/1967 | 3/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Wolverine 1925-1973 (711) | Insurance Company of North America | Unknown | 3/1/1968 | 3/1/1969 | 3/1/1968 | 3/1/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Wolverine 1925-1973 (711) | Insurance Company of North America | Unknown | 3/1/1969 | 3/1/1970 | 3/1/1969 | 3/1/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Michigan Crossroads (780): Wolverine 1925-1973 (711) | Insurance Company of North America | SBL 51315 | 3/1/1970 | 3/1/1971 | 3/1/1970 | 3/1/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Wolverine 1925-1973 (711) | Insurance Company of North America | SBL 51315 | 3/1/1971 | 3/1/1972 | 3/1/1971 | 3/1/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Wolverine 1925-1973 (711) | American Employers' Insurance Company | AWW451163 | 3/3/1980 | 3/3/1981 | 3/3/1980 | 3/3/1981 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Wolverine 1973-1993 (255) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 86 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Wolverine 1973-1993 (255) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Wolverine 1973-1993 (255) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220137 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Michigan Crossroads (780): Wolverine 1973-1993 (255) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Mid-America (326): Mid-America 1965- (326) | Insurance Company of North America | Unknown | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mid-America (326): Mid-America 1965- (326) | Travelers Insurance Company | Unknown | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mid-America (326): Mid-America 1965- (326) | Insurance Company of North America | Unknown | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mid-America (326): Mid-America 1965- (326) | Unknown | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mid-America (326): Mid-America 1965- (326) | Unknown | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mid-America (326): Mid-America 1965- (326) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 21 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mid-America (326): Mid-America 1965- (326) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mid-America (326): Mid-America 1965- (326) | Travelers Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mid-America (326): Mid-America 1965- (326) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220173 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mid-America (326): Mid-America 1965- (326) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Mid-America (326): Prairie Gold Area 1942-2000 (179) | Insurance Company of North America | SBL 52139 | 3/23/1971 | 3/23/1972 | 3/23/1971 | 3/23/1972 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Mid-America (326): Prairie Gold Area 1942-2000 (179) | Unknown | Unknown | 3/23/1972 | 6/30/1972 | 3/23/1972 | 6/30/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mid-America (326): Prairie Gold Area 1942-2000 (179) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mid-America (326): Prairie Gold Area 1942-2000 (179) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 43 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mid-America (326): Prairie Gold Area 1942-2000 (179) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mid-America (326): Prairie Gold Area 1942-2000 (179) | New Hampshire Insurance Company | GAL 34 36 80 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown* | Unknown* | Unknown | Unknown | PE |
| Mid-America (326): Prairie Gold Area 1942-2000 (179) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219959 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mid-America (326): Prairie Gold Area 1942-2000 (179) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Mid-America (326): Sergeant Floyd Area 1939-1972 (185) | Unknown | Unknown | 1/1/1955 | 1/1/1956 | 1/1/1955 | 1/1/1956 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mid-America (326): Sergeant Floyd Area 1939-1972 (185) | Unknown | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mid-America (326): Sergeant Floyd Area 1939-1972 (185) | Unknown | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mid-America (326): Sergeant Floyd Area 1939-1972 (185) | Insurance Company of North America | SBL 4 49 67 | 3/23/1966 | 3/23/1967 | 3/23/1966 | 3/23/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mid-America (326): Sergeant Floyd Area 1939-1972 (185) | Insurance Company of North America | SBL 4 78 67 | 3/23/1967 | 3/22/1968 | 3/23/1967 | 3/22/1968 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Mid-America (326): Sergeant Floyd Area 1939-1972 (185) | Insurance Company of North America | SBL 4 79 20 | 3/23/1968 | 3/23/1969 | 3/23/1968 | 3/23/1969 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Mid-America (326): Sergeant Floyd Area 1939-1972 (185) | Insurance Company of North America | SBL 4 79 54 | 3/23/1969 | 3/23/1970 | 3/23/1969 | 3/23/1970 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Mid-America (326): Sergeant Floyd Area 1939-1972 (185) | Insurance Company of North America | SBL 52137 | 3/23/1970 | 3/23/1971 | 3/23/1970 | 3/23/1971 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Mid-America (326): Sergeant Floyd Area 1939-1972 (185) | Insurance Company of North America | SBL 52139 | 3/23/1971 | 3/23/1972 | 3/23/1971 | 3/23/1972 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Mid-America (326): Sioux City 1918-1926 (185) | St. Paul Mercury Insurance Company | Unknown | 6/10/1954 | 6/10/1955 | 6/10/1954 | 6/10/1955 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Middle Tennessee (560): Middle Tennessee (560) | Insurance Company of North America | SBL 5 04 06 | 4/1/1968 | 4/1/1969 | 4/1/1968 | 4/1/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Middle Tennessee (560): Middle Tennessee (560) | Insurance Company of North America | SBL 5 04 06 | 4/1/1969 | 4/1/1970 | 4/1/1969 | 4/1/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Middle Tennessee (560): Middle Tennessee (560) | Insurance Company of North America | SBL 5 04 06 | 4/1/1970 | 4/1/1971 | 4/1/1970 | 4/1/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Middle Tennessee (560): Middle Tennessee (560) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 69 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Middle Tennessee (560): Middle Tennessee (560) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Middle Tennessee (560): Middle Tennessee (560) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220292 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Middle Tennessee (560): Middle Tennessee (560) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Mid-Iowa (177): Mid-Iowa 1970- (177) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 41 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mid-Iowa (177): Mid-Iowa 1970- (177) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mid-Iowa (177): Mid-Iowa 1970- (177) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219987 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mid-Iowa (177): Mid-Iowa 1970- (177) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Mid-Iowa (177): Southern Iowa Area 1929-1970 (184) | Insurance Company of North America | SBL 4 53 76 | 1/24/1966 | 1/24/1967 | 1/24/1966 | 1/24/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mid-Iowa (177): Southern Iowa Area 1929-1970 (184) | Insurance Company of North America | SBL 4 53 76 | 1/24/1967 | 1/24/1968 | 1/24/1967 | 1/24/1968 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Mid-Iowa (177): Southern Iowa Area 1929-1970 (184) | Insurance Company of North America | SBL 4 53 76 | 1/24/1968 | 1/24/1969 | 1/24/1968 | 1/24/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Mid-Iowa (177): Southern Iowa Area 1929-1970 (184) | Insurance Company of North America | SBL 5 04 33 | 1/24/1969 | 1/24/1970 | 1/24/1969 | 1/24/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Mid-Iowa (177): Southern Iowa Area 1929-1970 (184) | Insurance Company of North America | SBL 5 04 33 | 1/24/1970 | 5/1/1970 | 1/24/1970 | 5/1/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Midnight Sun (696): Midnight Sun (696) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Midnight Sun (696): Midnight Sun (696) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 16 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Midnight Sun (696): Midnight Sun (696) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Midnight Sun (696): Midnight Sun (696) | New Hampshire Insurance Company | GLA 3 31 01 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Midnight Sun (696): Midnight Sun (696) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219865 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Midnight Sun (696): Midnight Sun (696) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Minsi Trails (502): Bethlehem Area 1941-1968 (498) | Unknown | Unknown | 6/26/1967 | 6/25/1968 | 6/26/1967 | 6/25/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Minsi Trails (502): Bethlehem Area 1941-1968 (498) | Unknown | Unknown | 6/25/1968 | 6/26/1969 | 6/25/1968 | 6/26/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Minsi Trails (502): Bethlehem Area 1941-1968 (498) | Unknown | Unknown | 6/26/1969 | 6/26/1970 | 6/26/1969 | 6/26/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Minsi Trails (502): Delaware Valley Area 1930-1969 (510) | Insurance Company of North America | 2075-10/16 | 9/16/1942 | 10/16/1943 | 9/16/1942 | 10/16/1943 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Minsi Trails (502): Delaware Valley Area 1930-1969 (510) | Phoenix of Hartford Insurance Companies | GC 8 98 96 | 5/16/1966 | 5/16/1967 | 5/16/1966 | 5/16/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Minsi Trails (502): Delaware Valley Area 1930-1969 (510) | Phoenix of Hartford Insurance Companies | GC 8 98 96 | 5/16/1967 | 5/16/1968 | 5/16/1967 | 5/16/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Minsi Trails (502): Delaware Valley Area 1930-1969 (510) | Phoenix of Hartford Insurance Companies | GC 8 98 96 | 5/16/1968 | 5/16/1969 | 5/16/1968 | 5/16/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Minsi Trails (502): Lehigh County 1930-1969 (729) | Insurance Company of North America | SBL Unknown | 12/1/1965 | 12/1/1966 | 12/1/1965 | 12/1/1966 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Minsi Trails (502): Lehigh County 1930-1969 (729) | Insurance Company of North America | SBL 4 47 99 | 5/1/1966 | 5/1/1967 | 5/1/1966 | 5/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Minsi Trails (502): Lehigh County 1930-1969 (729) | Insurance Company of North America | SBL 4 47 99 | 5/1/1967 | 5/1/1968 | 5/1/1967 | 5/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Minsi Trails (502): Lehigh County 1930-1969 (729) | Insurance Company of North America | SBL 4 47 99 | 5/1/1968 | 5/1/1969 | 5/1/1968 | 5/1/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE)* |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mini Trails (502): Lehigh County 1930-1969 (729) | Insurance Company of North America | SBL 4 85 34 | 5/1/1969 | 5/9/1969 | 5/1/1969 | 5/9/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mini Trails (502): Mini Trails 1968- (502) | Insurance Company of North America | SBL 44799 | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mini Trails (502): Mini Trails 1968- (502) | Insurance Company of North America | SBL 44799 | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mini Trails (502): Mini Trails 1968- (502) | Insurance Company of North America | SBL 44799 | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mini Trails (502): Mini Trails 1968- (502) | Aetna Casualty and Surety Company | 44CA 115201 | 4/20/1969 | 4/20/1970 | 4/20/1969 | 4/20/1970 | $ - | $ 25,000.00 | $ 25,000.00 | Unknown | Unknown | SE |
| Mini Trails (502): Mini Trails 1968- (502) | Insurance Company of North America | SBL-48567 | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mini Trails (502): Mini Trails 1968- (502) | Aetna Casualty and Surety Company | Unknown | 4/20/1970 | 4/20/1971 | 4/20/1970 | 4/20/1971 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Mini Trails (502): Mini Trails 1968- (502) | Insurance Company of North America | SBL-48567 | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mini Trails (502): Mini Trails 1968- (502) | Insurance Company of North America | SBL-48567 | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mini Trails (502): Mini Trails 1968- (502) | Insurance Company of North America | SBL-48567 | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mini Trails (502): Mini Trails 1968- (502) | Insurance Company of North America | XBC-96766 | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ 1,000,000.00 | $ 1,500,000.00 | $ 1,500,000.00 | Unknown | Unknown | SE |
| Mini Trails (502): Mini Trails 1968- (502) | Insurance Company of North America | GLP 40 72 24 | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Mini Trails (502): Mini Trails 1968- (502) | Insurance Company of North America | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mini Trails (502): Mini Trails 1968- (502) | Insurance Company of North America | GLP 40 72 24 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Mini Trails (502): Mini Trails 1968- (502) | Insurance Company of North America | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mini Trails (502): Mini Trails 1968- (502) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 39 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mini Trails (502): Mini Trails 1968- (502) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mini Trails (502): Mini Trails 1968- (502) | Insurance Company of North America | GLP-621176 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mini Trails (502): Mini Trails 1968- (502) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220094 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mini Trails (502): Mini Trails 1968- (502) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Mississippi Valley (141): Saukee Area 1935-1993 (141) | Insurance Company of North America | SBL S 04 24 | 6/20/1968 | 6/20/1969 | 6/20/1968 | 6/20/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mississippi Valley (141): Saukee Area 1935-1993 (141) | Insurance Company of North America | SBL S 04 24 | 6/20/1969 | 6/20/1970 | 6/20/1969 | 6/20/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mississippi Valley (141): Saukee Area 1935-1993 (141) | Insurance Company of North America | SBL S 04 24 | 6/20/1970 | 6/20/1971 | 6/20/1970 | 6/20/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mississippi Valley (141): Saukee Area 1935-1993 (141) | Insurance Company of North America | SBL S 15 61 | 6/20/1971 | 6/20/1972 | 6/20/1971 | 6/20/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mississippi Valley (141): Saukee Area 1935-1993 (141) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 23 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mississippi Valley (141): Saukee Area 1935-1993 (141) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mississippi Valley (141): Saukee Area 1935-1993 (141) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219969 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mississippi Valley (141): Saukee Area 1935-1993 (141) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Mississippi Valley (141): Southeast Iowa 1929-1993 (171) | Insurance Company of North America | SBL 4 30 00 | 6/1/1965 | 6/1/1966 | 6/1/1965 | 6/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mississippi Valley (141): Southeast Iowa 1929-1993 (171) | Insurance Company of North America | SBL 4 30 00 | 6/1/1966 | 6/1/1967 | 6/1/1966 | 6/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mississippi Valley (141): Southeast Iowa 1929-1993 (171) | Insurance Company of North America | SBL 4 30 00 | 6/1/1967 | 6/1/1968 | 6/1/1967 | 6/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mississippi Valley (141): Southeast Iowa 1929-1993 (171) | Insurance Company of North America | SBL 4 69 46 | 6/1/1968 | 6/1/1969 | 6/1/1968 | 6/1/1969 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Mississippi Valley (141): Southeast Iowa 1929-1993 (171) | Insurance Company of North America | SBL 4 69 46 | 6/1/1969 | 6/1/1970 | 6/1/1969 | 6/1/1970 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Mississippi Valley (141): Southeast Iowa 1929-1993 (171) | Insurance Company of North America | SBL 4 69 46 | 6/1/1970 | 6/1/1971 | 6/1/1970 | 6/1/1971 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Mississippi Valley (141): Southeast Iowa 1929-1993 (171) | Insurance Company of North America | SBL S 15 59 | 6/1/1971 | 6/1/1972 | 6/1/1971 | 6/1/1972 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Mississippi Valley (141): Southeast Iowa 1929-1993 (171) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 39 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mississippi Valley (141): Southeast Iowa 1929-1993 (171) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mississippi Valley (141): Southeast Iowa 1929-1993 (171) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219985 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mississippi Valley (141): Southeast Iowa 1929-1993 (171) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Mobile Area (4): Mobile Area (4) | Insurance Company of North America | SBL 46907 | 2/1/1970 | 2/1/1971 | 2/1/1970 | 2/1/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mobile Area (4): Mobile Area (4) | Insurance Company of North America | SBL 51408 | 2/1/1971 | 2/1/1972 | 2/1/1971 | 2/1/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mobile Area (4): Mobile Area (4) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mobile Area (4): Mobile Area (4) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 11 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mobile Area (4): Mobile Area (4) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mobile Area (4): Mobile Area (4) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mobile Area (4): Mobile Area (4) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219861 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mobile Area (4): Mobile Area (4) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Monmouth (347): Monmouth (347) | Insurance Company of North America | SBL 42996 | 2/1/1965 | 2/1/1966 | 2/1/1965 | 2/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Monmouth (347): Monmouth (347) | Insurance Company of North America | SBL 42996 | 2/1/1966 | 2/1/1967 | 2/1/1966 | 2/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Monmouth (347): Monmouth (347) | Insurance Company of North America | SBL 42996 | 2/1/1967 | 2/1/1968 | 2/1/1967 | 2/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Monmouth (347): Monmouth (347) | Insurance Company of North America | SBL 46903 | 2/1/1968 | 2/1/1969 | 2/1/1968 | 2/1/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Monmouth (347): Monmouth (347) | Insurance Company of North America | SBL 46903 | 2/1/1969 | 2/1/1970 | 2/1/1969 | 2/1/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Monmouth (347): Monmouth (347) | Insurance Company of North America | SBL 51395 | 2/1/1971 | 2/1/1972 | 2/1/1971 | 2/1/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Monmouth (347): Monmouth (347) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 32 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Monmouth (347): Monmouth (347) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Monmouth (347): Monmouth (347) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220184 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Monmouth (347): Monmouth (347) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Montana (315): Montana 1973- (315) | Home Insurance Company | 1217117 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Montana (315): Montana 1973- (315) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 17 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Montana (315): Montana 1973- (315) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Montana (315): Montana 1973- (315) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220168 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Montana (315): Montana 1973- (315) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Montana (315): Western Montana 1924-1973 (320) | Insurance Company of North America | SBL 3 31 46 | 2/1/1971 | 2/1/1972 | 2/1/1971 | 2/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Montana (315): Western Montana 1924-1973 (320) | Insurance Company of North America | GAL 11 68 75 | 2/1/1972 | 1/31/1973 | 2/1/1972 | 1/31/1973 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Moraine Trails (500): Moraine Trails 1973- (500) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Moraine Trails (500): Moraine Trails 1973- (500) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 32 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Moraine Trails (500): Moraine Trails 1973- (500) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Moraine Trails (500): Moraine Trails 1973- (500) | New Hampshire Insurance Company | SLP275531 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Moraine Trails (500): Moraine Trails 1973- (500) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220087 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Moraine Trails (500): Moraine Trails 1973- (500) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Mount Baker (606): Evergreen Area 1941-1994 (606) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 19 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mount Baker (606): Evergreen Area 1941-1994 (606) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mount Baker (606): Evergreen Area 1941-1994 (606) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220239 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mount Baker (606): Evergreen Area 1941-1994 (606) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Mount Baker (606): Mount Baker 1994- (606) | St. Paul Fire and Marine Insurance Company | 684NA4503 | 5/17/1977 | 5/17/1978 | 5/17/1977 | 5/17/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mount Baker (606): Mount Baker 1994- (606) | United States Fidelity and Guaranty Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mount Baker (606): Mount Baker Area 1929-1994 (603) | United States Fidelity and Guaranty Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mount Baker (606): Mount Baker Area 1929-1994 (603) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 20 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mount Baker (606): Mount Baker Area 1929-1994 (603) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mount Baker (606): Mount Baker Area 1929-1994 (603) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220238 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Mount Baker (606): Mount Baker Area 1929-1994 (603) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Mountain West (106): Mountainview 1951-1968 (105) | Insurance Company of North America | SBL 4 29 74 | 3/31/1965 | 3/31/1966 | 3/31/1965 | 3/31/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mountain West (106): Mountainview 1951-1968 (105) | Insurance Company of North America | SBL 4 29 74 | 3/31/1966 | 3/31/1967 | 3/31/1966 | 3/31/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mountain West (106): Mountainview 1951-1968 (105) | Insurance Company of North America | SBL 4 29 74 | 3/31/1967 | 3/31/1968 | 3/31/1967 | 3/31/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Mountain West (106): Ore-Ida 1933-2020 (106) | Insurance Company of North America | SBL 50411 | 3/31/1968 | 3/31/1969 | 3/31/1968 | 3/31/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Mountain West (106): Ore-Ida 1933-2020 (106) | Insurance Company of North America | SBL 50411 | 3/31/1969 | 3/31/1970 | 3/31/1969 | 3/31/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mountain West (106): Ore-Ida 1933-2020 (106) | Insurance Company of North America | SBL 50411 | 3/31/1970 | 3/31/1971 | 3/31/1970 | 3/31/1971 | - | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Mountain West (106): Ore-Ida 1933-2020 (106) | Insurance Company of North America | Unknown | 3/31/1971 | 1/1/1972 | 3/31/1971 | 1/1/1972 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Mountain West (106): Ore-Ida 1933-2020 (106) | Industrial Indemnity | MP 698-0754 | 11/1/1973 | 11/1/1974 | 11/1/1973 | 11/1/1974 | - | $500,000.00 | $500,000.00 | Unknown | Unknown | SE |
| Mountain West (106): Ore-Ida 1933-2020 (106) | Insurance Company of North America | XBC 11 46 94 | 2/15/1974 | 2/1/1975 | 2/15/1974 | 2/1/1975 | $500,000.00 | $2,000,000.00 | $2,000,000.00 | Unknown | Unknown | SE |
| Mountain West (106): Ore-Ida 1933-2020 (106) | Industrial Indemnity | MP 698-0754 | 11/1/1974 | 11/1/1975 | 11/1/1974 | 11/1/1975 | - | $500,000.00 | $500,000.00 | Unknown | Unknown | SE |
| Mountain West (106): Ore-Ida 1933-2020 (106) | Insurance Company of North America | XBC 11 48 44 | 2/1/1975 | 2/1/1976 | 2/1/1975 | 2/1/1976 | $500,000.00 | $2,000,000.00 | $2,000,000.00 | Unknown | Unknown | PE |
| Mountain West (106): Ore-Ida 1933-2020 (106) | Industrial Indemnity | MP 698-0754 | 11/1/1975 | 11/1/1976 | 11/1/1975 | 11/1/1976 | - | $500,000.00 | $500,000.00 | Unknown | Unknown | SE |
| Mountain West (106): Ore-Ida 1933-2020 (106) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 02 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Mountain West (106): Ore-Ida 1933-2020 (106) | U.S. Fire Insurance Company | 1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Mountain West (106): Ore-Ida 1933-2020 (106) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Mountain West (106): Ore-Ida 1933-2020 (106) | U.S. Fire Insurance Company | CA-O-0036 | 11/1/1976 | 1/1/1977 | 11/1/1976 | 1/1/1977 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Mountain West (106): Ore-Ida 1933-2020 (106) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1239949 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Mountain West (106): Ore-Ida 1933-2020 (106) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Mountain West (106): Snake River -2020 (111) | Aetna Casualty and Surety Company | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Mountain West (106): Snake River -2020 (111) | Aetna Casualty and Surety Company | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Mountain West (106): Snake River -2020 (111) | Aetna Casualty and Surety Company | Unknown | 1/1/1963 | 1/1/1964 | 1/1/1963 | 1/1/1964 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Mountain West (106): Snake River -2020 (111) | Aetna Casualty and Surety Company | Unknown | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Mountain West (106): Snake River -2020 (111) | Aetna Casualty and Surety Company | Unknown | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Mountain West (106): Snake River -2020 (111) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 07 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Mountain West (106): Snake River -2020 (111) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Mountain West (106): Snake River -2020 (111) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1239954 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Mountain West (106): Snake River -2020 (111) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Mountaineer Area (615): Mountaineer Area (615) | Insurance Company of North America | SBL 45387 | 6/4/1966 | 6/4/1967 | 6/4/1966 | 6/4/1967 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Mountaineer Area (615): Mountaineer Area (615) | Insurance Company of North America | SBL 45387 | 6/4/1967 | 6/3/1968 | 6/4/1967 | 6/3/1968 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Mountaineer Area (615): Mountaineer Area (615) | Insurance Company of North America | SBL 45387 | 6/4/1968 | 6/4/1969 | 6/4/1968 | 6/4/1969 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Mountaineer Area (615): Mountaineer Area (615) | Insurance Company of North America | SBL 51184 | 6/4/1969 | 6/4/1970 | 6/4/1969 | 6/4/1970 | - | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Mountaineer Area (615): Mountaineer Area (615) | Insurance Company of North America | SBL 51184 | 6/4/1970 | 6/4/1971 | 6/4/1970 | 6/4/1971 | - | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Mountaineer Area (615): Mountaineer Area (615) | Insurance Company of North America | SBL 51184 | 6/4/1971 | 6/3/1972 | 6/4/1971 | 6/3/1972 | - | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Mountaineer Area (615): Mountaineer Area (615) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 36 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Mountaineer Area (615): Mountaineer Area (615) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Mountaineer Area (615): Mountaineer Area (615) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220252 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Mountaineer Area (615): Mountaineer Area (615) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Muskingum Valley (467): Muskingum Valley 1956- (467) | Insurance Company of North America | SBL 4-44-28 | 6/26/1965 | 6/26/1966 | 6/26/1965 | 6/26/1966 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Muskingum Valley (467): Muskingum Valley 1956- (467) | Insurance Company of North America | SBL 4-44-28 | 6/26/1966 | 6/26/1967 | 6/26/1966 | 6/26/1967 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Muskingum Valley (467): Muskingum Valley 1956- (467) | Insurance Company of North America | SBL 4-44-28 | 6/26/1967 | 6/26/1968 | 6/26/1967 | 6/26/1968 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Muskingum Valley (467): Muskingum Valley 1956- (467) | Insurance Company of North America | SBL-4-44-79 | 6/26/1968 | 6/26/1969 | 6/26/1968 | 6/26/1969 | - | $250,000.00 | $250,000.00 | Unknown | Unknown | PE |
| Muskingum Valley (467): Muskingum Valley 1956- (467) | Insurance Company of North America | SBL-4-44-79 | 6/26/1969 | 6/26/1970 | 6/26/1969 | 6/26/1970 | - | $250,000.00 | $250,000.00 | Unknown | Unknown | PE |
| Muskingum Valley (467): Muskingum Valley 1956- (467) | Insurance Company of North America | SBL-4-44-79 | 6/26/1970 | 6/26/1971 | 6/26/1970 | 6/26/1971 | - | $250,000.00 | $250,000.00 | Unknown | Unknown | PE |
| Muskingum Valley (467): Muskingum Valley 1956- (467) | Insurance Company of North America | SBL 25204 | 6/26/1971 | 6/25/1972 | 6/26/1971 | 6/25/1972 | - | $250,000.00 | $250,000.00 | Unknown | Unknown | PE |
| Muskingum Valley (467): Muskingum Valley 1956- (467) | Insurance Company of North America | SBL 25204 | 6/26/1972 | 2/1/1973 | 6/26/1972 | 2/1/1973 | - | $250,000.00 | $250,000.00 | Unknown | Unknown | PE |
| Muskingum Valley (467): Muskingum Valley 1956- (467) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Muskingum Valley (467): Muskingum Valley 1956- (467) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 74 01 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Muskingum Valley (467): Muskingum Valley 1956- (467) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Muskingum Valley (467): Muskingum Valley 1956- (467) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Muskingum Valley (467): Muskingum Valley 1956- (467) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220069 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Muskingum Valley (467): Muskingum Valley 1956- (467) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Narragansett (546): Annawon 1930-2016 (225) | Insurance Company of North America | SBL 5 13 14 | 3/1/1970 | 3/1/1971 | 3/1/1970 | 3/1/1971 | - | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Narragansett (546): Annawon 1930-2016 (225) | Insurance Company of North America | SBL 5 13 14 | 3/1/1971 | 3/1/1972 | 3/1/1971 | 3/1/1972 | - | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Narragansett (546): Annawon 1930-2016 (225) | Insurance Company of North America | SBL 5 13 14 | 3/1/1972 | 1/1/1973 | 3/1/1972 | 1/1/1973 | - | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Narragansett (546): Annawon 1930-2016 (225) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 82 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Narragansett (546): Annawon 1930-2016 (225) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Narragansett (546): Annawon 1930-2016 (225) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220133 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Narragansett (546): Annawon 1930-2016 (225) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Narragansett (546): Cachalot 1935-1971 (245) | Insurance Company of North America | SBL 40247 | 11/1/1965 | 11/1/1966 | 11/1/1965 | 11/1/1966 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Narragansett (546): Cachalot 1935-1971 (245) | Insurance Company of North America | SBL 40247 | 11/1/1966 | 11/1/1967 | 11/1/1966 | 11/1/1967 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Narragansett (546): Cachalot 1935-1971 (245) | Insurance Company of North America | SBL 40247 | 11/1/1967 | 11/1/1968 | 11/1/1967 | 11/1/1968 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Narragansett (546): Cachalot 1935-1971 (245) | Insurance Company of North America | SBL 50614 | 11/1/1968 | 11/1/1969 | 11/1/1968 | 11/1/1969 | - | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Narragansett (546): Cachalot 1935-1971 (245) | Insurance Company of North America | SBL 50614 | 11/1/1969 | 11/1/1970 | 11/1/1969 | 11/1/1970 | - | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Narragansett (546): Cachalot 1935-1971 (245) | Insurance Company of North America | SBL 50614 | 11/1/1970 | 11/1/1971 | 11/1/1970 | 11/1/1971 | - | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Narragansett (546): Moby Dick 1971-2001 (245) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 79 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Narragansett (546): Moby Dick 1971-2001 (245) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Narragansett (546): Moby Dick 1971-2001 (245) | New Hampshire Insurance Company | SLP63-49-06 | 1/15/1976 | 1/15/1977 | 1/15/1976 | 1/15/1977 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Narragansett (546): Moby Dick 1971-2001 (245) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220130 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Narragansett (546): Moby Dick 1971-2001 (245) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Narragansett (546): Moby Dick 1971-2001 (245) | New Hampshire Insurance Company | SLP63-49-06 | 1/15/1977 | 1/15/1978 | 1/15/1977 | 1/15/1978 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Narragansett (546): Narragansett 1930- (546) | Phoenix Insurance Company | TOPSB010057 | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Narragansett (546): Narragansett 1930- (546) | Phoenix Insurance Company | TOPSB010057 | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Narragansett (546): Narragansett 1930- (546) | Phoenix Insurance Company | TOPSB010057 | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Narragansett (546): Narragansett 1930- (546) | Travelers Indemnity Company | N06619859 | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Narragansett (546): Narragansett 1930- (546) | Travelers Indemnity Company | N06619859 | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Narragansett (546): Narragansett 1930- (546) | Travelers Indemnity Company | N06619859 | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Narragansett (546): Narragansett 1930- (546) | Travelers Indemnity Company | N06619859 | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | - | Unknown | Unknown | Unknown | Unknown | SE |
| National Capital Area (82): National Capital Area 1911- (82) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 75 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| National Capital Area (82): National Capital Area 1911- (82) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219923 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| National Capital Area (82): National Capital Area 1911- (82) | Aetna Insurance Company | SMP 35 29 46 | 4/1/1981 | 4/1/1982 | 4/1/1981 | 4/1/1982 | - | Unknown | Unknown | Unknown | Unknown | SE |
| National Capital Area (82): National Capital Area 1911- (82) | Aetna Insurance Company | CPP 42 58 80 | 4/1/1982 | 4/1/1983 | 4/1/1982 | 4/1/1983 | - | $100,000.00 | $100,000.00 | Unknown | Unknown | PE |
| National Capital Area (82): Virgin Islands 1965-2013 (410) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 08 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| National Capital Area (82): Virgin Islands 1965-2013 (410) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| National Capital Area (82): Virgin Islands 1965-2013 (410) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220230 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| National Capital Area (82): Virgin Islands 1965-2013 (410) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| National Office (999): National Office 1954-1979 (999) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| National Office (999): National Office 1954-1979 (999) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Nevada Area (329): Nevada Area (329) | American Employers' Insurance Company | AF W05 00 10 | 3/1/1973 | 3/1/1974 | 3/1/1973 | 3/1/1974 | - | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Nevada Area (329): Nevada Area (329) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 23 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Nevada Area (329): Nevada Area (329) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE)* |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Nevada Area (329): Nevada Area (329) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220175 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Nevada Area (329): Nevada Area (329) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $1,000,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Nevada Area (329): Nevada Area (329) | Travelers Indemnity Company | 650-225A529-4-IND-77 | 4/12/1977 | 4/1/1978 | 4/12/1977 | 4/1/1978 | | Unknown | Unknown | Unknown | Unknown | SE |
| New Birth of Freedom (544): Harrisburg Area 1927-1948 (515) | Insurance Company of North America | L8 3541 | 6/20/1946 | 6/20/1947 | 6/20/1946 | 6/20/1947 | | $50,000.00 | $50,000.00 | Unknown | Unknown | PE |
| New Birth of Freedom (544): Keystone Area 1948-2010 (515) | Insurance Company of North America | L8-4-21-48 | 10/20/1964 | 10/20/1965 | 10/20/1964 | 10/20/1965 | | Unknown | Unknown | Unknown | Unknown | SE |
| New Birth of Freedom (544): Keystone Area 1948-2010 (515) | Insurance Company of North America | L8-4-21-48 | 10/20/1965 | 10/20/1966 | 10/20/1965 | 10/20/1966 | | Unknown | Unknown | Unknown | Unknown | SE |
| New Birth of Freedom (544): Keystone Area 1948-2010 (515) | Insurance Company of North America | L8-4-21-48 | 10/20/1966 | 10/20/1967 | 10/20/1966 | 10/20/1967 | | Unknown | Unknown | Unknown | Unknown | SE |
| New Birth of Freedom (544): Keystone Area 1948-2010 (515) | Insurance Company of North America | ALB-4-84-03 | 10/20/1967 | 10/20/1968 | 10/20/1967 | 10/20/1968 | | $250,000.00 | $250,000.00 | Unknown | Unknown | PE |
| New Birth of Freedom (544): Keystone Area 1948-2010 (515) | Insurance Company of North America | ALB-4-84-03 | 10/20/1968 | 10/20/1969 | 10/20/1968 | 10/20/1969 | | $250,000.00 | $250,000.00 | Unknown | Unknown | PE |
| New Birth of Freedom (544): Keystone Area 1948-2010 (515) | Insurance Company of North America | ALB-4-84-03 | 10/20/1969 | 10/20/1970 | 10/20/1969 | 10/20/1970 | | $250,000.00 | $250,000.00 | Unknown | Unknown | PE |
| New Birth of Freedom (544): Keystone Area 1948-2010 (515) | Aetna Casualty and Surety Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | | Unknown | Unknown | Unknown | Unknown | SE |
| New Birth of Freedom (544): Keystone Area 1948-2010 (515) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 37 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| New Birth of Freedom (544): Keystone Area 1948-2010 (515) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| New Birth of Freedom (544): Keystone Area 1948-2010 (515) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220092 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| New Birth of Freedom (544): Keystone Area 1948-2010 (515) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $1,000,000.00 | $500,000.00 | Unknown | Unknown | PE |
| New Birth of Freedom (544): York-Adams Area 1932-2010 (544) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 53 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| New Birth of Freedom (544): York-Adams Area 1932-2010 (544) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| New Birth of Freedom (544): York-Adams Area 1932-2010 (544) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220275 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| New Birth of Freedom (544): York-Adams Area 1932-2010 (544) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| New Birth of Freedom (544): York-Adams Area 1932-2010 (544) | National Fire Insurance Company of Hartford | B1 36014964 | 1/1/1996 | 1/1/1997 | 1/1/1996 | 1/1/1997 | | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| New Birth of Freedom (544): York-Adams Area 1932-2010 (544) | National Fire Insurance Company of Hartford | B1 36014964 | 1/1/1997 | 1/1/1998 | 1/1/1997 | 1/1/1998 | | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| North Florida (87): North Florida (87) | Insurance Company of North America | SBL 45384 | 4/8/1966 | 4/8/1967 | 4/8/1966 | 4/8/1967 | | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| North Florida (87): North Florida (87) | Insurance Company of North America | SBL 45384 | 4/8/1967 | 4/8/1968 | 4/8/1967 | 4/8/1968 | | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| North Florida (87): North Florida (87) | Insurance Company of North America | SBL 45384 | 4/8/1968 | 4/8/1969 | 4/8/1968 | 4/8/1969 | | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| North Florida (87): North Florida (87) | Insurance Company of North America | SBL 50444 | 4/8/1969 | 4/8/1970 | 4/8/1969 | 4/8/1970 | | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| North Florida (87): North Florida (87) | Insurance Company of North America | SBL 50444 | 4/8/1970 | 4/8/1971 | 4/8/1970 | 4/8/1971 | | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| North Florida (87): North Florida (87) | Insurance Company of North America | SBL 50444 | 4/8/1971 | 4/7/1972 | 4/8/1971 | 4/7/1972 | | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| North Florida (87): North Florida (87) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 78 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| North Florida (87): North Florida (87) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| North Florida (87): North Florida (87) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219926 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| North Florida (87): North Florida (87) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $1,000,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Northeast Georgia (101): Northeast Georgia 1935-1997 (101) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 88 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Northeast Georgia (101): Northeast Georgia 1935-1997 (101) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Northeast Georgia (101): Northeast Georgia 1935-1997 (101) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219936 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Northeast Georgia (101): Northeast Georgia 1935-1997 (101) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Northeast Illinois (129): Evanston 1916-1969 (124) | Insurance Company of North America | SBL-2-59-19 | 2/25/1966 | 2/25/1967 | 2/25/1966 | 2/25/1967 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northeast Illinois (129): Evanston 1916-1969 (124) | Insurance Company of North America | SBL-2-50-54 | 2/25/1967 | 2/25/1968 | 2/25/1967 | 2/25/1968 | | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Northeast Illinois (129): Evanston 1916-1969 (124) | Insurance Company of North America | SBL-2-51-38 | 2/25/1968 | 2/25/1969 | 2/25/1968 | 2/25/1969 | | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Northeast Illinois (129): Evanston 1916-1969 (124) | Insurance Company of North America | SBL-2-51-38 | 2/25/1969 | 6/12/1969 | 2/25/1969 | 6/12/1969 | | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Northeast Illinois (129): Evanston-North Shore Area 1969-1971 (129) | Insurance Company of North America | SBL 51814 | 6/12/1969 | 6/25/1970 | 6/12/1969 | 6/25/1970 | | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Northeast Illinois (129): Evanston-North Shore Area 1969-1971 (129) | Insurance Company of North America | SBL 51833 | 6/25/1970 | 6/25/1971 | 6/25/1970 | 6/25/1971 | | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Northeast Illinois (129): Northeast Illinois 1971-(129) | Insurance Company of North America | GAL 27962 | 6/25/1971 | 6/25/1972 | 6/25/1971 | 6/25/1972 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northeast Illinois (129): Northeast Illinois 1971-(129) | Insurance Company of North America | GAL 28017 | 6/25/1972 | 12/1/1972 | 6/25/1972 | 12/1/1972 | | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Northeast Illinois (129): Northeast Illinois 1971-(129) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northeast Illinois (129): Northeast Illinois 1971-(129) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 16 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Northeast Illinois (129): Northeast Illinois 1971-(129) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Northeast Illinois (129): Northeast Illinois 1971-(129) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northeast Illinois (129): Northeast Illinois 1971-(129) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219962 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Northeast Illinois (129): Northeast Illinois 1971-(129) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | Unknown | Unknown | SE |
| Northeast Illinois (129): Oak Plain 1940-1971 (126) | Insurance Company of North America | SBL 25 02 5 | 6/21/1966 | 6/21/1967 | 6/21/1966 | 6/21/1967 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northeast Illinois (129): Oak Plain 1940-1971 (126) | Insurance Company of North America | SBL 25 10 2 | 6/21/1967 | 6/21/1968 | 6/21/1967 | 6/21/1968 | | $250,000.00 | $250,000.00 | Unknown | Unknown | PE |
| Northeast Illinois (129): Oak Plain 1940-1971 (126) | Insurance Company of North America | SBL 25 15 1 | 6/21/1968 | 6/21/1969 | 6/21/1968 | 6/21/1969 | | $250,000.00 | $250,000.00 | Unknown | Unknown | PE |
| Northeast Illinois (129): Oak Plain 1940-1971 (126) | Insurance Company of North America | SBL 51808 | 6/21/1969 | 6/21/1970 | 6/21/1969 | 6/21/1970 | | $250,000.00 | $250,000.00 | Unknown | Unknown | PE |
| Northeast Illinois (129): Oak Plain 1940-1971 (126) | Insurance Company of North America | SBL 51808 | 6/21/1970 | 6/21/1971 | 6/21/1970 | 6/21/1971 | | $250,000.00 | $250,000.00 | Unknown | Unknown | PE |
| Northeast Illinois (129): Oak Plain 1940-1971 (126) | Insurance Company of North America | SBL 51808 | 6/21/1971 | 12/20/1972 | 6/21/1971 | 12/20/1972 | | $250,000.00 | $250,000.00 | Unknown | Unknown | PE |
| Northeast Iowa (178): Northeast Iowa (178) | Maryland Casualty Company | 31-086767 | 7/7/1957 | 7/7/1958 | 7/7/1957 | 7/7/1958 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northeast Iowa (178): Northeast Iowa (178) | Maryland Casualty Company | Unknown | 7/7/1958 | 7/1/1959 | 7/7/1958 | 7/1/1959 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northeast Iowa (178): Northeast Iowa (178) | Home Indemnity Company | CGA 024051 | 7/31/1959 | 7/31/1960 | 7/31/1959 | 7/31/1960 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northeast Iowa (178): Northeast Iowa (178) | Home Indemnity Company | CGA 024051 | 7/31/1960 | 7/31/1961 | 7/31/1960 | 7/31/1961 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northeast Iowa (178): Northeast Iowa (178) | Home Indemnity Company | CGA 024051 | 7/31/1961 | 7/17/1962 | 7/31/1961 | 7/17/1962 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northeast Iowa (178): Northeast Iowa (178) | American States Insurance Company | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northeast Iowa (178): Northeast Iowa (178) | United States Fidelity and Guaranty Company | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Northeast Iowa (178): Northeast Iowa (178) | American States Insurance Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northeast Iowa (178): Northeast Iowa (178) | United States Fidelity and Guaranty Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Northeast Iowa (178): Northeast Iowa (178) | American States Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northeast Iowa (178): Northeast Iowa (178) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 42 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Northeast Iowa (178): Northeast Iowa (178) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Northeast Iowa (178): Northeast Iowa (178) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219988 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Northeast Iowa (178): Northeast Iowa (178) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Northeastern Pennsylvania (501): Anthracite 1927-1970 (514) | Insurance Company of North America | SBL 4 29 70 | 4/1/1967 | 4/1/1968 | 4/1/1967 | 4/1/1968 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northeastern Pennsylvania (501): Anthracite 1927-1970 (514) | Insurance Company of North America | SBL 4 69 34 | 4/1/1968 | 4/1/1969 | 4/1/1968 | 4/1/1969 | | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Northeastern Pennsylvania (501): Anthracite 1927-1970 (514) | Insurance Company of North America | SBL 4 69 34 | 4/1/1969 | 4/1/1970 | 4/1/1969 | 4/1/1970 | | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Northeastern Pennsylvania (501): Forest Lakes 1962-1990 (501) | Insurance Company of North America | SBL 48449 | 3/30/1968 | 3/30/1969 | 3/30/1968 | 3/30/1969 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northeastern Pennsylvania (501): Forest Lakes 1962-1990 (501) | Insurance Company of North America | SBL 48449 | 3/30/1969 | 3/30/1970 | 3/30/1969 | 3/30/1970 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northeastern Pennsylvania (501): Forest Lakes 1962-1990 (501) | Insurance Company of North America | SBL 48449 | 3/30/1970 | 3/30/1971 | 3/30/1970 | 3/30/1971 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northeastern Pennsylvania (501): Forest Lakes 1962-1990 (501) | Insurance Company of North America | SBL 50071 | 3/30/1971 | 3/29/1972 | 3/30/1971 | 3/29/1972 | | $250,000.00 | $250,000.00 | Unknown | Unknown | PE |
| Northeastern Pennsylvania (501): Forest Lakes 1962-1990 (501) | Insurance Company of North America | SBL 50071 | 3/30/1972 | 3/30/1973 | 3/30/1972 | 3/30/1973 | | $250,000.00 | $250,000.00 | Unknown | Unknown | PE |
| Northeastern Pennsylvania (501): Forest Lakes 1962-1990 (501) | Insurance Company of North America | SBL 50071 | 3/30/1973 | 3/30/1974 | 3/30/1973 | 3/30/1974 | | $250,000.00 | $250,000.00 | Unknown | Unknown | PE |
| Northeastern Pennsylvania (501): Forest Lakes 1962-1990 (501) | Insurance Company of North America | GLP 56 95 31 | 3/30/1975 | 3/30/1976 | 3/30/1975 | 3/30/1976 | | $500,000.00 | $500,000.00 | Unknown | Unknown | PE |
| Northeastern Pennsylvania (501): Forest Lakes 1962-1990 (501) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 46 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Northeastern Pennsylvania (501): Forest Lakes 1962-1990 (501) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Northeastern Pennsylvania (501): Penn Mountains 1970-1990 (522) | Insurance Company of North America | SBL 51391 | 4/1/1970 | 4/1/1971 | 4/1/1970 | 4/1/1971 | | $250,000.00 | $250,000.00 | Unknown | Unknown | PE |
| Northeastern Pennsylvania (501): Penn Mountains 1970-1990 (522) | Insurance Company of North America | SBL 51392 | 4/1/1971 | 3/31/1972 | 4/1/1971 | 3/31/1972 | | $250,000.00 | $250,000.00 | Unknown | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Northeastern Pennsylvania (501): Penn Mountains 1970-1990 (522) | Insurance Company of North America | SBL 51392 | 4/1/1972 | 4/1/1973 | 4/1/1972 | 4/1/1973 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Northeastern Pennsylvania (501): Penn Mountains 1970-1990 (522) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 44 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northeastern Pennsylvania (501): Penn Mountains 1970-1990 (522) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northeastern Pennsylvania (501): Penn Mountains 1970-1990 (522) | Aetna Casualty and Surety Company | 44AB221317 | 12/31/1976 | 12/31/1977 | 12/31/1976 | 12/31/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Northeastern Pennsylvania (501): Penn Mountains 1970-1990 (522) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220099 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northeastern Pennsylvania (501): Penn Mountains 1970-1990 (522) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northeastern Pennsylvania (501): Wyoming Valley 1925-1969 (542) | Insurance Company of North America | SBL 4 53 72 | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Northeastern Pennsylvania (501): Wyoming Valley 1925-1969 (542) | Insurance Company of North America | SBL 4 53 72 | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Northeastern Pennsylvania (501): Wyoming Valley 1925-1969 (542) | Insurance Company of North America | SBL 4 53 72 | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Northeastern Pennsylvania (501): Wyoming Valley 1925-1969 (542) | Insurance Company of North America | SBL 50434 | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Northeastern Pennsylvania (501): Wyoming Valley 1925-1969 (542) | Insurance Company of North America | SBL 50434 | 1/1/1970 | 4/1/1970 | 1/1/1970 | 4/1/1970 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Northern Lights (429): Lake Agassiz 1933-1974 (430) | Insurance Company of North America | SBL-4-46-37 | 7/1/1968 | 7/1/1969 | 7/1/1968 | 7/1/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northern Lights (429): Lake Agassiz 1933-1974 (430) | Insurance Company of North America | SBL 4 46 52 | 7/1/1969 | 7/1/1970 | 7/1/1969 | 7/1/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern Lights (429): Lake Agassiz 1933-1974 (430) | Insurance Company of North America | SBL 4 46 70 | 7/1/1970 | 7/1/1971 | 7/1/1970 | 7/1/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Lights (429): Lake Agassiz 1933-1974 (430) | Insurance Company of North America | SBL 4 46 90 | 7/1/1971 | 7/1/1972 | 7/1/1971 | 7/1/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northern Lights (429): Lake Agassiz 1933-1974 (430) | Insurance Company of North America | GAL 13 57 61 | 7/1/1972 | 11/10/1972 | 7/1/1972 | 11/10/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northern Lights (429): Missouri Valley 1929-1974 (432) | Insurance Company of North America | SBL 4 46 60 | 1/17/1970 | 1/17/1971 | 1/17/1970 | 1/17/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Lights (429): Missouri Valley 1929-1974 (432) | Insurance Company of North America | SBL 4 46 78 | 1/17/1971 | 1/17/1972 | 1/17/1971 | 1/17/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern Lights (429): Northern Lights 1974- (429) | New Hampshire Insurance Company | GLA 91 79 99 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Lights (429): Northern Lights 1974- (429) | Insurance Company of North America | XBC 132519 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Northern Lights (429): Northern Lights 1974- (429) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 93 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern Lights (429): Northern Lights 1974- (429) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern Lights (429): Northern Lights 1974- (429) | Unknown | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Lights (429): Northern Lights 1974- (429) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220046 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern Lights (429): Northern Lights 1974- (429) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northern Lights (429): Red River Valley 1925-1974 (429) | United States Fidelity and Guaranty Company | 20011 | 6/1/1949 | 6/1/1950 | 6/1/1949 | 6/1/1950 | $ - | $ 10,000.00 | $ 10,000.00 | Unknown | Unknown | SE |
| Northern Lights (429): Red River Valley 1925-1974 (429) | United States Fidelity and Guaranty Company | CGA 28599 | 6/1/1950 | 6/1/1951 | 6/1/1950 | 6/1/1951 | $ - | $ 10,000.00 | $ 10,000.00 | Unknown | Unknown | SE |
| Northern Lights (429): Red River Valley 1925-1974 (429) | United States Fidelity and Guaranty Company | 42075 | 6/1/1951 | 6/1/1952 | 6/1/1951 | 6/1/1952 | $ - | $ 10,000.00 | $ 10,000.00 | Unknown | Unknown | SE |
| Northern Lights (429): Red River Valley 1925-1974 (429) | Central Surety & Insurance Corporation | CCP 12670 | 6/1/1952 | 6/1/1953 | 6/1/1952 | 6/1/1953 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Northern Lights (429): Red River Valley 1925-1974 (429) | Central Surety & Insurance Corporation | CCP 14162 | 6/1/1953 | 6/1/1954 | 6/1/1953 | 6/1/1954 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Northern Lights (429): Red River Valley 1925-1974 (429) | Central Surety & Insurance Corporation | CCP 17526 | 6/1/1954 | 6/1/1955 | 6/1/1954 | 6/1/1955 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Northern Lights (429): Red River Valley 1925-1974 (429) | American Casualty Company of Reading, Pennsylvania | CL 71781 | 6/1/1955 | 6/1/1956 | 6/1/1955 | 6/1/1956 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Northern Lights (429): Red River Valley 1925-1974 (429) | American Casualty Company of Reading, Pennsylvania | CL11-0537 | 6/1/1956 | 6/1/1957 | 6/1/1956 | 6/1/1957 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Northern Lights (429): Red River Valley 1925-1974 (429) | American Casualty Company of Reading, Pennsylvania | CL10-9446 | 6/1/1957 | 6/1/1958 | 6/1/1957 | 6/1/1958 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Northern Lights (429): Red River Valley 1925-1974 (429) | American Casualty Company of Reading, Pennsylvania | 118145 | 6/1/1958 | 6/1/1959 | 6/1/1958 | 6/1/1959 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Northern Lights (429): Red River Valley 1925-1974 (429) | American Casualty Company of Reading, Pennsylvania | 120666 | 6/1/1959 | 6/1/1960 | 6/1/1959 | 6/1/1960 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Northern Lights (429): Red River Valley 1925-1974 (429) | American Casualty Company of Reading, Pennsylvania | CL70090 | 6/1/1960 | 6/1/1961 | 6/1/1960 | 6/1/1961 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Northern Lights (429): Red River Valley 1925-1974 (429) | American Casualty Company of Reading, Pennsylvania | CL70095 | 6/1/1961 | 6/1/1962 | 6/1/1961 | 6/1/1962 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Northern Lights (429): Red River Valley 1925-1974 (429) | American Casualty Company of Reading, Pennsylvania | CL17-6975 | 6/1/1962 | 6/1/1963 | 6/1/1962 | 6/1/1963 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Northern Lights (429): Red River Valley 1925-1974 (429) | Insurance Company of North America | Unknown | 6/1/1963 | 6/1/1964 | 6/1/1963 | 6/1/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Lights (429): Red River Valley 1925-1974 (429) | Insurance Company of North America | Unknown | 6/1/1964 | 6/1/1965 | 6/1/1964 | 6/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Lights (429): Red River Valley 1925-1974 (429) | Insurance Company of North America | Unknown | 6/1/1965 | 6/1/1966 | 6/1/1965 | 6/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Lights (429): Red River Valley 1925-1974 (429) | Insurance Company of North America | Unknown | 6/1/1966 | 6/1/1967 | 6/1/1966 | 6/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Lights (429): Red River Valley 1925-1974 (429) | Insurance Company of North America | Unknown | 6/1/1967 | 6/1/1968 | 6/1/1967 | 6/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Lights (429): Red River Valley 1925-1974 (429) | Insurance Company of North America | SBL-4-46-39 | 8/16/1968 | 8/16/1969 | 8/16/1968 | 8/16/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northern Lights (429): Red River Valley 1925-1974 (429) | Insurance Company of North America | SBL 4 46 50 | 8/16/1969 | 8/16/1970 | 8/16/1969 | 8/16/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northern Lights (429): Red River Valley 1925-1974 (429) | Insurance Company of North America | SBL 4 46 74 | 8/16/1970 | 8/16/1971 | 8/16/1970 | 8/16/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern Lights (429): Red River Valley 1925-1974 (429) | Insurance Company of North America | SBL 44688 | 8/16/1971 | 8/16/1972 | 8/16/1971 | 8/16/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (350): Alhela 1939-1972 (354) | Insurance Company of North America | SBL 45385 | 4/25/1966 | 4/25/1967 | 4/25/1966 | 4/25/1967 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (350): Alhela 1939-1972 (354) | Insurance Company of North America | SBL 45385 | 4/25/1967 | 4/25/1968 | 4/25/1967 | 4/25/1968 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (350): Alhela 1939-1972 (354) | Insurance Company of North America | SBL 45385 | 4/25/1968 | 4/25/1969 | 4/25/1968 | 4/25/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (350): Alhela 1939-1972 (354) | Insurance Company of North America | SBL 51182 | 4/25/1969 | 4/25/1970 | 4/25/1969 | 4/25/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (350): Alhela 1939-1972 (354) | Insurance Company of North America | SBL 51182 | 4/25/1970 | 4/25/1971 | 4/25/1970 | 4/25/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (350): Alhela 1939-1972 (354) | Insurance Company of North America | SBL 51182 | 4/25/1971 | 4/24/1972 | 4/25/1971 | 4/24/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (350): Alexander Hamilton 1936-1968 (351) | Insurance Company of North America | SBL 4 29 98 | 4/1/1965 | 4/1/1966 | 4/1/1965 | 4/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (350): Alexander Hamilton 1936-1968 (351) | Insurance Company of North America | SBL 4 29 98 | 4/1/1966 | 4/1/1967 | 4/1/1966 | 4/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (350): Alexander Hamilton 1936-1968 (351) | Insurance Company of North America | SBL 4 29 98 | 4/1/1967 | 4/1/1968 | 4/1/1967 | 4/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (350): Alexander Hamilton 1936-1968 (351) | Insurance Company of North America | SBL 4 69 45 | 4/1/1968 | 4/1/1969 | 4/1/1968 | 4/1/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (350): Alexander Hamilton 1936-1968 (351) | Insurance Company of North America | SBL 4 69 45 | 4/1/1969 | 4/1/1970 | 4/1/1969 | 4/1/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (350): Alexander Hamilton 1936-1968 (351) | Insurance Company of North America | SBL 4 69 45 | 4/1/1970 | 4/1/1971 | 4/1/1970 | 4/1/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (350): Alhtata 1942-1972 (355) | Insurance Company of North America | SBL 4 29 90 | 5/11/1965 | 5/11/1966 | 5/11/1965 | 5/11/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (350): Alhtata 1942-1972 (355) | Insurance Company of North America | SBL 4 29 90 | 5/11/1966 | 5/11/1967 | 5/11/1966 | 5/11/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (350): Alhtata 1942-1972 (355) | Insurance Company of North America | SBL 4 29 90 | 5/11/1967 | 5/11/1968 | 5/11/1967 | 5/11/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (350): Alhtata 1942-1972 (355) | Insurance Company of North America | SBL 4 69 39 | 5/11/1968 | 5/11/1969 | 5/11/1968 | 5/11/1969 | $ - | Unknown² | Unknown² | Unknown | Unknown | PE |
| Northern New Jersey (350): Alhtata 1942-1972 (355) | Insurance Company of North America | SBL 4 69 39 | 5/11/1969 | 5/11/1970 | 5/11/1969 | 5/11/1970 | $ - | Unknown² | Unknown² | Unknown | Unknown | PE |
| Northern New Jersey (350): Alhtata 1942-1972 (355) | Insurance Company of North America | SBL 4 69 39 | 5/11/1970 | 5/11/1971 | 5/11/1970 | 5/11/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Bayonne 1918-1993 (332) | Travelers Indemnity Company | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Bayonne 1918-1993 (332) | Travelers | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Bayonne 1918-1993 (332) | Travelers Indemnity Company | SBL 521793 | 11/1/1962 | 11/1/1963 | 11/1/1962 | 11/1/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Bayonne 1918-1993 (332) | Insurance Company of North America | Unknown | 11/1/1963 | 11/1/1964 | 11/1/1963 | 11/1/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Bayonne 1918-1993 (332) | Insurance Company of North America | Unknown | 11/1/1964 | 11/1/1965 | 11/1/1964 | 11/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Bayonne 1918-1993 (332) | Insurance Company of North America | SBL 45370 | 11/1/1966 | 11/1/1967 | 11/1/1966 | 11/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Bayonne 1918-1993 (332) | Insurance Company of North America | SBL 45370 | 11/1/1967 | 11/1/1968 | 11/1/1967 | 11/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Bayonne 1918-1993 (332) | Insurance Company of North America | SBL 45370 | 11/1/1968 | 11/1/1969 | 11/1/1968 | 11/1/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Bayonne 1918-1993 (332) | Insurance Company of North America | SBL 50420 | 11/1/1969 | 11/1/1970 | 11/1/1969 | 11/1/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Bayonne 1918-1993 (332) | Insurance Company of North America | SBL 50420 | 11/1/1970 | 11/1/1971 | 11/1/1970 | 11/1/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Bayonne 1918-1993 (332) | Insurance Company of North America | SBL 50420 | 11/1/1971 | 11/1/1972 | 11/1/1971 | 11/1/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Bayonne 1918-1993 (332) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Bayonne 1918-1993 (332) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 36 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Bayonne 1918-1993 (332) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Bergen 1969-1995 (350) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Bergen 1969-1995 (350) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 36 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Bergen 1969-1995 (350) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Bergen 1969-1995 (350) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220187 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Northern New Jersey (333): Bergen 1969-1995 (350) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Eagle Rock 1931-1976 (346) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Essex 1976-1999 (336) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 74 00 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Essex 1976-1999 (336) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Essex 1976-1999 (336) | New Hampshire Insurance Company | GLA 336371 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Essex 1976-1999 (336) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Hudson 1936-1968 (342) | Insurance Company of North America | SBL 6 53 52 | 5/13/1965 | 5/13/1966 | 5/13/1965 | 5/13/1966 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Hudson 1936-1968 (342) | Insurance Company of North America | SBL 6 53 52 | 5/13/1966 | 5/13/1967 | 5/13/1966 | 5/13/1967 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Hudson 1936-1968 (342) | Insurance Company of North America | SBL 6 53 52 | 5/13/1967 | 5/13/1968 | 5/13/1967 | 5/13/1968 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Hudson 1936-1968 (342) | Insurance Company of North America | SBL 4 69 51 | 5/13/1968 | 5/13/1969 | 5/13/1968 | 5/13/1969 | | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Hudson-Hamilton 1968-1993 (348) | Insurance Company of North America | SBL 4 69 45 | 4/1/1968 | 4/1/1969 | 4/1/1968 | 4/1/1969 | | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Hudson-Hamilton 1968-1993 (348) | Insurance Company of North America | SBL 4 69 45 | 4/1/1969 | 4/1/1970 | 4/1/1969 | 4/1/1970 | | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Hudson-Hamilton 1968-1993 (348) | Insurance Company of North America | SBL 4 69 45 | 4/1/1970 | 4/1/1971 | 4/1/1970 | 4/1/1971 | | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Hudson-Hamilton 1968-1993 (348) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Hudson-Hamilton 1968-1993 (348) | National Union Fire Insurance Company of Pittsburgh, PA | BE 122019 1 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Hudson-Hamilton 1968-1993 (348) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Hudson-Hamilton 1968-1993 (348) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Hudson-Hamilton 1968-1993 (348) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): North Bergen County 1921-1969 (350) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): North Bergen County 1921-1969 (350) | Unknown | Unknown | 1/1/1957 | 1/1/1958 | 1/1/1957 | 1/1/1958 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): North Bergen County 1921-1969 (350) | Unknown | Unknown | 1/1/1958 | 1/1/1959 | 1/1/1958 | 1/1/1959 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): North Bergen County 1921-1969 (350) | Unknown | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): North Bergen County 1921-1969 (350) | Unknown | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): North Bergen County 1921-1969 (350) | Insurance Company of North America | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): North Bergen County 1921-1969 (350) | Insurance Company of North America | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): North Bergen County 1921-1969 (350) | Insurance Company of North America | Unknown | 1/1/1963 | 1/1/1964 | 1/1/1963 | 1/1/1964 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): North Bergen County 1921-1969 (350) | Insurance Company of North America | Unknown | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): North Bergen County 1921-1969 (350) | Insurance Company of North America | Unknown | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): North Bergen County 1921-1969 (350) | Insurance Company of North America | Unknown | 1/1/1966 | 3/23/1966 | 1/1/1966 | 3/23/1966 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): North Bergen County 1921-1969 (350) | Insurance Company of North America | SBL 4 53 81 | 3/23/1966 | 3/23/1967 | 3/23/1966 | 3/23/1967 | | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): North Bergen County 1921-1969 (350) | Insurance Company of North America | SBL 4 53 81 | 3/23/1967 | 3/23/1968 | 3/23/1967 | 3/23/1968 | | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): North Bergen County 1921-1969 (350) | Insurance Company of North America | SBL 4 53 81 | 3/23/1968 | 3/23/1969 | 3/23/1968 | 3/23/1969 | | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): North Bergen County 1921-1969 (350) | Insurance Company of North America | SBL 5 11 79 | 3/23/1969 | 3/23/1970 | 3/23/1969 | 3/23/1970 | | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): North Bergen County 1921-1969 (350) | Insurance Company of North America | SBL 5 11 79 | 3/23/1970 | 3/23/1971 | 3/23/1970 | 3/23/1971 | | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): North Bergen County 1921-1969 (350) | Insurance Company of North America | SBL 5 11 79 | 3/23/1971 | 3/23/1972 | 3/23/1971 | 3/23/1972 | | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Northern New Jersey 1999- (333) | Hartford Fire Insurance Company | 13 UUN CY4185 | 4/5/1999 | 4/5/2000 | 4/5/1999 | 4/5/2000 | | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Northern New Jersey 1999- (333) | Hartford Fire Insurance Company | 13 UUN CY4185 | 4/5/2000 | 4/5/2001 | 4/5/2000 | 4/5/2001 | | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Northern New Jersey 1999- (333) | Unknown | Unknown | 1/1/2004 | 1/1/2005 | 1/1/2004 | 1/1/2005 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Northern New Jersey 1999- (333) | Unknown | Unknown | 1/1/2018 | 1/1/2019 | 1/1/2018 | 1/1/2019 | | $ 2,500,000.00 | $ 2,500,000.00 | Unknown | Unknown | SE |
| Northern New Jersey (333): Orange Mountain 1949-1976 (337) | Insurance Company of North America | GLP-17-77-71 | 8/18/1967 | 8/18/1968 | 8/18/1967 | 8/18/1968 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Orange Mountain 1949-1976 (337) | Insurance Company of North America | GLP-17-39-79 | 8/18/1968 | 8/18/1969 | 8/18/1968 | 8/18/1969 | | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Orange Mountain 1949-1976 (337) | Insurance Company of North America | Unknown | 8/18/1970 | 8/18/1971 | 8/18/1970 | 8/18/1971 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Orange Mountain 1949-1976 (337) | Insurance Company of North America | Unknown | 8/18/1971 | 8/18/1972 | 8/18/1971 | 8/18/1972 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Orange Mountain 1949-1976 (337) | Insurance Company of North America | Unknown | 8/18/1972 | 8/18/1973 | 8/18/1972 | 8/18/1973 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Orange Mountain 1949-1976 (337) | Insurance Company of North America | Unknown | 8/18/1973 | 8/18/1974 | 8/18/1973 | 8/18/1974 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Orange Mountain 1949-1976 (337) | Insurance Company of North America | Unknown | 8/18/1974 | 1/1/1975 | 8/18/1974 | 1/1/1975 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Orange Mountain 1949-1976 (337) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Passaic Valley 1973-1999 (353) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 43 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Passaic Valley 1973-1999 (353) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Passaic Valley 1973-1999 (353) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220194 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Passaic Valley 1973-1999 (353) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | Unknown | 6/14/1946 | 6/14/1947 | 6/14/1946 | 6/14/1947 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | Unknown | 6/14/1947 | 6/14/1948 | 6/14/1947 | 6/14/1948 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | Unknown | 6/14/1948 | 6/14/1949 | 6/14/1948 | 6/14/1949 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | Unknown | 6/14/1949 | 6/14/1950 | 6/14/1949 | 6/14/1950 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | Unknown | 6/14/1950 | 6/14/1951 | 6/14/1950 | 6/14/1951 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | Unknown | 6/14/1951 | 6/14/1952 | 6/14/1951 | 6/14/1952 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | Unknown | 6/14/1952 | 6/14/1953 | 6/14/1952 | 6/14/1953 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | Unknown | 6/14/1953 | 6/14/1954 | 6/14/1953 | 6/14/1954 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | Unknown | 6/14/1954 | 6/14/1955 | 6/14/1954 | 6/14/1955 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | Unknown | 6/14/1955 | 6/14/1956 | 6/14/1955 | 6/14/1956 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | Unknown | 6/14/1956 | 6/14/1957 | 6/14/1956 | 6/14/1957 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | Unknown | 6/14/1957 | 6/14/1958 | 6/14/1957 | 6/14/1958 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | Unknown | 6/14/1958 | 6/14/1959 | 6/14/1958 | 6/14/1959 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | Unknown | 6/14/1959 | 6/14/1960 | 6/14/1959 | 6/14/1960 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | Unknown | 6/14/1960 | 6/14/1961 | 6/14/1960 | 6/14/1961 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | Unknown | 6/14/1961 | 6/14/1962 | 6/14/1961 | 6/14/1962 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | Unknown | 6/14/1962 | 6/14/1963 | 6/14/1962 | 6/14/1963 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | Unknown | 6/14/1963 | 6/14/1964 | 6/14/1963 | 6/14/1964 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | Unknown | 6/14/1964 | 6/14/1965 | 6/14/1964 | 6/14/1965 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | SBL 4 53 60 | 6/14/1965 | 6/14/1966 | 6/14/1965 | 6/14/1966 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | SBL 4 53 60 | 6/14/1966 | 6/14/1967 | 6/14/1966 | 6/14/1967 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | SBL 4 53 60 | 6/14/1967 | 6/14/1968 | 6/14/1967 | 6/14/1968 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | SBL 50403 | 6/14/1968 | 6/14/1969 | 6/14/1968 | 6/14/1969 | | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | SBL 50403 | 6/14/1969 | 6/14/1970 | 6/14/1969 | 6/14/1970 | | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | SBL 50403 | 6/14/1970 | 6/14/1971 | 6/14/1970 | 6/14/1971 | | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | Insurance Company of North America | SBL 5 15 57 | 6/14/1971 | 6/14/1972 | 6/14/1971 | 6/14/1972 | | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 35 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220186 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Ridgewood and Glen Rock 1922-1997 (359) | New Hampshire Insurance Company | GLA 282471 | 3/1/1977 | 3/1/1978 | 3/1/1977 | 3/1/1978 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Robert Treat 1933-1976 (349) | Insurance Company of North America | SBL 4 53 71 | 5/13/1965 | 5/13/1966 | 5/13/1965 | 5/13/1966 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Robert Treat 1933-1976 (349) | Insurance Company of North America | SBL 4 53 71 | 5/13/1966 | 5/13/1967 | 5/13/1966 | 5/13/1967 | | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Robert Treat 1933-1976 (349) | Insurance Company of North America | SBL 4 53 71 | 5/13/1967 | 5/13/1968 | 5/13/1967 | 5/13/1968 | | Unknown | Unknown | Unknown | Unknown | SE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Northern New Jersey (333): Robert Treat 1933-1976 (349) | Insurance Company of North America | SBL 4 69 44 | 5/13/1968 | 5/13/1969 | 5/13/1968 | 5/13/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Robert Treat 1933-1976 (349) | Insurance Company of North America | SBL 4 69 44 | 5/13/1969 | 5/13/1970 | 5/13/1969 | 5/13/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Robert Treat 1933-1976 (349) | Insurance Company of North America | SBL 4 69 44 | 5/13/1970 | 5/13/1971 | 5/13/1970 | 5/13/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Robert Treat 1933-1976 (349) | Insurance Company of North America | SBL 5 15 44 | 5/13/1971 | 5/13/1972 | 5/13/1971 | 5/13/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Robert Treat 1933-1976 (349) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Robert Treat 1933-1976 (349) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220182 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Tamarack 1935-1986 (333) | Insurance Company of North America | SBL 45388 | 6/1/1966 | 6/1/1967 | 6/1/1966 | 6/1/1967 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Tamarack 1935-1986 (333) | Insurance Company of North America | SBL 45388 | 6/1/1967 | 6/1/1968 | 6/1/1967 | 6/1/1968 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Tamarack 1935-1986 (333) | Insurance Company of North America | SBL 45388 | 6/1/1968 | 6/1/1969 | 6/1/1968 | 6/1/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Tamarack 1935-1986 (333) | Insurance Company of North America | SBL 5 11 86 | 6/1/1969 | 6/1/1970 | 6/1/1969 | 6/1/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Tamarack 1935-1986 (333) | Insurance Company of North America | SBL 5 11 86 | 6/1/1970 | 6/1/1971 | 6/1/1970 | 6/1/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Tamarack 1935-1986 (333) | Insurance Company of North America | SBL 5 11 86 | 6/1/1971 | 6/1/1972 | 6/1/1971 | 6/1/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Tamarack 1935-1986 (333) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Tamarack 1935-1986 (333) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 37 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Tamarack 1935-1986 (333) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Tamarack 1935-1986 (333) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern New Jersey (333): Tamarack 1935-1986 (333) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220188 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern New Jersey (333): Tamarack 1935-1986 (333) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northern Star (250): Indianhead Council 1955-2005 (295) | St. Paul Fire and Marine Insurance Company | 766JH0451 | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Indianhead Council 1955-2005 (295) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Indianhead Council 1955-2005 (295) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1963 | 1/1/1964 | 1/1/1963 | 1/1/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Indianhead Council 1955-2005 (295) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Indianhead Council 1955-2005 (295) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Indianhead Council 1955-2005 (295) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Indianhead Council 1955-2005 (295) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Indianhead Council 1955-2005 (295) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Indianhead Council 1955-2005 (295) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Indianhead Council 1955-2005 (295) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Indianhead Council 1955-2005 (295) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Indianhead Council 1955-2005 (295) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Indianhead Council 1955-2005 (295) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Indianhead Council 1955-2005 (295) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Indianhead Council 1955-2005 (295) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 04 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern Star (250): Indianhead Council 1955-2005 (295) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern Star (250): Indianhead Council 1955-2005 (295) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220154 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern Star (250): Indianhead Council 1955-2005 (295) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northern Star (250): Viking 1951-2005 (289) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Viking 1951-2005 (289) | Insurance Company of North America | Unknown | 1/1/1957 | 1/1/1958 | 1/1/1957 | 1/1/1958 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Viking 1951-2005 (289) | Insurance Company of North America | Unknown | 1/1/1958 | 1/1/1959 | 1/1/1958 | 1/1/1959 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Viking 1951-2005 (289) | Insurance Company of North America | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Viking 1951-2005 (289) | Insurance Company of North America | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Viking 1951-2005 (289) | Insurance Company of North America | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Viking 1951-2005 (289) | Insurance Company of North America | XUA 1461 | 7/1/1961 | 9/1/1961 | 7/1/1961 | 9/1/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Viking 1951-2005 (289) | Insurance Company of North America | Unknown | 9/1/1961 | 9/1/1962 | 9/1/1961 | 9/1/1962 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Viking 1951-2005 (289) | Insurance Company of North America | Unknown | 9/1/1962 | 9/1/1963 | 9/1/1962 | 9/1/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Viking 1951-2005 (289) | Insurance Company of North America | Unknown | 9/1/1963 | 9/1/1964 | 9/1/1963 | 9/1/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Viking 1951-2005 (289) | Insurance Company of North America | Unknown | 9/1/1964 | 9/1/1965 | 9/1/1964 | 9/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Viking 1951-2005 (289) | Insurance Company of North America | Unknown | 9/1/1965 | 6/1/1966 | 9/1/1965 | 6/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Viking 1951-2005 (289) | Insurance Company of North America | SBL-3-70-25 | 6/18/1966 | 6/18/1967 | 6/18/1966 | 6/18/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Viking 1951-2005 (289) | Insurance Company of North America | SBL 4 46 20 | 6/18/1967 | 6/18/1968 | 6/18/1967 | 6/18/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Northern Star (250): Viking 1951-2005 (289) | Insurance Company of North America | SBL 4 46 38 | 6/18/1968 | 6/18/1969 | 6/18/1968 | 6/18/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northern Star (250): Viking 1951-2005 (289) | Insurance Company of North America | SBL 4 46 48 | 6/18/1969 | 6/18/1970 | 6/18/1969 | 6/18/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northern Star (250): Viking 1951-2005 (289) | Insurance Company of North America | SBL 44669 | 6/18/1970 | 6/18/1971 | 6/18/1970 | 6/18/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northern Star (250): Viking 1951-2005 (289) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 01 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern Star (250): Viking 1951-2005 (289) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern Star (250): Viking 1951-2005 (289) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220151 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northern Star (250): Viking 1951-2005 (289) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northwest Georgia (100): Northwest Georgia (100) | Insurance Company of North America | SBL 4 88 35 | 7/29/1970 | 7/29/1971 | 7/29/1970 | 7/29/1971 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Northwest Georgia (100): Northwest Georgia (100) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 94 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northwest Georgia (100): Northwest Georgia (100) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northwest Georgia (100): Northwest Georgia (100) | Hartford Accident and Indemnity Company | SMP 267512 | 1/21/1976 | 3/9/1976 | 1/21/1976 | 3/9/1976 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Northwest Georgia (100): Northwest Georgia (100) | Hartford Accident and Indemnity Company | SMP 267512 | 3/9/1976 | 1/21/1977 | 3/9/1976 | 1/21/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northwest Georgia (100): Northwest Georgia (100) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219942 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northwest Georgia (100): Northwest Georgia (100) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northwest Georgia (100): Northwest Georgia (100) | Hartford Accident and Indemnity Company | SMP 267512 | 1/21/1977 | 12/13/1978 | 1/21/1977 | 12/13/1978 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Northwest Texas (587): Northwest Texas (587) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 92 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northwest Texas (587): Northwest Texas (587) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northwest Texas (587): Northwest Texas (587) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220223 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Northwest Texas (587): Northwest Texas (587) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Norwela (215): Norwela (215) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 62 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Norwela (215): Norwela (215) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Norwela (215): Norwela (215) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220110 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Norwela (215): Norwela (215) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Norwela (215): Norwela (215) | National Fire Insurance Company of Hartford | 8167481043 | 3/26/1999 | 3/26/2000 | 3/26/1999 | 3/26/2000 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Norwela (215): Norwela (215) | National Fire Insurance Company of Hartford | 8167481043 | 3/26/2000 | 3/26/2001 | 3/26/2000 | 3/26/2001 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Occoneechee (421): Occoneechee (421) | Continental Casualty Company | SRD-5545449 | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Occoneechee (421): Occoneechee (421) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 89 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Occoneechee (421): Occoneechee (421) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Occoneechee (421): Occoneechee (421) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220063 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Occoneechee (421): Occoneechee (421) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Ohio River Valley (619): Fort Steuben Area 1929-1991 (459) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 12 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Ohio River Valley (619): Fort Steuben Area 1929-1991 (459) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Ohio River Valley (619): Fort Steuben Area 1929-1991 (459) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220065 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Ohio River Valley (619): Fort Steuben Area 1929-1991 (459) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Ohio River Valley (619): Fort Steuben Area 1929-1991 (459) | Insurance Company of North America | AGP 00 05 96 68 1 | 4/19/1977 | 1/2/1978 | 4/19/1977 | 1/2/1978 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Ohio River Valley (619): National Trail 1966-1991 (619) | Insurance Company of North America | SBL 43230 | 6/15/1967 | 6/15/1968 | 6/15/1967 | 6/15/1968 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Ohio River Valley (619): National Trail 1966-1991 (619) | Insurance Company of North America | SBL 43259 | 6/15/1968 | 6/15/1969 | 6/15/1968 | 6/15/1969 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Ohio River Valley (619): National Trail 1966-1991 (619) | Insurance Company of North America | SBL 43259 | 6/15/1969 | 6/15/1970 | 6/15/1969 | 6/15/1970 | $    - | $  250,000.00 | $  250,000.00 | Unknown | Unknown | PE |
| Ohio River Valley (619): National Trail 1966-1991 (619) | Insurance Company of North America | SBL 43259 | 6/15/1970 | 6/15/1971 | 6/15/1970 | 6/15/1971 | $    - | $  250,000.00 | $  250,000.00 | Unknown | Unknown | PE |
| Ohio River Valley (619): National Trail 1966-1991 (619) | Insurance Company of North America | SBL 43259 | 6/15/1971 | 6/15/1972 | 6/15/1971 | 6/15/1972 | $    - | $  250,000.00 | $  250,000.00 | Unknown | Unknown | PE |
| Ohio River Valley (619): National Trail 1966-1991 (619) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Ohio River Valley (619): National Trail 1966-1991 (619) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 40 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $  500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Ohio River Valley (619): National Trail 1966-1991 (619) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Ohio River Valley (619): National Trail 1966-1991 (619) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Ohio River Valley (619): National Trail 1966-1991 (619) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220256 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $  500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Ohio River Valley (619): National Trail 1966-1991 (619) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Old Hickory (427): Old Hickory (427) | Hartford Accident and Indemnity Company | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Old Hickory (427): Old Hickory (427) | Hartford Accident and Indemnity Company | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Old Hickory (427): Old Hickory (427) | Hartford Accident and Indemnity Company | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Old Hickory (427): Old Hickory (427) | Hartford Accident and Indemnity Company | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Old Hickory (427): Old Hickory (427) | Hartford Accident and Indemnity Company | Unknown | 1/1/1963 | 1/1/1964 | 1/1/1963 | 1/1/1964 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Old Hickory (427): Old Hickory (427) | Hartford Accident and Indemnity Company | Unknown | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Old Hickory (427): Old Hickory (427) | Hartford Accident and Indemnity Company | Unknown | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Old Hickory (427): Old Hickory (427) | Hartford Accident and Indemnity Company | Unknown | 1/1/1966 | 1/1/1966 | 1/1/1966 | 1/1/1967 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Old Hickory (427): Old Hickory (427) | Insurance Company of North America | SBL 51025 | 2/28/1969 | 2/28/1970 | 2/28/1969 | 2/28/1970 | $    - | $  250,000.00 | $  250,000.00 | Unknown | Unknown | SE |
| Old Hickory (427): Old Hickory (427) | Insurance Company of North America | SBL 52588 | 2/28/1970 | 2/28/1971 | 2/28/1970 | 2/28/1971 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Old Hickory (427): Old Hickory (427) | Insurance Company of North America | SBL 53595 | 2/28/1971 | 2/28/1972 | 2/28/1971 | 2/28/1972 | $    - | $  250,000.00 | $  250,000.00 | Unknown | Unknown | PE |
| Old Hickory (427): Old Hickory (427) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 92 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $  500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Old Hickory (427): Old Hickory (427) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Old Hickory (427): Old Hickory (427) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Old Hickory (427): Old Hickory (427) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220045 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $  500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Old Hickory (427): Old Hickory (427) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Old North State (70): Cherokee 1923-1994 (417) | Insurance Company of North America | SBL 50252 | 6/9/1968 | 6/9/1969 | 6/9/1968 | 6/9/1969 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Old North State (70): Cherokee 1923-1994 (417) | Insurance Company of North America | SBL 51056 | 6/9/1969 | 6/9/1970 | 6/9/1969 | 6/9/1970 | $    - | $  250,000.00 | $  250,000.00 | Unknown | Unknown | PE |
| Old North State (70): Cherokee 1923-1994 (417) | Insurance Company of North America | SBL S 26 52 | 6/9/1970 | 6/9/1971 | 6/9/1970 | 6/9/1971 | $    - | $  250,000.00 | $  250,000.00 | Unknown | Unknown | PE |
| Old North State (70): Cherokee 1923-1994 (417) | United States Fidelity and Guaranty Company | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Old North State (70): Cherokee 1923-1994 (417) | United States Fidelity and Guaranty Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Old North State (70): Cherokee 1923-1994 (417) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Old North State (70): Cherokee 1923-1994 (417) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 83 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $  500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Old North State (70): Cherokee 1923-1994 (417) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Old North State (70): Cherokee 1923-1994 (417) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220036 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $  500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Old North State (70): Cherokee 1923-1994 (417) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Old North State (70): General Greene 1947-1992 (418) | Insurance Company of North America | SBL S 10 55 | 4/24/1969 | 4/24/1970 | 4/24/1969 | 4/24/1970 | $    - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Old North State (70): General Greene 1947-1992 (418) | Insurance Company of North America | SBL 52627 | 4/24/1970 | 4/24/1971 | 4/24/1970 | 4/24/1971 | $    - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Old North State (70): General Greene 1947-1992 (418) | Insurance Company of North America | SBL 53619 | 4/24/1971 | 4/24/1972 | 4/24/1971 | 4/24/1972 | $    - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Old North State (70): General Greene 1947-1992 (418) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 87 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $  500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Old North State (70): General Greene 1947-1992 (418) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Old North State (70): General Greene 1947-1992 (418) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220040 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $  500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Old North State (70): General Greene 1947-1992 (418) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Old North State (70): Uwharrie 1923-1992 (419) | Insurance Company of North America | SBL S 11 92 | 5/29/1969 | 5/29/1970 | 5/29/1969 | 5/29/1970 | $    - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Old North State (70): Uwharrie 1923-1992 (419) | Insurance Company of North America | SBL S 11 92 | 5/29/1970 | 5/29/1971 | 5/29/1970 | 5/29/1971 | $    - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Old North State (70): Uwharrie 1923-1992 (419) | Insurance Company of North America | SBL S 11 92 | 5/29/1971 | 5/29/1972 | 5/29/1971 | 5/29/1972 | $    - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Old North State (70): Uwharrie 1923-1992 (419) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 88 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $  500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Old North State (70): Uwharrie 1923-1992 (419) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Old North State (70): Uwharrie 1923-1992 (419) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220041 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $  500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Old North State (70): Uwharrie 1923-1992 (419) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Orange County (39): North Orange 1965-1972 (37) | Insurance Company of North America | SBL 4 59 03 | 12/1/1968 | 12/1/1969 | 12/1/1968 | 12/1/1969 | $    - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Orange County (39): North Orange 1965-1972 (37) | Insurance Company of North America | SBL 4 59 03 | 12/1/1969 | 12/1/1970 | 12/1/1969 | 12/1/1970 | $    - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Orange County (39): North Orange 1965-1972 (37) | Insurance Company of North America | SBL 4 59 03 | 12/1/1970 | 12/1/1971 | 12/1/1970 | 12/1/1971 | $    - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Orange County (39): North Orange 1965-1972 (37) | New Hampshire Insurance Company | GLA 424946 | 1/1/1972 | 8/15/1972 | 1/1/1972 | 8/15/1972 | $    - | Unknown | Unknown | Unknown | Unknown | PE |
| Orange County (39): Orange County 1972 - (39) |  | 837484 | 8/15/1972 | 1/1/1973 | 8/15/1972 | 1/1/1973 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Orange County (39): Orange County 1972 - (39) | New Hampshire Insurance Company | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Orange County (39): Orange County 1972 - (39) | New Hampshire Insurance Company | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Orange County (39): Orange County 1972 - (39) | New Hampshire Insurance Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Orange County (39): Orange County 1972 - (39) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Orange County (39): Orange County 1972 - (39) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 54 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $  500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Orange County (39): Orange County 1972 - (39) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Orange County (39): Orange County 1972 - (39) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Orange County (39): Orange County 1972 - (39) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219902 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $  500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Orange County (39): Orange County 1972 - (39) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Orange County (39): Orange Empire Area 1944-1972 (39) | New Hampshire Insurance Company | Unknown | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Orange County (39): Orange Empire Area 1944-1972 (39) | Pacific Insurance Company | Unknown | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Oregon Trail (697): Oregon Trail (697) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 26 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $  500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Oregon Trail (697): Oregon Trail (697) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Oregon Trail (697): Oregon Trail (697) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220081 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $  500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Oregon Trail (697): Oregon Trail (697) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Overland Trails (322): Overland Trails 1993- (322) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 18 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $  500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Overland Trails (322): Overland Trails 1993- (322) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Overland Trails (322): Tri-Trails 1954-1993 (323) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 20 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $  500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Overland Trails (322): Tri-Trails 1954-1993 (323) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Overland Trails (322): Tri-Trails 1954-1993 (323) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220172 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $  500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Overland Trails (322): Tri-Trails 1954-1993 (323) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Ozark Trails (306): Mo-Kan Area 1929-1994 (306) | Insurance Company of North America | SBL 55587 | 6/15/1971 | 6/15/1972 | 6/15/1971 | 6/15/1972 | $    - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Ozark Trails (306): Mo-Kan Area 1929-1994 (306) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Ozark Trails (306): Mo-Kan Area 1929-1994 (306) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 13 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $  500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Ozark Trails (306): Mo-Kan Area 1929-1994 (306) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Ozark Trails (306): Mo-Kan Area 1929-1994 (306) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Ozark Trails (306): Mo-Kan Area 1929-1994 (306) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220163 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $  500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Ozark Trails (306): Mo-Kan Area 1929-1994 (306) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Ozark Trails (306): Ozarks 1966-1994 (308) | Great American Insurance Company | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Ozark Trails (306): Ozarks 1966-1994 (308) | Great American Insurance Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Ozark Trails (306): Ozarks 1966-1994 (308) | Great American Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $    - | Unknown | Unknown | Unknown | Unknown | SE |
| Ozark Trails (306): Ozarks 1966-1994 (308) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 16 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $  500,000.00 | $  1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Ozark Trails (306): Ozarks 1966-1994 (308) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Ozark Trails (306): Ozarks 1966-1994 (308) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220167 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Ozark Trails (306): Ozarks 1966-1994 (308) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | | Unknown | PE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | Unknown | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | Unknown | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | Unknown | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | Unknown | Unknown | 1/1/1963 | 1/1/1964 | 1/1/1963 | 1/1/1964 | | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | Unknown | Unknown | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | Unknown | Unknown | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | Unknown | Unknown | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | Unknown | Unknown | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | Unknown | Unknown | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | $100,000.00 | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | Unknown | Unknown | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | Unknown | Unknown | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | Unknown | Unknown | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | $100,000.00 | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | Unknown | Unknown | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | Unknown | Unknown | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | Unknown | Unknown | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $100,000.00 | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | Unknown | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | Unknown | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $500,000.00 | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | Unknown | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | Unknown | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $500,000.00 | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | Unknown | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | Unknown | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $500,000.00 | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | Unknown | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | Unknown | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $500,000.00 | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | Unknown | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 26 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | Unknown | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220245 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Pacific Harbors (612): Mount Rainier 1948-1993 (612) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | | Unknown | PE |
| Pacific Harbors (612): Tumwater Area 1934-1993 (737) | Insurance Company of North America | SBL 50443 | 2/16/1969 | 2/16/1970 | 2/16/1969 | 2/16/1970 | | $500,000.00 | $500,000.00 | | Unknown | PE |
| Pacific Harbors (612): Tumwater Area 1934-1993 (737) | Insurance Company of North America | SBL 50443 | 2/16/1970 | 2/16/1971 | 2/16/1970 | 2/16/1971 | | $500,000.00 | $500,000.00 | | Unknown | PE |
| Pacific Harbors (612): Tumwater Area 1934-1993 (737) | Insurance Company of North America | SBL 50443 | 2/16/1971 | 2/16/1972 | 2/16/1971 | 2/16/1972 | | $500,000.00 | $500,000.00 | | Unknown | PE |
| Pacific Harbors (612): Tumwater Area 1934-1993 (737) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 23 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Pacific Harbors (612): Tumwater Area 1934-1993 (737) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Pacific Harbors (612): Tumwater Area 1934-1993 (737) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220242 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Pacific Harbors (612): Tumwater Area 1934-1993 (737) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | | Unknown | PE |
| Pacific Harbors (612): Tumwater Area 1934-1993 (737) | Charter Oak Fire Insurance Company | 650-186E164-7-COF-77 | 6/12/1977 | 6/12/1978 | 6/12/1977 | 6/12/1978 | | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Twin Harbors Area 1930-1993 (607) | Insurance Company of North America | SBL 51197 | 10/1/1969 | 10/1/1970 | 10/1/1969 | 10/1/1970 | | $500,000.00 | $500,000.00 | | Unknown | PE |
| Pacific Harbors (612): Twin Harbors Area 1930-1993 (607) | Insurance Company of North America | SBL 51197 | 10/1/1970 | 10/1/1971 | 10/1/1970 | 10/1/1971 | | $500,000.00 | $500,000.00 | | Unknown | PE |
| Pacific Harbors (612): Twin Harbors Area 1930-1993 (607) | Insurance Company of North America | SBL 51197 | 10/1/1971 | 10/1/1972 | 10/1/1971 | 10/1/1972 | | $500,000.00 | $500,000.00 | | Unknown | PE |
| Pacific Harbors (612): Twin Harbors Area 1930-1993 (607) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Twin Harbors Area 1930-1993 (607) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 22 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Pacific Harbors (612): Twin Harbors Area 1930-1993 (607) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Pacific Harbors (612): Twin Harbors Area 1930-1993 (607) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | | Unknown | Unknown | | Unknown | SE |
| Pacific Harbors (612): Twin Harbors Area 1930-1993 (607) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | | $500,000.00 | $500,000.00 | | Unknown | SE |
| Pacific Harbors (612): Twin Harbors Area 1930-1993 (607) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220241 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Pacific Harbors (612): Twin Harbors Area 1930-1993 (607) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | | Unknown | PE |
| Pacific Skyline (31): San Mateo County 1932-1994 (20) | Insurance Company of North America | SBL 5 04 42 | 1/19/1969 | 1/19/1970 | 1/19/1969 | 1/19/1970 | | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Pacific Skyline (31): San Mateo County 1932-1994 (20) | Insurance Company of North America | SBL 5 04 42 | 1/19/1970 | 1/19/1971 | 1/19/1970 | 1/19/1971 | | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Pacific Skyline (31): San Mateo County 1932-1994 (20) | Insurance Company of North America | SBL 5 04 42 | 1/19/1971 | 1/19/1972 | 1/19/1971 | 1/19/1972 | | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Pacific Skyline (31): San Mateo County 1932-1994 (20) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | | Unknown | Unknown | | Unknown | SE |
| Pacific Skyline (31): San Mateo County 1932-1994 (20) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 52 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Pacific Skyline (31): San Mateo County 1932-1994 (20) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Pacific Skyline (31): San Mateo County 1932-1994 (20) | New Hampshire Insurance Company | GLA 282420 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | | Unknown | Unknown | | Unknown | SE |
| Pacific Skyline (31): San Mateo County 1932-1994 (20) | New Hampshire Insurance Company | GLA 282421 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $50,000.00 | Unknown | Unknown | | Unknown | SE |
| Pacific Skyline (31): San Mateo County 1932-1994 (20) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219900 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Pacific Skyline (31): San Mateo County 1932-1994 (20) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | | Unknown | PE |
| Pacific Skyline (31): Stanford Area 1940-1994 (31) | Insurance Company of North America | SBL 48595 | 2/18/1965 | 2/18/1966 | 2/18/1965 | 2/18/1966 | | Unknown | Unknown | | Unknown | SE |
| Pacific Skyline (31): Stanford Area 1940-1994 (31) | Insurance Company of North America | SBL 48595 | 2/18/1966 | 2/18/1967 | 2/18/1966 | 2/18/1967 | | Unknown | Unknown | | Unknown | SE |
| Pacific Skyline (31): Stanford Area 1940-1994 (31) | Insurance Company of North America | SBL 48595 | 2/18/1967 | 2/18/1968 | 2/18/1967 | 2/18/1968 | | Unknown | Unknown | | Unknown | SE |
| Pacific Skyline (31): Stanford Area 1940-1994 (31) | Insurance Company of North America | SBL 46904 | 2/18/1968 | 2/18/1969 | 2/18/1968 | 2/18/1969 | | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Pacific Skyline (31): Stanford Area 1940-1994 (31) | Insurance Company of North America | SBL 46904 | 2/18/1969 | 2/18/1970 | 2/18/1969 | 2/18/1970 | | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Pacific Skyline (31): Stanford Area 1940-1994 (31) | Insurance Company of North America | SBL 46904 | 2/18/1970 | 2/18/1971 | 2/18/1970 | 2/18/1971 | | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Pacific Skyline (31): Stanford Area 1940-1994 (31) | Insurance Company of North America | SBL 51509 | 2/18/1971 | 2/18/1972 | 2/18/1971 | 2/18/1972 | | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Pacific Skyline (31): Stanford Area 1940-1994 (31) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | | Unknown | Unknown | | Unknown | SE |
| Pacific Skyline (31): Stanford Area 1940-1994 (31) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 42 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Pacific Skyline (31): Stanford Area 1940-1994 (31) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Pacific Skyline (31): Stanford Area 1940-1994 (31) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219890 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Pacific Skyline (31): Stanford Area 1940-1994 (31) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | | Unknown | PE |
| Pacific Skyline (31): Stanford Area 1940-1994 (31) | Insurance Company of North America | GAL 34 32 31 | 2/18/1977 | 2/18/1978 | 2/18/1977 | 2/18/1978 | | $500,000.00 | $500,000.00 | | Unknown | PE |
| Palmetto (549): Palmetto (549) | Insurance Company of North America | SBL 51054 | 7/1/1967 | 7/1/1968 | 7/1/1968 | 7/1/1969 | | Unknown | Unknown | | Unknown | SE |
| Palmetto (549): Palmetto (549) | Insurance Company of North America | SBL 51087 | 7/1/1968 | 7/1/1969 | 7/1/1968 | 7/1/1969 | | $250,000.00 | $250,000.00 | | Unknown | PE |
| Palmetto (549): Palmetto (549) | Insurance Company of North America | SBL 52670 | 7/1/1970 | 7/1/1971 | 7/1/1970 | 7/1/1971 | | $250,000.00 | $250,000.00 | | Unknown | PE |
| Palmetto (549): Palmetto (549) | Insurance Company of North America | SBL 53661 | 7/1/1971 | 7/1/1972 | 7/1/1971 | 7/1/1972 | | $250,000.00 | $250,000.00 | | Unknown | PE |
| Palmetto (549): Palmetto (549) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 60 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Palmetto (549): Palmetto (549) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Palmetto (549): Palmetto (549) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220282 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Palmetto (549): Palmetto (549) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $1,500,000.00 | $500,000.00 | $500,000.00 | | Unknown | PE |
| Pathway to Adventure (456): Calumet 1965-2016 (152) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 34 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Pathway to Adventure (456): Calumet 1965-2016 (152) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $1,500,000.00 | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |
| Pathway to Adventure (456): Calumet 1965-2016 (152) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219980 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $500,000.00 | $1,000,000.00 | $1,000,000.00 | | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Pathway to Adventure (456): Calumet 1965-2016 (152) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Calumet 1965-2016 (152) | National Fire Insurance Company of Hartford | B 209770749 | 4/23/2007 | 4/23/2008 | 4/23/2007 | 4/23/2008 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Calumet 1965-2016 (152) | Continental Insurance Company | B 2097703749 | 4/23/2008 | 4/23/2009 | 4/23/2008 | 4/23/2009 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Calumet 1965-2016 (152) | Continental Insurance Company | B 2097703749 | 4/23/2009 | 4/23/2010 | 4/23/2009 | 4/23/2010 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Chicago Area 1930-2016 (118) | Insurance Company of North America | SBL-2-50-05 | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pathway to Adventure (456): Chicago Area 1930-2016 (118) | Insurance Company of North America | SBL-2-50-63 | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Chicago Area 1930-2016 (118) | Insurance Company of North America | SBL-2-51-31 | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Chicago Area 1930-2016 (118) | Insurance Company of North America | SBL 25162 | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Chicago Area 1930-2016 (118) | Insurance Company of North America | SBL 51835 | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Chicago Area 1930-2016 (118) | Insurance Company of North America | SBL 5 18 50 | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Chicago Area 1930-2016 (118) | Insurance Company of North America | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pathway to Adventure (456): Chicago Area 1930-2016 (118) | Unknown | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pathway to Adventure (456): Chicago Area 1930-2016 (118) | Unknown | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pathway to Adventure (456): Chicago Area 1930-2016 (118) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pathway to Adventure (456): Chicago Area 1930-2016 (118) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 11 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Chicago Area 1930-2016 (118) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Chicago Area 1930-2016 (118) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 9/12/1977 | 1/1/1977 | 9/12/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pathway to Adventure (456): Chicago Area 1930-2016 (118) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219958 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Chicago Area 1930-2016 (118) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Chicago Area 1930-2016 (118) | Illinois Employers Insurance of Wausau | 77-GA 14332 | 9/12/1977 | 9/12/1978 | 9/12/1977 | 9/12/1978 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | SE |
| Pathway to Adventure (456): Northwest Suburban 1926-2016 (751) | Insurance Company of North America | SBL 52763 | 5/13/1971 | 5/13/1972 | 5/13/1971 | 5/13/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Northwest Suburban 1926-2016 (751) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 08 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Northwest Suburban 1926-2016 (751) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Northwest Suburban 1926-2016 (751) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219955 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Northwest Suburban 1926-2016 (751) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Pathway to Adventure (456) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Pathway to Adventure (456) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Thatcher Woods Area 1941-1993 (136) | Insurance Company of North America | SBL-2-49-60 | 4/2/1965 | 4/2/1966 | 4/2/1965 | 4/2/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pathway to Adventure (456): Thatcher Woods Area 1941-1993 (136) | Insurance Company of North America | SBL 2 50 73 | 4/2/1966 | 4/2/1967 | 4/2/1966 | 4/2/1967 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Thatcher Woods Area 1941-1993 (136) | Insurance Company of North America | SBL 2 50 73 | 4/2/1967 | 4/2/1968 | 4/2/1967 | 4/2/1968 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Thatcher Woods Area 1941-1993 (136) | Insurance Company of North America | SBL 25148 | 4/2/1968 | 4/2/1969 | 4/2/1968 | 4/2/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Thatcher Woods Area 1941-1993 (136) | Insurance Company of North America | SBL 51801 | 4/2/1969 | 4/2/1970 | 4/2/1969 | 4/2/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Thatcher Woods Area 1941-1993 (136) | Insurance Company of North America | SBL 51825 | 4/2/1970 | 4/2/1971 | 4/2/1970 | 4/2/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Thatcher Woods Area 1941-1993 (136) | Insurance Company of North America | SBL 51856 | 4/2/1971 | 4/2/1972 | 4/2/1971 | 4/2/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Thatcher Woods Area 1941-1993 (136) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pathway to Adventure (456): Thatcher Woods Area 1941-1993 (136) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 21 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Thatcher Woods Area 1941-1993 (136) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Thatcher Woods Area 1941-1993 (136) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pathway to Adventure (456): Thatcher Woods Area 1941-1993 (136) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219967 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): Thatcher Woods Area 1941-1993 (136) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): West Suburban 1918-1993 (147) | Insurance Company of North America | SBL 45369 | 10/1/1966 | 10/1/1966 | 10/1/1966 | 10/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pathway to Adventure (456): West Suburban 1918-1993 (147) | Insurance Company of North America | SBL 45369 | 10/1/1966 | 10/1/1967 | 10/1/1966 | 10/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pathway to Adventure (456): West Suburban 1918-1993 (147) | Insurance Company of North America | SBL 45369 | 10/1/1967 | 10/1/1968 | 10/1/1967 | 10/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pathway to Adventure (456): West Suburban 1918-1993 (147) | Insurance Company of North America | SBL 50419 | 10/1/1968 | 10/1/1969 | 10/1/1968 | 10/1/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): West Suburban 1918-1993 (147) | Insurance Company of North America | SBL 50419 | 10/1/1969 | 10/1/1970 | 10/1/1969 | 10/1/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): West Suburban 1918-1993 (147) | Insurance Company of North America | SBL 50419 | 10/1/1970 | 10/1/1971 | 10/1/1970 | 10/1/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): West Suburban 1918-1993 (147) | Federal Insurance Company | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pathway to Adventure (456): West Suburban 1918-1993 (147) | Federal Insurance Company | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ 500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Pathway to Adventure (456): West Suburban 1918-1993 (147) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pathway to Adventure (456): West Suburban 1918-1993 (147) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 19 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): West Suburban 1918-1993 (147) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): West Suburban 1918-1993 (147) | New Hampshire Insurance Company | SLP275526CN137 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pathway to Adventure (456): West Suburban 1918-1993 (147) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219965 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pathway to Adventure (456): West Suburban 1918-1993 (147) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Patriots Path (358): Morris-Sussex 1936-1999 (343) | Camden Fire Insurance Association | SMP 419016 | 2/1/1975 | 2/1/1976 | 2/1/1975 | 2/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Morris-Sussex 1936-1999 (343) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 27 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Patriots Path (358): Morris-Sussex 1936-1999 (343) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Patriots Path (358): Morris-Sussex 1936-1999 (343) | Camden Fire Insurance Association | SMP 419016 | 2/1/1976 | 2/1/1977 | 2/1/1976 | 2/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Morris-Sussex 1936-1999 (343) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220179 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Patriots Path (358): Morris-Sussex 1936-1999 (343) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Patriots Path (358): Morris-Sussex 1936-1999 (343) | Camden Fire Insurance Association | SMP 419016 | 2/1/1977 | 2/1/1978 | 2/1/1977 | 2/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Union 1928-1980 (338) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 29 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Patriots Path (358): Union 1928-1980 (338) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Patriots Path (358): Union 1928-1980 (338) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220181 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Patriots Path (358): Union 1928-1980 (338) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | 2115 | 1/27/1945 | 1/27/1946 | 1/27/1945 | 1/27/1946 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | 2115 | 1/27/1946 | 1/27/1947 | 1/27/1946 | 1/27/1947 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | 2115 | 1/27/1947 | 1/27/1948 | 1/27/1947 | 1/27/1948 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | Unknown | 1/27/1948 | 1/27/1949 | 1/27/1948 | 1/27/1949 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | Unknown | 1/27/1949 | 1/27/1950 | 1/27/1949 | 1/27/1950 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | Unknown | 1/27/1950 | 1/27/1951 | 1/27/1950 | 1/27/1951 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | Unknown | 1/27/1951 | 1/27/1952 | 1/27/1951 | 1/27/1952 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | Unknown | 1/27/1952 | 1/27/1953 | 1/27/1952 | 1/27/1953 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | Unknown | 1/27/1953 | 1/27/1954 | 1/27/1953 | 1/27/1954 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | Unknown | 1/27/1954 | 1/27/1955 | 1/27/1954 | 1/27/1955 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | Unknown | 1/27/1955 | 1/27/1956 | 1/27/1955 | 1/27/1956 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | Unknown | 1/27/1956 | 1/27/1957 | 1/27/1956 | 1/27/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | Unknown | 1/27/1957 | 1/27/1958 | 1/27/1957 | 1/27/1958 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | Unknown | 1/27/1958 | 1/27/1959 | 1/27/1958 | 1/27/1959 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | Unknown | 1/27/1959 | 1/27/1960 | 1/27/1959 | 1/27/1960 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | Unknown | 1/27/1960 | 1/27/1961 | 1/27/1960 | 1/27/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | Unknown | 1/27/1961 | 1/27/1962 | 1/27/1961 | 1/27/1962 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | Unknown | 1/27/1962 | 1/27/1963 | 1/27/1962 | 1/27/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | Unknown | 1/27/1963 | 1/27/1964 | 1/27/1963 | 1/27/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | Unknown | 1/27/1964 | 1/27/1965 | 1/27/1964 | 1/27/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | Unknown | 1/27/1965 | 1/27/1966 | 1/27/1965 | 1/27/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | Unknown | 1/27/1966 | 1/27/1967 | 1/27/1966 | 1/27/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE)* |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | Unknown | 1/27/1967 | 1/27/1968 | 1/27/1967 | 1/27/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | Unknown | 1/27/1968 | 1/27/1969 | 1/27/1968 | 1/27/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | Unknown | 1/27/1969 | 1/27/1970 | 1/27/1969 | 1/27/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | Unknown | 1/27/1970 | 3/20/1970 | 1/27/1970 | 3/20/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | GAL-16124 | 3/20/1970 | 3/20/1971 | 3/20/1970 | 3/20/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Insurance Company of North America | SBL 23690 | 5/27/1971 | 5/27/1972 | 5/27/1971 | 5/27/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 34 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Jefferson Insurance Company of New York | JE 65914 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | New Hampshire Insurance Company | GLA 332370 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | Ambassador Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 50,000.00 | $ 450,000.00 | $ 450,000.00 | Unknown | Unknown | SE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220185 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Patriots Path (358): Watchung Area 1926-1999 (358) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Pee Dee Area (552): Pee Dee Area (552) | Insurance Company of North America | SBL 4 53 56 | 7/1/1965 | 7/1/1966 | 7/1/1965 | 7/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pee Dee Area (552): Pee Dee Area (552) | Insurance Company of North America | SBL 4 53 56 | 7/1/1966 | 7/1/1967 | 7/1/1966 | 7/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pee Dee Area (552): Pee Dee Area (552) | Insurance Company of North America | SBL 4 53 56 | 7/1/1967 | 7/1/1968 | 7/1/1967 | 7/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pee Dee Area (552): Pee Dee Area (552) | Insurance Company of North America | SBL 5 04 07 | 7/1/1968 | 7/1/1969 | 7/1/1968 | 7/1/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pee Dee Area (552): Pee Dee Area (552) | Insurance Company of North America | SBL 5 04 07 | 7/1/1969 | 7/1/1970 | 7/1/1969 | 7/1/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pee Dee Area (552): Pee Dee Area (552) | Insurance Company of North America | SBL 5 04 07 | 7/1/1970 | 7/1/1971 | 7/1/1970 | 7/1/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pee Dee Area (552): Pee Dee Area (552) | Insurance Company of North America | SBL 51579 | 7/1/1971 | 7/1/1972 | 7/1/1971 | 7/1/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pee Dee Area (552): Pee Dee Area (552) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pee Dee Area (552): Pee Dee Area (552) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 58 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pee Dee Area (552): Pee Dee Area (552) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pee Dee Area (552): Pee Dee Area (552) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pee Dee Area (552): Pee Dee Area (552) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220280 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pee Dee Area (552): Pee Dee Area (552) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Pennsylvania Dutch (524): Lancaster County 1924-1971 (519) | Nationwide Mutual Insurance Company | Unknown | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pennsylvania Dutch (524): Lancaster County 1924-1971 (519) | Insurance Company of North America | Unknown | 12/31/1965 | 12/31/1966 | 12/31/1965 | 12/31/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pennsylvania Dutch (524): Lancaster County 1924-1971 (519) | Insurance Company of North America | Unknown | 12/31/1966 | 12/31/1967 | 12/31/1966 | 12/31/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pennsylvania Dutch (524): Lancaster County 1924-1971 (519) | Insurance Company of North America | Unknown | 12/31/1967 | 12/16/1968 | 12/31/1967 | 12/16/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pennsylvania Dutch (524): Lancaster County 1924-1971 (519) | Insurance Company of North America | SBL 4 85 12 | 12/16/1968 | 12/16/1969 | 12/16/1968 | 12/16/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pennsylvania Dutch (524): Lancaster County 1924-1971 (519) | Insurance Company of North America | SBL 4 85 12 | 12/16/1969 | 12/16/1970 | 12/16/1969 | 12/16/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pennsylvania Dutch (524): Lancaster County 1924-1971 (519) | Insurance Company of North America | SBL 4 85 12 | 12/16/1970 | 12/16/1971 | 12/16/1970 | 12/16/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pennsylvania Dutch (524): Lancaster-Lebanon 1971-1995 (524) | Insurance Company of North America | SBL 53073 | 4/26/1971 | 4/25/1972 | 4/26/1971 | 4/25/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Pennsylvania Dutch (524): Lancaster-Lebanon 1971-1995 (524) | Insurance Company of North America | SBL 53073 | 4/26/1972 | 4/26/1973 | 4/26/1972 | 4/26/1973 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Pennsylvania Dutch (524): Lancaster-Lebanon 1971-1995 (524) | Insurance Company of North America | XRC 9 67 55 | 11/28/1972 | 11/28/1973 | 11/28/1972 | 11/28/1973 | $ 1,000,000.00 | $ 1,500,000.00 | $ 1,500,000.00 | Unknown | Unknown | PE |
| Pennsylvania Dutch (524): Lancaster-Lebanon 1971-1995 (524) | Insurance Company of North America | SBL 53073 | 4/26/1973 | 4/26/1974 | 4/26/1973 | 4/26/1974 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Pennsylvania Dutch (524): Lancaster-Lebanon 1971-1995 (524) | Insurance Company of North America | XRC 9 67 55 | 11/28/1973 | 11/28/1974 | 11/28/1973 | 11/28/1974 | $ 1,000,000.00 | $ 1,500,000.00 | $ 1,500,000.00 | Unknown | Unknown | PE |
| Pennsylvania Dutch (524): Lancaster-Lebanon 1971-1995 (524) | Insurance Company of North America | XRC 9 67 55 | 11/28/1974 | 1/1/1975 | 11/28/1974 | 1/1/1975 | $ 1,000,000.00 | $ 1,500,000.00 | $ 1,500,000.00 | Unknown | Unknown | PE |
| Pennsylvania Dutch (524): Lancaster-Lebanon 1971-1995 (524) | Insurance Company of North America | ABC 11 69 81 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Pennsylvania Dutch (524): Lancaster-Lebanon 1971-1995 (524) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 38 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pennsylvania Dutch (524): Lancaster-Lebanon 1971-1995 (524) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pennsylvania Dutch (524): Lancaster-Lebanon 1971-1995 (524) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220093 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pennsylvania Dutch (524): Lancaster-Lebanon 1971-1995 (524) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Pennsylvania Dutch (524): Lebanon County 1924-1971 (650) | Insurance Company of North America | SBL 4 47 25 | 4/26/1967 | 4/26/1968 | 4/26/1967 | 4/26/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pennsylvania Dutch (524): Lebanon County 1924-1971 (650) | Insurance Company of North America | SBL 4 84 45 | 4/26/1968 | 4/26/1969 | 4/26/1968 | 4/26/1969 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Pennsylvania Dutch (524): Lebanon County 1924-1971 (650) | Insurance Company of North America | SBL 4 84 45 | 4/26/1969 | 4/26/1970 | 4/26/1969 | 4/26/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pennsylvania Dutch (524): Lebanon County 1924-1971 (650) | Insurance Company of North America | SBL 4 84 45 | 4/26/1970 | 4/26/1971 | 4/26/1970 | 4/26/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pennsylvania Dutch (524): Lebanon County 1924-1971 (650) | Insurance Company of North America | SBL 5 30 73 | 4/26/1971 | 4/25/1972 | 4/26/1971 | 4/25/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pennsylvania Dutch (524): Lebanon County 1924-1971 (650) | Insurance Company of North America | SBL 5 30 73 | 4/26/1972 | 4/26/1973 | 4/26/1972 | 4/26/1973 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pennsylvania Dutch (524): Lebanon County 1924-1971 (650) | Insurance Company of North America | SBL 5 30 73 | 4/26/1973 | 4/26/1974 | 4/26/1973 | 4/26/1974 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pennsylvania Dutch (524): Lebanon County 1924-1971 (650) | Insurance Company of North America | SBL 5 30 73 | 4/26/1974 | 1/1/1975 | 4/26/1974 | 1/1/1975 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Piedmont (42): Piedmont (42) | Insurance Company of North America | SBL 4 53 99 | 6/1/1967 | 6/1/1968 | 6/1/1967 | 6/1/1968 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Piedmont (42): Piedmont (42) | Insurance Company of North America | SBL 4 53 99 | 6/1/1968 | 6/1/1969 | 6/1/1968 | 6/1/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Piedmont (42): Piedmont (42) | Insurance Company of North America | SBL 4 53 99 | 6/1/1969 | 6/1/1970 | 6/1/1969 | 6/1/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Piedmont (42): Piedmont (42) | Insurance Company of North America | SBL 5 13 90 | 6/1/1970 | 6/1/1971 | 6/1/1970 | 6/1/1971 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Piedmont (42): Piedmont (42) | Insurance Company of North America | SBL 5 13 90 | 6/1/1971 | 6/1/1972 | 6/1/1971 | 6/1/1972 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Piedmont (42): Piedmont (42) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Piedmont (42): Piedmont (42) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 45 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Piedmont (42): Piedmont (42) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Piedmont (42): Piedmont (42) | New Hampshire Insurance Company | GLA 282405 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | $ 50,000.00 | $ 50,000.00 | Unknown | Unknown | SE |
| Piedmont (42): Piedmont (42) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219893 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Piedmont (42): Piedmont (42) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Piedmont (420): Piedmont (420) | Insurance Company of North America | SBL 50251 | 6/15/1968 | 6/15/1969 | 6/15/1968 | 6/15/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Piedmont (420): Piedmont (420) | Insurance Company of North America | SBL 51005 | 6/15/1969 | 6/15/1970 | 6/15/1969 | 6/15/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Piedmont (420): Piedmont (420) | Insurance Company of North America | SBL 52676 | 6/15/1970 | 6/15/1971 | 6/15/1970 | 6/15/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Piedmont (420): Piedmont (420) | Insurance Company of North America | SBL 53638 | 6/15/1971 | 6/15/1972 | 6/15/1971 | 6/15/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Piedmont (420): Piedmont (420) | New Hampshire Insurance Company | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Piedmont (420): Piedmont (420) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Piedmont (420): Piedmont (420) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 85 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Piedmont (420): Piedmont (420) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Piedmont (420): Piedmont (420) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220038 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Piedmont (420): Piedmont (420) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Piedmont (420): Piedmont (420) | St. Paul Fire and Marine Insurance Company | Unknown | 2/1/1977 | 2/1/1978 | 2/1/1977 | 2/1/1978 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Piedmont (420): Piedmont (420) | St. Paul Fire and Marine Insurance Company | Unknown | 2/1/1978 | 2/1/1979 | 2/1/1978 | 2/1/1979 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Piedmont (420): Piedmont (420) | St. Paul Fire and Marine Insurance Company | Unknown | 2/1/1979 | 2/1/1980 | 2/1/1979 | 2/1/1980 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Piedmont (420): Piedmont (420) | Aetna Casualty and Surety Company | 025 GL 214040 17 CCS | 6/15/1991 | 6/15/1992 | 6/15/1991 | 6/15/1992 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pikes Peak (60): Pikes Peak (60) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 62 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pikes Peak (60): Pikes Peak (60) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pikes Peak (60): Pikes Peak (60) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219910 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pikes Peak (60): Pikes Peak (60) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Pine Burr Area (304): Pine Burr Area (304) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pine Burr Area (304): Pine Burr Area (304) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 07 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pine Burr Area (304): Pine Burr Area (304) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pine Burr Area (304): Pine Burr Area (304) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pine Burr Area (304): Pine Burr Area (304) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220157 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE)* |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Pine Burr Area (304): Pine Burr Area (304) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Pine Tree (218): Pine Tree (218) | Hartford Accident and Indemnity Company | 04 C 154949 | 1/25/1973 | 1/25/1974 | 1/25/1973 | 1/25/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pine Tree (218): Pine Tree (218) | Hartford Accident and Indemnity Company | 04C 157992 | 1/25/1974 | 1/25/1975 | 1/25/1974 | 1/25/1975 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Pine Tree (218): Pine Tree (218) | Hartford Accident and Indemnity Company | 04 C 161230 | 1/25/1975 | 1/25/1976 | 1/25/1975 | 1/25/1976 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Pine Tree (218): Pine Tree (218) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 64 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pine Tree (218): Pine Tree (218) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pine Tree (218): Pine Tree (218) | Hartford Accident and Indemnity Company | 04C 161099 | 1/25/1976 | 1/25/1977 | 1/25/1976 | 1/25/1977 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Pine Tree (218): Pine Tree (218) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220112 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pine Tree (218): Pine Tree (218) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Pine Tree (218): Pine Tree (218) | Hartford Accident and Indemnity Company | 04 C 163132 | 1/25/1977 | 1/25/1978 | 1/25/1977 | 1/25/1978 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Pony Express (311): Pony Express (311) | Insurance Company of North America | SBL 5 08 54 | 12/29/1969 | 12/29/1970 | 12/29/1969 | 12/29/1970 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Pony Express (311): Pony Express (311) | Insurance Company of North America | SBL 5 08 62 | 12/29/1970 | 12/29/1971 | 12/29/1970 | 12/29/1971 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Pony Express (311): Pony Express (311) | Insurance Company of North America | Unknown | 12/29/1971 | 1/1/1972 | 12/29/1971 | 1/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pony Express (311): Pony Express (311) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 14 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pony Express (311): Pony Express (311) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pony Express (311): Pony Express (311) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220165 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pony Express (311): Pony Express (311) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Potawatomi Area (651): Potawatomi Area (651) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 47 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Potawatomi Area (651): Potawatomi Area (651) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Potawatomi Area (651): Potawatomi Area (651) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220264 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Potawatomi Area (651): Potawatomi Area (651) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Prairielands (117): Arrowhead 1933-1991 (117) | Insurance Company of North America | SBL 5 04 12 | 6/1/1968 | 6/1/1969 | 6/1/1968 | 6/1/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Prairielands (117): Arrowhead 1933-1991 (117) | Insurance Company of North America | SBL 5 04 12 | 6/1/1969 | 6/1/1970 | 6/1/1969 | 6/1/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Prairielands (117): Arrowhead 1933-1991 (117) | Insurance Company of North America | SBL 5 04 12 | 6/1/1970 | 6/1/1971 | 6/1/1970 | 6/1/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Prairielands (117): Arrowhead 1933-1991 (117) | Insurance Company of North America | SBL 51570 | 6/1/1971 | 6/1/1972 | 6/1/1971 | 6/1/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Prairielands (117): Arrowhead 1933-1991 (117) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 10 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Prairielands (117): Arrowhead 1933-1991 (117) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Prairielands (117): Arrowhead 1933-1991 (117) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219959 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Prairielands (117): Arrowhead 1933-1991 (117) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Prairielands (117): Piankeshaw 1926-1991 (739) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 13 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Prairielands (117): Piankeshaw 1926-1991 (739) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Prairielands (117): Piankeshaw 1926-1991 (739) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219959 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Prairielands (117): Piankeshaw 1926-1991 (739) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| President Ford FSC (781): President Ford FSC (781) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| President Ford FSC (781): President Ford FSC (781) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Puerto Rico (661): Puerto Rico 1965- (661) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 54 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Puerto Rico (661): Puerto Rico 1965- (661) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Puerto Rico (661): Puerto Rico 1965- (661) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220276 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Puerto Rico (661): Puerto Rico 1965- (661) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Pushmataha Area (691): Pushmataha Area (691) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pushmataha Area (691): Pushmataha Area (691) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 06 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pushmataha Area (691): Pushmataha Area (691) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pushmataha Area (691): Pushmataha Area (691) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Pushmataha Area (691): Pushmataha Area (691) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220156 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Pushmataha Area (691): Pushmataha Area (691) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Quapaw Area (18): Eastern Arkansas Area 1935-2002 (15) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 25 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Quapaw Area (18): Eastern Arkansas Area 1935-2002 (15) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 500,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Quapaw Area (18): Eastern Arkansas Area 1935-2002 (15) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219874 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Quapaw Area (18): Eastern Arkansas Area 1935-2002 (15) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Quapaw Area (18): Ouachita Area 1925-2012 (14) | Insurance Company of North America | SBL 4 53 62 | 5/27/1965 | 5/27/1966 | 5/27/1965 | 5/27/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quapaw Area (18): Ouachita Area 1925-2012 (14) | Insurance Company of North America | SBL 4 53 62 | 5/27/1966 | 5/27/1967 | 5/27/1966 | 5/27/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quapaw Area (18): Ouachita Area 1925-2012 (14) | Insurance Company of North America | SBL 4 53 62 | 5/27/1967 | 5/27/1968 | 5/27/1967 | 5/27/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quapaw Area (18): Ouachita Area 1925-2012 (14) | Insurance Company of North America | SBL 4 69 41 | 5/27/1968 | 5/27/1969 | 5/27/1968 | 5/27/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Quapaw Area (18): Ouachita Area 1925-2012 (14) | Insurance Company of North America | SBL 4 69 41 | 5/27/1969 | 5/27/1970 | 5/27/1969 | 5/27/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Quapaw Area (18): Ouachita Area 1925-2012 (14) | Insurance Company of North America | SBL 4 69 41 | 5/27/1970 | 5/27/1971 | 5/27/1970 | 5/27/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Quapaw Area (18): Ouachita Area 1925-2012 (14) | Insurance Company of North America | Unknown | 5/27/1971 | 1/1/1972 | 5/27/1971 | 1/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quapaw Area (18): Ouachita Area 1925-2012 (14) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quapaw Area (18): Ouachita Area 1925-2012 (14) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 24 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Quapaw Area (18): Ouachita Area 1925-2012 (14) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Quapaw Area (18): Ouachita Area 1925-2012 (14) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quapaw Area (18): Ouachita Area 1925-2012 (14) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219873 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Quapaw Area (18): Ouachita Area 1925-2012 (14) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Quapaw Area (18): Quapaw Area 1927- (18) | Insurance Company of North America | Unknown | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quapaw Area (18): Quapaw Area 1927- (18) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 26 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Quapaw Area (18): Quapaw Area 1927- (18) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quapaw Area (18): Quapaw Area 1927- (18) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219875 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Quivira (198): Kanza 1946-1997 (190) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Kanza 1946-1997 (190) | Unknown | Unknown | 1/1/1957 | 1/1/1958 | 1/1/1957 | 1/1/1958 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Kanza 1946-1997 (190) | Unknown | Unknown | 1/1/1958 | 1/1/1959 | 1/1/1958 | 1/1/1959 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Kanza 1946-1997 (190) | Unknown | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Kanza 1946-1997 (190) | Unknown | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Kanza 1946-1997 (190) | Unknown | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Kanza 1946-1997 (190) | Unknown | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Kanza 1946-1997 (190) | Unknown | Unknown | 1/1/1963 | 1/1/1964 | 1/1/1963 | 1/1/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Kanza 1946-1997 (190) | Unknown | Unknown | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Kanza 1946-1997 (190) | Unknown | Unknown | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Kanza 1946-1997 (190) | Unknown | Unknown | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Kanza 1946-1997 (190) | Unknown | Unknown | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Kanza 1946-1997 (190) | Unknown | Unknown | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Kanza 1946-1997 (190) | Unknown | Unknown | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Kanza 1946-1997 (190) | Unknown | Unknown | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Kanza 1946-1997 (190) | Unknown | Unknown | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Kanza 1946-1997 (190) | Unknown | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Kanza 1946-1997 (190) | Unknown | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Kanza 1946-1997 (190) | Unknown | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Kanza 1946-1997 (190) | Unknown | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Kanza 1946-1997 (190) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 46 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Quivira (198): Kanza 1946-1997 (190) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Quivira (198): Kanza 1946-1997 (190) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219992 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Quivira (198): Kanza 1946-1997 (190) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Quivira (198): Quivira 1918- (198) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Quivira 1918- (198) | Unknown | Unknown | 1/1/1957 | 1/1/1958 | 1/1/1957 | 1/1/1958 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Quivira 1918- (198) | Unknown | Unknown | 1/1/1958 | 1/1/1959 | 1/1/1958 | 1/1/1959 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Quivira 1918- (198) | Unknown | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Quivira 1918- (198) | Unknown | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Quivira 1918- (198) | Unknown | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Quivira 1918- (198) | Unknown | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Quivira 1918- (198) | Unknown | Unknown | 1/1/1963 | 1/1/1964 | 1/1/1963 | 1/1/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Quivira 1918- (198) | Unknown | Unknown | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Quivira 1918- (198) | Insurance Company of North America | Unknown | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Quivira 1918- (198) | Insurance Company of North America | SBL-2-80-76 | 6/1/1966 | 6/1/1967 | 6/1/1966 | 6/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Quivira 1918- (198) | Insurance Company of North America | SBL-2-80-81 | 6/1/1967 | 6/1/1968 | 6/1/1967 | 6/1/1968 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Quivira (198): Quivira 1918- (198) | Insurance Company of North America | SBL-2-80-89 | 6/1/1968 | 6/1/1969 | 6/1/1968 | 6/1/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Quivira (198): Quivira 1918- (198) | Insurance Company of North America | Unknown | 6/1/1969 | 1/1/1970 | 6/1/1969 | 1/1/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Quivira 1918- (198) | Insurance Company of North America | SBL 5 08 58 | 6/1/1970 | 6/1/1971 | 6/1/1970 | 6/1/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Quivira 1918- (198) | Insurance Company of North America | SBL 5 08 63 | 6/1/1971 | 5/31/1972 | 6/1/1971 | 5/31/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Quivira (198): Quivira 1918- (198) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Quivira 1918- (198) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 50 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Quivira (198): Quivira 1918- (198) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Quivira (198): Quivira 1918- (198) | Jefferson Insurance Company of New York | GLA 323706 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Quivira 1918- (198) | New Hampshire Insurance Company | GLA 301302 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Quivira 1918- (198) | New Hampshire Insurance Company | GLA 332350 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 50,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Quivira (198): Quivira 1918- (198) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219998 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Quivira (198): Quivira 1918- (198) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Quivira (198): Sekan Area 1930-1972 (193) | Insurance Company of North America | SBL 5 15 50 | 5/28/1971 | 12/31/1971 | 5/28/1971 | 12/31/1971 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Rainbow (702): Rainbow (702) | Insurance Company of North America | SBL 4 29 87 | 3/2/1965 | 3/2/1966 | 3/2/1965 | 3/2/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Rainbow (702): Rainbow (702) | Insurance Company of North America | SBL 4 29 87 | 3/2/1966 | 3/2/1967 | 3/2/1966 | 3/2/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Rainbow (702): Rainbow (702) | Insurance Company of North America | SBL 4 29 87 | 3/2/1967 | 3/2/1968 | 3/2/1967 | 3/2/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Rainbow (702): Rainbow (702) | Insurance Company of North America | SBL 46920 | 3/2/1968 | 3/2/1969 | 3/2/1968 | 3/2/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Rainbow (702): Rainbow (702) | Insurance Company of North America | SBL 46920 | 3/2/1969 | 3/2/1970 | 3/2/1969 | 3/2/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Rainbow (702): Rainbow (702) | Insurance Company of North America | SBL 46920 | 3/2/1970 | 3/2/1971 | 3/2/1970 | 3/2/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Rainbow (702): Rainbow (702) | Insurance Company of North America | SBL 51497 | 3/2/1971 | 3/2/1972 | 3/2/1971 | 3/2/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Rainbow (702): Rainbow (702) | Hartford Accident and Indemnity Company | R2 C 282090 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Rainbow (702): Rainbow (702) | Hartford Accident and Indemnity Company | R2 HU 580155 | 1/16/1975 | 1/16/1976 | 1/16/1975 | 1/16/1976 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Rainbow (702): Rainbow (702) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 20 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Rainbow (702): Rainbow (702) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Rainbow (702): Rainbow (702) | Unknown | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Rainbow (702): Rainbow (702) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219966 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Rainbow (702): Rainbow (702) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Redwood Empire (41): Redwood Area 1923-1992 (44) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Redwood Empire (41): Redwood Area 1923-1992 (44) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 33 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Redwood Empire (41): Redwood Area 1923-1992 (44) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Redwood Empire (41): Redwood Area 1923-1992 (44) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Redwood Empire (41): Redwood Area 1923-1992 (44) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219882 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Redwood Empire (41): Redwood Area 1923-1992 (44) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Redwood Empire (41): Sonoma-Mendocino Area 1944-1992 (41) | Insurance Company of North America | SBL 36222 | 5/20/1970 | 5/20/1971 | 5/20/1970 | 5/20/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Redwood Empire (41): Sonoma-Mendocino Area 1944-1992 (41) | Insurance Company of North America | SBL 51574 | 5/20/1971 | 5/20/1972 | 5/20/1971 | 5/20/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Redwood Empire (41): Sonoma-Mendocino Area 1944-1992 (41) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Redwood Empire (41): Sonoma-Mendocino Area 1944-1992 (41) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 44 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Redwood Empire (41): Sonoma-Mendocino Area 1944-1992 (41) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Redwood Empire (41): Sonoma-Mendocino Area 1944-1992 (41) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Redwood Empire (41): Sonoma-Mendocino Area 1944-1992 (41) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219892 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Redwood Empire (41): Sonoma-Mendocino Area 1944-1992 (41) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Rio Grande (775): Rio Grande (775) | Insurance Company of North America | Unknown | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Rio Grande (775): Rio Grande (775) | Insurance Company of North America | Unknown | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Rio Grande (775): Rio Grande (775) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 80 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Rio Grande (775): Rio Grande (775) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Rio Grande (775): Rio Grande (775) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220211 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Rio Grande (775): Rio Grande (775) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Rip Van Winkle (405): Rip Van Winkle 1950- (405) | Insurance Company of North America | AGP-82-37 | 11/12/1966 | 11/12/1967 | 11/12/1966 | 11/12/1967 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Rip Van Winkle (405): Rip Van Winkle 1950- (405) | Insurance Company of North America | AGP-82-37 | 11/12/1967 | 11/12/1968 | 11/12/1967 | 11/12/1968 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Rip Van Winkle (405): Rip Van Winkle 1950- (405) | Insurance Company of North America | AGP-82-37 | 11/12/1968 | 11/12/1969 | 11/12/1968 | 11/12/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Rip Van Winkle (405): Rip Van Winkle 1950- (405) | Insurance Company of North America | AGP-82-72 | 11/12/1969 | 11/12/1970 | 11/12/1969 | 11/12/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Rip Van Winkle (405): Rip Van Winkle 1950- (405) | Insurance Company of North America | AGP-82-72 | 11/12/1970 | 11/12/1971 | 11/12/1970 | 11/12/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Rip Van Winkle (405): Rip Van Winkle 1950- (405) | Insurance Company of North America | AGP-82-72 | 11/12/1971 | 7/11/1972 | 11/12/1971 | 7/11/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Rip Van Winkle (405): Rip Van Winkle 1950- (405) | Insurance Company of North America | GAL 227276 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Rip Van Winkle (405): Rip Van Winkle 1950- (405) | Insurance Company of North America | XBC 99313 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Rip Van Winkle (405): Rip Van Winkle 1950- (405) | Insurance Company of North America | GAL 344145 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Rip Van Winkle (405): Rip Van Winkle 1950- (405) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 62 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Rip Van Winkle (405): Rip Van Winkle 1950- (405) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Rip Van Winkle (405): Rip Van Winkle 1950- (405) | American Re-Insurance Company | GAL 36 28 32 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Rip Van Winkle (405): Rip Van Winkle 1950- (405) | Insurance Company of North America | BE 1220016 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Rip Van Winkle (405): Rip Van Winkle 1950- (405) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Rocky Mountain (63): Rocky Mountain (63) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 66 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Rocky Mountain (63): Rocky Mountain (63) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Rocky Mountain (63): Rocky Mountain (63) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219914 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Rocky Mountain (63): Rocky Mountain (63) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Sagamore (162): Meshingomesia 1929-1973 (163) | Insurance Company of North America | SBL 41405 | 10/1/1965 | 10/1/1966 | 10/1/1965 | 10/1/1966 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | SE |
| Sagamore (162): Meshingomesia 1929-1973 (163) | Insurance Company of North America | SBL 41405 | 10/1/1966 | 10/1/1967 | 10/1/1966 | 10/1/1967 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | SE |
| Sagamore (162): Meshingomesia 1929-1973 (163) | Insurance Company of North America | SBL 41405 | 10/1/1967 | 10/1/1968 | 10/1/1967 | 10/1/1968 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | SE |
| Sagamore (162): Meshingomesia 1929-1973 (163) | Insurance Company of North America | SBL 41405 | 10/1/1968 | 10/1/1969 | 10/1/1968 | 10/1/1969 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | SE |
| Sagamore (162): Meshingomesia 1929-1973 (163) | Insurance Company of North America | SBL 41405 | 10/1/1969 | 10/1/1970 | 10/1/1969 | 10/1/1970 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | SE |
| Sagamore (162): Sagamore 1973- (162) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 33 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Sagamore (162): Sagamore 1973- (162) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Sagamore (162): Sagamore 1973- (162) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219979 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sagamore (162): Sagamore 1973- (162) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Sam Houston Area (576): Sam Houston Area (576) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | | Unknown | Unknown | Unknown | Unknown | SE |
| Sam Houston Area (576): Sam Houston Area (576) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 81 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Sam Houston Area (576): Sam Houston Area (576) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Sam Houston Area (576): Sam Houston Area (576) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | | Unknown | Unknown | Unknown | Unknown | SE |
| Sam Houston Area (576): Sam Houston Area (576) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220212 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Sam Houston Area (576): Sam Houston Area (576) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Samoset (627): Samoset (627) | Insurance Company of North America | SBL 4 53 59 | 6/1/1965 | 6/1/1966 | 6/1/1965 | 6/1/1966 | | Unknown | Unknown | Unknown | Unknown | SE |
| Samoset (627): Samoset (627) | Insurance Company of North America | SBL 4 53 59 | 6/1/1966 | 6/1/1967 | 6/1/1966 | 6/1/1967 | | Unknown | Unknown | Unknown | Unknown | SE |
| Samoset (627): Samoset (627) | Insurance Company of North America | SBL 4 53 59 | 6/1/1967 | 6/1/1968 | 6/1/1967 | 6/1/1968 | | Unknown | Unknown | Unknown | Unknown | SE |
| Samoset (627): Samoset (627) | Insurance Company of North America | SBL 4 15 40 | 6/1/1968 | 6/1/1969 | 6/1/1968 | 6/1/1969 | | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Samoset (627): Samoset (627) | Insurance Company of North America | SBL 4 15 40 | 6/1/1969 | 6/1/1970 | 6/1/1969 | 6/1/1970 | | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Samoset (627): Samoset (627) | Insurance Company of North America | SBL 4 15 40 | 6/1/1970 | 6/1/1971 | 6/1/1970 | 6/1/1971 | | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Samoset (627): Samoset (627) | Insurance Company of North America | SBL 4 15 64 | 6/1/1971 | 6/1/1972 | 6/1/1971 | 6/1/1972 | | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Samoset (627): Samoset (627) | Insurance Company of North America | Unknown | 6/1/1972 | 6/1/1973 | 6/1/1972 | 6/1/1973 | | Unknown | Unknown | Unknown | Unknown | SE |
| Samoset (627): Samoset (627) | Insurance Company of North America | Unknown | 6/1/1973 | 6/1/1974 | 6/1/1973 | 6/1/1974 | | Unknown | Unknown | Unknown | Unknown | SE |
| Samoset (627): Samoset (627) | Insurance Company of North America | Unknown | 6/1/1974 | 1/1/1975 | 6/1/1974 | 1/1/1975 | | Unknown | Unknown | Unknown | Unknown | SE |
| Samoset (627): Samoset (627) | Insurance Company of North America | GAL 212382 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | | Unknown | Unknown | Unknown | Unknown | SE |
| Samoset (627): Samoset (627) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 48 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Samoset (627): Samoset (627) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Samoset (627): Samoset (627) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220265 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Samoset (627): Samoset (627) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| San Diego-Imperial (49): Desert Trails 1959-1993 (29) | Insurance Company of North America | SBL 4 69 81 | 4/1/1965 | 4/1/1966 | 4/1/1965 | 4/1/1966 | | Unknown | Unknown | Unknown | Unknown | SE |
| San Diego-Imperial (49): Desert Trails 1959-1993 (29) | Insurance Company of North America | SBL 4 69 81 | 4/1/1966 | 4/1/1967 | 4/1/1966 | 4/1/1967 | | Unknown | Unknown | Unknown | Unknown | SE |
| San Diego-Imperial (49): Desert Trails 1959-1993 (29) | Insurance Company of North America | SBL 4 69 81 | 4/1/1967 | 4/1/1968 | 4/1/1967 | 4/1/1968 | | Unknown | Unknown | Unknown | Unknown | SE |
| San Diego-Imperial (49): Desert Trails 1959-1993 (29) | Insurance Company of North America | SBL 4 69 35 | 4/1/1968 | 4/1/1969 | 4/1/1968 | 4/1/1969 | | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| San Diego-Imperial (49): Desert Trails 1959-1993 (29) | Insurance Company of North America | SBL 4 69 35 | 4/1/1969 | 4/1/1970 | 4/1/1969 | 4/1/1970 | | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| San Diego-Imperial (49): Desert Trails 1959-1993 (29) | Insurance Company of North America | SBL 4 69 35 | 4/1/1970 | 4/1/1971 | 4/1/1970 | 4/1/1971 | | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| San Diego-Imperial (49): Desert Trails 1959-1993 (29) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | | Unknown | Unknown | Unknown | Unknown | SE |
| San Diego-Imperial (49): Desert Trails 1959-1993 (29) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 32 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| San Diego-Imperial (49): Desert Trails 1959-1993 (29) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| San Diego-Imperial (49): Desert Trails 1959-1993 (29) | New Hampshire Insurance Company | GLA 332369 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | | Unknown | Unknown | Unknown | Unknown | SE |
| San Diego-Imperial (49): Desert Trails 1959-1993 (29) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219881 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| San Diego-Imperial (49): Desert Trails 1959-1993 (29) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| San Diego-Imperial (49): San Diego County 1921-1993 (49) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | | Unknown | Unknown | Unknown | Unknown | SE |
| San Diego-Imperial (49): San Diego County 1921-1993 (49) | Unknown | Unknown | 1/1/1957 | 1/1/1958 | 1/1/1957 | 1/1/1958 | | Unknown | Unknown | Unknown | Unknown | SE |
| San Diego-Imperial (49): San Diego County 1921-1993 (49) | Unknown | Unknown | 1/1/1958 | 1/1/1959 | 1/1/1958 | 1/1/1959 | | Unknown | Unknown | Unknown | Unknown | SE |
| San Diego-Imperial (49): San Diego County 1921-1993 (49) | Unknown | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | | Unknown | Unknown | Unknown | Unknown | SE |
| San Diego-Imperial (49): San Diego County 1921-1993 (49) | Unknown | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | | Unknown | Unknown | Unknown | Unknown | SE |
| San Diego-Imperial (49): San Diego County 1921-1993 (49) | Unknown | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | | Unknown | Unknown | Unknown | Unknown | SE |
| San Diego-Imperial (49): San Diego County 1921-1993 (49) | Unknown | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | | Unknown | Unknown | Unknown | Unknown | SE |
| San Diego-Imperial (49): San Diego County 1921-1993 (49) | Unknown | Unknown | 1/1/1963 | 1/1/1964 | 1/1/1963 | 1/1/1964 | | Unknown | Unknown | Unknown | Unknown | SE |
| San Diego-Imperial (49): San Diego County 1921-1993 (49) | Unknown | Unknown | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | | Unknown | Unknown | Unknown | Unknown | SE |
| San Diego-Imperial (49): San Diego County 1921-1993 (49) | Unknown | Unknown | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | | Unknown | Unknown | Unknown | Unknown | SE |
| San Diego-Imperial (49): San Diego County 1921-1993 (49) | Unknown | Unknown | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | | Unknown | Unknown | Unknown | Unknown | SE |
| San Diego-Imperial (49): San Diego County 1921-1993 (49) | Unknown | Unknown | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | | Unknown | Unknown | Unknown | Unknown | SE |
| San Diego-Imperial (49): San Diego County 1921-1993 (49) | Unknown | Unknown | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | | Unknown | Unknown | Unknown | Unknown | SE |
| San Diego-Imperial (49): San Diego County 1921-1993 (49) | Unknown | Unknown | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | | Unknown | Unknown | Unknown | Unknown | SE |
| San Diego-Imperial (49): San Diego County 1921-1993 (49) | Unknown | Unknown | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | | Unknown | Unknown | Unknown | Unknown | SE |
| San Diego-Imperial (49): San Diego County 1921-1993 (49) | Unknown | Unknown | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | | Unknown | Unknown | Unknown | Unknown | SE |
| San Diego-Imperial (49): San Diego County 1921-1993 (49) | Unknown | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | | Unknown | Unknown | Unknown | Unknown | SE |
| San Diego-Imperial (49): San Diego County 1921-1993 (49) | Unknown | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | | Unknown | Unknown | Unknown | Unknown | SE |
| San Diego-Imperial (49): San Diego County 1921-1993 (49) | Unknown | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | | Unknown | Unknown | Unknown | Unknown | SE |
| San Diego-Imperial (49): San Diego County 1921-1993 (49) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | | Unknown | Unknown | Unknown | Unknown | SE |
| San Diego-Imperial (49): San Diego County 1921-1993 (49) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 49 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| San Diego-Imperial (49): San Diego County 1921-1993 (49) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| San Diego-Imperial (49): San Diego County 1921-1993 (49) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219897 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| San Diego-Imperial (49): San Diego County 1921-1993 (49) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| San Diego-Imperial (49): San Diego County 1921-1993 (49) | New Hampshire Insurance Company | SLP 275657 | 3/10/1977 | 3/10/1978 | 3/10/1977 | 3/10/1978 | | $ 50,000.00 | $ 50,000.00 | Unknown | Unknown | SE |
| San Diego-Imperial (49): San Diego-Imperial 2005- (49) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| San Diego-Imperial (49): San Diego-Imperial 2005- (49) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Santa Fe Trail (194): Santa Fe Trail (194) | Insurance Company of North America | SBL 50430 | 11/1/1968 | 11/1/1969 | 11/1/1968 | 11/1/1969 | | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Santa Fe Trail (194): Santa Fe Trail (194) | Insurance Company of North America | SBL 50430 | 11/1/1969 | 11/1/1970 | 11/1/1969 | 11/1/1970 | | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Santa Fe Trail (194): Santa Fe Trail (194) | Insurance Company of North America | SBL 50430 | 11/1/1970 | 11/1/1971 | 11/1/1970 | 11/1/1971 | | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Santa Fe Trail (194): Santa Fe Trail (194) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | | Unknown | Unknown | Unknown | Unknown | SE |
| Santa Fe Trail (194): Santa Fe Trail (194) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 45 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Santa Fe Trail (194): Santa Fe Trail (194) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Santa Fe Trail (194): Santa Fe Trail (194) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | | Unknown | Unknown | Unknown | Unknown | SE |
| Santa Fe Trail (194): Santa Fe Trail (194) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219991 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Santa Fe Trail (194): Santa Fe Trail (194) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Seneca Waterways (397): Finger Lakes 1924-2009 (391) | Insurance Company of North America | GLP 32 23 19 | 5/17/1972 | 5/21/1972 | 5/17/1972 | 5/21/1972 | | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Seneca Waterways (397): Finger Lakes 1924-2009 (391) | Hartford Accident and Indemnity Company | 01C 804621 | 4/27/1973 | 4/27/1974 | 4/27/1973 | 4/27/1974 | | Unknown | Unknown | Unknown | Unknown | SE |
| Seneca Waterways (397): Finger Lakes 1924-2009 (391) | Hartford Accident and Indemnity Company | 01C 807376 | 4/27/1974 | 4/27/1975 | 4/27/1974 | 4/27/1975 | | Unknown | Unknown | Unknown | Unknown | SE |
| Seneca Waterways (397): Finger Lakes 1924-2009 (391) | Hartford Accident and Indemnity Company | 03C 809631 | 4/27/1975 | 4/27/1976 | 4/27/1975 | 4/27/1976 | | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Seneca Waterways (397): Finger Lakes 1924-2009 (391) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 57 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Seneca Waterways (397): Finger Lakes 1924-2009 (391) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Seneca Waterways (397): Finger Lakes 1924-2009 (391) | Hartford Accident and Indemnity Company | 03C 811730 | 4/27/1976 | 4/27/1977 | 4/27/1976 | 4/27/1977 | | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Seneca Waterways (397): Finger Lakes 1924-2009 (391) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220010 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Seneca Waterways (397): Finger Lakes 1924-2009 (391) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Seneca Waterways (397): Finger Lakes 1924-2009 (391) | Hartford Accident and Indemnity Company | 03C 814173 | 4/27/1977 | 4/27/1978 | 4/27/1977 | 4/27/1978 | | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Seneca Waterways (397): Otetiana 1943-2009 (397) | Jamestown Mutual Insurance Company | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | | Unknown | Unknown | Unknown | Unknown | SE |
| Seneca Waterways (397): Otetiana 1943-2009 (397) | Jamestown Mutual Insurance Company | Unknown | 1/1/1957 | 1/1/1958 | 1/1/1957 | 1/1/1958 | | Unknown | Unknown | Unknown | Unknown | SE |
| Seneca Waterways (397): Otetiana 1943-2009 (397) | Jamestown Mutual Insurance Company | Unknown | 1/1/1958 | 1/1/1959 | 1/1/1958 | 1/1/1959 | | Unknown | Unknown | Unknown | Unknown | SE |
| Seneca Waterways (397): Otetiana 1943-2009 (397) | Jamestown Mutual Insurance Company | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | | Unknown | Unknown | Unknown | Unknown | SE |
| Seneca Waterways (397): Otetiana 1943-2009 (397) | Jamestown Mutual Insurance Company | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | | Unknown | Unknown | Unknown | Unknown | SE |
| Seneca Waterways (397): Otetiana 1943-2009 (397) | Jamestown Mutual Insurance Company | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | | Unknown | Unknown | Unknown | Unknown | SE |
| Seneca Waterways (397): Otetiana 1943-2009 (397) | Jamestown Mutual Insurance Company | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | | Unknown | Unknown | Unknown | Unknown | SE |
| Seneca Waterways (397): Otetiana 1943-2009 (397) | Jamestown Mutual Insurance Company | Unknown | 1/1/1963 | 1/1/1964 | 1/1/1963 | 1/1/1964 | | Unknown | Unknown | Unknown | Unknown | SE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE)* |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Seneca Waterways (397): Otetiana 1943-2009 (397) | Jamestown Mutual Insurance Company | Unknown | 1/1/1963 | 4/1/1963 | 1/1/1963 | 4/1/1963 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Seneca Waterways (397): Otetiana 1943-2009 (397) | Jamestown Mutual Insurance Company | 63-CGL9729 | 4/1/1963 | 4/1/1964 | 4/1/1963 | 4/1/1964 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Seneca Waterways (397): Otetiana 1943-2009 (397) | Jamestown Mutual Insurance Company | Unknown | 4/1/1964 | 4/1/1965 | 4/1/1964 | 4/1/1965 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Seneca Waterways (397): Otetiana 1943-2009 (397) | Jamestown Mutual Insurance Company | Unknown | 4/1/1965 | 4/1/1966 | 4/1/1965 | 4/1/1966 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Seneca Waterways (397): Otetiana 1943-2009 (397) | Jamestown Mutual Insurance Company | Unknown | 4/1/1966 | 4/1/1967 | 4/1/1966 | 4/1/1967 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Seneca Waterways (397): Otetiana 1943-2009 (397) | Jamestown Mutual Insurance Company | Unknown | 4/1/1967 | 4/1/1968 | 4/1/1967 | 4/1/1968 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Seneca Waterways (397): Otetiana 1943-2009 (397) | Jamestown Mutual Insurance Company | Unknown | 4/1/1968 | 4/1/1969 | 4/1/1968 | 4/1/1969 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Seneca Waterways (397): Otetiana 1943-2009 (397) | Jamestown Mutual Insurance Company | GLA 18433 | 4/1/1969 | 4/1/1970 | 4/1/1969 | 4/1/1970 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Seneca Waterways (397): Otetiana 1943-2009 (397) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 71 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | 500,000.00 | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Seneca Waterways (397): Otetiana 1943-2009 (397) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | 1,500,000.00 | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Seneca Waterways (397): Otetiana 1943-2009 (397) | Hartford Accident and Indemnity Company | C8P 800237 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | - | Unknown | Unknown | Unknown | Unknown | PE |
| Seneca Waterways (397): Otetiana 1943-2009 (397) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220024 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | 500,000.00 | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Seneca Waterways (397): Otetiana 1943-2009 (397) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | 1,500,000.00 | 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Sequoia (27): Mount Whitney Area 1929-1992 (54) | Insurance Company of North America | SBL 45380 | 3/1/1966 | 3/1/1967 | 3/1/1966 | 3/1/1967 | - | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Sequoia (27): Mount Whitney Area 1929-1992 (54) | Insurance Company of North America | SBL 45380 | 3/1/1967 | 3/1/1968 | 3/1/1967 | 3/1/1968 | - | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Sequoia (27): Mount Whitney Area 1929-1992 (54) | Insurance Company of North America | SBL 45380 | 3/1/1968 | 3/1/1969 | 3/1/1968 | 3/1/1969 | - | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Sequoia (27): Mount Whitney Area 1929-1992 (54) | Insurance Company of North America | SBL 50440 | 3/1/1969 | 3/1/1970 | 3/1/1969 | 3/1/1970 | - | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Sequoia (27): Mount Whitney Area 1929-1992 (54) | Insurance Company of North America | SBL 50440 | 3/1/1970 | 3/1/1971 | 3/1/1970 | 3/1/1971 | - | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Sequoia (27): Mount Whitney Area 1929-1992 (54) | Insurance Company of North America | SBL 50440 | 3/1/1971 | 3/1/1972 | 3/1/1971 | 3/1/1972 | - | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Sequoia (27): Mount Whitney Area 1929-1992 (54) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Sequoia (27): Mount Whitney Area 1929-1992 (54) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 59 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | 500,000.00 | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Sequoia (27): Mount Whitney Area 1929-1992 (54) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | 1,500,000.00 | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Sequoia (27): Mount Whitney Area 1929-1992 (54) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219907 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | 500,000.00 | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Sequoia (27): Mount Whitney Area 1929-1992 (54) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | 1,500,000.00 | 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Sequoia (27): Mount Whitney Area 1929-1992 (54) | New Hampshire Insurance Company | GLA 282424 | 1/3/1977 | 1/3/1978 | 1/3/1977 | 1/3/1978 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Sequoia (27): Sequoia 1925- (27) | Insurance Company of North America | SBL 4 69 62 | 3/1/1965 | 3/1/1966 | 3/1/1965 | 3/1/1966 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Sequoia (27): Sequoia 1925- (27) | Insurance Company of North America | SBL 4 69 62 | 3/1/1966 | 3/1/1967 | 3/1/1966 | 3/1/1967 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Sequoia (27): Sequoia 1925- (27) | Insurance Company of North America | SBL 4 69 62 | 3/1/1967 | 3/1/1968 | 3/1/1967 | 3/1/1968 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Sequoia (27): Sequoia 1925- (27) | Insurance Company of North America | SBL 4 69 27 | 3/1/1968 | 3/1/1969 | 3/1/1968 | 3/1/1969 | - | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Sequoia (27): Sequoia 1925- (27) | Insurance Company of North America | SBL 4 69 27 | 3/1/1969 | 3/1/1970 | 3/1/1969 | 3/1/1970 | - | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Sequoia (27): Sequoia 1925- (27) | Insurance Company of North America | SBL 4 69 27 | 3/1/1970 | 3/1/1971 | 3/1/1970 | 3/1/1971 | - | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Sequoia (27): Sequoia 1925- (27) | Insurance Company of North America | SBL 5 15 10 | 3/1/1971 | 3/1/1972 | 3/1/1971 | 3/1/1972 | - | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Sequoia (27): Sequoia 1925- (27) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Sequoia (27): Sequoia 1925- (27) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 34 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | 500,000.00 | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Sequoia (27): Sequoia 1925- (27) | New Hampshire Insurance Company | GLA 332400 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Sequoia (27): Sequoia 1925- (27) | Ambassador Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | 50,000.00 | 450,000.00 | $ 450,000.00 | Unknown | Unknown | SE |
| Sequoia (27): Sequoia 1925- (27) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219883 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | 500,000.00 | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Sequoyah (713): Sequoyah (713) | Insurance Company of North America | SBL 51193 | 6/11/1969 | 6/11/1970 | 6/11/1969 | 6/11/1970 | - | 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Sequoyah (713): Sequoyah (713) | Insurance Company of North America | SBL 51193 | 6/11/1970 | 6/11/1971 | 6/11/1970 | 6/11/1971 | - | 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Sequoyah (713): Sequoyah (713) | Insurance Company of North America | SBL 51193 | 6/11/1971 | 6/11/1972 | 6/11/1971 | 6/11/1972 | - | 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Sequoyah (713): Sequoyah (713) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 66 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | 500,000.00 | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Sequoyah (713): Sequoyah (713) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | 1,500,000.00 | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Sequoyah (713): Sequoyah (713) | Insurance Company of North America | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Sequoyah (713): Sequoyah (713) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220288 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | 500,000.00 | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Sequoyah (713): Sequoyah (713) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | 1,500,000.00 | 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Shenandoah Area (598): Shenandoah Area (598) | Insurance Company of North America | Unknown | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Shenandoah Area (598): Shenandoah Area (598) | Insurance Company of North America | Unknown | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Shenandoah Area (598): Shenandoah Area (598) | Insurance Company of North America | Unknown | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Shenandoah Area (598): Shenandoah Area (598) | Insurance Company of North America | Unknown | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Shenandoah Area (598): Shenandoah Area (598) | Insurance Company of North America | Unknown | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Shenandoah Area (598): Shenandoah Area (598) | Insurance Company of North America | Unknown | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Shenandoah Area (598): Shenandoah Area (598) | Insurance Company of North America | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Shenandoah Area (598): Shenandoah Area (598) | Unknown | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Shenandoah Area (598): Shenandoah Area (598) | Unknown | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Shenandoah Area (598): Shenandoah Area (598) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Shenandoah Area (598): Shenandoah Area (598) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 16 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | 500,000.00 | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Shenandoah Area (598): Shenandoah Area (598) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | 1,500,000.00 | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Shenandoah Area (598): Shenandoah Area (598) | Insurance Company of North America | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Shenandoah Area (598): Shenandoah Area (598) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220237 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | 500,000.00 | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Shenandoah Area (598): Shenandoah Area (598) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | 1,500,000.00 | 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Silicon Valley Monterey Bay (55): Monterey Bay Area 1933-2013 (25) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Silicon Valley Monterey Bay (55): Monterey Bay Area 1933-2013 (25) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 48 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | 500,000.00 | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Silicon Valley Monterey Bay (55): Monterey Bay Area 1933-2013 (25) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | 1,500,000.00 | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Silicon Valley Monterey Bay (55): Monterey Bay Area 1933-2013 (25) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Silicon Valley Monterey Bay (55): Monterey Bay Area 1933-2013 (25) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219896 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | 500,000.00 | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Silicon Valley Monterey Bay (55): Monterey Bay Area 1933-2013 (25) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | 1,500,000.00 | 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Silicon Valley Monterey Bay (55): Santa Clara County 1929-2012 (55) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Silicon Valley Monterey Bay (55): Santa Clara County 1929-2012 (55) | Insurance Company of North America | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | 500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Silicon Valley Monterey Bay (55): Santa Clara County 1929-2012 (55) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 50 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | 500,000.00 | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Silicon Valley Monterey Bay (55): Santa Clara County 1929-2012 (55) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | 1,500,000.00 | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Silicon Valley Monterey Bay (55): Santa Clara County 1929-2012 (55) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 6/7/1977 | 1/1/1977 | 6/7/1977 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Silicon Valley Monterey Bay (55): Santa Clara County 1929-2012 (55) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219898 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | 500,000.00 | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Silicon Valley Monterey Bay (55): Santa Clara County 1929-2012 (55) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | 1,500,000.00 | 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Silicon Valley Monterey Bay (55): Santa Clara County 1929-2012 (55) | Insurance Company of North America | GAL 34 32 19 | 6/7/1977 | 6/7/1978 | 6/7/1977 | 6/7/1978 | - | Unknown | Unknown* | Unknown | Unknown | SE |
| Simon Kenton (441): Central Ohio 1930-1994 (441) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Simon Kenton (441): Central Ohio 1930-1994 (441) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 62 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | 500,000.00 | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Simon Kenton (441): Central Ohio 1930-1994 (441) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | 1,500,000.00 | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Simon Kenton (441): Central Ohio 1930-1994 (441) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220052 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | 500,000.00 | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Simon Kenton (441): Central Ohio 1930-1994 (441) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | 1,500,000.00 | 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Simon Kenton (441): Chief Logan 1944-1994 (464) | Insurance Company of North America | SBL 4 53 66 | 7/1/1966 | 7/1/1967 | 7/1/1966 | 7/1/1967 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Simon Kenton (441): Chief Logan 1944-1994 (464) | Insurance Company of North America | SBL 4 53 66 | 7/1/1967 | 7/1/1968 | 7/1/1967 | 7/1/1968 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Simon Kenton (441): Chief Logan 1944-1994 (464) | Insurance Company of North America | SBL 4 53 66 | 7/1/1968 | 7/1/1969 | 7/1/1968 | 7/1/1969 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Simon Kenton (441): Chief Logan 1944-1994 (464) | Insurance Company of North America | SBL 50413 | 7/1/1969 | 7/1/1970 | 7/1/1969 | 7/1/1970 | - | 250,000.00 | $ 250,000.00 | Unknown | Unknown | SE |
| Simon Kenton (441): Chief Logan 1944-1994 (464) | Insurance Company of North America | SBL 50413 | 7/1/1969 | 7/1/1970 | 7/1/1969 | 7/1/1970 | - | 250,000.00 | $ 250,000.00 | Unknown | Unknown | SE |
| Simon Kenton (441): Chief Logan 1944-1994 (464) | Insurance Company of North America | SBL 50413 | 7/1/1970 | 7/1/1971 | 7/1/1970 | 7/1/1971 | - | 250,000.00 | $ 250,000.00 | Unknown | Unknown | SE |
| Simon Kenton (441): Chief Logan 1944-1994 (464) | Insurance Company of North America | SBL 51585 | 7/1/1971 | 7/1/1972 | 7/1/1971 | 7/1/1972 | - | 250,000.00 | $ 250,000.00 | Unknown | Unknown | SE |
| Simon Kenton (441): Chief Logan 1944-1994 (464) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | - | Unknown | Unknown | Unknown | Unknown | SE |
| Simon Kenton (441): Chief Logan 1944-1994 (464) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 96 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | 500,000.00 | 1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Simon Kenton (441): Chief Logan 1944-1994 (464) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Simon Kenton (441): Chief Logan 1944-1994 (464) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Simon Kenton (441): Chief Logan 1944-1994 (464) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220049 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Simon Kenton (441): Chief Logan 1944-1994 (464) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Simon Kenton (441): Licking County 1922-1987 (451) | Insurance Company of North America | SBL 4 29 58 | 1/14/1965 | 1/14/1966 | 1/14/1965 | 1/14/1966 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Simon Kenton (441): Licking County 1922-1987 (451) | Insurance Company of North America | SBL 4 29 58 | 1/14/1966 | 1/14/1967 | 1/14/1966 | 1/14/1967 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Simon Kenton (441): Licking County 1922-1987 (451) | Insurance Company of North America | SBL 4 29 58 | 1/14/1967 | 1/14/1968 | 1/14/1967 | 1/14/1968 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Simon Kenton (441): Licking County 1922-1987 (451) | Insurance Company of North America | SBL 46902 | 1/14/1968 | 1/14/1969 | 1/14/1968 | 1/14/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Simon Kenton (441): Licking County 1922-1987 (451) | Insurance Company of North America | SBL 46902 | 1/14/1969 | 1/14/1970 | 1/14/1969 | 1/14/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Simon Kenton (441): Licking County 1922-1987 (451) | Insurance Company of North America | SBL 46902 | 1/14/1970 | 6/28/1970 | 1/14/1970 | 6/28/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Simon Kenton (441): Licking County 1922-1987 (451) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 07 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Simon Kenton (441): Licking County 1922-1987 (451) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Simon Kenton (441): Licking County 1922-1987 (451) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220060 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Simon Kenton (441): Licking County 1922-1987 (451) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Simon Kenton (441): Scioto Area 1931-1994 (457) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 09 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Simon Kenton (441): Scioto Area 1931-1994 (457) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Simon Kenton (441): Scioto Area 1931-1994 (457) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220062 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Simon Kenton (441): Scioto Area 1931-1994 (457) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Sioux (733): Pheasant 1962-1978 (693) | Insurance Company of North America | SBL 4 53 93 | 11/1/1966 | 11/1/1967 | 11/1/1966 | 11/1/1967 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Sioux (733): Pheasant 1962-1978 (693) | Insurance Company of North America | Unknown | 11/1/1967 | 11/1/1968 | 11/1/1967 | 11/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Sioux (733): Pheasant 1962-1978 (693) | Insurance Company of North America | Unknown | 11/1/1968 | 11/1/1969 | 11/1/1968 | 11/1/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Sioux (733): Pheasant 1962-1978 (693) | Insurance Company of North America | SBL 5 11 99 | 11/1/1969 | 11/1/1970 | 11/1/1969 | 11/1/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Sioux (733): Pheasant 1962-1978 (693) | Insurance Company of North America | SBL 5 11 99 | 11/1/1970 | 11/1/1971 | 11/1/1970 | 11/1/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Sioux (733): Pheasant 1962-1978 (693) | Insurance Company of North America | SBL 5 11 99 | 11/1/1971 | 11/1/1972 | 11/1/1971 | 11/1/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Sioux (733): Pheasant 1962-1978 (693) | Insurance Company of North America | AGP 14 41 08 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Sioux (733): Pheasant 1962-1978 (693) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 61 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Sioux (733): Pheasant 1962-1978 (693) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Sioux (733): Pheasant 1962-1978 (693) | Insurance Company of North America | AGP 14 41 08 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Sioux (733): Pheasant 1962-1978 (693) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220283 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Sioux (733): Pheasant 1962-1978 (693) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Sioux (733): Sioux 1927- (733) | Insurance Company of North America | CGL 243562 | 5/13/1966 | 5/13/1967 | 5/13/1966 | 5/13/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Sioux (733): Sioux 1927- (733) | Insurance Company of North America | GLP-07-93-29 | 5/13/1967 | 5/13/1968 | 5/13/1967 | 5/13/1968 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Sioux (733): Sioux 1927- (733) | Insurance Company of North America | GLP-14-72-39 | 5/13/1968 | 5/13/1969 | 5/13/1968 | 5/13/1969 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Sioux (733): Sioux 1927- (733) | Insurance Company of North America | GLP 22 78 40 | 5/13/1969 | 5/13/1970 | 5/13/1969 | 5/13/1970 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Sioux (733): Sioux 1927- (733) | Insurance Company of North America | GLP 22 79 77 | 5/13/1970 | 5/13/1971 | 5/13/1970 | 5/13/1971 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Sioux (733): Sioux 1927- (733) | Insurance Company of North America | GLP 30 83 96 | 5/13/1971 | 5/12/1972 | 5/13/1971 | 5/12/1972 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Sioux (733): Sioux 1927- (733) | Insurance Company of North America | Unknown | 5/13/1972 | 1/1/1973 | 5/13/1972 | 1/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Sioux (733): Sioux 1927- (733) | Insurance Company of North America | GAL 21 16 51 | 1/1/1973 | 5/24/1973 | 1/1/1973 | 5/24/1973 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Sioux (733): Sioux 1927- (733) | Insurance Company of North America | XBC 97586 | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Sioux (733): Sioux 1927- (733) | Insurance Company of North America | AGP 13 14 41 | 5/24/1973 | 1/1/1974 | 5/24/1973 | 1/1/1974 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Sioux (733): Sioux 1927- (733) | Insurance Company of North America | AGP 13 14 75 | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Sioux (733): Sioux 1927- (733) | Insurance Company of North America | XBC 97752 | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Sioux (733): Sioux 1927- (733) | Insurance Company of North America | AGP 13 14 75 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Sioux (733): Sioux 1927- (733) | Insurance Company of North America | XBC 97752 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Sioux (733): Sioux 1927- (733) | Insurance Company of North America | AGP 13 14 75 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Sioux (733): Sioux 1927- (733) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 63 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Sioux (733): Sioux 1927- (733) | Insurance Company of North America | AGP 13 14 75 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Sioux (733): Sioux 1927- (733) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220285 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| South Florida (84): South Florida (84) | Continental Casualty Company | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| South Florida (84): South Florida (84) | Continental Casualty Company | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| South Florida (84): South Florida (84) | Continental Casualty Company | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| South Florida (84): South Florida (84) | Unknown | 2/8/1962 | 2/8/1963 | 2/8/1962 | 2/8/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| South Florida (84): South Florida (84) | Consolidated Mutual Insurance Company | Unknown | 2/8/1963 | 2/8/1964 | 2/8/1963 | 2/8/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| South Florida (84): South Florida (84) | Consolidated Mutual Insurance Company | Unknown | 2/8/1964 | 2/8/1965 | 2/8/1964 | 2/8/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| South Florida (84): South Florida (84) | Consolidated Mutual Insurance Company | Unknown | 2/8/1965 | 2/8/1966 | 2/8/1965 | 2/8/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| South Florida (84): South Florida (84) | Consolidated Mutual Insurance Company | Unknown | 2/8/1966 | 2/8/1967 | 2/8/1966 | 2/8/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| South Florida (84): South Florida (84) | Consolidated Mutual Insurance Company | Unknown | 2/8/1967 | 2/8/1968 | 2/8/1967 | 2/8/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| South Florida (84): South Florida (84) | Consolidated Mutual Insurance Company | Unknown | 2/8/1968 | 2/8/1969 | 2/8/1968 | 2/8/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| South Florida (84): South Florida (84) | Consolidated Mutual Insurance Company | Unknown | 2/8/1969 | 2/8/1970 | 2/8/1969 | 2/8/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| South Florida (84): South Florida (84) | Consolidated Mutual Insurance Company | Unknown | 2/8/1970 | 2/8/1971 | 2/8/1970 | 2/8/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| South Florida (84): South Florida (84) | Consolidated Mutual Insurance Company | Unknown | 2/8/1971 | 1/1/1972 | 2/8/1971 | 1/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| South Florida (84): South Florida (84) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 79 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| South Florida (84): South Florida (84) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| South Florida (84): South Florida (84) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219927 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| South Florida (84): South Florida (84) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| South Georgia (98): Alapaha Area 1960-2012 (98) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| South Georgia (98): Alapaha Area 1960-2012 (98) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 97 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| South Georgia (98): Alapaha Area 1960-2012 (98) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| South Georgia (98): Alapaha Area 1960-2012 (98) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219944 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| South Georgia (98): Alapaha Area 1960-2012 (98) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| South Georgia (98): Chehaw 1939-1984 (97) | Insurance Company of North America | SBL 5 11 87 | 4/23/1969 | 4/23/1970 | 4/23/1969 | 4/23/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| South Georgia (98): Chehaw 1939-1984 (97) | Insurance Company of North America | SBL 5 11 87 | 4/23/1970 | 4/23/1971 | 4/23/1970 | 4/23/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| South Georgia (98): Chehaw 1939-1984 (97) | Insurance Company of North America | SBL 5 11 87 | 4/23/1971 | 4/23/1972 | 4/23/1971 | 4/23/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| South Georgia (98): Chehaw 1939-1984 (97) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| South Georgia (98): Chehaw 1939-1984 (97) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 87 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| South Georgia (98): Chehaw 1939-1984 (97) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| South Georgia (98): Chehaw 1939-1984 (97) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| South Georgia (98): Chehaw 1939-1984 (97) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219935 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| South Georgia (98): Chehaw 1939-1984 (97) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| South Plains (694): South Plains (694) | Hartford Casualty Insurance Company | 46 IC 632582 | 2/16/1973 | 2/16/1974 | 2/16/1973 | 2/16/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| South Plains (694): South Plains (694) | Hartford Casualty Insurance Company | 46 IC 632582 | 2/16/1974 | 2/16/1975 | 2/16/1974 | 2/16/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| South Plains (694): South Plains (694) | Hartford Casualty Insurance Company | 46 IC 632582 | 2/16/1975 | 2/16/1976 | 2/16/1975 | 2/16/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| South Plains (694): South Plains (694) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 82 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| South Plains (694): South Plains (694) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| South Plains (694): South Plains (694) | Hartford Casualty Insurance Company | 46 TMP 100576 | 2/16/1976 | 2/16/1977 | 2/16/1976 | 2/16/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| South Plains (694): South Plains (694) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220213 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE)* |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| South Plains (694): South Plains (694) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| South Plains (694): South Plains (694) | Hartford Casualty Insurance Company | 46 TMP 100576 | 2/16/1977 | 2/16/1978 | 2/16/1977 | 2/16/1978 | | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| South Plains (694): South Plains (694) | Hartford Casualty Insurance Company | 46 TMP 100576 | 2/16/1978 | 2/16/1979 | 2/16/1978 | 2/16/1979 | | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| South Texas (577): Gulf Coast 1929-2002 (577) | U.S. Fire Insurance Company | CGL 48 44 08 | 5/16/1966 | 5/16/1967 | 5/16/1966 | 5/16/1967 | | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | SE |
| South Texas (577): Gulf Coast 1929-2002 (577) | U.S. Fire Insurance Company | Unknown | 5/16/1967 | 5/16/1968 | 5/16/1967 | 5/16/1968 | | Unknown | Unknown | Unknown | Unknown | SE |
| South Texas (577): Gulf Coast 1929-2002 (577) | U.S. Fire Insurance Company | Unknown | 5/16/1968 | 5/16/1969 | 5/16/1968 | 5/16/1969 | | Unknown | Unknown | Unknown | Unknown | SE |
| South Texas (577): Gulf Coast 1929-2002 (577) | U.S. Fire Insurance Company | Unknown | 5/16/1969 | 5/16/1970 | 5/16/1969 | 5/16/1970 | | Unknown | Unknown | Unknown | Unknown | SE |
| South Texas (577): Gulf Coast 1929-2002 (577) | U.S. Fire Insurance Company | Unknown | 5/16/1970 | 5/16/1971 | 5/16/1970 | 5/16/1971 | | Unknown | Unknown | Unknown | Unknown | SE |
| South Texas (577): Gulf Coast 1929-2002 (577) | U.S. Fire Insurance Company | Unknown | 5/16/1971 | 1/1/1972 | 5/16/1971 | 1/1/1972 | | Unknown | Unknown | Unknown | Unknown | SE |
| South Texas (577): Gulf Coast 1929-2002 (577) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 75 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| South Texas (577): Gulf Coast 1929-2002 (577) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| South Texas (577): Gulf Coast 1929-2002 (577) | Employers Casualty Company | C-558681 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | | Unknown | Unknown | Unknown | Unknown | SE |
| South Texas (577): Gulf Coast 1929-2002 (577) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220206 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| South Texas (577): Gulf Coast 1929-2002 (577) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Southeast Louisiana (214): New Orleans Area 1927-1993 (214) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 60 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Southeast Louisiana (214): New Orleans Area 1927-1993 (214) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Southeast Louisiana (214): New Orleans Area 1927-1993 (214) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220108 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Southeast Louisiana (214): New Orleans Area 1927-1993 (214) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Southeast Louisiana (214): Southeast Louisiana (214) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Southeast Louisiana (214): Southeast Louisiana (214) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Southern Shores FSC (783): Southern Shores FSC (783) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Southern Shores FSC (783): Southern Shores FSC (783) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Southern Sierra (30): Southern Sierra 1965- (30) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | | Unknown | Unknown | Unknown | Unknown | SE |
| Southern Sierra (30): Southern Sierra 1965- (30) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 28 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Southern Sierra (30): Southern Sierra 1965- (30) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Southern Sierra (30): Southern Sierra 1965- (30) | Jefferson Insurance Company of New York | 65898 | 1/1/1977 | 4/1/1977 | 1/1/1977 | 4/1/1977 | | Unknown | Unknown | Unknown | Unknown | SE |
| Southern Sierra (30): Southern Sierra 1965- (30) | Jefferson Insurance Company of New York | 65899 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | | Unknown | Unknown | Unknown | Unknown | SE |
| Southern Sierra (30): Southern Sierra 1965- (30) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219877 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Southern Sierra (30): Southern Sierra 1965- (30) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Southern Sierra (30): Southern Sierra 1965- (30) | New Hampshire Insurance Company | GLA 282518 | 4/1/1977 | 4/1/1978 | 4/1/1977 | 4/1/1978 | | Unknown | Unknown | Unknown | Unknown | SE |
| Southwest Florida (88): Southwest Florida 1966- (88) | Insurance Company of North America | SBL 45392 | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | | Unknown | Unknown | Unknown | Unknown | SE |
| Southwest Florida (88): Southwest Florida 1966- (88) | Insurance Company of North America | SBL 45392 | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | | Unknown | Unknown | Unknown | Unknown | SE |
| Southwest Florida (88): Southwest Florida 1966- (88) | Insurance Company of North America | SBL 45392 | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | | Unknown | Unknown | Unknown | Unknown | SE |
| Southwest Florida (88): Southwest Florida 1966- (88) | Insurance Company of North America | SBL 51305 | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Southwest Florida (88): Southwest Florida 1966- (88) | Insurance Company of North America | SBL 51305 | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Southwest Florida (88): Southwest Florida 1966- (88) | Insurance Company of North America | SBL 51305 | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Southwest Florida (88): Southwest Florida 1966- (88) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 77 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Southwest Florida (88): Southwest Florida 1966- (88) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219925 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Southwest Florida (88): Sunny Land 1925-1995 (724) | Insurance Company of North America | SBL 4 53 54 | 11/17/1965 | 11/17/1966 | 11/17/1965 | 11/17/1966 | | Unknown | Unknown | Unknown | Unknown | SE |
| Southwest Florida (88): Sunny Land 1925-1995 (724) | Insurance Company of North America | SBL 4 53 54 | 11/17/1966 | 11/17/1967 | 11/17/1966 | 11/17/1967 | | Unknown | Unknown | Unknown | Unknown | SE |
| Southwest Florida (88): Sunny Land 1925-1995 (724) | Insurance Company of North America | SBL 4 53 54 | 11/17/1967 | 11/17/1968 | 11/17/1967 | 11/17/1968 | | Unknown | Unknown | Unknown | Unknown | SE |
| Southwest Florida (88): Sunny Land 1925-1995 (724) | Insurance Company of North America | SBL 50422 | 11/17/1968 | 11/17/1969 | 11/17/1968 | 11/17/1969 | | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Southwest Florida (88): Sunny Land 1925-1995 (724) | Insurance Company of North America | SBL 50422 | 11/17/1969 | 11/17/1970 | 11/17/1969 | 11/17/1970 | | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Southwest Florida (88): Sunny Land 1925-1995 (724) | Insurance Company of North America | SBL 50422 | 11/17/1970 | 11/17/1971 | 11/17/1970 | 11/17/1971 | | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Southwest Florida (88): Sunny Land 1925-1995 (724) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | | Unknown | Unknown | Unknown | Unknown | SE |
| Southwest Florida (88): Sunny Land 1925-1995 (724) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 82 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Southwest Florida (88): Sunny Land 1925-1995 (724) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Southwest Florida (88): Sunny Land 1925-1995 (724) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219930 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Southwest Florida (88): Sunny Land 1925-1995 (724) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Southwest Florida (88): Sunny Land 1925-1995 (724) | New Hampshire Insurance Company | GLA 282417 | 2/10/1977 | 2/10/1978 | 2/10/1977 | 2/10/1978 | | Unknown | Unknown | Unknown | Unknown | SE |
| Spirit of Adventure (227): Boston 1921-1980 (227) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 68 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): Boston 1921-1980 (227) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): Boston 1921-1980 (227) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220116 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): Boston 1921-1980 (227) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): Cambridge 1919-2001 (229) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 70 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): Cambridge 1919-2001 (229) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): Cambridge 1919-2001 (229) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220120 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): Cambridge 1919-2001 (229) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): Greater Lowell 1927-1977 (238) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 78 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): Greater Lowell 1927-1977 (238) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): Greater Lowell 1927-1977 (238) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): Greater Lowell 1977-1999 (238) | Unknown | Unknown | 1/1/1957 | 1/1/1958 | 1/1/1957 | 1/1/1958 | | Unknown | Unknown | Unknown | Unknown | SE |
| Spirit of Adventure (227): Greater Lowell 1977-1999 (238) | Unknown | Unknown | 1/1/1958 | 1/1/1959 | 1/1/1958 | 1/1/1959 | | Unknown | Unknown | Unknown | Unknown | SE |
| Spirit of Adventure (227): Greater Lowell 1977-1999 (238) | Unknown | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | | Unknown | Unknown | Unknown | Unknown | SE |
| Spirit of Adventure (227): Greater Lowell 1977-1999 (238) | Unknown | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | | Unknown | Unknown | Unknown | Unknown | SE |
| Spirit of Adventure (227): Greater Lowell 1977-1999 (238) | Unknown | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | | Unknown | Unknown | Unknown | Unknown | SE |
| Spirit of Adventure (227): Greater Lowell 1977-1999 (238) | Unknown | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | | Unknown | Unknown | Unknown | Unknown | SE |
| Spirit of Adventure (227): Greater Lowell 1977-1999 (238) | Unknown | Unknown | 1/1/1963 | 1/1/1964 | 1/1/1963 | 1/1/1964 | | Unknown | Unknown | Unknown | Unknown | SE |
| Spirit of Adventure (227): Greater Lowell 1977-1999 (238) | Insurance Company of North America | Unknown | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | | Unknown | Unknown | Unknown | Unknown | SE |
| Spirit of Adventure (227): Greater Lowell 1977-1999 (238) | Insurance Company of North America | Unknown | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | | Unknown | Unknown | Unknown | Unknown | SE |
| Spirit of Adventure (227): Greater Lowell 1977-1999 (238) | Insurance Company of North America | Unknown | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | | Unknown | Unknown | Unknown | Unknown | SE |
| Spirit of Adventure (227): Greater Lowell 1977-1999 (238) | Insurance Company of North America | Unknown | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | | Unknown | Unknown | Unknown | Unknown | SE |
| Spirit of Adventure (227): Greater Lowell 1977-1999 (238) | Insurance Company of North America | Unknown | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | | Unknown | Unknown | Unknown | Unknown | SE |
| Spirit of Adventure (227): Greater Lowell 1977-1999 (238) | Insurance Company of North America | Unknown | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | | Unknown | Unknown | Unknown | Unknown | SE |
| Spirit of Adventure (227): Greater Lowell 1977-1999 (238) | Insurance Company of North America | Unknown | 1/1/1970 | 3/6/1970 | 1/1/1970 | 3/6/1970 | | Unknown | Unknown | Unknown | Unknown | SE |
| Spirit of Adventure (227): Greater Lowell 1977-1999 (238) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220128 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): Greater Lowell 1977-1999 (238) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): Lone Tree 1926-1993 (749) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | | Unknown | Unknown | Unknown | Unknown | SE |
| Spirit of Adventure (227): Lone Tree 1926-1993 (749) | SBL 46915 | SBL 46915 | 3/6/1970 | 3/6/1971 | 3/6/1970 | 3/6/1971 | | Unknown | Unknown | Unknown | Unknown | SE |
| Spirit of Adventure (227): Lone Tree 1926-1993 (749) | Insurance Company of North America | SBL 51409 | 3/6/1972 | 3/6/1973 | 3/6/1972 | 3/6/1973 | | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): Lone Tree 1926-1993 (749) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 74 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): Lone Tree 1926-1993 (749) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): Lone Tree 1926-1993 (749) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220124 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): Lone Tree 1926-1993 (749) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): Mass. Bay Federated 1976-1979 (850) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): Mass. Bay Federated 1976-1979 (850) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): Minuteman 1959-1993 (240) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 81 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Spirit of Adventure (227): Minuteman 1959-1993 (240) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): Minuteman 1959-1993 (240) | BE 1220132 | BE 1220132 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): Minuteman 1959-1993 (240) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): North Bay 1966-1993 (236) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 80 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): North Bay 1966-1993 (236) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): North Bay 1966-1993 (236) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220131 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): North Bay 1966-1993 (236) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): North Essex 1925-1993 (712) | Insurance Company of North America | SBL 50418 | 6/10/1968 | 6/10/1969 | 6/10/1968 | 6/10/1969 | | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): North Essex 1925-1993 (712) | Insurance Company of North America | SBL 50418 | 6/10/1969 | 6/10/1970 | 6/10/1969 | 6/10/1970 | | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): North Essex 1925-1993 (712) | Insurance Company of North America | SBL 50418 | 6/10/1970 | 6/10/1971 | 6/10/1970 | 6/10/1971 | | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): North Essex 1925-1993 (712) | Insurance Company of North America | SBL 51562 | 6/10/1971 | 6/10/1972 | 6/10/1971 | 6/10/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): North Essex 1925-1993 (712) | New Hampshire Insurance Company | SLP 63-47-76 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Spirit of Adventure (227): North Essex 1925-1993 (712) | New Hampshire Insurance Company | UL 078557 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): North Essex 1925-1993 (712) | New Hampshire Insurance Company | SLP 63-49-02 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): North Essex 1925-1993 (712) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 77 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): North Essex 1925-1993 (712) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): North Essex 1925-1993 (712) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Spirit of Adventure (227): North Essex 1925-1993 (712) | BE 1220127 | BE 1220127 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): North Essex 1925-1993 (712) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Spirit of Adventure (227): North Shore 1925-1966 (701) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Suffolk County (404): Suffolk County (404) | Insurance Company of North America | XBC 65760 | 6/1/1967 | 6/1/1968 | 6/1/1967 | 6/1/1968 | 300,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Suffolk County (404): Suffolk County (404) | Insurance Company of North America | XBC 65760 | 6/1/1968 | 6/1/1969 | 6/1/1968 | 6/1/1969 | 300,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Suffolk County (404): Suffolk County (404) | Hartford Accident and Indemnity Company | 12 CPP 500098 | 6/1/1969 | 6/1/1970 | 6/1/1969 | 6/1/1970 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Suffolk County (404): Suffolk County (404) | Insurance Company of North America | XBC 65760 | 6/1/1969 | 6/1/1970 | 6/1/1969 | 6/1/1970 | 300,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Suffolk County (404): Suffolk County (404) | Hartford Accident and Indemnity Company | 12 CPP 500098 | 6/1/1970 | 6/1/1971 | 6/1/1970 | 6/1/1971 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Suffolk County (404): Suffolk County (404) | Unknown | Unknown | 6/1/1970 | 6/1/1971 | 6/1/1970 | 6/1/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Suffolk County (404): Suffolk County (404) | Insurance Company of North America | XBC-73765 | 6/1/1970 | 6/1/1971 | 6/1/1970 | 6/1/1971 | 300,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Suffolk County (404): Suffolk County (404) | Hartford Accident and Indemnity Company | 12 CPP 500098 | 6/1/1971 | 6/1/1972 | 6/1/1971 | 6/1/1972 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Suffolk County (404): Suffolk County (404) | Unknown | Unknown | 6/1/1971 | 6/1/1972 | 6/1/1971 | 6/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Suffolk County (404): Suffolk County (404) | Insurance Company of North America | XBC-73765 | 6/1/1971 | 3/9/1972 | 6/1/1971 | 3/9/1972 | 300,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Suffolk County (404): Suffolk County (404) | Insurance Company of North America | XBC 73765 | 3/9/1972 | 3/7/1973 | 3/9/1972 | 3/7/1973 | 300,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Suffolk County (404): Suffolk County (404) | Hartford Accident and Indemnity Company | 12 SMP 304687 | 6/1/1972 | 6/1/1973 | 6/1/1972 | 6/1/1973 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Suffolk County (404): Suffolk County (404) | Unknown | Unknown | 6/1/1972 | 6/1/1973 | 6/1/1972 | 6/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Suffolk County (404): Suffolk County (404) | Insurance Company of North America | XBC 73765 | 3/7/1973 | 6/1/1973 | 3/7/1973 | 6/1/1973 | 300,000.00 | $ 2,500,000.00 | $ 2,500,000.00 | Unknown | Unknown | PE |
| Suffolk County (404): Suffolk County (404) | Hartford Accident and Indemnity Company | 12 SMP 304687 | 6/1/1973 | 6/1/1974 | 6/1/1973 | 6/1/1974 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Suffolk County (404): Suffolk County (404) | Hartford Accident and Indemnity Company | 12 CBP 400297 | 6/1/1974 | 6/1/1975 | 6/1/1974 | 6/1/1975 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Suffolk County (404): Suffolk County (404) | Hartford Accident and Indemnity Company | 12 CBP 400297 | 6/1/1975 | 6/1/1976 | 6/1/1975 | 6/1/1976 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Suffolk County (404): Suffolk County (404) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 66 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Suffolk County (404): Suffolk County (404) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Suffolk County (404): Suffolk County (404) | Hartford Accident and Indemnity Company | 12 CBP 400297 | 6/1/1976 | 6/1/1977 | 6/1/1976 | 6/1/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Suffolk County (404): Suffolk County (404) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220019 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Suffolk County (404): Suffolk County (404) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Suffolk County (404): Suffolk County (404) | Hartford Accident and Indemnity Company | 12 CBP 400656 | 6/1/1977 | 6/1/1978 | 6/1/1977 | 6/1/1978 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Suffolk County (404): Suffolk County (404) | Hartford Accident and Indemnity Company | 12 CBP 400656 | 6/1/1978 | 6/1/1979 | 6/1/1978 | 6/1/1979 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Suffolk County (404): Suffolk County (404) | Hartford Accident and Indemnity Company | 12 CBP 400656 | 6/1/1979 | 6/1/1980 | 6/1/1979 | 6/1/1980 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): Susquehanna 1975- (533) | Insurance Company of North America | XBC 9 85 02 | 1/1/1972 | 10/18/1972 | 1/1/1972 | 10/18/1972 | 300,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): Susquehanna 1975- (533) | Insurance Company of North America | XBC 9 85 02 | 10/18/1972 | 1/1/1973 | 10/18/1972 | 1/1/1973 | 300,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): Susquehanna 1975- (533) | Insurance Company of North America | XBC 9 85 02 | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | 300,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): Susquehanna 1975- (533) | Insurance Company of North America | XBC 9 85 02 | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | 300,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): Susquehanna 1975- (533) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 51 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): Susquehanna 1975- (533) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): Susquehanna 1975- (533) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220273 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): Susquehanna 1975- (533) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): Susquehanna Valley 1927-1975 (533) | Insurance Company of North America | 4 47 50 | 6/14/1965 | 6/14/1966 | 6/14/1965 | 6/14/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Susquehanna (533): Susquehanna Valley 1927-1975 (533) | Insurance Company of North America | 4 47 50 | 6/14/1966 | 6/14/1967 | 6/14/1966 | 6/14/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Susquehanna (533): Susquehanna Valley 1927-1975 (533) | Insurance Company of North America | 4 47 50 | 6/14/1967 | 6/14/1968 | 6/14/1967 | 6/14/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Susquehanna (533): Susquehanna Valley 1927-1975 (533) | Insurance Company of North America | SBL 4 84 64 | 6/14/1968 | 6/14/1969 | 6/14/1968 | 6/14/1969 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): Susquehanna Valley 1927-1975 (533) | Insurance Company of North America | SBL 4 84 64 | 6/14/1969 | 6/14/1970 | 6/14/1969 | 6/14/1970 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): Susquehanna Valley 1927-1975 (533) | Insurance Company of North America | SBL 4 84 64 | 6/14/1970 | 6/14/1971 | 6/14/1970 | 6/14/1971 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): Susquehanna Valley 1927-1975 (533) | Insurance Company of North America | SBL 53078 | 7/14/1971 | 7/13/1972 | 7/14/1971 | 7/13/1972 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): Susquehanna Valley 1927-1975 (533) | Insurance Company of North America | SBL 53078 | 7/13/1972 | 2/22/1973 | 7/13/1972 | 2/22/1973 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): Susquehanna Valley 1927-1975 (533) | Insurance Company of North America | GLP 411728 | 2/22/1973 | 2/22/1974 | 2/22/1973 | 2/22/1974 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): Susquehanna Valley 1927-1975 (533) | Unknown | Unknown | 2/22/1973 | 2/22/1974 | 2/22/1973 | 2/22/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Susquehanna (533): Susquehanna Valley 1927-1975 (533) | Insurance Company of North America | XBC 9 68 34 | 2/22/1973 | 2/22/1974 | 2/22/1973 | 2/22/1974 | 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): Susquehanna Valley 1927-1975 (533) | Insurance Company of North America | GLP 411728 | 2/22/1974 | 2/22/1975 | 2/22/1974 | 2/22/1975 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): Susquehanna Valley 1927-1975 (533) | Unknown | Unknown | 2/22/1974 | 1/1/1975 | 2/22/1974 | 1/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Susquehanna (533): Susquehanna Valley 1927-1975 (533) | Insurance Company of North America | XBC 9 68 34 | 2/22/1974 | 2/22/1975 | 2/22/1974 | 2/22/1975 | 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): West Branch 1935-1975 (543) | Insurance Company of North America | SBL-4-48-96 | 2/9/1967 | 2/9/1968 | 2/9/1967 | 2/9/1968 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): West Branch 1935-1975 (543) | Insurance Company of North America | SBL-4-48-96 | 2/9/1968 | 2/9/1969 | 2/9/1968 | 2/9/1969 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): West Branch 1935-1975 (543) | Insurance Company of North America | SBL-4-48-96 | 2/9/1969 | 2/9/1970 | 2/9/1969 | 2/9/1970 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): West Branch 1935-1975 (543) | Insurance Company of North America | SBL 5 30 08 | 2/9/1970 | 2/9/1971 | 2/9/1970 | 2/9/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Susquehanna (533): West Branch 1935-1975 (543) | Insurance Company of North America | SBL 5 30 08 | 2/9/1971 | 2/9/1972 | 2/9/1971 | 2/9/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Susquehanna (533): West Branch 1935-1975 (543) | Insurance Company of North America | SBL 5 30 08 | 2/9/1972 | 2/9/1973 | 2/9/1972 | 2/9/1973 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): West Branch 1935-1975 (543) | Insurance Company of North America | GLP 40 76 42 | 2/9/1973 | 2/9/1974 | 2/9/1973 | 2/9/1974 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): West Branch 1935-1975 (543) | Insurance Company of North America | XBC 9 68 17 | 2/9/1973 | 2/9/1974 | 2/9/1973 | 2/9/1974 | 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): West Branch 1935-1975 (543) | Insurance Company of North America | GLP 40 76 42 | 2/9/1974 | 2/9/1975 | 2/9/1974 | 2/9/1975 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): West Branch 1935-1975 (543) | Insurance Company of North America | XBC 9 68 17 | 2/9/1974 | 2/9/1975 | 2/9/1974 | 2/9/1975 | 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Susquehanna (533): West Branch 1935-1975 (543) | Insurance Company of North America | XBC 9 68 17 | 2/9/1975 | 3/26/1975 | 2/9/1975 | 3/26/1975 | 500,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | PE |
| Suwannee River Area (664): Suwannee River Area (664) | Hartford Accident and Indemnity Company | 21 SMP 118708 | 9/15/1975 | 9/15/1976 | 9/15/1975 | 9/15/1976 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Suwannee River Area (664): Suwannee River Area (664) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 84 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Suwannee River Area (664): Suwannee River Area (664) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Suwannee River Area (664): Suwannee River Area (664) | Hartford Accident and Indemnity Company | 21 SMP 118708 | 9/15/1976 | 9/15/1977 | 9/15/1976 | 9/15/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Suwannee River Area (664): Suwannee River Area (664) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 2/10/1978 | 1/1/1977 | 2/10/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Suwannee River Area (664): Suwannee River Area (664) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219912 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Suwannee River Area (664): Suwannee River Area (664) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Suwannee River Area (664): Suwannee River Area (664) | Hartford Accident and Indemnity Company | 21 SMP 118708 | 9/15/1977 | 1/1/1978 | 9/15/1977 | 1/1/1978 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Limit | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Tecumseh (439): Tecumseh (439) | Insurance Company of North America | AGP-68-33 | 12/15/1965 | 12/15/1966 | 12/15/1965 | 12/15/1966 | $ - | Unknown² | Unknown² | Unknown | Unknown | PE |
| Tecumseh (439): Tecumseh (439) | Insurance Company of North America | AGP-68-33 | 12/15/1966 | 12/15/1967 | 12/15/1966 | 12/15/1967 | $ - | Unknown² | Unknown² | Unknown | Unknown | PE |
| Tecumseh (439): Tecumseh (439) | Insurance Company of North America | AGP-68-33 | 12/15/1967 | 12/15/1968 | 12/15/1967 | 12/15/1968 | $ - | Unknown² | Unknown² | Unknown | Unknown | PE |
| Tecumseh (439): Tecumseh (439) | Insurance Company of North America | AGP-1-64-96 | 12/15/1968 | 12/15/1969 | 12/15/1968 | 12/15/1969 | $ - | Unknown² | Unknown² | Unknown | Unknown | PE |
| Tecumseh (439): Tecumseh (439) | Insurance Company of North America | AGP-1-64-96 | 12/15/1969 | 12/15/1970 | 12/15/1969 | 12/15/1970 | $ - | Unknown² | Unknown² | Unknown | Unknown | PE |
| Tecumseh (439): Tecumseh (439) | Insurance Company of North America | AGP-1-64-96 | 12/15/1970 | 12/15/1971 | 12/15/1970 | 12/15/1971 | $ - | Unknown² | Unknown² | Unknown | Unknown | PE |
| Tecumseh (439): Tecumseh (439) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 11 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Tecumseh (439): Tecumseh (439) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Tecumseh (439): Tecumseh (439) | National Union Fire Insurance Company of Pittsburgh, PA | BE 122006-4 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Tecumseh (439): Tecumseh (439) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Texas Southwest (741): Concho Valley 1926-2012 (741) | Insurance Company of North America | SBL 5 13 91 | 4/1/1970 | 4/1/1971 | 4/1/1970 | 4/1/1971 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Texas Southwest (741): Concho Valley 1926-2012 (741) | Insurance Company of North America | SBL 5 13 91 | 4/1/1971 | 4/1/1972 | 4/1/1971 | 4/1/1972 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Texas Southwest (741): Concho Valley 1926-2012 (741) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 86 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Texas Southwest (741): Concho Valley 1926-2012 (741) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Texas Southwest (741): Concho Valley 1926-2012 (741) | National Union Fire Insurance Company of Pittsburgh, PA | BE 122021-7 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Texas Southwest (741): Concho Valley 1926-2012 (741) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Texas Trails (561): Chisholm Trail 1926-2003 (561) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Texas Trails (561): Chisholm Trail 1926-2003 (561) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 70 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Texas Trails (561): Chisholm Trail 1926-2003 (561) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Texas Trails (561): Chisholm Trail 1926-2003 (561) | New Hampshire Insurance Company | GLA 332324 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Texas Trails (561): Chisholm Trail 1926-2003 (561) | Ambassador Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 50,000.00 | $ 450,000.00 | $ 450,000.00 | Unknown | Unknown | SE |
| Texas Trails (561): Chisholm Trail 1926-2003 (561) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220201 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Texas Trails (561): Chisholm Trail 1926-2003 (561) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Texas Trails (561): Comanche Trail 1932-2003 (479) | Insurance Company of North America | SBL 45420 | 12/5/1968 | 12/5/1969 | 12/5/1968 | 12/5/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Texas Trails (561): Comanche Trail 1932-2003 (479) | Insurance Company of North America | SBL 45425 | 12/5/1969 | 12/5/1970 | 12/5/1969 | 12/5/1970 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Texas Trails (561): Comanche Trail 1932-2003 (479) | Insurance Company of North America | Unknown | 12/5/1970 | 12/5/1971 | 12/5/1970 | 12/5/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Texas Trails (561): Comanche Trail 1932-2003 (479) | Insurance Company of North America | Unknown | 12/5/1971 | 1/1/1972 | 12/5/1971 | 1/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Texas Trails (561): Comanche Trail 1932-2003 (479) | New Hampshire Insurance Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Texas Trails (561): Comanche Trail 1932-2003 (479) | New Hampshire Insurance Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ 500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Texas Trails (561): Comanche Trail 1932-2003 (479) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Texas Trails (561): Comanche Trail 1932-2003 (479) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 74 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Texas Trails (561): Comanche Trail 1932-2003 (479) | Unknown | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Texas Trails (561): Comanche Trail 1932-2003 (479) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Texas Trails (561): Comanche Trail 1932-2003 (479) | National Union Fire Insurance Company of Pittsburgh, PA | BE 122020S | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Texas Trails (561): Comanche Trail 1932-2003 (479) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | Unknown | 1/1/1963 | 1/1/1964 | 1/1/1963 | 1/1/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | Unknown | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | Unknown | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | Unknown | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | Unknown | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | XBC 41011 | 1/12/1967 | 1/12/1968 | 1/12/1967 | 1/12/1968 | $ 100,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | XBC 41011 | 1/12/1968 | 1/12/1969 | 1/12/1968 | 1/12/1969 | $ 100,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | AGP-1-88-16 | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | XBC 41011 | 1/12/1969 | 1/12/1970 | 1/12/1969 | 1/12/1970 | $ 100,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | AGP-1-88-16 | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | XBC 43053 | 1/12/1970 | 1/12/1971 | 1/12/1970 | 1/12/1971 | $ 100,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | GLP 19 73 26 | 2/20/1970 | 2/20/1971 | 2/20/1970 | 2/20/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | AGP-1-88-16 | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Unknown | Unknown | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | XBC 43053 | 1/12/1971 | 1/12/1972 | 1/12/1971 | 1/12/1972 | $ 100,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | GLP 28 44 92 | 2/20/1971 | 2/20/1972 | 2/20/1971 | 2/20/1972 | $ - | $ 30,000.00 | $ 30,000.00 | Unknown | Unknown | PE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | AGP 09 98 41 | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | XBC 43053 | 1/12/1972 | 1/12/1973 | 1/12/1972 | 1/12/1973 | $ 100,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | AGP 09 98 41 | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | SE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | XBC 45540 | 1/12/1973 | 1/12/1974 | 1/12/1973 | 1/12/1974 | $ 300,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | AGP 09 98 41 | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | XBC 45540 | 1/12/1974 | 1/12/1975 | 1/12/1974 | 1/12/1975 | $ 300,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | AGP 09 98 41 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | XBC 45540 | 1/12/1975 | 1/12/1976 | 1/12/1975 | 1/12/1976 | $ 300,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 73 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | New Hampshire Insurance Company | Unknown | 1/12/1976 | 1/1/1977 | 1/12/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Insurance Company of North America | XCP 12350 | 1/12/1976 | 3/1/1976 | 1/12/1976 | 3/1/1976 | $ 2,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | New Hampshire Insurance Company | GLA 210262 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Ambassador Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 50,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220046 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Theodore Roosevelt (386): Nassau County 1916-1997 (386) | Continental Casualty Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 2,500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Three Fires (127): Chief Shabbona 1931-1968 (735) | Insurance Company of North America | SBL 4 29 79 | 3/29/1965 | 3/29/1966 | 3/29/1965 | 3/29/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Fires (127): Chief Shabbona 1931-1968 (735) | Insurance Company of North America | SBL 4 29 79 | 3/29/1966 | 3/29/1967 | 3/29/1966 | 3/29/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Fires (127): Chief Shabbona 1931-1968 (735) | Insurance Company of North America | SBL 4 29 79 | 3/29/1967 | 3/29/1968 | 3/29/1967 | 3/29/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Fires (127): Du Page Area 1928-1992 (148) | Insurance Company of North America | RWP-2-70-86 | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Three Fires (127): Du Page Area 1928-1992 (148) | Insurance Company of North America | RWP-2-70-86 | 1/1/1968 | 4/29/1969 | 1/1/1968 | 4/29/1969 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | PE |
| Three Fires (127): Du Page Area 1928-1992 (148) | Insurance Company of North America | SBL 5 11 76 | 4/29/1969 | 4/29/1970 | 4/29/1969 | 4/29/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Three Fires (127): Du Page Area 1928-1992 (148) | Insurance Company of North America | SBL 5 11 76 | 4/29/1970 | 4/29/1971 | 4/29/1970 | 4/29/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Three Fires (127): Du Page Area 1928-1992 (148) | Insurance Company of North America | XPL 17137 | 4/29/1970 | 4/29/1971 | 4/29/1970 | 4/29/1971 | $ 500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Three Fires (127): Du Page Area 1928-1992 (148) | Insurance Company of North America | SBL 5 11 76 | 4/29/1971 | 4/29/1972 | 4/29/1971 | 4/29/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Three Fires (127): Du Page Area 1928-1992 (148) | Insurance Company of North America | XPL 17137 | 4/29/1971 | 4/29/1972 | 4/29/1971 | 4/29/1972 | $ 500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Three Fires (127): Du Page Area 1928-1992 (148) | Insurance Company of North America | SBL 51829 | 4/29/1972 | 4/29/1973 | 4/29/1972 | 4/29/1973 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Three Fires (127): Du Page Area 1928-1992 (148) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219973 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Three Fires (127): Du Page Area 1928-1992 (148) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |

Page 49 of 54

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Three Fires (127): Du Page Area 1928-1992 (148) | Hartford Accident and Indemnity Company | 82 UUN PN2419 | 6/1/1985 | 6/1/1986 | 6/1/1985 | 6/1/1986 | $ - | $ 25,000.00 | $ 25,000.00 | Unknown | Unknown | PE |
| Three Fires (127): Fox River Valley 1957-1972 (123) | Unknown | 2-SZ-43 | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Fires (127): Two Rivers 1968-1992 (127) | Insurance Company of North America | SBL-2-51-01 | 3/1/1967 | 3/1/1968 | 3/1/1967 | 3/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Fires (127): Two Rivers 1968-1992 (127) | Insurance Company of North America | SBL-2-51-43 | 3/1/1968 | 3/1/1969 | 3/1/1968 | 3/1/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Three Fires (127): Two Rivers 1968-1992 (127) | Insurance Company of North America | SBL 51809 | 3/1/1969 | 3/1/1970 | 3/1/1969 | 3/1/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Fires (127): Two Rivers 1968-1992 (127) | Insurance Company of North America | SBL 51826 | 3/1/1970 | 3/1/1971 | 3/1/1970 | 3/1/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Three Fires (127): Two Rivers 1968-1992 (127) | Insurance Company of North America | SBL S 18 58 | 3/1/1971 | 3/1/1972 | 3/1/1971 | 3/1/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Three Fires (127): Two Rivers 1968-1992 (127) | Unknown | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Fires (127): Two Rivers 1968-1992 (127) | Insurance Company of North America | GAL 24 20 22 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Three Fires (127): Two Rivers 1968-1992 (127) | Unknown | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Fires (127): Two Rivers 1968-1992 (127) | Insurance Company of North America | GAL 23 79 42 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Three Fires (127): Two Rivers 1968-1992 (127) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 25 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Three Fires (127): Two Rivers 1968-1992 (127) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Three Fires (127): Two Rivers 1968-1992 (127) | INA Insurance Company of Illinois | GAL 23 74 77 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Three Fires (127): Two Rivers 1968-1992 (127) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219971 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Three Fires (127): Two Rivers 1968-1992 (127) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Three Fires (127): Two Rivers/DuPage Area 1992-1993 (127) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Fires (127): Two Rivers/DuPage Area 1992-1993 (127) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 27 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | SE |
| Three Harbors (636): Kenosha 1961-1972 (623) | Insurance Company of North America | SBL 41511 | 2/5/1966 | 2/5/1967 | 2/5/1966 | 2/5/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Harbors (636): Kenosha 1961-1972 (623) | Insurance Company of North America | SBL 41526 | 2/5/1967 | 2/5/1968 | 2/5/1967 | 2/5/1968 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Three Harbors (636): Kenosha 1961-1972 (623) | Insurance Company of North America | SBL-4-15-39 | 2/5/1968 | 2/5/1969 | 2/5/1968 | 2/5/1969 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Three Harbors (636): Milwaukee County 1929-2011 (629) | Insurance Company of North America | CGL190079 | 10/1/1962 | 10/1/1963 | 10/1/1962 | 10/1/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Harbors (636): Milwaukee County 1929-2011 (629) | Insurance Company of North America | CGL190079 | 10/1/1963 | 10/1/1964 | 10/1/1963 | 10/1/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Harbors (636): Milwaukee County 1929-2011 (629) | Insurance Company of North America | CGL190079 | 10/1/1964 | 10/1/1965 | 10/1/1964 | 10/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Harbors (636): Milwaukee County 1929-2011 (629) | Insurance Company of North America | SBL 41515 | 10/1/1965 | 10/1/1966 | 10/1/1965 | 10/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Harbors (636): Milwaukee County 1929-2011 (629) | Insurance Company of North America | SBL-4-15-20 | 10/1/1966 | 10/1/1967 | 10/1/1966 | 10/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Harbors (636): Milwaukee County 1929-2011 (629) | Insurance Company of North America | SBL-4-15-31 | 10/1/1967 | 10/1/1968 | 10/1/1967 | 10/1/1968 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Three Harbors (636): Milwaukee County 1929-2011 (629) | Insurance Company of North America | SBL 4 15 42 | 10/1/1968 | 10/1/1969 | 10/1/1968 | 10/1/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Three Harbors (636): Milwaukee County 1929-2011 (629) | Insurance Company of North America | SBL 4 15 50 | 10/1/1969 | 10/1/1970 | 10/1/1969 | 10/1/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Three Harbors (636): Milwaukee County 1929-2011 (629) | Insurance Company of North America | SBL 4 15 59 | 10/1/1970 | 10/1/1971 | 10/1/1970 | 10/1/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Three Harbors (636): Milwaukee County 1929-2011 (629) | Unknown | Unknown | 10/1/1971 | 10/1/1972 | 10/1/1971 | 10/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Harbors (636): Milwaukee County 1929-2011 (629) | Insurance Company of North America | Unknown | 10/1/1972 | 10/1/1973 | 10/1/1972 | 10/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Harbors (636): Milwaukee County 1929-2011 (629) | St. Paul Fire and Marine Insurance Company | 648NA2353 | 10/1/1973 | 10/1/1974 | 10/1/1973 | 10/1/1974 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Three Harbors (636): Milwaukee County 1929-2011 (629) | St. Paul Fire and Marine Insurance Company | 648XA6131 | 3/12/1974 | 3/12/1975 | 3/12/1974 | 3/12/1975 | $ 500,000.00 | $ 3,000,000.00 | $ 3,000,000.00 | Unknown | Unknown | SE |
| Three Harbors (636): Milwaukee County 1929-2011 (629) | St. Paul Fire and Marine Insurance Company | 648NA2353 | 10/1/1974 | 10/1/1975 | 10/1/1974 | 10/1/1975 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Three Harbors (636): Milwaukee County 1929-2011 (629) | St. Paul Fire and Marine Insurance Company | 648XA6131 | 3/12/1975 | 3/12/1976 | 3/12/1975 | 3/12/1976 | $ 500,000.00 | $ 3,000,000.00 | $ 3,000,000.00 | Unknown | Unknown | SE |
| Three Harbors (636): Milwaukee County 1929-2011 (629) | St. Paul Fire and Marine Insurance Company | 648NA2353 | 10/1/1975 | 10/1/1976 | 10/1/1975 | 10/1/1976 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Three Harbors (636): Milwaukee County 1929-2011 (629) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Three Harbors (636): Milwaukee County 1929-2011 (629) | St. Paul Fire and Marine Insurance Company | 648XA6131 | 3/12/1976 | 10/1/1976 | 3/12/1976 | 10/1/1976 | $ 500,000.00 | $ 3,000,000.00 | $ 3,000,000.00 | Unknown | Unknown | SE |
| Three Harbors (636): Milwaukee County 1929-2011 (629) | St. Paul Fire and Marine Insurance Company | 648NA5036 | 10/1/1976 | 10/1/1977 | 10/1/1976 | 10/1/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Three Harbors (636): Milwaukee County 1929-2011 (629) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220262 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Three Harbors (636): Milwaukee County 1929-2011 (629) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Three Harbors (636): Milwaukee County 1929-2011 (629) | American Re-Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 2,000,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Three Harbors (636): Milwaukee County 1929-2011 (629) | Continental Casualty Company | RDX9539468 | 2/11/1977 | 1/1/1978 | 2/11/1977 | 1/1/1978 | $ 2,000,000.00 | $ 3,000,000.00 | $ 3,000,000.00 | Unknown | Unknown | PE |
| Three Harbors (636): Milwaukee County 1929-2011 (629) | St. Paul Fire and Marine Insurance Company | 648NA5036 | 10/1/1977 | 10/1/1978 | 10/1/1977 | 10/1/1978 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Three Harbors (636): Milwaukee County 1929-2011 (629) | St. Paul Fire and Marine Insurance Company | 648NA5036 | 10/1/1978 | 10/1/1979 | 10/1/1978 | 10/1/1979 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Three Harbors (636): Racine County 1927-1972 (631) | Insurance Company of North America | SBL 5 11 91 | 6/15/1969 | 6/15/1970 | 6/15/1969 | 6/15/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Three Harbors (636): Racine County 1927-1972 (631) | Insurance Company of North America | SBL 5 11 91 | 6/15/1970 | 6/15/1971 | 6/15/1970 | 6/15/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Three Harbors (636): Racine County 1927-1972 (631) | Insurance Company of North America | SBL 5 11 91 | 6/15/1971 | 6/15/1972 | 6/15/1971 | 6/15/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Three Harbors (636): Southeast Wisconsin 1972-2011 (634) | Insurance Company of North America | GAL 21 22 13 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Harbors (636): Southeast Wisconsin 1972-2011 (634) | Insurance Company of North America | GAL 21 23 07 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Three Harbors (636): Southeast Wisconsin 1972-2011 (634) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Three Harbors (636): Southeast Wisconsin 1972-2011 (634) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220263 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Three Harbors (636): Southeast Wisconsin 1972-2011 (634) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Three Rivers (578): Three Rivers 1970- (578) | Maryland American General Group | CGA682849 | 11/18/1964 | 11/18/1965 | 11/18/1964 | 11/18/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Rivers (578): Three Rivers 1970- (578) | Maryland American General Group | Unknown | 11/18/1965 | 11/18/1966 | 11/18/1965 | 11/18/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Rivers (578): Three Rivers 1970- (578) | Maryland American General Group | Unknown | 11/18/1966 | 11/18/1967 | 11/18/1966 | 11/18/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Rivers (578): Three Rivers 1970- (578) | Maryland American General Group | Unknown | 11/18/1967 | 11/18/1968 | 11/18/1967 | 11/18/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Rivers (578): Three Rivers 1970- (578) | Maryland American General Group | Unknown | 11/18/1968 | 3/16/1969 | 11/18/1968 | 3/16/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Rivers (578): Three Rivers 1970- (578) | Maryland American General Group | 31-480583 | 3/16/1969 | 3/16/1970 | 3/16/1969 | 3/16/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Rivers (578): Three Rivers 1970- (578) | Maryland American General Group | 31-476201 | 3/16/1970 | 3/16/1971 | 3/16/1970 | 3/16/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Rivers (578): Three Rivers 1970- (578) | Maryland American General Group | 31-480583 | 3/16/1972 | 6/25/1972 | 3/16/1972 | 6/25/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Rivers (578): Three Rivers 1970- (578) | Unknown | 7186226 | 6/25/1972 | 6/25/1973 | 6/25/1972 | 6/25/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Rivers (578): Three Rivers 1970- (578) | Unknown | 542TX6271 | 2/25/1974 | 6/10/1975 | 2/25/1974 | 6/10/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Rivers (578): Three Rivers 1970- (578) | Maryland American General Group | 542TX6947 | 1/10/1975 | 1/10/1976 | 1/10/1975 | 1/10/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Rivers (578): Three Rivers 1970- (578) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 72 73 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Three Rivers (578): Three Rivers 1970- (578) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Three Rivers (578): Three Rivers 1970- (578) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220204 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Three Rivers (578): Three Rivers 1970- (578) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Three Rivers (578): Trinity-Neches 1942-1970 (565) | Maryland American General Group | 31-818323 | 3/16/1969 | 3/16/1970 | 3/16/1969 | 3/16/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Three Rivers (578): Trinity-Neches 1942-1970 (565) | Maryland American General Group | 31-471819 | 3/16/1970 | 3/16/1971 | 3/16/1970 | 3/16/1971 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Tidewater (596): Tidewater (596) | Insurance Company of North America | LB 4 17 55 | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Tidewater (596): Tidewater (596) | Insurance Company of North America | ALB-4-17-88 | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Tidewater (596): Tidewater (596) | Insurance Company of North America | ALB-4-17-88 | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Tidewater (596): Tidewater (596) | Insurance Company of North America | ALB-4-17-88 | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Tidewater (596): Tidewater (596) | Insurance Company of North America | Unknown | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Tidewater (596): Tidewater (596) | Insurance Company of North America | Unknown | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Tidewater (596): Tidewater (596) | Insurance Company of North America | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Tidewater (596): Tidewater (596) | Insurance Company of North America | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Tidewater (596): Tidewater (596) | Insurance Company of North America | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Tidewater (596): Tidewater (596) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Tidewater (596): Tidewater (596) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 10 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Tidewater (596): Tidewater (596) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Tidewater (596): Tidewater (596) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Tidewater (596): Tidewater (596) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220232 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Tidewater (596): Tidewater (596) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Transatlantic (802): Transatlantic 1953- (802) | American Foreign Insurance Association | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Transatlantic (802): Transatlantic 1953- (802) | American Foreign Insurance Association | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Transatlantic (802): Transatlantic 1953- (802) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 93 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Transatlantic (802): Transatlantic 1953- (802) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Transatlantic (802): Transatlantic 1953- (802) | American Foreign Insurance Association | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | | Unknown | Unknown | Unknown | Unknown | SE |
| Transatlantic (802): Transatlantic 1953- (802) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220224 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Transatlantic (802): Transatlantic 1953- (802) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Tukabatchee Area (5): Tukabatchee Area (5) | Insurance Company of North America | SBL 45391 | 11/1/1966 | 11/1/1967 | 11/1/1966 | 11/1/1967 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Tukabatchee Area (5): Tukabatchee Area (5) | Insurance Company of North America | SBL 45391 | 11/1/1967 | 11/1/1968 | 11/1/1967 | 11/1/1968 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Tukabatchee Area (5): Tukabatchee Area (5) | Insurance Company of North America | SBL 45391 | 11/1/1968 | 11/1/1969 | 11/1/1968 | 11/1/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Tukabatchee Area (5): Tukabatchee Area (5) | Insurance Company of North America | SBL S 11 98 | 11/1/1969 | 11/1/1970 | 11/1/1969 | 11/1/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Tukabatchee Area (5): Tukabatchee Area (5) | Insurance Company of North America | SBL S 11 98 | 11/1/1970 | 11/1/1971 | 11/1/1970 | 11/1/1971 | $ | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Tukabatchee Area (5): Tukabatchee Area (5) | Insurance Company of North America | SBL S 11 98 | 11/1/1971 | 11/1/1972 | 11/1/1971 | 11/1/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Tukabatchee Area (5): Tukabatchee Area (5) | Continental Insurance Company | CBP 76715 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Tukabatchee Area (5): Tukabatchee Area (5) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 12 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Tukabatchee Area (5): Tukabatchee Area (5) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Tukabatchee Area (5): Tukabatchee Area (5) | Unknown | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Tukabatchee Area (5): Tukabatchee Area (5) | Continental Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Tukabatchee Area (5): Tukabatchee Area (5) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219862 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Tukabatchee Area (5): Tukabatchee Area (5) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Tuscarora (424): Tuscarora (424) | Unknown | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Tuscarora (424): Tuscarora (424) | Unknown | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Tuscarora (424): Tuscarora (424) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 86 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Tuscarora (424): Tuscarora (424) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Tuscarora (424): Tuscarora (424) | Unknown | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ | Unknown | Unknown | Unknown | Unknown | SE |
| Tuscarora (424): Tuscarora (424) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220039 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Tuscarora (424): Tuscarora (424) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 9/1/1945 | 9/1/1946 | 9/1/1945 | 9/1/1946 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 9/1/1946 | 9/1/1947 | 9/1/1946 | 9/1/1947 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 9/1/1947 | 9/1/1948 | 9/1/1947 | 9/1/1948 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 9/1/1948 | 9/1/1949 | 9/1/1948 | 9/1/1949 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 9/1/1949 | 9/1/1950 | 9/1/1949 | 9/1/1950 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 9/1/1950 | 9/1/1951 | 9/1/1950 | 9/1/1951 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 9/1/1951 | 9/1/1952 | 9/1/1951 | 9/1/1952 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 9/1/1952 | 1/1/1953 | 9/1/1952 | 1/1/1953 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 1/1/1953 | 1/1/1954 | 1/1/1953 | 1/1/1954 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 4/18/1954 | 4/18/1955 | 4/18/1954 | 4/18/1955 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 4/18/1955 | 4/18/1956 | 4/18/1955 | 4/18/1956 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 4/18/1956 | 4/18/1957 | 4/18/1956 | 4/18/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 4/18/1957 | 4/18/1958 | 4/18/1957 | 4/18/1958 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 4/18/1958 | 4/18/1959 | 4/18/1958 | 4/18/1959 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 4/18/1959 | 4/18/1960 | 4/18/1959 | 4/18/1960 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 4/18/1960 | 4/18/1961 | 4/18/1960 | 4/18/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 4/18/1961 | 4/18/1962 | 4/18/1961 | 4/18/1962 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 4/18/1962 | 4/18/1963 | 4/18/1962 | 4/18/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 4/18/1963 | 4/18/1964 | 4/18/1963 | 4/18/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 4/18/1964 | 4/18/1965 | 4/18/1964 | 4/18/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 4/18/1965 | 4/18/1966 | 4/18/1965 | 4/18/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 4/18/1966 | 4/18/1967 | 4/18/1966 | 4/18/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 4/18/1967 | 4/18/1968 | 4/18/1967 | 4/18/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 4/18/1968 | 4/18/1969 | 4/18/1968 | 4/18/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 4/18/1969 | 4/18/1970 | 4/18/1969 | 4/18/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 4/18/1970 | 4/18/1971 | 4/18/1970 | 4/18/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | Unknown | Unknown | 4/18/1971 | 1/1/1972 | 4/18/1971 | 1/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 70 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220023 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Twin Rivers (364): Adirondack 1924-2006 (394) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Twin Rivers (364): Fort Orange 1923-1963 (364) | Unknown | Unknown | 9/28/1960 | 9/28/1961 | 9/28/1960 | 9/28/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Fort Orange-Uncle Sam 1963-1971 (364) | Unknown | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | SE |
| Twin Rivers (364): Fort Orange-Uncle Sam 1963-1971 (364) | Unknown | Unknown | 1/1/1963 | 1/1/1964 | 1/1/1963 | 1/1/1964 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | SE |
| Twin Rivers (364): Fort Orange-Uncle Sam 1963-1971 (364) | Unknown | Unknown | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Fort Orange-Uncle Sam 1963-1971 (364) | St. Paul Fire and Marine Insurance Company | Unknown | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Governor Clinton 1971-1990 (364) | Unknown | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Governor Clinton 1971-1990 (364) | Unknown | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ 500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Governor Clinton 1971-1990 (364) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 65 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Twin Rivers (364): Governor Clinton 1971-1990 (364) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Twin Rivers (364): Governor Clinton 1971-1990 (364) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220018 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Twin Rivers (364): Governor Clinton 1971-1990 (364) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Twin Rivers (364): Mohican 1927-1998 (378) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 58 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Twin Rivers (364): Mohican 1927-1998 (378) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Twin Rivers (364): Mohican 1927-1998 (378) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220011 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Twin Rivers (364): Mohican 1927-1998 (378) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Twin Rivers (364): Saratoga County 1924-1990 (684) | Hartford Accident and Indemnity Company | 01 C 530923 | 5/1/1972 | 5/1/1973 | 5/1/1972 | 5/1/1973 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | SE |
| Twin Rivers (364): Saratoga County 1924-1990 (684) | Hartford Accident and Indemnity Company | 01 C 531176 | 5/1/1972 | 5/1/1973 | 5/1/1972 | 5/1/1973 | $ - | $ 300,000.00 | $ 300,000.00 | Unknown | Unknown | SE |
| Twin Rivers (364): Saratoga County 1924-1990 (684) | Hartford Accident and Indemnity Company | 01 HU 300166 | 12/15/1972 | 12/15/1973 | 12/15/1972 | 12/15/1973 | $ 300,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | SE |
| Twin Rivers (364): Saratoga County 1924-1990 (684) | Hartford Accident and Indemnity Company | 01 HU 300166 | 12/15/1973 | 12/15/1974 | 12/15/1973 | 12/15/1974 | $ 300,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | SE |
| Twin Rivers (364): Saratoga County 1924-1990 (684) | Hartford Accident and Indemnity Company | 01 HU 300166 | 12/15/1974 | 12/15/1975 | 12/15/1974 | 12/15/1975 | $ 300,000.00 | $ 2,000,000.00 | $ 2,000,000.00 | Unknown | Unknown | SE |
| Twin Rivers (364): Saratoga County 1924-1990 (684) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 49 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Twin Rivers (364): Saratoga County 1924-1990 (684) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Twin Rivers (364): Saratoga County 1924-1990 (684) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220001 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Twin Rivers (364): Saratoga County 1924-1990 (684) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Twin Rivers (364): Schenectady County 1926-1991 (399) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 74 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Twin Rivers (364): Schenectady County 1926-1991 (399) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Twin Rivers (364): Schenectady County 1926-1991 (399) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220027 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Twin Rivers (364): Schenectady County 1926-1991 (399) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Twin Rivers (364): Sir William Johnson 1937-1990 (377) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Sir William Johnson 1937-1990 (377) | Unknown | Unknown | 1/1/1957 | 1/1/1958 | 1/1/1957 | 1/1/1958 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Sir William Johnson 1937-1990 (377) | Unknown | Unknown | 1/1/1958 | 1/1/1959 | 1/1/1958 | 1/1/1959 | $ - | Unknown | Unknown | Unknown | Unknown | SE |

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Twin Rivers (364): Sir William Johnson 1937-1990 (377) | Unknown | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Sir William Johnson 1937-1990 (377) | Unknown | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Sir William Johnson 1937-1990 (377) | Unknown | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Sir William Johnson 1937-1990 (377) | Unknown | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Sir William Johnson 1937-1990 (377) | Unknown | Unknown | 1/1/1963 | 1/1/1964 | 1/1/1963 | 1/1/1964 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Sir William Johnson 1937-1990 (377) | Unknown | Unknown | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Sir William Johnson 1937-1990 (377) | Unknown | Unknown | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Sir William Johnson 1937-1990 (377) | Unknown | Unknown | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Sir William Johnson 1937-1990 (377) | Unknown | Unknown | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Sir William Johnson 1937-1990 (377) | Unknown | Unknown | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Sir William Johnson 1937-1990 (377) | Unknown | Unknown | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Sir William Johnson 1937-1990 (377) | Unknown | Unknown | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Sir William Johnson 1937-1990 (377) | Unknown | Unknown | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Rivers (364): Sir William Johnson 1937-1990 (377) | National Union Fire Insurance Company of Pittsburgh, PA | 8E121 71 59 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Twin Rivers (364): Sir William Johnson 1937-1990 (377) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Twin Rivers (364): Sir William Johnson 1937-1990 (377) | National Union Fire Insurance Company of Pittsburgh, PA | 8E 122002 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Twin Rivers (364): Sir William Johnson 1937-1990 (377) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | | Unknown | PE |
| Twin Valley (283): Cedar Valley Area 1937-1969 (282) | Insurance Company of North America | SBL 45389 | 6/20/1966 | 6/20/1967 | 6/20/1966 | 6/20/1967 | $ - | $ 500,000.00 | $ 500,000.00 | | Unknown | PE |
| Twin Valley (283): Cedar Valley Area 1937-1969 (282) | Insurance Company of North America | SBL-4-46-15 | 6/20/1967 | 6/20/1968 | 6/20/1967 | 6/20/1968 | $ - | $ 500,000.00 | $ 500,000.00 | | Unknown | PE |
| Twin Valley (283): Twin Valley 1969- (283) | Insurance Company of North America | SBL 44634 | 10/1/1967 | 10/1/1968 | 10/1/1967 | 10/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | PE |
| Twin Valley (283): Twin Valley 1969- (283) | Insurance Company of North America | SBL 44646 | 10/1/1968 | 10/1/1969 | 10/1/1968 | 10/1/1969 | $ - | $ 500,000.00 | $ 500,000.00 | | Unknown | PE |
| Twin Valley (283): Twin Valley 1969- (283) | Insurance Company of North America | SBL 4 46 54 | 10/1/1969 | 10/1/1970 | 10/1/1969 | 10/1/1970 | $ - | $ 500,000.00 | $ 500,000.00 | | Unknown | PE |
| Twin Valley (283): Twin Valley 1969- (283) | Insurance Company of North America | SBL 44673 | 10/1/1970 | 10/1/1971 | 10/1/1970 | 10/1/1971 | $ - | $ 500,000.00 | $ 500,000.00 | | Unknown | PE |
| Twin Valley (283): Twin Valley 1969- (283) | Insurance Company of North America | GAL 11 80 46 | 10/1/1971 | 10/1/1972 | 10/1/1971 | 10/1/1972 | $ - | $ 500,000.00 | $ 500,000.00 | | Unknown | PE |
| Twin Valley (283): Twin Valley 1969- (283) | Insurance Company of North America | GAL 13 61 40 | 10/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | $ 500,000.00 | $ 500,000.00 | | Unknown | PE |
| Twin Valley (283): Twin Valley 1969- (283) | New Hampshire Insurance Company | Unknown | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Twin Valley (283): Twin Valley 1969- (283) | National Union Fire Insurance Company of Pittsburgh, PA | 8E121 71 00 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Twin Valley (283): Twin Valley 1969- (283) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Twin Valley (283): Twin Valley 1969- (283) | National Union Fire Insurance Company of Pittsburgh, PA | 8E 1220150 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Twin Valley (283): Twin Valley 1969- (283) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | | Unknown | PE |
| Twin Valley (283): Twin Valley 1969- (283) | Travelers Indemnity Company | 660845F6308C0F90 | 4/1/1990 | 4/1/1991 | 4/1/1990 | 4/1/1991 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Ventura County (57): Ventura County (57) | Insurance Company of North America | SBL xxx78 | 5/23/1965 | 5/23/1966 | 5/23/1965 | 5/23/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Ventura County (57): Ventura County (57) | Insurance Company of North America | SBL xxx78 | 5/23/1966 | 5/23/1967 | 5/23/1966 | 5/23/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Ventura County (57): Ventura County (57) | Insurance Company of North America | SBL xxx78 | 5/23/1967 | 5/23/1968 | 5/23/1967 | 5/23/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Ventura County (57): Ventura County (57) | Insurance Company of North America | SBL 46938 | 5/23/1968 | 5/23/1969 | 5/23/1968 | 5/23/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Ventura County (57): Ventura County (57) | Insurance Company of North America | SBL 46938 | 5/23/1969 | 5/23/1970 | 5/23/1969 | 5/23/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Ventura County (57): Ventura County (57) | Insurance Company of North America | SBL 46938 | 5/23/1970 | 5/23/1971 | 5/23/1970 | 5/23/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Ventura County (57): Ventura County (57) | Insurance Company of North America | SBL 51453 | 5/23/1971 | 5/23/1972 | 5/23/1971 | 5/23/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Ventura County (57): Ventura County (57) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Ventura County (57): Ventura County (57) | National Union Fire Insurance Company of Pittsburgh, PA | 8E121 69 29 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Ventura County (57): Ventura County (57) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Ventura County (57): Ventura County (57) | New Hampshire Insurance Company | GLA 332352 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Ventura County (57): Ventura County (57) | Ambassador Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 50,000.00 | $ 450,000.00 | $ 450,000.00 | | Unknown | SE |
| Ventura County (57): Ventura County (57) | National Union Fire Insurance Company of Pittsburgh, PA | 8E 1219878 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Ventura County (57): Ventura County (57) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | | Unknown | PE |
| Verdugo Hills (58): Verdugo Hills (58) | New Hampshire Insurance Company | 600326 | 6/1/1965 | 6/1/1966 | 6/1/1965 | 6/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Verdugo Hills (58): Verdugo Hills (58) | New Hampshire Insurance Company | 600326 | 6/1/1966 | 6/1/1967 | 6/1/1966 | 6/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Verdugo Hills (58): Verdugo Hills (58) | New Hampshire Insurance Company | 600326 | 6/1/1967 | 6/1/1968 | 6/1/1967 | 6/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Verdugo Hills (58): Verdugo Hills (58) | New Hampshire Insurance Company | 600383 | 6/1/1968 | 6/1/1969 | 6/1/1968 | 6/1/1969 | $ - | $ 500,000.00 | $ 500,000.00 | | Unknown | PE |
| Verdugo Hills (58): Verdugo Hills (58) | New Hampshire Insurance Company | 600383 | 6/1/1969 | 6/1/1970 | 6/1/1969 | 6/1/1970 | $ - | $ 500,000.00 | $ 500,000.00 | | Unknown | PE |
| Verdugo Hills (58): Verdugo Hills (58) | New Hampshire Insurance Company | 600383 | 6/1/1970 | 6/1/1971 | 6/1/1970 | 6/1/1971 | $ - | $ 500,000.00 | $ 500,000.00 | | Unknown | PE |
| Verdugo Hills (58): Verdugo Hills (58) | New Hampshire Insurance Company | Unknown | 6/1/1971 | 6/1/1972 | 6/1/1971 | 6/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Verdugo Hills (58): Verdugo Hills (58) | New Hampshire Insurance Company | Unknown | 6/1/1972 | 6/1/1973 | 6/1/1972 | 6/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Verdugo Hills (58): Verdugo Hills (58) | New Hampshire Insurance Company | Unknown | 6/1/1973 | 6/1/1974 | 6/1/1973 | 6/1/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Verdugo Hills (58): Verdugo Hills (58) | New Hampshire Insurance Company | Unknown | 6/1/1974 | 6/1/1975 | 6/1/1974 | 6/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Verdugo Hills (58): Verdugo Hills (58) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Verdugo Hills (58): Verdugo Hills (58) | National Union Fire Insurance Company of Pittsburgh, PA | 8E121 69 35 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Verdugo Hills (58): Verdugo Hills (58) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Verdugo Hills (58): Verdugo Hills (58) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 6/2/1977 | 1/1/1977 | 6/2/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Verdugo Hills (58): Verdugo Hills (58) | National Union Fire Insurance Company of Pittsburgh, PA | 8E 1219884 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Verdugo Hills (58): Verdugo Hills (58) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | | Unknown | PE |
| Verdugo Hills (58): Verdugo Hills (58) | New Hampshire Insurance Company | GLA 282523 | 6/1/1977 | 6/1/1978 | 6/1/1977 | 6/1/1978 | $ - | $ 50,000.00 | $ 50,000.00 | | Unknown | SE |
| Verdugo Hills (58): Verdugo Hills (58) | Ambassador Insurance Company | 2 60 35 | 6/1/1977 | 6/1/1978 | 6/1/1977 | 6/1/1978 | $ 50,000.00 | $ 450,000.00 | $ 450,000.00 | | Unknown | PE |
| Virginia Headwaters (763): Stonewall Jackson Area-2019 (763) | National Union Fire Insurance Company of Pittsburgh, PA | 8E121 73 14 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Virginia Headwaters (763): Stonewall Jackson Area-2019 (763) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Virginia Headwaters (763): Stonewall Jackson Area-2019 (763) | National Union Fire Insurance Company of Pittsburgh, PA | 8E 1220235 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Virginia Headwaters (763): Stonewall Jackson Area-2019 (763) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | | Unknown | PE |
| Voyageurs Area (286): Headwaters Area 1929-1994 (290) | Insurance Company of North America | SBL 4 53 58 | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Voyageurs Area (286): Headwaters Area 1929-1994 (290) | Insurance Company of North America | SBL 4 53 58 | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Voyageurs Area (286): Headwaters Area 1929-1994 (290) | Insurance Company of North America | SBL 4 53 58 | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Voyageurs Area (286): Headwaters Area 1929-1994 (290) | Insurance Company of North America | SBL 4 69 23 | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Voyageurs Area (286): Headwaters Area 1929-1994 (290) | Insurance Company of North America | SBL 4 69 23 | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Voyageurs Area (286): Headwaters Area 1929-1994 (290) | Insurance Company of North America | SBL 4 69 23 | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Voyageurs Area (286): Headwaters Area 1929-1994 (290) | Insurance Company of North America | SBL 5 13 96 | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Voyageurs Area (286): Headwaters Area 1929-1994 (290) | Insurance Company of North America | SBL 5 13 96 | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Voyageurs Area (286): Headwaters Area 1929-1994 (290) | National Union Fire Insurance Company of Pittsburgh, PA | 8E121 70 99 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Voyageurs Area (286): Headwaters Area 1929-1994 (290) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Voyageurs Area (286): Headwaters Area 1929-1994 (290) | National Union Fire Insurance Company of Pittsburgh, PA | 8E 1220149 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Voyageurs Area (286): Headwaters Area 1929-1994 (290) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | | Unknown | PE |
| Voyageurs Area (286): Lake Superior 1959-1994 (286) | American Employers' Insurance Company | AW-8504-058 | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Voyageurs Area (286): Lake Superior 1959-1994 (286) | American Employers' Insurance Company | AW-8504-063 | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $ - | $ 500,000.00 | $ 500,000.00 | | Unknown | PE |
| Voyageurs Area (286): Lake Superior 1959-1994 (286) | National Union Fire Insurance Company of Pittsburgh, PA | 8E121 70 98 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Voyageurs Area (286): Lake Superior 1959-1994 (286) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Voyageurs Area (286): Lake Superior 1959-1994 (286) | National Union Fire Insurance Company of Pittsburgh, PA | 8E 1220148 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | | Unknown | PE |
| Voyageurs Area (286): Lake Superior 1959-1994 (286) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | | Unknown | PE |
| W.D. Boyce (138): Starved Rock Area 1926-1973 (132) | Insurance Company of North America | SBL-2-50-34 | 9/21/1966 | 9/21/1967 | 9/21/1966 | 9/21/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |

Data Privacy - This document contains private information.
Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| W.D. Boyce (138): Starved Rock Area 1926-1973 (132) | Insurance Company of North America | SBL-4-89-01 | 9/21/1967 | 9/21/1968 | 9/21/1967 | 9/21/1968 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| W.D. Boyce (138): Starved Rock Area 1926-1973 (132) | Insurance Company of North America | SBL-4-89-01 | 9/21/1968 | 9/21/1969 | 9/21/1968 | 9/21/1969 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| W.D. Boyce (138): Starved Rock Area 1926-1973 (132) | Insurance Company of North America | SBL-4-89-01 | 9/21/1969 | 9/21/1970 | 9/21/1969 | 9/21/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| W.D. Boyce (138): Starved Rock Area 1926-1973 (132) | Insurance Company of North America | SBL-4-89-01 | 9/21/1970 | 9/21/1971 | 9/21/1970 | 9/21/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| W.D. Boyce (138): W.D. Boyce 1973- (138) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| W.D. Boyce (138): W.D. Boyce 1973- (138) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 22 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| W.D. Boyce (138): W.D. Boyce 1973- (138) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| W.D. Boyce (138): W.D. Boyce 1973- (138) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| W.D. Boyce (138): W.D. Boyce 1973- (138) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219968 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| W.D. Boyce (138): W.D. Boyce 1973- (138) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Washington Crossing (777): Bucks County 1927-2015 (777) | Aetna Casualty and Surety Company | Unknown | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Washington Crossing (777): Bucks County 1927-2015 (777) | American Casualty Company of Reading, Pennsylvania | CCP 903 04 46 | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Washington Crossing (777): Bucks County 1927-2015 (777) | Continental Casualty Company | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Washington Crossing (777): Bucks County 1927-2015 (777) | Continental Casualty Company | CCP 191 05 38 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Washington Crossing (777): Bucks County 1927-2015 (777) | Continental Casualty Company | ROU 9998388 | 1/1/1975 | 1/1/1976 | 1/1/1975 | 1/1/1976 | $ 500,000.00 | Unknown | Unknown | Unknown | Unknown | SE |
| Washington Crossing (777): Bucks County 1927-2015 (777) | Continental Casualty Company | CCP 244 22 48 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | SE |
| Washington Crossing (777): Bucks County 1927-2015 (777) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 33 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Washington Crossing (777): Bucks County 1927-2015 (777) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Washington Crossing (777): Bucks County 1927-2015 (777) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220088 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Washington Crossing (777): Bucks County 1927-2015 (777) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Washington Crossing (777): Bucks County 1927-2015 (777) | Maryland Casualty Company | Unknown | 3/1/1977 | 1/1/1978 | 3/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Water and Woods FSC (782): Water and Woods FSC (782) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Water and Woods FSC (782): Water and Woods FSC (782) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| West Tennessee Area (559): West Tennessee Area (559) | Insurance Company of North America | SBL 3 95 48 | 5/29/1968 | 5/29/1969 | 5/29/1968 | 5/29/1969 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| West Tennessee Area (559): West Tennessee Area (559) | Insurance Company of North America | SBL 3 95 54 | 5/29/1969 | 5/29/1970 | 5/29/1969 | 5/29/1970 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| West Tennessee Area (559): West Tennessee Area (559) | Insurance Company of North America | Unknown | 5/29/1970 | 5/29/1971 | 5/29/1970 | 5/29/1971 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| West Tennessee Area (559): West Tennessee Area (559) | Insurance Company of North America | Unknown | 5/29/1971 | 1/1/1972 | 5/29/1971 | 1/1/1972 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| West Tennessee Area (559): West Tennessee Area (559) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 65 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| West Tennessee Area (559): West Tennessee Area (559) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| West Tennessee Area (559): West Tennessee Area (559) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220287 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| West Tennessee Area (559): West Tennessee Area (559) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| West Tennessee Area (559): West Tennessee Area (559) | Continental Casualty Company | CCP 3036625 | 4/1/1977 | 4/1/1978 | 4/1/1977 | 4/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Westark Area (16): Westark Area (16) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Westark Area (16): Westark Area (16) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 23 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Westark Area (16): Westark Area (16) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Westark Area (16): Westark Area (16) | New Hampshire Insurance Company | GLA 332338 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Westark Area (16): Westark Area (16) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219872 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Westark Area (16): Westark Area (16) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Western Los Angeles County (51): Great Western 1972-1985 (51) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Western Los Angeles County (51): Great Western 1972-1985 (51) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 69 58 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Western Los Angeles County (51): Great Western 1972-1985 (51) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Western Los Angeles County (51): Great Western 1972-1985 (51) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Western Los Angeles County (51): Great Western 1972-1985 (51) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1239906 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Western Los Angeles County (51): Great Western 1972-1985 (51) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Western Los Angeles County (51): San Fernando Valley 1923-1972 (50) | Zurich Insurance Company | 80-39-959 | 7/19/1960 | 7/19/1961 | 7/19/1960 | 7/19/1961 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Western Los Angeles County (51): San Fernando Valley 1923-1972 (50) | Insurance Company of North America | SBL 5 14 06 | 7/1/1970 | 7/1/1971 | 7/1/1970 | 7/1/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Western Los Angeles County (51): San Fernando Valley 1923-1972 (50) | Insurance Company of North America | XCP 6616 | 7/1/1970 | 7/1/1971 | 7/1/1970 | 7/1/1971 | $ 500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Western Los Angeles County (51): San Fernando Valley 1923-1972 (50) | Insurance Company of North America | SBL 5 14 06 | 7/1/1971 | 7/1/1972 | 7/1/1971 | 7/1/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Western Los Angeles County (51): San Fernando Valley 1923-1972 (50) | Insurance Company of North America | XCP 6616 | 7/1/1971 | 7/1/1972 | 7/1/1971 | 7/1/1972 | $ 500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Western Los Angeles County (51): San Fernando Valley 1923-1972 (50) | Insurance Company of North America | SBL 5 14 06 | 7/1/1972 | 8/7/1972 | 7/1/1972 | 8/7/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Western Los Angeles County (51): San Fernando Valley 1923-1972 (50) | Insurance Company of North America | XCP 6616 | 7/1/1972 | 8/7/1972 | 7/1/1972 | 8/7/1972 | $ 500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Western Los Angeles County (51): Western Los Angeles County (51) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Western Los Angeles County (51): Western Los Angeles County (51) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Western Massachusetts (234): Great Trails 1969-2008 (234) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Western Massachusetts (234): Great Trails 1969-2008 (234) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Western Massachusetts (234): Pioneer Valley 1960-2008 (234) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 84 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Western Massachusetts (234): Pioneer Valley 1960-2008 (234) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Western Massachusetts (234): Pioneer Valley 1960-2008 (234) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220135 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Western Massachusetts (234): Pioneer Valley 1960-2008 (234) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Westmoreland-Fayette (512): Westmoreland-Fayette (512) | Insurance Company of North America | GLP-4-39-53 | 5/14/1967 | 5/14/1968 | 5/14/1967 | 5/14/1968 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Westmoreland-Fayette (512): Westmoreland-Fayette (512) | Insurance Company of North America | GLP-17-15-33 | 5/14/1968 | 5/14/1969 | 5/14/1968 | 5/14/1969 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Westmoreland-Fayette (512): Westmoreland-Fayette (512) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Westmoreland-Fayette (512): Westmoreland-Fayette (512) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 16 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Westmoreland-Fayette (512): Westmoreland-Fayette (512) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Westmoreland-Fayette (512): Westmoreland-Fayette (512) | New Hampshire Insurance Company | Unknown | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Westmoreland-Fayette (512): Westmoreland-Fayette (512) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220091 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Westmoreland-Fayette (512): Westmoreland-Fayette (512) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Winnebago (173): Winnebago 1937- (173) | Insurance Company of North America | CLP-10-11-88 | 4/6/1966 | 4/6/1967 | 4/6/1966 | 4/6/1967 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Winnebago (173): Winnebago 1937- (173) | Insurance Company of North America | GAL-2-42-19 | 4/6/1967 | 4/6/1968 | 4/6/1967 | 4/6/1968 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Winnebago (173): Winnebago 1937- (173) | Insurance Company of North America | GAL-23819 | 4/6/1968 | 4/6/1969 | 4/6/1968 | 4/6/1969 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Winnebago (173): Winnebago 1937- (173) | Insurance Company of North America | GAL 9 51 19 | 4/6/1969 | 4/6/1970 | 4/6/1969 | 4/6/1970 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Winnebago (173): Winnebago 1937- (173) | Insurance Company of North America | GAL 96103 | 4/6/1970 | 4/6/1971 | 4/6/1970 | 4/6/1971 | $ - | $ 100,000.00 | $ 100,000.00 | Unknown | Unknown | PE |
| Winnebago (173): Winnebago 1937- (173) | Insurance Company of North America | SBL 52141 | 4/6/1971 | 11/1/1971 | 4/6/1971 | 11/1/1971 | $ - | $ 250,000.00 | $ 250,000.00 | Unknown | Unknown | PE |
| Winnebago (173): Winnebago 1937- (173) | Insurance Company of North America | Unknown | 11/1/1972 | 11/1/1973 | 11/1/1972 | 11/1/1973 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Winnebago (173): Winnebago 1937- (173) | Insurance Company of North America | Unknown | 11/1/1973 | 11/1/1974 | 11/1/1973 | 11/1/1974 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Winnebago (173): Winnebago 1937- (173) | Insurance Company of North America | Unknown | 11/1/1974 | 1/1/1975 | 11/1/1974 | 1/1/1975 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Winnebago (173): Winnebago 1937- (173) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 70 44 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Winnebago (173): Winnebago 1937- (173) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $ 1,500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Winnebago (173): Winnebago 1937- (173) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1219990 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 500,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | Unknown | Unknown | PE |
| Winnebago (173): Winnebago 1937- (173) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $ 1,500,000.00 | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Yocona Area (748): Yocona Area (748) | American Home Fire Assurance Company | Unknown | 2/1/1942 | 2/1/1943 | 2/1/1942 | 2/1/1943 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Yocona Area (748): Yocona Area (748) | American Home Fire Assurance Company | Unknown | 2/1/1943 | 2/1/1944 | 2/1/1943 | 2/1/1944 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Yocona Area (748): Yocona Area (748) | American Home Fire Assurance Company | Unknown | 2/1/1944 | 2/1/1945 | 2/1/1944 | 2/1/1945 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Yocona Area (748): Yocona Area (748) | American Home Fire Assurance Company | Unknown | 2/1/1945 | 2/1/1946 | 2/1/1945 | 2/1/1946 | $ - | Unknown | Unknown | Unknown | Unknown | SE |
| Yocona Area (748): Yocona Area (748) | Insurance Company of North America | SBL 51310 | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |
| Yocona Area (748): Yocona Area (748) | Insurance Company of North America | SBL 51310 | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $ - | $ 500,000.00 | $ 500,000.00 | Unknown | Unknown | PE |

Page 53 of 54

Data Privacy - This document contains private information.

Local Council Insurance Policies

| Current Council: Predecessor Council | Carrier | Policy Number | Start Date | End Date | Council Start Date | Council End Date | Attachment Point | Occurrence Limit | Layer Limit | Aggregate Limit | Sexual Abuse Exclusion | Evidence (PE/SE)[1] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Yocona Area (748): Yocona Area (748) | Insurance Company of North America | SBL 51310 | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $  - | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Yocona Area (748): Yocona Area (748) | New Hampshire Insurance Company | Unknown | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $  - | Unknown | Unknown | Unknown | Unknown | SE |
| Yocona Area (748): Yocona Area (748) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 71 10 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $  500,000.00 | $  1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Yocona Area (748): Yocona Area (748) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $  1,500,000.00 | $  1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Yocona Area (748): Yocona Area (748) | New Hampshire Insurance Company | GLA 332341 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $  - | Unknown | Unknown | Unknown | Unknown | SE |
| Yocona Area (748): Yocona Area (748) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220160 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $  500,000.00 | $  1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Yocona Area (748): Yocona Area (748) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $  1,500,000.00 | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |
| Yucca (573): Yucca (573) | Unknown | Unknown | 1/1/1956 | 1/1/1957 | 1/1/1956 | 1/1/1957 | $  - | Unknown | Unknown | Unknown | Unknown | SE |
| Yucca (573): Yucca (573) | Unknown | Unknown | 1/1/1957 | 1/1/1958 | 1/1/1957 | 1/1/1958 | $  - | Unknown | Unknown | Unknown | Unknown | SE |
| Yucca (573): Yucca (573) | Unknown | Unknown | 1/1/1958 | 1/1/1959 | 1/1/1958 | 1/1/1959 | $  - | Unknown | Unknown | Unknown | Unknown | SE |
| Yucca (573): Yucca (573) | Unknown | Unknown | 1/1/1959 | 1/1/1960 | 1/1/1959 | 1/1/1960 | $  - | Unknown | Unknown | Unknown | Unknown | SE |
| Yucca (573): Yucca (573) | Unknown | Unknown | 1/1/1960 | 1/1/1961 | 1/1/1960 | 1/1/1961 | $  - | Unknown | Unknown | Unknown | Unknown | SE |
| Yucca (573): Yucca (573) | Unknown | Unknown | 1/1/1961 | 1/1/1962 | 1/1/1961 | 1/1/1962 | $  - | Unknown | Unknown | Unknown | Unknown | SE |
| Yucca (573): Yucca (573) | Unknown | Unknown | 1/1/1962 | 1/1/1963 | 1/1/1962 | 1/1/1963 | $  - | Unknown | Unknown | Unknown | Unknown | SE |
| Yucca (573): Yucca (573) | Unknown | Unknown | 1/1/1963 | 1/1/1964 | 1/1/1963 | 1/1/1964 | $  - | Unknown | Unknown | Unknown | Unknown | SE |
| Yucca (573): Yucca (573) | Unknown | Unknown | 1/1/1964 | 1/1/1965 | 1/1/1964 | 1/1/1965 | $  - | Unknown | Unknown | Unknown | Unknown | SE |
| Yucca (573): Yucca (573) | Unknown | Unknown | 1/1/1965 | 1/1/1966 | 1/1/1965 | 1/1/1966 | $  - | Unknown | Unknown | Unknown | Unknown | SE |
| Yucca (573): Yucca (573) | Unknown | Unknown | 1/1/1966 | 1/1/1967 | 1/1/1966 | 1/1/1967 | $  - | Unknown | Unknown | Unknown | Unknown | SE |
| Yucca (573): Yucca (573) | Unknown | Unknown | 1/1/1967 | 1/1/1968 | 1/1/1967 | 1/1/1968 | $  - | Unknown | Unknown | Unknown | Unknown | SE |
| Yucca (573): Yucca (573) | Unknown | Unknown | 1/1/1968 | 1/1/1969 | 1/1/1968 | 1/1/1969 | $  - | Unknown | Unknown | Unknown | Unknown | SE |
| Yucca (573): Yucca (573) | Unknown | Unknown | 1/1/1969 | 1/1/1970 | 1/1/1969 | 1/1/1970 | $  - | Unknown | Unknown | Unknown | Unknown | SE |
| Yucca (573): Yucca (573) | Unknown | Unknown | 1/1/1970 | 1/1/1971 | 1/1/1970 | 1/1/1971 | $  - | Unknown | Unknown | Unknown | Unknown | SE |
| Yucca (573): Yucca (573) | Unknown | Unknown | 1/1/1971 | 1/1/1972 | 1/1/1971 | 1/1/1972 | $  - | Unknown | Unknown | Unknown | Unknown | SE |
| Yucca (573): Yucca (573) | Unknown | Unknown | 1/1/1972 | 1/1/1973 | 1/1/1972 | 1/1/1973 | $  - | Unknown | Unknown | Unknown | Unknown | SE |
| Yucca (573): Yucca (573) | Unknown | Unknown | 1/1/1973 | 1/1/1974 | 1/1/1973 | 1/1/1974 | $  - | Unknown | Unknown | Unknown | Unknown | SE |
| Yucca (573): Yucca (573) | Unknown | Unknown | 1/1/1974 | 1/1/1975 | 1/1/1974 | 1/1/1975 | $  - | Unknown | Unknown | Unknown | Unknown | SE |
| Yucca (573): Yucca (573) | National Union Fire Insurance Company of Pittsburgh, PA | BE121 73 77 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $  500,000.00 | $  1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Yucca (573): Yucca (573) | American Re-Insurance Company | M-1027493 | 1/1/1976 | 1/1/1977 | 1/1/1976 | 1/1/1977 | $  1,500,000.00 | $  1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Yucca (573): Yucca (573) | National Union Fire Insurance Company of Pittsburgh, PA | BE 1220208 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $  500,000.00 | $  1,000,000.00 | $1,000,000.00 | Unknown | Unknown | PE |
| Yucca (573): Yucca (573) | American Re-Insurance Company | M-1027493 | 1/1/1977 | 1/1/1978 | 1/1/1977 | 1/1/1978 | $  1,500,000.00 | $  500,000.00 | $  500,000.00 | Unknown | Unknown | PE |

[1] The insurers dispute what constitutes policy evidence and secondary evidence and the adequacy of the policy evidence and secondary evidence to establish the existence of the policy or the terms and conditions of the policy.

[2] There is incomplete policy evidence on limits for this policy.

**SCHEDULE 4**

**OIL AND GAS INTERESTS**

## OIL AND GAS INTERESTS

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| ARKANSAS | COLUMBIA | COLUMBIA CO AR MI<br> SEC 16-17S-22W: W/2 NW/4 NW/4, 20 ACS<br> SEC 17-17S-22W: E/2<br>NW/4 NE/4, 20 ACS<br> SALT WATER ROYALTY- CONTRACT<br> # 08178068 DATED 01/16/80 (ALBEMARLE)<br> SWD BRINE LEASE | MINERAL INTEREST | PRODUCING |
| LOUISIANA | CLAIBORNE | CLAIBORNE PA LA MI<br>SEC 5-22N-6W: NE/4, NW/4 NE/4, 200 ACS<br>SEC. 4-22N-6W: W/2NW/4, NW/4 SE/4, NW/4, 280 ACS<br>G.W. TIGNER #2<br>.0091146 RI | MINERAL INTEREST | PRODUCING |
| LOUISIANA | CLAIBORNE | CLAIBORNE PA LA MI<br>SEC 4-22N-6W: NW/4, 160 ACS<br>SEC 5-22N-6W: NE/4, 160 ACS<br>MOWER 1 .00607638 RI | MINERAL INTEREST | PRODUCING |
| LOUISIANA | CONCORDIA | CONCORDIA/TENSAS PARISH LA 1/3 MI, SEC 1-9N-10E,<br>SEC 2 9N-10E, SEC 51 9N-10E, 275 ACS,<br>20 ACS GIN HOUSE TRACT TENSAS PARISH LA<br>BAYOU L'ARGENT ADDITIONAL PROPERTY TO<br>ACCOUNT, ANCILLARY SUCCESSION DATED<br>MAY 7, 1983, BOOK 226 PG 49 | MINERAL INTEREST | PRODUCING |
| LOUISIANA | TENSAS | TENSAS PH LA .001109 RI<br>LAKE ST JOHN UNIT TR 116, 117, 119<br>121, 128, 140, 193,216, 219, 221, 222, 223<br>230, 239, 240, 249, 303, 304, 416, 417, 419<br>421,428VA<br>RIOUS RI INTEREST<br>LAKE ST JOHN UNIT<br>DENBURY (PAYS ON DEEP RIGHTS) ; MCGOWAN<br>OPERATING (PAYS ON SHALLOW RIGHTS) | ROYALTY INTEREST | PRODUCING |
| MICHIGAN | CLARE | CLARE CO MI MI<br>SEC 12-20N-6W: W/2, 320 ACS<br>SEC 11-20N-6W: E/2, 320 ACS<br>STATE<br>WINTERFIELD 2-12 | ROYALTY INTEREST | PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| MICHIGAN | CLARE | CLARE CO MI MI<br>SEC 30-20N-6W: S/2<br>SEC 31-20N-6W: N/2<br>WINTERFIELD #2-31 .0035888 RI | ROYALTY INTEREST | PRODUCING |
| MICHIGAN | CLARE | CLARE CO MI MI<br> SEC 7-20N-5W: W/2<br> SEC 12-20N-6W: E/2<br> STATE WINTERFIELD 1-12REG# 8550 | ROYALTY INTEREST | PRODUCING |
| MICHIGAN | CLARE | CLARE CO MI MI<br>SEC 19-20N-6W: SE/4 SE/4, 40 ACS<br>SEC 29-20N-6W: W/2, W/2 NE/4,<br>SEC 31-20N-6W: ALL, EXC SW/4 SW/4,<br>SEC 20-20N-6W: SW, SWSE,<br>SEC 30-20N-6W:ALL,<br>SEC 32-20N-6W: W/2 W/2<br>WINTERFIELD TOWNSHIP,<br>WINTERFIELD RICHFIELD UNIT | MINERAL INTEREST | PRODUCING |
| MICHIGAN | CLARE | CLARE CO MI MI<br>SEC 12-20N-6W: NE/4, 160 ACS<br>H TOPE #4  .002927 RI | ROYALTY INTEREST | PRODUCING |
| MICHIGAN | CLARE | CLARE CO MI MI<br> SEC 1,2,11,12-T20-R6W: WINTERFIELD TOWNSHIP<br> CRANBERRY LAKE RICHFIELD UNIT .00046112 RI | MINERAL INTEREST | PRODUCING |
| MICHIGAN | MIDLAND | MIDLAND CO MI MI<br>SEC 28-15N-2E: NW/4 NE/4, 40 ACS<br>WASKEVICH 1-28 E .0131844 RI | ROYALTY INTEREST | PRODUCING |
| MICHIGAN | MISSAUKEE | MISSAUKEE CO MI MI<br> SEC 35-22N-6W: N/2,  BUNING A UNIT<br> SEC 26-22N-6W: S/2 SW/4, REAMES UNIT<br> SEC 26-22N-6W: SW/4 SE/4, WING UNIT<br> UNITIZED INTO PROSPER DUNDEE UNIT .0167808 RI | ROYALTY INTEREST | PRODUCING |
| MICHIGAN | MISSAUKEE | MISSSAUKEE CO MI, MI<br>SEC 36; T22N-R6W, SE/4 NW/4 &<br>SEC 26; T22N-R6W, SW/4 SE/4<br>AETNA TOWNSHIP<br>WING 2, .01996874 RI | ROYALTY INTEREST | PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| MICHIGAN | OSCEOLA | OSCEOLA CO MI<br>TR 1: SW4 SW4 & W2 SE4 SEC 17-18N-10W;<br>TR 3: E2 NW4 & NW4 NE4SEC19-18N-10W;<br>TR 5: W2 NW4 SEC 20-18N-10W<br>REED CITY UNIT-<br>(TR1) .00051560 RI<br>(TR3) .00151566 RI<br>(TR5) .00281254 RI | ROYALTY INTEREST | PRODUCING |
| MICHIGAN | OSCEOLA | OSCEOLA CO MI MI<br>SEC 28-18N-9W: S2 NE, N2 NESE & SESE<br>ZIMMERMAN .0087892 RI | ROYALTY INTEREST | PRODUCING |
| MICHIGAN | OSCEOLA | OSCEOLA CO MI MI<br>SEC 28-18N-9W: S2 & NESE<br>ZIMMERMAN A1 & B .0087892 RI | ROYALTY INTEREST | PRODUCING |
| NEW MEXICO | EDDY | EDDY CO NM .0003906 ORISEC 17-19S-29ESOUTHWEST ROYALTIES-UNION TEXAS STATE 1;SEC 6-23S-25E (ROCK TANK UNIT) .00002697 ORI | OVERRIDING ROYALTY | PRODUCING |
| OKLAHOMA | BEAVER | BEAVER CO OK<br>SEC 17-4N-25ECM: ALL<br>EVANS UNIT .0008136 ORRI | OVERRIDING ROYALTY | PRODUCING |
| OKLAHOMA | BEAVER | BEAVER CO OK<br>SEC 29-6N-22 ECM: SE/4 & E/2 SW/4<br>PREWITT GAS UNIT .0001196 ORRI | OVERRIDING ROYALTY | PRODUCING |
| OKLAHOMA | BEAVER | BEAVER CO OK<br>SEC 17-4N-25EM: ALL<br>LEROY 1-17 .000824 ORRI | OVERRIDING ROYALTY | PRODUCING |
| OKLAHOMA | ELLIS | ELLIS CO OK 1/4 MI<br>SEC 18-19N-21W: W/2 W/2<br>AKA LOT 1 OF 36.9 ACS LOT 2, 37.13ACS<br>LOT 3 OF 37.36 ACS LOT 4 37.58 ACS<br>CORAM "B" .00740197 RI | MINERAL INTEREST | PRODUCING |
| OKLAHOMA | ELLIS | ELLIS CO OK 1/4 MI<br>SEC 5-19N-23W: SW/4<br>ANNE 5-1 .00778984 RI | MINERAL INTEREST | PRODUCING |

3

| State | County | Legal Description | Interest Type | Status |
|-------|--------|------------------|---------------|--------|
| OKLAHOMA | ELLIS | ELLIS CO OK<br>SEC 6-19N-23W: NW/4<br>SEC 8-19N-23W: N/2 NE/4<br>SEC 13-19N-22W: S/2<br>SEC 17-19N-23W: SE/4<br>SEC 14-19N-22W: E/2 E/2<br>SEC 23-19N-22W: S/2 SE/4,<br>SEC 24-19N-22W: NW/4 | MINERAL INTEREST | PRODUCING |
| TEXAS | ANDERSON | ANDERSON CO TX MI<br>G W TUGGLE SVY A-771 &<br>WILLIAM WRIGHT SVY A-798, 111.93 ACS<br>HUMBLE-NECHES UNIT<br>NECHES SUB CLARKVILLE UNIT TR 30 | MINERAL INTEREST | PRODUCING |
| TEXAS | ANDERSON | ANDERSON CO TX MI<br>F CURBIER SVY A-221, 148 ACS<br>TODD .00156226 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | ANDERSON | ANDERSON CO MI<br>ALFRED BENGE A-106 &<br>JOSE CHREINO SVY A-168, 157.050 ACS<br>FAIRWAY JAMES LIME UNIT TR 853 | MINERAL INTEREST | PRODUCING |
| TEXAS | ANDERSON | ANDERSON CO TX MI<br>JOHN FERGUSON SVY A-22<br>JOSEPH FERGUSON SVY A-23, 156.551 ACS<br>FAIRWAY JAMES LIME UNIT TR 661 | MINERAL INTEREST | PRODUCING |
| TEXAS | ANDERSON | ANDERSON CO TX MI<br>JOSE CHERINO SVY A-168, 158.94 ACS<br>FAIRWAY JAMES LIME UNITTR 756 | MINERAL INTEREST | PRODUCING |
| TEXAS | ANDERSON | ANDERSON CO TX MI<br>JOSE CHERINO SVY A-168, 159.959 ACS<br>FAIRWAY JAMES LIME UNIT<br>TR 758 & TR 856 | MINERAL INTEREST | PRODUCING |
| TEXAS | ANDERSON | ANDERSON CO TX MI<br>JOSEPH FERGUSON SVY A-23, 152.73 ACS<br>FAIRWAY JAMES LIME UNIT TR 759 | MINERAL INTEREST | PRODUCING |
| TEXAS | ANDERSON | ANDERSON CO TX MI<br>JOSE CHERINO SVY A-168, 133.698 ACS<br>FAIRWAY JAMES LIME UNIT<br>TR 858 | MINERAL INTEREST | PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | ANDERSON | ANDERSON CO TX MI<br>JOSE CHERINO A-168, 160 ACS<br>FAIRWAY JAMES LIME UNIT TR 855 | MINERAL INTEREST | PRODUCING |
| TEXAS | ANDERSON | ANDERSON CO TX MI<br>JOHN FERGUSON SVY A-22, 99.76 ACS<br>FAIRWAY JAMES LIME UT TR663<br>J M COOK SVY A-972 &<br>JOSEPH FERGUSON A-23, 156.599 ACS<br>FAIRWAY JAMESLIME UTTR 860 | MINERAL INTEREST | PRODUCING |
| TEXAS | ANDREWS | ANDREWS CO TX MI<br>SEC 4 BLK A-35 PSL SVY A-950: NE/4, 160 ACS<br>YATES FORMATION,<br>M. GROOM<br>GROOM 0.000868 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | ANDREWS | ANDREWS CO TX MI<br>SEC 4 BLK A-35 PSL SVY A-950: E/2, 320 ACS<br>SEC 7 BLK A-35 PSL SVY A-951: NE/4, 160 ACS<br>J. CLEO THOMPSON-WEST MEANS<br>GRAYSBURG-SAN ANDRES UNIT .0017360 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | BORDEN | BORDEN CO TX MI<br>320 ACS, 40 ACS OF 214.9 LOCATED IN<br>E/2 SEC 69 BLK20 LAVACA NAVIGA SVY<br>SOUTH LAKE THOMAS 69 -B3- RRC 68663 | MINERAL INTEREST | PRODUCING |
| TEXAS | BORDEN | BORDEN CO TX MI<br>SEC 80 BLK 20 LAVACA NAV<br>JOANN .015625 RI (RRC 64823) | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI J C WALKER SVY, 309.73 ACS | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX 9.398 MI<br>56.39 ACS OUT OF J P COLE SVY, A-12<br>DESCRIBED IN DEED DTD 3/12/1999 FROM<br>ALTA MAE KEMP TO SANDRA G. JACKSON<br>RECORDED IN VOL. 499, PG 214 | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>LEMUEL MOORE SVY, 15.95 ACS<br>YEZAK | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>IGN CO SVY<br>COFFIELD B-10 ETAL .0625 RI | MINERAL INTEREST | PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | BURLESON | BURLESON CO TX MIHENRY MARTIN SVY A-185COFFIELD M-2 (RRC 71500) & (RRC 23057).064375 RI & .01072916 ORI | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>J C WALKER SVY<br>COFFIELD B-7A "A"<br>.0625 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>ABNER SMITH SVY<br>COFFIELD B-4 .0625 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI 20 ACRES M/L<br>E SANTE SVY, A-210 & ABNER SMITH SVY, A-209<br>COFFIELD-RUSSELL UNIT (RRC 10994)<br>.01041666 ORI & .02083332 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>SMITH SVY<br>COFFIELD-SHAW<br>.046875 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>SMITH SVY<br>COFFIELD-SMITH A,C,D<br>.0625 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>J S WINSTON SVY A-251<br>COFFIELD-WINSTON A & B .0625 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX 9.6933 MI<br>58.16 ACS, J P COLE SVY A-12<br>DESCRIBED IN DEED DTD 10/26/1949<br>FROM ROBERT KEMP ETAL TO ALMA DAVIS<br>RECORDED IN VOL. 106, PG 133 | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>MOSES CUMMINGS SVY A-16, 200 ACS | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>J M SANCHES SVY A-55<br>KNESEK-FINLEY UNIT #1<br>.00165126 RI | MINERAL INTEREST | PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | BURLESON | BURLESON CO TX MI<br>MOSES CUMMINGS SVY A-16, 455.852 ACS<br>LOUISE PORTER 1-H .0020466 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX .1875 MI<br>HUGH MCKEEN SVY<br>STANLEY A .125 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>MARY CARNAGHAN SVY A-8<br>STORM UNIT (RRC 23276)<br>.01841214 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>H COVINGTON SVY A-14<br>CHARLES MATTHEWS SVYA-40, 488.882 ACS<br>COLLEY-TREYBIG UNIT 1RE | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>SEC 9 A SMITH SVY A-209<br>RECORDED VOL 21 PAGE 652<br>COFFIELD-SMITH "E" AND "F"<br>.0625 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>MOSES CUMMINGS SVY A-16, 360 ACS<br>KOVAR-PORTER .0020932 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>E SANTE SVY A-317 & A-210<br>COFFIELD B UNIT(RRC 10378) TR 17,39 ACS<br>.0416666 RI & .02083332 ORI | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>E SANTE SVY A-210, 40.25 ACS<br>COFFIELD "E"  RRC 10227<br>.0416666 RI  & .02083332 ORI | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX  MI<br>E. SANTE SVY A-210<br>COFFIELD (RRC 4390) NR<br>.0416666 RI & .02083332 ORI | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MIE. SANTE SVY A-210COFFIELD "A"<br>(RRC 04396).0416666 RI & .02083332 ORI | MINERAL INTEREST | PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | BURLESON | BURLESON CO TX MI<br>E SANTE SVY A-210: 46 ACS<br>COFFIELD W (C2475) RRC 4365<br>.0416666 RI & .02083332 ORI | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON & MILAM CO TX MI<br>SANTE SVY A-272<br>HENRY MARTIN SVY A-125, 40 ACS<br>COFFIELD -C- (RRC 04332)<br>.0416666RI & .02083332 ORI | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>E SANTE SVY A-210: 40 ACS<br>H H COFFIELD (RRC 03979)<br>.0416666RI & .03116822 ORI | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX  MI<br>E SANTE SVY A-210<br>COFFIELD 2A9 UNIT<br>.0416666 ORI & .02083332 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>39.2 ACS BEING A TRACT OF LAND OUT<br>OF THE E. SANTE SVY, A-210 (RRC 10446)<br>COFFIELD "G" .0416666 RI & .02083332 ORI | MINERAL INTEREST | PRODUCING |
| TEXAS | CALDWELL | CALDWELL CO TX 1/32 ORI<br>30 ACES IN THE GERRON HINDS LEAGUE, A-13<br>TILLER UNIT (VARIOUS INTEREST) .02083332 ; .00260966 | OVERRIDING<br>ROYALTY | PRODUCING |
| TEXAS | CHEROKEE | CHREOKEE CO TX MI<br>HERDON SVY & LEVI JORDAN SVY<br>AND J. H. ARMSTRONG, A-69<br>SALLI D. WHITEMAN #2  .00018606 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | CHEROKEE | CHEROKEE CO TX MI<br>LEVI JORDAN LGE A-28, 649 ACS<br>J O HUGGINS GU -1- 0.00017358<br>RI | MINERAL INTEREST | PRODUCING |
| TEXAS | COLORADO | COLORADO CO TX MI<br>T P ANDERSON SVY A-54<br>C SIMON SVY A-502<br>R WEED A-598 | MINERAL INTEREST | PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | CROCKETT | CROCKETT CO TX 45/2460 X1/16 MI<br>SEC 4 CHAMBERS CSL A-1689, 4428 ACS<br>CHAMBERSCO SCHOOL LANDS .0003811 RI<br>MIDWAY LANE 1100 UNIT (RRC 5579)<br>MIDWAY LANE 1050 UNIT<br>MIDWAY LANE 850 | MINERAL INTEREST | PRODUCING |
| TEXAS | DE WITT | DE WITT CO TX  1/8 MI<br>JAMES DUFF LGE A-153, 236.3 ACS<br>E C SCHAEFER .0104166 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | DE WITT | DE WITT CO TX 7.5/103 RI<br>JAMES MAY 1/4 LGE, 103 ACS<br>LTD TO DEPTHS 100' BELOW ALVES WELLS<br>HENSON 1H, 2H, 3H  .00089188 RI | ROYALTY INTEREST | PRODUCING |
| TEXAS | DIMMIT | DIMMIT CO TX 1/3 MI<br>SEC 57 LOT 8 BLK 2 SUBD A<br>T&NO SVY A-758, 40 ACS | MINERAL INTEREST | PRODUCING |
| TEXAS | DIMMIT | DIMMIT CO TX NPRI<br>SEC 140 & 502, 1136.5 ACS<br>RAY MORRIS | ROYALTY INTEREST | PRODUCING |
| TEXAS | DIMMIT | DIMMIT CO TX 1/6 NPRI<br>SEC 7 GC&SF SVY A-1201<br>DIAMOND H RANCH 1-H<br>.08333334 RI | ROYALTY INTEREST | PRODUCING |
| TEXAS | DIMMIT | DIMMIT CO TX MI<br>40 ACS, SEC 68 LOT 16 BLK 2<br>VANDERVOORT SVY A-1238 | MINERAL INTEREST | PRODUCING |
| TEXAS | DIMMIT | DIMMIT CO TX 1/3 MI<br>LOT 7 BLK 175 SVY<br>CATARINA FARMS SUBD, 200 ACS<br>LOT 7 T&NORR CO/CASSIN,W A-1077<br>BRISCOE B #11 | ROYALTY INTEREST | PRODUCING |
| TEXAS | DIMMIT | DIMMIT CO TX NPRI<br>SEC 78 BLK 2 T&NO RR CO<br>F. VANDERVOORT SVY, A-1243 | PERPETUAL NON-PARTICIPATING ROYALTY INTEREST | PRODUCING |
| TEXAS | FAYETTE | FAYETTE CO TX 139 ACS<br>ROBERT G. BAUGH SVY A-12<br>TANNER UNIT .00214311 RI | MINERAL INTEREST | PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | FAYETTE | FAYETTE CO TX 1/4<br>ROBERT G. BAUGH SVY A-12, 139 ACS<br>JOHN VANDERWORTH LGE A-312, 237 ACS<br>SPECKELS UNIT #1 .00715 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | FAYETTE | FAYETTE CO TX 1/8 MI 237 ACS<br>JOHN VANDERWORTH LGE A-312<br>PATSY UNIT .00651368RI | MINERAL INTEREST | PRODUCING |
| TEXAS | FAYETTE | FAYETTE CO TX 237 ACSJOHN VANDERWORTH LGE A-312KATHY UNIT .003347 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | FAYETTE | FAYETTE CO TX 1/8 MI 237 ACS<br>JOHN VANDERWORTH LGE A-312,<br>OPAL UNIT #1.00198532RI<br>(TRS 1,2 & 3) (135.32 ACS) | ROYALTY INTEREST | PRODUCING |
| TEXAS | FAYETTE | FAYETTE CO TX MI 237 ACS<br>JOHN VANDERWORTH LGE A-312<br>(TRS 1-20) IVORY OIL UNIT#1 .000236 RI | ROYALTY INTEREST | PRODUCING |
| TEXAS | FAYETTE | FAYETTE CO TX MI<br>W J WILLIAMSON SVY A-113<br>GARNET UNIT OL #1-H | MINERAL INTEREST | PRODUCING |
| TEXAS | FAYETTE | FAYETTE CO TX<br>A. E. BAKER SVY A-8<br>JASPER UNIT .00089512 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | FAYETTE | FAYETTE CO TX MI<br>J G WILKINSON SVY A-108<br>CONIE B #1 .01510722 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | GAINES | GAINES CO TX MI<br>SEC 1 BLK C-30 PSL SVY<br>SEC 2 BLK C-30 PSL,<br>SEC 4 BLK H, D&W SVY<br>SEC 10 BLK H D&W SVY<br>EXCEPT SW/4 SW/4 OF SEC 10<br>CEDAR LAKE UNIT | MINERAL INTEREST | PRODUCING |
| TEXAS | GOLIAD | GOLIAD CO TX 1/12 NPRI<br>M. G. CARICO SVY A-90, 50.6 ACS<br>ANNIE WEISE LSE .006942 RI | ROYALTY INTEREST | PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | GRAY | GRAY CO TX MI<br>COFFIELD 1 & 2<br>COFFIELD-GRAY, SEC.89, BLK. 23<br>H AND GN RR CO.<br>SVY.SE/4 SEC.94<br>BLK. 23 H&GN CO. SVY. | MINERAL INTEREST | PRODUCING |
| TEXAS | GRAYSON | GRAYSON CO TX 1/48 MI<br>J B MC ANAIR SVY A-763, 202 ACS<br>SHERMAN 7,500' SU (VARIOUS UNIT INT) | MINERAL INTEREST | PRODUCING |
| TEXAS | GRAYSON | GRAYSON CO TX 1/48 MI<br>J B MC ANAIR SVY A-763, 202 ACS<br>SHERMAN 8900 PENN SU<br>(VARIOUS UNIT INTEREST) | MINERAL INTEREST | PRODUCING |
| TEXAS | GREGG | GREGG CO TX 1/16 MI<br>50 ACS DOLORES SANCHEZ SVY A-186<br>C J DOLLAHITE LSE .0052086 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | GREGG | GREGG CO TX 5/16 MI<br>24.95 ACS W P CHISM SVY A-36<br>HILBURN-LLOYD "B" LSE .026042RI | MINERAL INTEREST | PRODUCING |
| TEXAS | GREGG | GREGG CO TX  1/8 MI<br>33.5 ACS JOHN RUDDLE SVY A-176<br>IRENE ZIEGLER LSE .010416 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | GREGG | GREGG CO TX 1/3 X 1/16 MI<br>52 ACS DELORES SANCHEZ SVY A-186<br>COTTON VALLEY FORMATION<br>MCKINLEY WELLS .00112332 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | GREGG | GREGG CO TX  MI<br>G W HOOPER SVY A-92<br>ALFRED JONES  .00520866 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | GREGG | GREGG CO TX MI<br>P P RAINS SVY A-258<br>A J TUTTLE GAS UT<br>.00364800 ORI | MINERAL INTEREST | PRODUCING |
| TEXAS | GREGG | GREGG CO TX MI<br>G W HOOPER SVY A-92<br>SHILOH SCHOOL 1,2,3 GU<br>.00073752 RI | MINERAL INTEREST | PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | GREGG | GREGG CO TX MI<br>247.5 ACS W H CASTLEBERRY SVY A-38<br>MATTIE MONCRIEF 1,2,3 | ROYALTY INTEREST | PRODUCING |
| TEXAS | HARRIS | HARRIS CO TX 1/44 X 1/8 RI<br>67.04 ACS C. GOODRICH SVY A-311<br>HULDA MARTENS .001894 RI | ROYALTY INTEREST | PRODUCING |
| TEXAS | HARRIS | HARRIS CO TX MI<br>RALPH HUBBARD SVY A-383, WM HURD SVY A-371,<br>JOSEPH MILLER SVY<br>A-50, 566.094 ACS<br>TOMBALL GAS UNIT #8 (RRC 8544)<br>.00000734 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | HARRISON | HARRISON CO TX 1/16 MI<br>252 ACS A. B. WYATT SVY A-796<br>PEARCE GAS UNIT .0030762<br>RI | MINERAL INTEREST | PRODUCING |
| TEXAS | HARRISON | HARRISON CO TX 704 ACSJOHN HUSBAND, A-297,R W<br>SMITH, A-626, AND H VARDEMAN,A-726, FRANK DAVIS<br>ESTATE DEEP GU.000423 ORI | OVERRIDING<br>ROYALTY | PRODUCING |
| TEXAS | HENDERSON | HENDERSON CO TX MI<br> STEPHEN HATTON SVY A-291<br> JOHN LAWSON SVY A-434<br> OPELIKAGAS UNIT | MINERAL INTEREST | PRODUCING |
| TEXAS | HOWARD | HOWARD CO TX MI<br>SEC 3 BLK 34 T1S T&P SVY A-405<br>SAUNDERS  -A- & -B- .0347222 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | JACK | JACK CO TX MI 1/4<br>SEC 2, S M SNODGRASS SVY, A-1314; S H TILGHMAN<br>SVY A-1724<br>TR1- 7 1/2 ACS, TR 249 ACS,<br>TR 3 40 ACS, SEC 2, TR 4 40 ACS<br>136.5 ACS L&E 20 AC<br>S VOL 79 PG 557<br>LEACH 1-A | ROYALTY INTEREST | PRODUCING |
| TEXAS | LEE | LEE CO TX 1/2 MI<br>HUMPHREY BEST SVY A-2, 103 ACS<br>USING 2 TRS OF 21.78 &24.77ACSIN<br>A 301.89 AC UNIT, GIDDINGS FLD<br>COLVIN #1 UNIT .00963722 RI | MINERAL INTEREST | PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | LEE | LEE CO TX MI<br>P W OWENS SVY A-250, 374 ACS<br>OWENS & OWENS "A"  .0125 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br> G. B. LOFTIN SVY A-197, 81.666 ACS | MINERAL INTEREST | PRODUCING |
| TEXAS | LEE | LEE CO TX MI 80 ACS<br>PART OF JOHN CHENOWITH SVY, A-60<br>MALOY-COFFIELD .04687334RI | MINERAL INTEREST | PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>HUMPHREY BEST SVY A-2<br>THOMAS WARD SVY A-330, 577.7 ACS,<br>EVA MAE3& 4  .01170554 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>F BOATWRIGHT SVY, 151.54 ACS<br>COFFIELD-ORSAGE .02402732 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | LEON | LEON CO TX MI<br>S SANCHEZ SVY, 458,13 ACS<br>CARTER 1 & 2 .00130214 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | LIBERTY | JEFFERSON & LIBERTY CO TX 1/4 MI<br>G K PETRY SVY A-775 (LIBERTY)<br>G K PETRY SVYA-935 (JEFFERSON)<br>FUTER SACE, LLC #1 .04166666 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | MARTIN | MARTIN CO TX MI<br>SEC 36 BLK 36 T2N T&P SVY A-757: E/2, 320 ACS<br>HOPPER 36 #5 .009375 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | MARTIN | MARTIN CO TX MI<br>SEC 36 BLK 36 T2N T&P SVY A-757: SW/4, 160 ACS<br>WILLIAMS  .00703126 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | MARTIN | MARTIN CO TX MI<br>SEC 25 BLK 36 T2N T&P SVY A-163: NE/4, 160 ACS<br>MORRISON "25" .0075 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | MARTIN | MARTIN CO TX MI<br>SEC 38 BLK 36 T2N T&P RR SVY A-896: E/2 , 320 ACS<br>GASKIN #3801(NE/4)  .00421876 RI<br>GASKIN #3803 (SE/4)  .00445314 RI<br>GASKIN #3804 (E/2NW/4)<br>.00445314 RI | MINERAL INTEREST | PRODUCING |

13

| State | County | Legal Description | Interest Type | Status |
|-------|--------|------------------|---------------|--------|
| TEXAS | MIDLAND | MIDLAND CO TX 1/16 ORI<br>SEC 40 BLK A, W T GRAY SVY, 656 ACS<br>BAXTER-WILLIS; WILLIS 40<br>.0208332 ORI | OVERRIDING ROYALTY | PRODUCING |
| TEXAS | MIDLAND | MIDLAND CO TX 1/16 ORI<br>SEC 11 BLK 38 T2S T&P SVY A-159, 125 ACS<br>S/58 ACS NE/4<br>&N/67 ACS SE/4,<br>CASBEER 1 .0029124 ORI | OVERRIDING ROYALTY | PRODUCING |
| TEXAS | MILAM | MILAM CO TX<br>D H VAN VEIGHTON SVY<br>SMITH VINCENT SVY, 275 ACS<br>LTD TO DEPTH OF4,000'<br>W P HOGAN .0416666 ORI | OVERRIDING ROYALTY | PRODUCING |
| TEXAS | MILAM | MILAM CO TX<br>ELIZ SANTA SVY A-317, 80 ACS<br>COFFIELD B (RRC 04331)<br>.04166668 RI<br>.02083332 ORI | MINERAL INTEREST | PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>BROWN & MCKENZIE & ELIZA SANTE SVY<br>COFFIELD H H -A- (04299)<br>.02577066 RI<br>.02083334 ORI | MINERAL INTEREST | PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI W W HILL SVY CALUGIA-COFFIELD<br>.1875 | MINERAL INTEREST | PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>VAN VEIGHTON SVY<br>COFFIELD - CAMP<br>.04166666 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>ELIZA SANTE SVY A-317<br>HERNDON-HENSLEY (RRC 11882)<br>.0625 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>HENRY MARTIN SVY A-272<br>COFFIELD-MARTIN (RRC 04429)<br>.08046876 RI<br>.01341146 ORI | MINERAL INTEREST | PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | MILAM | MILAM CO TX MI<br>WILLIAM BENTON SVY A-111<br>COFFIELD-STEWART<br>.0699094 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>CHARLES BIGELOW SVY A-100, 40 ACS<br>COFFIELD ESTATE (RRC 09869)<br>.125 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>FURHAM SVY<br>WOLFDEN UNIT #1<br>.08556646 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | MILAM | MILAM CO TX  MI<br>T. J. CHAMBERS SVY A-7 AND<br>A. F. BURCHARD SVY A-87<br>BEING 450ACS CONYEYED FROM C.A.<br>PRATER 2/26/1940. VOL 234 PG 441<br>581.609 ACS CONVEYEDFROM B.K. ISAACS<br>11/18/1943 VOL 241 PG 96 & 98 ANNIE ISAACS<br>KOONSEN .05333334 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | MILAM | MILAM CO TX  NPRI<br>JAMES PREWITT SVY, 3.576 ACS<br>ELZIE LEWIS, EXC OF J. LEWIS | ROYALTY INTEREST | PRODUCING |
| TEXAS | MILAM | MILAM CO TX  NPRI<br>120 ACRES OUT OF THE T.S. ARNETT SVY, A-74 &<br>T.J. CHAMBERS<br>SVY,  A-7, FOR THE EST OF H. C. VANCE<br>SCHWAMP A-1 .01845188 RI | ROYALTY INTEREST | PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>ELIZA SANTE SVY<br>COFFIELD- HENSLEY<br>.0477656 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>HENRY MARTIN SVY A-272<br>37 ACS  IN SVY<br>H H COFFIELD<br>.01401670<br>RI<br>.00520830 ORI | MINERAL INTEREST | PRODUCING |

15

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | MILAM | MILAM CO TX MI<br>B F SWOAP SVY A-328<br>COFFIELD M-11 1 & 2<br>.0625 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>SMITH VINCENT SVY A-372<br>D H VAN VEIGHTON SVY A-373<br>WELLS 1,2,4RRC LEASE #10198<br>WELL 3 RRC LEASE #10397<br>210 ACS - 50 ACS IN SMITH VINCENT SV<br>Y A-372<br>160 ACS IN D.H. VANVEIGHTON SVY A-373<br>BELT III 1,2,3,4 .0104166 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>J. A. PREWITT SVY, A-288<br>BULLOH (NAVARRO) FIELD; (LSE 7129)<br>COFFIELD-COOK UNIT .056694 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>ELIZA SANTE SVY A-317, 40 ACS<br>VAUGH #2 & WILMA OWENS .0416666<br>RI | MINERAL INTEREST | PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>WILLIAM BENTON SVY A-111, 164 ACS<br>COFFIELD -G (RRC 4663)<br>.125<br>RI | MINERAL INTEREST | PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>SANTE SVY A-317<br>COFFIELD UNIT (A/K/A COFFIELD UNIT A-1)<br>.03181666 RI<br>.02083332 ORI | MINERAL INTEREST | PRODUCING |
| TEXAS | MILAM | MILAM CO TX MIE SANTE SVY A-317 FOUND AT A<br>DEPTH OF 2830' IN THE TETEN AND LEONARD NO 1<br>COFFIELD WELLH COFFIELD B (04294).0401575 RI<br>.02614584 ORI | MINERAL INTEREST | PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>WILLIAM W HILL SVY A-191, 40 ACS<br>H H COFFIELD HILL A-1<br>.07208334 RI | PERPETUAL NON-<br>PARTICIPATING<br>ROYALTY INTEREST | PRODUCING |

16

| State | County | Legal Description | Interest Type | Status |
|---|---|---|---|---|
| TEXAS | MILAM | MILAM CO TX MI<br>ELIZA SANTE SVY A-317<br>COFFIELD-SANTE (RRC 23875)<br>.0416666 RI<br>.02083334 ORI | MINERAL INTEREST | PRODUCING |
| TEXAS | MILAM | MILAM CO TX UNDI 1/2 MI<br>WILLIAM ALLEN SVY; A-72<br>COFFIELD (RRC 11856)<br>.01184834 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JAMES REESE SVY, A-303<br>(MINERVA-ROCKDALE) RRC 872136 | ROYALTY INTEREST | PRODUCING |
| TEXAS | MILAM | MILAM CO TX 1/6 NPRI<br>139.012 AC IN THE COLTON WELLS SVY A-390 | PERPETUAL NON-PARTICIPATING ROYALTY INTEREST | PRODUCING |
| TEXAS | MITCHELL | MITCHELL & SCURRY COS TX MI<br>SUBD 7 OF C. A. O'KEEFE SUBD OF<br>GEORGE A REIGER& KIRKLAND &<br>FIELDS SVYS, 258 ACS FEE UNIT #1;<br>EDMONDSON .006944446 RI | ROYALTY INTEREST | PRODUCING |
| TEXAS | MONTGOMERY | MONTGOMERY CO TX MI<br>JOHN A DAVIS SVY A-188, 70.5256 ACS<br>HARRIS A, B, D TRACTS<br>CONROE FU TR E1,E2,E5 | MINERAL INTEREST | PRODUCING |
| TEXAS | MONTGOMERY | MONTGOMERY CO TX MI<br>WILSON STRICKLAND SVY, 29 ACS<br>J. C. YOUNG LSE | ROYALTY INTEREST | PRODUCING |
| TEXAS | MONTGOMERY | MONTGOMERY CO TX MI<br>I&GN RR CO SVY<br>HOOPER B;<br>CONROE FIELD UT TRACT A-31<br>.01528894 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | MONTGOMERY | MONTGOMERY CO TX MI<br>HOOPER J G WATSON SVY<br>CONROE FIELD WIDE UNIT<br>CONROE PLANTTRACT A-28<br>.02278000 RI | MINERAL INTEREST | PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | MONTGOMERY | MONTGOMERY CO TX MI<br>L A LANG SVY, 40 ACS<br>T&NO/T M WIGGINGS SVY A-714<br>E. MOREHEAD -B- UNIT<br>WIGGINS HEIRS<br>PERRY HEIRS<br>CONROE FLD UT E-19,35,36,37 | MINERAL INTEREST | PRODUCING |
| TEXAS | MONTGOMERY | MONTGOMERY CO TX MI<br>C T DARBY SVY<br>A. E. WALKER UNIT<br>CONROE FIELD UNIT E-17 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | PALO PINTO | PALO PINTO CO TX  7.5 % ORI<br>SEC 18 T&P SVY A-1667<br>GEORGE A. WRIGHT G U#1<br>.0250000 ORI | OVERRIDING ROYALTY | PRODUCING |
| TEXAS | PARKER | PARKER CO TX  1/16 ORI<br>JOHN L. SEE SVY A-1194,<br>SEC 325 T&P SVY A-1532,<br>SEC 326 T&P SVY A-1748, NW/C, 395 ACS<br>LEATHERMAN UNIT .041666 ORI | OVERRIDING ROYALTY | PRODUCING |
| TEXAS | PARKER | PARKER CO TX  7.5% ORI<br>SEC 327 T&P SVY A-1537, 320 ACS<br>TIERCE-MCDONALD UNIT (RRC 63637)<br>.04773436 ORI | OVERRIDING ROYALTY | PRODUCING |
| TEXAS | REAGAN | REAGAN CO TX  2/3 X 3/256 MI & 2/3 X  3/32 RI<br>SEC 13 CERT 551 BLK E HE&WT SVY:<br>SW/4, 160 ACS<br>MWJ-TRAMMELL A LSE .0078125 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | REAGAN | REAGAN CO TX 1/2 X 3/64 X 7/8 ORI<br>SEC 9 BLK 2 UNIVERSITY LANDS SVY;<br>SW/4 LTD TO DEPTH OF 7,200', 164.93 ACS<br>UNIVERSITY 1-9  .00683593 ORI | OVERRIDING ROYALTY | PRODUCING |
| TEXAS | RUSK | RUSK CO TX 1/20 MI<br>19.25 ACS MARY COGSWELL SVY<br>(DICKSON LSE) .00416666 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | RUSK | RUSK CO TX MIM J PRU SVY, 79 ACSSOUTH 7.5 ACRES<br>OF THE EAST 15 ACRESOF THEWEST 30 ACRES OF THE<br>SOUTH 60ACRES OF BLK 22 BEING 79 ACRESGILES A<br>.00277800 RI | MINERAL INTEREST | PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | SCURRY | SCURRY CO TX 3/160 MI<br>SEC 117 BLK 97 H&TC SVY: NE/4, 160 ACS<br>T J ELLIS .00156252 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | SCURRY | SCURRY CO TX  1/16 ORI<br>SEC 129 BLK 97 H & TC RY CO SVY: NE/4, 160 ACS<br>FIRST NATLBANK OF SNYDER LSE<br>.04166666 ORI | OVERRIDING<br>ROYALTY | PRODUCING |
| TEXAS | SCURRY | SCURRY CO TX 1/32 X 7/8 ORI<br>SEC 253 BLK 97 H&TC SVY: NW/PT, 193.6 ACS<br>SACROC UNIT TR 167 (LUNSFORD LSE)<br>.0182292 ORI | OVERRIDING<br>ROYALTY | PRODUCING |
| TEXAS | SCURRY | SCURRY CO TX 1/2 X 1/16 ORI<br>SEC 115 BLK 97 H&TC RY CO SVY<br>S/60 ACS OF W/2 SE/4(LTD TO 2,000')<br>MURPHY D .02083334 ORI | OVERRIDING<br>ROYALTY | PRODUCING |
| TEXAS | SCURRY | SCURRY CO TX MI 160 ACS<br>SEC 130 BLK 97 H&TC SVY: NW/4<br>W F STERLING .00520866 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | SCURRY | SCURRY CO TX MI<br>SEC 114 BLK 97 H&TC SVY: SE/4 NE/4 NE/4<br>& NE/4 SE/4 NE/4, 20ACS<br>J E (ALSO L E) MURPHY .02083334  & .00260416 ORI<br>IRA 1700 ZONE UNIT TR 24 | MINERAL INTEREST | PRODUCING |
| TEXAS | SCURRY | SCURRY CO TX MI<br>SEC 142 BLK 97 H&TC SVY<br>S/2 W/2 NE/4 SW/4,<br>S/2 E/2 NW/4 SW/4,20 ACS<br>MCCLURE, R. O. .00260416 ORI | MINERAL INTEREST | PRODUCING |
| TEXAS | SCURRY | SCURRY CO TX MI<br>SEC 115 BLK 97 H&TC SVY: N/2 NE/4, 80 ACS<br>S H NEWMAN .00260414ORI<br>IRA UNIT TR 28 - | MINERAL INTEREST | PRODUCING |
| TEXAS | SCURRY | SCURRY CO TX MI<br>SEC 115 BLK 97 H&TC SVY<br>W A REITER .00260414 ORI<br>IRA UNIT  TR54 | MINERAL INTEREST | PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | SCURRY | SCURRY CO TX MI<br>SEC 115 BLK 97 H&TC SVY: W/2 NW/4, 80 ACS<br>WADE .00260416 ORI<br>IRA UNIT TR 25 | MINERAL INTEREST | PRODUCING |
| TEXAS | SCURRY | SCURRY CO TX MI<br>SEC 146 BLK 97 H&TC SVY: 80 ACS<br>ALLIANCE TRUST .00260414 ORI | MINERAL INTEREST | PRODUCING |
| TEXAS | SCURRY | SCURRY CO TX MI<br>SEC 146 BLK 97 H&TC SVY<br>O L BURNEY .0026042 ORI | OVERRIDING ROYALTY | PRODUCING |
| TEXAS | SCURRY | SCURRY CO TX  MI<br>SEC 116 BLK 97 H&TC SVY, PT SW/4, 120 ACS<br>RI IRA 1700 ZONE UNIT<br>JJ MOORE  LSE<br>IRA UNIT TR 35 - .00206414 RI<br>IRA UNIT TR 46 - .00260414 RI | MINERAL INTEREST | PRODUCING |
| TEXAS | SCURRY | SCURRY CO TX  MI<br>SEC 116 BLK 97 H&TC SVY, PT SW/4, 120 ACS<br>IRA 1700 ZONE UNIT<br>MOORE LSE .02083334 ORI<br>IRA UNIT TR 33 | MINERAL INTEREST | PRODUCING |
| TEXAS | SCURRY | SCURRY CO TX  .0182292 ORI<br>SEC 253 BLK 97 H&TC SVY: NW/PT, 193.6 ACS<br>SACROC UNIT TR 168 | OVERRIDING ROYALTY | PRODUCING |
| TEXAS | SCURRY | SCURRY CO TX  .0182292 ORI<br>SEC 291 BLK 97 H&TC SVY<br>SACROC UNIT TR 156 | OVERRIDING ROYALTY | PRODUCING |
| TEXAS | TERRY | TERRY CO TX  1/4 MI S/440 ACS<br>SEC 22 BLK K PSL SVY A-1292<br>C B TOWNES BLEASE<br>PRENTICE SOUTHWEST UNIT | MINERAL INTEREST | PRODUCING |
| TEXAS | TERRY | TERRY CO TX  1/4 MI S/440.8 ACS<br>SEC 22 BLK K PSL SVY A-1292<br>C B TOWNES "A" TR<br>3<br>PRENTICE CENTRAL GLORIETA UT<br>.020834 RI AND .041666 ORI | MINERAL INTEREST | PRODUCING |

20

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | TERRY | TERRY CO TX  1/4 MI S/440.8 ACS<br>SEC 22 BLK K PSL SVY A-1292<br>LTD TO CLRFK FM ONLY<br>C B TOWNES "A" TR 3<br>PRENTICE 6700' CLEARFORK CENTRAL UNIT<br>.020834 RI AND .041666 ORI | MINERAL INTEREST | PRODUCING |
| TEXAS | UPTON | UPTON CO TX  7/64 X 1/8 RI640 ACS S/2 SVY 36 BLK 1<br>CERT-334 MK&T RR CO SVY &N/2 SVY 1 CERT- 4260 A-<br>211 GC&SF RR CO SVY (LANE LSE) MCCAMEY UNIT TR<br>13,14,15,16 | ROYALTY INTEREST | PRODUCING |
| TEXAS | WARD | WARD CO TX MI<br> SEC 58, BLK 33, H&TC RR SVY A-892, 640 ACS | MINERAL INTEREST | PRODUCING |
| TEXAS | WILLIAMSON | WILLIAMSON CO TX MI<br>SIMON MILLER SVY; A-492<br>PHILLIP PRATER SVY; A-418<br>CHAPMAN-ABBOTT UNIT - TRACT 1<br> *** COMBINED ALL TRACTS HERE; SEE REMARKS*** | MINERAL INTEREST | PRODUCING |
| TEXAS | WINKLER | WINKLER CO TX MCL<br>SEC 8 BLK B-2 PSL SVY A-1239,<br>S/2 S/2 & S/2 N/2, 320 ACS<br>SEC 9 BLK B-2 PSL SVY A-1931,<br>N/2 NW/4, N/2 SW/4, NW/4 SE/4, 200 ACS<br>EAST KEYSTONE FIELDWIDE UNIT | MINERAL CLASSIFIED LAND | PRODUCING |
| TEXAS | WINKLER | WINKLER CO TX MI<br>SEC 41 BLK 21 UL SVY A-81U<br>UNIVERSITY -41 (RRC 74260) | MINERAL INTEREST | PRODUCING |
| TEXAS | WINKLER | WINKLER CO TX<br>SEC 31 BLK 21 UL SVY A-71U: SW/4<br>UNIVERSITY -31- A (RRC 19550)<br>.0208334 ORI | MINERAL INTEREST | PRODUCING |
| TEXAS | WOOD | WOOD CO TX  1.25/99 RI<br>99 ACS BERRY SMITH SVY A-534<br>COKE UNIT .0006554 RI & .0006434 RI | ROYALTY INTEREST | PRODUCING |
| TEXAS | WOOD | WOOD CO TX 1/16 X 7/8 RI<br>TR. 5 & 1/3 X 1.25/113 RI-TR. 21 IN<br>J. D. MATTHEWS SVY & DAVID<br>GILLILAND SVY A-229<br>SECOND-SUB CLARKSVILLE FORM UNIT TR 4 & 5 | ROYALTY INTEREST | PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|------------------|---------------|--------|
| TEXAS | WOOD | WOOD CO TX<br>G B WATKINS SVY A-629<br>WOODBINE -A- FORMATION UNIT<br>TRACT 40 (25<br>WELLS) RRC 4887 | ROYALTY INTEREST | PRODUCING |
| TEXAS | WOOD | WOOD CO TX MI<br>GEORGE BREWER SVY A-41<br>LOTS 10-13, BLK 23 OF HAWKINS TOWN SITE,<br>HAWKINS FIELD UT TR B7-12,B9-7,B7-11<br>HAWKINS FIELD UNIT (747 WELLS) RRC 5743 | MINERAL INTEREST | PRODUCING |
| TEXAS | WOOD | WOOD CO TX MI<br>GEORGE BREWER SVY A-41<br>CRAIN (J M HENRY B9-7) .00205934 RI<br>HAWKINS FIELD UNIT (747 WELLS) RRC 5743 | MINERAL INTEREST | PRODUCING |
| TEXAS | YOAKUM | YOAKUM CO TX MI<br>SEC 25 BLK K PSL SVY A-1559: NE/4, 160 ACS<br>PRENTICE GLORIETATR 16<br>PRENTICE 6700' TR 16<br>PRENTICE SW TR 16 | MINERAL INTEREST | PRODUCING |
| TEXAS | ZAVALA | ZAVALA CO TX MI<br>SVY 385 J D OWEN A-1061<br>PICKENS-COFFIELD .0625 RI<br>SVY 4 JMWILLIAMS A-1139<br>SVY 387 J M WILLIAMS A-1244<br>SVY 12 E C RUTLEDGE A-1211<br>SV<br>Y 12 E C RUTLEDGE A-1379<br>SVY 12 E C RUTLEDGE A-1381<br>SVY 13 GC&SF A-754<br>SVY14 J F CRAWFORD A-1170<br>SVY 386 1/2 HENRY HUBBLE A-191<br>SVY 388 H W WILLAIMS~<br>~ SVY 389 J C RUFF A-562<br>SVY 392 W HADDEN A-1121<br>SVY 388 GB&N A-646<br>SVY 449 H W DAVIS A-1120 | MINERAL INTEREST | PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| WYOMING | WESTON | WESTON CO WY<br>SEC 7-45N-67W: LOT 1 W/2 NE/4, NE/4 NW/4,<br>SE/4 SE/4, 200.07 ACS<br>BEING TRACT 4 & SE/4 NW/4, 40 ACS<br>QUEST MUDDY UNIT TR 5B .0014168 ORI | OVERRIDING<br>ROYALTY | PRODUCING |
| ALABAMA | BALDWIN | BALDWIN CO AL MI<br>SEC 3-2S-4E: S/2 SE/4, 80 ACS<br>SEC 10-2S-4E: W/2 NE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| ALABAMA | BALDWIN | BALDWIN CO AL MI<br>SEC 14-2S-4E: SW/4, 160 ACS<br>SEC 15-2S-4E: SE/4, 160 ACS<br>SEC 2-2S-4E: NE/4 SE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| ALABAMA | BALDWIN | BALDWIN CO AL MI<br>SEC 23-2S-4E: NW/4 SE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| ALABAMA | BALDWIN | BALDWIN CO AL MI SEC 31-4S-5E: E/2 NW/4; W/2 NE/4<br>SW/4; NW/4 SE/4; N/2 SW/4SE/4, 234 ACS | MINERAL INTEREST | NON PRODUCING |
| ALABAMA | BALDWIN | BALDWIN CO AL MI<br>SEC 6-5S-5E: NW/4 NE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| ALABAMA | BALDWIN | BALDWIN CO AL MI<br>SEC 2-2N-4E: E/2 SW/4 & W/2 SE/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| ALABAMA | BALDWIN | BALDWIN CO AL MI<br>SEC 17-4S-5E: W/2 E/2, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| ALABAMA | COVINGTON | COVINGTON CO AL MI<br>SEC 12-3N-17E: S/2 SE/4, 80 ACS<br>SEC 13-3N-17E: 2 ACS NW/CNW/4 NE/4, 2 ACS | MINERAL INTEREST | NON PRODUCING |
| ALABAMA | COVINGTON | COVINGTON CO AL MI<br>SEC 24-3N-17E: E/2 SW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| ALABAMA | COVINGTON | COVINGTON CO AL MI<br>SEC 35-1N-18E: NW/4 SW/4, SW/4 NW/4, NW/4 NE/4, NE/4<br>SW/4,<br>SW/4 SW/4, 200 ACS<br>SEC 26-1N-18E: E/2 SW/4 SE/4, 20 ACS | MINERAL INTEREST | NON PRODUCING |
| ALABAMA | COVINGTON | COVINGTON CO AL MI<br>SEC 13-3N-17E: NE/4 SW/4 & SE/4 NW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| ALABAMA | COVINGTON | COVINGTON CO AL MI<br>SEC 24-1N-18E: S/2 SW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| ALABAMA | COVINGTON | COVINGTON CO AL MI<br>SEC 24-3N-17E: SE/4 & SE/4 SE/4, 200 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|---|---|---|---|---|
| ALABAMA | COVINGTON | COVINGTON CO AL MI<br>SEC 10-3N-17E: SW/4 SE/4, NE/4 NW/4, NW/4 NE/4,<br>SW/4 SE/4, SE/4 SW/4, SW/4 SW/4 EAST OF SANFORD<br>RD, 207 ACS | MINERAL INTEREST | NON PRODUCING |
| ALABAMA | ESCAMBIA | ESCAMBIA CO AL MI<br>SEC 26: NW/4 SW/4, 40 ACS<br>SEC 34: 11 ACS | MINERAL INTEREST | NON PRODUCING |
| ALABAMA | ESCAMBIA | ESCAMBIA CO AL MI<br>SEC 9-2N-5E: SW/4 SW/4, 40 ACS<br>SEC 22-2N-5E: NW/4 SE/4, 40ACS | MINERAL INTEREST | NON PRODUCING |
| ALABAMA | HOUSTON | HOUSTON CO AL MI<br>SW/4 LYING EAST OF PANSY CROSBY RDTWP 1 RNG<br>29, 86 ACS | MINERAL INTEREST | NON PRODUCING |
| ARKANSAS | COLUMBIA | COLUMBIA CO AR MI<br>SEC 15-16S-22W: SW/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| ARKANSAS | LAFAYETTE | LAFAYETTE CO AR MI<br>SEC 24-17S-24W: S/2 SW/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| ARKANSAS | LAFAYETTE | LAFAYETTE CO AR MI<br>SEC 24-17S-24W: SW/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| ARKANSAS | LAFAYETTE | LAFAYETTE CO AR MI<br>SEC 25-17S-24W: NW/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| ARKANSAS | MILLER | MILLER CO AR MI<br>SEC 19-19S-27W: SW/4 NW/4 & NW/4 SW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| ARKANSAS | MILLER | MILLER CO AR MI<br>SEC 35-19S-27W: W/2, 320 ACS | MINERAL INTEREST | NON PRODUCING |
| ARKANSAS | OUACHITA | OUACHITA CO AR MI<br>SEC 34-11S-19W: NE/4 SW/4, SE/4 NW/4, E/4 SW/4 NW/4,<br>90 ACS | MINERAL INTEREST | NON PRODUCING |
| ARKANSAS | OUACHITA | OUACHITA CO AR MI<br>SEC 34-11S-19W: W/2, 320 ACS | MINERAL INTEREST | NON PRODUCING |
| CALIFORNIA | KERN | KERN CO, CA MI<br>SECTION 25; 27S-28E ALL,<br>640 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | CALHOUN | CALHOUN CO FL MI<br>SEC 4-1N-9W: NW/4 SE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | CALHOUN | CALHOUN CO FL MI<br>SEC 30-2N-9W: S/2 SW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| FLORIDA | CALHOUN | CALHOUN CO FL MI<br>SEC 17-1N-9W: SE/4 NE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | CALHOUN | CALHOUN CO FL MI<br>SEC 13-1N-10W: N/2 NE/4 & SW/4 NE/4, 120 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | CALHOUN | CALHOUN CO FL MI<br>SEC 18-1N-9W: NW/4 NW/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | CALHOUN | CALHOUN CO FL MI<br>SEC 14-2N-9W: W/2 NE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | CALHOUN | CALHOUN CO FL MI<br>SEC 3-1N-9W: SW/4 SE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | CALHOUN | CALHOUN CO FL NPRI<br>SEC 6-1N-11W<br>SEC 7-1N-11W<br>SEC 8-1N-11W<br>SEC 15-1N-11W<br>1440 ACS | ROYALTY INTEREST | NON PRODUCING |
| FLORIDA | CALHOUN | CALHOUN CO FL MI<br>SEC 36-2N-9W: NE/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | CALHOUN | CALHOUN CO FL MI<br>SEC 4-1N-9W: NW/4 SE/4, 40 ACS<br>SEC 20-2N-9W: S/2 SW/4, 80 ACS<br>SEC 17-1N-9W: SE/4 NE/4, 40 ACS<br>SEC 13-1N-10W: N/2 NE/4, SW/4 NE/4, 120 ACS<br>SEC 18-1N-9W: NW/4 NW4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | CALHOUN | CALHOUN CO FL MI<br>SEC 15-1N-11W: ALL, 640 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | CALHOUN | CALHOUN CO FL MI SEC 7-1N-11W SEC 8-1N-11W SEC 6-1N-11W: SW/4 SW/4, 40 ACS 770 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | HOLMES | HOLMES CO FL MI<br>SEC 34-7N-15W: SW/4 SE/4 & 1.5 TO 2 ACS IN A V SHAPE IN NE/C SE/4 SW/4  & E/2 SE/4, 122 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | HOLMES | HOLMES CO FL MI<br>NW/4 SW/4 SEC 16-5N-16W: | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | HOLMES | HOLMES CO FL MI<br>120 AC N/2 SW/4 AND NW/4 SE/4 OF SEC 28-7N-15W: | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|---|---|---|---|---|
| FLORIDA | HOLMES | HOLMES CO FL MI<br> SEC 16-5N-16W: ALL NORTH OF BONIFAY AND GENEVA PUBLIC ROAD ANDWEST OF CARYVILLE AND GENEVA RD IN NE/4 OF SW/4 AND NW/4 OF SE/4 OF SEC 16-5N-16W LESS ONE ACRE IN NW CORNER  AND LESS ONE ACRE W OF CARYVILLE AND GENEVA RD CROSSING AND N. OF BONIFAY AND GENEVA RD, 39 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | HOLMES | HOLMES CO FL MI<br> 175 ACS E/2 OF NW/4 AND SE/4 OF THE NE/4 AND 12 1/2 AC.ON THE<br>EAST SIDE OF  NW/4 OF THE NW/4 AND 12 1/2 AC. ON THE EAST SIDE OF THE SW/4OF THENE/4,  KNOWN AS THE 7 AC. SOUTH OF THE CREEK. ALL IN SEC 32-7N-15W: | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | HOLMES | HOLMES CO FL MI<br> 175 ACS E/2 OF NW/4 AND SE/4 OF THE NE/4 AND 12 1/2 AC. ON THEE. SIDE OF NW/4   OF THE NW/4 AND 12 1/2 AC. ON THE E. SIDE OF THE SW/4OFTHE NE /4 KNOWN AS THE  7 AC. S. OF THE CREEK, ALL IN SEC 32-7N-15W: | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | HOLMES | HOLMES CO FL MI<br> 5 AC. NW CORNER OF NE/4 OF SE/4 OF SEC 32-7N-17W: | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | HOLMES | HOLMES CO FL MI<br> 40 ACS SE/4 OF SE/4 OF SEC 6-6N-17W: | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | HOLMES | HOLMES CO FL MI<br> 40 ACS NE/4 OF NW/4 SEC 35-7N-15W: | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| FLORIDA | HOLMES | HOLMES CO FL MI<br>NW/4 LESS 9 AC. OUT OF SE/CORNER OF SEC. 30,E/2 OF<br>SEC. 31; SEC. 30 S/2 OF NE/4 AND 6 AC. IN THE<br>SE/CORNER OF SE/4 OF SW/4;LOTS 1 AND 2 OF BLOCK<br>CYPRESS; LOTS 4,21,22 OF BLK G; LOTS 1 AND 2 OF<br>BLK 1; LOT 6OF BLOCK J. ALL OFBLK K, LESS LOTS<br>1,2,3 AND LOT SOLD TO CARY HAMILTON; LOT2 BLK<br>M; LOTS 1,2,7,8<br>OF BLOCK O; LOTS 1,2,4,5,8,14,15 OF BLOCK P; LOTS<br>1,2,15,16,18,19,20, OF BLK. R;ALL OF BLK S; LOTS<br>3,4,5,6,7,8 OF BLK. T; LOTS 1,2,3,6 OF BLK. U. ALL IN<br>TWP 4N<br>-RNG 8W, 480 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | HOLMES | HOLMES CO FL MI<br>SEC 24-4N-9W: SW/4 SE/4, 40 ACS<br>SEC 25-4N-9W: ALL, 640 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | HOLMES | HOLMES CO FL MI<br>SEC 21 S/2 OF NE/4; N/2 OF SE/4;<br>SEC 23 SW/4; S/2 OF NW/4; NE/4 OF SE/4;<br>SEC 24 NW/4 OF NW/4; SE/4 OF SW/4,<br>SEC 13 W/2 SW/4 TWP. 4-N RNG. 9-W | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | HOLMES | HOLMES CO FL MI<br>SEC 31-4N-9W: E/2 OF W/2; SW/4 OF NW/4;<br>SEC 36-4N-9W: E/2OF E/2 SW/4 OF NE/4; SE/4 OF NW/4;<br>SW/4 AND W/2 OF SE/4, | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | HOLMES | HOLMES CO FL MI<br>SEC 27 ALL EXCEPT NE/4 NW/4, 600 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | HOLMES | HOLMES CO FL MI<br>SEC 11-4N-9W: NW/4 NW/4; SE/4 NW/4; S/2 NE/4; E/2<br>SW/4; SE/4,<br>27 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | HOLMES | HOLMES CO FL MI<br>SEC 26-5N-9W: S/2, 320 ACS<br>SEC 35-5N-9W: N/2, 320 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | HOLMES | HOLMES CO FL MI<br>SEC 34-7N-15W: SW/4 SE/4 & 2 ACS IN NE/C SE/4 SW/4,<br>E/2 SE/4,<br>122 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|---|---|---|---|---|
| FLORIDA | HOLMES | HOLMES CO FL MI<br>40 ACS BEING NW/4 SW/4 16-5N-16W | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | HOLMES | HOLMES CO FL MI<br>SEC 16-5N-16W: NW/4 SW/4, NW/4 SE/4 L&E 1 AC IN<br>NW/C & 1 AC W<br>OF CARYVILLE & GENEVA RDS, 41 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | HOLMES | HOLMES CO FL MI<br>SEC 28-7N-15W: N/2 SW/4, NW/4 SE/4, 120 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | HOLMES | HOLMES CO FL MI<br>SEC 32-7N-15W: E/2 NW/4, SW/4 NE/4 ON THE<br>E/SIDE NW/4 NW/4,<br>12-1/2 ACS ON THE E/SIDE<br>SW/4 NW/4, SE/4 NE/4 L & E 7 ACS OFF S/SIDE<br>SE/4 NE/4, 175 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | HOLMES | HOLMES CO FL MI<br>SEC 32-7N-17W: NW/C NW/4, 5 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | HOLMES | HOLMES CO FL MI<br>SEC 6-6N-17W: SE/4 SE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | HOLMES | HOLMES CO FL MI SEC 35-7N-15W: NE/4 NW/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | HOLMES | HOLMES CO FL MI<br>SEC 2-5N-16W: E/2 NW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | HOLMES | HOLMES CO FL MI<br>SEC 27-5N-17W: 110 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | JACKSON | JACKSON CO FL MI<br>SEC 4-2N-10W: S/2 NW/4 & NW/4 SW/4, 120 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | JACKSON | JACKSON CO FL MI<br>SEC 31-3N-10W: N/2, 320 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| FLORIDA | JACKSON | JACKSON CO FL MI<br>SEC 11,12,14-4N-10W: BEGIN ON THE E. ROW LINE OF THE MARIANNA<br>AIRBASE RAILROAD AT IT'S POINT OF INTERSECTION WITH STATE RD. NO. 1 (US90) THENCE SOUTHERLY ALONG SAID RIGHT OF WAY LINE TO THE ROW OF THELAND N RAILROAD; THENCE IN A SOUTHEASTERLY DIRECTION ALONG SAID ROW TO SPRING CREEK; THENCE NORTHEASTERLY ALONG SAID CREEK TO THE EASTERN SECTION LINE OF SEC 14; THENCE NORTH ALONG<br>SAID SEC LINE TO THE NE CORNER OF SAID SEC; THENCEEASTALONG SECTION LINE BETWEENSEC 12 AND 13 TO THE ROW OF STATE ROAD NO. 1 TO POB, 275 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | JACKSON | JACKSON CO FL MI<br> SEC 33-5N-9W: E/2, 320 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | JACKSON | JACKSON CO FL MI<br> SEC 26-3N-10W: W/2 NE/4 & E/2 NW/4 LESS E/2 NW/4 NE/4, 140 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | JACKSON | JACKSON CO FL MI<br> SEC 32-3N-10W: N/2  LESS 10 ACS IN THE NE/C NE/4 NE/4, 311.88ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | JACKSON | JACKSON CO FL MI<br> SEC 7-4N-8W: ALL EXCEPT SW/4 SW/4, 600 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|---|---|---|---|---|
| FLORIDA | JACKSON | JACKSON CO FL MI<br>SEC 36-4N-9W: SW/4 NE/4; SE/4 NW/4; SW/4; W/2 SE/4, 480 ACS,<br>SEC 30-4N-8W: S/2 NE/4; 6 ACRES IN SE/CORNER SE/4 SW/4;<br>LOTS 1 & 2 OF BLK CYPRESS; LOTS 4 & 22 OF BLK G; LOTS 1 &<br>2 OF BLK 1; LOT 6 OFBLK J; BLK K LESS LOTS 1,2,3 & LOT SOLD<br>TO CARY HAMILTON; LOT 2 OF BLK M; LOTS1,2,7, & 8 OF BLK O;<br>LOTS 1,2,4,5,8,14, AND 15 OF BLK P; LOTS 1,2,15,16,18,19, & 20<br>OF BLK R; BLK S; LOTS 3,4,5,6,7, & 8 OF BLK T LOTS 1,2,3, & 6 OF BLK J | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | JACKSON | JACKSON CO FL MI<br>SEC 7-4N-8W L&E SW/4 SW/4,<br>SEC 30-4N-8W: NW/4 L&E 9 ACS INSE/CE/2, E/2 W/2;<br>SEC 31-4N-8W: SW/4 NW/4, 40 ACS<br>SEC 25-4N-9W: ALL L&E NE/4<br>NW/4, 440 ACS<br>SEC 36-4N-9W: E/2 E/2, 160 ACS<br>SEC 21-4N-9W: S/2 NE/4, N/2 SE/4, 160 ACS<br>SEC 23-4N-9W: SW/4, S/2 NW/4, NE/4 SE/4,<br>SEC 24-4N-9W: NW/4 NW/4, SE/4 SW/4, SW/4 SE/4, 120 ACS<br>SEC13-4N-9W: W/2 SW/4, 80 ACS<br>SEC 11-4N-9W:<br>NW/4 NW/4, SE/4 NW/4, S/2 NE/4, E/2 SW/4, SE/4, | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | JACKSON | JACKSON CO FL MI<br>SEC 31-3N-10W: N/2, 320 ACS<br>SEC 32-3N-10W: N/2 L&E 10 ACS IN NE/C NE/4 NE/4, 311.88 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | JACKSON | JACKSON CO FL MI<br>SEC 26-5N-9W: S/2, 320 ACS<br>SEC 35-5N-9W: N/2, 320 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | JACKSON | JACKSON CO FL MI<br>SEC 26-3N-10W: W/2 NE/4, E/2 NW/4 L&E E/2 NW/4 NE/4, 140 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| FLORIDA | JACKSON | JACKSON CO FL MI<br>SEC 4-2N-10W: S/2 NW/4 & NW/4 SW/4, 120 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | JACKSON | JACKSON CO FL MI<br>SECS 11, 12, 14-4N-10W: 275 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | JACKSON | JACKSON CO FL MI<br>SEC 33-5N-9W: E/2, 320 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | JACKSON | JACKSON CO FL MI<br>SEC 4N-8W & 4N-9W: 231.94 ACS SCATTERED | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | OKALOOSA | OKALOOSA CO FL MI<br>SEC 28-5N-23W: E/2 NW/4 SW/4, SW/4 NW/4 SW/4 & SW/4 SW/4, 70ACS<br>SEC 29-5N-23W: E/2 L&E PT LYING W OF YELLOW RIVER, 120 ACS<br>SEC 34-5N-2<br>3W: NW/4 NW/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | OKALOOSA | OKALOOSA CO FL MI<br>SEC 26-5N-23W: SW/4 NE/4 & W/2 SE/4, 120 ACS<br>SEC 35-5N-23W: N/2 SW/4 NE/4 & SW/4 NW/4 NE/4, 30 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | OKALOOSA | OKALOOSA CO FL MI<br>SEC 26-5N-23W: E/2 SE/4, 80 ACS<br>SEC 35-5N-23W: NE/4 NE/4,40 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | OKALOOSA | OKALOOSA CO FL MI<br>SEC 14-5N-23W: SE/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | OKALOOSA | OKALOOSA CO FL MI<br>SEC 36-5N-22W: NE/4 NE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | OKALOOSA | OKALOOSA CO FL MI SEC 33-4N-23W: SE/4 NE/4 & SE/4 NW/4 & N/2 N/2 NE/4 SW/4 &W/2 SE/4 LESS S/15 AC OF SW/4 SE/4, 155 ACS SEC 34-4N-23W: NW/4 NW/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | OKALOOSA | OKALOOSA CO FL MI<br>SEC 14-4N-23W: NE/4 NE/4, 40 ACS<br>SEC 23-4N-23W: N/2 NW/4,<br>SW/4 NW/4, 120 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | OKALOOSA | OKALOOSA CO FL MI<br>SEC 19-4N-24W: S/2 NE/4, E/2 SE/4 NW/4, 780 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | OKALOOSA | OKALOOSA CO FL MI<br>SEC 11-5N-24W: SE/4 SE/4, 40 ACS<br>SEC 14-5N-24W: NE/4 NE/4,40 ACS<br>SEC 12-5N-24W: S/2 SW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| FLORIDA | OKALOOSA | OKALOOSA CO FL MI<br>SEC 30-5N-23W: SW/4 EXCEPT THE W/18 AC SW/4 SW/4<br>& SW/4 NE/4 & S/2 NW/4 & NW/4 SE/4, 142 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | OKALOOSA | OKALOOSA CO FL MI<br>SEC 15-5N-23W: S/2 SW/4, 80 ACS<br>SEC 16-5N-23W: SW/4 SW/4,<br>40 ACS<br>SEC 21-5N-23W: W/2 SE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | OKALOOSA | OKALOOSA CO FL MI<br>SEC 19-4N-24W: SE/4 SE/4, EXCEPT 3 AC COMMENCING AT THE SW<br>CORNER OF SAID  QUARTER AND RUNNING THENCE<br>EAST 210  YDS  THENCE NORTH 70 YDS THENCE<br>WEST 210 YDS. THENCE SOUTH  70  YRDS TO THE<br>PLACE OF BEGINNING.<br>SEC 20-4N-24W: W/2 NE/4 SE/4, 20 ACS<br>SEC 21-4N-24W: SW/4 SW/4, S/2 NW/4 SW/4, A STRIP OF<br>LAND 48 FT WIDE OFF S SIDE  OF THE N/2 NW/4 SW/4<br>OF SEC 21,<br>SEC 19-4N-24W: E/2 SW/4 & SE/4, 240 ACS<br>SEC 29-4N-24W: SW/4, 160 ACS<br>SEC 29-4N-24W: W/2<br>NW/4, 80 ACS<br>SEC 30-4N-24W: E/2 NE/4, 80 ACS<br>ALSO 1 AC LOCATED IN THE NE CORNER OF THE NW/4<br>SW/4 OF SEC 19  COMMENCING  AT THE H.H. BOYETT<br>CORNER AND THE PUBLIC ROAD  RUNNING THENCE<br>115 FT.  SOUTH 228 FT WEST 257 FT.TO THE PUBLIC<br>ROAD<br>IN A NORTHEASTERLY DIRECTION   ALONG SAID<br>PUBLIC RD. TO  THE PLACE OF BEGINNING, | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| FLORIDA | OKALOOSA | OKALOOSA CO FL MI<br>SEC 19-4N-24W: SE/4 SE/4 L&E 3 ACS,<br>SEC 20-4N-24W: W/2 NE/4 SE/4,<br>SEC 21-4N-24W: SW/4 SW/4, S/2 NW/4 SW/4, A STRIP OF<br>LAND 48' WIDEACROSS<br>THE S/SIDE N/2 NW/4 SW/4,<br>SEC 19-4N-24W: S/2 NE/4, E/2 SE/4 NW/4, E/2 SW/4, SE/4,<br>SEC 20-4N-24W: SW/4, 160 ACS<br>SEC 29-4N-24W: W/2 NW/4, 80 ACS<br>SEC30-4N-24W: E/2 NE/4, 80 ACS<br>SEC 19-4N-24W: 1AC M/L IN NE/C NW/4 SW/4, | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | OKALOOSA | OKALOOSA CO FL MI<br>SEC 15-5N-23W: S/2 SW/4, 80 ACS<br>SEC 16-5N-23W: SW/4 SW/4,<br>40 ACS<br>SEC 21-5N-23W: W/2 SE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | OKALOOSA | OKALOOSA CO FL MI<br>SEC 28-5N-23W: E/2 NW/4 SW/4, SW/4 NW/4 SW/4, SW/4<br>SW/4, 70<br>ACS<br>SEC 29-5N-23W: E/2 L&E THAT PT LYING W OF<br>YELLOW RIVER, 120 ACS<br>SEC 34-5N-23W: NW/4 NW/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | OKALOOSA | OKALOOSA CO FL MI<br>SEC 14-4N-23W: NE/4 NE/4, 40 ACS<br>SEC 22-4N-23W: N/2 NW/4,<br>SW/4 NW/4, 120 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | OKALOOSA | OKALOOSA CO FL MI<br>SEC 20-5N-23W: SW/4 L&E THE W/18 ACS<br>OF SW/4 SW/4, SW/4 NE/4, S/2 NW/4,<br>NW/4 SE/4, 302 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | OKALOOSA | OKALOOSA CO FL MI<br>SEC 26-5N-23W: SW/4 NE/4, W/2 SE/4, 120 ACS<br>SEC 35-5N-23W: N/2 NW/4 NE/4, SW/4 NW/4 NE/4, 30 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | OKALOOSA | OKALOOSA CO FL MI<br>SEC 11-5N-24W: SE/4 SE/4, 40 ACS<br>SEC 14-5N-24W: NE/4 NE/4,40 ACS<br>SEC 12-5N-24W: S/2 SW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| FLORIDA | OKALOOSA | OKALOOSA CO FL MI<br>SEC 14-5N-23W: SE/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | OKALOOSA | OKALOOSA CO FL MI<br>SEC 26-5N-23W: E/2 SE/4, 80 ACS<br>SEC 35-5N-23W: NE/4 NE/4,<br>40 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | OKALOOSA | OKALOOSA CO FL MI SEC 36-5N-22W: NE/4 NE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | OKALOOSA | OKALOOSA CO FL MI<br>SEC 33-4N-23W: SE/4 NE/4, SE/4 NW/4,<br>N/2 N/2 NE/4 SW/4,W/2SE/4 (L&E S/15<br>ACS OF SW/4 SE/4), 155 ACS<br>SEC 34-4N-23W: NW/4 NW/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 2-1N-29W: S/2 S/2 SW/4, DESCRIBED AS<br>BEG AT SW CORNER OF SEC. 2; N 10 CHAINS;<br>E 32 CHAINS S 10 CHAINS; W32 CHAINS, 32 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 4-2N-29W: W/2 SW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 28-2N-28W: S/2 NW/4 & NW/4, 120 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 5-2N-28W: S/2 S/2 SW/4, 334 ACS<br>SEC 9-2N-28W: N/2, S/2, SW/4 SE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 8-2N-28W: NW/4 & W/2 NE/4  LESS 5 ACS<br>SEC 9-2N-28W:<br>RUN S 350 YRDS. W 70 YRDS N<br>350 YRDS. E 70 RDS TO POINT OF BEGINNING<br>CONTAINING 275 AC & THAT PORTION OF SE/4<br>SW/4 OF SEC 9 T2N R28W LYING WEST OF STATE<br>HWY 188 CONTAINING 19 AC & SE/4 SW/4 LESS 2 AC<br>LYING E OF STATE HWY 188 OF SE<br>C 9 T2N R28W, 334 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 6-2N-28W: NE/4 NE/4 & E/2 SW/4 &<br>S/2 SE/4 EXCEPT 3 AC, 157 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 31-3N-28W: 5 ACS IN BEG SEC 31<br>& RUNNING N 2 1/2 CHAINS; THENCE<br>W 20; THENCE S 2 1/2 CHAINS; THENCE E 20 CHAINS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 32-3N-28W: SE/4 NE/4 & NE/4 SE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 4-4N-28W: W/2 NW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 5-4N-28W: S/2 SW/4 L&E 10 ACS<br>SW/4 SE/4 L&E 10 ACS OFF W/SIDE, 100 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 8-4N-28W: N/2 NE/4, 80 ACS<br>SEC 9-4N-28W:NW/4 NW/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 7-3N-28W: SE/4 NW/4 & S/2 SW/4 NW/4, 60 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 8-3N-28W: SE/4 NW/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 12-3N-28W: E/2 SE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 30-3N-28W: NW/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 10-4N-30W: SE/4 SE/4, 40 ACS<br>SEC 11-4N-30W: SW/4 SW/4, 40 ACS<br>SEC 15-4N-30W: NE/4 NW/4  & SW/4 SW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 27-4N-29W: NE/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 3-3N-29W: E/2 NE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 10-1N-29W: NE/4 NE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 11-3N-29W: E/2 SE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 12-3N-29W: E/2 SE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 12-3N-28W: E/2 SE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 12-3N-29W: E/2 SE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 10-1N-29W<br>40 ACS NE/4 NE/4 | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 11-3N-29W: E/2 SE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 30-3N-28W: NW/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 4-2N-29W: W/2 SW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 2-1N-29W: S/2 S/2 SW/4, 32 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 32-3N-28W: SE/4 NE/4; NE/4 SE/4, 80 ACS<br>SEC 28-2N-28W: S/2 NW/4 & NW/4 NW/4, 120 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI SEC 6-2N-28W: NE/4 NE/4, 40<br>ACS SEC 31-3N-28W: 5 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 6-2N-28W: E/2 SW/4 & S/2 SE/4<br>L&E 3 ACS OUT OF SE/C,157 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 5-4N-28W: SW/4 SE/4 L&E 10 ACS OFF W/SIDE, 30<br>ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 5-4N-28W: S/2 SW/4 L&E E 10 ACS, 120 ACS<br>SEC 8-4N-28W: NW/4 NW/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 5-2N-28W: S/2 S/2 SW/4, NW/4; W/2 NE/4; NE/4 NE/4<br>L&E 5 ACS DESCRIBED AS BEG AT NE/C OF 8-2N-28W,<br>315 ACS<br>SEC 9-2N-28W: SE/4 SW/4,19 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 5-2N-28W: N/2 S/2 SW/4; SW/4 SE/4, 80 ACS<br>SEC 9-2N-28W: SE/4 SW/4 L&E 2 ACS, 38 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 10-4N-30W: SE/4 SE/4, 40 ACS<br>SEC 11-4N-30W: SW/4 SW/4, 40 ACS<br>SEC 15-4N-30W: NE/4 NW/4, SW/4 NW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 3-3N-29W: E/2 NE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | SANTA ROSA | SANTA ROSA CO FL MI<br>SEC 27-4N-29W: NE/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WALTON | WALTON CO FL MI<br>SEC 12-5N-19W: SW/4 NE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WALTON | WALTON CO FL MI<br>SEC 32-5N-21W: NE/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WALTON | WALTON CO FL MI<br>SEC 2-5N-19W: NW/4 NW/4 LESS 140 YRDS (4 AC)<br>SQUARE NE/C OF TR, 39.971074 ACS<br>SEC 3-5N-19W: NE/4 NE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WALTON | WALTON CO FL MI<br>SEC 22-5N-21W: SE/4 SW/4<br>SEC 21-5N-21W: SE/4 SE/4<br>SEC 22-5N-21W: SW/4 SW/4<br>SEC 28-5N-21W: NE/4 NE/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WALTON | WALTON CO FL MI<br>SEC 31-5N-21W: NW/4 NW/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WALTON | WALTON CO FL MI<br>SEC 12-2N-18W: SW/4 SE/4, E/2 SE/4 & SE/4 NE/4,<br>SEC 13-2N-18W: NW/4 NE/4, 200 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WALTON | WALTON CO FL MI<br>SEC 3-2N-18W: S/2 L&E PT OF NE/4 SE/4<br>EAST OF VALLEY CHURCH<br>ROAD, 300 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WALTON | WALTON CO FL MI<br>SEC 35-3N-17W: LOT 6, 69 ACS<br>SEC 19-3N-17W: S3/4 SE/4 SE/4,<br>21 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WALTON | WALTON CO FL MI<br>SEC 28-2N-18W: W/2 NW/4; SE/4 NW/4 & N/2 SW/4, 360<br>ACS<br>SEC 29-2N-18W: E/2 NE/4, 280 ACS<br>SEC 28-2N-18-W: N/2 SE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WALTON | WALTON CO FL MI<br>SEC 33-2N-18W: NE/4 NE/4; SW/4 NE/4; NW/4 SE/4; 120<br>ACS, 1/6 MI | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| FLORIDA | WALTON | WALTON CO FL MI<br>SEC 32-2N-18W: S/2 SW/4 & SW/4 SE/4, 120 ACS<br>SEC 2-2N-18W: NE/4 NE/4, 40 ACS<br>SEC 1-1N-18W: NW/4 NW/4 & NW/4 NE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WALTON | WALTON CO FL MI<br>SEC 23-2N-18W: NE/4 SE/4 & SE/4 NE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WALTON | WALTON CO FL MI<br>SEC 24-2N-18W: NE/4 NE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WALTON | WALTON CO FL MI<br>SEC 36-2N-18W: S/2 SW/4; SW/4 SE/4;<br>SEC 2-1N-18W: NE/4 NE/4;<br>SEC 1-1N-18W: NW/4 NW/4; NW/4 NE/4; 240 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WALTON | WALTON CO FL MI<br>SEC 28-2N-18W: W/2 NW/4; SE/4 NW/4; N/2 SW/4; N/2 SE/4;<br>SEC<br>29-2N-18W: E/2 NE/4; 360 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WALTON | WALTON CO FL MI<br>SEC 33-2N-18W: NE/4 NE/4; SW/4 NE/4; NW/4 SE/4; 120 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WALTON | WALTON CO FL MI<br>SEC 23-2N-18W: NE/4 SE/4 & SE/4 NE/4, 80 ACS, 1/4 MI | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WALTON | WALTON CO FL MI<br>SEC 12-2N-18W: SW/4 SE/4, E/2 SE/4 & SE/4 NE/4;<br>SEC 13-2N-18W: NW/4 NE/4, 200 ACS 1/8 MI | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WALTON | WALTON CO FL MI<br>SEC 12-5N-19W: SW/4 NE/4, 40 ACS<br>SEC 25-3N-17W:LOT 6, 69 ACS<br>SEC 19-3N-17W: S3/4 SE/4 SE/4, 21 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WALTON | WALTON CO FL MI SEC 2-5N-19W: NW/4 NW/4 L&E 140 SQ YDS IN NE/C 39.971074 ACS, 1/4 MI SEC 3-5N-19W: NE/4 NE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WALTON | WALTON CO FL MI<br>SEC 22-5N-21W: SE/4 SW/4<br>SEC 21-5N-21W: SE/4 SE/4<br>SEC 22-5N-21W: SW/4 SW/4<br>SEC 28-5N-21W: NE/4 NE/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| FLORIDA | WALTON | WALTON CO FL MI<br>SEC 3-2N-18W: 320 ACS S/2 L&E THAT 20 ACS M/L OF NE/4 SE/4 LYING E  OF VALLEY CHURCH RD | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WALTON | WALTON CO FL MI<br>SEC 24-2N-18W: NE/4 NE/4, 40 ACS, 1/4 MI | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WALTON | WALTON CO FL MI<br>SEC 31-5N-21W: 40 AC NW/4 NW/4, 1/4 MI | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WASHINGTON | WASHINGTON CO FL MI<br>SEC 7-4N-13W: TRACT 1: SE/4 SE/4 OF SEC 7 & SW/4 NW/4 OF SEC 17 & W/2 SW/4 LESS NW/4 NW/4 SW/4 OF SEC 17 & S/2 NW/4 NW/4 SW/4 LESS 2 AC OFF EAST END OF SEC 17 & 2 1/2 AC DESCRIBED AS COMMENCING 110 YARDS EAST OF THE NW CORNER OF NW/4 SW/4 OF SEC 17, THENCE S 10 YARDS.THENCE E 10 YRDS THENCE N 110 YRDS TO THE BEGINNING & 2 1/2 AC IN NW CORNER OF NW/4 SW/4 OF SEC 17 BEING 110 YRDS SQUARE, 238 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WASHINGTON | WASHINGTON CO FL MI<br>SEC 20-2N-13W: SE/4 SW/4 LESS 4 ACS IN NW/C & N/2 SE/4 & SE/4, 156 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WASHINGTON | WASHINGTON CO FL MI<br>SEC 18-4N-12W: N/2 SE/4 & S/2 S/2 NE/4, 120 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WASHINGTON | WASHINGTON CO FL MI<br>SEC 4-2N-29W: W/2 SW/4, 80.63 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WASHINGTON | WASHINGTON CO FL MI<br>SEC 6-2N-16W: NE/4 SW/4 & NW/4 SE/4 LESS 14 AC OFF EAST SIDE, 66 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WASHINGTON | WASHINGTON CO FL MI<br>SEC 19-2N-14W: N/2 NW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WASHINGTON | WASHINGTON CO FL MI<br>SEC 13-4N-13W: E/2 SW/4 & W/2 SE/4 & SE/4 SE/4, 200 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WASHINGTON | WASHINGON CO FL MI<br>SEC 24-4N-19W: N/2 NE/ 4 & SW/4 NE/4 & NE/4 NW/4 & W/2 SE/4NE/4, 180 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| FLORIDA | WASHINGTON | WASHINGTON CO FL MI<br>SEC 13-4N-13W: E/2 SW/4; W/2 SE/4; SE/4 SE/4, 200 ACS;<br>N/2 NE/4; SW/4 NE/4; NE/4 NW/4; W/2 SE/4 NE/4, 180 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WASHINGTON | WASHINGTON CO FL MI<br>SEC 18-4N-12W: N/2 SE/4 & S/2 S/2 NE/4, 120 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WASHINGTON | WASHINGTON CO FL MI<br>SEC 7-4N-13W: SE/4 SE/4<br>SEC 17-4N-13W: SW/4 NW/4; NE/2 NW/4 SW/4; S/2 NW/4<br>SW/4; SW/4  SW/4; S/2 NW/4<br>NW/4 L&E 2ACS OFF E/END; 2-1/2<br>ACS DESCRIBED AS COMMENCING 110 YDS OFF NW/C<br>NW/4 SW/4, THENCE S 110 YDS, THENCE E 110 YDS,<br>THENCE N 110 YDS, THENCE W 110<br>YDS TO POB 2-1/2 ACS IN NW/C NW/4SW/4 BEING 110<br>YDS SQ SEC 17-4N-13W, 158 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WASHINGTON | WASHINGTON CO FL MI<br>SEC 22-5N-13W: S/2 NE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WASHINGTON | WASHINGTON CO FL MI<br>SEC 6-2N-16W: NE/4 SW/4; NW/4 SE/4 L&E 14 ACS OFF<br>E/SIDE,<br>66 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WASHINGTON | WASHINGTON CO FL MI<br>SEC 19-2N-14W: N/2 NW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WASHINGTON | WASHINGTON CO FL MI<br>SEC 20-2N-29W: SE/4 SW/4 L&E 4 ACS IN NW/C; SE/4<br>SE/4 SE/4, 41 ACS | MINERAL INTEREST | NON PRODUCING |
| FLORIDA | WASHINGTON | WASHINGTON CO FL MI<br>SEC 4-2N-29W: W/2 SW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| GEORGIA | BAKER | BAKER CO GA MI<br>LOTS 32,48,49,73,88,89,90,91,110,111,112,113<br>OUT OF MCRAINEY<br>PLANTATION SVY, 2833.5 ACS | MINERAL INTEREST | NON PRODUCING |
| GEORGIA | COFFEE | COFFEE CO GA MI<br>LOT 23,24,25,68 IN 5TH DISTRICT<br>LOT 1 IN 6TH DISTRICT<br>LOT<br>15 IN 4TH DISTRICT<br>LOT 47,92,139 IN 1ST DISTRICT, 1729 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| GEORGIA | DECATUR | DECATUR CO GA MI<br>LOTS 142 & 143 IN 16TH DISTRICT, 323 ACS | MINERAL INTEREST | NON PRODUCING |
| GEORGIA | DECATUR | DECATUR CO GA MI 250 ACS LOT 223, 16TH DISTRICT | MINERAL INTEREST | NON PRODUCING |
| GEORGIA | DECATUR | DECATUR CO GA MI<br>LOT 179, 16TH DISTRICT, 125 ACS | MINERAL INTEREST | NON PRODUCING |
| GEORGIA | EARLY | EARLY CO GA MI<br>LOT 188 W. OF SPRING CREEK, 380 ACS<br>PT LOT 175, 44 ACS | MINERAL INTEREST | NON PRODUCING |
| GEORGIA | EARLY | EARLY CO GA MI<br>LOTS 186-187 LYING W/SPRING CREEK, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| GEORGIA | MILLER | MILLER CO GA MI<br>LOT 265, ALL, 12TH DISTRICT<br>LOT 290, SE/PT, 12TH DISTRICT<br>LOT 312, SE/C, 12TH DISTRICT<br>LOT 312, SW/C, 12TH DISTRICT<br>LOT 311, NE/C, 12TH DISTRICT | MINERAL INTEREST | NON PRODUCING |
| GEORGIA | MILLER | MILLER CO GA MI<br>LOT 311, S&E 75 AC 12TH DISTRICT<br>LOT 312, 12TH DISTRICT | MINERAL INTEREST | NON PRODUCING |
| GEORGIA | MILLER | MILLER CO GA MI<br>LOT 313, S/E CORNER, 12TH DISTRICT | MINERAL INTEREST | NON PRODUCING |
| GEORGIA | MILLER | MILLER CO GA MI<br>LOT 241, PT, 13TH DISTRICT<br>LOT 280, PT, 13TH DISTRICT | MINERAL INTEREST | NON PRODUCING |
| GEORGIA | MILLER | MILLER CO GA MI<br>LOT 313, SW/PT, 12TH DISTRICT | MINERAL INTEREST | NON PRODUCING |
| GEORGIA | MITCHELL | MITCHELL CO GA MI<br>LOT 154 10 DISTRICT, S/2 LESS 10 ACS<br>LOT 167 10TH DISTRICT, 10 ACS | MINERAL INTEREST | NON PRODUCING |
| GEORGIA | MITCHELL | MITCHELL CO GA MI<br>LOT 195, 10TH DISTRICT, W/SIDE, 106.27 ACS | MINERAL INTEREST | NON PRODUCING |
| GEORGIA | MITCHELL | MITCHELL CO GA MI<br>LOT 194 10TH DISTRICT, W/SIDE 110.18 ACS | MINERAL INTEREST | NON PRODUCING |
| GEORGIA | WARE | WARE CO GA MI<br>LOTS 401,308,354,382,336,349,403, 5TH DISTRICT,<br>3,101.33 ACS | MINERAL INTEREST | NON PRODUCING |
| GEORGIA | WARE | WARE CO GA MI<br>LOTS 47,92,91 IN 7TH DISTRICT, 754 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| GEORGIA | WARE | WARE CO GA MI<br>PT OF LOT 94, 7TH DISTRICT, 411 ACS | MINERAL INTEREST | NON PRODUCING |
| GEORGIA | WARE | WARE CO GA MI<br>PT OF LOT 137, 7TH DISTRICT, 450 ACS | MINERAL INTEREST | NON PRODUCING |
| ILLINOIS | FRANKLIN | FRANKLIN CO IL MI<br>SEC 19-5S-3E: W/19 ACS NE/4 SW/4 & E/19 ACS NW/4<br>SW/4, 38 ACS | MINERAL INTEREST | NON PRODUCING |
| ILLINOIS | FRANKLIN | FRANKLIN CO IL MI<br>SEC 19-5S-3E: NW/4 SW/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | CLARE | CLARE CO MI MI<br>SEC 12-20N-6W: NW/4 NW/4, 40 ACS<br>.0011000 RI, TR PART .0980860<br>CRANBERRY LAKE RICHFIELD TR7 REG # 19887 | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | CLARE | CLARE CO MI MI<br>SEC 12-20N-6W: W/2 NE/4, 80 ACS<br>.0014636 RI, REG # 19887<br>CRANBERRY LAKE RICHFIELD TR11 REG# 19887 | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | CLARE | CLARE CO MI MI<br>SEC 31-20N-6W: SE NW, WINTERFIELD<br>TOWNSHIP,.00791016 RI, CALVERT 2-31 | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | CLARE | CLARE CO MI MI<br>SEC 30-20N-6W: SW SW<br>WINTERFIELD TOWNSHIP<br>JACKSON 10-30, .00322534 RI | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | CLARE | CLARE CO MI MI<br>SEC 31-20N-6W: NE NW<br>WINTERFIELD TOWNSHIP, .00527333 RI<br>BENCHLEY-HOTCHKISS 1-31 | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | CLARE | CLARE CO MI MI<br>SEC 36-22N-6W: W/2 SW/4<br>AETNA TOWNSHIP  .00585937 RI<br>& .00292966 ORI<br>CAVANAGH 1-36 & 2-36 | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | CLARE | CLARE CO MI MI<br>SEC 30-20N-6W: S/2, 320 ACS (.03515625 MI);<br>SEC 30-20N-6W: SE/4, 160 ACS (.01757813 MI);<br>SEC 5-19N-3W: N/2, 320 ACS (.01757813 MI);<br>SEC 31-20N-3W: SE/4, 160 ACS (.03515625 MI)<br>H.H.COFFIELD 19.6875 NMA | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|---|---|---|---|---|
| MICHIGAN | CLARE | CLARE CO MI MI<br>SEC 5-19N-3W: W/2 NE/4, NE/4 NW/4, 120 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | CLARE | CLARE CO MI MI<br>SEC 31-20N-3W: E/2 SE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | CLARE | CLARE CO MI MI<br>SEC 30-20N-6W: W/2 E/2 SW/4, 109 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | CLARE | CLARE CO MI MI<br>SEC 3-20N-14W: SW/4 SE/4, 40 ACS<br>SEC 11-20N-14W: N/2 NW/4 & S/2 NE/4 & NW/4 NE/4 &<br>N/2 NE/4, 220 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | CLARE | CLARE CO MI MI SEC 10-18N-12W: SW/4 SE/4, 40 ACS<br>SEC 14-18N-12W: S/2 NE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | CLARE | CLARE CO MI MI<br>SEC 12 -18N-12W: ALL, 600 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | CLARE | CLARE CO MI MI<br>SEC 2-20N-14-W: S/2 SE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | CLARE | CLARE CO MI MI<br>SEC 11-20N-6W: NW/4 NW/4 NW/4<br>WINTERFIELD TOWNSHIP<br>BLANEY 1& 2-12 .00110 RI | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | LAKE | LAKE CO MI MI<br>SEC 10-18N-12W: SE/4, 160 ACS (.0703125 MI)<br>SEC 3-20N-14W: SE/4, 160 ACS (.0922375)<br>SEC 2-20N-14W: SE/4, 160 ACS (.0158125 MI) | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MECOSTA | MECOSTA CO MI MI<br>SEC 9-16N-7W: NW/4, 160 ACS (.01171875 MI);<br>SEC 28-14N-8W:<br>W/2, 320 ACS (.01757813 MI) | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MECOSTA | MECOSTA CO MI MI<br>SEC 8-16N-7W: S/2 NE/4, 80 ACS<br>SEC 9-16N-7W: NW/4 NW/4, 40<br>ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MECOSTA | MECOSTA CO MI MI<br>SEC 28-14N-8W: W/2, 320 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MECOSTA | MISSAUKEE CO MI MI<br>SEC 3-21N-6W: NW/4 NE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MECOSTA | MISSAUKEE CO MI MI<br>SEC 19-21N-6W: NW/4 SW/4, 42.12 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|------------------|---------------|--------|
| MICHIGAN | MECOSTA | MISSAUKEE CO MI MI<br>SEC 26-22N-6W: S/2 SW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MECOSTA | MISSAUKEE CO MI MI<br>SEC 13-21N-7W: N/2 SE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MECOSTA | MISSAUKEE CO MI MI<br>SEC 13-21-7W: E/2 NW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MECOSTA | MECOSTA CO MI MI<br>SEC 11-2N-7W: W/2 NW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MECOSTA | MISSAUKEE CO MI MI<br>SEC 25-21N-6W: SW/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MECOSTA | MISSAUKEE CO MI MI<br>SEC 35-22N-6W: NW/4 SW/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MIDLAND | MIDLAND CO MI MI<br>SEC 28-15N-2E: SW/4 NE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MIDLAND | MIDLAND CO MI MI<br>SEC 20-15N-2E: S/2, 320 ACS (.026236875 MI)<br>SEC 28-15N-2E:<br>NE/4, 160 ACS (.0527375 MI) | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MIDLAND | MIDLAND CO MI MI<br>SEC 12-16N-2E: E/2 SE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MIDLAND | MIDLAND CO MI MI<br>SEC 20-15N-2E: N/2 SE/4 S/2 NE/4 SW/4, 100 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MISSAUKEE | MISSAUKEE CO MI MI<br>SEC 26-22N-6W: S/2 SW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MISSAUKEE | MISSAUKEE CO MI MI<br>SEC 35-22N-6W: NE/4 NW/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|---|---|---|---|---|
| MICHIGAN | MISSAUKEE | MISSAUKEE CO MI MI<br>SEC 34-22N-6W: NE/4, 160 ACS<br>SEC 35-22N-6W: SW/4, 160 ACS<br>SEC 26-22N-6W: NE/4 & SE/4, 320 ACS<br>SEC 34-22N-6W: SE/4 & NE/4, 320 ACS<br>SEC 25-21N-7W: SW/4, 160 ACS<br>SEC 11-21N-7W: NW/4, 160 ACS<br>SEC 13-21N-7W: NW/4& SE/4, 320 ACS<br>SEC 24-21N-7W: NE/4, 160 ACS<br>SEC 19-21N-6W: SW/4, 160 ACS<br><br>SEC 1-21N-6W: NW/4, 160 ACS<br>SEC 6-21N-5W: SW/4, 160 ACS<br>SEC 3-21N-6W: NE/4,<br>160 ACS<br>H H COFFIELD ESTATE 109.312 NMA | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MISSAUKEE | MISSAUKEE CO MI MI<br>SEC 36-22N-6W: W/2 SW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MISSAUKEE | MISSAUKEE CO MI MI<br>SEC 24-21N-7W: N/2 NE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MISSAUKEE | MIDLAND CO MI MI<br>SEC 28-15N-2E: E/2 W/2 NE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MISSAUKEE | MISSAUKEE CO MI MI<br>SEC 34-22N-6W: NE/4 SE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MISSAUKEE | MISSAUKEE CO MI MI<br>SEC 34-22N-6W: SW/4 SE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MISSAUKEE | MISSAUKEE CO MI MI<br>SEC 6-21N-5W: E/2 SW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MISSAUKEE | MISSAUKEE CO MI MI<br>SEC 34-22N-6W: SE/4 NE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MISSAUKEE | MISSAUKEE CO MI MI SEC 26-22N-6W: SE/4 NE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MISSAUKEE | MISSAUKEE CO MI MI<br>SEC 26-22N-6W: E/2 SE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MISSAUKEE | MISSAUKEE CO MI MI<br>SEC 26-22N-6W: SW/4 SE/4, 40 ACS<br>SEC 36-22N-6W: NW/4, 160ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | MONROE | MISSAUKEE CO MI MI<br>SEC 1-21N-6W: NE/4 NW/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| MICHIGAN | NEWAYGO | NEWAYGO CO MI MI<br>SEC 28-16N-11W: NE/4, 160 ACS (.02636719 MI)<br>SEC 29-16N-11W: NE/4, 160 ACS (.02636719 MI)<br>SEC 21-15N-11W: SE/4 & NE/4, 320 ACS (.03515626MI)<br>SEC 22-15N-11W: SW/4, 160 ACS (.01757813 MI)<br>H H COFFIELD ESTATE 16.875<br>NMA | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | NEWAYGO | NEWAYGO CO MI MI<br>SEC 22-15N-11W: S/2 SW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | NEWAYGO | NEWAYGO CO MI MI<br>SEC 28-16N-11W: NE/4 NE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | NEWAYGO | NEWAYGO CO MI MI<br>SEC 29-16N-11W: NE/4 NE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | NEWAYGO | NEWAYGO CO MI MI<br>SEC 21-15N-11W: S/2 S/2 NE/4 & N/2 S/2 NE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | NEWAYGO | OSCEOLA CO MI MI<br>SEC 19-18N-10W: E/2 NW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | NEWAYGO | OSCEOLA CO MI MI<br>SEC 20-18N-10W: W/2 NW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | NEWAYGO | OSCEOLA CO MI MI<br>SEC 18-18N-10W: W/2 SE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | NEWAYGO | OSCEOLA CO MI MI<br>SEC 27-18N-8W: N/2 NE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | NEWAYGO | OSCEOLA CO MI MI<br>SEC 22-18N-8W: S/2 NW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | NEWAYGO | OSCEOLA CO MI MI<br>SEC 36-19N-10W: NW/4 SW/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | NEWAYGO | OSCEOLA CO MI MI<br>SEC 28-19N-10W: SW/4 SW/4, 80 ACS<br>SEC 29-19N-10W: SE/4 SE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | NEWAYGO | OSCEOLA CO MI MI<br>SEC 26-19N-10W: E/2 NE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | NEWAYGO | OSCEOLA CO MI MI<br>SEC 25-19N-10W: W/2 SE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | NEWAYGO | NEWAYGO CO MI MI<br>SEC 21-15N-11W: S/2 S/2 NE/4 & N/2 S/2 NE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|---|---|---|---|---|
| MICHIGAN | NEWAYGO | NEWAYGO CO MI MI<br>SEC 16-15N-11W: N/2 & THAT PT OF THE<br>N/2 SW/4 & N/2 SE/4 LYING NORTH OF<br>BIG  RAPIDS AND WHITEHALL RD EXCEPT<br>A PARCEL DESCRIBED AS COMMENCING<br>AT E/4 POST, THENCE N 27 2/5 RODS W<br>25 RODS S 6 2/5 RODS W 7 1/2 RODS<br>S 21<br>RODS MORE OR LESS TO CENTER OF SAID<br>RD E ALONG CENTER OF SAME 32 1/2 RODS<br>MORE OR LESS TO POB, 400 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | OSCEOLA | OSCEOLA CO MI MI<br>SEC 21-22-18N-8W: PT<br>SEC 1-17N-8W: PT<br>SEC 27-18N-8W: PT<br>SECS 18,7,21,1,16-18N-10W: PTS<br>SECS 5,6,28-18N-9W: PTS<br>SECS 25,26,29,36-19N<br>-10W: PTS<br>H H COFFIELD ESTATE 92.0986 NMA | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | OSCEOLA | OSCEOLA CO MI MI<br>SEC 5-18N-9W: SE/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | OSCEOLA | OSCEOLA CO MI MI<br>SEC 6-18N-9W: NORTH FRACTIONAL HALF SW/4<br>EXCEPT 20 RODS OFF<br>THE N SIDE | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | OSCEOLA | OSCEOLA CO MI MI<br>SEC 28-18N-9W: E/2 SE/4, S/2 NE/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | OSCEOLA | OSCEOLA CO MI MI<br>SEC 28-18N-9W: NE/4 NE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | OSCEOLA | OSCEOLA CO MI MI<br>SEC 7-18N-10W: SE/4 SE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | OSCEOLA | OSCEOLA CO MI MI<br>SEC 7-18N-10-W: SE/4 SE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | OSCEOLA | OSCEOLA CO MI MI<br>SEC 16-18W-10W: S/2 SW/4, EXCEPT THE ROW OF<br>GRAND RAPIDS INDIANA RR, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | OSCEOLA | OSCEOLA CO MI MI<br>SEC 21-18N-10W: NW/4 SW/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|---|---|---|---|---|
| MICHIGAN | OSCEOLA | OSCEOLA CO MI MI SEC 22-18N-8W: NW/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | OSCEOLA | MISSAUKEE CO MI MI<br>SEC 35-22N-6W: N/2, 320 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | OSCEOLA | OSCEOLA CO MI MI<br>SEC 27-18N-8W: PT, 260 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | OSCEOLA | OSCEOLA CO MI MI<br>SEC 19-18N-10W: E/2 NW/4 SE/4, 20 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | OSCEOLA | OSCEOLA CO MI MI<br>SEC 17-18N-10W: SW/4 SW/4 & W/2 SE/4, 120 ACS<br>0.0007734 REED CITY UNIT TRACT 1 | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | OSCEOLA | OSCEOLA CO MI MI<br>SEC 21-18N-8W: NE/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | OSCEOLA | OSCEOLA CO MI MI<br>SEC 19-18N-10W: NW/4 NE/4, 40 ACS<br>SEC 17-18N-10W: SW/4 SW/4, W/2 SE/4 SW/4, 60 ACS | MINERAL INTEREST | NON PRODUCING |
| MICHIGAN | OSCEOLA | OSCEOLA CO MI MI<br>SEC 28-19N-10W: NW/4 SW/4, 40 ACS<br>SEC 29-19N-10W: N/2 SE/4,80 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | CHICKASAW | CHICKSAW CO MS MI<br>SEC 1-13S-5E: NE/4 SE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | CHICKASAW | CHICKSAW CO MS MI<br>SEC 12-13S-5E: SE/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | CHICKASAW | CHICKSAW CO MS MI<br>SEC 32-13S-5E: NE/4, SW/4, SOUTH SIDE OF NW/4 BEING<br>20 AC, 340 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | CHICKASAW | CHICKSAW CO MS MI<br>SEC 7-13S-5E: SW/4 & 4 AC ON THE SOUTH SIDE OF<br>NW/4, 164 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | CHICKASAW | CHICKSAW CO MS MI<br>SEC 7-13S-5E: S/2 NW/4 & 2 ACS IN SW/C NE/4, 82 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | CHICKASAW | CHICKSAW CO MS MI<br>SEC 30-12N-5E: NW/4 & 60 ACS ON NORTH SIDE OF<br>SW/4, 220 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | CHICKASAW | CHICKSAW CO MS MI<br>SEC 12-13S-4E: SE/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | CHICKASAW | CHICKSAW CO MS MI<br>SEC 33-12N-5E: W/2 NW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| MISSISSIPPI | COPIAH | COPIAH CO MS MI<br>SEC 26-10N-9E: NW/4 NE/4, NE/4 NE/4 NW/4, W/2 NE/4 NW/4, 70 ACS<br>SEC 22-10N-9E: NE/4 SE/4, 40 ACS<br>SEC 23-10N-9E: SW/4 NW/4, 30 ACS EAST SIDE NW/4 SW4, 70 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | FORREST | FORREST CO MS MI<br>SEC 25-1N-12W: SE/2 NW/4 & W/2 SE/4, 160 ACS<br>SEC 1-1S-12W:<br>SE/4 SW/4, SE/4 & NE/4 SE/4,<br>NE/4, SE/4 NW/4, N/2 SW/4 & NE/4 SE/4, 440 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | GREENE | GREENE CO MS MI<br>SEC 31-3N-5W:<br>SEC 36-3N-6W:<br>SEC 31-3N-5W:<br>NW/4 SW/4, SEC. 31-3N-5W NE/4, SEC 36-3N-6W. LYING EAST OF THE CHICKASAWHAY RIVER AND  ALL THAT PART OF NE/2  SE/4,  SEC 36-3N-6-W LYING E. OF SAME RIVER NW/4 NW/4, SEC 31-3N-5W & A STRIP ONE WIDE W/SIDE OF SW/4 NW/4 SEC 31-3N- 5W | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | JACKSON | JACKSON CO MS 1/3 MI<br>SEC 13-5S-5W: SW/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | JASPER | JASPER CO MS MI<br>SEC 13-4N-12E: SE/4 SW/4, 40 ACS<br>SEC 25-4N-12E: W/2 E/2 SE/4& SE/4 NE/4, 80 ACS<br>SEC 24-4N-12E: E/2 NW/4, 80 ACS<br>SEC 19-4N-13E: 31 ACS O<br>F SW/4 SW/4, 31 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | LAUDERDALE | LAUDERDALE CO MS MI<br>SEC 29-6N-14E: SW/4 SW/4 L&E 2 ACS NE/C, 38 ACS<br>SEC 30-6N-14E: SE/4, 160 ACS<br>SEC 31-6N-14E: W/2 NE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | NEWTON | NEWTON CO MS MI<br>SEC 22-5N-13E: E/2 SE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| MISSISSIPPI | NEWTON | NEWTON CO MS MI<br>SEC 2-6N-13E: SE/4 SW/4, 40 ACS<br>SEC 11-6N-13E:  NE/4 NW/4 &SE/4 NW/4<br>LESS 1 AC. IN SE/C & 10 AC ON SOUTH SIDE<br>OF  NW/4 NE/4 & SW/4 NE/<br>4 LESS 2 AC IN<br>SW/C & 22 AC ON NORTH SIDE OF SE/4 NE/4, 109 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | NEWTON | NEWTON CO MS MI<br>SEC 22-6N-12E: S/2 NE/4 & N/2 NW/4 & N/2 N/2 S/2 NW/4,<br>180 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | PERRY | PERRY CO MS MI<br>SEC 8-1S-11W: SE/4 SW/4, 40 ACS<br>SEC 6-1S-11W: SE/4 NE/4, SW/4SW/4, 80 ACS<br>SEC 5-1S-11W: NW/4 NW/4, 40 ACS<br>SEC 30-1S-11W: W/2 NW/4, NW/4<br>SW/4, NE/4 SE/4, SW/4 SE/4, 200 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | PERRY | PERRY CO MS MI SEC 17-1S-11W: NE/2 NE/4, NE/4 NW/4,<br>SW/4 NW/4 W/2 SW/4, SE/4SW/4, S/2, 680 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | PERRY | PERRY CO MS MI<br>SEC 19-1S-11W: NE/4 NE/4, SW/4 NE/4, S/2 NW/4, N/2<br>SW/4, SW/4 SW/4, W/2 SE/4, 360<br>SEC 18-1S-11W: N/2 NW/4, N/2 SE/4, SE/4 SE/4, 200 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | PERRY | PERRY CO MS MI<br>SEC 21-1S-11W: NE/4 NE/4, S/2 NE/4, NW/4, NW/4<br>NW/4, S/2 NW/4N/2 SW/4, N/2 SE/4, 160 ACS<br>SEC 20-1S-11W: N/2 NE/4, NE/4 NW/4, SW/4<br>SW/4,<br>E/2 SE/4, 480 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | PERRY | PERRY CO MS MI<br>SEC 13-1S-11W: SE/4 SE/4, 40 ACS<br>SEC 24-1S-11W: W/2 SE/4, 40<br>ACS<br>SEC 26-1S-11W: NE/4 NE/4, 40 ACS<br>SEC 23-1S-11W: S/2 NW/4, NW4 NW/4, SE/4SW/4, N/2<br>SW/4 & NW/4 SE/4, 400 ACS<br>SEC 14-1S-11W: SW/4 SW/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| MISSISSIPPI | PERRY | PERRY CO MS MI<br>SEC 22-1S-11W: E/2 NE/4, NW/4 NE/4, NE/4 NW/4, SW/4 NW/4, N/2 SW/4, N/2 SE/4,<br>SEC 15-1S-11W: NW/4 NW/4, S/2 SW/4, NE/4 SW/4, S/2 SE/4, NW/4 E/4, | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | RANKIN | RANKIN CO MS MI<br>SEC 27-4N-1E: N/2 SW/4 LESS 5 AC OFF EAST END & SW/4 NW/4 &<br>W/2 SE/4 NW/4, 135 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | RANKIN | RANKIN CO MS MI<br>SEC NE/4 NW/4 & 13 AC OFF EAST SIDE OF NW/4 NW/4, NW/2 SE/4 NW/4 & THAT<br>PT N/2 SW/4 NW/4 LYING E OF PUBLIC RD, 29 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | RANKIN | RANKIN CO MS MI<br>SEC 33-4N-1E: W/2 NW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | RANKIN | RANKIN CO MS MI<br>SEC 27-4N-1E: N/2 SW/4 LESS 5 AC OFF EAST END & SW/4 NW/4 &<br>W/2 SE/4 NW/4, 135 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | RANKIN | RANKIN CO MS MI<br>SEC NE/4 NW/4 & 13 AC OFF EAST SIDE OF NW/4 NW/4, NW/2 SE/4 NW/4 & PT<br>N/2 SW/4  NW/4 LYING EAST OF PUBLIC RD, 29 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | RANKIN | RANKIN CO MS MI<br>SEC 29-4N-1E: W/2 NE/4, E/2 SE/4 NW/4, 100 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | RANKIN | RANKIN CO MS MI<br>SEC 33-4N-1E: W/2 NW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | RANKIN | RANKIN CO MS MI<br>SEC 29-4N-1E: W/2 NE/4, E/2 SE/4 NW/4, 100 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | TALLAHATCHIE | TALLAHATCHIE CO MS MI<br>SEC 7-24N-1W: PT SE/4 NE/4, 32 ACS<br>SEC 8-24N-1W: NW/4SW/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | TALLAHATCHIE | TALLAHATCHIE CO MS MI<br>NE/2 OF SEC 3 SOUTH OF MUDDY BAYOU<br>& E/2 W/2 OF SEC 3<br>NORTH OF MUDDY BAYOU, 245 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|---|---|---|---|---|
| MISSISSIPPI | TALLAHATCHIE | TALLAHATCHIE CO MS MI<br>SEC 24-T25-R2W: NE/4 NE/4, ALL THAT PART<br>OF NW/4 LYINGCENTER OF LONG BRAKE;<br>N/2 SW/4 NE/4 THAT PART OF SE/4 NE/4, 245 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | WINSTON | WINSTON CO MS 3/8 MI<br>SEC 33-13 N-10E: E/2 NW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | WINSTON | WINSTON CO MS 3/8 MI<br>SEC 32-13N-10E: SE/4 SE/4, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | WINSTON | WINSTON CO MS 3/8 MI<br>SEC 29-13N-10E: W/2 SE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | WINSTON | WINSTON CO MS 1/4 MI<br>SEC 29-13N-10E: 42 ACS NE/4 NE/4 SW/4 & 12 ACS IN<br>SE/C SE/4 NW/4 | MINERAL INTEREST | NON PRODUCING |
| MISSISSIPPI | WINSTON | NEWTON CO MS MI<br>SEC 13-6N-13E: W/2 NW/4 LESS 10 AC OUT OF SE/C, 70<br>ACS<br>SEC 14-6N-13E: E/2 NE/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| NEBRASKA | CUSTER | CUSTER CO NEBRASKA 1/2 MI<br>T20N-R17W OF THE 6TH P.M. IN SECTION 34 (E/2SE/4);<br>80 ACS<br>T19N,R17W OF THE 9TH P.M. IN SECTION 3 (SW/4) 160<br>ACS & SECTION 4 (E/2) 320 ACS<br>PER MINERAL DEED DTD 04/22/1953 RECORDED 5/18/53,<br>IN BOOK 130, PG 643 | MINERAL INTEREST | NON PRODUCING |
| NEBRASKA | GARFIELD | GARFIELD CO NEBRASKA 1/2 MI T22N-R15W OF THE<br>6TH P.M.SECTION 10: N/2 SE/4; SECTION 11: E/2, SW/4,<br>S/2 NW/4 AND NE/4 NW/4; SECTION 12: W/2 W/2PER<br>MINERAL DEED RECORDED IN BOOK 5, PG 553 | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | BENSON | BENSON CO ND MI<br>TOWNSHIP 153, RANGE 71<br>SECTION 1: SW/4, AND S/2 NW/4<br>SECTION2: SE/4 NE/4; NE/4 SE/4; SW/4 NE/4; NW/4 SE/4;<br>NW/4 SW/4<br>SECTION 12: N/2 SW/4,<br>NW/4 | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| NORTH DAKOTA | BOTTINEAU | BOTTINEAU CO ND MI 596.59 ACS<br> SEC 21-163N-75W: LOTS 3(32.19), 4(17.20), 6(16.80), N/2 NE/4, SW/4 NW/4, W/2 SW/4,<br> SEC 28-163N-75W: LOTS 2(39.10), 3(11.30), SW/4, W/2 SE/4, SW/4 NE/4, | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | BURLEIGH | BURLEIGH CO ND MI<br> NW/4 & SE/4 SEC 29-T139-R75, SE/4 & NE/4 SEC 11-T138-R75, 640 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | BURLEIGH | BURLEIGH CO ND MI<br>NW/4; SE/4; S/2; SE/4 SW/4 SEC 21-139-75W, SW/4; SE/4SEC 3-139-75, 600 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | BURLEIGH | BURLEIGH CO ND MI<br>SW/4 SEC 24-140-75, NE/4; NE/4 SEC 23-140-75, NW/4 SEC 3-140-75, 640 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | BURLEIGH | BURLEIGH CO ND MI<br>NW/4 SEC 27-142-75, NE/4 SEC 34-142-75, NW/4 SEC 2-141-75, SW/4 SEC 6-142-76, 640 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | BURLEIGH | BURLEIGH CO ND MI<br>NE/4 SEC 32-143-78, SE/4 SEC 29-143-78, NW/4 SEC 12-143-76, 480 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | BURLEIGH | BURLEIGH CO ND MI<br>S/2 SE/4 SEC 23-138-78, NE/4 SEC 26-138-78, SE/4 SEC35-138-78, W/2 SEC 5-139-79, 720 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | EDDY | EDDY CO ND MI 480 ACS<br> SEC 4-T150-R67: LOTS 1,2; S/2, NE/4; SE/4 LOT 4; SW/4, NW/4; SE/4, NW/4; LOT 3 | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | EDDY | EDDY CO ND MI 480 ACS<br> SEC 33-T148-R67: NE/4 & SW/4<br> SEC 33-T148-R66: SW/4 | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | FOSTER | FOSTER CO ND MI<br> SEC 22-T142N-R77W: S/2 SW/4, 80 ACS<br> SEC 2-143N-77W: N/2, 320ACS<br> SEC 4-143N-77W: NE/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | FOSTER | FOSTER CO ND MI<br> SEC 22-144N-77W: SE/4, 160 ACS<br> SEC 26-144N-77W: SW/4, 160 ACS<br> SEC 27-144N-77W: N/2, 320 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| NORTH DAKOTA | FOSTER | FOSTER CO ND MI<br>SEC 15-144N-77W: E/2 & SW/4, 480 ACS<br>SEC 14-144N-77W: NW/4,<br>160 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | FOSTER | FOSTER CO ND MI<br>SEC 24-144N-77W: E/2 & LOTS 1, 2, 480 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | FOSTER | FOSTER CO ND MI<br>SEC 26-144N-76W: SE/4, NW/4, SW/4,<br>SEC 34-144N-76W: N/2, 320 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | FOSTER | FOSTER CO ND MI<br>SEC 7-144N-75W: SW/4 & SE/4, 320 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | FOSTER | FOSTER CO ND MI<br>SEC 35-144N-75W: ALL, 640 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | FOSTER | FOSTER CO ND MI<br>SEC 31-T147-R66: E/2, 320 ACS<br>SEC 32-T147-R66: W/2, 320 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | FOSTER | FOSTER CO ND MI 480 ACS<br>NE/4 SEC 13-T146-R66<br>SE/4 SEC 3-T146-R66<br>SE/4 SEC<br>32-T147-R66 | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | FOSTER | FOSTER CO ND MI 640 ACS<br>SEC 5-146-66: ALL | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | FOSTER | FOSTER CO ND MI 640 ACS<br>SEC 32-T145-R66: ALL | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | KIDDER | KIDDER CO ND MI<br>SEC 30-144N-74W: E/2, NW/4, LOTS 1,2,<br>SEC 19-144N-74W: SW/4,<br>SEC 30-144N-74W: NE/4; E/2 SW/4, LOTS 3,4, | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | KIDDER | KIDDER CO ND MI<br>SEC 19-144N-74W: SE/4, 160 ACS<br>SEC 18-T144N-R74W: NE/4, 160<br>ACS<br>SEC 28-T144N-R73W: SE/4 & SW/4, 320 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | KIDDER | KIDDER CO ND MI SEC 33-T143N-R74W: E/2, 320 ACS<br>SEC 32-T144N-R74W: S/2, SW/4, W/2 SE/4,  SEC 32-T144N-R74W: N/2 NW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| NORTH DAKOTA | KIDDER | KIDDER CO ND MI<br>SEC 28-141N-73W: SE/4, 160 ACS<br>SEC 16-141N-73W: SW/4, 160 ACS<br>SEC 5-141N-73W: SW/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | KIDDER | KIDDER CO ND MI<br>SEC 17-142N-72W: N/2 & SW/4, 480 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | KIDDER | KIDDER CO ND MI<br>SEC 31-T142N-R72W: NW/4, 160 ACS<br>SEC 30-T142N-R72W: E/2 W/2,160 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | KIDDER | KIDDER CO ND MI<br>SEC 20-144N-73W: NE/4, 160 ACS<br>SEC 17-T144N-R73W: NE/4 & SE/4, 320 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | KIDDER | MORTON CO ND MI<br>SEC 8-137N-85W: NE/4, 160 ACS<br>SEC 9-137N-85W: W/2, 320 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | KIDDER | MORTON CO ND MI<br>SEC 31-137N-85W: S/2, 320 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | KIDDER | KIDDER CO ND MI<br>SEC 15-143-71: NE/4 & SE/4, 320 ACS<br>SEC 22-141-71: W/2 NW/4,N/2 SW/4, S/2 NE/4 N/2 SE/4, 320 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | KIDDER | KIDDER CO ND MI<br>SEC 9-141-72: E/2 & NW/4, 480 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | KIDDER | KIDDER CO ND MI<br>SEC 4-141-72:  E/2 SE/4; E/2 NE/4 & SW LOT 2,3,4, 480 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | KIDDER | KIDDER CO ND MI<br>SEC 14-137-71: NW/4, 160 ACS<br>SEC 28-137-71: N/2 NW/4; NW/4 SE/4; SW/4 NE/4, 240 ACS<br>SEC 22-137-71: N/2 NW/4, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | KIDDER | KIDDER CO ND MI<br>SEC 10-137-71: NE/4 & NW/4, 320 ACS<br>SEC 11-137-71: W/2, 320<br>ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | KIDDER | KIDDER CO ND MI<br>SEC 7-137-71: NW/4 & SW/4, 320 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| NORTH DAKOTA | KIDDER | KIDDER CO ND MI<br>SEC 25-138-72: N/2 & SE/4, 480 ACS<br>SEC 19-138-71: SW/4, 160<br>ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | KIDDER | KIDDER CO ND MI<br>SEC 18-138-72: SW/4, 160 ACS<br>SEC 19-138-72: NW/4, 160 ACS<br><br>SEC 13-138-73: SW/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | KIDDER | KIDDER CO ND MI<br>SEC 9-137-71: NE/4, 160 ACS<br>SEC 9-137-71: SW/4, 160 ACS<br>SEC 8-137-71: NW/4, 160 ACS<br>SEC 17-137-71: SW/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | MC LEAN | MCLEAN CO ND MI<br>SEC 21-149N-79W: SW/4, 160 ACS<br>SEC 20-149N-79W: SE/4, 160 ACS<br>SEC 3-149-N-80W: SW/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | MC LEAN | MCLEAN CO ND MI<br>SEC 11-150N-80W: W/2 & NE/4, 480 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | MORTON | MORTON CO ND MI<br>SEC 1-137N-85W: NE/4 & SW/4, 320 ACS<br>SEC 2-137N-85W: SE/4 &<br>S/2 NE/4, 240 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | MORTON | MORTON CO ND MI<br>SEC 9-137N-85W: E/2, 320 ACS<br>SEC 10-137N-85W: W/2, 320 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | MORTON | MORTON CO ND MI<br>SEC 21-137N-85W: E/2, 320 ACS<br>SEC 27-137N-85W: N/2, 320 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | SIOUX | SIOUX CO ND MI<br>SEC 5-129N-83W: W/2, 320 ACS<br>SEC 6-129N-83W: E/2, 320 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | SIOUX | SIOUX CO ND MI<br>SEC 30-130N-83W: SE/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | SIOUX | SIOUX CO ND MI<br>SEC 31-129N-80W: LOTS 2,3,4 & SE/4 NW/4 & E/2 SW/4,<br>240 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| NORTH DAKOTA | WALSH | WELLS CO ND MI<br>SEC 34-T148-R72: E/2 NE/4; SW/4 NE/4<br>SEC 26-T148-R72: SE/4 NW/4; SW/4<br>SEC 4-T147-R72: LOTS 1,2; S/2 NE/4, 480 ACS. | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | WELLS | WELLS CO ND MI<br>SEC 27-T145-R69: N/2 & N/96 ACS, 416 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | WELLS | WELLS CO ND MISEC 26-T150-R68: NE/4, NW/4; W/2 NE/4; NE/4, NE/4SEC 14-T150-R68: SE/4 & SW/4SEC 22-T150-R68: E/2 & NE/4SEC 23-T150-R68: NW/4, 600 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | WELLS | WELLS CO ND MI<br>SEC 21-T150-R68: S/2 & SE/4<br>SEC 28-T150-R68: E/2 NE/4<br>SEC 27-T150-R68: NW/4<br>SEC 22-T150-R68: SW/4, 480 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | WELLS | WELLS CO ND MI<br>SEC 34-T150-R68: E/2, NE/4; E/2 SE/4<br>SEC 35-T150-R-68: W/2 NW/4& SW/4<br>SEC 27-T150-R68: SW/4 & SE/4, 640 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | WELLS | WELLS CO ND MI<br>SEC 5-T149-R68: S/2 NE/4; LOTS 1, 2<br>SEC 32-T150-R68: S/2 SW/4S/2 SE/4; NE/4 SE/4<br>SEC 33-T150R68: N/2 SE/4; SW/4 SW/4, 520 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | WELLS | WELLS CO ND MI<br>SEC 1-T159-R69: SE/4, NE/4 LOT 1<br>SEC 31-T150-R68: NE/4 SW/4;SW/4 SE/4; SE/4 SW/4<br>SEC 32-T150-R68: NW/4 SW/4; SW/4 NW/4; NW/4, 640 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | WELLS | WELLS CO ND MI<br>SEC 19-T150-R71: NE/4 & SW/4<br>SEC 18-T150-R71: SE/4<br>SEC 24-T150-R72: SE/4, 640 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | WELLS | WELLS CO ND MI<br>SEC 15-T148-R72: SE/4, NW/4<br>SEC 21-T148-R72: S/2, SE/4; SW/4SW/4;N/2 S/2; E/3 NE/4<br>SEC 28-T148-R72: NE/4 NE/4; S/2 NW/4; W/2 NE/4<br>SEC 22-T148-R72: W/2 NW/4; NW/4 SW/4, 720 ACS | MINERAL INTEREST | NON PRODUCING |
| NORTH DAKOTA | WELLS | WELLS CO ND MI<br>SEC 27-T148-R72: N/2; E/2 SW/4; SW/4 SW/4; SE/4<br>SEC 34-T148-R72: NW/4 NW/4, 640 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| NORTH DAKOTA | WELLS | WELLS CO ND MI<br>SEC 29-T149-R71: E/2<br>SEC 11-T149-R72: NW/4, 480 ACS | MINERAL INTEREST | NON PRODUCING |
| OKLAHOMA | BEAVER | OKLAHOMA WITHHOLDING | ROYALTY INTEREST | NON PRODUCING |
| OKLAHOMA | ELLIS | ELLIS CO OK MI<br>SEC 16-17S-22W: 40 ACS<br>SALT WATER ROYALTY<br>ALBERMARIE CORP | MINERAL INTEREST | NON PRODUCING |
| OKLAHOMA | LE FLORE | LEFLORE CO OK NPRI<br>SEC 13-7N-25E<br>SEC 14-7N-25E<br>SEC 23-7N-25E<br>SEC 24-7N-25E<br>SEC 25-7N-25E<br>SEC 26-7N-25E<br>SEC 31-7N-25E<br>SEC 36-7N-25E<br>HENRY CHASTAIN, ET UX | ROYALTY INTEREST | NON PRODUCING |
| OREGON | CLATSOP | CLATSOP CO OR MI<br>TOWNSHIP 6 NORTH RANGE 6 WEST<br>SEC 4 LOTS 1,2,3,4, S/2 N/2,S/2, SEC 5 LOTS 1,2,3,4, S/2 N/2, S/2,<br>SEC 6 LOTS 1,2, S/2 NE, SENW, NESW, SE,SEC7NENE,<br>SEC 8 ALL, SEC 9 ALL, SEC 14 W/2 S & E LOUIS IGOT CREEK,<br>SEC 15 ALL EX<br>CEPT 77.5 ACS, SEC 16 ALL, SEC 17 ALL,<br>SEC 18 LOTS 2,3,4, SENW, S/2 NE, E/2 SW,SE,<br>SEC 19 LOTS 1,2,3,4 E/2W/2, E/2, SEC 20 ALL,<br>SEC 21W/2, N/2NE,SENE, SEC22 N/2N/2,<br>SEC 23 N/2 NW EXCEPT 8 ACS, SEC 30 LOT 1,2,E/2 NW, NE,<br>TOWNSHIP 6 NOR<br>TH RANGE 7 WEST<br>SEC 1 LOTS 1,2,3,4, SEC 2 LOTS 1,2,3,4,5,<br>SEC 3 LOTS 1,2,3,4,<br>SEC 24 E/2 E/2, W/2 NE, NWSE, SWSE,<br>SEC 25 NWNE,E/2 NW,  8,748.68 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|---|---|---|---|---|
| OREGON | COOS | COOS CO OR MI<br>1166 ACS PARTS OF<br>SEC 21-28S-13W<br>SEC 22-28S-13W<br>SEC26-28S-13W<br>SEC 27-28S-13W<br>SEC 28-28S-13W | MINERAL INTEREST | NON PRODUCING |
| SOUTH DAKOTA | CORSON | CORSON CO SD MIT22N-R26E (1/4 MI) SECTION 14; T22N-R27E (1/4 MI) SECTION 23(SE/4 & NW/4) T22N-R28E (1/8 MI) SECTION 9: ALL;T23N-R22E (1/4 MI) SECTIONS25,26;T23N-R23E (3/8 MI) SECTIONS 19, 23, 28;T23N-R23E (1/4 MI) SECTIONS 29,30;T23N-R26E (1/4 MI) SECTION 28 (S/2, NE/4)T23N-R28E (3/8 MI) SECTION 21, LOTS 1 & 2, SW/4 | MINERAL INTEREST | NON PRODUCING |
| SOUTH DAKOTA | HAAKON | HAAKON CO SD MI<br>TOWNSHIP 1, RANGE 18E (1/2 MI) IN SECTIONS 26, 35;<br>TOWNSHIP 4,RANGE 21E (1/2 MI) IN SECTION 24;<br>TOWNSHIP 6, RANGE 24E (1/8 MI) IN SECTIONS 5<br>, 8, 9 AND  (1/2 MI) IN SECTION 6 (NW/4);<br>TOWNSHIP 7, RANGE 23E (1/2 MI) IN SEC1 (N/2, SW/4) ,<br>SEC 7 (S/2 S/2), SEC 27,28;<br>TOWNSHIP 7, RANGE 24E (1/2 MI) IN<br>SECTIONS 18 (NW/4 & SECTION 31 (S/2);<br>TOWNSHIP 8, RANGE 23E (1/2 MI) IN SECTIONS<br>19,21,28,29,30 | MINERAL INTEREST | NON PRODUCING |
| SOUTH DAKOTA | HUGHES | HUGHES CO SD 1/2 MI<br>TOWNSHIP 111, RANGE 74 IN SECTIONS 14, 15;<br>TOWNSHIP 112, RANGE 75 IN SECTION 19;<br>TOWNSHIP 112, RANGE 76 IN SECTIONS 13, 24 | MINERAL INTEREST | NON PRODUCING |
| SOUTH DAKOTA | HYDE | HYDE CO SD 1/2 MI<br>TOWNSHIP 112, RANGE 73 IN SECTIONS 2,3,4,5,10,14,15;<br>TOWNSHIP 113, RANGE 72 IN SEC 4 (SW/4), SEC 8 (SE/4),<br>SEC 26 (SE/4), SEC 28 (NW/4);<br>TOWNSHIP 113, RANGE 73 IN SECTION 25: SW/4, SE/4;<br>TOWNSHIP 114, RANGE 72 IN SECTIONS 27,33,34,35, | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| SOUTH DAKOTA | PERKINS | PERKINS CO SD MI<br>TOWNSHIP 22 RANGE 10 (3/16 MI) IN SECTION 18 19;<br>TOWNSHIP 22RANGE 11 (3/16 MI) IN SECTIONS 14,23,24, 26;<br>TOWNSHIP 22 RANGE 11 (1/8 MI) IN<br>SECTIONS 14, 23,24,26, 29, 30 AND 31;<br>TOWNSHIP 23 RANGE 10 (1/2 MI) IN SECTIONS 25, 35 | MINERAL INTEREST | NON PRODUCING |
| SOUTH DAKOTA | STANLEY | STANLEY CO SD (1/2) MI<br>TOWNSHIP 5, RANGE 27 E IN SECTION 33;<br>TOWNSHIP 7, RANGE 25 E IN SECTION 21, 28, 29 | MINERAL INTEREST | NON PRODUCING |
| SOUTH DAKOTA | SULLY | SULLY CO SD MI<br>TOWNSHIP 114, RANGE 80 (3/8 MI) IN SECTIONS 5,6,8;<br>TOWNSHIP 115, RANGE 80 (3/8 MI) IN SECTION 9, 28, 29,30,31 AND 32;<br>TOWNSHIP 115, RANGE 81<br>(3/8 MI) IN SECTION SECTION 25;<br>TOWNSHIP 113, RANGE 75 (1/2 MI) IN SECTIONS 25,26;<br>TOWNSHIP 113, RANGE 74 (1/2 MI) IN SEC 1 (NW/4); SEC 3 (W/2& E/2); SEC 10<br>(NE/4); | MINERAL INTEREST | NON PRODUCING |
| TEXAS | ANDERSON | ANDERSON CO TX MI<br>F CURBIER SVY A-221, 148 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | ANDERSON | ANDERSON CO TX MI<br>G W TUGGLE SVY A-771<br>WILLIAM WRIGHT SVY A-798, 224.25 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | ANDERSON | ANDERSON CO TX MI<br>THOMAS GOSS SVY A-27 & W L POOL SVY A-57, 638.8 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | ANDERSON | ANDERSON CO TX MI<br>SEC 1 I&GN RR SVY BLK 1 PAT 583, 134.8 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | ANDERSON | ANDERSON CO TX MI<br>ROBERT ERWIN SVY A-262, 55 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | ANDERSON | ANDERSON CO TX MI<br>C C MCDONALD SVY A-1058, 88 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | ANDERSON | ANDERSON CO TX MI<br>SVY, 160 ACS<br>MITCHELL LEASE 0.000189 RI | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | ANDERSON | ANDERSON CO TX NPRI<br>J W CARPENTER SVY A-222 &<br>ANDERSON CSL SVY A-71, 3,573.9ACS<br>DOUGLAS LATIMER | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BASTROP | BASTROP CO TX MI<br>CALVIN GAGE SVY A-174<br>CHARLES KESSLER SVY A-218<br>180.5 ACS(80.5 + 100) | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BASTROP | BASTROP CO TX MI<br>J FARRELL & SARAH CASTLEBURY SVY, 79.9 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BASTROP | BASTROP CO TX MI<br>HEADRIGHT SVY, 200 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BASTROP | BASTROP CO TX MI<br>R H GRIMES SVY, 130 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BASTROP | BASTROP CO TX MI<br>J FERRELL SVY, 100 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BASTROP | BASTROP CO TX MI<br>S S BEASLEY SVY, 750 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BASTROP | BASTROP CO TX NPRI J MARTIN SVY, 124 ACS J O<br>BROWNING | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BASTROP | BASTROP CO TX NPRI<br>J MARTIN & E HARRIS SVYS, 437.2 ACS<br>GEORGE OWEN (DANNELLEY) | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BASTROP | BASTROP CO TX NPRI<br>J WRIGHT & J P WALLACE SVY, 242.5 ACS<br>H B EDWARDS | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BASTROP | BASTROP CO TX NPRI<br>J CUNNINGHAM & J OGLESBY SVY, 2 ACS<br>AUGUST LINDNER ETUX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BASTROP | BASTROP CO TX NPRI<br>JAS WEST SVY, 200 ACS<br>HENRY MOBLEY | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BASTROP | BASTROP CO TX NPRI<br>J FERRELL SVY, 105.92 ACS<br>C W MOEHRING NETTLES | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BASTROP | BASTROP CO TX NPRI<br>T G ALLEN & P B ISLES SVY, 708.909 ACS<br>GEORGE NINK, ETAL | ROYALTY INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | BASTROP | BASTROP CO TX NPRI<br>DEMPSEY PACE SVY, 191 ACS<br>O M WEATHERBY | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BASTROP | BRAZORIA CO TX NPRI<br>H. E. WEAVER F. S. PHILLIPS, 105 ACS | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BEE | BEE CO TX MI<br>SEC 216 DAN MALEY SVY A-567, 127.9 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BORDEN | BORDEN CO TX MI<br>S. LAKE THOMAS  LAVACA NAVIGATION SVY, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BRAZORIA | BRAZORIA CO TX MI<br>J W HALL SVY A-68, 322.01 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BROWN | BROWN CO TX MI<br>GC&SF RR CO SVY 3, A-1403,<br>KERR CSL SVY 271,<br>ALL OF F. M. WILSON SVY, A-1372,<br>ALL OF DAY LAND & CATTLE CO SVY A-1727, 318.41 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>A. R. GUILD SVY A-268, 571.236 ACS<br>LSED 04/04/08 3 YRS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX 1/3 X 50/136.5 MI<br>136.5 ACS ABNER SMITH SVY<br>(JOHN COWDEN LSE)<br>.02289377 RI | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>JOHN CHEASEY SVY, 267.5 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>THOMPSON AND SANCHEZ LGES, 157 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>CHRISTIAN LABOR SVY, 13 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON  CO TX MI<br>S C ROBERTSON LGE 2, 59.75 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>LOTS 1-20 BLK 11 CHRISMAN TX, 1.7218 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>SVY, 17.625 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>MCKEEN SVY, 110.1205 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | BURLESON | BURLESON CO TX MI<br>GUILD & O PERRY SVY, 163 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>A CALVIN SVY, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>JAS. LASTLEY LGE, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON & MILAM CO TX MI<br>H MARTIN GRANT, 40.177 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON & MILAM CO TX MI<br>I. MAIDEN SVY,<br>SAMUEL SLATER SVY, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON & MILAM CO TX MI<br>CHARLES SEVIER SVY A-226, 340 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>DAVID HOUSTON SVY, 194 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>JAS. DUNN SVY, 16.5 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>WM. ALLEN SVY, 53 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>S. A. LONG SVY, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>W. W. HILL SVY, 103.85 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>W. W. HILL SVY, 130 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>S. Y. REAMS SVY, 102 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI F. A. RUIZ SVY, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>MILES & MOORE SVY, 173.25 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>E SANTE SVY, 39.2 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>C A SMITH SVY A-209<br>PCC 634673 COFFIELD B-3 #1 0.09375 RI<br>PCC 634678 COFFILED B-3 #2 0.09375 RI (98875) | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | BURLESON | BURLESON CO TX MI<br>E. SANTE AND ABNER SVYS<br>COFFIELD-RUSSELL .09375 RI | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>ABNER SMITH SVY<br>COFFIELD-SMITH .1875 RI | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>ABNER SMITH SVY<br>COFFIELD-SMITH B .09375 RI | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>ABNER SMITH SVY<br>COFFIELD-SMITH .1875 RI | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>JOHN CHESNEY SVY A-10: 425.85 ACS<br>TR 1 133.36 AC, TR 2 50.84AC, TR 3 126.75, TR 3B 2.38, TR 4 112.52 AC<br>ADAMS-LAKEVIEW DEVELOPMENT NO.1-AREUNIT LAKEVIEW UNIT 1 .0625 RI | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>SEC 1 MOSES CUMMINGS SVY A-16, 300 ACS<br>J M ORSAG UNIT 1, 2,<br>0.0046542 RI | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>E SANTE SVY<br>GRAMM LEASE .0628 RI | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX NPRI<br>ABNER SMITH SVY, 25 ACS<br>W. A. BOUNDS, ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX NPRI<br>J S WINSTON SVY, 645 ACS<br>F. C. EDMINSTON ESTATE | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>A.THOMPSON SVY, 262 ACS<br>H NEVILLS SVY<br>J. M. SANCHEZ SVY<br>F. M. ETHERIDGE EST. | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX NPRI<br>ABNER SMITH SVY, 125 ACS<br>M. T. FOOD LAND | ROYALTY INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | BURLESON | BURLESON CO TX NPRI<br>ELIZA SANTE SVY, 221 ACS<br>NELLIE K. GRAMM | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX NPRI<br>ABNER SMITH SVY, 379 ACS<br>J. N. GREEN LAND | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX NPRI<br>JAMES SHAW SVY, 44.8 ACS<br>M.H. HELFORD ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX NPRI<br>WILLIAM OLDHAM SVY, 160 ACS<br>T. S. HENDERSON LAND | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX NPRI<br>JOHN WINSTON SVY, 645 ACS<br>JOHN A. JACKSON LAND | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX NPRI<br>SAM WILLIAMS SVY, 20 ACS<br>SARAH ANN JACKSON ET AL | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX NPRI<br>I&GN RR SVY, 140 ACS<br>E. A. LARREMAORE ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX NPRI<br>ELIZA SANTE SVY, 500 ACS<br>GENEVIEVE MAAS, A WIDOW &<br>NELLIE GRAMM ET VIR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX NPRI<br>ELIZA SANTE SVY, 218 ACS<br>GENEVIEVE MAAS, A WIDOW | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX NPRI<br>ABNER SMITH SVY, 86 ACS<br>W. T. MACY & A. S. CROW LAND | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX NPRI<br>MARY CARNAGHAN, 99 ACS<br>ROBERT MCLANE LAND | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX NPRI J. C. WALKER SVY, 247 ACS P.<br>H. HARRISS ET UX (OGLE LAND) | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX NPRI<br>SVY, 160.33 ACS<br>J. P. STEVENS & W. EVANS DOVIE RAY JONES, ET VIR | ROYALTY INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | BURLESON | BURLESON CO TX NPRI<br>ABNER SMITH SVY, 100 ACS<br>RAY AND JONES LAND | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX NPRI<br>ABNER SMITH SVY, 103 ACS<br>JESSE Q. RAY, A SINGLE MAN | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX NPRI<br>J. C. WALKER SVY, 664.25 ACS<br>W.H. ORR, ET UX, B. REGENBRECHT LAND | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX NPRI<br>J. C. WALKER SVY, 175 ACS<br>MRS. CADDIE SCARBROUGH, A WIDOW | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX NPRI<br>ABNER SMITH SVY, 80 ACS<br>TEX-OKAN MILLING CO LAND | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX NPRI<br>JAMES SHAW SVY, 280 ACS<br>VOGEL LAND | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX NPRI<br>HENRY MARTIN SVY, 40 ACS<br>I. H. WARREN, ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>AARON COLVIN SVY A-13, 80 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>E. SANTE SVY A-210, 40 ACS<br>COFFIELD UNIT A (C2502) .1250 RI<br>COFFIELD UNIT A (C2502) .0625 ORRI | MINERAL INTEREST | NON PRODUCING |
| TEXAS | BURLESON | BURLESON CO TX MI<br>E SANTE SVY A-210, 43.6 ACS<br>H H COFFIELD -A- #2 (04209)<br>.0416666 RI & .02083332 ORI | MINERAL INTEREST | NON PRODUCING |
| TEXAS | CALDWELL | CALDWELL CO TX NPRI<br>MILES G. DYKES SVY, 3 ACS<br>W. V. HARDIN | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | COOKE | COOKE CO TX MI<br>GARCIA SVY A-404, 112 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | DALLAS | DALLAS CO TX NPRI<br>WILLIAM B. COATS SVY, .29 AC<br>ETTA D. BLANDCHARD ET VIR | ROYALTY INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | DALLAS | DALLAS CO TX NPRI<br>JAMES MATTHEWS SVY, 8.45 ACS<br>FOREST LAWN LOT OWNERS ASSN | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | DALLAS | DALLAS CO TX MI<br>JOHN S JONES SVY A-687, 155 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | DE WITT | DE WITT CO TX MI<br>JAMES DUFF SVY A-153, 167 ACS<br>LUKE M. MASON SVY A-335, 20<br>ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | DE WITT | DEWITT CO TX MI<br>JAMES MAY 1/4 LGE A-324, 103 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | DE WITT | DEWITT CO TX MI<br>JAMES DUFF SVY A-153<br>& LUKE MASON SVY A-325, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | DIMMIT | DIMMIT CO TX MI<br>LOT 7, BLK 175 OF SUB L, 80 ACS<br>LOT 7 & 10 BLK 11 SUB A, 80<br>ACS<br>LOT 9 BLK 11 & LOT 11 BLK 10 SUB A, 80 ACS<br>ALL IN TAFT-CATARINA PROPERTIES SUBD | MINERAL INTEREST | NON PRODUCING |
| TEXAS | DIMMIT | DIMMIT CO TX NPRI<br>T&NO RR SVY, 40 ACS<br>JEFF ARCHER ESTATE | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | DIMMIT | DIMMIT CO TX NPRI<br>SEC 651 A-102, 40 ACS<br>SAM F. SHROUT ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | DIMMIT | DIMMIT CO TX 2/3 MI LOT 14 BLK-4 SUBD A,<br>W R RUTLEDGE SVY A-1229 TAFT-CATARINA, LOT 14<br>BLK-8 W R RUTLEDGE SVY A-1229 CATARINA<br>TOWNSITE 80 ACS<br>ADDITIONAL PROPERTY TO ACCOUNT, SEE DEED<br>DATED 08/30/1984, VOL. 206, PG 6 | MINERAL INTEREST | NON PRODUCING |
| TEXAS | DIMMIT | DIMMIT CO TX 3/128 NPRI<br>LOTS 11 & 12 BLK 2<br>TAFT-CATARINA SUBD A, 80 ACS<br>DEED DTD 07/18/1953,<br>RECORDD IN VOL. 106, PG 539-540 | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | DIMMIT | DIMMIT CO TX 3/128 NPRILOT 12 BLK 6 TAFT-CATARINA SUBD A, 40 ACS DEED DTD 05/29/1961,RECORDD IN VOL. 120, PG 361 | MINERAL INTEREST | NON PRODUCING |
| TEXAS | DIMMIT | DIMMIT CO TX 3/128 NPRI LOT 1 BLK 10 TAFT-CATARINA SUBD A, 40 ACS DEED DTD 11/02/1953, RECORDD IN VOL. 107, PG 93 | MINERAL INTEREST | NON PRODUCING |
| TEXAS | ECTOR | ECTOR CO TX MI GOLDSMITH ADOBE UNIT | MINERAL INTEREST | NON PRODUCING |
| TEXAS | FAYETTE | FAYETTE CO TX 1/2 X 3/4 X 1/8 X 7/8 ORI J T WHITESIDE LEAGUE A-107, 500 ACS JANECKA -A- (RRC 700) | OVERRIDING ROYALTY | NON PRODUCING |
| TEXAS | FAYETTE | FAYETTE CO TX MI 237 ACS, JOHN VANDERWORTH LGE A-312 IRENE UNIT- A NO. 1 | MINERAL INTEREST | NON PRODUCING |
| TEXAS | FAYETTE | FAYETTE CO TX MI AMAZIAH E BAKER LGE A-8 | MINERAL INTEREST | NON PRODUCING |
| TEXAS | FAYETTE | FAYETTE CO TX MI A.E. BAKER LEAGUE A-8 & MARY PHELPS LEAGUE A-82, 210.7 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | FAYETTE | FAYETTE CO TX MI A.E. BAKER LEAGUE A-8 & MARY PHELPS LEAGUE A-82, 210.7 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | FAYETTE | FAYETTE CO TX MI J.G. WILKINSON SVY A-108, 94.9 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | FAYETTE | FAYETTE CO TX MI MARY PHELPS LGE A-82, 50 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | FAYETTE | FAYETTE CO TX MI W. WILLIAMSON SVY A-113, 795.084 GEOSOUTHERN-AMY .03125 RI | MINERAL INTEREST | NON PRODUCING |
| TEXAS | FAYETTE | FAYETTE CO TX MI J G WILKINSON SVY A-108 GEOSOUTHERN-STAR .046875 RI | MINERAL INTEREST | NON PRODUCING |
| TEXAS | GALVESTON | GALVESTON CO TX MI JOHN D. MOORE LEAGUE | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | GARZA | GARZA CO TX MI<br>SEC 1111 TWN G RY CO SVY A-353: SW/4, 160 ACS<br>PATENT 436 VOL<br>29 CERT 0/38 | MINERAL INTEREST | NON PRODUCING |
| TEXAS | GOLIAD | GOLIAD CO TX NPRI<br>321.2 ACS OUT OF THE R. E. HANDY SVY<br>AND M. G. CARICO SVY A-90 | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | GRAY | GRAY CO TX NPRI<br>H&GN RR CO SVY, 562.2 ACS<br>FEDERAL FARM MORTGAGE CORP. | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | GREGG | GREGG CO TX MI<br>L B OUTLAW SVY A-159<br>CALVIN BROWN .005 RI | MINERAL INTEREST | NON PRODUCING |
| TEXAS | GREGG | GREGG CO TX MI<br>L B OUTLAW SVY A-159<br>ROSA BROWN .03125 RI | MINERAL INTEREST | NON PRODUCING |
| TEXAS | GREGG | GREGG CO TX<br>L B OUTLAW SVY A-159<br>ROSA BROWN .020834 RI | MINERAL INTEREST | NON PRODUCING |
| TEXAS | GRIMES | GRIMES CO TX MI<br>J. G. TONG SVY A-446, 188 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | HARRIS | HARRIS CO TX MI<br>JACOB HALL SVY, 161.75 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | HARRIS | HARRIS CO TX MI<br>JOHN WHITE SVY, 140 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | HARRIS | HARRIS CO TX NPRI<br>HARRIS-WILSON 2 LGE GRANT, 2.09 ACS<br>BANKERS MORTGAGE CO. | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | HARRIS | HARRIS CO TX NPRI<br>HARRIS-WILSON 2 LGE GRANT, 3.32157 ACS<br>A.B. O'DONNELL ET,<br>UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | HARRIS | HARRIS CO TX NPRI<br>HARRIS-WILSON FIRST TIER, .5603 ACS<br>JOHN CLAYTON | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | HARRIS | HARRIS CO TX NPRI<br>HARRIS -WILSON FIRST TIER, .7 AC<br>N.J. KLIEN | ROYALTY INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | HARRIS | HARRIS CO TX NPRI<br>HARRIS-WILSON 2 LGE GRANT, 3.305 ACS<br>ANTHONY B. O'DONNELL<br>ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | HARRIS | HARRIS CO TX NPRI<br>J. MITCHELL SVY A-570, 100 ACS<br>E.A. SCROGGINS, ETUX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | HARRIS | HARRIS CO TX NPRI J. MITCHELL SVY A-570, 4.556 ACS<br>E.A. SCROGGINS ET, UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | HARRIS | HARRIS CO TX NPRI<br>HARRIS-WILSON 2-LEAGUE GRANT, .7 ACS<br>TEXAS-LOUISIANA CORP | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | HARRIS | HARRIS CO TX NPRI<br>PART OF LOT 3, BLK. 35, 2.778 ACS<br>URSULINE ACADEMY OF GALVESTON ET AL | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | HARRIS | HARRIS CO TX NPRI<br>JOHN BROWN SVY, 2.778 ACS<br>U.S.A. ADM. OF GENERAL SVCS | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | HARRIS | HARRIS CO TX NPRI<br>JOHN BROWN SVY, 11.5 ACS<br>E. MONROE WISE ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | HARRIS | HARRIS CO TX NPRI<br>HARRIS-WILSON 2 LGE GRANT, 2.245 ACS<br>JOHN H. BLAFFER, T.J.HILL & KINCAID SC | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | HARRISON | HARRISON CO TX MI<br>P.R. PEARSON SVY, 50 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | HARRISON | HARRISON CO TX MI<br>DAVID HILL SVY, 41.5 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | HARRISON | HARRISON CO TX MI<br>PRANSON & FAZER SVY, 72.5 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | HOUSTON | HOUSTON CO TX MI<br>S. A. RINGO & JESSIE DODSON, 6.8 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | HOUSTON | HOUSTON CO TX MI<br>MARY INGRAM SVY A-1263, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | HOWARD | HOWARD CO TX MI<br>SEC 4 BLK 34 T1S T&P SVY, 320 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | HUNT | HUNT CO TX NPRI<br>PRICE SVY, 269.6926 ACS<br>W.M. JACKSON | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | JACK | JACK CO TX MI<br>S H TRIGHMAN SVY A-1724; A-2339<br>STEED-LEACH<br>LEACH #1 .0208334<br>RI | MINERAL INTEREST | NON PRODUCING |
| TEXAS | JACK | JACK CO TX MI 160 ACS<br>S. H. TILGHMAN SVY A-2339<br>CATLIN-LEACH #1 .0138890RI | MINERAL INTEREST | NON PRODUCING |
| TEXAS | JACK | JACK CO TX MI<br>S H TILGHMAN SVY A-1724, E/40 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | JASPER | JASPER CO TX MI<br>A. WRIGHT SVY, 63 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | JASPER | JASPER CO TX MI<br>A. WRIGHT SVY, 65 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | JEFFERSON | JEFFERSON & LIBERTY CO TX MI<br>SEC 31 T&NO SVY, A-375, LIBERTY CO TX<br>SEC 1140<br>WHEELER SVY JEFFERSON CO TX<br>980 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | KARNES | KARNES CO TX MI<br>VICTOR BLANCO ORIG GRANT A-3, 60.25 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | KAUFMAN | KAUFMAN CO TX NPRI<br>NELSON SVY, 1343.78 ACS<br>W.P. KING SVY, 97.2 ACS<br>F.S. OLDT, ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | LAMB | LAMB CO TX MI<br>ABNER TAYLOR SVY LABOR 7 LGE 642, 177.1 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LAMB | LAMB CO TX MI<br>ABNER TAYLOR SVY, 191.5 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LAMB | LAMB CO TX MI<br>ABNER TAYLOR SVY LABOR 25 LGE 642, 100 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LAMB | LAMB CO TX MI<br>ABNER TAYLOR SVY LABOR 3 LGE 642, 177.1 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LAMB | LAMB CO TX MI<br>THOMSON SVY SEC 24, 637.7 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | LEE | LEE CO TX MI<br>JOHN CHENOWETH SVY A-60, 117.469 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>R. MILBUM SVY, 100 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>PEVEYHOUSE SVY, 45 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>THOS. MORROW SVY A-222, 276 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>JOHN PREWITT LGE A-259, 100 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>JOHN PREWITT LGE A-259, 106 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>W S DOBBINS LGE A-88, 116 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>J. M. DICKSON SVY A-94: 71.125 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI E MILBURN SVY, 100 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>S.S. CURTIS & E. MILBURN SVY, 248 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>A. ESTES LGE, 157.5 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>W. H. BYNUM SVY A-6, 174 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>IRA CLEMONS SVY A-58, 204.1 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>AARON D. DODD SVY A-85, 125 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | BURLESON & LEE CO TX MI<br>LEWIS MOORE SVY A-236<br>JOHN FURNASH LGE A-107<br>263.333 ACS, LSED 11/15/10 3 YRS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>S. S. CURTIS & B .W. SWEARAGIN SVYS, 71 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>NICHOLAS S. CRUNK SVY A-62, 61.25 ACS<br>NICHOLAS S. CRUNK SVY A-62, 42.827 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>JOHN PREWITT SVY, 111 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | LEE | LEE CO TX MI<br>JOHN FURNASH LGE A-107, 200 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>DANIEL WALKER SVY, 125 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>R T. S. MAHAN & S. S. CURTIS 1/3 LGE, 175 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>JOHN EASLEY SVY, 45.7 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>JOHN NEWTON SVY A-244, 120 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>DANIEL WALKER LGE, 105 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>GEORGE DARR SVY, 50 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>P. WIMBERLY SVY, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>THOMAS WARD LGE, 68.5 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>THOS MORROW SVY A-222, 51.6 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>DANIEL WALKER SVY, 39.75 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>GEORGE KESSNER SVY, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>WM. C. HUGHES SVY, 95 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>ARMSTRONG SVY, 100 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>IRA CLEMONS SVY A-58, 100 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>E. MILBURN SVY, 116.5 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>E. MILBURN SVY, 193 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>S.S. CURTIS SVY & E. MILBUM SVY, 175 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>E. MILBUM SVY, 24.405 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | LEE | LEE CO TX MI<br>A. S. MITCHELL SVY, 15 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>F. BOATWRIGHT LGE, 151.54 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>GEORGE DARR SVY 201 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>A. S. MITCHELL 1/3 LGE SVY A-221, 325 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>IRA CLEMMONS SVY A-58, 108 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>P. T. CUMEAL SVY, 70 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX NPRI<br>W. N. MOCK LGE, 164 ACS<br>JOHN CURREY ET AL | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX NPRI<br>C. L. L. CHILES & JOHN CHENOWITH SVY, 248 ACS<br>FIRST NATIONAL<br>BANK | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX NPRI<br>J. A. TANNER LGE & FRANKLIN J. WILLIAMS SVY,<br>283.5 ACS<br>P. A.HELMS, ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX NPRI IRA CLEMMONS SVY, 100 ACS B.<br>HESTER ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX NPRI<br>WILLIAM N MOCK SVY, 50 ACS<br>JOHN JENKINS ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX NPRI<br>THOMAS MORROW SVY, 112.23 ACS<br>NORAH E. MARTIN | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX NPRI<br>JOHN CHENOWETH SVY, 132.75 ACS<br>PEARL MCCAWLEY, A WIDOW | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX NPRI<br>GEORGE W. GUTHIE & WARREN LYONS SVYS, 140<br>ACS,<br>ROSA A. MUSTONAL BY  J. KNOX | ROYALTY INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | LEE | LEE CO TX NPRI<br>P OWENS GRANT, 374 ACS<br>J. B. NEWTON ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX NPRI<br>W. H. BYNUM LGE, 174 ACS<br>T. S. PEEBLES ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX NPRI<br>JOHN CHENOWETH SVY, 144 ACS<br>J. T. PRUETT, ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX NPRI<br>P. T. CUMEAL LGE A-61, 255 ACS<br>F. W. RETZLOFF ET AL | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX NPRI<br>WILEY HARRISON SVY, 322.853 ACS<br>STATE BANK AND TRUST CO | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX NPRI<br>WILLET HEADRIGHT SVY, 55 ACS<br>A. L. TURNIPSEED, ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX NPRI<br>HENRY COOK LGE, 102 ACS<br>BETTIE WALDEN A WIDOW | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX NPRI<br>THOMAS H. MAYS SVY, 130 ACS<br>H. M. WEST LAND | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX NPRI<br>A. S. MITCHELL SVY, 200 ACS<br>FRED VOLLHUE | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>J F MANCHA SVY A-207 | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>JAMES SHAW SVY A-289, 139.6 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LEE | LEE CO TX MI<br>ROBERT FINNEY A-108, 91 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LIBERTY | LIBERTY CO TX MI<br>JAS. HANNEY LGE, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LIBERTY | LIBERTY CO TX MI<br>JAS. HANNEY & H. B. JOHNSON LGE, 106 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | LIBERTY | LIBERTY CO TX MI<br>ELDRIDGE SVY, 10 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LIBERTY | LIBERTY CO TX MI<br>S. O. THOMPSON SVY, 41 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LIBERTY | LIBERTY CO TX MI<br>H. B. JOHNSON & JAS. HANDRY LGE, 130 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | LIBERTY | LIBERTY CO TX MI<br>JAMES HANEY LGE, 77 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>29.62 ACS OUT OF THE B W HOLTZCLAW SVY, A-187<br>(COFFIELD-STANISLAW) | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JOSE LEAL SVY, 16 ACS<br>JOHN HALL (R L ABBOTT, ET UX) GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>R L BATTE SVY A-453, 357.8 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>J L NICHOLSON SVY, 128.8 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>ELI WILLIAMS SVY A-380<br>JOHN NOLAN SVY A-286, 236 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>E SANTE SVY, 54.5 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>M A SACKETT SVY A-337, 105 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>D A THOMPSON SVY A-398 AND WILLIAM ALLEN SVY<br>MINERVA-ROCKDALE FIELD<br>H H COFFIELD E(A/K/A H H SHAMROCK 1) .0833334 RI | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>J. LEAL SVY, 100 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>T. J. CHAMBERS SVY, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MIJ. B. HARVEY SVY A-186, 103 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>MARY SACKETT SVY A-337, 72 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>J. A. PREWITT SVY A-288, 45 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|------------------|---------------|--------|
| TEXAS | MILAM | MILAM CO TX MI<br>MARY SACKETT SVY A-337, 75 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>MARY SACKETT SVY A-337, 16.33 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>MARY SACKETT SVY A-337, 82 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>B. F. SWOAP SVY A-328, 218.5 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>J. B. HARVEY SVY A-186, 130 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>J. LEAL SVY A-29, 20 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>ELIZA SANTE SVY A-210, 40 ACS<br>BROWN & MCKENZIE | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>WILLIAM ALLEN SVY A-72 | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>ROBERT WALKER HEIRS SVY A-382 | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>W W HILL SVY<br>COFFIELD -LOCKHART .1875 RI | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>D A THOMPSON SVY, 5 ACS<br>A. AGUILLAR, ET UX GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>WM. ISAACS & JAS. STEVENS SVY, 336 ACS<br>SAM GARDNER (J. BALFORD EST) GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>S. C. ROBERTSON SVY A-52, 101.666 ACS<br>ALUMINUM CO. OF AMERICA GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>J. P. SMITHSON & E.S.C. ROBERTSON SVY, 160.5 ACS<br>T.F. CRISWELL (G.W. MARZILLA APPLIN) | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>J. J. ACOSTA SVY, 134.167 ACS<br>DORIS SIMMS AVRETT, ET AL, GRANTOR | ROYALTY INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|---|---|---|---|---|
| TEXAS | MILAM | MILAM CO TX NPRI<br>J. J. ACOSTA SVY, 16 ACS<br>JIM BARTLETT ET UX  GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>S. Y. REAMS SVY, 17.9 ACS<br>ELDON BATTE ET UX  GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>HENRY MARTIN SVY, 65 ACS<br>KATE BEATY, ET AL  GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>J. J. ACOSTA SVY, 2.5 ACS<br>CARL C. BLACK GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>ROBERT WALKER SVY, 660.3 ACS<br>ED. J. BAHAC ET AL  GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>WILLIAM ALLEN SVY A-72, 5 ACS<br>DAN F. BOUNDS LAND GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>T.S. ARNETT SVY, 9.601 ACS<br>BRIDLE BIT MRS. SUE HALE,<br>A FEME SOLE  GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>G. W. TEVIS SVY, 263 ACS<br>C. W. HINYARD (R.N. BRENNAN ETAL)<br>GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>S. P. CARSON SVY, 10 ACS<br>KENNETH BRODNAX  GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JOSE LEAL SVY, 175 ACS<br>J. MCGREGOR (MRS. NM BULLOCK) | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>H. MARTIN & J SHAW SVY, 133 ACS<br>MRS. N. M. BULLOCK  GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JOSE LEAL SVY, 30 ACS<br>J.W. BUSBY ETUX   GRANTOR | ROYALTY INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | MILAM | MILAM CO TX NPRI<br>W. THOMPSON SVY, 820.9 ACS<br>LENA EVANS CALLIER GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI D. A. THOMPSON SVY, 1 AC<br>CHARLES CALVIN GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>F. RUIZ SVY, 256.4 ACS<br>C.W. HINYARD (ARCHBISHOP OF<br>SAN ANTONIO) GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JOSE LEAL SVY, 55 ACS<br>WM. CAMERON CO. (CAYWOOD LN.) GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JOSE LEAL SVY, 100 ACS<br>A.L. CAYWOOD ETUX GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JOSE LEAL SVY, 100 ACS<br>LOUIS CAYWOOD GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JOSE LEAL SVY, 55 ACS<br>RUBEN CAYWOOD GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JOSE LEAL SVY, 70 ACS<br>W. T. CAYWOOD GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>J. J. ACOSTA SVY, 128.61 ACS<br>WILLARD T. SCURLOCK (O. CHARLES ETUX) | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>WILLIAM ALLEN SVY A-72, 10.4 ACS<br>BERTIE W. CHINN GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JAMES SHIELDS SVY, 180 ACS<br>E. GUNN (J. M. COLLINS EST.LAND) | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JOSE LEAL SVY, 15 ACS<br>SONS OF HERMAN (CORBITT LAND) GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JOSE LEAL SVY, 8 ACS<br>MRS. EDNA COULTER GRANTOR | ROYALTY INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | MILAM | MILAM CO TX NPRI<br>J. J. ACOSTA SVY, 115.5 ACS<br>J. COX (M. G. COX, ESTATE) GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>B. W. HOLTZCLAW SVY, 1,389.66 ACS<br>CULPEPPER-SIMMS LAND | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>J. J. ACOSTA SVY, 40 ACS<br>CRAYTON LAND  GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>E. BAILEY SVY, 605.5 ACS<br>J. M. CUNNINGHAM LANDS. GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>T. J. CHAMBERS SVY, 65.77 ACS<br>HOWARD J. DEBUS. GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>T. J. CHAMBERS SVY, 50 ACS<br>J. W. DYER, TE UX GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>WILLIAM ALLEN SVY A-72, 4.6 ACS<br>VERNON DYJMKE, ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>WILLIAM ALLEN SVY A-72, 3 ACS<br>FRANK BYMKE, ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>WILLIAM ALLEN SVY A-72, 10.5 ACS<br>VERNON DYMKE, ET UX GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>ELIZA SANTE SVY, 47 ACS<br>R.E. EAKIN LAND GRANTOR | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JAMES SHIELDS SVY, 108 ACS<br>J. J. ELLIOTT LAND | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>F. RUIZ SVY, 80.75 ACS<br>FEDERAL LAND BANK (T. A. FISHER) | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>J. W. HAYS SVY, 68.33 ACS<br>R. A. THOMAS ET UX ( FIRST NAT.BANK) GRANTOR | ROYALTY INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | MILAM | MILAM CO TX NPRI<br>T. F. HAILEY SVY. I & GN RR SVY, 68.33 ASC<br>BENTLEY FLETCHERET UX, WIDOW GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>T. F. HAILEY SVY, 67.5 ACS<br>LOUISE FLETCHER, WIDOW GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI I & G N RR T. F. HAILEY SVY, 119.2<br>ACS WILLIAM S. FLETCHERET AL GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>C. S. WALDEN & D. A. THOMPSON SVY, 807.6 ACS<br>E. H. FOSTER ET UX GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>SMITH VINCENT SVY, 25 ACS<br>J. R. FRAIM LAND | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>RICHARD ROSS SVY, 100 ACS<br>J. S. FRANKLIN, ET AL | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>CHAMBERS, THOMPSON, ARNETT SVYS, 128.75 ACS<br>MRS. J. A. GAMBILL, ET AL  GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>W. W. HILL SVY, 84.25 ACS<br>DAVIS R. GARLAND ET AL GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>G. W. TEVIX & S. Y. REAMS SVY, 130.5 ACS<br>W.V. HARDIN (TOM E.<br>GARRARD ET UX) | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JAS. SHELTON SVY, 50 ACS<br>L.  FYKES ET AL (W GIBSON) | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JOSE LEAL SVY, 36 ACS<br>W. GIBSON (JESSE H. GORE LAND) | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>D. A. THOMPSON SVY, 8 ACS<br>JOE W. GRABENER | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>WM. THOMPSON SVY, 250 ACS<br>H. L. GREEN ET UX (LELAND GREEN) | ROYALTY INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | MILAM | MILAM CO TX NPRI<br>JAMES LEWIS SVY, 194.5 ACS<br>LELAND GREEN JR. ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>S. P. CARSON SVY, 5 ACS<br>R.O. GREER, ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>T. J. CHAMBERS SVY, 21 ACS<br>FLOYD Y. GRIFFIS, ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>W. W. HILL SVY, 116 ACS<br>JOSIE PALMER, S. C. GRUBAUGH ET UX<br>GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>CHARLES BIGELOW SVY A-100, 435.2 ACS<br>E. A. CAMP (C. H. GUSTAFSON ETUX) | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>T. J. CHAMBERS SVY, 50 ACS<br>JOHN T. HALE  ET AL | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>ELIZA SANTA SVY, 520.054 ACS<br>W. N. HALE LAND | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>A. M. TANDY SVY, 932.2 ACS<br>W.M. KELLER (H.H. HALL EST) | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>J. J. ACOSTA SVY, 17 ACS<br>WALLIS M HARRIS ET AL | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>ELIZA SANTE SVY, 52.11 ACS<br>LEO HARRIS LAND GRANTOR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JAMES DUNN A-146, 50 ACS<br>R. A. HAIRSTON | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>SMITH VINCENT SVY, 75 ACS<br>LEE BATTE HARVEY (JEAN KAY) GRANTOR | ROYALTY INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | MILAM | MILAM CO TX NPRI<br>JAS. SHELTON SVY, 185.25 ACS<br>HAYNIE ESTATE LANDS | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JOSE LEAL SVY, 150.6 ACS<br>P. SANDERS, W. L. HALL ET UX (HELMS LAND) | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>B. C. ROBERTSON SVY, 94.456 ACS<br>CARROL ROBERTSON ET UX (OSWALD HENNIGER) | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>T. J. CHAMBERS SVY, 15 ACS<br>HOLCOMB OR LOCKETT LAND | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI JOSE LEAL SVY, 1.02 ACS ROBERT<br>F. HOSKINS | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>D. A. THOMPSON SVY, 70 ACS<br>W. V. HARDIN ET UX (LON HUDSON LAND) | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JOSE LEAL SVY, 1013 ACS<br>INTERNATIONAL COAL MINE PROPERTY | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JOHN DUNLAP MRS M. I. JAMES, 303 ACS | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>J. J. ASOSTA SVY, 176.33 ACS<br>J. G. THOMPSON (LOUIE JENNESSLAND) | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>J.J, ACOSTA SVY, 21.25 ACS<br>MRS. IDA JENNESS, ET AL | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JAS. SHELTON SVY, 141 ACS<br>A. B. KERR ET AL | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>J. M. HAYS SVY, 120.37 ACS<br>HELEN C. KIEFERS. A WIDOW | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>CARSON AND STEPHENS SVY, 901.25 ACS<br>C. A. PRATER ET UX (G.B. KINCAID LAND) | ROYALTY INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|---|---|---|---|---|
| TEXAS | MILAM | MILAM CO TX NPRI<br>GABRIEL JACKSON SVY, 4 ACS<br>EARL LEECH ET UX (FITZ KOCH LAND) | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>T. J. CHAMBERS SVY, 41 ACS<br>C.L. KOLB ESTATE | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>T. J. CHAMBERS &  J. LEAL SVY, 220 ACS<br>KRULL PLACE | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JAMES SHIELDS SVY, 100 ACS<br>P. SANDERS (HARRY LANDA) | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>G.B. BOWEN, 160.5 ACS<br>ROY LAW | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JOSE LEAL SVY, 95 ACS<br>J.F. LEEPER | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>ELIZA SANTE SVY, 209.07 ACS<br>LENA PETER LIBERTO, ET VIR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>W. W. HILL SVY, 120 ACS<br>PRESTON SANDERS (LINDSEY FARM) | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>W W HILL SVY, 54.75 ACS<br>L L LONG ESTATE | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>M. DAVILLA SVY, 183.656<br>L. M. MASSEY ESTATE | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>J. A. JONES SVY, 72 ACS<br>MRS. IDA MATHEWS | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>S. A. LONG SVY, 640 ACS<br>MARTHA DANA MERCER | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JOSE LEAL SVY, 61 ACS<br>W. GIBSON (MIKE MONTOYA) | ROYALTY INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | MILAM | MILAM CO TX NPRI<br>J. H. SVY, 131 ACS<br>CARL C. BLACK (J.G. MOON, EST.) | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>S. Y. REAMS SVY, 31.5 ACS<br>MARY MULLINS ET AL | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>C. M. MATHEWS SVY, 178 ACS<br>P. SANDERS (MCGOWN & ANDERSON) | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>E & H HARDCASTLE SVY, 260.4 ACS<br>HOMER NABOURS, ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>THOMPSON-CHAMBERS SVY, 460 ACS<br>GABINO NIETRO | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>W. W. HILL SVY, 148.9 ACS<br>A. N. OWENS | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI ELIZA SANTA SVY, 209.07 ACS<br>ALBERT V. PETER ET AL | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>S. G. ROBERTSON SVY, 193 ACS<br>PHILLIPS LAND | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>J. J. ACOSTA SVY, 13.125 ACS<br>CECIL PLATE, ET AL | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>W. W. HILL SVY, 60 ACS<br>PAULINE PRIESS, ET AL | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>S. C. ROBERTSON SVY, 96.4 ACS<br>CARROLL ROBERTSON ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>S. C. ROBERTSON SVY, 96.4 ACS<br>CARROLL ROBERTSON ET UX | ROYALTY INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | MILAM | MILAM CO TX 1,008.76 NPRI<br>TRACT 1: W. ISAACS SVY A-219; J. STEPHENS SVY A-322 & JAMES A SMITH SVY A-331 AND<br>TRACT 2: WILLIAM ISAACS SVY A-219;<br>J. STEPHENS SVY A-322 | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JOSE LEAL SVY, 81.25 ACS<br>MRS. MARY ROBINSON & W.A.L. ROBINSON | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>M. J. DELGADO SVY, 11 ACS<br>RUTH C. ROBINSON, ET VIR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>T. J. CHAMBERS SVY, 37.27 ACS<br>NANCY A. ROUNTREE | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JOSE LEAL SVY, 122 ACS<br>W. P. ROSE, ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>H. HAWFORD SVY, 34.5 ACS<br>P. SANDERS | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>DAVID HOUSTON SVY, 50 ACS<br>T.C. SCARBOROUGH LAND | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>HENRY MARTIN SVY, 86.75 ACS<br>SCOTT HEIRS | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JACOB WILCOX SVY, 10 ACS<br>SCOTT AND WHITE LAND | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>CARSON AND ROBERTSON SVY, 7.42 ACS<br>HATTIE SIDES ET AL | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>A. T. MILES SVY, 58 ACS<br>R. J. SLOAN, ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>MORRIS MOORE SVY, 35 ACS<br>R J SLONE | ROYALTY INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | MILAM | MILAM CO TX NPRI<br>J. F. FRAZIER SVY, 753.2 ACS<br>DORCAS BATTE SMITH ET VIR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>G. H. BORROUGHS SVY, 80 ACS<br>STEWART LAND | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JAMES SHELTON SVY, 80 ACS<br>JEWEL O. STEWART ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JOSE LEAL SVY, 159.85 ACS<br>D.J. SULLIVAN | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>ELIZA SANTE SVY, 103 ACS<br>CLAUD SWEAKS ET AL | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>SMITH VINCENT SVY, 130 ACS<br>LEO TAYLOR ET AL | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JOSE LEAL SVY, 89.79 ACS<br>JAMES A TERRY ET AL | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JAS. SHELTON & GEORGE DAMPKIN SVYS, 157.5 ACS<br>RAY E. THOMPSON | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>S. C. ROBERTSON & T. J. CHAMBERS SVYS, 68 ACS<br>JOHN TIMMERMAN ET AL LAND | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI J.J. ACOSTA SVY, 17 ACS A. G.<br>TRIGGS ET  UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>H. HARDCASTLE SVY, 100 ACS<br>ELLA TAYLOR VANOVER ET AL | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JACOB WILCOX SVY, 4.772 ACS<br>HERBERT M WALKER, SR. ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JAS. PREWITT SVY, 36 ACS<br>W. R. WILLIAMS ET AL | ROYALTY INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|---|---|---|---|---|
| TEXAS | MILAM | MILAM CO TX NPRI<br>D. H. VAN VEIGHTON SVY, 80 ACS<br>HOUSTON WILLIAMS & B. R. WILLIAMS | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>DAVID CURRY SVY, 37.5 ACS<br>D. B. WILLESS ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JOSE LEAL GRANT, 109 ACS<br>H.D. YOAKUM ET UX | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>D. A. THOMPSON SVY<br>J. TOM WILLIAMS | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br>JOSE LEAL SVY, 70.5 ACS<br>D. A. THOMPSON SVY<br>J. TOM WILLIAMS | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>CHARLES BIGELOW SVY A-100, 40 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>WM PHARARRAS SVY, 177 ACS<br>TRS OF 88 & 89 ACS,<br>R W WALLIS TO TOM PREWITT | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>MINERVA ROCKDALE A-7, 5.5 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>W W HILL SVY A-191, 103.85 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>JOSE LEAL SVY<br>COOK E M  (03465)<br>.0555668 RI | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>ELIZA SANTE SVY A-317, 40 ACS<br>H H COFFIELD -D- (RRC 4315)<br>.01041666 RI &.01041666 ORRI | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX MI<br>J W COLLINS SVY A-130, 180 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX NPRI<br> JOSEPH COTTLE SVY A-129: 121.799 ACS | ROYALTY INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | MILAM | MILAM CO TX MI<br>F A RUIZ SVY A-308, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MILAM | MILAM CO TX 2/3 MI<br>190.80 ACS, C M MATTHEWS SVY A-57 | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MONTGOMERY | MONTGOMERY CO TX MI<br>W. DUNLAVY SVY, 100 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MONTGOMERY | MONTGOMERY CO TX MI<br>PETER WITTAKER SVY, 80 ACS<br>SAN JACINTO CO | MINERAL INTEREST | NON PRODUCING |
| TEXAS | MONTGOMERY | MONTGOMERY CO TX NPRI<br>DUNCAN MCINTIRE SVY A-386, 91.8 ACS | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | NAVARRO | NAVARRO CO TX MI<br>JOHN MCNEAL SVY, 65 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | NAVARRO | NAVARRO CO TX NPRI<br>S.F. MCCANLESS A-516, 2 ACS<br>ELEANOR MUNSEY SLOAN ET VIR | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | ORANGE | ORANGE CO TX NPRI<br>SEC 26 T&NO SVY: NW/4, 160 ACS<br>AKA BECKWITH SVY A-391 HARRY<br>LUCAS | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | PARKER | PARKER CO TX MI<br>T T HINES SVY A-2611, 80 ACS<br>JAMES MULBERRY SVY A-1887, 64 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | PARMER | PARMER CO TX NPRI<br>SEC 20 IN BLK B: NE/4, 160 ACS<br>OF THE CAPITOL SYNDICATE SUBD<br>FARWELL NATL FARM LOAN ASSOC | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | POLK | POLK CO TX MI<br>P A  SUBLET SVY A-71, 52.76 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | POLK | POLK CO TX MI<br>I D THOMAS LGE, 85.5 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | POLK | POLK CO TX MI<br>WM SHADBURN & J C PITE SVYS, 35 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | POLK | POLK CO TX MI<br>SHANBUM SVY, 35 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | POLK | POLK CO TX MI J. C. PITTS SVY, 35 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | POLK | POLK CO TX MI<br>WILLIAM DAVIS SVY, 85.5 ACS<br>LESTER 2.5 ACS<br>LIVELY 83 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | POLK | POLK CO TX MI<br>THOMAS & PACE LEAGUE, 41.5 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | POLK | POLK CO TX MI<br>P A SUBLET SVY A-71, 48.5 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | POLK | POLK CO TX MI<br>MARY SWINNEY SVY, 50 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | POLK | POLK CO TX MI<br>MARY SWINNEY SVY, 10 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | REAGAN | REAGAN CO TX MI<br>SEC 13 BLK E HE&WT SVY A-211: NW/4, 160 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | ROBERTSON | ROBERTSON CO TX MI<br>JOHN FISHER 1/4 LEAGUE SVY, 30 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | RUSK | RUSK CO TX MI<br>W. F. HYDE SVY, 111.3 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | SAN JACINTO | SAN JACINTO CO TX MI<br>J. F. D. RUMAYON SVY, 85 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | SAN JACINTO | SAN JACINTO CO TX MI<br>SMITH AND WHITE SVY, 50 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | SAN JACINTO | SAN JACINTO CO TX MI<br>C. SMITH SVY, 64 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | SCURRY | SCURRY CO TX MI<br>SEC 253 BLK 97, H&TC SVY: NE/4, 160 ACS<br>LEE .0273438 RI | MINERAL INTEREST | NON PRODUCING |
| TEXAS | SCURRY | SCURRY CO TX NPRI<br>H&TC SVY W H MURPHY, 21 ACS | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | SMITH | SMITH CO TX MI<br>CICERO WARREN JAMES CHAFFIN SVY, 53.17 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | SMITH | SMITH CO TX NPRI<br>J.H. SANDERS SVY, J.H. WILKERSON SVY, A. WALSH SVY<br>MRS. WAUNETTE BARR, FEME SOLE, 182.98 ACS | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | SMITH | SMITH CO TX MI<br>P LIVELY SVY A-566<br>KARPER-PALUXY GU 1,2,3 | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | TAYLOR | TAYLOR CO TX NPRI<br>NOT SOLD  WM. BISHOP SVY 43 JOHN ADAMS SVY 44<br>(ROSIE LEE JONES, ET AL), 276.7 ACS | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | TRAVIS | TRAVIS CO TX NPRI<br>WILKINSON SPARKS 44 (W. W. BENNETT ET UX), .047<br>ACS | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | TRAVIS | TRAVIS CO TX NPRI<br>WILKINSON SPARKS 4 A-21 (ALLEN M. CAIN), 3.82 ACS | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | TRAVIS | TRAVIS CO TX NPRI<br>WILKINSON SPARKS 4 (ALLEN M. CAIN ET UX), 1.16<br>ACS | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | TRAVIS | TRAVIS CO TX NPRI<br>WILKINSON SPARKS 4 (PAUL S. CEDER), 125.24 ACS | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | WALLER | WALLER CO TX MI<br>S. MARSH SVY A-217, 137 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | WALLER | WALLER CO TX MI<br>S. MARSH SVY, 74 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | WALLER | WALLER CO TX MI<br>WINGFIELD LEAGUE, 450 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | WINKLER | WINKLER CO TX MCL<br>SEC 9 BLK B-2 PSL SVY A-1931: N/2 S/2, 160 ACS | MINERAL CLASSIFIED LAND | NON PRODUCING |
| TEXAS | WINKLER | WINKLER CO TX NPRI<br>SEC 42 BLK 21 UNIVERSITY SVY: NW/4 | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | WOOD | WOOD CO TX MI<br>BROOKS & BURLESON SVY A-92, 495.66 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | WOOD | WOOD CO TX  7.5/92.6 RI<br>BERRY SMITH SVY, 92.6 ACS<br>BESSIE CONNOR LSE .0068742RI<br>HAWKINS FIELD UNIT (747 WELLS) RRC 5743 | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | WOOD | WOOD CO TX MI<br>GREEN B WATKINS SVY A-629, 207.9 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | WOOD | WOOD CO, TX 1.25/99 RI<br>BERRY SMITH SVY A-534, 99 ACS<br>J. D. KENNEMER LSE .00106132 RI<br>HAWKINS FIELD UNIT (747 WELLS) RRC 5743 | ROYALTY INTEREST | NON PRODUCING |
| TEXAS | WOOD | WOOD CO TX MI<br>DAVID GILLILAND SVY A-162, 87.7 ACS | MINERAL INTEREST | NON PRODUCING |

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | YOAKUM | YOAKUM CO TX MI<br>SEC 788 JOHN H GIBSON SVY, 640 ACS<br>SEC 854 JOHN H GIBSON SVY, 640 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | YOAKUM | YOAKUM CO TX MI<br>SEC 756 BLK D JOHN H GIBSON SVY: E/2, 320 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | ZAVALA | ZAVALA CO TX NPRI SVY NO 386, SVY NO 387, SVY NO 388, SVY NO 389, SVYNO 390, SVY NO 391, SVY NO 392, DEWITT LANGFORD ET UX, 2,213.315 ACS | ROYALTY INTEREST | NON PRODUCING |