# EXHIBIT B

~~[*THIS DOCUMENT IS NOT A SOLICITATION OF VOTES ON THE PLAN. VOTES MAY NOT BE SOLICITED UNTIL THE BANKRUPTCY COURT HAS APPROVED THE DISCLOSURE STATEMENT. THIS PLAN SUMMARY IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT. ALL OF THE INFORMATION IN THIS PROPOSED PLAN SUMMARY IS SUBJECT TO CHANGE.]*[1]~~

**PLAN SUMMARY AND FREQUENTLY ASKED QUESTIONS**

**THIS PLAN SUMMARY HAS BEEN PREPARED BY THE FUTURE CLAIMANTS' REPRESENTATIVE AND COALITION OF ABUSED SCOUTS FOR JUSTICE AND PROVIDES INFORMATION REGARDING THE PLAN CONFIRMATION (APPROVAL) PROCESS AND THE PLAN PROPOSED BY THE BOY SCOUTS~~.~~**

On February 18, 2020, the Boy Scouts of America ("BSA") and Delaware BSA, LLC (together, the "Boy Scouts" or the "Debtors") filed for bankruptcy protection in the Bankruptcy Court.

On April 24, 2020, the Court entered an order appointing James L. Patton, Jr., the Future Claimants' Representative (the "FCR"), to represent the interests of holders of future childhood sexual abuse claims for past abuse that may be asserted against the Debtors.~~[2]~~[1]

On July 24, 2020, the Coalition of Abused Scouts for Justice (the "Coalition"), filed a notice of appearance in the Chapter 11 Cases. The Coalition comprises more than 18,000 sexual abuse survivors who have submitted proofs of claim against the Boy Scouts and signed affirmative consents to being a part of the Coalition, as well as law firms that have filed statements with the Bankruptcy Court that they represent approximately 60,000 sexual abuse survivors.

On September 14, 2021, the Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company and Navigators Specialty Insurance Company (collectively "Hartford"), the Debtors, the Coalition, the FCR, and the Ad Hoc Committee of Local Councils entered into a settlement (the "Hartford Settlement").

On September 14, 2021, The Church of Jesus Christ of Latter-day Saints, a Utah corporation ("TCJC"), the Debtors, the Coalition, the FCR, and the Ad Hoc Committee of Local Councils entered into a settlement (the "TCJC Settlement").

Based on the resolution with the Coalition, the FCR, and the Ad Hoc Committee of Local Councils of Boy Scouts of America (the "Ad Hoc Committee of Local Councils"), Hartford, and ~~the~~ TCJC, the Debtors filed their *Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6212] (the "Plan").~~[3]~~[2] The Bankruptcy

~~[1] Bracketed language to be removed following Court approval.~~

~~[2]~~[1] A "future" claim is one in which the survivor as of the Petition Date (February 18, 2020) (a) had not attained the age of eighteen (18) years of age or (b) was not aware of the sexual abuse as a result of "repressed memory," if such concept is recognized by the highest appellate court of the state or territory where such claim arose.

~~[3]~~[2] All capitalized terms not otherwise defined herein shall be given the meanings ascribed to them in the Plan or the exhibits to the Plan.

Court has authorized the Boy Scouts to send the Plan to survivors and other creditors for voting. ***The Coalition and the FCR have concluded that, given all the circumstances of the case, the Plan is fair, in the best interests of survivors and other creditors, and should be approved. We encourage you to vote to <u>accept</u> the Plan.***

## <u>PLAN SUMMARY</u>

This summary is provided as an overview and is not meant to provide all of the information survivors should rely on when considering whether to vote to accept or reject the Plan. You, along with your counsel, are encouraged to read the Plan and Disclosure Statement when deciding how to vote. To the extent that any discrepancies exist between the summary described herein and the terms of the Plan, the Plan shall govern.

### THE PLAN CONFIRMATION PROCESS

The Bankruptcy Court overseeing the Boy Scouts bankruptcy case must decide whether or not to approve the Plan. The Bankruptcy Court will take into consideration the votes of survivors and other creditors and whether all the other requirements of the Bankruptcy Code have been satisfied. If the Bankruptcy Court finds that all the legal requirements are satisfied, the Bankruptcy Court will approve or "confirm" the Plan.

If the Plan is approved, the Boy Scouts will exit bankruptcy and the responsibility of the Boy Scouts, Local Councils and ~~the~~ TCJC to address or pay the Scouting-related sexual abuse claims (the "<u>Abuse Claims</u>") against them will be transferred to a settlement trust (the "<u>Settlement Trust</u>") that will oversee the review and payment of Abuse Claims. The Plan and Disclosure Statement are included with this summary.

As part of the package that includes this Plan Summary, the Debtors have distributed or provided electronic access to you, or your counsel, the following documents, which, with this Plan Summary are referred to as the "Solicitation Package."

- Cover letter describing the contents of the Solicitation Package and instructions to obtain access, free of charge, to the Plan, the Disclosure Statement, and the Solicitation Procedures Order via https://omniagentsolutions.com/bsa-SAballots or https://omniagentsolutions.com/bsa-ballots, and urging holders of Claims in the Voting Classes to vote to accept the Plan.

- Notice of hearing that will provide the date(s) and time(s) that the Bankruptcy Court will consider approval of the Plan.

- A copy of the Disclosure Statement (and all of its exhibits), including the Plan to the extent such exhibits are filed with the Bankruptcy Court before the Solicitation Date) via ~~https://omniagentsolutions.com/bsa-SAballots or https://omniagentsolutions.com/bsa-ballots.~~ ____________________.

