# **EXHIBIT D**

**(Blackline of Direct Abuse Individual Ballot)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>              Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

**BALLOT FOR CLASS 8 (DIRECT ABUSE CLAIMS)**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING YOUR BALLOT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**ACCESS TO SOLICITATION MATERIALS:**

**THE PLAN, THE DISCLOSURE STATEMENT, AND THE SOLICITATION PROCEDURES ORDER MAY BE ACCESSED, FREE OF CHARGE, AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA-SABALLOTS.**

**YOU HAVE RECEIVED A PAPER FORMAT OF THESE MATERIALS WITH THIS SOLICITATION PACKAGE. IF YOU NEED TO OBTAIN ADDITIONAL SOLICITATION PACKAGES, PLEASE CONTACT OMNI AGENT SOLUTIONS (THE "SOLICITATION AGENT") BY (A) CALLING THE DEBTORS' RESTRUCTURING HOTLINE AT 866-907-2721, (B) EMAILING BSABALLOTS@OMNIAGNT.COM, (C) WRITING TO BOY SCOUTS OF AMERICA BALLOT PROCESSING, C/O OMNI AGENT SOLUTIONS, 5955 DE SOTO AVENUE, SUITE 100, WOODLAND HILLS, CA 91367, OR (D) SUBMITTING AN INQUIRY ON THE DEBTORS' RESTRUCTURING WEBSITE AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY 4:00 P.M. (EASTERN TIME) ON [●], 2021 (THE "VOTING DEADLINE").**

**IF YOU VOTE TO ACCEPT OR REJECT THE PLAN, YOU WILL BE RELEASING THE RELEASED PARTIES FROM ANY AND ALL CLAIMS/CAUSES OF ACTION TO THE EXTENT PROVIDED IN ARTICLE X.J.4 OF THE PLAN UNLESS YOU "OPT-OUT" OF SUCH RELEASES. YOU MAY "OPT-OUT" OF SUCH RELEASES AND YOU MUST INDICATE SUCH "OPT-OUT" IN THE BALLOT.**

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

Pursuant to this ballot (this "Ballot"), the above-captioned debtors and debtors-in-possession (together, the "Debtors") are soliciting votes from holders of Class 8 Direct Abuse Claims on the *Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"), which is described in greater detail in that certain disclosure statement regarding the Plan, filed on [●], 2021 [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"). Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable. On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. [●]] (the "Solicitation Procedures Order") approving the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code and the procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code, which is a mechanism by which Abuse Claims will be channeled to a Settlement Trust established pursuant to section 105(a) of the Bankruptcy Code. For a description of the causes of action to be enjoined and the identities of the Entities that would be subject to these injunctions, see **Article VI.Q** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

The Debtors have compiled a list of all potential Protected Parties and potential Limited Protected Parties under the Plan, including the identities of all Local Councils, Chartered Organizations, and Insurance Companies. If the Plan is confirmed, to the extent any such parties participate, they will be included in the definition of Protected Parties or Limited Protected Parties and will benefit from the Channeling Injunction. This list of potential Protected Parties and Limited Protected Parties is available at https://omniagentsolutions.com/bsa-SAballots. **This list only includes *potential* Protected Parties and Limited Protected Parties—it does not mean that any such party will in fact become a Protected Party or Limited Protected Party under the Plan.**

You are receiving this Ballot because you have asserted a Claim against the Debtors that arises from Abuse[2] that occurred prior to the Petition Date (as defined in the Plan, a "Direct Abuse Claim"). Your Direct Abuse Claim is classified under the Plan in Class 8 (Direct Abuse Claims). Accordingly, you have a right to vote to accept or reject the Plan.

---

[2]    "Abuse" means sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, indecent assault or battery, rape, pedophilia, ephebophilia, sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction, or intimidation, any other sexual misconduct or injury, contacts or interactions of a sexual nature, including the use of photography, video, or digital media, or other physical abuse or bullying or harassment without regard to whether such physical abuse or bullying is of a sexual nature, between a child and an adult, between a child and another child, or between a non-consenting adult and another adult, in each instance without regard to whether such activity involved explicit force, whether such activity involved genital or other physical contact, and whether there is or was any associated physical, psychological, or emotional harm to the child or non-consenting adult.

