# Exhibit A

**Revised Proposed Solicitation Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Ref. D.I. 2295, 2726, 4112, 5488, 6215, 6386, 6420 & ___** |

**ORDER (I) APPROVING THE DISCLOSURE STATEMENT
AND THE FORM AND MANNER OF NOTICE, (II) APPROVING
PLAN SOLICITATION AND VOTING PROCEDURES, (III) APPROVING
FORMS OF BALLOTS, (IV) APPROVING FORM, MANNER, AND SCOPE OF
CONFIRMATION NOTICES, (V) ESTABLISHING CERTAIN DEADLINES IN
CONNECTION WITH APPROVAL OF THE DISCLOSURE STATEMENT AND
CONFIRMATION OF THE PLAN, AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtors for entry of an order (this "Solicitation Procedures Order"), pursuant to sections 105(a), 502, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3003, 3016, 3017, 3018, 3020, 9006, and 9008, and Local Rules 2002, 3017-1, and 9006-1, (a) approving the Disclosure Statement for the Plan, (b) approving the form and manner of the Disclosure Statement Hearing Notice in respect of the Disclosure Statement Hearing, (c) establishing the Solicitation Procedures, (d) approving the form and manner of the Abuse Claim Solicitation Notice and Abuse Survivor Plan Solicitation Directive, (e) approving the forms of Ballots, (f) approving the date, time, manner, and scope of the Confirmation Notices in respect of the Confirmation Hearing, (g) establishing certain deadlines in connection with the foregoing, and (h) granting related relief, all as more fully set forth in the

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion, the Disclosure Statement, or the Plan, as applicable.

Motion; and this Court having jurisdiction to consider the Motion in accordance with 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Debtors having consented to entry of a final order by this Court under Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice of and opportunity for a hearing on the Motion having been given and no other or further notice being necessary; and upon the record herein; and after due deliberation thereon; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    Notice of the Disclosure Statement Hearing, provided in the manner described in the Motion and the form of which was attached to the Motion as **Exhibit B**, was sufficient and appropriate under the circumstances and complied with the applicable requirements of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules, and no further notice is needed.

B.    The Disclosure Statement, as may be modified and amended in accordance with the record at the Disclosure Statement Hearing, contains "adequate information" regarding the Plan within the meaning of section 1125 of the Bankruptcy Code.  No further information is deemed necessary or required.

C.    The Disclosure Statement complies with Bankruptcy Rule 3016(c) and describes, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction, exculpation, and release provisions contained in the Plan.

D.      The Solicitation Procedures attached hereto as **Exhibit 1** provide a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code and the applicable Bankruptcy Rules.

E.      The contents of the Solicitation Packages and other notices, as set forth in the Motion and the Solicitation Procedures, comply with Bankruptcy Rules 2002 and 3017 and constitute sufficient notice to all interested parties of the Record Date, the Voting Deadline, the Plan Objection Deadline, the Confirmation Hearing, the Plan, the procedures described to solicit votes to accept or reject the Plan and related matters to all interested parties.

F.      With respect to holders of Direct Abuse Claims, the proposed procedures for the distribution of the Solicitation Packages, including the Abuse Claim Solicitation Notice and Abuse Survivor Plan Solicitation Directive, substantially in the form attached hereto as **Exhibit 11**, the Master Ballot, the procedures for the submission of votes to accept or reject the Plan by Firms representing multiple holders of Direct Abuse Claims, and the related procedures for the solicitation of votes to accept or reject the Plan from the holders of Direct Abuse Claims, comply with Bankruptcy Rule 3017 and are adequate under the circumstances.

G.      The forms of Ballots, substantially in the forms attached hereto as **Exhibits 2-1**, **2-2**, **2-3**, **2-4**, **2-5**, **2-6**, and **2-7**, including all instructions provided therein, (i) are sufficiently consistent with Official Form No. 314 to be approved, (ii) adequately address the particular needs of these Chapter 11 Cases, and (iii) are appropriate for the Voting Classes of Claims entitled to vote to accept or reject the Plan.  No further information or instructions are necessary.

H.      Pursuant to the Plan, the holders of Claims in Class 3A (2010 Credit Facility Claims), Class 3B (2019 RCF Claims), Class 4A (2010 Bond Claims), Class 4B (2012 Bond Claims), Class 5 (Convenience Claims), Class 6 (General Unsecured Claims), Class 7 (Non-

Abuse Litigation Claims), Class 8 (Direct Abuse Claims), and Class 9 (Indirect Abuse Claims) are impaired and entitled to receive distributions under the Plan. Accordingly, holders of Claims in such classes are entitled to vote on account of such Claims.

I.      Ballots need not be provided to holders of Claims or Interests in the Non-Voting Classes (Classes 1, 2 and 10). Classes 1 and 2 are Unimpaired and are conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. Class 10 is Impaired and is not receiving any distribution under the Plan, and is therefore deemed to reject the Plan in accordance with section 1126(g) of the Bankruptcy Code.

J.      The form of Non-Voting Status Notice, substantially in the form attached hereto as **Exhibit 5**, complies with Bankruptcy Rule 3017(d) and, together with the Confirmation Hearing Notice, provide adequate notice to the holders of Claims and Interests in the Non-Voting Classes (or other holders of Claims or Interests that are otherwise deemed not entitled to vote to accept or reject the Plan) of their non-voting status. No further notice is deemed necessary or required.

K.      The form of Summary Regarding Chartered Organizations' Options Under the BSA's Chapter 11 Plan (the "Chartered Organization Notice") and the form of Plan Summary and Frequently Asked Questions (the "Abuse Survivor Plan Summary"), substantially in the forms attached hereto as **Exhibit 12** and **Exhibit 13**, respectively, comply with Bankruptcy Rule 3017(d) and, together with the Confirmation Hearing Notice, provide adequate notice to the Chartered Organizations and to holders of Direct Abuse Claims regarding the Plan. No further notice is deemed necessary or required.

L.      The period during which the Debtors may solicit votes on the Plan is a reasonable and adequate period of time for holders of Claims entitled to vote on the Plan to make an informed

decision to accept or reject the Plan and timely return Ballots evidencing such decision.

M.      The combination of direct and published notice of the Plan and Confirmation Hearing, including, without limitation, the Confirmation Hearing Notice and Publication Notice, substantially in the forms attached hereto as **Exhibits 3** and **4**, provides good and sufficient notice of the Plan, the Confirmation Hearing, and the opportunity to vote on and object to the Plan, complies with Bankruptcy Rules 2002 and 3017, and satisfies the requirements of due process with respect to all known and unknown creditors.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The relief requested in the Motion is GRANTED as set forth herein.

**Disclosure Statement**

2.      The Disclosure Statement is APPROVED as containing "adequate information" within the meaning of section 1125(a) of the Bankruptcy Code.

3.      All objections to the Disclosure Statement that have not been withdrawn or resolved previously or at the hearing to consider approval of the Disclosure Statement are overruled.

4.      The Disclosure Statement Hearing Notice and the manner of service thereof are each APPROVED.

**Plan Confirmation Schedule**

5.      The following dates and deadlines in connection with the Solicitation Procedures and Confirmation Hearing are APPROVED:

| Event | Proposed Date |
|---|---|
| Voting Record Date | October 1, 2021 |
| Solicitation Date | October 15, 2021 |
| Rule 3018(a) Motion Deadline | November 1, 2021 |
| Publication Deadline | November 24, 2021 |

| Plan Supplement Deadline | November 30, 2021 |
|---|---|
| Voting Resolution Event Deadline | December 14, 2021 or as otherwise ordered by the Court |
| Voting Deadline | December 14, 2021 at 4:00 p.m. (Eastern Time) |
| Preliminary Voting Report Deadline | December 21, 2021 |
| Final Voting Report Deadline | January 4, 2022 |
| Plan Objection Deadline | January 7, 2022 at 4:00 p.m. (Eastern Time) |
| Confirmation Brief/Plan Reply Deadline | January 17, 2022 |
| Confirmation Hearing | January 24, 2022 at 10:00 a.m. (Eastern Time) |

6.    The Confirmation Hearing shall be held on **January 24, 2022 at 10:00 a.m. (Eastern Time)** and shall continue to the extent necessary on such additional dates as the Court may designate.  The Confirmation Hearing may be adjourned from time to time by this Court or the Debtors without further notice other than as indicated in any notice or agenda of matters scheduled for a particular hearing that is filed with the Court.

**Distribution of Solicitation Packages**

7.    The distribution and contents of the Solicitation Packages shall include the following, which are APPROVED:

(a)    the Cover Letter describing the contents of the Solicitation Package and instructions to obtain access, free of charge, to the Plan, the Disclosure Statement, and this Solicitation Procedures Order, and urging holders of Claims in the Voting Classes to vote to accept the Plan;

(b)    the Confirmation Hearing Notice;

(c)    the Disclosure Statement with all exhibits, including the Plan and all exhibits (to the extent such exhibits are filed with the Court before the Solicitation Date), which shall be provided in the formats set forth below and are also available at https://omniagentsolutions.com/bsa-SAballots (Direct Abuse Claims) or https://omniagentsolutions.com/bsa-ballots (all other Claims);

(d)    this Solicitation Procedures Order, including the Solicitation Procedures but excluding all other exhibits, which shall be provided in the formats set forth

below and is also available via https://omniagentsolutions.com/bsa-SAballots or https://omniagentsolutions.com/bsa-ballots;

(e)    an appropriate form of Ballot with return instructions and a return envelope, as applicable;

(f)    a letter from any official committee and the Coalition, substantially in the form filed in these Chapter 11 Cases before entry of the Solicitation Procedures Order (and as may be modified, amended, or supplemented from time to time); and

(g)    any other materials ordered by the Court to be included as part of the Solicitation Package.

8.    The Debtors shall transmit the Solicitation Packages by mail to holders of Claims in the Voting Classes.  The Debtors shall transmit the Disclosure Statement (including all exhibits) and Solicitation Procedures Order (excluding exhibits other than the Solicitation Procedures) as part of the Solicitation Package as follows: (a) in hard copy format to holders of Direct Abuse Claims or to their counsel, if such holders are voting via Master Ballot; *provided* that any holder of a Direct Abuse Claim who (i) elected on their Sexual Abuse Survivor Proof of Claim not to receive communications regarding their claim via mail or (ii) provided that communications with their counsel regarding their Direct Abuse Claim were permissible shall not receive a Solicitation Package to their home address, and instead, a Solicitation Package shall be directed to counsel for such holders; *provided further* that all incarcerated holders of Direct Abuse Claims, even if such holders are voting by Master Ballot, shall receive a Solicitation Package in hard copy format (excluding a Ballot);[3] and (b) via USB flash drive to all other holders of Claims in the Voting Classes.

---

[3]    For the avoidance of doubt, any holder of a Direct Abuse Claim who is not represented by counsel or whose counsel did not elect to receive a Master Ballot shall not receive a Master Ballot—all such holders or their counsel (if such holders have elected on their Sexual Abuse Survivor Proof of Claim not to receive communications regarding their claim via mail or provided that communications with their counsel regarding their Direct Abuse Claim were permissible) shall receive an individual Direct Abuse Claim Ballot and hard copies of the Solicitation Package materials.

9.      The Debtors are not required to distribute paper copies of the Disclosure Statement, the Plan, and the Solicitation Procedures Order to a holder of a Claim or Interest who is not in a Voting Class unless a holder of a Claim or Interest makes a specific request for copies of such documents (which shall be free of charge) to the Solicitation Agent by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.   The Cover Letter included in the Solicitation Package and attached to this Solicitation Procedures Order as **<u>Exhibit 7</u>** is hereby approved, and includes instructions for obtaining access, free of charge, to all Solicitation Package materials and includes the website of the Solicitation Agent from which these materials may also be downloaded.

10.     The Debtors shall distribute Solicitation Packages via first class mail to (a) the U.S. Trustee, (b) holders of Direct Abuse Claims or to their counsel, as applicable and subject to the procedures described in this Solicitation Procedures Order and in the Solicitation Procedures for such holders that are represented by counsel, and (c) all other holders of Claims in the Voting Classes.

11.     The Solicitation Agent is authorized to assist the Debtors in (a) distributing the Solicitation Package, (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims, (c) responding to inquiries from holders of Claims and Interests and other parties in interest relating to the Disclosure Statement and Plan, the Ballots, the Solicitation Packages, and all other related documents and matters related thereto, including the

procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, (d) soliciting votes on the Plan, and (e) if necessary, contacting creditors regarding the Plan.

12.    The Solicitation Agent is authorized to accept Ballots via the electronic Ballot submission platform on the Solicitation Agent's website (the "E-Ballot Platform").   The encrypted ballot data and audit trail created by each electronic submission on the E-Ballot Platform shall become part of the record of any electronic Ballot submitted in this manner, and the associated electronic signature shall be deemed to be an original signature that is legally valid and effective.   Ballots submitted by facsimile, email or other means of electronic transmission shall not be counted (unless an exception has been granted by the Debtors).

13.    For solicitation and tabulation purposes, one Ballot will be provided to each holder of a General Unsecured Claim and, for applicable holders of Class 6 Claims, such Ballot shall include the option to make an irrevocable election to join Class 5 (Convenience Claims) and be treated as a holder of a Class 5 Claim.   If a holder of a Class 6 Claim with a Claim of $50,000 or less is deemed to join Class 5 (Convenience Claims) or an eligible holder of a Class 6 Claim that is greater than $50,000 makes the voluntary election to join Class 5 (Convenience Claims), then its Claim shall, upon its allowance for voting purposes only, be counted only in such Class and shall not be tabulated as a Claim in Class 6 (General Unsecured Claims).

14.    The Debtors were authorized to send to each Firm a Client List on a secure, encrypted and password-protected USB drive that set forth information regarding each Firm's Abuse Survivor Clients as compiled by the Debtors and their advisors based on a review of Sexual Abuse Survivor Proofs of Claim filed by or on behalf of holders of Direct Abuse Claims in the Chapter 11 Cases.   Any Direct Abuse Claims that cannot be matched to a Firm or that are not otherwise included in any Client List shall be solicited via the Direct Solicitation Method defined

below and set forth in the Solicitation Procedures.  The Solicitation Agent shall not provide Ballots to any Firm on account of, and votes included on any Master Ballot shall not be counted for, any individuals for which a Direct Abuse Claim was not timely filed prior to the Abuse Claims Bar Date.

15.     The Debtors and the Solicitation Agent shall not be required to mail a Solicitation Package or any other materials related to voting or confirmation of the Plan to any person or entity from which the notice of the Motion or other mailed notice in these Chapter 11 Cases was returned as undeliverable by the postal service, unless the Solicitation Agent is provided with accurate addresses for such persons or entities before the Solicitation Date, and failure to mail Solicitation Packages or any other materials related to voting or confirmation of the Plan to such persons or entities shall not constitute inadequate notice of the Confirmation Hearing or the Voting Deadline and shall not constitute a violation of Bankruptcy Rule 3017(d).

16.     The Debtors shall distribute a copy of the Confirmation Hearing Notice and Non-Voting Status Notice to the Non-Voting Classes and to the holders of Unclassified Claims.  The Debtors and Solicitation Agent shall not be required to mail a Solicitation Package or any other materials related to voting or confirmation of the Plan to the holders of Claims in the Non-Voting Classes or holders of Unclassified Claims, unless otherwise requested through the process set forth in the Non-Voting Status Notice.

17.     The Debtors shall distribute a copy of the Confirmation Hearing Notice and Chartered Organization Notice to all Chartered Organizations.

18.     The Debtors shall not provide the holders of Class 10 Delaware BSA Interests with a Solicitation Package or any other type of notice in connection with solicitation of the Plan.

19.     The Debtors shall distribute the Solicitation Package and Disputed Claim Notice to holders of Claims that are subject to a pending objection by the Debtors as of the Solicitation Date.  The Debtors and Solicitation Agent shall not be required to count the vote of any such returned Ballot of such holders unless a Resolution Event occurs, as provided in the Solicitation Procedures.

20.     The Debtors shall not be required to deliver Ballots or Solicitation Packages to counterparties to the Debtors' Executory Contracts and Unexpired Leases that do not have scheduled Claims or Claims based upon filed Proofs of Claim.  Rather, the Debtors are authorized to mail the Cure and Assumption Notice and the Rejection Notice to the applicable counterparties to Executory Contracts and Unexpired Leases that will be assumed or rejected pursuant to the Plan (as the case may be), within the time periods specified in the Plan and the Disclosure Statement.

21.     The Debtors shall file and serve the Plan Supplement Notice on the 2002 List and on the Voting Classes on the date the Plan Supplement is filed or as soon as reasonably practicable thereafter.  The Debtors shall further serve copies of the Cure and Assumption Notice and Rejection Notice on the applicable counterparties.

**Solicitation Procedures**

22.      The Debtors are authorized to solicit, receive, and tabulate votes to accept or reject the Plan in accordance with the Solicitation Procedures attached hereto as **Exhibit 1**, which are hereby APPROVED in their entirety.

23.     The forms of Abuse Claim Solicitation Notice and Abuse Survivor Plan Solicitation Directive attached to this Solicitation Procedures Order as **Exhibit 11** are APPROVED in all respects.

11

24.     The forms of Ballots attached hereto as **Exhibits 2-1**, **2-2**, **2-3**, **2-4**, **2-5**, **2-6**, and **2-7**, respectively, are APPROVED in all respects.

25.     All Direct and Indirect Abuse Claims in Classes 8 and 9 of the Plan shall be temporarily allowed in the amount of $1.00 in the aggregate per claimant solely for purposes of voting to accept or reject the Plan and not for any other purpose, or as otherwise ordered by the Bankruptcy Court.

26.     All Non-Abuse Litigation Claims filed on account of litigation against the Debtors, which have not been fixed pursuant to a judgment or settlement entered prior to the Voting Record Date, shall be classified as contingent and unliquidated Claims in accordance with the Solicitation Procedures and shall have a single vote in the amount, for voting purposes only, of $1.00 in the aggregate per claimant, or as otherwise ordered by the Bankruptcy Court.

27.     The Debtors are authorized to cause Solicitation Packages to be distributed to Firms representing holders of Direct Abuse Claims that have voluntarily directed the Solicitation Agent to solicit the votes of their clients using the Master Ballot Solicitation Method set forth in the Solicitation Procedures pursuant to an Abuse Survivor Plan Solicitation Directive, in lieu of serving a Solicitation Package on each individual holder, in accordance with the Master Ballot Solicitation Method set forth in the Solicitation Procedures.  With respect to Firms representing holders of Direct Abuse Claims that did not return a voluntary Abuse Survivor Plan Solicitation Directive requesting that their clients' votes be solicited by the Master Ballot Solicitation Method, the Debtors are authorized to cause Solicitation Packages to be distributed directly to such holders according to the communication preferences indicated in such holders' Sexual Abuse Survivor Proofs of Claim.

28.     After entry of the Solicitation Procedures Order, the Solicitation Agent shall email each Firm that is listed on Direct Abuse Claims in Class 8 to confirm whether any updates are needed to the Abuse Survivor Plan Solicitation Directive previously submitted by each Firm.  A Firm must respond in writing to the Solicitation Agent within five (5) days of receipt of the email in order to change its preference pursuant to (a) or (b) below.  If the Solicitation Agent does not receive a response from a Firm within this time period, the Solicitation Agent shall honor the solicitation method that Firm previously indicated on the Abuse Survivor Plan Solicitation Directive.

(a)     If a Firm that previously elected the Master Ballot Solicitation Method on its Abuse Survivor Plan Solicitation Directive would like to have each of its clients who hold Direct Abuse Claims cast their own vote to accept or reject the Plan, such Firm may elect to have the Solicitation Agent deliver the Solicitation Package (including Ballots) to the Firm, which will, in turn, deliver the Solicitation Packages (including Ballots) to each of its clients who hold Direct Abuse Claims in hard copy, flash drive, or electronic format.  In this case, Solicitation Packages shall be delivered to clients who hold Direct Abuse Claims in accordance with their preferences (*i.e.*, clients who do not want to receive written communications via regular mail shall receive the Solicitation Package materials electronically).  The Solicitation Agent shall deliver the Solicitation Package (including Ballots) to each Firm in hard copy, flash drive, or electronic format, depending on the preference specified by each Firm in its response to the email from the Solicitation Agent.  Clients who hold Direct Abuse Claims will complete a Ballot and such Ballot will be returned to the Solicitation Agent.

(b)     If a Firm previously elected the Direct Solicitation Method on its Abuse Survivor Plan Solicitation Directive, that Firm can indicate that it will have its clients vote via the Master Ballot Solicitation Method instead and will receive the Solicitation Package directly from the Solicitation Agent.

29.     The votes included on any Master Ballot shall not be counted unless each Firm that submits a Master Ballot via the Master Ballot Solicitation Method files a verified statement with the Court pursuant to Bankruptcy Rule 2019 prior to or concurrently with the submission of its Master Ballot containing the following (the "Rule 2019 Statement"): (i) the facts and

13

circumstances concerning the Firm's representation of Abuse Survivor Clients in these chapter 11 cases; (ii) a list of the names, addresses, and claim numbers of all Abuse Survivor Clients that the such Firm represents; and (iii) an exemplar of the engagement letter used to engage the Abuse Survivor Clients.  The Firm may redact pricing, compensation amounts or percentages, and personal identifying information of holders of Direct Abuse Claims.  For the avoidance of doubt, personal identifying information related to holders of Direct Abuse Claims on such Rule 2019 Statement shall be filed under seal in accordance with the *Final Order (I) Authorizing Debtors to File (A) a Consolidated List of Counsel Representing the Largest Numbers of Abuse Victims and (B) a Consolidated List of Other Unsecured Creditors of the Debtors, (II) Authorizing and Approving Special Noticing and Confidentiality Procedures, and (III) Granting Related Relief* [D.I. 274] and the Bar Date Order; *provided* that copies of such information shall be made available to "Permitted Parties" as defined in the Bar Date Order.  Each Firm must submit a copy of the Rule 2019 Statement with unredacted personal identifying information with its Master Ballot and Exhibit submission to the Solicitation Agent.

30.    For the avoidance of doubt, the Debtors are authorized to solicit votes to accept or reject the Plan from each holder of a Direct Abuse Claim who cannot be matched to a Firm or who is not included in any Client List to be solicited via the Direct Solicitation Method set forth in the Solicitation Procedures.

31.    The procedures set forth in the Solicitation Procedures with respect to Disputed Claims are hereby approved in all respects.

32.    As Solicitation Agent in these Chapter 11 Cases, Omni Agent Solutions shall process and tabulate Ballots in accordance with the Solicitation Procedures.  Omni Agent Solutions shall file a preliminary voting report (the "Preliminary Voting Report") no later than

the Preliminary Voting Report Deadline of **December 21, 2021**, and shall file a final voting report (the "Final Voting Report") no later than the Final Voting Report Deadline of **January 4, 2022**.

**Confirmation Notices and Objection Procedures**

33.    The form, manner, and scope of the Confirmation Hearing Notice, the Publication Notice, the Non-Voting Status Notice, the Disputed Claim Notice, the Plan Supplement Notice, the Cure and Assumption Notice, the Rejection Notice, the Chartered Organization Notice, and the Abuse Survivor Plan Summary, substantially in the forms attached hereto as **Exhibits 3**, **4**, **5**, **6**, **8**, **9**, **10**, **12**, and **13**, respectively, constitute good, sufficient, and adequate notice to all parties, including known and unknown creditors, comply with the requirements of due process, and are APPROVED.    Such notices are being provided by means reasonably calculated to reach all interested persons, reasonably convey all the required information to inform all persons affected thereby, and provide a reasonable time for a response and an opportunity to object to the relief requested.    No other or further notice is necessary.

34.    Notwithstanding anything else herein, the Debtors shall serve the Confirmation Hearing Notice on: (a) all holders of Claims, including Unclassified Claims, regardless of whether they are entitled to vote; (b) the 2002 List; (c) the Internal Revenue Service; (d) the SEC; (e) the U.S. Trustee; (f) counsel to the Creditors' Committee; (g) counsel to the Tort Claimants' Committee; (h) counsel to the Future Claimants' Representative; (i) all federal, state, and local taxing authorities in the jurisdictions in which the Debtors have tax liabilities; (j) all federal, state, and local authorities that regulate any portion of the Debtors' organizational operations; (k) all other persons or entities listed on the Debtors' creditor mailing matrix, including, for the avoidance of doubt, the Chartered Organizations; and (l) all counterparties to Executory Contracts and Unexpired Leases.

35.     Objections and responses, if any, to confirmation of the Plan must (a) be in writing, (b) set forth in detail the name and address of any party filing the objection, the legal and factual basis for the objection, the amount of the objector's Claims or such other grounds that give the objector standing to assert the objection, and any evidentiary support thereof, (c) conform to the Bankruptcy Rules and Local Rules, (d) be filed with this Court, and (e) be served upon the parties listed in the Confirmation Hearing Notice at the addresses set forth therein, on or before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email delivered to counsel of the Debtors.

36.     Objections to confirmation of the Plan not timely filed and served in accordance with the provisions of this Solicitation Procedures Order may not be considered by this Court and may be denied and overruled unless otherwise ordered by this Court.

37.     The Debtors or other parties in interest may file and serve a reply or replies to any objections or responses to confirmation of the Plan on or before the Confirmation Brief/Plan Reply Deadline of **January 17, 2022**.

**<u>Additional Relief</u>**

38.      The Debtors are authorized to take any action necessary or appropriate to implement the terms of and the relief granted in this Solicitation Procedures Order in accordance with the Motion.

39.      The Debtors are authorized to make any non-substantive changes to the Plan and Disclosure Statement, the Solicitation Procedures, the Ballots, the Solicitation Packages, the Confirmation Notices, the Publication Notice, and related documents without further order of this Court, including, without limitation, changes to (a) correct any typographical, grammatical, and

formatting errors or omissions, and (b) make conforming changes to the Plan, the Disclosure Statement, and any other materials in the Solicitation Packages before distribution.

40. Nothing in this Solicitation Procedures Order shall be construed as a waiver of the right of the Debtors or other party in interest, as applicable, to object to a Proof of Claim after the Voting Record Date.

41. All time periods set forth in this Solicitation Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

42. Notwithstanding any applicable Bankruptcy Rule, the terms and conditions of this Solicitation Procedures Order shall be immediately effective and enforceable upon its entirety.

43. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

44. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Solicitation Procedures Order.

Dated: _____, 2021
      Wilmington, Delaware

THE HON. LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Solicitation Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

## SOLICITATION PROCEDURES

**PLEASE TAKE NOTICE THAT** on [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order in the above-captioned chapter 11 cases [D.I. [●]] (the "Solicitation Procedures Order"): (a) approving the *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (the "Disclosure Statement"); (b) establishing the Voting Record Date, Voting Deadline, and other related dates in connection with confirmation of the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (as may be modified, amended, or supplemented from time to time, the "Plan");[2] (c) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan; (d) approving the form and manner of notice and other related documents as they relate to the Debtors; and (e) granting related relief.

The Solicitation Procedures set forth in this document are supplemented by the instructions accompanying the Ballots included in the Solicitation Packages that will be sent to those holders of Claims entitled to vote to accept or reject the Plan. Reference should be made to those instructions in addition to this document; however, in the case of a conflict, the terms of the Ballots control.

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Debtors' Motion for Entry of an Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation and Voting Procedures, (III) Approving Forms of Ballots, (IV) Approving Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief* [D.I. 2295] (the "Solicitation Procedures Motion"), the Plan, the Disclosure Statement, or the *Order, Pursuant to 11 U.S.C. § 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-1(e), 3001-1, and 3003-1, (I) Establishing Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, (III) Approving Procedures for Providing Notice of Bar Date and Other Important Information to Abuse Survivors, and (IV) Approving Confidentiality Procedures for Abuse Survivors* [D.I. 695], as applicable.

## I. VOTING RECORD DATE

The Bankruptcy Court has established **October 1, 2021**, as the record date for purposes of determining which holders of Claims in Class 3A (2010 Credit Facility Claims), Class 3B (2019 RCF Claims), Class 4A (2010 Bond Claims), Class 4B (2012 Bond Claims), Class 5 (Convenience Claims), Class 6 (General Unsecured Claims), Class 7 (Non-Abuse Litigation Claims), Class 8 (Direct Abuse Claims), and Class 9 (Indirect Abuse Claims) are entitled to vote on the Plan (the "Voting Record Date").

## II. VOTING DEADLINE

The Bankruptcy Court has approved **December 14, 2021 at 4:00 p.m. (Eastern Time)** as the deadline to vote to accept or reject the Plan (the "Voting Deadline"). Subject to Section VI, the Debtors may extend the Voting Deadline upon notice to parties in interest. To be counted as a vote to accept or reject the Plan, each Ballot or Master Ballot (each, generally referred to herein as a "Ballot") must be properly executed, completed, and delivered by (1) the electronic Ballot submission platform on the Solicitation Agent's website (the "E-Ballot Platform"), (2) mail, (3) overnight delivery, or (4) personal delivery, so that it is ***actually received***, in each case, by the Solicitation Agent no later than the Voting Deadline. Specifically, each Ballot must be returned through the E-Ballot Platform at (a) https://omniagentsolutions.com/bsa-SAballots for Direct Abuse Claim Ballots and Master Ballots or (b) https://omniagentsolutions.com/bsa-ballots for all other Ballots,[3] by mail using the envelope included in the Solicitation Package, as applicable, or by overnight or personal delivery to the following address:

> Boy Scouts of America Ballot Processing
> c/o Omni Agent Solutions
> 5955 De Soto Avenue, Suite 100
> Woodland Hills, CA 91367

Only one Ballot may be submitted on account of each Claim. Holders of Claims that submit a Ballot via the E-Ballot Platform should not also submit a paper Ballot. If a holder of a Claim submits a Ballot using the E-Ballot Platform and a paper Ballot, the last Ballot actually received by the Solicitation Agent before the Voting Deadline shall be deemed to be the effective vote. Delivery of a Ballot to the Solicitation Agent by facsimile or electronic means other than through the E-Ballot Platform shall not be valid.

Exhibits to Master Ballots may only be submitted in Excel format via the E-Ballot Platform or, if the Master Ballot is being mailed, by USB drive—they may not be printed out and submitted in hard copy format. Votes provided on any Exhibit submitted in a format other than the Excel Exhibit provided by the Solicitation Agent shall not be counted. The Exhibit must be submitted together with the Master Ballot.

---

[3]  Parties shall endeavor to submit Ballots through the proper E-Ballot Platform. In the event that a party, for example, submits a Direct Abuse Claim Ballot through the general E-Ballot Platform, such Ballot shall be counted in accordance with the procedures set forth herein.

## III.    FORM, CONTENT, AND MANNER OF NOTICES

### A.    Content of the Solicitation Package.

The following materials shall constitute the solicitation package (the "Solicitation Package"):

1.    a cover letter describing the contents of the Solicitation Package and instructions to obtain access, free of charge, to the Plan, the Disclosure Statement, and the Solicitation Procedures Order and urging holders of Claims in the Voting Classes to vote to accept the Plan (the "Cover Letter");

2.    the *Notice of Hearing to Consider Confirmation of Second Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, substantially in the form annexed to the Solicitation Procedures Order as **Exhibit 3** (the "Confirmation Hearing Notice");

3.    the Disclosure Statement with all exhibits, including the Plan and all exhibits (to the extent such exhibits are filed with the Bankruptcy Court before the Solicitation Date), which shall be provided in the formats set forth in the Solicitation Procedures Order and are also available via https://omniagentsolutions.com/bsa-SAballots (Direct Abuse Claims) or https://omniagentsolutions.com/bsa-ballots (all other Claims);

4.    the Solicitation Procedures Order, including the Solicitation Procedures but excluding all other exhibits, which shall be provided in the formats set forth in the Solicitation Procedures Order and is also available via https://omniagentsolutions.com/bsa-SAballots or https://omniagentsolutions.com/bsa-ballots;

5.    an appropriate form of Ballot with return instructions and a return envelope, as applicable;

6.    a letter from any official committee and the Coalition, substantially in the form filed in these Chapter 11 Cases before entry of the Solicitation Procedures Order (and as may be modified, amended, or supplemented from time to time); and

7.    any other materials ordered by the Bankruptcy Court to be included as part of the Solicitation Package.

### B.    Distribution of the Solicitation Package.

This Section explains the manner in which Solicitation Packages shall be distributed to holders of Claims entitled to vote on the Plan and other interested parties.

The Solicitation Packages shall be transmitted by mail to holders of Claims in the Voting Classes.  The Debtors shall transmit the Disclosure Statement and the Solicitation Procedures

Order (excluding exhibits other than these Solicitation Procedures) as part of the Solicitation Package as follows: (i) in hard copy format to holders of Direct Abuse Claims or to their counsel, if such holders are voting via Master Ballot; *provided* that any holder of a Direct Abuse Claim who (a) elected on their Sexual Abuse Survivor Proof of Claim not to receive communications regarding their claim via mail, or (b) provided that communications with their counsel regarding their Direct Abuse Claim were permissible, shall not receive a Solicitation Package to their home address, and instead, a Solicitation Package shall be directed to counsel for such holders; *provided further,* that all incarcerated holders of Direct Abuse Claims, even if such holders are voting via Master Ballot, shall receive a Solicitation Package in hard copy format (excluding a Ballot);[4] and (ii) via USB flash drive to all other holders of Claims in the Voting Classes.

The Cover Letter shall also include instructions for holders of Claims in the Voting Classes to obtain, free of charge, the Solicitation Package materials in electronic format (with or without a Ballot, as applicable) via https://omniagentsolutions.com/bsa-SAballots or https://omniagentsolutions.com/bsa-ballots. Any holder of a Claim that receives incomplete materials or would like to request additional materials may contact the Solicitation Agent by: (a) calling the Debtors' toll-free restructuring hotline at (866) 907-2721; (b) visiting the Debtors' restructuring website at https://omniagentsolutions.com/BSA; (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367; or (d) emailing BSAballots@omniagnt.com.

1.    *Direct Abuse Claims*.  The Solicitation Agent shall cause a Solicitation Package to be served on holders of Direct Abuse Claims by the Solicitation Date in the manner described in **Section IV** below.

2.    *Claims in the Other Voting Classes*.  The Solicitation Agent shall cause a Solicitation Package to be served on each holder of a Claim in the Voting Classes other than Direct Abuse Claims who is entitled to vote by the Solicitation Date.

3.    *Other Parties*.  The Solicitation Agent shall cause a Solicitation Package (without a Ballot) to be served for informational purposes on the Office of the United States Trustee for the District of Delaware.

4.    *Exception for Undeliverables*.  Notwithstanding any provision to the contrary herein, neither the Debtors nor the Solicitation Agent shall be required to distribute a Solicitation Package to any Person or Entity as to whom the notice of the Solicitation Procedures Motion or other mailed notice in the Chapter 11 Cases was returned as undeliverable by the postal service, unless the Solicitation Agent is provided with an accurate address for such Person or Entity before the Solicitation Date.

---

[4]    For the avoidance of doubt, any holder of a Direct Abuse Claim who is not represented by counsel or whose counsel did not elect to receive a Master Ballot shall not receive a Master Ballot—all such holders or their counsel (if such holders have elected on their Sexual Abuse Survivor Proof of Claim not to receive communications regarding their claim via mail or provided that communications with their counsel regarding their Direct Abuse Claim were permissible) shall receive an individual Direct Abuse Claim Ballot and hard copies of the Solicitation Package materials.

5.      *Avoidance of Duplication*. The Debtors shall make reasonable efforts to ensure that any holder of a Claim that has filed duplicative Claims and/or Claims that are amended and superseded by a later filed Claim against a Debtor that are classified under the Plan in the same Voting Class receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claim and with respect to that Class.  If the Debtors timely receive more than one Ballot from or on behalf of the holder of a single Direct Abuse Claim, the effective vote shall be determined in accordance with **Sections IV.E** and **V** below.

### C.      Resolution of Disputed Claims for Voting Purposes; Resolution Event.

1.      Absent further order of the Bankruptcy Court, the holder of a Claim in a Voting Class that is the subject of a pending "reclassify" or "reduce and allow" objection filed on or before the Solicitation Date only to reclassify or reduce the amount of such Claim shall be entitled to vote such Claim in accordance with the proposed reclassification or in the reduced amount (as applicable) contained in such objection.

2.      If a Claim in a Voting Class is subject to an objection other than a "reclassify" or "reduce and allow" objection that is filed with the Bankruptcy Court on or before the Solicitation Date (a "Disputed Claim"), (a) the Debtors shall cause the applicable holder to be served with a notice of such Disputed Claim (the "Disputed Claim Notice"), substantially in the form attached to the Solicitation Procedures Order as **Exhibit 6**, and (b) the applicable holder shall receive a Solicitation Package but shall not be entitled to have their vote to accept or reject the Plan counted on account of such Claim unless a Resolution Event (as defined below) occurs as provided herein.

3.      If a Claim in a Voting Class is subject to an objection that is filed with the Bankruptcy Court after the Solicitation Date, the applicable Claim shall be deemed temporarily allowed solely for voting purposes to the extent otherwise allowed for voting purposes in accordance with these Solicitation Procedures, without further action by the Debtors or the holder of such Claim and without further order of the Bankruptcy Court, unless the Debtors and claimant agree to other treatment for voting purposes or the Bankruptcy Court orders otherwise.

4.      If the holder of any Disputed Claim seeks to challenge the disallowance or estimation of its Claim for voting purposes, such holder must file with the Bankruptcy Court a motion for an order, pursuant to Bankruptcy Rule 3018(a), temporarily allowing such claim for purposes of voting to accept or reject the Plan (a "Rule 3018(a) Motion").  Any Rule 3018(a) Motion shall be filed with the Bankruptcy Court and served on the Debtors on or before **November 1, 2021**.  If a holder of a Disputed Claim files a timely Rule 3018(a) Motion, such holder's Ballot shall not be counted unless a Resolution Event occurs with respect to such Disputed Claim prior to **December 14, 2021** (the "Voting Resolution Event Deadline"), or as otherwise ordered by the Bankruptcy Court.

5.      A "Resolution Event" means, with respect to a Disputed Claim that is the subject of an objection other than a "reclassify" or "reduce and allow" objection, the occurrence of one or more of the following events on or before the Voting Resolution Event Deadline:

a.      An order of the Bankruptcy Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

b.      entry of an order of the Bankruptcy Court, after notice and a hearing, granting a Rule 3018(a) Motion and temporarily allowing such Claim for voting purposes in accordance with **Section III.C.4** above;

c.      execution of a stipulation or other agreement between the holder of a Disputed Claim and the Debtors (a) resolving the objection and allowing such Claim for voting purposes in an agreed-upon amount or (b) otherwise fixing an amount of the Claim for voting purposes; or

d.      the pending objection is voluntarily withdrawn by the objecting party.

**D.      Non-Voting Status Notice for Unclassified and Unimpaired Classes of Claims.**

Certain holders of Claims that are not classified under Article III of the Plan in accordance with section 1123(a)(1) of the Bankruptcy Code or who are not entitled to vote because they are presumed to accept the Plan under section 1126(f) of the Bankruptcy Code shall receive only the *Notice of Non-Voting Status to Holders of Unclassified Claims and Holders of Unimpaired Claims Conclusively Presumed to Accept the Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, substantially in the form annexed to the Solicitation Procedures Order as **Exhibit 5**.  The notice shall instruct these holders as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots).

## IV.      SPECIAL PROCEDURES RELATING TO DIRECT ABUSE CLAIMS

The procedures set forth in this **Section IV** only apply to holders of Direct Abuse Claims, unless otherwise expressly indicated.

**A.      To Attorneys Representing Holders of Direct Abuse Claims:**

1.      On or about **April 5, 2021**, the Solicitation Agent mailed an Abuse Claim Solicitation Notice, an Abuse Survivor Plan Solicitation Directive, and a Client List (each as defined below) on each known attorney representing holders of Abuse Claims (each, a "Firm").

2.      On or about **April 5, 2021**, the Debtors mailed to each Firm an Excel spreadsheet on a secure, encrypted USB drive (each, a "Client List") that listed the first and last name, claim number, month and year of birth, last four digits of Social Security Number, mailing address, and email address (if available) of each Firm's clients who hold Direct Abuse Claims (collectively, the "Abuse Survivor Clients"), as compiled by the Debtors, with the assistance of their professionals, based on their review of the Sexual Abuse Survivor Proofs of Claim filed on or before the Abuse Claims Bar Date by or on behalf of the holders of Direct Abuse Claims in the Chapter 11 Cases.

3.      The Debtors requested that each Firm confirm the names, addresses, claim numbers, and (if known) email addresses of its Abuse Survivor Clients as set forth on the Client List.  To the extent a Firm includes Abuse Survivor Clients who were not originally listed by the Solicitation Agent, such Firm must provide the Solicitation Agent with the Proof of Claim number that corresponds to each such additional Abuse Survivor Client's Direct Abuse Claim.  If the Abuse Survivor Client's Sexual Abuse Survivor Proof of Claim does not indicate that communications regarding such claim may be directed to such client's Firm, a Firm was also required to provide written verification from the Abuse Survivor Client(s) that he or she authorized the Firm to receive the Solicitation Package on his or her behalf.  If such written verification is not supplied by the Firm, the Solicitation Agent will not count the vote for the Abuse Survivor Client(s) in a Master Ballot submitted by such Firm and those Abuse Survivor Client(s) will be solicited by the Direct Solicitation Method.   The Solicitation Agent endeavored to identify on the Client Lists any conflicting records indicating that an individual Abuse Survivor Client may be represented by more than one Firm or has filed duplicative Direct Abuse Claims on account of a single claim.

4.      To incorporate each Firm's preferred method of distribution of the Solicitation Packages (i.e., Master Ballot Solicitation Method or Direct Solicitation Method, as defined below), the Debtors requested that each Firm voluntarily return a completed Abuse Survivor Plan Solicitation Directive so that it was actually received by the Solicitation Agent no later than **May 12, 2021** (the "Abuse Survivor Plan Solicitation Directive Deadline").

5.      Pursuant to the Abuse Survivor Plan Solicitation Directive or through a directive amendment as set forth in subsection c below, each Firm may direct the Solicitation Agent to solicit votes on the Plan from its Abuse Survivor Clients according to one of the following methods:

a.      **Master Ballot Solicitation Method**.  A Firm may direct the Solicitation Agent to serve the Firm with one Solicitation Package and one Master Ballot on which to record the votes of all of its Abuse Survivor Clients to accept or reject the Plan and any other applicable voting elections (the "Master Ballot Solicitation Method") if the Firm certifies that:

(a)      "**Option (a) Certification**": The Firm shall distribute (as required by the Solicitation Procedures) the Solicitation Package (without a Ballot) to each of its Abuse Survivor Clients and ask each client to provide his or her affirmative vote to accept or reject the Plan (along with any other responsive election to be reflected on the Exhibit to the Master Ballot) and the Firm shall record the affirmative responses on the Master Ballot and reflect that the vote and other responses were collected by means of an Option (a) Certification.  For the avoidance of doubt, a Firm may not rely on providing any of its Abuse Survivor Clients negative notice when completing the Master Ballot on behalf of any Abuse Survivor Client if such client did not affirmatively respond with an express answer for each applicable election.   Each Firm shall collect the responses through customary and accepted practices in accordance with applicable rules of professional conduct (including telephone, email, and other standard communication methods) from each Abuse Survivor Client, and shall submit a log of the responses it has received to the Solicitation Agent

7

contemporaneously with its Master Ballot submission, which may be subject to discovery. For the avoidance of doubt, if an Abuse Survivor Client provides his or her responses orally or via telephone, the Firm shall contemporaneously maintain a record of the responses of the Firm's Abuse Survivor Clients, and shall include these responses with the log; or

(b)    "**Option (b) Certification**": If the Firm has the authority under a power of attorney to vote to accept or reject the Plan (in addition to the other elections under the Master Ballot) on behalf of its Abuse Survivor Clients, the Firm shall complete the Master Ballot in accordance with the power granted to the Firm and reflect that the vote and other elections were collected by means of an Option (b) Certification. For any Abuse Survivor Clients whose elections on the Master Ballot were completed by utilizing the Option (b) Certification, the Firm shall supply the power(s) of attorney concurrently with the Master Ballot and Exhibit that provided the Firm with the authorization to act on behalf of such Abuse Survivor Client(s).

In addition to the foregoing certification, each Firm that selects the Master Ballot Solicitation Method shall provide the Solicitation Package materials (excluding a ballot), in hard copy, flash drive, or electronic format, to its Abuse Survivor Clients. Any Firm that elects the Master Ballot Solicitation Method must return the Master Ballot to the Solicitation Agent so that it is received by the Voting Deadline. Each Firm must also file a verified statement with the Bankruptcy Court pursuant to Bankruptcy Rule 2019 prior to or concurrently with the submission of its Master Ballot containing the following (each, a "Rule 2019 Statement"): (i) the facts and circumstances concerning the Firm's representation of Abuse Survivor Clients in these chapter 11 cases; (ii) a list of the names, addresses, and claim numbers of all Abuse Survivor Clients that the such Firm represents; and (iii) an exemplar of the engagement letter used to engage the Abuse Survivor Clients. The Firm may redact pricing, compensation amounts or percentages, and personal identifying information of holders of Direct Abuse Claims. For the avoidance of doubt, personal identifying information related to holders of Direct Abuse Claims on such Rule 2019 Statement shall be filed under seal in accordance with the *Final Order (I) Authorizing Debtors to File (A) a Consolidated List of Counsel Representing the Largest Numbers of Abuse Victims and (B) a Consolidated List of Other Unsecured Creditors of the Debtors, (II) Authorizing and Approving Special Noticing and Confidentiality Procedures, and (III) Granting Related Relief* [D.I. 274] and the Bar Date Order; *provided* that copies of such information shall be made available to "Permitted Parties" as defined in the Bar Date Order. Each Firm must submit a copy of the Rule 2019 Statement with unredacted personal identifying information with its Master Ballot and Exhibit submission to the Solicitation Agent.

b.    **Direct Solicitation Method**. A Firm may direct the Solicitation Agent to solicit votes on the Plan directly from each of the Firm's Abuse Survivor Clients by distributing a Solicitation Package (including a Ballot) directly to each of the Firm's Abuse Survivor Clients via U.S. mail at the street address specified on the Firm's Client List (the "Direct Solicitation Method"). Under the Direct Solicitation Method, each Abuse Survivor Client must return his or her completed Ballot to the Solicitation Agent so that it is received by the Voting Deadline. **For the avoidance of doubt, the Debtors shall solicit votes to accept or reject the**

**Plan from each holder of a Direct Abuse Claim who cannot be matched to a Firm or who is not included in any Client List to be solicited via the Direct Solicitation Method.**

> c.    **Directive Amendment**.  After entry of the Solicitation Procedures Order, the Solicitation Agent shall email each Firm that is listed on Direct Abuse Claims in Class 8 to confirm whether any updates are needed to the Abuse Survivor Plan Solicitation Directive previously submitted by each Firm.  A Firm must respond in writing to the Solicitation Agent within five (5) days of receipt of the email in order to change its preference pursuant to (i) or (ii) below.  If the Solicitation Agent does not receive a response from a Firm within this time period, the Solicitation Agent will honor the solicitation method that Firm previously indicated on the Abuse Survivor Plan Solicitation Directive.

>> (a)    If a Firm that previously elected the Master Ballot Solicitation Method on its Abuse Survivor Plan Solicitation Directive would like to have each of its clients who hold Direct Abuse Claims cast their own vote to accept or reject the Plan, such Firm may elect to have the Solicitation Agent deliver the Solicitation Package (including Ballots) to the Firm, which will, in turn, deliver the Solicitation Packages (including Ballots) to each of its clients who hold Direct Abuse Claims in hard copy, flash drive, or electronic format.  In this case, Solicitation Packages shall be delivered to clients who hold Direct Abuse Claims in accordance with their preferences (*i.e.*, clients who do not want to receive written communications via regular mail shall receive the Solicitation Package materials electronically).  The Solicitation Agent shall deliver the Solicitation Package (including Ballots) to each Firm in hard copy, flash drive, or electronic format, depending on the preference specified by each Firm in its response to the email from the Solicitation Agent.  Clients who hold Direct Abuse Claims will complete a Ballot and such Ballot will be returned to the Solicitation Agent.

>> (b)    If a Firm previously elected the Direct Solicitation Method on its Abuse Survivor Plan Solicitation Directive, that Firm can indicate that it will have its clients vote via the Master Ballot Solicitation Method instead and will receive the Solicitation Package directly from the Solicitation Agent.

> 6.    If a Firm certifies that it does not represent any Abuse Survivor Clients, the Solicitation Agent is authorized to omit such Firm from the Debtors' solicitation of votes on the Plan and request that such Firm be removed from the service list in the Chapter 11 Cases.  For the avoidance of doubt, any such affected survivors shall be solicited via the Direct Solicitation Method.

**B.      Completion and Return of Ballots by Attorneys for Holders of Direct Abuse Claims.**

The following procedures govern the completion and return of a Master Ballot:

1.      *Summarizing Votes on the Master Ballot*: The Master Ballot shall contain the following options to provide a summary of voting, one of which must be marked by the Firm:

   a.    "All claimants listed on the Exhibit accompanying this Master Ballot ACCEPT (vote in favor of) the Plan."

   b.    "All claimants listed on the Exhibit accompanying this Master Ballot REJECT (vote against) the Plan."

   c.    "Some of the claimants listed on the Exhibit accompanying this Master Ballot ACCEPT (vote in favor of) the Plan, while other claimants listed on the exhibit accompanying this Master Ballot REJECT (vote against) the Plan."

2.      *Certification by Firm of Authority to Vote and Related Issues Under Penalty of Perjury*:

   a.    The Master Ballot contains certifications, to be completed by the attorney preparing and signing the Master Ballot, pursuant to which such attorney shall certify under penalty of perjury that, among other things, he or she has the authority under applicable law to vote to accept or reject the Plan on behalf of the Abuse Survivor Clients who are listed on the exhibit to the Master Ballot.

   b.    If the attorney is unable to make such certification under penalty of perjury on behalf of any Abuse Survivor Client, the attorney may **not** cast a vote on behalf of such Abuse Survivor Client and **must** timely send the information relating to the name, address, claim number, and email (if known) of such Abuse Survivor Client to the Solicitation Agent, and the Solicitation Agent shall immediately distribute a Solicitation Package to such Abuse Survivor Client.

3.      *Exhibit to the Master Ballot*:

   a.    Each attorney will receive with the Master Ballot an exhibit on a USB drive containing an electronic client list in Excel format of each holder of a Direct Abuse Claim whom the attorney represents (the "Exhibit").  The Exhibit shall list, for each Abuse Survivor Client represented by the attorney's Firm and on whose behalf the attorney is voting on the Plan, (1) the Abuse Survivor Client's first and last name, the Abuse Survivor Client's claim number, the last four digits of the Abuse Survivor Client's Social Security Number (if the Abuse Survivor Client does not have a Social Security Number, it will not be listed), and the Abuse Survivor Client's date of birth, (2) whether the Abuse Survivor Client votes to ACCEPT / vote in favor of or to REJECT / vote against the Plan, (3) whether the Abuse Survivor Client elects to

receive the Expedited Distribution, which, as specified in the Plan, is a one-time Cash payment from the Settlement Trust in the amount of $3,500.00, conditioned upon satisfaction of the criteria set forth in the Trust Distribution Procedures, (4) if the Abuse Survivor Client is voting to accept or reject the Plan, whether the Abuse Survivor Client opts out of the Releases by Holders of Claims set forth in <u>Article X.J.4</u> of the Plan, (5) whether the Firm is recording the vote of each Abuse Survivor Client via the Option (a) Certification or the Option (b) Certification described and defined above, and (6) the service method that the Firm has used to transmit the Solicitation Package materials (excluding a ballot) to each holder of a Direct Abuse Claim in hard copy, flash drive, or electronic format.

　　　　　b.　　　　The Exhibit and the completed Master Ballot shall be returned to the Solicitation Agent via the E-Ballot Platform in accordance with **Sections II and IV** of these Solicitation Procedures.  The Exhibit shall contain drop-down options and shall not deviate from the following format:

| Claimant's Last Name | Claimant's First Name | Claim Number | Claimant's SSN (last 4 digits) | Claimant's Date of Birth | Vote to ACCEPT / in Favor of OR Vote to REJECT / Against the Plan | Elects to Receive $3,500 Expedited Distribution | Opts Out of Release in Article X.J.4 of Plan – Leave Blank if Not Opting Out | Type of Authority for Vote | Method of Service of Solicitation Documents |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

　　　　4.　　　*Rule 2019 Statement*:

　　　　As set forth above, each Firm submitting a Master Ballot on behalf of more than one client must file with the Bankruptcy Court a Rule 2019 Statement on or before the date of submission of its Master Ballot in accordance with the procedures described in Section IV.A.5.a above.  Each Firm must also submit a copy of the Rule 2019 Statement with unredacted personal identifying information with its Master Ballot and Exhibit submission to the Solicitation Agent.

　　　　5.　　　*Documentation Required for Option (a) Certification*:

　　　　As described above, each Firm submitting a Master Ballot under the Option (a) Certification must submit a log of the responses it has received from each of its Abuse Survivor Clients (including telephone, email, and other standard communication methods) to the Solicitation Agent contemporaneously with its Master Ballot submission, which may be subject to discovery.

　　　　6.　　　*Documentation Required for Option (b) Certification*:

　　　　As described above, each Firm submitting a Master Ballot under the Option (b) Certification must submit a valid power of attorney concurrently with its submission of the Master Ballot and Exhibit.

C.    **To Holders of Indirect Abuse Claims:**  The Solicitation Agent shall cause a Solicitation Package, including a Ballot substantially in the form annexed to the Solicitation Procedures Order as **Exhibit 2-7**, to be served upon each known holder of an Indirect Abuse Claim who is entitled to vote to accept or reject the Plan and whose Claim has not been withdrawn or disallowed or expunged by an order of the Bankruptcy Court on or before the Solicitation Date.

D.    **Expedited Distribution Election.**

Each holder of a properly completed non-duplicative proof of claim asserting a Direct Abuse Claim who filed such Claim by the Bar Date or was permitted by a Final Order of the Bankruptcy Court to file a late claim may elect <u>only</u> on his or her Ballot or Master Ballot to receive an Expedited Distribution, which, as specified in the Plan, is a one-time Cash payment from the Settlement Trust in the amount of $3,500.00, conditioned upon satisfaction of the criteria set forth in the Trust Distribution Procedures, in exchange for a full and final release in favor of the Settlement Trust, the Protected Parties, and the Chartered Organizations.  The Settlement Trust shall make the Expedited Distributions on or as soon as reasonably practicable after the latest to occur of (a) the Effective Date, (b) the date the applicable holders of Direct Abuse Claims who have elected to receive an Expedited Distribution have satisfied the criteria set forth in the Trust Distribution Procedures, and (c) the date upon which the Settlement Trust has sufficient Cash to fund the full amount of the Expedited Distributions while retaining sufficient Cash reserves to fund applicable Settlement Trust Expenses, as determined by the Settlement Trustee.  **If selecting the $3,500 Expedited Distribution, you must indicate this on the Ballot.  A holder of a Direct Abuse Claim will not be able to choose this option at a later date unless the Bankruptcy Court approves otherwise.**

E.    **Calculation of Voting Amount With Respect to Direct and Indirect Abuse Claims.[5]**

1.    Each holder of a Direct Abuse Claim who is entitled to vote shall have a single vote in the amount, for voting purposes only, of $1.00 in the aggregate per claimant, or as otherwise ordered by the Bankruptcy Court.  The temporary allowance of Direct Abuse Claims in the amount of $1.00 is solely for voting purposes, and shall not be binding upon the holder, the Debtors, the Settlement Trust, the Firms, or any other party for any purpose other than voting on the Plan.

2.    Each holder of an Indirect Abuse Claim, which includes, without limitation, any Abuse Claim for contribution, indemnity, reimbursement, or subrogation, who is entitled to vote shall have a single vote in the amount, for voting purposes only, of $1.00 in the aggregate per claimant, or as otherwise ordered by the Bankruptcy Court.  The temporary allowance of Indirect Abuse Claims in the amount of $1.00 is solely for voting purposes, and shall not be binding upon the holder, the Debtors, the Settlement Trust or any other party for any purpose other than voting on the Plan.

---

[5]    For the avoidance of doubt, in the event of a conflict between this <u>Section IV.E</u> describing the calculation of votes for Direct and Indirect Abuse Claims and any other section of these Solicitation Procedures, including <u>Section V.B</u>, the terms of this <u>Section IV.E</u> shall control.

F.    **Receipt of Multiple Ballots for a Single Direct Abuse Claim.**

1.    If notwithstanding their reasonable efforts to ensure that only one Solicitation Package (including one Ballot) is distributed on account of each holder of a Direct Abuse Claim who has filed duplicative Abuse Claims and/or on account of Abuse Claims that have been amended and superseded by later filed Abuse Claims, the Solicitation Agent receives more than one Ballot from or on behalf of the holder of a single Direct Abuse Claim on or before the Voting Deadline, the effective vote shall be the last Ballot actually received by the Solicitation Agent before the Voting Deadline that satisfies the voting and tabulation procedures specified in **Section V**.

2.    To the extent the Debtors receive a Ballot from a holder of a Direct Abuse Claim entitled to vote and a Ballot from an attorney purporting to represent such holder (including in accordance with the procedures related to Master Ballots), the Ballot received from the holder of the Direct Abuse Claim entitled to vote shall be counted.

3.    To the extent the Debtors receive a Master Ballot from two different Firms on account of the same Direct Abuse Claim with conflicting votes on the Plan, the Debtors shall reach out to both Firms, with notice of such communication to counsel to the Tort Claimants' Committee and the Coalition, and request written documentation of each Firm's representation of such claimant.  If representation of the holder of the Direct Abuse Claim is not resolved within ten (10) days from the notice of the conflict as provided by the Debtors, such votes shall not be counted.

4.    Other than with respect to the submission of conflicting Master Ballots by different Firms, if inconsistent votes are otherwise received by the Solicitation Agent on the same day for a single Direct Abuse Claim, such votes shall not be counted.

V.    **VOTING AND TABULATION PROCEDURES**

A.    **Holders of Claims Entitled to Vote.**

Only the following holders of Claims in the Voting Classes shall be entitled to vote with respect to such Claims (in addition to the special procedures set forth in **Section IV** above for holders of Direct and Indirect Abuse Claims):

1.    Holders of Claims who, on or before the Voting Record Date, have timely filed a Proof of Claim that (a) has not been expunged, disallowed, disqualified, withdrawn, or superseded prior to the Voting Record Date, and (b) is not the subject of a pending objection, other than a "reclassify" or "reduce and allow" objection, filed with the Bankruptcy Court on or before the Solicitation Date, pending the occurrence of a Resolution Event as provided herein; *provided that* a holder of a Claim that is the subject of a pending objection on a "reclassify" or "reduce and allow" basis shall receive a Solicitation Package and be entitled to vote such Claim in the reclassified priority or reduced amount contained in such objection absent a further order of the Bankruptcy Court;

2.    Holders of Claims that are listed on the Debtors' Schedules; *provided that* Claims that are scheduled as contingent, unliquidated, or disputed (excluding such scheduled

disputed, contingent or unliquidated Claims that have been paid or superseded by a timely filed Proof of Claim) shall be allowed to vote only in the amounts set forth in **Sections IV.D and V.B** of these Solicitation Procedures;

3.      Holders of Claims whose Claims arise (a) pursuant to an agreement or settlement with the Debtors, as reflected in a document filed with the Bankruptcy Court, (b) in an order entered by the Bankruptcy Court, or (c) in a document executed by the Debtors pursuant to authority granted by the Bankruptcy Court, in each case regardless of whether a Proof of Claim has been filed;

4.      Holders of any Disputed Claim that has been temporarily allowed to vote on the Plan pursuant to Bankruptcy Rule 3018 in accordance with **Section III.C.4** above; and

5.      The assignee of any Claim (other than an Abuse Claim) that was transferred on or before the Voting Record Date by any Entity described in subparagraphs (1) through (4) above; *provided* that such transfer or assignment has been fully effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register as of the Voting Record Date.

**B.      Establishing Claim Amounts for Voting Purposes.**

1.      If a Proof of Claim has been amended, the last-filed Proof of Claim as of the Voting Record Date shall be subject to these Solicitation Procedures and shall supersede any earlier filed Proof of Claim for voting purposes.  Any earlier-filed Proof of Claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such earlier filed Claim.

2.      Duplicate Claims within the same Voting Class shall be deemed temporarily allowed for voting purposes only in an amount equal to one such Claim and not in an amount equal to the aggregate of such Claims.

3.      Claims filed for $0.00 are not entitled to vote on the Plan, excluding the holders of Direct Abuse Claims and Indirect Abuse Claims.  Each holder of a Direct Abuse Claim and Indirect Abuse Claim who is entitled to vote shall have a single vote in the amount, for voting purposes only, of $1.00 in the aggregate per claimant Court pursuant to Section IV.E or as otherwise ordered by the Bankruptcy Court.

4.      Proofs of Claim that assert Claims in more than one Voting Class may be split into multiple Voting Classes for voting purposes.

5.      *Class 3A 2010 Credit Facility and Class 3B 2019 RCF Claims.*  The Claim amount of Class 3A and 3B Claims shall be established based on the amount of the applicable positions held by holders of Class 3A and Class 3B Claims as of the Voting Record Date, as

evidenced by (a) the Debtors' applicable books and records and (b) the claims register maintained in these Chapter 11 Cases.

6.      *Class 4A 2010 Bond Claims and Class 4B 2012 Bond Claims.*  The Claim amount of Class 4A and 4B Claims shall be established based on the amount of the applicable positions held by holders of Class 4A and Class 4B Claims as of the Voting Record Date, as evidenced by (a) the Debtors' applicable books and records and (b) the claims register maintained in these Chapter 11 Cases.

7.      *Class 5 Convenience Claims.*  The Claim amount of Class 5 Claims shall be established based on the amount of the applicable positions held by holders of Class 5 Claims as of the Voting Record Date, as evidenced by the claims register maintained in these Chapter 11 Cases.  With respect to holders of General Unsecured Claims in excess of $50,000 as of the Voting Record Date as evidenced by the claims register, if such Claim is Allowed and such holder elects on its Ballot to join Class 5 and reduce such Claim to $50,000, the Claim amount shall be set at $50,000.

8.      *Class 6 General Unsecured Claims.*  The Claim amount of Class 6 Claims shall be established based on the amount of the applicable positions held by holders of Class 6 Claims as of the Voting Record Date, as evidenced by (a) the Debtors' Schedules and (b) the claims register maintained in these Chapter 11 Cases.

9.      *Class 7 Non-Abuse Litigation Claims.*  The Claim amount of Class 7 Claims shall be established based on the amount of the applicable positions held by holders of Class 7 Claims as of the Voting Record Date, as evidenced by the claims register maintained in these Chapter 11 Cases.  For the avoidance of doubt, all Non-Abuse Litigation Claims in Class 7, including any Insured Non-Abuse Claim, which have not been fixed pursuant to a judgment or settlement entered prior to the Voting Record Date, shall be classified as a contingent and unliquidated Claim in accordance with this Section V.B and shall have a single vote in the amount, for voting purposes only, of $1.00 in aggregate per claimant, unless otherwise ordered by the Bankruptcy Court.  Such temporary allowance is solely for voting purposes, and will not be binding on the holder, the Debtors, or any other party for any purpose other than voting on the Plan.

10.      *Claim Amounts for Voting Purposes.*  The Claim amount established herein shall control for voting purposes only and shall not constitute the Allowed amount of any Claim under the terms of the Plan.  Moreover, any amounts filled in on Ballots by the Debtors through the Solicitation Agent, as applicable, are not binding for purposes of allowance and distribution. In tabulating votes, the following hierarchy shall be used to determine the amount of the Claim associated with each claimant's vote:

> a.      the Claim amount (i) settled or agreed upon by the Debtors, as memorialized in a document filed with the Bankruptcy Court, (ii) set forth in an order of the Bankruptcy Court or (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Bankruptcy Court;

b.    if subsection (a) does not apply, the Claim amount allowed (temporarily or otherwise) pursuant to a Resolution Event under **Section III.C** of these Solicitation Procedures;

c.    if none of subsections (a)–(b) apply, the Claim amount asserted in a Proof of Claim that has been timely filed (or deemed timely filed by the Bankruptcy Court under applicable law), except for any amounts that have been paid or asserted on account of any interest accrued after the Petition Date; *provided*, *that*, any Ballot submitted by a holder of a Claim who timely filed a Proof of Claim in respect of (i) a contingent Claim, whether liquidated or unliquidated, or a Claim in a wholly-unliquidated, unknown or undetermined amount (based on a reasonable review by the Debtors) that is not the subject of an objection shall count toward satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and shall count as a Ballot for a Claim in the amount of $1.00 solely for the purposes of voting and satisfying the dollar amount requirement of section 1126(c) of the Bankruptcy Code, and (ii) with respect to a non-contingent, partially liquidated and partially unliquidated Claim, such Claim shall be allowed for voting purposes only in the liquidated amount;

d.    if none of subsections (a)–(c) apply, the Claim amount listed in the Schedules (to the extent such Claim has <u>not</u> been superseded by a timely filed Proof of Claim); *provided* that such Claim is not scheduled as contingent, disputed, or unliquidated and has not been paid; *provided*, *further*, that a Claim that is listed in the Schedules as contingent, unliquidated, or disputed and for which a Proof of Claim was <u>not</u> (i) filed by the applicable Bar Date or (ii) deemed timely filed by an order of the Bankruptcy Court prior to the Voting Deadline is not entitled to vote; and

e.    if none of subsections (a)–(d) apply, such Claim shall count as a Ballot for a Claim in the amount of $0.00 solely for the purposes of voting.

11.    <u>*Stipulation*</u>. The Debtors are authorized to enter into stipulations or other agreements with the holder of any Claim agreeing to the amount of a Claim for voting purposes, and will provide notice and an opportunity for a hearing on any such stipulation.

## C.    Convenience Claim Election.

For solicitation and tabulation purposes, one Ballot will be provided to each holder of a General Unsecured Claim. Holders of Claims that would otherwise be treated as a General Unsecured Claim in an amount of $50,000 or less, if Allowed under the Plan, shall have their Claims treated as a Class 5 Convenience Claim; holders of General Unsecured Claims greater than $50,000, shall have the right, but not the obligation, to irrevocably elect to have such Claim

irrevocably reduced to $50,000 and treated as a Class 5 Convenience Claim (upon Allowance), in full and final satisfaction of such Claim, if elected on a properly and timely completed and delivered Ballot.

Any General Unsecured Claim in excess of $50,000 may not be subdivided into multiple Convenience Claims for purposes of receiving treatment as a Convenience Claim. If a holder of a General Unsecured Claim in the amount of $50,000 or less is deemed to join Class 5 (Convenience Claims) or an eligible holder of a General Unsecured Claim that is greater than $50,000 makes the voluntary election to join Class 5 (Convenience Claims), then its Claim shall, upon its allowance for voting purposes only, be counted only in such Class and shall not be tabulated as a Claim in Class 6 (General Unsecured Claims). For the avoidance of doubt, the vote of a holder of a General Unsecured Claim that is greater than $50,000 who elects to have such Claim treated as a Class 5 Convenience Claim (upon Allowance) will be counted as a vote on the Plan in Class 5.

**D.    Voting and Ballot Tabulation Procedures.**

The following voting procedures and standard assumptions shall be used in tabulating Ballots, along with the procedures described in the Ballots.[6]

1.    The Solicitation Agent shall date-stamp all Ballots when received. Ballots received on the day of the Voting Deadline shall be date and time-stamped. In addition, the Solicitation Agent shall retain originals of all Ballots for a period of two years after the Effective Date of the Plan, unless otherwise ordered by the Bankruptcy Court.

2.    Except as otherwise provided in these Solicitation Procedures, unless a Ballot is received by the Solicitation Agent on or prior to the Voting Deadline (as the same may be extended for all Voting Classes by the Debtors as set forth in Section II and as may be extended with respect to individual Ballots pursuant to Section VI), the Debtors shall reject such Ballot as invalid and, therefore, shall not count it in connection with confirmation of the Plan.

3.    If a Claim has been estimated for voting purposes in accordance with **Section III.C.4** above or otherwise allowed for voting purposes by order of the Bankruptcy Court, such Claim is temporarily allowed for voting purposes in the amount so estimated or allowed in such order.

4.    For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a Voting Class shall be aggregated as if such creditor held one Claim in the Voting Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan.

5.    The Debtors shall make reasonable efforts to provide any holder of a Claim who has filed or purchased duplicate Claims within the same Class with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors

---

[6]    The summary provided herein is for illustrative purposes only and is subject to the procedures described in the Ballots in all respects. In the event of any inconsistency between the summary of voting and tabulation procedures as set forth herein and the Ballots, the Ballots will control.

have objected to such duplicate Claims; *provided* that if the Debtors timely receive more than one Ballot from or on behalf of the holder of a single Direct Abuse Claim, the effective vote shall also be determined in accordance with **Section IV.E** above.  If the Debtors timely receive more than one Ballot from or on behalf of the holder of a single Claim, the effective vote shall be the Ballot last received by the Solicitation Agent that satisfies the voting and tabulation procedures specified in this **Section V.D**.  If more than one Ballot voting the same Claim is received prior to the Voting Deadline, the latest received, properly executed Ballot received by the Solicitation Agent before the Voting Deadline will supersede and revoke any prior Ballot.

6.    If the holder of a Claim submits inconsistent Ballots received by the Solicitation Agent on the same day other than as set forth in **Section IV.E** with respect to Direct Abuse Claims, such Ballots shall not be counted.

7.    Delivery of a defective or irregular Ballot shall not be deemed to have been made until such defect or irregularity has been cured on or before the Voting Deadline or has been waived by the Debtors.  Any waiver of defects or irregularities in any Ballot by the Debtors shall be detailed in the Voting Report filed by the Solicitation Agent and shall be subject to the procedures set forth in Section VI herein.

8.    After the Voting Deadline, a Ballot may only be withdrawn or modified pursuant to an order of the Bankruptcy Court authorizing such withdrawal or modification.  Any such withdrawal or modification shall be detailed in the Voting Report filed by the Solicitation Agent.

9.    The holder of a Claim must complete each section of the Ballot, including, without limitation, certifying the amount of its Claim, voting to accept or reject the Plan, completing the requested identification information, and signing and dating the Ballot.

10.    The holder of a Claim must vote all of its Claims either to accept or reject the Plan.  Accordingly, a Ballot (other than a Master Ballot) that partially rejects and partially accepts the Plan may not be counted.  Except with respect to delivery of a Master Ballot pursuant to the procedures set forth in **Section IV**, to the extent possible, the Debtors shall distribute to each holder of a Claim in the Voting Classes a single Ballot on account of the Claim held by such holder in the Voting Classes.

11.    The Debtors expressly reserve the right to amend the terms of the Plan (subject to compliance with section 1127 of the Bankruptcy Code).  If the Debtors make material changes to the terms of the Plan, the Debtors shall disseminate additional solicitation materials and extend the solicitation period, in each case to the extent required by law or further order of the Bankruptcy Court.

12.    If the party executing the Ballot is signing as a trustee, executor, guardian, attorney-in-fact, officer of a corporation, or acting in a fiduciary or representative capacity, such party must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must provide evidence satisfactory to the requesting party to act on behalf of the holder of the Claim.

13.     Subject to any contrary order of the Bankruptcy Court, the Debtors further reserve the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot pursuant to Section VI.  Any such waiver shall be detailed in the Voting Report filed by the Solicitation Agent.

14.     Neither the Debtors, nor any other person or entity, shall be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots except as provided herein nor shall any of them incur any liabilities for failure to provide such notification.

15.     The Solicitation Agent, in its discretion, may contact entities entitled to vote to cure any defects in the Ballot; *provided*, *however*, that the Solicitation Agent is not obligated to do so.

16.     Subject to entry of the Confirmation Order providing for such relief, if no Ballot is submitted in a Class, then such Class shall be deemed to have voted to accept the Plan.

17.     Subject to Bankruptcy Rule 3018(a), a voter may withdraw a valid Ballot by delivering a written notice of withdrawal to the Solicitation Agent before the Voting Deadline – the withdrawal must be signed by the party who signed the Ballot.  Any such withdrawal shall be detailed in the Voting Report filed by the Solicitation Agent.  All rights are reserved to contest any withdrawals.

18.     If multiple Ballots are timely received from or on behalf of a holder of a single Claim other than a Direct Abuse Claim (including an Indirect Abuse Claim), the effective vote shall be the last properly executed Ballot timely received by the Solicitation Agent that satisfies the voting and tabulation procedures specified in this **Section V.D** and shall supersede and revoke any prior Ballot received, *provided* that if such holder submits inconsistent Ballots received by the Solicitation Agent on the same day, such Ballots shall not be counted; *provided* that if the Debtors timely receive more than one Ballot from or on behalf of the holder of a single Direct Abuse Claim, the effective vote shall be determined in accordance with **Section IV.E** above.

19.     If multiple Ballots are received directly from the holder of a Claim <u>and</u> from a purported attorney or agent for such holder prior to the Voting Deadline, the Ballot received directly from the holder shall be the Ballot that is counted.  For the avoidance of doubt, any Ballot received directly from the holder of a Direct Abuse Claim shall supersede any Master Ballot returned on account of a Direct Abuse Claim and shall be the vote that is counted, in accordance with the procedures set forth in **Section IV**.

20.     In addition, the following Ballots may not be counted in determining the acceptance or rejection of the Plan:

a.     any Ballot submitted by a person who does not hold, or represent a person that holds, a Claim in the applicable Voting Class as of the Voting Record Date;

b.     any Ballot received after the Voting Deadline unless the Debtors have granted an extension in writing (including e-mail) with respect to such Ballot, which shall be detailed in the Voting Report and shall

be subject to the procedures set forth in Section VI.  With respect to Direct Abuse Claims, any such extension shall be subject to the consent of the Tort Claimants' Committee and the Coalition; if an extension remains disputed after the Debtors have sought such parties' consent, such Ballot shall only be counted upon an order of the Bankruptcy Court authorizing such extension.  The holder of a Claim may choose the method of delivery of its Ballot to the Solicitation Agent at its own risk.  Delivery of the Ballot shall be deemed made only when the original properly executed Ballot is actually received by the Solicitation Agent;

c.    any Ballot delivered by facsimile transmission, electronic mail, or any other means not specifically approved herein (unless an exception has been granted by the Debtors, which has been detailed in the Voting Report filed by the Solicitation Agent), provided that Ballots submitted through the E-Ballot Platform shall be counted;

d.    any Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

e.    any Ballot that is submitted in an inappropriate form that is not the appropriate Ballot for such Claim;

f.    any Ballot sent to a person other than the Solicitation Agent;

g.    any Ballot that is unsigned; *provided*, *however*, for the avoidance of doubt, a Ballot submitted via the Solicitation Agent's E-Ballot Platform shall be deemed to contain an original signature; or

h.    a Ballot without a vote on the Plan or on which the claimant has voted to both accept and reject the Plan.

21.    In addition, the following Master Ballots may not be counted in determining the acceptance or rejection of the Plan:

a.    a Master Ballot on which the attorney fails to make the required certifications;

b.    a Master Ballot that fails to include the required Exhibit;

c.    a Master Ballot for which a Firm fails to file a Rule 2019 Statement with the Court prior to or concurrently with the submission of the Master Ballot;

d.    any vote submitted on a Master Ballot pursuant to the Option (a) Certification for which a Firm fails to submit a log of the responses it has received from each of its applicable Abuse Survivor Clients to

the Solicitation Agent contemporaneously with its Master Ballot submission; or

e. any vote submitted on a Master Ballot pursuant to the Option (b) Certification for which a Firm fails to submit the power of attorney for each applicable Abuse Survivor Client.

## VI.    CHANGES TO THE SOLICITATION PROCEDURES

The approval of certain changes to the Solicitation Procedures are subject to the following requirements:

A. If the Debtors extend a deadline or provide a waiver pursuant to Sections II, V.D.2, V.D.7, V.D.13, or V.D.20(b) (each, a "Solicitation Change"), the Debtors shall:

1. memorialize the Solicitation Change in the Voting Report; and

2. concurrently with or following the filing of the Voting Report, file a notice with the Bankruptcy Court supporting the justification for the Solicitation Change.

B. Parties in interest shall have five (5) days to object to the Solicitation Change.

C. If no party in interest objects to the Solicitation Change, the Ballot(s) subject such change shall be accepted as having been received in compliance with the Solicitation Procedures and the Solicitation Change shall be included in the Voting Report.

D. If a party in interest objects to the Solicitation Change and the Debtors and such objecting party are unable to resolve the dispute, the Bankruptcy Court shall resolve such dispute at the Confirmation Hearing.  A revised Voting Report reflecting such resolution shall be filed, as applicable.

## VII.    AMENDMENTS TO THE PLAN AND SOLICITATION PROCEDURES

The Debtors reserve the right to make non-substantive or immaterial changes to the Disclosure Statement, the Solicitation Procedures Order, the Plan, the Ballots, the Confirmation Hearing Notice, and related documents without further order of the Bankruptcy Court, including, without limitation, changes to correct typographical and grammatical errors, and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Package before their distribution.

*        *        *        *        *

**<u>Exhibit 2-1</u>**

**Form of Ballot for Classes 3A and 3B**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

## BALLOT FOR CLASS 3A (2010 CREDIT FACILITY CLAIMS)
## AND CLASS 3B (2019 RCF CLAIMS)

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING YOUR BALLOT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**ACCESS TO SOLICITATION MATERIALS:**

**THE PLAN, THE DISCLOSURE STATEMENT, AND THE SOLICITATION PROCEDURES ORDER MAY BE ACCESSED, FREE OF CHARGE, AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA-BALLOTS.**

**IF YOU WOULD PREFER A PAPER OR OTHER FORMAT OF THESE MATERIALS, OR IF YOU NEED TO OBTAIN ADDITIONAL SOLICITATION PACKAGES, PLEASE CONTACT OMNI AGENT SOLUTIONS (THE "SOLICITATION AGENT") BY (A) CALLING THE DEBTORS' RESTRUCTURING HOTLINE AT 866-907-2721, (B) EMAILING BSABALLOTS@OMNIAGNT.COM, (C) WRITING TO BOY SCOUTS OF AMERICA BALLOT PROCESSING, C/O OMNI AGENT SOLUTIONS, 5955 DE SOTO AVENUE, SUITE 100, WOODLAND HILLS, CA 91367, OR (D) SUBMITTING AN INQUIRY ON THE DEBTORS' RESTRUCTURING WEBSITE AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY 4:00 P.M. (EASTERN TIME) ON DECEMBER 14, 2021 (THE "VOTING DEADLINE").**

**IF YOU VOTE TO ACCEPT OR REJECT THE PLAN, YOU WILL BE RELEASING THE RELEASED PARTIES FROM ANY AND ALL CLAIMS/CAUSES OF ACTION TO THE EXTENT PROVIDED IN ARTICLE X.J.4 OF THE PLAN UNLESS YOU**

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

**"OPT-OUT" OF SUCH RELEASES.  YOU MAY "OPT-OUT" OF SUCH RELEASES AND YOU MUST INDICATE SUCH "OPT-OUT" IN THE BALLOT.**

Pursuant to this ballot (this "Ballot"), the above-captioned debtors and debtors-in-possession (together, the ''Debtors") are soliciting votes from holders of Class 3A Claims (2010 Credit Facility Claims) and Class 3B Claims (2019 RCF Claims) on the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"), which is described in greater detail in that certain disclosure statement regarding the Plan, filed on [●], 2021 [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable.  On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. [●]] (the "Solicitation Procedures Order") approving the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code and the procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

You are receiving this Ballot because you are a holder of a Claim in Class 3A and/or Class 3B against the Debtors as of the Voting Record Date.  **Accordingly, you have a right to vote to accept or reject the Plan.**

Your rights are described in the Disclosure Statement for the Plan and the Solicitation Procedures Order.  **This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Solicitation Agent immediately via the contact information set forth above.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.**  To have your vote counted, you must complete, sign, and return this Ballot to the Solicitation Agent by the Voting Deadline.

If you vote to accept or reject the Plan, you will be deemed to provide the releases contained in **Article X.J.4** of the Plan and as set forth below unless you opt out of such releases. You may check the box below to opt out of the releases in **Article X.J.4** of the Plan.  Please be advised that the Plan also contains injunction and exculpation provisions, certain of which are set forth below.  If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt out of the releases in **Article X.J.4** of the Plan by this Ballot. For a full description of these provisions, see **Article VI.Q** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

**You should carefully review the Plan and Disclosure Statement before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment**

**of your Claim.  If you hold Claims in more than one Class, you will receive a Ballot for each Class in which you are entitled to vote.**

*[Remainder of Page Intentionally Left Blank]*

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

---

**PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW.  PLEASE FILL IN ALL OF THE INFORMATION REQUESTED UNDER ITEM 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.  Amount of Your Claim.**

For purposes of voting to accept or reject the Plan, the undersigned hereby certifies that as of the Voting Record Date, the undersigned was the holder (or authorized signatory of such holder) of a Class 3A or Class 3B Claim against the Debtors in the aggregate following unpaid principal amount, without regard to any accrued but unpaid interest:

**Class:** _____

**Debtor**: _____

**Claim(s) Amount**: $_____

**Item 2.  Vote on the Plan.**

Please vote either to accept or to reject the Plan with respect to your Claim in Class 3A or Class 3B below (please check one).  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

Prior to voting on the Plan, please note the following:

If you vote to accept or reject the Plan, you shall be deemed to have consented to the release set forth in Article X.J.4 of the Plan unless you opt out of the release by checking the box in Item 3 below.

If you abstain from voting, you shall not be deemed to have consented to the release provisions set forth in Article X.J.4 of the Plan.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions in Article X of the Plan.

| |
|---|
| **Check <u>only</u> one box**: |
| ☐    **ACCEPT (*I.E.*, VOTE IN FAVOR OF)** the Plan |
| ☐    **REJECT (*I.E.*, VOTE AGAINST)** the Plan |

<u>Item 3</u>.  **Optional Release Election.**

Unless a holder of a Class 3A or 3B Claim who votes to accept or reject the Plan opts out of the Releases by holders of Claims set forth below, such holder shall be deemed to have consented to the releases contained in <u>Article X.J.4</u> of the Plan, which provides as follows:

<u>Article X.J.4 of the Plan—Releases by Holders of Claims.</u>

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[2] to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[3] shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or

---

[2]    "<u>Released Parties</u>" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Creditors' Committee; (e) the members of the Creditors' Committee in their capacities as such; (f) the Tort Claimants' Committee; (g) the members of the Tort Claimants' Committee in their capacities as such; (h) the Future Claimants' Representative; (i) the Coalition; (j) JPM; (k) the Settling Insurance Companies, including Hartford; (l) the Contributing Chartered Organizations, including TCJC; (m) the Foundation, in its capacity as lender under the Foundation Loan Agreement; (n) the Ad Hoc Committee; (o) the members of the Ad Hoc Committee in their capacities as such; (p) the Creditor Representative; (q) the Mediators; and (r) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Released Party; provided further, that the definition of "Released Parties" shall in all instances be subject to <u>Article X.J.</u> of the Plan.

[3]    "<u>Releasing Claim Holder</u>" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in <u>Article X.J.4</u> of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in <u>Article X.J.4</u> of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in <u>Article X.J.4</u> of the Plan; and (d) all of such Persons' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such.

unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; **provided**, **however**, that the releases set forth in **Article X.J.4** of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Abuse Litigation Claim to recover on account of such Allowed Claim in accordance with **Article III.B.9** of the Plan.  Notwithstanding the foregoing or anything to the contrary herein, (i) with respect to holders of Allowed General Unsecured Claims or Allowed Non-Abuse Litigation Claims, nothing in the Plan or the release set forth in **Article X.J.4** of the Plan  shall, or shall be construed to, release any claims or Causes of Action against any Local Council, Chartered Organization (other than a Contributing Chartered Organization), or Non-Settling Insurance Company (subject to **Article IV.D.3** of the Plan) and (ii) nothing in the Plan or the release set forth in **Article X.J.4** of the Plan shall, or shall be construed to, release any claims or Causes of Action asserted by Century Indemnity Company against Sidley Austin LLP ("**Sidley**") related to Sidley's representation of the Debtors prior to the Petition Date.

If you voted to accept or reject the Plan in Item 2 above, check this box if you elect not to grant the release contained in Article X.J.4 of the Plan.

| The undersigned, as a holder of (or representative of a holder of) a Class 3A or 3B Claim, elects to: |
| --- |
| ☐   **Opt out of the third party release in Article X.J.4 of the Plan.** |

**Certain other Releases, Injunction and Exculpation Provisions Contained in the Plan**

**Releases by the Debtors and the Estates.**

**Releases by the Debtors and the Estates of the Released Parties.**  As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the Abuse Claims Settlement, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article X.J.1 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

**Releases by the Debtors and the Estates of Certain Avoidance Actions.**  As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of Creditors' Committee and its members in their respective

capacities as such in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Abuse Litigation Claims, and Convenience Claims of and from any and all Avoidance Actions.

## Exculpation.

From and after the Effective Date, none of the Exculpated Parties[4] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or before the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the JPM/Creditors' Committee Settlement, the Hartford Insurance Settlement Agreement, the TCJC Settlement Agreement, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct).  In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence.  Notwithstanding the foregoing or any provision of the Plan to the contrary, Sidley shall not be an Exculpated Party with respect to any claims that Century Indemnity Company asserts against Sidley related to Sidley's representation of the Debtors prior to the Petition Date.

## Injunctions Related to Releases and Exculpation.

**Injunction Related to Releases**.  As of the Effective Date, all holders of Claims that are the subject of **Article X.J** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is

---

[4]    "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Creditors' Committee; (d) the members of the Creditors' Committee in their capacities as such; (e) the Tort Claimants' Committee; (f) the members of the Tort Claimants' Committee in their capacities as such; (g) the Future Claimants' Representative; (h) the Creditor Representative; and (i) all of such Persons' current officers and directors, former officers and directors who served in such capacity during the pendency of the Chapter 11 Cases but are no longer officers or directors as of the Effective Date, employees, volunteers, agents, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals..

discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.1** of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is the subject of **Article X.J** of the Plan from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Injunction Related to Exculpation**.  As of the Effective Date, all holders of Claims that are the subject of **Article X.K** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.2** of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of **Article X.K** of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Item 4**. **Certifications, Acknowledgment, Signature and Date.**

By signing this Ballot, the holder of the Class 3A or 3B Claim (or authorized signatory of such holder) acknowledges receipt of the Disclosure Statement, the Plan, and the other applicable solicitation materials, and certifies that:

(i)     it has the power and authority to vote to accept or reject the Plan,

(ii)    it was the holder (or is entitled to vote on behalf of such holder) of the Class 3A or 3B Claim described in Item 1 as of the Voting Record Date,

(iii)   it has not submitted any other Ballots for its Class 3A or 3B Claims, or if it has submitted any other Ballots with respect to such Claim(s), then any such Ballots dated earlier are hereby revoked,

(iv)    it acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of such Entity either as a holder of a Class 3A Claim or as a holder of a Class 3A Claim,

(v)     it understands and, if accepting the Plan, agrees with the treatment provided for its Claim(s) under the Plan,

(vi)    it understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

(vii)   all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

| | |
|---|---|
| Print or Type Name of Claimant: | _____ |
| Last Four Digits of Social Security Number of Claimant: | _____ |
| Signature: | _____ |
| Name of Signatory (if different than Claimant): | _____ |
| If by Authorized Agent, Title of Agent: | _____ |
| Street Address: | _____ |
| City, State, Zip Code: | _____ |
| Telephone Number: | _____ |
| Email Address: | _____ |
| Date Completed: | _____ |

**IF THIS BALLOT IS NOT RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE <u>DECEMBER 14, 2021 AT 4:00 P.M. (EASTERN TIME)</u>, YOUR VOTE WILL NOT BE COUNTED.**

Ballots must be delivered to the Solicitation Agent (a) via the electronic Ballot submission platform on the Solicitation Agent's website (the "**E-Ballot Platform**") by visiting https://omniagentsolutions.com/bsa-ballots, and following the instructions set forth on the website, or (b) at the appropriate address listed below, or in the enclosed envelope, as applicable.  You are highly encouraged to submit your Ballot via the E-Ballot Platform.  If you choose to submit your Ballot via the E-Ballot Platform, you should NOT submit a hard copy Ballot.  Please choose only one method for returning your Ballot.

| If by E-Ballot Platform: | If by standard or overnight mail or personal delivery: |
|---|---|
| https://omniagentsolutions.com/bsa-ballots | Boy Scouts of America Ballot Processing<br>c/o Omni Agent Solutions<br>5955 De Soto Avenue, Suite 100<br>Woodland Hills, CA 91367 |

To submit your Ballot via the E-Ballot Platform, please visit https://omniagentsolutions.com/bsa-ballots and follow the instructions to submit your Ballot.

IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:

Unique E-Ballot ID#:  [_____]

The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.  Holders of Claims who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

If you have questions about this Ballot, or if you did not receive access to a copy of the Plan or any related materials, please contact the Solicitation Agent by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.

Information may also be obtained at https://omniagentsolutions.com/bsa-ballots.  **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Any admission of Class 3A or 3B Claims for purposes of voting on the Plan is not an admission of liability on the part of the Debtors or any other party for payment purposes.

## INSTRUCTIONS FOR COMPLETING YOUR BALLOT

To properly complete this Ballot, you must follow the procedures described below, which explain each of the items contained on your Ballot.  If you have any questions, please contact the Solicitation Agent using the contact information provided above or visit https://omniagentsolutions.com/bsa-ballots.

**1.     Use of Online Ballot Portal—If Submitting Your Vote Through the E-Ballot Platform:**

The Solicitation Agent will accept Ballots if properly completed through the E-Ballot Platform.  To submit your Ballot via the E-Ballot Platform, visit https://omniagentsolutions.com/bsa-ballots and follow the instructions to submit your Ballot.

---

**IMPORTANT NOTE**: You will need the following information to retrieve and submit your customized electronic Ballot:

**Unique E-Ballot ID#**: [_____]

---

The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via online or electronic submission.  **Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.  Creditors who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

**Use of Hard Copy Ballot—If Submitting Your Vote Through Standard or Overnight Mail or Personal Delivery:**

Submit your completed and signed Ballot by standard mail using the pre-addressed envelope included in the Solicitation Package, or by overnight mail or personal delivery to:

---

Boy Scouts of America Ballot Processing
c/o Omni Agent Solutions
5955 De Soto Avenue, Suite 100
Woodland Hills, CA 91367

---

**The Solicitation Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

**2.     To fill out your Ballot, you must complete the following:**

a.     **Item 1 (Amount of the Claim).**  Make sure that the information contained in Item 1 regarding the principal amount of your Claim you held on the Voting Record Date is correct.  **Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation**

**Procedures Order, each contingent Claim, whether liquidated or unliquidated, or a Claim in a wholly-unliquidated, unknown or undetermined amount that is not the subject of an objection, will be allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance, or any other purpose.**

b.    **Item 2 (Vote on the Plan).**  Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2.  You must vote the entire amount of your Claim either to accept (*i.e.*, vote in favor of) or reject (*i.e.*, vote against) the Plan and you may not split your vote. Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

c.    If you hold Claims in more than one class, you may receive more than one Ballot or Solicitation Package, labeled for a different class of Claims.  Your vote will be counted in determining acceptance or rejection of the Plan by a particular class of Claims only if you complete, sign, and return the Ballot labeled for such class of Claims in accordance with the instructions on that Ballot.

d.    **Item 3 (Releases).**  Pursuant to Article X of the Plan, the Debtors seek approval of the release provision set forth in Article X.J.4 of the Plan and provided above.  Holders of Claims who vote to accept or reject the Plan may opt out of this release by checking the box in Item 3.

---

**IF THE PLAN BECOMES EFFECTIVE, AS A HOLDER OF A CLASS 3A OR 3B CLAIM UNDER THE PLAN, IF YOU VOTE TO ACCEPT OR REJECT THE PLAN YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE X.J.4 OF THE PLAN, AS SET FORTH ABOVE, UNLESS YOU CHECK THE BOX IN ITEM 3 TO OPT OUT OF THE RELEASES.**

---

e.    **Item 4 (Certifications, Acknowledgement, Signature, and Date).**  Either the claimant, the claimant's personal representative, or the claimant's attorney must sign the Ballot.  If the Ballot is not signed, the vote shown on the Ballot will not be counted.

f.    Claimants with Social Security Numbers must provide the last four digits of their Social Security Number in Item 4 of the Ballot.

g.    The claimant, the claimant's personal representative, or the claimant's attorney must certify certain information on the Ballot.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

h.    By signing the Ballot, you make the following certifications on information and belief:

(i)    I have the power and authority to vote to accept or reject the Plan,

(ii)      I was the holder (or am entitled to vote on behalf of such holder) of the Class 3A or 3B Claim described in Item 1 as of the Voting Record Date,

(iii)     I have not submitted any other Ballots for other Class 3A or Class 3B Claims, or if I have submitted any other Ballots with respect to such Claims(s), then any such Ballots dated earlier are hereby revoked,

(iv)     I acknowledge that a vote to accept the Plan constitutes an acceptance of the treatment of my Claim either as a holder of a Class 3A Claim or as a holder of a Class 3B Claim,

(v)     I understand and, if accepting the Plan, agree with the treatment provided for my Claim(s) under the Plan,

(vi)     I understand and acknowledge that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

(vii)    all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

3.     **Other Instructions for Completing the Ballots:**

a.     The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of a Claim or Interest.

b.     The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

c.     If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Solicitation Agent and received by the Solicitation Agent before the Voting Deadline will supersede and revoke any prior Ballot.

        d.      To the extent you have received two (2) or more duplicative Ballots on account of the same Claim, please note that each claimant is authorized to submit only one Ballot on account of such Claim.

        e.      In the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

        f.      There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

---

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS INCLUDED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.**

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT, DID NOT RECEIVE INSTRUCTIONS REGARDING ACCESSING THE DISCLOSURE STATEMENT OR PLAN, RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT:**

| | |
|---|---|
| **TELEPHONE:** | **866-907-2721** |
| **EMAIL:** | **BSAballots@omniagnt.com** |
| **ADDRESS:** | **Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367** |
| **WEBSITE:** | **https://omniagentsolutions.com/BSA** |

---

**Exhibit 2-2**

**Form of Ballot for Classes 4A and 4B**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

**BALLOT FOR CLASS 4A (2010 BOND CLAIMS)**
**AND CLASS 4B (2012 BOND CLAIMS)**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING YOUR BALLOT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**ACCESS TO SOLICITATION MATERIALS:**

**THE PLAN, THE DISCLOSURE STATEMENT, AND THE SOLICITATION PROCEDURES ORDER MAY BE ACCESSED, FREE OF CHARGE, AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA-BALLOTS.**

**IF YOU WOULD PREFER A PAPER OR OTHER FORMAT OF THESE MATERIALS, OR IF YOU NEED TO OBTAIN ADDITIONAL SOLICITATION PACKAGES, PLEASE CONTACT OMNI AGENT SOLUTIONS (THE "SOLICITATION AGENT") BY (A) CALLING THE DEBTORS' RESTRUCTURING HOTLINE AT 866-907-2721, (B) EMAILING BSABALLOTS@OMNIAGNT.COM, (C) WRITING TO BOY SCOUTS OF AMERICA BALLOT PROCESSING, C/O OMNI AGENT SOLUTIONS, 5955 DE SOTO AVENUE, SUITE 100, WOODLAND HILLS, CA 91367, OR (D) SUBMITTING AN INQUIRY ON THE DEBTORS' RESTRUCTURING WEBSITE AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY 4:00 P.M. (EASTERN TIME) ON DECEMBER 14, 2021 (THE "VOTING DEADLINE").**

**IF YOU VOTE TO ACCEPT OR REJECT THE PLAN, YOU WILL BE RELEASING THE RELEASED PARTIES FROM ANY AND ALL CLAIMS/CAUSES OF ACTION TO THE EXTENT PROVIDED IN ARTICLE X.J.4 OF THE PLAN UNLESS YOU**

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

**"OPT-OUT" OF SUCH RELEASES.  YOU MAY "OPT OUT" OF SUCH RELEASES AND YOU MUST INDICATE SUCH "OPT-OUT" IN THE BALLOT.**

Pursuant to this ballot (this "Ballot"), the above-captioned debtors and debtors-in-possession (together, the ''Debtors") are soliciting votes from holders of Class 4A Claims (2010 Bond Claims) and Class 4B Claims (2012 Bond Claims) on the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"), which is described in greater detail in that certain disclosure statement regarding the Plan, filed on [●], 2021 [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable.  On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. [●]] (the "Solicitation Procedures Order") approving the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code and the procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").  Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

You are receiving this Ballot because you are a holder of a Claim in Class 4A Claim and/or Class 4B against the Debtors as of the Voting Record Date.  **Accordingly, you have a right to vote to accept or reject the Plan.**

Your rights are described in the Disclosure Statement for the Plan and Solicitation Procedures Order.  **This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Solicitation Agent immediately via the contact information set forth above.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.**  To have your vote counted, you must complete, sign, and return this Ballot to the Solicitation Agent by the Voting Deadline.

If you vote to accept or reject the Plan, you will be deemed to provide the releases contained in **Article X.J.4** of the Plan and as set forth below unless you opt out of such releases.  You may check the box below to opt out of the releases in **Article X.J.4** of the Plan.  Please be advised that the Plan also contains injunction and exculpation provisions, certain of which are set forth below.  If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt out of the releases in **Article X.J.4** of the Plan by this Ballot.  For a full description of these provisions, see **Article VI.Q** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

**You should carefully review the Plan and Disclosure Statement before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  If you hold Claims in more than one Class, you will receive a Ballot for each Class in which you are entitled to vote.**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

---

**PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW.  PLEASE FILL IN ALL OF THE INFORMATION REQUESTED UNDER ITEM 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

<u>Item 1</u>.  **Amount of Your Claim.**

For purposes of voting to accept or reject the Plan, the undersigned hereby certifies that as of the Voting Record Date, the undersigned was the holder (or authorized signatory of such holder) of a Class 4A or Class 4B Claim against the Debtors in the aggregate following unpaid principal amount, without regard to any accrued but unpaid interest:

**Class:** _____

**Debtor:** _____

**Claim(s) Amount:** $_____

<u>Item 2</u>.  **Vote on the Plan.**

Please vote either to accept or to reject the Plan with respect to your Claim in Class 4A or Class 4B below (please check one).  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

Prior to voting on the Plan, please note the following:

If you vote to accept or reject the Plan, you shall be deemed to have consented to the release set forth in <u>Article X.J.4</u> of the Plan unless you opt out of the release by checking the box in Item 3 below.

If you abstain from voting, you shall not be deemed to have consented to the release provisions set forth in <u>Article X.J.4</u> of the Plan.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions in <u>Article X</u> of the Plan.

<table>
<tr><td colspan="2"><strong>Check <u>only</u> one box</strong>:</td></tr>
<tr><td>☐</td><td><strong>ACCEPT</strong> (<em>I.E.</em>, <strong>VOTE IN FAVOR OF</strong>) the Plan</td></tr>
<tr><td>☐</td><td><strong>REJECT</strong> (<em>I.E.</em>, <strong>VOTE AGAINST</strong>) the Plan</td></tr>
</table>

<u>**Item 3**</u>.  **Optional Release Election.**

Unless a holder of a Class 4A or 4B Claim who votes to accept or reject the Plan opts out of the Releases by holders of Claims set forth below, such holder shall be deemed to have consented to the releases contained in <u>Article X.J.4</u> of the Plan, which provides as follows:

<u>**Article X.J.4 of the Plan—Releases by Holders of Claims**</u>.

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[2] to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[3] shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or

---

[2]  "<u>Released Parties</u>" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Creditors' Committee; (e) the members of the Creditors' Committee in their capacities as such; (f) the Tort Claimants' Committee; (g) the members of the Tort Claimants' Committee in their capacities as such; (h) the Future Claimants' Representative; (i) the Coalition; (j) JPM; (k) the Settling Insurance Companies, including Hartford; (l) the Contributing Chartered Organizations, including TCJC; (m) the Foundation, in its capacity as lender under the Foundation Loan Agreement; (n) the Ad Hoc Committee; (o) the members of the Ad Hoc Committee in their capacities as such; (p) the Creditor Representative; (q) the Mediators; and (r) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Released Party; provided further, that the definition of "Released Parties" shall in all instances be subject to <u>Article X.J.</u> of the Plan.

[3]  "<u>Releasing Claim Holder</u>" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in <u>Article X.J.4</u> of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in <u>Article X.J.4</u> of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in <u>Article X.J.4</u> of the Plan; and (d) all of such Persons' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such.

unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; <u>provided</u>, <u>however</u>, that the releases set forth in <u>Article X.J.4</u> of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Abuse Litigation Claim to recover on account of such Allowed Claim in accordance with <u>Article III.B.9</u> of the Plan.  Notwithstanding the foregoing or anything to the contrary herein, (i) with respect to holders of Allowed General Unsecured Claims or Allowed Non-Abuse Litigation Claims, nothing in the Plan or the release set forth in <u>Article X.J.4</u> of the Plan  shall, or shall be construed to, release any claims or Causes of Action against any Local Council, Chartered Organization (other than a Contributing Chartered Organization), or Non-Settling Insurance Company (subject to <u>Article IV.D.3</u> of the Plan) and (ii) nothing in the Plan or the release set forth in <u>Article X.J.4</u> of the Plan shall, or shall be construed to, release any claims or Causes of Action asserted by Century Indemnity Company against Sidley Austin LLP ("<u>Sidley</u>") related to Sidley's representation of the Debtors prior to the Petition Date.

If you voted to accept or reject the Plan in Item 2 above, check this box if you elect not to grant the release contained in <u>Article X.J.4</u> of the Plan.

The undersigned, as a holder of (or representative of a holder of) a Class 4A Claim or 4B Claim, elects to:

☐  **Opt out of the third party release in <u>Article X.J.4</u> of the Plan.**

**Certain other Releases, Injunction and Exculpation Provisions Contained in the Plan**

**Releases by the Debtors and the Estates.**

  **Releases by the Debtors and the Estates of the Released Parties.**  As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the Abuse Claims Settlement, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article X.J.1 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

  **Releases by the Debtors and the Estates of Certain Avoidance Actions.**  As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of Creditors' Committee and its members in their respective capacities as such in facilitating and implementing the reorganization of the Debtors, as an

integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Abuse Litigation Claims, and Convenience Claims of and from any and all Avoidance Actions.

**Exculpation.**

From and after the Effective Date, none of the Exculpated Parties[4] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or before the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the JPM/Creditors' Committee Settlement, the Hartford Insurance Settlement Agreement, the TCJC Settlement Agreement, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct).  In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence.  Notwithstanding the foregoing or any provision of the Plan to the contrary, Sidley shall not be an Exculpated Party with respect to any claims that Century Indemnity Company asserts against Sidley related to Sidley's representation of the Debtors prior to the Petition Date.

**Injunctions Related to Releases and Exculpation.**

**Injunction Related to Releases**.  As of the Effective Date, all holders of Claims that are the subject of **Article X.J** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided,

---

[4]    "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Creditors' Committee; (d) the members of the Creditors' Committee in their capacities as such; (e) the Tort Claimants' Committee; (f) the members of the Tort Claimants' Committee in their capacities as such; (g) the Future Claimants' Representative; (h) the Creditor Representative; and (i) all of such Persons' current officers and directors, former officers and directors who served in such capacity during the pendency of the Chapter 11 Cases but are no longer officers or directors as of the Effective Date, employees, volunteers, agents, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals.

however, that the injunctions set forth in <u>Article X.L.1</u> of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is the subject of <u>Article X.J</u> of the Plan from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Injunction Related to Exculpation**.  As of the Effective Date, all holders of Claims that are the subject of <u>Article X.K</u> of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under <u>Article X.E</u> of the Plan or released under <u>Article X.J</u> of the Plan; provided, however, that the injunctions set forth in <u>Article X.L.2</u> of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of <u>Article X.K</u> of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

<u>Item 4</u>.  **Certifications, Acknowledgment, Signature and Date.**

By signing this Ballot, the holder of the Class 4A or Class 4B Claim (or authorized signatory of such holder) acknowledges receipt of the Disclosure Statement, the Plan, and the other applicable solicitation materials, and certifies that:

(i)      it has the power and authority to vote to accept or reject the Plan,

(ii)     it was the holder (or is entitled to vote on behalf of such holder) of the Class 4A Claim or Class 4B Claim described in Item 1 as of the Voting Record Date,

(iii)    it has not submitted any other Ballots for other Class 4A Claim or Class 4B Claims, or if it has submitted any other Ballots with respect to such Claim(s), then any such Ballots dated earlier are hereby revoked,

(iv)    it acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of such Entity either as a holder of a Class 4A Claim or as a holder of a Class 4B Claim,

(v)     it understands and, if accepting the Plan, agrees with the treatment provided for its Claim(s) under the Plan,

(vi)     it understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

(vii)    all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

| | |
|---|---|
| Print or Type Name of Claimant: | _____ |
| Last Four Digits of Social Security Number of Claimant: | _____ |
| Signature: | _____ |
| Name of Signatory (if different than Claimant): | _____ |
| If by Authorized Agent, Title of Agent: | _____ |
| Street Address: | _____ |
| City, State, Zip Code: | _____ |
| Telephone Number: | _____ |
| Email Address: | _____ |
| Date Completed: | _____ |

**IF THIS BALLOT IS NOT RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE <u>DECEMBER 14, 2021 AT 4:00 P.M. (EASTERN TIME)</u>, YOUR VOTE WILL NOT BE COUNTED.**

Ballots must be delivered to the Solicitation Agent (a) via the electronic Ballot submission platform on the Solicitation Agent's website (the "**E-Ballot Platform**") by visiting **https://omniagentsolutions.com/bsa-ballots**, and following the instructions set forth on the website, or (b) at the appropriate address listed below, or in the enclosed envelope, as applicable. You are highly encouraged to submit your Ballot via the E-Ballot Platform. If you choose to submit your Ballot via the E-Ballot Platform, you should NOT submit a hard copy Ballot. Please choose only one method for returning your Ballot.

| If by E-Ballot Platform: | If by standard or overnight mail or personal delivery: |
|---|---|
| https://omniagentsolutions.com/bsa-ballots | Boy Scouts of America Ballot Processing<br>c/o Omni Agent Solutions<br>5955 De Soto Avenue, Suite 100<br>Woodland Hills, CA 91367 |

To submit your Ballot via the E-Ballot Platform, please visit https://omniagentsolutions.com/bsa-ballots and follow the instructions to submit your Ballot.

IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:

Unique E-Ballot ID#:  [_____]

The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable. Holders of Claims who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

If you have questions about this Ballot, or if you did not receive access to a copy of the Plan or any related materials, please contact the Solicitation Agent by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.

Information may also be obtained at https://omniagentsolutions.com/bsa-ballots. **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Any admission of Class 4A Claims or Class 4B Claims for purposes of voting on the Plan is not an admission of liability on the part of the Debtors or any other party for payment purposes.

## <u>INSTRUCTIONS FOR COMPLETING YOUR BALLOT</u>

To properly complete this Ballot, you must follow the procedures described below, which explain each of the items contained on your Ballot.  If you have any questions, please contact the Solicitation Agent using the contact information provided above or visit https://omniagentsolutions.com/bsa-ballots.

1. **Use of Online Ballot Portal—If Submitting Your Vote Through the E-Ballot Platform:**

The Solicitation Agent will accept Ballots if properly completed through the E-Ballot Platform.  To submit your Ballot via the E-Ballot Platform, visit https://omniagentsolutions.com/bsa-ballots and follow the instructions to submit your Ballot.

---

**IMPORTANT NOTE**: You will need the following information to retrieve and submit your customized electronic Ballot:

**Unique E-Ballot ID#**: [_____]

---

The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via online or electronic submission.  **Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.  Creditors who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

**Use of Hard Copy Ballot—If Submitting Your Vote Through Standard or Overnight Mail or Personal Delivery:**

Submit your completed and signed Ballot by standard mail using the pre-addressed envelope included in the Solicitation Package, or by overnight mail or personal delivery to:

---

Boy Scouts of America Ballot Processing
c/o Omni Agent Solutions
5955 De Soto Avenue, Suite 100
Woodland Hills, CA 91367

---

**The Solicitation Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2. **To fill out your Ballot, you must complete the following:**

a. **<u>Item 1 (Amount of the Claim)</u>.**  Make sure that the information contained in Item 1 regarding the principal amount of your Claim you held on the Voting Record Date is correct.  **Please note that, except as otherwise set forth in the Disclosure Statement and**

**Solicitation Procedures Order, each contingent Claim, whether liquidated or unliquidated, or a Claim in a wholly-unliquidated, unknown or undetermined amount that is not the subject of an objection, will be allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance, or any other purpose.**

      b.    <u>**Item 2 (Vote on the Plan)**</u>.  Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2.  You must vote the entire amount of your Claim either to accept (*i.e.*, vote in favor of) or reject (*i.e.*, vote against) the Plan and you may not split your vote.  Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

      c.    If you hold Claims in more than one class, you may receive more than one Ballot or Solicitation Package, labeled for a different class of Claims.  Your vote will be counted in determining acceptance or rejection of the Plan by a particular class of Claims only if you complete, sign, and return the Ballot labeled for such class of Claims in accordance with the instructions on that Ballot.

      d.    <u>**Item 3 (Releases)**</u>.  Pursuant to <u>Article X</u> of the Plan, the Debtors seek approval of the release provision set forth in <u>Article X.J.4</u> of the Plan and provided above.  Holders of Claims that vote to accept or reject the Plan may opt out of this release by checking the box in Item 3.

---

**IF THE PLAN BECOMES EFFECTIVE, AS A HOLDER OF A CLASS 4A CLAIM OR CLASS 4B CLAIM UNDER THE PLAN, IF YOU VOTE TO ACCEPT OR REJECT THE PLAN YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN <u>ARTICLE X.J.4</u> OF THE PLAN, AS SET FORTH ABOVE, UNLESS YOU CHECK THE BOX IN ITEM 3 TO OPT OUT OF THE RELEASES.**

---

      e.    <u>**Item 4 (Certifications, Acknowledgement, Signature, and Date)**</u>.  Either the claimant, the claimant's personal representative, or the claimant's attorney <u>must</u> sign the Ballot.  If the Ballot is not signed, the vote shown on the Ballot will <u>not</u> be counted.

      f.    Claimants with Social Security Numbers <u>must</u> provide the last four digits of their Social Security Number in Item 4 of the Ballot.

      g.    The claimant, the claimant's personal representative, or the claimant's attorney must certify certain information on the Ballot.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

      h.    By signing the Ballot, you make the following certifications on information and belief:

      (i)    I have the power and authority to vote to accept or reject the Plan,

(ii)     I was the holder (or am entitled to vote on behalf of such holder) of the Class 4A or 4B Claim described in Item 1 as of the Voting Record Date,

(iii)    I have not submitted any other Ballots for other Class 4A or Class 4B Claims, or if I have submitted any other Ballots with respect to such Claims(s), then any such Ballots dated earlier are hereby revoked,

(iv)    I acknowledge that a vote to accept the Plan constitutes an acceptance of the treatment of my Claim either as a holder of a Class 4A Claim or as a holder of a Class 4B Claim,

(v)     I understand and, if accepting the Plan, agree with the treatment provided for my Claim(s) under the Plan,

(vi)    I understand and acknowledge that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

(vii)   all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

**3.     Other Instructions for Completing the Ballots:**

a.      The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of a Claim or Interest.

b.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

c.      If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Solicitation Agent and received by the Solicitation Agent before the Voting Deadline will supersede and revoke any prior Ballot.

       d.      To the extent you have received two (2) or more duplicative Ballots on account of the same Claim, please note that each claimant is authorized to submit only one Ballot on account of such claim.

       e.      In the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

       f.      There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

---

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS INCLUDED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.**

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT, DID NOT RECEIVE INSTRUCTIONS REGARDING ACCESSING THE DISCLOSURE STATEMENT OR PLAN, RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT:**

| | |
|---|---|
| **TELEPHONE:** | **866-907-2721** |
| **EMAIL:** | **BSAballots@omniagnt.com** |
| **ADDRESS:** | **Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367** |
| **WEBSITE:** | **https://omniagentsolutions.com/BSA** |

**<u>Exhibit 2-3</u>**

**Form of Ballot for Class 6 General Unsecured Claims**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

**BALLOT FOR CLASS 5 (CONVENIENCE CLAIMS)
AND CLASS 6 (GENERAL UNSECURED CLAIMS)**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING YOUR BALLOT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**ACCESS TO SOLICITATION MATERIALS:**

**THE PLAN, THE DISCLOSURE STATEMENT, AND THE SOLICITATION PROCEDURES ORDER MAY BE ACCESSED, FREE OF CHARGE, AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA-BALLOTS.**

**IF YOU WOULD PREFER A PAPER OR OTHER FORMAT OF THESE MATERIALS, OR IF YOU NEED TO OBTAIN ADDITIONAL SOLICITATION PACKAGES, PLEASE CONTACT OMNI AGENT SOLUTIONS (THE "SOLICITATION AGENT") BY (A) CALLING THE DEBTORS' RESTRUCTURING HOTLINE AT 866-907-2721, (B) EMAILING BSABALLOTS@OMNIAGNT.COM, (C) WRITING TO BOY SCOUTS OF AMERICA BALLOT PROCESSING, C/O OMNI AGENT SOLUTIONS, 5955 DE SOTO AVENUE, SUITE 100, WOODLAND HILLS, CA 91367, OR (D) SUBMITTING AN INQUIRY ON THE DEBTORS' RESTRUCTURING WEBSITE AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY 4:00 P.M. (EASTERN TIME) ON DECEMBER 14, 2021 (THE "VOTING DEADLINE").**

**IF YOU VOTE TO ACCEPT OR REJECT THE PLAN, YOU WILL BE RELEASING THE RELEASED PARTIES FROM ANY AND ALL CLAIMS/CAUSES OF ACTION TO THE EXTENT PROVIDED IN ARTICLE X.J.4 OF THE PLAN UNLESS YOU**

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

**"OPT OUT" OF SUCH RELEASES.  YOU MAY "OPT-OUT" SUCH RELEASES AND YOU MUST INDICATE SUCH "OPT-OUT" IN THE BALLOT.**

Pursuant to this ballot (this "Ballot"), the above-captioned debtors and debtors-in-possession (together, the "Debtors") are soliciting votes from holders of Class 6 Claims (General Unsecured Claims), or, if your Claim is Allowed in an amount of $50,000 or less or you otherwise elect herein, holders of Class 5 Convenience Claims, on the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"), which is described in greater detail in that certain disclosure statement regarding the Plan, filed on [●], 2021 [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable.  On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. [●]] (the "Solicitation Procedures Order") approving the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code and the procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").  Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

You are receiving this Ballot because you are a holder of a General Unsecured Claim in Class 6 against the Debtors as of the Voting Record Date.  **Accordingly, you have a right to vote to accept or reject the Plan.  However, because you are a holder of a General Unsecured Claim, you may be entitled to make an election in this Ballot at Item 1 to be treated as a holder of a Class 5 Convenience Claim and to receive a distribution under the Plan as a holder of a Class 5 Claim.**  If you hold Claims in more than one Class, you will receive a Ballot for each Class in which you are entitled to vote.  However, if you are deemed to or elect to be treated as a holder of a Class 5 Claim, your vote on account of your General Unsecured Claim will only be counted as a Class 5 Claim and not as a Class 6 Claim, and you will not receive any distribution reserved for Class 6 Claims.

Your rights are described in the Disclosure Statement for the Plan and the Solicitation Procedures Order.  **This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Solicitation Agent immediately via the contact information set forth above.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.**  To have your vote counted, you must complete, sign, and return this Ballot to the Solicitation Agent by the Voting Deadline.

If you vote to accept or reject the Plan, you will be deemed to provide the releases in **Article X.J.4** of the Plan and as set forth below unless you opt out of such releases.  You may check the box below to opt out of the releases in **Article X.J.4** of the Plan.  Please be advised that the Plan also contains injunction and exculpation provisions, certain of which are set forth below.  If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not

2

you elect to opt out of the releases in **Article X.J.4** of the Plan by this Ballot.  For a full description of these provisions, see **Article VI.Q** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

**You should carefully review the Plan and Disclosure Statement before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  If you hold Claims in more than one Class, you will receive a Ballot for each Class in which you are entitled to vote.**

*[Remainder of Page Intentionally Left Blank]*

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

---

**PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW. PLEASE FILL IN ALL OF THE INFORMATION REQUESTED UNDER ITEM 5. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

<u>**Item 1**</u>. **Treatment or Election to Join Class 5 (Convenience Claims).**

Please note, if you make an election, you must still complete the remaining Items on this Ballot, including whether or not you accept or reject the Plan in Item 3.

<u>**Claims in the Amount of $50,000 or Less:**</u> Please take notice that if your Claim that would otherwise be a General Unsecured Claim is Allowed under the Plan in an amount of $50,000 or less, your Claim shall be treated as a Class 5 Convenience Claim.

<u>**Claims Greater than $50,000:**</u> Please take notice that if your Claim is Allowed under the Plan in an amount greater than $50,000, you have the right, but not the obligation, to irrevocably elect to have your Claim irrevocably reduced to $50,000 and treated as a Class 5 Convenience Claim (upon Allowance), in full and final satisfaction of your Claim, if elected on a timely and properly delivered and completed Ballot.

Any General Unsecured Claim in excess of $50,000 may not be subdivided into multiple Convenience Claims for purposes of receiving treatment as a Convenience Claim.

If your Claim is Allowed and is in the amount of $50,000 or less or if your Claim is Allowed in an amount greater than $50,000 and you choose to join Class 5 and reduce your Claim to $50,000, you will receive, with respect to your Allowed Claim, on the Effective Date or within thirty (30) days following the date that such Convenience Claim becomes Allowed, Cash in an amount equal to 100% of such holder's Allowed Convenience Class Claim.



**The holder of an Allowed General Unsecured Claim that is greater than $50,000 in Class 6 set forth in Item 2 ELECTS to:**

☐      **Join Class 5 (Convenience Claims) and receive treatment as a holder of a Claim in Class 5 only, and disclaim any right to receive a distribution as a holder of a Claim in Class 6**.

<u>**Item 2**</u>. **Amount of Your Claim.**

For purposes of voting to accept or reject the Plan, the undersigned hereby certifies that as of the Voting Record Date, the undersigned was the holder (or authorized signatory of such holder) of a General Unsecured Claim in the following aggregate unpaid principal amount, without regard to any accrued but unpaid interest:

<div style="border:1px solid black; padding:10px;">

**Debtor**: _____

**Claim Amount**: $ _____

</div>

<u>**Item 3**</u>.  **Vote on the Plan.**

Please vote either to accept or to reject the Plan with respect to your Claim set forth in Item 2 (please check one).  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

Prior to voting on the Plan, please note the following:

If you vote to accept or reject the Plan, you shall be deemed to have consented to the release set forth in <u>Article X.J.4</u> of the Plan unless you opt out of the release by checking the box in Item 3 below.

If you abstain from voting, you shall not be deemed to have consented to the release provisions set forth in <u>Article X.J.4</u> of the Plan.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions in <u>Article X</u> of the Plan.

<div style="border:1px solid black; padding:10px;">

**Check <u>only</u> one box**:

☐    **ACCEPT (*I.E.*, VOTE IN FAVOR OF)** the Plan

☐    **REJECT (*I.E.*, VOTE AGAINST)** the Plan

</div>

<u>**Item 4**</u>.  **Optional Release Election.**

**Unless a holder of a Class 5 or Class 6 Claim who votes to accept or reject the Plan opts out of the Releases by holders of Claims set forth below, such holder shall be deemed to have consented to the releases contained in <u>Article X.J.4</u> of the Plan, which provides as follows:**

<u>**Article X.J.4 of the Plan—Releases by Holders of Claims**</u>.

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[2] to facilitate and implement the reorganization of the Debtors and the**

---

[2]    "<u>Released Parties</u>" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Creditors' Committee; (e) the members of the Creditors' Committee in their capacities as such; (f) the Tort Claimants' Committee; (g)

settlements embodied in the Plan, including the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[3] shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in Article X.J.4 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or

---

the members of the Tort Claimants' Committee in their capacities as such; (h) the Future Claimants' Representative; (i) the Coalition; (j) JPM; (k) the Settling Insurance Companies, including Hartford; (l) the Contributing Chartered Organizations, including TCJC; (m) the Foundation, in its capacity as lender under the Foundation Loan Agreement; (n) the Ad Hoc Committee; (o) the members of the Ad Hoc Committee in their capacities as such; (p) the Creditor Representative; (q) the Mediators; and (r) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Released Party; provided further, that the definition of "Released Parties" shall in all instances be subject to Article X.J. of the Plan.

[3]    "Releasing Claim Holder" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in Article X.J.4 of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in Article X.J.4 of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in Article X.J.4 of the Plan; and (d) all of such Persons' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such.

agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Abuse Litigation Claim to recover on account of such Allowed Claim in accordance with **Article III.B.9** of the Plan.  Notwithstanding the foregoing or anything to the contrary herein, (i) with respect to holders of Allowed General Unsecured Claims or Allowed Non-Abuse Litigation Claims, nothing in the Plan or the release set forth in **Article X.J.4** of the Plan  shall, or shall be construed to, release any claims or Causes of Action against any Local Council, Chartered Organization (other than a Contributing Chartered Organization), or Non-Settling Insurance Company (subject to **Article IV.D.3** of the Plan) and (ii) nothing in the Plan or the release set forth in **Article X.J.4** of the Plan shall, or shall be construed to, release any claims or Causes of Action asserted by Century Indemnity Company against Sidley Austin LLP ("**Sidley**") related to Sidley's representation of the Debtors prior to the Petition Date.

If you voted to accept or reject the Plan in Item 3 above, check this box if you elect not to grant the release contained in Article X.J.4 of the Plan.

> The undersigned, as a holder of (or representative of a holder of) a Class 5 or Class 6 Claim, elects to:
>
> ☐  **Opt out of the third party release in Article X.J.4 of the Plan.**

**Certain other Releases, Injunction and Exculpation Provisions Contained in the Plan**

**Releases by the Debtors and the Estates.**

**Releases by the Debtors and the Estates of the Released Parties.** As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the Abuse Claims Settlement, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events

giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article X.J.1 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

**Releases by the Debtors and the Estates of Certain Avoidance Actions.**  As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of Creditors' Committee and its members in their respective capacities as such in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Abuse Litigation Claims, and Convenience Claims of and from any and all Avoidance Actions.

**Exculpation.**

From and after the Effective Date, none of the Exculpated Parties[4] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or before the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the JPM/Creditors' Committee Settlement, the Hartford Insurance Settlement Agreement, the TCJC Settlement Agreement, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct).  In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their

---

[4]    "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Creditors' Committee; (d) the members of the Creditors' Committee in their capacities as such; (e) the Tort Claimants' Committee; (f) the members of the Tort Claimants' Committee in their capacities as such; (g) the Future Claimants' Representative; (h) the Creditor Representative; and (i) all of such Persons' current officers and directors, former officers and directors who served in such capacity during the pendency of the Chapter 11 Cases but are no longer officers or directors as of the Effective Date, employees, volunteers, agents, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals.

duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence.  Notwithstanding the foregoing or any provision of the Plan to the contrary, Sidley shall not be an Exculpated Party with respect to any claims that Century Indemnity Company asserts against Sidley related to Sidley's representation of the Debtors prior to the Petition Date.

**Injunctions Related to Releases and Exculpation.**

 **Injunction Related to Releases**.  As of the Effective Date, all holders of Claims that are the subject of **Article X.J** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.1** of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is the subject of **Article X.J** of the Plan from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

 **Injunction Related to Exculpation**.  As of the Effective Date, all holders of Claims that are the subject of **Article X.K** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.2** of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of **Article X.K** of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Item 5**. **Certifications, Acknowledgment, Signature and Date.**

By signing this Ballot, the holder of the Claim set forth in Item 2 (or authorized signatory of such holder) acknowledges receipt of the Disclosure Statement, the Plan, and the other applicable solicitation materials, and certifies that:

(i)     it has the power and authority to vote to accept or reject the Plan,

(ii)    it was the holder (or is entitled to vote on behalf of such holder) of the Class 5 or Class 6 Claim being voted described in Item 2 as of the Voting Record Date,

(iii)   it has not submitted any other Ballots for other Class 5 or Class 6 Claims, or if it has submitted any other Ballots with respect to such Claims, then any such Ballots dated earlier are hereby revoked,

(iv)    it acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of such Entity either as a holder of a Class 5 Claim or as a holder of a Class 6 Claim, as applicable,

(v)     it understands and, if accepting the Plan, agrees with the treatment provided for its Claim(s) under the Plan,

(vi)    it understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 2, only the last properly completed Ballot voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

(vii)   all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

| | |
|---|---|
| Print or Type Name of Claimant: | _____ |
| Last Four Digits of Social Security Number of Claimant: | _____ |
| Signature: | _____ |

| | |
|---|---|
| Name of Signatory (if different than Claimant): | _____ |
| If by Authorized Agent, Title of Agent: | _____ |
| Street Address: | _____ |
| City, State, Zip Code: | _____ |
| Telephone Number: | _____ |
| Email Address: | _____ |
| Date Completed: | _____ |

**IF THIS BALLOT IS NOT RECEIVED BY THE SOLICITATION AGENT
ON OR BEFORE <u>DECEMBER 14, 2021 AT 4:00 P.M. (EASTERN TIME)</u>,
YOUR VOTE WILL NOT BE COUNTED.**

**Ballots must be delivered to the Solicitation Agent (a) via the electronic Ballot submission platform on the Solicitation Agent's website (the "<u>E-Ballot Platform</u>") by visiting <u>https://omniagentsolutions.com/bsa-ballots</u>, and following the instructions set forth on the website, or (b) at the appropriate address listed below, or in the enclosed envelope, as applicable.  You are highly encouraged to submit your Ballot via the E-Ballot Platform.  If you choose to submit your Ballot via the E-Ballot Platform, you should NOT submit a hard copy Ballot.  Please choose only one method for returning your Ballot.**

| <u>If by E-Ballot Platform</u>: | <u>If by standard or overnight mail or personal delivery</u>: |
|---|---|
| **https://omniagentsolutions.com/bsa-ballots** | **Boy Scouts of America Ballot Processing c/o Omni Agent Solutions 5955 De Soto Avenue, Suite 100 Woodland Hills, CA 91367** |

**To submit your Ballot via the E-Ballot Platform, please visit https://omniagentsolutions.com/bsa-ballots and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:  [_____]**

11

The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 2 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable. Holders of Claims who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

If you have questions about this Ballot, or if you did not receive access to a copy of the Plan or any related materials, please contact the Solicitation Agent by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.

Information may also be obtained at https://omniagentsolutions.com/bsa-ballots. **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtors or any other party for payment purposes.

## INSTRUCTIONS FOR COMPLETING YOUR BALLOT

To properly complete this Ballot, you must follow the procedures described below, which explain each of the items contained on your Ballot.  If you have any questions, please contact the Solicitation Agent using the contact information provided above or visit https://omniagentsolutions.com/bsa-ballots.

1. **Use of Online Ballot Portal—If Submitting Your Vote Through the E-Ballot Platform:**

The Solicitation Agent will accept Ballots if properly completed through the E-Ballot Platform.  To submit your Ballot via the E-Ballot Platform, visit https://omniagentsolutions.com/bsa-ballots and follow the instructions to submit your Ballot.

---

**IMPORTANT NOTE**: You will need the following information to retrieve and submit your customized electronic Ballot:

**Unique E-Ballot ID#**: [_____]

---

The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via online or electronic submission.  **Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 2 of your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.  Creditors who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

**Use of Hard Copy Ballot—If Submitting Your Vote Through Standard or Overnight Mail or Personal Delivery:**

Submit your completed and signed Ballot by standard mail using the pre-addressed envelope included in the Solicitation Package, or by overnight mail or personal delivery to:

---

Boy Scouts of America Ballot Processing
c/o Omni Agent Solutions
5955 De Soto Avenue, Suite 100
Woodland Hills, CA 91367

---

**The Solicitation Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2. **To fill out your Ballot, you must complete the following:**

a. **Item 1 (Treatment or Election to join Class 5 (Convenience Claims)).** As set forth above, if your Claim is Allowed and is in the amount of $50,000 or less or if your Claim is Allowed in an amount greater than $50,000 and you choose to join Class 5 and reduce

your Claim to $50,000, you are deemed to or entitled to make an election in this Ballot at Item 1 to be treated as a holder of a Class 5 Convenience Claim and to receive a distribution under the Plan as a holder of a Class 5 Claim.  If you wish to make the Convenience Class election, please check the box on Item 1.  You must make the Convenience Class election as to the entire amount of your Claim.  Any Claim in excess of $50,000 may not be subdivided into multiple Convenience Claims for purposes of receiving treatment as a Convenience Claim.  If you make this election, you must still complete the remaining Items on this Ballot, including whether or not you accept or reject the Plan in Item 3.

      b.     **Item 2 (Amount of the Claim).**  Make sure that the information contained in Item 2 regarding the principal amount of your Claim you held on the Voting Record Date is correct.  **Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each contingent Claim, whether liquidated or unliquidated, or a Claim in a wholly-unliquidated, unknown or undetermined amount that is not the subject of an objection, will be allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance, or any other purpose.**

      c.     If you hold Claims in more than one class, you may receive more than one Ballot or Solicitation Package, labeled for a different class of Claims.  Your vote will be counted in determining acceptance or rejection of the Plan by a particular class of Claims only if you complete, sign, and return the Ballot labeled for such class of Claims in accordance with the instructions on that Ballot.

      d.     **Item 3 (Vote on the Plan).**  Cast one vote to accept or reject the Plan by checking the appropriate box in Item 3.  You must vote the entire amount of your Claim either to accept (*i.e.*, vote in favor of) or reject (*i.e.*, vote against) the Plan and you may not split your vote.  Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

      e.     **Item 4 (Releases).**  Pursuant to Article X of the Plan, the Debtors seek approval of the release provision set forth in Article X.J.4 of the Plan and provided above.  Holders of Claims who vote to accept or reject the Plan may opt out of this release by checking the box in Item 4.

---

**IF THE PLAN BECOMES EFFECTIVE, AS A HOLDER OF A CLASS 5 OR CLASS 6 CLAIM, AS APPLICABLE, UNDER THE PLAN, IF YOU VOTE TO ACCEPT OR REJECT THE PLAN YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE X.J.4 OF THE PLAN, AS SET FORTH ABOVE, UNLESS YOU CHECK THE BOX IN ITEM 4 TO OPT OUT OF THE RELEASES.**

---

      f.     **Item 5 (Certifications, Acknowledgement, Signature, and Date).**  Either the claimant, the claimant's personal representative, or the claimant's attorney must sign the Ballot.  If the Ballot is not signed, the vote shown on the Ballot will not be counted.

      g.     Claimants with Social Security Numbers must provide the last four digits of their Social Security Number in Item 5 of the Ballot.

h.     The claimant, the claimant's personal representative, or the claimant's attorney must certify certain information on the Ballot.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

i.     By signing the Ballot, you make the following certifications on information and belief:

(i)     I have the power and authority to vote to accept or reject the Plan,

(ii)     I was the holder (or am entitled to vote on behalf of such holder) of the Class 5 or Class 6 Claim described in Item 2 as of the Voting Record Date,

(iii)     I have not submitted any other Ballots for other Class 5 or Class 6 Claims, or, if I have submitted any other Ballots with respect to such Claims, then any such Ballots dated earlier are hereby revoked,

(iv)     I acknowledge that a vote to accept the Plan constitutes an acceptance of the treatment of my Claim either as a holder of a Class 5 Claim or as a holder of a Class 6 Claim,

(v)     I understand and, if accepting the Plan, agree with the treatment provided for my Claim(s) under the Plan,

(vi)     I understand and acknowledge that if multiple Ballots are submitted voting the Claim set forth in Item 2, only the last properly completed Ballot voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

(vii)     all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

**3.     Other Instructions for Completing the Ballots:**

a.     The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of a Claim or Interest.

b.       The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

c.       If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Solicitation Agent and received by the Solicitation Agent before the Voting Deadline will supersede and revoke any prior Ballot.

d.       To the extent you have received two (2) or more duplicative Ballots on account of the same Claim, please note that each claimant is authorized to submit only one Ballot on account of such Claim.

e.       In the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

f.       There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

---

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS INCLUDED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.**

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT, DID NOT RECEIVE INSTRUCTIONS REGARDING ACCESSING THE DISCLOSURE STATEMENT OR PLAN, RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT:**

| | |
|---|---|
| **TELEPHONE:** | **866-907-2721** |
| **EMAIL:** | **BSAballots@omniagnt.com** |
| **ADDRESS:** | **Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367** |
| **WEBSITE:** | **https://omniagentsolutions.com/BSA** |

## **Exhibit 2-4**

**Form of Ballot for Class 7 Non-Abuse Litigation Claims**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

**BALLOT FOR CLASS 7 (NON-ABUSE LITIGATION CLAIMS)**

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING YOUR BALLOT CAREFULLY BEFORE COMPLETING THIS BALLOT.

ACCESS TO SOLICITATION MATERIALS:

THE PLAN, THE DISCLOSURE STATEMENT, AND THE SOLICITATION PROCEDURES ORDER MAY BE ACCESSED, FREE OF CHARGE, AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA-BALLOTS.

IF YOU WOULD PREFER A PAPER OR OTHER FORMAT OF THESE MATERIALS, OR IF YOU NEED TO OBTAIN ADDITIONAL SOLICITATION PACKAGES, PLEASE CONTACT OMNI AGENT SOLUTIONS (THE "SOLICITATION AGENT") BY (A) CALLING THE DEBTORS' RESTRUCTURING HOTLINE AT 866-907-2721, (B) EMAILING BSABALLOTS@OMNIAGNT.COM, (C) WRITING TO BOY SCOUTS OF AMERICA BALLOT PROCESSING, C/O OMNI AGENT SOLUTIONS, 5955 DE SOTO AVENUE, SUITE 100, WOODLAND HILLS, CA 91367, OR (D) SUBMITTING AN INQUIRY ON THE DEBTORS' RESTRUCTURING WEBSITE AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA.

THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY 4:00 P.M. (EASTERN TIME) ON DECEMBER 14, 2021 (THE "VOTING DEADLINE").

IF YOU VOTE TO ACCEPT OR REJECT THE PLAN, YOU WILL BE RELEASING THE RELEASED PARTIES FROM ANY AND ALL CLAIMS/CAUSES OF ACTION TO THE EXTENT PROVIDED IN ARTICLE X.J.4 OF THE PLAN UNLESS YOU

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

**"OPT-OUT" OF SUCH RELEASES.  YOU MAY "OPT-OUT" SUCH RELEASES AND YOU MUST INDICATE SUCH "OPT-OUT" IN THE BALLOT.**

Pursuant to this ballot (this "Ballot"), the above-captioned debtors and debtors-in-possession (together, the ''Debtors") are soliciting votes from holders of Class 7 Non-Abuse Litigation Claims on the *Amended Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"), which is described in greater detail in that certain disclosure statement regarding the Plan, filed on [●], 2021 [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable.  On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. [●]] (the "Solicitation Procedures Order") approving the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code and the procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").  Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

You are receiving this Ballot because you are a holder of a Non-Abuse Litigation Claim in Class 7 against the Debtors as of the Voting Record Date.  **Accordingly, you have a right to vote to accept or reject the Plan.**

Your rights are described in the Disclosure Statement for the Plan and the Solicitation Procedures Order.  **This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Solicitation Agent immediately via the contact information set forth above.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.**  To have your vote counted, you must complete, sign, and return this Ballot to the Solicitation Agent by the Voting Deadline.

If you vote to accept or reject the Plan, you will be deemed to provide the releases in **Article X.J.4** of the Plan unless you opt out of such releases.  You may check the box below to opt out of the releases in **Article X.J.4** of the Plan.  Please be advised that the Plan also contains injunction and exculpation provisions, certain of which are set forth below.  If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt out of the releases in **Article X.J.4** of the Plan by this Ballot.  For a full description of these provisions, see **Article VI.Q** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

**You should carefully review the Plan and Disclosure Statement before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  If you hold Claims in more than one Class, you will receive a Ballot for each Class in which you are entitled to vote.**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

> **PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW.  PLEASE FILL IN ALL OF THE INFORMATION REQUESTED UNDER ITEM 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

<u>**Item 1**</u>.  **Amount of Your Claim.**

For purposes of voting to accept or reject the Plan, the undersigned hereby certifies that as the Voting Record Date, the undersigned was the holder (or authorized signatory of such holder) of a Non-Abuse Litigation Claim in the following aggregate unpaid principal amount, without regard to any accrued but unpaid interest:

> **Debtor**:  _____
>
> **Claim Amount**:  $_____

<u>**Item 2**</u>.  **Vote on the Plan.**

Please vote either to accept or to reject the Plan with respect to your Claim in Class 7 below (please check one).  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

Prior to voting on the Plan, please note the following:

If you vote to accept or reject the Plan, you shall be deemed to have consented to the release set forth in <u>Article X.J.4</u> of the Plan unless you opt out of the release by checking the box in Item 3 below.

If you abstain from voting, you shall not be deemed to have consented to the release provisions set forth in <u>Article X.J.4</u> of the Plan.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions in <u>Article X</u> of the Plan.

> **Check <u>only</u> one box**:
>
> ☐    **ACCEPT (*I.E.*, VOTE IN FAVOR OF)** the Plan
>
> ☐    **REJECT (*I.E.*, VOTE AGAINST)** the Plan

**Item 3.  Optional Release Election.**

Unless a holder of a Class 7 Claim who votes to accept or reject the Plan opts out of the Releases by holders of Claims set forth below, such holder shall be deemed to have consented to the releases contained in <u>Article X.J.4</u> of the Plan, which provides as follows:

**Article X.J.4 of the Plan—Releases by Holders of Claims.**

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[2] to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[3] shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the

---

[2]  "<u>Released Parties</u>" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Creditors' Committee; (e) the members of the Creditors' Committee in their capacities as such; (f) the Tort Claimants' Committee; (g) the members of the Tort Claimants' Committee in their capacities as such; (h) the Future Claimants' Representative; (i) the Coalition; (j) JPM; (k) the Settling Insurance Companies, including Hartford; (l) the Contributing Chartered Organizations, including TCJC; (m) the Foundation, in its capacity as lender under the Foundation Loan Agreement; (n) the Ad Hoc Committee; (o) the members of the Ad Hoc Committee in their capacities as such; (p) the Creditor Representative; (q) the Mediators; and (r) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Released Party; provided further, that the definition of "Released Parties" shall in all instances be subject to <u>Article X.J.</u> of the Plan.

[3]  "<u>Releasing Claim Holder</u>" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in <u>Article X.J.4</u> of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in <u>Article X.J.4</u> of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in <u>Article X.J.4</u> of the Plan; and (d) all of such Persons' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such.

Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; **provided**, **however**, that the releases set forth in **Article X.J.4** of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Abuse Litigation Claim to recover on account of such Allowed Claim in accordance with **Article III.B.9** of the Plan.  Notwithstanding the foregoing or anything to the contrary herein, (i) with respect to holders of Allowed General Unsecured Claims or Allowed Non-Abuse Litigation Claims, nothing in the Plan or the release set forth in **Article X.J.4** of the Plan  shall, or shall be construed to, release any claims or Causes of Action against any Local Council, Chartered Organization (other than a Contributing Chartered Organization), or Non-Settling Insurance Company (subject to **Article IV.D.3** of the Plan) and (ii) nothing in the Plan or the release set forth in **Article X.J.4** of the Plan shall, or shall be construed to, release any claims or Causes of Action asserted by Century Indemnity Company against Sidley Austin LLP ("**Sidley**") related to Sidley's representation of the Debtors prior to the Petition Date.

If you voted to accept or reject the Plan in Item 2 above, check this box if you elect not to grant the release contained in Article X.J.4 of the Plan.



The undersigned, as a holder of (or representative of a holder of) a Class 7 Claim, elects to:

☐ **Opt out of the third party release in Article X.J.4 of the Plan.**

**Certain other Releases, Injunction and Exculpation Provisions Contained in the Plan**

**Releases by the Debtors and the Estates.**

**Releases by the Debtors and the Estates of the Released Parties.**  As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, the Debtors, Reorganized

**BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article X.J.1 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.**

**Releases by the Debtors and the Estates of Certain Avoidance Actions. As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of Creditors' Committee and its members in their respective capacities as such in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Abuse Litigation Claims, and Convenience Claims of and from any and all Avoidance Actions.**

**Exculpation.**

From and after the Effective Date, none of the Exculpated Parties[4] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission,

---

[4]    "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Creditors' Committee; (d) the members of the Creditors' Committee in their capacities as such; (e) the Tort

transaction, event, or other circumstance occurring on or before the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, JPM/Creditors' Committee Settlement, the the Hartford Insurance Settlement Agreement, the TCJC Settlement Agreement, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct).  In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence.  Notwithstanding the foregoing or any provision of the Plan to the contrary, Sidley shall not be an Exculpated Party with respect to any claims that Century Indemnity Company asserts against Sidley related to Sidley's representation of the Debtors prior to the Petition Date.

**Injunctions Related to Releases and Exculpation.**

**Injunction Related to Releases**.  As of the Effective Date, all holders of Claims that are the subject of **Article X.J** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.1** of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is the subject of **Article X.J** of the Plan from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Injunction Related to Exculpation**.  As of the Effective Date, all holders of Claims that are the subject of **Article X.K** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or

---

Claimants' Committee; (f) the members of the Tort Claimants' Committee in their capacities as such; (g) the Future Claimants' Representative; (h) the Creditor Representative; and (i) all of such Persons' current officers and directors, former officers and directors who served in such capacity during the pendency of the Chapter 11 Cases but are no longer officers or directors as of the Effective Date, employees, volunteers, agents, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals.

indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.2** of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of **Article X.K** of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Item 4.** **Certifications, Acknowledgment, Signature and Date.**

By signing this Ballot, the holder of the Claim (or authorized signatory of such holder) acknowledges receipt of the Disclosure Statement, the Plan, and the other applicable solicitation materials, and certifies that:

(i)     it has the power and authority to vote to accept or reject the Plan,

(ii)    it was the holder (or is entitled to vote on behalf of such holder) of the Class 7 Non-Abuse Litigation Claim described in Item 1 as of the Voting Record Date,

(iii)   it has not submitted any other Ballots for other Class 7 Claims, or if it has submitted any other Ballots with respect to such Claims, then any such Ballots dated earlier are hereby revoked,

(iv)    it acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of such Entity as a holder of a Class 7 Claim,

(v)     it understands and, if accepting the Plan, agrees with the treatment provided for its Claim(s) under the Plan,

(vi)    it understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

(vii)   all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing

to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

| | |
|---|---|
| Print or Type Name of Claimant: | _____ |
| Last Four Digits of Social Security Number of Claimant: | _____ |
| Signature: | _____ |
| Name of Signatory (if different than Claimant): | _____ |
| If by Authorized Agent, Title of Agent: | _____ |
| Street Address: | _____ |
| City, State, Zip Code: | _____ |
| Telephone Number: | _____ |
| Email Address: | _____ |
| Date Completed: | _____ |

**IF THIS BALLOT IS NOT RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE <u>DECEMBER 14, 2021 AT 4:00 P.M. (EASTERN TIME)</u>, YOUR VOTE WILL NOT BE COUNTED.**

**Ballots must be delivered to the Solicitation Agent (a) via the electronic Ballot submission platform on the Solicitation Agent's website (the "<u>E-Ballot Platform</u>") by visiting <u>https://omniagentsolutions.com/bsa-ballots</u>, and following the instructions set forth on the website, or (b) at the appropriate address listed below, or in the enclosed envelope, as applicable. You are highly encouraged to submit your Ballot via the E-Ballot Platform. If you choose to submit your Ballot via the E-Ballot Platform, you should NOT submit a hard copy Ballot. Please choose only one method for returning your Ballot.**

| If by E-Ballot Platform: | If by standard or overnight mail or personal delivery: |
|---|---|
| https://omniagentsolutions.com/bsa-ballots | **Boy Scouts of America Ballot Processing**<br>**c/o Omni Agent Solutions**<br>**5955 De Soto Avenue, Suite 100**<br>**Woodland Hills, CA 91367** |

**To submit your Ballot via the E-Ballot Platform, please visit https://omniagentsolutions.com/bsa-ballots and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:  [_____]**

The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.  Holders of Claims who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

If you have questions about this Ballot, or if you did not receive access to a copy of the Plan or any related materials, please contact the Solicitation Agent by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.

Information may also be obtained at https://omniagentsolutions.com/bsa-ballots.  **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtors or any other party for payment purposes.

*[Remainder of Page Intentionally Left Blank]*

## <u>INSTRUCTIONS FOR COMPLETING YOUR BALLOT</u>

To properly complete this Ballot, you must follow the procedures described below, which explain each of the items contained on your Ballot. If you have any questions, please contact the Solicitation Agent using the contact information provided above or visit https://omniagentsolutions.com/bsa-ballots.

1. **Use of Online Ballot Portal – If Submitting Your Vote Through the E-Ballot Platform:**

The Solicitation Agent will accept Ballots if properly completed through the E-Ballot Platform. To submit your Ballot via the E-Ballot Platform, visit https://omniagentsolutions.com/bsa-ballots and follow the instructions to submit your Ballot.

---

**IMPORTANT NOTE**: You will need the following information to retrieve and submit your customized electronic Ballot:

**Unique E-Ballot ID#**: [_____]

---

The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via online or electronic submission. **Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable. Creditors who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

**Use of Hard Copy Ballot—If Submitting Your Vote Through Standard or Overnight Mail or Personal Delivery:**

Submit your completed and signed Ballot by standard mail using the pre-addressed envelope included in the Solicitation Package, or by overnight mail or personal delivery to:

---

Boy Scouts of America Ballot Processing
c/o Omni Agent Solutions
5955 De Soto Avenue, Suite 100
Woodland Hills, CA 91367

---

**The Solicitation Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2. **To fill out your Ballot, you must complete the following:**

a. **<u>Item 1 (Amount of the Claim)</u>. Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each contingent Claim, whether liquidated or unliquidated, or a Claim in a wholly-unliquidated, unknown or**

**undetermined amount that is not the subject of an objection, will be allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance, or any other purpose. For the avoidance of doubt, all Non-Abuse Litigation Claims in Class 7, including any Insured Non-Abuse Claim, which have not been fixed pursuant to a judgment or settlement entered prior to the Voting Record Date, shall be classified as a contingent and unliquidated Claim as set forth above.  Such temporary allowance is only for voting purposes, and shall not be binding on the holder, the Debtors, or any other party for distribution under the Plan or any purpose other than voting on the Plan.**

> b.    **Item 2 (Vote on the Plan).**  Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2.  You must vote the entire amount of your Claim either to accept (*i.e.*, vote in favor of) or reject (*i.e.*, vote against) the Plan and you may not split your vote.  Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

> c.    If you hold Claims in more than one class, you may receive more than one Ballot or Solicitation Package, labeled for a different class of Claims.  Your vote will be counted in determining acceptance or rejection of the Plan by a particular class of Claims only if you complete, sign, and return the Ballot labeled for such class of Claims in accordance with the instructions on that Ballot.

> d.    **Item 3 (Releases).**  Pursuant to <u>Article X</u> of the Plan, the Debtors seek approval of the release provision set forth in <u>Article X.J.4</u> of the Plan and provided above.  Holders of Claims that vote to accept or reject the Plan may opt out of this release by checking the box in Item 3.

> **IF THE PLAN BECOMES EFFECTIVE, AS A HOLDER OF A CLASS 7 NON-ABUSE LITIGATION CLAIM UNDER THE PLAN, IF YOU VOTE TO ACCEPT OR REJECT THE PLAN YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN <u>ARTICLE X.J.4</u> OF THE PLAN, AS SET FORTH ABOVE, UNLESS YOU CHECK THE BOX IN ITEM 3 TO OPT OUT OF THE RELEASES.**

> e.    **Item 4 (Certifications, Acknowledgement, Signature, and Date).**  Either the claimant, the claimant's personal representative, or the claimant's attorney <u>must</u> sign the Ballot.  If the Ballot is not signed, the vote shown on the Ballot will <u>not</u> be counted.

> f.    Claimants with Social Security Numbers <u>must</u> provide the last four digits of their Social Security Number in Item 4 of the Ballot.

> g.    The claimant, the claimant's personal representative, or the claimant's attorney must certify certain information on the Ballot.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

> h.    By signing the Ballot, you make the following certifications on information and belief:

(i)      I have the power and authority to vote to accept or reject the Plan,

(ii)     I was the holder (or am entitled to vote on behalf of such holder) of the Class 7 Non-Abuse Litigation Claim described in Item 1 as of the Voting Record Date,

(iii)    I have not submitted any other Ballots for other Class 7 Claims, or, if I have submitted any other Ballots with respect to such Claims, then any such Ballots dated earlier are hereby revoked,

(iv)     I acknowledge that a vote to accept the Plan constitutes an acceptance of the treatment of my Claim as a Class 7 Claim,

(v)      I understand and, if accepting the Plan, agree with the treatment provided for my Claim(s) under the Plan,

(vi)     I understand and acknowledge that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

(vii)    all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

**3.     Other Instructions for Completing the Ballots:**

a.      The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of a Claim or Interest.

b.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

c.      If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Solicitation Agent and received by the Solicitation Agent before the Voting Deadline will supersede and revoke any prior Ballot.

d.      To the extent you have received two (2) or more duplicative Ballots on account of the same Claim, please note that each claimant is authorized to submit only one Ballot on account of such Claim.

e.      In the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

f.      There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

---

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS INCLUDED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.**

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT, DID NOT RECEIVE INSTRUCTIONS REGARDING ACCESSING THE DISCLOSURE STATEMENT OR PLAN, RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT:**

| | |
|---|---|
| **TELEPHONE:** | **866-907-2721** |
| **EMAIL:** | **BSAballots@omniagnt.com** |
| **ADDRESS:** | **Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367** |
| **WEBSITE:** | **https://omniagentsolutions.com/BSA** |

## **Exhibit 2-5**

**Form of Master Ballot for Class 8 Direct Abuse Claims**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

**CLASS 8 DIRECT ABUSE CLAIM MASTER BALLOT**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING YOUR MASTER BALLOT CAREFULLY BEFORE COMPLETING THIS MASTER BALLOT.**

**YOU MUST COMPLETE FOUR (4) PRIMARY ITEMS ON THIS MASTER BALLOT AND EXHIBIT FOR YOUR ABUSE SURVIVOR CLIENTS:**

1. **RECORD YOUR ABUSE SURVIVOR CLIENTS' VOTES TO ACCEPT OR REJECT THE PLAN**

2. **RECORD YOUR ABUSE SURVIVOR CLIENTS' DECISIONS WITH RESPECT TO THE OPTIONAL $3,500 EXPEDITED DISTRIBUTION ELECTION**

3. **RECORD YOUR ABUSE SURVIVOR CLIENTS' DECISIONS WITH RESPECT TO THE THIRD PARTY RELEASE**

4. **MAKE THE CERTIFICATIONS AND SIGN YOUR MASTER BALLOT**

**ACCESS TO SOLICITATION MATERIALS:**

**THE PLAN, THE DISCLOSURE STATEMENT, AND THE SOLICITATION PROCEDURES ORDER MAY BE ACCESSED, FREE OF CHARGE, AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA-SABALLOTS.**

**YOU HAVE RECEIVED A PAPER FORMAT OF THESE MATERIALS WITH THIS SOLICITATION PACKAGE. IF YOU NEED TO OBTAIN ADDITIONAL SOLICITATION PACKAGES, PLEASE CONTACT OMNI AGENT SOLUTIONS (THE "SOLICITATION AGENT") BY (A) CALLING THE DEBTORS' RESTRUCTURING HOTLINE AT 866-907-2721, (B) EMAILING BSABALLOTS@OMNIAGNT.COM, (C) WRITING TO BOY SCOUTS OF AMERICA**

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

**BALLOT PROCESSING, C/O OMNI AGENT SOLUTIONS, 5955 DE SOTO AVENUE, SUITE 100, WOODLAND HILLS, CA 91367, OR (D) SUBMITTING AN INQUIRY ON THE DEBTORS' RESTRUCTURING WEBSITE AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA.**

**THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE <u>ACTUALLY</u> <u>RECEIVED</u> BY THE SOLICITATION AGENT BY 4:00 P.M. (EASTERN TIME) ON DECEMBER 14, 2021 (THE "<u>VOTING DEADLINE</u>").**

**IF YOUR ABUSE SURVIVOR CLIENTS (AS DEFINED BELOW) VOTE TO ACCEPT OR REJECT THE PLAN, THEY WILL BE RELEASING THE RELEASED PARTIES FROM ANY AND ALL CLAIMS/CAUSES OF ACTION TO THE EXTENT PROVIDED IN <u>ARTICLE X.J.4</u> OF THE PLAN UNLESS YOUR ABUSE SURVIVOR CLIENTS "OPT OUT" OF THE RELEASES. YOUR CLIENTS MAY "OPT OUT" OF SUCH RELEASES AND YOU MUST INDICATE SUCH "OPT-OUT" WITH RESPECT TO EACH CLIENT IN YOUR EXHIBIT TO THE MASTER BALLOT.**

Pursuant to this master ballot (this "<u>Master Ballot</u>"), the above-captioned debtors and debtors-in-possession (together, the "<u>Debtors</u>") are soliciting votes from holders of Class 8 Direct Abuse Claims on the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "<u>Plan</u>"), which is described in greater detail in that certain disclosure statement regarding the Plan, filed on [●], 2021 [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "<u>Disclosure Statement</u>"). Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable. On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") entered an order [D.I. [●]] (the "<u>Solicitation Procedures Order</u>") approving the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code and the procedures for soliciting votes to accept or reject the Plan (the "<u>Solicitation Procedures</u>"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code, which is a mechanism by which Abuse Claims will be channeled to a Settlement Trust established pursuant to section 105(a) of the Bankruptcy Code. For a description of the causes of action to be enjoined and the identities of the Entities that would be subject to these injunctions, see **Article VI.Q** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

The Debtors have compiled a list of all potential Protected Parties and potential Limited Protected Parties under the Plan, including the identities of all Local Councils, Chartered Organizations, and Insurance Companies. If the Plan is confirmed, to the extent any such parties participate, they will be included in the definition of Protected Parties or Limited Protected Parties and will benefit from the Channeling Injunction. This list of potential Protected Parties and Limited Protected Parties is available at https://omniagentsolutions.com/bsa-SAballots. **This list**

**only includes *potential* Protected Parties and Limited Protected Parties—it does not mean that any such party will in fact become a Protected Party or Limited Protected Party, as applicable, under the Plan.**

You are receiving this Master Ballot because you represent certain clients (collectively, your "Abuse Survivor Clients") that have asserted Claims against the Debtors that arise from Abuse[2] that occurred prior to the Petition Date (as defined in the Plan, a "Direct Abuse Claim"). Your firm (each, a "Firm") must certify to one of the options below with respect to submission of the Master Ballot:

(a) "**Option (a) Certification**": The Firm shall distribute (as required by the Solicitation Procedures) the Solicitation Package (without a Ballot) to each of its Abuse Survivor Clients and ask each client to provide his or her affirmative vote to accept or reject the Plan (along with any other responsive election to be reflected on the Exhibit to the Master Ballot) and the Firm shall record the affirmative responses on the Master Ballot and reflect that the vote and other responses were collected by means of an Option (a) Certification. For the avoidance of doubt, a Firm may not rely on providing any of its Abuse Survivor Clients negative notice when completing the Master Ballot on behalf of any Abuse Survivor Client if such client did not affirmatively respond with an express answer for each applicable election. Each Firm shall collect the responses through customary and accepted practices in accordance with applicable rules of professional conduct (including telephone, email, and other standard communication methods) from each Abuse Survivor Client, and shall submit a log of the responses it has received to the Solicitation Agent contemporaneously with its Master Ballot submission, which may be subject to discovery. For the avoidance of doubt, if an Abuse Survivor Client provides his or her responses orally or via telephone, the Firm shall contemporaneously maintain a record of the responses of the Firm's Abuse Survivor Clients and shall include those responses with the log; or

(b) "**Option (b) Certification**": If the Firm has the authority under a power of attorney to vote to accept or reject the Plan (in addition to the other elections under the Master Ballot) on behalf of its Abuse Survivor Clients, the Firm shall complete the Master Ballot in accordance with the power granted to the Firm and reflect that the vote and other elections were collected by means of an Option (b) Certification. For any Abuse Survivor Clients whose elections on the Master Ballot were completed by utilizing the Option (b) Certification, the Firm shall supply the power(s) of attorney concurrently with the Master Ballot and Exhibit that provided the Firm with the authorization to act on behalf of such Abuse Survivor Client(s).

---

[2]   "Abuse" means sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, indecent assault or battery, rape, pedophilia, ephebophilia, sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction, or intimidation, any other sexual misconduct or injury, contacts or interactions of a sexual nature, including the use of photography, video, or digital media, or other physical abuse or bullying or harassment without regard to whether such physical abuse or bullying is of a sexual nature, between a child and an adult, between a child and another child, or between a non-consenting adult and another adult, in each instance without regard to whether such activity involved explicit force, whether such activity involved genital or other physical contact, and whether there is or was any associated physical, psychological, or emotional harm to the child or non-consenting adult.

3

In addition to the foregoing certification, you must also file a verified statement with the Court pursuant to Bankruptcy Rule 2019 prior to or concurrently with the submission of its Master Ballot containing the following (each, a "Rule 2019 Statement"): i) the facts and circumstances concerning the Firm's representation of Abuse Survivor Clients in these chapter 11 cases; (ii) a list of the names, addresses, and claim numbers of all Abuse Survivor Clients that the such Firm represents; (iii) an exemplar of the engagement letter used to engage the Abuse Survivor Clients. The Firm may redact pricing, compensation amounts or percentages, and personal identifying information of holders of Direct Abuse Claims.[3]  You must submit a copy of the Rule 2019 Statement with unredacted personal identifying information with your Master Ballot and Exhibit submission to the Solicitation Agent.

**To use this Master Ballot, you must meet all applicable standards to receive informed consent from your Abuse Survivor Clients**.  In addition, you must provide the Solicitation Package materials (excluding a ballot) in hard copy, flash drive, or electronic format, to your Abuse Survivor Clients.

---

**IMPORTANT INFORMATION REGARDING THE ELECTION TO RECEIVE AN EXPEDITED DISTRIBUTION OF $3,500.00:**

---

**Each holder of a properly completed non-duplicative proof of claim asserting a Direct Abuse Claim who filed such Claim by the Bar Date or was permitted by a Final Order of the Bankruptcy Court to file a late claim may elect <u>only</u> on the Exhibit to this Master Ballot to receive an Expedited Distribution, which, as specified in the Plan, is a one-time Cash payment from the Settlement Trust in the amount of $3,500.00 conditioned upon satisfaction of the criteria set forth in the Trust Distribution Procedures, in exchange for a full and final release in favor of the Settlement Trust, the Protected Parties and the Chartered Organizations.**

The Settlement Trust shall make the Expedited Distributions on one or more dates occurring on or as soon as reasonably practicable after the latest to occur of (a) the Effective Date, (b) the date the applicable holders of Direct Abuse Claims who have elected to receive an Expedited Distribution have satisfied the criteria set forth in the Trust Distribution Procedures, and (c) the date upon which the Settlement Trust has sufficient Cash to fund the full amount of the Expedited Distributions while retaining sufficient Cash reserves to fund applicable Settlement Trust Expenses, as determined by the Settlement Trustee.  **This election <u>must</u> be made on a properly and timely completed and delivered Master Ballot in accordance with the instructions set forth herein, and shall only be effective if the Plan is confirmed and the Effective Date occurs.**

**IF SELECTING THE $3,500 OPTION, YOU MUST INDICATE THIS ON THE EXHIBIT TO THIS MASTER BALLOT.  YOUR ABUSE SURVIVOR CLIENTS WILL**

---

[3]    For the avoidance of doubt, personal identifying information related to holders of Direct Abuse Claims on such Rule 2019 Statement shall be filed under seal in accordance with the *Final Order (I) Authorizing Debtors to File (A) a Consolidated List of Counsel Representing the Largest Numbers of Abuse Victims and (B) a Consolidated List of Other Unsecured Creditors of the Debtors, (II) Authorizing and Approving Special Noticing and Confidentiality Procedures, and (III) Granting Related Relief* [D.I. 274] and the Bar Date Order; *provided* that copies of such information shall be made available to "Permitted Parties" as defined in the Bar Date Order.

**NOT BE ABLE TO CHOOSE THIS OPTION AT A LATER DATE UNLESS THE COURT APPROVES OTHERWISE.**

The rights of holders of Direct Abuse Claims in Class 8 are described in the Disclosure Statement for the Plan and the Solicitation Procedures Order.  **This Master Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications and elections with respect to the Plan.  If you believe you have received this Master Ballot in error, or if you believe that you have received the wrong Master Ballot, you must contact the Solicitation Agent immediately via the contact information set forth herein.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on your Abuse Survivor Clients whether or not you vote or if you vote to reject the Plan.**  To have your clients' votes counted, you must complete, sign, and return this Master Ballot and the Exhibit provided to you with the Master Ballot to the Solicitation Agent by the Voting Deadline.

If your Abuse Survivor Clients vote to accept or reject the Plan, they will deemed to provide the releases in **Article X.J.4** of Plan and as set forth below unless they opt out of such releases.  In accordance with the Option (a) Certification or Option (b) Certification, you may make the selection on your Exhibit to opt out of the releases in **Article X.J.4** of the Plan.  Please be advised that the Plan also contains injunction and exculpation provisions, certain of which are set forth below.  If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on your Abuse Survivor Clients whether or not you elect to opt out of the releases in **Article X.J.4** of the Plan by this Master Ballot.  For a full description of these provisions, see **Article VI.Q** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

**You should carefully review the Disclosure Statement and the Plan, including the Plan's injunction, exculpation, and release provisions, and inform your Abuse Survivor Clients of such provisions as the rights of your Abuse Survivor Clients may be affected thereunder.**

*[Remainder of Page Intentionally Left Blank]*

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS MASTER BALLOT AND EXHIBIT.**

**PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW. PLEASE FILL IN ALL OF THE INFORMATION REQUESTED UNDER ITEM 3. IF THIS MASTER BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

<u>**Item 1**</u>. **Voting Summary.**

Please note that each holder of a Direct Abuse Claim who votes must vote the entire amount of his or her claim to accept or reject the Plan. Any holder of a Direct Abuse Claim who attempts partially to reject and partially to accept the Plan will not have their vote counted. If this Master Ballot is signed and timely received by the Solicitation Agent, but does not designate either acceptance or rejection or designates both acceptance and rejection of the Plan for any particular Direct Abuse Claim, such vote will not be counted either as an acceptance or rejection of the Plan. After you complete the voting summary below, you must complete the Exhibit accompanying this Master Ballot and discussed in Item 2 below for each of your Abuse Survivor Clients for your clients' votes to be counted.

**Please mark only <u>one</u> of the boxes below:**

☐    All claimants listed on the Exhibit (as defined below) accompanying this Master Ballot ACCEPT (vote in favor of) the Plan.

☐    All claimants listed on the Exhibit accompanying this Master Ballot REJECT (vote against) the Plan.

☐    Some of the claimants listed on the Exhibit accompanying this Master Ballot ACCEPT (vote in favor of) the Plan, while other claimants listed on the Exhibit accompanying this Master Ballot REJECT (vote against) the Plan.

<u>**Item 2**</u>. **Exhibit Listing Holders of Direct Abuse Claims Represented by Attorney for Recording Votes on the Plan, Making Elections with Respect to the Third Party Release and Expedited Distribution, and Providing Certain Other Information.**

You should have received with this Master Ballot an exhibit on a USB drive containing an electronic client list in Excel format of each holder of a Direct Abuse Claim whom you represent (the "<u>Exhibit</u>"), which list is formatted as follows below. The Exhibit lists for each claimant: (a) the last name of the claimant; (b) the first name of the claimant; (c) the last 4 digits of the Social Security Number of the claimant (if the claimant does not have a Social Security Number, it will not be listed); and (d) the claimant's date of birth. Additionally, you must fill out for each claimant:

(e)    whether the claimant votes to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan;

(f)    whether the claimant elects to receive the Expedited Distribution, which is a one-time Cash payment from the Settlement Trust in the amount of $3,500.00 conditioned upon satisfaction of the criteria set forth in the Trust Distribution Procedures, only if the Plan is Confirmed and the Effective Date occurs;

(g)    if the claimant votes to accept or reject the Plan, whether the claimant opts out of the releases contained in <u>Article X.J.4</u> of the Plan;

(h)    whether the Firm is recording the vote of each Abuse Survivor Client via the Option (a) Certification or the Option (b) Certification described and defined above; and

(i)    the service method that the Firm has used to transmit the Solicitation Package materials (excluding a ballot) in hard copy, flash drive, or electronic format.

The Exhibit will appear in the following format:

| Claimant's Last Name | Claimant's First Name | Claim Number | Claimant's SSN (last 4 digits) | Claimant's Date of Birth | Vote to ACCEPT / in Favor OR Vote to REJECT / Against the Plan | Elects to Receive $3,500 Expedited Distribution | Opts Out of Release in Article X.J.4 of Plan – Leave Blank if Not Opting Out | Type of Authority for Vote | Method of Service of Solicitation Documents |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

**Please note that you must use the Exhibit accompanying your Master Ballot to record the votes of your Abuse Survivors Clients, and you must submit the Exhibit together with the Master Ballot.  You must also file with the Court a Rule 2019 Statement on or before the date of submission of your Master Ballot.  If you do not complete the Exhibit provided to you with your Master Ballot and submit it together with your Master Ballot and if you do not file the Rule 2019 Statement, your clients' votes may not be counted.**

**Please note the following regarding the releases contained in the Plan:**

(i)    Opting out of giving the releases in <u>Article X.J.4</u> of the Plan on behalf of any holder of a Direct Abuse Claim will not affect the distribution to be received by that holder under the Plan.

(ii)    If a holder of a Direct Abuse Claim votes to accept or to reject the Plan and wishes to opt out of giving the releases provided in <u>Article X.J.4</u> of the Plan, the opt out selection in the Exhibit must be made for such holder, and the completed Master Ballot returned to the Solicitation Agent so as to be received by the Voting Deadline.

(iii)    If the Plan becomes effective, holders of Direct Abuse Claims under the Plan who vote to accept or reject the Plan will be deemed to provide the releases contained in <u>Article X.J.4</u> of the Plan, unless the opt out has been selected for your Abuse Survivor Client.

**Article X.J.4 of the Plan—Releases by Holders of Claims.**

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[4] to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[5] shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or**

---

[4]  "Released Parties" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Creditors' Committee; (e) the members of the Creditors' Committee in their capacities as such; (f) the Tort Claimants' Committee; (g) the members of the Tort Claimants' Committee in their capacities as such; (h) the Future Claimants' Representative; (i) the Coalition; (j) JPM; (k) the Settling Insurance Companies, including Hartford; (l) the Contributing Chartered Organizations, including TCJC; (m) the Foundation, in its capacity as lender under the Foundation Loan Agreement; (n) the Ad Hoc Committee; (o) the members of the Ad Hoc Committee in their capacities as such; (p) the Creditor Representative; (q) the Mediators; and (r) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Released Party; provided further, that the definition of "Released Parties" shall in all instances be subject to Article X.J. of the Plan.

[5]  "Releasing Claim Holder" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in Article X.J.4 of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in Article X.J.4 of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in Article X.J.4 of the Plan; and (d) all of such Persons' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such.

implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in Article X.J.4 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Abuse Litigation Claim to recover on account of such Allowed Claim in accordance with Article III.B.9 of the Plan.  Notwithstanding the foregoing or anything to the contrary herein, (i) with respect to holders of Allowed General Unsecured Claims or Allowed Non-Abuse Litigation Claims, nothing in the Plan or the release set forth in Article X.J.4 of the Plan shall, or shall be construed to, release any claims or Causes of Action against any Local Council, Chartered Organization (other than a Contributing Chartered Organization), or Non-Settling Insurance Company (subject to Article IV.D.3 of the Plan) and (ii) nothing in the Plan or the release set forth in Article X.J.4 of the Plan shall, or shall be construed to, release any claims or Causes of Action asserted by Century Indemnity Company against Sidley Austin LLP ("Sidley") related to Sidley's representation of the Debtors prior to the Petition Date.

Article X.J.5 of the Plan—Releases Relating to Contributing Chartered Organizations.

a.    In furtherance of the Abuse Claims Settlement, as of the date that the Confirmation Order and Affirmation Order become Final Orders, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Confirmation Order, and the terms of the TCJC Settlement Agreement, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Contributing Chartered Organizations,[6] including TCJC, shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge the Debtors, Reorganized BSA, the Related Non-Debtor Entities, the Local Councils, the other Protected Parties,[7] the Limited Protected Parties,[8] the Settling Insurance Companies,

---

[6]    "Contributing Chartered Organizations" means the current or former Chartered Organizations listed on Exhibit D to the Plan, including any Chartered Organization made a Protected Party under a Post-Effective Date Chartered Organization Settlement approved by the Bankruptcy Court in accordance with Article IV.I of the Plan.  No Participating Chartered Organization shall be considered a Contributing Chartered Organization based solely on the Participating Chartered Organization Insurance Assignment.  Without limiting the foregoing, subject to Confirmation of the Plan and approval of the TCJC Settlement Agreement by an order of the Bankruptcy Court (including in the Confirmation Order), TCJC is a Contributing Chartered Organization and shall be designated as such in the Confirmation Order and the Affirmation Order.

[7]    "Protected Parties" means the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Contributing Chartered Organizations; (f) the Settling Insurance Companies, including Hartford; and (g) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Protected Party.  Notwithstanding the foregoing, a Contributing Chartered Organization shall be a Protected Party with respect to Abuse Claims only as set forth in the definition of "Abuse Claim."

[8]    "Limited Protected Parties" means the Participating Chartered Organizations, which means a Chartered Organization that does not (a) object to confirmation of the Plan or (b) inform Debtors' counsel in writing on or

including Hartford, the Future Claimants' Representative, the Coalition, the Settlement Trust, and each of its and their respective Representatives (collectively, the "Settlement Parties"), of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the date that the Confirmation Order and Affirmation Order become Final Orders (including before the Petition Date) in connection with or related to (i) Abuse Claims, (ii) the Chapter 11 Cases, (iii) the Plan, or (iv) any Claims that were or could have been asserted by the Contributing Chartered Organizations against the Settlement Parties or any of them.

   b.     In furtherance of the Abuse Claims Settlement, as of the date that the Confirmation Order and Affirmation Order become Final Orders, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Confirmation Order, and the terms of the TCJC Settlement Agreement, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Settlement Parties shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each of the Contributing Chartered Organizations, including TCJC, of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the date that the Confirmation Order and Affirmation Order become Final Orders (including before the Petition Date) in connection with or related to (i) Abuse Claims, (ii) the Chapter 11 Cases, (iii) the Plan, or (iv) any Claims that were or could have been asserted by the Settlement Parties against the Contributing Chartered Organizations or any of them.

---

before the confirmation objection deadline that it does not wish to make the Participating Chartered Organization Insurance Assignment. Notwithstanding the foregoing, with respect to any Chartered Organization that is a debtor in bankruptcy as of the Confirmation Date, such Chartered Organization shall be a Participating Chartered Organization only if it advises Debtors' counsel in writing that it wishes to make the Participating Chartered Organization Insurance Assignment, and, for the avoidance of doubt, absent such written advisement, none of such Chartered Organization's rights to or under the Abuse Insurance Policies shall be subject to the Participating Chartered Organization Insurance Assignment. A list of Chartered Organizations that are not Participating Chartered Organizations is attached to the Plan as Exhibit K.

**Certain other Releases, Injunction and Exculpation Provisions Contained in the Plan**

**Article X.F of the Plan—Channeling Injunction.**

**Channeling Injunction**.

     **Terms**.  To preserve and promote the settlements contemplated by and provided for in the Plan, including the Abuse Claims Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, and to supplement, where necessary, the injunctive effect of the Discharge as provided in sections 1141 and 524 of the Bankruptcy Code and as described in <u>Article X</u> of the Plan, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court and the District Court under section 105(a) of the Bankruptcy Code, (a) the sole recourse of any holder of an Abuse Claim against a Protected Party on account of such Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents,[9] and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Protected Party or any property or interest in property of any Protected Party, and (b) the sole recourse of any holder of a Post-1975 Chartered Organization Abuse Claim against a Limited Protected Party on account of such Post-1975 Chartered Organization Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Post-1975 Chartered Organization Abuse Claim against any Limited Protected Party or any property or interest in property of any Limited Protected Party.  On and after the Effective Date, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Abuse Claim against the Protected Parties, or any of them, or any Post-1975 Chartered Organization Abuse Claim against the Limited Protected Parties, or any of them, shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Protected Party with respect to any such Abuse Claim or from any Limited Protected Party with respect to any such Post-1975 Chartered Organization Abuse Claim, other than from the Settlement Trust pursuant to the Settlement Trust Documents, including:

     c.     commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

     d.     enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Protected

---

[9]    "<u>Settlement Trust Documents</u>" means, collectively, (a) the Settlement Trust Agreement, (b) the Trust Distribution Procedures, (c) the Document Agreement, (d) the Confirmation Order, and (e) any other agreements, instruments and documents governing the establishment, administration and operation of the Settlement Trust, which shall be substantially in the forms set forth as exhibits in the Plan or in the Plan Supplement, as the same may be amended or modified from time to time in accordance with the terms thereof.

Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

e.      creating, perfecting, or otherwise enforcing in any manner, whether directly or indirectly, any Encumbrance of any kind against any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

f.      asserting, implementing or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party; or

g.      taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Abuse Claim or Post-1975 Chartered Organization Abuse Claim.

Reservations.  Notwithstanding anything to the contrary in Article X.F of the Plan, the Channeling Injunction shall not enjoin:

a.      the rights of holders of Abuse Claims or Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims solely against the Settlement Trust in accordance with the Trust Distribution Procedures, including the ability to pursue the Settlement Trust in the tort system as described in Article XII of the Trust Distribution Procedures;

b.      the rights of holders of Abuse Claims to assert such Abuse Claims against anyone other than a Protected Party or, in the case of Post-1975 Chartered Organization Abuse Claims, against anyone other than a Limited Protected Party;

c.      prior to the date that an Entity (other than an Insurance Company) becomes a Protected Party under Article IV.I of the Plan, the right of holders of Abuse Claims to assert such Abuse Claims against such Entity;

d.      prior to the date that a Chartered Organization becomes a Limited Protected Party under Article IV.J of the Plan, the right of holders of Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims against such Entity;

e.      the rights of holders of Abuse Claims that are not Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims against any Limited Protected Party (unless such Limited Protected Party becomes a Protected Party under Article IV.I of the Plan);

f.      the right of any Person to assert any Claim, debt, obligation or liability for payment of Settlement Trust Expenses solely against the Settlement Trust in accordance with the Settlement Trust Documents;

g.      the Settlement Trust from enforcing its rights under the Plan and the Settlement Trust Documents; or

h.      the rights of the Settlement Trust to prosecute any action against any Non-Settling Insurance Company based on or arising from Abuse Insurance Policies that are not the subject of an Insurance Settlement Agreement, subject to any Insurance Coverage Defenses

**Article X.J.1 of the Plan—Releases by the Debtors and the Estates.**

**Releases by the Debtors and the Estates of the Released Parties. As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the Abuse Claims Settlement, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article X.J.1 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related**

to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

**Releases by the Debtors and the Estates of Certain Avoidance Actions.** As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of Creditors' Committee and its members in their respective capacities as such in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Abuse Litigation Claims, and Convenience Claims of and from any and all Avoidance Actions.

**Article X.J.3 of the Plan—Releases by Holders of Abuse Claims.**

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Protected Parties and the Limited Protected Parties to facilitate and implement the reorganization of the Debtors, including the settlements embodied in the Plan, including the Abuse Claims Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all holders of Abuse Claims shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release: (a) each and all of the Protected Parties and their respective property and successors and assigns of and from all Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Abuse Claims; and (b) each and all of the Limited Protected Parties and their respective property and successors and assigns of and from all Post-1975 Chartered Organization Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Post-1975 Chartered Organization Abuse Claims; provided, however, that the releases set forth in Article X.J.3 of the Plan shall not, and shall not be construed to: (i) release any Protected Party or Limited Protected Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (ii) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (iii) modify, reduce, impair or otherwise affect

the ability of any holder of an Abuse Claim to recover on account of such Claim in accordance with <u>Article III. B.10</u> or <u>Article III.B.11</u> of the Plan, as applicable.

<u>Article X.K of the Plan—Exculpation.</u>

From and after the Effective Date, none of the Exculpated Parties[10] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or before the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the JPM/Creditors' Committee Settlement, the Hartford Insurance Settlement Agreement, the TCJC Settlement Agreement, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence. Notwithstanding the foregoing or any provision of the Plan to the contrary, Sidley shall not be an Exculpated Party with respect to any claims that Century Indemnity Company asserts against Sidley related to Sidley's representation of the Debtors prior to the Petition Date.

<u>Article X.L of the Plan—Injunctions Related to Releases and Exculpation.</u>

<u>Injunction Related to Releases.</u>  As of the Effective Date, all holders of Claims that are the subject of <u>Article X.J</u> of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under <u>Article X.E</u> of the Plan or released under <u>Article X.J</u> of the Plan; provided, however, that the injunctions set forth in <u>Article X.L.1</u> of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is the subject of <u>Article X.J</u> of the Plan from

---

[10]  "<u>Exculpated Parties</u>" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Creditors' Committee; (d) the members of the Creditors' Committee in their capacities as such; (e) the Tort Claimants' Committee; (f) the members of the Tort Claimants' Committee in their capacities as such; (g) the Future Claimants' Representative; (h) the Creditor Representative; and (i) all of such Persons' current officers and directors, former officers and directors who served in such capacity during the pendency of the Chapter 11 Cases but are no longer officers or directors as of the Effective Date, employees, volunteers, agents, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals.

taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Injunction Related to Exculpation.** As of the Effective Date, all holders of Claims that are the subject of **Article X.K** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.2** of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of **Article X.K** of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Item 3.** Certifications and Acknowledgment.

By signing this Master Ballot, the undersigned certifies under penalty of perjury that each of the following statements is true and correct:

(i)     I have been provided with a copy of the Disclosure Statement, including the Plan and all other exhibits thereto, and the Solicitation Package materials;

(ii)    I certify by either the Option (a) Certification or the Option (b) Certification that each of the claimants set forth on the accompanying Exhibit is represented by me;

(iii)   I have met all applicable standards to receive informed consent from each of my Abuse Survivor Clients with respect to each such client's vote, the Expedited Distribution Election, and the release election on this Master Ballot.

(iv)    I have conducted the diligence necessary to form a reasonable belief that each of my Abuse Survivor Clients set forth on the Exhibit is a holder of a Class 8 Direct Abuse Claim as of the Voting Record Date.

(v)     I acknowledge that a vote to accept the Plan constitutes acceptance of the treatment of each Abuse Survivor Client as a holder of a Direct Abuse Claim.

(vi)    I understand that, if accepting the Plan on behalf of one of my Abuse Survivor Clients, my client agrees with the treatment provided for his or her Claim under the Plan.

(vii)  I have provided the Solicitation Package materials (excluding a ballot) in a timely manner in the form (hard copy, flash drive, or electronic format) to my Abuse Survivor Clients in the form that my Abuse Survivor Clients have requested.

(viii)  I further acknowledge that the solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement, the Solicitation Procedures Order, and the Solicitation Procedures contained therein.

| | |
|---|---|
| Print or Type Name of Attorney: | _____ |
| Name of Law Firm: | _____ |
| Attorney Signature: | _____ |
| Street Address: | _____ |
| City, State, Zip Code: | _____ |
| Telephone Number: | _____ |
| Email Address: | _____ |
| Date Completed: | _____ |

**IF THIS MASTER BALLOT AND ACCOMPANYING EXHIBIT ARE NOT RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE <u>DECEMBER 14, 2021 AT 4:00 P.M. (EASTERN TIME)</u>, YOUR VOTE WILL NOT BE COUNTED.**

**Master Ballots (together with the Exhibit provided by the Solicitation Agent) must be delivered to the Solicitation Agent (a) via the electronic Ballot submission platform on the Solicitation Agent's website (the "<u>E-Ballot Platform</u>") by visiting https://omniagentsolutions.com/bsa-SAballots, and following the instructions set forth on the website, or (b) at the appropriate address listed below, or in the enclosed envelope, as applicable. You are highly encouraged to submit your Master Ballot and Exhibit via the E-Ballot Platform. If you choose to submit your Master Ballot and Exhibit via the E-Ballot Platform, you should NOT submit a hard copy Master Ballot or Exhibit. Please choose only one method for returning your Master Ballot and Exhibit.**

| <u>If by E-Ballot Platform</u>: | <u>If by standard or overnight mail or personal delivery</u>: |
|---|---|
| **https://omniagentsolutions.com/bsa-SAballots** | **Boy Scouts of America Ballot Processing c/o Omni Agent Solutions 5955 De Soto Avenue, Suite 100 Woodland Hills, CA 91367** |

**Exhibits may only be submitted in Excel format via the E-Ballot Platform or, if the Master Ballot is being mailed, by USB drive—they may not be printed out and submitted in hard copy format.  Votes provided on any Exhibit submitted in a format other than the Excel Exhibit provided by the Solicitation Agent shall not be counted.**

**To submit your Master Ballot and Exhibit via the E-Ballot Platform, please visit https://omniagentsolutions.com/bsa-SAballots and follow the instructions to submit your Master Ballot.**

The Solicitation Agent's E-Ballot Platform is the sole manner in which Master Ballots and Exhibits will be accepted via electronic or online transmission.  Master Ballots and Exhibits submitted by facsimile, email or other means of electronic transmission will not be counted.  Attorneys who submit a Master Ballot and Exhibit using the E-Ballot Platform should NOT also submit a paper Master Ballot and Exhibit.

If you have received this Master Ballot but would like your Abuse Survivor Clients to individually submit a Ballot to vote to accept or reject the Plan, or if you have any other questions about this Master Ballot or did not receive access to a copy of the Plan or any related materials, please contact the Solicitation Agent by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.

Information may also be obtained at https://omniagentsolutions.com/bsa-SAballots.  **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Any admission of Direct Abuse Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtors or any other party for payment purposes.

## INSTRUCTIONS FOR COMPLETING YOUR MASTER BALLOT

To properly complete this Master Ballot, you must follow the procedures described below, which explain each of the items contained on your Master Ballot.  If you have any questions, please contact the Solicitation Agent using the contact information provided above or visit https://omniagentsolutions.com/bsa-SAballots.

1.    **Use of Online Ballot Portal—If Submitting Your Vote Through the E-Ballot Platform:**

The Solicitation Agent will accept Master Ballots if properly completed through the E-Ballot Platform and submitted with your Exhibit, which must be completed and submitted in Excel format using the Exhibit accompanying your Master Ballot.  You are highly encouraged to submit your Master Ballot and Exhibit via the E-Ballot Platform.  To submit your Master Ballot and Exhibit via the E-Ballot Platform, visit https://omniagentsolutions.com/bsa-SAballots and follow the instructions to submit your Master Ballot.

The Solicitation Agent's E-Ballot Platform is the sole manner in which Master Ballots and Exhibits will be accepted via online or electronic submission.  **Master Ballots and Exhibits submitted by facsimile, email or other means of electronic transmission will not be counted.** Firms that submit a Master Ballot and Exhibit using the E-Ballot Platform should NOT also submit a paper Master Ballot or paper Exhibit.

**Use of Hard Copy Master Ballot—If Submitting Your Vote Through Standard or Overnight Mail or Personal Delivery:**

Submit your completed and signed Master Ballot and your completed Exhibit in Excel format on a USB drive by mail using the pre-addressed envelope included in the Solicitation Package, or by hand delivery or overnight courier to:

| Boy Scouts of America Ballot Processing |
|:---:|
| c/o Omni Agent Solutions |
| 5955 De Soto Avenue, Suite 100 |
| Woodland Hills, CA 91367 |

**The Solicitation Agent will tabulate all properly completed Master Ballots and Exhibits received on or before the Voting Deadline,** *provided* **that a Rule 2019 Statement has been filed with the Court on or before the date of submission of the Master Ballot and Exhibit.  Please submit your Master Ballot together with your Exhibit and a copy of your Rule 2019 Statement to the Solicitation Agent, and do not submit them separately.**

2.    **To fill out your Master Ballot, you must complete the following:**

a.    **Item 1 (Voting Summary).**  Item 1 of the Master Ballot asks you to indicate how many holders of Direct Abuse Claims listed on the Exhibit accept or reject the Plan.  If all of your Abuse Survivor Clients have authorized you to ACCEPT / vote in favor of the Plan, please check the box indicating the same.  If all of your Abuse Survivor Clients have authorized you to REJECT / vote against the Plan, please check the box indicating the same. If some of your Abuse Survivor Clients have authorized you to ACCEPT / vote in favor of the Plan, while others have

authorized you to REJECT / vote against the Plan, please check the box indicating the same, and in all instances be certain to specify on the Exhibit which clients have accepted the Plan and which clients have rejected the Plan. **Please note that the Solicitation Agent will review the Exhibit to collect and record the individual votes of each of your Abuse Survivor Clients regardless of your answer in Item 1, and you must submit the Exhibit in Excel format as provided to you with this Master Ballot in order for your clients' votes to be counted**. In the event there is a discrepancy between your response to Item 1 and the individual votes of any of the Abuse Survivor Clients included in the Exhibit, the individual vote reflected on the Exhibit will govern and will supersede your response in Item 1.

      b.     **Item 2 (List of Holders of Direct Abuse Claims Represented by Attorney)**. Item 2 of the Master Ballot requires that you complete and submit the Exhibit to the Master Ballot in Excel format as provided to you on a USB drive accompanying your Master Ballot. The Exhibit shall list, for each Abuse Survivor Client represented by your Firm and on whose behalf you are voting on the Plan:

        (1)     the last name of the claimant;

        (2)     the first name of the claimant;

        (3)     the last 4 digits of the Social Security Number of the claimant (if the claimant does not have a Social Security Number, this field may be blank);

        (4)     the claimant's date of birth;

You will not be able to modify these fields of the Exhibit. Using the drop-down boxes, you will need to complete the following fields for each Abuse Survivor Client represented by your Firm:

        (5)     whether the claimant votes to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan;

        (6)     whether, <u>only</u> if the Plan is confirmed and the Effective Date occurs, the claimant elects to receive the Expedited Distribution, which is a one-time Cash payment from the Settlement Trust in the amount of $3,500.00 conditioned upon satisfaction of the criteria set forth in the Trust Distribution Procedures;

        (7)     whether the claimant opts out of the releases contained in <u>Article X.J.4</u> of the Plan;

        (8)     whether the Firm is recording the vote of each Abuse Survivor Client via the Option (a) Certification or the Option (b) Certification described above; and

        (9)     the service method that the Firm has used to transmit the Solicitation Package materials (excluding a ballot) (hard copy, flash drive, or electronic format).

The Exhibit must be submitted in the format set forth above and may not be modified.

As set forth in the Plan, if holders of Class 8 Direct Abuse Claims vote to accept the Plan, the Debtors will request that the Plan be confirmed. If the Plan is confirmed and the Effective Date occurs, each eligible holder of a Direct Abuse Claim may voluntarily elect pursuant to this Master

Ballot to receive an Expedited Distribution of a one-time Cash payment from the Settlement Trust in the amount of $3,500.00 conditioned upon satisfaction of the criteria set forth in the Trust Distribution Procedures.  **You must make this election for your Abuse Survivor Clients on the Exhibit submitted with a properly and timely completed and delivered Master Ballot; you cannot make this election for your clients after you submit the Master Ballot.**

**IF SELECTING THE $3,500 OPTION, YOU MUST INDICATE THIS ON THE EXHIBIT TO THIS MASTER BALLOT FOR EACH OF YOUR ABUSE SURVIVOR CLIENTS.  YOUR ABUSE SURVIVOR CLIENTS WILL NOT BE ABLE TO CHOOSE THIS OPTION AT A LATER DATE UNLESS THE COURT APPROVES OTHERWISE.**

c.    Pursuant to <u>Article X</u> of the Plan, the Debtors seek approval of the release provision set forth in <u>Article X.J.4</u> of the Plan and provided above.  You may opt out of giving this release on behalf of your Abuse Survivor Clients who vote to accept or reject the Plan by making this election on the Exhibit.

**IF THE PLAN BECOMES EFFECTIVE, HOLDERS OF DIRECT ABUSE CLAIMS UNDER THE PLAN WHO VOTE TO ACCEPT OR REJECT THE PLAN ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE X.J.4 OF THE PLAN, AS SET FORTH ABOVE, UNLESS YOU OPT OUT ON BEHALF OF A HOLDER.  YOU MAY OPT OUT OF THE RELEASES ON BEHALF OF A HOLDER BY STATING SO IN THE EXHIBIT.**

d.    **Item 3 (Certifications and Acknowledgements)**.  Item 3 contains certain certifications, to be completed by the attorney preparing and signing the Master Ballot, pursuant to which such attorney shall certify under penalty of perjury that he or she has the authority under applicable law to vote to accept or reject the Plan on behalf of the holders of Direct Abuse Claims who are listed on the Exhibit to the Master Ballot.  Please ensure that you have read and understood the certifications before signing the Master Ballot.  If you are unable to make such certifications on behalf of any holder of a Direct Abuse Claim under penalty of perjury, you may **not** cast a vote on behalf of such holder and **must** timely send the information regarding the name, claim, and address of such holder to the Solicitation Agent so that such holders may be directly solicited for their vote on the Plan.

e.    If the Master Ballot is not signed, the vote(s) shown on the Master Ballot will <u>not</u> be counted.

**3.    Other Instructions for Completing Master Ballots:**

a.    Holders of Direct Abuse Claims must vote the full amount of their Claims to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan.  A holder of a Direct Abuse Claim may not split his or her vote.  Accordingly, the vote of any holder of a Direct Abuse Claim who purports partially to accept and partially to reject the Plan will not be counted.

b.    **Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each Direct Abuse Claim in Class 8 has been allowed in the amount of $1.00 solely for voting purposes, and shall not be binding upon the**

**holder of the Direct Abuse Claim, the Debtors, the Settlement Trust, the Firms, or any other party for any purpose other than voting on the Plan.**

c.     This Master Ballot is to be used by Firms who represent, and are authorized to vote on behalf of, one or more holders of Direct Abuse Claims.  You may be required to provide evidence of your authorization by holders of Direct Abuse Claims to vote to accept or reject the Plan.  In order to have your Abuse Survivor Clients' votes be counted, your Firm must file a Rule 2019 Statement with the Court prior to or concurrently with the submission of your Master Ballot, and must also submit a copy of the Rule 2019 Statement to the Solicitation Agent with its submission of the Master Ballot and Exhibit.  Abuse Survivor Client information shall be filed under seal in accordance with the Notice and Confidentiality Procedures Order and the Bar Date Order; *provided* that copies of such information shall be made available to "Permitted Parties" as defined in the Bar Date Order.

d.     Each Firm submitting a Master Ballot pursuant to the Option (a) Certification must submit a log of responses it has received from each of its applicable Abuse Survivor Clients (including telephone, email, and other standard communication methods) to the Solicitation Agent contemporaneously with its Master Ballot and Exhibit submission, which may be subject to discovery.

e.     Each Firm submitting a Master Ballot under the Option (b) Certification must submit a valid power of attorney to the Solicitation Agent concurrently with its submission of the Master Ballot and Exhibit.

f.     If a Ballot is received directly from the holder of a Direct Abuse Claim <u>and</u> a Master Ballot is received from a Firm on account of the same Direct Abuse Claim, the Ballot returned by holder of such Claim by the Voting Deadline shall supersede any Master Ballot with respect to such Claim and such Master Ballot shall not be counted.

g.     The Master Ballot may not be used for any purpose other than to transmit votes on the Plan.

h.     Multiple Master Ballots may be completed and delivered to the Solicitation Agent.  Subject to the terms of the Solicitation Procedures, votes reflected by multiple Master Ballots shall be counted except to the extent that they are duplicative of other Master Ballots.  If two or more such ballots are inconsistent, the last-dated Master Ballot received before the Voting Deadline will, to the extent of such inconsistency, govern unless otherwise ordered by the Bankruptcy Court.  Notwithstanding the foregoing, if two or more Master Ballots are received from separate counsel on or before the Voting Deadline, each of whom purports to represent the same holder of a Direct Abuse Claim and the votes conflict, the Debtors shall reach out to both Firms, with notice of such communication to counsel to the Tort Claimants' Committee and the Coalition of Abused Scouts for Justice, and request written documentation of each attorney's representation of such holder in order to resolve the conflict.  If representation of the holder of the Direct Abuse Claim is not resolved within ten (10) days from the notice of the conflict as provided by the Debtors, such votes shall not be counted.

i.      If the Master Ballot and Exhibit are signed and timely sent to the Solicitation Agent, but do not designate either acceptance or rejection, or designate both acceptance and rejection, of the Plan for any particular Direct Abuse Claim listed on the Exhibit accompanying the Master Ballot, then the Solicitation Agent may, at its discretion, contact the party submitting the Master Ballot in order to cure the defect on the Master Ballot or such Claim will not be counted either as an acceptance or rejection of the Plan.

---

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS MASTER BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.**

**IF YOU HAVE ANY QUESTIONS REGARDING THE MASTER BALLOT, DID NOT RECEIVE INSTRUCTIONS REGARDING ACCESSING THE DISCLOSURE STATEMENT OR PLAN, RECEIVED A DAMAGED MASTER BALLOT OR HAVE LOST YOUR MASTER BALLOT, OR NEED ADDITIONAL COPIES OF THE MASTER BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT:**

| | |
|---|---|
| **TELEPHONE:** | **866-907-2721** |
| **EMAIL:** | **BSAballots@omniagnt.com** |
| **ADDRESS:** | **Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367** |
| **WEBSITE:** | **https://omniagentsolutions.com/BSA** |

---

**NOTHING CONTAINED HEREIN OR IN THE SOLICITATION PACKAGES SHALL RENDER YOU OR ANY OTHER PERSON THE AGENT OF THE DEBTORS OR THE SOLICITATION AGENT, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF THE DEBTORS OR THE SOLICITATION AGENT WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE SOLICITATION PACKAGES.**

**Exhibit 2-6**

**Form of Individual Ballot for Class 8 Direct Abuse Claims**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

**BALLOT FOR CLASS 8 (DIRECT ABUSE CLAIMS)**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING YOUR BALLOT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**YOU MUST COMPLETE FOUR (4) ITEMS ON THIS BALLOT:**

1. **VOTE TO ACCEPT OR REJECT THE PLAN**

2. **DECIDE WHETHER TO MAKE THE OPTIONAL $3,500 EXPEDITED DISTRIBUTION ELECTION**

3. **DECIDE WHETHER TO OPT OUT OF THE THIRD PARTY RELEASE**

4. **SIGN YOUR BALLOT**

**ACCESS TO SOLICITATION MATERIALS:**

**THE PLAN, THE DISCLOSURE STATEMENT, AND THE SOLICITATION PROCEDURES ORDER MAY BE ACCESSED, FREE OF CHARGE, AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA-SABALLOTS.**

**YOU HAVE RECEIVED A PAPER FORMAT OF THESE MATERIALS WITH THIS SOLICITATION PACKAGE. IF YOU NEED TO OBTAIN ADDITIONAL SOLICITATION PACKAGES, PLEASE CONTACT OMNI AGENT SOLUTIONS (THE "SOLICITATION AGENT") BY (A) CALLING THE DEBTORS' RESTRUCTURING HOTLINE AT 866-907-2721, (B) EMAILING BSABALLOTS@OMNIAGNT.COM, (C) WRITING TO BOY SCOUTS OF AMERICA BALLOT PROCESSING, C/O OMNI AGENT SOLUTIONS, 5955 DE SOTO AVENUE, SUITE 100, WOODLAND HILLS, CA 91367, OR (D) SUBMITTING AN INQUIRY ON**

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

THE DEBTORS' RESTRUCTURING WEBSITE AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA.

THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT BY 4:00 P.M. (EASTERN TIME) ON DECEMBER 14, 2021 (THE "<u>VOTING DEADLINE</u>").

IF YOU VOTE TO ACCEPT OR REJECT THE PLAN, YOU WILL BE RELEASING THE RELEASED PARTIES FROM ANY AND ALL CLAIMS/CAUSES OF ACTION TO THE EXTENT PROVIDED IN <u>ARTICLE X.J.4</u> OF THE PLAN UNLESS YOU "OPT-OUT" OF SUCH RELEASES. YOU MAY "OPT-OUT" OF SUCH RELEASES AND YOU MUST INDICATE SUCH "OPT-OUT" IN THE BALLOT.

Pursuant to this ballot (this "<u>Ballot</u>"), the above-captioned debtors and debtors-in-possession (together, the "<u>Debtors</u>") are soliciting votes from holders of Class 8 Direct Abuse Claims on the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "<u>Plan</u>"), which is described in greater detail in that certain disclosure statement regarding the Plan, filed on [●], 2021 [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "<u>Disclosure Statement</u>"). Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable. On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") entered an order [D.I. [●]] (the "<u>Solicitation Procedures Order</u>") approving the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code and the procedures for soliciting votes to accept or reject the Plan (the "<u>Solicitation Procedures</u>"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code, which is a mechanism by which Abuse Claims will be channeled to a Settlement Trust established pursuant to section 105(a) of the Bankruptcy Code. For a description of the causes of action to be enjoined and the identities of the Entities that would be subject to these injunctions, see **Article VI.Q** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

The Debtors have compiled a list of all potential Protected Parties and potential Limited Protected Parties under the Plan, including the identities of all Local Councils, Chartered Organizations, and Insurance Companies. If the Plan is confirmed, to the extent any such parties participate, they will be included in the definition of Protected Parties or Limited Protected Parties and will benefit from the Channeling Injunction. This list of potential Protected Parties and Limited Protected Parties is available at https://omniagentsolutions.com/bsa-SAballots. **This list only includes *potential* Protected Parties and Limited Protected Parties—it does not mean that any such party will in fact become a Protected Party or Limited Protected Party under the Plan.**

You are receiving this Ballot because you have asserted a Claim against the Debtors that arises from Abuse[2] that occurred prior to the Petition Date (as defined in the Plan, a "Direct Abuse Claim"). Your Direct Abuse Claim is classified under the Plan in Class 8 (Direct Abuse Claims). Accordingly, you have a right to vote to accept or reject the Plan.

---

**IMPORTANT INFORMATION REGARDING THE ELECTION TO RECEIVE AN EXPEDITED DISTRIBUTION OF $3,500.00:**

---

**Each holder of a properly completed non-duplicative proof of claim asserting a Direct Abuse Claim who filed such Claim by the Bar Date or was permitted by a Final Order of the Bankruptcy Court to file a late claim may elect at Item 3 of this Ballot to receive an Expedited Distribution, which, as specified in the Plan, is a one-time Cash payment from the Settlement Trust in the amount of $3,500.00 conditioned upon satisfaction of the criteria set forth in the Trust Distribution Procedures, in exchange for a full and final release in favor of the Settlement Trust, the Protected Parties and the Chartered Organizations.**

The Settlement Trust shall make the Expedited Distributions on or as soon as reasonably practicable after the latest to occur of (a) the Effective Date, (b) the date the applicable holders of Direct Abuse Claims who have elected to receive an Expedited Distribution have satisfied the criteria set forth in the Trust Distribution Procedures, and (c) the date upon which the Settlement Trust has sufficient Cash to fund the full amount of the Expedited Distributions while retaining sufficient Cash reserves to fund applicable Settlement Trust Expenses, as determined by the Settlement Trustee. **This election must be made on a properly and timely completed and delivered Ballot in accordance with the instructions set forth herein, and shall only be effective if the Plan is confirmed and the Effective Date occurs.**

**IF SELECTING THE $3,500 OPTION, YOU MUST INDICATE THIS ON THIS BALLOT. YOU WILL NOT BE ABLE TO CHOOSE THIS OPTION AT A LATER DATE UNLESS THE COURT APPROVES OTHERWISE.**

Your rights are described in the Disclosure Statement for the Plan and the Solicitation Procedures Order. **This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain elections and certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Solicitation Agent immediately via the contact information set forth above.**

---

[2] "Abuse" means sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, indecent assault or battery, rape, pedophilia, ephebophilia, sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction, or intimidation, any other sexual misconduct or injury, contacts or interactions of a sexual nature, including the use of photography, video, or digital media, or other physical abuse or bullying or harassment without regard to whether such physical abuse or bullying is of a sexual nature, between a child and an adult, between a child and another child, or between a non-consenting adult and another adult, in each instance without regard to whether such activity involved explicit force, whether such activity involved genital or other physical contact, and whether there is or was any associated physical, psychological, or emotional harm to the child or non-consenting adult.

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.**  To have your vote counted, you must complete, sign, and return this Ballot to the Solicitation Agent by the Voting Deadline.

If you vote to accept or reject the Plan, you will be deemed to provide the releases in **Article X.J.4** of the Plan and as set forth below unless you opt out of such releases.  You may check the box below to opt out of the releases in **Article X.J.4** of the Plan.  Please be advised that the Plan also contains injunction and exculpation provisions, certain of which are set forth below.  If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt out of the releases in **Article X.J.4** of the Plan by this Ballot.  For a full description of these provisions, see **Article VI.Q** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

**You should carefully review the Disclosure Statement and the Plan, including the Plan's injunction, exculpation, and release provisions, as the rights of holders of Direct Abuse Claims may be affected thereunder.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.**

*[Remainder of Page Intentionally Left Blank]*

4

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW.  PLEASE FILL IN ALL
OF THE INFORMATION REQUESTED UNDER ITEM 4.  IF THIS BALLOT HAS
NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY
NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.  Amount of Claim.**

For purposes of voting to accept or reject the Plan, the undersigned certifies that as of the Voting Record Date, the undersigned holds a Direct Abuse Claim in the amount set forth below. **Please note that, except as otherwise may be set forth in the Disclosure Statement and Solicitation Procedures Order, each Direct Abuse Claim in Class 8 has been temporarily allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance, or any other purpose.**

> **Debtor:**  _____
>
> **Claim(s) Amount:**  $1.00

**Item 2.  Vote on the Plan.**

Please vote either to accept or to reject the Plan with respect to your Claims in Class 8 below (please check one).  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

Prior to voting on the Plan, please note the following:

If you vote to accept or reject the Plan, you shall be deemed to have consented to the release set forth in Article X.J.4 of the Plan unless you opt out of the release by checking the box in Item 4 below.

If you abstain from voting, you shall not be deemed to have consented to the release provisions set forth in Article X.J.4 of the Plan.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions in Article X of the Plan.

> **Check _only_ one box:**
>
> ☐         **ACCEPT (*I.E.*, VOTE IN FAVOR OF)** the Plan
>
> ☐         **REJECT (*I.E.*, VOTE AGAINST)** the Plan

<u>Item 3</u>. **Expedited Distribution Election.**

Please note that if you make the Expedited Distribution election set forth in Item 3, you must still complete the remaining Items on this Ballot.

---

**If the Plan is confirmed as set forth above and in the Plan, the holder of an eligible Direct Abuse Claim ELECTS to:**

☐    **Receive the Expedited Distribution of a one-time Cash payment from the Settlement Trust in the amount of $3,500.00 conditioned upon satisfaction of the criteria set forth in the Trust Distribution Procedures, in exchange for a full and final release in favor of the Settlement Trust, the Protected Parties, and the Chartered Organizations.**

---

<u>Item 4</u>. **Optional Release Election.**

**Unless a holder of a Class 8 Claim who votes to accept or reject the Plan opts out of the Releases by holders of Claims set forth below, such holder shall be deemed to have consented to the releases contained in <u>Article X.J.4</u> of the Plan, which provides as follows:**

<u>**Article X.J.4 of the Plan—Releases by Holders of Claims**</u>**.**

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[3] to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[4] shall, and shall be deemed to,**

---

[3]    "<u>Released Parties</u>" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Creditors' Committee; (e) the members of the Creditors' Committee in their capacities as such; (f) the Tort Claimants' Committee; (g) the members of the Tort Claimants' Committee in their capacities as such; (h) the Future Claimants' Representative; (i) the Coalition; (j) JPM; (k) the Settling Insurance Companies, including Hartford; (l) the Contributing Chartered Organizations, including TCJC; (m) the Foundation, in its capacity as lender under the Foundation Loan Agreement; (n) the Ad Hoc Committee; (o) the members of the Ad Hoc Committee in their capacities as such; (p) the Creditor Representative; (q) the Mediators; and (r) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Released Party; provided further, that the definition of "Released Parties" shall in all instances be subject to <u>Article X.J.</u> of the Plan.

[4]    "<u>Releasing Claim Holder</u>" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in <u>Article X.J.4</u> of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in <u>Article X.J.4</u> of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in <u>Article X.J.4</u> of the Plan; and (d) all of such Persons' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers,

expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; **provided, however,** that the releases set forth in <u>Article X.J.4</u> of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Abuse Litigation Claim to recover on account of such Allowed Claim in accordance with <u>Article III.B.9</u> of the Plan.  Notwithstanding the foregoing or anything to the contrary herein, (i) with respect to holders of Allowed General Unsecured Claims or Allowed Non-Abuse Litigation Claims, nothing in the Plan or the release set forth in <u>Article X.J.4</u> of the Plan  shall, or shall be construed to, release any claims or Causes of Action against any Local Council, Chartered Organization (other than a Contributing Chartered Organization), or Non-Settling Insurance Company (subject to <u>Article IV.D.3</u> of the Plan)and (ii) nothing in the Plan or the release set forth in <u>Article X.J.4</u> of the Plan shall, or shall be construed to, release any claims or Causes of Action asserted by Century Indemnity Company against Sidley Austin LLP ("<u>Sidley</u>") related to Sidley's representation of the Debtors prior to the Petition Date.

<u>Article X.J.5 of the Plan—Releases Relating to Contributing Chartered Organizations</u>.

a.    In furtherance of the Abuse Claims Settlement, as of the date that the Confirmation Order and Affirmation Order become Final Orders, except for the rights that

---

consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such.

remain in effect from and after the Effective Date to enforce the Plan, the Confirmation Order, and the terms of the TCJC Settlement Agreement, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Contributing Chartered Organizations,[5] including TCJC, shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge the Debtors, Reorganized BSA, the Related Non-Debtor Entities, the Local Councils, the other Protected Parties,[6] the Limited Protected Parties,[7] the Settling Insurance Companies, including Hartford, the Future Claimants' Representative, the Coalition, the Settlement Trust, and each of its and their respective Representatives (collectively, the "<u>Settlement Parties</u>"), of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the date that the Confirmation Order and Affirmation Order become Final Orders (including before the Petition Date) in connection with or related to (i) Abuse Claims, (ii) the Chapter 11 Cases, (iii) the Plan, or (iv) any Claims that were or could have been asserted by the Contributing Chartered Organizations against the Settlement Parties or any of them.

   b.     In furtherance of the Abuse Claims Settlement, as of the date that the Confirmation Order and Affirmation Order become Final Orders, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Confirmation Order, and the terms of the TCJC Settlement Agreement, for good and valuable

---

[5]    "<u>Contributing Chartered Organizations</u>" means the current or former Chartered Organizations listed on <u>Exhibit D</u> to the Plan, including any Chartered Organization made a Protected Party under a Post-Effective Date Chartered Organization Settlement approved by the Bankruptcy Court in accordance with <u>Article IV.I</u> of the Plan.  No Participating Chartered Organization shall be considered a Contributing Chartered Organization based solely on the Participating Chartered Organization Insurance Assignment.  Without limiting the foregoing, subject to Confirmation of the Plan and approval of the TCJC Settlement Agreement by an order of the Bankruptcy Court (including in the Confirmation Order), TCJC is a Contributing Chartered Organization and shall be designated as such in the Confirmation Order and the Affirmation Order.

[6]    "<u>Protected Parties</u>" means the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Contributing Chartered Organizations; (f) the Settling Insurance Companies, including Hartford; and (g) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Protected Party.  Notwithstanding the foregoing, a Contributing Chartered Organization shall be a Protected Party with respect to Abuse Claims only as set forth in the definition of "Abuse Claim."

[7]    "<u>Limited Protected Parties</u>" means the Participating Chartered Organizations, which means a Chartered Organization that does not (a) object to confirmation of the Plan or (b) inform Debtors' counsel in writing on or before the confirmation objection deadline that it does not wish to make the Participating Chartered Organization Insurance Assignment.  Notwithstanding the foregoing, with respect to any Chartered Organization that is a debtor in bankruptcy as of the Confirmation Date, such Chartered Organization shall be a Participating Chartered Organization only if it advises Debtors' counsel in writing that it wishes to make the Participating Chartered Organization Insurance Assignment, and, for the avoidance of doubt, absent such written advisement, none of such Chartered Organization's rights to or under the Abuse Insurance Policies shall be subject to the Participating Chartered Organization Insurance Assignment.  A list of Chartered Organizations that are not Participating Chartered Organizations is attached to the Plan as <u>Exhibit K</u>.

consideration, the adequacy of which is hereby confirmed, each of the Settlement Parties shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each of the Contributing Chartered Organizations, including TCJC, of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the date that the Confirmation Order and Affirmation Order become Final Orders (including before the Petition Date) in connection with or related to (i) Abuse Claims, (ii) the Chapter 11 Cases, (iii) the Plan, or (iv) any Claims that were or could have been asserted by the Settlement Parties against the Contributing Chartered Organizations or any of them.

If you voted to accept or reject the Plan in Item 2 above, check this box if you elect not to grant the release contained in Article X.J.4 of the Plan.

---

The undersigned, as a holder of (or representative of a holder of) a Class 8 Claim, elects to:

☐ **Opt out of the third party release in Article X.J.4 of the Plan.**

---

**Certain other Releases, Injunction and Exculpation Provisions Contained in the Plan**

**Article X.F of the Plan—Channeling Injunction.**

**Terms.** To preserve and promote the settlements contemplated by and provided for in the Plan, including the Abuse Claims Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, and to supplement, where necessary, the injunctive effect of the Discharge as provided in sections 1141 and 524 of the Bankruptcy Code and as described in Article X of the Plan, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court and the District Court under section 105(a) of the Bankruptcy Code, (a) the sole recourse of any holder of an Abuse Claim against a Protected Party on account of such Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents,[8] and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Protected Party or any property or interest in property of any Protected Party, and (b) the sole recourse of any holder of a Post-1975 Chartered Organization Abuse Claim against a Limited Protected Party on account of such Post-1975 Chartered Organization Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Post-1975 Chartered Organization Abuse Claim against any Limited

---

[8] "Settlement Trust Documents" means, collectively, (a) the Settlement Trust Agreement, (b) the Trust Distribution Procedures, (c) the Document Agreement, (d) the Confirmation Order, and (e) any other agreements, instruments and documents governing the establishment, administration and operation of the Settlement Trust, which shall be substantially in the forms set forth as exhibits in the Plan or in the Plan Supplement, as the same may be amended or modified from time to time in accordance with the terms thereof.

Protected Party or any property or interest in property of any Limited Protected Party. On and after the Effective Date, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Abuse Claim against the Protected Parties, or any of them, or any Post-1975 Chartered Organization Abuse Claim against the Limited Protected Parties, or any of them, shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Protected Party with respect to any such Abuse Claim or from any Limited Protected Party with respect to any such Post-1975 Chartered Organization Abuse Claim, other than from the Settlement Trust pursuant to the Settlement Trust Documents, including:

c.    commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

d.    enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

e.    creating, perfecting, or otherwise enforcing in any manner, whether directly or indirectly, any Encumbrance of any kind against any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

f.    asserting, implementing or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party; or

g.    taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Abuse Claim or Post-1975 Chartered Organization Abuse Claim.

Reservations.  Notwithstanding anything to the contrary in Article X.F of the Plan, the Channeling Injunction shall not enjoin:

a.    the rights of holders of Abuse Claims or Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims solely against the Settlement Trust in accordance with the Trust Distribution Procedures, including the ability to

pursue the Settlement Trust in the tort system as described in Article XII of the Trust Distribution Procedures;

b.    the rights of holders of Abuse Claims to assert such Abuse Claims against anyone other than a Protected Party or, in the case of Post-1975 Chartered Organization Abuse Claims, against anyone other than a Limited Protected Party;

c.    prior to the date that an Entity (other than an Insurance Company) becomes a Protected Party under **Article IV.I** of the Plan, the right of holders of Abuse Claims to assert such Abuse Claims against such Entity;

d.    prior to the date that a Chartered Organization becomes a Limited Protected Party under **Article IV.J** of the Plan, the right of holders of Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims against such Entity;

e.    the rights of holders of Abuse Claims that are not Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims against any Limited Protected Party (unless such Limited Protected Party becomes a Protected Party under **Article IV.I** of the Plan);

f.    the right of any Person to assert any Claim, debt, obligation or liability for payment of Settlement Trust Expenses solely against the Settlement Trust in accordance with the Settlement Trust Documents;

g.    the Settlement Trust from enforcing its rights under the Plan and the Settlement Trust Documents; or

h.    the rights of the Settlement Trust to prosecute any action against any Non-Settling Insurance Company based on or arising from Abuse Insurance Policies that are not the subject of an Insurance Settlement Agreement, subject to any Insurance Coverage Defenses**Article X.J.1 of the Plan—Releases by the Debtors and the Estates**.

**Article X.J.1 of the Plan—Releases by the Debtors and the Estates.**

**Releases by the Debtors and the Estates of the Released Parties**.  As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the Abuse Claims Settlement, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments,

11

damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article X.J.1 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

**Releases by the Debtors and the Estates of Certain Avoidance Actions.**  As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of Creditors' Committee and its members in their respective capacities as such in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Abuse Litigation Claims, and Convenience Claims of and from any and all Avoidance Actions.

**Article X.J.3 of the Plan—Releases by Holders of Abuse Claims.**

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Protected Parties and the Limited Protected Parties to facilitate and implement the reorganization of the Debtors, including the settlements embodied in the Plan, including the Abuse Claims Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all holders of Abuse Claims shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and

forever discharge and release: (a) each and all of the Protected Parties and their respective property and successors and assigns of and from all Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Abuse Claims; and (b) each and all of the Limited Protected Parties and their respective property and successors and assigns of and from all Post-1975 Chartered Organization Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Post-1975 Chartered Organization Abuse Claims; **provided**, **however**, that the releases set forth in **Article X.J.3** of the Plan shall not, and shall not be construed to: (i) release any Protected Party or Limited Protected Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (ii) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (iii) modify, reduce, impair or otherwise affect the ability of any holder of an Abuse Claim to recover on account of such Claim in accordance with **Article III. B.10** or **Article III.B.11** of the Plan, as applicable.

**Article X.K of the Plan—Exculpation.**

From and after the Effective Date, none of the Exculpated Parties[9] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or before the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the JPM/Creditors' Committee Settlement, the Hartford Insurance Settlement Agreement, the TCJC Settlement Agreement, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence. Notwithstanding the foregoing or any provision of the Plan to the contrary, Sidley shall not be an Exculpated Party with respect to any claims that Century

---

[9]    "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Creditors' Committee; (d) the members of the Creditors' Committee in their capacities as such; (e) the Tort Claimants' Committee; (f) the members of the Tort Claimants' Committee in their capacities as such; (g) the Future Claimants' Representative; (h) the Creditor Representative; and (i) all of such Persons' current officers and directors, former officers and directors who served in such capacity during the pendency of the Chapter 11 Cases but are no longer officers or directors as of the Effective Date, employees, volunteers, agents, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals.

Indemnity Company asserts against Sidley related to Sidley's representation of the Debtors prior to the Petition Date.

**Article X.L of the Plan—Injunctions Related to Releases and Exculpation.**

**Injunction Related to Releases.** As of the Effective Date, all holders of Claims that are the subject of **Article X.J** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.1** of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is the subject of **Article X.J** of the Plan from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Injunction Related to Exculpation.** As of the Effective Date, all holders of Claims that are the subject of **Article X.K** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.2** of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of **Article X.K** of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Item 5**. Certifications, Acknowledgment, Signature and Date.

By signing this Ballot, the holder of the Class 8 Direct Abuse Claim (or authorized signatory of such holder) acknowledges receipt of the Disclosure Statement, the Plan, and the other applicable solicitation materials, and certifies that:

(i)      it has the power and authority to vote to accept or reject the Plan,

(ii)     it was the holder (or is entitled to vote on behalf of such holder) of the Class 8 Direct Abuse Claim described in Item 1 as of the Voting Record Date,

(iii)    it has not submitted any other Ballots for other Class 8 Direct Abuse Claims, or if it has submitted any other Ballots with respect to such Claims, then any such Ballots date earlier in time are hereby revoked,

(iv)     it acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of such Entity as a holder of a Class 8 Claim,

(v)      it understands and, if accepting the Plan, agrees with the treatment provided for its Claim(s) under the Plan,

(vi)     it understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

(vii)    all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.  The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

| | |
|---|---|
| Print or Type Name of Claimant: | _____ |
| Last Four Digits of Social Security Number of Claimant: | _____ |
| Birthdate of Claimant (MM/DD/YY): | _____ |
| Signature: | _____ |
| Name of Signatory (if different than Claimant): | _____ |
| If by Authorized Agent, Title of Agent: | _____ |

| Street Address: | _____ |
|---|---|
| City, State, Zip Code: | _____ |
| Telephone Number: | _____ |
| Email Address: | _____ |
| Date Completed: | _____ |

---

**IF THIS BALLOT IS NOT RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE <u>DECEMBER 14, 2021 AT 4:00 P.M. (EASTERN TIME)</u>, YOUR VOTE WILL NOT BE COUNTED.**

---

      **Ballots must be delivered to the Solicitation Agent (a) via the electronic Ballot submission platform on the Solicitation Agent's website (the "<u>E-Ballot Platform</u>") by visiting https://omniagentsolutions.com/bsa-SAballots, and following the instructions set forth on the website, or (b) at the appropriate address listed below, or in the enclosed envelope, as applicable. You are highly encouraged to submit your Ballot via the E-Ballot Platform. If you choose to submit your Ballot via the E-Ballot Platform, you should NOT submit a hard copy Ballot. Please choose only one method for returning your Ballot.**

| <u>If by E-Ballot Platform:</u> | <u>If by standard or overnight mail or personal delivery:</u> |
|---|---|
| https://omniagentsolutions.com/bsa-SAballots | **Boy Scouts of America Ballot Processing**<br>**c/o Omni Agent Solutions**<br>**5955 De Soto Avenue, Suite 100**<br>**Woodland Hills, CA 91367** |

      **To submit your Ballot via the E-Ballot Platform, please visit https://omniagentsolutions.com/bsa-SAballots and follow the instructions to submit your Ballot.**

      The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email or other means of electronic transmission will not be counted. Holders of Claims who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

      If you have questions about this Ballot, or if you did not receive access to a copy of the Plan or any related materials, please contact the Solicitation Agent by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue,

Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.

Information may also be obtained at https://omniagentsolutions.com/bsa-SAballots.  **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtors or any other party for payment purposes.

<u>**INSTRUCTIONS FOR COMPLETING YOUR BALLOT**</u>

To properly complete this Ballot, you must follow the procedures described below, which explain each of the items contained on your Ballot.  If you have any questions, please contact the Solicitation Agent using the contact information provided above or visit https://omniagentsolutions.com/bsa-SAballots.

**1.      Use of Online Ballot Portal—If Submitting Your Vote Through the E-Ballot Platform:**

The Solicitation Agent will accept Ballots if properly completed through the E-Ballot Platform.  To submit your Ballot via the E-Ballot Platform, visit https://omniagentsolutions.com/bsa-SAballots and follow the instructions to submit your Ballot.

The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via online or electronic submission.  **Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**  Creditors who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

**Use of Hard Copy Ballot—If Submitting Your Vote Through Standard or Overnight Mail or Personal Delivery:**

Submit your completed and signed Ballot by standard mail using the pre-addressed envelope included in the Solicitation Package, or by overnight mail or personal delivery to:

| Boy Scouts of America Ballot Processing |
|:---:|
| c/o Omni Agent Solutions |
| 5955 De Soto Avenue, Suite 100 |
| Woodland Hills, CA 91367 |

**The Solicitation Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

**2.      To fill out your Ballot, you must complete the following:**

a.      <u>**Item 1 (Amount of Claim)**</u>.  **Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each Direct Abuse Claim in Class 8 has been allowed in the amount of $1.00 for voting purposes only, and shall**

**not be binding upon the holder of the Direct Abuse Claim, the Debtors, the Settlement Trust, or any other party for any purpose other than voting on the Plan.**

        b.    **Item 2 (Vote on the Plan)**.  Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2.  You must vote the entire amount of your Direct Abuse Claim either to accept (*i.e.*, vote in favor of) or reject (*i.e.*, vote against) the Plan and you may not split your vote.  Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

        c.    If you hold Claims in more than one class, you may receive more than one Ballot or Solicitation Package, labeled for a different class of Claims.  Your vote will be counted in determining acceptance or rejection of the Plan by a particular class of Claims only if you complete, sign, and return the Ballot labeled for such class of Claims in accordance with the instructions on that Ballot.

        d.    **Item 3 (Expedited Distribution Election)**.  If the Plan is confirmed, if you have properly completed a non-duplicative proof of claim asserting a Direct Abuse Claim and filed such Claim by the Bar Date or were permitted by a Final Order of the Bankruptcy Court to file a late claim, you may elect in Item 3 to receive an Expedited Distribution, which, as specified in the Plan, is a one-time Cash payment from the Settlement Trust in the amount of $3,500.00 conditioned upon satisfaction of the criteria set forth in the Trust Distribution Procedures, in exchange for a full and final release in favor of the Settlement Trust, the Protected Parties, and the Chartered Organizations.  The Settlement Trust shall make the Expedited Distributions on one or more dates occurring on or as soon as reasonably practicable after the latest to occur of (a) the Effective Date or (b) the date the applicable holders of Direct Abuse Claims who have elected to receive an Expedited Distribution have satisfied the criteria set forth in the Trust Distribution Procedures, and (c) the date upon which the Settlement Trust has sufficient Cash to fund the full amount of the Expedited Distributions while retaining sufficient Cash reserves to fund applicable Settlement Trust Expenses, as determined by the Settlement Trustee.  **This election must be made in Item 3 on a properly and timely completed and delivered Ballot.**

      **IF SELECTING THE $3,500 OPTION, YOU MUST INDICATE THIS ON THIS BALLOT.  YOU WILL NOT BE ABLE TO CHOOSE THIS OPTION AT A LATER DATE UNLESS THE COURT APPROVES OTHERWISE.**

        e.    **Item 4 (Releases)**.  Pursuant to <u>Article X</u> of the Plan, the Debtors seek approval of the release provision set forth in <u>Article X.J.4</u> of the Plan and provided above.  Holders of Direct Abuse Claims who vote to accept or reject the Plan may opt out of this release by checking the box in Item 4.

---

**IF THE PLAN BECOMES EFFECTIVE, AS A HOLDER OF A DIRECT ABUSE CLAIM UNDER THE PLAN, IF YOU VOTE TO ACCEPT OR REJECT THE PLAN YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN <u>ARTICLE X.J.4</u> OF THE PLAN, AS SET FORTH ABOVE, UNLESS YOU CHECK THE BOX IN ITEM 4 TO OPT OUT OF THE RELEASES.**

---

f.     **Item 5 (Certifications, Acknowledgement, Signature, and Date)**.  Either the claimant, the claimant's personal representative, or the claimant's attorney <u>must</u> sign the Ballot. If the Ballot is not signed, the vote shown on the Ballot will <u>not</u> be counted.

g.     Claimants with Social Security Numbers <u>must</u> provide the last four digits of their Social Security Number in Item 4 of the Ballot.

h.     The claimant, the claimant's personal representative, or the claimant's attorney, must certify certain information on the Ballot.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

i.     By signing the Ballot, you make the following certifications on information and belief:

   (i)     I have the power and authority to vote to accept or reject the Plan,

   (ii)    I am the holder (or am entitled to vote on behalf of such holder) of the Direct Abuse Claim described in Item 1 as of the Voting Record Date,

   (iii)   I have not submitted any other Ballots for other Class 8 Direct Abuse Claims, or if I have submitted any other Ballots with respect to such Claims, then any such Ballots date earlier in time are hereby revoked,

   (iv)    I acknowledge that a vote to accept the Plan constitutes an acceptance of the treatment of my Claim as a Class 8 Claim,

   (v)     I understand and, if accepting the Plan, agree with the treatment provided for my Claim(s) under the Plan,

   (vi)    I understand and acknowledge that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

   (vii)   all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

**3.     Other Instructions for Completing the Ballots:**

a.     The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of a Claim or Interest.

b.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

c.      If you submit more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Solicitation Agent and received by the Solicitation Agent before the Voting Deadline will supersede and revoke any prior Ballot.

d.      If more than one Ballot is received from the holder of a Direct Abuse Claim entitled to vote and from an attorney purporting to represent such holder (including in accordance with procedures related to Master Ballots) prior to the Voting Deadline, the Ballot received from the holder of the Direct Abuse Claim entitled to vote will be counted.

e.      To the extent you have received two (2) or more duplicative Ballots on account of the same Direct Abuse Claim, please note that each claimant is authorized to submit only one Ballot on account of such Claim.

f.      In the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

g.      There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

---

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS INCLUDED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.**

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT, DID NOT RECEIVE INSTRUCTIONS REGARDING ACCESSING THE DISCLOSURE STATEMENT OR PLAN, RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT:**

| | |
|---|---|
| **TELEPHONE:** | **866-907-2721** |
| **EMAIL:** | **BSAballots@omniagnt.com** |
| **ADDRESS:** | **Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367** |
| **WEBSITE:** | **https://omniagentsolutions.com/BSA** |

## __Exhibit 2-7__

**Form of Ballot for Class 9 Indirect Abuse Claims**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

**BALLOT FOR CLASS 9 (INDIRECT ABUSE CLAIMS)**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING YOUR BALLOT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**ACCESS TO SOLICITATION MATERIALS:**

**THE PLAN, THE DISCLOSURE STATEMENT, AND THE SOLICITATION PROCEDURES ORDER MAY BE ACCESSED, FREE OF CHARGE, AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA-BALLOTS.**

**IF YOU WOULD PREFER A PAPER OR OTHER FORMAT OF THESE MATERIALS, OR IF YOU NEED TO OBTAIN ADDITIONAL SOLICITATION PACKAGES, PLEASE CONTACT OMNI AGENT SOLUTIONS (THE "SOLICITATION AGENT") BY (A) CALLING THE DEBTORS' RESTRUCTURING HOTLINE AT 866-907-2721, (B) EMAILING BSABALLOTS@OMNIAGNT.COM, (C) WRITING TO BOY SCOUTS OF AMERICA BALLOT PROCESSING, C/O OMNI AGENT SOLUTIONS, 5955 DE SOTO AVENUE, SUITE 100, WOODLAND HILLS, CA 91367, OR (D) SUBMITTING AN INQUIRY ON THE DEBTORS' RESTRUCTURING WEBSITE AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY 4:00 P.M. (EASTERN TIME) ON DECEMBER 14, 2021 (THE "VOTING DEADLINE").**

**IF YOU VOTE TO ACCEPT OR REJECT THE PLAN, YOU WILL BE RELEASING THE RELEASED PARTIES FROM ANY AND ALL CLAIMS/CAUSES OF ACTION TO THE EXTENT PROVIDED IN ARTICLE X.J.4 OF THE PLAN UNLESS YOU**

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

**"OPT-OUT" OF SUCH RELEASES.  YOU MAY "OPT-OUT" OF SUCH RELEASES AND YOU MUST INDICATE SUCH "OPT-OUT" IN THE BALLOT.**

Pursuant to this ballot (this "Ballot"), the above-captioned debtors and debtors-in-possession (together, the "Debtors") are soliciting votes from holders of Class 9 Indirect Abuse Claims on the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"), which is described in greater detail in that certain disclosure statement regarding the Plan, filed on [●], 2021 [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable.  On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. [●]] (the "Solicitation Procedures Order") approving the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code and the procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").  Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code, which is a mechanism by which Abuse Claims will be channeled to a Settlement Trust established pursuant to section 105(a) of the Bankruptcy Code.  For a description of the causes of action to be enjoined and the identities of the Entities that would be subject to these injunctions, see **Article VI.Q** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

The Debtors have compiled a list of all potential Protected Parties and potential Limited Protected Parties under the Plan, including the identities of all Local Councils, Chartered Organizations, and Insurance Companies.  If the Plan is confirmed, to the extent any such parties participate, they will be included in the definition of Protected Parties or Limited Protected Parties and will benefit from the Channeling Injunction.  This list of potential Protected Parties and Limited Protected Parties is available at https://omniagentsolutions.com/bsa-SAballots.  **This list only includes *potential* Protected Parties and Limited Protected Parties—it does not mean that any such party will in fact become a Protected Party or Limited Protected Party under the Plan.**

You are receiving this Ballot because you have asserted a liquidated or unliquidated Abuse Claim for contribution, indemnity for contribution, indemnity, reimbursement, or subrogation, whether contractual or implied by law (as those terms are defined by the applicable non-bankruptcy law of the relevant jurisdiction), and any other derivative Abuse Claim of any kind whatsoever, whether in the nature of or sounding in contract, tort, warranty or any other theory of law or equity whatsoever, including any indemnification, reimbursement, hold-harmless or other payment obligation provided for under any prepetition settlement, insurance policy, program agreement or contract (as defined in the Plan, an "Indirect Abuse Claim").  Your Indirect Abuse Claim is classified under the Plan in Class 9 (Indirect Abuse Claims).  Accordingly, you have a right to vote to accept or reject the Plan.

Your rights are described in the Disclosure Statement for the Plan and the Solicitation Procedures Order. **This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Solicitation Agent immediately via the contact information set forth above.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.** To have your vote counted, you must complete, sign, and return this Ballot to the Solicitation Agent by the Voting Deadline.

If you vote to accept or reject the Plan, you will be deemed to provide the releases in **<u>Article X.J.4</u>** of the Plan and as set forth below unless you opt out of such releases. You may check the box below to opt out of the releases in **<u>Article X.J.4</u>** of the Plan. Please be advised that the Plan also contains injunction and exculpation provisions, certain of which are set forth below. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt out of the releases in **<u>Article X.J.4</u>** of the Plan by this Ballot. For a full description of these provisions, see **<u>Article VI.Q</u>** of the Disclosure Statement and **<u>Article X</u>** of the Plan, which sets forth the terms of each of these provisions.

**You should carefully review the Disclosure Statement and the Plan, including the Plan's injunction, exculpation, and release provisions, as the rights of holders of Indirect Abuse Claims may be affected thereunder. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.**

*[Remainder of Page Intentionally Left Blank]*

3

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

<div style="border:1px solid">

**PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW. PLEASE FILL IN ALL OF THE INFORMATION REQUESTED UNDER ITEM 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

</div>

**Item 1.  Amount of Claim.**

For purposes of voting to accept or reject the Plan, the undersigned certifies that as of the Voting Record Date, the undersigned holds an Indirect Abuse Claim in the amount set forth below. **Please note that, except as otherwise may be set forth in the Disclosure Statement and Solicitation Procedures Order, each Indirect Abuse Claim in Class 9 has been allowed in the amount of $1.00 for voting purposes only, and not for distributions under the Plan, allowance, or any other purpose.**

<div style="border:1px solid">

**Debtor**:  _____

**Claim(s) Amount**:  $1.00

</div>

**Item 2.  Vote on the Plan.**

Please vote either to accept or to reject the Plan with respect to your Claims in Class 9 below (please check one).  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

Prior to voting on the Plan, please note the following:

If you vote to accept or reject the Plan, you shall be deemed to have consented to the release set forth in Article X.J.4 of the Plan unless you opt out of the release by checking the box in Item 3 below.

If you abstain from voting, you shall not be deemed to have consented to the release provisions set forth in Article X.J.4 of the Plan.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions in Article X of the Plan.

<div style="border:1px solid">

**Check only one box**:

☐    **ACCEPT (*I.E.*, VOTE IN FAVOR OF)** the Plan

☐    **REJECT (*I.E.*, VOTE AGAINST)** the Plan

</div>

**Item 3**.  **Optional Release Election.**

Unless a holder of a Class **9** Claim who votes to accept or reject the Plan opts out of the Releases by holders of Claims set forth below, such holder shall be deemed to have consented to the releases contained in <u>Article X.J.4</u> of the Plan, which provides as follows:

<u>Article X.J.4 of the Plan—Releases by Holders of Claims.</u>

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[2] to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[3] shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is

---

[2]  "Released Parties" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Creditors' Committee; (e) the members of the Creditors' Committee in their capacities as such; (f) the Tort Claimants' Committee; (g) the members of the Tort Claimants' Committee in their capacities as such; (h) the Future Claimants' Representative; (i) the Coalition; (j) JPM; (k) the Settling Insurance Companies, including Hartford; (l) the Contributing Chartered Organizations, including TCJC; (m) the Foundation, in its capacity as lender under the Foundation Loan Agreement; (n) the Ad Hoc Committee; (o) the members of the Ad Hoc Committee in their capacities as such; (p) the Creditor Representative; (q) the Mediators; and (r) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Released Party; provided further, that the definition of "Released Parties" shall in all instances be subject to <u>Article X.J.</u> of the Plan.

[3]  "<u>Releasing Claim Holder</u>" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in <u>Article X.J.4</u> of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in <u>Article X.J.4</u> of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in <u>Article X.J.4</u> of the Plan; and (d) all of such Persons' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such.

treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; **provided**, **however**, that the releases set forth in **Article X.J.4** of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Abuse Litigation Claim to recover on account of such Allowed Claim in accordance with **Article III.B.9** of the Plan. Notwithstanding the foregoing or anything to the contrary herein, (i) with respect to holders of Allowed General Unsecured Claims or Allowed Non-Abuse Litigation Claims, nothing in the Plan or the release set forth in **Article X.J.4** of the Plan shall, or shall be construed to, release any claims or Causes of Action against any Local Council, Chartered Organization (other than a Contributing Chartered Organization), or Non-Settling Insurance Company (subject to **Article IV.D.3** of the Plan) and (ii) nothing in the Plan or the release set forth in **Article X.J.4** of the Plan shall, or shall be construed to, release any claims or Causes of Action asserted by Century Indemnity Company against Sidley Austin LLP ("**Sidley**") related to Sidley's representation of the Debtors prior to the Petition Date.

**Article X.J.5 of the Plan—Releases Relating to Contributing Chartered Organizations.**

a. **In furtherance of the Abuse Claims Settlement, as of the date that the Confirmation Order and Affirmation Order become Final Orders, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Confirmation Order, and the terms of the TCJC Settlement Agreement, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Contributing Chartered Organizations,[4] including TCJC, shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge the Debtors, Reorganized BSA, the Related Non-Debtor Entities, the Local Councils, the other**

---

[4] "Contributing Chartered Organizations" means the current or former Chartered Organizations listed on Exhibit D to the Plan, including any Chartered Organization made a Protected Party under a Post-Effective Date Chartered Organization Settlement approved by the Bankruptcy Court in accordance with Article IV.I of the Plan. No Participating Chartered Organization shall be considered a Contributing Chartered Organization based solely on the Participating Chartered Organization Insurance Assignment. Without limiting the foregoing, subject to Confirmation of the Plan and approval of the TCJC Settlement Agreement by an order of the Bankruptcy Court (including in the Confirmation Order), TCJC is a Contributing Chartered Organization and shall be designated as such in the Confirmation Order and the Affirmation Order.

Protected Parties,[5] the Limited Protected Parties,[6] the Settling Insurance Companies, including Hartford, the Future Claimants' Representative, the Coalition, the Settlement Trust, and each of its and their respective Representatives (collectively, the "Settlement Parties"), of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, any act, omission, transaction, event, or other circumstance taking place or existing on or before the date that the Confirmation Order and Affirmation Order become Final Orders (including before the Petition Date) in connection with or related to (i) Abuse Claims, (ii) the Chapter 11 Cases, (iii) the Plan, or (iv) any Claims that were or could have been asserted by the Contributing Chartered Organizations against the Settlement Parties or any of them.

b.      In furtherance of the Abuse Claims Settlement, as of the date that the Confirmation Order and Affirmation Order become Final Orders, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Confirmation Order, and the terms of the TCJC Settlement Agreement, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Settlement Parties shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each of the Contributing Chartered Organizations, including TCJC, of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the date that the Confirmation Order and Affirmation Order become Final Orders (including before the Petition Date) in connection with or related to (i) Abuse Claims, (ii) the Chapter 11 Cases, (iii) the Plan, or (iv) any Claims that were or could

---

[5]  "Protected Parties" means the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Contributing Chartered Organizations; (f) the Settling Insurance Companies, including Hartford; and (g) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Protected Party. Notwithstanding the foregoing, a Contributing Chartered Organization shall be a Protected Party with respect to Abuse Claims only as set forth in the definition of "Abuse Claim."

[6]  "Limited Protected Parties" means the Participating Chartered Organizations, which means a Chartered Organization that does not (a) object to confirmation of the Plan or (b) inform Debtors' counsel in writing on or before the confirmation objection deadline that it does not wish to make the Participating Chartered Organization Insurance Assignment. Notwithstanding the foregoing, with respect to any Chartered Organization that is a debtor in bankruptcy as of the Confirmation Date, such Chartered Organization shall be a Participating Chartered Organization only if it advises Debtors' counsel in writing that it wishes to make the Participating Chartered Organization Insurance Assignment, and, for the avoidance of doubt, absent such written advisement, none of such Chartered Organization's rights to or under the Abuse Insurance Policies shall be subject to the Participating Chartered Organization Insurance Assignment. A list of Chartered Organizations that are not Participating Chartered Organizations is attached to the Plan as Exhibit K.

**have been asserted by the Settlement Parties against the Contributing Chartered Organizations or any of them.**

If you voted to accept or reject the Plan in Item 2 above, check this box if you elect not to grant the release contained in <u>Article X.J.4</u> of the Plan.

---

The undersigned, as a holder of (or representative of a holder of) a Class 9 Claim, elects to:

☐ **Opt out of the third party release in <u>Article X.J.4</u> of the Plan.**

---

**<u>Certain other Releases, Injunction and Exculpation Provisions Contained in the Plan</u>**

**<u>Article X.F of the Plan—Channeling Injunction</u>.**

**<u>Terms</u>.  To preserve and promote the settlements contemplated by and provided for in the Plan, including the Abuse Claims Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, and to supplement, where necessary, the injunctive effect of the Discharge as provided in sections 1141 and 524 of the Bankruptcy Code and as described in <u>Article X</u> of the Plan, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court and the District Court under section 105(a) of the Bankruptcy Code, (a) the sole recourse of any holder of an Abuse Claim against a Protected Party on account of such Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents,[7] and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Protected Party or any property or interest in property of any Protected Party, and (b) the sole recourse of any holder of a Post-1975 Chartered Organization Abuse Claim against a Limited Protected Party on account of such Post-1975 Chartered Organization Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Post-1975 Chartered Organization Abuse Claim against any Limited Protected Party or any property or interest in property of any Limited Protected Party.  On and after the Effective Date, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Abuse Claim against the Protected Parties, or any of them, or any Post-1975 Chartered Organization Abuse Claim against the Limited Protected Parties, or any of them, shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Protected Party with respect to any such Abuse Claim or from any Limited Protected Party with respect to any such Post-1975 Chartered Organization Abuse Claim, other than from the Settlement Trust pursuant to the Settlement Trust Documents, including:**

---

[7]  "<u>Settlement Trust Documents</u>" means, collectively, (a) the Settlement Trust Agreement, (b) the Trust Distribution Procedures, (c) the Document Agreement, (d) the Confirmation Order, and (e) any other agreements, instruments and documents governing the establishment, administration and operation of the Settlement Trust, which shall be substantially in the forms set forth as exhibits <u>in the Plan</u> or in the Plan Supplement, as the same may be amended or modified from time to time in accordance with the terms thereof<u>.</u>

c.      commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

d.      enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

e.      creating, perfecting, or otherwise enforcing in any manner, whether directly or indirectly, any Encumbrance of any kind against any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

f.      asserting, implementing or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party; or

g.      taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Abuse Claim or Post-1975 Chartered Organization Abuse Claim.

<u>Reservations</u>.  Notwithstanding anything to the contrary in <u>Article X.F</u> of the Plan, the Channeling Injunction shall not enjoin:

a.      the rights of holders of Abuse Claims or Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims solely against the Settlement Trust in accordance with the Trust Distribution Procedures, including the ability to pursue the Settlement Trust in the tort system as described in Article XII of the Trust Distribution Procedures;

b.      the rights of holders of Abuse Claims to assert such Abuse Claims against anyone other than a Protected Party or, in the case of Post-1975 Chartered Organization Abuse Claims, against anyone other than a Limited Protected Party;

c.      prior to the date that an Entity (other than an Insurance Company) becomes a Protected Party under <u>Article IV.I</u> of the Plan, the right of holders of Abuse Claims to assert such Abuse Claims against such Entity;

   d. prior to the date that a Chartered Organization becomes a Limited Protected Party under <u>Article IV.J</u> of the Plan, the right of holders of Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims against such Entity;

   e. the rights of holders of Abuse Claims that are not Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims against any Limited Protected Party (unless such Limited Protected Party becomes a Protected Party under <u>Article IV.I</u> of the Plan);

   f. the right of any Person to assert any Claim, debt, obligation or liability for payment of Settlement Trust Expenses solely against the Settlement Trust in accordance with the Settlement Trust Documents;

   g. the Settlement Trust from enforcing its rights under the Plan and the Settlement Trust Documents; or

   h. the rights of the Settlement Trust and Reorganized BSA to prosecute any action against any Non-Settling Insurance Company based on or arising from Abuse Insurance Policies that are not the subject of an Insurance Settlement Agreement, subject to any Insurance Coverage Defenses.

<u>Article X.J.1 of the Plan—Releases by the Debtors and the Estates.</u>

   <u>Releases by the Debtors and the Estates of the Released Parties</u>.  As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the Abuse Claims Settlement, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring

of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article X.J.1 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

**Releases by the Debtors and the Estates of Certain Avoidance Actions.**  As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of Creditors' Committee and its members in their respective capacities as such in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Abuse Litigation Claims, and Convenience Claims of and from any and all Avoidance Actions.

**Article X.J.3 of the Plan—Releases by Holders of Abuse Claims.**

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Protected Parties and the Limited Protected Parties to facilitate and implement the reorganization of the Debtors, including the settlements embodied in the Plan, including the Abuse Claims Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all holders of Abuse Claims shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release: (a) each and all of the Protected Parties and their respective property and successors and assigns of and from all Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Abuse Claims; and (b) each and all of the Limited Protected Parties and their respective property and successors and assigns of and from all Post-1975 Chartered Organization Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct,

foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Post-1975 Chartered Organization Abuse Claims; provided, however, that the releases set forth in **Article X.J.3** of the Plan shall not, and shall not be construed to: (i) release any Protected Party or Limited Protected Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (ii) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (iii) modify, reduce, impair or otherwise affect the ability of any holder of an Abuse Claim to recover on account of such Claim in accordance with **Article III. B.10** or **Article III.B.11** of the Plan, as applicable.

**Article X.K of the Plan—Exculpation.**

From and after the Effective Date, none of the Exculpated Parties[8] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or before the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the JPM/Creditors' Committee Settlement, the Hartford Insurance Settlement Agreement, the TCJC Settlement Agreement, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence. Notwithstanding the foregoing or any provision of the Plan to the contrary, Sidley shall not be an Exculpated Party with respect to any claims that Century Indemnity Company asserts against Sidley related to Sidley's representation of the Debtors prior to the Petition Date.

**Article X.L of the Plan—Injunctions Related to Releases and Exculpation.**

**Injunction Related to Releases.** As of the Effective Date, all holders of Claims that are the subject of **Article X.J** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing

---

[8]    "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Creditors' Committee; (d) the members of the Creditors' Committee in their capacities as such; (e) the Tort Claimants' Committee; (f) the members of the Tort Claimants' Committee in their capacities as such; (g) the Future Claimants' Representative; (h) the Creditor Representative; and (i) all of such Persons' current officers and directors, former officers and directors who served in such capacity during the pendency of the Chapter 11 Cases but are no longer officers or directors as of the Effective Date, employees, volunteers, agents, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals.

in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.1** of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is the subject of **Article X.J** of the Plan from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Injunction Related to Exculpation.**  As of the Effective Date, all holders of Claims that are the subject of **Article X.K** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.2** of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of **Article X.K** of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Item 4**. Certifications, Acknowledgment, Signature and Date.

By signing this Ballot, the holder of the Indirect Abuse Claim (or authorized signatory of such holder) acknowledges receipt of the Disclosure Statement, the Plan, the Confirmation Hearing Notice, and the other applicable solicitation materials, and certifies that:

(i)     it has the power and authority to vote to accept or reject the Plan,

(ii)    it was the holder (or is entitled to vote on behalf of such holder) of the Class 9 Indirect Abuse Claim described in Item 1 as of the Voting Record Date,

(iii)   it has not submitted any other Ballots for other Class 9 Indirect Abuse Claims, or if it has submitted any other Ballots with respect to such Claims, then any such Ballots dated earlier in time are hereby revoked,

(iv)    it acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of such Entity as a holder of a Class 9 Claim,

(v)    it understands and, if accepting the Plan, agrees with the treatment provided for its Claim(s) under the Plan,

(vi)    it understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

(vii)    all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.  The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

| | |
|---|---|
| Print or Type Name of Claimant: | _____ |
| Last Four Digits of Social Security Number of Claimant: | _____ |
| Signature: | _____ |
| Name of Signatory (if different than Claimant): | _____ |
| If by Authorized Agent, Title of Agent: | _____ |
| Street Address: | _____ |
| City, State, Zip Code: | _____ |
| Telephone Number: | _____ |
| Email Address: | _____ |
| Date Completed: | _____ |

> **IF THIS BALLOT IS NOT RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE <u>DECEMBER 14, 2021 AT 4:00 P.M. (EASTERN TIME)</u>, YOUR VOTE WILL NOT BE COUNTED.**

Ballots must be delivered to the Solicitation Agent (a) via the electronic Ballot submission platform on the Solicitation Agent's website (the "<u>E-Ballot Platform</u>") by visiting https://omniagentsolutions.com/bsa-ballots, and following the instructions set forth on the website, or (b) at the appropriate address listed below, or in the enclosed envelope, as applicable. You are highly encouraged to submit your Ballot via the E-Ballot Platform. If you choose to submit your Ballot via the E-Ballot Platform, you should NOT submit a hard copy Ballot. Please choose only one method for returning your Ballot.

| If by E-Ballot Platform: | If by standard or overnight mail or personal delivery: |
|---|---|
| https://omniagentsolutions.com/bsa-ballots | Boy Scouts of America Ballot Processing<br>c/o Omni Agent Solutions<br>5955 De Soto Avenue, Suite 100<br>Woodland Hills, CA 91367 |

To submit your Ballot via the E-Ballot Platform, please visit https://omniagentsolutions.com/bsa-ballots and follow the instructions to submit your Ballot.

**IMPORTANT NOTE:** You will need the following information to retrieve and submit your customized electronic Ballot:

**Unique E-Ballot ID#: [_____]**

The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable. Holders of Claims who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

If you have questions about this Ballot, or if you did not receive access to a copy of the Plan or any related materials, please contact the Solicitation Agent by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.

Information may also be obtained at https://omniagentsolutions.com/bsa-ballots. **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtors or any other party for payment purposes.

*[Remainder of Page Intentionally Left Blank]*

## <u>INSTRUCTIONS FOR COMPLETING YOUR BALLOT</u>

To properly complete this Ballot, you must follow the procedures described below, which explain each of the items contained on your Ballot. If you have any questions, please contact the Solicitation Agent using the contact information provided above or visit https://omniagentsolutions.com/bsa-ballots.

1.    **Use of Online Ballot Portal—If Submitting Your Vote Through the E-Ballot Platform:**

The Solicitation Agent will accept Ballots if properly completed through the E-Ballot Platform. To submit your Ballot via the E-Ballot Platform, visit https://omniagentsolutions.com/bsa-ballots and follow the instructions to submit your Ballot.

---

**IMPORTANT NOTE**: You will need the following information to retrieve and submit your customized electronic Ballot:

**Unique E-Ballot ID#**: [_____]

---

The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via online or electronic submission. **Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable. Creditors who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

**Use of Hard Copy Ballot—If Submitting Your Vote Through Standard or Overnight Mail or Personal Delivery:**

Submit your completed and signed Ballot by standard mail using the pre-addressed envelope included in the Solicitation Package, or by overnight mail or personal delivery to:

---

Boy Scouts of America Ballot Processing
c/o Omni Agent Solutions
5955 De Soto Avenue, Suite 100
Woodland Hills, CA 91367

---

**The Solicitation Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2.    **To fill out your Ballot, you must complete the following:**

a.    <u>**Item 1 (Amount of Claim)**</u>.  **Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each Indirect Abuse Claim in Class 9 has been allowed in the amount of $1.00 for voting purposes only, and shall**

**not be binding upon the holder of the Indirect Abuse Claim, the Debtors, the Settlement Trust, or any other party for any purpose other than voting on the Plan.**

        b.     **Item 2 (Vote on the Plan)**.  Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2.  You must vote the entire amount of your Indirect Abuse Claim either to accept (*i.e.*, vote in favor of) or reject (*i.e.*, vote against) the Plan and you may not split your vote.  Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

        c.     If you hold Claims in more than one class, you may receive more than one Ballot or Solicitation Package, labeled for a different class of Claims.  Your vote will be counted in determining acceptance or rejection of the Plan by a particular class of Claims only if you complete, sign, and return the Ballot labeled for such class of Claims in accordance with the instructions on that Ballot.

        d.     **Item 3 (Releases)**.  Pursuant to <u>Article X</u> of the Plan, the Debtors seek approval of the release provision set forth in <u>Article X.J.4</u> of the Plan and provided above.  Holders of Indirect Abuse Claims who vote to accept or reject the Plan may opt out of this release by checking the box in Item 3.

---

**IF THE PLAN BECOMES EFFECTIVE, AS A HOLDER OF AN INDIRECT ABUSE CLAIM UNDER THE PLAN, IF YOU VOTE TO ACCEPT OR REJECT THE PLAN YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN <u>ARTICLE X.J.4</u> OF THE PLAN, AS SET FORTH ABOVE, UNLESS YOU CHECK THE BOX IN ITEM 3 TO OPT OUT OF THE RELEASES.**

---

        e.     **Item 4 (Certifications, Acknowledgement, Signature, and Date)**.  Either the claimant, the claimant's personal representative, or the claimant's attorney <u>must</u> sign the Ballot.  If the Ballot is not signed, the vote shown on the Ballot will <u>not</u> be counted.

        f.     Claimants with Social Security Numbers <u>must</u> provide the last four digits of their Social Security Number in Item 4 of the Ballot.

        g.     The claimant, the claimant's personal representative, or the claimant's attorney, must certify certain information on the Ballot.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

        h.     By signing the Ballot, you make the following certifications on information and belief:

           (i)     I have the power and authority to vote to accept or reject the Plan,

           (ii)     I am the holder (or am entitled to vote on behalf of such holder) of the Indirect Abuse Claim described in Item 1 as of the Voting Record Date,

(iii)    I have not submitted any other Ballots for other Class 9 Indirect Abuse Claims, or if I have submitted any other Ballots with respect to such Claims, then any such Ballots date earlier in time are hereby revoked,

(iv)    I acknowledge that a vote to accept the Plan constitutes an acceptance of the treatment of my Claim as a Class 9 Claim,

(v)    I understand and, if accepting the Plan, agree with the treatment provided for my Claim(s) under the Plan,

(vi)    I understand and acknowledge that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

(vii)    all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

**3.    Other Instructions for Completing the Ballots:**

a.    The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of a Claim or Interest.

b.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

c.    If you submit more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Solicitation Agent and received by the Solicitation Agent before the Voting Deadline will supersede and revoke any prior Ballot.

d.    To the extent you have received two (2) or more duplicative Ballots on account of the same Indirect Abuse Claim, please note that each claimant is authorized to submit only one Ballot on account of such Claim.

e.    In the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall

automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

        f.    There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

---

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS INCLUDED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.**

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT, DID NOT RECEIVE INSTRUCTIONS REGARDING ACCESSING THE DISCLOSURE STATEMENT OR PLAN, RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT:**

| | |
|---|---|
| **TELEPHONE:** | **866-907-2721** |
| **EMAIL:** | **BSAballots@omniagnt.com** |
| **ADDRESS:** | **Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367** |
| **WEBSITE:** | **https://omniagentsolutions.com/BSA** |

---

**Exhibit 3**

**Form of Confirmation Hearing Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: January 24, 2022 at 10:00 a.m. (ET)** **Objection Deadline: January 7, 2022 at 4:00 p.m. (ET)** |

**NOTICE OF HEARING TO CONSIDER CONFIRMATION OF**
**MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION**
**FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC**

**PLEASE TAKE NOTICE THAT** on [●], 2021, the above-captioned debtors and debtors-in-possession (together, the "Debtors") filed:

- the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan");[2] and

- the *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").

**The Plan is supported by the Future Claimants' Representative, the Creditors' Committee, the Coalition, and the Ad Hoc Committee of Local Councils (the "Supporting Parties").**

**The Plan contains releases of the Debtors and certain third parties and related injunction provisions. If the Plan is approved, these provisions will release and prohibit holders of Abuse Claims from asserting such claims against the BSA and certain non-debtor third parties, including the Local Councils, Contributing Chartered Organizations, including TCJC, Settling Insurance Companies, including Hartford, and Participating Chartered Organizations, solely with respect to Post-1975 Chartered Organization Abuse Claims. The Channeling Injunction will "channel" to the Settlement Trust all Abuse Claims against the BSA and certain non-debtor third parties, including the Local Councils,**

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Solicitation Procedures (as defined below), as applicable.

**Contributing Chartered Organizations, Settling Insurance Companies, and Participating Chartered Organizations, solely with respect to Post-1975 Chartered Organization Abuse Claims. The Settlement Trust will exclusively administer and resolve the Abuse Claims after the Effective Date. The Debtors and the Supporting Parties all support Confirmation of the Plan.** The Debtors and the Supporting Parties all believe that the Plan provides the highest and best recovery for all creditors and is in the best interests of the Debtors' Estates. You should carefully review the Plan and the release, injunction, and related provisions at https://omniagentsolutions.com/BSA.

### PLEASE TAKE FURTHER NOTICE THAT:

1.      ***Approval of Disclosure Statement.*** On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") entered an order [D.I. [●]] (the "<u>Solicitation Procedures Order</u>") approving the Disclosure Statement. The Solicitation Procedures Order, among other things, authorizes the Debtors to solicit votes to accept or reject the Plan and establishes procedures related thereto (the "<u>Solicitation Procedures</u>").

2.      ***Confirmation Hearing.*** The Bankruptcy Court has scheduled a hearing to consider whether to confirm the Plan beginning on **January 24, 2022 at 10:00 a.m. (Eastern Time)** (the "<u>Confirmation Hearing</u>"), which shall continue to the extent necessary on such additional dates as the Bankruptcy Court may designate. The Confirmation Hearing will be held before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, at the Bankruptcy Court, located at 824 North Market Street, Sixth Floor, Courtroom No. 2, Wilmington, Delaware 19801. **Please be advised that the Confirmation Hearing may be adjourned or continued from time to time by the Bankruptcy Court or the Debtors without further notice other than as indicated in any notice or agenda of matters scheduled for a particular hearing that is filed with the Bankruptcy Court.** If the Confirmation Hearing is continued, the Debtors will post the new date and time of the Confirmation Hearing at https://omniagentsolutions.com/BSA. The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to creditors or other parties in interest, unless such notice is required by the Bankruptcy Code, Bankruptcy Rules, or other applicable law.

3.      ***Voting Record Date.*** Holders of Claims against the Debtors in Class 3A (2010 Credit Facility Claims), Class 3B (2019 RCF Claims), Class 4A (2010 Bond Claims), Class 4B (2012 Bond Claims), Class 5 (Convenience Claims), Class 6 (General Unsecured Claims), Class 7 (Non-Abuse Litigation Claims), Class 8 (Direct Abuse Claims), and Class 9 (Indirect Abuse Claims) (each, a "<u>Voting Class</u>" and, collectively, the "<u>Voting Classes</u>") as of **October 1, 2021** (the "<u>Voting Record Date</u>") are entitled to vote on account of such Claims. However, a holder of a Claim in a Voting Class is nonetheless <u>not</u> entitled to vote under the following circumstances:

(a)      a Claim filed for $0.00 is not entitled to vote on the Plan, excluding the holders of Direct Abuse Claims and Indirect Abuse Claims. Each holder of a Direct Abuse Claim and Indirect Abuse Claim who is entitled to vote shall have a single vote in the amount, for voting purposes only, of $1.00 in the aggregate per claimant or as otherwise ordered by the Bankruptcy Court pursuant to <u>Section IV.E</u> of the Solicitation Procedures;

(b)     as of the Voting Record Date, such holder's Claim that has been expunged, disallowed, disqualified, withdrawn, or superseded;

(c)     as of the Solicitation Date, such holder's Claim is the subject of a pending objection filed with the Bankruptcy Court, other than a "reclassify" or "reduce and allow" objection (a "Disputed Claim"), pending the occurrence of a Resolution Event as provided in the Solicitation Procedures;

(d)     a Claim that is not listed on the Debtors' Schedules, or a Claim that is scheduled as contingent, unliquidated, or disputed and has not been paid or superseded by a timely filed Proof of Claim; and

(e)     a holder of a Disputed Claim whose claim has not been resolved through a Resolution Event.

4.      ***Calculation of Votes with Respect to Direct and Indirect Abuse Claims.*** Pursuant to the Solicitation Procedures, all Direct and Indirect Abuse Claims in Class 8 and Class 9 of the Plan will be temporarily allowed in the amount of $1.00 in the aggregate per claimant or as otherwise ordered by the Bankruptcy Court, solely for purposes of voting to accept or reject the Plan and not for any other purpose.

5.      ***Voting Deadline.*** All votes to accept or reject the Plan must be <u>actually</u> <u>received</u> by the Debtors' solicitation agent, Omni Agent Solutions (the "Solicitation Agent"), by **December 14, 2021 at 4:00 p.m. (Eastern Time)** (the "Voting Deadline"). If you are entitled to vote to accept or reject the Plan, an appropriate ballot and voting instructions have been included in the package of materials containing this Notice, or, alternatively, such items may have been sent to your attorney. You must return your Ballot to the address specified in the instructions accompanying the Ballot so that it is received by the Solicitation Agent no later than the Voting Deadline. **If you do not return your Ballot so that it is actually received by the Solicitation Agent by the Voting Deadline, your vote may not be counted**. Any failure to follow the voting instructions included with the Ballot may disqualify your Ballot and your vote. If you have not received a Ballot and are entitled to vote on the Plan, you may request a Ballot and voting instructions from the Solicitation Agent by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/bsa, and submit your Ballot as set forth above so that it is received by the Voting Deadline. All submitted Ballots will be tabulated according to the rules set forth in the Solicitation Procedures as approved in the Solicitation Procedures Order.

6.      ***Documents.*** The Plan, the Disclosure Statement, and the Solicitation Procedures Order may be accessed, free of charge, at https://omniagentsolutions.com/BSA. If you would like copies of the Plan, the Disclosure Statement, the Solicitation Procedures Order, or other documents related to the Plan, free of charge, you may obtain these documents from the Solicitation Agent by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting

an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.  You may also access from these materials for a fee via PACER at http://www.deb.uscourts.gov/.

7.    ***Plan Supplement.***    The Debtors will file the Plan Supplement no later than **November 30, 2021**.  The Plan Supplement will include: (a) the Amended BSA Bylaws; (b) the Assumed Contracts and Unexpired Leases Schedule; (c) the form of the BSA Settlement Trust Note; (d) the form of the Document Agreement; (e) the form of the DST Agreement; (f) the form of the DST Note; (g) the name of the Creditor Representative; (h) changes, if any, to Reorganized BSA's directors and officers; (i) the form of the Foundation Loan Agreement; (j) the form of agreement reflecting the terms of the Leaseback Requirement; (k) the Rejected Contracts and Unexpired Leases Schedule; (l) the forms of the Restated 2010 Bond Documents; (m) the forms of the Restated 2012 Bond Documents; (n) the forms of the Restated Credit Facility Documents; (o) the form of the Restated Security Agreement; (p) the names of the initial members of the Settlement Trust Advisory Committee; (q) the name of the initial Special Reviewer; (r) the execution copy of the Hartford Insurance Settlement Agreement once the settlement memorialized in the term sheet appended to the *Sixth Mediators' Report* [D.I. 6210] filed on September 14, 2021 is set forth in a definitive written settlement agreement that is consistent with such term sheet and executed by all parties thereto (and any additional parties that execute a joinder thereto from time to time); and (s) the execution copy of the TCJC Settlement Agreement once the settlement memorialized in the term sheet appended to the *Sixth Mediators' Report* [D.I. 6210] filed on September 14, 2021 is set forth in a definitive written settlement agreement that is consistent with such term sheet and executed by all parties thereto (and any additional parties that execute a joinder thereto from time to time); and (t) the form of release to be executed by a holder of an Abuse Claim in favor of each Settling Insurance Company with respect to such Abuse Claim as a condition precedent to receiving any proceeds from the Settlement Trust; provided that the Plan Documents listed in clauses (b) and (k) of the foregoing sentence will be revised, in the Debtors' discretion, subject to Article VI of the Plan, to account for any additional Executory Contracts or Unexpired Leases to be assumed or rejected in advance of the Confirmation Hearing.  The Plan Supplement shall be served only on those parties that have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 and any party in interest who requests in writing a copy from counsel to the Debtors.  Once the Plan Supplement is filed, a copy will also be available for review on the Notice and Claims Agent's website free of charge at https://omniagentsolutions.com/BSA.

8.    ***Holders of Direct Abuse Claims Represented by Attorneys.***    If your attorney has elected to record your vote on the Plan, your attorney may reach out to you to collect or record your vote to accept or reject the Plan in advance of the Voting Deadline and you should respond promptly to any communications from your attorney.  If you are a holder of a Direct Abuse Claim represented by an attorney but have received your Ballot and package of solicitation materials from the Solicitation Agent, you must return your completed Ballot to the Solicitation Agent by the Voting Deadline in order for your vote to count.

9.    ***Parties in Interest Not Entitled to Vote.***    Pursuant to the Plan, holders of Unimpaired Claims are presumed to accept the Plan are not entitled to vote and will not receive a Ballot.  Such holders will instead receive a Notice of Non-Voting Status.  The holders of Administrative Expense Claims and Priority Tax Claims, which are unclassified under the Plan (collectively, the "Unclassified Claims") will also receive Notice of Non-Voting Status.  If you have filed a Proof of Claim that is subject to an objection other than a "reclassify" or "reduce and allow" objection that is filed with the Bankruptcy Court on or before the Solicitation Date (as

defined above, a "Disputed Claim"), you will receive a Disputed Claim Notice and a Solicitation Package, although you will not be entitled to have your vote to accept or reject the Plan be counted unless a Resolution Event occurs as provided in the Solicitation Procedures. If you seek to challenge the disallowance or estimation of your Disputed Claim for voting purposes, you must file with the Bankruptcy Court a motion for an order, pursuant to Bankruptcy Rule 3018(a), temporarily allowing such claim for purposes of voting to accept or reject the Plan (a "Rule 3018(a) Motion"). Any Rule 3018(a) Motion must be filed with the Bankruptcy Court and served on the Debtors on or before **November 1, 2021**. If a holder of a Disputed Claim files a timely Rule 3018(a) Motion, such holder's Ballot shall not be counted unless a Resolution Event occurs with respect to such Disputed Claim prior to **December 14, 2021** or as otherwise ordered by the Bankruptcy Court.

10. ***Chartered Organizations.*** Under the Plan, each Chartered Organization shall automatically be deemed to be a Participating Chartered Organization under the Plan unless it (1) submits the opt out election form attached to the *Frequently Asked Questions (FAQ) and Summary Regarding Chartered Organizations Under the BSA's Chapter 11 Plan* on or before the Plan Objection Deadline (as defined below), which each Chartered Organization should receive concurrently with this notice, (2) objects to confirmation of the Plan on or before the Plan Objection Deadline in accordance with the procedures set forth in this notice, or (3) is a debtor in bankruptcy as of the date of confirmation of the Plan. Participating Chartered Organizations shall receive certain limited protections under the Channeling Injunction, including the channeling of all Abuse Claims against such Participating Chartered Organizations that relate to Abuse alleged to have first occurred on or after January 1, 1976, in exchange for contribution to the Settlement Trust of Participating Chartered Organizations' rights under Abuse Insurance Policies issued on or after January 1, 1976.

11. ***Objections to Confirmation.*** If you would like to object to the Plan, you may do so by filing your objection no later than **January 7, 2022 at 4:00 p.m. (Eastern Time)** (the "Plan Objection Deadline"). Any objections or responses to confirmation of the Plan, must: (a) be in writing; (b) state the name and address of the objecting party and the nature and amount of the Claim of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (d) be filed with the Bankruptcy Court, 824 North Market Street, Third Floor, Wilmington, Delaware 19801 together with proof of service **on or before the Plan Objection Deadline**, and served so as to be actually received by the parties below on or before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email:

(a)        counsel to the Debtors, (i) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020 (Attn: Jessica C. Lauria (jessica.lauria@whitecase.com)), and 111 South Wacker Drive, Chicago, Illinois 60606 (Attn: Michael C. Andolina (mandolina@whitecase.com), Matthew E. Linder (mlinder@whitecase.com), and Blair Warner (blair.warner@whitecase.com)) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347 (Attn: Derek C. Abbott (dabbott@morrisnichols.com), Andrew R. Remming (aremming@morrisnichols.com), and Paige N. Topper (ptopper@morrisnichols.com));

(b)    the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: David L. Buchbinder (david.l.buchbinder@usdoj.gov) and Hannah M. McColllum (hannah.mccollum@usdoj.gov));

(c)    counsel to the Tort Claimants' Committee, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19801 (Attn: James I. Stang (jstang@pszjlaw.com), John A. Morris (jmorris@pszjlaw.com), James E. O'Neill (joneill@pszjlaw.com), and John W. Lucas (jlucas@pszjlaw.com));

(d)    counsel to the Creditors' Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Thomas Moers Mayer (tmayer@kramerlevin.com), Rachael Ringer (rringer@kramerlevin.com), David E. Blabey, Jr. (dblabey@kramerlevin.com), Jennifer R. Sharret (jsharret@kramerlevin.com), and Megan M. Wasson (mwasson@kramerlevin.com));

(e)    counsel to the Future Claimants' Representative, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Robert S. Brady (rbrady@ycst.com), Edwin J. Harron (eharron@ycst.com), and Sharon M. Zieg (szieg@ycst.com)); and

(f)    counsel to JPMorgan Chase Bank National Association, Norton Rose Fulbright US LLP, 2200 Ross Avenue, Dallas, Texas 75201-7932 (Attn: Kristian W. Gluck (kristian.gluck@nortonrosefulbright.com)).

> **OBJECTIONS NOT TIMELY FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE.**

12.    The Bankruptcy Court has approved the following dates and deadlines in connection with the solicitation of votes on the Plan.

| Event | Date |
|---|---|
| Voting Record Date | October 1, 2021 |
| Deadline to Distribute Solicitation Packages | October 15, 2021 |
| Rule 3018 Motion Deadline | November 1, 2021 |
| Publication Deadline | November 24, 2021 |
| Plan Supplement Deadline | November 30, 2021 |
| Voting Resolution Event Deadline | December 14, 2021 or as otherwise ordered by the Bankruptcy Court |
| Voting Deadline | December 14, 2021 at 4:00 p.m. (Eastern Time) |
| Preliminary Voting Report Deadline | December 21, 2021 |

| Final Voting Report Deadline | January 4, 2022 |
| Plan Objection Deadline | January 7, 2022 at 4:00 p.m. (Eastern Time) |
| Deadline to File Confirmation Briefs and Replies | January 17, 2022 |
| Confirmation Hearing | January 24, 2022, at 10:00 a.m. (Eastern Time) |

13.    Please be advised that the Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code.  Additionally, <u>Article X</u> of the Plan contains certain release, injunction, and exculpation provisions, which will become effective if the Plan is approved and described in <u>Article VI.Q</u> of the Disclosure Statement.  Such provisions include the following:

**a.    <u>Discharge Injunction</u>.  From and after the Effective Date, except as expressly provided in the Plan or the Confirmation Order, all holders of Claims or Interests of any nature whatsoever against or in the Debtors or any of their assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are discharged pursuant to the terms of the Plan shall be precluded and permanently enjoined from taking any of the following actions on account of, or on the basis of, such discharged Claims and Interests: (a) commencing or continuing any action or other proceeding of any kind against the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property; (b) enforcing, attaching, collecting, or recovering by any manner or means of judgment, award, decree or other against the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property; (c) creating, perfecting or enforcing any Lien or Encumbrance of any kind against the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property; or (d) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. The foregoing injunction shall extend to the successors and assigns of the Debtors (including Reorganized BSA) and its and their respective properties and interests in property.  In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge or termination of all Claims, Interests and other debts and liabilities against or in the Debtors pursuant to sections 105, 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time to the extent such judgment relates to a discharged Claim or Interest.**

**b.    <u>Releases by the Debtors and the Estates</u>.**

**<u>Releases by the Debtors and the Estates of the Released Parties</u>.  As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[3] to facilitate and implement the**

---

[3]    "<u>Released Parties</u>" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Creditors' Committee;

reorganization of the Debtors and the settlements embodied in the Plan, including the Abuse Claims Settlement, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement,[4] and the TCJC Settlement, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in <u>Article X.J.1</u> of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

   **Releases by the Debtors and the Estates of Certain Avoidance Actions**.  As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of Creditors' Committee and its members in their respective capacities as such in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and

---

(e) the members of the Creditors' Committee in their capacities as such; (f) the Tort Claimants' Committee; (g) the members of the Tort Claimants' Committee in their capacities as such; (h) the Future Claimants' Representative; (i) the Coalition; (j) JPM; (k) the Settling Insurance Companies, including Hartford; (l) the Contributing Chartered Organizations, including TCJC; (m) the Foundation, in its capacity as lender under the Foundation Loan Agreement; (n) the Ad Hoc Committee; (o) the members of the Ad Hoc Committee in their capacities as such; (p) the Creditor Representative; (q) the Mediators; and (r) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Released Party; provided further, that the definition of "Released Parties" shall in all instances be subject to <u>Article X.J</u> of the Plan.

[4] "<u>Hartford Insurance Settlement</u>" has the meaning ascribed to such term in <u>Article V.S.4</u> of the Plan.

shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Abuse Litigation Claims, and Convenience Claims of and from any and all Avoidance Actions.

c.      **Releases by the Debtors and the Estates of the Local Councils, the Contributing Chartered Organizations, and the Participating Chartered Organizations.** In furtherance of the Abuse Claims Settlement,[5] on the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, on their own behalf and as representatives of their respective Estates, and Reorganized BSA, are deemed to irrevocably and unconditionally, fully, finally, and forever waive, release, acquit, and discharge each and all of the Local Councils, the Contributing Chartered Organizations and the Participating Chartered Organizations of and from any and all claims, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, executions and demands whatsoever, of whatever kind or nature (including those arising under the Bankruptcy Code), whether known or unknown, suspected or unsuspected, in law or in equity, which the Debtors, their Estates, or Reorganized BSA have, had, may have, or may claim to have: (a) against any of the Local Councils and Contributing Chartered Organizations with respect to any Abuse Claims and (b) against any of the Participating Chartered Organizations with respect to any Post-1975 Chartered Organization Abuse Claims (collectively, the "Scouting Released Claims").

d.      **Releases by Holders of Abuse Claims.** As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Protected Parties[6] and the Limited Protected Parties[7] to facilitate and implement the reorganization of the Debtors, including the settlements embodied in the Plan, including the Abuse Claims Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all holders of Abuse Claims shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release: (a) each and all of the

---

[5]    "Abuse Claims Settlement" has the meaning ascribed to such term in Article V.S of the Plan.

[6]    "Protected Parties" means the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Contributing Chartered Organizations; (f) the Settling Insurance Companies, including Hartford; and (g) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Protected Party. Notwithstanding the foregoing, a Contributing Chartered Organization shall be a Protected Party with respect to Abuse Claims only as set forth in the definition of "Abuse Claim."

[7]    "Limited Protected Parties" means the Participating Chartered Organizations, which means a Chartered Organization that does not (a) object to confirmation of the Plan or (b) inform Debtors' counsel in writing on or before the confirmation objection deadline that it does not wish to make the Participating Chartered Organization Insurance Assignment. Notwithstanding the foregoing, with respect to any Chartered Organization that is a debtor in bankruptcy as of the Confirmation Date, such Chartered Organization shall be a Participating Chartered Organization only if it advises Debtors' counsel in writing that it wishes to make the Participating Chartered Organization Insurance Assignment, and, for the avoidance of doubt, absent such written advisement, none of such Chartered Organization's rights to or under the Abuse Insurance Policies shall be subject to the Participating Chartered Organization Insurance Assignment. A list of Chartered Organizations that are not Participating Chartered Organizations is attached to the Plan as Exhibit K.

**Protected Parties and their respective property and successors and assigns of and from all Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Abuse Claims; and (b) each and all of the Limited Protected Parties and their respective property and successors and assigns of and from all Post-1975 Chartered Organization Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Post-1975 Chartered Organization Abuse Claims; provided, however, that the releases set forth in Article X.J.3 of the Plan shall not, and shall not be construed to: (i) release any Protected Party or Limited Protected Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (ii) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (iii) modify, reduce, impair or otherwise affect the ability of any holder of an Abuse Claim to recover on account of such Claim in accordance with Article III. B.10 or Article III.B.11 of the Plan, as applicable.**

**e.      Releases by Holders of Claims.  As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[8] shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner**

---

[8]     "Releasing Claim Holder" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in Article X.J.4 of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in Article X.J.4 of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in Article X.J.4 of the Plan; and (d) all of such Persons' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such.

arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in **Article X.J.4** of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Abuse Litigation Claim to recover on account of such Allowed Claim in accordance with **Article III.B.9** of the Plan.  Notwithstanding the foregoing or anything to the contrary herein, (i) with respect to holders of Allowed General Unsecured Claims or Allowed Non-Abuse Litigation Claims, nothing in the Plan or the release set forth in **Article X.J.4** of the Plan shall, or shall be construed to, release any claims or Causes of Action against any Local Council, Chartered Organization (other than a Contributing Chartered Organization), or Non-Settling Insurance Company (subject to **Article IV.D.3** of the Plan) and (ii) nothing in the Plan or the release set forth in **Article X.J.4** of the Plan shall, or shall be construed to, release any claims or Causes of Action asserted by Century Indemnity Company against Sidley Austin LLP ("**Sidley**") related to Sidley's representation of the Debtors prior to the Petition Date.

       f.      <u>Releases Relating to Contributing Chartered Organizations</u>.

        In furtherance of the Abuse Claims Settlement, as of the date that the Confirmation Order and Affirmation Order become Final Orders, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Confirmation Order, and the terms of the TCJC Settlement Agreement,[9] for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Contributing Chartered Organizations, including TCJC, shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge the

---

[9]   "<u>TCJC Settlement Agreement</u>" means that certain settlement agreement, which remains subject to definitive documentation, by and between TCJC, the Debtors, the Ad Hoc Committee, the Coalition, the Future Claimants' Representative, and certain state court counsel to holders of Direct Abuse Claims, as such agreement is described in the term sheet appended to the *Sixth Mediators' Report* [D.I. 6210] filed on September 14, 2021.  Upon its execution by all of the parties thereto, the TCJC Settlement Agreement shall be attached to the Plan as <u>Exhibit J-1</u>.

Debtors, Reorganized BSA, the Related Non-Debtor Entities, the Local Councils, the other Protected Parties, the Limited Protected Parties, the Settling Insurance Companies, including Hartford, the Future Claimants' Representative, the Coalition, the Settlement Trust, and each of its and their respective Representatives (collectively, the "<u>Settlement Parties</u>"), of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the date that the Confirmation Order and Affirmation Order become Final Orders (including before the Petition Date) in connection with or related to (i) Abuse Claims, (ii) the Chapter 11 Cases, (iii) the Plan, or (iv) any Claims that were or could have been asserted by the Contributing Chartered Organizations against the Settlement Parties or any of them.

In furtherance of the Abuse Claims Settlement, as of the date that the Confirmation Order and Affirmation Order become Final Orders, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Confirmation Order, and the terms of the TCJC Settlement Agreement, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Settlement Parties shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each of the Contributing Chartered Organizations, including TCJC, of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the date that the Confirmation Order and Affirmation Order become Final Orders (including before the Petition Date) in connection with or related to (i) Abuse Claims, (ii) the Chapter 11 Cases, (iii) the Plan, or (iv) any Claims that were or could have been asserted by the Settlement Parties against the Contributing Chartered Organizations or any of them.

g.    <u>Channeling Injunction</u>.

<u>Terms</u>.  To preserve and promote the settlements contemplated by and provided for in the Plan, including the Abuse Claims Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, and to supplement, where necessary, the injunctive effect of the Discharge as provided in sections 1141 and 524 of the Bankruptcy Code and as described in <u>Article X</u> of the Plan, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court and the District Court under section 105(a) of the Bankruptcy Code, (a) the sole recourse of any holder of an Abuse Claim against a Protected Party on account of such Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement

Trust Documents,[10] and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Protected Party or any property or interest in property of any Protected Party, and (b) the sole recourse of any holder of a Post-1975 Chartered Organization Abuse Claim against a Limited Protected Party on account of such Post-1975 Chartered Organization Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Post-1975 Chartered Organization Abuse Claim against any Limited Protected Party or any property or interest in property of any Limited Protected Party. On and after the Effective Date, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Abuse Claim against the Protected Parties, or any of them, or any Post-1975 Chartered Organization Abuse Claim against the Limited Protected Parties, or any of them, shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Protected Party with respect to any such Abuse Claim or from any Limited Protected Party with respect to any such Post-1975 Chartered Organization Abuse Claim, other than from the Settlement Trust pursuant to the Settlement Trust Documents, including:

(i)    commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

(ii)    enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

(iii)    creating, perfecting, or otherwise enforcing in any manner, whether directly or indirectly, any Encumbrance of any kind against any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

(iv)    asserting, implementing or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party; or

---

[10]    "Settlement Trust Documents" means, collectively, (a) the Settlement Trust Agreement, (b) the Trust Distribution Procedures, (c) the Document Agreement, (d) the Confirmation Order, and (e) any other agreements, instruments and documents governing the establishment, administration and operation of the Settlement Trust, which shall be substantially in the forms set forth as exhibits in the Plan or in the Plan Supplement, as the same may be amended or modified from time to time in accordance with the terms thereof.

(v) taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Abuse Claim or Post-1975 Chartered Organization Abuse Claim.

**Reservations.** Notwithstanding anything to the contrary in **Article X.F** of the Plan, the Channeling Injunction shall not enjoin:

(i) the rights of holders of Abuse Claims or Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims solely against the Settlement Trust in accordance with the Trust Distribution Procedures, including the ability to pursue the Settlement Trust in the tort system as described in Article XII of the Trust Distribution Procedures;

(ii) the rights of holders of Abuse Claims to assert such Abuse Claims against anyone other than a Protected Party or, in the case of Post-1975 Chartered Organization Abuse Claims, against anyone other than a Limited Protected Party;

(iii) prior to the date that an Entity (other than an Insurance Company) becomes a Protected Party under **Article IV.I** of the Plan, the right of holders of Abuse Claims to assert such Abuse Claims against such Entity;

(iv) prior to the date that a Chartered Organization becomes a Limited Protected Party under **Article IV.J** of the Plan, the right of holders of Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims against such Entity;

(v) the rights of holders of Abuse Claims that are not Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims against any Limited Protected Party (unless such Limited Protected Party becomes a Protected Party under **Article IV.I** of the Plan);

(vi) the right of any Person to assert any Claim, debt, obligation or liability for payment of Settlement Trust Expenses solely against the Settlement Trust in accordance with the Settlement Trust Documents;

(vii) the Settlement Trust from enforcing its rights under the Plan and the Settlement Trust Documents; or

(viii) the rights of the Settlement Trust to prosecute any action against any Non-Settling Insurance Company based on or arising from Abuse Insurance Policies that are not the subject of an Insurance Settlement Agreement, subject to any Insurance Coverage Defenses.

h.     **Exculpation**.

From and after the Effective Date, none of the Exculpated Parties[11] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or before the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the JPM/Creditors' Committee Settlement, the Hartford Insurance Settlement Agreement, the TCJC Settlement Agreement, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct).  In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence.  Notwithstanding the foregoing or any provision of the Plan to the contrary, Sidley shall not be an Exculpated Party with respect to any claims that Century Indemnity Company asserts against Sidley related to Sidley's representation of the Debtors prior to the Petition Date.

i.     **Injunctions Related to Releases and Exculpation**.

**Injunction Related to Releases**.  As of the Effective Date, all holders of Claims that are the subject of **Article X.J** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.1** of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is the subject of **Article X.J** of the Plan from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

---

[11]   "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Creditors' Committee; (d) the members of the Creditors' Committee in their capacities as such; (e) the Tort Claimants' Committee; (f) the members of the Tort Claimants' Committee in their capacities as such; (g) the Future Claimants' Representative; (h) the Creditor Representative; and (i) all of such Persons' current officers and directors, former officers and directors who served in such capacity during the pendency of the Chapter 11 Cases but are no longer officers or directors as of the Effective Date, employees, volunteers, agents, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals.

**Injunction Related to Exculpation**.  As of the Effective Date, all holders of Claims that are the subject of **Article X.K** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.2** of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of **Article X.K** of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

---

PLEASE BE ADVISED THAT IF YOUR CLAIM IS UNIMPAIRED UNDER THE PLAN, YOU WILL BE DEEMED TO HAVE GRANTED THE RELEASES CONTAINED IN **ARTICLE X.J.4** OF THE PLAN UNLESS YOU TIMELY FILE AN OBJECTION TO THE PLAN.

PLEASE ALSO BE ADVISED THAT IF YOUR CLAIM IS IMPAIRED AND YOU ARE ELIGIBLE TO VOTE TO ACCEPT OR REJECT THE PLAN AND YOU VOTE TO ACCEPT OR ACCEPT THE PLAN, YOU WILL BE DEEMED TO HAVE GRANTED THE RELEASES CONTAINED IN **ARTICLE X.J.4** OF THE PLAN UNLESS YOU TIMELY OPT OUT OF THE RELEASES IN **ARTICLE X.J.4** OF THE PLAN ON YOUR BALLOT.

---

THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT THE SOLICITATION AGENT VIA ONE OF THE METHODS SPECIFIED ABOVE.  PLEASE NOTE THAT THE SOLICITATION AGENT MAY NOT PROVIDE LEGAL ADVICE.  IF YOU NEED LEGAL ADVICE, PLEASE CONSULT WITH YOUR ATTORNEY.

---

Dated: [●], 2021

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email: mandolina@whitecase.com
        mlinder@whitecase.com
        laura.baccash@whitecase.com
        blair.warner@whitecase.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@morrisnichols.com
        aremming@morrisnichols.com
        ptopper@morrisnichols.com

*Attorneys for the Debtors and Debtors in Possession*

## Exhibit 4

**Form of Publication Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
|  | **Hearing Date: January 24, 2022, at 10:00 a.m. (ET)**<br>**Objection Deadline: January 7, 2022 at 4:00 p.m. (ET)** |

**NOTICE OF (I) DEADLINE FOR CASTING VOTES TO ACCEPT OR
REJECT PROPOSED MODIFIED FIFTH AMENDED CHAPTER 11 PLAN
OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND
DELAWARE BSA, LLC, (II) HEARING TO CONSIDER CONFIRMATION
OF PLAN, AND (III) RELATED MATTERS**

**PLEASE TAKE NOTICE THAT** on [●], 2021, the above-captioned debtors and debtors-in-possession (together, the "Debtors") filed:

- the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan");[2] and

- the *Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").

The Plan contains releases of the Debtors and certain third parties and related injunction provisions.  These provisions could release and prohibit holders of Abuse Claims from filing lawsuits and asserting such claims against the BSA and certain non-debtor third parties, including Local Councils, Contributing Chartered Organizations, including TCJC, Settling Insurance Companies, including Hartford, and Participating Chartered Organizations, solely with respect to Post-1975 Chartered Organization Abuse Claims.  Chartered Organizations are organizations that sponsored a Scouting unit, such as a troop or pack.  The Plan provides a mechanism by which Abuse Claims against the BSA and certain-debtor third parties, including the Local Councils, Contributing Chartered Organizations, including TCJC, Settling Insurance Companies, including

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Solicitation Procedures (as defined below), as applicable.

Hartford, and Participating Chartered Organizations, solely with respect to Post-1975 Chartered Organization Abuse Claims, will be channeled to a trust established pursuant to section 105(a) of the Bankruptcy Code.

Each Chartered Organization will <u>automatically</u> be deemed to be a Participating Chartered Organization under the Plan unless it (1) submits the opt out election form on or before the Plan Objection Deadline, (2) objects to confirmation of the Plan in accordance with the *Notice of Hearing to Consider Confirmation of Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, attached as <u>Exhibit 3</u> to the Solicitation Procedures Order and available at https://omniagentsolutions.com/BSA on or before the Plan Objection Deadline, or (3) is a debtor in bankruptcy as of the date of confirmation of the Plan. Participating Chartered Organizations shall receive certain limited protections under the Channeling Injunction, including the channeling of all Abuse Claims against such Participating Chartered Organizations that relate to Abuse alleged to have first occurred on or after January 1, 1976, in exchange for contribution to the Settlement Trust of Participating Chartered Organizations' rights under Abuse Insurance Policies issued on or after January 1, 1976.

Confirmation of the Plan is supported by the Debtors, the Future Claimants' Representative, the Creditors' Committee, the Coalition, and the Ad Hoc Committee of Local Councils. You should carefully review the Plan and the applicable release, injunction, and related provisions at https://omniagentsolutions.com/BSA.

**PLEASE TAKE FURTHER NOTICE THAT:**

1.      On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") entered an order [D.I. [●]] (the "<u>Solicitation Procedures Order</u>") approving the Disclosure Statement. The Solicitation Procedures Order, among other things, authorizes the Debtors to solicit votes to accept or reject the Plan and establishes procedures related thereto (the "<u>Solicitation Procedures</u>").

2.      The Bankruptcy Court has scheduled a hearing to consider whether to confirm the Plan beginning on **January 24, 2022 at 10:00 a.m. (Eastern Time)** (the "<u>Confirmation Hearing</u>"), which shall continue to the extent necessary on such dates as the Bankruptcy Court may designate. The Confirmation Hearing will be held before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, at the Bankruptcy Court, located at 824 North Market Street, Sixth Floor, Courtroom No. 2, Wilmington, Delaware 19801.

3.      Pursuant to the Solicitation Procedures Order, the Bankruptcy Court approved the Solicitation Procedures, which are attached to the Solicitation Procedures Order as <u>Exhibit 1</u>. Holders of Claims in Class 3A (2010 Credit Facility Claims), Class 3B (2019 RCF Claims), Class 4A (2010 Bond Claims), Class 4B (2012 Bond Claims), Class 5 (Convenience Claims), Class 6 (General Unsecured Claims), Class 7 (Non-Abuse Litigation Claims), Class 8 (Direct Abuse Claims), and Class 9 (Indirect Abuse Claims) (collectively, the "<u>Voting Classes</u>") are entitled to receive a ballot for casting a vote on the Plan (a "<u>Ballot</u>"). Holders of Claims and Interests in all other Classes under the Plan are presumed to accept or are deemed to reject the Plan. For a vote to accept or reject the Plan to be counted, a Ballot must be completed and returned in accordance

with the instructions provided on the **Ballot so that it is received by December 14, 2021 at 4:00 p.m. (Eastern Time)** (the "<u>Voting Deadline</u>").

4.      Pursuant to the Plan, holders of Claims in the Voting Classes are entitled to vote on account of their respective Claims.  If you have not received a Ballot and are entitled to vote on the Plan, you may request a Ballot and voting instructions from Omni Agent Solutions (the <u>Solicitation Agent</u>"), by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA, and submit your Ballot as set forth above so that it is received by the Voting Deadline.

5.      Pursuant to the Solicitation Procedures, all Direct and Indirect Abuse Claims in Class 8 and Class 9 of the Plan will be temporarily allowed in the amount of $1.00 in the aggregate per claimant or as otherwise ordered by the Bankruptcy Court, solely for purposes of voting to accept or reject the Plan and not for any other purpose.  If you have filed a Proof of Claim that is subject to an objection other than a "reclassify" or "reduce and allow" objection that is filed with the Bankruptcy Court on or before the Solicitation Date (a "<u>Disputed Claim</u>") and seek to challenge the disallowance or estimation of your Disputed Claim for voting purposes, you must file with the Bankruptcy Court a motion for an order, pursuant to Bankruptcy Rule 3018(a), temporarily allowing such claim for purposes of voting to accept or reject the Plan (a "<u>Rule 3018(a) Motion</u>"). Any Rule 3018(a) Motion must be filed with the Bankruptcy Court and served on the Debtors on or before **November 1, 2021**.  If a holder of a Disputed Claim files a timely Rule 3018(a) Motion, such holder's Ballot shall not be counted unless a Resolution Event occurs with respect to such Disputed Claim prior to **December 14, 2021** or as otherwise ordered by the Bankruptcy Court.

6.      **The Plan proposes certain releases and injunctions in furtherance of the Plan. The Plan proposes a Channeling Injunction that permanently channels all Abuse Claims against the Debtors and the Protected Parties and Limited Protected Parties to a Settlement Trust established pursuant to section 105(a) of the Bankruptcy Code.  In addition, the Plan proposes an injunction that permanently enjoins the pursuit of any claim against or interest in the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property to the extent such claim or interest has been discharged, released, waived, settled, or deemed satisfied in accordance with the Plan (other than the enforcement of any right pursuant to the Plan).  For the specific terms and conditions of all the releases and injunctions provided for in the Plan, and the precise scope of the Claims and Demands to be channeled, please refer to the specific terms of the Plan, which can be obtained as described below.**

7.      If the Plan is approved by the Bankruptcy Court, all current and future holders of Abuse Claims against the Debtors can request and receive money only from the Settlement Trust. You should read the Plan and Disclosure Statement carefully for details about how the Plan, if approved, will affect your rights.

8.      The Bankruptcy Court has issued the Solicitation Procedures Order describing how to vote on the Plan, and the Disclosure Statement contains information that will help you decide how to vote.  Your legal rights will be affected if the Plan is approved.

9.      Under the Solicitation Procedures approved by the Bankruptcy Court, attorneys for holders of Direct Abuse Claims may vote on the Plan on behalf of their clients, if authorized by each client.  If you are unsure whether your attorney is authorized to vote on your behalf, please contact your attorney.

10.      If you would like to object to the Plan, you may do so by filing your objection no later than **January 7, 2022 at 4:00 p.m. (Eastern Time)** (the "Plan Objection Deadline").  Any objections or responses to confirmation of the Plan, must: (a) be in writing; (b) state the name and address of the objecting party and the nature and amount of the Claim of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (d) be filed with the Bankruptcy Court, 824 North Market Street, Third Floor, Wilmington, Delaware 19801 together with proof of service **on or before the Plan Objection Deadline**, and served so as to be actually received by the parties listed in the Confirmation Hearing Notice (the "Notice Parties") on or before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email to the Notice Parties.

| |
|---|
| **OBJECTIONS NOT TIMELY FILED AND SERVED STRICTLY AS PROVIDED HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE.** |

If you would like to review the Plan, the Disclosure Statement, the Solicitation Procedures Order, or other documents related to the Plan free of charge, you may obtain these documents from the Solicitation Agent by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.  You may also access from these materials for a fee via PACER at http://www.deb.uscourts.gov/.

Dated: [●], 2021

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email: mandolina@whitecase.com
        mlinder@whitecase.com
        laura.baccash@whitecase.com
        blair.warner@whitecase.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
 Email:  dabbott@morrisnichols.com
         aremming@morrisnichols.com
         ptopper@morrisnichols.com

*Attorneys for the Debtors and Debtors in Possession*

## Exhibit 5

**Form of Non-Voting Status Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

**NOTICE OF NON-VOTING STATUS TO HOLDERS OF UNCLASSIFIED CLAIMS AND HOLDERS OF UNIMPAIRED CLAIMS CONCLUSIVELY PRESUMED TO ACCEPT THE MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC**

**To:    All Holders of Unclassified Claims and Claims in Classes 1 and 2**

---

**IMPORTANT NOTICE REGARDING RELEASES**

**HOLDERS OF CLAIMS IN CLASSES 1 AND 2**

**AS THE HOLDER OF A CLAIM THAT IS UNIMPAIRED UNDER THE PLAN, YOU ARE PRESUMED TO ACCEPT THE PLAN.  YOU ARE ALSO CONCLUSIVELY PRESUMED TO GRANT THE "RELEASES BY HOLDERS OF CLAIMS" (SET FORTH BELOW AND IN ARTICLE X.J.4 OF THE PLAN) UNLESS YOU TIMELY FILE AN OBJECTION TO THE PLAN IN ACCORDANCE WITH THE PROCEDURES BELOW.**

---

**HOLDERS OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS**

**YOUR CLAIM IS UNCLASSIFIED UNDER THE PLAN AND YOU ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN, BUT YOU WILL NOT BE DEEMED TO RELEASE THE RELEASED PARTIES UNDER ARTICLE X.J.4 OF THE PLAN.**

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

## APPROVAL OF DISCLOSURE STATEMENT

1.      On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order in the above-captioned chapter 11 cases [D.I. [●]] (the "Solicitation Procedures Order"): (a) approving the *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"); (b) establishing the Voting Record Date, Voting Deadline, and other related dates in connection with confirmation of the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan");[2] (c) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan (the "Solicitation Procedures"); and (d) approving the form and manner of notice and other related documents as they relate to the Debtors.

## ENTITLEMENT TO VOTE ON PLAN

2.      You are receiving this notice because you are the holder of a Claim(s) in Class 1 (Other Priority Claims) and/or Class 2 (Other Secured Claims) under the Plan (the "Unimpaired Non-Voting Classes"), or you are a holder of an Administrative Expense Claim or Priority Tax Claim, which are unclassified under the Plan (together, the "Unclassified Claims").  Pursuant to the terms of Article III of the Plan, holders of Claims in Classes 1 and 2 are Unimpaired and therefore, pursuant to section 1126(f) of the Bankruptcy Code, **you are conclusively presumed to have accepted the Plan and are not entitled to vote on the Plan**.  Accordingly, this notice is being sent to you for informational purposes only.  Pursuant to the terms of Article II of the Plan, holders of Unclassified Claims are not entitled to vote on the Plan and will not be deemed to release the Released Parties under Article X.J.4 of the Plan.  Holders of Claims in the Unimpaired Non-Voting Classes will be deemed to release the Released Parties from any all Claims and causes of action to the extent provided in Article X.J.4 of the Plan, unless such parties timely file an objection to the release no later than the Plan Objection Deadline (as defined below) in accordance with the procedures set forth below.

## DEADLINE FOR OBJECTIONS TO CONFIRMATION OF PLAN

3.      The Bankruptcy Court has scheduled a hearing to consider whether to confirm the Plan beginning on **January 24, 2022 at 10:00 a.m. (Eastern Time)** (the "Confirmation Hearing"), which shall continue to the extent necessary on such additional dates as the Bankruptcy Court may designate.  The Confirmation Hearing will be held before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, at the Bankruptcy Court, located at 824 North Market Street, Sixth Floor, Courtroom No. 2, Wilmington, Delaware 19801.  **Please be advised that the Confirmation Hearing may be adjourned or continued from time to time by the Bankruptcy**

---

[2]      Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Solicitation Procedures (defined as below), as applicable.

**Court or the Debtors without further notice other than as indicated in any notice or agenda of matters scheduled for a particular hearing that is filed with the Bankruptcy Court.** If the Confirmation Hearing is continued, the Debtors will post the new date and time of the Confirmation Hearing at https://omniagentsolutions.com/BSA. The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to creditors or other parties in interest, unless such notice is required by the Bankruptcy Code, Bankruptcy Rules, or other applicable law.

4.     Notwithstanding the fact that you are not entitled to vote to accept or reject the Plan you nevertheless may be a party in interest in these Chapter 11 Cases and you, therefore, may be entitled to participate in these Chapter 11 Cases, including by filing objections to confirmation of the Plan. If you would like to object to the Plan, you may do so by filing your objection no later than **January 7, 2022 at 4:00 p.m. (Eastern Time)** (the "Plan Objection Deadline"). Any objections or responses to confirmation of the Plan, must: (a) be in writing; (b) state the name and address of the objecting party and the nature and amount of the Claim of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (d) be filed with the Bankruptcy Court, 824 North Market Street, Third Floor, Wilmington, Delaware 19801 together with proof of service **on or before the Plan Objection Deadline**, and served so as to be actually received by the parties below on or before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email:

(a)     counsel to the Debtors, (i) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020 (Attn: Jessica C. Lauria (jessica.lauria@whitecase.com)), and 111 South Wacker Drive, Chicago, Illinois 60606 (Attn: Michael C. Andolina (mandolina@whitecase.com), Matthew E. Linder (mlinder@whitecase.com), and Blair Warner (blair.warner@whitecase.com)) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347 (Attn: Derek C. Abbott (dabbott@morrisnichols.com), Andrew R. Remming (aremming@morrisnichols.com), and Paige N. Topper (ptopper@morrisnichols.com));

(b)     the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: David L. Buchbinder (david.l.buchbinder@usdoj.gov) and Hannah M. McColllum (hannah.mccollum@usdoj.gov));

(c)     counsel to the Tort Claimants' Committee, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19801 (Attn: James I. Stang (jstang@pszjlaw.com), John A. Morris (jmorris@pszjlaw.com), James E. O'Neill (joneill@pszjlaw.com), and John W. Lucas (jlucas@pszjlaw.com));

(d)     counsel to the Creditors' Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Thomas Moers Mayer (tmayer@kramerlevin.com), Rachael Ringer (rringer@kramerlevin.com), David E. Blabey, Jr. (dblabey@kramerlevin.com), Jennifer R. Sharret

(jsharret@kramerlevin.com), and Megan M. Wasson (mwasson@kramerlevin.com));

(e)  counsel to the Future Claimants' Representative, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Robert S. Brady (rbrady@ycst.com), Edwin J. Harron (eharron@ycst.com), and Sharon M. Zieg (szieg@ycst.com)); and

(f)  counsel to JPMorgan Chase Bank National Association, Norton Rose Fulbright US LLP, 2200 Ross Avenue, Dallas, Texas 75201-7932 (Attn: Kristian W. Gluck (kristian.gluck@nortonrosefulbright.com)).

---

**OBJECTIONS NOT TIMELY FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE.**

---

## SUMMARY OF PLAN TREATMENT OF CLAIMS AND EQUITY INTERESTS

5.  The Plan proposes to modify the rights of certain creditors of the Debtors. The classification of Claims and Equity Interests under the Plan is described generally below.

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 2 | Other Secured Claims | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 3A | 2010 Credit Facility Claims | Impaired | Entitled to Vote |
| 3B | 2019 RCF Claims | Impaired | Entitled to Vote |
| 4A | 2010 Bond Claims | Impaired | Entitled to Vote |
| 4B | 2012 Bond Claims | Impaired | Entitled to Vote |
| 5 | Convenience Claims | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Non-Abuse Litigation Claims | Impaired | Entitled to Vote |
| 8 | Direct Abuse Claims | Impaired | Entitled to Vote |
| 9 | Indirect Abuse Claims | Impaired | Entitled to Vote |
| 10 | Interests in Delaware BSA | Impaired | Deemed to Reject; Not Entitled to Vote |

## RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

6.  Pursuant to Article X of the Plan, the Debtors are seeking approval of certain release, injunction, and exculpation provisions, which will become effective if the Plan is approved and described in Article VI.Q of the Disclosure Statement.  **If you hold a Claim in one of the Unimpaired Classes, you will be presumed to accept the Plan and grant the Releases by holders of Claims set forth below and in Article X.J.4 of the Plan, unless you object to the release before the Plan Objection Deadline.**  Such provisions include the following:

a.  **Discharge Injunction.  From and after the Effective Date, except as expressly provided in the Plan or the Confirmation Order, all holders of Claims or Interests of any**

nature whatsoever against or in the Debtors or any of their assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are discharged pursuant to the terms of the Plan shall be precluded and permanently enjoined from taking any of the following actions on account of, or on the basis of, such discharged Claims and Interests: (a) commencing or continuing any action or other proceeding of any kind against the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property; (b) enforcing, attaching, collecting, or recovering by any manner or means of judgment, award, decree or other against the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property; (c) creating, perfecting or enforcing any Lien or Encumbrance of any kind against the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property; or (d) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. The foregoing injunction shall extend to the successors of the Debtors (including Reorganized BSA) and its and their respective properties and interests in property. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge or termination of all Claims, Interests and other debts and liabilities against or in the Debtors pursuant to sections 105, 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time to the extent such judgment relates to a discharged Claim or Interest.

      b.    <u>Releases by Holders of Claims</u>.  As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[3] to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[4] shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally,

---

[3]    "<u>Released Parties</u>" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Creditors' Committee; (e) the members of the Creditors' Committee in their capacities as such; (f) the Tort Claimants' Committee; (g) the members of the Tort Claimants' Committee in their capacities as such; (h) the Future Claimants' Representative; (i) the Coalition; (j) JPM; (k) the Settling Insurance Companies, including Hartford; (l) the Contributing Chartered Organizations, including TCJC; (m) the Foundation, in its capacity as lender under the Foundation Loan Agreement; (n) the Ad Hoc Committee; (o) the members of the Ad Hoc Committee in their capacities as such; (p) the Creditor Representative; (q) the Mediators; and (r) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Released Party; provided further, that the definition of "Released Parties" shall in all instances be subject to <u>Article X.J.</u> of the Plan.

[4]    "<u>Releasing Claim Holder</u>" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in Article X.J.4 of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in Article X.J.4 of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in Article X.J.4 of the Plan; and (d) all of such Persons' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners,

irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in Article X.J.4 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Abuse Litigation Claim to recover on account of such Allowed Claim in accordance with Article III.B.9 of the Plan.  Notwithstanding the foregoing or anything to the contrary herein, (i) with respect to holders of Allowed General Unsecured Claims or Allowed Non-Abuse Litigation Claims, nothing in the Plan or the release set forth in Article X.J.4 of the Plan shall, or shall be construed to, release any claims or Causes of Action against any Local Council, Chartered Organization (other than a Contributing Chartered Organization), or Non-Settling Insurance Company (subject to Article IV.D.3 of the Plan) and (ii) nothing in the Plan or the release set forth in Article X.J.4 of the Plan shall, or shall be construed to, release any claims or Causes of Action asserted by Century Indemnity Company against Sidley Austin LLP ("Sidley") related to Sidley's representation of the Debtors prior to the Petition Date.

---

employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such.

**c.    Releases by the Debtors and the Estates.**

**Releases by the Debtors and the Estates of the Released Parties**.  As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the Abuse Claims Settlement, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in <u>Article X.J.1</u> of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

**Releases by the Debtors and the Estates of Certain Avoidance Actions**.  As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of Creditors' Committee and its members in their respective capacities as such in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and

forever release and discharge each and all holders of General Unsecured Claims, Non-Abuse Litigation Claims, and Convenience Claims of and from any and all Avoidance Actions.

>   d.    **Exculpation**.

From and after the Effective Date, none of the Exculpated Parties[5] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or before the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the JPM/Creditors' Committee Settlement, the Hartford Insurance Settlement Agreement, the TCJC Settlement Agreement, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct).  In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence.  Notwithstanding the foregoing or any provision of the Plan to the contrary, Sidley shall not be an Exculpated Party with respect to any claims that Century Indemnity Company asserts against Sidley related to Sidley's representation of the Debtors prior to the Petition Date.

>   e.    **Injunctions Related to Releases and Exculpation**.

**Injunction Related to Releases**.  As of the Effective Date, all holders of Claims that are the subject of **Article X.J** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.1** of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is the subject of **Article X.J** of the Plan from

---

[5]  "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Creditors' Committee; (d) the members of the Creditors' Committee in their capacities as such; (e) the Tort Claimants' Committee; (f) the members of the Tort Claimants' Committee in their capacities as such; (g) the Future Claimants' Representative; (h) the Creditor Representative; and (i) all of such Persons' current officers and directors, former officers and directors who served in such capacity during the pendency of the Chapter 11 Cases but are no longer officers or directors as of the Effective Date, employees, volunteers, agents, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals.

taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Injunction Related to Exculpation**.  As of the Effective Date, all holders of Claims that are the subject of Article X.K of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Article X.E of the Plan or released under Article X.J of the Plan; provided, however, that the injunctions set forth in Article X.L.2 of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of Article X.K of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

## COPIES OF PLAN AND DISCLOSURE STATEMENT

7.    If you would like copies of the Plan, the Disclosure Statement, the Solicitation Procedures Order, or other documents related to the Plan, free of charge, you may obtain these documents from Omni Agent Solutions (the Solicitation Agent"), by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.  You may also access from these materials for a fee via PACER at http://www.deb.uscourts.gov/.

---

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT THE SOLICITATION AGENT VIA ONE OF THE METHODS SPECIFIED ABOVE. PLEASE NOTE THAT THE SOLICITATION AGENT MAY NOT PROVIDE LEGAL ADVICE.  IF YOU NEED LEGAL ADVICE, PLEASE CONSULT WITH YOUR ATTORNEY.**

---

*[Remainder of Page Intentionally Left Blank]*

Dated: [●], 2021

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email: mandolina@whitecase.com
        mlinder@whitecase.com
        laura.baccash@whitecase.com
        blair.warner@whitecase.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@morrisnichols.com
        aremming@morrisnichols.com
        ptopper@morrisnichols.com

*Attorneys for the Debtors and Debtors in Possession*

## **Exhibit 6**

**Form of Disputed Claim Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| | (Jointly Administered) |
| Debtors. | |

## <u>NOTICE OF NON-VOTING STATUS WITH RESPECT TO DISPUTED CLAIMS</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.        On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") entered an order in the above-captioned chapter 11 cases [D.I. [●]] (the "<u>Solicitation Procedures Order</u>"): (a) approving the *Amended Disclosure Statement for the Amended Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "<u>Disclosure Statement</u>"); (b) establishing the Voting Record Date, Voting Deadline, and other related dates in connection with confirmation of the *Amended Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "<u>Plan</u>");[2] (c) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan (the "<u>Solicitation Procedures</u>"); and (d) approving the form and manner of notice and other related documents as they relate to the Debtors.

2.        You are receiving this notice enclosed with your Solicitation Package because your Claim(s) against the Debtors is subject to a pending objection by the Debtors, other than a "reclassify" or "reduce and allow" objection, that was filed with the Bankruptcy Court by the Solicitation Date (a "<u>Disputed Claim</u>"), and therefore, pursuant to the Solicitation Procedures Order and sections 502(a) and 1126(a) of the Bankruptcy Code, **you are not entitled to have your vote to accept or reject the Plan counted on account of your Claim unless one of the following Resolution Events (as defined in the Solicitation Procedures) occurs on or before the Voting Resolution Event Deadline of December 14, 2021, or as otherwise ordered by the Bankruptcy Court:**

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the in the Plan, the Disclosure Statement, or the Solicitation Procedures (defined as below), as applicable.

(i) An order of the Bankruptcy Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

(ii) entry of an order of the Bankruptcy Court, after notice and a hearing, granting a Rule 3018(a) Motion and temporarily allowing such Claim for voting purposes in accordance with <u>Section III.C.4</u> of the Solicitation Procedures;

(iii) a stipulation or other agreement is executed between the holder of a Disputed Claim and the Debtors (a) resolving the objection and allowing such Claim for voting purposes in an agreed-upon amount or (b) otherwise fixing an amount of the Claim for voting purposes; or

(iv) the pending objection is voluntarily withdrawn by the objecting party.

Accordingly, this notice is being sent to you for informational purposes only.

3. If you seek to challenge the disallowance or estimation of your Disputed Claim for voting purposes, you must file with the Bankruptcy Court a motion for an order, pursuant to Bankruptcy Rule 3018(a), temporarily allowing such claim for purposes of voting to accept or reject the Plan (a "<u>Rule 3018(a) Motion</u>").  Any Rule 3018(a) Motion must be filed with the Bankruptcy Court and served on the Debtors on or before **November 1, 2021**.  If a holder of a Disputed Claim files a timely Rule 3018(a) Motion, such holder's Ballot shall not be counted unless a Resolution Event occurs with respect to such Disputed Claim prior to **December 14, 2021**, or as otherwise ordered by the Bankruptcy Court.  The Ballot must be returned to the Solicitation Agent no later than the Voting Deadline, which is on **<u>December 14, 2021 at 4:00 p.m. (Eastern Time)</u>**.

4. The Bankruptcy Court has scheduled a hearing to consider whether to confirm the Plan beginning on **January 24, 2022 at 10:00 a.m. (Eastern Time)** (the "<u>Confirmation Hearing</u>"), which shall continue to the extent necessary on such additional dates as the Bankruptcy Court may designate.  The Confirmation Hearing will be held before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, at the Bankruptcy Court, located at 824 North Market Street, Sixth Floor, Courtroom No. 2, Wilmington, Delaware 19801.  **Please be advised that the Confirmation Hearing may be adjourned or continued from time to time by the Bankruptcy Court or the Debtors without further notice other than as indicated in any notice or agenda of matters scheduled for a particular hearing that is filed with the Bankruptcy Court.**  If the Confirmation Hearing is continued, the Debtors will post the new date and time of the Confirmation Hearing at https://omniagentsolutions.com/BSA.  The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to creditors or other parties in interest, unless such notice is required by the Bankruptcy Code, Bankruptcy Rules, or other applicable law.

5. If you would like to object to the Plan, you may do so by filing your objection no later than **<u>January 7, 2022 at 4:00 p.m. (Eastern Time)</u>** (the "<u>Plan Objection Deadline</u>").  Any objections or responses to confirmation of the Plan, must: (a) be in writing; (b) state the name and address of the objecting party and the nature and amount of the Claim of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include any

evidentiary support therefor; and (d) be filed with the Bankruptcy Court, 824 North Market Street, Third Floor, Wilmington, Delaware 19801 together with proof of service **on or before the Plan Objection Deadline**, and served so as to be <u>actually</u> <u>received</u> by the parties below on or before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email:

(a)    counsel to the Debtors, (i) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020 (Attn: Jessica C. Lauria (jessica.lauria@whitecase.com)), and 111 South Wacker Drive, Chicago, Illinois 60606 (Attn: Michael C. Andolina (mandolina@whitecase.com), Matthew E. Linder (mlinder@whitecase.com), and Blair Warner (blair.warner@whitecase.com)) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347 (Attn: Derek C. Abbott (dabbott@morrisnichols.com), Andrew R. Remming (aremming@morrisnichols.com), and Paige N. Topper (ptopper@morrisnichols.com));

(b)    the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: David L. Buchbinder (david.l.buchbinder@usdoj.gov) and Hannah M. McCollum (hannah.mccollum@usdoj.gov));

(c)    counsel to the Tort Claimants' Committee, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19801 (Attn: James I. Stang (jstang@pszjlaw.com), John A. Morris (jmorris@pszjlaw.com), James E. O'Neill (joneill@pszjlaw.com), and John W. Lucas (jlucas@pszjlaw.com));

(d)    counsel to the Creditors' Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Thomas Moers Mayer (tmayer@kramerlevin.com), Rachael Ringer (rringer@kramerlevin.com), David E. Blabey, Jr. (dblabey@kramerlevin.com), Jennifer R. Sharret (jsharret@kramerlevin.com), and Megan M. Wasson (mwasson@kramerlevin.com));

(e)    counsel to the Future Claimants' Representative, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Robert S. Brady (rbrady@ycst.com), Edwin J. Harron (eharron@ycst.com), and Sharon M. Zieg (szieg@ycst.com)); and

(f)    counsel to JPMorgan Chase Bank National Association, Norton Rose Fulbright US LLP, 2200 Ross Avenue, Dallas, Texas 75201-7932 (Attn: Kristian W. Gluck (kristian.gluck@nortonrosefulbright.com)).

> **OBJECTIONS NOT TIMELY FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE.**

6.     If you would like copies of the Plan, the Disclosure Statement, the Solicitation Procedures Order, or other documents related to the Plan, free of charge, you may obtain these documents from Omni Agent Solutions (the <u>Solicitation Agent</u>") by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.  You may also access from these materials for a fee via PACER at http://www.deb.uscourts.gov/.

---

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT THE SOLICITATION AGENT VIA ONE OF THE METHODS SPECIFIED ABOVE. PLEASE NOTE THAT THE SOLICITATION AGENT MAY NOT PROVIDE LEGAL ADVICE.  IF YOU NEED LEGAL ADVICE, PLEASE CONSULT WITH YOUR ATTORNEY.**

---

*[Remainder of Page Intentionally Left Blank]*

Dated: [●], 2021

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email: mandolina@whitecase.com
          mlinder@whitecase.com
          laura.baccash@whitecase.com
          blair.warner@whitecase.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@morrisnichols.com
          aremming@morrisnichols.com
          ptopper@morrisnichols.com

*Attorneys for the Debtors and Debtors in Possession*

## Exhibit 7

**Form of Cover Letter**

[Debtors' Letterhead]

[●], 2021

**Re:    *In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-10343
(LSS), Chapter 11 Bankruptcy**

**To All Holders of Claims Entitled to Vote on the Plan:**

On February 18, 2020, the Boy Scouts of America and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "<u>Debtors</u>"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>").  The Debtors filed the Chapter 11 Cases in order to address the significant potential liabilities arising from Claims related to alleged historical acts of Abuse in the BSA's programs.

The BSA cares deeply about all survivors of child abuse.  The BSA understands that no apology can repair the damage caused by abuse or take away the pain that survivors have endured.  The BSA is steadfast in its commitment to continually improve all of its policies to prevent abuse.

---

**THE DEBTORS, THE COALITION OF ABUSED SCOUTS FOR JUSTICE, THE FUTURE CLAIMANTS' REPRESENTATIVE, THE CREDITORS' COMMITTEE AND THE AD HOC COMMITTEE OF LOCAL COUNCILS (THE "<u>SUPPORTING PARTIES</u>") BELIEVE THE PLAN OF REORGANIZATION PROVIDES HOLDERS OF CLAIMS, INCLUDING ABUSE CLAIMS, SUBSTANTIALLY GREATER RECOVERY THAN ANY OTHER ALTERNATIVE AND URGE YOU TO SUBMIT A TIMELY BALLOT VOTING <u>TO</u> <u>ACCEPT</u> THE PLAN OF REORGANIZATION.**

**THE VOTING DEADLINE IS DECEMBER 14, 2021 AT 4:00 P.M. (EASTERN TIME).**

---

On [●], 2021, the Bankruptcy Court entered an order [D.I. [●]] approving the *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "<u>Disclosure Statement</u>").  On the same date, the Bankruptcy Court entered an order [D.I. [●]] (the "<u>Solicitation Procedures Order</u>") that, among other things, authorizes the Debtors to solicit votes to accept or reject the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "<u>Plan</u>").[1]

**The Plan is supported by the Debtors and the other Supporting Parties.  The BSA and the Supporting Parties all believe that the Plan represents the best possible means to (a) timely and equitably compensate survivors of alleged Abuse in Scouting and (b) ensure**

---

[1]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable.

**that the BSA emerges from bankruptcy with the ability to continue its vital charitable mission. The BSA and the other Supporting Parties believe that the Plan provides the highest and best recovery—and the best outcome—for all creditors and is in the best interests of the Debtors' estates. Therefore, the BSA and the other Supporting Parties urge eligible creditors to vote to accept the Plan.**

You are receiving this letter and the accompanying materials because you may be entitled to vote on the Plan. The following materials constitute the "Solicitation Package" which, in addition to this letter, is comprised of:

(a)     the Disclosure Statement, including all exhibits thereto, attached to which is the Plan, including all of its exhibits and schedules (to the extent such exhibits and schedules are filed with the Bankruptcy Court before the Solicitation Date);

(b)     the Solicitation Procedures Order;

(c)     the Confirmation Hearing Notice;

(d)     an appropriate ballot with detailed voting instructions, including instructions for voting online via the electronic ballot submission platform (the "E-Ballot Platform") on the website of Omni Agent Solutions, the Debtors' claims, noticing, and solicitation agent in these chapter 11 cases (the "Solicitation Agent"), and return instructions or a return envelope with postage, if applicable;

(e)     a letter from any official committee or the Coalition, substantially in the form filed on the docket of the Chapter 11 Cases (and as may be modified, amended, or supplemented from time to time); and

(f)     any other materials ordered by the Bankruptcy Court to be included as part of the Solicitation Package.

---

**ACCESS TO PLAN AND DISCLOSURE STATEMENT**

**IMPORTANT**:  You should have received a hard copy or USB flash drive copy of the Plan, the Disclosure Statement, and the Solicitation Procedures Order (excluding exhibits except for the Solicitation Procedures).  You may also access the Plan, the Disclosure Statement, and the Solicitation Procedures Order free of charge at https://omniagentsolutions.com/bsa-SAballots (Direct Abuse Claims) or https://omniagentsolutions.com/bsa-ballots (all other Claims).  You may also obtain copies of any of the other Solicitation Package materials free of charge at these websites.  If you would prefer to receive paper copies or documents on a USB drive, please contact the Solicitation Agent to make such a request by: (a) calling the Debtors' toll-free restructuring hotline at 1-866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.

---

The comprehensive restructuring of the Debtors proposed in the Plan is the product of agreements reached among the BSA, the other Supporting Parties, JPM (the Debtors' senior secured lender), Hartford, and The Church of Jesus Christ of Latter-day Saints ("TCJC"), which provides the framework for global resolution of Abuse Claims against the Debtors, Related Non-Debtor Entities, and Local Councils, as well as any other Contributing Chartered Organizations, Participating Chartered Organizations, and Settling Insurance Companies that may become party to the restructuring settlements after the date of this letter, in exchange for contributions by such parties to the Settlement Trust for the benefit of survivors of Abuse (collectively, "Abuse Survivors"). The Plan has been designed to maximize and expedite recoveries to Abuse Survivors, resulting in substantial recoveries, as set forth in the recovery chart in the Disclosure Statement. The Debtors and the other Supporting Parties strongly encourage all holders of Claims in the Voting Classes, including Direct Abuse Claims, to vote in favor of the Plan.

The Plan, which incorporates a settlement with Hartford for $787 million and a settlement with TCJC for $250 million, as well as the JPM / Creditors' Committee Settlement, provides for a mechanism to channel to the Settlement Trust all Abuse Claims asserted against the Debtors and certain non-debtor third parties, including the Local Councils, Participating Chartered Organizations, Contributing Chartered Organizations (including TCJC), and Settling Insurance Companies (including Hartford) that make contributions to the Settlement Trust for the benefit of Abuse Survivors. If the Plan is approved, the Settlement Trust will exclusively administer and resolve the Abuse Claims. In exchange for channeling all Abuse Claims to the Settlement Trust, as described in the Disclosure Statement, the BSA will make a substantial contribution to the Settlement Trust of approximately $220 million assuming an Effective Date of December 31, 2021. The BSA will also assign and transfer to the Settlement Trust all of its insurance rights under the BSA's insurance policies, thereby providing the potential for substantial insurance recoveries to holders of Direct Abuse Claims.

Additionally, Local Councils will make a substantial contribution to the Settlement Trust to resolve the Abuse Claims that may be asserted against them in exchange for being included as Protected Parties under the Plan and receiving the benefits of the Channeling Injunction, consisting of (a) $500 million, comprised of at least $300 million in Cash with the balance in property, exclusive of insurance rights, (b) the DST Note, a $100 million interest-bearing variable-payment obligation note issued to the Settlement Trust by a Delaware statutory trust on or as soon as practicable after the Effective Date, and (c) the assignment and transfer to the Settlement Trust of all Local Council insurance rights under the BSA's and Local Councils' liability insurance policies that provide coverage for Abuse Claims, thereby providing the potential for substantial insurance recoveries to holders of Direct Abuse Claims.

The Plan also provides a mechanism by which Chartered Organizations can become Participating Chartered Organizations (unless they elect not to or are chapter 11 debtors in their own restructuring cases) through the assignment and transfer to the Settlement Trust of all of their post-1975 insurance rights under BSA and Local Council policies that provide coverage for Abuse Claims in exchange for being included as a Limited Protected Party under the Plan, resulting in the potential for substantial additional insurance recoveries for holders of Abuse Claims. Insurance Companies may also make substantial contributions and Chartered Organizations may also make further substantial contributions to the Settlement Trust in exchange for becoming

Protected Parties under the Plan and receiving the comprehensive benefits of the Channeling Injunction.

Additionally, the Plan also provides for the BSA's assumption of its prepetition Pension Plan and specifies the treatment of holders of Allowed Convenience Claims, Allowed General Unsecured Claims and Allowed Non-Abuse Litigation Claims, resulting in substantial recoveries, as set forth in the recovery chart in the Disclosure Statement. The treatment of all classes of Claims entitled to vote is described more fully in the Plan and the Disclosure Statement.

The Debtors and the Supporting Parties support confirmation of the Plan and urge all claimants to vote in favor of the Plan. **The Debtors and the Supporting Parties believe that the Plan will offer the highest and best recovery for all creditors and that the Plan will provide more certain recoveries to survivors of Abuse and other creditors than any other alternative. The Debtors and the Supporting Parties also believe that the Plan will provide those recoveries more quickly than would any alternative, including by avoiding time-consuming and costly litigation.**

If the Plan cannot be confirmed by the Bankruptcy Court, or if an insufficient number of voting claimants vote in favor of the Plan, (i) the Debtors may be required to liquidate and/or voluntarily convert these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed or elected to liquidate the Debtors' assets for distribution in accordance with the priorities established by the Bankruptcy Code, (ii) the Debtors may seek approval of a revised plan of reorganization that provides for less favorable treatment for creditors, or (iii) other parties may submit an alternate plan to reorganize BSA. **The Debtors believe that all of these alternatives would result in significantly reduced recoveries for Abuse Survivors, and would significantly delay the date by which Abuse Survivors can begin expecting payments from the Settlement Trust.**

> **To Chartered Organizations that Hold Indirect Abuse Claims Under the Plan:** Thank you for your support of the Scouting movement. Millions of young men and women have passed through your doors, and our joint mission to serve them has helped countless youth become prepared for life. Your support for the Plan is essential for the mission of Scouting, and the success of the BSA's bankruptcy case depends your support for the Chartered Organization settlement framework set forth in the Plan. The BSA urges you to support the survival and continuation of Scouting by voting your Indirect Abuse Claim in favor of the Plan.

**Please read the Plan carefully. In particular, please review the injunction, release, and exculpation provisions provided in <u>Article X</u> of the Plan. If you vote to accept or reject the Plan, you will be releasing the Released Parties from any and all Claims/Causes of Action to the extent provided in <u>Article X.J.4</u> of the Plan unless you "opt-out" of such releases. If you decide to opt out of the release in <u>Article X.J.4</u> of the Plan, please do so by checking the appropriate box on your ballot.**

**If you are the holder of an Abuse Claim, then regardless of whether you opt out of the releases in <u>Article X.J.4</u> of the Plan, if the Plan is confirmed, you will be bound by the releases and Channeling Injunction set forth in <u>Article X.J.3</u> and <u>Article X.F</u> of the Plan.**

The Debtors and other Supporting Parties believe that the Plan constitutes a good-faith compromise and settlement of all Claims and controversies based upon the unique circumstances of these chapter 11 cases, and will provide the maximum recovery for creditors.  The Debtors and other Supporting Parties believe that the acceptance of the Plan by holders of Claims entitled to vote to accept or reject the Plan is in the best interests of holders of Claims against the Debtors.  Moreover, the Debtors and other Supporting Parties believe that any alternative other than Confirmation of the Plan may result in, among other risks, delays and significantly increased administrative expenses, and significantly diminished distributions on account of Allowed Claims.

---

**THE DEBTORS AND OTHER SUPPORTING PARTIES STRONGLY URGE YOU TO TIMELY SUBMIT YOUR BALLOT CASTING A VOTE TO ACCEPT THE PLAN IN ACCORDANCE WITH THE INSTRUCTIONS IN YOUR BALLOT.**

**THE VOTING DEADLINE IS DECEMBER 14, 2021 AT 4:00 P.M. (EASTERN TIME).**

---

For the reasons set forth herein and in the Disclosure Statement, the Debtors and other Supporting Parties recommend that all persons or entities entitled to vote on the Plan vote to accept the Plan by timely submitting a properly completed ballot.  Instructions for casting your vote on the Plan are provided on your ballot.  You are strongly encouraged to submit your ballot online via the E-Ballot Platform on the Solicitation Agent's website.  In order to have your vote to accept or reject the Plan counted, your Ballot must **actually be received** by the Solicitation Agent on or before **December 14, 2021 at 4:00 p.m. (Eastern Time)**.

If you would like electronic copies of any of the materials enclosed herein, or any other filings in the Debtors' chapter 11 cases, they can be accessed at the Debtors' restructuring website free of charge at https://omniagentsolutions.com/BSA.

If you have any questions, or need to obtain additional solicitation materials, you may contact the Solicitation Agent by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/bsa.  Please note that the Solicitation Agent is not authorized to, and will not, provide legal advice to you.  If you need legal advice, please consult with your attorney.

Sincerely,

*Boy Scouts of America and Delaware BSA, LLC*

**<u>Exhibit 8</u>**

**Form of Plan Supplement Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

## NOTICE OF FILING OF PLAN SUPPLEMENT TO MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC

### PLEASE TAKE NOTICE OF THE FOLLOWING:

1.    On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. [●]] (the "Solicitation Procedures Order"): (a) approving the *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC,* together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time (the "Disclosure Statement"); (b) establishing the Voting Record Date, Voting Deadline, and other related dates in connection with confirmation of the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan");[2] (c) approving procedures for soliciting, receiving, and tabulating votes on the Plan (the "Solicitation Procedures"); and (d) approving the manner and forms of notice and other related documents as they relate to the Debtors.

2.    As contemplated by the Plan, the Disclosure Statement, and the Solicitation Procedures Order, the Debtors filed a Plan Supplement with the Bankruptcy Court on [●], 2021 [D.I. [●]].    The Plan Supplement includes the following documents in connection with confirmation of the Plan (each as defined in the Plan), as may be amended, modified, or supplemented from time to time: (a) the Amended BSA Bylaws; (b) the Assumed Contracts and Unexpired Leases Schedule; (c) the form of the BSA Settlement Trust Note; (d) the form of the Document Agreement; (e) the form of the DST Agreement; (f) the form of the DST Note; (g) the name of the Creditor Representative; (h) changes, if any, to Reorganized BSA's directors and officers; (i) the form of the Foundation Loan Agreement; (j) the form of agreement reflecting the terms of the Leaseback Requirement; (k) the Rejected Contracts and Unexpired Leases Schedule;

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in in the Plan, the Disclosure Statement, or the Solicitation Procedures (defined as below), as applicable.

(l) the forms of the Restated 2010 Bond Documents; (m) the forms of the Restated 2012 Bond Documents; (n) the forms of the Restated Credit Facility Documents; (o) the form of the Restated Security Agreement; (p) the names of the initial members of the Settlement Trust Advisory Committee; (q) the name of the initial Special Reviewer; (r) the execution copy of the Hartford Insurance Settlement Agreement once the settlement memorialized in the term sheet appended to the *Sixth Mediators' Report* [D.I. 6210] filed on September 14, 2021 is set forth in a definitive written settlement agreement that is consistent with such term sheet and executed by all parties thereto (and any additional parties that execute a joinder thereto from time to time); and (s) the execution copy of the TCJC Settlement Agreement once the settlement memorialized in the term sheet appended to the *Sixth Mediators' Report* [D.I. 6210] filed on September 14, 2021 is set forth in a definitive written settlement agreement that is consistent with such term sheet and executed by all parties thereto (and any additional parties that execute a joinder thereto from time to time); and (t) the form of release to be executed by a holder of an Abuse Claim in favor of each Settling Insurance Company with respect to such Abuse Claim as a condition precedent to receiving any proceeds from the Settlement Trust; provided that the Plan Documents listed in clauses (b) and (k) of the foregoing sentence will be revised, in the Debtors' discretion, subject to Article VI of the Plan, to account for any additional Executory Contracts or Unexpired Leases to be assumed or rejected in advance of the Confirmation Hearing.  The Plan Supplement shall be served only on those parties that have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002, and any party in interest who requests in writing a copy from counsel to the Debtors.  Once the Plan Supplement is filed, a copy will also be available for review on Omni Agent Solutions' website (the "Solicitation Agent") free of charge at https://omniagentsolutions.com/BSA.

3.      The Plan Supplement is integral to, part of and incorporated by reference into the Plan.  The documents included in the Plan Supplement have not yet been approved by the Bankruptcy Court and may be amended, modified or supplemented from time to time.  If the Plan is confirmed by the Bankruptcy Court, the documents contained in this Plan Supplement will be approved by the Bankruptcy Court pursuant to the Confirmation Order.

4.      The Bankruptcy Court has scheduled a hearing to consider whether to confirm the Plan beginning on **January 24, 2022 at 10:00 a.m. (Eastern Time)** (the "Confirmation Hearing"), which shall continue to the extent necessary on such additional dates as the Bankruptcy Court may designate.  The Confirmation Hearing will be held before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, at the Bankruptcy Court, located at 824 North Market Street, Sixth Floor, Courtroom No. 2, Wilmington, Delaware 19801.  **Please be advised that the Confirmation Hearing may be adjourned or continued from time to time by the Bankruptcy Court or the Debtors without further notice other than as indicated in any notice or agenda of matters scheduled for a particular hearing that is filed with the Bankruptcy Court.**  If the Confirmation Hearing is continued, the Debtors will post the new date and time of the Confirmation Hearing at https://omniagentsolutions.com/BSA.  The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to creditors or other parties in interest, unless such notice is required by the Bankruptcy Code, Bankruptcy Rules, or other applicable law.

5.      If you would like to object to the Plan, you may do so by filing your objection no later than **January 7, 2022 at 4:00 p.m. (Eastern Time)** (the "Plan Objection Deadline").  Any objections or responses to confirmation of the Plan, must: (a) be in writing; (b) state the name and

address of the objecting party and the nature and amount of the Claim of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (d) be filed with the Bankruptcy Court, 824 North Market Street, Third Floor, Wilmington, Delaware 19801 together with proof of service **on or before the Plan Objection Deadline**, and served so as to be <u>actually</u> <u>received</u> the parties below before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email:

(a) counsel to the Debtors, (i) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020 (Attn: Jessica C. Lauria (jessica.lauria@whitecase.com)), and 111 South Wacker Drive, Chicago, Illinois 60606 (Attn: Michael C. Andolina (mandolina@whitecase.com), Matthew E. Linder (mlinder@whitecase.com), and Blair Warner (blair.warner@whitecase.com)) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347 (Attn: Derek C. Abbott (dabbott@morrisnichols.com), Andrew R. Remming (aremming@morrisnichols.com), and Paige N. Topper (ptopper@morrisnichols.com));

(b) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: David L. Buchbinder (david.l.buchbinder@usdoj.gov) and Hannah M. McColllum (hannah.mccollum@usdoj.gov));

(c) counsel to the Tort Claimants' Committee, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19801 (Attn: James I. Stang (jstang@pszjlaw.com), John A. Morris (jmorris@pszjlaw.com), James E. O'Neill (joneill@pszjlaw.com), and John W. Lucas (jlucas@pszjlaw.com));

(d) counsel to the Creditors' Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Thomas Moers Mayer (tmayer@kramerlevin.com), Rachael Ringer (rringer@kramerlevin.com), David E. Blabey, Jr. (dblabey@kramerlevin.com), Jennifer R. Sharret (jsharret@kramerlevin.com), and Megan M. Wasson (mwasson@kramerlevin.com));

(e) counsel to the Future Claimants' Representative, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Robert S. Brady (rbrady@ycst.com), Edwin J. Harron (eharron@ycst.com), and Sharon M. Zieg (szieg@ycst.com)); and

(f) counsel to JPMorgan Chase Bank National Association, Norton Rose Fulbright US LLP, 2200 Ross Avenue, Dallas, Texas 75201-7932 (Attn: Kristian W. Gluck (kristian.gluck@nortonrosefulbright.com)).

---

**OBJECTIONS NOT TIMELY FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE.**

---

6.     The Debtors reserve all rights to amend, modify or supplement the Plan Supplement, and any of the exhibits included therein, in accordance with the terms of the Plan.  To the extent material amendments or modifications are made to any of these exhibits, the Debtors will file amended versions of such exhibits with the Bankruptcy Court prior to the Confirmation Hearing.

7.     If you have questions about anything stated herein, you may contact the Solicitation Agent by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.

**ARTICLE X** OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE X.J.4** OF THE PLAN CONTAINS A THIRD-PARTY RELEASE.   THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT THE SOLICITATION AGENT VIA ONE OF THE METHODS SPECIFIED ABOVE.  PLEASE NOTE THAT THE SOLICITATION AGENT MAY NOT PROVIDE LEGAL ADVICE. IF YOU NEED LEGAL ADVICE, PLEASE CONSULT WITH YOUR ATTORNEY.

Dated: [●], 2021

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email: mandolina@whitecase.com
         mlinder@whitecase.com
         laura.baccash@whitecase.com
         blair.warner@whitecase.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@morrisnichols.com
         aremming@morrisnichols.com
         ptopper@morrisnichols.com

*Attorneys for the Debtors and Debtors in Possession*

**<u>Exhibit 9</u>**

**Form of Cure and Assumption Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

**NOTICE OF (I) EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED BY THE DEBTORS PURSUANT TO THE MODIFIED FIFTH AMENDED  CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA  AND DELAWARE BSA, LLC, (II) CURE AMOUNTS, IF ANY, AND (III) RELATED PROCEDURES IN CONNECTION THEREWITH**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order in the above-captioned chapter 11 cases [D.I. [●]] (the "Solicitation Procedures Order"): (a) approving the *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"); (b) establishing the Voting Record Date, Voting Deadline, and other related dates in connection with confirmation of the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan");[2] (c) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan (the "Solicitation Procedures"); and (d) approving the form and manner of notice and other related documents as they relate to the Debtors.

2.      On or before November 30, 2021, the Debtors intend to file the Assumed Executory Contracts and Unexpired Leases Schedule with the Bankruptcy Court as part of the Plan Supplement contemplated under the Plan.  The determination to assume the agreements identified on the Assumed Executory Contracts and Unexpired Leases Schedule is subject to revision.

3.      You are receiving this notice because the Debtors' records reflect that you are a party to a contract or lease that is or will be listed on the Assumed Executory Contracts and

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Solicitation Procedures (as defined below), as applicable.

Unexpired Leases Schedule. Therefore, you are advised to review carefully the information contained in this Cure and Assumption Notice and the related provisions of the Plan. The Debtors are proposing to assume the Executory Contract(s) and Unexpired Lease(s) listed on **Exhibit A**, attached hereto, to which you are a party.[3]

4.      Section 365(b)(1) of the Bankruptcy Code requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption. Accordingly, the Debtors have conducted a thorough review of their books and records and have determined the amounts required to cure defaults, if any, under the Executory Contract(s) and Unexpired Lease(s), which amounts are listed in **Exhibit A**, attached hereto. Please note that if no amount is stated for a particular Executory Contract or Unexpired Lease, the Debtors believe that there is no cure amount outstanding for such contract or lease.

5.      Absent any pending dispute, the monetary amounts required to cure any existing defaults arising under the Executory Contract(s) and Unexpired Lease(s) identified in **Exhibit A**, attached hereto, will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by the Debtors' payment of the Cure Amount in Cash on the Effective Date or in the ordinary course of the Debtors' or Reorganized BSA's non-profit operations. In the event of a dispute, however, payment of the cure amount would be made following the entry of a final order(s) resolving the dispute and approving the assumption. **Any objection by a non-Debtor Executory Contract or Unexpired Lease counterparty to the assumption, assumption and assignment, the related Cure Amount, or adequate assurance proposed for its Executory Contract or Unexpired Lease, must be filed, served, and <u>actually</u> <u>received</u> by the Debtors no later than <u>January 7, 2022 at 4:00 p.m. (Eastern Time)</u>, which is the deadline for filing objections to the Plan (the "<u>Plan Objection Deadline</u>"), or such later date as may be provided in the applicable Cure and Assumption Notice; <u>provided</u> that each counterparty to an Executory Contract or Unexpired Lease (a) that the Debtors later determine to assume or (b) as to which the Debtors modify the applicable Cure Amount, must object to the assumption or Cure Amount, as applicable, by the earlier of: (i) fourteen (14) days after the Debtors serve such counterparty with a corresponding Cure and Assumption Notice; and (ii) the Confirmation Hearing.** Any objection to the assumption of an Executory Contract or Unexpired Lease **<u>must</u>**: (a) be in writing; (b) state the name and address of the objecting party and the nature and amount of the Claim of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (d) be filed with the Bankruptcy Court, 824 North Market Street, Third Floor, Wilmington, Delaware 19801 together with proof of service **on or before the Plan Objection Deadline**, and served so as to be <u>actually</u> <u>received</u> by the parties

---

[3]    Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on a Cure and Assumption Notice or the Assumed Contracts and Unexpired Leases Schedule, nor anything contained in the Plan or each Debtor's schedule of assets and liabilities, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease capable of assumption, that any Post-Effective Date Debtor(s) has any liability thereunder, or that such Executory Contract or Unexpired Lease is necessarily a binding and enforceable agreement. Further, the Debtors expressly reserve the right to (a) remove any Executory Contract or Unexpired Lease from the Assumed Contracts and Unexpired Leases Schedule and reject such Executory Contract or Unexpired Lease pursuant to the terms of the Plan, up until the Effective Date and (b) dispute any Claim (or cure amount) asserted in connection with assumption of any Executory Contract or Unexpired Lease.

below before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email:

(a) counsel to the Debtors, (i) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020 (Attn: Jessica C. Lauria (jessica.lauria@whitecase.com)), and 111 South Wacker Drive, Chicago, Illinois 60606 (Attn: Michael C. Andolina (mandolina@whitecase.com), Matthew E. Linder (mlinder@whitecase.com), and Blair Warner (blair.warner@whitecase.com)) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347 (Attn: Derek C. Abbott (dabbott@morrisnichols.com), Andrew R. Remming (aremming@morrisnichols.com), and Paige N. Topper (ptopper@morrisnichols.com));

(b) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: David L. Buchbinder (david.l.buchbinder@usdoj.gov) and Hannah M. McCollum (hannah.mccollum@usdoj.gov));

(c) counsel to the Tort Claimants' Committee, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19801 (Attn: James I. Stang (jstang@pszjlaw.com), John A. Morris (jmorris@pszjlaw.com), James E. O'Neill (joneill@pszjlaw.com), and John W. Lucas (jlucas@pszjlaw.com));

(d) counsel to the Creditors' Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Thomas Moers Mayer (tmayer@kramerlevin.com), Rachael Ringer (rringer@kramerlevin.com), David E. Blabey, Jr. (dblabey@kramerlevin.com), Jennifer R. Sharret (jsharret@kramerlevin.com), and Megan M. Wasson (mwasson@kramerlevin.com));

(e) counsel to the Future Claimants' Representative, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Robert S. Brady (rbrady@ycst.com), Edwin J. Harron (eharron@ycst.com), and Sharon M. Zieg (szieg@ycst.com)); and

(f) counsel to JPMorgan Chase Bank National Association, Norton Rose Fulbright US LLP, 2200 Ross Avenue, Dallas, Texas 75201-7932 (Attn: Kristian W. Gluck (kristian.gluck@nortonrosefulbright.com)).

> **OBJECTIONS NOT TIMELY FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE.**

6. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease shall be forever barred, estopped, and enjoined from contesting the Debtors' assumption of the applicable Executory Contract or Unexpired Lease and from requesting payment of a Cure Amount that

differs from the amounts paid or proposed to be paid by the Debtors or Reorganized BSA, in each case without the need for any objection by the Debtors or Reorganized BSA or any further notice to or action, order, or approval of the Bankruptcy Court.  Reorganized BSA may settle any dispute regarding a Cure Amount without any further notice to or action, order, or approval of the Bankruptcy Court.

7.      The Bankruptcy Court has scheduled a hearing to consider whether to confirm the Plan beginning on **January 24, 2022 at 10:00 a.m. (Eastern Time)** (the "Confirmation Hearing"), which shall continue to the extent necessary on such additional dates as the Bankruptcy Court may designate.  The Confirmation Hearing will be held before the Honorable Laurie Selber Silverstein, in the United States Bankruptcy Court for the District of Delaware, located at 824 Market Street, 6th Floor, Courtroom 2, Wilmington, Delaware 19801.

8.      **Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and payment of any applicable Cure Amount in accordance with the procedures set forth in Article VI.C of the Plan, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed, or assumed and assigned, Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.  Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed Disallowed and expunged as of the later of: (a) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption; (b) the effective date of such assumption; or (c) the Effective Date, in each case without the need for any objection by the Debtors or Reorganized BSA or any further notice to or action, order, or approval of the Bankruptcy Court.**

9.      If you would like copies of the Plan, the Disclosure Statement, the Solicitation Procedures Order, or other documents related to the Plan, free of charge, you may obtain these documents from Omni Agent Solutions (the Solicitation Agent") by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.  You may also access from these materials for a fee via PACER at http://www.deb.uscourts.gov/.

**ARTICLE X OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE X.J.4 OF THE PLAN CONTAINS A THIRD-PARTY RELEASE.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT THE SOLICITATION**

**AGENT VIA ONE OF THE METHODS SPECIFIED ABOVE.  PLEASE NOTE THAT THE SOLICITATION AGENT MAY NOT PROVIDE LEGAL ADVICE. IF YOU NEED LEGAL ADVICE, PLEASE CONSULT WITH YOUR ATTORNEY.**

Dated: [●], 2021

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email: mandolina@whitecase.com
         mlinder@whitecase.com
         laura.baccash@whitecase.com
         blair.warner@whitecase.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@morrisnichols.com
         aremming@morrisnichols.com
         ptopper@morrisnichols.com

*Attorneys for the Debtors and Debtors in Possession*

**Exhibit A**

| Counterparty Name | Description of Executory Contract or Unexpired Lease | Amount Required to Cure Default Thereunder, If Any |
|---|---|---|
|  |  |  |

**<u>Exhibit 10</u>**

**Form of Rejection Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

## NOTICE REGARDING EXECUTORY CONTRACTS AND
## UNEXPIRED LEASES TO BE REJECTED BY THE DEBTORS PURSUANT
## TO THE MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION
## FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC

### PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order in the above-captioned chapter 11 cases [D.I. [●]] (the "Solicitation Procedures Order"): (a) approving the *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"); (b) establishing the Voting Record Date, Voting Deadline, and other related dates in connection with confirmation of the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan");[2] (c) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan (the "Solicitation Procedures"); and (d) approving the form and manner of notice and other related documents as they relate to the Debtors.

2.      On November 30, 2021, the Debtors filed the Rejected Contracts and Unexpired Leases Schedule [D.I. [●]] with the Bankruptcy Court as part of the Plan Supplement, as contemplated under the Plan. The determination to reject the agreements identified on the Rejected Contracts and Unexpired Leases Schedule is subject to revision.

3.      You are receiving this notice because you are a counterparty to an Executory Contract or Unexpired Lease that, as of and subject to the occurrence of the Effective Date, will

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Solicitation Procedures (as defined below), as applicable.

be rejected by the Debtors and that, accordingly, has been specifically listed on **Exhibit A**, attached hereto, to which you are a party.[3]

4.    All Proofs of Claim for Rejection Damages Claims, if any, shall be filed within thirty (30) days after the latest to occur of: (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; (2) the effective date of the rejection of such Executory Contract or Unexpired Lease; or (3) the Effective Date (as applicable, the "Rejection Damages Bar Date").  Claims arising from the rejection of an Executory Contract or an Unexpired Lease shall be classified as General Unsecured Claims and subject to the provisions of **Article VII** of the Plan and the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.  **Any holder of a Rejection Damages Claim that is required to file a Proof of Claim in accordance with Article VI.B of the Plan but fails to do so on or before the Rejection Damages Bar Date shall not be treated as a creditor with respect to such Claim for the purposes of voting or Distributions, and such Rejection Damages Claim shall be automatically Disallowed, forever barred from assertion, and unenforceable against the Debtors, their Estates, Reorganized BSA, or its or their respective property, whether by setoff, recoupment, or otherwise, without the need for any objection by the Debtors or Reorganized BSA or further notice to, or action, order, or approval of the Bankruptcy Court, and such Rejection Damages Claim shall be deemed fully satisfied, released, and discharged.**

5.    If you would like to object to the Plan, you may do so by filing your objection no later than **January 7, 2022 at 4:00 p.m. (Eastern Time)** (the "Plan Objection Deadline").  Any objections or responses to confirmation of the Plan, must: (a) be in writing; (b) state the name and address of the objecting party and the nature and amount of the Claim of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (d) be filed with the Bankruptcy Court, 824 North Market Street, Third Floor, Wilmington, Delaware 19801 together with proof of service **on or before the Plan Objection Deadline**, and served so as to be actually received the parties below (the "Notice Parties") before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email:

> (a)    counsel to the Debtors, (i) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020 (Attn: Jessica C. Lauria (jessica.lauria@whitecase.com)),  and 111 South Wacker Drive, Chicago, Illinois 60606 (Attn: Michael C. Andolina (mandolina@whitecase.com), Matthew E. Linder (mlinder@whitecase.com), and Blair Warner (blair.warner@whitecase.com)) and (ii) Morris, Nichols, Arsht & Tunnell

---

[3]    Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on a Rejection Notice or the Rejected Contracts and Unexpired Leases Schedule, nor anything contained in the Plan or each Debtor's schedule of assets and liabilities, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease capable of rejection, that any Post-Effective Date Debtor(s) has any liability thereunder, or that such Executory Contract or Unexpired Lease is necessarily a binding and enforceable agreement.  Further, the Debtors expressly reserve the right to (a) remove any Executory Contract or Unexpired Lease from the Rejected Contracts and Unexpired Leases Schedule and assume such Executory Contract or Unexpired Lease pursuant to the terms of the Plan, up until the Effective Date and (b) dispute any Claim asserted in connection with rejection of any Executory Contract or Unexpired Lease.

LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347 (Attn: Derek C. Abbott (dabbott@morrisnichols.com), Andrew R. Remming (aremming@morrisnichols.com), and Paige N. Topper (ptopper@morrisnichols.com));

(b)    the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: David L. Buchbinder (david.l.buchbinder@usdoj.gov) and Hannah M. McColllum (hannah.mccollum@usdoj.gov));

(c)    counsel to the Tort Claimants' Committee, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19801 (Attn: James I. Stang (jstang@pszjlaw.com), John A. Morris (jmorris@pszjlaw.com), James E. O'Neill (joneill@pszjlaw.com), and John W. Lucas (jlucas@pszjlaw.com));

(d)    counsel to the Creditors' Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Thomas Moers Mayer (tmayer@kramerlevin.com), Rachael Ringer (rringer@kramerlevin.com), David E. Blabey, Jr. (dblabey@kramerlevin.com), Jennifer R. Sharret (jsharret@kramerlevin.com), and Megan M. Wasson (mwasson@kramerlevin.com));

(e)    counsel to the Future Claimants' Representative, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Robert S. Brady (rbrady@ycst.com), Edwin J. Harron (eharron@ycst.com), and Sharon M. Zieg (szieg@ycst.com)); and

(f)    counsel to JPMorgan Chase Bank National Association, Norton Rose Fulbright US LLP, 2200 Ross Avenue, Dallas, Texas 75201-7932 (Attn: Kristian W. Gluck (kristian.gluck@nortonrosefulbright.com)).

---

**OBJECTIONS NOT TIMELY FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE.**

---

6.    The Bankruptcy Court has scheduled a hearing to consider whether to confirm the Plan beginning on **January 24, 2022 at 10:00 a.m. (Eastern Time)** (the "Confirmation Hearing"), which shall continue to the extent necessary on such additional dates as the Bankruptcy Court may designate. The Confirmation Hearing will be held before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, at the Bankruptcy Court, located at 824 North Market Street, Sixth Floor, Courtroom No. 2, Wilmington, Delaware 19801. **Please be advised that the Confirmation Hearing may be adjourned or continued from time to time by the Bankruptcy Court or the Debtors without further notice other than as indicated in any notice or agenda of matters scheduled for a particular hearing that is filed with the Bankruptcy Court.** If the

Confirmation Hearing is continued, the Debtors will post the new date and time of the Confirmation Hearing at https://omniagentsolutions.com/BSA.  The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to creditors or other parties in interest, unless such notice is required by the Bankruptcy Code, Bankruptcy Rules, or other applicable law.

7.     Any objections to the Plan in connection with the rejection of the Executory Contract(s) and Unexpired Lease(s) identified on **Exhibit A** hereto and/or related rejection damages proposed in connection with the Plan that remain unresolved as of the Confirmation Hearing will be heard at the Confirmation Hearing (or such other date as fixed by the Court).

8.     The Debtors, subject to the terms of the Plan, reserve the right to alter, amend, modify, or supplement any information set forth herein, including to add or delete any Executory Contract or Unexpired Lease, at any time up to and including the Effective Date of the Plan.

9.     If you would like copies of the Plan, the Disclosure Statement, the Solicitation Procedures Order, or other documents related to the Plan, free of charge, you may obtain these documents from Omni Agent Solutions, (the Solicitation Agent") by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.  You may also access from these materials for a fee via PACER at http://www.deb.uscourts.gov/.

---

**ARTICLE X OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE X.J.4 OF THE PLAN CONTAINS A THIRD-PARTY RELEASE.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT THE SOLICITATION AGENT VIA ONE OF THE METHODS SPECIFIED ABOVE.  PLEASE NOTE THAT THE SOLICITATION AGENT MAY NOT PROVIDE LEGAL ADVICE. IF YOU NEED LEGAL ADVICE, PLEASE CONSULT WITH YOUR ATTORNEY.**

---

*[Remainder of Page Intentionally Left Blank]*

Dated: [●], 2021

| | |
|---|---|
| WHITE & CASE LLP | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| Jessica C. Lauria (admitted *pro hac vice*) | Derek C. Abbott (No. 3376) |
| 1221 Avenue of the Americas | Andrew R. Remming (No. 5120) |
| New York, New York 10020 | Paige N. Topper (No. 6470) |
| Telephone:  (212) 819-8200 | 1201 North Market Street, 16th Floor |
| Email:  jessica.lauria@whitecase.com | P.O. Box 1347 |
| | Wilmington, Delaware 19899-1347 |
| – and – | Telephone:  (302) 658-9200 |
| | Email:  dabbott@morrisnichols.com |
| WHITE & CASE LLP | aremming@morrisnichols.com |
| Michael C. Andolina (admitted *pro hac vice*) | ptopper@morrisnichols.com |
| Matthew E. Linder (admitted *pro hac vice*) | |
| Laura E. Baccash (admitted *pro hac vice*) | |
| Blair M. Warner (admitted *pro hac vice*) | |
| 111 South Wacker Drive | |
| Chicago, Illinois 60606 | |
| Telephone:  (312) 881-5400 | |
| Email: mandolina@whitecase.com | |
| mlinder@whitecase.com | |
| laura.baccash@whitecase.com | |
| blair.warner@whitecase.com | |

*Attorneys for the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Rejected Contracts and Unexpired Leases Schedule**

**<u>Exhibit 11</u>**

**Abuse Claim Solicitation Notice and Abuse Survivor Plan Solicitation Directive**

**THIS NOTICE IS NOT A SOLICITATION FOR CONSENTS TO ACCEPT OR REJECT ANY CHAPTER 11 PLAN OF REORGANIZATION FOR THE DEBTORS. VOTES TO ACCEPT OR REJECT ANY CHAPTER 11 PLAN MAY NOT BE SOLICITED UNLESS AND UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT PURSUANT TO SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE.**

**TO INCORPORATE YOUR PREFERRED METHOD OF DISTRIBUTION OF THE SOLICITATION PACKAGES, AS AUTHORIZED BY YOUR CLIENTS, THE DEBTORS REQUEST THAT YOU RETURN THE ENCLOSED ABUSE SURVIVOR PLAN SOLICITATION DIRECTIVE TO THE SOLICITATION AGENT BY APRIL 23, 2021. THIS DIRECTIVE WILL GUIDE THE DEBTORS IN SOLICITING THE VOTES OF YOUR CLIENTS IN THE FUTURE.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

**NOTICE TO ATTORNEYS REPRESENTING ABUSE SURVIVORS OF (I) PROPOSED PROCEDURES FOR SOLICITING VOTES OF HOLDERS OF DIRECT ABUSE CLAIMS TO ACCEPT OR REJECT THE AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, (II) DATE REQUESTED FOR ATTORNEYS TO SUBMIT ABUSE SURVIVOR PLAN SOLICITATION DIRECTIVES, AND (III) OTHER RELATED DEADLINES**

TO:    ALL ATTORNEYS REPRESENTING ABUSE SURVIVORS

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.    On February 18, 2020 (the "<u>Petition Date</u>"), the Boy Scouts of America and Delaware BSA, LLC, as non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "<u>Debtors</u>"), filed voluntary petitions for relief

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

2. On March 1, 2021, the Debtors filed the *Disclosure Statement for the Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 2294] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Proposed Disclosure Statement") for the *Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 2293] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan").[2] Concurrently with the filing of the Disclosure Statement and Plan, the Debtors filed a motion [D.I. 2295] (the "Solicitation Procedures Motion") to (a) approve the Disclosure Statement, (b) establish the Voting Record Date, Voting Deadline, and other related dates in connection with confirmation of the Plan, (c) approve procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan (the "Solicitation Procedures"), which are attached to the proposed order for the Solicitation Procedures Motion as Exhibit 1, (d) approve the form and manner of notice and other related documents as they relate to the Debtors, and (e) grant other related relief. A hearing to consider approval of the Proposed Disclosure Statement is currently scheduled for **April 29, 2021 at 10:00 a.m. (Eastern Time)** (the "Disclosure Statement Hearing").

3. The Solicitation Procedures Motion sets forth the proposed notice and voting procedures applicable to you and your clients who may hold Direct Abuse Claims (as defined in the Plan) against the Debtors that are attributable to, arise from, are based upon, relate to, or result from, in whole or in part, directly, indirectly, or derivatively, Abuse[3] that occurred prior to the Petition Date. The clients you represent who hold Direct Abuse Claims are referred to herein as your "Abuse Survivor Clients." As to your Abuse Survivor Clients, the Debtors are requesting, in advance of the Disclosure Statement Hearing, certain information regarding your preferred method of distribution of the Solicitation Packages that will contain the ballots and other information relevant to your Abuse Survivor Clients as they decide whether to vote to accept or reject the Plan. To incorporate your preferred method of distribution of the Solicitation Packages, as authorized by your clients on the Sexual Abuse Survivor Proofs of Claim, the Debtors request that you complete and return the enclosed Abuse Survivor Plan Solicitation Directive to the Debtors'

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the *Order, Pursuant to 11 U.S.C. § 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-1(e), 3001-1, and 3003-1, (I) Establishing Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, (III) Approving Procedures for Providing Notice of Bar Date and Other Important Information to Abuse Survivors, and (IV) Approving Confidentiality Procedures for Abuse Survivors* [D.I. 695], as applicable.

[3]    "Abuse" means sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, indecent assault or battery, rape, pedophilia, ephebophilia, sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction, or intimidation, any other sexual misconduct or injury, contacts or interactions of a sexual nature, including the use of photography, video, or digital media, or other physical abuse or bullying or harassment without regard to whether such physical abuse or bullying is of a sexual nature, between a child and an adult, between a child and another child, or between a non-consenting adult and another adult, in each instance without regard to whether such activity involved explicit force, whether such activity involved genital or other physical contact, and whether there is or was any associated physical, psychological, or emotional harm to the child or non-consenting adult.

solicitation agent, Omni Agent Solutions (the "Solicitation Agent"), (a) by mail at Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367; or (b) by email at BSAballots@omniagnt.com, **so that it is received by the Solicitation Agent no later than April 23, 2021**, which is the Abuse Survivor Plan Solicitation Directive Deadline.[4]

4.      As explained in further detail in the attachment, the Abuse Survivor Plan Solicitation Directive provides for you to select your preferred method for the Solicitation Agent to solicit the votes of your Abuse Survivor Clients to accept or reject the Plan from **two (2) different solicitation methods**.  While these proposed solicitation methods are designed to streamline and expedite the delivery of information to your Abuse Survivor Clients, increase voter participation, and ensure that holders of Direct Abuse Claims are empowered to make informed and meaningful decisions regarding whether to accept or reject the Plan, each voting decision rests exclusively with each Abuse Survivor Client.  Each known attorney representing holders of Direct Abuse Claims (each, a "Firm") is required to comply with applicable rules and receive informed written consent from its Abuse Survivor Clients.

5.      The Debtors are also distributing to each Firm an encrypted, password-protected USB drive with an Excel spreadsheet that lists the first and last name, claim number, month and year of birth, last four digits of Social Security Number, mailing address, and email address (if available) of each Firm's Abuse Survivor Clients as compiled by the Debtors, with the assistance of their professionals, based on the Debtors' review of the Sexual Abuse Survivor Proofs of Claim by or on behalf of the holders of Direct Abuse Claims in the Chapter 11 Cases (each, a "Client List").  **Your Firm will receive an email at the email address on file in your Abuse Survivor Clients' Sexual Abuse Survivor Proofs of Claim with the access code for the USB drive.  If you do not receive an access code at this email address, please contact the Solicitation Agent at BSAballots@omniagnt.com or 866-907-2721**.

6.      The Debtors ask that you confirm the names, addresses, and (if known) email addresses of your Abuse Survivor Clients as set forth on the Client List.  Please make any necessary additions, subtractions, or other corrections to the Excel spreadsheet provided, and return the Client List in the same electronic format provided by the Debtors' Solicitation Agent no later than Abuse Survivor Plan Solicitation Directive Deadline (April 23, 2021).  To the extent your Firm includes Abuse Survivor Clients who were not originally listed by the Solicitation Agent, you must provide the Solicitation Agent with the Proof of Claim number that corresponds to each such additional Abuse Survivor Client's Direct Abuse Claim.  If the Abuse Survivor Client's Sexual Abuse Survivor Proof of Claim does not indicate that communications regarding such claim may be directed to your Firm, you must also provide written verification from the Abuse Survivor Client(s) that he or she has authorized the Firm to receive the Solicitation Package on his or her behalf.  If such written verification is not supplied by the Firm, the Solicitation Agent will not count the vote for the Abuse Survivor Client(s) in a Master Ballot submitted by such Firm and those Abuse Survivor Client(s) will be solicited by the Direct Solicitation Method.  The Solicitation Agent will endeavor to identify on the Client Lists any conflicting records indicating

---

[4]     The Abuse Survivor Plan Solicitation Directive Deadline may be extended in the Debtors' discretion.

that an individual Abuse Survivor Client may be represented by more than one Firm or has filed duplicative Direct Abuse Claims on account of a single claim.

7.      Pursuant to the proposed Solicitation Procedures, if approved by the Bankruptcy Court, the Solicitation Agent will cause a cover letter and an appropriate Ballot to be mailed in accordance with the instructions set forth on the Abuse Survivor Plan Solicitation Directive.  The cover letter will contain instructions to electronically access the proposed Disclosure Statement (as approved by the Bankruptcy Court), the Plan, and various documents related thereto.  Copies of the Disclosure Statement, the Plan, and the Solicitation Procedures Motion are available for review and download free of charge on the website maintained by the Solicitation Agent at https://omniagentsolutions.com/bsa.  Copies of the Disclosure Statement and the Plan are also available upon request by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.  You may also access these materials for a fee via PACER at http://www.deb.uscourts.gov/.  Responses and objections to approval of the Disclosure Statement, the proposed Solicitation Procedures and other relief sought by the Debtors in the Solicitation Procedures Motion must be filed in accordance with the procedures set forth in the *Notice of Hearing to Consider Approval of Disclosure Statement and Solicitation Procedures for the Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 2298] and served so as to be actually received by the Debtors on or before **April 16, 2021 at 4:00 p.m. (Eastern Time)**.

8.      **If you do not return the Abuse Survivor Plan Solicitation Directive by the Abuse Survivor Plan Solicitation Directive Deadline, or otherwise do not select a solicitation method, the Debtors intend, subject to Bankruptcy Court authorization, to direct the Solicitation Agent to solicit votes to accept or reject the Plan from your Abuse Survivor Clients according to the Direct Solicitation Method described in the proposed Solicitation Procedures and in the enclosed *Abuse Survivor Plan Solicitation Directive*, despite anything to the contrary in the proposed Solicitation Procedures.**  For the avoidance of doubt, the Debtors will request approval from the Bankruptcy Court to solicit the votes of holders of Direct Abuse Claims who are represented by counsel and who do not return the Abuse Survivor Plan Solicitation Directive by the Abuse Survivor Plan Solicitation Directive Deadline via the Direct Solicitation Method, using the communication preferences indicated in such abuse survivors' Sexual Abuse Survivor Proofs of Claim.

9.      If you have questions about completing the Abuse Survivor Plan Solicitation Directive, please contact the Solicitation Agent at BSAballots@omniagnt.com.

Dated: April 5, 2021

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email: mandolina@whitecase.com
          mlinder@whitecase.com
          laura.baccash@whitecase.com
          blair.warner@whitecase.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@morrisnichols.com
          aremming@morrisnichols.com
          emoats@morrisnichols.com
          ptopper@morrisnichols.com

*Attorneys for the Debtors and Debtors in Possession*

**THIS ABUSE SURVIVOR PLAN SOLICITATION DIRECTIVE IS NOT A SOLICITATION FOR CONSENTS TO ACCEPT OR REJECT ANY CHAPTER 11 PLAN OF REORGANIZATION FOR THE DEBTORS.  VOTES TO ACCEPT OR REJECT ANY CHAPTER 11 PLAN MAY NOT BE SOLICITED UNLESS AND UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT PURSUANT TO SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE.**

**TO INCORPORATE YOUR PREFERRED METHOD OF DISTRIBUTION OF THE SOLICITATION PACKAGES, AS AUTHORIZED BY YOUR CLIENTS, THE DEBTORS REQUEST THAT YOU RETURN THIS ABUSE SURVIVOR PLAN SOLICITATION DIRECTIVE TO THE SOLICITATION AGENT BY APRIL 23, 2021. THIS DIRECTIVE WILL GUIDE THE DEBTORS IN SOLICITING THE VOTES OF YOUR CLIENTS IN THE FUTURE.**

## IN THE UNITED STATES BANKRUPTCY
## COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

### ABUSE SURVIVOR PLAN SOLICITATION DIRECTIVE

I hereby direct that distribution of Solicitation Packages in connection with the *Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 2293] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "<u>Plan</u>"), subject to Bankruptcy Court approval of the proposed Solicitation Procedures, be implemented as follows:

**Box 1 ☐ No Solicitation Required**.  I do not represent any Abuse Survivor Clients asserting Direct Abuse Claims against the Debtors.  By signing below, I hereby certify and authorize the Solicitation Agent to remove me from the service or distribution list in the above-captioned Chapter 11 Cases.

**Box 2 ☐ Master Ballot Solicitation Method**.  I certify that (a) I shall collect and record the votes of each of my Abuse Survivor Clients through customary and accepted practices (*i.e.*, written communication) and I have authority to cast votes for each of my Abuse Survivor Clients,

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

or (b) I have the authority under applicable law to vote accept or reject the Plan on behalf of each of my Abuse Survivor Clients, and intend to exercise such authority (and I will provide a valid power of attorney or other written documentation that effect upon request by the Debtors, in their discretion). Accordingly, in lieu of soliciting votes from each of my Abuse Survivor Clients, I will record the votes to accept or reject the Plan for each of my Abuse Survivor Clients on a master ballot (a "Master Ballot") that I will submit to the Solicitation Agent (the "Master Ballot Solicitation Method") in accordance with the proposed Solicitation Procedures. I understand that by electing this Master Ballot Solicitation Method I must meet all applicable standards to receive informed consent from my Abuse Survivor Clients and that I have not added any Abuse Survivor Client to the Master Ballot whose Sexual Abuse Survivor Proof of Claim does not indicate that communication may be sent to my Firm if I have not supplied written verification that the Abuse Survivor Client has authorized my Firm to receive the Solicitation Package on his or her behalf. I understand that, by electing this method, I shall provide the Disclosure Statement, either in electronic format, hard copy, or another format, to my Abuse Survivor Clients.

By signing below, I hereby certify that: (a) I have authority under law and I have duly valid and enforceable authorizations to vote to accept or reject the Plan on behalf of my Abuse Survivor Clients in accordance with my Firm's customary practices; (ii) no Solicitation Packages need to be provided to any of my Abuse Survivor Clients; and (iii) I represent each of the Abuse Survivor Clients set forth on the Excel spreadsheet that lists the claim numbers, names, mailing addresses, email addresses (if available), and other information regarding my Abuse Survivor Clients (the "Client List") that I have received from the Solicitation Agent.

**Box 3 ☐ Direct Solicitation Method**. I hereby direct the Solicitation Agent to send a Solicitation Package (including a Ballot) directly to each of my Abuse Survivor Clients via email addressed to the email address specified on my Firm's Client List (unless otherwise ordered by the Bankruptcy Court) or, where email communications have not been expressly authorized by an Abuse Survivor Client on his or her Sexual Abuse Survivor Proof of Claim or no email address has been provided, via U.S. mail at the street address specified on my Firm's Client List (the "Direct Solicitation Method"). By electing the Direct Solicitation Method, I understand and shall advise my Abuse Survivor Clients that completed Ballots must be submitted to the Solicitation Agent individually by my Abuse Survivor Clients so that they are received by the Voting Deadline in accordance with the proposed Solicitation Procedures.

*[Remainder of Page Intentionally Left Blank]*

By signing below, I hereby certify that I represent each of the Abuse Survivor Clients set forth on the Client List, which I received in connection with this Abuse Survivor Plan Solicitation Directive.

**SIGNATURE:** _____

| | |
|---|---|
| _____ | _____ |
| Name of Attorney | Signature |
| | |
| _____ | _____ |
| Name of Law Firm | Telephone Number |
| | |
| _____ | _____ |
| Street Address | Email Address |
| | |
| _____ | _____ |
| City, State, Zip Code | Date Completed |

<div align="center">*    *    *    *    *</div>

<div align="center"><u>**Instructions for Returning this Abuse Survivor Plan Solicitation Directive**</u></div>

The Debtors are requesting that this Abuse Survivor Plan Solicitation Directive and Client List be returned so that it is received by the Solicitation Agent on or before the Abuse Survivor Plan Solicitation Directive Deadline of **April 23, 2021,**[2] (a) by mail at Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367 or (b) by email at BSAballots@omniagnt.com.

**IF YOU DO NOT RETURN THE ABUSE SURVIVOR PLAN SOLICITATION DIRECTIVE BY THE ABUSE SURVIVOR PLAN SOLICITATION DIRECTIVE DEADLINE, OR OTHERWISE DO NOT SELECT A SOLICITATION METHOD, THE DEBTORS RESERVE THE RIGHT, SUBJECT TO BANKRUPTCY COURT AUTHORIZATION, TO DIRECT THE SOLICITATION AGENT TO SOLICIT VOTES TO ACCEPT OR REJECT THE PLAN FROM YOUR ABUSE SURVIVOR CLIENTS ACCORDING TO THE DIRECT SOLICITATION METHOD DESCRIBED HEREIN AND IN THE PROPOSED SOLICITATION PROCEDURES. FOR THE AVOIDANCE OF DOUBT, THE DEBTORS ARE REQUESTING APPROVAL FROM THE BANKRUPTCY COURT TO SOLICIT THE VOTES OF HOLDERS OF DIRECT ABUSE**

---

[2]    The Abuse Survivor Plan Solicitation Directive Deadline may be extended in the Debtors' discretion.

**CLAIMS WHO ARE REPRESENTED BY COUNSEL AND WHO DO NOT RETURN THIS DIRECTIVE BY THE ABUSE SURVIVOR PLAN SOLICITATION DIRECTIVE DEADLINE VIA THE DIRECT SOLICITATION METHOD, USING THE COMMUNICATION PREFERENCES INDICATED IN SUCH ABUSE SURVIVORS' PROOFS OF CLAIM.**

## Requirements for the Client List

As indicated above, you must the confirm the accuracy of the names, addresses, and (if known) email addresses of your Abuse Survivor Clients set forth on the enclosed Client List. In accordance with the proposed Solicitation Procedures, you must make any necessary additions, subtractions, or other corrections to the spreadsheet(s) provided, and return the Client List in the same electronic format provided to you by the Solicitation Agent no later than the Abuse Survivor Plan Solicitation Directive Deadline. If you add any Abuse Survivor Clients who were not originally listed by the Solicitation Agent, you must provide the Solicitation Agent with the Proof of Claim number that corresponds to each such additional Abuse Survivor Client's Direct Abuse Claim and written verification that such Abuse Survivor Client(s) have authorized you to receive the Solicitation Package on his or her behalf. The Solicitation Agent will endeavor to identify on the Client Lists any conflicting records indicating that an individual Abuse Survivor Client may be represented by more than one Firm or has filed duplicative Direct Abuse Claims on account of a single claim.

Client Lists must be returned so as to be received no later than **April 23, 2021** either (a) by mail at Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367 or (b) by email at BSAballots@omniagnt.com.

If you have any technical questions, please contact the Solicitation Agent at BSAballots@omniagnt.com or 866-907-2721.

---

**Before returning your directive please be sure to:**

**Select one of Box 1, Box 2, or Box 3.**

---

## **Exhibit 12**

**Chartered Organization Notice**

## SUMMARY REGARDING CHARTERED ORGANIZATIONS'
## OPTIONS UNDER THE BSA'S CHAPTER 11 PLAN

On February 18, 2020, Boy Scouts of America (the "BSA") filed for bankruptcy protection in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The BSA has filed a chapter 11 plan of reorganization (the "Plan") which, if confirmed by the Bankruptcy Court, will allow it to exit bankruptcy. Copies of the Plan, together with various supporting documents, may be obtained by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.

This document is intended to assist Chartered Organizations in understanding their rights under the Plan. It is not comprehensive and does not describe every fact, issue, or consideration that may be relevant to a Chartered Organization under the Plan. The Bankruptcy Court has reviewed this document and permitted the BSA to send it to Chartered Organizations, together with the Plan and other related documents to assist Chartered Organizations in their decision as to how the Plan will affect their rights, whether they want to object to provisions of the plan, and, for those Chartered Organizations that filed Proofs of Claim, how they wish to vote on the Plan. The Bankruptcy Court has not endorsed or confirmed the Plan. **You should consult with your legal counsel and read the Plan and Disclosure Statement, including the "Risk Factors" in Article X of the Disclosure Statement, in their entirety. If there are inconsistencies between this document and the terms of the Plan, the Plan governs.**

This document contains the following:

(1)     FAQ regarding the treatment of Chartered Organizations under the Plan;

(2)     an opt-out election form, which a Chartered Organization may use to "opt-out" of becoming a "Participating Chartered Organization" under the Plan (Option #3 described below). **Please read this document, the Disclosure Statement, and the Plan before you decide whether to complete the opt-out election**; and

(3)     a notice of the hearing for the Bankruptcy Court to consider approval of the Plan, which contains important information, including instructions on how Chartered Organizations may object to the Plan.

For those Chartered Organizations that filed Proofs of Claim, a ballot is also enclosed to:

a.  Vote to ACCEPT or REJECT the Plan; and

b.  Consent to or opt out of the broad releases and waivers of claims against the "Released Parties" under the Plan, including the BSA, Local Councils, and Hartford (and any other insurance company which enters into a settlement similar to the settlement with Hartford described below).

### General FAQs

## WHAT IS A CHARTERED ORGANIZATION?

A "Chartered Organization" is any civic, faith-based, educational or business organizations, governmental entities or organizations, other entities or organizations, or groups of individual citizens that are currently or were formerly authorized by the BSA to operate, sponsor or otherwise support one or more Scouting units.

**WILL THE CHOICES THAT A CHARTERED ORGANIZATION MAKES UNDER THE PLAN IMPACT ITS CURRENT RELATIONSHIP WITH THE BSA AND SCOUTING?**

No.  The choices a Chartered Organization makes under the Plan relate only to treatment of historical alleged Abuse Claims that pre-date the BSA's bankruptcy filing.  The vast majority of Abuse Claims are decades old.  Any decision you make under the Plan will not impact your relationship with the BSA and Scouting as it stands today.  *We are asking our Chartered Organizations to make certain choices under the Plan, but the choices that you make will have no impact on your relationship with the BSA and Scouting going forward.  They relate only to handling of historical alleged Abuse Claims.*

**WHAT RIGHTS DOES A CHARTERED ORGANIZATION CURRENTLY HAVE AGAINST THE BSA, LOCAL COUNCILS, AND BSA-PROVIDED INSURANCE?**

Since January 1, 1976, the BSA has included Chartered Organizations as insured parties under its general liability insurance policies.  That is, if a claim is made against a Chartered Organization related to Scouting from any time after January 1, 1976, the Chartered Organization can make a claim against the BSA's general liability insurance policy and potentially receive coverage under that policy (in addition to any insurance policy that the Chartered Organization may have purchased for itself).  Prior to 1976, while the BSA did not include Chartered Organizations as insured parties, many Local Councils purchased insurance policies that included Chartered Organizations as additional insureds.  While we do not have a comprehensive picture of insurance coverage for Chartered Organizations prior to 1976, Local Councils purchased insurance from Insurance Company of North America ("INA/Century"), Hartford, Arrowood and others which may offer protection to Chartered Organizations.  Some Chartered Organizations have asserted that they have rights to pre-1976 BSA insurance on the basis that they are "volunteer leaders" as defined in the insurance policies; the BSA believes that those claims will be disputed by the BSA's insurers and others.

In addition to BSA-provided insurance, Chartered Organizations may have their own insurance coverage that covers an Abuse Claim related to Scouting, and Chartered Organizations may have claims against the BSA or Local Councils for "contribution," "indemnity," or both for an Abuse Claim related to Scouting.  Rights of contribution and indemnity can arise either under a written contract or, in somewhat more limited circumstances, under common law.  In 2013, the BSA adopted a resolution stating that the BSA "shall defend and indemnify Chartered Organizations . . . who act in good faith and against whom claims are asserted based upon [the BSA's] membership standards."  Certain Chartered Organizations assert that this resolution pertained to Abuse Claims.  The BSA disputes these assertions.  Following that BSA resolution, beginning in 2014, indemnification provisions in favor of Chartered Organizations were included in the annual charter agreement between a Chartered Organization and its Local Council.  Chartered Organizations may also have rights against the BSA and Local Councils by operation of law related to claims of Abuse, such as rights of contribution. Claims against the BSA on account of contribution or indemnity for Abuse Claims related to Scouting were required to be filed in the BSA's bankruptcy case on or before November 16, 2020.

**WHAT ARE THE OPTIONS A CHARTERED ORGANIZATION HAS FOR TREATMENT OF CLAIMS AND RIGHTS UNDER THE PLAN?**

The Plan provides a framework for the comprehensive resolution for historical Scouting-related Abuse Claims against the BSA and the Local Councils.  With respect to Chartered Organizations, there are three potential options that a Chartered Organization may choose from.  Each option affects, or may affect: (i) the Chartered Organization's rights in the BSA and Local Council insurance policies which provide protection to Chartered Organizations; (ii) the amount of protection a Chartered Organization may receive from Abuse Claims asserted against the Chartered Organization; (iii) how a Chartered Organization's claims against the BSA and Local Councils are treated; and (iv) if an insurer of a Chartered Organization becomes a Settling Insurance Company,

the Chartered Organization's rights in the Chartered Organization insurance policies which provide protection to Chartered Organizations, but solely to the extent of coverage for Abuse Claims related to Scouting.  Here is a summary of these three options:

*Option #1 – Participating Chartered Organization*: Unless a Chartered Organization affirmatively chooses Option #2 or Option #3 below, the Plan deems a Chartered Organization to be a Participating Chartered Organization.  This provides:

a. **Insurance**:  The Chartered Organization will not have any rights in 1976-forward BSA or Local Council insurance policies and the Plan may assign or otherwise provide for the Settlement Trust to access such insurance rights.  The Chartered Organization will retain whatever rights they previously had (to the extent such rights exist) in pre-1976 insurance policies. This is described in greater detail in the "Insurance Rights" discussion below.  BSA has not sought insurer consent for the partial assignment of coverage and there is a risk that the proposed assignment absent insurer consent might not be effective and/or could void coverage.

b. **Protection from Direct Abuse Claims**:  The Chartered Organization will remain liable for all pre-1976 Direct Abuse claims that are asserted presently or may be asserted in the future.  For 1976-forward abuse claims, abuse victims will not be able to assert claims directly against the Chartered Organization.

c. **Claims against BSA and Local Councils**:  All such claims will be waived, regardless of whether it is a claim that arose before or after January 1, 1976.

d. **Hartford Release**:  The Chartered Organization will release Hartford from insurance- and Abuse-related Claims as provided in the term sheet for the proposed settlement between the BSA and Hartford.

*Option #2 – Contributing Chartered Organization*: Chartered Organizations may negotiate with the BSA and abuse claimant representatives to make a substantial monetary contribution to the Settlement Trust and become full a Contributing Chartered Organization under the Plan.  If they do so, they will receive the same protection from Scouting-related Abuse Claims that the BSA and Local Councils will receive in exchange for their respective monetary and insurance contributions to the Settlement Trust.  This provides:

a. **Insurance**:  The Chartered Organization will not have any rights in any insurance policies purchased by the BSA or the Local Councils, whether before or after January 1, 1976 and the Plan may assign or otherwise provide for the Settlement Trust to access such insurance rights.

b. **Protection from Direct Abuse Claims**:  All Direct Abuse Claims against a Chartered Organization will be "channeled" to the Settlement Trust to the same extent as claims against the BSA and the Local Councils are channeled regardless of whether it is a claim that arose before or after January 1, 1976.  All Scouting-related abuse claims will be channeled, but not abuse claims which were unrelated to the Chartered Organization's participation in Scouting.

c. **Claims against BSA and Local Councils**:  All such claims will be waived, regardless of whether it is a claim that arose before or after January 1, 1976.

***Option #3 – Opt Out***: Chartered Organizations can "opt out" of either Option #1 or Option #2.

a. **Insurance**:  The Chartered Organization will retain rights in BSA and Local Council insurance policies regardless of whether policies were issued before or after January 1, 1976, subject to any sales by the BSA of insurance policies back to its insureds, including Hartford, in which event the rights and interests of Chartered Organizations under those policies will attach to the sale proceeds (or be afforded other adequate protection).  This is described in greater detail in the "Insurance Rights" discussion below.

b. **Protection from Direct Abuse Claims**:  The Chartered Organization will remain liable for all Abuse Claims that are asserted presently or may be asserted in the future, regardless of whether such claims arose before or after January 1, 1976.

c. **Claims against BSA and Local Councils**:  All such claims will be preserved, but they will be channeled to the Settlement Trust.  A more detailed discussion of the Settlement Trust, the Settlement Trustee and the treatment of Chartered Organizations' Indirect Abuse Claims under the Plan is described in the Settlement Trust discussion below.

d. **Hartford Settlement**:  The proposed Hartford settlement will release Hartford from any obligations Hartford has to Chartered Organizations under the Hartford insurance policies issued to the BSA.

## DOES A CHARTERED ORGANIZATION GET TO VOTE ON THE PLAN?

Only those Chartered Organizations that filed an Indirect Abuse Claim (or other Claim) have the right to vote on the Plan.  The overwhelming majority of Chartered Organizations that filed claims in the BSA's bankruptcy filed Indirect Abuse Claims.  For those Chartered Organizations that did, they will need to fill out the CLASS 9 BALLOT to vote to ACCEPT or REJECT the Plan.  Regardless of whether a Chartered Organization casts a ballot for or against the Plan, it must independently decide which of the three Plan Options described above that it wishes to proceed under.  Chartered Organizations entitled to vote will also be asked whether to consent or opt out of the broad releases and waivers of claims against the "Released Parties" under the Plan, including the BSA, Local Councils, and Hartford (and any other insurance company which enters into a settlement similar to the settlement with Hartford described below).

## INSURANCE RIGHTS – WHAT WILL HAPPEN TO A CHARTERED ORGANIZATION'S RIGHTS UNDER BSA OR LOCAL COUNCIL INSURANCE POLICIES UNDER THE PLAN?

a. **Insurance Rights against Hartford and the proposed Hartford Settlement**.  The Plan proposes a settlement under which the BSA will sell back to Hartford of all of the liability insurance policies issued by Hartford to the BSA that cover Abuse Claims.  Hartford issued significant amounts of insurance to the BSA under which Chartered Organizations have rights.  Specifically, Hartford issued to the BSA primary policies for 1976 and 1977 and excess policies in 1981 and 1982.  If the Bankruptcy Court confirms the Plan and approves the sale of the insurance policies that Hartford issued to the BSA, the effect will be that Hartford will buy back the BSA insurance policies "free and clear" of any and all interests of any entity (including Chartered Organizations) in those policies, with the result being that any rights and interests of Chartered Organizations under those policies will attach to the sale proceeds (or be afforded other adequate protection), but the Chartered Organization will not be able to assert those rights or interests against Hartford.  A list of the policies that Hartford is buying back and the years those policies cover can be found at Docket No. 6210-1, Exhibit A.  Hartford also issued policies to the Local Councils which may also cover Chartered Organizations.  The proposed Hartford settlement requires that the BSA and Local Councils "secure an assignment to the

4

[Settlement Trust] of, or otherwise resolve to [Hartford's] satisfaction, Chartered Organizations' rights and claims to coverage" under insurance policies issued by Hartford, and that the BSA and abuse claimant representatives will use their best efforts to settle with the Chartered Organizations. The BSA, Local Councils, Hartford and the abuse claimant representatives are continuing to evaluate the how to satisfy the foregoing conditions and cannot yet disclose how or whether the condition will be satisfied without Chartered Organizations' consent.

b.  **Other Insurance Rights**.

i.  **For Post-1976 Insurance Rights** - If a Chartered Organization accepts being deemed a Participating Chartered Organization (Option #1) or negotiates a settlement to become a Contributing Chartered Organization (Option #2), the Chartered Organization will waive all rights in BSA or Local Council insurance policies in exchange for the protections described above for Option #1 or Option #2.

If a Chartered Organization chooses Option #3 and does not become a Participating Chartered Organization or a Contributing Chartered Organization, it will retain rights in post-1976 insurance policies purchased by the BSA and the Local Councils, with the exception of the Hartford policies as described above.

The Chartered Organization may also not have rights under policies issued by the BSA's and the Local Councils' other insurance providers as the BSA may enter settlements with those carriers that may limit or remove the rights of Chartered Organizations under such policies and their own insurance policies with such insurers and/or claims of Chartered Organizations against such insurers.

ii.  **For Pre-1976 Insurance Rights** – All Chartered Organizations that elect either Options #1 or #3 will maintain their rights in pre-1976 BSA and Local Council insurance policies, with the exception of the Hartford policies as described above. The Chartered Organization may also not have rights under policies issued by the BSA's and the Local Councils' other insurance providers as the BSA may enter settlements with those carriers that may limit or remove the rights of Chartered Organizations under such policies and their own insurance policies with such insurers and/or claims of Chartered Organizations against such insurers.

If a Chartered Organization negotiates a settlement to become a Contributing Chartered Organization (Option #2), the Chartered Organization will waive all rights in BSA or Local Council insurance policies in exchange a release of all Scouting-related Direct Abuse Claims.

## THE SETTLEMENT TRUST, THE TRUSTEE AND TREATMENT OF CHARTERED ORGANIZATIONS' CLAIMS

### What is the Settlement Trust?

The Settlement Trust is established under the Plan to collect settlement proceeds from various parties— including the $208 million (assuming a January 31, 2022 emergence) being contributed by the BSA and $600 million being contributed by Local Councils as set forth in their letters of intent (the form of which is attached hereto), in addition to the assignment of their respective insurance rights—and to liquidate, process and pay Direct Abuse Claims and Indirect Abuse Claims in accordance with "Trust Distribution Procedures" agreed to by the BSA, Local Councils and attorneys for Direct Abuse Claimants. Chartered Organizations were not involved

developing the Trust Distribution Procedures even though they will govern the payment of Chartered Organizations' claims.

**Who is the Settlement Trustee?**

The proposed trustee is Eric Green. With the approval of the BSA, Mr. Green was chosen by the attorneys representing Direct Abuse Claimants and the Future Claims Representative, who is a fiduciary chosen by the BSA to look out for the interests of abuse claimants who may come forward in the future primarily due to their being minors at the time of the bankruptcy filing. Earlier in the bankruptcy case, the BSA sought the appointment of Mr. Green as a mediator in the bankruptcy cases, and certain insurers objected on the basis that among other things, Mr. Green must be disqualified because the Future Claimants' Representative or his law firm, have represented Mr. Green in his capacity as future claimants' representative in certain mass-tort cases. More detail regarding Mr. Green's connections with the BSA's counsel, abuse claimant representatives and the Future Claimants' Representative can be found at Exhibit H to the Disclosure Statement. Chartered Organizations were not consulted about the appointment of Mr. Green even though he will be a fiduciary to Chartered Organizations that have Indirect Abuse Claims.

**What are the Trust Distribution Procedures and will Chartered Organizations receive a recovery on Indirect Abuse Claims?**

Only Chartered Organizations that elect to Opt Out under Option #3 will retain their Indirect Abuse Claims. The Trust Distribution Procedures are the guidelines that the Settlement Trustee must follow in evaluating and deciding to pay Direct and Indirect Abuse Claims. For a Chartered Organization to receive payment on an Indirect Abuse Claim:

1. The Claim must have been filed by November 16, 2020. Claims that arose before the BSA's bankruptcy filing on February 18, 2020 and that were filed after November 16, 2020 are not eligible to receive compensation under the Trust Distribution Procedures even if the Chartered Organization did not know of a Scouting-related Abuse Claim against it until after that date.

2. The Settlement Trustee, not the Bankruptcy Court, must be satisfied that the Chartered Organization's claim cannot be disallowed under the Trust Distribution Procedures and/or applicable provisions of the Bankruptcy Code that provide for such disallowance.

3. The Chartered Organization must have paid in full the claim of the survivor asserting the Direct Abuse Claim against the Chartered Organization.

Additionally, the Settlement Trust will not pay defense or other costs that the Chartered Organization may be entitled to assert as part of its claim.

**WHAT HAPPENS TO CHARTERED ORGANIZATIONS FOR DIRECT ABUSE CLAIMS AGAINST CHARTERED ORGANIZATIONS THAT ARE NOT CHANNELED TO THE SETTLEMENT TRUST?**

Chartered Organizations under Options #1 and #3 will remain liable for Direct Abuse Claims asserted against them. For Option #1 – Participating Chartered Organizations, this will be all such claims prior to January 1, 1976. For Option #3 – Opt Out, this will be for all Direct Abuse Claims against the Chartered Organization.

For those claims, survivors of abuse will retain whatever rights they have under state law against the Chartered Organization and can assert those rights in the court system. The BSA and Local Councils will no longer defend and indemnify Chartered Organizations, but under: (1) Option #1, the Chartered Organizations will

retain whatever rights they previously had in the pre-1976 BSA and Local Council insurance policies (with the exception of BSA policies issued by Hartford or other carriers with which the BSA enters into settlements), and (2) Option #3, the Chartered Organization will retain all rights in both the pre- and post-1976 BSA and Local Council insurance policies (with the exception of BSA policies issued by Hartford or other carriers with which the BSA enters into settlements). It will be the responsibility of the Chartered Organizations to defend themselves against such claims and pay any claims for which the Chartered Organization is found liable.

## DO CHARTERED ORGANIZATIONS AUTOMATICALLY RECEIVE ANY PROTECTIONS FROM ABUSE CLAIMS?

Yes. Any holder of a Direct Abuse Claim (*i.e.*, a person who claims to have been abused) may choose to receive a one-time payment of $3,500 from the Settlement Trust without the need to go through the more extensive vetting process that the Settlement Trustee uses for all other Direct Abuse Claims. This $3,500 payment is referred to as an "Expedited Distribution." Anyone that chooses to receive an Expedited Distribution automatically releases all Chartered Organizations with respect to that Abuse Claim.

Chartered Organizations are **_not_** required to pay anything to receive the benefits of this release. The release will be automatic and in favor of all Chartered Organizations. And Chartered Organizations will also still receive the benefit of this release even if they elect to "opt out" of being a "Participating Chartered Organization" (discussed immediately below). In other words, if the Plan is confirmed, **_all_** Chartered Organizations will receive the benefit of this release from those who elect to receive the Expedited Distribution regardless of whatever else the Chartered Organization chooses to do under the Plan. We do not yet know how many of the approximately 82,000 persons who filed Direct Abuse Claims people will elect to take an Expedited Distribution.

## OTHER THAN THE RELEASE RELATED TO THE EXPEDITED DISTRIBUTION, WHAT OTHER PROTECTIONS ARE AVAILABLE TO CHARTERED ORGANIZATIONS UNDER THE PLAN?

In addition to the release for Expedited Distributions, Chartered Organizations may be able to reduce any judgment against them by the amount of the BSA's or a Local Council's liability. For example, if the BSA and a Local Council would have been liable for 50% of damages for an act of Abuse, a Chartered Organization may be able to reduce any judgment against it by 50%, depending on state law. The Plan requires that this "Judgment Reduction" provision be brought to the attention of any state court that is adjudicating a claim against a Chartered Organization so that it can consider whether a judgment reduction is appropriate.

In addition, as discussed above, a Chartered Organization will have three options for how to address any other Scouting-related Abuse Claims it may face. The method by which a Chartered Organization selects Options #1, #2 and #3 are discussed below.

## HOW DOES THE PLAN TREAT INFORMATION IN THE POSSESSION OF BSA OR THE LOCAL COUNCILS IN WHICH CHARTERED ORGANIZATIONS MAY HAVE A COMMON INTEREST?

The treatment of privileged information generated in the defense of claims in which Chartered Organizations may have a common interest is still under discussion.

## OPTION #1 FAQ

**HOW DOES A CHARTERED ORGANIZATION SELECT OPTION #1?**

Unless a Chartered Organization is a debtor in its own bankruptcy case, each Chartered Organization will *automatically* be deemed to select Option #1 *unless* it:

- completes and returns the opt-out election form attached hereto; or

- objects to confirmation of the Plan.

If a Chartered Organization is itself in bankruptcy, it will need to advise the BSA in writing if it wants to select Option #1. If your Chartered Organization is in bankruptcy and wants to select Option #1, information on how to select Option #1 is available by having your counsel contact the BSA's counsel at BSA-COInquiries@whitecase.com.

## OPTION #2 FAQ

**How does a Chartered Organization obtain the protections afforded by Option #2?**

Under Option #2, a Chartered Organization receives protection from Scouting-related Abuse Claims. It can only receive this protection if it makes a negotiated monetary contribution to the Settlement Trust. If your Chartered Organization is interested in considering Option #2, you should contact the BSA, which can facilitate these negotiations. You may contact the BSA at the following email address [●] or have your counsel contact the BSA through its counsel at the following email address: BSA-COInquiries@whitecase.com.

**If a Chartered Organization pursues Option #2, what Abuse Claims will it be protected from under the Plan?**

Chartered Organizations that negotiates a settlement under Option #2 will receive protections under the Plan from any Scouting-related Abuse Claim that occurred prior to February 18, 2020, which is the day that the BSA filed for bankruptcy. A Chartered Organization will not receive protections from abuse claims that a survivor asserts are unrelated to Scouting.

**How does Option #2 differ from Option #1?**

The primary difference between Option #2 and Option #1 is that, under Option #2, the Chartered Organization must make a substantial monetary contribution to the Settlement Trust and, in exchange, will receive full protection from Scouting-related Abuse Claims regardless of when the claims arose. Under Option #1, the Chartered Organization only receives a release for Scouting-related Abuse Claims alleged to have first occurred on or after January 1, 1976.

## OPTION #3 FAQ

**What is Option #3?**

Option #3 is the option available to Chartered Organizations if they do not want Option #1 or Option #2. Option #3 allows a Chartered Organization to retain the same BSA- and Local Council- provided insurance rights that it had when the BSA filed for bankruptcy (and retains today), subject to potential sale of the BSA's and the Local Councils' insurance policies back to their insurers, as addressed above.

**How does a Chartered Organization select Option #3?**

A Chartered Organization may selection Option #3 by either filling out and returning the Opt-Out Election Form enclosed with this package on or prior to the date of the hearing to confirm the Plan, or it may selection Option #3 by filing an objection to the Plan with the Bankruptcy Court.  Any Chartered Organization that does not do either will be deemed to be a Participating Chartered Organization under Option #1.

## **OPT-OUT ELECTION FORM**

**(Attached)**

> **THIS OPT-OUT ELECTION FORM IS NOT A BALLOT OR A SOLICITATION OF YOUR VOTE TO ACCEPT OR REJECT THE PLAN. IF YOU ARE ELIGIBLE TO VOTE ON THE PLAN, YOU ARE RECEIVING SEPARATE SOLICITATION PACKAGE MATERIALS.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

## PARTICIPATING CHARTERED ORGANIZATION OPT-OUT ELECTION FORM

Pursuant to Article V.S.1 of the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (the "Plan"), you are entitled to "opt out" of being treated as a Limited Protected Party[2] under the Plan if you (1) object to Confirmation of the Plan pursuant to the procedures set forth in the *Notice of Hearing to Consider Confirmation of Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* or (2) complete and submit this Opt-Out Election Form on or before **January 7, 2022**, which is the deadline to object to Confirmation of the Plan.[3]

**If you would like to be treated as a Limited Protected Party under the Plan, you do not need to need to complete or return this Opt-Out Election Form. Limited Protected Party status is the default option under the Plan if you take no action.**

> ☐ **My Chartered Organization elects not to be treated as a Participating Chartered Organization/Limited Protected Party under the Plan**
>
> **IF OPTING OUT, COMPLETE THE FOLLOWING PAGE**

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

[3]  No Chartered Organization that is a debtor in bankruptcy as of the Confirmation Date shall be treated as a Participated Chartered Organization unless it advises Debtors' counsel in writing that it wishes to make the Participating Chartered Organization Insurance Assignment.

| | |
|---|---|
| Name of Chartered Organization: | _____ |
| Printed Name and Title | _____ |
| Signature: | _____ |
| Address: | _____ |
| | _____ |
| | _____ |
| Date: | _____ |

If you elect to opt out of treatment as a Limited Protected Party under Article V.S.1 of the Plan, please complete this form and return it by email submission or first-class mail so that it is received on or before **January 7, 2022** at one of the following:

| **If by Email Submission:** | **If by standard or overnight mail or personal delivery:** |
|---|---|
| **BSACOoptout@OmniAgnt.com** | **BSA Chartered Organization Opt-Out Election Form c/o Omni Agent Solutions 5955 De Soto Avenue, Suite 100 Woodland Hills, CA 91367** |

## **CONFIRMATION HEARING NOTICE**

**(Attached)**

**FORM OF LOCAL COUNCIL LETTER OF INTENT**

**(Attached)**

## **Exhibit 13**

**Abuse Survivor Plan Summary**

## PLAN SUMMARY AND FREQUENTLY ASKED QUESTIONS

**THIS PLAN SUMMARY HAS BEEN PREPARED BY THE FUTURE CLAIMANTS'
REPRESENTATIVE AND COALITION OF ABUSED SCOUTS FOR JUSTICE
AND PROVIDES INFORMATION REGARDING THE PLAN CONFIRMATION
(APPROVAL) PROCESS AND THE PLAN PROPOSED BY THE BOY SCOUTS**

On February 18, 2020, the Boy Scouts of America ("BSA") and Delaware BSA, LLC (together, the "Boy Scouts" or the "Debtors") filed for bankruptcy protection in the Bankruptcy Court.

On April 24, 2020, the Court entered an order appointing James L. Patton, Jr., the Future Claimants' Representative (the "FCR"), to represent the interests of holders of future childhood sexual abuse claims for past abuse that may be asserted against the Debtors.[1]

On July 24, 2020, the Coalition of Abused Scouts for Justice (the "Coalition"), filed a notice of appearance in the Chapter 11 Cases. The Coalition comprises more than 18,000 sexual abuse survivors who have submitted proofs of claim against the Boy Scouts and signed affirmative consents to being a part of the Coalition, as well as law firms that have filed statements with the Bankruptcy Court that they represent approximately 60,000 sexual abuse survivors.

On September 14, 2021, the Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company and Navigators Specialty Insurance Company (collectively "Hartford"), the Debtors, the Coalition, the FCR, and the Ad Hoc Committee of Local Councils entered into a settlement (the "Hartford Settlement").

On September 14, 2021, The Church of Jesus Christ of Latter-day Saints, a Utah corporation ("TCJC"), the Debtors, the Coalition, the FCR, and the Ad Hoc Committee of Local Councils entered into a settlement (the "TCJC Settlement").

Based on the resolution with the Coalition, the FCR, and the Ad Hoc Committee of Local Councils of Boy Scouts of America (the "Ad Hoc Committee of Local Councils"), Hartford, and TCJC, the Debtors filed their *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. [●]] (the "Plan").[2] The Bankruptcy Court has authorized the Boy Scouts to send the Plan to survivors and other creditors for voting. ***The Coalition and the FCR have concluded that, given all the circumstances of the case, the Plan is fair, in the best interests of survivors and other creditors, and should be approved. We encourage you to vote to __accept__ the Plan.***

---

[1] A "future" claim is one in which the survivor as of the Petition Date (February 18, 2020) (a) had not attained the age of eighteen (18) years of age or (b) was not aware of the sexual abuse as a result of "repressed memory," if such concept is recognized by the highest appellate court of the state or territory where such claim arose.

[2] All capitalized terms not otherwise defined herein shall be given the meanings ascribed to them in the Plan or the exhibits to the Plan.

**PLAN SUMMARY**

This summary is provided as an overview and is not meant to provide all of the information survivors should rely on when considering whether to vote to accept or reject the Plan. You, along with your counsel, are encouraged to read the Plan and Disclosure Statement when deciding how to vote. To the extent that any discrepancies exist between the summary described herein and the terms of the Plan, the Plan shall govern.

## THE PLAN CONFIRMATION PROCESS

The Bankruptcy Court overseeing the Boy Scouts bankruptcy case must decide whether or not to approve the Plan. The Bankruptcy Court will take into consideration the votes of survivors and other creditors and whether all the other requirements of the Bankruptcy Code have been satisfied. If the Bankruptcy Court finds that all the legal requirements are satisfied, the Bankruptcy Court will approve or "confirm" the Plan.

If the Plan is approved, the Boy Scouts will exit bankruptcy and the responsibility of the Boy Scouts, Local Councils and TCJC to address or pay the Scouting-related sexual abuse claims (the "Abuse Claims") against them will be transferred to a settlement trust (the "Settlement Trust") that will oversee the review and payment of Abuse Claims. The Plan and Disclosure Statement are included with this summary.

As part of the package that includes this Plan Summary, the Debtors have distributed or provided electronic access to you, or your counsel, the following documents, which, with this Plan Summary are referred to as the "Solicitation Package."

- Cover letter describing the contents of the Solicitation Package and instructions to obtain access, free of charge, to the Plan, the Disclosure Statement, and the Solicitation Procedures Order via https://omniagentsolutions.com/bsa-SAballots, and urging holders of Claims in the Voting Classes to vote to accept the Plan.

- Notice of hearing that will provide the date(s) and time(s) that the Bankruptcy Court will consider approval of the Plan.

- A copy of the Disclosure Statement (and all of its exhibits), including the Plan to the extent such exhibits are filed with the Bankruptcy Court before the Solicitation Date), which is also available via https://omniagentsolutions.com/bsa-SAballots.

- A copy of the "Solicitation Order," that approved the Disclosure Statement and the voting procedures including the Solicitation Procedures, which is also available via https://omniagentsolutions.com/bsa-SAballots.

- Ballot with return instructions (and a return envelope, as applicable).

- Any other materials ordered by the Bankruptcy Court to be included as part of the Solicitation Package.

As part of the Solicitation Package you or your counsel will receive a Ballot to vote to accept or reject the Plan.[3]  After the returned Ballots are counted, the Bankruptcy Court will conduct the hearing to determine whether to approve the Plan.

**HOW TO VOTE**.  You or your counsel will receive a Ballot with instructions that explain how to vote.  If you are represented by counsel, consult your attorney regarding the appropriate method to vote.  If you have questions about the voting materials, please (a) call the toll-free restructuring hotline at (866) 907-2721; (b) visit the Debtors' restructuring website at https://omniagentsolutions.com/BSA; (c) write to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367; or (d) email BSAballots@omniagnt.com.

**YOUR VOTE COUNTS**.  **You have the right to accept or reject the Plan if you (or your attorney on your behalf) filed a timely claim against the Boy Scouts.  Ballots must be RECEIVED by DECEMBER 14, 2021 at 4:00 p.m. (Eastern Time),** to be counted. Ballots can be submitted electronically through the E-Ballot Platform at https://omniagentsolutions.com/bsa-SAballots or delivered by mails by sending to:

<div align="center">

Boy Scouts of America Ballot Processing
c/o Omni Agent Solutions
5955 De Soto Avenue, Suite 100
Woodland Hills, CA 91367

</div>

## DESCRIPTION OF THE PLAN

- **Payment of Abuse Claims by the Settlement Trust**

Under the Plan, the Debtors will fund a Settlement Trust.  The Settlement Trust will assume the liability for the Abuse Claims.  As set forth below, the Debtors and the Local Councils are making contributions to the Settlement Trust.  These contributions are not the same thing as the Debtors' liability or obligation to pay Abuse Claims.  The Settlement Trustee will liquidate the Settlement Trust's assets which includes the contributions being made by the Debtors, the Local Councils, Hartford and TCJC.  The Settlement Trust will make distributions to survivors in accordance with the Trust Distribution Procedures (as discussed below).  These distributions are also not the same thing as the Debtors' liability or obligation to pay Abuse Claims.  However, the distributions will be based on the allowed value of the Abuse Claims, as determined under the Trust Distribution Procedures.

- **The Plan Incorporates Resolutions with Boy Scouts, Local Councils, Hartford, and TCJC**

As noted above, the Boy Scouts, Local Councils, Hartford, TCJC, Coalition and FCR reached settlements.  The Plan includes these settlements, which provide for contributions of

---

[3] If you indicated on your Proof of Claim form that your counsel may be contacted regarding your claim and your counsel indicated to the Debtors that it would facilitate your vote on the Plan on your behalf, your Ballot, along with the Solicitation Package, will be sent to your counsel who will facilitate your vote.  Please contact your counsel to be sure that your vote is properly reflected by your counsel on the ballot submitted.

money and other property from the Boy Scouts, Local Councils, Hartford, and TCJC and puts in place a framework for potential future settlements with other parties such as Insurance Companies and Chartered Organizations.  Chartered Organizations are the over 40,000 secular and religious entities (such as TCJC) that support the Scouting mission of the Boy Scouts by, among other things, sponsoring local troops.  Some or all of the Chartered Organizations may be subject to liability associated with their relationship with the Boy Scouts.

- **Money and Property from the Boy Scouts Will Be Transferred to the Settlement Trust to Pay Survivors**

Under the Plan, the Boy Scouts will transfer assets valued at approximately $220 million to the Settlement Trust, assuming an Effective Date of December 31, 2021.  The Boy Scouts' contribution to the Settlement Trust includes cash and investments (estimated at $60 million, subject to adjustment based on timing of emergence and performance of the Debtors through emergence), the cash sale proceeds from Scouting University ($1.902 million), artwork (valued at $59 million), oil and gas interests (valued at $7.6 million), a warehouse and distribution center (valued at $11.6 million), an $80 million note to be paid over approximately 10 years or less, all rights to proceeds and claims relating to the Boy Scouts' insurance for Abuse Claims, and all causes of action relating to Abuse Claims (including claims for contribution or indemnification against a perpetrator).  There will be costs associated with the sale of the artwork, oil and gas interests, and the warehouse and the value achieved in the sale may be more or less than the estimates.  As a result, the proceeds from the sale or liquidation of these assets could be different than the face amount.

- **Money and Property from Local Councils Will Be Transferred to the Settlement Trust to Pay Survivors**

Under the Plan, if certain conditions are met, $500 million of money and property will be transferred to the Settlement Trust from certain Local Councils to pay Abuse Claims.  In addition, a special-purpose entity will issue a note worth up to $100 million to the Settlement Trust to pay Abuse Claims.  The special-purpose entity will make payments on the $100 million note from funds contributed by Local Councils.  The $500 million will be composed of at least $300 million in cash plus certain real properties such as camps and scout centers with an appraised value of $200 million less any excess of cash over $300 million.  In addition, the Local Councils' rights and claims relating to the Boy Scouts' and Local Councils' applicable insurance will be transferred to the Settlement Trust.

All Local Councils have signed letters of intent that are, among other things, contingent on acceptable resolution of the Plan's treatment of Chartered Organizations.  As of now, the Local Councils have not confirmed whether they are satisfied with the Plan's current treatment of Chartered Organizations.  Accordingly, whether any individual Local Council will make the contribution on Exhibit C is currently uncertain.  If, for any reason, Local Councils do not collectively contribute $500 million in money and property, then no Local Council will be a Protected Party, and all may still be sued by survivors.

- **The Contribution from the Hartford Settlement Will Be Transferred to the Settlement Trust to Pay Survivors**

In accordance with the Hartford Settlement, Hartford will contribute $787 million to the Settlement Trust, $137 million to be available immediately to the Settlement Trust on the Effective Date of the Plan and $650 million to be held in escrow until the order confirming the Plan is final and non-appealable.  In exchange for the contribution, Boy Scouts will sell to Hartford its insurance policies and Hartford will receive releases with respect to Abuse Claims in accordance with the Plan.  Likewise, Hartford will benefit from the Channeling Injunction as a Protected Party.  Hartford's contribution is conditioned on Hartford's satisfaction with the Plan's treatment of the rights of Chartered Organizations with respect to Hartford Insurance Policies.

- **Contributions from the TCJC Settlement Will Be Transferred to the Settlement Trust to Pay Survivors**

In accordance with the TCJC Settlement, TCJC will contribute $250 million to the Settlement Trust.  These funds will be held in escrow until the order confirming the Plan is final and non-appealable.  These funds will be allocated only among the Abuse Claims that could have been satisfied from TCJC absent the Plan's discharge and channeling injunction.  Additionally, TCJC will contribute its rights to coverage for Abuse Claims under insurance policies issued to Boy Scouts or the Local Councils under which it is an insured, and other insurance rights related to Abuse Claims.  In exchange for its contributions, TCJC will receive releases with respect to Abuse Claims and become a Contributing Chartered Organization in accordance with the Plan. As a Contributing Chartered Organization, TCJC will benefit from the Channeling Injunction as a Protected Party.

- **Contributions of Insurance Rights from Participating Chartered Organizations Will Be Transferred to the Settlement Trust to Pay Survivors**

In accordance with the Plan, all Chartered Organizations (other than TCJC) will assign their rights to coverage for Abuse Claims under insurance policies issued to the Boy Scouts or the Local Councils with policy periods on or after January 1, 1976, and which name Chartered Organizations as insureds, *unless* that Chartered Organization objects to confirmation of the Plan or informs Boy Scouts' counsel in writing that it does not wish to assign its insurance rights (a "Participating Chartered Organization").  In exchange for its contribution, the Participating Chartered Organizations (other than TCJC) will receive releases with respect to Abuse Claims arising on after January 1, 1976, and become a Limited Protected Party in accordance with the Plan.  Participating Chartered Organizations will benefit from the Channeling Injunction as a Limited Protected Party with respect to Abuse Claims arising from abuse that first occurred on or after January 1, 1976.

- **Depending on the value and availability of insurance, the Settlement Trust could end up with substantially more assets to pay claimants than the enumerated $1.857 billion in this summary**

As noted above, the Plan provides that the Boy Scouts and the Local Councils will contribute all of their rights to proceeds and claims under the insurance policies that apply to the

Abuse Claims to the Settlement Trust. If such contribution is approved by the Court, the Settlement Trust will either submit Abuse Claims to the Insurance Companies (other than Hartford) for payment on such Abuse Claims, enter into settlements with Insurance Companies (other than Hartford) that will bring in cash to the Settlement Trust for the benefit of survivors, or litigate with Insurance Companies (other than Hartford) to enforce their obligations under the policies. The value of these insurance assets is uncertain, and they could be worth substantially more or substantially less than the $1.857 billion that the Boys Scouts, the Local Councils, TCJC, and Hartford are collectively expected to transfer to the Settlement Trust.

Although the BSA and Local Councils believe that Local Council and Chartered Organization insurance rights or policy proceeds can be transferred to the Settlement Trust, the insurers have asserted numerous coverage defenses. For this reason the value of the insurance rights being assigned to the Settlement Trust is speculative and uncertain.

- **Survivors May Continue to Pursue Claims Against Certain Chartered Organizations, But May Not Sue Boy Scouts, Local Councils, Settling Chartered Organizations or Insurance Companies**

The Plan stops survivors from suing the Boy Scouts, the Local Councils (if they collectively make the $500 million Local Council Contribution as specified above), TCJC, and Hartford (if Hartford is satisfied with the Plan's treatment of Chartered Organizations' rights under Hartford insurance policies) because they settled and are what is called a "Protected Party" under the Plan. The Plan stops survivors from suing Insurance Companies because the insurance policies are protected assets of the Settlement Trust, and the funds recovered from insurers will be equally available to all survivors through the Trust. Participating Chartered Organizations (other than TCJC) can be sued by survivors who have not elected the Expedited Distribution option described below for Abuse Claims arising before January 1, 1976, because those Participating Chartered Organizations have not settled and are only a "Limited Protected Party" under the Plan. If a Chartered Organization settles in the future, it will become a Protected Party and that would mean that survivors could no longer sue it for any Abuse Claim, regardless of when it arose. Instead, the amounts collected in the settlement would be paid to the Settlement Trust and used to pay Abuse Claims. Specifically, further settlements with Insurance Companies or with individual Chartered Organizations before or after the Plan's Effective Date could add some or all Chartered Organizations as Protected Parties and could prevent suits by survivors related to scouting activities. There is a chart that helps explain this in the FAQ portion of this document.

Finally, if a Chartered Organization is in chapter 11 or informs the Boy Scouts that it does not wish to have its insurance rights transferred to the Settlement Trust, it will receive no protections from the Bankruptcy Court and may be sued by survivors who have not elected the Expedited Distribution option described below because they have not settled. If more Chartered Organizations settle in the future, each would become a Protected Party and that would mean that survivors could no longer sue it. Instead, the amounts collected in the settlement would be paid to the Settlement Trust and used to pay Abuse Claims. Specifically, further settlements with Insurance Companies or with individual Chartered Organizations before or after the Plan's Effective Date could add some or all Chartered Organizations as Protected Parties and could

prevent suits by survivors related to scouting activities.  There is a chart that helps explain this in the FAQ portion of this document.

***It is important to consult with your attorney if you believe you have a claim against, and are considering suing, a Chartered Organization because the issues are very complicated.***

- **Youth Protection**

The Plan also obligates the Boy Scouts to continue to improve on its youth protection practices by taking the following steps: (i) form a Child Protection Committee consisting of survivors and members of the Boy Scouts and Local Councils, (ii) implement an analysis of its current Youth Protection Program, (iii) work with the Child Protection Committee and an unaffiliated expert in the prevention of youth sexual abuse to develop and recommend improvements to the Youth Protection Program, and (iv) work with the Child Protection Committee to consider a protocol for the review and publication of information contained in the Boy Scouts' Volunteer Screening Database and Rosters for those credibly accused of abuse while involved with the Boy Scouts.

- **Trust Distribution Procedures**

The Boy Scouts and the Coalition and the FCR have negotiated procedures for the efficient review and payment of the approximately 82,500 non-duplicative, timely claims.  The procedures are called "Trust Distribution Procedures" or "TDP."  The TDP will provide for the submission of additional information about your claim and the value of your individual Abuse Claim will be determined in accordance with the TDP based on a "claims matrix," which means being assigned a dollar amount based on the following guiding principles:

1.    Abuse Claim eligibility criteria;

2.    proof requirements;

3.    administrative transparency;

4.    a review and evidentiary process that requires the Settlement Trustee to determine allowed claim amounts;

5.    prevention and detection of any fraud; and

6.    independence of the Settlement Trust and Settlement Trustee.

The procedures set forth in the TDP are described in more detail below.

- **Channeling Injunction**

In exchange for the contributions to the Settlement Trust and other consideration provided under the Plan, the Court will issue a permanent channeling injunction (a) releasing, among others, the Boy Scouts, the newly Reorganized BSA, Contributing Local Councils, Contributing Chartered Organizations (*e.g.*, TCJC), Participating Chartered Organizations, and

Insurance Companies that contribute to the Settlement Trust (*e.g.*, Hartford) (collectively, the "Protected Parties"), from Abuse Claims; (b) transferring responsibility for Abuse Claims against such parties to the Settlement Trust, to be processed and paid under the TDP; and (c) barring Holders of Abuse Claims from pursuing the Protected Parties on account of the Abuse Claims. This injunction is an implementation of the settlement discussed above.  In addition, as described above, the Plan provides for a separate injunction barring direct claims of survivors against Insurance Companies.

## DESCRIPTION OF THE SURVIVOR CLAIM DETERMINATION AND PAYMENT PROCESS[4]

There are three options for survivors to establish the value of their claims:

A.    Expedited Distribution Election of $3,500 (election must be made on the Ballot and in accordance with TDP);[5]

B.    Trust claim submission under the Trust Distribution Procedures; or

C.    Settlement Trustee authorization to pursue the claim in court through the tort system.

### A.    Expedited Distribution Election

A survivor (other than a Future Abuse Claimant) may elect on their Ballot to resolve his or her Abuse Claim for an Expedited Distribution of $3,500, if the survivor has submitted a proper and substantially completed Proof of Claim that has been signed personally by the survivor under penalty of perjury, or supplements his or her Proof of Claim to provide such verification.  In the case of holders of a Future Abuse Claim, they need to make a submission to the Settlement Trustee to be eligible for the Expedited Distribution.  Survivors that elect to receive the Expedited Distribution will not have to submit any additional information to the Settlement Trust to receive payment of the Expedited Distribution from the Settlement Trust provided that their proof of claim form is substantially completed and is signed by the survivor attesting to the truth of its contents under penalty of perjury.  Payment will be sent upon the survivor's submission of a release, a form of which is attached as Exhibit A to the TDP.  **Your election for an Expedited Distribution must be made on your Ballot[6]**.

### B.    Trust Distribution Procedures

If a survivor elects not to receive an Expedited Distribution of $3,500, the survivor must complete a Trust Claim Submission (a form in addition to the Proof of Claim form that you already submitted, as defined in the TDP) so that the Settlement Trustee can review the merits of

---

[4] For the avoidance of doubt, the actual terms of the Trust Distribution Procedures shall control and the Coalition and the FCR urge each survivor (or their respective counsel) to review the TDP for the full requirements and procedures associated with the review and payment of Abuse Claims under the TDP.

[5] Ballot election is not applicable to holders of Future Abuse Claims.

[6] Ballot election is not applicable to holders of Future Abuse Claims.  Future Claimants may make a Trust Submission to elect the Expedited Distribution.

the survivor's claim. This submission will occur later, after the Plan is confirmed and you will be provided instructions at that time. To properly make a Trust Claim Submission, a survivor must (i) complete a questionnaire; (ii) produce all records and documents related to the Abuse Claim, including all documents pertaining to settlements, awards, or contributions already received or that are expected to be received from any source; and (iii) execute an agreement (1) to produce any further records and documents reasonably requested by the Settlement Trustee; (2) consent to and agree to cooperate in any examinations requested by the Settlement Trustee; and (3) consent to and agree to cooperate in a written and/or oral examination under oath if requested to do so by the Settlement Trustee. A survivor's breach or failure to comply with the commitments required by a Trust Claim Submission is grounds for the disallowance of or significant reduction to the amount or value of the Abuse Claim.

### 1.    Initial Evaluation

The Settlement Trustee will perform an Initial Evaluation of the Submitted Abuse Claim to determine whether (a) the Abuse Claimant's Proof of Claim or Trust Claim Submission is substantially and substantively completed and signed under penalty of perjury; (b) the Abuse Claim was timely submitted; and (c) the Submitted Abuse Claim had not previously been resolved by litigation and/or settlement involving a Protected Party. If any of these criteria are not met, then the Submitted Abuse Claim shall be disallowed, and the Settlement Trustee will send the survivor a Disallowed Claim Notice.

### 2.    Review of General Criteria

If a Submitted Abuse Claim is not disallowed after the Initial Evaluation, the Settlement Trustee will determine if the submitted evidence supports the Abuse Claim, taking into account certain general criteria, including the survivor's (a) identification of acts of abuse suffered; (b) identification or description of the alleged abuser(s); (c) provision of information showing the connection of the abuse to scouting; (d) specification of the timing of such abuse and the survivor's age at the time of such abuse; and (e) identification of the location of the abuse. If the Settlement Trustee determines that the materials provided in connection with a Submitted Abuse Claim do not meet the criteria, the Settlement Trustee may request additional materials from the survivor or disallow the Abuse Claim. If the Settlement Trustee determines that a Submitted Abuse Claim is a Disallowed Claim, the Settlement Trustee will provide written notice to the survivor or counsel of that determination, subject to reconsideration (as described below).

### 3.    Claims Evaluation

If the Settlement Trustee determines that the Submitted Abuse Claim should be an Allowed Claim, the Settlement Trustee will evaluate the claim using certain Abuse Types, Scaling Factors, Base Matrix Values, and Maximum Matrix Values set forth in the TDP. The values and adjustment factors were selected and derived with the intention of achieving a fair and reasonable Abuse Claim valuation range in light of the best available information, considering the settlement, verdict and/or judgments that Abuse Claimants have received in the courts through lawsuits against the Protected Parties.

The TDP establishes six tiers of Abuse Types and provides the range of potential Allowed Claim Amounts in each tier.  If an Allowed Abuse Claim would fall into more than one tier, it will be placed in the highest applicable tier.  An Abuse Claimant cannot have multiple Allowed Abuse Claims assigned to different tiers. Under the TDP there are six possible valuation tiers based on the nature of the abuse:  (1) Anal or Vaginal Penetration by Adult Perpetrator; (2) Oral Contact by Adult Perpetrator or Anal or Vaginal Penetration by a Youth Perpetrator; (3) Masturbation by Adult Perpetrator or Oral Contact by a Youth Perpetrator; (4) Masturbation by Youth Perpetrator or Touching of the Sexual or Other Intimate Parts (unclothed) by Adult Perpetrator, Touching of the Sexual or Other Intimate Parts (clothed), regardless of who is touching whom and not including masturbation, or exploitation for child pornography; (5) Touching of the Sexual or Other Intimate Parts (unclothed) by a Youth Perpetrator; and (6) Sexual Abuse – No Touching or Adult Abuse Claims.  A chart regarding these tiers can be found in Article VIII of the TDP.

The Base Matrix Value for each tier represents the minimum Allowed Claim Amount for a claim assigned to a given tier *before any adjustments are applied*.  The adjustments are called Scaling Factors and are described below.  The Maximum Claims Matrix value for each tier represents the maximum Allowed Claim Amount for a claim assigned to a given tier *after adjustments (i.e., Scaling Factors) are applied*.  The Settlement Trustee may *increase* the amount of an Allowed Abuse Claim (up to the Maximum Matrix Value) by taking into account (a) the nature and circumstances of the abuse, (b) multiple accusations of abuse against a perpetrator; and (c) the impact of the abuse on the survivor's mental and physical health, interpersonal relationships, work or academic difficulties, and other circumstances.  The Settlement Trustee may *decrease* the amount of an Allowed Abuse Claim by taking into account (a) the existence of a familial or maintenance of a non-scouting relationship between the survivor and perpetrator or the existence of a responsible non-Protected Party, (b) amounts received and likely to be received by the survivor from other non-Protected Party sources, (c) the impact of a statute of limitations or statute of repose and (d) the failure of the survivor to submit a timely claim against the Boy Scouts or another Protected Party.  The Settlement Trustee will send the survivor an Allowed Claim Notice after making a determination of a survivor's Allowed Claim Amount.

### 4.    Reconsideration

A survivor may request reconsideration either of the disallowance of a Submitted Abuse Claim or of the Allowed Claim Amount of the survivor's claim proposed by the Settlement Trustee (a "Reconsideration Request") within thirty (30) days after receiving a Disallowed Claim Notice or an Allowed Claim Notice.  The failure to timely submit a Reconsideration Request will mean the survivor has consented to the Settlement Trustee's determination regarding the survivor's claim. Each Reconsideration Request must be accompanied by (a) a check or money order for $1,000 as an administrative fee for reconsideration; and (b) any further evidence in support of the Submitted Abuse Claim.  The Settlement Trustee will have sole discretion whether to grant the Reconsideration Request.  The decision to grant the Reconsideration Request does not guarantee that the Settlement Trustee will reach a different result after reconsideration.

### a.     Reconsideration Denied

If the Reconsideration Request is denied, the administrative fee will not be returned, and the Settlement Trustee will notify the survivor within thirty (30) days of receiving the request that it will not reconsider the Submitted Abuse Claim.  If the Reconsideration Request is granted, the Settlement Trustee will provide the Abuse Claimant written notice within thirty (30) days of receiving the Reconsideration Request that it is reconsidering the Abuse Claimant's Submitted Abuse Claim.

### b.     Submitted Abuse Claim Reconsidered

If the Settlement Trustee determines upon reconsideration that a previously disallowed Submitted Abuse Claim is an Allowed Abuse Claim or that an Allowed Abuse Claim should receive a new proposed Allowed Claim Amount, the Settlement Trustee will deliver an Allowed Claim Notice and return the administrative fee to the relevant Abuse Claimant.

If the Settlement Trustee determines upon reconsideration that the totality of the evidence submitted by the Abuse Claimant ***does not support changing the earlier finding***, the Settlement Trustee's earlier allowance determination and/or Proposed Allowed Claim Amount shall stand.

The Settlement Trustee will provide a Claim Notice to the Abuse Claimant of either result within ninety (90) days of the Settlement Trust having sent notice that it was reconsidering the Abuse Claimant's Submitted Abuse Claim.

### 5.     Tort System Review

Within thirty (30) days after a survivor receives an Allowed Claim Notice or Claim Notice following a Reconsideration Request, a survivor may notify the Settlement Trust of his or her intention to seek a determination of the Abuse Claim by a court (a "TDP Tort Election Claim").  **Survivors and their attorneys considering pursuing a TDP Tort Election Claim after reconsideration should carefully review the provisions of Article XII of the TDP, which contains various parameters governing a survivor's pursuit of its Abuse Claim through the tort system.**  These parameters include

- The survivor may not seek costs or expenses against the Settlement Trust in the lawsuit.

- The survivor will not have the right to introduce into evidence to the applicable court any information or documents that were requested by the Settlement Trustee and were in the possession, custody or control of the survivor but which the survivor failed to or refused to provide to the Settlement Trustee.

- If the survivor obtains a final judgment or settlement through litigation, the survivor's Allowed Claim Amount shall be the judgment or settlement amount less any payments received by the survivor.

- If the survivor resolves his, her or their Allowed Claim Amount through a TDP Tort Election Claim and the amount exceeds the Maximum Matrix Value in the

applicable tier set forth in the Claims Matrix, the excess amount shall be subordinate to and only paid after the prior payment in full of all Allowed Abuse Claims determined under the TDP claims evaluation process.

- Recoveries, if any, will be obtained from the Settlement Trust pursuant to the payment provisions in the TDP, not from any Protected Party or insurance company.

## C.    Up Front—Tort System Authorization

In addition to the TDP Tort Election Claim option, the Settlement Trustee may authorize the filing or the continuation of a survivor's lawsuit against the Settlement Trust in court to obtain the Allowed Claim Amount of a survivor's Abuse Claim.  This means that the Settlement Trustee has the power to permit survivors to prosecute their claims in the tort system (*i.e.*, before a court) without first making a Trust Claim Submission which is why this is called and "Up Front Tort Out".  There are a number of factors the Settlement Trustee will consider in determining whether a lawsuit in court will be permitted.

## FREQUENTLY ASKED QUESTIONS

### What happens next?

First, you and other creditors affected by the Plan will vote on the Plan.  If the Plan is approved, the Settlement Trust will be established and Settlement Trust assets and the Protected Parties' responsibility for all Abuse Claims will be transferred to the Settlement Trust.  The Abuse Claims will be reviewed, processed, and paid (if allowed) by the Settlement Trustee using the procedures described in the TDP.

### Do survivors get to vote on whether the Bankruptcy Court should approve or disapprove the Plan?

Yes, survivors can vote to "accept" or "reject" the Plan.  If the Plan is accepted by a sufficient number of survivors (all of whom are grouped together in Class 8 of the Plan) and approved by the Bankruptcy Court, the treatment of survivors' claims described in the Plan shall apply to all survivors even if you rejected the Plan.

### How many individual survivors must vote in favor of the Plan in order for the class of survivors to accept the Plan?

In order for a survivor's vote to be counted, that survivor must return a Ballot by the deadline established by the Bankruptcy Court.  In this context, if at least two-thirds (2/3) of survivors who vote on the plan vote to accept the Plan, the class of survivors will be deemed to accept the Plan.  However, for the Bankruptcy Court to approve the channeling injunction in favor of the Local Councils and other potentially Protected Parties, the Bankruptcy Court may require more than 2/3 of those voting to accept to the Plan.

### Does the Bankruptcy Court need to approve the Plan?

Yes.  If the Bankruptcy Court approves the Plan, it will be "confirmed."  For the Plan to be confirmed, the Court must find that the Plan complies with the requirements of the Bankruptcy Code.  The Court will also consider any objections to the Plan.  Several parties in interest, including Insurance Companies, have expressed the view that the Plan violates applicable law and cannot be confirmed, even if sufficient votes in favor of the Plan are received.

### What happens if the Bankruptcy Court does not approve the Plan?

If the Plan cannot be confirmed, because the Plan violates applicable law or the Bankruptcy Court determines that the requirements for confirmation of the Plan cannot otherwise be satisfied, the Debtors may liquidate. In that scenario a trustee would be appointed to liquidate the assets and any distribution available to abuse claimants would be significantly diminished or delayed.

### How do I vote on the Plan?

You or your counsel will receive a Ballot, included with all of the Plan Solicitation Package. The Ballot contains instructions on how to vote, where to send or submit your Ballot,

and the deadline to submit your Ballot for it to be counted.  Portions of these instructions are provided above.

If your Proof of Claim authorized your attorney to be contacted about your claim filed in the Boy Scouts' bankruptcy case and your attorney elected to submit a master ballot on your behalf, your Solicitation Package, including your Ballot, will be sent to your attorney.  As a result, it is important that you contact your counsel to ensure you receive the Solicitation Package so that you can inform your attorney how you want to vote on the Plan.

### *What am I voting on when I vote to accept or reject the Plan?*

You are voting to approve or reject the Plan.  The Plan channels claims against the Boy Scouts, Local Councils, Hartford, and TCJC (and others if they reach settlements and become Protected Parties) to the Settlement Trust.  That means that responsibility of these parties for the Abuse Claim you have against them will be the responsibility of the Settlement Trust and the value of your claim, if any, will be determined by the TDP and paid from the Settlement Trust rather than from the Boy Scouts, a Local Council, Hartford, TCJC or another Protected Party.  The Boy Scouts, Local Councils, Hartford, and TCJC are contributing cash and other assets to the Settlement Trust and those funds will be used to partially pay survivor claims and run the Settlement Trust.  Other assets may also be transferred to the Settlement Trust to pay survivor claims and run the Settlement Trust.

One of those assets is the right to collect money from Insurance Companies that insured the Boy Scouts for survivor claims that have not settled.  If the Insurance Companies do not pay what the Settlement Trust believes they owe, the Settlement Trust will sue them to collect for the benefit of survivors, and the results of such litigation is uncertain.  The Settlement Trust may also try to settle with or will bring claims against other parties that are liable on survivor claims, such as Chartered Organizations that have not settled.

When deciding how to vote, you should consider whether there is a better alternative to the Plan.  If the Plan is not approved, the Boy Scouts may choose to liquidate under chapter 7 or it may dismiss its chapter 11 case.

**The Coalition and the FCR believe that the approval and implementation of the global settlement among the Boy Scouts, the Local Councils, the Coalition and the FCR embodied in the Plan is in the best interests of creditors and <u>RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN</u>.**

### *Who will be in charge of the Settlement Trust?*

Under the Plan, the Settlement Trust will be administered by a Settlement Trustee.  A seven (7) member Settlement Trust Advisory Committee ("<u>STAC</u>") composed of five (5) members selected by the Coalition and two (2) members selected by the Official Committee of Tort Claimants will also have an oversight role as set forth in the Trust documents.  The Settlement Trustee will also consult with a Sexual Abuse Survivors Advisory Committee ("<u>SASAC</u>") regarding Settlement Trust matters, including the Settlement Trust's enforcement of BSA's non-monetary obligations relating to its Youth Protection Program described above.  The

SASAC will consist of five (5) individual abuse survivors, three (3) of whom shall be selected by the Coalition, two (2) of whom shall be selected by the TCC. The initial Settlement Trustee is currently proposed to be Eric Green. The initial members of the STAC shall be identified in the Plan Supplement, which will be filed no later than fourteen (14) days before the deadline for creditors to vote on the Plan. The initial members of the SASAC shall be identified by the TCC and Coalition in a filing by the same deadline.

### *How much will I receive on account of my Abuse Claim from the Settlement Trust and when will I receive payment?*

It is difficult to predict the total amount of recoveries for survivors. Although there have been settlements with the Boy Scouts and Local Councils for approximately $820 million, with Hartford for approximately $787 million, and TCJC for approximately $250 million, it is not yet known how much will be collected from settlements or litigation with other Chartered Organizations and other Insurance Companies. The Coalition and the FCR believe that the amount of the recoveries from these parties (in total) will be much more than the settlements with the Boy Scouts and the Local Councils, but it could end up being much more or much less.

Similarly, the timing of distributions is somewhat unpredictable. Besides the unknown timing of when the Plan will be confirmed (assuming it is confirmed) and recoveries from Chartered Organizations and Insurance Companies that have not settled, your claim cannot be paid until its amount is determined. Although the Settlement Trust is expected to move expeditiously to value claims, as described in more detail below, a survivor has the right to request reconsideration of the Settlement Trustee's determination of the amount of the survivor's claim and, thereafter, if dissatisfied with the allowed amount upon reconsideration, the right to have his, her or their claim determined by a court in the tort system.

### *Who will decide if my claim is eligible for payment?*

Survivors can choose between taking an immediate payment of $3,500 through an election on their Ballot, having their claims determined through the Trust Distribution Procedures, or obtaining authorization from the Settlement Trustee to go to court to have their claim amount determined but limited to recovery from the Settlement Trust. Choosing the Expedited Distribution option on your Ballot will get you money sooner but it means that you will be eligible to receive only a gross payment of $3,500 and nothing more.

All Abuse Claims that are not satisfied through the Expedited Distribution option will be reviewed by the Settlement Trusts' claims reviewers. The Settlement Trust's claims reviewers will review each Submitted Abuse Claim—including the Proof of Claim and Trust Claim Submission—and determine whether it is a valid Allowed Abuse Claim or invalid Disallowed Claim. If the Settlement Trustee disallows your claim, the TDP includes a procedure for making a Reconsideration Request, as well as the option after reconsideration to seek a determination of your claim by a court.

***Do I have to provide the Settlement Trustee of the Settlement Trust with additional information regarding my claim?***

Unless you elect to take an Expedited Distribution of $3,500, you will need to make a Trust Claim Submission in order for your claim to be considered under the TDP.

***Will I be paid interest on my claim?***

No. Unfortunately, there is not expected to be enough funding to pay claims with interest.

***By way of Example, if the Settlement Trust determines that my claim is $600,000, does that mean I will be paid $600,000?***

Not necessarily. The Settlement Trustee will determine the percentage of Allowed Abuse Claims that may be paid based on the Settlement Trustee's estimates of the Settlement Trust's assets and liabilities and the amounts of known and estimated Future Abuse Claims. If additional money is recovered by the Trust, claimants may receive additional amounts up to the value of their claim determined by the Trust.

***Can I participate in the settlement, Plan and Trust Distribution Procedures, even if I don't have an attorney?***

Yes. There is no requirement to have an attorney to vote on the Plan or participate in the TDP in order to have your claim reviewed.

***Where can I obtain a copy of the Trust Distribution Procedures?***

The TDP is attached as Exhibit A to the Plan and is posted at https://omniagentsolutions.com/bsa-SAballots.

***Where can I obtain a copy of the Settlement Trust Agreement?***

The BSA Settlement Trust Agreement is attached as Exhibit B to the Plan and is posted at https://omniagentsolutions.com/bsa-SAballots.

***Why is the Settlement Trust expecting to receive only $820 million from the Boys Scouts and Local Councils? Why not more?***

The Boy Scouts and Local Councils are expected to contribute $820 million. Hartford is expected to contribute $787 million. TCJC is contributing $250 million. There may be other sources of recovery, including the from other insurance companies and Chartered Organizations. The resolution that is incorporated into the Plan—which includes the designation of $1.857 billion in assets for the payment of Abuse Claims—is the result of over eighteen months of investigations, litigation, mediation, and other negotiations among the major interested parties in the cases, including the Coalition and the FCR. The Coalition and the FCR were sensitive to the needs of survivors in what has been a decades-long process to hold the Boy Scouts accountable for past abuses, to be afforded the opportunity to tell their stories and assert their claims for

compensation, and to be assured that the Boy Scouts would implement rigorous Youth Protection Programs, subject to the Coalitions' and the FCR's input, that would ensure that similar abuses would never occur again.  In agreeing to support the transfer of $1.857 billion in assets to the Settlement Trust, the Coalition and the FCR balanced the fair values of Boy Scouts and Local Councils' assets as well TCJC's and Hartford's liabilities, the time, expense, and risks involved in pursuing and recovering certain of such assets through litigation in the absence of a settlement, and the diminishing financial condition of the Boy Scouts the longer the bankruptcy cases continued.  The Coalition and the FCR believe that the settlement balances all of these considerations that are important to survivors to achieve a fair and equitable result.

### *Can I still sue parties other than the Boy Scouts to recover my Abuse Claims?*

If the Plan is confirmed, survivors may seek recoveries against any party that is not among the Protected Parties:

| Parties who may be sued by Survivors after confirmation of the Plan | | |
|---|---|---|
| **Party** | **Yes** | **No** |
| Boy Scouts of America | | ● |
| Settling Insurance Company (i.e., an insurance company that issued a policy to the Boy Scouts). | | ● |
| Non-Settling Insurance Company (i.e., an insurance company that issued a policy to the Boy Scouts). | | ● |
| Local Councils | | ● |
| Settling Insurance Company (i.e., an insurance company that issued a policy to the Local Council). | | ● |
| Non-Settling Insurance Company (i.e., an insurance company that issued a policy to the Local Council). | | ● |
| Contributing Chartered Organizations (*e.g.*, TCJC) | | ● |
| Participating Chartered Organizations | | ●[7] |
| Settling Insurance Company (i.e., an insurance company that issued a policy to the Chartered Organization). | | ● |
| Non-Contributing Chartered Organizations against which you may have a claim. | ●[8] | |
| Non-Contributing Chartered Organizations' Insurers (*i.e.*, an insurance company that issued a policy to the Chartered Organization solely to the | ●[9] | |

---

[7] Participating Chartered Organizations cannot be sued on account of Abuse Claims arising on or after January 1, 1976.

[8] Unless electing the Expedited Distribution.

[9] Certain insurance companies assert that this is only available if such direct action is permitted under applicable law.

| Parties who may be sued by Survivors after confirmation of the Plan | | |
|---|---|---|
| **Party** | **Yes** | **No** |
| benefit of Chartered Organization and is not shared with and does not implicate the Boy Scouts). | | |