# **EXHIBIT B**

28647283.1

**brown**rudnick

YOUNG CONAWAY

[DATE]

**To:**  Holders of Direct Abuse Claims Against the Boy Scouts of America
**From:**  Coalition of Abused Scouts for Justice and Court-Appointed Future Claimants' Representative

**RE:**    **RECOMMENDATION THAT SEXUAL ABUSE VICTIMS VOTE TO ACCEPT THE BOY SCOUTS OF AMERICA REORGANIZATION PLAN**

The **Coalition of Abused Scouts for Justice** (the "Coalition") and **James Patton**, **the Future Claims Representative** (the "FCR") appointed in the chapter 11 cases of the Boy Scouts of America (the "BSA"), together and jointly urge survivors to *vote to ACCEPT the reorganization Plan* (the "Plan") proposed and negotiated between the BSA and these survivor representatives, the Coalition and the FCR.

The Coalition is an ad hoc committee that represents survivors of sexual abuse suffered in connection with Scouting.  The Coalition's members – approximately 18,000 survivors – are represented by over two dozen law firms that collectively represent over 60,000 survivors.  The Coalition was formed to negotiate on behalf of its substantial survivor constituency, maximize the recovery available to all survivors, and minimize the time and expense to achieve those recoveries.  The FCR was appointed by the Bankruptcy Court to be the official advocate for the interests of future claimants, including current minors and survivors suffering from repressed memories of their abuse.

The Coalition and the FCR have worked tirelessly on behalf of survivors to negotiate the terms of ~~a~~ the Plan, which will ~~*promptly*~~ provide **over $~~1.8~~ *1.7* billion** (likely more) to be paid to survivors.  It also provides the framework for substantial future settlements that will increase the recovery for survivors.  The Plan is currently supported by representatives of approximately 70,000 survivors.

**The Plan represents the only assured path to recover and pay billions of dollars to survivors of sexual abuse in the BSA's programs.  The only other path for survivors likely involves years of litigation and significant risk that survivors will receive much less than they are assured of receiving under the Plan.  In our view, the settlement embodied in the Plan represents the best possible outcome for sexual abuse survivors.  It will result in meaningful distributions of ~~billions of~~ over a billion dollars in value (likely more) to survivors following confirmation, without lengthy, expensive and harmful litigation of individual abuse claims.  A very brief description of the Plan terms, as pertaining to you and your recoveries, is contained below.**

I.   **What You Will Receive Under the Plan**

If the Plan is confirmed, a newly formed Settlement Trust will be established.  Your claim against BSA, as well as any Local Council, and certain other "Protected Parties," will be transferred to and paid from the Settlement Trust. The Settlement Trust will assess your claim in accordance with its Trust Distribution Procedures (TDP) and value the claim based on the type and extent of abuse suffered and other factors.  Based on these factors, most claims will be valued between $3,500 and $2,700,000.  If you



Brown Rudnick LLP | brownrudnick.com | 7 Times Square, New York, NY, 10036 | 1.212.209.4800




To: Holders of Direct Abuse Claims Against the Boy Scouts of America
[DATE]
Page 2

do not wish to undergo the full claims evaluation process, you will be able to elect to receive a one-time payment of $3,500, prior to the start of that process.

The Settlement Trust will collect funds from the BSA, its Local Councils, their insurers, and chartered organizations, and distribute available funds to survivors.  ~~As noted above, to~~ To date, there are settlements that will provide over $1.8 billion (likely more) in initial funding to the Settlement Trust.  The actual amount of your recovery, unless you select the one-time $3,500 payment, will depend on both the specifics of your claim and the amounts contributed to the Settlement Trust by, among others, insurance companies and chartered organizations in the future.

**II.     What the Boy Scouts and Their Affiliates And Insurers Are Contributing to the Plan**

**To date, the Coalition and FCR have negotiated commitments of approximately $1.8 billion to the Settlement Trust.  The Coalition and FCR expect that number to grow significantly in coming months given this amount only includes financial contributions from one (1) insurer settlement and one (1) Chartered Organization settlement to date, with potentially many insurer and Charter Organization financial contribution settlements to come.**

**Of the over $1.8 billion that we have negotiated to date, these contributions include:**

- **The BSA itself will contribute assets worth approximately $220 million to the Settlement Trust, along with potentially billions of dollars' worth of insurance rights.**  The exact amount depends on certain timing factors and the prices of non-liquid assets which will have to be monetized.  The Coalition and FCR believe this is the maximum amount that could be contributed by the BSA by law without forcing the organization into liquidation or years-long litigation, either of which would diminish assets available to abuse survivors.

- **The BSA's Local Councils will contribute assets valued at approximately $600 million to the Settlement Trust**, **along with potentially billions of dollars' worth of insurance rights.**  While this may leave some Local Councils with significant assets, BSA's own insurance polices cannot be unlocked without the Local Councils' rights to those policies.  Moreover, not every Local Council faces the same abuse liability, and many of the Local Councils with the most property and assets are located in jurisdictions that do not have favorable statutes of limitations for survivors.  Additionally, many Local Councils take the position that most of their property is legally restricted and cannot be used to pay survivors.  While the Coalition and FCR do not necessarily agree with all (or many) of the positions being taken by the Local Councils, we believe that  in the absence of an agreed settlement like the one represented by the BSA Plan, many of these Local Councils may not have an incentive to contribute insurance rights.  The settlement that we have negotiated with Local Councils – for $600 million in the aggregate – is very substantial.  Indeed, some Local Councils under the settlement may be paying more than they would likely have to pay in the absence of a settlement.  The settlement also avoids the likelihood that some or many Local Councils would be forced to liquidate, which would make it more challenging to recover assets for survivors.

