# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>Jointly Administered<br><br>Re: Dkt. No. 6288 |

## CERTAIN INSURERS' OBJECTION TO DEBTORS' MOTION
## FOR PROTECTIVE ORDER AND RELATED RELIEF

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware 19801

O'MELVENY & MYERS LLP
Tancred Schiavoni (*pro hac vice*)
Gary Svirsky (*pro hac vice*)
Daniel Shamah (*pro hac vice*)
Times Square Tower
7 Times Square
New York, New York 10036-6537

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Boy Scouts of America (6300) and Delaware Boy Scouts, LLC (4311).

The insurers listed in the signature blocks below respectfully submit this objection to the *Debtors' Motion for Protective Order and Related Relief* [Docket No. 6288] (the "Motion").[2]

## PRELIMINARY STATEMENT

Before the Court approved the Disclosure Statement, scheduled a confirmation hearing, or even faced a single discovery dispute, the Debtors moved for an advisory opinion about the abstract parameters of confirmation discovery. Rather than follow the familiar course of responding to discovery requests, meeting and conferring about disputes—as the Local Rules require—and seeking to narrow any unresolved issues, the Debtors lurched for a prospective ruling on not-yet-seen-or-served discovery responses. What is more, in addition to being procedurally defective, the Motion is substantively meritless because the Debtors' overbroad view of the mediation privilege defies Local Rule 9019-5 and caselaw interpreting it, which make clear that that privilege does not conceal negotiations entirely from discovery, especially where a party puts the mediation at issue.

Therefore, the Court should deny the Motion for four separate and independent reasons: (i) the Court lacks constitutional authority to grant the Debtors' unripe requested relief; (ii) the Debtors disregarded the Local Rules for bringing discovery disputes to the Court's attention; (iii) the Debtors improperly seek *in limine* relief that is more appropriately addressed right before trial on a developed evidentiary record; and (iv) the Motion is substantively flawed because it is based on an untenable theory about the mediation privilege, which is, in any event, an evidentiary rule that governs admissibility rather than discovery. Each reason is on its own sufficient to deny the Motion.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion. Unless otherwise indicated, all internal quotation and citations are omitted.

*The Motion seeks an impermissible advisory opinion*. Insurers served their initial confirmation discovery on the Debtors on September 30, 2021, nearly two weeks after the Motion was filed. The Debtors have not even responded to those discovery requests. The Motion thus seeks "advance decisions as to discovery or evidentiary disputes which are not yet ripe and which therefore lack the 'clear concreteness provided when a question emerges precisely framed and necessary for decision.'" *Han v. Fin. Supervisory Serv.*, 2017 WL 7689223, at *5 (S.D.N.Y. Oct. 6, 2017) (quoting *United States v. Fruehauf*, 365 U.S. 146, 157 (1961)). The United States Supreme Court has held that a court does not have constitutional authority to grant an advisory opinion on an unripe issue. That insurers previously challenged as overbroad the Debtors' conception of the mediation privilege during the RSA litigation, but this does not ripen a dispute about unspecified discovery in connection with plan confirmation.

*The Motion is procedurally defective*. Even if the Court had the power to grant the Motion, the Motion should still be denied because the Debtors completely ignored the Local Rules for bringing discovery disputes to the Court. The bulk of the Motion seeks a "protective order" from discovery the Debtors had not even seen when they filed the Motion, let alone answered. Local Rules of this Court do not permit litigants to prophylactically seek discovery rulings. Rather, parties "are expected to confer and in good faith attempt to reach agreement cooperatively on how to conduct discovery." Local Rule 7026-1(a). The Local Rules further require that the moving party certify that it met and conferred with opposing counsel and the parties were unable to reach agreement. The failure to include such a certification could "result in dismissal of the motion." Local Rule 7026-1(d). Moreover, a discovery motion must include the actual discovery request that movant places before the court. Local Rule 7026-1(c). As their belated Rule 7026-1(d) certification—filed nearly two weeks after the Motion—concedes, the

Debtors complied with none of these requirements. Nor could they have, because when they filed the Motion, no insurer had yet served confirmation discovery. Thus, there was no discovery to fight about, no deficient responses to address, and nothing to discuss. The Local Rules simply do not permit a litigant to short-circuit a discovery process designed to lessen the burden on the Court.

*The Motion is a disguised, premature motion in limine*. Compounding the constitutional and procedural infirmities, the Motion is a procedurally defective motion *in limine*. Courts repeatedly caution that motions *in limine* should be "deferred until closer to trial 'so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.'" *Whidden v. Roberts*, 334 F.R.D. 321, 323 (N.D. Fla. 2020) (collecting cases). Yet the Debtors prospectively seek to limit the arguments objectors may make, weeks before discovery closes and months before trial.

