```
 1                  UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE
 2

 3   IN RE:                         .  Chapter 11
                                    .  Case No. 20-10343 (LSS)
 4   BOY SCOUTS OF AMERICA AND      .
     DELAWARE BSA, LLC,             .  (Jointly Administered)
 5                                  .
                                    .  Courtroom 2
 6                                  .  824 Market Street
                 Debtor.            .  Wilmington, Delaware 19801
 7                                  .
                                    .  Tuesday, October 5, 2021
 8   . . . . . . . . . . . . . . .  .  2:41 p.m.

 9                    TRANSCRIPT OF ZOOM HEARING
             BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
10                 CHIEF UNITED STATES BANKRUPTCY JUDGE

11   APPEARANCES:

12   For the Debtors:         Derek Abbott, Esquire
                              MORRIS, NICHOLS, ARSHT & TUNNELL LLP
13                            1201 North Market Street
                              16th Floor
14                            Wilmington, Delaware 19899

15                            - and -

16                            Jessica C. Lauria, Esquire
                              Glenn M. Kurtz, Esquire
17                            WHITE & CASE LLP
                              1221 Avenue of the Americas
18                            New York, New York 10020

19   (APPEARANCES CONTINUED)

20   Electronically
     Recorded By:             Brandon J. McCarthy, ECRO
21
     Transcription Service:   Reliable
22                            1007 N. Orange Street
                              Wilmington, Delaware 19801
23                            Telephone: (302) 654-8080
                              E-Mail: gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording:
25   transcript produced by transcription service.
```

APPEARANCES (CONTINUED):

| | |
|---|---|
| For the Debtors: | Michael C. Andolina, Esquire |
| | WHITE & CASE, LLC |
| | 111 South Wacker Drive |
| | Chicago, Illinois 60606 |
| | |
| | -and- |
| | |
| | Adrian C. Azer, Esquire |
| | HAYNES & BOONE, LLP |
| | 800 17TH Street, NW |
| | Suite 500 |
| | Washington, DC 20006 |
| For the Tort Claimants' Committee: | John W. Lucas, Esquire |
| | Kenneth H. Brown, Esquire |
| | PACHULSKI STANG ZIEHL & JONES, LLP |
| | 150 California Street |
| | 15th Floor |
| | San Francisco, California 94111 |
| For AIG Companies: | Michael A. Rosenthal, Esquire |
| | GIBSON, DUNN & CRUTCHER, LLP |
| | 200 Park Avenue |
| | 47th Floor |
| | New York, New York 10166 |
| For Century Indemnity Company: | Tancred Schiavoni, Esquire |
| | O'MELVENY & MYERS, LLP |
| | Times Square Tower |
| | 7 Times Square |
| | New York, New York 10036 |
| For American Zurich Insurance Company: | Mark D. Plevin, Esquire |
| | CROWELL & MORING, LLP |
| | Three Embarcadero Center |
| | 26th Floor |
| | San Francisco, California 94111 |

```
 1  APPEARANCES (CONTINUED):

 2  For Pfau Cochran
    Vertetis Amala and
 3  The Zalkin Law Firm:      Thomas E. Patterson, Esquire
                              KTBS LAW, LLP
 4                            1801 Century Park East
                              26th Floor
 5                            Los Angeles, California 90067

 6  For the Future Claimants'
    Representative:           Kami E. Quinn, Esquire
 7                            GILBERT, LLP
                              700 Pennsylvania Avenue SE
 8                            Suite 400
                              Washington, DC 20003
 9
                              -and-
10
                              Edwin J. Harron, Esquire
11                            Robert S. Brady, Esquire
                              YOUNG CONAWAY STARGATT & TAYLOR, LLP
12                            The Brandywine Building
                              1000 West Street
13                            17th Floor
                              Wilmington, Delaware 19899
14
    For the Coalition of
15  Abused Scouts for
    Justice:                  Eric R. Goodman, Esquire
16                            BROWN RUDNICK, LLP
                              601 Thirteenth Street, NW
17                            Suite 600
                              Washington, DC 20005
18

19                            David J. Molton, Esquire
                              Seven Times Square
20                            New York, New York 10036

21                            -and-

22                            Kenneth M. Rothweiler, Esquire
                              EISENBERG, ROTHWEILER, WINKLER,
23                              EISENBERG & JECK, P.C.
                              1634 Spruce Street
24                            Philadelphia, Pennsylvania 19103

25
```

```
 1  APPEARANCES (CONTINUED):

 2  For United Methodist
    Ad Hoc Committee:        Jeremy W. Ryan, Esquire
 3                           POTTER, ANDERSON & CORROON, LLP
                             1313 North Market Street
 4                           6th Floor
                             Wilmington, Delaware 19801
 5
    For the HMM Claimants:   Evan M. Smola, Esquire
 6                           HURLEY MCKENNA & MERTZ, P.C.
                             20 South Clark Street
 7                           Suite 2250
                             Chicago, Illinois 60603
 8
    For Claimant Sexual
 9  Abuse Victims:           Paul Mones, Esquire
                             PAUL MONES, PC
10                           13101 Washington Boulevard
                             Suite 103
11                           Los Angeles, California 90066

12  For The Church of Jesus
    Christ of Latter-day
13  Saints:                  Jeffrey E. Bjork, Esquire
                             LATHAM & WATKINS, LLP
14                           335 South Grand Avenue
                             Suite 100
15                           Los Angeles, California 90071

16

17

18

19

20

21

22

23

24

25
```

