**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Re Docket Nos. 2618, 6438, 6443, 6445 |

**THE OFFICIAL COMMITTEE OF TORT CLAIMANTS
TO BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC'S
NOTICE OF DEPOSITION PURSUANT TO RULE 30(b)(6) OF THE
FEDERAL RULES OF CIVIL PROCEDURE OF
THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS**

PLEASE TAKE NOTICE THAT pursuant to Rules 30(b)(6) of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable to these proceedings by Rules 9014 and 7030 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Official Committee of Tort Claimants to Boy Scouts of America and Delaware BSA, LLC (the "TCC"), by and through its undersigned counsel, shall take the deposition of The Church of Jesus Christ of Latter-day Saints ("TCJC") by the person(s) most qualified to testify with respect to the topics described in **Exhibit A** hereto.

The deposition will take place on November 9, 2021 at 10:00 a.m. or at such other date and time as the parties may agree. The TCJC may elect to be deposed in person or remotely. If the TCJC elects to be deposed in person, the deposition will take place at the offices of Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, Delaware 19899-8705,

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

and parties may choose to depend in person or remotely.

If the TCJC chooses to be deposed remotely:

1. Counsel for the parties and their clients will be participating from various, separate locations;

2. The court reporter will administer the oath to the witness remotely;

3. The witness will be required to provide government-issued identification satisfactory to the court reporter, and this identification must be legible on camera;

4. Each participating attorney may be visible to all other participants, and their statements will be audible to all participants;

5. All exhibits will be provided simultaneously and electronically to the witness and all participants;

6. The court reporter will record the testimony;

7. The deposition may be recorded electronically; and

8. Counsel for all parties will be required to stipulate on the record:

   a. Their consent to this manner of deposition; and

   b. Their waiver of any objection to this manner of deposition, including any objection to the admissibility at trial of this

testimony based on this manner of deposition.

Dated: October 8, 2021
Wilmington, Delaware

           PACHULSKI STANG ZIEHL & JONES LLP

           */s/ James E. O'Neill*
           James I. Stang (CA Bar No. 94435) (admitted *pro hac vice*)
           Iain A.W. Nasatir (CA Bar No. 148977) (admitted *pro hac vice*)
           Kenneth H. Brown (CA Bar No. 100396) (admitted *pro hac vice*)
           James E. O'Neill (DE Bar No. 4042)
           John W. Lucas (CA Bar No. 271038) (admitted *pro hac vice*)
           Steven W. Golden (DE No. LP 0127)
           919 North Market Street, 17th Floor
           P.O. Box 8705
           Wilmington, DE 19899-8705 (Courier 19801)
           Tele/Fax: (302) 652-4100 / (302) 652-4400
           Email:    jstang@pszjlaw.com
                        inasatir@pszjlaw.com
                        kbrown@pszjlaw.com
                        joneill@pszjlaw.com
                        jlucas@pszjlaw.com
                        sgolden@pszjlaw.com

*Counsel for the Tort Claimants' Committee*

# EXHIBIT A TO THE NOTICE OF DEPOSITION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS

## DEFINITIONS

For the purposes of these Requests for Production, the following Definitions shall apply:

1. The terms "all," "any," and "each" shall each be construed as encompassing any and all. The singular shall include the plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive; and the term "including" means "including without limitation." The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense.

2. Capitalized terms not otherwise defined herein shall have same meanings set forth in the Plan.

3. "Abuse" shall have the meaning provided in the Plan.

4. "Abuse Claim" means a liquidated or unliquidated Claim against one or more Abuse Parties that is attributable to, arises from, is based upon, relates to, results from, or is otherwise Concerned with, in whole or in part, directly, indirectly, or derivatively, alleged Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based on misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory, including any theory based on public policy or any act or failure to act by an Abuse Party or any other Person for whom any Abuse Party is alleged to be responsible. The term "Abuse Claims" includes Direct Abuse Claims and Indirect Abuse Claims.

2

5. "Abuse Claimant" shall mean the party asserting an Abuse Claim and their attorneys, advisors, agents, representatives, and experts.

