**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) (Jointly Administered) |
| Debtors. | **Objection Deadline:** October 28, 2021 at 4:00 p.m. (ET) **Hearing Date:** November 10, 2021 at 10:00 a.m. (ET) |

## THE ALLIANZ INSURERS' MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Allianz Global Risks US Insurance Company ("Allianz"), National Surety Corporation ("National Surety"), and Interstate Fire & Casualty Company ("Interstate" and together with Allianz and National Surety, the "Allianz Insurers"), by and through undersigned counsel, hereby move the Court (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit 1**, granting the Allianz Insurers relief from the automatic stay provisions of 11 U.S.C. § 362(a) to pursue certain pending insurance coverage litigation. In support hereof, the Allianz Insurers respectfully represent the following:

### INTRODUCTION[2]

These bankruptcy cases have been pending for over nineteen months. Since National Surety's first motion for relief from the automatic stay on March 6, 2020, and the resulting agreed order making clear that the State Court Actions were stayed, the Debtors now are on their Fifth Amended Plan of Reorganization. The Plan lacks any semblance of insurance neutrality

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Lane, Irving, Texas 75038.
[2] Capitalized terms used but not defined in the Introduction are ascribed the definitions given to them later in this Motion.

and purports to retain the Bankruptcy Court for the District of Delaware's (this "Court") jurisdiction over the State Court Actions. This is in direct contradiction to comments made by this Court that it would not be making coverage decisions[3] and inconsistent with the Debtors' own position in the Hartford Adversary Proceeding that coverage litigation should remain in the state courts. The Plan also bases, in part, recoveries to abuse claimants on the Debtors being successful against the insurers, including the Allianz Insurers, in coverage actions. The availability of insurance coverage, and the amount of any such coverage, however, is a hotly contested issue to be decided by the state courts. Delaying the state courts' determinations of (1) whether coverage is available, and (2) the amount of coverage available, serves no legitimate beneficial interest.

It is clearly time to allow the State Court Actions to proceed so that coverage issues can be litigated to judgment. The State Court Actions advanced significantly pre-petition, and the work, discovery and preparation in those cases should not be lost. Coverage issues need to be determined at some point, and they should be litigated in a timely manner in the proper forum. Additionally, if the automatic stay is not modified to allow the State Court Actions to proceed, the Allianz Insurers have no doubt that the Debtors and other Plan proponents intend to argue that the Plan's retention of jurisdiction language divests the state courts of jurisdiction and that such actions should proceed in this Court. Furthermore, lifting the automatic stay to allow the State Court Actions to proceed is not prejudicial to the Debtors because the State Court Actions do not seek affirmative money damages against the Debtors and the requirement that the Debtors participate in the State Court Actions does not rise to the level of prejudice or hardship. Indeed,

---

[3] *See* May 19, 2021 Hr'g Tr. at 241:22 ("no coverage issue is going to be adjudicated.") 242:10-11 ("I can tell everyone right now that I can't imagine I would decide a coverage issue.").

#118468521 v12

the Debtors contend that the State Court Actions could represent a substantial contribution to the Settlement Trust.[4]

For these reasons, and as set forth more completely below, the Motion should be granted.

## JURISDICTION AND VENUE

1.    The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The statutory predicates for the relief sought by the Motion are sections 105(a) and 362 of Title 11, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), as supplemented by Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

4.    Pursuant to Local Rule 9013-1(f), the Allianz Insurers hereby confirm their consent to entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

**Allianz & The Allianz Policy**

5.    Allianz is a corporation organized under the laws of the State of Illinois with its principal place of business and statutory home office in the State of Illinois.  *See Allianz's Answer to National Surety Corporation's Complaint for Declaratory Relief and Counterclaim*

---

[4]  *See* Disclosure Statement, Art. III(F)(5) ("However, if the BSA and the Settlement Trust are successful in defeating the coverage defenses that have been, or may be asserted in the Insurance Coverage Actions and Insurance Actions (which the BSA believes is probable), the proceeds of these Actions could represent a substantial contribution to the Settlement Trust.").

(the "<u>Answer and Counterclaim</u>") filed in the Illinois Coverage Action (defined below), attached as **<u>Exhibit A</u>** to the *Declaration of Todd C. Jacobs in Support of the Allianz Insurers' Motion for Relief from the Automatic Stay* (the "<u>Jacobs Declaration</u>"), filed contemporaneously herewith, at ¶ 2.

6.      Allianz issued to Boy Scouts of America ("<u>BSA</u>") that certain excess liability policy, Umbrella Liability Policy (Policy No. UMB599346), in effect for the policy period January 1, 1980 to January 1, 1981 (the "<u>Allianz Policy</u>"). *See id.* at ¶ 13.

7.      The Allianz Policy indemnifies BSA for amounts that it is obligated to pay due to liability for "Personal Injuries", "Property Damage" or "Advertising Liability" out of each occurrence, where "occurrence" is defined by the Allianz Policy as "an accident, . . . , which results during the policy period, in personal injury, property damage or advertising liability neither expected nor intended from the standpoint of the Insured." *Id.* at ¶¶ 14-17.  Among other provisions, the Allianz Policy also sets forth certain limits of liability. *See id.* at ¶ 20.

**National Surety & The NS Policies**

8.      National Surety is a corporation organized under the laws of the State of Delaware with its principal place of business and statutory home office in the State of Illinois. National Surety is licensed and authorized to issue insurance policies in Illinois. *See Complaint for Declaratory Relief* (the "<u>Complaint</u>") filed in the Illinois Coverage Action (defined below), attached to the Jacobs Declaration as **<u>Exhibit B</u>**, at ¶ 8.

9.      In the early 1980s, National Surety issued to BSA two excess liability policies: Blanket Excess Liability Policy No. XLX1484309, in effect for the policy period January 1, 1983 to January 1, 1984; and Blanket Excess Liability Policy No. XLX1484392, in effect for the policy period January 1, 1984 to January 1, 1985 (collectively, the "<u>NS Policies</u>"). *See id.* at

#118468521 v12

¶ 39.

10.     The NS Policies, which are "follow form"[5] excess policies, provide indemnity coverage for "occurrence[s]" that took place during the relevant policy period. *Id.* at ¶ 41. An "occurrence" is an "accident . . . which results in Personal Injury . . . neither expected nor intended from the standpoint of the insured." *Id.* at ¶ 42.

