**<u>EXHIBIT C</u>**

ACCEPTED
05-19-01119-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
9/13/2019 3:19 PM
LISA MATZ
CLERK

**CAUSE NO. _____**

## IN THE COURT OF APPEALS
## FOR THE FIFTH JUDICIAL DISTRICT
## DALLAS, TEXAS

---

## IN RE NATIONAL SURETY CORPORATION

---

Original Proceeding to Cause No. DC-18-11896
Pending in the 192nd Judicial District Court,
Dallas County, Texas,
Honorable Craig Smith, Presiding

---

## PETITION FOR WRIT OF MANDAMUS

---

BRADLEY RILEY JACOBS PC
Todd C. Jacobs (admitted *pro hac vice*)
Illinois Bar No. 6201358
tjacobs@bradleyriley.com
David M. Caves (admitted *pro hac vice*)
Illinois Bar No. 6292531
dcaves@bradleyriley.com
320 W. Ohio Street, Suite 3W
Chicago, Illinois 60654
Telephone: (312) 281-0295
Facsimile: (319) 363-9824

MARTIN, DISIERE, JEFFERSON & WISDOM L.L.P.
Christopher W. Martin
State Bar No. 13057620
martin@mdjwlaw.com
William Edward McMichael
State Bar No. 24107860
mcmichael@mdjwlaw.com
808 Travis Street, 20th Floor
Houston, Texas 77002
Telephone: (713) 632-1700
Facsimile:  (713) 222-0101

**ORAL ARGUMENT REQUESTED**

{02688051.DOCX}

## IDENTITY OF PARTIES AND COUNSEL

Respondent:                    Hon. Craig Smith
                               192nd Judicial District Court of Dallas County, Texas
                               George L. Allen, Sr. Courts Building
                               600 Commerce Street, Box 740
                               Dallas, TX 75202

Relator:                       National Surety Corporation

Counsel for Relator:           Todd C. Jacobs, David M. Caves, Bradley Riley Jacobs
                               PC, 320 W. Ohio St., Ste. 3W, Chicago, Illinois 60654.

                               Christopher W. Martin, William E. McMichael, Martin,
                               Disiere, Jefferson & Wisdom LLP, 808 Travis St., 20th
                               Floor, Houston, Texas 77002.

Real Party in Interest:        Boy Scouts of America, Aloha Council, New Birth of
                               Freedom Council, and Chicago Area Council

Counsel for Real Party         Ernest Martin, Jr., Adrian Azer, Carla Green
Of Interest:                   Haynes & Boone, LLP, 2323 Victory Ave., Ste. 700,
                               Dallas, Texas 75219.

## STATEMENT REGARDING ORAL ARGUMENT

Relator National Surety Corporation respectfully requests oral argument regarding the issues raised in its Petition in order to more fully apprise the Court of the important issues of interstate comity raised by the district court's decision to deny National Surety's plea in abatement and motion to stay Real Party in Interest Boy Scouts of America's later-filed and duplicative Texas action.

# TABLE OF CONTENTS

IDENTITY OF THE PARTIES AND COUNSEL ....................................................1

STATEMENT REGARDING ORAL ARGUMENT ...............................................2

TABLE OF CONTENTS..........................................................................................3

TABLE OF AUTHORITIES ....................................................................................5

STATEMENT OF THE CASE..................................................................................7

STATEMENT OF JURISDICTION.........................................................................8

ISSUES PRESENTED..............................................................................................8

STATEMENT OF FACTS ........................................................................................9

    A. The Illinois Hacker Sexual Abuse Litigation .................................................9

    B. The Hacker Insurance Coverage Cases ........................................................10

        1.  National Surety's First-Filed Illinois Action............................................10

        2.  BSA's Texas Petition ...............................................................................12

        3.  The Illinois Circuit Court Denies BSA's Motion to Dismiss, Lifts
            the Temporary Stay, and Orders the Illinois Action to Proceed ..............13

            a.  The Illinois Circuit Court's Denial of BSA's Motion to Dismiss ......13

            b.  Progress of the Illinois Action.............................................................15

        4.  The District Court Denies National Surety's Plea in Abatement and Motion
            to Stay the Later-Filed Texas Action ......................................................16

        5.  BSA Files a Summary Judgment Motion in Texas in which it Takes a
            Position Directly Contrary to What it Previously Represented to the Illinois
            Court ........................................................................................................18

SUMMARY OF THE ARGUMENT ......................................................................18

ARGUMENT ..................................................................................................20

I.  Legal Standard for Mandamus Relief................................................20

II. The District Court Abused its Discretion by Allowing the Later-Filed Texas
    Action to Proceed...............................................................................21

    A. Texas Courts Have Long Held That a Trial Court's Failure to Stay
    Proceedings Interrelated to a Matter First Filed in Another State Constitutes
    an Abuse of Discretion .................................................................21

    B. Principles of Comity Required the District Court to Stay This Proceeding
    Given That the Two Actions Involve the Same Dispute Over Which the
    Illinois Circuit Court Properly Exercised Jurisdiction ..................................23

    C. Mandamus Relief is Necessary Given the Inadequacy of an Appellate
    Remedy ...........................................................................................28

    D. Mandamus Relief is Also Appropriate to Stop BSA From Taking Inconsistent
    Positions in Sister State Courts.....................................................31

PRAYER .......................................................................................................32

CERTIFICATION ........................................................................................33

CERTIFICATE OF COMPLIANCE.......................................................34

CERTIFICATE OF SERVICE ..................................................................35

APPENDIX

# TABLE OF AUTHORITIES

<u>Cases</u>

*Alpine Gulf, Inc. v. Valentino*,
  563 S.W. 358 (Tex. App.—Houston [14th Dist.] 1978, pet. denied)..................23

