**<u>EXHIBIT D</u>**

FILED
DALLAS COUNTY
8/24/2018 11:41 AM
FELICIA PITRE
DISTRICT CLERK

Angie Avina

CAUSE NO. <u>DC-18-11896</u>

| | | |
|---|---|---|
| BOY SCOUTS OF AMERICA, ALOHA COUNCIL, NEW BIRTH OF FREEDOM COUNCIL, CHICAGO AREA COUNCIL | § § § § | IN THE DISTRICT COURT OF |
| PLAINTIFFS | § § | |
| VS. | § § § | DALLAS COUNTY, TEXAS |
| INSURANCE COMPANY OF NORTH AMERICA, CENTURY INDEMNITY COMPANY, ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, NATIONAL SURETY CORPORATION | § § § § § § | |
| DEFENDANTS | § § § | k-192 nd JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

Plaintiff Boy Scouts of America ("BSA"), Plaintiff Aloha Council ("AC"), Plaintiff New Birth of Freedom Council ("NBC") and Plaintiff Chicago Area Council ("CAC") (collectively, the "Plaintiffs") hereby file this Original Petition against Defendants Insurance Company of North America ("INA"), Century Indemnity Company ("Century Indemnity"), Allianz Global Risks US Insurance Company ("Allianz"), and National Surety Corporation ("National Surety")and would respectfully show the Court as follows:

### I.    DISCOVERY CONTROL PLAN

1.      Discovery in this matter is intended to be conducted under Level 2, pursuant to Rule 190 of the Texas Rules of Civil Procedure.

### II.    PARTIES

2.      Plaintiff BSA is a congressionally chartered organization authorized to do business in Texas, and has its headquarters at 1325 Walnut Hill Lane, Irving, Texas 75015.

3.      Plaintiff Aloha Council is a non-profit corporation organized under the laws of the State of Hawaii, and has its headquarters at 42 Puiwa Road, Honolulu, Hawaii 96817.

4.      Plaintiff New Birth of Freedom Council is a non-profit corporation organized under the laws of the State of Pennsylvania, and has its headquarters at 1 Baden Powell Lane, Mechanicsburg, Pennsylvania 17050.

5.      Plaintiff Chicago Area Council is a non-profit corporation organized under the laws of the State of Illinois, and has its headquarters at 1218 West Adams Street, Chicago, Illinois 60607.

6.      Defendant Insurance Company of North America is a corporation organized under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania. Defendant INA may be served with process by serving CT Corporation System, 1999 Bryan Street Suite 900, Dallas TX 75201-3136.

7.      Defendant Century Indemnity Company is a corporation organized under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania.  Defendant Century Indemnity may be served with process by serving CT Corporation System, 1999 Bryan Street Suite 900, Dallas TX 75201-3136.

8.      Defendant Allianz Global Risks US Insurance Company is a corporation organized under the laws of the State of Illinois with its principal place of business in Illinois.  Defendant Allianz may be served with process by serving CT Corporation System, 1999 Bryan Street Suite 900, Dallas TX 75201-3136.

9.      Defendant National Surety Corporation is a corporation organized under the laws of the State of Delaware with its principal place of business in Illinois.  Defendant National Surety

may be served with process by serving CT Corporation System, 1999 Bryan Street Suite 900, Dallas TX 75201-3136.

### III.    JURISDICTION & VENUE

10.    The foregoing allegations are incorporated herein by reference.

11.    This Court has jurisdiction over this matter because the amount in controversy, exclusive of interest and costs, is within the jurisdictional limits of the Court.

12.    Plaintiff seeks monetary relief over $1,000,000.

13.    Venue is proper in Dallas County, Texas pursuant to Texas Civil Practice & Remedies Code § 15.002(a)(1) because all or a substantial part of the events or omissions giving rise to the claims occurred in Dallas County at the time the cause of actions accrued.

### IV.    FACTUAL BACKGROUND

**A.    BSA and its Insurance Coverage Program**

14.    The Boy Scouts of America is one of the nation's largest and most prominent values-based youth development organizations, with more than 2.4 million youth participants and nearly one million adult volunteers.  BSA was founded in 1910, and since then, more than 110 million Americans have been participants in BSA programs at some time.

15.    The BSA program is delivered through local chartering organizations, such as churches, clubs, civic associations, or educational organizations, to implement the scouting program for youth within their communities.  Units are led entirely by volunteers appointed by the chartering organization, who are supported by local councils like AC, NBC and CAC.

