## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Re: D.I. 6288, 6457, 6495, 6497**<br>**Hearing Date: October 19, 2021 at 10:00 a.m. (ET)** |

### DEBTORS' OMNIBUS REPLY TO THE OBJECTIONS BY THE TORT CLAIMANTS' COMMITTEE, CENTURY, AND AIG, TO DEBTORS' MOTION FOR PROTECTIVE ORDER AND RELATED RELIEF

Boy Scouts of America (the "**BSA**") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession (together, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), submit this reply (the "**Reply**")[2] to the Tort Claimants' Committee's Objection [D.I. 6457] (the "**TCC Objection**"), Century's Objection filed on behalf of certain insurers [D.I 6495] (the "**Century Objection**"), and the AIG Companies' Objection [D.I. 6497] (the "**AIG Objection,**" and collectively with Century, the "**Insurers**," and together with the TCC, the "**Objectors**" or the "**Objections**") to the *Debtors' Motion for Protective Order and Related Relief* [D.I. 6288] (the "**Motion**").

### PRELIMINARY STATEMENT

The Objectors offer no credible argument challenging the Debtors' privilege assertions. Rather, the Objectors mostly argue that the Debtors' disclosure or use at trial of non-privileged

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not defined in this Reply have the meanings ascribed to them in the *Modified Fifth Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 6443] (as it may be amended, modified or supplemented, the "**Plan**").

information about the fact of mediation waives privilege over information protected by Local Rule 9019 and the Mediation Order.  The Objectors offer no basis for asserting waiver.  To the contrary, the law is clear that the use of *non-privileged* information does not waive privilege.  The Objectors' cases merely held that the use of *privileged* information waives privilege.

Although the Objectors have been demanding privileged materials for months, they ask the Court to not resolve this dispute as unripe, even as they seek more privileged information and continue to dispute the Debtors' position.  There is no rationale for the Objectors' position, other than to delay this case, and they ignore that this Court has explicitly instructed the parties to file motions for protective orders promptly to get issues resolved for confirmation.  *See* Sept. 23, 2021 Hr'g Tr. at 170:19.   In any case, resolution is appropriate now so that this months-long dispute can finally be concluded.  If the Court disagrees with the Debtors' conclusion as to privilege, the Debtors will need time to permit discovery.  Resolution now also will prevent constant disruptions throughout the confirmation hearing, as the Objectors make repeated and duplicative arguments about each document and every question posed to witnesses concerning the issue raised here.

## ARGUMENT

### A. Mediation Privilege Is an Important Policy Needed To Promote Candor and Settlements

1.    The Objectors do not dispute the importance of maintaining the confidentiality of mediation communications to resolving disputes and promoting settlements, allowing parties to negotiate freely without fear of later prejudice.  Mot. ¶¶ 11-14; TCC Obj. ¶ 2 ("The TCC does not dispute the role of confidentiality in mediations.").  Importantly, mediation here is ongoing, as the Debtors work to gain greater consensus.  *See Sheldone v. Pa. Tpk. Comm'n*, 104 F. Supp. 2d 511, 514 (W.D. Pa. 2000) (internal citations omitted) ("Assuming [parties] would even agree to participate in the mediation process absent confidentiality, participants would necessarily 'feel

2

constrained to conduct themselves in a cautious, tight-lipped, non-committal manner more suitable to poker players in a high-stakes game than to adversaries attempting to arrive at a just resolution of a civil dispute.' The effectiveness of mediation would be destroyed[.]"); *see also* Sixth Mediators' Report at 3 [D.I. 6210] ("The mediation remains ongoing, and the Mediators believe that it will likely lead to further settlements that maximize the value of the estates for the benefit of creditors.").

2.    While not directly challenging the importance of confidentiality to mediation, Century cites *In re AE Liquidation, Inc.*, Nos. 08-13031 (MFW), 10-55460 (MFW), 10-55384 (MFW), 2012 Bankr. LEXIS 5710 (Bankr. D. Del. Dec. 11, 2012) for the incorrect proposition that the Local Rules "do not bar discovery" of documents covered by the mediation privilege. Century Obj. at 9.  *In re AE Liquidation, Inc.* was decided in 2012, before Local Rule 9019-5(d) was amended explicitly to bar discovery of documents covered by the mediation privilege.  *See* Bankr. D. Del. L. R. 9019-5(d)(i) (2021) ("[E]xcept as set forth in the previous sentence, no person shall seek discovery from any participant in the mediation with respect to any information disclosed during mediation.").  Indeed, the court in *AE Liquidation* explicitly premised its decision on the fact that, at that time, Local Rule 9019-5(d) "provide[d] no basis for the Court to grant a protective order related to the mediation, nor does it protect any [mediation] documents from discovery."  *Id*. at *5.  Thus, the basis for the one decision on which Century relies for seeking mediation materials has been superseded by an amendment to Rule 9019-5.

