# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Hearing Date: November 10, 2021 at 10:00 a.m. (ET)<br>Objection Deadline: October 29, 2021 at 4:00 p.m. (ET) |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT WITH RSUI INDEMNITY COMPANY AND CERTAIN UNDERWRITERS AT LLOYD'S, SYNDICATES 2623/623 IN CONNECTION WITH CERTAIN PENDING NON-ABUSE LITIGATION

Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the BSA to enter into and approving that certain settlement agreement, in the form attached to the Proposed Order as **Exhibit 1** (the "Settlement Agreement"), by and between the BSA, RSUI Indemnity Company ("RSUI") and Certain Underwriters at Lloyd's, Syndicates 2623/623 ("Beazley," and, together with RSUI, the "Insurers"). The Settlement Agreement, if approved, would result in a payment of $1,900,000 to the BSA by the Insurers as a compromise of the BSA's claims for reimbursement of certain defense costs in connection with the Lawsuit (as defined below). Neither

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

of the insurance policies that are the subject of this Motion are "Abuse Insurance Policies" or "Specified Insurance Policies" within the meaning of the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 6443] (the "Plan"). In support of this Motion, the Debtors respectfully state as follows:

## BACKGROUND

1. Prior to the commencement of these cases on February 18, 2020 (the "Petition Date"), each of the Insurers issued liability insurance policies to the BSA for the policy period of March 1, 2018 to March 1, 2019. Specifically, RSUI issued Non-Profit Organization Management Liability Policy No. HP675591 (the "RSUI Policy") for the policy period of March 1, 2018 to March 1, 2019. The RSUI Policy has a $10 million limit of liability. Beazley issued Breach Response Policy No. W19CD8180301 (the "Beazley Policy" and with the RSUI Policy, the "Policies") for the policy period of March 1, 2018 to March 1, 2019. The Beazley Policy has a $15 million limit of liability. As noted above, neither of the Policies are "Abuse Insurance Policies" or "Specified Insurance Policies" within the meaning of the Plan; accordingly, the Policies do not, and are not alleged to, afford insurance coverage for Abuse Claims or personal injury or wrongful death claims.

2. On November 16, 2018, Girl Scouts of the United States of America ("GSUSA") filed a lawsuit in the United States District Court for the Southern District of New York, which is captioned *Girl Scouts of the U.S.A. v. Boy Scouts of Am.*, Case No. 18-10287 (the "Lawsuit"). The Lawsuit seeks injunctive and declaratory relief and money damages arising from alleged claims of federal and common law trademark infringement, federal and state trademark dilution, federal unfair competition, and tortious interference.

3.      The Lawsuit was automatically stayed on the Petition Date. On April 22, 2020, the Debtors and GSUSA stipulated to relief from the automatic stay as set forth in the *Stipulation Granting Limited Relief from the Automatic Stay with Respect to the Trademark Action of Girl Scouts of the United States of America* (the "Stipulation"). On April 24, 2020, the Court entered an order approving the Stipulation. As of the filing of this Motion, the case remains pending. On September 15, 2021, the Court heard oral argument on the BSA's motion for summary judgment; however it has not yet issued a ruling.

4.      In connection with the Lawsuit, the Debtors have submitted to the Insurers claims for coverage under the Policies, including coverage for defense costs. The Insurers agreed to reimburse certain defense costs incurred by the BSA in connection with the Lawsuit, including the fees and expenses of the BSA's counsel in the Lawsuit – Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn"), subject to specified limits on the hourly rates charged by Quinn that the Insurers would reimburse.

5.      After the Petition Date, a dispute arose between the BSA and the Insurers regarding the payment of certain of Quinn's invoices in connection with the Lawsuit (the "Invoices"). The BSA contends that the Insurers are obligated to reimburse the BSA for an additional $2,741,721.85 of fees and expenses set forth on the Invoices (the "Disputed Amount"). The Insurers have raised several defenses with respect to reimbursement of the Disputed Amount.

**THE SETTLEMENT AGREEMENT**

6.      To avoid the expense of litigation regarding the Disputed Amount, the BSA and the Insurers engaged in good-faith and arm's-length settlement negotiations. As a result of those negotiations, the BSA and the Insurers (collectively, the "Parties") have entered into the Settlement Agreement, subject to Court approval. The Settlement Agreement provides that RSUI and Beazley

will pay a total of $1,900,000 (the "Settlement Amount") to the BSA as a final compromise of the Disputed Amount. Under the Settlement Agreement, in exchange for limited partial releases relating to the Invoices, as summarized below, each of the Insurers will pay $950,000 to the BSA on or before the date that is thirty (30) days after entry of an order of the Court authorizing the BSA to enter into the Settlement Agreement.

