# EXHIBIT A

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>　　　　　　Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Ref. Docket No. \_\_\_\_** |

**ORDER APPROVING SETTLEMENT AGREEMENT WITH RSUI INDEMNITY COMPANY AND CERTAIN UNDERWRITERS AT LLOYD'S, SYNDICATES 2623/623 IN CONNECTION WITH CERTAIN PENDING NON-ABUSE LITIGATION**

Upon the motion (the "Motion")[2] of Boy Scouts of America ("BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), for entry of an order (this "Order"), pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, approving and authorizing the BSA to enter into the settlement agreement by and between BSA and the Insurers that is attached hereto as **Exhibit 1** (the "Settlement Agreement"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and entry of this Order being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and the Debtors having consented to the entry of a final order by this Court under Article III of the United States Constitution; and venue of this proceeding and the Motion in this District being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, Texas 75038.

[2] All capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and all objections to the Motion, if any, having been withdrawn, resolved or overruled; and the relief requested in the Motion being in the best interests of the Debtors' estates, their creditors and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is GRANTED as set forth herein.

2. The Settlement Agreement is APPROVED, and the Parties to the Settlement Agreement are authorized to take such action as is necessary to effectuate the terms of the Settlement Agreement.

3. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry and the Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

4. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

# EXHIBIT 1

**Settlement Agreement**

**SETTLEMENT AGREEMENT AND LIMITED PARTIAL RELEASE**

This Settlement Agreement and Limited Partial Release ("Agreement") is entered into by and between **BOY SCOUTS OF AMERICA (hereinafter "Insured") AND CERTAIN UNDERWRITERS AT LLOYD'S, SYNDICATES 2623/623 ("Beazley") AND RSUI INDEMNITY COMPANY ("RSUI") (hereinafter "Insurers")**, (collectively the "Parties") on this 17th of September, 2021.

**RECITALS**

1. **WHEREAS,** the Insured purchased Policy No. HP675591 from RSUI for the policy period of March 1, 2018 to March 1, 2019 with a $10 million limit of liability (the "RSUI Policy").

2. **WHEREAS**, the Insured also purchased Policy No. W19CD8180301 from Beazley for the policy period of March 1, 2018 to March 1, 2019 with a $15 million limit of liability (the "Beazley Policy") (collectively, the "Policies").

3. **WHEREAS**, the Insured submitted a claim under the Policies for the lawsuit entitled *Girl Scouts of the U.S.A. v. Boy Scouts of Am.*, No. 18-10287 (S.D.N.Y. Nov. 6, 2018) (the "Claim").

4. **WHEREAS**, the Insured retained Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn") to defend it against the Claim.

5. **WHEREAS**, the Parties entered into cost-sharing agreements through which the Insurers agreed to reimburse the defense costs that the Insured incurred in connection with the Claim, including those arising from Quinn's services.

6. **WHEREAS**, two disputes arose regarding the payment of the defense costs that the Insured incurred from Quinn (the "Defense Cost Disputes").

7. **WHEREAS**, the first dispute relates to payments under the following Quinn invoices:

    a. 101-0000096135;
    b. 101-0000094988;
    c. 101-0000093570;
    d. 101-0000092708;
    e. 101-0000090933;
    f. 101-0000090235;
    g. 101-0000088862;
    h. 101-0000087526;
    i. 101-0000085820;
    j. 101-0000085023;
    k. 101-0000083746; and
    l. 101-0000081838 (collectively, the "Invoices").

8. **WHEREAS**, the Insured contends that the Insurers owe an additional $2,741,721.85 reflected on the Invoices. The Insurers contend that no additional amounts are owed as the Insured failed to timely appeal certain reductions applied by the Insurers to the Invoices.

9. **WHEREAS**, the Parties also disagree as to the reimbursement cap applicable to the hourly rates for timekeepers at Quinn. At the time of the Insured's retention of Quinn, the Insurers agreed to the following reimbursement rate caps:

   a. $700 for Partners;
   b. $570 for Associates; and
   c. $240 for Paralegals.

10. **WHEREAS**, because the Insured filed for protection under Chapter 11 of the Bankruptcy Code on February 18, 2020, the Insured approached the Insurers regarding increasing the hourly rate caps. The Insurers contend that the rate caps should remain unchanged.

11. **WHEREAS**, after discussion and negotiation, the Parties believe it is in their mutual best interests to amicably, voluntarily and forever resolve their differences and responsibilities as between them, and no others, regarding the Defense Cost Disputes.

## **TERMS**

**NOW THEREFORE**, in consideration of the mutual promises, covenants, agreements and other undertakings herein, and for other good and valuable consideration, the adequacy and receipt of which consideration is hereby acknowledged, the Parties hereby agree as follows:

### I.      **Purpose of Agreement**

The terms of this Agreement are the product of mutual negotiation and compromise between the Parties. The Parties have entered into this Agreement for the purpose of resolving their differences and responsibilities between them, and no others, in connection with the Defense Cost Disputes.

### II.     **Non-Admission of Wrongdoing**

Neither the investigations, negotiations, undertakings, agreements, nor execution of this Agreement shall constitute or operate as an acknowledgement or admission of any kind by either of the Parties, or a violation of any federal or state law, statute, ordinance, regulation, common law, contract or constitution. Each of the Parties specifically disclaims any liability and wrongdoing of any kind.

### III.    Payment of Outstanding Invoices

The Parties agree that, in exchange for the limited release outlined in Section V, the Insurers will only be responsible for payment of $1,900,000 from the total alleged amount of $2,741,721.85 in outstanding payments pursuant to the Invoices.

### IV.    Increase of Quinn Timekeeper Rates

The Parties also agree that, in exchange for the limited release outlined in Section V, the Insurers will provide coverage for the defense costs incurred from Quinn according to the following hourly rate-structure:

     a. $900 flat/blended rate for all Partners and Of Counsels;
     b. $700 flat/blended rate for all Associates (1st thru 9th year);
     c. $325 flat/blended rate for all Contract Attorneys and Paralegals; and
     d. Other staff timekeepers such as LTAS remain the same as current.

The Parties further agree that this rate-structure shall apply retroactively to all Quinn invoices billed since February 2020. Subsequent to the execution of this agreement, the Parties agree promptly to engage in a reconciliation process to determine the additional amounts due pursuant to the increase hourly rate-structure, with such reconciliation being completed no later than sixty (60) days after the execution of this Agreement. Additional reimbursements/adjustments, if any, shall be made within thirty (30) days of completion of the reconciliation.

Notwithstanding the foregoing, the Parties presently dispute whether the above-referenced structure (including whether the BSA will again share in the payment of the Quinn invoices) or a different rate structure will or ought to apply after the Insured emerges from bankruptcy, and this Agreement is not intended to resolve that particular dispute.

### V.    Limited Partial Release

The Parties, for and in consideration of the payment by Insurers of One Million, Nine Hundred Thousand Dollars ($1,900,000.00), do hereby release, acquit, and forever discharge each other and their respective current and former affiliates, subsidiaries, parent companies and/or corporations, joint ventures, directors, officers, members, partners, shareholders, employees, agents, representatives, adjusters, reinsurers, experts, consultants, and attorneys, all solely in their respective capacities as such, and their respective predecessors-in-interest, successors-in-interest, assigns, heirs, descendants, executors, administrators, and agents, all solely in their respective capacities as such, with respect to the Invoices.

The Parties do hereby covenant and agree never to institute or cause to be instituted any lawsuit or other form of action or proceeding of any kind or nature whatsoever against each other based upon the Invoices, and any and all other actions, causes of action, suits, debts,

dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, variances, trespasses, claims, demands, indebtedness, agreements, promises, obligations, damages, judgments, extents, executions, rights of contribution or subrogation, or liabilities of any nature whatsoever, in law, in equity, in tort or in contract, including rights of subrogation, rights of recovery, rights of reimbursement, or liens, whether known or unknown, suspected, or claimed, that the Parties ever had, have claimed to have, now have, or may hereafter have or claim to have against each other, related in any way to or arising out of the Invoices, or by reason of any matter, cause, thing, act or omission of the Parties' respective principals, servants, officers, direct employees, attorneys, volunteers, or other persons and entities directly employed and arising out of the Invoices.

In agreeing to the release set forth in this Paragraph, the Parties intend for this Agreement to be effective as a full and final accord and satisfaction of any and all matters related to the Invoices. In furtherance of such intention, the Parties acknowledge that they are aware that new or different facts in addition to, or different from, those now known or believed to be true regarding the Invoices may be discovered, but intend this Agreement to fully, finally and forever settle and release the Invoices. In furtherance of this intention, this instrument shall be and remain in effect as a full and complete release of any and all obligations related to the Invoices.

Nothing in this Agreement shall release any obligation that any Party has arising out of this Agreement. Further, for the avoidance of doubt, this does not constitute a full release of the Policies, but only a limited release related to the Invoices.

### VI.     Settlement Payment

The Insurers shall pay the Insured their respective half of One Million, Nine Hundred Thousand Dollars ($1,900,000.00) by the date that is thirty (30) days after the entry of an order by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") authorizing Insured's entry into this Agreement (the "Payment Date"). Specifically, RSUI shall pay the Insured Nine Hundred Fifty Thousand Dollars ($950,000.00) and Beazley shall pay the Insured Nine Hundred Fifty Thousand Dollars ($950,000.00) by the Payment Date (the "Settlement Payments"). For the avoidance of doubt, the respective obligations of RSUI and Beazley under this Agreement are several and not joint.

The Settlement Payments shall be made either (i) by check payable to Boy Scouts of America and delivered to Boy Scouts of America, Attn: Cash Management, 1325 West Walnut Hill Lane, P.O. Box 152079, Irving, TX 75015-2079, or via wire transfer to the Insured Account pursuant to the following instructions:

Bank Name:     JPMorgan Chase Bank
Bank Address:  2200 Ross Avenue Dallas TX

Account Name:  Boy Scouts of America

Account Number:     07000451724
Routing Number:     021000021

**VII.    Costs.**

Each of the Parties agrees to pay its own costs, including but not limited to its own legal fees.

**VIII.    Successors and Assigns.**

This Agreement and the release and covenants contained herein shall be binding upon and shall inure to the benefit of each Party, and each of their respective predecessors, successors and assigns and each of their respective past and present, direct and indirect, subsidiary, parent, and affiliated entities, and to each of their respective past and present employees, agents, attorneys in fact, attorneys at law, representatives, officers, directors, shareholders, partners and joint ventures.

**IX.    Entirety of Agreement.**

The terms and conditions set forth herein constitute the entire agreement between the parties and supersede any communications or previous agreements with respect to the subject matter of this Agreement.  There are no written or oral understandings directly or indirectly related to this Agreement that are not set forth herein.  No change can be made to this Agreement other than in writing and signed by the Parties.

**X.    Choice of Law and Jurisdiction.**

This Agreement shall be construed and enforced according to the laws of the State of Delaware and any dispute under this Agreement must be brought in that State and no other. For the avoidance of doubt, the Parties agree that nothing in this Agreement shall bear on the choice of the state law that applies to interpretation of the RSUI Policy or the Beazley Policy.

**XI.    Advice of Counsel – Voluntarily and Knowingly**

The Parties acknowledge that they have read and understand the terms of this Agreement, that they have had the opportunity to obtain the advice of an attorney of their choosing, and they voluntarily and knowingly entered into this Agreement without reliance upon any statements or conduct of others and without coercion, intimidation or threat of retaliation by any Party or any other person or entity.

**XII.    Headings in this Agreement**

The headings in this Agreement are for convenience only, confirm no rights or obligations in either party and do not alter any terms of this Agreement.

### XIII. <u>Severability</u>

If any term of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, then this Agreement, including all the remaining terms, will remain in full force and effect as if such invalid or unenforceable term had never been included.

### XIV. <u>Mutual Drafting of Agreement.</u>

The Parties agree that the Parties mutually drafted and approved this Agreement, and neither party shall be considered the drafter of this Agreement for purposes of creating any presumption for or against any party.

### XV. <u>Modification</u>.

The terms of this Agreement may not be modified or waived other than pursuant to a formal written modification executed by both the Insured and the Insurers.

### XVI. <u>No Third-Party Beneficiary</u>

This Agreement is made solely and specifically among and for the benefit of the Parties to it, and their respective successors and assigns, subject to the express provisions of the Agreement relating to successors and assigns, and no other person has or will have any rights, interest, or claims under this Agreement as a third-party beneficiary or otherwise.

### XVII. <u>Authority</u>

The Parties represent and warrant that they have obtained all authority necessary to execute this Agreement subject, in the case of Insured, to the approval of the Bankruptcy Court.

**IN WITNESS WHEREOF,** I have unto set my hand and executed this Settlement Agreement and Mutual Release consisting of six (6) pages, exclusive of signature pages, as of the date first written above.

For Boy Scouts of America

_____
Name:  Joseph Zirkman
Date:   10-4-21


For RSUI Indemnity Company

_____
Name:
Date:


For Certain Underwriters at Lloyd's, Syndicates 2623/623

_____
Name:
Date:

7

Name: Joseph Zirkman
Date: 10-4-21

For RSUI Indemnity Company

_____
Name: Scott J. Fahy - Vice President
Date: 10/8/21


For Certain Underwriters at Lloyd's, Syndicates 2623/623

_____
Name: Matthew W. Beato (its counsel)
Date: 10/12/21

8