# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA and<br>DELAWARE BSA, LLC,[1]<br><br>        Debtors.<br><br>PONIL RANCH, L.P.,<br><br>        Plaintiff,<br><br>v.<br><br>BOY SCOUTS OF AMERICA,<br><br>        Defendant. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br><br><br><br><br><br>Adversary No. _____ |

## COMPLAINT

Ponil Ranch, L.P. ("Ponil" or "Plaintiff"), hereby files its Complaint against Boy Scouts of America ("Boy Scouts" or "Defendant," and collectively with Plaintiff, the "Parties"), and respectfully states as follows:

## I.
## NATURE OF THE ACTION

1. Plaintiff seeks a declaratory judgment that it holds a valid prescriptive easement under New Mexico law with respect to an approximately seven-mile road cutting through Defendant's real property: the Philmont Scout Ranch located outside of Cimarron, New Mexico (the "Property"). Alternatively, Ponil seeks a declaratory judgment that it holds a valid easement by necessity through the Property under New Mexico law.

---

[1] The debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311) (together, the "Debtors"). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

4814-2493-6953

## II.
## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

3. Venue of this adversary proceeding is proper under 28 U.S.C. § 1409.

4. This adversary proceeding presents a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). *See also* Rule 7001(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (requiring the commencement of an adversary proceeding to determine the validity, priority, or extent of a lien or other interest in property).

5. Pursuant to Bankruptcy Rule 7008 and Rule 7008-1 of the Local Rules for the United States Bankruptcy Court District of Delaware, Plaintiff consents to the entry of final orders or judgment by the Court.

## III.
## THE PARTIES

6. Ponil Ranch, L.P. is a Texas limited partnership with its principal place of business located at 3322 Shorecrest Drive, Suite 200, Dallas, Texas, 75235. Ponil owns and operates the Ponil Ranch, a 19,600-acre property located in Colfax County, New Mexico, which is used primarily as a game reserve where big game, including elk and mule deer, are hunted for sport, as well as leased to surrounding ranchers to graze cattle.

7. Defendant is a corporation that may be served with process via first class U.S. mail at its principal place of business located at 1325 West Walnut Hill Lane, Irving, Texas 75038, Attn: Steven P. McGowan, Secretary and General Counsel.

8. Defendant owns the Property, a 140,177-acre ranch bordering the Ponil Ranch to the South, which it operates as a scout camp.

9.  A copy of this Complaint is also being served upon counsel to Defendant via the Court's CM-ECF Notification System, as well as via first class U.S. mail, postage prepaid, to (i) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020, Attn: Jessica C. Lauria, and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347, Attn: Derek C. Abbott.

## IV.
## FACTS

### A. History of the Property and Ponil Ranch

*Common Origins - The Maxwell Land Grant and UU Bar Ranch*

10. On January 11, 1841, the Mexican government granted 1,714,765 acres of land in what is now New Mexico to Carlos Beaubien and Guadalupe Miranda.[2] This grant of land is referred to as the Maxwell Land Grant, and it includes roughly three-fifths of what is now known as Colfax County, New Mexico.

11. By 1869, Beaubien's son-in-law, Lucien B. Maxwell, owned the entirety of the Maxwell Land Grant.

12. Between 1922 and 1932, Waite Phillips ("Phillips") acquired over 300,000 acres of Maxwell Land Grant property and named it the UU Bar Ranch.

*Division of the Common Tract of Land into the Property and the Ponil Ranch*

13. In 1941, Phillips donated approximately 127,000 acres of the UU Bar Ranch to Defendant, which became the Property.

14. In or around March 20, 1943, Phillips sold the remaining approximately 130,000 acres of the UU Bar Ranch, including what was known as the "Ponil Tract," to McDaniel & Sons, Inc.

---

[2] New Mexico became a U.S. territory as part of the Gadsen Purchase in 1853 and became a state in 1912.

15. In or around September 25, 1970, McDaniel & Sons, Inc. sold its interest in the UU Bar Ranch, including the Ponil Tract, to Bill Faudree. Shortly thereafter, Faudree transferred the property to the <u>UU</u> Land Company, a Texas general partnership. Charlotte Jane Parks Kimberlin owned a 22.5% interest in the <u>UU</u> Land Company via two trusts, of which she was the sole beneficiary: the Charlotte Jane Parks Trust No. 101 (the "<u>Parks Trust</u>") and the Charlotte Jane Parks Kimberlin Management Trust (the "<u>Management Trust</u>," collectively with the Parks Trust, the "<u>Kimberlin Trusts</u>").

16. In or around June 3, 1994, the <u>UU</u> Land Company deeded the Ponil Tract and another non-contiguous tract of the UU Bar Ranch property to the Kimberlin Trusts pursuant to an agreed final judgment entered on October 24, 1991, in the case styled *Charlotte Parks Kimberlin v. Harriett P. Faudree, et. al.*, Cause No. B-38, 391 in the 238th Judicial District Court for Midland County, Texas.

17. In or around October 31, 2016, the Kimberlin Trusts transferred the Ponil Tract to Ponil Ranch, L.P, which is owned by Charlotte Jane Parks Kimberlin and her husband, John (collectively, the "<u>Kimberlin Family</u>").

18. The Ponil Tract has been known as the Ponil Ranch since at least 1994.[3]

**B.    The Easement**

19. Colfax County, where both the Property and Ponil Ranch are located, is surrounded by mountainous terrain. The topography of the land generally makes it challenging to access the properties located therein. In particular, the Ponil Ranch encompasses three deep canyons that make passage through the property challenging due to rough and rocky terrain, washed-out roads, and flash flooding, as well as heavy snows during the winter. Additionally, the area is prone to

---

[3] Hereinafter, references to the Ponil Tract and the Ponil Ranch are used interchangeably.

devasting wildfires, which, for safety reasons, requires multiple exits points from the property to prevent loss of life.

20.    The Ponil Ranch is surrounded by other private properties and cannot be directly accessed by public road or highway.  As generally shown in the map set forth below, the Ponil Ranch is bound on the Southeast by Chase Ranch, on the East and Northeast by Vermejo Park Ranch, on the Northwest and West by the Valle Vidal Unit of Carson National Forest, and on the South by the Property.  The Village of Cimmaron is located on the Southeast corner of the Property.



4814-2493-6953

21. The Ponil Ranch is a fenced property that can only be accessed through gates that are locked at all times, except during periods of authorized use.

22. Historically, there were three access points into Ponil Ranch – one through each of the property's canyons. The multiple access points were necessary to ensure safe passage in light of the frequent natural hazards that impact the property. Today, there are only two routes by which to access the Ponil Ranch.

23. The first access route to the Ponil Ranch is through an express easement that has been granted to Plaintiff through the Vermejo Park Ranch from the North. However, access via the Vermejo Park easement is limited due to treacherous conditions: the road is frequently impassable due to heavy snows, damage from forest fires and flash flooding, and downed trees blocking the road year-round.

24. The second access route to the Ponil Ranch is by a dirt road that is approximately 7 miles long and cuts through the Property from the South (as shown above outlined in blue) (the "Easement"). The Easement is both the least hazardous and the most commonly used access point into the Ponil Ranch. Approximately one mile from the Southern border of the Ponil Ranch, the Easement splits, providing two points of access into the Ponil Ranch from the Property. Each access point is gated, and Plaintiff and Defendant both maintain interlocking padlocks on the gates.

25. Upon information and belief, the Easement has been continuously used by all prior and current owners of the Ponil Ranch and their invitees to access the Ponil Tract, both prior to and following its severance from the Property in 1941.

26. For no less than the past ten years, Plaintiff, its predecessor the Kimberlin Trusts, and their respective invitees have continuously and openly used the Easement to access the Ponil

6

Ranch without first obtaining Defendant's permission or otherwise providing notice. Such use includes, but is not limited to, the following:

(1) Personal use of the Easement by the Kimberlin Family;

(2) Routine use of the Easement by Plaintiff's and the Kimberlin Trusts' current and former hunting outfitters for ingress and egress from the Ponil Ranch;

(3) Approximately 450 hunters and their guides have accessed the Ponil Ranch via the Easement for guided hunts since at least 2012, by which Plaintiff and the Kimberlin Trusts generated significant revenue;

| Year | Total Hunters Per Year |
|---|---|
| 2012 | 41 |
| 2013 | 47 |
| 2014 | 51 |
| 2015 | 51 |
| 2016 | 50 |
| 2017 | 43 |
| 2018 | 46 |
| 2019 | 44 |
| 2020 | 43 |
| 2021 | 28 |

(4) Plaintiff's contractors use the Easement to access the Ponil Ranch to perform annual repairs and maintenance on the property, including drilling water wells and building and maintaining the roads and structures within Ponil Ranch; and

(5) Annual use of the Easement since 2003 by Plaintiff's rancher tenant to move his cattle herd onto the Ponil Ranch for grazing.

27. On occasion throughout the years, Plaintiff and its predecessor, the Kimberlin Trusts, have also expended time, money, and effort maintaining the Easement to continue accessing the Ponil Ranch without obtaining permission from Defendant or providing prior notice.

(1) For example, in 2007, the Kimberlin Trusts' hunting contractor took equipment onto the Easement to repair flood damage that Defendant failed to repair.

(2) In addition, in 2016, Plaintiff took bulldozers and other heavy equipment onto the Easement to repair it when Defendant failed to do so.

28. At all times, Defendant was aware of Plaintiff's use and repair of the Easement.

4814-2493-6953

## V.
## CAUSES OF ACTION

**A. Count I: Declaratory Judgment as to Validity of the Easement by Prescription**

29. Plaintiff repeats and realleges the allegations in the paragraphs above as if more fully set forth herein.

30. In New Mexico, an easement by prescription is created by an adverse use of land, that is open or notorious, and continued without interruption for the prescriptive period of ten years.

31. The property lines for both the Ponil Ranch and the Property are fenced.

32. Plaintiff, all prior owners of the Ponil Ranch, and their respective invitees have continuously used the Easement to access the Ponil Ranch adversely to, and without permission from, Defendant since 1941 when Phillips donated the Property to Defendant. Specifically, such uses include, but are not limited to, the following:

(1) Personal use of the Easement by the Kimberlin Family;

(2) Routine use of the Easement by Plaintiff's and the Kimberlin Trusts' current and former hunting outfitters for ingress and egress from the Ponil Ranch;

(3) Approximately 450 hunters and their guides have accessed the Ponil Ranch via the Easement for guided hunts, by which Plaintiff and the Kimberlin Trusts generated significant revenue;

(4) Plaintiff's contractors use the Easement to access the Ponil Ranch to perform annual repairs and maintenance on the property, including drilling water wells and building and maintaining the roads and structures within Ponil Ranch; and

(5) Annual use of the Easement since 2003 by Plaintiff's rancher tenant to move his cattle herd onto the Ponil Ranch for grazing.

33. Plaintiff and its immediate predecessor, the Kimberlin Trusts, on occasion, have expended money, time, and effort to repair and maintain the Easement over the past ten years, in

particular when Defendant has failed to maintain portions of the Easement that limit access to the Ponil Ranch.

34. At all relevant times, Defendant has been aware of Plaintiff's use of the Easement.

35. As a result of the above, Plaintiff is entitled to a declaratory judgment that Plaintiff holds a prescriptive easement through the Property.

**B. Count II: Declaratory Judgment as to Validity of Easement by Necessity**

36. Plaintiff repeats and realleges the allegations in the paragraphs set forth above as though fully set forth herein.

37. Under New Mexico law, an easement by necessity requires: (i) unity of title, indicating that the dominant and servient estates were owned as a single unit prior to the separation of such tracts; (ii) that the dominant estate has been severed from the servient tract, thereby curtailing access of the owner of the dominant estate to and from a public roadway; and (iii) that a reasonable necessity existed for such right of way at the time the dominant tract was severed from the servient tract.

38. The Ponil Ranch and the Property were part of the Maxwell Land Grant and were previously owned as a single unit by Waite Phillips.

39. Phillips divided the tracts in 1941 when he donated approximately 127,000 acres of the UU Bar Ranch to Defendant, which became the Property, while reserving the Ponil Tract for himself.

40. The Easement was used to access the Ponil Tract prior to the division of the common tract of land into the Ponil Ranch and the Property. The Easement has continuously been used to access the Ponil Ranch since it was severed from the Property.

41. Since the Ponil Ranch was severed from the Property, it cannot be directly accessed by public road or highway.

42. The topography surrounding and within the Ponil Ranch is treacherous and impacted by frequent natural hazards.

43. At present, there are only two routes by which to access the Ponil Ranch: the Easement and the express easement through Vermejo Park Ranch.

44. Access through the Vermejo Park easement is limited due to dangerous and unreliable conditions; the road is frequently impassable due to heavy snows, damage from forest fires and flash flooding, and downed trees year round.

45. The Easement that cuts through the Property is both the least hazardous and the most commonly used access point into the Ponil Ranch.

46. Accordingly, Plaintiff is entitled to a declaratory judgment that Plaintiff holds an easement by necessity through the Property.

## VI.
## PRAYER

WHEREFORE the Plaintiff respectfully requests that the Court enter judgment in its :

(i)   Declaring that Plaintiff holds an easement by prescription; or, in the alternative,

(ii)  Declaring that Plaintiff holds an easement by necessity; and

(iii) Granting such other and further relief as may be just and proper.

[*Remainder of page intentionally left blank*]

**COZEN O'CONNOR**

*/s/ Thomas M. Horan*
Thomas M. Horan (No. 4641)
1201 North Market Street, Suite 1001
Wilmington, DE 19801
Tel: (302) 295-2045
Fax: (302) 250-4363
Email: thoran@cozen.com

and

**GRAY REED**

By:  */s/ Jason S. Brookner*
   Jason S. Brookner (TX Bar No. 24033684)
   Lydia R. Webb   (TX Bar No. 24083758)
   Sahrish K. Soleja (TX Bar No. 24102522)
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:   (214) 954-4135
Facsimile:   (214) 953-1332
Email:      jbrookner@grayreed.com
            lwebb@grayreed.com
            ssoleja@grayreed.com

*Counsel to Ponil Ranch, L.P.*