# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date: November 10, 2021 at 10:00 a.m. (ET)**<br>**Objection Deadline: November 3, 2021 at 4:00 p.m. (ET)** |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER MODIFYING THE AUTOMATIC STAY ON A LIMITED BASIS SOLELY TO THE EXTENT NECESSARY TO FACILITATE LOCAL COUNCIL SETTLEMENT CONTRIBUTIONS TO THE SETTLEMENT TRUST UNDER THE PLAN

Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this motion (this "Motion"),[2] pursuant to sections 105(a) and 362(d)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), modifying the automatic stay on a limited basis solely to the extent necessary to facilitate Local Councils' contributions of cash or other property to the Settlement Trust in accordance with the Plan. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms that are used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 6443] (as such may be amended or modified from time to time, the "Plan").

**PRELIMINARY STATEMENT**

1. The Debtors are currently soliciting creditor votes to accept or reject the Plan, which provides, in pertinent part, that all Abuse Claims against the Debtors and certain non-debtors—including Local Councils—will be channeled to the Settlement Trust as of the Effective Date. Under the Plan, the Settlement Trust will assume all liability for and have the exclusive responsibility for processing, liquidating and paying Abuse Claims. To receive the benefit of these protections, Local Councils have agreed to contribute a total of $600 million to the Settlement Trust. This total contribution includes at least $300 million of cash to be paid on the Effective Date, certain real properties with combined appraised values of up to $200 million, and a variable-payment note in the principal amount of $100 million. Local Councils' contributions to the Settlement Trust are an integral part of the Plan and significant source of value for holders of compensable Abuse Claims.

2. As addressed in greater detail below, the BSA asserts that it has a contingent interest in all funds raised and property owned by Local Councils based on the terms of the BSA's and many Local Councils' respective bylaws. The Plan provides that Local Councils will contribute to the Settlement Trust funds and property in which the BSA believes it has a contingent interest. The BSA further contends that such interest is property of the estate under section 541 of the Bankruptcy Code. Accordingly, the Debtors are requesting a limited modification of the automatic stay solely to the extent necessary to facilitate Local Councils' contributions of cash or other property to the Settlement Trust in accordance with the Plan.

**JURISDICTION AND VENUE**

3. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding within the meaning of 28

U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and other bases for the relief requested herein are sections 105(a) and 362(d)(1) of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-1.

## BACKGROUND

I. **The Local Council Settlement Contribution under the Plan**

5. On September 30, 2021, the Court entered the *Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation and Voting Procedures, (III) Approving Forms Of Ballots, (IV) Approving Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief* [D.I. 6438] (the "Solicitation Procedures Order").  On the same date, the Debtors filed solicitation versions of the Plan and related Disclosure Statement. *See* D.I. 6438, 6443.  The Debtors began soliciting creditor votes to accept or reject the Plan on or before October 15, 2021, as contemplated by the Solicitation Procedures Order.

6. Under the Plan, each of the 251 Local Councils has signed a letter of intent to contribute a portion of the Local Council Settlement Contribution to the Settlement Trust.  The Local Council Settlement Contribution is comprised of at least $300 million of cash to be paid on the Effective Date, certain real properties with combined appraised values of up to $200 million, and a variable-payment note in the principal amount of $100 million.  *See* Plan, Ex. F.  Each individual Local Council's proposed contribution to the Settlement Trust is listed on Exhibit C to

the Disclosure Statement. Currently, Local Councils are expected to contribute approximately $408 million of cash to the Settlement Trust on the Effective Date. *See* Disclosure Statement, Ex. C. The Plan further provides that the Debtors and the Local Councils will establish an appropriate escrow mechanism to ensure that the cash to be paid to the Settlement Trust by Local Councils on the Effective Date can be paid in a timely manner. *See id.*, Art. IV.D.1. Accordingly, Local Councils will be required to transfer at least $300 million of cash (and will likely contribute more than $400 million of cash) into an escrow account before Effective Date.[3]

## II.    The BSA's Contingent Interest in Local Council Assets

7.    The BSA's bylaws and rules and regulations, as well as the form of bylaws for Local Councils, provide that the BSA has a contingent interest in all property of a Local Council. Specifically, these governing documents state, in pertinent part, as follows:

- "Upon termination of a local council charter or dissolution of a council, all rights of management and ownership of local council property shall become vested in the National Council [of Boy Scouts of America] for use in accordance with the Rules and Regulation of the Corporation. Local council articles of incorporation and bylaws shall include or be revised to incorporate this provision at the time of chartering or the next charter renewal." BSA Bylaws, Art. VI, Clause 2.

- "[I]n the event of the dissolution of the unit or council or revocation or lapse of its charter said funds will, after any claims against said funds are satisfied, be turned over to the Boy Scouts of America for use by the Boy Scouts of America for the benefit of Scouting in such locality and for the specific purpose for which the funds was granted." BSA Rules and Regulations, p. 9.

- "In the event of the dissolution of a unit or the revocation or lapse of its charter, the unit committee shall apply unit funds and property to the payment of unit obligations and shall turn over the surplus, if any, to the corporation." Form of Local Council Bylaws, Art. X.

---

[3] The terms of the escrow have not yet been determined and will be negotiated between the BSA and the Ad Hoc Committee of Local Councils.

8.      The BSA understands that many Local Councils dispute that these provisions have the effect of giving BSA an actionable contingent interest, including based on defenses under applicable state law.  Nonetheless, out of an abundance of caution and without seeking any ruling from the Court regarding the nature of BSA's asserted contingent interest, by this Motion, the BSA is seeking limited relief to ensure that actions taken by Local Councils to fund their contributions under the Plan do not violate the automatic stay in these Chapter 11 Cases.

9.      In addition, the Debtors understand that some, but not all, Local Councils are beneficiaries of self-settled trusts.  The Debtors further understand that if a Local Council needs to requisition funds held in such a trust to make the Local Council's contribution to the Settlement Trust, such Local Council may be required to modify or amend the trust documents or take other similar actions under applicable non-bankruptcy law.  This process may, in certain instances, require the Local Council to commence a judicial proceeding naming as a respondent the BSA, the state attorney general, and any other person or entity with a beneficial interest in the trust funds.

10.     Thirty-six states and the District of Columbia have adopted a version of the Uniform Trust Code ("UTC"), which was first introduced as a codification of trust law approximately twenty years ago.  Pursuant to that body of law, the explicit terms of a particular trust nearly always govern its administration, including dispositive provisions outlining who may receive the benefits and distributions of the trust.  *See*, UTC, Article One, Section 105 (*See e.g.*, Ariz. Rev. Stat. § 14-10105, D.C. Code § 19–1301.05, Section 456.1-105 Mo. Rev. Stat., Va. Code. Ann. § 64.2-703).  Most of the provisions of the UTC are therefore "default" provisions that apply in the absence of a specific governing term in the trust document.  A partial exception to that rule, however, involves certain modifications to the terms of a trust that become necessary because of "circumstances not anticipated by the settlor" or, in the specific context of charitable trusts,

modifications that are necessary because a charitable purpose has become "unlawful, impracticable, impossible to achieve, or wasteful." *See id.*, Article Four, Sections 412 ("equitable deviation")[4] and 413 ("Cy Pres").[5]  In these areas, among others, interested parties may petition a court of competent jurisdiction to amend or modify a trust to address the particular circumstances presented.  Doing so provides finality to the issue and gives a trustee charged with administering trust assets protection from later claims that the trustee violated a fiduciary duty or acted contrary to the proper terms of the trust.  Absent specific authorization in underlying trust documents to fund a bankruptcy settlement, most prudent trustees could not contribute a portion of the trust corpus for which they are responsible without the prior approval of a state court.

## RELIEF REQUESTED

11.     By this Motion, pursuant to sections 105(a) and 362(d)(1) of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-1, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, modifying the automatic stay on a limited basis solely to the extent necessary to facilitate Local Councils' contributions of cash or other property to the Settlement Trust in accordance with the Plan.  This relief includes, but is not limited to, authorizing Local Councils to name the BSA as a respondent in an action commenced by the Local Council to amend or modify a trust agreement (or requesting other similar relief) under applicable non-bankruptcy law, but only to the extent such amendment or modification (or other

---

[4]  *See e.g.*, Ariz. Rev. Stat. § 14-10412, D.C. Code § 19–1304.12, Section 456.1-412 Mo. Rev. Stat., Va. Code. Ann. § 64.2-730; *see also* Restatement (Third) of Trusts § 66 (2003) and Bogert's The Law of Trusts and Trustees §§ 396 and 561.

[5]  *See e.g.*, Ariz. Rev. Stat. § 14-10413, D.C. Code § 19–1304.13, Section 456.1-413 Mo. Rev. Stat., Va. Code. Ann. § 64.2-731; *see also* Restatement (Third) of Trusts § 67 (2003) and Bogert's The Law of Trusts and Trustees § 441.

similar relief) is for the exclusive purpose of making the Local Council's contribution to the Settlement Trust.[6]

## BASIS FOR RELIEF

**I.    Contingent Interests in Property Are Property of the Estate Under Section 541(a)(1).**

12.   Section 541(a) of the Bankruptcy Code defines "property of the estate" broadly to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Courts have consistently held that section 541(a)(1) applies to contingent interests. *See e.g.*, *Segal v. Rochelle*, 382 U.S. 375, 379 (1966) ("[T]he term 'property' has construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed."); *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 211 (3d Cir. 2006) ("Property of the estate 'includes all interests, such as . . . contingent interests and future interests, whether or not transferable by the debtor.'" (internal quotations omitted)); *Booth v. Vaughan* (*In re Booth*), 260 B.R. 281, 285 (6th Cir. BAP 2001) ("[C]ourts have, across a wide variety of circumstances, almost uniformly adhered to the view that contingent interests are property of the estate under § 541(a)(1)").

13.   Absent relief from the stay, any attempt to obtain possession of property of the estate or to exercise control over property of the estate would constitute a violation of section 362 of the Bankruptcy Code. *See e.g.*, *In re Atl. Bus. & Cmty. Corp.*, 901 F.2d 325 (3d Cir. 1990) (holding that "a possessory interest in real property is within the ambit of the estate in bankruptcy under Section 541, and thus the protection of the automatic stay of Section 362"); *Toy Quest Ltd. v. ASI, Inc.* (*In re Manley Toys Ltd.*), No. 18-2923, 2019 U.S. Dist. LEXIS 119700 (D.N.J. 2019)

---

[6] For the avoidance of doubt, this Motion does not request any finding or determination regarding: (a) any Local Council's proposed contribution to the Settlement Trust; or (b) the nature of the BSA's asserted interest in Local Council funds and property or the means by which Local Councils receive, hold, invest or disburse funds or property.

(holding that debtor's contingent interest in funds was property of the estate and a creditor's attempt to obtain possession of the funds was a violation of the stay order).

**II.     Cause Exists to Modify the Automatic Stay, to the Extent Applicable and Necessary.**

14.     Section 362(d)(1) of the Bankruptcy Code allows the Court to modify the automatic stay "for cause."  11 U.S.C. § 362(d)(1).  While "cause" is not defined in the Bankruptcy Code, courts determine "what constitutes cause based on the totality of the circumstances of each particular case." *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997); *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) ("Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay.").

15.     When analyzing whether "cause" exists under section 362(d), courts generally consider whether any great prejudice to either the bankruptcy estate or the debtor will result from lifting the stay and whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship of the debtor, and whether the non-debtor party has a likelihood of prevailing on the merits. *See In re Rexene Products Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992); *accord In re Abeinsa Holding, Inc.*, No. 16-10790 (KJC), 2016 WL 5867039, at *2 (Bankr. D. Del. Oct. 6, 2016).  The legislative history of section 362(d) makes clear that "cause" includes "a desire to permit an action to proceed in another tribunal."  H.R. Rep. No. 595, 95th Cong., 1st Sess. 343 (1977).

16.     In addition, section 105(a) provides, in relevant part, that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

17.     Here, ample cause exists for the Court to grant the relief requested herein.  First, neither the Debtors nor their estates will suffer any prejudice resulting from the proposed limited


modification of the stay. On the contrary, the Debtors and their estates could face great prejudice if, as a result of the automatic stay, Local Councils were unable to make the Local Council Settlement Contribution pursuant to the Plan.

18. Second, entry of the Proposed Order will promote judicial economy as it would enable Local Councils to take, with confidence, all steps necessary to make (or cause to be made) the Local Council Settlement Contribution to the Settlement Trust pursuant to the Plan. As noted above, these actions may include, if applicable, initiating actions in state courts, which are best equipped to adjudicate the relevant issues under applicable state law. *See* H.R. Rep. No., 595, 95th Cong., 21st Sess., 341) (1977) ("It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relief the bankruptcy court from any duties that may be handled elsewhere").

19. Absent the limited stay relief requested herein, Local Councils could face administrative and legal impediments to making the Local Council Settlement Contribution. By the relief requested herein, any potential impediment imposed by the automatic stay will be efficiently and effectively removed solely to the extent necessary to facilitate Local Councils' contributions to the Settlement Trust under the Plan.

20. Based on the foregoing, cause exists to modify the automatic stay on a limited basis as set forth herein and in the Proposed Order.

**NOTICE**

21. Notice of this Motion will be provided to (i) the U.S. Trustee; (ii) counsel to the Tort Claimants' Committee; (iii) counsel to the Creditors' Committee; (iv) counsel to the Future Claimants' Representative; (v) counsel to the Ad Hoc Committee of Local Councils; (vi) counsel to JPMorgan Chase Bank, National Association; (vii) the Local Councils; and (viii) any party that

has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

### WAIVER OF BANKRUPTCY RULE 4001(a)(3)

22.  Bankruptcy Rule 4001(a)(3) provides that "[a]n order granting a motion for relief from the automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3). The relief requested herein is essential to ensure that Local Councils may take any actions necessary to make their contributions to the Settlement Trust on a timely basis under the Plan. Local Councils may need to take such actions well in advance of the Effective Date. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay referenced in Bankruptcy Rule 4001(a)(3).

### CONCLUSION

WHEREFORE, the Debtors request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and such other relief as is just and proper.

*[Remainder of Page Intentionally Left Blank]*

| | |
|---|---|
| Dated: October 20, 2021<br>Wilmington, Delaware | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br><br>*/s/ Paige N. Topper*<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>Email: dabbott@morrisnichols.com<br>          aremming@ morrisnichols.com<br>          ptopper@ morrisnichols.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Jessica C. Lauria (admitted *pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Email: jessica.lauria@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Michael C. Andolina (admitted *pro hac vice*)<br>Matthew E. Linder (admitted *pro hac vice*)<br>Laura E. Baccash (admitted *pro hac vice*)<br>Blair M. Warner (admitted *pro hac vice*)<br>111 South Wacker Drive<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>Email: mandolina@whitecase.com<br>          mlinder@whitecase.com<br>          laura.baccash@whitecase.com<br>          blair.warner@whitecase.com<br><br>ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION |