

O'Melveny & Myers LLP  
Times Square Tower  
7 Times Square  
New York, NY 10036-6537

T: +1 212 326 2000  
F: +1 212 326 2061  
omm.com

October 27, 2021

**Gary Svirsky**  
D: +1 212-326-4305  
gsvirsky@omm.com

Chief Judge Laurie Selber Silverstein  
United States Bankruptcy Court, District of Delaware  
824 North Market Street, 6th Floor  
Wilmington, DE 19801

Re:    *Boy Scouts of America*, 20-10343 (LSS) (D. Del.)—Request to Compel Verus, LLC

Dear Judge Silverstein:

Century respectfully requests that this Court compel Verus, LLC ("Verus") to comply with its Rule 2004 subpoena issued under this Court's order on September 8, 2021.[1]

## PRELIMINARY STATEMENT

Century's Rule 2004 Motion was based on unrebutted evidence showing that Verus—a for profit claims aggregator—submitted thousands of claims in this bankruptcy, more than half of which first appeared two weeks before the bar date.[2] Many have inconsistencies concerning the claimant's age or are missing at least one critical field. Nine claimant lawyers have admitted that their names were used for filing POCs through Verus, including Adam Krause, who supposedly signed some 2,500 claims—including 890 in a single day.[3] A forensic examination revealed that Mr. Krause did not actually sign the forms—Verus simply pasted a PDF image of his signature on hundreds of POCs.[4]

POCs were submitted by this method despite the claim form requiring the signors to affirm "under penalty of perjury" that they have "examined the information in this Sexual Abuse Survivor Proof of Claim and have a reasonable belief that the information is true and correct,"[5] which is consistent with Rule 9011(b)'s requirement that the claimant, or his or her lawyer, must verify under oath each POC before it is filed.[6] Moreover Verus embarked on this course despite this Court's caution that an attorney who signs a claim "might be[come] . . . a fact witness" and "may be subject to a deposition."[7] The Court added that it is "ill-advised" for attorneys to sign POCs and explained that it would be "concern[ed]" if "a thousand claims [are] signed by a particular lawyer."[8] Yet that is precisely what happened on a large scale—with Verus's submitting the forms.

---

[1]    Order Granting in Part Insurers' Motion for an Order Authorizing Certain Rule 2004 Discovery [D.I. 6184].  
[2]    January 20, 2021 Declaration of Paul Hinton ("Hinton Decl."), tbl. 4, D.I. 1975-3.  
[3]    Hinton Decl. tbl. 1; January 22, 2021 Declaration of Erich Speckin ("Jan. 22, 2021 Speckin Decl.") ¶ 18, D.I. 1975-4.  The names of the claimant lawyers are listed on Verus's October 1, 2021 objection letter, attached as Exhibit 1 to the Oct. 27, 2021 Declaration of Stamatios Stamoulis.  
[4]    Speckin Decl. ¶ 18.  
[5]    D.I. 695-7 at 12.  
[6]    Fed. R. Bankr. P. 9011(b).  
[7]    Oct. 14, 2020 Hr'g at 183:19–22; 170:2–12.  
[8]    Oct. 14, 2020 Hr'g Tr. at 190:12–17; 183:19–22; 170:2–12; D.I. 1520.

Now, the plan proponents seek to have law firms use master ballots to vote and premise the allowance and valuation of claims based on POCs that claims aggregator generated and submitted—not a law firm. But Verus's role casts doubt on many POCs, not only about whether they should be deemed presumptively valid but whether they provide a basis to vote on the plan. Indeed, in permitting aggregator discovery, this Court observed that "the evidence that was submitted raises concerns about how some of these claims were generated."[9] Speaking of aggregator discovery, the Court added "that the discovery could be relevant to voting and I think we need to get that underway, regardless of the plan that's in front of me."[10]

Verus, which concedes it holds no privilege as a third-party vendor, states that the law firms that have associated themselves with the POCs assert privilege. But if a lawyer who elected to sign a POC becomes a fact witness subject to deposition, an aggregator that generates and submits POCs (by affixing the signatures of others) falls even further outside the scope of any privilege. And Verus offers no retention agreement or declaration of counsel establishing the contours of its role.

In any event, no privilege could apply because (i) Verus provided administrative services at most, and (ii) Century seeks purely factual information. Moreover, any privilege would belong to the unnamed underlying claimants—not the law firms, and not Verus. No claimant has offered a declaration to support Verus's objection. Further, the work product doctrine does not apply because a third-party aggregator's work is not an attorney's mental impressions and thus not protected where, as here, the lawyer's effort to mass-affix names to POCs waives privilege. Nor would the work product doctrine apply to Century's RFPs, which seek the original POC documents submitted and otherwise seek purely factual information. And to the extent a privilege applies, disclosure to Verus waived it.

## BACKGROUND

On September 8, 2021, the Bankruptcy Court granted Century's Rule 2004 Motion to obtain aggregator discovery.[11] On September 10, 2021, Century served a subpoena on Verus, seeking the nine discovery requests Century proposed with its Rule 2004 Motion along with two additional Verus-specific requests.

In its January 22, 2021 motion for Rule 2004 discovery, Century showed that claims aggregators facilitated a nationwide campaign to generate facially questionable claims for the BSA bankruptcy.[12] Century proffered uncontested evidence that Verus generated thousands of POCs, many submitted just before the bar date.[13] More than a quarter of Verus's POCs had inconsistencies in the claimant's age at the time of alleged abuse (*i.e.*, either (i) the alleged abuse occurred before a claimant was born; (ii) the alleged abuse began after the claimant was 22; or (iii) the age range of the scouting designation was inconsistent with the claimant's age at the time of the alleged abuse), alleged abuse in a state where the claimant never lived, were submitted late, or were duplicates.[14] More than two out of three POCs from Verus were missing at least one critical field.[15]

---

[9] Aug. 30, 2021 Hr'g Tr. at 46:11–21.
[10] *Id*.
[11] Order Granting in Part Insurers' Motion for an Order Authorizing Certain Rule 2004 Discovery [D.I. 6184].
[12] Century motions for Bankruptcy Rule 2004 discovery are D.I. 1974, 1975.
[13] Hinton Decl. tbl. 4.
[14] Hinton Decl. tbl. 6.
[15] Hinton Decl. tbl. 5.

On October 1, 2021, Verus lodged blanket objections and declined to produce anything. It then delayed producing a privilege log until nearly three weeks later. That log contains block, categorical entries that are missing any of the detail required to assess Verus's privilege claims.

## ARGUMENT

**I.  CENTURY'S SUBPOENA SEEKS RELEVANT INFORMATION**

### A. Century seeks information that this Court has indicated is relevant.

The Subpoena seeks information to develop various Plan objections.  ***First***, the claims explosion that overwhelmed BSA post-petition raises questions about manipulation of the voting process.  The Third Circuit teaches that under Section 1129(a)(10), the Court has a "monitoring function" that requires confirming that at least one class of impaired claims accepts the plan.[16]  In *Combustion Engineering*, the court was concerned that "stub" claimants, who were not impaired (or "only slightly impaired"), would get to vote on the plan.  That is analogous to ginned up claimants voting on a plan here, who hold similarly invalid or questionable claims.  Such manipulation of the voting process is precisely what concerned the Third Circuit.[17]  Here, investigating illegitimate or non-existent claims—controlled by an ad hoc committee through master ballots—is necessary to ensure the integrity of the voting process, and the Plan's compliance with Sections 1129(a)(10) and 1129(a)(3).  This inquiry of a potential abuse of process is in line with this Court's power under Section 105 to take "any action . . . to prevent an abuse of process."

***Second***, the $3,500 expedited distribution to any claimant, without any "additional information to the Settlement Trust" raises good faith objections.[18]  On its face, vote buying reflects a lack of good faith, as does paying invalid (or non-existent) claims.  This is a pressing concern for insurers because the avalanche of post-petition claims increases the "quantum of liability that the insurers would be called to absorb" while impairing insurers' contractual rights.[19]  Among the ways that the Plan impairs insurers' rights is by purportedly empowering the Trustee to abrogate coverage defenses, including the statute of limitations, while shielding abuse claims from any form of judicial scrutiny before allowance and payment.[20]  Investigating how many claims have been improperly submitted goes to this plan objection.  Moreover, discovering later that POCs were improperly generated and submitted will undermine the vote and lead to an eleventh-hour disruption of any confirmation.[21]

The "concerns" that this Court voiced in permitting aggregator discovery apply especially to Verus, which was involved in submitting thousands of POCs just before the bar date, many of

---

[16]  *See In re Combustion Engineering*, 391 F.3d 190, 244–47 (3d Cir. 2004).
[17]  *Id*.
[18]  Fifth Amended Plan, Art. III.B.10 [D.I. 6443]; Disclosure Statement, Art. VII, Sec. B.5.a [D.I. 6445].
[19]  *See In re Global Indus. Techs., Inc.*, 645 F.3d 201, 212 (3d Cir. 2011); *see also In re SPM Mfg. Corp.*, 984 F.2d 1305, 1311 (1st Cir. 1993) (bankruptcy courts lack authority to enter orders that "expand the contractual obligations of parties"); *In re Crippin*, 877 F.2d 594, 598 (7th Cir. 1989) ("[B]ankruptcy courts do not have the power to rewrite contracts to allow debtors to continue to perform on more favorable terms."); *Cf. In re Rapid-Am. Corp.*, No. 13-10687 (SMB), 2018 WL 882398, at *4 (Bankr. S.D.N.Y. Feb. 12, 2018) (document requests in subpoenas of claims aggregators found relevant to defendants' ultimate liability).
[20]  *See* Trust Distribution Procedures, Art. VIII.E [D.I. 6443-1].
[21]  *See* 11 U.S.C. § 1126(a); *see also* Bevan Op. at 27 ("I cannot—and will not—ignore how the Master Ballot was generated.");  *Id.* at 26, n.93 ("In this case, Debtors did not request a bar date for holders of Direct Talc Personal Injury Claims, thus the Master Ballots and any Rule 2019 statements are the only opportunity for parties in interest to review the basis for any Direct Talc Personal Injury Claims."); *see also* Scheduling Order ¶ 7 [D.I. 6528] (exempting voting issues from discovery deadlines).

which are facially defective. Century's subpoena could expose efforts to submit POCs that this Court should not even consider. A plan of reorganization that compensates real victims is impossible without this threshold inquiry into claims-filing abuses.

To be sure, Verus does not object on relevance in its response to the Subpoena. Just the opposite, it concedes relevance in its privilege log. There is no need to log irrelevant and unresponsive documents.

### B.    It is appropriate to conduct discovery about diligence behind attorney-signed POCs.

#### 1.    *Attorneys who signed POCs had a legal responsibility to vet them.*

When the Coalition asked this Court to allow attorneys—rather than claimants—to sign the POCs, its counsel stated that "[a]ll claims . . . will be thoroughly vetted."[22] But the sheer number of attorneys participating in mass signings casts doubt on whether these lawyers kept their promise, let alone (i) complied with the oath they affirmed by signing the POCs or (ii) their obligations under Rule 9011(b), which states that by signing "a petition, pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the allegations and other factual contentions have evidentiary support."[23]

An attorney undertakes a legal responsibility by affirming the oath above the signature line in a POC. Disregarding that oath exposes the attorney signing the POC to sanctions, disciplinary action, and even criminal penalties.[24] In addition, as the court stated in *In re Obasi,* "Bankruptcy Rule 9011 has specifically been held to apply to proofs of claim," which mandates a pre-filing "inquiry."[25] That court further observed that "[c]ompliance with Bankruptcy Rule 9011 is **particularly important for proofs of claim** because a properly filed proof of claim constitutes *prima facie* evidence of the validity and amount of the claim," and "[t]he Court must therefore be able to rely on the integrity of the proofs of claim before it."[26]

---

[22]   D.I. 1496 ¶ 41.
[23]   Fed. R. Bankr. P. 9011(b); *see also* Model R. Prof. Conduct 3.3, cmt. 3 (ABA 2011) ("[A]n assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry.")
[24]   *See e.g.*, *In re Disciplinary Proceeding Against McGrath*, 178 Wash. 2d 280, 294 (2013) (disbarring attorney who filed false proofs of claim in his wife's bankruptcy to make her assets seem more encumbered than they really were so as "to mislead and discourage . . . creditors from making claims against the secured property."); *see also* 18 U.S.C. §§ 152(4), 157; *United States v. Connery*, 867 F.2d 929, 932 (6th Cir. 1989) (attorney who "prepared" a false proof of claim as part of a scheme by which the debtor had an accomplice file a false proof of claim was convicted of aiding and abetting a violation of 18 U.S.C. § 152(4), and was later disbarred); *In re Thomas*, 337 B.R. 879, 886 (Bankr. S.D. Tex. 2006) (concluding that "the proof of claim prepared, signed, and filed by Counsel on behalf of the IRS [was an] intentional false statement[]" because "both the Debtors and Counsel knew that the documents falsely represented the amount that the IRS asserted to be its claim," and referring conduct to the U.S. Attorney).
[25]   No. 10-10494 (SHL), 2011 WL 6336153, at *7 (Bankr. S.D.N.Y. Dec. 19, 2011); *see also Hannon v. Countrywide Home Loans, Inc. (In re Hannon)*, 421 B.R. 728, 731 (Bankr. M.D. Pa. 2009); *In re Thomas*, 337 B.R. 879, 895 (Bankr. S.D. Tex. 2006), *aff'd*, 223 Fed. Appx. 310 (5th Cir.2007); *Cash-N-Advance v. Dansereau*, 64 Fed. Appx. 417 (5th Cir. 2003); *Knox v. Sunstar Acceptance Corp. (In re Knox)*, 237 B.R. 687, 699 (Bankr. N.D. Ill. 1999).
[26]   *Id.* Emphasis added (internal quotations and citations omitted).

Case 20-10343-LSS    Doc 6813    Filed 10/27/21    Page 5 of 10

O'Melveny

Nor is this duty to investigate delegable—not even to the signing attorney's associate, and certainly not to a claim aggregation shop churning out claims by the thousand. In *Obasi*, the signing attorney relied on a litigation support firm to "prepare[] proofs of claim, which were then submitted to the firm for review by an attorney at or near the time of filing."[27] The associate, working "under the general supervision of" the signing attorney, would review the proofs of claim using an internal checklist and file them using the singing attorney's electronic signature.[28] The court "found that the conduct [at issue] runs afoul of Bankruptcy Rule 9011"[29] because "[t]he person signing, filing, submitting, or advocating a document has a **nondelegable** responsibility to the court" and "is **personally** responsible for reviewing the document."[30] As the Third Circuit has explained, this duty "requires more than a rubber-stamping of the results of an automated process by a person who happens to be a lawyer." [31]

### 2. This Court has held that it would allow discovery into diligence behind attorney-signed POCs.

In addition to the obligation that Bankruptcy Rule 9011(b), applicable case law, and the oath that signing a POC imposes, this Court held that an attorney who signs a claim "might be[come] . . . a fact witness" and "may be subject to a deposition."[32] Moreover, the Court cautioned that it is "ill-advised" for attorneys to sign POCs and explained that it would be "concern[ed]" if "a thousand claims [are] signed by a particular lawyer."[33] This Court's holding is consistent with *In re Rodriguez*,[34] where the court held that "signing a proof of claim is an assertion of personal knowledge of the facts alleged in the proof of claim," which subjects the attorney to "bec[oming] a fact witness as to the allegations contained in the proof of claim."[35] Just as a fact witness cannot invoke the attorney-client privilege to block cross-examination, an attorney signing a proof of claim "results in waiver of otherwise applicable privileges."[36] Other courts in similar contexts are in accord. *See Swanson v. Trasino Park-Hudsons, LLC* (*In re Vission , Inc.*), No. 07-21957, 2008 WL 2230741, at *4 n.3 (Bankr. E.D. Wis. 2008) ("By signing the affidavit, counsel runs the risk of becoming a fact witness, and any future hope of asserting privilege may disappear."); *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 473-74, 2006 (6th Cir. 2006) ("[C]ounsel must have realized that it would be 'pushing the envelope' with respect to the attorney-client privilege to introduce an affidavit from an attorney . . . [C]ounsel for petitioners elected to interject [the attorney] into these proceedings and thereby waived the attorney-client privilege. In so doing, the work product privilege was waived as well."); *In re Gawker Media LLC*, No. 16-11700 (SMB), 2017 WL 2804870, at *2, 4 (Bankr. S.D.N.Y. June 28, 2017) (Rule 2004 attorney discovery should not be denied "merely because it may touch on privileged matters," especially where attorney would be examined about factual matters); *Cf.*

---

[27]  2011 WL 6336153 at *2.

[28]  *Id*.

[29]  The only reason the court did not impose sanctions was that "no evidence has been presented that the UST has complied with the safe harbor provisions by serving a copy of its motion on [the attorney] and his firm before filing it with this Court."  *Id.* at *9.

[30]  *Obasi* 2011 WL 6336153, at *3, 4, 8; 655 F.3d 274, 284 (3d Cir. 2011) (internal quotations and citations omitted); *see also In re Taylor*, 407 B.R. 618, 647 (Bankr. E.D. Pa. 2009) ("[I]n signing and presenting a document without any knowledge of its factual basis . . . [lawyer] failed to discharge her duty."), *rev'd*, No. 09-CV-2479-JF, 2010 WL 624909 (E.D. Pa. Feb. 18, 2010), *aff'd in part, vacated in part, rev'd in part*, 655 F.3d 274 (3d Cir. 2011).

[31]  655 F.3d 274, 288 (3d Cir. 2011).

[32]  Oct. 14, 2020 Hr'g at 183:19–22; 170:2–12.

[33]  Oct. 14, 2020 Hr'g Tr. at 190:12–17; 183:19–22; 170:2–12; D.I. 1520.

[34]  No. 10-70606, 2013 WL 2450925 (Bankr. S.D. Tex. June 5, 2013).

[35]  *Id.* at *3–4.

[36]  *Id.* at *4.

*Friction Div. Prod., Inc. v. E.I. Du Pont De Nemours & Co.*, 117 F.R.D. 535, 538 (D. Del. 1987) (factual representations "create[] the opening for [opposing party] to investigate the foundations for those representations").

If the signing attorneys waived privilege by placing their diligence process at issue, then that extends to the third-party vendor those lawyers used to affix signatures to the questionable POCs.  It cannot be that attorneys like Mr. Krause can delegate their non-delegable duties under Rule 9011(b) while not also transferring the waiver about inquiring into the underlying diligence.  The specific requests directed to Verus go directly to this issue.

II. THE INFORMATION CENTURY SEEKS IS NOT PRIVILEGED.

A. Verus has not carried its burden of showing privilege.

As the party asserting privilege, Verus has the burden to "establish the claimed privilege with reasonable certainty," which requires that it "adduce competent evidence in support of each of the essential elements necessary to support a claim of privilege."[37]  The proponent "must offer more than just conclusory statements, generalized assertions, and unsworn averments of its counsel."[38]  Indeed, "blanket or categorical claims of privilege will not suffice—the law requires a showing that the privilege applies to each communication for which it is asserted."[39] "Where the proponent fails to adduce sufficient facts" for the "court to conclude with reasonable certainty that the privilege applies, its burden has not been met."[40]

Verus does not explain how any of the requested discovery is privileged.  Instead, it makes the blanket assertion that "the materials sought are protected by the attorney-client privilege and/or work product doctrine."[41]  This "conclusory statement" is insufficient;[42] the Federal Rules require a party asserting privilege claim to "describe the nature of the withheld documents, communications, or tangible things in a manner that" "enable[s] the parties to assess the claim."[43]  Verus's generalized assertion falls well short.

Moreover, communications with a third-party are not privileged.[44]  Because "the attorney-client privilege obstructs the truth-finding process, it is construed narrowly, and protects only those disclosures—necessary to obtain informed legal advice—which might not have been

---

[37] *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 153 (D.D.C. 2012); *accord In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012) (quoting *Grand Jury Empaneled Feb. 14, 1978*, 603 F.2d 469, 474 (3d Cir. 1979) ("the burden of proving that the attorney-client privilege applies is placed upon the party asserting the privilege")); *U.S. v. Furst*, 886 F.2d 558, 576 (3d Cir. 1989) (same); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 352 F. Supp. 3d 207, 213–14 (E.D.N.Y. 2019) (same).
[38] *Judicial Watch, Inc.*, 841 F. Supp. 2d at 153.
[39] *In re Domestic Airline Travel Antitrust Litig.*, 2020 WL 3496748, at *3 (D.D.C. Feb. 25, 2020) (quoting *In re Veiga*, 746 F. Supp. 2d 27, 33 (D.D.C. 2010)).
[40] *Judicial Watch, Inc.*, 841 F. Supp. 2d at 153.
[41] Stamoulis Decl., Ex. 1, (Verus Objection Letter).
[42] *Judicial Watch, Inc.*, 841 F. Supp. 2d at 153.
[43] Fed. R. Civ. P. 45(e)(2)(A); Fed. R. Bankr. Proc. 9016; *see also Wal-Mart Stores, Inc. v. City of Pontiac Gen. Emps.' Ret. Sys.*, 314 F.R.D. 138, 141 (D Del. 2016) (Party "failed to assert a valid claim of privilege with respect to the documents requested" by simply claiming that documents are privileged).
[44] *See In re Restasis*, 352 F. Supp. 3d at 213–14 (disclosures to third-party consultants not privileged if they were unnecessary to improve counsel's comprehension or ability to provide legal advice); *United States. v. Murray*, 468 Fed. Appx. 104, 108 (3d Cir. 2012) ("it is well-settled that when a client voluntarily discloses privileged communications to a third party, the privilege is waived as to those communications."); *see also Furst*, 886 F.2d at 576 (defendant failed to meet burden of "proving that [privilege] applie[d]," because the "presence of a third person," who "was not an eavesdropper and was not acting as an attorney," "undermine[d] any expectation" that the communications were confidential).

made absent the privilege."[45]  Communications from Verus—a third party that provides only administrative services without any special analysis (such as from an accountant)—are not privileged.  Nor is what a lawyer says to such a party shielded.[46]

For example, in *HPD Labs., Inc. v. Clorox Co.*, 202 F.R.D. 410, 416 (D.N.J. 2001), the court held that the paralegal's communications were not protected because of the paralegals independence from any involved attorneys.[47]  The court found compelling several indicia of independence, including (i) the paralegal "not consult[ing] with any lawyers before answering questions," (ii) no evidence that the paralegal was "merely conveying the advice that she received from" the lawyers, and (iii) no claim that the paralegal acted at the in-house counsel's direction, responded to questions in accordance with express instructions from lawyers, or ever reported her activities to her attorney supervisor.[48]  Similarly here, if Verus independently engaged in communications with claimants outside of the direction or supervision of an attorney, no privilege attaches.

### B.  Century seeks factual information, not analysis.

The RFPs do not seek information that could possibly be privileged.  Indeed, Century included RFPs 1 to 9 in its Rule 2004 Motion because they are essential to identifying how the POCs were signed and by whom, and what basis existed to support any attorney affirmation (if signed by attorneys).[49]

- *RFPs 1, 2,* and *11* seek the POC documents (including associated signature pages and metadata) and intake logs—***not*** communications—which will confirm who generated and submitted them and whether it was the person who purported to sign the POC.  Such information is manifestly not protected, because "[t]he privilege attaches to the communication itself, not to the facts communicated."[50]

- *RFPs 3* and *8* seek names and email addresses for accounts that were used to submit claim forms to Omni and the names of employees or members of other organizations who worked on this matter, which too is plainly factual information.  Indeed, "[f]acts gathered by counsel in the course of investigating a claim or preparing for trial"—such as names and email addresses—"are not privileged."[51]  This information will aid in a continuing forensic analysis of who was working on or submitting POCs and at what rate they were being submitted, which informs the level of diligence, if any, done in connection with the POCs.

- *RFP 4* seeks the agreements that set out Verus's role with respect to BSA.  The agreements show the relationship between Verus and the law firms, including when and how those relationships formed and whether they involved the sale of

---

[45]  *Westinghouse Elec. v. Rep. of Phil.*, 951 F.2d 1414, 1423–24 (3d Cir. 1991) (internal citations omitted).
[46]  *Emmanouil v. Roggio*, 499 Fed. App'x 195, 199 (3d Cir. 2012) ("Excluded from the privilege's protection is any advice that is not legal in nature, such as … communications made in the presence of a third party.").
[47]  202 F.R.D. at 416.
[48]  *Id.*; *see also States v. Adlman*, 68 F.3d 1495, 1499 (2d Cir.1995) (recognizing that "the privilege ... can extend to shield communications to others when the purpose of the communication is to assist *the attorney* in rendering advice to the client"); *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 147 (2d Cir. 1987) (rejecting paralegal's assertion of attorney-client privilege because she did not gather information to *assist an attorney*).
[49]  Order Granting in Part Insurers' Motion for an Order Authorizing Certain Rule 2004 Discovery [D.I. 6184].
[50]  *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 632 (M.D. Pa. 1997).
[51]  *Id*.

- ***RFP 5*** seeks documents about the processes and procedures followed in providing verifying the claims under Rule 9011(b), such as the protocols used for executing signatures for the POCs.[52]  This RFP, too, seeks factual information about the process employed by law firms in submitting POCs that they attested to having "examined."

- ***RFP 6*** seeks documents concerning communications about obtaining attorney signatures for submitted POCs.  This RFP thus seeks information about processes, not any privileged legal analysis.  These documents go directly to the nature of the attorneys' involvement in signing the POCs and whether those attorneys even gave consent to affix their signatures *en masse*, despite the requirement that the attorney holds "a reasonable belief that the information is true and correct" for each submitted POC.

- ***RFP 10*** specifically seeks documents concerning the signature of Attorney Adam Krause of Krause & Kinsman, whose signature has been been scanned and affixed to thousands of POCs.[53]  This information is relevant to the level of diligence, if any, he conducted in purportedly submitting these POCs under oath.

By their plain terms, all of these RFPs seek purely factual information about matters that have nothing to do with legal advice—matters to which no privilege could apply.

### C. Verus's privilege log is deficient.

Verus cannot just assert privilege on a blanket basis and then not produce any documents.  If Verus claims privilege, then it must produce a privilege log containing sufficient information for Century and the Court to assess whether the privilege claims are valid.[54]  But Verus's privilege log—if it can be called that—is grossly deficient.  It block-lists thousands of documents, and provides no meaningful description of the privilege being asserted for each documents, or even who is asserting the privilege.[55]

For example, Verus block-lists more than 5,000 documents it describes as "Verus database containing claim information for each claimant," and claims these are "Documents and communications providing, requesting, or reflecting legal advice and/or confidential communications regarding legal issues related to the drafting and/or submission of Proof of Claim forms, logs of contacts with claimants, and communications between Verus and [law firm]."[56]  This conclusory assertion—which Verus lists repeatedly, covering in excess of 6,000 documents—does not "describe the nature of the withheld documents in a manner that . . . will enable the parties to assess the claim."[57]  It does not, for instance, describe the nature of the

---

[52] *See* Subpoena at 9-10, D.I. 6211-14.
[53] Speckin Decl. ¶ 18
[54] Fed. R. Civ. P. 45(e)(2)(A); *see also Mazer v. Frederick Mut. Ins. Co.*, 2020 WL 4368785, at *2 (M.D. Pa. July 30, 2020) ("[A] person withholding subpoenaed information under a claim that it is privileged or subject to protection must make the claim and describe the nature of the withheld documents in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.").
[55] *See* Stamoulis Decl., Ex. 2, (Verus's Privilege Log).
[56] *Id.* at 1.
[57] *Mazer*, 2020 WL 4368785, at *2.

documents, how the documents were generated and by whom, why the entirety of the documents are privileged, or how the documents relate to obtaining legal advice.[58] Instead, it leaves the parties and the Court simply to take Verus's word for it—but the rules require more.[59]

### III. IF ANY PRIVILEGE APPLIES, THEN THE DISCLOSURE TO VERUS WAIVED PRIVILEGE.

Materials in Verus's possession are by definition something for which privilege—if it ever existed—was waived.[60] A narrow exception applies only where "disclosure to a third party is necessary for the client to obtain informed legal advice."[61] As with the attorney-client privilege generally, "[w]hat is vital to the privilege is that the communication must be made *in confidence* for the purpose of obtaining *legal* advice *from the lawyer*."[62] "Courts must narrowly construe the exception," because it applies only where "the third party [is] nearly indispensable or serve[s] some specialized purpose in facilitating the attorney-client communication."[63] For example, communications to an accountant that the client's tax lawyer hires do not waive the privilege because "[a]ccounting concepts are a foreign language" to some attorneys, and the accountant's ability to translate can enable the attorneys to render sound legal advice.[64]

*Ravenell v. Avis Budget Grp., Inc.*, is instructive.[65] There, defendants claimed attorney-client privilege over communications with a third-party that conducted audits on defendants' behalf. The court held that vendor communications were not privileged because they were unnecessary for effective attorney-client communication.[66] The vendor's work involved creating "an online platform for the dissemination and collection of questionnaires," then "summariz[ing] the collected data in a chart, and, based on criteria provided by defendants' counsel," "ma[king] a preliminary assessment of whether the individuals who completed the questionnaires met [certain] requirements."[67] The court concluded that defendants waived privilege because they failed to show why the auditing firm needed to review the responses, rather than simply provide the platform, and the auditing firm's "preliminary assessments neither improved the comprehension of the communications between attorney and client, nor provided advice outside the general expertise of attorneys."[68]

Verus's work was very similar to that of the vendor in *Ravenell*. It is hard to see how disclosing confidential client communications to Verus was "necessary" for its client law firms to render legal advice.[69] In fact, hoping to avoid becoming witnesses, these law firms have stayed in the shadows while Verus challenges the subpoena on its own. To be clear, Verus's work was administrative and did not improve "the comprehension of the communications between

---

[58] *See Wal-Mart Stores, Inc. v. Pontiac Gen. Emps.' Ret. Sys.*, 314 F.R.D. 138, 140-41 (D. Del. 2016) (subpoena recipient "failed" "to describe the nature of the withheld documents, communications, or tangible things in a manner that" "would allow the court to assess its claim of privilege," where recipient merely described many of the documents as privileged).
[59] *See* Fed. R. Civ. P. 45(e)(2)(A).
[60] *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 361 (3d Cir. 2007), as amended (Oct. 12, 2007) ("Disclosing a communication to a third party unquestionably waives the privilege."); *Barr Marine Prods., Co. v. Borg-Warner Corp.*, 84 F.R.D. 631, 634 (E.D. Pa. 1979) ("[C]ommunications between attorney and client are not privileged if made in the presence of or communicated to third parties.").
[61] *Westinghouse*, 951 F.2d at 1424 (citing 8 Wigmore, *Evidence* § 2301 at 583 (McNaughton rev. 1961)).
[62] *U.S. v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989) (emphasis in original).
[63] *In re Restasis*, 352 F. Supp. 3d at 211.
[64] *See U.S. v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961).
[65] No. 08-CV-2113 (SLT), 2012 WL 1150450 (E.D.N.Y. Apr. 5, 2012).
[66] *Id*. at *3.
[67] *Id*.
[68] *Id*. (quoting *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999)).
[69] *Id.* at *2.

attorney and client."[70]  Verus's services are more similar to creating "an online platform" for "collect[ing] questionnaires," "summariz[ing] the collected data in a chart," and then "making a preliminary assessment of whether the individuals who completed the questionnaires" met set requirements.[71]  Any privilege that may have existed has been waived.

### IV. THE WORK PRODUCT DOCTRINE DOES NOT APPLY HERE.

The work-product doctrine "shelters the mental processes of the attorney, providing a privileged area within which" he or she can "analyze and prepare [a] client's case."[72]  It protects "the confidential nature of materials prepared by attorneys in anticipation of litigation."[73]  The Third Circuit teaches that the work product doctrine "should be recognized only when necessary to achieve [its] purposes" and may be waived by disclosure to a third party.[74]

As with the attorney-client privilege, Verus makes only a bare assertion that the work product doctrine applies, offering no clue about how documents that it created are protected by a privilege designed to shield "mental processes **of the attorney**."[75]  The work product doctrine does not apply to RFPs that seek documents about **Verus's** work in preparing and submission facially questionable POCs.  As explained in Point II.B, many of the RFPs concern Verus's contracts and procedures, or the identity of relevant parties, and cannot possibly reflect an attorney's "mental processes."  Purely factual material of this nature from a non-attorney vendor is not subject to work product protections .[76]

### FED. R. CIV. P. 37(a)(1) CERTIFICATION

Pursuant to Civil Rule 37(a)(1), the undersigned hereby certifies that Century has met and conferred with counsel to Verus in good faith on these issues, including the exchange of a deficiency letter[77] and several meet and confer calls.

\*     \*     \*

The Court should compel Verus to comply with Century's Subpoena.

Respectfully submitted,

*/s/ Gary Svirsky*

Gary Svirsky
O'MELVENY & MYERS LLP

---

[70] *Id.* at *3 (quoting *Ackert*, 169 F.3d at 139).
[71] *Id.* at *3.
[72] *In re Grand Jury (Impounded)*, 138 F.3d 978, 981 (3d Cir. 1998).
[73] *Id.*
[74] *In re Chevron Corp.*, 633 F.3d 153, 165 (3d Cir. 2011).
[75] *Grand Jury (Impounded)*, 138 F.3d at 981 (emphasis added); *Conoco Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982) (holding that document was not privileged where the proponent "failed to establish that the document was prepared by or at the direction of an attorney," or "that it was prepared in anticipation of litigation").
[76] *Montgomery Cty. v. MicroVote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999) (holding that fee arrangements "do[] not come within the ambit of the work-product privilege"); *see also Cottillion v. United Ref. Co.*, 279 F.R.D. 290, 302 (W.D. Pa. 2011) (work-product doctrine "does not protect documents prepared in the ordinary course of business," "or for other nonlitigation purposes").
[77] *See* Stamoulis Decl., Ex. 3, (Oct. 4, 2021 Deficiency Letter from Century to Verus).