**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
|  | **Ref. D.I. 6623** |

**DEBTORS' OBJECTION TO THE ALLIANZ**
**INSURERS' MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

Boy Scouts of America (the "<u>BSA</u>") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession (together, the "<u>Debtors</u>") in the above-captioned chapter 11 cases, hereby file this objection (this "<u>Objection</u>") to *The Allianz Insurers' Motion for Relief from the Automatic Stay* [D.I. 6623] (the "<u>Motion</u>") filed by Allianz Global Risks US Insurance Company ("<u>Allianz</u>"), National Surety Corporation ("<u>National Surety</u>"), and Interstate Fire & Casualty Company ("<u>Interstate</u>" and together with Allianz and National Surety, the "<u>Allianz Insurers</u>").[2]  In support of this Objection, the Debtors submit the declaration of Ernest Martin, a partner of Haynes and Boone, LLP, attached hereto as **Exhibit 1** (the "<u>Martin Declaration</u>").  In further support of this Objection, the Debtors state as follows:

**PRELIMINARY STATEMENT**

1.     The Allianz Insurers' motion for relief from the automatic stay is a transparent attempt to gain leverage in the Debtors' chapter 11 cases.  Pursuant to a stipulation between the

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, TX 75038.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion or the *Modified Fifth Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* filed by the Debtors on September 30, 2021 [D.I. 6443], as applicable.

parties, certain state court actions pending in Illinois and Texas were stayed shortly after commencement of the chapter 11 cases. These actions have remained stayed for the past nineteen months. Suddenly, in the compressed run-up to confirmation, the Allianz Insurers have requested that the Court lift the automatic stay to permit the State Court Actions to proceed. As set forth below, the Allianz Insurers fail to establish cause to justify relief from the automatic stay for several reasons.

2.      **First**, if the automatic stay is lifted, the Debtors will be significantly prejudiced in pursuing their orderly reorganization. As the Court is aware, the Debtors are on an extraordinarily expedited confirmation timeline. The contentious nature of these chapter 11 cases has caused the Debtors' estates to incur significant professional fees and has continued to hamper the BSA's ability to recruit members and solicit donations. It is imperative that the Debtors move to confirmation in the first quarter of 2022. Recognizing the urgency of the situation, the Court set January 24, 2022 for the confirmation hearing and required all discovery to be completed in three months. Lifting the automatic stay at this juncture would force the Debtors to litigate in three different forums—the two state-court insurance-coverage actions in Illinois and Texas and these chapter 11 cases in this Court. This multi-front endeavor would not only distract from the Debtors' efforts to reorganize at the most critical time in these cases, but it would also deplete the limited remaining resources of the Debtors.

3.      **Second**, the Allianz Insurers have failed to demonstrate any prejudice that would result from the stay remaining in place. The State Court Actions are in their infancy, as documents have not even been exchanged and the Allianz Insurers have not stated any credible, imminent harm to them that would arise from the stay. In the next three months, the Allianz Insurers would not be able to make meaningful progress toward obtaining any substantive rulings in the State

Court Actions.  Further, the Allianz Insurers' suggestion that the work that was done in the State Court Actions before the commencement of these cases would somehow be wasted absent relief from the stay is baseless.  If that work has not been lost in the last nineteen months, there is no basis to contend that it will be lost if the automatic stay remains in effect for an additional three months.  Contrary to the Allianz Insurers' apparent position, a pause in litigation by itself does not necessarily result in any harm to either side.

4.      ***Third***, the Allianz Insurers cannot establish that they are likely to succeed on the merits.  Indeed, given the early stages of the State Court Actions, there is no indication that the Allianz Insurers will prevail.

5.      For these reasons and the reasons set forth below, the Motion should be denied.

## FACTUAL BACKGROUND

### I.      The BSA's Coverage Disputes with the Allianz Insurers

6.      Prior to the Petition Date, the BSA and certain local councils sought insurance coverage for claims and/or lawsuits that alleged sexual abuse in connection with various BSA programs.  Insurance-coverage disputes relating to those claims arose between the BSA and certain of the BSA's insurers, including National Surety and Allianz.

7.      Specifically, the BSA was involved in two coverage lawsuits with the Allianz Insurers: (a) a declaratory action filed in Illinois by National Surety (the "Illinois Action"); and (b) an action filed in Texas by the BSA and certain local councils against the Allianz Insurers and certain other insurers (the "Texas Action" and together with the Illinois Action, the "State Court Actions").  *See* D.I. 6625,  Ex. B (Nat'l Sur. Compl.); Ex. D (Pltff's Orig. Pet.).[3]  The Illinois Action related to a specific set of sexual abuse claims known as the Hacker Litigation.  *Id.*  The

---

[3] The Debtors refer to several documents filed by the Allianz Insurers at D.I. 6625 so as not to file duplicative, voluminous records that are already before the Court.

Texas Action was a comprehensive coverage lawsuit that included the Hacker Litigation and other sexual abuse claims.  *Id.*

### A.    National Surety's Illinois Action

8.    In November 2017, the BSA and National Surety engaged in settlement discussions regarding the Hacker Litigation prior to a scheduled mediation.  Martin Decl. ¶ 4.  Three days after confirming that it would attend and participate in the mediation, National Surety filed the Illinois Action seeking to resolve the coverage disputes related to the Hacker Litigation outside of mediation.  *Id.* ¶ 4; *see also* D.I. 6625, Ex. B.

9.    The Illinois Action named all of the BSA's insurers between 1980 and 1988, notwithstanding there are no coverage disputes with several of these insurers.  Martin Decl. ¶ 5. Notably, the insurance-coverage disputes related to the Hacker Litigation are limited to those claims asserted against only three of the BSA's insurers—National Surety, Allianz, and Century Indemnity Company ("Century").  *Id.* ¶ 6; *see also* D.I. 6625, Ex. B.  As such, the BSA stipulated with, or sought to dismiss, several of its insurers from the Illinois Action because they have no obligation or association with respect to the Hacker Litigation.  Martin Decl. ¶ 6.

### B.    The BSA's Texas Action and Allianz's Counterclaims in Illinois

10.    On August 24, 2018, the BSA filed the Texas Action against National Surety, Allianz, and Century seeking insurance coverage for the Hacker Litigation and certain other sexual abuse claims.  *See* D.I. 6625, Ex. B.  At the time the Texas Action was filed, Allianz had not participated in or filed an answer in the Illinois Action.  *See* D.I. 6625, Ex. A.

11.    After the BSA filed the Texas Action, Allianz filed counterclaims in the Illinois Action.  *Id.*  Allianz's counterclaims in the Illinois Action sought to resolve issues that directly

overlapped with the Texas Action (*e.g.*, Allianz's counterclaim seeking a declaration that Illinois' pro-rata allocation applies versus Texas's all-sums allocation). *Id.*

### C.    Stay of the State Court Actions

12.    After the State Court Actions were filed, a venue dispute arose between the BSA and the Allianz Insurers regarding which court should resolve the coverage disputes between the parties. Martin Decl. ¶ 7. The BSA moved to dismiss the Illinois Action in favor of the pending Texas Action, and National Surety sought to abate the Texas Action in favor of the pending Illinois Action. *Id.* The Illinois and Texas courts, respectively, denied both motions. *Id.*

13.    National Surety filed a writ of mandamus and an emergency motion to stay the Texas Action with the Dallas appellate court while that court considered the writ of mandamus. D.I. 6625, Ex. G. The Dallas appellate court ultimately granted National Surety's motion to stay the Texas Action, and the writ of mandamus was fully briefed by the BSA and the Allianz Insurers. *Id.*, Ex. H. Before the Dallas appellate court could decide the venue issue raised by National Surety's petition, the BSA filed these chapter 11 cases on February 18, 2020.

14.    Shortly after the commencement of these cases, the BSA notified the Illinois state court of the filing of its bankruptcy petition and the application of the automatic stay. D.I. 6625, Ex. I. Nevertheless, the BSA was ready to proceed with the Texas Action, in which it was the plaintiff. Shortly thereafter, National Surety filed the *Motion (I) for Relief from the Automatic Stay or, in the Alternative, (II) to Extend the Stay* [D.I. 147]. National Surety's motion sought relief from the automatic stay to proceed with the Illinois Action, or in the alternative, to stay both the Illinois and Texas Actions. *Id.*

15.    The BSA and the Allianz Insurers thereafter entered into a stipulation agreeing to stay both of the State Court Actions. *See Order Granting in Part National Surety Corporation's*

*Motion (I) for Relief from the Automatic Stay or, in the Alternative, (II) to Extend the Stay* [D.I.

236]. At the time such order was entered, the State Court Actions were in preliminary phases.

Martin Decl. ¶ 9. Specifically, while discovery had been served in the State Court Actions, no

substantive documents had been exchanged,[4] no depositions had occurred, no experts had been

designated, and neither of the State Court Actions were anywhere near ready for trial.[5] *Id.* Indeed,

the only issues that had been briefed or addressed by the BSA or the Allianz Insurers in the State

Court Actions were venue issues related to where the coverage dispute should be decided in the

first instance. *Id* ¶¶ 7, 9-11. There were no substantive rulings or trials in either case. *Id* ¶¶ 9-11.

## II.    The BSA's Chapter 11 Cases and the Allianz Insurers' Motion

16.    The Debtors' bankruptcy cases have been pending for the last nineteen months.

Because of the contentious nature of the proceedings, to date, the Debtors' estates have incurred

in excess of $146 million in professional fees and by the end of December 2021, the Debtors

estimate that the professional fees in these cases will equal or exceed $205 million. *See* D.I. 6383,

Art. II.F. Each successive month is expected to cost the estates approximately $10 million or more

in professional fees. *Id.* The sustained elevated costs of such estate professional fees and

continued pressure on the BSA's operations due to the pendency of the chapter 11 cases underscore

the need for an expedited confirmation timeline.

17.    On September 30, 2021, the BSA filed the solicitation version of the *Modified Fifth*

*Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*

---

[4] The Illinois Court had entered an order in March of 2018 ordering the parties to exchange insurance policies from 1981 to 1984. These were the only documents exchanged in the State Court Actions. Martin Decl. ¶ 10.

[5] In the Texas Action, the BSA did file a partial motion for summary judgment against National Surety to resolve a discrete contract interpretation issue relating to the Hacker Litigation. Martin Decl. ¶ 11. This motion, however, was not fully briefed, was not set for hearing and was also not case dispositive. *Id.* Therefore, the resolution of the partial summary judgment motion would not have moved the parties any closer to trial or resolution of the coverage disputes in the Texas Action. *Id.* Indeed, National Surety sought to stay the Texas Action so that the motion would not proceed. *See* D.I. 6625, Ex. C, at 18.

(the "Plan"). D.I. 6443. Article XI.A of the Plan ('Retention of Jurisdiction') provides that the

Bankruptcy Court shall retain jurisdiction over the State Court Actions. Importantly, however,

with respect to Insurance Actions (defined to include the State Court Actions):

> Nothing contained [in the Plan] concerning the retention of
> jurisdiction by the Bankruptcy Court shall be deemed to be a finding
> or conclusion that (1) the Bankruptcy Court in fact has jurisdiction
> with respect to any Insurance Action, (2) any such jurisdiction is
> exclusive with respect to any Insurance Action, or (3) abstention or
> dismissal of any Insurance Action pending in the Bankruptcy Court
> or the District Court as an adversary proceeding is or is not advisable
> or warranted, so that another court can hear and determine such
> Insurance Action(s). Any court other than the Bankruptcy Court that
> has jurisdiction over an Insurance Action shall have the right to
> exercise such jurisdiction.

Plan, Art. XI.A.

18.     On October 8, 2021, the Bankruptcy Court entered the *Order (I) Scheduling Certain*

*Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization,*

*(II) Establishing Certain Protocols, and (III) Granting Related Relief*. D.I. 6528 (the "Scheduling

Order"). The Scheduling Order set the Confirmation Hearing for January 24, 2022. *Id.* In

preparation for the Confirmation Hearing, the Debtors and other parties in interest must adhere to

a series of compressed discovery and other pre-trial deadlines, including deadlines to, among other

things, serve discovery, respond to discovery, produce documents, depose fact witnesses, retain

experts, depose experts, exchange briefs in opposition to, and support of, the Plan. *Id.*

19.     The BSA and its legal, financial and other restructuring advisors are coordinating

to meet the foregoing deadlines and maintain the confirmation timeline. Less than one week after

entry of the Scheduling Order, on October 24, 2021, the Allianz Insurers filed the Motion.

## ARGUMENT

20.     The purpose of the automatic stay is well established: "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991) (citation omitted).  The automatic stay is one of the fundamental protections provided to debtors under the Bankruptcy Code.  *Midlantic Nat'l Bank v. N.J. Dep't of Envt'l. Prot.*, 474 U.S. 494, 503 (1986).  The Court may, however, grant relief from the automatic stay "for cause."  11 U.S.C. § 362(d)(1); *In re DBSI, Inc.*, 407 B.R. 159, 166 (Bankr. D. Del. 2010).

21.     A movant seeking relief from the automatic stay bears the burden to "produce evidence that cause exists." *DBSI, Inc.*, 407 B.R. at 166.  If the movant establishes cause, then the burden shifts to the opposing party.  *Id.*  Whether cause exists to lift the stay is determined on a case-by-case basis.  *Id.*

22.     Bankruptcy courts in this District apply a three-part test to evaluate whether cause exists in a specific case: first, "[w]hether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit;" second, "[w]hether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor;" and third, "[t]he probability of the creditor prevailing on the merits." *Id.* (citation omitted).  Courts also consider "whether lifting the automatic stay will impede[] the orderly administration of the debtor's estate." *Id.* at 167; *see also In re W.R. Grace & Co.*, No. 01-01139 (JKF), 2007 Bankr. LEXIS 1214, *9, n.7 (Bankr. D. Del. Apr. 13, 2007) ("The most important factor in determining whether to grant relief from the automatic stay to permit litigation to proceed against a debtor in

8

another forum is the effect on such litigation on the administration of the estate. Even slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit." (citation omitted)).  For the reasons that follow, the Motion fails to "produce evidence that cause exists" to lift the stay and should be denied.  *See DBSI, Inc.*, 407 B.R. at 166.

> **A.    Continuation of the State Court Actions Will Greatly Prejudice the Debtors and their Estates.**

23.    Lifting the stay to allow the Allianz Insurers to proceed with the State Court Actions would greatly prejudice the Debtors and their estates to the detriment of creditors and other parties in interest, particularly as the Debtors undertake intensive efforts to prepare for the Confirmation Hearing.

24.    One of the primary benefits of bankruptcy is the "breathing room" afforded to a debtor by the automatic stay.  *In re Linear Elec. Co., Inc.*, 852 F.3d 313, 323 (3d Cir. 2017) ("The purpose of the automatic stay is to give breathing room for the development of . . . a plan."); *Raymark Indus., Inc. v. Lai*, 973 F.2d 1125, 1130 (3d Cir. 1992) ("the purpose of the stay is 'to give the debtor a breathing spell . . . and it permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.'") (citation omitted).  This relief is especially important here, where the Debtors are drawing closer to confirmation and must devote all of their time, attention and resources to accomplishing that goal.  The Debtors are also continuing to engage in mediation with certain parties in interest in an effort reach additional settlements that will maximize the value of the estates for the benefit of creditors and streamline the Confirmation Hearing.  Indeed, courts recognize that in complex multi-party bankruptcies, such as these chapter 11 cases, where "there can be no doubt that the Debtor is extremely busy . . . with many tasks central to its reorganization,

and therefore central to its future . . . it would be irresponsible and subversive of the purpose of the automatic stay to allow any resources and attention of the Debtor to be diverted to other matters not directly related to its reorganization." *In re Comdisco, Inc.*, 271 B.R. 273, 279–80 (Bankr. N.D. Ill. 2002); *see also In re Towner Petroleum Co.,* 48 B.R. 182, 190 (Bankr. W.D. Okla. 1985) ("The single focal point for [the debtor] at present is the development and formulation of its plan of reorganization. Any deviation from this may detrimentally impact its changes for a successful reorganization. This consideration cannot be shrugged off as *de minimis*.").

25.    If the stay were lifted, not only would the Debtors incur significant legal costs at a time when their financial position is deteriorating, but such relief would also distract from the Debtors' reorganization efforts and preparation for the Confirmation Hearing.  Notably, the Debtors' counsel in the State Court Actions—Haynes and Boone, LLP—is the same as the Debtors' special insurance counsel in this these cases.  Therefore, permitting the State Court Actions to proceed would particularly impact the ability of the Debtors' special insurance counsel to focus on achieving confirmation of the Plan and distract the Debtors from the crucial tasks at hand, defeating the very purpose of the automatic stay and prejudicing the Debtors and the many parties whose interests depend on the Debtors' successful reorganization.

26.    Moreover, the Allianz Insurers incorrectly assert that "courts in this district have repeatedly recognized that a debtor who initiates a suit identical to pending litigation cannot later claim that it is cost-prohibitive to participate in the first-filed action."  Motion ¶ 55 (citing *Save Power Ltd. v. Pursuit Athletic Footwear (In re Pursuit Athletic Footwear)*, 193 B.R. 713, 718–19 (Bankr. D. Del. 1996) and *Tribune Media Servs. v. Beatty (In re Tribune Co.)*, 418 B.R. 116, 127 (Bankr. D. Del. 2009)).  The limited authorities cited by the Allianz Insurers neither support their proposition nor apply to these circumstances.  In the cases cited by the Allianz Insurers, the debtors

had commenced a post-petition adversary proceeding.  In *Pursuit Athletic Footwear*, the debtor filed an adversary proceeding on the petition date with allegations that were "substantially identical" to those in a pending state court action and, as a result, the court found the debtor was "obviously not concerned" with simultaneously pursuing its claims in state court while proceeding with its reorganization. 193 B.R. at 718–19.  Likewise, in *Tribune,* the debtors filed an adversary proceeding "to obtain a determination on the same issues" raised in a state court action and consequently, the court determined the debtors would not suffer great prejudice if the stay were lifted and the state court action moved forward.  418 B.R. at 127–28.  Unlike the debtors in such cases, the BSA has not commenced a post-petition adversary proceeding with respect to the subject matter of the State Court Actions and in fact stipulated at the outset of these chapter 11 cases to stay the Texas Action that it was prosecuting prepetition.  Accordingly, the cases relied upon by the Allianz Insurers are inapposite.

27.    Additionally, the Debtors' estates will be harmed by lifting the automatic stay. Pursuant to the Plan, on the Effective Date, the State Court Actions will be assigned to the Settlement Trust.  *See* Plan Art. IV.C–D.  There is no indication (nor do the Allianz Insurers allege) that the State Court Actions at issue could possibly be resolved before the anticipated confirmation of the Plan.  Thus, even if the automatic stay were lifted immediately, the State Court Actions would, at best, progress to some extent through the holidays and New Year only to have the Settlement Trustee assume the Debtors' role in such litigation after the Effective Date.  As such, the beneficiaries of the Settlement Trust—namely, the holders of Abuse Claims—will have an interest in the prosecution and defense of the State Court Actions, as applicable.  Lifting the automatic stay would not only require the Debtors to needlessly expend resources litigating the

State Court Actions instead of progressing the reorganization, but it would also deprive the true

parties in interest and their representatives from participating in the State Court Actions.

28.    The reasoning in *In re Archdiocese of Milwaukee*, 511 B.R. 551, 554 (Bankr. E.D.

Wis. 2014), *rev'd and remanded due to change in circumstances in the case, the original*

*circumstances being applicable here*, 523 B.R. 655 (E.D. Wis. 2014) is instructive.[6]  In that case,

an insurer filed a motion to terminate the automatic stay to allow the continuation of insurance

coverage litigation in the Wisconsin Supreme Court related to certain sexual abuse claims.  *Id.* at

552.  The debtor's plan of reorganization included an assignment of the debtor's rights to pursue

recoveries in insurance coverage actions to a litigation trust for the benefit of abuse survivors.  *Id.*

at 554.

29.    The court denied the insurer's motion to lift the automatic stay.  *Id.* at 556.  The

court concluded that "the cost and the distraction suffered by the Debtor and the estate along with

the potential prejudice to the abuse survivors outweighs the prejudice to [insurer] caused by the

additional delay in reaching a final determination from the Wisconsin Supreme Court on this

important insurance coverage issue." *Id.* at 555.  In reaching this conclusion, the court explained

that "[i]f this Court lifts the stay and allows the appeal to proceed, the [d]ebtor, not the Insurance

Litigation Trustee, will be saddled with the time and expense of pursuing the appeal, at a critical

juncture in this Chapter 11 case, when the [d]ebtor should be focused on negotiating with the

creditors to achieve confirmation of the Plan." *Id.* at 554 (citing *In re Comdisco*, 271 B.R. at 280

(noting that "absent a compelling reason, it would be irresponsible and subversive of the purpose

---

[6] Ultimately, the bankruptcy court denied the insurer's motion to lift the stay, expecting that "the confirmation hearing was more or less imminent." 523 B.R. at 658.  Two weeks later, however, the bankruptcy court ruled that it lacked jurisdiction to confirm the debtor's proposed plan and the confirmation hearing was "delayed indefinitely." *Id.*  Thus, on appeal, the district court found the balance of harms necessarily shifted due to the change in circumstances and the debtor could "no longer claim that it will be distracted trying to negotiate with creditors to achieve confirmation." 523 B.R. at 659.

of the automatic stay to allow any resources and attention of the Debtor to be diverted to other matters not directly related to its reorganization")).  The court further explained that "[a]long with wasting the estate's precious resources, allowing the state court appeal to continue without guidance from the Insurance Litigation Trustee deprives the abuse survivors—the ultimate beneficiaries of the insurance coverage litigation—of input into strategic decisions about the litigation." *Id.* at 554–55.

30.     The reasoning of *Archdiocese of Milwaukee*, which relied on the same factors cited herein, squarely supports denying the relief requested by the Allianz Insurers.  The state court coverage litigation in *Archdiocese of Milwaukee* had advanced much more, pending appeal on the merits, than the State Court Actions, which to date have focused almost exclusively on venue issues.  *See id.* at 552–53.  Similarly, both this case and *Archdiocese of Milwaukee* involve the assignment of state court litigation to a trust for the benefit of creditors.  Lifting the automatic stay here, like in *Archdiocese of Milwaukee*, immediately prior to plan confirmation, would require the BSA to incur the cost and expense of litigating the action without guidance from the Settlement Trustee.  *See id.* at 554–55.

31.     Accordingly, the Debtors and their estates will suffer great harm and prejudice if the Court lifts the automatic stay of the State Court Actions.

**B.    Hardship to the Allianz Insurers is Minimal and Outweighed by the Harm to the Debtors and Their Estates That Would Result from the Stay Being Lifted.**

32.     The Allianz Insurers will not suffer significant harm if the automatic stay is not lifted.  The Allianz Insurers incorrectly argue that the Plan is an attempt by the Debtors to manipulate the forum of the State Court Actions and that the Plan's retention of jurisdiction provisions contravene this Court's comments.  *See* Motion ¶ 59.  The Allianz Insurers further argue

that the maintenance of the stay would cause harm through the further delay of the State Court Actions. *See id.* ¶ 57. Neither argument has merit.

33.     First, the Plan provides that although the Bankruptcy Court shall retain jurisdiction over the Insurance Actions (defined in the Plan to include the State Court Actions), the Plan also makes clear that it is not a determination of (a) whether the Bankruptcy Court in fact has such jurisdiction, (b) whether such jurisdiction, if any, is exclusive, or (c) whether abstention is advisable or warranted. *See* Plan Art. XI.A. The Plan also provides that any court other than the Bankruptcy Court with jurisdiction over the Insurance Actions shall have the right to exercise such jurisdiction. *Id.* As a result, the Plan expressly preserves the jurisdiction of the current venues. Moreover, the Debtors do not believe, and have not contended, that the Insurance Actions should be determined in this Court. Thus, the Allianz Insurers' most prominent argument for the purported harm that the Plan would inflict—that unless the stay is lifted, this Court would divest jurisdiction from the applicable state court—is nothing more than a mere possibility at this stage and contrary to the language of the Plan.

34.     Second, the Allianz Insurers contend that maintaining the stay in the Illinois Coverage Action will erode more than two years of pre-trial litigation. Motion ¶ 60. But the cases cited by the Allianz Insurers support continuing the automatic stay under the present circumstances. The Allianz Insurers cite authority standing for the proposition that judicial economy supports prompt resolution where the state court actions have "progressed significantly pre-bankruptcy . . . especially . . . when trial is ready to proceed." *See* Motion ¶ 60 (citing *Passavant Mem'l Homes v. Laurel Highlands Found., Inc. (In re Laurel Highlands Found., Inc.)*, 473 B.R. 641, 662 (Bankr. W.D. Pa. 2012) and *In re Chan,* 355 B.R. 494, 501 (Bankr. E.D. Pa. 2006)). In one of these cited cases, *Laurel Highlands*, the state court was prepared to rule on an

"important matter." 473 B.R. at 662.[7] Further, in *Laurel Highlands*, the court found that the bankruptcy petition was filed in bad faith as a litigation tactic to avoid a potentially adverse ruling in state court and dismissed the case, without even needing to grant relief from the stay. *Id.* at 655, 662 ("The filing of the bankruptcy case appears to be nothing more than an attempt by the current management of [debtor] to remain in control when faced with the threat that [state court] Judge Marsili may grant the renewed request for preliminary injunction."). In the other case cited by the Allianz Insurers, *In re Chan*, the court noted in dicta that there may be a scenario where it may be appropriate to grant relief from the stay where there are multiple parties involved in the non-bankruptcy litigation and judicial economy supports the return to the non-bankruptcy forum. 355 B.R. at 501. However, in *Chan*, the court did not grant relief from the stay, in part because the state court action had not "progressed to any substantial degree." *Id.* at 502. Therefore, under the present facts, neither of these cases supports granting the Motion.

35.    Neither of the State Court Actions have progressed to a significant degree. While discovery had been served, no substantive documents have been exchanged. No depositions have occurred. No experts have been designated. Martin Decl. ¶ 9. In short, the State Court Actions have not "progressed significantly pre-bankruptcy," *see* Motion ¶ 60, and the parties are nowhere near trial. And the Allianz Insurers have not made any meaningful argument as to why extending the automatic stay beyond nineteen months would materially impact the Allianz Insurers.

---

[7] Under the facts in *Laurel Highlands,* members of the debtor, along with another nonprofit that offered similar services, were competing with the debtor's board of directors for control of the organization. *Id.* at 646–47. After the two sides could not reach an agreement, both essentially assumed control and began taking inconsistent actions on behalf of the debtor. *Id.* at 647. The debtor, through its board of directors, then sued in state court for declaratory relief as to control of the debtor. *Id.* at 647–48. On the same day that the state court judge was set to issue the decision on a renewed motion for a preliminary injunction filed by the competing members of the debtor, the debtor filed for bankruptcy and sought removal. *Id.* at 648.

36.    For the foregoing reasons, the Allianz Insurers will not suffer any harm by the continuation of the automatic stay of the State Court Actions, and any such harm is clearly outweighed by the harm that would be caused to the Debtors and their estates if the stay were to be lifted.

C.    **The Allianz Insurers Cannot Establish that They Are Likely to Succeed on the Merits.**

37.    The Allianz Insurers have not met their burden of showing that they have a probability of succeeding on the merits in the State Court Actions.  The Allianz Insurers argue that because the requisite threshold for this showing is low, they have satisfied their burden by noting that (a) the Debtors' motion to dismiss the Illinois Action was denied, and (b) the Dallas appellate court granted National Surety's motion to stay the Texas Action while the writ of mandamus was being briefed.  The authorities cited by the Allianz Insurers in their Motion are of little relevance.

38.    The Allianz Insurers cite *In re Rexene Prods. Co.*, 141 B.R. 574, 578 (Bankr. D. Del. 1992) and *Pursuit Athletic Footwear,* 193 B.R. at 719 for the proposition that the threshold showing for probability of success on the merits is met where there was a denial of a motion for summary judgment and of cross-motions for preliminary injunctions, respectively.  *See* Motion ¶ 63.  In contrast to the instant case, where all rulings in the State Court Actions were limited to disputes related to the appropriate venue, the motions in the cases cited by the Allianz Insurers went to the *merits* of the prepetition actions and were thus indicative of any potential success on the merits.  *See Rexene*, 141 B.R. at 575, 578; *Pursuit Athletic*, 193 B.R. at 718–19.

39.    The rulings identified by the Allianz Insurers do not indicate they have any probability of prevailing over the Debtors on the merits of the State Court Actions.

## <u>CONCLUSION</u>

WHEREFORE, the Debtors request that the Court deny the Motion and grant such other relief as the Court deems just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated:  October 28, 2021
          Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Paige N. Topper*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@morrisnichols.com
          aremming@morrisnichols.com
          ptopper@morrisnichols.com

– and –

**WHITE & CASE LLP**
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email: mandolina@whitecase.com
          mlinder@whitecase.com
          laura.baccash@whitecase.com
          blair.warner@whitecase.com

ATTORNEYS FOR THE DEBTORS AND
DEBTORS IN POSSESSION