## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC[1] | Case No. 20-10343 (LSS) |
| Debtors. | Jointly Administered |
| | **Ref. D.I. 6623 and 6825** |

### OBJECTION OF THE FUTURE CLAIMANTS' REPRESENTATIVE AND THE COALITION OF ABUSED SCOUTS FOR JUSTICE TO THE ALLIANZ INSURERS' MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND JOINDER IN DEBTORS' OPPOSITION THERETO

James L. Patton, Jr., the Future Claimants' Representative (the "FCR") and the Coalition of Abused Scouts for Justice (the "Coalition") joins the *Debtors' Objection to the Allianz Insurers' Motion for Relief from the Automatic Stay*, [D.I. 6825] (the "Debtors' Opposition"), and further objects as follows:

### PRELIMINARY STATEMENT

1.      The *Allianz Insurers' Motion for Relief from the Automatic Stay* [D.I. 6623] (the "Motion")[2] requests that this Court lift the automatic stay "for cause" pursuant section 362(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended, in order to allow the State Court Actions to proceed.

2.      The Motion arrives just three months before the confirmation proceedings are scheduled to begin and while Debtors are fully occupied with their reorganization efforts.  The

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion and/or in the Debtors' Opposition.

Motion also arrives just three months before the Debtors are to relinquish their coverage claims to the Settlement Trust under the proposed Plan, meaning that they will no longer have a stake in the State Court Actions. The Motion thus appears aimed at forcing the Debtors to divide their efforts between the reorganization—a matter of existential importance—and the coverage litigation—a matter in which they have no long-term interest—in order for the Allianz Insurers to gain a tactical advantage on both fronts.

3.    The Allianz Insurers argue that the stay must be lifted to avoid two harms: delay in the resolution of coverage issues, and, separately, the potential resolution of coverage issues by this Court. The Allianz Insurers further state that there will be no material harm to the estate if the stay were lifted. The Allianz Insurers' contentions are without merit.

4.    First, the Allianz Insurers grossly understate the harm the Debtors would suffer if they were forced to litigate the State Court Actions now, three months before confirmation. Lifting the stay would force the Debtors to divert substantial resources and attention away from these chapter 11 proceedings at a critical moment in order to protect valuable insurance assets for the benefit of survivors. Such an outcome is particularly non-sensical since it is the Settlement Trust, and not the Debtors, who will have the right to control any coverage litigation post-confirmation.

5.    Second, the Allianz Insurers grossly overstate the impact of the coverage litigation on the bankruptcy proceeding, and the impact of the bankruptcy proceeding on the coverage litigation. Resolution of the coverage issues in dispute in the State Court Actions is not necessary for plan confirmation proceedings, and in any event, there is no chance that any such issues will be resolved in the State Court Actions before plan confirmation proceedings begin in three months. Similarly, the Allianz Insurers' concern that the Plan will somehow prejudice their

ability to raise venue challenges in the State Court Actions post-confirmation is misguided at best; the plain language of the Plan states that it shall not divest state courts of jurisdiction over coverage disputes.

6.      In short, the Allianz Insurers fail to meet their burden to prove that the automatic stay should be lifted, and the Motion must therefore be denied.

## ARGUMENT

7.      "The term 'cause' as used in § 362(d)(1) is undefined; courts have ruled that whether there is cause to lift the automatic stay must be determined on a case-by-case basis." *In re DBSI, Inc.*, 407 B.R. 159, 166 (Bankr. D. Del. 2009).  "This Court has developed a three-part balancing test to evaluate whether cause exists in a specific case:  'Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit; [w]hether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and [t]he probability of the creditor prevailing on the merits.'"  *Id.* (quoting *In re SCO Group, Inc.*, 395 B.R. 852, 857 (Bankr. D. Del. 2007)).  "Courts also place emphasis on whether lifting the automatic stay will impede[] the orderly administration of the debtor's estate."  *Id.* at 167.  Under this test, the Allianz Insurers' Motion fails.

### A.  Lifting the Automatic Stay Would Harm the Debtors and Their Estates.

8.      The Allianz Insurers' assertion that the Debtors would suffer only increased litigation costs and inconvenience if the Court permitted the State Court Actions to proceed is woefully inaccurate.  The parties to these chapter 11 proceedings are intensively preparing for a confirmation hearing that is only three months away, operating within an aggressive schedule designed to facilitate the Debtors' prompt reorganization and minimize further depletion of estate assets.  *See* D.I. 6528.  Currently, the parties are engaged in substantial and contentious

discovery, with depositions scheduled to begin imminently.  Simultaneously, the parties

(including a substantial number of the Debtors' insurers) are engaged in vigorous mediation over

Plan- and insurance-related issues—in part to avoid or minimize the time and cost of continuing,

post-confirmation, the very litigation the Allianz Insurers seek to reignite with the Motion.

Forcing the Debtors back into litigation would not only deplete substantial estate assets, but also

divert the Debtors' attention and resources from their reorganization efforts at a critical juncture.

Such an outcome would directly contravene the very purpose of the automatic stay.  *See Ass'n of

St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982) (noting that

the "breathing spell" of the automatic stay was designed "to prevent certain creditors from

gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's

assets due to legal costs in defending proceedings against it; and, in general, to avoid interference

with the orderly liquidation or rehabilitation of the debtor.").

      9.     Moreover, under the proposed Plan, the Debtors will cede to the Settlement Trust

all rights to pursue insurance for the Abuse Claims for the benefit of abuse survivors.  *See* D.I.

6445.  Thus, it is the survivors—not the Debtors—that have an interest in the coverage litigation.

At best, forcing the Debtors to litigate coverage disputes with their insurers now would give rise

to unnecessary costs and inefficiencies, as the Debtors would have to consult with counsel for the

FCR, TCC, and Coalition on all strategic decisions regarding the litigation.  At worst, it could

limit or deprive survivors of their right to control such litigation.  At least one court has denied

lifting a stay of a debtor's coverage action for this very reason.  *See In re Archdiocese of

Milwaukee*, 511 B.R. 551, 554–55 (Bankr. E.D. Wis. 2014), *rev'd and remanded due to change

in circumstances in the case, the original circumstances being applicable here*, 523 B.R. 655

(E.D. Wis. 2014) ("Along with wasting the estate's precious resources, allowing the state court

appeal to continue without guidance from the Insurance Litigation Trustee denies the abuse survivors—the ultimate beneficiaries of the insurance coverage litigation—of input into strategic decisions about the litigation.").

10.    Finally, the Allianz Insurers' assertion that the State Court Actions do not "directly jeopardize[ ] the Debtors' finances" because they do not seek "affirmative money damages," Motion at 2, 20, is, quite simply, ridiculous.  The nature of the remedy in the State Court Actions is irrelevant.  The Allianz Insurers seek declarations in the State Court Actions that the insurance coverage does not apply to the Abuse Claims; such a finding, if granted, would obviously reduce the value of the subject insurance assets to zero.  Courts have denied similar requests to lift the stay of actions that could affect the value of a debtor's liability insurance policies.  *See, e.g., Safety Nat'l Cas. Corp. v. Kaiser Aluminum & Chem. Corp. (In re Kaiser Aluminum Corp.)*, 303 B.R. 299, 302 (D. Del. 2003) (rejecting argument that lifting stay of coverage arbitration would not affect property of debtor "because the arbitration would only involve contractual issues such as the scope of [debtor's] policy," and instead finding that debtor would be prejudiced if the arbitration were to proceed because it had an interest in the scope of its coverage).

### B. Maintaining the Automatic Stay Would Not Harm the Allianz Insurers.

11.    Contrary to the Allianz Insurers' assertions, nothing will be lost by deferring the dueling State Court Actions—or any disputes over their consolidation—by only three months. Pre-petition, the Allianz Insurers and the Debtors were embroiled in a nearly three-year long forum dispute, during which time only initial pleadings and limited discovery were exchanged between the parties.  It is difficult to imagine what more could be accomplished in the next three months, or what could not reasonably be delayed three more months.  Nor is there anything that

must be accomplished in the coverage litigation in order for Plan confirmation proceedings to begin. This Court has previously refused to lift the stay of coverage litigation where resolution of the insurance claims was not necessary to negotiation or confirmation of a plan. Hr'g Tr. at 10:21-23, *In re Imerys Talc America, Inc.*, No. 19-10289 (Bank. D. Del. Jun. 28, 2019), D.I. 761. Notably, the Court refused to lift the stay in that matter while the proceedings were in their beginning stages and no plan had been proposed. *Id.* at 10:20-21. Here, on the other hand, confirmation proceedings are around the corner.

12.     The Allianz Insurers' argument that confirmation of the Plan will somehow prejudice their ability to litigate any dispute over the proper forum for the State Court Actions is similarly meritless. The Allianz Insurers purportedly have "no doubt that the Debtors and other Plan proponents intend to argue that the Plan's retention of jurisdiction language divests the state courts of jurisdiction." Motion at 2. Such concern is misplaced. Article XI.A of the Plan makes clear that there shall be no divestment of state court jurisdiction:

> Nothing contained herein concerning the retention of jurisdiction by the Bankruptcy Court shall be deemed to be a finding or conclusion that (1) the Bankruptcy Court in fact has jurisdiction with respect to any Insurance Action, (2) any such jurisdiction is exclusive with respect to any Insurance Action, or (3) abstention or dismissal of any Insurance Action pending in the Bankruptcy Court or the District Court as an adversary proceeding is or is not advisable or warranted, so that another court can hear and determine such Insurance Action(s). **Any other court other than the Bankruptcy Court that has jurisdiction over an Insurance Action shall have the right to exercise such jurisdiction.**

(Emphasis added.) Even if the Stay is maintained and the Plan is confirmed, the retention of jurisdiction provision does not prejudice the Allianz Insurers' arguments with respect to forum.

**C.  The Allianz Insurers' Probability of Success, *Vel Non*, Is Irrelevant.**

13.     Given that the balance of the harms weighs markedly against the Allianz Insurers, the final prong regarding the probability of success on the merits need not be addressed.  *See In re Anderson*, 390 B.R. 812, 815 (Bankr. D.S.C. 2007) (non-moving parties need only prove a likelihood of success on the merits if the balance of the harms decidedly favored the party seeking relief from the stay).  The Motion should be denied.

## <u>CONCLUSION</u>

WHEREFORE, the Future Claimants' Representative respectfully requests that the Court deny Allianz Insurers' Motion for Relief from the Automatic Stay and award such other and further relief as it deems just and proper.

Dated:  October 28, 2021                  YOUNG CONAWAY STARGATT & TAYLOR, LLP


*/s/ Kenneth J. Enos*
Robert S. Brady (No. 2847)
Edwin J. Harron (No. 3396)
Kenneth J. Enos (No. 4544)
Rodney Square, 1000 North King Street
Wilmington, DE 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email: rbrady@ycst.com
          eharron@ycst.com
          kenos@ycst.com

– and –

GILBERT LLP
Kami E. Quinn (admitted *pro hac vice*)
Hunter Winstead (admitted *pro hac vice*)
Emily Grim (admitted *pro hac vice*)
Meredith Neely (admitted *pro hac vice*)
Rachel Jennings (admitted *pro hac vice*)
700 Pennsylvania Avenue, SE
Suite 400
Washington, DC 20003

28756243.1

Telephone:  (202) 772-2336
Facsimile:  (202)772-2337
Email: quinnk@gilbertlegal.com
      winsteadh@gilbertlegal.com
      grime@gilbertlegal.com
      neelym@gilbetlegal.com
      jenningsr@gilbertlegal.com

*Counsel to the Future Claimants' Representative*

– and –

MONZACK MERSKY AND BROWDER, P.A.

*/s/ Rachel B. Mersky*
Rachel B. Mersky (DE No. 2049)
1201 North Orange Street, Suite 400
Wilmington, DE 19801
Telephone:  (302) 656-8162
Facsimile:  (302) 656-2769
Email:  rmersky@monlaw.com

– and –

BROWN RUDNICK LLP
David J. Molton, Esq.
Eric R. Goodman, Esq.
Seven Times Square
New York, NY 10036
Telephone:  (212) 209-4800
Email:  dmolton@brownrudnick.com
Email:  egoodman@brownrudnick.com

– and –

Sunni P. Beville, Esq.
Tristan G. Axelrod, Esq.
One Financial Center
Boston, MA 02111
Telephone:  (617) 856-8200
Email:  sbeville@brownrudnick.com
Email:  taxelrod@brownrudnick.com

28756243.1