# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Re Docket Nos. 6438, 6443, 6445, 6528 |

**THE OFFICIAL COMMITTEE OF TORT CLAIMANTS' NOTICE OF DEPOSITION PURSUANT TO RULE 30(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE OF CENTURY INDEMNITY COMPANY, WESTCHESTER FIRE INSURANCE COMPANY, AND WESTCHESTER SURPLUS LINES INSURANCE COMPANY**

PLEASE TAKE NOTICE THAT pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable to these proceedings by Rules 9014 and 7030 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Official Committee of Tort Claimants (the "TCC") to Boy Scouts of America and Delaware BSA, LLC (the "Debtors") shall take the deposition of Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Westchester Fire Insurance Company, and Westchester Surplus Lines Insurance Company (collectively, "Century") by the person(s) most qualified to testify on Century's behalf with respect to the topics described in **Exhibit A** hereto.

The deposition will take place on November 22, 2021 at 9:00 a.m. Eastern Time or at such other date and time as the parties may agree.  Pursuant to the *Order (I) Scheduling Certain Dates and Deadlines in Connection with the Debtors' Plan of Reorganization, (II) Establishing Certain*

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

*Protocols, (III) Granted Related Relief* [Docket No. 6528], dated October 8, 2021, Century may elect to be deposed in person or remotely. If Century elects to be deposed in person, the deposition will take place at the offices of Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, Delaware 19899-8705, and parties' counsel may choose to attend in person or remotely.

If Century chooses to be deposed remotely:

1. Counsel for the parties and their clients will be participating from various, separate locations;

2. The court reporter will administer the oath to the witness remotely;

3. The witness will be required to provide government-issued identification satisfactory to the court reporter, and this identification must be legible on camera;

4. Each participating attorney may be visible to all other participants, and their statements will be audible to all participants;

5. All exhibits will be provided simultaneously and electronically to the witness and all participants;

6. The court reporter will record the testimony;

7. The deposition may be recorded electronically; and

8. Counsel for all parties will be required to stipulate on the record:

    a. Their consent to this manner of deposition; and

    b. Their waiver of any objection to this manner of deposition, including any objection to the admissibility at trial of this testimony based on this manner of deposition.

*[Remainder of page intentionally left blank]*

Dated: October 26, 2021

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*

James I. Stang (CA Bar No. 94435) (admitted *pro hac vice*)
Robert B. Orgel (CA Bar No. 10187) (admitted *pro hac vice*)
Iain A.W. Nasatir (CA Bar No. 148977) (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No. 271038) (admitted *pro hac vice*)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tele/Fax: (302) 652-4100 / (302) 652-4400
Email: jstang@pszjlaw.com
rorgel@pszjlaw.com
inasatir@pszjlaw.com
joneill@pszjlaw.com
jlucas@pszjlaw.com

-and-

PASICH LLP

Kirk Pasich (CA Bar No. 94242)
10880 Wilshire Boulevard, Suite 2000
Los Angeles, California 90024
Telephone: (424) 313-7850
KPasich@PasichLLP.com

-and-

Jeffrey L. Schulman (NY Bar No. 3903697)
757 Third Avenue, 20th Floor
New York, New York 10017
Telephone: (212) 686-5000
JSchulman@PasichLLP.com

*Counsel for the Official Committee of Tort Claimants*

**EXHIBIT A TO THE NOTICE
OF DEPOSITION OF CENTURY**

**DEFINITIONS**

For the purposes of this Notice of Deposition, the following Definitions shall apply:

1.      The terms "all," "any," and "each" shall each be construed as encompassing any and all. The singular shall include the plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive; and the term "including" means "including without limitation." The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense.

2.      Capitalized terms not otherwise defined herein shall have the same meanings set forth in the Plan.

3.      "1996 Transaction" shall mean (a) all transactions related to the 1995 plan for a partial re-arrangement of INA Financial Corporation (as referenced in the February 7, 1996, decision and order of the Insurance Commissioner of the Commonwealth of Pennsylvania in *In Re: Plan of Restructuring of INA Financial Corporation, et al.*); (b) all transactions relating to the February 7, 1996, decision and order of the Insurance Commissioner of the Commonwealth of Pennsylvania in *In Re: Plan of Restructuring of INA Financial Corporation, et al.*); and (c) all transactions relating to the January 28, 2011, amended order of the Insurance Commissioner of the Commonwealth of Pennsylvania in *In re: Application of ACE USA to Amend the Order of February 7, 1996 re the Plan of Restructuring of INA Financial Corporation, et al.*

4.      "1999 Transaction" shall mean ACE's 1999 acquisition of Cigna Corporation's international and domestic property and casualty business, INA.

5.      "Abuse" shall have the meaning provided in the Plan.

6. "Abuse Claim" means a liquidated or unliquidated Claim against one or more Abuse Parties that is attributable to, arises from, is based upon, relates to, results from, or is otherwise Concerned with, in whole or in part, directly, indirectly, or derivatively, alleged Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based on misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory, including any theory based on public policy or any act or failure to act by an Abuse Party or any other Person for whom any Abuse Party is alleged to be responsible. The term "Abuse Claim" includes Direct Abuse Claims and Indirect Abuse Claims.

7. "Abuse Claimant" shall mean the party asserting an Abuse Claim and their attorneys, advisors, agents, representatives, and experts.

8. "Abuse Party" means, individually and collectively, (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Chartered Organizations; (f) Insurance Companies; or (g) all of any of the foregoing's Persons' Representatives.

9. "ACE" shall mean ACE Limited and its agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, predecessors and/or successors.

10. "Applicable Insurance Policies" shall mean (a) any Insurance Policy that You sold to the Debtors and (b) any Insurance Policy that You sold to any Abuse Party that provides, may provide, or has been alleged to provide coverage for any Abuse Claim.

11. "BSA Plan Settlement" means any settlement, whether incorporated into the Plan or presented for approval pursuant to Bankruptcy Rule 9019, between the Debtors and any other Entity (including, but not limited to, an Insurance Company, Chartered Organization, or Local Council), including, but not limited to, the Hartford Insurance Settlement and the TCJC Settlement.

12. "Century" shall mean Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Ace Insurance Group, Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company, individually and collectively, and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, representatives, affiliates, subsidiaries, predecessors, and/or successors.

13. "Chapter 11 Cases" shall mean the above-captioned chapter 11 cases of Boy Scouts of America and Delaware BSA, LLC pending before the United States Bankruptcy Court for the District of Delaware.

14. "Chartered Organization" shall have the meaning provided in the Plan.

15. "Chubb" means Chubb Limited and Chubb Group Holdings Inc., individually and collectively, and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, representatives, affiliates, subsidiaries, predecessors, and/or successors, including, but not limited to, the Chubb Subsidiary Insurers.

16. "Chubb Subsidiary Insurers" means, individually and collectively, Federal Insurance Company; International Insurance Company; U.S. Fire Insurance Company; Pacific

Employers Insurance Company; Chubb Custom Insurance Company; Industrial Insurance Company of Hawaii; Industrial Indemnity; California Union Insurance Company; Texas Pacific Indemnity Company; Indemnity Insurance Company of North America; Westchester Fire Insurance Company; and Westchester Surplus Lines Insurance Company; and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, representatives, affiliates, subsidiaries, predecessors, and/or successors.

17. "Claim" means any "claim," as defined in section 101(5) of the Bankruptcy Code.

18. "Concerning" means relating to, evidencing, supporting, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, referencing, discussing, indicating, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

19. "Debtors" means, collectively or individually, as context requires and to encompass responsive documents Boy Scouts of America and Delaware BSA, LLC, and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

20. "Dividend Retention Fund" shall mean the "Fund" referenced in the 1996 Transaction.

21. "Documents" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all Documents and information in Your possession, custody, or control, and includes: all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda, transcripts, tapes, or other voice recordings, and all other Documents and tangible things, including

booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, print-outs, and all other data, whether recorded by electronic or other means, and all drafts thereof. If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on any of the pages thereof, then each such non-identical copy is a separate Document and must be produced. "Documents" always includes Communications.

22. "GL87" shall mean the general liability reinsurance agreement between Century as the reinsurer and other ceding companies regarding losses from direct general liability policies issued prior to January 1, 1987.

23. "Hartford Insurance Settlement" shall have the meaning provided in the Plan.

24. "INA" shall mean Insurance Company of North America and its agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors, and/or successors.

25. "INA Policies" shall mean all Insurance Policies sold by INA to the Debtors and/or any Local Council.

26. "Insurance Company" shall have the meaning provided in the Plan.

27. "Insurance Policy" shall have the meaning provided in the Plan, including all rights and benefits thereunder, and the proceeds thereof.

28. "IV Files" shall mean any Documents that identify individuals associated with the Debtors accused of Abuse, including those records and files referred to as "ineligible volunteer" or "perversion" files.

29. "Local Councils" shall have the meaning provided in the Plan.

30. "Perpetrator" shall have the meaning provided in the Plan.

31. "Petition Date" shall mean February 18, 2020.

32. "Plan" shall mean the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6443], as such Document may be amended, supplemented, or modified from time to time.

33. "Prepetition" shall mean occurring prior to the Petition Date.

34. "Proof of Claim" shall have the meaning provided in the Plan.

35. "Settlement" shall mean any Prepetition settlement or other resolution of an Abuse Claim.

36. "Settlement Trust" shall have the meaning provided in the Plan.

37. "TCC" shall mean the Official Committee of Tort Claimants to Boy Scouts of America and Delaware BSA, LLC.

38. "TCJC Settlement" shall have the meaning provided in the Plan.

39. "Verdict" shall mean any Prepetition verdict, judgment, award or decision of a court, arbitrator, mediator or similar tribunal Concerning an Abuse Claim.

40. "XOL Agreement" shall mean the aggregate excess of loss agreement referenced in the 1996 Transaction.

41.     "You" or "Your" and variants thereof mean Century.

**TOPICS**

**Topic No. 1.**

The Plan, including, but not limited to, the effect of the Plan on Your rights or obligations (including without limitation inter-insurer contribution claims).

**Topic No. 2.**

The Settlement Trust, including, but not limited to, the effect of the Settlement Trust on Your rights or obligations (including without limitation inter-insurer contribution claims).

**Topic No. 3.**

The Trust Distribution Procedures.

**Topic No. 4.**

The BSA Plan Settlements, including the TCJC Settlement and the Hartford Insurance Settlement.

**Topic No. 5.**

The Abuse Claims, including, but not limited to, (a) all Analyses of Abuse Claims; (b) the value of Abuse Claims; (c) all estimates of the numbers of Survivors and/or Perpetrators; and (d) insurance coverage for Abuse Claims.

**Topic No. 6.**

Any Indirect Abuse Claim You assert or may assert against the Debtors, including, but not limited to, the value or amount of such Indirect Abuse Claim.

**Topic No. 7.**

All Insurance Policies that provide, potentially provide, or have been alleged to provide coverage for Abuse Claims, including, but not limited to, the Applicable Insurance Policies.

**Topic No. 8.**

Reinsurance for the Applicable Insurance Policies.

**Topic No. 9.**

Your Liabilities Concerning each Insurance Policy that the Debtors are proposing or may propose to contribute to the Settlement Trust under the Plan.

**Topic No. 10.**

Your financial ability to satisfy Your obligations under the Applicable Insurance Policies.

**Topic No. 11.**

Any actual or proposed settlements of Your coverage obligations under the Applicable Insurance Policies.

**Topic No. 12.**

Payments (or lack thereof) for defense costs and/or indemnity that You made Concerning any Abuse Claims.

**Topic No. 13.**

Your denial or reservation of rights under any Applicable Insurance Policies Concerning any Abuse Claims, including, but not limited to, (a) reasons and bases for Your decision to deny coverage or reserve rights for the Abuse Claims and (b) facts upon which You based Your decision to deny coverage or reserve rights for the Abuse Claims.

**Topic No. 14.**

Settlements of Abuse Claims.

**Topic No. 15.**

Verdicts in favor of Abuse Claimants.

**Topic No. 16.**

Verdicts in favor of the Defense Concerning Abuse Claims.

**Topic No. 17.**

The IV Files.

**Topic No. 18.**

Any reserves that You contemplated, established, set, maintained, and/or changed Concerning Abuse Claims.

**Topic No. 19.**

Your financial ability to satisfy Your obligations under any Insurance Policies

**Topic No. 20.**

The INA Policies, including, but not limited to, (a) any obligation You may have to indemnify any liabilities arising under the INA Policies; and (b) payment, *vel non*, of liabilities arising under the INA Policies.

**Topic No. 21.**

Chubb's, INA Holdings', and/or Brandywine Holdings' financial contributions to You from 2011 to the present.

**Topic No. 22.**

The 1996 Transaction, including, but not limited to, the Insurance Commissioner of the Commonwealth of Pennsylvania's February 7, 1996, Order in *In re Plan of Restructuring of INA Financial Corporation, Bankers Standard Insurance Company, et al.*

**Topic No. 23.**

The 1999 Transaction, including, but not limited to, (a) the liabilities assumed by ACE in connection with the 1999 Transaction; (b) all payments made by INA Holdings Corporation to

INA Financial Corporation from the 1999 Transaction to the present; and (c) all payments made by INA Financial Corporation to INA Corporation from the 1999 Transaction to the present.

**Topic No. 24.**

Payments made under the GL87.

**Topic No. 25.**

Your most recent NAIC triennial examination

**Topic No. 26.**

Any tax sharing or tax allocation agreements to which You are a party or is included, either directly or indirectly, or that impact Your tax liabilities, including, but not limited to, any funds You have received by operation of any tax sharing or tax allocation agreement.

**Topic No. 27.**

The Dividend Retention Fund, including, but not limited to, payments to the Dividend Retention Fund.

**Topic No. 28.**

The Claims You assert against the Debtors, including all Claims described in the Proofs of Claim bearing the numbers 856, 982, 989, 6642, 8843, and 8781.

**Topic No. 29.**

Your handling, processing, adjusting, review, investigation, evaluation, acceptance, denial, reservation of rights, or other response to sexual abuse claims, including the Abuse Claims, under any Insurance Policy.

**Topic No. 30.**

Your policies, practices, and procedures Concerning valuing or evaluating sexual abuse claims, including Abuse Claims, that were filed after the expiration of any applicable statute of

limitations or were filed in jurisdictions where the statute of limitations with respect to sexual abuse claims may change.

**Topic No. 31.**

All discussions of the Debtors, the Insurance Policies sold by You to the Debtors, Abuse Claims, or the Debtors' claims for insurance coverage under Insurance Policies (whether or not regarding the Abuse Claims) of Your board of directors or managers, any committee or subcommittee thereof, any task force or working group thereof, or any of Your other executive task forces or working groups.

**Topic No. 32.**

Your interpretation of the Insurance Policies You sold to the Debtors and application thereof to claims for coverage for Abuse Claims.

**Topic No. 33.**

Your investigation, supervision, adjustment, and handling of Abuse Claims, including the existence or scope of insurance coverage for the Abuse Claims.

**Topic No. 34.**

The underwriting of the Insurance Policies You sold to the Debtors.

**Topic No. 35.**

The negotiations and drafting of (a) the Insurance Policies You sold to the Debtors and (b) any predecessor Insurance Policies issued by any of Your affiliates.

**Topic No. 36.**

The drafting of the forms used in drafting the Insurance Policies You sold to the Debtors or any predecessor Insurance Policies issued by any of Your affiliates.

**Topic No. 37.**

Your interpretation of any terms or conditions of the Insurance Policies You sold to the Debtors.

**Topic No. 38.**

All Documents that You produced to the TCC or any other Person in connection with the Bankruptcy Cases.

**Topic No. 39.**

Your determination Concerning who would testify on Your behalf in response to this Deposition Notice.

**Topic No. 40.**

Your document retention, storage, filing, and destruction procedures in effect from January 1, 2010 through the present.