

**FILED**

**2021 OCT 29 AM 9: 53**

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

October 22, 2021

Clerk of Court
U. S. Bankruptcy Court
District of Delaware
824 Market Street
Wilmington, DL  19801

### IN RE:   BOY SCOUTS OF AMERICA AND DELAWARE BSA LLC
### CHAPTER 11; CASE NO. 20-10343 (LSS)

Dear Clerk of Court:

Please file the enclosed:  [1] Notice of Filing Claimant #39's Verified Objections to Debtor's Motion for Entry of an Order Modifying the Automatic Stay on a Limited Basis Solely to the Extent Necessary to Facilitate Local Council SettlementContributions to the Settlement Trust Under the Plan; & [2] Claimant #39's Verified Objections to Debtor's Motion for Entry of an Order Modifying the Automatic Stay on a Limited Basis Solely to the Extent Necessary to Facilitate Local Council SettlementContributions to the Settlement Trust Under the Plan.

Thank you for your time and assistance.

Respectfully,

**FILED**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

2021 OCT 29  AM 9: 53

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

In re:

BOY SCOUTS OF AMERICA AND
DELAWARE BSA, LLC,

Debtors.

Chapter 11

Case No. 20-10343 (LSS)

(Jointly Administered)

## NOTICE OF FILING CLAIMANT #39'S VERIFIED OBJECTIONS TO DEBTOR'S MOTION FOR ENTRY OF AN ORDER MODIFYING THE AUTOMATIC STAY ON A LIMITED BASIS SOLELY TO THE EXTENT NECESSARY TO FACILITATE LOCAL COUNCIL SETTLEMENT CONTRIBUTIONS TO THE SETTLEMENT TRUST UNDER THE PLAN

COMES NOW CLAIMANT #39, pro se, and gives Notice of filing **Claimant #39's Verified**

**Objections to Debtor's Motion for Entry of an Order Modifying the Automatic Stay on a**

**Limited Basis Solely to the Extent Necessary to Facilitate Local Council**

**SettlementContributions to the Settlement Trust Under the Plan**, with service made by email

upon counsel for Debtors and Debtors in Possession as shown below:

ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
 Derek C. Abbott (No. 3376)
 Andrew R. Remming (No. 5120)
 Paige N. Topper (No. 6470)
 Email:  dabbott@morrisnichols.com
     aremming@morrisnichols.com
     ptopper@morrisnichols.com

 – and –

WHITE & CASE LLP
 Jessica C. Lauria (admitted pro hac vice)
 Email:  jessica.lauria@whitecase.com

- and –

WHITE & CASE LLP
    Michael C. Andolina (admitted pro hac vice)
    Matthew E. Linder (admitted pro hac vice)
    Laura E. Baccash (admitted pro hac vice)
    Blair M. Warner (admitted pro hac vice)
    Email:      mandolina@whitecase.com
             mlinder@whitecase.com
             laura.baccash@whitecase.com
             blair.warner@whitecase.com

Dated this 22nd day of October, 2021, at Buford, Georgia.



FILED

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE** 2021 OCT 29  AM 9: 53

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

In re:                                                Chapter 11

BOY SCOUTS OF AMERICA AND                    Case No. 20-10343 (LSS)
DELAWARE BSA, LLC,

                                                       (Jointly Administered)

                    Debtors.


**CLAIMANT #39'S VERIFIED OBJECTIONS TO DEBTOR'S MOTION FOR ENTRY**
**OF AN ORDER MODIFYING**
**THE AUTOMATIC STAY ON A LIMITED BASIS SOLELY TO THE**
**EXTENT NECESSARY TO FACILITATE LOCAL COUNCIL SETTLEMENT**
**CONTRIBUTIONS TO THE SETTLEMENT TRUST UNDER THE PLAN**


**COMES NOW CLAIMANT #39,** pro se, and objects to Debtor's October 20, 2021 Motion for

Entry of an Order Modifying the Automatic Stay on a Limited Basis Solely to the Extent

Necessary to Facilitate Local Council Settlement Contributions to the Settlement Trust Under the

Plan [Doc. 6749], and states the following upon direct personal knowledge under penalty of

perjury:

### PRELIMINARY COMMENTS & GENERAL OBJECTIONS

Claimant #39 obtained a copy of Debtor's motion to modify the stay via email on October 20,

2021, and immediately ascertained that the PDF copy served appeared to be incomplete.  Copy of

the motion as served on Claimant #39 is attached as Exhibit 1.

Claimant #39 contacted counsel for debtor via email to advise that the copy served appeared

incomplete, and to request that a complete copy be provided.  Counsel for debtor replied with a

copy identical to the first, stating that the document was filed with the Court as served.

*

If, in fact, the copy served upon Claimant #39 is the version filed with the Court, there is nothing for the Court to consider because there is no complete preliminary statement, nothing is specified as to the debtor's contingent interests in the assets of the Local Councils, no relief is specifically requested, and there is no basis for relief provided.  In each instance, all that appears on the document are brief fragments. No legal authority is cited, and none of the footnotes associated with inserts [3] through [6] are included.

## SPECIFIC OBJECTIONS

The root problem underlying the sex abuse scandal that no one is talking about is the organizational structure of the BSA.  The organizational structure is what needs to change.  What we really have here is a Pyramid Scheme.  If the BSA didn't have such great public relations folks and powerful friends in high places, any honest investigation would conclude it's a problematic operation, and this current motion helps to illustrate the point.

Claimant #39 worked in extremely close contact with the professional scout leaders for the BSA at three different camps, in three different local councils for over 8 years as a member of staff - 5 of those years as camp commissioner or program director.  He attended college as part of the American Humanics Foundation Program [AHFP] for training so-called "professional scouters," and graduated from the BSA's National Camp Leadership Training School.  He also worked at the BSA's National Training Center in Mendham Township, NJ, making television commercials for the BSA.  In addition, he served as a scoutmaster, institutional representative [for a chartered sponsoring organization], and as a district commissioner.

Virtually none of the AHFP classes at Missouri Valley College in the late sixties had anything

*

to do with the scouting program [there was one class in camp leadership].  The primary focus
was on fundraising and what we would today call human resources and assets management.
Those who felt like more emphasis needed to be placed on the basics of scouting were bluntly
informed by the AHFP Director [who was a former scout executive from Chicago] that they were
not being trained to become better at scouting - they were being trained to manage the volunteers
who were the real "professional scouts."  A check with the web site for Missouri Valley College
will reveal that the primary focus of those being trained as professional scouters as part of the
current version of the AHFP is fundraising and accumulation of assets.

Over Claimant 39's thirty years direct contact with the BSA, the common refrains heard from
district executive level professional scouts was that their jobs had precious little to do with
scouting, and everything to do with fundraising and accumulation of assets - and that they were
woefully underpaid while their bosses were overpaid.  [As noted below, the underpaying of district
executives is no longer an issue.]  Remove the fundraising and accumulation of assets from the
picture, and there's a chance that the scouting program could return to its roots as envisioned by
Lord Baden-Powell.  [See comments online from a 2006 article posted at Daily Kos - long before
the bankruptcy:  https://m.dailykos.com/stories/2006/1/7/176830/-]

The National Council of the Boy Scouts of America [BSA] regularly cites the fact that it is a
Congressionally Chartered organizaion.  The current motion again illustrates why the
Congressional charter needs to be revoked, and it needs to permanently go out of business.  Period.
No ifs.  No ands.  No buts.  Whatever vital national interest scouting as a program potentially
provides has been outweighed by the organization's century of failures to protect America's youth,
and its continuing insistance upon self-preservation of assets over all other considerations.

*

Enough.  No more.

The local councils of the BSA are all chartered by the BSA, with the revocation of the Congressional Charter, all local charters would become null and void, therefore all local councils would also cease to exist.  The "legal-make-believe" concept that the local councils are somehow separate entities is ludicrous given the necessity of each such council to possess a charter granted by the BSA.  Congress chartered only one BSA - not 251 BSAs.  All 251 local councils operate under the authority of that one Congressional Charter.  No national charter = no local council. Period.

The IRS form 990 filed by the Patriot's Path Council, BSA covering the year [2019] in which Claimant #39 filed his lawsuit in NJ very clearly states at line 1 [Briefly describe the organization's mission or most significant activities:]  "PROVIDE YOUTH SERVICES THROUGH THE EXECUTION OF THE CHARTER OF THE NATIONAL COUNCIL BOY SCOUTS OF AMERICA."  This IRS filing gives lie to the BSA's continual obfuscation concerning the relationship with the local councils and their assets - again - illegal pyramid scheme.  The current motion is yet another example of this fraudulent relationship between the BSA and its local councils.

Since all assets of these local councils were obtained on the premise that the assets were for local use for scouting programs of the BSA, those assets either properly belong to the overall organization, or they were fraudulently obtained.  The assets were donated to support scouting - the concept.  It is extremely relevant to the discussion to note that the founder of Scouting was adamant that scouting ought not be permitted to become a fund-raising, assets-accumulating organization run by paid professionals.

*

The entire accountability system utilized throughout the history of the BSA is a function of its organizational structure, and is a major part of the problem. THERE IS NO WAY TO MAKE ANY ORGANIZATION WITH A STRUCTURE LIKE BSA's SAFE FOR KIDS. N-O-N-E. The national council controls the general program and the commissioning of professional scouts, but has no relationship with the chartered organizations which provide the adults who deliver those programs except through its own chartering relationship with the local councils. Those local councils have no real authority over the decisions of the chartered sponsoring organizations which provide those adults and support the activities of the actual scout troops. The truth of the matter is that for the national council and local councils it is, and always has been about money and assets. There is close to zero interaction between the "professional scouts" and actual scouts.

Imagine that the bankruptcy court were to decide to sponsor a scout troop. The decisions about where meetings would be held would be made by the committee of individuals approinted by the judge - the head of the sponsoring organization. That committee would then select adults to supervise the activities - with only a few of those adults being subjected to approval by the local council. This is why the "72 hour rule" [which permits adults who have not been vetted to participate in scouting events up to 72 hours in length - essentially weekend campouts] exists - and even if it didn't exist, neither the BSA nor the local councils has any way to check or enforce any stricter standards. Not only that, we all know that most of the abusers were highly respected men in the community. The solution lies not with the BSA, but at a much "lower" level.

The committee mentioned above would also raise all the funds necessary for the troop to operate - including purchasing all equipment necessary to carry out scouting programs. The ONLY things the bankruptcy court troop would absolutely have to rely on the local council to

*

provide would be the uniform badges [the uniforms themselves are sold under license with BSA by various merchants] and certificates related to ranks and advancement. The bankruptcy court troop would not need to ever use the local council's camp [numerous troops have never used those camps], nor would it have to participate in local council events such as camporees or expositions.

In other words, as far as the putative bankruptcy court troop would be concerned, it wouldn't matter whether the local council owned or operated a summer camp, or anything else beyond having a location where those uniform badges and certificates could be obtained, and in today's world those could all be handled through fulfillment centers. In FACT, many of the assets of the BSA and local councils are relatively recent additions which are ostensibly designed to enhance the experience which is always and everywhere supposed to be provided by the scout troops themselves, and which are not absolutely essential for success of the mission. [For example, there's no reason why summer camps couldn't be conducted at state or federal parks, etc. That, by the way, was how scouting operated to begin with.]

As noted above, the BSA and its 251 local councils operate as a pyramid scheme which is designed to maximize accumulatiion of assets, and following the pattern of criminal enterprises with a legitimate veneer, there is a gross propensity to undervalue assets for tax purposes. Again referring to the 2019 IRS 990 form for Patriot's Path Council, BSA, it is claimed that the total value of real estate owned is $6,712,837. REALLY? Let's see: Camp Mt. Allamuchy: 977 acres of prime real estate along Interstate 80 with two lakes, a 300 man winterized professional kitchen dining lodge, a year-round medical cabin, 8 large cabins with kitchens, an office building with conference room, 2,500 square foot modern ranch-style ranger's house, large warehouse and

*

maintenance barn, multiple boat and swimming docks, and all the various scout activity areas. The average value of undeveloped land nearby exceeds $10,000 per acre. The very least Allamuchy is worth is over $10,000,000 - almost twice what was reported as the total. BUT, the council also owns another 450 acre camp in an even more valuable part of the state - AND - a 1,250 acre camp with a 250 acre lake in the Adirondack Mountains of upstate NY - AND - a large "service center" in the middle of some of the most expensive real estate in the nation. In other words, these fine upstanding developers of America's youth have only misled the IRS by something in the neighborhood of a few hundred percent. Perhaps the local councils are really subsidiaries of la familia Soprano. Local Council #358 obviously has the same accountants.

Elsewhere in the various documents filed by debtor, the Court has been provided with an accounting of the proposed contributions of the various local councils to the settlement trust. Once again referring to Local Council #358, the BSA would have the Court believe that a local council located in a part of New Jersey with two of the wealthiest counties [Morris and Somerset] in the United States can only afford a 3.7 million dollar contribution to the settlement trust, while the Local Councils in the rural southeast of the United States are able to contribute roughly the same amount. Anyone who believes that a local council with nearly 2,700 acres of the most expensive real estate in this country has a net worth equal to a local council from rural Alabama is a prime candidate for purchasing a bridge between Manhattan Island and Brooklyn.

The truth of the matter is that according to it's 2019 IRS form 990, Local Council #358 has a payroll of over a million dollars per year for a staff of six "professional scouters." THAT is why this local council doesn't report its true worth, and why it chooses to ignore the fact that it has over 200 pending sexual abuse claims. It is also why the BSA wants to continue to obfuscate

*

concerning the true extent of its interests in the assets of the local councils.  As noted above, it is simply not true that the local councils are independent corporations.  That is a legal fiction maintained for hiding assets and deflecting legal liability.  Council #358, like all other local councils, is technically incorporated in the state where it is located [in this case, New Jersey], but by the terms of its incorporation, it exists solely to "provide youth services through the execution of the charter of the National Council Boy Scouts of America."  Local Councils are not free to offer some other unspecified youth program, either by the terms of their incorporation, or by the terms of their charters from the BSA.

An additional proof of the fraudulent relationship between the BSA and its local councils is revealed by reviewing the history of the council Claimant #39 belonged to as a scout.  Morris-Sussex Area Council was established for Morris and Sussex Counties in New Jersey in 1936.  The BSA's National Training Center was established in the geographical area of this council in Mendham Township of Morris County.  It was, in fact, within the same district - the Morristown District, as Claimant #39's troop.  The council initially rented office space in downtown Morristown until it decided to build a free-standing "service center" in Randolph Township, in the nortwestern part of Morris County in the late 1960s.  The reason provided was that real estate costs in the southeastern parts of the county were prohibitive, and the scouting membership demographic was moving in that direction.  The council owned one 997 acre camp [Mount Allamuchy Scout Reservation] in Stanhope, in Sussex County, which hosted approximately 2,400 scouts during an 8 week summer camping season each year.  The BSA forcibly merged the Morris-Sussex Area Council with the Watchung Area Council, located in Middlesex and Union Counties in 2000.  This merger was not sought by either of the putative NJ corporations.  It was dictated by the BSA due

*

to declining participation in scouting, and a desire to protect and preserve assets. The new council [Patriots' Path] acquired an additional 1,700 acres of real estate associated with two more scout camps. Camp Allamuchy, meanwhile, reduced it's summer camping season by two weeks, and reduced the numbers of campers in attendance during those sessions. If the local councils were independent corporations as asserted by the BSA, how was it that two local councils in one of the wealthiest parts of the country had no say concerning their merger? A further proof is found in the BSA's dissolution of the Central New Jersey Council in 2014. All scouting operations in the Somerset County portion of of the council were reassigned to Patriots' Path Council #358. The pretense that the BSA is not the true owner of all the assets is belied by the BSA's ability to move assets between councils whenever it is convenient for the BSA to do so.

The BSA currently seeks the Court's blessing and imprimatur on its fictitious relationship between itself and the local councils - ostensibly so that these entities established and controlled by the BSA can work out the details of assigning the portions those supposedly independent entities want to contribute towards cleaning up the messes they themselves enabled to occur. It never ceases to amaze how it is that when it is convenient for the BSA to move assets around and merge [or dissolve] local councils, it has all the power and authority necessary, but whenever any of those assets are threatened with legal liability, the poor little BSA has no power or authority whatsoever over those big bad local councils. It is this fraudulent pyramid scheme structure that the BSA seeks to preserve, and seeks the Court's complicity in maintaining.

In spite of the periodic public relations motivated "we feel your pain" statements, the real truth about how the BSA regards the 82,200 sexual abuse victims is illustrated by the so-called "Annual Report to Congress" submitted this year by the BSA. For an organization which has declared

*

bankruptcy, and is in the middle of the largest child sex abuse scandal in the history of the nation to not even make a passing reference to these "minor details" in its Congressionally mandated annual report is almost unbelievable, but what can be said for a Congress that doesn't have anything to say in response except "good job." The organization is broken. Congress owns it, or at least ought to. Congress needs to revoke the charter in order to bring this disaster to an expeditious end. Someone needs to help Congress wake up. In the meantime, the Court needs to not further enable the BSA in its refusal to acknowledge that the jig is up - the pyramid scheme organizational structure can no longer be used as a justification or defense for the accumulation of assets at the expense of those children whose lives are forever destroyed.

The BSA has perpetrated a fraud on the American people and this Court. Nothing in the original concept of scouting requires a pyramid scheme organizational structure as currently exists in the United States. In fact, the BSA structure is precisely what the founder of scouting warned against. He specifically did not want to see the creation of a body of paid "professionals" who do nothing but raise funds and accumulate assets. Lord Baden-Powell's concept envisioned all the same programs and activities, but placed all oversight and control at the sponsoring organizational level, and precluded the accumulation of assets such as camps or service centers. Liquidate all of those assets, and Claimant #39 submits that both the sponsoring organizations and insurers would be a whole bunch more interested in resolving the outstanding sexual abuse claims because both are a whole bunch more interested in protecting the kids than anyone else. The real obstacle to resolving the sexual abuse claims isn't recalcitrant insurance companies, or reluctant sponsoring organizations, it is the BSA and its pyramid scheme organizational structure.

## **CONCLUSION**

\*

The Court should deny Debtor's October 20, 202 Motion for Entry of an Order Modifying the

Automatic Stay on a Limited Basis Solely to the Extent Necessary to Facilitate Local Council

Settlement Contributions to the Settlement Trust Under the Plan [Doc. 6749], because it is both

legally insufficient as served, and it seeks the Court's blessing and imprimatur to continue

prepetrating the fraudulent pyramid organizational structure as a necessary factor for resolution of

this case.

Under penalty of perjury,
this 22nd day of October, 2021.

*

**EXHIBIT 1**

*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

Chapter 11

BOY SCOUTS OF AMERICA AND
DELAWARE BSA, LLC,[1]

Case No. 20-10343 (LSS)

(Jointly Administered)

Debtors.

Hearing Date: November 10, 2021 at 10:00 a.m. (ET)  Objection Deadline: November 3, 2021 at 4:00 p.m. (ET)

## DEBTORS' MOTION FOR ENTRY OF AN ORDER MODIFYING THE AUTOMATIC STAY ON A LIMITED BASIS SOLELY TO THE EXTENT NECESSARY TO FACILITATE LOCAL COUNCIL SETTLEMENT CONTRIBUTIONS TO THE SETTLEMENT TRUST UNDER THE PLAN

Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations

that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the

"Debtors"), submit this motion (this "Motion"),[2] pursuant to sections 105(a) and 362(d)(1) of title

11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rule 4001 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 4001-1 of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District

of Delaware (the "Local Rules"), for entry of an order, substantially in the form attached hereto as

Exhibit A (the "Proposed Order"), modifying the automatic stay on a limited basis solely to the

extent necessary to facilitate Local Councils' contributions of cash or other property to the

Settlement Trust in accordance with the Plan.  In support of this Motion, the Debtors respectfully

state as follows:

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms that are used but not otherwise defined herein shall have the meanings ascribed to such terms in the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [D.I. 6443] (as such may be amended or modified from time to time, the "Plan").

*

## PRELIMINARY STATEMENT

\*

U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to  the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

*

the Disclosure Statement.  Currently, Local Councils are expected to contribute approximately

$408 million of cash to the Settlement Trust on the Effective Date.  *See* Disclosure Statement, Ex.

C.  The Plan further provides that the Debtors and the Local Councils will establish an appropriate

escrow mechanism to ensure that the cash to be paid to the Settlement Trust by Local Councils on

the Effective Date can be paid in a timely manner.  *See id.*, Art. IV.D.1. Accordingly, Local

Councils will be required to transfer at least $300 million of cash (and will likely contribute more

than $400 million of cash) into an escrow account before Effective Date.[3]

**II. The BSA's Contingent Interest in Local Council Assets**

\*

*

modifications that are necessary because a charitable purpose has become "unlawful,

impracticable, impossible to achieve, or wasteful."  *See id.*, Article Four, Sections 412 ("equitable

deviation")[4] and 413 ("Cy Pres").[5]   In these areas, among others, interested parties may petition a

court of competent jurisdiction to amend or modify a trust to address the particular circumstances

presented.  Doing so provides finality to the issue and gives a trustee charged with administering

trust assets protection from later claims that the trustee violated a fiduciary duty or acted contrary

to the proper terms of the trust.  Absent specific authorization in underlying trust documents to

fund a bankruptcy settlement, most prudent trustees could not contribute a portion of the trust

corpus for which they are responsible without the prior approval of a state court.

## **RELIEF REQUESTED**

*

similar relief) is for the exclusive purpose of making the Local Council's contribution to the Settlement Trust.[6]

## BASIS FOR RELIEF

*

(holding that debtor's contingent interest in funds was property of the estate and a creditor's attempt to obtain possession of the funds was a violation of the stay order).

\*

modification of the stay.  On the contrary, the Debtors and their estates could face great prejudice if, as a result of the automatic stay, Local Councils were unable to make the Local Council Settlement Contribution pursuant to the Plan.

*

has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the

nature of the relief requested herein, no other or further notice need be given.

## WAIVER OF BANKRUPTCY RULE 4001(a)(3)

*

Dated:  October 20, 2021
      Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Paige N. Topper*

Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@morrisnichols.com
       aremming@ morrisnichols.com
       ptopper@ morrisnichols.com

– and –

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email: mandolina@whitecase.com
      mlinder@whitecase.com

*

laura.baccash@whitecase.com
blair.warner@whitecase.com
ATTORNEYS FOR THE DEBTORS AND
DEBTORS IN POSSESSION

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE



In re:                                                    Case No:  20-10343 (LSS)

BOY SCOUTS OF AMERICA AND                                 Chapter:  11
DELAWARE BSA, LLC,
                        Debtors.                          (Jointly Administered)

---

## CERTIFICATION OF SERVICE

I, Frank Joseph Schwindler, am Claimant #39 in this case, and am representing myself.

On October 23, 2021, I sent a copy of <u>Claimant #39's Verified Objections to Debtor's</u> <u>Motion for Entry of an Order Modifying the Automatic Stay on a Limited Basis Solely to the</u> <u>Extent Necessary to Facilitate Local Council SettlementContributions to the Settlement Trust</u> <u>Under the Plan</u> to the parties listed in the chart below.

I certify under penalty of perjury that the above documents were sent to counsel listed below using the mode of service indicated:  Email.

*

Date:  October 22, 2021                                    _____
       Buford, Georgia                                       Signature


ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
       Derek C. Abbott (No. 3376)
       Andrew R. Remming (No. 5120)
       Paige N. Topper (No. 6470)
       1201 North Market Street, 16th Floor P.O. Box 1347
       Wilmington, Delaware 19899-1347
       Telephone:  (302) 658-9200
       Email:       dabbott@morrisnichols.com
                   aremming@morrisnichols.com
                   ptopper@morrisnichols.com


       – and –

WHITE & CASE LLP
       Jessica C. Lauria (admitted pro hac vice)
       1221 Avenue of the Americas
       New York, New York 10020
       Telephone:  (212) 819-8200
       Email:       jessica.lauria@whitecase.com


       - and –

WHITE & CASE LLP
       Michael C. Andolina (admitted pro hac vice)
       Matthew E. Linder (admitted pro hac vice)
       Laura E. Baccash (admitted pro hac vice)
       Blair M. Warner (admitted pro hac vice)
       111 South Wacker Drive
       Chicago, Illinois 60606
       Telephone:  (312) 881-5400
       Email:       mandolina@whitecase.com
                   mlinder@whitecase.com
                   laura.baccash@whitecase.com
                   blair.warner@whitecase.com

*

*