**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | ) ) ) | Case No. 20-10343 (LSS) |
| | ) | (Jointly Administered) |
| Debtors.[1] | ) ) | |
| | ) | **Related Docket Nos. 6380, 6598** |

**REPLY IN SUPPORT OF MOTION OF MARC J. BERN & PARTNERS LLC
TO QUASH SUBPOENA TO PRODUCE DOCUMENTS
ISSUED TO KLS LEGAL SOLUTIONS, LLC**

Marc J. Bern & Partners, LLP ("Bern & Partners"), by and through its undersigned counsel, submits this reply in support of its *Motion to Quash Subpoena to Produce Documents Issued to KLS Legal Solutions, LLC* (the "Motion to Quash") [D.I. 6380].

1.  KLS Legal Solutions, LLC ("KLS") was formed in 2017 for the purpose of providing paralegal and legal assistant services for and at the direction of the attorneys in Bern & Partners' Pennsylvania office. For these cases, KLS was tasked by the Bern & Partners attorneys to contact clients and assist in the preparation of the proofs of claim forms. KLS employees continue to provide services in these cases for Bern & Partners attorneys and their clients. At all times, the work done by KLS employees is on behalf of and at the express direction of the Bern & Partners attorneys.

2.  Century wants KLS to hand over its communications with Bern & Partners attorneys, the details surrounding client intake procedures, and communications with clients

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

surrounding the claim forms that were ultimately submitted – among many other requests.[2] Century's Objection to the Motion to Quash relies on a misunderstanding (or mischaracterization) of the nature of the relationship between Bern & Partners and KLS and the role KLS plays for Bern & Partners attorneys and their clients in these cases.  For example, Century casts KLS as a mere "third-party vendor" – not the integral agent to the Bern & Partners attorneys that it is.  Century also derides Bern & Partners attorneys' handling of the proof of claim forms, based solely on innuendo and conspiracy, in hopes of making its discovery requests somehow relevant.  Century seems intent on challenging all claim forms and all efforts behind those claim forms and believes Century's mistrust of the survivor claim forms submitted in these cases should somehow eviscerate well-established privileges and protections.  There can be no doubt that the work performed by KLS on behalf of and at the direction of Bern & Partners attorneys and their clients is subject to the protections of the attorney client privilege and work product doctrine.  And despite Century's assertions to the contrary, the documents sought are not relevant to the actual issues in the cases.  This Court should quash the subpoena issued to KLS.

      A.      **Communications and Documents Sought from KLS are protected by the Attorney-Client Privilege and Work Product Immunity.**

      3.      KLS, working at the direction of the Bern & Partners attorneys, communicated with Bern & Partners clients and assisted in the preparation of the proof of claim forms to be submitted in these cases.  KLS's communications and KLS's work product in these cases, all of which resulted from their work on behalf of Bern & Partners attorneys and their clients, are privileged.

      4.      Century wrongfully contends that the attorney-client privilege does not apply because KLS employees are third parties, not agents of Bern & Partners.  To the contrary, as

---

[2] Notice of Subpoena to Produce Documents Pursuant to Federal Rules of Civil Procedure 34 and 45, attached hereto as **Exhibit 1**.

detailed in the Supplemental Declaration of Joseph Cappelli (attached hereto as **Exhibit 2**) and the Declaration of Karen Studebaker Cappelli (attached hereto as **Exhibit 3**), KLS was formed in 2017 for the purpose of providing dedicated legal assistance to the Bern & Partners' Pennsylvania office. Since KLS's formation, KLS employees have provided paralegal and legal assistant services exclusively to Bern & Partners. [Ex. 2, ¶ 8]. These services cover various litigations in which Bern & Partners represents clients. *Id.* The services performed by KLS typically include client interviews, gathering and review of documents from clients, preparation of case pleadings, and electronic filing of pleadings and other court documents. *Id.* KLS employees are serving as agents of Bern & Partners when they obtain information from clients and in preparing claim forms for those clients.

5. Both a paralegal's communications with a client on behalf of an attorney and a paralegal's work product at the direction of an attorney are privileged. It simply does not matter that KLS employees served as an intermediary between the Bern & Partners attorneys and their clients. "What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice *from the lawyer.*" *United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982) (quoting *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) (emphasis in original). "[T]he attorney-client privilege 'must include all other persons who act as the attorney's agents.'" *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D 125, 134 (E.D. Tex. 2003) (quoting *Kovel*, 296 F.2d at 921). Here, every communication between KLS and Bern & Partners or Bern & Partners' clients was carried out in furtherance of the clients' claims in these cases.

6. The work product doctrine also expressly precludes Century's discovery. This doctrine has been codified into Federal Rule of Civil Procedure 26(b)(3), which states: "Ordinarily, a party may not discover documents and tangible things that are prepared in

anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3). The Third Circuit has noted that the work product doctrine was articulated in the Supreme Court's *Hickman v. Taylor* decision, which states in part: "Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests." *In re Cendant Corp. Securities Litigation*, 343 F.3d 65 (3d Cir. 2003), citing *Hickman v. Taylor*, 329 U.S. 495, 510-11, 67 S. Ct. 385, 91 L.Ed. 451 (1947). This protection extends beyond materials prepared by an attorney to include materials prepared by an attorney's agents, such as KLS here. *Cendant* at 662, 663, citing Fed. R. Civ. P. 26 Advisory Comm. Notes, 1970 Amendment.

7. Rule 26(b)(3) established two tiers of protection: first, work prepared in anticipation of litigation by an attorney or his agent is discoverable only upon a showing of need and hardship; second, "core" or "opinion" work product that encompasses the "mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation" is "generally afforded near absolute protection from discovery." *Cendant* at 663, citing *In re Ford Motor Co.*, 110 F.3d 954, 962 n. 7 (3d. Cir. 1997). This matter concerns primarily the first level of protection. The Third Circuit in *Cendant* noted that "the work product doctrine is distinct from and broader than the attorney-client privilege" [*Cendant* at 666, citing *United States v. Nobles,* 422 U.S. 225, 238 & n. 11, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)] and that the work product doctrine extends to materials compiled by a non-attorney,

who, as the 'agent' of a party or a party's attorney, assists the attorney in trial preparation. *Cendant* at 666.

8.   KLS provides paralegal services to the attorneys at Bern & Partners. Whether interviewing clients, compiling client information for use in proof of claim forms, or preparing claim forms for submission, the documents created by KLS were all prepared at the behest of counsel and in furtherance of the provision of legal services. These documents belong to the clients and are the work product of Bern & Partners.

**B.   No Waiver of Privilege or Immunity has Occurred.**

9.   Century's assertion that any privilege has been waived is not supported by law or fact. KLS simply is not a "third party" with respect to a privilege waiver argument. In arguing that KLS is a third-party triggering a waiver of privilege, Century relies primarily on *Ravenell v. Avis Budget Grp., Inc.*, 2012 WL 1150450 (E.D.N.Y. Apr. 5, 2012), where the New York District Court determined that documents prepare by a third-party auditor, not prepared in anticipation of litigation, were disclosable. Century Obj., pp. 9-10. The *Ravenell* case notes, however, that an exception to the privilege waiver rule exists where disclosures to a third party are necessary to facilitate the communication between attorney and client. *Ravenell* at 2. *Ravenell* notes that this exception was established in the Second Circuit in *United States v. Kovel*, 296 F.2d 918 (2d. Cir. 1961) which stated "[w]hat is vital to the privilege is that the communications must be made *in confidence* for the purpose of obtaining legal advice *from the lawyer. Id.*, citing *Kovel* at 922. The *Kovel* case also noted:

> The complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others; few lawyers could now practice without the assistance of secretaries, file clerks, telephone operators, messengers, clerks not yet admitted to the bar, and aides of other sorts. 'The assistance of these agents being indispensable to his work and the communications of the client being often necessarily committed to them by the

5

      attorney or by the client himself, the privilege must include all the persons who act as the attorney's agents.

*Kovel* at 921, citing 8 Wigmore, Evidence, §2301; Annot., 53 A.L.R. 369 (1928). The exception for agents of the attorney fully applies to KLS, who obtained information from Bern & Partners' clients for the purpose of preparing proof of claim forms for review and filing by Bern & Partners on their clients' behalf.

      10.    But Century's waiver argument also fully ignores the work product immunity applicable to these documents, which as previously noted, is broader than the attorney client privilege.[3] *Cendant, supra*, at 666. Work product immunity can only be waived when "a party discloses [protected] information to a third party who is not bound [to maintain its confidence], or otherwise shows disregard for the [protection] by making the information public." *Skynet Electronic Co., Ltd v. Flextronics International, Ltd.*, 2013 WL 662374 (N.D.Ca. Dec. 16, 2013), citing *Bittaker v. Woodford*, 331 F.3d 715, 719, 720 n.4-6 (9th Cir. 2003) (holding that disclosure of legal memorandum to administrative assistant for non-attorney patent agent did not waive its work product immunity). The Court in *Skynet Electronics* noted that "the great weight of authority holds that disclosure of work product to individuals who share a common interest with the disclosing party does not constitute waiver." *Skynet Electronics* at 3. Even where a disclosure to a third person was sufficient to create waiver of the attorney-client privilege, there was still not sufficient waiver of work-product immunity. *Id.*, citing *Ceco Steel Products Corp. v. H.K. Porter Co.*, 31 F.R.D. 142, 143 (N.D. Ill. 1962). There can be no question that KLS employees, who provide litigation support assistance exclusively to Bern & Partners and its

---

[3] While the concurring opinion in *Cendant* notes that the attorney-client privilege operates to protect from disclosure communications among the client, counsel, and a third party who was assisting in the formulation of legal advice, *Cendant* at 668, the *Cendant* opinion did not ultimately reach the waiver issue with respect to the attorney client privilege. This Court need not reach it either, given the work product immunity applicable to the KLS documents and communications.

clients while working within the same office suite, share a common interest and privilege with Bern & Partners with respect to the clients they assist.

      C.      **<u>No valid basis exists for Century's Proposed Discovery.</u>**

11.      Century's Objection is littered with misstatements of key facts. Century relies on hyperbole to cast a shadow over the claim forms submitted in these cases and to manufacture some basis for its relevant assertion. In particular, Century's contentions [with Bern & Partners responses] include the following:

    a)    *"Mr. Cappelli admits that he had no client authority to file the Proofs of Claim."* [Objection, p. 1]. Bern & Partners became obligated to pursue and file proofs of claim upon being retained by their clients to do so, unless they determined that there was no valid basis for such a claim. [Supp. Decl. at ¶¶18-19][4].

    b)    *"Mr. Cappelli was so removed from the POCs that he apparently did not even file them himself."* [Objection, p. 1] Bern & Partners used paralegals and legal assistants to submit claims electronically to Omni; the electronic submission of claims is not an attorney function. [Supp. Decl. at ¶17].

    c)    *"Mr. Cappelli does not assert that either he or anyone at Bern conducted any pre-complaint investigation."* [Objection, p. 1] This allegation is completely unfounded; in addition, no such assertion is even relevant to the issue of whether the documents prepared and utilized by its contract paralegals and legal assistants are protected by the attorney client privilege and the work product doctrine.

    d)    *"Mr. Cappelli now claims that he amended or withdrew these defective claims – a proposition for which he offers absolutely no evidentiary support."* [Objection, p. 1.] The facts summarizing the amendment and withdrawal of claims is summarized in paragraph 10 of the Motion to Quash, which Mr. Cappelli verified through his September 27, 2021 Declaration attached to the Motion. For each proof of claim form that Mr. Cappelli signed on behalf of a firm client prior to the bar date, Bern & Partners continued to request a signed claim form from the client. Amended proof of claim forms were subsequently submitted to Omni where signed forms were received. Where Bern & Partners did not receive client signed proof of claim forms, such claims were withdrawn. There are two claim forms with Mr. Cappelli's signature that have not been withdrawn or amended. One is for a client who is now deceased. The other involves form signed by

---

[4] References to the Supplemental Declaration of Joseph Cappelli are designated as "[Supp. Decl. at ¶ __]". The information set forth in the Supplemental Declaration of Mr. Cappelli is also supported by the Declaration of Karen L. Studebaker, the founder of KLS.

7

the client that has not been received by the firm as of the date of this pleading. [Supp. Decl. at ¶¶21-24].

e)   *The amendments and withdrawals of claims took place only after Century filed its Rule 2004 Motion*. [Objection, pp. 1-2]. The signature pages for the amended claims bear signatures from back as far as October 2020 and continuing through successive months, indicating that many were signed well before Century filed its motion. These signed claims were sought and obtained from clients on a rolling basis immediately following the bar date. [Supp. Decl. at ¶ 22].

f)   *KLS's paralegal services are at most similar to creating "an online platform for the dissemination and collection of questionnaires" and "summariz[ing] the collected data in a chart…"* [Objection, pp. 13-14]. There is no support provided for this description and it does not describe the litigation support services that KLS employees provided to Bern & Partners. KLS employees provide paralegal and legal assistance to, on behalf of, and at the direction of the attorneys at Bern & Partners. [Supp. Decl. at ¶¶ 8,11].

12.   Under applicable bankruptcy rules, the proof of claim forms signed under penalty of perjury by the claimants who are Bern & Partners' clients constitute evidence that those claims are entitled to validity as a prima facie claim, based on the statements included therein. *In re Allegheny International, Inc.*, 954 F.2d 167 (3d. Cir. 1992). Century attempts to justify its discovery requests by arguing that because a batch of claims was submitted at or close to the bar date or may have at one point contained an attorney signature, Century should be entitled to inspect the preparation of all claims submitted on behalf of clients of Bern & Partners. This is not the law, and it confuses the timing and circumstances of the submission of the claim with the preparation of the claim itself. Century's accusations do not make the documents they seek relevant to any claims in these cases and do not create a basis to penetrate the attorney client privilege or work product immunity applicable to KLS employees, their documents, and their communications.

8

**D.    Bern & Partners has standing to protect its clients' privilege and its own work product.**

13.    Century's argument that Bern & Partners lacks standing to quash the KLS Subpoena is misguided. A party, although not the person to whom the subpoena is directed, has standing to file a motion to quash or modify under Federal Rule of Civil Procedure 45(d)(3) if it has a personal right or privilege in the subject matter of the subpoena or a sufficient interest in it. *See Total Rx Care, LLC v. Great Northern Insurance Company, 318 F.R.D. 587 (N.D. Tex. 2017), citing Ass'n of Am. Physicians & Surgs., Inc. v. Tex. Med. Bd.*, No. 5:07CV191, 2008 WL 2944671, at *1 (E.D. Tex. July 25, 2008). Here, the information and documents have always remained in the possession of Bern & Partners. All documents and information prepared or obtained by KLS is stored on Bern & Partners' servers. *See* Supplemental Declaration of Joseph Cappelli, ¶ 12; Declaration of Karen Cappelli, ¶12. Regardless, Bern & Partners has standing to protect the work product immunity of the communications and documents of the litigation support personnel it has hired to assist it in meeting the needs of its clients. It also has inherent authority from its clients to protect their interests with respect to the attorney client privilege.

**Conclusion**

WHEREFORE, Bern & Partners respectfully request that the Court enter an order quashing the KLS Legal Solutions Subpoena and granting such other and further relief and the Court deems just and proper.

Date:  October 29, 2021
      Wilmington, DE

**SULLIVAN · HAZELTINE · ALLINSON LLC**

<u>*/s/  William D. Sullivan*</u>
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Fax: (302) 428-8195
Email: bsullivan@sha-llc.com
       whazeltine@sha-llc.com

*Attorneys for Marc J. Bern & Partners LLP*