

Michael A. Kaplan
**Partner**

One Lowenstein Drive
Roseland, New Jersey 07068

T: 973.597.2302
F: 973.597.2303
E: mkaplan@lowenstein.com

November 3, 2021

Chief Judge Laurie Selber Silverstein
United States Bankruptcy Court, District of Delaware
824 North Market Street, 6th Floor
Wilmington, DE 19801

**Re:**   *In re Boy Scouts of America and Delaware BSA, LLC*, No. 20-10343 (LSS)

Dear Judge Silverstein:

This firm represents Verus, LLC ("Verus"), and we write in opposition to Century Indemnity Company's ("Century") letter seeking to compel Verus to produce privileged and irrelevant information in response to Century's subpoena (the "Subpoena") to Verus (*see* [D.I. 6813] ("Century Letter").

## PRELIMINARY STATEMENT

Unable to argue the facts, or even abide by this Court's rules on discovery letters, Century resorts to mischaracterizing the nature of Verus's work in this case in order to justify its fishing expedition. Facts matter though. And the facts, as well as the law, require a swift denial of Century's motion to compel.

Verus was retained by certain law firms (the "Law Firms") to provide specialized services necessary for those attorneys to provide legal advice. Verus's experts (including social workers and nurses), were uniquely qualified to interview sexual abuse survivors ("Survivors") in a sensitive manner and worked under the direction of the Law Firms to complete and submit proofs of claim forms ("POCs") using the information obtained. However, the unique nature of the services provided does not change the fact that Verus acted as an agent of the Law Firms, like an interpreter, paralegal, or interviewer—which the Third Circuit has recognized fall within the attorney-client privilege. The documents that emanated from this relationship, such as draft POCs, are similarly protected from disclosure as work product.

Century's speculation that the claims were not properly vetted is not only incorrect, but has also been mooted with the filing of amended claims that contain Survivor signatures instead of attorney signatures. Century's allegations regarding "invalid or questionable claims" that will cause a "manipulation of the voting process" do not justify setting aside decades of legal precedent and violating the sacrosanct attorney-client privilege. In fact, the protection of attorney-client privilege is even more important in cases like this one, where sexual abuse Survivors, struggling to come forward, place immeasurable trust in their attorneys when communicating their stories of horrific

and traumatic abuse. Century's attempt to invade that trust should be rejected. Not simply because the legal justification to undermine the fundamental privileges that attorneys rely on does not exist, but also because Survivors should be empowered, not chilled, to come forward and obtain the justice they deserve. As such, Century's request that Verus be compelled to provide discovery should be denied.

## BACKGROUND

Verus was engaged by the Law Firms to interview sexual abuse Survivors interested in filing a POC in the BSA Chapter 11 Cases. (Affidavit of Mark Eveland, dated November 3, 2021 ("Eveland Aff.") ¶ 5.) Verus utilized a team of experienced professionals (social workers, caseworkers, and nurses), each of whom received independent, case-specific training from a non-profit organization recognized as one of the nation's leading experts in sexual abuse trauma. (*Id.* ¶ 6.) It was to perform this delicate balance that Verus was hired—on the one hand, acting at the Law Firms' direction and with the understanding from the Law Firms of what information was needed from the Survivor client by the Law Firm to render the legal service of reviewing and approving a POC and, on the other hand, obtaining this information in an appropriate and sensitive manner from Survivors. (*Id.*)

The agent interviewers logged information received from Survivor clients in the Verus database. (*Id.* ¶ 8.) Once the relevant fields were filled out, the Law Firm would either (a) review the information by logging into the database, or (b) review a PDF of the POC generated from the database. (*Id.*) The Law Firms could edit information directly in the database, or they could provide any revisions to Verus to make. (*Id.*) Once the Law Firm completed its review, Verus would provide the Survivor with the completed POC and attempt to obtain the Survivor's signature. (*Id.* ¶ 9.) If Verus was able to obtain a Survivor's signature, it would apply it. (*Id.*) In other instances, where Verus was unable to obtain a Survivor's signature prior to the claims bar date, it would either have the attorney sign the POC or would apply the attorney's signature with authorization from the Law Firm. (*Id.*) After the relevant signature was obtained, Verus was responsible for filing the completed POC electronically with the claims administrator, Omni Agent Solutions. (*Id.*)

Ultimately, in each of Verus's engagements in connection with the BSA Chapter 11 Cases, among other direction and oversight, (i) the Law Firms provided Verus with contact information for claimants that had already retained the firm—Verus had no involvement in any case origination process; and (ii) the Law Firms were to approve all POCs before final submission to the claims administrator. Verus would not upload any completed POC to the claims administrator until authorized by the Law Firm. (*Id.* ¶ 7.)

## ARGUMENT

**I.    Many POCs have been Amended with Claimant Signatures, Mooting the Discovery Sought.**

As a threshold matter, the Court should revisit its evaluation of the relevance of the information sought in the Subpoena, previously done in the context of the Rule 2004 application filed in

January 2021. [D.I. 1975]. At the time, Century alleged that thousands of POCs containing attorney signatures rather than claimant signatures were bogus. However, in the intervening nine months, many POCs have been amended with Survivor signatures.[1]

Verus's efforts to obtain as many complete POCs as possible did not end at the bar date. Starting in March 2021, Verus worked with the Krause and Kinsman firm to reach out to claimants that had not signed their respective POCs to attempt to obtain their signatures. (Eveland Aff. ¶ 13.) This campaign spanned several weeks, during which both Verus and Krause and Kinsman contacted claimants through text, email, and phone calls. (*Id.*) Between the efforts of Verus and Krause and Kinsman, 621 additional claimant signatures were obtained. (*Id.* ¶ 15.) This represents one-third of the 1,808 POCs initially signed by an attorney at the Krause firm. (*Id.*)

The Court can and should take judicial notice of the claims register. *See In re LandSource Cmtys. Dev. LLC*, 485 B.R. 310, 315 (Bankr. D. Del. 2013) ("It is not unusual for a Court to take judicial notice of its docket."); *In re Int'l Wireless Commc'n Holdings, Inc.*, No. 98-2007, 1999 WL 33483582, *2 (Bankr. D. Del. Dec. 29, 1999) ("This Court takes judicial notice of the docket and claims register"). The register reflects that other firms have similarly filed amended POCs previously signed by attorneys that now contain Survivor signatures. (*See also Reply in Support of Motion of Marc J. Bern & Partners LLC to Quash Subpoena to Produce Documents Issued to KLS Legal Solutions, LLC* [D.I. 6873] at 7 (amended POCs submitted for clients of Bern & Partners firm).) The factual premise of Century's argument—that a large number of POCs were signed by attorneys, rather than Survivors themselves—is now largely moot.

## II.  The Discovery Sought is Attorney-Client Privileged or Protected Work Product

Century's Subpoena generally seeks three types of information from Verus: (1) communications between Verus and Survivors and Verus and the Law Firms; (2) records from Verus's database; and (3) draft POCs. Each of these document types is covered by either the attorney-client privilege or the work product doctrine.

First, Century argues flatly and unequivocally that "communications with a third-party are not privileged." (Letter at 6.) Century is wrong. Courts, including those in the Third Circuit, have extended the attorney-client privilege to various third-party agents, including "investigators, interviewers, technical experts, accountants, physicians, patent agents, and other specialists in a variety of social and physical sciences," where those agents assist attorneys in providing legal advice. *See La. Mun. Police Employees Retirement Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 311–12 (D.N.J. 2008); *see also HPD Labs., Inc. v. Clorox Co.*, 202 F.R.D. 410, 415 (D.N.J. 2008) ("To qualify for protection, statements to and from third parties must 'be made in confidence for the purpose of obtaining legal advice *from the lawyer*.'"). The Second Circuit's often-quoted rationale for the exception is that "the complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others" and that therefore "the privilege must include

---

[1]  Some of the Law Firms with which Verus worked did not even sign any POCs on behalf of their clients, including Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP. (Eveland Aff. ¶ 10.) Century's blanket justification for the Subpoena ignores that distinction.

all the persons who act as the attorney's agents." *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) (internal quotation omitted).[2]

When communicating with Survivors, Verus acted at the direction of the Law Firms for the purpose of obtaining the information necessary to prepare and submit POCs. For this task, Verus employed a team of experts, including social workers and nurses, to interview survivors in an appropriate and sensitive manner.[3] (Eveland Decl. ¶ 6.) However, Verus was guided by the Law Firms as to how those interviews should be conducted and what information was necessary to complete the POC. (*Id.* ¶¶ 6–8.) In other words, Verus was "deputized" to gather information from claimants to prepare the proof of claim forms and assist the law firms in preparing for litigation. *Gucci Am. Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 71 (S.D.N.Y. 2010) (applying attorney-client privilege to protect disclosure of communications between attorney and his agent where the agent "was deputized to gather information from Gucci employees to assist in the litigation").

Nevertheless, Century argues that no privilege attaches because the Survivors spoke to Verus outside the presence of the lawyer. (*See* Century Letter at 7, 9.) This argument rests on Century's false assumption that the Survivors did not speak to Verus to obtain legal advice. The opposite, however, is true. Verus's team of specially trained social workers, who are akin to paralegals at law firms, communicated with the Survivors at the direction of the Law Firms with the sole purpose of preparing POCs. *See Se. Pa. Trans. Auth. v. Caremarkpcs Health, L.P.*, 254 F.R.D. 253, 257 (E.D. Pa. 2008) ("Communications with the subordinate of an attorney, such as a paralegal, are also protected by the attorney-client privilege so long as the subordinate is 'acting as the agent of a duly qualified attorney under circumstances that would otherwise be sufficient to invoke the privilege.'") Verus did not communicate with the Survivors at its own behest, but only as an agent of the Law Firms. (Eveland Decl. ¶ 7.)

Verus's database records are similarly protected by the attorney-client privilege. Relying on *Ravenell v. Avis Budget Group, Inc.*, No. 08-2113, 2012 WL 1150450 (E.D.N.Y. Apr. 5, 2012), Century incorrectly argues that Verus did only administrative work for the Law Firms and, therefore, its database is not privileged. A close reading of *Ravenell*, however, demonstrates that Century's reliance on this case is misplaced. There, a third-party company created "an online platform for the dissemination and collection of questionnaires" for an audit, summarized the collected data in a chart, and made preliminary assessments regarding the data. *Id.* at *3. The *Ravenell* court determined that the use of the third party's expertise to implement "a system to send out questionnaires and receive respondents' answers . . . arguably falls within the boundaries of *Kovel*." *Id.* Specifically, the court found that the third party's "role was akin to that of an

---

[2] The Third Circuit has cited approvingly to *Kovel*. *See, e.g.*, *United States v. Antolini*, 271 F. App'x 268, 271 n.1 (3d Cir. 2008).

[3] It is important that interviews of Survivors be conducted by those familiar with trauma-informed interviewing techniques. Not only does this help prevent the Survivor's experience from being sanitized or minimized, but it can elicit more complete and accurate information which can be vital to a Survivor's legal case (or here, lead to the submission of a more detailed POC). *See* R. Canaff, et al., End Violence Against Women International, *Informed Interviewing and the Criminal Sexual Assault Case: Where Investigative Technique Meets Evidentiary Value*, 24 (2020), https://evawintl.org/wp-content/uploads/2020-02_TB-Trauma-Informed-Interviewing-and-the-Criminal-SA-Case-Technique-Meets-Evidentiary-Value.pdf.

interpreter—a necessary facilitator in the communications between counsel and client." *Id.* The same is true here. Verus facilitated the factual investigation of claims made by sexual abuse Survivors, which required professional expertise, and collected that information in a database to easily produce the POCs. Given the large number of claimants involved, Verus's expertise in this regard was necessary to facilitate the communications between counsel and the Survivors. *See also Compulit v. Banctec, Inc.*, 177 F.R.D. 410, 412–13 (S.D. Mich. 1997) (noting that attorney-client privilege could apply to documents between a law firm and a litigation support company retained to collect and organize litigation-related data). Verus's creation of that database, however, was guided by the Law Firm's instructions as to what information should be logged and how POCs should be generated.

In addition to attorney-client privilege, Century also seeks to discover material protected by the work product doctrine, such as draft POCs. Under the work-product doctrine, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (*including the other party's* attorney, consultant, surety, indemnitor, insurer, or *agent*)." Fed. R. Civ. P 26(b)(3)(A) (emphasis added). This "protection extends beyond materials prepared by an attorney to include materials prepared by an attorney's agents and consultants." *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 662 (3d Cir. 2003). The work-product doctrine is broader than the attorney-client privilege and is only waived where work product is disclosed to an adversary or treated in a manner that substantially increases the likelihood that an adversary will come into possession of the material. *See United States v. Veolia Environment N. Am. Operations, Inc.*, No. 13-MC-03-LPS, 2014 WL 5511398, *3 (D. Del. Oct. 31, 2014).

Draft POCs, like drafts of pleadings, affidavits, and other legal documents, are quintessential work product routinely protected by the courts. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 510 n.9 (1947); *Veolia Environment N. Am. Operations, Inc.*, 2014 WL 5511398, at *8 ("Preliminary drafts of contracts are generally protected by attorney-client privilege, since [they] may reflect not only client confidences, but also legal advice and opinions of attorneys." (quoting *Andritz Sprout-Bauer, Inc. v. Beazer E., Inc.*, 174 F.R.D. 609, 633 (M.D. Pa. 1997))); *Astra Aktiebolag v. Andrx Pharm., Inc.*, 208 F.R.D. 92, 104 (S.D.N.Y. 2002) (observing that "draft pleadings, draft briefs, and other drafts or documents prepared by lawyers" in "anticipation of litigation" are "work product documents"). This privilege applies even where the drafts are not prepared by an attorney and, instead, are prepared by an attorney's agent at the attorney's direction. *See In re Grand Jury*, 138 F.3d 978, 981 (3d Cir. 1998). Here, Verus drafted the POCs pursuant to its agreements with the Law Firms and, therefore, acted at the direction of the respective attorneys. As such, all drafts of the POCs are protected from disclosure under the work-product doctrine.

\* \* \*

The Court should deny Century's request to compel discovery from Verus.

Respectfully submitted,

*Michael A. Kaplan*
Michael A. Kaplan