**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 |
| Debtors. | (Jointly Administered) |
| | Chief Judge Laurie Selber Silverstein |

**AFFIDAVIT OF MARK EVELAND IN OPPOSITION TO CENTURY'S**
**REQUEST TO COMPEL VERUS, LLC**

I, MARK EVELAND, declare as follows, pursuant to 28 U.S.C. § 1746:

1.      I am the Chief Executive Officer of Verus LLC ("Verus"), which I co-founded in 2003.  I submit this affidavit in opposition to *Century's Request to Compel Verus, LLC* [D.I. 6813].

2.      I have been directly involved in the handling, administration, analysis, and resolution of personal injury claims since 1993.  Over the years I personally provided claims handling and claims management services to a wide array of clients, including various defendants, bankrupt corporations, and law firms nationwide representing defendants and insurance carriers in mass tort litigation.  Verus also counsels and provides analytical and claim processing services to plaintiffs-oriented firms and steering committees in mass tort matters.

3.      Verus is a claims administration and litigation support services provider serving parties, law firms and institutions in the mass tort field.  The firm provides a full suite of services, including the administration of approximately twenty-five Section 524(g) asbestos trusts, asbestos claims and mass tort settlement administration, case management and medical review services, business and advisory services, analytics and document management services.  The firm is located in Princeton, New Jersey.  While known and well regarded for its work in the asbestos mass tort

field, Verus also provides litigation support services to law firms working on other types of mass torts involving toxic exposures, including defective medical devices and dangerous drugs.

4.      In its capacity as a third-party claims administrator, Verus is frequently tasked with developing and implementing policies, procedures, and software systems for the intake, review, and settlement of asbestos personal injury claims, as well as claims resolution systems for other mass tort matters.

5.      Between June and August 2020, Verus was retained by certain law firms to interview sexual abuse survivors ("Survivors") in the Boy Scouts of America ("BSA") Chapter 11 cases and to complete and submit Proof of Claim forms ("POCs").  The seven law firms that Verus contracted with are Krause and Kinsman, Andreozzi & Foote, Cooney & Conway, Davis Bethune Jones, James Harris Law PLLC, Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP, and Babin Law, LLC (the "Law Firms").

6.      Given the level of expertise and sensitivity needed for interviewing sexual abuse Survivors, Verus retained a team of experienced social workers, caseworkers, and nurses, each of whom received training from a non-profit organization recognized as one of the nation's leading experts in sexual abuse trauma.  Verus did so with the goal in mind of obtaining the information necessary for the POCs in an appropriate and sensitive manner from Survivors.

7.      In each of Verus' engagements in connection with the BSA Chapter 11 Cases, among other direction and oversight, (i) the law firms provided Verus with contact information for claimants that had already retained the firm—Verus had no involvement in any case origination process and acted solely at the direction of the Law Firms; and (ii) the Law Firms were to approve all POCs before final submission to the claims administrator.  Verus would not upload any completed POC to the claims administrator until authorized by the Law Firm.

8.      Interviewers used the Verus database to log information provided to them by the Survivors.  Once the relevant fields were filled out, the Law Firm would either (a) review the information by logging into the database, or (b) review a PDF of the POC generated from the database.  The Law Firms could edit information directly in the database, or they could provide any revisions to Verus to make.

9.      Once the Law Firm completed its review, Verus would provide the Survivor with the completed POC and attempt to obtain the Survivor's signature.  If Verus was able to obtain a Survivor's signature, it would apply it.  In other instances, where Verus was unable to obtain a Survivor's signature prior to the claims bar date, it would either have the attorney sign the POC or would apply the attorney's signature with authorization from the Law Firm.

10.     Some of the Law Firms, including Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP, did not sign any POCs on behalf of their clients, and instead submitted only Survivor-signed POCs.

11.     After the relevant signature was obtained, Verus was responsible for filing the completed POC electronically with the claims administrator, Omni Agent Solutions.

12.     Verus worked under the direction of the Law Firms during the entire process.

13.     In March 2021, Verus worked with the Krause and Kinsman firm to reach out to claimants that had not signed their respective POCs to attempt to obtain their signatures.  This campaign spanned several weeks, during which Verus and Krause and Kinsman both contacted claimants through text, email, and phone calls.

14.     For the claimants Verus was assigned to contact, it contacted claimants every other day for 14 days, so that each claimant was contacted 7 times (less if the claimant scheduled an appointment with Verus or provided a signature for his or her POC).

15.     Between the efforts of Verus and Krause and Kinsman, 621 additional claimant signatures were obtained.  This represents one-third of the 1,808 POCs initially signed by an attorney at the Krause firm.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: November 3, 2021

                                      MARK EVELAND