# EXHIBIT 1

# HAYNES BOONE



November 3, 2021
**Via Email/ECF**

The Honorable Laurie Selber Silverstein
United States Bankruptcy Judge
United States Bankruptcy Court for the District of Delaware
824 North Market Street, 6th Floor
Wilmington, Delaware 19801

Re:   ***Boy Scouts of America, et al.*, Case No. 20-10343 (Bankr. D. Del. 2020)**

Dear Judge Silverstein:

We write on behalf of the Boy Scouts of America and Delaware BSA, LLC (together, the "Debtors") to respectfully request that the Court compel certain of the Debtors' insurers (the "Insurers"[1]) to produce documents related to the Insurers' claims handling materials and reinsurance information (the "Disputed Documents"[2]).[3]

As the Court is well aware, the Insurers have repeatedly raised objections as to the valuations and procedures set forth in the Trust Distribution Procedures (the "TDPs").[4]  The Insurers argue that

---

[1] Please see the attached **Exhibit A** for a list of Insurers from whom the Debtors seek Disputed Documents.

[2] *See, e.g.*, Interrogatory Nos. 1-5, RFP Nos. 1-4 (requesting claims-handling materials); Interrogatory Nos. 8, 10, RFP Nos. 10-11 (requesting reinsurance information); Interrogatory #7 to Century (requesting Guam Claim information). A representative sample of these requests and representative Insurers' responses are highlighted in the attached exhibits: **Exhibit B** (Liberty Mutual's Responses and objections to Debtors' First RFPs); **Exhibit C** (Liberty Mutual's Responses to Debtors' First Set of Interrogatories); **Exhibit D** (AIG's Responses to Debtors' First RFPs); **Exhibit E** (AIG's Responses to Debtors' First Set of Interrogatories); **Exhibit F** (Great American's Responses to Debtors' First RFPs); **Exhibit G** (Great American's Responses to Debtors' First Set of Interrogatories); **Exhibit H** (Century's Response to Debtors' Interrogatory #7 regarding the Guam claims).

[3] The Debtors have reviewed the relevant pleadings and this Court's ruling regarding similar discovery requests in *In re Imerys Talc America, Inc., et. al.*, Case No. 19-10289.  The Debtors believe the Court's ruling in that case is distinguishable from the present dispute for several reasons: (1) unlike the TCC and FCR in *Imerys*, Debtors are not contesting Insurers' standing to object to Plan confirmation; (2) unlike in *Imerys*, Insurers are challenging valuation issues; and (3) at the *Imerys* hearing this Court indicated that claims handling and reinsurance information would be discoverable if insurers put their claim valuing information at issue.  *See In re Imerys Talc America, Inc., et. al.*, Case No. 19-10289, Dkt. 3733 at 234:22 to 24:12 ("Now, if the insurance companies end up filing some objection and putting in value information, and they use this information and they give it to an expert[…] then it's going to be discoverable." [quote at 239:25 to 240:03]).

[4] *See, e.g.,* Certain Excess Insurers' Supplemental Objection to Debtors' Disclosure Statement (Dkt. 6056), at 3 (characterizing Debtors' proposed claim valuation procedure as an "inflated compensation and vote-buying scheme."); Century's Objections to the Debtors' Disclosure Statement for the Fourth Amended Plan, Solicitation Procedures and Form of Ballots (Dkt. 6065), at 10 ("[U]nder the TDPs, substantially all Abuse Claims shall be liquidated by a summary determination by the Settlement Trust rather than litigation before a court, and all determinations are to be made solely by the Settlement Trustee[…] based on pre-determined Claims Matrix values"); Certain Insurers' Supplemental Objection to Amended Disclosure Statement (Dkt. 6052), at 15 ("The TDPs violate section 502(a) and



# HAYNES BOONE
Page 2

the TDPs are not "fair and reasonable" and therefore the Plan is not proposed in good faith.[5] Specifically, the Insurers argue that the Debtors have agreed to unreasonable claim values and colluded with abuse victims to get votes using the Insurers' money.[6]  The Insurers have likewise objected to Plan confirmation on the basis that the Plan proposes to pay fraudulent or invalid Abuse Claims.[7]  Consequently, the Insurers' own evaluation and valuation of claims is relevant here.

Given these objections, the Debtors seek the Disputed Documents in order to compare how the Insurers evaluate and value claims as compared to the TDPs—which is central to the Insurers' objections to Plan Confirmation.  Notably, the Insurers have propounded discovery on the Debtors seeking documents relating to the how the Debtors analyzed, assessed, and valued claims prior to the Petition Date, admitting that these materials are relevant.[8]  Unlike the Insurers, the Debtors have agreed to produce these documents.  However, discovery is a two-way street.

The Disputed Documents are therefore relevant to Plan confirmation and the Insurers' objections to confirmation, there is no burden in producing the readily available documents, and the Insurers are refusing to produce or are substantially limiting their production of the Disputed Documents.[9]

## A.    Discovery Related to Claims Handling Practices Should be Compelled.

The Debtors made various requests for documents and communications relating to the Insurers' claims handling practices.[10]  These requests seek documents relating to how the Insurers evaluate and value sexual abuse claims, both with regard to the Debtors specifically and with insureds generally.  The Insurers either refused to produce any such documents or agreed to produce only a very limited scope of documents, such as communications with the Debtors.  The Insurers'

---

502(b)(1) of the Bankruptcy Code because they expressly permit (and to some extent require) the payment of claims that are not compensable in the tort system, are fraudulent and time-barred claims, without allowing parties in interest to file objections to such claims.'"); Certain Insurers' Objection to Debtors' Motion for Entry of an Order, Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code, (I) Authorizing the Debtors to Enter into and perform Under the Restructuring Support Agreement and (II) Granting Related Relief (the "RSA Objection") (Dkt. 5684), at 36 ("This, combined with the RSA's requirement that the Debtors obtain a finding in any Confirmation Order that all Allowed Claim Amounts and the procedures leading thereto are 'fair and reasonable,' see RSA § II.A.(i)(B), amounts to an attempt by the Debtors and Abuse Claimant Representatives to bind the Debtors' insurers to pay over $239 million in liability for likely invalid claims that are not subject to review by anyone, ever, not even the Abuse Claimant Representatives' handpicked Settlement Trustee.").

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *See* Letter from Samuel N. Rudman to Glenn M. Kurtz, dated Oct. 27, 2021, regarding Insurers' discovery requests to Debtors, attached hereto as **Exhibit I**, at 3-4 ("The Propounding Insurers made various requests for documents and communications reflecting or relating to Debtors' process for analyzing, assessing, and quantifying abuse claims.").

[9] Counsel for the Debtors and most of the Insurers attended a meet-and-confer on Friday, October 29, 2021, and no Insurer in attendance agreed to produce the Disputed Discovery.

[10] *See, e.g.*, Interrogatory Nos. 1-5; Requests for Production 1-4.

---

# HAYNES BOONE



Page 3

responses to these Requests are inadequate and their objections to producing claim-handling materials based on relevance and privilege are contrary to the weight of authorities in this forum and other jurisdictions.

These requests are relevant to Plan confirmation because the Insurers have repeatedly raised the issue of whether the TDPs are "fair and reasonable," and have propounded numerous discovery requests concerning that objection.[11]  The Insurers specifically demand from the Debtors "documents and communications reflecting or relating to Debtors' process for analyzing, assessing, and quantifying abuse claims"—a process which insurers routinely undertake internally during the claims handling process.[12]  Simply put, it would be unfair to allow the Insurers to solicit post-petition Abuse Claim valuation models from the Debtors while at the same time shielding Insurers' own procedures for determining the validity and value of Abuse Claims.

The Insurers' claims handling practices are highly relevant to the Insurers' objections to the TDPs because the Insurers have well-established internal guidelines and procedures for conducting similar analysis of underlying claims throughout the claims handling process.  Evidence that the Insurers' practices are comparable to the Debtors' practices for validating and valuing abuse claims under the TDPs will disprove the Insurers' objections that the TDPs are unreasonable, unfair, a "collusive scheme," and "an entirely rigged procedural process for claimants[.]"[13]

Courts in Delaware and other jurisdictions have held claim files, claims handling manuals, and other documents produced by the insurer in the course of handling an insured's claim to be relevant and discoverable in relation to the insurer's understanding of the merits of the claim and the provisions of the relevant policy.[14]  While the Insurers will likely argue that the majority of claims-handling documents are subject to attorney-client privilege or work product doctrine, courts

---

[11] *See* **Exhibit I**, at 3; Insurers' Objections, *supra* note 4; *see also*, Letter from Glenn M. Kurtz to Samuel N. Rudman, dated Oct. 28, 2021, attached hereto as **Exhibit J**, at 3-4 (arguing that Insurers' claim valuation is relevant).

[12] *See* **Exhibit I**, at 2.

[13] *See, e.g.*, Century's Objections to the Debtors' Disclosure Statement for the Fourth Amended Plan, Solicitation Procedures and Form of Ballots (Dkt. 6065), at 3.

[14] *See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stauffer Chem. Co.*, 558 A.2d 1091, 1096 (Del. Super. Ct. 1989) (observing that Delaware federal district court has ordered production of claim files, and ordering insurers to produce a sample of 20 "claim and underwriting files" and "claims-handling manuals and guidelines" for the insured and other insureds, finding such documents relevant to construction of the ISO standard-form CGL policies at issue); *Monsanto Co. v. Aetna Cas. & Sur. Co.*, 88C-JA-118, 1992 WL 182322, at \*2 (Del. Super. Ct. May 26, 1992) (accepting Special Discovery Master's recommendation that insured's requests for insurer's documents "concerning generic claims handling, underwriting, and policy interpretation, and the scope of [CGL and EIL coverage]" were relevant and discoverable regarding coverage of pollution claims); *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638, 646 (D. Kan. 2007) (affirming magistrate judge's findings that claims-handling materials were "relevant to whether claims were properly handled [and] could reveal the Insurers' guidelines for interpreting policy language or demonstrate how the Insurers' positions in this litigation are inconsistent with previous coverage decisions."); *Missouri Pac. R. Co. v. Aetna Cas. & Sur. Co.*, CIV.A.3:93-CV-1898-D, 1995 WL 861147, at \*2 (N.D. Tex. Nov. 6, 1995) (affirming the magistrate judge's decision that claims handling documents are relevant).

# HAYNES BOONE



Page 4

routinely reject insurers' attempts to avoid producing claims-handling materials by asserting privilege over documents and communications created by in-house attorneys or outside counsel *while acting in their capacity as claims-handlers*.[15]  In any case, non-privileged materials must be produced.  Moreover, the Insurers' attorneys owe a duty of candor to the Court and cannot withhold documents disproving their assertions.[16]

As the Court observed during the recent hearing on Debtors' motion for protective order, the good faith requirement under Section 1129 of the Bankruptcy Code means that a "plan must be proposed with honesty and good intentions, and with a basis for expecting that reorganization can be achieved, and with fundamental fairness in dealing with creditors."[17]  Just as the Insurers argue they are entitled to discovery of "the *bona fides* of the mediation" on the issue of Debtors' good faith, the Debtor's should be entitled to discovery of the Insurers' claims handling materials to demonstrate Debtors' honesty and good intentions in utilizing comparable methods to validate and value Abuse Claims.[18]  The Insurers' claims handling materials are not only relevant to the reasonableness of the TDPs and Debtors' good faith Plan proposal, but may also reveal that the Insurers' took different positions on abuse claim validity and value in pre-petition litigation than the position they are taking in connection with the Debtors' Plan.

The Debtors request that the Court compel the Insurers to produce all non-privileged responsive documents that reflect their claims-handling practices: (1) specific to the Debtors and (2) general to sexual-abuse claims.  In addition, the Debtors request that the Court compel the Insurers to

---

[15] *See, e.g., In re Residential Capital, LLC*, 575 B.R. 29, 35 (Bankr. S.D.N.Y. 2017) ("Under New York law, an insurance company's claim handling activities are generally subject to discovery even if they were performed by an attorney."); *First Aviation Services, Inc. v. Gulf Ins. Co.*, 205 F.R.D. 65, 69 (D. Conn. 2001) (An insurer "may not insulate itself from discovery by hiring an attorney to conduct ordinary claims investigation."); *Chicago Meat Processors Inc. v. Mid-Century Ins. Co.*, 1996 WL 172148 (N.D. Ill. 1996) ("In the insurance context, to the extent that an attorney acts as a claims adjuster, claims process supervisor, or claims investigation monitor, and not as a legal advisor, the attorney-client privilege does not apply."); *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 663 (S.D. Ind. 1991) ("[m]ost courts have held that documents constituting any part of a factual inquiry into or evaluation of a claim[…] are produced in the ordinary course of an insurer's business and not work product.").

[16] DE R RPC Rule 3.3 ("A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal[… or] (3) offer evidence the lawyer knows to be false."); *Sciele Pharma Inc. v. Lupin Ltd.*, CIV. 09-0037 RBK/JS, 2012 WL 113004, at *3 (D. Del. Jan. 12, 2012) (Noting that DE R RPC Rule 3.3 applies "in this Court, as well as the Federal Circuit.").

[17] Transcript of Telephonic Ruling Before the Honorable Laurie Selber Silverstein, Case No. 20-10343 (Oct. 25, 2011) at 8:16 – 8:19 (quoting *In re Emerge Energy Services LP*, 19-11563 (KBO), 2019 WL 7634308, at *16 (Bankr. D. Del. Dec. 5, 2019)); *see also In re Exide Holdings, Inc.*, 20-11157-CSS, 2021 WL 3145612, at *11 (D. Del. July 26, 2021) (noting that the good faith determination requires "a factual inquiry into a totality of the circumstances surrounding the plan's proposal" and that the bankruptcy court is "in the best position to ascertain the good faith of the parties' proposals.").

[18] **Exhibit I**, at 2 (quoting from H'rg Tr. at 13:9-15:7 (October 25, 2021)).

# HAYNES BOONE



Page 5

produce any valuations of the Abuse Claims, including any databases used by the insurers to value sexual-abuse claims.

**B.      Discovery Related to Reinsurance Information Should be Compelled.**

The Debtors have requested documents and communications relating to reinsurance information.[19] All of the Insurers refused to produce any documents or communications in response to this request.

Reinsurance information is relevant to Plan Confirmation because the Insurers have challenged the fairness and reasonableness of the Debtors' processes for validating and valuing Abuse Claims in the TDPs.  Insurers routinely conduct similar analyses of insurance claims in the process of communicating the expected value of claim liability to reinsurers.  Again, an Insurer's claim valuation is relevant to its argument that the Debtors' valuations are not reasonable and proposed in good faith.  Certainly, communications between the insurers and their reinsurers are likely to lead to the discovery of admissible information which could aid this Court in the evaluation of the Insurers' objections to Plan confirmation.[20]

Respectfully submitted,

/s/ Adrian Azer

Adrian Azer
Adrian.Azer@haynesboone.com
Ernest Martin
Ernest.Martin@haynesboone.com
Haynes and Boone, LLP

/s/ Derek C. Abbott

Derek C. Abbott (No. 3376)
dabbott@morrisnichols.com
Andrew R. Remming (No. 5120)
aremming@morrisnichols.com
Morris, Nichols, Arsht & Tunnell LLP

---

[19] *See, e.g.*, Interrogatory Nos. 8, 10; Requests for Production 10-11.

[20] In coverage litigation involving disputes about claim validity and value, Delaware state courts have long recognized the relevance of reinsurance agreements and reinsurance communications to insurers' understanding of the scope of coverage available under a policy.  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stauffer Chem. Co.*, 558 A.2d 1091, 1096 (Del. Super. Ct. 1989) (noting that Delaware's discovery rule is identical to FRCP 26(b)(2) and "the discovery of reinsurance agreements and communications between the carriers and their reinsurers is relevant to the issue of whether the insurers believed that these policies covered [insured's] claims[.]"); *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 623 A.2d 1099, 1108 (Del. Super. Ct. 1991) (reinsurance communications are relevant to policy interpretation and the parties' knowledge of products liability risk); *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, C.A. 89C-SE-35, 1992 WL 182344, at *2 (Del. Super. Ct. Apr. 16, 1992) (Noting that "[t]his Court has previously found information about reinsurance to be relevant[,]" and listing six categories of reinsurance information insureds were entitled to discover under the "extremely liberal" relevance standard); *Playtex, Inc. v. Columbia Cas. Co.*, C.A. 88C-MR-233-1-CV, 1988 WL 109304, at *2 (Del. Super. Ct. Oct. 12, 1988) (insured's request for "[d]ocuments relating to the reinsurance carriers for the Columbia policy" were within the scope of Delaware Superior Court Civil Rule 26).

# Exhibit A

## Exhibit A

### Insurers from Whom Debtors Seek Disputed Documents

| Insurer |
| --- |
| National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, The Insurance Company of the State of Pennsylvania, and their affiliated entities (collectively, "**AIG**"). |
| Allianz Global Risk US Insurance Company ("**Allianz**")[1] |
| Argonaut Insurance Company ("**Argonaut**") |
| Arrowood Indemnity Company ("**Arrowood**") |
| Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America (collectively, "**Century**") |
| The Continental Insurance Company and Columbia Casualty Company (collectively, "**CNA**") |
| General Star Indemnity Company ("**General Star**") |
| Great American Assurance Company, f/k/a Agricultural Insurance Company, Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company, and Great American E&S Insurance Company (collectively, "**Great American**") |
| Liberty Mutual Insurance Company, together with its affiliates and subsidiaries, including The Ohio Casualty Insurance Company, Liberty Surplus Insurance Corporation, and Liberty Insurance Underwriters, Inc. (collectively, "**Liberty Mutual**") |
| National Surety Corporation and Interstate Fire & Casualty Company (collectively, "**National Surety**") |
| Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty and Surety Company), St. Paul Surplus Lines Insurance Company, and Gulf Insurance Company (collectively, "**Travelers**") |
| American Zurich Insurance Company; American Guarantee and Liability Insurance Company; and Steadfast Insurance Company (collectively, "**Zurich**") |

---

[1] Debtors only seek re-insurance documents from Allianz.  Allianz has indicated it does not have policies or responsive documents to BSA's claims-handling requests.

# Exhibit B

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC[1/]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

**LIBERTY MUTUAL'S RESPONSES AND OBJECTIONS TO DEBTORS' FIRST**
**REQUEST FOR PRODUCTION OF DOCUMENTS TO**
**LIBERTY MUTUAL**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Federal Rules of Bankruptcy

Procedure 7026 and 7034, and the Local Rules of Bankruptcy Practice and Procedure of the

United States Bankruptcy Court for the District of Delaware, Liberty Mutual Insurance

Company, together with certain of its affiliates and subsidiaries (collectively, "Liberty

Mutual"),[2/] by and through their undersigned counsel, hereby respond and object to *Debtors'*

*First Request for Production of Documents to Liberty Mutual* (each a "Request" and collectively,

the "Requests").

**PRELIMINARY STATEMENT AND RESERVATION OF RIGHTS**

These responses made by Liberty Mutual to Debtors' Requests (the "Responses") are

made solely for the purpose of this action, and are made without waiving, or intending to waive,

but on the contrary, expressly reserving: (a) the right to object on the grounds of competency,

---

[1/]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving TX 75038.
[2/]    The term "Liberty Mutual" as used herein shall refer to Liberty Mutual Insurance Company together with its affiliates and subsidiaries, including The Ohio Casualty Insurance Company, Liberty Surplus Insurance Corporation, and Liberty Insurance Underwriters, Inc.

1

propriety, admissibility, privilege, relevancy, or materiality, or any other proper grounds, to the use of the Responses or any facts, information, or documents identified herein, for any purpose, in whole or in part, in any subsequent step or proceeding in this action, or any other action; (b) the right to object on any and all grounds, at any time, to requests for production or other discovery procedures, involving, or relating to, the subject matter of the Responses; and (c) the right, at any time, to revise, correct, add to, or clarify any of the Responses provided herein.

The Responses are based upon the facts and information presently known and available to Liberty Mutual.  Discovery is ongoing. The Responses are given without prejudice to Liberty Mutual's right to produce documents pertaining to any subsequently discovered information. The Responses are given without prejudice to Liberty Mutual's right to amend, supplement, or modify, or produce, at or before the time of trial, subsequently discovered evidence relating to the proof of a subsequently discovered material fact or facts, which Liberty Mutual may later recall.

## GENERAL OBJECTIONS AND OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Liberty Mutual makes the following general objections to the Requests[3/] and incorporates them into its Response to each and every Request, whether or not specifically stated in any individual Response.

1.      Liberty Mutual objects to any Request calling for discovery that is outside the allowable limits of the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, or the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

---

[3/]      The general objections, together with the objections to instructions and definitions shall hereinafter collectively be referred to as the "General Objections".

2.      Liberty Mutual objects to the Requests (including the Definitions and Instructions related thereto) to the extent that they are vague, overbroad, include Debtors' use of terms that are not defined and/or not otherwise susceptible to any single meaning, duplicative, unduly burdensome, oppressive, vexatious, or seek information that is neither relevant to any party's claim or defense nor proportional to the needs of the case, and the parties' relative access to relevant information, and the parties' resources.

3.      Liberty Mutual objects to the Requests to the extent they call for the identification of information subject to a claim of privilege, immunity, or other legal protection, including the attorney-client privilege, the attorney work-product doctrine, the common interest doctrine, the mediation privilege, or any other applicable legal privilege, rule, or immunity from disclosure. The inadvertent production of documents disclosing any information subject to such privileges or immunities is not intended to relinquish any privilege or immunity and shall not be deemed to constitute a waiver of any applicable privilege or immunity.

4.      Liberty Mutual objects to the Requests to the extent they seek confidential and/or proprietary information, or which may implicate a privacy interest.  To the extent that Liberty Mutual discloses any such responsive, non-privileged information, it does so without waiving this objection and subject to the Confidentiality and Protective Order approved by the Court on June 8, 2020. *See* "Order Approving Confidentiality and Protective Order" (Docket No. 799).

5.      Liberty Mutual objects to the Requests to the extent they are ambiguous and too vague to adequately apprise Liberty Mutual of what information or Documents are being sought or to permit Liberty Mutual to furnish such information or Documents with reasonable diligence.

6.      Liberty Mutual objects to the Requests to the extent they seek information or Documents that are equally or already within Debtors' possession, custody, or control.

7.      Liberty Mutual objects to the Requests to the extent they request information or Documents not limited by a proper time frame and, therefore, seek information or Documents not relevant to this action.

8.      Liberty Mutual objects to the Requests to the extent they request information or Documents not within Liberty Mutual's possession, custody, or control.

9.      Liberty Mutual objects to the Requests to the extent that they assume the truth of facts not proven or facts not in evidence or constitute an inaccurate characterization of the facts. Liberty Mutual does not admit, adopt, or acquiesce to any factual or legal contention, assertion, characterization, or implication that is contained in any of the Requests.

10.      Liberty Mutual reserves all objections relating to the admissibility of evidence.

11.      Liberty Mutual objects to Debtors' Requests to the extent that they seek information or Documents regarding insureds, or alleged insureds who are not parties to the present action, and insurance policies other than the LM Policies, or Excess Policies, as defined below, on the grounds of relevancy, the attorney-client privilege, and the attorney work-product doctrine.

12.      Liberty Mutual further objects to the Requests to the extent they seek documents that are not relevant to any party's claim or defense in this bankruptcy case in general, and the Confirmation Hearing in particular, or proportional to the needs of the case.

13.      Liberty Mutual objects to **Definition No. 1** of the term "**Abuse Claims**" as vague and to the extent that the Debtors' use of the phrase in their Requests and the failure of the Debtors' to distinguish the term "Abuse Claims" from the term "sexual abuse claims" creates confusion. To avoid any further confusion, for purposes of its Responses to Debtors' Requests, Liberty Mutual shall hereinafter use the term "Abuse Claims" to refer to any claim for sexual abuse against the Debtors and the term "sexual abuse claims" as claims other than those claims against the Debtors.

14.     Liberty Mutual objects to **Definition No. 3** of the term "**Liberty Mutual**" to the extent that it includes "Liberty Mutual Insurance Companies". "Liberty Mutual Insurance Companies" does not exist.

15.     Liberty Mutual objects to **Definition No. 4** of the terms "**You**" and "**Your**" as overbroad and not relevant and disproportionate to the needs of the case.

16.     Liberty Mutual objects to **Definition No. 10** of the term "**Document(s)**" to the extent that it does not comply with Federal Rule of Civil Procedure 34. For purposes of its Responses to Debtors' Requests, Liberty Mutual shall hereinafter use the term "Documents" as it is defined under Federal Rule of Civil Procedure 34.

17.     Liberty Mutual objects to **Definition No. 12** to the extent it defines **"Policy"** to include "any part(s) of any such insurance policy, including any declarations pages, endorsements, riders, binders, policy jackets, standard forms, inserts, or any other item that could be construed to be a part of or related to the terms of such insurance policy." Such definition is overbroad and disproportionate to the needs of the case.

The foregoing objections are applicable to, and incorporated into, each and every Response to Debtors' Requests. To the extent that any of these objections is specifically referenced in response to any individual Request such specific objection is provided because it is believed to be particularly applicable to the specific Request and is not to be construed as a waiver of any of the General Objections and Objections to Definitions and Instructions.

## SPECIFIC OBJECTIONS AND RESPONSES TO DOCUMENT REQUESTS

**REQUEST NO. 1**:

All Documents, including without limitation claims-handling manuals, guidelines, policies, practices, directives, and procedures, that relate to Your handling, processing, adjusting,

review, investigation, evaluation, acceptance, denial, reservation of rights, or other response to sexual abuse claims under any Policy.

**RESPONSE NO. 1:**

In addition to and without waiving the General Objections, Liberty Mutual objects to this Request to the extent that it is overbroad and seeks information or Documents that are not relevant to any party's claim or defense in this bankruptcy case in general, and the Confirmation Hearing in particular, nor is it proportional to the needs of this case. Liberty Mutual further objects to this Request to the extent that it seeks documents that are confidential or proprietary.

**REQUEST NO. 2:**

All Documents concerning Your evaluation and valuation of Abuse Claims.

**RESPONSE NO. 2:**

In addition to and without waiving the General Objections stated above, Liberty Mutual objects to this Request to the extent that it is overbroad and seeks information or Documents that are not relevant to any party's claim or defense in this bankruptcy case in general, and the Confirmation Hearing in particular, nor is it proportional to the needs of this case. Notwithstanding said objections, with regard to the Abuse Claims, it is undisputed that Liberty Mutual Insurance Company issued a series of primary and umbrella general liability policies to Boy Scouts of America ("BSA") between March 1, 1996 and March 1, 2008 (the "LM Policies"). All of the LM Policies are fronting policies, such that BSA alone was responsible for Abuse Claims. BSA paid all indemnity and defense costs for Abuse Claims arising under the LM Policies. There was no risk transfer to Liberty Mutual with respect to the LM Policies, and all Abuse Claims were the responsibility of BSA. Liberty Mutual was not involved in the selection of defense counsel, the defense, evaluation, valuation or the resolution of any Abuse Claims under the LM Policies.

6

Ohio Casualty Insurance Company ("OCAS") issued a series of high-level excess liability policies to BSA between March 1, 2008 and March 1, 2019; Liberty Insurance Underwriters, Inc. ("LIU") issued three high-level excess liability policies to BSA between March 1, 2011 and March 1, 2021; and Liberty Surplus Insurance Corporation ("LSIC") issued a high-level excess liability policy to BSA between March 1, 2013 and March 1, 2014 (collectively, the "Excess Policies"). OCAS, LIU, and LSIC were not involved in the selection of defense counsel, the defense, evaluation, valuation or resolution of Abuse Claims under the Excess Policies, nor did they make any payments under the Excess Policies.

With respect to reservation of rights letters issued to BSA by either OCAS or LIU, these documents have been provided to and are in the possession of the Debtors.

With respect to any sexual abuse claim involving any policy or alleged policy issued to a Local Council by an affiliate of Liberty Mutual, Liberty Mutual will agree to meet and confer with the Debtors. Further, Liberty Mutual cannot produce any Document concerning a Local Council absent the consent of the particular Local Council to which the Document pertains; BSA should seek any such material directly from the Local Council.

**REQUEST NO. 3**:

All Documents concerning any database, computer system, or other system that contains or reflects information about the Abuse Claims, including but not limited to databases, indices, computer programs, computer software, and computer databases that reflect methodologies or practices for valuing or otherwise evaluating Abuse Claims, and the results of such valuation or evaluation processes.

**RESPONSE NO. 3:**

In addition to and without waiving the General Objections stated above, Liberty Mutual objects to this Request to the extent that it is overbroad and seeks information or Documents that are not relevant to any party's claim or defense in this bankruptcy case in general, and the Confirmation Hearing in particular, nor is it proportional to the needs of this case. Notwithstanding said objections, with regard to the Abuse Claims, it is undisputed that Liberty Mutual Insurance Company issued the LM Policies to BSA.  All of the LM Policies are fronting policies, such that BSA alone was responsible for t Abuse Claims. BSA paid all indemnity and defense costs for Abuse Claims arising under the LM Policies.  There was no risk transfer to Liberty Mutual with respect to the LM Policies, and all Abuse Claims were the responsibility of  BSA.  Liberty Mutual was not involved in the selection of defense counsel, the defense, or the resolution of any Abuse Claims under the LM Policies.

OCAS, LIU, and LSIC issued the Excess Policies to BSA. OCAS, LIU, and LSIC were not involved in the selection of defense counsel, the defense, or resolution of Abuse Claims under the Excess Policies, nor did they make any payments under the Excess Policies.

With respect to reservation of rights letters issued to BSA by either OCAS or LIU, these documents have been provided to and are in the possession of the Debtors.

With respect to any sexual abuse claim involving any policy or alleged policy issued to a Local Council by an affiliate of Liberty Mutual, Liberty Mutual will agree to meet and confer with the Debtors. Further, Liberty Mutual cannot produce any Document concerning a Local Council absent the consent of the particular Local Council to which the Document pertains; BSA should seek any such material directly from the Local Council.

**REQUEST NO. 4**:

All Documents and Communications concerning Your policies, practices and procedures that would apply to valuing or evaluating Abuse Claims that were filed after the expiration of any applicable statute of limitations or were filed in jurisdictions where the statute of limitations with respect to sexual abuse claims may change, including, without limitation, any policies, procedures or practices that prohibit settling or otherwise resolving such sexual-abuse claims.

**RESPONSE NO. 4:**

In addition to and without waiving the General Objections, Liberty Mutual objects to this Request to the extent that it is overbroad and seeks information or Documents that are not relevant to any party's claim or defense in this bankruptcy case in general, and the Confirmation Hearing in particular, nor is it proportional to the needs of this case. Liberty Mutual further objects to this Request to the extent that it seeks documents that are confidential or proprietary. Notwithstanding and without waiving said objections, with regard to the Abuse Claims, it is undisputed that Liberty Mutual Insurance Company issued the LM Policies to BSA.  All of the LM Policies are fronting policies, such that BSA alone was responsible for Abuse Claims. BSA paid all indemnity and defense costs for Abuse Claims arising under the LM Policies.  There was no risk transfer to Liberty Mutual with respect to the LM Policies, and all Abuse Claims were the responsibility of BSA.  Liberty Mutual was not involved in the selection of defense counsel, the defense, or the resolution of any Abuse Claims under the LM Policies.

OCAS, LIU, and LSIC issued the Excess Policies to BSA. OCAS, LIU, and LSIC were not involved in the selection of defense counsel, the defense, or resolution of Abuse Claims under the Excess Policies, nor did they make any payments under the Excess Policies.

With respect to reservation of rights letters issued to BSA by either OCAS or LIU, these documents have been provided to and are in the possession of the Debtors.

With respect to any sexual abuse claim involving any policy or alleged policy issued to a Local Council by an affiliate of Liberty Mutual, Liberty Mutual will agree to meet and confer with the Debtors. Further, Liberty Mutual cannot produce any Document concerning a Local Council absent the consent of the particular Local Council to which the Document pertains; BSA should seek any such material directly from the Local Council.

**REQUEST NO. 5**:

All Documents reflecting or analyzing the cost and expense (or expected or projected cost and expense) that You incur in evaluating and/or valuing an Abuse Claim potentially covered under a Policy issued to the Debtors (by You).

**RESPONSE NO. 5:**

In addition to and without waiving the General Objections, Liberty Mutual objects to this Request to the extent that it is vague, overbroad, and seeks information or Documents that is not relevant to any party's claim or defense in this bankruptcy case in general, and the Confirmation Hearing in particular, nor is it proportional to the needs of this case. Liberty Mutual further objects to this Request to the extent that it seeks documents that are confidential or proprietary. Liberty Mutual further objects to the extent that this Request seeks information or Documents regarding Policies issued to Debtors, given that Liberty Mutual did not issue any Policies to Delaware BSA, LLC. Notwithstanding and without waiving said objections, with regard to the Abuse Claims, it is undisputed that Liberty Mutual Insurance Company issued the LM Policies to BSA.  All of the LM Policies are fronting policies, such that BSA alone was responsible for Abuse Claims. BSA paid all indemnity and defense costs for Abuse Claims arising under the LM Policies.  There was

no risk transfer to Liberty Mutual with respect to the LM Policies, and all Abuse Claims were the responsibility of BSA. Liberty Mutual was not involved in the selection of defense counsel, the defense, or the resolution of any Abuse Claims under the LM Policies.

OCAS, LIU, and LSIC issued the Excess Policies to BSA. OCAS, LIU, and LSIC were not involved in the selection of defense counsel, the defense, or resolution of Abuse Claims under the Excess Policies, nor did they make any payments under the Excess Policies.

**REQUEST NO. 6**:

All Documents that contain or relate to any Communications between You and any Chartered Organization.

**RESPONSE NO. 6:**

In addition to and without waiving the objections stated above, Liberty Mutual objects to this Request to the extent that it is vague, overbroad and seeks information or Documents that are not relevant to any party's claim or defense in this bankruptcy case in general, and the Confirmation Hearing in particular, nor is it proportional to the needs of this case. Liberty Mutual further objects to the extent that this Request has no limit in scope and extends far beyond BSA and parties or issues which are not the subject of this case. Liberty Mutual further objects to this Request to the extent that it seeks documents that are confidential or proprietary. Notwithstanding and without waving said objections, Liberty Mutual will produce any responsive, non-privileged documents subject to the Confidentiality and Protective Order.

**REQUEST NO. 7**:

All Documents that contain or relate to any Communication between You and any Local Council of the BSA.

**RESPONSE NO. 7:**

In addition to and without waiving the General Objections, Liberty Mutual objects to this Request to the extent that it is overbroad and seeks information or Documents that are not relevant to any party's claim or defense in this bankruptcy case in general, and the Confirmation Hearing in particular, nor is it proportional to the needs of this case. With respect to any sexual abuse claim involving any policy or alleged policy issued to a Local Council by an affiliate of Liberty Mutual, Liberty Mutual will agree to meet and confer with the Debtors. Further, Liberty Mutual cannot produce any Document concerning a Local Council absent the consent of the particular Local Council to which the Document pertains; BSA should seek any such material directly from the Local Council.

**REQUEST NO. 8:**

All minutes of or other written documentation relating to every meeting of Your board of directors, any committee or subcommittee thereof, any task force or working group thereof, or any of Your executive task forces or working groups, during which there was discussion of the Debtors, the Policies issued (by You) to the Debtors, Abuse Claims, or the Debtors' claims for insurance coverage under the Policies (whether or not regarding the Abuse Claims), including without limitation, insurance coverage for such claims, including but not limited to handouts, agendas, attachments, and notes made by participants.

**RESPONSE NO. 8:**

In addition to and without waiving the General Objections, Liberty Mutual objects to this Request because it seeks Documents that are not relevant to this action, and because it is overbroad and seeks information that is not relevant to any party's claim or defense in this bankruptcy case in general, and the Confirmation Hearing in particular, nor is it proportional to

the needs of this case. Liberty Mutual further objects to this Request to the extent that it seeks information or Documents in any way relating to policyholders who are not parties to the present action, or claims not at issue in the present action, as such information is not relevant to Debtors' claims in this case. Liberty Mutual further objects to this Request to the extent that it seeks information or Documents that are confidential or proprietary.  Liberty Mutual further objects to this Request to the extent the Request seeks information or Documents that are protected by the attorney-client privilege, the attorney work product doctrine or any other applicable privilege, immunity or protection from discovery.

**REQUEST NO. 9**:

All Documents concerning the reserves set by You in connection with Debtors' claims for coverage for the Abuse Claims.

**RESPONSE NO. 9:**

In addition to and without waiving the General Objections stated above, Liberty Mutual objects to this Request because it is overbroad and seeks information or Documents that are not relevant to any party's claim or defense in this bankruptcy case in general, and the Confirmation Hearing in particular, nor is it proportional to the needs of this case. Liberty Mutual further objects to this Request to the extent that it seeks documents that are confidential or proprietary. Liberty Mutual further objects to this Request to the extent the Request seeks Documents that are protected by the attorney-client privilege, the attorney work product doctrine, the mediation privilege or any other applicable privilege, immunity or protection from discovery.

**REQUEST NO. 10**:

All Documents regarding any Communications between You and any Reinsurer(s) relating to: (a) Debtors; (b) Policies issued to the Debtors; (c) the Abuse Claims; or (d) Debtors' claims for insurance coverage under the Policies (whether or not regarding the Abuse Claims).

**RESPONSE NO. 10:**

In addition to and without waiving the General Objections stated above, Liberty Mutual objects to this Request because it is overbroad and seeks information or Documents that are not relevant to any party's claim or defense in this bankruptcy case in general, and the Confirmation Hearing in particular, nor is it proportional to the needs of this case. Liberty Mutual further objects to this Request to the extent that it seeks Documents that are confidential or proprietary. Liberty Mutual further objects to this Request to the extent the Request seeks Documents that are protected by the attorney-client privilege, the attorney work product doctrine or any other applicable privilege, immunity or protection from discovery.

**REQUEST NO. 11**:

All Documents and Communications reflecting, discussing or analyzing the exposure or potential exposure of any reinsurer under the Reinsurance Agreements.

**RESPONSE NO. 11:**

In addition to and without waiving the General Objections, Liberty Mutual objects to this Request because it is vague, overbroad, and seeks information or Documents that are not relevant to any party's claim or defense in this bankruptcy case in general, and the Confirmation Hearing in particular, nor is it proportional to the needs of this case. Liberty Mutual further objects to this Request to the extent that it seeks Documents that are confidential or proprietary. Liberty Mutual further objects to this Request to the extent the Request seeks Documents that are

<mark>protected by the attorney-client privilege, the attorney work product doctrine, the mediation</mark>

<mark>privilege, or any other applicable privilege, immunity or protection from discovery.</mark>

**REQUEST NO. 12**:

All Documents and Communications analyzing, discussing, supporting or refuting the allegation that the Debtors' Fifth Amended Plan of Reorganization and/or any related documents, including without limitation the terms of such documents, are not insurance neutral.

**RESPONSE NO. 12:**

In addition to and without waiving the General Objections stated above, Liberty Mutual objects to this Request because it is overbroad and seeks information or Documents that are not relevant to any party's claim or defense in this bankruptcy case in general, and the Confirmation Hearing in particular, nor is it proportional to the needs of this case. Liberty Mutual further objects to this Request to the extent the Request seeks Documents that are protected by the attorney-client privilege, the attorney work product doctrine, the mediation privilege, or any other applicable privilege, immunity or protection from discovery. Liberty Mutual further objects to this Request to the extent that it calls for a legal conclusion. Liberty Mutual further objects to this Request to the extent it seeks Documents or information publicly available, or already in the possession, custody, or control of the Debtors.

Notwithstanding said objections, Liberty Mutual directs Debtors to (i) the "Joinder and Supplemental Objection of Liberty Mutual Insurance Company to the Disclosure Statement for the Fourth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC" ("Liberty Mutual's Objection to Fourth Amended Plan") (Docket No. 6057), as well as the documents and pleadings cited therein, and (ii) "Certain Insurers' Objection to Debtors' Motion for Entry of an Order, Pursuant to Sections 363(b) and 105(a) of the

15

Bankruptcy Code, (I) Authorizing the Debtors to Enter Into and Perform Under the Restructuring Support Agreement and (II) Granting Related Relief" (Docket No. 5684), as well as the documents and pleadings cited therein. In addition, Liberty Mutual directs Debtors to the Risk Factors set forth in Article X of the Disclosure Statement, including, without limitation, the insurance coverage risks discussed therein.

Finally, discovery is ongoing.   Liberty Mutual reserves the right to supplement this Answer in accordance with Federal Rule of Civil Procedure 26(e) and Federal Rule of Bankruptcy Procedure 7026.

**REQUEST NO. 13**:

All Documents You identified, reviewed, relied upon, or referenced in responding to Debtors' First Set of Interrogatories.

**RESPONSE NO. 13:**

In addition to and without waiving the General Objections stated above, Liberty Mutual objects to this Request because it is overbroad and seeks information or Documents that are not relevant to any party's claim or defense in this bankruptcy case in general, and the Confirmation Hearing in particular, nor is it proportional to the needs of this case. Liberty Mutual further objects to this Request to the extent the Request seeks documents that are protected by the attorney-client privilege, the attorney work product doctrine, the mediation privilege or any other applicable privilege, immunity or protection from discovery.

**REQUEST NO. 14**:

All Documents relating to Debtors' alleged breach of any Policy issued by You.

16

**RESPONSE NO. 14:**

In addition to and without waiving the General Objections stated above, Liberty Mutual

objects to this Request to the extent that it is overbroad and seeks information or Documents that

are not relevant to any party's claim or defense in this bankruptcy case in general, and the

Confirmation Hearing in particular, nor is it proportional to the needs of this case. Liberty

Mutual further objects to the extent that this Request seeks information or Documents regarding

Policies issued to Debtors, given that Liberty Mutual did not issue any Policies to Delaware

BSA, LLC. Liberty Mutual further objects to this Request to the extent that the information or

Documents sought are not relevant to confirmation of the "Modified Fifth Amended Chapter 11

Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC" (the "Fifth

Amended Plan").  Liberty Mutual further objects to this Request to the extent that the

information or Documents sought seek to answer a question regarding insurance coverage, which

this Court has explicitly stated it will not address.[4]

**REQUEST NO. 15**:

All Documents relating to any prejudice which You allegedly suffered as a result of

Debtors' alleged breach of the Policies' terms or conditions.

**RESPONSE NO. 15:**

In addition to and without waiving the General Objections stated above, Liberty Mutual

objects to this Request to the extent that it is overbroad and seeks information or Documents that

are not relevant to any party's claim or defense in this bankruptcy case in general, and the

---

[4]        On May 19, 2021, during a Disclosure Statement hearing in this case, the Honorable
Laurie Selber Silverstein, Chief United States Bankruptcy Judge, stated that, "no coverage issue is going
to be adjudicated." (Tr., 241:22). Judge Silverstein went on to state, "I will read the motion very carefully,
but I can tell everyone right now that I can't imagine I would decide a coverage issue. How is that part of
this process?" (Tr., 242: 9-11) (the "May 19 Statements").

Confirmation Hearing in particular, nor is it proportional to the needs of this case. Liberty

Mutual further objects to the extent that this Request seeks information or Documents regarding

Policies issued to Debtors, given that Liberty Mutual did not issue any Policies to Delaware

BSA, LLC. Liberty Mutual further objects to this Request to the extent that the information or

Documents sought are not relevant to confirmation of the Fifth Amended Plan.  Liberty Mutual

further objects to this Request to the extent that the information or Documents sought seek to

answer a question regarding insurance coverage, which this Court has explicitly stated it will not

address.[5/]

**REQUEST NO. 16**:

All communications containing facts or data relied on by any expert that you intend to

call to testify at the Confirmation Hearing in forming the opinions that the expert intends to

express.

**RESPONSE NO. 16:**

In addition to and without waiving the objections stated above, Liberty Mutual objects to

this Request to the extent that it is vague, overbroad and seeks information that is not relevant to

any party's claim or defense in this bankruptcy case in general, and the Confirmation Hearing in

particular, nor is it proportional to the needs of this case. Liberty Mutual further objects to this

Request to the extent the Request seeks information that is protected by the attorney-client

privilege, the attorney work product doctrine, the mediation privilege or any other applicable

privilege, immunity or protection from discovery.  Liberty Mutual objects to this Request to the

extent that it is under no obligation to submit any evidence at the Confirmation Hearing to satisfy

the standards for the confirmation of the Fifth Amended Plan.

---

[5/]    *See,* the May 19 Statements.

Notwithstanding and without waiving said objections, Liberty Mutual will provide a Response to this Request in compliance with the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware and any pre-hearing order of this Court.   Discovery is ongoing.   Liberty Mutual reserves the right to supplement this Response in accordance with Federal Rule of Civil Procedure 26(e) and Federal Rule of Bankruptcy Procedure 7026.

**REQUEST NO. 17**:

All Documents that you intend to introduce or rely upon at the Confirmation Hearing.

**RESPONSE NO. 17:**

In addition to and without waiving the General Objections stated above, Liberty Mutual objects to this Request to the extent that it is vague, overbroad and seeks information or Documents that are not relevant to any party's claim or defense in this bankruptcy case in general, and the Confirmation Hearing in particular, nor is it proportional to the needs of this case. Liberty Mutual further objects to this Request to the extent the Request seeks information or Documents that are protected by the attorney-client privilege, the attorney work product doctrine, the mediation privilege, or any other applicable privilege, immunity or protection from discovery.

Notwithstanding said objections, Liberty Mutual will provide a Response to this Request in compliance with the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware and any pre-hearing order of this Court. In addition, discovery is ongoing.   Liberty Mutual reserves the right to supplement this Response in accordance with Federal Rule of Civil Procedure 26(e) and Federal Rule of Bankruptcy Procedure 7026.

Dated:  October 18, 2021                    SEITZ, VAN OGTROP & GREEN, P.A.

*/s/ R. Karl Hill*
R. Karl Hill (No. 2747)
222 Delaware Avenue
Suite 1500
Wilmington, Delaware 19801
Tel: (302) 888-0600
Email: Khill@svglaw.com


-and-

*/s/ Kim V. Marrkand*
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.
Kim V. Marrkand (admitted *pro hac vice*)
Laura Bange Stephens (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
Tel: (617) 542-6000
Email: KMarrkand@mintz.com
            LBStephens@mintz.com

-and-

*/s/ Douglas R. Gooding*
CHOATE HALL & STEWART, LLP
Douglas R. Gooding (admitted *pro hac vice*)
Jonathan D. Marshall (admitted *pro hac vice*)
Two International Place
Boston, MA 02110
Tel: (617)248-5000
Email: dgooding@choate.com
            jmarshall@choate.com

*Co-Counsel for Liberty Mutual Insurance
Company*

117499037

20

Exhibit C

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC<br><br>Debtors.[1/] | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

**LIBERTY MUTUAL'S OBJECTIONS AND ANSWERS TO DEBTORS'
FIRST SET OF INTERROGATORIES TO LIBERTY MUTUAL**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Federal Rules of Bankruptcy

Procedure 7026 and 7033, and the Local Rules of Bankruptcy Practice and Procedure of the

United States Bankruptcy Court for the District of Delaware, Liberty Mutual Insurance

Company, together with certain of its affiliates and subsidiaries (collectively, "Liberty

Mutual"),[2/] by and through their undersigned counsel, hereby object and respond to *Debtors'*

*First Set of Interrogatories to Liberty Mutual* (each an "Interrogatory" and collectively, the

"Interrogatories").

**PRELIMINARY STATEMENT AND RESERVATION OF RIGHTS**

These answers made by Liberty Mutual to Debtors' Interrogatories (each an "Answer

and collectively, the "Answers") are made solely for the purpose of this action, and are made

without waiving, or intending to waive, but on the contrary, expressly reserving: (a) the right to

object on the grounds of competency, propriety, admissibility, privilege, relevancy, or

---

[1/]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving TX 75038.

[2/]    The term "Liberty Mutual" as used herein shall refer to Liberty Mutual Insurance Company together with its affiliates and subsidiaries, including The Ohio Casualty Insurance Company, Liberty Surplus Insurance Corporation, and Liberty Insurance Underwriters, Inc.

materiality, or any other proper grounds, to the use of the Answers or any facts, information, or documents identified herein, for any purpose, in whole or in part, in any subsequent step or proceeding in this action, or any other action; (b) the right to object on any and all grounds, at any time, to the Interrogatories or other discovery procedures, involving, or relating to, the subject matter of the Answers; and (c) the right, at any time, to revise, correct, add to, or clarify any of the Answers provided herein.

The Answers are based upon the facts and information presently known and available to Liberty Mutual.  Discovery is ongoing.  The Answers are given without prejudice to Liberty Mutual's right to amend, supplement or modify.

## GENERAL OBJECTIONS AND OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

Liberty Mutual makes the following objections to the Interrogatories[3/] and incorporates them into its Answer to each and every Interrogatory, whether or not specifically stated in any individual Answer.

1.    Liberty Mutual objects to any Interrogatory calling for discovery that is outside the allowable limits of the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, or the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

2.    Liberty Mutual objects to the Interrogatories (including the Definitions and Instructions related thereto) to the extent that they are vague, overbroad, include Debtors' use of terms that are not defined and/or not otherwise susceptible to any single meaning, duplicative, unduly burdensome, oppressive, vexatious, or seek information that is neither relevant to any party's claim or defense nor proportional to the needs of the case, and the parties' relative access to relevant information.

---

[3/]    The general objections and objections to definitions and instructions shall hereinafter collectively be referred to as the "General Objections".

3.      Liberty Mutual objects to the Interrogatories to the extent they call for the identification of information subject to a claim of privilege, immunity, or other legal protection, including the attorney-client privilege, the attorney work-product doctrine, the common interest doctrine, the mediation privilege, or any other applicable legal privilege, rule, or immunity from disclosure.  The inadvertent disclosure of any information subject to such privileges or immunities is not intended to relinquish any privilege or immunity and shall not be deemed to constitute a waiver of any applicable privilege or immunity.

4.      Liberty Mutual objects to the Interrogatories to the extent they seek confidential and/or proprietary information, or which may implicate a privacy interest.  To the extent that Liberty Mutual discloses any such responsive, non-privileged information, it does so without waiving this objection and subject to the Confidentiality and Protective Order approved by the Court on June 8, 2020. *See* "Order Approving Confidentiality and Protective Order" (Docket No. 799).

5.      Liberty Mutual objects to the Interrogatories to the extent they seek information that is equally or already within Debtors' possession, custody, or control.

6.      Liberty Mutual objects to the Interrogatories to the extent they request information not limited by a proper time frame and, therefore, seek information not relevant to this action.

7.      Liberty Mutual objects to the Interrogatories to the extent they seek information not within Liberty Mutual's possession, custody, or control.

8.      Liberty Mutual objects to the Interrogatories to the extent that they assume the truth of facts not proven or facts not in evidence or constitute an inaccurate characterization of the facts. Liberty Mutual does not admit, adopt, or acquiesce to any factual or legal contention, assertion, characterization, or implication that is contained in any of the Interrogatories.

9.      Liberty Mutual reserves all objections relating to the admissibility of evidence.

10.     Liberty Mutual objects to Debtors' Interrogatories to the extent that they seek information regarding insureds, or alleged insureds who are not parties to the present action, and insurance policies other than the LM Policies, or Excess Policies, as defined below, on the grounds of relevancy, the attorney-client privilege, the mediation privilege, and the attorney work-product doctrine.

11.     Liberty Mutual objects to **Definition No. 1** of the term "**Abuse Claims**" as vague and to the extent that the Debtors' use of the phrase in their Interrogatories and the failure of the Debtors' to distinguish the term "Abuse Claims" from the term "sexual abuse claims" creates confusion. To avoid any further confusion, for purposes of its Answers to Debtors' Interrogatories, Liberty Mutual shall hereinafter use the term "Abuse Claims" to refer to any claim for sexual abuse against the Debtors and the term "sexual abuse claims" as claims other than those sexual abuse claims against the Debtors.

12.     Liberty Mutual objects to **Definition No. 3** of the term "**Liberty Mutual**" to the extent that it includes "Liberty Mutual Insurance Companies". "Liberty Mutual Insurance Companies" does not exist.

13.     Liberty Mutual objects to **Definition No. 4** of the terms "**You**" and "**Your**" as overbroad, not relevant and disproportionate to the needs of the case.

14.     Liberty Mutual objects to **Definition No. 8** of the term "**Document**" to the extent that it does not comply with Federal Rule of Civil Procedure 34. For purposes of its Answers to the Debtors' Interrogatories, Liberty Mutual shall hereinafter use the term "Documents" as it is defined under Federal Rule of Civil Procedure 34.

15.     Liberty Mutual objects to **Definition No. 9** to the extent it defines **"Policy"** to include "any part(s) of any such insurance policy, including any declarations pages, endorsements, riders, binders, policy jackets, standard forms, inserts, or any other item that is or could be construed to be a part of or related to the terms of such insurance policy."  Such definition is overbroad and disproportionate to the needs of the case.

The foregoing objections are applicable to, and incorporated into, each and every Answer to Debtors' Interrogatories.  To the extent that any of these objections is specifically referenced in response to any individual Interrogatory, such specific objection is provided because it is believed to be particularly applicable to the specific Interrogatory and is not to be construed as a waiver of any of the General Objections.

## SPECIFIC OBJECTIONS AND ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1**:

Identify all Persons who had responsibility for, or who have knowledge regarding the handling, investigation, evaluation, processing, adjusting, review or determination of the Abuse Claims or Debtor's claims for coverage for the Abuse Claims under Policies issued to Debtors, and for each person, describe the nature of that Person's responsibility or knowledge.

**ANSWER NO. 1**:

In addition to and without waiving the General Objections, Liberty Mutual objects to this Interrogatory to the extent that it is overbroad and seeks information that is not relevant to any party's claim or defense in this bankruptcy case in general, and the Confirmation Hearing in particular, nor is it proportional to the needs of this case. Liberty Mutual further objects to the extent that this Interrogatory seeks information regarding Policies issued to Debtors, given that Liberty Mutual did not issue any Policies to Delaware BSA, LLC.  Notwithstanding and without waiving said objections, with regard to Abuse Claims, it is undisputed that Liberty Mutual

Insurance Company issued a series of primary and umbrella general liability policies to Boy Scouts of America ("BSA") between March 1, 1996 and March 1, 2008 (the "LM Policies"). All of the LM Policies are fronting policies, such that BSA alone was responsible for the Abuse Claims. BSA paid all indemnity and defense costs for Abuse Claims arising under the LM Policies. There was no risk transfer to Liberty Mutual with respect to the LM Policies, and all Abuse Claims were the responsibility of BSA. Liberty Mutual was not involved in the selection of defense counsel, the defense, or the resolution of any Abuse Claims under the LM Policies.

Ohio Casualty Insurance Company ("OCAS") issued a series of high-level excess liability policies to BSA between March 1, 2008 and March 1, 2019; Liberty Insurance Underwriters, Inc. ("LIU") issued three high-level excess liability policies to BSA between March 1, 2011 and March 1, 2021; and Liberty Surplus Insurance Corporation ("LSIC") issued a high-level excess liability policy to BSA between March 1, 2013 and March 1, 2014 (collectively, the "Excess Policies"). OCAS, LIU, and LSIC were not involved in the selection of defense counsel, the defense, or resolution of Abuse Claims under the Excess Policies, nor did they make any payments under the Excess Policies.

With respect to the Persons who had responsibility for or have knowledge regarding Abuse Claims or Debtors' claims for coverage for Abuse Claims under the LM Policies and Excess Policies, Liberty Mutual refers Debtors to BSA's Risk Management and Legal Departments.

**INTERROGATORY NO. 2**:

Identify all Persons who had responsibility for, or who have knowledge regarding the handling, investigation, evaluation, processing, adjusting, review or determination of any sexual abuse claims under any Policy.

**ANSWER NO. 2**:

In addition to and without waiving the General Objections, Liberty Mutual objects to this Interrogatory to the extent that it is vague, overbroad and seeks information that is not relevant to any party's claim or defense in this bankruptcy case in general, and the Confirmation Hearing in particular, nor is it proportional to the needs of this case. Liberty Mutual further objects to this Interrogatory to the extent that it seeks information not within Liberty Mutual's possession, custody, or control.  In addition, with regard to any sexual abuse claims against parties other than the Debtors, Liberty Mutual objects to this Interrogatory to the extent it seeks information that is not relevant to this bankruptcy case in general, and the Confirmation Hearing in particular, as counsel for the Coalition of Abused Scouts for Justice (the "Coalition") has admitted.[4] Notwithstanding and without waiving said objections, with regard to Abuse Claims, it is undisputed that Liberty Mutual Insurance Company issued the LM Policies to BSA.  All of the LM Policies are fronting policies, such that BSA alone was responsible for Abuse Claims. BSA paid all indemnity and defense costs for Abuse Claims arising under the LM Policies.  There was no risk transfer to Liberty Mutual with respect to the LM Policies, and all Abuse Claims were the

---

[4]        The Coalition is a proponent of the Plan. On October 5, 2021, during a Zoom hearing in this case before the Honorable Laurie Selber Silverstein, Chief United States Bankruptcy Judge, Eric Goodman, Esq., counsel for the Coalition stated to the Court:

> In terms of discovery . . . I think the issue is whether or not the proposed plan treatment for abuse claims, which is that the settlements be based on -- or the claim values be based on the debtors' historical settlements and experience in the tort system, is really what would be driving the discovery process going forward.  Our expectation is that the debtors will be able to prove at confirmation that the trust distribution procedure values and factors are in fact consistent with the debtors' historical settlements and experience in the tort system.  (Tr., 15:23-16:8)

("Goodman October 5 Statement").

7

responsibility of BSA.  Liberty Mutual was not involved in the selection of defense counsel, the defense, or the resolution of any Abuse Claims under the LM Policies.

OCAS, LIU, and LSIC issued the Excess Policies to BSA. OCAS, LIU, and LSIC were not involved in the selection of defense counsel, the defense, or resolution of Abuse Claims under the Excess Policies, nor did they make any payments under the Excess Policies.

With respect to the Persons who had responsibility for or have knowledge regarding sexual abuse claims or Debtors' claims for coverage for sexual abuse claims, Liberty Mutual refers Debtors to BSA's Risk Management and Legal Departments.

**INTERROGATORY NO. 3**:

Identify Your procedures, practices and policies for valuing and/or evaluating sexual abuse claims, including but not limited to identifying any database, computer system or other system that You use in valuing and/or evaluating sexual-abuse claims, and the categories of information stored on such systems.

**ANSWER NO. 3**:

In addition to and without waiving the General Objections stated above, Liberty Mutual objects to this Interrogatory to the extent that it is vague, overbroad, and seeks information that is not relevant to any party's claim or defense in this bankruptcy case in general, and the Confirmation Hearing in particular, nor is it proportional to the needs of this case. With regard to any sexual abuse claims against parties other than the Debtors, this Interrogatory seeks information that is not relevant to this bankruptcy case in general, and the Confirmation Hearing in particular, as counsel for the Coalition has admitted.[5]

---

[5]    *See* Goodman October 5 Statement.

**INTERROGATORY NO. 4**:

Identify Your policies, practices and procedures for evaluating and valuing sexual abuse claims that are filed outside the statute of limitations, including identifying any sexual abuse claims that have been filed outside the statute of limitations that You have settled, the attorneys fees associated with such claims, and the amounts of settlement payments.

**ANSWER NO. 4**:

In addition to and without waiving the General Objections stated above, Liberty Mutual objects to this Interrogatory to the extent that it is vague, overbroad and seeks information that is not relevant to any party's claim or defense in this bankruptcy case in general, and the Confirmation Hearing in particular, nor is it proportional to the needs of this case. Notwithstanding and without waiving said objections, with regard to any sexual abuse claims against parties other than the Debtors, this Interrogatory seeks information that is not relevant to this bankruptcy case in general, and the Confirmation Hearing in particular, as counsel for the Coalition has admitted.[6/]

**INTERROGATORY NO. 5**:

Identify all Persons responsible for determining the value or the veracity of sexual abuse claims, including all Persons responsible for approving or authorizing settlement amounts under Policies issued to Debtors.

**ANSWER NO. 5**:

In addition to and without waiving the General Objections stated above, Liberty Mutual objects to this Interrogatory to the extent that it is vague, overbroad and it seeks information that is not relevant to any party's claim or defense in this bankruptcy case in general, and the

---

[6/]    *See* Goodman October 5 Statement.

Confirmation Hearing in particular, nor is it proportional to the needs of this case. Liberty Mutual further objects to the extent that this Interrogatory seeks information regarding Policies issued to Debtors, given that Liberty Mutual did not issue any Policies to Delaware BSA, LLC. Notwithstanding and without waiving said objections, with regard to any sexual abuse claims against parties other than the Debtors, this Interrogatory seeks information that is not relevant to this bankruptcy case in general, and the Confirmation Hearing in particular, as counsel for the Coalition has admitted.[7]

**INTERROGATORY NO. 6**:

Identify all settlement amounts You paid for Abuse Claims under Policies issued to the Debtors.

**ANSWER NO. 6**:

In addition to and without waiving the General Objections stated above, Liberty Mutual objects to this Interrogatory to the extent that it is overbroad and it seeks information that is not relevant to any party's claim or defense in this bankruptcy case in general, and the Confirmation Hearing in particular, nor is it proportional to the needs of this case. Liberty Mutual further objects to the extent that this Interrogatory seeks information regarding Policies issued to Debtors, given that Liberty Mutual did not issue any Policies to Delaware BSA, LLC.

Notwithstanding and without waiving said objections, with regard to the Abuse Claims, it is undisputed that Liberty Mutual Insurance Company issued the LM Policies to BSA.  All of the LM Policies are fronting policies, such that BSA alone was responsible for Abuse Claims. BSA paid all indemnity and defense costs for Abuse Claims arising under the LM Policies.  There was no risk transfer to Liberty Mutual with respect to the LM Policies, and all Abuse Claims were the

---

[7]    *See* Goodman October 5 Statement.

responsibility of BSA.  Liberty Mutual was not involved in the selection of defense counsel, the defense, or the resolution of any Abuse Claims under the LM Policies.  Liberty Mutual did not pay any settlement amounts for Abuse Claims under the LM Policies.

With respect to settlement amounts BSA paid for Abuse Claims under the LM Policies and Excess Policies, Liberty Mutual refers Debtors to BSA's Risk Management and Legal Departments.

OCAS, LIU, and LSIC issued the Excess Policies to BSA. OCAS, LIU, and LSIC were not involved in the selection of defense counsel, the defense, or resolution of Abuse Claims under the Excess Policies, nor did they make any payments under the Excess Policies.

**INTERROGATORY NO. 7**:

Identify all Policies for which reserves are set regarding Debtors' pursuit of insurance coverage for the Abuse Claims, including the amount set for reserves in all Policies. In Your response, Identify each person with knowledge regarding reserves set for all Policies.

**ANSWER NO. 7**:

In addition to and without waiving the General Objections stated above, Liberty Mutual objects to this Interrogatory to the extent that it is overbroad and seeks information that is not relevant to any party's claim or defense in this bankruptcy case in general, and the Confirmation Hearing in particular, nor is it proportional to the needs of this case. Liberty Mutual further objects to this Interrogatory to the extent that it seeks information that is confidential and proprietary.

**INTERROGATORY NO. 8**:

Identify all Reinsurance Agreements and Identify any Employee who was involved with the submission of the Abuse Claims pursuant to any such Reinsurance Agreements.

**ANSWER NO. 8**:

In addition to and without waiving the General Objections stated above, Liberty Mutual objects to this Interrogatory to the extent that it is overbroad and seeks information that is not relevant to any party's claim or defense in this bankruptcy case in general, and the Confirmation Hearing in particular, nor is it proportional to the needs of this case. Liberty Mutual further objects to this Interrogatory to the extent that it seeks information that is confidential and proprietary.

**INTERROGATORY NO. 9**:

Identify any provision or term in Your Policies that you contend the Debtors have allegedly breached, including all facts and documents supporting such contention.

**ANSWER NO. 9**:

In addition to and without waiving the General Objections stated above, Liberty Mutual objects to this Interrogatory to the extent that it is overbroad and it seeks information that is not relevant to any party's claim or defense in this bankruptcy case in general, and the Confirmation Hearing in particular, nor is it proportional to the needs of this case. Liberty Mutual further objects to the extent that this Interrogatory seeks information regarding Policies issued to Debtors, given that Liberty Mutual did not issue any Policies to Delaware BSA, LLC. Liberty Mutual further objects to this Interrogatory to the extent that the information sought is not relevant to confirmation of the "Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC" (the "Fifth Amended Plan").  Liberty Mutual

further objects to this Interrogatory to the extent that the information sought seeks to answer a question regarding insurance coverage, which this Court has explicitly stated it will not address.[8]

**INTERROGATORY NO. 10**:

Identify, describe, and explain any contention that the Debtors' Plan is not insurance neutral.

**ANSWER NO. 10**:

In addition to and without waiving the General Objections, Liberty Mutual objects to this Interrogatory to the extent it calls for a legal conclusion. Notwithstanding and without waiving said objections, Liberty Mutual directs Debtors to (i) the "Joinder and Supplemental Objection of Liberty Mutual Insurance Company to the Disclosure Statement for the Fourth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC" ("Liberty Mutual's Objection to Fourth Amended Plan") (Docket No. 6057), as well as the documents and pleadings cited therein, and (ii) "Certain Insurers' Objection to Debtors' Motion for Entry of an Order, Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code, (I) Authorizing the Debtors to Enter Into and Perform Under the Restructuring Support Agreement and (II) Granting Related Relief" (Docket No. 5684), as well as the documents and pleadings cited therein. In addition, Liberty Mutual directs Debtors to the Risk Factors set forth in Article X of the Disclosure Statement, including, without limitation, the insurance coverage risks discussed therein.

---

[8]     On May 19, 2021, during a Disclosure Statement hearing in this case, the Honorable Laurie Selber Silverstein, Chief United States Bankruptcy Judge, stated that, "no coverage issue is going to be adjudicated." (Tr., 241:22). Judge Silverstein went on to state, "I will read the motion very carefully, but I can tell everyone right now that I can't imagine I would decide a coverage issue. How is that part of this process?" (Tr., 242: 9-11)

==Finally, discovery is ongoing.== ==Liberty Mutual reserves the right to supplement this Answer in accordance with Federal Rule of Civil Procedure 26(e) and Federal Rule of Bankruptcy Procedure 7026.==

**INTERROGATORY NO. 11**:

Identify all Persons who assisted You in any way in responding to any of these Interrogatories, including each Interrogatory number(s) with which he or she assisted in answering, regardless of whether the assistance he or she provided was incorporated into the final answer.

**ANSWER NO. 11**:

In addition to and without waiving the General Objections stated above, Liberty Mutual objects to this Interrogatory to the extent that it is vague, overbroad and seeks information that is not relevant to any party's claim or defense in this bankruptcy case in general, and the Confirmation Hearing in particular, nor is it proportional to the needs of this case. Notwithstanding and without waiving said objections, in addition to Liberty Mutual's in-house counsel and outside counsel, Adam Woellert, Special Technical Claims Specialist II of Liberty Mutual assisted in the drafting of Liberty Mutual's Objections and Answers to Debtors' First Set of Interrogatories.

**INTERROGATORY NO. 12**:

Identify all Individuals that you intend to call to testify at the Confirmation Hearing and provide a brief description of the subject matter of their testimony.

**ANSWER NO. 12**:

In addition to and without waiving the General Objections, Liberty Mutual objects to this Interrogatory to the extent that it is under no obligation to submit any evidence at the

14

Confirmation Hearing to satisfy the standards for the confirmation of the Fifth Amended Plan. Notwithstanding said objections, Liberty Mutual will provide an Answer to this Interrogatory in compliance with the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware and any pre-hearing order of this Court.  Liberty Mutual further states that discovery related to the Confirmation Hearing has recently commenced and that Liberty Mutual has not identified any witnesses that it may call to testify at the Confirmation Hearing, nor has Liberty Mutual identified the subject matter of such testimony. In addition, discovery is ongoing.  Liberty Mutual reserves the right to supplement this Answer in accordance with Federal Rule of Civil Procedure 26(e) and Federal Rule of Bankruptcy Procedure 7026.

## **<u>VERIFICATION</u>**

I, Adam K. Woellert, am a Senior Technical Claims Specialist II with Liberty Mutual Insurance Company.  I am authorized to sign *Liberty Mutual's Objections and Answers to Debtors' First Set of Interrogatories to Liberty Mutual*.  The information contained herein was compiled by representatives and employees of Liberty Mutual, and is true and correct to the best of my knowledge and belief.

*Adam K. Woellert*

Adam K. Woellert

Date:  October 18, 2021

AS TO OBJECTIONS:

Dated: October 18, 2021

SEITZ, VAN OGTROP & GREEN, P.A.

*/s/ R. Karl Hill*
R. Karl Hill (No. 2747)
222 Delaware Avenue
Suite 1500
Wilmington, Delaware 19801
Tel: (302) 888-0600
Email: Khill@svglaw.com

-and-

*/s/ Kim V. Marrkand*
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.
Kim V. Marrkand (admitted *pro hac vice*)
Laura Bange Stephens (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
Tel: (617) 542-6000
Email: KMarrkand@mintz.com
         LBStephens@mintz.com

-and-

*/s/ Douglas R. Gooding*
CHOATE HALL & STEWART, LLP
Douglas R. Gooding (admitted *pro hac vice*)
Jonathan D. Marshall (admitted *pro hac vice*)
Two International Place
Boston, MA 02110
Tel: (617)248-5000
Email: Dgooding@choate.com
         Jmarshall@choate.com

*Co-Counsel for Liberty Mutual Insurance*
*Company*

117499049

# Exhibit D

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

**THE AIG COMPANIES' RESPONSES AND OBJECTIONS TO**
**DEBTORS' FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, The Insurance Company of the State of Pennsylvania, and their affiliated entities (collectively referred to herein as "AIG") hereby submit the following responses and objections to Boy Scouts of America ("BSA") and Delaware BSA, LLC's (the "Debtors") First Set of Requests for the Production of Documents to AIG (the "Request" or "Requests").

**GENERAL OBJECTIONS**

AIG asserts the following General Objections ("General Objections") to the Requests, including the definitions, instructions, and requests therein, each of which is hereby incorporated by reference into each individual response below. From time to time, and for the purpose of emphasis, AIG may restate one or more of the General Objections as specific objections to individual requests. The absence of such restatement in favor of an incorporation by reference does not constitute, and should not be taken as, a waiver of any General Objection not restated.

Unless otherwise specified, AIG's objections apply to each Request in full, including each and every subsection and/or subpart thereof.

1.      AIG objects to the Requests as vague, ambiguous, overbroad, unduly burdensome, harassing, and oppressive to the extent they seek information neither relevant to the subject matter of the Plan confirmation proceedings nor reasonably calculated to lead to the discovery of admissible evidence.  Such Requests include but are not limited to those that seek information related to the coverage afforded by AIG insurance policies, as such information is entirely irrelevant for purposes of Plan confirmation.

2.      AIG objects to the extent the Requests seek information protected by the attorney-client privilege, the attorney work-product rule, the joint defense or joint efforts doctrine/privilege, the common interest doctrine, the mediation privilege, the settlement privilege, or any other applicable privilege or protection.  In responding to these Requests, AIG does not waive or intend to waive any privilege with respect to all information and documents subject thereto.

3.      AIG objects to the extent the Requests seek to impose burdens and obligations exceeding those imposed by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, or any applicable Court order.  AIG will respond to these Requests in accordance with the requirements of the aforementioned Rules or orders, subject to all applicable objections and protections.

4.      AIG objects on the bases that the Requests are overbroad, unduly burdensome, harassing, and oppressive to the extent they require more than a reasonable and diligent investigation of AIG's records.  Such requests include those that seek production of "any" or "all" document(s), information, communication(s), correspondence(s), file(s), material(s) or similar terms.

5.      AIG objects that the Requests are overbroad, unduly burdensome, harassing, and oppressive to the extent they seek information which is not reasonably available to AIG or within its possession, custody, or control.

6.      AIG objects to the Requests as vague, ambiguous, overbroad, unduly burdensome, harassing, and oppressive to the extent they seek information equally available to the Debtors from other sources.

7.      AIG objects that the Requests are overbroad, unduly burdensome, harassing, oppressive, and premature to the extent they seek information concerning legal contentions and supporting facts that are not reasonably ascertainable or available at this stage of the proceedings. Discovery is ongoing in this action, and AIG's responses are based upon the facts and information presently known and available to AIG.  AIG reserves the right to amend, supplement, or modify its response to any such Request.

8.      AIG objects to the Requests as vague, ambiguous, harassing, and oppressive to the extent they misstate or mischaracterize AIG's contentions or positions.

9.      AIG objects to the Requests to the extent they seek information that would violate any constitutional, statutory, or common law privacy interest of any current or former employee or representative of AIG, any current or former policyholder of AIG, or any other person or entity.

10.     AIG objects to the Requests as vague, ambiguous, overbroad, unduly burdensome, harassing, and oppressive to the extent they seek information concerning a time period other than the one which is appropriate to the particular Request in question.  AIG further objects to the Requests as vague, ambiguous, overbroad, and unduly burdensome to the extent they do not specify the applicable time period.

11.     AIG objects to the Requests to the extent they seek information concerning trade secrets or proprietary or other confidential business information.

12.     AIG objects to the definitions of the terms "You" and "Your" as overbroad, irrelevant to Plan confirmation proceedings, and not proportionate to the needs of the case.

13.     AIG objects to the definition of "Policy" as overbroad, irrelevant to Plan confirmation proceedings, and not proportionate to the needs of the case.

14.     In providing these responses, AIG does not waive or intend to waive any objections to competency, relevancy, materiality, authenticity, or admissibility.

**SPECIFIC OBJECTIONS AND RESPONSES**

**REQUEST FOR PRODUCTION NO. 1**

All Documents, including without limitation claims-handling manuals, guidelines, policies, practices, directives, and procedures, that relate to Your handling, processing, adjusting, review, investigation, evaluation, acceptance, denial, reservation of rights, or other response to sexual abuse claims under any Policy.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG objects to this Request to the extent it seeks information or documents subject to the work product doctrine, attorney-client privilege, common interest privilege, mediation privilege, settlement privilege, or any other applicable protection or privilege.

AIG further objects to this Request as overbroad, unduly burdensome, seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case because it pertains to insurance coverage disputes that are not at issue during the Plan confirmation proceedings. *See, e.g.*, Sept. 23, 2021

Hr'g Tr. at 210:1-211:2.  Moreover, this Request, in using the undefined term "sexual abuse claims," seeks information related to insurance policies issued to insureds other than the Debtors and to claims that were made outside of the scope of these proceedings, which is not relevant or reasonably calculated to lead to the discovery of admissible evidence.  Such information is also confidential, proprietary, and private.

AIG further objects to this Request on the grounds that it seeks information that constitutes trade secrets or other confidential, proprietary, or sensitive business information.

**REQUEST FOR PRODUCTION NO. 2**

All Documents concerning Your evaluation and valuation of Abuse Claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG objects to this Request to the extent it seeks information or documents subject to the work product doctrine, attorney-client privilege, common interest privilege, mediation privilege, settlement privilege, or any other applicable protection or privilege.

AIG further objects to this Request as overbroad, unduly burdensome, seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case because it pertains to insurance coverage disputes that are not at issue during the Plan confirmation proceedings.  *See, e.g.*, Sept. 23, 2021 Hr'g Tr. at 210:1-211:2.

AIG objects to this Request as vague and ambiguous in its use of, among other language, the terms "evaluation" and "valuation."

AIG further objects to this Request on the grounds that it seeks information that constitutes trade secrets or other confidential, proprietary, or sensitive business information.

AIG objects to this Request as mischaracterizing AIG's business practice and custom of processing each claim on a claim-by-claim basis according to the unique facts and circumstances of that particular claim.

With respect to reservation of rights letters issued to BSA by AIG, these documents have been provided to and are in the possession of the Debtors.

**REQUEST FOR PRODUCTION NO. 3**

All Documents concerning any database, computer system, or other system that contains or reflects information about the Abuse Claims, including but not limited to databases, indices, computer programs, computer software, and computer databases that reflect methodologies or practices for valuing or otherwise evaluating Abuse Claims, and the results of such valuation or evaluation processes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG objects to this Request to the extent it seeks information or documents subject to the work product doctrine, attorney-client privilege, common interest privilege, mediation privilege, settlement privilege, or any other applicable protection or privilege.

AIG further objects to this Request as overbroad, unduly burdensome, seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case because it pertains to insurance coverage

disputes that are not at issue during the Plan confirmation proceedings.  *See, e.g.*, Sept. 23, 2021 Hr'g Tr. at 210:1-211:2.

AIG objects to this Request as vague and ambiguous in its use of, among other language, the terms "methodologies or practices," "evaluation," and "valuation."

AIG further objects to this Request on the grounds that it seeks information that constitutes trade secrets or other confidential, proprietary, or sensitive business information.

AIG objects to this Request as mischaracterizing AIG's business practice and custom of processing each claim on a claim-by-claim basis according to the unique facts and circumstances of that particular claim.

**REQUEST FOR PRODUCTION NO. 4**

All Documents and Communications concerning Your policies, practices and procedures that would apply to valuing or evaluating Abuse Claims that were filed after the expiration of any applicable statute of limitations or were filed in jurisdictions where the statute of limitations with respect to sexual abuse claims may change, including, without limitation, any policies, procedures or practices that prohibit settling or otherwise resolving such sexual-abuse claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG objects to this Request to the extent it seeks information or documents subject to the work product doctrine, attorney-client privilege, common interest privilege, mediation privilege, settlement privilege, or any other applicable protection or privilege.

AIG further objects to this Request as overbroad, unduly burdensome, seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible

evidence, and not proportional to the needs of the case because it pertains to insurance coverage disputes that are not at issue during the Plan confirmation proceedings. *See, e.g.*, Sept. 23, 2021 Hr'g Tr. at 210:1-211:2. Moreover, this Request, in using the undefined term "sexual abuse claims," seeks information related to insurance policies issued to insureds other than the Debtors and to claims that were made outside of the scope of these proceedings, which is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Such information is also confidential, proprietary, and private.

AIG objects to this Request as vague and ambiguous in its use of, among other language, the terms "methodologies or practices," "evaluation," and "valuation."

AIG further objects to this Request on the grounds that it seeks information that constitutes trade secrets or other confidential, proprietary, or sensitive business information.

AIG objects to this Request as mischaracterizing AIG's business practice and custom of processing each claim on a claim-by-claim basis according to the unique facts and circumstances of that particular claim. AIG further objects to this Request as unduly burdensome and mischaracterizing AIG's business practices and customs, as AIG does not organize claims data according to whether or not a claim was filed after any applicable statute of limitations has expired.

**REQUEST FOR PRODUCTION NO. 5**

All Documents reflecting or analyzing the cost and expense (or expected or projected cost and expense) that You incur in evaluating and/or valuing an Abuse Claim potentially covered under a Policy issued to the Debtors (by You).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG objects to this Request to the extent it seeks information or documents subject to the work product doctrine, attorney-client privilege, common interest privilege, mediation privilege, settlement privilege, or any other applicable protection or privilege.

AIG further objects to this Request as overbroad, unduly burdensome, seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case because it pertains to insurance coverage disputes that are not at issue during the Plan confirmation proceedings. *See, e.g.*, Sept. 23, 2021 Hr'g Tr. at 210:1-211:2.

AIG objects to this Request as vague and ambiguous in its use of, among other language, the terms "evaluating and/or valuing."

AIG further objects to this Request on the grounds that it seeks information that constitutes trade secrets or other confidential, proprietary, or sensitive business information.

AIG objects to this Request as mischaracterizing AIG's business practice and custom of processing each claim on a claim-by-claim basis according to the unique facts and circumstances of that particular claim.

## REQUEST FOR PRODUCTION NO. 6

All Documents that contain or relate to any Communications between You and any Chartered Organization.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 6:

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG further objects to this Request as overbroad, unduly burdensome, seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible

evidence, and not proportional to the needs of the case because it pertains to insurance coverage disputes that are not at issue during the Plan confirmation proceedings. *See, e.g.*, Sept. 23, 2021 Hr'g Tr. at 210:1-211:2.

AIG further objects to the extent that this Request has no limit in scope and extends far beyond Debtors and parties or issues which are not the subject of this case.

AIG objects to this Request as unduly burdensome because there are tens of thousands of chartered organizations associated with Debtors and searching AIG's systems for communications with those organizations would incur extensive cost and expense.

Subject to, and without waiving any of the foregoing objections, AIG will produce tenders from chartered organizations since the time that Debtors filed their petition for bankruptcy that AIG is able to locate through a reasonably diligent search.

## REQUEST FOR PRODUCTION NO. 7

All Documents that contain or relate to any Communication between You and any Local Council of the BSA.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 7:

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG further objects to this Request as overbroad, unduly burdensome, seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case because it pertains to insurance coverage disputes that are not at issue during the Plan confirmation proceedings. *See, e.g.*, Sept. 23, 2021 Hr'g Tr. at 210:1-211:2.

AIG further objects to the extent that this Request has no limit in scope and extends far beyond Debtors to parties or issues which are not the subject of this case.

AIG objects to this Request as unduly burdensome because there are hundreds of local councils associated with Debtors and searching AIG's systems for communications with those local councils would incur extensive cost and expense.

Subject to, and without waiving any of the foregoing objections, AIG will produce tenders from local councils since the time that Debtors filed their petition for bankruptcy that AIG is able to locate through a reasonably diligent search.

## REQUEST FOR PRODUCTION NO. 8

All minutes of or other written documentation relating to every meeting of Your board of directors, any committee or subcommittee thereof, any task force or working group thereof, or any of Your other executive task forces or working groups, during which there was discussion of the Debtors, the Policies issued (by You) to the Debtors, Abuse Claims, or the Debtors' claims for insurance coverage under the Policies (whether or not regarding the Abuse Claims), including without limitation, insurance coverage for such claims, including but not limited to handouts, agendas, attachments, and notes made by participants.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 8:

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG objects to this Request to the extent it seeks information or documents subject to the work product doctrine, attorney-client privilege, common interest privilege, mediation privilege, settlement privilege, or any other applicable protection or privilege.

AIG further objects to this Request as overbroad, unduly burdensome, seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case because it pertains to insurance coverage disputes that are not at issue during the Plan confirmation proceedings. *See, e.g.*, Sept. 23, 2021 Hr'g Tr. at 210:1-211:2.

AIG further objects to this Request to the extent that it seeks Documents that in any way relating to policyholders who are not parties to the present action, or claims not at issue in the present action, as such information is not relevant to Debtors' claims in this case.

AIG further objects to this Request on the grounds that it seeks information that constitutes trade secrets or other confidential, proprietary, or sensitive business information.

**REQUEST FOR PRODUCTION NO. 9**

All Documents concerning the reserves set by You in connection with Debtors' claims for coverage for the Abuse Claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG objects to this Request to the extent it seeks information or documents subject to the work product doctrine, attorney-client privilege, common interest privilege, mediation privilege, settlement privilege, or any other applicable protection or privilege.

AIG further objects to this Request as overbroad, unduly burdensome, seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case because it pertains to insurance coverage

disputes that are not at issue during the Plan confirmation proceedings. *See* Transcript of Hearing at 239:23-24, *In re Imerys Talc America*, No. 19-10289 (LSS) (June 22, 2021).

AIG objects to this Request as vague and ambiguous in its use of, among other language, the terms "reserves set by You in connection with Debtors' claims for coverage."

AIG further objects to this Request on the grounds that it seeks information that constitutes trade secrets or other confidential, proprietary, or sensitive business information.

AIG objects to this Request as mischaracterizing AIG's business practice and custom of processing each claim on a claim-by-claim basis according to the unique facts and circumstances of that particular claim.

## REQUEST FOR PRODUCTION NO. 10

All Documents regarding any Communications between You and any Reinsurer(s) relating to: (a) Debtors; (b) Policies issued to the Debtors; (c) the Abuse Claims; or (d) Debtors' claims for insurance coverage under the Policies (whether or not regarding the Abuse Claims).

### RESPONSE TO REQUEST FOR PRODUCTION NO. 10:

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG objects to this Request to the extent it seeks information or documents subject to the work product doctrine, attorney-client privilege, common interest privilege, mediation privilege, settlement privilege, or any other applicable protection or privilege.

AIG further objects to this Request as overbroad, unduly burdensome, seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case because it pertains to insurance coverage

disputes that are not at issue during the Plan confirmation proceedings. *See, e.g.*, Sept. 23, 2021 Hr'g Tr. at 210:1-211:2.

AIG further objects to this Request on the grounds that it seeks information that constitutes trade secrets or other confidential, proprietary, or sensitive business information.

AIG objects to this Request as mischaracterizing AIG's business practice and custom of processing each claim on a claim-by-claim basis according to the unique facts and circumstances of that particular claim.

**REQUEST FOR PRODUCTION NO. 11**

All Documents and Communications reflecting, discussing or analyzing the exposure or potential exposure of any reinsurer under the Reinsurance Agreements.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG objects to this Request to the extent it seeks information or documents subject to the work product doctrine, attorney-client privilege, common interest privilege, mediation privilege, settlement privilege, or any other applicable protection or privilege.

AIG further objects to this Request as overbroad, unduly burdensome, seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case because it pertains to insurance coverage disputes that are not at issue during the Plan confirmation proceedings. *See, e.g.*, Sept. 23, 2021 Hr'g Tr. at 210:1-211:2.

AIG further objects to this Request on the grounds that it seeks information that constitutes trade secrets or other confidential, proprietary, or sensitive business information.

AIG objects to this Request as vague and ambiguous in its use of, among other language, the terms "reflecting, discussing or analyzing the exposure or potential exposure."

AIG objects to this Request as mischaracterizing AIG's business practice and custom of processing each claim on a claim-by-claim basis according to the unique facts and circumstances of that particular claim.

## REQUEST FOR PRODUCTION NO. 12

All Documents and Communications analysing, discussing, supporting or refuting the allegation that the Debtors' Fifth Amended Plan of Reorganization and/or any related documents, including without limitation the terms of such documents, are not insurance neutral.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 12:

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG objects to this Request to the extent it seeks information or documents subject to the work product doctrine, attorney-client privilege, common interest privilege, mediation privilege, settlement privilege, or any other applicable protection or privilege.

AIG objects to this Request as premature because it seeks information concerning legal contentions and supporting facts that are not reasonably ascertainable or available at this stage of the proceedings.  Discovery is ongoing in this action, and AIG's responses are based upon the facts and information presently known and available to AIG.

AIG objects to this Request as improper in that it calls for a legal conclusion.

AIG further objects to this Request on the grounds that it seeks information that constitutes trade secrets or other confidential, proprietary, or sensitive business information.

AIG objects to this Request as vague and ambiguous in its use of, among other language, the terms "analysing, discussing, supporting or refuting the allegation."

AIG objects to this Request as mischaracterizing AIG's business practice and custom of processing each claim on a claim-by-claim basis according to the unique facts and circumstances of that particular claim.

Subject to, and without waiving any of the foregoing objections, AIG refers Debtors to its response to Debtors' Interrogatory No. 10.

## REQUEST FOR PRODUCTION NO. 13

All Documents You identified, reviewed, relied upon, or referenced in responding to Debtors' First Set of Interrogatories.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 13:

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG objects to this Request to the extent it seeks information or documents subject to the work product doctrine, attorney-client privilege, common interest privilege, mediation privilege, settlement privilege, or any other applicable protection or privilege.

AIG objects to this Request as overbroad and unduly burdensome because the information supplied in answer to the Interrogatories, in addition to the documents that AIG will produce in response to other Requests for Production, are sufficient to meet AIG's legal discovery burdens.

Subject to, and without waiving any of the foregoing objections, AIG will produce, in response to this Request, non-privileged documents it can locate after a reasonable search and diligent inquiry.

**REQUEST FOR PRODUCTION NO. 14**

All Documents relating to Debtors' alleged breach of any Policy issued by You.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG objects to this Request to the extent it seeks information or documents subject to the work product doctrine, attorney-client privilege, common interest privilege, mediation privilege, settlement privilege, or any other applicable protection or privilege.

AIG further objects to this Request as overbroad, unduly burdensome, seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case because it pertains to insurance coverage disputes that are not at issue during the Plan confirmation proceedings. *See, e.g.*, Sept. 23, 2021 Hr'g Tr. at 210:1-211:2.

AIG objects to this Request as premature because it seeks information concerning legal contentions and supporting facts that are not reasonably ascertainable or available at this stage of the proceedings. Discovery is ongoing in this action, and AIG's responses are based upon the facts and information presently known and available to AIG.

AIG objects to this Request as improper in that it calls for a legal conclusion.

**REQUEST FOR PRODUCTION NO. 15**

All Documents relating to any prejudice which You allegedly suffered as a result of Debtors' alleged breach of the Policies' terms or conditions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG objects to this Request to the extent it seeks information or documents subject to the work product doctrine, attorney-client privilege, common interest privilege, mediation privilege, settlement privilege, or any other applicable protection or privilege.

AIG further objects to this Request as overbroad, unduly burdensome, seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case because it pertains to insurance coverage disputes that are not at issue during the Plan confirmation proceedings. *See, e.g.*, Sept. 23, 2021 Hr'g Tr. at 210:1-211:2.

AIG objects to this Request as premature because it seeks information concerning legal contentions and supporting facts that are not reasonably ascertainable or available at this stage of the proceedings. Discovery is ongoing in this action, and AIG's responses are based upon the facts and information presently known and available to AIG.

AIG objects to this Request as improper in that it calls for a legal conclusion.

AIG objects to this Request as vague and ambiguous in its use of, among other language, the terms "any prejudice which You allegedly suffered."

**REQUEST FOR PRODUCTION NO. 16**

All communications containing facts or data relied on by any expert that you intend to call to testify at the Confirmation Hearing in forming the opinions that the expert intends to express.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 16:

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG objects to this Request to the extent it seeks information or documents subject to the work product doctrine, attorney-client privilege, common interest privilege, mediation privilege, settlement privilege, or any other applicable protection or privilege.

AIG objects to this Request as premature because it seeks information concerning legal contentions and supporting facts that are not reasonably ascertainable or available at this stage of the proceedings.  Discovery is ongoing in this action, and AIG's responses are based upon the facts and information presently known and available to AIG.

AIG objects to this Request as vague and ambiguous in its use of, among other language, the terms "intend to call to testify" and "intends to express."

Subject to, and without waiving any of the foregoing objections, AIG states that it will provide expert reports and rebuttal expert reports, if any, by the deadlines set by the Court.

## REQUEST FOR PRODUCTION NO. 17

All Documents that you intend to introduce or rely upon at the Confirmation Hearing.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 17:

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG objects to this Request to the extent it seeks information or documents subject to the work product doctrine, attorney-client privilege, common interest privilege, mediation privilege, settlement privilege, or any other applicable protection or privilege.

AIG objects to this Request as premature because it seeks information concerning legal contentions and supporting facts that are not reasonably ascertainable or available at this stage of the proceedings.  Discovery is ongoing in this action, and AIG's responses are based upon the facts and information presently known and available to AIG.

AIG objects to this Request as vague and ambiguous in its use of, among other language, the terms "intend to introduce or rely upon."

Notwithstanding said objections, AIG will provide a Response to this Request in compliance with the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware and any pre-hearing order of this Court.  AIG reserves the right to supplement this Response in accordance with Federal Rule of Civil Procedure 26(e) and Federal Rule of Bankruptcy Procedure 7026.

Dated:  October 18, 2021

Respectfully Submitted,

By:  */s/ Deirdre M. Richards*
     Deirdre M. Richards (DE Bar No. 4191)

FINEMAN KREKSTEIN & HARRIS PC
Deirdre M. Richards (DE Bar No. 4191)
1300 N. King Street
Wilmington, DE 19801
Telephone: (302) 538-8331
Facsimile: (302) 394-9228
Email: drichards@finemanlawfirm.com

  -and-

GIBSON, DUNN & CRUTCHER LLP
Michael A. Rosenthal (admitted *pro hac vice*)
James Hallowell (admitted *pro hac vice*)
Keith R. Martorana (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
Email:mrosenthal@gibsondunn.com
       jhallowell@gibsondunn.com
       kmartorana@gibsondunn.com

  -and-

GIBSON, DUNN & CRUTCHER LLP
Matthew G. Bouslog (admitted *pro hac vice*)
3161 Michelson Drive
Irvine, California 92612
Telephone: (949) 451-3800
Facsimile: (949) 451-4220
Email: mbouslog@gibsondunn.com

  -and-

FORAN GLENNON PALANDECH PONZI &
RUDLOFF P.C.
Susan N.K. Gummow (admitted *pro hac vice*)
222 N. LaSalle St., Suite 1400
Chicago, Illinois 60601
Telephone: (312) 863-5000
Facsimile: (312) 863-5009

Email: sgummow@fgppr.com

*Attorneys for the AIG Companies*

# Exhibit E

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

**THE AIG COMPANIES' RESPONSES AND OBJECTIONS TO
DEBTORS' FIRST SET OF INTERROGATORIES**

National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, The Insurance Company of the State of Pennsylvania, and their affiliated entities (collectively referred to herein as "AIG") hereby submit the following responses and objections to Boy Scouts of America ("BSA") and Delaware BSA, LLC's (the "Debtors") First Set of Interrogatories to AIG (the "Interrogatory" or "Interrogatories").

**GENERAL OBJECTIONS**

AIG asserts the following General Objections ("General Objections") to the Interrogatories, including the definitions, instructions, and requests therein, each of which is hereby incorporated by reference into each individual response below.  From time to time, and for the purpose of emphasis, AIG may restate one or more of the General Objections as specific objections to individual interrogatories.  The absence of such restatement in favor of an incorporation by reference does not constitute, and should not be taken as, a waiver of any General Objection not restated.

Unless otherwise specified, AIG's objections apply to each Interrogatory in full, including each and every subsection and/or subpart thereof.

1.      AIG objects to the Interrogatories as vague, ambiguous, overbroad, unduly burdensome, harassing, and oppressive to the extent they seek information neither relevant to the subject matter of the Plan confirmation proceedings nor reasonably calculated to lead to the discovery of admissible evidence.  Such Interrogatories include but are not limited to those that seek information related to the coverage afforded by AIG insurance policies, as such information is entirely irrelevant for purposes of Plan confirmation.

2.      AIG objects to the extent the Interrogatories seek information protected by the attorney-client privilege, the attorney work-product rule, the joint defense or joint efforts doctrine/privilege, the common interest doctrine, the mediation privilege, the settlement privilege, or any other applicable privilege or protection.  In responding to these Interrogatories, AIG does not waive or intend to waive any privilege with respect to all information and documents subject thereto.

3.      AIG objects to the extent the Interrogatories seek to impose burdens and obligations exceeding those imposed by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, or any applicable Court order.  AIG will respond to these Interrogatories in accordance with the requirements of the aforementioned Rules or orders, subject to all applicable objections and protections.

4.      AIG objects on the bases that the Interrogatories are overbroad, unduly burdensome, harassing, and oppressive to the extent they require more than a reasonable and diligent investigation of AIG's records.  Such interrogatories include those that seek "any" or "all" document(s), information, communication(s), correspondence(s), file(s), material(s) or similar terms.

5.     AIG objects that the Interrogatories are overbroad, unduly burdensome, harassing, and oppressive to the extent they seek information which is not reasonably available to AIG or within its possession, custody, or control.

6.     AIG objects to the Interrogatories as vague, ambiguous, overbroad, unduly burdensome, harassing, and oppressive to the extent they seek information equally available to the Debtors from other sources.

7.     AIG objects that the Interrogatories are overbroad, unduly burdensome, harassing, oppressive, and premature to the extent they seek information concerning legal contentions and supporting facts that are not reasonably ascertainable or available at this stage of the proceedings. Discovery is ongoing in this action, and AIG's responses are based upon the facts and information presently known and available to AIG.  AIG reserves the right to amend, supplement, or modify its response to any such Interrogatory.

8.     AIG objects to the Interrogatories as vague, ambiguous, harassing, and oppressive to the extent they misstate or mischaracterize AIG's contentions or positions.

9.     AIG objects to the extent the number of Interrogatories propounded by Debtors exceeds the twenty-five interrogatory limit imposed by Federal Rules of Bankruptcy Procedure 9014(c) and 7033 and Federal Rule of Civil Procedure 33.

10.     AIG objects to the Interrogatories to the extent they seek information that would violate any constitutional, statutory, or common law privacy interest of any current or former employee or representative of AIG, any current or former policyholder of AIG, or any other person or entity.

11.     AIG objects to the Interrogatories as vague, ambiguous, overbroad, unduly burdensome, harassing, and oppressive to the extent they seek information concerning a time

period other than the one which is appropriate to the particular Interrogatory in question. AIG further objects to the Interrogatories as vague, ambiguous, overbroad, and unduly burdensome to the extent they do not specify the applicable time period.

12.    AIG objects to the Interrogatories to the extent they seek information concerning trade secrets or proprietary or other confidential business information.

13.    AIG objects to the definitions of the terms "You" and "Your" as overbroad, irrelevant to Plan confirmation proceedings, and not proportionate to the needs of the case.

14.    AIG objects to the definition of "Policy" as overbroad, irrelevant to Plan confirmation proceedings, and not proportionate to the needs of the case.

15.    In providing these responses, AIG does not waive or intend to waive any objections to competency, relevancy, materiality, authenticity, or admissibility.

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 1

Identify all Persons who had any responsibility for, or who have knowledge regarding the handling, investigation, evaluation, processing, adjusting, review, or determination of the Abuse Claims or Debtors' claims for coverage for the Abuse Claims under Policies issued to Debtors, and for each person, describe the nature of that Person's responsibility or knowledge.

### RESPONSE TO INTERROGATORY NO. 1:

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG further objects to this Interrogatory as overbroad, unduly burdensome, seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case because it pertains to insurance coverage

disputes that are not at issue during the Plan confirmation proceedings. *See, e.g.*, Sept. 23, 2021 Hr'g Tr. at 210:1-211:2.

AIG objects to this Interrogatory as vague and ambiguous in its use of, among other language, the phrases "had any responsibility for" and "have knowledge regarding."

AIG objects to this Interrogatory as overbroad and unduly burdensome to the extent that it seeks identification of individuals who are not employees of AIG.

Subject to, and without waiving any of the foregoing objections, AIG identifies the following individuals as current knowledgeable persons in response to Interrogatory No. 1:

-- John Bryan McCarthy, Assistant Vice President, Complex Casualty Claims

-- Arete Friedman, Complex Director, Complex Casualty Claims

## INTERROGATORY NO. 2

Identify all Persons who have any responsibility for, or who have knowledge regarding the handling, investigation, evaluation, processing, adjusting, review, or determination of any sexual abuse claims under any Policy.

### RESPONSE TO INTERROGATORY NO. 2:

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG further objects to this Interrogatory as overbroad, unduly burdensome, seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case because it pertains to insurance coverage disputes that are not at issue during the Plan confirmation proceedings. *See, e.g.*, Sept. 23, 2021 Hr'g Tr. at 210:1-211:2. Moreover, this Interrogatory, in using the undefined term "sexual abuse claims," seeks information related to insurance policies issued to insureds other than the Debtors

and to claims that were made outside of the scope of these proceedings, which is not relevant or reasonably calculated to lead to the discovery of admissible evidence.  Such information is also confidential, proprietary, and private.

AIG objects to this Interrogatory as vague and ambiguous in its use of, among other language, the phrases "had any responsibility for" and "have knowledge regarding."

AIG objects to this Interrogatory as overbroad and unduly burdensome to the extent that it seeks identification of individuals who are not employees of AIG.

Subject to, and without waiving any of the foregoing objections, AIG refers Debtors to AIG's response to Interrogatory No. 1.

**INTERROGATORY NO. 3**

Identify Your procedures, practices and policies for valuing and/or evaluating sexual abuse claims, including but not limited to identifying any database, computer system or other system that You use in valuing and/or evaluating sexual-abuse claims, and the categories of information stored on such systems.

**RESPONSE TO INTERROGATORY NO. 3:**

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG objects to this Interrogatory to the extent it seeks information or documents subject to the work product doctrine, attorney-client privilege, common interest privilege, mediation privilege, settlement privilege, or any other applicable protection or privilege.

AIG further objects to this Interrogatory as overbroad, unduly burdensome, seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case because it pertains to insurance coverage

disputes that are not at issue during the Plan confirmation proceedings. *See, e.g.*, Sept. 23, 2021 Hr'g Tr. at 210:1-211:2. Moreover, this Interrogatory, in using the undefined term "sexual abuse claims," seeks information related to insurance policies issued to insureds other than the Debtors and to claims that were made outside of the scope of these proceedings, which is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Such information is also confidential, proprietary, and private.

AIG objects to this Interrogatory as vague and ambiguous in its use of, among other language, the terms "valuing and/or evaluating."

AIG further objects to this Interrogatory on the grounds that it seeks information that constitutes trade secrets or other confidential, proprietary, or sensitive business information.

AIG objects to this Interrogatory as mischaracterizing AIG's business practice and custom of processing each claim on a claim-by-claim basis according to the unique facts and circumstances of that particular claim.

## INTERROGATORY NO. 4

Identify Your policies, practices and procedures for evaluating and valuing sexual abuse claims that are filed outside the statute of limitations, including identifying any sexual abuse claims that have been filed outside the statute of limitations that You have settled, the attorneys fees associated with such claims, and the amounts of any settlement payments.

## RESPONSE TO INTERROGATORY NO. 4:

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG objects to this Interrogatory to the extent it seeks information or documents subject to the work product doctrine, attorney-client privilege, common interest privilege, mediation privilege, settlement privilege, or any other applicable protection or privilege.

AIG further objects to this Interrogatory as overbroad, unduly burdensome, seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case because it pertains to insurance coverage disputes that are not at issue during the Plan confirmation proceedings. *See, e.g.*, Sept. 23, 2021 Hr'g Tr. at 210:1-211:2. Moreover, this Interrogatory, in using the undefined term "sexual abuse claims," seeks information related to insurance policies issued to insureds other than the Debtors and to claims that were made outside of the scope of these proceedings, which is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Such information is also confidential, proprietary, and private.

AIG objects to this Interrogatory as vague and ambiguous in its use of, among other language, the terms "evaluating" and "valuing."

AIG further objects to this Interrogatory on the grounds that it seeks information that constitutes trade secrets or other confidential, proprietary, or sensitive business information.

AIG objects to this Interrogatory as mischaracterizing AIG's business practice and custom of processing each claim on a claim-by-claim basis according to the unique facts and circumstances of that particular claim.

**<u>INTERROGATORY NO. 5</u>**

Identify all Persons responsible for determining the value or the veracity of sexual abuse claims, including all Persons responsible for approving or authorizing settlement amounts under Policies issued to Debtors.

**RESPONSE TO INTERROGATORY NO. 5:**

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG further objects to this Interrogatory as overbroad, unduly burdensome, seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case because it pertains to insurance coverage disputes that are not at issue during the Plan confirmation proceedings. *See, e.g.*, Sept. 23, 2021 Hr'g Tr. at 210:1-211:2. Moreover, this Interrogatory, in using the undefined term "sexual abuse claims," seeks information related to insurance policies issued to insureds other than the Debtors and to claims that were made outside of the scope of these proceedings, which is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Such information is also confidential, proprietary, and private.

AIG objects to this Interrogatory as vague and ambiguous in its use of, among other language, the terms "value" and "veracity."

AIG objects to this Interrogatory as mischaracterizing AIG's business practice and custom of processing each claim on a claim-by-claim basis according to the unique facts and circumstances of that particular claim.

AIG objects to this Interrogatory as overbroad and unduly burdensome to the extent that it seeks identification of individuals who are not employees of AIG.

Subject to, and without waiving any of the foregoing objections, AIG states that its Claims Department processes claims and approves settlements and refers Debtors to AIG's response to Interrogatory No. 1.

**INTERROGATORY NO. 6**

Identify all settlement amounts You paid for Abuse Claims under Policies issued to the Debtors.

### RESPONSE TO INTERROGATORY NO. 6:

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG further objects to this Interrogatory as overbroad, unduly burdensome, seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case because it pertains to insurance coverage disputes that are not at issue during the Plan confirmation proceedings. *See, e.g.*, Sept. 23, 2021 Hr'g Tr. at 210:1-211:2.

AIG further objects to this Interrogatory on the grounds that it seeks information that constitutes trade secrets or other confidential, proprietary, or sensitive business information.

AIG objects to this Interrogatory as mischaracterizing AIG's business practice and custom of processing each claim on a claim-by-claim basis according to the unique facts and circumstances of that particular claim.

AIG also objects to this Interrogatory as seeking information that is already in the possession of the Debtors.

Subject to and without waiving any of the foregoing objections, AIG provides the following response:

As an excess carrier, AIG contributed to certain settlements of Abuse Claims which include the following indemnity amounts paid by AIG. The settlement amounts listed below and paid by AIG, however, are of limited probative value to the Plan confirmation proceedings as each

indemnity payment made was based upon an investigation of the unique facts and circumstances of that particular claim in that particular jurisdiction where the alleged injury occurred.

- Disputed National Union Policy No. 1140592 (01/01/1975-01/01/1976)
  - $1,380,000.00 Total Indemnity Payments:
    - G.S. $630,000.00
    - E.M. $750,000.00
- National Union Policy No. 1151559 (01/01/1976-01/01/1977)
  - $1,291,000.00 Total Indemnity Payments:
    - W.G. $1,000,000.00
    - K.H. $150,000.00
    - E.K. $124,750.00
    - J.A. $16,250.00
- National Union Policy No. 1215255 (01/01/1977-01/01/1978)
  - $641,000.00 Total Indemnity Payments:
    - W.G. $500,000.00
    - E.K. $124,750.00
    - J.A. $16,250.00
- Lexington Policy No. 8653405 (03/01/1991-03/01/1992)
  - $1,142,000.00 Total Indemnity Payments:
    - M.M. $346,000.00
    - S.C. $346,000.00
    - D.B. $450,000.00
- ICSOP Policy No. 4890463 (03/01/2007-03/01/2008)
  - $977,000.00 Total Indemnity Payments:
    - A.D. $727,000.00
    - R.E. $250,000.00
- Lexington Policy No. 501134 (03/01/2007-03/01/2008)
  - $977,000.00 Total Indemnity Payments:
    - A.D. $727,000.00
    - R.E. $250,000.00

## INTERROGATORY NO. 7

Identify all Policies for which reserves are set regarding Debtors' pursuit of insurance coverage for the Abuse Claims, including the amount set for reserves in all Policies. In Your response, Identify each person with knowledge regarding reserves set for all Policies.

**RESPONSE TO INTERROGATORY NO. 7:**

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG further objects to this Interrogatory as overbroad, unduly burdensome, seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case because it pertains to insurance coverage disputes that are not at issue during the Plan confirmation proceedings. *See* Transcript of Hearing at 239:23-24, *In re Imerys Talc America*, No. 19-10289 (LSS) (June 22, 2021).

AIG objects to this Interrogatory as vague and ambiguous in its use of, among other language, the terms "reserves are set regarding Debtors' pursuit of insurance coverage."

AIG further objects to this Interrogatory on the grounds that it seeks information that constitutes trade secrets or other confidential, proprietary, or sensitive business information.

AIG objects to this Interrogatory as mischaracterizing AIG's business practice and custom of processing each claim on a claim-by-claim basis according to the unique facts and circumstances of that particular claim.

**INTERROGATORY NO. 8**

Identify all Reinsurance Agreements and Identify any Employee who was involved with the submission of the Abuse Claims pursuant to any such Reinsurance Agreements.

**RESPONSE TO INTERROGATORY NO. 8:**

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG further objects to this Interrogatory as overbroad, unduly burdensome, seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible

evidence, and not proportional to the needs of the case because it pertains to insurance coverage disputes that are not at issue during the Plan confirmation proceedings. *See, e.g.*, Sept. 23, 2021 Hr'g Tr. at 210:1-211:2.

AIG objects to this Interrogatory as vague and ambiguous in its use of, among other language, the terms "involved with the submission."

AIG further objects to this Interrogatory on the grounds that it seeks information that constitutes trade secrets or other confidential, proprietary, or sensitive business information.

AIG objects to this Interrogatory as mischaracterizing AIG's business practice and custom of processing each claim on a claim-by-claim basis according to the unique facts and circumstances of that particular claim.

## INTERROGATORY NO. 9

Identify any provision or term in Your Policies that you contend the Debtors have allegedly breached, including all facts and documents supporting such contention.

### RESPONSE TO INTERROGATORY NO. 9:

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG objects to this Interrogatory to the extent it seeks information or documents subject to the work product doctrine, attorney-client privilege, common interest privilege, mediation privilege, settlement privilege, or any other applicable protection or privilege.

AIG further objects to this Interrogatory as overbroad, unduly burdensome, seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case because it pertains to insurance coverage

disputes that are not at issue during the Plan confirmation proceedings.  *See, e.g.*, Sept. 23, 2021 Hr'g Tr. at 210:1-211:2.

AIG objects to this Interrogatory as premature because it seeks information concerning legal contentions and supporting facts that are not reasonably ascertainable or available at this stage of the proceedings.  Discovery is ongoing in this action, and AIG's responses are based upon the facts and information presently known and available to AIG.

AIG objects to this Interrogatory as improper in that it calls for a legal conclusion.

**INTERROGATORY NO. 10**

Identify, describe and explain any contention that the Debtors' Plan is not insurance neutral.

**RESPONSE TO INTERROGATORY NO. 10:**

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG objects to this Interrogatory to the extent it seeks information or documents subject to the work product doctrine, attorney-client privilege, common interest privilege, mediation privilege, settlement privilege, or any other applicable protection or privilege.

AIG objects to this Interrogatory as premature because it seeks information concerning legal contentions and supporting facts that are not reasonably ascertainable or available at this stage of the proceedings.  Discovery is ongoing in this action, and AIG's responses are based upon the facts and information presently known and available to AIG.

AIG objects to this Interrogatory as improper in that it calls for a legal conclusion.

AIG objects to Interrogatory No. 10 as an improper and premature contention interrogatory in light of the present early stage of confirmation discovery. AIG also objects to

Interrogatory No. 10 because it seeks information that is publicly available and equally available to the Debtors, including documents filed by AIG on the docket of the Chapter 11 Cases.

Subject to and without waiving any of it objections, attorney-client privilege, the work product doctrine, or any other privilege, and subject to AIG's ongoing investigation, discovery, and analysis, the bases for AIG's assertion that the Plan is not insurance neutral are set forth in publicly filed documents, including but not limited to *Certain Insurers' Objection to Debtors' Motion for Entry of an Order Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code, (I) Authorizing the Debtors to Enter into and Perform Under the Restructuring Support Agreement and (II) Granting Related Relief* [D.I. 5684] (the "***Certain Insurers' RSA Objection***") ¶¶ 8, 58-73; *Certain Insurers' Supplemental Objection to Motion for Approval of Debtors' Disclosure Statement* [D.I. 6052] (the "***Certain Insurers' Supplemental Disclosure Statement Objection***") ¶¶ 1-5, 9-24, 31-35; Sept. 28, 2021 Hr'g Tr. [D.I. 6436] (the "***Sept. 28 Hr'g Tr.***") at 16:11-45:7; 52:4-67:7; 70:1-73:3; 130:5-136:6, including, without limitation, that the Plan is designed to (i) inflate Abuse Claim liability from the Debtors' valuation range of aggregate Abuse Claim liability of between $2-7 billion to the TCC's valuation of aggregate Abuse Claim liability of over $100 billion, (ii) impair and remove to the greatest extent possible insurer contractual rights and coverage defenses in order to bind the Debtors' insurers to such inflated Abuse Claim liability and (iii) assign non-Debtor insurance rights to the Settlement Trust in an attempt to bind the insurers to inflated recoveries against non-Debtor entities.

In addition, the insurance provision in the Plan expressly provides that, among other impermissible modifications of insurer contractual rights, each and every plan finding will modify the entirety of the Debtors' insurance policies. *See* Plan Art. X.M. Before the Debtors entered into the RSA, the insurance provision in a prior plan the Debtors had filed contained insurance

neutrality language (language which AIG believed was itself insufficient to render that plan insurance neutral), but that insurance neutrality language has been removed in its entirety from the insurance provision in Article X.M. of the Plan.  The required findings in the Plan that now expressly modify the Debtors insurance contracts include that every aspect of the Trust Distribution Procedures, including the yet to be determined Allowed Claim Amounts, are fair and reasonable, that the Trust Distribution Procedures were proposed in good faith and that all Plan Documents, including the Trust Distribution Procedures, are binding on the insurers and all other parties in interest.  *See* Plan Art. IX.A.3.

AIG reserves the right to modify or supplement these objections and response, and to present at confirmation any documents and information obtained during discovery and in preparation for confirmation.

**INTERROGATORY NO. 11**

Identify all Persons who assisted You in any way in responding to any one of these Interrogatories, including each Interrogatory number(s) with which he or she assisted in answering, regardless of whether the assistance he or she provided was incorporated into the final answer.

**RESPONSE TO INTERROGATORY NO. 11:**

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG objects to this Interrogatory to the extent it seeks information or documents subject to the work product doctrine, attorney-client privilege, common interest privilege, mediation privilege, settlement privilege, or any other applicable protection or privilege.

Subject to, and without waiving any of the foregoing objections, AIG states that these responses were prepared by counsel and John Bryan McCarthy, Assistant Vice President, Complex Casualty Claims.

## INTERROGATORY NO. 12

Identify all Individuals that you intend to call to testify at the Confirmation Hearing and provide a brief description of the subject matter of their testimony.

### RESPONSE TO INTERROGATORY NO. 12:

AIG hereby incorporates each of the foregoing General Objections as if fully set forth herein.

AIG objects to this Interrogatory to the extent it seeks information or documents subject to the work product doctrine, attorney-client privilege, common interest privilege, mediation privilege, settlement privilege, or any other applicable protection or privilege.

AIG further objects to this Interrogatory as premature because discovery has just commenced, fact witnesses have not testified, experts have not submitted reports or been deposed, plan objections are not yet due, and the Court has already entered a scheduling order in this action.

AIG further states that it has not identified at this time any witnesses that it may call to testify at the Confirmation Hearing, nor has it identified the subject matter of such testimony.  AIG reserves the right to supplement this Answer in accordance with Federal Rule of Civil Procedure 26(e) and Federal Rule of Bankruptcy Procedure 7026.

Dated:  October 18, 2021

Respectfully Submitted,

By:  */s/ Deirdre M. Richards*
     Deirdre M. Richards (DE Bar No. 4191)

FINEMAN KREKSTEIN & HARRIS PC
Deirdre M. Richards (DE Bar No. 4191)
1300 N. King Street
Wilmington, DE 19801
Telephone: (302) 538-8331
Facsimile: (302) 394-9228
Email: drichards@finemanlawfirm.com

 -and-

GIBSON, DUNN & CRUTCHER LLP
Michael A. Rosenthal (admitted *pro hac vice*)
James Hallowell (admitted *pro hac vice*)
Keith R. Martorana (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
Email:mrosenthal@gibsondunn.com
     jhallowell@gibsondunn.com
     kmartorana@gibsondunn.com

 -and-

GIBSON, DUNN & CRUTCHER LLP
Matthew G. Bouslog (admitted *pro hac vice*)
3161 Michelson Drive
Irvine, California 92612
Telephone: (949) 451-3800
Facsimile: (949) 451-4220
Email: mbouslog@gibsondunn.com

 -and-

FORAN GLENNON PALANDECH PONZI &
RUDLOFF P.C.
Susan N.K. Gummow (admitted *pro hac vice*)
222 N. LaSalle St., Suite 1400
Chicago, Illinois 60601
Telephone: (312) 863-5000
Facsimile: (312) 863-5009

Email: sgummow@fgppr.com

*Attorneys for the AIG Companies*

## VERIFICATION OF INTERROGATORY ANSWERS

I, J. Bryan McCarthy, am an Assistant Vice President of Complex Casualty Claims at AIG.  I verify, under penalty of perjury and based on reasonable inquiry, that the foregoing answers are true and correct to the best of my knowledge, information, and belief.


DATED: October 18, 2021

_____
J. Bryan McCarthy

# Exhibit F

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA and<br>DELAWARE BSA, LLC<br><br>          Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Re Docket Nos. 2618, 6438, 6443, 6445 |

**GREAT AMERICAN ASSURANCE COMPANY, F/K/A AGRICULTURAL INSURANCE COMPANY, GREAT AMERICAN E&S INSURANCE COMPANY, F/K/A AGRICULTURAL EXCESS AND SURPLUS INSURANCE COMPANY, AND GREAT AMERICAN E&S INSURANCE COMPANY'S RESPONSES AND OBJECTIONS TO BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO GREAT AMERICAN**

Pursuant to Federal Rules of Civil Procedure 26 and 34, made applicable to this matter by Federal Rules of Bankruptcy Procedure 9014, 7026, and 7034, Great American Assurance Company, f/k/a Agricultural Insurance Company, Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company, and Great American E&S Insurance Company (collectively, ōGreat Americanö), by and through their attorneys of record, submit the following Answers and Objections to Boy Scouts of America (ōBSAö) and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 case (together, the ōDebtorsö) First Set of Requests for Production of Documents as follows:

**PRELIMINARY STATEMENT**

Throughout the bankruptcy proceedings in this case, the Court has repeatedly stated expressly that the Court will not be addressing or otherwise determining insurance coverage

6142411                                                          1

issues within the scope of this bankruptcy.  Much of the information requested as part of these discovery demands to Great American wholly or partially seek information regarding insurance coverage for the Abuse Claims, for Boy Scouts of America, or for other entities who claim to be insureds under policies alleged to have been issued to Boy Scouts of America.  Pursuant to the Court's direction, discovery seeking these types of coverage information is improper and is wholly outside the scope of the present confirmation proceeding.  As further identified below, Great American objects to all discovery demands served upon Great American seeking information regarding insurance coverage within the context of Plan confirmation proceedings.

Discovery and Great American's investigation in this case remains ongoing.  Great American reserves the right to amend or supplement its responses to discovery if additional information becomes available and as Great American's investigation of the facts warrants.

**REQUEST NO. 1:**

All  Documents, including without limitation claims-handling manuals, guidelines, policies, practices, directives, and procedures, that relate to Your handling, processing, adjusting, review, investigation, evaluation, acceptance, denial, reservation of rights, or other response to sexual abuse claims under any Policy.

**ANSWER TO REQUEST NO. 1:**

Great American objects to this request as overbroad, unduly burdensome, and not proportionate to the needs of this case.  This request seeks information about Great American's claims handling processes beyond the scope of this case and which have no bearing on the present matter.  Great American's practices, procedures, and policies for evaluating sexual abuse claims also have no bearing on Plan confirmation.  Great American also objects to this request as

seeking information pertaining to insurance coverage issues, which the Court has repeatedly stated will not be addressed as part of this bankruptcy or Plan confirmation.  Great American further objects to this request to the extent that this request seeks information protected by the attorney-client privilege or work product doctrine.

**REQUEST NO. 2:**

All Documents concerning Your evaluation and valuation of Abuse Claims.

**ANSWER TO REQUEST NO. 2:**

Great American objects to this request as seeking information protected by the attorney-client privilege, work product doctrine, joint defense privilege and/or common interest doctrine. Great American also objects to this request as seeking information protected by the mediation privilege and this Court's mediation order [ECF No. 812].  Each Abuse Claim must be evaluated on its own merits, applying the facts (once ascertained) and the law.  To the extent this request seeks expert information, Great American further objects to this request as premature and seeking to impose burdens and obligations exceeding those imposed by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and this Court's scheduling order.  Great American also objects to this request as overbroad, disproportionate to the needs of this case, and seeking wholly irrelevant information.  Great American's internal valuation of Abuse Claims is not relevant to confirmation; this discovery is purely sought for purposes of gaining advantage during ongoing mediation.

Subject to and without waiving these objections, Great American will produce its post-petition reservation of rights letters to the Debtors regarding the Abuse Claims and correspondence to the Debtors regarding the Debtors' duty to cooperate.

6142411                                3

**REQUEST NO. 3:**

All Documents concerning any database, computer system or other system that contains or reflects information about the Abuse Claims, including but not limited to databases, indices, computer programs, computer software, and computer databases that reflect methodologies or practices for valuing or otherwise evaluating Abuse Claims, and the results of such valuation or evaluation processes.

**ANSWER TO REQUEST NO. 3:**

Great American objects to this request as seeking information protected by the attorney-client privilege, work product doctrine, joint defense privilege and/or common interest doctrine. Great American also objects to this request as seeking information protected by the mediation privilege and this Court's mediation order [ECF No. 812]. Each Abuse Claim must be evaluated on its own merits, applying the facts (once ascertained) and the law. To the extent this request seeks expert information, Great American further objects to this request as premature and seeking to impose burdens and obligations exceeding those imposed by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and this Court's scheduling order. Great American also objects to this request as overbroad, disproportionate to the needs of this case, and seeking wholly irrelevant information. Great American's internal valuation of Abuse Claims is not relevant to confirmation; this discovery is purely sought for purposes of gaining advantage during ongoing mediation. Great American objects to this request because it seeks proprietary and confidential information regarding Great American's systems and processes.

**REQUEST NO. 4:**

All Documents and Communications concerning Your policies, practices and procedures that would apply to valuing or evaluating Abuse Claims that were filed after the expiration of any applicable statute of limitations or were filed in jurisdictions where the statute of limitations with respect to sexual abuse claims may change, including without limitation, any policies, procedures or practices that prohibit settling or otherwise resolving such sexual-abuse claims.

**ANSWER TO REQUEST NO. 4:**

Great American objects to this request as seeking information protected by the attorney-client privilege and work product doctrine. Great American also objects to this request as seeking information protected by the mediation privilege and this Court's mediation order [ECF No. 812]. Each Abuse Claim must be evaluated on its own merits, applying the facts (once ascertained) and the law. To the extent this request seeks expert information, Great American further objects to this request as premature and seeking to impose burdens and obligations exceeding those imposed by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and this Court's scheduling order. Great American also objects to this request as overbroad, disproportionate to the needs of this case, and seeking wholly irrelevant information. Great American's internal valuation of Abuse Claims is not relevant to confirmation; this discovery is purely sought for purposes of gaining advantage during ongoing mediation.

**REQUEST NO. 5:**

All Documents reflecting or analyzing the cost and expense (or expected or projected cost and expense) that You incur in evaluating and/or valuing an Abuse Claim potentially covered under a Policy issued to the Debtors (by You).

**ANSWER TO REQUEST NO. 5:**

Great American objects to this request as seeking information protected by the attorney-client privilege and work product doctrine.  Great American further objects to this document request as overbroad, disproportionate to the needs of this case, and seeking information wholly irrelevant to confirmation.  The cost to Great American to handle abuse claims as an insurer has no bearing on any aspect of the confirmation of the Plan.

**REQUEST NO. 6:**

All Documents that contain or relate to any Communications between You and any Chartered Organization.

**ANSWER TO REQUEST NO. 6:**

Great American objects to this request as seeking information protected by the mediation privilege and this Court's mediation order [ECF No. 812].  Great American also objects to this request as overly broad, unduly burdensome and disproportionate to the needs of this case, as this request seeks communications from Great American which have no bearing on confirmation issues.  To the extent that this request seeks communications concerning coverage available to third parties, this Court has expressed that the Court will not be making coverage determinations as part of Plan confirmation proceedings, and such information is not relevant to this proceeding or discoverable.

**REQUEST NO. 7:**

All Documents that contain or relate to any Communications between You and any Local Council of the BSA.

**ANSWER TO REQUEST NO. 7:**

Great American objects to this request as seeking information protected by the mediation privilege and this Court's mediation order [ECF No. 812]. Great American also objects to this request as overly broad, unduly burdensome and disproportionate to the needs of this case, as this request seeks communications from Great American which have no bearing on confirmation issues. To the extent that this request seeks communications concerning coverage available to third parties, this Court has expressed that the Court will not be making coverage determinations as part of Plan confirmation proceedings, and such information is not relevant to this proceeding or discoverable.

**REQUEST NO. 8:**

All minutes of or other written documentation relating to every meeting of Your board of directors, any committee or subcommittee thereof, any task force or working group thereof, or any of Your other executive task forces or working groups, during which there was discussion of the Debtors, the Policies issued (by You) to the Debtors, Abuse Claims, or the Debtors' claims for insurance coverage under the Policies (whether or not regarding the Abuse Claims), including without limitation, insurance coverage for such claims, including but not limited to handouts, agendas, attachments, and notes made by participants.

6142411                                                    7

**ANSWER TO REQUEST NO. 8**:

Great American objects to this request as overbroad, unduly burdensome, not proportionate to the needs of this case, not likely to lead to the discovery of admissible information, and propounded solely to harass and annoy.  Great American's board meetings or meetings of management or executives have no bearing on the confirmability of any aspect of the Plan, and any opinions of Great American's board or management, to the extent that they exist, do not inform any aspect of Plan confirmation.  Great American also objects to this request to the extent that it seeks information protected by the attorney-client privilege or work product doctrine, the joint defense privilege, or the common interest doctrine and seeks confidential claims information.  Great American also objects to the request to the extent it asks for proprietary business information. Great American further objects to this request because it seeks information solely related to insurance coverage issues for Abuse Claims, which this Court has expressly stated is beyond the scope of Plan confirmation and will not be addressed as part of this Bankruptcy; therefore, this request is wholly irrelevant to the present matter and is not likely to lead to the discovery of admissible evidence.

**REQUEST NO. 9**:

All Documents concerning the reserves set by You in connection with Debtors' claims for coverage for the Abuse Claims.

**ANSWER TO REQUEST NO. 9**:

Great American objects to this request as overly broad, disproportionate to the needs of this case, and seeking information wholly irrelevant to the needs of confirmation.  Loss reserves

are not at all relevant to the subject of whether a Plan is confirmable.  Great American also objects to this request as seeking information protected by the attorney-client privilege.

**REQUEST NO. 10:**

All Documents regarding any Communications between You and any Reinsurer(s) relating to: (a) Debtors; (b) Policies issued to the Debtors; (c) the Abuse Claims; or (d) Debtorsø claims for insurance coverage under the Policies (whether or not regarding the Abuse Claims).

**ANSWER TO REQUEST NO. 10:**

Great American objects to this request as overly broad, disproportionate to the needs of this case, and seeking information wholly irrelevant to the needs of Plan confirmation. Reinsurance information is not at all relevant to the subject of whether a Plan is confirmable. Furthermore, the Court has expressly stated that the Court will not be making coverage determinations as part of the confirmation proceedings, and, even though information about reinsurance would have no bearing on what claims are or are not covered by any policies of insurance issued to Boy Scouts of America, there is no other potential purpose for this discovery as part of the Plan confirmation hearing.

**REQUEST NO. 11:**

All Documents and Communications reflecting, discussing or analyzing the exposure or potential exposure of any reinsurer under the Reinsurance Agreements.

**ANSWER TO REQUEST NO. 11:**

Great American objects to this request as overly broad, disproportionate to the needs of this case, and seeking information wholly irrelevant to the needs of Plan confirmation. Reinsurance information is not at all relevant to the subject of whether a Plan is confirmable.

Furthermore, the Court has expressly stated that the Court will not be making coverage determinations as part of the confirmation proceedings, and, even though information about reinsurance would have no bearing on what claims are or are not covered by any policies of insurance issued to Boy Scouts of America, there is no other potential purpose for this discovery as part of the Plan confirmation hearing.

**REQUEST NO. 12:**

All Documents and Communications analyzing, discussing, supporting or refuting the allegation that the Debtorsø Fifth Amended Plan of Reorganization and/or any related documents, including without limitation the terms of such documents, are not insurance neutral.

**ANSWER TO REQUEST NO. 12:**

Great American objects to this request as vague, ambiguous, overly broad, and disproportionate to the needs of this case.  Great American objects to this request as seeking information protected by the mediation privilege and this Courtøs mediation order [ECF No. 812].  Great American also objects to this request as seeking information protected by the attorney-client privilege, work product doctrine, joint defense privilege and/or common interest doctrine.  Responding to this request requires a determination of counsel regarding which documents concern insurance neutrality, which requires a disclosure of mental impressions of counsel which are not discoverable.  Great American further objects to this request as premature. Discovery in this matter is ongoing, and Great American is continuing to investigate all subjects pertaining to Plan confirmation.

Subject to and without waiving these objections, Great American refers the Debtors to (i) the following objections filed or joined by the Great American regarding the Debtorsø Disclosure

6142411                                          10

Statement for the Fourth Amended Chapter 11 Plan of Reorganization: Dkt. Nos. 6056, 6062 and

6065, and (ii) statements made by counsel for the insurers during hearings on the Disclosure

Statement.

**REQUEST NO. 13:**

All Documents You identified, reviewed, relied upon, or referenced in responding to

Debtors' First Set of Interrogatories.

**ANSWER TO REQUEST NO. 13:**

Great American objects to this request as seeking information protected by the attorney-

client privilege and work product doctrine.

Subject to and without waiving these objections, Great American's interrogatory

responses identify which documents are incorporated by reference into those responses, subject

to applicable objection, and Great American will produce the non-privileged documents it has

agreed to produce after a reasonable search and diligent inquiry.

**REQUEST NO. 14:**

All Documents relating to Debtors' alleged breach of any Policy issued by You.

**ANSWER TO REQUEST NO. 14:**

Great American objects to this request as vague and ambiguous, and as seeking

information protected by the attorney-client privilege and work product doctrine.  Great

American further objects to this request as overly broad, disproportionate to the needs of this

case, calling for a legal conclusion, and wholly irrelevant to the matters at issue in confirmation.

The Court has expressly stated that the Court will not be making coverage determinations as part

of the confirmation proceedings, and there is no other potential purpose for this discovery as part

6142411                                11

of the Plan confirmation hearing.  Whether or not the Debtors are in breach of any policies issued to the Boy Scouts of America by Great American is a direct issue going to coverage under these Policies, and is not properly the subject of discovery as part of Plan confirmation

Subject to and without waiving these objections, Great American will produce its post-petition reservation of rights letters to the Debtors and post-petition correspondence from Great American to the Debtors addressing the Debtors' obligations under the Great American policies. Great American has reserved the right to identify additional policy provisions of which the Debtors are potentially in breach, whether as part of its interrogatory responses, in subsequent filings, or in subsequent coverage litigation where any breach of the policies by the Debtors is being addressed, regardless of whether or not the Debtors are party to such litigation.

**REQUEST NO. 15:**

All Documents relating to any prejudice which You allegedly suffered as a result of Debtors' alleged breach of the Policies' terms or conditions.

**ANSWER TO REQUEST NO. 15:**

Great American objects to this request as vague and ambiguous, and as seeking information protected by the attorney-client privilege and work product doctrine.  Great American further objects to this request as overly broad, disproportionate to the needs of this case, calling for a legal conclusion, and wholly irrelevant to the matters at issue in confirmation. The Court has expressly stated that the Court will not be making coverage determinations as part of the confirmation proceedings, and there is no other potential purpose for this discovery as part of the Plan confirmation hearing.

**REQUEST NO. 16:**

All communications containing facts or data relied on by any expert that you intend to call to testify at the Confirmation Hearing in forming the opinions that the expert intends to express.

**ANSWER TO REQUEST NO. 16:**

Great American objects to this request as premature and seeking to impose burdens and obligations exceeding those imposed by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and this Court's scheduling order.  Great American has not yet made a final determination about what experts it will engage in connection with the Chapter 11 Cases nor what documents it will provide to any such experts.  Great American also objects to this request to the extent that it seeks information already in the possession of the Debtors or equally accessible to the Debtors.

**REQUEST NO. 17:**

All Documents that you intend to introduce or rely upon at the Confirmation Hearing.

**ANSWER TO REQUEST NO. 17:**

Great American objects to this request as premature and seeking to impose burdens and obligations exceeding those imposed by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and this Court's scheduling order.  The Court has not required disclosure of exhibit lists for any hearing as of the date of this response, and Great American has not yet made a final determination about what Documents it will offer as evidence at the confirmation hearing.  Great American also objects to this request to the extent

that it seeks information already in the possession of the Debtors or equally accessible to the

Debtors.

Dated: October 18, 2021                    BODELL BOVÉ, LLC

/s/ Bruce W. McCullough
Bruce W. McCullough  (No. 3112)
1225 N. King Street, Suite 1000
Wilmington, DE 19801-3250
Telephone: (302) 655-6749
Facsimile: (302) 655-6827
Email: bmccullough@bodellbove.com

- and -

CLYDE & CO US LLP
Bruce D. Celebrezze (*pro hac vice*)
Four Embarcadero Center, Suite 1350
San Francisco, California 94111
Telephone:  (415) 365-9800
Facsimile:  (415) 365-9801
Email:    bruce.celebrezze@clydeco.us

Konrad R. Krebs (*pro hac vice*)
200 Campus Drive | Suite 300
Florham Park, NJ 07932
Telephone:  (973) 210-6700
Facsimile:  (973) 210-6701
Email:    konrad.krebs@clydeco.us

- and –

DAVID CHRISTIAN ATTORNEYS LLC
David Christian (*pro hac vice*)
105 W. Madison St., Suite 1400
Chicago, IL 60602
Telephone: (862) 362-8605
Email: dchristian@dca.law

*Attorneys for Great American Assurance Company,*

6142411                    14

*f/k/a Agricultural Insurance Company;
Great American E&S Insurance Company,
f/k/a Agricultural Excess and Surplus Insurance
Company; and Great American E&S Insurance
Company*

# Exhibit G

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA and<br>DELAWARE BSA, LLC<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

### GREAT AMERICAN ASSURANCE COMPANY, F/K/A AGRICULTURAL INSURANCE COMPANY, GREAT AMERICAN E&S INSURANCE COMPANY, F/K/A AGRICULTURAL EXCESS AND SURPLUS INSURANCE COMPANY, AND GREAT AMERICAN E&S INSURANCE COMPANY'S RESPONSES AND OBJECTIONS TO DEBTORS' FIRST SET OF INTERROGATORIES TO GREAT AMERICAN

Pursuant to Federal Rules of Civil Procedure 26 and 33, made applicable to this matter by Federal Rules of Bankruptcy Procedure 9014, 7026, and 7033, Great American Assurance Company, f/k/a Agricultural Insurance Company, Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company, and Great American E&S Insurance Company (collectively, "Great American"), by and through their attorneys of record, submit the following Answers and Objections to Boy Scouts of America ("BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the abov-captioned chapter 11 case (together, the "Debtors) First Set of Interrogatories to Great American, as follows:

### PRELIMINARY STATEMENT

Throughout the bankruptcy proceedings in this case, the Court has repeatedly stated expressly that the Court will not be addressing or otherwise determining insurance coverage issues within the scope of this bankruptcy. Much of the information requested as part of these

6142779                                                1

discovery demands to Great American wholly or partially seek information regarding insurance coverage for the Abuse Claims, for Boy Scouts of America, or for other entities who claim to be insureds under policies alleged to have been issued to Boy Scouts of America.  Pursuant to the Court's direction, discovery seeking these types of coverage information is improper and is wholly outside the scope of the present confirmation proceeding.  As further identified below, Great American objects to all discovery demands served upon Great American seeking information regarding insurance coverage within the context of Plan confirmation proceedings.

Discovery and Great American's investigation in this case remains ongoing.  Great American reserves the right to amend or supplement its responses to discovery if additional information becomes available and as Great American's investigation of the facts warrants.

**INTERROGATORY NO. 1:**

Identify all Persons who had any responsibility for, or who have knowledge regarding the handling, investigation, evaluation, processing, adjusting, review, or determination of the Abuse Claims or Debtors' claims for coverage for the Abuse Claims under the Policies issued to Debtors, and for each person, describe the nature of that Person's responsibility or knowledge.

**ANSWER TO INTERROGATORY NO. 1:**

Great American objects to this interrogatory as overbroad, unduly burdensome, not limited in time, and disproportionate to the needs of this case.  Great American is aware of dozens of individuals both inside and outside of Great American who have knowledge of,  and who have evaluated coverage for the Abuse Claims, including the Debtors and their attorneys. Great American also objects to this request to the extent that it is seeking information relevant to insurance coverage issues, which the Court has repeatedly stated will not be addressed as part of this bankruptcy or Plan confirmation.

6142779                                    2

Subject to and without waiving these objections, Great American identifies Stephanie Ruffo, Senior Claims Technical Director, Great American Custom Insurance Service, c/o Clyde & Co US LLP, Four Embarcadero Center, Suite 1350, San Francisco, CA 94111.

**INTERROGATORY NO. 2:**

Identify all Persons who have any responsibility for, or who have knowledge regarding the handling, investigation, processing, adjusting, review, or determination of any sexual abuse claims under any Policy.

**ANSWER TO INTERROGATORY NO. 2:**

Great American objects to this interrogatory as overbroad, unduly burdensome, not limited in time, disproportionate to the needs of this case, and seeking wholly irrelevant information.  Claims of sexual abuse, including those involving insureds other than Boy Scouts of America, involve completely different and unique factual circumstances and have no bearing on confirmation of the Plan in this matter.  Inquiry into such claims is also likely to require disclosure of confidential claim information and settlement information that is not discoverable.  Great American also objects to this interrogatory to the extent that it is seeking information relevant to insurance coverage issues, which the Court has repeatedly stated will not be addressed as part of this bankruptcy or Plan confirmation.  To the extent that this interrogatory seeks information about Abuse Claims under Policies issued to the Debtors, Great American objects to this interrogatory as duplicative of Interrogatory No. 1.  Great American also objects to information requested about insurance policies issued to other insureds, which each involve confidential information of those insureds, as well as unique terms, conditions, and exclusions different from the policies issued by Great American to the Boy Scouts of America.

**INTERROGATORY NO. 3:**

Identify Your procedures, practices and policies for valuing and/or evaluating sexual abuse claims, including but not limited to identifying any database, computer system or other system that You use in valuing and/or evaluating sexual-abuse claims, and the categories of information stored on this system

**ANSWER TO INTERROGATORY NO. 3:**

Great American objects to this interrogatory as overbroad, unduly burdensome, not limited in time, disproportionate to the needs of this case, and seeking wholly irrelevant information.  Claims of sexual abuse, including those involving insureds other than Boy Scouts of America, involve completely different and unique factual circumstances and have no bearing on the present matter.  Inquiry into such claims is also likely to require disclosure of confidential claim information and settlement information that is not discoverable.  Great American's practices, procedures, and policies for evaluating sexual abuse claims also have no bearing on Plan confirmation.  The request that Great American reveal information regarding its information technology systems and programs also has no bearing on this case and is propounded solely to obtain confidential business information and to unduly burden Great American.  Great American also objects to this interrogatory to the extent that it is seeking information relevant to insurance coverage issues, which the Court has repeatedly stated will not be addressed as part of this bankruptcy or Plan confirmation.

Subject to and without waiving these objections, Great American evaluates and values each claim on an individual basis based upon the appliable law, facts and circumstances of each claim.

**INTERROGATORY NO. 4:**

Identify Your procedures, practices and policies for evaluating and valuing sexual abuse claims that are filed outside the statute of limitations, including identifying any sexual abuse claims that have been filed outside the statute of limitations that You have settled, the attorneys fees associated with such claims, and the amounts of any settlement payments.

**ANSWER TO INTERROGATORY NO. 4:**

Great American objects to this interrogatory as overbroad, unduly burdensome, not limited in time, disproportionate to the needs of this case, and seeking wholly irrelevant information.  Claims of sexual abuse, including those involving insureds other than Boy Scouts of America, involve completely different and unique factual circumstances and have no bearing on the present matter.  Inquiry into such claims is also likely to require disclosure of confidential claim information and settlement information that is not discoverable.  Great American's practices, procedures, and policies for evaluating sexual abuse claims also have no bearing on Plan confirmation.  The request that Great American reveal information regarding its information technology systems and programs also has no bearing on this case and is propounded solely to obtain confidential business information and to unduly burden Great American.  Great American also objects to this interrogatory to the extent that it is seeking information relevant to insurance coverage issues, which the Court has repeatedly stated will not be addressed as part of this bankruptcy or Plan confirmation.

Subject to and without waiving these objections, Great American evaluates and values each claim on an individual basis based upon the appliable law, facts and circumstances of each claim.

**INTERROGATORY NO. 5:**

Identify all Persons responsible for determining the value or veracity of sexual abuse claims, including all Persons responsible for approving or authorizing settlement amounts under Policies issued to the Debtors.

**ANSWER TO INTERROGATORY NO. 5:**

Great American objects to this interrogatory as overbroad, unduly burdensome, not limited in time, and disproportionate to the needs of this case. Great American is aware of dozens of individuals both inside and outside of Great American who have knowledge of, and who have evaluated settlements of Abuse Claims, including the Debtors and their attorneys. Other claims of sexual abuse involve completely different and unique factual circumstances and have no bearing on confirmation of the Plan in this matter. Inquiry into such claims is also likely to require disclosure of confidential claim information and settlement information that is not discoverable. Great American also objects to this request to the extent that it is seeking information relevant to insurance coverage issues, which the Court has repeatedly stated will not be addressed as part of this bankruptcy or Plan confirmation.

Subject to and without waiving these objections, the individual at Great American responsible for handling the Abuse Claims post-petition is Stephanie Ruffo, Senior Claims Technical Director, Great American Custom Insurance Service, c/o Clyde & Co US LLP, Four Embarcadero Center, Suite 1350, San Francisco, CA 94111.

**INTERROGATORY NO. 6:**

Identify all settlement amounts You paid for Abuse Claims under Policies issued to the Debtors.

6142779                                6

**ANSWER TO INTERROGATORY NO. 6**:

Great American objects to this interrogatory as seeking information already in the possession of the Debtors as Great American has previously produced this information to Debtors.  Subject to and without waiving this objection, Great American refers the Debtors to the discoverable portions of its loss runs, included in Great American's production of documents.

**INTERROGATORY NO. 7**:

Identify all Policies for which reserves are set regarding Debtors' pursuit of insurance coverage for the Abuse Claims, including the amount set for reserves in all Policies.  In Your response, Identify each person with knowledge regarding reserves set for all Policies.

**ANSWER TO INTERROGATORY NO. 7**:

Great American objects to this interrogatory as overbroad, vague, ambiguous, and seeking irrelevant information disproportionate to the needs of this case.  It is unclear from the use of the term "all Policies" whether the Debtors are seeking information only about policies issued by Great American to the Boy Scouts of America under which the Debtors have sought coverage, or if information is also sought regarding other policies.  To the extent information is sought regarding other policies, whether issued by Great American to other insureds, or by other insurers, such request is wholly irrelevant to the needs of this case.  Information concerning other insureds and insurers, claimants, policies and unique factual circumstances is wholly irrelevant to the facts of this case.  Such information also includes confidential insured and claimant information.  Great American also objects to the request for information regarding loss reserves as overly broad, disproportionate to the needs of this case, and seeking information wholly irrelevant to the needs of confirmation.  Loss reserves are not at all relevant to the subject of

whether a Plan is confirmable.  Great American also objects to the request for information regarding loss reserves as seeking information protected by the attorney-client privilege.

**INTERROGATORY NO. 8:**

Identify all Reinsurance Agreements and Identify any Employee who was involved with the submission of the Abuse Claims pursuant to any such Reinsurance Agreement.

**ANSWER TO INTERROGATORY NO. 8:**

Great American objects to this interrogatory as overly broad, disproportionate to the needs of this case, and seeking information wholly irrelevant to the needs of confirmation. Reinsurance information is not at all relevant to the subject of whether a Plan is confirmable. Furthermore, the Court has expressly stated that the Court will not be making coverage determinations as part of the confirmation proceedings, and, even though information about reinsurance would have no bearing on what claims are or are not covered by any policies of insurance issued to Boy Scouts of America, there is no other potential purpose for this discovery as part of the Plan confirmation hearing.

**INTERROGATORY NO. 9:**

Identify any provision or term in Your Policies that you contend the Debtors have allegedly breached, including all facts and documents supporting such contention.

**ANSWER TO INTERROGATORY NO. 9:**

Great American objects to this request as vague and ambiguous, and as seeking information protected by the attorney-client privilege and work product doctrine.  Great American objects to this interrogatory as overly broad, disproportionate to the needs of this case, and seeking information wholly irrelevant to the needs of confirmation.  The Court has expressly stated to all parties in this matter that the Court will not be determining coverage issues as part of

Plan confirmation and there is no other potential purpose for this discovery as part of the Plan

confirmation hearing.  Whether or not the Debtors are in breach of any policies issued to the Boy

Scouts of America by Great American is a direct issue going to coverage under these Policies,

and is not properly the subject of discovery as part of Plan confirmation.

Subject to and without waiving these objections, Great American refers the Debtors to the

coverage correspondence from Great American to the Debtors included in Great American's

document production.  Great American reserves the right to identify additional policy provisions

of which the Debtors are potentially in breach, whether as part of in these interrogatories, in

subsequent filings, or in subsequent coverage litigation where any breach of the policies by the

Debtors is being addressed, regardless of whether or not the Debtors are party to such litigation.

**INTERROGATORY NO. 10:**

Identify, describe and explain any contention that the Debtors' Plan is not insurance

neutral.

**ANSWER TO INTERROGATORY NO. 10:**

Great American objects to this interrogatory as prematurely seeking disclosure of Great

American's legal positions regarding Plan confirmation.  Discovery in this matter is ongoing,

and Great American is allowed to develop facts and legal analysis on all subjects pertaining to

Plan confirmation.  Great American will identify, describe, and explain its positions regarding

why the Debtors' Plan is not insurance neutral in connection with its Plan objections, currently

due on January 7, 2022.

Subject to and without waiving these objections, Great American refers the Debtors to (i)

the following objections filed or joined by the Great American regarding the Debtors' Disclosure

Statement for the Fourth Amended Chapter 11 Plan of Reorganization: Dkt. Nos. 6056, 6062 and

<mark>6065, and (ii) statements made by counsel for the insurers during hearings on the Disclosure Statement.</mark>

**INTERROGATORY NO. 11:**

Identify all Persons who assisted You in any way in responding to any one of these Interrogatories, including each Interrogatory number with which he or she assisted in answering, regardless of whether assistance he or she provided was incorporated into the final answer.

**ANSWER TO INTERROGATORY NO. 11:**

These Interrogatories are corporate responses of Great American.  They were approved by Stephanie Ruffo, Senior Claims Technical Advisor for Great American Custom Insurance Services, with the assistance of counsel.

**INTERROGATORY NO. 12:**

Identify all Individuals that you intend to call to testify at the Confirmation Hearing and provide a brief description of the subject matter of their testimony.

**ANSWER TO INTERROGATORY NO. 12:**

Great American objects to this request as premature and seeking to impose burdens and obligations exceeding those imposed by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and this Court's scheduling order.  The Court has not yet required disclosure of witnesses anyone intends to call at any Confirmation Hearing, and Great American has not yet determined who it will call as witnesses.

Great American reserves the right to amend or supplement this response if as its investigation of the facts warrants.

Respectfully submitted,

Dated: October 18, 2021                    BODELL BOVÉ, LLC

/s/ Bruce W. McCullough
Bruce W. McCullough  (No. 3112)
1225 N. King Street, Suite 1000
Wilmington, DE 19801-3250
Telephone: (302) 655-6749
Facsimile: (302) 655-6827
Email: bmccullough@bodellbove.com

- and -

CLYDE & CO US LLP
Bruce D. Celebrezze (*pro hac vice*)
Four Embarcadero Center, Suite 1350
San Francisco, California 94111
Telephone:  (415) 365-9800
Facsimile:  (415) 365-9801
Email:    bruce.celebrezze@clydeco.us

Konrad R. Krebs (*pro hac vice*)
200 Campus Drive | Suite 300
Florham Park, NJ 07932
Telephone:  (973) 210-6700
Facsimile:  (973) 210-6701
Email:    konrad.krebs@clydeco.us

- and –

DAVID CHRISTIAN ATTORNEYS LLC
David Christian (*pro hac vice*)
105 W. Madison St., Suite 1400
Chicago, IL 60602
Telephone: (862) 362-8605
Email: dchristian@dca.law

*Attorneys for Great American Assurance Company,*
*f/k/a Agricultural Insurance Company;*
*Great American E&S Insurance Company,*
*f/k/a Agricultural Excess and Surplus Insurance*
*Company; and Great American E&S Insurance*
*Company*

**VERIFICATION**

I, Stephanie Ruffo, declare:

I am a Claims Director at Great American Custom Insurance Services. I am authorized to make this verification on Great American's behalf. I have reviewed Great American's Responses and Objections to Debtors' First Set of Interrogatories to Great American and am familiar with its contents. The matters stated in the foregoing document are true and correct to the best of my information and belief.

I declare that foregoing is true and correct under penalty of perjury under the laws of the United States of America.

Executed on October 18, 2021 at Essex County, New Jersey.

_____

Stephanie R. Ruffo

# EXHIBIT H

FILED UNDER SEAL

# Exhibit I

# CHOATE

Samuel N. Rudman
t 617-248-4034
f 617-502-4034
srudman@choate.com

**VIA EMAIL**

October 27, 2021

Glenn M. Kurtz, Esq.
White & Case
1221 Avenue of the Americas
New York, NY  10020-1095
Gkurtz@whitecase.com

Re:          *In re:  Boy Scouts of America and Delaware BSA, LLC*
             **In the United States Bankruptcy Court for the District of Delaware**
             **Case No. 20-10343 (LSS)**

Dear Glenn:

We write on behalf of the Propounding Insurers.  We are in receipt of Boy Scouts of America and Delaware BSA, LLC's (together, the "Debtors") October 18, 2021 responses to Propounding Insurers' Requests for Production ("RFPs"), Requests for Admission, and Interrogatories (collectively, the "Discovery Requests").  As described in greater detail below, Debtors' responses are deficient.  The limited production that Debtors appear to propose improperly excludes, among other things, documents and communications (i) that Debtors incorrectly assert are protected by the mediation privilege, (ii) reflecting Debtors' analysis of pre-petition claims, (iii) relating to or reflecting the resolution of the vast majority of abuse claims asserted against Debtors, and (iv) relating to post-petition claims and Debtors' communications with local councils and chartered organizations.  These deficiencies are addressed in more detail below.

We write to request a meet-and-confer to discuss the Debtors' responses to the Discovery Requests.  **In light of Judge Silverstein's direction that the parties should present discovery disputes to her before November 10, we propose that the meet-and-confer should occur as soon as possible, and no later than this Friday, October 29**.  Please let us know some times that work for you.

In the interest of making our discussion as productive as possible, we outline below the issues that we wish to discuss.  These issues are separate from, and in addition to, Ms. Marrkand's request of October 25, that you confirm that Debtors will produce "all documents and communications, other than those protected by the attorney-client privilege, regarding the TDPs."  Your agreement on that score would go a long way toward resolving potential disputes

October 27, 2021
Page 2

concerning several of the Propounding Insurers' requests, which are not discussed below, that concern the TDPs. *See, e.g.*, RFPs 6-8, 30, 34. We await your response on that score. The other issues that we wish to discuss are as follows:

## Debtors' Assertion of the Mediation Privilege

In response to each of the RFPs, Debtors objected to producing "Privileged Materials." Debtors defined "Privileged Materials" to include "documents or information protected from disclosure by . . . the mediation privilege." Debtors' General Objections ¶ 2. The Debtors' specific objections do not indicate what materials, if any, Debtors intend to withhold on the basis of the mediation privilege. In some instances, Debtors' undifferentiated privilege objection was the primary or sole basis for not responding to the Propounding Insurers' requests. *See, e.g.*, Debtors' Response to RFP No. 2 (explaining that Debtors do not believe there are any relevant, non-privileged documents responsive to the Propounding Insurers' request for documents and communications "relating to the Solicitation Procedures").

In light of Judge Silverstein's denial of Debtors' Motion for Protective Order and Related Relief, Debtors' wide-ranging assertion of the mediation privilege is no longer viable. Judge Silverstein held that the Debtors have put good faith at issue, that the Propounding Insurers may take discovery concerning "the *bona fides* of the mediation," and that the mediation privilege therefore does not protect Debtors' communications concerning the TDPs. H'rg Tr. at 13:9-15:7 (October 25, 2021). Judge Silverstein's reasoning applies just as squarely to several of the Propounding Insurers' other document requests. For example, if Debtors exchanged drafts of the Solicitation Procedures with other parties, then the mediation privilege does not shield either the drafts or the related communications. *See* RFP No. 2.

Ultimately, the Propounding Insurers cannot tell what materials, if any, the Debtors propose to withhold on the basis of the mediation privilege in the wake of Judge Silverstein's October 25 ruling. We therefore ask that, in advance of the meet-and-confer, you advise us as to which requests—if any—seek information that Debtors contend is protected by the mediation privilege.

## Documents Reflecting the Debtors' Process for Analyzing, Assessing, and Quantifying Abuse Claims

The Propounding Insurers made various requests for documents and communications reflecting or relating to Debtors' process for analyzing, assessing, and quantifying abuse claims. *See, e.g.*, RFPs 4-5, 9, 85, 93. In response to these requests, Debtors agreed to produce a narrow set of materials, which consist primarily of the following categories of information for pre-petition claims that were pending or resolved during the last five years: (1) the complaint; (2) any settlement agreement with the claimant; (3) the deposition testimony of the claimant; and (4) interrogatory responses of the claimant.

October 27, 2021
Page 3

Debtors' proposed response is inadequate.  The limited production that Debtors propose to make would omit any and all documents and communications reflecting how Debtors analyzed pre-petition abuse claims, and it would artificially limit the scope of responsive materials to the last five years.  Debtors have contended that the TDPs are fair and reasonable, and the Propounding Insurers are entitled to compare the TDPs with the way in which Debtors themselves evaluated pre-petition abuse claims.  We therefore ask you to reconsider your position, and produce documents sufficient to show how Debtors analyzed, assessed, and quantified pre-petition abuse claims.[1]

## Documents Reflecting the Resolution of Abuse Claims

The Propounding Insurers made several requests for documents and communications reflecting how abuse claims or potential claims based on abuse were resolved.  *See, e.g.*, RFPs 74-75, 78, 80, 86-87.  Debtors largely refused to produce responsive materials, and, in most cases, agreed to produce only the four categories of information described above (and with the same five-year time limitation).

Debtors' proposed response again omits critical information.  For example, Debtors apparently will not produce documents or communications reflecting instances in which, following the assertion of an abuse claim, the claimant dropped the matter or otherwise failed to follow-up.  Similarly, Debtors' production apparently will exclude documents relating to claims that were resolved without payment or without a formal settlement agreement.  And Debtors' production will not include any information about pre-petition claims that were pending or resolved more than five years ago.

Debtors' failure to provide this information skews the data regarding pre-petition claims resolution and obscures the number of claims made against Debtors that were investigated and determined to be meritless.  We therefore request that you reconsider your refusal to produce these materials.

## Debtors' Communications With Local Councils and Chartered Organizations

The Propounding Insurers sought documents and communications relating to "current" claims of abuse against local councils and chartered organizations.  *See, e.g.*, RFPs No. 31, 33-34.  Debtors apparently construed these requests to exclude (i) post-petition claims, and (ii) communications with insurers other than the Propounding Insurers.  So far as the Propounding Insurers can tell, Debtors therefore committed to produce a narrow set of responsive materials,

---

[1] In addition, the Propounding Insurers requested documents and communications that were submitted to the Debtors' Omni claims database, including but not limited to all Proofs of Claim in the original formatting as the Debtors received them and all original accompanying metadata.  *See* RFP 73.  In response to this request, the Debtors refused to produce any responsive materials.  The Debtors' failure to provide any materials submitted to the Omni claims database deprives the Propounding Insurers of source documentation regarding the Proofs of Claim, which is directly relevant to the validity of the claims and not shielded by any privilege.  We therefore request that you reconsider your refusal to produce these materials.

October 27, 2021
Page 4

which may not include (i) internal BSA documents relating to these subjects, or (ii) any documents relating to the valuation of current claims. Debtors' interpretation artificially restricts the scope of these requests, and would shield from discovery Debtors' analysis of post-petition claims, and their related communications with local councils and chartered organizations. We therefore request that you reconsider your position and produce responsive materials, including materials concerning post-petition claims.

Notwithstanding the enumeration of the subjects and requests above, the Propounding Insurers expressly reserve their right to seek the full range of discoverable information in connection with all of their requests.

Very truly yours,

*/s/ Samuel N. Rudman*

Samuel N. Rudman

# Exhibit J

WHITE & CASE

October 28, 2021

**VIA E-MAIL**

Samuel N. Rudman
Choate Hall & Stewart LLP
Two International Place
Boston, MA, 02110
srudman@choate.com

White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095
**T** +1 212 819 8200

whitecase.com

Re:     *Boy Scouts of America, et al.*, Case No. 20-10343 (Bankr. D. Del. 2020)

Dear Samuel:

I write in response to the Propounding Insurers' letter dated October 27, 2021, requesting a meet and confer regarding certain purported deficiencies in the Debtors' responses and objections to the Propounding Insurers' requests for production.[1] The Debtors also address herein deficiencies in the Propounding Insurers' responses to the Debtors' discovery requests. The Debtors propose to meet and confer tomorrow, October 29 at 12:00 p.m. E.T. during our weekly scheduled call. Please let us know if this time works for you, or please propose an alternative time.

In order to facilitate the discussion, we have outlined preliminary responses to the matters you raise in your letter, as well as the Propounding Insurers' deficiencies:

## I.     The Debtors' Response to the Propounding Insurers' Meet and Confer Letter

### A.  The Debtors' Assertion of the Mediation Privilege

The Debtors do not read the Court's October 25, 2021 ruling as abrogating the mediation privilege with respect to all documents that are otherwise protected from disclosure under the Court's Mediation Order and Local Rule 9019-5. To the extent you think there are certain categories of documents that are not subject to mediation privilege in light of the Court's October 25 ruling, which addressed the TDPs, please identify them. With regard to the TDPs, the Debtors will produce all documents identified in the TDP log that the Debtors previously produced to the Propounding Insurers, including drafts of the TDPs exchanged with third parties and related communications. As you state in your letter, the Debtors' agreement to produce these documents will "go a long way toward resolving potential disputes." The Debtors will also produce a log identifying documents and communications that are being withheld for mediation privilege.

Your claim that Judge Silverstein's October 25 ruling "squarely" applies to the solicitation procedures is incorrect. Neither the Motion nor the Court addressed the solicitation procedures. Indeed, the solicitation procedures were not negotiated in the mediation. Additionally, the Court's October 25 ruling was based on findings sought in connection with confirmation, which does not apply to the

---

[1] This letter also responds to the letters served by Liberty Mutual.

**WHITE & CASE**

solicitation procedures that the Court has already approved.  *See Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation and Voting Procedures, (III) Approving Forms of Ballots, (IV) Approving Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief* [D.I. 6438].  Further, because the solicitation procedures were developed by the Debtors and their advisors, communications and drafts regarding the solicitation procedures are overwhelmingly subject to the attorney-client privilege and work product doctrine.  And, to the extent the Debtors had communications with third parties regarding the solicitation procedures, those communications are likely subject to the joint defense or common interest privilege.  Nonetheless, the Debtors will provide a log of privileged communications with third parties regarding the solicitation procedures.

### B.  Documents Reflecting the Debtors' Process for Analyzing, Assessing, and Quantifying Abuse Claims

Your letter contends that the Debtors' response to certain discovery requests relating to the Debtors' process for analyzing, assessing, and quantifying abuse claims is inadequate.  Specifically, you take issue with the Debtors' limiting their production to the following categories of documents: (1) the complaint; (2) settlement agreements with claimants; (3) deposition testimony of the claimant; and (4) interrogatory responses of the claimant.  Your letter also contends that the Debtors "artificially limit the scope of responsive materials to the past five years."

Your characterization of the Debtors' proposed production is inaccurate.  The Debtors also agreed to produce the case management plans (CMPs) that were previously provided to the Insurers, but requested to meet and confer with the Propounding Insurers regarding the production of the CMPs to the extent they are subject to a joint defense privilege with the Insurers.  The CMPs, along with the above referenced materials, are the primary documents on which the Debtors relied to analyze, assess and quantify abuse claims.  Further discovery would not be proportional to the needs of the case.

Given the voluminous nature of collecting these documents, it is reasonable for the Debtors to limit the scope to pre-petition claims from 2016 to present.  Information relating to abuse claims that were resolved prior to 2016 have little, if any, relevance to the Debtors' assessment of abuse claims for purposes of the Plan.  Moreover, documents relating to pre-petition claims from 2010 to 2016 are overly burdensome to search and collect, as they are stored with the BSA (as opposed to Ogletree Deakins, LLP, the BSA's national coordinating counsel), in many instances in multiple repositories that are not easily searchable and contain over 700 pages per claim.  In other instances, the claim file is incomplete or not in electronic form.  To the extent a claim file is incomplete, it is wholly impractical for the Debtors to have to coordinate with numerous defense firms to acquire the missing information.  Despite these challenges, the Debtors will agree to produce complaints and settlement agreements for pre-petition claims from 2010 to 2016 that can be located with a reasonable search.

### C.  Documents Reflecting the Resolution of Abuse Claims

In addition to the documents referenced above, the Debtors will produce other documents that reflect claims that were resolved without payment for pre-petition claims from 2016 to present, including,

Samuel N. Rudman, p. 3
October 28, 2021



to the extent available, demand letters, dismissal orders, and releases.  For the reasons noted above, the Debtors will not produce such materials regarding pre-petition claims from 2010 to 2016.

### D.  The Debtors' Communications with Local Councils and Chartered Organizations

Your letter also seeks documents and communications regarding post-petition Abuse Claims against Local Councils and Chartered Organizations.  Those materials are overwhelmingly in the possession of the Local Councils and Chartered Organizations against which the claims were asserted, and the Debtors suggest that you seek those materials from them.  Additionally, the vast majority of internal documents concerning the Debtors' analysis of post-petition claims is privileged.  Nonetheless, the Debtors will identify all post-petition abuse claims against Local Councils and Chartering Organizations of which the Debtors are aware.  Additionally, the Debtors will produce any communications with insurers related to the post-petition abuse claims received from insurers to the Chartered Organizations.

### E.  Documents Reflecting Omni's Claims Database

Finally, your letter seeks the Proofs of Claim submitted to Omni in the "original formatting" and with "all original accompanying metadata."  The Propounding Insurers already have unfettered access to the Proofs of Claim in their original formatting through the online portal created by Omni.[2]  With respect to metadata, the Proofs of Claim were submitted to Omni in one of three ways: (1) they were mailed to Omni, in which case there is no metadata in connection with those proofs of claim; (2) they were scanned to Omni, in which case there is no metadata in connection with those proofs of claim; or (3) they were uploaded to the Omni website, in which case the only metadata associated with those proofs of claim is the IP address of the party that uploaded the Proof of Claim.  The Debtors will provide a spreadsheet identifying the IP addresses for the parties who uploaded Proofs of Claim.

## II.    Deficiencies in the Propounding Insurers' Responses' to the Debtors' Discovery Requests

The Debtors have also served individual discovery requests on each of the Propounding Insurers.  The Debtors would like to meet and confer regarding certain deficiencies in the Propounding Insurers' responses to those requests.  Specifically, the Debtors seek to discuss the following issues:

### A.  Claims Handling Information/Documents

The Debtors made various requests for documents and communications relating to the Propounding Insurers' claims handling practices.  *See, e.g.*, Interrogatory Nos. 1-5, RFP 1-4.[3]  These requests seek documents relating to how the Propounding Insurers evaluate and value sexual abuse claims, both with regard to the Debtors specifically and with insureds generally.  In response to these requests, a majority, if not all, of the Propounding Insurers refused to produce such documents or agreed to produce only a very limited scope of documents, such as communications with the Debtors.

---

[2] To the extent a Propounding Insurer does not have access to the Omni database, that insurer should immediately notify the Debtors.

[3] With respect to Century, the Debtors refer to Century's responses to the Debtors' Second Set of Interrogatories and its responses to the Debtors' Second Set of Requests for Production dated September 30th.  In addition to those noted above, the Debtors also include Century's response to Interrogatory No. 7 relating to documents in connection with the Guam claims.

**WHITE & CASE**

These responses are inadequate.  The Propounding Insurers have objected to the Trust Distribution Procedures (TDPs), including how the Trustee will evaluate and value claims.  The Propounding Insurers' claims adjustment information, *i.e.*, how the Propounding Insurers evaluate and adjust sexual abuse claims, is relevant to this dispute.  Indeed, the Propounding Insurers' own meet and confer letter seeks similar documents from the Debtors on the grounds that the "Debtors have contended that the TDPs are fair and reasonable, and the Propounding Insurers are entitled to compare the TDPs with the way in which Debtors themselves evaluated pre-petition claims." The Debtors are entitled to the Propounding Insurers' claims adjustment documents for the same reason: so the Debtors can compare how the Propounding Insures evaluate and value claims to the TDPs and to the Propounding Insurers' position in objecting to them.

### B.  Reserve and Reinsurance Information

The Debtors have also made various requests for documents and communications relating to reserves and re-insurance information.  *See, e.g.*, Interrogatory Nos. 7, 8, 10, RFP 9-11.  All of the Propounding Insurers refused to produce any documents or communications in response to these requests.

Responsive documents are relevant to the Insurers' objection as to the exposure and claim values.  Moreover, the Propounding Insurers have sought documents relating to how the Debtors came to value the Abuse Claims.  Discovery is a two-way street.  The Propounding Insurers cannot demand that the Debtors provide their valuation of the Abuse Claims while withholding the same information.  Documents relating to whether the Propounding Insurers have reserved for the Abuse Claims and the Propounding Insurers' communications to their reinsurers is thus reasonable.  The Debtors request that the Propounding Insurers produce these materials.

### C.  Pre-Petition Communications with Insurers

In response to certain discovery requests, the Debtors intend to produce certain pre-petition communications with their insurers relating to approvals of settlements for abuse claims.  The Debtors will also be producing the communications with the insurers related to the draft TDPs that were circulated for review.  Please let us know if you would like to discuss the production of these documents, which the Debtors see no basis for withholding.

We look forward to discussing these matters further on the meet-and-confer.

Sincerely,

*/s/ Glenn M. Kurtz*             */s/ Adrian Azer*

**Glenn M. Kurtz**             **Adrian Azer**

**T** +212 819 8252             **T** +202 654 4537
**E** gkurtz@whitecase.com        **E** adrian.azer@haynesboone.com

Cc:    Counsel to the Debtors and Propounding Insurers (by email)