### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| Debtors.[1] | (Jointly Administered) |
| | **Re Docket Nos. 2618, 6438, 6443, 6445** |

### THE OFFICIAL COMMITTEE OF TORT CLAIMANTS' NOTICE OF DEPOSITION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) TO BOY SCOUTS OF AMERICA

PLEASE TAKE NOTICE THAT pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable to these proceedings by Rules 9014 and 7030 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Official Committee of Tort Claimants (the "TCC"), by and through its undersigned counsel, shall take the deposition of Boy Scouts of America ("BSA") by the person(s) most qualified to testify with respect to the topics described in **Exhibit A** hereto.

The deposition will take place on November 19, 2021, at 10:00 a.m. (Eastern Time), or at such other date and time as the parties may agree. BSA may elect to be deposed in person or remotely. If BSA elects to be deposed in person, the deposition will take place at the offices of Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, Delaware 19899-8705, and parties may choose to attend in person or remotely.

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

If BSA chooses to be deposed remotely:

1.      Counsel for the parties and their clients will be participating from various, separate locations;

2.      The court reporter will administer the oath to the witness(es) remotely;

3.      The witness(es) will be required to provide government-issued identification satisfactory to the court reporter, and this identification must be legible on camera;

4.      Each participating attorney must be visible to all other participants, and their statements will be audible to all participants;

5.      All exhibits will be provided simultaneously and electronically to the witness(es) and all participants;

6.      The court reporter will record the testimony;

7.      The deposition may be recorded electronically; and

*Remainder of page intentionally left blank*

8.      Counsel for all parties will be required to stipulate on the record:

    a.      Their consent to this manner of deposition; and

    b.      Their waiver of any objection to this manner of deposition, including any objection to the admissibility at trial of this testimony based on this manner of deposition.

Dated: November 5, 2021
Wilmington, Delaware

        PACHULSKI STANG ZIEHL & JONES LLP

        */s/ James E. O'Neill*
        James I. Stang (CA Bar No. 94435) (admitted *pro hac vice*)
        Iain A.W. Nasatir (CA Bar No. 148977) (admitted *pro hac vice*)
        Kenneth H. Brown (CA Bar No. 100396) (admitted *pro hac vice*)
        James E. O'Neill (DE Bar No. 4042)
        John W. Lucas (CA Bar No. 271038) (admitted *pro hac vice*)
        Steven W. Golden (DE No. LP 0127)
        919 North Market Street, 17th Floor
        P.O. Box 8705
        Wilmington, DE 19899-8705 (Courier 19801)
        Tele/Fax: (302) 652-4100 / (302) 652-4400
        Email:      jstang@pszjlaw.com
                  inasatir@pszjlaw.com
                  kbrown@pszjlaw.com
                  joneill@pszjlaw.com
                  jlucas@pszjlaw.com
                  sgolden@pszjlaw.com

        *Counsel for the Official Committee of Tort Claimants*

**EXHIBIT A TO THE NOTICE OF DEPOSITION
OF BOY SCOUTS OF AMERICA**

**DEFINITIONS**

For the purposes of these Requests for Production, the following Definitions shall apply:

1.       The terms "all," "any," and "each" shall each be construed as encompassing any and all.  The singular shall include the plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive; and the term "including" means "including without limitation."  The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense.

2.       Capitalized terms not otherwise defined herein shall have same meanings set forth in the Plan.

3.       "Abuse" shall have the meaning provided in the Plan.

4.       "Abuse Claim" means a liquidated or unliquidated Claim against one or more Abuse Parties that is attributable to, arises from, is based upon, relates to, results from, or is otherwise Concerned with, in whole or in part, directly, indirectly, or derivatively, alleged Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based on misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory, including any theory based on public policy or any act or failure to act by an Abuse Party or any other Person for whom any Abuse Party is alleged to be responsible.  The term "Abuse Claims" includes Direct Abuse Claims and Indirect Abuse Claims.

5.      "Abuse Party" means, individually and collectively, (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Chartered Organizations; (f) Insurance Companies; or (g) all or any of the foregoing Persons' Representatives.

6.      "BSA Membership Standards Group" shall have the meaning You ascribed to it in Your Revised Responses and Objections to Century's Request to the Debtors for Production of Documents, dated June 22, 2021 and attached as Exhibit 5 to Doc. No.5514.

7.      "Bankruptcy Court" shall mean the above-captioned United States Bankruptcy Court for the District of Delaware presiding over these Chapter 11 Cases.

8.      "Channeling Injunction" shall have the meaning ascribed to it in the Plan.

9.      "Chapter 11 Cases" shall mean the above-captioned chapter 11 cases of Boy Scouts of America and Delaware BSA, LLC, pending before the United States Bankruptcy Court for the District of Delaware.

10.     "Chartered Organization" shall have the meaning provided in the Plan.

11.     "Claim" means any "claim," as defined in section 101(5) of the Bankruptcy Code.

12.     "Coalition" shall mean the Coalition of Abused Scouts for Justice, an ad hoc committee that filed a notice of appearance in the Chapter 11 Cases on July 24, 2020, at Docket No. 1040, and its members, agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, representatives, affiliates, subsidiaries, predecessors and/or successors.

13.     "Communications" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, correspondence, memoranda, emails, facsimile transmissions, or other form of verbal,

written, mechanical, or electronic disclosure, in Your actual or constructive control or custody or in the control or custody of any current or former affiliates, representatives or advisors.

14.     "Concerning" means relating to, evidencing, supporting, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, referencing, discussing, indicating, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

15.     "Debtors" means, collectively or individually, as context requires and to encompass responsive documents Boy Scouts of America and Delaware BSA, LLC, and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

16.     "Debtors' Data Site" means the electronic site to which the Debtors have produced Documents in these Bankruptcy Cases for the TCC's counsel to access.

17.     "Disclosure Statement" shall mean the *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6445], as such Document may be amended, supplemented, or modified from time to time.

18.     "Documents" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all Documents and information in Your possession, custody, or control, and includes: all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda, transcripts, tapes, or other voice recordings, and all other Documents and tangible things, including booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts,

3

agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, printouts, and all other data, whether recorded by electronic or other means, and all drafts thereof. If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on any of the pages thereof, then each such non-identical copy is a separate Document and must be produced.  When examples of categories or types of Documents are given in a particular Request for Production by use of phrases such as "including," this shall always be interpreted as being for illustrative purposes only (*i.e.*, to be understood as "including without limitation") and in no way limits or narrows the scope of any Request for Production. "Documents" always includes Communications, whether so stated in a particular Request for Production or not.

19. "Effective Date" shall have the meaning provided in the Plan.

20. "FCR" shall mean James L. Patton, Jr., the legal representative appointed by the Bankruptcy Court for holders of Future Abuse Claims, or any successor legal representative appointed by the Bankruptcy Court, and his agents, accountants, financial advisors, employees, experts, attorneys, representatives, affiliates, predecessors and/or successors.

21. "Hartford Admin Claims" shall mean the Hartford Administrative Expense Claim and the Hartford Additional Administrative Expense Claim.

DOCS_LA:340394.4 85353/002

22.    "Hartford Additional Administrative Expense Claim" shall have the meaning provided in the Plan.

23.    "Hartford Administrative Expense Claim" shall have the meaning provided in the Plan.

24.    "Hartford Insurance Settlement" shall have the meaning provided in the Plan.

25.    "Hartford Insurance Settlement Agreement" shall have the meaning ascribed to it in the Plan.

26.    "Hartford Term Sheet" shall mean that certain *Settlement Term Sheet* [Docket No. 6210-1].

27.    "IV Files" shall refer to any Documents commonly referred to as ineligible volunteer files, formerly known as the perversion files, the volunteer screening database, and any other Documents Concerning Perpetrators or alleged Perpetrators.

28.    "Indirect Abuse Claims" shall have the meaning provided in the Plan.

29.    "Insurance Company" shall have the meaning provided in the Plan.

30.    "Insurance Coverage Action" shall have the meaning provided in the Plan.

31.    "Insurance Policy" shall have the meaning provided in the Plan, including all rights and benefits thereunder, and the proceeds thereof.

32.    "Limited Protected Parties" shall have the meaning provided in the Plan.

33.    "Local Council Feedback Template" shall have the meaning You ascribed to it in Your Revised Responses and Objections to Century's Request to the Debtors for Production of Documents, dated June 22, 2021, and attached as Exhibit 5 to Doc. No.5514.

34.     "<u>Local Council Reporting Procedures</u>" shall have the meaning You ascribed to it in Your Revised Responses and Objections to Century's Request to the Debtors for Production of Documents, dated June 22, 2021, and attached as Exhibit 5 to Doc. No.5514.

35.     "<u>Local Councils</u>" shall have the meaning provided in the Plan.

36.     "<u>Mandatory Reporting Procedures</u>" shall have the meaning You ascribed to it in Your Revised Responses and Objections to Century's Request to the Debtors for Production of Documents, dated June 22, 2021, and attached as Exhibit 5 to Doc. No.5514.

37.     "<u>Non-Abuse Claims</u>" shall have the meaning provided in the Plan.

38.     "<u>POC</u>" shall mean any proof of claim filed in these Chapter 11 Cases.

39.     "<u>Person</u>" shall have the meaning provided in the Plan.

40.     "<u>Perpetrator</u>" shall have the meaning provided in the Plan.

41.     "<u>Petition Date</u>" shall mean February 18, 2020.

42.     "<u>Plan</u>" shall mean the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6443], as such Document may be amended, supplemented, or modified from time to time.

43.     "<u>Prepetition</u>" shall mean occurring prior to the Petition Date.

44.     "<u>Related Non-Debtor Entities</u>" shall have the meaning provided in the Plan.

45.     "<u>Released Parties</u>" shall have the meaning provided in the Plan.

46.     "<u>Restricted Assets</u>" means certain assets that are subject to enforceable restrictions under applicable law, regulations, or accounting standards.

47.     "<u>Scouting Unit</u>" means an entity that conducts scouting for a Chartered Organization, including but not limited to a pack, den, troop, Sea Explorers, Air Explorers,

6

Learning for Life, Explorers, Venturing, crew, ship, chapter, and any associations that were predecessor associations of the foregoing.

48.    "Settlement Trust" shall have the meaning provided in the Plan.

49.    "Solicitation Procedures" shall have the meaning ascribed to it in the Disclosure Statement.

50.    "TCJC Claims" means the proof of claim filed by the Corporation of the President of the Church of Jesus Christ of Latter-day Saints against Delaware BSA, LLC bearing proof of claim number 1248, the proof of claim filed by the Corporation of the President of the Church of Jesus Christ of Latter-day Saints against Boy Scouts of America bearing proof of claim number 12530, and any other proof of claim filed against the Debtors by the Corporation of the President of the Church of Jesus Christ of Latter-day Saints and any of its Representatives.

51.    "TCJC Settlement" shall have the meaning provided in the Plan.

52.    "TCJC Settlement Agreement" shall have the meaning provided in the Plan.

53.    "TCJC Term Sheet" shall mean that certain *The Church of Jesus Christ of Latter-day Saints Settlement Term Sheet* [Docket No. 6210-2].

54.    "TDP" shall have the meaning ascribed to it in the Plan.

55.    "Third-Party Releases" shall have the meaning provided at Section X.J. of the Plan.

56.    "You" or "Your" and variants thereof mean the Debtors or Each of them.

## **TOPICS**

### ***General***

1.    Negotiations of the Plan, including the Persons involved.

2.    The basis for Your assertion that the Plan was proposed in good faith.

7

### *Insurance*

3.  The status of litigation Concerning insurance coverage for Abuse Claims and/or any Insurance Coverage Action.

4.  The Insurance Policies, Insurance Policies that cover the Local Councils, and all versions of summaries, lists or charts identifying Insurance Policies and Insurance Policies covering Local Councils, and the defense and/or indemnification of Abuse Claims by the Debtors and/or any Insurance Company.

5.  The impairment or exhaustion of any Insurance Policy and/or Insurance Policy covering Local Councils, the amounts paid for the defense and/or indemnification of any Abuse Claim by the Debtors and/or any Insurance Company under any Insurance Policy and/or Insurance Policy covering Local Councils.

### *Hartford Insurance Settlement*

6.  The Hartford Admin Claims, including, but not limited to, the amount and Your belief that Hartford is or may be entitled to payment of the Hartford Admin Claims.

7.  The Hartford Insurance Settlement and the Hartford Insurance Settlement Agreement and all prior settlement agreements, drafts, versions, and term sheets between the Debtors and Hartford Concerning the settlement of any Insurance Policy or Insurance Policy covering Local Councils for liability for Abuse Claims.

8.  Your exercise of business judgment in negotiating and entering into any Hartford Insurance Settlements, Hartford Insurance Settlement Agreements, any term sheets relating thereto, and evidence supporting it.

9.  All of Your Communications with Hartford Concerning the TDP.

### *TCJC Settlement*

10.  The TCJC Term Sheet, TCJC Settlement, and TCJC Settlement Agreement, and all prior drafts, term sheets and versions between the Debtors and TCJC.

11.  Your exercise of business judgment in negotiating and entering into the TCJC Term Sheet, the TCJC Settlement and the TCJC Settlement Agreement, any drafts, versions or terms sheets thereto, and evidence supporting it.

12.  All of Your Communications with TCJC Concerning the TDP.

13.  The TCJC Claims including, but not limited to, the amount and Your belief that TCJC is, is not, or may be entitled to payment of the amount claimed.

### *Abuse Claims*

14.  Allowance or estimation of Abuse Claims and Indirect Abuse Claims.

8

15.    Your analysis and valuation of the dollar amount of all Abuse Claims, including the methodology employed to value the Abuse Claims, and all verdicts or settlements You considered.

16.    The projected, potential, or estimated liability of the Debtors and any Related Non-Debtor Entities for Abuse Claims and Indirect Abuse Claims.

17.    The Local Council Feedback Template and Mandatory Reporting Procedures for POCs filed in the Chapter 11 Cases.

18.    All Communications between or among the BSA Membership Standards Group and the representatives of the Local Councils Concerning the Local Council Reporting Procedures for any Abuse Claims, including, but not limited to, questions regarding the verification of POC data.

19.    Your analysis of the number of Persons who committed Abuse for which the Debtors may be legally responsible from the period January 1, 1940, to the Effective Date of the Plan and the number of Persons who were abused by those Persons who committed Abuse during the period January 1, 1940, through the Effective Date of the Plan.

20.    The IV Files.

### *Best Interests of Creditors*

21.    The Debtors' "Liquidation Analysis" and Exhibits C, D, and E of the Disclosure Statement.

22.    The value of the Chartered Organizations' claims against their insurers that would be released under the Plan.

23.    Your determination that assets of the Local Councils are restricted or unrestricted.

24.    The value of the Local Councils' claims against their insurers that would be released under the Plan.

25.    The conclusion in the *BSA National Leadership Council Meeting Minutes* dated February 26, 2019, at Section VI. Camping Report, that "[o]ver the past five years, camping has declined 9.9 percent in Scout Camp and Resident Camp. . . . There are 900 properties that run at only 40 percent capacity. In 98 percent of the councils there is no organized way to fund depreciation or replace properties. . . . The smaller councils are not able to afford the upkeep of a camp. Sharing camps between councils would help."

26.    Any data collection, reports, studies, evaluations, or analyses Concerning (a) Camp Properties Evaluations by region, state, or other geographical breakdown; (b) Intent To Operate reports; (c) NCAP National Interim Reports; and (d) Criteria Concerning the decision to operate or close camp properties.

27.    With regard to service centers and scout shops:

a. any data collection, reports, studies, evaluations, or analyses Concerning Service Center Evaluations by region, state, or other geographical breakdown;

b. the other "project" referenced in the *Michigan Crossroads Council Recommendation For The Strategic Use Of Camp Properties* dated May 15, 2012, which states, "Service Center Evaluation is not in the scope of this camp assessment. Another project has been established for that work"; and

c. the criteria Concerning the decision to operate or close service centers and scout shops.

28.     The following statements by the Greater Hudson Valley Council (Source: *Project 31: Greater Hudson Valley Council*):

a. "Given the current situation (from a multitude of perspectives) – it appears that the BSA coming out of bankruptcy in 2021, will establish finite criteria and enforce the necessity of local councils to work toward establishing new boundaries. The BSA (to date) has been reluctant to 'force' mergers of local councils, however, that may change."

b. "Additionally, a BSA project is underway to establish specific minimum benchmarks for councils in membership, finance, professional staff / positions, board governance, and sustainability."

29.     Any other data collection, reports, studies, evaluations, analysis, or projects Concerning Local Council mergers or benchmarking projects.

***PBGC Claim***

30.     The Debtors' potential pension liability.

31.     Any bankruptcy filing of, or assignment for the benefit of creditors for, any Local Council.

32.     Any audits the Debtors conducted of any Local Councils since January 1, 2015.

33.     Any occasion since January 1, 2015, when Debtors have revoked, or sought to revoke, the charter of any of the Local Councils.

***Released Parties***

34.     Any Released Party's indemnification rights against the Debtors.

35.     Releases under the Plan granted to any Related Non-Debtor Entity or Local Council.

36.     Daily operations of the Local Councils, including, but not limited to, relationship to the Debtors, employees, finances, pension obligations, and Scouting Unit activities.

DOCS_LA:340394.4 85353/002

37.    The impact, if any, to the Debtors' financial projections if any Protected Party is excluded from the Channeling Injunction.

38.    Whether payments under the Plan will satisfy of all or substantially all of the claims of the classes affected by the Channeling Injunctions.

### *Substantial Contribution*

39.    The Debtors' determination that any Released Party and/or Protected Party under the Plan has made or will make a substantial contribution to the Debtors' reorganizations in these Chapter 11 Cases.

40.    The financial condition, as of the Effective Date, of each Person, including, but not limited to, Local Councils and Chartered Organizations, that is to receive Third-Party Releases or Channeling Injunctions under the Plan.

### *Settlement Trustee*

41.    The selection of Eric Green or any other Person as Settlement Trustee.

### *Plan Feasibility*

42.    Local Councils' obligations to make contributions to the Settlement Trust.

43.    Whether Chartered Organizations will withdraw from scouting if they are not Protected Parties and the basis for Your knowledge of these potential withdrawals.

44.    Scouting membership trends from February 20, 2010, and forward.

-end-

DOCS_LA:340394.4 85353/002