**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) (Jointly Administered) |
| Debtors. | <u>Re</u>: **D.I. 6623, 6625, 6825, 6826, 6827, 6856** |

**THE ALLIANZ INSURERS' REPLY IN SUPPORT OF**
**THEIR MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

Allianz Global Risks US Insurance Company ("<u>Allianz</u>"), National Surety Corporation ("<u>National Surety</u>"), and Interstate Fire & Casualty Company ("<u>Interstate</u>" and together with Allianz and National Surety, the "<u>Allianz Insurers</u>"), by and through undersigned counsel, hereby file this reply (the "<u>Reply</u>") in support of *The Allianz Insurers' Motion for Relief from the Automatic Stay* (D.I. 6623) (the "<u>Motion</u>")[2] and in response to objections thereto filed by the Debtors, the Official Committee of Unsecured Creditors, the Future Claimants' Representative, and the Coalition of Abused Scouts for Justice (D.I. 6825 (the "<u>Debtor's Objection</u>"), 6826, 6827 (the "<u>FCR/Coalition Objection</u>")).   In further support of the Motion, the Allianz Insurers respectfully state as follows:

**<u>REPLY</u>**

1.        With respect to insurance coverage, the Debtors are using the automatic stay as a

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Lane, Irving, Texas 75038.

[2] Capitalized terms used but not defined in the Reply are ascribed the definitions given to them in the Motion.

sword, not a shield.  The Debtors want the automatic stay to remain in place through confirmation while they seek to litigate insurance coverage matters and anti-insurer findings in this Court.  And should the Plan be confirmed, the Debtors will leave for another day the impact of the Plan on the State Court Actions.

2.      While the Debtors and the FCR/Coalition claim that the Allianz Insurers' concerns about the Plan's impact on the State Court Actions are "incorrect" or "misguided," neither party provides any concrete assurances.  Indeed, the Debtors state that the "purported harm that the Plan would inflict – that unless the stay is lifted, this Court would divest jurisdiction from the applicable state court – is nothing more than a **mere possibility** at this stage and contrary to the language of the Plan."  Debtor's Objection ¶ 33 (emphasis added).  The FCR/Coalition, for their part, state that "[e]ven if the Stay is maintained and the Plan is confirmed, the retention of jurisdiction provision **does not prejudice** the Allianz Insurers' **arguments** with respect to forum."  FCR/Coalition Objection ¶ 12 (emphasis added).  And neither party addressed the Allianz Insurers' concerns that the Plan fails to preserve their abstention rights.  *See* Motion ¶ 47.  The Debtors should not be allowed to use the automatic stay coupled with the Plan in a manner to create uncertainty where none should exist.  The State Court Actions should move forward in their respective forums.

3.      Nevertheless, the Debtors contend that lifting the automatic stay would cause them to "incur significant legal costs" and distract from their "reorganization efforts and preparation for the Confirmation Hearing."  Debtors' Objection ¶ 25.  The Allianz Insurers, however, submit that if the stay is lifted so that the State Court Actions may resume, all that will likely occur between now and Plan confirmation is (a) letters will be filed in the applicable state

courts to notify them of the lift-stay order; (b) the Texas Appellate Court will begin to actively consider the pending Writ Proceeding; and (c) the Cook County Court will hold a status conference to allow the parties to provide their views as to how the matter should proceed given the 19-month halt in proceedings.  The Illinois Coverage Action and the Texas Coverage Action have been pending since November 2017 and August 2018, respectively, and there is no legitimate reason to wait several months until confirmation to re-start the process of determining the myriad insurance coverage questions presented by the abuse claims.

4.      The Allianz Insurers do not expect the State Court Actions to impose a significant time or cost burden on the Debtors during the next three months, a fact acknowledged by both the Debtors and the FCR/Coalition.  *See* Debtor's Objection ¶ 27 ("Thus, even if the automatic stay were lifted immediately, the State Court Actions would, at best, progress to some extent through the holidays and New Year only to have the Settlement Trustee assume the Debtors' role in such litigation after the Effective Date"); FCR/Coalition Objection ¶ 5 ("in any event, there is no chance that any such issues will be resolved in the State Court Actions before plan confirmation proceedings begin in three months.").

5.      Finally, the Coalition/FCR suggest that the Motion was filed to "gain a tactical advantage."  FCR/Coalition Objection ¶ 2.  The Debtors, however, sought to use the bankruptcy filings to move forward with the Texas Proceedings without the Illinois Coverage Action, forcing National Surety to file the National Surety Stay Motion.  And it is the Debtors, not the Allianz Insurers, that included language in the Plan that "provides that the Bankruptcy Court shall retain jurisdiction over the State Court Actions[,]" forcing the Allianz Insurers to file the

- 3 -

Motion.[3]  Debtor's Objection ¶ 17.

6.      While the Debtors and the Coalition/FCR argue that the Allianz Insurers' rights are preserved, neither party explains why the Plan contains language providing for the Bankruptcy Court to retain jurisdiction over the State Court Actions, particularly if "the Plan expressly preserves the jurisdiction of the current venues."  Debtor's Objection ¶ 33.  Of course, in the Hartford Adversary Proceeding, the Debtors took the position that insurance coverage issues should be decided in pre-petition state courts, not this Court.  *See* Motion ¶ 48.  In sum, it is the Debtors and the Coalition/FCR, not the Allianz Insurers, that are seeking to gain a tactical advantage.  For the reasons set forth in the Motion and in this Reply, the Allianz Insurers respectfully request that this Court grant the Motion.

     **A.**      **The Allianz Insurers are Harmed by the Continuation of the Automatic Stay over the State Court Actions.**

7.      Because the Plan is not insurance neutral, and in fact seeks insurance prejudicial findings neither permitted by precedent nor required for confirmation of a Plan, the Allianz Insurers are, and will continue to be, harmed by the automatic stay remaining in place over the State Court Actions.  Indeed, while the State Court Actions are stayed, the Debtors are attempting to have this Court make Plan findings that would seek to bind the Allianz Insurers—and all of the Debtors' other insurers—in any future coverage litigation.  Specifically, the Debtors ask this Court to make certain findings related to the Trust Distribution Procedures, including that the Trust Distribution Procedures related to the allowance of Abuse Claims and criteria for calculating Allowed Claim Amounts are "fair and equitable" and that the Plan and the

---

[3]  Unlike the Debtors, the Allianz Insurers do not seek to cherry pick.  In the Motion, the Allianz Insurers seek permission for <u>both</u> the Illinois Coverage Action and the Texas Proceedings to resume.

Trust Distribution Procedures were proposed in good faith. *See* Plan, Art. IX.A.3(r)-(t).[4]  With

respect to these findings in (r), (s) and (t), this Court stated that: "It does not appear that these

findings have a code or a confirmation-related purpose; rather, even as modified, they appear to

be more directed at most[5]-confirmation litigation with insurers."  Court's Bench Ruling, Oct. 25,

2021 Hr'g Tr. at 10:18-21.  Notwithstanding the Court's comments, however, there has been no

indication from the Debtors that they intend to omit such findings from the Plan, and the Allianz

Insurers are expecting these findings to be an intensely litigated issue at confirmation despite this

Court's repeated statements that it does not intend to make (and, indeed, cannot make) coverage

---

[4] The specific proposed findings from the Plan (as revised pursuant to the *Notice of Intended Modifications to Certain Conditions Precedent to Confirmation of the Debtors' Chapter 11 Plan of Reorganization* (D.I. 6650) filed by the Debtors, Coalition and FCR on October 18, 2021) are:

> r. (i) the procedures included in the Trust Distribution Procedures pertaining to the allowance of Abuse Claims and (ii) the criteria included in the Trust Distribution Procedures pertaining to the calculation of the Allowed Claim Amounts, including the Trust Distribution Procedures' Claims Matrix, Base Matrix Values, Maximum Matrix Values, and Scaling Factors (each as defined in the Trust Distribution Procedures), are appropriate and provide for a fair and equitable settlement of Abuse Claims based on the evidentiary record offered to the Bankruptcy Court; as required by and in compliance with section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, provide adequate and proper means for the implementation of the Plan as required by and in compliance with section 1123 of the Bankruptcy Code, comport with the requirements for the issuance of the Channeling Injunction under section 105(a) of the Bankruptcy Code, and otherwise comply with the Bankruptcy Code and applicable law;

> s. the right to payment that the holder of an Abuse Claim has against the Debtors or another Protected Party or a Limited Protected Party is the amount of such Abuse Claim as determined under the Trust Distribution Procedures and is not (i) the BSA Settlement Trust Contribution, the Local Council Settlement Contribution, the Contributing Chartered Organization Settlement Contribution, the Participating Chartered Organization Settlement Contribution, the Hartford Settlement Contribution, the TCJC Settlement Contribution, contributions by other Settling Insurance Companies, or any component(s) of such contributions, or (ii) the initial or supplemental payment percentages established under the Trust Distribution Procedures to make distributions to holders of Abuse Claims provided, however, that nothing herein shall determine that any insurer is obligated to pay the Debtors' or another Protected Party's or a Limited Protected Party's liability so determined under the Trust Distribution Procedures; and

> t. the Plan and the Trust Distribution Procedures were proposed in good faith and are sufficient to satisfy the requirements of section 1129(a)(3) of the Bankruptcy Code.

D.I. 6650 at 3.

[5] The Allianz Insurers believe this is a typo within the hearing transcript and that it should read "**post**-confirmation litigation with insurers." (emphasis added).

- 5 -

determinations.[6]

8.      Additionally, the Debtors' and other parties' alleged "confirmation-related" discovery requests served on the Allianz Insurers go directly to insurance coverage issues.[7]  In fact, these requests for documents relate to, among other things, reserves and reinsurance and are the types of document requests served in coverage cases and routinely denied by coverage courts.  Thus, the Debtors and others are currently seeking discovery from the Allianz Insurers (and other insurers) that should be sought (if at all) in the State Court Actions, not in this Court in connection with the Plan.

9.      The Debtors also argue that, despite the Plan retaining jurisdiction in this Court over the Insurance Actions (as defined in the Plan), the Plan (a) does not make a determination (i) that this Court has jurisdiction over the State Court Actions or that such jurisdiction is exclusive, or (ii) "whether abstention is advisable or warranted"; and (b) preserves the jurisdiction of the State Court Actions' current venues.  Debtors' Objection ¶ 33.

10.      Although the Debtors cite Article XI.A.[8] of the Plan for this proposition, that provision does not override the Debtors' attempt to retain the jurisdiction of this Court over the

---

[6] *See, e.g.*, May 19, 2021 Hr'g Tr. at 241:22 ("no coverage issue is going to be adjudicated.") 242:10-11 ("I can tell everyone right now that I can't imagine I would decide a coverage issue.").

[7] *See, e.g.*, *Debtors' First Set of Requests for the Production of Documents to Allianz Global Risks US Insurance Company*, Request #9, 11 ("All Documents concerning the reserves set by You in connection with Debtors' claims for coverage for the Abuse Claims.") ("All Documents and Communications reflecting, discussing or analyzing the exposure or potential exposure of any reinsurer under the Reinsurance Agreements."); *Coalition of Abused Scouts for Justice's First Requests for the Production of Documents to the Allianz Insurers*, Request #24 ("Documents sufficient to identify the loss reserves You have currently established for Abuse Claims for the Debtors and adjustments to the loss reserves made on or after the Petition Date.").

[8] "Nothing contained herein concerning the retention of jurisdiction by the Bankruptcy Court shall be deemed to be a finding or conclusion that (1) the Bankruptcy Court in fact has jurisdiction with respect to any Insurance Action, (2) any such jurisdiction is exclusive with respect to any Insurance Action, or (3) abstention or dismissal of any Insurance Action pending in the Bankruptcy Court or the District Court as an adversary proceeding is or is not advisable or warranted, so that another court can hear and determine such Insurance Action(s)."  Plan, Art. XI.A.

#120649305 v6

State Court Actions in Article XI.C.17 of the Plan.  Moreover, contrary to the Debtors' assertion, the Plan—in Article XI.A. or otherwise—does not provide a carve-out for a determination of abstention or dismissal of the State Court Actions.  Article XI.A merely provides that nothing in the Plan's retention of jurisdiction section will be deemed a finding or conclusion that "abstention or dismissal of any Insurance Action **pending in the Bankruptcy Court or the District Court as an adversary proceeding** is or is not advisable or warranted[.]"  Plan, Art. XI.A. (emphasis added).

11.     Furthermore, as noted above, the Debtors are trying to hide by the ball by arguing that the divestiture of jurisdiction over the State Court Actions is contrary to the Plan but in the same breath they say that such divestiture is a possibility.  This ambiguous representation by the Debtors is precisely why the stay should be lifted to allow the State Court Actions to proceed in the state courts where they were commenced pre-petition.  The Allianz Insurers deserve clarity on this issue at this critical juncture of confirmation discovery and proceedings, instead of being hamstrung by the Debtors' contradictory statements and actions about whether coverage will be a confirmation issue—when this Court has repeatedly expressed that it will not be making coverage determinations.[9]

12.     By lifting the stay currently imposed over the State Court Actions, the Court would provide certainty about the proper forum for the State Court Actions.  A lift-stay ruling now would also help to crystalize for all parties that Plan confirmation will not subsume the pre-petition coverage litigation—clarity that might well significantly limit and streamline discovery, scheduling, and confirmation issues.

---

[9] *See, e.g.*, May 19, 2021 Hr'g Tr. at 241:22 ("no coverage issue is going to be adjudicated.") 242:10-11 ("I can tell everyone right now that I can't imagine I would decide a coverage issue.").

**B.      Any Prejudice to the Debtors Does Not Outweigh the Significant Hardship Inflicted on the Allianz Insurers by Maintenance of the Automatic Stay.**

13.      Any prejudice to the Debtors that may result from lifting the automatic stay as to the State Court Actions is outweighed by the significant hardship that will continue to be inflicted on the Allianz Insurers if the automatic stay remains in place.

14.      As noted above, the Debtors argue that, if the stay is lifted, they would incur "significant legal costs" and be distracted from their reorganization and confirmation efforts. *See* Debtors' Objection ¶ 25.  Yet, the Debtors admit that if the State Court Actions resume, there will not be substantive coverage rulings in the next three months. *See id.* ¶ 3.  The Debtors have separate insurance coverage counsel from Haynes & Boone that can shoulder the minimal burden of restarting the State Court Actions.

15.      It is critical that stay relief be granted at this time so that (a) the Allianz Insurers have certainty about the forum of the State Court Actions; and (b) the State Court Actions can begin in earnest promptly after confirmation of the Plan (if confirmation is granted).

16.      Finally, the Debtors assert that the estates will be harmed if the stay is lifted because such stay relief would "deprive the true parties in interest [the beneficiaries of the proposed Settlement Trust] and their representatives from participating in the State Court Actions."  Debtor's Objection ¶ 27.  In support of this argument, the Debtors (as well as the Coalition/FCR) cite *Archdiocese of Milwaukee*, 511 B.R. 551 (Bankr. E.D. Wis. 2014), *rev'd and remanded*, 523 B.R. 655 (E.D. Wis. 2014).

17.      In *Archdiocese of Milwaukee*, however, (a) there was no question that the coverage case would be litigated in the pre-petition forum—it was just a matter of timing (in contrast to this case when the Plan and the Debtors' and the Coalition/FCR's positions are

- 8 -

unclear as to where the State Court Actions will ultimately proceed), 511 B.R. at 556; (b) the district court, on appeal, found that "the alleged 'distraction' caused by the state court appeal was overstated[,]" 523 B.R. at 659; and (c) the district court held that the bankruptcy court's finding that "allowing the state court appeal to proceed would 'deprive the abuse survivors . . . of input into strategic decisions about the litigation[]" was clearly erroneous "because the Debtor has a fiduciary duty to act in the best interests of its creditors." *Id.* at 660.  In relation to this last point, the *Archdiocese* district court found it notable that the creditors' committee did not object to the stay relief motion and that such committee could seek authority to take over the appeal from the debtor.  *See id*.

18.    Just as in *Archdiocese of Milwaukee*, the fiduciary for all of the abuse claimants here who will become the beneficiaries of the proposed Settlement Trust (if approved)—the Official Committee of Tort Claimants (the "TCC")—did not oppose this Motion.  If stay relief is granted, the Allianz Insurers will work collaboratively with the TCC to coordinate, as necessary, as to the State Court Actions.

**C.    The Allianz Insurers Satisfy the Low Bar of Demonstrating a Likelihood of Success on the Merits.**

19.    The threshold for demonstrating a movant's probability of prevailing on the merits in the underlying litigation is extremely low and, for the reasons described in the Motion, the Allianz Insurers meet that "very slight" required showing of success.  *See In re Rexene Prods. Co.*, 141 B.R. 574, 578 (Bankr. D. Del. 1992) ("The required showing is very slight.").

**D.    The Totality of the Circumstances Support Stay Relief.**

20.    All of the relevant factors set forth above and in the Motion weigh in favor of stay relief.  Lifting the automatic stay to permit continued litigation of the State Court Actions will

- 9 -

not prejudice the Debtors; however, maintenance of the stay results in clear and irreparable harm

to the Allianz Insurers.  Indeed, all parties will benefit from the State Court Actions proceeding

so that their respective rights and obligations can be determined and the amounts, if any, of

insurance applicable to abuse claims ascertained.  For these reasons, and as set forth more

completely above and in the Motion, the totality of the circumstances establish that stay relief is

warranted and appropriate.

## **CONCLUSION**

WHEREFORE, the Allianz Insurers respectfully request that this Court grant the Motion.

Dated: November 7, 2021
Wilmington, Delaware

TROUTMAN PEPPER HAMILTON SANDERS LLP

By: */s/ Marcy J. McLaughlin Smith*
    David M. Fournier (DE No. 2812)
    Marcy J. McLaughlin Smith (DE No. 6184)
    Hercules Plaza
    1313 Market Street
    Suite 5100
    P.O. Box 1709
    Wilmington, DE 19899-1709
    Telephone:   302.777.6500
    Facsimile:   302.421.8390
*-and-*
    Harris B. Winsberg (admitted *pro hac vice*)
    Matthew R. Brooks (*pro hac vice* pending)
    Bank of America Plaza
    600 Peachtree Street NE
    Suite 3000
    Atlanta, GA  30308-2216
    Telephone:   404.885.3000
    Facsimile:   404.885.3900

*-and-*

TROUTMAN PEPPER HAMILTON SANDERS LLP

By: */s/ Marcy J. McLaughlin Smith*
    David M. Fournier (DE No. 2812)
    Marcy J. McLaughlin Smith (DE No. 6184)
    Hercules Plaza
    1313 Market Street
    Suite 5100
    P.O. Box 1709
    Wilmington, DE 19899-1709
    Telephone:   404.885.3000
    Facsimile:   404.885.3900
*-and-*
    Harris B. Winsberg (admitted *pro hac vice*)
    Matthew R. Brooks (*pro hac vice* pending)
    Bank of America Plaza
    600 Peachtree Street NE
    Suite 3000
    Atlanta, GA  30308-2216
    Telephone:   404.885.3000
    Facsimile:   404.885.3900

*-and-*

#120649305 v6

McDermott Will & Emery LLP
Margaret H. Warner (admitted *pro hac vice*)
Ryan S. Smethurst (admitted *pro hac vice*)
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
Telephone:  202.756.8228
Facsimile:    202.756.8087

*Attorneys for Allianz Global Risks US Insurance Company*

Bradley Riley Jacobs PC
Todd C. Jacobs (admitted *pro hac vice*)
John E. Bucheit (admitted *pro hac vice*)
500 West Madison Street
Suite 1000
Chicago, IL 60661
Telephone:  312.281.0295

*Attorneys for National Surety Corporation and Interstate Fire & Casualty Company*

#120649305 v6