# EXHIBIT A

1                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE
2

3                                      .    Chapter 11
   IN RE:                              .
4                                      .    Case No. 19-10289 (LSS)
   IMERYS TALC AMERICA, INC.,          .
5  *et al.*,                           .
                                       .    Courtroom No. 2
6                                      .    824 North Market Street
                                       .    Wilmington, Delaware 19801
7                                      .
                                       .    June 22, 2021
8                   Debtors.           .    10:30 A.M.
   . . . . . . . . . . . . . . . . .
9
                    TRANSCRIPT OF TELEPHONIC HEARING
10        BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
                  UNITED STATES BANKRUPTCY JUDGE
11

12 TELEPHONIC APPEARANCES:

13 For the Debtors:          Amanda R. Steele, Esquire
                             Marcos Ramos, Esquire
14                           RICHARDS LAYTON FINGER, P.A.
                             One Rodney Square
15                           920 North King Street
                             Wilmington, Delaware 19801
16
                             - and -
17
                             Matthew Salerno, Esquire
18                           LATHAM & WATKINS LLP
                             1271 Avenue of the Americas
19                           New York, New York 10020

20

21 Audio Operator:           Brandon J. McCarthy

22 Transcription Company:    Reliable
                             1007 N. Orange Street
23                           Wilmington, Delaware 19801
                             (302)654-8080
24                           Email:  gmatthews@reliable-co.com

25
   Proceedings recorded by electronic sound recording, transcript
   produced by transcription service.

```
1   TELEPHONIC APPEARANCES (Cont'd):

2   For the Debtors:          Kimberly A. Posin, Esquire
                              Helena G. Tseregounis, Esquire
3                             LATHAM & WATKINS LLP
                              355 South Grand Avenue, Suite 100
4                             Los Angeles, California 90071

5
    For Johnson & Johnson:    Theodore Tsekerides, Esquire
6                             Ronit Berkovich, Esquire
                              WEIL GOTSHAL MANGES
7                             767 Fifth Avenue
                              New York, New York 10153
8
    For Zurich American       Mark Plevin, Esquire
9   Insurance:                CROWELL & MORING LLP
                              Three Embarcadero Center, 26th Floor
10                            San Francisco, California 94111

11
    For the Representative    Robert Brady, Esquire
12  for Future Talc           YOUNG CONAWAY STARGATT & TAYLOR LLP
    Claimants:                Rodney Square
13                            1000 N. King Street
                              Wilmington, Delaware 19801
14
    For U.S. Trustee:         Linda Richenderfer, Esquire
15                            Juliet Sarkessian, Esquire
                              UNITED STATES DEPARTMENT OF JUSTICE
16                            OFFICE OF THE UNITED STATES TRUSTEE
                              844 King Street, Suite 2207
17                            Lockbox 35
                              Wilmington, Delaware 19801
18
    For Arnold & Itkin LLP:   Laura Davis Jones, Esquire
19                            PACHULSKI STANG ZIEHL & JONES
                              919 North Market Street
20                            Wilmington, Delaware 19801

21
                              - and -
22
                              John Morris, Esquire
23                            780 Third Avenue, 34th Floor
                              New York, New York 10017
24

25
```

```
1   TELEPHONIC APPEARANCES (Cont'd):

2   For the Committee        Mark Fink, Esquire
    of Tort Claimants:       ROBINSON & COLE LLP
3                            Chrysler East Building
                             666 Third Avenue, 20th Floor
4                            New York, New York 10017

5                            - and -

6
                             Stuart Lombardi, Esquire
7                            WILLKIE FARR & GALLAGHER LLP
                             787 Seventh Avenue
8                            New York, New York 10019

9                            - and -

10
                             Heather Frazier, Esquire
11                           GILBERT LLP
                             700 Pennsylvania Avenue, Suite 400
12                           Washington, DC 20003

13  For Cyprus Historical    Tancred Schiavoni, Esquire
    Excess Insurers:         Janine Panchok-Berry, Esquire
14                           O'MELVENY & MYERS
                             7 Times Square
15                           New York, New York 10036

16  For William Hart         Lisa Norman, Esquire
    Plaintiffs:              ANDREWS MYERS, P.C.
17                           1885 St. James Place, 15th Floor
                             Houston, Texas 77056
18
19  For TIG Insurance Co.:   George Calhoun, Esquire
                             IFRAH PLLC
20                           1717 Pennsylvania Avenue
                             Washington, DC 20006
21
    For Aylstock, Witkin,    Robert Pfister, Esquire
22  Kreis & Overholtz:       KTBS LAW LLP
                             1801 Century Park East, 26th Floor
23                           Los Angeles, California 90067

24

25
```

MATTERS GOING FORWARD:

1. Motion of Certain Insurers for Protective Order [Docket No. 3364 – filed April 9, 2021

2. Motion of Holders of Talc Personal Injury Claims Represented By Arnold & Itkin LLP to Extend Discovery Deadlines and Permit Discovery of the Plan Proponents, Prime Clerk and Certain Third Parties Relating to the Solicitation and Voting With Respect to Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code [Docket No. 3425 – filed April 17, 2021]

3. Debtors' Motion to Quash or for a Protective Order in Connection with (I) J&J's Subpoena to Prime Clerk LLC for Production of Documents, Dated March 26, 2021, (II) J&J's Subpoena to Prime Clerk LLC for Production of Documents, Dated April 13, 2021, and (III) the Cyprus Historical Excess Insurers' Subpoena to Prime Clerk LLC for Production of Documents, Dated April 16, 2021 [Docket No. 3459 – filed April 21, 2021]

5. Motion of Holders of Talc Personal Injury Claims Represented by Arnold & Itkin LLP to Disregard Certain Vote Changes Made Without Complying with Bankruptcy Rule 3018, and the Required Showing of Cause in Connection with the Voting on the Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code [Docket No. 3624 – filed June 8, 2021]

   **Ruling:  Matters Taken  Under Advisement**


DEBTORS' WITNESS(s):

**ERIC DANNER**

     Direct Examination by Mr. Salerno          30

     Cross Examination by Mr. Pfister          45

     Cross Examination by Mr. Plevin          47

     Cross Examination by Mr. Tsekerides          60

5

1      Cross Examination by Ms. Sarkessian        61

2      Redirect Examination by Mr. Salerno        64

3

4  <u>EXHIBITS</u>                              <u>I.D.</u>      <u>REC'D</u>

5  Declaration of Eric Danner                            33

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  Well, I think generally other people's

2   estimation, for example, of the value of a company is not

3   relevant to plan confirmation, so how is this relevant to plan

4   confirmation, what the insurance companies may have thought a

5   claim was worth?  Have they raised that issue?  And I was

6   trying to remember.  As opposed to J&J, who clearly has raised

7   valuation issues, have the insurance companies raised it?

8          MS. FRAZIER:  We don't know.  They have not raised

9   it in the pleadings to date, but as Mr. Calhoun and Mr.

10  Schiavoni pointed out, we don't know what objections they're

11  going to raise.  It also bears noting they have paid claims,

12  so the amount that they've actually paid for claims --

13         THE COURT:  Well, doesn't the debtor --

14         MS. FRAZIER:  -- would also be relevant.

15         THE COURT:  -- know that?  Doesn't the debtor know

16  what's been paid?

17         MS. FRAZIER:  We have some of that information.  I

18  think that we have the right to inquire about it from the

19  insurance company.

20         THE COURT:  Okay.  I think if the insurance company

21  has paid claims and the debtor doesn't have that information

22  for some reason, you can get that information.

23         With respect to item number 1, you can ask if

24  they've denied coverage, if they reserved rights, but the

25  topic of handling is a huge -- is a huge topic.  I don't even

1    know exactly what that means.  It's not a -- it cannot be used

2    as a way to look at coverage disputes; I'm not going to permit

3    that.

4            MS. FRAZIER:  Understood.  Okay, topics 3 and 4.

5    And now I've added a number in my notes, so now my numbers are

6    off.  Okay, so we're on 3.  Accounting treatment and reserves,

7    as well as reinsurance, are kind of the same issue.

8            THE COURT:  Uh-huh.

9            MS. FRAZIER:  The topic (indiscernible) we're

10   seeking to determine whether they believe that they have

11   liability here.  And where the insurer has denied coverage or

12   refused to defend, the facts of a reserve has been -- courts

13   have found is relevant to show that the insurer at least

14   acknowledged the potential for coverage.

15           THE COURT:  Well, but don't --

16           MS. FRAZIER:  Here --

17           THE COURT:  -- don't they have to set reserves in

18   certain circumstances and what does that -- I did read some of

19   these cases and -- that people cited to me and I don't

20   understand how the setting of a reserve by an insurance

21   company is an issue with respect to plan confirmation.

22           This talks about -- it reflects an assessment --

23   well, first of all, a lot of it says it's probably privileged,

24   but I agree that you can't get the privileged information and

25   you're going to have a lot of that.  But one of these cases,

1   even in the coverage cases, they say this is usually

2   irrelevant and not discoverable, and they talk about the need

3   to set reserves for accounting purposes, the need to set

4   reserves for maybe regulatory purposes.  So how does that have

5   anything to do with confirmation?

6           MS. FRAZIER:  I think here where the insurers have

7   contended, as they do in their papers, that the plan and

8   disclosure statement have led to an explosion of claims and

9   have inflated their potential liability for, you know,

10  whatever an explosion means --

11          THE COURT:  It means going from 20,000 to 80,000.

12          MS. FRAZIER:  But if they had planned to pay their

13  full limits, if they reserved and knew that these talc claims

14  were going to erode the entirety of the policy, what's the

15  objection?  It makes no material difference to them.

16          THE COURT:  Well, maybe it doesn't, but I'm trying

17  to explain how it's relevant -- I'm trying to understand how

18  it's relevant to confirmation.  I think I had the same

19  distinction with J&J.  Historical settlement, I said yes;

20  projections, J&J's internal, I said no.  It's the same sort of

21  thing here.  Internal to the insurance companies, their

22  setting reserves, like a prudent businessperson might or

23  they're regulatorily required, I don't understand how that's

24  relevant to confirmation.

25          Now, if the insurance companies end up filing some

 1  objection and putting in value information, and they use this

 2  information and they give it to an expert, that's different,

 3  that's different, then it's going to be discoverable.  But how

 4  is it relevant to confirmation and the plan proponents'  --

 5  the plan proponents' burden under 1129?

 6          MS. FRAZIER:  I think if Your Honor is willing to

 7  allow us to reserve our rights to the extent to, say, present

 8  the type of evidence that you just described, I think we're

 9  fine with that as to reserves and reinsurance information.

10          THE COURT:  Absolutely, and I think the insurance

11  companies should know that.  If they're going to put their

12  information at issue, then it's going to be discoverable.

13          MS. FRAZIER:  Okay.  So that's -- we're all the way

14  through 6, we're moving right along.

15          Okay, so numbers 7 and 8, this is kind of the core

16  of the dispute.  Reasons that you contend the plan is not

17  insurance-neutral; and, to the extent you assert or plan to

18  assert an objection to the plan or any other plan documents,

19  what's the basis for that objection.

20          And this is what I talked about at the very

21  beginning.  We're not seeking privileged information, we're

22  not seeking legal conclusions, we're not seeking your

23  analysis, but there are facts that underlie these contentions,

24  just as the type of facts that I described earlier with regard

25  to the explosion in claims.  The insurers have made many,

1                    <u>CERTIFICATE</u>

2

3       We certify that the foregoing is a correct transcript

4  from the electronic sound recording of the proceedings in the

5  above-entitled matter.

6
   <u>/s/Mary Zajaczkowski</u>          June 23, 2021
7  Mary Zajaczkowski, CET**D-531

8
   <u>/s/Coleen Rand</u>               June 23, 2021
9  Coleen Rand, AAERT Cert. No. 341

10
   <u>/s/William J. Garling</u>        June 23, 2021
11 William J. Garling, CE/T 543

12
   <u>/s/ Tracey J. Williams</u>       June 23, 2021
13 Tracey J. Williams, CET-914

14

15

16

17

18

19

20

21

22

23

24

25