**Kim V. Marrkand**
617 348 1807
kmarrkand@mintz.com



MINTZ

One Financial Center
Boston, MA  02111
617 542 6000
mintz.com

November 8, 2021

**VIA EMAIL/ECF**

The Honorable Laurie Selber Silverstein
United States Bankruptcy Judge
United States Bankruptcy Court for the District of Delaware
824 North Market Street, 6th Floor
Wilmington, Delaware 19801

>   Re:   *In re:  Boy Scouts of America and Delaware BSA, LLC*
>         **In the United States Bankruptcy Court for the District of Delaware**
>         **Case No. 20-10343 (LS)**

Dear Judge Silverstein:

      We write on behalf of Liberty Mutual Insurance Company ("LMIC"), together with certain of its affiliates and subsidiaries (collectively, "Liberty Mutual"),[1] in opposition to the Debtors' motion seeking to compel Liberty Mutual to produce an irrelevant set of internal guidelines regarding sexual misconduct claims (the "Guidelines").[2] As discussed below, the facts, as well as the law, require the denial of the Debtors' Motion to Compel for at least three reasons.  First, the Guidelines are irrelevant to Plan confirmation because a central Confirmation Hearing-related discovery issue is the Boy Scouts of America's ("BSA's") actual evaluation, valuation, and settlement of pre-petition Abuse Claims,[3] not Liberty Mutual's set of non-binding, prospective, internal guidelines.  Second, the pre-petition policies LMIC issued to BSA are "fronting policies" whereby BSA, rather than LMIC, was exclusively responsible for the defense and resolution of all sexual abuse claims brought against BSA.[4]  OCAS, LIU, and LSIC

---

[1]   The term "Liberty Mutual" as used herein shall refer to LMIC together with its affiliates and subsidiaries, including The Ohio Casualty Insurance Company ("OCAS"), Liberty Surplus Insurance Corporation ("LSIC"), and Liberty Insurance Underwriters, Inc. ("LIU").

[2]   Although the Debtors' *Letter to the Honorable Laurie Selber Silverstein from Adrian Azer and Derek C. Abbott to respectfully request the Court compel certain of the Debtors' Insurers' to produce documents* [Dkt. # 6953] (the "Motion to Compel") initially sought to compel a second category of documents from Liberty Mutual, by agreement of the parties, the only remaining issue before the Court with respect to Liberty Mutual relates to the Guidelines.

[3]   The term "Abuse Claims," as used herein, shall have the meaning provided in the Plan.

[4]   Fronting policies do not shift risk to the issuing insurance company, and instead retain risk for the policyholder.  *See, e.g. Delphi Auto. Sys. v. Slaughter,* 261 F. Supp. 2d 950, 952 (S.D. Ohio 2003) (explaining that a fronting policy "is an agreement under which no risk is transferred to the insurance company because the deductible matches the policy limit, and the entity paying for the policy is essentially renting an insurance company's licensing

**MINTZ**

November 8, 2021
Page 2



each issued high-level excess liability policies to BSA, but like LMIC, OCAS, LIU and LSIC never paid defense or indemnity costs under these policies. Consequently, Liberty Mutual has never paid **any** defense or indemnity costs for any of BSA's pre-petition claims.[5/] Accordingly, because Liberty Mutual has never been responsible for, or paid any amount for, BSA's Abuse Claims, the Guidelines are completely irrelevant as to whether the Debtors can meet their burden to show that the TDPs are fair and reasonable and proposed in good faith. Third, the only legal authority upon which Debtors rely in support of their sweeping assertion that they are entitled to the Guidelines—Liberty Mutual's confidential, proprietary and internal business records—involves insurance coverage disputes in which insurance policy interpretation was at issue. The Debtors cite no other authority.

### A.  Information in the Guidelines Is Irrelevant To Plan Confirmation.

Liberty Mutual's Guidelines relating to sexual misconduct claims against parties other than the Debtors are irrelevant to Plan confirmation. Counsel for the Coalition of Abused Scouts for Justice (the "Coalition"), which, like the Debtors, is a proponent of the Plan, recently admitted that the central issue "driving the discovery process" for Plan confirmation is the Debtors' handling, evaluation, and settlement of pre-Petition sexual abuse claims. More specifically, during the October 5, 2021 Zoom hearing in this case, Eric Goodman, Esq., counsel for the Coalition, stated to the Court:

> In terms of discovery . . . I think the issue is whether or not the proposed plan treatment for abuse claims, which is that the settlements be based on -- or the claim values be based on the debtors' historical settlements and experience in the tort system, is really what would be driving the discovery process going forward. Our expectation is that the debtors will be able to prove at confirmation that the trust distribution procedure values and factors are in fact consistent with the debtors' historical settlements and experience in the tort system.

Oct. 5, 2021 Hr'g Tr., at 15:23-16:8.

The Debtors did not dispute Mr. Goodman's admission. Simply put, the Guidelines have no bearing whatsoever on whether the "trust distribution procedure values and factors are in fact consistent with the debtors' historical settlements and experience in the tort system." *Id.*

---

and filing capabilities in a particular state or states."); *see also* Lorelie S. Masters, Jordan S. Stanzler & Eugene R. Anderson, (late), Insurance Coverage Litigation [B] (2nd Edition, 2021 Supp. 2000) ("Courts have found that [fronting] arrangements, like self-insured periods or layers, provide no true risk transfer from the policyholder to the insurer.").

[5/]   There is no dispute that Liberty Mutual never insured Delaware BSA, LLC.

**MINTZ**

November 8, 2021
Page 3



### B. Liberty Mutual Never Defended or Resolved Any Abuse Claims Under the Policies It Issued to BSA.

The Debtors seek discovery of the Guidelines in an attempt to show that Liberty Mutual's opposition to the TDPs may somehow be inconsistent with the Guidelines. Debtors, however, are confused. It is their obligation to show that the Plan and TDPs are advanced in good faith—absent that, the Court cannot confirm the Plan.[6/] Whether and what Liberty Mutual might do at the Confirmation Hearing does not change what the Debtors must do. The Guidelines are a set of internal, proprietary, and confidential guidelines that relate to sexual misconduct claims filed against Liberty Mutual's insureds.[7/] For purposes of the Confirmation Hearing, the critical comparison is between the TDPs and the tort system, not the TDPs and an internal general guide for claims handlers of sexual misconduct claims. This false equivalence is further supported, as explained below, by the unique nature of the LMIC fronting policies and by the OCAS, LIU and LSIC high-level excess policies, which show that Liberty Mutual had no responsibility for Abuse Claims, nor ever made a payment to BSA for the Abuse Claims.

LMIC issued a series of primary and umbrella general liability policies to BSA between March 1, 1996 and March 1, 2008 (the "LM Policies"). All of the LM Policies are fronting policies, such that BSA alone was responsible for the Abuse Claims. BSA paid all indemnity and defense costs for Abuse Claims arising under the LM Policies. There was no risk transfer to Liberty Mutual with respect to the LM Policies, and all Abuse Claims were the responsibility of BSA. Critically, Liberty Mutual was not involved in the selection of defense counsel, the defense, or the resolution of any Abuse Claims under the LM Policies.

In addition, OCAS issued a series of high-level excess liability policies to BSA between March 1, 2008 and March 1, 2019; LIU issued three high-level excess liability policies to BSA between March 1, 2011 and March 1, 2021; and LSIC issued a high-level excess liability policy to BSA between March 1, 2013 and March 1, 2014 (collectively, the "Excess Policies"). OCAS, LIU, and LSIC were not involved in the selection of defense counsel, the defense, or resolution of Abuse Claims under the Excess Policies, nor did they make any payments under the Excess Policies. Liberty Mutual has not paid any defense or indemnity costs for Abuse Claims under the Excess Policies.

In sum, Liberty Mutual has never been responsible, nor paid any amount, for the Abuse Claims. Accordingly, the Guidelines are completely irrelevant as to whether the Debtors can meet their burden to show that the TDPs are fair and reasonable and proposed in good faith.

---

[6/] *See* 11 U.S.C. § 1129(a)(3).

[7/] On November 6, 2021, counsel for Liberty Mutual and counsel for the Debtors met and conferred. During that "meet and confer," Ms. Marrkand advised Mr. Azer and Ms. Green of the existence of the Guidelines, confirmed that the Guidelines do not contain any claim values, and confirmed that Liberty Mutual does not have any BSA-specific guidelines.

**MINTZ**

November 8, 2021
Page 4



MINTZ

### C. The Case Law Upon Which Debtors Rely Relates Solely to Disputes Regarding Insurance Coverage, Not Plan Confirmation.

For the reasons discussed above, the Guidelines are irrelevant to Plan confirmation. The Debtors' Motion to Compel should be denied for the additional and independent reason that the case law upon which Debtors rely is inapposite and fails to support Debtors' argument that the Guidelines should be produced.

As is readily apparent from the Debtors' own characterization of the cases in their Motion to Compel, all of the authority upon which Debtors rely addresses whether claims-handling materials were to be produced in the context of *insurance coverage* disputes where *policy interpretation* was at issue. See Motion to Compel at 3, n.14. For example, Debtors cite *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stauffer Chem. Co.,* 558 A.2d 1091 (Del. Super. Ct. 1989), but Debtors acknowledge that the court in that case determined that claims-handling manuals and guidelines should be produced because they were "relevant to construction of the ISO standard-form CGL policies at issue." *Id.* Indeed, the "critical question" before the court in *Nat'l Union*, an insurance declaratory judgment action, was whether ambiguities existed in the insurance policies. *Nat'l Union,* 558 A.2d at 1095. In addition, Debtors cite the unpublished opinion *Monsanto Co. v. Aetna Cas. & Sur. Co.*, 88C-JA-118, 1992 WL 182322 (Del. Super. Ct. May 26, 1992), but Debtors expressly admit that the court in that case determined that documents concerning generic claims handling, underwriting, and policy interpretation were relevant and discoverable with respect to "coverage of pollution claims." *Id.* The Debtors rely on *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638 (D. Kan. 2007), but likewise acknowledge that the court there found claims-handling materials were "relevant to whether claims were properly handled [and] could reveal the Insurers' guidelines for interpreting policy language. . ."). *Id.* As for *Missouri Pac. R. Co. v. Aetna Cas. & Sur. Co.*, CIV.A. 3:93-CV-1898-D, 1995 WL 861147 (N.D. Tex. Nov. 6, 1995), it likewise involves an insurance coverage dispute.

On multiple occasions, the Court has made clear that insurance coverage will not be addressed in this bankruptcy case.[8] The Debtors' attempt to persuade this Court that the Guidelines are discoverable based solely on case law involving insurance coverage disputes—where policy interpretation was at issue—should be rejected.

---

[8] For example, on May 19, 2021, during a Disclosure Statement hearing in this case, the Court stated that "no coverage issue is going to be adjudicated." May 19, 2021 Hr'g Tr., at 241:22. The Court further stated that "I will read the motion very carefully, but I can tell everyone right now that I can't imagine I would decide a coverage issue. How is that part of this process?" *Id.* at 242: 9-11. In addition, during the hearing on September 28, 2021, the Court stated that "[the Court does not] anticipate making any coverage decisions, and [does not] intend to make any decisions that are properly decided in a coverage action." Sept. 28, 2021 Hr'g. Tr., at 74:7-14.

**MINTZ**

November 8, 2021
Page 5



### D. The Debtors' Duty of Candor.

Finally, as discussed above, the Debtors seek discovery of the Guidelines in an attempt to show that Liberty Mutual's opposition to the TDPs may somehow be inconsistent with the Guidelines. However, such an argument raises the converse question: if the Guidelines reflect that the TDPs are *not* in accord with the Guidelines—and thus show consistency in Liberty Mutual's arguments at Confirmation—should not the Debtors agree, given their duty of candor with the Court, to their admissibility to show that the TDPs are *not* fair and reasonable? The answer seems obvious: the Debtors would vigorously oppose any such effort by Liberty Mutual to admit the Guidelines into evidence because they are not relevant to establishing whether the TDPs are fair and reasonable.

*   *   *

For the foregoing reasons, Liberty Mutual respectfully requests that the Court deny the Debtors' request to compel discovery of the Guidelines.

Respectfully submitted,

*/s/ Kim V. Marrkand*
Kim V. Marrkand (admitted pro hac vice)
Mintz, Levin, Cohn, Ferris, Glovsky
and Popeo, P.C.
One Financial Center
Boston, MA 02111
KMarrkand@mintz.com

*/s/ Douglas R. Gooding*
Douglas R. Gooding (admitted pro hac vice)
Choate Hall & Stewart, LLP
Two International Place
Boston, MA 02110
dgooding@choate.com

*/s/ R. Karl Hill*
R. Karl Hill (No. 2747)
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
Khill@svglaw.com

cc: All Counsel

118141951