# HAYNES BOONE



November 8, 2021

**Via Email/ECF**

The Honorable Laurie Selber Silverstein
United States Bankruptcy Judge
United States Bankruptcy Court for the District of Delaware
824 North Market Street, 6th Floor
Wilmington, Delaware 19801

Re:  ___Boy Scouts of America, et al.___**, Case No. 20-10343 (Bankr. D. Del. 2020)**

Dear Judge Silverstein:

We write on behalf of the Boy Scouts of America and Delaware BSA, LLC (together, the "Debtors") to respectfully request the Court resolve two issues: (1) the production of communications between the Debtors and the insurers related to TDPs (the "Insurer TDP Communications"); and (2) the production of documents containing the names of alleged survivors.

The Debtors believe that the Insurer TDP Communications are responsive to discovery requests received from various parties and further believe that there is no basis to withhold these Documents, but not all of the insurers have consented to their production.[1]  The Debtors also request leave from the Court to produce documents containing the names of alleged survivors and perpetrators of sexual abuse under a "Highly Confidential" designation.  While some claimants' representatives have voiced concerns about producing documents containing such names, the Debtors' believe these identities will be adequately protected by designating such documents as "Highly Confidential" and limiting access to (i) advisors and (ii) parties who have executed joinders to the Protective Order.[2]

## I.        The Production of the TDP Insurer Communications.

As the evidence will show, the TDPs were extensively negotiated between the Debtors, the Coalition of Abused Scouts for Justice (the "Coalition"), the Official Committee of Tort Claimants (the "TCC") and the Future Claims Representative (the "FCR").  Throughout this process, the

---

[1] The BSA has recently sought consent to produce these documents from its Insurers and has received consent from several Insurers, including: Allianz Global Risk US Insurance Company; National Surety Corporation; Interstate Fire & Casualty Company.  Given time constraints, not all Insurers have had an opportunity to respond by the time this letter was filed.
[2] *See Boy Scouts of America, et al.*, Case No. 20-10343, Dkt. 799 (the "Protective Order").

# HAYNES BOONE



Page 2

Debtors communicated with the Insurers regarding the formulation of the TDPs and repeatedly requested that the Insurers provide comments or suggested revisions.  As written records will demonstrate, the Insurers refused to meaningfully engage and instead demanded that the Debtors pursue a plan and TDPs that the Coalition, TCC, and FCR flatly rejected.

After the Insurers failed to impose their will on the Debtors, the Coalition, the TCC and the FCR, the Insurers have contested whether the TDPs are fair and equitable, including the criteria for determining whether an Abuse Claim is valid and the valuation criteria set forth in the TDPs.  More specifically, the insurers have argued that the Debtors colluded with abuse victims to inflate claim values in order to secure confirmation votes.[3]  The Insurers have likewise objected to Plan confirmation on the basis that the Plan proposes to pay fraudulent or invalid Abuse Claims.[4]  The Insurers falsely contend that the criteria for validating and valuing claims in the TDPs are inconsistent with the BSA's pre-petition conduct in evaluating sexual abuse claims.

Pursuant to its recent ruling, this Court has allowed broad discovery into communications related to the negotiations of the TDPs.  Because the Insurer TDP Communications are relevant to Insurers' representations and objections regarding the negotiation of the TDPs and the fairness and reasonableness of the TDPs—issues on which the Debtors and Insurers do not share a common interest—these Insurer TDP Communications are discoverable.[5]  Furthermore, the Insurers have repeatedly falsely claimed that they were excluded from any input into the TDPs and production

---

[3] *See, e.g.,* Certain Excess Insurers' Supplemental Objection to Debtors' Disclosure Statement (Dkt. 6056), at 3 (characterizing Debtors' proposed claim valuation procedure as an "inflated compensation and vote-buying scheme."); Century's Objections to the Debtors' Disclosure Statement for the Fourth Amended Plan, Solicitation Procedures and Form of Ballots (Dkt. 6065), at 10 ("[U]nder the TDPs, substantially all Abuse Claims shall be liquidated by a summary determination by the Settlement Trust rather than litigation before a court, and all determinations are to be made solely by the Settlement Trustee[…] based on pre-determined Claims Matrix values"); Certain Insurers' Supplemental Objection to Amended Disclosure Statement (Dkt. 6052), at 15 ("The TDPs violate section 502(a) and 502(b)(1) of the Bankruptcy Code because they expressly permit (and to some extent require) the payment of claims that are not compensable in the tort system, are fraudulent and time-barred claims, without allowing parties in interest to file objections to such claims.'"); Certain Insurers' Objection to Debtors' Motion for Entry of an Order, Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code, (I) Authorizing the Debtors to Enter into and perform Under the Restructuring Support Agreement and (II) Granting Related Relief (the "RSA Objection) (Dkt. 5684), at 36 ("This, combined with the RSA's requirement that the Debtors obtain a finding in any Confirmation Order that all Allowed Claim Amounts and the procedures leading thereto are 'fair and reasonable,' see RSA § II.A.(i)(B), amounts to an attempt by the Debtors and Abuse Claimant Representatives to bind the Debtors' insurers to pay over $239 million in liability for likely invalid claims that are not subject to review by anyone, ever, not even the Abuse Claimant Representatives' handpicked Settlement Trustee.").

[4] *Id.*

[5] As this Court recently held in a discovery dispute in *In re Imerys*, parties which may share a common interest on some issues may still need to produce documents shared "in the context of a broader exchange of information" if those documents address specific issues on which the parties are adverse.  *See* Letter Opinion, *In re Imerys Talc America, Inc.*, No. 19-10289, Dkt. 3913 (Bankr. D. Del. Aug. 10, 2021) (holding that debtors and their parent company shared a common interest with respect to most issues in their joint defense of underlying claims, but still had to produce documents pertaining to potential alter ego claims and the parent company's contribution).

# HAYNES BOONE


Page 3

of the Insurer TDP Communications will demonstrate the falsity of these assertions.[6] Consequently, regardless of the fact that there is no common interest, the Debtors should be permitted to produce the Insurer TDP Communications, *i.e.*, the Debtors' communications with the insurers where the Debtors attempted to obtain the insurers' input on the TDPs.

## II.    Leave to Produce Names of Survivors and Accused with "Highly Confidential" Designation

Many of the requests served on the Debtors seek documents that contain the names of survivors and accused.  These documents include, among other things, (i) the Debtors internal files regarding alleged incidents of abuse, (ii) complaints, settlement agreements, and deposition transcripts from prior cases involving BSA that formed the basis for the Debtors' claims matrix; and (iii) communications regarding both pre- and post-petition abuse claims.[7]  These materials include thousands of documents spanning tens of thousands of pages.  The Debtors have reviewed this material and have concluded that it will not be possible to redact all mentions of the names of survivors and accused within a reasonable timeframe.  Moreover, given the volume of material at issue, errors and omissions in the redactions would inevitably occur.  Additionally, it is likely that protective orders were entered in many of the state court cases in which the abuse claims were originally filed, potentially limiting the Debtors' ability to produce the requested documents absent an order providing leave.

The Debtors therefore seek leave from the Court to file materials containing personal identifying information of survivors and accused with a "Highly Confidential" designation pursuant to the protective order entered in these cases [D.I. 799] (the "Protective Order").  In accordance with the Protective Order, only (i) advisors and (ii) parties who have executed joinders to the Protective Order will be given access to these materials, and those materials cannot be used outside of these

---

[6] Such production is also consistent with Debtors' duty of candor to this Court. *See, e.g.*, DE R RPC Rule 3.3 ("A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal[… or] (3) offer evidence the lawyer knows to be false."); *Sciele Pharma Inc. v. Lupin Ltd.*, CIV. 09-0037 RBK/JS, 2012 WL 113004, at *3 (D. Del. Jan. 12, 2012) (Noting that DE R RPC Rule 3.3 applies "in this Court, as well as the Federal Circuit."); *see also Beach Mart, Inc. v. L&L Wings, Inc.*, 302 F.R.D. 396, 405 (E.D.N.C. 2014) ("the [FRCP] do not offer any 'rule that permits a party to withhold plainly relevant information that directly contradicts its assertions in the hopes that the Court will be duped by the misleading arguments.'"); *Shaw Family Archives, Ltd. v. CMG Worldwide, Inc.*, 589 F. Supp. 2d 331, 334-5 (S.D.N.Y. 2008) (sanctioning counsel for "keep[ing] secret evidence that plainly undercut their position and bolstered their opponent's" and withholding relevant documents "while arguing positions that were contradicted by the withheld documents."); *U.S. Filbter Corp. v. Ionics, Inc.*, 128 F. Supp. 2d 46,  47 (D. Mass. 2001) (issuing preclusion order where defendant "withheld matter that it knew to be evidence contradicting [its] position" which was "at the very heart of this litigation.").
[7] *See, e.g.*, *Propounding Insurers' First Request for Production of Documents Directed to Debtors*, Requests 31, 32, 33, 118; *Century' First Set of Interrogatories Directed to the Debtors*, Interrogatories 1, 2; *The Zalkin Law Firm, P.C., and Pfau Cochran Vertetis Amala PLLC's First Set of Consolidated Discovery Requests to Boy Scouts of America and Delaware BSA, LLC*, Requests 37.

# HAYNES BOONE



Page 4

cases.  Additionally, the Debtors have requested that any party that seeks to introduce at a deposition or hearing any exhibit that contains the name or other personal identifying information of a survivor or accused must redact that information prior to introducing the exhibit.  The Debtors are prepared to redact information on a reasonable number of documents if requested to do so by a party in interest for a legitimate reason.

The Debtors respectfully submit that this proposal is the only workable solution to comply with their discovery obligations while also protecting the privacy rights of survivors and accused.

Respectfully submitted,

*/s/ Adrian Azer*                     */s/ Derek C. Abbott*

Adrian Azer                          Derek C. Abbott (No. 3376)
Adrian.Azer@haynesboone.com          dabbott@morrisnichols.com
Ernest Martin                        Andrew R. Remming  (No. 5120)
Ernest.Martin@haynesboone.com        aremming@morrisnichols.com
Haynes and Boone, LLP                Morris, Nichols, Arsht & Tunnell LLP