IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

**DEBTORS' NOTICE OF DEPOSITION OF**
**THE OFFICIAL COMMITTEE OF TORT CLAIMANTS**

PLEASE TAKE NOTICE that pursuant to Federal Rules of Civil Procedure 26 and 30, made applicable to the above-captioned proceeding by Federal Rules of Bankruptcy Procedure 7026, 7030, and 9014 and Rule 7030-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Boy Scouts of America and Delaware BSA, LLC (the "Debtors"), will take the deposition upon oral examination of the Designated Representative or Representatives of The Official Committee of Tort Claimants, as defined below, at a date and time to be determined, at the office of White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020-1095, or such other date and location as the parties may agree. The matters to be inquired into are described in Exhibit A (attached), and the designated corporate representative(s) should be prepared to testify to these matters. The deposition will take place before a notary public or other officer authorized by law to administer oaths. The deposition will be recorded by stenographic means, may be videotaped, and will continue from day to day until completed.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, TX 75038.

| | |
|---|---|
| Dated: November 8, 2021<br>Wilmington, Delaware | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Paige N. Topper*<br><br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>Email: dabbott@morrisnichols.com<br>          aremming@morrisnichols.com<br>          ptopper@morrisnichols.com<br><br>- and -<br><br>WHITE & CASE LLP<br>Glenn M. Kurtz (admitted *pro hac vice*)<br>Jessica C. Lauria (admitted *pro hac vice*)<br>Andrew W. Hammond (admitted *pro hac vice*)<br>Samuel P. Hershey (admitted *pro hac vice*)<br>Robert E. Tiedemann (admitted *pro hac vice*)<br>1221 Avenue of the Americas<br>New York, NY  10020-1095<br>Telephone: (212) 819-8200<br>Email:  gkurtz@whitecase.com<br>           jessica.lauria@whitecase.com<br>           ahammond@whitecase.com<br>           sam.hershey@whitecase.com<br>           rtiedemann@whitecase.com<br><br>ATTORNEYS FOR THE DEFENDANTS, DEBTORS, AND DEBTORS IN POSSESSION |

# EXHIBIT A

# DEFINITIONS[1]

1. "<u>Abuse Claim</u>" shall have the meaning ascribed to it in the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC (D.I. 6443).

2. "<u>Adversary Proceeding</u>" shall mean the adversary proceeding captioned *Official Tort Claimants' Committee of Boy Scouts of America and Delaware BSA, LLC v. Boy Scouts of America and Delaware BSA, LLC*, Ad. Pro. No. 21-50032 (LSS), pending in the United States Bankruptcy Court for the District of Delaware.

3. "<u>Amended Disclosure Statement</u>" shall have the meaning ascribed to it in the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (D.I. 6443).

4. "<u>Any</u>" or "<u>each</u>" should be understood to include and encompass "all;" "or" should be understood to include and encompass "and;" and "and" should be understood to include and encompass "or."

5. "<u>Chartered Organization</u>" shall have the meaning ascribed to it in the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (D.I. 6443).

6. "<u>Communication</u>" means any oral or written utterance, notation, or statement of any nature whatsoever between or among two or more persons, by or to whomsoever made, and including without limitation, correspondence, documents, conversations, dialogues, discussions,

---

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Amended Disclosure Statement for the Modified Fifth Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [Docket No. 6445/Docket No. 6443].

PAGE 1

e-mail, interviews, consultations, agreements, and other understandings, including Bloomberg messages and text messages.

7. "Concerning," "regarding," "in connection with," "relating to," and/or "referring to" shall be construed to mean, without limitation, relating to, referring to, describing, evidencing, constituting, discussing, supporting, pertaining to, containing, analyzing, evaluating, studying, recording, showing, memorializing, reporting on, commenting on, mentioning, reviewed in conjunction with, setting forth, contradicting, refuting, considering, or recommending, in whole or in part.

8. "Confirmation Hearing" shall have the meaning ascribed to it in the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (D.I. 6443).

9. "Document(s)" means any printed, written, typed, recorded, transcribed, taped, photographic, or graphic mater, however produced or reproduced, including, but not limited to: any letter, correspondence, or communication of any sort, including Bloomberg or text messages; film, print or negative of photograph; sound recording; video recording; note, notebook, diary, calendar, minutes, memorandum, contract, agreement, or any amendment thereto; telex, telegram, cable; summary, report or record of telephone conversation, voice mail or voice mail back-up, personal conversation, discussion, interview, meeting, conference, investigation, negotiation, act or activity; projection, work paper, or draft; computer or compute network output or input, hard or floppy disc, e-mail, magnetic and/or optical medias, archived or back up data on any of these medias, and documents that have been deleted but are recoverable from any of these medias; opinion or report of consultant; request, order, invoice or bill of lading; analysis, diagram, map, index, sketch, drawing, plan, chart, manual, brochure, pamphlet,

advertisement, circular, newspaper or magazine clipping, press release; receipt, journal, ledger, schedule, bill, or voucher; financial statement, statement of account, bank statement, checkbook, stubs, or register, canceled check, deposit slip, charge slip, tax return (income or other), requisition, file, study, graph, tabulation, and any and all other writings and recording of whatever nature, whether signed or unsigned or transcribed, and any other data compilation from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonable usable form; including, without limitation, all things meeting the definition of "Documents" or "electronically stored information" set forth in Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, or meeting the definition of "writings and recordings" set forth in Rule 1001 of the Federal Rules of Evidence. Any document with any marks as initials, comments, or notations of any kind is deemed not to be identical to one without such marks and is a separate document within the meaning of this term.

10. "<u>Hartford</u>" means Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company and Navigators Specialty Insurance Company and each of their past, present and future direct or indirect parents, subsidiaries, affiliates and controlled entities, and each of their respective officers, directors, stockholders, members, partners, managers, employees, predecessors, successors and assigns, each in their capacity as such.

11. "<u>Hartford Insurance Settlement Agreement</u>" shall have the meaning ascribed to it in the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (D.I. 6443).

12. "Insurance Company" shall have the meaning ascribed to it in the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (D.I. 6443).

13. "JPM/Creditors' Committee Settlement" shall have the meaning ascribed to it in the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (D.I. 6443).

14. "Liquidation Analysis" shall have the meaning ascribed to it in the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (D.I. 6443).

15. "Local Council(s)" shall have the meaning ascribed to it in the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (D.I. 6443).

16. "Plan" shall have the meaning ascribed to it in the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (D.I. 6443).

17. "Press Release" means the press release by the TCC, dated November 4, 2021, titled "Boy Scouts of America Sexual Abuse Survivors Say 'Reject And Vote No To Settlement' And Stop Ongoing Abuse."

18. "Restructuring Support Agreement" or "RSA" shall have the meaning ascribed to it in the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (D.I. 6443).

19. "Settlement Trust Documents" shall have the meaning ascribed to it in the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (D.I. 6443).

20. "TCC" and "Tort Claimants' Committee" shall mean the Official Committee of Tort Claimants, including all of its agents and advisors, including, without limitation, Berkeley Research Group, LLC, CBRE, Inc., The Claro Group LLC, John R. Conte, Ph.D, Keen-Summit Capital Partners LLC, Pachulski Stang Ziehl & Jones LLP, Pasich LLP and Rock Creek Advisors LLC.

21. "TCC's Plan" shall mean the plan that the Official Committee of Tort Claimants sought authorization to file, as defined in the *Motion of Official Committee of Tort Claimants for Entry of an Order Terminating the Debtors' Exclusive Periods to File a Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code* [D.I. 6255].

22. "TCJC" shall have the meaning ascribed to it in the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (D.I. 6443).

23. "TCJC Settlement Agreement" shall have the meaning ascribed to it in the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (D.I. 6443).

24. "TDP" shall have the meaning ascribed to it in the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (D.I. 6443).

25. "You," and "Your" shall mean and refer to the TCC.

**INSTRUCTIONS**

1. Pursuant to Federal Rule of Civil Procedure 30(b)(6) and Federal Rule of Bankruptcy Procedure 7030, You shall designate one or more officers, directors, managing agents, or other Persons who are knowledgeable and who consent to testify on its behalf with respect to the following Topics For Deposition. If no single witness is capable of testifying knowledgeably about all of the topics listed, You may designate more than one witness.

2. Each of the Definitions and Instructions apply to each topic, notwithstanding that the Definitions or Instructions may be reiterated in whole or in part in conjunction with a particular topic, or that a particular topic may incorporate supplemental instructions or definitions.

**TOPICS FOR DEPOSITION**

1. The TCC's analysis, evaluation or consideration of (i) the Debtors' Plan, (ii) the Debtor's Liquidation Analysis, (iii) the Debtors' Disclosure Statement, (iv) the Debtors' financial projections and forecasts, (v) the TDPs, (vi) the Claims Matrix, and (vii) the feasibility of the Debtors' Plan, including whether to support or oppose each such subject matter.

2. The TCC's analysis, evaluation or consideration of the Plan Settlements, including (i) the JPM UCC settlement agreement, (ii) the settlement with the Local Councils reflected in the Plan, (iii) the Hartford Settlement, and (iv) the TCJC Settlement, including the factors considered in deciding whether to support or oppose each such settlement.

3. The TCC's decision to support or oppose (i) the JPM UCC settlement agreement, (ii) the settlement with the Local Councils reflected in the Plan, (iii) the Hartford Settlement, and (iv) the TCJC Settlement including, without limitation, all facts that the TCC is relying on to support or oppose such settlements.

4. The TCC's analysis, evaluation or consideration of the ability of the Debtors to successfully reorganize under the Debtors' Plan.

5. The TCC's decision, analysis, evaluation, and consideration of whether to support confirmation of the Debtors' Plan, including what role, if any, the vote of the Abuse Claimants related to confirmation of the Plan plays in such decision, analysis, evaluation, and consideration by the TCC.

6. The factors that the TCC considered in exercising its fiduciary duties in deciding whether to support the Debtors' Plan, including, without limitation, all facts that the TCC considered in deciding whether to support or oppose the Debtors' Plan.

7. The TCC's analysis, evaluation or consideration of the valuation of the Debtors or any assets held by the Debtors.

8. The TCC's analysis, evaluation or consideration of the valuation of the Local Councils or any assets held by the Local Councils.

9. The TCC's analysis, evaluation, consideration, calculation or valuation concerning the projected or estimated liability of the Debtors, the Local Councils and the Chartered Organizations related to the Abuse Claims.

10. The TCC's analysis, evaluation, consideration, calculation or valuation concerning the projected or estimated liability of any Insurance Company related to the Abuse Claims.

11. The TCC's analysis, evaluation, consideration and decision concerning whether to enter into and/or continue to support the Restructuring Support Agreement.

12. The facts considered by the TCC in deciding whether to enter into and/or continue to support the Restructuring Support Agreement.

13. The TCC's Plan and Communications with any parties with whom the TCC discussed or shared a copy and/or drafts of the TCC's Plan.

14. Any party or parties with whom the TCC claims to share a common interest privilege, including the alleged basis for such common interest privilege and the dates for which the common interest allegedly applies.

15. Any advertisements, public outreach or communications with the media concerning the manner in which Abuse Claimants should vote on the Plan.

16. The email correspondence and letter from Mr. Kosnoff attached to the letter from Jessica Lauria to the TCC dated November 7, 2021 and the decision to distribute the email correspondence and letter from Mr. Kosnoff from the email address used by the TCC for official communications with abuse survivors.

17. The TCC's analysis, evaluation or consideration of the Debtors and the Local Councils' actual or potential liability to the Pension Benefit Guarantee Corporation.

18. Any contention by the TCC that any restricted assets of the Debtors are not validly subject to restriction.

19. The website maintained at url https://boyscoutsexualabuse.com/estimated-recovery-calculator and the decisions to post information at that website.

20. Communications with Michael Johnson, including, without limitation, any Communications concerning or relating to any of the TCC's Town Hall meetings.

21. The TCC's position that the BSA should release Ineligible Volunteer files to the public and the relationship with that demand and the Debtors' Plan.  (*See* Press Release.)

22. The "outside expertise or oversight" that the TCC believes that the Debtors should implement in connection with preventing sexual abuse.  (*See* Press Release.)

23. The "involvement of Survivors in the governance of the Settlement Trust" demanded by the TCC. (*See* Press Release.)

24. The TCC's allegation that the "BSA's Plan includes settlements with Local Councils that leave them with over a billion dollars of cash and property in excess of what their current need to fulfill the mission of scouting." (*See* Press Release.)

25. The TCC's allegation that the settlement with the TCJC is completely insufficient to pay for claims for which it has liability. (*See* Press Release.)

26. The TCC's allegation that Hartford "is paying a small fraction of the coverage it is contractually obligated to provide." (*See* Press Release.)

27. The video titled "TCC Addresses The Lies" published at www.tccbsa.com.

28. The TCC's statement that "survivors are likely to enjoy greater recoveries if BSA's Plan is rejected", including without limitation any analysis as to the number of survivors that the TCC believes would receive a greater recovery if BSA's plan is rejected and the number of survivors that the TCC estimates would receive less of a recovery if the BSA's plan is rejected.

29. All of the factors that the TCC considered in deciding to publish the statement that "survivors are likely to enjoy greater recoveries if BSA's Plan is rejected" at www.tccbsa.com.

30. The Local Council dashboards prepared by the TCC.

31. The Documents produced by You in response to any Requests for Production served on You in connection with the Chapter 11 Cases.