

O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036-6537

T: +1 212 326 2000
F: +1 212 326 2061
omm.com

November 9, 2021

**Gary Svirsky**
D: +1 212-326-4305
gsvirsky@omm.com

Chief Judge Laurie Selber Silverstein
United States Bankruptcy Court, District of Delaware
824 North Market Street, 6th Floor
Wilmington, DE 19801

**Re:** ***Boy Scouts of America, 20-10343 (LSS) (D. Del.)—Request to Compel Verus, LLC***

Dear Judge Silverstein:

We write on Century's behalf in further support of the motion compel Verus to comply with Century's Rule 2004 subpoena.[1]

**PRELIMINARY STATEMENT**

Verus claims that the relevance of this discovery has been mooted by Verus's post-hoc efforts to obtain claimant signatures. But Verus concedes that it has only obtained signatures for ***one third*** of the attorney-signed POCs. Not only does this fact not "moot" the relevance, but Verus's difficulty reaching these supposed claimants raises more questions. This discovery remains critical to ensuring the integrity of the voting process.

As this Court held, an attorneys who signs a POC "becom[es] . . . a fact witness" and "may be subject to a deposition,"[2] thus waiving any privilege. In any event, Verus—a for-profit claims aggregator and not a law firm—fails to proffer evidence that it acted at all times at the direction of an attorney—including when communicating with claimants. Nor has Verus shown that its services were "necessary" to "translate" complicated information that an attorney could not otherwise understand.[3] On the contrary, Verus describes its role as "akin to paralegals at law firms."[4] Verus thus fails to demonstrate that any of the requested discovery is privileged.

**ARGUMENT**

**I. THE DISCOVERY'S RELEVANCE HAS NOT BEEN MOOTED.**

Verus responds to Century's relevance arguments by contending that its post-bar-date efforts to amend the deficient POCs have mooted the need for any discovery. But Verus also concedes that it has amended ***only one third*** of the deficient POCs.[5] Obtaining 621 additional claimant signatures—when ***1,187*** POCs are known to remain indisputably defective and the full universe remains as yet unknown—does not moot the discovery's relevance. If anything, that over a thousand POCs remain unaccounted for despite Verus and Krause and Kinsman's efforts to contact the claimants—a campaign that apparently "spanned several weeks" and involved contacting claimants by text, email, and phone—only suggests that there are problems

[1] All defined terms have the same meaning as in Century's Letter Requesting to Compel Verus, LLC, at 1, D.I. 6813 (Oct. 27, 2021).
[2] Oct. 14, 2020 Hr'g at 183:19–22; 170:2–12.
[3] *LA Mun. Police Empls. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 311-12 (D.N.J. 2008).
[4] Verus's Response at 4, D.I. 6945 (Nov. 2, 2021) ("Verus's Response").
[5] Verus's Response at 3.

to investigate here. For starters, why are these claimants—ostensibly clients of the law firms—so difficult to reach? Nor do Verus's assertions address the larger pool of POCs for which it affixed electronic signatures *en mass*.

Moreover, Verus ignores Century's relevance argument under Rule 9011(b). Century explained previously that the number of attorneys participating in mass signings casts doubt on whether these lawyers vetted the claims, let alone (i) complied with the oath they affirmed by signing the POCs or (ii) their obligations under Rule 9011(b), which states that by signing "a petition, pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the allegations and other factual contentions have evidentiary support."[6]

Courts have held that "[c]ompliance with Bankruptcy Rule 9011 is ***particularly important for proofs of claim*** because a properly filed proof of claim constitutes *prima facie* evidence of the validity and amount of the claim," and "[t]he Court must therefore be able to rely on the integrity of the proofs of claim before it."[7] Verus now acknowledges that, after several weeks of attempting to contact claimants by various means, they have failed to obtain claimant signatures.[8] This admission underscores the relevance of the requested discovery, because it (i) confirms that neither Verus nor any law firm vetted the claims, and (ii) calls into question the validity, to this day, of over a thousand POCs and the much larger pool of POCs to which electronic signatures were affixed. Verus's assertion that it obtained signatures for one third of the deficient POCs does nothing to negate this relevance.

## II. THE INFORMATION CENTURY SEEKS IS NOT PRIVILEGED.

### A. Verus has not carried its burden of showing privilege.

The requested discovery is not privileged because by signing POCs, attorneys waived any applicable privilege, since "signing a proof of claim is an assertion of personal knowledge of the facts alleged in the proof of claim."[9] Verus relies on cases that extend the privilege to attorneys' subordinates who work *at the direction* of attorneys.[10] But Verus fails to show ***what*** specific attorney-direction it followed, or even that a relationship with a law firm existed at the time the POC's were generated. As the party asserting privilege, Verus has the burden to "establish the claimed privilege with reasonable ***certainty***," which requires that it "adduce competent evidence in support of each of the essential elements necessary to support a claim of privilege."[11] "[B]lanket or categorical claims of privilege will not suffice—the law requires a

---

6 Fed. R. Bankr. P. 9011(b); *see also* Model R. Prof. Conduct 3.3, cmt. 3 (ABA 2011) ("[A]n assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry.").

7 *Id.* (emphasis added, internal quotations and citations omitted).

8 Verus's Response at 2.

9 *In re Rodriguez*, No. 10-70606, 2013 WL 2450925, at *3-4 (Bankr. S.D. Tex. June 5, 2013).

10 *See* Verus's Response at 3 (citing *HPD Labs., Inc. v. Clorox Co.*, 202 F.R.D. 410, 415 (D.N.J. 2008)); *id.* at 4 (citing *Pa. Trans. Auth. v. Caremarkpcs Health, L.P.*, 254 F.R.D. 253, 257 (E.D. Pa. 2008); *Gucci Am. Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 71 (S.D.N.Y. 2010)).

11 *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 153 (D.D.C. 2012) (emphasis added); *accord In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012) (quoting *Grand Jury Empaneled Feb. 14, 1978*, 603 F.2d 469, 474 (3d Cir. 1979) ("the burden of proving that the attorney-client privilege applies is placed upon the party asserting the privilege")); *U.S. v. Furst*, 886 F.2d 558, 576 (3d Cir. 1989) (same); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 352 F. Supp. 3d 207, 213–14 (E.D.N.Y. 2019) (same).

O'Melveny

showing that the privilege applies to ***each communication*** for which it is asserted."[12] And "[w]here the proponent fails to adduce sufficient facts" for the "court to conclude with reasonable certainty that the privilege applies, its burden has not been met."[13]

For example, in *HPD Labs.*—cited by Verus—the court held that a paralegal's communications were not protected because the paralegal worked independently of any attorneys.[14] The court observed the paralegal had "not consulted with any lawyers before answering questions," and there was no evidence that the paralegal was "merely conveying the advice that she received from" the lawyers. Likewise, in *Gucci Am. Inc. v. Guess?, Inc.*—which Verus also cites—the court applied privilege to a third-party investigator who "acted at the direction" of counsel by "communicat[ing] … at ***every step*** of his investigation" and "continu[ing] each phase *solely* at [counsel]'s instruction."[15]

Here, Verus has proffered no support for the assertion that it "consulted with any lawyers" before seeking information and "answering questions," nor has it shown that it "merely convey[ed] attorneys' advice. Nor has Verus demonstrated that it was even engaged by a lawyer when it generated the POCs. Mark Eveland's declaration merely states that Verus "worked under the direction of the Law Firms during the entire process."[16] He says nothing about (i) how the attorneys supposedly directed Verus, (ii) how—or even whether—Verus consulted with lawyers before answering claimants' questions, or (iii) how Verus merely conveyed lawyers' advice. Verus also offers no evidence about when it was retained and by whom. On the contrary, while Mr. Eveland says that the law firms "review[ed]" the POCs,[17] and "were to approve" them before submission,[18] he does not state that the law firms actually approved the POCs.

Further, Mr. Eveland states that Verus would not upload POCs "until authorized" by law firms,[19] but he is silent about whether the attorneys conducted any pre-complaint investigation or even reviewed the POCs. Indeed, he states only that law firms "***could*** edit" Verus's POCs—not that they did.[20] These omissions are concerning, especially because the Krause & Kinsman appears to have only two attorneys,[21] while Verus pasted Krause's signature on more than 1,900 POCs. This two-attorney shop likely had minimal, if any, involvement in POC generation, and Verus's lack of precision concerning direction from attorneys is fatal to any privilege assertion, especially where "blanket or categorical claims" are insufficient.[22]

Verus also incorrectly invokes cases extending privilege to third-party agents who "translate" data into understandable terms for a non-expert attorney to provide legal advice.[23] Those cases stem from *U.S. v. Kovel*, where the Second Circuit held that privilege may extend

12 *In re Domestic Airline Travel Antitrust Litig.*, 2020 WL 3496748, at *3 (D.D.C. Feb. 25, 2020) (quoting *In re Veiga*, 746 F. Supp. 2d 27, 33 (D.D.C. 2010)) (emphasis added).

13 *Judicial Watch, Inc.*, 841 F. Supp. 2d at 153; *U.S. v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473–74 (2d Cir. 1996).

14 *HPD Labs., Inc. v. Clorox Co.*, 202 F.R.D. 410, 416 (D.N.J. 2001).

15 *Gucci Am. Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 71 (S.D.N.Y. 2010).

16 Aff. Of Mark Eveland in Opp'n to Century's Request to Compel Verus, LLC, ¶ 12 (D.I. 6946) ("Eveland Aff.").

17 Eveland Aff. ¶ 8 ("Once the relevant fields were filled out, the Law Firm would either (a) review the information by logging into the database, or (b) review a PDF of the POC generated from the database.")

18 Eveland Aff. ¶ 7.

19 Eveland Aff. ¶ 7.

20 Eveland Aff. ¶ 7.

21 *See* Krause & Kinsman "About Us" Home Page, https://krauseandkinsman.com/about-us/ (last visited 11/8/21).

22 *In re Domestic Airline Travel Antitrust Litig.*, 2020 WL 3496748, at *3 (D.D.C. Feb. 25, 2020) (quoting *In re Veiga*, 746 F. Supp. 2d 27, 33 (D.D.C. 2010) (emphasis added)).

23 Verus's Response at 3–4.

to third parties that are necessary to facilitate communication between attorney and client for the purpose of obtaining legal advice, such as an interpreter translating a foreign language, or an accountant explaining a complicated tax story to the client's attorney.[24] For example, Verus cites *LA Mun. Police Empls. Ret. Sys. v. Sealed Air Corp.*,[25] which held that privilege did not apply, because defendants' declarations "[did] not explain how [the third party] was to 'translate' information into terms that counsel could use more effectively."[26] Here, Verus asserts that its employees "are akin to paralegals at law firms,"[27] but paralegals provide administrative support—not translation of complicated data such that an attorney can understand and provide legal advice.[28] Verus also discusses *Ravenell*, where the court found that a third-party agent's services were not necessary to "enable counsel to understand aspects of the client's own communications that could not otherwise be appreciated."[29] Verus suggests the court viewed the third-party auditor as a necessary interpreter, and thus held that privilege applied.[30] Not so. The court explained that, were the auditor's role limited to providing "technological capability" that the law firms' could not perform, perhaps privilege as envisioned by *Kovel* and its progeny would apply.[31] But because the auditor also "review[ed] *the contents* of the responses"—*i.e.*, work that the lawyers should have performed—no privilege applied.[32] So too here, where Verus reviewed—indeed, facilitated—the contents of the discussions.

Thus, Verus's reliance on "translator" cases is misplaced. Verus has not shown that its client law firms required it to communicate with the client. On the contrary, Verus concedes that its team is "akin to paralegals," and that it was retained simply due to "the large number of claimants involved."[33] But providing administrative assistance with a large volume of claims is distinct from serving as "interpreter" who "make[s] a literal translation of the client's story" where the client speaks a foreign language, or serving as an accountant to translate the client's "complicated tax story to the lawyer."[34] Accordingly, Verus's privilege claim fails.

### B. Mr. Eveland's declaration warrants a deposition.

Verus asks the court to rule based on Mr. Eveland's declaration, without (i) offering him for a deposition or (ii) producing contemporaneously generated documents Century seeks. Introduction of "affidavits and declarations" "lessens [the proponent's] credibility," because they are "self-serving and lack adversarial examination."[35] That is why "the deposition of a witness will usually be more reliable than his affidavit, since the deponent was either cross-examined by opposing counsel, or at least available to opposing counsel for cross-examination."[36] But when Century requested that Mr. Eveland sit for a deposition, Verus's counsel refused.[37] To be clear, Mr. Eveland's declaration puts at issue the very documents Century seeks. For example, he

24 296 F.2d 918 (2d Cir. 1961).
25 Verus's Response at 3.
26 *LA Mun. Police Empls. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 311–12 (D.N.J. 2008).
27 Verus's Response at 4.
28 *Cf. U.S. v. Kovel*, 296 F.2d 918 (2d Cir. 1961) (holding that privilege may extend to third parties that are necessary to facilitate communication between attorney and client, such as an agent translating a foreign language or an accountant explaining a complicated tax story to the client's attorney).
29 *Id.* at *2.
30 Verus's Response at 5.
31 *See U.S. v. Kovel*, 296 F.2d 918 (2d Cir. 1961) (holding that privilege may extend to third parties that are necessary to facilitate communication between attorney and client).
32 *Ravenell v. Avis Budget Grp., Inc.*, 2012 WL 1150450, at *3 (E.D.N.Y. Apr. 5, 2012).
33 Verus's Response at 5.
34 *U.S. v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961).
35 *Ortiz-Lezama v. Att'y Gen. U.S.*, 795 Fed. App'x 114 (Mem), 115 (3d Cir. 2020).
36 *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007).
37 Nov. 8, 2021 Declaration of Stamatios Stamoulis, Ex. 1 (Nov. 8, 2021 email from Michael A. Kaplan).

O'Melveny

states that "Verus worked under the direction of the Law Firms during the entire process,"[38] but RFP 1 seeks Claim Forms in native format, which would enable Century to discern whether anyone other than a Verus employee—such as an attorney—worked on the document. Century should have an opportunity to question him about these statements.

**C. Verus fails to rebut that Century seeks factual information, not analysis.**

Many of the RFPs do not seek information that could possibly be privileged: they call for original information like POC documents, intake logs, names and email addresses, written agreements setting forth Verus's role in these proceedings, documents about the processes followed in verifying the claims under Rule 9011(b) and obtaining attorney signatures, and documents concerning signatures from attorneys whose signatures had been scanned and affixed to thousands of POCs.[39] These requests plainly do not target communications or legal analysis,[40] and Verus ignores these requests in its Response.

Verus contends that the work product doctrine shields draft POCs, relying on cases holding that draft contracts, briefs, or complaints are protected.[41] But Century does not seek drafts. Moreover, the cases Verus cites are distinguishable because they involve documents that actually "convey[ed] counsel's opinions or advice."[42] Courts frequently reject work product claims over draft documents where the drafts do not contain notes describing the attorney's mental impressions. For example, in *Astra Aktiebolag*, the court held that draft pleadings were protected where "[m]any of the[] documents … contain handwritten annotations and comments that reflect legal advice."[43] Likewise, in *Andritz Sprout-Bauer, Inc.*, the court held that draft documents were protected "*if* the drafts contain comments or notations of counsel."[44] Here, Verus has not shown that the draft POCs contain attorney annotations, let alone that an attorney played any role. In any event, Verus only invokes the work product doctrine for this narrow category of documents, and many of Centuries requests do not target draft POCs.

**D. Verus does not defend its privilege log.**

Verus does not even attempt to defend its privilege log, which block-lists thousands of documents and provides no meaningful description of the privilege being asserted. Accordingly, should the Court find that any privilege may apply, it should order Verus to revise its privilege log and provide sufficient information for the Court and the parties to assess each individual assertion of privilege.[45]

Respectfully submitted,

*/s/ Gary Svirsky*

O'MELVENY & MYERS LLP

---

38 Eveland Aff. ¶ 12.

39 Speckin Decl. ¶ 18

40 *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 632 (M.D. Pa. 1997) ("[t]he privilege attaches to the communication itself, not to the facts communicated.").

41 *See* Verus's Response at 5 (collecting cases).

42 *Charlestown Cap. Advs., LLC v. Acero Junction, Inc.*, 2020 WL 757840, at *12 (S.D.N.Y.) (citing *Astra Aktiebolag v. Andrx. Pharms., Inc.*, 208 F.R.D. 92, 104 (S.D.N.Y. 2002) (cited by Verus at 5)).

43 *Aktiebolag v. Andrx. Pharms., Inc.*, 208 F.R.D. 92, 104-05 (S.D.N.Y. 2002).

44 *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 635 (M.D. Pa. 1997).

45 *See* Fed. R. Civ. P. 45(e)(2)(A); *see also Mazer v. Frederick Mut. Ins. Co.*, 2020 WL 4368785, at *2 (M.D. Pa. July 30, 2020) ("[A] person withholding subpoenaed information under a claim that it is privileged or subject to protection must make the claim and describe the nature of the withheld documents.").