

PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES
LIMITED LIABILITY PARTNERSHIP

LOS ANGELES, CA
SAN FRANCISCO, CA
WILMINGTON, DE
NEW YORK, NY
HOUSTON, TX

10100 SANTA MONICA BLVD.
13th FLOOR
LOS ANGELES
CALIFORNIA 90067-4003

**TELEPHONE: 310.277.6910**
FACSIMILE: 310.201.0760

**SAN FRANCISCO**
150 CALIFORNIA STREET
15th FLOOR
SAN FRANCISCO
CALIFORNIA 94111-4500

**TELEPHONE: 415.263.7000**
FACSIMILE: 415.263.7010

**DELAWARE**
919 NORTH MARKET STREET
17th FLOOR
P.O. BOX 8705
WILMINGTON
DELAWARE 19899-8705

**TELEPHONE: 302.652.4100**
FACSIMILE: 302.652.4400

**NEW YORK**
780 THIRD AVENUE
34th FLOOR
NEW YORK
NEW YORK 10017-2024

**TELEPHONE: 212.561.7700**
FACSIMILE: 212.561.7777

**TEXAS**
440 LOUISIANA STREET
SUITE 900
HOUSTON
TEXAS 77002-1062

**TELEPHONE: 713.691.9385**
FACSIMILE: 713.691.9407

WEB: www.pszjlaw.com

James I. Stang     November 9, 2021     310.772.2354
jstang@pszjlaw.com

**VIA EMAIL & ECF**

The Honorable Laurie Selber Silverstein
United States Bankruptcy Court
824 North Market Street, 6th Floor
Wilmington, DE  19801

Re:     **Boy Scouts of America and Delaware BSA, LLC
         Case No. 20-10343 (LSS)**

Dear Judge Silverstein:

The Official Committee of Tort Claimants (the "TCC") writes, in accordance with *Order (I) Scheduling Certain Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization, (II) Establishing Certain Protocols, and (III) Granting Related Relief* [Docket No. 6528], to respectfully request the Court compel the Insurer Parties[1] to produce certain documents (the "Disputed Documents") responsive to the TCC's requests for production directed to each of the Insurer Parties (collectively, the "Insurer RFPs").[2]  The TCC has met and conferred with each of the Insurer Parties but, with respect to the matters discussed herein, have been unable to reach agreement.[3]  The TCC requests the Court compel the relevant Insurer Parties to produce the following categories of Disputed Documents:

a.   Copies of all Insurance Policies sold to the Debtors, Local Councils, and/or Chartered Organizations ("Policy Copies");[4]

b.   Documents sufficient to show all payments made, including defense or indemnity payments, by Insurer Parties on account of Abuse Claims ("Insurer Payments"), and, with respect to each Insurer Payment, documents sufficient to show the Type of Abuse Category associated with the Abuse Claim, where and when the Abuse at issue allegedly occurred, whether the Insurer Payment was associated with a Settlement or Verdict, and any allocation of the total Settlement or Verdict amount as between the

---

[1] Please see the attached **Exhibit A** for a list of the Insurer Parties from whom the TCC seeks Disputed Documents.
[2] Each of the Insurer RFPs are attached hereto as **Exhibits B** through **J**.  Capitalized terms not otherwise defined herein have the meanings ascribed to them in the applicable Insurer RFP.
[3] For the avoidance of doubt, the exclusion of any matter from this letter should not be construed as the TCC's waiver of any rights, including with respect to (a) those matters on which the TCC understands it is in agreement with any Insurer Party or (b) further discovery necessitated by any future change in circumstances.
[4] Certain Insurance Policies are Disputed Documents with respect to CNA, FFIC, Liberty Mutual, Travelers, and Zurich.



PACHULSKI
STANG
ZIEHL
JONES

L A W   O F F I C E S

Insurer Party and any other Abuse Parties (collectively, the "Verdict/Settlement Documents");[5]

c.  Copies of all reservation of rights or denial of coverage correspondence under any Abuse Insurance Policies ("Coverage Correspondence");[6]

d.  Copies of loss runs[7] associated with Abuse Insurance Policies ("Loss Runs");[8] and

e.  Documents sufficient to show, for each Abuse Claim for which the Insurer Party set a loss reserve and has not yet made payment, the Type of Abuse Category associated with the Abuse Claim, and where and when the Abuse at issue allegedly occurred[9] (the "Unpaid Claim Documents").[10]

Each of the Insurer Parties object to the production of the applicable Disputed Documents on relevance grounds, incorrectly arguing that the TCC seeks discovery related to "coverage disputes" that the Court allegedly stated would not be heard.

**I.     At Confirmation, the Court Must Make Specific Factual Findings as to the Sufficiency of Protected Party Contributions, Whether the Holders of Abuse Claims are to be Paid in Full, and Whether Creditors Fare at Least as Well Under the Plan as in Chapter 7.**

The TCC is focused on proving the inadequacy of the Debtors' proposed Plan. The Plan includes a channeling injunction in favor of, among others, the allegedly separate 251 Local Councils (that, among other things, are chartered by BSA to work with the thousands of Chartered Organizations to sponsor Boy Scout troops), all Chartered Organizations essentially as to years of liability after 1975, TCJC, and Hartford. The sufficiency of the contributions of the parties to receive the benefits of the channeling injunction, and whether the holders of Abuse Claims are to be paid in full or substantially

---

[5] Verdict/Settlement Documents are Disputed Documents with respect to all Insurer Parties.

[6] Coverage Correspondence are Disputed Documents with respect to Allianz, CNA, FFIC, Liberty Mutual, Travelers, and Zurich, including, with respect to certain Insurer Parties such as CNA and Liberty Mutual, to the extent such Insurer Parties refuse to produce Coverage Correspondence from prior to the Petition Date.

[7] A loss run is a report contemporaneously kept, updated, and maintained by an insurer that contains claims details relative to a particular policy or policies of a particular insured and generally includes the following data, among other things: the dates on which claims were reported, a description of the claim, the assigned claim number, whether that claim is active or has been resolved and deemed closed, and any amounts that the insurer has paid and/or reserved in connection with that insurer's duty to indemnify an underlying settlement, verdict, or judgment. For the avoidance of doubt, the TCC only seeks the portion of any Loss Run that includes a Reserve Amount (as defined below) to the extent the Court orders the Insurer Parties to produce the Reserve Amount, as discussed in footnote 9 below.

[8] Loss Runs are Disputed Documents with respect to Liberty Mutual.

[9] In the Insurer RFPs, the TCC also requested that Insurer Parties documents sufficient to show the amount of reserves associated with each Abuse Claim (the "Reserve Amount"), which none of the Insurer Parties agreed to produce. To the extent the Court grants the relief sought in the TCC's November 4 Letter Brief [Docket No. 6969], which incorporates the Debtors' arguments set forth in the Debtors' November 3 Letter Brief [Docket No. 6953] concerning the production of documents related to reinsurance, among other things, the TCC submits that the Court should also compel such Insurer Parties to produce documents sufficient to show the Reserve Amounts.

[10] Unpaid Claims Documents are Disputed Documents with respect to each Insurer Party.



in full under the Plan are factors as to which this Court must make specific factual determinations in order to approve the Plan and its channeling injunction.[11]

The Plan's proposed treatment of Abuse Claims does not include any promise or guarantee of full payment of Abuse Claims. Instead, under the Plan, BSA, the Local Councils, Chartered Organizations and Hartford are to transfer certain cash and other assets, including rights in certain Insurance Policies, to the Settlement Trust. Although these fixed contributions may be used to partially pay Abuse Claims, any additional payments are to come from other potential sources, such as non-settling insurers and non-settling Chartered Organizations (with respect to pre-1976 abuse), and, again, there is to be no promise or guarantee that such sources will pay the claims in full. Yet, for these fixed and limited contributions, the Plan proposes to not only fully release BSA but to also effectively release *thousands of non-Debtors* (including the Local Councils, Chartered Organizations for post-1975 Abuse, TCJC, and Hartford). Because full payment is not promised or guaranteed under the Plan, whether it will occur (and determining the sufficiency or fairness of a particular proposed contribution toward it) requires factual determinations as to both the amount of Abuse Claim liability and the value of the assets to be devoted under the Plan to the payment of Abuse Claims.

Additionally, the same or similar factual determinations also may be required for the Debtors to show that the plan meets the minimum "best interests test" of section 1129(a)(7) of the Bankruptcy Code; that is, that each objecting creditor will receive at least as much under the Plan as they would if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. The assets of all parties getting releases need to be taken into account under the best interests test, which, here, would include the insurance policies of Local Councils and Chartered Organizations (as to post-1975 Abuse).[12]

## II. The Disputed Documents are Relevant to Factual Findings to be Made at Confirmation and their Production Should be Compelled

The Disputed Documents directly relate to the central Plan confirmation issues described above. Thus, their production should be compelled as part of the broad discovery to which the TCC is entitled under Rule 26 as to any matter that is relevant to Plan confirmation.[13]

The requested Insurer Payments, Verdict/Settlement Documents, and Loss Runs (whether as to Abuse Claims against Local Councils, Chartered Organizations, or the Debtors) are relevant to, and important information for, the formulation of expert opinion of the value

[11] *See In re Continental Airlines, Inc.*, 203 F.3d 203, 214 (3d Cir. 2000); *see also In re Global Indus. Techs., Inc.*, 645 F.3d 201 (3d Cir. 2011) (en banc); *In re Hercules Offshore, Inc.*, 565 B.R. 732, 756 (Bankr. D. Del. 2016); *In re Wash. Mut., Inc.*, 442 B.R. 314, 346 (Bankr. D. Del. 2011); *In re Master Mortgage Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994).
[12] *See, e.g., In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011) ("in a case where claims are being released under the chapter 11 plan but would be available for recovery in a chapter 7 case, the released claims must be considered as part of the analysis in deciding whether creditors fare at lease as well under chapter 11 plan as they would in a chapter 7 liquidation"); *see also Mercury Capital Corp. v. Milford Conn. Assocs., L.P.*, 354 B.R. 1, 9 (D. Conn. 2006); *In re Ditech Holding Corp.*, 606 B.R. 544, 614 (Bankr. S.D.N.Y. 2019); *In re Quigley*, 437 B.R. 102 (Bankr. S.D.N.Y. 2010).
[13] Fed. R. Civ. P. 26; *see also AgroFresh, Inc. v. Essentiv LLC*, 2018 U.S. Dist. LEXIS 213203, at *5 (D. Del. Dec. 11, 2018) ("Rule 26 is liberally construed in favor of disclosure because relevance is a broader inquiry at the discovery stage than at the trial stage.") (internal quotation omitted).



PACHULSKI
STANG
ZIEHL
JONES

L A W   O F F I C E S

of the Abuse Claims to be addressed by the Plan. Determining the value of, or liability exposure for, Abuse Claims to be addressed under the Plan is relevant to determining whether Abuse Claims are being paid in full or substantially in full under and/or the sufficiency of proposed contributions of Local Councils, Chartered Organizations, and Settling Insurers (presently, only Hartford). The Court's receipt and evaluation of expert opinions on the amount of Abuse Claim liability is relevant, important, and does not require the Court to resolve coverage disputes.

The requested Policy Copies,[14] Coverage Correspondence, and Unpaid Claim Documents are relevant to, and important information for, the formulation of expert opinion of the value of these Insurance Policies. For the many Insurance Policies to be assigned to the Settlement Trust, determining the value of such Insurance Policies is relevant to determining the extent to which, under the Plan, there will be full payment or substantially full payment of the liability for Abuse Claims of the Debtors and of the beneficiaries of the Channeling Injunction. In assessing the fairness of the proposed contributions of the thousands and thousands of Chartered Organizations (which, for the post-1975 Abuse, are only assigning rights in Insurance Policies purchased by BSA), it also is relevant, however, to consider the extent to which their liability for Abuse to be released is covered by Insurance Policies sold to the Chartered Organizations themselves ("Chartered Organization Named Policies").[15] All of the thousands and thousands of Chartered Organizations are proposed to be released from liability with respect to post-1975 Abuse Claims, without assigning their rights in the post-1975 Chartered Organization Named Policies to the Settlement Trust. The extent and value of these policies is relevant to the fairness of the proposed contribution of the Chartered Organizations. As well, Insurer Parties who issued post-1975 Chartered Organization Named Policies will effectively be released of any liability under such policies for no consideration upon release of their insureds. At minimum, before being deemed to receive this windfall, the Insurer Parties should be compelled to produce any post-1975 Chartered Organization Named Policies.[16] Again, the Court's receipt and evaluation of expert opinions on the value of the insurance assignment is relevant, important, and does not require this Court to resolve coverage disputes.

With respect to the Policy Documents, Verdict/Settlement Documents, Coverage Correspondence, and Loss Runs, production of those Disputed Documents is entirely

---

[14] Certain Insurer Parties also claim that they cannot produce Insurance Policies sold to Local Councils without the Local Councils' consent. In the first instance, the Insurer Parties bear the burden of proving that such documents are confidential. *See, e.g., Schaeffer v. Tracey,* 2017 U.S. Dist. LEXIS 15708, at *4-5 (D. N.J. Feb. 2, 2017). Even if they were confidential, the TCC is party to the Protective Order in these cases. To the extent the Insurer Parties require a Court order to overcome the Local Councils' lack of consent (despite the fact that the Local Councils are proposed to be released under the Plan), the TCC respectfully requests the Court's assistance.

[15] All Insurer Parties have refused to search for and produce Chartered Organization Named Policies, asserting burden. While the TCC recognizes that there are tens of thousands of Chartered Organizations, that fact does not negate the relevance and importance of producing the Chartered Organization Named Policies.

[16] The TCC reserves all rights with respect to the pre-1976 Chartered Organization Named Policies (and expects to seek to compel the production of any such Insurance Policies to the extent the Debtors enter into any subsequent settlements with any Insurer Party or Chartered Organization).



PACHULSKI
STANG
ZIEHL
JONES

L A W   O F F I C E S

consistent with this Court's decision on substantially identical issues in *Imerys*.[17] Specifically, this Court's rulings in *Imerys*, which are applicable here, were:

- Verdict/Settlement Data and Loss Runs:  The Court required both Imerys and J&J to produce historical settlement data, including information on what amounts were paid to claimants.  In its February 4, 2021 letter ruling, the Court found that settlement spreadsheets with detailed settlement data was relevant to confirmation and claimants were entitled to discovery regarding the value of claims in order to evaluate the claims matrix.[18]  After extensive briefing and *in camera* review of master settlement agreements between co-defendant J&J and Imerys, the Court also ordered J&J to produce the settlement agreements, finding they were similarly relevant[19].  And when the topic came up again, the Court stated:  "If the Insurance Company has paid claims and the debtor does not have that information, you can get that information . . . historical settlement, I said yes."[20]  As in *Imerys*, Verdict/Settlement Documents and the Loss Runs (each that represent historical data) are relevant to the evaluation of the Trust Distribution Procedures and to the value of the Abuse Claims.

- Coverage Correspondence:  The Court also required insurers in *Imerys* to respond to whether they denied coverage or reserved rights.[21]

### III.    Conclusion

This case is on an extremely fast track.  As set forth above, the information requested is relevant to parties' claims and defenses with respect to Plan confirmation.  Considering that the Plan at issue proposes to release tens of thousands of parties that have not subjected themselves to the protections of this Court, and the national controversy that such proposed releases have engendered, developing a complete factual record is essential to preserve fairness for all parties. Accordingly, the TCC requests that Court enter an order compelling the Insurer Parties to produce the Disputed Documents.

Respectfully submitted,

/s/James I. Stang
James I. Stang

/s/Jeffrey L. Schulman
Jeffrey L. Schlman, Pasich LLP
jschulman@pasichllp.com

/s/Iain A. W. Nasatir
Iain A. W. Nasatir
inasatir@pszjlaw.com

/s/James E. O'Neill
James E. O'Neill
joneill@pszjlaw.com

---

[17] The Court's decision in *Imerys* does not address the production of the Unpaid Claim Documents. Like the "historical settlement" data in *Imerys*, the Unpaid Claim Documents are purely factual and do not seek the Insurer Parties' internal reserve amounts or other valuations.

[18] *See In re Imerys Talc America, Inc. et al.*, Case 19-10289, 19-ap-50115 (LSS) (Letter Ruling Dated February 4, 2021, Docket 2890).

[19] [19] *See In re Imerys Talc America, Inc. et al.*, Case 19-10289, 19-ap-50115 (LSS) (Letter Ruling Dated June 15, 2021, Docket 3681).

[20] *See In re Imerys Talc America, Inc. et al.*, Case 19-10289 (LSS) (Docket 3733) at 237, 239.

[21] *Id.* ("You can ask if they denied coverage or reserved rights").

**Exhibit A**

| Insurer Party | RFP Exhibit No. |
|---|---|
| Allianz Global Risks US Insurance Company f/k/a Allianz Insurance Company ("Allianz") | Exhibit B |
| Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Westchester Fire Insurance Company, and Westchester Surplus Lines Insurance Company (collectively, "Century") | Exhibit C |
| Chubb Limited; Chubb Group Holdings Inc.; Federal Insurance Company; International Insurance Company; U.S. Fire Insurance Company; Pacific Employers Insurance Company; Chubb Custom Insurance Company; Industrial Insurance Company of Hawaii; Industrial Indemnity; California Union Insurance Company; Texas Pacific Indemnity Company; Indemnity Insurance Company of North America; Westchester Fire Insurance Company; and Westchester Surplus Lines Insurance Company (collectively "Chubb") | Exhibit D |
| Columbia Casualty Company; Continental Insurance Company as successor in interest to certain policies issued by Harbor Insurance Company; Continental Insurance Company successor by merger to Niagara Fire Insurance Company; and Continental Insurance Company (collectively, "CNA") | Exhibit E |
| National Surety Corporation and Interstate Fire & Casualty Company (collectively, "FFIC") | Exhibit F |
| Liberty Mutual Insurance Company ("Liberty Mutual") | Exhibit G |
| Old Republic Insurance Company ("ORIC") | Exhibit H |
| Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company); St. Paul Surplus Lines Insurance Company; and Gulf Insurance Company (collectively, "Travelers") | Exhibit I |
| American Zurich Insurance Company; American Guarantee and Liability Insurance Company; and Steadfast Insurance Company (collectively, "Zurich") | Exhibit J |

# **<u>EXHIBIT B</u>**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Re Docket Nos. 2618, 6438, 6443, 6445 |

## THE OFFICIAL COMMITTEE OF TORT CLAIMANTS TO BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC'S REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO ALLIANZ GLOBAL RISKS US INSURANCE COMPANY F/K/A ALLIANZ INSURANCE COMPANY RELATED TO PLAN CONFIRMATION (FIRST SET)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable to these proceedings by Rules 9014, 7026, and 7034 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and pursuant to the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Official Committee of Tort Claimants to Boy Scouts of America and Delaware BSA, LLC (the "TCC"), by and through its undersigned counsel, hereby serve the following requests for production of documents (the "Requests for Production") on Allianz Global Risks US Insurance Company f/k/a Allianz Insurance Company ("Allianz") in connection with the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6443], and any amendments, supplements or modifications

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

thereto (the "<u>Plan</u>") and any proceedings arising therefrom or related thereto in connection with the Debtors' chapter 11 cases.

Please produce the documents and the production media to the TCC by October 18, 2021.

## **DEFINITIONS**

For the purposes of these Requests for Production, the following Definitions shall apply:

1.     The terms "all," "any," and "each" shall each be construed as encompassing any and all. The singular shall include the plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive; and the term "including" means "including without limitation." The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense.

2.     Capitalized terms not otherwise defined herein shall have the same meanings set forth in the Plan.

3.     "<u>Abuse</u>" shall have the meaning provided in the Plan.

4.     "<u>Abuse Claim</u>" means a liquidated or unliquidated Claim against one or more Abuse Parties that is attributable to, arises from, is based upon, relates to, results from, or is otherwise Concerned with, in whole or in part, directly, indirectly, or derivatively, alleged Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based on misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory, including any theory based on public policy or any act or failure to act by an Abuse Party or any other Person for whom any Abuse Party is alleged to

be responsible. The term "Abuse Claim" includes Direct Abuse Claims and Indirect Abuse Claims.

5.      "Abuse Claimant" shall mean the party asserting an Abuse Claim and their attorneys, advisors, agents, representatives, and experts.

6.      "Abuse Party" means, individually and collectively, (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Chartered Organizations; (f) Insurance Companies; or (g) all of any of the foregoing's Persons' Representatives.

7.      "Allianz" means Allianz Global Risks US Insurance Company f/k/a Allianz Insurance Company and its agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

8.      "Bates White" means Bates White LLC, the Debtors' abuse claims consultant and advisor.

9.      "BSA Plan Settlement" means any settlement, whether incorporated into the Plan or presented for approval pursuant to Bankruptcy Rule 9019, between the Debtors and any other Entity (including, but not limited to, an Insurance Company, Chartered Organization, or Local Council), including, but not limited to, the Hartford Insurance Settlement and the TCJC Settlement.

10.     "Chapter 11 Cases" shall mean the above-captioned chapter 11 cases of Boy Scouts of America and Delaware BSA, LLC, pending before the United States Bankruptcy Court for the District of Delaware.

11.     "Chartered Organization" shall have the meaning provided in the Plan.

12.     "Claim" means any "claim," as defined in section 101(5) of the Bankruptcy Code.

13.     "Coalition" shall mean the Coalition of Abused Scouts for Justice, an ad hoc committee that filed a notice of appearance in the Chapter 11 Cases on July 24, 2020 at Docket No. 1040, and its members, agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, representatives, affiliates, subsidiaries, predecessors and/or successors.

14.     "Communications" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, correspondence, memoranda, emails, facsimile transmissions, or other form of verbal, written, mechanical, or electronic disclosure, in Your actual or constructive control or custody or in the control or custody of any current or former affiliates, representatives or advisors.

15.     "Concerning" means relating to, evidencing, supporting, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, referencing, discussing, indicating, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

16.     "Confirmation Hearing" shall have the meaning provided in the Plan.

17.     "Debtors" means, collectively or individually, as context requires and to encompass responsive documents Boy Scouts of America and Delaware BSA, LLC, and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

18.     "Disclosure Statement" shall mean the *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6445], as such Document may be amended, supplemented, or modified from time to time.

DOCS_DE:236405.2 85353/002

19. "Documents" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all Documents and information in Your possession, custody, or control, and includes: all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda, transcripts, tapes, or other voice recordings, and all other Documents and tangible things, including booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, print-outs, and all other data, whether recorded by electronic or other means, and all drafts thereof. If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on any of the pages thereof, then each such non-identical copy is a separate Document and must be produced. When examples of categories or types of Documents are given in a particular Request for Production by use of phrases such as "including," this shall always be interpreted as being for illustrative purposes only (*i.e.*, to be understood as "including without limitation") and in no way limits or narrows the scope of any Request for Production. "Documents" always includes Communications, whether so stated in a particular Request for Production or not.

DOCS_DE:236405.2 85353/002

20.　"FCR" shall mean James L. Patton, Jr., the legal representative appointed by the Bankruptcy Court for holders of Future Abuse Claims, or any successor legal representative appointed by the Bankruptcy Court, and his agents, accountants, financial advisors, employees, experts, attorneys, representatives, affiliates, predecessors and/or successors.

21.　"Hartford Insurance Settlement" shall have the meaning provided in the Plan.

22.　"Insurance Company" shall have the meaning provided in the Plan.

23.　"Insurance Policy" shall have the meaning provided in the Plan, including all rights and benefits thereunder, and the proceeds thereof.

24.　"IV Files" shall mean any Documents that identify individuals associated with the Debtors accused of Abuse, including those records and files referred to as "ineligible volunteer" or "perversion" files.

25.　"Local Councils" shall have the meaning provided in the Plan.

26.　"Motion" shall mean the *Debtors' Motion for Entry of an Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation and Voting Procedures, (III) Approving Forms of Ballots, (IV) Approving Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief* [Docket No. 2295], as such Document may be amended, supplemented, or modified from time to time.

27.　"Non-Abuse Claims" shall have the meaning provided in the Plan.

28.　"Perpetrator" shall have the meaning provided in the Plan.

29.　"Petition Date" shall mean February 18, 2020.

30.     "Plan" shall mean the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6443], as such Document may be amended, supplemented, or modified from time to time.

31.     "Prepetition" shall mean occurring prior to the Petition Date.

32.     "Scouting Unit" means an entity that conducts scouting for a Chartered Organization, including but not limited to a pack, den, troop, Sea Explorers, Air Explorers, Learning for Life, Explorers, Venturing, crew, ship, chapter, and any associations that were predecessor associations of the foregoing.

33.     "Settlement" shall mean any Prepetition settlement or other resolution of an Abuse Claim.

34.     "Settlement Trust" shall have the meaning provided in the Plan.

35.     "Survivor" means a survivor of Abuse in scouting, including Abuse Claimants.

36.     "TCJC Settlement" shall have the meaning provided in the Plan.

37.     "Type of Abuse Categories" shall mean the following categories of Abuse: (a) penetration; (b) oral sex; (c) masturbation; (d) fondling/groping; (e) touching – bare skin; (f) touching – over the clothes; (g) non-touching; and (h) other aggravating factors.

38.     "Verdict" shall mean any Prepetition verdict, judgment, award or decision of a court, arbitrator, mediator or similar tribunal Concerning an Abuse Claim.

39.     "You" or "Your" and variants thereof mean Allianz.

### INSTRUCTIONS

The preceding Definitions apply to each of these Instructions, and for purposes of these Requests for Production, the following Instructions shall be followed:

1.    Civil Rule 34, made applicable to this proceeding pursuant to Bankruptcy Rules 7034 and 9014(c), is hereby incorporated by reference and applies to each of the following instructions.

2.    All responses shall comply with the requirements of the Civil Rules, the Bankruptcy Rules, the Local Rules, and any Court Order.

3.    Unless otherwise stated in a specific Request for Production herein, the relevant time period shall be from the respective inception of each of the Debtors to the present.

4.    These Requests for Production shall be deemed continuing in nature.  In the event You become aware of or acquire additional information relating or referring to any of the following Requests for Production, such additional information is to be promptly produced.

5.    Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of current or former employees, officers, directors, agents, agents' representatives, consultants, contractors, vendors, or any fiduciary or other third parties, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, local area networks, application-based communications services (including, without limitation, Facebook Messenger, Instant Bloomberg, WeChat, Skype, KakaoTalk, WhatsApp, Signal, iMessage, etc.), web-based file hosting services (including, without limitation, Dropbox, Box, Apple iCloud, Google Drive, Hightail, etc.), or web-based email systems such as Gmail, Yahoo, etc.

6.    You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf. You must produce all such Documents even if they were deleted or in draft form.  Without

limitation, hardware where such data may be stored includes: servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile storage devices, such as thumb or external hard drives. Electronically stored Documents include any computerized data or content stored on electromagnetic media. Without limitation, types of electronically stored Documents include email, voicemail, instant messages, intranet and internet system data, telephone and cellular telephone calling records, data compilations, spreadsheets, word processing Documents, images, databases, digital photocopier memory, and any other information stored in memory storage devices.

7. Produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document requested together with all non-identical copies and drafts of that Document. If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

8. Documents not otherwise responsive to these Requests for Production should be produced: (a) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are called for by these Requests for Production; (b) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests for Production; or (c) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

9. Documents attached to each other should not be separated; separate Documents should not be attached to each other.

10. Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

DOCS_DE:236405.2 85353/002

11.     If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request for Production or part thereof, for each such Document, You must:

    a.      Identify the type, title and subject matter of the Document;

    b.      State the place, date, and manner of preparation of the Document;

    c.      Identify all authors, addressees, and recipients of the Document, including information about such persons to assess the privilege asserted; and

    d.      Identify the legal privilege(s) and the factual basis for the claim.

12.     Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine.  In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 11 above must be provided.

13.     To the extent a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it:  (a) is missing or lost; (b) has been destroyed; (c) has been transferred to others; and/or (d) has been otherwise disposed of.  In each instance, identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, identify each person having knowledge of the circumstances of the disposition, and identify each person who had possession, custody, or control of the Document.  Documents prepared prior to, but which relate or refer to, the time period covered by these Requests for Production are to be identified and produced.

14.     If any part of the following Requests for Production cannot be responded to in full, please respond to the extent possible, specifying the reason(s) for Your inability to respond to the

remainder and stating whatever information or knowledge You have Concerning the portion to which You do not respond.

15.     If You object to any of these Requests for Production, state in writing with specificity the grounds of Your objections.  Any ground not stated shall be waived.  If You object to a particular portion of any Request for Production, You shall respond to any other portions of such Request for Production as to which there is no objection and state with specificity the grounds of the objection.

16.     The fact that an investigation is continuing or that discovery is incomplete shall not be a justification for failing to respond to these Requests for Production based on the knowledge or information that You possess at the time You respond to these Requests for Production.  If an investigation is continuing or discovery is not complete with respect to the matter inquired into by any Request for Production, so state in Your response to that Request for Production.

17.     If the identity of Documents responding to a Request for Production is not known, then that lack of knowledge must be specifically indicated in the response.  If any information requested is not in Your possession, but is known or believed to be in the possession of another person or entity, then identify that person or entity and state the basis of Your belief or knowledge that the requested information is in such person's or entity's possession.

## MANNER OF PRODUCTION

1.     All Documents produced to the TCC shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files and accompanied by true and correct copies or representations of unaltered attendant metadata.  Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-

11

DOCS_DE:236405.2 85353/002

level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents. Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

2. <u>Database Load Files and Production Media Structure</u>: Database load files shall consist of: (a) a comma-delimited values (".dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (b) an Opticon (".opt") file to facilitate the loading of tiff images. Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.

3. <u>Electronic Documents and Data, Generally</u>: Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text as to allow the TCC, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Documents' true and original content.

4. <u>Emails and Attachments, and Other Email Account-Related Documents</u>: All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format,

accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the TCC.

5. <u>Documents and Data Created or Stored in or by Structured Electronic Databases</u>: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the TCC to reasonably manage and import those Documents into a useable, coherent database. Documents must be accompanied by reasonably detailed documentation explaining the Documents' content and format including but not limited to data dictionaries and diagrams. Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

      a.      XML format file(s);

      b.      Microsoft SQL database(s);

      c.      Access database(s); and/or

      d.      fixed or variable length ASCII delimited files.

6. <u>Spreadsheets, Multimedia, and Non-Standard File Types</u>: All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet, database and/or statistical programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent You have other file types that do not readily or easily and accurately convert to tiff and searchable text, You may elect to produce those files in native format subject to the other

requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

7.  "Other" Electronic Documents:  All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8.  Paper Documents:  Documents originally created or stored on paper shall be produced in tiff format.  Relationships between Documents shall be identified within the .dat file utilizing document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings.  In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these Requests for Production.

## DOCUMENT REQUESTS

**Request No. 1.**      All Documents Concerning the Motion, the Plan, the Disclosure Statement, or any actual or proposed settlements of Your coverage obligations to the Debtors, including any drafts thereof, including, but not limited to, all such Documents prepared, authored, sent, or received by the Debtors, the FCR, and the Coalition.

RESPONSE:

**Request No. 2.**      All Documents that You or anyone acting on Your behalf prepared, authored, sent, or received that interpret, refer to, relate to, or otherwise Concern insurance coverage for any Abuse Claim.

RESPONSE:

**Request No. 3.** All Documents that evidence, refer to, relate to, or otherwise Concern reinsurance under any other Insurance Policies You sold to the Debtors, including, but not limited to, (i) all Documents sent or received by You Concerning the collectability of reinsurance for Your liability for Abuse Claims under Your Insurance Policies; and (ii) all Documents that constitute, evidence, refer to, relate to, or otherwise Concern any Communication between You and any reinsurer Concerning any Abuse Claim.

RESPONSE:

**Request No. 4.** Documents sufficient to show all liabilities that You have Concerning each Insurance Policy that the Debtors are proposing to contribute to the Settlement Trust under the Plan.

RESPONSE:

**Request No. 5.** All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern Your financial ability to satisfy Your obligations under any Insurance Policies.

RESPONSE:

**Request No. 6.** If You contend that anything in or Concerning the Plan or Settlement Trust will, if the Plan is confirmed, impact Your rights or obligations (including without limitation inter-insurer contribution claims), all Documents that Concern Your contention.

RESPONSE:

**Request No. 7.** If You contend that the Debtors have not complied with any contractual conditions or obligations under any Insurance Policy in connection with any Abuse Claim, all Documents that Concern Your contention.

RESPONSE:

**Request No. 8.** All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any Abuse Claims where You paid or agreed to pay defense costs and/or make an indemnity payment on behalf of Debtors or any other insureds, including, but not limited to, Documents that identify the Insurance Policy, the name of the claimant, the Type of Abuse Categories, the amount paid for such claim, and whether the amount paid was for defense and/or indemnity.

RESPONSE:

**Request No. 9.** All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any Abuse Claims where You denied or reserved rights with respect to coverage, including, but not limited to, Documents that identify the Insurance Policy, the case caption for the claim You denied or otherwise reserved rights, the name of the claimant, and the monetary amount alleged in such claim.

RESPONSE:

**Request No. 10.** Documents sufficient to Identify (i) each Settlement of an Abuse Claim; (ii) each Verdict in favor of an Abuse Claimant; and (iii) each Verdict in favor of the Defense Concerning an Abuse Claim, including the following information with respect to each such Settlement and Verdict:

a. Your claim file and all Communications Concerning each such Abuse Claim;

b. All complaints or statements of claim associated with each Settlement and Verdict, including the filing date of the action, causes of action asserted, any consolidated action, jurisdiction, and plaintiff's counsel;

c. The stage of the proceeding at the time of the Settlement or Verdict;

d. Amount of Settlement of the Abuse Claim or award pursuant or subject to the Verdict, including total Settlement or award amount, all sub-components of economic and non-economic Settlement or award amounts, and apportionment or allocation of Settlement or award amounts among each defendant or party against which the Abuse Claim was asserted;

e. With respect to a Verdict in favor of the Defense Concerning an Abuse Claim, amount of Abuse Claim subject to the Verdict, including total alleged amount of Abuse Claim and all alleged sub-components of economic and non-economic amount of Abuse Claim

f. Roster(s) of Scouting Units associated with the Abuse Claim;

g. Information which would be responsive to any and all questions contained in Parts 2 – 6 of the "Sexual Abuse Survivor Proof of Claim" form, not limited to but including the following:

i. Type(s) of Abuse at issue in the Abuse Claim, utilizing the Type of Abuse Categories or specifically describing the type of Abuse if not specifically delineated therein;

ii. Number of instances of Abuse at issue in the Abuse Claim;

iii. Year(s) of occurrence of Abuse at issue in the Abuse Claim;

iv. Age of Abuse Claimant at time of Abuse at issue in the Abuse Claim;

v. Identity of each defendant or party against which the Abuse Claim was asserted, including the alleged Perpetrator, Local Council, and/or Chartered Organization, as applicable;

vi. State, city, and county in which each instance of Abuse at issue in the Abuse Claim occurred; and

vii. Any other information or data collected, compiled, or maintained by You in connection with the Abuse Claim, including information with respect to the Abuse Claimant, the alleged Perpetrator, their respective backgrounds or histories related or relevant to the Abuse allegations, and Your knowledge of the same.

h. The number of accusations (aside from the Abuse Claim at issue) brought against the accused Perpetrator;

i. The date of the Settlement or Verdict and any payments made in connection therewith;

j. If the defense of the Abuse Claim was covered by an Insurance Policy, the identity of the Insurance Policy (including a copy thereof) and Insurance Company;

k. Identity of source(s) of payment of Settlement or Verdict amount, including if the Settlement or Verdict was paid in whole or in part from proceeds of an Insurance Policy, the identity of the Insurance Policy and Insurance Company;

l. Copies of any agreements between You and the Debtors Concerning coverage for the Settlement of any Abuse Claims and all drafts thereof and Documents relating thereto including, but not limited to, the consent (or lack thereof) of other insureds to enter into any such agreements or Settlements; and

m. Copies of documentation of the Settlement or Verdict, including any court order approving same.

RESPONSE:

**Request No. 11.** All Documents Concerning an Abuse Claim that is not otherwise covered by Request No. 10, including the following information with respect to each such Abuse Claim:

a.      Your claim file and all Documents Concerning each such Abuse Claim;

b.      Any complaints or statements of claim associated with each Abuse Claim, including the filing date of the action, causes of action asserted, any consolidated action, jurisdiction, and plaintiff's counsel;

c.      Amount of the Abuse Claim, including total amount of the Abuse Claim, all sub-components of economic and non-economic amount of Abuse Claim, and apportionment or allocation of amounts among each defendant or party against which the Abuse Claim was asserted

d.      Roster(s) of Scouting Units associated with the Abuse Claim;

e.      Information which would be responsive to any and all questions contained in Parts 2 – 6 of the "Sexual Abuse Survivor Proof of Claim" form, not limited to but including the following:

i.      Type(s) of Abuse at issue in the Abuse Claim, utilizing the Type of Abuse Categories or specifically describing the type of Abuse if not specifically delineated therein;

ii.      Number of instances of Abuse at issue in the Abuse Claim;

iii.      Year(s) of occurrence of Abuse at issue in the Abuse Claim;

iv.      Age of Abuse Claimant at time of Abuse at issue in the Abuse Claim;

v.      Identity of each defendant or party against which the Abuse Claim is asserted, including the alleged Perpetrator, Local Council, and/or Chartered Organization, as applicable;

vi.      State, city, and county in which each instance of Abuse at issue in the Abuse Claim occurred; and

vii.      Any other information or data collected, compiled or maintained by

You in connection with the Abuse Claim, including information with respect to the Abuse Claimant, the alleged Perpetrator, their respective backgrounds or histories related or relevant to the Abuse allegations, and Your knowledge of the same.

       f.     The number of accusations (aside from the Abuse Claim at issue) brought against the accused Perpetrator;

       g.     If the defense of the Abuse Claim was covered by an Insurance Policy, the identity of the Insurance Policy and Insurance Company;

       h.     Any payments made in connection with the Abuse Claim, and the amounts sources and dates of any such payments;

       i.     Copies of any agreements between You and the Debtors Concerning coverage for the Settlement of any Abuse Claims and all drafts thereof and Documents relating thereto including, but not limited to, the consent (or lack thereof) of other insureds to enter into any such agreements or Settlements; and

       j.     Copies of documentation of the Abuse Claim.

RESPONSE:

**Request No. 12.**     The most recent loss run for each Insurance Policy You sold to the Debtors.

RESPONSE:

**Request No. 13.**     All IV Files and all Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any IV Files.

RESPONSE:

**Request No. 14.**     All Documents prepared by the Debtors or Bates White Concerning Abuse Claims provided to You.

20

RESPONSE:

**Request No. 15.**     All Documents Concerning Abuse Claims provided by You to the Debtors or Bates White.

RESPONSE:

**Request No. 16.**     All Documents, including analyses prepared by the Debtors, You, or anyone at the Debtors' or Your behalf, Concerning any estimate or approximation of the number of Perpetrators and/or the number of Survivors.

RESPONSE:

**Request No. 17.**     All Documents, including expert reports, provided to You from the Debtors or Abuse Claimants Concerning Abuse Claims that assert or ascribe a value to an Abuse Claim.

RESPONSE:

**Request No. 18.**     All Documents that constitute, evidence, refer to, relate to, or otherwise Concern any reserve that You contemplated, established, set, maintained, and/or changed regarding the Abuse Claims for each Insurance Policy year.

RESPONSE:

**Request No. 19.**     All Documents that constitute, evidence, refer to, relate to, or otherwise Concern an Insurance Policy that provides or potentially provides coverage for Abuse Claims.

RESPONSE:

**Request No. 20.**     All Documents that You intend to rely on at the Confirmation Hearing or in connection with the estimation or valuation of Abuse Claims.

RESPONSE:

**Request No. 21.** All Documents that constitute, evidence, refer to, relate to, or otherwise Concern any BSA Plan Settlement.

RESPONSE:

**Request No. 22.** All Documents, including, without limitation claims-handling manuals, guidelines, policies, practices, directives, and procedures, that Concern Your handling, processing, adjusting, review, investigation, evaluation, acceptance, denial, reservation of rights, or other response to sexual abuse claims, including the Abuse Claims, under any Insurance Policy.

RESPONSE:

**Request No. 23.** All Documents Concerning Your policies, practices, and procedures that Concern valuing or evaluating sexual abuse claims, including Abuse Claims, that were filed after the expiration of any applicable statute of limitations or were filed in jurisdictions where the statute of limitations with respect to sexual abuse claims may change, including, without limitation, any policies, procedures, or practices that prohibit settling or otherwise resolving such sexual-abuse claims.

RESPONSE:

**Request No. 24.** All minutes of or other written documentation relating to every meeting of Your board of directors or managers, any committee or subcommittee thereof, any task force or working group thereof, or any of Your other executive task forces or working groups, during which there was discussion of the Debtors, the Insurance Policies sold by You to the Debtors, Abuse Claims, or the Debtors' claims for insurance coverage under Insurance Policies (whether or not regarding the Abuse Claims), including without limitation, insurance coverage for

such claims, including but not limited to handouts, agendas, attachments, and notes made by participants.

RESPONSE:

**Request No. 25.** All Documents that refer to, relate to, memorialize, or otherwise Concern an opinion, conclusion, or analysis as to the absence or existence of an aggregate limit of liability Concerning any Insurance Policy applying to Abuse Claims and Non-Abuse Claims.

RESPONSE:

**Request No. 26.** All Documents Concerning the validity and amount of the "Claim for BSA to participate in an allocation of Allianz's past and future loss, if any, relating to Abuse Claims" You assert against the Debtors in the Allianz Proof of Claim.

RESPONSE:

**Request No. 27.** All Documents Concerning the validity and amount of the "Claim for Restitution from BSA for Amounts Paid by Allianz" You assert against the Debtors in the Allianz Proof of Claim.

RESPONSE:

**Request No. 28.** All Documents Concerning the validity and amount of the "Claim for Contribution, Indemnification, Allocation, or Set-Off" You assert against the Debtors in the Allianz Proof of Claim.

RESPONSE:

**Request No. 29.** All Documents Concerning the validity and amount of the "Claim for Indemnification from BSA" You assert against the Debtors in the Allianz Proof of Claim.

RESPONSE:

**Request No. 30.**    All Documents Concerning the validity and amount of the "Setoff and Recoupment" You assert against the Debtors in the Allianz Proof of Claim.

RESPONSE:

**Request No. 31.**    All Documents Concerning the validity and amount of the "Claim for Subrogation" You assert against the Debtors in the Allianz Proof of Claim.

RESPONSE:

**Request No. 32.**    All Documents Concerning the validity and amount of the "Claims under Illinois Coverage Action" You assert against the Debtors in the Allianz Proof of Claim.

RESPONSE:

**Request No. 33.**    All Documents Concerning the basis, validity, and amount of any security interest You assert against the Debtors.

RESPONSE:

**Request No. 34.**    All Documents Concerning the basis, validity, and amount of any administrative expense claim You assert against the Debtors.

RESPONSE:

**Request No. 35.**    All Documents Concerning any Indirect Abuse Claim You assert or may assert against the Debtors, including, but not limited to, the value or amount of such Indirect Abuse Claim.

RESPONSE:

*[Remainder of page intentionally left blank]*

Dated: October 8, 2021
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
James I. Stang (CA Bar No. 94435) (admitted *pro hac vice*)
Iain A.W. Nasatir (CA Bar No. 148977) (admitted *pro hac vice*)
Kenneth H. Brown (CA Bar No. 100396) (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No. 271038) (admitted *pro hac vice*)
Steven W. Golden (DE No. LP 0127)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tele/Fax: (302) 652-4100 / (302) 652-4400
Email:        jstang@pszjlaw.com
              inasatir@pszjlaw.com
              kbrown@pszjlaw.com
              joneill@pszjlaw.com
              jlucas@pszjlaw.com
              sgolden@pszjlaw.com

            -and-

PASICH LLP

Jeffrey L. Schulman (NY Bar No. 3903697)
757 Third Avenue, 20th Floor
New York, New York 10017
Telephone:  (212) 686-5000
JSchulman@PasichLLP.com

            -and-

Kirk Pasich (CA Bar No. 94242)
10880 Wilshire Boulevard, Suite 2000
Los Angeles, California 90024
Telephone:  (424) 313-7850
KPasich@PasichLLP.com

*Counsel for the Tort Claimants' Committee*

# EXHIBIT C

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Re Docket Nos. 2618, 6438, 6443, 6445 |

## THE OFFICIAL COMMITTEE OF TORT CLAIMANTS
## TO BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC'S REQUESTS FOR
## THE PRODUCTION OF DOCUMENTS TO CENTURY INDEMNITY COMPANY,
## WESTCHESTER FIRE INSURANCE COMPANY, AND WESTCHESTER SURPLUS
## LINES INSURANCE COMPANY RELATED TO PLAN CONFIRMATION (FIRST SET)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable to these proceedings by Rules 9014, 7026, and 7034 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and pursuant to the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Official Committee of Tort Claimants to Boy Scouts of America and Delaware BSA, LLC (the "TCC"), by and through its undersigned counsel, hereby serve the following requests for production of documents (the "Requests for Production") on Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Westchester Fire Insurance Company, and Westchester Surplus Lines Insurance Company (collectively, "Century") in connection with the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6443] and any amendments, supplements or

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

modifications thereto (the "<u>Plan</u>") and any proceedings arising therefrom or related thereto in connection with the Debtors' chapter 11 cases.

Please produce the documents and the production media to the TCC by October 18, 2021.

## <u>DEFINITIONS</u>

For the purposes of these Requests for Production, the following Definitions shall apply:

1.      The terms "all," "any," and "each" shall each be construed as encompassing any and all. The singular shall include the plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive; and the term "including" means "including without limitation." The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense.

2.      Capitalized terms not otherwise defined herein shall have the same meanings set forth in the Plan.

3.      "<u>1996 Transaction</u>" shall mean (a) all transactions related to the 1995 plan for a partial re-arrangement of INA Financial Corporation (as referenced in the February 7, 1996, decision and order of the Insurance Commissioner of the Commonwealth of Pennsylvania in *In Re: Plan of Restructuring of INA Financial Corporation, et al.*); (b) all transactions relating to the February 7, 1996, decision and order of the Insurance Commissioner of the Commonwealth of Pennsylvania in *In Re: Plan of Restructuring of INA Financial Corporation, et al.*); and (c) all transactions relating to the January 28, 2011, amended order of the Insurance Commissioner of the Commonwealth of Pennsylvania in *In re: Application of ACE USA to Amend the Order of February 7, 1996 re the Plan of Restructuring of INA Financial Corporation, et al.*

4.      "<u>1999 Transaction</u>" shall mean ACE's 1999 acquisition of Cigna Corporation's international and domestic property and casualty business, INA.

2

5.     "<u>Abuse</u>" shall have the meaning provided in the Plan.

6.     "<u>Abuse Claim</u>" means a liquidated or unliquidated Claim against one or more Abuse Parties that is attributable to, arises from, is based upon, relates to, results from, or is otherwise Concerned with, in whole or in part, directly, indirectly, or derivatively, alleged Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based on misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory, including any theory based on public policy or any act or failure to act by an Abuse Party or any other Person for whom any Abuse Party is alleged to be responsible.   The term "Abuse Claim" includes Direct Abuse Claims and Indirect Abuse Claims.

7.     "<u>Abuse Claimant</u>" shall mean the party asserting an Abuse Claim and their attorneys, advisors, agents, representatives, and experts.

8.     "<u>Abuse Party</u>" means, individually and collectively, (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Chartered Organizations; (f) Insurance Companies; or (g) all of any of the foregoing's Persons' Representatives.

9.     "<u>ACE</u>" shall mean ACE Limited and its agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, predecessors and/or successors.

10.    "Bates White" means Bates White LLC, the Debtors' abuse claims consultant and advisor.

11.    "BSA Plan Settlement" means any settlement, whether incorporated into the Plan or presented for approval pursuant to Bankruptcy Rule 9019, between the Debtors and any other Entity (including, but not limited to, an Insurance Company, Chartered Organization, or Local Council), including, but not limited to, the Hartford Insurance Settlement and the TCJC Settlement.

12.    "Century" shall mean Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Ace Insurance Group, Westchester Fire Insurance Company, and Westchester Surplus Lines Insurance Company, and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, representatives, affiliates, subsidiaries, predecessors and/or successors.

13.    "Chapter 11 Cases" shall mean the above-captioned chapter 11 cases of Boy Scouts of America and Delaware BSA, LLC, pending before the United States Bankruptcy Court for the District of Delaware.

14.    "Chartered Organization" shall have the meaning provided in the Plan.

15.    "Chubb" shall mean Chubb Limited and its agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, predecessors and/or successors.

16.    "Claim" means any "claim," as defined in section 101(5) of the Bankruptcy Code.

17.    "Coalition" shall mean the Coalition of Abused Scouts for Justice, an ad hoc committee that filed a notice of appearance in the Chapter 11 Cases on July 24, 2020 at Docket

No. 1040, and its members, agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, representatives, affiliates, subsidiaries, predecessors and/or successors.

18.    "Communications" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, correspondence, memoranda, emails, facsimile transmissions, or other form of verbal, written, mechanical, or electronic disclosure, in Your actual or constructive control or custody or in the control or custody of any current or former affiliates, representatives or advisors.

19.    "Concerning" means relating to, evidencing, supporting, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, referencing, discussing, indicating, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

20.    "Confirmation Hearing" shall have the meaning provided in the Plan.

21.    "Debtors" means, collectively or individually, as context requires and to encompass responsive documents Boy Scouts of America and Delaware BSA, LLC, and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

22.    "Disclosure Statement" shall mean the *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6445], as such Document may be amended, supplemented, or modified from time to time.

23.    "Dividend Retention Fund" shall mean the "Fund" referenced in the 1996 Transaction.

DOCS_DE:235885.7 85353/002

24. "Documents" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all Documents and information in Your possession, custody, or control, and includes: all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda, transcripts, tapes, or other voice recordings, and all other Documents and tangible things, including booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, print-outs, and all other data, whether recorded by electronic or other means, and all drafts thereof. If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on any of the pages thereof, then each such non-identical copy is a separate Document and must be produced. When examples of categories or types of Documents are given in a particular Request for Production by use of phrases such as "including," this shall always be interpreted as being for illustrative purposes only (*i.e.*, to be understood as "including without limitation") and in no way limits or narrows the scope of any Request for Production. "Documents" always includes Communications, whether so stated in a particular Request for Production or not.

DOCS_DE:235885.7 85353/002

25.    "FCR" shall mean James L. Patton, Jr., the legal representative appointed by the Bankruptcy Court for holders of Future Abuse Claims, or any successor legal representative appointed by the Bankruptcy Court, and his agents, accountants, financial advisors, employees, experts, attorneys, representatives, affiliates, predecessors and/or successors.

26.    "GL87" shall mean the general liability reinsurance agreement between Century as the reinsurer and other ceding companies regarding losses from direct general liability policies issued prior to January 1, 1987.

27.    "Hartford" shall mean Hartford Accident and Indemnity Company, First State Insurance Company, and Twin City Fire Insurance Company, and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

28.    "Hartford Insurance Settlement" shall have the meaning provided in the Plan.

29.    "Hartford Insurance Settlement Agreement" shall have the meaning provided in the Plan.

30.    "INA" shall mean Insurance Company of North America.

31.    "INA Policies" shall mean all Insurance Policies sold by INA to the Debtors and/or any Local Council.

32.    "Insurance Company" shall have the meaning provided in the Plan.

33.    "Insurance Policy" shall have the meaning provided in the Plan, including all rights and benefits thereunder, and the proceeds thereof.

34.    "IV Files" shall mean any Documents that identify individuals associated with the Debtors accused of Abuse, including those records and files referred to as "ineligible volunteer" or "perversion" files.

35. "<u>Local Councils</u>" shall have the meaning provided in the Plan.

36. "<u>Motion</u>" shall mean the *Debtors' Motion for Entry of an Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation and Voting Procedures, (III) Approving Forms of Ballots, (IV) Approving Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief* [Docket No. 2295], as such Document may be amended, supplemented, or modified from time to time.

37. "<u>Petition Date</u>" shall mean February 18, 2020.

38. "<u>Plan</u>" shall mean the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6443], as such Document may be amended, supplemented, or modified from time to time.

39. "<u>Prepetition</u>" shall mean occurring prior to the Petition Date.

40. "<u>Scouting Unit</u>" means an entity that conducts scouting for a Chartered Organization, including but not limited to a pack, den, troop, Sea Explorers, Air Explorers, Learning for Life, Explorers, Venturing, crew, ship, chapter, and any associations that were predecessor associations of the foregoing.

41. "<u>Settlement</u>" shall mean any Prepetition settlement or other resolution of an Abuse Claim.

42. "<u>Settlement Trust</u>" shall have the meaning provided in the Plan.

43. "<u>Survivor</u>" means a survivor of Abuse in scouting, including Abuse Claimants.

44. "<u>TCJC Settlement</u>" shall have the meaning provided in the Plan.

DOCS_DE:235885.7 85353/002

45.     "<u>Type of Abuse Categories</u>" shall mean the following categories of Abuse: (a) penetration; (b) oral sex; (c) masturbation; (d) fondling/groping; (e) touching – bare skin; (f) touching – over the clothes; (g) non-touching; and (h) other aggravating factors.

46.     "<u>Verdict</u>" shall mean any Prepetition verdict, judgment, award or decision of a court, arbitrator, mediator or similar tribunal Concerning an Abuse Claim.

47.     "<u>XOL Agreement</u>" shall mean the aggregate excess of loss agreement referenced in the 1996 Transaction.

48.     "<u>You</u>" or "<u>Your</u>" and variants thereof mean Century.

## INSTRUCTIONS

The preceding Definitions apply to each of these Instructions, and for purposes of these Requests for Production, the following Instructions shall be followed:

1.     Civil Rule 34, made applicable to this proceeding pursuant to Bankruptcy Rules 7034 and 9014(c), is hereby incorporated by reference and applies to each of the following instructions.

2.     All responses shall comply with the requirements of the Civil Rules, the Bankruptcy Rules, and the Local Rules.

3.     Unless otherwise stated in a specific Request for Production herein, the relevant time period shall be from the respective inception of each of the Debtors to the present.

4.     These Requests for Production shall be deemed continuing in nature.  In the event You become aware of or acquire additional information relating or referring to any of the following Requests for Production, such additional information is to be promptly produced.

5.     Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of

current or former employees, officers, directors, agents, agents' representatives, consultants, contractors, vendors, or any fiduciary or other third parties, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, local area networks, application-based communications services (including, without limitation, Facebook Messenger, Instant Bloomberg, WeChat, Skype, KakaoTalk, WhatsApp, Signal, iMessage, etc.), web-based file hosting services (including, without limitation, Dropbox, Box, Apple iCloud, Google Drive, Hightail, etc.), or web-based email systems such as Gmail, Yahoo, etc.

6.      You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf. You must produce all such Documents even if they were deleted or in draft form.  Without limitation, hardware where such data may be stored includes:  servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile storage devices, such as thumb or external hard drives.  Electronically stored Documents include any computerized data or content stored on electromagnetic media.  Without limitation, types of electronically stored Documents include email, voicemail, instant messages, intranet and internet system data, telephone and cellular telephone calling records, data compilations, spreadsheets, word processing Documents, images, databases, digital photocopier memory, and any other information stored in memory storage devices.

7.      Produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document requested together with all non-identical copies and drafts of that Document.  If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

8.     Documents not otherwise responsive to these Requests for Production should be produced:  (a) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are called for by these Requests for Production; (b) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests for Production; or (c) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

9.     Documents attached to each other should not be separated; separate Documents should not be attached to each other.

10.     Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

11.     If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request for Production or part thereof, for each such Document, You must:

   a.     Identify the type, title and subject matter of the Document;

   b.     State the place, date, and manner of preparation of the Document;

   c.     Identify all authors, addressees, and recipients of the Document, including information about such persons to assess the privilege asserted; and

   d.     Identify the legal privilege(s) and the factual basis for the claim.

12.     Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine.  In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 11 above must be provided.

DOCS_DE:235885.7 85353/002

13.     To the extent a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it: (a) is missing or lost; (b) has been destroyed; (c) has been transferred to others; and/or (d) has been otherwise disposed of. In each instance, identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, identify each person having knowledge of the circumstances of the disposition, and identify each person who had possession, custody, or control of the Document. Documents prepared prior to, but which relate or refer to, the time period covered by these Requests for Production are to be identified and produced.

14.     If any part of the following Requests for Production cannot be responded to in full, please respond to the extent possible, specifying the reason(s) for Your inability to respond to the remainder and stating whatever information or knowledge You have Concerning the portion to which You do not respond.

15.     If You object to any of these Requests for Production, state in writing with specificity the grounds of Your objections. Any ground not stated shall be waived. If You object to a particular portion of any Request for Production, You shall respond to any other portions of such Request for Production as to which there is no objection and state with specificity the grounds of the objection.

16.     The fact that an investigation is continuing or that discovery is incomplete shall not be a justification for failing to respond to these Requests for Production based on the knowledge or information that You possess at the time You respond to these Requests for Production. If an investigation is continuing or discovery is not complete with respect to the matter inquired into by any Request for Production, so state in Your response to that Request for Production.

DOCS_DE:235885.7 85353/002

17.     If the identity of Documents responding to a Request for Production is not known, then that lack of knowledge must be specifically indicated in the response.  If any information requested is not in Your possession, but is known or believed to be in the possession of another person or entity, then identify that person or entity and state the basis of Your belief or knowledge that the requested information is in such person's or entity's possession.

## MANNER OF PRODUCTION

1.     All Documents produced to the TCC shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files and accompanied by true and correct copies or representations of unaltered attendant metadata.  Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents.  Searchable text of Documents shall not be produced as fielded data withint the ".dat file" as described below.

2.     <u>Database Load Files and Production Media Structure</u>:  Database load files shall consist of: (a) a comma-delimited values ("dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (b) an Opticon (".opt") file to facilitate the loading of tiff images.  Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably

structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.

3.     <u>Electronic Documents and Data, Generally</u>:  Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text as to allow the TCC, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Documents' true and original content.

4.     <u>Emails and Attachments, and Other Email Account-Related Documents</u>:  All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the TCC.

5.     <u>Documents and Data Created or Stored in or by Structured Electronic Databases</u>: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the TCC to reasonably manage and import those Documents into a useable, coherent database.  Documents must be accompanied by reasonably detailed documentation explaining the Documents' content and format including but not limited to data dictionaries and diagrams.  Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

a. XML format file(s);

b. Microsoft SQL database(s);

c. Access database(s); and/or

d. fixed or variable length ASCII delimited files.

6. <u>Spreadsheets, Multimedia, and Non-Standard File Types</u>: All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet, database and/or statistical programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent You have other file types that do not readily or easily and accurately convert to tiff and searchable text, You may elect to produce those files in native format subject to the other requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

7. <u>"Other" Electronic Documents</u>: All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8. <u>Paper Documents</u>: Documents originally created or stored on paper shall be produced in tiff format. Relationships between Documents shall be identified within the .dat file utilizing document identifier numbers to express parent Document/child attachment boundaries,

folder boundaries, and other groupings. In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these Requests for Production.

## DOCUMENT REQUESTS

**Request No. 1.** All Documents that You or anyone acting on Your behalf prepared, authored, sent, or received Concerning the Motion, the Plan, the Disclosure Statement, the Hartford Insurance Settlement, or any actual or proposed settlements of Your coverage obligations to the Debtors, including any drafts thereof, including, but not limited to, all such Documents prepared, authored, sent, or received by the Debtors, the FCR, and the Coalition.

RESPONSE:

**Request No. 2.** All Documents that You or anyone acting on Your behalf prepared, authored, sent, or received that interpret, refer to, relate to, or otherwise Concern insurance coverage for any Abuse Claim.

RESPONSE:

**Request No. 3.** All Documents that evidence, interpret, refer to, relate to, or otherwise Concern the liabilities assumed by Century in connection with the 1996 Transaction.

RESPONSE:

**Request No. 4.** All exhibits referenced in the Insurance Commissioner of the Commonwealth of Pennsylvania's February 7, 1996, Order in *In re Plan of Restructuring of INA Financial Corporation, Bankers Standard Insurance Company, et al.*

RESPONSE:

**Request No. 5.** All Documents that You or anyone acting on Your behalf prepared, authored, sent, or received that interpret, refer to, relate to, or otherwise Concern the 1996

Transaction, including, but not limited to, Communications with the Pennsylvania Insurance Department.

      RESPONSE:

**Request No. 6.**      All Documents that evidence, interpret, refer to, relate to, or otherwise Concern the liabilities assumed by ACE in connection with the 1999 Transaction.

      RESPONSE:

**Request No. 7.**      All Documents that You or anyone acting on Your behalf prepared, authored, sent, or received that interpret, refer to, relate to, or otherwise Concern the 1999 Transaction, including, but not limited to, Communications with the Pennsylvania Insurance Department.

      RESPONSE:

**Request No. 8.**      All Documents that provide a factual basis for Your contention of, or otherwise constitute, evidence, refer to, relate to, or otherwise Concern, the liability or potential liability of any insurer under the INA Policies.

      RESPONSE:

**Request No. 9.**      All Documents that provide a factual basis for Your contention of, or otherwise constitute, evidence, refer to, relate to, or otherwise Concern, the liability or potential liability of any insurer identified in response to Request No. 8.

      RESPONSE:

**Request No. 10.**      All Documents that evidence, refer to, relate to, or otherwise Concern reinsurance for the INA Policies and/or under any other Insurance Policies.

      RESPONSE:

DOCS_DE:235885.7 85353/002

**Request No. 11.**     Documents sufficient to show all liabilities that You have Concerning each Insurance Policy that the Debtors are proposing to contribute to the Settlement Trust under the Plan.

RESPONSE:

**Request No. 12.**     All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern Your financial ability to satisfy its obligations under any Insurance Policies.

RESPONSE:

**Request No. 13.**     All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern Chubb's obligation to indemnify any liabilities arising under the INA Policies.

RESPONSE:

**Request No. 14.**     All Documents that provide a factual basis for Your contention that liabilities arising under the INA Policies cannot or may not be paid in full.

RESPONSE:

**Request No. 15.**     If You contend that anything in the Plan or Settlement Trust will, if the Plan is confirmed, impact Your rights or obligations (including without limitation inter-insurer contribution claims), all Documents that provide a factual basis for Your contention.

RESPONSE:

**Request No. 16.**     If You contend that the Debtors have not complied with any contractual conditions or obligations under any Insurance Policy in connection with any Abuse Claim, all Documents that provide a factual basis for Your contention.

RESPONSE:

**Request No. 17.**     All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any Abuse Claims where You paid or agreed to pay defense costs and/or make

an indemnity payment on behalf of Debtors or any other insureds, including, but not limited to, Documents that Identify the Insurance Policy, the name of the claimant, the Type of Abuse Categories, the amount paid for such claim, and whether the amount paid was for defense and/or indemnity.

RESPONSE:

**Request No. 18.** All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any Abuse Claims where You denied or reserved rights with respect to coverage, including, but not limited to, Documents that identify the Insurance Policy, the case caption for the claim You denied or otherwise reserved rights, the name of the claimant, and the monetary amount alleged in such claim.

RESPONSE:

**Request No. 19.** Documents sufficient to Identify (i) each Settlement of an Abuse Claim; (ii) each Verdict in favor of an Abuse Claimant; and (iii) each Verdict in favor of the Defense Concerning an Abuse Claim, including the following information with respect to each such Settlement and Verdict:

a.  Your claim file and all Communications Concerning each such Abuse Claim;

b.  All complaints or statements of claim associated with each Settlement and Verdict, including the filing date of the action, causes of action asserted, any consolidated action, jurisdiction, and plaintiff's counsel;

c.  The stage of the proceeding at the time of the Settlement or Verdict;

d.  Amount of Settlement of the Abuse Claim or award pursuant or subject to the Verdict, including total Settlement or award amount, all sub-components of economic and non-

economic Settlement or award amounts, and apportionment or allocation of Settlement or award amounts among each defendant or party against which the Abuse Claim was asserted;

e.      With respect to a Verdict in favor of the Defense Concerning an Abuse Claim, amount of Abuse Claim subject to the Verdict, including total alleged amount of Abuse Claim and all alleged sub-components of economic and non-economic amount of Abuse Claim

f.      Roster(s) of Scouting Units associated with the Abuse Claim;

g.      Information which would be responsive to any and all questions contained in Parts 2 – 6 of the "Sexual Abuse Survivor Proof of Claim" form, not limited to but including the following:

i.      Type(s) of Abuse at issue in the Abuse Claim, utilizing the Type of Abuse Categories or specifically describing the type of Abuse if not specifically delineated therein;

ii.     Number of instances of Abuse at issue in the Abuse Claim;

iii.    Year(s) of occurrence of Abuse at issue in the Abuse Claim;

iv.     Age of Abuse Claimant at time of Abuse at issue in the Abuse Claim;

v.      Identity of each defendant or party against which the Abuse Claim was asserted, including the alleged Perpetrator, Local Council, and/or Chartered Organization, as applicable;

vi.     State, city, and county in which each instance of Abuse at issue in the Abuse Claim occurred; and

vii.    Any other information or data collected, compiled, or maintained by You in connection with the Abuse Claim, including information with respect to the Abuse

Claimant, the alleged Perpetrator, their respective backgrounds or histories related or relevant to the Abuse allegations, and Your knowledge of the same.

h.       The number of accusations (aside from the Abuse Claim at issue) brought against the accused Perpetrator;

i.       The date of the Settlement or Verdict and any payments made in connection therewith;

j.       If the defense of the Abuse Claim was covered by an Insurance Policy, the identity of the Insurance Policy (including a copy thereof) and Insurance Company;

k.       Identity of source(s) of payment of Settlement or Verdict amount, including if the Settlement or Verdict was paid in whole or in part from proceeds of an Insurance Policy, the identity of the Insurance Policy and Insurance Company;

l.       Copies of any agreements between You and the Debtors Concerning coverage for the Settlement of any Abuse Claims and all drafts thereof and Documents relating thereto including, but not limited to, the consent (or lack thereof) of other insureds to enter into any such agreements or Settlements; and

m.       Copies of documentation of the Settlement or Verdict, including any court order approving same.

RESPONSE:

**Request No. 20.**       All Documents Concerning an Abuse Claim that is not otherwise covered by Request No. 19, including the following information with respect to each such Abuse Claim:

a.       Your claim file and all Documents Concerning each such Abuse Claim;

b.       Any complaints or statements of claim associated with each Abuse Claim,

including the filing date of the action, causes of action asserted, any consolidated action, jurisdiction, and plaintiff's counsel;

        c.      Amount of the Abuse Claim, including total amount of the Abuse Claim, all sub-components of economic and non-economic amount of Abuse Claim, and apportionment or allocation of amounts among each defendant or party against which the Abuse Claim was asserted

        d.      Roster(s) of Scouting Units associated with the Abuse Claim;

        e.      Information which would be responsive to any and all questions contained in Parts 2 – 6 of the "Sexual Abuse Survivor Proof of Claim" form, not limited to but including the following:

        i.      Type(s) of Abuse at issue in the Abuse Claim, utilizing the Type of Abuse Categories or specifically describing the type of Abuse if not specifically delineated therein;

        ii.      Number of instances of Abuse at issue in the Abuse Claim;

        iii.      Year(s) of occurrence of Abuse at issue in the Abuse Claim;

        iv.      Age of Abuse Claimant at time of Abuse at issue in the Abuse Claim;

        v.      Identity of each defendant or party against which the Abuse Claim is asserted, including the alleged Perpetrator, Local Council, and/or Chartered Organization, as applicable;

        vi.      State, city, and county in which each instance of Abuse at issue in the Abuse Claim occurred; and

        vii.      Any other information or data collected, compiled or maintained by You in connection with the Abuse Claim, including information with respect to the Abuse Claimant, the alleged Perpetrator, their respective backgrounds or histories related or relevant to

the Abuse allegations, and Your knowledge of the same.

    f.  The number of accusations (aside from the Abuse Claim at issue) brought against the accused Perpetrator;

    g.  If the defense of the Abuse Claim was covered by an Insurance Policy, the identity of the Insurance Policy and Insurance Company;

    h.  Any payments made in connection with the Abuse Claim, and the amounts sources and dates of any such payments;

    i.  Copies of any agreements between You and the Debtors Concerning coverage for the Settlement of any Abuse Claims and all drafts thereof and Documents relating thereto including, but not limited to, the consent (or lack thereof) of other insureds to enter into any such agreements or Settlements; and

    j.  Copies of documentation of the Abuse Claim.

   RESPONSE:

  **Request No. 21.**  The most recent loss run for each Insurance Policy You sold to the Debtors.

    RESPONSE:

  **Request No. 22.**  All IV Files and all Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any IV Files.

    RESPONSE:

  **Request No. 23.**  All Documents prepared by the Debtors or Bates White Concerning Abuse Claims provided to You.

    RESPONSE:

  **Request No. 24.**  All Documents Concerning Abuse Claims provided by You to the

Debtors or Bates White.

RESPONSE:

**Request No. 25.** All Documents, including expert reports, provided to You from the Debtors or Abuse Claimants Concerning Abuse Claims that assert or ascribe a value to an Abuse Claim.

RESPONSE:

**Request No. 26.** All Documents, including analyses prepared by the Debtors, You, or anyone at the Debtors' or Your behalf, Concerning any estimate or approximation of the number of Perpetrators and/or the number of Survivors.

RESPONSE:

**Request No. 27.** All Documents that constitute, evidence, refer to, relate to, or otherwise Concern any Communication between You and any reinsurer Concerning any Abuse Claim.

RESPONSE:

**Request No. 28.** All Documents that constitute, evidence, refer to, relate to, or otherwise Concern any reserve that You contemplated, established, set, maintained and/or changed Concerning the Abuse Claims.

RESPONSE:

**Request No. 29.** All Documents that constitute, evidence, refer to, relate to, or otherwise Concern financial contributions to You since 2011 by Chubb, INA Holdings, and/or Brandywine Holdings, including the date and amount of any such contribution.

RESPONSE:

DOCS_DE:235885.7 85353/002

**Request No. 30.** All Documents that constitute, evidence, refer to, relate to, or otherwise Concern, on an annual basis, each capital contribution paid by You and received by You.

RESPONSE:

**Request No. 31.** All Documents that constitute, evidence, refer to, relate to, or otherwise Concern each payment, whether made by You or to You, under the GL87.

RESPONSE:

**Request No. 32.** All Documents that constitute, evidence, refer to, relate to, or otherwise Concern an Insurance Policy that provides or potentially provides coverage for Abuse Claims.

RESPONSE:

**Request No. 33.** All Documents prepared, authored, sent or received by You Concerning the 1996 Transaction.

RESPONSE:

**Request No. 34.** All Documents that constitute, evidence, refer to, relate to, or otherwise Concern Your most recent NAIC triennial examination.

RESPONSE:

**Request No. 35.** All Documents You intend to rely on at the Confirmation Hearing or in connection with the estimation or valuation of Abuse Claims.

RESPONSE:

**Request No. 36.** All Documents that constitute, evidence, refer to, relate to, or otherwise Concern any tax sharing or tax allocation agreements to which You are a party or is included, either directly or indirectly, or that impact Your tax liabilities.

RESPONSE:

**Request No. 37.**        All Documents that constitute, evidence, refer to, relate to, or otherwise Concern funds You have received by operation of any tax sharing or tax allocation agreement.

        RESPONSE:

**Request No. 38.**        All Documents that constitute, evidence, refer to, relate to, or otherwise Concern payments received by You in the Dividend Retention Fund.

        RESPONSE:

**Request No. 39.**        All Documents that constitute, evidence, refer to, relate to, or otherwise Concern the original transferor, including but not limited to Chubb, and any subsequent transferors of any payments to the Dividend Retention Fund held by You.

        RESPONSE:

**Request No. 40.**        Documents sufficient to show all dividend payments made by INA Holdings Corporation to INA Financial Corporation from the 1999 Transaction to the present, including (a) the dates of all such payments; (b) the amounts of all such payments; and (c) the total amount of such payments made since the 1999 Transaction.

        RESPONSE:

**Request No. 41.**        Documents sufficient to show all dividend payments made by INA Financial Corporation to INA Corporation from the 1999 Transaction to the present, including (a) the dates of all such payments; (b) the amounts of all such payments; and (c) the total amount of such payments made since the 1999 Transaction.

        RESPONSE:

**Request No. 42.** All Documents that constitute, evidence, refer to, relate to, or otherwise Concern any BSA Plan Settlement.

RESPONSE:

**Request No. 43.** All Documents, including, without limitation claims-handling manuals, guidelines, policies, practices, directives, and procedures, that Concern Your handling, processing, adjusting, review, investigation, evaluation, acceptance, denial, reservation of rights, or other response to sexual abuse claims, including the Abuse Claims, under any Insurance Policy.

RESPONSE:

**Request No. 44.** All Documents Concerning Your policies, practices, and procedures that Concern valuing or evaluating sexual abuse claims, including Abuse Claims, that were filed after the expiration of any applicable statute of limitations or were filed in jurisdictions where the statute of limitations with respect to sexual abuse claims may change, including, without limitation, any policies, procedures, or practices that prohibit settling or otherwise resolving such sexual-abuse claims.

RESPONSE:

**Request No. 45.** All minutes of or other written documentation relating to every meeting of Your board of directors or managers, any committee or subcommittee thereof, any task force or working group thereof, or any of Your other executive task forces or working groups, during which there was discussion of the Debtors, the Insurance Policies sold by You to the Debtors, Abuse Claims, or the Debtors' claims for insurance coverage under Insurance Policies (whether or not regarding the Abuse Claims), including without limitation, insurance coverage for

such claims, including but not limited to handouts, agendas, attachments, and notes made by participants.

RESPONSE:

**Request No. 46.**     All Documents Concerning the validity and amount of the Claims You assert against the Debtors, including all Claims described in the Proofs of Claim bearing the numbers 856, 982, 989, 6642, 8843, and 8781.

RESPONSE:

**Request No. 47.**     Copies of all letters of credit posted as security for the Claims You assert against the Debtors in the Proofs of Claim bearing numbers 856, 982, 989, 6642, 8843, and 8781.

RESPONSE:

**Request No. 48.**     Documents Concerning any draws on the letters of credit or forms of security posted by the Debtors.

RESPONSE:

**Request No. 49.**     Documents Concerning the priority of the Claims You assert against the Debtors.

RESPONSE:

**Request No. 50.**     All Documents Concerning any Indirect Abuse Claim You assert or may assert against the Debtors, including, but not limited to, the value or amount of such Indirect Abuse Claim.

RESPONSE:

Dated: October 8, 2021
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
James I. Stang (CA Bar No. 94435) (admitted *pro hac vice*)
Iain A.W. Nasatir (CA Bar No. 148977) (admitted *pro hac vice*)
Kenneth H. Brown (CA Bar No. 100396) (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No. 271038) (admitted *pro hac vice*)
Steven W. Golden (DE No. LP 0127)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tele/Fax: (302) 652-4100 / (302) 652-4400
Email:          jstang@pszjlaw.com
                inasatir@pszjlaw.com
                kbrown@pszjlaw.com
                joneill@pszjlaw.com
                jlucas@pszjlaw.com
                sgolden@pszjlaw.com

              -and-

PASICH LLP

Jeffrey L. Schulman (NY Bar No. 3903697)
757 Third Avenue, 20th Floor
New York, New York 10017
Telephone: (212) 686-5000
JSchulman@PasichLLP.com

              -and-

Kirk Pasich (CA Bar No. 94242)
10880 Wilshire Boulevard, Suite 2000
Los Angeles, California 90024
Telephone: (424) 313-7850
KPasich@PasichLLP.com

*Counsel for the Tort Claimants' Committee*

# **<u>EXHIBIT D</u>**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Re Docket Nos. 2618, 6438, 6443, 6445 |

### THE OFFICIAL COMMITTEE OF
### TORT CLAIMANTS TO BOY SCOUTS OF AMERICA AND DELAWARE
### BSA, LLC'S REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO
### CHUBB LIMITED, CHUBB GROUP HOLDINGS INC., AND THE CHUBB
### SUBSIDIARY INSURERS RELATED TO PLAN CONFIRMATION (FIRST SET)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Civil Rules"),

made applicable to these proceedings by Rules 9014, 7026, and 7034 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and pursuant to the Local Rules of Bankruptcy

Practice and Procedure of the United States Bankruptcy Court for the District of Delaware

(the "Local Rules"), the Official Committee of Tort Claimants to Boy Scouts of America and

Delaware BSA, LLC (the "TCC"), by and through its undersigned counsel, hereby serve the

following requests for production of documents (the "Requests for Production") on Chubb

Limited; Chubb Group Holdings Inc.; and the Chubb Subsidiary Insurers (as defined below)

(collectively "Chubb") in connection with the *Modified Fifth Amended Chapter 11 Plan of

Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6443], and any

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

amendments, supplements or modifications thereto (the "Plan") and any proceedings arising therefrom or related thereto in connection with the Debtors' chapter 11 cases.

Please produce the documents and the production media to the TCC by October 18, 2021.

## DEFINITIONS

For the purposes of these Requests for Production, the following Definitions shall apply:

1.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.  The singular shall include the plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive; and the term "including" means "including without limitation."  The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense.

2.      Capitalized terms not otherwise defined herein shall have the same meanings set forth in the Plan.

3.      "1996 Transaction" shall mean (a) all transactions related to the 1995 plan for a partial re-arrangement of INA Financial Corporation (as referenced in the February 7, 1996, decision and order of the Insurance Commissioner of the Commonwealth of Pennsylvania in *In Re: Plan of Restructuring of INA Financial Corporation, et al.*); (b) all transactions relating to the February 7, 1996, decision and order of the Insurance Commissioner of the Commonwealth of Pennsylvania in *In Re: Plan of Restructuring of INA Financial Corporation, et al.*); and (c) all transactions relating to the January 28, 2011, amended order of the Insurance Commissioner of the Commonwealth of Pennsylvania in *In re: Application of ACE USA to Amend the Order of February 7, 1996 re the Plan of Restructuring of INA Financial Corporation, et al.*

4.      "Abuse" shall have the meaning provided in the Plan.

DOCS_DE:236357.3 85353/002

5. "<u>Abuse Claim</u>" means a liquidated or unliquidated Claim against one or more Abuse Parties that is attributable to, arises from, is based upon, relates to, results from, or is otherwise Concerned with, in whole or in part, directly, indirectly, or derivatively, alleged Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based on misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory, including any theory based on public policy or any act or failure to act by an Abuse Party or any other Person for whom any Abuse Party is alleged to be responsible. The term "Abuse Claim" includes Direct Abuse Claims and Indirect Abuse Claims.

6. "<u>Abuse Claimant</u>" shall mean the party asserting an Abuse Claim and their attorneys, advisors, agents, representatives, and experts.

7. "<u>Abuse Party</u>" means, individually and collectively, (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Chartered Organizations; (f) Insurance Companies; or (g) all of any of the foregoing's Persons' Representatives.

8. "<u>Bates White</u>" means Bates White LLC, the Debtors' abuse claims consultant and advisor.

9. "<u>BSA Plan Settlement</u>" means any settlement, whether incorporated into the Plan or presented for approval pursuant to Bankruptcy Rule 9019, between the Debtors and any other

Entity (including, but not limited to, an Insurance Company, Chartered Organization, or Local Council), including, but not limited to, the Hartford Insurance Settlement and the TCJC Settlement.

10.     "Century" shall mean Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Ace Insurance Group, Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company, individually and collectively, and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, representatives, affiliates, subsidiaries, predecessors, and/or successors.

11.     "Chapter 11 Cases" shall mean the above-captioned chapter 11 cases of Boy Scouts of America and Delaware BSA, LLC, pending before the United States Bankruptcy Court for the District of Delaware.

12.     "Chartered Organization" shall have the meaning provided in the Plan.

13.     "Chubb" means Chubb Limited and Chubb Group Holdings Inc., individually and collectively, and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, representatives, affiliates, subsidiaries, predecessors, and/or successors, including, but not limited to, the Chubb Subsidiary Insurers.

14.     "Chubb Subsidiary Insurers" means, individually and collectively, Federal Insurance Company; International Insurance Company; U.S. Fire Insurance Company; Pacific Employers Insurance Company; Chubb Custom Insurance Company; Industrial Insurance Company of Hawaii; Industrial Indemnity; California Union Insurance Company; Texas Pacific Indemnity Company; Indemnity Insurance Company of North America; Westchester Fire Insurance Company; and Westchester Surplus Lines Insurance Company; and each of their agents,

4

accountants, financial advisors, employees, experts, attorneys, officers, directors, representatives, affiliates, subsidiaries, predecessors, and/or successors.

15.     "Claim" means any "claim," as defined in section 101(5) of the Bankruptcy Code.

16.     "Coalition" shall mean the Coalition of Abused Scouts for Justice, an ad hoc committee that filed a notice of appearance in the Chapter 11 Cases on July 24, 2020 at Docket No. 1040, and its members, agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, representatives, affiliates, subsidiaries, predecessors and/or successors.

17.     "Communications" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, correspondence, memoranda, emails, facsimile transmissions, or other form of verbal, written, mechanical, or electronic disclosure, in Your actual or constructive control or custody or in the control or custody of any current or former affiliates, representatives or advisors.

18.     "Concerning" means relating to, evidencing, supporting, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, referencing, discussing, indicating, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

19.     "Confirmation Hearing" shall have the meaning provided in the Plan.

20.     "Debtors" means, collectively or individually, as context requires and to encompass responsive documents Boy Scouts of America and Delaware BSA, LLC, and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

21.     "Disclosure Statement" shall mean the *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and*

*Delaware BSA, LLC* [Docket No. 6445], as such Document may be amended, supplemented, or modified from time to time.

22.     "<u>Dividend Retention Fund</u>" shall mean the "Fund" referenced in the 1996 Transaction.

23.     "<u>Documents</u>" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all Documents and information in Your possession, custody, or control, and includes: all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda, transcripts, tapes, or other voice recordings, and all other Documents and tangible things, including booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, print-outs, and all other data, whether recorded by electronic or other means, and all drafts thereof.  If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on any of the pages thereof, then each such non-identical copy is a separate Document and must be produced.  When examples of categories or types of Documents are given in a particular Request for Production by use of phrases such as "including," this shall always be

interpreted as being for illustrative purposes only (*i.e.*, to be understood as "including without limitation") and in no way limits or narrows the scope of any Request for Production. "Documents" always includes Communications, whether so stated in a particular Request for Production or not.

24. "FCR" shall mean James L. Patton, Jr., the legal representative appointed by the Bankruptcy Court for holders of Future Abuse Claims, or any successor legal representative appointed by the Bankruptcy Court, and his agents, accountants, financial advisors, employees, experts, attorneys, representatives, affiliates, predecessors and/or successors.

25. "Hartford Insurance Settlement" shall have the meaning provided in the Plan.

26. "Identify" when referring to a person means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this definition, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person. When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s).

27. "INA" shall mean Insurance Company of North America and its agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors, and/or successors.

28. "INA Policies" shall mean all Insurance Policies sold by INA to the Debtors and/or any Local Council.

29. "Insurance Company" shall have the meaning provided in the Plan.

30.     "Insurance Policy" shall have the meaning provided in the Plan, including all rights and benefits thereunder, and the proceeds thereof.

31.     "IV Files" shall mean any Documents that identify individuals associated with the Debtors accused of Abuse, including those records and files referred to as "ineligible volunteer" or "perversion" files.

32.     "Local Councils" shall have the meaning provided in the Plan.

33.     "Motion" shall mean the *Debtors' Motion for Entry of an Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation and Voting Procedures, (III) Approving Forms of Ballots, (IV) Approving Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief* [Docket No. 2295], as such Document may be amended, supplemented, or modified from time to time.

34.     "Non-Abuse Claims" shall have the meaning provided in the Plan.

35.     "Perpetrator" shall have the meaning provided in the Plan.

36.     "Petition Date" shall mean February 18, 2020.

37.     "Plan" shall mean the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6443], as such Document may be amended, supplemented, or modified from time to time.

38.     "Prepetition" shall mean occurring prior to the Petition Date.

39.     "Scouting Unit" means an entity that conducts scouting for a Chartered Organization, including but not limited to a pack, den, troop, Sea Explorers, Air Explorers, Learning for Life, Explorers, Venturing, crew, ship, chapter, and any associations that were predecessor associations of the foregoing.

DOCS_DE:236357.3 85353/002

40. "<u>Settlement</u>" shall mean any Prepetition settlement or other resolution of an Abuse Claim.

41. "<u>Settlement Trust</u>" shall have the meaning provided in the Plan.

42. "<u>Survivor</u>" means a survivor of Abuse in scouting, including Abuse Claimants.

43. "<u>TCJC Settlement</u>" shall have the meaning provided in the Plan.

44. "<u>Type of Abuse Categories</u>" shall mean the following categories of Abuse: (a) penetration; (b) oral sex; (c) masturbation; (d) fondling/groping; (e) touching – bare skin; (f) touching – over the clothes; (g) non-touching; and (h) other aggravating factors.

45. "<u>Verdict</u>" shall mean any Prepetition verdict, judgment, award or decision of a court, arbitrator, mediator or similar tribunal Concerning an Abuse Claim.

46. "<u>You</u>" or "<u>Your</u>" and variants thereof mean Chubb.

## INSTRUCTIONS

The preceding Definitions apply to each of these Instructions, and for purposes of these Requests for Production, the following Instructions shall be followed:

1. Civil Rule 34, made applicable to this proceeding pursuant to Bankruptcy Rules 7034 and 9014(c), is hereby incorporated by reference and applies to each of the following instructions.

2. All responses shall comply with the requirements of the Civil Rules, the Bankruptcy Rules, the Local Rules, and any Court Order.

3. Unless otherwise stated in a specific Request for Production herein, the relevant time period shall be from the respective inception of each of the Debtors to the present.

DOCS_DE:236357.3 85353/002

4.	These Requests for Production shall be deemed continuing in nature.  In the event You become aware of or acquire additional information relating or referring to any of the following Requests for Production, such additional information is to be promptly produced.

5.	Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of current or former employees, officers, directors, agents, agents' representatives, consultants, contractors, vendors, or any fiduciary or other third parties, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, local area networks, application-based communications services (including, without limitation, Facebook Messenger, Instant Bloomberg, WeChat, Skype, KakaoTalk, WhatsApp, Signal, iMessage, etc.), web-based file hosting services (including, without limitation, Dropbox, Box, Apple iCloud, Google Drive, Hightail, etc.), or web-based email systems such as Gmail, Yahoo, etc.

6.	You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf. You must produce all such Documents even if they were deleted or in draft form.  Without limitation, hardware where such data may be stored includes:  servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile storage devices, such as thumb or external hard drives.  Electronically stored Documents include any computerized data or content stored on electromagnetic media.  Without limitation, types of electronically stored Documents include email, voicemail, instant messages, intranet and internet system data, telephone and cellular telephone calling records, data

10

compilations, spreadsheets, word processing Documents, images, databases, digital photocopier memory, and any other information stored in memory storage devices.

7.     Produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document requested together with all non-identical copies and drafts of that Document.  If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

8.     Documents not otherwise responsive to these Requests for Production should be produced:  (a) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are called for by these Requests for Production; (b) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests for Production; or (c) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

9.     Documents attached to each other should not be separated; separate Documents should not be attached to each other.

10.     Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

11.     If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request for Production or part thereof, for each such Document, You must:

       a.     Identify the type, title and subject matter of the Document;

       b.     State the place, date, and manner of preparation of the Document;

c.       Identify all authors, addressees, and recipients of the Document, including information about such persons to assess the privilege asserted; and

d.       Identify the legal privilege(s) and the factual basis for the claim.

12.      Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine.  In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 11 above must be provided.

13.      To the extent a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it:  (a) is missing or lost; (b) has been destroyed; (c) has been transferred to others; and/or (d) has been otherwise disposed of.  In each instance, identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, identify each person having knowledge of the circumstances of the disposition, and identify each person who had possession, custody, or control of the Document.  Documents prepared prior to, but which relate or refer to, the time period covered by these Requests for Production are to be identified and produced.

14.      If any part of the following Requests for Production cannot be responded to in full, please respond to the extent possible, specifying the reason(s) for Your inability to respond to the remainder and stating whatever information or knowledge You have Concerning the portion to which You do not respond.

15.      If You object to any of these Requests for Production, state in writing with specificity the grounds of Your objections.  Any ground not stated shall be waived.  If You object to a particular portion of any Request for Production, You shall respond to any other portions of

DOCS_DE:236357.3 85353/002

such Request for Production as to which there is no objection and state with specificity the grounds of the objection.

16. The fact that an investigation is continuing or that discovery is incomplete shall not be a justification for failing to respond to these Requests for Production based on the knowledge or information that You possess at the time You respond to these Requests for Production. If an investigation is continuing or discovery is not complete with respect to the matter inquired into by any Request for Production, so state in Your response to that Request for Production.

17. If the identity of Documents responding to a Request for Production is not known, then that lack of knowledge must be specifically indicated in the response. If any information requested is not in Your possession, but is known or believed to be in the possession of another person or entity, then identify that person or entity and state the basis of Your belief or knowledge that the requested information is in such person's or entity's possession.

## MANNER OF PRODUCTION

1. All Documents produced to the TCC shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files and accompanied by true and correct copies or representations of unaltered attendant metadata. Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents. Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

DOCS_DE:236357.3 85353/002

2.    <u>Database Load Files and Production Media Structure</u>:  Database load files shall consist of: (a) a comma-delimited values ("dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (b) an Opticon (".opt") file to facilitate the loading of tiff images.  Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.

3.    <u>Electronic Documents and Data, Generally</u>:  Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text as to allow the TCC, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Documents' true and original content.

4.    <u>Emails and Attachments, and Other Email Account-Related Documents</u>:  All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the TCC.

DOCS_DE:236357.3 85353/002

5.    <u>Documents and Data Created or Stored in or by Structured Electronic Databases</u>: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the TCC to reasonably manage and import those Documents into a useable, coherent database.    Documents must be accompanied by reasonably detailed documentation explaining the Documents' content and format including but not limited to data dictionaries and diagrams.    Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

a.    XML format file(s);

b.    Microsoft SQL database(s);

c.    Access database(s); and/or

d.    fixed or variable length ASCII delimited files.

6.    <u>Spreadsheets, Multimedia, and Non-Standard File Types</u>:    All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet, database and/or statistical programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced.    A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media.    To the extent You have other file types that do not readily or easily and accurately convert to tiff and searchable text, You may elect to produce those files in native format subject to the other requirements listed herein.    Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

15

7.      "Other" Electronic Documents:  All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8.      Paper Documents:  Documents originally created or stored on paper shall be produced in tiff format.  Relationships between Documents shall be identified within the .dat file utilizing document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings.  In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these Requests for Production.

## DOCUMENT REQUESTS

**Request No. 1.**      All Documents Concerning the Motion, the Plan, the Disclosure Statement, or any actual or proposed settlements of Your coverage obligations to the Debtors, including any drafts thereof, including, but not limited to, all such Documents prepared, authored, sent, or received by the Debtors, the FCR, and the Coalition.

RESPONSE:

**Request No. 2.**      All Documents that You or anyone acting on Your behalf prepared, authored, sent, or received that interpret, refer to, relate to, or otherwise Concern insurance coverage for any Abuse Claim.

RESPONSE:

**Request No. 3.**      All Documents that evidence, refer to, relate to, or otherwise Concern reinsurance under any other Insurance Policies You sold to the Debtors, including, but

not limited to, (i) all Documents sent or received by You Concerning the collectability of reinsurance for Your liability for Abuse Claims under Your Insurance Policies; and (ii) all Documents that constitute, evidence, refer to, relate to, or otherwise Concern any Communication between You and any reinsurer Concerning any Abuse Claim.

RESPONSE:

**Request No. 4.**        Documents sufficient to show all liabilities that You have Concerning each Insurance Policy that the Debtors are proposing to contribute to the Settlement Trust under the Plan.

RESPONSE:

**Request No. 5.**        All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern Your financial ability to satisfy Your obligations under any Insurance Policies.

RESPONSE:

**Request No. 6.**        All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern Your obligation to indemnify any liabilities arising under the INA Policies.

RESPONSE:

**Request No. 7.**        If You contend that liabilities arising under the INA Policies cannot or may not be paid in full, all Documents Concerning Your contention.

RESPONSE:

**Request No. 8.**        If You contend that anything in or Concerning the Plan or Settlement Trust will, if the Plan is confirmed, impact Your rights or obligations (including without limitation inter-insurer contribution claims), all Documents Concerning Your contention.

RESPONSE:

**Request No. 9.**      If You contend that the Debtors have not complied with any contractual conditions or obligations under any Insurance Policy in connection with any Abuse Claim, all Documents Concerning Your contention.

RESPONSE:

**Request No. 10.**      All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any Abuse Claims where You paid or agreed to pay defense costs and/or make an indemnity payment on behalf of Debtors or any other insureds, including, but not limited to, Documents that identify the Insurance Policy, the name of the claimant, the Type of Abuse Categories, the amount paid for such claim, and whether the amount paid was for defense and/or indemnity.

RESPONSE:

**Request No. 11.**      All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any Abuse Claims where You denied or reserved rights with respect to coverage, including, but not limited to, Documents that identify the Insurance Policy, the case caption for the claim You denied or otherwise reserved rights, the name of the claimant, and the monetary amount alleged in such claim.

RESPONSE:

**Request No. 12.**      Documents sufficient to Identify (i) each Settlement of an Abuse Claim; (ii) each Verdict in favor of an Abuse Claimant; and (iii) each Verdict in favor of the Defense Concerning an Abuse Claim, including the following information with respect to each such Settlement and Verdict:

a.      Your claim file and all Communications Concerning each such Abuse Claim;

b.     All complaints or statements of claim associated with each Settlement and Verdict, including the filing date of the action, causes of action asserted, any consolidated action, jurisdiction, and plaintiff's counsel;

c.     The stage of the proceeding at the time of the Settlement or Verdict;

d.     Amount of Settlement of the Abuse Claim or award pursuant or subject to the Verdict, including total Settlement or award amount, all sub-components of economic and non-economic Settlement or award amounts, and apportionment or allocation of Settlement or award amounts among each defendant or party against which the Abuse Claim was asserted;

e.     With respect to a Verdict in favor of the Defense Concerning an Abuse Claim, amount of Abuse Claim subject to the Verdict, including total alleged amount of Abuse Claim and all alleged sub-components of economic and non-economic amount of Abuse Claim

f.     Roster(s) of Scouting Units associated with the Abuse Claim;

g.     Information which would be responsive to any and all questions contained in Parts 2 – 6 of the "Sexual Abuse Survivor Proof of Claim" form, not limited to but including the following:

i.     Type(s) of Abuse at issue in the Abuse Claim, utilizing the Type of Abuse Categories or specifically describing the type of Abuse if not specifically delineated therein;

ii.     Number of instances of Abuse at issue in the Abuse Claim;

iii.     Year(s) of occurrence of Abuse at issue in the Abuse Claim;

iv.     Age of Abuse Claimant at time of Abuse at issue in the Abuse Claim;

DOCS_DE:236357.3 85353/002

v.        Identity of each defendant or party against which the Abuse Claim was asserted, including the alleged Perpetrator, Local Council, and/or Chartered Organization, as applicable;

vi.        State, city, and county in which each instance of Abuse at issue in the Abuse Claim occurred; and

vii.        Any other information or data collected, compiled, or maintained by You in connection with the Abuse Claim, including information with respect to the Abuse Claimant, the alleged Perpetrator, their respective backgrounds or histories related or relevant to the Abuse allegations, and Your knowledge of the same.

h.        The number of accusations (aside from the Abuse Claim at issue) brought against the accused Perpetrator;

i.        The date of the Settlement or Verdict and any payments made in connection therewith;

j.        If the defense of the Abuse Claim was covered by an Insurance Policy, the identity of the Insurance Policy (including a copy thereof) and Insurance Company;

k.        Identity of source(s) of payment of Settlement or Verdict amount, including if the Settlement or Verdict was paid in whole or in part from proceeds of an Insurance Policy, the identity of the Insurance Policy and Insurance Company;

l.        Copies of any agreements between You and the Debtors Concerning coverage for the Settlement of any Abuse Claims and all drafts thereof and Documents relating thereto including, but not limited to, the consent (or lack thereof) of other insureds to enter into any such agreements or Settlements; and

20

m. Copies of documentation of the Settlement or Verdict, including any court order approving same.

<u>RESPONSE</u>:

**Request No. 13.** All Documents Concerning an Abuse Claim that is not otherwise covered by Request No. 12, including the following information with respect to each such Abuse Claim:

a. Your claim file and all Documents Concerning each such Abuse Claim;

b. Any complaints or statements of claim associated with each Abuse Claim, including the filing date of the action, causes of action asserted, any consolidated action, jurisdiction, and plaintiff's counsel;

c. Amount of the Abuse Claim, including total amount of the Abuse Claim, all sub-components of economic and non-economic amount of Abuse Claim, and apportionment or allocation of amounts among each defendant or party against which the Abuse Claim was asserted

d. Roster(s) of Scouting Units associated with the Abuse Claim;

e. Information which would be responsive to any and all questions contained in Parts 2 – 6 of the "Sexual Abuse Survivor Proof of Claim" form, not limited to but including the following:

i. Type(s) of Abuse at issue in the Abuse Claim, utilizing the Type of Abuse Categories or specifically describing the type of Abuse if not specifically delineated therein;

ii. Number of instances of Abuse at issue in the Abuse Claim;

iii. Year(s) of occurrence of Abuse at issue in the Abuse Claim;

iv. Age of Abuse Claimant at time of Abuse at issue in the Abuse Claim;

DOCS_DE:236357.3 85353/002

v.      Identity of each defendant or party against which the Abuse Claim is asserted, including the alleged Perpetrator, Local Council, and/or Chartered Organization, as applicable;

vi.      State, city, and county in which each instance of Abuse at issue in the Abuse Claim occurred; and

vii.      Any other information or data collected, compiled or maintained by You in connection with the Abuse Claim, including information with respect to the Abuse Claimant, the alleged Perpetrator, their respective backgrounds or histories related or relevant to the Abuse allegations, and Your knowledge of the same.

f.      The number of accusations (aside from the Abuse Claim at issue) brought against the accused Perpetrator;

g.      If the defense of the Abuse Claim was covered by an Insurance Policy, the identity of the Insurance Policy and Insurance Company;

h.      Any payments made in connection with the Abuse Claim, and the amounts sources and dates of any such payments;

i.      Copies of any agreements between You and the Debtors Concerning coverage for the Settlement of any Abuse Claims and all drafts thereof and Documents relating thereto including, but not limited to, the consent (or lack thereof) of other insureds to enter into any such agreements or Settlements; and

j.      Copies of documentation of the Abuse Claim.

RESPONSE:

**Request No. 14.**      The most recent loss run for each Insurance Policy You sold to the Debtors.

RESPONSE:

**Request No. 15.**     All IV Files and all Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any IV Files.

RESPONSE:

**Request No. 16.**     All Documents prepared by the Debtors or Bates White Concerning Abuse Claims provided to You.

RESPONSE:

**Request No. 17.**     All Documents Concerning Abuse Claims provided by You to the Debtors or Bates White.

RESPONSE:

**Request No. 18.**     All Documents, including analyses prepared by the Debtors, You, or anyone at the Debtors' or Your behalf, Concerning any estimate or approximation of the number of Perpetrators and/or the number of Survivors.

RESPONSE:

**Request No. 19.**     All Documents, including expert reports, provided to You from the Debtors or Abuse Claimants Concerning Abuse Claims that assert or ascribe a value to an Abuse Claim.

RESPONSE:

**Request No. 20.**     All Documents that constitute, evidence, refer to, relate to, or otherwise Concern any reserve that You contemplated, established, set, maintained, and/or changed regarding the Abuse Claims for each Insurance Policy year.

RESPONSE:

**Request No. 21.**      All Documents that constitute, evidence, refer to, relate to, or otherwise Concern an Insurance Policy that provides or potentially provides coverage for Abuse Claims.

RESPONSE:

**Request No. 22.**      All Documents that You intend to rely on at the Confirmation Hearing or in connection with the estimation or valuation of Abuse Claims.

RESPONSE:

**Request No. 23.**      All Documents that constitute, evidence, refer to, relate to, or otherwise Concern financial contributions by You to Century since 2011, including the date and amount of any such contribution.

RESPONSE:

**Request No. 24.**      Documents sufficient to Identify all parents, subsidiaries, and affiliates of Chubb, directly or indirectly.

RESPONSE:

**Request No. 25.**      All Documents that constitute, evidence, refer to, relate to, or otherwise Concern any BSA Plan Settlement.

RESPONSE:

**Request No. 26.**      All Documents that constitute, evidence, refer to, relate to, or otherwise Concern the original transferor, including but not limited to You, and any subsequent transferors of any payments to the Dividend Retention Fund held by Century.

RESPONSE:

**Request No. 27.**      All Documents, including, without limitation claims-handling manuals, guidelines, policies, practices, directives, and procedures, that Concern Your handling,

processing, adjusting, review, investigation, evaluation, acceptance, denial, reservation of rights, or other response to sexual abuse claims, including the Abuse Claims, under any Insurance Policy.

RESPONSE:

**Request No. 28.**     All Documents Concerning Your policies, practices, and procedures that Concern valuing or evaluating sexual abuse claims, including Abuse Claims, that were filed after the expiration of any applicable statute of limitations or were filed in jurisdictions where the statute of limitations with respect to sexual abuse claims may change, including, without limitation, any policies, procedures, or practices that prohibit settling or otherwise resolving such sexual-abuse claims.

RESPONSE:

**Request No. 29.**     All minutes of or other written documentation relating to every meeting of Your board of directors or managers, any committee or subcommittee thereof, any task force or working group thereof, or any of Your other executive task forces or working groups, during which there was discussion of the Debtors, the Insurance Policies sold by You to the Debtors, Abuse Claims, or the Debtors' claims for insurance coverage under Insurance Policies (whether or not regarding the Abuse Claims), including without limitation, insurance coverage for such claims, including but not limited to handouts, agendas, attachments, and notes made by participants.

RESPONSE:

**Request No. 30.**     All Documents that refer to, relate to, memorialize, or otherwise Concern an opinion, conclusion, or analysis as to the absence or existence of an aggregate limit of liability Concerning any Insurance Policy applying to Abuse Claims and Non-Abuse Claims.

RESPONSE:

**Request No. 31.**     All Documents that constitute, evidence, refer to, relate to, or otherwise Concern any tax sharing or tax allocation agreements to which You are a party or is included, either directly or indirectly, or that impact Your tax liabilities.

RESPONSE:

**Request No. 32.**     All Documents Concerning the validity and amount of the Claims You assert against the Debtors, including all Claims described in the Proofs of Claim bearing the numbers 853, 854, 855, 857, 858, 859, 861, 862, 863, 993, 997, 1005, 1008, and 1039.

RESPONSE:

**Request No. 33.**     All Documents Concerning any Indirect Abuse Claim You assert or may assert against the Debtors, including, but not limited to, the value or amount of such Indirect Abuse Claim.

RESPONSE:

*[Remainder of page intentionally left blank]*

Dated: October 8, 2021
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
James I. Stang (CA Bar No. 94435) (admitted *pro hac vice*)
Iain A.W. Nasatir (CA Bar No. 148977) (admitted *pro hac vice*)
Kenneth H. Brown (CA Bar No. 100396) (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No. 271038) (admitted *pro hac vice*)
Steven W. Golden (DE No. LP 0127)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tele/Fax: (302) 652-4100 / (302) 652-4400
Email:       jstang@pszjlaw.com
                inasatir@pszjlaw.com
                kbrown@pszjlaw.com
                joneill@pszjlaw.com
                jlucas@pszjlaw.com
                sgolden@pszjlaw.com

              -and-

PASICH LLP

Jeffrey L. Schulman (NY Bar No. 3903697)
757 Third Avenue, 20th Floor
New York, New York 10017
Telephone:  (212) 686-5000
JSchulman@PasichLLP.com

              -and-

Kirk Pasich (CA Bar No. 94242)
10880 Wilshire Boulevard, Suite 2000
Los Angeles, California 90024
Telephone:  (424) 313-7850
KPasich@PasichLLP.com

*Counsel for the Tort Claimants' Committee*

DOCS_DE:236357.3 85353/002

# **EXHIBIT E**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| Debtors.[1] | (Jointly Administered) |
|  | Re Docket Nos. 2618, 6438, 6443, 6445 |

## THE OFFICIAL COMMITTEE OF TORT CLAIMANTS TO BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC'S REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO COLUMBIA CASUALTY COMPANY; CONTINENTAL INSURANCE COMPANY AS SUCCESSOR IN INTEREST TO CERTAIN POLICIES ISSUED BY HARBOR INSURANCE COMPANY; CONTINENTAL INSURANCE COMPANY SUCCESSOR BY MERGER TO NIAGARA FIRE INSURANCE COMPANY; AND CONTINENTAL INSURANCE COMPANY RELATED TO PLAN CONFIRMATION (FIRST SET)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable to these proceedings by Rules 9014, 7026, and 7034 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and pursuant to the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Official Committee of Tort Claimants to Boy Scouts of America and Delaware BSA, LLC (the "TCC"), by and through its undersigned counsel, hereby serve the following requests for production of documents (the "Requests for Production") on Columbia Casualty Company; Continental Insurance Company as successor in interest to certain policies issued by Harbor Insurance Company; Continental Insurance Company successor by merger to Niagara Fire Insurance Company; and Continental Insurance Company ("CNA") in connection

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

with the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6443], and any amendments, supplements or modifications thereto (the "<u>Plan</u>") and any proceedings arising therefrom or related thereto in connection with the Debtors' chapter 11 cases.

Please produce the documents and the production media to the TCC by October 18, 2021.

## <u>DEFINITIONS</u>

For the purposes of these Requests for Production, the following Definitions shall apply:

1.     The terms "all," "any," and "each" shall each be construed as encompassing any and all.  The singular shall include the plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive; and the term "including" means "including without limitation."  The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense.

2.     Capitalized terms not otherwise defined herein shall have the same meanings set forth in the Plan.

3.     "<u>Abuse</u>" shall have the meaning provided in the Plan.

4.     "<u>Abuse Claim</u>" means a liquidated or unliquidated Claim against one or more Abuse Parties that is attributable to, arises from, is based upon, relates to, results from, or is otherwise Concerned with, in whole or in part, directly, indirectly, or derivatively, alleged Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based on misrepresentation, concealment, or unfair practice,

public or private nuisance, or any other theory, including any theory based on public policy or any act or failure to act by an Abuse Party or any other Person for whom any Abuse Party is alleged to be responsible. The term "Abuse Claim" includes Direct Abuse Claims and Indirect Abuse Claims.

5.     "Abuse Claimant" shall mean the party asserting an Abuse Claim and their attorneys, advisors, agents, representatives, and experts.

6.     "Abuse Party" means, individually and collectively, (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Chartered Organizations; (f) Insurance Companies; or (g) all of any of the foregoing's Persons' Representatives.

7.     "Bates White" means Bates White LLC, the Debtors' abuse claims consultant and advisor.

8.     "BSA Plan Settlement" means any settlement, whether incorporated into the Plan or presented for approval pursuant to Bankruptcy Rule 9019, between the Debtors and any other Entity (including, but not limited to, an Insurance Company, Chartered Organization, or Local Council), including, but not limited to, the Hartford Insurance Settlement and the TCJC Settlement.

9.     "Chapter 11 Cases" shall mean the above-captioned chapter 11 cases of Boy Scouts of America and Delaware BSA, LLC, pending before the United States Bankruptcy Court for the District of Delaware.

10.    "Chartered Organization" shall have the meaning provided in the Plan.

11.    "Claim" means any "claim," as defined in section 101(5) of the Bankruptcy Code.

12.    "CNA" means, individually and collectively, Columbia Casualty Company; Continental Insurance Company as successor in interest to certain policies issued by Harbor

Insurance Company; Continental Insurance Company successor by merger to Niagara Fire Insurance Company; and Continental Insurance Company and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

13. "Coalition" shall mean the Coalition of Abused Scouts for Justice, an ad hoc committee that filed a notice of appearance in the Chapter 11 Cases on July 24, 2020 at Docket No. 1040, and its members, agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, representatives, affiliates, subsidiaries, predecessors and/or successors.

14. "Communications" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, correspondence, memoranda, emails, facsimile transmissions, or other form of verbal, written, mechanical, or electronic disclosure, in Your actual or constructive control or custody or in the control or custody of any current or former affiliates, representatives or advisors.

15. "Concerning" means relating to, evidencing, supporting, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, referencing, discussing, indicating, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

16. "Confirmation Hearing" shall have the meaning provided in the Plan.

17. "Debtors" means, collectively or individually, as context requires and to encompass responsive documents Boy Scouts of America and Delaware BSA, LLC, and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

18.     "Disclosure Statement" shall mean the *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6445], as such Document may be amended, supplemented, or modified from time to time.

19.     "Documents" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all Documents and information in Your possession, custody, or control, and includes: all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda, transcripts, tapes, or other voice recordings, and all other Documents and tangible things, including booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, print-outs, and all other data, whether recorded by electronic or other means, and all drafts thereof.  If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on any of the pages thereof, then each such non-identical copy is a separate Document and must be produced.  When examples of categories or types of Documents are given in a particular Request for Production by use of phrases such as "including," this shall always be

interpreted as being for illustrative purposes only (*i.e.*, to be understood as "including without limitation") and in no way limits or narrows the scope of any Request for Production. "Documents" always includes Communications, whether so stated in a particular Request for Production or not.

20.     "FCR" shall mean James L. Patton, Jr., the legal representative appointed by the Bankruptcy Court for holders of Future Abuse Claims, or any successor legal representative appointed by the Bankruptcy Court, and his agents, accountants, financial advisors, employees, experts, attorneys, representatives, affiliates, predecessors and/or successors.

21.     "Hartford Insurance Settlement" shall have the meaning provided in the Plan.

22.     "Insurance Company" shall have the meaning provided in the Plan.

23.     "Insurance Policy" shall have the meaning provided in the Plan, including all rights and benefits thereunder, and the proceeds thereof.

24.     "IV Files" shall mean any Documents that identify individuals associated with the Debtors accused of Abuse, including those records and files referred to as "ineligible volunteer" or "perversion" files.

25.     "Local Councils" shall have the meaning provided in the Plan.

26.     "Motion" shall mean the *Debtors' Motion for Entry of an Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation and Voting Procedures, (III) Approving Forms of Ballots, (IV) Approving Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief* [Docket No. 2295], as such Document may be amended, supplemented, or modified from time to time.

27.     "Non-Abuse Claims" shall have the meaning provided in the Plan.

DOCS_DE:236394.2 85353/002

28.     "Perpetrator" shall have the meaning provided in the Plan.

29.     "Petition Date" shall mean February 18, 2020.

30.     "Plan" shall mean the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6443], as such Document may be amended, supplemented, or modified from time to time.

31.     "Prepetition" shall mean occurring prior to the Petition Date.

32.     "Scouting Unit" means an entity that conducts scouting for a Chartered Organization, including but not limited to a pack, den, troop, Sea Explorers, Air Explorers, Learning for Life, Explorers, Venturing, crew, ship, chapter, and any associations that were predecessor associations of the foregoing.

33.     "Settlement" shall mean any Prepetition settlement or other resolution of an Abuse Claim.

34.     "Settlement Trust" shall have the meaning provided in the Plan.

35.     "Survivor" means a survivor of Abuse in scouting, including Abuse Claimants.

36.     "TCJC Settlement" shall have the meaning provided in the Plan.

37.     "Type of Abuse Categories" shall mean the following categories of Abuse: (a) penetration; (b) oral sex; (c) masturbation; (d) fondling/groping; (e) touching – bare skin; (f) touching – over the clothes; (g) non-touching; and (h) other aggravating factors.

38.     "Verdict" shall mean any Prepetition verdict, judgment, award or decision of a court, arbitrator, mediator or similar tribunal Concerning an Abuse Claim.

39.     "You" or "Your" and variants thereof mean CNA.

DOCS_DE:236394.2 85353/002

# INSTRUCTIONS

The preceding Definitions apply to each of these Instructions, and for purposes of these Requests for Production, the following Instructions shall be followed:

1.     Civil Rule 34, made applicable to this proceeding pursuant to Bankruptcy Rules 7034 and 9014(c), is hereby incorporated by reference and applies to each of the following instructions.

2.     All responses shall comply with the requirements of the Civil Rules, the Bankruptcy Rules, the Local Rules, and any Court Order.

3.     Unless otherwise stated in a specific Request for Production herein, the relevant time period shall be from the respective inception of each of the Debtors to the present.

4.     These Requests for Production shall be deemed continuing in nature.  In the event You become aware of or acquire additional information relating or referring to any of the following Requests for Production, such additional information is to be promptly produced.

5.     Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of current or former employees, officers, directors, agents, agents' representatives, consultants, contractors, vendors, or any fiduciary or other third parties, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, local area networks, application-based communications services (including, without limitation, Facebook Messenger, Instant Bloomberg, WeChat, Skype, KakaoTalk, WhatsApp, Signal, iMessage, etc.), web-based file hosting services (including, without limitation, Dropbox, Box, Apple iCloud, Google Drive, Hightail, etc.), or web-based email systems such as Gmail, Yahoo, etc.

6.     You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf. You must produce all such Documents even if they were deleted or in draft form. Without limitation, hardware where such data may be stored includes: servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile storage devices, such as thumb or external hard drives. Electronically stored Documents include any computerized data or content stored on electromagnetic media. Without limitation, types of electronically stored Documents include email, voicemail, instant messages, intranet and internet system data, telephone and cellular telephone calling records, data compilations, spreadsheets, word processing Documents, images, databases, digital photocopier memory, and any other information stored in memory storage devices.

7.     Produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document requested together with all non-identical copies and drafts of that Document. If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

8.     Documents not otherwise responsive to these Requests for Production should be produced: (a) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are called for by these Requests for Production; (b) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests for Production; or (c) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

DOCS_DE:236394.2 85353/002

9.      Documents attached to each other should not be separated; separate Documents should not be attached to each other.

10.     Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

11.     If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request for Production or part thereof, for each such Document, You must:

      a.      Identify the type, title and subject matter of the Document;

      b.      State the place, date, and manner of preparation of the Document;

      c.      Identify all authors, addressees, and recipients of the Document, including information about such persons to assess the privilege asserted; and

      d.      Identify the legal privilege(s) and the factual basis for the claim.

12.     Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine.  In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 11 above must be provided.

13.     To the extent a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it:  (a) is missing or lost; (b) has been destroyed; (c) has been transferred to others; and/or (d) has been otherwise disposed of.  In each instance, identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, identify each person having knowledge of the circumstances of the disposition, and identify each person who had

possession, custody, or control of the Document. Documents prepared prior to, but which relate or refer to, the time period covered by these Requests for Production are to be identified and produced.

14.     If any part of the following Requests for Production cannot be responded to in full, please respond to the extent possible, specifying the reason(s) for Your inability to respond to the remainder and stating whatever information or knowledge You have Concerning the portion to which You do not respond.

15.     If You object to any of these Requests for Production, state in writing with specificity the grounds of Your objections. Any ground not stated shall be waived. If You object to a particular portion of any Request for Production, You shall respond to any other portions of such Request for Production as to which there is no objection and state with specificity the grounds of the objection.

16.     The fact that an investigation is continuing or that discovery is incomplete shall not be a justification for failing to respond to these Requests for Production based on the knowledge or information that You possess at the time You respond to these Requests for Production. If an investigation is continuing or discovery is not complete with respect to the matter inquired into by any Request for Production, so state in Your response to that Request for Production.

17.     If the identity of Documents responding to a Request for Production is not known, then that lack of knowledge must be specifically indicated in the response. If any information requested is not in Your possession, but is known or believed to be in the possession of another person or entity, then identify that person or entity and state the basis of Your belief or knowledge that the requested information is in such person's or entity's possession.

## **MANNER OF PRODUCTION**

1.     All Documents produced to the TCC shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files and accompanied by true and correct copies or representations of unaltered attendant metadata. Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents. Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

2.     <u>Database Load Files and Production Media Structure</u>: Database load files shall consist of: (a) a comma-delimited values (".dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (b) an Opticon (".opt") file to facilitate the loading of tiff images. Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.

3.     <u>Electronic Documents and Data, Generally</u>: Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text

DOCS_DE:236394.2 85353/002

as to allow the TCC, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Documents' true and original content.

4.  Emails and Attachments, and Other Email Account-Related Documents: All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the TCC.

5.  Documents and Data Created or Stored in or by Structured Electronic Databases: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the TCC to reasonably manage and import those Documents into a useable, coherent database. Documents must be accompanied by reasonably detailed documentation explaining the Documents' content and format including but not limited to data dictionaries and diagrams. Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

   a.  XML format file(s);

   b.  Microsoft SQL database(s);

   c.  Access database(s); and/or

   d.  fixed or variable length ASCII delimited files.

6.  Spreadsheets, Multimedia, and Non-Standard File Types: All Documents generated or stored in software such as Microsoft Excel or other commercially available

spreadsheet, database and/or statistical programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent You have other file types that do not readily or easily and accurately convert to tiff and searchable text, You may elect to produce those files in native format subject to the other requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

7. "Other" Electronic Documents: All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8. Paper Documents: Documents originally created or stored on paper shall be produced in tiff format. Relationships between Documents shall be identified within the .dat file utilizing document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings. In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these Requests for Production.

## DOCUMENT REQUESTS

**Request No. 1.** All Documents Concerning the Motion, the Plan, the Disclosure Statement, or any actual or proposed settlements of Your coverage obligations to the Debtors,

including any drafts thereof, including, but not limited to, all such Documents prepared, authored, sent, or received by the Debtors, the FCR, and the Coalition.

RESPONSE:

**Request No. 2.**        All Documents that You or anyone acting on Your behalf prepared, authored, sent, or received that interpret, refer to, relate to, or otherwise Concern insurance coverage for any Abuse Claim.

RESPONSE:

**Request No. 3.**        All Documents that evidence, refer to, relate to, or otherwise Concern reinsurance under any other Insurance Policies You sold to the Debtors, including, but not limited to, (i) all Documents sent or received by You Concerning the collectability of reinsurance for Your liability for Abuse Claims under Your Insurance Policies; and (ii) all Documents that constitute, evidence, refer to, relate to, or otherwise Concern any Communication between You and any reinsurer Concerning any Abuse Claim.

RESPONSE:

**Request No. 4.**        Documents sufficient to show all liabilities that You have Concerning each Insurance Policy that the Debtors are proposing to contribute to the Settlement Trust under the Plan.

RESPONSE:

**Request No. 5.**        All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern Your financial ability to satisfy Your obligations under any Insurance Policies.

RESPONSE:

**Request No. 6.**     If You contend that anything in or Concerning the Plan or Settlement Trust will, if the Plan is confirmed, impact Your rights or obligations (including without limitation inter-insurer contribution claims), all Documents that Concern Your contention.

RESPONSE:

**Request No. 7.**     If You contend that the Debtors have not complied with any contractual conditions or obligations under any Insurance Policy in connection with any Abuse Claim, all Documents that Concern Your contention.

RESPONSE:

**Request No. 8.**     All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any Abuse Claims where You paid or agreed to pay defense costs and/or make an indemnity payment on behalf of Debtors or any other insureds, including, but not limited to, Documents that identify the Insurance Policy, the name of the claimant, the Type of Abuse Categories, the amount paid for such claim, and whether the amount paid was for defense and/or indemnity.

RESPONSE:

**Request No. 9.**     All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any Abuse Claims where You denied or reserved rights with respect to coverage, including, but not limited to, Documents that identify the Insurance Policy, the case caption for the claim You denied or otherwise reserved rights, the name of the claimant, and the monetary amount alleged in such claim.

RESPONSE:

**Request No. 10.**     Documents sufficient to Identify (i) each Settlement of an Abuse Claim; (ii) each Verdict in favor of an Abuse Claimant; and (iii) each Verdict in favor of the

Defense Concerning an Abuse Claim, including the following information with respect to each such Settlement and Verdict:

        a.       Your claim file and all Communications Concerning each such Abuse Claim;

        b.       All complaints or statements of claim associated with each Settlement and Verdict, including the filing date of the action, causes of action asserted, any consolidated action, jurisdiction, and plaintiff's counsel;

        c.       The stage of the proceeding at the time of the Settlement or Verdict;

        d.       Amount of Settlement of the Abuse Claim or award pursuant or subject to the Verdict, including total Settlement or award amount, all sub-components of economic and non-economic Settlement or award amounts, and apportionment or allocation of Settlement or award amounts among each defendant or party against which the Abuse Claim was asserted;

        e.       With respect to a Verdict in favor of the Defense Concerning an Abuse Claim, amount of Abuse Claim subject to the Verdict, including total alleged amount of Abuse Claim and all alleged sub-components of economic and non-economic amount of Abuse Claim

        f.       Roster(s) of Scouting Units associated with the Abuse Claim;

        g.       Information which would be responsive to any and all questions contained in Parts 2 – 6 of the "Sexual Abuse Survivor Proof of Claim" form, not limited to but including the following:

            i.       Type(s) of Abuse at issue in the Abuse Claim, utilizing the Type of Abuse Categories or specifically describing the type of Abuse if not specifically delineated therein;

            ii.       Number of instances of Abuse at issue in the Abuse Claim;

            iii.       Year(s) of occurrence of Abuse at issue in the Abuse Claim;

17

iv.     Age of Abuse Claimant at time of Abuse at issue in the Abuse

Claim;

v.     Identity of each defendant or party against which the Abuse Claim

was asserted, including the alleged Perpetrator, Local Council, and/or Chartered Organization, as

applicable;

vi.     State, city, and county in which each instance of Abuse at issue in

the Abuse Claim occurred; and

vii.     Any other information or data collected, compiled, or maintained by

You in connection with the Abuse Claim, including information with respect to the Abuse

Claimant, the alleged Perpetrator, their respective backgrounds or histories related or relevant to

the Abuse allegations, and Your knowledge of the same.

h.     The number of accusations (aside from the Abuse Claim at issue) brought

against the accused Perpetrator;

i.     The date of the Settlement or Verdict and any payments made in connection

therewith;

j.     If the defense of the Abuse Claim was covered by an Insurance Policy, the

identity of the Insurance Policy (including a copy thereof) and Insurance Company;

k.     Identity of source(s) of payment of Settlement or Verdict amount, including

if the Settlement or Verdict was paid in whole or in part from proceeds of an Insurance Policy, the

identity of the Insurance Policy and Insurance Company;

l.     Copies of any agreements between You and the Debtors Concerning

coverage for the Settlement of any Abuse Claims and all drafts thereof and Documents relating

thereto including, but not limited to, the consent (or lack thereof) of other insureds to enter into any such agreements or Settlements; and

m.      Copies of documentation of the Settlement or Verdict, including any court order approving same.

RESPONSE:

**Request No. 11.**      All Documents Concerning an Abuse Claim that is not otherwise covered by Request No. 10, including the following information with respect to each such Abuse Claim:

a.      Your claim file and all Documents Concerning each such Abuse Claim;

b.      Any complaints or statements of claim associated with each Abuse Claim, including the filing date of the action, causes of action asserted, any consolidated action, jurisdiction, and plaintiff's counsel;

c.      Amount of the Abuse Claim, including total amount of the Abuse Claim, all sub-components of economic and non-economic amount of Abuse Claim, and apportionment or allocation of amounts among each defendant or party against which the Abuse Claim was asserted

d.      Roster(s) of Scouting Units associated with the Abuse Claim;

e.      Information which would be responsive to any and all questions contained in Parts 2 – 6 of the "Sexual Abuse Survivor Proof of Claim" form, not limited to but including the following:

i.      Type(s) of Abuse at issue in the Abuse Claim, utilizing the Type of Abuse Categories or specifically describing the type of Abuse if not specifically delineated therein;

ii.      Number of instances of Abuse at issue in the Abuse Claim;

iii.      Year(s) of occurrence of Abuse at issue in the Abuse Claim;

iv. Age of Abuse Claimant at time of Abuse at issue in the Abuse Claim;

v. Identity of each defendant or party against which the Abuse Claim is asserted, including the alleged Perpetrator, Local Council, and/or Chartered Organization, as applicable;

vi. State, city, and county in which each instance of Abuse at issue in the Abuse Claim occurred; and

vii. Any other information or data collected, compiled or maintained by You in connection with the Abuse Claim, including information with respect to the Abuse Claimant, the alleged Perpetrator, their respective backgrounds or histories related or relevant to the Abuse allegations, and Your knowledge of the same.

f. The number of accusations (aside from the Abuse Claim at issue) brought against the accused Perpetrator;

g. If the defense of the Abuse Claim was covered by an Insurance Policy, the identity of the Insurance Policy and Insurance Company;

h. Any payments made in connection with the Abuse Claim, and the amounts sources and dates of any such payments;

i. Copies of any agreements between You and the Debtors Concerning coverage for the Settlement of any Abuse Claims and all drafts thereof and Documents relating thereto including, but not limited to, the consent (or lack thereof) of other insureds to enter into any such agreements or Settlements; and

j. Copies of documentation of the Abuse Claim.

RESPONSE:

**Request No. 12.** The most recent loss run for each Insurance Policy You sold to the Debtors.

RESPONSE:

**Request No. 13.** All IV Files and all Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any IV Files.

RESPONSE:

**Request No. 14.** All Documents prepared by the Debtors or Bates White Concerning Abuse Claims provided to You.

RESPONSE:

**Request No. 15.** All Documents Concerning Abuse Claims provided by You to the Debtors or Bates White.

RESPONSE:

**Request No. 16.** All Documents, including analyses prepared by the Debtors, You, or anyone at the Debtors' or Your behalf, Concerning any estimate or approximation of the number of Perpetrators and/or the number of Survivors.

RESPONSE:

**Request No. 17.** All Documents, including expert reports, provided to You from the Debtors or Abuse Claimants Concerning Abuse Claims that assert or ascribe a value to an Abuse Claim.

RESPONSE:

**Request No. 18.** All Documents that constitute, evidence, refer to, relate to, or otherwise Concern any reserve that You contemplated, established, set, maintained, and/or changed regarding the Abuse Claims for each Insurance Policy year.

RESPONSE:

**Request No. 19.** All Documents that constitute, evidence, refer to, relate to, or otherwise Concern an Insurance Policy that provides or potentially provides coverage for Abuse Claims.

RESPONSE:

**Request No. 20.** All Documents that You intend to rely on at the Confirmation Hearing or in connection with the estimation or valuation of Abuse Claims.

RESPONSE:

**Request No. 21.** All Documents that constitute, evidence, refer to, relate to, or otherwise Concern any BSA Plan Settlement.

RESPONSE:

**Request No. 22.** All Documents, including, without limitation claims-handling manuals, guidelines, policies, practices, directives, and procedures, that Concern Your handling, processing, adjusting, review, investigation, evaluation, acceptance, denial, reservation of rights, or other response to sexual abuse claims, including the Abuse Claims, under any Insurance Policy.

RESPONSE:

**Request No. 23.** All Documents Concerning Your policies, practices, and procedures that Concern valuing or evaluating sexual abuse claims, including Abuse Claims, that were filed after the expiration of any applicable statute of limitations or were filed in jurisdictions where the statute of limitations with respect to sexual abuse claims may change, including, without

limitation, any policies, procedures, or practices that prohibit settling or otherwise resolving such sexual-abuse claims.

RESPONSE:

**Request No. 24.**     All minutes of or other written documentation relating to every meeting of Your board of directors or managers, any committee or subcommittee thereof, any task force or working group thereof, or any of Your other executive task forces or working groups, during which there was discussion of the Debtors, the Insurance Policies sold by You to the Debtors, Abuse Claims, or the Debtors' claims for insurance coverage under Insurance Policies (whether or not regarding the Abuse Claims), including without limitation, insurance coverage for such claims, including but not limited to handouts, agendas, attachments, and notes made by participants.

RESPONSE:

**Request No. 25.**     All Documents that refer to, relate to, memorialize, or otherwise Concern an opinion, conclusion, or analysis as to the absence or existence of an aggregate limit of liability Concerning any Insurance Policy applying to Abuse Claims and Non-Abuse Claims.

RESPONSE:

**Request No. 26.**     All Documents Concerning any Indirect Abuse Claim You assert or may assert against the Debtors, including, but not limited to, the value or amount of such Indirect Abuse Claim.

RESPONSE:

*[Remainder of page intentionally left blank]*

DOCS_DE:236394.2 85353/002

Dated: October 8, 2021
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
James I. Stang (CA Bar No. 94435) (admitted *pro hac vice*)
Iain A.W. Nasatir (CA Bar No. 148977) (admitted *pro hac vice*)
Kenneth H. Brown (CA Bar No. 100396) (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No. 271038) (admitted *pro hac vice*)
Steven W. Golden (DE No. LP 0127)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tele/Fax: (302) 652-4100 / (302) 652-4400
Email:        jstang@pszjlaw.com
                inasatir@pszjlaw.com
                kbrown@pszjlaw.com
                joneill@pszjlaw.com
                jlucas@pszjlaw.com
                sgolden@pszjlaw.com

               -and-

PASICH LLP

Jeffrey L. Schulman (NY Bar No. 3903697)
757 Third Avenue, 20th Floor
New York, New York 10017
Telephone:  (212) 686-5000
JSchulman@PasichLLP.com

               -and-

Kirk Pasich (CA Bar No. 94242)
10880 Wilshire Boulevard, Suite 2000
Los Angeles, California 90024
Telephone:  (424) 313-7850
KPasich@PasichLLP.com

*Counsel for the Tort Claimants' Committee*

# **EXHIBIT F**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| Debtors.[1] | (Jointly Administered) |
|  | Re Docket Nos. 2618, 6438, 6443, 6445 |

## THE OFFICIAL COMMITTEE OF TORT CLAIMANTS TO BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC'S REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO NATIONAL SURETY CORPORATION AND INTERSTATE FIRE & CASUALTY COMPANY RELATED TO PLAN CONFIRMATION (FIRST SET)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable to these proceedings by Rules 9014, 7026, and 7034 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and pursuant to the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Official Committee of Tort Claimants to Boy Scouts of America and Delaware BSA, LLC (the "TCC"), by and through its undersigned counsel, hereby serve the following requests for production of documents (the "Requests for Production") on National Surety Corporation and Interstate Fire & Casualty Company ("FFIC") in connection with the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6443], and any amendments, supplements or modifications thereto (the "Plan") and any proceedings arising therefrom or related thereto in connection with the Debtors' chapter 11 cases.

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

Please produce the documents and the production media to the TCC by October 18, 2021.

## DEFINITIONS

For the purposes of these Requests for Production, the following Definitions shall apply:

1.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.  The singular shall include the plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive; and the term "including" means "including without limitation."  The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense.

2.      Capitalized terms not otherwise defined herein shall have the same meanings set forth in the Plan.

3.      "Abuse" shall have the meaning provided in the Plan.

4.      "Abuse Claim" means a liquidated or unliquidated Claim against one or more Abuse Parties that is attributable to, arises from, is based upon, relates to, results from, or is otherwise Concerned with, in whole or in part, directly, indirectly, or derivatively, alleged Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based on misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory, including any theory based on public policy or any act or failure to act by an Abuse Party or any other Person for whom any Abuse Party is alleged to be responsible.  The term "Abuse Claim" includes Direct Abuse Claims and Indirect Abuse Claims.

5.     "Abuse Claimant" shall mean the party asserting an Abuse Claim and their attorneys, advisors, agents, representatives, and experts.

6.     "Abuse Party" means, individually and collectively, (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Chartered Organizations; (f) Insurance Companies; or (g) all of any of the foregoing's Persons' Representatives.

7.     "Bates White" means Bates White LLC, the Debtors' abuse claims consultant and advisor.

8.     "BSA Plan Settlement" means any settlement, whether incorporated into the Plan or presented for approval pursuant to Bankruptcy Rule 9019, between the Debtors and any other Entity (including, but not limited to, an Insurance Company, Chartered Organization, or Local Council), including, but not limited to, the Hartford Insurance Settlement and the TCJC Settlement.

9.     "Chapter 11 Cases" shall mean the above-captioned chapter 11 cases of Boy Scouts of America and Delaware BSA, LLC, pending before the United States Bankruptcy Court for the District of Delaware.

10.     "Chartered Organization" shall have the meaning provided in the Plan.

11.     "Claim" means any "claim," as defined in section 101(5) of the Bankruptcy Code.

12.     "Coalition" shall mean the Coalition of Abused Scouts for Justice, an ad hoc committee that filed a notice of appearance in the Chapter 11 Cases on July 24, 2020 at Docket No. 1040, and its members, agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, representatives, affiliates, subsidiaries, predecessors and/or successors.

13.     "Communications" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes,

telegrams, correspondence, memoranda, emails, facsimile transmissions, or other form of verbal, written, mechanical, or electronic disclosure, in Your actual or constructive control or custody or in the control or custody of any current or former affiliates, representatives or advisors.

14. "<u>Concerning</u>" means relating to, evidencing, supporting, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, referencing, discussing, indicating, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

15. "<u>Confirmation Hearing</u>" shall have the meaning provided in the Plan.

16. "<u>Debtors</u>" means, collectively or individually, as context requires and to encompass responsive documents Boy Scouts of America and Delaware BSA, LLC, and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

17. "<u>Disclosure Statement</u>" shall mean the *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6445], as such Document may be amended, supplemented, or modified from time to time.

18. "<u>Documents</u>" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all Documents and information in Your possession, custody, or control, and includes: all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda, transcripts, tapes, or other voice recordings, and all other Documents and tangible things, including booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts,

agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, print-outs, and all other data, whether recorded by electronic or other means, and all drafts thereof. If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on any of the pages thereof, then each such non-identical copy is a separate Document and must be produced. When examples of categories or types of Documents are given in a particular Request for Production by use of phrases such as "including," this shall always be interpreted as being for illustrative purposes only (*i.e.*, to be understood as "including without limitation") and in no way limits or narrows the scope of any Request for Production. "Documents" always includes Communications, whether so stated in a particular Request for Production or not.

19.     "FCR" shall mean James L. Patton, Jr., the legal representative appointed by the Bankruptcy Court for holders of Future Abuse Claims, or any successor legal representative appointed by the Bankruptcy Court, and his agents, accountants, financial advisors, employees, experts, attorneys, representatives, affiliates, predecessors and/or successors.

20.     "FFIC" means, individually and collectively, National Surety Corporation and Interstate Fire & Casualty Company and each of their agents, accountants, financial advisors,

employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

21. "FFIC Proof of Claim" means the Proof of Claim filed by You against the Debtors bearing proof of claim number 8281.

22. "Hartford Insurance Settlement" shall have the meaning provided in the Plan.

23. "Insurance Company" shall have the meaning provided in the Plan.

24. "Insurance Policy" shall have the meaning provided in the Plan, including all rights and benefits thereunder, and the proceeds thereof.

25. "IV Files" shall mean any Documents that identify individuals associated with the Debtors accused of Abuse, including those records and files referred to as "ineligible volunteer" or "perversion" files.

26. "Local Councils" shall have the meaning provided in the Plan.

27. "Motion" shall mean the *Debtors' Motion for Entry of an Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation and Voting Procedures, (III) Approving Forms of Ballots, (IV) Approving Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief* [Docket No. 2295], as such Document may be amended, supplemented, or modified from time to time.

28. "Non-Abuse Claims" shall have the meaning provided in the Plan.

29. "Perpetrator" shall have the meaning provided in the Plan.

30. "Petition Date" shall mean February 18, 2020.

DOCS_DE:236398.2 85353/002

31. "<u>Plan</u>" shall mean the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6443], as such Document may be amended, supplemented, or modified from time to time.

32. "<u>Prepetition</u>" shall mean occurring prior to the Petition Date.

33. "<u>Proof of Claim</u>" shall have the meaning provided in the Plan.

34. "<u>Scouting Unit</u>" means an entity that conducts scouting for a Chartered Organization, including but not limited to a pack, den, troop, Sea Explorers, Air Explorers, Learning for Life, Explorers, Venturing, crew, ship, chapter, and any associations that were predecessor associations of the foregoing.

35. "<u>Settlement</u>" shall mean any Prepetition settlement or other resolution of an Abuse Claim.

36. "<u>Settlement Trust</u>" shall have the meaning provided in the Plan.

37. "<u>Survivor</u>" means a survivor of Abuse in scouting, including Abuse Claimants.

38. "<u>TCJC Settlement</u>" shall have the meaning provided in the Plan.

39. "<u>Type of Abuse Categories</u>" shall mean the following categories of Abuse: (a) penetration; (b) oral sex; (c) masturbation; (d) fondling/groping; (e) touching – bare skin; (f) touching – over the clothes; (g) non-touching; and (h) other aggravating factors.

40. "<u>Verdict</u>" shall mean any Prepetition verdict, judgment, award or decision of a court, arbitrator, mediator or similar tribunal Concerning an Abuse Claim.

41. "<u>You</u>" or "<u>Your</u>" and variants thereof mean FFIC.

## **INSTRUCTIONS**

The preceding Definitions apply to each of these Instructions, and for purposes of these Requests for Production, the following Instructions shall be followed:

1.      Civil Rule 34, made applicable to this proceeding pursuant to Bankruptcy Rules 7034 and 9014(c), is hereby incorporated by reference and applies to each of the following instructions.

2.      All responses shall comply with the requirements of the Civil Rules, the Bankruptcy Rules, the Local Rules, and any Court Order.

3.      Unless otherwise stated in a specific Request for Production herein, the relevant time period shall be from the respective inception of each of the Debtors to the present.

4.      These Requests for Production shall be deemed continuing in nature.  In the event You become aware of or acquire additional information relating or referring to any of the following Requests for Production, such additional information is to be promptly produced.

5.      Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of current or former employees, officers, directors, agents, agents' representatives, consultants, contractors, vendors, or any fiduciary or other third parties, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, local area networks, application-based communications services (including, without limitation, Facebook Messenger, Instant Bloomberg, WeChat, Skype, KakaoTalk, WhatsApp, Signal, iMessage, etc.), web-based file hosting services (including, without limitation, Dropbox, Box, Apple iCloud, Google Drive, Hightail, etc.), or web-based email systems such as Gmail, Yahoo, etc.

6.      You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf. You must produce all such Documents even if they were deleted or in draft form.  Without

8

limitation, hardware where such data may be stored includes: servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile storage devices, such as thumb or external hard drives. Electronically stored Documents include any computerized data or content stored on electromagnetic media. Without limitation, types of electronically stored Documents include email, voicemail, instant messages, intranet and internet system data, telephone and cellular telephone calling records, data compilations, spreadsheets, word processing Documents, images, databases, digital photocopier memory, and any other information stored in memory storage devices.

7.     Produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document requested together with all non-identical copies and drafts of that Document. If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

8.     Documents not otherwise responsive to these Requests for Production should be produced: (a) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are called for by these Requests for Production; (b) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests for Production; or (c) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

9.     Documents attached to each other should not be separated; separate Documents should not be attached to each other.

10.     Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

11.     If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request for Production or part thereof, for each such Document, You must:

        a.     Identify the type, title and subject matter of the Document;

        b.     State the place, date, and manner of preparation of the Document;

        c.     Identify all authors, addressees, and recipients of the Document, including information about such persons to assess the privilege asserted; and

        d.     Identify the legal privilege(s) and the factual basis for the claim.

12.     Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine.  In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 11 above must be provided.

13.     To the extent a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it:  (a) is missing or lost; (b) has been destroyed; (c) has been transferred to others; and/or (d) has been otherwise disposed of.  In each instance, identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, identify each person having knowledge of the circumstances of the disposition, and identify each person who had possession, custody, or control of the Document.  Documents prepared prior to, but which relate or refer to, the time period covered by these Requests for Production are to be identified and produced.

14.     If any part of the following Requests for Production cannot be responded to in full, please respond to the extent possible, specifying the reason(s) for Your inability to respond to the

remainder and stating whatever information or knowledge You have Concerning the portion to which You do not respond.

15.     If You object to any of these Requests for Production, state in writing with specificity the grounds of Your objections. Any ground not stated shall be waived. If You object to a particular portion of any Request for Production, You shall respond to any other portions of such Request for Production as to which there is no objection and state with specificity the grounds of the objection.

16.     The fact that an investigation is continuing or that discovery is incomplete shall not be a justification for failing to respond to these Requests for Production based on the knowledge or information that You possess at the time You respond to these Requests for Production. If an investigation is continuing or discovery is not complete with respect to the matter inquired into by any Request for Production, so state in Your response to that Request for Production.

17.     If the identity of Documents responding to a Request for Production is not known, then that lack of knowledge must be specifically indicated in the response. If any information requested is not in Your possession, but is known or believed to be in the possession of another person or entity, then identify that person or entity and state the basis of Your belief or knowledge that the requested information is in such person's or entity's possession.

## MANNER OF PRODUCTION

1.     All Documents produced to the TCC shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files and accompanied by true and correct copies or representations of unaltered attendant metadata. Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-

level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents. Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

2.      <u>Database Load Files and Production Media Structure</u>:  Database load files shall consist of: (a) a comma-delimited values (".dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (b) an Opticon (".opt") file to facilitate the loading of tiff images.  Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.

3.      <u>Electronic Documents and Data, Generally</u>:  Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text as to allow the TCC, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Documents' true and original content.

4.      <u>Emails and Attachments, and Other Email Account-Related Documents</u>:  All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format,

accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the TCC.

5.    <u>Documents and Data Created or Stored in or by Structured Electronic Databases</u>: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the TCC to reasonably manage and import those Documents into a useable, coherent database.  Documents must be accompanied by reasonably detailed documentation explaining the Documents' content and format including but not limited to data dictionaries and diagrams.  Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

        a.      XML format file(s);

        b.      Microsoft SQL database(s);

        c.      Access database(s); and/or

        d.      fixed or variable length ASCII delimited files.

6.    <u>Spreadsheets, Multimedia, and Non-Standard File Types</u>:  All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet, database and/or statistical programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced.  A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media.  To the extent You have other file types that do not readily or easily and accurately convert to tiff and searchable text, You may elect to produce those files in native format subject to the other

requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

7. "Other" Electronic Documents: All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8. Paper Documents: Documents originally created or stored on paper shall be produced in tiff format. Relationships between Documents shall be identified within the .dat file utilizing document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings. In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these Requests for Production.

## DOCUMENT REQUESTS

**Request No. 1.** All Documents Concerning the Motion, the Plan, the Disclosure Statement, or any actual or proposed settlements of Your coverage obligations to the Debtors, including any drafts thereof, including, but not limited to, all such Documents prepared, authored, sent, or received by the Debtors, the FCR, and the Coalition.

RESPONSE:

**Request No. 2.** All Documents that You or anyone acting on Your behalf prepared, authored, sent, or received that interpret, refer to, relate to, or otherwise Concern insurance coverage for any Abuse Claim.

RESPONSE:

DOCS_DE:236398.2 85353/002

**Request No. 3.** All Documents that evidence, refer to, relate to, or otherwise Concern reinsurance under any other Insurance Policies You sold to the Debtors, including, but not limited to, (i) all Documents sent or received by You Concerning the collectability of reinsurance for Your liability for Abuse Claims under Your Insurance Policies; and (ii) all Documents that constitute, evidence, refer to, relate to, or otherwise Concern any Communication between You and any reinsurer Concerning any Abuse Claim.

RESPONSE:

**Request No. 4.** Documents sufficient to show all liabilities that You have Concerning each Insurance Policy that the Debtors are proposing to contribute to the Settlement Trust under the Plan.

RESPONSE:

**Request No. 5.** All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern Your financial ability to satisfy Your obligations under any Insurance Policies.

RESPONSE:

**Request No. 6.** If You contend that anything in or Concerning the Plan or Settlement Trust will, if the Plan is confirmed, impact Your rights or obligations (including without limitation inter-insurer contribution claims), all Documents that Concern Your contention.

RESPONSE:

**Request No. 7.** If You contend that the Debtors have not complied with any contractual conditions or obligations under any Insurance Policy in connection with any Abuse Claim, all Documents that Concern Your contention.

RESPONSE:

**Request No. 8.** All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any Abuse Claims where You paid or agreed to pay defense costs and/or make an indemnity payment on behalf of Debtors or any other insureds, including, but not limited to, Documents that identify the Insurance Policy, the name of the claimant, the Type of Abuse Categories, the amount paid for such claim, and whether the amount paid was for defense and/or indemnity.

RESPONSE:

**Request No. 9.** All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any Abuse Claims where You denied or reserved rights with respect to coverage, including, but not limited to, Documents that identify the Insurance Policy, the case caption for the claim You denied or otherwise reserved rights, the name of the claimant, and the monetary amount alleged in such claim.

RESPONSE:

**Request No. 10.** Documents sufficient to Identify (i) each Settlement of an Abuse Claim; (ii) each Verdict in favor of an Abuse Claimant; and (iii) each Verdict in favor of the Defense Concerning an Abuse Claim, including the following information with respect to each such Settlement and Verdict:

a. Your claim file and all Communications Concerning each such Abuse Claim;

b. All complaints or statements of claim associated with each Settlement and Verdict, including the filing date of the action, causes of action asserted, any consolidated action, jurisdiction, and plaintiff's counsel;

c. The stage of the proceeding at the time of the Settlement or Verdict;

16

d.    Amount of Settlement of the Abuse Claim or award pursuant or subject to the Verdict, including total Settlement or award amount, all sub-components of economic and non-economic Settlement or award amounts, and apportionment or allocation of Settlement or award amounts among each defendant or party against which the Abuse Claim was asserted;

e.    With respect to a Verdict in favor of the Defense Concerning an Abuse Claim, amount of Abuse Claim subject to the Verdict, including total alleged amount of Abuse Claim and all alleged sub-components of economic and non-economic amount of Abuse Claim

f.    Roster(s) of Scouting Units associated with the Abuse Claim;

g.    Information which would be responsive to any and all questions contained in Parts 2 – 6 of the "Sexual Abuse Survivor Proof of Claim" form, not limited to but including the following:

i.    Type(s) of Abuse at issue in the Abuse Claim, utilizing the Type of Abuse Categories or specifically describing the type of Abuse if not specifically delineated therein;

ii.    Number of instances of Abuse at issue in the Abuse Claim;

iii.    Year(s) of occurrence of Abuse at issue in the Abuse Claim;

iv.    Age of Abuse Claimant at time of Abuse at issue in the Abuse Claim;

v.    Identity of each defendant or party against which the Abuse Claim was asserted, including the alleged Perpetrator, Local Council, and/or Chartered Organization, as applicable;

vi.    State, city, and county in which each instance of Abuse at issue in the Abuse Claim occurred; and

17

vii.        Any other information or data collected, compiled, or maintained by You in connection with the Abuse Claim, including information with respect to the Abuse Claimant, the alleged Perpetrator, their respective backgrounds or histories related or relevant to the Abuse allegations, and Your knowledge of the same.

h.        The number of accusations (aside from the Abuse Claim at issue) brought against the accused Perpetrator;

i.        The date of the Settlement or Verdict and any payments made in connection therewith;

j.        If the defense of the Abuse Claim was covered by an Insurance Policy, the identity of the Insurance Policy (including a copy thereof) and Insurance Company;

k.        Identity of source(s) of payment of Settlement or Verdict amount, including if the Settlement or Verdict was paid in whole or in part from proceeds of an Insurance Policy, the identity of the Insurance Policy and Insurance Company;

l.        Copies of any agreements between You and the Debtors Concerning coverage for the Settlement of any Abuse Claims and all drafts thereof and Documents relating thereto including, but not limited to, the consent (or lack thereof) of other insureds to enter into any such agreements or Settlements; and

m.        Copies of documentation of the Settlement or Verdict, including any court order approving same.

RESPONSE:

**Request No. 11.**        All Documents Concerning an Abuse Claim that is not otherwise covered by Request No. 10, including the following information with respect to each such Abuse Claim:

a. Your claim file and all Documents Concerning each such Abuse Claim;

b. Any complaints or statements of claim associated with each Abuse Claim, including the filing date of the action, causes of action asserted, any consolidated action, jurisdiction, and plaintiff's counsel;

c. Amount of the Abuse Claim, including total amount of the Abuse Claim, all sub-components of economic and non-economic amount of Abuse Claim, and apportionment or allocation of amounts among each defendant or party against which the Abuse Claim was asserted

d. Roster(s) of Scouting Units associated with the Abuse Claim;

e. Information which would be responsive to any and all questions contained in Parts 2 – 6 of the "Sexual Abuse Survivor Proof of Claim" form, not limited to but including the following:

i. Type(s) of Abuse at issue in the Abuse Claim, utilizing the Type of Abuse Categories or specifically describing the type of Abuse if not specifically delineated therein;

ii. Number of instances of Abuse at issue in the Abuse Claim;

iii. Year(s) of occurrence of Abuse at issue in the Abuse Claim;

iv. Age of Abuse Claimant at time of Abuse at issue in the Abuse Claim;

v. Identity of each defendant or party against which the Abuse Claim is asserted, including the alleged Perpetrator, Local Council, and/or Chartered Organization, as applicable;

vi. State, city, and county in which each instance of Abuse at issue in the Abuse Claim occurred; and

vii. Any other information or data collected, compiled or maintained by

19

You in connection with the Abuse Claim, including information with respect to the Abuse Claimant, the alleged Perpetrator, their respective backgrounds or histories related or relevant to the Abuse allegations, and Your knowledge of the same.

       f.     The number of accusations (aside from the Abuse Claim at issue) brought against the accused Perpetrator;

       g.     If the defense of the Abuse Claim was covered by an Insurance Policy, the identity of the Insurance Policy and Insurance Company;

       h.     Any payments made in connection with the Abuse Claim, and the amounts sources and dates of any such payments;

       i.     Copies of any agreements between You and the Debtors Concerning coverage for the Settlement of any Abuse Claims and all drafts thereof and Documents relating thereto including, but not limited to, the consent (or lack thereof) of other insureds to enter into any such agreements or Settlements; and

       j.     Copies of documentation of the Abuse Claim.

RESPONSE:

**Request No. 12.**     The most recent loss run for each Insurance Policy You sold to the Debtors.

RESPONSE:

**Request No. 13.**     All IV Files and all Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any IV Files.

RESPONSE:

**Request No. 14.**     All Documents prepared by the Debtors or Bates White Concerning Abuse Claims provided to You.

20

RESPONSE:

**Request No. 15.**     All Documents Concerning Abuse Claims provided by You to the Debtors or Bates White.

RESPONSE:

**Request No. 16.**     All Documents, including analyses prepared by the Debtors, You, or anyone at the Debtors' or Your behalf, Concerning any estimate or approximation of the number of Perpetrators and/or the number of Survivors.

RESPONSE:

**Request No. 17.**     All Documents, including expert reports, provided to You from the Debtors or Abuse Claimants Concerning Abuse Claims that assert or ascribe a value to an Abuse Claim.

RESPONSE:

**Request No. 18.**     All Documents that constitute, evidence, refer to, relate to, or otherwise Concern any reserve that You contemplated, established, set, maintained, and/or changed regarding the Abuse Claims for each Insurance Policy year.

RESPONSE:

**Request No. 19.**     All Documents that constitute, evidence, refer to, relate to, or otherwise Concern an Insurance Policy that provides or potentially provides coverage for Abuse Claims.

RESPONSE:

**Request No. 20.**     All Documents that You intend to rely on at the Confirmation Hearing or in connection with the estimation or valuation of Abuse Claims.

RESPONSE:

DOCS_DE:236398.2 85353/002

**Request No. 21.**      All Documents that constitute, evidence, refer to, relate to, or otherwise Concern any BSA Plan Settlement.

RESPONSE:

**Request No. 22.**      All Documents, including, without limitation claims-handling manuals, guidelines, policies, practices, directives, and procedures, that Concern Your handling, processing, adjusting, review, investigation, evaluation, acceptance, denial, reservation of rights, or other response to sexual abuse claims, including the Abuse Claims, under any Insurance Policy.

RESPONSE:

**Request No. 23.**      All Documents Concerning Your policies, practices, and procedures that Concern valuing or evaluating sexual abuse claims, including Abuse Claims, that were filed after the expiration of any applicable statute of limitations or were filed in jurisdictions where the statute of limitations with respect to sexual abuse claims may change, including, without limitation, any policies, procedures, or practices that prohibit settling or otherwise resolving such sexual-abuse claims.

RESPONSE:

**Request No. 24.**      All minutes of or other written documentation relating to every meeting of Your board of directors or managers, any committee or subcommittee thereof, any task force or working group thereof, or any of Your other executive task forces or working groups, during which there was discussion of the Debtors, the Insurance Policies sold by You to the Debtors, Abuse Claims, or the Debtors' claims for insurance coverage under Insurance Policies (whether or not regarding the Abuse Claims), including without limitation, insurance coverage for

such claims, including but not limited to handouts, agendas, attachments, and notes made by participants.

RESPONSE:

**Request No. 25.**     All Documents that refer to, relate to, memorialize, or otherwise Concern an opinion, conclusion, or analysis as to the absence or existence of an aggregate limit of liability Concerning any Insurance Policy applying to Abuse Claims and Non-Abuse Claims.

RESPONSE:

**Request No. 26.**     All Documents Concerning the validity and amount of the "Claim for BSA to participate in an allocation of Insurer's past and future loss, if any, relating to Abuse Claims" You assert against the Debtors in the FFIC Proof of Claim.

RESPONSE:

**Request No. 27.**     All Documents Concerning the validity and amount of the "Claim for Restitution from BSA for Amounts Paid by Insurers" You assert against the Debtors in the FFIC Proof of Claim.

RESPONSE:

**Request No. 28.**     All Documents Concerning the validity and amount of the "Claim for Contribution, Indemnification, Allocation, or Set-Off" You assert against the Debtors in the FFIC Proof of Claim.

RESPONSE:

**Request No. 29.**     All Documents Concerning the validity and amount of the "Claim for Indemnification from BSA" You assert against the Debtors in the FFIC Proof of Claim.

RESPONSE:

DOCS_DE:236398.2 85353/002

**Request No. 30.**      All Documents Concerning the validity and amount of the "Setoff and Recoupment" You assert against the Debtors in the FFIC Proof of Claim.

RESPONSE:

**Request No. 31.**      All Documents Concerning the validity and amount of the "Claim for Subrogation" You assert against the Debtors in the FFIC Proof of Claim.

RESPONSE:

**Request No. 32.**      All Documents Concerning the validity and amount of the "Claims under Illinois Coverage Action" You assert against the Debtors in the FFIC Proof of Claim.

RESPONSE:

**Request No. 33.**      All Documents Concerning the basis, validity, and amount of any security interest You assert against the Debtors.

RESPONSE:

**Request No. 34.**      All Documents Concerning the basis, validity, and amount of any administrative expense claim You assert against the Debtors.

RESPONSE:

**Request No. 35.**      All Documents Concerning any Indirect Abuse Claim You assert or may assert against the Debtors, including, but not limited to, the value or amount of such Indirect Abuse Claim.

RESPONSE:

*[Remainder of page intentionally left blank]*

Dated: October 8, 2021
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
James I. Stang (CA Bar No. 94435) (admitted *pro hac vice*)
Iain A.W. Nasatir (CA Bar No. 148977) (admitted *pro hac vice*)
Kenneth H. Brown (CA Bar No. 100396) (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No. 271038) (admitted *pro hac vice*)
Steven W. Golden (DE No. LP 0127)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tele/Fax: (302) 652-4100 / (302) 652-4400
Email:        jstang@pszjlaw.com
              inasatir@pszjlaw.com
              kbrown@pszjlaw.com
              joneill@pszjlaw.com
              jlucas@pszjlaw.com
              sgolden@pszjlaw.com

            -and-

PASICH LLP

Jeffrey L. Schulman (NY Bar No. 3903697)
757 Third Avenue, 20th Floor
New York, New York 10017
Telephone:  (212) 686-5000
JSchulman@PasichLLP.com

            -and-

Kirk Pasich (CA Bar No. 94242)
10880 Wilshire Boulevard, Suite 2000
Los Angeles, California 90024
Telephone:  (424) 313-7850
KPasich@PasichLLP.com

*Counsel for the Tort Claimants' Committee*

# EXHIBIT G

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| Debtors.[1] | (Jointly Administered) |
| | Re Docket Nos. 2618, 6438, 6443, 6445 |

## THE OFFICIAL COMMITTEE OF TORT CLAIMANTS TO BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC'S REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO LIBERTY MUTUAL INSURANCE COMPANY RELATED TO PLAN CONFIRMATION (FIRST SET)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable to these proceedings by Rules 9014, 7026, and 7034 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and pursuant to the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Official Committee of Tort Claimants to Boy Scouts of America and Delaware BSA, LLC (the "TCC"), by and through its undersigned counsel, hereby serve the following requests for production of documents (the "Requests for Production") on Liberty Mutual Insurance Company ("Liberty Mutual") in connection with the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6443] (the "Plan") and any proceedings arising therefrom or related thereto in connection with the Debtors' chapter 11 cases.

Please produce the documents and the production media to the TCC by October 18, 2021.

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

## **DEFINITIONS**

For the purposes of these Requests for Production, the following Definitions shall apply:

1.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.  The singular shall include the plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive; and the term "including" means "including without limitation."  The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense.

2.      Capitalized terms not otherwise defined herein shall have the same meanings set forth in the Plan.

3.      "Abuse" shall have the meaning provided in the Plan.

4.      "Abuse Claim" means a liquidated or unliquidated Claim against one or more Abuse Parties that is attributable to, arises from, is based upon, relates to, results from, or is otherwise Concerned with, in whole or in part, directly, indirectly, or derivatively, alleged Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based on misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory, including any theory based on public policy or any act or failure to act by an Abuse Party or any other Person for whom any Abuse Party is alleged to be responsible.  The term "Abuse Claim" includes Direct Abuse Claims and Indirect Abuse Claims.

DOCS_DE:236414.2 85353/002

5.      "Abuse Claimant" shall mean the party asserting an Abuse Claim and their attorneys, advisors, agents, representatives, and experts.

6.      "Abuse Party" means, individually and collectively, (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Chartered Organizations; (f) Insurance Companies; or (g) all of any of the foregoing's Persons' Representatives.

7.      "Bates White" means Bates White LLC, the Debtors' abuse claims consultant and advisor.

8.      "BSA Plan Settlement" means any settlement, whether incorporated into the Plan or presented for approval pursuant to Bankruptcy Rule 9019, between the Debtors and any other Entity (including, but not limited to, an Insurance Company, Chartered Organization, or Local Council), including, but not limited to, the Hartford Insurance Settlement and the TCJC Settlement.

9.      "Chapter 11 Cases" shall mean the above-captioned chapter 11 cases of Boy Scouts of America and Delaware BSA, LLC, pending before the United States Bankruptcy Court for the District of Delaware.

10.     "Chartered Organization" shall have the meaning provided in the Plan.

11.     "Claim" means any "claim," as defined in section 101(5) of the Bankruptcy Code.

12.     "Coalition" shall mean the Coalition of Abused Scouts for Justice, an ad hoc committee that filed a notice of appearance in the Chapter 11 Cases on July 24, 2020 at Docket No. 1040, and its members, agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, representatives, affiliates, subsidiaries, predecessors and/or successors.

13.     "Communications" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes,

telegrams, correspondence, memoranda, emails, facsimile transmissions, or other form of verbal, written, mechanical, or electronic disclosure, in Your actual or constructive control or custody or in the control or custody of any current or former affiliates, representatives or advisors.

14.     "Concerning" means relating to, evidencing, supporting, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, referencing, discussing, indicating, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

15.     "Confirmation Hearing" shall have the meaning provided in the Plan.

16.     "Debtors" means, collectively or individually, as context requires and to encompass responsive documents Boy Scouts of America and Delaware BSA, LLC, and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

17.     "Disclosure Statement" shall mean the *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6445], as such Document may be amended, supplemented, or modified from time to time.

18.     "Documents" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all Documents and information in Your possession, custody, or control, and includes: all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda, transcripts, tapes, or other voice recordings, and all other Documents and tangible things, including booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts,

agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, print-outs, and all other data, whether recorded by electronic or other means, and all drafts thereof. If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on any of the pages thereof, then each such non-identical copy is a separate Document and must be produced. When examples of categories or types of Documents are given in a particular Request for Production by use of phrases such as "including," this shall always be interpreted as being for illustrative purposes only (*i.e.*, to be understood as "including without limitation") and in no way limits or narrows the scope of any Request for Production. "Documents" always includes Communications, whether so stated in a particular Request for Production or not.

19. "FCR" shall mean James L. Patton, Jr., the legal representative appointed by the Bankruptcy Court for holders of Future Abuse Claims, or any successor legal representative appointed by the Bankruptcy Court, and his agents, accountants, financial advisors, employees, experts, attorneys, representatives, affiliates, predecessors and/or successors.

20. "Hartford Insurance Settlement" shall have the meaning provided in the Plan.

21. "Insurance Company" shall have the meaning provided in the Plan.

22. "Insurance Policy" shall have the meaning provided in the Plan, including all rights and benefits thereunder, and the proceeds thereof.

23. "IV Files" shall mean any Documents that identify individuals associated with the Debtors accused of Abuse, including those records and files referred to as "ineligible volunteer" or "perversion" files.

24. "Liberty Mutual" shall mean Liberty Mutual Insurance Company and its agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

25. "Liberty Mutual Policies" shall mean the Insurance Policies You sold to the Debtors between 1996 and 2008.

26. "Liberty Mutual Proofs of Claim" shall mean the Proofs of Claim filed by You against the Debtors bearing proof of claim numbers 639 and 4971.

27. "Local Councils" shall have the meaning provided in the Plan.

28. "Motion" shall mean the *Debtors' Motion for Entry of an Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation and Voting Procedures, (III) Approving Forms of Ballots, (IV) Approving Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief* [Docket No. 2295], as such Document may be amended, supplemented, or modified from time to time.

29. "Non-Abuse Claims" shall have the meaning provided in the Plan.

30. "Perpetrator" shall have the meaning provided in the Plan.

31. "Petition Date" shall mean February 18, 2020.

DOCS_DE:236414.2 85353/002

32.     "<u>Plan</u>" shall mean the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6443], as such Document may be amended, supplemented, or modified from time to time.

33.     "<u>Prepetition</u>" shall mean occurring prior to the Petition Date.

34.     "<u>Proof of Claim</u>" shall have the meaning provided in the Plan.

35.     "<u>Scouting Unit</u>" means an entity that conducts scouting for a Chartered Organization, including but not limited to a pack, den, troop, Sea Explorers, Air Explorers, Learning for Life, Explorers, Venturing, crew, ship, chapter, and any associations that were predecessor associations of the foregoing.

36.     "<u>Settlement</u>" shall mean any Prepetition settlement or other resolution of an Abuse Claim.

37.     "<u>Settlement Trust</u>" shall have the meaning provided in the Plan.

38.     "<u>Survivor</u>" means a survivor of Abuse in scouting, including Abuse Claimants.

39.     "<u>TCJC Settlement</u>" shall have the meaning provided in the Plan.

40.     "<u>Type of Abuse Categories</u>" shall mean the following categories of Abuse: (a) penetration; (b) oral sex; (c) masturbation; (d) fondling/groping; (e) touching – bare skin; (f) touching – over the clothes; (g) non-touching; and (h) other aggravating factors.

41.     "<u>Verdict</u>" shall mean any Prepetition verdict, judgment, award or decision of a court, arbitrator, mediator or similar tribunal Concerning an Abuse Claim.

42.     "<u>You</u>" or "<u>Your</u>" and variants thereof mean Liberty Mutual.

## INSTRUCTIONS

The preceding Definitions apply to each of these Instructions, and for purposes of these Requests for Production, the following Instructions shall be followed:

1.      Civil Rule 34, made applicable to this proceeding pursuant to Bankruptcy Rules 7034 and 9014(c), is hereby incorporated by reference and applies to each of the following instructions.

2.      All responses shall comply with the requirements of the Civil Rules, the Bankruptcy Rules, the Local Rules, and any Court Order.

3.      Unless otherwise stated in a specific Request for Production herein, the relevant time period shall be from the respective inception of each of the Debtors to the present.

4.      These Requests for Production shall be deemed continuing in nature.  In the event You become aware of or acquire additional information relating or referring to any of the following Requests for Production, such additional information is to be promptly produced.

5.      Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of current or former employees, officers, directors, agents, agents' representatives, consultants, contractors, vendors, or any fiduciary or other third parties, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, local area networks, application-based communications services (including, without limitation, Facebook Messenger, Instant Bloomberg, WeChat, Skype, KakaoTalk, WhatsApp, Signal, iMessage, etc.), web-based file hosting services (including, without limitation, Dropbox, Box, Apple iCloud, Google Drive, Hightail, etc.), or web-based email systems such as Gmail, Yahoo, etc.

6.      You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf. You must produce all such Documents even if they were deleted or in draft form.  Without

limitation, hardware where such data may be stored includes: servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile storage devices, such as thumb or external hard drives. Electronically stored Documents include any computerized data or content stored on electromagnetic media. Without limitation, types of electronically stored Documents include email, voicemail, instant messages, intranet and internet system data, telephone and cellular telephone calling records, data compilations, spreadsheets, word processing Documents, images, databases, digital photocopier memory, and any other information stored in memory storage devices.

7. Produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document requested together with all non-identical copies and drafts of that Document. If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

8. Documents not otherwise responsive to these Requests for Production should be produced: (a) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are called for by these Requests for Production; (b) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests for Production; or (c) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

9. Documents attached to each other should not be separated; separate Documents should not be attached to each other.

10. Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

11.     If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request for Production or part thereof, for each such Document, You must:

     a.     Identify the type, title and subject matter of the Document;

     b.     State the place, date, and manner of preparation of the Document;

     c.     Identify all authors, addressees, and recipients of the Document, including information about such persons to assess the privilege asserted; and

     d.     Identify the legal privilege(s) and the factual basis for the claim.

12.     Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine.  In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 11 above must be provided.

13.     To the extent a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it:  (a) is missing or lost; (b) has been destroyed; (c) has been transferred to others; and/or (d) has been otherwise disposed of.  In each instance, identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, identify each person having knowledge of the circumstances of the disposition, and identify each person who had possession, custody, or control of the Document.  Documents prepared prior to, but which relate or refer to, the time period covered by these Requests for Production are to be identified and produced.

14.     If any part of the following Requests for Production cannot be responded to in full, please respond to the extent possible, specifying the reason(s) for Your inability to respond to the

remainder and stating whatever information or knowledge You have Concerning the portion to which You do not respond.

15.     If You object to any of these Requests for Production, state in writing with specificity the grounds of Your objections.  Any ground not stated shall be waived.  If You object to a particular portion of any Request for Production, You shall respond to any other portions of such Request for Production as to which there is no objection and state with specificity the grounds of the objection.

16.     The fact that an investigation is continuing or that discovery is incomplete shall not be a justification for failing to respond to these Requests for Production based on the knowledge or information that You possess at the time You respond to these Requests for Production.  If an investigation is continuing or discovery is not complete with respect to the matter inquired into by any Request for Production, so state in Your response to that Request for Production.

17.     If the identity of Documents responding to a Request for Production is not known, then that lack of knowledge must be specifically indicated in the response.  If any information requested is not in Your possession, but is known or believed to be in the possession of another person or entity, then identify that person or entity and state the basis of Your belief or knowledge that the requested information is in such person's or entity's possession.

## MANNER OF PRODUCTION

1.     All Documents produced to the TCC shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files and accompanied by true and correct copies or representations of unaltered attendant metadata.  Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-

level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents. Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

2. <u>Database Load Files and Production Media Structure</u>: Database load files shall consist of: (a) a comma-delimited values (".dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (b) an Opticon (".opt") file to facilitate the loading of tiff images. Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.

3. <u>Electronic Documents and Data, Generally</u>: Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text as to allow the TCC, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Documents' true and original content.

4. <u>Emails and Attachments, and Other Email Account-Related Documents</u>: All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format,

accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the TCC.

5. <u>Documents and Data Created or Stored in or by Structured Electronic Databases</u>: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the TCC to reasonably manage and import those Documents into a useable, coherent database. Documents must be accompanied by reasonably detailed documentation explaining the Documents' content and format including but not limited to data dictionaries and diagrams. Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

  a.  XML format file(s);

  b.  Microsoft SQL database(s);

  c.  Access database(s); and/or

  d.  fixed or variable length ASCII delimited files.

6. <u>Spreadsheets, Multimedia, and Non-Standard File Types</u>: All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet, database and/or statistical programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent You have other file types that do not readily or easily and accurately convert to tiff and searchable text, You may elect to produce those files in native format subject to the other

13

requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

7.  "Other" Electronic Documents:  All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8.  Paper Documents:  Documents originally created or stored on paper shall be produced in tiff format. Relationships between Documents shall be identified within the .dat file utilizing document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings. In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these Requests for Production.

## DOCUMENT REQUESTS

**Request No. 1.**  All Documents Concerning the Motion, the Plan, the Disclosure Statement, or any actual or proposed settlements of Your coverage obligations to the Debtors, including any drafts thereof, including, but not limited to, all such Documents prepared, authored, sent, or received by the Debtors, the FCR, and the Coalition.

RESPONSE:

**Request No. 2.**  All Documents that You or anyone acting on Your behalf prepared, authored, sent, or received that interpret, refer to, relate to, or otherwise Concern insurance coverage for any Abuse Claim.

RESPONSE:

14

**Request No. 3.**    All Documents that evidence, refer to, relate to, or otherwise Concern reinsurance under any other Insurance Policies You sold to the Debtors, including, but not limited to, (i) all Documents sent or received by You Concerning the collectability of reinsurance for Your liability for Abuse Claims under Your Insurance Policies; and (ii) all Documents that constitute, evidence, refer to, relate to, or otherwise Concern any Communication between You and any reinsurer Concerning any Abuse Claim.

RESPONSE:

**Request No. 4.**    Documents sufficient to show all liabilities that You have Concerning each Liberty Mutual Insurance Policy that the Debtors are proposing to contribute to the Settlement Trust under the Plan.

RESPONSE:

**Request No. 5.**    All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern Your financial ability to satisfy Your obligations under any Liberty Mutual Insurance Policy.

RESPONSE:

**Request No. 6.**    If You contend that anything in or Concerning the Plan or Settlement Trust will, if the Plan is confirmed, impact Your rights or obligations (including without limitation inter-insurer contribution claims), all Documents that Concern Your contention.

RESPONSE:

**Request No. 7.**    If You contend that the Debtors have not complied with any contractual conditions or obligations under any Insurance Policy in connection with any Abuse Claim, all Documents that Concern Your contention.

RESPONSE:

**Request No. 8.**         All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any Abuse Claims where You paid or agreed to pay defense costs and/or make an indemnity payment on behalf of Debtors or any other insureds, including, but not limited to, Documents that identify the Insurance Policy, the name of the claimant, the Type of Abuse Categories, the amount paid for such claim, and whether the amount paid was for defense and/or indemnity.

RESPONSE:

**Request No. 9.**         All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any Abuse Claims where You denied or reserved rights with respect to coverage, including, but not limited to, Documents that identify the Insurance Policy, the case caption for the claim You denied or otherwise reserved rights, the name of the claimant, and the monetary amount alleged in such claim.

RESPONSE:

**Request No. 10.**         Documents sufficient to Identify (i) each Settlement of an Abuse Claim; (ii) each Verdict in favor of an Abuse Claimant; and (iii) each Verdict in favor of the Defense Concerning an Abuse Claim, including the following information with respect to each such Settlement and Verdict:

a.         Your claim file and all Communications Concerning each such Abuse Claim;

b.         All complaints or statements of claim associated with each Settlement and Verdict, including the filing date of the action, causes of action asserted, any consolidated action, jurisdiction, and plaintiff's counsel;

c.         The stage of the proceeding at the time of the Settlement or Verdict;

16

d.      Amount of Settlement of the Abuse Claim or award pursuant or subject to the Verdict, including total Settlement or award amount, all sub-components of economic and non-economic Settlement or award amounts, and apportionment or allocation of Settlement or award amounts among each defendant or party against which the Abuse Claim was asserted;

e.      With respect to a Verdict in favor of the Defense Concerning an Abuse Claim, amount of Abuse Claim subject to the Verdict, including total alleged amount of Abuse Claim and all alleged sub-components of economic and non-economic amount of Abuse Claim

f.      Roster(s) of Scouting Units associated with the Abuse Claim;

g.      Information which would be responsive to any and all questions contained in Parts 2 – 6 of the "Sexual Abuse Survivor Proof of Claim" form, not limited to but including the following:

i.      Type(s) of Abuse at issue in the Abuse Claim, utilizing the Type of Abuse Categories or specifically describing the type of Abuse if not specifically delineated therein;

ii.      Number of instances of Abuse at issue in the Abuse Claim;

iii.      Year(s) of occurrence of Abuse at issue in the Abuse Claim;

iv.      Age of Abuse Claimant at time of Abuse at issue in the Abuse Claim;

v.      Identity of each defendant or party against which the Abuse Claim was asserted, including the alleged Perpetrator, Local Council, and/or Chartered Organization, as applicable;

vi.      State, city, and county in which each instance of Abuse at issue in the Abuse Claim occurred; and

vii.     Any other information or data collected, compiled, or maintained by You in connection with the Abuse Claim, including information with respect to the Abuse Claimant, the alleged Perpetrator, their respective backgrounds or histories related or relevant to the Abuse allegations, and Your knowledge of the same.

h.     The number of accusations (aside from the Abuse Claim at issue) brought against the accused Perpetrator;

i.     The date of the Settlement or Verdict and any payments made in connection therewith;

j.     If the defense of the Abuse Claim was covered by an Insurance Policy, the identity of the Insurance Policy (including a copy thereof) and Insurance Company;

k.     Identity of source(s) of payment of Settlement or Verdict amount, including if the Settlement or Verdict was paid in whole or in part from proceeds of an Insurance Policy, the identity of the Insurance Policy and Insurance Company;

l.     Copies of any agreements between You and the Debtors Concerning coverage for the Settlement of any Abuse Claims and all drafts thereof and Documents relating thereto including, but not limited to, the consent (or lack thereof) of other insureds to enter into any such agreements or Settlements; and

m.     Copies of documentation of the Settlement or Verdict, including any court order approving same.

RESPONSE:

**Request No. 11.**     All Documents Concerning an Abuse Claim that is not otherwise covered by Request No. 10, including the following information with respect to each such Abuse Claim:

a. Your claim file and all Documents Concerning each such Abuse Claim;

b. Any complaints or statements of claim associated with each Abuse Claim, including the filing date of the action, causes of action asserted, any consolidated action, jurisdiction, and plaintiff's counsel;

c. Amount of the Abuse Claim, including total amount of the Abuse Claim, all sub-components of economic and non-economic amount of Abuse Claim, and apportionment or allocation of amounts among each defendant or party against which the Abuse Claim was asserted

d. Roster(s) of Scouting Units associated with the Abuse Claim;

e. Information which would be responsive to any and all questions contained in Parts 2 – 6 of the "Sexual Abuse Survivor Proof of Claim" form, not limited to but including the following:

i. Type(s) of Abuse at issue in the Abuse Claim, utilizing the Type of Abuse Categories or specifically describing the type of Abuse if not specifically delineated therein;

ii. Number of instances of Abuse at issue in the Abuse Claim;

iii. Year(s) of occurrence of Abuse at issue in the Abuse Claim;

iv. Age of Abuse Claimant at time of Abuse at issue in the Abuse Claim;

v. Identity of each defendant or party against which the Abuse Claim is asserted, including the alleged Perpetrator, Local Council, and/or Chartered Organization, as applicable;

vi. State, city, and county in which each instance of Abuse at issue in the Abuse Claim occurred; and

vii. Any other information or data collected, compiled or maintained by

You in connection with the Abuse Claim, including information with respect to the Abuse Claimant, the alleged Perpetrator, their respective backgrounds or histories related or relevant to the Abuse allegations, and Your knowledge of the same.

   f.  The number of accusations (aside from the Abuse Claim at issue) brought against the accused Perpetrator;

   g.  If the defense of the Abuse Claim was covered by an Insurance Policy, the identity of the Insurance Policy and Insurance Company;

   h.  Any payments made in connection with the Abuse Claim, and the amounts sources and dates of any such payments;

   i.  Copies of any agreements between You and the Debtors Concerning coverage for the Settlement of any Abuse Claims and all drafts thereof and Documents relating thereto including, but not limited to, the consent (or lack thereof) of other insureds to enter into any such agreements or Settlements; and

   j.  Copies of documentation of the Abuse Claim.

  RESPONSE:

**Request No. 12.**  The most recent loss run for each Liberty Mutual Insurance Policy.

  RESPONSE:

**Request No. 13.**  All IV Files and all Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any IV Files.

  RESPONSE:

**Request No. 14.**  All Documents prepared by the Debtors or Bates White Concerning Abuse Claims provided to You.

  RESPONSE:

**Request No. 15.**     All Documents Concerning Abuse Claims provided by You to the Debtors or Bates White.

RESPONSE:

**Request No. 16.**     All Documents, including analyses prepared by the Debtors, You, or anyone at the Debtors' or Your behalf, Concerning any estimate or approximation of the number of Perpetrators and/or the number of Survivors.

RESPONSE:

**Request No. 17.**     All Documents, including expert reports, provided to You from the Debtors or Abuse Claimants Concerning Abuse Claims that assert or ascribe a value to an Abuse Claim.

RESPONSE:

**Request No. 18.**     All Documents that constitute, evidence, refer to, relate to, or otherwise Concern any reserve that You contemplated, established, set, maintained, and/or changed regarding the Abuse Claims for each Liberty Mutual Insurance Policy year.

RESPONSE:

**Request No. 19.**     All Documents that constitute, evidence, refer to, relate to, or otherwise Concern an Insurance Policy that provides or potentially provides coverage for Abuse Claims.

RESPONSE:

**Request No. 20.**     All Documents that You intend to rely on at the Confirmation Hearing or in connection with the estimation or valuation of Abuse Claims.

RESPONSE:

**Request No. 21.**     All Documents that constitute, evidence, refer to, relate to, or otherwise Concern any BSA Plan Settlement.

RESPONSE:

**Request No. 22.**     All Documents, including, without limitation claims-handling manuals, guidelines, policies, practices, directives, and procedures, that Concern Your handling, processing, adjusting, review, investigation, evaluation, acceptance, denial, reservation of rights, or other response to sexual abuse claims, including the Abuse Claims, under any Insurance Policy.

RESPONSE:

**Request No. 23.**     All Documents Concerning Your policies, practices, and procedures that Concern valuing or evaluating sexual abuse claims, including Abuse Claims, that were filed after the expiration of any applicable statute of limitations or were filed in jurisdictions where the statute of limitations with respect to sexual abuse claims may change, including, without limitation, any policies, procedures, or practices that prohibit settling or otherwise resolving such sexual-abuse claims.

RESPONSE:

**Request No. 24.**     All minutes of or other written documentation relating to every meeting of Your board of directors or managers, any committee or subcommittee thereof, any task force or working group thereof, or any of Your other executive task forces or working groups, during which there was discussion of the Debtors, the Liberty Mutual Insurance Policies, Abuse Claims, or the Debtors' claims for insurance coverage under Insurance Policies (whether or not regarding the Abuse Claims), including without limitation, insurance coverage for such claims, including but not limited to handouts, agendas, attachments, and notes made by participants.

RESPONSE:

**Request No. 25.**    All Documents that refer to, relate to, memorialize, or otherwise Concern an opinion, conclusion, or analysis as to the absence or existence of an aggregate limit of liability Concerning any Insurance Policy applying to Abuse Claims and Non-Abuse Claims.

RESPONSE:

**Request No. 26.**    All Documents Concerning the distinction between "Personal Injury" and "Bodily Injury" as those phrases are defined in the Liberty Mutual Policies.

RESPONSE:

**Request No. 27.**    All Documents Concerning the distinction, difference, or lack thereof between "Personal Injury" and "Bodily Injury" as those phrases are defined in the Liberty Mutual Policies.

RESPONSE:

**Request No. 28.**    If You contend that any Liberty Mutual Policies provide a $1,000,000 aggregate limit of liability for any insurance coverage other than "Bodily Injury Liability and Property Damage Liability," all Documents Concerning Your contention.

RESPONSE:

**Request No. 29.**    If You contend that any Liberty Mutual Policies provide a $1,000,000 aggregate limit of liability for "Personal Injury" as that phrase is defined in the Liberty Mutual Policies, all Documents Concerning Your contention.

RESPONSE:

**Request No. 30.**    All Concerning the impairment and/or exhaustion of any Liberty Mutual Policy.

RESPONSE:

**Request No. 31.**     All Documents Concerning Your analysis of whether the Abuse Claims Concern "Personal Injury" as that phrase is defined in the Liberty Mutual Policies.

RESPONSE:

**Request No. 32.**     All Documents Concerning Your analysis of whether the Abuse Claims Concern "Bodily Injury" as that phrase is defined in the Liberty Mutual Policies.

RESPONSE:

**Request No. 33.**     If You contend that the Deductible Endorsement, as such term is defined in the Liberty Mutual Policies does not require Liberty Mutual "to pay any damages within the deductible" if the insured fails to pay such amounts, all Documents Concerning Your contention.

RESPONSE:

**Request No. 34.**     All drafts of the Deductible Endorsement in any Liberty Mutual Policy.

RESPONSE:

**Request No. 35.**     All drafts of any Liberty Mutual Policy.

RESPONSE:

**Request No. 36.**     All drafts of any definition of "Personal Injury" and/or "Bodily Injury," as such terms are used in any Liberty Mutual Policy.

RESPONSE:

**Request No. 37.**     All Documents Concerning the payment of "deductible amounts" by You pursuant to the Deductible Endorsement in any Liberty Mutual Policies.

RESPONSE:

**Request No. 38.**     All Documents Concerning the validity and amount of the Claims You assert in the Liberty Mutual Proofs of Claim.

RESPONSE:

**Request No. 39.**     All Documents Concerning Your assertion of a lien securing amounts that You assert are owing to you in the Liberty Mutual Proofs of Claim.

RESPONSE:

**Request No. 40.**     All Documents Concerning Your assertion that the amounts You assert against the Debtors in the Liberty Mutual Proofs of Claim are accruing interest at a fixed rate.

RESPONSE:

**Request No. 41.**     All Documents Concerning any draws You have made on the Letter of Credit issued by JP Morgan Chase Bank, N.A. at the Debtors' request in the amount of $6,500,000.

RESPONSE:

**Request No. 42.**     All Documents Concerning any draws on any cash escrow accounts supporting the Debtors' obligations under any Liberty Mutual Policies.

RESPONSE:

**Request No. 43.**     All Documents Concerning any Indirect Abuse Claim You assert or may assert against the Debtors, including, but not limited to, the value or amount of such Indirect Abuse Claim.

RESPONSE:

Dated: October 8, 2021
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
James I. Stang (CA Bar No. 94435) (admitted *pro hac vice*)
Iain A.W. Nasatir (CA Bar No. 148977) (admitted *pro hac vice*)
Kenneth H. Brown (CA Bar No. 100396) (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No. 271038) (admitted *pro hac vice*)
Steven W. Golden (DE No. LP 0127)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tele/Fax: (302) 652-4100 / (302) 652-4400
Email:          jstang@pszjlaw.com
                inasatir@pszjlaw.com
                kbrown@pszjlaw.com
                joneill@pszjlaw.com
                jlucas@pszjlaw.com
                sgolden@pszjlaw.com

        -and-

PASICH LLP

Jeffrey L. Schulman (NY Bar No. 3903697)
757 Third Avenue, 20th Floor
New York, New York 10017
Telephone:  (212) 686-5000
JSchulman@PasichLLP.com

        -and-

Kirk Pasich (CA Bar No. 94242)
10880 Wilshire Boulevard, Suite 2000
Los Angeles, California 90024
Telephone:  (424) 313-7850
KPasich@PasichLLP.com

*Counsel for the Tort Claimants' Committee*

# EXHIBIT H

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| Debtors.[1] | (Jointly Administered) |
| | Re Docket Nos. 2618, 6438, 6443, 6445 |

## THE OFFICIAL COMMITTEE OF TORT CLAIMANTS
## TO BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC'S
## REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO OLD REPUBLIC
## INSURANCE COMPANY RELATED TO PLAN CONFIRMATION (FIRST SET)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable to these proceedings by Rules 9014, 7026, and 7034 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and pursuant to the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Official Committee of Tort Claimants to Boy Scouts of America and Delaware BSA, LLC (the "TCC"), by and through its undersigned counsel, hereby serve the following requests for production of documents (the "Requests for Production") on Old Republic Insurance Company ("ORIC") in connection with the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6443], and any amendments, supplements or modifications thereto (the "Plan") and any proceedings arising therefrom or related thereto in connection with the Debtors' chapter 11 cases.

Please produce the documents and the production media to the TCC by October 18, 2021.

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

## DEFINITIONS

For the purposes of these Requests for Production, the following Definitions shall apply:

1.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.  The singular shall include the plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive; and the term "including" means "including without limitation."  The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense.

2.      Capitalized terms not otherwise defined herein shall have the same meanings set forth in the Plan.

3.      "Abuse" shall have the meaning provided in the Plan.

4.      "Abuse Claim" means a liquidated or unliquidated Claim against one or more Abuse Parties that is attributable to, arises from, is based upon, relates to, results from, or is otherwise Concerned with, in whole or in part, directly, indirectly, or derivatively, alleged Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based on misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory, including any theory based on public policy or any act or failure to act by an Abuse Party or any other Person for whom any Abuse Party is alleged to be responsible.  The term "Abuse Claim" includes Direct Abuse Claims and Indirect Abuse Claims.

5.     "Abuse Claimant" shall mean the party asserting an Abuse Claim and their attorneys, advisors, agents, representatives, and experts.

6.     "Abuse Party" means, individually and collectively, (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Chartered Organizations; (f) Insurance Companies; or (g) all of any of the foregoing's Persons' Representatives.

7.     "Bates White" means Bates White LLC, the Debtors' abuse claims consultant and advisor.

8.     "BSA Plan Settlement" means any settlement, whether incorporated into the Plan or presented for approval pursuant to Bankruptcy Rule 9019, between the Debtors and any other Entity (including, but not limited to, an Insurance Company, Chartered Organization, or Local Council), including, but not limited to, the Hartford Insurance Settlement and the TCJC Settlement.

9.     "Chapter 11 Cases" shall mean the above-captioned chapter 11 cases of Boy Scouts of America and Delaware BSA, LLC, pending before the United States Bankruptcy Court for the District of Delaware.

10.     "Chartered Organization" shall have the meaning provided in the Plan.

11.     "Claim" means any "claim," as defined in section 101(5) of the Bankruptcy Code.

12.     "Coalition" shall mean the Coalition of Abused Scouts for Justice, an ad hoc committee that filed a notice of appearance in the Chapter 11 Cases on July 24, 2020 at Docket No. 1040, and its members, agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, representatives, affiliates, subsidiaries, predecessors and/or successors.

13.     "Communications" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes,

telegrams, correspondence, memoranda, emails, facsimile transmissions, or other form of verbal, written, mechanical, or electronic disclosure, in Your actual or constructive control or custody or in the control or custody of any current or former affiliates, representatives or advisors.

14. "<u>Concerning</u>" means relating to, evidencing, supporting, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, referencing, discussing, indicating, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

15. "<u>Confirmation Hearing</u>" shall have the meaning provided in the Plan.

16. "<u>Debtors</u>" means, collectively or individually, as context requires and to encompass responsive documents Boy Scouts of America and Delaware BSA, LLC, and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

17. "<u>Disclosure Statement</u>" shall mean the *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6445], as such Document may be amended, supplemented, or modified from time to time.

18. "<u>Documents</u>" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all Documents and information in Your possession, custody, or control, and includes: all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda, transcripts, tapes, or other voice recordings, and all other Documents and tangible things, including booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts,

4

agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, print-outs, and all other data, whether recorded by electronic or other means, and all drafts thereof. If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on any of the pages thereof, then each such non-identical copy is a separate Document and must be produced. When examples of categories or types of Documents are given in a particular Request for Production by use of phrases such as "including," this shall always be interpreted as being for illustrative purposes only (*i.e.*, to be understood as "including without limitation") and in no way limits or narrows the scope of any Request for Production. "Documents" always includes Communications, whether so stated in a particular Request for Production or not.

19.     "FCR" shall mean James L. Patton, Jr., the legal representative appointed by the Bankruptcy Court for holders of Future Abuse Claims, or any successor legal representative appointed by the Bankruptcy Court, and his agents, accountants, financial advisors, employees, experts, attorneys, representatives, affiliates, predecessors and/or successors.

20.     "Hartford Insurance Settlement" shall have the meaning provided in the Plan.

21.     "Insurance Company" shall have the meaning provided in the Plan.

DOCS_DE:236388.1 85353/002

22.     "Insurance Policy" shall have the meaning provided in the Plan, including all rights and benefits thereunder, and the proceeds thereof.

23.     "IV Files" shall mean any Documents that identify individuals associated with the Debtors accused of Abuse, including those records and files referred to as "ineligible volunteer" or "perversion" files.

24.     "JPMorgan L/Cs" shall have the meaning provided in the ORIC Proof of Claim.

25.     "Local Councils" shall have the meaning provided in the Plan.

26.     "Motion" shall mean the *Debtors' Motion for Entry of an Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation and Voting Procedures, (III) Approving Forms of Ballots, (IV) Approving Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief* [Docket No. 2295], as such Document may be amended, supplemented, or modified from time to time.

27.     "Non-Abuse Claims" shall have the meaning provided in the Plan.

28.     "ORIC" means Old Republic Insurance Company and its agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

29.     "ORIC Proof of Claim" means the Proof of Claim filed by You against the Debtors bearing proof of claim number 9379.

30.     "Perpetrator" shall have the meaning provided in the Plan.

31.     "Petition Date" shall mean February 18, 2020.

6

32.     "Plan" shall mean the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6443], as such Document may be amended, supplemented, or modified from time to time.

33.     "Prepetition" shall mean occurring prior to the Petition Date.

34.     "Program Agreement" shall have the meaning provided in the ORIC Proof of Claim.

35.     "Proof of Claim" shall have the meaning provided in the Plan.

36.     "Scouting Unit" means an entity that conducts scouting for a Chartered Organization, including but not limited to a pack, den, troop, Sea Explorers, Air Explorers, Learning for Life, Explorers, Venturing, crew, ship, chapter, and any associations that were predecessor associations of the foregoing.

37.     "Settlement" shall mean any Prepetition settlement or other resolution of an Abuse Claim.

38.     "Settlement Trust" shall have the meaning provided in the Plan.

39.     "Survivor" means a survivor of Abuse in scouting, including Abuse Claimants.

40.     "TCJC Settlement" shall have the meaning provided in the Plan.

41.     "Type of Abuse Categories" shall mean the following categories of Abuse: (a) penetration; (b) oral sex; (c) masturbation; (d) fondling/groping; (e) touching – bare skin; (f) touching – over the clothes; (g) non-touching; and (h) other aggravating factors.

42.     "Verdict" shall mean any Prepetition verdict, judgment, award or decision of a court, arbitrator, mediator or similar tribunal Concerning an Abuse Claim.

43.     "You" or "Your" and variants thereof mean ORIC.

# INSTRUCTIONS

The preceding Definitions apply to each of these Instructions, and for purposes of these Requests for Production, the following Instructions shall be followed:

1.     Civil Rule 34, made applicable to this proceeding pursuant to Bankruptcy Rules 7034 and 9014(c), is hereby incorporated by reference and applies to each of the following instructions.

2.     All responses shall comply with the requirements of the Civil Rules, the Bankruptcy Rules, the Local Rules, and any Court Order.

3.     Unless otherwise stated in a specific Request for Production herein, the relevant time period shall be from the respective inception of each of the Debtors to the present.

4.     These Requests for Production shall be deemed continuing in nature. In the event You become aware of or acquire additional information relating or referring to any of the following Requests for Production, such additional information is to be promptly produced.

5.     Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of current or former employees, officers, directors, agents, agents' representatives, consultants, contractors, vendors, or any fiduciary or other third parties, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, local area networks, application-based communications services (including, without limitation, Facebook Messenger, Instant Bloomberg, WeChat, Skype, KakaoTalk, WhatsApp, Signal, iMessage, etc.), web-based file hosting services (including, without limitation, Dropbox, Box, Apple iCloud, Google Drive, Hightail, etc.), or web-based email systems such as Gmail, Yahoo, etc.

6.      You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf. You must produce all such Documents even if they were deleted or in draft form. Without limitation, hardware where such data may be stored includes:  servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile storage devices, such as thumb or external hard drives. Electronically stored Documents include any computerized data or content stored on electromagnetic media. Without limitation, types of electronically stored Documents include email, voicemail, instant messages, intranet and internet system data, telephone and cellular telephone calling records, data compilations, spreadsheets, word processing Documents, images, databases, digital photocopier memory, and any other information stored in memory storage devices.

7.      Produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document requested together with all non-identical copies and drafts of that Document. If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

8.      Documents not otherwise responsive to these Requests for Production should be produced:  (a) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are called for by these Requests for Production; (b) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests for Production; or (c) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

9.      Documents attached to each other should not be separated; separate Documents should not be attached to each other.

10.      Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

11.      If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request for Production or part thereof, for each such Document, You must:

      a.      Identify the type, title and subject matter of the Document;

      b.      State the place, date, and manner of preparation of the Document;

      c.      Identify all authors, addressees, and recipients of the Document, including information about such persons to assess the privilege asserted; and

      d.      Identify the legal privilege(s) and the factual basis for the claim.

12.      Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine.  In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 11 above must be provided.

13.      To the extent a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it:  (a) is missing or lost; (b) has been destroyed; (c) has been transferred to others; and/or (d) has been otherwise disposed of.  In each instance, identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, identify each person having knowledge of the circumstances of the disposition, and identify each person who had

possession, custody, or control of the Document.  Documents prepared prior to, but which relate or refer to, the time period covered by these Requests for Production are to be identified and produced.

14.     If any part of the following Requests for Production cannot be responded to in full, please respond to the extent possible, specifying the reason(s) for Your inability to respond to the remainder and stating whatever information or knowledge You have Concerning the portion to which You do not respond.

15.     If You object to any of these Requests for Production, state in writing with specificity the grounds of Your objections.  Any ground not stated shall be waived.  If You object to a particular portion of any Request for Production, You shall respond to any other portions of such Request for Production as to which there is no objection and state with specificity the grounds of the objection.

16.     The fact that an investigation is continuing or that discovery is incomplete shall not be a justification for failing to respond to these Requests for Production based on the knowledge or information that You possess at the time You respond to these Requests for Production.  If an investigation is continuing or discovery is not complete with respect to the matter inquired into by any Request for Production, so state in Your response to that Request for Production.

17.     If the identity of Documents responding to a Request for Production is not known, then that lack of knowledge must be specifically indicated in the response.  If any information requested is not in Your possession, but is known or believed to be in the possession of another person or entity, then identify that person or entity and state the basis of Your belief or knowledge that the requested information is in such person's or entity's possession.

11

## MANNER OF PRODUCTION

1.    All Documents produced to the TCC shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files and accompanied by true and correct copies or representations of unaltered attendant metadata.  Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents.  Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

2.    <u>Database Load Files and Production Media Structure</u>:  Database load files shall consist of: (a) a comma-delimited values (".dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (b) an Opticon (".opt") file to facilitate the loading of tiff images.  Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.

3.    <u>Electronic Documents and Data, Generally</u>:  Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text

DOCS_DE:236388.1 85353/002

as to allow the TCC, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Documents' true and original content.

4.    Emails and Attachments, and Other Email Account-Related Documents:   All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the TCC.

5.    Documents and Data Created or Stored in or by Structured Electronic Databases: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the TCC to reasonably manage and import those Documents into a useable, coherent database.   Documents must be accompanied by reasonably detailed documentation explaining the Documents' content and format including but not limited to data dictionaries and diagrams.  Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

      a.    XML format file(s);

      b.    Microsoft SQL database(s);

      c.    Access database(s); and/or

      d.    fixed or variable length ASCII delimited files.

6.    Spreadsheets, Multimedia, and Non-Standard File Types:   All Documents generated or stored in software such as Microsoft Excel or other commercially available

spreadsheet, database and/or statistical programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent You have other file types that do not readily or easily and accurately convert to tiff and searchable text, You may elect to produce those files in native format subject to the other requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

7. <u>"Other" Electronic Documents</u>: All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8. <u>Paper Documents</u>: Documents originally created or stored on paper shall be produced in tiff format. Relationships between Documents shall be identified within the .dat file utilizing document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings. In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these Requests for Production.

## **DOCUMENT REQUESTS**

**Request No. 1.** All Documents Concerning the Motion, the Plan, the Disclosure Statement, or any actual or proposed settlements of Your coverage obligations to the Debtors,

including any drafts thereof, including, but not limited to, all such Documents prepared, authored, sent, or received by the Debtors, the FCR, and the Coalition.

RESPONSE:

**Request No. 2.** All Documents that You or anyone acting on Your behalf prepared, authored, sent, or received that interpret, refer to, relate to, or otherwise Concern insurance coverage for any Abuse Claim.

RESPONSE:

**Request No. 3.** All Documents that evidence, refer to, relate to, or otherwise Concern reinsurance under any other Insurance Policies You sold to the Debtors, including, but not limited to, (i) all Documents sent or received by You Concerning the collectability of reinsurance for Your liability for Abuse Claims under Your Insurance Policies; and (ii) all Documents that constitute, evidence, refer to, relate to, or otherwise Concern any Communication between You and any reinsurer Concerning any Abuse Claim.

RESPONSE:

**Request No. 4.** Documents sufficient to show all liabilities that You have Concerning each Insurance Policy that the Debtors are proposing to contribute to the Settlement Trust under the Plan.

RESPONSE:

**Request No. 5.** All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern Your financial ability to satisfy Your obligations under any Insurance Policies.

RESPONSE:

**Request No. 6.** If You contend that anything in or Concerning the Plan or Settlement Trust will, if the Plan is confirmed, impact Your rights or obligations (including without limitation inter-insurer contribution claims), all Documents that Concern Your contention.

RESPONSE:

**Request No. 7.** If You contend that the Debtors have not complied with any contractual conditions or obligations under any Insurance Policy in connection with any Abuse Claim, all Documents that Concern Your contention.

RESPONSE:

**Request No. 8.** All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any Abuse Claims where You paid or agreed to pay defense costs and/or make an indemnity payment on behalf of Debtors or any other insureds, including, but not limited to, Documents that identify the Insurance Policy, the name of the claimant, the Type of Abuse Categories, the amount paid for such claim, and whether the amount paid was for defense and/or indemnity.

RESPONSE:

**Request No. 9.** All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any Abuse Claims where You denied or reserved rights with respect to coverage, including, but not limited to, Documents that identify the Insurance Policy, the case caption for the claim You denied or otherwise reserved rights, the name of the claimant, and the monetary amount alleged in such claim.

RESPONSE:

**Request No. 10.** Documents sufficient to Identify (i) each Settlement of an Abuse Claim; (ii) each Verdict in favor of an Abuse Claimant; and (iii) each Verdict in favor of the

Defense Concerning an Abuse Claim, including the following information with respect to each such Settlement and Verdict:

a.      Your claim file and all Communications Concerning each such Abuse Claim;

b.      All complaints or statements of claim associated with each Settlement and Verdict, including the filing date of the action, causes of action asserted, any consolidated action, jurisdiction, and plaintiff's counsel;

c.      The stage of the proceeding at the time of the Settlement or Verdict;

d.      Amount of Settlement of the Abuse Claim or award pursuant or subject to the Verdict, including total Settlement or award amount, all sub-components of economic and non-economic Settlement or award amounts, and apportionment or allocation of Settlement or award amounts among each defendant or party against which the Abuse Claim was asserted;

e.      With respect to a Verdict in favor of the Defense Concerning an Abuse Claim, amount of Abuse Claim subject to the Verdict, including total alleged amount of Abuse Claim and all alleged sub-components of economic and non-economic amount of Abuse Claim

f.      Roster(s) of Scouting Units associated with the Abuse Claim;

g.      Information which would be responsive to any and all questions contained in Parts 2 – 6 of the "Sexual Abuse Survivor Proof of Claim" form, not limited to but including the following:

i.      Type(s) of Abuse at issue in the Abuse Claim, utilizing the Type of Abuse Categories or specifically describing the type of Abuse if not specifically delineated therein;

ii.      Number of instances of Abuse at issue in the Abuse Claim;

iii.      Year(s) of occurrence of Abuse at issue in the Abuse Claim;

iv.     Age of Abuse Claimant at time of Abuse at issue in the Abuse Claim;

v.     Identity of each defendant or party against which the Abuse Claim was asserted, including the alleged Perpetrator, Local Council, and/or Chartered Organization, as applicable;

vi.     State, city, and county in which each instance of Abuse at issue in the Abuse Claim occurred; and

vii.     Any other information or data collected, compiled, or maintained by You in connection with the Abuse Claim, including information with respect to the Abuse Claimant, the alleged Perpetrator, their respective backgrounds or histories related or relevant to the Abuse allegations, and Your knowledge of the same.

h.     The number of accusations (aside from the Abuse Claim at issue) brought against the accused Perpetrator;

i.     The date of the Settlement or Verdict and any payments made in connection therewith;

j.     If the defense of the Abuse Claim was covered by an Insurance Policy, the identity of the Insurance Policy (including a copy thereof) and Insurance Company;

k.     Identity of source(s) of payment of Settlement or Verdict amount, including if the Settlement or Verdict was paid in whole or in part from proceeds of an Insurance Policy, the identity of the Insurance Policy and Insurance Company;

l.     Copies of any agreements between You and the Debtors Concerning coverage for the Settlement of any Abuse Claims and all drafts thereof and Documents relating

thereto including, but not limited to, the consent (or lack thereof) of other insureds to enter into any such agreements or Settlements; and

m.      Copies of documentation of the Settlement or Verdict, including any court order approving same.

RESPONSE:

**Request No. 11.**      All Documents Concerning an Abuse Claim that is not otherwise covered by Request No. 10, including the following information with respect to each such Abuse Claim:

a.      Your claim file and all Documents Concerning each such Abuse Claim;

b.      Any complaints or statements of claim associated with each Abuse Claim, including the filing date of the action, causes of action asserted, any consolidated action, jurisdiction, and plaintiff's counsel;

c.      Amount of the Abuse Claim, including total amount of the Abuse Claim, all sub-components of economic and non-economic amount of Abuse Claim, and apportionment or allocation of amounts among each defendant or party against which the Abuse Claim was asserted

d.      Roster(s) of Scouting Units associated with the Abuse Claim;

e.      Information which would be responsive to any and all questions contained in Parts 2 – 6 of the "Sexual Abuse Survivor Proof of Claim" form, not limited to but including the following:

i.      Type(s) of Abuse at issue in the Abuse Claim, utilizing the Type of Abuse Categories or specifically describing the type of Abuse if not specifically delineated therein;

ii.      Number of instances of Abuse at issue in the Abuse Claim;

iii.      Year(s) of occurrence of Abuse at issue in the Abuse Claim;

iv.       Age of Abuse Claimant at time of Abuse at issue in the Abuse Claim;

v.       Identity of each defendant or party against which the Abuse Claim is asserted, including the alleged Perpetrator, Local Council, and/or Chartered Organization, as applicable;

vi.       State, city, and county in which each instance of Abuse at issue in the Abuse Claim occurred; and

vii.       Any other information or data collected, compiled or maintained by You in connection with the Abuse Claim, including information with respect to the Abuse Claimant, the alleged Perpetrator, their respective backgrounds or histories related or relevant to the Abuse allegations, and Your knowledge of the same.

f.       The number of accusations (aside from the Abuse Claim at issue) brought against the accused Perpetrator;

g.       If the defense of the Abuse Claim was covered by an Insurance Policy, the identity of the Insurance Policy and Insurance Company;

h.       Any payments made in connection with the Abuse Claim, and the amounts sources and dates of any such payments;

i.       Copies of any agreements between You and the Debtors Concerning coverage for the Settlement of any Abuse Claims and all drafts thereof and Documents relating thereto including, but not limited to, the consent (or lack thereof) of other insureds to enter into any such agreements or Settlements; and

j.       Copies of documentation of the Abuse Claim.

RESPONSE:

**Request No. 12.**     The most recent loss run for each Insurance Policy You sold to the Debtors.

RESPONSE:

**Request No. 13.**     All IV Files and all Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any IV Files.

RESPONSE:

**Request No. 14.**     All Documents prepared by the Debtors or Bates White Concerning Abuse Claims provided to You.

RESPONSE:

**Request No. 15.**     All Documents Concerning Abuse Claims provided by You to the Debtors or Bates White.

RESPONSE:

**Request No. 16.**     All Documents, including analyses prepared by the Debtors, You, or anyone at the Debtors' or Your behalf, Concerning any estimate or approximation of the number of Perpetrators and/or the number of Survivors.

RESPONSE:

**Request No. 17.**     All Documents, including expert reports, provided to You from the Debtors or Abuse Claimants Concerning Abuse Claims that assert or ascribe a value to an Abuse Claim.

RESPONSE:

DOCS_DE:236388.1 85353/002

**Request No. 18.**     All Documents that constitute, evidence, refer to, relate to, or otherwise Concern any reserve that You contemplated, established, set, maintained, and/or changed regarding the Abuse Claims for each Insurance Policy year.

RESPONSE:

**Request No. 19.**     All Documents that constitute, evidence, refer to, relate to, or otherwise Concern an Insurance Policy that provides or potentially provides coverage for Abuse Claims.

RESPONSE:

**Request No. 20.**     All Documents that You intend to rely on at the Confirmation Hearing or in connection with the estimation or valuation of Abuse Claims.

RESPONSE:

**Request No. 21.**     All Documents that constitute, evidence, refer to, relate to, or otherwise Concern any BSA Plan Settlement.

RESPONSE:

**Request No. 22.**     All Documents, including, without limitation claims-handling manuals, guidelines, policies, practices, directives, and procedures, that Concern Your handling, processing, adjusting, review, investigation, evaluation, acceptance, denial, reservation of rights, or other response to sexual abuse claims, including the Abuse Claims, under any Insurance Policy.

RESPONSE:

**Request No. 23.**     All Documents Concerning Your policies, practices, and procedures that Concern valuing or evaluating sexual abuse claims, including Abuse Claims, that were filed after the expiration of any applicable statute of limitations or were filed in jurisdictions where the statute of limitations with respect to sexual abuse claims may change, including, without

limitation, any policies, procedures, or practices that prohibit settling or otherwise resolving such sexual-abuse claims.

RESPONSE:

**Request No. 24.**     All minutes of or other written documentation relating to every meeting of Your board of directors or managers, any committee or subcommittee thereof, any task force or working group thereof, or any of Your other executive task forces or working groups, during which there was discussion of the Debtors, the Insurance Policies sold by You to the Debtors, Abuse Claims, or the Debtors' claims for insurance coverage under Insurance Policies (whether or not regarding the Abuse Claims), including without limitation, insurance coverage for such claims, including but not limited to handouts, agendas, attachments, and notes made by participants.

RESPONSE:

**Request No. 25.**     All Documents that refer to, relate to, memorialize, or otherwise Concern an opinion, conclusion, or analysis as to the absence or existence of an aggregate limit of liability Concerning any Insurance Policy applying to Abuse Claims and Non-Abuse Claims.

RESPONSE:

**Request No. 26.**     The Program Agreement.

RESPONSE:

**Request No. 27.**     All Documents Concerning the validity and amount of the Claims You assert against the Debtors in the ORIC Proof of Claim.

RESPONSE:

**Request No. 28.**      All Documents Concerning Your assertion in the ORIC Proof of Claim that the amounts You assert against the Debtors in the ORIC Proof of Claim are accruing interest at a fixed rate.

RESPONSE:

**Request No. 29.**      All Documents Concerning Your assertion of a lien securing amounts that You assert are owing to you in the ORIC Proof of Claim.

RESPONSE:

**Request No. 30.**      The JPMorgan L/Cs.

RESPONSE:

**Request No. 31.**      All Documents Concerning any draws You made on the JPMorgan L/Cs.

RESPONSE:

**Request No. 32.**      All Documents Concerning any Indirect Abuse Claim You assert or may assert against the Debtors, including, but not limited to, the value or amount of such Indirect Abuse Claim.

RESPONSE:

*[Remainder of page intentionally left blank]*

DOCS_DE:236388.1 85353/002

Dated: October 8, 2021
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
James I. Stang (CA Bar No. 94435) (admitted *pro hac vice*)
Iain A.W. Nasatir (CA Bar No. 148977) (admitted *pro hac vice*)
Kenneth H. Brown (CA Bar No. 100396) (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No. 271038) (admitted *pro hac vice*)
Steven W. Golden (DE No. LP 0127)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tele/Fax: (302) 652-4100 / (302) 652-4400
Email:          jstang@pszjlaw.com
                inasatir@pszjlaw.com
                kbrown@pszjlaw.com
                joneill@pszjlaw.com
                jlucas@pszjlaw.com
                sgolden@pszjlaw.com

          -and-

PASICH LLP

Jeffrey L. Schulman (NY Bar No. 3903697)
757 Third Avenue, 20th Floor
New York, New York 10017
Telephone:  (212) 686-5000
JSchulman@PasichLLP.com

          -and-

Kirk Pasich (CA Bar No. 94242)
10880 Wilshire Boulevard, Suite 2000
Los Angeles, California 90024
Telephone:  (424) 313-7850
KPasich@PasichLLP.com

*Counsel for the Tort Claimants' Committee*

# EXHIBIT I

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| Debtors.[1] | (Jointly Administered) |
| | Re Docket Nos. 2618, 6438, 6443, 6445 |

**THE OFFICIAL COMMITTEE OF TORT CLAIMANTS
TO BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC'S
REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO TRAVELERS
CASUALTY AND SURETY COMPANY, INC. (F/K/A AETNA CASUALTY &
SURETY COMPANY); ST. PAUL SURPLUS LINES INSURANCE COMPANY; AND
GULF INSURANCE COMPANY RELATED TO PLAN CONFIRMATION (FIRST SET)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Civil Rules"),

made applicable to these proceedings by Rules 9014, 7026, and 7034 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and pursuant to the Local Rules of Bankruptcy

Practice and Procedure of the United States Bankruptcy Court for the District of Delaware

(the "Local Rules"), the Official Committee of Tort Claimants to Boy Scouts of America and

Delaware BSA, LLC (the "TCC"), by and through its undersigned counsel, hereby serve the

following requests for production of documents (the "Requests for Production") on Travelers

Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company); St. Paul Surplus

Lines Insurance Company; and Gulf Insurance Company ("Travelers") in connection with the

*Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and*

*Delaware BSA, LLC* [Docket No. 6443], and any amendments, supplements or modifications

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

thereto (the "<u>Plan</u>") and any proceedings arising therefrom or related thereto in connection with the Debtors' chapter 11 cases.

Please produce the documents and the production media to the TCC by October 18, 2021.

## **<u>DEFINITIONS</u>**

For the purposes of these Requests for Production, the following Definitions shall apply:

1.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.  The singular shall include the plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive; and the term "including" means "including without limitation."  The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense.

2.      Capitalized terms not otherwise defined herein shall have the same meanings set forth in the Plan.

3.      "<u>Abuse</u>" shall have the meaning provided in the Plan.

4.      "<u>Abuse Claim</u>" means a liquidated or unliquidated Claim against one or more Abuse Parties that is attributable to, arises from, is based upon, relates to, results from, or is otherwise Concerned with, in whole or in part, directly, indirectly, or derivatively, alleged Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based on misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory, including any theory based on public policy or any act or failure to act by an Abuse Party or any other Person for whom any Abuse Party is alleged to

be responsible. The term "Abuse Claim" includes Direct Abuse Claims and Indirect Abuse Claims.

5. "Abuse Claimant" shall mean the party asserting an Abuse Claim and their attorneys, advisors, agents, representatives, and experts.

6. "Abuse Party" means, individually and collectively, (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Chartered Organizations; (f) Insurance Companies; or (g) all of any of the foregoing's Persons' Representatives.

7. "Bates White" means Bates White LLC, the Debtors' abuse claims consultant and advisor.

8. "BSA Plan Settlement" means any settlement, whether incorporated into the Plan or presented for approval pursuant to Bankruptcy Rule 9019, between the Debtors and any other Entity (including, but not limited to, an Insurance Company, Chartered Organization, or Local Council), including, but not limited to, the Hartford Insurance Settlement and the TCJC Settlement.

9. "Chapter 11 Cases" shall mean the above-captioned chapter 11 cases of Boy Scouts of America and Delaware BSA, LLC, pending before the United States Bankruptcy Court for the District of Delaware.

10. "Chartered Organization" shall have the meaning provided in the Plan.

11. "Claim" means any "claim," as defined in section 101(5) of the Bankruptcy Code.

12. "Coalition" shall mean the Coalition of Abused Scouts for Justice, an ad hoc committee that filed a notice of appearance in the Chapter 11 Cases on July 24, 2020 at Docket No. 1040, and its members, agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, representatives, affiliates, subsidiaries, predecessors and/or successors.

13. "<u>Communications</u>" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, correspondence, memoranda, emails, facsimile transmissions, or other form of verbal, written, mechanical, or electronic disclosure, in Your actual or constructive control or custody or in the control or custody of any current or former affiliates, representatives or advisors.

14. "<u>Concerning</u>" means relating to, evidencing, supporting, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, referencing, discussing, indicating, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

15. "<u>Confirmation Hearing</u>" shall have the meaning provided in the Plan.

16. "<u>Debtors</u>" means, collectively or individually, as context requires and to encompass responsive documents Boy Scouts of America and Delaware BSA, LLC, and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

17. "<u>Disclosure Statement</u>" shall mean the *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6445], as such Document may be amended, supplemented, or modified from time to time.

18. "<u>Documents</u>" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all Documents and information in Your possession, custody, or control, and includes: all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda,

transcripts, tapes, or other voice recordings, and all other Documents and tangible things, including booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, print-outs, and all other data, whether recorded by electronic or other means, and all drafts thereof.  If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on any of the pages thereof, then each such non-identical copy is a separate Document and must be produced.  When examples of categories or types of Documents are given in a particular Request for Production by use of phrases such as "including," this shall always be interpreted as being for illustrative purposes only (*i.e.*, to be understood as "including without limitation") and in no way limits or narrows the scope of any Request for Production. "Documents" always includes Communications, whether so stated in a particular Request for Production or not.

19.     "FCR" shall mean James L. Patton, Jr., the legal representative appointed by the Bankruptcy Court for holders of Future Abuse Claims, or any successor legal representative appointed by the Bankruptcy Court, and his agents, accountants, financial advisors, employees, experts, attorneys, representatives, affiliates, predecessors and/or successors.

20.     "Hartford Insurance Settlement" shall have the meaning provided in the Plan.

21.     "Insurance Company" shall have the meaning provided in the Plan.

22.     "Insurance Policy" shall have the meaning provided in the Plan, including all rights and benefits thereunder, and the proceeds thereof.

23.     "IV Files" shall mean any Documents that identify individuals associated with the Debtors accused of Abuse, including those records and files referred to as "ineligible volunteer" or "perversion" files.

24.     "Local Councils" shall have the meaning provided in the Plan.

25.     "Motion" shall mean the *Debtors' Motion for Entry of an Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation and Voting Procedures, (III) Approving Forms of Ballots, (IV) Approving Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief* [Docket No. 2295], as such Document may be amended, supplemented, or modified from time to time.

26.     "Non-Abuse Claims" shall have the meaning provided in the Plan.

27.     "Perpetrator" shall have the meaning provided in the Plan.

28.     "Petition Date" shall mean February 18, 2020.

29.     "Plan" shall mean the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6443], as such Document may be amended, supplemented, or modified from time to time.

30.     "Prepetition" shall mean occurring prior to the Petition Date.

31.     "Scouting Unit" means an entity that conducts scouting for a Chartered Organization, including but not limited to a pack, den, troop, Sea Explorers, Air Explorers,

6

Learning for Life, Explorers, Venturing, crew, ship, chapter, and any associations that were predecessor associations of the foregoing.

32.    "<u>Settlement</u>" shall mean any Prepetition settlement or other resolution of an Abuse Claim.

33.    "<u>Settlement Trust</u>" shall have the meaning provided in the Plan.

34.    "<u>Survivor</u>" means a survivor of Abuse in scouting, including Abuse Claimants.

35.    "<u>TCJC Settlement</u>" shall have the meaning provided in the Plan.

36.    "<u>Travelers</u>" means, individually and collectively, Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company); St. Paul Surplus Lines Insurance Company; and Gulf Insurance Company and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

37.    "<u>Type of Abuse Categories</u>" shall mean the following categories of Abuse: (a) penetration; (b) oral sex; (c) masturbation; (d) fondling/groping; (e) touching – bare skin; (f) touching – over the clothes; (g) non-touching; and (h) other aggravating factors.

38.    "<u>Verdict</u>" shall mean any Prepetition verdict, judgment, award or decision of a court, arbitrator, mediator or similar tribunal Concerning an Abuse Claim.

39.    "<u>You</u>" or "<u>Your</u>" and variants thereof mean Travelers.

## <u>INSTRUCTIONS</u>

The preceding Definitions apply to each of these Instructions, and for purposes of these Requests for Production, the following Instructions shall be followed:

1.      Civil Rule 34, made applicable to this proceeding pursuant to Bankruptcy Rules 7034 and 9014(c), is hereby incorporated by reference and applies to each of the following instructions.

2.      All responses shall comply with the requirements of the Civil Rules, the Bankruptcy Rules, the Local Rules, and any Court Order.

3.      Unless otherwise stated in a specific Request for Production herein, the relevant time period shall be from the respective inception of each of the Debtors to the present.

4.      These Requests for Production shall be deemed continuing in nature.  In the event You become aware of or acquire additional information relating or referring to any of the following Requests for Production, such additional information is to be promptly produced.

5.      Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of current or former employees, officers, directors, agents, agents' representatives, consultants, contractors, vendors, or any fiduciary or other third parties, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, local area networks, application-based communications services (including, without limitation, Facebook Messenger, Instant Bloomberg, WeChat, Skype, KakaoTalk, WhatsApp, Signal, iMessage, etc.), web-based file hosting services (including, without limitation, Dropbox, Box, Apple iCloud, Google Drive, Hightail, etc.), or web-based email systems such as Gmail, Yahoo, etc.

6.      You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf. You must produce all such Documents even if they were deleted or in draft form.  Without

limitation, hardware where such data may be stored includes: servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile storage devices, such as thumb or external hard drives. Electronically stored Documents include any computerized data or content stored on electromagnetic media. Without limitation, types of electronically stored Documents include email, voicemail, instant messages, intranet and internet system data, telephone and cellular telephone calling records, data compilations, spreadsheets, word processing Documents, images, databases, digital photocopier memory, and any other information stored in memory storage devices.

7.     Produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document requested together with all non-identical copies and drafts of that Document. If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

8.     Documents not otherwise responsive to these Requests for Production should be produced: (a) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are called for by these Requests for Production; (b) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests for Production; or (c) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

9.     Documents attached to each other should not be separated; separate Documents should not be attached to each other.

10.    Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

11.     If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request for Production or part thereof, for each such Document, You must:

a.      Identify the type, title and subject matter of the Document;

b.      State the place, date, and manner of preparation of the Document;

c.      Identify all authors, addressees, and recipients of the Document, including information about such persons to assess the privilege asserted; and

d.      Identify the legal privilege(s) and the factual basis for the claim.

12.     Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine.  In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 11 above must be provided.

13.     To the extent a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it:  (a) is missing or lost; (b) has been destroyed; (c) has been transferred to others; and/or (d) has been otherwise disposed of.  In each instance, identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, identify each person having knowledge of the circumstances of the disposition, and identify each person who had possession, custody, or control of the Document.  Documents prepared prior to, but which relate or refer to, the time period covered by these Requests for Production are to be identified and produced.

14.     If any part of the following Requests for Production cannot be responded to in full, please respond to the extent possible, specifying the reason(s) for Your inability to respond to the

remainder and stating whatever information or knowledge You have Concerning the portion to which You do not respond.

15.　　If You object to any of these Requests for Production, state in writing with specificity the grounds of Your objections.  Any ground not stated shall be waived.  If You object to a particular portion of any Request for Production, You shall respond to any other portions of such Request for Production as to which there is no objection and state with specificity the grounds of the objection.

16.　　The fact that an investigation is continuing or that discovery is incomplete shall not be a justification for failing to respond to these Requests for Production based on the knowledge or information that You possess at the time You respond to these Requests for Production.  If an investigation is continuing or discovery is not complete with respect to the matter inquired into by any Request for Production, so state in Your response to that Request for Production.

17.　　If the identity of Documents responding to a Request for Production is not known, then that lack of knowledge must be specifically indicated in the response.  If any information requested is not in Your possession, but is known or believed to be in the possession of another person or entity, then identify that person or entity and state the basis of Your belief or knowledge that the requested information is in such person's or entity's possession.

## MANNER OF PRODUCTION

1.　　All Documents produced to the TCC shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files and accompanied by true and correct copies or representations of unaltered attendant metadata.  Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-

level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents. Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

2. <u>Database Load Files and Production Media Structure</u>: Database load files shall consist of: (a) a comma-delimited values (".dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (b) an Opticon (".opt") file to facilitate the loading of tiff images. Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.

3. <u>Electronic Documents and Data, Generally</u>: Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text as to allow the TCC, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Documents' true and original content.

4. <u>Emails and Attachments, and Other Email Account-Related Documents</u>: All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format,

accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the TCC.

5.  Documents and Data Created or Stored in or by Structured Electronic Databases: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the TCC to reasonably manage and import those Documents into a useable, coherent database. Documents must be accompanied by reasonably detailed documentation explaining the Documents' content and format including but not limited to data dictionaries and diagrams. Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

a.  XML format file(s);

b.  Microsoft SQL database(s);

c.  Access database(s); and/or

d.  fixed or variable length ASCII delimited files.

6.  Spreadsheets, Multimedia, and Non-Standard File Types: All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet, database and/or statistical programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent You have other file types that do not readily or easily and accurately convert to tiff and searchable text, You may elect to produce those files in native format subject to the other

requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

7.     "Other" Electronic Documents:  All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8.     Paper Documents:  Documents originally created or stored on paper shall be produced in tiff format.  Relationships between Documents shall be identified within the .dat file utilizing document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings.  In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these Requests for Production.

## DOCUMENT REQUESTS

**Request No. 1.**     All Documents Concerning the Motion, the Plan, the Disclosure Statement, or any actual or proposed settlements of Your coverage obligations to the Debtors, including any drafts thereof, including, but not limited to, all such Documents prepared, authored, sent, or received by the Debtors, the FCR, and the Coalition.

RESPONSE:

**Request No. 2.**     All Documents that You or anyone acting on Your behalf prepared, authored, sent, or received that interpret, refer to, relate to, or otherwise Concern insurance coverage for any Abuse Claim.

RESPONSE:

**Request No. 3.**　　　All Documents that evidence, refer to, relate to, or otherwise Concern reinsurance under any other Insurance Policies You sold to the Debtors, including, but not limited to, (i) all Documents sent or received by You Concerning the collectability of reinsurance for Your liability for Abuse Claims under Your Insurance Policies; and (ii) all Documents that constitute, evidence, refer to, relate to, or otherwise Concern any Communication between You and any reinsurer Concerning any Abuse Claim.

　　　RESPONSE:

**Request No. 4.**　　　Documents sufficient to show all liabilities that You have Concerning each Insurance Policy that the Debtors are proposing to contribute to the Settlement Trust under the Plan.

　　　RESPONSE:

**Request No. 5.**　　　All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern Your financial ability to satisfy Your obligations under any Insurance Policies.

　　　RESPONSE:

**Request No. 6.**　　　If You contend that anything in or Concerning the Plan or Settlement Trust will, if the Plan is confirmed, impact Your rights or obligations (including without limitation inter-insurer contribution claims), all Documents that Concern Your contention.

　　　RESPONSE:

**Request No. 7.**　　　If You contend that the Debtors have not complied with any contractual conditions or obligations under any Insurance Policy in connection with any Abuse Claim, all Documents that Concern Your contention.

　　　RESPONSE:

**Request No. 8.** All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any Abuse Claims where You paid or agreed to pay defense costs and/or make an indemnity payment on behalf of Debtors or any other insureds, including, but not limited to, Documents that identify the Insurance Policy, the name of the claimant, the Type of Abuse Categories, the amount paid for such claim, and whether the amount paid was for defense and/or indemnity.

RESPONSE:

**Request No. 9.** All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any Abuse Claims where You denied or reserved rights with respect to coverage, including, but not limited to, Documents that identify the Insurance Policy, the case caption for the claim You denied or otherwise reserved rights, the name of the claimant, and the monetary amount alleged in such claim.

RESPONSE:

**Request No. 10.** Documents sufficient to Identify (i) each Settlement of an Abuse Claim; (ii) each Verdict in favor of an Abuse Claimant; and (iii) each Verdict in favor of the Defense Concerning an Abuse Claim, including the following information with respect to each such Settlement and Verdict:

a. Your claim file and all Communications Concerning each such Abuse Claim;

b. All complaints or statements of claim associated with each Settlement and Verdict, including the filing date of the action, causes of action asserted, any consolidated action, jurisdiction, and plaintiff's counsel;

c. The stage of the proceeding at the time of the Settlement or Verdict;

16

d.     Amount of Settlement of the Abuse Claim or award pursuant or subject to the Verdict, including total Settlement or award amount, all sub-components of economic and non-economic Settlement or award amounts, and apportionment or allocation of Settlement or award amounts among each defendant or party against which the Abuse Claim was asserted;

e.     With respect to a Verdict in favor of the Defense Concerning an Abuse Claim, amount of Abuse Claim subject to the Verdict, including total alleged amount of Abuse Claim and all alleged sub-components of economic and non-economic amount of Abuse Claim

f.     Roster(s) of Scouting Units associated with the Abuse Claim;

g.     Information which would be responsive to any and all questions contained in Parts 2 – 6 of the "Sexual Abuse Survivor Proof of Claim" form, not limited to but including the following:

i.     Type(s) of Abuse at issue in the Abuse Claim, utilizing the Type of Abuse Categories or specifically describing the type of Abuse if not specifically delineated therein;

ii.     Number of instances of Abuse at issue in the Abuse Claim;

iii.     Year(s) of occurrence of Abuse at issue in the Abuse Claim;

iv.     Age of Abuse Claimant at time of Abuse at issue in the Abuse Claim;

v.     Identity of each defendant or party against which the Abuse Claim was asserted, including the alleged Perpetrator, Local Council, and/or Chartered Organization, as applicable;

vi.     State, city, and county in which each instance of Abuse at issue in the Abuse Claim occurred; and

vii.     Any other information or data collected, compiled, or maintained by You in connection with the Abuse Claim, including information with respect to the Abuse Claimant, the alleged Perpetrator, their respective backgrounds or histories related or relevant to the Abuse allegations, and Your knowledge of the same.

h.     The number of accusations (aside from the Abuse Claim at issue) brought against the accused Perpetrator;

i.     The date of the Settlement or Verdict and any payments made in connection therewith;

j.     If the defense of the Abuse Claim was covered by an Insurance Policy, the identity of the Insurance Policy (including a copy thereof) and Insurance Company;

k.     Identity of source(s) of payment of Settlement or Verdict amount, including if the Settlement or Verdict was paid in whole or in part from proceeds of an Insurance Policy, the identity of the Insurance Policy and Insurance Company;

l.     Copies of any agreements between You and the Debtors Concerning coverage for the Settlement of any Abuse Claims and all drafts thereof and Documents relating thereto including, but not limited to, the consent (or lack thereof) of other insureds to enter into any such agreements or Settlements; and

m.     Copies of documentation of the Settlement or Verdict, including any court order approving same.

RESPONSE:

**Request No. 11.**     All Documents Concerning an Abuse Claim that is not otherwise covered by Request No. 10, including the following information with respect to each such Abuse Claim:

a.	Your claim file and all Documents Concerning each such Abuse Claim;

b.	Any complaints or statements of claim associated with each Abuse Claim, including the filing date of the action, causes of action asserted, any consolidated action, jurisdiction, and plaintiff's counsel;

c.	Amount of the Abuse Claim, including total amount of the Abuse Claim, all sub-components of economic and non-economic amount of Abuse Claim, and apportionment or allocation of amounts among each defendant or party against which the Abuse Claim was asserted

d.	Roster(s) of Scouting Units associated with the Abuse Claim;

e.	Information which would be responsive to any and all questions contained in Parts 2 – 6 of the "Sexual Abuse Survivor Proof of Claim" form, not limited to but including the following:

i.	Type(s) of Abuse at issue in the Abuse Claim, utilizing the Type of Abuse Categories or specifically describing the type of Abuse if not specifically delineated therein;

ii.	Number of instances of Abuse at issue in the Abuse Claim;

iii.	Year(s) of occurrence of Abuse at issue in the Abuse Claim;

iv.	Age of Abuse Claimant at time of Abuse at issue in the Abuse Claim;

v.	Identity of each defendant or party against which the Abuse Claim is asserted, including the alleged Perpetrator, Local Council, and/or Chartered Organization, as applicable;

vi.	State, city, and county in which each instance of Abuse at issue in the Abuse Claim occurred; and

vii.	Any other information or data collected, compiled or maintained by

You in connection with the Abuse Claim, including information with respect to the Abuse Claimant, the alleged Perpetrator, their respective backgrounds or histories related or relevant to the Abuse allegations, and Your knowledge of the same.

       f.     The number of accusations (aside from the Abuse Claim at issue) brought against the accused Perpetrator;

       g.     If the defense of the Abuse Claim was covered by an Insurance Policy, the identity of the Insurance Policy and Insurance Company;

       h.     Any payments made in connection with the Abuse Claim, and the amounts sources and dates of any such payments;

       i.     Copies of any agreements between You and the Debtors Concerning coverage for the Settlement of any Abuse Claims and all drafts thereof and Documents relating thereto including, but not limited to, the consent (or lack thereof) of other insureds to enter into any such agreements or Settlements; and

       j.     Copies of documentation of the Abuse Claim.

RESPONSE:

**Request No. 12.**     The most recent loss run for each Insurance Policy You sold to the Debtors.

RESPONSE:

**Request No. 13.**     All IV Files and all Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any IV Files.

RESPONSE:

**Request No. 14.**     All Documents prepared by the Debtors or Bates White Concerning Abuse Claims provided to You.

RESPONSE:

**Request No. 15.** All Documents Concerning Abuse Claims provided by You to the Debtors or Bates White.

RESPONSE:

**Request No. 16.** All Documents, including analyses prepared by the Debtors, You, or anyone at the Debtors' or Your behalf, Concerning any estimate or approximation of the number of Perpetrators and/or the number of Survivors.

RESPONSE:

**Request No. 17.** All Documents, including expert reports, provided to You from the Debtors or Abuse Claimants Concerning Abuse Claims that assert or ascribe a value to an Abuse Claim.

RESPONSE:

**Request No. 18.** All Documents that constitute, evidence, refer to, relate to, or otherwise Concern any reserve that You contemplated, established, set, maintained, and/or changed regarding the Abuse Claims for each Insurance Policy year.

RESPONSE:

**Request No. 19.** All Documents that constitute, evidence, refer to, relate to, or otherwise Concern an Insurance Policy that provides or potentially provides coverage for Abuse Claims.

RESPONSE:

**Request No. 20.** All Documents that You intend to rely on at the Confirmation Hearing or in connection with the estimation or valuation of Abuse Claims.

RESPONSE:

**Request No. 21.**    All Documents that constitute, evidence, refer to, relate to, or otherwise Concern any BSA Plan Settlement.

RESPONSE:

**Request No. 22.**    All Documents, including, without limitation claims-handling manuals, guidelines, policies, practices, directives, and procedures, that Concern Your handling, processing, adjusting, review, investigation, evaluation, acceptance, denial, reservation of rights, or other response to sexual abuse claims, including the Abuse Claims, under any Insurance Policy.

RESPONSE:

**Request No. 23.**    All Documents Concerning Your policies, practices, and procedures that Concern valuing or evaluating sexual abuse claims, including Abuse Claims, that were filed after the expiration of any applicable statute of limitations or were filed in jurisdictions where the statute of limitations with respect to sexual abuse claims may change, including, without limitation, any policies, procedures, or practices that prohibit settling or otherwise resolving such sexual-abuse claims.

RESPONSE:

**Request No. 24.**    All minutes of or other written documentation relating to every meeting of Your board of directors or managers, any committee or subcommittee thereof, any task force or working group thereof, or any of Your other executive task forces or working groups, during which there was discussion of the Debtors, the Insurance Policies sold by You to the Debtors, Abuse Claims, or the Debtors' claims for insurance coverage under Insurance Policies (whether or not regarding the Abuse Claims), including without limitation, insurance coverage for

such claims, including but not limited to handouts, agendas, attachments, and notes made by participants.

RESPONSE:

**Request No. 25.**    All Documents that refer to, relate to, memorialize, or otherwise Concern an opinion, conclusion, or analysis as to the absence or existence of an aggregate limit of liability Concerning any Insurance Policy applying to Abuse Claims and Non-Abuse Claims.

RESPONSE:

**Request No. 26.**    All Documents Concerning any Indirect Abuse Claim You assert or may assert against the Debtors, including, but not limited to, the value or amount of such Indirect Abuse Claim.

RESPONSE:

*[Remainder of page intentionally left blank]*

Dated: October 8, 2021
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
James I. Stang (CA Bar No. 94435) (admitted *pro hac vice*)
Iain A.W. Nasatir (CA Bar No. 148977) (admitted *pro hac vice*)
Kenneth H. Brown (CA Bar No. 100396) (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No. 271038) (admitted *pro hac vice*)
Steven W. Golden (DE No. LP 0127)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tele/Fax: (302) 652-4100 / (302) 652-4400
Email:        jstang@pszjlaw.com
              inasatir@pszjlaw.com
              kbrown@pszjlaw.com
              joneill@pszjlaw.com
              jlucas@pszjlaw.com
              sgolden@pszjlaw.com

       -and-

PASICH LLP

Jeffrey L. Schulman (NY Bar No. 3903697)
757 Third Avenue, 20th Floor
New York, New York 10017
Telephone: (212) 686-5000
JSchulman@PasichLLP.com

       -and-

Kirk Pasich (CA Bar No. 94242)
10880 Wilshire Boulevard, Suite 2000
Los Angeles, California 90024
Telephone: (424) 313-7850
KPasich@PasichLLP.com

*Counsel for the Tort Claimants' Committee*

# EXHIBIT J

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| Debtors.[1] | (Jointly Administered) |
| | Re Docket Nos. 2618, 6438, 6443, 6445 |

## THE OFFICIAL COMMITTEE OF TORT CLAIMANTS TO BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC'S REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO AMERICAN ZURICH INSURANCE COMPANY; AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY; AND STEADFAST INSURANCE COMPANY RELATED TO PLAN CONFIRMATION (FIRST SET)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable to these proceedings by Rules 9014, 7026, and 7034 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and pursuant to the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Official Committee of Tort Claimants to Boy Scouts of America and Delaware BSA, LLC (the "TCC"), by and through its undersigned counsel, hereby serve the following requests for production of documents (the "Requests for Production") on American Zurich Insurance Company; American Guarantee and Liability Insurance Company; and Steadfast Insurance Company (collectively, "Zurich") in connection with the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6443], and any amendments, supplements or modifications thereto (the "Plan")

---

[1]  The Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

and any proceedings arising therefrom or related thereto in connection with the Debtors' chapter 11 cases.

Please produce the documents and the production media to the TCC by October 18, 2021.

## **DEFINITIONS**

For the purposes of these Requests for Production, the following Definitions shall apply:

1.     The terms "all," "any," and "each" shall each be construed as encompassing any and all.  The singular shall include the plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive; and the term "including" means "including without limitation."  The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense.

2.     Capitalized terms not otherwise defined herein shall have the same meanings set forth in the Plan.

3.     "Abuse" shall have the meaning provided in the Plan.

4.     "Abuse Claim" means a liquidated or unliquidated Claim against one or more Abuse Parties that is attributable to, arises from, is based upon, relates to, results from, or is otherwise Concerned with, in whole or in part, directly, indirectly, or derivatively, alleged Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based on misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory, including any theory based on public policy or any act or failure to act by an Abuse Party or any other Person for whom any Abuse Party is alleged to

2

be responsible. The term "Abuse Claim" includes Direct Abuse Claims and Indirect Abuse Claims.

5.      "Abuse Claimant" shall mean the party asserting an Abuse Claim and their attorneys, advisors, agents, representatives, and experts.

6.      "Abuse Party" means, individually and collectively, (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Chartered Organizations; (f) Insurance Companies; or (g) all of any of the foregoing's Persons' Representatives.

7.      "Bates White" means Bates White LLC, the Debtors' abuse claims consultant and advisor.

8.      "BSA Plan Settlement" means any settlement, whether incorporated into the Plan or presented for approval pursuant to Bankruptcy Rule 9019, between the Debtors and any other Entity (including, but not limited to, an Insurance Company, Chartered Organization, or Local Council), including, but not limited to, the Hartford Insurance Settlement and the TCJC Settlement.

9.      "Chapter 11 Cases" shall mean the above-captioned chapter 11 cases of Boy Scouts of America and Delaware BSA, LLC, pending before the United States Bankruptcy Court for the District of Delaware.

10.     "Chartered Organization" shall have the meaning provided in the Plan.

11.     "Claim" means any "claim," as defined in section 101(5) of the Bankruptcy Code.

12.     "Coalition" shall mean the Coalition of Abused Scouts for Justice, an ad hoc committee that filed a notice of appearance in the Chapter 11 Cases on July 24, 2020 at Docket No. 1040, and its members, agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, representatives, affiliates, subsidiaries, predecessors and/or successors.

DOCS_DE:236367.2 85353/002

13. "<u>Communications</u>" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, correspondence, memoranda, emails, facsimile transmissions, or other form of verbal, written, mechanical, or electronic disclosure, in Your actual or constructive control or custody or in the control or custody of any current or former affiliates, representatives or advisors.

14. "<u>Concerning</u>" means relating to, evidencing, supporting, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, referencing, discussing, indicating, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

15. "<u>Confirmation Hearing</u>" shall have the meaning provided in the Plan.

16. "<u>Debtors</u>" means, collectively or individually, as context requires and to encompass responsive documents Boy Scouts of America and Delaware BSA, LLC, and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

17. "<u>Disclosure Statement</u>" shall mean the *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6445], as such Document may be amended, supplemented, or modified from time to time.

18. "<u>Documents</u>" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all Documents and information in Your possession, custody, or control, and includes: all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda,

transcripts, tapes, or other voice recordings, and all other Documents and tangible things, including booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, print-outs, and all other data, whether recorded by electronic or other means, and all drafts thereof. If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on any of the pages thereof, then each such non-identical copy is a separate Document and must be produced. When examples of categories or types of Documents are given in a particular Request for Production by use of phrases such as "including," this shall always be interpreted as being for illustrative purposes only (*i.e.*, to be understood as "including without limitation") and in no way limits or narrows the scope of any Request for Production. "Documents" always includes Communications, whether so stated in a particular Request for Production or not.

19.     "FCR" shall mean James L. Patton, Jr., the legal representative appointed by the Bankruptcy Court for holders of Future Abuse Claims, or any successor legal representative appointed by the Bankruptcy Court, and his agents, accountants, financial advisors, employees, experts, attorneys, representatives, affiliates, predecessors and/or successors.

20.     "Hartford Insurance Settlement" shall have the meaning provided in the Plan.

21.     "Insurance Company" shall have the meaning provided in the Plan.

22.     "Insurance Policy" shall have the meaning provided in the Plan, including all rights and benefits thereunder, and the proceeds thereof.

23.     "IV Files" shall mean any Documents that identify individuals associated with the Debtors accused of Abuse, including those records and files referred to as "ineligible volunteer" or "perversion" files.

24.     "Local Councils" shall have the meaning provided in the Plan.

25.     "Motion" shall mean the *Debtors' Motion for Entry of an Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation and Voting Procedures, (III) Approving Forms of Ballots, (IV) Approving Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief* [Docket No. 2295], as such Document may be amended, supplemented, or modified from time to time.

26.     "Perpetrator" shall have the meaning provided in the Plan.

27.     "Petition Date" shall mean February 18, 2020.

28.     "Plan" shall mean the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6443], as such Document may be amended, supplemented, or modified from time to time.

29.     "Prepetition" shall mean occurring prior to the Petition Date.

30.     "Scouting Unit" means an entity that conducts scouting for a Chartered Organization, including but not limited to a pack, den, troop, Sea Explorers, Air Explorers, Learning for Life, Explorers, Venturing, crew, ship, chapter, and any associations that were predecessor associations of the foregoing.

31.     "Settlement" shall mean any Prepetition settlement or other resolution of an Abuse Claim.

32.     "Settlement Trust" shall have the meaning provided in the Plan.

33.     "Survivor" means a survivor of Abuse in scouting, including Abuse Claimants.

34.     "TCJC Settlement" shall have the meaning provided in the Plan.

35.     "Type of Abuse Categories" shall mean the following categories of Abuse: (a) penetration; (b) oral sex; (c) masturbation; (d) fondling/groping; (e) touching – bare skin; (f) touching – over the clothes; (g) non-touching; and (h) other aggravating factors.

36.     "Verdict" shall mean any Prepetition verdict, judgment, award or decision of a court, arbitrator, mediator or similar tribunal Concerning an Abuse Claim.

37.     "You" or "Your" and variants thereof mean Zurich.

38.     "Zurich" means American Zurich Insurance Company; American Guarantee and Liability Insurance Company; and Steadfast Insurance Company, individually and collectively, and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

### INSTRUCTIONS

The preceding Definitions apply to each of these Instructions, and for purposes of these Requests for Production, the following Instructions shall be followed:

1.     Civil Rule 34, made applicable to this proceeding pursuant to Bankruptcy Rules 7034 and 9014(c), is hereby incorporated by reference and applies to each of the following instructions.

2.     All responses shall comply with the requirements of the Civil Rules, the Bankruptcy Rules, the Local Rules, and any Court Order.

3.     Unless otherwise stated in a specific Request for Production herein, the relevant time period shall be from the respective inception of each of the Debtors to the present.

4.     These Requests for Production shall be deemed continuing in nature.  In the event You become aware of or acquire additional information relating or referring to any of the following Requests for Production, such additional information is to be promptly produced.

5.     Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of current or former employees, officers, directors, agents, agents' representatives, consultants, contractors, vendors, or any fiduciary or other third parties, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, local area networks, application-based communications services (including, without limitation, Facebook Messenger, Instant Bloomberg, WeChat, Skype, KakaoTalk, WhatsApp, Signal, iMessage, etc.), web-based file hosting services (including, without limitation, Dropbox, Box, Apple iCloud, Google Drive, Hightail, etc.), or web-based email systems such as Gmail, Yahoo, etc.

6.     You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf. You must produce all such Documents even if they were deleted or in draft form.  Without limitation, hardware where such data may be stored includes:  servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile storage devices, such as thumb or external hard drives.   Electronically stored

8

Documents include any computerized data or content stored on electromagnetic media.  Without limitation, types of electronically stored Documents include email, voicemail, instant messages, intranet and internet system data, telephone and cellular telephone calling records, data compilations, spreadsheets, word processing Documents, images, databases, digital photocopier memory, and any other information stored in memory storage devices.

7.      Produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document requested together with all non-identical copies and drafts of that Document.  If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

8.      Documents not otherwise responsive to these Requests for Production should be produced:  (a) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are called for by these Requests for Production; (b) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests for Production; or (c) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

9.      Documents attached to each other should not be separated; separate Documents should not be attached to each other.

10.     Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

11.     If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request for Production or part thereof, for each such Document, You must:

a.    Identify the type, title and subject matter of the Document;

b.    State the place, date, and manner of preparation of the Document;

c.    Identify all authors, addressees, and recipients of the Document, including information about such persons to assess the privilege asserted; and

d.    Identify the legal privilege(s) and the factual basis for the claim.

12.    Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine.  In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 11 above must be provided.

13.    To the extent a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it:  (a) is missing or lost; (b) has been destroyed; (c) has been transferred to others; and/or (d) has been otherwise disposed of.  In each instance, identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, identify each person having knowledge of the circumstances of the disposition, and identify each person who had possession, custody, or control of the Document.  Documents prepared prior to, but which relate or refer to, the time period covered by these Requests for Production are to be identified and produced.

14.    If any part of the following Requests for Production cannot be responded to in full, please respond to the extent possible, specifying the reason(s) for Your inability to respond to the remainder and stating whatever information or knowledge You have Concerning the portion to which You do not respond.

DOCS_DE:236367.2 85353/002

15.     If You object to any of these Requests for Production, state in writing with specificity the grounds of Your objections.  Any ground not stated shall be waived.  If You object to a particular portion of any Request for Production, You shall respond to any other portions of such Request for Production as to which there is no objection and state with specificity the grounds of the objection.

16.     The fact that an investigation is continuing or that discovery is incomplete shall not be a justification for failing to respond to these Requests for Production based on the knowledge or information that You possess at the time You respond to these Requests for Production.  If an investigation is continuing or discovery is not complete with respect to the matter inquired into by any Request for Production, so state in Your response to that Request for Production.

17.     If the identity of Documents responding to a Request for Production is not known, then that lack of knowledge must be specifically indicated in the response.  If any information requested is not in Your possession, but is known or believed to be in the possession of another person or entity, then identify that person or entity and state the basis of Your belief or knowledge that the requested information is in such person's or entity's possession.

## MANNER OF PRODUCTION

1.     All Documents produced to the TCC shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files and accompanied by true and correct copies or representations of unaltered attendant metadata.  Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character

Recognition ("ocr") program in the case of scanned paper Documents. Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

2. <u>Database Load Files and Production Media Structure</u>: Database load files shall consist of: (a) a comma-delimited values (".dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (b) an Opticon (".opt") file to facilitate the loading of tiff images. Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.

3. <u>Electronic Documents and Data, Generally</u>: Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text as to allow the TCC, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Documents' true and original content.

4. <u>Emails and Attachments, and Other Email Account-Related Documents</u>: All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately,

and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the TCC.

5.     <u>Documents and Data Created or Stored in or by Structured Electronic Databases</u>: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the TCC to reasonably manage and import those Documents into a useable, coherent database. Documents must be accompanied by reasonably detailed documentation explaining the Documents' content and format including but not limited to data dictionaries and diagrams. Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

       a.     XML format file(s);

       b.     Microsoft SQL database(s);

       c.     Access database(s); and/or

       d.     fixed or variable length ASCII delimited files.

6.     <u>Spreadsheets, Multimedia, and Non-Standard File Types</u>: All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet, database and/or statistical programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent You have other file types that do not readily or easily and accurately convert to tiff and searchable text, You may elect to produce those files in native format subject to the other

requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

7.     <u>"Other" Electronic Documents</u>:  All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8.     <u>Paper Documents</u>:  Documents originally created or stored on paper shall be produced in tiff format.  Relationships between Documents shall be identified within the .dat file utilizing document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings.  In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these Requests for Production.

## **DOCUMENT REQUESTS**

**Request No. 1.**     All Documents Concerning the Motion, the Plan, the Disclosure Statement, or any actual or proposed settlements of Your coverage obligations to the Debtors, including any drafts thereof, including, but not limited to, all such Documents prepared, authored, sent, or received by the Debtors, the FCR, and the Coalition.

RESPONSE:

**Request No. 2.**     All Documents that You or anyone acting on Your behalf prepared, authored, sent, or received that interpret, refer to, relate to, or otherwise Concern insurance coverage for any Abuse Claim.

RESPONSE:

**Request No. 3.**     All Documents that evidence, refer to, relate to, or otherwise Concern reinsurance under any other Insurance Policies You sold to the Debtors, including, but not limited to, (i) all Documents sent or received by You Concerning the collectability of reinsurance for Your liability for Abuse Claims under Your Insurance Policies; and (ii) all Documents that constitute, evidence, refer to, relate to, or otherwise Concern any Communication between You and any reinsurer Concerning any Abuse Claim.

RESPONSE:

**Request No. 4.**     Documents sufficient to show all liabilities that You have Concerning each Insurance Policy that the Debtors are proposing to contribute to the Settlement Trust under the Plan.

RESPONSE:

**Request No. 5.**     All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern Your financial ability to satisfy Your obligations under any Insurance Policies.

RESPONSE:

**Request No. 6.**     If You contend that anything in or Concerning the Plan or Settlement Trust will, if the Plan is confirmed, impact Your rights or obligations (including without limitation inter-insurer contribution claims), all Documents that Concern Your contention.

RESPONSE:

**Request No. 7.**     If You contend that the Debtors have not complied with any contractual conditions or obligations under any Insurance Policy in connection with any Abuse Claim, all Documents that Concern Your contention.

RESPONSE:

**Request No. 8.** All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any Abuse Claims where You paid or agreed to pay defense costs and/or make an indemnity payment on behalf of Debtors or any other insureds, including, but not limited to, Documents that identify the Insurance Policy, the name of the claimant, the Type of Abuse Categories, the amount paid for such claim, and whether the amount paid was for defense and/or indemnity.

RESPONSE:

**Request No. 9.** All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any Abuse Claims where You denied or reserved rights with respect to coverage, including, but not limited to, Documents that identify the Insurance Policy, the case caption for the claim You denied or otherwise reserved rights, the name of the claimant, and the monetary amount alleged in such claim.

RESPONSE:

**Request No. 10.** Documents sufficient to Identify (i) each Settlement of an Abuse Claim; (ii) each Verdict in favor of an Abuse Claimant; and (iii) each Verdict in favor of the Defense Concerning an Abuse Claim, including the following information with respect to each such Settlement and Verdict:

a. Your claim file and all Communications Concerning each such Abuse Claim;

b. All complaints or statements of claim associated with each Settlement and Verdict, including the filing date of the action, causes of action asserted, any consolidated action, jurisdiction, and plaintiff's counsel;

c. The stage of the proceeding at the time of the Settlement or Verdict;

d.      Amount of Settlement of the Abuse Claim or award pursuant or subject to the Verdict, including total Settlement or award amount, all sub-components of economic and non-economic Settlement or award amounts, and apportionment or allocation of Settlement or award amounts among each defendant or party against which the Abuse Claim was asserted;

e.      With respect to a Verdict in favor of the Defense Concerning an Abuse Claim, amount of Abuse Claim subject to the Verdict, including total alleged amount of Abuse Claim and all alleged sub-components of economic and non-economic amount of Abuse Claim

f.      Roster(s) of Scouting Units associated with the Abuse Claim;

g.      Information which would be responsive to any and all questions contained in Parts 2 – 6 of the "Sexual Abuse Survivor Proof of Claim" form, not limited to but including the following:

i.      Type(s) of Abuse at issue in the Abuse Claim, utilizing the Type of Abuse Categories or specifically describing the type of Abuse if not specifically delineated therein;

ii.      Number of instances of Abuse at issue in the Abuse Claim;

iii.      Year(s) of occurrence of Abuse at issue in the Abuse Claim;

iv.      Age of Abuse Claimant at time of Abuse at issue in the Abuse Claim;

v.      Identity of each defendant or party against which the Abuse Claim was asserted, including the alleged Perpetrator, Local Council, and/or Chartered Organization, as applicable;

vi.      State, city, and county in which each instance of Abuse at issue in the Abuse Claim occurred; and

vii.     Any other information or data collected, compiled, or maintained by You in connection with the Abuse Claim, including information with respect to the Abuse Claimant, the alleged Perpetrator, their respective backgrounds or histories related or relevant to the Abuse allegations, and Your knowledge of the same.

h.     The number of accusations (aside from the Abuse Claim at issue) brought against the accused Perpetrator;

i.     The date of the Settlement or Verdict and any payments made in connection therewith;

j.     If the defense of the Abuse Claim was covered by an Insurance Policy, the identity of the Insurance Policy (including a copy thereof) and Insurance Company;

k.     Identity of source(s) of payment of Settlement or Verdict amount, including if the Settlement or Verdict was paid in whole or in part from proceeds of an Insurance Policy, the identity of the Insurance Policy and Insurance Company;

l.     Copies of any agreements between You and the Debtors Concerning coverage for the Settlement of any Abuse Claims and all drafts thereof and Documents relating thereto including, but not limited to, the consent (or lack thereof) of other insureds to enter into any such agreements or Settlements; and

m.     Copies of documentation of the Settlement or Verdict, including any court order approving same.

RESPONSE:

**Request No. 11.**     All Documents Concerning an Abuse Claim that is not otherwise covered by Request No. 10, including the following information with respect to each such Abuse Claim:

a.    Your claim file and all Documents Concerning each such Abuse Claim;

b.    Any complaints or statements of claim associated with each Abuse Claim, including the filing date of the action, causes of action asserted, any consolidated action, jurisdiction, and plaintiff's counsel;

c.    Amount of the Abuse Claim, including total amount of the Abuse Claim, all sub-components of economic and non-economic amount of Abuse Claim, and apportionment or allocation of amounts among each defendant or party against which the Abuse Claim was asserted

d.    Roster(s) of Scouting Units associated with the Abuse Claim;

e.    Information which would be responsive to any and all questions contained in Parts 2 – 6 of the "Sexual Abuse Survivor Proof of Claim" form, not limited to but including the following:

i.    Type(s) of Abuse at issue in the Abuse Claim, utilizing the Type of Abuse Categories or specifically describing the type of Abuse if not specifically delineated therein;

ii.    Number of instances of Abuse at issue in the Abuse Claim;

iii.    Year(s) of occurrence of Abuse at issue in the Abuse Claim;

iv.    Age of Abuse Claimant at time of Abuse at issue in the Abuse Claim;

v.    Identity of each defendant or party against which the Abuse Claim is asserted, including the alleged Perpetrator, Local Council, and/or Chartered Organization, as applicable;

vi.    State, city, and county in which each instance of Abuse at issue in the Abuse Claim occurred; and

vii.    Any other information or data collected, compiled or maintained by

You in connection with the Abuse Claim, including information with respect to the Abuse Claimant, the alleged Perpetrator, their respective backgrounds or histories related or relevant to the Abuse allegations, and Your knowledge of the same.

        f.      The number of accusations (aside from the Abuse Claim at issue) brought against the accused Perpetrator;

        g.      If the defense of the Abuse Claim was covered by an Insurance Policy, the identity of the Insurance Policy and Insurance Company;

        h.      Any payments made in connection with the Abuse Claim, and the amounts sources and dates of any such payments;

        i.      Copies of any agreements between You and the Debtors Concerning coverage for the Settlement of any Abuse Claims and all drafts thereof and Documents relating thereto including, but not limited to, the consent (or lack thereof) of other insureds to enter into any such agreements or Settlements; and

        j.      Copies of documentation of the Abuse Claim.

        RESPONSE:

**Request No. 12.**      The most recent loss run for each Insurance Policy You sold to the Debtors.

        RESPONSE:

**Request No. 13.**      All IV Files and all Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any IV Files.

        RESPONSE:

**Request No. 14.**      All Documents prepared by the Debtors or Bates White Concerning Abuse Claims provided to You.

RESPONSE:

**Request No. 15.**   All Documents Concerning Abuse Claims provided by You to the Debtors or Bates White.

RESPONSE:

**Request No. 16.**   All Documents, including analyses prepared by the Debtors, You, or anyone at the Debtors' or Your behalf, Concerning any estimate or approximation of the number of Perpetrators and/or the number of Survivors.

RESPONSE:

**Request No. 17.**   All Documents, including expert reports, provided to You from the Debtors or Abuse Claimants Concerning Abuse Claims that assert or ascribe a value to an Abuse Claim.

RESPONSE:

**Request No. 18.**   All Documents that constitute, evidence, refer to, relate to, or otherwise Concern any reserve that You contemplated, established, set, maintained, and/or changed regarding the Abuse Claims for each Insurance Policy year.

RESPONSE:

**Request No. 19.**   All Documents that constitute, evidence, refer to, relate to, or otherwise Concern an Insurance Policy that provides or potentially provides coverage for Abuse Claims.

RESPONSE:

**Request No. 20.**   All Documents that You intend to rely on at the Confirmation Hearing or in connection with the estimation or valuation of Abuse Claims.

RESPONSE:

**Request No. 21.**     All Documents that constitute, evidence, refer to, relate to, or otherwise Concern any BSA Plan Settlement.

RESPONSE:

**Request No. 22.**     All Documents, including, without limitation claims-handling manuals, guidelines, policies, practices, directives, and procedures, that Concern Your handling, processing, adjusting, review, investigation, evaluation, acceptance, denial, reservation of rights, or other response to sexual abuse claims, including the Abuse Claims, under any Insurance Policy.

RESPONSE:

**Request No. 23.**     All Documents Concerning Your policies, practices, and procedures that Concern valuing or evaluating sexual abuse claims, including Abuse Claims, that were filed after the expiration of any applicable statute of limitations or were filed in jurisdictions where the statute of limitations with respect to sexual abuse claims may change, including, without limitation, any policies, procedures, or practices that prohibit settling or otherwise resolving such sexual-abuse claims.

RESPONSE:

**Request No. 24.**     All minutes of or other written documentation relating to every meeting of Your board of directors or managers, any committee or subcommittee thereof, any task force or working group thereof, or any of Your other executive task forces or working groups, during which there was discussion of the Debtors, the Insurance Policies sold by You to the Debtors, Abuse Claims, or the Debtors' claims for insurance coverage under Insurance Policies (whether or not regarding the Abuse Claims), including without limitation, insurance coverage for

such claims, including but not limited to handouts, agendas, attachments, and notes made by participants.

RESPONSE:

**Request No. 25.**     All Documents that refer to, relate to, memorialize, or otherwise Concern an opinion, conclusion, or analysis as to the absence or existence of an aggregate limit of liability Concerning any Insurance Policy applying to Abuse Claims and Non-Abuse Claims.

RESPONSE:

**Request No. 26.**     All Documents Concerning any Indirect Abuse Claim You assert or may assert against the Debtors, including, but not limited to, the value or amount of such Indirect Abuse Claim.

RESPONSE:

*[Remainder of page intentionally left blank]*

DOCS_DE:236367.2 85353/002

Dated: October 8, 2021
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
James I. Stang (CA Bar No. 94435) (admitted *pro hac vice*)
Iain A.W. Nasatir (CA Bar No. 148977) (admitted *pro hac vice*)
Kenneth H. Brown (CA Bar No. 100396) (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No. 271038) (admitted *pro hac vice*)
Steven W. Golden (DE No. LP 0127)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tele/Fax: (302) 652-4100 / (302) 652-4400
Email:      jstang@pszjlaw.com
            inasatir@pszjlaw.com
            kbrown@pszjlaw.com
            joneill@pszjlaw.com
            jlucas@pszjlaw.com
            sgolden@pszjlaw.com

         -and-

PASICH LLP

Jeffrey L. Schulman (NY Bar No. 3903697)
757 Third Avenue, 20th Floor
New York, New York 10017
Telephone:  (212) 686-5000
JSchulman@PasichLLP.com

         -and-

Kirk Pasich (CA Bar No. 94242)
10880 Wilshire Boulevard, Suite 2000
Los Angeles, California 90024
Telephone:  (424) 313-7850
KPasich@PasichLLP.com

*Counsel for the Tort Claimants' Committee*

DOCS_DE:236367.2 85353/002