

LOS ANGELES, CA
SAN FRANCISCO, CA
WILMINGTON, DE
NEW YORK, NY
HOUSTON, TX

10100 SANTA MONICA BLVD.
13th FLOOR
LOS ANGELES
CALIFORNIA 90067-4003

**TELEPHONE:** 310.277.6910
FACSIMILE: 310.201.0760

**SAN FRANCISCO**
150 CALIFORNIA STREET
15th FLOOR
SAN FRANCISCO
CALIFORNIA 94111-4500

**TELEPHONE:** 415.263.7000
FACSIMILE: 415.263.7010

**DELAWARE**
919 NORTH MARKET STREET
17th FLOOR
P.O. BOX 8705
WILMINGTON
DELAWARE 19899-8705

**TELEPHONE:** 302.652.4100
FACSIMILE: 302.652.4400

**NEW YORK**
780 THIRD AVENUE
34th FLOOR
NEW YORK
NEW YORK 10017-2024

**TELEPHONE:** 212.561.7700
FACSIMILE: 212.561.7777

**TEXAS**
440 LOUISIANA STREET
SUITE 900
HOUSTON
TEXAS 77002-1062

**TELEPHONE:** 713.691.9385
FACSIMILE: 713.691.9407

WEB: www.pszjlaw.com

Iain Nasatir

November 9, 2021

310.772.2365
inasatir@pszjlaw.com

**Via Email and ECF**

The Honorable Laurie Selber Silverstein
United States Bankruptcy Judge
United States Bankruptcy Court
for the District of Delaware
824 N. Market Street, 6th Floor
Wilmington, DE  19801

**Re:    In re Boy Scouts of America and Delaware BSA, LLC, Case No. 20-10343**

Dear Judge Silverstein:

The Official Committee of Tort Claimants (the "TCC") writes, in accordance with the *Order (I) Scheduling Certain Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization, (II) Establishing Certain Protocols, and (III) Granting Related Relief* [Docket No. 6528], to respectfully request the Court compel Hartford to produce certain documents (the "Disputed Documents") responsive to the TCC's request for production directed to Hartford (the "Hartford RFP").[1]  The TCC and Hartford have met and conferred on several occasions but, with respect to the matters discussed herein, have been unable to reach agreement.[2]

Generally, the Disputed Documents can be placed in three categories: (1) documents that Hartford contends are not relevant (the "Relevant Documents");[3] (2) documents that Hartford contends are protected by

---

[1] A copy of the Hartford RFP is attached hereto as **Exhibit A**.  Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Hartford RFP.

[2] For the avoidance of doubt, the exclusion of any matter from this letter should not be construed as the TCC's waiver of any rights, including with respect to (a) those matters on which the TCC understands it is in agreement with Hartford or (b) further discovery necessitated by any future change in circumstances.

[3] Relevant Documents include documents responsive to Hartford RFP No. 7 – 11.



The Honorable Laurie Selber Silverstein
November 9, 2021
Page 2

a mediation privilege (the "Mediation Documents");[4] and (3) documents that Hartford contends that they cannot produce due to confidentiality restrictions (the "Restricted Documents").[5]

**Documents Related to Abuse Claims are Relevant to the Plan and Hartford Insurance Settlement**

The Hartford Insurance Settlement, which contemplates, among other things, Hartford receiving a non-consensual third party release and the benefits of the Channeling Injunction, is proposed to be implemented through the Plan.[6] Accordingly, at the Confirmation Hearing, the Debtors will have to satisfy the fact-intensive requirements of sections 1122, 1123, and 1129 of the Bankruptcy Code, Bankruptcy Rule 9019, and the *Master Mortgage* test, among others, to gain confirmation of the Plan and approval of the Hartford Insurance Settlement.

The TCC made various requests for documents and communications to Hartford concerning Abuse Claims,[7] all of which are directly relevant to the Hartford Insurance Settlement and Plan confirmation, but is at an impasse with respect to the following narrow categories:

- Documents sufficient to show the value of any reserve established, set, changed, or maintained for each Abuse Claim for which Hartford has not yet made payment;

- Documents sufficient to show, for each Abuse Claim for which Hartford set a loss reserve and has not yet made payment, the Type of Abuse Category associated with the Abuse Claim, and where and when the Abuse at issue allegedly occurred; and

- Documents sufficient to show, for each Abuse Claim for which Hartford has neither set a loss reserve nor yet made payment, the Type of Abuse Category associated with the Abuse Claim, and where and when the Abuse at issue allegedly occurred.

---

[4] Mediation Documents include documents responsive to Hartford RFP No. 1.
[5] Restricted Documents include documents responsive to Hartford RFP No. 14.
[6] Disclosure Statement at pp. 7, 12, 115, 117.
[7] *E.g.* Hartford RFP No. 7 – 11.



The Honorable Laurie Selber Silverstein
November 9, 2021
Page 3

The TCC is entitled to broad discovery under Rule 26 as to any matter that is relevant to the Hartford Insurance Settlement and Plan.[8] As set forth in further detail in the TCC's letter brief regarding disputes between the TCC and the Insurer Parties, filed contemporaneously herewith, the sufficiency of Hartford's contributions to receive the benefits of the channeling injunction, and whether the holders of Abuse Claims are to be paid in full or substantially in full under the Plan, are factors as to which this Court must make specific factual determinations in order to approve the Plan and its channeling injunction.[9] It cannot reasonably be disputed that the Disputed Documents, which consist of information and data concerning Hartford's historical and current involvement with Abuse Claims, and the value thereof, for which Hartford will be released from liability under the Plan, are discoverable, relevant, and must be produced.[10]

**<u>Documents Related to the Mediation Process are Not Privileged</u>**

As the Court noted, the "Debtors are going to put into evidence the fact of mediation itself, the mediation order, the identity of the mediating parties, the identity of the mediators, the number of mediation sessions, and the dates of the sessions" as indicia of "good faith" under section 1129(a)(3) of the Bankruptcy Code.[11] In short, the Debtors intend to rely on the process of the mediation to prove good faith in connection with Plan confirmation.[12]

The TCC has requested, and Hartford has declined to produce, the Mediation Documents, consisting of documents and communications concerning: (a) the scheduling of mediation sessions; (b) the attendees at mediation sessions; and (c) discussions or determinations concerning the inclusion or exclusion of any mediation parties from

---

[8] Fed. R. Civ. P. 26; *see also AgroFresh, Inc. v. Essentiv LLC*, 2018 U.S. Dist. LEXIS 213203, at *5 (D. Del. Dec. 11, 2018) ("Rule 26 is liberally construed in favor of disclosure because relevance is a broader inquiry at the discovery stage than at the trial stage.") (internal quotation omitted).
[9] *See In re Continental Airlines, Inc.*, 203 F.3d 203, 214 (3d Cir. 2000); *see also In re Master Mortgage Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994).
[10] *Cf. Transcript of June 22, 2021 Telephonic Ruling in Imerys Talc America, Inc.*, at 239:16 – 240:5 (**Ex. D**). With respect to the amount of reserves, unlike in *Imerys*, Hartford has put value directly at issue.d
[11] *Transcript of October 25, 2021 Telephonic Ruling* ("<u>Oct. 25 Tr.</u>") at 7:9 – 15.
[12] *Id.*, at 7:16 – 17, 8:20 -22.

<pre>
</pre>



The Honorable Laurie Selber Silverstein
November 9, 2021
Page 4

mediation sessions.[13]  Assuming there is a federal mediation privilege as a general matter,[14] the process-specific type of documents and communications the TCC seeks are not subject to any protection.  As the Court noted, "[i]t cannot be the case that if a party is relying on the very fact of mediation to meet its standard of proof, that discovery is prohibited regarding the *bona fides* of the mediation."[15]

Even though it is the only statutory fiduciary for all survivors of childhood sexual abuse, the TCC was excluded from the mediation sessions that evidently led to the Hartford Insurance Settlement that is integrated into the Plan.  Consistent with the Court's prior comments, it cannot be that parties may rely on the fact and process of the mediation while simultaneously resisting discovery on that very process—specifically, why the TCC was excluded from it.

**Hartford Must Produce Documents Subject to Alleged Confidentiality**

The TCC requested that Hartford produce certain documents, including IV Files and non-public pleadings from the Texas Coverage Litigation[16] that Hartford asserts it cannot produce due to a Protective Order[17] in the Texas Coverage Litigation.  Upon information and belief, Hartford has requested that the Debtors consent to the production of the Restricted Documents, but such consent has not been provided to date.

The Protective Order does not prevent the Court from ordering the production of the Restricted Documents—it contemplates it.[18]  Hartford should not be able to withhold (and the Debtors should not be able to prevent Hartford from producing) responsive and relevant documents under the auspices of the Protective Order, particularly

---

[13] The TCC narrowed its initial document request considerably.  *Compare* Hartford RFP No. 1 *with* November 1, 2021 Email from S. Golden to J. Ruggeri (**Ex. B**).
[14] Oct. 25 Tr., at 10:25 – 11:8.
[15] *Id*., at 13:25 – 14:3.
[16] *Boy Scouts of America, et al. v. The Hartford Accident and Indemnity Co., et al.*, Cause No. DC-18-07313 (Tex. Dist. Ct., Dallas Cnty., 95th Judicial District) and *Boy Scouts of America, et al. v. The Hartford Accident and Indemnity Co., et al.*, Civ. Act. No. 19-CV-1318 (N.D. Tex.).
[17] A copy of the Protective Order from the Texas Coverage Litigation is attached hereto as **Exhibit C**.
[18] Protective Order, at ¶ 8.



The Honorable Laurie Selber Silverstein
November 9, 2021
Page 5

where the TCC is subject to similar, if not more robust, confidentiality obligations in these bankruptcy cases.[19]

Respectfully submitted,


/s/Iain A. W. Nasatir
Iain A. W. Nasatir                Jeffrey L. Schulman
James E. O'Neill                  jschulman@pasichllp.com

---

[19] *See* Docket No. 695, 799.