# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| Debtors.[1] | (Jointly Administered) |
| | Re Docket Nos. 2618, 6438, 6443, 6445 |

**THE OFFICIAL COMMITTEE OF**
**TORT CLAIMANTS TO BOY SCOUTS OF AMERICA AND**
**DELAWARE BSA, LLC'S REQUEST FOR THE PRODUCTION**
**OF DOCUMENTS TO HARTFORD ACCIDENT AND INDEMNITY**
**COMPANY, FIRST STATE INSURANCE COMPANY, AND TWIN CITY**
**INSURANCE COMPANY RELATING TO PLAN CONFIRMATION (SET ONE)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable to these proceedings by Rules 9014, 7026, and 7034 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and pursuant to the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Official Committee of Tort Claimants to Boy Scouts of America and Delaware BSA, LLC (the "TCC"), by and through its undersigned counsel, hereby serve the following requests for production of documents (the "Requests for Production") on Hartford Accident and Indemnity Company, First State Insurance Company, and Twin City Insurance Company (collectively, "Hartford") in connection with the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6443]

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

and any amendments, supplements or modifications thereto (the "<u>Plan</u>") and any proceedings arising therefrom or related thereto in connection with the Debtors' chapter 11 cases.

Please produce the documents and the production media to by October 18, 2021.

## <u>DEFINITIONS</u>

For the purposes of these Requests for Production, the following Definitions shall apply:

1.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.  The singular shall include the plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive; and the term "including" means "including without limitation."  The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense.

2.      Capitalized terms not otherwise defined herein shall have the same meanings set forth in the Plan.

3.      "<u>Abuse</u>" shall have the meaning provided in the Plan.

4.      "<u>Abuse Claim</u>" means a liquidated or unliquidated Claim against one or more Abuse Parties that is attributable to, arises from, is based upon, relates to, results from, or is otherwise Concerned with, in whole or in part, directly, indirectly, or derivatively, alleged Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based on misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory, including any theory based on public policy or any act or failure to act by an Abuse Party or any other Person for whom any Abuse Party is alleged to

2

be responsible.   The term "Abuse Claim" includes Direct Abuse Claims and Indirect Abuse Claims.

5.      "Abuse Claimant" shall mean the party asserting an Abuse Claim and their attorneys, advisors, agents, representatives, and experts.

6.      "Abuse Party" means, individually and collectively, (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Chartered Organizations; (f) Insurance Companies; or (g) all of any of the foregoing's Persons' Representatives.

7.      "Bates White" means Bates White, the Debtors' estimation expert.

8.      "BSA Plan Settlement" means any settlement, whether incorporated into the Plan or presented for approval pursuant to Bankruptcy Rule 9019, between the Debtors and any other Entity (including, but not limited to, an Insurance Company, Chartered Organization, or Local Council), including, but not limited to, the Hartford Insurance Settlement and the TCJC Settlement.

9.      "Century" shall mean Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Ace Insurance Group, Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company, and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, representatives, affiliates, subsidiaries, predecessors and/or successors.

10.     "Chapter 11 Cases" shall mean the above-captioned chapter 11 cases of Boy Scouts of America and Delaware BSA, LLC pending before the United States Bankruptcy Court for the District of Delaware.

11.     "Chartered Organization" shall have the meaning provided in the Plan.

12.     "Claim" means any "claim," as defined in section 101(5) of the Bankruptcy Code.

13.     "Coalition" shall mean the Coalition of Abused Scouts for Justice, an ad hoc committee that filed a notice of appearance in the Chapter 11 Cases on July 24, 2020 at Docket No. 1040, and its members, agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, representatives, affiliates, subsidiaries, predecessors and/or successors.

14.     "Communications" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, correspondence, memoranda, emails, facsimile transmissions, or other form of verbal, written, mechanical, or electronic disclosure, in Your actual or constructive control or custody or in the control or custody of any current or former affiliates, representatives or advisors.

15.     "Concerning" means relating to, evidencing, supporting, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, referencing, discussing, indicating, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

16.     "Confirmation Hearing" shall have the meaning provided in the Plan.

17.     "Debtors" means, collectively or individually, as context requires and to encompass responsive documents Boy Scouts of America and Delaware BSA, LLC, and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

18.     "Disclosure Statement" shall mean the *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6445], as such Document may be amended, supplemented, or modified from time to time.

4

19.    "Documents" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all Documents and information in Your possession, custody, or control, and includes: all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda, transcripts, tapes, or other voice recordings, and all other Documents and tangible things, including booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, print-outs, and all other data, whether recorded by electronic or other means, and all drafts thereof.  If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on any of the pages thereof, then each such non-identical copy is a separate Document and must be produced.  When examples of categories or types of Documents are given in a particular Request for Production by use of phrases such as "including," this shall always be interpreted as being for illustrative purposes only (*i.e.*, to be understood as "including without limitation") and in no way limits or narrows the scope of any Request for Production.  "Documents" always includes Communications, whether so stated in a particular Request for Production or not.

20.    "FCR" shall mean James L. Patton, Jr., the legal representative appointed by the Bankruptcy Court for holders of Future Abuse Claims, or any successor legal representative appointed by the Bankruptcy Court, and his agents, accountants, financial advisors, employees, experts, attorneys, representatives, affiliates, predecessors and/or successors.

21.    "Hartford" shall mean Hartford Accident and Indemnity Company, First State Insurance Company, and Twin City Fire Insurance Company, and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

22.    "Hartford Additional Administrative Expense Claim" shall have the meaning provided in the Plan.

23.    "Hartford Admin Claims" shall mean the Hartford Administrative Expense Claim and the Hartford Additional Administrative Expense Claim.

24.    "Hartford Administrative Expense Claim" shall have the meaning provided in the Plan.

25.    "Hartford Insurance Settlement" shall have the meaning provided in the Plan.

26.    "Hartford Insurance Settlement Agreement" shall have the meaning provided in the Plan.

27.    "Hartford Letters of Credit" shall mean the letters of credit referenced in the Hartford Proofs of Claim asserted to be valued at $600,000.00.

28.    "Hartford Proofs of Claim" shall mean the Proofs of Claim You filed against the Debtors bearing claim numbers 13, 26, and 8191.

29.    "Insurance Company" shall have the meaning provided in the Plan.

30.    "Insurance Policy" shall have the meaning provided in the Plan, including all rights and benefits thereunder, and the proceeds thereof.

31.    "IV Files" shall mean any Documents that identify individuals associated with the Debtors accused of Abuse, including those records and files referred to as "ineligible volunteer" or "perversion" files.

32.    "Local Councils" shall have the meaning provided in the Plan.

33.    "Motion" shall mean the *Debtors' Motion for Entry of an Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation and Voting Procedures, (III) Approving Forms of Ballots, (IV) Approving Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief* [Docket No. 2295], as such Document may be amended, supplemented, or modified from time to time.

34.    "Perpetrator" shall have the meaning provided in the Plan.

35.    "Petition Date" shall mean February 18, 2020.

36.    "Plan" shall mean the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6443], as such Document may be amended, supplemented, or modified from time to time.

37.    "Prepetition" shall mean occurring prior to the Petition Date.

38.    "Proof of Claim" shall have the meaning provided in the Plan.

39.    "Settlement" shall mean any Prepetition settlement or other resolution of an Abuse Claim.

40.    "Settlement Trust" shall have the meaning provided in the Plan.

41.    "TCJC Settlement" shall have the meaning provided in the Plan.

42.    "Type of Abuse Categories" shall mean the following categories of Abuse: (a) penetration; (b) oral sex; (c) masturbation; (d) fondling/groping; (e) touching – bare skin; (f) touching – over the clothes; (g) non-touching; and (h) other aggravating factors.

43.    "Verdict" shall mean any Prepetition verdict, judgment, award or decision of a court, arbitrator, mediator or similar tribunal Concerning an Abuse Claim.

44.    The terms "You" or "Your" and variants thereof mean Hartford.

## INSTRUCTIONS

The preceding Definitions apply to each of these Instructions, and for purposes of these Requests for Production, the following Instructions shall be followed:

1.    Civil Rule 34, made applicable to this proceeding pursuant to Bankruptcy Rules 7034 and 9014(c), is hereby incorporated by reference and applies to each of the following instructions.

2.    All responses shall comply with the requirements of the Civil Rules, the Bankruptcy Rules, the Local Rules, and any Court Order.

3.    Unless otherwise stated in a specific Request for Production herein, the relevant time period shall be the period from the inception of the Debtors to the present.

4.    These Requests for Production shall be deemed continuing in nature.  In the event You become aware of or acquire additional information relating or referring to any of the following Requests for Production, such additional information is to be promptly produced.

5.    Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of current or former employees, officers, directors, agents, agents' representatives, consultants, contractors, vendors, or any fiduciary or other third parties, wherever those Documents and

materials are maintained, including on personal computers, PDAs, wireless devices, local area networks, application-based communications services (including, without limitation, Facebook Messenger, Instant Bloomberg, WeChat, Skype, KakaoTalk, WhatsApp, Signal, iMessage, etc.), web-based file hosting services (including, without limitation, Dropbox, Box, Apple iCloud, Google Drive, Hightail, etc.), or web-based email systems such as Gmail, Yahoo, etc.

6.     You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf. You must produce all such Documents even if they were deleted or in draft form.  Without limitation, hardware where such data may be stored includes:  servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile storage devices, such as thumb or external hard drives.  Electronically stored Documents include any computerized data or content stored on electromagnetic media.  Without limitation, types of electronically stored Documents include email, voicemail, instant messages, intranet and internet system data, telephone and cellular telephone calling records, data compilations, spreadsheets, word processing Documents, images, databases, digital photocopier memory, and any other information stored in memory storage devices.

7.     Produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document requested together with all non-identical copies and drafts of that Document.  If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

8.     Documents not otherwise responsive to these Requests for Production should be produced: (a) if such Documents mention, discuss, refer to, explain, or concern one or more

Documents that are called for by these Requests for Production; (b) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests for Production; or (c) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

9.      Documents attached to each other should not be separated; separate Documents should not be attached to each other.

10.      Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

11.      If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request for Production or part thereof, for each such Document, You must:

        a.      Identify the type, title and subject matter of the Document;

        b.      State the place, date, and manner of preparation of the Document;

        c.      Identify all authors, addressees, and recipients of the Document, including information about such persons to assess the privilege asserted; and

        d.      Identify the legal privilege(s) and the factual basis for the claim.

12.      Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine.  In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 11 above must be provided.

13.      To the extent a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it:  (a) is missing or lost; (b) has

been destroyed; (c) has been transferred to others; and/or (d) has been otherwise disposed of. In each instance, identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, identify each person having knowledge of the circumstances of the disposition, and identify each person who had possession, custody, or control of the Document. Documents prepared prior to, but which relate or refer to, the time period covered by these Requests for Production are to be identified and produced.

14.     If any part of the following Requests for Production cannot be responded to in full, please respond to the extent possible, specifying the reason(s) for Your inability to respond to the remainder and stating whatever information or knowledge You have Concerning the portion to which You do not respond.

15.     If You object to any of these Requests for Production, state in writing with specificity the grounds of Your objections. Any ground not stated shall be waived. If You object to a particular portion of any Request for Production, You shall respond to any other portions of such Request for Production as to which there is no objection and state with specificity the grounds of the objection.

16.     The fact that an investigation is continuing or that discovery is incomplete shall not be a justification for failing to respond to these Requests for Production based on the knowledge or information that You possess at the time You respond to these Requests for Production. If an investigation is continuing or discovery is not complete with respect to the matter inquired into by any Request for Production, so state in Your response to that Request for Production.

17.     If the identity of Documents responding to a Request for Production is not known, then that lack of knowledge must be specifically indicated in the response. If any information

requested is not in Your possession, but is known or believed to be in the possession of another person or entity, then identify that person or entity and state the basis of Your belief or knowledge that the requested information is in such person's or entity's possession.

## MANNER OF PRODUCTION

1.      All Documents produced to the TCC shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files and accompanied by true and correct copies or representations of unaltered attendant metadata.  Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents.  Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

2.      Database Load Files and Production Media Structure:  Database load files shall consist of: (i) a comma-delimited values (".dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (ii) an Opticon (".opt") file to facilitate the loading of tiff images.  Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.

3.    <u>Electronic Documents and Data, Generally</u>:  Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text as to allow the TCC, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Documents' true and original content.

4.    <u>Emails and Attachments, and Other Email Account-Related Documents</u>:    All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the TCC.

5.    <u>Documents and Data Created or Stored in or by Structured Electronic Databases</u>: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the TCC to reasonably manage and import those Documents into a useable, coherent database.    Documents must be accompanied by reasonably detailed documentation explaining the Documents' content and format including but not limited to data dictionaries and diagrams.  Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

a.    XML format file(s);

b.    Microsoft SQL database(s);

  c.  Access database(s); and/or

  d.  fixed or variable length ASCII delimited files.

  6.  <u>Spreadsheets, Multimedia, and Non-Standard File Types</u>: All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet, database and/or statistical programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced.  A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media.  To the extent You have other file types that do not readily or easily and accurately convert to tiff and searchable text, You may elect to produce those files in native format subject to the other requirements listed herein.  Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

  7.  <u>"Other" Electronic Documents</u>:  All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

  8.  <u>Paper Documents</u>:  Documents originally created or stored on paper shall be produced in tiff format.  Relationships between Documents shall be identified within the .dat file utilizing document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings.  In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these Requests for Production.

## DOCUMENT REQUESTS

**Request No. 1.**        All Documents Concerning the Motion, the Plan, the Disclosure Statement, the Hartford Insurance Settlement Agreement, or any actual or proposed settlements of Your coverage obligations to the Debtors, including any drafts thereof, including, but not limited to, all such Documents prepared, authored, sent, or received by the Debtors, the FCR, and the Coalition.

RESPONSE:

**Request No. 2.**        All Documents that You or anyone acting on Your behalf prepared, authored, sent, or received that interpret, refer to, relate to, or otherwise Concern insurance coverage for any Abuse Claim.

RESPONSE:

**Request No. 3.**        Documents sufficient to show all liabilities that You have for each Insurance Policy that the Debtors are proposing to contribute to the Settlement Trust under the Plan.

RESPONSE:

**Request No. 4.**        All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern Your financial ability to satisfy Your obligations under any Insurance Policies.

RESPONSE:

**Request No. 5.**        All Documents that evidence, refer to, relate to, or otherwise Concern reinsurance under any other Insurance Policies You sold to the Debtors, including, but not limited to, (i) all Communications sent or received by You Concerning the collectability of reinsurance for Your liability for Abuse Claims under (a) Your Insurance Policies or (b) the Hartford Insurance Settlement Agreement; and (ii) all Documents that constitute, evidence, refer

to, relate to, or otherwise Concern any Communication between You and any reinsurer Concerning any Abuse Claim.

RESPONSE:

**Request No. 6.**        If You contend that anything in the Plan or Settlement Trust will, if the Plan is confirmed, impact Your rights or obligations (including without limitation inter-insurer contribution claims), all Documents that Concern Your contention.

RESPONSE:

**Request No. 7.**        If You contend that the Debtors have not complied with any contractual conditions or obligations under any Insurance Policy in connection with any Abuse Claim, all Documents that Concern Your contention.

RESPONSE:

**Request No. 8.**        All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any Abuse Claims where You paid or agreed to pay defense costs and/or make an indemnity payment on behalf of Debtors or any other insureds, including, but not limited to, Documents that identify the Insurance Policy, the name of the claimant, the Type of Abuse Categories, the amount paid for such claim, and whether the amount paid was for defense and/or indemnity.

RESPONSE:

**Request No. 9.**        All Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any Abuse Claims where You denied or reserved rights with respect to coverage, including, but not limited to, Documents that identify the Insurance Policy, the case caption for the claim You denied or otherwise reserved rights, the name of the claimant, and the monetary amount alleged in such claim.

16

<u>RESPONSE</u>:

**Request No. 10.**     Documents sufficient to Identify (i) each Settlement of an Abuse Claim; (ii) each Verdict in favor of an Abuse Claimant; and (iii) each Verdict in favor of the Defense Concerning an Abuse Claim, including the following information with respect to each such Settlement and Verdict:

a.      Your claim file and all Communications Concerning each such Abuse Claim;

b.      All complaints or statements of claim associated with each Settlement and Verdict, including the filing date of the action, causes of action asserted, any consolidated action, jurisdiction, and plaintiff's counsel;

c.      The stage of the proceeding at the time of the Settlement or Verdict;

d.      Amount of Settlement of the Abuse Claim or award pursuant or subject to the Verdict, including total Settlement or award amount, all sub-components of economic and non economic Settlement or award amounts, and apportionment or allocation of Settlement or award amounts among each defendant or party against which the Abuse Claim was asserted;

e.      With respect to a Verdict in favor of the Defense Concerning an Abuse Claim, amount of Abuse Claim subject to the Verdict, including total alleged amount of Abuse Claim and all alleged sub-components of economic and non-economic amount of Abuse Claim

f.      Roster(s) of Scouting Units associated with the Abuse Claim;

g.      Information which would be responsive to any and all questions contained in Parts 2 – 6 of the "Sexual Abuse Survivor Proof of Claim" form, not limited to but including the following:

i.      Type(s) of Abuse at issue in the Abuse Claim, utilizing the Type of Abuse Categories or specifically describing the type of Abuse if not specifically delineated therein;

ii.     Number of instances of Abuse at issue in the Abuse Claim;

iii.    Year(s) of occurrence of Abuse at issue in the Abuse Claim;

iv.     Age of Abuse Claimant at time of Abuse at issue in the Abuse Claim;

v.      Identity of each defendant or party against which the Abuse Claim was asserted, including the alleged Perpetrator, Local Council, and/or Chartered Organization, as applicable;

vi.     State, city, and county in which each instance of Abuse at issue in the Abuse Claim occurred; and

vii.    Any other information or data collected, compiled, or maintained by You in connection with the Abuse Claim, including information with respect to the Abuse Claimant, the alleged Perpetrator, their respective backgrounds or histories related or relevant to the Abuse allegations, and Your knowledge of the same.

h.      The number of accusations (aside from the Abuse Claim at issue) brought against the accused Perpetrator;

i.      The date of the Settlement or Verdict and any payments made in connection therewith;

j.      If the defense of the Abuse Claim was covered by an Insurance Policy, the identity of the Insurance Policy (including a copy thereof) and Insurance Company;

k.    Identity of source(s) of payment of Settlement or Verdict amount, including if the Settlement or Verdict was paid in whole or in part from proceeds of an Insurance Policy, the identity of the Insurance Policy and Insurance Company;

l.    Copies of any agreements between You and the Debtors Concerning coverage for the Settlement of any Abuse Claims and all drafts thereof and Documents relating thereto including, but not limited to, the consent (or lack thereof) of other insureds to enter into any such agreements or Settlements; and

m.    Copies of documentation of the Settlement or Verdict, including any court order approving same.

RESPONSE:

**Request No. 11.**    All Documents Concerning an Abuse Claim that is not otherwise covered by Request No. 10, including the following information with respect to each such Abuse Claim:

a.    Your claim file and all Communications Concerning each such Abuse Claim;

b.    Any complaints or statements of claim associated with each Abuse Claim, including the filing date of the action, causes of action asserted, any consolidated action, jurisdiction, and plaintiff's counsel;

c.    Amount of the Abuse Claim, including total amount of the Abuse Claim, all sub-components of economic and non-economic amount of Abuse Claim, and apportionment or allocation of amounts among each defendant or party against which the Abuse Claim was asserted

d.    Roster(s) of Scouting Units associated with the Abuse Claim;

e.    Information which would be responsive to any and all questions contained

in Parts 2 – 6 of the "Sexual Abuse Survivor Proof of Claim" form, not limited to but including the following:

      i.      Type(s) of Abuse at issue in the Abuse Claim, utilizing the Type of Abuse Categories or specifically describing the type of Abuse if not specifically delineated therein;

      ii.      Number of instances of Abuse at issue in the Abuse Claim;

      iii.      Year(s) of occurrence of Abuse at issue in the Abuse Claim;

      iv.      Age of Abuse Claimant at time of Abuse at issue in the Abuse Claim;

      v.      Identity of each defendant or party against which the Abuse Claim is asserted, including the alleged Perpetrator, Local Council, and/or Chartered Organization, as applicable;

      vi.      State, city, and county in which each instance of Abuse at issue in the Abuse Claim occurred; and

      vii.      Any other information or data collected, compiled or maintained by You in connection with the Abuse Claim, including information with respect to the Abuse Claimant, the alleged Perpetrator, their respective backgrounds or histories related or relevant to the Abuse allegations, and Your knowledge of the same.

      f.      The number of accusations (aside from the Abuse Claim at issue) brought against the accused Perpetrator;

      g.      If the defense of the Abuse Claim was covered by an Insurance Policy, the identity of the Insurance Policy and Insurance Company;

      h.      Any payments made in connection with the Abuse Claim, and the amounts sources and dates of any such payments;

i.     Copies of any agreements between You and the Debtors Concerning coverage for the Settlement of any Abuse Claims and all drafts thereof and Documents relating thereto including, but not limited to, the consent (or lack thereof) of other insureds to enter into any such agreements or Settlements; and

j.     Copies of documentation of the Abuse Claim.

RESPONSE:

**Request No. 12.**     All Documents Concerning the Hartford Admin Claims, including, but not limited to, all Documents (a) that Concern the amount of the Hartford Admin Claims and (b) that Concern Your belief that You are or may be entitled to payment of the Hartford Admin Claims.

RESPONSE:

**Request No. 13.**     The most recent loss run for each Insurance Policy You sold to the Debtors.

RESPONSE:

**Request No. 14.**     All IV Files and all Documents that evidence, interpret, constitute, refer, relate to, or otherwise Concern any IV Files.

RESPONSE:

**Request No. 15.**     All Documents prepared by the Debtors or Bates White Concerning Abuse Claims provided to You.

RESPONSE:

**Request No. 16.**     All Documents Concerning Abuse Claims provided by You to the Debtors or Bates White.

RESPONSE:

**Request No. 17.**      All Documents, including analyses prepared by the Debtors, You, or anyone on the Debtors' or Your behalf, Concerning any estimate or approximation of the number of Perpetrators and/or the number of Survivors.

RESPONSE:

**Request No. 18.**      All Documents, including expert reports, provided to You from the Debtors or Abuse Claimants or Concerning Abuse Claims that assert or ascribe a value to an Abuse Claim.

RESPONSE:

**Request No. 19.**      All Documents that constitute, evidence, refer to, relate to, or otherwise Concern any reserve that You contemplated, established, set, maintained, and/or changed Concerning the Abuse Claims for each Insurance Policy year.

RESPONSE:

**Request No. 20.**      All Documents that constitute, evidence, refer to, relate to, or otherwise Concern an Insurance Policy that provides or potentially provides coverage for Abuse Claims.

RESPONSE:

**Request No. 21.**      All Documents, including, without limitation claims-handling manuals, guidelines, policies, practices, directives, and procedures, that Concern Your handling, processing, adjusting, review, investigation, evaluation, acceptance, denial, reservation of rights, or other response to sexual abuse claims, including the Abuse Claims, under any Insurance Policy.

RESPONSE:

**Request No. 22.**      All Documents Concerning Your policies, practices, and procedures that Concern valuing or evaluating sexual abuse claims, including Abuse Claims, that were filed after the expiration of any applicable statute of limitations or were filed in jurisdictions where the statute of limitations with respect to sexual abuse claims may change, including, without limitation, any policies, procedures, or practices that prohibit settling or otherwise resolving such sexual-abuse claims.

RESPONSE:

**Request No. 23.**      All minutes of or other written documentation relating to every meeting of Your board of directors or managers, any committee or subcommittee thereof, any task force or working group thereof, or any of Your other executive task forces or working groups, during which there was discussion of the Debtors, the Insurance Policies sold by You to the Debtors, Abuse Claims, or the Debtors' claims for insurance coverage under Insurance Policies (whether or not regarding the Abuse Claims), including without limitation, insurance coverage for such claims, including but not limited to handouts, agendas, attachments, and notes made by participants.

RESPONSE:

**Request No. 24.**      All Documents that constitute, evidence, refer to, relate to, or otherwise Concern any BSA Plan Settlement.

RESPONSE:

**Request No. 25.**        All Documents You intend to or may rely on at the Confirmation Hearing or in connection with the estimation on Abuse Claims.

RESPONSE:

**Request No. 26.**        If you contend that the Hartford Insurance Settlement Agreement satisfies the standards for 11 U.S.C. § 363, Federal Rule of Bankruptcy Procedure 9019(b), or 11 U.S.C. § 1129(a)(7), all Documents that Concern such contention.

RESPONSE:

**Request No. 27.**        All Documents Concerning the validity and amount of the Hartford Proofs of Claim.

RESPONSE:

**Request No. 28.**        All Documents Concerning Your assertion of a lien securing amounts that You assert are owing to You in any of the Hartford Proofs of Claim.

RESPONSE:

**Request No. 29.**        All Documents Concerning Your assertion that the amounts You purport the Debtors owe to You in the Hartford Proofs of Claim are accruing interest at a fixed rate.

RESPONSE:

**Request No. 30.**        Copies of the Hartford Letters of Credit.

RESPONSE:

**Request No. 31.**        All Documents Concerning any draws You have made on the Hartford Letters of Credit.

RESPONSE:

**Request No. 32.**       All Documents Concerning any Indirect Abuse Claim You assert or may assert against the Debtors, including, but not limited to, the value or amount of such Indirect Abuse Claim.

RESPONSE:

**Request No. 33.**       All Documents that Concern Your responses to the Interrogatories and Requests for Admission served on You by the TCC contemporaneously with these Requests for Production.

RESPONSE:

*[Remainder of page intentionally left blank]*

Dated: October 8, 2021
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
James I. Stang (CA Bar No. 94435) (admitted *pro hac vice*)
Iain A.W. Nasatir (CA Bar No. 148977) (admitted *pro hac vice*)
Kenneth H. Brown (CA Bar No. 100396) (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No. 271038) (admitted *pro hac vice*)
Steven W. Golden (DE No. LP 0127)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tele/Fax: (302) 652-4100 / (302) 652-4400
Email:        jstang@pszjlaw.com
              inasatir@pszjlaw.com
              kbrown@pszjlaw.com
              joneill@pszjlaw.com
              jlucas@pszjlaw.com
              sgolden@pszjlaw.com

              -and-

PASICH LLP

Jeffrey L. Schulman (NY Bar No. 3903697)
757 Third Avenue, 20th Floor
New York, New York 10017
Telephone:  (212) 686-5000
JSchulman@PasichLLP.com

              -and-

Kirk Pasich (CA Bar No. 94242)
10880 Wilshire Boulevard, Suite 2000
Los Angeles, California 90024
Telephone:  (424) 313-7850
KPasich@PasichLLP.com

*Counsel for the Tort Claimants' Committee*