# EXHIBIT 21

**Debtors' November 8 Letter**

**WHITE & CASE**

November 8, 2021

VIA E-MAIL

Tort Claimants' Committee
c/o James I. Stang
Pachulski Stang Ziehl & Jones LLP
jstang@pszjlaw.com

White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095
T +1 212 819 8200

**whitecase.com**

**Re:    In re Boy Scouts of America and Delaware BSA, LLC**

Dear Jim:

I am writing in response to your November 7 email reply to my letters of the same date, where you again acknowledged that the Tort Claimants' Committee transmitted Mr. Kosnoff's communication *from an official Tort Claimants' Committee email address* to its entire listserv. Although you have refused to provide us with a copy of the listserv, we understand it includes thousands of survivors, including survivors who are clients of dozens of state court lawyers. The Tort Claimants' Committee now claims to have sent a follow-up email to the listserv or to particular non-Abused in Scouting abuse survivors and counsel on Sunday afternoon.

However, this communication was: (i) sent only after repeated requests from counsel to the Coalition and the Debtors for information, (ii) sent 24 hours after the Tort Claimants' Committee was first informed by counsel to the Coalition of the communication, and (iii) insufficient to remedy the harm that your Committee may have caused to the Debtors' ability to reorganize. The Tort Claimants' Committee has also refused to disclose who received this follow-up communication.

The Debtors do not yet know the full ramifications of the Tort Claimants' Committee's actions, but it is clear the Tort Claimants' Committee has caused significant confusion among survivors and harm to these cases by distributing Mr. Kosnoff's material, including to survivors that are represented by other counsel. This confusion has clearly not been remedied – and may have been exacerbated – by the Tort Claimants' Committee's communication yesterday to an unknown group of survivors and lawyers. Accordingly, the Debtors request that you immediately take the actions set forth below. To the extent that you refuse to take such remedial steps promptly, the Debtors intend to seek emergency relief from the Court.

1. Provide (a) the Tort Claimants' Committee's entire listserv (i.e., the list of all individuals, including email addresses, that were sent Mr. Kosnoff's email on November 6, 2021), (b) the list of "all of [Mr. Kosnoff's] clients" that you claim were the intended recipients of the email, and (c) the list of all individuals on whom you served the follow-up email. This information is not privileged. Moreover, because you contacted survivors represented by other counsel without such counsel's consent, it is imperative that such survivors'

November 8, 2021

**WHITE & CASE**

    counsel be informed of this transgression so that they can directly reach out to their clients to mitigate the damage.

2. Send the following corrective email to the entire listserv today:

   To all concerned:

   My firm sent an email from Mr. Kosnoff to all individuals on this listserv on November 6, 2021. We urge each of you to disregard its contents. Many of you have counsel who represent your interests and who have very different opinions as to how you should vote on the Boy Scouts' plan of reorganization. In fact, we understand that counsel representing a majority of the survivors in these cases support the plan and are urging their clients to vote "YES" on the plan. We are not trying to interfere with the advice that you are receiving from your own counsel, and if you have questions on how to vote on the plan, we strongly encourage you to seek advice from your counsel.

   Furthermore, the Tort Claimants' Committee does <u>not</u> agree with and affirmatively rejects any and all statements made about the Eisenberg Rothweiler law firm in the letter from Mr. Kosnoff that was attached to the email sent to you. The Tort Claimants' Committee regrets any suggestion that its counsel endorsed the distribution of such statements. Finally, please see the attached letters from the Debtors, Future Claimants' Representative and Coalition of Abused Scouts for Justice.

   Jim

3. Agree to attach and distribute the authorized solicitation letters drafted by the Debtors [Docket No. 6438, Ex. 7] and the Future Claimants' Representative and the Coalition [Docket No. 6441] to everyone on the listserv in connection with the email described in paragraph 2 directly above, copies of which are attached to this letter.

4. Agree to respond to the Debtors' forthcoming discovery by November 9, 2021, and complete production by November 12, 2021.

5. Refrain from distributing, for the entirety of the chapter 11 cases, any and all communications from or on behalf of any state court counsel, including to parties on the listserv.

6. Agree to give prior notice to the Debtors of any substantive communications that the Tort Claimants' Committee intends to distribute to parties on the listserv at least 48 hours prior to distribution.

The Debtors reserve all rights to seek further remedies in connection with this matter including, without limitation, designation of votes potentially affected by this distribution and the right to require the Tort Claimants' Committee to send further remedial communications to parties who received Mr. Kosnoff's communication from the Tort Claimants' Committee.

**WHITE & CASE**

November 8, 2021

Please confirm that you will agree to the above-requested remedies by 8 p.m. (PT)/11 p.m. (ET) today.

Sincerely,

*/s/ Jessica C. Lauria*

**Jessica C. Lauria**
Partner

**E** jessica.lauria@whitecase.com

cc:   Michael C. Andolina
      Matthew E. Linder
      Laura E. Baccash
      Blair M. Warner
      Derek Abbott
      John Lucas
      Debra Grassgreen
      Robert Orgel
      James O'Neill
      Robert S. Brady
      Edwin J. Harron
      David Molton
      Eric R. Goodman
      Tristan G. Axelrod
      Rachael Ringer
      Megan Wasson

**Solicitation Letter from the Debtors**



September 30, 2021

        Re:    *In re Boy Scouts of America and Delaware BSA, LLC*, **Case No. 20-10343 (LSS), Chapter 11 Bankruptcy**

**To All Holders of Claims Entitled to Vote on the Plan:**

On February 18, 2020, the Boy Scouts of America and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors filed the Chapter 11 Cases in order to address the significant potential liabilities arising from Claims related to alleged historical acts of Abuse in the BSA's programs.

The BSA cares deeply about all survivors of child abuse. The BSA understands that no apology can repair the damage caused by abuse or take away the pain that survivors have endured. The BSA is steadfast in its commitment to continually improve all of its policies to prevent abuse.

> **THE DEBTORS, THE COALITION OF ABUSED SCOUTS FOR JUSTICE, THE FUTURE CLAIMANTS' REPRESENTATIVE, THE CREDITORS' COMMITTEE AND THE AD HOC COMMITTEE OF LOCAL COUNCILS (THE "SUPPORTING PARTIES") BELIEVE THE PLAN OF REORGANIZATION PROVIDES HOLDERS OF CLAIMS, INCLUDING ABUSE CLAIMS, SUBSTANTIALLY GREATER RECOVERY THAN ANY OTHER ALTERNATIVE AND URGE YOU TO SUBMIT A TIMELY BALLOT VOTING TO ACCEPT THE PLAN OF REORGANIZATION.**
>
> **THE VOTING DEADLINE IS DECEMBER 14, 2021 AT 4:00 P.M. (EASTERN TIME).**

On September 30, 2021, the Bankruptcy Court entered an order [D.I. 6438] approving the *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 6445] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"). On the same date, the Bankruptcy Court entered an order [D.I. 6438] (the "Solicitation Procedures Order") that, among other things, authorizes the Debtors to solicit votes to accept or reject the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 6443] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan").[1]

**The Plan is supported by the Debtors and the other Supporting Parties. The BSA and the Supporting Parties all believe that the Plan represents the best possible means to (a) timely and equitably compensate survivors of alleged Abuse in Scouting and (b) ensure**

---

[1]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable.



**that the BSA emerges from bankruptcy with the ability to continue its vital charitable mission. The BSA and the other Supporting Parties believe that the Plan provides the highest and best recovery—and the best outcome—for all creditors and is in the best interests of the Debtors' estates. Therefore, the BSA and the other Supporting Parties urge eligible creditors to vote to accept the Plan.**

You are receiving this letter and the accompanying materials because you may be entitled to vote on the Plan. The following materials constitute the "Solicitation Package" which, in addition to this letter, is comprised of:

(a) the Disclosure Statement, including all exhibits thereto, attached to which is the Plan, including all of its exhibits and schedules (to the extent such exhibits and schedules are filed with the Bankruptcy Court before the Solicitation Date);

(b) the Solicitation Procedures Order;

(c) the Confirmation Hearing Notice;

(d) an appropriate ballot with detailed voting instructions, including instructions for voting online via the electronic ballot submission platform (the "E-Ballot Platform") on the website of Omni Agent Solutions, the Debtors' claims, noticing, and solicitation agent in these chapter 11 cases (the "Solicitation Agent"), and return instructions or a return envelope with postage, if applicable;

(e) a letter from any official committee or the Coalition, substantially in the form filed on the docket of the Chapter 11 Cases (and as may be modified, amended, or supplemented from time to time); and

(f) any other materials ordered by the Bankruptcy Court to be included as part of the Solicitation Package.

### ACCESS TO PLAN AND DISCLOSURE STATEMENT

**IMPORTANT**: You should have received a hard copy or USB flash drive copy of the Plan, the Disclosure Statement, and the Solicitation Procedures Order (excluding exhibits except for the Solicitation Procedures). You may also access the Plan, the Disclosure Statement, and the Solicitation Procedures Order free of charge at https://omniagentsolutions.com/bsa-SAballots (Direct Abuse Claims) or https://omniagentsolutions.com/bsa-ballots (all other Claims). You may also obtain copies of any of the other Solicitation Package materials free of charge at these websites. If you would prefer to receive paper copies or documents on a USB drive, please contact the Solicitation Agent to make such a request by: (a) calling the Debtors' toll-free restructuring hotline at 1-866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.



      The comprehensive restructuring of the Debtors proposed in the Plan is the product of agreements reached among the BSA, the other Supporting Parties, JPM (the Debtors' senior secured lender), Hartford, and The Church of Jesus Christ of Latter-day Saints ("<u>TCJC</u>"), which provides the framework for global resolution of Abuse Claims against the Debtors, Related Non-Debtor Entities, and Local Councils, as well as any other Contributing Chartered Organizations, Participating Chartered Organizations, and Settling Insurance Companies that may become party to the restructuring settlements after the date of this letter, in exchange for contributions by such parties to the Settlement Trust for the benefit of survivors of Abuse (collectively, "<u>Abuse Survivors</u>").  The Plan has been designed to maximize and expedite recoveries to Abuse Survivors, resulting in substantial recoveries, as set forth in the recovery chart in the Disclosure Statement. The Debtors and the other Supporting Parties strongly encourage all holders of Claims in the Voting Classes, including Direct Abuse Claims, to vote in favor of the Plan.

      The Plan, which incorporates a settlement with Hartford for $787 million and a settlement with TCJC for $250 million, as well as the JPM / Creditors' Committee Settlement, provides for a mechanism to channel to the Settlement Trust all Abuse Claims asserted against the Debtors and certain non-debtor third parties, including the Local Councils, Participating Chartered Organizations, Contributing Chartered Organizations (including TCJC), and Settling Insurance Companies (including Hartford) that make contributions to the Settlement Trust for the benefit of Abuse Survivors.  If the Plan is approved, the Settlement Trust will exclusively administer and resolve the Abuse Claims.  In exchange for channeling all Abuse Claims to the Settlement Trust, as described in the Disclosure Statement, the BSA will make a substantial contribution to the Settlement Trust of approximately $220 million assuming an Effective Date of December 31, 2021.  The BSA will also assign and transfer to the Settlement Trust all of its insurance rights under the BSA's insurance policies, thereby providing the potential for substantial insurance recoveries to holders of Direct Abuse Claims.

      Additionally, Local Councils will make a substantial contribution to the Settlement Trust to resolve the Abuse Claims that may be asserted against them in exchange for being included as Protected Parties under the Plan and receiving the benefits of the Channeling Injunction, consisting of (a) $500 million, comprised of at least $300 million in Cash with the balance in property, exclusive of insurance rights, (b) the DST Note, a $100 million interest-bearing variable-payment obligation note issued to the Settlement Trust by a Delaware statutory trust on or as soon as practicable after the Effective Date, and (c) the assignment and transfer to the Settlement Trust of all Local Council insurance rights under the BSA's and Local Councils' liability insurance policies that provide coverage for Abuse Claims, thereby providing the potential for substantial insurance recoveries to holders of Direct Abuse Claims.

      The Plan also provides a mechanism by which Chartered Organizations can become Participating Chartered Organizations (unless they elect not to or are chapter 11 debtors in their own restructuring cases) through the assignment and transfer to the Settlement Trust of all of their post-1975 insurance rights under BSA and Local Council policies that provide coverage for Abuse Claims in exchange for being included as a Limited Protected Party under the Plan, resulting in the potential for substantial additional insurance recoveries for holders of Abuse Claims. Insurance Companies may also make substantial contributions and Chartered Organizations may also make further substantial contributions to the Settlement Trust in exchange for becoming



Protected Parties under the Plan and receiving the comprehensive benefits of the Channeling Injunction.

Additionally, the Plan also provides for the BSA's assumption of its prepetition Pension Plan and specifies the treatment of holders of Allowed Convenience Claims, Allowed General Unsecured Claims and Allowed Non-Abuse Litigation Claims, resulting in substantial recoveries, as set forth in the recovery chart in the Disclosure Statement. The treatment of all classes of Claims entitled to vote is described more fully in the Plan and the Disclosure Statement.

The Debtors and the Supporting Parties support confirmation of the Plan and urge all claimants to vote in favor of the Plan. **The Debtors and the Supporting Parties believe that the Plan will offer the highest and best recovery for all creditors and that the Plan will provide more certain recoveries to survivors of Abuse and other creditors than any other alternative. The Debtors and the Supporting Parties also believe that the Plan will provide those recoveries more quickly than would any alternative, including by avoiding time-consuming and costly litigation.**

If the Plan cannot be confirmed by the Bankruptcy Court, or if an insufficient number of voting claimants vote in favor of the Plan, (i) the Debtors may be required to liquidate and/or voluntarily convert these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed or elected to liquidate the Debtors' assets for distribution in accordance with the priorities established by the Bankruptcy Code, (ii) the Debtors may seek approval of a revised plan of reorganization that provides for less favorable treatment for creditors, or (iii) other parties may submit an alternate plan to reorganize BSA. **The Debtors believe that all of these alternatives would result in significantly reduced recoveries for Abuse Survivors, and would significantly delay the date by which Abuse Survivors can begin expecting payments from the Settlement Trust.**

> **To Chartered Organizations that Hold Indirect Abuse Claims Under the Plan:** Thank you for your support of the Scouting movement. Millions of young men and women have passed through your doors, and our joint mission to serve them has helped countless youth become prepared for life. Your support for the Plan is essential for the mission of Scouting, and the success of the BSA's bankruptcy case depends your support for the Chartered Organization settlement framework set forth in the Plan. The BSA urges you to support the survival and continuation of Scouting by voting your Indirect Abuse Claim in favor of the Plan.

**Please read the Plan carefully. In particular, please review the injunction, release, and exculpation provisions provided in Article X of the Plan. If you vote to accept or reject the Plan, you will be releasing the Released Parties from any and all Claims/Causes of Action to the extent provided in Article X.J.4 of the Plan unless you "opt-out" of such releases. If you decide to opt out of the release in Article X.J.4 of the Plan, please do so by checking the appropriate box on your ballot.**

**If you are the holder of an Abuse Claim, then regardless of whether you opt out of the releases in Article X.J.4 of the Plan, if the Plan is confirmed, you will be bound by the releases and Channeling Injunction set forth in Article X.J.3 and Article X.F of the Plan.**



The Debtors and other Supporting Parties believe that the Plan constitutes a good-faith compromise and settlement of all Claims and controversies based upon the unique circumstances of these chapter 11 cases, and will provide the maximum recovery for creditors. The Debtors and other Supporting Parties believe that the acceptance of the Plan by holders of Claims entitled to vote to accept or reject the Plan is in the best interests of holders of Claims against the Debtors. Moreover, the Debtors and other Supporting Parties believe that any alternative other than Confirmation of the Plan may result in, among other risks, delays and significantly increased administrative expenses, and significantly diminished distributions on account of Allowed Claims.

> **THE DEBTORS AND OTHER SUPPORTING PARTIES STRONGLY URGE YOU TO TIMELY SUBMIT YOUR BALLOT CASTING A VOTE TO ACCEPT THE PLAN IN ACCORDANCE WITH THE INSTRUCTIONS IN YOUR BALLOT.**
>
> **THE VOTING DEADLINE IS DECEMBER 14, 2021 AT 4:00 P.M. (EASTERN TIME).**

For the reasons set forth herein and in the Disclosure Statement, the Debtors and other Supporting Parties recommend that all persons or entities entitled to vote on the Plan vote to accept the Plan by timely submitting a properly completed ballot. Instructions for casting your vote on the Plan are provided on your ballot. You are strongly encouraged to submit your ballot online via the E-Ballot Platform on the Solicitation Agent's website. In order to have your vote to accept or reject the Plan counted, your Ballot must **actually be received** by the Solicitation Agent on or before **December 14, 2021 at 4:00 p.m. (Eastern Time)**.

If you would like electronic copies of any of the materials enclosed herein, or any other filings in the Debtors' chapter 11 cases, they can be accessed at the Debtors' restructuring website free of charge at https://omniagentsolutions.com/BSA.

If you have any questions, or need to obtain additional solicitation materials, you may contact the Solicitation Agent by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/bsa. Please note that the Solicitation Agent is not authorized to, and will not, provide legal advice to you. If you need legal advice, please consult with your attorney.

Sincerely,

*Boy Scouts of America and Delaware BSA, LLC*



**Solicitation Letter from the Coalition and the Future Claimants' Representative**

**brownrudnick**



September 30, 2021

**To:** Holders of Direct Abuse Claims Against the Boy Scouts of America
**From:** Coalition of Abused Scouts for Justice and Court-Appointed Future Claimants' Representative

**RE:    RECOMMENDATION THAT SEXUAL ABUSE VICTIMS VOTE TO ACCEPT THE BOY SCOUTS OF AMERICA REORGANIZATION PLAN**

The **Coalition of Abused Scouts for Justice** (the "**Coalition**") and **James Patton**, **the Future Claims Representative** (the "**FCR**") appointed in the chapter 11 cases of the Boy Scouts of America (the "**BSA**"), together and jointly urge survivors to *vote to ACCEPT the reorganization Plan* (the "**Plan**") proposed and negotiated between the BSA and these survivor representatives, the Coalition and the FCR.

The Coalition is an ad hoc committee that represents survivors of sexual abuse suffered in connection with Scouting. The Coalition's members – approximately 18,000 survivors – are represented by over two dozen law firms that collectively represent over 60,000 survivors. The Coalition was formed to negotiate on behalf of its substantial survivor constituency, maximize the recovery available to all survivors, and minimize the time and expense to achieve those recoveries. The FCR was appointed by the Bankruptcy Court to be the official advocate for the interests of future claimants, including current minors and survivors suffering from repressed memories of their abuse.

The Coalition and the FCR have worked tirelessly on behalf of survivors to negotiate the terms of the Plan, which will provide *__over $1.7 billion__* (likely more) to be paid to survivors. It also provides the framework for substantial future settlements that will increase the recovery for survivors. The Plan is currently supported by representatives of approximately 70,000 survivors.

**The Plan represents the only assured path to recover and pay billions of dollars to survivors of sexual abuse in the BSA's programs. The only other path for survivors likely involves years of litigation and significant risk that survivors will receive much less than they are assured of receiving under the Plan. In our view, the settlement embodied in the Plan represents the best possible outcome for sexual abuse survivors. It will result in meaningful distributions of over a billion dollars in value (likely more) to survivors following confirmation, without lengthy, expensive and harmful litigation of individual abuse claims. A very brief description of the Plan terms, as pertaining to you and your recoveries, is contained below.**

I.    <u>What You Will Receive Under the Plan</u>

If the Plan is confirmed, a newly formed Settlement Trust will be established. Your claim against BSA, as well as any Local Council, and certain other "Protected Parties," will be transferred to and paid from the Settlement Trust. The Settlement Trust will assess your claim in accordance with its Trust Distribution Procedures (TDP) and value the claim based on the type and extent of abuse suffered and other factors. Based on these factors, most claims will be valued between $3,500 and $2,700,000. If you do not wish to undergo the full claims evaluation process, you will be able to elect to receive a one-time payment of $3,500, prior to the start of that process.


To: Holders of Direct Abuse Claims Against the Boy Scouts of America
September 30, 2021
Page 2



The Settlement Trust will collect funds from the BSA, its Local Councils, their insurers, and chartered organizations, and distribute available funds to survivors. To date, there are settlements that will provide over $1.8 billion (likely more) in initial funding to the Settlement Trust. The actual amount of your recovery, unless you select the one-time $3,500 payment, will depend on both the specifics of your claim and the amounts contributed to the Settlement Trust by, among others, insurance companies and chartered organizations in the future.

II. **What the Boy Scouts and Their Affiliates And Insurers Are Contributing to the Plan**

**To date, the Coalition and FCR have negotiated commitments of approximately $1.8 billion to the Settlement Trust. The Coalition and FCR expect that number to grow significantly in coming months given this amount only includes financial contributions from one (1) insurer settlement and one (1) Chartered Organization settlement to date, with potentially many insurer and Charter Organization financial contribution settlements to come.**

**Of the over $1.8 billion that we have negotiated to date, these contributions include:**

- **The BSA itself will contribute assets worth approximately $220 million to the Settlement Trust, along with potentially billions of dollars' worth of insurance rights.** The exact amount depends on certain timing factors and the prices of non-liquid assets which will have to be monetized. The Coalition and FCR believe this is the maximum amount that could be contributed by the BSA by law without forcing the organization into liquidation or years-long litigation, either of which would diminish assets available to abuse survivors.

- **The BSA's Local Councils will contribute assets valued at approximately $600 million to the Settlement Trust**, **along with potentially billions of dollars' worth of insurance rights.** While this may leave some Local Councils with significant assets, BSA's own insurance polices cannot be unlocked without the Local Councils' rights to those policies. Moreover, not every Local Council faces the same abuse liability, and many of the Local Councils with the most property and assets are located in jurisdictions that do not have favorable statutes of limitations for survivors. Additionally, many Local Councils take the position that most of their property is legally restricted and cannot be used to pay survivors. While the Coalition and FCR do not necessarily agree with all (or many) of the positions being taken by the Local Councils, we believe that in the absence of an agreed settlement like the one represented by the BSA Plan, many of these Local Councils may not have an incentive to contribute insurance rights. The settlement that we have negotiated with Local Councils – for $600 million in the aggregate – is very substantial. Indeed, some Local Councils under the settlement may be paying more than they would likely have to pay in the absence of a settlement. The settlement also avoids the likelihood that some or many Local Councils would be forced to liquidate, which would make it more challenging to recover assets for survivors.

- The Hartford insurance company will contribute $787 million to the Settlement Trust. You may remember that BSA announced a settlement with Hartford in April 2021 that BSA claimed was for $650 million. The Coalition and FCR opposed that settlement vigorously. We thought that it did not make Hartford pay enough to survivors and it contained a provision through which Hartford could have paid substantially less, potentially $400 million or below. Survivors face a significant risk that the Bankruptcy Court might enforce this earlier settlement agreement with these unfavorable terms that might allow Hartford to pay only a fraction of its exposure.

28647764.2


To: Holders of Direct Abuse Claims Against the Boy Scouts of America
September 30, 2021
Page 3



The Coalition and FCR led negotiations to correct these problems with the original Hartford settlement. The deal in the Plan does this. Through the work of the Coalition and the FCR, Hartford has agreed to increase its contribution to $787 million. That amount is not subject to reduction. And it is only available through the Plan. In the Coalition and FCR's view this settlement amount, the assurance that it will be received under the Plan, and the elimination of the risk that Hartford might pay substantially less make this revised settlement with Hartford fair.

- **The Church of Jesus Christ of Latter-Day Saints ("TCJC") will contribute $250 million to the Settlement Trust**, along with potentially billions of dollars' worth of insurance rights. The Coalition and FCR believe that this amount represents a substantial portion of the aggregate liability for sex abuse claims related to the TCJC (for which it is co-liable with the BSA, Local Councils, and insurers such as Hartford, who will also contribute to survivor recoveries, as noted above). The Coalition and FCR believe that this commitment is reasonable and provides an excellent recovery for survivors of abuse related to the TCJC's scouting programs.

- **The Coalition and the FCR will continue to negotiate with dozens of other insurers and sponsoring "chartered organizations" to make significant additional contributions to the Settlement Trust for the benefit of survivors.** The Plan provides a framework to allow the Coalition and the FCR to continue to negotiate additional settlements for the benefit of survivors. The substantial amounts that will be available to survivors in the Settlement Trust on Day One represent the payments of only one insurer and one chartered organization (in addition to the BSA and Local Councils). There are literally dozens of insurers and chartered organizations with whom we are continuing to negotiate. Many of the BSA's insurers have disputed that they are obligated to honor their coverage obligations. Some have gone so far as to allege widespread fraud by survivors and their representatives in the filing of claims. The Plan is designed to reduce their ability to continue to shirk their coverage obligations. We believe it will force them to honor their promises to pay, and make significant financial contributions for the benefit of survivors and the Settlement Trust. We believe that with continued negotiation (or, if necessary, litigation), insurers and chartered organizations will, over time, significantly increase the amounts they will pay to compensate survivors.

III. **The Plan Provides a Fair and Equitable Recovery for the Harm You Suffered, and Allows the Boy Scouts to Continue Their Charitable Mission**

We strongly believe that the Plan represents fair value for those who suffered abuse in connection with BSA programs. In fact, if the Bankruptcy Court does not find that the Plan will provide you a fair and reasonable recovery, the Plan cannot be confirmed. The Coalition, FCR and the BSA believe that the Plan will indeed provide a substantial recovery, and much more quickly than if the parties choose litigation.

Moreover, **the Plan will allow the BSA to continue into the future, while requiring the BSA to implement even stronger protections against sexual abuse for future participants.** The Coalition and FCR understand that abuse survivors may or may not support the continuation of the BSA's charitable mission. However, the BSA's survival is important for two reasons:

- If the BSA were to terminate its programs and liquidate its assets, it is very unlikely that abuse survivors would receive greater recoveries than under the Plan. This is because, among other things, the BSA and Local Councils would likely incur over a billion dollars in priority pension liability, and insurers would be incentivized to deny and litigate coverage obligations on an individual-by-individual basis.

28647764.2




To: Holders of Direct Abuse Claims Against the Boy Scouts of America
September 30, 2021
Page 4

- The BSA and the Local Councils have made financial commitments to make ongoing contributions to the Settlement Trust depending on its financial performance. In other words, the more youths that choose to participate in BSA programs in future, the more likely it is that the BSA will be able to honor its obligations under the Plan.

**The Coalition and FCR believe that any alternative to confirmation of the Plan will result in extensive delays, increased administrative expenses, and the termination of the valuable settlements that have been negotiated in the Plan. Each of these occurrences would, in turn, result in significantly smaller distributions to abuse survivors.**

**We believe the Plan maximizes the achievable recovery for survivors. Therefore, the Coalition and FCR strongly recommend that you timely vote to accept the Plan in accordance with the procedures that have been established by the Bankruptcy Court.**

IV.  **When, How and Why to Vote**

You have been provided with a ballot to vote to accept or reject the Plan. In order to have your vote counted, you must complete and return the ballot by **December 14, 2021 at 4:00 p.m. (Eastern Time)** as the deadline to vote to accept or reject the Plan (the "Voting Deadline").

Your timely vote is important. The Plan cannot be confirmed without the broad consent of abuse survivors.

***THE FOREGOING IS NOT INTENDED AS A SUBSTITUTE FOR THE PLAN AND DISCLOSURE STATEMENT. ALL SURVIVORS SHOULD READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY, AND SPEAK TO THEIR LAWYER OR OTHER ADVISOR TO THE EXTENT THEY WISH TO DO SO.***

If you have any questions as to this recommendation, you may contact the Coalition at BSACoalition@brownrudnick.com and the FCR at BSA-FCR@ycst.com.

Sincerely,

For the Coalition,
BROWN RUDNICK LLP

David J. Molton

For the FCR,
YOUNG CONAWAY STARGATT & TAYLOR, LLP

Robert S. Brady

64166782 v1-WorkSiteUS-036293/0001

28647764.2