# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Ref. Dkt. No. 7118 |

**JOINDER OF THE COALITION OF ABUSED SCOUTS
FOR JUSTICE TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF
AN ORDER (I) ENFORCING THE SOLICITATION PROCEDURES ORDER,
(II) ENFORCING SECTION 1103 OF THE BANKRUPTCY CODE AGAINST THE
TORT CLAIMANTS' COMMITTEE, AND (III) GRANTING RELATED RELIEF**

The Coalition of Abused Scouts for Justice (the "**Coalition**"), by and through its undersigned counsel, hereby submits this Joinder in support of the *Debtors' Emergency Motion for Entry of an Order (I) Enforcing the Solicitation Procedures Order, (II) Enforcing Section 1103 of the Bankruptcy Code Against the Tort Claimants' Committee, and (III) Granting Related Relief* [Dkt. No. 7118] (the "**Motion**").[2] In support of the Motion, the Coalition respectfully states as follows:

## JOINDER

1. In support of the Motion, the Coalition makes three points. **First**, discovery is needed here. The TCC asserts that it intended to send the Kosnoff email to Mr. Kosnoff's clients only. *See* Warner Declaration at Ex. 17. This explanation does not make sense. Mr. Kosnoff has access to his clients. He does not need the TCC to communicate with them.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

{00228222-1}

2. For example, on October 19, 2021, Mr. Kosnoff sent a letter to his clients voicing his opinions about the Plan and recommending that his clients vote to reject the Plan. *See* Warner Declaration at Ex. 2. Mr. Kosnoff sent this letter to his clients through an AIS listserve. And Mr. Kosnoff's co-counsel responded to that email through the same AIS listserve. The Coalition is not aware of any instance where Mr. Kosnoff was prevented from communicating with his clients.

3. The TCC asserts: "We offered Mr. Kosnoff the opportunity to send his email via 'BSASurvivor@pszjlaw.com' in response to Mr. Rothweiler's 'e-ballot' email. Mr. Kosnoff accepted our offer and authorized us to send the email to his clients. We instructed staff to send the email *only* to Mr. Kosnoff's clients." *See* Warner Declaration at Ex. 20 (emphasis added). But, again, Mr. Kosnoff did not need the TCC to send an email to his clients *only*. He needed the TCC to communicate with clients of other law firms.

4. Eisenberg Rothweiler is not using a Master Ballot. Each AIS client has been asked to complete an individual ballot. Eisenberg Rothweiler is using an online voting system called "e-ballot" to make it easier for clients to complete ballots prior to the voting deadline. All AIS clients are expected to complete the ballot themselves and make their own decision to vote to accept or reject the Plan. Several TCC-affiliated firms are using the Master Ballot and will be purporting to vote for their clients using powers of attorney. But Eisenberg Rothweiler, and nearly all Coalition firms, are asking survivors to complete individual ballots.

5. Upon learning that Eisenberg Rothweiler clients are completing individual ballots, the TCC apparently reached out to Mr. Kosnoff and made him an offer: use our listserv to send an email defaming Eisenberg Rothweiler. The email that the TCC sent to tens of thousands of represented survivors accuses Eisenberg Rothweiler of engaging in "improper and possibly

illegal" conduct, using "deceit to spew … patently false and misleading statements," and acting based on "greed." *See* Warner Declaration at Ex. 3. None of these assertions are true, but that is not the point the Coalition is making.

6. If Mr. Kosnoff wanted to communicate with his clients ***only***—as the TCC argued after the fact—why did he need the TCC's assistance? The answer is he did not need the TCC's assistance. He only needed the TCC's assistance to communicate with a broader audience—*i.e.*, survivors that are not his clients. The TCC sent Mr. Kosnoff's email to survivors represented by, among others, the following law firms: Andrews & Thornton, ASK LLP, Babin Law, LLC, Jason J. Joy & Associates, PLLC, Junell & Associates, Krause & Kinsman, Marc J. Bern & Partners, LLP, Napoli Shkolnik, PLLC, Reich & Binstock, LLP, and Slater Slater Schulman LLP. These emails were sent, in some instances, hours after the Coalition contacted the TCC's counsel and ask them to stop.

7. Rule 4.2 of the Model Rules of Professional Conduct provides that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." It makes sense that the TCC would claim, after the fact, that it was intending to send the Kosnoff email to Kosnoff clients only. But whether this explanation is credible is a different matter. Discovery is needed on this issue.

8. **Second**, the TCC breached its fiduciary duty. The TCC was appointed to represent the interests of all survivors. The malice endorsed by the TCC's communication to tens of thousands of survivors is unbecoming of a fiduciary relationship. Based on the email

produced to date, sending an email defaming Eisenberg Rothweiler was the TCC's idea in the first instance.

9. The TCC asserts: "We offered Mr. Kosnoff the opportunity to send his email via 'BSASurvivor@pszjlaw.com' in response to Mr. Rothweiler's 'e-ballot' email. Mr. Kosnoff accepted our offer and authorized us to send the email to his clients. We instructed staff to send the email *only* to Mr. Kosnoff's clients." *See* Warner Declaration at Ex. 20 (emphasis added).

10. A court-appointed fiduciary should not be soliciting or transmitting emails to thousands of represented survivors falsely accusing a law firm of engaging in "improper and possibly illegal" conduct, using "deceit to spew … patently false and misleading statements," and acting based on "greed." *See* Warner Declaration at Ex. 3. The TCC's email lays bare a simple truth: the TCC has not been acting in a manner consistent with its fiduciary duties. Uncovering the extent to which this is true is further grounds for discovery.

11. **Third**, this was an improper attempt to influence the vote and that attempt should not be tolerated. *See In re Gulph Woods Corp.*, 83 B.R. 339, 342-43 (Bankr. E.D. Pa. 1988) ("If an interested party dispatched what is unmistakably a solicitation to accept or reject a Plan, like here, to creditors during the voting period which contained falsehoods or mischaracterizations, then its dispatch would violate § 1125(b), because it would tend to unfairly influence votes. Similarly, any mode of communication which would tend to misrepresent or distort the voting process should not be tolerated."); *accord In re Apex Oil Co.*, 111 B.R. 245, 249 (Bankr. E.D. Mo. 1990) ("[A]ssuming that the debtor's exclusivity period has expired, soliciting parties need not obtain prior court approval of solicited materials only if: 1) the information provided is truthful and absent of any false or misleading statements or legal or factual mischaracterizations; 2) the information is presented in good faith; 3) the soliciting party does not propose or suggest

an alternative plan which has yet to gain court approval or otherwise failed to travel through the appropriate legal channels, as dictated by the Bankruptcy Code.")

12. The email the TCC sent contains falsehoods, misleading statements, and was not presented in good faith. The appropriate remedy may not be fully knowable until discovery has been taken and certain facts are known. At this time, the Coalition does not know the full damage caused by the TCC's actions. The Coalition believes that as more information becomes known through the discovery that has been requested, the Debtors and other parties may need future Court assistance to ensure the integrity of the voting process.

WHEREFORE, the Coalition respectfully requests that the Court enter an order granting the Motion and granting the Coalition such other and further relief as the Court deems just and proper.

Dated: November 10, 2021  
Wilmington, Delaware

MONZACK MERSKY AND BROWDER, P.A.

*/s/ Rachel B. Mersky*  
(DE No. 2049)  
1201 North Orange Street  
Suite 400  
Wilmington, Delaware 19801  
Telephone:   (302) 656-8162  
Facsimile:    (302) 656-2769  
E-mail:       RMersky@Monlaw.com

-and-

BROWN RUDNICK LLP  
David J. Molton, Esq. (admitted *pro hac vice*)  
Eric R. Goodman, Esq. (admitted *pro hac vice*)  
Seven Times Square  
New York, NY 10036  
Telephone: (212) 209-4800  
E-mail: DMolton@BrownRudnick.com  
E-mail:  EGoodman@BrownRudnick.com

and

Sunni P. Beville, Esq. (admitted *pro hac vice*)
Tristan G. Axelrod, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
E-mail: SBeville@BrownRudnick.com
E-mail: TAxelrod@BrownRudnick.com

*Counsel to the Coalition of Abused Scouts for Justice*