

O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036-6537

T: +1 212 326 2000
F: +1 212 326 2061
omm.com

File Number:

**Tancred Schiavoni**
D: +1 212 326 2267
tschiavoni@omm.com

November 10, 2021

Chief Judge Laurie Selber Silverstein
United States Bankruptcy Court, District of Delaware
824 North Market Street, 6th Floor
Wilmington, DE 19801

Re:   *Boy Scouts of America, 20-10343 (LSS) (D. Del.)—Motion to Compel Timothy Kosnoff*

Dear Judge Silverstein:

Century Indemnity Company ("Century") respectfully requests that this Court compel Timothy Kosnoff to appear for a deposition and produce documents prior to the hearing scheduled for Wednesday, November 17, in compliance with Century's subpoena to testify and subpoena to produce documents (the "Subpoenas") or on other grounds as justice requires. Century respectfully requests that the Court take this matter up at or before the hearing on Friday, November 12 so a deposition can take place before November 17.

## PRELIMINARY STATEMENT

Century served Mr. Kosnoff with the Subpoenas after warning about the difficulties that Mr. Kosnoff—and his fictitious entity, Abused in Scouting (AIS)—might pose to the solicitation process in these Chapter 11 Cases. While Century previously raised issues regarding AIS and the three professional corporations behind it voting via master ballots, over the weekend, Mr. Kosnoff's involvement in solicitation manifested these concerns.

Though Century initially served Mr. Kosnoff with the Subpoenas on October 4, the need for this information has been made even more pressing by Mr. Kosnoff's recent activities, which are detailed in the *Debtors' Emergency Motion for Entry of an Order (I) Enforcing the Solicitation Procedures Order, (II) Enforcing Section 1003 of the Bankruptcy Code Against the Tort Claimants' Committee, and (III) Granting Related Relief* (the "Emergency Motion") [D.I. 7118]. The material Century seeks from Mr. Kosnoff—deposition testimony and documents—is relevant to the upcoming hearing on the Debtors' Emergency Motion and plan solicitation, voting, and confirmation. It is also relevant to assessing Bankruptcy Code Section 1129(a)(3)'s good-faith requirement.

Mr. Kosnoff himself asked that he be subpoenaed and deposition be taken:

> I'm looking forward to having my deposition taken by Century Indemnity so I can tell them all about the origins of the Coalition and why I quit the

> TCC in June and misguidedly founded the Coalition and why I promptly quit it when I saw who the master puppeteers are.[1]
>
> . . . I'm waiting. . . . Call my lawyer. Send him a deposition notice for me. Better yet, let's just set a parley.[2]

Yet despite Mr. Kosnoff's near-daily public statements commenting on these Chapter 11 Cases, he responded to the Subpoenas with boilerplate invocations of the attorney-client privilege by asserting that the privilege shields him from appearing for a deposition or producing a single document. Not so. Mr. Kosnoff has not met his burden of showing that any of Century's requests are privileged. Nor do Century's requests—which seek information relating purely to AIS, communications among adversaries about the solicitation, and these Chapter 11 Cases—impose undue burden.

Mr. Kosnoff attempts to dodge testifying by invoking his lawyer status as a complete bar to seeking his testimony. But Mr. Kosnoff is not opposing trial counsel—or even opposing counsel in the bankruptcy. Nor is it the law that a witness may be excused from a deposition simply because he or she is an attorney. Accordingly, this Court should compel his attendance at a deposition and compliance with Century's document subpoenas prior to the hearing scheduled for Wednesday, November 17, on the Debtors' Emergency Motion.

## BACKGROUND

### A. The AIS entities are divided.

AIS's exemplar retention agreement presents AIS as a single entity at the top of the document, listing the names of the three entities behind AIS and the cities in which they purport to practice in much smaller type lower in the letterhead. According to the AIS retention agreement, these entities act together as co-counsel, and AIS purports to represent over 15,000 claimants in the BSA Bankruptcy. Kosnoff Law has only one lawyer, Mr. Kosnoff, as does AVA Law Group, Andrew Van Arsdale, who runs a legal advertising company.

In his Verified 2019 Statement, Mr. Kosnoff asserts that, in agreeing to associate in the BSA Bankruptcy, the professional corporations behind AIS agreed they would never accept the use of a so-called master ballot, which allows law firms to vote *en masse* on behalf of their clients via a single ballot.[3] According to Mr. Kosnoff, the two other professional corporations behind AIS have betrayed those foundational principles.

In advance of solicitation, Mr. Kosnoff publicly repudiated these two professional corporations' support of a proposed reorganization in the BSA Bankruptcy that, according to Mr. Kosnoff, runs counter to AIS's members' interests.[4] In a letter sent to clients on October 18, 2021, Mr. Kosnoff wrote:

> My advice to you is the **opposite** of the advice that the Eisenberg Rothweiler law firm has given you. **I strongly urge you to VOTE NO**. Let me explain why I

---

[1] Declaration of Lauren Casale in Support of Century's Motion to Compel Timothy Kosnoff dated November 10, 2021 ("Casale Decl."), Ex. 1, July 7, 2021 Kosnoff Tweet
[2] Casale Decl., Ex. 2, July 15, 2021 Kosnoff Tweet
[3] Kosnoff Law Verified 2019 Statement dated August 9, 2021, ¶ 9 [D.I. 5924].
[4] *Id.* ¶¶ 9-10.

> fervently disagree with my co-counsel and the group of six law firms that supports the Boy Scout's plan and calls itself the Coalition.  The reasons for my disagreement with them are numerous and are based on my analysis of the objective facts and my decades of experience in exactly this kind of case.[5]

Mr. Kosnoff's letter also stated that law firms "borrowed millions of dollars from Wall Street hedge funds to run TV ad campaigns and finance the cost of their collection of claims from survivors."[6]  He states that these firms "have treated survivors like 'inventories' for the sole purpose of collecting their contingency fee."[7]

### B. Mr. Kosnoff has gone to great lengths to dodge attempts to depose him.

Mr. Kosnoff has gone to extensive efforts to avoid discovery.  Previous attempts at seeking Mr. Kosnoff's deposition were stymied by his active efforts to dodge service.  Last year, Century sought to depose Mr. Kosnoff in connection with its motion to require Rule 2019 disclosures of Abused in Scouting.  Century engaged Mr. Kosnoff's attorney, Mr. Wilks and attempted to serve Mr. Kosnoff.  Mr. Kosnoff's Houston address turned out to be drop box, and a copy of the subpoena was left there.  The Puerto Rico address for Mr. Kosnoff turned out to be a marina, despite Mr. Kosnoff's representation on his letterhead that he practices law in San Juan.  Mr. Wilks, for his part, refused to provide an address when the parties met and conferred.  The depositions never proceeded.

### C. Century and Mr. Kosnoff's counsel have not been able to reach agreement on compliance with the Subpoenas.

On October 4, Century effectuated service of Mr. Kosnoff at a residence in Palm Springs, California with the Subpoenas that are the subject of this letter.  The Subpoenas commanded Mr. Kosnoff to produce documents on October 18 and appear for a deposition on October 21.  Mr. Kosnoff—through his attorney, Mr. Wilks—refused to comply.  On October 18, Mr. Wilks sent Century's counsel an objection to Century's subpoena for documents, asserting a variety of privileges—including the non-existent "business strategy" and "consulting expert" privileges.[8]  Despite Century's attempts to confer with Mr. Wilks, including a deficiency email from Century's counsel urging Mr. Kosnoff to cooperate,[9] Century and Mr. Kosnoff's counsel have not been able to agree on his compliance with the Subpoenas.

### D. Mr. Kosnoff's communications dated November 6 demonstrate his active attempts to manipulate solicitation.

As detailed more thoroughly in the Debtors' Emergency Motion,[10] Mr. Kosnoff issued a communication to more than 20,000 claimants, including non-AIS claimants who are represented by other counsel, via the TCC's official creditor-facing email address.[11]  In this communication, which the Debtors describe as "inflammatory, derogatory, false and

---

[5]    Casale Decl., Ex. 4, Oct. 18, 2021 Kosnoff Letter at 1 (emphasis added).
[6]    *Id.* at 2.
[7]    *Id.*
[8]    Casale Decl., Ex. 5, Timothy Kosnoff's Response to Century's Subpoena to Produce Documents dated Oct. 18, 2021.
[9]    Casale Decl., Ex. 6, Emails between T. Schiavoni and D. Wilks dated Oct. 18, 2021.
[10]   D.I. 7118.
[11]   D.I. 7118, at 12.

misleading," Mr. Kosnoff urged claimants to vote against the plan and reach out to him.[12]  This communication is only the latest—but perhaps the most egregious—attempt by Mr. Kosnoff to interject him into these Chapter 11 Cases.

### E. The evidence shows that Mr. Kosnoff was among the lawyers who signed hundreds of POCs in a single day.

Century previously proffered evidence of claimant lawyers signing hundreds of POCs in a single day, who likely did not lay eyes on the POCs before they were filed, let alone read and vet them.[13]  These attorneys mass-signed POCs despite this Court's caution that an attorney who signs a claim "might be[come] . . . a fact witness" and "may be subject to a deposition."[14]  The Court added that attorneys signing POCs is "ill-advised"[15] and explained that it would be "concern[ed]" if "a thousand claims [are] signed by a particular lawyer."[16]  Mr. Kosnoff allegedly signed some 300 claims in a single day and more than 750 in total—nearly three times the total number of claims BSA faced pre-petition.[17]

The Verified 2019 Statement that Kosnoff submitted after the July 29 hearing acknowledges that potentially fraudulent proofs of claim have been filed in this case.  Mr. Kosnoff, who purports to represent over 15,000 claimants, admits that he undertook a campaign to drive claim submissions in these Chapter 11 Cases.[18]  He further states that an unnamed law firm digitally signed his name to "proofs of claim, without [his] knowledge or permission."[19]  Kosnoff Law is the only firm to file a Rule 2019 statement (and only after fighting tooth and nail against disclosure), underscoring that Mr. Kosnoff's admission could be the tip of the iceberg.

## ARGUMENT

### I. This Court has authority to force Mr. Kosnoff, an interested party, to comply with Century's Subpoenas.

This Court has jurisdiction to force Mr. Kosnoff to appear for a deposition and produce the requested documents before next Wednesday's hearing because Mr. Kosnoff has injected himself as an active participant in these Chapter 11 Cases.  The Federal Rules of Civil Procedure governing discovery apply to these bankruptcy proceedings.  *See* Fed. R. Bankr. P. 7026, 9014.  Discovery under the Federal Rules of Civil Procedure is broad.  Rule 26(b) states that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."[20]

---

[12] D.I. 7118, at 2–3.
[13] D.I. 1975, at 10–11.
[14] Casale Decl., Ex. 3, Oct. 14, 2020 Hr'g Tr. at 183:19–22, 170:2–12.
[15] *Id.* at 190:12–17.
[16] *Id.* at 183:19–22, 170:2–12.
[17] Hinton Decl. tbl. 1 [D.I. 2174].
[18] Kosnoff Law Verified 2019 Statement dated August 9, 2021, ¶¶ 11, 24 [D.I. 5924].
[19] *Id.* ¶ 17.
[20] Where a real and practical need for discovery is demonstrated, courts grant motions to compel. *See Pacitti v. Macy's*, 193 F.3d 766, 776–77 (3rd Cir. 1999) (holding that the district court erred by "limiting discovery" because "it is well recognized that the federal rules allow broad and liberal discovery"); *In re Bell Atl. Corp. Sec. Litig.*, 1993 WL 514408, at *3 (E.D. Pa. Dec. 13, 1993) ("[D]iscovery rules are to be accorded a broad and liberal treatment") (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)); *Roesberg v. Johns Manville Corp.*, 85 F.R.D. 292, 296 (E.D. Pa. 1980) (holding that requests for discovery should be upheld where the information sought may be relevant to the subject matter of the action); 8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus,

Mr. Kosnoff has formally appeared in these Chapter 11 Cases, through his counsel Mr. Wilk's Notice of Appearance, which identifies Mr. Kosnoff and his AIS colleague Andrew Van Arsdale as "Interested Parties" in this matter.[21]  As a self-declared party to the case, Mr. Kosnoff stands to claim a substantial fee from thousands of claimants that he allegedly represents. Beyond these connections to these proceedings, Mr. Kosnoff has held himself out as a vocal representative of claimants' rights.  His public statements are full of references to other parties and lawyers in these Chapter 11 Cases, and he often tweets links to filings in these proceedings—further indicating that he actively monitors the docket.

Moreover, Mr. Kosnoff's intentional decision to inject himself into voting further supports the necessity of this Court forcing him to comply with discovery.  In *Cohen v. Doyaga*, the court found that a bankruptcy court had jurisdiction to hold a non-party in contempt for refusing to comply with a subpoena for Rule 2004 discovery because the individual "had actual notice of the proceeding, and should not be permitted to rely on her non-party status to frustrate discovery efforts by the trustee."[22]  Beyond Mr. Kosnoff's outspoken online presence commenting on these Chapter 11 Cases, it is apparent that he has actual notice of the issues at play.  Mr. Kosnoff cooperated directly with the TCC, a statutory committee that was appointed by the U.S. Trustee, to send claimants letters urging them to reject the plan.  This communication was sent to over 20,000 claimants—far beyond Mr. Kosnoff's AIS clients—demonstrating his attempt to influence the votes of claimants who have never sought his advice. Century needs more information from Mr. Kosnoff about his involvement in solicitation in order to preserve its rights and prepare its confirmation objections.

Mr. Kosnoff made a conscious choice to act as a spokesperson for claimants' rights in these Chapter 11 Cases, and he cannot now hide from this Court's jurisdiction.  His continuous monitoring of case developments and his dissemination of his opinion on the plan as an official TCC communication support the fairness of this Court ordering him to comply with Century's Subpoenas.  Not only is it proper for this Court to so order, it is necessary to ensure that Century and other similarly situated parties can obtain crucial discovery from Mr. Kosnoff regarding time-sensitive solicitation issues.

---

*Federal Practice and Procedure* § 2007 (2d ed. 1990) (Rule 26 "allow[s] broad discovery and this has been well recognized by the courts").

[21] D.I. 1271.

[22] 2001 WL 257828, at *3 (E.D.N.Y. Mar. 9, 2001); *see also In re Mirant*, 326 B.R. 354 (Bankr. N.D. Tex. 2005) (rejecting respondents' argument that a subpoena was necessary and the court lacked jurisdiction to compel them to comply because "while a true third party target of a subpoena may be entitled to require subpoenas from local courts, Respondents are parties in interest in these cases.  They are creditors who have *participated in these chapter 11 cases*. . . . It would be *anomalous to permit them to evade this court's reach and the necessity of cooperating in a time-sensitive investigation*" (emphasis added)).

## II. Century seeks relevant, factual information from Mr. Kosnoff.

Under Rule 26(b), "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."[23] The material Century seeks is relevant to a core issue in these Chapter 11 Cases: voting. Century initially served the Subpoenas to gain crucial information for its plan objections related to Mr. Kosnoff's role in fueling the claims explosion. However, the recent alarming revelations about Mr. Kosnoff and the TCC's nefarious attempts to sway voting have made Century's need to depose Mr. Kosnoff more urgent.

Evidence indicates that Mr. Kosnoff orchestrated the dramatic rise in claims that overwhelmed BSA post-petition. This raised initial questions about Mr. Kosnoff's manipulation of the voting process. Besides the dramatic rise in claims, the Court is now presented with credible evidence indicating that Mr. Kosnoff is continuing to control the votes of claimants that he does not represent, including those of claimants represented by other attorneys in these proceedings. Under Section 1129(a)(10) of the Bankruptcy Code, the Court has a "monitoring function" that requires confirming that at least one class of impaired claims accepts the plan.[24] In *Combustion Engineering*, the court was concerned that "stub" claimants—who had received a payout for a majority of the value of their claims pre-petition through a settlement, and thus were "only slightly impaired"—not only got to vote on the plan, but also represented a voting majority.[25] That is analogous to ginned up claimants voting on a plan here, who are similarly unimpaired. Such manipulation of the voting process is precisely what concerned the Third Circuit.[26]

Here, investigating unduly influenced votes and illegitimate or non-existent claims—controlled by attorneys through master ballots—is necessary to ensure the integrity of the voting process, and the plan's compliance with Section 1129(a)(10). Further, given the contradictory statements about who represents the interests of some **17,000 claimants**—Mr. Kosnoff, Eisenberg Rothweiler, the Coalition, or some combination—and the fact that they have taken opposing positions concerning the proposed plan of reorganization, this discovery is imperative. Without it, these parties will continue to claim they speak for the interests of thousands of claimants, and it will be impossible to determine if the plan vote is legitimate and if all votes should count.[27] This discovery thus squarely serves the Court's "monitoring function."[28]

## III. The attorney-client privilege does not shield Mr. Kosnoff from testifying about purely factual information.

The law is clear that underlying *facts* are not protected by the attorney-client privilege or the work-product doctrine. These protections shield only confidential *communications*, not facts.[29] As the Ninth Circuit stated in *Murdoch v. Castro*, "[b]ecause the attorney-client privilege

---

[23] The Fed. R. Civ. P. apply to these Chapter 11 Cases. Fed. R. Bankr. P. 7026, 9014.
[24] *See In re Combustion Eng'g*, 391 F.3d 190, 244–47 (3d Cir. 2004).
[25] *Id.* at 244.
[26] *Id.*
[27] *See* 11 U.S.C. § 1126(a) (holders of claims may vote to accept or reject a plan); *see also* Casale Decl. Ex. 7, *In re Imerys Talc Am., Inc.* Op. at 27 (excluding votes filed by specific firm because firm had done "zero diligence" to determine if any of the clients on whose behalf it submitted a master ballot were entitled to vote, explaining that "I cannot—and will not—ignore how the Master Ballot was generated."); D.I. 6528, ¶ 7 (exempting voting issues from discovery deadlines).
[28] *See In re Combustion Eng'g*, 391 F.3d at 244–47.
[29] *See In re Grand Jury Proc. (Twist)*, 689 F.2d 1351, 1351 (11th Cir. 1982) (holding that a government subpoena requesting an attorney to produce documents that would reflect date, place and time of meetings with client are

protects only a communication between an attorney and a client, not the facts that are communicated, a defendant would remain free to question the witness about the underlying facts."[30] And despite broad generalities to the contrary, the "Federal Rules of Civil Procedure do not themselves exempt attorneys from being a source of discoverable facts."[31]

Mr. Kosnoff's basic position appears to be that his status as an attorney renders him untouchable in a deposition. While the party seeking to dodge a subpoena on the grounds of attorney-client privilege bears the burden to oppose,[32] it is black-letter law that blanket claims of privilege are ineffective.[33] In any event, resolving privilege issues at this juncture is impossible. The issue now before this Court is whether the depositions can go forward. If Mr. Kosnoff has specific privilege objections, the proper thing for him to do is to make them at the deposition, at which time this Court can resolve them.[34] Courts disfavor preemptively shutting down depositions because of hypothetical privilege concerns and instead address privilege on a question-by-question basis.[35] In short, even if Mr. Kosnoff's privilege concerns should prove to have limited merit, that does not justify blocking the depositions in their entirety.

### FED. R. CIV. P. 37(a)(1) CERTIFICATION

Pursuant to Civil Rule 37(a)(1), the undersigned hereby certifies that Century has met and conferred with counsel to Mr. Kosnoff in good faith on these issues, including the exchange

---

not encompassed within the privilege); *Upjohn Co. v. United States*, 449 U.S. 383, 395-96, 101 S. Ct. 677, 66 L. Ed. 2d 584. (work product doctrine does not extend to the underlying facts relevant to the litigation).

[30] 609 F.3d 983, 995 (9th Cir. 2010); *see also Mitchell Eng'g v. City & Cnty San Francisco*, 2010 U.S. Dist. LEXIS 53958, at *8 (N.D. Cal. May 6, 2010) ("the facts [deponent] learned through his investigations are not protected by the work product privilege"); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 249 (D. Kan. 1995) ("When a party employs counsel to represent it in a case where an attorney has played a role in the underlying facts, both the attorney and the party have every reason to expect that the attorney's deposition may be requested.").

[31] *United Phosphorus*, 164 F.R.D. at 247; *see also Sorenson v. Riffo*, 2008 WL 2465454, at *5 (D. Utah Jun. 16, 2008) ("Attorneys are not immune from depositions when they possess discoverable information that is relevant to the case.").

[32] *In re Grand Jury Investigation*, 974 F.2d 1068, 1070-1071 (9th Cir. 1992) ("The party asserting the attorney-client privilege has the burden of proving that the privilege applies to a given set of documents or communications."); *FDIC v. Garner*, 126 F.3d 1138, 1144 (9th Cir. 1997) ("Once the [party issuing the subpoena] has established relevancy, the party opposing the subpoena bears the burden of demonstrating that the subpoena is unreasonable.")

[33] *See United States v. Ruehle*, 583 F.3d 600, 609 (9th Cir. 2009).

[34] See *Alexander v. F.B.I.*, 192 F.R.D. 12, 19 (D.D.C. 2000) (holding that plaintiffs did not meet their burden of showing that all of the information sought is protected and if the deposing party does ask questions that could elicit the mental impressions of the attorneys, then the deposed party is "entitled to claim the privilege and come back to this court to make a proper showing of why the information sought is protected").

[35] *See, e.g.*, *Nat'l Life Ins. Co. v. Hartford Acc. & Indem. Co.*, 615 F.2d 595, 598 (3d Cir. 1980) (privilege may only be asserted question-by-question, and blanket privilege may not be asserted before hearing those questions); *Robocast, Inc. v. Microsoft Corp.*, 2013 WL 1498666, at **1–2 (D. Del. 2013) (denying motion to quash deposition subpoena of prosecution counsel, rejecting the counsel's blanket assertion of privilege and instructing that privilege objections could be made on a question-by-question bases at the deposition); *In re Commonwealth Fin. Corp.*, 288 F.Supp. 786 (E.D.Pa.1968), aff'd, 408 F.2d 640 (3d Cir. 1969) (affirming district court in holding that a witness in a bankruptcy proceeding could not assert a blanket fifth amendment privilege prior to hearing the questions); *In re Grand Jury Matters*, 751 F.2d 13, 17 (1st Cir. 1984) ("It is well established that blanket assertions of privilege . . . are extremely disfavored, and that persons claiming a privilege must establish the elements of privilege as to each record sought and each question asked so that . . . the court can rule with specificity.") (internal citations and quotations omitted) (citing *In re Grand Jury Witness (Salas)*, 695 F.2d 359, 362 (9th Cir.1982), *Matter of Walsh*, 623 F.2d 489, 493 (7th Cir.), cert. denied, 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980), *Matter of Witnesses Before Special March 1980 Grand Jury*, 729 F.2d 489, 495 (7th Cir.1984)); *In re Cty. of Orange*, 208 B.R. 117, 121–22 (Bankr. S.D.N.Y. 1997).

of a deficiency email.[36]  On information and belief, Mr. Kosnoff was on the November 10, 2021, Zoom hearing and, as such, had notice of Century's request..

*     *     *

This Court should compel Mr. Kosnoff to comply with Century's Subpoenas.

Respectfully submitted,

*/s/ Tancred Schiavoni*

Tancred Schiavoni

O'MELVENY & MYERS LLP

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America*

---

[36]  Casale Decl., Ex. 6, Emails between T. Schiavoni and D. Wilks dated Oct. 18, 2021.