Three Embarcadero Center, 26th Floor, San Francisco, California  94111 ▪ p415 986-2800 ▪ f415 986-2827



Mark D Plevin
415.365.7446
202.624.2801
mplevin@crowell.com

November 14, 2021

**BY CM/ECF**

Hon. Laurie Selber Silverstein
Chief Judge, U.S. Bankruptcy Court, District of Delaware
824 North Market Street, 6th Floor
Wilmington, Delaware  19801

    Re:    *In re Boy Scouts of America*, No. 20-10343:  Certain insurers' motion to quash and/or limit Rule 30(b)(6) deposition notices to Insurers

Dear Judge Silverstein:

    The Insurers listed on Exhibit 1 hereby move, pursuant to Bankruptcy Rules 7026, 7030, and 9014, Rules 26(c) and 30(d) of the Federal Rules of Civil Procedure, and Local Rule 7030-1(c), to quash deposition notices issued to them pursuant to Rule 30(b)(6).[1]

    As a threshold matter, it must be emphasized that these depositions are being sought in an expedited plan confirmation hearing, not a multi-year insurance coverage litigation.  The Court has repeatedly noted that it will not be deciding insurance coverage issues in connection with plan confirmation.  Discovery in this fast-tracked contested matter should be directed solely to what is relevant to the confirmation requirements set forth in 11 U.S.C. § 1129(a).  With only limited exceptions, however, what is being sought in the blizzard of 30(b)(6) notices targeted to the Insurers has absolutely nothing to do with plan confirmation.

    Further, none of the testimony sought under these topics is proportional to the needs of the case, and the burden and expense of the proposed discovery plainly outweighs any scant benefit as related to confirmation of the Plan.  This threshold relevance issue pervades almost all of the topics in the 30(b)(6) notices.  *See, e.g.*, TCC Topics 22-26, seeking testimony on "interpretation" and "application" of insurance policies, "underwriting" of insurance policies, the "negotiations and drafting of" the policies, and the "drafting of the forms used in drafting the policies."  None of these topics, which are plainly designed to provide a "leg up" in future insurance coverage litigation, has any conceivable relevance to whether the Plan meets the §

---

[1]     Insurer counsel met-and-conferred with counsel for Debtors, the TCC, and the FCR on November 12, 2021.  Counsel for the Coalition was invited to the meet-and-confer, but did not attend.  Debtors offered certain accommodations that have narrowed the scope of this motion.  In particular, the Debtors said that they will withdraw their 30(b)(6) deposition notice to any insurer that both (i) will not present any evidence at the confirmation hearing and (ii) does not possess any knowledge or evidence concerning Debtors' prepetition claims adjustment practices.  Discussions among the parties are expected to continue this week, in the hope that agreements might be reached that would limit, or perhaps even eliminate, any areas of dispute.

1129(a) requirements and therefore could be confirmed, and each one would impose a substantial burden on the Insurers to address.

The Insurers request that these depositions be quashed, and/or that a protective order issue, for the following reasons.

1. *Contentions and legal conclusions*.[2] Many of the 30(b)(6) topics ask for the Insurers' contentions and/or legal conclusions as to a broad array of general topics. However, as this Court ruled in *Imerys*, 30(b)(6) depositions of insurers must be "limited to facts and not legal conclusions."[3] "[D]epositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means."[4] The bar on using Rule 30(b)(6) depositions to obtain contention testimony or legal conclusions reflects the fact that such testimony would surely invade attorney work-product and privilege. As one court ruled, Rule 30(b)(6) cannot be used "to explore opposing counsel's thought processes as to which facts support these contentions (and which do not), or what inferences can be drawn from the evidence that has been assembled so far."[5] Accordingly, courts routinely grant protective orders against Rule 30(b)(6) topics seeking contention testimony or testimony regarding legal conclusions.[6]

More specifically with respect to the insurance policies, the testimony sought by these topics is also not relevant because the policies are contracts, which must be interpreted as

---

[2] This includes the following topics: Debtors – 7-9, 11-12, 20; TCC – 1-4, 9, 22; FCR – 3; Coalition 1, 3-4. The topic numbering below is based on the notices served on the Zurich Insurers (*see* Exhibits 3-6). Exhibit 2 contains a list of the topics, numbered as in the notice to the Zurich Insurers, grouped by the categories in this motion. The topic numbering may vary from insurer to insurer, but the requests posed are generally the same, and our intent is to include, in each category, all topics included in any notice to any insurer that fits into that category. Some Insurers did not receive deposition notices from the Coalition.

[3] *See* Transcript of June 22, 2021 Telephonic Hearing, *In re Imerys Talc America, Inc.*, at 241:5-7 (Exhibit 7).

[4] *JP Morgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002).

[5] *FTC v. Cyberspy Software, LLC*, 2009 WL 2386137, at *4 (M.D. Fla. July 31, 2009).

[6] *See, e.g.*, *Kinetic Concepts, Inc. v. Convatec Inc.*, 268 F.R.D. 255 (M.D.N.C. 2010) (granting motion for protective order as to Rule 30(b)(6) deposition topic seeking contention testimony). *See also State Farm Mut. Auto. Ins. Co. v. New Horizon, Inc.*, 250 F.R.D. 203, 216 (E.D. Pa. 2008) ("a question seeking the 'reasons State Farm believes each or all bills are fraudulent' likely seeks counsel's 'legal theories,' and thus is improper"); *Captain Shontel Nicholas v. City of New York*, 2009 U.S. Dist. LEXIS 4366, at *1-2 (E.D.N.Y. Jan. 22, 2009) (eliciting support for contentions "is not the purpose of Rule 30(b)(6), which is to discover facts, not contentions or legal theories"); *King Pharmaceuticals, Inc. v. Eon Labs, Inc.*, 2008 WL 5111005, at *1 (E.D.N.Y. Dec. 4, 2008) (seeking elaboration on legal issues "is an improper use of Rule 30(b)(6) depositions, which 'are designed to discover facts, not contentions or legal theories'").

issued. The meaning of language in an insurance policy is a question of law.[7] The intent of the parties is determined from the plain meaning of the words used in the policy.[8] Thus, even if the Court, despite its many statements to the contrary, were to decide coverage issues, testimony by Insurers' 30(b)(6) witnesses about policy language interpretation is improper because it seeks evidence regarding legal determinations for which factual support is unnecessary.

In addition, deposition notices under Rule 30(b)(6) must "describe **with reasonable particularity** the matters for examination."[9] "An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task" and may "verg[e] on taking the deposition of counsel."[10] An overbroad topic, such as Debtors' Topics 8 ("The Trust Distribution Procedures") and 9 ("The Plan Settlements") is therefore improper.[11]

During the meet-and-confer, each of the Debtors, the TCC, and the FCR disavowed any intention to seek testimony regarding legal conclusions, saying they only wanted testimony regarding facts, but they did not withdraw any of the 30(b)(6) topics. However, certain topics, by their very nature, only seek testimony about legal conclusions and contentions. For example, Debtors' Topic 7 is "*Your contention* that the Plan is not insurance neutral," and Debtors' Topic 11 is "*Your contention* that the Plan was not filed in good faith. (Emphases added.) These are obviously improper. An example of a topic that seeks only legal conclusions is Debtors' Topic 8, "The Trust Distribution Procedures." None of the Insurers had any involvement in the drafting or negotiation of TDPs, and thus can offer no testimony about them other than what they learned from counsel or gleaned from reading them after they were published.[12]

---

[7] *See, e.g.*, *O'Brien v. Progressive Northern. Ins. Co.*, 785 A.2d 281, 286 (Del. 2001). The insurers do not concede that their policies should be interpreted under Delaware law, but this concept is universal in the various states.

[8] *See, e.g.*, *In re Solera Insurance Coverage Appeals*, 240 A.2d 1121, 1132 (Del. 2020). This, too, is a concept accepted universally.

[9] Fed. R. Civ. P. 30(b)(6) (emphasis added).

[10] Wright & Miller, 8A FED. PRAC. & PROC. CIV. § 2103 (3d ed.), quoting *Reed v. Bennett*, 193 F.R.D. 689 (D. Kan. 2000).

[11] *See Doe v. Yorkville Plaza Assocs.*, 1996 U.S. Dist. LEXIS 8683, at *19 (S.D.N.Y June 20, 1996) (denying an overbroad Rule 30(b)(6) request for information like "Fire Code requirements for residential buildings built in New York City from 1983 to date"); *E.E.O.C. v. Thorman & Wright Corp.*, 243 F.R.D. 421, 426 (D. Kan. 2007) ("To allow the Rule to effectively function, the requesting party must take care to designate with *painstaking specificity*, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute") (emphasis added).

[12] The Zurich Insurers' objection to Debtors' Topic 8 is explicit about this, stating: "the Zurich Insurers note that they did not draft the TDPs and were not consulted concerning the terms of the

Judge Silverstein
November 14, 2021
Page 4

       2.     <u>Reserves</u>.[13]  The Court held in *Imerys* that the insurers did not have to provide testimony concerning reserves, noting: "I don't understand how the setting of a reserve by an insurance company is an issue with respect to plan confirmation."[14]

       The Court further noted in *Imerys* that, even in coverage litigation, courts "say this [reserve information] is usually irrelevant and not discoverable."[15]  The Court's reading of case law is correct.  The Third Circuit has held that reserve information is irrelevant to claim valuation, ruling that an insurer's reserves are not "an evaluation of coverage based upon a thorough factual and legal consideration" and hence were irrelevant and not discoverable.[16]  Other courts agree.  For instance, the Delaware Superior Court held in *Hoechst Celanese* that "[r]eserves do not represent an admission or evaluation of liability and are irrelevant to the issues between insurer and insured."[17]

       The Insurers apprised the TCC of the *Imerys* Court's precisely on-point ruling, yet the TCC has persisted in demanding testimony on this topic.

       3.     <u>Reinsurance</u>.  Reinsurance information, sought by TCC Topic 8, also is not relevant.  Whether an insurer maintains reinsurance says nothing about whether Debtors can carry their burden of proving that the Plan meets the Bankruptcy Code's standards for confirmation.  Further, reinsurance information is not relevant to claim valuation.[18]

       In addition, courts have found reinsurance information is not relevant even to the determination of insurance coverage issues – issues that the Court has repeatedly stated will not be addressed as part of plan confirmation.[19]

---

TDPs, and thus any questions about interpretation of the TDPs or its provisions would improperly seek legal conclusions or answers to contention interrogatories."

[13]    This includes TCC Topic 18.  During the meet-and-confer, Debtors agreed to withdraw their Topic 6, which had requested information on reserves.

[14]    Transcript of June 22, 2021 Telephonic Hearing, *In re Imerys Talc America, Inc.*, at 238:19-21.

[15]    *Id.* at 239:1-2.

[16]    *Mirarchi v. Seneca Spec. Ins. Co.*, 564 Fed. Appx. 652, 655 (3d Cir. 2014).

[17]    *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 623 A.2d 1099, 1109-10 (Del. Super. 1991).  *See also TIG Ins. Co. v. Tyco Intern. Ltd.*, 2010 WL 4683594 (M.D. Pa., Nov. 12, 2010) (denying motion to compel production of reserve information); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stauffer Chem. Co.*, 558 A.2d 1091, 1097-98 (Del. Super. 1989) (reserves not relevant because they relate to internal conclusions and opinions of insurers which are hypothetical).

[18]    *See Mirarchi*, 564 Fed. Appx. at 655.

[19]    *See, e.g.*, *TIG Ins. Co. v. Tyco Intern. Ltd.*, 2010 WL 4683594 (M.D. Pa., Nov. 12, 2010) (denying motion to compel production of reinsurance information); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 139

Judge Silverstein
November 14, 2021
Page 5

     5.    *Topics regarding pre-petition claims-handling activities are improper and seek information that is not relevant.*[20] This Court ruled in *Imerys* that deposition discovery of insurers regarding their pre-petition claims handling is improper because information about claims payments, settlements, etc. ought to be obtained from the debtor first: "I think if the insurance company has paid claims **and the debtor doesn't have that information for some reason**, you can get that information" from the insurance company.[21] Otherwise, the Court said, "the topic of handling is a huge – is a huge topic. . . . **I'm not going to permit that**."[22]

     That point has full force here. Debtors do not contend that they lack information about which claims against them were paid, and in what amounts. That, alone, is dispositive. Yet, Debtors are inexplicably among the parties seeking deposition testimony from insurers regarding these topics.

     Moreover, from at least 1986, BSA generally handled the claims against it, under fronting policies or within large self-insured retentions, and before 1986 handled claims with only the support and involvement of primary insurers. BSA occasionally reached out to certain of its insurers who did contribute to some large settlements. However, many, if not most, of the claims against BSA were handled, and paid, solely by BSA, because the claim values did not exceed applicable deductibles and self-insured retentions, let alone reach into the excess insurers' layers, and/or would not have been covered. For this reason, Debtors and their self-funded national coordinating defense counsel have far more information about how claims were handled and paid than all of the insurers put together. Given this structure, seeking discovery piece-by-piece from the Insurers regarding their pre-petition claims handling is improper and unduly burdensome.[23]

     During the meet-and-confer, Debtors sought to justify their 30(b)(6) topics concerning pre-petition claims handling on the basis that the insurers have sought discovery from Debtors as to how BSA handled claims before filing for bankruptcy. But this is a false equivalence, because Debtors have all the information about pre-petition claims handling; no single insurer

---

F.R.D. 609, 611 (E.D. Pa. 1991) (describing reinsurance as "wholly irrelevant to the determination of . . . insurance coverage issues" under the reinsured policy).

[20]    This includes the following topics: Debtors 1-5; TCC 9, 12-17, 19-27. During the meet-and-confer, Debtors advised that they will limit their Topics 1-5 only to the Insurers' handling of BSA's and Local Councils' pre-petition claims (as opposed to more general claims handling of sexual-abuse claims). This narrowing, while welcome, does not really address the problem with these topics.

[21]    Transcript of June 22, 2021 Telephonic Hearing, *In re Imerys Talc America, Inc.*, at 237:20-22 (emphasis added).

[22]    *Id.* at 237:24-238:3 (emphasis added).

[23]    During the meet-and-confer, Debtors' counsel did not dispute that Debtors have all the information they might need about the amounts paid by BSA with respect to particular claims.

does, nor do the Insurers collectively have the information Debtors have. Further, the only reason the insurers are seeking such discovery is to be able to respond to Debtors' demand that any Plan confirmation order must include findings that the TDPs (including the claim values and the use of aggravating and mitigating factors) are "fair and equitable" – findings that are unnecessary for confirmation under § 1129(a), and that have no basis in the Bankruptcy Code. The insurers would not be seeking discovery concerning Debtors' pre-petition claims handling if the request for completely unnecessary confirmation findings were dropped and the Plan were made insurance-neutral. Indeed, it is Debtors' demand for unnecessary confirmation findings that is driving almost all of the discovery in this matter.

6.  *Insurers' communications*.  Coalition Topic 4 seeks testimony concerning communications between or among (a) Insurers and (b) any other insurer, the TCC, Chartered Organizations, Local Councils, or any counsel representing an abuse claimant, about the Plan, the amended disclosure statement, proofs of claim, or voting on the Plan. None of the Insurers had any communications, outside of the mediation, with the TCC, Chartered Organizations, Local Councils, or any counsel representing an abuse claimant, about the Plan, the amended disclosure statement, proofs of claim, or voting on the Plan, so this is a "null set" and there is no reason for any testimony on this topic. It would be unduly burdensome to require a witness to answer questions about communications that did not occur outside mediation.

Any communications between and among the insurers about these subjects is subject to both mediation privilege and common interest privilege, and testimony about these such communications is equally privileged. "The common interest privilege is an extension of the attorney-client privilege. It protects from discovery communications among clients and attorneys 'allied in a common legal cause.'"[24]

7.  *Responses to RFAs*.[25] These topics seek testimony concerning why particular RFAs were "not admitted."[26] However, the Insurers mostly responded to the referenced RFAs by (i) objecting that they sought admission of legal conclusions and (ii) stating that the responding Insurers "presently lack sufficient knowledge or information, based on a reasonable inquiry, to admit or deny this Request for Admission." Thus, the predicate for a witness having to testify on these topics has not been met. Further, no witness should be required to sit for these topics to explain why the Insurer was unable to admit or deny the RFA, since that would require the witness to sort through objections, marshal facts, and apply the law, on the spot, in order to

---

[24]   *10x Genomics, Inc. v. Celsee, Inc.*, 505 F. Supp.3d 334, 337 (D. Del. 2020), quoting *In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1389 (Fed. Cir. 1996).

[25]   This includes the following topics: FCR 3-6 (for some insurers, the correct range of FCR topics is 3-14); Coalition 3, 5-16.

[26]   Coalition Topic 3 is phrased differently; it asks for testimony generally regarding each Insurer's response to the Coalition's RFAs.

explain the insurer's contention.[27] Such would be improper.

Thus, these topics are objectionable because they are veiled demands for contentions and legal conclusions. "Whereas the facts of a relevant incident or incidents are proper for 30(b)(6) inquiry, the contentions, i.e., theories and legal positions, of an organizational party may be more suitably explored by way of interrogatories and the Court may properly order . . . that contentions only be inquired into in this fashion."[28]

9.  *Lack of information*.[29] Certain topics ask the Insurers to provide testimony on matters that Debtors, the TCC, the FCR, and the Coalition know the Insurers were not involved in, such as negotiating the terms of the Plan, TDPs, or Settlement Trust, or preparing Debtors' Liquidation Analysis. No purpose would be served by forcing the Insurers to present 30(b)(6) witnesses on such topics, which would require the Insurers' counsel to prepare a fact witness to testify regarding information counsel has learned solely as a result of very limited discovery received to date on these topics. Accordingly, such topics seek information that is not relevant, lack proportionality, and would impose undue burden on the insurers.

Indeed, the insurers' objections specifically note that the insurers lack information about such topics at present, and are pursuing discovery in order to determine the relevant facts. For example, the Zurich Insurers' objection to Debtors' Topic 17 states, "The Zurich Insurers represent that they did not exchange any Documents or Communications with the TCC, any Local Council of the BSA, any Charter Organization of the BSA, and/or any attorney representing one or more holders of an Abuse Claim relating to the liquidation value of the Debtors or any Local Council," while their response to Debtors' Topic 18 states, "The Zurich Insurers represent that they did not exchange any Documents or Communications with any

---

[27] *See Gossar v. Soo Line Railroad Co.*, 2009 WL 3570335, at *2 (S.D. Ind. Oct. 27, 2009) (a party "may not serve a Rule 30(b)(6) notice for the purpose of requiring [the opposing party] to marshal all of its factual proof and prepare a witness to be able to testify on a particular defense") (internal quotation marks and citation omitted); *Cappalli v. BJ's Wholesale Club, Inc.*, 904 F. Supp.2d 184, 197 (D.R.I. 2012) (finding that questions asking a Rule 30(b)(6) witness about the factual basis for its litigation contentions was improper; "BJ's could have obtained the information it sought by posing purely factual questions. Instead, it asked questions that required Atkinson to relate the underlying facts to BJ's legal theories"). In addition, "until a party has first shown that the interrogatory process cannot be used, it may not seek to use depositions for contention discovery." *BB&T Corp. v. United States*, 233 F.R.D. 447, 450 (M.D.N.C. 2006). No disputes have been raised concerning the Insurers' interrogatory responses.

[28] *Wilson v. Lakner*, 228 F.R.D. 524, 529 n.8 (D. Md. 2005). *See also Cappalli v. BJ's Wholesale Club, Inc.*, 904 F. Supp.2d 184, 197 (D.R.I. 2012) (finding that questions asking a Rule 30(b)(6) witness about the factual basis for its litigation contentions was improper; "BJ's could have obtained the information it sought by posing purely factual questions. Instead, it asked questions that required Atkinson to relate the underlying facts to BJ's legal theories").

[29] This includes the following topics: Debtors 17-18, 21-24; TCC 1-6, 9-23, 27; Coalition 4.

other insurer of the BSA relating to the liquidation value of the Debtors or any Local Council." No purpose would be served by requiring a witness to reiterate these representations.

10. *Work-product*. TCC Topic 29, which asks the Insurers to provide testimony concerning "Your determination Concerning who would testify on Your behalf in response to this Deposition Notice" seeks protected attorney work-product, pure and simple. The Insurers should not be required to post a witness on this topic.

\* \* \*

For these reasons, the Insurers believe that these depositions are unwarranted and improper, and ask the Court to (i) quash the deposition notices in their entirety, or to rule that the Insurers need not present witnesses on certain topics, and/or (ii) enter a protective order barring such depositions or protecting the Insurers from having to provide testimony on certain topics.[30]

Sincerely yours,

/s/ *Mark D. Plevin*

Mark D. Plevin
CROWELL & MORING LLP

/s/ *Robert D. Cecil, Jr.*
Robert D. Cecil, Jr. (No. 5317)
TYBOUT, REDFEARN & PELL
501 Carr Road, Suite 300
Wilmington, Delaware 19809
Phone: (302) 658-6901
E-mail: rcecil@trplaw.com

906356522

---

[30] The Insurers seek leave to file this 7½-page letter motion, even though it slightly exceeds the 5-page limit in the confirmation procedures order (Dkt. No. 6528, ¶ 12), because (i) the letter addresses a very large number of 30(b)(6) topics in ten categories and (ii) 22 different insurer groups joined in a single motion for the convenience of the Court and all parties.

### Local Rule 7026-1 (d) Certification

I hereby certify that a reasonable effort was made to reach agreement with the opposing parties on the matters set forth in the motion.

/s/ Robert D. Cecil, Jr.
Robert D. Cecil, Jr. (No. 5317)
TYBOUT, REDFEARN & PELL

Exhibit 1 – List of Joining Insurers

1. AIG Insurers
2. Allianz
3. Arch
4. Argonaut
5. Arrowood
6. Aspen
7. Century
8. Chubb
9. Clarendon
10. Gemini
11. General Star
12. Great American
13. Indian Harbor
14. Interstate
15. Liberty Mutual
16. Maryland Casualty
17. Munich Re
18. National Surety
19. Old Republic
20. Sompo
21. Travelers
22. Zurich Insurers

Judge Silverstein
November 14, 2021
Page 10

Exhibit 2 – Topics at Issue

*Contentions and legal conclusions*

Debtors Topic 7:  "Your contention that the Plan is not insurance neutral."

Debtors Topic 8:  "The Trust Distribution Procedures."

Debtors Topic 9:  "The Plan Settlements, including the JPM/Creditors' Committee Settlement, TCJC Settlement and the Hartford Insurance Settlement."

Debtors Topic 11:  "Your contention that the Plan was not filed in good faith."

Debtors Topic 12:  "Your contention that the Trust Distribution Procedures were not filed in good faith."

Debtors Topic 20:  "Your contention that the Plan may not be feasible."

TCC Topic 1:  "The Plan, including, but not limited to, the effect of the Plan on Your rights or obligations (including without limitation inter-insurer contribution claims)."

TCC Topic 4:  "The BSA Plan Settlements, including the TCJC Settlement and the Hartford Insurance Settlement."

TCC Topic 9:  "Your Liabilities Concerning each Insurance Policy that the Debtors are proposing or may propose to contribute to the Settlement Trust under the Plan."

TCC Topic 10:  "Your financial ability to satisfy Your obligations under the Applicable Insurance Policies."

TCC Topic 22:  "Your interpretation of the Insurance Policies You sold to the Debtors and application thereof to claims for coverage for Abuse Claims."

Coalition Topic 1:  "The Zurich Insurers' response to *Coalition of Abused Scouts for Justice's First Set of Interrogatories to the Zurich Insurers.*"

Coalition Topic 3:  "The Zurich Insurers' response to *Coalition of Abused Scouts for Justice's First Set of Requests for Admission to the Zurich Insurers* (the 'RFAs' and each therein a 'RFA')."

Coalition Topic 4:  "Communications between or among the Zurich Insurers and any other insurer, the Official Committee of Tort Claimants to Boy Scouts of America and Delaware BSA, LLC (including its counsel, representatives, and members), Chartered Organizations (as defined

in the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6443] (the "Plan")), Local Councils (as defined in the Plan), and/or any counsel representing a person who has submitted an Abuse Claim (as defined in the Plan) concerning the Plan, the *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6445], proofs of claim submitted in the above-captioned chapter 11 cases, and/or voting on the Plan."

FCR Topic 3: "Zurich's response to *The Future Claimants' Representative's First Set of Requests for Admission to Zurich* (the 'RFAs' and each therein a 'RFA')."

### Reserves

TCC Topic 18: "Any reserves that You contemplated, established, set, maintained, and/or changed Concerning Abuse Claims."

### Reinsurance

TCC Topic 8: "Reinsurance for the Applicable Insurance Policies."

### Pre-petition claims handling

Debtors' Topic 1: "The handling, investigation, evaluation, processing, adjusting, review, or determination of the Abuse Claims."

Debtors' Topic 2: "The handling, investigation, evaluation, processing, adjusting, review, or determination of the BSA's historical sexual abuse claims."

Debtors' Topic 3: "Procedures, practices and policies for valuing and/or evaluating sexual abuse claims generally."

Debtors' Topic 4: "Any database, computer systems or other systems used to value or evaluate sexual abuse claims."

Debtors' Topic 5: "Procedures and practices for evaluating and valuing sexual abuse claims that are filed outside the statute of limitation, including any sexual abuse claims that were outside the statute of limitations that have settled."

TCC Topic 9: "Your Liabilities Concerning each Insurance Policy that the Debtors are proposing or may propose to contribute to the Settlement Trust under the Plan."

TCC Topic 12: "Payments (or lack thereof) for defense costs and/or indemnity that You made Concerning any Abuse Claims."

Judge Silverstein
November 14, 2021
Page 12

TCC Topic 13:  "Your denial or reservation of rights under any Applicable Insurance Policies Concerning any Abuse Claims, including, but not limited to, (a) reasons and bases for Your decision to deny coverage or reserve rights for the Abuse Claims and (b) facts upon which You based Your decision to deny coverage or reserve rights for the Abuse Claims."

TCC Topic 14:  "Settlements of Abuse Claims."

TCC Topic 15:  "Verdicts in favor of Abuse Claimants"

TCC Topic 16:  "Verdicts in favor of the Defense Concerning Abuse Claims."

TCC Topic 17:  "The IV Files."

TCC Topic 19:  "Your handling, processing, adjusting, review, investigation, evaluation, acceptance, denial, reservation of rights, or other response to sexual abuse claims, including the Abuse Claims, under any Insurance Policy."

TCC Topic 20:  "Your policies, practices, and procedures Concerning valuing or evaluating sexual abuse claims, including Abuse Claims, that were filed after the expiration of any applicable statute of limitations or were filed in jurisdictions where the statute of limitations with respect to sexual abuse claims may change."

TCC Topic 21:  "All discussions of the Debtors, the Insurance Policies sold by You to the Debtors, Abuse Claims, or the Debtors' claims for insurance coverage under Insurance Policies (whether or not regarding the Abuse Claims) of Your board of directors or managers, any committee or subcommittee thereof, any task force or working group thereof, or any of Your other executive task forces or working groups"

TCC Topic 22:  "Your interpretation of the Insurance Policies You sold to the Debtors and application thereof to claims for coverage for Abuse Claims."

TCC Topic 23:  "Your investigation, supervision, adjustment, and handling of Abuse Claims, including the existence or scope of insurance coverage for the Abuse Claims."

TCC Topic 24:  "The underwriting of the Insurance Policies You sold to the Debtors."

TCC Topic 25:  "The negotiations and drafting of (a) the Insurance Policies You sold to the Debtors and (b) any predecessor Insurance Policies issued by any of Your affiliates."

TCC Topic 26:  "The drafting of the forms used in drafting the Insurance Policies You sold to the Debtors or any predecessor Insurance Policies issued by any of Your affiliates."

Judge Silverstein
November 14, 2021
Page 13

TCC Topic 27: "Your interpretation of any terms or conditions of the Insurance Policies You sold to the Debtors."

*RFAs*

Coalition Topic 3: "The Zurich Insurers' response to *Coalition of Abused Scouts for Justice's First Set of Requests for Admission to the Zurich Insurers* (the 'RFAs' and each therein a 'RFA')."

Coalition Topic 5: "If RFA No. 1 is not admitted, the factual basis for your assertion that the Plan was not proposed in good faith."

Coalition Topic 6: "If RFA No. 2 is not admitted, the factual basis for your assertion that the Trust Distribution Procedures (as defined in the Plan) were not proposed in good faith."

Coalition Topic 7: "If RFA No. 3 is not admitted, the factual basis for your assertion that the procedures included in the Trust Distribution Procedures pertaining to the allowance of Abuse Claims (as defined in the Plan) are not fair and reasonable."

Coalition Topic 8: "If RFA No. 4 is not admitted, the factual basis for your assertion that the criteria included in the Trust Distribution Procedures pertaining to the calculation of Abuse Claim Amounts (as described in the Trust Distribution Procedures [Docket No. 5466-2] incorporated into the Plan) are not fair and reasonable."

Coalition Topic 9: "If RFA No. 5 is not admitted, the factual basis for your assertion that the Trust Distribution Procedures' Claims Matrix (as defined in the Trust Distribution Procedures) values are not fair and reasonable."

Coalition Topic 10: "If RFA No. 6 is not admitted, the factual basis for your assertion that the Trust Distribution Procedures' Base Matrix Values (as defined in the Trust Distribution Procedures) are not fair and reasonable."

Coalition Topic 11: "If RFA No. 7 is not admitted, the factual basis for your assertion that the Trust Distribution Procedures' Scaling Factors (as defined in the Trust Distribution Procedures) are not fair and reasonable."

Coalition Topic 12: "If RFA No. 8 is not admitted, the factual basis for your assertion that the procedures included in the Trust Distribution Procedures pertaining to the allowance of Abuse Claims are not consistent with the BSA's historical settlement practices."

Judge Silverstein
November 14, 2021
Page 14

Coalition Topic 13  "If RFA No. 9 is not admitted, the factual basis for your assertion that the criteria included in the Trust Distribution Procedures pertaining to the calculation of Abuse Claim Amounts are not consistent with the BSA's historical settlement practices."

Coalition Topic 14: "If RFA No. 10 is not admitted, the factual basis for your assertion that the Trust Distribution Procedures' Claim Matrix values are not consistent with the BSA's historical settlement practices."

Coalition Topic 15: "If RFA No. 11 is not admitted, the factual basis for your assertion that the Trust Distribution Procedures' Base Matrix Values are not consistent with the BSA's historical settlement practices."

Coalition Topic 16: "If RFA No. 12 is not admitted, the factual basis for your assertion that the Trust Distribution Procedures' Scaling Factors are not consistent with the BSA's historical settlement practices."

FCR Topic 4:   "If RFA No. 1 is not admitted, the factual basis for your assertion that the range of values set forth in the Claims Matrix are not reasonable and consistent with historical values of Abuse Claims in the tort system."

FCR Topic 5:  "If RFA No. 2 is not admitted, the factual basis for your assertion that you have evidence that proof(s) of claim filed in the Chapter 11 Cases were fraudulently filed."

FCR Topic 6:  "If RFA No. 3 is not admitted, the factual basis for your assertion that the right to payment that the holder of an Abuse Claim has against the Debtors or another Protected Party or a Limited Protected Party is not the allowed value of such Abuse Claim as liquidated in accordance with the Trust Distribution Procedures, and/or is (i) the initial or supplemental payment percentages established under the Trust Distribution Procedures to make distributions to holders of allowed Abuse Claims or (ii) the contributions made by the Debtors or any Protected Party to the Settlement Trust."

### *Lack of information*

Debtors Topic 17:  "The Liquidation Analysis, including any Documents or Communications exchanged between You, the TCC, any Local Council of the BSA, any Charter Organization of the BSA, and/or any attorney representing one or more holders of an Abuse Claim relating to the liquidation value of the Debtors or any Local Council."

Debtors Topic 18:  "The Liquidation Analysis, including any Documents or Communications exchanged between You and any other insurer of the BSA relating to the liquidation value of the Debtors or any Local Council."

Judge Silverstein
November 14, 2021
Page 15

Debtors Topic 21:  "Any Document or Communications exchanged between You and any Chartered Organization of the BSA concerning the feasibility of the Plan."

Debtors Topic 22:  "Any Document or Communications exchanged between You and any Local Council of the BSA concerning the feasibility of the Plan."

Debtors Topic 23:  "Any Documents or Communications exchanged between You and any insurer of the BSA concerning the feasibility of the Plan."

Debtors Topic 24:  "Any Document or Communications exchanged between You and any attorney representing one or more holders of Abuse Claims of the BSA concerning the feasibility of the Plan."

TCC Topic 1:  "The Plan, including, but not limited to, the effect of the Plan on Your rights or obligations (including without limitation inter-insurer contribution claims)."

TCC Topic 2:  "The Settlement Trust, including, but not limited to, the effect of the Settlement Trust on Your rights or obligations (including without limitation inter-insurer contribution claims)."

TCC Topic 3:  "The Trust Distribution Procedures."

TCC Topic 4:  "The BSA Plan Settlements, including the TCJC Settlement and the Hartford Insurance Settlement."

TCC Topic 5:  "The Abuse Claims, including, but not limited to, (a) all Analyses of Abuse Claims; (b) the value of Abuse Claims; (c) all estimates of the numbers of Survivors and/or Perpetrators; and (d) insurance coverage for Abuse Claims."

TCC Topic 6:  "Any Indirect Abuse Claim You assert or may assert against the Debtors, including, but not limited to, the value or amount of such Indirect Abuse Claim."

TCC Topic 11:  "Any actual or proposed settlements of Your coverage obligations under the Applicable Insurance Policies."

Coalition Topic 4:  "Communications between or among the Zurich Insurers and any other insurer, the Official Committee of Tort Claimants to Boy Scouts of America and Delaware BSA, LLC (including its counsel, representatives, and members), Chartered Organizations (as defined in the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6443] (the 'Plan')), Local Councils (as defined in the Plan), and/or any counsel representing a person who has submitted an Abuse Claim (as defined in the Plan) concerning the Plan, the *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan*

Judge Silverstein
November 14, 2021
Page 16

*of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6445], proofs of claim submitted in the above-captioned chapter 11 cases, and/or voting on the Plan."