# Exhibit  6

# KTBS Engagement Letter



| | 1801 Century Park East | voice: 310-407-4000 |
| --- | --- | --- |
| | Twenty-Sixth Floor | fax: 310-407-9090 |
| | Los Angeles, California 90067 | www.ktbslaw.com |

tpatterson@ktbslaw.com
Direct Dial: 310-407-4035

August 2, 2021

**VIA ELECTRONIC MAIL**

The Zalkin Law Firm P.C.
Attention: Irwin Zalkin, Esq. (irwin@zalkin.com)
10590 W. Ocean Air Drive Ste. 125
San Diego, CA 92130

Pfau Cochran Vertetis Amala PLLC
Attention: Michael T. Pfau, Esq. (michael@pcvalaw.com)
403 Columbia Street Ste. 500
Seattle, WA 98104

   Re:  Retention Agreement Between The Zalkin Law Firm P.C., Pfau Cochran Vertetis
       Amala PLLC, and KTBS Law LLP

Dear Irwin and Michael:

   This letter agreement (the "Agreement") sets out the terms and conditions on which
KTBS Law LLP ("KTBS") will serve as legal counsel to The Zalkin Law Firm P.C. and Pfau
Cochran Vertetis Amala PLLC ("Clients") in connection with the jointly administered chapter 11
bankruptcy cases styled *In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-
10343 (LSS) (Bankr. D. Del.) (the "Bankruptcy Case").

***Scope of Representation***

   KTBS specializes in reorganization, bankruptcy, and insolvency-related commercial
litigation and corporate matters.  We limit our practice (and hence our services) to those areas.

   Clients collectively represent hundreds of individuals with tort claims (the "Claimants")
who have filed or may file proofs of claim in the Bankruptcy Case.

   KTBS will act as Clients' counsel to render such ordinary and necessary legal services as
may be appropriate in connection with protecting the rights of and maximizing a recovery for the
Claimants, including (by way of example and without limitation) filing appropriate motions,
briefing, and other papers in the Bankruptcy Case; participating in hearings, conferences, and
other proceedings in the Bankruptcy Case; and negotiating with the debtors, other creditors, any
official and unofficial committees, any trustees, and other parties in interest in the Bankruptcy

The Zalkin Law Firm P.C.
Pfau Cochran Vertetis Amala PLLC
August 2, 2021
Page 2

Case with respect to plans of reorganization, settlements, and other matters in connection with the Bankruptcy Case (collectively, the "Engagement").

For the avoidance of doubt, none of the Claimants are parties to this Agreement and there is no attorney-client relationship between KTBS and any of the Claimants.

KTBS's employment as Clients' legal counsel does not include the provision of advice or services outside the areas to which KTBS limits its practice or beyond the scope of this Engagement. It is a condition to KTBS's engagement hereunder that Clients make available competent outside counsel to provide advice regarding any such matters. In that regard, KTBS understands that Clients have retained Bielli & Klauder, LLC as local counsel in Delaware and Law Offices of Michel Y. Horton as insurance law counsel.

KTBS will consult only as to those aspects of the Engagement that are within the scope of its representation to which you request that KTBS devote attention. A separate engagement letter will be required should Clients and KTBS agree, in their respective sole discretion, to expand the scope of KTBS's employment.

***Financial Arrangements***

KTBS ordinarily and customarily offers its services on an hourly-rate basis and requires payment each month of professional fees at KTBS's hourly rates then in effect, as well as reimbursement each month of out-of-pocket expenses. The current hourly rates for attorney and paralegal services range from $███ to $███. My current hourly rate is $███. The hourly rates for the other attorneys likely to be working on this matter – Daniel Bussel, Robert Pfister, and Sasha Gurvitz – are $███, $███, and $███, respectively. KTBS's hourly rates are adjusted periodically, typically on January 1 of each year, to reflect the advancing experience, capabilities, and seniority of KTBS's professionals, as well as general economic factors.

Clients agree to pay KTBS professional fees on account of the services provided to Clients at KTBS's hourly rates in effect at the time of such services, and to reimburse KTBS for costs and expenses incurred by KTBS in connection with this Engagement. KTBS will bill Clients monthly and Clients hereby agree to remit payment within 30 days following transmission of an invoice to Clients. Clients shall advise KTBS of any difference Clients may have with any invoice promptly and in no event later than 10 calendar days following the date of transmission of an invoice. KTBS will attempt in good faith to resolve promptly any dispute regarding an invoice.

The types of costs and expenses that must be reimbursed hereunder include charges for messenger services, air couriers, photocopying, court fees, travel expenses, postage, computerized legal research, investigative searches, transcripts, filing or recording fees, and other actual charges customarily invoiced by law firms in addition to fees for legal services. KTBS does not bill for secretarial overtime or word processing.

The Zalkin Law Firm P.C.
Pfau Cochran Vertetis Amala PLLC
August 2, 2021
Page 3

To the extent Clients request an estimate of potential fees or expenses, any such estimates we may provide are subject to change and are not binding unless otherwise expressly and unequivocally stated in writing.

### Disclosures and Waivers

KTBS is a specialty law firm with few continuing institutional clients.  Because of the specialized nature of its practice, from time to time KTBS may concurrently represent one client in a particular case and the debtor, creditor, competitor, or adversary of that client (or a professional employed to represent that opposing party) in an unrelated matter.  Thus, by way of illustration only, while representing Clients, KTBS may represent a creditor of one of the Clients as a debtor in a bankruptcy case or in connection with out-of-court negotiations with such entity's creditors concerning that entity's ability to pay its debts generally.

Each Client agrees that it does not consider the concurrent representation by KTBS, in unrelated matters, of any adversary to Client, to be inappropriate or otherwise objectionable and, therefore, waives any and all objections to (and/or other rights to oppose or otherwise contest) any such concurrent representations (present and/or future) by KTBS now or any time in the future—including, without limitation, the representation by KTBS of clients adverse to Client on or in connection with any matters and/or issues other than the Engagement hereunder.  Each Client understands that KTBS is relying on this waiver and would not undertake this representation but for this waiver.  Please be assured, however, that KTBS strictly preserves all client confidences and zealously pursues the interests of each of its clients, including in those circumstances in which KTBS represents the adversary of an existing client in an unrelated matter.

Clients' consent to KTBS's representation of parties directly adverse to Clients in unrelated matters would not ordinarily require screening procedures unless a risk existed that relevant confidential information of any Client might be disclosed to those working on behalf of such Client's adversary or otherwise used against such Client.  If that risk exists, however, KTBS will employ its customary screening procedures to protect each Client's confidential information.  Those procedures prohibit lawyers with access to relevant confidential information of Clients from participating in the representation of Clients' adversary in the unrelated matter, and preclude KTBS professionals representing Clients' adversary in the unrelated matter from communicating with those lawyers regarding either matter or accessing documents, in our office or on our computer system, that are related to our representation of Clients.  Each Client acknowledges and agrees that KTBS will not be required to implement screening procedures unless the risk described above exists, and that if such risk does exist, the screening procedures described above are sufficient and appropriate.

We call your attention to the fact that over the years, KTBS has served and currently serves as co-counsel with Pachulski Stang Ziehl & Jones LLP (counsel to the Official Committee of Tort Claimants) in unrelated matters.

The Zalkin Law Firm P.C.
Pfau Cochran Vertetis Amala PLLC
August 2, 2021
Page 4

Some attorneys at KTBS have relatives or significant others who are attorneys at other law firms.  Please advise in writing if you wish to review a list of such firms.  KTBS has strict policies against disclosing confidential information to anyone outside of the Firm, including spouses, parents, children, siblings, and significant others.  Clients acknowledge and agree that KTBS's representation in this matter is not inappropriate in light of any such relationships.

KTBS attorneys often communicate with their clients and their clients' professionals and agents by mobile telephone and electronic mail, which communications may be at risk of being intercepted by others.  Clients must inform KTBS if they wish to limit the mediums through which communications are made.

In connection with future materials that, for marketing purposes, describe facets of KTBS's law practice and recite examples of matters KTBS handles on behalf of clients, Clients agree that, if those materials avoid disclosing Clients' confidences and secrets as defined by applicable ethical rules, KTBS may identify Clients as being among KTBS's clients, may provide factual synopses of Clients' matters, and may indicate generally the results achieved.

KTBS maintains errors and omissions insurance coverage applicable to the services to be rendered hereunder in compliance with California Corporations Code section 16956(a)(2).

Clients are encouraged to obtain such outside legal advice as Clients believe appropriate concerning the foregoing disclosures and waivers, as well as any other provisions of this Agreement.  Clients acknowledge the foregoing disclosures and waivers, do not believe that KTBS's representation of Clients is inappropriate or otherwise objectionable in light of the relationships, policies, and procedures described above, and consent to KTBS's representation of Clients under these circumstances.

### *Joint Representation*

In this Engagement, KTBS will focus on maximizing the funds available to satisfy the claims held by Claimants and otherwise advancing Clients' interests in the Bankruptcy Case.  In the Bankruptcy Case, as in other bankruptcy or insolvency-related proceedings or negotiations, it is possible that the debtor or its insurer(s) or any parties alleged to be liable along with the debtor (such as subsidiaries, parent entities, employees, or agents) will assert or demonstrate that there are only limited funds available, such that any increase in one Claimant's recovery will necessarily result in a decrease in another Claimant's recovery.  KTBS has carefully considered these issues and potential eventualities and has nonetheless concluded that it may appropriately represent multiple Clients in connection with the Engagement.  This conclusion is based on, among other things: (i) each Client's informed consent and advance express agreement that KTBS will seek to maximize the recovery of each Claimant; and (ii) the economy of scale that will allow KTBS to offer its services to Clients in connection with this Engagement.

To the extent there are disagreements between Clients as to questions of strategy (including, without limitation, whether to support or oppose a particular plan of reorganization or

The Zalkin Law Firm P.C.
Pfau Cochran Vertetis Amala PLLC
August 2, 2021
Page 5

liquidation or whether to file an objection), KTBS will act only as directed by both Clients. Clients agree not to seek KTBS's disqualification on account of such differences in strategy, or to require the other Client to obtain separate counsel as a result of such differences in strategy.

Beyond the "limited fund" circumstances and disagreements over strategy described in the preceding paragraphs, it is possible that during the representation of Clients, facts could come to light that would create a conflict of interest such that continued joint representation would be inadvisable. (KTBS will promptly inform Clients if it becomes aware of such unanticipated circumstances, and will rely on each Client to promptly notify KTBS if a Client becomes aware of such unanticipated circumstances.) Thus, it is possible that Clients could find themselves in a legal position different from each other, and conceivably it could be advantageous for one Client to take positions separately or adverse to the other. In that event, KTBS will abstain from its joint representation of Clients with respect to the particular issue in conflict, and each Client will be required to retain separate counsel with respect to that particular issue. KTBS will continue to jointly represent the interests of Clients with respect to all other matters that are the subject of this Agreement. If such measures prove inconsistent with ethical or practical considerations, then KTBS may have to withdraw completely from its representation of one or both Clients to maintain its ability to exercise its independent professional judgment. If conflicts were to develop and KTBS withdraws from the representation of one Client, then KTBS wishes to be able to continue to represent the other, consistent with ethical and practical considerations.

California Evidence Code section 962 provides that "[w]here two or more clients have retained or consulted a lawyer upon a matter of common interest, none of them, nor the successor in interest of any of them, may claim a privilege … as to a communication made in the course of that relationship when such communication is offered in a civil proceeding between one of such clients (or his successor in interest) and another of such clients (or his successor in interest)." Accordingly, Clients understand that there may be no right to assert the attorney-client privilege as to communications KTBS receives from one Client to prevent KTBS from disclosing such communications to the other Client. Clients confirm and agree that they are aware of this provision of the California Evidence Code, and that other or similar rules or principles may apply under non-California law.

Clients are encouraged to obtain such outside legal advice as Clients believe appropriate concerning the foregoing "Joint Representation" portion of this Agreement (as well as any other provision of this Agreement), including a further analysis of the advantages and disadvantages thereof. Rule 1.7 of the California Rules of Professional Conduct bears upon the matters set out in this Agreement and requires KTBS to so inform Clients and to obtain Clients' written consent before KTBS can concurrently represent multiple clients.

Clients (i) acknowledge and understand all of the foregoing disclosures and waivers, (ii) confirm that they do not believe that KTBS's representation of Clients is inappropriate or otherwise objectionable in light of the joint representation described above, and (iii) expressly consent to KTBS's representation of Clients under these circumstances.

The Zalkin Law Firm P.C.
Pfau Cochran Vertetis Amala PLLC
August 2, 2021
Page 6

### *No Guarantee of a Particular Result*

It is not possible to provide any promise or guarantee about the outcome of a legal dispute.  Nothing in this Agreement, or any statements that may be made by our attorneys or staff, constitutes a promise or guarantee.  Any comments or predictions about how a matter may develop or whether a particular strategy is appropriate are an expression of judgment and not a promise or guarantee of a particular result.

### *Opinion Letters and Tax Matters*

KTBS generally does not provide opinion letters to its clients or to others who might wish to rely on such letters.  To the extent KTBS is requested to provide an opinion letter, it does so only as approved by a special committee of the firm, based upon the facts and circumstances presented.  KTBS may determine, in its sole discretion, whether to provide any opinion letter requested by Clients. If KTBS agrees to provide an opinion letter, KTBS may require an additional fee for the drafting and issuance of such a letter.  Nothing herein is intended, nor should it be construed, as an obligation by KTBS to issue any opinion letter.

KTBS does not give tax advice.  If, notwithstanding the preceding, any advice KTBS furnishes to Clients is deemed to constitute tax advice within the meaning of U.S. Treasury Regulations, then, as required by U.S. Treasury Regulations governing tax practice, Clients are hereby advised that any tax advice will not be written or intended to be used (and cannot be used) by any taxpayer for the purpose of (i) avoiding any penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction(s) or tax-related matter(s).

### *No Non-Client Representation*

KTBS is being engaged by Clients only, and not on a representative or other aggregate-litigation-type basis.  Further, KTBS's engagement by Clients does not include the representation of any officer, director, member, employee, agent, family member, or representative of any Client, or any partner or shareholder of or in any Client.  KTBS encourages each to consult independent counsel to the extent appropriate.  Clients are solely responsible for notifying any applicable officers, directors, members, partners, employees, agents, and representatives that KTBS represents only Clients in this Engagement.

### *Discharge and Withdrawal*

Any Client may discharge KTBS at any time.  Subject to any legally applicable requirements, KTBS may withdraw from the representation of any Client at any time with such Client's consent or for good cause without such Client's consent.  Good cause includes a breach of this Agreement, failure to have available competent outside counsel to provide advice in all matters outside the scope of the Engagement, refusal or failure to cooperate with KTBS, or any fact or circumstance that would render KTBS's continuing representation unlawful or unethical.

The Zalkin Law Firm P.C.
Pfau Cochran Vertetis Amala PLLC
August 2, 2021
Page 7

If this Agreement or KTBS's services are terminated for any reason by any Client, such termination will be effective only to terminate KTBS's services prospectively for such Client and will not terminate KTBS's representation of the other Client under this Agreement.  All other terms of this Agreement will survive any such termination.

Upon cessation of KTBS's active involvement in this particular Engagement (even if KTBS continues active involvement on any Client's behalf with respect to matters other than this Engagement), KTBS will have no further duty or any obligations to: (i) inform Clients of future developments or changes in the law that may be relevant to this Engagement; or (ii) monitor renewal or notice dates or deadlines that may arise from this Engagement.

### Client Files

After the conclusion of the Engagement, KTBS will retain Clients' hard-copy and electronic files in KTBS's possession for a period of three years following such termination.  If Clients do not request in writing delivery of these files before the end of that three-year period, then KTBS will have no further obligation to retain such files upon the expiration of such period, and may, in KTBS's sole discretion, destroy them without further notice or obligation to Clients.

### Other Provisions

This Agreement constitutes the entire understanding between Clients and KTBS regarding the Engagement.  By executing this Agreement, each Client acknowledges that it has read this Agreement carefully and understands all of its terms.  This Agreement cannot be modified except by a further written agreement signed by all parties.  KTBS and Clients agree that executed signature pages to this Agreement may be exchanged via fax or by way of e-mailed .pdf documents.  Each person whose signature is affixed to this Agreement represents that he or she has full authority to execute this Agreement so that it is binding.  If any provision of this Agreement or the application thereof is held invalid or unenforceable, then such invalidity or unenforceability shall not affect other provisions or applications of this Agreement which can be given effect without such invalid or unenforceable provisions or application, and, to this end, the provisions of this Agreement are declared to be severable.  Every agreement, consent, and waiver contained herein by each Client extends to any assignee of or successor in interest to such Client.

### Conclusion

If you have any questions about the foregoing, please call me.  Moreover, as noted above, please feel free to obtain independent legal advice regarding this Agreement.  If Clients are in agreement with the foregoing, and it accurately represents Clients' agreement with KTBS, then please execute and return a signed copy of this Agreement.  If Clients are not in agreement with the foregoing, kindly contact me immediately.

The Zalkin Law Firm P.C.
Pfau Cochran Vertetis Amala PLLC
August 2, 2021
Page 8

      Please understand that KTBS cannot and will not assume responsibility of any kind, including filing any documents with any court or contacting any third parties, until a signed copy of this Agreement has been returned by each Client.

      We look forward to working with you on this matter.

Very truly yours,

Thomas E. Patterson

THE FOREGOING IS UNDERSTOOD, APPROVED, AND AGREED TO:

**THE ZALKIN LAW FIRM, P.C.**

By:   Irwin Zalkin
Title:  President
Date: 8/2/2021

**PFAU COCHRAN VERTETIS AMALA PLLC**

By: Jason Amala
Title: Partner
Date: August 3, 2021



1801 Century Park East
Twenty-Sixth Floor
Los Angeles, California 90067

voice: 310-407-4000
fax: 310-407-9090
www.ktbslaw.com

tpatterson@ktbslaw.com
Direct Dial: 310-407-4035

October 14, 2021

**SENT VIA ELECTRONIC MAIL**

Irwin Zalkin
The Zalkin Law Firm, P.C.
10590 W. Ocean Air Drive #125
San Diego, CA  92130

Michael Pfau
Pfau Cochran Vertetis Amala PLLC
403 Columbia St, Suite 500
Seattle, WA 98104

Re:    <u>**Retention Agreement with KTBS Law LLP**</u>

Dear Messrs. Zalkin and Pfau:

This letter agreement (the "Agreement") sets out the terms and conditions on which KTBS Law LLP (the "Firm" or "KTBS") will represent the law firms The Zalkin Law Firm, P.C. and Pfau Cochran Vertetis Amala PLLC (together, "Original Clients"), as well as certain other or further clients as described below ("Additional Clients," and with Original Clients, "Clients"), in connection with the bankruptcy case styled *In re Boy Scouts of America and Delaware BSA, LLC*, (together, the "Debtors"), Case No. 20-10343 (LSS) (Bankr. D. Del.) (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  Clients represent a number of individual survivors of sexual abuse who have asserted claims against the Debtors, among other defendants, and have filed proofs of claim in the Bankruptcy Case (the "Claimants").  For the avoidance of doubt, none of the Claimants are parties to this Agreement, and there is no attorney-client relationship between the Firm and the Claimants.

*Scope of Representation*

KTBS specializes in the areas of reorganization, bankruptcy, and insolvency-related commercial litigation and corporate matters.  We limit our practice (and hence our services) to those areas.

KTBS will act as Clients' general bankruptcy counsel to render such ordinary and necessary legal services as may be required in connection with the Bankruptcy Case, including (by way of example and without limitation) participating in hearings, conferences, and other proceedings before the Bankruptcy Court; negotiating with the Debtors, other creditors, any official and unofficial committees, any trustee(s), and other parties in interest in the Bankruptcy Case with respect to any plans of reorganization, settlements, or other matters in connection with the Bankruptcy Case; prosecuting or defending any adversary proceedings or appeals in

Messrs. Irwin Zalkin and Michael Pfau
October 14, 2021
Page 2

connection with any of the foregoing; and generally protecting Clients' rights and attempting to maximize recoveries on account of Claimants' claims in connection with the Bankruptcy Case (collectively, the "Engagement").

KTBS's engagement as Clients' legal counsel does not include the provision of advice or services outside the areas to which KTBS limits its practice or beyond the scope of this Engagement. In particular, the scope of the Engagement does not include representation of Clients' own individual clients, or giving attention to, forming professional opinions as to, or advising or acting on behalf of Clients with respect to matters of substantive tort law, tax law, employment law, eleemosynary law, or other non-bankruptcy law. It is a condition to KTBS's representation hereunder that Clients make available competent outside counsel to provide advice regarding any such matters.

Primary communication with Clients will be with and through the Original Clients and the Firm will be entitled to rely on instruction given by the Original Clients.

This Agreement supersedes the engagement letter signed August 2, 2021 with regard to the scope of representation and financial matters and services after August 20, 2021 and governs KTBS's representation of Clients after August 20, 2021; provided, however, that KTBS's representation of Clients after August 20, 2021 pursuant to this Agreement is conditioned upon Clients making all the payments set forth in the invoice dated September 1, 2021 as specified therein with regard to services provided prior to August 21, 2021 (the "Prior Payments"). Failure to timely pay the Prior Payments shall be grounds for the Firm terminating this Agreement. The Prior Payments shall not be credited against any fees due to KTBS pursuant to this Agreement, including the contingent fees and the Minimum Fee described below.

### *Financial Arrangements*

KTBS ordinarily and customarily offers its services on an hourly-rate basis and requires payment each month of professional fees at KTBS's hourly rates then in effect as well as reimbursement each month of out-of-pocket expenses. The current hourly rates for KTBS's attorney and paralegal services range from $▮▮▮▮ to $▮▮▮▮. My and Dan Bussel's current hourly rate is $▮▮▮▮; Sasha Gurvitz's is $▮▮▮▮. KTBS's hourly rates are adjusted periodically, typically on January 1 of each year, to reflect the advancing experience, capabilities, and seniority of KTBS's professionals, as well as general economic factors.

For this Engagement, however, KTBS has agreed to offer its services on a contingency-fee basis, excluding the advancement of out-of-pocket costs (discussed further below). That means that if there is no recovery, Clients will pay nothing on account of professional fees other than advanced out-of-pocket costs.

The contingency fee to which KTBS is entitled is as follows: subject to the numbered paragraphs 1-3 below, the initial fee (the "Initial Fee") shall be ▮▮▮▮ percent of the amount received by the Claimants on account of any claim submitted by Clients (on behalf of their individual clients) in the Bankruptcy Case, whether such claim is ultimately liquidated by the

Messrs. Irwin Zalkin and Michael Pfau
October 14, 2021
Page 3

Bankruptcy Court or any other court, to be paid by Clients out of the fees they receive. An initial list of the Claimants (identified by claim number) is attached hereto as Exhibit "A."[1] Accordingly, for example, if a Client's contingency fee agreement with a Claimant is ███% of the amount received by Claimant, the Initial Fee to KTBS on account of such claim is ██% of the amount received by the Claimants, and the Client retains a fee of ██% of the amount received by the Claimant.[2] For the avoidance of doubt, amounts received on account of the claims includes, as sources, (i) all amounts derived from or in connection with the Bankruptcy Case and any other cases in any other court asserting causes of action related to the Claimants' claims in the Bankruptcy Case, including, without limitation, (x) any funds made available to Clients or Claimants either from the Debtors, their bankruptcy estates, their insurers, or any trusts established in connection with the Bankruptcy Case, or (y) funds made available from third parties for the purpose of paying creditors of the Debtors with claims similar to those of Clients' individual clients' claims and being released from liability therefor, whether pursuant to a settlement with the Debtors, their bankruptcy estates, their insurers, or any trustee of a trust established in connection with the Bankruptcy Case, a channeling order, a plan of reorganization or liquidation for the Debtors, or other process approved by the Bankruptcy Court, and (ii) all amounts derived from or in connection with recoveries from Local Councils and/or Chartered Organizations (including from the proceeds of any insurance that covers them), whether derived from or in connection with the Bankruptcy Case, or pursued separately through litigation outside of bankruptcy. The Initial Fee in respect of any particular Claimant's claim shall be paid to the Firm by the Client representing such Claimant within 3 business days of the Client's collection of its own contingent fees from any Claimant it represents.

Given the nature of the Engagement, it is possible that a Claimant will have the opportunity to opt out of any recovery that would otherwise be available from or in connection with the Bankruptcy Case – such as (by way of example and without limitation) by electing not to release certain non-debtor entities, or by insisting on the right to a jury trial rather than compensation through the bankruptcy process or any trust distribution procedures. In the event a Claimant opts out of a recovery from or in connection with the Bankruptcy Case, then KTBS will be entitled to its contingent fee calculated on the amount Claimant ultimately receives in respect of any causes of action outside of the Bankruptcy Case that are related to the Claims asserted in the Bankruptcy Case.

The Initial Fee shall be subject to the following adjustments and qualifications:

---

[1] Clients represent that they represent certain Claimants as co-counsel with other lawyers who have not agreed to the arrangement contemplated by this Agreement. Those claims (the "Excluded Claims") are identified by Claim number on Exhibit "2."

[2] By illustration, if a Claimant receives a $█████ recovery on a claim, and a Client's contingency arrangement with such Claimant is for ██% of the recovery, KTBS shall be entitled to a fee of $█████ (██% of the Claimant's recovery) which shall be paid by that Client out of the $█████ (██% of $█████) received by Client on such claim, resulting in Client retaining $█████ from the recovery.

Messrs. Irwin Zalkin and Michael Pfau
October 14, 2021
Page 4

     1.    <u>Appellate Adjustment.</u>  In the event the Firm is asked to pursue or defend appellate remedies from a decision of the Bankruptcy Court, the Initial Fee shall be increased by ▮ percentage point for each level of appeal (e.g., from ▮% to ▮% in the event of an appeal to the District Court, and from ▮% to ▮% in the event of an appeal to the Third Circuit Court of Appeals) (the "Appellate Adjustment").

     2.    Notwithstanding the amount of the Initial Fee or the Appellate Adjustment, the Firm will limit its fee to the lesser of (a) ▮▮▮ times its standard charges billed at its applicable hourly rates or (b) ▮▮▮▮▮ times its standard charges billed at its applicable hourly rates in the event that, prior to December 31, 2022, both (i) the representation evidenced by this Agreement is concluded and (ii) the Firm has received payment of an amount equal to ▮▮▮ ▮▮▮ times its standard charges billed at its applicable hourly rates (the "Maximum Fee").

     3.    Notwithstanding the amount of the Initial Fee, the minimum fee earned and payable hereunder shall be $▮▮▮▮ for time incurred after August 20, 2021 (the "Minimum Fee")  The Minimum Fee shall be payable at the conclusion of the representation or, if prior to that time circumstances make it unavoidable that the Minimum Fee shall become payable, when such circumstances arise.  Payments to the Firm in respect of the contingent fees incurred under this Agreement shall be credited against the Minimum Fee and any remaining shortfall at the time the Minimum Fee becomes due shall be paid in proportion to the number of Claimants represented by Clients on Exhibit A.

     The types of costs and expenses that must be reimbursed hereunder include charges for messenger services, air couriers, photocopying, court fees, travel expenses, airfare at the rate charged for fully-refundable coach travel, conference calling charges, computerized legal research, investigative searches, transcripts, filing or recording fees, and other actual charges customarily invoiced by law firms in addition to fees for legal services.  KTBS does not bill for secretarial overtime or word processing.  Original Clients agree to reimburse KTBS for costs and expenses incurred by KTBS in connection with this Engagement.  KTBS will bill Original Clients monthly for such expenses and Original Clients agree to remit payment within 30 days following transmission of an invoice to Original Clients in in proportion to the number of Claimants represented by Clients on Exhibit A.

     Clients agree that KTBS shall have a valid and enforceable attorneys' charging lien on all amounts received or collected by Clients on account of Claimants' claims from any source with respect to which the Initial Fee is applicable until such time as KTBS has received in full all fees due under this Agreement.  This lien survives KTBS's discharge or withdrawal from the representation, and constitutes a security interest knowingly and voluntarily granted by Clients to secure payment for KTBS's services and disbursements as Clients' counsel.  The attorneys' charging lien granted in respect of the services provided to Clients shall be governed by California law, including without limitation the principles set forth in *Fletcher v. Davis,* 90 P.3d 1216 (Cal. 2004); *Isrin v. Superior Court,* 403 P.2d 728 (Cal. 1965); and *In re Pacific Far East Line, Inc.,* 654 F.2d 664 (9th Cir. 1981).

Clients agree to make payment to KTBS in respect of its contingent fees promptly upon receipt of their own contingent fees and to provide regular accountings to KTBS with regard to payments they have received or collections made on account of the underlying claims, including quarterly reports to the Firm and other reports upon KTBS's reasonable request; such reports to commence at a point in time that payments have begun to be made to the Clients or the Claimants on account of the claims covered hereunder.

Pursuant to section 6147(a)(4) of the California Business and Professions Code, Clients are advised that the compensation arrangements set forth herein, including the contingency fee, are not set by law, and instead are negotiable between Clients and KTBS.

Clients acknowledge and agree that: (i) they have been advised in writing that they may seek the advice of an independent lawyer of their choice; (ii) they have had a reasonable opportunity to seek such advice prior to counter-signing and returning this; and (iii) by counter-signing and returning this Agreement, they have consented in writing to the terms of this Engagement, including the attorneys' charging lien described herein.

### *Disclosures and Waivers*

KTBS is a specialty law firm with few continuing institutional clients.  Because of the specialized nature of its practice, from time to time KTBS may concurrently represent one client in a particular case and the debtor, creditor, competitor, or adversary of that client (or a professional employed to represent that opposing party) in an unrelated matter.  Thus, by way of illustration only, while representing Clients, KTBS may represent a creditor of Clients as a debtor in a bankruptcy case or in connection with out-of-court negotiations with such entity's creditors concerning that entity's ability to pay its debts generally.

Clients agree that they do not consider the concurrent representation by KTBS, in unrelated matters, of any adversary to Clients to be inappropriate or otherwise objectionable and, therefore, waive any and all objections (or other rights to oppose or otherwise contest) any such concurrent representations (present or future) by KTBS now or any time in the future including, without limitation, the representation by KTBS of persons or entities adverse to Clients on or in connection with any matters or issues other than the Engagement hereunder.  Clients understand that KTBS is relying on this waiver and would not undertake this representation but for this waiver.  Please be assured, however, that KTBS strictly preserves all client confidences and zealously pursues the interests of each of its clients, including in those circumstances in which KTBS represents the adversary of an existing client in an unrelated matter.

Clients' consent to KTBS's representation of persons or entities directly adverse to Clients in unrelated matters would not ordinarily require screening procedures unless a risk existed that relevant confidential information of Clients might be disclosed to those working on behalf of Clients' adversary or otherwise used against Clients.  If that risk exists, however, KTBS will employ its customary screening procedures to protect Clients' confidential information.  Those procedures prohibit lawyers with access to relevant confidential information of Clients from participating in the representation of Clients' adversary in the unrelated matter,

and preclude those KTBS professionals representing Clients' adversary in the unrelated matter from communicating with those lawyers regarding either matter or accessing documents, in our office or on our computer systems, that are related to our representation of Clients. Clients acknowledge and agree that KTBS will not be required to implement screening procedures unless the risk described above exists, and that if such risk does exist, the screening procedures described above are sufficient and appropriate.

Some attorneys at KTBS have relatives or significant others who are attorneys at other law firms. Please advise in writing if you wish to review a list of such firms. KTBS has strict policies against disclosing confidential information to anyone outside of the firm, including spouses, parents, children, siblings, and significant others. Clients acknowledge and agree that KTBS's representation in this matter is not inappropriate in light of any such relationships.

KTBS attorneys often communicate with their clients and their clients' professionals and agents by mobile telephone and electronic mail, which communications may be at risk of being intercepted by others. Clients must inform KTBS if they wish to limit the mediums through which such communications are made.

KTBS maintains errors and omissions insurance coverage applicable to the services to be rendered hereunder in compliance with California Corporations Code section 16956(a)(2).

Clients are encouraged to obtain such outside legal advice as Clients believe appropriate concerning the foregoing "Disclosures and Waivers" portion of this Agreement (as well as any other provision of this Agreement), including a further analysis of the advantages and disadvantages thereof, and acknowledge that they have had the opportunity to confer with counsel regarding the foregoing.

Clients (i) acknowledge and understand all of the foregoing disclosures and waivers, (ii) confirm that they do not believe that KTBS's representation of Clients is inappropriate or otherwise objectionable in light of any of the relationships and other matters described above, and (iii) expressly consent to KTBS's representation of Clients under these circumstances.

### *Joint Representation and Additional Clients*

Original Clients have requested that KTBS agree to jointly represent them, and have asked KTBS to consider the addition of Additional Clients to this Engagement. After carefully evaluating the issue of joint representation, KTBS believes that it may properly concurrently represent all Original Clients and such Additional Clients as may be added in the future to this Engagement, subject to KTBS's evaluation of any such Additional Clients on a Client-by-Client basis. Any such Additional Clients must execute a joinder to this Agreement and agree to all its terms and conditions.

In this Engagement, KTBS will focus on maximizing the funds available to satisfy claims asserted by Clients on behalf of the Claimants, including (without limitation), when so asked by Clients, to seek to limit the scope or application of any non-consensual third-party releases and related injunctions sought to be approved or issued by the Bankruptcy Court.

Messrs. Irwin Zalkin and Michael Pfau
October 14, 2021
Page 7

In the Bankruptcy Case, as in other bankruptcy or insolvency-related proceedings or negotiations, it is possible that the debtor or its insurer(s) or any parties alleged to be liable along with the debtor (such as subsidiaries, parent entities, employees, or agents) will assert or demonstrate that there are only limited funds available, such that any increase in one Claimant's recovery will necessarily result in a decrease in another Claimant's recovery. KTBS has carefully considered these issues and potential eventualities and has nonetheless concluded that it may appropriately represent multiple Clients in connection with the Bankruptcy Case. This conclusion is based on, among other things: (i) each Client's informed consent and advance express agreement that KTBS will seek to maximize the pool of funds available to pay the Claims asserted by the Clients on behalf of the Claimants; and (ii) the economy of scale that will allow KTBS to offer its services in connection with this Engagement on a contingency-fee basis (as described herein) rather than requiring payment of professional fees at KTBS's hourly rates in effect at the time of such services.

To the extent there are disagreements between or among Clients as to questions of strategy (including, without limitation, whether to support or oppose a particular plan of reorganization or liquidation), KTBS will act as directed by the Original Clients or, if they disagree, by the Client representing a majority in number of claims(not the face amount of the claims). Clients agree not to seek KTBS's disqualification on account of such differences in strategy, or to require other Clients to obtain separate counsel as a result of such differences in strategy. However, notwithstanding the foregoing or anything else in this Agreement, the decision of whether to accept a particular settlement proposal or how to vote on a particular proposed plan of reorganization or liquidation will always be a matter between each Client and the Claimants that Client represents.

Beyond the "limited fund" circumstances and disagreements over strategy described in the preceding paragraphs, it is possible that during the representation of Clients, facts could come to light that would create a conflict of interest such that continued joint representation would be inadvisable. (KTBS will promptly inform Clients if it becomes aware of such unanticipated circumstances, and will rely on each Client to promptly notify KTBS if Client becomes aware of such unanticipated circumstances.) Thus, it is possible that Clients could find themselves in a legal position different from each other, and conceivably it could be advantageous for one Client to take positions separately or adverse to the others. In that event, KTBS will abstain from its joint representation of such Clients with respect to the particular issue in conflict, and each Client will be required to retain separate counsel with respect to that particular issue. KTBS will continue to jointly represent the interests of Clients with respect to all other matters that are the subject of this Agreement. If such measures prove inconsistent with ethical or practical considerations, then KTBS may have to withdraw completely from its representation of one or more Clients to maintain its ability to exercise its independent professional judgment. If conflicts were to develop and KTBS withdraws from the representation of any Client or Clients, then KTBS wishes to be able to continue to represent the other or others, consistent with ethical and practical considerations.

California Evidence Code section 962 provides that "[w]here two or more clients have retained or consulted a lawyer upon a matter of common interest, none of them, nor the successor

Messrs. Irwin Zalkin and Michael Pfau
October 14, 2021
Page 8

in interest of any of them, may claim a privilege … as to a communication made in the course of that relationship when such communication is offered in a civil proceeding between one of such clients (or his successor in interest) and another of such clients (or his successor in interest)." Accordingly, Clients understand that there may be no right to assert the attorney-client privilege as to communications KTBS receives from one Client to prevent KTBS from disclosing such communications to another Client or Clients. Clients confirm and agree that they are aware of this provision of the California Evidence Code, and that other or similar rules or principles may apply under non-California law.

Clients are encouraged to obtain such outside legal advice as Clients believe appropriate concerning the foregoing "Joint Representation and Additional Clients" portion of this Agreement (as well as any other provision of this Agreement), including a further analysis of the advantages and disadvantages thereof, and acknowledge that they have had the opportunity to confer with counsel regarding the foregoing. Rule 1.7 of the California Rules of Professional Conduct bears upon the matters set out in this Agreement and requires KTBS to so inform Clients and to obtain Clients' written consent before KTBS can concurrently represent multiple individuals.

Clients (i) acknowledge and understand all of the foregoing disclosures and waivers, (ii) confirm that they do not believe that KTBS's representation of Clients is inappropriate or otherwise objectionable in light of the joint representation described above, and (iii) expressly consent to KTBS's representation of Clients under these circumstances.

### *No Guarantee of a Particular Result*

It is not possible to provide any promise or guarantee about the outcome of a legal dispute. Nothing in this Agreement, or any statements that may be made by our attorneys or staff, constitutes a promise or guarantee. Any comments or predictions about how a matter may develop or whether a particular strategy is appropriate are an expression of judgment and not a promise or guarantee of a particular result.

### *Opinion Letters and Tax Matters*

KTBS generally does not provide opinion letters to its clients or to others who might wish to rely on such letters. To the extent KTBS is requested to provide an opinion letter, it does so only as approved by a special committee of the firm, based upon the facts and circumstances presented. KTBS may determine, in its sole discretion, whether to provide any opinion letter requested by Clients. If KTBS agrees to provide an opinion letter, then KTBS may require an additional fee for the drafting and issuance of such a letter. Nothing herein is intended, nor should it be construed, as an obligation by KTBS to issue any opinion letter.

KTBS does not give tax advice. If, notwithstanding the forgoing, any advice we furnish to Clients is deemed to constitute tax advice within the meaning of U.S. Treasury Regulations, then Clients are hereby advised that any tax advice will not be written or intended to be used (and cannot be used) by any taxpayer for the purpose of (i) avoiding any penalties under the

Messrs. Irwin Zalkin and Michael Pfau
October 14, 2021
Page 9

Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transactions or tax-related matters.

### No Non-Client Representation

KTBS is being engaged by Clients only. KTBS's engagement by Clients does not include the representation of any agent, representative, family member, or other person or entity connected with Clients,(including without limitation individual abuse survivors represented by Clients). Clients represent and warrant that they have obtained the informed written consent of Claimants whom they represent to the contingent fee arrangement set forth herein, to the extent required by applicable rules of professional responsibility.

### Discharge and Withdrawal

Any Client may discharge KTBS at any time. Subject to any applicable court requirements, KTBS may withdraw at any time with such Client's consent or for good cause without consent. Good cause includes a breach of this Agreement, failure to have available competent outside counsel to provide advice in all matters outside the scope of the Engagement, refusal or failure to cooperate with KTBS, or any fact or circumstance that would render KTBS's continuing representation unlawful or unethical.

If this Agreement or KTBS's services are terminated for any reason, such termination will be effective only to terminate KTBS's services prospectively and all other terms of this Agreement (including KTBS's right to collect its contingent fee hereunder to the extent permitted by applicable law) will survive any such termination.

Upon cessation of KTBS's active involvement in a particular matter (even if KTBS continues active involvement on other Clients' behalf), KTBS will have no further duty or any obligations to (i) inform any former Client of future developments or changes in the law that may be relevant to such matter or (ii) monitor renewal or notice dates or deadlines that may arise from such matter.

### Consent to Use of Certain Information

In connection with future materials that describe facets of the KTBS's practice and include examples of matters KTBS handles on behalf of clients, Clients agree that, if those materials avoid disclosing Clients' confidences, and secrets as defined by applicable ethical rules, KTBS may provide factual synopses of the Engagement and may indicate generally the results achieved.

### Client Files

After the conclusion of the Engagement, KTBS will retain Clients' hard-copy and electronic files in KTBS's possession for a period of three years following such termination. If Clients do not request in writing delivery of these files before the end of that three-year period,

then KTBS will have no further obligation to retain such files upon the expiration of such period, and may, in KTBS's sole discretion, destroy them without further notice or obligation to Clients.

**Other Provisions**

This Agreement constitutes the entire understanding between Clients and KTBS regarding the Engagement. By executing this Agreement, Clients acknowledge that they have read carefully and understand all of its terms. This Agreement cannot be modified except by a further written agreement signed by all parties. KTBS and Clients agree that executed signature pages to this Agreement may be exchanged via fax or by way of e-mailed .pdf documents. Each person whose signature is affixed to this Agreement represents that he or she has full authority to execute this Agreement so that it is binding. If any provision of this Agreement or the application thereof is held invalid or unenforceable, then such invalidity or unenforceability shall not affect other provisions or applications of this Agreement which can be given effect without such invalid or unenforceable provisions or application, and to this end the provisions of this Agreement are declared to be severable. Every agreement, consent, and waiver contained herein by Clients extends to any assignee or successor in interest to Clients.

**Conclusion**

If you have any questions about the foregoing, please call me. Moreover, as noted above, please feel free to obtain independent legal advice regarding this Agreement. If Clients are in agreement with the foregoing, and it accurately represents Clients' agreement with KTBS, then please execute and return a signed copy of this Agreement. If Clients are not in agreement with the foregoing, kindly contact me immediately.

Please understand that KTBS can and will assume no responsibility of any kind, including filing any documents with any court or contacting any third parties, until a signed copy of this Agreement has been returned by Clients.

We look forward to working with you on this important matter.

Very truly yours,

KTBS Law LLP

By: Thomas E. Patterson

Messrs. Irwin Zalkin and Michael Pfau
October 14, 2021
Page 11

THE FOREGOING IS UNDERSTOOD, APPROVED, AND AGREED TO:


*JZalkin*
_____
The Zalkin Law Firm, P.C.
By:


_____
Pfau Cochran Vertetis Amala PLLC
By:


_____

THE ZALKIN LAW FIRM BSA CLIENTS

| | | |
|---|---|---|
| ███ | ███ | 77397 |
| ███ | █ | 97419 |
| ███ | ███ | 93523 |
| ████ | ████ | 105075 |
| ████ | █████ | 97421 |
| ████ | ██████ | 58743 |
| ██ | ████ | 84562 |
| ███ | ████ | 97424 |
| ███ | ████ | 78482 |
| █ | ████ | 90739 |
| ███ | ███ | 77849 |
| ████ | ███ | 77922 |
| ███ | ████ | 97430 |
| ██ | ██ | 63208 |
| ███ | ████ | 104530 |
| ██ | ████ | 77364 |
| ██ | ████ | 77789 |
| ██ | ██ | 77319 |
| ████ | ████ | 77911 |
| █████ | ███ | 90399 |
| ████ | ████ | 78329 |
| ███ | ████ | 77585 |
| ██ | ███ | 105822 |
| ██ | ████ | 105807 |
| ████ | ██ | 90468 |
| ███ | ████ | 63163 |
| ████ | ██ | 67614 |
| ████ | ██ | 105875 |
| ██ | ██ | 67637 |
| ████ | ████ | 58626 |
| ██ | ███ | 58700 |
| ███ | ██ | 77749 |
| ████ | ██ | 77572 |
| █████ | █████ | 44968 |
| ██ | ████ | 110657 |
| ███ | ████ | 106168 |
| ██ | ████ | 105886 |
| ███ | ████ | 105891 |
| ███ | ████ | 77927 |
| █████ | ███ | 78390 |
| ████ | ███ | 97423 |
| ██ | ████ | 105896 |

THE ZALKIN LAW FIRM BSA CLIENTS

| | | |
|---|---|---|
| ■ | ■ | 77676 |
| ■ | ■ | 105919 |
| ■ | ■ | 107390 |
| ■ | ■ | 84496 |
| ■ | ■ | 84481 |
| ■ | ■ | 78190 |
| ■ | ■ | 107363 |
| ■ | ■ | 78384 |
| ■ | ■ | 105928 |
| ■ | ■ | 107419 |
| ■ | ■ | 88613 |
| ■ | ■ | 81313 |
| ■ | ■ | 78074 |
| ■ | ■ | 78424 |
| ■ | ■ | 63201 |
| ■ | ■ | 97429 |
| ■ | ■ | 43527 |
| ■ | ■ | 54807 |
| ■ | ■ | 54721 |
| ■ | ■ | 67605 |
| ■ | ■ | 107401 |
| ■ | ■ | 46090 |
| ■ | ■ | 107399 |
| ■ | ■ | 58646 |
| ■ | ■ | 63220 |
| ■ | ■ | 77322 |
| ■ | ■ | 37970 |
| ■ | ■ | 91547 |
| ■ | ■ | 107394 |
| ■ | ■ | 63165 |
| ■ | ■ | 46081 |
| ■ | ■ | 67612 |
| ■ | ■ | 58680 |
| ■ | ■ | 107393 |
| ■ | ■ | 97426 |
| ■ | ■ | 89201 |
| ■ | ■ | 67633 |
| ■ | ■ | 67660 |
| ■ | ■ | 58674 |
| ■ | ■ | 78618 |
| ■ | ■ | 104562 |
| ■ | ■ | 84965 |

THE ZALKIN LAW FIRM BSA CLIENTS

| | | |
|---|---|---|
| ███████ | █████ | 107360 |
| ████ | █████ | 107392 |
| ███ | ██████ | 77282 |
| ██████ | ████ | 44970 |
| ███████ | █████ | 47689 |
| ██████ | ████████ | 63188 |
| ████ | █████ | 107396 |
| █████ | █████ | 77783 |
| ████ | █████ | 78117 |
| █████ | █████ | 78622 |
| ██████ | ████ | 63175 |
| ██████ | █████ | 78250 |
| ██████ | █████ | 89203 |
| ███████ | █████ | 67687 |
| ████ | ██████ | 106521 |
| █████ | ████ | 63190 |
| ████████ | ████████ | 77619 |
| ████████ | ████████ | 43531 |
| ████ | █████ | 90247 |
| ███████ | █████ | 77425 |
| ██████ | ██████ | 77391 |
| ████ | ██████ | 67630 |
| █████ | ██████ | 58657 |
| █████ | ██████ | 77438 |
| ██████ | ████ | 97431 |
| ██████ | ████ | 67671 |
| ████ | █████ | 78168 |



| 1801 Century Park East | voice: 310-407-4000 |
| Twenty-Sixth Floor | fax: 310-407-9090 |
| Los Angeles, California 90067 | www.ktbslaw.com |

tpatterson@ktbslaw.com
Direct Dial: 310-407-4035

October 14, 2021

**SENT VIA ELECTRONIC MAIL**

Irwin Zalkin                                   Michael Pfau
The Zalkin Law Firm, P.C.                      Pfau Cochran Vertetis Amala PLLC
10590 W. Ocean Air Drive #125                  403 Columbia St, Suite 500
San Diego, CA 92130                            Seattle, WA 98104

Re:    **Retention Agreement with KTBS Law LLP**

Dear Messrs. Zalkin and Pfau:

This letter agreement (the "Agreement") sets out the terms and conditions on which
KTBS Law LLP (the "Firm" or "KTBS") will represent the law firms The Zalkin Law Firm, P.C.
and Pfau Cochran Vertetis Amala PLLC (together, "Original Clients"), as well as certain other or
further clients as described below ("Additional Clients," and with Original Clients, "Clients"), in
connection with the bankruptcy case styled *In re Boy Scouts of America and Delaware BSA,
LLC*, (together, the "Debtors"), Case No. 20-10343 (LSS) (Bankr. D. Del.) (the "Bankruptcy
Case"), pending in the United States Bankruptcy Court for the District of Delaware (the
"Bankruptcy Court").  Clients represent a number of individual survivors of sexual abuse who
have asserted claims against the Debtors, among other defendants, and have filed proofs of claim
in the Bankruptcy Case (the "Claimants").  For the avoidance of doubt, none of the Claimants are
parties to this Agreement, and there is no attorney-client relationship between the Firm and the
Claimants.

*Scope of Representation*

KTBS specializes in the areas of reorganization, bankruptcy, and insolvency-related
commercial litigation and corporate matters.  We limit our practice (and hence our services) to
those areas.

KTBS will act as Clients' general bankruptcy counsel to render such ordinary and
necessary legal services as may be required in connection with the Bankruptcy Case, including
(by way of example and without limitation) participating in hearings, conferences, and other
proceedings before the Bankruptcy Court; negotiating with the Debtors, other creditors, any
official and unofficial committees, any trustee(s), and other parties in interest in the Bankruptcy
Case with respect to any plans of reorganization, settlements, or other matters in connection with
the Bankruptcy Case; prosecuting or defending any adversary proceedings or appeals in

182375.8

Messrs. Irwin Zalkin and Michael Pfau
October 14, 2021
Page 2

connection with any of the foregoing; and generally protecting Clients' rights and attempting to maximize recoveries on account of Claimants' claims in connection with the Bankruptcy Case (collectively, the "Engagement").

KTBS's engagement as Clients' legal counsel does not include the provision of advice or services outside the areas to which KTBS limits its practice or beyond the scope of this Engagement. In particular, the scope of the Engagement does not include representation of Clients' own individual clients, or giving attention to, forming professional opinions as to, or advising or acting on behalf of Clients with respect to matters of substantive tort law, tax law, employment law, eleemosynary law, or other non-bankruptcy law. It is a condition to KTBS's representation hereunder that Clients make available competent outside counsel to provide advice regarding any such matters.

Primary communication with Clients will be with and through the Original Clients and the Firm will be entitled to rely on instruction given by the Original Clients.

This Agreement supersedes the engagement letter signed August 2, 2021 with regard to the scope of representation and financial matters and services after August 20, 2021 and governs KTBS's representation of Clients after August 20, 2021; provided, however, that KTBS's representation of Clients after August 20, 2021 pursuant to this Agreement is conditioned upon Clients making all the payments set forth in the invoice dated September 1, 2021 as specified therein with regard to services provided prior to August 21, 2021 (the "Prior Payments"). Failure to timely pay the Prior Payments shall be grounds for the Firm terminating this Agreement. The Prior Payments shall not be credited against any fees due to KTBS pursuant to this Agreement, including the contingent fees and the Minimum Fee described below.

### *Financial Arrangements*

KTBS ordinarily and customarily offers its services on an hourly-rate basis and requires payment each month of professional fees at KTBS's hourly rates then in effect as well as reimbursement each month of out-of-pocket expenses. The current hourly rates for KTBS's attorney and paralegal services range from $     to $    . My and Dan Bussel's current hourly rate is $    ; Sasha Gurvitz's is $    . KTBS's hourly rates are adjusted periodically, typically on January 1 of each year, to reflect the advancing experience, capabilities, and seniority of KTBS's professionals, as well as general economic factors.

For this Engagement, however, KTBS has agreed to offer its services on a contingency-fee basis, excluding the advancement of out-of-pocket costs (discussed further below). That means that if there is no recovery, Clients will pay nothing on account of professional fees other than advanced out-of-pocket costs.

The contingency fee to which KTBS is entitled is as follows: subject to the numbered paragraphs 1-3 below, the initial fee (the "Initial Fee") shall be     percent of the amount received by the Claimants on account of any claim submitted by Clients (on behalf of their individual clients) in the Bankruptcy Case, whether such claim is ultimately liquidated by the

Messrs. Irwin Zalkin and Michael Pfau
October 14, 2021
Page 3

Bankruptcy Court or any other court, to be paid by Clients out of the fees they receive. An initial list of the Claimants (identified by claim number) is attached hereto as Exhibit "A."[1] Accordingly, for example, if a Client's contingency fee agreement with a Claimant is ▇% of the amount received by Claimant, the Initial Fee to KTBS on account of such claim is ▇% of the amount received by the Claimants, and the Client retains a fee of ▇% of the amount received by the Claimant.[2] For the avoidance of doubt, amounts received on account of the claims includes, as sources, (i) all amounts derived from or in connection with the Bankruptcy Case and any other cases in any other court asserting causes of action related to the Claimants' claims in the Bankruptcy Case, including, without limitation, (x) any funds made available to Clients or Claimants either from the Debtors, their bankruptcy estates, their insurers, or any trusts established in connection with the Bankruptcy Case, or (y) funds made available from third parties for the purpose of paying creditors of the Debtors with claims similar to those of Clients' individual clients' claims and being released from liability therefor, whether pursuant to a settlement with the Debtors, their bankruptcy estates, their insurers, or any trustee of a trust established in connection with the Bankruptcy Case, a channeling order, a plan of reorganization or liquidation for the Debtors, or other process approved by the Bankruptcy Court, and (ii) all amounts derived from or in connection with recoveries from Local Councils and/or Chartered Organizations (including from the proceeds of any insurance that covers them), whether derived from or in connection with the Bankruptcy Case, or pursued separately through litigation outside of bankruptcy. The Initial Fee in respect of any particular Claimant's claim shall be paid to the Firm by the Client representing such Claimant within 3 business days of the Client's collection of its own contingent fees from any Claimant it represents.

Given the nature of the Engagement, it is possible that a Claimant will have the opportunity to opt out of any recovery that would otherwise be available from or in connection with the Bankruptcy Case – such as (by way of example and without limitation) by electing not to release certain non-debtor entities, or by insisting on the right to a jury trial rather than compensation through the bankruptcy process or any trust distribution procedures. In the event a Claimant opts out of a recovery from or in connection with the Bankruptcy Case, then KTBS will be entitled to its contingent fee calculated on the amount Claimant ultimately receives in respect of any causes of action outside of the Bankruptcy Case that are related to the Claims asserted in the Bankruptcy Case.

The Initial Fee shall be subject to the following adjustments and qualifications:

---

[1] Clients represent that they represent certain Claimants as co-counsel with other lawyers who have not agreed to the arrangement contemplated by this Agreement. Those claims (the "Excluded Claims") are identified by Claim number on Exhibit "2."

[2] By illustration, if a Claimant receives a $▇▇▇ recovery on a claim, and a Client's contingency arrangement with such Claimant is for ▇% of the recovery, KTBS shall be entitled to a fee of $▇▇▇ (▇% of the Claimant's recovery) which shall be paid by that Client out of the $▇▇▇ (▇% of $▇▇▇) received by Client on such claim, resulting in Client retaining $▇▇▇ from the recovery.

Messrs. Irwin Zalkin and Michael Pfau
October 14, 2021
Page 4

     1.    <u>Appellate Adjustment.</u>  In the event the Firm is asked to pursue or defend appellate remedies from a decision of the Bankruptcy Court, the Initial Fee shall be increased by ▮ percentage point for each level of appeal (e.g., from ▮% to ▮% in the event of an appeal to the District Court, and from ▮% to ▮% in the event of an appeal to the Third Circuit Court of Appeals) (the "Appellate Adjustment").

     2.    Notwithstanding the amount of the Initial Fee or the Appellate Adjustment, the Firm will limit its fee to the lesser of (a) ▮▮▮ times its standard charges billed at its applicable hourly rates or (b) ▮▮▮▮▮▮ times its standard charges billed at its applicable hourly rates in the event that, prior to December 31, 2022, both (i) the representation evidenced by this Agreement is concluded and (ii) the Firm has received payment of an amount equal to ▮▮▮▮ times its standard charges billed at its applicable hourly rates (the "Maximum Fee").

     3.    Notwithstanding the amount of the Initial Fee, the minimum fee earned and payable hereunder shall be $▮▮▮▮ for time incurred after August 20, 2021 (the "Minimum Fee")  The Minimum Fee shall be payable at the conclusion of the representation or, if prior to that time circumstances make it unavoidable that the Minimum Fee shall become payable, when such circumstances arise.  Payments to the Firm in respect of the contingent fees incurred under this Agreement shall be credited against the Minimum Fee and any remaining shortfall at the time the Minimum Fee becomes due shall be paid in proportion to the number of Claimants represented by Clients on Exhibit A.

     The types of costs and expenses that must be reimbursed hereunder include charges for messenger services, air couriers, photocopying, court fees, travel expenses, airfare at the rate charged for fully-refundable coach travel, conference calling charges, computerized legal research, investigative searches, transcripts, filing or recording fees, and other actual charges customarily invoiced by law firms in addition to fees for legal services.  KTBS does not bill for secretarial overtime or word processing.  Original Clients agree to reimburse KTBS for costs and expenses incurred by KTBS in connection with this Engagement.  KTBS will bill Original Clients monthly for such expenses and Original Clients agree to remit payment within 30 days following transmission of an invoice to Original Clients in in proportion to the number of Claimants represented by Clients on Exhibit A.

     Clients agree that KTBS shall have a valid and enforceable attorneys' charging lien on all amounts received or collected by Clients on account of Claimants' claims from any source with respect to which the Initial Fee is applicable until such time as KTBS has received in full all fees due under this Agreement.  This lien survives KTBS's discharge or withdrawal from the representation, and constitutes a security interest knowingly and voluntarily granted by Clients to secure payment for KTBS's services and disbursements as Clients' counsel.  The attorneys' charging lien granted in respect of the services provided to Clients shall be governed by California law, including without limitation the principles set forth in *Fletcher v. Davis,* 90 P.3d 1216 (Cal. 2004); *Isrin v. Superior Court,* 403 P.2d 728 (Cal. 1965); and *In re Pacific Far East Line, Inc.,* 654 F.2d 664 (9th Cir. 1981).

Clients agree to make payment to KTBS in respect of its contingent fees promptly upon receipt of their own contingent fees and to provide regular accountings to KTBS with regard to payments they have received or collections made on account of the underlying claims, including quarterly reports to the Firm and other reports upon KTBS's reasonable request; such reports to commence at a point in time that payments have begun to be made to the Clients or the Claimants on account of the claims covered hereunder.

Pursuant to section 6147(a)(4) of the California Business and Professions Code, Clients are advised that the compensation arrangements set forth herein, including the contingency fee, are not set by law, and instead are negotiable between Clients and KTBS.

Clients acknowledge and agree that: (i) they have been advised in writing that they may seek the advice of an independent lawyer of their choice; (ii) they have had a reasonable opportunity to seek such advice prior to counter-signing and returning this; and (iii) by counter-signing and returning this Agreement, they have consented in writing to the terms of this Engagement, including the attorneys' charging lien described herein.

### *Disclosures and Waivers*

KTBS is a specialty law firm with few continuing institutional clients. Because of the specialized nature of its practice, from time to time KTBS may concurrently represent one client in a particular case and the debtor, creditor, competitor, or adversary of that client (or a professional employed to represent that opposing party) in an unrelated matter. Thus, by way of illustration only, while representing Clients, KTBS may represent a creditor of Clients as a debtor in a bankruptcy case or in connection with out-of-court negotiations with such entity's creditors concerning that entity's ability to pay its debts generally.

Clients agree that they do not consider the concurrent representation by KTBS, in unrelated matters, of any adversary to Clients to be inappropriate or otherwise objectionable and, therefore, waive any and all objections (or other rights to oppose or otherwise contest) any such concurrent representations (present or future) by KTBS now or any time in the future including, without limitation, the representation by KTBS of persons or entities adverse to Clients on or in connection with any matters or issues other than the Engagement hereunder. Clients understand that KTBS is relying on this waiver and would not undertake this representation but for this waiver. Please be assured, however, that KTBS strictly preserves all client confidences and zealously pursues the interests of each of its clients, including in those circumstances in which KTBS represents the adversary of an existing client in an unrelated matter.

Clients' consent to KTBS's representation of persons or entities directly adverse to Clients in unrelated matters would not ordinarily require screening procedures unless a risk existed that relevant confidential information of Clients might be disclosed to those working on behalf of Clients' adversary or otherwise used against Clients. If that risk exists, however, KTBS will employ its customary screening procedures to protect Clients' confidential information. Those procedures prohibit lawyers with access to relevant confidential information of Clients from participating in the representation of Clients' adversary in the unrelated matter,

Messrs. Irwin Zalkin and Michael Pfau
October 14, 2021
Page 6

and preclude those KTBS professionals representing Clients' adversary in the unrelated matter from communicating with those lawyers regarding either matter or accessing documents, in our office or on our computer systems, that are related to our representation of Clients.  Clients acknowledge and agree that KTBS will not be required to implement screening procedures unless the risk described above exists, and that if such risk does exist, the screening procedures described above are sufficient and appropriate.

Some attorneys at KTBS have relatives or significant others who are attorneys at other law firms.  Please advise in writing if you wish to review a list of such firms.  KTBS has strict policies against disclosing confidential information to anyone outside of the firm, including spouses, parents, children, siblings, and significant others.  Clients acknowledge and agree that KTBS's representation in this matter is not inappropriate in light of any such relationships.

KTBS attorneys often communicate with their clients and their clients' professionals and agents by mobile telephone and electronic mail, which communications may be at risk of being intercepted by others.  Clients must inform KTBS if they wish to limit the mediums through which such communications are made.

KTBS maintains errors and omissions insurance coverage applicable to the services to be rendered hereunder in compliance with California Corporations Code section 16956(a)(2).

Clients are encouraged to obtain such outside legal advice as Clients believe appropriate concerning the foregoing "Disclosures and Waivers" portion of this Agreement (as well as any other provision of this Agreement), including a further analysis of the advantages and disadvantages thereof, and acknowledge that they have had the opportunity to confer with counsel regarding the foregoing.

Clients (i) acknowledge and understand all of the foregoing disclosures and waivers, (ii) confirm that they do not believe that KTBS's representation of Clients is inappropriate or otherwise objectionable in light of any of the relationships and other matters described above, and (iii) expressly consent to KTBS's representation of Clients under these circumstances.

### *Joint Representation and Additional Clients*

Original Clients have requested that KTBS agree to jointly represent them, and have asked KTBS to consider the addition of Additional Clients to this Engagement.  After carefully evaluating the issue of joint representation, KTBS believes that it may properly concurrently represent all Original Clients and such Additional Clients as may be added in the future to this Engagement, subject to KTBS's evaluation of any such Additional Clients on a Client-by-Client basis.  Any such Additional Clients must execute a joinder to this Agreement and agree to all its terms and conditions.

In this Engagement, KTBS will focus on maximizing the funds available to satisfy claims asserted by Clients on behalf of the Claimants, including (without limitation), when so asked by Clients, to seek to limit the scope or application of any non-consensual third-party releases and related injunctions sought to be approved or issued by the Bankruptcy Court.

Messrs. Irwin Zalkin and Michael Pfau
October 14, 2021
Page 7

In the Bankruptcy Case, as in other bankruptcy or insolvency-related proceedings or negotiations, it is possible that the debtor or its insurer(s) or any parties alleged to be liable along with the debtor (such as subsidiaries, parent entities, employees, or agents) will assert or demonstrate that there are only limited funds available, such that any increase in one Claimant's recovery will necessarily result in a decrease in another Claimant's recovery.   KTBS has carefully considered these issues and potential eventualities and has nonetheless concluded that it may appropriately represent multiple Clients in connection with the Bankruptcy Case.   This conclusion is based on, among other things: (i) each Client's informed consent and advance express agreement that KTBS will seek to maximize the pool of funds available to pay the Claims asserted by the Clients on behalf of the Claimants; and (ii) the economy of scale that will allow KTBS to offer its services in connection with this Engagement on a contingency-fee basis (as described herein) rather than requiring payment of professional fees at KTBS's hourly rates in effect at the time of such services.

To the extent there are disagreements between or among Clients as to questions of strategy (including, without limitation, whether to support or oppose a particular plan of reorganization or liquidation), KTBS will act as directed by the Original Clients or, if they disagree, by the Client representing a majority in number of claims(not the face amount of the claims).   Clients agree not to seek KTBS's disqualification on account of such differences in strategy, or to require other Clients to obtain separate counsel as a result of such differences in strategy.   However, notwithstanding the foregoing or anything else in this Agreement, the decision of whether to accept a particular settlement proposal or how to vote on a particular proposed plan of reorganization or liquidation will always be a matter between each Client and the Claimants that Client represents.

Beyond the "limited fund" circumstances and disagreements over strategy described in the preceding paragraphs, it is possible that during the representation of Clients, facts could come to light that would create a conflict of interest such that continued joint representation would be inadvisable.   (KTBS will promptly inform Clients if it becomes aware of such unanticipated circumstances, and will rely on each Client to promptly notify KTBS if Client becomes aware of such unanticipated circumstances.)   Thus, it is possible that Clients could find themselves in a legal position different from each other, and conceivably it could be advantageous for one Client to take positions separately or adverse to the others.   In that event, KTBS will abstain from its joint representation of such Clients with respect to the particular issue in conflict, and each Client will be required to retain separate counsel with respect to that particular issue.   KTBS will continue to jointly represent the interests of Clients with respect to all other matters that are the subject of this Agreement.   If such measures prove inconsistent with ethical or practical considerations, then KTBS may have to withdraw completely from its representation of one or more Clients to maintain its ability to exercise its independent professional judgment.   If conflicts were to develop and KTBS withdraws from the representation of any Client or Clients, then KTBS wishes to be able to continue to represent the other or others, consistent with ethical and practical considerations.

California Evidence Code section 962 provides that "[w]here two or more clients have retained or consulted a lawyer upon a matter of common interest, none of them, nor the successor

Messrs. Irwin Zalkin and Michael Pfau
October 14, 2021
Page 8

in interest of any of them, may claim a privilege … as to a communication made in the course of that relationship when such communication is offered in a civil proceeding between one of such clients (or his successor in interest) and another of such clients (or his successor in interest)." Accordingly, Clients understand that there may be no right to assert the attorney-client privilege as to communications KTBS receives from one Client to prevent KTBS from disclosing such communications to another Client or Clients.  Clients confirm and agree that they are aware of this provision of the California Evidence Code, and that other or similar rules or principles may apply under non-California law.

Clients are encouraged to obtain such outside legal advice as Clients believe appropriate concerning the foregoing "Joint Representation and Additional Clients" portion of this Agreement (as well as any other provision of this Agreement), including a further analysis of the advantages and disadvantages thereof, and acknowledge that they have had the opportunity to confer with counsel regarding the foregoing.  Rule 1.7 of the California Rules of Professional Conduct bears upon the matters set out in this Agreement and requires KTBS to so inform Clients and to obtain Clients' written consent before KTBS can concurrently represent multiple individuals.

Clients (i) acknowledge and understand all of the foregoing disclosures and waivers, (ii) confirm that they do not believe that KTBS's representation of Clients is inappropriate or otherwise objectionable in light of the joint representation described above, and (iii) expressly consent to KTBS's representation of Clients under these circumstances.

### *No Guarantee of a Particular Result*

It is not possible to provide any promise or guarantee about the outcome of a legal dispute.  Nothing in this Agreement, or any statements that may be made by our attorneys or staff, constitutes a promise or guarantee.  Any comments or predictions about how a matter may develop or whether a particular strategy is appropriate are an expression of judgment and not a promise or guarantee of a particular result.

### *Opinion Letters and Tax Matters*

KTBS generally does not provide opinion letters to its clients or to others who might wish to rely on such letters.  To the extent KTBS is requested to provide an opinion letter, it does so only as approved by a special committee of the firm, based upon the facts and circumstances presented.  KTBS may determine, in its sole discretion, whether to provide any opinion letter requested by Clients.  If KTBS agrees to provide an opinion letter, then KTBS may require an additional fee for the drafting and issuance of such a letter.  Nothing herein is intended, nor should it be construed, as an obligation by KTBS to issue any opinion letter.

KTBS does not give tax advice.  If, notwithstanding the forgoing, any advice we furnish to Clients is deemed to constitute tax advice within the meaning of U.S. Treasury Regulations, then Clients are hereby advised that any tax advice will not be written or intended to be used (and cannot be used) by any taxpayer for the purpose of (i) avoiding any penalties under the

Messrs. Irwin Zalkin and Michael Pfau
October 14, 2021
Page 9

Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transactions or tax-related matters.

### No Non-Client Representation

KTBS is being engaged by Clients only.  KTBS's engagement by Clients does not include the representation of any agent, representative, family member, or other person or entity connected with Clients,(including without limitation individual abuse survivors represented by Clients).  Clients represent and warrant that they have obtained the informed written consent of Claimants whom they represent to the contingent fee arrangement set forth herein, to the extent required by applicable rules of professional responsibility.

### Discharge and Withdrawal

Any Client may discharge KTBS at any time.  Subject to any applicable court requirements, KTBS may withdraw at any time with such Client's consent or for good cause without consent.  Good cause includes a breach of this Agreement, failure to have available competent outside counsel to provide advice in all matters outside the scope of the Engagement, refusal or failure to cooperate with KTBS, or any fact or circumstance that would render KTBS's continuing representation unlawful or unethical.

If this Agreement or KTBS's services are terminated for any reason, such termination will be effective only to terminate KTBS's services prospectively and all other terms of this Agreement (including KTBS's right to collect its contingent fee hereunder to the extent permitted by applicable law) will survive any such termination.

Upon cessation of KTBS's active involvement in a particular matter (even if KTBS continues active involvement on other Clients' behalf), KTBS will have no further duty or any obligations to (i) inform any former Client of future developments or changes in the law that may be relevant to such matter or (ii) monitor renewal or notice dates or deadlines that may arise from such matter.

### Consent to Use of Certain Information

In connection with future materials that describe facets of the KTBS's practice and include examples of matters KTBS handles on behalf of clients, Clients agree that, if those materials avoid disclosing Clients' confidences, and secrets as defined by applicable ethical rules, KTBS may provide factual synopses of the Engagement and may indicate generally the results achieved.

### Client Files

After the conclusion of the Engagement, KTBS will retain Clients' hard-copy and electronic files in KTBS's possession for a period of three years following such termination.  If Clients do not request in writing delivery of these files before the end of that three-year period,

Messrs. Irwin Zalkin and Michael Pfau
October 14, 2021
Page 10

then KTBS will have no further obligation to retain such files upon the expiration of such period, and may, in KTBS's sole discretion, destroy them without further notice or obligation to Clients.

### Other Provisions

This Agreement constitutes the entire understanding between Clients and KTBS regarding the Engagement. By executing this Agreement, Clients acknowledge that they have read carefully and understand all of its terms. This Agreement cannot be modified except by a further written agreement signed by all parties. KTBS and Clients agree that executed signature pages to this Agreement may be exchanged via fax or by way of e-mailed .pdf documents. Each person whose signature is affixed to this Agreement represents that he or she has full authority to execute this Agreement so that it is binding. If any provision of this Agreement or the application thereof is held invalid or unenforceable, then such invalidity or unenforceability shall not affect other provisions or applications of this Agreement which can be given effect without such invalid or unenforceable provisions or application, and to this end the provisions of this Agreement are declared to be severable. Every agreement, consent, and waiver contained herein by Clients extends to any assignee or successor in interest to Clients.

### Conclusion

If you have any questions about the foregoing, please call me. Moreover, as noted above, please feel free to obtain independent legal advice regarding this Agreement. If Clients are in agreement with the foregoing, and it accurately represents Clients' agreement with KTBS, then please execute and return a signed copy of this Agreement. If Clients are not in agreement with the foregoing, kindly contact me immediately.

Please understand that KTBS can and will assume no responsibility of any kind, including filing any documents with any court or contacting any third parties, until a signed copy of this Agreement has been returned by Clients.

We look forward to working with you on this important matter.

Very truly yours,

KTBS Law LLP

By:  Thomas E. Patterson

Messrs. Irwin Zalkin and Michael Pfau
October 14, 2021
Page 11

THE FOREGOING IS UNDERSTOOD, APPROVED, AND AGREED TO:

_____

The Zalkin Law Firm, P.C.
By:

_____

Pfau Cochran Vertetis Amala PLLC
By: Michael T. Pfau.

_____

182375.8

**Exhibit A**
As of 11/2/2021

| | | | | | |
|---|---|---|---|---|---|
| 3470 | PCVA | 4333 | PCVA | 6382 | PCVA |
| 3548 | PCVA | 4352 | PCVA | 6383 | PCVA |
| 3556 | PCVA | 4520 | PCVA | 6397 | PCVA |
| 3636 | PCVA | 4529 | PCVA | 6398 | PCVA |
| 3644 | PCVA | 4533 | PCVA | 6399 | PCVA |
| 3646 | PCVA | 4538 | PCVA | 6406 | PCVA |
| 3654 | PCVA | 4547 | PCVA | 6408 | PCVA |
| 3656 | PCVA | 4554 | PCVA | 7930 | PCVA |
| 3658 | PCVA | 4558 | PCVA | 7931 | PCVA |
| 3663 | PCVA | 4689 | PCVA | 7934 | PCVA |
| 3665 | PCVA | 4692 | PCVA | 7940 | PCVA |
| 3669 | PCVA | 4702 | PCVA | 7943 | PCVA |
| 3675 | PCVA | 4706 | PCVA | 7944 | PCVA |
| 3677 | PCVA | 4710 | PCVA | 7952 | PCVA |
| 3681 | PCVA | 4723 | PCVA | 7957 | PCVA |
| 3683 | PCVA | 6363 | PCVA | 7963 | PCVA |
| 3689 | PCVA | 6365 | PCVA | 7964 | PCVA |
| 3693 | PCVA | 6366 | PCVA | 7972 | PCVA |
| 3956 | PCVA | 6367 | PCVA | 7975 | PCVA |
| 3957 | PCVA | 6370 | PCVA | 7993 | PCVA |
| 4332 | PCVA | 6380 | PCVA | 8001 | PCVA |

| | | | | | |
|---|---|---|---|---|---|
| 8003 | PCVA | 10368 | PCVA | 12819 | PCVA |
| 8005 | PCVA | 10374 | PCVA | 12821 | PCVA |
| 8008 | PCVA | 10992 | PCVA | 12823 | PCVA |
| 8012 | PCVA | 10993 | PCVA | 12824 | PCVA |
| 9193 | PCVA | 11023 | PCVA | 12829 | PCVA |
| 9237 | PCVA | 11031 | PCVA | 12861 | PCVA |
| 9272 | PCVA | 11042 | PCVA | 12883 | PCVA |
| 9276 | PCVA | 11055 | PCVA | 12929 | PCVA |
| 9278 | PCVA | 11061 | PCVA | 12937 | PCVA |
| 9324 | PCVA | 11068 | PCVA | 12940 | PCVA |
| 9361 | PCVA | 11071 | PCVA | 12957 | PCVA |
| 9363 | PCVA | 11075 | PCVA | 12968 | PCVA |
| 10227 | PCVA | 11088 | PCVA | 12969 | PCVA |
| 10231 | PCVA | 11101 | PCVA | 12970 | PCVA |
| 10232 | PCVA | 11104 | PCVA | 12991 | PCVA |
| 10235 | PCVA | 11105 | PCVA | 12992 | PCVA |
| 10242 | PCVA | 11106 | PCVA | 12993 | PCVA |
| 10243 | PCVA | 11109 | PCVA | 13003 | PCVA |
| 10246 | PCVA | 11122 | PCVA | 13451 | PCVA |
| 10259 | PCVA | 11123 | PCVA | 14024 | PCVA |
| 10260 | PCVA | 11127 | PCVA | 14025 | PCVA |
| 10261 | PCVA | 12814 | PCVA | 14032 | PCVA |
| 10269 | PCVA | 12818 | PCVA | 14035 | PCVA |

| | | | | | |
|---|---|---|---|---|---|
| 14041 | PCVA | 15740 | PCVA | 20850 | PCVA |
| 15193 | PCVA | 15747 | PCVA | 20863 | PCVA |
| 15213 | PCVA | 15749 | PCVA | 20876 | PCVA |
| 15215 | PCVA | 15750 | PCVA | 20882 | PCVA |
| 15216 | PCVA | 16258 | PCVA | 20940 | PCVA |
| 15220 | PCVA | 16267 | PCVA | 20973 | PCVA |
| 15223 | PCVA | 17297 | PCVA | 21002 | PCVA |
| 15230 | PCVA | 17310 | PCVA | 21018 | PCVA |
| 15332 | PCVA | 17321 | PCVA | 21039 | PCVA |
| 15333 | PCVA | 17347 | PCVA | 21046 | PCVA |
| 15342 | PCVA | 17348 | PCVA | 21053 | PCVA |
| 15345 | PCVA | 17359 | PCVA | 21161 | PCVA |
| 15461 | PCVA | 18782 | PCVA | 21174 | PCVA |
| 15619 | PCVA | 18787 | PCVA | 21202 | PCVA |
| 15627 | PCVA | 18820 | PCVA | 21212 | PCVA |
| 15643 | PCVA | 18826 | PCVA | 21272 | PCVA |
| 15646 | PCVA | 20615 | PCVA | 21287 | PCVA |
| 15655 | PCVA | 20647 | PCVA | 21311 | PCVA |
| 15677 | PCVA | 20685 | PCVA | 21316 | PCVA |
| 15681 | PCVA | 20760 | PCVA | 21344 | PCVA |
| 15682 | PCVA | 20770 | PCVA | 21357 | PCVA |
| 15683 | PCVA | 20784 | PCVA | 21361 | PCVA |
| 15685 | PCVA | 20825 | PCVA | 21368 | PCVA |

| | | | | | |
|---|---|---|---|---|---|
| 21586 | PCVA | 25296 | PCVA | 28305 | PCVA |
| 22410 | PCVA | 25300 | PCVA | 28315 | PCVA |
| 22433 | PCVA | 25304 | PCVA | 28335 | PCVA |
| 22446 | PCVA | 25307 | PCVA | 28345 | PCVA |
| 22459 | PCVA | 27954 | PCVA | 29580 | PCVA |
| 22463 | PCVA | 27955 | PCVA | 29581 | PCVA |
| 22494 | PCVA | 27974 | PCVA | 29587 | PCVA |
| 22507 | PCVA | 28003 | PCVA | 29588 | PCVA |
| 25251 | PCVA | 28070 | PCVA | 29594 | PCVA |
| 25258 | PCVA | 28080 | PCVA | 29597 | PCVA |
| 25259 | PCVA | 28099 | PCVA | 29603 | PCVA |
| 25266 | PCVA | 28151 | PCVA | 29606 | PCVA |
| 25270 | PCVA | 28175 | PCVA | 29613 | PCVA |
| 25275 | PCVA | 28210 | PCVA | 31921 | PCVA |
| 25276 | PCVA | 28216 | PCVA | 31927 | PCVA |
| 25277 | PCVA | 28247 | PCVA | 31930 | PCVA |
| 25278 | PCVA | 28248 | PCVA | 31988 | PCVA |
| 25279 | PCVA | 28262 | PCVA | 32061 | PCVA |
| 25284 | PCVA | 28276 | PCVA | 32071 | PCVA |
| 25291 | PCVA | 28279 | PCVA | 32136 | PCVA |
| 25292 | PCVA | 28283 | PCVA | 32160 | PCVA |
| 25293 | PCVA | 28291 | PCVA | 32164 | PCVA |
| 25295 | PCVA | 28303 | PCVA | 32165 | PCVA |

| | | | | | |
|---|---|---|---|---|---|
| 32206 | PCVA | 35233 | PCVA | 40142 | PCVA |
| 32255 | PCVA | 36476 | PCVA | 40176 | PCVA |
| 32290 | PCVA | 36494 | PCVA | 40188 | PCVA |
| 32344 | PCVA | 36521 | PCVA | 40410 | PCVA |
| 32353 | PCVA | 38009 | PCVA | 40496 | PCVA |
| 32392 | PCVA | 38131 | PCVA | 40498 | PCVA |
| 32403 | PCVA | 38173 | PCVA | 40529 | PCVA |
| 32412 | PCVA | 38280 | PCVA | 40590 | PCVA |
| 32427 | PCVA | 38341 | PCVA | 40591 | PCVA |
| 32430 | PCVA | 38346 | PCVA | 40632 | PCVA |
| 32432 | PCVA | 38352 | PCVA | 40634 | PCVA |
| 32436 | PCVA | 38361 | PCVA | 40636 | PCVA |
| 32443 | PCVA | 38381 | PCVA | 42171 | PCVA |
| 32461 | PCVA | 38389 | PCVA | 42329 | PCVA |
| 32468 | PCVA | 38394 | PCVA | 42368 | PCVA |
| 32479 | PCVA | 38408 | PCVA | 42552 | PCVA |
| 32510 | PCVA | 38417 | PCVA | 42576 | PCVA |
| 32528 | PCVA | 38434 | PCVA | 42592 | PCVA |
| 35163 | PCVA | 38436 | PCVA | 42634 | PCVA |
| 35170 | PCVA | 38444 | PCVA | 42635 | PCVA |
| 35171 | PCVA | 38455 | PCVA | 42650 | PCVA |
| 35192 | PCVA | 40105 | PCVA | 42706 | PCVA |
| 35219 | PCVA | 40134 | PCVA | 42707 | PCVA |

| | | | | | |
|---|---|---|---|---|---|
| 42709 | PCVA | 48508 | PCVA | 56216 | PCVA |
| 42744 | PCVA | 48510 | PCVA | 56696 | PCVA |
| 42817 | PCVA | 48524 | PCVA | 56760 | PCVA |
| 44476 | PCVA | 48537 | PCVA | 56833 | PCVA |
| 44512 | PCVA | 52940 | PCVA | 57360 | PCVA |
| 44518 | PCVA | 52946 | PCVA | 57515 | PCVA |
| 44730 | PCVA | 52969 | PCVA | 57594 | PCVA |
| 44873 | PCVA | 53104 | PCVA | 57606 | PCVA |
| 44884 | PCVA | 53128 | PCVA | 57630 | PCVA |
| 44914 | PCVA | 53153 | PCVA | 57639 | PCVA |
| 45082 | PCVA | 53191 | PCVA | 57642 | PCVA |
| 45087 | PCVA | 53208 | PCVA | 60893 | PCVA |
| 48060 | PCVA | 53213 | PCVA | 60923 | PCVA |
| 48085 | PCVA | 53287 | PCVA | 60997 | PCVA |
| 48087 | PCVA | 53303 | PCVA | 61039 | PCVA |
| 48094 | PCVA | 53374 | PCVA | 61339 | PCVA |
| 48441 | PCVA | 53416 | PCVA | 61351 | PCVA |
| 48451 | PCVA | 53467 | PCVA | 61376 | PCVA |
| 48467 | PCVA | 53530 | PCVA | 61588 | PCVA |
| 48480 | PCVA | 53558 | PCVA | 61773 | PCVA |
| 48490 | PCVA | 53578 | PCVA | 61800 | PCVA |
| 48492 | PCVA | 53581 | PCVA | 61811 | PCVA |
| 48506 | PCVA | 56214 | PCVA | 61851 | PCVA |

| | | | | | |
|---|---|---|---|---|---|
| 61978 | PCVA | 76263 | PCVA | 104565 | PCVA |
| 63751 | PCVA | 76284 | PCVA | 104566 | PCVA |
| 63771 | PCVA | 76330 | PCVA | 104567 | PCVA |
| 64137 | PCVA | 77842 | PCVA | 104568 | PCVA |
| 65699 | PCVA | 82969 | PCVA | 104569 | PCVA |
| 65806 | PCVA | 85019 | PCVA | 104572 | PCVA |
| 70221 | PCVA | 85171 | PCVA | 104574 | PCVA |
| 70689 | PCVA | 90742 | PCVA | 104575 | PCVA |
| 71140 | PCVA | 90942 | PCVA | 104576 | PCVA |
| 71170 | PCVA | 90991 | PCVA | 104579 | PCVA |
| 71261 | PCVA | 91123 | PCVA | 104580 | PCVA |
| 71311 | PCVA | 91134 | PCVA | 104581 | PCVA |
| 71654 | PCVA | 91293 | PCVA | 104582 | PCVA |
| 71985 | PCVA | 92118 | PCVA | 104583 | PCVA |
| 72008 | PCVA | 93558 | PCVA | 104584 | PCVA |
| 72035 | PCVA | 93736 | PCVA | 104585 | PCVA |
| 72076 | PCVA | 96854 | PCVA | 104586 | PCVA |
| 72129 | PCVA | 97479 | PCVA | 104588 | PCVA |
| 72142 | PCVA | 104558 | PCVA | 104589 | PCVA |
| 72145 | PCVA | 104559 | PCVA | 104591 | PCVA |
| 72192 | PCVA | 104560 | PCVA | 104592 | PCVA |
| 72233 | PCVA | 104561 | PCVA | 104594 | PCVA |
| 72312 | PCVA | 104563 | PCVA | 104595 | PCVA |

| | | | | | |
|---|---|---|---|---|---|
| 104597 | PCVA | 104819 | PCVA | 104845 | PCVA |
| 104598 | PCVA | 104821 | PCVA | 104846 | PCVA |
| 104599 | PCVA | 104822 | PCVA | 104847 | PCVA |
| 104601 | PCVA | 104823 | PCVA | 105273 | PCVA |
| 104602 | PCVA | 104824 | PCVA | 105276 | PCVA |
| 104603 | PCVA | 104825 | PCVA | 107456 | PCVA |
| 104604 | PCVA | 104826 | PCVA | 107458 | PCVA |
| 104607 | PCVA | 104827 | PCVA | 110216 | PCVA |
| 104611 | PCVA | 104828 | PCVA | 110218 | PCVA |
| 104612 | PCVA | 104830 | PCVA | 110345 | PCVA |
| 104615 | PCVA | 104831 | PCVA | 110346 | PCVA |
| 104618 | PCVA | 104832 | PCVA | 110353 | PCVA |
| 104620 | PCVA | 104833 | PCVA | 110355 | PCVA |
| 104625 | PCVA | 104834 | PCVA | 111167 | PCVA |
| 104808 | PCVA | 104836 | PCVA | 112714 | PCVA |
| 104809 | PCVA | 104837 | PCVA | 112720 | PCVA |
| 104811 | PCVA | 104838 | PCVA | 112724 | PCVA |
| 104812 | PCVA | 104839 | PCVA | 112739 | PCVA |
| 104813 | PCVA | 104840 | PCVA | 112740 | PCVA |
| 104814 | PCVA | 104841 | PCVA | 113228 | PCVA |
| 104816 | PCVA | 104842 | PCVA | 118459 | PCVA |
| 104817 | PCVA | 104843 | PCVA | 118463 | PCVA |
| 104818 | PCVA | 104844 | PCVA | 118464 | PCVA |

| | | | | | |
|---|---|---|---|---|---|
| 118833 | PCVA | 120805 | PCVA | 4483 | Marsh |
| 120337 | PCVA | 120808 | PCVA | 4545 | Marsh |
| 120569 | PCVA | 120809 | PCVA | 6402 | Marsh |
| 120570 | PCVA | 120824 | PCVA | 6403 | Marsh |
| 120683 | PCVA | 120825 | PCVA | 7933 | Marsh |
| 120724 | PCVA | 120826 | PCVA | 9153 | Marsh |
| 120735 | PCVA | 120827 | PCVA | 9220 | Marsh |
| 120736 | PCVA | 120828 | PCVA | 9228 | Marsh |
| 120739 | PCVA | 120829 | PCVA | 9229 | Marsh |
| 120740 | PCVA | 120830 | PCVA | 9230 | Marsh |
| 120744 | PCVA | 120931 | PCVA | 9231 | Marsh |
| 120792 | PCVA | 120932 | PCVA | 9235 | Marsh |
| 120793 | PCVA | 120940 | PCVA | 9240 | Marsh |
| 120794 | PCVA | 120941 | PCVA | 9331 | Marsh |
| 120795 | PCVA | 120942 | PCVA | 11017 | Marsh |
| 120796 | PCVA | 120945 | PCVA | 11034 | Marsh |
| 120797 | PCVA | 120946 | PCVA | 11035 | Marsh |
| 120798 | PCVA | 120947 | PCVA | 11043 | Marsh |
| 120799 | PCVA | 3412 | Marsh | 11093 | Marsh |
| 120800 | PCVA | 3468 | Marsh | 11103 | Marsh |
| 120801 | PCVA | 3634 | Marsh | 11120 | Marsh |
| 120803 | PCVA | 3642 | Marsh | 12895 | Marsh |
| 120804 | PCVA | 3652 | Marsh | 12896 | Marsh |

| | | | | | |
|---|---|---|---|---|---|
| 12918 | Marsh | 20779 | Marsh | 28343 | Marsh |
| 12947 | Marsh | 20812 | Marsh | 28351 | Marsh |
| 12962 | Marsh | 20839 | Marsh | 31976 | Marsh |
| 12963 | Marsh | 20892 | Marsh | 32431 | Marsh |
| 14017 | Marsh | 21149 | Marsh | 32492 | Marsh |
| 14031 | Marsh | 21324 | Marsh | 32529 | Marsh |
| 14039 | Marsh | 21607 | Marsh | 35156 | Marsh |
| 14042 | Marsh | 22508 | Marsh | 35165 | Marsh |
| 15183 | Marsh | 25252 | Marsh | 35169 | Marsh |
| 15198 | Marsh | 25257 | Marsh | 35180 | Marsh |
| 15206 | Marsh | 25265 | Marsh | 35195 | Marsh |
| 15207 | Marsh | 25281 | Marsh | 38114 | Marsh |
| 15224 | Marsh | 25283 | Marsh | 38282 | Marsh |
| 15686 | Marsh | 25287 | Marsh | 38432 | Marsh |
| 16246 | Marsh | 25289 | Marsh | 40481 | Marsh |
| 16249 | Marsh | 25290 | Marsh | 40606 | Marsh |
| 16269 | Marsh | 25294 | Marsh | 40622 | Marsh |
| 17325 | Marsh | 25311 | Marsh | 42609 | Marsh |
| 17337 | Marsh | 27884 | Marsh | 42705 | Marsh |
| 17352 | Marsh | 28126 | Marsh | 42736 | Marsh |
| 17353 | Marsh | 28128 | Marsh | 42756 | Marsh |
| 20714 | Marsh | 28206 | Marsh | 44700 | Marsh |
| 20725 | Marsh | 28223 | Marsh | 45101 | Marsh |

| | | | | | |
|---|---|---|---|---|---|
| 48501 | Marsh | 120573 | Marsh | 16259 | RAM |
| 56492 | Marsh | 120602 | Marsh | 21720 | RAM |
| 56685 | Marsh | 120610 | Marsh | 25262 | RAM |
| 63868 | Marsh | 120612 | Marsh | 25269 | RAM |
| 63921 | Marsh | 120613 | Marsh | 25297 | RAM |
| 64211 | Marsh | 120616 | Marsh | 25305 | RAM |
| 65698 | Marsh | 120617 | Marsh | 25309 | RAM |
| 83136 | Marsh | 120620 | Marsh | 28212 | RAM |
| 104587 | Marsh | 120654 | Marsh | 28241 | RAM |
| 104621 | Marsh | 120680 | Marsh | 28272 | RAM |
| 110217 | Marsh | 120682 | Marsh | 28314 | RAM |
| 110343 | Marsh | 120686 | Marsh | 28333 | RAM |
| 112707 | Marsh | 120689 | Marsh | 32230 | RAM |
| 118460 | Marsh | 120728 | Marsh | 35266 | RAM |
| 118465 | Marsh | 120733 | Marsh | 38139 | RAM |
| 118831 | Marsh | 120738 | Marsh | 38311 | RAM |
| 118832 | Marsh | 120930 | Marsh | 40532 | RAM |
| 118834 | Marsh | 6401 | RAM | 42702 | RAM |
| 120122 | Marsh | 16247 | RAM | 44511 | RAM |
| 120564 | Marsh | 16250 | RAM | 45103 | RAM |
| 120565 | Marsh | 16251 | RAM | 48035 | RAM |
| 120568 | Marsh | 16252 | RAM | 48057 | RAM |
| 120572 | Marsh | 16255 | RAM | 48089 | RAM |

| | | | | | |
|---|---|---|---|---|---|
| 53172 | RAM | 104702 | RAM | 120742 | RAM |
| 53315 | RAM | 104703 | RAM | 42976.01 | Marsh |
| 53328 | RAM | 104704 | RAM | 43012.01 | Marsh |
| 53468 | RAM | 104705 | RAM | 43144.01 | Marsh |
| 53487 | RAM | 104706 | RAM | 43149.01 | Marsh |
| 56547 | RAM | 110342 | RAM | 42890.01 | PCVA |
| 56805 | RAM | 118835 | RAM | 42919.01 | PCVA |
| 57459 | RAM | 120567 | RAM | 43201.01 | PCVA |
| 65804 | RAM | 120598 | RAM | 43206.01 | PCVA |
| 71350 | RAM | 120599 | RAM | 43026.01 | PCVA |
| 71904 | RAM | 120615 | RAM | 42981.01 | PCVA |
| 76708 | RAM | 120618 | RAM | 42893.01 | PCVA |
| 85142 | RAM | 120619 | RAM | 43258.01 | PCVA |
| 104564 | RAM | 120684 | RAM | 43159.01 | RAM |
| 104577 | RAM | 120734 | RAM | 43322.01 | RAM |
| 104606 | RAM | 120737 | RAM | 43373.01 | RAM |

**Exhibit B**
**PCVA + Associated Firm(s) Retained Clients by Claim Number**
As of 11/2/2021

By Firm

| | | | | | |
|---|---|---|---|---|---|
| 48061 | AWKO | 110350 | Certa | 88619 | NM |
| 36629 | Braslow | 120685 | Certa | 88620 | NM |
| 36637 | Braslow | 120688 | Certa | 88634 | NM |
| 36882 | Braslow | 120690 | Certa | 88655 | NM |
| 38296 | Burnett | 120721 | Certa | 88660 | NM |
| 3630 | Certa | 120727 | Certa | 88710 | NM |
| 3685 | Certa | 120730 | Certa | 88734 | NM |
| 7968 | Certa | 14038 | DRZ | 88736 | NM |
| 8013 | Certa | 27963 | Greenstein | 88739 | NM |
| 11080 | Certa | 105275 | Greenstein | 88745 | NM |
| 12882 | Certa | 15647 | Hurley | 88756 | NM |
| 14036 | Certa | 70776 | Ledger | 88760 | NM |
| 15221 | Certa | 25272 | Leemon | 88816 | NM |
| 28187 | Certa | 38423 | Leemon | 88833 | NM |
| 32404 | Certa | 65813 | Leemon | 88864 | NM |
| 36480 | Certa | 28159 | Markam | 88877 | NM |
| 38281 | Certa | 70520 | NM | 88884 | NM |
| 42697 | Certa | 70681 | NM | 88885 | NM |
| 44654 | Certa | 70782 | NM | 88918 | NM |
| 48539 | Certa | 70891 | NM | 88941 | NM |
| 52960 | Certa | 88588 | NM | 88944 | NM |
| 53522 | Certa | 88593 | NM | 88965 | NM |
| 60369 | Certa | 88595 | NM | 6369 | PSB |
| 63914 | Certa | 88600 | NM | 7945 | PSB |
| 104570 | Certa | 88618 | NM | 7981 | PSB |

1

| | | | | | |
|---|---|---|---|---|---|
| 16261 | PSB | 38133 | PSB | 47984 | PSB |
| 16262 | PSB | 38154 | PSB | 48013 | PSB |
| 16265 | PSB | 38172 | PSB | 48015 | PSB |
| 16266 | PSB | 38364 | PSB | 48093 | PSB |
| 16270 | PSB | 40106 | PSB | 48113 | PSB |
| 16275 | PSB | 40163 | PSB | 48454 | PSB |
| 17334 | PSB | 40177 | PSB | 48514 | PSB |
| 17335 | PSB | 40526 | PSB | 53392 | PSB |
| 17336 | PSB | 42336 | PSB | 53412 | PSB |
| 17343 | PSB | 42556 | PSB | 53533 | PSB |
| 17346 | PSB | 42589 | PSB | 53557 | PSB |
| 18788 | PSB | 42606 | PSB | 53565 | PSB |
| 20624 | PSB | 42608 | PSB | 56184 | PSB |
| 20667 | PSB | 42625 | PSB | 56666 | PSB |
| 20782 | PSB | 42637 | PSB | 56697 | PSB |
| 20872 | PSB | 42640 | PSB | 57386 | PSB |
| 20939 | PSB | 42647 | PSB | 57455 | PSB |
| 21010 | PSB | 42679 | PSB | 57456 | PSB |
| 21279 | PSB | 42723 | PSB | 63436 | PSB |
| 25256 | PSB | 42746 | PSB | 64069 | PSB |
| 28078 | PSB | 42792 | PSB | 65873 | PSB |
| 28083 | PSB | 42796 | PSB | 71157 | PSB |
| 28091 | PSB | 44844 | PSB | 71786 | PSB |
| 28093 | PSB | 44857 | PSB | 76377 | PSB |
| 28233 | PSB | 45058 | PSB | 83195 | PSB |
| 32140 | PSB | 45088 | PSB | 85034 | PSB |
| 32307 | PSB | 45095 | PSB | 89830 | PSB |
| 36484 | PSB | 47729 | PSB | 104571 | PSB |

| | | | | | |
|---|---|---|---|---|---|
| 104573 | PSB | 120725 | PSB | 40521 | Tork |
| 104578 | PSB | 120731 | PSB | 40545 | Tork |
| 104616 | PSB | 120732 | PSB | 40592 | Tork |
| 104623 | PSB | 120743 | PSB | 40599 | Tork |
| 105274 | PSB | 4527 | Tork | 40610 | Tork |
| 107459 | PSB | 16245 | Tork | 40617 | Tork |
| 111157 | PSB | 16248 | Tork | 42259 | Tork |
| 111158 | PSB | 16263 | Tork | 42311 | Tork |
| 111159 | PSB | 16273 | Tork | 42363 | Tork |
| 111160 | PSB | 16278 | Tork | 42680 | Tork |
| 111161 | PSB | 17350 | Tork | 42738 | Tork |
| 111162 | PSB | 17357 | Tork | 42761 | Tork |
| 111165 | PSB | 27914 | Tork | 42768 | Tork |
| 111177 | PSB | 28007 | Tork | 44573 | Tork |
| 111207 | PSB | 28065 | Tork | 44610 | Tork |
| 112703 | PSB | 28071 | Tork | 44946 | Tork |
| 118461 | PSB | 28098 | Tork | 45109 | Tork |
| 118462 | PSB | 28265 | Tork | 48028 | Tork |
| 118466 | PSB | 28270 | Tork | 48059 | Tork |
| 118827 | PSB | 28323 | Tork | 48081 | Tork |
| 118828 | PSB | 32158 | Tork | 48107 | Tork |
| 118829 | PSB | 32163 | Tork | 48446 | Tork |
| 118830 | PSB | 32515 | Tork | 48491 | Tork |
| 120609 | PSB | 40116 | Tork | 48520 | Tork |
| 120681 | PSB | 40133 | Tork | 48522 | Tork |
| 120692 | PSB | 40156 | Tork | 48528 | Tork |
| 120722 | PSB | 40412 | Tork | 52929 | Tork |
| 120723 | PSB | 40428 | Tork | 53360 | Tork |

| | | | | | |
|---|---|---|---|---|---|
| 53389 | Tork | 76632 | Tork | 111197 | Tork |
| 53474 | Tork | 89835 | Tork | 111198 | Tork |
| 56189 | Tork | 89904 | Tork | 111202 | Tork |
| 56598 | Tork | 91411 | Tork | 111205 | Tork |
| 56600 | Tork | 91699 | Tork | 111208 | Tork |
| 60443 | Tork | 91894 | Tork | 111209 | Tork |
| 60751 | Tork | 92336 | Tork | 111211 | Tork |
| 60816 | Tork | 92428 | Tork | 17356 | WLC |
| 61690 | Tork | 93990 | Tork | 42568 | WLC |
| 61957 | Tork | 111163 | Tork | 42892.01 | PSB |
| 62125 | Tork | 111164 | Tork | 43190.01 | PSB |
| 62183 | Tork | 111168 | Tork | 42960.01 | PSB |
| 63267 | Tork | 111169 | Tork | 42739.01 | PSB |
| 63532 | Tork | 111171 | Tork | 43205.01 | PSB |
| 63645 | Tork | 111173 | Tork | 43153.01 | PSB |
| 63670 | Tork | 111174 | Tork | 43138.01 | PSB |
| 63780 | Tork | 111179 | Tork | 42967.01 | PSB |
| 63970 | Tork | 111180 | Tork | 43211.01 | PSB |
| 64018 | Tork | 111182 | Tork | 42743.01 | PSB |
| 64080 | Tork | 111183 | Tork | 42952.01 | PSB |
| 70284 | Tork | 111184 | Tork | 43350.01 | PSB |
| 70873 | Tork | 111188 | Tork | 43077.01 | Ligori |
| 71258 | Tork | 111189 | Tork | 43091.01 | Braslow |
| 71568 | Tork | 111191 | Tork | 43092.01 | Braslow |
| 71909 | Tork | 111192 | Tork | 43094.01 | Braslow |
| 72106 | Tork | 111194 | Tork | 43095.01 | Braslow |
| 72111 | Tork | 111195 | Tork | 43096.01 | Braslow |
| 72365 | Tork | 111196 | Tork | 43097.01 | Braslow |

43098.01    Braslow

43146.01    Kutner

41938.01    Alexander

43151.01    Alexander

43152.01    Alexander

43338.01    Kutner