

**WILMINGTON**
RODNEY SQUARE

**NEW YORK**
ROCKEFELLER CENTER

**Kevin A. Guerke**
P 302.571.6616
F 302.576.3403
kguerke@ycst.com

November 15, 2021

**Via ECF**

The Honorable Laurie Selber Silverstein
Chief Judge
United States Bankruptcy Court
824 North Market Street, 6th Floor
Wilmington, Delaware 19801

Re:    *In re Boy Scouts of America*, No. 20-10343:  FCR's cross-motion to compel
production of insurer claims-handling documents

Dear Judge Silverstein:

We write on behalf of the Future Claimants' Representative (the "FCR") in opposition to the Insurers'[1] motion to quash and/or limit Rule 30(b)(6) deposition notices to Insurers [D.I. 7206] and the Insurers' motion to quash notices of deposition for individual witnesses [D.I. 7205] (collectively, the "Motions"), and to cross-move[2] to compel the production of documents regarding such issues raised therein, including claims manuals and claim files.[3]

The Insurers' Motions contend that their own claim materials are not relevant to confirmation issues and are not discoverable.  But the Insurers have put the values and claim evaluation protocols set forth in the TDPs directly at issue in these plan confirmation

---

[1] Terms not defined herein have the meanings set forth in the Insurers' Motions.

[2] The FCR's cross-motion focuses specifically on issues related to insurer claims handling.  However, the FCR also opposes the Insurers' argument that facts underlying Plan objections are not discoverable.  The FCR reserves the right to supplement its opposition to the Insurers' Motions by the November 17, 2021 deadline, and files its cross-motion now to allow the Insurers time to respond by November 18, 2021 in order to present all related issues at the hearing scheduled for November 19, 2021.

[3] The Evanston (Markel) has not joined the Insurers' Motions and did not participate in the meet and confer process, and the FCR has therefore offered to meet and confer with Evanston this week.  Similarly, the scope of the meet and confer process with participating Insurers was limited to the 30(b)(6) and claims handler deposition notices, but the FCR has offered to meet and confer with the Insurers this week regarding the FCR's document requests, which raise nearly identical issues.

**Young Conaway Stargatt & Taylor, LLP**
Rodney Square | 1000 North King Street | Wilmington, DE 19801
P  302.571.6600    F  302.571.1253    YoungConaway.com

Young Conaway Stargatt & Taylor, LLP
The Honorable Laurie Selber Silverstein
November 15, 2021
Page 2

proceedings. For that reason, the insurers cannot shield from discovery documents and testimony regarding their own valuations and claim evaluation protocols. The Insurers' Motions must therefore be denied and the FCR's cross-motion granted.

## I.    The Insurers Have Put Claims Handling Information at Issue.

The Insurers previously objected to the Disclosure Statement on the basis that the values and claim evaluation protocols in the TDPs are not "fair and reasonable." *See* Certain Excess Insurers' Supplemental Objection to Debtors' Disclosure Statement (D.I. 6056), at 3 (characterizing Debtors' proposed claim valuation procedure as an "inflated compensation and vote-buying scheme."); Certain Insurers' Supplemental Objection to Amended Disclosure Statement (D.I. 6052), at 14 ("The TDPs violate section 502(a) and 502(b)(1) of the Bankruptcy Code because they expressly permit (and to some extent require) the payment of claims that are not compensable in the tort system, including fraudulent and time-barred claims, without allowing parties in interest to file objections to such claims.'"); Certain Insurers' Objection to Debtors' Motion for Entry of an Order, Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code, (I) Authorizing the Debtors to Enter into and Perform Under the Restructuring Support Agreement and (II) Granting Related Relief (D.I. 5684), at 36 ("This, combined with the RSA's requirement that the Debtors obtain a finding in any Confirmation Order that all Allowed Claim Amounts and the procedures leading thereto are 'fair and reasonable,' *see* RSA § II.A.(i)(B), amount to an attempt by the Debtors and Abuse Claimant Representatives to bind the Debtors' insurers to pay over $239 million in liability for likely invalid claims that are not subject to review by anyone, ever, not even the Abuse Claimant Representatives' handpicked Settlement Trustee.").

Yet, the Insurers may very well have information in their possession that is relevant to the reasonableness of the TDPs, including claim files and claim manuals related specifically to abuse claims asserted against the Debtors and against other insureds. Indeed, Liberty Mutual Insurance Company purportedly has in its possession specific "guidelines regarding sexual misconduct claims." D.I. 7019. Other Insurers were tendered abuse claims pre-petition, and either agreed or refused to fund settlements of abuse claims.

Regardless of whether or not insurers actually handled abuse claims against the Debtors pre-petition, however, the Insurers are in the business of handling claims. Thus, materials and information regarding how they handled claims pre-petition—or would handle claims if not for the TDPs—have a natural tendency to prove or disprove the reasonableness of claims handling processes and matrices set forth in the TDPs. The FCR therefore requested documents and propounded 30(b)(6) and fact witness deposition notices related to the insurers' handling of abuse claims, but the Insurers are refusing to produce such information on the basis that it is not relevant to these proceedings. The Insurers are wrong.

## II.    When Claims Handling Information Is Put at Issue, it Is Discoverable.

This Court has previously suggested that, when insurers put TDP values at issue, the insurers make discoverable their own claims handling materials. *See* Transcript of Oral Argument at 239:25 to 240:03, *In re Imerys Talc America, Inc.*, No. 19-10289 (LSS) (Bankr. D. Del. June 24, 2021), D.I. 3733 ("Now, if the insurance companies end up filing some objection

Young Conaway Stargatt & Taylor, LLP
The Honorable Laurie Selber Silverstein
November 15, 2021
Page 3

and putting in value information, and they use this information and they give it to an expert[…] then it's going to be discoverable.")  The same rationale applies to processes for evaluating claims; when the Insurers contend that TDP safeguards against fraudulent claims are insufficient, they cannot shield from discovery their own procedures for handling claims.  *Cf. Int'l Indem. Co. v. Saia Motor Freight Line, Inc.*, 478 S.E.2d 776, 778 (Ga. Ct. App. 1996) (where an insurer denied a duty to defend one insured but defended a second insured in the same liability case, and that insurer contested the reasonableness of attorney's fees claimed for the covered defense of the first insured, that insurer's defense counsel bills for the second insured were discoverable).

Indeed, courts in Delaware and other jurisdictions have held claim files, claims handling manuals, and other documents produced by the insurer in the course of handling an insured's claim to be relevant and discoverable.  *See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stauffer Chem. Co.*, 558 A.2d 1091, 1096 (Del. Super. Ct. 1989) (ordering insurers to produce "claim and underwriting files" and "claims-handling manuals and guidelines" for the insured and other insureds); *Monsanto Co. v. Aetna Cas. & Sur. Co.*, No. 88C-JA-118, 1992 WL 182322, at *1 (Del. Super. Ct. May 26, 1992) (accepting Special Discovery Master's recommendation that insured's requests for insurer's documents "concerning generic claims handling, underwriting, and policy interpretation, and the scope of [CGL and EIL coverage]" were relevant and discoverable); *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638, 646 (D. Kan. 2007) (affirming magistrate judge's findings that claims-handling materials were "relevant to whether claims were properly handled [and] could reveal the Insurers' guidelines for interpreting policy language or demonstrate how the Insurers' positions in this litigation are inconsistent with previous coverage decisions."); *Mo. Pac. R.R. Co. v. Aetna Cas. & Sur. Co.*, No. CIV.A.3:93-CV-1898-D, 1995 WL 861147, at *2 (N.D. Tex. Nov. 6, 1995) (affirming the magistrate judge's decision that claims handling documents are relevant).

Moreover, while the Insurers have suggested that information related to claims handling is subject to attorney-client privilege or work product doctrine, courts routinely reject insurers' attempts to avoid producing claims-handling materials by asserting privilege over documents and communications created by in-house attorneys or outside counsel while acting in their capacity as claims-handlers.  *See, e.g., Tackett v. State Farm Fire & Cas.*, 558 A.2d 1098, 1105 (Del. Super. Ct. 1988), *aff'd sub nom. Tackett v. State Farm Fire & Cas. Ins. Co.*, 653 A.2d 254 (Del. 1995) (ordering production of insurer claim files notwithstanding that they contained attorney mental impressions); *In re Residential Cap., LLC*, 575 B.R. 29, 35 (Bankr. S.D.N.Y. 2017) ("an insurance company's claim handling activities are generally subject to discovery even if they were performed by an attorney."); *First Aviation Servs, Inc. v. Gulf Ins. Co.*, 205 F.R.D. 65, 69 (D. Conn. 2001) (An insurer "may not insulate itself from discovery by hiring an attorney to conduct ordinary claims investigation."); *Chi. Meat Processors Inc. v. Mid-Century Ins. Co.*, No. 95 C 4277, 1996 WL 172148, at *3 (N.D. Ill. Apr. 10, 1996) ("In the insurance context, to the extent that an attorney acts as a claims adjuster, claims process supervisor, or claims investigation monitor, and not as a legal advisor, the attorney-client privilege does not apply."); *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 662 (S.D. Ind. 1991) ("[m]ost courts have held that documents constituting any part of a factual inquiry into or evaluation of a claim[…] are produced in the ordinary course of an insurer's business and not work product.").

\* \* \* \* \*

Young Conaway Stargatt & Taylor, LLP
The Honorable Laurie Selber Silverstein
November 15, 2021
Page 4

    For the foregoing reasons and as may be further set forth,[4] the Insurers' Motions should be denied, and the Insurers should be further compelled to produce testimony and documents related to their handling of abuse claims.

                Respectfully,


                */s/ Kevin A. Guerke*

                Kevin A. Guerke

---

[4] *See* n. 2.