IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BOY SCOUTS OF AMERICA AND | § | Case No. 20-10343 (LSS) |
| DELAWARE BSA, LLC. et. al.[1] | § | (Jointly Administered) |
| | § | |
| | § | Hearing Date: Dec. 14, 2021, at 10:00 AM ET |
| Debtors. | § | Objection Date: December 7, 2021, at 4:00 PM ET |

# MOTION OF JOHN DOE (WASHINGTON STATE) FOR AN ORDER AUTHORIZING THE LATE FILING OF PROOF OF CLAIM

COMES NOW, the Movant, John Doe[2] (Washington State), by and through his undersigned counsel, and hereby submit this *Motion of John Doe (Washington State) for an Order Authorizing the Late filing of a Proof of Claim* (hereafter "Motion") and respectfully moves this Court under § 105(a) of the BANKRUPTCY CODE and the FEDERAL RULES OF BANKRUPTCY PROCEDURE 3003(c) and 9006(b)(1), for an order authorizing Mr. Doe to late proof of claim. In support of the Motion, Mr. Doe respectfully asserts as follows:

I.     **JURISDICTION AND VENUE**

1.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these cases and this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District for the District of Delaware*, dated February 29, 2012.

---

[1] The Debtors of the Chapter 11 cases, together with the last four digits of the Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] The Movant will disclose his identity consistent with Court protocols intended to keep his identity out of the public record. Moreover, the Movant's counsel may make available certain information to appropriate, interested counsel of record upon a reasonable request.

2. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3. The statutory and legal foundations for the relief sought herein are § 105(a) of the BANKRUPTCY CODE and the FEDERAL RULES OF BANKRUPTCY PROCEDURE 3003(c) and 9006(b)(1) (hereafter "Bankruptcy Rules").

4. The Movant "consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with ARTICLE III of the United States Constitution." DEL. BANKR. L.R. 9013-1 (f).

## II. BACKGROUND

5. On February 18, 2020 (the "Petition Date"), the above-captioned debtors and debtors-in-possession (the "Debtors") filed their chapter 11 bankruptcy petitions with this Court.

6. On May 26, 2020, this Court entered an order that set November 16, 2020, (hereafter "Bar Date") as the bar date for filing proofs of claim in these cases. **DK** 695.

7. The Movant, an adult, is the victim of "Sexual Abuse" in "Scouting," as those terms are described in the *Sexual Abuse Survivor Proof of Claim* form. *Id.* at Exhibit 7.

8. The sexual abuse, occurring around 1973, while the Movant was a minor living with his parents in Longview, Washington. At all relevant times, the Movant was an enrolled Boy Scouts of America member and member of the Cascade Pacific Council, sponsored by First Christian Church in Longview, Washington. A male scoutmaster sexually abused the Movant. As a direct and proximate cause of that sexual abuse, the

Movant suffered, and continues to suffer, injuries and damages.

9. On or about September 28, 2020, the Movant contacted a Washington state law firm (hereafter the "First Law Firm") to pursue his abuse claim against the Debtor.

10. On or about October 7, 2020, the Movant executed a fee agreement with the First Law Firm. The First Law Firm is a solo practitioner with a law practice focusing on plaintiff's personal injury litigation.[3] The fee agreement acknowledged that the First Law Firm would associate with another law firm (hereafter the "Second Law Firm") to represent the Movant.

11. On November 2, 2020, the Second Law Firm, by letter, disengaged from the representation of the Movant. The Movant received no disengagement letter from the First Law Firm, and, as it was the firm that he hired, he expected the First Law Firm to continue to pursue his abuse claim. The Movant believed that he had an ongoing attorney-client relationship until August 2021, when he became concerned that he had not heard from the First Law Firm for some time.

12. On August 31, 2021, First Law Firm confirmed that it never notified the Movant that it was disengaging its representation of the Movant. As a result, the First Law Firm never filed the Movant's Proof of Claim.[4]

13. Movant has no record or recollection of receiving any notice of the Debtors' bankruptcy case or the Bar Date.

---

[3] https://vanlawfirm.com/practice-areas/

[4] On or about September 21, 2021, the Movant filed a complaint for damages in the Superior Court of the State of Washington in and for the County of Thurston against the First Law Firm, among others but not including the Debtors.

### III. RELIEF REQUESTED

14. The Movant respectfully requests the entry of an Order consistent with § 105(a) of the BANKRUPTCY CODE and the FEDERAL RULES OF BANKRUPTCY PROCEDURE 3003(c) and 9006(b)(1), authorizing the filing of a proof of claim and acceptance by the Debtors and its claims agent to accept that filing.

### IV. NOTICE

15. Subject to DEL. BANKR. L. R. 5005-4(c) and 9036-1. The Movant will provide notice of this Motion to: (i) Office of the United States Trustee for the District of Delaware; (ii) counsel to the Debtors; and (iii) all parties entitled to notice of this Motion pursuant to Bankruptcy Rule 2002.

### V. NO PRIOR MOTION

16. The Movant filed no prior motion for the relief sought in this Motion with this Court or any other court.

### VI. THE MOVANT'S FAILURE TO TIMELY A PROOF OF CLAIM WAS THE RESULT OF EXCUSABLE NEGLECT.

17. In a chapter 11 case, if a creditor's proof of claim is late due to "excusable neglect," then under FED. R. BANKR. P. 9006(b)(1) as applied to RULE 3003(c)(3), the court has discretionary authority to allow that creditor to file a POC beyond the claims bar date. Specifically, RULE 9006(b)(1) provides in pertinent part:

> **when an act is required or allowed to be done at or within a specified period by these rules** or by a notice given thereunder or by order of court, **the court for cause shown may at any time in its discretion** (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) **on motion made after the expiration of the specified period permit the act to be done where the failure to act**

**was the result of excusable neglect**.

18. The meaning of excusable neglect as used in RULE 9006(b)(1) was addressed by the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993). The Supreme Court found that "[b]ecause Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable,' . . . the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id*. at 395. To that end, the Supreme Court approved a flexible, four-part analytical[5] Framework to support a finding of excusable neglect: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay (including whether it was within the reasonable control of the movant); and (4) whether the movant acted in good faith. *Id*. (referring to factors considered by the Court of Appeals and District Court, *In re Pioneer Inv. Services Co.*, 943 F. 2d 673, 677 (6th Cir. 1991)). "All [of the *Pioneer*] factors must be considered and balanced; no one factor trumps the others." *Hefta v. Off'l Comm. Of Unsecured Creditors (In re American Classic Voyages Co.)*, 405 F.3d 127, 133 (3rd Cir. 2005).

19. After that, in *Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl Energy, Inc.)*, 188 F.3d 116 (3rd Cir. 1999), the Third Circuit addressed the excusable neglect concept in RULE 9006(b)(1) using the *Pioneer* framework.

---

[5] The *Pioneer* court identified four factors but acknowledged that equity might compel evaluation of other factors.

### A. The Pioneer Factor Analysis

#### i. Prejudice to the Debtor

20. As for the danger of prejudice to the debtor, the *O'Brien* court followed two precepts flowing from *Pioneer*. First, the court held that "prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence." *Id.* at 127; *see also Toscano v. The RSH Liquidating Trust (In re RS Legacy Corp.)*, 577 B.R. 134, 140-41(3rd Cir. 2017) (citing to *O'Brien*).

21. Secondly, the *O'Brien* court discussed considerations addressing prejudice to the debtor: (i) whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated; (ii) whether the payment of the claim would force the return of amounts already paid out under the confirmed plan or affect the distribution to creditors; (iii) whether the payment of the claim would jeopardize the success of the debtor's reorganization; (iv) whether allowance of the claim would adversely impact the debtor; and (v) whether allowance of the claim would open the floodgates to other late claims. *O'Brien,* 188 F.3d at 126-28 (internal citations omitted).

22. None of the prejudice factors identified by *O'Brien* inure to the Debtors' benefit. Specifically:

    a. The Debtors cannot claim surprise at the existence or filing of the Movant's claim as it is one of approximately 95,200 other sexual abuse claims pending against the Debtors. Indeed, it was the prospect of litigating these sexual abuse claims that prompted, in part, the Debtors to seek relief in this Court. *See Debtors' Informational Brief*, at p. 5 ("The BSA cannot continue to address abuse litigation in the tort system on a case-by-case basis."). **DK** 4.

    b. A reorganization plan is not yet confirmed. Hence, the prospect that Movant's claim will be the sole cause of unwinding prior

transactions, payments, distributions, or orders is implausible.

      c.      The payment of the Movant's claim, standing alone, cannot jeopardize the success of the Debtors' reorganization. Moreover, the Debtors and others can still defend against the merits of Movant's claim.

      d.      The fact that the Debtor did not account for the Movant's claim is insufficient to show prejudice under *Pioneer*.

      e.      The Movant's claim will not open the flood gates to other late claims because his claim is consistent with other abuse claims, i.e., it does not represent a new class or type of claim. Nor is there any evidence that the Movant's claim will prompt any mass, late-filed proof of claims.[6] The facts underlying the Movant's late filing are unique to him.[7]

In sum, case law does not support a finding under *Pioneer*, and its progeny, that these Debtors are prejudiced by the late filing of the Movant's proof of claim.

      ii.      *Length of the Delay and Impact on Judicial Proceedings*

23.      The length of the delay and the impact of that delay on judicial proceedings necessarily requires the court to examine the parties' conduct causing delay relative to the stage of the bankruptcy process itself. *Pioneer,* 507 U.S. at 388. Hence, even though the actual time of delay is notable, the more significant concern is how that delay derailed, if at all, the reorganization process. *O'Brien*, 188 F.3d at 130. From that perspective, the Movant's delay is inconsequential. *In re EFH Corp.*, 522 B.R. 520, 531 (Bankr. D. Del. 2015). The claims bar date was almost one year ago. That amount of time notwithstanding, the Movant's late filing did not and will not delay or otherwise impact the timeliness of the

---

[6] The Movant and his current personal injury counsel are unaware of similar sexual abuse claims arising out of the First Law Firm's representation.

[7] As of the time of filing, it is the third excusable neglect application seeking authorization to file or accept a late proof of claim. Of all claims filed, this represents approximately 0.003151260504202% of all sexual abuse claims filed against the Debtors.

Debtors' reorganization or this judicial proceeding. This conclusion is proper because the Debtors' case, at this time, has yet to reach consequential reorganization process markers – no plan is confirmed, voting not yet undertaken, creditor payments have not been made, and discharge not yet granted. The Movant's delay is not a material factor bearing on the progress of the Debtors' bankruptcy case.

> iii.    *Reason for the Delay and Movant's Good Faith*

24.    The Movant's proof of claim was late because the personal injury lawyer he engaged did not file a claim. The Movant has no prior litigation experience. In addition, he has no previous bankruptcy experience. From this perspective, the legal concepts of a claims bar date or proof of claim are foreign to him. Hence, he should not be charged with any intent to incur delay especially, where, as here, he lacked the knowledge to appreciate the bankruptcy process.

25.    Despite the Movant's impeccability, the *Pioneer* court nonetheless re-affirmed that clients remain responsible for their lawyer's action or inaction. Upon information and belief, the First Law Firm has no or little prior bankruptcy experience. That is significant here because the Movant's claim is more than a personal injury action. The addition of the Debtors' bankruptcy to the Movant's claim added another layer of legal process and procedure atypical of personal injury cases. At worst, the First Law Firm failed to recognize the impact of bankruptcy on the prosecution of the Movant's personal injury action. At best, the First Law Firm was unable to grasp that which they did not understand. No matter how it happened, the failure to timely file the Movant's proof of claim was neglect and absent any indicia of bad intent. More importantly, this

is the kind of "carelessness" constituting excusable neglect that *O'Brien* contemplated. *O'Brien*, 188 F.3d at 125.

26. The Movant always acted in good faith. He retained a lawyer. He had every right to believe that the lawyer would protect his interests. That lawyer did not. When the Movant understood the lawyer's dereliction, he secured new personal injury counsel and filed this Motion. In sum, the Movant always acted in good faith.

WHEREFORE, for the foregoing reasons, the Movant respectfully requests that the Court enter an order permitting the Movant to file a proof of claim, deeming such claim to be timely filed, and granting such other and further relief as the Court deems just and proper.

Dated: November 15, 2021
     Wilmington, Delaware

**CONAWAY LEGAL LLC**

*/s/ Bernard G. Conaway*
Bernard G. Conaway, Esquire (DE 2856)
1007 North Orange Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 428-9350
Facsimile: (844) 364-0137
Email: bgc@conaway-legal.com

*Counsel for the Movant John Doe (Washington State)*