**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Ref. D.I. 7118, 7119, 7122** |

**STATUS REPORT REGARDING DEBTORS' EMERGENCY MOTION**
**(I) ENFORCING THE SOLICITATION PROCEDURES ORDER,**
**(II) ENFORCING SECTION 1103 OF THE BANKRUPTCY CODE AGAINST THE**
**TORT CLAIMANTS' COMMITTEE, AND (III) GRANTING RELATED RELIEF**

1.      The Debtors file this status report (this "Report") to apprise the Court of developments since the hearing on Friday, November 12 in connection with the *Debtors' Emergency Motion (I) Enforcing the Solicitation Procedures Order, (II) Enforcing Section 1103 of the Bankruptcy Code Against the Tort Claimants' Committee, and (III) Granting Related Relief* [D.I. 7118] (the "Motion").[2]

2.      As instructed by the Court, the parties continued to discuss the form of order granting the Motion following the conclusion of the November 12 hearing.  The Debtors, the TCC, the Coalition, and certain other parties have agreed on the terms of an interim order providing certain specified relief in accordance with the Motion (the "Proposed Interim Order").  Because the investigation of this matter is ongoing, entry of the Proposed Interim Order is without prejudice to requests for further and other applicable legal or equitable remedies for, or other relief in connection with, the TCC's actions.  The parties intend to present the Proposed Interim Order at

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

the November 17 hearing.  A copy of the Proposed Interim Order, which was previously provided to the Court, is attached hereto as **Exhibit 1**, and a redline comparison of the Proposed Interim Order against the original form of order appended to the Motion is attached hereto as **Exhibit 2**.

3.       As the Court is aware, the Debtors issued written discovery requests to the TCC on Monday, November 8, and the TCC provided written responses and produced certain documents in the evening on Thursday, November 11.  These responses and documents raise significant concerns with respect to the events surrounding the TCC/Kosnoff Communications, including certain inconsistencies between the TCC's representations at the November 10 hearing and the November 12 hearing:

- **TCC Initiated Sending Email Without Explanation.**  It is evident that the idea of transmitting the TCC/Kosnoff Communications originated with Mr. John Lucas—a copy of the communication from Mr. Lucas is attached hereto as **Exhibit 3**.[3]  *See* Email from Mr. Lucas to Mr. Kosnoff (Nov. 5, 2021) ("Want us to help you resend your letter?"; "Send me your letter.  Also, send me what you want stated in the email.").  There is still no explanation for why the TCC would offer to send the communications of an individual attorney to his purported clients when he was perfectly capable of making the same distribution from his own email account—and apparently did, considering the references by Mr. Lucas to "resending" the letter.

- **TCC Counsel Reviewed and Edited TCC/Kosnoff Email.**  During the November 12 hearing, in response to the Court's question about what Debra Grassgreen meant by her assertion that the TCC/Kosnoff Communications were "forwarded from [the TCC] email" but were not "signed by" the TCC, Ms. Grassgreen stated that the TCC/Kosnoff Communications were "a transmission and I think there's a difference between us transmitting someone else's statement.  If one says to me, would you forward the email that so and so sent you, doesn't mean that I've adopted or endorsed what's in the email; it means that I've forwarded it."[4]  *See* Ex. 4, Nov. 12, 2021 Hr'g Tr. at 31:5-8.  Mr. James

---

[3]    The TCC has agreed that the exhibits attached to this Report may be de-designated as highly confidential materials under the *Confidentiality and Protective Order* [D.I. 799] such that the Debtors are not required to file these documents under seal.

[4]    Contrary to the TCC's statements that it did not endorse Mr. Kosnoff's Twitter feed, the Kosnoff Email, which the TCC sent from its official email address after review and comment by Mr. Lucas, invited recipients of the TCC/Kosnoff Email to review Mr. Kosnoff's Twitter feed.  *See* TCC/Kosnoff Email from BSASurvivors@pszjlaw.com, Warner Decl. [D.I. 7119], Ex. 3 ("Please stay current on what is happening by following me on Twitter @sexabuseattys.").  Clearly, this was an endorsement of the Kosnoff Email and its contents.

Stang made a similar assertion at the November 10 hearing: "MR. STANG: This motion concerns one email that was written by Mr. Kosnoff. **We had no participation in the writing of it**." *See* Ex. 5, Nov. 10, 2021 Hr'g Tr. at 17:25-18:1 (emphasis added).

The TCC continues to characterize the distribution of the TCC/Kosnoff Communications as a "mistake," including in its most recent status report filed on November 15. These statements are inconsistent with the communications that the TCC produced to the Debtors, which clearly show that Mr. Kosnoff sought input from the TCC and Mr. Lucas reviewed and revised the TCC/Kosnoff Communications prior to distribution. *See* Ex. 6, Email from Mr. Lucas to Mr. Timothy Kosnoff (Nov. 5, 2021) ("Received; will prepare asap."); Email from Mr. Lucas to Mr. Kosnoff (Nov. 5, 2021) ("I only made word reject in bold and underscored. Thx. The email and your letter will go out tonight. Thank you.").

- **TCC Counsel Failed to Take Immediate Corrective Action.** At the November 10 Hearing, Mr. Stang stated that the TCC, immediately upon learning that the TCC/Kosnoff Communication had been distributed to non-Kosnoff clients, took steps to send a follow-up email to the recipients of the TCC/Kosnoff Communications explaining the error in distribution. *See* Ex. 5, Nov. 10, 2021 Hr'g Tr. 21:25-22:7 ("MR. STANG: As soon as I was able to determine that it had gone out to this other list, and I learned that from an attorney who called me and said, hey, my clients got this communication, what is going on, I promptly communicated with Mr. Lucas, and he with our staff, to issue an email to that TCC list saying it was sent to them by mistake, which it was, it was not pursuant to a direction from an attorney in my office, and that it should be disregarded."). The Debtors are concerned about this characterization of the facts. Mr. Stang and Mr. Lucas were apprised of the distribution of the TCC/Kosnoff Communications by David Molton, counsel to the Coalition, who had himself received the TCC/Kosnoff Communications, including, for the first time, on November 6. Mr. Stang received multiple communications from Mr. Molton on November 6. No actions were taken by anyone PSZJ to send a follow-up email until November 7.

- **TCC Immediately Shared Responses to the TCC/Kosnoff Communications with Kosnoff.** From the production, it appears that Mr. Steven Golden, an attorney at PSZJ, was instructed by Mr. Lucas to forward more than 75 survivor responses to the TCC/Kosnoff Communications directly to Mr. Kosnoff on November 6. *See* Ex. 7, Email from Mr. Lucas to Mr. Golden (Nov. 6, 2021) ("Please send Tim the emails received in response to the mass email that went out yesterday."); Ex. 8, Email from Mr. Golden to Mr. Kosnoff (Nov. 6, 2021). The Debtors have requested that the TCC produce these communications, as they are directly responsive to the Debtors' prior discovery requests. Until these documents are received, the Debtors and other interested parties do not have any way of determining whether it was appropriate to forward these communications to Mr. Kosnoff. At a minimum, it does not appear that there was any review of these responses, and there are significant confidentiality and privilege concerns with the TCC's sharing of these materials with Mr. Kosnoff and future offer of "immediate forwarding or should I send to you in a batch? Happy to do either; whichever is most convenient for you." *See* Ex. 7.

- **<u>No Pre-Email Evidence Concerning Intended Distribution List.</u>**  Nothing in the TCC's production supports the TCC's assertion that instructions were given to send the TCC/Kosnoff Communications only to the Kosnoff client list, except for after-the-fact communications on November 7, well after the direction to send the TCC/Kosnoff Communications was purportedly given and well after the TCC was aware of the confusion it had caused survivors and the concerns raised by other parties.  Indeed, Mr. Lucas refers to the communication as a "mass email" in an email he sent to Mr. Golden on November 6.  As noted above, the Debtors are waiting for additional discovery that may shed light on this issue.

- **<u>No Diligence to Confirm Kosnoff Email List.</u>**  Based on an interrogatory response from the TCC, the Debtors understand that before sending the TCC/Kosnoff Communications, the TCC conducted no diligence concerning the accuracy of Mr. Kosnoff's list of purported clients.  In comparison, the Debtors' Solicitation Agent, Omni Agent Solutions, did not include voting abuse survivors on attorneys' master ballots without evidence of such attorneys' representation of a claimant (through a claimant's indication on a proof of claim and/or evidence of an attorney/client relationship (through an engagement letter or otherwise)).

- **<u>No Evidence of Discussions with Ethics Counsel.</u>**  During the November 12 hearing, Ms. Grassgreen stated that PSZJ transmitted the TCC/Kosnoff Communications from the official TCC email address only after consultation with ethics counsel, an excerpt of which is attached hereto as **<u>Exhibit 4</u>**.  Nov. 12, 2021 Hr'g Tr. at 20:3-5 ("MS. GRASSGREEN: I understand that, Your Honor.  I will tell you we did it on advice of ethics counsel.  We previously (indiscernible) TCC notices.").  However, there is nothing in the TCC's production to support the assertion that ethics counsel was consulted with respect to the transmittal of the TCC/Kosnoff Communications.  The Debtors have requested responsive documents.

4.    In light of these significant issues raised by the TCC's initial production, the Debtors immediately reached out to the TCC to identify deficiencies in the TCC's responses and production and served supplemental document requests and interrogatories.  The parties met and conferred on the matter, and the parties' agreement to consent to the entry of the Proposed Interim Order is subject to the following conditions, which were agreed to by the TCC:

(a)    The parties will proceed with the November 17 hearing on this matter as a status conference before the Court.

    (b)    The TCC will comply with the Debtors' November 8 written discovery requests, including remedying certain deficiencies identified by the Debtors.[5]

    (c)    The TCC will comply with the Debtors' additional written discovery requests on an expedited basis.  (The TCC has agreed to produce all responsive documents on a rolling basis by Friday, November 19.  As of this filing, the Debtors have not received any additional documents.)

    (d)    Mr. Stang, Mr. Lucas, Mr. Golden, and Mr. Hung Phan will appear for depositions at the times specified by the Debtors or such other times as the parties may mutually agree.  (The Debtors have proposed dates but they have not yet been confirmed by the TCC.)

5.    The Debtors are continuing to analyze the voting results and how such votes may have been influenced by the improper distribution of the TCC/Kosnoff Communications.  At this time, though the data is not complete, preliminary results indicate there may be reason for concern.  Additionally, counsel to the Coalition is still gathering votes, which have not yet been tendered to the Solicitation Agent.  The Coalition may provide a further update with respect to those votes.

6.    The Debtors' agreement with the TCC on the Proposed Interim Order should not be interpreted as providing finality on this matter.  The Debtors are in the initial stages of their investigation into the distribution of the TCC/Kosnoff Communications from the official TCC email address.  The full results of the TCC's unfortunate actions remain unknown and may prove to be far-reaching and detrimental to the Debtors and their creditors, including survivors, who are entitled to a fair and equitable process.

7.    Depending on the results of the investigation, the Debtors are exploring the possibility of seeking further remedies for the damage caused by the improper distribution of the TCC/Kosnoff Communications, including:

---

[5]    In addition to the documents referenced above, the TCC has agreed to produce all documents and communications between the TCC and Timothy Kosnoff and/or Kosnoff Law – subject to a privilege log for certain periods – without a limitation on date and all responsive text messages and communications between the parties involved, including between Mr. Stang and Mr. Lucas, as set forth in the Debtors' prior discovery requests.

(a)     Sanctioning the TCC through (a) a prohibition on PSZJ's ability to seek payment of its fees and expenses from the Debtors and their estates with respect to any of the firm's fees and expenses incurred related to the distribution of the TCC/Kosnoff Communications and the Debtors' subsequent enforcement of the Solicitation Procedures Order, and (b) a prospective reduction of the TCC's subsequent fees in the amount the Debtors' and other estate fiduciaries' costs and expenses have incurred and continue to incur going forward in investigating the TCC's actions with respect to the TCC/Kosnoff Communications and enforcing the Solicitation Procedures Order against the TCC;

(b)     Relief that may be necessary to address votes that may have been improperly influenced by the TCC/Kosnoff Communications; and

(c)     Any other applicable legal or equitable remedies for, or other relief in connection with, the TCC's actions.

*[Remainder of Page Intentionally Left Blank]*

Dated:  November 16, 2021
        Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Paige N. Topper*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@morrisnichols.com
        aremming@ morrisnichols.com
        ptopper@morrisnichols.com

– and –

**WHITE & CASE LLP**
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice)*
Blair M. Warner (admitted *pro hac vice)*
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email: mandolina@whitecase.com
        mlinder@whitecase.com
        laura.baccash@whitecase.com
        blair.warner@whitecase.com

ATTORNEYS FOR THE DEBTORS AND
DEBTORS IN POSSESSION