# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Ref. D.I. 7118, 7119, 7120, 7122 |

**SUPPLEMENT TO JOINDER OF THE COALITION OF ABUSED SCOUTS FOR JUSTICE TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) ENFORCING THE SOLICITATION PROCEDURES ORDER, (II) ENFORCING SECTION 1103 OF THE BANKRUPTCY CODE AGAINST THE TORT CLAIMANTS' COMMITTEE, AND (III) GRANTING RELATED RELIEF**

The Coalition of Abused Scouts for Justice (the "**Coalition**"), by and through its undersigned counsel, hereby submits this Supplement to its Joinder [D.I. 7120][2] (the "**Supplemental Joinder**") in support of the *Debtors' Emergency Motion for Entry of an Order (I) Enforcing the Solicitation Procedures Order, (II) Enforcing Section 1103 of the Bankruptcy Code Against the Tort Claimants' Committee, and (III) Granting Related Relief* [D.I. 7118] (the "**Motion**").[3] In support of the Motion, the Joinder and this Supplemental Joinder, the Coalition respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] This Supplemental Joinder was originally filed under seal based upon the designation of pertinent exhibits by the TCC as Highly Confidential, however the TCC has agreed to de-designate and this is now being filed as public.

[3] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

{00228337-2}

**SUPPLEMENT TO JOINDER**

1. Discovery regarding the Debtors' Motion is ongoing and needs to be completed. The Coalition hereby files this Supplemental Joinder to (a) apprise the Court of newly discovered evidence and (b) affirmatively advise the Court of the Coalition's developing consideration and evaluation of this situation.  Indeed, the Coalition believes that this Court will need to consider both (a) how to lessen the blow that has been dealt by an estate fiduciary to the voting process in these cases, and (b) what punishment is appropriate for the bad actors in this situation—both for the purposes of these cases and more broadly for the chapter 11 process across the country.

2. **First, the TCC's counsel initiated the idea to distribute the Kosnoff letter and email with the TCC's imprimatur**.

3. On Friday, November 5, 2021, Mr. John Lucas sent the following email to Mr. Kosnoff: "*Want us to help you resend your letter*?"  *See* Ex. A (emphasis added).

4. Mr. Kosnoff had already sent the letter.  On October 6, 2021, Mr. Van Arsdale provided an AIS email list to Mr. Kosnoff.  *See* Ex. B.  Hours later, Mr. Kosnoff forward this list to Mr. Kennedy, a member of the TCC.  *Id.*  Mr. Kennedy apparently sent the AIS list to Mr. Lucas or someone else at Pachulski Stang Ziehl & Jones.  *Id.*

5. In response to Mr. Lucas' offer, Mr. Kosnoff wrote: "Yes!  Send it.  Can you append it to your two dashboards?  Is there more I should add to the letter. [sic]  I think it's imperative to get it out immediately."  *See* Ex. C.

6. The intent of the TCC's counsel, therefore, could **not** have been merely to distribute Mr. Kosnoff's October 19th letter to his clients because this had already happened. More discovery is needed to understand the TCC's counsel's "intent," but the Coalition has grave concerns as to the motivation of this re-distribution.

7. **Second**, the TCC's counsel reviewed and edited the Kosnoff communication *before* **it was sent**. *See* Ex. D.

8. At the November 12th hearing, in response to this Court's question about what the TCC's counsel meant by the assertion that the Kosnoff communication was "forwarded from our email address" but was not "signed by us," counsel for the TCC stated:

> [the Kosnoff communication] was a transmission and I think there's a difference between us transmitting someone else's statement. If one says to me, would you forward the email that so and so sent you, doesn't mean that I've adopted or endorsed what's in the email; it means that I've forwarded it.

*See* Nov. 12, 2021 Hr'g Tr. at 30:24-31:8.

9. At the November 10th hearing, Mr. Stang stated: "This motion concerns one email that was written by Mr. Kosnoff. We had *no participation* in the writing of it." Nov. 10, 2021 Hr'g Tr. at 17:25-18:1 (emphasis added).

10. But that is **not** what the evidence shows. On Friday, November 5, 2021, Mr. Kosnoff sent Mr. Lucas the letter and first draft of the email. *See* Ex. D. Mr. Lucas responded: "Received; will prepare asap." *Id.* Mr. Kosnoff wrote back: "Ok to send. I don't need to see your edits. I'm certain they are excellent." *Id.* And, on Saturday, November 6, 2021, Mr. Lucas wrote to Mr. Kosnoff: "*I only made word reject in bold and underscored. Thx. The email and your letter will go out tonight. Thank you.*" *Id.* (emphasis added).

11. Mr. Lucas changed the word "reject," but he did **not** edit the following statement in Mr. Kosnoff's draft: "It was wholly improper and possibly illegal for them to solicit your vote on a ballot which is supposed to be neutral. Instead [sic] they used deceit to spew their patently false and misleading statements. There is a simple word for why lawyers do things like that: greed." *Id.* This was not a "re-tweet." This was a premeditated hit job.

12.     **Third**, **the TCC was asked to stop communicating with represented survivors before this incident**.

13.     Prior to November 1, 2021, Coalition lawyers had been receiving communications from their clients who were confused by conflicting messages sent by the TCC.

14.     In response, on November 1, 2021, five days *before* the TCC sent the Kosnoff email and letter to thousands of survivors, the Coalition sent the TCC a letter demanding that the TCC "not directly speak to Survivors who are represented by counsel without consent" and "not make or encourage communication to such parties through the acts of non-attorneys." *See* Ex. E (citing to Model R. Prof. Conduct 4.2).

15.     In response, on November 4, 2021, two days *before* the TCC sent the Kosnoff email and letter to thousands of survivors, the TCC responded and argued that its communications are not limited to "providing the TCC's solicitation letter to the TCC's constituency, making statements at hearings, and disseminating publicly available information." *See* Ex. F (citing *In re Century Glove, Inc.*, 860 F.2d 94 (3d Cir. 1988)).

16.     On November 5, 2021, and with full knowledge of the Coalition's position, the TCC's counsel *volunteered* to send the Kosnoff letter, which letter was then sent to survivors represented by Coalition-affiliated law firms. The TCC's counsel was specifically advised not to do what they did before they sent the Kosnoff email and letter. And yet they did it anyway.

17.     **Fourth, there is no evidence yet that the TCC, as an official committee, voted to approve this course of action**.

18.     The members of the TCC are statutorily appointed fiduciaries. Official actions should be carefully vetted and authorized by the committee members themselves—either

generally or specifically. The TCC's actions have meaning, and survivors may put undue importance on the statements and positions that the TCC takes.

19.     Similarly, advisors to an official committee have an important role to use their knowledge and experience to educate the committee members, many of whom are often new to the bankruptcy arena. They must exercise caution before acting, and diligence before accepting information given to them as fact. They must make sure that every official communication they make is done with the utmost care and consideration. Discovery is needed to find out if this diligence, care, and caution were undertaken.

20.     **Finally, it is obvious that the conduct at issue was intended to disrupt the vote on the Debtors' plan**. On November 4, 2021, the day before the TCC sent out the subject email and letter, during a TCC Town Hall event, the following was posted on the message board at 8:58PM: "Remember anonymous is on your side. We have your backs and are planning a massive disruption this coming week to certain platforms. Stay tuned." What followed is set forth above.

## CONSIDERATION OF ADDITIONAL REMEDIES

21.     Discovery is still ongoing. And the full extent of the damage caused to the voting process by the TCC's counsel is not yet known—and, we all must acknowledge, may never be known given the potential of forwarding the email and the impossibility of tracking such forwarding. In light of this, the Coalition reserves the right to seek additional relief regarding the voting process, including the extension of the voting deadline, designation of "no" votes, and other corrective communications.

22.     Further, the conduct here cannot go unpunished or parties that are intent on causing further and other disruptions in these cases will be emboldened to take further action,

and parties in future cases must be deterred to engage in such reckless behavior. Indeed, and shockingly, the TCC's counsel has not shown adequate remorse for their conduct. To date, the TCC's counsel has merely acknowledged that they sent the Kosnoff communication to the wrong list-serve and that this clerical error was their only "mistake." The mere fact that the TCC's counsel is unable to recognize that their actions were wrong and inappropriate is cause for grave concern. Sanctions may be appropriate in this case, including disgorgement of professional fees, further limitations on the right of the TCC and its counsel to take actions in these cases, and potential disqualification.

WHEREFORE, the Coalition respectfully requests that the Court enter an order granting the Motion and granting the Coalition such other and further relief as the Court deems just and proper.

Dated: November 15, 2021　　　　　　　　　MONZACK MERSKY AND BROWDER, P.A.
Wilmington, Delaware

　　　　　　　　　　　　　　　　　　　　　/s/ Rachel B. Mersky
　　　　　　　　　　　　　　　　　　　　　(DE No. 2049)
　　　　　　　　　　　　　　　　　　　　　1201 North Orange Street
　　　　　　　　　　　　　　　　　　　　　Suite 400
　　　　　　　　　　　　　　　　　　　　　Wilmington, Delaware 19801
　　　　　　　　　　　　　　　　　　　　　Telephone:　(302) 656-8162
　　　　　　　　　　　　　　　　　　　　　Facsimile:　(302) 656-2769
　　　　　　　　　　　　　　　　　　　　　E-mail:　　 RMersky@Monlaw.com

　　　　　　　　　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　　　　　　　　BROWN RUDNICK LLP
　　　　　　　　　　　　　　　　　　　　　David J. Molton, Esq. (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　Eric R. Goodman, Esq. (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　Seven Times Square
　　　　　　　　　　　　　　　　　　　　　New York, NY 10036
　　　　　　　　　　　　　　　　　　　　　Telephone: (212) 209-4800
　　　　　　　　　　　　　　　　　　　　　E-mail: DMolton@BrownRudnick.com
　　　　　　　　　　　　　　　　　　　　　E-mail:  EGoodman@BrownRudnick.com

　　　　　　　　　　　　　　　　　　　　　and

Sunni P. Beville, Esq. (admitted *pro hac vice*)
Tristan G. Axelrod, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
E-mail: SBeville@BrownRudnick.com
E-mail: TAxelrod@BrownRudnick.com

*Counsel to the Coalition of Abused Scouts for Justice*