

O'Melveny & Myers LLP  
Times Square Tower  
7 Times Square  
New York, NY 10036-6537

T: +1 212 326 2000  
F: +1 212 326 2061  
omm.com

File Number:

November 16, 2021

**Tancred Schiavoni**  
D: +1 212 326 2267  
tschiavoni@omm.com

Chief Judge Laurie Selber Silverstein  
United States Bankruptcy Court, District of Delaware  
824 North Market Street, 6th Floor  
Wilmington, DE 19801

**Re:    Boy Scouts of America, 20-10343 (LSS) (D. Del.)—Motion to Compel Cradle of Liberty Council**

Dear Judge Silverstein:

      Century respectfully requests that this Court compel Cradle of Liberty Council ("**COLC**") to produce documents responsive to the subpoena served on October 8, 2021.

## PRELIMINARY STATEMENT

      BSA commenced its bankruptcy case to resolve all abuse claim. Many of those claims also against BSA also name at least a Local Council and/or chartered organization. While none of the Local Councils have filed for bankruptcy, under BSA's Plan, each of the Local Councils will be relieved of all liability for Abuse Claims. In exchange for a contribution to the Settlement Trust, they will be treated as Protected Parties and stand to benefit from the third-party release and exculpation provisions. Generally these type provisions will not be approved without specific findings that the released party substantially contributed to the reorganization and the releases are critical to the successful reorganization. The Local Councils, however, have yet to produce any documents showing that the treatment under the Plan is appropriate or that they satisfy the "substantial contribution" standard.

      Century served subpoenas on 25 of the Local Councils with targeted document requests that directly relate to these key confirmation issues, namely, the third-party releases and the Local Councils' contribution to the Settlement Trust. There were over 40 requests and COLC objected to producing documents responsive to many of the requests. The responses argue that the requests are unduly burdensome, not related to any matter that might come before the Bankruptcy Court in connection with the Plan, or direct Century to request the documents from another party. The documents that Century requests are relevant to its analysis of potential confirmation objections and are focused on the exact information that COLC, as a Protected Party, should show at the confirmation hearing to prove that it is entitled to the relief provided under the Plan. And, even if there is another party with the requested documents, COLC should comply and produce all responsive documents.

The Court should order COLC to produce all documents responsive to the subpoena served on October 8, 2021 and provide a detailed log of any documents withheld as privileged and the basis for such privilege.

## STATEMENT OF FACTS

### *The BSA bankruptcy*

The Boy Scouts of America and Delaware BSA, LLC (collectively "**BSA**") commenced chapter 11 proceedings on February 18, 2020, focused on resolving all abuse claims against BSA. When the cases were filed, BSA was a defendant in 275 cases asserting abuse-related claims against BSA with approximately 1,400 other potential claims. Disclosure Statement, Art. IV.A. [D.I. 6445]. With the entry of an order approving a form of proof of claim that required no collaborating evidence and promised anonymity, the number of abuse claims quickly increased from 275 to more than 82,000.[1] *Id.*, Art. V.N.

### *BSA and the Local Councils*

BSA was formed as a non-profit corporation and operates on a national level. Local Councils are separately organized to implementing Scouting programs within their geographical area. *See* Disclosure Statement, Art. III.A. There are approximately 250 Local Councils and each Local Council is separately operated and legally independent from BSA, the national council. Disclosure Statement, Art. III.A.3.a. Each Local Council has its own board, officers and employees, and owns property and assets in its own name. *Id.*

The only legal entity to file for bankruptcy is BSA; none of the Local Councils have filed for bankruptcy.

### *The extraordinary relief sought by the Local Councils under the Plan of Reorganization*

On September 30, 2021, BSA filed the Fifth Amended Plan of Reorganization. [D.I. 6443]. Under the terms of the Plan, all Abuse Claims are transferred to the Settlement Trust. Plan, Art. X.F. Once transferred to the Settlement Trust, "the sole recourse of any holder of an Abuse Claim against a Protected Party on account of such Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Protected Party or any property or interest in property of any Protected Party." Plan, Art. X.F.1. Under the Plan, Protected Parties include the Debtors and the Local Councils. *See* Plan, Art. I.A.207.

---

[1] These claims resulted from advertising campaigns, which were found contained "false and misleading" statements. *See Supplemental Order* [D.I. 1331], ¶ C (finding advertisements directed to abuse claimants were "false and misleading and shall be removed, as applicable, from the Law Firm Advertising").

The Local Councils seek approval for broad third-party releases and exculpation provisions set forth in Article X.J and X.K of the Plan, respectively. If approved, all Local Councils will be discharged of any liability relating to the Abuse Claims. *See* Plan, Art. X.J, X.K.

### *The fact intensive nature of the relief sought by the Local Councils*

For any third party that stands to benefit from a release under the Plan, there needs to be a showing that such party has made a substantial contribution to the Settlement Trust or to the reorganization efforts. *See In re Master Mortgage Investment Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994); *In re Zenith Electronics Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999). And even where there is a substantial contribution, non-debtor third-party releases should only be approved in extraordinary circumstances. *See In re Continental Airlines, Inc.*, 203 F.3d 203, 214 (3d Cir. 2000). Approval requires *specific* factual findings supporting the releases for each released party. *Id.*

The Plan Proponents also seek a host of factual findings not required by the Bankruptcy Code, including that the Plan Document are binding on all parties, the means for allowing and valuing claims against COLC are reasonable and appropriate, the claim amount is allowed under the TDPs, and the Plan was promulgated in good faith. *See* Plan, Art. IX.A.3.q-t.

### *The claims asserted against COLC and the contribution offered to release them*

At least 599 of the claims filed in the bankruptcy case asserted claims against COLC. *See* Disclosure Statement, <u>Exhibit F</u>. The Disclosure Statement includes the proposed contribution amount for each Local Council. COLC is expected to make a total contributions of $6,806,713. *See id.*, <u>Exhibit C</u>. In exchange for that contribution, COLC will be a Protected Party under the Plan and benefit from the third party releases. Many of the requests go directly to information COLC will rely on to prove a substantial contribution to the Plan and satisfy the burden for third party releases.

### *The requests for production*

On October 8, 2021, Century served a subpoena on COLC in an attempt to narrow the issues for the confirmation hearing.[2] The requests for production sought six categories of documents directly relevant to confirmation and the relief sought by COLC: (i) the board/committee minutes that reflect COLC's information about BSA's bankruptcy and the submission made to the board/committee about the relief sought in the bankruptcy, RFP ¶¶ 1-13, (ii) COLC's contribution to the Settlement Trust, RFP ¶¶ 14-16, 18-19, 28, (iii) the Abuse Claims for which third party releases are sought and analysis related thereto, RFP ¶¶ 17, 25, 27, 30-33, 41-44, (iv) COLC's agreements with the Chartered Organizations, RFP ¶¶ 20-26, and membership information, RFP ¶¶ 27-35, (v) certain information about COLC's assets and insurance, RFP ¶¶ 36-40, and (vi) information related to feasibility of the Plan, RFP ¶ 27.

---

[2] Indelicato Decl. Ex. 1, COLC Subpoena, dated October 8, 2021 and Certificate of Service.

Through each of these categories, Century seeks information necessary to determine whether the Plan's treatment of claims is appropriate, the findings sought are correct, and the Plan can be confirmed.

### *The blanket objections to the requests asserted by COLC*

COLC has failed to properly respond to the requests or to set forth good reasons for not doing so.[3] COLC's responses are deficient, with COLC objecting to producing any documents or directing Century to another party for production of responsive documents in response to the bulk of the requests. *See* Indelicato Decl. Ex. 2, COLC Response to RFP Nos. 13, 14, 17-19, 27, 25-2, 28, 30-32, 34, 37, 42, 44 (general objection to producing any documents); 33, 38-40 (directing Century to a third party for production of documents). For many other requests, COLC states that it has no responsive documents and objects to the requests. *See* Indelicato Decl. Ex. 2, COLC Response to RFP Nos. 8, 9, 10, 11, 12, 20, 22, 36, 41, 43.

COLC also includes a general objection to any requests "to the extent that they seek information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the common interest or joint defense doctrine, mediation privilege, or any other applicable rule, doctrine, privilege or immunity or protection from discovery." *See* Indelicato Decl. Ex. 2, COLC Response, General Objection No. 3.

### *The Plan Proponents promised cooperation in seeking an expedited discovery schedule*

In moving to set a schedule, the Plan Proponents advocated what they characterized as super aggressive schedule culminating in a proposed January 24, 2022 commencement for a confirmation hearing.[4]

During the Disclosure Statement hearing, many parties expressed their concern with such a tight schedule. The Plan Proponents, however, pushed the Court to set the earliest possible date for the confirmation hearing. In setting the schedule it did, the Court noted that "the hallmark is parties cooperating and getting documents and other discovery out."[5]

### *Efforts to meet and confer proved unsuccessful*

On November 7, 2021, Century sent a letter to COLC identifying in detail the deficiencies in their response, explaining that COLC needs to cooperate, and requesting that its objections be

---

[3] *See generally* Indelicato Decl. Ex. 2, COLC Responses & Objections, dated October 18, 2021 ("**COLC Response**").

[4] *See* Indelicato Decl. Ex. 3, Sept. 23, 2021 Hr'g Tr. at 202:1-203:10 (BSA recognized that the proposed schedule was not "overly generous with the calendar" but advocated for an aggressive schedule because "timing here is so important" and "the debtors are running out of cash."); Indelicato Decl. Ex. 4, Sept. 28, 2021 Hr'g Tr. at 180:2-12 (BSA asked the Court to set a hearing date for the "earliest possible date" and agreed to "do everything we can on our end to expedite matters").

[5] Indelicato Decl. Ex. 3, Sept. 23, 2021 Hr'g Tr. at 208:1–2.

withdrawn and that it cure any deficiencies promptly.[6] COLC responded on November 10, 2021.[7] The parties had a meet and confer call on November 12, 2021. On November 16, 2021, COLC sent a follow up letter with supplemental information in response to Century's requests. However, COLC has not withdrawn its objections and continues to direct Century to other parties for the bulk of the material sought by Century's subpoena.

## ARGUMENT

I. **COLC Bears the Burden of Proof on Fact Intensive Issues for the Relief it Seeks**

Determining whether to approve third party releases is a fact intensive issue that requires *specific* information about the claims and about the proposed contribution. The Third Circuit has identified the "hallmarks" of permissible third party releases—(1) fairness, (2) necessity to the reorganization, and (3) *specific factual findings* to support these conclusion. *In re Continental Airlines*, 203 F.3d 203, 217 (3d Cir. 2000). While the Third Circuit has not formally adopted the five-factor test initially articulated in *Master Mortgage*, bankruptcy courts generally will use those factors when analyzing whether third-party releases are appropriate. *See In re Master Mortgage Investment Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994) (outlining a five-factor test for determining whether to approve third-party releases); *see also In re Zenith Electronics Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999) (adopting the *Master Mortgage* factors). Under the *Master Mortgage* test, courts consider the following factors:

(1) There is an identity of interest between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate.

(2) The non-debtor has contributed substantial assets to the reorganization.

(3) The injunction is essential to reorganization and, without it, there is little likelihood of success.

(4) A substantial majority of the creditors agree to such injunction, specifically, the impacted class, or classes, has "overwhelmingly" voted to accept the proposed plan treatment.

(5) The plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction.

*Master Mortgage,* 168 B.R. 935; *see also Zenith,* 241 B.R. at 110; *In re Hercules Offshore, Inc.*, 565 B.R. 732, 755–56 (Bankr. D. Del. 2016). The *Master Mortgage* factors "form the foundation" for the analysis of third-party releases but "are neither exclusive nor conjunctive requirements." *Hercules*, 565 B.R. at 756. These factors instead provide guidance in the Court's determination of fairness of the releases. *Id.* Even if the Local Councils are able to satisfy these factors, third party releases are only approved in extraordinary circumstances. *Continental*, 203 F.3d at 217; *see also*

---

[6] Indelicato Decl. Ex. 5, Century's Deficiency Letter to the COLC, dated November 7, 2021.
[7] Indelicato Decl. Ex. 6, COLC's Response to Century's Deficiency Letter, dated November 10, 2021.

*In re Millennium Lab Holdings II, LLC*, 945 F.3d 126, 139 (3d Cir. 2019) ("Our precedents regarding non-consensual third-party releases and injunctions in the bankruptcy plan context set forth exacting standards that must be satisfied if such releases and injunctions are to be permitted, and suggest that courts considering such releases do so with caution.").

Each Local Council is a separate legal entity with potential claims against it and, therefore, must show a contribution to justify discharging it from any future liability for such claims and that the releases are essential to BSA's reorganization. *See In re Quigley Co., Inc.*, 437 B.R. 102, 140 (Bankr. S.D.N.Y. 2010) (substantial contribution requires a comparison between the total contribution and the released liability). The only information provided for COLC's contribution is the expected contribution set forth in <u>Exhibit C</u> to the Disclosure Statement. COLC will need to provide evidence that their contribution to the Settlement Trust is substantial to receive a release under a plan. The Plan also confers an exculpation on COLC, which similarly involves a fact intensive inquiry based on the contribution to the debtor's reorganization efforts.

The claim explosion in the bankruptcy process raises significant concerns regarding the validity of claims and the voting results. *See In re Glob. Indus. Tech., Inc.*, 645 F.3d 201, 213–14 (3d Cir. 2011) (noting concerns with an explosion of claims in bankruptcy). Investigating how many of the over 82,000 "unique and timely" abuse claims are actually valid and supported is necessary for any analysis of potential recovery for claimants and conclusions regarding voting. Many of the filed claims are missing the basic information. Even for the claims that provide the necessary information, a review of those claims may end up showing that the individual or the alleged abuser was not involved in Scouting at the time of the alleged abuse. Only those individuals with a valid claim should be allowed to vote. Allowing the invalid claims to vote will dilute the vote of the legitimate Abuse Claimants, thereby manipulating the voting results. *See In re Fed.-Mogul Glob. Inc.*, 684 F.3d 355, 361–62 (3d Cir. 2012). The information and documents Century is requesting from Local Councils, including at least the membership information and any analysis of the Abuse Claims directly relate to these objections and provide necessary information that would help eliminate invalid claims.

In addition, BSA and the other parties supporting the Plan request specific findings that the Plan is binding on all parties, the TDPs are appropriate and reasonable, the right to payment for each claimant is the amount of such claim determined under the TDPs, and the TDPs were proposed in good faith. These findings will approve the value (based on the TDPs) for claims against BSA and Local Councils, including COLC, without any consideration of the evidence supporting those claims. These findings should not be considered until the Plan Proponents and the Local Councils present specific facts supporting those findings—how they determined the TDPs are appropriate, discussions concerning the TDPs, and specific information about the claims against BSA and the Local Councils. The good faith finding also requires evidence of the negotiations between parties in connection with the TDPs. Century specifically requests documents to show whether the TDPs are reasonable and the findings are appropriate.

Further, under the Plan, any claimant asserting an abuse claim against BSA has the option to elect to receive an expedited distribution of $3,500, without any further investigation into those claims by the Settlement Trust. If invalid claims are able to receive a payout without any investigation into the claim in exchange for a vote in favor of the Plan, it would taint the voting

process and force insurers to pay invalid claims. *See GIT*, 645 F.3d at 214. Invalid or unsupported claims should be identified now to ensure that only holders of legitimate claims are allowed to vote and the Settlement Trust assets are only compensating holders of legitimate claims. Century is just requesting basic information that will help analyze how many of the filed claims are invalid and make certain that the voting results reflects the votes of Abuse Claimants.

Finally, the requested information will also factor into the analysis of whether the Plan is feasible. Local Councils are integral to the Boy Scouts operations. A key factor that the Court will consider in connection with feasibility is the expected revenue, which will turn on membership projections. Local Councils play a key role in recruiting members and may need the protections under the Plan to be able to continue operating. Depending on whether all the Local Councils participate in the contribution and can benefit from the broad protections offered under the Plan will impact the feasibility of the Plan and the ability of BSA to operate on a go forward basis and to continue its mission. To the extent the Local Councils have relevant documents to these issues and key Plan objections, such documents should be produced.

## II. The Discovery Sought Goes Directly to Fact-Intensive Confirmation Issues that COLC has Put at Issue by the Relief Sought

The Subpoena seeks specific categories of documents in its requests necessary for the Local Councils to satisfy the fact intensive standards necessary to ensure compliance with the Bankruptcy Code. Each of the following groups of documents go directly to those issues. Not only is this information necessary for Century to fully develop its objections, but it is also evidence that will be necessary for each of the Local Councils to prove it is entitled to the relief provided under the Plan.

### A. Board and Committee Minutes about Bankruptcy (RFP Nos. 1-13)

While COLC agreed to produce documents for a number of requests in this category[8] "to the extent they exist and can be reasonably identified and produced without undue burden", it refused to produce responsive documents for the remaining requests. COLC has an executive board, executive committee, and/or special or advisory committees responsible for making decisions on its behalf. RFP Nos. 1 through 13 seek the documents submitted to and generated by these bodies on a discrete set of topics: (i) the BSA bankruptcy case, (ii) the Fifth Amended Plan (or any other plan of reorganization for BSA), (iii) the TDPs, and (iv) the Abuse Claims asserted against BSA and the Local Councils. The information presented at meetings of the board and/or its committees, on these topics are designed to develop admissible evidence on confirmation issues. The following are examples of such requests:

**RFP No. 9**: "All drafts of term sheets for any Plan of Reorganization."

---

[8] For RFP Nos. 1 through 7, COLC agreed to produce non-privileged responsive documents, if any, "to the extent they exist and can be reasonably identified and produced without undue burden." *See* Indelicato Decl. Ex. 2, COLC Response, RFP Nos. 1-7. COLC sent a follow up letter on November 16 further noting that it produced all documents responsive to RFP Nos. 5 and 6.

**RFP No. 10**: "All Documents Concerning Communications with [representatives of the claimants] Concerning the Chapter 11 Cases, a Plan of Reorganization for the Debtors, the Fifth Amended Plan of Reorganization, the TDPs, Abuse Claims and/or the Hartford Settlement Agreement."

**RFP No. 13**: "All Documents and Communications that BSA exchanged with Your Local Council Concerning the Chapter 11 Cases, a Plan of Reorganization for the Debtors, the Fifth Amended Plan of Reorganization, the TDPs, the Abuse Claims and/or the Hartford Settlement Agreement."

COLC objected to producing any documents responsive to these requests on the basis of generalized non-specific objections including "burden" or on the grounds that others may have the documents. *See* Indelicato Decl. Ex. 2, COLC Response, RFP Nos. 9, 11, 12 and 13. COLC also asserts that it does not have any documents responsive to the requests. *See* Indelicato Decl. Ex. 2, COLC Response, RFP Nos. 9-12. COLC sent a follow up letter on November 16, 2021 noting that any documents responsive to RFP No. 8 are subject to a joint defense agreement and, therefore, are privileged and not discoverable.

On their face, all of these requests seek information directly related to the bankruptcy and key issues that will be addressed at the confirmation hearing.

### B. COLC's Contribution to the Settlement Trust (RFP Nos. 14-16, 18-19, 28)

The Fifth Amended Plan provides for broad third party releases for COLC, which requires proof that COLC substantially contributed to BSA's reorganization. RFP Nos. 14-16, 18-19, and 28 seek information about COLC's contribution to the Settlement Trust, how COLC determined the amount it would contribute and how the number was calculated. The requests on these topics are designed to develop admissible evidence on confirmation issues. The following are examples of such requests:

**RFP No. 14**: "… Documents that Your Council Executive Board, Council Executive … reviewed and/or relied upon in evaluating and/or determining the amount of Your Local Council's *contribution to the Settlement Trust*."

**RFP No. 15**: "… Communications among members of Council Executive Board, Council Executive Committee …Concerning the amount of Your Local Council's *contribution to the Settlement Trust*."

**RFP No. 16**: "… Documents that Your Council Executive Board, Council Executive Committee … reviewed and/or relied upon in … determining the amount of Your Local Council's *contribution to the Settlement Trust.*"

**RFP No. 18**: "All Documents Concerning the methodology that was employed to allocate the aggregate *contribution by all Local Councils* to the Settlement Trust to individual Local Councils including any allocation by percentage or other means of the aggregate contribution to individual Local Councils."

>**RFP No. 19**: "All Documents Concerning the calculation and/or determination of the amount of Your Local Council's contribution to the Settlement Trust."
>
>**RFP No. 28**: "The Database, electronic spreadsheet, data and/or other information that was used to determine the amount of Your Local Council's *contribution to the Settlement Trust.*"

In response to RFP Nos. 15 and 16, COLC agreed to produce any responsive, non-privileged documents "that were generated on or after June 18, 2021 and on or before November 5, 2021."[9] COLC, however, objected to producing any documents responsive to more than half of these requests on the basis of generalized non-specific objections including "burden" and on the grounds that others may have responsive documents. *See* Indelicato Decl. Ex. 2, COLC Response, RFP Nos. 14, 18-19 and 28. Others including the Ad Hoc Committee of Local Councils ("**AHCLC**") may have responsive documents but these requests are appropriately directed and responded to by the party that seeks the third party release.

All of these requests seek information directly related to a bankruptcy and key issues that will be addressed at the confirmation hearing, specifically COLC's contribution to the Settlement Trust and whether it constitutes a substantial contribution.

### C. Abuse Claims Against COLC (RFP Nos. 17, 25, 27, 30-33, 42, 44)

The determination of who may vote on the Fifth Amended Plan starts with the proofs of claim. The Plan that will result from the vote then channels the claims asserted in the proofs of claim to a Settlement Trust. Those claims will be allowed and valued by a plaintiff selected trustee. RFP Nos. 17, 25, 27, 30-33 seek information about the allegations made in the proofs of claim to develop evidence on confirmation issues. This includes specific information related to the Abuse Claims, any analysis of the Abuse Claims, negotiations to resolve Abuse Claims, and any documents received from Bates White (BSA's Abuse Claims consultant) related to the Abuse Claims. The following are examples of such requests:

>**RFP No. 17**: "… Documents authored or generated by Bates White *Concerning the POCs, … the Abuse Claims against the Debtors* …."
>
>**RFP No. 25**: "All Documents authored or generated by Bates White *Concerning Abuse Claims* asserted or alleged against Your Local Council."
>
>**RFP No. 27**: "... Documents … *Concerning Abuse Claims* asserted on behalf of individuals that you were unable to confirm were scouts in Your Local Council."
>
>**RFP No. 30**: "… Documents and Communications that the Debtors sent to Your Local Councils with the Local Council Feedback Template and Mandatory *Reporting Procedures for Proofs of Claim* filed in these Chapter 11 Cases."

---

[9] COLC agreed to produce non-privileged responsive documents for RFP Nos. 15 and 16. *See* Indelicato Decl. Ex. 2, COLC Response, RFP Nos. 15, 16.

Case 20-10343-LSS    Doc 7298    Filed 11/17/21    Page 10 of 14

O'Melveny

> **RFP No. 31**: "… Documents and Communications that Your Local Council generated in response to the request to complete the Local Council Feedback Template and Mandatory Reporting Procedures *for Proofs of Claim* filed in these Chapter 11 Cases."
>
> **RFP No. 32:** "… Communications between or among BSA Membership Standards Group and Your Local Councils related to the Local Council Reporting Procedures for any claims based on Abuse, including but not limited to, questions regarding the *verification of Proof of Claim data*."
>
> **RFP No. 33**: "All incident reports generated by Your Local Council in connection with *the Proofs of Claim* filed in these Chapter 11 Cases, including any and all supporting documentation attached to those incident reports."

Century also requests specific information related to a pre-packaged bankruptcy to resolve Abuse Claims. The following are examples of such requests:

> **RFP No. 42**: "All Documents and Communications Concerning a pre-packaged bankruptcy to resolve Abuse Claims against the Boy Scouts of America."
>
> **RFP No. 44**: "All Documents and Communications Concerning the consideration and/or negotiation of a pre-packaged bankruptcy to resolve Abuse Claims against the Boy Scouts of America."

COLC objected to producing any documents responsive to many of these requests on the basis of generalized, non-specific objections, including "burden" and on the grounds that others may have responsive documents. *See* Indelicato Decl. Ex. 2, COLC Response, RFP Nos. 25, 30-32, 42, 44.[10] COLC directs Century to other parties for production of these documents. *See* Indelicato Decl. Ex. 2, COLC Response, RFP Nos. 32, 33, 42, 44. COLC sent a letter on November 16 further responded to Century's requests that it does not have any documents responsive to RFP Nos. 17, 27, and 33. In addition, COLC pointed to Feedback Templates it produced that are responsive to RFP No. 17 and 27.

These requests seek information directly related to the Abuse Claims and key issues that will be addressed at the confirmation hearing.

### D. COLC Agreements with Chartering Organizations that are the Basis of Confirmation Objections by the Charters (RFP Nos. 21-25)

The Chartering Organizations contend that they hold claims against the estate and the Local Councils by virtue of agreement entered into between them and the Local Councils and BSA. *See* Disclosure Statement, Art. V.N. RFP Nos. 21-25 seek information about the allegations made in

---

[10] COLC agreed to produce non-privileged responsive documents, if any, for RFP No. 27. *See* Indelicato Decl. Ex. 2, COLC Response, RFP No. 27. While COLC agreed to meet and confer to discuss RFP No. 31, COLC has not withdrawn its objections and continues to direct Century to other parties for the material sought by Century's subpoena.

these proofs of claim. This includes specific information related to the Proofs of Claim filed by the Chartered Organizations, any analysis of those claims, and any discussion regarding COLC's obligation to defend and/or indemnify the Chartered Organizations for Abuse Claims.

> **RFP No. 21**: "… Documents … relating to any agreements between or among the Local Councils, Chartered Organizations and BSA that address in any way responsibility for defending and/or indemnifying claims by persons alleging injury arising from a scouting activity asserted against a chartering organization."
>
> **RFP No. 22**: "… Documents Concerning any claim that Chartering Organizations have asserted against Your Local Council for contribution and/or indemnity for Abuse Claims asserted against Chartering Organizations."
>
> **RFP No. 23**: "…Documents Concerning any claim … that Local Councils generally and Your Local Council specifically took on an obligation to defend and indemnify Chartering Organizations for Abuse Claims … through the terms of the annual charter agreements …"
>
> **RFP No. 24**: "The charter agreements entered into by Your Local Council from January 1, 2014 to the petition date with the following Chartering Organizations: (1) the Methodist Church …, (2) …the Catholic Church (3) the Episcopalian Church … (4) the Lutheran Church … (5) The Knights of Columbus (6) the YMCA, and (7) the Presbyterian Church …"

COLC agreed to produce certain documents responsive to RFP Nos. 23 and 24[11] and stated that it does not have any responsive documents for RFP Nos. 22 and 23. COLC objected to producing any documents responsive to these requests on the basis of generalized non-specific objections including "burden" and on the grounds that others may have responsive documents. *See* Indelicato Decl. Ex. 2, COLC Response, RFP Nos. 21-23. In its November 16, 2021, COLC further responded to Century's requests that it does not have any documents responsive to RFP No. 25.

These requests seek information directly related to a bankruptcy, COLC's indemnify obligation, and other key issues that will be addressed at the confirmation hearing.

### E.  COLC's Assets (RFP Nos. 36-37)

The information concerning COLC's assets is directly related to the third party releases and whether those releases are appropriate. It is not enough to consider COLC's cash contribution in isolation, it must be viewed in light of the Local Council's assets. What is the total amount of Local Council assets, including donor-restricted assets? And, could some of the donor-restricted assets be contributed to the Settlement Trust? This information is necessary to analyze how the Local Councils determined it was the appropriate amount to contribute and determine if that

---

[11] COLC agreed to produce "exemplars of such [charter] agreements" for RFP No. 23. *See* Indelicato Decl. Ex. 2, COLC Response, RFP No. 23. Similarly, COLC agreed to produce "an exemplar of its agreement with Chartered Organizations from and since January 1, 2014 for RFP No. 24. *See* Indelicato Decl. Ex. 2, COLC Response, RFP No. 24.

amount is appropriate. In fact, COLC will need to present evidence regarding their contribution at the confirmation hearing and the bankruptcy court will addressing it in connection with confirmation of the Plan. The requests on these topics are designed to develop admissible evidence on confirmation issues. The following are examples of such requests:

> **RFP No. 36**: "All Documents and Communications concerning whether assets that are donor-restricted should, or should not be, contributed to the Settlement Trust."
>
> **RFP No. 37**: "… Documents and Communications relating to Your cash and financial assets, … demonstrating any conditions or restrictions of use and/or encumbrances on the assets and any analysis related thereto."

COLC objected to producing any documents responsive to these requests on the basis of generalized non-specific objections including "burden" and/or on the grounds that others may have responsive documents. *See* Indelicato Decl. Ex. 2, COLC Response, RFP Nos. 36-37.

These requests seek information directly related to key issues that will be addressed at the confirmation hearing, including third party releases.

### F. Feasibility (RFP No. 27)

Section 1129(a)(11) of the Bankruptcy Code requires that the Court determine that the Plan is feasible for it to be confirmed, meaning that "[c]onfirmation of the plan is not likely to be followed by a liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan . . . ." 11 U.S.C. § 1129(a)(11). This involves an intensive factual analysis of BSA's financial projections and the likelihood of success. *See In re Paragon Offshore PLC*, No. 16-10386 (CSS), 2016 WL 6699318, at *16 (Bankr. D. Del. Nov. 15, 2016) ("A debtor must prove a Chapter 11's plan feasibility by a preponderance of the evidence."). BSA's financial projections rely on it maintaining sufficient membership levels going forward. And, the Local Councils, together with the Chartered Organization, are responsible for recruiting new and returning members. RFP No. 27 seeks information about membership projections and any analysis surrounding Chartered Organizations, specifically the impact that disassociation of a Chartered Organization would have on membership levels and revenue.

> **RFP No. 27**: "… Documents … Concerning membership projections, including any Documents and Communications reflecting analysis of the impact that the disassociation of one or more Chartered Organizations from the Debtors and/or Your Local Council would have on the Debtors' membership levels and revenue projections and/or Your Local Council's membership levels."

COLC objected to producing any documents responsive to this request on the basis of generalized non-specific objections including "burden" and on the grounds that others may have responsive documents. *See* Indelicato Decl. Ex. 2, COLC Response, RFP No. 27. Others may have responsive documents but these requests are appropriately directed and responded to at the party that seeks the third party release.

These requests seek information directly relate to whether BSA's plan is feasible and can be confirmed.

### III. COLC Should Provide a Detailed Log for Documents Withheld as Privileged

Century understands that COLC is working on a privilege log but Century has not yet received it. Accordingly, Century cannot comment yet on COLC's specific privilege assertions but, out of an abundance of caution, requests that COLC provide a detailed log covering each of the documents withheld and the basis for privilege under the Federal Rules.[12]

The party asserting privilege has the burden to "establish the claimed privilege with reasonabl[e] certainty," which requires that it "adduce competent evidence in support of its claims." *In re Veiga*, 746 F. Supp. 2d 27, 33 (D.D.C. 2010). The proponent "must offer more than just conclusory statements, generalized assertions, and unsworn averments of its counsel." *Id.* at 34. Indeed, "blanket or categorical claims of privilege" will not suffice—the law "requires a showing that the privilege applies to each communication for which it is asserted." *Id.* at 33. "Where the proponent fails to adduce sufficient facts" for the "court to conclude with reasonable certainty that the privilege applies, its burden has not been met." *Id.* at 34. Given the general responses and objections to Century's requests, Century is requesting the Court to require COLC to provide a detailed log of each document withheld and the privilege assertion. The log must contain sufficient information for Century to assess the claim of privilege. *Ferguson v. USAA Gen. Indem. Co.*, 334 F.R.D. 407, 412 (M.D. Pa. 2019) ("[T]he adequacy of the privilege log [turns on] whether, as to each document, it sets forth facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed."); *see also In re Oxbow Carbon LLC Unitholder Litig.*, No. CV 12447-VCL, 2017 WL 959396, at *5 (Del. Ch. Mar. 13, 2017) (Delaware courts require a privilege log to include "(a) the date of the communication, (b) the parties to the communication (including their names and corporate positions), (c) the names of the attorneys who were parties to the communication, and (d) [a description of] the subject of the communication sufficient to show why the privilege applies, as well as [the issue to which] it pertains."). If "the descriptions of the documents are so brief and of such a general nature[,] they fail to give the court any basis for determining whether the privilege was properly invoked." *Veiga*, 746 F. Supp. 2d at 40.

Century requests that the Court require COLC's privilege log to include sufficient detail for each document that COLC asserts is privileged.[13]

---

[12] COLC has not asserted any specific privilege in its objections and Century has not received the privilege log. Many of the documents Century requests relate to discussions between the Local Councils and other parties, including BSA, the AHCLC, and other Local Councils. COLC notes that it is party to a joint defense agreement but that agreement would not make all documents exchanged between the parties subject to a common interest privilege. To the extent the documents was not privileged before it is shared with the parties to the joint defense agreement, it is not protected just because of the joint defense agreement. Only those documents shared based on the common interest that were originally privileged will be protected.

[13] Mediation privilege would not apply to any of the documents requested. Under the Mediation Order and Rule 9019-5(d), only information disclosed by the parties in the course of the mediation is protected. The

## CONCLUSION

For the foregoing reasons and pursuant to Fed. R. Civ. P. 34 and 37(a)(3)(B)(iv), Century requests that the Court grant its motion to compel and order COLC to produce any documents requested pursuant to the subpoena.

## FED. R. CIV. P. 37(A)(1) CERTIFICATION

Pursuant to Civil Rule 37(a)(l), the undersigned hereby certifies that Century has met and conferred with counsel to COLC served with a subpoena on October 8, 2021 in good faith on these discovery issues, including a meet and confer call on November 12, 2021 and the exchange of deficiency letters.

Respectfully submitted,

*/s/ Tancred Schiavoni*
Tancred Schiavoni

O'MELVENY & MYERS LLP

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America*

---

mediation privilege only applies to Mediation Parties. And the Mediation Parties only include the Ad Hoc Group of Local Councils of the Boy Scouts of America, none of the eight individual members of the AHCLC or any of the other Local Councils that are not part of the AHCLC. The AHCLC has been clear throughout the bankruptcy case that they do not represent *any* of the Local Councils individually. Accordingly, the Local Councils would not benefit from mediation privilege even if the documents were disclosed as part of the mediation.