brownrudnick

ERIC R. GOODMAN
direct dial: 202.536.1740
fax: 617.289.0640
EGoodman@brownrudnick.com

November 17, 2021

**VIA EMAIL/ECF**

Chief Judge Laurie Selber Silverstein
United States Bankruptcy Court, District of Delaware
824 North Market Street, 6th Floor
Wilmington, DE 19801

**RE: *In re Boy Scouts of America and Delaware BSA, LLC*, No. 20-10343 (LSS)**
***Coalition of Abused Scouts for Justice Response to Certain Insurers Motion to Quash (D.I. 7206)***

Dear Judge Silverstein:

This firm represents the Coalition of Abused Scouts for Justice (the "Coalition"), and we write in response to the November 14, 2021 letter [D.I. 7206] (the "Motion to Quash") submitted on behalf of certain moving Insurers (as identified in the Motion to Quash) that seeks to quash the Coalition's Rule 30(b)(6) deposition notices, among other deposition notices, on certain of the moving Insurers.[1]

As relevant to the Coalition's Rule 30(b)(6) deposition notices, the Motion to Quash argues that the depositions should not proceed because the notices seek testimony that is not relevant to plan confirmation; are unduly burdensome; seek testimony concerning legal contentions; and that the Insurers lack information as to certain topics. The Coalition simply seeks to discover any factual support Insurers have for their position in these cases, and the authority Insurers themselves rely on plainly demonstrates that the Coalition's deposition topics are proper. The Motion to Quash should be denied.[2]

---

[1] As the moving Insurers acknowledge, "[s]ome Insurers did not receive deposition notices from the Coalition." Motion to Quash at 2 n.2. Of the 22 moving Insurers identified on Exhibit 1 to the Motion to Quash who join the Motion to Quash, the Coalition served Rule 30(b)(6) deposition notices on only 10 of the Insurers (namely, AIG; Allianz; Century; Chubb; Great American; Liberty Mutual; National Surety; Old Republic; Travelers; and Zurich Insurers).

[2] Insurers note that the Coalition did not attend a meet-and-confer session on November 12, 2021. Motion to Quash at 1 n.1. But Insurers omit that a week earlier, on November 5, 2021, the Coalition met-and-conferred by videoconference with certain Insurers, including counsel to AIG, Great American, and Zurich Insurers, the author of the Motion to Quash on behalf of the Insurers. During that November 5, 2021 meet-and-confer, the Coalition and Insurers discussed a range of issues related to the Coalition's Rule 30(b)(6) notices to Insurers. In the course of the meet-and-confer, Coalition counsel commented that while it is possible through continued discussions the parties may agree on a narrowed scope of certain topics, the Coalition asked directly if any Insurer intended not to designate a witness for deposition at all, and was clear that the question was asked to ensure that, if an Insurer did intend to take such a position, the Coalition could promptly take steps it may deem appropriate. No Insurer stated

The Coalition's topics for deposition—which are quoted in Exhibit 2 to the Motion to Quash [D.I. 7206]—do not ask Insurers to designate a witness to testify as to irrelevant legal contentions or unduly burdensome information. Rather, the Coalition's deposition topics are focused entirely on discovering what *factual evidence* Insurers have, if any, on central issues for plan confirmation, namely:

- what factual evidence, if any, do Insurers have that suggests that the Debtors' plan and Trust Distribution Procedures ("TDPs") were not proposed in good faith (Topics 5 and 6);
- that the procedures in the TDPs pertaining to the allowance of Abuse Claims (as defined in the Plan) and the criteria included in the TDPs pertaining to the calculation of Abuse Claim Amounts (as defined in the TDPs) are not fair and reasonable (Topics 7 and 8);
- that the Claims Matrix, Base Matrix Values, and Scaling Factors (each as defined in the TDPs) are not fair and reasonable (Topics 9-11); and
- that specified aspects of the TDPs are not consistent with the Debtors' historical settlement practices (Topics 12-16).

Moreover, the Coalition took great care to maximize efficiency with respect to the need for the topics noticed by serving targeted discovery that genuinely seeks to discover facts from the Insurers. *First*, the Coalition's requests for admission to the Insurers asked them to admit, with precise references in the case of the TDPs in particular, that the Debtors' Plan was proposed in good faith; that the TDPs' various procedures and values are fair and reasonable; and that the TDPs, their Claims Matrix, Base Matrix Values, and Scaling Factors are each consistent with the Debtors' historical settlement practices. If any particular request for admission was admitted, that essentially ended the discovery burden as to that issue. *Second*, the Coalition's interrogatories asked Insurers to identify the factual basis for Insurers' denial of each request for admission. Only then do the Coalition's Rule 30(b)(6) deposition notices come into play. Here, Insurers denied each of the requests for admission, declined to respond meaningfully to the interrogatories asking for the facts that support those denials, and now refuse to provide a witness to testify as to facts Insurers may be aware of as to why, for example, the values, criteria, and Scaling Factors in the TDPs are inconsistent with the Debtors' historical settlement practices.

Either particular Insurers have evidence in the form of documents or experience handling abuse claims in connection with the Debtors that show, for example, that the values, criteria, and Scaling Factors in the TDPs are inconsistent with the Debtors' historical settlement practices or they do not. Such facts are plainly relevant to whether the plan and its incorporated TDPs should be confirmed or not. And here, in this posture, that is particularly true given that the Insurers have refused to admit, for example, that the TDPs are consistent with the Debtors' historical settlement practices and also refused to meaningfully respond to the Coalition's

---

that it would not make a designee available. Nine days later, on November 14, 2021, Insurers filed the Motion to Quash.



interrogatories requesting in written form what facts Insurers have that support the denials of the requests for admission.

Insurers' implication that the Coalition's topics seek legal conclusions because certain of the Coalition's deposition topics begin with the preface, "If RFA No. [x] is not admitted," and then go on to state the topic as the "factual basis" for that denial, is misplaced. As described above, the Coalition sought to be efficient in narrowing the factual topics on which an Insurer's designated witness would need to testify. If, for example, an Insurer admitted that the TDPs' Scaling Factors are consistent with the Debtors' historical settlement practices but, again for example, denied that the TDPs' Base Matrix Values are consistent with the Debtors' historical settlement practices, then the deposition of that Insurer would be immediately narrowed. There would be no need to ask questions about the Scaling Factors, and the Coalition at deposition can turn right to questions that elicit what factual evidence the Insurers have with respect to the Base Matrix Values allegedly being inconsistent with the Debtors' historical settlement practices. The Coalition's approach was designed to streamline, if possible, the topics, and does not somehow rhetorically turn the topics into topics seeking legal conclusions.

The cases cited by Insurers are not to the contrary. *State Farm Mut. Auto. Ins. Co. v. New Horizon, Inc.*, 250 F.R.D. 203, 216 (E.D. Pa. 2008), relied upon by the Insurers (*see* Motion to Quash at 2 n.6), provides a useful example. Insurers cite the case for the proposition that "a question seeking the 'reasons State Farm believes each or all bills are fraudulent' likely seeks counsel's 'legal theories,' and thus is improper." Motion to Quash at 2 n.6. But that quote in its proper context provides guidance here that shows the Coalition's topics are actually entirely appropriate:

> The topics in Defendants' notices of deposition provide examples of proper and improper questions. For example, a question seeking the 'reasons State Farm believes each or all bills are fraudulent' likely seeks counsel's 'legal theories,' and thus is improper. ***In contrast, a question seeking the 'reasons State Farm believes that each patient did not receive all treatment billed for and noted in the records' is likely proper, as it seeks only facts reasonably available to State Farm, and not counsel's mental impressions.***"

*State Farm Mut. Auto. Inc. Co.*, 250 F.R.D. at 216 (emphasis added). The Coalition's topics—*e.g.*, "the factual basis for your assertion that the Trust Distribution Procedures' Base Matrix Values are not consistent with the BSA's historical settlement practices" (Topic 15)—are phrased in the same manner as the question considered "likely proper" by the *State Farm* decision relied on by Insurers. In that example, the Coalition wants to discover what *factual evidence* Insurers have, if any, that suggest the Base Matrix Values are inconsistent with the BSA's historical settlement practices. If an Insurer has such factual information, the Coalition is entitled to discover such evidence now—before seeing it in the Insurers' expert reports after fact discovery closes and/or seeing it at the confirmation hearing.



Chief Judge Silverstein
November 17, 2021
Page 4

For the reasons set forth herein, the Coalition submits that the Motion to Quash should be denied.

Respectfully submitted,

**BROWN RUDNICK LLP**

***/s/ Eric R. Brown***

Eric R. Goodman

{00228392-2}