# HOGAN ◆ McDANIEL
## ATTORNEYS AT LAW

**Daniel K. Hogan, Esquire**
Telephone   (302) 656-7540
Facsimile    (302) 656-7599

Email: dkhogan@dkhogan.com

1311 Delaware Avenue
Wilmington, Delaware 19806

November 18, 2021

**VIA CM/ECF**
Chief Judge Laurie Selber Silverstein
United States Bankruptcy Court, District of Delaware
824 North Market Street, 6th Floor
Wilmington, DE 19801

> **RE:    *In re Boy Scouts of America*, No. 20-10343**
> **Motion to Compel Compliance with the Subpoena to Produce Responsive**
> **Documents Served on Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C.**

Dear Judge Silverstein:

      We write on behalf of non-party Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. ("Eisenberg Rothweiler"), responding in opposition to the Insurers' Motion to Compel compliance with the *Zurich Insurers'* [1] *Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case* (the *"Motion")* dated November 15, 2021 (D.I. No. 7241). We oppose the Insurers' ("Insurers") Motion to compel Eisenberg Rothweiler to produce irrelevant and privileged information in response to Zurich's subpoena dated October 26, 2021 (the "Subpoena"). On November 5, 2021, Eisenberg Rothweiler served responses and objections on the Insurers objecting to the requests based on the fact that the Subpoena seeks material subject to the attorney-client privilege, other privileges, and the work product doctrine. Eisenberg Rothweiler has also claimed that the Subpoena seeks irrelevant information and imposes an undue burden on the firm. The parties have engaged in multiple meet and confer conferences to narrow the issues. On November 17, 2021, Eisenberg Rothweiler served the Insurers with Supplemental responses and objections, as well as with a privilege log. [2]

## PRELIMINARY STATEMENT

      The proposed discovery will not make a successful reorganization any more likely or otherwise aid this Court in the assessment of the plan. Since the Debtors filed for bankruptcy, the Insurers have attacked the state court professionals and the law firms that represent the vast

---

[1] American Zurich Insurance Company, American Guarantee and Liability Insurance Company, and Steadfast Insurance Company.

[2] *See* Declaration of Daniel K. Hogan, in Support of the Eisenberg Rothweiler Letter to the Honorable Chief Judge Laurie Selber Silverstein Responding to the Motion Seeking an Order Compelling Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. to Comply with a Subpoena to Produce Responsive Documents, dated Nov. 18, 2021 ("Cecil Decl."), Ex. 1.

majority of sexual abuse survivors ("Survivors"). The Insurers, by asking for attorney related discovery, want to delay these proceedings, and prevent the Debtors from reorganizing on terms that treat Survivors fairly. The Insurers' discovery is a purposeful mischaracterization of Eisenberg Rothweiler' s role in these cases and is framed to justify this fishing expedition. The facts, as well as the law, mandate a denial of the Insurers' motion to compel.

## THE SUBPOENA

The Insurers' subpoena seeks to have Eisenberg Rothweiler essentially turn over their entire case file for each claim handled by Eisenberg Rothweiler. The Insurers' subpoena seeks the following information:

- for each Claim Form submitted to Omni by Eisenberg Rothweiler that was signed by an attorney: (a) client authorization forms (Requests No. 1, 4) and (b) documents sufficient to show which attorneys spoke or interacted with the clients (Request No. 2);
- for each Claim Form submitted to Omni by Eisenberg Rothweiler (whether signed by an attorney or not): (a) documents related to when the Claim Form was signed by the Attorney (Request No. 5); (b) the entity that submitted the Claim Forms (Request No. 6); (c) documents reflecting the amount of time spent investigating the claim and confirming the existence of evidentiary support (Request No. 7, 8, 10); (d) documents reflecting the communications with "third party vendors" (Request No. 13); and (e) the original PDF of the claim, in native format (Request No. 14);
- for each Claim Form submitted to Omni by Eisenberg Rothweiler where a standalone signature page was used: (a) the original file containing the signed signature page (page 12 of the Claim Form), in native format, including all associated metadata and (b) the original file containing the completed Claim Form (Request No. 15, 16);
- documents sufficient to identify the call centers, claim processors, third-party administrators, claim aggregators, and/or other non-law firm business(es) involved in preparing, completing and/or submitting Claim Forms (Request No. 3);
- catalogs or documents itemizing the materials Eisenberg Rothweiler reviewed (Request No. 9);
- all contracts or agreements entered into by Eisenberg Rothweiler in connection with soliciting, acquiring access to, interacting with, executing signatures, or vetting claimants (Request No. 11);
- all contracts, agreements, and any other documents and communications relating to financing by third-party funders of Eisenberg Rothweiler (Request No. 12); and
- all documents reflecting communications between Eisenberg Rothweiler and any nonlaw firm business pertaining to ownership of or financial interest in claims in claims (Request No. 17).

None of the information sought by the Insurers is relevant—nor will it make any fact relevant to confirmation more or less true. The Insurers manufacture a theory of wrongdoing and ignore the

reality that many of the claim forms that are the subject of the Insurers' fishing expedition were amended and signed by clients. Additionally, all of the materials sought by the Insurers is subject to the attorney-client privilege, other privileges, and the work product doctrine. At their core, the requests plainly seek privileged communications between Survivors and their counsel. The requested materials are further protected by the work product doctrine—there is no waiver. Despite the assertions by the Insurers, Eisenberg Rothweiler did not disclose any of the requested materials to any third parties, aside for possibly AIS co-counsel and did not knowingly disclose any claim information with purported "claim aggregators," including Your Case Manager.[3] Finally, the requests, which potentially implicate thousands of proof of claim forms ("POCs"), impose a needless burden that is simply not justified.

## ARGUMENT

### I.    Insurers' Motion Should Be Denied as Moot, As Many POCs Have Been Amended with Claimant Signatures.

As a threshold matter, the Court should revisit its evaluation of the relevance of the information sought in the Subpoena, as previously considered in the context of the Rule 2004 motion filed in January 2021. [D.I. 1975]. At that time, Century alleged, with zero evidence, that thousands of POCs containing attorney signatures rather than claimant signatures were bogus. The Insurers now assert that discovery is necessary from Eisenberg Rothweiler because hundreds of such forms were filed with Omni in a single day. The Insurers' entire premise for the relevancy of the requested information is the fact that Eisenberg Rothweiler, as part of AIS[4], filed more than 18,000 proof of claim forms, on its own behalf and through AIS.

The information sought in the Subpoena focuses on the fact that Eisenberg Rothweiler signed certain proof of claim forms immediately before the Bar Date. As of the Bar Date, AIS had collectively filed with Omni approximately 4,677 attorney-signed POCs. Since that time, AIS, through both Eisenberg Rothweiler and AVA Law, has amended approximately 3,365 of those POCs to replace the attorney signature with the signature of the Survivor. Eisenberg Rothweiler actively continues to amend proof of claim forms to replace the attorney signature with the signature of the Survivor.

The Bankruptcy Rules permit attorneys to sign proofs of claim. *See* Fed. R. Bankr. P. 3001(b) & 9009(a). The fact that certain Eisenberg Rothweiler attorneys signed POCs in a single day simply signifies that attorney-signed claim forms were filed to protect their clients' right to receive a distribution. The Insurers' numbers and statistics are just that. They do not indicate any improper conduct or that claims were filed without proper attorney review.

The Insurers further assert that the discovery is necessary because of the number of attorney-signed POCs that were filed just before the Bar Date. But this fact is consistent with the

---

[3] Eisenberg Rothweiler submitted its claims to Omni themselves and did not utilize a "claims aggregator" as argued by the Insurers.
[4] Abused in Scouting ("AIS") includes the following constituent law firms: Eisenberg Rothweiler, Kosnoff Law, and AVA Law Group. *See* Verified Statement of Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019, D.I. No. 1429-1.

supposition that attorneys were attempting to obtain client signatures and filed attorney-signed forms before the bar date so that clients would not be denied compensation. This does not mean or indicate that attorneys did not conduct a reasonable investigation to vet the claims or that they violated Bankruptcy Rule 9011. Nor does the fact that 190 POCs were filed on the same day mean that claims were not investigated or signed without attorney review or approval.[5]

## II.    Insurers Seek Analysis and Communications that are Subject to Privilege.

The Insurers' Subpoena generally seeks three types of information from Eisenberg Rothweiler: (1) communications between Eisenberg Rothweiler and Survivors; (2) records from Eisenberg Rothweiler' s database; and (3) executed POCs. Each of these categories is protected by either the attorney-client privilege or the work product doctrine.

There can be no question that communications with the Survivors must be protected.  When communicating with Survivors, Eisenberg Rothweiler did so as the attorney for the Survivor for the purpose of obtaining the information necessary to prepare and submit POCs. For this task, Eisenberg Rothweiler employed a team of personnel, including investigators and para-professionals, to interview Survivors in an appropriate and comprehensive manner to gather information from claimants to prepare the proof of claim forms and assist the lawyers in preparing for litigation. *Gucci Am. Inc. v. Guess, Inc.*, 271 F.R.D. 58, 71 (S.D.N.Y. 2010) (applying attorney client privilege to protect disclosure of communications between attorney and his agent where the agent "was deputized to gather information from Gucci employees to assist in the litigation").  The Insurers attempt to sidestep this sacred protection by arguing that the requests merely seek facts surrounding the claims verification process. To the extent that the requests seek communications with a third-party, Courts, including those in the Third Circuit, have extended the attorney-client privilege to various third-party agents, including "investigators, interviewers, technical experts, accountants, physicians, patent agents, and other specialists in a variety of social and physical sciences," where those agents assist attorneys in providing legal advice. *See La. Mun. Police Employees Retirement Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 311–12 (D.N.J. 2008); *see also HPD Labs., Inc. v. Clorox Co.*, 202 F.R.D. 410, 415 (D.N.J. 2008) ("To qualify for protection, statements to and from third parties must 'be made in confidence for the purpose of obtaining legal advice *from the lawyer.*'"). The Second Circuit's often-quoted rationale for the exception is that "the complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others" and that therefore "the privilege must include all the persons who act as the attorney's agents." *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) (internal quotation omitted).

The Insurers also seeks to discover material protected by the work product doctrine, such as records in the Eisenberg Rothweiler database and the firm's draft POCs. Under the work-product doctrine, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (*including the other party's* attorney, consultant, surety, indemnitor, insurer, or *agent*.)" Fed. R. Civ. P 26(b)(3)(A) (emphasis added). This "protection extends beyond materials prepared by an attorney to include

---

[5] Further, the fact that the Insurers are targeting a selected group of Coalition-affiliated law firms and are not proposing to investigate all firms that filed attorney signed claim forms just before the Bar Date suggests that this justification is pretextual.

materials prepared by an attorney's agents and consultants." *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 662 (3d Cir. 2003). The work-product doctrine is broader than the attorney-client privilege and is only waived where work product is disclosed to an adversary or treated in a manner that substantially increases the likelihood that an adversary will come into possession of the material. *See United States v. Veolia Environment N. Am. Operations, Inc.*, No. 13-MC-03-LPS, 2014 WL 5511398, *3 (D. Del. Oct. 31, 2014). Draft POCs, like drafts of pleadings, affidavits, and other legal documents, are quintessential work product routinely protected by the courts. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 510 n.9 (1947); *Veolia Environment N. Am. Operations, Inc.*, 2014 WL 5511398, at *8 ("Preliminary drafts of contracts are generally protected by attorney-client privilege, since [they] may reflect not only client confidences, but also legal advice and opinions of attorneys." (quoting *Andritz Sprout-Bauer, Inc. v. Beazer E., Inc.*, 174 F.R.D. 609, 633 (M.D. Pa. 1997))); *Astra Aktiebolag v. Andrx Pharm., Inc.*, 208 F.R.D. 92, 104 (S.D.N.Y. 2002) (observing that "draft pleadings, draft briefs, and other drafts or documents prepared by lawyers" in "anticipation of litigation" are "work product documents"). This privilege applies even where the drafts are not prepared by an attorney and, instead, are prepared by an attorney's agent at the attorney's direction. *See In re Grand Jury*, 138 F.3d 978, 981 (3d Cir. 1998). Here, Eisenberg Rothweiler drafted the POCs pursuant to its agreements with each Survivor and prepared and maintained documents relating to such claims. As such, all drafts of the POCs are protected from disclosure under the work-product doctrine.

### III.    The Proposed Discovery Requests Are Overly Broad and Unduly Burdensome.

The Insurers' proposed discovery requests are overbroad, unduly burdensome, and disproportionate to the needs of these cases. The Insurers assert that their discovery requests "seek information relevant to investigating the integrity of the aggressive nationwide claims solicitation, aggregation, and submission process— a process that resulted in ER filing more than 18,000 POCs (on its own behalf and through AIS)." Motion at I. But even putting aside the number of claimants swept up in their discovery scheme—17 requests for production for each of the 18,000 claimants results in over 198,000 unique discovery requests—the requests for productions are overbroad and lacking requisite temporal and substantive specificity. For example, Request No. 8 provides: "For each Claim Form submitted to Omni by Your law firm, all documents, including but not limited to time entries, reflecting or relating to the actions Your law firm took to confirm the existence of evidentiary support for the facts set forth in the Claim Form." Aside from the obvious privilege concerns with such a request, to respond to something like this—pulling all of the details of all actions the firm took for each claim—would be a herculean task and with no real benefit to the cases.

The Insurers' subpoena is also improper under the proportionality rules set forth in Civil Rule 26(b)(1). Under Civil Rule 26(b)(1), "requested discovery must be 'proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *In re Maxus Energy Corp.*, 617 B.R. 806, 813 (Bankr. D. Del. 2020) (quoting Civil Rule 26(b)(1), made applicable by Bankruptcy Rule 7026) (emphasis added). The Debtors have files that record instances of sexual abuse alleged against the

Boy Scouts that span multiple decades. The Insurers have significant exposure under their policies and have been the Debtors' insurers of choice for decades. The Insurers also have volumes of data and information regarding abuse claims in other contexts, including the Catholic dioceses bankruptcies. The data may show that there have been thousands of complaints made and that the number of claimants in these cases is not surprising and, in fact, may understate the number of actual victims. But the key point under Civil Rule 26(b)(1) is this: the Insurers should not be permitted to launch an extremely expansive and expensive discovery campaign involving thousands of victims of sexual abuse without first making information that is readily identifiable, and in their possession, custody, and control available to other parties. This is necessary to determine if the proposed discovery is proportional to the needs of these cases.

## CONCLUSION

Eisenberg Rothweiler respectfully request that the Court deny the Motion and find that the attorney-client privilege and the work product doctrine, together with the privilege log produced by Eisenberg Rothweiler, preclude the production sought by the Zurich Insurers' subpoena.

Respectfully submitted,


*/s/ Daniel K. Hogan*
Daniel K. Hogan, Esq. (#2814)


cc:     All counsel of record (via CM/ECF)