

500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
302-652-3131    fax
—
New Jersey
—
New York
—
Maryland
—
Texas
—
Florida

Justin R. Alberto
Member
Admitted in DE

Reply to Delaware Office
Writer's Direct Line: 302-651-2006
Writer's Direct Fax:
Writer's E-Mail: jalberto@coleschotz.com

November 18, 2021

**Via Hand-Delivery & CM/ECF**
The Honorable Laurie S. Silverstein
Chief Judge
United States Bankruptcy Court
824 North Market St., 6th floor
Wilmington, DE 19801

   **Re:** *In re Boy Scouts of America and Delaware BSA, LLC*
      **Case No. 20-10343 (LSS)**

Dear Judge Silverstein:

  Slater Slater Schulman LLP ("Slater") submits this letter in response to certain insurers' (together, the "Insurers")[1] motion dated November 15, 2021 (the "Motion") [D.I. 7240][2] seeking to compel Slater to produce documents in response to a Rule 45 subpoena and accompanying requests for production of documents (the "Requests").

**Preliminary Statement**

  Under the guise of confirmation discovery, the Insurers seek to obtain virtually the same discovery from Slater and other similarly situated firms that they failed to obtain months ago following motion practice and a contested hearing on their Rule 2004 Motion [D.I. 2022]. In connection with the Rule 2004 Motion, the Insurers alleged, *inter alia*, that Slater conspired with other plaintiffs' firms to artificially inflate the number of claims filed against the Debtors, lacked authority to sign proof of claim forms on behalf of its clients, and failed to properly investigate the facts underlying its clients' claims. Tellingly, despite obtaining court approval to obtain discovery from the so-called "claim aggregators," the Insurers have again failed to come forward with any evidence to justify a second bite. Rather, the Motion is replete with the same unsubstantiated

---

[1] The Insurers are: Indian Harbor Insurance Company, Century Indemnity Company, Claredon American Insurance Company, Allianz Global Risks US Insurance Company, Great American Assurance Company, AIG Companies, Old Republic, Arrowood Indemnity Company, National Surety Corporation, and the Zurich Insurers.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

Cole Schotz P.C.

The Honorable Laurie S. Silverstein
November 18, 2021
Page 2

rhetoric and innuendo that this Court previously found insufficient to justify broad discovery from non-party law firms.

The Motion is devoid of any substantive explanation concerning the relevancy of the information sought by the Insurers in the context of plan confirmation (as opposed to the claims reconciliation and allowance process that is not before the Court).  Slater is not casting a master voting ballot on behalf of its clients.  The firm's clients will themselves decide whether to vote on the plan and, if so, whether to accept or reject it.  Moreover, most – if not all – of the Requests seek information that is clearly protected by attorney-client privilege or work product doctrine, or is otherwise of a highly sensitive commercial nature.  The probative value of this information – to the extent there is any – is far surpassed by the prejudice to Slater in having to publicly reveal its business practices and the details of its client engagements.

The Insurers' unsubstantiated attack on Slater continues to be wholly inappropriate and offensive under the circumstances.  To date, Slater has filed approximately 14,200 claims on behalf of sexual abuse victims.  *Approximately 95% of these claims were signed by actual claimants prior to the bar date and approximately 97.5% of these claims have been signed by actual claimants as of today*.  No objection to these claims has been filed.  The Insurers have had, and will continue to have, an opportunity to challenge these claims and their liability to satisfy them.  But the claims allowance process is not presently before the Court and the discovery sought by the Insurers has no bearing on confirmation.  The Motion should be denied in its entirety.

## **Background**

Slater represents approximately 14,200 victims of sexual abuse that filed claims in these chapter 11 cases.  Slater is a twenty-six attorney law firm that devotes a significant part of its practice to representing victims of sexual abuse in the individual tort and institutional settings.  This includes the representation of claimants in sexual abuse-related mass tort bankruptcy filings, and Slater presently has clients on Tort Claimant Committees in multiple ongoing Archdiocese bankruptcies.  Slater's clients signed retainer agreements that provided Slater with the "exclusive right to take all legal steps to enforce" the clients' claims (the "Retainer Agreement").  Attached as Exhibit 1 is a copy of a sample Retainer Agreement that was signed by Slater's clients.  No claim aggregator or other third party prepared or signed proofs of claim on behalf of Slater's clients.  Slater prepared and filed each proof of claim.  Of the approximately 14,200 proofs of claim that were filed by Slater prior to the bar date, only approximately 5% were signed by Slater attorneys.  Slater attorneys signed those proofs of claim only after the firm attempted to contact its clients directly to obtain their consent and were unable to do so.  Prior to signing these proofs of claim, Slater obtained a written opinion (the "Ethics Opinion") from an ethics attorney, who opined that Slater not only had authority to sign the proofs of claim on behalf of its clients, but that the firm likely had an ethical obligation to do so.  A copy of the Ethics Opinion is attached as Exhibit 2.  Following the bar date, Slater filed amended proofs of claim with client signatures for a majority of the claims that were initially filed with Slater signatures prior to the bar date.  As of today, only approximately 336 attorney-signed proofs of claim remain out of the approximately 14,200 claims filed by Slater.  Slater is not using a master ballot and is not casting votes on behalf of its clients

Cole Schotz P.C.

The Honorable Laurie S. Silverstein
November 18, 2021
Page 3

in connection with the solicitation of the plan. Slater's clients will decide whether to cast their ballots in accordance with the Court-approved voting procedures and, if so, whether to accept or reject the plan.

Prior to the filing of the Motion, Slater's counsel met and conferred with counsel to Zurich regarding the Requests. During the most recent meet and confer, Slater's counsel indicated that Slater might be willing to provide information in response to Requests 1 and 4 concerning the firm's authority to file proofs of claim on behalf of its clients. Slater believes that its production of the Retainer Agreement attached hereto should be adequate to resolve those two Requests.

**The Insurers Seek Information That is Not Relevant to Confirmation**

The party seeking discovery from a non-party must show, among other things, that the information sought is relevant to the claims or defenses at issue in the case.[3] A court must weigh the party's claims of relevancy and need for the requested discovery against the non-party's interest in preventing disclosure.[4] Here, the Requests seek discovery concerning virtually every aspect of Slater's work on these cases from intake through the filing of approximately 14,200 proofs of claim.

Nowhere in the Motion do the Insurers explain the relevance of the information sought to plan solicitation, voting or confirmation. Slater is not using a master ballot to cast votes. It is not voting on behalf of its clients. Slater's clients *themselves* are casting ballots pursuant to the court-approved procedures. Accordingly, there can be no legitimate concern that votes are being cast without client consent. Moreover, Slater did not use "claim aggregators" to sign proofs of claim and 97.5% of the claims filed by Slater were signed by the firm's clients. That Slater signed and filed proofs of claim on behalf of a fraction of its clients is wholly appropriate. Indeed, the firm obtained an Ethics Opinion before signing and filing these proofs of claim, which confirmed the practice is not only appropriate under the circumstances, but that Slater likely had an ethical obligation to sign proofs of claim where its clients were unresponsive. The Insurers have offered no evidence disputing these facts or evidence suggesting that Slater attorneys improperly delegated their legal duties and obligations to non-lawyers.

The Insurers argue that discovery sought is relevant to the Debtors' potential liability or the Trust Distribution Procedures. But the claims allowance process is not at issue in the context of plan confirmation. Not a single objection to Slater's clients' claims has been filed to date. It is black letter law that a proof of claim is *prima facie* valid[5] and "deemed allowed" unless or until an

---

[3] *Verisign, Inc. v. XYZ.com, LLC*, No. CV 15-MC-175-RGA-MPT, 2015 WL 7960976, at *1 (D. Del. Dec. 4, 2015) (citing Fed. R. Civ. P. 26(b)(1)).

[4] *Id.*

[5] Fed R. Bankr. P. 3001(f).

Cole Schotz P.C.

The Honorable Laurie S. Silverstein
November 18, 2021
Page 4

objection has been filed.[6]  As is customary in mass tort chapter 11 cases, a post-confirmation estate fiduciary will be responsible for investigating, reconciling, and objecting to proofs of claim.

### The Requests Seek Documents that Are Protected By the Attorney-Client Privilege and the Work Product Doctrine

Requests 2, 5, 7, 9 and 10 seek information that is protected by the attorney-client privilege. The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."[7]  At the meet and confer, Slater's counsel explained to Zurich's counsel that Slater attorneys did not keep time records particular to individual clients (which is not uncommon for contingency cases).  Therefore, the only documents that would show the time spent by attorneys on the files, the identity of individuals that worked on claims and interacted with claimants, and other information sought by the Insures are communications between Slater and their clients or internal communications reflecting attorney-client communications.  Those documents are clearly privileged.

Many of the Requests also seek information that is protected by the work product doctrine, which "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."[8]  Requests 7-10 and 14-16 seek documents that reflect Slater attorneys' efforts to "confirm[] the existence of evidentiary support" for the claims.  In order to respond to these Requests, Slater would necessarily be required to produce internal notes and memos, research conducted by its attorneys, and compilations of documents put together by counsel or staff.  These documents reflect Slater attorneys' mental impressions and are therefore protected by the work-product doctrine.

Slater also submits that it would be unduly burdensome under these circumstances to produce a traditional privilege log, which would require Slater to comb through over 14,000 client files.  At the meet and confer, Slater offered to produce a categorical log identifying categories of documents and the volume of documents within such categories.  The Insurers rejected this proposal.  Slater submits that a categorical log is appropriate based on the facts and circumstances of these cases.

### There Was No Waiver of the Attorney-Client Privilege or Work Product Doctrine

That Slater signed certain proofs of claim on behalf of its clients does not operate to waive privileges.  Bankruptcy Rule 9011 contemplates the execution of documents, including proofs of claim, by attorneys and this Court has authorized attorneys to sign proofs of claim pursuant to D.I.

---

[6] 11 U.S.C. § 502(a).

[7] *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

[8] *United States v. Nobles*, 422 U.S. 225, 238 (1975).

Cole Schotz P.C.

The Honorable Laurie S. Silverstein
November 18, 2021
Page 5

1551. The Court cautioned that signing proofs of claim might subject attorneys to becoming a fact witness; however, it does not logically follow that an attorney who signs a proof of claim is thereafter required to disclose privileged communications or work product.

Nor are privileges waived simply because documents may be shared with third parties. Slater used certain claims administration services to assist in its representation of its clients, and where it has done so it has maintained a common interest in preserving the confidentiality of client information.[9] Likewise, information that Slater shared with litigation financers, including Catalur, is protected by the common interest doctrine as well.[10]

**<u>Information Related to Other Third Parties Is Not Discoverable</u>**

Requests 3, 11-13, and 17 seek documents related to Slater's relationship with third parties such as call centers, claim processors, third party administrators, and claim aggregators, as well as third party funding sources. Slater submits that its relationship with such parties is an integral part of the firm's business model and therefore constitutes "commercial information" under Fed. R. Civ. P. 45(d)(3)(B)(i). When commercial information is at issue, courts will generally analyze four factors, (i) relevance, (ii) need, (iii) confidentiality, and (iv) harm in making a determination on a case by case basis as to whether documents demanded must be produced.[11] Here, those factors weigh heavily against the Insurers' Requests. Again, the Insurers offer no explanation as to the relevancy of this information to confirmation. No "claim aggregator" or other third party participated in the execution or submission of proofs of claim for Slater's clients. Accordingly, there is no probative value in requiring Slater to identify its relationship or use of "claim aggregators" (or whomever the Insurers decide to include within their definition of "claim aggregators"). The Insurers correctly note that Catalur provided financing to Slater, but fail to offer any explanation as to why such financing is relevant to plan solicitation, voting or confirmation. Courts have routinely held that documents related to litigation funding are not

---

[9] *In re Leslie Controls, Inc.*, 437 B.R. 493, 496-98 (Bankr. D. Del. 2010) ("The common interest doctrine 'allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others.' It expands the reach of the attorney-client privilege and work product doctrine by providing that, under certain circumstance, the sharing of privileged communications with third parties does not constitute a waiver of the privilege." (internal citations omitted)); *Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 311 (D.N.J. 2008) (noting that the privilege can extend to "third-party agents," including "investigators, interviewers, technical experts, accountants," and others.)

[10] *Devon It, Inc. v. IBM Corp.*, 2012 WL 4748160 (E.D. Pa. Sept. 27, 2012).

[11] *Mannington Mills, Inc. v. Armstrong World Industries, Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002).

Cole Schotz P.C.

The Honorable Laurie S. Silverstein
November 18, 2021
Page 6

relevant and not discoverable.[12]  A mere UCC search by an opposing party should not permit said party to seek confidential and proprietary information about an opponent, especially when they have provided zero justification for such invasive demands.

## Conclusion

For the foregoing reasons, Slater respectfully requests that the Court deny the Motion in its entirety.

Very truly yours,

*/s/ Justin R. Alberto*

Justin R. Alberto

cc:

Robert Cecil (by email rcecil@trplaw.com)
Matthew G. Summers (by email summersm@ballardspahr.com)
Chantelle D. McClamb (by email mcclambc@ballardspahr.com)
Michael J. Joyce (by email mjoyce@mjlawoffices.com)
Margaret M. Anderson (by email panderson@foxswibel.com)
Ryan T. Schultz (by email rschultz@foxswibel.com)
Adam A. Hachikian (by email ahachikian@foxswibel.com)
Stamatios Stamoulis (by email stamoulis@swdelaw.com)
Richard Charles Weinblatt (by email weinblatt@swdelaw.com)
Mark D. Plevin (by email mplevin@crowell.com)
Kevin Cacabelos (via email kcacabelos@crowell.com)
Kelly T. Currie (by email kcurrie@crowell.com)
Clifford J. Zatz (by email czatz@crowell.com)
Tacie H. Yoon (by email tyoon@crowell.com)
Nimi Aviad (by email naviad@crowell.com)
Rachel Jankowski (by email rjankowski@crowell.com)

---

[12] *See e.g.*, *United Access Techs., LLC v. AT&T Corp.*, No. CV 11-338-LPS, 2020 WL 3128269, at *1 (D. Del. June 12, 2020); *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.*, 405 F. Supp. 3d 612, 615 (D.N.J. 2019) (citing *Benitez v. Lopez*, 2019 WL 1578167, at *1 (E.D.N.Y. March 14, 2019)); *MLC Intellectual Property LLC v. Micron Technology, Inc.*, 2019 WL 118595, at *2 (N.D. Cal. Jan. 7, 2019); *Kaplan v. S.A.C. Capital Advisors, L.P., S.A.C.*, 2015 WL 5730101, at *5 (S.D.N.Y. Sept. 10, 2015), *aff'd*, 141 F. Supp. 3d 246 (S.D.N.Y. 2015).

Cole Schotz P.C.

The Honorable Laurie S. Silverstein
November 18, 2021
Page 7

Danielle Giffuni (by email dgiffuni@crowell.com)
Danielle Rowan (by email drowan@crowell.com)
Lloyd A. Gura (by email lgura@moundcotton.com)
Pamela J. Minetto (by email pminetto@moundcotton.com)
Kathleen M. Miller (by email kmiller@skjlaw.com)
Todd C. Jacobs (by email tjacobs@bradleyriley.com)
John E. Bucheit (by email jbucheit@bradleyriley.com)
Tancred Schiavoni (by email tschiavoni@omm.com)
Daniel Shamah (by email dshamah@omm.com)
John O'Connor (by email joconnor@steptoe.com)
Brett Grindrod (by email bgrindrod@steptoe.com)
Harris B. Winsberg (by email harris.winsberg@troutman.com)
Margaret H. Warner (by email mwarner@mwe.com)
Ryan S. Smethurst (by email rsmethurst@mwe.com)
Bruce W. McCullough (by email bmccullough@bodellbove.com)
Bruce D. Celebrezze (by email bruce.celebrezze@clydeco.us)
Konrad R. Krebs (by email konrad.krebs@clydeco.us)
David Christian (by email dchristian@dca.law)
Deirdre M. Richards (by email drichards@finemanlawfirm.com)
Susan N.K. Gummow (by email sgummow@fgppr.com)
Michael A. Rosenthal (by email mrosenthal@gibsondunn.com)
James Hallowell (by email jhallowell@gibsondunn.com)
Keith R. Martorana (by email kmartorana@gibsondunn.com)
Matthew G. Bouslog (by email mbouslog@gibsondunn.com)
Lorraine Armenti, Esquire (by email larmenti@cmg.law)
Michael Hrinewski, Esquire (by email mhrinewski@cmg.law)
Britton C. Lewis (by email bcl@crlaw.com)
David M. Fournier (by email david.fournier@troutman.com)
Marcy J. McLaughlin Smith (by email marcy.smith@troutman.com)
Harris B. Winsberg (by email harris.winsberg@troutman.com)