# **Exhibit 2**

# LAW OFFICES OF
# MITCHELL T. BORKOWSKY

200 Broadhollow Road, Suite, 207
Melville, New York 11747
Tel: 516-855-3777
Fax: (516) 407-5686
Email: Mitch@myethicslawyer.com
Website: www.myethicslawyer.com

November 3, 2020

***Personal and Confidential***

Adam P. Slater, Esq.
Slater Slater Schulman LLP
445 Broadhollow Road, Suite 419
Melville, New York 11747

Re: Ethics Opinion

Dear Mr. Slater:

Please accept this letter in response to your request for an ethics opinion. This opinion is based upon my experience practicing exclusively in the area of professional ethics for over twenty years, including eleven years as Chief Counsel and Deputy Chief Counsel to the New York State Grievance Committee for the Tenth Judicial District of the New York Supreme Court, Appellate Division, Second Department. Throughout my tenure with the Committee, I provided legal advice and guidance to the Committee, its chairpersons, and its individual members, while overseeing the operations of the Committee's professional and administrative staff. I routinely evaluated all aspects of alleged misconduct by attorneys and prosecuted matters before the Grievance Committee and the Appellate Division, Second Department. Since retiring from the Appellate Division, I have engaged in the private practice of law, dedicated exclusively to defending lawyers from charges of misconduct, counseling lawyers and law firms on law office management, and opining upon matters of professional ethics.

I am an active member of the Ethics Committees of both the Nassau County and Suffolk County Bar Associations and have written or participated in the drafting of ethics opinions for both Committees. I regularly lecture on attorney ethics and disciplinary matters at Continuing Legal Education programs sponsored by the bar associations and other venues and have authored articles on attorney ethics and grievance matters appearing in the bar association journals.

**Facts As Presented**

Slater Slater Schulman LLP (SSS) represents many clients in the BSA of America (BSA) Bankruptcy. These clients have unsecured claims against the BSA for acts of sexual abuse committed against them as minors. In order to assert their claim, a proof of claim form must be filed by the "bar date", which is the last day to file a proof of claim form. The BSA bar date is set for November 16, 2020. If a client fails to file a proof of claim form by said bar date, he will be forever barred from bringing a claim against the BSA.

Adam P. Slater, Esq.
November 3, 2020

SSS works with its clients to procure and draft the claim form and submits the claims on their behalf. This is an in-depth process that often takes multiple phone calls, emails, and phone conferences to prepare the claim form in a manner that best tells their stories. Since these clients are survivors of sexual abuse it is often a more difficult process than in other cases. The clients are in many cases opening up about their histories for the first time, and often tell their stories in pieces in an emotional process. With that said, SSS has been able to successfully finalize the proof of claim form with a substantial majority of its clients.

SSS represents clients in the BSA bankruptcy matter both after being retained directly (i.e. where the client contacts SSS) or by associating with co-counsel (i.e. other law firms who work with SSS due to its experience in Sexual Abuse litigation). In the former case, the client enters into a retainer agreement solely with SSS; in the latter case, the client enters into a joint retainer agreement with SSS and the other law firm. The retainer agreements grant SSS (or SSS and co-counsel, as the case may be) "the exclusive right to take all legal steps to enforce said claims [or to reject such claims if,] after reviewing and investigating the merits, [] a determination is made in the attorneys' sole and professional judgment that an action is not maintainable."

When a case is retained initially by another law firm, that co-counsel firm typically obtains the underlying facts of the BSA abuse (either directly or by its agents) prior to SSS receiving the client information. This information is typically enough information to allow SSS to draft a proof of claim form. We then reach a substantial majority of these clients and go through the claim form process with them in order to finalize the proof of claim, as described above. If, upon our review of the facts provided to us, we do not believe with reasonable certainty that they are accurate, we will not sign the proof of claim form.

There is, however, a small minority of clients (who either retained us directly or via our co-counsel) that we are unable to reach. We take very aggressive efforts to reach them, inclusive of calls, emails, text messages, and letters.[1] Moreover, these clients are retained at different times. We decided internally to formally reject clients who have not responded to any of our efforts to reach them if they entered into retainer agreements on or before September 15, 2020.

For clients who retained us (either directly or via our co-counsel) after September 15, 2020, but who were thereafter unresponsive, we intend to sign the proof of claim forms on their behalf because (i) we have enough facts provided to us on the file to believe they have an actionable claim, (ii) two months is not a very long time without contact, especially in light of the nature of their sexual abuse claims (again, many survivors have had these stories "bottled up" for decades), and (iii) these clients have recently signed a retainer agreement and have a belief they are represented by counsel who were hired to act on their behalf in their best interests. Clearly, missing the bar date is not in their best interests (arguably malpractice as well). We also send all of these clients letters advising them we intend to file a proof of claim form prior to the bar date if we do

---

[1] In instances where a client does not respond to repeated attempts to reach them, SSS sends a "conditional" rejection letter, usually by certified mail and regular mail, imploring the client to call. If, after a reasonable amount of time the client does not call, a more formal rejection letter is sent by certified mail, advising the client of, among other things, the manner in which to pursue the claim on his or her own.

2

Adam P. Slater, Esq.
November 3, 2020

not hear from them. Finally, there is an amendment process which we intend to use when we reach the client in an effort to better the claim form if needed.

**Questions Raised:**

1.  When we do have contact with the client and have gone through the claim form process described above, but we have not received a signed claim form prior to the bar date, can we (or do we have a duty to) sign the proof of claim form on their behalf?

2.  When we are co-counsel on a claim with another attorney and we receive the intake information from that attorney or their agent within two months of the bar date, and we are unable to reach the client despite many efforts, can we (or do we have a duty to) sign the proof of claim form on their behalf to protect their rights?

**Discussion/Opinion**

This matter is unique and very fact specific, and the facts bear heavily upon my opinion in applying the Rules of Professional Conduct ("RPC") [22 NYCRR 1200] that are in play here. There are several ethical principles that must be considered in each of the two questions raised. The circumstances of both questions highlight the close relationship between an attorney's duty to communicate with clients about the means by which the client's objectives are to be accomplished and the attorney's duty to act competently and diligently.[2] Question 2, in particular, also

---

[2] RULE 1.1: COMPETENCE
   (a) A lawyer should provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.
   * * *
   (c) A lawyer shall not intentionally: (1) fail to seek the objectives of the client through reasonably available means permitted by law and these Rules; or (2) prejudice or damage the client during the course of the representation except as permitted or required by these Rules.

RULE 1.2: SCOPE OF REPRESENTATION AND ALLOCATION OF AUTHORITY BETWEEN CLIENT AND LAWYER
   (a) Subject to the provisions herein, a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued...

RULE 1.4: COMMUNICATION
   (a) A lawyer shall... (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished; (3) keep the client reasonably informed about the status of the matter;

RULE 1.3: DILIGENCE
   (a) A lawyer shall act with reasonable diligence and promptness in representing a client; (b) A lawyer shall not neglect a legal matter entrusted to the lawyer;... (c) A lawyer shall not intentionally fail to carry out a contract of employment entered into with a client for professional services, but the lawyer may withdraw as permitted under these Rules.

Adam P. Slater, Esq.
November 3, 2020

implicates hybrid legal and ethical questions concerning the propriety of signing documents submitted to a court under the circumstances described herein.[3]

## QUESTION 1

> When we do have contact with the client and have gone through the claim form process described above, but we have not received a signed claim form prior to the bar date, can we (or do we have a duty to) sign the proof of claim form on their behalf?

This question does not disclose whether these particular clients have become unresponsive, changed their minds, or are merely being dilatory in returning signed proof of claim forms. RPC 1.2(a) requires an attorney to abide by a client's decisions concerning the objectives of representation and, together with RPC 1.4(a)(2), requires the lawyer to reasonably consult with the client about the means to be used to accomplish the client's objectives. Implicit in the fact that these clients have gone through the extensive claim form process with SSS, as described above, it is reasonable to assume that they have not changed their minds about having the attorneys pursue the claims on their behalf. It also appears from the facts presented that these are instances in which SSS has satisfied itself to a reasonable degree of certainty as to the accuracy of the information contained in the forms. Presumably, SSS will continue to seek to communicate with these clients prior to the bar date to secure the signed claim forms or ascertain the clients' wishes. In the event they cannot be reached, SSS must act to ensure that their claims are filed and their interests protected. In some situations, where immediate action is required to protect a client's interests, "the exigency of the situation may require the lawyer to act without prior consultation." Roy D. Simon, Jr., SIMON'S NEW YORK RULES OF PROFESSIONAL CONDUCT ANNOTATED, §1.4 (2019).

The firm's retainer agreement with its clients grants SSS authority to take all legal steps to enforce the claims. With the impending deadline for filing proofs of claims approaching, absent specific instructions from these clients to not file their claims, a knowing failure on SSS's part to execute and file the forms on their behalf would, in the undersigned's opinion, constitute a violation of its duty to act competently, in violation of RPC 1.1. That rule prohibits lawyers from intentionally: (1) failing to seek the objectives of clients through reasonably available means permitted by law; or (2) prejudicing or damaging a client during the course of the representation. Such failure would also constitute neglect of a client matter in violation of RPC 1.3. Inasmuch as attorneys are permitted by the Bankruptcy Rules to sign claim forms on behalf of clients, provided there is no impediment to their doing so, e.g., a lack of a reasonable belief that the information contained therein is true, it is the undersigned's opinion that SSS can and has a duty to sign the forms and submit them on behalf of these clients.

---

[3] The undersigned is not a bankruptcy attorney. Nevertheless, it is noted that the Federal Rules of Bankruptcy Procedure provide that a proof of claim may be "executed by the creditor or the creditor's authorized agent..." Fed. R. Bankr. P. 3001(b). Similarly, the current official proof of claim form, provides that the form may be executed by the "creditor" or the "creditor's attorney or authorized agent." Official Form 410 at part 3. Some bankruptcy courts have held or cautioned that the act of signing a proof of claim form may make the attorney a fact witness and can result in disqualification and a waiver of attorney-client and/or work product privileges. In Re Duke Investments, Ltd. 545 B.R. 414 (Bankr. S.D. Texas 2011); see, also, Matter of Rodriguez, 2013 W.L. 2450925 (SD. Texas 2013). **The undersigned offers no opinion as to the applicability or effect of those cases on this matter.**

4

Adam P. Slater, Esq.
November 3, 2020

## **QUESTION 2**

> When we are co-counsel on a claim with another attorney and we receive the intake information from that attorney or their agent within two months of the bar date, and we are unable to reach the client despite many efforts, can we (or do we have a duty to) sign the proof of claim form on their behalf to protect their rights?

The analysis of Question 1, above, is equally applicable to this question with respect to SSS's obligation to communicate with these clients and take all legal steps necessary to enforce their claims.

The facts as presented reveal that SSS intends to sign and submit proofs of claims for all clients who retained the firm (either directly or via co-counsel) after September 15, 2020, even if they have been unresponsive to date. SSS made this determination because (i) the firm believes that enough facts have been provided on these clients' files to establish actionable claims; (ii) a two month gap in communication is not a significant amount of time given, among other things, the fragile emotional state of many of these sexual abuse clients; and (iii) having only recently signed retainer agreements, these clients have a reasonable belief that they are being represented by counsel who were hired to act in their best interests. Nonetheless, this question draws a distinction between those recent clients who retained SSS directly and those who came to SSS via co-counsel. In our conversations concerning this opinion letter, concern was expressed about signing claim forms for those clients who were not subjected to SSS's vetting on intake.

SSS's concern about the ethical implications of executing proofs of claim on behalf of recent clients brought to them by co-counsel, where the clients' information may not have gone through the same intake process accorded clients who retained the firm directly is reasonable and justified. Of significant concern is that the signature block on the proof of claim form requires the person executing the proof of claim form to declare, as follows:

> "I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.
>
> "I declare under penalty of perjury that the foregoing is true and correct."

This requirement imposes a heavier burden upon the person signing a proof of claim form than even the strictures of Bankruptcy Rule 9011(b), which requires a person submitting papers to the Bankruptcy Court to certify that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that (1) the papers are not being submitted for an improper purpose; (2) the claims contained therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law; and (3) that the allegations in the claim have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. Fed. R. Bank. P. 9011(b). This Bankruptcy Rule, which is still applicable, is substantially consistent with RPC 3.1, which

5

prohibits an attorney from bringing or defending a proceeding, or asserting an issue therein, unless there is a basis in law and fact for doing so that is not frivolous.

Moreover, a properly executed and filed proof of claim serves as *prima facie* evidence as to the claim's validity and amount, and thus, to the facts alleged therein. Fed. R. Bankr. P. 3001(f). Consequently, consideration must be given to whether submitting the claim forms violates RPC 3.3, which proscribes an attorney from knowingly making a false statement of fact or law to a tribunal or offering or using evidence that the lawyer knows to be false.

It is the undersigned's opinion that, under these facts and circumstances, SSS's duty to protect its clients' interests and represent them competently outweighs any trepidation the firm may feel about executing and filing the proofs of claim on their behalf. In the first instance, as stated above, SSS believes that enough facts have been provided by co-counsel on the clients' files to establish actionable claims, thus rendering them not frivolous under Bankruptcy Rule 9001(b) and RPC 3.1. Secondly, merely because SSS lacked time to more fully engage these clients in their extensive claim form process does not render the provided information false, nor should it cause SSS to believe, let alone "know," that the information is false. Therefore, executing and submitting the claim forms with such information would not violate RPC 3.3. Thirdly, in the undersigned's view, under these circumstances, it is not inaccurate for the person signing the claim form to declare, under penalty of perjury or otherwise, that he has "examined the information in this Proof of Claim and has a reasonable belief that the information is true and correct."

Accordingly, for the same reasons set forth in the analysis of Question 1, with the bar date fast approaching, it is the undersigned's opinion that SSS can, and has a duty to, sign and submit the proof of claim forms to protect the rights of these clients brought to them by co-counsel, subject to the stated intent to amend same, if necessary, as more information is obtained.

**Conclusion:**

In conclusion, it is the opinion of the undersigned that the answer to both questions raised is yes.

Thank you.

Very truly yours,

MITCHELL T. BORKOWSKY