# CONAWAY-LEGAL LLC

BERNARD G. CONAWAY, ESQUIRE

*ADMITTED TO DELAWARE*

1007 NORTH ORANGE STREET, SUITE 400
WILMINGTON, DE 19801
(302) 428-9350
(302) 528-8687 (C)
(844) 364-0137 (F)
bgc@conaway-legal.com

November 18, 2021

**By CM/ECF**
The Honorable Laurie Selber Silverstein
Chief Judge, U.S. Bankruptcy Court for the District of Delaware
824 North Market Street, 6th Floor
Wilmington, Delaware 19801

    Re:    *In re Boy Scouts of America and Delaware BSA, LLC*, No. 20-10343 (LSS)

Dear Judge Silverstein:

Please accept this letter as the response of the Krause & Kinsman Law Firm (hereafter "Krause & Kinsman") to the Insurers' Omnibus Motion to Compel (hereafter "Insurers' Motion") filed on November 15, 2021. **DK** 7239.

To avoid duplication, Krause & Kinsman adopts and incorporates as if fully re-printed here, the response and objections of the ASK LLP, Andrews & Thornton and Slater Slater Schulman LLP law firms filed today in response to the Insurers' Motion. DK 7334 and 7335, respectfully. Krause & Kinsman takes this opportunity to highlight what the Insurers' Motion cannot accomplish.

## THE RELEVANCE WORMHOLE

Long ago, a mentor summed up litigation practice – *Never take your eye off the cookie*. Simple, practical advice. The Insurers' Motion is a poignant illustration showing why that advice bears heeding.

The fundamental truth is that nothing helpful is accomplished by giving the Insurers the discovery they seek. To step back for a moment. If we set aside every procedural problem, ignore the attorney-client privilege and confidentiality objections, set aside every relevance argument, and ignore obvious substantive objections related to the interrogatories themselves, and everyone relents, then the Insurers receive answers to their discovery requests. What next?

> ➢ **With discovery responses in hand, will the Insurers demand that the Court prohibit certain claimants from voting on confirmation**?

The Honorable Laurie Selber Silverstein
*In re Boy Scouts of America*
November 18, 2021
Page 2

---

If prohibiting claimant voting is the Insurers' reason for law firm discovery, then the information yielded by that discovery, standing alone,[1] is wholly inadequate to support the *radical* step of denying a claimant the right to vote on confirmation. One look at the interrogatories reveals the problem. The interrogatories are based upon no more wild-eyed speculation.[2] As such, those answers will, at best, yield no actionable evidence.

> ➢ **If the Insurers receive discovery responses, does that end the need for additional discovery?**

Not likely. The interrogatories seek information the answers to which cannot, standing alone, support a decision to deny any claimant the Congressionally-mandated, statutorily imposed right to vote on confirmation. This conclusion should be evident to anyone. More likely, the Insurers will need significantly more information to support a credible request to prohibit voting. With the confirmation vote about a month and a half away, that discovery will inevitably impair and more likely delay the Debtors' ability to reach a critical point in their reorganization.

> ➢ **In what way does the Insurers' discovery facilitate the Debtors' progress toward reorganization?**

It does not. The Debtors are approaching a critical reorganization mile marker. Maintaining that progress is impossible if the Insurers' effort is validated. The fact is that the Insurers espouse a theory of attorney duplicity based upon a Rube Golberg-esq glob of observations held together with duct tape and coat hangers. This discovery adds too little to convert that speculative mess into actionable information sufficient to support an order foreclosing a claimant's voting right.

> ➢ **Is the discovery sought, including the timing/delay in seeking it, its impact, and the utility of consistent with the FEDERAL RULES OF CIVIL PROCEDURE?**

Not in the least. RULE 1 imposes the simplest of limitations on every action in civil litigation. To wit: the rules governing all civil actions "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and

---

[1] If the Insurers had even a scintilla or other credible evidence supporting their assertion that ethical violations account for a subset of claims, i.e., aside from speculation, this Court would have been made aware of that evidence.

[2] Attached hereto as Exhibit **A** find the interrogatories served by the Insurers. Three interrogatories, one with a handful of sub-parts that, with one potential exception, would not yield actionable information sufficient to warrant a decision to prohibit a claimant from voting.

The Honorable Laurie Selber Silverstein
*In re Boy Scouts of America*
November 18, 2021
Page 3

inexpensive determination of every action and proceeding." There is simply nothing "just, speedy, and inexpensive" about the form, manner, or timing of the Insurers' discovery.

The Insurers' discovery will not yield information sufficient to support a voting prohibition. It will not advance the Debtors' reorganization. It lacks relevance – a conclusion made obvious by the Insurers' own failure to articulate, including the intentional omission of, how, or why the discovery is relevant.[3]

In the end, we lose sight of what is essential, i.e., the cookie, by indulging in the pursuit of the Insurers' discovery because that discovery leads nowhere and yields nothing.

## THE INSURERS' UNTOWARD TACT

Make no mistake about it – the Insurers' law firm discovery is premised upon their self-serving conclusion that the law firms willing breached ethical responsibilities. This tact is patently repugnant. Why? Because their ethical breach is anchored not on tangible or credible evidence but rather on dubious speculation. It is a cardinal rule of civility that the assertion of any ethical violation is serious and should rests on allegations that are likewise sound.

The Insurers accuse the law firms of abandoning their ethical obligation to swell the number of claims. These accusations, according to the Insurers, arise from the following observations:

- 2,507 POCs were signed by a lawyer.

- One lawyer 2,033 POCs in the two weeks before the bar date.

- The law firm worked with a claims aggregator.

- The POCs, were signed by cutting and pasting a pdf image on the POC.

*Insurers' Motion to Compel*, at p. 7. **Not one of these actions, either individually or collectively, constitutes a violation of any ethical, statutory, or other obligation.** Indeed, most are innocuous acts that, viewed from any rational perspective, are

---

[3] The Insurers make no effort whatsoever to tie the relevance of the discovery to the confirmation vote. Indeed, not a single word of the Insurers' Motion addresses relevancy – an odd condition for a motion to compel discovery responses.

The Honorable Laurie Selber Silverstein
*In re Boy Scouts of America*
November 18, 2021
Page 4

otherwise inconsequential. For example, the docket reflects 7,324 filings. The overwhelming bulk of those entries are **not** physically signed by an attorney. Instead, they were signed by a "/s/." Is it reasonable to conclude, based solely on the signature form, that the case docket is rife with fraudulent filings? Of course not. Yet that is precisely how the Insurers support their request for law firm discovery. Does it reflect fraud activity if many of the docket filings were made immediately before a deadline? Again, of course not. Finally, is fraud indicated because one lawyer or one law firm made multiple filings in a single day? If it does, then the practice of filing First Day Motions must change. Reaching the fraud conclusion that the Insurers do, based solely upon their unique observational powers, can only be explained by the adage that a "thief sees the thief in everyone else."

## KRAUSE & KINSMAN CLIENTS WILL SUBMIT THEIR OWN BALLOT

Krause & Kinsman will not rely upon a master ballot. Instead, each client will submit their own ballot. This approach undermines the core of the Insurers' speculation – clients were blindly manipulated by counsel, or counsel acted without the client's consent. Every client will make their own decision – whatever that decision be.

Respectfully submitted,

*/S/ Bernard G. Conaway*

Bernard G. Conaway (DE 2856)

cc:    All Counsel of Record by CM/ECF.