

O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036-6537

T: +1 212 326 2000
F: +1 212 326 2061
omm.com

File Number:

November 21, 2021

**Tancred Schiavoni**
D: +1 212 326 2267
tschiavoni@omm.com

Chief Judge Laurie Selber Silverstein
United States Bankruptcy Court, District of Delaware
824 North Market Street, 6th Floor
Wilmington, DE 19801

**Re:    Boy Scouts of America, 20-10343 (LSS) (D. Del.)—Motion to Compel National Capital Area Council**

Dear Judge Silverstein:

Century respectfully requests that this Court compel National Capital Area Council ("**NCAC**") to produce documents responsive to the subpoena served on October 8, 2021.

## PRELIMINARY STATEMENT

BSA commenced its bankruptcy case to resolve all abuse claim, including many claims against at Local Councils and/or chartered organization. While none of the Local Councils have filed for bankruptcy, under BSA's Plan, each of the Local Councils will be relieved of all liability for Abuse Claims. In exchange for a contribution to the Settlement Trust, they will be treated as Protected Parties and stand to benefit from the third-party release and exculpation provisions. Generally, these type provisions will not be approved without specific findings that the released party substantially contributed to the reorganization and the releases are critical to the successful reorganization. The Local Councils, however, have yet to produce any documents showing that the treatment under the Plan is appropriate or that they satisfy the "substantial contribution" standard. And, for many of the responsive documents, NCAC objects to production based on attorney-client privilege or work product.

Century served subpoenas on 25 of the Local Councils with targeted document requests that directly relate to these key confirmation issues, namely, the third-party releases and each Local Council's contribution to the Settlement Trust. There were over 40 requests and NCAC objected to producing documents responsive to several of the requests as imposing undue burden. And, for many requests, NCAC directs Century to request the documents from another party. In addition, NCAC suggests that certain documents concerning contributions to the Settlement Trust, Local Councils' assets, and claims are already accessible to Century and, therefore, does not require any production. The documents that Century requests are not privileged and are relevant to its analysis of potential confirmation objections and are focused on the exact information that NCAC, as a Protected Party, should show at the confirmation hearing to prove that it is entitled to the relief provided under the Plan. And, even if there is another party with the requested documents, the



requests are appropriately served on NCAC and NCAC should comply and produce all responsive documents.

The Court should order NCAC to produce all documents responsive to the subpoena served on October 8, 2021 and, for any documents withheld as privileged, NCAC should provide a detailed log that explains the basis for its privilege assertion.

## STATEMENT OF FACTS

### *The BSA bankruptcy*

The Boy Scouts of America and Delaware BSA, LLC (collectively "**BSA**") commenced chapter 11 proceedings on February 18, 2020, focused on resolving all abuse claims against BSA. When the cases were filed, BSA was a defendant in 275 cases asserting abuse-related claims against BSA with approximately 1,400 other potential claims. Disclosure Statement, Art. IV.A. [D.I. 6445]. With the entry of an order approving a form of proof of claim that required no collaborating evidence and promised anonymity, the number of abuse claims quickly increased from 275 to more than 82,000.[1] *Id.*, Art. V.N.

### *BSA and the Local Councils*

BSA was formed as a non-profit corporation and operates on a national level. Local Councils are separately organized to implement Scouting programs within their geographical area. *See* Disclosure Statement, Art. III.A. There are approximately 250 Local Councils and each Local Council is separately operated and legally independent from BSA, the national council. Disclosure Statement, Art. III.A.3.a. Each Local Council has its own board, officers and employees, and owns property and assets in its own name. *Id.*

The only legal entity to file for bankruptcy is BSA; none of the Local Councils have filed for bankruptcy.

### *The extraordinary relief sought by the Local Councils under the Plan of Reorganization*

On September 30, 2021, BSA filed the Fifth Amended Plan of Reorganization. [D.I. 6443]. Under the terms of the Plan, all Abuse Claims are transferred to the Settlement Trust. Plan, Art. X.F. Once transferred to the Settlement Trust, "the sole recourse of any holder of an Abuse Claim against a Protected Party on account of such Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Protected Party or any property or interest in property of any Protected Party." Plan, Art. X.F.1. Under the Plan, Protected Parties include the Debtors and the Local Councils. *See* Plan, Art. I.A.207.

---

[1] These claims resulted from advertising campaigns, which were found contained "false and misleading" statements. *See Supplemental Order* [D.I. 1331], ¶ C (finding advertisements directed to abuse claimants were "false and misleading and shall be removed, as applicable, from the Law Firm Advertising").

The Local Councils seek approval for broad third-party releases and exculpation provisions set forth in Article X.J and X.K of the Plan, respectively. If approved, all Local Councils will be discharged of any liability relating to the Abuse Claims. *See* Plan, Art. X.J, X.K.

### The fact intensive nature of the relief sought by the Local Councils

For any third party that stands to benefit from a release under the Plan, there needs to be a showing that such party has made a substantial contribution to the Settlement Trust or to the reorganization efforts. *See In re Master Mortgage Investment Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994); *In re Zenith Electronics Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999). And even where there is a substantial contribution, non-debtor third-party releases should only be approved in extraordinary circumstances. *See In re Continental Airlines, Inc.*, 203 F.3d 203, 214 (3d Cir. 2000). Approval requires *specific* factual findings supporting the releases for each released party. *Id.*

The Plan Proponents also seek a host of factual findings not required by the Bankruptcy Code, including that the Plan Document are binding on all parties, the means for allowing and valuing claims against NCAC are reasonable and appropriate, the claim amount is allowed under the TDPs, and the Plan was promulgated in good faith. *See* Plan, Art. IX.A.3.q-t.

### The claims asserted against NCAC and the contribution offered to release them

At least 630 of the claims filed in the bankruptcy case asserted claims against NCAC. *See* Disclosure Statement, <u>Exhibit F</u>. The Disclosure Statement includes the proposed contribution amount for each Local Council. NCAC is expected to make a total contributions of $8,000,000. *See id.*, <u>Exhibit C</u>. In exchange for that contribution, NCAC will be a Protected Party under the Plan and benefit from the third party releases. Many of the requests go directly to information NCAC will rely on to prove a substantial contribution to the Plan and satisfy the burden for third party releases.

### The requests for production

On October 8, 2021, Century served a subpoena on NCAC in an attempt to narrow the issues for the confirmation hearing.[2] The requests for production sought six categories of documents directly relevant to confirmation and the relief sought by NCAC: (i) the board/committee minutes that reflect NCAC's information about BSA's bankruptcy and the submission made to the board/committee about the relief sought in the bankruptcy, RFP ¶¶ 1-13, (ii) NCAC's contribution to the Settlement Trust, RFP ¶¶ 14-16, 18-19, 28, (iii) the Abuse Claims for which third party releases are sought and analysis related thereto, RFP ¶¶ 17, 25, 27, 30-33, 41-44, (iv) NCAC's agreements with the Chartered Organizations, RFP ¶¶ 20-26, and membership information, RFP ¶¶ 27-35, (v) certain information about NCAC's assets and insurance, RFP ¶¶ 36-40, and (vi) information related to feasibility of the Plan, RFP ¶ 27.

---

[2] Indelicato Decl. Ex. 1, NCAC Subpoena, dated October 8, 2021 and Certificate of Service.

O'Melveny

Through each of these categories, Century seeks information necessary to determine whether the Plan's treatment of claims is appropriate, the findings sought are correct, and the Plan can be confirmed.

### The blanket objections to the requests asserted by NCAC

NCAC has failed to properly respond to the requests or to set forth good reasons for not doing so.[3] NCAC asserts blanket objections to all requests. NCAC objects to any requests that "require NCAC to undergo the undue burden of producing certain documents that could be obtained from other sources" and "are already available through the Debtors' data site." NCAC Response, General Objection Nos. 2, 5. For the bulk of the responses to individual document requests, NCAC objects to producing any documents and/or directs Century to another party for production of responsive documents. *See* Indelicato Decl. Ex. 2, NCAC Response to RFP Nos. 7-9, 12, 13 17-20, 28, 30,  34, 37[4], 43 (objects to producing any documents); 38-40, 42, 44 (directs Century to a third party for production of documents). And for other requests, NCAC states that it has no responsive documents and objects to the requests. *See* Indelicato Decl. Ex. 2, NCAC Response to RFP Nos.  22, 23[5], 41.

NCAC also includes a general objection based on privilege.  NCAC objects to any requests "to the extent that they seek information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the common interest or joint defense doctrine, mediation privilege, or any other applicable rule, doctrine, privilege or immunity or protection from discovery." *See* Indelicato Decl. Ex. 2, NCAC Response, General Objection No. 4.

### The Plan Proponents promised cooperation in seeking an expedited discovery schedule

In moving to set a schedule, the Plan Proponents advocated what they characterized as super aggressive schedule culminating in a proposed January 24, 2022 commencement for a confirmation hearing.[6]

During the Disclosure Statement hearing, many parties expressed their concern with such a tight schedule. The Plan Proponents, however, pushed the Court to set the earliest possible date

---

[3] *See generally* Indelicato Decl. Ex. 2, NCAC Responses & Objections, dated October 18, 2021 ("**NCAC Response**").

[4] NCAC agreed to meet and confer with Century to determine what additional documents, if any, it can produce. *See* Indelicato Decl. Ex. 2, NCAC Response to RFP No. 37.

[5] While NCAC agreed to produce "exemplars of such [charter] agreements," it states that it does not have documents responsive to this Request" No. 23. *See* Indelicato Decl. Ex. 2, NCAC Response to RFP No. 23.

[6] *See* Indelicato Decl. Ex. 3, Sept. 23, 2021 Hr'g Tr. at 202:1-203:10 (BSA recognized that the proposed schedule was not "overly generous with the calendar" but advocated for an aggressive schedule because "timing here is so important" and "the debtors are running out of cash."); Indelicato Decl. Ex. 4, Sept. 28, 2021 Hr'g Tr. at 180:2-12 (BSA asked the Court to set a hearing date for the "earliest possible date" and agreed to "do everything we can on our end to expedite matters").

O'Melveny

for the confirmation hearing. In setting the schedule it did, the Court noted that "the hallmark is parties cooperating and getting documents and other discovery out."[7]

### *Efforts to meet and confer proved unsuccessful*

On November 8, 2021, Century sent a letter to NCAC identifying in detail the deficiencies in their response, explaining that NCAC needs to cooperate, and requesting that its objections be withdrawn and that it cure any deficiencies promptly. NCAC responded on November 9, 2021. The parties had a meet and confer call on November 18, 2021. During the meet and confer call, counsel to NCAC refused to cooperate with discovery efforts and instead repeatedly directed Century to its production. NCAC has not withdrawn its objections. NCAC continues to direct Century to other parties and/or its production, and asserts privilege for the material sought by Century's subpoena. Moreover, despite NCAC's promise to promptly produce a privilege log, Century has yet to receive it.

## ARGUMENT

### I.    NCAC Bears the Burden of Proof on Fact Intensive Issues for the Relief it Seeks

Determining whether to approve third party releases is a fact intensive issue that requires *specific* information about the claims and about the proposed contribution. The Third Circuit has identified the "hallmarks" of permissible third party releases—(1) fairness, (2) necessity to the reorganization, and (3) *specific factual findings* to support these conclusion. *In re Continental Airlines*, 203 F.3d 203, 217 (3d Cir. 2000). While the Third Circuit has not formally adopted the five-factor test initially articulated in *Master Mortgage*, bankruptcy courts generally will use those factors when analyzing whether third-party releases are appropriate. *See In re Master Mortgage Investment Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994) (outlining a five-factor test for determining whether to approve third-party releases); *see also In re Zenith Electronics Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999) (adopting the *Master Mortgage* factors). The *Master Mortgage* factors "form the foundation" for the analysis of third-party releases but "are neither exclusive nor conjunctive requirements." *In re Hercules Offshore, Inc.*, 565 B.R. 732, 755–56 (Bankr. D. Del. 2016). These factors instead provide guidance in the Court's determination of fairness of the releases. *Id.* Even if the Local Councils are able to satisfy these factors, third party releases are only approved in extraordinary circumstances. *Continental*, 203 F.3d at 217; *see also In re Millennium Lab Holdings II, LLC*, 945 F.3d 126, 139 (3d Cir. 2019) ("Our precedents regarding non-consensual third-party releases and injunctions in the bankruptcy plan context set forth exacting standards that must be satisfied if such releases and injunctions are to be permitted, and suggest that courts considering such releases do so with caution.").

Each Local Council is a separate legal entity with potential claims against it and, therefore, must show a contribution to justify discharging it from any future liability for such claims and that the releases are essential to BSA's reorganization. *See In re Quigley Co., Inc.*, 437 B.R. 102, 140 (Bankr. S.D.N.Y. 2010) (substantial contribution requires a comparison between the total contribution and the released liability). The only information provided for NCAC's contribution

---

[7] Indelicato Decl. Ex. 3, Sept. 23, 2021 Hr'g Tr. at 208:1–2.

is the expected contribution set forth in <u>Exhibit C</u> to the Disclosure Statement. While NCAC produced documents with its expected contribution amount, including the letter of intent, it did not produce any documents concerning how that number was determined or any related analysis of that number. Similarly, there are documents showing that the $8,000,000 contribution was addressed at a board meeting, it did not produce the related minutes or any other related communications. NCAC will need to provide evidence that their contribution to the Settlement Trust is substantial to receive a release under a plan, which would include their evaluation of the contribution. The Plan also confers an exculpation on NCAC, which similarly involves a fact intensive inquiry based on the contribution to the debtor's reorganization efforts.

The claim explosion in the bankruptcy process raises significant concerns regarding the validity of claims and the voting results. *See In re Glob. Indus. Tech., Inc.*, 645 F.3d 201, 213–14 (3d Cir. 2011) (noting concerns with an explosion of claims in bankruptcy). Investigating how many of the over 82,000 "unique and timely" abuse claims are actually valid and supported is necessary for any analysis of potential recovery for claimants and conclusions regarding voting. Many of the filed claims are missing the basic information. Even for the claims that provide the necessary information, a review of those claims may end up showing that the individual or the alleged abuser was not involved in Scouting at the time of the alleged abuse. Only those individuals with a valid claim should be allowed to vote. Allowing the invalid claims to vote will dilute the vote of the legitimate Abuse Claimants, thereby manipulating the voting results. *See In re Fed.-Mogul Glob. Inc.*, 684 F.3d 355, 361–62 (3d Cir. 2012). The information and documents Century is requesting from Local Councils, including at least the membership information and any analysis of the Abuse Claims directly relate to these objections and provide necessary information that would help eliminate invalid claims. NCAC did not produce any discussions suggesting even preliminary review of the claims asserted against NCAC or documents concerning any analysis of those claims.

In addition, BSA and the other parties supporting the Plan request specific findings that the Plan is binding on all parties, the TDPs are appropriate and reasonable, the right to payment for each claimant is the amount of such claim determined under the TDPs, and the TDPs were proposed in good faith. These findings will approve the value (based on the TDPs) for claims against BSA and Local Councils, including NCAC, without any consideration of the evidence supporting those claims. These findings should not be considered until the Plan Proponents and the Local Councils present specific facts supporting those findings—how they determined the TDPs are appropriate, discussions concerning the TDPs, and specific information about the claims against BSA and the Local Councils. The good faith finding also requires evidence of the negotiations between parties in connection with the TDPs. Century specifically requests documents to show whether the TDPs are reasonable and the findings are appropriate. Other than general documents concerning the Plan filed and proposed responses to any inquiries related to the Plan, there were no documents directly concerning the TDPs

Further, under the Plan, any claimant asserting an abuse claim against BSA has the option to elect to receive an expedited distribution of $3,500, without any further investigation into those claims by the Settlement Trust. If invalid claims are able to receive a payout without any investigation into the claim in exchange for a vote in favor of the Plan, it would taint the voting process and force insurers to pay invalid claims. *See GIT*, 645 F.3d at 214. Invalid or unsupported

claims should be identified now to ensure that only holders of legitimate claims are allowed to vote and the Settlement Trust assets are only compensating holders of legitimate claims. Century is just requesting basic information that will help analyze how many of the filed claims are invalid and make certain that the voting results reflects the votes of Abuse Claimants.

Finally, the requested information will also factor into the analysis of whether the Plan is feasible. Local Councils are integral to the Boy Scouts operations. A key factor that the Court will consider in connection with feasibility is the expected revenue, which will turn on membership projections. Local Councils play a key role in recruiting members and may need the protections under the Plan to be able to continue operating. Depending on whether all the Local Councils participate in the contribution and can benefit from the broad protections offered under the Plan will impact the feasibility of the Plan and the ability of BSA to operate on a go forward basis and continue its mission. To the extent the Local Councils have documents relevant to these issues and key Plan objections, such documents should be produced.

## II. The Discovery Sought Goes Directly to Fact-Intensive Confirmation Issues that NCAC has Put at Issue by the Relief Sought

The Subpoena seeks specific categories of documents in its requests necessary for the Local Councils to satisfy the fact intensive standards necessary to ensure compliance with the Bankruptcy Code. Each of the categories in Century's subpoena go directly to those issues. For certain requests within each of the below categories, NCAC agreed to produce responsive, non-privileged documents. However, NCAC objected to producing any documents for many of the requests. Not only is this information necessary for Century to fully develop its objections, but it is also evidence that will be necessary for each of the Local Councils to prove it is entitled to the relief provided under the Plan.

### A. Communications and Minutes Concerning the Bankruptcy and TDPs (RFP Nos. 1-13)

NCAC has an executive board, executive committee, and/or special or advisory committees responsible for making decisions on its behalf. RFP Nos. 1 through 13 seek the documents submitted to and generated by these bodies on a discrete set of topics: (i) the BSA bankruptcy case, (ii) the Fifth Amended Plan (or any other plan of reorganization for BSA), (iii) the TDPs, and (iv) the Abuse Claims asserted against BSA and the Local Councils. The information presented at meetings of the board and/or its committees, on these topics are designed to develop admissible evidence on confirmation issues. While NCAC agreed to produce documents for a number of requests in this category[8] "to the extent they exist and can be reasonably identified and produced without undue burden", it refused to produce responsive documents for several of the requests. And, even for the requests for which NCAC produced documents, the production is lacking. For

---

[8] For RFP Nos. 1-6, 10, and 11, NCAC agreed to produce relevant, non-privileged documents responsive to those requests, if any, "to the extent they exist and can be reasonably identified and produced without undue burden." *See* Indelicato Decl. Ex. 2,

example, the production only includes minutes for a few board meetings. The following are examples of the requests for which NCAC did not produce any documents:

> **RFP No. 7**: "All Documents (including presentations) and Communications exchanged between the Debtors and members of Your Council Executive Board, Council Executive Committee and/or any Special or Advisory Council of Your Council Concerning the Chapter 11 Cases, a Plan of Reorganization for the Debtors, the Fifth Amended Plan of Reorganization, the TDPs, and/or the Hartford Settlement Agreement."

> **RFP No. 8**: "All Documents (including presentations) and Communications exchanged between Alverez and Marsal and members of Your Council Executive Board, Council Executive Committee and/or Special or Advisory Council of Your Council Concerning the Chapter 11 Cases, a Plan of Reorganization, the TDPs, the Abuse Claims and/or the Hartford Settlement Agreement."

> **RFP No. 9**: "All drafts of term sheets for any Plan of Reorganization."

> **RFP No. 12**: "All Documents Concerning the TDPs to be employed with any Plan of Reorganization for the Debtors, including all drafts of the TDPs."

> **RFP No. 13**: "All Documents and Communications that BSA exchanged with Your Local Council Concerning the Chapter 11 Cases, a Plan of Reorganization for the Debtors, the Fifth Amended Plan of Reorganization, the TDPs, the Abuse Claims and/or the Hartford Settlement Agreement."

NCAC objected to producing any documents responsive to several of these requests on the basis of generalized non-specific objections including "burden" or on the grounds that others may have the documents. *See* Indelicato Decl. Ex. 2, NCAC Response, RFP Nos. 7, 8, 9, 12 and 13. And, when this category of documents was raised on the meet and confer call, NCAC directed Century to its production or to another party.

On their face, all of these requests seek information directly related to the bankruptcy and key issues that will be addressed at the confirmation hearing. NCAC must produce any responsive documents for each of these requests.

### B. NCAC's Contribution to the Settlement Trust (RFP Nos. 14-16, 18-19, 28)

The Fifth Amended Plan provides for broad third party releases for NCAC, which requires proof that NCAC substantially contributed to BSA's reorganization. RFP Nos. 14-16, 18-19, and 28 seek information about NCAC's contribution to the Settlement Trust, how NCAC determined the amount it would contribute and how the number was calculated. The requests on these topics are designed to develop admissible evidence on confirmation issues. In response to RFP Nos. 14, 15 and 16, NCAC agreed to produce responsive, non-privileged documents "generated between

O'Melveny

June 18, 2021 and November 5, 2021, to the extent that they exist."[9] The production, however, does not include documents showing any review or evaluation of the contribution amount. For the following requests, NCAC objected to producing any documents:

> **RFP No. 18**: "All Documents Concerning the methodology that was employed to allocate the aggregate *contribution by all Local Councils* to the Settlement Trust to individual Local Councils including any allocation by percentage or other means of the aggregate contribution to individual Local Councils."

> **RFP No. 19**: "All Documents Concerning the calculation and/or determination of the amount of Your Local Council's contribution to the Settlement Trust."

> **RFP No. 28**: "The Database, electronic spreadsheet, data and/or other information that was used to determine the amount of Your Local Council's *contribution to the Settlement Trust.*"

NCAC objected to producing any documents responsive to these requests on the basis of generalized non-specific objections including "burden" and on the grounds that others may have responsive documents. *See* Indelicato Decl. Ex. 2, NCAC Response, RFP Nos. 18-19 and 28. Others including the Ad Hoc Committee of Local Councils ("**AHCLC**") may have responsive documents but these requests are appropriately directed and responded to by the party that seeks the third party release. When this group of requests was raised on the meet and confer call, NCAC would only direct Century to its production or to another party.

All of these requests seek information directly related to a bankruptcy and key issues that will be addressed at the confirmation hearing, specifically NCAC's contribution to the Settlement Trust and whether it constitutes a substantial contribution. NCAC must produce any communications or documents showing its analysis of the contribution amount.

### C.  Abuse Claims Against NCAC (RFP Nos. 17, 25, 27, 30-33, 42, 44)

The determination of who may vote on the Fifth Amended Plan starts with the proofs of claim. The Plan that will result from the vote then channels the claims asserted in the proofs of claim to a Settlement Trust. Those claims will be allowed and valued by a plaintiff selected trustee. RFP Nos. 17, 25, 27, 30-33 seek information about the allegations made in the proofs of claim to develop evidence on confirmation issues. This includes specific information related to the Abuse Claims, any analysis of the Abuse Claims, negotiations to resolve Abuse Claims, and any documents received from Bates White (BSA's Abuse Claims consultant) related to the Abuse Claims. The following are examples of such requests:

> **RFP No. 17**: "… Documents authored or generated by Bates White *Concerning the POCs, … the Abuse Claims against the Debtors* …."

---

[9] NCAC agreed to produce non-privileged responsive documents for RFP Nos. 14, 15 and 16.  *See* Indelicato Decl. Ex. 2, NCAC Response, RFP Nos. 14, 15, 16.

**RFP No. 30**: "… Documents and Communications that the Debtors sent to Your Local Councils with the Local Council Feedback Template and Mandatory ***Reporting Procedures for Proofs of Claim*** filed in these Chapter 11 Cases."

**RFP No. 31**: "… Documents and Communications that Your Local Council generated in response to the request to complete the Local Council Feedback Template and Mandatory Reporting Procedures ***for Proofs of Claim*** filed in these Chapter 11 Cases."

Century also requests specific information related to a pre-packaged bankruptcy to resolve Abuse Claims. The following are examples of such requests:

**RFP No. 42**: "All Documents and Communications Concerning a pre-packaged bankruptcy to resolve Abuse Claims against the Boy Scouts of America."

**RFP No. 44**: "All Documents and Communications Concerning the consideration and/or negotiation of a pre-packaged bankruptcy to resolve Abuse Claims against the Boy Scouts of America."

NCAC agreed to produce documents responsive to RFP Nos. 25, 27, 31, 32, and 33. For the remaining requests, NCAC objected to producing any documents responsive on the basis of generalized, non-specific objections, including "burden" and/or on the grounds that others may have responsive documents. *See* Indelicato Decl. Ex. 2, NCAC Response, RFP Nos. 17, 30, 42, 44.[10] NCAC also directs Century to other parties for production of these documents. *See* Indelicato Decl. Ex. 2, NCAC Response, RFP Nos. 42, 44. The requests for which NCAC did not produce any documents seek information that would not only help Century analyze the validity of the claims against NCAC but also show the extent of the claims NCAC expects will be released in exchange for its contribution. When Century mentioned this group of requests on the meet and confer call, NCAC would only direct Century to its production or, if not produced, to another party.

These requests seek information directly related to the Abuse Claims and key issues that will be addressed at the confirmation hearing.

## III.    NCAC Should Provide a Detailed Log for Documents Withheld as Privileged

NCAC agreed to promptly produce a privilege log for any documents it withheld as privileged. However, Century has not yet received the privilege log. In its response, NCAC generally objects to certain requests to the extent those requests call for production of documents subject to attorney client privilege and work product doctrine.[11] And, it included a general objection to any requests that seek disclosure of documents that are privileged. Because Century

---

[10] NCAC agreed to produce non-privileged responsive documents, if any, for RFP No. 27.  *See* Indelicato Decl. Ex. 2, NCAC Response, RFP No. 27.  While NCAC agreed to meet and confer to discuss RFP No. 31, NCAC has not withdrawn its objections and continues to direct Century to other parties for the material sought by Century's subpoena.

[11] *See* Indelicato Decl. Ex. 2, NCAC Response, Response to RFP Nos. 5, 6, 10, 11, 14, 15, 18, 19, 21, 30, 31, 36; *see also* General Objection No. 4.

O'Melveny

has not seen NCAC's privilege log yet, Century cannot comment on any specific privilege assertions but requests that NCAC provide a detailed log covering each of the documents withheld and the basis for privilege as required under the Federal Rules.[12]

The party asserting privilege has the burden to "establish the claimed privilege with reasonabl[e] certainty," which requires that it "adduce competent evidence in support of its claims." *In re Veiga*, 746 F. Supp. 2d 27, 33 (D.D.C. 2010). The proponent "must offer more than just conclusory statements, generalized assertions, and unsworn averments of its counsel." *Id.* at 34. Indeed, "blanket or categorical claims of privilege" will not suffice—the law "requires a showing that the privilege applies to each communication for which it is asserted." *Id.* at 33. "Where the proponent fails to adduce sufficient facts" for the "court to conclude with reasonable certainty that the privilege applies, its burden has not been met." *Id.* at 34. Century is requesting that the Court require NCAC's privilege log contain sufficient information for Century to assess the claim of privilege for each document. *Ferguson v. USAA Gen. Indem. Co.*, 334 F.R.D. 407, 412 (M.D. Pa. 2019) ("[T]he adequacy of the privilege log [turns on] whether, as to each document, it sets forth facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed."); *see also In re Oxbow Carbon LLC Unitholder Litig.*, No. CV 12447-VCL, 2017 WL 959396, at *5 (Del. Ch. Mar. 13, 2017) (Delaware courts require a privilege log to include "(a) the date of the communication, (b) the parties to the communication (including their names and corporate positions), (c) the names of the attorneys who were parties to the communication, and (d) [a description of] the subject of the communication sufficient to show why the privilege applies, as well as [the issue to which] it pertains."). If "the descriptions of the documents are so brief and of such a general nature[,] they fail to give the court any basis for determining whether the privilege was properly invoked." *Veiga*, 746 F. Supp. 2d at 40.

Century requests that the Court require NCAC's privilege log to include sufficient detail for each document that NCAC asserts is privileged.[13]

---

[12] Many of the documents Century requests relate to discussions between the Local Councils and other parties, including BSA, the AHCLC, and other Local Councils. NCAC notes that it is party to a joint defense agreement but that agreement would not make all documents exchanged between the parties subject to a common interest privilege. To the extent the documents was not privileged before it is shared with the parties to the joint defense agreement, it is not protected just because of the joint defense agreement. Only those documents shared based on the common interest that were originally privileged will be protected.

[13] Mediation privilege would not apply to any of the documents requested. Under the Mediation Order and Rule 9019-5(d), only information disclosed by the parties in the course of the mediation is protected. The mediation privilege only applies to Mediation Parties. And the Mediation Parties only include the Ad Hoc Group of Local Councils of the Boy Scouts of America, none of the eight individual members of the AHCLC or any of the other Local Councils that are not part of the AHCLC. The AHCLC has been clear throughout the bankruptcy case that they do not represent **any** of the Local Councils individually. Accordingly, the Local Councils would not benefit from mediation privilege even if the documents were disclosed as part of the mediation.



## CONCLUSION

For the foregoing reasons and pursuant to Fed. R. Civ. P. 34 and 37(a)(3)(B)(iv), Century requests that the Court grant its motion to compel and order NCAC to produce responsive documents for the requests discussed herein.

## FED. R. CIV. P. 37(A)(1) CERTIFICATION

Pursuant to Civil Rule 37(a)(l), the undersigned hereby certifies that Century has met and conferred with counsel to NCAC served with a subpoena on October 8, 2021 in good faith on these discovery issues, including a meet and confer call on November 18, 2021 and the exchange of deficiency letters.

Respectfully submitted,

*/s/ Tancred Schiavoni*
Tancred Schiavoni

O'MELVENY & MYERS LLP

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America*