### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | <u>Hearing Date</u>:  December 14, 2021 at 10:00 a.m. (ET)<br><u>Objection Deadline</u>: December 7, 2021 at 4:00 p.m. (ET) |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER
### (I) APPROVING SHUMWAY SETTLEMENT AGREEMENT AND
### (II) MODIFYING THE AUTOMATIC STAY, TO THE EXTENT NECESSARY, TO
### <u>PERMIT PAYMENT OF SETTLEMENT AMOUNT BY APPLICABLE INSURANCE</u>

Boy Scouts of America (the "<u>BSA</u>") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "<u>Debtors</u>"), submit this motion (this "<u>Motion</u>") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "<u>Proposed Order</u>"), pursuant to sections 105(a), 362 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>) and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), (i) approving the settlement agreement, in the form attached hereto as **Exhibit B** (the "<u>Settlement Agreement</u>"), by and between BSA, Crossroads of the West f/k/a Trapper Trails Council, The Church of Jesus Christ of Latter Day Saints, Travis Harvey, and Tad Lloyd ("<u>Defendants</u>"), on the one hand, and Angela Shumway, individually and as natural mother and court-appointed conservator ("<u>Claimant's Mother</u>") on behalf of Joel Shumway, Jr. ("<u>Claimant</u>" and, together with Claimant's Mother and the Defendants, the "<u>Parties</u>"), on the other hand, and (ii) modifying the automatic stay, to the

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, Texas 75038.

extent necessary, to permit payment of the settlement amount from applicable insurance. In support of this Motion, the Debtors submit the declaration of Elizabeth Hanke, a Vice President at KCIC, LLC (the "Hanke Declaration"), which serves as insurance and valuation consultant for the Debtors. The Hanke Declaration is attached hereto as **Exhibit C**. In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 362 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a).

## BACKGROUND

4.      On February 18, 2020 (the "Petition Date"), the Debtors filed for relief under chapter 11 of the Bankruptcy Code.

5.      On November 16, 2020, Claimant and Claimant's Mother filed a proof of claim against the Debtors, Claim No. 8025 (the "Claim"). The Claim arises from non-abuse injuries that Claimant received in an automobile accident on September 11, 2019 while participating in a Scouting event in Syracuse, Utah (the "Incident"), which is the subject of a lawsuit filed against Defendants, *Shumway, et al. v. Trapper Trails Council, et al.*, Case No. 210700773, in the Second District Court, Davis County, State of Utah (the "Lawsuit").

6.      Claimant has not yet filed a motion seeking to lift the automatic stay.

7.      On November 17, 2021, the Superior Court of the State of Arizona in and for the County of Maricopa entered an order (the "Conservatorship Order"), in *In re Matter of the Conservatorship of Joel Shumway, Jr., a Minor*, Case No. PB2020-000987, (i) appointing Angela Shumway as the conservator for Joel Shumway, Jr. and (ii) approving, among other things, this settlement in the Settlement Amount and authorizing Claimant's Mother to execute the Settlement Agreement, including a release of all claims with the settling party.

## THE SETTLEMENT AGREEMENT

8.      To avoid incurring further litigation expenses in connection with the Lawsuit, the Parties entered into good-faith and arm's-length settlement negotiations. As a result of those negotiations, the Parties have entered into the Settlement Agreement, subject to Court approval.

9.      Pursuant to the Settlement Agreement, Claimant agrees to dismiss the Lawsuit with prejudice and without costs.  Additionally, Claimant, on behalf of himself and his agents, heirs, relatives, assigns, parents, beneficiaries, third-party beneficiaries, and attorneys, irrevocably and unconditionally releases, acquits, and forever discharges the Defendants, their predecessors, affiliates, parents, subsidiaries, managing agents, volunteers, servants, consultants, agents, independent contractors, employees, officers, directors, attorneys, representatives, insurers, insurance carriers, and all persons acting by, through, under, or in concert with any of them, and each of their respective heirs, successors, and assigns (the foregoing persons and entities, hereinafter collectively referred to as "Releasees"), or any of them, from any and all claims, including, without limitation, the Claim, as well as any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, causes of action, damages, actions, suits, rights, costs, losses, debts and expenses (including attorneys' fees and costs actually incurred), or demands of any nature whatsoever, known or unknown, suspected or unsuspected,

including, but not limited to, any claims that Claimant had, has, or may have, known or unknown, in connection with any facts, matters, property, transactions, or things between all Parties and between Claimant and the Releasees, including but not limited to, anything arising from, relating to, or in connection with the matters set forth in the Claim, the Lawsuit, and the Settlement Agreement.

10.      In exchange for the releases described above, Defendants will pay the Claimant $2,050,000 (the "Settlement Amount").  The Settlement Amount will be paid in separate parts from available insurance, comprised of $744,000 from Evanston Insurance Company ("Evanston"), which issued general and excess liability insurance policies to the BSA and Crossroads of the West f/k/a Trapper Trails Council covering the time period during which the Incident occurred, $1,000,000 from Philadelphia Insurance Company ("Philadelphia"), and $306,000 from Bear River Mutual Insurance Company ("Bear River," and together with Evanston and Philadelphia, the "Insurers").  Neither the BSA nor Crossroads of the West f/k/a Trapper Trails Council are insureds of the applicable Philadelphia or Bear River policies that will fund portions of the Settlement Amount.

11.      The Settlement Agreement will become effective upon (i) the entry of the Conservatorship Order, (ii) this Court's entry of an order approving the Settlement Agreement under Bankruptcy Rule 9019, and (iii) this Court's approval order becoming a "final" order (the "Effective Date").  The Settlement Amount will be paid within thirty (30) days of the Effective Date.  If this Court's order does not become final and non-appealable on or before December 31, 2021, the Settlement Agreement becomes null and void.

## RELIEF REQUESTED

12.     By this Motion, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (i) approving the Settlement Agreement and (ii) modifying the automatic stay, to the extent necessary, to permit Evanston to pay the Settlement Amount.

## BASIS FOR RELIEF REQUESTED

### I.      Legal Standard

#### A.      Approval of Settlements

13.     Section 105(a) and Bankruptcy Rule 9019 authorize the Court to approve settlements of claims.  Section 105(a) provides, in relevant part, that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Bankruptcy Rule 9019 provides that, upon notice and a hearing, the Court "may approve a compromise or settlement."  FED. R. BANKR. P. 9019(a).

14.     Settlements and compromises are favored in bankruptcy proceedings as a means of "minimiz[ing] litigation and expedit[ing] the administration of a bankruptcy estate."  *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006).  The Court should exercise its discretion to approve a settlement or compromise where it is "fair, reasonable, and in the interest of the estate."  *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).  The Court need only "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonable."  *In re W.R. Grace & Co.*, 475 B.R. 34, 78 (D. Del. 2012).  In determining whether a settlement or compromise should be approved, courts consider a number of factors, including "(1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  *In re Martin*, 91 F.3d at 393.

5

**B.      The Automatic Stay**

15.      Upon the filing of a bankruptcy case, section 362 of the Bankruptcy Code automatically stays, among other things, the commencement or continuation of any proceeding against the debtor "to recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a).  The automatic stay serves a number of important purposes that protect both debtor and creditor interests, including, among other things, "to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it" and "to avoid interference with the orderly liquidation or rehabilitation of the debtor." *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (quotations omitted).

16.      Section 362(d) authorizes the Court to grant relief from the automatic stay for cause.  11 U.S.C. § 362(d).  Although the Bankruptcy Code does not define "cause," courts in this District often consider whether (i) the debtor will suffer "any great prejudice" from the continuation of the civil suit," (ii) the prejudice to the non-bankrupt party by maintenance of the stay considerably outweighs the prejudice to the debtor if the stay is lifted, and (iii) the non-bankrupt party "has a probability of prevailing on the merits." *Id.*; *see also In re Scarborough St. James Corp.*, 535 B.R. 60, 67–68 (Bankr. D. Del. 2015).

**II.      Argument**

17.      The Settlement Agreement should be approved because it fairly and efficiently resolves the claims against Defendants related to the Incident. As noted above, the Settlement Amount will be paid solely from proceeds of the applicable Insurers' policies, including from the Evanstan policies for the 2019–20 policy year. The settlement, moreover, will permit the BSA to avoid the uncertainty and expense of litigation relating to the Lawsuit and eliminate the potential for additional expenses and the risk of an unfavorable judgment. In addition, the BSA will receive a full and complete release from all liability in connection with the Incident, thereby eliminating

any liability under a plan of reorganization. Accordingly, the Debtors submit that the Settlement Agreement is reasonable and in the best interests of the Debtors' estates, creditors and other parties in interest. *In re Louise's, Inc.*, 211 B.R. at 801.

18.     Additionally, the automatic stay should be modified, to the extent necessary, to permit Evanston to pay its portion of the Settlement Amount. If the automatic stay does apply, cause exists under these circumstances to permit the payment of the Settlement Amount by Evanston for the reasons that follow.

19.     First, as noted in Evanston's previously filed motion for relief from the automatic stay, the BSA and certain other named insureds (including Crossroads of the West f/k/a Trapper Trails Council) are covered under primary and excess policies issued by Evanston.[2] These policies provide coverage up to a limit of $1.0 million per occurrence and a combined general aggregate limit of $10.0 million under Evanston's primary policy, and up to $6.5 million per occurrence and a combined general aggregate limit of $13.0 million per year under the Evanston excess policy. Hanke Decl. at ¶ 4. Under the primary policy, the first $1.0 million of liability for automotive claims from local councils is excluded from coverage, meaning that the portion of the Settlement Amount that Evanston will pay is covered by Evanston's excess policy. *Id.* Here, only a de minimis amount (less than $2,000) of the Evanston excess policy has already been exhausted in connection with the Lawsuit. *Id.* at ¶ 5. Therefore, 100% of the Settlement Amount to be funded by Evanston, $744,000, falls within Evanston's excess policy for the 2019–20 policy year. *Id.* at ¶ 6. After payment of the Settlement Amount, approximately $12,227,556 of the aggregate limits of the Evanston excess policy will remain. *Id.* The Debtors also note that they have significant additional

---

[2] *See Evanston Insurance Company's Motion for Entry of an Order Pursuant to Section 362 of the Bankruptcy Code and Bankruptcy Rule 4001, Modifying the Automatic Stay to Permit Payments of Claims Against Non-Debtor Insured Parties and Related Defense Costs Under Insurance Policies* [D.I. 686]; *see also* Hanke Decl. at ¶ 4.

excess insurance, in the approximate amount of $167.5 million, above the Evanston excess policies for the 2019–20 policy period. *Id.*

20. Second, the Settlement Agreement will fully and finally resolve all claims against the BSA related to the Incident and avoid the uncertainty and expense of litigation and the risk of an unfavorable judgment that could exceed the Settlement Amount. *In re Almonacy*, Case No. 10-37235 DHS, 2011 WL 13659, at *3 (Bankr. D.N.J. Jan. 4, 2011) ("When an action seeks to recover from a debtor's insurance policy and the debtor is represented by the insurer, courts routinely grant stay relief because the burden on the estate is likely to be outweighed by the hardship on the plaintiff if the action is not permitted to continue."). Additionally, the Insurers, and not the Debtors, will fund the Settlement Amount.

21. For the foregoing reasons, there is comparatively little prejudice, and indeed material benefit, to the Debtors if the Parties are permitted to enter into the Settlement Agreement and the stay is modified to permit Evanston to pay the Settlement Amount.

## NOTICE

22. Notice of this Motion will be provided to (i) the U.S. Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to the Tort Claimants' Committee; (iv) counsel to the Future Claimants' Representative; (v) counsel to the Ad Hoc Committee of Local Councils; (vi) counsel to JPMorgan Chase Bank, National Association; (vii) counsel to Claimant and Claimant's Mother; (viii) Crossroads of the West f/k/a Trapper Trails Council; (ix) The Church of Jesus Christ of Latter Day Saints; (x) Travis Harvey; (xi) Tad Lloyd; and (xii) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (i) approving the Settlement Agreement, (ii) modifying the automatic stay, to the extent necessary, to permit Evanston to pay the Settlement Amount and (iii) granting such other relief as is just and proper.

Dated: November 23, 2021
      Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Paige N. Topper*

Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@morrisnichols.com
      aremming@morrisnichols.com
      ptopper@morrisnichols.com

– and –

**WHITE & CASE LLP**
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: jessica.lauria@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (212) 881-5400
Email: mandolina@whitecase.com
      mlinder@whitecase.com
      laura.baccash@whitecase.com
      blair.warner@whitecase.com

ATTORNEYS FOR THE DEBTORS AND DEBTORS
IN POSSESSION