**BARNES & THORNBURG LLP**

Adey O. Adenrele, Esq.
Direct: (202) 408-6936
Fax: (202) 289-1330
Adey.Adenrele@btlaw.com

Suite 500
1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-4623 U.S.A.
(202) 289-1313
Fax (202) 289-1330

www.btlaw.com

November 24, 2021

*Via Electronic Filing*

Chief Judge Laurie Selber Silverstein
United States Bankruptcy Court, District of Delaware
824 North Market Street, 6th Floor
Wilmington, DE 19801

    Re:    Opposition to Century's Motion to Compel National Capital Area Council
              *In re Boy Scouts of America and Delaware BSA, LLC*
              Case No. 20-10343 (LSS) (Bankr. D. Del.)

Dear Judge Silverstein,

      National Capital Area Council ("NCAC") respectfully requests that this Court deny Century Indemnity Company's ("Century") Motion to Compel (Dkt. 7384) aimed at improperly forcing NCAC to produce attorney-client privileged communications and documents, re-produce records already in Century's possession which it either already obtained or could more readily obtain from the Boy Scouts of America ("BSA" or the "Debtor"), or documents that are not in NCAC's possession.

    **I.**    **INTRODUCTION**

      Although NCAC is not a party to these bankruptcy proceedings, in response to Century's subpoena (the "Subpoena"), NCAC has provided extensive and detailed written Responses and Objections, reviewed thousands of records, and timely produced nearly 3,000 pages of responsive documents to Century. These documents included, among others, responsive communications related to NCAC's Executive Board meeting minutes, communications among the Council Key 3 members, NCAC's contribution to the Settlement Trust, NCAC's membership projections, and indemnification agreements between NCAC and certain Chartered Organizations. NCAC conducted this thorough review in a good faith effort to comply with the Subpoena and pre-empt any extensive discovery disputes.

      Despite NCAC's efforts, Century served NCAC with a letter alleging to outline deficiencies in NCAC's document production and written Responses and Objections. However, few of the claimed deficiencies bore any resemblance to the documents NCAC provided to Century. The misstatements and inaccuracies were so extensive that NCAC was unsure whether Century had reviewed any of its documents. Nonetheless, NCAC continued to make a good faith effort to meet with Century to discuss any issues Century may have. Unfortunately, during the meet and confer, it became apparent to NCAC that Century still had not reviewed its production

or written Responses and Objections. In fact, Century seemed to claim that NCAC's counsel had an obligation to walk Century's counsel through NCAC's document production and identify any records of special interest to Century. None of this is required by the Federal Rules of Civil Procedure. By the end of the meet and confer, Century's counsel informed NCAC's counsel that it would review NCAC's production, apparently for the first time, and compare it against the documents provided by BSA to determine if there are any records that Century is requesting from NCAC that are duplicative of the records that Century has in its possession. Century never informed NCAC of the results of that analysis but instead prematurely filed its Motion to Compel.

NCAC is puzzled by Century's conduct and is concerned whether Century ever was interested in cooperating with NCAC to resolve any potential discovery disputes. Further, it appears that other Local Councils are having similar issues with Century. *See generally* Dkt. 7383 and Dkt. 7351. Now, beyond the undue burden of the document requests in Century's Subpoena, Century has hailed NCAC before this Court to address discovery allegations that Century has shared with NCAC for the first time in its Motion to Compel. NCAC respectfully requests that this Court deny Century's Motion to Compel.

## II. FACTUAL BACKGROUND

On October 8, 2021, the final day to serve written discovery, Century served its subpoena upon NCAC which included forty-eight requests for the production of documents.[1] (Declaration of Adeyemi Adenrele in Support of NCAC's Opposition, Exhibit A, Century's Subpoena to NCAC for Document Requests and Certificate of Service, dated October 8, 2021). Immediately, NCAC and its counsel began working to comply with the Subpoena by drafting its written Responses and Objections as well as collecting documents from the relevant custodians that might be responsive to the Subpoena's requests. On October 18, 2021, NCAC timely served its responses and objections to Century's Subpoena. (Adenrele Decl. in Supp., Exhibit B, National Capital Area Council of the Boy Scouts of America's Responses and Objections to Century Indemnity Company's Subpoena, dated October 18, 2021). That same day, NCAC initiated a call with Century's counsel to discuss NCAC's upcoming production. The purpose of this call was to explain that NCAC was working to comply with the Subpoena, describe the status of NCAC's document review, and come to an informal agreement on an electronic discovery protocol. The parties were in agreement on all the issues discussed during the call and NCAC expressed that it planned to timely produce all responsive records, subject to any objections lodged in its written Responses and Objections.

As discussed and after reviewing nearly ten thousand records to determine their responsiveness to the Subpoena, on November 5, 2021, NCAC timely produced over 2,700 pages of documents to Century. (Adenrele Decl. in Supp., Exhibit C, November 5, 2021 Letter of Adey Adenrele to Stamatios Stamoulis; Exhibit D, November 5, 2021 Email of Adey Adenrele to Stamatios Stamoulis). That production included, among other documents, all responsive and non-attorney client privileged records related to: 1) NCAC Executive Board minutes; 2) communications among and with NCAC Board and Council Key 3 members; 3) NCAC's

---

[1] The subpoena was mis-numbered to identify only forty-six requests; however, in fact, there were forty-eight.

contribution to the Settlement Trust; and 4) NCAC's membership projections; and 5) any indemnification agreements between NCAC and Chartered Organizations. In conjunction with this extensive document review and production, NCAC retained, at significant cost, a leading professional document production company to identify, collect and produce electronically stored information responsive to the Subpoena in order to ensure the highest possible level of accuracy.

Despite NCAC's efforts, on November 8, 2021, Century sent NCAC a letter allegedly outlining the perceived deficiencies in NCAC's Responses and Objections and document production. (Adenrele Decl. in Supp., Ex. E, November 8, 2021 Letter of Stamatios Stamoulis to Jim Van Horn (the "Century Letter")). However, upon review of Century's Letter, it was apparent that Century had not reviewed NCAC's Responses and Objections or its document production prior to sending the Letter. Century's Letter was riddled with misstatements, quotes that did not exist in NCAC's Responses and Objections, and mischaracterizations of NCAC's document production. Some, though far from all, of the misstatements from Century's Letter included the following:

- Century asserted that NCAC objected to Century's Request Nos. 1 and 2 because NCAC believed that the "requests are not calculated to lead to the discovery of admissible evidence." NCAC did not use that language in its written objections to Century's Request Nos. 1 or 2. (*Compare* Ex. E at 2, Ex. B at 5-6).

- Century claimed that NCAC asserted that Century's Request No. 6 sought "patently undiscoverable documents." This statement does not appear anywhere in NCAC's Responses and Objections. (*Compare* Ex. E at 2-3, Ex. B at 8).

- Century claimed that in response to its Request No. 14, NCAC "objected to producing any documents whatsoever." This is not consistent with NCAC's written Responses and Objections. There, NCAC agreed to produce certain responsive, non-privileged, and non-duplicative documents. (*Compare* Ex. E at 4, Ex. B at 12).

- Century alleged that in response to its Request No. 21, NCAC proposed to produce "a single exemplar" of the agreements between the Chartered Organizations and NCAC. NCAC never made this proposal in response to Request No. 21 and its document production included hundreds of pages of agreements with Chartered Organizations and communications related to those agreements. (*Compare* Ex. E at 5, Ex. B at 15-16).

- Century asserted that in response to its Request No. 25, NCAC "declined to produce any documents whatsoever." This is untrue. NCAC noted in its Responses and Objections that it would produce responsive documents within its "possession, custody, or control to the extent they exist." (*Compare* Ex. E at 5, Ex. B at 17-18).

These types of misstatements in the Century Letter were so pervasive that NCAC was concerned that Century mistakenly sent NCAC a letter intended for another Local Council. Further, despite Century sending its Letter to NCAC's counsel on Monday, November 8, 2021 at 7:46 p.m. (ET), it only offered an *opportunity* to meet and confer on the same day Century served

the Letter or the following day and demanded that "NCAC withdraw its objections by close of business on Tuesday, November 9, 2021." (Adenrele Decl., Ex. E, at 8).

NCAC responded the day after it received Century's Letter and explained that NCAC was not going to withdraw any objections, mainly because it did not and could not understand Century's concerns with NCAC's Responses and Objections and document production. (Adenrele Decl. in Supp., Exhibit F, November 9, 2021 Letter of Adey Adenrele to Stamatios Stamoulis). However, in good faith, NCAC offered to meet and confer with Century regarding any issues that Century may have with NCAC's responses. *Id.* NCAC hoped that by offering Century an opportunity to meet and confer, it would give Century sufficient time to review NCAC's document production and written Responses and Objections such that Century could clearly articulate any discovery issues to NCAC. Century's counsel and NCAC's counsel agreed to meet and confer on November 18, 2021.

On the call, NCAC was eager to learn that Century's counsel decided to narrow its requests. However, once Century began to explain the types of records it wanted from NCAC, it was again abundantly clear that Century's counsel had not reviewed NCAC's document production. Specifically, Century's counsel stated that he was in search of NCAC's responsive board minutes, documents related to NCAC's Settlement Trust contribution and any calculations related to that contribution, and NCAC's documents generated related to the Feedback Templates and Mandatory Reporting Procedures for proofs of claim. But at no point did Century's counsel identify specific objections asserted by NCAC with which Century took issue. After describing these documents, Century asked NCAC's counsel whether these types of documents were within NCAC's document production. Again, despite it being clear that Century's counsel had not reviewed NCAC's document production, NCAC explained that NCAC's production included the requested board minutes and some records related to NCAC's settlement trust contributions.

However, as explained in NCAC's Responses and Objections, NCAC did not produce certain records within the categories outlined by Century. The types of records withheld by NCAC mainly included responsive 1) documents within NCAC's possession, custody, or control that are attorney client privileged and subject to the joint defense agreement signed by NCAC, the Ad Hoc Committee of Local Councils, and the BSA and 2) documents that Century already received from BSA or could readily obtain from BSA. Century understood that NCAC would not be producing the records subject to the joint defense agreement and NCAC explained that it would provide a privilege log in short order. Four days later, on November 22, 2021, NCAC provided an over fifty page privilege log to Century.

Conversely, regarding the duplicative records, Century's counsel threateningly explained that they would, seemingly for the first time, conduct a comparison of the documents provided by BSA against those produced by NCAC to determine whether Century already had the records it requested of NCAC in its possession. It appears Century changed course, opted not to conduct the previously stated comparison, and filed its Motion to Compel instead.

Chief Judge Laurie Selber Silverstein
November 24, 2021
Page 5

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 45 permits a party to subpoena documents or information from a nonparty. *See* Fed. R. Civ. P. 45(a)(1). However, "FRCP 45, which is incorporated into bankruptcy matters by operation of Federal Rule of Bankruptcy Procedure 9016, requires that the person issuing a subpoena 'avoid imposing undue burden or expense.'" *In re Zimmer*, 619 B.R. 591, 593-94 (Bankr. D. Del. 2020). "In determining if compliance with the subpoena would create an undue burden, the court should consider not only the potential burden to the producing party, but the necessity of the information for the party seeking production, and whether the information can be obtained from other, more convenient sources." *Cash Today of Texas, Inc. v. Greenberg*, 2002 WL 31414138, at *4 (D. Del. Oct. 23, 2004). Importantly, "[i]n this undue burden inquiry, nonparties are afforded 'special protection.'" *Id*. (quoting *Exxon Shipping Co. v. United States Dept. of Interior*, 34 F.3d 774, 779 (9th Cir. 1994).

"Motions to compel discovery are governed by Federal Rule of Civil Procedure 37, made applicable pursuant to Federal Rules of Bankruptcy Procedure 7001 and 7037." *In re Anderson News, LLC*, 615 B.R. 45, 50 (Bankr. D. Del. 2020). In addition, "Federal Rule of Civil Procedure 26(b)(1) defines the permissible scope of discovery, which also applies to a Rule 45 subpoena." *Verisign, Inc. v. XYZ.com, LLC*, 2015 WL 7960976, at *1 (D. Del. Dec. 4, 2015). "Relevance is not measured by whether the discovery is admissible, but rather if the information bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Id*. (internal quotations omitted). "The 'relevance' standard, however, does not apply to nonparties." *Id*. (emphasis added). "Therefore, "[t]o obtain discovery from a nonparty, a party must demonstrate that its need for discovery outweighs the nonparty's interest in disclosure." *Id*.

### IV. ARGUMENT

In Century's Motion to Compel, it presents a different set of alleged deficiencies that were not included in Century's Letter or discussed during the November 18, 2021 meet and confer. As a result, NCAC is now unclear whether Century is requesting the larger set of documents discussed in its Motion to Compel and its Subpoena or the narrower set outlined during the November 18, 2021 meet and confer call. Nonetheless, NCAC will attempt to respond to each of Century's alleged deficiencies below.

> **a. NCAC Already Produced Responsive Communications and Minutes Concerning the Bankruptcy to Century and Does Not Have Documents Related to TDPs in Its Possession, Custody, or Control (RFP Nos. 1-13)**

Though Century acknowledges that NCAC agreed to and has produced documents responsive to Request Nos. 1-13, it suggested that the production was lacking. Contrary to Century's statement that NCAC's "production only includes minutes for a few board meetings," NCAC has produced all of the Executive Board meeting minutes related to the bankruptcy in its possession. Moreover, NCAC has even produced documents related to updates provided to the NCAC's Council Key 3 related to the bankruptcy.

Century continued to raise specific issues with Request Nos. 7-9, 12, and 13.

RFP No. 7: "All Documents (including presentations) and Communications exchanged between the Debtors and members of Your Council Executive Board, Council Executive Committee and/or any Special or Advisory Council of Your Council Concerning the Chapter 11 Cases, a Plan of Reorganization for the Debtors, the Fifth Amended Plan of Reorganization, the TDPs, and/or the Hartford Settlement Agreement."

- Century's counsel never raised this issue on the November 18, 2021 meet and confer call. However, as NCAC has already stated in its Responses and Objections, documents and communications exchanged between BSA and NCAC are more readily obtained from BSA, a party to the ongoing bankruptcy. NCAC should not have to endure the burden of duplicating the production of documents that Century already has in its possession or can more easily obtain from BSA.

RFP No. 8: "All Documents (including presentations) and Communications exchanged between Alverez and Marsal and members of Your Council Executive Board, Council Executive Committee and/or Special or Advisory Council of Your Council Concerning the Chapter 11 Cases, a Plan of Reorganization, the TDPs, the Abuse Claims and/or the Hartford Settlement Agreement."

- Again, Century's counsel never raised this issue on the November 18, 2021 meet and confer call. Still, it is NCAC's understanding that these documents are in BSA's possession and can be more readily obtained from the BSA. Further, to the extent that these records were provided by the BSA to NCAC, these documents are subject to the joint defense agreement to which NCAC is a signatory.

RFP No. 9: "All drafts of term sheets for any Plan of Reorganization."

- This is the first time that Century's counsel has raised this issue with NCAC. Nonetheless, records responsive to this request are not within NCAC's possession, custody, or control.

RFP No. 12: "All Documents Concerning the TDPs to be employed with any Plan of Reorganization for the Debtors, including all drafts of the TDPs."

- Again, Century has never raised this specific issue with NCAC before. If it had, NCAC would have explained that NCAC does not have any records responsive to this Request in its possession, custody, or control.

RFP No. 13: "All Documents and Communications that BSA exchanged with Your Local Council Concerning the Chapter 11 Cases, a Plan of Reorganization for the Debtors, the Fifth Amended Plan of Reorganization, the TDPs, the Abuse Claims and/or the Hartford Settlement Agreement."

- Century is raising this issue for the first time with NCAC in its Motion to Compel. Nonetheless, these documents are duplicative of the records that Century already received from BSA. Further, to the extent that they are subject to the joint defense agreement and common interest privilege, they are not discoverable.

### b. NCAC Produced Some Records Related to Its Contribution to the Settlement Trust but Withheld Other Documents by Asserting Legal Objections Related to the Undue Burden of a Duplicative Production of Documents by a Non-Party and the Release of Attorney-Client Privileged Records (RFP Nos. 14-16, 18-19, 28)

In its Responses and Objections, NCAC agreed to produce non-privileged documents that were responsive to Request Nos. 14-16 that were not already produced to Century. True to that statement and acknowledged by Century, NCAC produced records responsive to this request within its possession, custody or control. Century specifically had issues with NCAC's responses to the following Requests 18-19 and 28. Century notes that NCAC has not provided any documents responsive to these Requests. This is the first time Century raised an issue with NCAC on these specific requests. NCAC will not withdraw its objections because the responsive documents are subject to the joint defense agreement, are duplicative of records already received by Century, or can be more readily obtained from BSA.

### c. Abuse Claims Against NCAC (RFP Nos. 17, 25, 27, 30-33, 42, 44)

RFP No. 17: "… Documents authored or generated by Bates White Concerning the POCs, … the Abuse Claims against the Debtors …."

- NCAC does not have any documents authored or generated by Bates White in its possession, custody, or control besides the templates used by NCAC which have already been produced by the BSA to Century.

RFP No. 30 – 33

- This set of documents can be more easily obtained from BSA either because BSA generated the documents or NCAC provided these documents to the BSA. In any event, it is NCAC's understanding that all of these records were already produced to Century. As a non-party, NCAC should not be required to re-produce the same documents Century already possesses.

RFP No. 42 and 44

- Requests 42 and 44 are largely the same request. Regardless, NCAC does not have any documents in its possession, custody, or control that are responsive to this request.

### d. NCAC Provided Its Privilege Log to Century

Chief Judge Laurie Selber Silverstein
November 24, 2021
Page 8

During the November 18, 2021 meet and confer call, NCAC notified Century that its privilege log would be forthcoming. Merely four days later, NCAC produced its more than fifty page privilege log to Century detailing all of the documents to which NCAC is asserting the attorney client privilege in relation to the existing joint defense agreement between NCAC, BSA, and the Ad Hoc Committee of Local Councils. NCAC experienced a slight delay in producing the privilege log because of the voluminous amount of documents that it needed to include in the privilege log. Nonetheless, NCAC completed that process and provided the privilege log to Century.

V.  **CONCLUSION**

For the foregoing reasons, NCAC respectfully requests that the Court deny Century's Motion to Compel National Capital Area Council.

Sincerely yours,

Adey Adenrele

cc:   James Van Horn; JVanHorn@btlaw.com
      Kevin G. Collins; kevin.collins@btlaw.com

# **CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2021, I caused a copy of the foregoing *Response to Century Motion to Compel* to be served on all parties requesting service through the Court's ECF system and on the following parties by email:

Derek C. Abbott
Andrew R. Remming
Paige N. Topper
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street, 16th Floor
Wilmington, Delaware 19899-1347
dabbott@morrisnichols.com
aremming@morrisnichols.com
ptopper@morrisnichols.com

Jessica C. Lauria
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
jessica.lauria@whitecase.com

Michael C. Andolina
Matthew E. Linder
Laura E. Baccash
Blair M. Warner
WHITE & CASE LLP
111 South Wacker Drive
Chicago, Illinois 60606
mandolina@whitecase.com
mlinder@whitecase.com
laura.baccash@whitecase.com
blair.warner@whitecase.com

Counsel for Debtor

Tancred Schiavoni
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036-6537
tschiavoni@omm.com

Stamatios Stamoulis
Stamoulis & Weinblatt LLC
800 N. West Street, Third Floor
Wilimington, DE 19801
stamoulis@swdelaw.com

Counsel for Century Indemnity Company

Kurt F. Gwynne
Mark W. Eckard
REED SMITH LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801
kgwynne@reedsmith.com
meckard@reedsmith.com

KRAMER LEVIN NAFTALIS
    & FRANKEL LLP
Thomas Moers Mayer
Rachael Ringer
Jennifer R. Sharret
Megan M. Wasson
177 Avenue of the Americas
New York, NY 10036
tmayer@kramerlevin.com
rringer@kramerlevin.com
jsharret@kramerlevin.com
mwasson@kramerlevin.com

Counsel to the Official Committee of Unsecured Creditors

David L. Buchbinder
Office of the U.S. Trustee
J. Caleb Boggs Federal Building
Suite 2207
Wilmington, DE 19801
david.l.buchbinder@usdoj.gov

Hannah Mufson McCollum
Office of the United States Trustee
U. S. Department of Justice
844 King Street, Suite 2207
Lockbox #35
Wilmington, DE 19801
hannah.mccollum@usdoj.gov

                                                */s/ Kevin G. Collins*
                                                Kevin G. Collins (DE No. 5149)