# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>           Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Re:  Dkt. 7447 & 7448** |

### JOINDER OF THE ZALKIN LAW FIRM, P.C., AND PFAU COCHRAN VERTETIS AMALA PLLC TO THE EMERGENCY MOTION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 105 AND 1103 OF THE BANKRUPTCY CODE APPOINTING A PLAN VOTING OMBUDSPERSON AND GRANTING RELATED RELIEF

The Zalkin Law Firm, P.C., and Pfau Cochran Vertetis Amala PLLC ("Zalkin and Pfau") each respectfully join in the *Emergency Motion of the Official Committee of Tort Claimants for Entry of an Order Pursuant to Sections 105 and 1103 of the Bankruptcy Code Appointing a Plan Voting Ombudsperson and Granting Related Relief* [D.I. 7447] (the "Motion") filed by the Official Committee of Tort Claimants (the "TCC") in the above-captioned cases (the "Bankruptcy Cases").[1] In support hereof, Zalkin and Pfau rely on the *Declaration of Jason Amala*, filed concurrently herewith (the "Amala Declaration") and represent as follows.

In the midst of apparent widespread confusion among survivors regarding the voting process in these Bankruptcy Cases, Zalkin and Pfau support the TCC's Motion as a much-needed effort to provide survivors with responsive and unbiased guidance at this critical time. This issue of voter confusion first came before the Court on the Debtors' *Emergency Motion for Entry of Order (I) Enforcing Solicitation Procedures [etc.]* [D.I. 7118] (the "Debtors' Emergency Motion") in response to an email, drafted in part by Abused in Scouting ("AIS") attorney Timothy Kosnoff, that was transmitted by the TCC to thousands of survivors.

---

[1]    Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

1

In response to the Debtors' Emergency Motion, Zalkin and Pfau noticed the deposition of Mr. Kosnoff, which took place on Monday, November 22. The Kosnoff deposition revealed pervasive confusion and frustration among survivors that goes well beyond the confusion caused by the TCC's transmission of the Kosnoff email.[2] Among other issues, survivors who are clients of AIS are confused by the conflicting recommendations being transmitted to them from their three separate lawyers, particularly Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. ("ER") and Mr. Kosnoff.[3] Survivors are also confused and frustrated by the manner in which voting is taking place, including those survivors who have been asked to vote via an "E-ballot" app transmitted to them by ER (and perhaps other firms), rather than via the official balloting mechanisms that were approved by this Court's solicitation order. These survivors report concerns ranging from non-neutral balloting, to security issues, to a failure to accurately record votes, to harassment and pressure with respect to survivors' voting decisions.

Other survivors (including those not under the AIS umbrella) face even more basic issues, such as confusion about who their attorney is or frustration because their attorney has failed to respond to their requests for information and advice. Many survivors are struggling with how to vote because they have not received basic information about their interests, such as an estimate of what they stand to recover under the plan. For example, the Pfau firm estimates that it has received at least 171 inquiries in the past six months from survivors who are not

---

[2] The transcript of the Kosnoff deposition has been designated highly confidential, pending a determination of certain attorney-client privilege issues. Zalkin and Pfau understand that certain parties that attended the deposition intend to file a motion for protective order or otherwise seek relief from this Court in that respect. Accordingly, although Zalkin and Pfau believe that the attorney client privilege was properly waived with respect to the communications at issue, those communications will not be disclosed herein. Rather, the issues raised by survivors that are described herein are stated generally and have, in each case, already been made public, including as a result of public tweets issued by Mr. Kosnoff.

[3] It is not currently clear what AVA Law Group, Inc., the third law firm that represents survivors through AIS, has recommended, if anything.

clients of the Pfau firm who have reached out asking for help in identifying or getting in touch with their attorney or with questions about the voting process or what they are estimated to receive under the proposed plan. *See* Amala Decl. at ¶¶ 2 & 3. The actual number may be much greater. *Id.* at ¶ 2. *To be clear, those are communications from survivors who have no connection whatsoever with the Pfau firm, but who are reaching out to someone they have found on the internet for help.* The TCC and other firms must have received hundreds more of such communications. The Pfau firm has responded by advising these survivors that the firm does not represent them and directing these survivors to the TCC or to Omni. *Id.* at ¶ 4.

AIS may represent as many as twenty percent of the eligible survivor votes on this Plan. It is intolerable that so many survivors are represented by a group of attorneys who have failed to agree on a common method of communicating with their clients that ensures that survivors receive appropriate information. If they disagree on what the message should be—as apparently, they do—they should at least agree on *how* to communicate their disagreements so survivors are not subject to uncoordinated, competing, and inconsistent messages. Since the AIS lawyers have not been able to accomplish even that modest task, the intervention of an ombudsperson is essential to oversee the solicitation process with respect to those survivors. The hundreds of responses from confused and/or frustrated survivors that Mr. Kosnoff received when the "E-Ballot" was distributed to AIS clients is ample proof that intervention is necessary.

Compounding these issues, the Debtors' voting agent, Omni, inadvertently distributed thousands of direct individual ballots to survivors represented by law firms in contravention of such firms' elections to proceed by Master Ballot. *See Notice of Solicitation Error and Invaliduation and Reissuance of Ballots In Accordance with Certain Law Firms' Elections Under the Solicitation Procedures Order* [D.I. 6821] (the "Notice of Error"). The Debtors and Omni then sought to "remedy" that error by unilaterally "invalidating" those ballots, in contravention

of the Solicitation Procedures and without giving prior notice to affected parties or seeking prior authorization from this Court. *Id.* at ¶¶ 1 & 6. The undersigned filed the *Objection of the Zalkin Law Firm, P.C. and Pfau Cochran Vertetis Amala PLLC to "Notice of Solicitation Error and Invalidation and Reissuance of Ballots In Accordance with Certain Law Firms' Elections Under the Solicitation Procedures Order"* [D.I. 7427] to bring this issue to the Court's attention and seek appropriate relief. Absent intervention from the Court, the Notice of Error will not only deepen confusion and distrust among survivors with respect to the voting process, it will also potentially disenfranchise survivors who voted on an official ballot transmitted to them by Omni, but whose votes will nevertheless be invalidated by an administrative "remedy" effectuated by the Debtors and Omni without a motion or hearing before this Court.

Zalkin and Pfau believe the appointment of a voting ombudsperson would be helpful in addressing many of these issues. The voting ombudsperson could serve as a point of communication for survivors who need help identifying or getting in touch with their counsel, obtaining information about the plan and the estimated recovery on their claim, understanding the Court-approved methods for voting, and obtaining an official ballot. The ombudsperson could also assist the Court in restoring the integrity of the voting process, including by investigating voting issues, such as the use of non-approved methods of voting and the improper distribution and any invalidation or reissuance of ballots. Most importantly, the ombudsperson could serve as a neutral and responsive source of information and guidance for survivors who are tired of mixed messages, voting pressure, unanswered questions, and confusion.

Zalkin and Pfau believe that the confusion that is rampant in the voting process must be remedied and that every effort should be made to avoid the designation of survivors' votes. Both the Debtors and the Coalition have raised the specter of vote designation. *See, e.g.* Hr'g Tr. (Nov. 10, 2021) at 15:4-6 (Mr. Molton: "we reserve the right for other remedies and some of

them may be designation of votes of no votes during a period of time before remediation"); *id.* at 30:10-14 (Ms. Lauria: "We may need remedial measures with respect to the votes, themselves, in terms of – and I hate to use the word 'vote designation' when we're talking about survivor individuals…."); *Supplement to Joinder of the Coalition of Abused Scouts for Justice to Debtors' Emergency Motion for Entry of an Order (I) Enforcing the Solicitation Procedures Order, (II) Enforcing Section 1103 of the Bankruptcy Code Against the Tort Claimants' Committee, and (III) Granting Related Relief* [D.I. 7294] at ¶ 21 ("[T]he Coalition reserves the right to seek additional relief regarding the voting process, including the extension of the voting deadline [and] designation of 'no' votes…."). Designation—taking away a survivor's vote—is a drastic remedy, particularly when there is no allegation that the survivors themselves committed any improper act. To be sure, the Debtors and Coalition no doubt had in mind that only those votes cast against the Plan should be designated, as the above-quoted excerpts indicate. But given the confusion and the manner of solicitation, it is not at all clear that the designation would or should stop there. In order to avoid the specter that survivors' votes could be subject to designation because of the manner in which the AIS votes are being solicited, Zalkin and Pfau respectfully submit that the appointment of a voting ombudsperson is necessary to ensure the integrity of the voting process in a manner designed to best prevent the mass disenfranchisement of survivors.

Accordingly, for the reasons set forth herein, in the Amala Declaration, and in the Motion, Zalkin and Pfau respectfully submit that the TCC's Motion should be granted.

DATED:  November 24, 2021        Respectfully Submitted,

**BIELLI & KLAUDER, LLC**

By: */s/ David M. Klauder*
David M. Klauder, Esquire (No. 5769)
1204 N. King Street
Wilmington, DE 19801
Phone: (302) 803-4600
Fax: (302) 397-2557
Email: dklauder@bk-legal.com

KTBS LAW LLP
Thomas E. Patterson (p*ro hac vice*)
Daniel J. Bussel (p*ro hac vice*)
Robert J. Pfister (*pro hac vice*)
Sasha M Gurvitz (p*ro hac vice*)
1801 Century Park East, Twenty-Sixth Floor
Los Angeles, California 90067
Telephone      310-407-4000
Email: tpatterson@ktbslaw.com;
           dbussel@ktbslaw.com
           rpfister@ktbslaw.com
           sgurvitz@ktbslaw.com

*Counsel to each of The Zalkin Law Firm, P.C.,
and Pfau Cochran Vertetis Amala PLLC*