IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BOY SCOUTS OF AMERICA AND | ) | Case No. 20-10343 (LSS) |
| DELAWARE BSA, LLC, | ) | |
| | ) | Jointly Administered |
| Debtors[1]. | ) | |
| | ) | Re: Docket Nos. 7445, 7447 and 7448 |

### KOSNOFF LAW, PLLC'S RESPONSE IN SUPPORT OF
### EMERGENCY MOTION TO APPOINT A PLAN VOTING OMBUDSPERSON

Kosnoff Law, PLLC ("Kosnoff Law") hereby submits this response in support of the *Emergency Motion of the Official Committee of Tort Claimants for Entry of an Order Pursuant to Sections 105, 1103, 1125, and 1126 of the Bankruptcy Code Appointing a Plan Voting Ombudsperson and Granting Related Relief* [Docket Nos. 7445 and 7447] (the "Motion") and the associated Motion to Shorten Notice [Docket No. 7448]. Kosnoff Law respectfully submits the following:

**PRELIMINARY STATEMENT**

1.     While Kosnoff Law does not subscribe to the Motion's characterization of the relationships among AIS law firms, of which Kosnoff Law is one, as warfare, it cannot be denied that there is crippling discord among those firms and that that discord is harmful to the firms' clients. For that reason, Kosnoff Law has made overtures to the Eisenberg Rothweiler firm to take measures that would set aside the firms' differences enough to permit their clients to obtain the

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

best information regarding plan voting all in one place. In that way, the clients would be placed in the best possible decision to make voting decisions *for themselves.*

2.     Specifically, Kosnoff Law proposed that the AIS firms compose a formal, two-column professional document that would present, in plain English, the respective merits of voting to accept and to reject the proposed Plan of Reorganization. That document would be distributed to all AIS clients. It would contain no personal recriminations, *ad hominem* attacks or any other material that would distract from the important voting decision facing each client. Kosnoff Law proposed that the distribution of that document would end both Timothy Kosnoff's use of Twitter to criticize Eisenberg Rothweiler attorneys and Eisenberg Rothweiler's continuous and unrelenting electronic solicitation campaign. The jointly-prepared document would simply set forth Mr. Rothweiler's view of the merits of a vote to approve and Mr. Kosnoff's view of the merits of a vote to reject.

3.     Shockingly, Eisenberg Rothweiler has refused not only to participate in that initiative. It refuses even to engage in a discussion of how such a cooperative effort could be effectuated. Ignoring both their clients' need for sound legal advice as well as their own ethical obligations, Eisenberg Rothweiler remains content with the chaotic environment that it has perpetuated.

4.     Kosnoff Law does not know if the relief sought in the Motion will provide the solution to the problem the Motion seeks to solve. Kosnoff Law does know that without Eisenberg Rothweiler's cooperation, Kosnoff Law cannot take the action necessary to ameliorate that problem. That cooperation has been withheld. Accordingly, Kosnoff Law supports the Motion as the best available alternative in these most unfortunate and avoidable circumstances.

## FACTUAL BACKGROUND

5.  Kosnoff Law, Eisenberg Rothweiler and AVA Law Group jointly represent more than 15,000 Survivors of sex abuse suffered as a result of the Debtors' and others' misconduct (the "Clients"). The Debtors have put forth a Plan of Reorganization and solicitation of Survivors' votes is underway. Timothy Kosnoff has been a vocal opponent of the Plan presently under consideration. Kenneth Rothweiler has been a vocal supporter of the Plan. Andrew Van Arsdale is believed to support the Plan, but has not been a vocal supporter of that position.

6.  In mid-October, Mr. Rothweiler circulated a document to the Clients setting forth his views regarding the Plan and urging the Clients to vote to accept it. On October 18, Mr. Kosnoff circulated, with Mr. Van Arsdale's assistance, a document setting forth his views regarding the Plan and urging the Clients to vote to reject it. Had matters remained in that state of equipoise, all would be well.

7.  Instead, Eisenberg Rothweiler launched a campaign to solicit votes with the use of a so-called electronic ballot, which had a variety of troublesome and even alarming characteristics. Those characteristics were discussed in detail in Mr. Kosnoff's deposition that took place on November 22, 2021 and are evidenced in several hundred pages of documents that Mr. Kosnoff produced to interested parties in advance of the deposition.

8.  At his deposition, Mr. Kosnoff made himself available to any attorney who wished to interrogate him on any matter touching on these bankruptcy cases. He waived the seven-hour limitation and answered every question asked of him. In spite of Mr. Kosnoff's willingness to answer any and all questions, attorneys for the Coalition (which supports the Plan) and Eisenberg Rothweiler asserted privilege objections in the face of express privilege waivers by certain of the

Clients.[2] The deposition is, therefore, presently sealed and the Plan's proponents will, at least temporarily, avoid the Court's scrutiny of the electronic ballot, Eisenberg Rothweiler's communications to the Clients and other inappropriate solicitation activities. Certain of the Clients have, however, written letters to the Court that describe their reactions to communications from Eisenberg Rothweiler. *See* Docket Items 7437, 7439 and 7443 attached as Exhibit A. Those letters provide a glimpse of the glaring problems with Eisenberg Rothweiler's communications to the Clients.

9. Due to widespread concerns caused by Eisenberg Rothweiler's campaign, Mr. Kosnoff's October 18 letter was re-sent to the Clients along with a cover email. The means by which that transmission took place is the subject of separate motion practice. What is important for the purposes of the Motion is that that transmission was necessitated by Eisenberg Rothweiler's conduct, which has caused enormous upset and confusion among the Clients. The electronic ballot and accompanying materials that Eisenberg Rothweiler relentlessly foists upon the Clients has upset the equilibrium achieved by October 18 in the AIS firms' communications with the Clients. Worse, that campaign has caused enormous upset to the Clients.

### **KOSNOFF LAW'S PROPOSED SOLUTION**

10. Recognizing the crisis that had arisen, Kosnoff Law proposed a détente with Eisenberg Rothweiler. On November 12, the undersigned placed a call to Eisenberg Rothweiler's counsel, with whom he has enjoyed a long, valued and cooperative relationship. The undersigned suggested that Kosnoff Law and Eisenberg Rothweiler set aside their acrimony and cooperatively prepare a joint document to present to the Clients. That document would set forth, side-by-side,

---

[2] Those attorneys have not filed a motion for protective order and have refused to commit to a date by which they will do so.

the reasons that each side believes the Clients should vote to accept or reject the Plan. It would be free of vitriol and *ad hominem* barbs. The document would be wholly professional in content and in appearance. Both sides would moderate their public rhetoric and Mr. Kosnoff would refrain from posting on Twitter regarding Mr. Rothweiler.

11. Later that evening, the undersigned informed Eisenberg Rothweiler's attorney by email that Mr. Kosnoff is favorably disposed to this idea for cooperation and expressed his hope that Mr. Rothweiler would consider it. *See* email exchange attached as Exhibit B. Eisenberg Rothweiler's attorney advised that he would discuss the matter with his client the next day. *Id.* Eisenberg Rothweiler did not agree to engage in the cooperative effort.[3]

12. On November 23, 2021, counsel for the TCC circulated a draft of the Motion to a group of attorneys, including representatives of the Debtors, the FCC, the Coalition, the U.S. Trustee's office and the AIS firms, seeking those parties' positions on a motion to shorten notice. After receiving the draft of the Motion, the undersigned renewed by email his request to Eisenberg Rothweiler's attorney for a cooperatively-prepared communication to the Clients.

13. On a Zoom conference on November 24, 2021, to discuss that issue, Eisenberg Rothweiler expressed its opposition to the Motion and Kosnoff Law expressed its support. Immediately after that conference, the undersigned called Eisenberg Rothweiler's attorney to renew Kosnoff Law's invitation to Eisenberg Rothweiler to engage in a cooperative effort to communicate constructively with the Clients. The undersigned provided detailed ideas on the manner in which such a communication would be prepared and how its contents would be presented.

---

[3] AVA Law Group has remained largely on the sidelines in this standoff. Accordingly, the undersigned did not include AVA Law Group's attorney in the initial invitation.

5

14. Later that day, the undersigned sent an email to Eisenberg Rothweiler's attorney asking for Eisenberg Rothweiler's position and expressing the time-sensitivity of the proposed project. *See* email exchange attached as Exhibit C. Eisenberg Rothweiler's attorney responded, "It's a nonstarter for Eisenberg Rothweiler. Not gonna happen." *Id.*

15. As a last ditch effort, the undersigned has asked AVA Law Group's attorney if that firm would engage in the cooperative effort. Considering AVA Law Group's lack of engagement to date, Kosnoff Law is pessimistic that a favorable response will be received.

## **ARGUMENT**

16. The present state of affairs is unacceptable. The Clients receive up to nine emails *per day* from Eisenberg Rothweiler that contain solicitation materials urging the Clients to vote to accept the Plan. Many of the Clients have expressed reactions ranging from annoyance to confusion to outrage. Kosnoff Law has proposed a means of ameliorating the chaos and moderating the rhetoric. Kosnoff Law has proposed a means of presenting -- in one document presented all at once -- both sides of the debate to the Clients. The Clients are entitled to that sort of treatment from the attorneys who jointly represent them.

17. Eisenberg Rothweiler has flatly refused even to discuss such a project. Eisenberg Rothweiler dismisses the very idea as a nonstarter. That intransigence is outrageous and unjustifiable.

18. Kosnoff Law is unaware of any authority by which the Court can compel Eisenberg Rothweiler to engage in the cooperative effort that Kosnoff Law has urged here. Accordingly, the next best thing is the approach suggested in the Motion. Kosnoff Law was unaware that the TCC intended to seek the appointment of an ombudsperson and likely would have considered it to be a likely-ineffectual means of achieving the desired outcome. But Eisenberg Rothweiler's

6

astonishing refusal to take the action that would necessarily have real beneficial effect has convinced Kosnoff Law that there is no alternative.

19. Kosnoff Law's suggested cooperative solution admittedly cannot undo much of the damage that has been done. But it would present the professional presentation of opposing points of view that can productively guide the Clients to the decision they feel best fits their individual circumstances and viewpoints. Since Eisenberg Rothweiler is preventing that undeniably productive effort from taking place, one can only conclude that Eisenberg Rothweiler prefers the current destructive and chaotic solicitation process to an orderly presentation of the issues to the Clients. An ombudsperson could bring order to that chaos.

## CONCLUSION

20. The Motion presents the next best alternative and it is badly needed. Kosnoff Law respectfully requests, therefore, that the Court grant the Motion.

Date: November 24, 2021                WILKS LAW, LLC

                                                   */s/ David E. Wilks*
                                                   David E. Wilks (DE Bar No. 2793)
                                                   4250 Lancaster Pike, Suite 200
                                                   Wilmington, Delaware 19805
                                                   Telephone: 302-225-0850
                                                   Facsimile: 302-225-0851
                                                   Email: dwilks@wilks.law

                                                   *Counsel to Kosnoff Law, PLLC*