**Exhibit A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

### DECLARATION OF JUSTIN R. ALBERTO, ESQ. IN SUPPORT OF SLATER SLATER SCHULMAN LLP'S LETTER TO CHIEF JUDGE LAURIE SELBER SILVERSTEIN SEEKING AN ORDER QUASHING THE DEPOSITION SUBPOENAS DATED NOVEMBER 24, 2021 ISSUED BY THE ZURICH INSURERS

I, Justin R. Alberto, Esq. hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am a member of Cole Schotz P.C., which represents Slater Slater Schulman LLP ("Slater").  I submit this Declaration in support of Slater's letter motion to the Court seeking to quash the deposition subpoenas issued by the Zurich Insurers to Slater attorneys, Michael S. Werner and Jonathan E. Schulman, dated November 24, 2021  (the "Deposition Subpoenas").

2.      Attached hereto as  Exhibit 1 is a true and correct copy of the Deposition Subpoena issued to Michael S. Werner.

3.      Attached hereto as Exhibit 2 is a true and correct copy of the Deposition Subpoena issued to Jonathan E. Schulman.

4.      Attached hereto as Exhibit 3 is a true and correct copy of the portion of the November 19, 2021 hearing transcript related to the Zurich Insurers' motion to compel Slater to respond to a document subpoena. See D.I. 7240.

---

[1]  The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  November 26, 2021                    **COLE SCHOTZ P.C.**
        Wilmington, Delaware

                                             /s/ *Justin R. Alberto*
                                             Justin R. Alberto, Esq.

**Exhibit 1**

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of  Delaware

In re  Boy Scouts of America and Delaware BSA, LLC,
_____
                              Debtor

_(Complete if issued in an adversary proceeding)_

_____

_____
                              Plaintiff
                                 v.
_____
                              Defendant

Case No.  20-10343 (LSS)

Chapter  11

Adv. Proc. No.  _____

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:  Michael Werner, Slater Slater Schulman LLP, 488 Madison Avenue, 20th Floor, New York, New York 10022
_____
                         _(Name of person to whom the subpoena is directed)_

☑ _Testimony_:  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding).  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE  Crowell & Moring LLP<br>590 Madison Avenue, 20th Floor<br>New York, New York 10022 | DATE AND TIME<br>December 1, 2021 at 9:00 am (Eastern Time) |
|---|---|

The deposition will be recorded by this method:
Stenographic, audiographic and videotaped means

☐ _Production_:  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

        The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  11/24/2021

                    CLERK OF COURT

                                OR

_____          /s/ Kelly T. Currie
    _Signature of Clerk or Deputy Clerk_          _____
                                               _Attorney's signature_

The name, address, email address, and telephone number of the attorney representing _(name of party)_
Zurich Insurers
_____,  who issues or requests this subpoena, are:  Kelly T. Currie,
Crowell & Moring LLP, 590 Madison Avenue, 19th Fl., New York, NY 10022, (212) 223-4000,  kcurrie@crowell.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


        I declare under penalty of perjury that this information is true and correct.

Date:  _____

                                                        _____
                                                                        *Server's signature*

                                                        _____
                                                                        *Printed name and title*

                                                        _____
                                                                        *Server's address*


Additional information concerning attempted service, etc.:

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**Exhibit 2**

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of **Delaware**

In re **Boy Scouts of America and Delaware BSA, LLC,**

_____

Debtor

*(Complete if issued in an adversary proceeding)*

_____

Plaintiff

v.

_____

Defendant

Case No. **20-10343 (LSS)**

Chapter **11**

Adv. Proc. No. _____

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: **Jonathan Schulman, Slater, Slater, Schulman LLP, 488 Madison Avenue, 20th Floor, New York, NY 10022**

*(Name of person to whom the subpoena is directed)*

■ *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE    Crowell & Moring LLP | DATE AND TIME |
|---|---|
| 590 Madison Avenue, 20th Floor<br>New York, NY 10022 | December 1, 2021 at 1:00 pm (Eastern Time) |

The deposition will be recorded by this method:
Stenographic, audiographic and videotaped means

☐ *Production*: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of **Fed. R. Civ. P. 45**, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: **11/24/2021**

CLERK OF COURT

OR

_____

Signature of Clerk or Deputy Clerk

**/s/ Kelly T. Currie**

*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
**Zurich Insurers**_____, who issues or requests this subpoena, are: **Kelly T. Currie,**
Crowell & Moring LLP, 590 Madison Avenue, 19th Fl., New York, NY 10022, (212) 223-4000, kcurrie@crowell.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


        I declare under penalty of perjury that this information is true and correct.

Date:  _____

_____
*Server's signature*

_____
*Printed name and title*


_____
*Server's address*

Additional information concerning attempted service, etc.:

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
  (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  *(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

  *(2) Command to Produce Materials or Permit Inspection.*
    *(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    *(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  *(3) Quashing or Modifying a Subpoena.*
    *(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
    *(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or

      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    *(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  *(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    *(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    *(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    *(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    *(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  *(2) Claiming Privilege or Protection.*
    *(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    *(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**Exhibit 3**

1

```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE

                                    .    Chapter 11
IN RE:                              .
                                    .    Case No. 20-10343 (LSS)
BOY SCOUTS OF AMERICA AND           .
DELAWARE BSA, LLC,                  .
                                    .    Courtroom No. 2
                                    .    824 North Market Street
                                    .    Wilmington, Delaware 19801
                                    .
                    Debtors.        .    Friday, November 19, 2021
. . . . . . . . . . . . . . . .          10:00 A.M.

                         TRANSCRIPT OF HEARING
            BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
                    UNITED STATES BANKRUPTCY JUDGE
```

APPEARANCES:

```
For the Debtor:          Derek Abbott, Esquire
                         MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                         1201 North Market Street, 16th Floor
                         Wilmington, Delaware 19899

                         - and -

                         Jessica C. Lauria, Esquire
                         Glenn Kurtz, Esquire
                         WHITE & CASE LLP
                         1221 Avenue of the Americas
                         New York, New York 10020


Audio Operator:          LaCrisha Harden

Transcription Company:   Reliable
                         1007 N. Orange Street
                         Wilmington, Delaware 19801
                         (302)654-8080
                         Email:  gmatthews@reliable-co.com
```

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

1  APPEARANCES (Cont'd):

2  For the Debtors:          Adrian Azer, Esquire
                             HAYNES & BOONE LLP
3                            800 17th Street NW, Suite 500
                             Washington, DC 20006
4

5  For Zurich Insurers:      Mark Plevin, Esquire
                             CROWELL & MORING LLP
6                            3 Embarcadero Center, 26th Floor
                             San Francisco, California 94111
7
                             - and -
8
                             Kelly Currie, Esquire
9                            CROWELL & MORING LLP
                             590 Madison Avenue, 20th Floor
10                           New York, New York 10022

11
   For Marc J. Bern &        William Sullivan, Esquire
12 Partners:                 SULLIVAN HAZELTINE ALLINSON LLC
                             919 North Market Street
13                           Wilmington, Delaware 19801

14 For Century:              Tancred Schiavoni, Esquire
                             O'MELVENY & MYERS LLP
15                           Times Square Tower
                             7 Times Square
16                           New York, New York 10036

17
   For Liberty Mutual:       Kim Marrkand, Esquire
18                           MINTZ LEVIN COHN FERRIS GLOVSKY
                               & POPEO PC
19                           One Financial Center
                             Boston, Massachusetts 02111
20
   For the Coalition of      Cameron Moxley, Esquire
21 Abused Scouts for         BROWN RUDNICK LLP
   Justice:                  7 Times Square
22                           New York, New York 10036

23 For the FCR:              Emily Grim, Esquire
                             GILBERT LLP
24                           700 Pennsylvania Avenue, SE
                             Suite 400
25                           Washington, DC 20003

1   APPEARANCES (Cont'd):

2   For Krause & Kinsman:      Bernard Conaway, Esquire
                               CAMPBELL & LEVINE, LLC
3                              222 Delaware Avenue, Suite 1620
                               Wilmington, Delaware 19801
4

5   For Slater Slater         Justin Alberto, Esquire
    Schulman:                 COLE SCHOTZ P.C.
6                              500 Delaware Avenue, Suite 1410
                               Wilmington, Delaware 19801
7
    For the U.S. Trustee:     David Buchbinder, Esquire
8                              UNITED STATES DEPARTMENT OF JUSTICE
                               OFFICE OF THE UNITED STATES TRUSTEE
9                              844 King Street, Suite 2207
                               Lockbox 35
10                             Wilmington, Delaware 19801

11
    For Eisenberg             Daniel Hogan, Esquire
12  Rothweiler, Winkler,      HOGAN MCDANIEL
    Eisenberg & Jeck:         1311 Delaware Avenue
13                             Wilmington, Delaware 19806

14  For Tort Claimants:       James O'Neill, Esquire
                              PACHULSKI STANG ZIEHL & JONES LLP
15                             919 North Market Street, Suite 1700
                               Wilmington, Delaware 19801
16
                              - and -
17
                              Richard Pachulski, Esquire
18                             PACHULSKI STANG ZIEHL & JONES LLP
                               10100 Santa Monica Blvd., 13th Floor
19                             Los Angeles, California 90067

20                             - and -

21
                              Jeffrey Schulman, Esquire
22                             PASICH LLP
                               757 Third Avenue, 20th Floor
23                             New York, New York 10017

24

25

APPEARANCES (Cont'd):

For Napoli Shkolnik:          Brett Bustamante, Esquire
                              NAPOLI SHKOLNIK PLLC
                              360 Lexington Avenue, 11th Floor
                              New York, New York 10017

For National Surety          Harris Winsberg, Esquire
Corporation and              TROUTMAN PEPPER HAMILTON SANDERS LLP
Interstate Fire:             Bank of America Plaza
                              600 Peachtree Street NE, Suite 3000
                              Atlanta, GA 30308-2216

For Ask LLP and              Lawrence Robbins, Esquire
Andrews & Thornton:          ROBBINS, RUSSELL, ENGLERT, ORSECK,
                                & UNTEREINER LLP
                              2000 K Street NW, 4th Floor
                              Washington, DC 20006

For Kosnoff Law:             David Wilks, Esquire
                              WILKS LAW, LLC
                              4250 Lancaster Pike, Suite 200
                              Wilmington, Delaware 19805

For Travelers Insurance:     Louis Rizzo, Esquire
                              REGER RIZZO & DARNALL LLP
                              1521 Concord Pike, Suite 305
                              Wilmington, Delaware 19803

For Great American:          David Christian, Esquire
                              DAVID CHRISTIAN ATTORNEYS LLC
                              P.O. Box 9120
                              Mission, Kansas 66201

1  <u>MATTERS GOING FORWARD</u>:

2  2. Motion of Marc J. Bern & Partners LLC to Quash Subpoena to
3  Produce Documents Issued to KLS Legal Solutions LLC (D.I.
   6380, filed 9/27/21)

4      **Court's Ruling:  Matter Moved to November 29th.**

5  5. Letter to the Honorable Chief Judge Laurie Selber
6  Silverstein from Certain Insurers' to Respectfully Request
   this Court Compel the Boy Scouts of America and Delaware BSA,
7  LLC to Comply with Court' October 25, 2021 Order (D.I. 7198,
   filed 11/12/21)

8
       **Court's Ruling:   44**
9

10  6. Letter to the Honorable Chief Judge Laurie Selber
    Silverstein from American Zurich Insurance Company Regarding
11  Certain Insurers' Motion to Quash Notices of Deposition for
    Individual Witnesses (D.I. 7205, filed 11/14/21)

12
13  7. Letter to the Honorable Chief Judge Laurie Selber
    Silverstein from Mark D. Plevin Regarding Certain Insurers'
14  Motion to Quash and/or Limit Rule 30(b)(6) Deposition Notices
    to Insurers (D.I. 7206, filed 11/14/21)

15      **Court's Ruling:   130**

16  8. Letter to the Honorable Chief Judge Laurie Selber
17  Silverstein from Kelly T. Currie Regarding Insurers' Omnibus
    Motion to Compel Kosnoff Law PLLC, AVA Law Group, Napoli
18  Shkolnik, PLLC, Krause & Kinsman Law Firm, Andrews & Thornton,
    Attorneys at Law, and ASK LLP to Respond to Document Requests
19  and Interrogatories (D.I. 7239, filed 11/15/21)

20  9. Letter to the Honorable Chief Judge Laurie Selber
21  Silverstein from Kelly T. Currie Regarding Certain Insurers'
    Motion to Compel Compliance with the Subpoena to Produce
22  Responsive Documents Served on Slater Schulman LLP (D.I. 7240,
    filed 11/15/21)

23  10. Letter to the Honorable Chief Judge Laurie Selber
24  Silverstein form K. Currie Regarding Insurers Motion to Compel
    Compliance with the Subpoena to Produce Responsive Documents
25  Served on Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck,
    P.C. (D.I. 7241, filed 11/15/21)

1  11. Letter to the Honorable Chief Judge Laurie Selber
2  Silverstein from Jeffrey Schulman Regarding TCC and Certain
   Insurers' Discovery (D.I. 7253, filed 11/16/21)

3       **Court's Ruling:  Motions Continued**

1            If you are going to accuse a lawyer of not living

2   up to their professional obligations you ought to have more

3   than that in your hand; you really ought to.  This is not the

4   way to do things.  I don't accuse anybody of anything unless

5   is know what I'm talking about.  This, in my mind, Your Honor,

6   is one of the lowest forms of accusation you can make.

7            Thank you, Your Honor. If you have any questions

8   I'm available to answer them.

9            THE COURT:  No.  Thank you very much.

10           I believe that is all of the law firms involved in

11  number eight, is that correct; agenda item number eight?

12           MR. CURRIE:  Yes, Your Honor.

13           THE COURT:  Okay.  Nine and ten are similar,

14  correct?

15           MR. CURRIE:  Yes, Your Honor, they are.

16           THE COURT:  Okay.  I would like to see if we can

17  get through them tonight.  Lawyers have been here all day and

18  they raised similar issues.  So I would like to go ahead, this

19  is agenda item number 9 is a motion to compel compliance with

20  a subpoena served on Slater Slater Schulman.

21           MR. CURRIE:  Yes, Your Honor.  As you pointed out

22  our motion to compel as to Slater Slater Schulman and to the

23  Eisenberg Law Firm as well arose under similar circumstances

24  where in that we served them with a Rule 45 subpoena and they

25  responded here.  You know, some of the arguments that counsel

1  makes in response, essentially tried to conflate what we're

2  asking for into what we are not asking for, convert what we're

3  asking for into what we're not asking for.

4         We are not asking for privileged communications

5  between the claimants and the lawyers.  As we went over it in

6  discussing the last motion what we're seeking for is documents

7  that go to the process; you know, how were -- particularly in

8  circumstances where proofs of claim were signed by attorneys,

9  what was the authorization, what were the documents to -- you

10 know, we're seeking documents that might identify lawyers who

11 interacted with claimants not what they talked about,

12 documents to identify third parties, whether its aggregators

13 or other third parties that had a role in the claims

14 accumulation and vetting process or in the signing of the

15 proofs of claim and submission of them.

16        We -- so I can go through the list of our requests,

17 but, essentially, we're not looking for what counsel asserts

18 that we are.  We're not looking for the privileged

19 communications.  We are trying to get at this claims process

20 particularly where lawyers were signing proofs of claim close

21 to the discovery date.  One of the things that I think we will

22 probably hear, because counsel raised it in their response, is

23 some of those proofs of claims were cured, if you will, or

24 ultimately signed by claimants, but it wasn't until some of

25 these issues were raised that those cures happened.

1        So I think it's with -- even though if some of them

2    have been ultimately signed by the claimants themselves that

3    it remains relevant to the -- if for all the reasons we've

4    been talking about for the last hour or so about why unpacking

5    that process is still important and, essentially, where we are

6    with these two law firms, Your Honor, is where we ultimately

7    would like to be with all the firms that we had been talking

8    about today and be able to obtain documents.

9        I can say that we did make some progress in some of

10   the meet and confer discussions narrowing the issues and

11   trying to make our views clear.  And hearing from counsel for

12   Slater Schulman.  And I think we did manage to narrow some of

13   the issues, but we arent able to come to an agreement.  You

14   know, their view is that -- and I may be mistaken, but I don't

15   think that the Slater Schulman -- counsel for Slater Schulman

16   produced any kind of a privilege log yet.  It's a little hard

17   to address claims of work product, for example, when we don't

18   have the documents in front of us because as the court is

19   aware a work product document may have genuine work product or

20   facts that are not privileged and are not work product as part

21   of one document.  We don't have anything to discuss because we

22   don't know what there is.

23        So what we are seeking here is that the court order

24   actual compliance and compliance with our subpoena.  If we're

25   going to engage in a debate or discussion of particular

1  privilege issues let's try to get to that.

2            THE COURT:  Thank you.

3            Mr. Alberto.

4            MR. ALBERTO:  Good afternoon, Your Honor, or I

5  should say good evening now.  I see its dark outside.  Justin

6  Alberto from Cole Schotz on behalf of Slater Slater Schulman.

7            I am going to start where Mr. Currie left off and I

8  believe that we have, on several meet and confers now,

9  indicated that we would be willing to, at some point,

10 undertake the burden of going through a privileged log to the

11 extent anyone can explain to me why this or to Slater why this

12 discovery is at all relevant.

13           I apologized before, Your Honor, I did pop onto

14 video twice because I think there are some overlapping issues

15 that were discussed at length during colloquies between you

16 and Mr. Robbins earlier today. I ultimately decided to sit

17 down both times because it wasn't my matter and I think

18 everybody is getting tired towards the end of the day here and

19 I didn't want to belabor the record, but the discovery that

20 the insurers seek it's not only irrelevant, its untimely, it's

21 completely over broad and it's not proportionate at all to the

22 needs of the case at this time.

23           I find a lot of irony in Mr. Currie arguing this

24 side of the aisle this afternoon while Mr. Plevin argued the

25 other side of the aisle this morning.  I agree with Mr.

1 Robbins in that respect -- excuse me, Mr. Russell in that

2 respect.  It's not even close to the full picture of why we're

3 here today.

4 　　　　　Unfortunately, Your Honor has heard a lot about

5 turning the temperate down in these cases.  This discovery

6 does the exact opposite, in my opinion, and would leave

7 confirmation down tangents that really have no bearing on

8 11/29 or, at least, no bearings that I can figure out.  The

9 discovery is a continued effort by insurance companies, all of

10 whom have to defend against mass tort cases like the ones

11 presently before Your Honor day in and day out to investigate

12 business practices of the personal injury bar that represents

13 the claims -- excuse me, the claimants whose claims the

14 insurers may ultimately have to pay.  So they have an economic

15 incentive to be here muddying the water.  This is the second

16 time that they have sought discovery from Slater and other

17 firms based on the, still, unsubstantiated allegation that

18 there was wrongdoing in the claims process.

19 　　　　　I want to make one point before I move onto the

20 discovery that is before Your Honor today.  The last time that

21 we were before Your Honor the insurers sought substantially

22 the same discovery back in February pursuant to Rule 2004

23 based on their theory that there was egregious claims mining

24 in this case before the bar date.  Rule 2004 has been noted by

25 Your Honor and Your Honor's colleagues on the bench as far

1  broader then the Rules 26 through 45 normal strictures of

2  discovery that were here today.

3          Let me say one other thing on that, Your Honor.  If

4  there was a shred of evidence that substantiated any claims

5  that the insurers believe of wrongdoing or nefarious conduct

6  we would be having a much different conversation today.  We

7  wouldn't be here on a one-off Rule 26 or 45 discovery matter.

8  We would be here fighting over an omnibus claim objection or

9  worse a sanctions motion.

10          In my view, Your Honor, again, the discovery at

11  issue today, at its core, at most is relevant to a question of

12  authority.  Did Slater attorneys have the authority to execute

13  proofs of claim on their clients' behalf. And while I still

14  believe the issue of authority is completely irrelevant at

15  this juncture the rest of the discovery about Slater's

16  business practices, how it came to represent a client are

17  wholly unnecessary and completely irrelevant to the 1129

18  confirmation standards and could never yield any probative

19  evidentiary value to plan confirmation.

20          What question Slater asked our client, what

21  documents they reviewed, what questions they have its just --

22  it goes to the heart of the attorney/client privilege and work

23  product doctrines.  The insurers know that they are not

24  entitled to that and when you read these requests for

25  production of documents, particularly, I think request 7

1  through 11 they are, essentially, asking that we turn over our

2  entire client files for 14,200 clients.

3          The claimants, Your Honor, they will have their

4  proverbial day in court when it comes time for a trustee or

5  whomever to reconcile and analyze the voracity of these claims

6  that were submitted in these cases.  The claims will rise and

7  fall on their own without regard to what Slater's intake

8  process was or was not and how they came to have -- how they

9  came to represent their clients.

10          The claims are the clients.  They are not Slaters.

11  If the trustee, after reviewing those claims, thinks certain

12  client claims are invalid for whatever reason he or she can

13  object and seek to have them disallowed or use whatever the

14  equivalent took the trustee has at its disposal pursuant to

15  the trust distribution protocol that ultimately, you know, I

16  expect to follow from confirmation in these cases.

17          So really what they're looking for, which I still

18  believe is irrelevant, but I'm happy to address about the

19  question of authority, it's been raised a lot, it's been

20  hinted at, let's get right to it.  We submitted a letter

21  response yesterday, Your Honor, and that included Slater's

22  form of engagement letter which all 14,200 Slater clients

23  signed before their claims were submitted.  That proves that

24  Slater absolutely had the authority to sign claims on behalf

25  of all of its clients, period, full stop.

1          Slater didn't stop there though. It went to great

2   efforts to have approximately 95 percent of the claims

3   submitted prior to the bar date, signed by the actual client

4   and then after the bar date obtained even more signatures to

5   bring the total percent, I believe, to 97.5.

6          So, again, Your Honor, the claimants in these cases

7   they're not corporate clients with in-house legal departments

8   who allege -- who get paid to be responsive and respond to

9   legal inquiries on a lightning fast basis.  They're

10  individuals and they're individuals who allege to have

11  suffered some of the most unthinkable and reprehensible acts

12  conceivable.

13          It's not unreasonable to think that a small

14  percentage of them might not respond to a signature request in

15  a timely fashion and this is exactly why Slater sought and

16  obtained an ethics opinion that we also attached to our

17  response yesterday that Slater not only had authority to sign

18  on behalf of its clients who for whatever reason were

19  unreachable couldn't sign for themselves, but, in fact, likely

20  had an ethical obligation to do so.  That should not open

21  Slater to discovery now.  I agree with Mr. Robbins before that

22  it would be a perverse outcome for a lawyer to take that act

23  on behalf of its client just to be opened up later on to

24  discovery.

25          Your Honor, I am happy to cede the podium.  Again,

1  I stand on my belief that at this juncture it's just wholly

2  irrelevant.  The claims are valid under 502 until they're

3  objected to. Slater is not submitting a master ballot.  And

4  the last thing I will say, Your Honor, the voting procedures

5  order also includes carefully negotiated provisions concerning

6  the use of electronic ballots.  The meta data in audit trail

7  of which, I believe, are automatically deemed to be part of

8  the record in this case.

9          So, you know, put together we have a second attempt

10 that discovery by a group of insurers economically motivated

11 to keep a pot of dollars available to claimants as low as

12 possible with no new evidence supporting how this discovery is

13 relevant to or needed to satisfy or test the 1129 plan

14 confirmation standards against the backdrop of a voting

15 process by which the party and Your Honor is ensured that

16 there could be no legitimate pampering that goes unnoticed.

17         So, again, I just don't see how this is relevant

18 now.  To the extent that I'm told by Your Honor that it is

19 relevant we will, of course, produce a privilege log, but we

20 have said and I did want to correct the record that, you know,

21 to the extent we're told that this is relevant we will, of

22 course, comply with our obligations to produce a privilege

23 log, but I just don't think that they could pass the relevancy

24 issue.  Of course Your Honor may disagree, but that is my view

25 and I'm happy to answer any questions you may have.

1          THE COURT:  I don't think I have any questions of

2   you.  I did note the ethics opinion that the Slater firm

3   received and followed.

4          Mr. Currie, the question I have about the Slater

5   firm for you was a couple.  One, I noted, and it must have

6   come out of your filings, that they filed approximately 14,200

7   claims and 95 percent of them were signed by the claimant

8   prior to the bar date.  So you are only talking about 5

9   percent of their clients whose claims the firm signed and now

10  there's 97 and a half percent who have signed proofs of claim

11  themselves, the claimant.

12         So if I am going to consider the information I got

13  from Mr. Hinton about -- and look at the fact that a certain

14  lawyer filed a number of claims and that that should be

15  suspicious because they did, when I am looking at the Slater

16  firm shouldn't I take into consideration that 95 percent of

17  their claims were signed by a client?  Doesn't that weigh in

18  favor of the fact that there doesn't need to be an

19  investigation of the Slater firm in terms of concern about

20  fabricated proofs of claim?

21         MR. CURRIE:  Your Honor, I think that the court can

22  appropriately look at figures like that across the different

23  law firms that we're talking about and the different

24  circumstances under which these claims were submitted.  So I

25  am not suggesting that it's not appropriate to consider those

1  factors.

2          Here, you know, with the Slater firm one of the

3  things that becomes -- that sort of has emerged from this

4  discovery process is we've learned a little bit more that we

5  didn't know before.  We didn't know, for example about the

6  ethics opinion that the firm sought.  I think the Slater firm

7  could be appropriately praised for that. It seems like an

8  appropriate thing to do.

9          One of the things that struck us about the opinion

10  letter that they received is the dangers of failing to

11  carefully examine claims and the ethical dangers that can

12  arise when attorneys sign proofs of claim.  So I think that

13  is, in many ways, re-enforces some of the issues that we're

14  seeing broadly among many of the cases of the law firms here.

15          So I think one of the things I think is still

16  appropriate, Your Honor, for the Slater firm is even though

17  the -- it appears or at least the representation has been made

18  that now where we are is that the outstanding claims have been

19  -- that were originally signed by lawyers has shrunk.

20          What we don't have -- and we have a representation

21  to that effect, but we don't really have an understanding of

22  the process by which that happened.  You know, in other words,

23  and I'm not suggesting that it happened here, but one of the

24  things that we -- that the court has seen from some of the

25  work that was done earlier in the process in the Rule 2004 is,

1  you know, evidence one you look under the hood reveals, for

2  example, there might be a difference between the date when a

3  claim form is signed where, for example, the lawyers signature

4  proceeded that.

5          Then even if, hypothetically, that were the case

6  and even if at some point later a claim form was signed by the

7  claimant themselves one doesn't know just from that fact is,

8  well, if the original claim form had a lot of missing

9  important elements but at some -- and it was signed by a

10 lawyer, but then was somehow cured what you don't know is what

11 went into that cure process.  Are we saying that is it the

12 case that were previously the evidence suggested that forms

13 were signed and information was filled in later which raises

14 questions about the authenticity or the accuracy of the

15 information, you know, has that been fixed.  We don't really

16 know unless we are permitted to seek discovery and ultimately

17 just seek depositions to find out from those who are involved

18 in what we're talking about here which is the post-submission

19 correction of claims what exactly happened.

20         So I think -- so just to reiterate, Your Honor, I

21 think it is -- I think it can be relevant to examine or take

22 into account what percentage of the claims submitted by a

23 particular law firm were signed by the claimants initially

24 versus counsel.  I think it's not the only factor to be

25 considered.

1              THE COURT:  Okay.  But you are kind of shifting in

2    that the original sin, as I understood it, was that a claimant

3    didn't sign their proof of claim form and now we have the

4    survivor signing their proof of claim form, but now you want

5    to know information about that.  So you are kind of shifting

6    the goal post here, aren't you?

7              MR. CURRIE:  Well I guess what I would say, trying

8    to add to your analogy, if the original sin or the original

9    evidence of the potential problem in the process is an

10   attorney signing the proof of claim form that wasn't the only

11   type of problems that became evident with the initial

12   investigation that came up during Rule 2004 process, in the

13   application of Rule 2004.

14             Some of the other examples that were described in

15   some of the declarations the court read was, you know, for

16   example, the example I said, where proofs of claim were

17   apparently created after the lawyers' signature was affixed.

18   And other proofs of claim where proofs of claims appear to

19   have like an identical preprinted signature page that are, at

20   some point in time, attached to that.

21             Instances where it wasn't just a lawyer submitting

22   a proof of claim but where some of the proofs of claims were

23   largely blank with very important fields not built in at all.

24   And so in some ways this lawyer signing the proof of claim is

25   the canary in the coal mine.  It's an indication of potential

1   serious problems in the review process, but it doesn't

2   necessarily reveal that it's the only problem or the only

3   concern.

4          MR. SCHIAVONI:  Your Honor, you drew the conclusion

5   that all these other ones were signed by the claimants.

6   Factually that is not the situation here. It's like huge

7   numbers of the signatures were electronic.  If you remember,

8   the coalition fought tooth and nail during the bar date

9   process against verification of signatures having to be

10  provided.

11         So what percentage of these signatures are

12  handwritten versus whether the aggregator chose to attach

13  electronic signatures it's like you're drawing a conclusion

14  from this that isn't before you right now.  It's like this

15  huge number of electronic signatures that are unverified.

16         THE COURT:  We permit people to file proofs of

17  claim with an electronic signature. I mean they just do.  Omni

18  does that.  Prime Clerk does that.  That is how you do it.  If

19  you submit it through their portal or whatever it is that is

20  how you do it.

21         MR. CURRIE:  These were court approved protocols.

22         THE COURT:  How can we say people can't do that?

23         MR. SCHIAVONI:  Your Honor, in the totality of the

24  circumstances that we put before you, and let's be clear about

25  this, on the 2004 hearing, you know, lawyers like Mr. Alberto

1  they were there.  They didn't submit any evidence to contest,

2  any evidence to contest any of the affidavits that went in.

3  They didn't contest any of the evidence.

4        There were hearsay assertions as there are now

5  about what took place, but the actual evidence that showed

6  large numbers of forged signatures, and we put that before the

7  court, went into evidence uncontested.  These were signatures,

8  the same handwriting used for hundreds of different claimant

9  names.  I don't remember which firm it was at the moment, so

10 I'm not --

11        THE COURT:  I'm not sure it's Mr. Slater.  I'm

12 looking, I've got those. I pulled out those declarations so I

13 will be looking at those, but I am focused on the attorneys in

14 the firms that are in front of me, and I view them as

15 individually, so I will be looking at that.

16        I do think, I mean it does strike me because this

17 is all sort of mathematical, you know, here is the percent of

18 this and the percent of that, if my numbers are right and

19 these attorneys -- the Slater firm clients signed 95 percent

20 of the claims that were submitted by the bar date that is

21 pretty indicative of not falling within the original sin,

22 let's say that.

23        MR. SCHIAVONI:  Your Honor, you may not understand

24 what we were looking at and that was fundamentally the proofs

25 of claim being prepared by third parties, by a third-party

1  source.  This firm in Montana, you know, for which we

2  submitted a declaration from an employee there.  You know,

3  huge numbers of these being generated, you know, by law firms

4  -- by these businesses and not the law firms.

5        So if this particular firm had a situation where

6  they had some stub group of them where the aggregator couldn't

7  sign them and they had to sign -- they submitted a signature

8  and they all got done that way that may just be indicative of

9  that particular problem, but we haven't been able to get at

10  any of this, get behind any of it.

11        I think what we put before you is fairly

12  significant evidence that -- you know, it's like we haven't

13  come on a lark, this isn't a fishing expedition.  You know, we

14  put forward some serious evidence that ties together to a

15  group of firms who all tie together to an email about creating

16  a particular bulk of votes and it's like you will see it also

17  ties together to fund it that's coming from a common source.

18        So, you know, it was not done *ad hominem*,  it was

19  not -- it may be that, you know, if things are here, but it's

20  like this was a legitimate effort to look into what we

21  perceived to be a legitimate problem.  It's like it's not a

22  lark, it's not a fishing expedition.  It was based on a solid

23  foundation.  It's not responded to by just these hearsay, you

24  know, assertions of outrage.  It's like when they had the

25  opportunity to put on evidence they wouldn't.  It's like the

1  level of resistance we have gotten to getting depositions from

2  anybody, the aggregators in particular has been absolutely

3  intense.

4         You know, I did hear, you know, when this schedule

5  was set, this expedited schedule, I heard the plan proponents

6  come before the court and we talked about how the plan

7  proponents for asking for something extraordinary and it was,

8  I forget the saying, like for those who ask for extraordinary

9  relief some extraordinary cooperation is going to be perhaps,

10 you know, expected.

11        So we will serve subpoenas in all the different

12 jurisdictions if that's necessary, but, you know, to show-up

13 with Mr. Robbins who is a tremendous lawyer, tremendous

14 lawyer, okay, but, you know, the level of resistance doesn't

15 correspond to the level of cooperation we were promised when

16 the schedule was set.

17             THE COURT:  Thank you.

18             Mr. Alberto.

19        (No verbal response)

20             THE COURT:  You're muted.

21             MR. ALBERTO:  Am I unmuted now?

22             THE COURT:  Yes.

23             MR. ALBERTO:  Okay, sorry about that.  I was trying

24 to interrupt Mr. Schiavoni and I guess lucky for him I was on

25 mute.  This is so far beyond anything that is in the record.

1   It is Mr. Schiavoni's clients' fishing expedition.  It is not

2   our burden to put on evidence.  They have to prove relevancy

3   and they have not done that.

4           I agree with you, Your Honor, that the evidence

5   that we have by pure numbers shows that Slater was a sterling

6   example of exactly how to present claims.  And the fact that

7   some claims were signed on the same day, even if it was

8   several hundred of them, is not probative to any fact many

9   other than the fact that Slater was still trying to get its

10  clients to sign those remaining claims and only when they

11  could not and were told that they had an ethical obligation to

12  submit those claims nonetheless that is when they submitted

13  them.

14          There is no evidence to show.  It's not our burden

15  to carry.  Discovery has to be relevant and proportionate to

16  the needs of the case.  Mr. Plevin said that earlier today and

17  I thought he outlined the standard for discovery perfectly.

18  It can be applied equally here.  This is completely irrelevant

19  and not at all proportionate to anything other than the

20  insurers fishing expedition.  Your Honor should not allow

21  this.

22          THE COURT:  Thank you.

23          I think our last matter is Rothweiler.

24          MR. CURRIE:  Yes, Your Honor.  I guess what I would

25  say is the issues are, essentially, teed up in the same way

1  for the Eisenberg Rothweiler firm.  Again, you know, they --

2  it was a firm that signed, that submitted bout 18,000 proofs

3  of claim and what we have, for example, is Mr. Eisenberg

4  signed nearly a thousand, 963 proofs of claim.  The vast

5  majority of those within a couple weeks of the bar date.  And

6  he executed 190 proofs of claim in a single day.  And another

7  ER attorney, Joshua Schwartz, signed 1,448 proofs of claim and

8  over 300 on a single day.

9         So, you know, those numbers if that is the original

10  sin, in the court's words, you know, those kinds of numbers

11  cast real doubt about whether proper vetting of these claims

12  complied with, you know, the oath affirmed in signing the

13  proofs of claim or the obligations under Rule 9011.  So it

14  seems perfectly appropriate under these circumstances that we

15  are able to get -- obtain the documents that we're requesting

16  and then, you know, ultimately our plan is to seek depositions

17  with those documents in hand to be able to explore and unpack

18  just want was going on here and to be able to shed light on

19  the issues.

20         As we talked about in our discussion of the

21  previous motion, again, we're not seeking communications

22  between an individual claimant and an attorney.  You know,

23  that is not what we are looking for.  We are looking for

24  information, documents that go to the claims aggregation,

25  compilation, submission, you know, signing and potentially any

1  cure.  And, frankly, the contracts and other documents that go

2  to understandings and relationships with third parties.

3          So, essentially, you know, what counsel has

4  submitted in response is, to us, a very generalized

5  categorical privilege log which is not of much use to anyone

6  because, essentially, it doesn't provide an opportunity to

7  actually understand what kind of documents there might be that

8  they are claiming privilege over so that we could raise

9  arguments, you know, for example, whether there may be plenty

10 of documents there that either we meet the burden of

11 demonstrating the need for them under the work product

12 doctrine or documents that may have some privileged content,

13 for example, because it contained a communication with a

14 client that could be redacted and other parts that are

15 relevant to the information that we're seeking to get at the

16 underlying issues.

17         So, you know, I welcome the fact that they were

18 willing to produce a privilege log, but it's not one that is

19 helpful to us.

20         THE COURT:  Thank you.

21         Mr. Hogan.

22         MR. HOGAN:  Thank you, Your Honor.  Good afternoon,

23 good evening, good Friday afternoon I will call it.  Thank

24 you, Your Honor.  Daniel Hogan of Hogan McDaniel on behalf of

25 Eisenberg, Rothweiler, Winker, Eisenberg & Jeck.

1            Your Honor, I will try to be brief.  It's been a

2   long day.  I have sat through all the other hearings,

3   obviously, today.  I have heard all the various relevant

4   arguments.  I will try not to pair anything that has been said

5   by Mr. Robbins or Mr. Alberto, but I just want the court to

6   have the understanding about how Eisenberg, Rothweiler is a

7   little bit different then these other parties.

8            Your Honor, we were initially served with party

9   discovery by these insurers. We pushed back immediately as you

10  would expect us to do and they conceded ultimately that we

11  weren't parties.  And I'm sure some of that has to do with the

12  fact that Eisenberg Rothweiler is a Philadelphia firm and its

13  well within 100 miles of where you sit now.

14           So nevertheless, we objected, we agreed to accept

15  the subpoena.  We, in fact, accepted the subpoena and we filed

16  initial responses and objections that really gave them

17  nothing. I mean from our perspective relevance wins the day

18  for us here.  And even if it doesn't win the day for us

19  attorney/client privilege and work product do.

20           That being said, Your Honor, and in light of your

21  comments over the past week about the need for the parties to

22  be mindful, to be thoughtful and to try to focus the issues as

23  to not burden the court with these issues we revisited our

24  responses and we prepared a privilege log.  We gave the

25  insurers some of what they were looking for in the hopes that

1 they would go away, but that is, as I know from doing this

2 long enough, not how this works.

3          Nevertheless, it gives us some credence with the

4 court as we come to you and explain that, you know, we had

5 disclosed to them the fact that Eisenberg Rothweiler didn't

6 use any call centers, didn't use any claims aggregators.  I

7 mean these are the bad acts that they're arguing are the basis

8 for the relevancy of these documents.

9          We also told them that we didn't do any -- there

10 was no third-party financing involved with these claims.  We

11 told them that -- one of the crux of questions that they had

12 related to whether page 12 of the proof of claim, which is the

13 signature page, whether that was separately signed and

14 attached to the proof of claims.  We told them that under no

15 circumstances did we do that with the claims, that when the

16 proof of claim was signed by an attorney at Eisenberg

17 Rothweiler it was done after reviewing the entirety of the

18 proof of claim.

19          Your Honor, there were a number of proof of claims

20 that were signed by Eisenberg Rothweiler attorneys in the lead

21 up to the bar date and that is not to be unexpected given the

22 time crunch and given the very nature of a deadline.  The

23 pandemic didn't help in any way, shape or form.  So, Your

24 Honor, that is where we find ourselves, but Eisenberg

25 Rothweiler did make the effort to disclose the relevant

1  information that we could provide them to the answers that we

2  could provide them that, in fact, we hadn't partaken of those

3  actions which would give rise to a potential argument that we

4  were somehow bad actors and that we did something wrong which,

5  in fact, we didn't.

6          Your Honor, if I could I just want to address the

7  relevancy argument because some of the other parties didn't

8  really have to because they did the whole dance, hey, we're

9  not a party, we will save relevance for another day.  We don't

10 have that luxury, Your Honor.  What we have is a database.

11 Eisenberg Rothweiler has claims and they have people that talk

12 to clients, take notes, and receive emails, and get documents

13 and everything goes into a database.  The database, by its

14 nature, is amalgamation of attorney/client communications, of

15 work product, of documents received from clients.

16         The notion that based on these allegations which

17 don't have any basis -- will point you to the very first page

18 of the very motion that the insurers are pursuing.  They state

19 in there that ER disclosed requested materials to a third-

20 party, for example, you're a case manager.  We have had no

21 contact communication or relation with your case manager.

22 That is just patently not true, but this is what they are

23 utilizing as a basis to boot strap themselves to make this

24 relevance argument which, again, is outside the pale.

25         1129(a)(3), obviously, the plan has got to be

1 proposed in good faith and not by any means forbidden by law.

2 That is the debtors' burden.  That is not our burden.  That is

3 not the insurance company's burden, but it is definitely not

4 our burden.  So from our perspective the relevancy and the

5 proportionality of what they are looking to take away from our

6 clients and from Eisenberg Rothweiler it is just huge.  There

7 is no basis for it, Your Honor.  In terms of the value added I

8 don't see how there is any value added to these cases in terms

9 of trying to get this confirmation across the finish line by

10 the end of January.

11         Your Honor, I just wanted to make sure that I

12 address some of the comments that you made. We definitely see

13 this as a red flag.  You know, in terms of our privilege log

14 we believe it is satisfactory and together with the

15 attorney/client privilege and the word product give rise to

16 the defense we need necessarily not have to produce any of

17 this documentation.

18         Your Honor, unless you have any questions for me I

19 will rest on my papers.

20         THE COURT:  I don't think so.  Thank you.

21         MR. CURRIE:  Your Honor, I see a couple others have

22 their hands up. I don't know if that is still from previous or

23 if they want to be heard.

24         MR. SCHIAVONI:  I just had something very quickly.

25 Your Honor, the Rothweiler claims were shared with the Kosnoff

1  claims.  Mr. Van Arsdale is the one who owns an interest in

2  the Montana shop reciprocity.  Mr. Hogan is a gentleman, he's

3  a professional, I think he has made a misstatement about the

4  source of the claims. I think he would find that they would

5  come from reciprocity, these claims, and from that boiler room

6  in Montana if he looked into it.

7           You know, that is why a little discovery here would

8  be useful because, you know, these sort of, again, hearsay

9  assertions about the facts aren't the facts.

10          MR. HOGAN:  Your Honor, could I just respond to

11 that?

12          THE COURT:  Yeah, go ahead.

13          MR. HOGAN:  Thank you.  So nowhere in the motion is

14 there any mention of reciprocity, Your Honor.  This is the

15 first I'm hearing about reciprocity.  Number two, it wasn't my

16 construct that the AVA motion be set forth either next week or

17 the following week.  I am not sure when it is scheduled for,

18 but I don't represent AVA law.  I can't speak to what AVA law

19 did, so I don't think that is appropriate for Mr. Schiavoni to

20 ask me to address something that, number one, isn't in the

21 motion and, number two, isn't relative to my client.

22          THE COURT:  Let me ask you -- whoever, Mr.

23 Schiavoni, or Mr. Currie, or whoever can answer this question

24 -- I permitted discovery of the aggregators, albeit later then

25 you wanted me to, but I did, where does that stand?  What

1  courts are those in?

2      MR. SCHIAVONI:  In Montana right now we have an

3  emergency -- like we were -- we have an emergency motion to

4  transfer the Montana proceedings to your court, Your Honor, to

5  be heard.

6      THE COURT:  That is with respect to who?

7      MR. SCHIAVONI:  Reciprocity.

8      THE COURT:  And is that in the bankruptcy court

9  there or the district court there?

10      MR. SCHIAVONI:  I believe it's in the bankruptcy

11  court.

12      THE COURT:  What about the other?  I'm recalling

13  three aggregators.

14      MR. CURRIE:  Well, Your Honor, you will recall that

15  the ones that are going to be heard later are Verus and KLS

16  are also with the Marc Bern motion.

17      THE COURT:  Okay.  So those have been put off a few

18  times.  Are you guys talking?

19      MR. SCHIAVONI:  Yes, Your Honor.  I think you had

20  admonished the parties to talk and -- maybe that is not the

21  right word to use, okay.  So enough.

22      THE COURT:  Okay.  Well its 6 o'clock and my staff

23  deserves to go home.  We have completed the docket.  Item 11

24  was the only thing left and I think that was the motion to --

25  that I think we actually talked about last time.  Am I right

1  on that?

2           Mr. Schulman, I think I saw your hand up.

3           MR. SCHULMAN:  Good evening, Your Honor.  May I

4  please the court, Jeffrey Schulman from Pasich LLP, insurance

5  counsel to the TCC.

6           I believe if Your Honor would allow for 60 or so

7  seconds just to close the loop I think that may be helpful

8  because I also think that the last item on the agenda is

9  probably the least controversial of the day.  The court

10 certainly got a flavor today for some of the insurance

11 coverage disputes by and between the parties.  The TCC is

12 continuing to work with the 22 joining insurers.  I think

13 there actually may be more on that list now in order to be

14 part of the solution and not part of the problem.

15          I studied the scheduling order before today with

16 the hopes that I could come up with a brilliant idea for how

17 to get all these stipulations negotiated, and drafted, and

18 signed and then if any issues remain to take limited

19 deposition testimony by December 1st or at least to get that

20 testimony secured at some point thereafter in a manner that

21 does not impact the confirmation hearing date.

22          In all candor, Your Honor, I don't have that

23 brilliant idea, but my guess is that this court would tell us

24 that at almost 6 o'clock in the evening on the East Coast that

25 it remains incumbent on the parties to, in effect, find a

1  solution and I remain optimistic that we can and we will do

2  so.  And I also believe, Your Honor, that in addition to

3  today's rulings this court's statements regarding the debtors'

4  burdens and others based upon representations by the insurers

5  as to the extent to which they will be calling fact witnesses,

6  what they will not be providing to their experts and how all

7  of that impacts that which is discoverable from the insurers.

8  I think all of that will be informative as we continue to work

9  together.

10         I don't have anything else to add unless Your Honor

11  has any questions or wishes to hear anything further.

12         THE COURT:  I don't.

13         Ms. McNally.

14     (No verbal response)

15         THE COURT:  Ms. McNally, you're muted.

16         MS. MCNALLY:  Does this work?

17         THE COURT:  Yes.

18         MS. MCNALLY:  Apologies.  Your Honor, I co-signed

19  the letter that originally pulled those motions from your

20  court's docket and I just wanted to echo what Mr. Schulman

21  said that we are continuing to work together. I think your

22  rulings today will be very instructive in narrowing the areas

23  of some dispute.  We hope that this will be the last you hear

24  from us.  But if you do hear from us I expect it will be on a

25  much more limited basis.

1              THE COURT:  Thank you.

2              When is our next date together?

3              MR. ABBOTT:  Your Honor, Derek Abbott.  I believe

4  we are Tuesday morning at 10, I believe.

5              THE COURT:  Okay.  Can people please check you're

6  audio.

7              Okay.  Tell me again, Mr. Abbott.

8         (No verbal response)

9              THE COURT:  You're muted.

10             MR. BUCHBINDER:  It's the 23rd, Your Honor,

11 Tuesday.

12             THE COURT:  Okay.

13             MR. ABBOTT:  At 10 a.m., Your Honor, yes.

14             THE COURT:  I thought I might have that day.  What

15 do we know is on that date?

16             MR. ABBOTT:  Give me a moment, Your Honor.  We did

17 file an agenda earlier. I will just have to go grab it.

18             THE COURT:  Okay.

19             MR. ABBOTT:  Your Honor, my apologies.  I'm not

20 finding it as quickly I had hoped.

21             THE COURT:  Okay.  Do you know is it something

22 other than discovery?

23             MR. BUCHBINDER: Your Honor, this is Dave

24 Buchbinder. I have my copy up.  If I said more of the same

25 would that be a description?  There are three --

1              THE COURT:  Go ahead, Mr. Buchbinder.

2              MR. BUCHBINDER:  There are three items and they are

3  to be summed up as more of the same; all discovery.  And

4  similar to this afternoon's matters.

5              THE COURT:  Okay.  Then I will be some or all of

6  you on Tuesday.  I am taking the 8, 9 and 10 -- I am taking

7  the last few matters that we argued collectively and I will be

8  prepared to rule on those Monday or Tuesday.  I will give you

9  the answers. I do want to take a look at the firms

10 individually as I said I would.  And you are somewhat in

11 different stages because some of the firms are at the

12 substantive stage and some of the firms are still at the am I

13 a party and what is the right process stage.

14             So I want to look at each of those, but I will do

15 that promptly and we will get a ruling on each of those

16 various matters.

17             MR. ABBOTT:  Thank you, Your Honor.

18             THE COURT:  Thank you.  We are adjourned.  Everyone

19 have a good weekend.

20        (Proceedings concluded at 6:04 p.m.)

21

22

23

24

25

1                        <u>CERTIFICATE</u>

2

3        We certify that the foregoing is a correct transcript

4   from the electronic sound recording of the proceedings in the

5   above-entitled matter.

6
    <u>/s/Mary Zajaczkowski</u>            November 20, 2021
7   Mary Zajaczkowski, CET**D-531

8
    <u>/s/William J. Garling</u>          November 20, 2021
9   William J. Garling, CE/T 543

10

11  <u>/s/ Tracey J. Williams</u>         November 20, 2021
    Tracey J. Williams, CET-914
12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          CERTIFICATE

2

3        We certify that the foregoing is a correct transcript

4   from the electronic sound recording of the proceedings in the

5   above-entitled matter.

6
    /s/Mary Zajaczkowski             November 20, 2021
7   Mary Zajaczkowski, CET**D-531

8
    /s/William J. Garling            November 20, 2021
9   William J. Garling, CE/T 543

10

11  /s/ Tracey J. Williams           November 20, 2021
    Tracey J. Williams, CET-914
12

13

14

15

16

17

18

19

20

21

22

23

24

25