**Exhibit 1**

**Excerpts of November 10, 2021 Hearing Transcript**

```
                    UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF DELAWARE


IN RE:                           . Chapter 11
                                 . Case No. 20-10343 (LSS)
BOY SCOUTS OF AMERICA AND        .
DELAWARE BSA, LLC,               . (Jointly Administered)
                                 .
            Debtors.             .
                                 .
. . . . . . . . . . . . . . . . .
                                 . Adversary Proceeding No.
BOY SCOUTS OF AMERICA,           . 20-50527 (LSS)
                                 .
            Plaintiff,           .
                                 .
    v.                           .
                                 .
A.A., et al.,                    . Courtroom 2
                                 . 824 Market Street
            Defendants.          . Wilmington, Delaware 19801
                                 .
                                 . Wednesday, November 10, 2021
. . . . . . . . . . . . . . . . . 10:05 a.m.


                     TRANSCRIPT OF ZOOM HEARING
         BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
             CHIEF UNITED STATES BANKRUPTCY JUDGE




Electronically
Recorded By:              Brandon J. McCarthy, ECRO

Transcription Service:    Reliable
                          1007 N. Orange Street
                          Wilmington, Delaware 19801
                          Telephone: (302) 654-8080
                          E-Mail: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording:
transcript produced by transcription service.
```

```
 1  APPEARANCES:

 2  For the Debtors:          Derek Abbott, Esquire
                              MORRIS, NICHOLS, ARSHT & TUNNELL LLP
 3                            1201 North Market Street
                              16th Floor
 4                            Wilmington, Delaware 19899

 5                            - and -

 6                            Glenn M. Kurtz, Esquire
                              Jessica C. Lauria, Esquire
 7                            WHITE & CASE LLP
                              1221 Avenue of the Americas
 8                            New York, New York 10020

 9                            Matthew E. Linder, Esquire
                              111 South Wacker Drive
10                            Suite 5100
                              Chicago, Illinois 60606
11
                              -and-
12
                              Adrian C. Azer, Esquire
13                            HAYNES AND BOONE, LLP
                              800 17th Street, NW
14                            Suite 500
                              Washington, DC 20006
15
    For the Coalition of
16  Abused Scouts for
    Justice:                  David J. Molton, Esquire
17                            D. Cameron Moxley, Esquire
                              BROWN RUDNICK, LLP
18                            Seven Times Square
                              New York, New York 10036
19

20  For Hartford Accident
    and Indemnity Company:    Philip D. Anker, Esquire
21                            WILMER CUTLER PICKERING HALE
                                and DORR, LLP
22                            7 World Trade Center
                              250 Greenwich Street
23                            New York, New York 10007

24

25
```

```
 1   APPEARANCES (CONTINUED):

 2   For Century Indemnity
     Company:                    Tancred Schiavoni, Esquire
 3                               O'MELVENY & MYERS, LLP
                                 Times Square Tower
 4                               7 Times Square
                                 New York, New York 10036
 5

 6   For American Zurich
     Insurance Company:          Mark D. Plevin, Esquire
 7                               CROWELL & MORING, LLP
                                 Three Embarcadero Center
 8                               26th Floor
                                 San Francisco, California 94111
 9

10   For the Future
     Claimants'
11   Representative:             Edwin J. Harron, Esquire
                                 YOUNG CONAWAY STARGATT & TAYLOR, LLP
12                               The Brandywine Building
                                 1000 West Street
13                               17th Floor
                                 Wilmington, Delaware 19899
14
                                 -and-
15
                                 Emily P. Grim, Esquire
16                               GILBERT, LLP
                                 1100 New York Avenue
17                               Suite 700
                                 Washington, DC 20005
18

19   For the Tort
     Claimants' Committee:       James I. Stang, Esquire
20                               PACHULSKI STANG ZIEHL & JONES, LLP
                                 10100 Santa Monica Boulevard
21                               11th Floor
                                 Los Angeles, California 90067
22
     For Marc J. Bern &
23   Partners, LLC:              William D. Sullivan, Esquire
                                 SULLIVAN HAZELTINE ALLINSON, LLC
24                               919 North Market Street
                                 Suite 420
25                               Wilmington, Delaware 19801
```

```
 1  APPEARANCES (CONTINUED):

 2  For Eisenberg,
    Rothweiler, Winkler,
 3  Eisenberg & Jeck, P.C.:   Daniel K. Hogan, Esquire
                              HOGAN MCDANIEL
 4                            1311 Delaware Avenue
                              Wilmington, Delaware 19806
 5

 6  For National Surety
    Corporation:              Harris B. Winsberg, Esquire
 7                            TROUTMAN SANDERS, LLP
                              600 Peachtree Street, NE
 8                            Suite 3000
                              Atlanta, Georgia 30308
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

5

```
                            INDEX

MOTIONS:                                                      PAGE

Agenda
Item 3:   Motion of Marc J. Bern & Partners LLC to Quash        94
          Subpoena to Produce Documents Issued to KLS
          Legal Solutions LLC
          (D.I. 6380, filed 9/27/21)

          Court's Ruling:                                       96

Agenda
Item 4:   The Allianz Insurers' Motion for Relief from          57
          the Automatic Stay
          (D.I. 6623, filed 10/14/21)

          Court's Ruling:                                       85

Agenda
Item 5:   Debtors' Motion for Entry of an Order Modifying       85
          the Automatic Stay on a Limited Basis Solely to
          the Extent Necessary to Facilitate Local Council
          Settlement Contributions to the Settlement Trust
          Under the Plan
          (D.I. 6749, filed 10/20/21)

          Court's Ruling:                                       92

Agenda
Item 6:   Letter to the Honorable Chief Judge Laurie            96
          Selber Silverstein Seeking an Order Compelling
          Verus LLC to Comply with a Subpoena
          (D.I. 6813, filed 10/27/21)

Agenda
Item 7:   [SEALED] Letter to the Honorable Chief Judge          93
          Laurie Selber Silverstein from Adrian Azer and
          Derek C. Abbott to Respectfully Request the
          Court Compel Certain of the Debtors' Insurers
          to Produce Documents (D.I. 6953, filed 11/03/21)
```

EXHIBITS

| EXHIBIT NO.: | PAGE |
| --- | --- |
| 1) Declaration of Todd C. Jacobs | 58 |
| 2) Declaration of Katie Nownes-Whitaker | 92 |
| Transcriptionist's Certificate | 98 |

1   and we intend to answer the discovery.  Ms. Lauria, in one of
2   her letters, set a deadline for answering, at the time,
3   unspecified discovery, but it consists of interrogatories and
4   requests for production of documents. And because this deals
5   with, at least some of it deals with a fairly circumscribed
6   period of time, essentially this past weekend, we have every
7   intention of responding as quickly as possible.  And I mean
8   as quickly as possible.
9           So we will be open about what happened and our
10  explanation, if it's not satisfactory in the form of a
11  letter, will be answered in interrogatories and, frankly,
12  ongoing communications with the debtor.
13          As the parties have noted, this -- we have an
14  unprecedented solicitation campaign going on between the tort
15  claimants committee and those who oppose the plan, and the
16  coalition, and those who support the plan.  This backdrop
17  includes, in my experience, fairly sophisticated websites, we
18  have one, the coalition has one; weekly town hall meetings
19  previously to the last maybe month we were doing them
20  monthly.  Those town hall meetings were announced in using
21  our list serve.  The coalition has now weekly town hall
22  meetings, at least I believe they are weekly.  They are
23  certainly periodic. And it has even gotten to the point of
24  having, in effect, dueling YouTube videos.
25             This motion concerns one email that was written by

1  Mr. Kosnoff.  We had no participation in the writing of it.
2  It was signed by Mr. Kosnoff, though it's probably the
3  digital type signature, but we did transmit it.  It was
4  transmitted to a subset of the constituency.  It was sent to
5  a client list that Mr. Kosnoff had provided to us.  He
6  provided it to us some time ago, I think it was just after --
7  I'm not sure of the exact timing, but we had used it to send
8  out announcements of our town halls.  Then it was also sent
9  to, what I refer to as, the TCC list.
10          By the way, Mr. Kosnoff gave us written authority
11 to use the, what I will call, Kosnoff list which consists of
12 what he represented to be his clients where he was co-counsel
13 with other parties, but we have expressed written authority
14 from him to use it.
15          As to what I call the TCC list, it consists of,
16 obviously, coalition lawyers, because Mr. Molton said that he
17 received it, and has always had them on it for some
18 substantial period of time parties who are unrepresented
19 which we gartered from the proof of claim forms.  And also
20 individuals who over the last almost two years have contacted
21 us saying they want to be kept apprised of what was going on
22 in the case.  These are generalities, Your Honor.  I don't
23 know if we're going to get into discovery that explains each
24 and every person on what I call the TCC list, but those are
25 generally how the two lists fall out.

1             As Ms. Lauria or Mr. Molton acknowledged, the
2  debtors' motion raises significant first amendment issues
3  which you have heard about in the prior context of the
4  debtor's other first amendment motion 1102, 1103, and Century
5  Glove.
6             The motion, again, I have been told about it, I
7  haven't had a chance to read it myself, attempts to associate
8  the TCC with certain of Mr. Kosnoff's statements and actions.
9  We did not turn over the platform to Mr. Kosnoff.  He does
10 not have access to it, he doesn't have control of it.  This
11 was something that he submitted to us that we then
12 transmitted.
13            The -- Mr. Kosnoff's statements in this case,
14 which often appear through this twitter account, are things
15 that we simply do not ascribe to.  We don't ascribe to the
16 propriety of making comments about people's physical
17 appearance.  We don't ascribe to posting pictures of court
18 hearings.  In fact, until Ms. Lauria just said it, I wasn't
19 aware that his twitter account contained it.  I am not a
20 registered follower of Mr. Kosnoff's.  I do look at it
21 occasionally. I have not seen it.
22            There are photos of individuals, attorneys in this
23 case, that were taken in social settings.  Those photos were
24 taken from someone's Facebook posting.  I don't ascribe to
25 his comments about this court's performance of the case.  And

1   he has certainly made comments about me that I don't ascribe
2   to.  But there is one thing that we share in common with Mr.
3   Kosnoff it is our belief that this plan should not be
4   confirmed because it is not in the interest of survivors.
5               There are certain things that the coalition is
6   doing that we apply especially in their efforts to try to
7   extract more concessions from the debtor regarding its
8   protection.  Do we think those concessions go far enough, we
9   don't.  We, in fact, have over the last few days sent an
10  invitation to Mr. Molton that the nine members of the TCC and
11  the members of the coalition's advisory committee consisting
12  of survivors meet to discuss non-monetary issues, not about
13  whether the Hartford settlement is good enough or not about
14  youth protection.  I hope that that offer is taken up.
15              So we want to resolve this.  Survivors deserve
16  that.  We -- there are certain portions of the motion that we
17  have already said we will recommend to our client -- I'm
18  sorry, the order that we said we would recommend to our
19  client, but what we cannot do is surrender our obligations
20  under 1102 and 1103 to -- these are duties that we have.
21  What we cannot do is, essentially, have a prior restraint on
22  what we say to our constituency.
23              So I am sorry that this hearing is taking time
24  away from the other issues.  It is something we did. I have
25  to take responsibility for what we did and what that

1 responsibility entails we will eventually see.  I wanted you
2 to hear our explanation of, at least, some of the facts
3 regarding who it went out to and our attitude towards the
4 things that are in Mr. Kosnoff's twitter that it was not
5 something we ascribe to.
6           So with that, Your Honor, I don't -- unless you
7 have questions of me, which I am more than happy to answer,
8 we consent to the shortened time, we will do everything in
9 our power to answer the discovery quickly and we will
10 continue our conversations with the debtor, and the
11 coalition, and the FCR to try to reach a resolution of this.
12           I should say one other thing, Judge, just so you
13 appreciate what happened.  My first understanding of -- my
14 first awareness that there was a response to what we had sent
15 out was from Mr. Molton and he called me, I was not in a
16 position to take the phone call, but when I saw the other
17 communications, and we did speak once, I thought it was about
18 his objection to the communication going out, what I call,
19 the Kosnoff list which are the AIS claims which we believe,
20 at least in terms of the communication, a communication with
21 them we were entitled to make because Mr. Kosnoff had given
22 us his consent.
23           I was not aware that it had gone out to, what I
24 call, the TCC list.  That was not our instruction when we
25 communicated with staff.  As soon as I was able to determine

1  that it had gone out to this other list, and I learned that
2  from an attorney who called me and said, hey, my clients got
3  this communication, what is going on, I promptly communicated
4  with Mr. Lucas, and he with our staff, to issue an email to
5  that TCC list saying it was sent to them by mistake, which it
6  was, it was not pursuant to a direction from an attorney in
7  my office, and that it should be disregarded.
8         It was a short email, it did not elaborate beyond
9  that.  So, again, within the context of communicating with
10 the people on the TCC list we attempted to mitigate the
11 effect of the communication.
12        So, Your Honor, that is what I wanted to say to
13 you today.  And as I said, I am prepared to answer any
14 question you have regarding this to the best of my knowledge.
15        THE COURT:  Thank you.  I am not asking any
16 questions today. I have not had a chance to review in detail
17 what was filed. I certainly suspect I will have questions.
18        Mr. Hogan.
19        MR. HOGAN:  Good morning, Your Honor.  Daniel
20 Hogan of Hogan McDaniel on behalf of Eisenberg, Rothweiler,
21 Winkler, Eisenberg & Jeck.
22        Your Honor, I will be brief.  I just wanted the
23 court to understand that my clients, Eisenberg, Rothweiler,
24 is the firm that has been implicated by this defamatory email
25 that was sent out by the TCC.  The vote -- the AIS votes

1 <u>CERTIFICATION</u>

2     I certify that the foregoing is a correct
3 transcript from the electronic sound recording of the
4 proceedings in the above-entitled matter to the best of my
5 knowledge and ability.

9 <u>/s/ William J. Garling</u>                   <u>November 10, 2021</u>
10 William J. Garling, CET**D-543
11 Certified Court Transcriptionist
12 For Reliable