**HOGAN♦McDANIEL**
*ATTORNEYS AT LAW*

1311 Delaware Avenue
Wilmington, Delaware 19806

Daniel K. Hogan, Esquire
Telephone  (302) 656-7540
Facsimile   (302) 656-7599

Email: dkhogan@dkhogan.com

November 29, 2021

**VIA CM/ECF**
Chief Judge Laurie Selber Silverstein
United States Bankruptcy Court, District of Delaware
824 North Market Street, 6th Floor
Wilmington, DE 19801

      RE:   *In re Boy Scouts of America*, No. 20-10343
              **Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C.**
              **Motion for Protective Order**

Dear Judge Silverstein:

      I write on behalf of non-party, Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. ("Eisenberg Rothweiler"), and pursuant to Fed. R. Civ. P. 26(c) and 37(a)(5) and Rule 7026-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, I submit this motion for a protective order regarding discovery materials which were produced by Timothy Kosnoff, ("Kosnoff"), through his counsel, in response to: (1) Century Indemnity Company's Motion to Compel [Dkt. No. 7149]; and, (2) Century Indemnity Company's Second Amended Notice of Deposition of Kosnoff [Dkt. 7314]. The documents produced contain communications between Abused in Scouting ("AIS") clients and Kosnoff Law that implicate the attorney-client privilege and the common interest privilege as well as work product doctrine protections which inure to Eisenberg Rothweiler.

**PRELIMINARY STATEMENT**

      Since the Debtors[1] filed for bankruptcy, Century Indemnity Company has attacked the professionals involved whenever possible, including the Debtors' counsel and the law firms that represent the vast majority of survivors. These attacks animate a specious narrative that thousands of claims are fraudulent and include unsubstantiated allegations of fraud and misconduct. Like a virus, this narrative has spread and now threatens to further victimize the sexual abuse survivors. The communications of AIS clients and Kosnoff Law implicate the rights of both the AIS clients and Eisenberg Rothweiler. Simply put, Kosnoff's production of privileged documents containing communications with clients is yet another unfiltered attack on the Plan and the voting process.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

1

Now, despite admonitions to sequester the production, other parties are now seeking to use and rely upon these materials, thereby necessitating this motion.

## **BACKGROUND**

AIS is comprised of three law firms, including Eisenberg Rothweiler, AVA Law and Kosnoff Law. As the Court is well aware, Century has pursued discovery from the law firms of AIS in a continuing effort to support its narrative.

On October 4, 2021, Century Indemnity Company ("Century") served Kosnoff with a subpoena to produce documents, information, or objects or to permit inspection of premises in a bankruptcy case (or adversary proceeding by October 18, 2021 (the "Subpoena"). *See* Hogan Declaration Exhibit 1. On November 10, 2021, Century filed a Motion to Compel Kosnoff to appear for a deposition and produce documents in compliance with Century's Subpoena (the "Motion to Compel"). *See* Hogan Declaration Exhibit 2. On November 13, 2021, Century filed a notice of oral deposition of Kosnoff scheduled to take place remotely on November 16, 2021 [Dkt No. 7199] (the "Deposition"). Subsequently, the Deposition was rescheduled for November 19, 2021 [Dkt. No. 7211] and then rescheduled again for November 22, 2021 [Dkt. No. 7314]. See Hogan Declaration Exhibit 3. On November 20, 2021, in response to the Motion to Compel and the Deposition, Kosnoff produced documents that contain communications between AIS clients and Kosnoff Law that implicate the attorney-client privilege as well as the common interest privilege and the work product doctrine protections of Eisenberg Rothweiler (the "Discovery Responses").

In advance of the Deposition, on November 22, 2021, I emailed each of the recipients of the Discovery Responses and requested that they refrain from reviewing the Discovery Responses and sequester the Discovery Responses pending resolution. The same day, prior to the Deposition, I e-filed correspondence with the Court, advising it of my aforementioned request to the recipients to sequester the Discovery Responses [Dkt No. 7395]. *See* Hogan Declaration Exhibit 4. Similarly, at the Deposition, I repeatedly reiterated the privileges. Pursuant to Rule 7026-1(d), the undersigned avers that reasonable efforts have been made to reach a resolution, but no resolution has been reached.

Eisenberg Rothweiler respectfully requests that the Court grant this Motion and find that the Discovery Responses produced by Kosnoff are protected by the attorney-client privilege, common interest privilege and/or work product doctrine.

Since the Discovery Responses were produced, they have been cited in redacted format or referenced in the following court filings:

1. *Emergency Motion of the Official Committee of Tort Claimants' for Entry of an Order Pursuant to Sections 105, 1103, 1125, and 1126 of the Bankruptcy Code Appointing a Plan Voting Ombudsperson and Granting Related Relief* filed on November 24, 2021 [Dkt. No. 7447];
2. *Joinder of the Zalkin Law Firm, P.C. and PFAU Cochran Vertetis Amala PLLC to the Emergency Motion of the Official Committee of Tort Claimants' for Entry of an*

   *Order Pursuant to Sections 105, 1103, 1125, and 1126 of the Bankruptcy Code Appointing a Plan Voting Ombudsperson and Granting Related Relief* filed on November 24, 2021, (the "Ombudsperson Motion") [Dkt. No. 7459]; and,

3. *Kosnoff Law, PLLC's Response in Support of Emergency Motion to Appoint a Plan Voting Ombudsperson* filed on November 24, 2021 [Dkt. No. 7461].

  The materials in the Discovery Responses are protected by the attorney-client privilege, the work product doctrine and the common interest exception. Nevertheless, and despite my request to sequester the Discovery Responses, the Tort Claimants' Committee ("TCC") seeks to leverage the Discovery Responses as it relies upon them repeatedly in its Ombudsperson Motion. Eisenberg Rothweiler jointly represents claimants with the AVA Law and Kosnoff Law. The Ombudsperson Motion is predicated, in part, on email communications which Kosnoff allegedly received from AIS clients. Kosnoff asked some of these persons if he could share their emails with the Court and they consented by reply email. Kosnoff now claims that they have waived their attorney client privilege. There are a number of flaws with his analysis:

  a. At his Deposition, Mr. Kosnoff testified that his sole basis for claiming waiver was the brief email exchanges he had with these people. These exchanges could by no means be characterized as forming a basis for informed consent. Mr. Kosnoff never advised these people of the risks of waiver, nor did he suggest other ways to deal with the situation short of waiving the attorney-client privilege. He simply asked them if he could publish their emails to the Court;

  b. Second, if these individuals really were clients, they were not solely Mr. Kosnoff's clients. In addition to attorney-client privilege, Eisenberg Rothweiler has asserted that these materials are protected under the work product and common interest doctrines. Mr. Kosnoff's theory of waiver does nothing to address these assertions.

## ARGUMENT

### A. Attorney-client Privilege Is an Important Policy Needed To Promote Candor and Settlements

  The materials at issue are privileged. Additionally, the invocation of privilege does not establish a waiver or otherwise allow for the extreme sanction of a preclusion order**.** The attorney-client privilege protects communications between attorneys and clients from compelled disclosure. It applies to any communication that satisfies the following elements.

(1) it must be a communication;
(2) made between privileged persons;
(3) in confidence; and,
(4) for the purpose of obtaining or providing legal assistance for the client.

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 68 (2000). "Privileged persons" include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation. *Id.* § 70.

3

The attorney-client privilege is the oldest of the common-law privileges. *Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 960 (3d Cir.1984). Like all privileges, it is an exception to the common-law maxim that the public has a right to "`every man's evidence.'" *United States v. Bryan*, 339 U.S. 323, 331, 70 S. Ct. 724, 94 L. Ed. 884 (1950) (quoting 8 J. WIGMORE, EVIDENCE § 2192 (3d ed.1940)). Though initially confined to communications made in anticipation of litigation, American courts rejected that limitation at the outset. PAUL R. RICE, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 1:12 (2d ed.1999) (hereinafter "RICE") (citing, e.g., *Parker v. Carter*, 18 Va. 273, 4 Munf. 273, 1814 WL 667, at *9 (1814) ("The court is also of [the] opinion[ ] that [the privilege] is not confined to facts disclosed, in relation to suits actually depending at the time, but extends to all cases in which a client applies . . . to his counsel or attorney . . . for his aid in the line of his profession.")). This is because so confining the privilege would discourage clients from seeking the advice of counsel before problems arise. *Parker*, 1814 WL 667, at *9.

As the Supreme Court has noted, the purpose of the attorney-client privilege

> is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

*Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981); *accord The Queen v. McClure,* [2001] 1 S.C. 445, at ¶¶ 32-33 (Can.2001); *Deutsch v. Cogan,* 580 A.2d at 104. Because the privilege carries through policy purposes encouraging attorney-client communication to enhance compliance with the law and facilitating the administration of justice, the Supreme Court has not applied it mechanically. *Upjohn,* 449 U.S. at 392, 101 S. Ct. 677. It is essential that parties be able to determine in advance with a high degree of certainty whether communications will be protected by the privilege. *Id.* at 393, 101 S. Ct. 677; *see also Deutsch,* 580 A.2d at 106.

In short, the attorney-client privilege is designed to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client. The seminal decision in the Third Circuit, *In re Teleglobe Commc'ns Corp.*, 493 F. 3d 345 (3d Cir. 2007), provides the Court with guidance. The Third Circuit first discussed the importance of the attorney-client privilege and concluded: "The lesson for us is that it is important not to confuse these overarching policy goals with the means of achieving them. Communication between counsel and client is not, in and of itself, the purpose of the privilege; rather, it only protects the free flow of information because it promotes compliance with law and aids administration of the judicial system. Cf. *United States v. Zolin*, 491 U.S. 554, 563, 109 S. Ct. 2619, 105 L. Ed. 2d 469 (1989) (explaining that attorney-client communication facilitating fraud is not privileged because that sort of communication impedes the administration of justice). *Id* at 360-361.

**B. Common Interest Privilege Is an Important Policy Needed To Promote Substantially Similar Legal Interests**

The common interest privilege is communication in which "(1) the communication was made by separate parties in the course of a matter of common interest; (2) the communication was designed to further that effort; and (3) the privilege has not otherwise been waived." *In re Cherokee Simeon Venture I, LLC*, 2012 WL 12940975, at *2 (Bankr. D. Del. May 31, 2012). The common interest privilege can apply only if the parties share a "substantially similar legal interest." *In re Teleglobe Commc'ns Corp.*, at 365.

Despite all of the vitriol spewed by Kosnoff on his Twitter feed, Eisenberg Rothweiler and Kosnoff, together with AVA Law, share common clients, and therefor a common interest in advancing the claims of the AIS clients. Finally, even if the persons who wrote the emails "waiving the attorney-client privilege" really are clients and even if their consents are given effect, they were limited in scope and Mr. Kosnoff has violated that scope. He says that these people gave him consent to publish the emails to the Court, and nothing more.

## CONCLUSION

Eisenberg Rothweiler requests that the Court enter an Order authorizing the AIS, and the AIS law firms, to withhold, or redact where appropriate, and claw back, on the basis of privilege, the following categories of documents, and not to testify about those matters:

(1) meeting notes of, or presentations to, the clients of AIS, where those meeting notes or presentations reveal attorney-client communications, attorney work product, or communications made or information provided in any of the attorney-client sessions;

(2) all communications between AIS clients and the AIS law firms regarding the terms of attorney-client relationship; and

(3) correspondences exchanged between the AIS clients and the AIS law firms (collectively, the "Privileged Documents");

Respectfully submitted,

*/s/ Daniel K. Hogan*

Daniel K. Hogan, Esq. (#2814)

cc:   All counsel of record (via CM/ECF)