590 Madison Avenue, 20th Floor, New York, New York 10022 ▪ p212 223-4000 ▪ f212 223-4134



Kelly T. Currie
(212) 895-4257
KCurrie@crowell.com

November 29, 2021

**BY CM/ECF**

Hon. Laurie Selber Silverstein
Chief Judge, U.S. Bankruptcy Court, District of Delaware
824 North Market Street, 6th Floor
Wilmington, Delaware 19801

Re:   *In re Boy Scouts of America, et al.*, Case No. 20-10343 (LSS): Zurich Insurers' Response to Motion to Quash Subpoenas Served on Slater Slater Schulman LLP and Eisenberg Rothweiler Winkler Eisenberg & Jeck, P.C.

Dear Judge Silverstein:

The Zurich Insurers hereby respond to the motions to quash filed by (i) Slater Slater Schulman LLP ("Slater") and (ii) Eisenberg Rothweiler Winkler Eisenberg & Jeck, P.C. ("ER"). Slater's motion seeks to quash the deposition subpoenas issued by the Zurich Insurers to Slater attorneys Michael S. Werner and Jonathan E. Schulman (Dkt. No. 7465) and ER seeks to quash the deposition subpoenas issued by the Zurich Insurers to Eisenberg attorneys Stewart Eisenberg, Joshua B. Schwartz, and Rita Assetto-Sherry (Dkt. No. 7466). The Zurich Insurers respectfully request that these motions be heard at the hearing scheduled on December 2, 2021.

## INTRODUCTION

The integrity of the aggressive nationwide claims solicitation, aggregation, and submission process that Slater and ER attorneys engaged in (as well as others) is a central question before this Court. The Zurich Insurers have already asked these law firms to produce documents related to this campaign, and are now seeking to ask the lawyers, who submitted thousands of these claims, questions about the fidelity of their claims due diligence process.

Both ER and Slater take offense that the Zurich Insurers' deposition subpoenas were sent before the Court had ruled on their objections to Zurich Insurers' document requests. But Zurich Insurers are merely complying with the Court's scheduling order, which set December 1 as the deposition deadline. The Zurich Insurers are willing to defer the ER and Slater attorneys' depositions to a later date, after December 1, provided the depositions can move forward once the Court issues its pending ruling.

It is regrettable that both ER and Slater chose not to meet and confer with Zurich Insurers about these scheduling issues, and instead rushed to Court to quash the deposition subpoenas.[1] As both ER and Slater concede, the Court will soon delineate the boundaries of discovery that they must respond to, which will, no doubt, impact the questions that they must answer in deposition.

This unexplained rush to file spotlights a larger point. As with their prior blanket objections to Zurich Insurers' document requests, and as with the Coalition's recent claim that it is not an "entity" subject to a Rule 30(b)(6) deposition, it is now clear that ER, Slater, and other firms representing claimants in this case do not wish the Court to learn more about how it came to be that thousands of proofs of claim were submitted by their attorneys hours before the applicable bar date, in what appears to be a coordinated effort to drown the voting pool with potentially unsubstantiated claims. Rather than obfuscate and delay, these attorneys should welcome the opportunity to dispel any concerns that the Plan was not proposed in good faith and that its contours were not skewed by a barrage of unvetted claims. The Zurich Insurers ask the Court to allow these depositions to move forward for this purpose.

## ARGUMENT

**I. The deposition testimony will clarify whether the Plan has been proposed in good faith and is therefore relevant to confirmation**

ER and Slater both argue that the information Zurich Insurers seek to discover through the depositions of their lawyers is not relevant to plan confirmation. Oddly, neither firm mentions the requirement that the Plan has been proposed in good faith as Section 1129(a)(3) of the Bankruptcy Code commands. Certainly, neither firm ventures to argue that a solicitation, aggregation, and submission process that resulted in ER filing more than 18,000 POCs (on its own behalf and through AIS) and Slater filing more than 15,000 POCs, does not have, at a minimum, the potential to impact the good faith of the proposed plan.

Instead, both ER and Slater claim that their aggressive solicitation and submission campaign is not an issue because the "clients" that that campaign yielded will make their own decisions about whether to vote for or against the Plan.[2] But mere voting is in no way an indication that those claims have gone through an adequate vetting process. That is especially the case given that the current Plan contemplates that claimants can elect to receive an Expedited Distribution of $3,500, just for filing a POC. If these firms collect a contingency fee of about 35%, then they would each earn tens of millions of dollars even if every single one of their supposed clients elected this $3,500 option. Therefore, under the Plan, there is a clear incentive for attorneys to sign up as many "expedited distribution" claimants as possible (and collect fees on those payments), and those claimants, in turn, have a clear incentive to approve the Plan. Evidence that ER and Slater attorneys did not seek to substantiate their clients' claims, instead filing as many claims as possible before the bar date, will be a clear indication that the Plan that incentivizes such rapid filings was not proposed in good faith, and that

---

[1] In accepting service of the subpoenas on November 24, counsel for both ER and Slater stated they were willing to meet and confer. But instead of attempting to meet and confer, both counsel choose to file the motions to quash on November 26. *See* Declaration of Danielle Giffuni In Support of Zurich Insurers' Response to Motion to Quash Subpoenas Served on Slater Slater Schulman LLP and Eisenberg Rothweiler Winkler Eisenberg & Jeck, P.C., dated November 29, 2021, Exhibits A, B.

[2] *See* Dkt. No. 7465 at 3; Dkt. No. 7466 at 2.

November 29, 2021
Page 3

these firms used their enormous blocks of claims to push for no-questions-asked payouts. The Zurich Insurers should be permitted to explore these solicitation and submission practices.

What is more, contrary to ER's and Slater's claims, these "expedited distribution" claimants will not be "addressed" post-confirmation (whatever the term "addressed" means). Claims filed by these claimants will never be scrutinized, not even by the Settlement Trustee.[3]

Mr. Eisenberg and other lawyers at ER signed thousands of POCs despite this Court's warning that it was "ill-advised" for lawyers to sign POCs and that the Court would be "concern[ed]" if "a thousand claims [are] signed by a particular lawyer."[4] Mr. Eisenberg signed 963 POCs, 959 within two weeks of the bar date.[5] Mr. Eisenberg executed approximately 190 POCs in a single day.[6] Mr. Schwartz signed 1,438 POCs, and 314 in a single day (November 12, 2020).[7] And, as discussed in Mr. Kosnoff's recent deposition, Ms. Assetto-Sherry oversaw a team of non-attorney professionals who were working on the claims that were submitted by ER.[8]

As for Slater, Messrs. Schulman and Werner signed 720 POCs within two weeks of the bar date.[9] Mr. Schulman signed 259 POCs on November 12, 2020.[10] The POCs purportedly signed by Mr. Schulman follow the same pattern—the signature pages are photocopies, and all or nearly all have a photocopy of the exact same signature page appended to them.[11] Mr. Werner signed 461 POCs within two weeks of the bar date, including 224 POCs in a single day (November 10, 2020).[12]

These facts cast doubt on whether Messrs. Eisenberg, Schwartz, Schulman, Werner and other ER and Slater lawyers vetted the claims, let alone complied with (i) the oath affirmed by signing the POCs or (ii) obligations under Rule 9011(b), which states that by signing "a petition, pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the allegations and other factual contentions have evidentiary support." The Zurich Insurers' depositions of these witnesses will seek to investigate whether ER and Slater conducted a "reasonable investigation" of the contents of the POCs.

Both ER and Slater cite to *Shelton v. American Motors Corp.*, for the proposition that a party seeking to depose another party's counsel must meet a heightened burden.[13] But *Shelton* notwithstanding, depositions of attorneys are appropriate where those attorneys are deposed in their

---

[3]  See *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, Exhibit A (Trust Distribution Procedures), Art. VI at 8-9 (Dkt. No. 6429).

[4]  Oct. 14, 2020 Hr'g Tr. at 190:13-14; 183:19-22.

[5]  Declaration of Paul Hinton, dated Jan. 22, 2021 ("Hinton Decl.), ¶ 7, tbl. 1 (Dkt. No. 1975-3).

[6]  *Id.*

[7]  *Id.*

[8]  Mr. Kosnoff's deposition transcript has been marked as highly confidential, thus is not attached hereto.

[9]  Hinton Decl., ¶ 7, tbl. 1. (Dkt. No. 1975-3).

[10]  *Id.*

[11]  Declaration of Erich J. Speckin, dated Jan. 22, 2021, ¶ 10 (Dkt. No. 1975-4).

[12]  Hinton Decl., ¶ 7, tbl. 1. (Dkt. No. 1975-3).

[13]  805 F.2d 1323, 1327 (8th Cir. 1987).

capacity as *fact witnesses*.[14] Indeed, even the court in *Shelton* distinguished between attorneys who merely *represent* their clients, and those with a more involved role, like the ER and Slater attorneys here.[15] Last year, this Court echoed this distinction, when stating that an attorney signing a claim "might be[come] . . . a fact witness" and "may be subject to a deposition."[16] Earlier today, this Court reaffirmed this very proposition by permitting discovery from law firms whose attorneys signed proofs of claims in these cases.

The contention that ER and Slater attorneys need not participate in discovery, despite being among the most active participants in this case and acting consistently, regularly, and repeatedly on an organizational basis, completely belies the operation of the discovery rules. The depositions at issue should go forward.

## II. The depositions seek factual information unshielded by the attorney-client privilege or the attorney work-product doctrine

Under Rule 26(b), "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."[17] The depositions of ER and Slater attorneys will seek facts surrounding the claims solicitation and verification process that are directly relevant to voting on the Plan. The Zurich Insurers intend to question ER and Slater attorneys on topics concerning the time spent, methods used, and information gathered by ER and Slater attorneys (if any) while investigating and evaluating their clients' claims.

The Zurich Insurers do not seek communications that implicate the attorney-client privilege. *Facts*, unlike communications, are not protected by the privilege.[18] And, as this Court stated, an

---

[14] *See, e.g.*, *Boston Edison Co. v. U.S.*, 75 Fed. Cl. 557, 562 (2007) (finding *Shelton* rule inapplicable because deposing party sought [attorney's] knowledge of [an] auction process and the surrounding circumstances, not his work in preparing and implementing . . . litigation strategy"); *Sparton Corp. v. United States*, 44 Fed. Cl. 557, 561–62 (1999) (concluding that the *Shelton* test was inapplicable in cases involving the depositions of attorneys who were fact witnesses because "the attorney[s in those cases] had independent knowledge of the facts underlying the litigated cause of action before depositions of opposing counsel were permitted.")

[15] *Shelton*, 805 F.2d at 1330 ("In-house counsel in this case had nothing to do with this lawsuit except to represent her client. She did not design the jeep or have any duties in relation to the design of the jeep; *nor, of course, was she a witness to the accident.*") (emphasis added).

[16] Oct. 15, 2020 H'rg Tr. at 170:2-12.

[17] The Federal Rules of Civil Procedure apply to these Chapter 11 cases. Fed. R. Bankr. P. 7026, 9014.

[18] *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 632 (M.D. Pa. 1997) ("Facts gathered by counsel in the course of investigating a claim or preparing for trial are not privileged and must be divulged if requested in the course of proper discovery."); *In re Grand Jury Proc. (Twist)*, 689 F.2d 1351, 1351 (11th Cir. 1982) (holding that a government subpoena requesting an attorney to produce documents that would reflect date, place and time of meetings with client are not encompassed within the privilege); *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) (work product doctrine does not extend to the underlying facts relevant to the litigation).

attorney who signs a POC may be subject to deposition as to the facts underlying the claim, and in turn waives the attorney-client privilege (and work product protection) with respect to those facts.[19]

In addition, the Third Circuit is clear that work product "should be recognized only when necessary to achieve [its] purposes": to (1) "shelter[] the mental processes of the attorney, providing a privileged area within which" he or she can "analyze and prepare [a] client's case" and (2) protect "the confidential nature of materials prepared by attorneys in anticipation of litigation[.]"[20] None of these goals is at play here. Further, "[w]here . . . the work product in question is of rather *minimal substantive content*, and presents none of the classic dangers [which the work product doctrine seeks to alleviate], the . . . showing of need can be comparatively lower."[21]

Even if ER and Slater's privilege and work-product concerns have some limited merit (they do not), that does not justify blocking, preemptively, the depositions in their entirety. It is black-letter law that blanket claims of privilege are ineffective.[22] If ER and Slater have *specific* privilege objections, the proper thing for them to do is to make them at the deposition, which this Court can then resolve.[23] Courts disfavor preemptively shutting down depositions because of hypothetical privilege concerns and instead address privilege on a question-by-question basis.[24]

Finally, ER and Slater argue that their attorneys should not be asked to testify about their "confidential business practices, including [their] third-party partners and financing sources," because that is confidential commercial information under Rule 45(d)(3)(B)(i). Neither ER nor Slater explain in what manner these "business practices" are confidential commercial information under Rule 45(d), and indeed they are not.[25] But in any event, the confidentiality procedures established by this Court should be enough to protect adequately any sensitive information that may exist.

---

[19] See *In re Rodriguez*, 2013 WL 2450925, at *6 (S.D. Tex. June 5, 2013) (attorney who signed a proof of claim became fact witness with respect to the allegations contained in the proofs and therefore, "[t]he work product and attorney client privileges [were] waived as to the facts alleged in the proof of claim"); *In re Duke Invs., Ltd.*, 454 B.R. 414, 427 (S.D. Tex. 2011) ("There is no question that any attorney is allowed to [sign a proof of claim for its client], but the attorney puts himself at risk by becoming a fact witness.").

[20] *In re Chevron Corp.*, 633 F.3d 153, 165 (3d Cir. 2011); *In re Grand Jury (Impounded)*, 138 F.3d at 981.

[21] *Id.* at 988 (emphasis added).

[22] *See, e.g., United States v. Ruehle*, 583 F.3d 600, 609 (9th Cir. 2009).

[23] See *Alexander v. F.B.I.*, 192 F.R.D. 12, 19 (D.D.C. 2000) (if the deposing party asks questions that could elicit the mental impressions of the attorneys, then the deposed party is "entitled to claim the privilege and come back to this court to make a proper showing of why the information sought is protected").

[24] *See, e.g., Nat'l Life Ins. Co. v. Hartford Acc. & Indem. Co.*, 615 F.2d 595, 598 (3d Cir. 1980) (privilege may only be asserted question-by-question, and blanket privilege may not be asserted before hearing those questions); *Robocast, Inc. v. Microsoft Corp.*, 2013 WL 1498666, at **1–2 (D. Del. 2013) (denying motion to quash deposition subpoena of prosecution counsel, rejecting the counsel's blanket assertion of privilege and instructing that privilege objections could be made on a question-by-question bases at the deposition); *In re Grand Jury Matters*, 751 F.2d 13, 17 (1st Cir. 1984); *In re Cty. of Orange*, 208 B.R. 117, 121–22 (Bankr. S.D.N.Y. 1997).

[25] Courts define "confidential commercial information" as "information, which disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained." *See Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 697 (D. Nev. 1994); *In re Boston*

Crowell & Moring LLP ▪ www.crowell.com

Brussels ▪ Chicago ▪ Doha ▪ Indianapolis ▪ London ▪ Los Angeles ▪ New York ▪ Orange County ▪ San Francisco ▪ Shanghai ▪ Washington, DC

## CONCLUSION

For these reasons, the Court should deny both motions to quash.

Respectfully submitted,

| | |
|---|---|
| By: /s/ *Kelly T. Currie* | By: /s/ *Robert D. Cecil, Jr.* |
| Kelly T. Currie (admitted *pro hac vice*) | Robert D. Cecil, Jr. (No. 5317) |
| CROWELL & MORING LLP | TYBOUT, REDFEARN & PELL |
| 590 Madison Ave., 20th Floor | 501 Carr Road, Suite 300 |
| New York, NY 10022 | Wilmington, Delaware 19809 |
| Phone: (212) 624-2500 | Phone: (302) 658-6901 |
| Email: kcurrie@crowell.com | E-mail: rcecil@trplaw.com |

*Attorneys for American Zurich Insurance Company,*
*American Guarantee and Liability Insurance Company,*
*and Steadfast Insurance Company*

SFACTIVE-906378248.4

---

*Scientific Corp. Pelvic Repair Systems Product Liability Litigation*, No. 2326, 2014 WL 1329944, at *2 (S.D.W. Va. Mar. 31, 2014); *see also In re Alterra Healthcare Corp.*, 353 B.R. 66, 76 (D. Del. 2006) (finding that information within settlement agreements did not constitute confidential commercial information because it "[did] not relate to the Reorganized Debtor's commercial operations nor [did] it unfairly advantage competitors").