## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In Re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, [1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
|  | **Hearing Date: Dec. 14, 2021 at 10:00 a.m. ET** **Objection deadline: Dec. 7, 2021 at 4:00 p.m. ET** |

## MOTION OF WEST VALLEY CENTRAL SCHOOL DISTRICT FOR AUTHORITY TO FILE INDIRECT ABUSE CLAIM AGAINST THE DEBTORS AFTER THE BAR DATE FOR CLAIMS PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE AND <u>BANKRUPTCY RULE 9006</u>

West Valley Central School District (the "<u>School</u>"), by and through its attorneys, Hodgson Russ LLP, and local counsel The Rosner Law Group LLC, as and for this Motion for Authority to File Indirect Abuse Claim Against the above-referenced debtors (the "<u>Debtors</u>") after the Bar Date for Claims Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9006 (the "<u>Motion</u>"), respectfully states as follows:

## <u>PRELIMINARY STATEMENT</u>

1.     The School seeks authority to file a late claim against the Debtors to preserve its Indirect Abuse Claim[2] against the Debtors and participate in distributions from the Settlement Trust following the determination of the amount of its claim.

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, Texas 75038.

[2]     Capitalized terms not defined herein shall have the meanings ascribed to them in the Debtors' *Modified Fifth Amended Chapter 11 Plan of Reorganization* [Dkt. No. 6443].

{00032150. }

2.      Nearly eleven months after this Court fixed November 16, 2020 as the bar date for claims (the "Bar Date"), the School was served with a suit pursuant to the Child Victims Act (CVA) 2019 (the "CVA Suit") naming the Boy Scouts of America ("BSA"), West Valley Central School, and Allegheny Highlands Council, Inc. defendants (collectively, the "Defendants").  The CVA Suit was filed anonymously by John Doe #1 through John Doe #57 (the "Plaintiff") in New York State Supreme Court, County of New York on August 8, 2021 and served on the School on October 1, 2021.  Accordingly the School was not aware that it had a contingent or even potential claim against the Debtors until the Plaintiff served the CVA Suit, nearly one year *after* the Bar Date.

3.      The School is entitled to file a late proof of claim as it was a "known" creditor to the Debtors but the Debtors never provided the School with actual notice of the Bar Date.  Because the School was not provided with actual notice of the Bar Date and was not served with the CVA Suit until many months *after* the Bar Date, the School was not put on notice that it was required to file a proof of claim against the Debtors.

## BACKGROUND

4.      On February 18, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

5.      The Debtors continue to manage their estates as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

6.      The School is a public school organized under New York law with its principal place of business in or around West Valley, NY.  The complaint in the CVA Suit (the "Complaint") alleges that the School was a "Sponsoring Organization" and that an abuser was "under the supervision, control or authority" of the School.  The School disputes these allegations.  A copy of the Complaint is annexed hereto as **Exhibit A**.  See Exhibit A, ¶ 162.

7.      On May 26, 2020, the Court entered an *Order, pursuant to 11 U.S.C. § 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-l(e), 3001- 1, and 3003-1, (I) Establishing Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, (III) Approving Procedures for Providing Notice of Bar Date and Other Important Information to Abuse Survivors, and (IV) Approving Confidentiality Procedures for Abuse Survivors* [Dkt. No. 695] (the "Bar Date Order").[3]  The Bar Date Order, among other things, established November 16, 2020 at 5:00 p.m. (Eastern Time) as the Bar Date for claims other than claims of sexual abuse survivors or governmental claims and approved the form and manner of notice of the General Bar Date (the "Bar Date Notice").

8.      Pursuant to the terms of the Bar Date Order, the Debtors were ordered to mail a proof of claim form and a Bar Date Notice to "all creditors and other known holders of claims against the Debtors as of the date of entry of [the Bar Date] Order, including all entities listed on the Schedules as holding claims against the Debtors, but excluding Sexual Abuse Survivors" at least 150 days prior to the Bar Date.  *See* Bar Date Order ¶ 13(a)(3).

---

[3]      The Bar Date Order was supplemented by further orders dated September 16, 2020 [Dkt. No. 1331], October 20, 2020 [Dkt. No. 1551] and November 30, 2020 [Dkt. No. 1752].  The supplemental orders are not relevant to the issues involving the School and its request for permission to file a late claim.

Notice of the Bar Date:

9.      The Debtors' claims and noticing agent, Omni Agent Solutions (the "Claims Agent") provided a copy of the Bar Date Notice by mail to the parties listed on an Affidavit of Service filed with the Court on August 18, 2020 [Dkt. No. 1112].  The Claims Agent provided a Supplemental Affidavit of Service filed with the Court on November 9, 2020.  *See* Dkt. No. 1641.

10.      The School was not served with a copy of the Bar Date Notice by either the Debtors or the Claims Agent.  A declaration of Dr. Taweepon Farrar executed on November 23, 2021 is annexed hereto as **Exhibit B** (the "Farrar Decl.").  The School did not receive a copy of the Bar Date Notice.  *See* Farrar Decl., ¶ 5.  Moreover, the School is not listed on the Affidavits of Service related to the Bar Date Notice. *See* Dkt. No. 1112 and 1641.

11.      On June 16, 2020, the Claims Agent filed an Affidavit of Service of Publication certifying that a *Notice of Deadlines for Filing Proofs of Claim* was published on June 15, 2020 in *The Wall Street Journal, USA Today*, and *The New York Times*.  *See* Dkt. No. 854.  The School was not served with the Affidavit of Service of Publication.  *Id*.

12.      The Debtors compiled a list of all potential Protected Parties and potential Limited Protected Parties under the Plan.  The Debtors list "West Valley Central School" on the Debtors' Notice of Current and Potential Protected Parties and Limited Protected Parties (the "Potential Protected Parties List").[4]  However, no Local Council is listed in connection with the School. The School was known to the Debtors as a "Chartered Organization." Although the

---

[4]      This list of potential Protected Parties and Limited Protected Parties is available at https://omniagentsolutions.com/bsa-SAballots pg. 4127

School was a known creditor, neither the Debtors nor their Claims Agent provided the School

with actual notice of the Bar Date.  A copy of the relevant portions of the Potential Protected

Parties List is annexed hereto as **Exhibit C**.  Further, the Plan was never intended to be an ersatz

Bar Date Notice.

The CVA Suit

13.    On August 8, 2021, Plaintiff filed the CVA Suit and served it on the

School on October 1, 2021.  The CVA Suit names the "West Valley Central School" and the

Debtors as Defendants, among others.  The CVA Suit arises from alleged childhood "sexual

abuse and/or inappropriate sexual contact by a scout leader and/or youth scout leader/father

and/or boy scout camp personnel which said abuser was allegedly under the supervision, control

and/or authority of Defendant BSA Local Council and Sponsoring Organization including but

not limited to Allegheny Highlands Council and West Valley Central School." *See* Exhibit A,

Par. 162.   The School did not have any advance notice of the CVA Suit until it was served on

the School.

The Proposed Plan

14.    On September 30, 2021, the Debtors filed a Modified Fifth Amended

Chapter 11 Plan of Reorganization [Dkt. No. 6443] (the "Plan").  Pursuant to the Plan, all Abuse

Claims of the Debtors would be channeled to and resolved by the Settlement Trust

("Trust").  The Trust would hold certain assets contributed by the Debtors and the Local

Councils that would be used to address Abuse Claims against the Debtors including Indirect

Abuse Claims such as those held by the School.

15.     The Plan proposes a framework for both pre and post-confirmation settlements with Chartered Organizations.  These settlements contemplate that Chartered Organizations which may have claims against the BSA for contribution, indemnity or both for Abuse Claims related to Scouting may make a financial contribution to the Settlement Trust in exchange for the protection of the Channeling Injunction.  Chartered Organizations include over 40,000 secular and religious entities that support the Scouting mission of the Boy Scouts by, among other things, sponsoring local troops.[5]  The Debtors' Plan Summary acknowledges that "[s]ome or all of the Chartered Organizations may be subject to liability associated with their relationship with the Boy Scouts."  *See* Dkt. No. 6438-1, pg. 245.

16.     While the School does not currently have reliable information about its relationship with BSA or any Local Council in the late 1960s, based on the allegations in the Complaint against the School, the School is alleged have had a relationship with BSA which appears to be the type that would make the School a Chartered Organization which is eligible to become a Protected Party under the Plan.  This Motion ensued to protect and preserve those rights.

---

[5]     Specifically, the Plan defines "Chartered Organizations" as each and every civic, faith-based, educational or business organization, governmental entity or organization, other entity or organization, or group of individual citizens, in each case presently or formerly authorized by the BSA to operate, sponsor or otherwise support one or more Scouting units.

**ARGUMENT**

**A.**    **The School Should Be Permitted To File And Prosecute A Late Proof Of Claim Against The Debtors Related To The CVA Suit, Because, As A Matter Of Law, The School Was Not Provided With Actual Notice Of The Bar Date And To Bar Its Claim Now Would Violate The School's Due Process Rights**

17.    Due process requires that this Court should allow the School to file a late proof of claim.  The Due Process Clause of the Fifth Amendment to the Constitution provides that "[n]o person shall be . . . deprived of life liberty or property without due process of law." U.S. Const. amend. V.  "Certain procedural protections attach when due process is triggered. Generally, legal claims are sufficient to constitute property such that a deprivation would trigger due process scrutiny."  *In re Motors Liquidation Co.*, 829 F.3d 135, 158 (2d Cir. 2016) (citing to *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991); *N.Y. State Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 169–70 (2d Cir. 2001)).

18.    An important component of due process is whether a party was aware of their claims against a debtor at the time bankruptcy proceedings take place.  *See Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1277 (5th Cir. 1994) (holding that plan of reorganization for mobile home manufacturer did not discharge claims against successor company for injury caused by mobile home manufactured pre-petition).  Courts will find that a party did not receive due process in bankruptcy proceedings where a debtor's pre-bankruptcy conduct causes harm to a claimant after the bankruptcy has closed.  *In re Johns-Manville Corp.*, 551 B.R. 104, 114 (S.D.N.Y 2016); *In re Grumman Olson Industries*, 467 B.R. 694, 708-10 (Bankr. S.D.N.Y. 2012) (holding creditor's claim could not be barred for due process reasons because pre-bankruptcy conduct of debtor did not cause any harm until after bankruptcy closed).  The Third Circuit in *In re Grossman's Inc.* notes that "[n]otice is an elementary and fundamental

{00032150. }                                    7

requirement of due process in any proceeding to be accorded finality…" *Jeld-Wen, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 125-26 (3d Cir. 2010)

19.     Here, the School was not aware of any filing deadlines in the Debtors' bankruptcy proceedings.  Although the Debtors were required to serve the Bar Date Notice on all known creditors in order to cutoff claims, the School was not served with the Bar Date Notice. The School was prompted to file a claim against the Debtors only after the CVA Suit was filed nearly a year after the Bar Date only to discover that a Bar Date had been set and passed.  *See* Farrar Decl., ¶ 7.  The School's contingent claim against the Debtors did not first arise until such time as it had knowledge of an indemnity or contribution claim against the Debtors; *i.e.,* the date the CVA Suit was served on the School.  Under New York law, the statute of limitations for such a claim will not even begin to run until such time as the School has a judgment entered against it by the Plaintiff in the CVA Suit.  *See* N.Y. C.P.L.R. § 214-g.  This weighs in favor of a finding that the School should not be barred from asserting a claim against the Debtors, because barring such a claim would violate the School's right to Constitutional due process.

20.     The proper notice to be afforded a claimant depends on whether a claimant is "known or unknown" to the debtor.  *See In re Smidth & Co.*, 413 B.R. 161 (Bankr. D. Del. 2009) (citing, *inter alia, City of New York v. New York, N.H & H.R. Co.,* 344 U.S. 293, 297, 73 S.Ct. 299, 97 L.Ed. 333 (1953); *Chemetron Corp. v. Jones,* 72 F.3d 341, 346 (3d Cir. 1995)). Where a creditor is known to a debtor, constructive notice through publication in national newspapers is not a sufficient substitute for actual notice.  *City of New York v. New York, N.H & H.R. Co.,* 344 U.S. at 296.  If a known claimant is not provided notice of the Bar Date, then lack of due process is implicated.

21.     The Third Circuit has provided guidance as to whether a creditor is known

or unknown in *Chemetron Corp. v. Jones*. *See* 72 F.3d at 346. A known creditor is one whose

identity is either "known or reasonably ascertainable" by the debtor. *Id.* (citing *Tulsa*

*Professional Collection Serv., Inc. v. Pope,* 485 U.S. 478 (1988)). A creditor's identity is

"reasonably ascertainable" if that creditor can be identified through "reasonably diligent efforts."

*In re New Century TRS Holdings, Inc.*, 465 B.R. 38, 46 (Bankr. D. Del. 2012) (citing *Mennonite*

*Bd. of Missions v. Adams,* 462 U.S. 791, 798 n.4 (1983)). "Reasonable diligence does not

require 'impracticable and extended searches . . . in the name of due process.'" *In re New*

*Century TRS Holdings, Inc.*, 465 B.R. at 46 (quoting *Mullane v. Central Hanover Bank & Trust*

*Co.*, 339 U.S. 306, 317 (1950)). "The requisite search instead focuses on the debtor's own books

and records. Efforts beyond a careful examination of these documents are generally not

required." *Mullane*, 339 U.S. at 346-47.

22.     The Debtors' books and records, as demonstrated by the Potential

Protected Parties List which was created by the Debtors and their counsel, demonstrates that the

School was known to the Debtors and, if the Debtors determined that the School was a creditor,

it was the Debtors' burden to ensure the School received actual notice of the Bar Date. The

School cannot be faulted for not filing, nor should it now be barred from filing, a proof of claim

when the Debtors failed to provide the School, a known creditor, actual notice of the Bar Date.

The School lacked sufficient notice of the Bar Date and was therefore deprived of due process.

The School's claim should not be discharged as a result of the Debtors' failure to fulfill its

obligations under the Bar Date Order and Third Circuit precedent dictates that the School is not

bound by the Bar Date Order. *See Ellis v. Westinghouse Electric Co.*, 11 F.4th 221, 237 (3d Cir.

2021) ("any discharge of a late-filed administrative expense claim must comport with due

process, so a claim is only subject to discharge if a creditor received adequate notice of the bankruptcy and had a fair opportunity to press his claim."). Denying the Motion would deprive the School of due process.

23.     Lastly, any prejudice suffered by the Debtors would pale in comparison to the deprivation of due process the School would suffer if not allowed to pursue this claim. Where a creditor's right to due process outweighs the prejudice suffered by the Debtors, courts will not bar the creditor from bringing a late proof of claim. *See in re First Magnus Financial Corp.*, 415 B.R. 416, 423 (Bankr. D. Ariz. 2009) ("[t]he Liquidating Trustee's argument that the late claim will cause judicial inefficiency and prejudice to the estate rings hollow in light of [the claimant's] right to due process and Debtor's duties to provide adequate notice of the bar date to known creditors"). Here, the School faces defending claims that it is responsible for the sexual abuse alleged to have been conducted at BSA meetings by an individual acting as a Scouting leader. In contrast, there is little prejudice to the Debtors who are using the bankruptcy process to off-load their liability to the Settlement Trust. In other words, the School is the party who will be prejudiced if this claim is barred, not the Debtors.

**B.     The School Easily Meets The Requisite Standard For Seeking Allowance To File Its Proof of Claim Notwithstanding The Passage Of The Bar Date.**

24.     Even if the Court determines that the School was not denied due process, the School should nonetheless be permitted to file a late claim on the basis of "excusable neglect"— the standard typically applied in situations where a party seeks to act outside the bar date. *See In re New Century TRS Holdings, Inc.*, 465 B.R. 38, 50 (Bankr. D. Del. 2012) (citing *In re U.S. Airways, Inc.*, 2005 WL 3676186, *6 (Bankr. E.D.Va. Nov. 21, 2005) ("Even when notice satisfies constitutional requirements, a creditor who does not receive actual notice—or

who receives it but for some reason does not timely act upon it—may seek leave to file a late claim based on 'excusable neglect.'").

25.     Indeed, even if the School had constitutionally sufficient notice of its interest in the initial bankruptcy proceedings, Rule 9006(b)(1) of the Federal Rules of Bankruptcy (the "Bankruptcy Rules") provides courts with the discretion to deem claims timely filed if the failure to act was the result of "excusable neglect." *In re Residential Capital*, 2015 WL 2256683 at *9 (Bankr. S.D.N.Y. May 11, 2015) (emphasis added); *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 121 (2d Cir. 2005). Specifically, Rule 9006(b)(1) provides:

> [w]hen an act is required or allowed to be done at or within a specified period . . . by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

FED. R. BANKR. P. 9006(b)(1).

26.     In determining whether the failure to timely file a proof of claim is the result of excusable neglect, courts typically apply a four part test, articulated by the Supreme Court in *Pioneer Inv. Servs Co. v. Brunswick Assocs. L.P.,* 507 U.S. 380, 395 (1993) ("*Pioneer*"). *See also Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 188 F.3d 116, 125 (3d Cir. 1999) ("*O'Brien*"). The four factors set forth by *Pioneer* are: (1) the danger of prejudice to the debtor; (2) the length of delay and impact thereof; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Pioneer*, 507 U.S. at 395.

### A. Prejudice:

27.     When considering the first *Pioneer* factor, prejudice to the debtor, the

Third Circuit in *O'Brien* considered the following considerations to be relevant:

> (i) whether the debtor was surprised or caught unaware by the assertion of
> a claim that it had not anticipated, (ii) whether the payment of the claim
> would force the return of amounts already paid out under the confirmed plan
> or affect the distribution to creditors; (iii) whether payment of the claim
> would jeopardize the success of the debtor's reorganization; (iv) whether
> allowance of the claim would adversely impact the debtor actually or
> legally; and (v) whether allowance of the claim would open the floodgates
> to other future claims.

*In re New Century TRS Holdings, Inc.*, at 51 (citing *Pro–Tec Serv., LLC v. Inacom Corp.* (*In re

Inacom Corp.*), No. 00–2426, 2004 WL 2283599 at *4 (D. Del. Oct. 4, 2004) (citing *In re

O'Brien Envtl. Energy, Inc.,* 188 F.3d at 126–28)).

28.     The Debtors cannot avail themselves of the first consideration.  The

School was listed on the Potential Protected Parties List and was clearly a known party to the

Debtors.  The School was listed because the Debtors have offered Chartered Organizations such

as the School protection from contribution and indemnity claims if Chartered Organizations

contribute to the Settlement Trust.  Treatment of Indirect Abuse Claims of Chartered

Organizations is a key component of the Debtor's Plan so the Debtors should not be surprised or

caught unaware of a claim made by the School, a party that they knew about and identified as a

potential Protected Party.

29.     The second prejudice consideration articulated by the O'Brien court—

whether the payment of the claim would force the return of amounts already paid out under the

confirmed plan or affect the distribution to creditors—also weighs heavily in favor of permitting

the School to file a late claim since there is no confirmed plan in this case and no distributions to creditors have been made yet. In fact, the voting deadline for the Plan is not until December 14, 2021 and the Confirmation Hearing is currently scheduled for January 24, 2022. As such, if the School were permitted to file a proof of claim for a contingent amount at this point in time in the case, there would be no impact on distributions already made to creditors since none have been made.

30. Likewise, the third consideration articulated by the *O'Brien* court—whether payment of the claim would jeopardize the success of the debtor's reorganization—also strong favors a grant of this Motion because the current Plan proposed by the Debtors already establishes a proposal for the treatment of claims of Chartered Organizations holding Indirect Abuse Claims through the Settlement Trust. Therefore, the addition of the School's claim would not prejudice the potential success of the Debtors' reorganization where similar claims against the Debtors have already been contemplated. Allowance of the School's claim would only allow it to "opt-out" of the Plan as a Chartered Organization and preserve its rights to a distribution from the Settlement Trust.

31. As for the "floodgates" consideration, only parties similarly situated to the School—those known chartered organizations which were inexplicably not provided notice of the Bar Date—would be in a position to make similar arguments of excusable neglect. Moreover, granting this Motion would not open the "floodgates" to all late filed claims unless such claims, like the claims of the School, meet the requirements set forth by the Supreme Court under *Pioneer*.

32.     For all of the foregoing reasons, allowing the School to file a late proof of claim would not prejudice the Debtors or the other creditors in the case and therefore, the first *Pioneer* weighs strongly in favor of granting this Motion.

**B. Length of Delay and Potential Impact on Judicial Proceedings:**

33.     The second *Pioneer* factor considers the length of the delay.  The significance of a delay in filing a late claim is to be considered based on the specific facts of the context.  *See O'Brien*, 188 F. 3d at 130.  Here, the length in delay in filing the claim is appropriate in light of the circumstances.  The School was served with the CVA Suit on October 1, 2021 and, therefore, the School did not know of the existence of any sexual abuse claims associated with its alleged relationship with BSA until it received notice of the CVA Suit nearly eleven months after the Bar Date.  After becoming aware of the CVA Suit and its potential claims against the Boy Scouts, the School immediately engaged counsel who investigated the status of the Debtors' bankruptcy cases and brought this Motion.  The delay of less than two months between the service of the CVA Suit on the School and the date of this Motion is reasonable and would hardly be considered a delay especially considering that the Bar Date Order required that the Debtors deliver the Bar Date Notice to known claimants at least 150 days prior to the Bar Date.

34.     Additionally, the length of the delay is not particularly meaningful here because the Plan has not been confirmed, the claims resolution process has yet to begin and no distributions have been made to creditors.  Indeed, courts are more inclined to permit late filed claims prior to the claims resolution process.  *See, e.g., In re Inacom Corp.*, 2004 WL 2283599 at *6 (delay of nine months after plan confirmation was not significant when the debtor was still

litigating disputed claims and distributions to creditors would be based upon the debtor's progress in resolving claims); *In re Garden Ridge Corp.*, 348 B.R. 642, 646 (Bankr. D. Del. 2006) (late claim had minimal impact on judicial proceedings when the Committee was "in the midst of bringing their objections (e.g. late filed, amended, and duplicate) and a distribution was not expected for some time.").

35.     Given that the voting deadline for the Plan is December 14, 2021, the Confirmation Hearing is currently scheduled for January 24, 2022, and the claims resolution process has yet to begin, any delay by the School in pursuing this Motion is not significant and will have little impact on the Bankruptcy Proceedings as they currently stand.  As such, the second *Pioneer* factor also weighs strongly in favor of permitting the School to file its proof of claim after the Bar Date.

### C. Reason for Delay:

36.     The third *Pioneer* factor considers the reason for the delay, including whether it was within the reasonable control of the movant.  Here, any delay by the School was not within its reasonable control.  The School was unaware of the allegations contained in the CVA Suit before it was served in October 2021.  No other sexual abuse lawsuits have been filed against the School.  *See* Farrar Decl., ¶ 8.

### D. Good Faith:

37.     The final *Pioneer* factor considers the good faith of the claimant seeking to file a late claim.  This factor undeniably weighs in favor of the School.  The School is acting in good faith by filing this Motion promptly after receipt of the CVA Suit.  The School is seeking

a fair and just remedy that preserves any potential indemnity or contribution claim it may have against the Debtors.

38.     For all of the reasons stated above, the *Pioneer* factors are satisfied and the School has proven that its failure to timely file a proof of claim was the result of excusable neglect.  Accordingly, the School should be permitted to file and prosecute a late proof of claim pursuant to Rule 9006(b)(1) of the Bankruptcy Rules.

39.     Copies of the proposed forms of proofs of claim against each of the Debtors are annexed hereto as **Exhibit D** and a proposed order granting the Motion is annexed hereto as **Exhibit E**.

## <u>CONCLUSION</u>

The School never received the Bar Date Notice from the Debtors or the Claims Agent and therefore, had no actual notice of the Bar Date.  Additionally, the School was not aware of any claims it may have had against the Debtors until almost one year after the Bar Date when the Plaintiff served the CVA Suit on the School.  Upon its knowledge of such claim, the School promptly filed this Motion.  Therefore, for the reasons stated above and in the accompanying papers, the School respectfully submits that this Court should grant the School's motion for authority to submit a late filed claim in the Debtors' case.

Dated: November 30, 2021
      Wilmington, Delaware

Respectfully Submitted,

**THE ROSNER LAW GROUP LLC**

*/s/ Jason A. Gibson*
Scott J. Leonhardt (DE 4885)
Jason A. Gibson (DE 6091)
824 N. Market Street, Suite 810
Wilmington, DE 19801
Tel: (302) 777-1111
Email: leonhardt@teamrosner.com
      gibson@teamrosner.com

and

HODGSON RUSS LLP
James C. Thoman, Esq.
140 Pearl Street, Suite 100
Buffalo, NY 14202
Telephone: (716) 856-4000
Email: jthoman@hodgsonruss.com

*Counsel for West Valley Central School District*