IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date: Dec. 14, 2021 at 10:00 a.m. ET**<br>**Objection deadline: Dec. 7, 2021 at 4:00 p.m. ET** |

**MOTION OF CATTARAUGUS-LITTLE VALLEY SCHOOL DISTRICT FOR
AUTHORITY TO FILE INDIRECT ABUSE CLAIM AGAINST THE DEBTORS AFTER
THE BAR DATE FOR CLAIMS PURSUANT TO SECTION 105(A) OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULE 9006**

Cattaraugus-Little Valley School District (the "District"), by and through its attorneys, Hodgson Russ LLP, and local counsel The Rosner Law Group LLC, as and for this Motion for Authority to File Indirect Abuse Claim Against the above-referenced debtors (the "Debtors") after the Bar Date for Claims Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9006 (the "Motion"), respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The District seeks authority to file a late claim against the Debtors, Boy Scouts of America ("BSA") and Delaware BSA, LLC ("Delaware BSA," together with BSA, the

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, Texas 75038.

{00032151. }

"Debtors") to preserve its Indirect Abuse Claim[2] against the Debtors and participate in distributions from the Settlement Trust following the determination of the amount of its claim.

2. Nearly ten months after this Court fixed November 16, 2020 as the bar date for claims (the "Bar Date"), the District was served with a suit pursuant to the Child Victims Act (CVA) 2019 (the "CVA Suit") naming the District, BSA, Cattaraugus Elementary School, Allegheny Highlands Council, Inc., and Seneca Council, Inc. as defendants (collectively, the "Defendants"). The CVA Suit was filed anonymously by "D.A." (the "Plaintiff") in New York State Supreme Court, County of Monroe on July 23, 2021 and served on the District on September 8, 2021. Accordingly the District was not aware of the Plaintiff's claims against it and the corresponding claim against the Debtors until nearly one year after the Bar Date.

3. The District is entitled to file a late proof of claim as it was a "known" creditor to the Debtors but the Debtors never provided the District with actual notice of the Bar Date. Because the District was not provided with actual notice of the Bar Date and was not served with the CVA Suit until many months *after* the Bar Date, the District was not put on notice that it was required to file a proof of claim against the Debtors.

**BACKGROUND**

4. On February 18, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Debtors' *Modified Fifth Amended Chapter 11 Plan of Reorganization* [Dkt. No. 6443].

{00032151. }                           2

5. The Debtors continue to manage their estates as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

6. The District is a public school district organized under New York law with its principal place of business in or around Cattaraugus, New York. Cattaraugus Elementary School (n/k/a Cattaraugus Little Valley Elementary) ("CES") is a public school within the District. The CVA Suit (the "Complaint") alleges that CES obtained a charter agreement from BSA to host Scouting meetings, including meetings of the BSA troop to which the Plaintiff allegedly belonged. A copy of the Complaint is annexed hereto as **Exhibit A**. *See* Exhibit A, ¶ 35.

7. On May 26, 2020, the Court entered an *Order, pursuant to 11 U.S.C. § 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-l(e), 3001- 1, and 3003-1, (I) Establishing Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, (III) Approving Procedures for Providing Notice of Bar Date and Other Important Information to Abuse Survivors, and (IV) Approving Confidentiality Procedures for Abuse Survivors* [Dkt. No. 695] (the "Bar Date Order").[3] The Bar Date Order, among other things, established November 16, 2020 at 5:00 p.m. (Eastern Time) as the Bar Date for claims other than claims of sexual abuse survivors or governmental claims and approved the form and manner of notice of the General Bar Date (the "Bar Date Notice").

8. Pursuant to the terms of the Bar Date Order, the Debtors were ordered to mail a proof of claim form and a Bar Date Notice to "all creditors and other known holders of

---

[3] The Bar Date Order was supplemented by further orders dated September 16, 2020 [Dkt. No. 1331], October 20, 2020 [Dkt. No. 1551] and November 30, 2020 [Dkt. No. 1752]. The supplemental orders are not relevant to the issues involving the District and its request for permission to file a late claim.

claims against the Debtors as of the date of entry of [the Bar Date] Order, including all entities listed on the Schedules as holding claims against the Debtors, but excluding Sexual Abuse Survivors" at least 150 days prior to the Bar Date. *See* Bar Date Order ¶ 13(a)(3).

Notice of the Bar Date:

9. The Debtors' claims and noticing agent, Omni Agent Solutions (the "Claims Agent") provided a copy of the Bar Date Notice by mail to the parties listed on an Affidavit of Service filed with the Court on August 18, 2020 [Dkt. No. 1112]. The Claims Agent provided a Supplemental Affidavit of Service filed with the Court on November 9, 2020. *See* Dkt. No. 1641.

10. The District was not provided a copy of the Bar Date Notice by Debtors or the Claims Agent. A copy of the Declaration of Paula Jones executed on November 24, 2021 (the "Jones Decl.") is annexed hereto as **Exhibit B**. *See* Jones Decl., ¶ 6. The District did not receive a copy of the Bar Date Notice. *See* Jones Decl., ¶ 6. Moreover, the District is not listed on the Affidavits of Service related to the Bar Date Notice. *See* Dkt. No. 1112 and 1641.

11. On June 16, 2020, the Claims Agent filed an Affidavit of Service of Publication certifying that a *Notice of Deadlines for Filing Proofs of Claim* was published on June 15, 2020 in *The Wall Street Journal, USA Today*, and *The New York Times*. *See* Dkt. No. 854. The School was not served with the Affidavit of Service of Publication. *Id*.

12. The Debtors compiled a list of all potential Protected Parties and potential Limited Protected Parties under the Plan. The District is listed (albeit incorrectly)[4] on the Debtors' Notice of Current and Potential Protected Parties and Limited Protected Parties (the "Potential Protected Parties List").[5] The Potential Protected Parties List provides "CATTARAUGUS ELEMENTARY SCHOOL" on Schedule 5 as a Charter Organization associated with Allegheny Highlands Council 382 ("Allegheny Council"). The Allegheny Council is a co-Defendant in the CVA Suit. The District was known to the Debtors as a "Chartered Organization" and a known creditor but the Debtors nor their Claims Agent provided the District with actual notice of the Bar Date. A copy of the relevant portions of the Potential Protected Parties List is annexed hereto as **Exhibit C**. Further, the Plan was never intended to be an ersatz Bar Date Notice.

The CVA Suit

13. On July 23, 2021, Plaintiff filed the CVA Suit and served it on the District on September 8, 2021. The CVA Suit names the District and "Cattaraugus Elementary School" as Defendants, among others. The CVA Suit arises from alleged childhood sexual abuse and exploitation that Plaintiff allegedly suffered at the hands of a BSA leader and volunteer, Clarence Gene Farnham ("Farnham"), from approximately 1967 through 1969. Plaintiff alleges that Farnham used his position of trust and authority as a Boy Scout leader and volunteer to sexually abuse Plaintiff. *See* Exhibit A, ¶ 64. Plaintiff further alleges that the District, through its agents

---

[4] Cattaraugus Elementary School is the elementary school within the District. Cattaraugus Elementary School was incorporated into the District several decades ago. *See* Jones Decl., ¶ 5.

[5] This list of potential Protected Parties and Limited Protected Parties is available at https://omniagentsolutions.com/bsa-SAballots.

and employees, managed, maintained, operated and controlled the Boy Scout Troop that Plaintiff belonged to when he was allegedly sexually abused by Farnham. *See* Exhibit A, ¶ 37. The CVA Suit alleges, that the District knew or should have known that Farnham posed a danger to the Plaintiff and failed to take reasonable steps to protect the Plaintiff and other children. *See* Exhibit A, ¶ 60. The District vigorously disputes these allegations. The District did not have any advance notice of the CVA Suit until it was served on the District.

The Proposed Plan

14. On September 30, 2021, the Debtors filed a Modified Fifth Amended Chapter 11 Plan of Reorganization [Dkt. No. 6443] (the "Plan"). Pursuant to the Plan, all Abuse Claims of the Debtors would be channeled to and resolved by the Settlement Trust ("Trust"). The Trust would hold certain assets contributed by the Debtor and the Local Councils that would be used to address Abuse Claims against the Debtors including Indirect Abuse Claims such as those held by the District.

15. The Plan proposes a framework for both pre and post-confirmation settlements with Chartered Organizations. These settlements contemplate that Chartered Organizations which may have claims against the BSA for contribution, indemnity or both for Abuse Claims related to Scouting may make a financial contribution to the Settlement Trust in exchange for the protection of the Channeling Injunction. Chartered Organizations include over 40,000 secular and religious entities that support the Scouting mission of the Boy Scouts by, among other things, sponsoring local troops.[6] The Debtors' Plan Summary acknowledges that

---

[6] Specifically, the Plan defines "Chartered Organizations" as each and every civic, faith-based, educational or business organization, governmental entity or organization, other entity or organization, or group of

{00032151. }                                                6

"[s]ome or all of the Chartered Organizations may be subject to liability associated with their relationship with the Boy Scouts." *See* Dkt. No. 6438-1, pg. 245.

16. While the District does not currently have reliable information about its relationship with BSA or any Local Council in the late 1960s, based on the allegations in the Complaint against the District, the District is alleged have had a relationship with BSA which appears to be the type that would make the District a Chartered Organization which is eligible to become a Protected Party under the Plan. This Motion ensued to protect and preserve those rights.

## ARGUMENT

**A.  The District Should Be Permitted To File And Prosecute A Late Proof Of Claim Against The Debtors Related To The CVA Suit, Because, As A Matter of Law, The District Was Not Provided With Actual Notice Of The Bar Date And to Bar Its Claim Now Would Violate The District's Due Process Rights**

17. Due process requires that this Court should allow the District to file a late proof of claim. The Due Process Clause of the Fifth Amendment to the Constitution provides that "[n]o person shall be . . . deprived of life liberty or property without due process of law." U.S. Const. amend. V. "Certain procedural protections attach when due process is triggered. Generally, legal claims are sufficient to constitute property such that a deprivation would trigger due process scrutiny." *In re Motors Liquidation Co.*, 829 F.3d 135, 158 (2d Cir. 2016) (citing to *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991); *N.Y. State Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 169–70 (2d Cir. 2001)).

---

individual citizens, in each case presently or formerly authorized by the BSA to operate, sponsor or otherwise support one or more Scouting units.

18. An important component of due process is whether a party was aware of their claims against a debtor at the time bankruptcy proceedings take place. *See Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1277 (5th Cir. 1994) (holding that plan of reorganization for mobile home manufacturer did not discharge claims against successor company for injury caused by mobile home manufactured pre-petition). Courts will find that a party did not receive due process in bankruptcy proceedings where a debtor's pre-bankruptcy conduct causes harm to a claimant after the bankruptcy has closed. *In re Johns-Manville Corp.*, 551 B.R. 104, 114 (S.D.N.Y 2016); *In re Grumman Olson Industries*, 467 B.R. 694, 708-10 (Bankr. S.D.N.Y. 2012) (holding creditor's claim could not be barred for due process reasons because pre-bankruptcy conduct of debtor did not cause any harm until after bankruptcy closed). The Third Circuit in *In re Grossman's Inc.* notes that "[n]otice is an elementary and fundamental requirement of due process in any proceeding to be accorded finality…" *Jeld-Wen, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 125-26 (3d Cir. 2010).

19. Here, the District was not aware of any filing deadlines in the Debtors' bankruptcy proceedings. Although the Debtors were required to serve the Bar Date Notice to all known creditors in order to cutoff claims, the District was not served with the Bar Date Notice. The District was prompted to file a claim against the Debtors only after the CVA Suit was filed, nearly a year after the Bar Date, only to discover that a Bar Date had been set and passed. *See* Jones Decl., ¶ 8. The District's contingent claim against the Debtors did not arise until such time as it had knowledge of an indemnity or contribution claim against the Debtors; *i.e.*, the date the CVA Suit was served on the District. Under New York law, the statute of limitations for such a claim will not even begin to run until such time as the District has a judgment entered against it by the Plaintiff in the CVA Suit. *See* N.Y. C.P.L.R. § 214-g. This weighs in favor of a finding

that the District should not be barred from asserting a claim against the Debtors, because barring such a claim would violate the District's right to Constitutional due process.

20. The proper notice to be afforded a claimant depends on whether a claimant is "known or unknown" to the debtor. *See In re Smidth & Co.*, 413 B.R. 161 (Bankr. D. Del. 2009) (citing, *inter alia, City of New York v. New York, N.H & H.R. Co.,* 344 U.S. 293, 297, 73 S.Ct. 299, 97 L.Ed. 333 (1953); *Chemetron Corp. v. Jones,* 72 F.3d 341, 346 (3d Cir. 1995)). Where a creditor is known to a debtor, constructive notice through publication in national newspapers is not a sufficient substitute for actual notice. *City of New York v. New York, N.H & H.R. Co.,* 344 U.S. at 296. If a known claimant is not provided notice of the Bar Date, then lack of due process is implicated.

21. The Third Circuit has provided guidance as to whether a creditor is known or unknown in *Chemetron Corp. v. Jones*. *See* 72 F.3d at 346. A known creditor is one whose identity is either "known or reasonably ascertainable" by the debtor. *Id.* (citing *Tulsa Professional Collection Serv., Inc. v. Pope,* 485 U.S. 478 (1988)). A creditor's identity is "reasonably ascertainable" if that creditor can be identified through "reasonably diligent efforts." *In re New Century TRS Holdings, Inc.*, 465 B.R. 38, 46 (Bankr. D. Del. 2012) (citing *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 798 n.4 (1983)). "Reasonable diligence does not require 'impracticable and extended searches . . . in the name of due process.'" *In re New Century TRS Holdings, Inc.*, 465 B.R. at 46 (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 317 (1950)). "The requisite search instead focuses on the debtor's own books and records. Efforts beyond a careful examination of these documents are generally not required." *Mullane*, 339 U.S. at 346-47.

22.     The Debtors' books and records, as demonstrated by the Potential Protected Parties List which was created by the Debtors and their counsel, demonstrates that the District was known to the Debtors and, if the Debtors determined that the District was a creditor, it was the Debtors' burden to ensure the District received actual notice of the Bar Date. The District cannot be faulted for not filing, nor should it now be barred from filing, a proof of claim when the Debtors failed to provide the District, a known creditor, actual notice of the Bar Date. The District lacked sufficient notice of the Bar Date and was therefore deprived of due process. The District's claim should not be discharged as a result of the Debtors' failure to fulfill its obligations under the Bar Date Order and Third Circuit precedent dictates that the District is not bound by the Bar Date Order. *See Ellis v. Westinghouse Electric Co.*, 11 F.4th 221, 237 (3d Cir. 2021) ("any discharge of a late-filed administrative expense claim must comport with due process, so a claim is only subject to discharge if a creditor received adequate notice of the bankruptcy and had a fair opportunity to press his claim."). Denying the Motion would deprive the District of due process.

23.     Lastly, any prejudice suffered by the Debtors would pale in comparison to the deprivation of due process the District would suffer if not allowed to pursue this claim. Where a creditor's right to due process outweighs the prejudice suffered by a creditor, courts will not bar the creditor from bringing a late proof of claim. *See in re First Magnus Financial Corp.*, 415 B.R. 416, 423 (Bankr. D. Ariz. 2009) ("[t]he Liquidating Trustee's argument that the late claim will cause judicial inefficiency and prejudice to the estate rings hollow in light of [the claimant's] right to due process and Debtor's duties to provide adequate notice of the bar date to known creditors"). Here, the District faces defending claims that it is responsible for the sexual abuse alleged to have been conducted at BSA meetings by an individual acting as a Scouting

...

leader.  In contrast, there is little prejudice to the Debtors who are using the bankruptcy process to off-load their liability to the Settlement Trust.  In other words, the District is the party who will be prejudiced if this claim is barred, not the Debtors.

> **B.      The District Easily Meets The Requisite Standard For Seeking Allowance To File Its Proof Of Claim Notwithstanding The Passage Of The Bar Date.**

24. Even if the Court determines that the District were not denied due process, the District should nonetheless be permitted to file a late claim on the basis of "excusable neglect"— the standard typically applied in situations where a party seeks to act outside the bar date.  *See In re New Century TRS Holdings, Inc.*, 465 B.R. 38, 50 (Bankr. D. Del. 2012) (citing I*n re U.S. Airways, Inc.*, 2005 WL 3676186, *6 (Bankr.E.D.Va. Nov. 21, 2005) ("Even when notice satisfies constitutional requirements, a creditor who does not receive actual notice—or who receives it but for some reason does not timely act upon it—may seek leave to file a late claim based on 'excusable neglect.'").

25. Indeed, even if the District had constitutionally sufficient notice of its interest in the initial bankruptcy proceedings, Rule 9006(b)(1) of the Federal Rules of Bankruptcy (the "Bankruptcy Rules") provides courts with the discretion to deem claims timely filed if the failure to act was the result of "excusable neglect."  *In re Residential Capital*, 2015 WL 2256683 at *9 (Bankr. S.D.N.Y. May 11, 2015) (emphasis added); *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 121 (2d Cir. 2005).  Specifically, Rule 9006(b)(1) provides:

> [w]hen an act is required or allowed to be done at or within a specified period . . . by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

FED. R. BANKR. P. 9006(b)(1).

26. In determining whether the failure to timely file a proof of claim is the result of excusable neglect, courts typically apply a four part test, articulated by the Supreme Court in *Pioneer Inv. Servs Co. v. Brunswick Assocs. L.P.,* 507 U.S. 380, 395 (1993) ("*Pioneer*"). *See also Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 188 F. 3d 116, 125 (3d Cir. 1999) ("*O'Brien*"). The four factors set forth by *Pioneer* are: (1) the danger of prejudice to the debtor; (2) the length of delay and impact thereof; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Pioneer*, 507 U.S. at 395.

### A. Prejudice:

27. When considering the first *Pioneer* factor, prejudice to the debtor, the Third Circuit in *O'Brien* considered the following considerations to be relevant:

> (i) whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated, (ii) whether the payment of the claim would force the return of amounts already paid out under the confirmed plan or affect the distribution to creditors; (iii) whether payment of the claim would jeopardize the success of the debtor's reorganization; (iv) whether allowance of the claim would adversely impact the debtor actually or legally; and (v) whether allowance of the claim would open the floodgates to other future claims.

*In re New Century TRS Holdings, Inc.*, at 51 (citing *Pro–Tec Serv., LLC v. Inacom Corp. (In re Inacom Corp.)*, No. 00–2426, 2004 WL 2283599 at *4 (D. Del. Oct. 4, 2004) (citing *In re O'Brien Envtl. Energy, Inc.,* 188 F.3d at 126–28)).

28. The Debtors cannot avail themselves of the first consideration. The District was listed on the Potential Protected Parties List and was clearly a known party to the Debtors. The District was listed because the Debtors have offered Chartered Organizations such

as the District protection from contribution and indemnity claims if Chartered Organizations contribute to the Settlement Trust. Treatment of Indirect Abuse Claims of Chartered Organizations is a key component of the Debtor's Plan so the Debtors should not be surprised or caught unaware of a claim made by the District, a party that they knew about and identified as a potential Protected Party.

29. The second prejudice consideration articulated by the *O'Brien* court— whether the payment of the claim would force the return of amounts already paid out under the confirmed plan or affect the distribution to creditors—also weighs heavily in favor of permitting the District to file a late claim since there is no confirmed plan in this case and no distributions to creditors have been made yet. In fact, the voting deadline for the Plan is not until December 14, 2021 and the Confirmation Hearing is currently scheduled for January 24, 2022. As such, if the District were permitted to file a proof of claim for a contingent amount at this point in time in the case, there would be no impact on distributions already made to creditors since none have been made.

30. Likewise, the third consideration articulated by the *O'Brien* court— whether payment of the claim would jeopardize the success of the debtor's reorganization—also strong favors a grant of this Motion because the current Plan proposed by the Debtors already establishes a proposal for the treatment of claims of Chartered Organizations holding Indirect Abuse Claims through the Settlement Trust. Therefore, the addition of the District's claim would not prejudice the potential success of the Debtors' reorganization where similar claims against the Debtors have already been contemplated. Allowance of the District's claim would only allow it to "opt-out" of the Plan as a Chartered Organization and preserve its rights to a distribution from the Settlement Trust.

31. As for the "floodgates" consideration, only parties similarly situated to the District—those known chartered organizations which were inexplicably not provided notice of the Bar Date—would be in a position to make similar arguments of excusable neglect. Moreover, granting this Motion would not open the "floodgates" to all late filed claims unless such claims, like the claims of the District, meet the requirements set forth by the Supreme Court under *Pioneer*.

32. For all of the foregoing reasons, allowing the District to file a late proof of claim would not prejudice the Debtors or the other creditors in the case and therefore, the first *Pioneer* weighs strongly in favor of granting this Motion.

**B. Length of Delay and Potential Impact on Judicial Proceedings:**

33. The second *Pioneer* factor considers the length of the delay. The significance of a delay in filing a late claim is to be considered based on the specific facts of the context. *See O'Brien*, 188 F. 3d at 130. Here, the length in delay in filing the claim is appropriate in light of the circumstances. The District was served with the CVA Suit on September 8, 2021 and, therefore, the District did not know of the existence of any sexual abuse claims associated with its alleged relationship with BSA until it received notice of the CVA Suit nearly ten months after the Bar Date. After becoming aware of the CVA Suit and its potential claims against the Boy Scouts, the District immediately engaged counsel who investigated the status of the Debtors' bankruptcy cases and brought this Motion. The mere two month delay between the service of the CVA Suit on the District and the date of this Motion is reasonable and would hardly be considered a delay especially considering that the Bar Date Order required that

the Debtors deliver the Bar Date Notice to known claimants at least 150 days prior to the Bar Date.

34. Additionally, the length of the delay is not particularly meaningful here because the Plan has not been confirmed, the claims resolution process has yet to begin and no distributions have been made to creditors. Indeed, courts are more inclined to permit late filed claims prior to the claims resolution process. *See e.g., In re Inacom Corp.*, 2004 WL 2283599 at *6 (delay of nine months after plan confirmation was not significant when the debtor was still litigating disputed claims and distributions to creditors would be based upon the debtor's progress in resolving claims); *In re Garden Ridge Corp.*, 348 B.R. 642, 646 (Bankr. D. Del. 2006) (late claim had minimal impact on judicial proceedings when the Committee was "in the midst of bringing their objections (e.g. late filed, amended, and duplicate) and a distribution was not expected for some time.").

35. Given that the voting deadline for the Plan is December 14, 2021, the Confirmation Hearing is currently scheduled for January 24, 2022, and the claims resolution process has yet to begin, any delay by the District in pursuing this Motion is not significant and will have little impact on the Bankruptcy Proceedings as they currently stand. As such, the second *Pioneer* factor also weighs strongly in favor of permitting the District to file its proof of claim after the Bar Date.

**C. Reason for Delay:**

36. The third *Pioneer* factor considers the reason for the delay, including whether it was within the reasonable control of the movant. Here, any delay by the District was not within its reasonable control. The District was unaware of the allegations contained in the

CVA Suit before it was served in September 2021. No other sexual abuse lawsuits have been filed against the District involving the BSA. *See* Jones Decl., ¶ 9.

### D. Good Faith:

37. The final *Pioneer* factor considers the good faith of the claimant seeking to file a late claim. This factor undeniably weighs in favor of the District. The District is acting in good faith by filing this Motion promptly after receipt of the CVA Suit. The District is seeking a fair and just remedy that preserves any potential indemnity or contribution claim it may have against the Debtors.

38. For all of the reasons stated above, the *Pioneer* factors are satisfied and the District has proven that its failure to timely file a proof of claim was the result of excusable neglect. Accordingly, the District should be permitted to file and prosecute a late proof of claim pursuant to Rule 9006(b)(1) of the Bankruptcy Rules.

39. Copies of the proposed forms of proofs of claim against each of the Debtors are annexed hereto as **Exhibit D** and a proposed order granting the Motion is annexed hereto as **Exhibit E**.

### CONCLUSION

The District never received the Bar Date Notice from the Debtor or the Claims Agent and therefore, had no actual notice of the Bar Date. Additionally, the District was not aware of any claims it may have had against the Debtors until almost one year after the Bar Date when the Plaintiff served the CVA Suit on the District. Upon its knowledge of such claim, the District promptly filed this Motion. Therefore, for the reasons stated above and in the

accompanying papers, the District respectfully submits that this Court should grant the District's motion for authority to submit a late filed claim in the Debtors' case.

| | |
|---|---|
| Dated: November 30, 2021<br>Wilmington, Delaware | Respectfully Submitted,<br><br>**THE ROSNER LAW GROUP LLC**<br><br>*/s/ Jason A. Gibson*<br>Scott J. Leonhardt (DE 4885)<br>Jason A. Gibson (DE 6091)<br>824 N. Market Street, Suite 810<br>Wilmington, DE 19801<br>Tel: (302) 777-1111<br>Email: leonhardt@teamrosner.com<br>         gibson@teamrosner.com<br><br>and<br><br>HODGSON RUSS LLP<br>James C. Thoman, Esq.<br>140 Pearl Street, Suite 100<br>Buffalo, NY 14202<br>Telephone: (716) 856-4000<br>Email: jthoman@hodgsonruss.com<br><br>*Counsel for Cattaraugus-Little Valley School District* |