# Exhibit "D"

**UNITED STATES BANKRUPTCY COURT DISTRICT OF DELAWARE**

| Fill in the information to identify the case (Select only one Debtor per form): |
|---|
| ☑ In re Boy Scouts of America, Case No. 20-10343 (LSS) |
| ☐ In re Delaware BSA, LLC, Case No. 20-10342 (LSS) |

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. With the exception of claims under section 503(b)(9), do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503. This form should **not** be used if you have a claim arising from sexual abuse and you were under the age of eighteen (18) at the time the sexual abuse began. If you have such a claim, you must file a Sexual Abuse Survivor Proof of Claim. For more information on how to file a Sexual Abuse Survivor Proof of Claim, go to: www.officialbsaclaims.com.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

| | |
|---|---|
| 1. Who is the current creditor? | **Cattaraugus-Little Valley School District** |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor _____ |
| 2. Has this claim been acquired from someone else? | ☑ No |
| | ☐ Yes   From whom? _____ |

| 3. Where should notices and payments to the creditor be sent? | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|---|
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **James C. Thoman, Esq.** | |
| | Name | Name |
| | **140    Pearl Street, Ste. 100** | |
| | Number    Street | Number    Street |
| | **Buffalo        NY      14202** | |
| | City        State    ZIP Code | City        State    ZIP Code |
| | Contact Phone **(716) 856-4000** | Contact Phone _____ |
| | Contact email **jthoman@hodgsonruss.com** | Contact email _____ |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one) | |

| 4. Does this claim amend one already filed? | ☑ No |
|---|---|
| | ☐ Yes   Claim Number on court claims registry (if known) _____   Filed On _____ MM / DD / YYYY |

| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No |
|---|---|
| | ☐ Yes   Who made the earlier filing? _____ |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No
☐ Yes    Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

**7. How much is the claim?**

$ <u>unliquidated</u>

**Does this amount include interest or other charges?**

☐ No
☑ Yes    Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information

Common law indemnification and contribution.

**9. Is all or part of the claim secured?**

☑ No
☐ Yes    The claim is secured by a lien on property

**Nature of property:**

☐ Real Estate  If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*
☐ Motor Vehicle
☐ Other    Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.

**Value of Property:** $ _____

**Amount of the claim that is secured:** $ _____

**Amount of the claim that is unsecured:** $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7).

**Amount necessary to cure any default as of the date of the petition:** $ _____

**Annual Interest Rate:**  (when case was filed) _____ %
☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes    **Amount necessary to cure any default as of the date of the petition.** $ _____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes    Identify the property: _____

**12. Is this claim for the value of goods received by the debtor within 20 days before the commencement date of this case (11 U.S.C. §503(b)(9)).?**

☑ No
☐ Yes    Amount of 503(b)(9) Claim: $ _____

| | |
|---|---|
| **13. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br>☐ Yes   *Check all that apply* |

**Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).   $_____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $_____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).   $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $_____

☐ Contributions to an employee benefit plan 11 U.S.C. § 507(a)(5).   $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.   $_____

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

| **Part 3:** | **Sign Below** |
|---|---|

| | |
|---|---|
| **The person completing this proof of claim must sign and date it.**<br>**FRBP 9011(b).**<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**<br>**18 U.S.C. §§ 152, 157, and 3571.** | *Check the appropriate box:*<br><br>☐ I am the creditor.<br>☑ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am the guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct.<br><br>Executed on date _____<br> MM / DD / YYYY<br><br><br>_____<br> Signature |

**Print the name of the person who is completing and signing this claim:**

Name: **Dr. Sharon Huff**
First Name   Middle Name   Last Name

Title: **Superintendent**

Company: **Cattaraugus-Little Valley School District**
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: **25   N. Franklin Street**
Number   Street
**Cattaraugus   NY   14719**
City   State   ZIP Code

Contact Phone: **(716)257-5293**   Email: **shuff@clvschools.org**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

_____

In Re:

BOY SCOUTS OF AMERICA AND
DELAWARE BSA, LLC,[1]

                    Debtors.

_____

Chapter 11

Case No. 20-10343 (LSS)
(Jointly Administered)

### RIDER TO PROOF OF CLAIM

        Cattaraugus-Little Valley School District ("CLVSD"), submits this Proof of Claim ("Claim") against Boy Scouts of America (the "Debtor"), under Case No. 20-10343, jointly administered, for a claim in an undetermined amount for common law indemnification and contribution, and seeking to preserve its Indirect Abuse Claim[2] against the Debtor and participate in distributions from the Settlement Trust following the determination of the amount of its claim, based on a Child Victims Act ("CVA") lawsuit filed against the Debtor, CLVSD, and others, on July 23, 2021, in the New York State Supreme Court in the County of Monroe, under Index No. E2021006795, and captioned as *D.A. v. Allegheny Highlands Counsel, Inc., Seneca Council, Inc., Boy Scouts of America, Cattaraugus Elementary School, and Cattaraugus-Little Valley Central School District* (the "CVA Suit"). A copy of the Summons and Complaint in the CVA Suit is attached to this Rider as **Exhibit A**.

        CLVSD reserves the right to amend and/or supplement this Claim at any time and in any manner and/or to file additional proofs of claim for any additional amounts and/or claims that may be based on information not yet known, or the same or additional documents or grounds of liability, including, but not limited to, additional contract based claims for indemnity and contribution if applicable.

        This Claim is filed to protect CLVSD from forfeiture of any claim it may have. Filing of this Claim is not (a) a waiver or release of CLVSD's rights, claims or defenses against any person, entity or property; (b) a waiver or release of CLVSD's right to have any and all final orders in any and all non-core matters entered only after *de novo* review by a United States District Judge; (c) a consent by CLVSD to the jurisdiction of this Court for any purpose other than with respect to this Claim; (d) an election of remedy; (e) a waiver or release of any rights which CLVSD may have to a jury trial; or (f) a waiver of the right to move to withdraw the

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, Texas 75038.

[2]     Capitalized terms not defined herein shall have the meanings ascribed to them in the Debtors' *Modified Fifth Amended Chapter 11 Plan of Reorganization* [Dkt. No. 6443].

reference with respect to the subject matter of this Claim, any objection thereto or any other proceedings which may be commenced in these cases against or otherwise involving CLVSD, including without limitation, any adversary proceeding that was or may be commenced by any party or committee in this case.

# Exhibit "A"

MONROE COUNTY CLERK'S OFFICE                THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 2788189

Book    Page    CIVIL

Return To:                                  No. Pages: 19
JAMES R. MARSH
31 Hudson Yards                             Instrument: EFILING INDEX NUMBER
11th Floor
New York, NY 10001                          Control #:      202107231360
                                            Index #:        E2021006795

                                            Date: 07/23/2021

A., D.                                      Time: 4:48:21 PM


ALLEGHENY HIGHLANDS COUNCIL, INC.
SENECA COUNCIL, INC., BOY SCOUTS OF AMERICA
CATTARAUGUS ELEMENTARY SCHOOL
CATTARAUGUS-LITTLE VALLEY CENTRAL SCHOOL
DISTRICT

| | | |
|---|---|---|
| State Fee Index Number | $165.00 | |
| County Fee Index Number | $26.00 | |
| State Fee Cultural Education | $14.25 | |
| State Fee Records Management | $4.75 | Employee: CW |
| Total Fees Paid: | $210.00 | |

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK



NEW YORK STATE SUPREME COURT
MONROE COUNTY

| | |
|---|---|
| D.A., | Index No.: _____ |
| Plaintiff, | Date Filed: _____ |
| -against- | **SUMMONS** |
| ALLEGHENY HIGHLANDS COUNCIL, INC.; SENECA COUNCIL, INC. BOY SCOUTS OF AMERICA; CATTARAUGUS ELEMENTARY SCHOOL; and CATTARAUGUS-LITTLE VALLEY CENTRAL SCHOOL DISTRICT, | Plaintiff designates Monroe County as the place of trial. |
| | The basis of venue is one defendant's residence. |
| Defendants. | **Child Victims Act Proceeding 22 NYCRR 202.72** |

TO THE ABOVE-NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiff's attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:  July 23, 2021

Respectfully Yours,

MARSH LAW FIRM PLLC

By _____
         James R. Marsh
         jamesmarsh@marsh.law
         31 Hudson Yards, 11th Floor
         New York, NY 10001-2170
         Phone: 212-372-3030

PFAU COCHRAN VERTETIS AMALA PLLC

By _____
Vincent T. Nappo
Anelga Doumanian
vnappo@pcvalaw.com
adoumanian@pcvalaw.com
31 Hudson Yards, 11th Floor
New York, NY 10001-2170

Attorneys for Plaintiff

2

NEW YORK STATE SUPREME COURT
MONROE COUNTY

_____

D.A.,

                              Plaintiff,

-against-

ALLEGHENY HIGHLANDS COUNCIL, INC.; SENECA
COUNCIL, INC. BOY SCOUTS OF AMERICA;
CATTARAUGUS ELEMENTARY SCHOOL; and
CATTARAUGUS-LITTLE VALLEY CENTRAL
SCHOOL DISTRICT,

                              Defendants.

_____

Index No.: _____

**COMPLAINT**

**Child Victims Act Proceeding
22 NYCRR 202.72**

Plaintiff D.A., by and through his attorneys, the Marsh Law Firm PLLC and Pfau Cochran
Vertetis Amala PLLC, respectfully alleges for his complaint the following:

## I.      INTRODUCTION

1.      This case arises from childhood sexual abuse and exploitation that Plaintiff D.A.
suffered at the hands of the defendants' Scout leader and volunteer, Clarence Gene Farnham, who
the defendants knew or should have known posed a danger to him and other children.  Despite
their knowledge, the defendants failed to take reasonable steps to protect Plaintiff D.A. from the
danger of being sexually abused by Clarence Gene Farnham.  As a result, Clarence Gene Farnham
was able to use his position as a Scout leader and volunteer with the defendants to sexually abuse
Plaintiff D.A.

## II.      PROCEEDING IN ACCORDANCE WITH CPLR 214-G AND 22 NYCRR 202.72

2.      This complaint is filed pursuant to the Child Victims Act (CVA) 2019 Sess. Law
News of N.Y. Ch. 11 (S. 2440), CPLR 214-G, and 22 NVCRR 202.72.  The CVA opened a historic
one-year one-time window for survivors of childhood sexual abuse in the State of New York to
pursue lapsed claims.  Prior to the passage of the CVA, Plaintiff's claims were time-barred the day

he turned 22 years old. The enactment of the CVA allows Plaintiff, for the first time in his life, to pursue restorative justice in New York State.

### III.   PARTIES

3.       Plaintiff D.A. is an adult male who currently resides in Limestone, New York.

4.       While he was a minor, Plaintiff was a victim of one or more criminal sex acts in the State of New York, including sexual acts that would constitute a sexual offense that revives Plaintiff's claim under the Child Victims Act.

5.       Since such criminal violations are the basis for this action, Plaintiff is entitled to the protection of Civil Rights Law 50-b and will file a motion asking this Court for permission to proceed using a pseudonym.

6.       In the alternative, Plaintiff will seek a stipulation from the defendants agreeing to enter into a protective order which will ensure that his identity is protected from the public while allowing the defendants full access to information necessary for their defense.

7.       At all relevant times Plaintiff was a minor participating in the Boy Scouts of America program that was operated and controlled by defendants Allegheny Highlands Council, Inc.; Seneca Council, Inc. Boy Scouts of America; Cattaraugus Elementary School; and Cattaraugus-Little Valley Central School District (all defendants are collectively referred to herein as "the defendants").

8.       Clarence Gene Farnham ("Farnham") was a Scout leader or volunteer that the defendants used and relied upon as a Scout leader and volunteer to serve Plaintiff and other children who participated in their Boy Scout program, including as Scout leader of Plaintiff's Boy Scout Troop.

9.      During the time that Farnham served as a Scout leader or volunteer for the defendants, he used his position as a Scout leader or volunteer to groom and to sexually abuse Plaintiff.

10.     At all relevant times defendant Allegheny Highlands Council, Inc. ("AHC") was a New York nonprofit corporation organized under New York law with its principal place of business in Falconer, New York, that transacted business in Monroe County.

11.     At all relevant times AHC conducted business as "Allegheny Highlands Council, Inc.," "Allegheny Highlands Council, Inc., Boy Scouts of America" "Allegheny Highlands Council, Boy Scouts of America, Inc.," "Allegheny Highlands Council, Boy Scouts of America," "Allegheny Highlands Council," "AH Council," and "AHC."

12.     To the extent that AHC was a different entity, corporation, or organization during the period of time in which Farnham used his position as a Scout leader and volunteer to sexually abuse Plaintiff, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Allegheny Highlands Council, Inc.

13.     To the extent that AHC is a successor to a different entity, corporation, or organization which existed during the period of time during which Farnham used his position as a Scout leader and volunteer to sexually abuse Plaintiff, including any entity, corporation, or organization that subsequently or eventually merged into AHC, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Allegheny Highlands Council, Inc.

14.     All such AHC-related entities, corporations, or organizations are collectively identified and referred to herein as "AHC."

15.    At all relevant times defendant Seneca Council, Inc. Boy Scouts of America ("SC") was a New York nonprofit corporation organized under New York law with its principal place of business in Olean, New York.

16.    At all relevant times SC conducted business as "Seneca Council, Inc. Boy Scouts of America," "Seneca Council, Boy Scouts of America, Inc.," "Seneca Council, Boy Scouts of America," "Seneca Council, Inc.," "Seneca Council," "S Council," and "SC."

17.    To the extent that SC was a different entity, corporation, or organization during the period of time in which Farnham used his position as a Scout leader and volunteer to sexually abuse Plaintiff, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Seneca Council, Inc. Boy Scouts of America

18.    To the extent that SC is a successor to a different entity, corporation, or organization which existed during the period of time during which Farnham used his position as a Scout leader and volunteer to sexually abuse Plaintiff, including AHC and any other entity, corporation, or organization that subsequently or eventually merged into SC, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Seneca Council, Inc. Boy Scouts of America

19.    All such SC-related entities, corporations, or organizations are collectively identified and referred to herein as "SC."

20.    Given their relationship, AHC and SC are collectively referred to below as "AHC."

21.    At all relevant times defendant Cattaraugus Elementary School ("CES") was a public school organized under New York law with its principal place of business in or around Cattaraugus, New York.

6

22.     To the extent that CES was a different entity, corporation, or organization during the period of time in which Farnham used his position as a Scout leader and volunteer to sexually abuse Plaintiff, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Cattaraugus Elementary School.

23.     To the extent that CES is a successor to a different entity, corporation, or organization which existed during the period of time during which Farnham used his position as a Scout leader and volunteer to sexually abuse Plaintiff, including any entity, corporation, or organization that subsequently or eventually merged into CES, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Cattaraugus Elementary School.

24.     All such CES-related entities, corporations, or organizations are collectively identified and referred to herein as "CES."

25.     At all relevant times defendant Cattaraugus-Little Valley Central School District ("CLVSD") was a public school district organized under New York law with its principal place of business in or around Cattaraugus, New York.

26.     To the extent that CLVSD was a different entity, corporation, or organization during the period of time in which Farnham used his position as a Scout leader and volunteer to sexually abuse Plaintiff, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Cattaraugus-Little Valley Central School District.

27.     To the extent that CLVSD is a successor to a different entity, corporation, or organization which existed during the period of time during which Farnham used his position as a

7

Scout leader and volunteer to sexually abuse Plaintiff, including CES and any entity, corporation, or organization that subsequently or eventually merged into CLVSD, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Cattaraugus-Little Valley Central School District.

28.     All such CLVSD-related entities, corporations, or organizations are collectively identified and referred to herein as "CLVSD."

29.     Given their relationship, CES and CLVSD are collectively referred to below as "CES."

## IV.     VENUE

30.     Venue is proper because at all relevant times defendant Allegheny Highlands Council, Inc. was a domestic corporation authorized to transact business in New York with its principal office located in Falconer, New York.

31.     The amount of damages sought exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## V.     STATEMENT OF FACTS

32.     Plaintiff D.A. repeats and re-alleges the above allegations.

33.     At all relevant times AHC, through its agents, servants, and employees, managed, maintained, operated, and controlled Boy Scout Troops, Cub Scout Troops, other Scout Troops, and Boy Scout camps in New York, including the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by its Scout leader and volunteer, Farnham.

34.     At all relevant times AHC, through its agents, servants, and employees, managed, maintained, operated, and controlled the Scout leaders and volunteers of Boy Scout Troops, Cub Scout Troops, other Scout Troops, and Boy Scout camps in New York, including the Scout leaders

8

and volunteers of the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by one of those Scout leaders, Farnham.

35.     CES obtained a charter agreement from the Boy Scouts of America and AHC that allowed and enabled CES to operate and control Plaintiff's Boy Scout Troop subject to the rules, regulations, and control of AHC.

36.     At all relevant times the defendants, through their agents, servants, and employees, managed, maintained, operated, and controlled the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by the defendants' Scout leader and volunteer, Farnham.

37.     At all relevant times the defendants, through their agents, servants, and employees, held out their agents, servants, and employees to the public as those who managed, maintained, operated, and controlled the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by one of their Scout leaders and volunteers, Farnham.

38.     At all relevant times the defendants were responsible for the hiring and staffing, and did the hiring and staffing, for the Scout leaders and volunteers of the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by their Scout leader and volunteer, Farnham.

39.     At all relevant times the defendants were responsible for the recruitment and staffing of the Scout leaders and volunteers for the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by their Scout leader and volunteer, Farnham.

40.     At all relevant times the defendants were responsible for supervising the Scout leaders and volunteers for the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by their Scout leader and volunteer, Farnham.

41.    At all relevant times the defendants held themselves out to the public as the owners of the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by their Scout leader and volunteer, Farnham.

42.    At all relevant times the defendants materially benefited from the operation of the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by the defendants' Scout leader and volunteer, Farnham, including the services of Farnham and the services of those who managed and supervised Farnham.

43.    At all relevant times the defendants, through their agents, servants, and employees, managed, maintained, operated, and controlled the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by the defendants' Scout leader and volunteer, Farnham, including its leaders and volunteers.

44.    At all relevant times the defendants, through their agents, servants, and employees, managed, maintained, operated, and controlled the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by the defendants' Scout leader and volunteer, Farnham, including its policies and procedures regarding the sexual abuse of children.

45.    At all relevant times Farnham was a Scout leader and volunteer of the defendants who Plaintiff believes held the position of Scout leader of the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by Farnham.

46.    At all relevant times Farnham was on the staff of, was an agent of, or served as an employee or volunteer of the defendants.

47.    At all relevant times Farnham was acting in the course and scope of his position with the defendants.

48.    When Plaintiff was a minor, he registered with the defendants as a member of their Boy Scout Troop and paid them a fee to participate as a member of their Boy Scout Troop, including its meetings, camping trips, merit badge activities, and other outings.

49.    At all relevant times the defendants, through their agents, servants, and employees, held Farnham out to the public, to Plaintiff, and to his parents, as their agent.

50.    At all relevant times the defendants, through their agents, servants, and employees, held Farnham out to the public, to Plaintiff, and to his parents, as having been vetted, screened, and approved to serve as one of their Scout leaders and volunteers.

51.    At all relevant times Plaintiff and his parents reasonably relied upon the acts and representations of the defendants, through their agents, servants, and employees, and reasonably believed that Farnham was one of their agents who was vetted, screened, and approved to serve as one of their Scout leaders and volunteers.

52.    At all relevant times Plaintiff and his parents trusted Farnham because the defendants held him out as someone who was safe and could be trusted with the supervision, care, custody, and control of Plaintiff.

53.    At all relevant times Plaintiff and his parents believed that the defendants would exercise such care as would a parent of ordinary prudence in comparable circumstances when those defendants assumed supervision, care, custody, and control of Plaintiff.

54.    CES sponsored the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by the defendants' Scout leader and volunteer, Farnham.

55.    CES hosted the meetings of Plaintiff's Boy Scout Troop and organized the Troop's Scouting activities and events, including meetings, camping trips, merit badge activities, and other outings.

11

56.     The defendants were responsible for selecting and supervising the Scout leaders and volunteers of Plaintiff's Boy Scout Troop, including the Troop's Scout leader and volunteer, Farnham, when he used that position with the defendants to sexually abuse Plaintiff.

57.     When Plaintiff was a minor, Farnham used his position as the defendants' Scout leader and volunteer to sexually abuse him.

58.     Plaintiff was sexually abused by Farnham when Plaintiff was approximately 12 to 14 years old.

59.     Based on the representations of the defendants that Farnham was safe and trustworthy, Plaintiff and his parents allowed Plaintiff to be under the supervision of, and in the care, custody, and control of the defendants, including when Plaintiff was sexually abused by Farnham.

60.     Neither Plaintiff nor his parents would have allowed him to be under the supervision of, or in the care, custody, or control of the defendants, or Farnham, if the defendants had disclosed to Plaintiff or his parents that Farnham was not safe and was not trustworthy, and that he in fact posed a danger to Plaintiff in that Farnham was likely to sexually abuse Plaintiff.

61.     Neither Plaintiff nor his parents would have paid the defendants to allow him to be a member of their Boy Scout Troop, or to participate in their Scouting activities, if the defendants had disclosed to Plaintiff or his parents that Farnham was not safe and was not trustworthy, and that he in fact posed a danger to Plaintiff in that Farnham was likely to sexually abuse Plaintiff.

62.     Neither Plaintiff nor his parents would have paid the defendants to allow him to be a member of their Boy Scout Troop, or to participate in their Scouting activities, if the defendants had disclosed to Plaintiff or his parents that they knew for years that sexual predators, like

12

Farnham, were using their positions as Scout leaders and volunteers to groom and to sexually abuse children.

63.    No parent of ordinary prudence in comparable circumstances would have allowed Plaintiff to be under the supervision of, or in the care, custody, or control of the defendants or Farnham if the defendants had disclosed to Plaintiff or his parents that Farnham was not safe and was not trustworthy, and that he in fact posed a danger to Plaintiff in that Farnham was likely to sexually abuse him.

64.    From approximately 1967 through 1969, Farnham used his position of trust and authority as a Scout leader and volunteer of the defendants to groom Plaintiff and to sexually abuse him, including during Scout camping trips, Scout meetings, and Scout Camp when Plaintiff was under the supervision of, and in the care, custody, or control of, the defendants.

65.    The defendants' Scout leader and volunteer, Farnham, sexually abused Plaintiff multiple times.

66.    The sexual abuse by the defendants' Scout leader and volunteer, Farnham, included, but was not limited to, Farnham fondling and attemping to orally copulate Plaintiff; and Farnham masturbating himself in front of Plaintiff.

67.    The sexual abuse by the defendants' Scout leader and volunteer, Farnham, occurred using property that was owned, operated, and/or controlled by the defendants, including Farnham's residence, Plaintiff's tent, and Philmont Scout Ranch, during which time Plaintiff was in the care, custody, or control of the defendants.

68.    The sexual abuse by the defendants' Scout leader and volunteer, Farnham, occurred during activities that were sponsored by the defendants, or directly as a result of activities that

13

were sponsored by the defendants, including, but not limited to, Scout camping trips, Scout meetings, and Scout Camp.

69.     At all relevant times the defendants, through their agents, servants, and employees, knew or should have known that Farnham was a sexual abuser of children who would use his position with them to sexually abuse Plaintiff and other children.

70.     The defendants knew or should have known that Farnham was likely to sexually abuse children, including Plaintiff.

71.     At all relevant times the defendants, through their agents, servants, and employees, knew or should have known that the sexual abuse by Farnham of Plaintiff was ongoing.

72.     At all relevant times it was reasonably foreseeable to the defendants, through their agents, servants, and employees, that Farnham's sexual abuse of children would likely result in injury to others, including the sexual abuse of Plaintiff and other children by Farnham.

73.     Before and during the time he sexually abused Plaintiff, the defendants, through their agents, servants, and employees, knew or should have known that Farnham was sexually abusing Plaintiff and other children.

74.     The defendants, through their agents, servants, and employees, knew or should have known before and during Farnham's sexual abuse of Plaintiff that Scout leaders, volunteers, and other persons who worked with youth, including other Scout leaders and volunteers, had used their positions to groom and to sexually abuse children.

75.     The defendants, through their agents, servants, and employees, knew or should have known before and during Farnham's sexual abuse of Plaintiff that such Scout leaders, volunteers, and other persons who worked with youth could not be "cured" through treatment or counseling.

76.      The defendants, through their agents, servants, and employees, concealed the sexual abuse of children by Farnham in order to conceal their own bad acts in failing to protect children from Farnham, to protect their reputation, and to prevent victims of such sexual abuse by Farnham and other Scout leaders and volunteers from coming forward during the extremely limited statute of limitations prior to the enactment of the current law, despite knowing that Farnham and other abusers in their ranks would continue to molest children.

77.      The defendants, through their agents, servants, and employees, consciously and recklessly disregarded their knowledge that Farnham would use his position with the defendants to sexually abuse children, including Plaintiff.

78.      The defendants, through their agents, servants, and employees, disregarded their knowledge that Farnham would use his position with them to sexually abuse children, including Plaintiff.

79.      The defendants, through their agents, servants, and employees, acted in concert with each other and/or with Farnham to conceal the danger that Farnham posed to children, including Plaintiff, so that Farnham could continue serving them despite their knowledge of that danger.

80.      The defendants, through their agents, servants, and employees, knew that their negligent, reckless, and outrageous conduct would inflict severe emotional and psychological distress, as well as personal physical injury, on others, including Plaintiff, and he did in fact suffer severe emotional and psychological distress and personal physical injury as a result of their wrongful conduct.

81.      By reason of the wrongful acts of the defendants as detailed herein, Plaintiff sustained physical and psychological injuries, including but not limited to, severe emotional and

psychological distress, humiliation, fright, dissociation, anger, depression, anxiety, family turmoil and loss of faith, a severe shock to his nervous system, physical pain and mental anguish, and emotional and psychological damage, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature, and Plaintiff has and/or will become obligated to expend sums of money for treatment.

## VI. CAUSES OF ACTION

### A. FIRST CAUSE OF ACTION – NEGLIGENCE

82. Plaintiff D.A. repeats and re-alleges all of his allegations above and below.

83. The defendants had a duty to take reasonable steps to protect Plaintiff from foreseeable harm when he was in their care, custody, and control, including when he was a paying member of their Boy Scout Troop and when he was participarting in their Scouting activities.

84. The defendants also had a duty to take reasonable steps to prevent Farnham from using the tasks, premises, and instrumentalities of his position as their Scout leader and volunteer to target, groom, and sexually abuse children, including Plaintiff.

85. The defendants had a duty to warn, train, or educate their Scout leaders, volunteers, and youth members, including Plaintiff, about the danger of sexual abuse by Scout leaders and volunteers who were involved in their Scouting program and how to avoid or minimize such danger.

86. The defendants breached each of the foregoing duties by failing to exercise reasonable care to prevent their Scout leader and volunteer, Farnham, from using his position with the defendants to sexually abuse Plaintiff when Plaintiff was in the care, custody, or control of the defendants.

87. In breaching their duties, including hiring, retaining, and failing to supervise Farnham; giving Farnham access to children; entrusting their tasks, premises, and instrumentalities

to Farnham; failing to train their personnel in the signs of sexual predation and to protect children from sexual abuse and other harm; failing to warn Plaintiff, his parents, and other parents of the danger of sexual abuse; and failing to create a safe and secure environment for Plaintiff and other children who were under their supervision and in their care, custody, and control, the defendants created a foreseeable risk that Plaintiff would be sexually abused by Farnham.

88.     As a direct and proximate result of the acts and omissions of the defendants, their Scout leader and volunteer, Farnham, groomed and sexually abused Plaintiff, which has caused Plaintiff to suffer general and special damages as more fully described herein.

## VII.   CPLR 1603 – NO APPORTIONMENT OF LIABILITY

89.     Pursuant to CPLR 1603, the foregoing causes of action are exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602, including but not limited to, CPLR 1602(2), CPLR 1602(5), 1602(7) and 1602(11), thus precluding defendants from limiting their liability by apportioning some portion of liability to any joint tortfeasor.

## VIII.   PRAYER FOR RELIEF

90.     Plaintiff demands judgment against the defendants named in his causes of action, together with compensatory and punitive damages to be determined at trial, and the interest, cost, and disbursements pursuant to his causes of action, and such other and further relief as the Court deems just and proper.

91.     Plaintiff specifically reserves the right to pursue additional causes of action, other than those outlined above, that are supported by the facts pleaded or that may be supported by other facts learned in discovery.

Dated:  July 23, 2021

MARSH LAW FIRM PLLC

By _____
     James R. Marsh
     jamesmarsh@marsh.law
     31 Hudson Yards, 11th Floor
     New York, NY 10001-2170
     Phone: 212-372-3030

PFAU COCHRAN VERTETIS AMALA PLLC

By _____
     Vincent T. Nappo
     vnappo@pcvalaw.com
     Anelga Doumanian
     adoumanian@pcvalaw.com
     31 Hudson Yards, 11th Floor
     New York, NY 10001-2170

     Attorneys for Plaintiff

18

**UNITED STATES BANKRUPTCY COURT DISTRICT OF DELAWARE**

**Fill in the information to identify the case (Select only one Debtor per form):**

☐ In re Boy Scouts of America, Case No. 20-10343 (LSS)

☑ In re Delaware BSA, LLC, Case No. 20-10342 (LSS)

Official Form 410

# Proof of Claim
04/19

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. With the exception of claims under section 503(b)(9), do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503. This form should **not** be used if you have a claim arising from sexual abuse and you were under the age of eighteen (18) at the time the sexual abuse began. If you have such a claim, you must file a Sexual Abuse Survivor Proof of Claim. For more information on how to file a Sexual Abuse Survivor Proof of Claim, go to: www.officialbsaclaims.com.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

| | |
|---|---|
| **1. Who is the current creditor?** | Cattaraugus-Little Valley School District<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| **2. Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes   From whom? _____ |
| **3. Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>James C. Thoman, Esq.<br>Name<br>140   Pearl Street, Ste. 100<br>Number   Street<br>Buffalo   NY   14202<br>City   State   ZIP Code<br><br>Contact Phone   (716) 856-4000<br>Contact email   jthoman@hodgsonruss.com<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one) | **Where should payments to the creditor be sent? (if different)**<br><br>Name<br><br>Number   Street<br><br>City   State   ZIP Code<br><br>Contact Phone<br>Contact email |
| **4. Does this claim amend one already filed?** | ☑ No<br>☐ Yes   Claim Number on court claims registry (if known) _____   Filed On _____<br>MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes   Who made the earlier filing? _____ |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No
☐ Yes    Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

**7. How much is the claim?**

$ <u>unliquidated</u>

**Does this amount include interest or other charges?**

☐ No
☑ Yes    Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information

Common law indemnification and contribution.

**9. Is all or part of the claim secured?**

☑ No
☐ Yes    The claim is secured by a lien on property

**Nature of property:**

☐ Real Estate    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*
☐ Motor Vehicle
☐ Other    Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.

**Value of Property:**    $ _____

**Amount of the claim that is secured:**    $ _____

**Amount of the claim that is unsecured:**    $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7).

**Amount necessary to cure any default as of the date of the petition:**    $ _____

**Annual Interest Rate:**    (when case was filed)    _____ %
☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes    **Amount necessary to cure any default as of the date of the petition.**    $ _____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes    Identify the property: _____

**12. Is this claim for the value of goods received by the debtor within 20 days before the commencement date of this case (11 U.S.C. §503(b)(9)).?**

☑ No
☐ Yes    Amount of 503(b)(9) Claim:    $ _____

**13. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No
☐ Yes   *Check all that apply*

**Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).   $_____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $_____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).   $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $_____

☐ Contributions to an employee benefit plan 11 U.S.C. § 507(a)(5).   $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.   $_____

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

| **Part 3:** | **Sign Below** |

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am the guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date _____
                    MM / DD / YYYY


_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name    **Dr. Sharon Huff**
        First Name          Middle Name          Last Name

Title   **Superintendent**

Company **Cattaraugus-Little Valley School District**
        Identify the corporate servicer as the company if the authorized agent is a servicer.

Address **25       N. Franklin Street**
        Number    Street
        **Cattaraugus          NY          14719**
        City                State        ZIP Code

Contact Phone  **(716) 257-5293**    Email    **shuff@clvschools.org**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In Re:

BOY SCOUTS OF AMERICA AND
DELAWARE BSA, LLC,[1]

Debtors.

Chapter 11

Case No. 20-10343 (LSS)
(Jointly Administered)

### RIDER TO PROOF OF CLAIM

Cattaraugus-Little Valley School District ("CLVSD"), submits this Proof of Claim ("Claim") against Delaware BSA, LLC (the "Delaware BSA"), under Case No. 20-10342, jointly administered under Case No. 20-10343, Boy Scouts of America ("BSA", and together with the Delaware BSA, the "Debtors"), for a claim in an undetermined amount for common law indemnification and contribution, and seeking to preserve its Indirect Abuse Claim[2] against the Delaware BSA, as a successor in interest to BSA, and participate in distributions from the Settlement Trust following the determination of the amount of its claim, based on a Child Victims Act ("CVA") lawsuit filed against BSA, CLVSD, and others, on July 23, 2021, in the New York State Supreme Court in the County of Monroe, under Index No. E2021006795, and captioned as *D.A. v. Allegheny Highlands Counsel, Inc., Seneca Council, Inc., Boy Scouts of America, Cattaraugus Elementary School, and Cattaraugus-Little Valley Central School District* (the "CVA Suit").  A copy of the Summons and Complaint in the CVA Suit is attached to this Rider as **Exhibit A**.

CLVSD reserves the right to amend and/or supplement this Claim at any time and in any manner and/or to file additional proofs of claim for any additional amounts and/or claims that may be based on information not yet known, or the same or additional documents or grounds of liability, including, but not limited to, additional contract based claims for indemnity and contribution if applicable.

This Claim is filed to protect CLVSD from forfeiture of any claim it may have. Filing of this Claim is not (a) a waiver or release of CLVSD's rights, claims or defenses against any person, entity or property; (b) a waiver or release of CLVSD's right to have any and all final orders in any and all non-core matters entered only after *de novo* review by a United States District Judge; (c) a consent by CLVSD to the jurisdiction of this Court for any purpose other

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, Texas 75038.

[2]     Capitalized terms not defined herein shall have the meanings ascribed to them in the Debtors' *Modified Fifth Amended Chapter 11 Plan of Reorganization* [Dkt. No. 6443].

than with respect to this Claim; (d) an election of remedy; (e) a waiver or release of any rights which CLVSD may have to a jury trial; or (f) a waiver of the right to move to withdraw the reference with respect to the subject matter of this Claim, any objection thereto or any other proceedings which may be commenced in these cases against or otherwise involving CLVSD, including without limitation, any adversary proceeding that was or may be commenced by any party or committee in this case.

# Exhibit "A"

MONROE COUNTY CLERK'S OFFICE                    THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 2788189

Book    Page    CIVIL

Return To:                                      No. Pages: 19
JAMES R. MARSH
31 Hudson Yards                                 Instrument: EFILING INDEX NUMBER
11th Floor
New York, NY 10001                              Control #:        202107231360
                                                Index #:          E2021006795

                                                Date: 07/23/2021

A., D.                                          Time: 4:48:21 PM

ALLEGHENY HIGHLANDS COUNCIL, INC.
SENECA COUNCIL, INC., BOY SCOUTS OF AMERICA
CATTARAUGUS ELEMENTARY SCHOOL
CATTARAUGUS-LITTLE VALLEY CENTRAL SCHOOL
DISTRICT

| | | |
|---|---|---|
| State Fee Index Number | $165.00 | |
| County Fee Index Number | $26.00 | |
| State Fee Cultural Education | $14.25 | |
| State Fee Records Management | $4.75 | Employee: CW |
| Total Fees Paid: | $210.00 | |

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK



NEW YORK STATE SUPREME COURT
MONROE COUNTY

| | |
|---|---|
| D.A., | Index No.: _____ |
| | |
| Plaintiff, | Date Filed: _____ |
| | |
| -against- | **SUMMONS** |
| | |
| ALLEGHENY HIGHLANDS COUNCIL, INC.; SENECA | Plaintiff designates Monroe |
| COUNCIL, INC. BOY SCOUTS OF AMERICA; | County as the place of trial. |
| CATTARAUGUS ELEMENTARY SCHOOL; and | |
| CATTARAUGUS-LITTLE VALLEY CENTRAL | The basis of venue is one |
| SCHOOL DISTRICT, | defendant's residence. |
| | |
| Defendants. | **Child Victims Act Proceeding 22 NYCRR 202.72** |

TO THE ABOVE-NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiff's attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:  July 23, 2021

Respectfully Yours,

MARSH LAW FIRM PLLC

By _____
James R. Marsh
jamesmarsh@marsh.law
31 Hudson Yards, 11th Floor
New York, NY 10001-2170
Phone: 212-372-3030

PFAU COCHRAN VERTETIS AMALA PLLC

By _____

Vincent T. Nappo
Anelga Doumanian
vnappo@pcvalaw.com
adoumanian@pcvalaw.com
31 Hudson Yards, 11th Floor
New York, NY 10001-2170

Attorneys for Plaintiff

2

NEW YORK STATE SUPREME COURT
MONROE COUNTY

D.A.,

                                    Plaintiff,

-against-

ALLEGHENY HIGHLANDS COUNCIL, INC.; SENECA
COUNCIL, INC. BOY SCOUTS OF AMERICA;
CATTARAUGUS ELEMENTARY SCHOOL; and
CATTARAUGUS-LITTLE VALLEY CENTRAL
SCHOOL DISTRICT,

                                    Defendants.

Index No.: _____

**COMPLAINT**

**Child Victims Act Proceeding
22 NYCRR 202.72**

Plaintiff D.A., by and through his attorneys, the Marsh Law Firm PLLC and Pfau Cochran

Vertetis Amala PLLC, respectfully alleges for his complaint the following:

## I.     INTRODUCTION

1.      This case arises from childhood sexual abuse and exploitation that Plaintiff D.A.

suffered at the hands of the defendants' Scout leader and volunteer, Clarence Gene Farnham, who

the defendants knew or should have known posed a danger to him and other children.  Despite

their knowledge, the defendants failed to take reasonable steps to protect Plaintiff D.A. from the

danger of being sexually abused by Clarence Gene Farnham.  As a result, Clarence Gene Farnham

was able to use his position as a Scout leader and volunteer with the defendants to sexually abuse

Plaintiff D.A.

## II.     PROCEEDING IN ACCORDANCE WITH CPLR 214-G AND 22 NYCRR 202.72

2.      This complaint is filed pursuant to the Child Victims Act (CVA) 2019 Sess. Law

News of N.Y. Ch. 11 (S. 2440), CPLR 214-G, and 22 NVCRR 202.72.  The CVA opened a historic

one-year one-time window for survivors of childhood sexual abuse in the State of New York to

pursue lapsed claims.  Prior to the passage of the CVA, Plaintiff's claims were time-barred the day

he turned 22 years old. The enactment of the CVA allows Plaintiff, for the first time in his life, to pursue restorative justice in New York State.

### III.   PARTIES

3.      Plaintiff D.A. is an adult male who currently resides in Limestone, New York.

4.      While he was a minor, Plaintiff was a victim of one or more criminal sex acts in the State of New York, including sexual acts that would constitute a sexual offense that revives Plaintiff's claim under the Child Victims Act.

5.      Since such criminal violations are the basis for this action, Plaintiff is entitled to the protection of Civil Rights Law 50-b and will file a motion asking this Court for permission to proceed using a pseudonym.

6.      In the alternative, Plaintiff will seek a stipulation from the defendants agreeing to enter into a protective order which will ensure that his identity is protected from the public while allowing the defendants full access to information necessary for their defense.

7.      At all relevant times Plaintiff was a minor participating in the Boy Scouts of America program that was operated and controlled by defendants Allegheny Highlands Council, Inc.; Seneca Council, Inc. Boy Scouts of America; Cattaraugus Elementary School; and Cattaraugus-Little Valley Central School District (all defendants are collectively referred to herein as "the defendants").

8.      Clarence Gene Farnham ("Farnham") was a Scout leader or volunteer that the defendants used and relied upon as a Scout leader and volunteer to serve Plaintiff and other children who participated in their Boy Scout program, including as Scout leader of Plaintiff's Boy Scout Troop.

4

9.    During the time that Farnham served as a Scout leader or volunteer for the defendants, he used his position as a Scout leader or volunteer to groom and to sexually abuse Plaintiff.

10.    At all relevant times defendant Allegheny Highlands Council, Inc. ("AHC") was a New York nonprofit corporation organized under New York law with its principal place of business in Falconer, New York, that transacted business in Monroe County.

11.    At all relevant times AHC conducted business as "Allegheny Highlands Council, Inc.," "Allegheny Highlands Council, Inc., Boy Scouts of America" "Allegheny Highlands Council, Boy Scouts of America, Inc.," "Allegheny Highlands Council, Boy Scouts of America," "Allegheny Highlands Council," "AH Council," and "AHC."

12.    To the extent that AHC was a different entity, corporation, or organization during the period of time in which Farnham used his position as a Scout leader and volunteer to sexually abuse Plaintiff, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Allegheny Highlands Council, Inc.

13.    To the extent that AHC is a successor to a different entity, corporation, or organization which existed during the period of time during which Farnham used his position as a Scout leader and volunteer to sexually abuse Plaintiff, including any entity, corporation, or organization that subsequently or eventually merged into AHC, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Allegheny Highlands Council, Inc.

14.    All such AHC-related entities, corporations, or organizations are collectively identified and referred to herein as "AHC."

15.     At all relevant times defendant Seneca Council, Inc. Boy Scouts of America ("SC") was a New York nonprofit corporation organized under New York law with its principal place of business in Olean, New York.

16.     At all relevant times SC conducted business as "Seneca Council, Inc. Boy Scouts of America," "Seneca Council, Boy Scouts of America, Inc.," "Seneca Council, Boy Scouts of America," "Seneca Council, Inc.," "Seneca Council," "S Council," and "SC."

17.     To the extent that SC was a different entity, corporation, or organization during the period of time in which Farnham used his position as a Scout leader and volunteer to sexually abuse Plaintiff, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Seneca Council, Inc. Boy Scouts of America

18.     To the extent that SC is a successor to a different entity, corporation, or organization which existed during the period of time during which Farnham used his position as a Scout leader and volunteer to sexually abuse Plaintiff, including AHC and any other entity, corporation, or organization that subsequently or eventually merged into SC, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Seneca Council, Inc. Boy Scouts of America

19.     All such SC-related entities, corporations, or organizations are collectively identified and referred to herein as "SC."

20.     Given their relationship, AHC and SC are collectively referred to below as "AHC."

21.     At all relevant times defendant Cattaraugus Elementary School ("CES") was a public school organized under New York law with its principal place of business in or around Cattaraugus, New York.

6

22.     To the extent that CES was a different entity, corporation, or organization during the period of time in which Farnham used his position as a Scout leader and volunteer to sexually abuse Plaintiff, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Cattaraugus Elementary School.

23.     To the extent that CES is a successor to a different entity, corporation, or organization which existed during the period of time during which Farnham used his position as a Scout leader and volunteer to sexually abuse Plaintiff, including any entity, corporation, or organization that subsequently or eventually merged into CES, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Cattaraugus Elementary School.

24.     All such CES-related entities, corporations, or organizations are collectively identified and referred to herein as "CES."

25.     At all relevant times defendant Cattaraugus-Little Valley Central School District ("CLVSD") was a public school district organized under New York law with its principal place of business in or around Cattaraugus, New York.

26.     To the extent that CLVSD was a different entity, corporation, or organization during the period of time in which Farnham used his position as a Scout leader and volunteer to sexually abuse Plaintiff, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Cattaraugus-Little Valley Central School District.

27.     To the extent that CLVSD is a successor to a different entity, corporation, or organization which existed during the period of time during which Farnham used his position as a

7

Scout leader and volunteer to sexually abuse Plaintiff, including CES and any entity, corporation, or organization that subsequently or eventually merged into CLVSD, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Cattaraugus-Little Valley Central School District.

28.    All such CLVSD-related entities, corporations, or organizations are collectively identified and referred to herein as "CLVSD."

29.    Given their relationship, CES and CLVSD are collectively referred to below as "CES."

## IV.    VENUE

30.    Venue is proper because at all relevant times defendant Allegheny Highlands Council, Inc. was a domestic corporation authorized to transact business in New York with its principal office located in Falconer, New York.

31.    The amount of damages sought exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## V.    STATEMENT OF FACTS

32.    Plaintiff D.A. repeats and re-alleges the above allegations.

33.    At all relevant times AHC, through its agents, servants, and employees, managed, maintained, operated, and controlled Boy Scout Troops, Cub Scout Troops, other Scout Troops, and Boy Scout camps in New York, including the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by its Scout leader and volunteer, Farnham.

34.    At all relevant times AHC, through its agents, servants, and employees, managed, maintained, operated, and controlled the Scout leaders and volunteers of Boy Scout Troops, Cub Scout Troops, other Scout Troops, and Boy Scout camps in New York, including the Scout leaders

8

NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 07/23/2021

and volunteers of the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by one of those Scout leaders, Farnham.

35.     CES obtained a charter agreement from the Boy Scouts of America and AHC that allowed and enabled CES to operate and control Plaintiff's Boy Scout Troop subject to the rules, regulations, and control of AHC.

36.     At all relevant times the defendants, through their agents, servants, and employees, managed, maintained, operated, and controlled the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by the defendants' Scout leader and volunteer, Farnham.

37.     At all relevant times the defendants, through their agents, servants, and employees, held out their agents, servants, and employees to the public as those who managed, maintained, operated, and controlled the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by one of their Scout leaders and volunteers, Farnham.

38.     At all relevant times the defendants were responsible for the hiring and staffing, and did the hiring and staffing, for the Scout leaders and volunteers of the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by their Scout leader and volunteer, Farnham.

39.     At all relevant times the defendants were responsible for the recruitment and staffing of the Scout leaders and volunteers for the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by their Scout leader and volunteer, Farnham.

40.     At all relevant times the defendants were responsible for supervising the Scout leaders and volunteers for the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by their Scout leader and volunteer, Farnham.

41. At all relevant times the defendants held themselves out to the public as the owners of the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by their Scout leader and volunteer, Farnham.

42. At all relevant times the defendants materially benefited from the operation of the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by the defendants' Scout leader and volunteer, Farnham, including the services of Farnham and the services of those who managed and supervised Farnham.

43. At all relevant times the defendants, through their agents, servants, and employees, managed, maintained, operated, and controlled the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by the defendants' Scout leader and volunteer, Farnham, including its leaders and volunteers.

44. At all relevant times the defendants, through their agents, servants, and employees, managed, maintained, operated, and controlled the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by the defendants' Scout leader and volunteer, Farnham, including its policies and procedures regarding the sexual abuse of children.

45. At all relevant times Farnham was a Scout leader and volunteer of the defendants who Plaintiff believes held the position of Scout leader of the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by Farnham.

46. At all relevant times Farnham was on the staff of, was an agent of, or served as an employee or volunteer of the defendants.

47. At all relevant times Farnham was acting in the course and scope of his position with the defendants.

10

48.     When Plaintiff was a minor, he registered with the defendants as a member of their Boy Scout Troop and paid them a fee to participate as a member of their Boy Scout Troop, including its meetings, camping trips, merit badge activities, and other outings.

49.     At all relevant times the defendants, through their agents, servants, and employees, held Farnham out to the public, to Plaintiff, and to his parents, as their agent.

50.     At all relevant times the defendants, through their agents, servants, and employees, held Farnham out to the public, to Plaintiff, and to his parents, as having been vetted, screened, and approved to serve as one of their Scout leaders and volunteers.

51.     At all relevant times Plaintiff and his parents reasonably relied upon the acts and representations of the defendants, through their agents, servants, and employees, and reasonably believed that Farnham was one of their agents who was vetted, screened, and approved to serve as one of their Scout leaders and volunteers.

52.     At all relevant times Plaintiff and his parents trusted Farnham because the defendants held him out as someone who was safe and could be trusted with the supervision, care, custody, and control of Plaintiff.

53.     At all relevant times Plaintiff and his parents believed that the defendants would exercise such care as would a parent of ordinary prudence in comparable circumstances when those defendants assumed supervision, care, custody, and control of Plaintiff.

54.     CES sponsored the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by the defendants' Scout leader and volunteer, Farnham.

55.     CES hosted the meetings of Plaintiff's Boy Scout Troop and organized the Troop's Scouting activities and events, including meetings, camping trips, merit badge activities, and other outings.

11

56.    The defendants were responsible for selecting and supervising the Scout leaders and volunteers of Plaintiff's Boy Scout Troop, including the Troop's Scout leader and volunteer, Farnham, when he used that position with the defendants to sexually abuse Plaintiff.

57.    When Plaintiff was a minor, Farnham used his position as the defendants' Scout leader and volunteer to sexually abuse him.

58.    Plaintiff was sexually abused by Farnham when Plaintiff was approximately 12 to 14 years old.

59.    Based on the representations of the defendants that Farnham was safe and trustworthy, Plaintiff and his parents allowed Plaintiff to be under the supervision of, and in the care, custody, and control of the defendants, including when Plaintiff was sexually abused by Farnham.

60.    Neither Plaintiff nor his parents would have allowed him to be under the supervision of, or in the care, custody, or control of the defendants, or Farnham, if the defendants had disclosed to Plaintiff or his parents that Farnham was not safe and was not trustworthy, and that he in fact posed a danger to Plaintiff in that Farnham was likely to sexually abuse Plaintiff.

61.    Neither Plaintiff nor his parents would have paid the defendants to allow him to be a member of their Boy Scout Troop, or to participate in their Scouting activities, if the defendants had disclosed to Plaintiff or his parents that Farnham was not safe and was not trustworthy, and that he in fact posed a danger to Plaintiff in that Farnham was likely to sexually abuse Plaintiff.

62.    Neither Plaintiff nor his parents would have paid the defendants to allow him to be a member of their Boy Scout Troop, or to participate in their Scouting activities, if the defendants had disclosed to Plaintiff or his parents that they knew for years that sexual predators, like

Farnham, were using their positions as Scout leaders and volunteers to groom and to sexually abuse children.

63.     No parent of ordinary prudence in comparable circumstances would have allowed Plaintiff to be under the supervision of, or in the care, custody, or control of the defendants or Farnham if the defendants had disclosed to Plaintiff or his parents that Farnham was not safe and was not trustworthy, and that he in fact posed a danger to Plaintiff in that Farnham was likely to sexually abuse him.

64.     From approximately 1967 through 1969, Farnham used his position of trust and authority as a Scout leader and volunteer of the defendants to groom Plaintiff and to sexually abuse him, including during Scout camping trips, Scout meetings, and Scout Camp when Plaintiff was under the supervision of, and in the care, custody, or control of, the defendants.

65.     The defendants' Scout leader and volunteer, Farnham, sexually abused Plaintiff multiple times.

66.     The sexual abuse by the defendants' Scout leader and volunteer, Farnham, included, but was not limited to, Farnham fondling and attemping to orally copulate Plaintiff; and Farnham masturbating himself in front of Plaintiff.

67.     The sexual abuse by the defendants' Scout leader and volunteer, Farnham, occurred using property that was owned, operated, and/or controlled by the defendants, including Farnham's residence, Plaintiff's tent, and Philmont Scout Ranch, during which time Plaintiff was in the care, custody, or control of the defendants.

68.     The sexual abuse by the defendants' Scout leader and volunteer, Farnham, occurred during activities that were sponsored by the defendants, or directly as a result of activities that

13

were sponsored by the defendants, including, but not limited to, Scout camping trips, Scout meetings, and Scout Camp.

69.    At all relevant times the defendants, through their agents, servants, and employees, knew or should have known that Farnham was a sexual abuser of children who would use his position with them to sexually abuse Plaintiff and other children.

70.    The defendants knew or should have known that Farnham was likely to sexually abuse children, including Plaintiff.

71.    At all relevant times the defendants, through their agents, servants, and employees, knew or should have known that the sexual abuse by Farnham of Plaintiff was ongoing.

72.    At all relevant times it was reasonably foreseeable to the defendants, through their agents, servants, and employees, that Farnham's sexual abuse of children would likely result in injury to others, including the sexual abuse of Plaintiff and other children by Farnham.

73.    Before and during the time he sexually abused Plaintiff, the defendants, through their agents, servants, and employees, knew or should have known that Farnham was sexually abusing Plaintiff and other children.

74.    The defendants, through their agents, servants, and employees, knew or should have known before and during Farnham's sexual abuse of Plaintiff that Scout leaders, volunteers, and other persons who worked with youth, including other Scout leaders and volunteers, had used their positions to groom and to sexually abuse children.

75.    The defendants, through their agents, servants, and employees, knew or should have known before and during Farnham's sexual abuse of Plaintiff that such Scout leaders, volunteers, and other persons who worked with youth could not be "cured" through treatment or counseling.

76.    The defendants, through their agents, servants, and employees, concealed the sexual abuse of children by Farnham in order to conceal their own bad acts in failing to protect children from Farnham, to protect their reputation, and to prevent victims of such sexual abuse by Farnham and other Scout leaders and volunteers from coming forward during the extremely limited statute of limitations prior to the enactment of the current law, despite knowing that Farnham and other abusers in their ranks would continue to molest children.

77.    The defendants, through their agents, servants, and employees, consciously and recklessly disregarded their knowledge that Farnham would use his position with the defendants to sexually abuse children, including Plaintiff.

78.    The defendants, through their agents, servants, and employees, disregarded their knowledge that Farnham would use his position with them to sexually abuse children, including Plaintiff.

79.    The defendants, through their agents, servants, and employees, acted in concert with each other and/or with Farnham to conceal the danger that Farnham posed to children, including Plaintiff, so that Farnham could continue serving them despite their knowledge of that danger.

80.    The defendants, through their agents, servants, and employees, knew that their negligent, reckless, and outrageous conduct would inflict severe emotional and psychological distress, as well as personal physical injury, on others, including Plaintiff, and he did in fact suffer severe emotional and psychological distress and personal physical injury as a result of their wrongful conduct.

81.    By reason of the wrongful acts of the defendants as detailed herein, Plaintiff sustained physical and psychological injuries, including but not limited to, severe emotional and

psychological distress, humiliation, fright, dissociation, anger, depression, anxiety, family turmoil and loss of faith, a severe shock to his nervous system, physical pain and mental anguish, and emotional and psychological damage, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature, and Plaintiff has and/or will become obligated to expend sums of money for treatment.

## VI.    CAUSES OF ACTION

### A.    FIRST CAUSE OF ACTION – NEGLIGENCE

82.    Plaintiff D.A. repeats and re-alleges all of his allegations above and below.

83.    The defendants had a duty to take reasonable steps to protect Plaintiff from foreseeable harm when he was in their care, custody, and control, including when he was a paying member of their Boy Scout Troop and when he was participarting in their Scouting activities.

84.    The defendants also had a duty to take reasonable steps to prevent Farnham from using the tasks, premises, and instrumentalities of his position as their Scout leader and volunteer to target, groom, and sexually abuse children, including Plaintiff.

85.    The defendants had a duty to warn, train, or educate their Scout leaders, volunteers, and youth members, including Plaintiff, about the danger of sexual abuse by Scout leaders and volunteers who were involved in their Scouting program and how to avoid or minimize such danger.

86.    The defendants breached each of the foregoing duties by failing to exercise reasonable care to prevent their Scout leader and volunteer, Farnham, from using his position with the defendants to sexually abuse Plaintiff when Plaintiff was in the care, custody, or control of the defendants.

87.    In breaching their duties, including hiring, retaining, and failing to supervise Farnham; giving Farnham access to children; entrusting their tasks, premises, and instrumentalities

to Farnham; failing to train their personnel in the signs of sexual predation and to protect children from sexual abuse and other harm; failing to warn Plaintiff, his parents, and other parents of the danger of sexual abuse; and failing to create a safe and secure environment for Plaintiff and other children who were under their supervision and in their care, custody, and control, the defendants created a foreseeable risk that Plaintiff would be sexually abused by Farnham.

88.     As a direct and proximate result of the acts and omissions of the defendants, their Scout leader and volunteer, Farnham, groomed and sexually abused Plaintiff, which has caused Plaintiff to suffer general and special damages as more fully described herein.

## VII.    CPLR 1603 – NO APPORTIONMENT OF LIABILITY

89.     Pursuant to CPLR 1603, the foregoing causes of action are exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602, including but not limited to, CPLR 1602(2), CPLR 1602(5), 1602(7) and 1602(11), thus precluding defendants from limiting their liability by apportioning some portion of liability to any joint tortfeasor.

## VIII.    PRAYER FOR RELIEF

90.     Plaintiff demands judgment against the defendants named in his causes of action, together with compensatory and punitive damages to be determined at trial, and the interest, cost, and disbursements pursuant to his causes of action, and such other and further relief as the Court deems just and proper.

91.     Plaintiff specifically reserves the right to pursue additional causes of action, other than those outlined above, that are supported by the facts pleaded or that may be supported by other facts learned in discovery.

Dated:  July 23, 2021

17

MARSH LAW FIRM PLLC

By _____
     James R. Marsh
     jamesmarsh@marsh.law
     31 Hudson Yards, 11th Floor
     New York, NY 10001-2170
     Phone: 212-372-3030

PFAU COCHRAN VERTETIS AMALA PLLC

By _____
     Vincent T. Nappo
     vnappo@pcvalaw.com
     Anelga Doumanian
     adoumanian@pcvalaw.com
     31 Hudson Yards, 11th Floor
     New York, NY 10001-2170

     Attorneys for Plaintiff

18