### Exhibit D

**Form of Document Agreement**

**You may access a full and complete copy of the Document Agreement, free of charge, at <u>https://omniagentsolutions.com/bsa-plansupplement</u>.**

DRAFT
SUBJECT TO FURTHER NEGOTIATION

## DOCUMENT AGREEMENT[1]

In connection with the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, dated as of September 30, 2021, including all exhibits and schedules thereto, and as the same may from time to time be amended or modified and as confirmed by order of the United States Bankruptcy Court for the District of Delaware (the "**Plan**"), this agreement ("**Agreement**") is made, effective as of the Effective Date of the Plan, by and among (i) the BSA Settlement Trust (the "**Trust**"); (ii) Boy Scouts of America and its affiliates that are debtors-in-possession or, post-Effective Date, reorganized debtors (collectively, the "**Reorganized BSA**"); (iii) each of the Related Non-Debtor Entities; (iv) each Local Council that is a Protected Party under the Plan; and (v) each Contributing Chartered Organization that is a Protected Party under the Plan (each a "**Party**" or collectively the "**Parties**"). Each Party that is not the Trust shall be a "**Non-Trust Party**" or, collectively, the "**Non-Trust Parties**") under this Agreement. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in **Exhibit A** hereto or, if not defined in Exhibit A, as defined in the Plan.

## RECITALS

**WHEREAS**, among other instances, Article IV.R and IV.S of the Plan contemplates that a Document Agreement will be executed among the Parties to provide for the process whereby (i) certain documents, books and records of Reorganized BSA related or pertaining to Abuse Claims will be transferred, or otherwise made available, to the Trust, and (ii) the Non-Trust Parties will cooperate with the Trust's investigation, preservation and pursuit of the Settlement Trust Assets, including the Insurance Assignment, and the Settlement Trust Causes of Action (the "**Assigned Claims**"); and

**WHEREAS**, in consideration of the above-stated premises, the mutual covenants contained herein, and for good and valuable consideration, the Parties agree as follows:

## ARTICLE I
## TRANSFER OF CLAIM RECORDS

**Section 1.1.**    On or before the later of [●] days after (i) the Effective Date (the period ending on such date, the "**Transfer Period**"), the Reorganized BSA agrees to use its commercially reasonable efforts to collect, copy, and transfer or assign to the Trust, following a commercially reasonable search, the Documents[2] (that previously have not been produced in the bankruptcy litigation): (i)  pertaining to pending, open Abuse Claims as of the petition date; and (ii) necessary to enable the prosecution of the Insurance Coverage Actions, in each case, inclusive of documents

---

[1]    This document remain subject to ongoing review and material revision in all respects. The Debtors, Coalition, the Future Claimants' Representative, the Ad Hoc Committee, the Creditors' Committee, JPM, Hartford, and TCJC are each continuing to review the documents that are part of the Plan Supplement, and each of their respective rights are reserved with respect to the Plan Supplement and the information contained therein, as applicable.

[2]    The term "**Document**" shall refer to all documents, data, testing, information, compilations, physical evidence, correspondence, communications, written materials, records and writings of any type or description, however created, reproduced or retrieved, and in every form in the possession of the Reorganized BSA, including, without limitation, databases, computer/electronic files, drafts, and partially completed documents.

that are the subject of any purported privilege or protections including, but not limited to, any attorney-client privilege, work-product privilege, Common-Interest Communications with Insurers, protection or privilege granted by joint defense, common interest, and/or confidentiality agreement or other privilege or immunity  (the "**Claim Records**").   The Parties shall agree to reasonably negotiate the categories of specific Documents included in the definition of Claims Records, including any non-duplicative Documents that may be in the possession of the Non-Trust Parties that are not otherwise transferred under this Agreement.

Section 1.2.    During the Transfer Period and for at least 6 months thereafter the Reorganized BSA shall preserve, or cause to be preserved, the Claim Records.

Section 1.3.    Pursuant to Article IV.S, any attorney-client privilege, work-product privilege, Common-Interest Communications with Insurers, protection or privilege granted by joint defense, common interest, and/or confidentiality agreement or other privilege or immunity attaching to any Claim Records, shall be irrevocably transferred to and vested in the Settlement Trustee (and such successor Settlement Trustee, if applicable) as of the Effective Date.  For the avoidance of doubt, the transfer or assignment of any Privileged Information is vested solely in the Settlement Trustee and not in the Settlement Trust, the STAC, the Future Claimant's Representative, the Special Reviewer, the SASAC, any other person, committee or subcomponent of the Settlement Trust, or any other person (including counsel and other professionals) who has been engaged by, represents, or has represented any holder of an Abuse Claim.

The Settlement Trustee shall be permitted to share Privileged Information with any professional or counsel retained by the Settlement Trust; provided, however, that the Settlement Trustee shall not share Privileged Information with (i) the STAC, (ii)  any third party to the extent that sharing the Privileged Information would result in a waiver of such privilege, and (iii) any holder of an Abuse Claim except as required by law.  The Settlement Trustee's receipt of Privileged Materials shall be without waiver and in recognition of the joint and/or successorship interest of the Trust and the Settlement Trustee's performance of his or her duties in administering the Trust.  Notwithstanding anything to the contrary herein, the Reorganized BSA or, as applicable, any Non-Trust Party shall not be required, except by agreement or order of an appropriate court, to produce or make available for inspection to the Trust any information that is not a Claim Record. Further, for the avoidance of doubt, notwithstanding the foregoing, nothing in this Agreement shall preclude the Settlement Trustee from providing Privileged Material or other information provided pursuant to this Agreement to any Insurer as necessary to preserve, secure, or obtain the benefit of the Abuse Insurance Policy at the Trust's sole discretion and without further authorization from the Reorganized BSA and/or Non-Trust Party, as applicable.

Section 1.4.    To the extent that Claim Records previously were shared between or among a transferring party and a third party that is not a Party to this Agreement and are protected by the common interest doctrine, the transferring party will request via letter the necessary third-party authorization or approval to transfer such records to the Trust in accordance with this Agreement. To the extent any Claim Records in the possession of a third-party that is not a Party to this Agreement is protected by the attorney-client privilege, the work-product privilege, a common-interest agreement or privilege, or any other privilege or immunity, the transferring party shall provide the necessary cooperation and consent to assist the Trust to obtain such Claim Records for the purposes set forth in Section 1.7 below. For purposes of clarity, no Party shall be required to

9

provide information or documents that the provision of which would violate any law or constitute a breach of any agreement to which such producing Party is a party.

**Section 1.5.**    The Trust and Settlement Trustee shall use any Claim Records that are provided to the Trust solely for Trust purposes, including: (i) preserving, maximizing, and administering the Settlement Trust Assets; and (ii) processing, evaluating, defending, resolving, liquidating, and/or paying all compensable Abuse Claims in accordance with the Settlement Trust Documents.

**Section 1.6.**    Within a reasonable time following the transfer of the Claim Records, the Reorganized BSA will provide the Trust with a factually accurate declaration or declarations that establish, to the greatest extent possible, the authentication of the Claim Records and sufficient information concerning these materials to facilitate their admission into evidence.  To the greatest extent possible, such declaration shall be in a form sufficient to render the Claim Records self-authenticating in accordance with Federal Rule of Evidence 902 (or an equivalent rule under applicable state or foreign law) and business records in accordance with Federal Rule of Evidence 803(6) (or an equivalent rule under applicable state or foreign law).

The producing Parties shall have no duty to check or verify the accuracy of any information contained in the Claim Records and do not make any representation or warranty, express or implied, as to the accuracy of such information.  The producing Parties shall not have any liability to the Trust, or any other Party or entity, arising out of or relating to the use of the Claim Records by the Trust or any errors or omissions therefrom.

**Section 1.7.**    In the event of a dispute during or after the Transfer Period regarding whether any Document should be produced to the Trust, such dispute shall be fully and finally resolved by a neutral selected by the Trust and the producing Party.  If such Parties cannot agree on the selection of a neutral, then the Trust shall petition the Bankruptcy Court to have a neutral appointed for the purposes of resolving the discovery dispute on a binding basis.  If the dispute relates to the assertion of common interest privilege shared with a third-party, then the party asserting this privilege will notify the third-party of the dispute as soon as reasonably possible and the third-party will be permitted to join in defending the privilege as part of the dispute resolution process.  The neutral's fee and all costs are incurred by the Trust in connection with resolving a dispute under this Section 1.7.

**Section 1.8.**    The Parties each hereby authorize the Future Claimants' Representative, the Tort Claimants' Committee, the Coalition, any Insurer, and their respective agents and professionals to provide to the Trust all data and any other information concerning the Abuse Claims, Settlement Trust Assets and Abuse Insurance Policies that were provided by the Non-Trust Parties or any third-party, directly or indirectly, to the Future Claimants' Representative, the Tort Claimants' Committee, the Coalition, or their respective agents or professionals on or prior to the Effective Date, notwithstanding any agreement or stipulation entered into prior to the Effective Date to the contrary.

**ARTICLE II**
**TESTIMONY AND COOPERATION**

**Section 2.1.**    The Non-Trust Parties agree to use commercially reasonable efforts to cooperate with the Trust specifically as follows in connection with, and in anticipation of, the Trust's litigation of any Settlement Trust Assets and Abuse Claims:

a.    All costs and expenses of a Non-Trust Party in complying with the transfer of Claim Records through the Transfer Period and, if such transfer of Claim Records occurs subsequent to the close of the Transfer Period then continuing until complete compliance with the turnover and transfer obligations of Claim Records under the Plan and this Agreement, shall be borne by the Settlement Trust or in such amounts to be mutually agreed between the Parties.  Records will be produced in the existing format and to the extent required the Trust will obtain any licenses required to access the data.

b.    After the conclusion of the Transfer Period and until [365] days after the Effective Date (such period, the "**Testimony Period**"), upon written request (including via e-mail) of the Trust (or its professionals) providing reasonable advance notice, the Non-Trust Parties will provide the Trust (or its professionals) reasonable access to witnesses then currently employed by the Non-Trust Parties or those former employees who have continuing contractual obligations to cooperate with the Non-Trust Parties that would enable the Non-Trust Parties to request their participation in the form of *de bene esse* depositions, or other mutually agreeable procedure, without the need for a formal subpoena, notice of deposition, or other permissible discovery request, in accordance with the Federal Rules of Civil Procedure (a "**Discovery Request**"), to the extent the Trust and the Non-Trust Parties reasonably agree, or a Court orders over a Non-Trust Party's objection that the Trust could obtain the same by Discovery Request, with such information to be used solely for the purposes set forth herein.  The Trust and the Non-Trust Parties agree that any *de bene esse* depositions will be subject to all of the other conditions of this Agreement, and that the Non-Trust Parties will cooperate in their completion before the end of the Testimony Period.  Such testimony shall include, without limitation, *de bene esse* depositions of those witnesses to be identified on or around [●], 2022 and agreed to by the Reorganized BSA within a reasonable time thereafter.  Pursuant to the Plan, a Non-Trust Party's reasonable expenses for complying with the Trust's requests during the Testimony Period (and thereafter, if applicable) shall be reimbursed by the Trust as a Settlement Trust Expense.

c.    To the extent necessary, and upon additional reasonable request, use reasonable efforts to identify third-party witnesses and cooperate to secure testimony of third-party witnesses.  Pursuant to the Plan, a Non-Trust Party's reasonable expenses for complying with the Trust's requests during

9

the Testimony Period (and thereafter, if applicable) shall be reimbursed by the Trust as a Settlement Trust Expense.

**Section 2.2.**    The Trust shall be solely responsible for addressing and responding to all Discovery Requests directed to the Trust or the Non-Trust Parties related to prosecution of the Settlement Trust Assets and the Abuse Claims.  To the extent a formal or informal document request, subpoena, or other demand for production of Documents of Claim Records produced in accordance with this Agreement is served upon the Non-Trust Parties by any party in an action in which the Trust is a named party and the Trust is in possession, custody, or control of all or part of the responsive documents, the Trust shall undertake to produce such documents instead of the Non-Trust Party.

### ARTICLE III
### MISCELLANEOUS

**Section 3.1.**    <u>Preservation of Privileges and Defenses; Inadvertent Production</u>.  To the extent any Non-Trust Party inadvertently transfers to the Trust any documents which the Non-Trust Party contends are exempted from being provided as being either privileged or not a Claim Record pursuant to Article I of this Agreement (an "**Inadvertently Provided Document**"), the Non-Trust Party may, in writing request the return of any Inadvertently Provided Document.  A request for the return of an Inadvertently Provided Document shall identify the document inadvertently provided and the basis for withholding such document from production.  If the Non-Trust Party requests the return, pursuant to this paragraph, of any Inadvertently Provided Document then in the custody of the Trust, the Trust shall either (i) within ten (10) business days (a) return or destroy the Inadvertently Provided Document and all copies thereof; (b) undertake reasonable measures to obtain or confirm the destruction of any copies it produced to other parties, and (c) destroy all notes or other work product reflecting the content of such Inadvertently Provided Document, alternatively, (ii) within 10 days of receipt of such a request, the Trust may challenge such request in accordance with Section 1.7, but shall not contend that the provision of the document constituted a waiver of any applicable privilege or immunity.  For the avoidance of doubt, the Trust is not required to take the steps set forth in this Section 3.1(i) if the Trust has commenced a challenge pursuant to this Section 3.1(ii) and such challenge has not been fully resolved.

**Section 3.2.**    <u>Confidentiality</u>.

a.    Other than as provided in Section 1.3 of this Agreement, the Trust shall not provide any third party (other than professionals, advisors, and counsel retained by the Trust) access to any document that was previously designated Confidential or Highly Confidential or filed under seal pursuant to the [Protective Order] (such order, the "**Protective Order**," and all such material, the "**Subject Material**") unless such third party is properly subject to and has executed a separate protective order, and fourteen (14) business days' notice is given to the party that produced the Subject Material.  Such access shall be subject to the terms of this Agreement, including, without limitation, Sections 1.3 and 3.2(c), and the Subject Material shall maintain its Confidential or Highly Confidential designation. For purposes of clarity,

9

no Confidential or Highly Confidential Material may be publicly disseminated without prior notice and written consent of the producing Party designating such materials as Confidential or Highly Confidential.

b.      The Non-Trust Parties shall have the ability to designate information produced pursuant to this Agreement as "Highly Confidential."

c.      The terms of the Protective Order shall apply in full to the Subject Material and any other information provided pursuant to the terms of this Agreement with the following modifications:

(i)      subject to Section 1.3 of this Agreement if the Non-Trust Parties designate information Highly Confidential pursuant to Section 3.2(b) of this Agreement (the "**Highly Confidential Material**"), then the Trust may share such information solely with professionals, advisors, and counsel retained by the Trust (collectively, the "**Recipients**");

(iii)      to the extent reasonably practical and so long as the information is otherwise discoverable, the Recipient shall provide thirty (30) business days' notice (unless exigent circumstances do not afford time for such notice, in which case the Recipient shall endeavor to provide as much notice as possible) to the Non-Trust Party before disclosing any Highly Confidential Material to the Bankruptcy Court or other court of competent jurisdiction orally or in writing to allow the Non-Trust Party to obtain a protective order or agreement (if they choose to do so), or alternatively, the Recipient shall make any such disclosure under seal, unless such court orders otherwise;

(iv)      in the event that the Recipient is required or requested (a) by a court of competent jurisdiction, (b) in connection with a foreign proceeding or litigation, or (c) by a federal, state, or local governmental or regulatory body, in each case, to disclose any Highly Confidential Material supplied to the Recipient, the Recipient will provide the Non-Trust Party with prompt written notice of such request or requirements so that the Reorganized BSA and/or their affiliates may seek, at their sole cost and expense, an appropriate protective order or agreement and/or seek appropriate approvals from the Bankruptcy Court and/or any other court, tribunal, or governmental or regulatory body having jurisdiction over the relevant action, litigation, proceeding, or hearing, as applicable; and in the absence of a protective order or the receipt of a waiver hereunder, the Recipient may only disclose, without liability hereunder, that portion of the Highly Confidential Material that it is legally compelled to disclose; and

(v)      to the extent that the Recipient is subject to examination by a regulatory authority or bank auditor, it shall not be in breach of its obligations hereunder if it permits such authority or bank auditor to review the Highly Confidential Material, without notice to any persons, in connection with a review of the Recipient's files.

**Section 3.3.**    <u>Costs</u>. So long as the Non-Trust Parties have substantially performed all of their obligations under this Agreement and the Plan to transfer all Claim Records by the Transfer Period, the Trust shall pay all documented and reasonable costs associated with any obligations

9

arising out of this Agreement, including without limitation any reasonable and documented costs or expenses incurred by the Reorganized BSA after the Transfer Period associated with formal or informal discovery related to the Trust Settlement Assets and Abuse Claims, and any reasonable and documented costs or expenses associated with testimony contemplated under Section [2.1.c.].

Section 3.4.    <u>Reasonableness of Cooperation Requirements</u>.  After the conclusion of the Transfer Period and the completion of  any Party's obligations to transfer all Claim Records, every obligation of the Non-Trust Parties under this Agreement from the conclusion of the Transfer Period and thereafter shall be subject to commercial reasonableness, and the Trust shall use reasonable best efforts to provide the Non-Trust Parties as much notice as is reasonably practicable in requesting cooperation under this Agreement for a period of two years after the Effective Date. The Parties will endeavor to work constructively to structure any access to witnesses and Claim Records so as not to materially detract from or disrupt the Non-Trust Parties' commercial operations.

Section 3.5.    Nothing in this Agreement shall require any Party or any third party to create any new Documents or to compile or organize any data contained in existing Documents into any new Documents.  Nothing in this Agreement shall prevent any Party or any third party from creating any new Documents or to compile or organize any data contained in existing Documents into any new Documents.

Section 3.6.    The Non-Trust Parties shall use commercially reasonable efforts to continue to cooperate with the Trust to facilitate retrieval, copying and/or delivery of, or access to, any Document not initially provided to the Trust in accordance with this Agreement.

Section 3.7.    Upon request by the Trust, the Non-Trust Parties shall certify that they used commercially reasonable efforts to find a specific Document that Reorganized BSA were required to produce under the terms of this Agreement.

Section 3.8.    <u>Notices</u>.    All notices, requests, or other communications required or permitted to be made in accordance with this Agreement shall be in writing and shall be effective when either served by hand delivery, electronic mail, electronic facsimile transmission, express overnight courier service, or by registered or certified mail, return receipt requested, addressed to the parties at their respective addresses set forth below, or to such other address or addresses as any Party may later specify by written notice to the other Parties:

      a.      To the Trust:

            [●]

      b.      To the Reorganized BSA

            [●]

      c.      To the [●]:

            [●]

**Section 3.9.**  Effectiveness.  This Agreement shall become effective on the Effective Date of the Plan.

**Section 3.10.**  Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement.

**Section 3.11.**  Governing Law.  This Agreement shall be construed in accordance with the laws of the State of Delaware, without regard to any Delaware conflict of law principles that would result in the application of laws of any other jurisdiction.

**Section 3.12.**  Consent to Jurisdiction.  The Parties mutually agree that, as relates to the Parties' obligations under this Agreement, the Bankruptcy Court, or the District Court after all of the Debtors' chapter 11 cases are closed, shall retain jurisdiction over all matters regarding the interpretation, implementation, and enforcement of this Agreement and the Parties consent to personal jurisdiction and venue in the Bankruptcy Court.

**Section 3.13.**  Severability; Validity.  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but to the extent that any provision of this Agreement or the application thereof to any person or circumstance is held invalid or unenforceable, the remainder of this Agreement, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless doing so would alter the fundamental agreements expressed in this Agreement, and to such end, the provisions of this Agreement are agreed to be severable.

**Section 3.14.**  No Partnership Agreement.  Nothing contained in this Agreement shall create or be deemed to create an employment, agency, fiduciary, joint venture, or partnership relationship between any of the Parties, on the one hand, or any of such other Parties' employees, on the other hand.

**Section 3.15.**  No Waiver.  The Parties agree that no failure or delay by any Party in exercising any right, power, or privilege hereunder will operate as a waiver thereof, and that no single or partial exercise thereof will preclude any other or further exercise thereof or the exercise of any right, power, and privilege hereunder.

**Section 3.16.**  Entire Agreement.  This Agreement and the Plan contain the entire agreement of the Parties concerning the subject matter hereof, and supersede all prior representations and agreements between or among the Parties as to such subject matter.  No modification of this Agreement or waiver of the terms and conditions hereof will be binding upon the Parties unless approved in writing by the Parties.

**Section 3.17.**  Authorization.  Each of the undersigned individuals represents and warrants that he/she has the power and authority to enter into this Agreement and bind their respective companies or trust as its authorized representatives.

**Section 3.18.**  Titles.  The section titles used herein are for convenience only and shall not be considered in construing or interpreting any of the provisions of this Agreement

9

**Section 3.19.**  <u>Binding Effect</u>.  The Parties agree that this Agreement is for the benefit of and shall be binding upon the Parties and their respective representatives, transferees, successors, and assigns.

[SIGNATURES ON FOLLOWING PAGE FOR ALL PARTIES]

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective representatives thereunto duly authorized as of the Effective Date of the Plan.
**[]Reserved]**

# EXHBIT A

[RESERVED]