**<u>Exhibit G</u>**

**Form of Leaseback Requirement Agreement**

**You may access a full and complete copy of the Form of Leaseback Requirement Agreement, free of charge, at <u>https://omniagentsolutions.com/bsa-plansupplement</u>.**

DRAFT

**INDUSTRIAL BUILDING LEASE AGREEMENT**[1]

**BETWEEN**

**[●], AS LANDLORD**

**AND**

**BOY SCOUTS OF AMERICA, AS TENANT**

**2109 & 2121 WESTINGHOUSE BOULEVARD**
**CHARLOTTE, NORTH CAROLINA**

---

[1] This document remains subject to ongoing review and material revision in all respects.  The Debtors, Coalition, the Future Claimants' Representative, the Ad Hoc Committee, the Creditors' Committee, JPM, Hartford, and TCJC are each continuing to review the documents that are part of the Plan Supplement, and each of their respective rights are reserved with respect to the Plan Supplement and the information contained therein, as applicable.

## TABLE OF CONTENTS

**Page**

1.    **DEFINITIONS** ....................................................................................................1

2.    **LEASE GRANT/POSSESSION** ........................................................................4

3.    **USE** ....................................................................................................................6

4.    **RENT** .................................................................................................................6

5.    **SECURITY DEPOSIT** ......................................................................................7

6.    **UTILITIES** ........................................................................................................7

7.    **SIGNAGE** ..........................................................................................................8

8.    **MAINTENANCE, REPAIRS AND ALTERATIONS** .....................................8

9.    **ASSIGNMENT AND SUBLETTING** .............................................................11

10.   **MECHANIC'S LIENS** .....................................................................................12

11.   **INSURANCE** ...................................................................................................13

12.   **INDEMNITY** ...................................................................................................14

13.   **DAMAGES FROM CERTAIN CAUSES** ........................................................15

14.   **CASUALTY DAMAGE** ...................................................................................15

15.   **CONDEMNATION** ..........................................................................................16

16.   **EVENTS OF DEFAULT** ..................................................................................16

17.   **REMEDIES** ......................................................................................................17

18.   **NO WAIVER** ....................................................................................................20

19.   **PEACEFUL ENJOYMENT** .............................................................................20

20.   **INTENTIONALLY OMITTED** ........................................................................20

21.   **HOLDING OVER** .............................................................................................20

22.   **SUBORDINATION TO MORTGAGE; ESTOPPEL CERTIFICATE** .........21

23.   **NOTICE** ............................................................................................................22

24.    **SURRENDER OF PREMISES**................................................................22

25.    **RIGHTS RESERVED TO LANDLORD** ...........................................22

26.    **MISCELLANEOUS** ........................................................................23

27.    **NO OFFER**....................................................................................24

28.    **ENTIRE AGREEMENT** ...............................................................25

29.    **LIMITATION OF LIABILITY**......................................................25

30.    **HAZARDOUS SUBSTANCES**......................................................25

EXHIBIT A-OUTLINE AND LOCATION OF PREMISES

EXHIBIT A-1-LEGAL DESCRIPTION OF LAND OF INDUSTRIAL BUILDING

EXHIBIT A-2- LEGAL DESCRIPTION OF LAND OF RETAIL BUILDING

EXHIBIT B-RULES AND REGULATIONS

EXHIBIT C-PAYMENT OF OPERATING EXPENSES

EXHIBIT D-INTENTIONALLY OMITTED

EXHIBIT E-ADDITIONAL PROVISIONS

EXHIBIT F-COMMENCEMENT LETTER

## INDUSTRIAL BUILDING LEASE AGREEMENT

This Industrial Building Lease Agreement (the "**Lease**") is made and entered into as of this [●] day of [●], 2021, between [●], a(n) [●] ("**Landlord**"), and **BOY SCOUTS OF AMERICA**, a congressionally chartered non-profit corporation under title 36 of the United States Code ("**Tenant**").

W I T N E S S E T H:

1.    **Definitions**

The following are definitions of certain of the defined terms used in this Lease.  The definition of other defined terms are found throughout this Lease.

A.    "**Additional Rent**" shall mean Tenant's Pro Rata Share of Operating Expenses (hereinafter defined) and any other sums (exclusive of Base Rent) that are required to be paid to Landlord by Tenant hereunder, which sums are deemed to be Additional Rent under this Lease.  Tenant's Pro Rata Share of Operating Expenses due for the first month of the Lease Term shall be paid by Tenant to Landlord contemporaneously with Tenant's execution hereof.

B.    "**Base Rent**": Base Rent shall be paid according to the following schedule, subject to the provisions of Section 4 hereof.  As used herein, "**Lease Month**" shall mean a period of time commencing on the same numeric day as the Commencement Date and ending on (but not including) the day in the next calendar month that is the same numeric date as the Commencement Date; *provided*, *however*, that if the Commencement Date does not occur on the first day of a calendar month, then the first (1st) Lease Month shall be extended to end on the last day of the first (1st) full calendar month following the Commencement Date, Tenant shall pay Base Rent during the resulting partial calendar month at the same rate payable for the first (1st) Lease Month (prorated based on the number of days in such partial calendar month), and the succeeding Lease Months shall commence on the first day of each calendar month thereafter.

| PERIOD | ANNUAL BASE RENT RATE PER SQUARE FOOT | ANNUAL BASE RENT | MONTHLY INSTALLMENTS OF BASE RENT |
|---|---|---|---|
| Year 1 | $[●] | $[●] | $[●] |
| Year 2 | $[●] | $[●] | $[●] |

The Base Rent due for the first month of the Lease Term shall be paid by Tenant to Landlord contemporaneously with Tenant's execution hereof.

C.    "**Broker**" shall mean, collectively, [●] (representing Landlord).

1

D.      "**Buildings**" shall mean, collectively, the Industrial Building and the Retail Building.

E.      "**Business Day(s)**" shall mean Mondays through Fridays exclusive of the normal business holidays.

F.      "**Common Areas**" shall mean those areas located within the Project designated by Landlord, from time to time, for the common use or benefit of tenants generally and/or the public.

G.      "**Default Rate**" shall mean the lower of (i) [●] percent ([●]%) per annum, or (ii) the highest rate of interest from time-to-time permitted under applicable federal and state law.

H.      "**Guarantor(s)**" shall mean any party that agrees in writing to guarantee Tenant's obligations under the Lease.  As of the date of this Lease, there are no Guarantor(s).

I.      "**Industrial Building**" shall mean that certain industrial building, having address of 2109 Westinghouse Boulevard, Charlotte, North Carolina located upon the real property described in **Exhibit A-1** attached hereto.

J.      "**Lease Term**" shall mean a period of [●] months commencing on the date Landlord acquires the Premises pursuant to that certain Purchase and Sale Agreement dated [●] (the "**Commencement Date**") and, unless sooner terminated as provided herein, ending on the last day of the [●] Lease Month thereafter (the "**Expiration Date**").

K.      "**Operating Expenses**" are defined in **Exhibit C** attached hereto.  Tenant's initial estimated monthly Operating Expenses payment is $[●].

L.      "**Notice Addresses**" shall mean the following addresses for Tenant and Landlord, respectively:

Tenant:

Boy Scouts of America
[●]
[●]
Attn:  [●]
Phone: [●]
Email: [●]

With a copy to:

Boy Scouts of America
1325 West Walnut Hill Lane
Irving, Texas 75038
Attention: Legal

<u>With a copy to</u>:

[●]
[●]
[●]
Attention: [●]
Phone: [●]
Email: [●]


<u>Landlord</u>:

[●]
[●]
[●]
Attn: [●]
Phone: [●]
Email: [●]

<u>With a copy to</u>:

[●]
[●]
[●]
Attn:  [●]
Phone: [●]
Email: [●]

Payments of Rent only shall be made payable to the order of Landlord at the following address:

[_____

_____

_____ ]


or such other name and address as Landlord shall, from time to time, designate in writing.

      M.    "**Permitted Use**" shall mean (i) with respect to the Industrial Building, receiving, storing, shipping and selling products, materials and merchandise made and/or distributed by Tenant, and related uses, and (ii) with respect to the Retail Building, selling products, materials and merchandise made by Tenant, and related uses.

N.    "**Premises**" shall mean, collectively, (i) the space containing approximately [●] square feet in the Industrial Building, (ii) the space containing approximately [●] square feet in the Retail Building, and outlined on **Exhibit A** to this Lease.

O.    "**Project**" shall mean the Buildings and the parcel(s) of land on which they are located, which land is described in **Exhibit A-1** and **Exhibit A-2** attached hereto, other buildings and improvements located on such land, adjacent parcels of land that Landlord operates jointly with the Buildings, if any, and other buildings and improvements located on such adjacent parcels of land.

P.    "**Retail Building**" shall mean that certain retail building, having address of 2121 Westinghouse Boulevard, Charlotte, North Carolina located upon the real property described in **Exhibit A-2** attached hereto.

Q.    "**Security Deposit**" shall mean the sum of [●] Dollars.  The Security Deposit shall be paid by Tenant to Landlord contemporaneously with Tenant's execution hereof.

R.    "**Square Footage in the Buildings**" shall mean [●] square feet.

S.    "**Square Footage in the Premises**" shall mean [●] square feet.

T.    "**Tenant's Pro Rata Share**" shall mean [●] percent ([●]%), being the Square Footage in the Premises divided by the Square Footage in the Buildings, expressed as a percentage.

2.    **Lease Grant/Possession**

A.    Subject to and upon the terms herein set forth, Landlord leases to Tenant and Tenant leases from Landlord the Premises on an "as is" basis (except as otherwise expressly set forth herein), together with the right, in common with others, to use the Common Areas. By taking possession of the Premises, Tenant is deemed to have accepted the Premises and agreed that the Premises is in good order and satisfactory condition, with no representation or warranty by Landlord as to the condition of the Premises or the Buildings or suitability thereof for Tenant's use.  **NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, ARE MADE REGARDING THE CONDITION OR SUITABILITY OF THE PREMISES ON THE COMMENCEMENT DATE AND TENANT HAS NOT RELIED ON ANY SUCH REPRESENTATIONS OR WARRANTIES. FURTHER, TO THE EXTENT PERMITTED BY LAW, TENANT WAIVES ANY IMPLIED WARRANTY OF SUITABILITY, HABITABILITY, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OF THE PREMISES OR OTHER IMPLIED WARRANTIES THAT LANDLORD WILL MAINTAIN OR REPAIR THE PREMISES OR ITS APPURTENANCES EXCEPT AS MAY BE CLEARLY AND EXPRESSLY PROVIDED IN THIS LEASE.**

B.    Intentionally Omitted.

C.    Intentionally Omitted.

D.    Option to Renew.

(1)    Provided that (i) this Lease is in full force and effect as of the date of the Renewal Notice (as defined below), and (ii) Tenant is not then in default under this Lease (beyond any applicable notice and cure period), Tenant shall have the option to extend the Lease Term for [●] periods of [●] years each (each a "**Renewal Term**"), commencing on the date immediately following the expiration of the then-current Lease Term.  Tenant may exercise such option by delivering written notice (the "**Renewal Notice**") to Landlord not less than [●] days prior to the expiration of the initial Lease Term or then-current Lease Term, as applicable.  Each Renewal Term, if properly exercised by Tenant as set forth herein, shall constitute an extension of the Lease Term and shall be upon all of the same terms and conditions then in effect under this Lease, except that the Base Rent for each Renewal Term shall be payable at a rate per annum as set forth below for the Premises.

First Renewal Term:

| PERIOD | ANNUAL BASE RENT RATE PER SQUARE FOOT | ANNUAL BASE RENT | MONTHLY INSTALLMENTS OF BASE RENT |
|--------|----------------------------------------|------------------|-----------------------------------|
| Year 3 | $[●] | $[●] | $[●] |
| Year 4 | $[●] | $[●] | $[●] |
| Year 5 | $[●] | $[●] | $[●] |
| Year 6 | $[●] | $[●] | $[●] |

Second Renewal Term:

| PERIOD | ANNUAL BASE RENT RATE PER SQUARE FOOT | ANNUAL BASE RENT | MONTHLY INSTALLMENTS OF BASE RENT |
|--------|----------------------------------------|------------------|-----------------------------------|
| Year 7 | $[●] | $[●] | $[●] |
| Year 8 | $[●] | $[●] | $[●] |
| Year 9 | $[●] | $[●] | $[●] |
| Year 10 | $[●] | $[●] | $[●] |

(2)    If Landlord has not received the Renewal Notice from Tenant one month prior to the Renewal Notice deadline, Landlord shall provide Tenant with notice that the Lease has not been renewed and will expire on the Expiration Date unless Tenant provides the Renewal Notice.  If Tenant fails to provide the Renewal Notice after receiving Landlord's notice, Tenant's right to extend the Lease Term for the Renewal Term shall automatically terminate and become null, void and of no force and effect.

3.     **Use**

The Premises shall be used for the Permitted Use and for no other purpose.  Tenant shall not conduct or give notice of any auction, liquidation, or going out of business sale on the Premises. Tenant agrees not to use or permit the use of the Premises for any purpose which is illegal or dangerous, which creates a nuisance or which would increase the cost of insurance coverage with respect to the Buildings.  Tenant will conduct its business and control its agents, servants, employees, customers, licensees, and invitees in such a manner as not to interfere with or disturb other tenants or Landlord in the management of the Project.  Tenant shall not permit any objectionable or unpleasant odors, smoke, dust, gas, noise, or vibrations to emanate from the Premises, or take any other action that would constitute a nuisance or would disturb, unreasonably interfere with, or endanger Landlord or any tenants of the Project.  Tenant will maintain the Premises in a clean and healthful condition, and comply with all laws, ordinances, orders, rules and regulations of any governmental entity with reference to the use, condition, configuration or occupancy of the Premises. Tenant shall not, and shall not allow its employees, agents, contractors or invitees, to bring into the Buildings or the Premises any dangerous or hazardous materials, except for customary office and cleaning supplies and products offered for sale in Tenant's ordinary course of business, provided Tenant uses, stores and disposes of the same in compliance with all applicable law.  Tenant, at its expense, will comply with the rules and regulations of the Buildings attached hereto as **Exhibit B** and such other rules and regulations adopted and altered by Landlord from time-to-time and will cause all of its agents, employees, invitees and visitors to do so.  All such changes to rules and regulations will be reasonable and shall be sent by Landlord to Tenant in writing.  In the event of a conflict between the rules and regulations and the terms of this Lease, the terms of this Lease shall control.  Landlord shall not knowingly enforce the rules and regulations against Tenant in a discriminatory manner.

4.     **Rent**

A.     Tenant covenants to pay to Landlord during the Lease Term, without any setoff or deduction except as otherwise expressly provided herein, the full amount of all Base Rent and Additional Rent due hereunder and the full amount of all such other sums of money as shall become due under this Lease, all of which hereinafter may be collectively called "**Rent**."  In addition, Tenant shall pay, as Additional Rent, all rent, sales and use taxes or other similar taxes, if any, levied or imposed by any city, state, county or other governmental body having authority, such payments to be in addition to all other payments required to be paid to Landlord by Tenant under this Lease.  Such payments shall be paid concurrently with the payments of the Rent on which the tax is based.  Base Rent and Additional Rent for each calendar year or portion thereof during the Lease Term, shall be due and payable in advance in monthly installments on the first day of each calendar month during the Lease Term, without demand.  If the Lease Term commences on a day other than the first day of a month or terminates on a day other than the last day of a month, then the installments of Base Rent and Additional Rent for such month or months shall be prorated, based on the number of days in such month.  All amounts received by Landlord from Tenant hereunder shall be applied first to the earliest accrued and unpaid Rent then outstanding.  Tenant's covenant to pay Rent shall be independent of every other covenant set forth in this Lease.

B.      To the extent allowed by law, all installments of Rent not paid when due shall bear interest at the Default Rate from the date due until paid, provided, Tenant shall be entitled to a grace period of three (3) days after notice from Landlord with respect to the first two (2) late payments in any calendar year.  In addition, if Tenant fails to pay any installment of Base Rent and Additional Rent or any other item of Rent when due and payable hereunder, a "**Late Charge**" equal to [●] percent ([●]%) of such unpaid amount will be due and payable immediately by Tenant to Landlord, provided, Tenant shall be entitled to a grace period of three (3) days after notice from Landlord with respect to the first two (2) late payments in any calendar year.

C.      The Additional Rent payable hereunder shall be adjusted from time-to-time in accordance with the provisions of **Exhibit C** attached hereto.

5.      **Security Deposit**

The Security Deposit shall be held by Landlord without liability for interest and as security for the performance by Tenant of Tenant's covenants and obligations under this Lease, it being expressly understood that the Security Deposit shall not be considered an advance payment of Rent or a measure of Tenant's liability for damages in case of default by Tenant.  Landlord shall not be required to keep the Security Deposit separate from its other accounts, shall have no fiduciary responsibilities or trust obligations whatsoever with regard to the Security Deposit.  Landlord may, from time-to-time, without prejudice to any other remedy and without waiving such default, use the Security Deposit to the extent necessary to cure or attempt to cure, in whole or in part, any default of Tenant hereunder.  Following any such application of the Security Deposit, Tenant shall pay to Landlord within five (5) days after demand the amount so applied in order to restore the Security Deposit to its original amount.  If Tenant is not in default at the termination of this Lease, beyond applicable notice and cure periods, the balance of the Security Deposit remaining after any such application shall be returned by Landlord to Tenant within sixty (60) days thereafter.  If Landlord transfers its interest in the Premises during the term of this Lease, Landlord shall assign the Security Deposit to the transferee and thereafter shall have no further liability for the return of such Security Deposit.

6.      **Utilities**

Tenant shall contract directly with utilities providers for all water, gas, heat, light, power, telephone, sewer, fire/life safety system monitoring charges and other utilities and services used on or from the Premises, together with any taxes, penalties, surcharges or the like pertaining thereto and any maintenance charges for utilities, as well as shall furnish all electric light bulbs and tubes.  To the extent possible, all utility services will be separately metered to the Premises and placed in Tenant's name.  If it is not possible to place any other utility service on a separate meter in Tenant's name, then all costs associated with the provision of such utility service to the Premises will, at Landlord's option, either: (a) be billed directly by Landlord to Tenant and paid by Tenant within 30 days after receipt of such billing; or (b) included as part of Operating Expenses and paid by Tenant in accordance with the provisions of **Exhibit C** attached hereto.  The failure by Landlord to any extent to furnish, or the interruption or termination of utilities in whole or in part, resulting from adherence to laws, regulations and administrative orders, wear, use, repairs, improvements

alterations or any other cause shall not render Landlord liable in any respect nor be construed as a constructive eviction of Tenant, nor give rise to an abatement of rent, nor relieve Tenant from the obligation to fulfill any covenant or agreement hereof.

7.    **Signage**

Tenant shall not make any changes to the exterior of the Premises, install any exterior lights, decorations, balloons, flags, pennants, banners, or painting, or erect or install any signs, windows or door lettering, placards, decorations, or advertising media of any type which can be viewed from the exterior of the Premises, without Landlord's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed.  All signs installed by Tenant shall be subject to any applicable governmental laws, ordinances, regulations, the sign criteria for the Project, and Landlord's or other architectural controls and other requirements.  Tenant shall maintain all signs upon the Premises and the Buildings in good condition and repair.  Tenant shall pay all costs associated with any signage installed by Tenant, including without limitation, installation expenses, maintenance and repair costs, utilities and insurance.  Tenant agrees that, subject to inclusion in Operating Expenses, Landlord shall have the right, after notice to Tenant, to temporarily remove and replace any of Tenant's signage in connection with and during the course of any reasonably necessary repairs, changes, alterations, modifications, renovations or additions to the Buildings.  Upon surrender or vacation of the Premises, Tenant shall remove all signs and repair, paint, and/or replace the building fascia surface to which its signs are attached.  All signs, blinds, draperies and other window treatment or bars or other security installations visible from outside the Premises shall be subject to Landlord's reasonable approval and conform in all respects to Landlord's requirements.

8.    **Maintenance, Repairs and Alterations**

A.    Except to the extent such obligations are imposed upon Landlord hereunder, Tenant shall, at its sole cost and expense, maintain the Premises in good order, condition and repair throughout the entire Lease Term, ordinary wear and tear excepted, including but not limited to, windows, glass, plate glass doors, any special office entry, interior walls and finish work, floors and floor covering, heating and air conditioning systems, lighting, electrical systems, plumbing systems, plumbing fixtures, loading dock equipment, loading doors, and exterior door seals and bumpers. Tenant agrees to keep the areas visible from outside the Premises in a neat, clean and attractive condition at all times.  Tenant shall be responsible for repair, maintenance and replacement, if necessary, of the HVAC system and equipment serving the Premises.  All such repairs, replacements or alterations shall be performed in accordance with Section 8.C below and the rules, policies and procedures reasonably enacted by Landlord from time to time for the performance of work in the Buildings.  Tenant shall, at its own costs and expense, enter into a regularly scheduled preventive maintenance/service contract with a maintenance contractor for servicing all hot water, heating and air conditioning systems and equipment within or exclusively serving the Premises.  The maintenance contractor and the contract must be approved by Landlord, which approval shall not be unreasonably withheld.  The service contract must include all services suggested by the equipment manufacturer within the operation/maintenance manual and must become effective (and a copy thereof delivered to Landlord) within thirty (30) days of the date Tenant takes possession of the Premises and provide for service not less than a quarterly basis.

Additionally, the service contract must provide that a copy of all service reports shall be delivered to Landlord promptly after Landlord's request therefor.  At least fourteen (14) days before the end of the Lease Term, Tenant shall deliver to Landlord a certificate from an engineer reasonably acceptable to Landlord certifying that the hot water equipment and the HVAC system are then in good repair and working order.  Tenant shall, at Tenant's sole cost and expense, provide janitorial service to the Premises and contract for trash removal and pest control for the Premises.  If Tenant fails to maintain the Premises in good order, condition and repair, Landlord shall give Tenant notice to perform such acts as are reasonably required to so maintain the Premises.  If Tenant fails to promptly commence such work and diligently pursue it to its completion, then Landlord may, at is option, make such repairs, and Tenant shall pay the cost thereof to Landlord on demand as Additional Rent, together with an administration charge in an amount equal to ten percent (10%) of the cost of such repairs. Tenant shall, within thirty (30) days after Landlord's written demand therefor, reimburse Landlord for the cost of all repairs, replacements and alterations (collectively, "**Repairs**") in and to the Premises, Buildings and Project and the facilities and systems thereof, plus an administration charge of ten percent of such cost, the need for which Repairs arises out of (1) Tenant's use or occupancy of the Premises, (2) the installation, removal, use or operation of Tenant's Property (hereinafter defined) or Alterations (hereinafter defined), or (3) the act, omission, misuse or negligence of Tenant, its agents, contractors, employees or invitees.

B.	Landlord shall keep and maintain in good repair and working order and make all repairs to and perform necessary maintenance upon the roof, foundation and structural elements of the Buildings, reasonable wear and tear excepted.  Tenant shall immediately give Landlord written notice of the need for repairs, after which Landlord shall have reasonable opportunity to repair same.  Landlord shall also maintain in good repair and condition the parking areas and other Common Areas of the Project, including, but not limited to driveways, alleys, landscape and grounds.  Tenant will be responsible for the payment of all costs associated with Landlord's maintenance if the need therefor arises due to the fault or negligence of Tenant or its agents, employees, licensees or invitees.  Except as otherwise expressly provided in this Section 8.B, Landlord will not at any time be required to make any improvements, repairs, replacements or alterations to the Premises.

C.	Tenant shall not make or allow to be made any alterations, additions or improvements to the Premises (collectively, "**Alterations**"), without first obtaining the written consent of Landlord, which consent should not be unreasonably withheld.  Prior to commencing any Alterations and as a condition to obtaining Landlord's consent, Tenant shall deliver to Landlord plans and specifications acceptable to Landlord; names and addresses of contractors reasonably acceptable to Landlord; copies of contracts; necessary permits and approvals; evidence of contractor's and subcontractor's insurance in accordance with Section 11 hereof; and a payment bond or other security, all in form and amount satisfactory to Landlord.  Tenant shall be responsible for ensuring that all such persons procure and maintain insurance coverage against such risks, in such amounts and with such companies as Landlord may reasonably require.  All Alterations shall be constructed in a good and workmanlike manner using building standard materials or other new materials of equal or greater quality. Landlord, to the extent reasonably necessary to avoid any disruption to the tenants and occupants of the Building, shall have the right to designate the time when any Alterations

may be performed and to otherwise designate reasonable rules, regulations and procedures for the performance of work in the Buildings. Upon completion of the Alterations, Tenant shall deliver to Landlord "as-built" plans, contractor's affidavits and full and final waivers of lien and receipted bills covering all labor and materials. All Alterations shall comply with the insurance requirements and with applicable codes, ordinances, laws and regulations. Tenant shall reimburse Landlord upon demand for all reasonable sums, if any, expended by Landlord for third party examination of the architectural, mechanical, electrical and plumbing plans for any Alterations. In addition, if Landlord so requests, Landlord shall be entitled to oversee the construction of any Alterations that may affect the structure of either Building or any of the mechanical, electrical, plumbing or life safety systems of either Building. If Landlord elects to oversee such work, Landlord shall be entitled to receive a fee for such oversight in an amount equal to ten percent (10%) of the cost of such Alterations. Landlord's approval of Tenant's plans and specifications for any Alterations performed for or on behalf of Tenant shall not be deemed to be a representation by Landlord that such plans and specifications comply with applicable insurance requirements, building codes, ordinances, laws or regulations or that the Alterations constructed in accordance with such plans and specifications will be adequate for Tenant's use. Notwithstanding the foregoing, Tenant may, without the consent of Landlord, but at its own cost and expense and in a good workmanlike manner, make cosmetic, interior, nonstructural alterations that cost $[●] or less and erect such shelves, bins, machinery, and trade fixtures (together with any other personal property brought into the Premises by Tenant, collectively, "**Tenant's Property**") as it may deem advisable, without altering the basic character of either Building or improvements and without overloading or damaging such Building or improvements, and in each case complying with all applicable governmental laws, ordinances, regulations and other requirements. All Alterations and partitions erected by Tenant shall be and remain the property of Tenant during the term of this Lease, and Tenant shall, unless Landlord otherwise elects as hereinafter provided, remove all Alterations and partitions erected by Tenant and restore the Premises to its original condition by the date of termination of this Lease or upon earlier vacating of the Premises; provided, however, that if Landlord so elects prior to termination of this Lease or upon earlier vacating of the Premises, such Alterations and/or partitions shall become the property of Landlord as of the date of termination of this Lease or upon earlier vacating of the Premises and shall be delivered up to the Landlord with the Premises. All of Tenant's Property may be removed by Tenant prior to the termination of this Lease, and all of Tenant's Property and all electronic, phone and data cabling exclusively serving the Premises (whether such cabling is located within or outside of the Premises) shall be removed by the date of termination of this Lease or upon earlier vacating of the Premises. Any removal by Tenant shall be accomplished in a good workmanlike manner so as not to damage the primary structure or structural qualities of either Building. If Tenant fails to remove any of the foregoing items or to perform any required repairs and restoration, (i) Landlord, at Tenant's sole cost and expense, may remove the same (and repair any damage occasioned thereby) and dispose thereof or deliver such items to any other place of business of Tenant, or warehouse the same, and Tenant shall pay the cost of such removal, repair, delivery, or warehousing of such items within five (5) days after demand from Landlord and (ii) such failure shall be deemed a holding over by Tenant under Section 21 hereof until such failure is rectified by Tenant or Landlord.

9.    **Assignment and Subletting**

A.    Except in connection with a Permitted Transfer (defined in Section 9E below), Tenant shall not assign, sublease, transfer or encumber any interest in this Lease or allow any third party to use any portion of the Premises (collectively or individually, a "**Transfer**") without the prior written consent of Landlord, which consent shall not be unreasonably withheld with respect to a proposed sublease or assignment (other than a collateral assignment, in which case Landlord may withhold its consent in its sole and absolute discretion).  Without limitation, it is agreed that Landlord's consent shall not be considered unreasonably withheld if: (1) the proposed transferee's financial condition is not adequate for the obligations such transferee is assuming in connection with the proposed Transfer; (2) the transferee's business or reputation is not suitable for the Project considering the business and reputation of the other tenants and the Project's prestige, or would result in a violation of another tenant's rights under its lease at the Project; (3) the transferee is a governmental agency or occupant of the Project; (4) Tenant is in default beyond any applicable notice and cure period; (5) any portion of the Project or the Premises would likely become subject to additional or different laws as a consequence of the proposed Transfer; or (6) Landlord or its leasing agent has received a proposal from or made a proposal to the proposed transferee to lease space in the Project within six (6) months prior to Tenant's delivery of written notice of the proposed Transfer to Landlord.  Any attempted Transfer in violation of this Section 9, shall, exercisable in Landlord's sole and absolute discretion, be void.  Consent by Landlord to one or more Transfers shall not operate as a waiver of Landlord's rights to approve any subsequent Transfers.  If Landlord withholds its consent to any Transfer contrary to the provisions of this Section 9, Tenant's sole remedy shall be to seek an injunction in equity to compel performance by Landlord to give its consent and Tenant expressly waives any right to damages in the event of such withholding by Landlord of its consent.  In no event shall any Transfer or Permitted Transfer release or relieve Tenant from any obligation under this Lease or any liability hereunder.

B.    If Tenant requests Landlord's consent to a Transfer, Tenant shall submit to Landlord (i) financial statements for the proposed transferee, (ii) a copy of the proposed assignment or sublease, and (iii) such other information as Landlord may reasonably request.  After Landlord's receipt of the required information and documentation, Landlord shall either: (1) consent or reasonably refuse consent to the Transfer in writing; (2) in the event of a proposed assignment of this Lease, terminate this Lease effective the first to occur of ninety (90) days following written notice of such termination or the date that the proposed Transfer would have come into effect; and (3) in the event of a proposed subletting, terminate this Lease with respect to the portion of the Premises which Tenant proposes to sublease effective the first to occur of ninety (90) days following written notice of such termination or the date the proposed Transfer would have come into effect.  Tenant shall pay Landlord a review fee of $[●] for Landlord's review of any Permitted Transfer or proposed Transfer.

C.    Tenant shall pay to Landlord [●] percent ([●]%) of all cash and other consideration which Tenant receives as a result of a Transfer that is in excess of the sum of the (i) rent payable to Landlord hereunder for the portion of the Premises and Lease Term covered by the Transfer, and (ii) Tenant's reasonable costs and expenses incurred in relation

to the Transfer such as brokerage, legal, marketing, and alterations, within ten (10) days following receipt thereof by Tenant.

D.    Except as provided below with respect to a Permitted Transfer, if Tenant is a corporation, limited liability company, partnership or similar entity, and the person, persons or entity which owns or controls a majority of the voting interests at the time changes for any reason (including but not limited to a merger, consolidation or reorganization), such change of ownership or control shall constitute a Transfer.  The foregoing shall not apply so long as Tenant is an entity whose outstanding stock is listed on a nationally recognized security exchange, or if at least [●] percent ([●]%) of its voting stock is owned by another entity, the voting stock of which is so listed.

E.    Tenant may assign its entire interest under this Lease or sublet the Premises (i) to any entity controlling or controlled by or under common control with Tenant or (ii) to any successor to Tenant by purchase, merger, consolidation or reorganization (hereinafter, collectively, referred to as "**Permitted Transfer**") without the consent of Landlord, provided: (1) Tenant is not in default under this Lease; (2) if such proposed transferee is a successor to Tenant by purchase, said proposed transferee shall acquire all or substantially all of the stock or assets of Tenant's business or, if such proposed transferee is a successor to Tenant by merger, consolidation or reorganization, the continuing or surviving entity shall own all or substantially all of the assets of Tenant; (3) with respect to a Permitted Transfer to a proposed transferee described in clause (ii), such proposed transferee shall have a tangible net worth which is at least equal to the greater of Tenant's tangible net worth at the date of this Lease or Tenant's tangible net worth as of the day prior to the proposed purchase, merger, consolidation or reorganization as evidenced to Landlord's reasonable satisfaction; and (4) Tenant shall give Landlord written notice at least thirty (30) days prior to the effective date of the proposed purchase, merger, consolidation or reorganization.

10.    **Mechanic's Liens**

Tenant has no express or implied authority to create or place any lien or encumbrance of any kind upon, or in any manner to bind the interest of Landlord or Tenant in, the Premises or the Project or to charge the rentals payable hereunder for any claim in favor of any person dealing with Tenant, including those who may furnish materials or perform labor for any construction or repairs. Tenant covenants and agrees that it will pay or cause to be paid all sums due and payable by it on account of any labor performed or materials furnished in connection with any work performed on the Premises and that it will save and hold Landlord harmless from all loss, cost or expense (including without limitation, reasonable attorneys' fees) based on or arising out of asserted claims or liens against the leasehold estate or against the interest of Landlord in the Premises or under this Lease. If a lien is attached to the Project or any part thereof, then, in addition to any other right or remedy of Landlord, Landlord may, but shall not be obligated to, discharge the same.  Any amount paid by Landlord for any of the aforesaid purposes including, but not limited to, reasonable attorneys' fees, shall be paid by Tenant to Landlord within thirty (30) days after demand as Additional Rent.  Tenant shall within ten (10) days of receiving such notice of lien or claim have such lien or claim released of record.  Tenant's failure to comply with the provisions of the foregoing sentence shall be deemed

an Event of Default entitling Landlord to exercise all of its remedies therefor without the requirement of any additional notice or cure period.

11.   **Insurance**

A.    Landlord shall, at all times during the Lease Term, procure and maintain: (i) policies of insurance covering loss or damage to the Project in an amount equal to the full replacement cost of the Buildings, including leasehold improvements in the Premises, which shall provide protection against loss by fire and other all-risk casualties including earthquake and flood and such other property insurance as may be required by Landlord's mortgagee or as otherwise desired by Landlord, and (ii) commercial general liability insurance applicable to the Buildings and the Common Areas, providing a minimum limit of $[●] per occurrence.

B.    Tenant shall procure and maintain, at its expense, (i) causes of loss – special form property insurance in an amount equal to the full replacement cost of Tenant's Property located in the Premises; (ii) a policy or policies of commercial general liability and umbrella or excess liability insurance applying to Tenant's operations and use of the Premises, providing a minimum limit of $[●] per occurrence and in the aggregate, naming Landlord and Landlord's Project manager as additional insureds, (iii) automobile liability insurance covering owned, non-owned and hired vehicles in an amount not less than a combined single limit of $[●] per occurrence, (iv) workers' compensation insurance covering Tenant's employment of workers and anyone for whom Tenant may be liable for workers' compensation claims (workers' compensation insurance is required and no alternative forms of insurance are permitted) and employer's liability insurance in an amount not less than $[●] each accident, $[●] disease-each employee and policy limit, with the insurance policies required under this clause (iv) to be endorsed to waive the insurance carriers' right of subrogation, and (v) business interruption insurance with limits not less than an amount equal to one (1) year's rent hereunder.  Tenant shall maintain the foregoing insurance coverages in effect commencing on the earlier to occur of the Commencement Date and the date Tenant takes possession of the Premises, and continuing to the end of the Lease Term.

C.    The insurance requirements set forth in this Section 11 are independent of the waiver, indemnification, and other obligations under this Lease and will not be construed or interpreted in any way to restrict, limit or modify the waiver, indemnification and other obligations or to in any way limit any party's liability under this Lease.  In addition to the requirements set forth in Sections 11 and 12, the insurance required of Tenant under this Lease must be issued by an insurance company with a rating of no less than A-VIII in the current Best's Insurance Guide or that is otherwise acceptable to Landlord, and admitted to engage in the business of insurance in the state in which the Buildings are located; be primary insurance for all claims under it and provide that any insurance carried by Landlord, Landlord's Project manager, and Landlord's lenders is strictly excess, secondary and noncontributing with any insurance carried by Tenant; and provide that insurance may not be cancelled, nonrenewed or the subject of change in coverage of available limits of coverage, except upon thirty (30) days' prior written notice to Landlord and Landlord's lenders.  Tenant will deliver to Landlord a legally enforceable certificate of insurance on all

policies procured by Tenant in compliance with Tenant's obligations under this Lease on or before the date Tenant first occupies any portion of the Premises, at least ten (10) days before the expiration date of any policy and upon the renewal of any policy.

D.      If Tenant's business operations, conduct or use of the Premises or any other part of the Project causes an increase in the premium for any insurance policy carried by Landlord, Tenant will, within ten (10) days after receipt of written notice from Landlord, reimburse Landlord for the entire increase.

E.      Notwithstanding anything to the contrary set forth herein, neither Landlord nor Tenant shall be liable (by way of subrogation or otherwise) to the other party (or to any insurance company insuring the other party) for any loss or damage to any of the property of Landlord or Tenant, as the case may be, with respect to their respective property, the Buildings, the Project or the Premises or any addition or improvements thereto, or any contents therein, to the extent covered by insurance carried or required to be carried by a party hereto even though such loss might have been occasioned by the negligence or willful acts or omissions of the Landlord or Tenant or their respective employees, agents, contractors or invitees. Landlord and Tenant shall give each insurance company which issues policies of insurance, with respect to the items covered by this mutual waiver, written notice of the terms of this mutual waiver, and shall have such insurance policies properly endorsed, if necessary, to prevent the invalidation of any of the coverage provided by such insurance policies by reason of such mutual waiver. For the purpose of the foregoing mutual waiver, the amount of any deductible applicable to any loss or damage shall be deemed covered by, and recoverable by the insured under the insurance policy to which such deductible relates.

12.     **Indemnity**

To the extent not expressly prohibited by law, and except to the extent caused by Landlord's negligence, neither Landlord nor Landlord's Project manager nor any of their respective officers, directors, employees, members, managers, agents or direct or indirect owners shall be liable to Tenant, or to Tenant's agents, servants, employees, customers, licensees, or invitees for any injury to person or damage to property caused by any act, omission, or neglect of Tenant, its agents, servants, employees, customers, invitees, licensees or by any other person entering either Building or upon the Project under the invitation of Tenant or arising out of the use of the Project, Buildings or Premises by Tenant and the conduct of its business or out of a default by Tenant in the performance of its obligations hereunder. Tenant hereby indemnifies and holds Landlord and Landlord's Project manager and their respective officers, directors, employees, members, managers, agents, and any lender holding a mortgage or deed of trust on the Project ("**Indemnitees**"), harmless from all liability and claims for any property damage, or bodily injury or death of, or personal injury to, a person in or on the Premises, or at any other place, including the Project or the Buildings and this indemnity shall be enforceable to the full extent, unless such liability and claims are the result of the joint or concurrent acts, negligent or intentional, or willful misconduct of the Indemnitees. Landlord hereby indemnifies and agrees to protect, defend and hold Tenant harmless from and against claims arising out of (i) Landlord's grossly negligent acts or omissions or willful misconduct or those of its agents, contractors, servants, employees or licensees in connection with Landlord's activities on or about the Premises, (ii) any default by Landlord as to any obligations on Landlord's part to be performed

under the terms of this Lease or the terms of any contract or agreement to which Landlord is a party or by which it is bound, affecting this Lease, Premises, or Buildings, or (iii) any occurrence in the Common Areas to the extent covered by the liability insurance required to be maintained by Landlord. Notwithstanding the terms of this Lease to the contrary, the terms of this Section shall survive the expiration or earlier termination of this Lease.

13.    **Damages from Certain Causes**

To the extent not expressly prohibited by law, Landlord shall not be liable to Tenant or Tenant's employees, contractors, agents, invitees or customers, for any injury to person or damage to property sustained by Tenant or any such party or any other person claiming through Tenant resulting from any accident or occurrence in the Premises or any other portion of either Building caused by the Premises or any other portion of either Building becoming out of repair or by defect in or failure of equipment, pipes, or wiring, or by broken glass, or by the backing up of drains, or by gas, water, steam, electricity, or oil leaking, escaping or flowing into the Premises (except where due to Landlord's negligent or willful failure to make repairs required to be made pursuant to other provisions of this Lease, after the expiration of a reasonable time after written notice to Landlord of the need for such repairs), even if such damage results from the negligence of Landlord or its partners or their respective partners, members, agents or employees, nor shall Landlord be liable to Tenant for any loss or damage that may be occasioned by or through the acts or omissions of other tenants of the Buildings or of any other persons whomsoever, including, but not limited to riot, strike, insurrection, war, court order, requisition, order of any governmental body or authority, acts of God, fire or theft.

14.    **Casualty Damage**

If the Premises or any part thereof shall be damaged by fire or other casualty, Tenant shall give prompt written notice thereof to Landlord. In case that either Building shall be so damaged that substantial alteration or reconstruction of either Building shall, in Landlord's sole opinion, be required (whether or not the Premises shall have been damaged by such casualty) or in the event there is less than two (2) years of the Lease Term remaining or in the event Landlord's mortgagee should require that the insurance proceeds payable as a result of a casualty be applied to the payment of the mortgage debt or in the event of any material uninsured loss to either Building, Landlord may, at its option, terminate this Lease (or the Lease solely with respect to such damaged Building and Rent shall be proportionately adjusted hereunder based upon square footage of the remaining Premises) by notifying Tenant in writing of such termination within ninety (90) days after the date of such casualty. If Landlord does not thus elect to terminate this Lease, Landlord shall commence and proceed with reasonable diligence to restore the damaged Building, and the improvements located within the Premises to substantially the same condition in which it was immediately prior to the happening of the casualty. Notwithstanding the foregoing, Landlord's obligation to restore the damaged Building, and the improvements located within the Premises shall not require Landlord to expend for such repair and restoration work more than the insurance proceeds actually received by Landlord as a result of the casualty. When the repairs described in the preceding two sentences have been completed by Landlord, Tenant shall complete the restoration of all furniture, fixtures and equipment which are necessary to permit Tenant's reoccupancy of the Premises. Landlord shall not be liable for any inconvenience or annoyance to Tenant or injury to the business of Tenant resulting

15

in any way from such damage or the repair thereof, except that Tenant's Rent shall be abated from the date of the damage or destruction for any portion of the Premises that is unusable by Tenant, which abatement shall be in the same proportion that the square footage of the Premises which is unusable by Tenant bears to the total square footage of the Premises; provided that Tenant shall not be entitled to any abatement of Rent if the damage or destruction within the Premises is restored within five (5) Business Days after Landlord's receipt of written notice from Tenant of the occurrence of the damage or destruction.

15.    **Condemnation**

If the whole or any substantial part of the Premises or if the Buildings or any portion thereof which would leave the remainder of either Building unsuitable for use comparable to its use on the Commencement Date, or if the land on which the Building is located or any material portion thereof, shall be taken or condemned for any public or quasi-public use under governmental law, ordinance or regulation, or by right of eminent domain, or by private purchase in lieu thereof, then Landlord may, at its option, terminate this Lease (or the Lease solely with respect to such condemned Building and Rent shall be proportionately adjusted hereunder based upon square footage of the remaining Premises) and Rent shall be abated during the unexpired portion of this Lease, effective when the physical taking of said Premises or said portion of either Building or land shall occur.  If this Lease is not terminated, the rent for any portion of the Premises so taken or condemned shall be abated during the unexpired Lease Term effective when the physical taking of said portion of the Premises shall occur.  All compensation awarded for any taking or condemnation, or sale proceeds in lieu thereof, shall be the property of Landlord, and Tenant shall have no claim thereto, the same being hereby expressly waived by Tenant, except for any portions of such award or proceeds which are specifically allocated by the condemning or purchasing party for the taking of or damage to trade fixtures of Tenant and moving costs, which Tenant specifically reserves to itself.

16.    **Events of Default**

The following events shall be deemed to be "**Events of Default**" under this Lease:  (i) Tenant fails to pay any Rent when due; provided that the first two (2) such failure during any consecutive twelve (12) month period during the Term shall not be an Event of Default if Tenant pays the amount due within five (5) days after Tenant's receipt of written notice from Landlord such payment was not made when due, (ii) Tenant fails to perform any other provision of this Lease not described in this Section 16, and such failure is not cured within thirty (30) days (or immediately if the failure involves a hazardous condition) after notice from Landlord, however, other than with respect to a hazardous condition, if Tenant's failure to comply cannot reasonably be cured within thirty (30) days, Tenant shall be allowed additional time (not to exceed thirty (30) additional days) as is reasonably necessary to cure the failure so long as Tenant begins the cure within thirty (30) days and diligently pursues the cure to completion; (iii) Tenant fails to observe or perform any of the covenants with respect to (a) assignment and subletting as set forth in Section 9, (b) mechanic's liens as set forth in Section 10, (c) insurance as set forth in Section 11 or (d) delivering subordination agreements or estoppel certificates as set forth in Section 22, (iv) the leasehold interest of Tenant is levied upon or attached under process of law; (v) Tenant or any guarantor of this Lease dissolves; (vi) Tenant abandons or vacates the Premises; or (vii) any voluntary or involuntary proceedings are filed by or against Tenant or any guarantor of this Lease under any bankruptcy, insolvency or similar laws and,

in the case of any involuntary proceedings, are not dismissed within sixty (60) days after filing, except for any proceedings related to Tenant's pending bankruptcy case.

17. **Remedies**

A.    Upon the occurrence of any Event of Default, Landlord shall have the following rights and remedies, in addition to those allowed by law or equity, any one or more of which may be exercised without further notice to or demand upon Tenant and which may be pursued successively or cumulatively as Landlord may elect:

(1)    Landlord may re-enter the Premises and attempt to cure any default of Tenant, in which event Tenant shall, upon demand, reimburse Landlord as Additional Rent for all reasonable costs and expenses which Landlord incurs to cure such default;

(2)    Landlord may terminate this Lease by giving to Tenant notice of Landlord's election to do so, in which event the Lease Term shall end, and all right, title and interest of Tenant hereunder shall expire, on the date stated in such notice;

(3)    Landlord may terminate the right of Tenant to possession of the Premises without terminating this Lease by giving notice to Tenant that Tenant's right to possession shall end on the date stated in such notice, whereupon the right of Tenant to possession of the Premises or any part thereof shall cease on the date stated in such notice; and

(4)    Landlord may enforce the provisions of this Lease by a suit or suits in equity or at law for the specific performance of any covenant or agreement contained herein, or for the enforcement of any other appropriate legal or equitable remedy, including recovery of all moneys due or to become due from Tenant under any of the provisions of this Lease.

Landlord shall not be required to serve Tenant with any notices or demands as a prerequisite to its exercise of any of its rights or remedies under this Lease, other than those notices and demands specifically required under this Lease or by applicable law.  Landlord may, without notice, remove and either dispose of or store, at Tenant's expense, any property belonging to Tenant that remains in the Premises after Landlord has regained possession thereof.  **TENANT EXPRESSLY WAIVES THE SERVICE OF ANY STATUTORY DEMAND OR NOTICE WHICH IS A PREREQUISITE TO LANDLORD'S COMMENCEMENT OF EVICTION PROCEEDINGS AGAINST TENANT, INCLUDING THE DEMANDS AND NOTICES SPECIFIED IN ANY APPLICABLE STATE STATUTE OR CASE LAW.  TENANT KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY LAWSUIT BROUGHT BY LANDLORD TO RECOVER POSSESSION OF THE PREMISES FOLLOWING LANDLORD'S TERMINATION OF THIS LEASE OR THE RIGHT OF TENANT TO POSSESSION OF THE PREMISES PURSUANT TO THE TERMS OF THIS LEASE AND ON ANY CLAIM FOR DELINQUENT RENT**

**WHICH LANDLORD MAY JOIN IN ITS LAWSUIT TO RECOVER POSSESSION. LANDLORD IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THE FOREGOING WAIVER.**

B.      If Landlord exercises either of the remedies provided in Sections 17A(2) or 17A(3), Tenant shall surrender possession and vacate the Premises and immediately deliver possession thereof to Landlord, and Landlord may re-enter and take complete and peaceful possession of the Premises, without process of law, and Landlord may remove all occupants and property therefrom, using such force as may be necessary to the extent allowed by law, without being deemed guilty in any manner of trespass, eviction or forcible entry and detainer and without relinquishing Landlord's right to Rent or any other right given to Landlord hereunder or by operation of law.

C.      If Landlord terminates the right of Tenant to possession of the Premises without terminating this Lease, Landlord shall have the right to immediate recovery of all amounts then due hereunder. Such termination of possession shall not release Tenant, in whole or in part, from Tenant's obligation to pay Rent hereunder for the full Lease Term, and Landlord shall have the right, from time to time, to recover from Tenant, and Tenant shall remain liable for, all Rent accruing as it becomes due under this Lease during the period from the date of such notice of termination of possession to the stated end of the Lease Term. In any such case, Landlord shall make reasonable efforts, in accordance with Section 17E hereof, to relet the Premises. In attempting to relet the Premises, Landlord may make repairs, alterations and additions in or to the Premises and redecorate the same to the extent reasonably deemed by Landlord necessary or desirable, and Tenant upon demand shall pay the reasonable cost of all of the foregoing together with Landlord's reasonable expenses of reletting. The rents from any such reletting shall be applied first to the payment of the expenses of reentry, redecoration, repair and alterations and the expenses of reletting (including reasonable attorneys' fees and brokers' fees and commissions) and second to the payment of Rent herein provided to be paid by Tenant. Any excess or residue shall operate only as an offsetting credit against the amount of Rent due and owing as the same thereafter becomes due and payable hereunder.

D.      If this Lease is terminated by Landlord, Landlord shall be entitled to recover from Tenant all Rent accrued and unpaid for the period up to and including such termination date, as well as all other additional sums payable by Tenant, or for which Tenant is liable or for which Tenant has agreed to indemnify Landlord, which may be then owing and unpaid, and all reasonable costs and expenses, including court costs and reasonable attorneys' fees incurred by Landlord in the enforcement of its rights and remedies hereunder. In addition, Landlord shall be entitled to recover as damages for loss of the bargain and not as a penalty (1) the unamortized portion of any concessions offered by Landlord to Tenant in connection with this Lease, including without limitation Landlord's contribution to the cost of tenant improvements, if any, installed by either Landlord or Tenant pursuant to this Lease or any work letter in connection with this Lease, (2) the aggregate sum which at the time of such termination represents the excess, if any, of the present value of the aggregate Rent which would have been payable after the termination date had this Lease not been terminated,

including, without limitation, the amount projected by Landlord to represent Additional Rent for the remainder of the Lease Term, over the then present value of the then aggregate fair rent value of the Premises for the balance of the Lease Term, such present worth to be computed in each case on the basis of a ten percent (10%) per annum discount from the respective dates upon which such Rent would have been payable hereunder had this Lease not been terminated, and (3) any damages in addition thereto, including without limitation reasonable attorneys' fees and court costs, which Landlord sustains as a result of the breach of any of the covenants of this Lease other than for the payment of Rent.

E.    Landlord shall use commercially reasonable efforts to mitigate any damages resulting from an Event of Default by Tenant under this Lease.  Landlord's obligation to mitigate damages after an Event of Default by Tenant under this Lease shall be satisfied in full if Landlord undertakes to lease the Premises to another tenant (a "**Substitute Tenant**") in accordance with the following criteria:  (1) Landlord shall have no obligation to solicit or entertain negotiations with any other prospective tenants for the Premises until Landlord obtains full and complete possession of the Premises including, without limitation, the final and unappealable legal right to relet the Premises free of any claim of Tenant; (2) Landlord shall not be obligated to lease or show the Premises, on a priority basis, or offer the Premises to a prospective tenant when other premises in the Project suitable for that prospective tenant's use are (or soon will be) available; (3) Landlord shall not be obligated to lease the Premises to a Substitute Tenant for a rent less than the current fair market rent then prevailing for similar uses in comparable buildings in the same market area as the Buildings, nor shall Landlord be obligated to enter into a new lease under other terms and conditions that are unacceptable to Landlord under Landlord's then current leasing policies for comparable space in the Project; (4) Landlord shall not be obligated to enter into a lease with a Substitute Tenant whose use would: (i) violate any restriction, covenant, or requirement contained in the lease of another tenant of the Project; (ii) adversely affect the reputation of the Project; or (iii) be incompatible with the operation of the Project; and (5) Landlord shall not be obligated to enter into a lease with any proposed Substitute Tenant which does not have, in Landlord's reasonable opinion, sufficient financial resources to operate the Premises in a first class manner and to fulfill all of the obligations in connection with the lease thereof as and when the same become due.

F.    The receipt by Landlord of less than the full Rent due shall not be construed to be other than a payment on account of Rent then due, nor shall any statement on Tenant's check or any letter accompanying Tenant's check be deemed an accord and satisfaction, and Landlord may accept such payment without prejudice to Landlord's right to recover the balance of the Rent due or to pursue any other remedies provided in this Lease.  The acceptance by Landlord of Rent hereunder shall not be construed to be a waiver of any breach by Tenant of any term, covenant or condition of this Lease.  No act or omission by Landlord or its employees or agents during the term of this Lease shall be deemed an acceptance of a surrender of the Premises, and no agreement to accept such a surrender shall be valid unless in writing and signed by Landlord.

G.    In the event of any litigation between Tenant and Landlord to enforce or interpret any provision of this Lease or to enforce any right of either party hereto, the

19

unsuccessful party to such litigation shall pay to the successful party all costs and expenses, including reasonable attorney's fees, incurred therein.

       H.     All property of Tenant removed from the Premises by Landlord pursuant to any provision of this Lease or applicable law may be handled, removed or stored by Landlord at the cost and expense of Tenant, and Landlord shall not be responsible in any event for the value, preservation or safekeeping thereof.  Tenant shall pay Landlord for all expenses incurred by Landlord with respect to such removal and storage so long as the same is in Landlord's possession or under Landlord's control.  All such property not removed from the Premises or retaken from storage by Tenant within thirty (30) days after the end of the Lease Term or termination of Tenant's right to possession of the Premises, however terminated, at Landlord's option, shall be conclusively deemed to have been conveyed by Tenant to Landlord by bill of sale with general warranty of title without further payment or credit by Landlord to Tenant.

18.    **No Waiver**

Failure of either party to declare any default immediately upon its occurrence, or delay in taking any action in connection with an event of default, shall not constitute a waiver of such default, nor shall it constitute an estoppel against the non-defaulting party, but the non-defaulting party shall have the right to declare the default at any time and take such action as is lawful or authorized under this Lease.  Failure by non-defaulting party to enforce its rights with respect to any one default shall not constitute a waiver of its rights with respect to any subsequent default.

19.    **Peaceful Enjoyment**

Tenant shall, and may peacefully have, hold, and enjoy the Premises, subject to the other terms hereof, provided that Tenant pays the Rent and other sums herein recited to be paid by Tenant and timely performs all of Tenant's covenants and agreements herein contained.

20.    **Intentionally Omitted**

21.    **Holding Over**

If Tenant continues to occupy the Premises after the expiration or other termination of this Lease or the termination of Tenant's right of possession, such occupancy shall be that of a tenancy at sufferance.  Tenant shall, throughout the entire holdover period, be subject to all the terms and provisions of this Lease and shall pay for its use and occupancy an amount (on a per month basis without reduction for any partial months during any such holdover) equal to [●] percent ([●]%) of the Base Rent and Additional Rent due under this Lease for the last full month of the term hereof during the first thirty (30) days of such holdover, and [●] percent ([●]%) of such Base Rent and Additional Rent thereafter during such holdover.  No holding over by Tenant or payments of money by Tenant to Landlord after the expiration of the Lease Term shall be construed to extend the Lease Term or prevent Landlord from recovery of immediate possession of the Premises by summary proceedings or otherwise Tenant shall also be liable to Landlord for all direct and consequential damages which Landlord may suffer by reason of any holding over by Tenant.

22.    **Subordination to Mortgage; Estoppel Certificate**

A.    Tenant accepts this Lease subject and subordinate to any ground lease, mortgage, deed of trust or other lien presently existing or hereafter arising upon the Premises, or upon either Building or the Project and to any renewals, modifications, refinancings and extensions thereof, but Tenant agrees that any such mortgagee shall have the right at any time to subordinate such mortgage, deed of trust or other lien to this Lease on such terms and subject to such conditions as such mortgagee may deem appropriate in its discretion. Tenant shall attorn to any purchaser of the Property or to the holder of any such mortgage or deed of trust in the event that any of the same succeed to the Landlord's interest under this Lease. Said transferee shall not be liable for any act or omission of any prior landlord or be subject to any offsets or defenses which Tenant may have against any prior landlord. Tenant waives the protection of any applicable law which gives or purports to give Tenant any right to terminate this Lease or surrender possession of the Premises upon the transfer of Landlord's interest. Notwithstanding the foregoing, Landlord is hereby irrevocably vested with full power and authority to subordinate this Lease to any mortgage, deed of trust or other lien now existing or hereafter placed upon the Premises, or either Building or the Project and Tenant agrees within ten (10) days after written demand to execute such further instruments subordinating this Lease or attorning to the holder of any such liens as Landlord may request. Tenant agrees that it shall from time-to-time furnish within ten (10) days after so requested by Landlord, a certificate signed by Tenant certifying as to such matters as may be reasonably requested by Landlord. Any such certificate may be relied upon by any ground lessor, prospective purchaser, secured party, mortgagee or any beneficiary under any mortgage, deed of trust on either Building or the Project or any part thereof or interest of Landlord therein. Provided however, Tenant's obligation to (a) subordinate its rights under this Lease to the lien of any holder of a mortgage or any transferee and (b) execute and deliver such instrument shall be conditioned upon Landlord obtaining and delivering to Tenant, in recordable form, from the holder of any ground lease, mortgage, deed of trust or other lien to which this Lease is to become subordinate a non-disturbance agreement reasonably acceptable to Tenant containing a covenant binding upon the holder thereof to the effect that as long as Tenant shall not be in default under this Lease, this Lease shall not be terminated or modified in any respect whatsoever, nor shall the rights of Tenant hereunder or its occupancy of the Premises be affected in any way by reason of such ground lease, mortgage, deed of trust or other lien or any foreclosure action or other proceeding that may be instituted in connection therewith.

B.    Tenant shall give written notice of any failure by Landlord to perform any of its obligations under this Lease to Landlord and to any ground lessor, mortgagee or beneficiary under any deed of trust encumbering the Premises, either Building or Project whose name and address have been furnished to Tenant in writing. Upon such notice, such party receiving the notice shall be permitted and shall have the option, in its sole and absolute discretion, to cure any such default during the period of time during which the Landlord would be permitted to cure such default, but in any event such ground lessor, mortgagee or beneficiary, as applicable, shall have a period of thirty (30) days after the receipt of such notification to cure such default; provided, however, that in the event such ground lessor, mortgagee or beneficiary is unable to cure the default by exercise of reasonable diligence

within such 30-day period, such party shall have such additional period of time as may be reasonably required to remedy such default with reasonable dispatch.

23.    **Notice**

Any notice required or permitted to be given under this Lease or by law shall be deemed to have been given if it is written and delivered in person or mailed by Registered or Certified mail, postage prepaid, or sent by a nationally recognized overnight delivery service to the party who is to receive such notice at the address specified in Section 1 of this Lease (and, if no address is listed for Tenant, notices to Tenant shall be delivered to the Premises).  When so mailed, the notice shall be deemed to have been given two (2) Business Days after the date it was mailed.  When sent by overnight delivery service, the notice shall be deemed to have been given on the next Business Day after deposit with such overnight delivery service.  The address specified in Section 1 of this Lease may be changed from time to time by giving written notice thereof to the other party.

24.    **Surrender of Premises**

Upon the termination of the Lease Term, or upon any termination of Tenant's right to possession of the Premises, Tenant will at once surrender possession of the Premises to Landlord in good condition and repair, ordinary wear and tear excepted.  Tenant shall surrender to Landlord all keys to the Premises and make known to Landlord the combination of all combination locks which Tenant is required to leave on the Premises.

25.    **Rights Reserved to Landlord**

Landlord reserves the following rights, exercisable without notice, except as provided herein, and without liability to Tenant for damage or injury to property, person or business and without affecting an eviction or disturbance of Tenant's use or possession or giving rise to any claim for setoff or abatement of rent or affecting any of Tenant's obligations under this Lease: (1) upon thirty (30) days' prior notice to change the name or street address of either Building; (2) to install and maintain signs on the exterior and interior of either Building; (3) to designate and approve window coverings to present a uniform exterior appearance; (4) to retain at all times and to use in appropriate instances, pass keys to all locks within and to the Premises; (5) to approve the weight, size, or location of heavy equipment, or articles within the Premises; (6) to change the arrangement and location of public parts of the Project; (7) to regulate access to telephone, electrical and other utility closets in the Buildings and to require use of designated contractors for any work involving access to the same; (8) if Tenant has vacated the Premises during the last six (6) months of the Lease Term, to perform additions, alterations and improvements to the Premises in connection with a reletting or anticipated reletting thereof without being responsible or liable for the value or preservation of any then existing improvements to the Premises and without effectuating a surrender or entitling Tenant to any abatement of Rent; (9) to grant to anyone the exclusive right to conduct any business or undertaking in either Building provided Landlord's exercise of its rights under this clause (9), shall not be deemed to prohibit Tenant from the operation of its business in the Premises; (10) to enter the Premises to inspect the same or to show the Premises to prospective purchasers, mortgagees, tenants (during the last twelve months of the Lease Term) or insurers, or to clean or make repairs, alterations or additions thereto, provided that, except for any entry in an emergency situation, Landlord shall provide Tenant

22

with reasonable prior notice of any entry into the Premises; and (11) to temporarily close the Premises or either Building to perform repairs, alterations or additions in the Premises or either Building.   In exercising its rights under this Section 25, Landlord shall make commercially reasonable efforts to avoid unreasonably interfering with Tenant's business operations in the Premises.

26.    **Miscellaneous**

A.    If any term or provision of this Lease, or the application thereof, shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision, shall not be affected thereby, and each term and provision of this Lease shall be valid and enforced to the fullest extent permitted by law.

B.    Tenant agrees not to record this Lease or any short form or memorandum hereof.

C.    This Lease and the rights and obligations of the parties hereto shall be interpreted, construed, and enforced in accordance with the laws of the state in which the Buildings are located.

D.    The term "**Force Majeure**" shall mean strikes, riots, acts of God, shortages of labor or materials, war, acts of terrorism, governmental laws, regulations or restrictions, or any other cause whatsoever beyond the control of Landlord or Tenant, as the case may be. Whenever a period of time is herein prescribed for the taking of any action by Landlord or Tenant (other than the payment of Rent and all other such sums of money as shall become due hereunder), such party shall not be liable or responsible for, and there shall be excluded from the computation of such period of time, any delays due to events of Force Majeure.

E.    Except as expressly otherwise herein provided, with respect to all required acts of Tenant, time is of the essence of this Lease.

F.    Landlord shall have the right to transfer and assign, in whole or in part, all of its rights and obligations hereunder and in either Building and Project referred to herein, and in such event and upon such transfer Landlord shall be released from any further obligations hereunder, and Tenant agrees to look solely to such successor in interest of Landlord for the performance of such obligations.

G.    Tenant hereby represents to Landlord that it has dealt directly with and only with the Broker as a broker in connection with this Lease.  Landlord and Tenant hereby indemnify and hold each other harmless against any loss, claim, expense or liability with respect to any commissions or brokerage fees claimed by any broker or finder other than the Broker on account of the execution and/or renewal of this Lease due to any action of the indemnifying party.

H.    If there is more than one Tenant, or if Tenant as such is comprised of more than one person or entity, the obligations hereunder imposed upon Tenant shall be joint and several obligations of all such parties.  All notices, payments, and agreements given or made

by, with or to any one of such persons or entities shall be deemed to have been given or made by, with or to all of them.

I.      Tenant acknowledges that the financial capability of Tenant to perform its obligations hereunder is material to Landlord and that Landlord would not enter into this Lease but for its belief, based on its review of Tenant's financial statements, that Tenant is capable of performing such financial obligations. Tenant hereby represents, warrants and certifies to Landlord that its financial statements previously furnished to Landlord were at the time given true and correct in all material respects and that there have been no material subsequent changes thereto as of the date of this Lease. Tenant, within 15 days after request, shall provide Landlord with a current financial statement and such other information as Landlord may reasonably request in order to create a "business profile" of Tenant and determine Tenant's ability to fulfill its obligations under this Lease. Landlord, however, shall not require Tenant to provide such information unless Landlord requires the information in connection with a proposed financing or sale of either Building.

J.      Notwithstanding anything to the contrary contained in this Lease, the expiration of the Lease Term, whether by lapse of time or otherwise, shall not relieve Tenant from Tenant's obligations accruing prior to the expiration of the Lease Term, and such obligations shall survive any such expiration or other termination of the Lease Term.

K.      Landlord and Tenant understand, agree and acknowledge that (i) this Lease has been freely negotiated by both parties; and (ii) in any controversy, dispute or contest over the meaning, interpretation, validity, or enforceability of this Lease or any of its terms or conditions, there shall be no inference, presumption, or conclusion drawn whatsoever against either party by virtue of that party having drafted this Lease or any portion thereof.

L.      The headings and titles to the paragraphs of this Lease are for convenience only and shall have no effect upon the construction or interpretation of any part hereof. The term "including" shall be deemed to mean "including without limitation."

M.      If either party institutes a suit against the other for violation of or to enforce any covenant, term or condition of this Lease, the prevailing party (as determined by the court) shall be entitled to all of its costs and expenses, including, without limitation, reasonable attorneys' fees.

N.      To facilitate execution, this Lease may be executed in as many counterparts as may be convenient or required. All counterparts shall collectively constitute a single instrument. The parties may deliver signatures to counterparts by fax, email, PDF, or other electronic means. Such electronic signatures will have the same force and effect as original signatures.

27.    **No Offer**

Landlord has delivered a copy of this Lease to Tenant for Tenant's review only, and the delivery hereof does not constitute an offer to Tenant or an option. This Lease shall not be effective

until an original of this Lease executed by both Landlord and Tenant and an original Guaranty, if applicable, executed by each Guarantor is delivered to and accepted by Landlord, and this Lease has been approved by Landlord's mortgagee, if required.

28.     **Entire Agreement**

This Lease, including the Exhibits attached hereto, constitutes the entire agreement between the parties hereto with respect to the subject matter of this Lease and supersedes all prior agreements and understandings between the parties related to the Premises, including all lease proposals, letters of intent and similar documents.  Tenant expressly acknowledges and agrees that Landlord has not made and is not making, and Tenant, in executing and delivering this Lease, is not relying upon, any warranties, representations, promises or statements, except to the extent that the same are expressly set forth in this Lease.  This Lease may be modified only by a written agreement signed by Landlord and Tenant.  LANDLORD AND TENANT EXPRESSLY AGREE THAT THERE ARE AND SHALL BE NO IMPLIED WARRANTIES OF MERCHANTABILITY, HABITABILITY, SUITABILITY, FITNESS FOR A PARTICULAR PURPOSE OR OF ANY OTHER KIND ARISING OUT OF THIS LEASE, ALL OF WHICH ARE HEREBY WAIVED BY TENANT, AND THAT THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THOSE EXPRESSLY SET FORTH IN THIS LEASE.

29.     **Limitation of Liability**

Except as expressly set forth herein, the exclusive remedy of Tenant for failure of Landlord to perform any of its obligations under this Lease shall be an action for damages against Landlord. Any liability of Landlord under this Lease shall be limited solely to its interest in the Project, and in no event shall any personal liability be asserted against Landlord, its members, or their respective members, partners, shareholders, officers, directors, agents or employees, in connection with this Lease nor shall any recourse be had to any other property or assets of Landlord, its members, or their respective members, partners, shareholders, officers, directors, agents or employees.  In no event shall Landlord be liable for consequential or special damages as a result of a breach or default under this Lease.

30.     **Hazardous Substances**

A.     Tenant hereby represents and covenants to Landlord the following: No toxic or hazardous substances or wastes, pollutants or contaminants (including, without limitation, asbestos, urea formaldehyde, the group of organic compounds known as polychlorinated biphenyls, petroleum products including gasoline, fuel oil, crude oil and various constituents of such products, radon, and any hazardous substance as defined in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. 9601-9657, as amended ("**CERCLA**") (collectively**,** "**Environmental Pollutants**") other than customary office supplies and cleaning supplies stored and handled within the Premises in accordance with all applicable laws, will be generated, treated, stored, released or disposed of, or otherwise placed, deposited in or located on the Project, and no activity shall be taken on the Project, by Tenant, its agents, employees, invitees or contractors, that would cause or contribute to (i) the Project or any part thereof to become a generation, treatment, storage or

disposal facility within the meaning of or otherwise bring the Project within the ambit of the Resource Conservation and Recovery Act of 1976 ("**RCRA**"), 42 U.S.C. <u>5901</u> et. seq., or any similar state law or local ordinance, (ii) a release or threatened release of toxic or hazardous wastes or substances, pollutants or contaminants, from the Project or any part thereof within the meaning of, or otherwise result in liability in connection with the Project within the ambit of CERCLA, or any similar state law or local ordinance, or (iii) the discharge of pollutants or effluents into any water source or system, the dredging or filling of any waters, or the discharge into the air of any emissions, that would require a permit under the Federal Water Pollution Control Act, 33 U.S.C. 1251 et. seq., or the Clean Air Act, 42 U.S.C. 7401 et. seq., or any similar state law or local ordinance.

B.      Tenant expressly waives, to the extent allowed by law, any claims under federal, state or other law that Tenant might otherwise have against Landlord relating to the condition of such Project or the Premises or the Alterations or personal property located thereon or the presence in or contamination of the Project or the Premises by hazardous materials.  Tenant agrees to indemnify and hold Indemnitees (as defined in Section 12) harmless from and against and to reimburse Indemnitees with respect to, any and all claims, demands, causes of action, loss, damage, liabilities, costs and expenses (including attorneys' fees and court costs) of any and every kind or character, known or unknown, fixed or contingent, asserted against or incurred by Landlord at any time and from time-to-time by reason of or arising out of the breach of any representation or covenant contained in Section 30.A above.

C.      Tenant shall immediately notify Landlord in writing of any release or threatened release of toxic or hazardous wastes or substances, pollutants or contaminants of which Tenant has knowledge whether or not the release is in quantities that would require under law the reporting of such release to a governmental or regulatory agency.

D. Tenant shall also immediately notify Landlord in writing of, and shall contemporaneously provide Landlord with a copy of:

(1)      Any written notice of release of hazardous wastes or substances, pollutants or contaminants on the Project that is provided by Tenant or any subtenant or other occupant of the Premises to a governmental or regulatory agency;

(2)      Any notice of a violation, or a potential or alleged violation, of any Environmental Law (hereinafter defined) that is received by Tenant or any subtenant or other occupant of the Premises from any governmental or regulatory agency;

(3)      Any inquiry, investigation, enforcement, cleanup, removal, or other action that is instituted or threatened by a governmental or regulatory agency against Tenant or any subtenant or other occupant of the Premises and that relates to the release or discharge of hazardous wastes or substances, pollutants or contaminants on or from the Project;

(4)     Any claim that is instituted or threatened by any third-party against Tenant or any subtenant or other occupant of the Premises and that relates to any release or discharge of hazardous wastes or substances, pollutants or contaminants on or from the Project; and

(5)     Any notice of the loss of any environmental operating permit by Tenant or any subtenant or other occupant of the Premises.

E.     As used herein "Environmental Laws" mean all present and future federal, state and municipal laws, ordinances, rules and regulations applicable to environmental and ecological conditions, and the rules and regulations of the U.S. Environmental Protection Agency, and any other federal, state or municipal agency, or governmental board or entity relating to environmental matters.

[Signature Pages Follow]

**IN WITNESS WHEREOF**, Landlord and Tenant have executed this Lease under seal as of the day and year first above written.

**LANDLORD:**

[_____

a(n) _____]


By: _____(SEAL)

Name: _____

Title: _____


**TENANT:**

BOY SCOUTS OF AMERICA,
a congressionally chartered non-profit corporation under title 36 of the United States Code


By: _____(SEAL)

Name: _____

Title: _____