**<u>Exhibit K</u>**

**Draft of TCJC Settlement Agreement**

**You may access a full and complete copy of the TCJC Settlement Agreement, free of charge, at <u>https://omniagentsolutions.com/bsa-plansupplement</u>.**

**DRAFT**
**SUBJECT TO FURTHER NEGOTIATION**

### TCJC SETTLEMENT AGREEMENT AND RELEASE[1]

This Settlement Agreement and Release (hereinafter the "*TCJC Settlement Agreement*") is entered into by and between The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole ("*TCJC*"), Boy Scouts of America and Delaware BSA, LLC (together, the "*BSA*"), the Coalition of Abused Scouts for Justice (the "*Coalition*"), James L. Patton, Jr., the Future Claimants' Representative appointed by the Bankruptcy Court to represent the interests of holders of Future Abuse Claims (the "*FCR*" and, collectively with the Coalition, the "*Claimant Representatives*"), and the Ad Hoc Committee of Local Councils (the "*AHCLC*", and collectively with TCJC, the Debtors, and the Claimant Representatives, the "*Parties*"). The attorneys representing holders of Direct Abuse Claims who are identified on Schedule 1 and who have executed or agreed to execute, or hereafter execute or agree to execute, a joinder in the form set forth on Exhibit A (the "*Joining State Court Counsel*") agree to support the terms of and be bound by this TCJC Settlement Agreement.  In addition, the Local Councils that hereafter execute or agree to execute a joinder in the form set forth on Exhibit B (the "*Joining Local Councils*") agree to support the terms of and be bound by this TCJC Settlement Agreement.[2]

---

[1] This document remains subject to ongoing review and material revision in all respects.  The Debtors, Coalition, the Future Claimants' Representative, the Ad Hoc Committee, the Creditors' Committee, JPM, Hartford and TCJC are each continuing to review the documents that are part of the Plan Supplement, and each of their respective rights are reserved with respect to the Plan Supplement and the information contained therein, as applicable.

[2] Capitalized terms appearing in this TCJC Settlement Agreement that are not defined in this prefatory paragraph or in the recitals have the meanings set forth in the Section entitled "Definitions" herein, or in the Plan (as defined herein), as applicable. In the event of a conflict between this TCJC Settlement Agreement, on the one hand, and the terms and conditions of the Plan and/or Confirmation Order, on the other hand, the terms of the Plan and/or Confirmation Order shall control.

## <u>RECITALS</u>

WHEREAS, certain Abuse Claims have been brought, and in the future may be brought, against the Debtors;

WHEREAS, more than 80,000 persons have asserted Abuse Claims in the Bankruptcy Case against the Debtors and, in some cases, included allegations against one or more Local Councils;

WHEREAS, certain Abuse Claims have been filed in the BSA's Bankruptcy Case pursuant to which Abuse is alleged to have arisen in connection with TCJC's sponsorship of one or more Scouting units, resulting in disputes as to the liabilities or obligations of TCJC;

WHEREAS, on February 18, 2020, Boy Scouts of America and its affiliate, Delaware BSA, LLC, each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, commencing the Bankruptcy Case before the Bankruptcy Court;

WHEREAS, on September 14, 2021, the Mediators caused to be filed the *Sixth Mediators' Report* [D.I. 6210], appended to which was a term sheet that set forth the principal terms of this TCJC Settlement Agreement, which were to be incorporated in a definitive agreement and amended plan of reorganization for the Debtors; and

WHEREAS, the Parties wish to fully and finally resolve their disputes and to provide for the other consideration, promises, releases and covenants set forth in this TCJC Settlement Agreement as part of a global compromise and settlement to be implemented through the Plan;

NOW THEREFORE, in consideration of the foregoing, and in consideration of the other mutual considerations, promises, releases, and covenants as set forth below, the sufficiency of which is hereby acknowledged, it is hereby agreed as follows:

## **DEFINITIONS**

The following definitions (as well as those provided elsewhere in this TCJC Settlement Agreement) apply to this TCJC Settlement Agreement only and are not intended to be used for any other purpose.  In addition, the singular form of a word includes the plural and vice versa; "or" is not exclusive; all pronouns apply to the male, female and neutral genders; the word "any" includes the word "all" and vice versa; the word "including" means including without limitation; and the past tense of a word includes the present tense and vice versa.

A.      "***Abuse Claim***" shall have the meaning assigned to it under the Plan, and for the avoidance of doubt, includes Post-1975 Chartered Organization Abuse Claims.

B.      "***Affirmation Order***" shall have the meaning set forth in the Plan and shall be in form and substance acceptable to the Parties.

C.      "***Agreement Effective Date***" shall have the meaning set forth in Section I of this TCJC Settlement Agreement.

D.      "***Bankruptcy Case***" means the Chapter 11 cases filed February 18, 2020, by Boy Scouts of America and Delaware BSA, LLC in the United States Bankruptcy Court for the District of Delaware, *In re Boy Scouts of America and Delaware BSA, LLC,* Case No. 20-10343 (LSS), and shall include any appeals therefrom (and any adversary proceedings therein).

E.      "***Bankruptcy Code***" means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.,* as amended from time to time.

F.      "***Bankruptcy Court***" means the United States Bankruptcy Court for the District of Delaware.

G.       "***Coalition***" means the Coalition of Abused Scouts for Justice.

H.      "***Claim***" shall have the meaning set forth in the Plan.

3

I.      "***Confirmation Order***" means an order of the Bankruptcy Court confirming the Plan, approving this TCJC Settlement Agreement, and granting the relief specified in the TCJC Settlement Agreement, in each case, in form and substance acceptable to the Parties.

J.      "***Debtors***" means Boy Scouts of America and Delaware BSA, LLC.

K.      "***Debtor and Related Insurance Rights***" means any and all rights, titles, privileges, interests, claims, demands or entitlements, as of the Plan Effective Date, to any proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, arising under or attributable to:  (i) the Abuse Insurance Policies, the Insurance Settlement Agreements, and claims thereunder and proceeds thereof; (ii) the Insurance Actions; and (iii) the Insurance Action Recoveries.

L.      "***District Court***" means the United States District Court for the District of Delaware.

M.      "***Estate***" means the bankruptcy estate of the BSA under Section 541 of the Bankruptcy Code.

N.      "***Execution Date***" means the date the last signature of the Parties is placed on this TCJC Settlement Agreement.

O.      "***Fiduciary Out***" has the meaning set forth in Section VIII of this TCJC Settlement Agreement.

P.       "***Final Order***" has the meaning set forth in the Plan.

Q.      "***Local Councils***" has the meaning set forth in the Plan.

R.      "***Perpetrator***" has the meaning set forth in the Plan.

S.     "*Person*" means an individual, a corporation, a partnership, an association, a trust or any other entity or organization, and any federal, state or local governmental or quasi-governmental body or political subdivision or any agency, department, board or instrumentality thereof.

T.     "*Plan*" means the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA*, *LLC*, dated September 30, 2021 [Docket No. 6443] (including all exhibits, schedules, and plan supplements thereto), as the same may be amended or modified from time to time pursuant to section 1127 of the Bankruptcy Code, which Plan shall incorporate this TCJC Settlement Agreement, shall be consistent with this TCJC Settlement Agreement's terms, and shall be, in form and substance (including as to any amendment or modification),  acceptable to the Parties, unless otherwise indicated herein.

U.     "*Plan Effective Date*" shall have the same meaning as the term "Effective Date" in the Plan.

V.     "*Releasing Parties*" shall mean the Settlement Parties as defined in Article X.J.5.a of the Plan.

W.     "*Scouting*" has the meaning set forth in the Plan.

X.     "*Settling Insurance Companies*" has the meaning set forth in the Plan.

Y.      "*TCJC*" means The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole.

Z.     "*TCJC Parties*" means The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole, and its affiliates and personnel; provided, however, that no Perpetrator is or shall be a TCJC Party.

AA.    "***TCJC Abuse Claim***" means any Abuse Claim in connection, in whole or in part, with TCJC's involvement in, or sponsorship of, one or more Scouting units (including any Claim that has been asserted or that may be amended to assert a proof of claim alleging Abuse, whether or not timely filed, in the Bankruptcy Case, or any such Claim that has been asserted against the Settlement Trust).

BB.    "***TCJC Claims***" means any Claims that were or could have been asserted by TCJC against the Debtors or the other Releasing Parties, including any Indirect Abuse Claims.

CC.    "***TCJC Insurance Rights***" means TCJC's rights, titles, privileges, interests, claims, demands or entitlements, as of the Plan Effective Date, to any proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, arising under or attributable to:  (i) the Abuse Insurance Policies, the Insurance Settlement Agreements, and claims thereunder and proceeds thereof; (ii) the Insurance Actions; and (iii) the Insurance Action Recoveries.

DD.    "***TCJC Released Claims***" means (i) any and all TCJC Abuse Claims and (ii) any and all TCJC Claims.

EE.    "***TCJC Settlement Term Sheet***" means that term sheet setting forth the principal terms of the TCJC Settlement Agreement, as appended to the *Sixth Mediators' Report* that was filed on September 14, 2021 [D.I. 6210].

## I.    CONDITIONS TO EFFECTIVENESS

A.    This TCJC Settlement Agreement shall become effective on the earliest date on which all of the following conditions precedent have occurred (the "***Agreement Effective Date***"); *provided*, *however*, that any of the conditions precedent set out in this Section I may be waived pursuant to a writing signed by each Party:

1.      Each Party has executed the TCJC Settlement Agreement;

2.      TCJC shall have received a release from each Releasing Party, as provided in Article X.J.5. of the Plan;

3.      The Bankruptcy Court confirms the Plan, including approval of the TCJC Settlement Agreement, and thereafter enters the Confirmation Order, which shall be reasonably acceptable to TCJC concerning the approval of the TCJC Settlement Agreement and shall be consistent with the terms of the TCJC Settlement Agreement and the TCJC Settlement Term Sheet;

4.      The Confirmation Order provides for a release and Channeling Injunction for the benefit of TCJC with respect to TCJC Abuse Claims;

5.      The District Court enters the Affirmation Order with respect to the Plan and the Affirmation Order is reasonably acceptable to TCJC concerning the approval of the TCJC Settlement Agreement and shall be consistent with the terms of the TCJC Settlement Agreement and the TCJC Settlement Term Sheet; and

6.      The Plan Effective Date has occurred.

## II.    TCJC CONTRIBUTION TO THE SETTLEMENT TRUST

### II.1.    TCJC Cash Contribution

A.      On, or as soon as reasonably practicable after, the Plan Effective Date has occurred, subject to all of the terms and conditions of this TCJC Settlement Agreement, TCJC shall pay the total amount of two hundred fifty million dollars ($250,000,000.00) (the "***Settlement Payment***") into an escrow account (the "***Escrow Account***"), to be administered by an independent escrow agent acceptable to the Parties pursuant to an escrow agreement in form and substance acceptable to the Parties.

B.       The Settlement Payment (and all income earned thereon minus (a) the fees of the escrow agent, and (b) any taxes that are payable and other costs of the Escrow Account, which amounts in (a) and (b) shall be paid from the corpus of the Escrow Account (such income (or loss) minus such amounts, the "***Net Income***")) shall be paid in United States currency, via wire transfer or other acceptable means at TCJC's discretion, and shall remain in the Escrow Account until the Confirmation Order and Affirmation Order become Final Orders, on which date the Settlement Payment shall be released from the Escrow Account to the Settlement Trust (the "***Release Date***"); *provided, however*, that, at its written election, TCJC may authorize the payment of the Settlement Payment directly to the Settlement Trust on the Plan Effective Date or may authorize the release of the Settlement Payment from the Escrow Account to the Settlement Trust at any time thereafter before the Confirmation Order or Affirmation Order become Final Orders, in which event the date on which TCJC authorizes the payment or release of the Settlement Payment to the Settlement Trust shall be the "Release Date".

C.       The Parties agree that the Settlement Trust will have investment discretion with respect to the Settlement Payment while it is in the Escrow Account, subject to TCJC's reasonable approval of the investment protocol under which the Settlement Payment may be invested by the Settlement Trust; *provided however*, that the Settlement Trust will bear all risks associated with any such investment of the Settlement Payment and that no loss or failure to achieve desired investment returns on the Settlement Payment while it is in the Escrow Account shall require TCJC to increase the Settlement Amount it is paying; *provided further*, *however*, that the Debtors, Reorganized BSA, the Local Councils and the Chartered Organizations shall have no liability or obligations to TCJC or the Settlement Trust, the Settlement Trust shall have no liability or obligations to TCJC, and TCJC shall have no liability or obligations to the

Settlement Trust (or any other Party or Entity), whatsoever for any loss or failure to achieve desired investment returns on the Settlement Payment while it is in the Escrow Account.

D.      Notwithstanding anything to the contrary contained in this TCJC Settlement Agreement, the obligation of TCJC to pay the Settlement Amount is subject to the condition that the Agreement Effective Date shall have occurred, and the Release Date shall be subject to the further condition that the Confirmation Order or the Affirmation Order shall have become Final Orders (unless TCJC consents otherwise in writing).

E.      The Parties agree that (i) the Settlement Payment is the total amount TCJC is obligated to pay on account of any and all TCJC Released Claims; and (ii) the Confirmation Order and Affirmation Order shall provide that on and after the Agreement Effective Date and TCJC's full and complete payment of the Settlement Payment, TCJC shall be a Protected Party under the Plan.

F.      The Settlement Payment shall be used in accordance with the Plan, Confirmation Order, and Affirmation Order.

**II.2.    Contribution of Insurance Rights to the Settlement Trust**

A.      On the Plan Effective Date, TCJC will consent, pursuant to the Plan, to the assignment and transfer by the Debtors, Local Councils, and any other co-insureds of the Debtor and Related Insurance Rights, as provided in the Plan.

B.      On the Plan Effective Date, TCJC will transfer and assign to the Settlement Trust any and all of its rights, titles, privileges, interests, claims, demands or entitlements, as of the Plan Effective Date, to any proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity, now existing or hereafter arising, accrued or unaccrued, liquidated or

unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, arising under or attributable to the TCJC Insurance Rights.

## III.    RELEASES

A.    **Release of TCJC Claims.**  Upon the date that both the Confirmation Order and the Affirmation Order have become Final Orders, for good and valuable consideration, the adequacy of which is hereby confirmed, the TCJC Parties shall waive and release the TCJC Claims to the fullest extent permitted by law, as provided in and subject to Article X.J.5.a of the Plan; *provided*, *however*, that the Indirect Abuse Claims (Claim Nos. 1248 and 12530) filed by TCJC relating to the payment of costs to defend and resolve Abuse Claims shall be subordinated and not otherwise receive distributions until the date that both the Confirmation Order and the Affirmation Order have become Final Orders at which time the Indirect Abuse Claims shall be released in full, as provided in and subject to Article X.J.5.a of the Plan.  TCJC further agrees to not file or assert any claim against the Settlement Trust, BSA or Reorganized BSA arising from any act or omission of BSA on or prior to the date that both the Confirmation Order and the Affirmation Order have become Final Orders, except in accordance with the Plan and this TCJC Settlement Agreement.

B.    **Release of TCJC Released Claims.**  Upon the date that both the Confirmation Order and the Affirmation Order have become Final Orders, for good and valuable consideration, the adequacy of which is hereby confirmed, the Settlement Parties shall release the TCJC Parties, as provided in and subject to Article X.J.5.b of the Plan.

C.    **Release of Settling Insurance Companies Released Claims.**  As provided in and subject to Article X.J.6 of the Plan, upon the date that both the Confirmation Order and the Affirmation Order have become Final Orders, for good and valuable consideration, the adequacy of which is hereby confirmed, TCJC fully and forever releases and discharges all Settling

10

Insurance Companies from all Causes of Action relating to Abuse Insurance Policies issued by such Settling Insurance Companies.

        D.    **Unknown or Future Claims.**  The Parties expressly acknowledge that there may be changes in the law and/or the Parties may hereafter discover facts different from, or in addition to, those that they now believe to be true with respect to any and all of the Claims released in this Section III.  Nevertheless, the Parties hereby agree that the releases set forth in Section III shall be and remain effective in all respects, notwithstanding any changes in the law and/or the discovery of such additional or different facts.  In addition, the Parties acknowledge they have been advised by their respective legal counsel and are familiar with the provisions of Section 1542 of the California Civil Code, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

The Parties expressly waive and relinquish any and all rights or benefits they have or may have under California Civil Code § 1542 and under any other federal or state statute, rule, law, or common law principle of similar effect, as to the releases given in this TCJC Settlement Agreement, to the full extent that such right or benefit may be lawfully waived.  In connection with the waiver and relinquishment of rights or benefits under California Civil Code § 1542 or any other federal or state statute, rule, law or common law principle of similar effect, each Party acknowledges that it fully understands that facts may later be discovered in addition to or different from those facts which are now known or believed to be true with respect to the subject matter of this TCJC Settlement Agreement, and that it is that Party's intention hereby to fully, finally and forever release all claims and rights, known or unknown, suspected or unsuspected,

which now exist, may exist in the future, and/or have ever existed in the past, as to the matters released in Sections III.A and III.B, and III.C of this TCJC Settlement Agreement.

      E.      **Agreement Rights and Obligations Not Affected.**  The releases set forth in Section III of this TCJC Settlement Agreement are not intended to, shall not and shall not be deemed to, extend to or otherwise release or discharge any rights, privileges, benefits, duties, or obligations of the Parties by reason of, or otherwise arising under, this TCJC Settlement Agreement, the Plan, the Confirmation Order, or the Affirmation Order.

## IV.     CHANNELING INJUNCTION

      A.      Upon the Plan Effective Date, pursuant to the Channeling Injunction as set forth in Article X.F of the Plan and consistent with the terms of the TCJC Settlement Agreement and the TCJC Settlement Term Sheet, any and all TCJC Abuse Claims (i) shall be permanently channeled to the Settlement Trust in accordance with the Channeling Injunction under the Plan; (ii) shall thereafter be asserted and pursued exclusively against the Settlement Trust; (iii) may not proceed in any manner against TCJC or any TCJC Party in any forum whatsoever, including any state, federal, or non-U.S. court or any administrative or arbitral forum; and (iv) shall be processed, liquidated, and paid in accordance with the terms, provisions, and procedures of the Settlement Trust Documents.

      B.      In the event that any litigation asserting a TCJC Abuse Claim is filed naming TCJC as a defendant in violation of the terms of the Confirmation Order, the Settlement Trust shall, at the request of TCJC, promptly appear (1) before the Bankruptcy Court to obtain entry of an order enforcing the Channeling Injunction and (2) in such litigation and seek the dismissal of TCJC as a defendant in such case.  Under no circumstances shall the Settlement Trust be required to reimburse or indemnify TCJC for any claims, liabilities, losses, actions, suits,

proceedings, third-party subpoenas, damages, costs, and expenses, including any liabilities related to, arising out of, or in connection with any TCJC Abuse Claim.

## V.        LIBERALIZATION OF TCJC SETTLEMENT AGREEMENT

A.        [In the event any non-Debtor Protected Party is afforded any greater or additional protections or benefits in connection with the Plan or any settlements related to the Plan, including those relating to releases, findings, indemnities, and injunctions, and any other relevant terms of orders, than those protections and benefits afforded to TCJC in this TCJC Settlement Agreement and the Plan, the Debtors shall incorporate language in the Plan or Confirmation Order providing such protections or benefits to TCJC; *provided*, that the limited indemnity provided to Local Councils shall not be considered a greater or additional protection or benefit for purposes of this provision.]

## VI.      BANKRUPTCY-RELATED OBLIGATIONS

A.        The Plan shall incorporate this TCJC Settlement Agreement in form and substance acceptable to the Parties and shall constitute a request by the BSA for the Bankruptcy Court to approve this TCJC Settlement Agreement, including the release of the TCJC Released Claims as provided in Section III.A, pursuant to sections 1123, 1141, and 105 of the Bankruptcy Code and Bankruptcy Rule 9019.

B.        The Parties shall cooperate in good faith to ensure that the Confirmation Order and Affirmation Order (i) are in form and substance acceptable to the Parties, (ii) are entered by the Bankruptcy Court, and (iii) become Final Orders.

C.        Except (i) to contend that a Party has breached this TCJC Settlement Agreement; (ii) to the extent the Plan, Confirmation Order, or Affirmation Order do not incorporate and provide for the approval of this TCJC Settlement Agreement in a manner that is in form and substance acceptable to the Parties; or (iii) in the event this TCJC Settlement Agreement is not

approved or does not go into effect, TCJC shall support and shall not object to the Plan or approval of the Plan Documents, including the Settlement Trust Agreement and the Trust Distribution Procedures, or seek formal discovery from the BSA (and the BSA shall not seek formal discovery from TCJC) with respect to the Plan so long as the TCJC Parties are included as Protected Parties in the Plan and the Plan (including the Settlement Trust Agreement and the Trust Distribution Procedures),is otherwise consistent with the terms of this TCJC Settlement Agreement and the TCJC Settlement Term Sheet; *provided*, *however*, notwithstanding anything to the contrary contained in this TCJC Settlement Agreement, nothing herein shall be construed to preclude or limit TCJC's right to object to the Plan, or to take any other actions in the Bankruptcy Case that it may deem necessary to protect TCJC's rights and interests or in response to a breach of this TCJC Settlement Agreement by any Party, in the event that this TCJC Settlement Agreement is not approved by the Court or to the extent that the Plan includes any alternatives or conditions under which this TCJC Settlement Agreement would not be part of the Plan as confirmed and the Agreement Effective Date would not occur.

D.      Consummation of this TCJC Settlement Agreement is expressly conditioned upon the occurrence of the Agreement Effective Date, except as expressly otherwise provided in this TCJC Settlement Agreement.

E.      Notwithstanding anything to the contrary in this TCJC Settlement Agreement, in the event of any judicial disapproval of this TCJC Settlement Agreement, including the Bankruptcy Court's refusal to enter the Confirmation Order or the District Court's refusal to enter the Affirmation Order, or if on appeal the Confirmation Order or the Affirmation Order is vacated, reversed, or modified in a manner that is not in form and substance acceptable to the

Parties, TCJC and the BSA shall have the right to declare this TCJC Settlement Agreement null and void.

F.      In the event this TCJC Settlement Agreement shall become null and void all payments to the Escrow Account made by TCJC prior to the time it is declared null and void, along with all Net Income earned thereon (and if the Release Date shall have occurred, all income earned thereon by the Settlement Trust), if any, shall be returned to TCJC from the Escrow Account.

G.      TCJC shall be treated as a Contributing Chartered Organization under the Plan and shall be provided all benefits and protections afforded to Contributing Chartered Organizations, including the benefit and protection of any releases and channeling (or other) injunctions.  TCJC shall be treated as a Protected Party under the Plan, such that TCJC will be subject to (i) the protection of the Channeling Injunction and (ii) the releases of holders of Abuse Claims.  Holders of Abuse Claims will not be permitted to opt out of the Channeling Injunction or third-party releases with respect to TCJC's status as a Protected Party.

H.      TCJC agrees to (1) timely vote its Indirect Abuse Claims (Claim Nos. 1248 and 12530) and any other Claims against the Debtors to accept the Plan and not change or revoke its votes and (2) not "opt out" of the third-party releases contained in the Plan, so long as the TCJC Parties are included as Protected Parties in the Plan, and the Plan (including the Settlement Trust Agreement and the Trust Distribution Procedures) is otherwise consistent with the terms of this TCJC Settlement Agreement and the TCJC Settlement Term Sheet.

I.      On the Plan Effective Date, to the extent applicable, the rights and obligations of the BSA under this TCJC Settlement Agreement shall be deemed to have been assigned and transferred to the Settlement Trust without need of further action by any Person, and the

Settlement Trust shall be bound by all of the provisions of this TCJC Settlement Agreement. Reorganized BSA shall continue to be bound by this TCJC Settlement Agreement as if it were a Party hereto and shall retain the obligations and benefits hereunder to the extent consistent with the Plan.

## VII.    TERMINATION

A.    Any of the Parties may terminate this TCJC Settlement Agreement (for the Coalition, FCR, and AHCLC, such termination shall be effective as to itself only) if one of the following events occurs on or before the later of the Release Date or Agreement Effective Date:

1.    The entry of a Confirmation Order or Affirmation Order confirming or affirming a plan of reorganization in the Bankruptcy Case, if such plan, Confirmation Order, or Affirmation Order does not contain the provisions set out in Section I.A of this TCJC Settlement Agreement.

2.    The entry by the Bankruptcy Court or District Court of a Final Order denying approval of this TCJC Settlement Agreement, or holding that any provision of the Plan (as it pertains to this TCJC Settlement Agreement), this TCJC Settlement Agreement is unlawful.

3.    The entry by the Bankruptcy Court, before the Plan Effective Date, of a Final Order converting the Bankruptcy Case into a case under Chapter 7 of the Bankruptcy Code or dismissing the Bankruptcy Case.

B.    TCJC may terminate this TCJC Settlement Agreement if: (a) (i) any Party breaches its obligations to TCJC under this TCJC Settlement Agreement in any material respect; (ii) the Debtors do not seek confirmation of the Plan or to have the Plan Effective Date occur; or (iii) the Debtors do not take all reasonable actions to defend confirmation of the Plan against any appeals or other challenges; *provided* that such breach or failure remains uncured (to the extent

16

curable) for a period of fifteen (15) business days following the applicable Party's receipt of notice thereof served in accordance with this TCJC Settlement Agreement; (b) the FCR exercises a Fiduciary Out; or (c) the Coalition, FCR, or AHCLC terminates the TCJC Settlement Agreement as to itself in accordance with Section VI.A above or Section VI.D or Section VI.E below.

C.       The Debtors may terminate this TCJC Settlement Agreement if TCJC breaches its obligations to the Debtors under this TCJC Settlement Agreement in any material respect and such breach remains uncured (to the extent curable) for a period of fifteen (15) business days following the Party's receipt of notice thereof served in accordance with this TCJC Settlement Agreement.

D.       The Coalition, FCR, or AHCLC may terminate this TCJC Settlement Agreement, with respect to itself only, if TCJC breaches its obligations to the Coalition, FCR, or AHCLC, respectively, under this TCJC Settlement Agreement in any material respect and such breach remains uncured (to the extent curable) for a period of fifteen (15) business days following the Party's receipt of notice thereof served in accordance with this TCJC Settlement Agreement.

E.       This TCJC Settlement Agreement shall terminate automatically, with respect to the FCR only, if the FCR exercises a Fiduciary Out.

F.       This TCJC Settlement Agreement shall terminate automatically if the Debtors exercise a Fiduciary Out.

## VIII.   EFFECT OF TERMINATION

In the event of a termination of this TCJC Settlement Agreement in accordance with Section VI above, each of the Parties (other than the remaining Parties to the TCJC Settlement Agreement, if any, in the event of a termination under Section VI.A,  Section VI.D, or Section VI.E above) shall, to the fullest extent possible, be restored to the position it was in (and shall

have all the rights it had) before entering into this TCJC Settlement Agreement, including with respect to return of payments into the Escrow Account in accordance with Section VI.F, and shall be released from any prospective commitments, undertakings, and agreements under or related to this TCJC Agreement, other than obligations under this TCJC Settlement Agreement that by their terms expressly survive termination; *provided, however,* that (1) termination of this TCJC Settlement Agreement shall not relieve any Party of any liability on account of any material breach hereof and (2) if this TCJC Settlement Agreement is terminated after the Plan Effective Date, the provisions of Sections [VI.I], [VIII], IX of this TCJC Settlement Agreement shall apply.

## IX.     FIDUCIARY OBLIGATIONS OF THE DEBTORS AND FCR.

Notwithstanding anything in this TCJC Settlement Agreement to the contrary, no term or condition of this TCJC Settlement Agreement shall require the Debtors or the FCR to take or refrain from taking any action that it or they determine in good faith would be inconsistent with its or their respective fiduciary duties under applicable law (the right to take or refrain from taking any such action, a "***Fiduciary Out***").

## X.     FINDINGS AND DETERMINATIONS.

Subject to modifications by the Debtors, the Coalition, and the FCR that are reasonably acceptable to TCJC, the Plan and/or Confirmation Order may include each of the findings and determinations set forth in Article IX.A.3.j, Article IX.A.3.q, Article IX.A.3.r, Article IX.A.3.s, and Article IX.A.3.t of the Plan (as the same may be amended or modified from time to time, the "**Findings and Determinations**").  TCJC shall not object to, or take any action in support of any Entity that objects to, the Findings and Determinations.

## XI.    TRUST DISTRIBUTION PROCEDURES.

Subject to modification by the Debtors, the Coalition, and the FCR, the Trust Distribution Procedures may be in the form attached as Exhibit A to the Plan. TCJC shall not object to the Trust Distribution Procedures, the selection of the Settlement Trustee as provided in the Plan and Settlement Trust Agreement. TCJC shall not participate in or otherwise interfere with the administration of the Settlement Trust.

## XII.    COOPERATION

A.    Each Party shall use its reasonable efforts to achieve the occurrence of the Agreement Effective Date and to cause the Confirmation Order and Affirmation Order to become Final Orders, and to take such steps and execute such documents as may be reasonably necessary and proper to effectuate the purpose and intent of this TCJC Settlement Agreement and to preserve its validity and enforceability. In the event that any action or proceeding is commenced or prosecuted by any Person to invalidate or prevent the validation, enforcement, or carrying out of all or any provisions of this TCJC Settlement Agreement, the Parties mutually agree to cooperate fully in opposing such action or proceeding.

B.    Each of the Parties shall reasonably cooperate with each of the other Parties in responding to or opposing any motion, objection, Claim, assertion, appeal or argument by any third party that this TCJC Settlement Agreement is not binding, or should be avoided, or that valuable and fair consideration or reasonably equivalent value has not been exchanged pursuant to this TCJC Settlement Agreement.

## XIII.    THIRD PARTY BENEFICIARIES

This TCJC Settlement Agreement is intended to confer rights and benefits only on the Parties and the TCJC Parties. The TCJC Parties shall be intended third party beneficiaries of this TCJC Settlement Agreement. No other person shall have any legally enforceable rights or

benefits under this TCJC Settlement Agreement, except for the Parties' and the TCJC Parties' respective successors and assigns as permitted hereunder, including the Settlement Trust. Except as provided herein, no Party or TCJC Party may assign this TCJC Settlement Agreement or any of its rights, benefits, or obligations hereunder without prior written consent of all other Parties hereto, which consent shall not be unreasonably withheld.

## XIV.  NO ADMISSIONS AND NON-ADMISSIBILITY OF THE TCJC SETTLEMENT AGREEMENT

Nothing contained in this TCJC Settlement Agreement, or in any negotiations, discussions, correspondence or other materials of any kind relating to this TCJC Settlement Agreement or relating to the negotiation of this TCJC Settlement Agreement, shall be deemed to be an admission on the part of the Parties with respect to any matter or any factual or legal issue of any kind. Except as may be necessary to enforce the terms of this TCJC Settlement Agreement, neither this TCJC Settlement Agreement itself, nor any negotiations, discussions, correspondence, or other materials of any kind relating to this TCJC Settlement Agreement or relating to the negotiation of this TCJC Settlement Agreement, shall be discoverable or admissible in any legal or equitable proceeding of any kind, including any lawsuit, mediation, arbitration, administrative proceeding or action, or any other proceeding or action of any kind.

## XV.  BINDING EFFECT OF AGREEMENT

All terms and provisions of this TCJC Settlement Agreement shall be binding on, and shall inure to the benefit of, the Parties and their respective successors and assigns, including the Settlement Trust.

## XVI.  DISPUTE RESOLUTION

If any dispute should arise concerning the terms, meaning, or implementation of this TCJC Settlement Agreement, the Parties agree to use their best efforts to reach a prompt

resolution of such dispute.  If the Parties are unable to reach an agreement and such dispute arises prior to the entry of the Confirmation Order or the Affirmation Order, they shall proceed to mediation before the Mediators, and in such case, any Party may initiate litigation in the Bankruptcy Court to the extent the Bankruptcy Court has subject-matter jurisdiction, or to the extent it does not, in any other appropriate forum, but no Party may initiate litigation until forty-five (45) days after a mediation has commenced and the Mediators have jointly determined that the Parties' mediation has reached an impasse.  All of the Parties consent to personal jurisdiction in any federal court (including the Bankruptcy Court) or state court in the State of Delaware for purposes of resolving any dispute concerning the terms, meaning, or implementation of this TCJC Settlement Agreement.

## XVII.  CONSTRUCTION OF TCJC SETTLEMENT AGREEMENT

A.      The Parties represent and acknowledge that they have participated in the preparation and drafting of this TCJC Settlement Agreement or have each given their approval to all of the language contained in this TCJC Settlement Agreement, and it is expressly agreed and acknowledged that if any of the Parties later asserts that there is an ambiguity in the language of this TCJC Settlement Agreement, such asserted ambiguity shall not be presumptively construed for or against any other Party on the basis that one Party drafted the language of this TCJC Settlement Agreement or played a greater role in the drafting of the language.

B.      The headings of this TCJC Settlement Agreement are inserted for convenience and are not part of the provisions hereof and shall have no force or effect.

C.      If any provision of this TCJC Settlement Agreement or application thereof is held to be invalid or unenforceable, the remainder of this TCJC Settlement Agreement shall remain in effect and be interpreted so as best to reasonably give effect to the intent of the Parties. Notwithstanding the foregoing, Sections II, III, IV, V, VI, VII, VIII, IX, X, XI, and the

corresponding Definitions and the injunctions to be set forth in the Confirmation Order or the Affirmation Order shall not be severable from this TCJC Settlement Agreement.

## XVIII. PUBLIC STATEMENTS

## XIX. THE PARTIES, JOINING STATE COURT COUNSEL, AND JOINING LOCAL COUNCILS SHALL COOPERATE WITH EACH OTHER IN GOOD FAITH, AND THE AHCLC WILL ENSURE THAT ALL LOCAL COUNCILS COOPERATE IN GOOD FAITH, TO COORDINATE ON THE TIMING AND SUBSTANCE OF PUBLIC STATEMENTS REGARDING THE SETTLEMENT SET FORTH IN THIS TCJC SETTLEMENT AGREEMENT, INCLUDING PRESS RELEASES, COURT FILINGS, AND IN-COURT STATEMENTS. REPRESENTATIONS, WARRANTIES AND OTHER MISCELLANEOUS PROVISIONS

A.      Each Party represents and warrants that it has taken all necessary corporate and legal action required to duly approve the making and performance of this TCJC Settlement Agreement and, subject to the occurrence of the Agreement Effective Date, that no further action is necessary to make this TCJC Settlement Agreement binding and legally enforceable.

B.      Each Party represents and warrants that, to the best of its knowledge and belief, the making and performance of this TCJC Settlement Agreement will not violate any provision of law or any of its respective articles of incorporation or by-laws or any contract or agreement by which it is bound.

C.      Each Party represents and warrants that it is the owner of the rights and Claims to be compromised and released by it under this TCJC Settlement Agreement and it has not assigned or transferred to any Person any Claim or other matter to be compromised and released herein.

D.      Each Party represents and warrants that this TCJC Settlement Agreement has been entered into in good faith, as a result of arm's-length negotiations, with advice of counsel, and that this TCJC Settlement Agreement represents a fair, reasonable, proportionate and good-faith compromise of disputed Claims, disputed liabilities and disputed issues.

E.      Each Party represents and warrants that it has read this TCJC Settlement Agreement in its entirety, fully understands all of its terms and the consequences thereof, and that the person signing this TCJC Settlement Agreement on its behalf has full and complete authority and competency to legally bind it to all terms and consequences of this TCJC Settlement Agreement.

F.      Each Party represents and warrants that this TCJC Settlement Agreement is supported by valid and lawful consideration sufficient to make all aspects of this TCJC Settlement Agreement legally binding and enforceable.

G.      This TCJC Settlement Agreement sets forth the entire agreement between the Parties as to its subject matter, and supersedes any and all prior or contemporaneous statements, agreements, negotiations, or understandings, whether written or oral, except that the TCJC Settlement Agreement should be read *in pari materia* with the Plan.

H.      All notices, demands, or other communications to be provided pursuant to this TCJC Settlement Agreement shall be in writing and sent by electronic mail and overnight mail (or United States first-class mail, postage prepaid), to the Parties at the addresses set forth below, or to such other persons or addresses as the Parties may designate in writing from time to time:

> For TCJC:
>
> Paul Rytting
> 50 East North Temple Street
> Salt Lake City, Utah 84150-3630
> (801) 240-4642
> RyttingPD@ChurchofJesusChrist.org
>
> With a copy to:
>
> Jeffrey Bjork
> Latham & Watkins LLP
> 355 South Grand Avenue, Suite 100
> Los Angeles, CA 90071

23

(213) 485-1234
jeff.bjork@lw.com

Adam J. Goldberg
Latham & Watkins LLP
1271 Avenue of the Americas
New York, New York 10020
(212) 906-1200
adam.goldberg@lw.com

For the BSA:

Steven P. McGowan
General Counsel
Boy Scouts of America
1325 West Walnut Hill Lane
Irving, TX 75038
(972) 580-7847
steve.mcgowan@scouting.org

With a copy to:

Jessica C. Lauria
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200
jessica.lauria@whitecase.com

Michael C. Andolina
Matthew E. Linder
White & Case LLP
111 South Wacker Drive
Chicago, IL 60606
(312) 881-5400
mandolina@whitecase.com
mlinder@whitecase.com

For the Coalition:

David J. Molton
Eric R. Goodman
Coalition of Abused Scouts for Justice
c/o Brown Rudnick LLP
Seven Times Square
New York, NY 10036
(212) 209-4800
dmolton@brownrudnick.com

egoodman@brownrudnick.com
sbeville@brownrudnick.com
taxelrod@brownrudnick.com

For the FCR:

James L. Patton
Robert S. Brady
Edwin J. Harron
c/o Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
jpatton@ycst.com
rbrady@ycst.com
eharron@ycst.com

For the AHCLC:

Richard G. Mason
Joseph C. Celentino
Ad Hoc Committee of Local Councils
c/o Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York  10019
(212) 403-1000
RGMason@wlrk.com
JCCelentino@wlrk.com

I.      This TCJC Settlement Agreement may be amended only by a writing signed by or on behalf of each Party.

J.      Each Party may sign an e-mail copy of this TCJC Settlement Agreement, in counterparts, with the same effect as if each Party had signed an original of the same document.

**DRAFT**
**SUBJECT TO FURTHER NEGOTIATION**

IN WITNESS WHEREOF, the Parties have duly executed this TCJC Settlement Agreement as of the last date indicated below.

| | |
|---|---|
| Boy Scouts of America and Delaware BSA, LLC | The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole |

By: _____/s/_____

Name: Roger C. Mosby

Title:  President and CEO

Date:  [●], 2021

By: _____/s/_____

Name: Paul Rytting

Title:  Director of Risk Management

Date:  [●], 2021

Coalition of Abused Scouts for Justice

Future Claimants' Representative

By: _____/s/_____

Name: [●]

Title:  [●]

Date:  [●], 2021

By: _____/s/_____

Name: [●]

Title:  [●]

Date:  [●], 2021

Ad Hoc Committee of Local Councils

By: _____/s/_____

Name: [●]

Title:  [●]

Date:  [●], 2021