## Exhibit U

## Form of BSA Settlement Trust Note

**You may access a full and complete copy of the Form of BSA Settlement Trust Note, free of charge, at https://omniagentsolutions.com/bsa-plansupplement.**

DRAFT
SUBJECT TO FURTHER NEGOTIATION

# PROMISSORY NOTE[1]

**$80,000,000.00**　　　　　　　　　　　　　　　　　　　　　　　　　　[CITY], [STATE]

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　[●], 2022

　　　　FOR VALUE RECEIVED, Boy Scouts of America, a congressionally chartered nonprofit corporation under title 36 of the United States Code (the "Issuer" or "BSA"), hereby unconditionally promises to pay [Settlement Trust], a trust organized under the laws of Delaware (the "Noteholder"), in lawful money of the United States of America in immediately available funds, the principal sum of EIGHTY MILLION U.S. DOLLARS (US $80,000,000.00) (the "Note Amount") as evidenced by this promissory note (as may be amended, restated, modified and/or supplemented from time to time, this "Note") or, if less than the Note Amount, the unpaid principal amount of the Note issued by the Issuer in favor of the Noteholder, in the manner and on the dates set forth in this Note. Unless defined elsewhere herein, capitalized terms used herein shall have the meaning provided in Section 5 hereof.

　　　　1.　　__Payments__. All payments of principal and cash interest due hereunder shall be made in U.S. Dollars and in immediately available funds and shall be made to the Noteholder Bank Account.

　　　　2.　　__Interest__.  The Issuer agrees to pay interest in respect of the unpaid principal amount of the Note (the "Interest") from the Effective Date until the full repayment thereof (whether at maturity, by prepayment or otherwise) at a rate equal to 5.50% per annum (the "Interest Rate"), calculated on the basis of the actual number of days elapsed in a 360-day year. Accrued (and theretofore unpaid) interest shall be payable semi-annually on February 15 and August 15 of each year (commencing on [August 15, 2022]) and on the Maturity Date (each such date, an "Interest Payment Date"). Interest shall be payable in cash, except that, at the election of the Issuer (a "PIK Election"), such Interest accrued on or prior to [_____], 2023, may be paid-in-kind. On each applicable Interest Payment Date, such accrued Interest for which a PIK Election has been made shall be automatically capitalized and added (and constitute part of) the then-outstanding principal amount of the Note Amount for all purposes of this Note and shall bear Interest in accordance with this Note. In order to make a PIK Election, the Issuer must deliver a written notice (a "PIK Election Notice") to the Noteholder on or prior to the applicable Interest Payment Date stating that the Interest due on such Interest Payment Date shall be paid-in-kind. If no PIK Election Notice is delivered on or prior to an Interest Payment Date with respect to the Interest due on such Interest Payment Date, such Interest shall, for the avoidance of doubt, be payable in cash.

---

[1]　This document remains subject to ongoing review and material revision in all respects. The Debtors, Coalition, the Future Claimants' Representative, the Ad Hoc Committee, the Creditors' Committee, JPM, Hartford and TCJC (each as defined in the Plan) are each continuing to review the documents that are part of the Plan Supplement, and each of their respective rights are reserved with respect to the Plan Supplement and the information contained therein, as applicable.

   3. <u>Mandatory Prepayments</u>.  Commencing on [February 15, 2023], the Issuer agrees to repay the outstanding principal of the Note in consecutive annual principal installments equal to:

   (a) $4,500,000; <u>plus</u>

   (b) $3.50 <u>multiplied</u> by the aggregate number of Youth Members as of December 31 of the preceding calendar year up to the Forecasted Number of Youth Members for such calendar year as set forth on Annex A attached hereto; <u>plus</u>

   (c) $50 <u>multiplied</u> by the aggregate number of High Adventure Base Participants during the preceding calendar year; <u>plus</u>

   (d) $50 <u>multiplied</u> by the aggregate number of Youth Members in excess of the Forecasted Number of Youth Members for such calendar year, excluding the portion of the excess that is comprised of members under the ScoutReach program, as set forth in the Issuer's five-year business plan; <u>plus</u>

   (e) $150 <u>multiplied</u> by the aggregate number of High Adventure Base Participants, excluding those attending events with a registration fee of less than $300 (e.g., for non-typical High Adventure Base activities), in excess of the forecasted number of High Adventure Base Participants for such year as set forth in the Issuer's five-year business plan.

   Such principal installments shall be made on February 15 of each year, commencing with the second such date to occur after the Effective Date; <u>provided</u> that the Note and all other amounts owed hereunder with respect to the Note shall be paid in full no later than the Maturity Date, and notwithstanding the scheduled amortization, the final payment by Issuer in respect of the Note on the Maturity Date shall be in an amount sufficient to repay all amounts owing by Issuer under this Note.

   4. <u>Voluntary Prepayments</u>.  The Issuer may on any Business Day voluntarily prepay the outstanding principal of the Note, without penalty or premium, in whole or in part, at any time and from time to time.

   5. <u>Reporting Requirements.</u> The Issuer shall furnish to the Noteholder, within forty five (45) days after the end of each of March, June, September and December of each year (commencing with [March 31, 2022]), a report indicating the actual number of Youth Members and High Adventure Base Participants as of the last day of the fiscal quarter then most recently ended, which report shall also set forth, in each case, in comparative form, the figures for the previous fiscal year.

   5. <u>Definitions</u>.   As used herein, the following terms shall have the meanings herein specified unless the context otherwise requires:

   "<u>Business Day</u>" shall mean any day excluding Saturday, Sunday and any day which shall be in the City of New York a legal holiday or a day on which banking institutions are authorized by law or other governmental actions to close. When the payment of any obligation or the performance of any covenant, duty or obligation is stated to be due or performance required on (or before) a day which is not a Business Day, the date of such payment or performance shall extend to the immediately succeeding Business Day, and such extension of time shall be reflected in computing interest or fees, as the case may be.

   "<u>Effective Date</u>" shall mean the "Effective Date" as defined in the Plan.

   "<u>Financial Projections</u>" shall mean the Financial Projections attached to the disclosure statement for the Plan.

"Forecasted Numbers of Youth Members" shall mean the forecasted number of Youth Members (x) for any period ending on or prior to December 31, 2025, as set forth in the Financial Projections and (y) for any period ending thereafter, the forecasted number of Youth Members for the calendar year ending December 31, 2025 as set forth in the Financial Projections.

"Forecasted Numbers High Adventure Base Participants" shall mean the forecasted number of High Adventure Base Participants (x) for any period ending on or prior to December 31, 2025, as set forth in the Financial Projections and (y) for any period ending thereafter, the forecasted number of High Adventure Base Participants for the calendar year ending December 31, 2025 as set forth in the Financial Projections.

"High Adventure Base Participant" shall mean a registered Youth Member who has paid the participation fee (which has not been refunded in whole or in part) for attending a BSA program at one of the four high adventure bases (Florida Sea Base, Northern Tier, Philmont or Summit Bechtel Reserve). High Adventure Base Participants do not include Youth Members attending a Jamboree, an Order of the Arrow program, or an event sponsored by the World Organization of the Scouting Movement (WOSM) or a member of WOSM other than the BSA.

"Maturity Date" shall mean [_____], 2032.

"Noteholder Bank Account" shall mean the following account or such other account as the Noteholder may designate from time to time in writing to the Issuer.

| | |
|---|---|
| Account Bank: | [_____] |
| Account Name: | [_____] |
| Account No.: | [_____] |
| Swift Code: | [_____] |

"Plan" shall mean the Modified Fifth Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC filed by the Debtors, as the same may be amended or modified from time to time pursuant to section 1127 of the Bankruptcy Code, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

"Youth Member" shall mean a youth member of the BSA registered as of December 31 of any applicable year in a core program (Cub Scouts, Scouts BSA (in each case under age 18), Sea Scouts, Venturing, or Exploring (in each case under age 21)), whose registration is current as of such date and who has paid the individual annual registration fee (which fee has not been refunded in whole or in part).

6. Effectiveness. This Note shall become effective on the date on which the Issuer and the Noteholder shall have executed and delivered a counterpart hereof (whether the same or different counterparts).

7. Miscellaneous. (a) Except as otherwise expressly provided herein, all notices and other communications provided for hereunder shall be in writing and mailed, telecopied, emailed or delivered: if (i) to the Issuer at [_____], Attention: [_____], (t) [_____], (f) +[_____], (email) [_____] and (ii), if to the Noteholder, at [_____], Attention: [_____], (t) [_____], (f) +[_____], (email) [_____], or, in either case, at such other address as shall be designated by the Noteholder or the Issuer in a written notice to the other. All such notices and communications shall, when mailed or telecopied or sent by overnight courier, be effective when deposited in the mail or delivered to the overnight courier, as the case may be, or sent by facsimile transmission.

(b)  **THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS.** Any legal action or proceeding with respect to this Note may be brought in the courts of the State of Texas sitting in Dallas County and of the United States of America for the District of Northern Texas and, by execution and delivery of this Note, each party hereby accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts. Each party further irrevocably consents to the service of process out of any of the aforementioned courts in any action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to such party at its address designated in Section 7(a), such service to become effective seven days after such mailing.  Each party hereby irrevocably waives any objection which it may now or hereafter have to the laying of venue of any of the aforesaid actions or proceedings arising out of or in connection with this Note brought in the courts referred to above and hereby further irrevocably waives and agrees not to plead or claim in any such court that any such action or proceeding brought in any such court has been brought in an inconvenient forum.  The Issuer hereby irrevocably waives, and the Noteholder by its acceptance of the benefits of this Note hereby irrevocably waives, all right to a trial by jury in any action, proceeding or counterclaim arising out of or relating to this Note or the transactions contemplated hereby.

(c)  This Note shall be binding on each party hereto and its successors and permitted assigns and shall inure to the benefit of the other party and its successors and assigns.

(d)  No amendment, modification or waiver of any provision of this Note shall be effective unless it is in writing and signed by the Noteholder and the Issuer.

(e)  Section headings are for convenience of reference and shall not be construed as part of this Note.

8.  Security Agreement and Intercreditor Agreement.

(a)  The obligations under this Note are secured pursuant to, and in accordance with, that certain Security Agreement, dated as of the Effective Date (as amended, restated, supplemented or otherwise modified from time to time), between the Issuer and the Noteholder.

(b)  The Noteholder is party to that certain Intercreditor Agreement, dated as of the Effective Date, (as amended, restated, supplemented or otherwise modified from time to time, the "Intercreditor Agreement"), among Noteholder and JPMorgan Chase Bank, N.A..  Notwithstanding anything herein to the contrary, the lien and security interest granted to the Noteholder under the Security Agreement and the exercise of any right or remedy by the Noteholder hereunder and under the Security Agreement are subject to the provisions of the Intercreditor Agreement.  In the event of any conflict or inconsistency between the provisions of the Intercreditor Agreement and this Note, the provisions of the Intercreditor Agreement shall control.

\* \* \*

       **IN WITNESS WHEREOF,** the Issuer has executed this Promissory Note as of the date first above written.

                                                        **BOY SCOUTS OF AMERICA, as Issuer**

                                                        _____
                                                        Name:
                                                        Title:

Accepted and agreed as of the date first above written:

**[SETTLEMENT TRUST], as Noteholder**

_____
Name:
Title: