## **Exhibit V**

**Form of DST Agreement**

**You may access a full and complete copy of the Form of DST Agreement, free of charge, at <u>https://omniagentsolutions.com/bsa-plansupplement</u>.**

*DRAFT*

# TRUST AGREEMENT[1]

# DATED AS OF [●], 2022

# PURSUANT TO THE MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF

# REORGANIZATION FOR BOY SCOUTS OF AMERICA

# AND DELAWARE BSA, LLC

---

[1] This document remain subject to ongoing review and material revision in all respects. The Debtors, Coalition, the Future Claimants' Representative, the Ad Hoc Committee, the Creditors' Committee, JPM, Hartford, and TCJC are each continuing to review the documents that are part of the Plan Supplement, and each of their respective rights are reserved with respect to the Plan Supplement and the information contained therein, as applicable.

## Table of Contents

**ARTICLE 1. AGREEMENT OF TRUST**...............................................................................**2**

**Section 1.1**    **Creation and Name.**...............................................................................**2**

**Section 1.2**    **Purposes.**...............................................................................................**2**

**Section 1.3**    **Transfer of Assets.**...............................................................................**2**

**Section 1.4**    **Acceptance of Assets.**...........................................................................**2**

**Section 1.5**    **Beneficiaries.**.......................................................................................**2**

**Section 1.6**    **Jurisdiction.**.........................................................................................**3**

**Section 1.7**    **Relation-back election.**........................................................................**3**

**Section 1.8**    **Employer identification number.**........................................................**3**

**Section 1.9**    **Relationship to Plan.**...........................................................................**3**

**ARTICLE 2. POWERS AND TRUST ADMINISTRATION**.................................................**3**

**Section 2.1**    **Powers.**.................................................................................................**3**

**Section 2.2**    **Limitations on the Trustee.**..................................................................**5**

**Section 2.3**    **General Administration.**.......................................................................**6**

**Section 2.4**    **Accounting.**..........................................................................................**6**

**Section 2.5**    **Transfers of the Trust Corpus.**.............................................................**6**

**ARTICLE 3. ACCOUNTS, EXPENSES**...............................................................................**7**

**Section 3.1**    **Accounts.**.............................................................................................**7**

**Section 3.2**    **Payment of Trust Operating Expenses.**................................................**7**

**ARTICLE 4. DISTRIBUTIONS**...........................................................................................**8**

**Section 4.1**    **Payments.**.............................................................................................**8**

**Section 4.2**    **Distributions.**.......................................................................................**8**

i

**ARTICLE 5. TRUSTEE; DELAWARE TRUSTEE** ................................................................**8**

Section 5.1    Number of Trustees. ................................................................**8**

Section 5.2    Term of Service, Successor Trustee. ................................................**8**

Section 5.3    Appointment of Successor Trustee. ..................................................9

Section 5.4    Compensation and Expenses of Trustee. ...........................................9

Section 5.5    Trustee's Independence. ................................................................9

Section 5.6    Standard of Care; Exculpation. ......................................................10

Section 5.7    Protective Provisions. ................................................................11

Section 5.8    Indemnification. ......................................................................11

Section 5.9    Bond. ................................................................................12

Section 5.10    Delaware Trustee. ..................................................................12

**ARTICLE 6. GENERAL PROVISIONS** ................................................................**15**

Section 6.1    Irrevocability. ......................................................................15

Section 6.2    Term; Termination. ..................................................................15

Section 6.3    Outgoing Trustee Obligations. ......................................................15

Section 6.4    Taxes. ................................................................................16

Section 6.5    Modification. ........................................................................17

Section 6.6    Severability. ........................................................................17

Section 6.7    Notices. ..............................................................................17

Section 6.8    Successors and Assigns. ............................................................18

Section 6.9    Limitation on Transferability; Beneficiaries' Interests. ........................18

Section 6.10    Exemption from Registration. ......................................................19

Section 6.11    Entire Agreement; No Waiver. ......................................................19

Section 6.12    Headings. ............................................................................19

**Section 6.13**     **Governing Law.**.................................................................................................. **19**

**Section 6.14**     **Settlor's Representative.**.................................................................................. **20**

**Section 6.15**     **Dispute Resolution.**......................................................................................... **20**

**Section 6.16**     **Independent Legal and Tax Counsel.**.......................................................... **21**

**Section 6.17**     **Waiver of Jury Trial.**...................................................................................... **21**

**Section 6.18**     **Effectiveness.**..................................................................................................... **21**

**Section 6.19**     **Counterpart Signatures.**.................................................................................. **21**

**EXHIBIT 1  CERTIFICATE OF TRUST** ........................................................................**23**

**EXHIBIT 2  DST NOTE**.....................................................................................................**24**

**EXHIBIT 3  DST NOTE MECHANICS**............................................................................**25**

# TRUST AGREEMENT

This Trust Agreement (this "**Trust Agreement**"), dated as of [●], 2022 and effective as of the Effective Date, is entered into in accordance with the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC, dated as of September 30, 2021 (as it may be amended, modified, or supplemented, the "**Plan**"), by Boy Scouts of America (the "**Settlor**", "**Debtor**" or, after the Effective Date (as defined in the Plan) "**Reorganized Debtor**"), as debtor and debtor in possession whose chapter 11 case is administered under Case No. 20-10343 (LSS) in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"); [●] as trustee (together with any successor serving in such capacity, the "**Trustee**"); and [●], as the Delaware trustee (together with any successor serving in such capacity, the "**Delaware Trustee**").  All capitalized terms used but not otherwise defined herein shall have their respective meanings as set forth in the Plan (including the exhibits and schedules thereto) or in the Confirmation Order (as defined in the Plan), as applicable.

## RECITALS

(A)    The Debtor has, or contemporaneously with the execution of this Trust Agreement will have, reorganized under the provisions of chapter 11 of the Bankruptcy Code in a case filed in the Bankruptcy Court, jointly administered and known as In re Boy Scouts of America and Delaware BSA, LLC, Case No. 20-10343 (Bankr. D. Del. 2020) (LSS) (collectively, the "**Chapter 11 Cases**").

(B)    The Debtor is executing this Trust Agreement in its capacity as Settlor to implement the Plan and to create a Delaware statutory trust (the "**Trust**") to make payments under the DST Note and to make payments to the Pension Plan, as applicable, and for the other purposes as set forth in this Trust Agreement.

(C)    The Confirmation Order has been entered by the Bankruptcy Court and is in full force and effect.

(D)    The Plan and Confirmation Order provide, among other things, for the creation of the Trust to make payments under the DST Note and to make payments to the Pension Plan, as applicable, in accordance with this Trust Agreement, the Plan and the Confirmation Order.

(E)    The Plan and Confirmation Order provide that the Trust shall be funded by monthly contributions made by Local Councils into an account owned by the Trust that is referred to herein as the LC Reserve Account.

**NOW, THEREFORE**, it is hereby agreed as follows:

## ARTICLE 1.
## AGREEMENT OF TRUST

Section 1.1     _Creation and Name._ The Debtor, as Settlor, hereby creates a trust known as the "**LC Statutory Trust**," which is the "**Trust**" provided for and referred to in the Plan as the DST. The Trustee may transact the business and affairs of the Trust in the name of the Trust and references herein to the Trust shall include the Trustee acting on behalf of the Trust. It is the intention of the parties hereto that the Trust created hereby constitutes a statutory trust under Chapter 38 of title 12 of the Delaware Code, 12 Del. C. §§ 3801 _et seq_. (the "**Act**"), and that the Confirmation Order, the Plan and this Trust Agreement, including the Exhibits hereto (the Confirmation Order, the Plan and this Trust Agreement, including all Exhibits hereto, collectively, the "**Trust Documents**"), constitute the governing instruments of the Trust. The Trustee and the Delaware Trustee are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto as **Exhibit 1**.

Section 1.2     _Purposes._ As set forth in the Plan, the purposes of the Trust are to (i) issue the DST Note to the Settlement Trust as of the Effective Date, (ii) collect, manage and invest Cash contributed by Local Councils on a monthly basis to an account (and any replacement thereof) owned by the Trust in accordance with the DST Note Mechanics; and (iii) as determined in accordance with the Plan, the DST Note Mechanics and this Trust Agreement, make periodic payments (a) to the Pension Plan or (b) toward principal and interest on the DST Note.

Section 1.3     _Transfer of Assets._ Pursuant to the Plan, the Trust will receive and hold all right, title and interest in and to monthly contributions (the "Contributions") that will be made by Local Councils into the LC Reserve Account that shall be owned by the Trust, which Contributions shall be in an amount equal to the Required Percentage of the Local Councils' respective payrolls (such amounts, together with any income or gain earned thereon and proceeds derived therefrom, collectively, the "**Trust Assets**"). The Contributions shall be transferred to the Trust free and clear of any liens, encumbrances, charges, claims, interests or other liabilities of any kind of the Debtor or its affiliates or Related Non-Debtor Entities, any creditor or any other person or entity, other than the Settlement Trust Lien (as defined below).

Section 1.4     _Acceptance of Assets._ In furtherance of the purposes of the Trust, the Trustee, on behalf of the Trust, hereby expressly accepts the transfer to the Trust of the Contributions, subject to the terms of the Trust Documents.  It is the intent that none of the Settlor, the Local Councils or any other person or entity will have any further equitable or legal interest in, or with respect to, the Trust Assets or the Trust. Nothing in this Trust Agreement shall be construed in any way to limit the scope, enforceability, or effectiveness of the terms of the Plan or Confirmation Order.

Section 1.5     _Beneficiaries._

(a)     The beneficial owners (within the meaning of the Act) of the Trust shall be the Local Councils that have made Contributions (the "**Beneficiaries**" and each, individually, a "**Beneficiary**") to the Trust, with each Beneficiary having a _pro rata_ percentage interest ("**Percentage Interest**") in the Trust based on the amount of its Contributions relative to the total Contributions made by all Beneficiaries; provided, however, that the Beneficiaries shall have no

voting, consent, economic or other rights in respect to the Trust under this Trust Agreement or the Act except as expressly provided in Section 4.2 of this Trust Agreement.

(b)     The Beneficiaries shall be subject to the terms of this Trust Agreement and the other Trust Documents.

Section 1.6     *Jurisdiction.* The Bankruptcy Court shall have continuing jurisdiction with respect to the Trust; provided, however, the courts of the State of Delaware, including any federal court located therein, shall also have jurisdiction over the Trust.

Section 1.7     *Relation-back election.*

The Trustee and the Debtor shall fully cooperate in filing a relation-back election under Treasury Regulation Section 1.468B-1(j)(2), to treat the Trust as coming into existence as a settlement fund as of the earliest possible date.

Section 1.8     *Employer identification number.*

Upon establishment of the Trust, the Trustee shall apply for an employer identification number for the Trust in accordance with Treasury Regulation Section 1.468B-2(k)(4).

Section 1.9     *Relationship to Plan.*

The principal purpose of this Trust Agreement is to aid in the implementation of the Plan and the Confirmation Order and therefore, this Trust Agreement incorporates the provisions of the Plan and the Confirmation Order (which may amend or supplement the Plan). To the extent that there is conflict between the provisions of this Trust Agreement, the provisions of the Plan or the Confirmation Order, each document shall have controlling effect in the following order: (1) the Confirmation Order; (2) the Plan; and (3) this Trust Agreement.

## ARTICLE 2.
## POWERS AND TRUST ADMINISTRATION

Section 2.1     *Powers.*

(a)     The Trustee is empowered to take all actions, including such actions as may be consistent with those expressly set forth above, as the Trustee deems necessary to reasonably ensure that the Trust is treated as a "qualified settlement fund" under Section 468B of the Internal Revenue Code  and the regulations promulgated pursuant thereto. Further, the Trustee may, unilaterally and without court order, amend, either in whole or in part, any administrative provision of this Trust Agreement which causes tax consequences or liabilities inconsistent with the foregoing.

(b)     The Trustee is and shall act as the fiduciary to the Trust in accordance with the provisions of this Trust Agreement. The Trustee shall administer the Trust, the Trust Assets, and any other amounts to be received under the terms of the Trust Documents in accordance with the purposes set forth in Section 1.2 above and in the manner prescribed by the Trust Documents. Subject to the limitations set forth in the Trust Documents, the Trustee shall have the power to take

any and all actions that in the judgment of the Trustee are necessary or advisable to fulfill the purposes of the Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto and any trust power now or hereafter permitted under the laws of the State of Delaware. Nothing in the Trust Documents or any related document shall require the Trustee to take any action if the Trustee reasonably believes that such action is contrary to law.

    (c)  Except as required by applicable law or the Trust Documents, the Trustee need not obtain the order or approval of, or provide notice to, any court in the exercise of any power or discretion conferred hereunder.

    (d)  Without limiting the generality of Sections 2.1(a) and (b) above, and except as limited in the Trust Documents or by applicable law, the Trustee shall have the power to:

    (i)  execute, deliver and perform the Trust's obligations under the DST Note, in the form attached hereto as **Exhibit 2**, including to make payments to the Settlement Trust in accordance with the DST Note and the Trust Documents;

    (ii)  supervise and administer the Trust in accordance with the Trust Documents;

    (iii)  open and maintain the LC Reserve Account as contemplated by the Plan;

    (iv)  receive and hold the Trust Assets in the LC Reserve Account, and exercise all rights with respect thereto;

    (v)  subject to the Plan and Confirmation Order, invest the Trust Assets in its reasonable discretion but subject to Section 3.1 of this Trust Agreement;

    (vi)  to carry out the Trust's obligations under the DST Note Mechanics, as set forth in **Exhibit 3**;

    (vii)  determine and pay liabilities and pay all fees and expenses incurred in administering the Trust, managing the Trust Assets and making distributions (if any) in accordance with the Trust Documents (the "**Trust Operating Expenses**");

    (viii)  to pledge or otherwise grant a security interest in the LC Reserve Account to the Settlement Trust as provided in the Plan (the "**Settlement Trust Lien**");

    (ix)  sue, be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative or other proceeding;

    (x)  to request from the Local Councils any and all reports that the Trustee determines to be reasonable and appropriate to verify the amounts of the Contributions owed to the Trust at any time, and to take any and all action that the Trustee determines is necessary or appropriate in its sole discretion to enforce the Trust's rights to Contributions and any other payments owed to the Trust;

(xi)    appoint such officers and retain such employees, consultants, advisors, independent contractors, experts and agents and engage in such legal, financial, administrative, accounting, investment, auditing and alternative dispute resolution services and activities as the Trust requires, and delegate to such persons such powers and authorities as this Trust Agreement provides or the fiduciary duties of the Trustee permits and as the Trustee, in his or her discretion, deems advisable or necessary in order to carry out the terms of this Trust Agreement;

(xii)    pay reasonable compensation and reimbursement of expenses to any of the Trust's employees, consultants, advisors, independent contractors, experts and agents for legal, financial, administrative, accounting, investment, auditing and alternative dispute resolution services and activities as the Trust requires;

(xiii)    pay reasonable compensation to the Trustee and the Delaware Trustee, and reimburse the Trustee and the Delaware Trustee for all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder;

(xiv)    compensate professionals for services, costs and expenses incurred prior to the Effective Date in accordance with the terms of the Plan and Confirmation Order;

(xv)    execute and deliver such instruments as the Trustee considers advisable or necessary in administering the Trust;

(xvi)    timely file such income tax and other tax returns and statements required to be filed and timely pay all taxes, if any, required to be paid from the Trust Assets and comply with all applicable tax reporting and withholding obligations;

(xvii)    require, in respect of any distribution of Trust Assets, the timely receipt of properly executed documentation (including, without limitation, IRS Form W-9) as the Trustee determines in his or her discretion necessary or appropriate to comply with applicable tax laws;

(xviii)    enter into such other arrangements with third parties as are deemed by the Trustee to be useful in carrying out the purposes of the Trust;

(xix)    in accordance with Section 5.6 below, defend, indemnify, and hold harmless (and purchase insurance indemnifying) the Trust Indemnified Parties (as defined in Section 5.6(a) below) solely from the Trust Assets and to the fullest extent permitted by law;

(xx)    take any and all actions appropriate or necessary in order to carry out the terms of the Trust Documents in respect to the Trust; and

(xxi)    exercise any other powers now or hereafter conferred upon or permitted to be exercised by a trustee under the laws of the State of Delaware that are consistent with the foregoing.

Section 2.2    *Limitations on the Trustee.*

Notwithstanding anything in the Trust Documents to the contrary, the Trustee shall not do or undertake any of the following:

(a)    guaranty any debt;

(b)    make or enter into any loan of Trust Assets (other than the issuance of the DST Note to the Settlement Trust) or grant any lien in any of the Trust Assets or the LC Reserve Account (other than the Settlement Trust Lien);

(c)    make any transfer or distribution of Trust Assets other than those authorized by the Trust Documents;

(d)    engage in any trade or business with respect to the Trust Assets or proceeds therefrom, other than managing such assets;

(e)    engage in any investment of the Trust Assets, other than as provided in Section 3.1 or as otherwise explicitly authorized by this Trust Agreement;

(f)    take any action inconsistent with the Trust Documents in respect to the Trust; or

(g)    engage in any activities inconsistent with the treatment of the Trust as a "qualified settlement fund" within the meaning of Treasury Regulations issued under Section 468B of the Internal Revenue Code .

Section 2.3    *General Administration.* The Trustee shall act in accordance with the Trust Documents. The Trustee shall establish the location of the principal office of the Trust and may change the location of the principal office or establish other offices at other locations in his or her discretion.

Section 2.4    *Accounting.* The fiscal year of the Trust shall begin on January 1 and shall end on December 31 of each calendar year. The Trustee shall maintain the books and records relating to the Trust Assets and income and the payment of Trust Operating Expenses and other liabilities of the Trust. The detail of these books and records and the duration of time during which the Trustee shall keep such books and records shall be such as to allow the Trustee to make a full and accurate accounting of all Trust Assets, as well as to comply with applicable provisions of law and standard accounting practices necessary or appropriate to produce an annual report containing special-purpose financial statements of the Trust, including, without limitation, the assets and liabilities of the Trust as of the end of such fiscal year and the additions, deductions and cash flows for such fiscal year (the "**Annual Report**"); provided however, that the Trustee shall maintain such books and records until the wind-up of the Trust's affairs and satisfaction of all of Trust liabilities.

Section 2.5    *Transfers of the Trust Corpus.*

To the fullest extent permitted by law, neither the principal nor income of the Trust, in whole or part, shall be subject to any legal or equitable claims of creditors of any Beneficiary or others, nor to legal process, nor be voluntarily or involuntarily transferred, assigned, anticipated,

pledged or otherwise alienated or encumbered except pursuant to the Settlement Trust Lien or as may be ordered by the Bankruptcy Court or other court of competent jurisdiction.

## ARTICLE 3.
## ACCOUNTS, EXPENSES

Section 3.1     _Accounts._

(a)     The Trustee shall maintain the LC Reserve Account at a financial depository institution as determined by the Trustee with the consent of the Settlement Trust (a "**Financial Institution**"). Candidates for the positions of Financial Institution shall fully disclose to the Trustee any interest in or relationship with the Reorganized Debtor or its affiliates or Related Non-Debtor Entities. Any such interest or relationship shall not be an automatic disqualification for the position, but the Trustee shall take any such interest or relationship into account in selecting a Financial Institution.

(b)     The Trustee may replace any retained Financial Institution with a successor Financial Institution at any time with the prior consent of the Settlement Trustee and the Beneficiaries.

(c)     Subject to the Plan and the Confirmation Order, the Trustee may maintain such other accounts and invest the Trust Assets in its reasonable discretion but limited to the following forms of investments: (a) cash or cash equivalents, (b) marketable securities issued by the United States Government and supported by the full faith and credit of the United States Treasury, (c) marketable debt securities, rated Aaa by Moody's Investor's Service ("**Moody's**") and/or AAA by Standard & Poor's Corporation ("**Standard & Poor's**"), issued by United States Government-sponsored enterprises, United States Federal agencies, United States Federal financing banks, and international institutions whose capital stock has been subscribed for by the United States, (d) certificates of deposit, time deposits, and bankers acceptances of any bank or trust company incorporated under the laws of the United States or any state, provided that, at the date of acquisition, such investment, and/or the commercial paper or other short term debt obligation of such bank or trust company has a short-term credit rating or ratings from Moody's and/or Standard & Poor's, each at least P-1 or A-1, or (e) bonds or other obligations issued by, or by authority of, any state of the United States, any territory or possession of the United States, including the Commonwealth of Puerto Rico, and agencies thereof, or any political subdivision of any of the foregoing, provided that they must have a short or long term debt rating or ratings from Moody's and/or Standard & Poor's and each such short term rating must be at least MIG 1, P1, A1 or SP1 or if rated as long term securities, one or more of such ratings must be at least Aa3 (Moody's) or AA- (Standard & Poor's).

(d)     The Trustee shall take any and all actions necessary or appropriate to grant and perfect the Settlement Trust Lien, as may be required by the Settlement Trust from time to time.

Section 3.2     _Payment of Trust Operating Expenses._All Trust Operating Expenses shall be payable out of the Trust Assets. None of the Trustee, the Delaware Trustee, any Beneficiary or any

of their officers, agents, advisors, professionals or employees shall be personally liable for the payment of any Trust Operating Expense or any other liability of the Trust.

# ARTICLE 4.
## DISTRIBUTIONS

Section 4.1      *Payments.*The Trustee acknowledges that the Trust is being formed solely for the purposes of making the payments required to be made by the Trust under the Plan and as set forth in Section 1.2 of this Trust Agreement. The Beneficiaries shall not be entitled to any distributions by the Trust except as set forth in Section 4.2 below.

Section 4.2      *Distributions.*Following the Dissolution Date (as defined below) of the Trust and immediately prior to the termination of the Trust, and subject to the Trust Documents and the Act, to the extent there are any Trust Assets remaining after payment of any and all payments required under the Trust Documents, the Trustee shall distribute such remaining Trust Assets to the Beneficiaries in accordance with their respective Percentage Interests.

# ARTICLE 5.
## TRUSTEE; DELAWARE TRUSTEE

Section 5.1      *Number of Trustees.* In addition to the Delaware Trustee appointed pursuant to Section 5.10 hereof, there shall be at least one (1) Trustee serving at all times. The initial Trustee shall be [●].

Section 5.2      *Term of Service, Successor Trustee.*

(a)      Each Trustee serving under this Trust Agreement shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 5.2(b) below, (iii) his or her removal pursuant to Section 5.2(c) below, and (iv) the termination of the Trust pursuant to Section 8.2 below.

(b)      The Trustee may resign at any time upon written notice to the Settlement Trustee and the Local Councils, with a copy to the Reorganized Debtor, [INSERT ADDRESS FOR REORGANIZED DEBTOR HERE] with such notice filed with the Bankruptcy Court. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)      Upon motion to, and order of, the Bankruptcy Court, the Trustee may be removed by [the affirmative vote of 66% of Local Councils] in the event that the Trustee becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence or for other good cause, provided the Trustee has received reasonable notice and an opportunity to be heard, as deemed appropriate by the Bankruptcy Court. Other good cause shall mean fraud, self-dealing, intentional misrepresentation, willful misconduct, indictment for or conviction of a felony in each case whether or not connected to the Trust, any substantial failure to comply with the administration of the Trust or a consistent pattern of neglect and failure to perform or participate in performing the duties of Trustee hereunder.

Section 5.3     *Appointment of Successor Trustee.*

(a)     In the event of the death, resignation or removal of [●] as Trustee (the "**Initial Trustee**"), such vacancy shall immediately be filled by [●], who shall thereafter serve as Trustee pursuant to the terms of the Trust Documents, provided that if [●] is unable to serve as the successor Trustee, the successor Trustee shall be appointed in accordance with the terms of the following sentence. In the event of any vacancy in the office of the Trustee, including the death, resignation or removal of any successor Trustee, such vacancy shall be filled by [●].

(b)     Immediately upon the appointment of any successor Trustee pursuant to Section 5.3(a) above, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in and undertaken by the successor Trustee without any further act. No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee. No predecessor Trustee shall be liable personally for any act or omission of his or her successor Trustee. No successor Trustee shall have any duty to investigate the acts or omissions of his or her predecessor Trustee.

(c)     Each successor Trustee shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 5.2(b) above, (iii) his or her removal pursuant to Section 5.2(c) above, and (iv) the termination of the Trust pursuant to Section 6.2 below.

Section 5.4     *Compensation and Expenses of Trustee.* The Trustee shall receive compensation from the Trust for his, her or its services as Trustee. The amount of the Trustee's compensation shall be as set forth in that certain fee letter delivered to the Trust by the Trustee.  The amounts paid to the Trustee for compensation and expenses shall be disclosed in the Annual Report.

Section 5.5     *Trustee's Independence.*

(a)     The Trustee shall not, during his or her service, hold a financial interest in, act as attorney or agent for, or serve as any other professional for the Reorganized Debtor, its affiliates, Related Non-Debtor Entities, or any Local Council. No Trustee shall act as an attorney for, or otherwise represent, any Person who holds a claim in the Chapter 11 Cases. For the avoidance of doubt, this provision shall not apply to the Delaware Trustee.

(b)     The Trustee, and the Delaware Trustee, shall be indemnified by the Trust in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties.

(c)     Persons dealing with the Trust, the Trustee, and the Delaware Trustee with respect to the affairs of the Trust, shall have recourse only to the Trust Assets to satisfy any liability incurred by the Trust, the Trustee or the Delaware Trustee to such Person in carrying out the terms of this Trust Agreement, and neither the Trustee, the Delaware Trustee, the Beneficiary, nor any of their professionals, advisors, officers, agents, consultants or lawyers shall have any personal obligation to satisfy any such liability.

Section 5.6    *Standard of Care; Exculpation.*

(a)    As used herein, the term "**Trust Indemnified Party**" shall mean the Trustee, the Delaware Trustee and each of their respective members, officers, employees, agents, consultants, lawyers, advisors or professionals (collectively, the "**Trust Indemnified Parties**").

(b)    No Trust Indemnified Party shall be liable to the Trust, any other Trust Indemnified Party, any Beneficiary or any other Person for any damages arising out of the creation, operation, administration, enforcement or termination of the Trust, except in the case of such Trust Indemnified Party's gross negligence, willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction. To the fullest extent permitted by applicable law, the Trust Indemnified Parties shall have no liability for any action in performance of their duties under this Trust Agreement taken in good faith with or without the advice of counsel, accountants, appraisers and other professionals retained by the Trust Indemnified Parties. None of the provisions of this Trust Agreement shall require the Trust Indemnified Parties to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of their respective rights and powers. Any Trust Indemnified Party may rely, without inquiry, upon writings delivered to it under any of the Trust Documents, which the Trust Indemnified Party reasonably believes to be genuine and to have been given by a proper person. Notwithstanding the foregoing, nothing in this Section 5.6 shall relieve the Trust Indemnified Parties from any liability for any actions or omissions arising out of the gross negligence, willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction; provided that in no event will any such person be liable for punitive, exemplary, consequential or special damages under any circumstances. Any action taken or omitted by the Trust Indemnified Parties with the approval of the Bankruptcy Court, or any other court of competent jurisdiction, will conclusively be deemed not to constitute gross negligence, willful misconduct, bad faith, or fraud.

(c)    The Trust Indemnified Parties shall not be subject to any personal liability whatsoever, whether in tort, contract or otherwise, to any Person in connection with the affairs of the Trust or for any liabilities or obligations of the Trust except for those acts that are finally judicially determined by a court of competent jurisdiction to have arisen out of their own gross negligence, willful misconduct, bad faith, or fraud, and all Persons claiming against the Trust Indemnified Parties, or otherwise asserting claims of any nature in connection with affairs of the Trust, shall look solely to the Trust Assets for satisfaction of any such claims.

(d)    To the extent that, at law or in equity, the Trust Indemnified Parties have duties (including fiduciary duties) or liability related thereto, to the Trust or the Beneficiaries, it is hereby understood and agreed by the parties hereto and the Beneficiaries that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, including Section 3806 of the Act, and replaced by the duties and liabilities expressly set forth in this Trust Agreement with respect to the Trust Indemnified Parties.

(e)    The Trust Indemnified Parties shall be indemnified to the fullest extent permitted by law by the Trust against all liabilities arising out of the creation, operation, administration, enforcement or termination of the Trust, including actions taken or omitted in fulfillment of their duties with respect to the Trust, except for those acts that are finally judicially

determined by a court of competent jurisdiction to have arisen out of their own willful misconduct, bad faith, or fraud.

Section 5.7    *Protective Provisions.*

(a)    Every provision of this Trust Agreement relating to the conduct or affecting the liability of or affording protection to Trust Indemnified Parties shall be subject to the provisions of this Section 5.7.

(b)    In the event the Trustee retains counsel (including at the expense of the Trust), the Trustee shall be afforded the benefit of the attorney-client privilege with respect to all communications with such counsel, and in no event shall the Trustee be deemed to have waived any right or privilege, including, without limitation, the attorney-client privilege, even if the communications with counsel had the effect of guiding the Trustee in the performance of duties hereunder. A successor to any Trustee shall succeed to and hold the same respective rights and benefits of the predecessor for purposes of privilege, including the attorney-client privilege. No Beneficiary or other party may raise any exception to the attorney-client privilege discussed herein as any such exceptions are hereby waived by all parties.

(c)    No Trust Indemnified Party shall be personally liable under any circumstances, except for their own gross negligence, willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction.

(d)    No provision of this Trust Agreement shall require the Trust Indemnified Parties to expend or risk their own personal funds or otherwise incur financial liability in the performance of their rights, duties, and powers hereunder.

(e)    In the exercise or administration of the Trust hereunder, the Trust Indemnified Parties (i) may act directly or through their respective agents or attorneys pursuant to agreements entered into with any of them, and the Trust Indemnified Parties shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys have been selected by the Trust Indemnified Parties in good faith and with due care, and (ii) may consult with counsel, accountants and other professionals to be selected by them in good faith and with due care and employed by them, and shall not be liable for anything done, suffered or omitted in good faith by them in accordance with the advice or opinion of any such counsel, accountants or other professionals.

Section 5.8    *Indemnification.*

(a)    Without the need for further court approval, the Trust hereby indemnifies, holds harmless, and defends the Trust Indemnified Parties in the performance of their duties hereunder to the fullest extent that a trust, including a statutory trust organized under the laws of the State of Delaware, is entitled to indemnify, hold harmless and defend such persons against any and all liabilities, expenses, claims, damages or losses (including attorneys' fees and costs) incurred by them in the performance of their duties hereunder or in connection with activities undertaken by them prior to or after the Effective Date in connection with the formation, establishment, funding or operations of the Trust except for those acts that are finally judicially

determined by a court of competent jurisdiction to have arisen out of their own gross negligence, willful misconduct, bad faith, or fraud.

(b)    Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of the Trust Indemnified Parties in connection with any action, suit or proceeding, whether civil, administrative or arbitrative, from which they are indemnified by the Trust shall be paid by the Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trust Indemnified Parties, to repay such amount in the event that it shall be determined ultimately by final order of the Bankruptcy Court that the Trust Indemnified Parties or any other potential indemnitee are not entitled to be indemnified by the Trust.

(c)    The indemnification provisions of this Trust Agreement with respect to any Trust Indemnified Party shall survive the termination of such Trust Indemnified Party from the capacity for which such Trust Indemnified Party is indemnified. Termination or modification of this Trust Agreement shall not affect any indemnification rights or obligations in existence at such time. In making a determination with respect to entitlement to indemnification of any Trust Indemnified Party hereunder, the person, persons or entity making such determination shall presume that such Trust Indemnified Party is entitled to indemnification under this Trust Agreement, and any person seeking to overcome such presumption shall have the burden of proof to overcome the presumption.

(d)    The rights to indemnification hereunder are not exclusive of other rights which any Trust Indemnified Party may otherwise have at law or in equity, including common law rights to indemnification or contribution.

Section 5.9    *Bond.*The Trustee and the Delaware Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

Section 5.10    *Delaware Trustee.*

(a)    There shall at all times be a Delaware Trustee. The Delaware Trustee shall either be (i) a natural person who is at least twenty-one (21) years of age and a resident of the State of Delaware, or (ii) a legal entity that has its principal place of business in the State of Delaware, otherwise meets the requirements of applicable Delaware law to be eligible to serve as the Delaware Trustee and shall act through one or more persons authorized to bind such entity. If at any time the Delaware Trustee shall cease to be eligible in accordance with the provisions of this Section 5.10, it shall resign immediately in the manner and with the effect hereinafter specified in Section 5.10(c) below. For the avoidance of doubt, the Delaware Trustee will only have such rights, duties and obligations as expressly provided by reference to the Delaware Trustee hereunder. The Trustee shall have no liability for the acts or omissions of any Delaware Trustee.

(b)    The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Trustee set forth herein. The Delaware Trustee shall be a trustee of the Trust for the sole and limited purpose of fulfilling the requirements of Section 3807(a) of the Act and for taking such actions as are required to be taken by a Delaware Trustee under the Act. The duties (including fiduciary duties), liabilities and

obligations of the Delaware Trustee shall be limited to accepting legal process served on the Trust in the State of Delaware and the execution of any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute under Section 3811 of the Act. There shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee. To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating to the Trust or the Beneficiaries, such duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Trust Agreement. The Delaware Trustee shall have no liability for the acts or omissions of the Trustee. Any permissive rights of the Delaware Trustee to do things enumerated in this Trust Agreement shall not be construed as a duty and, with respect to any such permissive rights, the Delaware Trustee shall not be answerable for other than its willful misconduct, bad faith or fraud. The Delaware Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Trust Agreement at the request or direction of the Trustee or any other person pursuant to the provisions of this Trust Agreement unless the Trustee or such other person shall have offered to the Delaware Trustee security or indemnity (satisfactory to the Delaware Trustee in its discretion) against the costs, expenses and liabilities that may be incurred by it in compliance with such request or direction. The Delaware Trustee shall be entitled to request and receive written instructions from the Trustee and shall have no responsibility or liability for any losses or damages of any nature that may arise from any action taken or not taken by the Delaware Trustee in accordance with the written direction of the Trustee. The Delaware Trustee may, at the expense of the Trust, request, rely on and act in accordance with officer's certificates and/or opinions of counsel, and shall incur no liability and shall be fully protected in acting or refraining from acting in accordance with such officer's certificates and opinions of counsel. To the extent the provisions of this Section 5.10 are inconsistent with the provisions set forth in Section 5.6, 5.7 or 5.8 of this Trust Agreement, the provisions of this Section 5.10 shall control.

(c)    The Delaware Trustee shall serve until such time as the Trustee removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Trustee in accordance with the terms of Section 5.10(d) below. The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days' advance written notice to the Trustee, provided that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Trustee in accordance with Section 5.10(d) below, provided further, that if any amounts due and owing to the Delaware Trustee hereunder remain unpaid for more than ninety (90) days, the Delaware Trustee shall be entitled to resign immediately by giving written notice to the Trustee. If the Trustee does not act within such sixty (60) day period, the Delaware Trustee, at the expense of the Trust, may apply to the Court of Chancery of the State of Delaware or any other court of competent jurisdiction for the appointment of a successor Delaware Trustee.

(d)    Upon the resignation or removal of the Delaware Trustee, the Trustee shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee. Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Act. Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Trustee, and any fees and expenses due to the outgoing Delaware Trustee are paid. Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers,

13

duties and obligations of the outgoing Delaware Trustee under this Trust Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of his or her duties and obligations under this Trust Agreement. The successor Delaware Trustee shall make any related filings required under the Act, including filing a Certificate of Amendment to the Certificate of Trust in accordance with Section 3810 of the Act.

(e)     Notwithstanding anything herein to the contrary, any business entity into which the Delaware Trustee may be merged or converted or with which it may be consolidated or any entity resulting from any merger, conversion or consolidation to which the Delaware Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor of the Delaware Trustee hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto.

(f)     The Delaware Trustee shall be entitled to compensation for its services as agreed pursuant to a separate fee agreement between the Trust and the Delaware Trustee, which compensation shall be paid by the Trust. Such compensation is intended for the Delaware Trustee's services as contemplated by this Trust Agreement. The terms of this paragraph shall survive termination of this Trust Agreement and/or the earlier resignation or removal of the Delaware Trustee.

(g)     The Delaware Trustee shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument or document, other than this Trust Agreement, whether or not an original or a copy of such agreement has been provided to the Delaware Trustee. The Delaware Trustee shall have no duty to know or inquire as to the performance or nonperformance of any provision of any other agreement, instrument or document, other than this Trust Agreement. Neither the Delaware Trustee nor any of its directors, officers, employees, agents or affiliates shall be responsible for nor have any duty to monitor the performance or any action of the Trust, the Trustee or any other person, or any of their directors, members, officers, agents, affiliates or employee, nor shall it have any liability in connection with the malfeasance or nonfeasance by such party. The Delaware Trustee may assume performance by all such persons of their respective obligations. The Delaware Trustee shall have no enforcement or notification obligations relating to breaches of representations or warranties of any other person. The Delaware Trustee shall have no responsibilities (except as expressly set forth herein) as to the validity, sufficiency, value, genuineness, ownership or transferability of any Trust Asset, written instructions, or any other documents in connection therewith, and will not, be regarded as making nor be required to make, any representations thereto.

(h)     The Delaware Trustee shall not be responsible or liable for any failure or delay in the performance of its obligations under this Trust Agreement arising out of, or caused, directly or indirectly, by circumstances beyond its control, including without limitation, any act or provision of any present or future law or regulation or governmental authority; acts of God; earthquakes; fires; floods; wars; terrorism; civil or military disturbances; sabotage; epidemics; riots; interruptions, loss or malfunctions of utilities, computer (hardware or software) or communications service; accidents; labor disputes; acts of civil or military authority or governmental actions; or the unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility.

## ARTICLE 6.
## GENERAL PROVISIONS

Section 6.1     *Irrevocability.*To the fullest extent permitted by applicable law, the Trust is irrevocable. The Settlor shall not (i) retain any ownership or residual interest whatsoever with respect to any Trust Assets or (ii) have any rights or role with respect to the management or operation of the Trust, or the Trustee's administration of the Trust.

Section 6.2     *Term; Termination.*

(a)     The term for which the Trust is to exist shall commence on the later to occur of (i) the Effective Date and (ii) the date of the filing of the Certificate of Trust, and shall terminate pursuant to the following provisions.

(b)     The Trust shall automatically dissolve no later than ninety (90) days after the date the Trustee approves the dissolution of the Trust because (i) all of the Contributions have been collected by the Trust, (ii) all payment obligations under the DST Note and to the Pension Plan have been made in accordance with the Trust Documents, and (iii) necessary arrangements and reserves have been made to discharge all anticipated remaining Trust obligations and Trust Operating Expenses in a manner consistent with the Trust Documents (the "**Dissolution Date**").

(c)     Following the dissolution and distribution of the Trust Assets (if any, but in accordance with Section 4.2 of this Trust Agreement), the Trust shall terminate, and the Trustee and the Delaware Trustee (acting solely at the written direction of the Trustee) shall execute and cause a Certificate of Cancellation of the Certificate of Trust to be filed in accordance with the Act. Notwithstanding anything to the contrary contained in this Trust Agreement, the existence of the Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation.

(d)     Upon termination of the Trust and accomplishment of all activities described in this Trust Agreement, the Trustee and its professionals shall be discharged and exculpated from liability (except for acts or omissions resulting from the gross negligence, willful misconduct, knowing and material violation of law or fraud of the Trustee or his agents or representatives). The Trustee may, at the expense of the Trust, seek an order of the Bankruptcy Court confirming the discharges, exculpations and exoneration referenced in the preceding sentence.

Section 6.3     *Outgoing Trustee Obligations.*

In the event of the resignation or removal of the Trustee, the resigning or removed Trustee shall:

(a)     execute and deliver by the effective date of resignation or removal such documents, instruments, records and other writings as may be reasonably requested by the successor Trustee to effect such resignation or removal and the conveyance of the Trust Assets then held by the resigning or removed Trustee to the successor Trustee;

15

(b)        deliver to the successor Trustee all documents, instruments, records and other writings relating to the Trust Assets as may be in the possession or under the control of the resigning or removed Trustee;

(c)        otherwise assist and cooperate in effecting the assumption of the resigning or removed Trustee's obligations and functions by the successor Trustee; and

(d)        irrevocably appoint the successor Trustee (and any interim trustee) as its attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such resigning or removed Trustee is obligated to perform under this Trust Agreement. Such appointment shall not be affected by the subsequent disability or incompetence of the Trustee making such appointment. The Bankruptcy Court also may enter such orders as are necessary to effect the termination of the appointment of the Trustee and the appointment of the successor Trustee.

Section 6.4        *Taxes.*

(a)        The Trust is intended to qualify as a "qualified settlement fund" within the meaning of Section 1.468B-1 et seq. of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code, as amended (the "**QSF Regulations**"), with respect to which the Reorganized BSA shall timely make an election to treat the Trust as a "grantor trust" for U.S. federal income tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes.

(b)        The Trustee shall be the "administrator" of the Trust within the meaning of Section 1.468B-2(k)(3) of the Treasury Regulations and, in such capacity, such administrator shall (i) prepare and timely file, or cause to be prepared and timely filed, such income tax and other tax returns and statements required to be filed and shall timely pay all taxes required to be paid by the Trust out of the Trust Assets, which assets may be sold by the Trustee to the extent necessary to satisfy tax liabilities of the Trust, (ii) comply with all applicable tax reporting and withholding obligations, (iii) satisfy all requirements necessary to qualify and maintain qualification of Trust as a qualified settlement fund and a grantor trust, within the meaning of the QSF Regulations, and (iv) take no action that could cause the Trust to fail to qualify as a qualified settlement fund and a grantor trust within the meaning of the QSF Regulations. The Trustee may request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the Trust for all taxable periods through the Dissolution Date.

(c)        As soon as reasonably practicable after the Effective Date, but in no event later than one hundred twenty (120) days thereafter, the Trust shall make a good faith valuation of the Contributions and such valuation shall be used consistently by all parties for all U.S. federal income tax purposes. In connection with the preparation of the valuation contemplated hereby, the Trust shall be entitled to retain such professionals and advisors as the Trustee shall determine to be appropriate or necessary, and the Trustee shall take such other actions in connection therewith as he or she determines to be appropriate or necessary.

(d)        The Trustee may withhold and pay to the appropriate tax authority all amounts required to be withheld pursuant to the IRC or any provision of any foreign, state or local

tax law with respect to any payment or distribution. All such amounts withheld and paid to the appropriate tax authority (or placed in escrow pending resolution of the need to withhold) shall be treated as amounts distributed or paid for all purposes of this Trust Agreement. The Trustee shall be authorized to collect such tax information (including tax identification numbers) as in his or her sole discretion is deemed necessary to effectuate the Plan, the Confirmation Order and this Trust Agreement. In order to receive distributions, if any, the Beneficiary shall be required to provide tax information to the Trustee to the extent the Trustee deems appropriate in the manner and in accordance with the procedures from time to time established by the Trustee for these purposes. The Trustee may refuse to make a payment or distribution unless or until such information is delivered; provided however, that, upon the delivery of such information, the Trustee shall make such delayed payment or distribution, without interest. Notwithstanding the foregoing, if a person fails to furnish any tax information reasonably requested by the Trustee before the date that is three hundred sixty-five (365) calendar days after the request is made, the amount of such distribution shall irrevocably revert to the Trust. In no event shall any escheat to any federal, state or local government or any other entity.

Section 6.5     *Modification.*

      (a)     Material modifications to this Trust Agreement, including Exhibits hereto, may be made only with the consent of the Trustee, subject to the approval of the Bankruptcy Court on notice to the Settlement Trust and the Local Councils, with a copy to the Reorganized Debtor; provided however, that the Trustee may amend this Trust Agreement from time to time without the consent, approval or other authorization of, but with notice to, the Bankruptcy Court, the Settlement Trust and Local Councils, with a copy to the Reorganized Debtor, to make minor corrective or clarifying amendments necessary to enable the Trustee to effectuate the provisions of this Trust Agreement, provided such minor corrective or clarifying amendments shall not take effect until ten (10) days after such notice is given. Except as permitted pursuant to the preceding sentence, the Trustee shall not modify this Trust Agreement in any manner that is inconsistent with the Plan or the Confirmation Order without the approval of the Bankruptcy Court.

      (b)     Notwithstanding anything set forth in this Trust Agreement to the contrary, none of this Trust Agreement, nor any document related thereto shall be modified or amended in any way that could jeopardize or impair (i) the implementation of the Plan in a manner consistent with the Confirmation Order, (ii) the Trust's qualified settlement fund status and grantor trust status under the QSF Regulations, or (iii) the rights, duties, liabilities and obligations of the Delaware Trustee without the written consent of the Delaware Trustee.

Section 6.6     *Severability.*If any provision of this Trust Agreement or application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provisions to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

Section 6.7     *Notices.*Any notices or other communications required or permitted hereunder to the following parties shall be in writing and delivered at the addresses designated below, or sent by email or facsimile pursuant to the instructions listed below, or mailed by overnight courier,

addressed as follows, or to such other address or addresses as may hereafter be furnished in writing to each of the other parties listed below in compliance with the terms hereof.

To the Trustee:

with a copy (which shall not constitute notice) to:

To the Delaware Trustee:

with a copy (which shall not constitute notice) to:

To the Local Councils:

See Schedule [●]

To the Settlement Trust:

with a copy (which shall not constitute notice) to:

All such notices and communications, if mailed, shall be effective when physically delivered at the designated addresses, or if electronically transmitted, shall be effective upon transmission.

Section 6.8    *Successors and Assigns.* The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Trust, the Trustee, the Delaware Trustee and their respective successors and assigns, except that none of such persons may assign or otherwise transfer any of its, or their, rights or obligations under this Trust Agreement except, in the case of the Trust and the Trustee, as contemplated by Section 2.1 and Section 5.2 above, and in the case of the Delaware Trustee, as contemplated by Section 5.10 above.

Section 6.9    *Limitation on Transferability; Beneficiaries' Interests.* The Beneficiary's interests in the Trust shall not (a) be assigned, conveyed, hypothecated, pledged or otherwise transferred, voluntarily or involuntarily, directly or indirectly and any purported assignment, conveyance, pledge or transfer shall be null and void *ab initio*; (b) be evidenced by a certificate or other instrument; (c) possess any voting rights; (d) give rise to any right or rights to participate in the management or administration of the Trust or the Trust Assets; (e) entitle the holder thereof to seek the removal or replacement of any Trustee, whether by petition to the Bankruptcy Court or any other court or otherwise; (f) entitle the holder thereof to receive any interest on distributions; and (g) give rise to any rights to seek a partition or division of the Trust Assets. In accordance with the Act, the Beneficiary shall have no interest of any kind in any of the Trust Assets; rather, the Beneficiary shall have an undivided beneficial interest only in cash assets of but only to the extent such cash assets are declared by the Trustee to be distributable as distributions in accordance with

Section 4.2 of this Trust Agreement. For the avoidance of doubt, the Beneficiary shall have only such rights as expressly set forth in the Trust Documents.

Section 6.10    *Exemption from Registration.*

The Parties hereto intend that the rights of the Beneficiary arising under this Trust Agreement shall not be "securities" under applicable laws, but none of the Parties hereto represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If it should be determined that any such interests constitute "securities," the Parties hereto intend that the exemption provisions of section 1145 of the Bankruptcy Code will be satisfied and the offer and sale under the Plan of the beneficial interests in the Trust will be exempt from registration under the Securities Act, all rules and regulations promulgated thereunder, and all applicable state and local securities laws and regulations.

Section 6.11    *Entire Agreement; No Waiver.*

The entire agreement of the parties relating to the subject matter of this Trust Agreement is contained herein and in the documents referred to herein, and this Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

Section 6.12    *Headings.* The headings used in this Trust Agreement are inserted for convenience only and do not constitute a portion of this Trust Agreement, nor in any manner affect the construction of the provisions of this Trust Agreement.

Section 6.13    *Governing Law.*

This Trust Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware, without regard to the conflicts of law provisions thereof which would purport to apply the law of any other jurisdiction. For the avoidance of doubt, none of the following provisions of Delaware law shall apply to the extent inconsistent with the terms of the Trust Documents: (a) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges, (b) affirmative requirements to post bonds for trustees, officers, agents or employees of a trust, (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding or disposition of property, (d) fees or other sums payable to trustees, officers, agents or employees of a trust, (e) the allocation of receipts and expenditures to income or principal, (f) restrictions or limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage or other manner of holding of trust assets, (g) the existence of rights or interests (beneficial or otherwise) in trust assets, (h) the ability of beneficial owners or other persons to terminate or dissolve a trust, and (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of trustees or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Trustee or the Delaware Trustee set forth or referenced in this Trust Agreement. 12 Del. C. § 3540 shall not apply to the Trust.

Section 6.14    *Settlor's Representative.*

Without limiting Section 6.1, the Reorganized Debtor is hereby irrevocably designated as the "**Settlor's Representative**" and is hereby authorized to take any action that is reasonably requested of the Settlor by the Trustee. The Settlor's Representative shall cooperate with the Trustee and the Trust's officers, employees and professionals in connection with the Trust administration, including, but not limited to, (a) providing the Trustee or his or her officers, employees and professionals, upon written request (including e-mail), reasonable access to information related to the Contributions, including, without limitation, delivery of documents in the possession of, or witnesses under the control of, the Reorganized Debtor or the Local Councils to the extent that the Trustee could obtain the same by subpoena, notice of deposition or other permissible discovery request, without the need for a formal discovery request and (b) the information and reporting contemplated by the DST Note Mechanics, as set forth in **Exhibit 3**.

Section 6.15    *Dispute Resolution.*

(a)    Unless otherwise expressly provided for herein, the dispute resolution procedures of this Section 6.15 shall be the exclusive mechanism to resolve any dispute between or among the parties hereto, and the Beneficiaries hereof, arising under or with respect to this Trust Agreement.

(b)    **Informal Dispute Resolution**. Any dispute under this Trust Agreement shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when a disputing party sends to the counterparty or counterparties a written notice of dispute ("**Notice of Dispute**"). Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed thirty (30) days from the date the Notice of Dispute is received by the counterparty or counterparties, unless that period is modified by written agreement of the disputing party and counterparty or counterparties. If the disputing party and the counterparty or counterparties cannot resolve the dispute by informal negotiations, then the disputing party may invoke the formal dispute resolution procedures as set forth below.

(c)    **Formal Dispute Resolution**. The disputing party shall invoke formal dispute resolution procedures, within the time period provided in the preceding subparagraph, by serving on the counterparty or counterparties a written statement of position regarding the matter in dispute ("**Statement of Position**"). The Statement of Position shall include, but need not be limited to, any factual data, analysis or opinion supporting the disputing party's position and any supporting documentation and legal authorities relied upon by the disputing party. Each counterparty shall serve its Statement of Position within thirty (30) days of receipt of the disputing party's Statement of Position, which shall also include, but need not be limited to, any factual data, analysis or opinion supporting the counterparty's position and any supporting documentation and legal authorities relied upon by the counterparty. If the disputing party and the counterparty or counterparties are unable to consensually resolve the dispute within thirty (30) days after the last of all counterparties have served its Statement of Position on the disputing party, the disputing party may file with the Bankruptcy Court a motion for judicial review of the dispute in accordance with Section 6.15(d) below.

(d)    **Judicial Review**. The disputing party may seek judicial review of the dispute by filing with the Bankruptcy Court (or, if the Bankruptcy Court shall not have jurisdiction over any dispute, such court as has jurisdiction under Section 1.6 above) and serving on the counterparty or counterparties and the Trustee, a motion requesting judicial resolution of the dispute. The motion must be filed within forty-five (45) days of receipt of the last counterparty's Statement of Position pursuant to the preceding subparagraph. The motion shall contain a written statement of the disputing party's position on the matter in dispute, including any supporting factual data, analysis, opinion, documentation and legal authorities, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly administration of the Trust. Each counterparty shall respond to the motion within the time period allowed by the rules the court, and the disputing party may file a reply memorandum, to the extent permitted by the rules of the court. Each party shall bear its own costs and expenses of any judicial review under this Section 6.15(d).

Section 6.16    _Independent Legal and Tax Counsel._

All parties to this Trust Agreement have been represented by counsel and advisors of their own selection in this matter. Consequently, the parties agree that the language in all parts of this Trust Agreement shall in all cases be construed as a whole according to its fair meaning and shall not be construed either strictly for or against any party. It is specifically acknowledged and understood that this Trust Agreement has not been submitted to, nor reviewed or approved by, the IRS or the taxing authorities of any state or territory of the United States of America.

Section 6.17    _Waiver of Jury Trial._

Each party hereto and the Beneficiary hereof hereby irrevocably waives, to the fullest extent permitted by applicable law, any and all right to a trial by jury in any legal proceeding arising out of or relating to this Trust Agreement.

Section 6.18    _Effectiveness._

This Trust Agreement shall not become effective until it has been executed and delivered by all the parties hereto.

Section 6.19    _Counterpart Signatures._

This Trust Agreement may be executed in any number of counterparts, each of which shall constitute an original, but such counterparts shall together constitute but one and the same instrument. A signed copy of this Trust Agreement or any amendment hereto delivered by facsimile, email or other means of Electronic Transmission, shall be treated in all manner and respects as an original agreement or instrument and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

IN WITNESS WHEREOF, the parties have executed this Trust Agreement as of the date first set forth above to be effective as of the Effective Date.

[SETTLOR]

[TRUSTEE]

[DELAWARE TRUSTEE]

**EXHIBIT 1**
**CERTIFICATE OF TRUST**

**EXHIBIT 2**
**DST NOTE**

**EXHIBIT 3**
**DST NOTE MECHANICS**

*DRAFT*
*Exhibit 3 to DST Agreement*

### DST Note Mechanics[1]

On the Effective Date, at the request of the Ad Hoc Committee, solely to facilitate payments from the LC Reserve Account, the Trust shall be established, and the Trust shall issue the DST Note in favor of the Settlement Trust in the principal amount of $100 million. Local Councils shall make monthly contributions into an account (and any replacement thereof) owned by the Trust (the "LC Reserve Account") in an amount equal to the Required Percentage of the Local Councils' respective payrolls. Until the DST Note is extinguished, the LC Reserve Account shall be used only to fund contributions to the Pension Plan in accordance with the next sentence and, to the extent of any excess, to pay any Payment Amounts (as defined below) due under the DST Note. If at any time (including the end of any Plan Year) (a) the present value of the accumulated benefits for the Pension Plan, as determined in accordance with the requirements set forth in the definition of "Excess Balance" below, for the most recently ended Plan Year, exceeds (b) the market value of the assets of the Pension Plan (clause (a) minus clause (b) being the "Shortfall Amount"), funds in the LC Reserve Account will be deposited into the Pension Plan up to the lesser of the Local Councils' collective pro rata share of the Shortfall Amount or the balance in the LC Reserve Account.

To enable the Trustee to determine whether there is an Excess Balance for the most recently ended Plan Year, the Reorganized Debtor shall provide to the Trustee a copy of the actuarial report for the Pension Plan for the most recently ended Plan Year promptly upon the Reorganized Debtor's receipt of such report. Such report shall disclose (a) the market value of the assets of the Pension Plan and (b) the present value of the accumulated benefits for the Pension Plan calculated in the manner specified in the definition of "Excess Balance."

The Reorganized Debtor shall determine if there is a Shortfall Amount no less frequently than once per calendar month. If the Reorganized Debtor determines that there is a Shortfall Amount, it shall promptly (a) notify the Trustee of the Shortfall Amount and the Local Councils' collective pro rata share thereof and (b) provide the Trustee with support for the calculation of the Shortfall Amount and the Local Councils' collective pro rata share thereof, including, without limitation, (i) a copy of the actuarial report for the Pension Plan for the most recently ended Plan Year disclosing the present value of the accumulated benefits for the Pension Plan calculated in the manner specified in the definition of "Excess Balance," (ii) documents disclosing the then-current market value of the assets of the Pension Plan, and (iii) documents supporting the Reorganized Debtors' calculation of the Local Councils' collective pro rata share of the Shortfall Amount. The Reorganized Debtor shall provide a copy of such notice and supporting documentation to the Settlement Trust and each Local Council at the time it provides such notice and documentation to the Trustee.

The DST Note shall be: (i) interest bearing at a rate of 1.5% per annum and without recourse except as to the LC Reserve Account; (ii) secured by a lien on the LC Reserve Account; (iii) payable on each Payment Date (as defined below) in an amount equal to the applicable Payment Amount; and (iv) prepayable in whole or in part at any time without premium or penalty. The unpaid balance

---

[1] This document remain subject to ongoing review and material revision in all respects. The Debtors, Coalition, the Future Claimants' Representative, the Ad Hoc Committee, the Creditors' Committee, JPM, Hartford, and TCJC are each continuing to review the documents that are part of the Plan Supplement, and each of their respective rights are reserved with respect to the Plan Supplement and the information contained therein, as applicable.

of the DST Note (if any) remaining on the Payment Date that is the fifteenth anniversary of the First Payment Date (the "DST Note Maturity Date") shall be automatically extinguished and shall be considered forgiven and satisfied after giving effect to any required payment on such date. Other than the lien on the LC Reserve Account, the Settlement Trust shall have no other recourse for payment under the DST Note.

"Cushion Amount" means: (i) from the Effective Date until the first June 1 that is at least one year after the Effective Date (the "First Cushion Date"), $134.86 million; (ii) from the day following the First Cushion Date until June 1 of the following year (the "Second Cushion Date"), $124.86 million; (iii) from the day following the Second Cushion Date until June 1 of the following year (the "Third Cushion Date"), $114.86 million; (iv) from the day following the Third Cushion Date until June 1 of the following year (the "Fourth Cushion Date"), $104.86 million; and (v) from the day following the Fourth Cushion Date until June 1 of the following year (the "Fifth Cushion Date"), $100 million; and (vi) from the day following the Fifth Cushion Date to and including the DST Note Maturity Date, $100 million.

"Excess Balance" means the amount in excess of the applicable Cushion Amount, if any, by which (a) the sum of (i) the market value of the assets of the Pension Plan as set forth in the actuarial report for the Pension Plan for the most recently ended Plan Year plus (ii) the balance of the LC Reserve Account as of the month-end preceding the applicable Payment Date exceeds (b) the present value of the accumulated benefits for the Pension Plan as set forth in the actuarial report for the Pension Plan for the most recently ended Plan Year calculated using a 6.5% annual interest rate, net of expenses, so long as the Pension Plan continues to be a Cooperative and Small Employer Charity (CSEC) plan. The actuarial report shall be prepared in accordance with actuarial standards, past practice, and applicable law.

The Debtors have conducted a current experience study by the Pension Plan actuary with respect to the demographic assumptions for the Pension Plan (*e.g.*, rates of retirement, termination, spousal age difference, commencement age and forms of payment) (the "2021 Experience Study"). After implementing changes based on the 2021 Experience Study, demographic assumption changes, with the exception of annual updates to mortality improvement projection scales, will not be made without a subsequent experience study, and economic assumption changes will not be made without an asset liability management study. Reorganized BSA will not commission any such studies until five (5) years after the Effective Date of the Amended Plan unless there are material changes to Internal Revenue Code § 433 (governing CSEC plans). In the event of such a material change, Reorganized BSA shall commission any such studies only if it reasonably believes, in consultation with the Pension Plan actuary, that such study is required. During the term of the DST Note, on an annual basis, Reorganized BSA will provide advance notice to the Settlement Trustee of any proposed material changes that the Pension Plan actuary intends to make to its actuarial assumptions and methodologies that increase the present value of accumulated benefits under the Pension Plan by more than 1.0%. Reorganized BSA will confer in good faith with the Settlement Trustee regarding any such proposed changes. In addition, if the Pension Plan is amended in any regard which increases the present value of benefits under the Pension Plan, such amendments will be disregarded in the calculation of the present value of accumulated benefits for the purposes of the DST Note.

"Payment Amount" means an amount, if any, on each Payment Date, payable solely from the LC Reserve Account, equal to the least of: (x) the Excess Balance on such Payment Date, (y) the remainder of the balance of $100 million accumulated at 1.5% annual interest, as amortized by any amounts previously paid; and (z) the amount in the LC Reserve Account.

"Payment Date" means, unless the DST Note is prepaid in full, May 31 of each year starting on the first May 31 after the Effective Date (or starting on the first business day that is at least thirty (30) days after the Effective Date if the Effective Date occurs between May 1 and May 31) (the "First Payment Date") until the fifteenth anniversary of the First Payment Date.

"Plan Year" means the period from February 1 to and including January 31 of the following year.

"Required Percentage" means an amount equal to 12% of a Local Council's payroll, less any pension plan related expenses which are estimated to be approximately 0.50% of such payroll, less the Local Council employer contribution match for employee contributions to the section 403(b) defined contribution benefit plan, which percentage will not exceed 4.5% of participating employee payroll until at least $50 million of the DST Note principal has been paid, at which point the employer contribution match percentage will not exceed 6% until the DST Note has been paid in full (principal and interest)