## Exhibit W

## Form of DST Note

**You may access a full and complete copy of the Form of DST Note, free of charge, at https://omniagentsolutions.com/bsa-plansupplement**

DRAFT

# PROMISSORY NOTE[1]

**$100,000,000.00** [●], 2022

FOR VALUE RECEIVED, LC Statutory Trust (the "Issuer"), a Delaware statutory trust created under that certain trust agreement dated of even date herewith, hereby unconditionally promises to pay to _[_____], as trustee of [Settlement Trust], a trust organized under the laws of Delaware and created under that certain trust agreement dated of even date herewith (the "Noteholder"), in lawful money of the United States of America in immediately available funds, the principal sum of ONE HUNDRED MILLION U.S. DOLLARS (US $100,000,000.00) (the "Note Amount") as evidenced by this promissory note (as may be amended, restated, modified and/or supplemented from time to time, this "Note") or, if less than the Note Amount, the unpaid principal amount of the Note issued by the Issuer in favor of the Noteholder, in the manner set forth in this Note (subject to any forgiveness pursuant to Section 5 hereof). Unless defined elsewhere herein, capitalized terms used herein shall have the meaning provided in Section 6 hereof.

1. **Payments**. All payments of principal and cash interest due hereunder shall be made in U.S. Dollars and in immediately available funds and shall be made to the Noteholder Bank Account.

2. **Interest**. The Issuer agrees to pay interest in respect of the unpaid principal amount of the Note (the "Interest") from the Effective Date until the full repayment thereof (whether at maturity, by prepayment by forgiveness or otherwise) at a rate equal to 1.50% per annum (the "Interest Rate"), calculated on the basis of the actual number of days elapsed in a 360-day year. Accrued (and theretofore unpaid) interest shall be payable on each Payment Date. Interest shall be payable in cash.

3. **Mandatory Prepayments**. If applicable, the Issuer agrees to repay the outstanding principal of the Note on each Payment Date in an amount equal to the relevant Payment Amount.

4. **Voluntary Prepayments**. The Issuer may on any Business Day voluntarily prepay the outstanding principal of the Note, without penalty or premium, in whole or in part, at any time and from time to time.

5. **Note Forgiveness**. The unpaid balance of the Note, if any, including any unpaid interest, remaining on the Maturity Date shall be automatically extinguished and shall be considered forgiven and satisfied after giving effect to any Payment Amount due on such date.

6. **Security Interest**. As security for the obligations under this Note and until the Note Amount (and all accrued interest thereon) is repaid and/or forgiven in full, the Issuer hereby irrevocably and unconditionally grants a continuing security interest in the LC Reserve Account to the Noteholder.

---

[1] This document remain subject to ongoing review and material revision in all respects. The Debtors, Coalition, the Future Claimants' Representative, the Ad Hoc Committee, the Creditors' Committee, JPM, Hartford, and TCJC are each continuing to review the documents that are part of the Plan Supplement, and each of their respective rights are reserved with respect to the Plan Supplement and the information contained therein, as applicable.

7. <u>Definitions</u>. As used herein, the following terms shall have the meanings herein specified unless the context otherwise requires:

"<u>BSA</u>" means Boy Scouts of America, a congressionally chartered nonprofit corporation under title 36 of the United States Code.

"<u>Business Day</u>" means any day excluding Saturday, Sunday and any day which shall be in the City of [Wilmington, Delaware] a legal holiday or a day on which banking institutions are authorized by law or other governmental actions to close. When the payment of any obligation or the performance of any covenant, duty or obligation is stated to be due or performance required on (or before) a day which is not a Business Day, the date of such payment or performance shall extend to the immediately succeeding Business Day, and such extension of time shall be reflected in computing interest or fees, as the case may be.

"<u>Cushion Amount</u>" means: (i) from the Effective Date until the first June 1 that is at least one year after the Effective Date (the "<u>First Cushion Date</u>"), $134.86 million; (ii) from the day following the First Cushion Date until June 1 of the following year (the "<u>Second Cushion Date</u>"), $124.86 million; (iii) from the day following the Second Cushion Date until June 1 of the following year (the "<u>Third Cushion Date</u>"), $114.86 million; (iv) from the day following the Third Cushion Date until June 1 of the following year (the "<u>Fourth Cushion Date</u>"), $104.86 million; and (v) from the day following the Fourth Cushion Date until June 1 of the following year (the "<u>Fifth Cushion Date</u>"), $100 million; and (vi) from the day following the Fifth Cushion Date to and including the Maturity Date, $100 million.

"<u>Effective Date</u>" means the "Effective Date" as defined in the Plan.

"<u>Entity</u>" means an entity as defined in section 101(15) of the Bankruptcy Code.

"<u>Excess Balance</u>" means the amount in excess of the applicable Cushion Amount, if any, by which (a) the sum of (i) the market value of the assets of the Pension Plan as set forth in the actuarial report for the Pension Plan for the most recently ended Plan Year plus (ii) the balance of the LC Reserve Account as of the month-end preceding the applicable Payment Date exceeds (b) the present value of the accumulated benefits for the Pension Plan as set forth in the actuarial report for the Pension Plan for the most recently ended Plan Year calculated using a 6.5% annual interest rate, net of expenses, so long as the Pension Plan continues to be a Cooperative and Small Employer Charity (CSEC) plan and, otherwise, the annual interest rate reflected in the actuarial report. The actuarial report shall be prepared in accordance with actuarial standards, past practice, and applicable law.

"<u>LC Reserve Account</u>" means Account no. [●] opened by DST with [●].

"<u>Local Councils</u>" means, as of any applicable date, collectively, each current local council of the BSA.

"<u>Maturity Date</u>" means the fifteenth anniversary of the First Payment Date.

"<u>Noteholder Bank Account</u>" means the following account or such other account as the Noteholder may designate from time to time in writing to the Issuer.

| | |
|---|---|
| Account Bank: | [_____] |
| Account Name: | [_____] |
| Account No.: | [_____] |
| Swift Code: | [_____] |

"Payment Amount" means an amount, if any, on each Payment Date, payable solely from the LC Reserve Account, equal to the least of: (x) the Excess Balance on such Payment Date, (y) the remainder of the Note Amount and any accrued Interest, reduced by any amounts previously paid pursuant to Section 3 or Section 4; and (z) the amount in the LC Reserve Account.

"Payment Date" means, unless this Note is prepaid in full, May 31 of each year starting on the first May 31 after the Effective Date (or starting on the first Business Day that is at least thirty (30) days after the Effective Date if the Effective Date occurs between May 1 and May 31) (the "First Payment Date") until the Maturity Date.

"Pension Plan" means the Boy Scouts of America Retirement Plan for Employees, a single-employer, qualified, defined benefit pension plan that is subject to the Employee Retirement Income Security Act of 1974, as amended, and the Internal Revenue Code, of which BSA is the sponsor.

"Plan" means the Modified Fifth Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC filed by the Debtors, as the same may be amended or modified from time to time pursuant to section 1127 of the Bankruptcy Code, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

"Plan Year" means the period from February 1 to and including January 31 of the following year.

8. <u>Effectiveness</u>. This Note shall become effective on the later of (a) the Effective Date and (b) the date on which the Issuer and the Noteholder shall have executed and delivered a counterpart hereof (whether the same or different counterparts).

9. <u>Miscellaneous</u>. (a) Except as otherwise expressly provided herein, all notices and other communications provided for hereunder shall be in writing and mailed, telecopied, emailed or delivered: if (i) to the Issuer at [_____], Attention: [_____], (t) [_____], (f) +[_____], (email) [_____] and (ii), if to the Noteholder, at [_____], Attention: [_____], (t) [_____], (f) +[_____], (email) [_____], or, in either case, at such other address as shall be designated by the Noteholder or the Issuer in a written notice to the other. All such notices and communications shall, when mailed or telecopied or sent by overnight courier, be effective when deposited in the mail or delivered to the overnight courier, as the case may be, or sent by facsimile transmission.

(b) **THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH THE LAWS OF DELAWARE.** Any legal action or proceeding with respect to this Note may be brought in the courts of the State of Delaware or of the United States District Court for the District of Delaware and, by execution and delivery of this Note, each party hereby accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts. Each party to this Note further irrevocably consents to the service of process out of any of the aforementioned courts in any action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to such party at its address designated in Section 9(a), such service to become effective seven days after such mailing. Each party hereby irrevocably waives any objection which it may now or hereafter have to the laying of venue of any of the aforesaid actions or proceedings arising out of or in connection with this Note brought in the courts referred to above and hereby further irrevocably waives and agrees not to plead or claim in any such court that any such action or proceeding brought in any such court has been brought in an inconvenient forum. The Issuer hereby irrevocably waives, and the Noteholder by its acceptance of the benefits of this Note hereby irrevocably waives, all right to a trial by jury in any action, proceeding or counterclaim arising out of or relating to this Note or the transactions contemplated hereby.

(c) This Note shall be binding on each party hereto and its successors and permitted assigns and shall inure to the benefit of the other party and its successors and assigns.

(d) No amendment, modification or waiver of any provision of this Note shall be effective unless it is in writing and signed by the Noteholder and the Issuer.

(e) Section headings are for convenience of reference and shall not be construed as part of this Note.

10. <u>Limited Recourse</u>.  This Note shall be non-recourse against the Issuer except in respect of funds deposited in the LC Reserve Account and shall be non-recourse against BSA and the Local Councils.  Notwithstanding anything to the contrary herein, the Noteholder shall have no right to (i) accelerate, sue upon, collect, or receive any payment upon, by setoff or in any other manner, the Note, except in respect of funds deposited in the LC Reserve Account or (ii) attach or levy upon any assets of the Issuer, BSA, the Local Councils or any of their respective affiliates to enforce the Note, except the funds deposited in the LC Reserve Account.

* * *

DRAFT

**IN WITNESS WHEREOF,** the Issuer has executed this Promissory Note as of the date first above written.

**LC Statutory Trust, as Issuer**

**By: [_____] as, Trustee**

_____
[_____]

DRAFT

Accepted and agreed as of the date first above written:

**[SETTLEMENT TRUST], as Noteholder**

**By: [_____] as, Trustee**

_____
[_____]