

O'Melveny & Myers LLP  
Times Square Tower  
7 Times Square  
New York, NY 10036-6537  

T: +1 212 326 2000  
F: +1 212 326 2061  
omm.com  

File Number:

December 1, 2021

**Tancred Schiavoni**  
D: +1 212 326 2267  
tschiavoni@omm.com

Chief Judge Laurie Selber Silverstein  
United States Bankruptcy Court, District of Delaware  
824 North Market Street, 6th Floor  
Wilmington, DE 19801

**Re:** Boy Scouts of America, 20-10343 (LSS) (D. Del.)—Motion to Compel National Capital Area Council

Dear Judge Silverstein:

We write on Century's behalf in further support of its motion to compel the National Capital Area Council ("**NCAC**").

NCAC's production is missing key documents that Century requested.[1] NCAC has only today produced the minutes for the board meeting where its contribution to the Settlement Trust was approved. There are no documents reflecting any discussion or analysis of whether the contribution to the Settlement Trust was appropriate. The production is also missing a full set of NCAC's rosters that would provide the means to verify whether the proofs of claim filed correspond to actual scouts who were members of NCAC troops. And, despite having 630 claims asserted against NCAC, NCAC has produced essentially nothing on the hundreds of Abuse Claims asserted against NCAC other than completing the Bates White feedback template. This is implausible. NCAC had to evaluate the Abuse Claims to assess what it paid or even out of curiosity. NCAC was required by BSA's Youth Protection policies to generate a host of documents upon learning about these claims. NCAC simply argues that they have produced all relevant, non-privileged documents. To the extent NCAC says that there are no more responsive documents to Century's requests, the fact that NCAC refuses to withdraw any of its objections to the requests makes Century doubt whether that assertion is completely accurate.

Century requested specific documents relating to NCAC's evaluation of its settlement contribution. Notably, there are few (if any) documents in their production that show any analysis related to NCAC's settlement contribution or its review of the Abuse Claims asserted against NCAC. This afternoon NCAC produced three pages that make up the minutes for one board meeting where they discussed and approved the settlement contribution. But NCAC has not provided any source documents or other related communications that show NCAC's analysis of the contribution amount, and whether NCAC considered that amount to be appropriate. It is difficult to imaging that the NCAC board approved a multi-million dollar contribution to the

---

[1] The issues raised herein apply equally to Cradle of Liberty Council and Baltimore Area Council.

Austin • Century City • Dallas • Los Angeles • Newport Beach • New York • San Francisco • Silicon Valley • Washington, DC  
Beijing • Brussels • Hong Kong • London • Seoul • Shanghai • Singapore • Tokyo

Settlement Trust without any substantive internal discussion about that contribution. Not one internal email, not one text between board members, not one memo. Because NCAC has refused to withdraw its objections to Century's discovery requests, Century believes that other documents relating to NCAC's evaluation of its contribution exist and have not yet been collected or produced.

More troubling, NCAC has not produced documents related to their analysis of the Abuse Claims. NCAC only points to certain spreadsheets that BSA produced for their analysis of the alleged claims. Those spreadsheets were prepared by Bates White and were provided to each of the Local Councils to complete. The Bates White spreadsheets, however, do not include any of the source documents related to the alleged abuse claims. They simply list NCAC's responses to the specific questions asked by Bates White concerning the alleged claimants. Century's requests for production seek far more information about the alleged claims that what was sought by Bates White. For example, Century's requests seek at least incident reports, investigative materials and any evidence gathered at the time of any alleged abuse event. None of these documents have been produced by NCAC.

NCAC should have at least some of these documents. In addition, there must have been documents created relating to all of the claims NCAC learned about post-petition. Upon learning about a claim asserting abuse, the Local Council is supposed to investigate and report any such claims, regardless of how long after the alleged event the Local Council learns about the abuse. That is the information Century is requesting form NCAC. It is inconceivable that upon learning of the 630 claims being asserted against it (many of which were not known to NCAC prior to the bankruptcy) NCAC investigative activities generated zero documents relating to the alleged claims. Not one internal email, not one text between board members, not one memo.

NCAC has also failed to produce a complete set of its membership rosters that relate to each of the alleged claimants. Only **3%** of the alleged claims sent to NCAC for review were verified based on the NCAC membership rosters. The rosters corresponding to those found individuals were produced to the Local Council Ad Hoc Committee and NCAC has directed Century to the Ad Hoc Committee for those documents. But Century needs NCAC to produce **all** the rosters that correspond to the dates and troops related to the other 97% of the alleged claimants. Without those rosters, Century will be unable to definitively prove that those alleged claimants were not actual participants in the NCAC's scouting troops and therefore should be disqualified as claimants.

To the extent NCAC asserts that it has no responsive documents, it should withdraw its objections. But NCAC has refused to withdraw any of its objections. And because NCAC refuses to withdraw any of its objections, Century has concerns that the NCAC production is incomplete. As discussed in the motion to compel, NCAC's Response included blanket objections to the bulk of the requests based on burden. Many of the objections did not include any specific basis for the boilerplate objections. NCAC has either failed to produce any documents or to provide a basis for many of the objections for a significant number of the requests. And, even if NCAC agreed to produce certain documents, NCAC still included the same boilerplate objections. In its opposition, NCAC specifically states that it will not withdraw its objections to certain requests because "the responsive documents are subject to the joint defense agreement, are duplicative of records already received by Century, or can more readily be obtained from BSA." D.I. 7446, at 7. NCAC still

refuses to withdraw *any* objections.[2] NCAC should withdraw objections for at least the requests that NCAC does not believe any genuine dispute remains.

NCAC has taken the position that Century should seek any claims related material from Debtors. But Debtors are not in possession of everything Century seeks. Century is seeking not only NCAC's spreadsheet responses, but also the source documents, which could include rosters, incident reports, or any other information collected to evaluate the Abuse Claims. NCAC is in the best position to produce these documents.

Accordingly, Century requests that the Court grant its motion to compel, requiring NCAC to produce all documents in its possession that relate to these highly relevant and critical issues.

Respectfully submitted,

*/s/ Tancred Schiavoni*
Tancred Schiavoni

O'MELVENY & MYERS LLP

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America*

---

[2] *See* Exhibit A, Email from A. Adenrele to S. Stamoulis, dated November 30, 2021.