brownrudnick

ERIC R. GOODMAN
direct dial: 202.536.1740
fax: 617.289.0640
EGoodman@brownrudnick.com

December 2, 2021

**VIA EMAIL/ECF**

Chief Judge Laurie Selber Silverstein
United States Bankruptcy Court, District of Delaware
824 North Market Street, 6th Floor
Wilmington, DE 19801

**RE: *In re Boy Scouts of America and Delaware BSA, LLC*, No. 20-10343 (LSS) – Response to [D.I. 7471] and [D.I. 7503]**

Dear Judge Silverstein:

This firm represents the Coalition of Abused Scouts for Justice (the "Coalition"), and we write in opposition to the November 29, 2021 letter [D.I. 7471] (the "Motion to Compel") submitted on behalf of "Certain Insurers" (as identified in the Motion to Compel) and the November 30, 2021 letter joinder to the Motion to Compel by Zalkin Law Firm, P.C. and Pfau Cochran Vertetis Amala PLLC [D.I. 7503] (the "Law Firms" and collectively with Certain Insurers, the "Movants").[1] The Movants seek to compel the Coalition to designate a witness to testify in response to certain Rule 30(b)(6) deposition notices directed to the Coalition (the "Deposition Notices").[2] The Deposition Notices are improper for several reasons, and the Motion to Compel should be denied.

**First**, the Coalition is a group of people—specifically a group of victims of sexual abuse who have submitted proofs of claim in the Chapter 11 Cases—and, as an ad hoc group, is not a proper target of a Rule 30(b)(6) deposition. Of course, the Coalition has served and responded to other discovery. As the Movants note, the Coalition has responded to document requests and interrogatories. That a party must respond to certain types of discovery does not mean that any party is required to respond to a Rule 30(b)(6) deposition notice.

Rule 30(b)(6) is clear on its face: a proper target for such a deposition is "a public or private corporation, a partnership, an association, a governmental agency, or other entity." The Coalition, as an ad hoc group consisting of approximately 18,000 survivors of sexual abuse, is none of those.

---

[1] By this letter the Coalition responds to *both* the Certain Insurers' letter and the Law Firms' letter; as such, we respectfully request the Court's leave to file this letter which is slightly over the five-page letter limit for discovery-related letters pursuant to Section 12 of the October 8, 2021 *Order (I) Scheduling Certain Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization, (II) Establishing Certain Protocols, and (III) Granting Related Relief* [D.I. 6528].

[2] Certain Insurers' Deposition Notice is attached as Exhibit A to the Declaration of Bruce W. McCullough [D.I. 7471-2] submitted by Certain Insurers in support of the Motion to Compel.





Certain Insurers argue that the 2007 Advisory Committee Notes to Rule 30(b)(6) "reflect that the rule is intended to capture entities such as the Coalition." Motion to Compel at 2. But the Advisory Committee Notes they quote entirely belie Certain Insurers' argument. Certain Insurers quote the 2007 Advisory Committee Notes which state, in part: "Nothing is gained by wrangling over the place to fit into current rule language ***such entities*** as limited liability companies, limited partnerships, business trusts, more exotic common-law creations, or forms developed in other countries." Motion to Compel at 2 (quoting the 2007 Advisory Committee Notes) (emphasis added). The Advisory Committee Notes, of course, pre-suppose that the target of a Rule 30(b)(6) notice is some kind of ***entity***. This makes perfect sense and is in keeping with the historical basis for why the Rule 30(b)(6) mechanism was added to the discovery tools available under the Federal Rules of Civil Procedure.

A natural person can be a party to litigation, subject to obligations to respond to requests for the production of documents pursuant to Rule 34, to interrogatories pursuant to Rule 33, and to requests for admission pursuant to Rule 36. But a natural person who is a party to litigation is **not** subject to a Rule 30(b)(6) deposition notice. A natural person is not a "public or private corporation, a partnership, an association, a governmental agency, or other entity" as provided in Rule 30(b)(6); rather, a natural person's deposition is taken pursuant to Rule 30(b)(1).

Similarly, while the Coalition is a party to these proceedings subject to certain discovery obligations, it is **not** a legal entity subject to a Rule 30(b)(6) deposition. The Coalition and its members are **not** public or private corporations, partnerships, associations, government agencies, or other entities. Its members are **not** law firms or state court counsel.[3] Its members are human beings who were sexually abused when they were children.

Asking a group of individual survivors—whether a group consisting of 3 survivors or 18,000 survivors—to submit to deposition under Rule 30(b)(6) is inconsistent with the plain language and the purpose of Rule 30(b)(6), which is to depose entities that must speak through a designee.

Movants' argument that the Coalition's reliance on *In re Philadelphia Newspapers, LLC*, 422 B.R. 553 (Bankr. E.D. Pa. 2010), is "misguided" (Motion to Compel at 3) itself misses the point. As we have explained to Movants in prior letters (which Movants did not attach to the moving papers, but which we attach here as Exhibits A, B, and C), it is that case's explanation—which literally quotes the dictionary—of what an "entity" is that provides guidance here and reflects that the Coalition is not an "entity." *Philadelphia Newspapers*, 422 B.R. at 565-66.[4]

---

[3] As the Court well knows as this issue has arisen at various times in different contexts (including in connection with the Coalition's Rule 2019 submissions and in connection with certain Rule 2004 discovery), the Coalition does not represent state court counsel in these proceedings.

[4] The implication that the Coalition waited three weeks to respond to the Deposition Notices is false (*see* Motion to Compel at 1 ("In response to that notice, over three weeks later, on November 26, 2021, counsel for the Coalition informed the noticing parties that the Coalition is refusing to offer any witness on any topic noticed for deposition . . . ."). In fact, in addition to meeting and conferring, Coalition Counsel wrote to Movants on November 10, 2021 and November 23, 2021 over three separate letters, all in addition to its November 26, 2021 letter that Movants did attach to their motion papers.





Further, Coalition counsel has identified **no** case where an ad hoc group—whether a group consisting of bondholders, insurers, individual tort claimants, or otherwise—has been *required* to produce a Rule 30(b)(6) witness, and the Motion to Compel is devoid of any such authority. While some ad hoc groups comprised of ***entities*** in some cases—whether for strategic or other practical reasons—may make the decision to voluntarily produce a Rule 30(b)(6) witness, that does not answer the question of whether ad hoc groups are *required* to do so. And here, the practical effect of requiring an ad hoc group of sexual abuse survivors to prepare for testimony on topics as far-reaching as those in the Deposition Notices is absurd.

**Second**, every single one of the insurers' arguments this Court heard in support of the insurers' successful motion to quash their depositions applies with equal or greater force to the Coalition.

First, the insurers—many of whom *admittedly* have, but are not being required to produce evidence relevant to whether the TDPs are consistent with the Debtors' historical practices—represented to this Court that they do not intend to call any fact witnesses at the confirmation hearing. Nov. 19, 2021 Hr'g Tr. at 54:1-12 ("Not a single lawyer for any insurer said they intended to call any such witness. Accordingly, there is no need for debtors or anyone else to depose any insurer witness just to find out what that witness will testify to at trial.")

So, too, for the Coalition: the Coalition does **not** intend to call any fact witness at the confirmation hearing. There is no need for the insurers or anyone else to depose a survivor Coalition witness just to find out that no Coalition witness intends to testify at the confirmation hearing.

Second, the insurers—many of whom *admittedly* have, but are not being required to produce evidence relevant to whether the TDPs are consistent with the Debtors' historical practices—argued, and we quote: "All our witnesses could do is restate what, if anything, they learned about the TDPs from their counsel or what they gleaned about the TDPs from reading them. In other words, the insurers have ***no facts*** about the TDPs that a 30(b)(6) witness could or should be required to testify about." Nov. 19, 2021 Hr'g Tr. at 58:10-14 (emphasis added).

So, too, for the Coalition. As the RSA made plain to the world, the Coalition asked the ***Debtors*** to prepare TDPs that are consistent with the Debtors' historical abuse settlements, litigation outcomes, and settlement practices. The Coalition, which is comprised of individual survivors who have **not** settled their claims, does **not** have any personal knowledge as to what those pre-bankruptcy practices were.

Third, the insurers—many of whom *admittedly* have, but are not being required to produce evidence relevant to whether the TDPs are consistent with the Debtors' historical practices—argued: "debtors don't need discovery from the insurers to find out how ***BSA itself*** handled BSA abuse claims, or how much ***BSA*** paid for particular claims or types of claims," and "***Debtors*** don't even need discovery from insurers to find out what positions the insurers took on whether to contribute to settlements of abuse claims. ***Debtors*** have that information in their own files." Nov. 19, 2021 Hr'g Tr. at 55:12-18 (emphasis added).





The insurers also argued that "if the issue . . . is whether the TDPs replicate the ***BSA's*** own prepetition claims experience," then "***debtors*** do not need to know what the insurers think or how they may have analyzed a handful of claims to prove how claims against debtors were valued and paid before bankruptcy" because "[t]hey can show from the ***debtors'*** own records what was paid, why ***debtors*** paid it, and how that relates to the TDPs." Nov. 19, 2021 Hr'g Tr. at 53:18-25 (emphasis added).

So, too, for the Coalition, an ad hoc group comprised solely of individual survivors who have **<u>not</u>** settled their abuse claims. The insurers do not need discovery from a Coalition witness to find out how the BSA itself handled BSA abuse claims, or how much BSA paid for particular claims or types of claims. The issue is whether the TDPs replicate the BSA's own prepetition claims experience and produces a fair and equitable allocation among survivors. There is nothing that the Coalition or a survivor whose claim was **<u>not</u>** settled prepetition could possibly add that would be relevant to this issue.

That the insurers would seek such testimony from the Coalition, an ad hoc group that did **<u>not</u>** even exist prior to the bankruptcy (the Coalition was formed in July 2020), is even more absurd. Even assuming that there even could be such a thing as "the Coalition's testimony"—a flawed concept in and of itself given the Coalition is an ad hoc group for the reasons stated above—Coalition testimony on the topics noticed in the Deposition Notices are not "relevant to plan confirmation," and "[d]iscovery that is not relevant to the confirmation requirements … should not be permitted," as insurers argued before this Court just days ago. Nov. 19, 2021 Hr'g Tr. at 52:12-15.

The insurers did not advance any other arguments. But the insurers, having successfully shielded relevant evidence regarding the TDPs that they have from discovery, now argue for a contrary result here. But they cannot do so without eviscerating ***every*** rationale behind the Court's prior order granting the motions to quash insurer depositions and thereby calls into question whether that ruling must be reconsidered, and the insurers compelled to appear for depositions. Unlike the Coalition, which was not formed until after the Debtors' bankruptcy proceedings commenced, the insurers actually *existed* at the time the underlying abuse occurred and—to greater or lesser degrees depending on the insurer—actually engaged with the Debtors contemporaneously when they developed their historical settlement practices with respect to sexual abuse claims.

**<u>Third</u>**, the Motion to Compel, at its core, is disingenuous. The topics noticed are plainly designed to discover the Coalition's counsel's or state court counsel's "mental impressions, conclusions, opinions, or legal theories." Fed. R. Civ. P. 26(b)(3)(B). This is not a proper basis for a Rule 30(b)(6) deposition. *Fed. Deposit Ins. Corp. v. Wachovia Ins. Servs., Inc.*, No. 3:05 CV 929 (CFD), 2007 WL 2460685, *5 (D. Conn. Aug. 27, 2007) (granting motion for protective order in part where "the court finds that the instant Rule 30(b)(6) notice in large part appears calculated to discover properly protected opinions, mental impressions, and strategy of plaintiff's counsel").

The Movants are brazen about their intent and actually raise it as a (misguided) reason why, they argue, the Motion to Compel should be granted: Certain Insurers highlight that they have sought the depositions of "State Court Counsel" and complain that because those lawyers have objected to the propriety of sitting for deposition that those individual lawyers' objections when coupled





with the Coalition's objection would mean that "neither the Coalition nor its State Court Counsel need to participate in discovery." Motion to Compel at 3-4. First, that is factually just not true: as Movants acknowledge, the Coalition has answered interrogatories and produced documents in response to discovery requests. *Id.* at 2. Certain Insurers argue that the "Coalition knows which witnesses were involved in this process, and which witnesses have the capacity to testify as to the topics noticed by the Certain Insurers." *Id.* at 4. By the Motion to Compel, Movants unequivocally—and improperly—seek attorney depositions and counsel's mental impressions, despite just days ago prevailing before Your Honor in arguing that they themselves should not be subject to deposition because their designees would have to parrot what counsel told them.

The parties that have information concerning the Debtors' historical settlement practices and experience in the tort system are the ***Debtors*** and their ***insurers***. By their previously filed and successful motion to quash, the insurers have abated their own discovery obligations. It strains credulity for the insurers—many of whom do have personal knowledge regarding the Debtors' prepetition settlements practices—to now seek discovery from survivors that have no such knowledge. Such hypocrisy and gamesmanship should not be countenanced and—more importantly—cannot be legitimately reconciled with the Court's ruling just days ago granting insurers' motions to quash.

**Fourth**, the scope of the topics is outrageously broad and inappropriate. Certain Insurers' have identified ***20*** topics for examination. Just by way of example, the Movants seek "Coalition testimony" on "[t]he Debtors' liquidation analysis" (Certain Insurers' Topic No. 13), draft TDPs and Settlement Trust (Certain Insurers' Topic Nos. 8-9), the Plan (Certain Insurers' Topic No. 17), and the Plan Supplement (Certain Insurers' Topic No. 18)—all topics already directed to Debtor witnesses and far better suited for Debtor witnesses.

The Movants want all manner of testimony concerning the abuse claims, including any Abuse Claim against any Local Council and/or Chartered Organization (Certain Insurers' Topic No. 1), any Abuse Claim asserted or alleged against TCJC (Certain Insurers' Topic No. 16), communications between claimants and the BSA (Certain Insurers' Topic No. 2), and any analysis or assessments of such claims (Certain Insurers' Topic Nos. 4-6, 12), among other topics. The Coalition simply does not have the requisite knowledge to even begin to prepare a witness on such topics—topics which again have been directed to Debtor witnesses and are more appropriately addressed by Debtor witnesses. Further, where topics seek the Coalition's "analyses," which, to the extent that even exists, is information protected by the work-product doctrine or material prepared in anticipation of litigation within the meaning of Civil Rule 26(b)(3)(A), which is also not a proper basis for a Rule 30(b)(6) deposition.

**Finally**, it is plain from the face of the Deposition Notices that the topics noticed invade the mediation privilege recognized by Local Rule 9019-5(d). *See, e.g.*, *id.* at Topic 14 (quoted above). The Coalition has not waived and will not waive the mediation privilege. The Coalition participated in the mediation in good faith and communicated with other parties participating in the mediation in reliance on Local Rule 9019-5(d) and its provisions concerning the confidentiality and discoverability of such communications. Requiring the Coalition to produce a witness to testify about settlement discussions that took place during mediation (with the





mediators present)—whether over the TDPs or settlements with the insurers themselves—would require the witness to violate Local Rule 9019-5(d).

This Court's *Order (I) Appointing Mediators, (II) Referring Certain Matters to Mediation, and (III) Granting Related Relief* [D.I. 812] (the "Mediation Referral Order") expressly provided: "The provisions of Local Rule 9019-5(d) pertaining to 'Confidentiality of Mediation Proceedings' shall govern the Mediation provided, however, that if a Party puts at issue any good faith finding concerning the Mediation in any subsequent action concerning insurance coverage, the Parties' right to seek discovery, if any, is preserved." Mediation Referral Order at ¶ 7. While discovery of mediation communications may be available in a "subsequent action concerning insurance coverage," when the Coalition became a mediation party pursuant to the *Order Approving the Motion of the Coalition for Abused Scouts for Justice to Participate in the Mediation* [D.I. 1573], the Coalition did not understand such discovery to be permissible in these Chapter 11 Cases under either the Mediation Referral Order by its terms or pursuant to Local Rule 9019-5(d)(i) (". . . except as set forth in the previous sentence, no person shall seek discovery from any participant in the mediation with respect to any information disclosed during mediation.")[5]

* * *

The Motion to Compel should be denied in its entirety. At a minimum the Court should defer any ruling granting the Motion to Compel and first require that the Movants depose the Debtors. The Debtors have designated at least *four* fact witnesses to testify at deposition, including witnesses designated to testify on the terms and negotiations of the TDPs. If—*after* taking the depositions of at least *four* witnesses designated by the Debtors—Movants still believe a Coalition Rule 30(b)(6) deposition is needed to fill some gap left open by the Debtors' multiple witnesses, the Movants should come back to the Court and supplement their Motion to Compel with an explanation of precisely what factual gap remains that could conceivably be filled by a Coalition witness.

Respectfully submitted,

**BROWN RUDNICK LLP**

*/s/ Eric R. Goodman*

Eric R. Goodman

---

[5] If the Court rules that testimony must be provided concerning statements made during mediation, the Coalition respectfully requests that any such ruling be stayed to permit such ruling to be appealed to avoid the disclosure of information that is not the proper subject of disclosure pursuant to the Local Rules.