**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| Debtors.[1] | (Jointly Administered) |
|  | **Re: Docket Nos. 7447 and 7467** |

**Requested Objection Deadline: 12/13/21 @ 12:00 p.m. ET**
**Requested Hearing Date: 12/14/21 @ 10 a.m. ET**

**MODIFIED EMERGENCY MOTION OF THE OFFICIAL COMMITTEE OF TORT
CLAIMANTS REGARDING PLAN VOTING ISSUES**

The Official Committee of Tort Claimants (the "TCC"), by and through its undersigned

counsel, hereby modifies the above-styled *Emergency Motion of the Official Committee of Tort*

*Claimants for Entry of an Order Pursuant to Sections 105, 1103, 1125, and 1126 of the*

*Bankruptcy Code, Appointing a Plan Voting Ombudsperson and Granting Related Relief* (the

"Emergency Motion") [Dkt. No. 7447], and in support thereof states as follows:

**I.**
**INTRODUCTION**

**A.      The Emergency Motion and the Need for Modified Relief**

1.      As a statutory committee, the TCC "may raise…and be heard on any issue

in a case under this chapter." 11 U.S.C. §1109(b). Moreover, the TCC is required to "solicit and

receive comments from the creditors [in its constituency]" and may investigate matters relevant

to the case or the formulation of a plan; participate in the formulation of a plan; advise its

---

[1]  The Debtors in these Chapter 11 Cases, together with the last four digits of Debtors' federal tax identification
number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing
address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

constituents of its determinations regarding a plan; collect and file plan acceptances or rejections; and perform such other services as are in the interest of its constituents.  *See* 11 U.S.C. §1103(c)(2), (3) and (5).

2.      On November 24, 2021, the TCC filed the Emergency Motion, seeking the appointment of an independent ombudsperson as a resource and problem-solver for survivor questions and concerns that have arisen and may arise in the future in connection with voting on the Debtors' Plan and for related relief.  At the heart of the Emergency Motion was the TCC's request that an ombudsperson be empowered to help survivor claimants represented by three law firms affiliated under the Abuse in Scouting ("AIS") banner that have espoused diametrically opposing views on whether to support or reject the Plan,[2] and directed conflicting and uncoordinated recommendations to their approximately 17,000 survivor clients, accounting for nearly 20% of the survivor voting population.  The resulting confusion on the part of their jointly represented clients is palpable, as evidenced by numerous letters filed on the docket complaining of rampant confusion and similar client emails produced by one of the three AIS firms, Kosnoff Law, PLLC ("Kosnoff Law"), in support of the Emergency Motion.  *See Kosnoff Law Response in Support of Motion to Appoint a Plan Voting Ombudsperson* (the "Kosnoff Response"), Dkt. No. 7461, Exh. A.[3]

3.      Further evidence of the dysfunction among the three AIS law firms and the resulting confusion among their jointly-represented clients is found in the Kosnoff Response. In its response, Kosnoff Law confirmed the depth of the problem the TCC had sought to remedy via the Emergency Motion, acknowledging that "crippling discord" had overtaken the AIS firms

---

[2]  Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Emergency Motion.

[3]  Additional evidence of survivor frustration continues to accrue.  For example, on December 1, 2021, yet another letter was added to the case docket reflecting, in this instance, an AVA client complaining about not receiving a ballot or any response from counsel for a month with respect to his inquiry. *See* Dkt. No. 7557.

DOCS_LA:341057.4 85353/001

and that the "present state of affairs is unacceptable" on account of the AIS firms' differing views of the Plan and public efforts to compel opposing outcomes.  *See id.* ¶¶ 1, 16; *see also* Dkt. Nos. 7437, 7439 and 7443.  The Kosnoff Response underscores the severity of the problem the warring AIS law firms created for themselves and their survivor clients, leaving their clients confused and effectively unrepresented by counsel.  Moreover, there is evidence that the survivor clients represented by the AIS law firms have been subjected to a daily barrage of unsolicited communications from one of the other two firms, Eisenberg Rothweiler, Winkler, Eisenberg & Jeck, P.C. ("<u>Eisenberg Rothweiler</u>") urging them to accept the Plan in contravention to the advice given by Kosnoff Law.  See <u>Kosnoff Response</u>, Dkt. No. 7461, Exh. A (client complaining about being "constantly bombard[ed]" with emails from Rothweiler).  The situation is untenable and requires a solution—imposed by the Court if the AIS law firms cannot correct this problem on their own volition—which is to send a joint communication to their clients advising them of their respective views on the Plan in a manner that will enable them to make an informed decision as to how to vote on the Plan.[4]

4.      On November 29, 2021, the Court held a status conference with respect to the Emergency Motion.  At the conference, the TCC's counsel advised the Court that the hostility towards the concept of appointing a voting ombudsperson to address the AIS-related and other problems affecting voting led the TCC to modify its request for relief.  In accordance with the ensuing lengthy discussion of the voting issues at the conference, particularly those presented by the unresolved AIS situation, the TCC is hereby modifying its request for relief to

---

[4]  As reflected in the Kosnoff Response and discussed at the status conference on the Emergency Motion held on November 29, 2021, Kosnoff Law is prepared to undertake this action voluntarily while to date Eisenberg Rothweiler has refused.  The Kosnoff Response reflects that the firm sought to engage with Eisenberg Rothweiler (via their respective counsel) to undertake the preparation and issuance of a joint communication to all AIS clients but the Eisenberg Rothweiler firm flatly refused to consider doing so.  *See* Kosnoff Response ¶¶10-15 and Exhs. B and C thereto.

focus on addressing the core problem of the conflict among the three AIS law firms and the resulting confusion and conflicting advice imposed on their clients. Thus, the TCC no longer seeks the appointment of a voting ombudsperson, but rather the entry of an order directing the three AIS law firms to distribute a joint communication to each of their jointly represented clients providing a recommendation from *each* of the firms with respect to whether to vote to accept or reject the Plan to be accompanied by a neutral explanatory cover letter, in form as shown in **Exhibit B** hereto, showing the need for and purpose of the communication (the "Joint Communication"). The Joint Communication should include:

  a.    Plain language one-page position papers and recommendations on whether to vote to accept or reject the Plan issued from *each* AIS law firm,

  b.    Information on how to obtain a ballot from the Balloting Agent or via the AIS firms for claimants that have not previously submitted a ballot, and

  c.    An express invitation to each AIS client to contact any or all of the AIS firms for advice with respect to these matters.

        5.    Finally, in its Emergency Motion, the TCC requested that the Court extend the voting deadline by two weeks so that remedial actions could be taken, particularly with respect to AIS clients confused by the conflicting advice they have been receiving. The Debtors resisted this extension in a pleading filed on Monday, November 29, 2021; however, on December 2, 2021, the Debtors announced that they are seeking an extension of the voting deadline by two weeks, although apparently not on account of the problems in the voting process identified in the Emergency Motion. Following two meet and confer sessions, the Debtors and key parties in interest agreed to a revised confirmation schedule that will extend the voting

deadline to December 28, 2021.  At a hearing held on December 6, 2021, the Court approved this revised confirmation schedule.

6.       As set forth herein, the Court has the authority to require the AIS law firms to transmit the Joint Communication or similar client communication, as sought herein, insofar as these attorneys are obligated to comply with the American Bar Association Model Rules of Professional Conduct (the "Model Rules")[5], including that they clearly communicate with their clients in a manner that does not leave them helpless and confused.  Inasmuch as Kosnoff Law is willing to do so on a voluntary basis, this problem could readily be addressed without Court intervention if Eisenberg Rothweiler and AVA law would similarly agree to join in a communication with their clients.  Failing that happening, the only effective way to address the confusion the attorneys' conduct has wrought is for the Court to direct them to take corrective action and communicate with their clients to clear up the confusion they created.

7.       At the status conference held on November 29, 2021, the Court raised its concern regarding its power and authority to require the AIS firms to take this remedial action. That authority is found in the local rules of this Court and the United States District Court for the District of Delaware, addressed below, together with the applicable Model Rules, also addressed herein.  The AIS attorneys have appeared in the BSA bankruptcy cases and actively participated in the cases, thereby subjecting themselves to the Court's jurisdiction to enforce the applicable disciplinary rules set forth in the Model Rules.  The Local Rules obligate their compliance with the Model Rules and this Court unquestionably enforce the Local Rules with respect to counsel that has appeared before the Court in the BSA cases.

---

[5] On December 7, 2021, in providing a ruling on another matter involving the AIS firms, the Court confirmed that the Model Rules are applicable in this Court.

DOCS_LA:341057.4 85353/001

8.    For the reasons set forth herein, the TCC respectfully submits that the Court has the authority to require AIS attorneys to remedy the havoc and confusion their internecine warfare is creating in the plan solicitation and voting processes by sending out the Joint Communication, if they are unwilling to do so voluntarily.

## II.
## ARGUMENT

### A.    Source of the Court's Authority to Regulate Counsel

#### 1.    Inherent Power to Regulate Counsel

9.    We begin with the long-established proposition that federal courts have the inherent power to regulate the conduct of attorneys who appear before them.  *See Ex parte Garland*, 71 U.S. (4 Wall.) 333, 378-79 (1866); *Ex parte Burr*, 22 U.S. (9 Wheat.) 529, 530-31 (1824); *In re* Patterson, 176 F.2d 966, 967 n.1 (9th Cir. 1949); Note, *Disbarment in the Federal Courts,* 85 Yale L.J. 975, 977 (1976).

10.    Congress codified the proposition that bankruptcy courts are vested with "inherent powers" in section 105 of the Bankruptcy Code, including the power to control their dockets and discipline attorneys appearing before them.  11 U.S.C. § 105; *see Knupfer v. Lindblade* (*In re Dyer*), 322 F.3d 1178, 1196 (9th Cir. 2003) ("bankruptcy courts, like district courts, also possess [the] inherent power" to sanction "bad faith" or "willful misconduct" because "the very creation of the court" establishes such inherent power "unless Congress intentionally restricts those powers," and Congress' intent is confirmed by section 105(a)).  *See generally Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) (extensive discussion of federal courts' inherent powers).

2.      **Applicable Local District and Bankruptcy Court Rules Authorize the Court to Enforce Counsel's Obligations Under the Model Rules of Professional Conduct**

11.     The Court need not rely solely on its inherent powers and section 105(a) of the Bankruptcy Code in this situation because the District Court of Delaware and this Court have enacted rules that make clear the courts' authority to exercise disciplinary jurisdiction over attorneys appearing before the Court.

12.     The applicable Delaware District Court rules governing attorney discipline are found in Article II of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (the "Local District Court Rules"), entitled "Attorneys." Rule 83.5 entitled "Bar Admission" provides that persons must be admitted in order to practice in the District Court, and they may apply for such admission either under Rule 83.5(b) based on their admission to practice in the State of Delaware or under Rule 83.5(c) for admission *pro hac vice.* Notably, subsection (i) of Rule 83.6, entitled "Attorney Discipline," provides that "[w]henever an attorney applies to be admitted or is admitted to his Court for purposes of a particular proceeding (*pro hac vice*), the attorney shall be deemed to thereby have conferred disciplinary jurisdiction upon this Court or any alleged misconduct of that attorney arising in the course of in the preparation for such proceeding." D. Del. R. 836 (i).

13.     The Local Bankruptcy Rules provide that the Local District Court Rules for admission of counsel to practice apply in the bankruptcy courts and that lawyers admitted *pro hac vice* are bound by the Model Rules of Professional Conduct. *See* Del. Bankr. R. 9010(1)(a) and (f). Local Bankruptcy Rule 9010(1)(a) provides that "[t]he Bar of this Court shall consist of those persons heretofore admitted to practice in the District Court and those who may hereafter be admitted in accordance with these Rules." *Id.* 9010(1)(a). Local Bankruptcy Rule 9010(1)(f) provides as follows:

DOCS_LA:341057.4 85353/001

> Standards for Professional Conduct. Subject to such modifications as may be required or permitted by federal statute, court rule or decision, all attorneys admitted or authorized to practice before this Court, including attorneys admitted on motion or otherwise, shall also be governed by the Model Rules of Professional Conduct of the 129 American Bar Association, as may be amended from time to time.

14.     Thus, it is clear that attorneys who practice before this Court, even non-Delaware lawyers admitted on a limited basis, are subject to the Court's disciplinary jurisdiction and held to compliance with the Model Rules.  Given the AIS lawyers' extensive, ongoing, and impactful participation in the Debtors' Bankruptcy Cases and the Plan process, particularly Mr. Rothweiler as discussed below who has addressed the Court extensively in prior proceedings, they can and should be held by this Court to the ethical rules set forth in the Model Rules.

15.     It is also worth noting that an apt section of the Code of Professional Responsibility is pertinent here notwithstanding the Debtors' effort to dismiss it.  In the Emergency Motion, the TCC cited to the Model Code of Professional Responsibility and the Canons of Professional Ethics to support its argument that the AIS firms can and should be directed to send the Joint Communication. *See* Emergency Motion, Dkt. No. 7447 at ¶6, fn. 8.  In defense of the status quo, the Debtors pointed out in their response that the American Bar Association replaced the Code of Professional Responsibility and its predecessor, the Canons of Professional Ethics, with the Model Rules of Professional Conduct and that the "operative corollary" in the Rules "contemplates disagreements between lawyer and client, but contains no provisions regarding disagreement among co-counsel or requirements for joint action."  *See* Debtors' Omnibus Objection, Dkt. No. 7467 at ¶20, fn. 50.

16.     When the ABA adopted the Model Rules, ABA shifted to a system of disciplinary rules in place of disciplinary rules and aspirational ethical considerations ("ECs") that were in the Model Code.  While the Model Rules do not contain the Model Code ethical

considerations, EC 5-12 is still valid guidance.  Under Model Rule 1.2(a), "A lawyer shall abide by a client's decision whether to settle a matter' and "shall consult with the client" as required by Model Rule 1.4.  Model Rule 1.4(b) states, "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."  In this instance, the AIS clients are the ones who decide whether to accept the proposed settlement.  The lawyers must abide by their decision.  In this case the two firms disagree on their recommendation to the clients regarding their decision; but both are required to explain the matter to the extent necessary to allow the clients to make an informed decision and are required to abide by that decision.  EC 5-12's guidance is consistent with the foregoing Model Rules.  EC 5-12 provides that when co-counsel cannot agree on their recommendation to the clients, they must jointly submit their disagreement to their clients for their resolution, and the clients' decision controls.  That guidance is valid here.

### 3. The AIS Attorneys' Active Participation as Counsel in the BSA Chapter 11 Case

17.    The docket reflects that each of the three law firms comprising AIS filed notices of appearance early in these cases.  Eisenberg Rothweiler filed its notice of appearance on February 2, 2021.  Dkt. No. 2000.  The notice of appearance was filed by the Hogan McDaniel firm and identified Eisenberg Rothweiler as "counsel for various child sexual abuse tort claimants and as a party-in-interest in the above captioned case . . . ."  *Id.*  It is evident that Eisenberg Rothweiler is not an abuse claimant or otherwise a creditor of BSA; the only capacity in which it entered its appearance is as counsel for various abuse claimants.

18.    Consistent with having appeared in the cases, Eisenberg Rothweiler—and Mr. Rothweiler in particular—has taken an active role that includes Mr. Rothweiler appearing and addressing the Court at length during the disclosure statement hearing and a more recent

9

hearing held in early November. In regard to the former, on September 28, 2021, during the continued disclosure statement hearing that, due to the COVID pandemic, was conducted via Zoom meeting, Mr. Rothweiler raised his hand and asked to address the Court.  When he was called upon, he proceeded to deliver a soliloquy that takes up twenty-five pages in the official transcript.  Transcript of Omnibus Hearing Sept. 28, 2021 at 220-245 (during which he described his central role in negotiating various settlements embodied in the Plan).

19.    In addition to appearing before this Court, Mr. Rothweiler and his firm signed and submitted many proofs of claim on behalf of clients.  And, as evidenced by correspondence from unhappy clients, see e.g., Kosnoff Response, Ex. A., it is apparent that he and his firm are systematically contacting the jointly represented clients of AIS to vote to accept the Plan or, if they have rejected the Plan, to change their vote.

20.    Yet, despite all of these actions taken by Rothweiler and his law firm, the TCC cannot locate a motion for admission of Mr. Rothweiler *pro hac vice* on the docket.  Under any fair reading of the applicable Local District Court Rule 83.5(c), given his active participation in the cases on behalf of his thousands of clients over the past year, he should have sought and obtained admission to practice in and appear before the Court.  The TCC raises this point because, under the local rules of this Court, had he sought admission *pro hac vice* as required to practice before this Court, he would have unavoidably subjected himself to this Court's disciplinary powers under Rule 85.6 (i).

21.    The other two attorneys comprising AIS, Van Arsdale and Kosnoff, are in a similar position, having entered their appearance but not sought admission (although there is no indication that either has addressed the Court in live hearings as Mr. Rothweiler has).  Initially, Van Arsdale and Kosnoff filed their notice of appearance jointly through outside counsel, Wilks

10

Law, LLC ("Wilks"), on September 8, 2020.  Dkt. No. 1271.  Although Van Arsdale and

Kosnoff identified themselves as "Interested Parties" in the notice of appearance, it cannot be

disputed that they are appearing as attorneys who represent clients in the BSA bankruptcy

estates.

22.    On August 13, 2021, presumably in the wake of the fallout among the

three law firms comprising AIS, a document entitled "Notice of Substitution of Counsel" was

filed at Docket No. 6001, which recited that Wilks was withdrawing as counsel for Mr. Van

Arsdale's law firm, the "AVA Law Group, Inc." (he had never appeared on that entity's behalf

before, only Mr. Van Arsdale had), and a new law firm, Cross & Simon LLC, entered its

appearance on behalf of AVA.  Dkt. No. 6001.

23.    Thus, all of the AIS lawyers have appeared in the BSA cases and, in the

case of attorneys Rothweiler and Kosnoff, have been exceptionally active and vocal advocates.

They should have sought *pro hac vice* admission in which case, pursuant to Local Bankruptcy

Rule 9001(f), they would be required to adhere to the standards of the Model Rules.  Given their

active participation in the cases, it would defy logic to excuse them from noncompliance with

their ethical obligations in connection with matters before the Court based on their own failures

to seek admission *pro hac vice* as required.  This Court undoubtedly has the jurisdiction to direct

them to apply for *pro hac vice* admission or cease further involvement in the cases, as well as the

inherent power under the circumstances to hold them to compliance with the ethical obligations

set forth in the Model Rules, which would apply had they not ignored their obligation to seek *pro

hac vice* admission before appearing and representing thousands of clients in these cases.

11

4.       **The Model Rules of Professional Conduct Require the AIS Firms to Communicate Appropriately with Their Jointly Represented Clients**

24.       The joint representation by AIS of approximately 17,000 clients is suffering from insufficient and inadequate communication due to the fact that the three law firms comprising AIS no longer agree on the advice to be given to the survivors they represent.

25.       This problem is not addressed in the rather brief form of engagement letter AIS used in securing client engagements.  *See* Dkt. No. 1997, Exh. A-3 at 15.  The potential conflict of interest is not disclosed to the clients and there is no waiver language nor evidence of client consent.

26.       Equally if not more problematic is that the AIS engagement letter does not address what happens if, as occurred, the  AIS firms vehemently disagree with one another with respect to the advice to be provided to their clients on the crucial issue of whether to accept or reject the Plan.  One firm (Rothweiler) is advocating for the proposed settlement and importuning the clients to accept while another (Kosnoff) is advocating against it.  Indeed, it could be said that their diametrically opposed positions on the plan is a manifestation of the conflict they have by their concurrent representation of survivors.

27.       Unfortunately, the AIS engagement letter is silent on what happens if the three law firms disagree with one another. There is no protocol to address this vexing problem, and what has happened instead of clear communications with their client in a single voice, the situation has devolved into an uncoordinated war of words between Rothweiler and Kosnoff espousing opposite views and recommendations for voting on the Plan.  The result is rampant confusion among their clients, not to mention unwanted solicitation of their votes in one direction or another by their competing counsel.  This state of affairs is inconsistent with their

ethical obligations to their jointly represented clients, who are owed a clear communication from their counsel, not rampant lobbying with polar opposite recommendations.[6]

28.    While the advice from either firm alone is tainted by the concurrent conflict of interest problem, their war with each other has prevented anything resembling clear advice to their clients, just the opposite.  The TCC submits that the massive confusion the AIS lawyers have created among their common clients requires a remedy, and that the most immediate and effective one would be the Joint Recommendation that presents to their clients a balanced view of their clients' respective interests in the proposed settlement and the choice they will have to make when voting on the Plan.  The Joint Recommendation Letter would allow their clients to hear both positions at one time in a coordinated manner.

29.    Ordering Rothweiler and Kosnoff to jointly communicate their advice to their mutual clients in a Joint Recommendation Letter is consistent with their professional responsibilities to properly communicate with and inform their clients, as embodied in Model Rule 1.4.  Model Rule 1.4 states that lawyers shall (a) reasonably consult with their clients about the means by which the client's objectives are to be accomplished and (b) keep their clients reasonably informed about the status of the matter.  Model Rule 1.4 (a)(2) & (3).  Additionally, Model Rule 1.4(b) states, "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."  *Id.* R. 1.4 (b).

30.    The TCC is not seeking an order that would dictate the advice Rothweiler and Kosnoff would provide in a Joint Recommendation Letter.  The proposed order would only direct that lawyers to communicate their advice in a clear and coordinated manner, to inform the clients about the firms' respective advice regarding the proposed Plan in a manner that will

---

[6] *See* Stephen C. Sieberson, *Two Lawyers, One Client, and the Duty to Communicate: A Gap in Rules 1.2 and 1.4*, 11 U. New Hamp. L. Rev. 27 (2013).

13

permit the clients to make an informed decision.  The Joint Recommendation Letter is reasonably necessary to resolve the untenable situation that has resulted from the two firms communicating their advice separately.

### III.
### NOTICE

31.    Notice of this Modified Emergency Motion has been provided to (a) the Debtors; (b) the Office of the United States Trustee; (c) counsel to the Official Committee of Unsecured Creditors; (d) counsel to the Future Claimants' Representative; (e) counsel to the Coalition; (f) counsel to the Ad Hoc Committee of Local Councils; (g) counsel to Eisenberg Rothweiler, AVA and Kosnoff Law, and (h) all parties requesting notice in the Bankruptcy Cases pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.  The TCC submits that no other or further notice is necessary under the circumstances.

### IV.
### CONCLUSION

WHEREFORE, for the reasons set forth herein, the TCC respectfully requests that the Court grant the relief requested herein and enter the Proposed Order, substantially in the form

attached hereto as **Exhibit A**, and for such other and further relief as is just and proper under the

circumstances.

Date:   December 7, 2021                     **PACHULSKI STANG ZIEHL & JONES LLP**


                                            _/s/ James E. O'Neill_____
                                            Richard M. Pachulski (CA Bar No. 90073) (admitted _pro hac vice_)
                                            Alan J. Kornfeld (CA Bar No. 130063) (admitted _pro hac vice_)
                                            Debra I. Grassgreen (CA 169978) (admitted _pro hac vice_)
                                            Iain A.W. Nasatir (CA Bar No. 148977) (admitted _pro hac vice_)
                                            James E. O'Neill (DE Bar No. 4042)
                                            919 North Market Street, 17th Floor
                                            P.O. Box 8705
                                            Wilmington, DE 19899-8705 (Courier 19801)
                                            Tele/Fax: (302) 652-4100 / (302) 652-4400
                                            Email: rpachulski@pszjlaw.com
                                                   akornfeld@pszjlaw.com
                                                   dgrassgreen@pszjlaw.com
                                                   inasatir@pszjlaw.com
                                                   joneill@pszjlaw.com

                                            _Counsel for the Tort Claimants' Committee_