```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE

                                    .    Chapter 11
IN RE:                              .
                                    .    Case No. 20-10343 (LSS)
BOY SCOUTS OF AMERICA AND           .
DELAWARE BSA, LLC,                  .
                                    .    Courtroom No. 2
                                    .    824 North Market Street
                                    .    Wilmington, Delaware 19801
                                    .
                 Debtors.           .    Tuesday, December 7, 2021
. . . . . . . . . . . . . . . . .        2:02 p.m.

                        TRANSCRIPT OF HEARING
              BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
                   UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:          Andrew Remming, Esquire
                         Derek C. Abbott, Esquire
                         MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                         1201 North Market Street, 16th Floor
                         Wilmington, Delaware 19899

                         - and -

                         Jessica C. Lauria, Esquire
                         WHITE & CASE LLP
                         1221 Avenue of the Americas
                         New York, New York 10020

Audio Operator:          Brandon J. McCarthy

Transcription Company:   Reliable
                         1007 N. Orange Street
                         Wilmington, Delaware 19801
                         (302)654-8080
                         Email: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.
```

```
 1
    APPEARANCES (Cont'd):
 2
    For Marc J. Bern &      William Sullivan, Esquire
 3  Partners:               SULLIVAN HAZELTINE ALLINSON LLC
                            919 North Market Street
 4                          Wilmington, Delaware 19801

 5
    For Century:            Tancred Schiavoni, Esquire
 6                          O'MELVENY & MYERS LLP
                            Times Square Tower
 7                          7 Times Square
                            New York, New York 10036
 8
    For the Coalition of    Cameron Moxley, Esquire
 9  Abused Scouts for       BROWN RUDNICK LLP
    Justice:                7 Times Square
10                          New York, New York 10036

11  For Krause & Kinsman:   Bernard Conaway, Esquire
                            CAMPBELL & LEVINE, LLC
12                          222 Delaware Avenue, Suite 1620
                            Wilmington, Delaware 19801
13
14  For Kosnoff Law:        David Wilks, Esquire
                            WILKS LAW, LLC
15                          4250 Lancaster Pike, Suite 200
                            Wilmington, Delaware 19805
16
17  For Verus LLC:          Michael Kaplan, Esquire
                            LOWENSTEIN SANDLER
18
19  For Various Law Firms:  Raeann Warner, Esquire
                            JACOBS & CRUMPLAR P.A.
20                          750 Shipyard Drive, Suite 200
                            Wilmington, Delaware 19801
21
                            - and -
22
                            Jonathan Hilton, Esquire
23                          HILTON PARKER LLC
                            7544 Slate Ridge Boulevard
24                          Reynoldsburg, Ohio 43068

25
```

```
 1
    APPEARANCES (Cont'd):
 2
    For Great American:       Bruce McCullough, Esquire
 3                            BODELL BOVE, LLC
                              1225 North King Street, Suite 1000
 4                            Wilmington, Delaware 19801
 5
                              - and -
 6
                              David Christian, Esquire
 7                            DAVID CHRISTIAN ATTORNEYS LLC
                              105 W. Madison Street, Suite 1400
 8                            Chicago, Illinois 60602

 9  For Zalkin and Pfau       Sasha Gurvitz, Esquire
    Cochran:                  Thomas Patterson, Esquire
10                            KTBS LAW LLP
                              1801 Century Park East, 26th Floor
11                            Los Angeles, California 90067

12
    For the United Methodist  Jeremy Ryan, Esquire
13  and Roman Catholic Ad     POTTER ANDERSON & CORROON LLP
    Hoc Committee:            Hercules Plaza
14                            1313 North Market Street, 6th Floor
                              P.O. Box 951
15                            Wilmington, Delaware 19801

16  For Tort Claimants:       David M. Klauder, Esquire
                              BIELLI & KLAUDER, LLC
17                            1204 N. King Street
                              Wilmington, Delaware 19801
18
19  For AVA Law:              Joseph Grey, Esquire
                              CROSS & SIMON LLC
20                            1105 North Market Street, Suite 901
                              Wilmington, Delaware 19801
21
    Appearing Pro Se:         Guy Taylor
22                            Jason Turner

23

24

25
```

MATTERS GOING FORWARD:

1. Letter to the Honorable Chief Judge Laurie Selber Silverstein from Bruce D. Celebrezze Regarding Certain Insurers' Seeking an Order Compelling the Coalition's Rule 30(b)(6) Deposition (D.I. 7471, filed 11/29/21)

   **Court's Ruling:  Ruling Deferred**

2. Letter to the Honorable Chief Judge Laurie Selber Silverstein from Daniel K. Hogan on behalf of Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. Regarding a Protective Order for Discovery Responses Produced by Timothy Kosnoff (D.I. 7480, filed 11/29/21)

   **Court's Ruling:  5**

3. Motion for Entry of an Order Authorizing the Law Firms to File Under Seal Portions of the Opposition Letter and Certain Exhibits (D.I. 7534, filed 12/01/21)

   **Court's Ruling:  12**

4. Notice of Filing of Plan Supplement to Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC (D.I. 7515, filed 11/30/21)

   **Court's Ruling:  13**

1        (Proceedings commence at 2:02 p.m.)

2              THE COURT:  Good afternoon, Counsel.  This is Judge
3   Silverstein.  We're here in the Boy Scouts of America
4   Bankruptcy Case 20-10343.
5              And, first, let me apologize.  I did not gauge my
6   time well, so I do not have my ruling yet on the first matter,
7   the Coalition matter.  So I will have that promptly and will
8   inform you when I have it.  My apologies for those who may not
9   needed to get on this call.
10             The second matter I am prepared to rule on, and so
11  let me do that.
12             This was the motion filed by Eisenberg, Rothweiler,
13  pursuant to Rule 7026(c) and 37(a)(5) for a protective order
14  regarding discovery disputes in materials produced by Mr.
15  Kosnoff in response to a subpoena served on him by Century
16  Indemnity Company.
17             Eisenberg, Rothweiler, joined by AVA Law Group,
18  seeks the following relief, an order authorizing Abused In
19  Scouting; Eisenberg, Rothweiler; AVA Law Group; and Kosnoff
20  Law to withhold or redact where appropriate and claw back on
21  the basis of privilege the following categories of documents,
22  and not to testify about those matters:  meeting notes or
23  presentations to the clients of AIS where those meeting notes
24  or presentations reveal attorney-client communications,
25  attorney work product, or communications made or information

1  provided in any of the attorney-client sessions; all
2  communications between AIS clients and the AIS law firms
3  regarding the terms of the attorney-client relationship; and
4  correspondence exchanged between the AIS clients and the AIS
5  law firms.
6          The basis of Eisenberg, Rothweiler's motion is
7  attorney-client privilege and common interest privilege.
8          This broad and somewhat future-looking request was
9  not really the subject of argument or, for that matter, the
10 submissions, the arguments focused on the sharing of the
11 specific documents by Mr. Kosnoff in connection with his
12 deposition.  Those documents were filed under seal as an
13 attachment to the objection filed by the Zalkin Law Firm and
14 the Pfau Cochran law firm.  At the commencement of Mr.
15 Kosnoff's deposition, it was agreed that the portions of the
16 deposition transcript that discussed the emails would be
17 sealed pending any motion for a protective order.
18         I have reviewed the emails attached to the
19 objection.  With maybe two exceptions, each of the email
20 threads shows consent.  The two exceptions appear to be texts
21 or Twitter posts that don't have a communication from a
22 survivor attached.
23         In the communication with the clients, the most
24 typical ask made by Mr. Kosnoff is as follows, quote:  "All of
25 our communications are privileged under the attorney-client

1  privilege, will you waive that privilege as to the specific
2  email exchange so that I can discuss your very good points in
3  my deposition, which I have been ordered to sit for this
4  Friday?  I intend to bring these issues to the attention of
5  the Court," unquote.
6           Another ask was, quote, "Will you give me
7  permission to use your above email to take to the Court, along
8  with many other similar complaints I am receiving from clients
9  who felt deceived?  You can reply with a simple 'Yes.'  It is
10 limited to this email exchange only," unquote.
11          The answers from the clients vary, but very typical
12 was a response that focused on the waiver as to the one
13 specific email.  For example, the email at Exhibit 9 shows a
14 response of, quote, "Hello, Timothy.  Yes, you may use this
15 email exchange at your deposition.  I waive that privilege to
16 the specific email exchange," unquote.
17          Eisenberg, Rothweiler and AVA Law focused in the
18 argument on the two main issues:  the failure of Mr. Kosnoff
19 and/or the client to include those firms in the client
20 communication, and the lack of informed consent.
21          As for the first argument, per the exemplar
22 agreement, engagement agreement submitted to the Court in
23 connection with 2019 statements, the firms are co-counsel, so
24 all of the email exchanges at issue are between survivors and
25 one of their attorneys, one of the co-counsel, Mr. Kosnoff.

1            Neither Eisenberg, Rothweiler nor AVA Law points me
2    to any case law for the proposition that a client must
3    communicate with all of his co-counsel simultaneously or even
4    at all.  Without any authority on point, I see no reason why a
5    client is not entitled to communicate with whichever of his
6    lawyers he chooses.
7            Further, neither Eisenberg, Rothweiler nor AVA Law
8    points me to any case law that one co-counsel must include all
9    co-counsel on communications with its clients.  And, as the
10   objector points out, that does not appear to be how these co-
11   counsel actually functioned.
12           As to the second point, informed consent, I do have
13   a concern about whether the consent provided was completely
14   informed, but that appears to be beside the point.  No party
15   briefed the issue about whether informed consent is a concept
16   relevant to the clawback of documents purposely shared with
17   others.
18           The attorney-client privilege is a concept from the
19   law of evidence.  It protects from discovery communications
20   between the attorney and client made for the purpose of
21   providing legal advice.  The privilege intends to encourage
22   full and frank communication between attorneys and clients,
23   promoting the broader public interest of the administration of
24   justice.  Voluntary disclosure to a third party of privileged
25   communications is inconsistent with the assertion of the

1   attorney-client privilege and, therefore, waives the
2   privilege.
3           There are exceptions to the waiver of the
4   privilege; for example, where disclosure is to co-litigants in
5   order to obtain informed legal advice.  The exceptions exist
6   because they are consistent with the underlying goal of the
7   privilege.
8           In a similar, but I think distinct vein, Rule 1.6
9   of the Model Rules of Professional Responsibility address
10  confidential information.  And, by the way, it's the Model
11  Rules that govern in this court.  Thus, confidentiality of
12  attorney-client communications is a legal ethics concept.
13          Rule 1.6 provides that, quote, "A lawyer shall not
14  reveal information relating to the representation of a client
15  unless the client gives informed consent."  The disclosure is
16  impliedly authorized in order to carry out the representation
17  or the disclosure is authorized pursuant to specific
18  exceptions not present here.
19          Informed consent, under the rules, is the agreement
20  by a person to a proposed course of conduct after the law has
21  communicated adequate information and explanation about the
22  material risks of and reasonable available alternatives to the
23  conduct.  Movants did not brief me on the distinction between
24  or interaction between these two concepts, so I will look at
25  them separately here.

1     As to waiver of the privilege, here, the attorney-
2 client communication was purposely disclosed to third parties
3 by Mr. Kosnoff.  Movants did not argue that the disclosure
4 fell into any exception, so privilege is waived.  If the
5 disclosure of the documents had been inadvertent, clawback of
6 those documents might be permissible, but that's not the case
7 here.
8     As to confidentiality and informed consent, as I
9 said, I have some concerns.  The emails provided do not
10 evidence an explanation of the material risks and reasonable
11 alternatives to the conduct.  Of particular note, Mr. Kosnoff
12 asked for and received permission to waive attorney-client
13 privilege as to a specific email; whether the waiver can be so
14 limited has not been briefed.  So I do not know the full
15 effect of the waiver of the attorney-client privilege and
16 whether there will be assertions it has been waived in further
17 discovery requests.
18     Let me hasten to add that my statement that Mr.
19 Kosnoff may not have provided adequate information and
20 explanations about the material risks does not mean that the
21 men with whom he communicated did not understand what he
22 presented to them.  It is clear that the survivors understood
23 Mr. Kosnoff's email request to waive attorney-client privilege
24 and were fully capable of making decisions.  Any fault in the
25 communication or understanding lies with Mr. Kosnoff for not

1  explaining to his clients that any attorney-client waiver may
2  not be limited to the one email.
3           That brings me back to the requested relief.  I
4  can't grant the request in this broad fashion that it has been
5  presented.  The only documents before me are the ones appended
6  to the objection.  If there are specific discovery requests, I
7  don't have them in front of me.  So I will rule on them if and
8  when they are put before me.  And, in that regard, attorney-
9  client privilege can be raised and the question will be
10 whether it was waived.  Common interest privilege, to the
11 extent that there is some attempt to say that these survivors
12 could waive the attorney-client privilege of other clients of
13 Mr. Kosnoff; Eisenberg, Rothweiler; or AVA Law, I am not
14 ruling on.  Those will all have to be issues that are
15 addressed in a particular context, which I just don't have in
16 front of me.
17          As to the particular documents, however, they do
18 not need to be clawed back.  I find the attorney-client
19 privilege has been waived by the voluntary production of those
20 documents.  If there are legal ethics consequences that arise
21 from that, or any other consequence that arises from that,
22 that is for the future.
23          So that concludes that ruling.  Okay.
24          MR. ABBOTT:  Thank you, Your Honor.  Derek Abbott
25 on behalf of the debtors.

1             Your Honor, the next item on the agenda was just
2  the motion to seal some portions of the opposition with
3  respect to that matter.  I don't know if the Court is prepared
4  to rule on those as well.
5             THE COURT:  I think it follows from my ruling, and
6  I'd like the parties to talk and see if they can agree upon a
7  form of order based on my ruling.  Maybe some things should be
8  sealed, but some things shouldn't be, and I actually don't
9  know.  So I'm going to ask the parties to confer on that.
10            As for these documents, they do not need to be
11 filed under seal.
12            MS. GURVITZ:  Thank you, Your Honor.
13            MR. ABBOTT:  Thank you, Your Honor.
14            That moves us to Agenda Item 4, Your Honor, which
15 was the Court's request to discuss plan supplement matters.
16            THE COURT:  Thank you.
17            So, as I indicated yesterday, I need to raise an
18 issue with respect -- that I see from the plan supplement that
19 was filed on November 30th.  Exhibit I identifies the initial
20 special reviewer.  I will confess, I had to go find out what
21 that was, as it's not something that's really been the subject
22 of any discussion at any hearings, but it is a position
23 established under the trust that has been filed, the trust
24 documents, which of course is part of the plan that's been
25 proposed by the debtors.

1             The initial special reviewer has been identified as
2 Kevin J. Carey, who was one of the mediators, the current
3 mediator.  That is a nonstarter; I will not be approving that
4 selection
5             More importantly, I'm now concerned about the
6 neutrality of the mediation, particularly with Mr. Carey
7 continuing as a mediator.  To put it simply, Mr. Carey now has
8 a stake in the outcome of the mediation.
9             I went back and looked at the transcript of the
10 hearing at which I appointed Mr. Carey.  And, as I'm sure the
11 parties recall, I appointed Mr. Carey in lieu of approving the
12 selection of Mr. Green.  And in that context, I said that when
13 you -- that a mediator is judged under Section 455 of Title
14 28, and I said, "When you look at Section 455 of Title 28, the
15 statute that deals with recusal of judges, which our local
16 rule on mediators refers to, it says that judges shall
17 disqualify themselves in any proceeding in which their
18 impartiality might reasonably be questioned.  In other words,
19 a Judge must recuse himself if there's a showing of an
20 appearance of bias sufficient to permit the average citizen
21 reasonably to question a judge's impartiality."
22             With the selection of Mr. Carey as the initial
23 special reviewer, I do not -- I believe there's a reason to
24 question his impartiality.
25             I thought about terminating the mediation, but

1  there's still one mediator who is not interested in any way in
2  the outcome of the mediation and has no stake in the future
3  confirmation hearing, and that's Mr. Gallagher, and I will
4  permit him to continue with the mediation.  And, of course,
5  the parties can continue to have settlement discussions
6  whether there's a mediation or not, but Mr. Carey is no longer
7  a mediator.
8            I recognize this is happening at a sensitive time
9  in this mediation when I'm being told that progress is being
10 made, but having given this some significant and considered
11 thought, I see no alternative.
12           So I will be entering an order today modifying the
13 mediation order, excluding Mr. Carey from being a mediator,
14 and it will be effective immediately.
15           And that concludes the hearing.
16           COUNSEL:  Thank you, Your Honor.
17           THE COURT:  Thank you.  We're adjourned.
18      (Proceedings concluded at 2:21 p.m.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17        CERTIFICATE
18
19     I certify that the foregoing is a correct transcript
20  from the electronic sound recording of the proceedings in the
21  above-entitled matter.
22
23
24  /s/ Tracey J. Williams           December 7, 2021
    Tracey J. Williams, CET-914
25