IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Re: D.I. No. 7601 |

**OBJECTION TO MODIFIED EMERGENCY MOTION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS REGARDING PLAN VOTING ISSUES**

AVA Law Group, Inc. ("AVA"), by and through its undersigned counsel, hereby opposes the *Modified Emergency Motion of the Official Committee of Tort Claimants Regarding Plan Voting Issues* (the "Motion"). The Motion should be denied for the following reasons:

**PRELIMINARY STATEMENT**

1. The Motion would have this Court interject itself and the TCC into the relationship between attorneys in this case and their clients. It is based on allegations against AVA Law Group that have no factual support. In fact, it was the Movant's own counsel who helped create the problem which they now allege requires unprecedented, draconian, emergency relief, perhaps in an effort to distract from their own role in the matter. The Movant now asks this Court to Order counsel to take a position on whether their clients should vote in favor of the Plan (whether such counsel believes they should take a position or not) and communicate that position to their clients in a very particular way (whether counsel believes that manner of communication makes sense or not). More than coincidentally, counsel would also be required to make this communication under a cover letter that is clearly designed to protect the TCC's counsel from the consequences of their

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

own missteps in this case. This relief, if granted, would set a terrible precedent for future cases and would threaten one of the fundamental bases of the adversary system – the ability of attorneys and clients to communicate free of interference from courts or opposing counsel. This Motion can and should be emphatically denied.

## BACKGROUND

2.      The allegations that Movant and others say justify emergency relief have not been proven in a manner to merit such an extraordinary remedy. They amount to little more than unsupported statements made by attorneys in this case who have a vested interest in whether the current proposed Plan of Reorganization is approved. All of the allegations are based on statements made by attorneys who have come out strongly against confirmation of the Plan of Reorganization now before the Court. Are AVA Group's clients more confused than other claimants in this case? Is that confusion so egregious as to warrant the Court stepping in to manage attorney-client communications? There is no real proof on this record. Movant complains about the communications Eisenberg Rothweiler is having with its clients; but does not mention at all the improper communications sent out by the TCC's own counsel or the unfortunate proclivity of Mr. Kosnoff to issue problematic tweets. The Motion argues that an "untenable situation… has resulted from the two firms [Kosnoff and Eisenberg Rothweiler] communicating their advice separately" (see Motion ¶30), but this ignores the major problems the TCC created when its counsel blast emailed a letter out to claimants. In short, the "factual" support for the Motion is thin and one-sided.

3.      Without waiving the attorney-client privilege or the work product doctrine in any way, AVA Law Group makes this representation to the Court about its general approach in this case. In October, 2021, AVA Law Group's co-counsel, Mr. Kosnoff and Eisenberg Rothweiler,

each asked AVA Law Group to distribute letters to their joint clients. Mr. Kosnoff's letter recommended that clients vote against the Plan and Eisenberg Rothweiler's letter recommended the opposite.[2] AVA Law Group sent those letters to the joint clients on their authors' respective letterheads. Each letter was sent out only one time by AVA Law Group.

4. Contrary to other counsel in this case, AVA Law Group does not take a "one size fits all" approach to advising its clients. The proposed Plan is very complicated and each of the thousands of claimants represented finds him or herself in different circumstances. For some a yes vote may make sense while for others the opposite vote may be the best approach. At least that is AVA Law Group's view. So, AVA's approach has been to let clients know that the firm is available to provide individualized advice concerning what scenarios the firm thinks are likely depending on what happens to the Plan and, where needed, help guiding clients through the voting process. AVA is also trying to make sure that each of its clients who wants a ballot has one in the form the client wants.[3] AVA believes that each of its clients should be empowered to make his or her own decision with respect to the Plan. Beyond that, AVA Law Group will not and cannot disclose the details of its discussions with individual clients.

## ARGUMENT

5. The legal premise of the Motion boils down to the proposition that relief against AVA Law Group may be ordered by this Court as a type of disciplinary sanction. But the Motion is silent as to what, exactly, AVA Law Group has done to merit a sanction. AVA Law Group has had nothing to do with Mr. Kosnoff's tweets. Nor was it involved in any way in the correspondence that Mr. Kosnoff and the TCC's counsel conspired to send to claimants. The

---

[2] Those letters have already been discussed on the record.

[3] If clients request an e-ballot, AVA refers them to Eisenberg Rothschild.

Motion also complains about communications between Eisenberg Rothweiler and its clients, but AVA was not involved in those communications either, except as set forth above. If AVA Law Group is to be sanctioned, then basic principles of due process require that it be provided with a clear, detailed explanation of what it supposedly did wrong. Yet no such explanation may be found in the Motion.

6. AVA Law Group's conduct in this matter has been completely consistent with the ABA's Model Rules of Professional Conduct and, in particular, Rule 1.4. Again, skipping over the substance of communications because that is protected under the attorney-client privilege, AVA has provided regular updates to its clients concerning developments in this case and encouraged them to call for individualized advice and assistance. Therefore, there is no basis for this Court to sanction AVA Law Group for anything.

7. In addition, the sanction the Movant proposes in the Motion is truly extraordinary and unprecedented. It would require AVA Law Group to take a position for or against the Plan and force AVA Law Group to make a recommendation to clients – a recommendation that AVA Law Group does not feel is appropriate. (See Proposed Order attached to the Motion at ¶¶ 2, 3.) This Court would thus put itself in the middle of the relationship between AVA Law Group and its clients. Anytime anyone feels that AVA Law Group has deviated from the script, those attorney-client communications would be subject to discovery and even sanctions. The TCC has provided no precedent for such a drastic sanction. Although the Motion provides some authority for the general notion that this Court may sanction attorneys before it, it does not cite a case wherein a sanction remotely like the one now proposed was imposed – let alone against a party that did nothing wrong.

8.      Moreover, the relief sought by the TCC – further communication to AIS' clients -- is not likely to resolve the problems that the TCC claims exist. As noted above, Kosnoff and Eisenberg Rothweiler's opposing recommendations on the Plan have already been made available to their clients. AVA Law Group saw to that. A further, repetitive, communication would not likely help. If anything, it would only add to any confusion that may exist, especially since if, as Movant proposes, that communication arrives with a cover letter from the TCC.

9.      The extraordinary relief requested in the Motion begs the question of how the TCC expects this Court to enforce it. Will the three firms be allowed to communicate with their clients in ways not specifically sanctioned by this Court? What if an attorney at any of these firms changes her or his mind about what to recommend to clients – will that be allowed? Will the attorney be allowed to communicate that change of heart to clients without Court intervention? Will all attorney-client communications with AIS' clients be subject to discovery? One suspects that the reason why there is no precedent for the Movant's proposed remedy is because questions such as this have convinced courts not to interfere with the relationships of attorneys and their clients. At the very least, any Order from this Court directing attorneys on how and what to communicate with their clients will chill attorney-client discussions – a result that would violate the spirit and the language of Model Rule 1.4.

10.     Finally, the implications of the relief sought by the Movants are frightening to imagine. This would create a truly terrible precedent. Once a court starts directing how and what attorneys communicate to their clients, where does it stop? If a dispute among counsel justifies judicial intervention in this case, then it could provide authority for a court to get involved in a case in which one attorney represents different clients. Or a case in which two attorneys in a law firm have a genuine dispute over how to advise a client. In a case such as this, when the

justification for relief is not based in proven facts, and where the remedy is not anchored solidly in established precedent, the possible ramifications of the relief requested from this Court should be of particular concern.  The possibilities for litigants to use such a precedent for strategic reasons would be endless.  It should take far more than the Movant has provided to this Court to warrant such extraordinary relief.

11. In sum, the Motion should be denied because there is no factual or legal basis for it, the remedy it requests is not necessary, it is at best duplicative and at worst promises to generate confusion among AVA's clients, and the relief will, if granted, create a horrible precedent for future cases.  The attorney-client relationship is already governed by a number of rules and guidelines and there are of remedies already available in cases where a duty is breached.  This Court need not create a new, wholly-unprecedented remedy in this case at the behest of a party with an ulterior motive.

Dated:  December 10, 2021

**CROSS & SIMON, LLC**

*/s/ Joseph Grey*
Joseph Grey (No. 2358)
1105 North Market Street, Suite 901
Wilmington, DE 19801
Telephone:  (302) 777-4200
Facsimile:  (302) 777-4224
jgrey@crosslaw.com

*Counsel for AVA Law Group, Inc.*