# Exhibit A

**Century and Chubb Companies Term Sheet**

**EXECUTION COPY**

## SETTLEMENT TERM SHEET

This term sheet ("Term Sheet") dated December 12, 2021 represents the basic terms of a settlement agreement between and among Century and the Chubb Companies (as defined below) (collectively, the "Settling Insurers"), Boy Scouts of America and Delaware BSA, LLC, as debtors and debtors in possession (collectively, "BSA" or the "Debtors"), the Ad Hoc Committee of Local Councils (the "AHCLC"), the Coalition of Abused Scouts for Justice, solely and only in its capacity as an ad hoc committee (the "Coalition"),[1] and the Future Claimants' Representative (the "FCR" and, collectively with the Settling Insurers, the Debtors, the AHCLC, and the Coalition, the "Parties").[2]  The attorneys representing holders of Direct Abuse Claims listed on Schedule 1 hereto, which reflects the number of holders of Abuse Claims represented by each firm (the "State Court Counsel") agree to support the terms of and be bound by the Agreement (as defined below).  The Parties will prepare a definitive written settlement agreement consistent with this Term Sheet that will include additional material terms (the "Agreement") which Agreement will be appended to and incorporated by reference in an amendment to the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [D.I. 6443] (the "Plan" and as amended to include this Term Sheet and the Agreement, the "Amended Plan"), which Agreement and Amended Plan shall be fully consistent with this Term Sheet and otherwise in form and substance reasonably acceptable to the Parties.

WHEREAS, the Settling Insurers have allegedly issued insurance policies covering or allegedly covering Claims and Causes of Action for Abuse involving Scouting that occurred prior to the Petition Date;

WHEREAS, the Parties wish to resolve disputes concerning such policies;

WHEREAS, as provided herein and subject to the terms of the settlement, the Settling Insurers will pay the Settlement Amount in exchange for the injunctions, releases and other protections described below;

WHEREAS, among other things, the settlement provides for the channeling and release of all Abuse Claims against the Settling Insurers (and against their insureds under policies issued by the Settling Insurers that may cover such Claims) in exchange for the Settlement Payment.

Capitalized terms not defined in this Term Sheet shall have the definitions ascribed to such terms in the Amended Plan, as modified to be consistent with this Term Sheet.

1. **Term Sheet Effective Date**.  This Term Sheet, and any definitive written Agreement prepared in connection with this Term Sheet, shall be binding on the Parties, subject to the Sections 29

---

[1] For the avoidance of doubt, no holders of Direct Abuse Claims are or shall be deemed Parties to this Term Sheet or the Agreement.

[2] Notwithstanding anything to the contrary in this Term Sheet, the obligations and undertakings of the AHCLC in connection with this Term Sheet or the Agreement shall be no greater than the AHCLC's parallel obligations and undertakings under Section III of the Restructuring Support Agreement (including the "No Liability" subsection thereof) filed at Dkt. 5466-2.

and 30 below, when each of the Parties has executed this Term Sheet and/or any definitive written Agreement prepared in connection with this Term Sheet.

2. **Release Effective Date**.  Notwithstanding anything else herein to the contrary, none of the releases set forth herein shall be effective unless and until the Settlement Amount set forth herein is released from the Escrow Account (as defined below) to the Trust as provided in the Amended Plan (the "Release Effective Date"), provided that (a) the release of the Pre-Petition Century/Chubb Claims shall be effective upon the making of the Initial Payment and (b) for the avoidance of doubt, the Trust may not receive, use or retain any portion of the Additional Payment or Net Income (as hereinafter defined) unless the Release Effective Date has occurred or occurs simultaneously therewith.

3. **Settlement Amount**.  In consideration of the releases, injunctions, and other consideration provided for herein, the Settling Insurers shall pay in cash $800,000,000 (the "Settlement Amount") free and clear of all liens, claims, or interests to the Settlement Trust for Abuse Claims to be created under the Amended Plan (the "Settlement Trust" or "Trust").  There shall be no most-favored nation or similar provision that would reduce the Settlement Amount to be paid by Settling Insurers based on any settlements that BSA may enter into with other insurers. The Settling Insurers shall be entitled to allocate the Settlement Amount among the Settling Insurers' Policies issued to BSA and the Local Councils for all purposes, in their sole discretion, provided, however, that (i) such allocation shall not bind the Trust and (ii) the Settling Insurers will not allocate the Settlement Amount to any other insurance policy issued directly to a Chartered Organization by the Settling Insurers.  The foregoing allocation of the Settlement Amount will not affect the extent and scope of the releases provided herein, including Sections 8 and 9 hereof.

4. **Payment and Release of the Settlement Amount**.  Upon the entry of the Confirmation Order by the Bankruptcy Court, the Settling Insurers shall pay $200,000,000 into an escrow account (the "Escrow Account"), to be administered by an independent escrow agent acceptable to the Parties, with $100,000,000 to be deposited by the Settling Insurers into the Escrow Account every sixty (60) days thereafter until the total balance of the Settlement Amount of $800,000,000 has been deposited into the Escrow Account, *provided*, *however*, that the full amount of the Settlement Amount shall have been deposited into the Escrow Account within five (5) days after entry of the Affirmation Order by the District Court to the extent not previously deposited.  For the avoidance of doubt, any net balance of the Settlement Amount not previously deposited shall be paid into the Escrow Account as soon as reasonably practicable after the date all conditions to the effectiveness of the Amended Plan have been satisfied including the entry of the foregoing orders (the "Effective Date").  All payments held in the Escrow Account (the "Escrowed Payments") and all income earned thereon minus (a) the fees of the escrow agent, and (b) any taxes that are payable and other costs of the Escrow Account, which amounts in (a) and (b) shall be paid from the corpus of the Escrow Account (such income (or loss) minus such amounts, the "Net Income")) shall remain in the Escrow Account until the dates provided herein.  On the Initial Payment Date, the amount of $50,000,000 of the Settlement Amount (the "Initial Payment") shall be released to the Trust. The remaining $750,000,000 balance of the Settlement Amount (the "Additional Payment") and the Net Income shall remain in the Escrow Account until the Confirmation Order shall become a Final Order (as defined in the Amended Plan), and the other conditions precedent to the occurrence of the Release Date have occurred, on which date the Additional Payment, plus any Net Income, shall be released from the Escrow Account to the Trust; *provided, however,* that, at their election and in their sole discretion as long as the conditions to the Initial Payment

Date remain in effect, Settling Insurers may authorize the release of all or a portion of the Additional Payment (and any Net Income) from the Escrow Account to the Trust at any time thereafter before the Confirmation Order becomes a Final Order. The Release Date shall not occur until the Additional Payment and the Net Income have been released to the Trust. The Trust will have investment discretion with respect to the Escrowed Payments while they are in the Escrow Account, subject to the Parties' agreement on investment guidelines to be provided to the Escrow Agent under which the Escrowed Payments may be invested by the Trust; *provided, however*, that the Trust will bear all risks associated with any such investment of the Escrowed Payments and that no loss or failure to achieve desired investment returns on the Escrowed Payments while they are in the Escrow Account shall require Settling Insurers to increase the Settlement Amount they are paying (or increase the amount of BSA's contribution to the Trust); *provided further, however*, that the Debtors, Reorganized BSA, the Local Councils and Chartered Organizations shall have no liability or obligations to Settling Insurers or the Trust, the Trust shall have no liability or obligations to Settling Insurers, and Settling Insurers shall have no liability or obligations to the Trust (or any other Party), whatsoever for any loss or failure to achieve desired investment returns on the Escrowed Payments while they are in the Escrow Account. Notwithstanding anything to the contrary herein, the Escrowed Payments and any amounts in the Escrow Account including the Net Income shall be promptly released to the Settling Insurers upon their written demand if any of the following occur: (i) the District Court does not enter the Affirmation Order within 360 days of the entry of the Confirmation Order by the Bankruptcy Court or the District Court declines to enter the Affirmation Order (whether or not such denial constitutes a reversal or remand); (ii) the Amended Plan is at any time withdrawn; (iii) the Amended Plan otherwise ceases to conform to the Term Sheet or the Agreement; (iv) there is a Reversal; (v) the Cases have been converted or dismissed, (vi) the Parties agree to such release, or (vii) an order of the Bankruptcy Court or District Court so provides.

5.  **Protections to be Afforded to the Settling Insurers**. Effective as of the Release Date, Settling Insurers are to be designated Protected Parties for all purposes under the Amended Plan and granted all associated releases, injunctions (including the Settling Insurer Policy Injunction), and protections. As set forth herein, the Settling Insurers shall be granted such releases, injunctions, protections as are necessary to deliver finality with respect to all known and unknown policies they issued to BSA and Local Councils covering or potentially covering Claims or Causes of Action related to, arising from or in connection with Abuse Claims, which shall include those identified on Exhibits A and B for all purposes any and all policy and claim years whether before or after 1976, all such known and unknown policies subject only to the limitations stated in this Section 5 (as applicable to Post-Petition Policies and Non-Abuse Insurance Policies) and Section 6 (with respect to Westchester), collectively the "<u>Settling Insurers' Policies</u>") and any other insurance policy issued by the Settling Insurers covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims; any actions, omissions or positions taken in connection with any Abuse Claims and/or the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date related to any Abuse Claims and/or policy issued by the Settling Insurers concerning the Debtors or Scouting, including the Settling Insurers' performance of their obligations thereunder whether for defense, settlement of claims or otherwise. Notwithstanding anything to the contrary, the BSA, Local Councils, and Chartered Organizations are not releasing,

enjoining, or protecting any rights under (i) Non-Abuse Insurance Policies[3] (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from or in connection with Abuse Claims, any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including the Settling Insurers' performance of their obligations under such policies whether for defense, settlement of claims or otherwise and (ii) Post-Petition Policies, except for any Claims or Causes of Action related to, arising from or in connection with any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including the Settling Insurers' performance of their obligations under such policies whether for defense, settlement of claims or otherwise.  The Agreement, the Amended Plan, and the Confirmation Order shall provide for a channeling injunction and full release of the Settling Insurers with respect to all Claims or Causes of Action related to, arising from or in connection with Abuse Claims (which shall be conveyed to the Debtors and/or the Trust), including but not limited to the types of claims listed in the Insurance Actions definition in the Plan and other Claims related to the insurance policies issued by the Settling Insurers subject to the limitations stated in this Section 5 (as applicable to Post-Petition Policies and Non-Abuse Insurance Policies) and Section 6 (with respect to Westchester).  All injunctions, including the Settling Insurer Policy Injunction, shall remain in place between the Effective Date and the Release Date (and thereafter) such that any and all Claims and Causes of Action that are to be released or channeled through the Amended Plan and the Agreement shall be continuously enjoined pending their release.  The Settling Insurers shall be Protected Parties under the Amended Plan and have no fewer rights or protections than are afforded the Local Councils (other than the limited indemnity provided under Article IV.M of the Amended Plan) or any other person or entity by virtue of their status as a Protected Party with respect to any injunctions, releases or other protections provided thereto.

6. **Sale of Settling Insurers' Policies**.  Prior to the Effective Date and subject to the limitations in this Section 6 (with respect to Westchester), the Local Councils and the Settling Insurers shall consent to and provide for the assignment of the Local Council Insurance Policies issued by Settling Insurers, which include those identified on Exhibit B (the "Settling Insurers Local Council Policies"), to the Debtors' Estates.  The Confirmation Order and the Amended Plan shall provide that (a) on the Effective Date and subject to the limitations in this Section 6 (with respect to Westchester), the BSA Insurance Policies issued by Settling Insurers which include those identified on Exhibit A (the "BSA Settling Insurers' Policies"), and the Settling Insurers Local Council Policies shall be sold by Debtors to Settling Insurers free and clear of all liens, claims, encumbrances, interests and other rights of any nature, whether at law or in equity, of any entity, including those of the Debtors, the Local Councils, the Contributing Chartered Organizations, and their respective creditors and interest holders in the Settling Insurers' Policies pursuant to sections 363, 1123 and/or 1141 of the Bankruptcy Code (the "Sale"), (b) the assignment by Local Councils and the Sale shall exclude the Post-Petition Policies and Non-Abuse Insurance Policies; (c) the Sale represents a sound exercise of Debtors' business

---

[3]  The Plan definition will be expanded to include all such policies (e.g., Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies)) for Local Councils and Chartered Organizations.  The Plan definition of Abuse Insurance Policies, BSA Insurance Policies, and Local Council Insurance Policies shall also be redefined to be consistent with this Term Sheet, subject to Hartford's consent, including that the aforementioned definitions shall only mean prepetition policies.

judgment, will yield a fair and reasonable price for the assets being sold, is in the best interests of the Debtors' Estates, and otherwise complies with section 363 of the Bankruptcy Code, (d) the proceeds of such Sale shall constitute property transferred to the Trust under the Amended Plan, (e) the Sale constitutes a purchase by the Settling Insurers in good faith pursuant to section 363(m) of the Bankruptcy Code, rendering the provisions of section 363(m) applicable and affording the Settling Insurers all protections thereunder, and (f) unless the Coalition and the FCR agree otherwise, no person or entity, including any person or entity that is co-liable with the Debtors for Direct Abuse Claims or Scouting related Abuse, shall have any right to be paid from the Settlement Amount that would directly or indirectly prevent the Settlement Amount from being paid to the Trust and/or the holders of Direct Abuse Claims, *provided*, *however*, nothing herein shall prevent the Trust from using the Settlement Amount in accordance with Trust Agreement and the Trust Distribution Procedures.  Any excess liability policies issued from March 1, 2013 to February 28, 2019, to the BSA by Westchester Fire Insurance Company and Westchester Surplus Lines shall be included in the Sale and shall be excluded from the definition of "Specified Insurance Policies" in the Amended Plan.  The excess liability insurance policy issued to the BSA by Westchester Surplus Insurance Company on March 1, 2019 shall not be included in the Sale; provided that (a) the Settling Insurers will receive a release with respect to this policy for any claims that arise in whole or in part from pre-Petition events, including Abuse Claims that arise in whole or in part from Abuse that pre-dates the Petition Date, and (b) the post-petition date period of this policy shall be treated as a Post-Petition Policy.  The Agreement will contain a representation that the Settling Insurers and BSA have each conducted a reasonable, good faith search of its respective records and that it has located no evidence of any BSA Insurance Policies issued by Settling Insurers other than the policies identified on Exhibit A or any Local Council Insurance Policies issued by Settling Insurers other than the policies identified on Exhibit B, and that based on such searches, neither Party believes that any additional policies or secondary evidence of such policies exists.  Without limiting the foregoing, although the Parties do not believe that the Sale would constitute a violation of the automatic stay of any Chartered Organization that is a debtor in bankruptcy and that asserts an interest in one or more BSA Settling Insurers' Policies, to the extent the Bankruptcy Court (or other court with jurisdiction) determines that the Sale would constitute such a violation, then the Parties shall seek a determination from the Bankruptcy Court that they may proceed with the Sale or relief from such stay to effectuate the Sale.

7. **Trust Bound by Agreement**.  Upon the Effective Date, the Trust shall be bound by all terms of this Term Sheet and the Agreement.  Upon the Release Date, the Trust shall release Settling Insurers from all Causes of Action and Claims that the Trust holds relating to the Settling Insurers' Policies and other policies issued by the Settling Insurers covering Abuse Claims, provide the other releases contained in the Agreement and otherwise perform as required in the Agreement.

8. **Release by Settling Insurers**.  Upon the Release Date, subject to the limitations below, Settling Insurers and their Representatives shall release the Debtors, Reorganized BSA, Related Non-Debtor Entities, Local Councils, Limited Protected Parties, other Protected Parties (including the Contributing Chartered Organizations), other Settling Insurance Companies, the FCR, the Coalition and the Trust from all Causes of Action and Claims related to, arising from or in connection with, in whole or in part (a) Abuse Insurance Policies (which shall include all Settling Insurers' Policies); (b) any other insurance policy issued by the Settling Insurers covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims, (c) the types of claims listed in the Insurance Actions definition in the Plan including extra-contractual claims related to the Settling Insurers' Policies,

including the Debtors' performance of their obligations thereunder whether for defense, settlement of claims or otherwise, (d) the Debtors' Chapter 11 Cases and related proceedings, including the Debtors' Plan, the Amended Plan and any prior plans, any Claims that were or could have been asserted by Settling Insurers against the Debtors or any of the Releasing Parties, or by the Debtors or any of the Releasing Parties against Settling Insurers, in the Debtors' Chapter 11 Cases, any actions, omissions or positions taken in the Debtors' Chapter 11 Cases and related proceedings; (e) all Claims and Causes of Action alleging Abuse Claims against the Protected Parties (including such Claims and Causes of Action related to any insurance policy issued by the Settling Insurers), and (f) any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date related to any policy issued by the Settling Insurers concerning the Debtors or Scouting, including the Settling Insurers' performance of their obligations thereunder whether for defense, settlement of claims or otherwise. Nothing shall preclude the Settling Insurers from enforcing the terms of the Agreement. Furthermore, nothing in this Term Sheet, the Agreement or the Amended Plan shall constitute a release of any Claim by the Settling Insurers or their Representatives or any rights related to or Claims concerning (i) to the extent provided for in Section 6, the excess liability insurance policy issued to the BSA by Westchester Surplus Insurance Company on March 1, 2019, (ii) Non-Abuse Insurance Policies, (iii) reinsurance, (iv) Sidley Austin LLP or (v) the Post-Petition Policies. The releases in this Section 8 shall be subject to and limited by Section 5 (as applicable to Post-Petition Policies and Non-Abuse Insurance Policies) and Section 6 (as applicable to Westchester).

9.  **Release of Settling Insurers**.  Upon the Release Date, the Debtors, Reorganized BSA, Related Non-Debtor Entities, Local Councils, Limited Protected Parties, other Protected Parties (including the Contributing Chartered Organizations), other Settling Insurance Companies, the FCR, the Coalition, the Trust and all such Persons' or Entities' Representatives (the "Releasing Parties") shall release Settling Insurers from all Causes of Action and Claims related to, arising from or in connection with, in whole or in part (a) Abuse Insurance Policies (which shall include all Settling Insurers' Policies); (b) any other insurance policy issued by the Settling Insurers covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims, (c) the types of claims listed in the Insurance Actions definition in the Plan and other Claims related to the Settling Insurers' Policies and Settling Insurers' performance of their obligations thereunder whether for defense, settlement of claims or otherwise, (d) the Debtors' Chapter 11 Cases and related proceedings, including the Debtors' Plan, the Amended Plan and any prior plans, any Claims that were or could have been asserted by Settling Insurers against the Debtors or any of the Releasing Parties, or by the Debtors or any of the Releasing Parties against Settling Insurers, in the Debtors' Chapter 11 Cases, any actions, omissions or positions taken in the Debtors' Chapter 11 Cases and related proceedings; (e) all Claims and Causes of Action alleging Abuse Claims against the Protected Parties (including such Claims and Causes of Action related to any insurance policy issued by the Settling Insurers), and (f) any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date related to any policy issued by the Settling Insurers concerning the Debtors or Scouting, including the Settling Insurers' performance of their obligations thereunder whether for defense, settlement of claims or otherwise. If another Settling Insurance Company receives broader releases or protections concerning Causes of Action and Claims related to its policies (including its Abuse Insurance Policies) than those provided to Settling Insurers in the Agreement or Amended Plan, then Settling Insurers shall receive the benefit of those broader releases and protections automatically and without the necessity of further actions by the Parties. The Agreement will provide that the release of Settling Insurers shall not affect claims against other insurance companies, subject to the

limitation that the Settling Insurers shall not assert claims against other Settling Insurance Companies. Nothing shall preclude the Releasing Parties from enforcing the terms of the Agreement and the Amended Plan. For the avoidance of doubt, the term "Releasing Parties" shall include (1) all of such parties' respective past, present and future direct or indirect parents, subsidiaries, affiliates and controlled entities, and each of their respective officers, directors, stockholders, members, partners, managers, employees, attorneys, agents, experts, consultants, volunteers, predecessors, successors and assigns, each in their capacity as such (including any of the foregoing who is an alleged Perpetrator), and, (2) to the extent of any party's right, power and authority to do so, any and all other persons or entities entitled to assert rights to coverage under any of the Settling Insurers' Policies or any policy of insurance issued to or for the benefit of such releasing party related to Abuse Claims.[4] The releases in this Section 9 shall be subject to and limited by Section 5 (as applicable to Post-Petition Policies and Non-Abuse Insurance Policies), Section 6 (as applicable to Westchester), and shall not include any insurance policies for which the Settling Insurers become responsible or acquire on or after the Term Sheet Effective Date.

10. **Participating Chartered Organizations**.  Under the Amended Plan and as a condition to the Effective Date (waiver of which shall require the prior written consent of, among others, the Settling Insurers), in order to obtain the benefit of (1) the Settling Insurer Policy Injunction, and (2) the Full Post-1975 Injunction, Participating Chartered Organizations shall be required to provide, or be deemed to provide, the following assignment of their insurance rights (the "Participating Organization Insurance Assignment"):  any and all of the Participating Chartered Organizations' rights, titles, privileges, interests, claims, demands or entitlements, as of the Effective Date, to any proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, arising under or attributable to (a) the Abuse Insurance Policies (including the Settling Insurers' Policies), (b) any other insurance policies issued by a Settling Insurance Company that cover Abuse Claims with respect to such coverage for Abuse Claims, (c) the Insurance Settlement Agreements (including the Agreement) and claims thereunder and proceeds thereof, (d) the types of claims listed in the Insurance Actions definition in the Plan (including with respect to the insurance policies issued by the Settling Insurers), (e) the Insurance Action Recoveries (including with respect to the Settling Insurers' Policies), and (f) the Participating Chartered Organization Insurance Actions.  In addition, in order to obtain the benefit of (1) the Settling Insurer Policy Injunction, and (2) the Full Post-1975 Injunction, Participating Chartered Organizations shall be required to make, or be deemed to make, the following contribution to the Trust ("Participating Chartered Organization Settlement Contribution"): (a) the Participating Organization Insurance Assignment; (b) to the extent of any rights, claims or interests not assigned to the Trust pursuant to the Participating Chartered Organization Insurance Assignment, the waiver and complete release of (i) each of the Participating Chartered Organization's rights, titles, privileges, interests, claims, demands or entitlements under the Settling Insurers' Policies and any other insurance policy issued by the Settling Insurers with respect to Claims or Causes of Action involving Abuse Claims concerning such coverage for Abuse Claims; (ii) any Claim held by the Participating Contributing Chartered Organization that is attributable to, arises from, is based upon, relates to, or results from, in whole or part, directly, indirectly, or derivatively (including through any insurance policy

---

[4] For purposes of clarity, the releases in this Section 9 do not include personal insurance policies issued directly to individuals who are releasing parties or to directors and officers liability policies issued in connection with their affiliations with entities other than BSA, the Local Councils or Chartered Organization.

issued by the Settling Insurers), alleged Abuse Claims that occurred prior to the Petition Date against the Settlement Trust, the Debtors, Reorganized BSA, the Local Councils, any Contributing Chartered Organization or Settling Insurers; (iii) any and all Claims that have been asserted in the Chapter 11 Cases by or on behalf of any Participating Chartered Organization, including any Indirect Abuse Claims, without any further notice or action, order, or approval of the Bankruptcy Court, which Claims shall be expunged from theClaims Register, and the agreement of each Participating Chartered Organization not to (a) file or assert any Claim or Claims against the Trust, the Debtors, or Reorganized BSA arising from any act or omission of the Debtors, the Local Councils, any Contributing Chartered Organization, or any Participating Chartered Organization on or prior to the Confirmation Date or (b) file or assert any rights or interests in any property transferred to the Trust under the Amended Plan, including the proceeds of any settlements paid by an Settling Insurance Company; and (c) the assignment to the Trust of any and all Perpetrator Indemnification Claims held by the Participating Chartered Organizations. Other than the TCJC, no Chartered Organization may become a Contributing Chartered Organization without making a contribution in form and substance equivalent to the Participating Chartered Organization Settlement Contribution and agreeing to be bound by the terms and conditions of this Term Sheet.

11. **Protections Afforded to Insureds and Co-Insureds**.  On the Release Date, all Abuse Claims against insureds and co-insureds covered under insurance policies issued by the Settling Insurers shall be channeled under the Settling Insurer Policy Injunction and released.  Pending the occurrence of the Release Date, all such Abuse Claims shall be enjoined pursuant to the Post-Petition Interim Injunction, as provided herein.

12. **Bankrupt Chartered Organizations**.  The BSA shall use best efforts to work with the Roman Catholic Ad Hoc Committee and the Chartered Organizations that are debtors in bankruptcy (the eight bankrupt entities identified on Exhibit K to the Amended Plan, which may be amended to the extent that additional Chartered Organizations file for bankruptcy protection prior to entry of the Confirmation Order, the "Bankrupt Chartered Organization") to obtain written consent for them to consent to the terms hereof and the Agreement.  To the extent that a Bankrupt Chartered Organization will not provide written consent to this Term Sheet and the Agreement, the Parties will use reasonable efforts to jointly resolve such non-consent, which may, upon the consent of the Parties, include excluding such Bankrupt Chartered Organization from the protections and benefits otherwise provided herein and in the Agreement, provided that the failure to obtain such consent as it applies to the applicable Bankrupt Chartered Organizations shall not be deemed a breach of the Agreement by any Party or a failure to satisfy a condition to the effectiveness of the Agreement or the Amended Plan.  The Parties consent to the foregoing provisions covering the Settling Insurers to apply to any other Settling Insurance Company.

13. **Opt-Out Chartered Organizations**.   Under the Amended Plan and as condition to the Effective Date (waiver of which shall require the prior written consent of, among others, the Settling Insurers), any Chartered Organization that is not a Contributing Chartered Organization and is not a Participating Chartered Organization (an "Opt-Out Chartered Organization") (*i.e*., a Chartered Organization that objects to the Amended Plan) shall receive the benefit of the Settling Insurer Policy Injunction and the release of all Abuse Claims that are covered under insurance policies issued by the Settling Insurers on the Release Date.  No Chartered Organization that is an Opt-Out Chartered Organization may become a Contributing Chartered Organization unless (a) a financial contribution is made by or on behalf of such Opt-

Out Chartered Organization, (b) such Chartered Organization agrees to provide the assignments and releases set forth in Sections 9 and 10, and (c) if and to the extent required by BSA, it agrees to cooperate with Youth Protection.

14. **Post-Confirmation Interim Injunction**.  The Plan and Confirmation Order shall provide that all injunctions and stays arising under or entered during the Chapter 11 Cases, whether under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Release Date, any final injunctions are issued, or upon a Reversal or other condition that results in the return of the Escrowed Payments to the Settling Insurers.  To the extent not otherwise in place, the Amended Plan shall provide that pending the occurrence of the Release Date and thereafter, any Claim that would be released or subject to a channeling injunction upon the occurrence of conditions set forth herein (including the occurrence of the Release Date) shall be stayed and enjoined pending satisfaction of such conditions.  Such injunction shall permit the filing, but not the prosecution, of the Abuse Claims against such Chartered Organizations.

15. **Abuse Claims Under Policies Issued to Chartered Organizations**.  The release by the Participating Chartered Organizations and Contributing Chartered Organizations of the right to seek coverage for Abuse Claims under insurance policies issued directly by Settling Insurers to such Chartered Organizations[5] does not include the following:

     (a)     Such Chartered Organizations are not barred from tendering claims that are not Abuse Claims to such insurance policies, with all parties reserving their rights as to whether such insurance policies applies and to what extent;

     (b)     Such Chartered Organizations are not barred from tendering Mixed Claims to such insurance policies, with all parties reserving their rights as to whether such insurance policies apply and to what extent.  All Parties agree to cooperate to enforce the Post-Confirmation Interim Injunction and the Channeling Injunction to eliminate all or a portion of the Mixed Claims against the applicable Chartered Organizations;

     (c)     Such Chartered Organizations may seek coverage and tender claims under such insurance policies pending determination by a court of competent jurisdiction as to whether a Claim is a channeled Abuse Claim, subject to all parties' contractual rights;

     (d)     To the extent a court determines that a claim against such Chartered Organizations is not an Abuse Claim or is not subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Plan, such Chartered Organizations may seek defense and indemnification of that claim from such insurance policies, subject to all parties' contractual rights;

     (e)     To the extent a court determines that a claim against such Chartered Organizations is subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Plan, the Settling Insurers shall have no further obligations with respect to such claim; and

---

[5] This does not include policies issued by the Settling Insurers to the BSA or the Local Councils.

(f)    The Settlement Trust shall cooperate with any ongoing efforts by such Chartered Organizations and/or the Settling Insurers to establish that the Post-Confirmation Interim Injunction and the Channeling Injunction apply.

16. **Other Chartered Organization Settlement**.  The Other Chartered Organizations (as defined below) shall be treated as Contributing Chartered Organizations under the Amended Plan (*i.e.*, receive the full channeling injunction applicable to Abuse Claims) if on or before the Release Date (the "Other Chartered Organization Payment Date") the following contributions are made to the Trust:  (a)(1) the Supplemental LC Contribution (as defined below) has been deemed contributed to the Trust as provided in the Amended Plan; (2) the Settlement Amount is released to the Settlement Trust; and (b) for any Other Chartered Organization that is an Opt-Out Chartered Organization, a contribution equivalent in form and substance to the Participating Chartered Organization Settlement Contribution.  No Chartered Organization shall be a Contributing Chartered Organization unless it agrees to provide the assignments and releases set forth in Sections 9 and 10.[6]

17. **Supplemental LC Contribution**.  Pursuant to the Plan, the Local Councils have agreed to contribute to the Settlement Trust, among other things, the Cash Contribution, and the Property Contribution, which together, shall not be less than $500 million as well as the DST Note, in the principal amount of $100 million, issued by the DST on or as soon as practicable after the Effective Date.  Based upon the letters of intent with respect to the Cash and Property Contributions received from individual Local Councils to date, the commitment of Local Councils is approximately $519 million, in aggregate.  The AHCLC anticipates that the actual aggregate amount that Local Councils will contribute to the Settlement Trust on the Effective Date will be in excess of $500 million but less than $519 million due to differences in property valuations and, in certain limited instances, the potential inability of a particular Local Council to meet its full commitment amount.  The total aggregate amount of the Cash Contribution and the Property Contribution that exceeds $500 million shall hereafter be referred to as the "LC Overage."  Notwithstanding anything to the contrary in this paragraph, the LC Overage shall not be less than $15 million.  The LC Overage will be contributed to the Settlement Trust on the Effective Date as part of securing the Chartered Organization treatment below.  The DST Note, a part of the Local Council contribution to the Settlement Trust, will be increased from $100 million to an amount sufficient to ensure that the aggregate amount of the Supplemental LC Contribution of $40 million is achieved (the "DST Note Increase").  In no circumstance will the DST Note Increase be more than $25 million (for an aggregate amount of $125 million) and, to the extent that the LC Overage is more than $15 million, the DST Note increase may be less than $25 million (though not less than $21 million).  The LC Overage and the DST Note Increase (together, the "Supplemental LC Contribution") should provide an aggregate $40 million in additional consideration paid to the Settlement Trust.  For the avoidance of doubt, the foregoing contributions are not conditions to releases provided in favor of the Settling Insurers set forth herein, nor will the failure to make such contribution affect any rights or obligations of the Settling Insurers, and the failure to make such contribution will only result in Other Chartered Organizations not receiving the benefits set forth in Section 16.

18. **Settlement Growth Payment**.  The BSA has agreed to pay to the Settlement Trust an annual variable payment, commencing the year after the BSA Settlement Trust Note is paid in full and the BSA's total outstanding debt under the JP Morgan facilities or their replacement and

---

[6] The Debtors, AHCLC, FCR and the Coalition will agree on a mechanism for the Youth Protection cooperation with Other Chartered Organizations.

the Foundation Loan is less than $225 million in aggregate, based on growth in membership (the "Settlement Growth Payment") up to a cap of $100 million (the "Settlement Growth Payment Cap"), as part of securing the Chartered Organization treatment provided herein. The BSA shall not be required to fund the Settlement Growth Payment upon the earlier of (a) 2036 or (b) the payment of the Settlement Growth Payment Cap. It is expected that at the time the BSA Settlement Trust Note is paid in full, the BSA's total outstanding debt under the JP Morgan facilities or their replacement and the Foundation Loan will be less than $225 million. The Local Councils will reimburse the BSA for 25% of the amount paid to the Settlement Trust under this section, with the amount to be assessed by the BSA to the Local Councils based on their share of membership growth. The Settlement Growth Payment will be calculated as (a) 50% of $72 per paid youth member in Scouts BSA or Cubs Scouts at each year-end in excess of 1,500,000 members and (b) 50% of $45 per paid adult volunteer in Scouts BSA or Cubs Scouts at each year-end in excess of 500,000 volunteers. Calculation of the Settlement Growth Payment will be performed based on year-end membership numbers with a report on the calculations provided by the BSA to the Settlement Trust within 60 days of year-end and payment made within 90 days of year-end. Based on a 5.5% annual growth rate of BSA youth members and adult volunteers, the above Settlement Growth Payment will result in an additional $100 million being contributed to the Settlement Trust by the end of 2036. For the avoidance of doubt, the foregoing contributions are not conditions to releases provided in favor of the Settling Insurers set forth herein, nor will the failure to make such contribution affect any rights or obligations of the Settling Insurers, and the failure to make such contribution will only result in Other Chartered Organizations not receiving the benefits set forth in Section 16.

19. **Finality**. Subject to the other terms of this Term Sheet, and so long as this Term Sheet and the Agreement remain in full force and effect and/or are not terminated, the Parties agree that (a) the Settlement Amount is the total amount Settling Insurers will be obligated to pay under the Settling Insurers' Policies, and (b) the Confirmation Order shall provide that on and after the Release Date and payment of the Settlement Amount (and subject to the limitations in Section 5 (as applicable to Post-Petition Policies and Non-Abuse Insurance Policies) and Section 6 (as applicable to Westchester)), the Settling Insurers shall be released from and shall not be obligated to make any additional payments to any Person (including, but not limited to, the BSA, Local Councils, any Chartered Organization and any entity actually or allegedly covered under insurance policies issued by the Settling Insurers) for Abuse Claims, including those relating to or arising out of the Settling Insurers' Policies and the other Claims and Causes of Action released hereunder, subject to the limitations in Section 5 (as applicable to Post-Petition Policies and Non-Abuse Insurance Policies) and Section 6 (as applicable to Westchester).[7]

20. **Judgment Reduction**. In the event that any other insurer obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from Settling Insurers as a result of a Cause of Action for contribution, subrogation, indemnification or other similar Cause of Action against Settling Insurers for Settling Insurers' alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation for any Abuse Claim, or for any Cause of Action released in this Agreement, the Trust shall voluntarily reduce its judgment or Cause of Action against, or settlement with, such other insurer(s) to the extent necessary to eliminate such contribution, subrogation, indemnification or other similar

---

[7] The Debtors, AHCLC, FCR, and Coalition have agreed to enter into a separate agreement which shall provide that any settlement with the Methodists and/or Catholics shall include mandatory fundraising efforts with a dollar for dollar reduction of the Settlement Growth Payment Cap and support Scouting and growth through 2036.

Cause of Action against Settling Insurers.  To ensure that such a reduction is accomplished, Settling Insurers shall be entitled to assert this paragraph as a defense to any action against them for any such portion of the judgment or Cause of Action and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect Settling Insurers from any liability for the judgment or Cause of Action.  To the extent any other insurer asserts a claim for contribution, subrogation, indemnification or other similar claim against the Settling Insurers, the Settling Insurers may assert any defense to such claim notwithstanding any of the releases contained herein.

21. **Findings and Orders**.  The Amended Plan and the Confirmation Order shall state that the Findings and Orders and Trust Distribution Procedures are not binding on the Settling Insurers to the extent that the Settlement Amount is released to the Trust, provided that the Settling Insurers may rely on all such Findings and Orders.  The Amended Plan and Confirmation Order shall further provide that the Settling Insurers' agreement to settle does not indicate the Settling Insurers' support for or acceptance of the Trust Distribution Procedures or any findings and orders made in connection with them in any proceeding, which procedures, findings and order shall not be applicable to the Settling Insurers.  Without limiting the generality of the foregoing, the findings and determinations set forth in Article IX.A.3.j, Article IX.A.3.p, Article IX.A.3.r, Article IX.A.3.s and Article IX.A.3.t of the Amended Plan shall not be binding on the Settling Insurers to the extent that the transactions contemplated in the Agreement, including the release of the Settlement Amount to the Trust, are fully consummated. The Settling Insurers' agreement herein not to object to entry of such findings and determinations in the Confirmation Order does not indicate Settling Insurers' support for such findings and determinations, and no party shall argue that the Settling Insurers agreed to or acquiesced in such findings and determinations in any proceeding. Rather, the Settling Insurers are designated as a Settling Insurance Company and Protected Party under the Amended Plan, and as a result, the Settling Insurers take no position on such findings and determinations or on the Trust Distribution Procedures.  The Confirmation Order and all other  orders issued by any appellate court that exercises jurisdiction over such orders, if any, shall approve the terms and provisions of this Term Sheet and the Agreement.  For the avoidance of doubt, nothing herein shall cause any Settling Insurer to be liable for any policy issued by or any obligation of any nature or kind owed by another Settling Insurer (including any Settling Insurers' Policy issued by such other Settling Insurer), person or entity other than itself.  Notwithstanding anything to the contrary herein, nothing will require the Settling Insurers to take any position that would impair their ability to pursue objections to any plan in the event that the Agreement is terminated under Sections 29 or 30.  Subject to the foregoing, the Settling Insurers and the Debtors will (i) take reasonable positions in court supporting the settlement provided herein and the Amended Plan provisions that effectuate the Term Sheet and the Agreement; (ii) take reasonable positions in court supporting approval of such terms through the Confirmation Order and (iii) will not assist any party in its opposition to the foregoing.

22. **Trust Distribution Procedures**.  Subject to modification in a manner not inconsistent with the Term Sheet and the Agreement by the Debtors, the Coalition, and the FCR, the Trust Distribution Procedures may be in the form attached to the Amended Plan, *provided that* Settling Insurers shall be included as a releasee in any form of release attached to the Trust Distribution Procedures to the broadest extent that BSA, any Local Council or any other Protected Parties are released, which release shall be consistent with this Term Sheet and the Agreement.  The Trust Distribution Procedures shall further provide that the Settlement Trustee shall require holders of Claims related to, arising from or in connection with Abuse Claims who receive payment from the Trust to release any Claim related to, arising from or in

connection with Abuse Claims against (a) Settling Insurers and (b) any insured or co-insured under the Settling Insurers' Policies or other policies issued by the Settling Insurers covering or allegedly covering Claims or Causes of Action for Abuse Claims, solely to the extent of and scope of any remaining coverage rights (if any) thereunder.  Settling Insurers shall not object to the Trust Distribution Procedures but may add a statement in the Amended Plan that Settling Insurers are Settling Insurance Companies and, as a result, take no position on the Trust Distribution Procedures.  Settling Insurers shall not object to the selection of the Settlement Trustee.  Settling Insurers shall not participate in or otherwise interfere with the administration of the Trust.

23. **Objections to Amended Plan for Settling Insurers**.  Settling Insurers shall not object to the Amended Plan,  the Solicitation Procedures, the Settlement Trust Agreement, the Trust Distribution Procedures, or the selection of the Settlement Trustee (and shall withdraw any pending objection) or any other document or instrument that comprises the Amended Plan, so long as Settling Insurers are included as a Protected Party in the Amended Plan and the Amended Plan is consistent with the terms of this Term Sheet and the Agreement.

24. **Voting**.  As long as the Amended Plan includes this Term Sheet and the Agreement as a condition to entry of the Confirmation Order and the Affirmation Order and the occurrence of the Effective Date, Settling Insurers agree to (a) timely vote their Indirect Abuse Claim and any other Claims held by them or their affiliates to accept the Amended Plan and not change or revoke their votes and (b) not "opt out" of the third-party releases contained in the Amended Plan, so long as Settling Insurers are included as a Protected Party in the Amended  Plan, and the Amended Plan is otherwise consistent with the terms of this Term Sheet and the Agreement. For the avoidance of doubt, the foregoing vote shall not affect any objection or other position of the Settling Insurers in the event of a termination under Sections 29 or 30 or the failure of any condition contained herein.

25. **Discovery**.  Upon the execution of the Term Sheet, the Parties shall (a) adjourn without date their pending discovery requests against and motions to compel discovery against each other, including the Settling Insurers' pending discovery requests and motions to compel directed at any holder of an Abuse Claim, representatives of such holders, funders, vendors utilized by representatives of such holders, BSA, the AHCLC, the Local Councils, the Coalition (including law firms and attorneys associated therewith), and the FCR, as applicable, and (b) upon execution of the Agreement such discovery, motions to compel and objections shall be withdrawn.  So long as the Agreement has not been terminated, the Parties shall not seek or direct any additional discovery or objections at each other and the Settling Insurers shall not assert objection(s) in the Chapter 11 Cases, or any proceedings related to the Chapter 11 Cases. Settling Insurers shall cooperate and comply with information requests from the BSA, the Coalition, and the FCR on policy impairment and historical claims handling to the extent such information is not protected from disclosure and is reasonably necessary in support of the confirmation of the Amended Plan and consistent with the Term Sheet and Agreement; *provided*, *however*, that if the results of this process do not resolve and satisfy said information requests, the BSA, the Coalition, or the FCR shall have the right to submit the dispute to Mediator Gallagher, and the Parties agree to be bound by the Mediator's decision regarding such dispute. The extension granted the Settling Insurers to file or join expert reports is preserved and stayed by execution of the Term Sheet.

26. **Public Statements**.  The Parties and State Court Counsel shall cooperate with each other to coordinate on timing and substance of public statements regarding settlement, including press

releases, court filings and in-court statements.  Settling Insurers shall make no statements about holders of Abuse Claims or any representative thereof; *provided*, *however*, that Settling Insurers may make statements to protect their rights in the Chapter 11 Cases, including statements in response to objections or statements by holders of Abuse Claims and their representatives concerning Settling Insurers.

27. **No Assignment**.  The Parties represent and warrant that they will not assign, transfer, or sell, any Cause of Action or Claim related to the Abuse Insurance Policies or in connection with the matters otherwise released against Settling Insurers and that they will not assist any other person in the establishment of a Claim against Settling Insurers relating to the Abuse Insurance Policies or the matters released.  Nothing in the foregoing will prohibit the Parties or any Protected Party from transferring and assigning to the Trust all rights under this Term Sheet or the Agreement, or from assisting the Trust in pursuing any Claim arising out of or under same against anyone other than the Settling Insurers.

28. **Governing Law**.  This Term Sheet and the Agreement shall be governed by Delaware law.

29. **Termination Event by the Debtors, the Coalition and the FCR**.  Subject to the provisions of Section 31, the Agreement shall contain a  termination event that shall permit the Debtors, the Coalition, or the FCR to terminate the Agreement if Class 8 (Direct Abuse Claims) (as currently constituted or as it may be reconstituted per order of the Bankruptcy Court) votes to not accept the Amended Plan under section 1126 of the Bankruptcy Code and as a result the Amended Plan is withdrawn.  Subject to the foregoing sentence and Section 30, pending entry of the Confirmation Order and the occurrence of the Release Date, the Debtors, the Coalition, and the FCR will not take any action inconsistent with this Term Sheet and, at all times, will (a) use their best efforts to secure prompt entry of the Confirmation Order consistent with this Term Sheet, including the provisions constituting the approval of all of the terms and conditions hereof, and the Agreement, and (b) defend this Term Sheet and the Agreement.

30. **Fiduciary Out by the Debtors and the FCR**.  Notwithstanding anything else in this Term Sheet or the Agreement to the contrary, no term or condition of this Term Sheet or the Agreement shall require BSA or the FCR to take or refrain from taking any action that it determines would be inconsistent with its fiduciary duties under applicable law, and further, in the event that either the FCR or the Debtors determine that in the proper exercise of their respective fiduciary duties under applicable law they cannot proceed with this Term Sheet or the Agreement, the Term Sheet or Agreement may be terminated (subject to the provisions of Section 31) at any time prior to the entry of a Final Order confirming the Amended Plan as to that party, *provided*, *however*, that the Debtors and the FCR each understands that the TCC is not a party to this Term Sheet and that the TCC and claimants represented by various plaintiff firms may object to the Agreement and the Debtors and the FCR acknowledge and represent that their entry into this Term Sheet and the Agreement is consistent with their fiduciary duties as of the effective date of the Term Sheet, *provided*, *further* that following the entry of the Confirmation Order by the Bankruptcy Court nothing herein shall exempt the Debtors or the FCR from the doctrines of finality, repose, or otherwise applicable doctrines of *res judicata*, collateral estoppel, limitations on appellate jurisdiction or applicable deadlines pursuant to the Bankruptcy Code, Bankruptcy Rules, court orders and local rules or any similar doctrine(s); *provided further* that if the FCR exercises its fiduciary right to terminate the Agreement, such

termination shall be with respect to the FCR only and not otherwise affect the Agreement or the other Parties' rights and obligations thereunder.

31. **Effect of Termination or Failure of Conditions to Occur**.  In the case of any termination described in Sections 29 or 30 above by the Debtors or any other situation where the Agreement does not proceed (including as a result of the failure of any condition thereto to occur or failure to obtain entry of the Confirmation Order), absent the consent of the Settling Insurers, the Settling Insurers shall be (i) afforded an opportunity to interpose all objections to any plan that does not afford them the protections and rights provided hereunder, notwithstanding any prior deadlines, law of the case or any determination made in the intervening period after execution of this Term Sheet (ii) afforded adequate additional time and relief from any deadline to prepare and present such objections including any expert reports and additional discovery and (iii) able to assert any and all positions in opposition to such plan and hearing schedule, none of which are waived or affected hereby.  For the avoidance of doubt, the approval of the Agreement and settlement provided herein shall be a condition to the entry of the Confirmation Order, entry of the Affirmation Order and the Effective Date of the Amended Plan, which condition may only be waived with the consent of each of the Parties.

32. **Effect of Reversal of Confirmation Order Following the Effective Date**.  In the event that the Confirmation Order is reversed or vacated on appeal following the Effective Date, such that the Release Date does not occur (a "Reversal"), the Parties and State Court Counsel agree that if the Initial Payment has been made, Settling Insurers shall be entitled to a credit equal to fifty percent (50%) of such payment to be applied in exchange for release of the Pre-Petition Century/Chubb Claims (as hereinafter defined) and the remaining fifty percent (50%) of such payment to be applied against any other liability Settling Insurers may have under or associated with any insurance policies issued to BSA or any Local Council (the "Credit"); *provided, however,* that any and all funds held in the Escrow Account (or, if there is a loss as a result of investment of the Escrowed Payments, then the funds remaining in the Escrow Account) shall be released from the Escrow Account to Settling Insurers promptly following the Reversal (or any exercise of the termination right described in Section 29 or Section 30 above or other condition permitting release of such funds provided herein).  The provisions of this Section 32 shall survive any Reversal, any exercise of any termination right described in Section 29 or Section 30 above, and any termination of the Agreement.  Nothing in this Section or elsewhere in this Term Sheet or the Agreement shall bar any of the Parties or State Court Counsel from arguing that any appeal from the Confirmation Order should be dismissed on grounds of statutory or equitable mootness or otherwise.

33. **Other Settlements**.  To the extent that the Debtors or any other Person formed to assume the Debtors' liability for Abuse Claims, including the Settlement Trust, has settled or hereafter settles Claims arising out of Claims alleging Abuse Claims with any other Insurance Company, Chartered Organization or other Person, the Debtors or other Person formed to assume the Debtors' liability for Abuse Claims and Claims alleging Abuse Claims, shall obtain a waiver of that other Insurance Company, Chartered Organization or other Person's Claims against the Settling Insurers based upon, arising out of or in any way attributable to such Claims and/or their settlement and they shall further provide the releases set forth in Section 9 (and the assignment and releases in Sections 9 and 10 in the case of a Chartered Organization).  Such

waiver may be accomplished by an assignment of such Claims to the Settlement Trust, whereupon such Claims will be released.

34. **State Court Counsel**.  Each State Court Counsel represents and warrants to the Parties that, as of the date hereof, it represents the number of holders of Direct Abuse Claims who filed timely Direct Abuse Claims in the Chapter 11 Cases that is listed next to its name on Schedule 1 hereto.

35. **Plan**.  The Debtors shall modify the Plan to be consistent with this Term Sheet and the Agreement.  The protections given to the Settling Insurers, and to their respective Affiliates and Representatives, as Protected Parties shall not be less than that afforded to any other Protected Parties under (i) the Amended Plan (other than the limited indemnity provided to the Local Councils under Article IV.M of the Amended Plan) or (ii) any other plan unless the Agreement has been validly terminated under Sections 29 or 30 prior to the filing of such plan subject to Section 31(i)-(iii) hereof.  The Amended Plan shall be subject to the inclusion of the Agreement as a condition to entry of the Confirmation Order and the occurrence of the Effective Date.  The inclusion of the Agreement in the Amended Plan shall not be waivable as a condition to entry of the Confirmation Order or the occurrence of the Effective Date absent the prior written consent of the Settling Insurers.

36. **Settlement of Pre-Petition Century/Chubb Claims**.  The Debtors currently assert certain Claims and Causes of Action against one or more of the Settling Insurers for payment of defense and indemnity costs allegedly owed as of the Petition Date (together with any and all Claims and Causes of Action that were or could have been asserted as of the Petition Date based upon the related or similar facts and circumstances, whether known or unknown, collectively, the "Pre-Petition Century/Chubb Claims").  Without limiting the generality and scope of the releases provided in the Term Sheet, the Amended Plan and the Agreement, the settlement provided herein shall constitute a full release of the Pre-Petition Century/Chubb Claims.  Upon the release of the Initial Payment, the Pre-Petition Century/Chubb Claims shall be irrevocably released against the Settling Insurers even in the case of a Reversal of the Confirmation Order.  The resolution of the Pre-Petition Century/Chubb Claims is a severable agreement in the case of a Reversal and will be approved by both the Confirmation Order and through a separate order (the "Pre-Petition Century/Chubb Claims Order"), which shall survive independently in the case of a Reversal affecting the Confirmation Order.

37. **Appeal**:  Upon the execution of the Agreement, the Settling Insurers and the Debtors shall (a) promptly thereafter jointly move to stay the appeal of the bar date order pending the Confirmation Order becoming a Final Order, which is captioned as follows: *Century Indemnity Company v. Boy Scouts of America and Delaware BSA, LLC*, Case No. 21-1792 (3d Cir.), on appeal to the United States Court of Appeals for the Third Circuit from the United States District Court for the District of Delaware, Case No. 20- 00774 and/or (b) to the extent that the court either declines to grant a stay or terminates a stay that is granted, the parties shall voluntarily dismiss the appeal but include in the stipulation of dismissal a binding agreement that the appeal is interlocutory.

38. **Definitions**:

"**Abuse Claims**" means a liquidated or unliquidated Claim against a Protected Party (including, the Settling Insurers) that is attributable to, arises from, is based upon, relates to, or results from, in whole or in part, directly, indirectly, or derivatively, alleged Scouting-related Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including but not limited to vicarious liability, alter ego, respondeat superior, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, breach of any other theory based upon or directly or indirectly related to any insurance relationship, the provision of insurance or the provision of insurance services to or by any Protected Parties or misrepresentation, concealment, or unfair practice, breach of fiduciary duty, public or private nuisance, gross negligence, or any other theory, including any theory based on or related to public policy or any act or failure to act, or failure to warn by a Protected Party or any other Person for whom any Protected Party is alleged to be responsible. Abuse Claims include any Future Abuse Claims, any Indirect Abuse Claims, and any Claim that is attributable to, arises from, is based upon, relates to, or results from, alleged Scouting-related Abuse regardless of whether, as of the Petition Date, such Claim was barred by any applicable statute of limitations; provided that no Claim alleging Abuse shall be an "Abuse Claim" against a Protected Party if such Claim is wholly unrelated to Scouting; provided, further however, that any Claim alleging Abuse involving the Debtors, Reorganized BSA, Non-Debtor Entities, Local Councils, and each of their Representatives, is necessarily Scouting-related and shall be considered an Abuse Claim.[8]

"**Affirmation Order**" shall have the meaning set forth in the Amended Plan and shall be in all respects, in form and substance acceptable to the Parties.

"**Century**" as used in this Term Sheet means: (a) Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America; (b) Century Indemnity Company as successor to CIGNA Specialty Insurance Company f/k/a California Union Insurance Company; (c) Insurance Company of North America; and (d) and each of their past, present and future direct or indirect parents, subsidiaries, affiliates and controlled entities, and each of their respective officers, directors, stockholders, members, partners, managers, employees, attorneys, agents, experts, consultants, predecessors, successors and assigns, each in their capacity as such; provided that the term "Century" shall not include the foregoing persons and entities in their capacities as contractual obligors under: (i) Non-Abuse Insurance Policies[9] (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from or in connection with Abuse Claims, any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions

---

[8]  The Parties will confer with TCJC and Hartford regarding the proposed revisions to the definition of Abuse Claim.
[9]  The Plan definition will be expanded to include all such policies (e.g., Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies)) for Local Councils and Chartered Organizations.

occurring prior to the Effective Date, including the Settling Insurers' performance of their obligations under such policies whether for defense, settlement of claims or otherwise and (ii) Post-Petition Policies, except for any Claims or Causes of Action related to, arising from or in connection with any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including the Settling Insurers' performance of their obligations under such policies whether for defense, settlement of claims or otherwise.

"**Chubb Companies**" as used in this Term Sheet means: (a) Westchester Fire Insurance Company; (b) Westchester Surplus Lines Insurance Company; (c) Industrial Insurance Company of Hawaii; (d) Chubb Custom Insurance Company; (e) Federal Insurance Company; (f) Pacific Indemnity Company; (g) Texas Pacific Indemnity Company; (h) U.S. Fire Insurance Company, to the extent policies were assumed by or novated to Westchester Fire Insurance Company; (i) International Insurance Company to the extent policies were assumed by or novated to Westchester Fire Insurance Company; (j) Industrial Indemnity Company; (k) Pacific Employers Insurance Company; (l) The North River Insurance Company; (m) Aetna Insurance Company; (n) American Foreign Insurance Association; (o) Chubb Atlantic Indemnity Ltd.; and (p) INA Insurance Company of Illinois; (q) and each of their past, present and future direct or indirect parents, subsidiaries, affiliates and controlled entities, and each of their respective officers, directors, stockholders, members, partners, managers, employees, attorneys, agents, experts, consultants, predecessors, successors and assigns, each in their capacity as such provided that the term "Chubb" shall not include the foregoing persons and entities in their capacities as contractual obligors under: (i) Non-Abuse Insurance Policies[10] (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from or in connection with Abuse Claims, any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including the Settling Insurers' performance of their obligations under such policies whether for defense, settlement of claims or otherwise and (ii) Post-Petition Policies, except for any Claims or Causes of Action related to, arising from or in connection with any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including the Settling Insurers' performance of their obligations under such policies whether for defense, settlement of claims or otherwise

"**Confirmation Order**" shall have the meaning set forth in the Amended Plan and be in form and substance acceptable to the Parties confirming and approving the Amended Plan including each and every term of the Agreement and the settlement provided herein.

"**Full Post-1975 Injunction**" means the channeling injunction applicable to Abuse Claims alleging first Abuse on or after January 1, 1976.

---

[10] The Plan definition will be expanded to include all such policies (e.g., Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies)) for Local Councils and Chartered Organizations.

"**Initial Payment Date**" as used in this Term Sheet shall mean the earliest date on which all of the following conditions precedent have occurred, provided, however, that any of the following conditions precedent may be waived pursuant to a writing signed by each Party:

1.    Each Party has executed the Agreement;
2.    Settling Insurers have received a fully executed Local Council Release on behalf of each Local Council;
3.    The Bankruptcy Court has entered the Confirmation Order which has been affirmed by the District Court through the Affirmation Order, both in form and substance acceptable to Settling Insurers, Debtors, Coalition, and FCR as it pertains to this Term Sheet and the Agreement, which shall serve as the order approving this Agreement and shall include all necessary and appropriate findings and conclusions in relation thereto;
4.    The Confirmation Order provides for a release and channeling injunction for the benefit of the Settling Insurers, the Local Councils, and the Contributing Chartered Organizations consistent with the Term Sheet and the Agreement;
6.    The BSA has provided written notice to Settling Insurers that the Effective Date has occurred; and
7.    The Confirmation Order is effective and not stayed or otherwise subject to an injunction.

"**Mixed Claim**" means an Abuse Claim that makes allegations of Abuse related to or arising from Scouting as well as Abuse that occurred prior to the Petition Date unrelated to or not arising from Scouting ("Non-Scouting Abuse").  A claim shall not be treated as a Mixed Claim unless and until Scouting Abuse allegations have been asserted in the proceeding through the Complaint, sworn discovery or testimony.

"**Post-Petition Policies**" means insurance policies issued by the Settling Insurers to the Debtors or the Local Councils and effective on or after the Petition Date covering Claims and Causes of Action first arising after the Petition Date.

"**Other Chartered Organizations**" shall mean all Chartered Organizations other than TCJC, United Methodist Entities, and Roman Catholic Entities.

"**Release Date**" shall mean the earliest date on which all of the following conditions precedent have occurred, provided however, that any of the following conditions precedent may be waived pursuant to a writing signed by each Party:

1.    Each Party has executed the Agreement;
2.    Settling Insurers have received a fully executed Local Council Release on behalf of each Local Council;
3.    The Bankruptcy Court has entered the Confirmation Order which has been affirmed by the District Court through the Affirmation Order, both in form and substance acceptable to Settling Insurers, Debtors, Coalition, and FCR as it pertains to this Term Sheet and the Agreement, which shall serve as the order approving this

Agreement and shall include all necessary and appropriate findings and conclusions in relation thereto;

4.  The Confirmation Order provides for a release and channeling injunction for the benefit of the Settling Insurers, the Local Councils, and the Contributing Chartered Organizations consistent with the Term Sheet and the Agreement;

6.  The BSA has provided written notice to Settling Insurers that the Effective Date has occurred; and

7.  The Confirmation Order is a Final Order.

"**Roman Catholic Entities**" shall mean each and every (i) Roman Catholic parish, school, diocese, archdiocese, association of religious or lay Persons in the United States or its territories that sponsored, promoted, hosted, was involved with, or provided any support in connection with Scouting activities in any way, including as a social service organization, ministry, camping ministry, or by the use of a camp facility, camp, retreat, or other facilities in connection with Scouting activities, regardless of whether any of the foregoing entities is or was a Chartered Organization at any time or whether such facilities were owned or leased by any of such entities or a third party; (ii) all entities listed or eligible to be listed in the Official Catholic Directory since January 1910, (iii) all Representatives of the foregoing, including their attorneys and the RCAHC. However, no Perpetrator is or shall be a Roman Catholic Entity.

"**Settling Insurer Policy Injunction**" means the channeling injunction applicable to Abuse Claims covered under any insurance policy issued by Settling Insurers.

"**TCJC**" shall mean The Church of Jesus Christ of Latter-day Saints, a Utah corporation, including any affiliates or personnel.

"**United Methodist Entities**" shall mean each and every (i) United Methodist local church, federated, or union church, including any Federated Church or Union Church that includes a historically United Methodist Church congregation, that sponsored, promoted, hosted, or provided any support in connection with Scouting activities, regardless of whether such local, union, or federated church is or was a Chartered Organization at any time; (ii) church currently federated or yoked, and which current federated or yoked church includes a current or former United Methodist Church congregation that sponsored, promoted, hosted or provided any support in connection with Scouting activities; (iii) other United Methodist related or affiliated organizations that sponsored, promoted, hosted, or provided any support in connection with Scouting activities, including any social service organization, ministry, camping ministry, camp facility, camp, retreat, or other facilities in the nature of a camp or retreat; (iv) any camp, retreat, or other facility in the nature of a camp or retreat that is not United Methodist related or affiliated, but otherwise promoted, hosted, or provided any support in connection with Scouting Activities for an entity described in (i), (ii) or (iii); (v) all organizations affiliated or related to (i) (ii), (iii) or (iv) including, but not limited to, the UMAHC, each district, annual conference, and jurisdictional conference of The United Methodist Church, the general, annual conference, district, local church agencies of The United Methodist Church, the Council of Bishops of The United Methodist Church, and the non-jural bodies commonly referred to as "The United Methodist Church,"

the "Judicial Council of The United Methodist Church," and the "General Conference of The United Methodist Church"; and (vi) all Representatives of the foregoing. However, no Perpetrator is or shall be a United Methodist Entity.

Settling Insurers' obligations under this Term Sheet remain subject to final executive approval to be obtained within three (3) business days of execution of this Term Sheet by the last date indicated in the signature blocks below. Failure to secure such approval renders this Term Sheet void.

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**                          **Century Indemnity Company**

By: _____              By: _____

Name: Roger C. Mosby                       Name: _____

Title: President and CEO                   Title: _____

Date: December 13, 2021                    Date: _____

**Westchester Fire Insurance Company**       **Federal Insurance Company**

By: _____              By: _____

Name: _____            Name: _____

Title: _____           Title: _____

Date: _____            Date: _____

**FUTURE CLAIMANTS REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

the "Judicial Council of The United Methodist Church," and the "General Conference of The United Methodist Church"; and (vi) all Representatives of the foregoing. However, no Perpetrator is or shall be a United Methodist Entity.

Settling Insurers' obligations under this Term Sheet remain subject to final executive approval to be obtained within three (3) business days of execution of this Term Sheet by the last date indicated in the signature blocks below. Failure to secure such approval renders this Term Sheet void.

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**                          **Century Indemnity Company**

By: _____      By: _____

Name: _____      Name: ___Robert M. Omrod_____

Title: _____      Title: ___President_____

Date: _____      Date: ___12/12/2021_____

**Westchester Fire Insurance Company**        **Federal Insurance Company**

By: _____      By: _____

Name: _____      Name: _____

Title: _____      Title: _____

Date: _____      Date: _____

**FUTURE CLAIMANTS REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

the "Judicial Council of The United Methodist Church," and the "General Conference of The United Methodist Church"; and (vi) all Representatives of the foregoing.  However, no Perpetrator is or shall be a United Methodist Entity.

Settling Insurers' obligations under this Term Sheet remain subject to final executive approval to be obtained within three (3) business days of execution of this Term Sheet by the last date indicated in the signature blocks below.  Failure to secure such approval renders this Term Sheet void.

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**                                **Century Indemnity Company**

By: _____        By: _____

Name: _____        Name: _____

Title: _____        Title: _____

Date: _____        Date: _____


**Westchester Fire Insurance Company**        **Federal Insurance Company**

By: _Megan C Watt_____        By: _Megan C Watt_____

Name: _Megan C. Watt_____        Name: _Megan C. Watt_____

Title: _EVP, NA, Complex Claims___        Title: _EVP, NA, Complex Claims___

Date: _12|12|21_____        Date: _12|12|21_____

**FUTURE CLAIMANTS REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

the "Judicial Council of The United Methodist Church," and the "General Conference of The United Methodist Church"; and (vi) all Representatives of the foregoing. However, no Perpetrator is or shall be a United Methodist Entity.

Settling Insurers' obligations under this Term Sheet remain subject to final executive approval to be obtained within three (3) business days of execution of this Term Sheet by the last date indicated in the signature blocks below. Failure to secure such approval renders this Term Sheet void.

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**                         **Century Indemnity Company**

By: _____         By: _____

Name: _____         Name: _____

Title: _____         Title: _____

Date: _____         Date: _____


**Westchester Fire Insurance Company**        **Federal Insurance Company**

By: _____         By: _____

Name: _____         Name: _____

Title: _____         Title: _____

Date: _____         Date: _____

**FUTURE CLAIMANTS REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _12/12/21_

**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____
        David J. Molton

Dated: December 13, 2021

**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _Richard Mason_, as chair

Dated: _12/12/21_

## STATE COURT COUNSEL

**Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C.**

By: /s/ _Kennett M. Rothwala_

Name: _Kenneth M. Rothwailr_

Title: _Co-founder Partner_

Date: _12/12/2021_

**Slater Slater & Schulman LLP**

By: /s/ _____

Name: _____

Title: _____

Date: _____

**Andrews & Thornton**

By: /s/ _____

Name: _____

Title: _____

Date: _____

By: /s/ _____

Name: _____

Title: _____

Date: _____

**ASK LLP**

By: /s/ _____

Name: _____

Title: _____

Date: _____

By: /s/ _____

Name: _____

Title: _____

Date: _____

## STATE COURT COUNSEL

**Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C.**

By:  /s/ _____

Name: _____

Title: _____

Date: _____
_____

**Slater Slater & Schulman LLP**

By:  /s/ _Adam P Slater_

Name: _Adam P Slater_

Title: _Partner_

Date: _12/12/21_

**Andrews & Thornton**

By:  /s/ _____

Name: _____

Title: _____

Date: _____

By:  /s/ _____

Name: _____

Title: _____

Date: _____

**ASK LLP**

By:  /s/ _____

Name: _____

Title: _____

Date: _____

By:  /s/ _____

Name: _____

Title: _____

Date: _____

## STATE COURT COUNSEL

**Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C.**

By:     _/s/_____

Name:  _____

Title:  _____

Date:  _____

_____

**Slater Slater & Schulman LLP**

By:     _/s/_____

Name:  _____

Title:  _____

Date:  _____

_____

**Andrews & Thornton**

By:     _/s/_____

Name:  Anne Andrews

Title:  _____

Date:  _____


By:     _/s/_____

Name:  _____

Title:  _____

Date:  _____

**ASK LLP**

By:     _/s/_____

Name:  _____

Title:  _____

Date:  _____


By:     _/s/_____

Name:  _____

Title:  _____

Date:  _____

## STATE COURT COUNSEL

**Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C.**

By: _/s/_

Name: _____

Title: _____

Date: _____
_____

**Slater Slater & Schulman LLP**

By: _/s/_

Name: _____

Title: _____

Date: _____
_____

**Andrews & Thornton**

By: _/s/_

Name: _____

Title: _____

Date: _____

**ASK LLP**

By: _/s/_

Name: _____Joseph L. Steinfeld, Jr._____

Title: _____Managing Partner_____

Date: _____December 13, 2021_____

By: _/s/_

Name: _____

Title: _____

Date: _____

By: _/s/_

Name: _____

Title: _____

Date: _____

**Schedule 1**

**State Court Counsel**

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| Slater Slater Schulman LLP | Attn: Adam P. Slater (aslater@sssfirm.com) 488 Madison Avenue 20th Floor New York, NY 10022 | 14170 |
| ASK LLP | Attn: Joseph Steinfeld (jsteinfeld@askllp.com) 151 West 46th Street, 4th Floor New York, NY 10036 | 3277 |
| Andrews & Thornton, AAL, ALC | Andrews & Thornton Attn: Anne Andrews (aa@andrewsthornton.com) 4701 Von Karman Ave., Suite 300 Newport Beach, CA 92660 | 3009 |
| Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. | Attn: Stewart J. Eisenberg (stewart@erlegal.com) 1634 Spruce Street Philadelphia, PA 19103 | 16869 |
| Junell & Associates PLLC | Attn: Deborah Levy (dlevy@junell-law.com) 3737 Buffalo Speedway, Ste. 1850 Houston, TX 77098 | 2918 |
| Reich & Binstock LLP | Attn: Dennis Reich (dreich@reichandbinstock.com) 4265 San Felipe St. #1000 Houston, TX 77027 | 336 |
| Krause & Kinsman Law Firm | Attn: Adam W. Krause (adam@krauseandkinsman.com) 4717 Grand Avenue #300 Kansas City, MO 64112 | 5981 |
| Bailey Cowan Heckaman PLLC | Attn: Aaron Heckaman (aheckaman@bchlaw.com) 5555 San Felipe St., Ste. 900 Houston, TX 77056 | 1026 |

| FIRM | NOTICE ADDRESS | CLAIMS |
|------|----------------|--------|
| Jason J. Joy & Associates, PLLC | Attn: Jason Joy<br>(jason@jasonjoylaw.com)<br>909 Texas St., Ste. 1801<br>Houston, TX 770022 | 690 |
| Motley Rice LLC | Attn: Daniel Lapinski<br>(dlapinski@motleyrice.com)<br>210 Lake Drive East, Suite 101<br>Cherry Hill, NJ 08002 | 343 |
| Weller Green Toups & Terrell LLP | Attn: Mitchell Toups<br>(matoups@wgttlaw.com)<br>2615 Calder Ave. #400<br>Beaumont, TX 77702 | 974 |
| Colter Legal PLLC | Attn: John Harnishfeger<br>(john.harnishfeger@colterlegal.com)<br>1717 K St. NW, Suite 900<br>Washington D.C. 20006 | 162 |
| Christina Pendleton & Associates, PLLC | Attn: Staesha Rath<br>(sr@cpenlaw.com)<br>1506 Staples Mill Rd., Suite 101<br>Richmond, VA 23230 | 309 |
| Forman Law Offices, P.A. | Attn: Theodore Forman<br>(ted@formanlawoffices.com)<br>238 NE 1st Ave.<br>Delray Beach, FL 33444 | 125 |
| Danziger & De Llano LLP | Attn: Rod de Llano<br>(rod@dandell.com)<br>440 Louisiana St., Suite 1212<br>Houston, TX 77002 | 1707 |
| Swenson & Shelley | Attn: Kevin Swenson<br>(kevin@swensonshelley.com)<br>107 South 1470 East, Ste. 201<br>St. George, UT 84790 | 175 |
| Cohen Hirsch LP (formerly Brooke F. Cohen Law, Hirsch Law Firm) | Attn: Brooke F. Cohen<br>(brookefcohenlaw@gmail.com)<br>Attn: Andrea Hirsch<br>(andrea@thehirschlawfirm.com)<br>4318 Glenwick Lane<br>Dallas, TX 75205 | 64 |

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| Damon J. Baldone PLC | Attn: Damon J. Baldone (damon@baldonelaw.com) 162 New Orleans Blvd. Houma, LA 70364 | 471 |
| Cutter Law, P.C. | Attn: Brooks Cutter (bcutter@cutterlaw.com) 4179 Piedmont Ave., 3rd Fl. Oakland, CA 94611 | 358 |
| Linville Johnson & Pahlke Law Group | Attn: Robert Pahlke (rgp@pahlkelawgroup.com) 2425 Circle Dr., Ste. 200 Scottsbluff, NE 69361 | 71 |
| Porter & Malouf P.A. | Attn: Timothy Porter (tporter@portermalouf.com) 825 Ridgewood Rd. Ridgeland, MS 39157 | 86 |
| The Moody Law Firm | Attn: Will Moody Jr. (will@moodyrrlaw.com) 500 Crawford St., Ste. 200 Portsmouth, VA 23704 | 677 |
| Levin Papantonio Thomas Mitchell Rafferty & Procter P.A. | Attn: Cameron Stephenson (cstephenson@levinlaw.com) 316 South Baylen St. Pensacola, FL 32502 | 44 |
| Marc J Bern & Partners LLP | Attn: Joseph Cappelli (jcappelli@bernllp.com) 60 East 42nd St., Ste. 950 New York, NY 10165 | 5893 |

64158222 v30-WorkSiteUS-036293/0001