- A copy of the "Solicitation Order," that approved the Disclosure Statement and the voting procedures including the Solicitation Procedures and all exhibits, via

https://omniagentsolutions.com/bsa-SAballots or https://omniagentsolutions.com/bsa-ballots. .

- Ballot with return instructions (and a return envelope, as applicable).

- Any other materials ordered by the Bankruptcy Court to be included as part of the Solicitation Package.

As part of the Solicitation Package you or your counsel will receive a Ballot to vote to accept or reject the Plan.[43] After the returned Ballots are counted, the Bankruptcy Court will conduct the hearing to determine whether to approve the Plan.

**HOW TO VOTE**. You or your counsel will receive a Ballot with instructions that explain how to vote. If you are represented by counsel, consult your attorney regarding the appropriate method to vote. If you have questions about the voting materials, please call (866) 907-2721 (toll-free) or email BSAballots@omniagnt.com. .

**YOUR VOTE COUNTS**. **You have the right to accept or reject the Plan if you (or your attorney on your behalf) filed a timely claim against the Boy Scouts. Ballots must be RECEIVED by __________ ___, 2021,** to be counted. Ballots can be submitted electronically at: https://omniagentsolutions.com/bsa-SAballots ______________________ or delivered by mails by sending to:

Boy Scouts of America Ballot Processing
c/o Omni Agent Solutions
5955 De Soto Avenue, Suite 100
Woodland Hills, CA 91367

**DESCRIPTION OF THE PLAN**

- **Payment of Abuse Claims by the Settlement Trust**

Under the Plan, the Debtors will fund a Settlement Trust. The Settlement Trust will assume the liability for the Abuse Claims. As set forth below, the Debtors and the Local Councils are making contributions to the Settlement Trust. These contributions are not the same thing as the Debtors' liability or obligation to pay Abuse Claims. The Settlement Trustee will liquidate the Settlement Trust's assets which includes the contributions being made by the Debtors, the Local Councils, Hartford and TCJC. The Settlement Trust will make distributions to survivors in accordance with the Trust Distribution Procedures (as discussed below). These distributions are also not the same thing as the Debtors' liability or obligation to pay Abuse

[43] If you indicated on your Proof of Claim form that your counsel may be contacted regarding your claim and your counsel indicated to the Debtors that it would facilitate your vote on the Plan on your behalf, your Ballot, along with the Solicitation Package, will be sent to your counsel who will facilitate your vote. Please contact your counsel to be sure that your vote is properly reflected by your counsel on the ballot submitted.

Claims. However, the distributions will be based on the allowed value of the Abuse Claims, as determined under the Trust Distribution Procedures.

- **The Plan Incorporates Resolutions with Boy Scouts, Local Councils, Hartford, and TCJC**

As noted above, the Boy Scouts, Local Councils, Hartford, TCJC, Coalition and FCR reached settlements. The Plan includes these settlements, which provide for contributions of money and other property from the Boy Scouts, Local Councils, Hartford, and TCJC and puts in place a framework for potential future settlements with other parties such as Insurance Companies and Chartered Organizations. Chartered Organizations are the over 40,000 secular and religious entities (such as TCJC) that support the Scouting mission of the Boy Scouts by, among other things, sponsoring local troops. Some or all of the Chartered Organizations may be subject to liability associated with their relationship with the Boy Scouts.

- **Money and Property from the Boy Scouts Will Be Transferred to the Settlement Trust to Pay Survivors**

Under the Plan, the Boy Scouts will transfer assets valued at approximately $220 million to the Settlement Trust ~~that will be set up to pay claims of survivors~~, assuming an Effective Date of December 31, 2021. The Boy Scouts' contribution to the Settlement Trust includes cash and investments (estimated at $60 million, subject to adjustment based on timing of emergence and performance of the Debtors through emergence), the cash sale proceeds from Scouting University ($1.902 million), artwork (valued at $59 million), oil and gas interests (valued at $7.6 million), a warehouse and distribution center (valued at $11.6 million), an $80 million note to be paid over approximately 10 years or less, all rights to proceeds and claims relating to the Boy Scouts' insurance for Abuse Claims, and all causes of action relating to Abuse Claims (including claims for contribution or indemnification against a perpetrator). There will be costs associated with the sale of the artwork, oil and gas interests, and the warehouse and the value achieved in the sale may be more or less than the estimates. As a result, the proceeds from the sale or liquidation of these assets could be different than the face amount.

- **Money and Property from Local Councils Will Be Transferred to the Settlement Trust to Pay Survivors**

Under the Plan, if certain conditions are met, $500 million of money and property will be transferred to the Settlement Trust from certain Local Councils to pay Abuse Claims. In addition, a special-purpose entity will issue a note worth up to $100 million to the Settlement Trust to pay Abuse Claims. The special-purpose entity will make payments on the $100 million note from funds contributed by Local Councils. The $500 million will be composed of at least $300 million in cash plus certain real properties such as camps and scout centers with an appraised value of $200 million less any excess of cash over $300 million. In addition, the Local Councils' rights and claims relating to the Boy Scouts' and Local Councils' applicable insurance will be transferred to the Settlement Trust.

All Local Councils have signed letters of intent that are, among other things, contingent on acceptable resolution of the Plan's treatment of Chartered Organizations. As of now, the

Local Councils have not confirmed whether they are satisfied with the Plan's current treatment of Chartered Organizations. Accordingly, whether any individual Local Council will make the contribution on Exhibit C is currently uncertain. If, for any reason, Local Councils do not collectively contribute $500 million in money and property, then no Local Council will be a Protected Party, and all may still be sued by survivors.

- **The Contribution from the Hartford Settlement Will Be Transferred to the Settlement Trust to Pay Survivors**

In accordance with the Hartford Settlement, Hartford will contribute $787 million to the Settlement Trust, $137 million to be available immediately to the Settlement Trust on the Effective Date of the Plan and $650 million to be held in escrow until the order confirming the Plan is final and non-appealable. In exchange for the contribution, Boy Scouts will sell to Hartford its insurance policies and Hartford will receive releases with respect to Abuse Claims in accordance with the Plan. Likewise, Hartford will benefit from the Channeling Injunction as a Protected Party. Hartford's contribution is conditioned on Hartford's satisfaction with the Plan's treatment of the rights of Chartered Organizations with respect to Hartford Insurance Policies.

- **Contributions from the TCJC Settlement Will Be Transferred to the Settlement Trust to Pay Survivors**

In accordance with the TCJC Settlement, TCJC will contribute $250 million to the Settlement Trust. These funds will be held in escrow until the order confirming the Plan is final and non-appealable. These funds will be allocated only among the Abuse Claims that could have been satisfied from ~~the~~ TCJC absent the Plan's discharge and channeling injunction. Additionally, TCJC will contribute its rights to coverage for Abuse Claims under insurance policies issued to Boy Scouts or the Local Councils under which it is an insured, and other insurance rights related to Abuse Claims. In exchange for its contributions, ~~the~~ TCJC will receive releases with respect to Abuse Claims and become a Contributing Chartered Organization in accordance with the Plan. As a Contributing Chartered Organization, TCJC will benefit from the Channeling Injunction as a Protected Party.

- **Contributions of Insurance Rights from Participating Chartered Organizations Will Be Transferred to the Settlement Trust to Pay Survivors**

In accordance with the Plan, all Chartered Organizations (other than TCJC) will assign their rights to coverage for Abuse Claims under insurance policies issued to the Boy Scouts or the Local Councils with policy periods on or after January 1, 1976, and which name Chartered Organizations as insureds, *unless* that Chartered Organization objects to confirmation of the Plan or informs Boy Scouts' counsel in writing that it does not wish to assign its insurance rights (a "Participating Chartered Organization"). In exchange for its contribution, the Participating Chartered Organizations (other than TCJC) will receive releases with respect to Abuse Claims arising on after January 1, 1976, and become a Limited Protected Party in accordance with the Plan. Participating Chartered Organizations will benefit from the Channeling Injunction as a Limited Protected Party with respect to Abuse Claims arising from abuse that first occurred on or after January 1, 1976.

- **Depending on the value and availability of insurance, the Settlement Trust could end up with substantially more assets to pay claimants than the enumerated $1.857 billion in this summary~~.~~**

As noted above, the Plan provides that the Boy Scouts and the Local Councils will contribute all of their rights to proceeds and claims under the insurance policies that apply to the Abuse Claims to the Settlement Trust. ~~The~~If such contribution is approved by the Court, the Settlement Trust will either submit Abuse Claims to the Insurance Companies (other than Hartford) for payment on such Abuse Claims, enter into settlements with Insurance Companies (other than Hartford) that will bring in cash to the Settlement Trust for the benefit of survivors, or litigate with Insurance Companies (other than Hartford) to enforce their obligations under the policies. ~~Although the~~The value of these insurance assets is uncertain, and they could be worth substantially more or substantially less than the $1.857 billion that the Boys Scouts, the Local Councils, ~~the~~ TCJC, and Hartford are collectively ~~transferring~~expected to transfer to the Settlement Trust.

Although the BSA and Local Councils believe that Local Council and Chartered Organization insurance rights or policy proceeds can be transferred to the Settlement Trust, the insurers have asserted numerous coverage defenses. For this reason the value of the insurance rights being assigned to the Settlement Trust is speculative and uncertain.

- **Survivors May Continue to Pursue Claims Against Certain Chartered Organizations, But May Not Sue Boy Scouts, Local Councils, Settling Chartered Organizations or Insurance Companies**

The Plan stops survivors from suing the Boy Scouts, the Local Councils~~, the~~ (if they collectively make the $500 million Local Council Contribution as specified above), TCJC, and Hartford (if Hartford is satisfied with the Plan's treatment of Chartered Organizations' rights under Hartford insurance policies) because they settled and are what is called a "Protected Party" under the Plan. The Plan stops survivors from suing Insurance Companies because the insurance policies are protected assets of the Settlement Trust, and the funds recovered from insurers will be equally available to all survivors through the Trust. Participating Chartered Organizations (other than ~~the~~ TCJC) can be sued by survivors who have not elected the Expedited Distribution option ~~on their Ballot~~ described below for Abuse Claims arising before January 1, 1976, because those Participating Chartered Organizations have not settled and are only a "Limited Protected Party" under the Plan. If a Chartered Organization settles in the future, it will become a Protected Party and that would mean that survivors could no longer sue it for any Abuse Claim, regardless of when it arose. Instead, the amounts collected in the settlement would be paid to the Settlement Trust and used to pay Abuse Claims. Specifically, further settlements with Insurance Companies or with individual Chartered Organizations before or after the Plan's Effective Date could add some or all Chartered Organizations as Protected Parties and could prevent suits by survivors related to scouting activities. There is a chart that helps explain this in the FAQ portion of this document.

Finally, if a Chartered Organization is in chapter 11 or informs the Boy Scouts that it does not wish to have its insurance rights transferred to the Settlement Trust, it will receive no protections from the Bankruptcy Court and may be sued by survivors who have not elected the

Expedited Distribution option ~~on their Ballot~~ described below because they have not settled. If more Chartered Organizations settle in the future, each would become a Protected Party and that would mean that survivors could no longer sue it. Instead, the amounts collected in the settlement would be paid to the Settlement Trust and used to pay Abuse Claims. Specifically, further settlements with Insurance Companies or with individual Chartered Organizations before or after the Plan's Effective Date could add some or all Chartered Organizations as Protected Parties and could prevent suits by survivors related to scouting activities. There is a chart that helps explain this in the FAQ portion of this document.

***It is important to consult with your attorney if you believe you have a claim against, and are considering suing, a Chartered Organization because the issues are very complicated.***

- **Youth Protection**

The Plan also obligates the Boy Scouts to continue to improve on its youth protection practices by taking the following steps: (i) form a Child Protection Committee consisting of survivors and members of the Boy Scouts and Local Councils, (ii) implement an analysis of its current Youth Protection Program, (iii) work with the Child Protection Committee and an unaffiliated expert in the prevention of youth sexual abuse to develop and recommend improvements to the Youth Protection Program, and (iv) work with the Child Protection Committee to consider a protocol for the review and publication of information contained in the Boy Scouts' Volunteer Screening Database and Rosters for those credibly accused of abuse while involved with the Boy Scouts.

- **Trust Distribution Procedures**

The Boy Scouts and the Coalition and the FCR have negotiated procedures for the efficient review and payment of the approximately 82,500 non-duplicative, timely claims. The procedures are called "Trust Distribution Procedures" or "TDP." The TDP will provide for the submission of additional information about your claim and the value of your individual Abuse Claim will be determined in accordance with the TDP based on a "claims matrix," which means being assigned a dollar amount based on the following guiding principles:

1. ~~objective~~ Abuse Claim eligibility criteria;
2. ~~clear and reliable~~ proof requirements;
3. administrative transparency;
4. a ~~rigorous~~ review and evidentiary process that requires the Settlement Trustee to determine allowed claim amounts ~~in accordance with applicable law~~;
5. prevention and detection of any fraud; and
6. independence of the Settlement Trust and Settlement Trustee.

The procedures set forth in the TDP are described in more detail below.

- **Channeling Injunction**

In exchange for the contributions to the Settlement Trust and other consideration provided under the Plan, the Court will issue a permanent channeling injunction (a) releasing, among others, the Boy Scouts, the newly Reorganized BSA, Contributing Local Councils, Contributing Chartered Organizations (*e.g.*, TCJC), Participating Chartered Organizations, and Insurance Companies that contribute to the Settlement Trust (*e.g.*, Hartford) (collectively, the "Protected Parties"), from Abuse Claims; (b) transferring responsibility for Abuse Claims against such parties to the Settlement Trust, to be processed and paid under the TDP; and (c) barring Holders of Abuse Claims from pursuing the Protected Parties on account of the Abuse Claims. This injunction is an implementation of the settlement discussed above. In addition, as described above, the Plan provides for a separate injunction barring direct claims of survivors against Insurance Companies.

**DESCRIPTION OF THE SURVIVOR CLAIM DETERMINATION AND PAYMENT PROCESS**~~[5]~~[4]

There are three options for survivors to establish the value of their claims:

A. Expedited Distribution Election of $3,500 (election must be made ~~on the Ballot and~~ in accordance with the Plan and TDP);~~[6]~~

B. Trust claim submission under the Trust Distribution Procedures; or

C. Settlement Trustee authorization to pursue the claim in court through the tort system.

## A. Expedited Distribution Election

~~A~~Following the Effective Date, a survivor (other than a Future Abuse Claimant) may elect ~~on their Ballot~~ to resolve his or her Abuse Claim for an Expedited Distribution of $3,500, if the survivor has submitted a proper and substantially completed Proof of Claim that has been signed personally by the survivor under penalty of perjury, or supplements his or her Proof of Claim to provide such verification. In the case of holders of a Future Abuse Claim, they need to make a submission to the Settlement Trustee to be eligible for the Expedited Distribution. Survivors that elect to receive the Expedited Distribution will not have to submit any additional information to the Settlement Trust to receive payment of the Expedited Distribution from the Settlement Trust provided that their proof of claim form is substantially completed and is signed by the survivor attesting to the truth of its contents under penalty of perjury. Payment will be

~~[5]~~[4] For the avoidance of doubt, the actual terms of the Trust Distribution Procedures shall control and the Coalition ~~an~~and the FCR urge each survivor (or their respective counsel) to review the TDP for the full requirements and procedures associated with the review and payment of Abuse Claims under the TDP.

~~[6] Ballot election is not applicable to holders of Future Abuse Claims.~~

sent upon the survivor's submission of a release, a form of which is attached as Exhibit A to the TDP. **Your election for an Expedited Distribution must be made on your Ballot**[7].

**B. Trust Distribution Procedures**

If a survivor elects not to receive an Expedited Distribution of $3,500, the survivor must complete a Trust Claim Submission (a form in addition to the Proof of Claim form that you already submitted, as defined in the TDP) so that the Settlement Trustee can review the merits of the survivor's claim. This submission will occur later, after the Plan is confirmed and you will be provided instructions at that time. To properly make a Trust Claim Submission, a survivor must (i) complete a questionnaire; (ii) produce all records and documents related to the Abuse Claim, including all documents pertaining to settlements, awards, or contributions already received or that are expected to be received from any source; and (iii) execute an agreement (1) to produce any further records and documents reasonably requested by the Settlement Trustee,; (2) consent to and agree to cooperate in any examinations requested by the Settlement Trustee; and (3) consent to and agree to cooperate in a written and/or oral examination under oath if requested to do so by the Settlement Trustee. A survivor's breach or failure to comply with the commitments required by a Trust Claim Submission is grounds for the disallowance of or significant reduction to the amount or value of the Abuse Claim.

**1. Initial Evaluation**

The Settlement Trustee will perform an Initial Evaluation of the Submitted Abuse Claim to determine whether (a) the Abuse Claimant's Proof of Claim or Trust Claim Submission is substantially and substantively completed and signed under penalty of perjury; (b) the Abuse Claim was timely submitted; and (c) the Submitted Abuse Claim had not previously been resolved by litigation and/or settlement involving a Protected Party. If any of these criteria are not met, then the Submitted Abuse Claim shall be disallowed, and the Settlement Trustee will send the survivor a Disallowed Claim Notice.

**2. Review of General Criteria**

[7] Ballot election is not applicable to holders of Future Abuse Claims. Future Claimants may make a Trust Submission to elect the Expedited Distribution.

If a Submitted Abuse Claim is not disallowed after the Initial Evaluation, the Settlement Trustee will determine if the submitted evidence supports the Abuse Claim, taking into account certain general criteria, including the survivor's (a) identification of acts of abuse suffered; (b) identification or description of the alleged abuser(s); (c) provision of information showing the connection of the abuse to scouting; (d) specification of the timing of such abuse and the survivor's age at the time of such abuse; and (e) identification of the location of the abuse. If the Settlement Trustee determines that the materials provided in connection with a Submitted Abuse Claim do not meet the criteria, the Settlement Trustee may request additional materials from the survivor or disallow the Abuse Claim. If the Settlement Trustee determines that a Submitted Abuse Claim is a Disallowed Claim, the Settlement Trustee will provide written notice to the survivor or counsel of that determination, subject to reconsideration (as described below).

### 3. Claims Evaluation

If the Settlement Trustee determines that the Submitted Abuse Claim should be an Allowed Claim, the Settlement Trustee will evaluate the claim using certain Abuse Types, Scaling Factors, Base Matrix Values, and Maximum Matrix Values set forth in the TDP. The values and adjustment factors were selected and derived with the intention of achieving a fair and reasonable Abuse Claim valuation range in light of the best available information, considering the settlement, verdict and/or judgments that Abuse Claimants have received in the courts through lawsuits against the Protected Parties.

The TDP establishes six tiers of Abuse Types and provides the range of potential Allowed Claim Amounts in each tier. If an Allowed Abuse Claim would fall into more than one tier, it will be placed in the highest applicable tier. An Abuse Claimant cannot have multiple Allowed Abuse Claims assigned to different tiers. Under the TDP there are six possible valuation tiers based on the nature of the abuse: (1) Anal or Vaginal Penetration by Adult Perpetrator; (2) Oral Contact by Adult Perpetrator or Anal or Vaginal Penetration by a Youth Perpetrator; (3) Masturbation by Adult Perpetrator or Oral Contact by a Youth Perpetrator; (4) Masturbation by Youth Perpetrator or Touching of the Sexual or Other Intimate Parts (unclothed) by Adult Perpetrator, Touching of the Sexual or Other Intimate Parts (clothed), regardless of who is touching whom and not including masturbation, or exploitation for child pornography; (5) Touching of the Sexual or Other Intimate Parts (unclothed) by a Youth Perpetrator; and (6) Sexual Abuse – No Touching or Adult Abuse Claims. A chart regarding these tiers can be found in Article VIII of the TDP.

The Base Matrix Value for each tier represents the minimum Allowed Claim Amount for a claim assigned to a given tier ***before any adjustments are applied***. The adjustments are called Scaling Factors and are described below. The Maximum Claims Matrix value for each tier represents the maximum Allowed Claim Amount for a claim assigned to a given tier ***after adjustments (i.e., Scaling Factors) are applied***. The Settlement Trustee may ***increase*** the amount of an Allowed Abuse Claim (up to the Maximum Matrix Value) by taking into account (a) the nature and circumstances of the abuse, (b) multiple accusations of abuse against a perpetrator; and (c) the impact of the abuse on the survivor's mental and physical health, interpersonal relationships, work or academic difficulties, and other circumstances. The Settlement Trustee may ***decrease*** the amount of an Allowed Abuse Claim by taking into account (a) the existence of a familial or maintenance of a non-scouting relationship between the survivor

and perpetrator or the existence of a responsible non-Protected Party, (b) amounts received and likely to be received by the survivor from other non-Protected Party sources, (c) the impact of a statute of limitations or statute of repose and (d) the failure of the survivor to submit a timely claim against the Boy Scouts or another Protected Party.

The Settlement Trustee will send the survivor an Allowed Claim Notice after making a determination of a survivor's Allowed Claim Amount.

**4. Reconsideration**

A survivor may request reconsideration either of the disallowance of a Submitted Abuse Claim or of the Allowed Claim Amount of the survivor's claim proposed by the Settlement Trustee (a "Reconsideration Request") within thirty (30) days after receiving a Disallowed Claim Notice or an Allowed Claim Notice. The failure to timely submit a Reconsideration Request will mean the survivor has consented to the Settlement Trustee's determination regarding the survivor's claim. Each Reconsideration Request must be accompanied by (a) a check or money order for $1,000 as an administrative fee for reconsideration; and (b) any further evidence in support of the Submitted Abuse Claim. The Settlement Trustee will have sole discretion whether to grant the Reconsideration Request. The decision to grant the Reconsideration Request does not guarantee that the Settlement Trustee will reach a different result after reconsideration.

**a. Reconsideration Denied**

If the Reconsideration Request is denied, the administrative fee will not be returned, and the Settlement Trustee will notify the survivor within thirty (30) days of receiving the request that it will not reconsider the Submitted Abuse Claim. If the Reconsideration Request is granted, the Settlement Trustee will provide the Abuse Claimant written notice within thirty (30) days of receiving the Reconsideration Request that it is reconsidering the Abuse Claimant's Submitted Abuse Claim.

**b. Submitted Abuse Claim Reconsidered**

If the Settlement Trustee determines upon reconsideration that a previously disallowed Submitted Abuse Claim is an Allowed Abuse Claim or that an Allowed Abuse Claim should receive a new proposed Allowed Claim Amount, the Settlement Trustee will deliver an Allowed Claim Notice and return the administrative fee to the relevant Abuse Claimant.

If the Settlement Trustee determines upon reconsideration that the totality of the evidence submitted by the Abuse Claimant ***does not support changing the earlier finding***, the Settlement Trustee's earlier allowance determination and/or Proposed Allowed Claim Amount shall stand.

The Settlement Trustee will provide a Claim Notice to the Abuse Claimant of either result within ninety (90) days of the Settlement Trust having sent notice that it was reconsidering the Abuse Claimant's Submitted Abuse Claim.

### 5. Tort System Review

Within thirty (30) days after a survivor receives an Allowed Claim Notice or Claim Notice following a Reconsideration Request, a survivor may notify the Settlement Trust of his or her intention to seek a determination of the Abuse Claim by a court (a "TDP Tort Election Claim"). **Survivors and their attorneys considering pursuing a TDP Tort Election Claim after reconsideration should carefully review the provisions of Article XII of the TDP, which contains various parameters governing a survivor's pursuit of its Abuse Claim through the tort system.** These parameters include

- The survivor may not seek costs or expenses against the Settlement Trust in the lawsuit.

- The survivor will not have the right to introduce into evidence to the applicable court any information or documents that were requested by the Settlement Trustee and were in the possession, custody or control of the survivor but which the survivor failed to or refused to provide to the Settlement Trustee.

- If the survivor obtains a final judgment or settlement through litigation, the survivor's Allowed Claim Amount shall be the judgment or settlement amount less any payments received by the survivor.

- If the survivor resolves his, her or their Allowed Claim Amount through a TDP Tort Election Claim and the amount exceeds the Maximum Matrix Value in the applicable tier set forth in the Claims Matrix, the excess amount shall be subordinate to and only paid after the prior payment in full of all Allowed Abuse Claims determined under the TDP claims evaluation process.

- Recoveries, if any, will be obtained from the Settlement Trust pursuant to the payment provisions in the TDP, not from any Protected Party or insurance company.

## C. Up Front—Tort System Authorization

In addition to the TDP Tort Election Claim option, the Settlement Trustee may authorize the filing or the continuation of a survivor's lawsuit against the Settlement Trust in court to obtain the Allowed Claim Amount of a survivor's Abuse Claim. This means that the Settlement Trustee has the power to permit survivors to prosecute their claims in the tort system (*i.e.*, before a court) without first making a Trust Claim Submission which is why this is called and "Up Front Tort Out". There are a number of factors the Settlement Trustee will consider in determining whether a lawsuit in court will be permitted.

## FREQUENTLY ASKED QUESTIONS

***What happens next?***

First, you and other creditors affected by the Plan will vote on the Plan. If the Plan is approved, the Settlement Trust will be established and Settlement Trust assets and the Protected Parties' responsibility for all Abuse Claims will be transferred to the Settlement Trust. The Abuse Claims will be reviewed, processed, and paid (if allowed) by the Settlement Trustee using the procedures described in the TDP.

***Do survivors get to vote on whether the Bankruptcy Court should approve or disapprove the Plan?***

Yes, survivors can vote to "accept" or "reject" the Plan. If the Plan is accepted by a sufficient number of survivors (all of whom are grouped together in Class 8 of the Plan) and approved by the Bankruptcy Court, the treatment of survivors' claims described in the Plan shall apply to all survivors even if you rejected the Plan.

***How many individual survivors must vote in favor of the Plan in order for the class of survivors to accept the Plan?***

In order for a survivor's vote to be counted, that survivor must return a Ballot by the deadline established by the Bankruptcy Court. In this context, if at least two-thirds (2/3) of survivors who vote on the plan vote to accept the Plan, the class of survivors will be deemed to accept the Plan. However, for the Bankruptcy Court to approve the channeling injunction in favor of the Local Councils and other potentially Protected Parties, the Bankruptcy Court may require more than 2/3 of those voting to accept to the Plan.

***Does the Bankruptcy Court need to approve the Plan?***

Yes. If the Bankruptcy Court approves the Plan, it will be "confirmed." For the Plan to be confirmed, the Court must find that the Plan complies with the requirements of the Bankruptcy Code. The Court will also consider any objections to the Plan. Several parties in interest, including Insurance Companies, have expressed the view that the Plan violates applicable law and cannot be confirmed, even if sufficient votes in favor of the Plan are received.

***What happens if the Bankruptcy Court does not approve the Plan?***

If the Plan cannot be confirmed, because the Plan violates applicable law or the Bankruptcy Court determines that the requirements for confirmation of the Plan cannot otherwise be satisfied, the Debtors may liquidate. In that scenario a trustee would be appointed to liquidate the assets and any distribution available to abuse claimants would be significantly diminished or delayed.

***How do I vote on the Plan?***

You or your counsel will receive a Ballot, included with all of the Plan Solicitation Package. The Ballot contains instructions on how to vote, where to send or submit your Ballot, and the deadline to submit your Ballot for it to be counted. Portions of these instructions are provided above.

If your Proof of Claim authorized your attorney to be contacted about your claim filed in the Boy Scouts' bankruptcy case and your attorney elected to submit a master ballot on your behalf, your Solicitation Package, including your Ballot, will be sent to your attorney. As a result, it is important that you contact your counsel to ensure you receive the Solicitation Package so that you can inform your attorney how you want to vote on the Plan.

***What am I voting on when I vote to accept or reject the Plan?***

You are voting to approve or reject the Plan. The Plan channels claims against the Boy Scouts, Local Councils, Hartford, and TCJC (and others if they reach settlements and become Protected Parties) to the Settlement Trust. That means that responsibility of these parties for the Abuse Claim you have against them will be the responsibility of the Settlement Trust and the value of your claim, if any, will be determined by the TDP and paid from the Settlement Trust rather than from the Boy Scouts, a Local Council, Hartford, TCJC or another Protected Party. The Boy Scouts, Local Councils, Hartford, and TCJC are contributing cash and other assets to the Settlement Trust and those funds will be used to partially pay survivor claims and run the Settlement Trust. Other assets may also be transferred to the Settlement Trust to pay survivor claims and run the Settlement Trust.

One of those assets is the right to collect money from Insurance Companies that insured the Boy Scouts for survivor claims that have not settled. If the Insurance Companies do not pay what the Settlement Trust believes they owe, the Settlement Trust will sue them to collect for the benefit of survivors, and the results of such litigation is uncertain. The Settlement Trust may also try to settle with or will bring claims against other parties that are liable on survivor claims, such as Chartered Organizations that have not settled.

When deciding how to vote, you should consider whether there is a better alternative to the Plan. If the Plan is not approved, the Boy Scouts may choose to liquidate under chapter 7 or it may dismiss its chapter 11 case.

**The Coalition and the FCR believe that the approval and implementation of the global settlement among the Boy Scouts, the Local Councils, the Coalition and the FCR embodied in the Plan is in the best interests of creditors and RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.**

***Who will be in charge of the Settlement Trust?***

Under the Plan, the Settlement Trust will be administered by a Settlement Trustee. A seven (7) member Settlement Trust Advisory Committee ("STAC") composed of five (5) members selected by the Coalition and two (2) members selected by the Official Committee of

Tort Claimants will also have an oversight role as set forth in the Trust documents. The Settlement Trustee will also consult with a Sexual Abuse Survivors Advisory Committee ("SASAC") regarding Settlement Trust matters, including the Settlement Trust's enforcement of BSA's non-monetary obligations relating to its Youth Protection Program described above. The SASAC will consist of five (5) individual abuse survivors, three (3) of whom shall be selected by the ~~TCC~~Coalition, two (2) of whom shall be selected by the ~~Coalition~~TCC. The initial Settlement Trustee ~~shall~~is currently proposed to be Eric Green.[8] The initial members of the STAC shall be identified in the Plan Supplement, which will be filed no later than fourteen (14) days before the deadline for creditors to vote on the Plan. The initial members of the SASAC shall be identified by the TCC and Coalition in a filing by the same deadline.

***How much will I receive on account of my Abuse Claim from the Settlement Trust and when will I receive payment?***

It is difficult to predict the total amount of recoveries for survivors. Although there have been settlements with the Boy Scouts and Local Councils for approximately $820 million, with Hartford for approximately $787 million, and TCJC for approximately $250 million, it is not yet known how much will be collected from settlements or litigation with other Chartered Organizations and other Insurance Companies. The Coalition and the FCR believe that the amount of the recoveries from these parties (in total) will be much more than the settlements with the Boy Scouts and the Local Councils, but it could end up being much more or much less.

Similarly, the timing of distributions is somewhat unpredictable. Besides the unknown timing of when the Plan will be confirmed (assuming it is confirmed) and recoveries from Chartered Organizations and Insurance Companies that have not settled, your claim cannot be paid until its amount is determined. Although the Settlement Trust is expected to move expeditiously to value claims, as described in more detail below, a survivor has the right to request reconsideration of the Settlement Trustee's determination of the amount of the survivor's claim and, thereafter, if dissatisfied with the allowed amount upon reconsideration, the right to have his, her or their claim determined by a court in the tort system.

***Who will decide if my claim is eligible for payment?***

Survivors can choose between taking an immediate payment of $3,500~~ through an election on their Ballot~~, having their claims determined through the Trust Distribution Procedures, or obtaining authorization from the Settlement Trustee to go to court to have their claim amount determined but limited to recovery from the Settlement Trust. Choosing the Expedited Distribution option ~~on your Ballot ~~will get you money sooner but it means that you will be eligible to receive only a gross payment of $3,500 and nothing more.

All Abuse Claims that are not satisfied through the Expedited Distribution option ~~and that are submitted to the Settlement Trust pursuant to the TDP ~~will be reviewed by the Settlement Trusts' claims reviewers. The Settlement Trust's claims reviewers will review each Submitted Abuse Claim—including the Proof of Claim and Trust Claim Submission—and

~~[8] Information regarding Mr. Green may be found at: http://www.resolutionsllc.com/principals.htm.~~

determine whether it is a valid Allowed Abuse Claim or invalid Disallowed Claim. If the Settlement Trustee disallows your claim, the TDP includes a procedure for making a Reconsideration Request, as well as the option after reconsideration to seek a determination of your claim by a court.

***Do I have to provide the Settlement Trustee of the Settlement Trust with additional information regarding my claim?***

Unless you elect to take an Expedited Distribution of $3,500, you will need to make a Trust Claim Submission in order for your claim to be considered under the TDP.

***Will I be paid interest on my claim?***

No. Unfortunately, there is not expected to be enough funding to pay claims with interest.

***By way of Example, if the Settlement Trust determines that my claim is $600,000, does that mean I will be paid $600,000?***

Not necessarily. The Settlement Trustee will determine the percentage of Allowed Abuse Claims that may be paid based on the Settlement Trustee's estimates of the Settlement Trust's assets and liabilities and the amounts of known and estimated Future Abuse Claims. If additional money is recovered by the Trust, claimants may receive additional amounts up to the value of their claim determined by the Trust.

***Can I participate in the settlement, Plan and Trust Distribution Procedures, even if I don't have an attorney?***

Yes. There is no requirement to have an attorney to vote on the Plan or participate in the TDP in order to have your claim reviewed.

***Where can I obtain a copy of the Trust Distribution Procedures?***

The TDP is attached as Exhibit A to the Plan and is posted at ~~[]~~__________.

***Where can I obtain a copy of the Settlement Trust Agreement?***

The BSA Settlement Trust Agreement is attached as Exhibit B to the Plan and is posted at ~~[]~~__________.

***Why is the Settlement Trust ~~receiving~~expecting to receive only $820 million from the Boys Scouts and Local Councils ? Why not more?***

The Boy Scouts and Local Councils are ~~contributing~~expected to contribute $820 million. Hartford is ~~contributing~~expected to contribute $787 million. TCJC is contributing $250 million. There ~~are, and will~~may be~~,~~ other sources of recovery, including the from other insurance companies and Chartered Organizations. The resolution that is incorporated into the Plan—which includes the designation of $1.857 billion in assets for the payment of Abuse

Claims—is the result of over eighteen months of investigations, litigation, mediation, and other negotiations among the major interested parties in the cases, including the Coalition and the FCR. The Coalition and the FCR were sensitive to the needs of survivors in what has been a decades-long process to hold the Boy Scouts accountable for past abuses, to be afforded the opportunity to tell their stories and assert their claims for compensation, and to be assured that the Boy Scouts would implement rigorous Youth Protection Programs, subject to the Coalitions' and the FCR's input, that would ensure that similar abuses would never occur again. In agreeing to support the transfer of $1.857 billion in assets to the Settlement Trust, the Coalition and the FCR balanced the fair values of Boy Scouts and Local Councils' assets as well TCJC's and Hartford's liabilities, the time, expense, and risks involved in pursuing and recovering certain of such assets through litigation in the absence of a settlement, and the diminishing financial condition of the Boy Scouts the longer the bankruptcy cases continued. The Coalition and the FCR believe that the ~~global~~ settlement balances all of these considerations that are important to survivors to achieve a fair and equitable result.

***Can I still sue parties other than the Boy Scouts to recover my Abuse Claims?***

If the Plan is confirmed, survivors may seek recoveries against any party that is not among the Protected Parties:

| **Parties who may be sued by Survivors after confirmation of the Plan** | | |
|---|---|---|
| **Party** | **Yes** | **No** |
| Boy Scouts of America | | ● |
| Settling Insurance Company (i.e., an insurance company that issued a policy to the Boy Scouts). | | ● |
| Non-Settling Insurance Company (i.e., an insurance company that issued a policy to the Boy Scouts). | | ● |
| Local Councils | | ● |
| Settling Insurance Company (i.e., an insurance company that issued a policy to the Local Council). | | ● |
| Non-Settling Insurance Company (i.e., an insurance company that issued a policy to the Local Council). | | ● |
| Contributing Chartered Organizations (*e.g.*, TCJC) | | ● |
| Participating Chartered Organizations | | ●[~~9~~5] |
| Settling Insurance Company (i.e., an insurance company that issued a policy to the Chartered Organization). | | ● |

[~~9~~5] Participating Chartered Organizations cannot be sued on account of Abuse Claims arising on or after January 1, 1976.

| Parties who may be sued by Survivors after confirmation of the Plan | | |
|---|---|---|
| **Party** | **Yes** | **No** |
| Non-Contributing Chartered Organizations against which you may have a claim. | ●[10][6] | |
| Non-Contributing Chartered Organizations' Insurers (*i.e.*, an insurance company that issued a policy to the Chartered Organization solely to the benefit of Chartered Organization and is not shared with and does not implicate the Boy Scouts). | ●[7] | |

64164228 v1-WorkSiteUS-036293/0001

[10][6] Unless electing the Expedited Distribution.

[7] Certain insurance companies assert that this is only available if such direct action is permitted under applicable law.

| **Summary report:**<br>**Litera® Change-Pro for Word 10.8.2.11 Document comparison done on 9/27/2021 8:34:46 PM** | |
|---|---|
| **Style name:** Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://WORKSITE/WorkSiteUS/64164228/1 | |
| **Modified DMS:** iw://WORKSITE/WorkSiteUS/64164209/3 | |
| **Changes:** | |
| Add | 57 |
| Delete | 69 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 126 |