2

> IMPORTANT INFORMATION REGARDING THE ELECTION TO RECEIVE
> AN EXPEDITED DISTRIBUTION OF $3,500.00: **Each holder of a properly completed non-duplicative proof of claim asserting a**

**Direct Abuse Claim who filed such Claim by the Bar Date or was permitted by a Final Order of the Bankruptcy Court to file a late claim may elect at Item 3 of this Ballot to receive an Expedited Distribution, which, as specified in the Plan, is a one-time Cash payment from the Settlement Trust in the amount of $3,500.00 conditioned upon satisfaction of the criteria set forth in the Trust Distribution Procedures, in exchange for a full and final release in favor of the Settlement Trust, the Protected Parties and the Chartered Organizations.**

The Settlement Trust shall make the Expedited Distributions on or as soon as reasonably practicable after the latest to occur of (a) the Effective Date, (b) the date the applicable holders of Direct Abuse Claims who have elected to receive an Expedited Distribution have satisfied the criteria set forth in the Trust Distribution Procedures, and (c) the date upon which the Settlement Trust has sufficient Cash to fund the full amount of the Expedited Distributions while retaining sufficient Cash reserves to fund applicable Settlement Trust Expenses, as determined by the Settlement Trustee. **This election must be made on a properly and timely completed and delivered Ballot in accordance with the instructions set forth herein, and shall only be effective if the Plan is confirmed and the Effective Date occurs.**

Your rights are described in the Disclosure Statement for the Plan and the Solicitation Procedures Order. **This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Solicitation Agent immediately via the contact information set forth above.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.** To have your vote counted, you must complete, sign, and return this Ballot to the Solicitation Agent by the Voting Deadline.

If you vote to accept or reject the Plan, you will be deemed to provide the releases in **Article X.J.4** of the Plan and as set forth below unless you opt out of such releases. You may check the box below to opt out of the releases in **Article X.J.4** of the Plan. Please be advised that the Plan also contains injunction and exculpation provisions, certain of which are set forth below. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt out of the releases in **Article X.J.4** of the Plan by this Ballot. For a full description of these provisions, see **Article VI.Q** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

**You should carefully review the Disclosure Statement and the Plan, including the Plan's injunction, exculpation, and release provisions, as the rights of holders of Direct Abuse Claims may be affected thereunder. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.**

*[Remainder of Page Intentionally Left Blank]*

DOCS_SF:106111.2 85353/002

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW.  PLEASE FILL IN ALL OF THE INFORMATION REQUESTED UNDER ITEM 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.  Amount of Claim.**

For purposes of voting to accept or reject the Plan, the undersigned certifies that as of the Voting Record Date, the undersigned holds a Direct Abuse Claim in the amount set forth below. **Please note that, except as otherwise may be set forth in the Disclosure Statement and Solicitation Procedures Order, each Direct Abuse Claim in Class 8 has been temporarily allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance, or any other purpose.**

---

**Debtor:**  _____

**Claim(s) Amount:**  $1.00

---

**Item 2. Vote on the Plan.**

Please vote either to accept or to reject the Plan with respect to your Claims in Class 8 below (please check one).  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

Prior to voting on the Plan, please note the following:

If you vote to accept or reject the Plan, you shall be deemed to have consented to the release set forth in Article X.J.4 of the Plan unless you opt out of the release by checking the box in Item 4 below.

If you abstain from voting, you shall not be deemed to have consented to the release provisions set forth in Article X.J.4 of the Plan.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions in Article X of the Plan.

---

**Check only one box:**

☐          **ACCEPT (*I.E.*, VOTE IN FAVOR OF)** the Plan

---

5

☐    **REJECT (*I.E.*, VOTE AGAINST) the Plan**

**Item 3.** **Expedited Distribution Election.**

**Please note that if you make the Expedited Distribution election set forth in Item 3, you must still complete the remaining Items on this Ballot.**

If the Plan is confirmed as set forth above and in the Plan, the holder of an eligible Direct Abuse Claim ELECTS to:

Receive the Expedited Distribution of a one-time Cash payment from the Settlement Trust in the amount of $3,500.00 conditioned upon satisfaction of the criteria set forth in the Trust Distribution Procedures, in exchange for a full and final release in favor of the Settlement Trust, the Protected Parties, and the Chartered Organizations.

**Item 4.** **Optional Release Election.**

Unless a holder of a Class 8 Claim who votes to accept or reject the Plan opts out of the Releases by holders of Claims set forth below, such holder shall be deemed to have consented to the releases contained in <u>Article X.J.4</u> of the Plan, which provides as follows:

<u>Article X.J.4 of the Plan—Releases by Holders of Claims.</u>

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[3] to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be

---

[3]    "<u>Released Parties</u>" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Creditors' Committee; (e) the members of the Creditors' Committee in their capacities as such; (f) the Tort Claimants' Committee; (g) the members of the Tort Claimants' Committee in their capacities as such; (h) the Future Claimants' Representative; (i) the Coalition; (j) JPM; (k) the Settling Insurance Companies, including Hartford; (l) the Contributing Chartered Organizations, including TCJC; (m) the Foundation, in its capacity as lender under the Foundation Loan Agreement; (n) the Ad Hoc Committee; (o) the members of the Ad Hoc Committee in their capacities as such; (p) the Creditor Representative; (q) the Mediators; and (r) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Released Party; provided further, that the definition of "Released Parties" shall in all instances be subject to <u>Article X.J.</u> of the Plan.

DOCS_SF:106111.2 85353/002

extended subsequent to the Effective Date, all Releasing Claim Holders[4] shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in Article X.J.4 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Abuse Litigation Claim to recover on account of such Allowed Claim in accordance with Article III.B.9 of the Plan.  Notwithstanding the foregoing or anything to the contrary herein, (i) with respect to holders of Allowed General Unsecured Claims or Allowed Non-Abuse Litigation Claims, nothing in the Plan or the release set forth in Article X.J.4 of the Plan  shall, or shall be construed to, release any claims or Causes of Action against any Local Council, Chartered Organization, or Non-Settling Insurance Company (subject to Article IV.D.3 of the Plan)and (ii) nothing in the Plan or the release set forth in Article X.J.4 of the Plan shall, or shall be construed to, release any claims or Causes of Action

---

[4]   "Releasing Claim Holder" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in Article X.J.4 of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in Article X.J.4 of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in Article X.J.4 of the Plan; and (d) all of such Persons' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs , executors, estates, servants and nominees, in their respective capacities as such.

asserted by Century Indemnity Company against Sidley Austin LLP ("Sidley") related to Sidley's representation of the Debtors prior to the Petition Date.

**Article X.J.5 of the Plan—Releases Relating to Contributing Chartered Organizations.**

  **a. In furtherance of the Abuse Claims Settlement, as of the date that the Confirmation Order and Affirmation Order become Final Orders, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Confirmation Order, and the terms of the TCJC Settlement Agreement, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Contributing Chartered Organizations,[5] including TCJC, shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge the Debtors, Reorganized BSA, the Related Non-Debtor Entities, the Local Councils, the other Protected Parties,[6] the Limited Protected Parties,[7] the Settling Insurance Companies, including Hartford, the Future Claimants' Representative, the Coalition, the Settlement Trust, and each of its and their respective Representatives (collectively, the "Settlement Parties"), of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the date that the Confirmation Order and Affirmation Order become Final Orders (including before the Petition Date) in connection with or related to (i) Abuse Claims, (ii) the Chapter 11 Cases, (iii) the Plan, or (iv) any Claims that were or could have**

---

[5] "Contributing Chartered Organizations" means the current or former Chartered Organizations listed on Exhibit D to the Plan, including any Chartered Organization made a Protected Party under a Post-Effective Date Chartered Organization Settlement approved by the Bankruptcy Court in accordance with Article IV.I of the Plan.  No Participating Chartered Organization shall be considered a Contributing Chartered Organization based solely on the Participating Chartered Organization Insurance Assignment.  Without limiting the foregoing, subject to Confirmation of the Plan and approval of the TCJC Settlement Agreement by an order of the Bankruptcy Court (including in the Confirmation Order), TCJC is a Contributing Chartered Organization and shall be designated as such in the Confirmation Order and the Affirmation Order.

[6] "Protected Parties" means the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Contributing Chartered Organizations; (f) the Settling Insurance Companies, including Hartford; and (g) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Protected Party.  Notwithstanding the foregoing, a Contributing Chartered Organization shall be a Protected Party with respect to Abuse Claims only as set forth in the definition of "Abuse Claim."

[7] "Limited Protected Parties" means the Participating Chartered Organizations, which means a Chartered Organization that does not (a) object to confirmation of the Plan or (b) inform Debtors' counsel in writing on or before the confirmation objection deadline that it does not wish to make the Participating Chartered Organization Insurance Assignment.  Notwithstanding the foregoing, with respect to any Chartered Organization that is a debtor in bankruptcy as of the Confirmation Date, such Chartered Organization shall be a Participating Chartered Organization only if it advises Debtors' counsel in writing that it wishes to make the Participating Chartered Organization Insurance Assignment, and, for the avoidance of doubt, absent such written advisement, none of such Chartered Organization's rights to or under the Abuse Insurance Policies shall be subject to the Participating Chartered Organization Insurance Assignment.  A list of Chartered Organizations that are not Participating Chartered Organizations is attached to the Plan as Exhibit K.

DOCS_SF:106111.2 85353/002

been asserted by the Contributing Chartered Organizations against the Settlement Parties or any of them.

**b.** In furtherance of the Abuse Claims Settlement, as of the date that the Confirmation Order and Affirmation Order become Final Orders, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Confirmation Order, and the terms of the TCJC Settlement Agreement, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Settlement Parties shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each of the Contributing Chartered Organizations, including TCJC, of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the date that the Confirmation Order and Affirmation Order become Final Orders (including before the Petition Date) in connection with or related to (i) Abuse Claims, (ii) the Chapter 11 Cases, (iii) the Plan, or (iv) any Claims that were or could have been asserted by the Settlement Parties against the Contributing Chartered Organizations or any of them.

If you voted to accept or reject the Plan in Item 2 above, check this box if you elect not to grant the release contained in Article X.J.4 of the Plan.

---

The undersigned, as a holder of (or representative of a holder of) a Class 8 Claim, elects to:

⬚ **Opt out of the third party release in Article X.J.4 of the Plan.**

---

**Certain other Releases, Injunction and Exculpation Provisions Contained in the Plan**

**Article X.F of the Plan—Channeling Injunction.**

**Terms.** To preserve and promote the settlements contemplated by and provided for in the Plan, including the Abuse Claims Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, and to supplement, where necessary, the injunctive effect of the Discharge as provided in sections 1141 and 524 of the Bankruptcy Code and as described in Article X of the Plan, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court and the District Court under section 105(a) of the Bankruptcy Code, (a) the sole recourse of any holder of an Abuse Claim against a Protected Party on account of such Abuse Claim shall be to and against the Settlement Trust pursuant to the

DOCS_SF:106111.2 85353/002

**Settlement Trust Documents,[8] and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Protected Party or any property or interest in property of any Protected Party, and (b) the sole recourse of any holder of a Post-1975 Chartered Organization Abuse Claim against a Limited Protected Party on account of such Post-1975 Chartered Organization Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Post-1975 Chartered Organization Abuse Claim against any Limited Protected Party or any property or interest in property of any Limited Protected Party.  On and after the Effective Date, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Abuse Claim against the Protected Parties, or any of them, or any Post-1975 Chartered Organization Abuse Claim against the Limited Protected Parties, or any of them, shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Protected Party with respect to any such Abuse Claim or from any Limited Protected Party with respect to any such Post-1975 Chartered Organization Abuse Claim, other than from the Settlement Trust pursuant to the Settlement Trust Documents, including:**

      **c.**     **commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;**

      **d.**     **enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;**

      **e.**     **creating, perfecting, or otherwise enforcing in any manner, whether directly or indirectly, any Encumbrance of any kind against any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;**

      **f.**     **asserting, implementing or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party; or**

---

[8]  "Settlement Trust Documents" means, collectively, (a) the Settlement Trust Agreement, (b) the Trust Distribution Procedures, (c) the Document Agreement, (d) the Confirmation Order, and (e) any other agreements, instruments and documents governing the establishment, administration and operation of the Settlement Trust, which shall be substantially in the forms set forth as exhibits in the Plan or in the Plan Supplement, as the same may be amended or modified from time to time in accordance with the terms thereof.

DOCS_SF:106111.2 85353/002

**g.** taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Abuse Claim or Post-1975 Chartered Organization Abuse Claim.

<u>Reservations</u>. Notwithstanding anything to the contrary in <u>Article X.F</u> of the Plan, the Channeling Injunction shall not enjoin:

**a.** the rights of holders of Abuse Claims or Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims solely against the Settlement Trust in accordance with the Trust Distribution Procedures, including the ability to pursue the Settlement Trust in the tort system as described in Article XII of the Trust Distribution Procedures;

**b.** the rights of holders of Abuse Claims to assert such Abuse Claims against anyone other than a Protected Party or, in the case of Post-1975 Chartered Organization Abuse Claims, against anyone other than a Limited Protected Party;

**c.** prior to the date that an Entity (other than an Insurance Company) becomes a Protected Party under <u>Article IV.I</u> of the Plan, the right of holders of Abuse Claims to assert such Abuse Claims against such Entity;

**d.** prior to the date that a Chartered Organization becomes a Limited Protected Party under <u>Article IV.J</u> of the Plan, the right of holders of Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims against such Entity;

**e.** the rights of holders of Abuse Claims that are not Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims against any Limited Protected Party (unless such Limited Protected Party becomes a Protected Party under <u>Article IV.I</u> of the Plan);

**f.** the right of any Person to assert any Claim, debt, obligation or liability for payment of Settlement Trust Expenses solely against the Settlement Trust in accordance with the Settlement Trust Documents;

**g.** the Settlement Trust from enforcing its rights under the Plan and the Settlement Trust Documents; or

**h.** the rights of the Settlement Trust to prosecute any action against any Non-Settling Insurance Company based on or arising from Abuse Insurance Policies that are not the subject of an Insurance Settlement Agreement, subject to any Insurance Coverage Defenses<u>Article X.J.1 of the Plan—Releases by the Debtors and the Estates</u>.

11

**Article X.J.1 of the Plan—Releases by the Debtors and the Estates.**

**Releases by the Debtors and the Estates of the Released Parties.** As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the Abuse Claims Settlement, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article X.J.1 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

**Releases by the Debtors and the Estates of Certain Avoidance Actions.** As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of Creditors' Committee and its members in their respective capacities as such in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized BSA, and the

Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Abuse Litigation Claims, and Convenience Claims of and from any and all Avoidance Actions.

**Article X.J.3 of the Plan—Releases by Holders of Abuse Claims.**

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Protected Parties and the Limited Protected Parties to facilitate and implement the reorganization of the Debtors, including the settlements embodied in the Plan, including the Abuse Claims Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all holders of Abuse Claims shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release: (a) each and all of the Protected Parties and their respective property and successors and assigns of and from all Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Abuse Claims; and (b) each and all of the Limited Protected Parties and their respective property and successors and assigns of and from all Post-1975 Chartered Organization Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Post-1975 Chartered Organization Abuse Claims; provided, however, that the releases set forth in Article X.J.3 of the Plan shall not, and shall not be construed to: (i) release any Protected Party or Limited Protected Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (ii) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (iii) modify, reduce, impair or otherwise affect the ability of any holder of an Abuse Claim to recover on account of such Claim in accordance with Article III. B.10 or Article III.B.11 of the Plan, as applicable.

13

**Article X.K of the Plan—Exculpation.**

From and after the Effective Date, none of the Exculpated Parties[9] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or before the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the JPM/Creditors' Committee Settlement, the Hartford Insurance Settlement Agreement, the TCJC Settlement Agreement, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct).  In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence.  Notwithstanding the foregoing or any provision of the Plan to the contrary, Sidley shall not be an Exculpated Party with respect to any claims that Century Indemnity Company asserts against Sidley related to Sidley's representation of the Debtors prior to the Petition Date.

**Article X.L of the Plan—Injunctions Related to Releases and Exculpation.**

**Injunction Related to Releases.**  As of the Effective Date, all holders of Claims that are the subject of **Article X.J** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.1** of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is the subject of **Article X.J** of the Plan from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

---

[9]   "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Creditors' Committee; (d) the members of the Creditors' Committee in their capacities as such; (e) the Tort Claimants' Committee; (f) the members of the Tort Claimants' Committee in their capacities as such; (g) the Future Claimants' Representative; (h) the Creditor Representative; and (i) all of such Persons' current officers and directors, former officers and directors who served in such capacity during the pendency of the Chapter 11 Cases but are no longer officers or directors as of the Effective Date, employees, volunteers, agents, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals.

**Injunction Related to Exculpation.  As of the Effective Date, all holders of Claims that are the subject of Article X.K of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Article X.E of the Plan or released under Article X.J of the Plan; provided, however, that the injunctions set forth in Article X.L.2 of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of Article X.K  of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.**

**Item 4. Certifications, Acknowledgment, Signature and Date**.

By signing this Ballot, the holder of the Class 8 Direct Abuse Claim (or authorized signatory of such holder) acknowledges receipt of the Disclosure Statement, the Plan, and the other applicable solicitation materials, and certifies that:

(i)     it has the power and authority to vote to accept or reject the Plan,

(ii)     it was the holder (or is entitled to vote on behalf of such holder) of the Class 8 Direct Abuse Claim described in Item 1 as of the Voting Record Date,

(iii)     it has not submitted any other Ballots for other Class 8 Direct Abuse Claims, or if it has submitted any other Ballots with respect to such Claims, then any such Ballots date earlier in time are hereby revoked,

(iv)     it acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of such Entity as a holder of a Class 8 Claim,

(v)     it understands and, if accepting the Plan, agrees with the treatment provided for its Claim(s) under the Plan,

(vi)     it understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

(vii)     all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees,

successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.  The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

| | |
|---|---|
| Print or Type Name of Claimant: | _____ |
| Last Four Digits of Social Security Number of Claimant: | _____ |
| Birthdate of Claimant (MM/DD/YY): | _____ |
| Signature: | _____ |
| Name of Signatory (if different than Claimant): | _____ |
| If by Authorized Agent, Title of Agent: | _____ |
| Street Address: | _____ |
| City, State, Zip Code: | _____ |
| Telephone Number: | _____ |
| Email Address: | _____ |
| Date Completed: | _____ |

**IF THIS BALLOT IS NOT RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE [●], 2021 AT 4:00 P.M. (EASTERN TIME), YOUR VOTE WILL NOT BE COUNTED.**

**Ballots must be delivered to the Solicitation Agent (a) via the electronic Ballot submission platform on the Solicitation Agent's website (the "E-Ballot Platform") by**

DOCS_SF:106111.2 85353/002

visiting https://omniagentsolutions.com/bsa-SAballots, and following the instructions set forth on the website, or (b) at the appropriate address listed below, or in the enclosed envelope, as applicable. **You are highly encouraged to submit your Ballot via the E-Ballot Platform. If you choose to submit your Ballot via the E-Ballot Platform, you should NOT submit a hard copy Ballot. Please choose only one method for returning your Ballot.**

| If by E-Ballot Platform: | If by standard or overnight mail or personal delivery: |
|---|---|
| https://omniagentsolutions.com/bsa-SAballots | **Boy Scouts of America Ballot Processing**<br>**c/o Omni Agent Solutions**<br>**5955 De Soto Avenue, Suite 100**<br>**Woodland Hills, CA 91367** |

**To submit your Ballot via the E-Ballot Platform, please visit https://omniagentsolutions.com/bsa-SAballots and follow the instructions to submit your Ballot.**

The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email or other means of electronic transmission will not be counted. Holders of Claims who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

If you have questions about this Ballot, or if you did not receive access to a copy of the Plan or any related materials, please contact the Solicitation Agent by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.

Information may also be obtained at https://omniagentsolutions.com/bsa-SAballots. **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtors or any other party for payment purposes.

<u>**INSTRUCTIONS FOR COMPLETING YOUR BALLOT**</u>

To properly complete this Ballot, you must follow the procedures described below, which explain each of the items contained on your Ballot. If you have any questions, please contact the Solicitation Agent using the contact information provided above or visit https://omniagentsolutions.com/bsa-SAballots.

**1.      Use of Online Ballot Portal—If Submitting Your Vote Through the E-Ballot Platform:**

The Solicitation Agent will accept Ballots if properly completed through the E-Ballot Platform. To submit your Ballot via the E-Ballot Platform, visit https://omniagentsolutions.com/bsa-SAballots and follow the instructions to submit your Ballot.

17

The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via online or electronic submission. **Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.** Creditors who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

**Use of Hard Copy Ballot—If Submitting Your Vote Through Standard or Overnight Mail or Personal Delivery:**

Submit your completed and signed Ballot by standard mail using the pre-addressed envelope included in the Solicitation Package, or by overnight mail or personal delivery to:

> Boy Scouts of America Ballot Processing
> c/o Omni Agent Solutions
> 5955 De Soto Avenue, Suite 100
>
> Woodland Hills, CA 91367

**The Solicitation Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2.     **To fill out your Ballot, you must complete the following:**

a.     **Item 1 (Amount of Claim)**.  **Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each Direct Abuse Claim in Class 8 has been allowed in the amount of $1.00 for voting purposes only, and shall not be binding upon the holder of the Direct Abuse Claim, the Debtors, the Settlement Trust, or any other party for any purpose other than voting on the Plan.**

b.     **Item 2 (Vote on the Plan)**.  Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2.  You must vote the entire amount of your Direct Abuse Claim either to accept (*i.e.*, vote in favor of) or reject (*i.e.*, vote against) the Plan and you may not split your vote.  Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

c.     If you hold Claims in more than one class, you may receive more than one Ballot or Solicitation Package, labeled for a different class of Claims.  Your vote will be counted in determining acceptance or rejection of the Plan by a particular class of Claims only if you complete, sign, and return the Ballot labeled for such class of Claims in accordance with the instructions on that Ballot.

d.     **Item 3 (Expedited Distribution Election)**. If the Plan is confirmed, if you have properly completed a non-duplicative proof of claim asserting a Direct Abuse Claim and filed such Claim by the Bar Date or were permitted by a Final Order of the Bankruptcy Court to file a late claim, you may elect in Item 3 to receive an Expedited Distribution, which, as specified in the Plan, is a one-time Cash payment from the Settlement Trust in the amount of $3,500.00 conditioned upon satisfaction of the criteria set forth in the Trust Distribution Procedures, in exchange for a full and final release in favor of the Settlement Trust, the Protected Parties, and

18

the Chartered Organizations. The Settlement Trust shall make the Expedited Distributions on one or more dates occurring on or as soon as reasonably practicable after the latest to occur of (a) the Effective Date or (b) the date the applicable holders of Direct Abuse Claims who have elected to receive an Expedited Distribution have satisfied the criteria set forth in the Trust Distribution Procedures, and (c) the date upon which the Settlement Trust has sufficient Cash to fund the full amount of the Expedited Distributions while retaining sufficient Cash reserves to fund applicable Settlement Trust Expenses, as determined by the Settlement Trustee. **This election must be made in Item 3 on a properly and timely completed and delivered Ballot.**

e. **Item 4 (Releases)**. Pursuant to Article X of the Plan, the Debtors seek approval of the release provision set forth in Article X.J.4 of the Plan and provided above. Holders of Direct Abuse Claims who vote to accept or reject the Plan may opt out of this release by checking the box in Item 3.

---

**IF THE PLAN BECOMES EFFECTIVE, AS A HOLDER OF A DIRECT ABUSE CLAIM UNDER THE PLAN, IF YOU VOTE TO ACCEPT OR REJECT THE PLAN YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE X.J.4 OF THE PLAN, AS SET FORTH ABOVE, UNLESS YOU CHECK THE BOX IN ITEM 4 TO OPT OUT OF THE RELEASES.**

---

f. e. **Item 45 (Certifications, Acknowledgement, Signature, and Date)**. Either the claimant, the claimant's personal representative, or the claimant's attorney must sign the Ballot. If the Ballot is not signed, the vote shown on the Ballot will not be counted.

g. f. Claimants with Social Security Numbers must provide the last four digits of their Social Security Number in Item 4 of the Ballot.

h. g. The claimant, the claimant's personal representative, or the claimant's attorney, must certify certain information on the Ballot. Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

i. h. By signing the Ballot, you make the following certifications on information and belief:

(i)  I have the power and authority to vote to accept or reject the Plan,

(ii)  I am the holder (or am entitled to vote on behalf of such holder) of the Direct Abuse Claim described in Item 1 as of the Voting Record Date,

(iii)  I have not submitted any other Ballots for other Class 8 Direct Abuse Claims, or if I have submitted any other Ballots with respect to such Claims, then any such Ballots date earlier in time are hereby revoked,

(iv)  I acknowledge that a vote to accept the Plan constitutes an acceptance of the treatment of my Claim as a Class 8 Claim,

(v)  I understand and, if accepting the Plan, agree with the treatment provided for my Claim(s) under the Plan,

(vi)  I understand and acknowledge that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot

19

voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

(vii)    all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

**3.    Other Instructions for Completing the Ballots:**

a.    The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of a Claim or Interest.

b.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

c.    If you submit more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Solicitation Agent and received by the Solicitation Agent before the Voting Deadline will supersede and revoke any prior Ballot.

d.    If more than one Ballot is received from the holder of a Direct Abuse Claim entitled to vote <u>and</u> from an attorney purporting to represent such holder (including in accordance with procedures related to Master Ballots) prior to the Voting Deadline, the Ballot received from the holder of the Direct Abuse Claim entitled to vote will be counted.

e.    To the extent you have received two (2) or more duplicative Ballots on account of the same Direct Abuse Claim, please note that each claimant is authorized to submit only one Ballot on account of such Claim.

f.    In the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

g.    There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

DOCS_SF:106111.2 85353/002

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS INCLUDED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.**

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT, DID NOT RECEIVE INSTRUCTIONS REGARDING ACCESSING THE DISCLOSURE STATEMENT OR PLAN, RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT:**

| | |
|---|---|
| **TELEPHONE:** | **866-907-2721** |
| **EMAIL:** | **BSAballots@omniagnt.com** |
| **ADDRESS:** | **Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367** |
| **WEBSITE:** | **https://omniagentsolutions.com/BSA** |

21

Document comparison by Workshare 9.5 on Sunday, September 26, 2021
10:55:48 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_SF/106111/1 |
| Description | DOCS_SF-#106111-v1-BSA_-_Direct_Abuse_Ballot_(Individual) |
| Document 2 ID | PowerDocs://DOCS_SF/106111/2 |
| Description | DOCS_SF-#106111-v2-BSA_-_Direct_Abuse_Ballot_(Individual) |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 21 |
| Deletions | 5 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 26 |