- The Hartford insurance company will contribute $787 million to the Settlement Trust.  You may remember that BSA announced a settlement with Hartford in April 2021 that BSA claimed was for $650 million.  The Coalition and FCR opposed that settlement vigorously.  We thought that it did not make Hartford pay enough to survivors and it contained a provision through which Hartford could have paid substantially less, potentially $400 million or below.  Survivors face a



To: Holders of Direct Abuse Claims Against the Boy Scouts of America
[DATE]
Page 3



significant risk that the Bankruptcy Court might enforce this earlier settlement agreement with these unfavorable terms that might allow Hartford to pay only a fraction of its exposure.

The Coalition and FCR led negotiations to correct these problems with the original Hartford settlement. The deal in the Plan does this. Through the work of the Coalition and the FCR, Hartford has agreed to increase its contribution to $787 million. That amount is not subject to reduction. And it is only available through the Plan. In the Coalition and FCR's view this settlement amount, the assurance that it will be received under the Plan, and the elimination of the risk that Hartford might pay substantially less make this revised settlement with Hartford fair.

- **The Church of Jesus Christ of Latter-Day Saints ("TCJC") will contribute $250 million to the Settlement Trust**, **along with potentially billions of dollars' worth of insurance rights.** The Coalition and FCR believe that this amount represents a substantial portion of the aggregate liability for sex abuse claims related to the TCJC (for which it is co-liable with the BSA, Local Councils, and insurers such as Hartford, who will also contribute to survivor recoveries, as noted above). The Coalition and FCR believe that this commitment is reasonable and provides an excellent recovery for survivors of abuse related to the TCJC's scouting programs.

- **The Coalition and the FCR will continue to negotiate with dozens of other insurers and sponsoring "chartered organizations" to make significant additional contributions to the Settlement Trust for the benefit of survivors.** The Plan provides a framework to allow the Coalition and the FCR to continue to negotiate additional settlements for the benefit of survivors. The substantial amounts that will be available to survivors in the Settlement Trust on Day One represent the payments of only one insurer and one chartered organization (in addition to the BSA and Local Councils). There are literally dozens of insurers and chartered organizations with whom we are continuing to negotiate. Many of the BSA's insurers have disputed that they are obligated to honor their coverage obligations. Some have gone so far as to allege widespread fraud by survivors and their representatives in the filing of claims. The Plan is designed to reduce their ability to continue to shirk their coverage obligations. We believe it will force them to honor their promises to pay, and make significant financial contributions for the benefit of survivors and the Settlement Trust. We believe that with continued negotiation (or, if necessary, litigation), insurers and chartered organizations will, over time, significantly increase the amounts they will pay to compensate survivors.

III. <u>The Plan Provides a Fair and Equitable Recovery for the Harm You Suffered, and Allows the Boy Scouts to Continue Their Charitable Mission</u>

We strongly believe that the Plan represents fair value for those who suffered abuse in connection with BSA programs. In fact, if the Bankruptcy Court does not find that the Plan will provide you a <u>fair and</u> reasonable ~~(i.e., full)~~ recovery, the Plan cannot be confirmed. The Coalition, FCR and the BSA believe that the Plan will indeed provide a substantial recovery, and much more quickly than if the parties choose litigation.

Moreover, **the Plan will allow the BSA to continue into the future, while requiring the BSA to implement even stronger protections against sexual abuse for future participants.** The Coalition and FCR understand that abuse survivors may or may not support the continuation of the BSA's charitable mission. However, the BSA's survival is important for two reasons:


To: Holders of Direct Abuse Claims Against the Boy Scouts of America
[DATE]
Page 4



- If the BSA were to terminate its programs and liquidate its assets, it is very unlikely that abuse survivors would receive greater recoveries than under the Plan.  This is because, among other things, the BSA and Local Councils would likely incur over a billion dollars in priority pension liability, and insurers would be incentivized to deny and litigate coverage obligations on an individual-by-individual basis.

- The BSA and the Local Councils have made financial commitments to make ongoing contributions to the Settlement Trust depending on its financial performance.  In other words, the more youths that choose to participate in BSA programs in future, the more likely it is that the BSA will be able to honor its obligations under the Plan.

**The Coalition and FCR believe that any alternative to confirmation of the Plan will result in extensive delays, increased administrative expenses, and the termination of the valuable settlements that have been negotiated in the Plan.  Each of these occurrences would, in turn, result in significantly smaller distributions to abuse survivors.**

**We believe the Plan maximizes the achievable recovery for survivors.  Therefore, the Coalition and FCR strongly recommend that you timely vote to accept the Plan in accordance with the procedures that have been established by the Bankruptcy Court.**

IV.     **When, How and Why to Vote**

You have been provided with a ballot to vote to accept or reject the Plan.  In order to have your vote counted, you must complete and return the ballot by **[●], 2021 at 4:00 p.m. (Eastern Time)** as the deadline to vote to accept or reject the Plan (the "Voting Deadline").

Your timely vote is important.  The Plan cannot be confirmed without the broad consent of abuse survivors.

***THE FOREGOING IS NOT INTENDED AS A SUBSTITUTE FOR THE PLAN AND DISCLOSURE STATEMENT.  ALL SURVIVORS SHOULD READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY, AND SPEAK TO THEIR LAWYER OR OTHER ADVISOR TO THE EXTENT THEY WISH TO DO SO.***

If you have any questions as to this recommendation, you may contact the Coalition at BSACoalition@brownrudnick.com and the FCR at [BSA-FCR@ycst.com]BSA-FCR@ycst.com.

Sincerely,

| For the Coalition, | For the FCR, |
|---|---|
| BROWN RUDNICK LLP | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| _____ | _____ |
| David J. Molton | Robert S. Brady |