*The Motion is substantively unfounded*. Even if there were a ripe dispute and the Debtors had complied with the Local Rules, the relief the Debtors seek would still be improper. The Court has previously expressed doubt about the Debtors' overbroad conception of the mediation privilege. The plain language of Local Rule 9019-5, and the cases interpreting it, make clear that mediation privilege does not allow concealing negotiations entirely from discovery, especially where a party puts the matter at issue. If the Debtors invoke the privilege as broadly as they did during the RSA litigation, then there may be a dispute to resolve then—but there is none now. And the "good faith" preclusion order the Debtors seek is similarly misplaced. Courts have rejected the Debtors' overly narrow interpretation of Bankruptcy Code section 1129(a)(3), in that the inquiry is not limited to the plan's final terms. This Court should do the same.

**BACKGROUND**

The Debtors filed the Motion on September 17, 2021, on the eve of the Disclosure Statement hearing and before a confirmation schedule had even been set. The Motion is styled as seeking a "protective order," yet it is missing critical elements of a discovery motion: The Debtors (i) cite no disputed discovery requests and (ii) proffer no certification that they met and conferred with opposing counsel and are now at an impasse. The Motion also seeks evidentiary and legal rulings on the proper scope of a confirmation trial that had not even been scheduled as of September 17.

On September 30, after five days of contested hearings, the Court approved the Debtors' Disclosure Statement and scheduled a confirmation hearing for January 24, 2022. [Docket No. 6438, at ¶¶ 5–6] The Court has set a hearing for October 5 to discuss the balance of the confirmation schedule, including the deadline for fact and expert discovery. The parties are still negotiating the specific discovery deadlines leading up to the confirmation hearing.

Almost immediately after the Court signed the Disclosure Statement Order, certain insurers served confirmation-related discovery requests on the Debtors. [Docket No. 6450] The Debtors served discovery requests on these insurers that same day too. Neither side has responded to the respective discovery requests, nor have there been any meet-and-confers or other discussions between the Debtors or any other insurer on the proper scope of confirmation discovery.

Late in the evening on September 30 (the night before the general objection deadline for the Motion),[3] the Debtors belatedly filed the certification required by Local Rule 7026-1(d) that

---

[3] Almost the entirety of the time parties had to respond to the Motion (September 17 to October 1) was consumed with the five-day Disclosure Statement hearing and multiple mediation sessions. Given that the Motion was not scheduled to be heard until the October

they met and conferred with insurers and were at an impasse. [Docket No. 6454] That certification cited meet-and-confers that took place in July and August and referred to motions to compel that were filed in that time period, all in connection with the RSA and Fourth Amended Plan that the Debtors ultimately abandoned. That certification did not cite any more recent discussions—because there have been none.

## OBJECTION

### I. THE MOTION SEEKS AN IMPERMISSIBLE ADVISORY OPINION.

The United States Supreme Court teaches that Article III's case-or-controversy requirement precludes federal courts from issuing advisory opinions on abstract issues. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101, 104 (1998). And the Third Circuit has noted that "[t]he oldest and most consistent thread in the federal law of justiciability is that federal courts will not give advisory opinions." *Coffin v. Malvern Fed. Savs. Bank*, 90 F.3d 851, 853 (3d Cir. 1996) (quoting 13 Wright, Miller, Cooper, Federal Practice & Procedure, § 3529.1 (2d ed. 1984)). Accordingly, courts regularly dismiss premature discovery motions as improperly seeking advisory opinions. *See Han v. Fin. Supervisory Serv.*, 2017 WL 7689223, at *5 (S.D.N.Y. Oct. 6, 2017) (quoting *United States v. Fruehauf*, 365 U.S. 146, 157 (1961)); *In re Thomas*, 2008 WL 5412113, at *5 n.4 (Bankr. E.D. Pa. Oct. 17, 2008). Yet the Motion disregards this well-settled precedent and asks the Court to issue an advisory opinion on an unripe discovery dispute, which is a problem because "[r]ipeness is peculiarly a question of timing. [I]ts basic rationale is to prevent the courts, through [avoidance of] premature

---

19 omnibus hearing, Century (on behalf of certain other insurers) requested from the Debtors a ten-day extension on their time to respond to the motion, which still would have given the Debtors over a week to file a reply. The Debtors would only grant them two additional business days to file this objection.

adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985).

Here, the Debtors supposedly seek an "order clarifying" discovery issues for which "there is no concrete discovery dispute upon which to rule," which is precisely the sort of unripe impermissible advisory opinion that this Court may not render. *Pueschel v. Nat'l Air Traffic Controllers' Ass'n*, 606 F. Supp. 2d 82, 86 (D.D.C. 2009); *see also Klein v. Affiliated Group, Inc.*, 2019 WL 246768, at *11 n.10 (D. Minn. Jan. 17, 2019) (denying motion to compel, because "[d]efining the specific contours of what is and is not discoverable, without the benefit of a specific discovery request, is akin to providing an advisory opinion"). The Motion presents inchoate privilege questions, untethered from any specific discovery requests (which had not even been served as of the time of the Motion) and any responses. In their belated Local Rule 7026-1(d) certification [Docket No. 6454], the Debtors only aver that they "have no reason to believe" that further discussions with insurers would be fruitful, which is insufficient to cure the constitutional defect.

As though this case law were not reason enough for the Debtors to pause before bringing the Motion, the Court has already cautioned the parties about asking that it "decide these privilege issues in the abstract."[4] But that is what the Debtors ask for now. If a ripe controversy arises, the parties will raise it with the Court in the proper course.

---

[4] *See Declaration of Daniel Shamah in Support of Certain Insurers' Objection to Debtors' Motion for Protective Order and Related Relief* ("Shamah Decl."), Ex. A, Sept. 28, 2021 Hr'g Tr. at 206:2-6.

## II. THE MOTION DOES NOT COMPLY WITH THE LOCAL RULES FOR DISCOVERY DISPUTES.

This Court's Local Rules require litigants to attempt to streamline and narrow discovery disputes before making a discovery motion. The Debtors simply ignore those rules.

Local Rule 7026-1(a) states that parties must meet and confer and cooperate on the appropriate scope of discovery. Just like the local rules in many other districts, Local Rule 7026-1(d) requires that any discovery motion be accompanied by an averment that the parties met and conferred in good faith and were unable to reach agreement; failure to comply with this requirement could result in "dismissal of the motion." *See Rodriguez v. Pie of Port Jefferson Corp.*, 2015 WL 1513979, at *3 (E.D.N.Y. Mar. 13, 2015) (denying discovery motion where moving party failed to "comply with the meet and confer rule"). And given the burden discovery disputes impose on courts, Local Rule 7026-1(c) also requires the moving party to submit the actual discovery requests to the Court to facilitate the Court's review. The Debtors did not comply with any of these requirements, nor could they. When they filed the Motion, no insurer had even served discovery requests on the Debtors in connection with confirmation. The Debtors' belated Local Rule 7026-1(d) certification [Docket No. 6454], filed nearly two weeks after they filed the Motion, does not cure the defect because it relates to discovery and litigation that occurred months ago. The Court should deny the Motion on this basis alone and require the Debtors to meet and confer with the insurers on the specific discovery requests served in connection with confirmation.

This is not a technical foot fault or a gotcha argument. The Debtors seek prospective discovery rulings on the scope of mediation privilege. Decisions on privilege issues are inherently fact-intensive and context-specific. *See In re Tribune Co.*, 2011 WL 386827, at *9 (Bankr. D. Del. Feb. 3, 2011) (noting that determining whether a privilege "applies is an

intensely fact-and-circumstance-driven exercise. The balancing of tensions which arise during the search for truth may, depending upon the particular circumstances involved, fall either way."). The Debtors have yet to even respond to the insurers' discovery requests, let alone produce any documents. At a minimum, the Court should deny the Motion to permit the parties to try and narrow the discovery disputes before burdening the Court with additional disputes to resolve.

### III.   THE MOTION SEEKS PREMATURE *IN LIMINE* RELIEF.

The Motion is also a premature motion *in limine* that should be brought closer to trial. A motion *in limine* is a motion to exclude or admit anticipated "evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). "A party generally should file a motion *in limine* only when a trial is imminent" so that the court can have the "proper context" to rule on the motion. *Whidden v. Roberts*, 334 F.R.D. 321, 323 (N.D. Fla. 2020) (citing *Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1023 (N.D. Ill. 2011)); *Jones v. Harris*, 665 F. Supp. 2d 384, 404 (S.D.N.Y. 2009)). Courts routinely deny premature motions *in limine*. *See Whidden*, 334 F.R.D. at 323; *Jones*, 665 F. Supp. at 404; *Senior by Senior v. Eihab Hum. Servs., Inc.*, 2019 WL 8128563, at *4 (E.D.N.Y. Oct. 10, 2019).

While styled as a "protective order" request, the Motion seeks more than just relief from complying with discovery obligations. The Debtors ask for an evidentiary ruling on admissibility of redacted documents and a legal ruling on the scope of potential objections to the good-faith confirmation requirement under Bankruptcy Code section 1129(a)(3). Proposed Order, at ¶¶ 3–4. These are precisely the kinds of rulings more appropriately addressed on the eve of trial, after the parties have filed confirmation objections, conducted discovery and considered the evidence they will adduce at trial, and attempted to resolve evidentiary disputes.

### IV. THE DEBTORS' MISCONSTRUE THE SCOPE OF THE MEDIATION PRIVILEGE AND BANKRUPTCY CODE SECTION 1129(a)(3).

While the Motion should be deferred until the Debtors present a better developed—or, indeed, any—discovery record, if the Court were inclined to consider the merits now, it should still deny the Motion for two reasons: (i) the Debtors continue to advocate an impermissibly broad conception of the mediation privilege, particularly as it applies in these cases; and (ii) Bankruptcy Code section 1129(a)(3) is not so narrow that it precludes insurers from inquiring into the negotiations and development of the Plan of Reorganization.

#### A. The Debtors Read the Mediation Privilege Too Broadly.

The Motion is based on the Debtors' overbroad conception of the mediation privilege. Local Rule 9019-5(d)(i) makes clear that the privilege covers, at most, only "information disclosed at mediation." The rule also makes clear that "[i]nformation otherwise discoverable or admissible in evidence does not become exempt from discovery, or inadmissible in evidence, merely by being used by a party in the mediation." Local Rule 9019-5(d)(i). But the Debtors go far beyond that narrow scope and want this Court's blessing to withhold from production a wide range of materials, including board materials and drafts of term sheets and other plan documents that were not exchanged "at mediation." Moreover, the Debtors ignore that the mediation privilege concerns what evidence may be admitted at trial and not the bounds of permissible discovery.

*In re AE Liquidation, Inc.,* 2012 WL 6139950, at *1–2 (Bankr. D. Del. Dec. 11, 2012), is instructive. It makes the point that the local rules concerning mediation limit the admissibility of certain documents prepared for the purpose of mediation, but do not bar discovery of such documents:

> Local Rule 9019–5 provides no basis for the Court to grant a protective order related to the mediation, nor does it protect any documents from discovery. The rule merely prohibits any party from using as evidence any documents prepared for the purpose of mediation. Parties to litigation are entitled to "broad and liberal discovery." *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999). Although evidence may not be admissible at trial, that evidence is still discoverable if it may lead to other relevant, admissible evidence. Fed. R. Civ. P. 26(b)(1); *Josephs v. Harris Corp.*, 677 F.2d 985, 991 (3d Cir. 1982). Further, Rule 9019–5 expressly provides that "[i]nformation otherwise discoverable or admissible in evidence does not become exempt from discovery, or inadmissible in evidence, merely by being used by a party in the mediation." Del. Bankr. L.R. 9019–5(d)(i). Thus, Rule 9019–5(d)(i) does not support a protective order, and the Court will not grant such an order pursuant to Rule 16(c).

*Id.* at *2. This case is no different and the Motion should be denied for the same reason it was denied in *AE Liquidation*.

Indeed, the Court previously observed during the RSA hearing that the Debtors had stretched the mediation privilege too far:

> [O]n the surface it would seem to me that board resolutions with respect to the RSA, presentations with respect to the board's consideration of the RSA, board minutes with respect to the resolution of the RSA are all fair game and not part of the mediation privilege.
>
> If the particular documents, I suppose, contain communications that only took place in connection with mediation then perhaps some portion of those documents could be redacted. But providing—but ***mediation doesn't clo[a]k discovery and information that is, otherwise discoverable just because you also put it into the mediation process or communicated information you have to the mediator or other parties***.
>
> ***So I am concerned that the mediation privilege may have been too broadly construed***. Again, I haven't seen a document so I don't know, but intuitively those types of documents don't seem to me to fall within the mediation privilege and it would seem to me are very relevant to the issues before the court which the parties have framed is, at least, the debtors' business judgment. . . . So I think its fair game. What did the debtor consider? When did they consider it? When did they decide? What did they not consider? All fair game.[5]

---

<sup>5</sup> Shamah Decl., Ex. B, July 27, 2021 Hr'g Tr. at 24:11–25:10 (emphasis added).

-10-

The Debtors attempt prophylactically to shield from discovery the same sorts of materials they tried to shield during the RSA hearing should fail for the same reasons. And, of course, this is not even a discovery issue.

Moreover, by seeking broad good-faith findings in connection with confirmation, the Debtors have put at issue the subject about which they do not want to produce documents. As courts routinely hold, discovery is appropriate into mediation matters where a party puts at issue the good faith of negotiations relating to a contested matter, as the Debtors have done here. *See G. Angel, Ltd. v. Camper & Nicholsons USA, Inc.*, 2009 WL 10666975, at *3 (S.D. Fla. May 22, 2009) ("As important as the mediation privilege is, however, it may be waived. . . . For example, a waiver occurs when the holder of the privilege asserts a claim that in fairness requires an examination of protected communication."); *In re Tribune Co.*, 2011 WL 396927, at *7 (Bankr. D. Del. Feb. 3, 2011) (allowing discovery of certain mediation materials under the facts and circumstances of that case where opposing party put the mediation at issue by arguing that the proposed settlement was fair and that the Debtors and Committee acted in good faith). The Debtors cannot rely on mediation privilege to cloak the entirety of negotiations from disclosure. As this Court previously observed:

> [B]eing able to cloak everything in mediation privilege I am finding difficult. . . . So I will be thinking about this and mediation privilege because it seems to be people arguing almost an all or nothing concept; send us to mediation and let us cloak everything in privilege or no mediation and then perhaps no consensual resolution. Neither of those seem appropriate. There seems to be something in between that.[6]

The Court noted at the Disclosure Statement hearing that "There's got to be a balance in the mediation privilege when you want certain findings at confirmation. Not everything is going

---

[6] *See* Shamah Decl., Ex. C, Aug. 12, 2021 Hr'g Tr. at 58:9–19.

to be able to be protected, and we're going to have to find the balance."[7] The blanket rule the Debtors seek, permitting them to redact or withhold a wide range of materials on the basis of mediation privilege, would violate this Court's prior guidance and applicable law interpreting the scope of the mediation privilege.

### B.     The Debtors Misread Bankruptcy Code section 1129(a)(3).

The Court should not prospectively limit any party's rights to object to confirmation on the basis of decisions the Debtors have not yet made about how to respond to insurers' discovery requests.  But if the Court were to entertain this argument, the Debtors' contention that "the information Insurers request is irrelevant" because the proposed plan's good faith "should be based on the final terms of the plan" ignores the legal standard for determining good faith under § 1129(a)(3).  Mot. at 28.  The Court can—and should—consider the "totality of the circumstances" surrounding confirmation, including the negotiations leading to any settlement.[8] Those facts are relevant to the good-faith analysis because the objectives and purposes of the Bankruptcy Code include "achieving fundamental fairness and justice." *In re WR Grace & Co.*, 729 F.3d 332, 346 (3d Cir. 2013) (internal quotation marks omitted).  Indeed, when a court

---

[7]   *See* Shamah Decl., Ex. A, Sept. 28, 2021 Hr'g Tr. at 205:23–206:1.

[8]   Debtors cite *In re Combustion Engineering, Inc.* to support their argument that good faith is only based on a plan's terms.  But that case states that the "important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code;" not that the final terms of the plan are the *only* "point of inquiry."  *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 247 (3d Cir. 2004); *see also In re S B Bldg. Assocs. Ltd. P'ship*, 621 B.R. 330, 360–61 (Bankr. D.N.J. 2020) ("The good faith determination is made by evaluating the totality of the circumstances surrounding confirmation and requires that the Plan be 'proposed with honesty, good intention and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code.'" (internal citations omitted)); *In re Brown*, 498 B.R. 486, 494 (Bankr. E.D. Pa. 2013) ("In applying section 1129(a)(3), the requisite good faith determination is based on the totality of the circumstances." (internal citations and brackets omitted)).

considers if a plan was proposed in "good faith" under § 1129(a)(3), it looks at whether the plan "(1) fosters a result consistent with the Code's objectives, (2) the plan has been proposed with honesty and good intentions . . . and (3) there was fundamental fairness in dealing with the creditors." *In re Exide Holdings, Inc.*, 2021 WL 3145612, at *11 (D. Del. July 26, 2021) (internal quotation marks omitted).

Here, fundamental fairness turns on the negotiations leading to the plan. *See WR Grace*, 729 F.3d at 347 (affirming the district court's ruling that the plan at issue was proposed in good faith because "nothing about the case suggested ulterior motives or dishonesty, particularly in light of the arms-length negotiations that led to the development of the Plan."). But neither insurers nor the Court know—and Debtors have not demonstrated—that the deal was reached "with substantial input from the negotiating parties." *See In re Peabody Energy Corp.*, 933 F.3d 918, 927 (8th Cir. 2019) (that all parties negotiated the settlement was relevant to establishing good faith.). Therefore, unless it includes evidence concerning the negotiations that took place during the mediation, the record could not possibly be sufficient for the Court to find good faith.

Importantly, the Coalition and FCR appear to agree, having previously argued that the insurer objections about collusion and good faith must be litigated now, in connection with confirmation:

> Further, the insurers have raised the specter of 'collusion' since the Petition Date. If the insurers believe that the Amended Plan and TDP were not "proposed in good faith," then they have the obligation to make their case now when the issue is front and center instead of attempting to undermine the Court's good faith finding years later in coverage litigation. If this Court finds that the Amended Plan and TDP were not proposed in good faith, the Amended Plan cannot be confirmed and there can be no Channeling Injunction.[9]

---

9    *Joinder of the Coalition of Abused Scouts for Justice, the Official Committee of Tort Claimants, and the Future Claims Representative to, and Brief in Support of, Debtors'*

If the plan proponents intend to wield a good faith finding in a confirmation order as a sword in subsequent coverage litigation, fundamental fairness dictates that insurers should have an opportunity to investigate the negotiations that led to the development of the plan in the first place. Indeed, the Mediation Order expressly contemplated this precise outcome: "if a Party puts at issue any good faith finding concerning the Mediation in any subsequent action concerning insurance coverage, the Parties' right to seek discovery, if any, is preserved."[10] Having insisted that coverage issues be resolved in connection with confirmation, the plan proponents cannot now turn around refuse disclosure of these materials on mediation privilege grounds.

Moreover, the Debtors' impermissible request for specific findings that the TDPs are proposed in good faith and are "fair and reasonable" in all respects directly calls into question what involvement, if any, the Debtors had in the relevant drafting and negotiation. Despite the Court's repeated statements during the Disclosure Statement hearing that these and other findings were problematic, overly broad, and not tied to confirmation requirements, the Debtors declined to make any changes to the Plan findings in the proposed solicitation version of the Plan they filed following the Disclosure Statement hearing. See [Docket No. 6429] Art. IX.A.3. In addition, these findings expressly, and impermissibly, modify the Debtors' insurance contracts. As was discussed at the Disclosure Statement hearing, after the Debtors negotiated their contribution, the Debtors had little, if any, incentive to take a strong position on the procedures

---

*Motion for Entry of an Order, Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code, (I) Authorizing the Debtors to Enter into and Perform Under the Restructuring Support Agreement, and (II) Granting Related Relief* [Docket No. 5680], at ¶ 46.

10   *Order (I) Appointing Mediators, (II) Referring Certain Matters to Mediation, and (III) Granting Related Relief* [Docket No. 812], at ¶ 7.

for how that money will be distributed. Indeed, entirely consistent with the position that the Debtors did not have any stake in how the money was to be allocated, the available evidence suggests the Debtor had little, if any, input into selecting the Settlement Trustee who, under the TDPs, has virtually unlimited discretion regarding the allowance of claims and the amount at which they are allowed under the proposed TDPs.

Similarly relevant is who had control over the drafting. A court assessing a plan under section 1129(a)(3)'s good-faith requirement may consider whether a party "participated in drafting the settlement documents." *See In re Exide Holdings, Inc.*, 2021 WL 3145612, at *12 (D. Del. July 26, 2021) (rejecting a claim of bad faith where the party asserting bad faith "participated throughout the mediation process . . . and participated in drafting the settlement documents."). To be sure, the insurers were not involved in drafting the settlement documents, nor have they been allowed to review drafts because Debtors have cloaked all documents generated during negotiations in an alleged mediation privilege. As the Court has already recognized, all of this is "fair game."[11]

## CONCLUSION

For all of these reasons, the Court should deny the Motion.

---

[11] Shamah Decl., Ex. B, July 27, 2021 Hr'g Tr. at 25:8–10.

| | |
|---|---|
| Dated: October 5, 2021 | Respectfully Submitted, |
| | |
| | By: /s/ Stamatios Stamoulis |
| Michael J. Joyce, Esquire (No. 4563) | Stamatios Stamoulis (#4606) |
| JOYCE, LLC | STAMOULIS & WEINBLATT LLC |
| 1225 King Street, Suite 800 | 800 N. West Street |
| Wilmington, DE 19801 | Third Floor |
| (302)-388-1944 | Wilmington, Delaware 19801 |
| mjoyce@mjlawoffices.com | Telephone: 302 999 1540 |
| | Facsimile: 302 762 1688 |
| -and- | |
| | O'MELVENY & MYERS LLP |
| Kevin Coughlin, Esquire (*Pro Hac Vice*) | Tancred Schiavoni (*pro hac vice*) |
| Lorraine Armenti, Esquire (*Pro Hac Vice*) | Gary Svirsky (*pro hac vice*) |
| Michael Hrinewski, Esquire (*Pro Hac Vice*) | Daniel Shamah (*pro hac vice*) |
| COUGHLIN MIDLIGE & GARLAND, LLP | Times Square Tower |
| 350 Mount Kemble Ave. | 7 Times Square |
| PO Box 1917 | New York, New York 10036-6537 |
| Morristown, NJ 07962 | Telephone: 212 326 2000 |
| 973-267-0058 (Telephone) | Facsimile: 212 326 2061 |
| 973-267-6442 (Facsimile) | |
| larmenti@cmg.law | *Counsel for Century Indemnity Company, as* |
| mhrinewski@cmg.law | *successor to CCI Insurance Company, as* |
| | *successor to Insurance Company of North* |
| -and- | *America and Indemnity Insurance Company of* |
| | *North America* |
| Britton C. Lewis, Esquire (*Pro Hac Vice*) | |
| CARRUTHERS & ROTH, P.A. | TROUTMAN PEPPER HAMILTON SANDERS |
| 235 N. Edgeworth St. | LLP |
| P.O. Box 540 | David M. Fournier (DE No. 2812) |
| Greensboro, NC 27401 | Marcy J. McLaughlin Smith (DE No. 6184) |
| (336) 478-1146 (Telephone) | Hercules Plaza |
| (336) 478-1145 (Facsimile) | 1313 Market Street |
| bcl@crlaw.com | Suite 5100 |
| | P.O. Box 1709 |
| *Counsel to Arrowood Indemnity Company* | Wilmington, DE 19899-1709 |
| | Telephone: 302.777.6500 |
| REGER RIZZO & DARNALL LLP | Facsimile: 302.421.8390 |
| Louis J. Rizzo, Jr., Esquire (#3374) | |
| 1521 Concord Pike, Suite 305 | -and- |
| Brandywine Plaza West | |
| Wilmington, DE 19803 | Harris B. Winsberg (admitted *pro hac vice*) |
| (302) 477-7100 | Bank of America Plaza |
| Email: lrizzo@regerlaw.com | 600 Peachtree Street NE |
| | Suite 3000 |

-16-

*Attorney for Defendants, Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company*

Matthew G. Summers (DE No. 5533)
Chantelle D. McClamb (DE No. 5978)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801-3034
Telephone: (302) 252-4428
Facsimile: (302) 252-4466
E-mail: summersm@ballardspahr.com
mcclambc@ballardpshar.com

-and-

Harry Lee*
John O'Connor*
Brett Grindrod*
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue NW
Washington, DC 20036
Telephone: (202) 429-8078
Facsimile: (202) 429-3902
E-mail: hlee@steptoe.com
joconnor@steptoe.com
bgrindrod@steptoe.com
(*Admitted *pro hac vice*)

*Attorneys for Clarendon America Insurance Company, Maryland Casualty Company, Maryland American General Group, and American General Fire & Casualty Company*

Kathleen M. Miller (No. 2898)
Smith, Katzenstein & Jenkins llp
1000 West Street, Suite 501
P.O. Box 410
Wilmington, Delaware 19899
Phone: (302) 652-8400
E-mail: kmiller@skjlaw.com

Gary P. Seligman (admitted *pro hac vice*)
Ashley L. Criss (admitted *pro hac vice*)

Atlanta, GA 30308-2216
Telephone: 404.885.3000
Facsimile: 404.885.3900

-and-

MCDERMOTT WILL & EMERY LLP
Margaret H. Warner (admitted *pro hac vice*)
Ryan S. Smethurst (admitted *pro hac vice*)
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
Telephone: 202.756.8228
Facsimile: 202.756.8087

*Attorneys for Allianz Global Risks US Insurance Company*

Robert D. Cecil, Jr. (No. 5317)
Tybout, Redfearn & Pell
501 Carr Road, Suite 300
Wilmington, Delaware 19899-2092
Phone: (302) 658-6901
E-mail: rcecil@trplaw.com

Mark D. Plevin (admitted *pro hac vice*)
Kevin D. Cacabelos (admitted *pro hac vice*)
Crowell & Moring LLP
Three Embarcadero Center, 26th Floor
San Francisco, California 94111
Phone: (415) 986-2800
E-mail: mplevin@crowell.com,
kcacabelos@crowell.com

Clifford J. Zatz (admitted *pro hac vice*)
Tacie H. Yoon (admitted *pro hac vice*)
Rachel A. Jankowski (admitted *pro hac vice*)
Crowell & Moring LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Phone: (202) 624-2500
E-mail: czatz@crowell.com,
tyoon@crowell.com, rjankowski@crowell.com

*Attorneys for American Zurich Insurance Company, American Guarantee and Liability*

-17-

Wiley Rein llp
1776 K Street, N.W.
Washington, DC  20006
Phone: (202) 719-7000
E-mail:  gseligman@wiley.law,
acriss@wiley.law

*Attorneys for General Star Indemnity Company*

Bodell Bové, LLC
Bruce W. McCullough  (No.  3112)
1225 N. King Street, Suite 1000
P.O. Box 397
Wilmington, DE 19899-0397
Telephone: (302) 655-6749,
Facsimile: (302) 655-6827
Email: bmccullough@bodellbove.com

- and -

CLYDE & CO US LLP
Bruce D. Celebrezze (*pro hac vice*)
Four Embarcadero Center, Suite 1350
San Francisco, California 94111
Telephone:  (415) 365-9800
Facsimile:  (415) 365-9801
Email:     bruce.celebrezze@clydeco.us

Konrad R. Krebs (*pro hac vice*)
200 Campus Drive | Suite 300
Florham Park, NJ 07932
Telephone:  (973) 210-6700
Facsimile:  (973) 210-6701
Email:    konrad.krebs@clydeco.us

- and –

DAVID CHRISTIAN ATTORNEYS LLC
David Christian (*pro hac vice*)
105 W. Madison St., Suite 1400
Chicago, IL 60602
Telephone: (862) 362-8605

*Insurance Company, and Steadfast Insurance Company*

TROUTMAN PEPPER HAMILTON SANDERS LLP
David M. Fournier (DE No. 2812)
Marcy J. McLaughlin Smith (DE No. 6184)
Hercules Plaza
1313 Market Street
Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone:       302.777.6500
Facsimile:          302.421.8390

-and-

Harris B. Winsberg (admitted *pro hac vice*)
Bank of America Plaza
600 Peachtree Street NE
Suite 3000
Atlanta, GA  30308-2216
Telephone:       404.885.3000
Facsimile:          404.885.3900

-and-

Bradley Riley Jacobs PC
Todd C. Jacobs (admitted *pro hac vice*)
John E. Bucheit (admitted *pro hac vice*)
500 West Madison Street
Suite 1000
Chicago, IL 60661
Telephone:  312.281.0295

*Attorneys for National Surety Corporation and Interstate Fire & Casualty Company*

MORRIS JAMES LLP
Carl Kunz, III (DE Bar No. 3201)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
Email:ckunz@morrisjames.com

Email:  dchristian@dca.law

*Attorneys for Great American Assurance Company, f/k/a Agricultural Insurance Company;*
*Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company; and Great American E&S Insurance Company*

Goldstein & McClintock LLLP
  Maria Aprile Sawczuk (DE #3320)
  501 Silverside Road
Wilmington, DE 19809
302-444-6710
marias@goldmclaw.com

-and-

Laura McNally (admitted *pro hac vice*)
Emily Stone
Loeb & Loeb LLP
321 N. Clark Street, Suite 2300
Chicago, IL 60654
312-464-3155
lmcnally@loeb.com
estone@loeb.com

*Attorneys for The Continental Insurance Company and Columbia Casualty Company*

- and –

Margaret M. Anderson, Esq. (*pro hac vice*)
Adam A. Hachikian (*pro hac vice*)
FOX SWIBEL LEVIN & CARROLL LLP
200 W. Madison Street, Suite 3000
Chicago, IL 60606
Telephone: (312) 224-1200
Facsimile: (312) 224-1201
Email: panderson@foxswibel.com
          ahachikian@foxswibel.com

*Counsel for Old Republic Insurance Company*

CHOATE, HALL & STEWART, LLP
Douglas R. Gooding (admitted *pro hac vice*)
Jonathan D. Marshall (admitted *pro hac vice*)
Two International Place
Boston, MA 02110
Telephone: (617) 248-5000
dgooding@choate.com
jmarshall@choate.com

-and-

Kim V. Marrkand (admitted *pro hac vice*)
Laura Bange Stephens (admitted *pro hac vice*)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC
One Financial Center
Boston, MA 0211
Telephone: (617) 542-6000
kmarrkand@mintz.com
lbstephens@mintz.com

*Counsel to Liberty Mutual Insurance Company*