1                               INDEX

2  MATTERS GOING FORWARD:                                        PAGE

3  Agenda
   Item 1:  Debtors' Motion for Entry of Order (I)                 6
4           Scheduling Certain Dates and Deadlines in
            Connection with Confirmation of the Debtors'
5           Plan of Reorganization, (II) Establishing
            Certain Protocols, and (III) Granting Related
6           Relief (D.I. 2618, filed 4/15/21).

7

8

9  Transcriptionist's Certificate                                 20

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commence at 2:41 p.m.)
2                    THE COURT:  Okay.  This is Judge Silverstein.
3  We're here in the Boy Scouts of America; Case 20-10343.
4                    My apologies for the delay, we were having
5                    MR. PLEVIN:  Your Honor, I'm sorry, are you
6  speaking?
7                    THE COURT:  I am.  Okay, Brandon?
8                    MR. PLEVIN:  I can't hear anything.
9                    MR. ABBOTT:  We -- I can hear you, Your Honor.
10                   MS. LAURIA:  So can I, Your Honor.
11                   MR. ABBOTT:  It might be an issue on Mr. Plevin's
12 side.
13                   THE COURT:  Let's give Mr. Plevin a moment.
14      (Pause)
15                   THE COURT:  Mr. Plevin, can you hear me?
16                   MR. PLEVIN:  Yes, I can, Your Honor.
17                   THE COURT:  Okay, you're muted now, but can you
18 hear me?
19          Okay, okay.  Let's try this again.  This is Judge
20 Silverstein.  We're here in Boy Scouts of America, Case
21 Number 20-10343, with respect to a scheduling matter.
22          I understand and I see on the docket that a
23 certification has been filed with respect to the scheduling
24 order, but let me turn it over to debtors' counsel.
25                   MR. ABBOTT:  Thank you, Your Honor.  Derek Abbott

1  of Morris, Nichols, here for the debtors, Your Honor.  That
2  certificate reflects that we believe we have reached
3  agreement with the parties on the form of order, after a lot
4  of work over the weekend and the early part of this week, but
5  it may be helpful for Your Honor to get a brief update.  So
6  if I could ask Ms. Lauria to do that, Your Honor, I think
7  that would assist the Court, perhaps.
8              THE COURT:  Thank you.  Ms. Lauria?
9              MS. LAURIA:  Thank you, Your Honor, Jessica
10 Lauria, White & Case, on behalf of the BSA.
11             Your Honor, I'll be brief and Mr. Andolina will be
12 handling any questions with respect to the form of order
13 itself, but we did want to alert the Court and, in
14 particular, state court counsel who may be dialed in today,
15 that 95 percent of the printing with respect to the
16 solicitation packages was complete as of this morning.  That
17 accounts for about 16 million printed pages.
18             The good news is, Omni was able to do two-sided
19 paper and in some instances print multiple pages on a single
20 sheet, so the number of pages are not quite as severe as what
21 I just listed, but that is still a lot of paper.  So, please,
22 encourage your clients to recycle when they're done with
23 their solicitation packages.
24             The one thing that is left, Your Honor, are the
25 ballots themselves, those went into printing this afternoon.

1  Omni does expect that they will start launching solicitation
2  packages into the mail today.  The first wave will be
3  individuals who are incarcerated.  So, for those state court
4  counsel that may be representing incarcerated individuals,
5  they should be expecting to hear from their clients within
6  the next couple of days.
7          You'll recall, Your Honor, that we did permit
8  state court counsel to revisit their designations with
9  respect to master balloting.  That process will conclude in
10 the next day or two and then those solicitation packages will
11 follow.  So I think we are cautiously optimistic that we will
12 have this 100 percent complete, perhaps as we get towards
13 this next weekend.
14         Your Honor, we did have mediation last week.  No
15 agreements to announce today, but the mediation sessions, as
16 I understand them, were very productive.
17         So, with that, Your Honor, I know we're here on a
18 scheduling order, Mr. Andolina I think is here and prepared
19 to answer any questions that you may have.  And, with that,
20 I'll hand it over -- back to you or over to him.
21         THE COURT:  Thank you.  I read what's been
22 uploaded most recently at Docket -- where am I -- 6494, and I
23 understand the new paragraph that's been put in and I
24 understand that certain insurers and the TCC are still not
25 thrilled with the January 24 confirmation start, but that's

1  what we're going with, but certainly I understand -- I
2  understand the objections.
3              Here's the only question that I had in reviewing
4  the order, which I really could focus on after we were done
5  with the last hearings.  I will say that I have never entered
6  an order like this, requiring participating parties to self-
7  identify months before confirmation objections are due.  I
8  think it makes total sense with respect to all the parties
9  that have been participating in this case because we know who
10 they are and discovery needs to start.
11             The only concern I have is, I could certainly
12 envision that I will get pro se objections that come in at
13 the confirmation objection deadline and I am certainly going
14 to let those parties participate in confirmation.  If they
15 want some discovery, I guess I'm going to have to figure out
16 and you guys are going to have to figure out how we deal with
17 that.  But certainly, in terms of voicing their concerns at
18 confirmation, I'm going to permit that.  And I don't know
19 about any parties who haven't yet participated in the case
20 who may not be pro se, but who haven't yet participated in
21 the case.  And I will handle all of that on a one-off basis,
22 but if you read the order literally, which people tend to do,
23 it suggests that those parties would not be able to
24 participate at confirmation, as I read -- I think it's
25 paragraph -- is it 2 or 4?  Probably 4 more directly says

1 that.

2 So maybe there needs to be something, you know,
3 subject to further order of the Court, or something that we
4 put in here that does not weaken the order with respect to
5 parties who have been participating to date, but certainly
6 doesn't preclude -- and, again, in particular, I'm thinking
7 of pro se parties -- does not preclude them from
8 participating in confirmation or from thinking that they
9 cannot participate at confirmation because of this order.

10 And I'll give the debtors and anyone else who
11 wants an opportunity to look at something and draft
12 something, I'll push that back on you to do that, but I think
13 you understand the concern I have, and it does not affect the
14 schedule or anything else in this order.

15 MR. ANDOLINA: Thank you, Your Honor. Mike
16 Andolina, White & Case, on behalf of the Boy Scouts of
17 America.

18 First, Your Honor, I want to thank you for raising
19 that issue, it's an important one and certainly one that the
20 debtors will take a very close look at. I think we have some
21 thoughts on a footnote that could address Your Honor's issue.
22 And I did want to thank the parties for working so hard over
23 the weekend and early this morning. Your Honor, one of the
24 things that sort of I mentioned on our meet-and-confer is
25 that we need to establish to the Court that the parties are

1  willing to move forward on a consensual basis as much as
2  possible to really respect Your Honor's time and to respect
3  sort of the debtors' estate, and certainly getting this
4  process out to survivors in the right way.  So, thank you,
5  Your Honor, for raising that issue.
6  　　　　　We do take your charge that the debtors will look
7  to add a footnote.  I think the only additional thing with
8  respect to the order, Your Honor, is that the parties had
9  requested certain status conference dates.  We can coordinate
10 with your chambers on that fill-in-the-blank and perhaps
11 include those in the final form of order.  So we will take
12 that, Your Honor, back and I think the parties can work on
13 some language to address that issue.
14 　　　　　THE COURT:  What dates are we looking at?  Let me
15 see.
16 　　　　　MR. ABBOTT:  Your Honor, it's Derek Abbott.  We
17 had thought perhaps a final pretrial on January 21, that date
18 was in there, but I think bracketed.  I believe that's on
19 page 5 of the order, Your Honor.
20 　　　　　THE COURT:  Uh-huh.
21 　　　　　MR. ABBOTT:  And then in paragraph 13 there were
22 just, I think, some blanks for the Court to fill in, dates
23 that it wanted to try to have some sort of intermediate
24 status conferences between now and the hearing, if the Court
25 thought that that would be helpful.

1           THE COURT:  I think it probably would be.  And the
2  21st, starting with that one, that works.  And that is just a
3  day after I receive the pretrial order, so I think it needs
4  to be after that.  So that's fine, we can do that at 10
5  o'clock.
6           I did note that the confirmation brief, the plan
7  reply deadline, is January 17, which is Martin Luther King
8  Day.  So it's a federal holiday, but I still want it filed on
9  that day, because I want to have the most time that I have
10 that week to look at it.
11          As for some intermediate dates, I will have either
12 Ms. Johnson or Ms. Batts reach out and coordinate something
13 rather than trying to do that on this call, but we will
14 suggest some dates.  I think it would be helpful.
15          The other thing that would be helpful -- and I
16 know my chambers reached out to, I think, Mr. Abbott and
17 Morris, Nichols, but I would like anyone who believes there
18 is a discovery dispute currently pending, which I think is
19 debtors and probably Century, I'd like to know what discovery
20 disputes I have with the docket numbers, so that I can make
21 sure we get those addressed right away.
22          Those are my thoughts.  I do see Mr. Schiavoni's
23 hand.
24          MR. SCHIAVONI:  So, Your Honor, we should write
25 your clerk with the -- the briefs are fully -- are filed, so

1  we should just write your clerk with that?  Okay, good.
2              THE COURT:  Yeah.
3              MR. SCHIAVONI:  Okay.  Just one quick point,
4  Judge, and this is intended to be productive, okay?  During
5  the disclosure statement hearing, there was, you know, a
6  little repertoire back and forth about how -- you know, what
7  discovery is needed is dependent upon the shape of the
8  hearing, the sort of discussion we had in connection with the
9  RSA hearing; in other words, the findings drive what -- the
10 scope of the hearing, the scope of discovery.
11             And at some point in that exchange, I think Your
12 Honor sort of reached out and suggested to the plan
13 proponents that, you know, might they consider narrowing or
14 eliminating some of the findings, there was a little
15 discussion about that.  And I'm not binding anybody to my
16 memory of events, but I thought it sort of ended with the
17 plan proponents telling Your Honor that they would -- we
18 broke for 15 minutes, and then they came back and said, I
19 think, something to the effect of, they'd consider it further
20 and kind of get back to us.  Okay?  There's been no
21 development on that front over the weekend or otherwise.
22             I think, I don't want to say pessimistically, but
23 once the Court selected a hearing date, sort of all the steam
24 went out of the notion that we should be focused on what the
25 hearing is about in the time period we have.  And I would

1  just ask Your Honor that it might be helpful if you suggested
2  that, whatever the answer is going to be on that question, it
3  might be good to have it in the next week because it does
4  drive what discovery is served, what discovery disputes come
5  to Your Honor.  In other words, if they're going to change
6  anything, they might as well do it up front, you know.  And
7  if they don't, they don't, but just, you know, it would avoid
8  -- it might possibly narrow disputes on a going-forward
9  basis.  So some encouragement on just setting a date when
10 they might get back to us on that, I think, is intended
11 productively to narrow disputes going forward.
12             THE COURT:  Do debtors have a response to that?
13             MS. LAURIA:  Yes, Your Honor.  Again, Jessica
14 Lauria on behalf of the Boy Scouts of America.  I think I was
15 the last person to have addressed the Court on this topic
16 and, as I said at that time, speaking for the debtors, we
17 heard you loud and clear, and we understand that the findings
18 do need to be refined in accordance with the Court's remarks
19 at the hearing last week.
20             The FCR and the Coalition may wish to address the
21 Court.  In fact, I see Mr. Goodman's hand up.  We know
22 they've been working hard on a revised proposal that we would
23 ultimately share with the parties in interest.
24             As for timing, I understand Mr. Schiavoni's point
25 in the sense that that may in fact narrow the issues that

1  they're seeking discovery on. We're pushing forward with
2  discovery, but I guess I'll turn to Mr. Goodman and see what
3  the anticipated timing is for the process that he's currently
4  working through with the FCR on that particular point.
5        THE COURT: Thank you. Mr. Goodman?
6        MR. GOODMAN: Thank you, Your Honor; Eric Goodman,
7  Brown Rudnick, counsel for the Coalition.
8        Your Honor, we heard you and we have been working
9  on it. The findings and orders, obviously, have been the
10 subject of discussions between parties since the last
11 hearing. The findings and orders as they currently exist
12 took a lot of time to draft and I think changes, especially
13 given the number of parties involved and the importance of
14 these issues to survivors and to the insurers, is going to
15 take some time.
16       I will note that this was the subject of pretty
17 lengthy discussions this past week during mediation. I think
18 the lion's share of those discussions took place with counsel
19 for AIG and not counsel for Century, but I think that the
20 insurers do have a common interest on these matters.
21       So I think that we are trying to make progress and
22 I think that we will ultimately do so before we get to plan
23 confirmation. In terms of discovery, though, I think the
24 issue is whether or not the proposed plan treatment for abuse
25 claims, which is that the settlements be based on -- or the

1  claim values be based on the debtors' historical settlements
2  and experience in the tort system, is really what would be
3  driving the discovery process going forward.
4            Our expectation is that the debtors will be able
5  to prove at confirmation that the trust distribution
6  procedure values and factors are in fact consistent with the
7  debtors' historical settlements and experience in the tort
8  system.  And I think that those -- you know, those values and
9  whether or not that is in fact true, you've gotten -- the
10 debtors have proposed the right values and the right factors
11 is something that I can't really solve for, you know, today
12 in terms of changes to the findings in the order.
13           So I don't know even if we do reach agreement on
14 some issues with respect to the findings, I don't think
15 that's going to change where the parties are in terms of
16 discovery on a go-forward basis.  But, you know, if the Court
17 is wondering, yes, we are very hard at work on this, Your
18 Honor.
19           MR. SCHIAVONI:  Your Honor, just, you know,
20 obviously, this is going to drive an enormous amount of
21 discovery.  It's not what dollar value you put on a claim,
22 it's whether the process that they've picked to review the
23 claims is in any way in accord with what they did
24 prepetition.  That's going to drive a lot of discovery of
25 lawyers.  It's very, very different, like enormously

1  different, we didn't have Eric Green as a judge, and it's
2  going to drive a lot of third party discovery.
3              So, whatever the answer is going to be, I would
4  just suggest that this is not something to give alternative
5  findings after discovery, it's something to give it before
6  all those third party subpoenas go out.
7              THE COURT:  Okay.  Well, I would suggest that, if
8  there's going to be changes in the findings that are
9  requested to be entered, if that's grammatically right, I
10 would suggest that they be provided sooner rather than later,
11 but I don't see how I can mandate, you know, do it by X date.
12             But I do think, to some degree, I don't see how it
13 couldn't obviate the need for certain discovery if certain
14 findings are not going to be included now in what's being
15 asked of the Court.  So I do think it's a fair comment to say
16 that -- well, I do think it's fair to say, again, sooner
17 rather than later, so that any discovery in this very compact
18 schedule that we have is focused on the issues that are
19 actually going to come before the Court and not issues that
20 are going to go away.
21             And so I would encourage those who are working and
22 negotiating on those particular findings, the five findings
23 that we talked about at length during disclosure statement,
24 be subject to -- those people who are working on those, I
25 think it should be a focus of theirs to make determinations

1  on what findings can be eliminated or changed such that they
2  are no longer controversial.  That's the best I can do.
3             MR. GOODMAN:  Thank you, Your Honor.  And I'll
4  add, if I could wave a magic wand and significantly limit the
5  discovery in this case, I would not hold back in doing so.
6             So we will continue to work on this issue.  Thank
7  you.
8             THE COURT:  Okay.  Anyone else?
9        (No verbal response)
10            THE COURT:  Okay.  Well, thank you all for getting
11 on the Zoomcast.  We will look for --
12            MR. ABBOTT:  Your Honor -- Your Honor, one more
13 thing, if I may?  I apologize.  Again, Derek Abbott.
14            Just to ease the burden on the Court's staff, if
15 there are parties that believe there are open discovery
16 issues, maybe the debtors can consolidate those issues for
17 the Court and, if people would just reach out by email to me
18 and Ms. Topper in my office, we'll aggregate a list and then
19 share with everybody, so everybody is in the loop on what
20 people believe is still outstanding and get that to the
21 Court's chambers.
22            THE COURT:  Well, thank you.  I appreciate that
23 offer and I'm sure my chambers appreciates that offer.  So
24 that's fine.  Everyone direct it to Mr. Abbott and Ms.
25 Topper, and it will get forwarded to us and we will get it

1  calendared.
2           Anything else?
3       (No verbal response)
4           THE COURT:  Okay.  Thank you very much, everyone.
5  We're adjourned.
6           COUNSEL:  Thank you, Your Honor.
7       (Proceedings concluded at 3:05 p.m.)

```
 1                        CERTIFICATION
 2           I certify that the foregoing is a correct
 3   transcript from the electronic sound recording of the
 4   proceedings in the above-entitled matter to the best of my
 5   knowledge and ability.
 6
 7
 8
 9   /s/ Tracey J. Williams                    October 5, 2021
10   Tracey J. Williams, CET-914
11   Certified Court Transcriptionist
12   For Reliable
13
14
15
16
17
18
19
20
21
22
23
24
25
```