6. "Abuse Party" means, individually and collectively, (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Chartered Organizations; (f) Insurance Companies; or (g) all or any of the foregoing's Persons' Representatives.

7. "Affiliated Individuals" shall have the meaning provided in Claim 1248.

8. "Bankruptcy Costs" shall have the meaning provided in Claim 1248.

9. "BSA Plan Settlement" means any settlement, whether incorporated into the Plan or presented for approval pursuant to Bankruptcy Rule 9019, between the Debtors and any other Entity (including, but not limited to, an Insurance Company, Chartered Organization, or Local Council), including, but not limited to, the Hartford Insurance Settlement and the TCJC Settlement.

10. "Causes of Action" shall have the meaning provided in the Plan.

11. "CES" means the Church Educational System and its agents, accountants, divisions, institutions, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

12. "Chapter 11 Cases" shall mean the above-captioned chapter 11 cases of Boy Scouts of America and Delaware BSA, LLC, pending before the United States Bankruptcy Court for the District of Delaware.

13. "Chartered Organization" shall have the meaning provided in the Plan.

14. "Church" means The Church of Jesus Christ of Latter-day Saints.

15. "<u>Church Records</u>" means any Document maintained by You or otherwise in Your possession Concerning the TCJC, including Your membership records, "red flag" records, membership file "annotations," and similar Documents.

16. "<u>Claim 1248</u>" means the Proof of Claim filed by COP against Delaware BSA, LLC bearing proof of claim number 1248.

17. "<u>Claim 12530</u>" means the Proof of Claim filed by COP against Boy Scouts of America bearing proof of claim number 12530.

18. "<u>Claims</u>" shall have the meaning provided in the Plan.

19. "<u>Communications</u>" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, correspondence, memoranda, emails, facsimile transmissions, or other form of verbal, written, mechanical, or electronic disclosure, in Your actual or constructive control or custody or in the control or custody of any current or former affiliates, representatives or advisors.

20. "<u>Concerning</u>" means relating to, evidencing, supporting, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, referencing, discussing, indicating, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

21. "<u>Confirmation Hearing</u>" shall have the meaning provided in the Plan.

22. "<u>COP</u>" means the Corporation of the President of the Church of Jesus Christ of Latter-day Saints, a corporation sole, and its agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

DOCS_NY:44235.3 85353/002

23. "Counterclaims and Crossclaims" means those Claims You assert against the Debtors set forth in paragraph 15 in Claim 1248 and Claim 12530.

24. "CPB" means the Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints, a corporation sole, and its agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

25. "Debtors" means, collectively or individually, as context requires and to encompass responsive documents Boy Scouts of America and Delaware BSA, LLC, and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

26. "Defense Costs" shall have the meaning provided in Claim 1248.

27. "Disclosure Statement" shall mean the *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6445].

28. "DMC" means Deseret Management Corporation and its agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

29. "Documents" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all Documents and information in Your possession, custody, or control, and includes: all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda, transcripts, tapes, or other voice recordings, and all other Documents and tangible things, including

booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, print-outs, and all other data, whether recorded by electronic or other means, and all drafts thereof.  If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on any of the pages thereof, then each such non-identical copy is a separate Document and must be produced.  When examples of categories or types of Documents are given in a particular Request for Production by use of phrases such as "including," this shall always be interpreted as being for illustrative purposes only (*i.e.*, to be understood as "including without limitation") and in no way limits or narrows the scope of any Request for Production. "Documents" always includes Communications, whether so stated in a particular Request for Production or not.

30.  "Ensign" means Ensign Peak Advisors, Inc., and its agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

31.  "Entity" shall have the meaning ascribed to it in the Bankruptcy Code.

32. "Farmland" means Farmland Reserve, Inc., and its agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

33. "FCR" shall mean James L. Patton, Jr., the legal representative appointed by the Bankruptcy Court for holders of Future Abuse Claims, or any successor legal representative appointed by the Bankruptcy Court, and his agents, accountants, financial advisors, employees, experts, attorneys, representatives, affiliates, predecessors and/or successors.

34. "Hartford Insurance Settlement" shall have the meaning provided in the Plan.

35. "Hartford Insurance Settlement Agreement" shall have the meaning provided in the Plan.

36. "Indemnification Agreement" shall have the meaning provided in Claim 1248.

37. "Indemnity Claims" shall have the meaning provided in Claim 1248.

38. "Insurance Coverage-Related Claims" means those Claims You assert against the Debtors set forth in paragraphs 13 and 14 in Claim 1248 and Claim 12530.

39. "Identify" when referring to a person means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this definition, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person. When referring to documents, "to identify" means to give, to the extent known, the (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s), and recipient(s).

40. "Indirect Abuse Claims" shall have the meaning provided in the Plan.

41. "Insurance Company" shall have the meaning provided in the Plan.

42. "Insurance Policy" shall have the meaning provided in the Plan, including all rights and benefits thereunder, and the proceeds thereof.

43. "IRI" means Intellectual Reserve, Inc., and its agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

44. "Local Councils" shall have the meaning provided in the Plan.

45. "Motion" shall mean the *Debtors' Motion for Entry of an Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation and Voting Procedures, (III) Approving Forms of Ballots, (IV) Approving Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief* [Docket No. 2295], as such Document may be amended, supplemented, or modified from time to time.

46. "Other Insurance Policy" means any Insurance Policy other than a TCJC Insurance Policy that does or may provide coverage for damages alleged by a TCJC Abuse Claimant for an Abuse Claim, including, but not limited to, all Insurance Policies for which a Local Council and/or Chartered Organization associated with a TCJC Scouting Unit is a named or additional insured.

47. "Perpetrator" shall have the meaning provided in the Plan.

48. "Petition Date" means February 18, 2020.

49. "Plan" shall mean the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6443] (the "Plan"), as such Document may be amended, supplemented, or modified from time to time.

50. "Prepetition" shall mean occurring prior to the Petition Date.

7

51. "PRI" means Property Reserve, Inc., and its agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

52. "Proof of Claim" shall have the meaning provided in the Plan.

53. "Releasing Parties" shall have the meaning provided in the Disclosure Statement.

54. "Scouting Unit" means an entity that conducts scouting for a Chartered Organization, including but not limited to a pack, den, troop, Sea Explorers, Air Explorers, Learning for Life, Explorers, Venturing, crew, ship, chapter, and any associations that were predecessor associations of the foregoing.

55. "Settled Abuse Action Claims" means those Claims You assert against the Debtors Concerning the Settled Abuse Actions, as set forth in paragraphs 9 and 10 in Claim 1248 and Claim 12530.

56. "Settled Abuse Actions" shall have the meaning provided in Claim 1248.

57. "Settlement" shall mean any Prepetition settlement or other resolution of an Abuse Claim.

58. "Settlement Trust" shall have the meaning provided in the Plan.

59. "Shared Policies" shall have the meaning provided in Claim 1248.

60. "Subrogation Claims" shall have the meaning provided in Claim 1248.

61. "Survivor" means a survivor of Abuse in scouting, including Abuse Claimants.

62. "TCJC" means The Church of Jesus Christ of Latter-day Saints and its agents, accountants, departments, divisions, offices, governing bodies, councils, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members,

8

representatives, affiliates, subsidiaries, predecessors and/or successors, including, for the avoidance of doubt, all TCJC Related Parties.

63. "TCJC Abuse Claimant" means an Abuse Claimant who identifies You as the sponsor of their Scouting Unit in a Proof of Claim or is otherwise known to You to have been a member of a TCJC Scouting Unit.

64. "TCJC Claims" means all Claims and Causes of Action that were or could have been asserted by TCJC against the Debtors or other Releasing Parties, including any Indirect Abuse Claims.

65. "TCJC Insurance Policy" means any Insurance Policy that does or may provide coverage for damages alleged by a TCJC Abuse Claimant for an Abuse Claim, including, but not limited to, all Insurance Policies in which You are a named or additional insured.

66. "TCJC Insurance Rights" shall have the meaning provided in the Plan.

67. "TCJC Proofs of Claim" means any Proofs of Claim filed by TCJC against the Debtors in the Chapter 11 Cases, including Claim 1248 and Claim 12530.

68. "TCJC Related Parties" means all Entities, organizations, wards, stakes, general authorities, departments, missions, financial centers, divisions, programs, enterprises, councils, and offices that are affiliated with, governed by, controlled by, owned by, within the hierarchy of, or otherwise related to the Church. For the avoidance of doubt, "TCJC Related Parties" includes CPB, COP, DMC, Ensign, Farmland, IRI, CES, and PRI and each of their agents, accountants, departments, divisions, offices, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

69. "TCJC Scouting Unit" means a Scouting Unit sponsored by You.

9

70. "TCJC Settlement" shall have the meaning provided in the Plan.

71. "TCJC Settlement Agreement" shall have the meaning provided in the Plan.

72. "Verdict" shall mean any Prepetition verdict, judgment, award or decision of a court, arbitrator, mediator or similar tribunal Concerning an Abuse Claim.

73. "You" or "Your" and variants thereof mean TCJC.

**TOPICS**

**Topic No. 1:**

The estimation of any Abuse Claims.

**Topic No. 2:**

Your contention, if you so contend, that the TCJC Settlement satisfies the standards for 11 U.S.C. § 363, Federal Rule of Bankruptcy Procedure 9019(b), or 11 U.S.C. § 1129(a)(7).

**Topic No. 3:**

The Plan.

**Topic No. 4:**

The Disclosure Statement.

**Topic No. 5:**

The Motion.

**Topic No. 6:**

The Hartford Insurance Settlement.

**Topic No. 7:**

The Hartford Insurance Settlement Agreement.

**Topic No. 8:**

The TCJC Settlement.

**Topic No. 9:**

The TCJC Settlement Agreement.

**Topic No. 10:**

Church Records Concerning every Perpetrator named or referenced in any Proof of Claim.

**Topic No. 11:**

Church Records Concerning TCJC Abuse Claimants.

**Topic No 12:**

Documents maintained by Your Director of Risk Management Division Concerning allegations of Abuse suffered by or perpetrated by Your members involved in any way with any Scouting Unit or scouting activity.

**Topic No. 13:**

The Identity of adults and youth who participated in any TCJC Scouting Unit identified (whether by unit number or description) in any Proof of Claim.

**Topic No. 14:**

The TCJC Insurance Policies.

**Topic No. 15:**

The Other Insurance Policies.

**Topic No. 16:**

The value of the TCJC Insurance Rights.

**Topic No. 17:**

The facts and circumstances that Concern Your Contention, if you so contend, that that the assignment of the TCJC Insurance Rights to the Settlement Trust would constitute a "substantial

contribution" or otherwise support the issuance of a channeling injunction under the Plan in Your favor.

**Topic No. 18:**

The complaints and statements of claim associated with the Settlements and Verdicts.

**Topic No. 19:**

The Abuse Claims.

**Topic No. 20:**

Communications with the Debtors and/or Bates White Concerning the Abuse Claims.

**Topic No. 21:**

Estimates or approximations of the number of Perpetrators and/or the number of Survivors.

**Topic No. 22:**

Valuations of any Abuse Claims.

**Topic No 23:**

The BSA Plan Settlement.

**Topic No. 24:**

The Indemnification Agreements

**Topic No. 25:**

The Shared Policies.

**Topic No. 26:**

The Affiliated Individuals on whose behalf You asserted the TCJC Proofs of Claim.

**Topic No. 27:**

The Subrogation Claims, including any Subrogation Claims asserted on behalf of Affiliated Individuals.

12

**Topic No. 28:**

The Indemnity Claims, including any Indemnity Claims asserted on behalf of Affiliated Individuals.

**Topic No. 29:**

The Settled Abuse Action Claims.

**Topic No. 30:**

The validity and amount of the Defense Costs and the Bankruptcy Costs.

**Topic No. 31:**

Your estimates of the amount of the Insurance Coverage-Related Claims and the Counterclaims and Crossclaims.

**Topic No. 32:**

Any security interest You assert against the Debtors.

**Topic No. 33:**

Any administrative expense claim You assert against the Debtors.