11.     National Surety also issued high-level excess policies to BSA in later years, all of which contain substantially similar language: Excess Liability Policy No. XXK2112433, in effect for the policy period October 19, 1990 to March 1, 1991; Excess Liability Policy No. XXK2178302, in effect for the policy period March 1, 1991 to March 1, 1992; Excess Liability Policy No. XXK2175018, in effect for the policy period March 1, 1992 to March 1, 1993; Excess Liability Policy No. XXK14626451, in effect for the policy period March 1, 1993 to March 1, 1994; Excess Liability Policy No. XXK67679605, in effect for the policy period March 1, 1994 to March 1, 1995; Excess Liability Policy No. XXK95349775, in effect for the policy period March 1, 1995 to March 1, 1996; Excess Liability Policy No. CSR2839507, in effect for the policy period March 1, 1996 to March 1, 1997; Excess Liability Policy No. XXK95516738, in effect for the policy period March 1, 1996 to March 1, 1997.

**Interstate & The Interstate Policies**

12.     Interstate is a corporation organized under the laws of the State of Illinois with its principal place of business and statutory home office in the State of Illinois. Interstate is licensed and authorized to issue insurance policies in Illinois.

13.     Interstate issued to BSA several excess insurance policies (the "Interstate Policies" and, collectively with the Allianz Policy and NS Policies, the "Policies") in the 2000s:

---

[5] As "follow form" excess policies, the NS Policies incorporate (with limited exceptions) the terms, conditions, and exclusions of certain underlying policies issued by other insurers.

Excess Umbrella Liability Policy No. XUO1102139, in effect for the policy period March 1, 2001 to March 1, 2002; Excess Umbrella Liability Policy No. XUO1102274, in effect for the policy period March 1, 2002 to March 1, 2003; Excess Liability Policy No. XSO1014504, in effect for the policy period March 1, 2003 to March 1, 2004; Excess Liability Policy HFX1002516, in effect for the policy period March 1, 2007 to March 1, 2008; Excess Liability Policy No. HFX1002550, in effect for the policy period March 1, 2008 to March 1, 2009; Excess Liability Policy No. HFX1002552, in effect for the policy period March 1, 2008 to March 1, 2009; Excess Liability Policy No. HFX79995585, in effect for the policy period March 1, 2009 to March 1, 2010; Excess Liability Policy No. HFX82075581, in effect for the policy period March 1, 2009 to March 1, 2010.

14.     The Interstate Policies, which are follow form excess policies, contain substantially similar language to that of the NS Policies, providing indemnity coverage for "occurrence[s]" that took place during the relevant policy period.  An "occurrence" is an "accident . . . which results in Personal Injury . . . neither expected nor intended from the standpoint of the insured."

**Hacker Litigation**

15.     In 2012, multiple individuals filed suit against BSA and the Chicago Area Council (the "CAC") in the Circuit Court of Cook County, Illinois (the "Cook County Court"). *See John Doe* et al. *v. Thomas Hacker* et al. (Case No. 2012-L-013569) (the "Hacker Litigation").[6]

16.     The plaintiffs in the Hacker Litigation allege, among other things, that BSA intentionally permitted, failed to prevent, and fraudulently concealed sexual abuse by a former

---

[6] Although not relevant here, 18 plaintiffs originally brought suit under Case No. 2012-L-013569; however, the Cook County Circuit Court severed the suit into individual cases (with separate case numbers) for each plaintiff.

#118468521 v12

scout leader, Thomas Hacker, from approximately 1980 until Mr. Hacker's arrest in 1988. *See* Complaint at ¶ 51. The alleged abuse took place in Illinois. *See id.* at ¶ 38.

17.     The Hacker Litigation plaintiffs allege significant compensatory damages and seek punitive damages against BSA on account of its alleged intentional conduct and fraudulent concealment. *See id.* at ¶ 48; *see also Petition for Writ of Mandamus* (the "<u>Writ Petition</u>"), attached to the Jacobs Declaration as **<u>Exhibit C</u>**, at 9-10. As of the filing of this Motion, BSA has reportedly settled each of these lawsuits.

18.     As a result of the Hacker Litigation and certain settlements reached therein, BSA made demand on Allianz and National Surety for coverage under the Allianz Policy and NS Policies. *See* Writ Petition at 10. Because the Allianz Policy and NS Policies, *inter alia*, exclude from coverage injuries that are "expected []or intended," and due to the nature of the allegations against BSA, Allianz and National Surety dispute that BSA is entitled to coverage under the Allianz Policy and NS Policies for the Hacker Litigation and/or any resulting settlements. *See* Writ Petition at 10; Answer and Counterclaim at ¶¶ 32-33.

**Coverage Litigation**

19.     The Hacker Litigation coverage dispute eventually led to two, duplicative lawsuits, both of which are pending. National Surety filed the first suit, *National Surety Corporation v. BSA,* et al. (Case No. 2017-CH-14975) (the "<u>Illinois Coverage Action</u>"), in the Cook County Court on November 9, 2017. *See* Complaint. Nine months later, BSA filed the second suit, *Boy Scouts of America*, et al. *v. Insurance Company of North America*, et al. (Cause No. DC-18-11896) (the "<u>Texas Coverage Action</u>"), in the District Court of Dallas County, Texas (the "<u>Dallas County Court</u>"). *See Plaintiffs' Original Petition*, attached to the Jacobs Declaration

- 7 -

#118468521 v12

as **Exhibit D**.[7]

Illinois Coverage Action

20.     The Illinois Coverage Action was the most comprehensive pre-petition coverage

action.  The named parties include: BSA; CAC and another related entity; 19 of BSA's other

insurers, whose coverage obligations potentially could be affected, including Allianz; and the 18

plaintiffs in the underlying Hacker Litigation represented by Mr. Smola from the Hurley

McKenna & Mertz firm (the "Doe Defendants").[8]  *See generally* Complaint.[9]

21.     Through the Illinois Coverage Action, National Surety seeks a declaration that:

(a)     No coverage exists under the NS Policies with respect to the Hacker

Litigation;

(b)     National Surety owes no duty to defend or pay any defense costs

associated with the Hacker Litigation (but does, as an excess insurer, have a right to participate

in the defense if it so chooses);

(c)     National Surety has no duty to indemnify CAC and/or BSA for general

damages arising out of the Hacker Litigation due to the nature of the allegations against BSA, or,

alternatively, that National Surety has no duty to indemnify CAC and/or BSA for damages

arising out of the Hacker Litigation until primary insurance is exhausted;

(d)     National Surety has no duty to indemnify CAC and/or BSA for punitive

damages arising out of the Hacker Litigation; and

(e)     Assuming coverage otherwise exists, allocation of liability among all

potentially responsible parties.

---

[7] BSA filed an amended petition (the "Amended Petition") on April 5, 2019, attached to the Jacobs Declaration as **Exhibit E**.

[8] Notably, Illinois law requires the joinder of the Doe Defendants in the Illinois Coverage Action.

[9] If the stay is lifted, the pleadings in the Illinois Coverage Action may need to be amended to take into account new parties and claims and the effect, if any, of any Plan ultimately confirmed by this Court.

- 8 -

*See id.* ¶¶ 49-78.

22.     National Surety does not seek damages against BSA or CAC in the Illinois Coverage Action.  *See generally id.*

23.     Allianz was named as a defendant in the Illinois Coverage Action with National Surety seeking declaratory relief against it.  *See* Complaint at ¶ 12.  On February 28, 2019, Allianz filed its Answer and Counterclaim in the Illinois Coverage Action and asserted claims against BSA and certain of BSA's other insurers, whereby Allianz sought, among other things, declaratory relief regarding its obligations to defend or indemnify BSA with respect to certain abuse claims or, alternatively, equitable contribution and subrogation against BSA's other insurers regarding such abuse claims.  *See* Answer and Counterclaim at ¶¶ 26-49.  As with National Surety, Allianz does not seek damages against BSA or CAC in the Illinois Coverage Action.  *See generally id.*

24.     The Illinois Coverage Action has progressed significantly.  For example:

(a)     BSA filed both an answer to National Surety's complaint and counterclaims against National Surety, principally alleging that National Surety breached the NS Policies by refusing to indemnify BSA for settlements BSA reached with certain of the Doe Defendants.  BSA also asserted claims against National Surety under the Texas Insurance Code.

(b)     Seventeen of the insurer-defendants, including Allianz, filed answers and affirmative defenses to National Surety's Complaint—with several asserting their own counterclaims against National Surety, crossclaims against BSA, and/or crossclaims against the other named defendants.

(c)     The Doe Defendants filed a motion to strike and demand for a bill of particulars.

(d)    National Surety filed responsive pleadings to the claims asserted against it. *See* Writ Petition at 15-16.

25.    Further, written discovery in the Illinois Coverage Action is well underway. Discovery requests have been served and responded to by BSA and multiple other parties (including requests from the Doe Defendants). *See id.* at 16. Before the automatic stay went into effect, the Cook County Court set a hearing to discuss entry of a protective order, which would have facilitated additional discovery. *See Order*, attached to the Jacobs Declaration as **Exhibit F**.

26.    Even so, BSA engaged repeatedly in dilatory behavior with respect to the Illinois Coverage Action. First, BSA sought to dismiss or stay the Illinois Coverage Action on December 13, 2017, significantly delaying the proceeding. *See* Writ Petition at 11. The Cook County Court denied BSA's motion to dismiss but granted the temporary stay. *See id*. at 12. Then, on August 24, 2018—***eight months*** after its initial motion to dismiss and over ***nine months*** since the initiation of the Illinois Coverage Action—BSA filed a second motion to dismiss, arguing (for the first time) *forum non conveniens* and asserting that Texas was the proper forum state. *See id.*

27.    The Cook County Court later denied BSA's second motion to dismiss, calling it "manifestly inappropriate." *Id*. at 13-14 ("[I]n terms of documentary evidence, this case is an even less persuasive . . . argument than the usual case.").

28.    Despite the Cook County Court's denial of its previous two motions to dismiss, on April 8, 2019, BSA filed a motion for leave to file a ***third*** motion to dismiss the Complaint, as well as a motion to dismiss the Allianz counterclaim from the Illinois Coverage Action so that such counterclaims could be adjudicated in the Texas Coverage Action.

- 10 -

Texas Coverage Action

29.     Contemporaneously with its (later denied) second motion to dismiss, BSA initiated the Texas Coverage Action.  *See id.* at 12.  The Texas Coverage Action is entirely duplicative of BSA's counterclaims against National Surety in the first-filed Illinois Coverage Action—it contains the same claims against National Surety under the Texas Insurance Code and the same allegations that National Surety breached the NS Policies.  *See id.* at 12.  Through the Texas Coverage Action, BSA also asserts claims against Allianz for breach of contract of the Allianz Policy and claims under the Texas Insurance Code.  *See* Amended Petition at ¶¶ 161-78, 217-30.

30.     The only apparent differences between the two coverage suits as to the Allianz Insurers is that the Texas Coverage Action (a) was filed later and (b) is far less comprehensive than the Illinois Coverage Action.[10]  Out of the 19 insurers named in the Illinois Coverage Action, the Texas Coverage Action names only three (excluding National Surety): Insurance Company of North America, Century Indemnity Company, and Allianz Global Risks US Insurance Company.  BSA further failed to name even *one* of the Doe Defendants in the Texas Coverage Action.  *See* Writ Petition at 13.

31.     Accordingly, on October 1, 2018, National Surety filed a plea in abatement in the Texas Coverage Action and later sought to stay it, in each case due to the first-filed (and more extensive) Illinois Coverage Action.  *See id.* at 7.  The Dallas County Court denied National Surety's requested relief and later denied National Surety's motion for reconsideration.  *See id.* at 18.  During this same time period, Allianz filed a motion to partially stay the Texas Coverage Action due to the first-filed Illinois Coverage Action relating to the Hacker Litigation, however,

---

[10] While the Texas Coverage Action includes claims against Allianz related to the settlement of an abuse claim not covered by the Illinois Coverage Action, the Illinois Coverage Action is still the more comprehensive action in light of the issues and parties involved.

this relief was also denied by the Dallas County Court.  *See* Texas Coverage Action, *Defendant Allianz Global Risks US Insurance Company's Motion for Partial Stay* and related *Order*.

32.     As a result of BSA's venue manipulation in violation of the first-filed rule, along with an inadequate appellate remedy with respect to the Dallas County Court's denial of relief, National Surety filed the Writ Petition in the Court of Appeals for the Fifth Judicial District (the "Texas Appellate Court") on September 13, 2019.  *See In re National Surety Corporation* (Case No. 05-19-01119-CV) (the "Writ Proceeding"; and, together with the Texas Coverage Action, the "Texas Proceedings").  The Texas Proceedings and the Illinois Coverage Action are collectively referred to hereinafter as the "State Court Actions."

33.     In the Writ Proceeding, National Surety seeks issuance of a writ of mandamus directing the Dallas County Court to (a) vacate its previous orders denying National Surety's requests for abatement and/or stay of the Texas Coverage Action; and (b) enter an order staying or abating any further proceeding in the Texas Coverage Action pending resolution of the Illinois Coverage Action.  *See generally id.*

34.     In addition to the Writ Petition, National Surety filed an *Emergency Motion to Stay Underlying Litigation* (the "Emergency Motion") with the Texas Appellate Court seeking a temporary stay of the Texas Coverage Action.  In the Emergency Motion, National Surety noted the grave and irreparable harm that would result absent a stay of the Texas Coverage Action— "namely, both the loss of National Surety's right to a trial in the proper forum, as well as the 'time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.'"  Emergency Motion, attached to the Jacobs Declaration as **Exhibit G**, at 6-7.

35.     On October 4, 2019, the Texas Appellate Court entered an order (the "Emergency Order") granting the relief requested in the Emergency Motion over BSA's objection.  *See*

- 12 -

Emergency Order, attached to the Jacobs Declaration as **Exhibit H**.  In the Emergency Order, the Texas Appellate Court stayed the Texas Coverage Action until further notice and directed BSA to file a response to the Writ Petition.  *See id.*

36.     The parties have since fully briefed the Writ Petition and were awaiting a decision from the Texas Appellate Court prior to this Court's entry of the National Surety Stay Order (defined below).

**Chapter 11 Cases**

37.     On February 18, 2020 (the "Petition Date"), BSA and a related entity, Delaware BSA, LLC (collectively with BSA, the "Debtors"), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases").

38.     The very next day, BSA alerted the Cook County Court of the Chapter 11 Cases and the resulting stay pursuant to Section 362.  *See Suggestion of Bankruptcy*, dated February 19, 2020 (the "Notice"), attached to the Jacobs Declaration as **Exhibit I**.

39.     BSA did not, however, notify the Texas Appellate Court of the Chapter 11 Cases. Accordingly, local counsel for National Surety alerted the Texas Appellate Court of the pending Chapter 11 Cases.  *See Notice of Bankruptcy of the Real Party in Interest*, attached to the Jacobs Declaration as **Exhibit J**.

40.     BSA then filed a response in which it vehemently contested the applicability of the automatic stay to the Writ Proceeding, likening it to an appeal of the Texas Coverage Action (in which it is the plaintiff).  *See Real Parties in Interest's Response to National Surety Corporation's Notice of Bankruptcy of the Real Party in Interest, or in the Alternative, Motion to Reinstate Pursuant to TRAP 8.3(a)* (the "Response"), attached to the Jacobs Declaration as

- 13 -

**Exhibit K**.  The Response further contains a request to reinstate the Writ Proceeding even if it is stayed.  *See id.*

41.    On March 2, 2020, National Surety filed a reply, contending that the Writ Proceeding is subject to the automatic stay because the Writ Proceeding is a separate proceeding and not akin to an appeal of Texas Coverage Action.  *See National Surety's Reply* (the "Reply"), attached to the Jacobs Declaration as **Exhibit L**.

<u>National Surety's Prior Motion for Relief from the Automatic Stay</u>

42.    On March 6, 2020, National Surety filed *National Surety Corporation's Motion (I) for Relief from the Automatic Stay or, in the Alternative, (II) to Extend the Stay* (D.I. 147) (the "National Surety Stay Motion"), seeking relief from the automatic stay to pursue the State Court Actions or, alternatively, for an extension of the automatic stay to the Texas Proceedings.  *See generally* National Surety Stay Motion.

43.    After the National Surety Stay Motion was filed, National Surety and the Debtors reached agreement on a form of order granting National Surety's alternative relief as to the Texas Proceedings.  On March 19, 2020, the Court entered the *Agreed Order Granting in Part National Surety Corporation's Motion (I) for Relief from the Automatic Stay or, in the Alternative, (II) to Extend the Stay* (D.I. 236) (the "National Surety Stay Order"), whereby the automatic stay was extended to the Texas Proceedings.[11]  Thus, in conjunction with the Debtors' position that the Illinois Coverage Action was already stayed, all of the State Court Actions were formally stayed as of entry of the National Surety Stay Order.  Furthermore, the National Surety Stay Order specifically provides that it is "without prejudice to any party's right to request relief from the automatic stay with respect to any of the State Court Actions and any party's right to

---

[11] On March 19, 2020, the Texas Appellate Court in the Writ Proceeding entered an order staying the Writ Proceeding.  *See Order*, attached to the Jacobs Declaration as **Exhibit M.**

oppose any such request." National Surety Stay Order at ¶ 4.

<u>The Debtors' Proposed Plan of Reorganization and the Hartford Adversary Proceeding</u>

44.     After filing previous iterations of a plan of reorganization and disclosure statement, on July 2, 2021, the Debtors filed the (i) *Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (D.I. 6212); and (ii) *Amended Disclosure Statement for the Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (D.I. 6213).  After a contested hearing, this Court ultimately approved the disclosure statement (D.I. 6438), and the Debtors filed solicitation versions of the *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (D.I. 6445) (the "<u>Disclosure Statement</u>") and *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (D.I. 6443) (the "<u>Plan</u>").

45.     Article XI.C.17 of the Plan provides that this Court will retain jurisdiction to:

> hear and determine the Insurance Actions, any Settlement Trust Cause of Action[12] and any similar claims, Causes of Action or rights of the Settlement Trust to construe and take any action to enforce any Abuse Insurance Policy, and to issue such orders as

---

[12] The definition of "Settlement Trust Causes of Action" from the Plan is: "'Settlement Trust Causes of Action' means any Estate Cause of Action and any Cause of Action held by any Local Council or other Person that is or becomes a Protected Party or a Limited Protected Party, which Estate Cause of Action or other such Cause of Action, as applicable, is not otherwise expressly released under the Plan or the Plan Documents, in each case solely attributable to: (a) all defenses to any Abuse Claim, including all defenses under section 502 of the Bankruptcy Code; (b) with respect to Abuse Claims, all rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted; (c) any other Causes of Action with respect to Abuse Claims that either Debtor, any Related Non-Debtor Entity, any Local Council or any other Protected Party or Limited Protected Party would have had under applicable law if the Chapter 11 Cases had not occurred and the holder of such Abuse Claim had asserted such Cause of Action by initiating civil litigation against either Debtor, any Related Non-Debtor Entity, any Local Council or any other Protected Party or Limited Protected Party (including any Causes of Action against co-defendants); and (d) any Cause of Action of either Debtor, any Related Non-Debtor Entity, any Local Council or any other Protected Party or Limited Protected Party, under the laws of any jurisdiction, for reimbursement, indemnity, contribution, breach of contract, or otherwise arising from or relating to any payments made by either Debtor, any Related Non-Debtor Entity, any Local Council or any other Protected Party or Limited Protected Party on account of Abuse Claims on or before the Effective Date." Plan, Art. I.A.237.

- 15 -

may be necessary for the execution, consummation and implementation of any Abuse Insurance Policy, and to determine all questions and issues arising thereunder; provided, that such retention of jurisdiction shall not constitute a waiver of any right of a Non-Settling Insurance Company to seek to remove or withdraw the reference of any Insurance Action filed after the Effective Date[.]

Plan, Art. XI.C.17.

46.    As defined in the Plan, "Insurance Action"[13] includes any cause of action or rights of the Debtors against a Non-Settling Insurance Company related to an Abuse Insurance Policy, the failure of a Non-Settling Insurance Company to provide coverage or otherwise pay under an Abuse Insurance Policy, or any person's right to receive proceeds with respect to an Abuse Insurance Policy or an Insurance Coverage Action,[14] which is defined to include the Illinois Coverage Action and the Texas Coverage Action. *See* Plan, Art. I.A.138. The proposed Plan's retention of jurisdiction language is also broad enough to include the Writ Proceeding, even

---

[13] The definition of "Insurance Action" from the Plan is: "'Insurance Action' means any claim, Cause of Action, or right of the Debtors, Related Non-Debtor Entities, Local Councils, Participating Chartered Organizations, and Contributing Chartered Organizations, or any of them, under the laws of any jurisdiction, against any Non-Settling Insurance Company, arising from or related to an Abuse Insurance Policy (except for Participating Chartered Organizations' claims, Causes of Action, or rights arising from or related to the Chartered Organization Reserved Policies), including: (a) any such Non-Settling Insurance Company's failure to provide coverage or otherwise pay under an Abuse Insurance Policy; (b) the refusal of any Non-Settling Insurance Company to compromise and settle any Abuse Claim under or pursuant to any Abuse Insurance Policy; (c) the interpretation or enforcement of the terms of any Abuse Insurance Policy with respect to any Abuse Claim; (d) any conduct by any Non-Settling Insurance Company constituting "bad faith" conduct or that could otherwise give rise to extra-contractual damages, or other wrongful conduct under applicable law; or (e) any right to receive proceeds held by such Person with respect to an Abuse Insurance Policy or an Insurance Coverage Action. For the avoidance of doubt, no claim, Cause of Action, or right of the Debtors, Related Non-Debtor Entities, Local Councils, Participating Chartered Organizations or Contributing Chartered Organizations, or any of them, against any Settling Insurance Company shall be deemed an Insurance Action, except for any Cause of Action arising from or related to an Insurance Settlement Agreement." Plan, Art. I.A.138.

[14] The definition of "Insurance Coverage Actions" from the Plan is: "'Insurance Coverage Actions' means any and all pending coverage litigation between the BSA and any Insurance Company as of the Effective Date, including: (a) *Boy Scouts of America, et al. v. Insurance Company of North America et al.*, Case No. DC-18-11896, pending in the 192nd Judicial District Court of Dallas County, Texas; (b) *Boy Scouts of America, et al. v. Hartford Accident and Indemnity Co.*, et al., Case No. DC-18-07313, pending in the District Court of Dallas County, 95th Judicial District; (c) *National Surety Corp. v. Boy Scouts of America, et al.*, Case No. 2017-CH-14975, pending in the Circuit Court of Cook County, Illinois, Chancery Division; and (d) *Hartford Accident and Indemnity Co. and First State Ins. Co. v. Boy Scouts of America, et al.*, Adv. Pro. No. 20-50601 (LSS), pending before the Bankruptcy Court." Plan, Art. I.A.142.

#118468521 v12

though the Writ Proceeding is not expressly included in the definition of Insurance Coverage Actions, because Article XI.C.17 of the Plan provides that this Court retains jurisdiction over "any similar claims, Causes of Action or rights of the Settlement Trust to construe and take any action to enforce any Abuse Insurance Policy." Plan, Art. XI.C.17.

47. The Debtors may point to Article XI.A of the Plan, which provides, in part, that

> [n]othing contained herein concerning the retention of jurisdiction by the Bankruptcy Court shall be deemed to be a finding or conclusion that (1) the Bankruptcy Court in fact has jurisdiction with respect to any Insurance Action, (2) any such jurisdiction is exclusive with respect to any Insurance Action, or (3) abstention or dismissal of any Insurance Action pending in the Bankruptcy Court or the District Court as an adversary proceeding is or is not advisable or warranted, so that another court can hear and determine such Insurance Action(s).

Plan, Art. XI.A. This language, however, does not override the Debtors' attempt to have this Court retain jurisdiction over the State Court Actions in Article XI.C.17 of the Plan. Nor does this language preserve the Allianz Insurers' abstention rights as those rights are only preserved for pending adversary proceedings (*e.g.*, the Hartford Adversary Proceeding).[15]

48. The Debtors previously admitted in the Hartford Adversary Proceeding that state law coverage issues should be decided in pre-petition state court actions, not this Court. *See Hartford Accident and Indemnity Company and First State Insurance Company v. Boy Scouts of America,* et al., Adv. Pro. No. 20-50604 (LSS) (the "Hartford Adversary Proceeding"). Indeed, in the Hartford Adversary Proceeding, the Debtors argued at length that coverage issues should be decided in state court and the Hartford Adversary Proceeding dismissed. *See generally Defendants the Boy Scouts of America's and the Local Councils' Motion to Dismiss Plaintiffs' Complaint* (A.D.I. 22) (the "Motion to Dismiss"). The Debtors' current Plan, providing that this

---

[15] The Allianz Insurers' position on the Debtors' retention of jurisdiction provisions regarding the State Court Actions is noted in the Disclosure Statement. *See* Disclosure Statement, Art. VI(W), fn. 106.

Court retains jurisdiction to decide coverage issues, is thus an about-face.

## RELIEF REQUESTED

49.     By this Motion, the Allianz Insurers seek entry of an order:

(a)     Granting relief from the automatic stay "for cause" pursuant to Bankruptcy Code Section 362(d)(1) so that the State Court Actions can proceed to a final judgment; and

(b)     Waiving the 14-day stay under Bankruptcy Rule 4001(a)(3), such that any relief granted under subsection (a) above is effective immediately upon entry of the order granting relief.

## BASIS FOR RELIEF

## I.    THE ALLIANZ INSURERS ARE ENTITLED TO "FOR CAUSE" RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(d)(1).

50.     The Bankruptcy Code provides that filing a petition for relief "operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of a case under this title . . . ." 11 U.S.C. § 362(a)(1); *see also id.* § 362(a)(3) (staying "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate"). This broad stay affords the debtor a "breathing spell" upon the commencement of a bankruptcy case. *See Ass'n of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982) (internal citations and quotations omitted).

51.     But the automatic stay is not limitless. The Bankruptcy Code counterbalances the immediate effect of the automatic stay with the rights and interests of affected parties by permitting, among other things, the modification or dissolution of the automatic stay. *See* 11

#118468521 v12

U.S.C. § 362(d).  Section 362(d) provides, "[o]n request of a party in interest . . . the court shall grant relief from the [automatic] stay . . . such as by terminating, annulling, modifying, or conditioning such stay . . . for cause . . . ."  11 U.S.C. § 362(d)(1).  Because Section 362(d) uses the mandatory "shall," relief from the automatic stay is required upon an adequate showing under either prong of Section 362(d)—including, as relevant here, "cause" under Section 362(d)(1).  *Cf. Nantucket Inv'rs II v. Cal. Fed. Bank (In re Indian Palms Assocs.)*, 61 F.3d 197, 208 (3d Cir. 1995) ("Furthermore, we note that the language of section 362(d)(2) is mandatory, when both factors necessary for relief under section 362(d)(2) are met 'the court shall grant relief.'").

52.    The Bankruptcy Code does not, however, define "cause."    Consequently, assessing "cause" requires a "fact intensive, case-by-case balancing test" involving an examination of "the totality of the circumstances."  *Tribune Media Servs. v. Beatty (In re Tribune Co.)*, 418 B.R. 116, 126 (Bankr. D. Del. 2009).  This Court has determined that, when analyzing whether "cause" exists to lift the stay to enable a party to continue pre-bankruptcy litigation against the debtor, the following test should be applied:

> (i) Whether any great prejudice to either the bankruptcy estate or the debtor will result from continuation of the civil suit;
> (ii) Whether the hardship to the non-bankruptcy party by maintenance of the stay considerably outweighs the hardship to the debtor; and
> (iii) Whether the creditor has a probability of prevailing on the merits.

*In re Scarborough St. James Corp.*, 535 B.R. 60, 68 (Bankr. D. Del. 2015).  In addition to these three enumerated factors, "the general policies underlying the automatic stay" should be assessed when determining stay relief.  *Id.*  As set forth below, each of these factors—including the

- 19 -

"general policies underlying the automatic stay," *id.*—weigh in favor of lifting the automatic stay.

### A.    The Debtors Will Not Suffer Prejudice from the Continuation of the State Court Actions.

53.    *First*, the continuation of the State Court Actions will not result in "any great prejudice to either the bankruptcy estate or the [D]ebtor[s]." *Id.*  Because National Surety and Allianz seek declaratory relief in the Illinois Coverage Action and National Surety seeks to stay or abate the Texas Coverage Action (via the Writ Proceeding), not one of the State Court Actions directly jeopardizes the Debtors' finances.  Therefore, the only conceivable prejudice to the Debtors is the cost or purported inconvenience of participating in the State Court Actions.

54.    That is not enough.  "[T]he cost of defending litigation, by itself, has not been regarded as constituting great prejudice, precluding relief from the automatic stay." *Davis v. Day (In re Day)*, 2004 Bankr. LEXIS 1521, at *5 (Bankr. S.D. Ga. Jan. 28, 2004) (internal quotations omitted) (citing several cases in support); *see also*, *e.g.*, *In re Harris*, 85 B.R. 858, 860 (Bankr. D. Colo. 1988) (finding no great prejudice notwithstanding the debtor's argument that he lacked the funds to continue litigating); *In re Quay Corp.*, No. 05 C 7235, 2006 U.S. Dist. LEXIS 2709, at *8 (N.D. Ill. Jan. 24, 2006) ("[T]he prospect of incurring continuing legal fees generally does not constitute irreparable injury sufficient to deny the lifting of a stay.").  Thus, to the extent the Debtors contend they will be prejudiced by the cost or inconvenience of participating in the State Court Actions, that argument is unavailing.

55.    Moreover, courts in this district have repeatedly recognized that a debtor who initiates a suit identical to pending litigation cannot later claim that it is cost-prohibitive to participate in the first-filed action.  *See Save Power Ltd. v. Pursuit Athletic Footwear (In re Pursuit Athletic Footwear)*, 193 B.R. 713, 718-19 (Bankr. D. Del. 1996) ("As to the first factor,

- 20 -

[debtor] has filed an adversary proceeding here with allegations that are substantially identical to those in the Texas action. [. . .] These factors are sufficient to conclude that no prejudice will result from the continuation of the Texas action."); *see also Tribune*, 418 B.R. at 127 (permitting prepetition litigation to proceed in California would not prejudice the debtor because the debtor initiated an adversary based on the same issues).

56.     Here, the Debtors clearly are not concerned with the cost or inconvenience of litigating in different fora.  After all, BSA—not the Allianz Insurers—filed the Texas Coverage Action, which is virtually identical in all relevant respects to the Illinois Coverage Action.  More to the point, BSA plainly wanted to litigate (and apparently was not inconvenienced by) the Writ Proceeding prior to the entry of the National Surety Stay Order.  *See* Response.  Additionally, the Debtors have attempted to retain jurisdiction of this Court over the State Court Actions via the retention of jurisdiction provisions in the proposed Plan, clearly evidencing that the Debtors are not concerned about continuation of such litigation, but rather are attempting to manipulate the venue in which that litigation proceeds.  As in *Pursuit Athletic*, "[t]hese factors are sufficient to conclude that no prejudice will result from the continuation of the [State Court Actions]."  193 B.R. at 719.  Accordingly, the first factor weighs in favor of stay relief.

**B.     Maintaining the Stay Inflicts Significant Harm on the Allianz Insurers.**

57.     *Second*, "the hardship to [the Allianz Insurers] by maintenance of the stay considerably outweighs the hardship to the [D]ebtor[s]."  *Scarborough St. James*, 535 B.R. at 68. The coverage litigation via the State Court Actions needs to proceed in a timely manner and it is a hardship on the Allianz Insurers (and other insurers) to allow the State Court Actions to continue to be stayed when the Debtors (a) acknowledged in the Hartford Adversary Proceeding that coverage litigation should proceed in state courts, *see generally* Motion to Dismiss; and (b)

- 21 -

proposed a Plan (i) based, in part, on recoveries in the Debtors' favor under the State Court Actions; and (ii) that purports to retain jurisdiction to this Court over the State Court Actions, instead of allowing such actions to proceed in the relevant state courts.

58.     It is to all parties' benefit to have a better understanding of where the State Court Actions and coverage issues generally are heading, and it is not a hardship to the Debtors to proceed with the State Court Actions at this time.  While the Debtors may argue that allowing the State Court Actions to resume will be distracting in light of the current Plan process, the Debtors have separate counsel in the State Court Actions compared to their bankruptcy counsel and it should not be an issue for those teams to resume their work on the State Court Actions. Moreover, the Debtors' initial position with respect to at least the Writ Proceeding was that the automatic stay did not even apply.  *See generally* Response.  Thus, it would be inconsistent for the Debtors to now assert that the continuation of the Writ Proceeding is prejudicial or a hardship upon them.

59.     Additionally, based on the retention of jurisdiction language in the proposed Plan—which critically does not provide for parties to seek this Court's abstention from the State Court Actions under 28 U.S.C. § 1334(c)—the Debtors are once again attempting to manipulate the forum and are contravening this Court's comments that it will not be making coverage decisions. [16]  Denial of the Allianz Insurers' choice of forum alone has been held to constitute sufficient hardship to satisfy the second factor.  *See*, *e.g.*, *In re Dallas*, No. 10-12141, 2011 Bankr. LEXIS 4777, at *8 (Bankr. S.D. Ga. Nov. 29, 2011) (finding hardship to the movant outweighed the debtor, noting "[movant] is being denied its day in court to have its declaratory action resolved in the forum of its choosing.").

---

[16] *See* May 19, 2021 Hr'g Tr. at 241:22 ("no coverage issue is going to be adjudicated.") 242:10-11 ("I can tell everyone right now that I can't imagine I would decide a coverage issue.").

#118468521 v12

60.     Finally, continued application of the automatic stay to the Illinois Coverage Action will erode the (more than) two years of pre-trial litigation—including multiple claims, counterclaims, and crossclaims—and corresponding discovery that has taken place therein.  Such an outcome is contrary to well-established principles of judicial economy and fairness to litigants.  *Cf. In re Rexene Prods. Co.*, 141 B.R. 574, 577 (Bankr. D. Del. 1992) ("Judicial economy dictates a prompt resolution in a single forum and with the same judge who was originally assigned to the case.").  That is particularly true where, as here, the litigation involves a state law dispute between numerous parties, is pending in a state court, and has progressed significantly pre-bankruptcy.  *See, e.g.*, *Passavant Mem'l Homes v. Laurel Highlands Found., Inc. (In re Laurel Highlands Found., Inc.)*, 473 B.R. 641, 662 (Bankr. W.D. Pa. 2012) ("In a case where non-bankruptcy litigation was commenced in another forum, relief from stay may be appropriate to permit that litigation to conclude, especially when multiple parties are involved or when trial is ready to proceed."); *In re Chan*, 355 B.R. 494, 501 (Bankr. E.D. Pa. 2006) ("[W]hen there are multiple parties involved in the non-bankruptcy litigation, considerations of judicial economy may support the return of the litigation to the non-bankruptcy forum [by modifying the stay].").

61.     In sum, it is clear that the Allianz Insurers will suffer irreparable harm from a continued application of the automatic stay to the State Court Actions.  By contrast, lifting the automatic stay so that the State Court Actions can proceed will result in minimal, if any, hardship to the Debtors.  *See* § I.A., *supra*.  Any slight hardship to the Debtors is outweighed by the simple fact that the parties' disputes must be resolved in any event to determine the Debtors' right to coverage (and any corresponding recovery) under the Policies.  The second factor, therefore, weighs in favor of stay relief.

- 23 -

### C. The Allianz Insurers are Sufficiently Likely to Prevail on the Merits.

62. *Third*, the Allianz Insurers "ha[ve] a probability of prevailing on the merits." *Scarborough St. James*, 535 B.R. at 68. This threshold is extremely low. "Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *In re Cont'l Airlines, Inc.*, 152 B.R. 420, 426 (D. Del. 1993); *see also Rexene Prods.*, 141 B.R. at 578 ("The required showing is very slight.").

63. Here, the Allianz Insurers meet the "very slight" showing required for the State Court Actions. With respect to the Illinois Coverage Action, the Cook County Court has denied BSA's repeated attempts to dismiss. In the Texas Proceedings, the Texas Appellate Court granted National Surety's Emergency Motion and stayed the Texas Coverage Action—over BSA's strenuous objection. This more than satisfies the modest threshold required to lift the automatic stay. *Cf. Rexene Prods.*, 141 B.R. at 578 ("This slight showing is easily met by the fact that there has already been a denial of defendants' motion for summary judgment in the lawsuit."); *Pursuit Athletic*, 193 B.R. at 719 (finding a sufficient likelihood of success on the merits when the presiding judge in the prepetition lawsuit denied cross-motions for preliminary injunctions). The third factor, therefore, weighs in favor of lifting the stay.

### D. The General Policies behind the Automatic Stay Support Its Dissolution.

64. *Finally*, lifting the stay with respect to the State Court Actions is consistent with "the general policies underlying the automatic stay." *Scarborough St. James*, 535 B.R. at 68. The automatic stay serves "to prevent certain creditors from gaining a preference for their claims against the debtor" and "to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991) (quoting *St. Croix Condo. Owners*, 682 F.2d at 448)). The automatic stay, in other words, is defensive in nature—it

- 24 -

prevents "a prejudicial dissipation of a debtor's assets." *In re Bock Laundry Mach. Co.*, 37 B.R. 564, 567 (Bankr. N.D. Ohio 1984)

65.     The automatic stay expressly is ***not*** a weapon, available for use by a debtor to gain the upper hand in litigation, manipulate venue, or harass opponents. *See McHenry v. Key Bank (In re McHenry)*, 179 B.R. 165, 168-69 (B.A.P. 9th Cir. 1995) ("The automatic stay afforded by section 362 is intended to be a shield protecting debtors and their estates, and should not be used as a sword for their enrichment."); *cf.*, *e.g.*, *In re Asanda Air II LLC*, 600 B.R. 714, 722 (Bankr. N.D. Ga. 2019) (finding "cause" to dismiss a chapter 11 case due to, among other reasons, the debtor's improper use of the automatic stay to hinder and delay a creditor's prepetition declaratory judgment action against the debtor).  Indeed, as this Court acknowledged in *Scarborough St. James*, the relevant policies support stay relief when a debtor "seeks to litigate only issues of its choosing and in its preferred forum" by using bankruptcy "as a 'sword' and not a 'shield.'"  535 B.R. at 70.

66.     That is precisely how the Debtors have acted here.  Initially, BSA notified the Cook County Court of the Chapter 11 Cases (and the resulting stay of the Illinois Coverage Action) the day after the Petition Date.  In the Texas Proceedings, by contrast, BSA not only failed to notify the Texas Appellate Court of the Chapter 11 Cases, but BSA also vigorously objected to the applicability of the automatic stay.  After the National Surety Stay Order extended the automatic stay to the Texas Proceedings, the Debtors are attempting to manipulate jurisdiction and forum once again by including a provision in the proposed Plan that this Court maintains jurisdiction to hear the State Court Actions.  Together, and particularly in light of BSA's repeated efforts to evade the Illinois Coverage Action, these acts compel the conclusion that the Debtors "seek[] to litigate only issues of [their] own choosing and in [their] preferred

- 25 -

forum[,]" wielding the automatic stay "as a 'sword' and not a 'shield.'"  *Id.*  This is an unequivocally inappropriate use of the automatic stay.  *See id.*  Therefore, the general principles underlying the automatic stay also weigh in favor of relief.

### E.    The Totality of the Circumstances Support Stay Relief.

67.    In sum, all of the relevant factors weigh in favor of stay relief.  The Debtors have already enjoyed the benefit of the automatic stay for over nineteen months.  Lifting the automatic stay to permit continued litigation of the State Court Actions will not prejudice the Debtors; however, maintaining the stay results in clear and irreparable harm to the Allianz Insurers. Further, the Allianz Insurers have at least a "slight probability" of success on the merits.  Finally, the Debtors' attempt to weaponize the automatic stay, gain an unfair litigation advantage, and corner this Court into making coverage decisions is inequitable and should not be rewarded. Moreover, it is in the best interests of all parties to determine whether, and how much, insurance proceeds may be available to pay claims asserted against the Debtors.  This determination is a major contested issue and should be made by the state courts.  At this point, there is no reason to further delay such a critical determination.  For these reasons, and as set forth more completely above, the totality of the circumstances establish that stay relief is both warranted and appropriate.

## II.    THE 14-DAY STAY SHOULD BE WAIVED.

68.    The Allianz Insurers further request a waiver of the 14-day stay under Bankruptcy Rule 4001(a)(3).  Pursuant to Bankruptcy Rule 4001(a)(3), "[a]n order granting a motion for relief from an automatic stay . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  FED. R. BANKR. P. 4001(a)(3).  Bankruptcy Rule 4001(a)(3) does not provide the grounds for a waiver of stay; thus, granting a waiver is within

the Court's discretion.  *See*, *e.g.*, *In re Taub*, 438 B.R. 39, 51 (Bankr. E.D.N.Y. 2010) (waiving the 14-day stay and noting, "[d]elay and expense, and the prospect of irreparable damage, are far more likely to result if the effective date of this Court's Order is stayed than if it is immediately effective.").  Here, delaying the effective date of any stay relief is more likely to harm the Allianz Insurers than to help the Debtors.  The Allianz Insurers, therefore, respectfully submit that a waiver of the 14-day stay is warranted under the circumstances.

## NOTICE

69.    Copies of this Motion are being served on the following: (a) counsel to the Debtors; (b) the Office of the United States Trustee; (c) counsel to the Official Committee of Unsecured Creditors; (d) counsel to the Official Committee of Tort Claimants; (e) the United States Attorney for the District of Delaware; (f) the Internal Revenue Service; (g) all parties entitled to notice in the State Court Actions; and (h) all parties who have requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Allianz Insurers submit that no other or further notice is required.

## CONCLUSION

WHEREFORE, the Allianz Insurers respectfully request entry of an order, substantially in the form attached hereto as **Exhibit 1**:

A.    Granting to the Allianz Insurers (i) relief from the automatic stay "for cause," pursuant to Bankruptcy Code Section 362(d)(1), such that the Allianz Insurers can litigate to a final judgment the Illinois Coverage Action, Writ Proceeding, and the Texas Coverage Action; and (ii) a waiver of the 14-day stay pursuant to Bankruptcy Rule 4001(a)(3); and

C.    Granting to the Allianz Insurers such other and further relief as is just and proper.

#118468521 v12

Dated: October 14, 2021
Wilmington, Delaware

TROUTMAN PEPPER HAMILTON SANDERS LLP

By: */s/ Marcy J. McLaughlin Smith*

    David M. Fournier (DE No. 2812)
    Marcy J. McLaughlin Smith (DE No. 6184)
    Hercules Plaza
    1313 Market Street
    Suite 5100
    P.O. Box 1709
    Wilmington, DE 19899-1709
    Telephone:   302.777.6500
    Facsimile:   302.421.8390

 *-and-*

    Harris B. Winsberg (admitted *pro hac vice*)
    Bank of America Plaza
    600 Peachtree Street NE
    Suite 3000
    Atlanta, GA  30308-2216
    Telephone:   404.885.3000
    Facsimile:   404.885.3900

 *-and-*

    MCDERMOTT WILL & EMERY LLP
    Margaret H. Warner (admitted *pro hac vice*)
    Ryan S. Smethurst (admitted *pro hac vice*)
    The McDermott Building
    500 North Capitol Street, NW
    Washington, DC 20001-1531
    Telephone:   202.756.8228
    Facsimile:   202.756.8087

*Attorneys for Allianz Global Risks US Insurance Company*

TROUTMAN PEPPER HAMILTON SANDERS LLP

By: */s/ Marcy J. McLaughlin Smith*

    David M. Fournier (DE No. 2812)
    Marcy J. McLaughlin Smith (DE No. 6184)
    Hercules Plaza
    1313 Market Street
    Suite 5100
    P.O. Box 1709
    Wilmington, DE 19899-1709
    Telephone:   404.885.3000
    Facsimile:   404.885.3900

 *-and-*

    Harris B. Winsberg (admitted *pro hac vice*)
    Bank of America Plaza
    600 Peachtree Street NE
    Suite 3000
    Atlanta, GA  30308-2216
    Telephone:   404.885.3000
    Facsimile:   404.885.3900

 *-and-*

    BRADLEY RILEY JACOBS PC
    Todd C. Jacobs (admitted *pro hac vice*)
    John E. Bucheit (admitted *pro hac vice*)
    500 West Madison Street
    Suite 1000
    Chicago, IL 60661
    Telephone:   312.281.0295

*Attorneys for National Surety Corporation and Interstate Fire & Casualty Company*

#118468521 v12