*Ashton Grove LLP v. Jackson Walker LLP*,
  366 S.W.3d 790 (Tex. App.—Dallas 2012, no pet.) ...........................................24

*Crown Leasing Corp. v. Sims*,
  92 S.W.3d 924 (Tex. App.—Texarkana 2003, no pet.)......................................23

*Employers of Wausau v. Ehlco Liquidating Trust*,
  708 N.E.2d 1122 (Ill. 1999)...............................................................................14

*Essex Ins. Co.*,
  450 S.W.3d 524 (Tex. 2014) ..............................................................................20

*Evans v. Evans*,
  186 S.W.2d 277 (Tex. App.—San Antonio 1945) ....................................... 23, 28

*Gannon v. Payne*,
  706 S.W.2d 304 (Tex. 1986) ..............................................................................22

*Gohlman v. Whittle*,
  273 S.W. 806 (Tex. 1925)............................................................................ 19, 22

*In re AutoNation, Inc.*,
  228 S.W.3d 663 (Tex. 2007) ..................................................... 20, 21, 22, 26, 27

*In re BP Oil Supply Co.*,
  317 S.W.3d 915 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding)
  ........................................................................... 21, 22, 23, 24, 27, 30

*In re Columbia Med. Ctr. of Las Colinas*,
  306 S.W.3d 246 (Tex. 2010) ........................................................................ 20, 27

*In re J.B. Hunt Transport, Inc.*,
  492 S.W.3d 287 (Tex. 2016) .................................................................. 22, 28, 29

*In re Lisa Laser*,
310 S.W.3d 880 (Tex. 2010) ..................................................................31

*In re Prudential Ins. Co. of Am.*,
148 S.W.3d 124 (Tex. 2004) ...................................................... 20, 21, 28, 29, 31

*In re State Farm Mut. Auto*,
192 S.W.3d 897 (Tex. App.—Tyler 2006, orig. proceeding) ..... 21, 22, 27, 29, 30

*In re State*,
355 S.W.3d 611 (Tex. 2011) ..................................................................21

*In re Team Rocket, L.P.*,
256 S.W.3d 257 (Tex. 2008) ..................................................................21

*In re Vinyl Tech., Inc.*,
352 SW.3d 810 (Tex. App.—San Antonio 2011, orig. proceeding). 21, 22, 24, 29

*Perry v. Del Rio*,
66 S.W.3d 239 (Tex. 2001)...................................................................20

*VE Corp. v. Ernst & Young*,
860 S.W.2d 83 (Tex. 1993)...................................................................21

*Zurich Ins. Co. v. Baxter Int'l., Inc.*,
173 Ill.2d 235 (1996) ................................................................... 11, 25

Statutes

Tex. Gov't. Code § 22.221(a)....................................................................8

Rules

Tex. R. App. P. 52.1...............................................................................8

## STATEMENT OF THE CASE

Trial Court:

The 192nd Judicial District Court of Dallas County, Texas, the Honorable Craig Smith presiding.

Nature of the Case:

Real Parties in Interest Boy Scouts of America, Aloha Council, New Birth of Freedom Council, and Chicago Area Council (collectively, "BSA") have brought this suit against Relator National Surety Corporation ("National Surety") seeking declaratory judgment and asserting claims for breach of contract and violations of Chapter 541 and 542 of the Texas Insurance Code with respect to BSA's claims for insurance coverage for sexual abuse cases brought against BSA in Chicago, Illinois. Also pending is a complaint for declaratory judgment, filed by National Surety in the Circuit Court of Cook County, Illinois, nine months before the present lawsuit, seeking resolution of the same coverage issues with respect to the same underlying Illinois claims.

Course of Proceedings:

BSA filed its Original Petition with the district court on August 28, 2018. On October 1, 2018, National Surety filed a plea in abatement and joined in a motion to stay filed by Century Indemnity Company ("Century") asking the district court to stay or abate this case pending resolution of National Surety's first-filed Illinois complaint. On January 14, 2019, the Illinois circuit court denied BSA's motion to dismiss based on forum nonconveniens and ruled that coverage issues with respect the sexual abuse cases brought against BSA in Illinois would be adjudicated in the Illinois action.

Disposition:

On March 27, 2019, the district court entered an order denying National Surety's plea in abatement, Century's motion to stay and National Surety's joinder thereto. The district court denied a motion for reconsideration by National Surety on September 10, 2019.

## STATEMENT OF JURISDICTION

This Court has original jurisdiction to issue the requested writ of mandamus. *See* Tex. Gov't. Code § 22.221(a) and Tex. Rec. App. P. 52.1.

## ISSUES PRESENTED

(1)    Whether the district court abused its discretion by denying, contrary to well-established principles of comity, National Surety's plea in abatement and motion to stay further proceedings in this case pending resolution of the first-filed and more comprehensive Illinois action involving the same coverage issues that BSA seeks adjudication of here, where the Illinois circuit court had already ruled that it will exercise jurisdiction over the parties' coverage dispute and allow National Surety's Illinois complaint to proceed.

(2)    Whether an appeal of the district court's erroneous denial of National Surety's plea in abatement and motion to stay is an inadequate remedy (i) given the unnecessary time and expense of requiring National Surety to endure duplicative and improperly conducted proceedings in order to obtain reversal of the erroneous order; (ii) which would irreparably deprive National Surety of its substantial interest in the efficient and final adjudication of the parties' dispute and effectively moot the relief National Surety seeks, *i.e.*, a stay of these proceedings pending resolution of the first-filed Illinois action.

## STATEMENT OF FACTS

**A.    The Illinois Hacker Sexual Abuse Litigation.**

This insurance coverage litigation between BSA and National Surety arises out of BSA's demand for coverage in connection with eighteen sexual abuse cases filed against BSA and Chicago Area Council in the Circuit Court of Cook County, Illinois. Rec. 27. Plaintiffs in these cases allege that BSA knowingly and intentionally permitted, failed to prevent, and/or fraudulently concealed hundreds of known instances of sexual abuse by former Chicago-area scout leader Thomas Hacker between 1980 and 1988 ("Hacker litigation"). Rec. at 27-28. The now-operative complaint in that litigation, Plaintiffs' Third Amended Complaint filed in May 2015, spans 500 pages and alleges 99 different counts against BSA on behalf of the 18 plaintiffs,[1] all of whom seek damages for the physical and psychological injuries they suffered as a result of the abuse, as well as punitive damages for BSA's intentional wrongdoing. *Id.* While most of the lawsuits have settled, several remain pending. Rec. 2348, 2350.

---

[1] While the case was filed as a single lawsuit, the Illinois circuit court severed each of the plaintiff's individual claims into separate actions with their own case numbers. Rec. 2852.

**B.      The Hacker Insurance Coverage Cases.**

**(1)     National Surety's First-Filed Illinois Action.**

National Surety issued BSA two excess liability policies in effect from January 1, 1983 to January 1, 1984, and January 1, 1984 to January 1, 1985. Rec. 27. Both policies are "follow form" excess policies that incorporate, with certain limited exceptions, the terms, conditions, and exclusions of certain underlying policies issued by other insurers. Rec. 27. Subject to their stated limits of liability, terms, conditions, and exclusions, the policies provide indemnity coverage for "occurrence[s]" that take place during the policy period. Rec. 27. An "occurrence" is defined by the policies as an "accident . . . which results in Personal Injury . . . neither expected nor intended from the standpoint of the insured." *Id.*

National Surety's principle place of business is located in Chicago, Illinois, where the Illinois Hacker litigation is pending. Rec. 2194, 2999. In response to BSA's demands for coverage in connection with the Hacker litigation, National Surety filed a comprehensive declaratory judgment action in its home forum, the Circuit Court of Cook County, Illinois, on November 9, 2017, to obtain relief on coverage issues under its policies with respect to the Hacker claims. Rec. 28. In addition to BSA and Chicago Area Council, National Surety named as parties to the action 19 of BSA's other insurers whose rights and obligations under their own policies are potentially impacted by coverage rulings with respect to the Hacker

claims. Rec. 2326. As required by Illinois law, National Surety also named as parties the 18 plaintiffs in the Hacker litigation (*i.e.*, the "Doe Defendants").[2] Rec. 2326.

National Surety's Illinois complaint seeks declarations that, *inter alia*, no coverage exists under its policies with respect to the underlying Hacker litigation, that it owes no duty to defend or pay any defense costs associated with the underlying claims, that it has no duty to indemnify BSA for punitive damages arising out of the Hacker litigation or, alternatively, that National Surety has no duty to indemnify BSA for any damages until its primary insurance is properly exhausted. Rec. 28.

In January 2017, BSA moved to dismiss or stay National Surety's complaint on ripeness grounds. Rec. 29. In that motion, BSA represented to the Illinois circuit court that the National Surety policies follow form and incorporate the underlying policies' definition of "occurrence" (quoted above). Rec. 574-576. In fact, BSA's motion was premised on the National Surety policies containing an "occurrence" requirement (which requires that the underlying injury be neither "expected nor intended" by the policyholder in order to be covered), arguing that "[t]he timing and scope of BSA's knowledge and whether the personal injuries alleged were, therefore, 'expected and intended' from BSA's standpoint, remain open factual

---

[2] As discussed below, *see* Arg. § II.B., Illinois law provides that claimants seeking recovery from the insured in an underlying tort action "are necessary parties who must be joined in order for the declaratory judgment action to proceed." *Zurich Ins. Co. v. Baxter Int'l., Inc.*, 173 Ill.2d 235, 245 (1996).

issues that must be decided in the Hacker Litigation before National Surety's coverage obligations can be determined." Rec. 581. The Illinois circuit court denied the motion to dismiss, but temporarily stayed the case given that none of the Hacker abuse claims had yet been resolved. Rec. 29. BSA began settling certain of the underlying claims the very next day. Rec. 29.

Eight months after it moved to dismiss the Illinois case on ripeness grounds, BSA filed a second motion to dismiss on August 24, 2017, this time on forum non conveniens grounds. Rec. 29. The same day, BSA filed its Original Petition in this case asking the district court to resolve the identical coverage dispute with National Surety already pending in Illinois. Rec. 29. BSA filed a First Amended Petition on April 5, 2019 ("Petition").

### (2)    BSA's Texas Petition.

With respect to National Surety, BSA's Petition seeks resolution of the identical coverage issues with respect to the Hacker litigation that are currently being litigated in the Illinois action. Rec. 2289-2322. Specifically, the Petition alleges that National Surety has breached its policies by refusing to indemnify BSA with respect to settlements reached with four of the Hacker abuse plaintiffs, John Does 2, 3, 4 and 6. Rec. 2309-2310. The Petition also asserts claims under Sections 541 and 542 of the Texas Insurance Code, and a claim for its attorneys' fees. Rec. 2313-2320.

Of the 42 parties named in National Surety's Illinois complaint, only six are parties to BSA's Texas Petition. Rec. 2326. BSA's Petition names only four of the 20 insurers with an interest in the coverage issues raised by the Hacker abuse claims – National Surety, Century, Insurance Company of North America ("INA") and Allianz Global Risks US Insurance Company ("Allianz") – and none of the Doe Defendants. Rec. 2289-2322. BSA's claims against insurers Century, INA and Allianz, all of whom are parties to National Surety's Illinois complaint, will be resolved in the Illinois action, with two limited exceptions. BSA's Petition alleges a single count against Allianz regarding its settlement of a single case brought in Hawaii, referred to as "Roe 90." Rec. 2312-2313. BSA also seeks defense costs from Century for sexual abuse cases outside of Illinois. Rec. 2308-2309. Neither of those two discrete coverage disputes pertains in any way to National Surety. Rec. 2333.

### (3)    The Illinois Circuit Court Denies BSA's Motion to Dismiss, Lifts the Temporary Stay, and Orders the Illinois Action to Proceed.

#### (a)    The Illinois Circuit Court's Denial of BSA's Motion to Dismiss.

The Illinois circuit court heard oral argument on BSA's second motion to dismiss the Illinois action on January 11, 2019. Rec. 616, 689. The court denied BSA's motion in its entirety (Rec. 616) and, in doing so, made several observations relevant to the issues presented here:

First, the court characterized BSA's forum non conveniens motion as "manifestly inappropriate" given that it was unsupported by the relevant factors for such relief:

> Turning to the forum non conveniens motion which BSA has made, I'm going to deny that motion without prejudice. The motion as framed seeks the dismissal of this action in its entirety in favor of the Texas forum. That seems to me manifestly inappropriate and manifestly not supported by the Gulf Oil factors . . . in terms of documentary evidence, this case is an even less persuasive forum non argument than the usual case.

Rec. 617-618.

Accordingly, the court ruled that coverage claims related to the underlying Hacker litigation – which are the only coverage claims BSA asserts against National Surety in this proceeding – would proceed in Illinois. Rec. 689-690.

In reaching its conclusion, the court rejected BSA's argument that National Surety "acted inequitably" by bringing a declaratory judgment action against BSA in Illinois. Rec. 617, 632. The court dismissed the argument on the ground that Illinois law in fact required National Surety to file its declaratory judgment action in response to BSA's coverage demand in order to protect its coverage positions, as set forth in *Employers of Wausau v. Ehlco Liquidating Trust,* 708 N.E.2d 1122 (Ill. 1999). Rec. 632.

Finally, the court made clear that it was not deciding or otherwise expressing an opinion with respect to National Surety's plea in abatement or motion to stay the

Texas action. Rec. 664 ("The ruling that I have just made is intended to leave the Texas Court entirely free to address the plea in abatement in whatever way the Texas Court thinks appropriate.").

### (b)    Progress of the Illinois Action.

Upon denying BSA's second motion to dismiss, the Illinois circuit court ordered the filing of responsive pleadings to National Surety's complaint and granted the parties leave to begin discovery. Rec. 689. On February 28, 2019, BSA and Chicago Area Council filed their Joint Answer and Counterclaims to National Surety's complaint. BSA's counterclaims assert identical claims, raising the same coverage issues with respect to the same underlying Hacker claimants, as its Texas Petition, alleging that National Surety breached its policies by refusing to indemnify BSA for its settlements with John Does 2, 3, 4 and 6. Rec. 2126, 2162-2164. As with its Petition here, BSA's Illinois counterclaims also assert claims against National Surety under Sections 541 and 542 of the Texas Insurance Code based on the same alleged facts as the Texas Petition. Rec. 2164-2165.

Seventeen of the Illinois insurer-defendants filed answers and affirmative defenses to National Surety's complaint, with several asserting their own counter- and/or cross-claims against BSA. Rec. 2327-2328. For their part, the Doe Defendants, plaintiffs in the underlying Hacker actions, filed a motion to strike certain of National Surety's causes of action and a second demand for a bill of

particulars, challenging the sufficiency of National Surety's allegations, both of which are pending. Rec. 2616-2621, 2647-2649.

With the Illinois case now at issue, several parties, including the Doe Defendants, have issued and responded to interrogatories, document requests, and requests for admission. Rec. 3409-3410. During an April 16, 2019 status conference, the Illinois circuit court ordered document discovery to proceed and the parties to prepare a protective order to facilitate the production of documents. Rec. 3409, 3419. The Doe Defendants objected to certain terms of the parties' proposed protective order that would have limited their access to certain documents and information, reflecting their interest in the coverage litigation given that, as their counsel has acknowledged, a "finding of coverage favorable to BSA" would benefit his clients, who "are named [] as necessary parties" to the Illinois Action." Rec. 3539.

### (4)    The District Court Denies National Surety's Plea in Abatement and Motion to Stay the Texas Action.

The district court heard oral argument on National Surety's plea in abatement and motion to stay on March 14, 2019. During argument, the district court expressed several concerns with allowing the case to proceed in light of the Illinois action including, among others, the unnecessary expense of the duplicative litigation that would follow. Rec. 3625-3627. The district court observed that, because the Illinois action is proceeding, the only way to avoid the costliness of duplicative proceedings was for the Texas action to be stayed, a point BSA conceded:

> THE COURT: So how are you going to avoid that? How are you going to avoid that if I'm in total agreement with you…How are you going to avoid the costliness of me keeping this case, not staying it, or abating it, or anything of that nature…You're going to have [the case in Illinois]?
>
> BSA: Yes.
>
> THE COURT: And it will continue to be up there?
>
> BSA: Right…
>
> THE COURT: So what we'll have is that costliness plus this down here.
>
> BSA:  Yeah. It is not—
>
> THE COURT:  All right. Keep going…

Rec. 3626.

The district court also expressed concern over its inability "to get jurisdiction over all of the players in the Chicago case" – namely, the individual Doe Defendants to National Surety's complaint. Rec. 3628. The district court acknowledged its agreement with Illinois law requiring that the Doe Defendants be parties to the action, observing that "someone who has been harmed and ought to be covered by coverage, ought to at least have a right to have some input on the coverage issue," and that the Doe Defendants' rights would be adjudicated without them if the Texas action proceeded. Rec. 3603.

Following the March 14 hearing, BSA conceded that at least part of the Texas action should be stayed in favor of the Illinois proceedings, providing the district

court an "alternative proposed order" proposing that the court grant National Surety's and Century's motions in part to stay certain aspects of the Texas action, while allowing others to move forward. Rec. 2272-2278.

On March 27, 2019, the district court issued a two-sentence order denying National Surety's plea in abatement and stay motion in their entirety. Rec. 2288. National Surety and Century moved for reconsideration, which the district court denied on September 10.[3]

### (5)    BSA Files a Summary Judgment Motion in Texas in which it Takes a Position Directly Contrary to What it Previously Represented to the Illinois Court.

On August 21, 2019, BSA filed a motion for summary judgment in Texas, arguing that the National Surety polices do not require that the Hacker claims constitute an "occurrence" in order for them to be covered. Rec. 3642-3668. BSA's claim to this effect is directly contrary to what it had previously represented to the Illinois circuit court in seeking and obtaining a temporary stay of the Illinois action, *see* p. 5, above. Rec. 3661.

### SUMMARY OF THE ARGUMENT

As the Texas Supreme Court observed almost a century ago, the "due and orderly administration of justice" requires that the rule of comity between states "be

---

[3] National Surety filed its motion for reconsideration of the March 27 Order on May 31, 2019. Hearing on the motion was originally scheduled for June 1, but was continued until September 3 while the parties engaged in mediation. The mediation was unsuccessful.

strictly enforced. Any other rule would lead to uncertainty and disorderly conflict between the courts, and be productive of interminable confusion, and of results disastrous to the administration of justice." *Gohlman v. Whittle*, 273 S.W. 806, 807 (Tex. 1925). To that end, Texas law is clear that district courts must stay any action before them that involves the same parties, subject matter, causes of action, issues, and claims for relief as an earlier-filed action over which another state's court has exercised its jurisdiction. *See* Arg. § II.A., below. A district court's failure to do so, it is well-established, constitutes an abuse of discretion for which mandamus relief is warranted. *Id.*

In this case, National Surety filed its complaint for declaratory judgment in the Illinois circuit court – its home state and where the underlying sexual abuse cases at issue in the parties' coverage dispute are being litigated – nine months before BSA filed this action against National Surety asking the district court to adjudicate the same coverage issues between the same parties with respect to the same underlying claims. BSA asserts all of the same causes of action and all of the same claims for relief in the Illinois action as it does here, and the Illinois circuit court has exercised its jurisdiction over BSA's claims by ordering that they are to be litigated there. Well-established rules of comity required the district court to defer to that order, and its refusal to do so was a clear abuse of discretion for which there is no adequate remedy on appeal. *See* Arg. § II.C. National Surety's Petition should therefore be

granted and the district court ordered to vacate its March 27 Order and stay all further proceedings pending resolution of the first-filed Illinois action.

## ARGUMENT

## I.    Legal Standard for Mandamus Relief.

Mandamus relief will issue "to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law." *In re Essex Ins. Co.*, 450 S.W.3d 524, 526 (Tex. 2014); *In re AutoNation, Inc.*, 228 S.W.3d 623, 667 (Tex. 2007) (same). To obtain mandamus relief, a relator must therefore establish that (i) the trial court committed a clear abuse of discretion and (ii) the relator has no adequate remedy by appeal. *In re Essex Ins. Co.*, 450 S.W.3d at 526.

It is well established that a trial court has "'no discretion in determining what the law is or applying the law to facts,' even when the law is unsettled." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (citation omitted). Accordingly, "a trial court abuses its discretion when it fails to analyze or apply the law correctly." *In re Columbia Med. Ctr. of Las Colinas*, 306 S.W.3d 246, 248 (Tex. 2010); *Perry v. Del Rio*, 66 S.W.3d 239, 257 (Tex. 2001) ("[A] trial court's 'erroneous legal conclusion, even in an unsettled area of law, is an abuse of discretion.'" (citation omitted)).

Texas courts "assess the adequacy of an appellate remedy by 'balancing the benefits of mandamus review against the detriments.'" *In re State*, 355 S.W.3d 611, 614 (Tex. 2011), *citing In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008). Courts consider a number of factors in making this determination, including "whether mandamus will spare litigants and the public 'the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.'" *Id.*, *quoting In re Prudential Ins.*, 148 S.W.3d at 136.

## II.    The District Court Abused its Discretion by Allowing the Later-Filed Texas Action to Proceed.

### A.    Texas Courts Have Long Held That a Trial Court's Failure to Stay Proceedings Interrelated to a Matter First Filed in Another State Constitutes an Abuse of Discretion.

Texas law is clear: "When a matter is first filed in another state, the general rule is that Texas courts stay the later-filed proceeding pending adjudication of the first suit." *In re AutoNation, Inc.*, 228 S.W.3d 663, 670 (Tex. 2007); *VE Corp. v. Ernst & Young*, 860 S.W.2d 83, 84 (Tex. 1993) (where identical suits are pending in different states "the principle of comity generally requires the later-filed suit to be abated."); *In re Vinyl Tech., Inc.*, 352 SW.3d 810, 814 (Tex. App.—San Antonio 2011, orig. proceeding) (same); *In re BP Oil Supply Co.*, 317 S.W.3d 915, 919 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) (same); *In re State Farm Mut. Auto*, 192 S.W.3d 897, 900-903 (Tex. App.—Tyler 2006, orig. proceeding) (same). The rule is based on principles of interstate comity long recognized by the Texas

Supreme Court,[4] and requires that Texas courts defer to interrelated proceedings first-filed in another state "where [the] other court has exercised jurisdiction over the matter and where states agree about the public policy at issue." *In re BP Oil Supply Co.*, 317 SW.3d at 919; *In re State Farm*, 192 S.W.3d at 901. Such deference also "advances Texas public policy because it adheres to our well-established first-filed rule." *In re BP Oil Supply Co.,* 317 S.W. 3d at 921.

As Texas courts of appeals have repeatedly held, a trial court's "failure to properly apply the principles of comity when requested to stay the later of two actions pending in different states constitutes an abuse of discretion" warranting mandamus relief. *In re State Farm Mut. Auto*, 192 S.W.3d 897 at 903 (trial court abused discretion by refusing to stay later-filed Texas action in favor of Louisiana proceeding where Louisiana court had exercised jurisdiction over matter by denying motion to dismiss); *see also In re Vinyl Tech., Inc.*, 352 S.W.3d at 814-15 (granting mandamus petition where trial court abused discretion by failing to stay case in favor

---

[4] *See In re AutoNation, Inc.*, 228 S.W.3d at 670 (quoting *Gannon v. Payne*, 706 S.W.2d 304, 306 (Tex. 1986)) ("Our federal system benefits from a measure of state-to-state comity, which, while not a constitutional obligation, is 'a principle of mutual convenience whereby one state or jurisdiction will give effect to the laws and judicial decisions of another.'"); *Gohlman*, 273 S.W. at 807 ("It is necessary for the due and orderly administration of justice that the rule of comity…should be strictly enforced. Any other rule would lead to unseemly and disorderly conflict between the courts, and be productive of interminable confusion, and of results disastrous to the administration of justice."); *cf In re J.B. Hunt Transport, Inc.*, 492 S.W.3d 287, 292, 294 (Tex. 2016) (trial court abused its discretion by not abating later-filed action; "'principles of comity, convenience, and the necessity for an orderly procedure in the trial of contested issues'" require trial courts to adhere to general rule that they stay later-filed case).

of first-filed Massachusetts case); *In re BP Oil Supply Co.*, 317 S.W.3d at 919-21 (trial court abused discretion by failing to stay Texas action in favor of a Delaware case filed five hours earlier); *Evans v. Evans*, 186 S.W.2d 277, 279-80 (Tex. App.—San Antonio 1945, no pet.) (abuse of discretion to allow Texas action to proceed where Ohio court had exercised jurisdiction over dispute; trial court's refusal to stay case "effect[ed] an unwarranted interference with the rights of non-residents of this State, which rights have been recognized and made effective by order of a court of a sister state"); *Crown Leasing Corp. v. Sims*, 92 S.W.3d 924, 928 (Tex. App.—Texarkana 2002, no pet.) (staying later-filed Texas proceeding in favor of Florida action based on principles of comity); *Alpine Gulf, Inc. v. Valentino*, 563 S.W. 358, 360 (Tex. App.—Houston [14th Dist.] 1978, pet. denied) (trial court erred by refusing to stay later-filed Texas action seeking same ultimate relief as New York action filed five days earlier).

With these principles in mind, we turn to the district court's March 27 and September 10 Orders denying National Surety's plea in abatement and motion to stay.

### B. Principles of Comity Required the District Court to Stay This Proceeding Given That the Two Actions Involve the Same Dispute Over Which the Illinois Circuit Court Properly Exercised Jurisdiction.

It is undisputed that the Illinois and Texas actions in this case are mirror images of one another, overlapping completely as to National Surety. At issue in

both proceedings are the same causes of action, the same subject matter, the same legal and factual issues, and the same relief. *See*, *e.g.*, *In re Vinyl Tech., Inc.*, 352 S.W.3d at 814 ("To obtain a stay of a subsequent suit, it is generally necessary that the two suits: (1) involve the same cause of action; (2) concern the same subject matter; (3) involve the same issues; and (4) seek the same relief."); *In re BP Oil Supply Co.*, 317 S.W.3d at 919 (same).

The only dispute between BSA and National Surety pending before the district court concerns National Surety's coverage obligations with respect to the underlying Hacker litigation, which is the only dispute between the parties pending before the Illinois circuit court. BSA seeks coverage from National Surety in both cases for the same underlying Illinois claims, under the same policies, based on the same facts and circumstances; namely, the sexual abuse of eighteen Boy Scouts by a Scout leader in the Chicago area. BSA's counterclaims in the Illinois action are identical to its Texas Petition, requesting the same policy declarations, asserting the same causes of action, and seeking the same relief under the same provisions of the Texas Insurance Code. For all intents and purposes, as to National Surety, the two actions are identical.[5]

---

[5] It is on this point that the Court's decision in *Ashton Grove LLP v. Jackson Walker LLP*, 366 S.W.3d 790 (Tex. App.—Dallas 2012, no pet.) is distinguishable. *Ashton Grove* concluded that the district court did not abuse its discretion by denying a motion to stay because, unlike here, the two actions at issue involved different causes of action and sought different remedies. *Id.* at 795. That is plainly not the situation in this case, where BSA alleges identical causes of action seeking

With one important exception. The Illinois action, filed nine months earlier, is the far more comprehensive of the two with respect to the complete resolution of insurance coverage obligations between BSA and its 20 insurers for the underlying Hacker claims. The Illinois action includes *all* parties in interest to resolving the Hacker coverage dispute – National Surety, three BSA entities, the 19 other insurers who had policies with BSA between 1980 and 1988, and the 18 Doe Defendants, which Illinois law deems to be necessary parties to the coverage dispute. In contrast, only *six* of the 42 parties to National Surety's Illinois complaint with a potential interest in coverage issues pertaining to the Hacker abuse litigation are parties to this proceeding.[6] The Illinois action is thus the more comprehensive, efficient, and effective vehicle for resolving the parties' dispute.

---

identical remedies in both actions, and the legal and factual issues raised in both matters are the same.

[6] As noted above, Illinois law holds that underlying tort claimants have a substantive interest in the resolution of coverage disputes, and thus are necessary parties to and must be named as defendants in any coverage action involving their claims. As the Illinois Supreme Court explained in *Zurich Ins. Co. v. Baxter Int'l., Inc.*, 670 N.E.2d 664, 669 (Ill. 1996):

> Illinois law evinces a recognition that the underlying claimants have a substantial interest in how insurance coverage questions are resolved. It also reflects a belief that this interest is best protected by having the claimants participate directly in the litigation between the insurance carrier and the insured, rather than by allowing the claimants to sue the carrier independently…[Accordingly], the fact that the claimants will be excluded from the coverage litigation in California is not a reason to defer to the California courts. It is a reason to insist that the Illinois action be allowed to proceed in the courts of Illinois.

*Id.* at 669. Allowing the Texas action to proceed in the absence of these parties thus runs contrary to Illinois law and the important interests (which the district court itself acknowledged) it is intended to protect.

There is also no dispute that Illinois is a proper forum for the parties' litigation. The Illinois circuit court already determined, after careful consideration of all the facts, circumstances, and legal arguments presented on BSA's forum non-conveniens motion, that the case was properly filed in Illinois and should proceed there. And for good reason. National Surety is an Illinois resident. BSA has operated in Illinois for decades and the Chicago Area Council is located in Chicago, Illinois. The sexual abuse for which BSA seeks coverage occurred in Illinois against children who resided in Illinois. The underlying litigation has been pending in an Illinois court for the past seven years, and National Surety filed its coverage action in Illinois state court upon BSA's demand for coverage as required by Illinois law.

The *only* tie this case has to Texas is that BSA is headquartered in Dallas, a fact the Illinois circuit court correctly concluded does not make the parties' dispute a "purely Texas matter" that National Surety is improperly trying to litigate in Illinois. *See In re AutoNation*, 228 S.W.3d at 670 (relator's first-filed Florida action was "not an attempt to litigate a purely Texas matter in a forum that has no relation to the parties or their agreement" where Florida had a clear interest in parties' dispute; "we will not presume to tell the forty-nine other states that they cannot hear a non-compete case involving a Texas resident-employee and decide what law applies."). The district court did not make any findings to the contrary, nor otherwise express any disagreement that venue in Illinois is proper. Its decision to nevertheless

allow the duplicative Texas action to go forward was without basis in either law or fact. *See*, *e.g.*, *In re Columbia Med. Ctr. of Las Colinas*, 306 S.W.3d at 248 ("[A] trial court abuses its discretion when it fails to analyze or apply the law correctly.").

Finally, staying this action would in no way violate fundamental Texas public policy.[7] To the contrary, Texas public policy strongly *disfavors* duplicative proceedings addressing the same issues between the same parties, *see In re BP Oil Supply Co.*, 317 S.W.3d at 921 ("Texas public policy does not favor the pursuit of a declaratory action when a previously filed liability action already addresses the same issues"), particularly where, as here, it disregards another state's exercise of jurisdiction over a matter contrary to principles of comity. *See*, *e.g.*, *id.* at 920 ("The Delaware court was the first to exercise jurisdiction over the parties and subject matter of this case. A judgment in the Texas case would render the Delaware court's order denying ConocoPhilips' motion to dismiss moot."); *In re State Farm*, 192 S.W.3d at 902 ("If the later [Texas] action proceeds on the merits, this would

---

[7] BSA's argument below that public policy concerns are implicated by what it claims are differences between Illinois and Texas law confuses principles of comity with choice-of-law issues, two very distinct considerations as the Texas Supreme Court has made clear. *In re AutoNation*, 228 S.W.3d at 669-70 (reversing trial and appellate courts' conclusion that allowing Florida court to "litigate enforceability restrictive covenants solely in Florida and solely under Florida law" because it "superimpose[d]…choice-of-law analysis onto the law governing forum-selection clauses;" "[W]e will not presume to tell the forty-nine other states that they cannot hear a non-compete case involving a Texas resident-employee and decide what law applies."). The Illinois Court has already indicated that it will entertain any choice-of-law argument the parties wish to make. Rec. 663.

effectively supplant the Louisiana court's denial of the real parties' motion to dismiss without prejudice."); *Evans*, 186 S.W.2d at 279-80 (allowing Texas action to proceed where Ohio court had already exercised jurisdiction over dispute would "effect an unwarranted interference with the rights of non-residents of this State, which rights have been recognized and made effective by order of a court of a sister state."). Principles of comity required the district court to defer to the Illinois circuit court's denial of BSA's motion to dismiss and decision to exercise its jurisdiction over the parties' dispute. Its refusal to do so was an abuse of discretion.

### C.    Mandamus Relief is Necessary Given the Inadequacy of an Appellate Remedy.

In *J.B. Hunt Transport, Inc.*, 492 S.W.3d 287 (Tex. 2016), the Texas Supreme Court granted mandamus relief from a trial court order refusing to abate the later-filed of two actions pending in different counties. With respect to the adequacy of a relator's appellate remedy in such cases, the Court addressed the then-existing tension between its decision in *Abor v. Black* – which held that mandamus is unavailable to correct the erroneous denial of a plea in abatement absent an order by one court "which actively interferes with the exercise of jurisdiction in another" – and *In re Prudential Ins. Co. of Am.*, in which the Court adopted a more flexible balancing test recognizing that in certain cases mandamus review "may be essential to, among other things, 'spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.'"

*In re J.B. Hunt Transport, Inc.*, 492 S.W.3d at 299, *quoting In re Prudential*, 148 S.W.3d at 136. The Court concluded that *Prudential* had abrogated the rigid test applied in *Abor* to hold that:

> *Prudential* indeed abrogates *Abor's* inflexible understanding of an adequate remedy by appeal. Permitting a case to proceed in the wrong court necessarily costs 'private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.' That was often the vice of *Abor's* strict standard. But *Prudential's* virtue is that it spares private parties and the public those costs.

*Id.*

To demonstrate the inadequacy of an appellate remedy necessary for mandamus to issue, therefore, the Court concluded that "a relator need only establish a trial court's abuse of discretion to demonstrate entitlement to mandamus relief with regard to a plea in abatement in a dominant jurisdiction case." *Id.* at 299-300.

While *J.B. Hunt* involved competing Texas actions filed in different counties, the same holding applies in the interstate context presented here. *See*, *e.g.*, *In re Vinyl Tech., Inc.*, 352 S.W.3d at 815 ("[W]e acknowledge the similarities between dominant jurisdiction and the principle of comity…The analysis in a dominant jurisdiction case is very similar to that in a case involving comity."). Even before *J.B. Hunt*, Texas courts of appeals agreed that the improper failure to stay later-filed Texas proceedings in favor of out-of-state litigation likewise lacks an adequate remedy on appeal. The court's discussion in *State Farm* is instructive:

> If the later action proceeds to trial and State Farm prevails, it will not appeal and its right to a stay is lost forever. If the real parties prevail, State Farm cannot obtain a reversal for the incorrect denial of a stay "unless the court of appeals concludes that the error complained of… probably caused the rendition of an improper judgment…Even if State Farm could somehow obtain reversal based on the denial of its motion, its right to stay could not be recovered…Further, if immediate review of [the] trial court's order is not available, the principle of comity as it applies to situations similar to the one before us would be rendered meaningless. Therefore, we hold that State Farm has no adequate remedy by appeal.

*In re State Farm Mut. Auto Ins. Co.*, 192 S.W.3d at 903 (citations omitted); *see also In re BP Oil Supply Co.*, 317 S.W.3d at 922 ("If the Texas case proceeds to trial and BP prevails, it will not appeal, and its right to a stay is lost forever…If ConocoPhillips prevails in the Texas case…[e]ven if BP could somehow obtain reversal based on the denial of its motion, its right to a stay could not be recovered.").

The same irreparable harm will result to National Surety unless mandamus issues here. Allowing this later-filed Texas action to proceed in light of the Illinois circuit court's decision to exercise jurisdiction over the parties' dispute would undermine fundamental interests of comity, force National Surety to needlessly litigate the same exact coverage issues on two different fronts, and will inevitably lead to duplicative proceedings, duplicative discovery, and potentially inconsistent rulings pertaining to the parties' rights and obligations under National Surety's policies, thus irreparably depriving National Surety of its right to proceed in its chosen forum and to an efficient and final resolution of the parties' dispute. National

Surety's loss of these rights cannot be undone on appeal given that further litigation to the point it can take an appeal would "vitiate and render illusory" the very subject matter of such appeal – *i.e.*, whether this action should have been allowed to proceed in the first place. *In re Lisa Laser*, 310 S.W.3d 880, 883 (Tex. 2010) (appellate remedy inadequate where trial court improperly refused to enforce forum-selection clause "because allowing the trial to go forward will 'vitiate and render illusory the subject matter of an appeal' – i.e., trial in the proper forum."). Nor is there an adequate remedy on appeal for the "time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *In re Prudential*, 148 S.W.3d at 136.

### D.    Mandamus Relief is Also Appropriate to Stop BSA From Taking Inconsistent Positions in Sister State Courts.

BSA has treated its later-filed Texas action as an opportunity to argue differing positions on identical issues already presented in the Illinois circuit court. When it thought it was to its advantage to argue that the National Surety policies contain an "occurrence" requirement to obtain a dismissal or stay of the Illinois action, it took that position in Illinois. Rec. 574-576. BSA now claims the exact opposite in its Texas summary judgment motion, arguing that the same policies do *not* require an "occurrence" for there to be coverage. The rule that comity should be respected for first-filed actions is intended to prevent sharp practices such as this.

Mandamus is appropriate so that this matter is litigated in one court, before one judge, who can ensure that the parties do not engage in such gamesmanship.

## PRAYER

For the foregoing reasons, National Surety respectfully requests that the Court grant its Petition for Writ of Mandamus and direct the Hon. Craig Smith to vacate his March 27 and September 10 Orders and enter an order staying or abating all further proceedings in this matter pending resolution of the Illinois action.

Respectfully submitted,

BRADLEY RILEY JACOBS PC

By: */s/ Todd C. Jacobs*
Todd C. Jacobs (admitted *pro hac vice*)
Illinois Bar No. 6201358
tjacobs@bradleyriley.com
David M. Caves (admitted *pro hac vice*)
Illinois Bar No. 6292531
dcaves@bradleyriley.com
320 W. Ohio Street, Suite 3W
Chicago, Illinois 60654
Telephone: (312) 281-0295
Facsimile: (319) 363-9824

MARTIN, DISIERE, JEFFERSON & WISDOM L.L.P.
Christopher W. Martin
State Bar No. 13057620
martin@mdjwlaw.com
William Edward McMichael
State Bar No. 24107860
mcmichael@mdjwlaw.com
808 Travis Street, 20th Floor

Houston, Texas 77002
Telephone:  (713) 632-1700
Facsimile:   (713) 222-0101

**ATTORNEYS FOR DEFENDANT
NATIONAL SURETY CORPORATION**

## CERTIFICATION

The undersigned has reviewed the petition and concluded that every factual statement in the petition is supported by competent evidence included in the appendix or record.

*/s/ Todd C. Jacobs*
Todd C. Jacobs