16.    To insure its many activities and local councils throughout the country, Plaintiffs maintain a comprehensive, broad insurance program.  From approximately 1962 to present,

Plaintiffs purchased several general liability and umbrella and/or excess liability insurance policies.

**B.      The Lawsuits**

      **(i)      The Underlying Lawsuits**

17.      Over the past several years, Plaintiffs have been subject to numerous claims and lawsuits in which the underlying plaintiffs allege they were sexually abused while a participant in various BSA programs (the "Underlying Lawsuits").

18.      The Underlying Lawsuits allege abuse during various and multiple periods of time, in various and multiple geographic locations, and based on the conduct of various alleged perpetrators.

19.      The Underlying Lawsuits generally allege personal injury due to sexual abuse and allege, *inter alia*, that BSA and BSA local councils, including AC, NBC, and CAC, were negligent in failing to prevent the sexual abuse.

20.      The Underlying Lawsuits contain allegations that underlying plaintiffs suffered and continue to suffer from bodily injury, including but not limited to severe and debilitating physical, mental and emotional injury, pain and suffering, physical and emotional trauma, and present psychological damage.

21.      As a result of the Underlying Lawsuits, BSA and BSA local councils have incurred and will continue to incur significant defense fees and costs.  Many of the defendants have breached and continue to breach their contractual obligations by failing to pay BSA's and BSA local council's defense fees and costs.  This includes BSA's retained national coordinating counsel.

22.      In addition, certain insurers have failed to fund settlements reached by BSA with underlying plaintiffs.  These insurers either contend improperly that coverage is not available or

challenge the reasonableness of the settlements entered by BSA and BSA local councils; two such circumstances are below.

    **(ii)**    **The John Doe 2 and John Doe 3 Lawsuits**

23.    In December of 2012, BSA and CAC, among others, were named defendants in a case styled *John Doe, et al. v. BSA*, *et al.*, No. 2012-L-013569 in the Circuit Court of Cook County in Chicago, Illinois (the "Hacker Lawsuit").  The Hacker Lawsuit was originally brought by eighteen plaintiffs, but the Circuit Court bifurcated the Hacker Lawsuit into individual cases for each of the plaintiffs, including for John Doe 2 whose case is styled *John Doe 2 v. BSA*, *et al.*, No. 2017-L-9365 (the "John Doe 2 Lawsuit") and John Doe 3 whose case is styled *John Doe 3 v. BSA*, *et al.*, No. 2017-L-7900 (the "John Doe 3 Lawsuit").

24.    The John Doe 2 Lawsuit alleged that John Doe 2 was sexually abused by Thomas Hacker ("Hacker"), an alleged BSA scoutmaster, while he was a member of Troop 1600 in Oak Lawn, Illinois between 1983 and 1986.

25.    The John Doe 3 Lawsuit likewise alleged that John Doe 3 was sexually abused by Hacker while he was a member of Troop 1600 in Oak Lawn, Illinois between 1984 and 1986.

26.    Both the John Doe 2 Lawsuit and John Doe 3 Lawsuit contain allegations that BSA and CAC were negligent in not preventing the sexual abuse, even though Hacker admits to manipulating BSA's registration system to continue in scouting after he had supposedly been barred from volunteering by BSA.

27.    The John Doe 2 Lawsuit and John Doe 3 Lawsuit allege that both John Doe 2 and John Doe 3 have suffered permanent bodily injury, will continue to be damaged psychologically, and will continue to experience mental anguish, humiliation and emotional and physical pain, suffering and distress.

28.     The John Doe 2 Lawsuit was set for trial on July 9, 2018.

29.     The John Doe 2 Lawsuit settled prior to the July 9, 2018 trial.

30.     The John Doe 3 Lawsuit was set for trial on September 7, 2018.

31.     The John Doe 3 Lawsuit settled prior to the September 7, 2018 trial.

**(iii)     The Roe 90 Lawsuit**

32.     On April 21, 2016, BSA and AC, among others, were named defendants in a case styled *John Roe No. 90 v. Boy Scouts of America, Aloha Council et al.*, Case No. 16-1-0764-04 in the Circuit Court of the First Circuit, Hawaii (the "Roe 90 Lawsuit").

33.     The Roe 90 Lawsuit alleged John Roe No. 90 ("John Roe") was sexually abused by an individual who was allegedly associated with BSA, either as an alleged troop leader and/or scoutmaster for BSA and/or AC.

34.     The Roe 90 Lawsuit alleged the abuse from the individual began in 1980 in Honolulu, Hawaii.

35.     The Roe 90 Lawsuit asserted claims against BSA and AC for gross negligence, grossly negligent infliction of emotional distress, grossly negligent misrepresentation, and punitive damages.

36.     The Roe 90 Lawsuit settled prior to trial.

**C.     Coverage Disputes with Plaintiffs' Insurers Regarding the Underlying Lawsuits**

37.     The significant increase in sexual abuse claims over the last several years has resulted in an increase in disputes with Plaintiffs' insurers.  This action addresses Plaintiffs' disputes with: (1) INA and Century Indemnity regarding application of the FEA (defined below) to the Underlying Lawsuits; (2) INA regarding unpaid defense costs relating to the Underlying Lawsuits; (3) National Surety and INA regarding the John Doe 2 Lawsuit; (4) National Surety

regarding the John Doe 3 Lawsuit and (5) Allianz regarding the Roe 90 Lawsuit.

    (i)    **Plaintiffs' Coverage Dispute with INA and Century Indemnity Regarding Application of the First Encounter Agreement to the Underlying Lawsuits.**

38.    Certain INA and Century Indemnity entities issued a significant amount of primary, general-liability policies to Plaintiffs from approximately 1962 through 1996.  In certain years, certain INA and Century Indemnity entities also issued several excess/umbrella policies to Plaintiffs (collectively, the "INA Policies").

39.    In 1996, Plaintiffs approached INA and Century Indemnity in an effort to minimize disputes regarding coverage.  As a result of those discussions, on or about May 24, 1996, Plaintiffs and certain INA/Century Indemnity entities executed the "Settlement Agreement Regarding Sexual Molestation Claims."  This settlement agreement is often referred to as the "First Encounter Agreement" ("FEA").

40.    Pursuant to the FEA, Plaintiffs and certain INA/Century Indemnity entities agreed that "the date of 'occurrence' pertaining to any Sexual Molestation Claim shall be the date when the first act of Sexual Molestation took place, even if additional acts of Sexual Molestation or additional Personal Injuries arising therefrom also occurred in subsequent policy periods; and all damages arising out of such additional acts of Sexual Molestation or additional Personal Injuries shall be deemed to have been incurred during the policy year when the first act of Sexual Molestation took place."

41.    Plaintiffs and certain INA and Century Indemnity entities were the *only* parties to the FEA,[1] and the terms and conditions of the FEA bind only the parties to the FEA (Plaintiffs,

---

[1] INA is defined in the FEA as Insurance Company of North America, including its predecessors, successors, affiliates, subsidiaries, its past, present and future assigns, parents, and the officers, directors, employees, and agents of any of them.  Century Indemnity is defined in the FEA as Century Indemnity Company, including its predecessors, successors, affiliates, subsidiaries, its past, present and future assigns, parents, and the officers, directors (employees,

**PLAINTIFFS' ORIGINAL PETITION**                         **Page 7**

INA and Century Indemnity), and only with regard to the INA Policies. Specifically, the FEA provides that the FEA is "not intended to be, nor shall it be construed as, an interpretation of any [non-INA] policy….[and]it shall not be used…against [Plaintiffs], whether directly or indirectly, to create, prove, or interpret the obligations, if any of INA or Century Indemnity under any [non-INA] policy other than an [INA Policy]."

42.     The FEA likewise contains a Merger Clause which provides that the FEA "memorializes and constitutes the entire agreement and understanding between [INA, Century Indemnity, and BSA] and supersedes and replaces all prior negotiations, proposed agreements, express or implied, and agreements whether written or unwritten."

43.     Notwithstanding the clear language in the FEA, INA presently is breaching the FEA through at least two contentions:  (1) that it may allocate liability to all years of abuse; and (2) that other insurers are bound by the FEA, despite not being signatories.

44.     First, the FEA specifically provides that the only policy triggered is the policy where "the first act of Sexual Molestation took place."  Despite this clear language, INA contends that it may allocate its liability for sexual abuse claims to all of the policy years where abuse occurred.  This constitutes a breach of the FEA.

45.     Second, notwithstanding the Merger Clause and the terms of the FEA, INA has taken the position that the FEA not only binds the INA Policies, but also applies to any policies underlying an INA Policy.  INA contends that any policy underlying an excess INA Policy must be exhausted in accordance with the first encounter rule.  As such, INA has refused to indemnify Plaintiffs for certain of the Underlying Lawsuits because INA asserts the underlying policies have

---

and agents of any of them.  Therefore, the FEA was only between the INA and Century Indemnity entities that existed as of May 24, 1996.

not been exhausted in accordance with the protocols of the FEA.  This too constitutes a breach of the FEA.

    **(ii)**    **Plaintiffs' Dispute with INA Regarding Defense Fees and Costs Related to the Underlying Lawsuits.**

46.    Certain of the INA Policies require INA to either defend or reimburse Plaintiffs for any defense costs it incurs in connection with the Underlying Lawsuits.

47.    Despite this obligation, INA has either refused to fund, has delayed payment, or has only partially funded the defense costs Plaintiffs have incurred in connection with the Underlying Lawsuits.

48.    INA has also refused to pay defense costs relating to Plaintiffs' National Coordinating Counsel – Ogletree, Deakins, Nash, Smoak & Stewart, P.C. ("Ogletree").  Ogletree is instrumental in coordinating the defense of all of the Underlying Lawsuits, which as noted above, are located all over the United States.  As such, INA is obligated to pay these defense costs.

    **(iii)**    **BSA's and CAC's Coverage Dispute with National Surety and INA Regarding the John Doe 2 Lawsuit.**

49.    National Surety issued Blanket Excess Liability Policy No. XLX1484309 to Plaintiffs for the policy period January 1, 1983 to January 1, 1984 (the "NS 1983 Policy").

50.    The NS 1983 Policy provides that National Surety "shall indemnify [BSA and CAC] for [BSA and CAC]'s 'ultimate net loss' in excess of [BSA and CAC]'s underlying insurance policies."

51.    The NS 1983 Policy defines "ultimate net loss" as "all sums actually paid, or which [BSA and CAC] are legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded by the [NS 1983 Policy]." INA issued Excess Liability Policy

No. XCP-144961 to Plaintiffs for the policy period November 17, 1982 to January 1, 1984 (the "INA 1983 Policy").

52.     Because the alleged dates of abuse in the complaint trigger coverage under the NS 1983 Policy and the INA 1983 Policy, BSA and CAC provided timely notice to National Surety and INA of the John Doe 2 Lawsuit.

53.     On January 18, 2018, BSA and CAC received a time-sensitive demand from John Doe 2 that would fully and finally resolve the John Doe 2 Lawsuit.  BSA and CAC tendered this demand to National Surety and demanded that it fund the settlement up to its remaining limits. National Surety, however, refused to fund the settlement demand prior to the April 2, 2018 deadline.

54.     On June 25, 2018, BSA and CAC received another demand from John Doe 2 that would fully and finally resolve the John Doe 2 Lawsuit.  The settlement demand received from John Doe 2 in June of 2018 had increased from John Doe 2's previous January 18, 2018 settlement demand.  BSA and CAC again tendered this demand to National Surety and demanded that it fund the settlement up to its remaining limits.  National Surety, however, refused to satisfy its coverage obligations and denied that it had an obligation to fund the settlement with its remaining limits.

55.     Faced with this denial, BSA and CAC obligated themselves to pay that portion of the settlement demand that would have exhausted the NS 1983 Policy.  As the payment of the settlement demand is a sum that BSA and CAC are "legally obligated to pay," National Surety is obligated to indemnify BSA and CAC for these sums to settle the John Doe 2 Lawsuit.

56.     As the amount of the settlement demand was in excess of the NS 1983 Policy, BSA and CAC tendered the remainder of the demand to INA and demanded that it fund it.

57.     INA, however, refused to fund in full the remaining settlement demand, instead only funded a portion of the settlement it deemed appropriate.

58.     BSA and CAC, therefore, paid the remainder of the settlement amount that INA improperly refused to pay, thereby settling in full its dispute with John Doe 2, and such amount is due and owing from INA.

**(iv)     BSA's and CAC's Coverage Dispute with National Surety Regarding the John Doe 3 Lawsuit.**

59.     National Surety issued Blanket Excess Liability Policy No. XLX1484392 to Plaintiffs for the policy period January 1, 1984 to January 1, 1985 (the "NS 1984 Policy").

60.     The NS 1984 Policy provides that National Surety "shall indemnify [BSA and CAC] for [BSA and CAC]'s 'ultimate net loss' in excess of [BSA and CAC]'s underlying insurance policies."

61.     The NS 1984 Policy defines "ultimate net loss" as "all sums actually paid, or which [BSA and CAC] are legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded by the [NS 1984 Policy]." The NS 1984 Policy was excess to INA Policy No. XCP 145365 (the "INA 1984 Policy").

62.     Because the alleged dates of abuse in the complaint trigger coverage under the NS 1984 Policy and the INA 1984 Policy, BSA and CAC provided timely notice to National Surety and INA of the John Doe 3 Lawsuit.

63.     On January 18, 2018, BSA and CAC received a time-sensitive demand from John Doe 3 that would fully and finally resolve the John Doe 3 Lawsuit. BSA and CAC tendered this demand to National Surety and demanded that, after INA funded its remaining limits under the INA 1984 Policy, it fund the remainder of the settlement. National Surety, however, refused to fund the settlement demand prior to the April 2, 2018 deadline.

64.     On July 23, 2018, BSA and CAC received another demand from John Doe 3 that would fully and finally resolve the John Doe 3 Lawsuit.  The settlement demand received from John Doe 3 in July of 2018 had increased from John Doe 3's previous January 18, 2018 settlement demand.  BSA and CAC again tendered this demand to INA and National Surety and demanded INA and National Surety fund the settlement.

65.     On August 2, 2018, INA agreed to tender its remaining limits under the INA 1984 Policy to contribute its portion of the John Doe 3 settlement.  National Surety, however, refused to satisfy its coverage obligations and denied it had an obligation to fund the remainder of the John Doe 3 settlement.

66.     Faced with this denial, BSA and CAC obligated themselves to pay that remainder of the John Doe 3 settlement demand.  As the payment of the settlement demand is a sum that BSA and CAC are "legally obligated to pay," National Surety is obligated to indemnify BSA and CAC for these sums to settle the John Doe 3 Lawsuit.

(v)     **BSA's and AC's Coverage Dispute with Allianz Regarding the Roe 90 Lawsuit.**

67.     Allianz issued Umbrella Liability Policy No. UMB 599346 to BSA and AC for the time period January 1, 1980 to January 1, 1981 (the "Allianz Policy").

68.     Because Roe 90 alleged physical abuse during the Allianz Policy period, BSA and AC provided timely notice of the Roe 90 Lawsuit to Allianz.

69.     In September 2017, BSA and AC received an offer to fully and finally settle the Roe 90 Lawsuit.  Plaintiffs' primary insurer, INA, tendered its limits under its general liability policy to effectuate a settlement.  And while the remainder of the settlement was well within the Allianz Policy's limits of liability, Allianz refused to fund in full the remainder of the proposed settlement amount.

70.     On January 18, 2018, BSA and AC again received a settlement demand from Roe 90 that would fully and finally settle the Roe 90 Lawsuit.  Again, BSA and AC tendered the settlement demand to Allianz, but Allianz refused to fund in full the settlement demand, instead only funding a portion of the settlement it deemed appropriate.

71.     BSA and AC, therefore, paid the remainder of the settlement amount that Allianz improperly refused to pay, thereby settling in full its dispute with Roe 90 and such amount is due and owing from Allianz.

## V.     CAUSES OF ACTION

### COUNT ONE
### Declaratory Judgment (Against INA)

72.     The foregoing allegations are incorporated herein by reference.

73.     Plaintiffs bring this action pursuant to TEX. CIV. PRAC. & REM. CODE §37.004.

74.     Plaintiffs seek a declaration that the (1) the FEA bars INA and Century Indemnity from allocating liability for the Underlying Lawsuits to insurance policies for each year of abuse; and (2) the terms and conditions of the FEA do not apply to other policies which are not subject to the FEA.

75.     An actual and justiciable controversy exists between Plaintiffs, INA and Century Indemnity regarding the rights and obligations of Plaintiffs, INA and Century Indemnity and each parties' obligations under the FEA, and a judicial declaration is necessary to determine Plaintiffs', INA's and Century Indemnity's obligations under the FEA.

### COUNT TWO
### Breach of Contract (Against INA)

76.     The foregoing allegations are incorporated herein by reference.

77.     The INA Policies are each valid and enforceable contracts.

78.     Plaintiffs have standing to pursue claims under the INA Policies.

79.     Plaintiffs have satisfied all conditions precedent under the INA Policies.

80.     The Underlying Lawsuits allege bodily injury/personal injury occurring in whole or in part during the policy period of the INA Policies.

81.     The terms of the INA Policies unambiguously require INA to defend or reimburse Plaintiffs for any defense costs incurred in connection with the Underlying Lawsuits.

82.     Alternatively, the terms of the INA Policies are ambiguous and must be construed in favor of coverage for Plaintiffs.

83.     INA has breached its contractual obligations under the INA Policies by, among other things, refusing and failing to defend and/or delaying payment and/or refusing to fully pay Plaintiffs' defense costs in connection with the Underlying Lawsuits in accordance with the express terms of the INA Policies.

84.     As a result of INA's breach, Plaintiffs have sustained substantial damages.

## COUNT THREE
## Breach of Contract (Against National Surety and INA)

85.     The foregoing allegations are incorporated herein by reference.

86.     The NS 1983 Policy and the INA 1983 Policy are each valid and enforceable contracts.

87.     BSA and CAC have standing to pursue claims under the NS 1983 Policy and the INA 1983 Policy.

88.     BSA and CAC have satisfied all conditions precedent under the NS 1983 Policy and the INA 1983 Policy.

89.     The John Doe 2 Lawsuit alleges bodily injury/personal injury occurring in whole or in part during the policy periods of the NS 1983 Policy and the INA 1983 Policy.

90.     The terms of the NS 1983 Policy and INA 1983 Policy unambiguously require National Surety and INA to indemnify BSA and CAC in the John Doe 2 Lawsuit.

91.     Alternatively, the terms of the NS 1983 Policy and INA 1983 Policy are ambiguous and must be construed in favor of coverage for BSA and CAC.

92.     National Surety and INA have breached their contractual obligations under the their respective policies by, among other things, refusing and failing to indemnify BSA and CAC in the John Doe 2 Lawsuit in accordance with the express terms of the NS 1983 Policy and INA 1983 Policy.

93.     As a result of National Surety's and INA's breach, BSA and CAC have sustained substantial damages.

## COUNT FOUR
### Breach of Contract (Against National Surety)

94.     The foregoing allegations are incorporated herein by reference.

95.     The NS 1984 Policy is a valid and enforceable contract.

96.     BSA and CAC have standing to pursue claims under the NS 1984 Policy.

97.     BSA and CAC have satisfied all conditions precedent under the NS 1984 Policy.

98.     The John Doe 3 Lawsuit alleges bodily injury/personal injury occurring in whole or in part during the policy periods of the NS 1984 Policy.

99.     The terms of the NS 1984 Policy unambiguously require National Surety to indemnify BSA and CAC in the John Doe 3 Lawsuit.

100.    Alternatively, the terms of the NS 1984 Policy are ambiguous and must be construed in favor of coverage for BSA and CAC.

101.    National Surety has breached its contractual obligations under the NS 1984 Policy by, among other things, refusing and failing to indemnify BSA and CAC in the John Doe 3 Lawsuit in accordance with the express terms of the NS 1984 Policy.

102.    As a result of National Surety's breach, BSA and CAC have sustained substantial damages.

**COUNT FIVE**
**Breach of Contract (Against Allianz)**

103.    The foregoing allegations are incorporated herein by reference.

104.    The Allianz Policy is a valid and enforceable contract.

105.    BSA and AC have standing to pursue claims under the Allianz Policy.

106.    BSA and AC have satisfied all conditions precedent under the Allianz Policy.

107.    The Roe 90 Lawsuit alleges bodily injury/personal injury occurring in whole or in part during the policy period of the Allianz Policy.

108.    The terms of the Allianz Policy unambiguously require Allianz to indemnify BSA and AC in the Roe 90 Lawsuit.

109.    Alternatively, the terms of the Allianz Policy are ambiguous and must be construed in favor of coverage for BSA and AC.

110.    Allianz has breached its contractual obligations under the Allianz Policy by, among other things, refusing and failing to indemnify BSA and AC in accordance with the express terms of the Allianz Policy.

111.    As a result of Allianz's breach, BSA and AC have sustained substantial damages.

**COUNT SIX**
**Violations of Chapter 542 of the**
**TEXAS INSURANCE CODE (Against INA)**

112.    The foregoing allegations are incorporated herein by reference.

113.    Plaintiffs' claim for coverage includes a first-party claim.

114.    INA's delays and/or denials of coverage violate the Prompt Payment of Claims statute in Chapter 542 of the Texas Insurance Code.

115.    Chapter 542 provides that "if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim,. . . the insurer shall pay damages and other items as provided by Section 542.060."  TEX. INS. CODE § 542.058.

116.    INA has received all items, statements and forms reasonably requested and required under Section 542.055 or, alternatively, in light of INA's denial of coverage, Plaintiffs were not required to submit such items, statements and forms.

117.    INA has nonetheless refused to pay and/or delayed payment of amounts that are clearly covered under the INA Policies.

118.    In refusing, failing and/or delaying payment of Plaintiffs' defense costs in connection with the Underlying Lawsuits, INA has violated Chapter 542 of the Texas Insurance Code.

119.    As a consequence of its statutory violation, INA is liable to pay Plaintiffs, in addition to the amount of its insurance claim, interest on the amount of its claim at the rate of 18 percent per annum, together with reasonable attorneys' fees.  *See* TEX. INS. CODE Sec. 542.060.

## <u>COUNT SEVEN</u>
### <u>Attorneys' Fees (All Defendants)</u>

120.    The foregoing allegations are incorporated herein by reference.

121.    Due to the actions of the Defendants, Plaintiffs have been required to retain the services of the law firm of Haynes and Boone, LLP of Dallas, Texas. Plaintiffs have agreed to pay

Haynes and Boone, LLP a reasonable fee for its services necessarily rendered and to be rendered in this action.

122.     Pursuant to § 37.009 of the Texas Civil Practices & Remedies Code, Plaintiffs are entitled to an award of reasonable and necessary attorneys' fees against the Defendants in an amount to be established at trial.  Pursuant to § 38.001 of the Texas Civil Practices & Remedies Code and Chapter 541 of the Texas Insurance Code, Plaintiffs are also entitled to an award of reasonable attorneys' fees against National Surety, Allianz and INA.  Plaintiffs are likewise entitled to an award of reasonable attorneys' fees under Chapter 542 of the Texas Insurance Code against INA.

<u>**NOTICE OF INTENT TO PURSUE CLAIM UNDER**</u>
<u>**CHAPTER 541 OF THE TEXAS INSURANCE CODE**</u>
<u>**(Against National Surety )**</u>

123.     The foregoing allegations are incorporated herein by reference.

124.     Pursuant to § 541.154 of the Texas Insurance Code, BSA and CAC hereby provide notice of their intent to pursue a claim against National Surety under § 541.151 of the Texas Insurance Code by amending this suit after 60 days.

125.     By, among other things, taking the actions outlined in ¶¶ 53-56, 63-66, National Surety has engaged in unfair or deceptive acts or practices as defined by Section 541.061 of the Texas Insurance Code.

126.     National Surety has violated Section 541.060(1) of the Texas Insurance Cody by misrepresenting to BSA and CAC a material fact or policy provision relating to coverage.

127.     National Surety has violated Section 541.060(2) of the Texas Insurance Code by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the John

Doe 2 Lawsuit and John Doe 3 Lawsuit with respect to which BSA's and CAC's liability had become reasonably clear.

128.    National Surety has violated Section 541.060(7) of the Texas Insurance Code by refusing to pay claims associated with the John Doe 2 Lawsuit and John Doe 3 Lawsuit without conducting a reasonable investigation with respect to those claims.

129.    As a result of National Surety's conduct, BSA and CAC have suffered substantial damages. The amounts of these damages are confidential, but BSA and CAC will provide the amount of damages and expenses, including attorney's fees reasonably incurred to National Surety, separately outside this petition.

130.    National Surety knowingly committed one or more of the violations referenced above, and thus BSA and CAC seek, in addition to actual damages, court costs, and attorneys' fees, an amount not to exceed three times the amount of actual damages.

**NOTICE OF INTENT TO PURSUE CLAIM UNDER
CHAPTER 541 OF THE TEXAS INSURANCE CODE
(Against Allianz )**

131.    The foregoing allegations are incorporated herein by reference.

132.    Pursuant to § 541.154 of the Texas Insurance Code, BSA and AC hereby provide notice of their intent to pursue a claim against Allianz under § 541.151 of the Texas Insurance Code by amending this suit after 60 days.

133.    By, among other things, taking the actions outlined in ¶¶ 69-71, Allianz has engaged in unfair or deceptive acts or practices as defined by Section 541.060(1) of the Texas Insurance Code.

134.    Allianz has violated Section 541.060(2) of the Texas Insurance Code by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Roe Lawsuit with respect to which BSA's and AC's liability had become reasonably clear.

135.    Allianz has violated Section 541.060(7) of the Texas Insurance Code by refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

136.    As a result of Allianz's conduct, BSA and AC have suffered substantial damages. The amounts of these damages are confidential, but BSA and AC will provide the amount of damages and expenses, including attorney's fees reasonably incurred to Allianz, separately outside this petition.

137.    Allianz knowingly committed one or more of the violations referenced above, and thus BSA and AC seek, in addition to actual damages, court costs, and attorneys' fees, an amount not to exceed three times the amount of actual damages.

## NOTICE OF INTENT TO PURSUE CLAIM UNDER CHAPTER 541 OF THE TEXAS INSURANCE CODE
### (Against INA)

138.    The foregoing allegations are incorporated herein by reference.

139.    Pursuant to § 541.154 of the Texas Insurance Code, BSA and CAC hereby provide notice of their intent to pursue a claim against INA under § 541.151 of the Texas Insurance Code by amending this suit after 60 days.

140.    By, among other things, taking the actions outlined in ¶¶ 47-48, 56-58, INA has engaged in unfair or deceptive acts or practices as defined by Section 541.061 of the Texas Insurance Code.

141.    INA has violated Section 541.060(2) of the Texas Insurance Code by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect

to which the insurer's liability has become reasonably clear, including refusing to pay the settlement of the John Doe 2 Lawsuit and refusing/delaying defense payments.

142.    As a result of INA's conduct, BSA and CAC have suffered substantial damages. The amounts of these damages are confidential, but BSA and CAC will provide the amount of damages and expenses, including attorney's fees reasonably incurred to INA, separately outside this petition.

143.    INA knowingly committed one or more of the violations referenced above and thus BSA and CAC seek, in addition to actual damages, court costs, and attorneys' fees, an amount not to exceed three times the amount of actual damages.

## VI.    JURY DEMAND

144.    Plaintiffs hereby request a jury trial pursuant to Tex. R. Civ. P. 216(a).

## VII.    PRAYER

WHEREFORE, Plaintiffs respectfully pray that this Court grant them the following relief:

a.    Declaratory Judgment that the FEA bars INA and Century Indemnity from allocating liability for the Underlying Lawsuits to insurance policies for each year of abuse; and (2) the terms and conditions of the FEA do not apply to other policies which are not subject to the FEA;

b.    Judgment awarding BSA and CAC all damages sustained as a result of National Surety's breach of contract;

c.    Judgment awarding BSA and CAC all damages sustained as a result of INA's breach of contract;

d.    Judgment awarding BSA and AC all damages sustained as a result of Allianz's breach of contract;

e.    Judgment awarding BSA and CAC actual and treble damages resulting from National Surety's violations of Chapter 541 of the Texas Insurance Code;

f.    Judgment awarding BSA and AC actual and treble damages resulting from Allianz's violations of Chapter 541 of the Texas Insurance Code;

g.      Judgment awarding BSA and CAC actual and treble damages resulting from INA's violations of Chapters 541 and/or 542 of the Texas Insurance Code;

h.      Judgment awarding Plaintiffs all reasonable and necessary attorneys' fees and expenses incurred in this matter against all defendants under Chapter 37 of the Texas Civil Practice & Remedies, Chapter 38 of the Texas Civil Practice & Remedies Code, Chapter 542, and/or Chapters 541 of the Texas Insurance Code;

i.      Judgment awarding Plaintiffs pre-judgment and post-judgment interest as allowed by law;

j.      Judgment awarding Plaintiffs all costs of court; and

k.      Any and all other relief to which Plaintiffs may be entitled.

Respectfully submitted,

/s/ *Ernest Martin, Jr.*
Ernest Martin, Jr.
State Bar No. 13063300
ernest.martin@haynesboone.com
Adrian Azer
State Bar No. 24048332
adrian.azer@haynesboone.com
Carla Green
State Bar No. 24097762
carla.green@haynesboone.com
HAYNES AND BOONE, L.L.P.
2323 Victory Ave., Suite 700
Dallas, Texas 75219
Telephone:     (214) 651-5000
Telecopier:    (214) 651-5940

ATTORNEYS FOR PLAINTIFFS