**B. The Fact Of, And Certain Information About, Mediation Is Admissible To Help Demonstrate That Parties Reached An Agreement In Good Faith And Based On Arm's-Length Negotiations**

3.    The fact of mediation is admissible to help prove that a debtor proposed a plan in good faith under Bankruptcy Code section 1129(a)(3).  *See* Mot. ¶¶ 15-17; *In re LIBOR-Based*

*Fin. Instruments Antitrust Litig*., 327 F.R.D. 483, 492 (S.D.N.Y. 2018) (finding that "the settlement resulted from good faith negotiation" where it was the product of "multiple rounds of mediation" and "protracted and extensive negotiations before mediators").  The Objectors' argument to the contrary fails.  *See* TCC Obj. ¶¶ 10, 16.

4.      *First*, the TCC does not cite a single authority in support of its assertion that this Court cannot rely on evidence regarding the facts of mediation to make a good faith finding. Courts have repeatedly found otherwise.  *See, e.g.*, *In re Toys "R" Us Antitrust Litig*., 191 F.R.D. 347, 352 (E.D.N.Y. 2000) (concluding that settlement was the product of a "good faith, non-collusive" process where "arduous settlement discussions" occurred "over a lengthy period of time, and with the assistance of a highly experienced neutral mediator"); *In re LIBOR-Based Fin. Instruments Antitrust Litig*., 327 F.R.D. 483, 492 (S.D.N.Y. 2018) (finding that "the settlement resulted from good faith negotiation" where it was the product of "multiple rounds of mediation" and "protracted and extensive negotiations before mediators"); *see also* Mot. ¶ 17 (collecting additional cases).

5.      *Second*, Century's argument that the Mediation Order permits discovery of the information requested is wrong.  *See* Century Obj. at 14.  Paragraph 7 of the Mediation Order states: "The provisions of Local Rule 9019-5(d) pertaining to 'Confidentiality of Mediation Proceedings' shall govern the Mediation provided, however, that if a Party puts at issue any good faith finding concerning the Mediation ***in any subsequent action concerning insurance coverage***, the Parties' right to seek discovery, if any, is preserved."  *See* D.I. 812 ¶ 7 (emphasis added).  This case is not a "subsequent action concerning insurance coverage."  Rather, it is the same action, and the Debtors do not seek insurance coverage.

6.      *Third*, the Objectors are wrong that an inquiry into the "totality of the circumstances" surrounding the plan requires discovery into the "negotiations leading to any settlement." Century Obj. at 12.  Mediation privilege bars exactly that discovery. Indeed, if the Insurers' position was correct, bankruptcy courts would have to abrogate the mediation privilege every time a plan was based on a mediated result, basically eliminating the ability to mediate disputes.  None of the Objectors' cases support their argument.  For instance, Century cites *In re S B Bldg. Assocs. Ltd. P'Ship*, 621 B.R. 330, 360-61 (Bankr. D.N.J. 2020) for the proposition that the court should consider the facts of the negotiations leading to any settlement, including privileged mediation materials.  *See* Century Obj. at 12 n.8.  *S B Bldg*. did not address mediation materials, or even mention any privileged document at all.  *See S B Bldg. Assocs. Ltd. P'ship v. Iron Mt. Info. Mgmt., LLC*, Civil Action No. 3:20-cv-02954-FLW, 2020 U.S. Dist. LEXIS 213504 (D.N.J. Nov. 16, 2020).  Indeed, it is puzzling that the Objectors' would cite *S B Bldg*., because the court in that case found good faith based on the same facts that the Debtors intend to rely on to establish good faith here.  *See id*. at 362 (finding good faith based in part on "the three settlements with secured creditors that were achieved only after years of litigation, many months of negotiations between and among the parties and with the assistance of at least two mediators.").[3]

7.      *Fourth*, neither Century nor AIG disputes or otherwise addresses the numerous cases cited by the Debtors that state that the facts of a mediation can be used to determine good

---

[3]      None of the other cases the Objectors cite allowed disclosure of privileged materials in determining whether a plan was proposed in good faith.  *In re Brown*, 498 B.R. 486, 493-94 (Bankr. E.D. Pa. 2013) ("the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code.");  *In re Combustion Eng'g Inc.*, 391 F.3d 190, 247 (3d Cir. 2004) ("Although the Code does not define 'good faith' in the context of § 1129(a)(3), we have stated that 'for purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code.'").

faith. *See* Mot. ¶¶ 15-18, 38. The TCC tries to distinguish the Debtors' cases, but fails. *See* TCC

Obj. ¶ 10 n.6. The TCC claims that several of the cases the Debtors cite "may be" factually

distinguishable, *see id.*, but its purported bases for distinction are irrelevant. For instance, as to *In*

*re LIBOR-Based Financial Instruments Antitrust Litigation*, 327 F.R.D. 483 (S.D.N.Y. 2018), the

TCC argues that "only three" parties objected to the settlement at issue. The number of objecting

parties is irrelevant to the admissibility of evidence, or waiver. The TCC claims that *In re Toys*

*"R" Us Antitrust Litigation*, 191 F.R.D. 347 (E.D.N.Y. 2000) is inapposite because the party

objecting to the settlement agreement made no claim of bad faith. TCC Obj. ¶ 10 n.6. Evidence

that is admissible to support a good faith finding does not somehow become inadmissible when

good faith is challenged. Moreover, *Toys "R" Us* concerned a class action settlement, for which

the court had an independent obligation to ensure a good faith and arm's length settlement, even

if no party objected. *Id.* at 352 ("The court must also examine the negotiating process that gave

rise to the settlement to determine if it was achieved through arms-length negotiations by

counsel."). Thus, the *Toys "R" Us* court considered the fact that the parties settled "only after

arduous settlement discussions conducted in a good faith, non-collusive manner, over a lengthy

period of time, and with the assistance of a highly experienced neutral mediator." *Id.* The TCC

similarly attempts to distinguish *McMillon v. Hawaii*, No. 08-00578 LEK, 2011 U.S. Dist. LEXIS

17859 (D. Haw. Feb. 22, 2011) on the basis that "no class member objected" to the class action

settlement at issue. Again, the fact that there was no objector in *McMillon* is irrelevant: the court

was required to conduct its own review and satisfy itself regarding the propriety of the proposed

class action settlement. *See id.* at *24 (finding that, under Fed. R. Civ. P. 23, "[t]he Court must

examine the settlement as a whole for overall fairness."). And in doing so, the court concluded

that the negotiations were "good faith and arms-length" owing to the fact that the parties had

"numerous settlement discussions" and "engaged in mediation." *Id.* at \*6.  Even the TCC does

not attempt to distinguish *Smith v. Wacker Neuson Corp.*, which found that a settlement was

"[made] in good-faith" owing to the fact that it "was reached as a result of extended negotiations,

both in third-party mediation and in Court sponsored mediation settlement conferences and

ongoing settlement conferences."  No. 09-CV-1064-DRH-DGW 2011 U.S. Dist. LEXIS 118052

(S.D. Ill. Oct. 13, 2011).

8.      *Fifth*, contrary to Century's argument, the Court need not review the negotiations

leading up to the proposal of the plan to determine good faith.  *See* Century Obj. at 13.  It is the

Plan terms that are relevant here.  *See* Mot. ¶ 15. Century purports to rely on *W.R. Grace*, but

"discovery on the negotiations process" did not occur in *W.R. Grace*, nor did the court hold that

discovery into the negotiations process was necessary to "achieving fundamental fairness and

justice," as Century implies.  *W.R. Grace & Co.*, 729 F.3d 332, 338, 346 (3d Cir. 2013).  Rather,

the district court in that case relied on the fact that there were arms-length negotiations to establish

good faith.  *In re W.R. Grace & Co.*, 475 B.R. 34, 88-89 (D. Del. 2012) (citing "extensive arms-

length negotiations" as a basis for ruling out "dishonest or ulterior motives").  Moreover, the court

in *W.R. Grace* rejected the argument advanced by Century that the plan was proposed in bad faith

because certain parties were excluded from its negotiation.  *See* Century Obj. at 15; *W.R. Grace*,

729 F.3d at 347 ("We reject AMH's implication that Grace's failure to negotiate directly with

AMH undercuts the overall Plan's fundamental fairness.").[4]

---

[4]      Similarly, the court in *Exide* found that the plan at issue was proposed in good faith because "the plan was premised on the court-appointed mediators' settlement proposal after lengthy arm's length negotiations." *In re Exide Holdings, Inc.*, Case No. 20-11157-CSS, 2021 U.S. Dist. LEXIS 138478, at \*40-41 (D. Del. July 26, 2021).

**C.  The Motion Was Properly and Timely Brought As A Motion For Protective Order**

9.      The Objectors argue that the Motion was improperly brought as a motion for protective order rather than as a motion *in limine*, and is premature.  They are wrong on both counts.

10.      Initially, the Objectors do not appear to object to the Debtors seeking a protective order regarding issues of privilege, presumably because a protective order is exactly the vehicle for resolving demands for privileged discovery.  *See Geller v. von Hagens*, 278 F.R.D. 572, 576 (S.D. Cal. 2011) ("Generally, the remedy for relevant yet privileged matter is a protective order"); *Hernandez v. Cho*, 1989 U.S. App. LEXIS 24516, at *2 (9th Cir. 1989) ("If [a party] believed [the] discovery [request] was improper because the documents were privileged or irrelevant, [the] remedy was a motion for a protective order under Rule 26(c)."); *see also* Fed. R. Civ. Proc. 26(c)(1)(A), (D) ("A party or any person from whom discovery is sought may move for a protective order  . . . [and] The court may . . . (A) forbid[] the disclosure or discovery . . . (D) forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters.").  Courts routinely grant protective orders to prevent the discovery of privileged information.  *See e.g.*, *Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271, 275 (W.D. Pa. 2014) (entering a protective order after Defendant's invocation of the work product and attorney-client privileges); *Sheldone*, 104 F. Supp. 2d at 518 (granting Defendant's protective order seeking to preclude the discovery of all mediation communications and mediation documents because the court found that the mediation privilege applied).  Thus, this Court specifically instructed the parties to file a protective order for discovery issues: "[I]f parties have problems, they can file a motion for a protective order."  *See* Sept. 23, 2021 Hr'g Tr. at 170:17-19.

11.     To the extent the Motion seeks certain *in limine* relief, such as a ruling regarding the admissibility of redacted board minutes and presentations, the Motion is in no way premature. *First*, the Debtors should not have to wait until the "eve of trial," as Century suggests (Century Obj. at 8), to learn that their decision to properly redact or withhold documents renders those documents inadmissible, causing the Debtors to have to re-do discovery and delay the schedule. The Objectors offer no compelling reason for waiting until the last minute to resolve these key issues, and opposing resolution now only highlights their commitment to seeking delay. *Second*, nothing in the schedule requires parties to wait to bring either motions for protective orders or motions *in limine* or precludes them from doing so early. To the contrary, this Court has explicitly stated that it wants such motions "brought on quickly" to avoid needless delays that might disrupt the confirmation schedule. *See* Sept. 23, 2021 Hr'g Tr. at 170:19. *Third*, the Insurers recently complained that the confirmation schedule "builds in no time for the briefing and resolution of discovery disputes," so they cannot complain about resolving disputes now. *See Certain Insurers' Statement Concerning the Revised Proposed Confirmation Schedule* [D.I. 6473] at 2.

## D. The Information That the Insurers Seek Is Protected By Mediation And Attorney-Client Privilege

### 1. The Debtors Are Not Seeking An Inconsistent Application of Privilege

12.     The TCC argues that the Debtors cannot "rely on the mediation and introduce evidence concerning the mediation at the Confirmation Hearing, while simultaneously depriving other parties of the same ability." TCC Obj. ¶ 3. The Debtors do not seek to deprive any party of the ability to introduce the same type of evidence that the Debtors will offer. The TCC confuses the rules regarding the admissibility of privileged versus non-privileged information. The Debtors will introduce only non-privileged evidence regarding mediation: that the Debtors engaged in mediation, the parties are still in mediation, the number of mediations, the dates of the mediation

sessions, the profiles of the mediators, public mediation reports, and privilege logs. Every other party, including the TCC, will have the same right to introduce non-privileged information.

13.     The Insurers cite to Local Rule 9019-5 to argue that "[i]nformation otherwise discoverable or admissible in evidence does not become exempt from discovery, or inadmissible in evidence, merely by being used by a party in the mediation."  *See* Century Obj. at 9; AIG Obj. at 4.  The Debtors agree, and are not withholding discoverable information simply because it was used in mediation or otherwise seeking protection of any such materials.  Rather, the Debtors seek only to protect material created specifically for the mediation, including settlement proposals and related communications.

### 2.  The Materials At Issue Are Privileged

14.     None of the Objectors even argue that the specific documents and categories of documents the Debtors identified in the Motion are not privileged.  Therefore, the Objectors have waived any such challenge.  *See Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008) (holding that plaintiff waived argument when it "had ample opportunity to make this argument in response to defendants' motion" but "failed to do so"); *Daugherty v. Adams*, Civil Action No. 17-368, 2019 U.S. Dist. LEXIS 200436, at *39-40 (W.D. Pa. Nov. 15, 2019) ("[B]ecause Plaintiffs had an opportunity to respond to the substance of the arguments briefed by Defendants, to the extent Plaintiffs have failed to do so, the Court [deems] those arguments waived.").[5]

---

[5]     The TCC and Century argue that mediation privilege is a question of fact that cannot be decided in a protective order.  *See* TCC Obj. ¶ 16; Century Obj. at 7.  But their cases fail to support this position.  The TCC's reliance on *United States v. Wilson* is plain error, as the First Circuit has made clear.  *See United States v. Bisanti*, 414 F.3d 168, 170 (1st Cir. 2005) (finding that citations to *Wilson* for the proposition that "privilege is a factual determination . . . [are] not quite correct, as our later case law makes clear."). *Teleglobe* is irrelevant, as it has nothing to do with meditation or protective orders.  *See In re Teleglobe Communs. Corp.*, 493 F.3d 345 (3d Cir. 2007).  And Century relies on dicta from *In re Tribune Co.*, No. 08-13141 (KJC), 2011 Bankr. LEXIS 299 (Bankr. D. Del. Feb. 3, 2011) (Century Obj. at 7), in a portion of the opinion titled "Epilogue," which irrelevantly states that whether co-proponents of a plan can invoke the

### a.  The Mediation Proposals Are Protected By The Mediation Privilege

15.     As established in the Motion, and not disputed by the Objectors, mediation proposals lie at the "core" of mediation privilege and not discoverable by parties outside the mediation.  *See* Mot. ¶ 23.

### b.  The Documents Recording Mediation Communications Are Protected By Mediation Privilege

16.     As established in the Motion and not disputed by the Objectors, documents recording mediation communications are protected by the mediation privilege.  *See* Mot. ¶ 24.

### c.  The Information Redacted From Board Minutes Is Protected By The Mediation Privilege And Attorney-Client Privilege

17.     As established in the Motion, privileged communications contained in Board minutes retain their privilege, and the privileged material can be redacted.  *See* Mot. ¶¶ 25-27. Century oddly suggests that board minutes cannot be redacted if they reflect privileged information.  *See* Century Obj. 9-10.  That is incorrect.  *Kelly v. Ford Motor Co. (In re Ford Motor Co.)*, 110 F.3d 954, 966 (3d Cir. 1997), *abrogated on other grounds by Mohawk Indus. Inc. v. Carpenter*, 558 U.S. 100 (2009) (holding that minutes that were "infused with legal concerns" or contained decisions reached "only after securing legal advice" must be "protected from discovery"); *see also Welch v. Board of Directors*, 146 F.R.D. 131, 140 (W.D. Pa. 1993) (denying a motion to compel board minutes protected by the attorney-client privilege).  Indeed, this Court has recognized that the Insurers' purported authority in support of this position provides the opposite: parties routinely redact board materials, and such materials are admitted into evidence in redacted form.  *See* Aug. 13, 2021 Hr'g Tr. at 75:9-13 ("[T]he [*Comverge*] court, with a few

---

community of interest privilege (which is not at issue in the Motion) is a "fact intensive" exercise.  *Id.* at *35.

exceptions, after a review *in camera*, said they were properly redacted.  [T]his is not unusual that Board minutes are redacted and produced in redacted form and, therefore admitted in redacted form.") (discussing *In re Comverge, Inc. Shareholders Litigation*, Civil Action No. 7368-VCP, 2013 Del. Ch. LEXIS 92 (Ch. Apr. 10, 2013)).  The Objectors do not cite a single case holding that board minutes cannot be redacted for privilege.

### E.  None of the Debtors' Evidence Is Subject To the Extreme Sanction of Preclusion

18.     The Objectors have repeatedly argued that the Debtors' invocations of privilege should preclude the Debtors from offering evidence to establish good faith.  *See, e.g.*, D.I. 5729 at 18-20 (arguing that the Debtors' refusal to produce privileged documents "should preclude them from offering" testimony or evidence of good faith).  Yet none of the Objectors dispute or otherwise respond to the Debtors' arguments that the invocation of privilege, or utilization of privilege redactions, does not allow for the extreme sanction of preclusion.  *See* Mot. ¶¶ 28-29. Therefore, any argument for preclusion is waived.  *See supra* ¶ 14.

### F.  The Documents That Include Privilege Redactions Are Admissible

19.     As established in the Motion (Mot. ¶¶ 30-33), redactions are appropriate when portions of documents contain privileged information, and documents redacted for privilege are routinely admitted into evidence.  *See* Aug. 13, 2021 Hr'g Tr. at 75:1-18 ("[T]his is not unusual that Board minutes are redacted and produced in redacted form and, therefore admitted in redacted form."); *LG Display Co. v. Au Optronics Corp.*, 265 F.R.D. 189, 197 (D. Del. 2010) (rejecting argument that "the redactions to the documents affect their admissibility" and "violate 'the rule of completeness,'" noting that "[q]uestions as to the documents' content and completeness bear upon the weight to be accorded the evidence"); *In re RNI Wind Down Corp.*, No. 06-10110(CSS), 936, 1305, 1343, 2007 Bankr. LEXIS 982, at *10 (Bankr. D. Del. Mar. 29, 2007) (invoices "which were

heavily redacted for [attorney-client] privilege" admitted into evidence in redacted form).  The

Objectors fail to cite a single case supporting their position that otherwise relevant documents

become inadmissible where privileged material is redacted.

### G.  A Request For A Finding That The Mediated Agreements Were Negotiated In Good Faith And At Arm's Length Does Not Affect An "At Issue" Waiver

20.      The "at-issue," or "sword and shield," doctrine is inapplicable here because: (i) the

Debtors have not disclosed or relied on privileged material or otherwise taken a sword and shield

approach to disclosure (Mot. ¶¶ 35-37); (ii) reliance on the fact of mediation and certain related

information does not waive privilege (Mot. ¶ 38); (iii) the use of documents with privilege

redactions does not affect an at issue waiver (Mot. ¶ 41); and (iv) compliance with Local Rule

9019 and the Mediation order cannot be waived (Mot. ¶ 42).

21.      The cases cited by the Objectors do not support their argument that the non-

privileged facts of the mediation affects a waiver of privileged material.  For example, *Bradfield*,

which the TCC cites, is "a classic sword and shield case," *see ResCap Liquidating Trust v. Home

Loan Center, Inc. (In re RFC),* No. 13-cv-3451 (SRN/HB), 2018 U.S. Dist. LEXIS 172960, at *57

(D. Minn. Oct. 8, 2018) (discussing *Bradfield*), in which one party sought to introduce into

evidence confidential materials from a mediation session while barring any discovery into those

same materials.  *See Bradfield v. Mid-Continent Cas. Co.*, 15 F. Supp. 3d 1253, 1257, n.6 (M.D.

Fla. 2014).  Here, the Debtors will not introduce confidential mediation materials into evidence.

*See In re RFC*, 2018 U.S. Dist. LEXIS 172960, at *57 (declining to extend the *Bradfield* logic to

a case where the party claiming privilege does not seek to admit confidential mediation materials

into evidence).

22.      The TCC also cites *Windsor Secs, LLC v. Arent Fox LLP,* 273 F. Supp. 3d 512, 519

(S.D.N.Y. 2017) for the proposition that the Court "cannot know" whether at-issue waiver applies

to the documents at hand (TCC Obj. ¶ 6), but *Windsor* only proves the Debtors' point.  In that case, the court found that the plaintiff had *not* affected an at-issue waiver of attorney-client privilege because the plaintiff, like the Debtors, "made clear that it does not intend to rely on any [privileged] communications." 273 F. Supp. 3d at 519 (noting that a finding of at-issue waiver "in many instances presumes as a factual predicate. . . that a party will actually rely on privileged communications").

23.    Century's reliance on *G. Angel* and *Tribune* is also misplaced.  *G. Angel* found waivers of privilege under completely different facts and law, and *Tribune*, in addition to upholding the mediation privilege, is distinguishable on several important grounds.  *See G. Angel Ltd. v. Camper & Nicholsons USA, Inc.*, No. 08-60211-CIV, 2009 WL 10666975 (S.D. Fla. May 22, 2009) (finding, under Florida law, that a party seeking indemnification under a settlement agreement waives privilege as to that agreement, and that counsel's discussions of a privileged matter with a third party waived privilege). Century misstates *Tribune*.  *In re Tribune Co.*, 2011 Bankr. LEXIS 299 (Bankr. D. Del. Feb. 3, 2011), like *AE Liquidation*, was decided before Local Rule 9019-5(d) was amended specifically to prohibit discovery of mediation materials and, therefore, has been superseded by amendments to that rule.  Moreover, the facts in *Tribune* are distinct from those at issue here.  In that case, certain noteholders filed a motion for an order compelling the debtors to provide documents that the debtors provided to the mediator.  The debtors responded by "offer[ing] to waive part of the protections of the" mediation privilege, which the court allowed.  *Id*. at *25-32.  Here, by contrast, the Objectors seek to force the disclosure of mediation materials, in violation of Local Rule 9019-5.

**H.  The Objectors' Arguments To Avoid Resolution Of The Dispute Lack Merit**

24.     The Objectors' efforts to delay resolution of the discovery issues raised in this Motion disregard not only the efficient conduct of this case, but also this Court's specific instruction to file motions for protective orders promptly, as noted above: "[I]f the parties have problems, they can file a motion for protective order.  I want it all brought on quickly."  Sept. 23, 2021 Hr'g Tr. at 170:19.

### 1.  The Issue Is Ripe For Resolution, And A Rule 26(c) Protective Order Is Not An Impermissible Advisory Opinion

25.     The issues raised in this Motion are fully ripe, and have been for some time.  The Insurers have repeatedly demanded the privileged materials that are the subject of this Motion, and refused to agree to not pursue privileged materials going forward.  The Insurers have specifically said in emails to the Debtors that their prior discovery requests not only have not been withdrawn, but are still outstanding and require responses.  *See, e.g.,* Sept. 16, 2021, Email from T. Schiavoni to M. Andolina, attached hereto as Exhibit A ("We are writing to request that you comply with our requests for production of documents which are triggered by the changes to the plan.").  Indeed, Century recently filed a motion to compel production of documents in connection with their prior requests, including requests that plainly encompass privileged documents.  *See Century's Motion to Compel Documents Concerning Eve of Hearing Amendments to Debtors' Fifth Amended Chapter 11 Plan of Reorganization* [D.I. 6284] (seeking, among other things, "All Documents and Communications between or among You and any Chartered Organizations Concerning the . . . Term Sheet, the TDPs, the Settlement Trust Documents, and/or the Hartford Settlement").

26.     Additionally, after arguing to this Court that there are no pending demands for mediation materials, Century and the other insurers served hundreds of new document requests, which are extremely broad and cover the privileged materials that are the subject of this Motion.

*See, e.g.*, Propounding Insurers' Requests for Production (Sept. 30, 2021), attached hereto as Exhibit B. Specifically, the requests encompassing privileged materials that Century and the other insurers have served on the Debtors include, among others:

- "All Documents and Communications relating to the Settlement Trust between and/or among the Debtors, any Related Non-Debtor Entities, the TCC, the Coalition, the Future Claimants' Representative, Hartford, TCJC, and any Persons or entities that will be, or could under the Plan become, a Protected Party or Limited Protected Party." Propounding Insurers' Request No. 26.

- "All Documents and Communications relating to the Settlement Trust Documents between and/or among the Debtors, any Related Non-Debtor Entities, the TCC, the Coalition, the Future Claimants' Representative, Hartford, or TCJC." Propounding Insurers' Request No. 27.

- "All Documents and Communications relating to the TDPs between and/or among the Debtors, any Related Non-Debtor Entities, the TCC, the Coalition, the Future Claimants' Representative, Hartford, or TCJC." Propounding Insurers' Request No. 28.

- "All Documents and Communications relating to the TDPs, including without limitation all drafts of the TDPs, all documents reflecting the drafting history of the TDPs, and all documents reflecting the identities of the drafters of the TDPs." Propounding Insurers' Request No. 29.

- "All documents relating to the Contributing Chartered Organization Settlement Contribution, including but not limited to any analysis of the Contributing Chartered Organization Settlement Trust Contribution, and all Communications related thereto[.]" Propounding Insurers' Request No. 44.

16

- "All Documents and Communications relating to the determination of which parties would be included as Released Parties." Propounding Insurers' Request No. 91.

- "All Documents relating to the Channeling Injunction, including, but not limited to, all Communications related thereto between and/or among the Debtors, the Related Non-Debtor Entities, the Local Councils, the TCC, the Coalition, the Future Claimants' Representative, Hartford, TCJC, and any Persons or entities that will be, or could under the Plan become, a Protected Party or Limited Protected Party." Propounding Insurers' Request No. 95.

27.    The TCC has likewise demanded privileged materials subject to the Motion. *See* TCC's Requests for Production (Oct. 8, 2021), attached hereto as Exhibit C. Specifically, the TCC requests:

- "All Documents Concerning negotiations of the Plan, including, but not limited to, drafts of the Plan and other Documents Concerning the Plan that were not filed with the Bankruptcy Court in these Chapter 11 Cases." TCC Request No. 1.

- "All Documents Concerning the Debtors' formulation of Solicitation Procedures, including, but not limited to, any Communications relating to the solicitation, allowance, or estimation of Abuse Claims and Indirect Abuse Claims." TCC Request No. 3.

- "All Documents that You produced, received, reviewed, analyzed, considered, or that otherwise Concern the Hartford Term Sheet and the Hartford Insurance Settlement Agreement including, without limitation, any drafts thereof, and Concerning the negotiation and drafting thereof." TCC Requests No. 11.

- "All Documents relied upon or considered by the Debtors that influenced Your decision to agree to less than available Hartford policy limits." TCC Request No. 13.

17

- "All Documents that You produced, received, reviewed, analyzed, considered, or that otherwise Concern the TCJC Term Sheet and the TCJC Settlement Agreement including, without limitation, any drafts thereof and Concerning the negotiation and drafting thereof." TCC Request No. 14.

- "All Documents Concerning the determination of which parties would or could be included in the Plan as Protected Parties, Limited Protected Parties, and/or Released Parties." TCC Request No. 45.

- "All Documents Concerning the Channeling Injunctions." TCC Request No. 56.[6]

28.     Thus, there is a ripe dispute about the discoverability of the mediation materials at issue in this Motion.  Additionally, if the Objectors actually thought that they were entitled to the materials, they too would seek a prompt resolution of the issue.  Instead, the Objectors seek delay and to distract at the confirmation hearing through repeated objections and arguments as to each piece of evidence that otherwise would get resolved in this Motion.

29.     Century and AIG cite to *Han v. Fin. Supervisory Serv.*, 2017 WL 7689223 (S.D.N.Y. Oct. 6, 2017) as support for their contention that courts dismiss "premature discovery motions" as improper requests for advisory opinions.  *Han* is inapplicable.  The plaintiff there sought a declaratory judgment that she could serve an as-yet-undrafted subpoena on a foreign sovereign entity in "a case pending against another defendant in another forum."  *Id.* at *1.  Thus, there was not yet any demand for discovery to dispute.  Here, the Insurers have for months

---

[6] Other parties have also propounded discovery requests to the Debtors that impermissibly seek privileged material.  *See, e.g.*, Catholic and Methodists' Requests for Production (Oct. 8, 2021), attached hereto as Exhibit D, Request No. 25 ("All documents regarding the drafting and negotiation of the Trust Distribution Procedures."); Kentucky Creditors' Request for Production (Oct. 8, 2021), attached hereto as Exhibit E, Request No. 2 ("Produce any and all documents, minutes and/or notes from Your board meetings and/or planning sessions related to Delaware BSA, LLC.").

demanded the discovery that is subject to the Motion.  The Insurers also cite *Pueschel v. Nat'l Air Traffic Controllers' Ass'n*, 606 F. Supp. 2d 82 (D.D.C. 2009), but in that case the court found that the plaintiff's discovery request was not concrete enough because she did not give any examples of requests to which the defendant objected.  *Id.* at 86.  Here, the Debtors have specifically identified the discovery requests that seeks privileged material.[7]

### 2.  The Debtors Have Adequately Identified The Documents Subject To The Protective Order

30.     The TCC's argument that the categories of information in the Motion are too broad is wrong.  *See* TCC Obj. ¶¶ 7-8.  Rule 26(c) confers "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required . . . The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).  Accordingly, this Court is empowered to issue umbrella protective orders protecting classes of documents after a threshold showing by the party seeking protection.  In fact, contrary to the TCC's argument that the Court cannot enter the Proposed Order without first examining each document individually, "there is nothing unusual or inherently improper about a so-called umbrella order."  *Grief v. Nassau County*, 246 F. Supp. 3d 560, 568 (E.D.N.Y. 2017) (citing *United States v. Smith*, 985 F. Supp. 2d 506, 546-47 (S.D.N.Y. Dec. 4, 2013) ("It is . . . consistent with the proper allocation of evidentiary burdens for the court to construct a broad 'umbrella' protection order upon a threshold showing . . . of good cause'")); *see also EEOC v. Sterling Jewelers, Inc.*, No. 08-cv-706, 2011 U.S. Dist. LEXIS 67318, at *5-*6 (W.D.N.Y. June 23, 2011) ("The unique character of the

---

[7] Century's reliance on *Klein v. Affiliated Group, Inc*., No. 18-cv-949 DWF/ECW, 2019 U.S. Dist. LEXIS 8498 (D. Minn. Jan. 17, 2019) is even further afield.  That case involved a Fair Debt Collection Practices action, in which the plaintiff posed an overly vague "request [for] guidance from the court" regarding defense counsel's instructions to a deponent. *Id.* at *33 n. 10.

discovery process requires that the trial court have substantial latitude to fashion protective orders . . . in cases of unusual scope and complexity . . . broad protection during the pretrial stages of litigation may be warranted without a highly particularized finding of good cause."); *Zyprexa Litig.*, 474 F. Supp. 2d 385, 416 (E.D.N.Y. 2007) (noting that "[t]he value of umbrella orders has been well-documented").[8]  Additionally, the Motion does identify specific documents. *See* Mot. ¶ 9; *Proposed Order* ¶ 2, Ex. B to Mot.

31.    AIG falsely claims that "counsel for the Debtors recognized" at the September 28 hearing "that the motion ran afoul of the Court's guidance."  *See* AIG Obj. at 2.  It is telling that AIG does not cite anything in the transcript that supports this statement.  AIG cites a statement by Debtors' counsel that the Debtors "tried not to make [the Motion] abstract."  Sept. 28 Hr. Tr. at 206:23.  This is not a recognition that "the motion ran afoul of the Court's guidance," as AIG claims, but rather an affirmation that, as shown above (*see* ¶ 31, *supra*), the Motion **complied** with the Court's guidance.

### 3.   The Debtors Satisfied the Rule 26(c) Meet And Confer Requirement

32.    The Objectors' argument that the Debtors failed to meet and confer within the meaning of Rule 26(c) is incorrect.  *See* TCC Obj. ¶¶ 18-19; Century Obj. at 7-8; AIG Obj. at 3.

---

[8]     The cases Century cites for the same proposition are inapt.  *Whidden v. Roberts*, 334 F.R.D. 321 (N.D. Fla. 2020) involved a motion *in limine* in which a party petitioned the court to "accept" a huge volume of evidence (2.41 gigabytes of data) at an early stage in the case, when there were still motions to dismiss pending and the court did not have "sufficient familiarity with the case to determine whether the materials submitted . . . are even relevant to his claims and any possible defenses."  *Id.* at 323.  The present facts are distinct in every respect.  *Jones v. Harris* is even less relevant.  It involved a *pro se* plaintiff who filed a motion *in limine* while the case was still in the early motion to dismiss stage, and the court dismissed the motion because it did "not have a copy of this motion and has no idea what it is about." 665 F. Supp. 2d 384, 404 (S.D.N.Y. 2009).  And in *Senior v. Eihab Human Services*, No. 15-cv-1009 (ENV) (PK), 2019 U.S. Dist. LEXIS 228700 (E.D.N.Y. Sep. 30, 2019), a defendant filed a motion for summary judgment that depended on several requests to exclude certain evidence from trial.  The court found that the requests to exclude evidence were "beyond premature" at the summary judgment briefing stage, when the court's task is to determine whether there exists a genuine issue of material fact.  *Id*. at *10.

The Debtors have met and conferred with various parties regarding privilege disputes for months. *See* D.I. 6454. Indeed, Century and the insurers filed several motions to compel production of these very documents [D.I. 5729, 5881, 6282, 6284], and the Court held several hearings on this exact issue. The Debtors have made every effort to resolve these disputes. *See* Del. Bankr. L.R. 7026-1(d) (moving party should make "a *reasonable* effort . . . to reach agreement *with the opposing party* on the matters set forth in the motion.") (emphasis added). The Objectors do not seek consultation, they seek delay. The Objectors continue to oppose all facets of the relief, so a further meet and confer would be pure waste.[9]

*[Remainder of page intentionally left blank]*

---

[9] The only case that the Insurers cite to support their argument that a motion for protective order should be dismissed for failure to comply with the meet and confer requirement did not involve a motion for a protective order, and was premised on findings of attorney misconduct that are irrelevant here. *Rodriguez v. Pie of Port Jefferson Corp.,* No. CV 14-0519 (LDW) (GRB), 2015 U.S. Dist. LEXIS 44355 (E.D.N.Y. Mar. 13, 2015).

WHEREFORE, the Debtors request that the Court enter the Proposed Order and grant such further relief as the Court deems just and proper.

Dated: October 15, 2021
       Wilmington, Delaware

WHITE & CASE LLP
Glenn M. Kurtz (admitted *pro hac vice*)
Jessica C. Lauria (admitted *pro hac vice*)
Andrew Hammond (admitted *pro hac vice*)
Samuel P. Hershey (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: gkurtz@whitecase.com
      jessica.lauria@whitecase.com
      ahammond@whitecase.com
      sam.hershey@whitecase.com

– and –

WHITE & CASE LLP

Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: mandolina@whitecase.com
      mlinder@whitecase.com
      laura.baccash@whitecase.com
      blair.warner@whitecase.com

*/s/ Paige N. Topper*
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
Michelle M. Fu (No. 6661)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 351-9314
Email: dabbott@morrisnichols.com
      aremming@morrisnichols.com
      ptopper@morrisnichols.com
      mfu@morrisnichols.com