7. Under the Settlement Agreement, the Parties have agreed to "release, acquit, and forever discharge each other and their respective current and former affiliates, subsidiaries, parent companies and/or corporations, joint ventures, directors, officers, members, partners, shareholders, employees, agents, representatives, adjusters, reinsurers, experts, consultants, and attorneys, all solely in their respective capacities as such, and their respective predecessors-in-interest, successors-in-interest, assigns, heirs, descendants, executors, administrators, and agents, all solely in their respective capacities as such, with respect to the Invoices." Settlement Agreement § V. The Settlement Agreement further provides that, for the avoidance of doubt, it does not effect a full release of the Policies, but only a limited release related to the Invoices. *Id.*

8. In addition to the Insurers' agreement to pay the Settlement Amount relating to the Invoices, the Insurers have also agreed to increase the hourly rates charged by Quinn for which the Insurers will provide coverage. The Insurers have agreed that the modified rate structure shall apply retroactively to all Quinn invoices billed to the Debtors since February 2020, and the Parties will engage in a reconciliation process to determine the additional amounts due pursuant to the rate-structure increase. Notwithstanding this agreement, the Parties continue to dispute whether the modified rate structure or a different rate structure will apply after the Debtors emerge from bankruptcy, and the Settlement Agreement is not intended to resolve that particular dispute.

**RELIEF REQUESTED**

9. By this Motion, the Debtors respectfully request entry of the Proposed Order, substantially in the form of the proposed order attached hereto as **Exhibit A**, authorizing the BSA to enter into and approving the Settlement Agreement.[2]

**BASIS FOR RELIEF REQUESTED**

13. Section 105(a) and Bankruptcy Rule 9019 authorize the Court to approve settlements of claims held by the estate. Section 105(a) provides, in relevant part, that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In addition, Bankruptcy Rule 9019 provides that, upon notice and a hearing, the Court "may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

14. Settlements and compromises are favored in bankruptcy proceedings as a means of "minimiz[ing] litigation and expedit[ing] the administration of a bankruptcy estate." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). The Court should exercise its discretion to approve a settlement or compromise where it is "fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). The Court need only "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.R. Grace & Co.*, 475 B.R. 34, 78 (D. Del. 2012). In determining whether a settlement or compromise should be approved, courts consider a number of factors, including "(1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved

---

[2] For the avoidance of doubt, this Motion does not seek to affect in any way the terms and conditions of the *Order (I) Approving Procedures for (A) Interim Compensation and Reimbursement of Expenses of Retained Professionals and (B) Expense Reimbursement for Official Committee Members and (II) Granting Related Relief* [Docket No. 341], as amended, including with respect to fee applications filed by Quinn.

and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d at 393.

15.     Here, the Settlement Agreement should be approved because it fairly and efficiently resolves the Disputed Amount alleged to be owed to the BSA on account of the Invoices with minimal burden to the estate and without prejudicing the interests of creditors.  The Settlement Agreement will permit the BSA to avoid the potentially significant expense and delays that would attend any litigation of the Disputed Amount and eliminate the risk of an unfavorable outcome in such litigation.  Moreover, the Settlement Amount will be paid from proceeds of the Policies, which, as noted above, are not "Abuse Insurance Policies" or "Specified Insurance Policies" under the Plan and therefore do not afford coverage for Abuse Claims or personal injury or wrongful death claims.  Moreover, because the Policies have combined aggregate limits of $25 million, payment of the Settlement Amount will minimally erode the significant available limits under the Policies.  For these reasons, the Settlement Agreement is fair, reasonable and in the best interest of the Debtors' estates and should be approved.  *See In re Louise's, Inc.*, 211 B.R. at 801.

## **NOTICE**

16.     Notice of this Motion will be provided to (i) the U.S. Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to the Tort Claimants' Committee; (iv) counsel to the Future Claimants' Representative; (v) counsel to the Ad Hoc Committee of Local Councils; (vi) counsel to JPMorgan Chase Bank, National Association; (vii) RSUI; (viii) Beazley; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (i) authorizing the BSA to enter into and approving the Settlement Agreement and (ii) granting such other relief as is just and proper.

*[Remainder of Page Intentionally Left Blank]*

| | |
|---|---|
| Dated: October 15, 2021<br>Wilmington, Delaware | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br><br>*/s/ Paige N. Topper*<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>Email: dabbott@morrisnichols.com<br>aremming@morrisnichols.com<br>ptopper@morrisnichols.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Jessica C. Lauria (admitted *pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Email: jessica.lauria@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Michael C. Andolina (admitted *pro hac vice*)<br>Matthew E. Linder (admitted *pro hac vice*)<br>Laura E. Baccash (admitted *pro hac vice*)<br>Blair M. Warner (admitted *pro hac vice*)<br>111 South Wacker Drive<br>Chicago, Illinois 60606<br>Telephone: (212) 881-5400<br>Email: mandolina@whitecase.com<br>mlinder@whitecase.com<br>laura.baccash@whitecase.com<br>blair.warner@whitecase.com<br><br>ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION |