**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC.[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

**AFFIDAVIT OF SERVICE OF PUBLICATION**

PLEASE TAKE NOTICE that the undersigned certifies that the following document was published in the following publications on the date provided: Notice of (I) Deadline for Casting Votes to Accept or Reject Proposed Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC, (II) Hearing to consider Confirmation of Plan, and (III) Related Matters[2].

| Publication | Date | Exhibit |
|---|---|---|
| USA Today | October 8, 2021 | B |
| The New York Times | October 8, 2021 | C |
| The Wall Street Journal | October 8, 2021 | D |
| Prison Legal News | November 15, 2021 | E |

/s/ Darleen Sahagun____
Darleen Sahagun
Omni Agent Solutions
5955 DeSoto Avenue, Suite 100
Woodland Hills, California 91367
(818) 906-8300
*Claims, Noticing, and Administrative Agent for the Debtor*

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] A copy of the Notice is attached hereto as **Exhibit A**.

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date: January 24, 2022, at 10:00 a.m. (ET)**<br>**Objection Deadline: January 7, 2022 at 4:00 p.m. (ET)** |

**NOTICE OF (I) DEADLINE FOR CASTING VOTES TO ACCEPT OR REJECT PROPOSED MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, (II) HEARING TO CONSIDER CONFIRMATION OF PLAN, AND (III) RELATED MATTERS**

**PLEASE TAKE NOTICE THAT** on September 30, 2021, the above-captioned debtors and debtors-in-possession (together, the "Debtors") filed:

- the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 6443] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan");[2] and

- the *Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 6445] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").

The Plan contains releases of the Debtors and certain third parties and related injunction provisions. These provisions could release and prohibit holders of Abuse Claims from filing lawsuits and asserting such claims against the BSA and certain non-debtor third parties, including Local Councils, Contributing Chartered Organizations, including TCJC, Settling Insurance Companies, including Hartford, and Participating Chartered Organizations, solely with respect to Post-1975 Chartered Organization Abuse Claims. Chartered Organizations are organizations that sponsored a Scouting unit, such as a troop or pack. The Plan provides a mechanism by which Abuse Claims against the BSA and certain-debtor third parties, including the Local Councils, Contributing Chartered Organizations, including TCJC, Settling Insurance Companies, including

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Solicitation Procedures (as defined below), as applicable.

Hartford, and Participating Chartered Organizations, solely with respect to Post-1975 Chartered Organization Abuse Claims, will be channeled to a trust established pursuant to section 105(a) of the Bankruptcy Code.

Each Chartered Organization will automatically be deemed to be a Participating Chartered Organization under the Plan unless it (1) submits the opt out election form on or before the Plan Objection Deadline, (2) objects to confirmation of the Plan in accordance with the *Notice of Hearing to Consider Confirmation of Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, attached as Exhibit 3 to the Solicitation Procedures Order and available at https://omniagentsolutions.com/BSA on or before the Plan Objection Deadline, or (3) is a debtor in bankruptcy as of the date of confirmation of the Plan. Participating Chartered Organizations shall receive certain limited protections under the Channeling Injunction, including the channeling of all Abuse Claims against such Participating Chartered Organizations that relate to Abuse alleged to have first occurred on or after January 1, 1976, in exchange for contribution to the Settlement Trust of Participating Chartered Organizations' rights under Abuse Insurance Policies issued on or after January 1, 1976.

Confirmation of the Plan is supported by the Debtors, the Future Claimants' Representative, the Creditors' Committee, the Coalition, and the Ad Hoc Committee of Local Councils. You should carefully review the Plan and the applicable release, injunction, and related provisions at https://omniagentsolutions.com/BSA.

**PLEASE TAKE FURTHER NOTICE THAT:**

1. On September 30, 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. 6438] (the "Solicitation Procedures Order") approving the Disclosure Statement. The Solicitation Procedures Order, among other things, authorizes the Debtors to solicit votes to accept or reject the Plan and establishes procedures related thereto (the "Solicitation Procedures").

2. The Bankruptcy Court has scheduled a hearing to consider whether to confirm the Plan beginning on **January 24, 2022 at 10:00 a.m. (Eastern Time)** (the "Confirmation Hearing"), which shall continue to the extent necessary on such dates as the Bankruptcy Court may designate. The Confirmation Hearing will be held before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, at the Bankruptcy Court, located at 824 North Market Street, Sixth Floor, Courtroom No. 2, Wilmington, Delaware 19801.

3. Pursuant to the Solicitation Procedures Order, the Bankruptcy Court approved the Solicitation Procedures, which are attached to the Solicitation Procedures Order as Exhibit 1. Holders of Claims in Class 3A (2010 Credit Facility Claims), Class 3B (2019 RCF Claims), Class 4A (2010 Bond Claims), Class 4B (2012 Bond Claims), Class 5 (Convenience Claims), Class 6 (General Unsecured Claims), Class 7 (Non-Abuse Litigation Claims), Class 8 (Direct Abuse Claims), and Class 9 (Indirect Abuse Claims) (collectively, the "Voting Classes") are entitled to receive a ballot for casting a vote on the Plan (a "Ballot"). Holders of Claims and Interests in all other Classes under the Plan are presumed to accept or are deemed to reject the Plan. For a vote to accept or reject the Plan to be counted, a Ballot must be completed and returned in accordance

with the instructions provided on the **Ballot so that it is received by December 14, 2021 at 4:00 p.m. (Eastern Time)** (the "Voting Deadline").

4.      Pursuant to the Plan, holders of Claims in the Voting Classes are entitled to vote on account of their respective Claims.  If you have not received a Ballot and are entitled to vote on the Plan, you may request a Ballot and voting instructions from Omni Agent Solutions (the Solicitation Agent"), by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA, and submit your Ballot as set forth above so that it is received by the Voting Deadline.

5.      Pursuant to the Solicitation Procedures, all Direct and Indirect Abuse Claims in Class 8 and Class 9 of the Plan will be temporarily allowed in the amount of $1.00 in the aggregate per claimant or as otherwise ordered by the Bankruptcy Court, solely for purposes of voting to accept or reject the Plan and not for any other purpose.  If you have filed a Proof of Claim that is subject to an objection other than a "reclassify" or "reduce and allow" objection that is filed with the Bankruptcy Court on or before the Solicitation Date (a "Disputed Claim") and seek to challenge the disallowance or estimation of your Disputed Claim for voting purposes, you must file with the Bankruptcy Court a motion for an order, pursuant to Bankruptcy Rule 3018(a), temporarily allowing such claim for purposes of voting to accept or reject the Plan (a "Rule 3018(a) Motion").  Any Rule 3018(a) Motion must be filed with the Bankruptcy Court and served on the Debtors on or before **November 1, 2021**.  If a holder of a Disputed Claim files a timely Rule 3018(a) Motion, such holder's Ballot shall not be counted unless a Resolution Event occurs with respect to such Disputed Claim prior to **December 14, 2021** or as otherwise ordered by the Bankruptcy Court.

6.      **The Plan proposes certain releases and injunctions in furtherance of the Plan. The Plan proposes a Channeling Injunction that permanently channels all Abuse Claims against the Debtors and the Protected Parties and Limited Protected Parties to a Settlement Trust established pursuant to section 105(a) of the Bankruptcy Code.  In addition, the Plan proposes an injunction that permanently enjoins the pursuit of any claim against or interest in the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property to the extent such claim or interest has been discharged, released, waived, settled, or deemed satisfied in accordance with the Plan (other than the enforcement of any right pursuant to the Plan).  For the specific terms and conditions of all the releases and injunctions provided for in the Plan, and the precise scope of the Claims and Demands to be channeled, please refer to the specific terms of the Plan, which can be obtained as described below.**

7.      If the Plan is approved by the Bankruptcy Court, all current and future holders of Abuse Claims against the Debtors can request and receive money only from the Settlement Trust. You should read the Plan and Disclosure Statement carefully for details about how the Plan, if approved, will affect your rights.

8.      The Bankruptcy Court has issued the Solicitation Procedures Order describing how to vote on the Plan, and the Disclosure Statement contains information that will help you decide how to vote.  Your legal rights will be affected if the Plan is approved.

9. Under the Solicitation Procedures approved by the Bankruptcy Court, attorneys for holders of Direct Abuse Claims may vote on the Plan on behalf of their clients, if authorized by each client. If you are unsure whether your attorney is authorized to vote on your behalf, please contact your attorney.

10. If you would like to object to the Plan, you may do so by filing your objection no later than **January 7, 2022 at 4:00 p.m. (Eastern Time)** (the "Plan Objection Deadline"). Any objections or responses to confirmation of the Plan, must: (a) be in writing; (b) state the name and address of the objecting party and the nature and amount of the Claim of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (d) be filed with the Bankruptcy Court, 824 North Market Street, Third Floor, Wilmington, Delaware 19801 together with proof of service **on or before the Plan Objection Deadline**, and served so as to be actually received by the parties listed in the Confirmation Hearing Notice (the "Notice Parties") on or before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email to the Notice Parties.

**OBJECTIONS NOT TIMELY FILED AND SERVED STRICTLY AS PROVIDED HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE.**

If you would like to review the Plan, the Disclosure Statement, the Solicitation Procedures Order, or other documents related to the Plan free of charge, you may obtain these documents from the Solicitation Agent by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA. You may also access from these materials for a fee via PACER at http://www.deb.uscourts.gov/.

Dated: __________, 2021

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: jessica.lauria@whitecase.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: mandolina@whitecase.com
mlinder@whitecase.com
laura.baccash@whitecase.com
blair.warner@whitecase.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Email: dabbott@morrisnichols.com
aremming@morrisnichols.com
ptopper@morrisnichols.com

*Attorneys for the Debtors and Debtors in Possession*

# EXHIBIT B



**VERIFICATION OF PUBLICATION**

**COMMONWEALTH OF VIRGINIA**
**COUNTY OF FAIRFAX**

---

Being duly sworn, Vanessa Salvo says that she is the principal clerk of USA TODAY, and is duly authorized by USA TODAY to make this affidavit, and is fully acquainted with the facts stated herein: on **Friday, October 8, 2021**, the following legal advertisement – **BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC**– was published in the national edition of **USA TODAY.**

Vanessa Salvo
Principal Clerk of USA TODAY
October 8, 2021

# Canada will require proof of vaccination

Bailey Schulz
USA TODAY

Starting Oct. 30, the Canadian government will require all air travelers and passengers on interprovincial trains to be vaccinated against COVID-19.

The new policy, first announced in August, will affect all commercial air travelers, passengers on trains between provinces and cruise ship passengers. The government is also requiring employers in the federally regulated air, rail, and marine transportation sectors to establish vaccine mandates by Oct. 30.

The vaccine requirement does not apply to travelers younger than 12. A short transition period will allow travelers who are in the process of getting vaccinated to board if they can show a molecular test within 72 hours of travel, but only through Nov. 30.

"If you haven't gotten your shots yet but want to travel this winter, let's be clear. There will only be a few extremely narrow exceptions like a valid medical condition," Prime Minister Justin Trudeau said in a Wednesday news conference. "For the vast vast majority of people, the rules are very simple to travel: You've got to be vaccinated."

Trudeau said the new travel measures will be "some of the strongest in the world."

The country also requires most foreign nationals to be fully vaccinated to enter for nonessential purposes.

Cars with U.S. license plates enter Canada at the Stanstead, Quebec, border crossing, as seen from Derby Line, Vt., on Aug. 9. WILSON RING/AP

"When it comes to keeping you and your family safe, when it comes to avoiding lockdowns for everyone, this is no time for half measures," he said.

Currently, air travelers entering Canada are required to show proof of negative COVID-19 PCR test results taken within 72 hours of their scheduled departure. Unvaccinated air travelers must take another COVID-19 test upon arrival to Canada and toward the end of a mandated 14-day quarantine upon arrival.

The additional measures are meant to encourage more people to get vaccinated. As of Wednesday, more than 72% of Canada's population was fully vaccinated according to data from Johns Hopkins University and Medicine.

The Centers for Disease Control and Prevention and U.S. State Department each downgraded their travel advisories for Canada in August, but the U.S. border is set to remain closed to Canadian tourists through at least Oct. 21.

Air Canada, Canada's largest domestic and international carrier, released a statement in support of the new measures in August, announcing that it would work with the government and its unions to implement the new policy.

"Although Air Canada awaits further details about today's announcement on mandatory vaccinations, it is a welcome step forward in the evolving measures to protect the health and safety of airline employees, customers and all Canadians," the statement reads.

The United States does not require vaccinations for domestic flights, and it's unclear if that will change. When asked if the U.S. would follow Canada's footsteps and implement harsher vaccine mandates for air travel, White House COVID-19 Response Coordinator Jeff Zients said Wednesday that the government was "not taking anything off the table."

## Who is affected by Canada's vaccine mandate?

The new travel policy applies to:

- Passengers on domestic, transborder or international flights departing from Canadian airports.
- Passengers on VIA Rail and Rocky Mountaineer trains.
- Passengers on nonessential passenger vessels, such as cruise ships, on voyages at least 24 hours long.

## What happens if travelers don't comply?

Travelers who falsify information or fail to comply will face heavy fines.

Air travel passengers or employees can be fined up to $5,000 per violation, and employees or travelers on cruise ships can be fined up to $250,000 per violation, per day for failing to provide proof of vaccination.

## How can travelers show proof of vaccination?

The Canadian government is developing a pan-Canadian proof of vaccination for international travel. The document will be available in a digital format and should make showing proof of vaccination "easy and quick" for travelers, according to the Canadian government.

"Vaccination is one of the most effective ways to fight COVID-19 and the Government of Canada will continue to take action to get as many Canadians vaccinated as possible," the Canadian Government's website reads.

# MARKETPLACE TODAY

To view more Classified listings, visit: classifieds.usatoday.com

For advertising information: 1.800.397.0070 www.russelljohns.com/usat

## NOTICES

## LEGAL NOTICES

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** **ABC CARPET CO., INC., *et al.*, Debtors.[1]** | **Chapter 11** **Case No. 21-11591** **(Jointly Administered)** |

**NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

The above captioned debtors and debtors in possession (collectively, the "**Debtors**"), filed with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") a motion (ECF No. 18) (the "**Motion**") for the entry of (i) an order (the "**Bidding Procedures Order**")[2] (a) approving bidding procedures in connection with the sale or disposition of substantially all of the Debtors' assets (the "**Assets**"); (b) approving Stalking Horse Bid Protections for the Stalking Horse Bidder (as hereinafter defined); (c) scheduling an auction (the "**Auction**") for the Assets and a hearing (the "**Sale Hearing**") to consider approval of a proposed sale; (d) approving the form and manner of notice of sale of the Assets, the Auction, and the Sale Hearing; (e) approving the form and manner of notice to each non-Debtor counterparty (each, a "**Counterparty**") to executory contracts and unexpired leases (collectively, the "**Contracts and Leases**") regarding the Debtors' potential assumption and assignment of the Contracts and Leases and of the Debtors' calculation of the amount necessary to cure all monetary defaults thereunder (collectively, the "**Cure Costs**"); (f) approving procedures for the assumption and assignment of Contracts and Leases (the "**Assumption and Assignment Procedures**"); and (g) granting related relief; and (ii) an order (the "**Sale Order**") (a) authorizing the sale of the Assets free and clear of all liens, claims, interests, and encumbrances; (b) authorizing the assumption and assignment of proposed assumed Contracts and Leases (collectively, the "**Proposed Assumed Contracts**"); and (c) granting related relief.

On October 1, 2021, the Bankruptcy Court entered the Bidding Procedures Order (ECF No. 120), approving certain of the relief requested in the Motion.

**Stalking Horse Bid.** A binding stalking horse bid (the "**Stalking Horse Bid**") has been submitted by 888 Capital Partners, LLC (the "**Stalking Horse Bidder**"). The Stalking Horse Bidder has executed an asset purchase agreement (the "**Stalking Horse Agreement**")[3] for the purchase of the Debtors' Assets. The Stalking Horse Bid is subject to higher or otherwise better offers submitted in accordance with the terms and provisions of the Bidding Procedures.

The Debtors are seeking to sell substantially all of their Assets, including, among other things, accounts receivable, inventory, intellectual property, prepaid expenses, furniture, fixtures, and equipment, rights, claims, causes of action, including avoidance actions, that may be asserted (excluding any of Debtors' rights, defenses and objections to claims in respect of claims administration in the Bankruptcy Case), and sales orders and other commitments to purchasers of goods, services or products produced or sold by the Debtors.

A party may submit a bid for all or a portion of the Assets in accordance with the terms and provisions of the Bidding Procedures.

**IMPORTANT DATES AND DEADLINES**

***Auction***. An Auction for the Assets has been scheduled for **October 22, 2021 at 10:00 a.m. (prevailing Eastern Time)**, and, subject to cancellation, will be conducted, at the Debtors' discretion, either virtually or at the offices of Greenberg Traurig, LLP, 200 Park Avenue, New York, NY 10166. The Debtors reserve the right to adjourn or continue the Auction to a later date.

***Sale Objection Deadlines***. Objections to a proposed Sale, including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code and/or entry of a Sale Order, must be (i) filed in accordance with the Bidding Procedures Order, (ii) filed with the Bankruptcy Court, and (iii) served on the Objection Notice Parties (as identified and defined in the Bidding Procedures) by no later than (x) **October 14, 2021 at 4:00 p.m. (prevailing Eastern Time)**, provided, however, that the Creditors' Committee shall have until **October 18, 2021 at 4:00 p.m. (prevailing Eastern Time)**, to object with respect to the proposed Sale to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement, or (y) **October 25, 2021 at 4:00 p.m. (prevailing Eastern Time)**, with respect to the Sale to a Successful Bidder (other than the Stalking Horse Bidder pursuant to the Stalking Horse Agreement) or terms changed in the Stalking Horse Agreement, following an Auction.

***Sale Hearing*.** The Sale Hearing shall be held before the Honorable David S. Jones, United States Bankruptcy Judge, at the Bankruptcy Court on **October 27, 2021**.

**Additional Information.** Any party interested in submitting a bid for the Assets should contact the Debtors' advisor, B. Riley Securities, Inc., 299 Park Avenue, New York, NY 10171 (Attn: Perry Mandarino (pmandarino@brileyfin.com) and Pamela Samuels (psamuels@brileyfin.com).

Copies of the Motion, the Bidding Procedures Order, the Bidding Procedures, and the Stalking Horse Agreement may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent and administrative advisor, Bankruptcy Management Solutions, Inc. d/b/a Stretto ("**Stretto**"), located at https://cases.stretto.com/abchomeandcarpet.

**Reservation of Rights.** The Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, modify the Bidding Procedures; waive terms and conditions set forth therein; extend the deadlines set forth therein; announce at any Auction held modified or additional procedures for conducting the Auction; and provide reasonable accommodations to the Stalking Horse Bidder with respect to such terms, conditions, and deadlines of the bidding and auction process to promote further bids by such bidder. **Except as provided in the Stalking Horse Agreement, nothing shall obligate the Debtors to consummate or pursue any transaction with respect to any Asset with any bidder**.

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER BY THE APPLICABLE SALE OBJECTION DEADLINE SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING ANY OBJECTION AS TO APPLICABLE ASPECTS OF THE MOTION, SALE ORDER, PROPOSED SALE TRANSACTION, OR THE DEBTORS' CONSUMMATION OF THE STALKING HORSE AGREEMENT OR ANY OTHER ASSET PURCHASE AGREEMENT EXECUTED BY THE DEBTORS AND SUCCESSFUL BIDDER AT THE AUCTION.**

Dated: October 8, 2021

[1] The Debtors in these chapter 11 cases (these "**Chapter 11 Cases**"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are ABC Carpet Co., Inc. (6537), ABC Home Furnishings, Inc. (6915), and ABC Oriental Carpets, Inc. (3679). The Debtors' principal place of business is 888 Broadway, New York, NY 10003.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order.

[3] The Stalking Horse Agreement is attached as Exhibit 4 to the Bidding Procedures Order.

ONE CALL DOES IT ALL!

Call Today! (800) 397-0070

Your Ad in Print, Online Marketplace, & Internet Banners Too!

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

*Caption in Compliance with D.N.J. LBR 9004-1(b)*
Obermayer Rebmann Maxwell & Hippel LLP
Edmond M. George, Esquire
Michael D. Vagnoni, Esquire (pro hac vice)
Turner Falk, Esquire
1120 Route 73, Suite 420
Mount Laurel, NJ 08054-5108
Telephone: (856) 795-3300
Facsimile: (856) 482-0504
E-mail: edmond.george@obermayer.com
michael.vagnoni@obermayer.com
turner.falk@obermayer.com
Proposed Counsel to the Debtor and Debtor in Possession

| | |
|---|---|
| In re: ALUMINUM SHAPES, LLC, Debtor. | Chapter 11 Case No. 21-16520 (JNP) |

**NOTICE OF AUCTION AND SALE HEARING PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. On August 15, 2021, the above-captioned Debtor and debtor in possession (the "**Debtor**"), filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**").

2. On September 14, 2021, in connection with the proposed sale (the "**Sale**") of the Debtor's Business or certain assets (the "**Assets**") of the Debtor at an auction for the Assets (the "**Auction**"), the Debtor filed a motion (the "Motion"), seeking, among other things, (i) entry of an order (the "**Bidding Procedures Order**")[1] approving the bidding procedures (the "**Bidding Procedures**") governing the Sale; (ii) establishing procedures for the assignment and assumption of executory contracts and unexpired leases (the "**Assumption and Assignment Procedures**"); and (iii) granting related relief [Docket No.94].

3. On September 30, 2021, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. 122]. Pursuant to the Bidding Procedures Order, if two or more Qualified Bids are received before the Bid Deadline, the Debtor will conduct the Auction to determine the highest or otherwise best Qualified Bid, beginning on **October 25, 2021 10:00 a.m. (EST)** at the offices of Obermayer Rebmann Maxwell & Hippel LLP, 1500 Market Street, Suite 3400, Philadelphia, PA 19102 or such other place and time as the Debtor shall notify all Qualified Bidders that have submitted Qualified Bids and any official committee appointed in the Debtor's Chapter 11 case and their counsel. Only the Debtor (and its professionals and advisors), the Consultation Parties, and parties that have submitted a Qualified Bid, as set forth in the Bidding Procedures Order, **by no later than October 22, 2021 at 4:00 p.m. (EST)** (the "**Bid Deadline**") may participate at the Auction. Any party that wishes to take part in this process and submit a bid for the Debtor's Assets must submit their competing bid prior to the Bid Deadline and in accordance with the Bidding Procedures.

4. A hearing to approve the Sale (the "**Sale Hearing**") will be held on **October 28, 2021 at 1:00 p.m. (EST)** before the Honorable Jerrold N. Poslusny, Jr., U.S.B.J. at the United States Bankruptcy Court for the District of New Jersey, Mitchell H. Cohen Courthouse, 400 Cooper Street, Camden, New Jersey 08101, Courtroom 4C, or at such time thereafter as counsel may be heard, unless otherwise continued by the Debtor pursuant to the terms of the Bidding Procedures.

5. Objections, if any, to the Motion and the Sale of the Assets to a Successful Bidder, including objections related solely to the identity of the Successful Bidder and adequate assurance of future performance by a Successful Bidder, must be made by **October 27, 2021 at 12:00 p.m., prevailing Eastern Time** (the "**Sale Objection Deadline**"). All objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court no later than the Sale Objection Deadline or the Supplemental Limited Sale Objection Deadline, as applicable, and served on (i) counsel for the Debtor, and (ii) any other entity on the Master Service List. ***Any party who fails to timely file an objection to entry of the Sale Order (i) shall be forever barred from objecting thereto, (ii) shall be deemed to consent to the sale of the Assets as approved by the Sale Order, and (iii) shall be deemed to "consent" for purposes of Section 363 (f)(2) of the Bankruptcy Code.***

6. This Notice and the Sale Hearing is subject to the fuller terms and conditions of the Bidding Procedures Order, which shall control in the event of any conflict, and the Debtor encourages parties-in-interest to review such document in its entirety. Parties interested in receiving more information regarding the sale of all the Assets and/or copies of any related document, including the Motion, or the Bidding Procedures Order, may make a written request to counsel for the Debtor, Obermayer Rebmann Maxwell Hippel LLP, c/o Edmond M George, Esquire (edmond.george@obermayer.com) or Michael D. Vagnoni, Esquire (michael.vagnoni@obermayer.com) In addition, copies of the Motion, the Bidding Procedures Order and this Notice can be found through PACER on the Court's website, https://ecfnjb.uscourts.gov/ (registration required). Copies of the Motion, the Bidding Procedures Order and this Notice also can be found free of charge on the claims and noticing agent's website, https://dm.epiq11.com/case/aluminumshapes/info.

Dated: October 4, 2021, Respectfully Submitted, By: /s/ Edmond M. George, Edmond M. George, Esquire, Michael D. Vagnoni, Esquire (*pro hac vice*), Turner N. Falk, Esquire, Obermayer Rebmann Maxwell & Hippel, LLP, 1120 Route 73, Suite 420, Mount Laurel, NJ 08054-5108, Telephone: (856) 795-3300, Facsimile: (856) 482-0504, E-mail: edmond.george@obermayer.com, michael.vagnoni@obermayer.com, turner.falk@obermayer.com, *Proposed Counsel to Chapter 11 Debtor, Aluminum Shapes, L.L.C.*

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Bidding Procedures Order.

## LEGAL NOTICES

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] Debtors. | Chapter 11 Case No. 20-10343 (LSS) (Jointly Administered) |

**Hearing Date: January 24, 2022, at 10:00 a.m. (ET)**
**Objection Deadline: January 7, 2022 at 4:00 p.m. (ET)**

**NOTICE OF (I) DEADLINE FOR CASTING VOTES TO ACCEPT OR REJECT PROPOSED MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, (II) HEARING TO CONSIDER CONFIRMATION OF PLAN, AND (III) RELATED MATTERS**

**PLEASE TAKE NOTICE THAT** on September 30, 2021, the above-captioned debtors and debtors-in-possession (together, the "Debtors") filed:

- the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 6443] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan");[2] and
- the *Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 6445] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").

The Plan contains releases of the Debtors and certain third parties and related injunction provisions. These provisions could release and prohibit holders of Abuse Claims from filing lawsuits and asserting such claims against the BSA and certain non-debtor third parties, including Local Councils, Contributing Chartered Organizations, including TCJC, Settling Insurance Companies, including Hartford, and Participating Chartered Organizations, solely with respect to Post-1975 Chartered Organization Abuse Claims. Chartered Organizations are organizations that sponsored a Scouting unit, such as a troop or pack. The Plan provides a mechanism by which Abuse Claims against the BSA and certain-debtor third parties, including the Local Councils, Contributing Chartered Organizations, including TCJC, Settling Insurance Companies, including Hartford, and Participating Chartered Organizations, solely with respect to Post-1975 Chartered Organization Abuse Claims, will be channeled to a trust established pursuant to section 105(a) of the Bankruptcy Code.

Each Chartered Organization will automatically be deemed to be a Participating Chartered Organization under the Plan unless it (1) submits the opt out election form on or before the Plan Objection Deadline, (2) objects to confirmation of the Plan in accordance with the *Notice of Hearing to Consider Confirmation of Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, attached as Exhibit 3 to the Solicitation Procedures Order and available at https://omniagentsolutions.com/BSA on or before the Plan Objection Deadline, or (3) is a debtor in bankruptcy as of the date of confirmation of the Plan. Participating Chartered Organizations shall receive certain limited protections under the Channeling Injunction, including the channeling of all Abuse Claims against such Participating Chartered Organizations that relate to Abuse alleged to have first occurred on or after January 1, 1976, in exchange for contribution to the Settlement Trust of Participating Chartered Organizations' rights under Abuse Insurance Policies issued on or after January 1, 1976.

Confirmation of the Plan is supported by the Debtors, the Future Claimants' Representative, the Creditors' Committee, the Coalition, and the Ad Hoc Committee of Local Councils. You should carefully review the Plan and the applicable release, injunction, and related provisions at https://omniagentsolutions.com/BSA.

**PLEASE TAKE FURTHER NOTICE THAT:**

1. On September 30, 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. 6438] (the "Solicitation Procedures Order") approving the Disclosure Statement. The Solicitation Procedures Order, among other things, authorizes the Debtors to solicit votes to accept or reject the Plan and establishes procedures related thereto (the "Solicitation Procedures").

2. The Bankruptcy Court has scheduled a hearing to consider whether to confirm the Plan beginning on **January 24, 2022 at 10:00 a.m. (Eastern Time)** (the "Confirmation Hearing"), which shall continue to the extent necessary on such dates as the Bankruptcy Court may designate. The Confirmation Hearing will be held before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, at the Bankruptcy Court, located at 824 North Market Street, Sixth Floor, Courtroom No. 2, Wilmington, Delaware 19801.

3. Pursuant to the Solicitation Procedures Order, the Bankruptcy Court approved the Solicitation Procedures, which are attached to the Solicitation Procedures Order as Exhibit 1. Holders of Claims in Class 3A (2010 Credit Facility Claims), Class 3B (2019 RCF Claims), Class 4A (2010 Bond Claims), Class 4B (2012 Bond Claims), Class 5 (Convenience Claims), Class 6 (General Unsecured Claims), Class 7 (Non-Abuse Litigation Claims), Class 8 (Direct Abuse Claims), and Class 9 (Indirect Abuse Claims) (collectively, the "Voting Classes") are entitled to receive a ballot for casting a vote on the Plan (a "Ballot"). Holders of Claims and Interests in all other Classes under the Plan are presumed to accept or are deemed to reject the Plan. For a vote to accept or reject the Plan to be counted, a Ballot must be completed and returned in accordance with the instructions provided on the **Ballot so that it is received by December 14, 2021 at 4:00 p.m. (Eastern Time)** (the "Voting Deadline").

4. Pursuant to the Plan, holders of Claims in the Voting Classes are entitled to vote on account of their respective Claims. If you have not received a Ballot and are entitled to vote on the Plan, you may request a Ballot and voting instructions from Omni Agent Solutions (the "Solicitation Agent"), by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA, and submit your Ballot as set forth above so that it is received by the Voting Deadline.

5. Pursuant to the Solicitation Procedures, all Direct and Indirect Abuse Claims in Class 8 and Class 9 of the Plan will be temporarily allowed in the amount of $1.00 in the aggregate per claimant or as otherwise ordered by the Bankruptcy Court, solely for purposes of voting to accept or reject the Plan and not for any other purpose. If you have filed a Proof of Claim that is subject to an objection other than a "reclassify" or "reduce and allow" objection that is filed with the Bankruptcy Court on or before the Solicitation Date (a "Disputed Claim") and seek to challenge the disallowance or estimation of your Disputed Claim for voting purposes, you must file with the Bankruptcy Court a motion for an order, pursuant to Bankruptcy Rule 3018(a), temporarily allowing such claim for purposes of voting to accept or reject the Plan (a "Rule 3018(a) Motion"). Any Rule 3018(a) Motion must be filed with the Bankruptcy Court and served on the Debtors on or before **November 1, 2021**. If a holder of a Disputed Claim files a timely Rule 3018(a) Motion, such holder's Ballot shall not be counted unless a Resolution Event occurs with respect to such Disputed Claim prior to **December 14, 2021** or as otherwise ordered by the Bankruptcy Court.

6. **The Plan proposes certain releases and injunctions in furtherance of the Plan. The Plan proposes a Channeling Injunction that permanently channels all Abuse Claims against the Debtors and the Protected Parties and Limited Protected Parties to a Settlement Trust established pursuant to section 105(a) of the Bankruptcy Code. In addition, the Plan proposes an injunction that permanently enjoins the pursuit of any claim against or interest in the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property to the extent such claim or interest has been discharged, released, waived, settled, or deemed satisfied in accordance with the Plan (other than the enforcement of any right pursuant to the Plan). For the specific terms and conditions of all the releases and injunctions provided for in the Plan, and the precise scope of the Claims and Demands to be channeled, please refer to the specific terms of the Plan, which can be obtained as described below.**

7. If the Plan is approved by the Bankruptcy Court, all current and future holders of Abuse Claims against the Debtors can request and receive money only from the Settlement Trust. You should read the Plan and Disclosure Statement carefully for details about how the Plan, if approved, will affect your rights.

8. The Bankruptcy Court has issued the Solicitation Procedures Order describing how to vote on the Plan, and the Disclosure Statement contains information that will help you decide how to vote. Your legal rights will be affected if the Plan is approved.

9. Under the Solicitation Procedures approved by the Bankruptcy Court, attorneys for holders of Direct Abuse Claims may vote on the Plan on behalf of their clients, if authorized by each client. If you are unsure whether your attorney is authorized to vote on your behalf, please contact your attorney.

10. If you would like to object to the Plan, you may do so by filing your objection no later than **January 7, 2022 at 4:00 p.m. (Eastern Time)** (the "Plan Objection Deadline"). Any objections or responses to confirmation of the Plan, must: (a) be in writing; (b) state the name and address of the objecting party and the nature and amount of the Claim of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (d) be filed with the Bankruptcy Court, 824 North Market Street, Third Floor, Wilmington, Delaware 19801 together with proof of service **on or before the Plan Objection Deadline**, and served so as to be actually received by the parties listed in the Confirmation Hearing Notice (the "Notice Parties") on or before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email to the Notice Parties.

**OBJECTIONS NOT TIMELY FILED AND SERVED STRICTLY AS PROVIDED HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE.**

If you would like to review the Plan, the Disclosure Statement, the Solicitation Procedures Order, or other documents related to the Plan free of charge, you may obtain these documents from the Solicitation Agent by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA. You may also access from these materials for a fee via PACER at http://www.deb.uscourts.gov/.

Dated: October 8, 2021, WHITE & CASE LLP, Jessica C. Lauria (admitted *pro hac vice*), 1221 Avenue of the Americas, New York, New York 10020, Telephone: (212) 819-8200, Email: jessica.lauria@whitecase.com -and- WHITE & CASE LLP, Michael C. Andolina (admitted *pro hac vice*), Matthew E. Linder (admitted *pro hac vice*), Laura E. Baccash (admitted *pro hac vice*), Blair M. Warner (admitted *pro hac vice*), 111 South Wacker Drive, Chicago, Illinois 60606, Telephone: (312) 881-5400, Email: mandolina@whitecase.com, mlinder@whitecase.com, laura.baccash@whitecase.com, blair.warner@whitecase.com -and- MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Derek C. Abbott (No. 3376), Andrew R. Remming (No. 5120), Paige N. Topper (No. 6470), 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347, Telephone: (302) 658-9200, Email: dabbott@morrisnichols.com, aremming@morrisnichols.com, ptopper@morrisnichols.com, *Attorneys for the Debtors and Debtors in Possession*

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Solicitation Procedures (as defined below), as applicable.

The U.S. Fish and Wildlife Service published a proposed rule to remove 23 species due to extinction from the Lists of Endangered and Threatened Wildlife and Plants on 09/30/2021. Bachman's warbler, bridled white-eye (on Guam), flat pigtoe, green blossom (pearly mussel), ivory-billed woodpecker, Kauai akialoa, Kauai nukupuu, Kauai `o`o, large Kauai thrush (kama), little Mariana fruit bat, Maui akepa, Maui nukupuu, Molokai creeper (kakawahie), Phyllostegia glabra var. lanaiensis (no common name), Po`ouli, San Marcos gambusia, scioto madtom, southern acornshell, stirrupshell, tubercled blossom (pearly mussel), turgid-blossom (pearly mussel), upland combshell, and yellow blossom (pearly mussel). We propose this action because the best scientific and commercial information available indicates that these species are no longer extant and, as such, no longer meet the definition of an endangered species or a threatened species under the Endangered Species Act of 1973. If this rule is finalized, these species will be removed from the List of Endangered and Threatened Wildlife and Plants. More information can be found at https://www.regulations.gov/#!home. Comments on our proposal will be accepted through 11/29/2021. You may submit your comments or materials electronically, or view a detailed description of the basis for a species determination, under the docket numbers found in the proposed rule: https://www.govinfo.gov/content/pkg/FR-2021-09-30/pdf/2021-21219.pdf

New Great Marketplace Rates!

Scan below for current specials

Successful Advertisements start with USA TODAY Marketplace

To Advertise, Call: 1-800-397-0070

# **EXHIBIT C**



# PROOF OF PUBLICATION

Oct-08, 2021

I, Edgar Noblesala, in my capacity as a Principal Clerk of the Publisher of The New York Times a daily newspaper of general circulation printed and published in the City, County and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on

Oct 8, 2021, NYT & Natl, pg B3

Sworn to me this 8th day of October, 2021

Notary Public

Ellen Herb
Notary Public, State of New York
No. 01HE6163785
Qualified in New York County
Commission Expires April 2, 2023

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| In re: BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] Debtors. | Chapter 11<br>Case No. 20-10343 (LSS)<br>(Jointly Administered) |
|---|---|

**Hearing Date: January 24, 2022, at 10:00 a.m. (ET)**
**Objection Deadline: January 7, 2022 at 4:00 p.m. (ET)**

**NOTICE OF (I) DEADLINE FOR CASTING VOTES TO ACCEPT OR REJECT PROPOSED MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, (II) HEARING TO CONSIDER CONFIRMATION OF PLAN, AND (III) RELATED MATTERS**

**PLEASE TAKE NOTICE THAT** on September 30, 2021, the above-captioned debtors and debtors-in-possession (together, the "Debtors") filed:

- the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 6443] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan");[2] and
- the *Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 6445] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").

The Plan contains releases of the Debtors and certain third parties and related injunction provisions. These provisions could release and prohibit holders of Abuse Claims from filing lawsuits and asserting such claims against the BSA and certain non-debtor third parties, including Local Councils, Contributing Chartered Organizations, including TCJC, Settling Insurance Companies, including Hartford, and Participating Chartered Organizations, solely with respect to Post-1975 Chartered Organization Abuse Claims. Chartered Organizations are organizations that sponsored a Scouting unit, such as a troop or pack. The Plan provides a mechanism by which Abuse Claims against the BSA and certain-debtor third parties, including the Local Councils, Contributing Chartered Organizations, including TCJC, Settling Insurance Companies, including Hartford, and Participating Chartered Organizations, solely with respect to Post-1975 Chartered Organization Abuse Claims, will be channeled to a trust established pursuant to section 105(a) of the Bankruptcy Code.

Each Chartered Organization will automatically be deemed to be a Participating Chartered Organization under the Plan unless it (1) submits the opt out election form on or before the Plan Objection Deadline, (2) objects to confirmation of the Plan in accordance with the *Notice of Hearing to Consider Confirmation of Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, attached as Exhibit 3 to the Solicitation Procedures Order and available at https://omniagentsolutions.com/BSA on or before the Plan Objection Deadline, or (3) is a debtor in bankruptcy as of the date of confirmation of the Plan. Participating Chartered Organizations shall receive certain limited protections under the Channeling Injunction, including the channeling of all Abuse Claims against such Participating Chartered Organizations that relate to Abuse alleged to have first occurred on or after January 1, 1976, in exchange for contribution to the Settlement Trust of Participating Chartered Organizations' rights under Abuse Insurance Policies issued on or after January 1, 1976.

Confirmation of the Plan is supported by the Debtors, the Future Claimants' Representative, the Creditors' Committee, the Coalition, and the Ad Hoc Committee of Local Councils. You should carefully review the Plan and the applicable release, injunction, and related provisions at https://omniagentsolutions.com/BSA.

**PLEASE TAKE FURTHER NOTICE THAT:**

1. On September 30, 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. 6438] (the "Solicitation Procedures Order") approving the Disclosure Statement. The Solicitation Procedures Order, among other things, authorizes the Debtors to solicit votes to accept or reject the Plan and establishes procedures related thereto (the "Solicitation Procedures").

2. The Bankruptcy Court has scheduled a hearing to consider whether to confirm the Plan beginning on **January 24, 2022 at 10:00 a.m. (Eastern Time)** (the "Confirmation Hearing"), which shall continue to the extent necessary on such dates as the Bankruptcy Court may designate. The Confirmation Hearing will be held before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, at the Bankruptcy Court, located at 824 North Market Street, Sixth Floor, Courtroom No. 2, Wilmington, Delaware 19801.

3. Pursuant to the Solicitation Procedures Order, the Bankruptcy Court approved the Solicitation Procedures, which are attached to the Solicitation Procedures Order as Exhibit 1. Holders of Claims in Class 3A (2010 Credit Facility Claims), Class 3B (2019 RCF Claims), Class 4A (2010 Bond Claims), Class 4B (2012 Bond Claims), Class 5 (Convenience Claims), Class 6 (General Unsecured Claims), Class 7 (Non-Abuse Litigation Claims), Class 8 (Direct Abuse Claims), and Class 9 (Indirect Abuse Claims) (collectively, the "Voting Classes") are entitled to receive a ballot for casting a vote on the Plan (a "Ballot"). Holders of Claims and Interests in all other Classes under the Plan are presumed to accept or are deemed to reject the Plan. For a vote to accept or reject the Plan to be counted, a Ballot must be completed and returned in accordance with the instructions provided on the **Ballot so that it is received by December 14, 2021 at 4:00 p.m. (Eastern Time)** (the "Voting Deadline").

4. Pursuant to the Plan, holders of Claims in the Voting Classes are entitled to vote on account of their respective Claims. If you have not received a Ballot and are entitled to vote on the Plan, you may request a Ballot and voting instructions from Omni Agent Solutions (the "Solicitation Agent"), by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA, and submit your Ballot as set forth above so that it is received by the Voting Deadline.

5. Pursuant to the Solicitation Procedures, all Direct and Indirect Abuse Claims in Class 8 and Class 9 of the Plan will be temporarily allowed in the amount of $1.00 in the aggregate per claimant or as otherwise ordered by the Bankruptcy Court, solely for purposes of voting to accept or reject the Plan and not for any other purpose. If you have filed a Proof of Claim that is subject to an objection other than a "reclassify" or "reduce and allow" objection that is filed with the Bankruptcy Court on or before the Solicitation Date (a "Disputed Claim") and seek to challenge the disallowance or estimation of your Disputed Claim for voting purposes, you must file with the Bankruptcy Court a motion for an order, pursuant to Bankruptcy Rule 3018(a), temporarily allowing such claim for purposes of voting to accept or reject the Plan (a "Rule 3018(a) Motion"). Any Rule 3018(a) Motion must be filed with the Bankruptcy Court and served on the Debtors on or before **November 1, 2021**. If a holder of a Disputed Claim files a timely Rule 3018(a) Motion, such holder's Ballot shall not be counted unless a Resolution Event occurs with respect to such Disputed Claim prior to **December 14, 2021** or as otherwise ordered by the Bankruptcy Court.

6. **The Plan proposes certain releases and injunctions in furtherance of the Plan. The Plan proposes a Channeling Injunction that permanently channels all Abuse Claims against the Debtors and the Protected Parties and Limited Protected Parties to a Settlement Trust established pursuant to section 105(a) of the Bankruptcy Code. In addition, the Plan proposes an injunction that permanently enjoins the pursuit of any claim against or interest in the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property to the extent such claim or interest has been discharged, released, waived, settled, or deemed satisfied in accordance with the Plan (other than the enforcement of any right pursuant to the Plan). For the specific terms and conditions of all the releases and injunctions provided for in the Plan, and the precise scope of the Claims and Demands to be channeled, please refer to the specific terms of the Plan, which can be obtained as described below.**

7. If the Plan is approved by the Bankruptcy Court, all current and future holders of Abuse Claims against the Debtors can request and receive money only from the Settlement Trust. You should read the Plan and Disclosure Statement carefully for details about how the Plan, if approved, will affect your rights.

8. The Bankruptcy Court has issued the Solicitation Procedures Order describing how to vote on the Plan, and the Disclosure Statement contains information that will help you decide how to vote. Your legal rights will be affected if the Plan is approved.

9. Under the Solicitation Procedures approved by the Bankruptcy Court, attorneys for holders of Direct Abuse Claims may vote on the Plan on behalf of their clients, if authorized by each client. If you are unsure whether your attorney is authorized to vote on your behalf, please contact your attorney.

10. If you would like to object to the Plan, you may do so by filing your objection no later than **January 7, 2022 at 4:00 p.m. (Eastern Time)** (the "Plan Objection Deadline"). Any objections or responses to confirmation of the Plan, must: (a) be in writing; (b) state the name and address of the objecting party and the nature and amount of the Claim of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (d) be filed with the Bankruptcy Court, 824 North Market Street, Third Floor, Wilmington, Delaware 19801 together with proof of service **on or before the Plan Objection Deadline**, and served so as to be actually received by the parties listed in the Confirmation Hearing Notice (the "Notice Parties") on or before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email to the Notice Parties.

**OBJECTIONS NOT TIMELY FILED AND SERVED STRICTLY AS PROVIDED HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE.**

If you would like to review the Plan, the Disclosure Statement, the Solicitation Procedures Order, or other documents related to the Plan free of charge, you may obtain these documents from the Solicitation Agent by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA. You may also access from these materials for a fee via PACER at http://www.deb.uscourts.gov/.

Dated: October 8, 2021, WHITE & CASE LLP, Jessica C. Lauria (admitted *pro hac vice*), 1221 Avenue of the Americas, New York, New York 10020, Telephone: (212) 819-8200, Email: jessica.lauria@whitecase.com -and- WHITE & CASE LLP, Michael C. Andolina (admitted *pro hac vice*), Matthew E. Linder (admitted *pro hac vice*), Laura E. Baccash (admitted *pro hac vice*), Blair M. Warner (admitted *pro hac vice*), 111 South Wacker Drive, Chicago, Illinois 60606, Telephone: (312) 881-5400, Email: mandolina@whitecase.com, mlinder@whitecase.com, laura.baccash@whitecase.com, blair.warner@whitecase.com -and- MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Derek C. Abbott (No. 3376), Andrew R. Remming (No. 5120), Paige N. Topper (No. 6470), 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347, Telephone: (302) 658-9200, Email: dabbott@morrisnichols.com, aremming@morrisnichols.com, ptopper@morrisnichols.com, *Attorneys for the Debtors and Debtors in Possession*

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Solicitation Procedures (as defined below), as applicable.

# Companies Face Pressure on Mandates While They Wait for Clear Rules

By LAUREN HIRSCH

Last month, President Biden asked the Occupational Safety and Health Administration to write rules that would require companies with more than 100 employees to mandate coronavirus vaccinations or weekly testing. But with OSHA still going through a lengthy rule-making process, which could take several more weeks, the White House is urging companies to act now.

Several big employers have imposed mandates since Mr. Biden's announcement, including 3M, Procter & Gamble and the airlines American, Alaska and JetBlue. IBM said on Thursday that it will require all of its U.S. employees to be fully vaccinated by Dec. 8, regardless of how often they come into the office. It will allow for "limited" medical or religious exceptions.

But many others, like JPMorgan Chase and Walmart, have yet to issue broad requirements. The OSHA standards would require reluctant companies to introduce mandates.

Executives continue to be worried about losing employees and managing the cost and complexity of vaccinate-or-test mandates. Retailers are eyeing the run-up to the holiday season, which is crucial to their yearly sales and for which finding labor was already set to be a challenge because of the pandemic.

Analysts at Goldman Sachs estimated last month that the vaccine requirements announced by the White House would apply to about 25 million unvaccinated workers in the United States and boost the number of vaccinated individuals by 12 million — or 3.6 percent of the population — by March. Using those estimates, Goldman's analysts expect that 82 percent of the total population, and 90 percent of adults, will have their first dose by mid-2022. To date, 65 percent of all Americans have had at least one dose.

Mr. Biden headed to Chicago on Thursday to make the case that vaccine mandates are crucial to the economic recovery. He met with Scott Kirby, the chief executive of United Airlines, a pioneer in corporate vaccine mandates, and visited Clayco, a construction company that has introduced vaccine and testing requirements for its employees.

As Mr. Biden tries to sell the mandate, OSHA is working on the time-consuming process of writing standards that pass legal muster. The president's mandate for large employers would affect more than 80 million workers.

The White House said at the time of Mr. Biden's announcement, in early September, that the OSHA standards would take weeks, which is a typical timeline for an emergency standard. This process includes a number of steps, like demonstrating that workers face a grave danger at work and that a rule is necessary to address the danger.

Almost a month from the initial announcement, OSHA's standards could still be a few weeks away, as it works through a long list of questions that business groups, like the U.S. Chamber of Commerce and the Retail Industry Leaders Association, have about the finer points of vaccine mandates. A few of the issues include:

■ Will independent contractors count toward the 100-employee threshold?

■ Who will pay for testing? Companies? The government? The unvaccinated?

■ Will vaccine mandates include boosters, if approved?

"The White House has made this OSHA's top priority, and I know they're working around the clock on it," said Lawrence Gostin, a law professor at Georgetown University who specializes in health policy. "It doesn't surprise me that it's taking this long, because they want to immunize themselves as best they can against a lawsuit.

Attorneys general in 24 states have threatened to sue. Legal experts generally say that OSHA has the authority to introduce a vaccine mandate under powers granted by the Occupational Safety and Health Act of 1970. But it is never has before required vaccines in the workplace.

Plans for a mandate could also be complicated by state legislation challenging the move. Montana has outlawed employer vaccine mandates. OSHA's standards pre-empt state governments' existing rules, except in states that have their own OSHA-approved workplace agencies. (About half do.) The legal basis for a challenge is likely to be weakest in states that are directly within OSHA's jurisdiction, which include Montana, Texas and Florida.

DOUG MILLS/THE NEW YORK TIMES

**President Biden visiting a Clayco construction site in Elk Grove Village, Ill. The company has vaccine and testing requirements for its employees.**

Even after OSHA finalizes its rules, some employers wary of mandates may not act, betting that they won't be punished because of the agency's limited enforcement resources, or decide to wait out any legal battles before putting in place any requirements of their own.

As executives await more details, a cottage industry has emerged to help companies with everything from testing to tracking vaccinations. Smaller employers, in particular, are worried about managing the new requirements, given their limited resources.

ReturnSafe, a software company that can integrate building access systems with vaccine records, said it had gone from an average of 40 to 60 people booking a meeting via its website every week to almost 300 requests per week after Mr. Biden's announcement. ADP, a payroll processing company, has updated its "return to workplace" software to add features to track vaccination status and weekly Covid-19 testing. Labor lawyers are walking companies through the complex task of handling requests for religious exemptions to vaccine mandates.

The White House released details on its mandate for federal contractors this month, which gives those workers until Dec. 8 to comply. The guidelines are stricter than the proposed rules for private employers: For example, there is no option for the unvaccinated to submit to regular testing instead of getting inoculated. A White House official said the administration expected many companies ultimately to announce vaccine-only policies. IBM and United Airlines noted that their mandates brought them into compliance with the rule for federal contractors.

United, which announced its mandate in August, recently reported that 99 percent of its workers had been vaccinated and that it had received 20,000 applications for about 2,000 flight attendant positions, a much higher ratio than before the pandemic. Tyson Foods reported a 91 percent vaccination rate ahead of a November deadline, compared with less than 50 percent before its mandate announcement in August. These figures challenge the concerns among some employers that mandates would cause workers to quit, particularly in industries facing labor shortages.

Still, "some companies are looking at it and saying: 'Great that those employers had a good experience. I don't know if we'll have the same experience,'" Douglas Brayley, an employment lawyer at Ropes and Gray, told The New York Times's DealBook newsletter. "Or, they may look at it and say, 'Great, they had a 91 percent vaccination rate, but we are so thinly staffed we couldn't possibly lose 9 percent of our work force.'"

Noam Scheiber contributed reporting.

# I.M.F. Weighs Fate of Its Director, Accused of Altering Report to Please China

By ALAN RAPPEPORT

WASHINGTON — The tenure of Kristalina Georgieva as managing director of the International Monetary Fund faces a pivotal moment on Friday, when the fund's executive board will meet to decide whether she should continue to be its leader after allegations that she pressured staff to manipulate a report to placate China when she was a top World Bank official.

This week, the executive board spent hours questioning Ms. Georgieva about her actions. It also interviewed lawyers from WilmerHale, the firm that conducted the World Bank's internal review of the circumstances surrounding the Doing Business survey. The review, published last month, concluded that Ms. Georgieva had played a central role in meddling with the report, raising questions about her judgment and ability to continue leading the I.M.F.

Ms. Georgieva has denied the allegations, and in a meeting with the board on Wednesday she offered a forceful rebuttal.

"The WilmerHale Report does not accurately characterize my actions with respect to Doing Business 2018, nor does it accurately portray my character or the way that I have conducted myself over a long professional career," Ms. Georgieva said in a statement to the board, which was obtained by The New York Times.

Mr. Georgieva, a Bulgarian economist who assumed the top I.M.F. job in 2019, also criticized the nature of the World Bank investigation and said she had been misled.

"The email from WilmerHale requesting my participation said clearly that I was not a subject of the investigation and assured me that my testimony was confidential and protected by World Bank staff rules, which guarantee due process," Ms. Georgieva said. "None of this proved to be true."

The controversy has raised questions about China's influence in multilateral institutions. It has also become a distraction for the I.M.F. as it is trying to help coordinate the global economic response to the pandemic. Prominent economists have publicly debated whether Ms. Georgieva should step down. The Economist magazine called last month for her resignation.

The United States, which is the fund's largest shareholder, has yet to offer public support, and officials have declined to say if she should stay in the job.

POOL PHOTO BY CLEMENS BILAN

**Prominent economists have publicly debated whether Kristalina Georgieva, the managing director of the I.M.F., should step down.**

"There is a review currently underway with the I.M.F. board, and Treasury has pushed for a thorough and fair accounting of all the facts," said Alexandra LaManna, a Treasury spokeswoman. "Our primary responsibility is to uphold the integrity of international financial institutions."

Former World Bank officials have described Ms. Georgieva as a polarizing figure, but she has generally won praise at the I.M.F. When she assumed the job, she quickly restructured the fund to give her more direct control over its daily operations. That included removing David Lipton, a longtime I.M.F. official and its first deputy managing director, before his term expired.

Mr. Lipton is now a top adviser to Treasury Secretary Janet L. Yellen, who will have significant input as to whether Ms. Georgieva remains in the job.

Republicans and Democrats in Congress have expressed concern about Ms. Georgieva's actions at the World Bank and called on Ms. Yellen to ensure "full accountability."

The United States traditionally selects an American to be president of the World Bank, while the managing director of the I.M.F. is usually from Europe.

The I.M.F.'s executive board could make a decision about whether it continues to have confidence in Ms. Georgieva when it meets on Friday.

The annual meetings of the World Bank Group and the International Monetary Fund take place next week.

# Marshall Project Founder Will Step Down as Chair

By MICHAEL M. GRYNBAUM

Neil Barsky said on Thursday that he would step down as chairman of the Marshall Project, the nonprofit investigative news organization he founded in 2014 that focuses on inequities in the American criminal justice system.

In Mr. Barsky's seven years at the helm, the outlet won two Pulitzer Prizes, including this year's prize for national reporting, and expanded to 54 employees and a budget of nearly $12 million, while offering a template for sustainable nonprofit journalism.

A former financial journalist who made his fortune as a hedge fund manager, Mr. Barsky is now set to pursue a new investment venture that would support and provide capital to female and minority asset managers. He said in an interview that he wanted the new group to "embrace the ideals of a multiracial democracy" while earning some money, too.

His departure is in some ways a mark of maturity for the Marshall Project, which has punched above its weight as a producer of high-impact journalism. Its investigations exposed, among other subjects, an epidemic of attacks by police dogs and a botched investigation of a rape in Washington State, which won the 2016 Pulitzer for explanatory reporting.

Pulitzers were "not the goal, but it's a great thing to achieve," Mr. Barsky said. "We achieved journalistic credibility much quicker than I could have imagined."

Liz Simons, a philanthropist and advocate for criminal justice reform, will succeed Mr. Barsky as chair of the Marshall Project. Carroll Bogert will remain president, with oversight of business affairs. Its newsroom will continue to be led by Susan Chira, a former editor and correspondent at The New York Times.

Mr. Barsky's exit "doesn't change our foundational way of being," Ms. Chira said. "Philanthropically supported nonprofit journalism is a way to help address the crisis where local newsrooms are gutted and there are diminished resources to do accountability reporting."

In the interview, Mr. Barsky said he was leaving in part so that he could be more outspoken on political and policy matters. He said he had felt "mildly constrained" as the leader of a journalistic outlet, which he wanted to remain impartial and nonpartisan.

FRED R. CONRAD/THE NEW YORK TIMES

**Neil Barsky plans an investment venture focusing on female and minority asset managers.**

He said his focus had recently shifted toward "the cowardice of the business community, particularly the financial community, to stand up against threats to our democracy and our ideals." The field of money management, he said, is overdue for a reckoning on diversity and inclusion, and he wants his new fund to benefit "vast talent out there that has been lacking for capital."

In a letter to his staff on Thursday, Mr. Barsky said the organization was "in superb hands" and declared its mission unfinished. "It is worth reminding ourselves that the American criminal justice system remains a national disgrace," he wrote. He also urged his employees to "never lose our sense of outrage," even as he emphasized a belief that the power of journalism stemmed from a public perception of independence.

"The public's skepticism about the media has never been greater," he wrote. "The miracle potion of the Marshall Project is that we are truth-seekers and storytellers. This is our franchise, and once lost, is very difficult to recover."

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| In re: BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] Debtors. | Chapter 11<br>Case No. 20-10343 (LSS)<br>(Jointly Administered) |
|---|---|

**Hearing Date: January 24, 2022, at 10:00 a.m. (ET)**
**Objection Deadline: January 7, 2022 at 4:00 p.m. (ET)**

**NOTICE OF (I) DEADLINE FOR CASTING VOTES TO ACCEPT OR REJECT PROPOSED MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, (II) HEARING TO CONSIDER CONFIRMATION OF PLAN, AND (III) RELATED MATTERS**

**PLEASE TAKE NOTICE THAT** on September 30, 2021, the above-captioned debtors and debtors-in-possession (together, the "Debtors") filed:

- the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 6443] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan");[2] and
- the *Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 6445] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").

The Plan contains releases of the Debtors and certain third parties and related injunction provisions. These provisions could release and prohibit holders of Abuse Claims from filing lawsuits and asserting such claims against the BSA and certain non-debtor third parties, including Local Councils, Contributing Chartered Organizations, including TCJC, Settling Insurance Companies, including Hartford, and Participating Chartered Organizations, solely with respect to Post-1975 Chartered Organization Abuse Claims. Chartered Organizations are organizations that sponsored a Scouting unit, such as a troop or pack. The Plan provides a mechanism by which Abuse Claims against the BSA and certain-debtor third parties, including the Local Councils, Contributing Chartered Organizations, including TCJC, Settling Insurance Companies, including Hartford, and Participating Chartered Organizations, solely with respect to Post-1975 Chartered Organization Abuse Claims, will be channeled to a trust established pursuant to section 105(a) of the Bankruptcy Code.

Each Chartered Organization will automatically be deemed to be a Participating Chartered Organization under the Plan unless it (1) submits the opt out election form on or before the Plan Objection Deadline, (2) objects to confirmation of the Plan in accordance with the *Notice of Hearing to Consider Confirmation of Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, attached as Exhibit 3 to the Solicitation Procedures Order and available at https://omniagentsolutions.com/BSA on or before the Plan Objection Deadline, or (3) is a debtor in bankruptcy as of the date of confirmation of the Plan. Participating Chartered Organizations shall receive certain limited protections under the Channeling Injunction, including the channeling of all Abuse Claims against such Participating Chartered Organizations that relate to Abuse alleged to have first occurred on or after January 1, 1976, in exchange for contribution to the Settlement Trust of Participating Chartered Organizations' rights under Abuse Insurance Policies issued on or after January 1, 1976.

Confirmation of the Plan is supported by the Debtors, the Future Claimants' Representative, the Creditors' Committee, the Coalition, and the Ad Hoc Committee of Local Councils. You should carefully review the Plan and the applicable release, injunction, and related provisions at https://omniagentsolutions.com/BSA.

**PLEASE TAKE FURTHER NOTICE THAT:**

1. On September 30, 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. 6438] (the "Solicitation Procedures Order") approving the Disclosure Statement. The Solicitation Procedures Order, among other things, authorizes the Debtors to solicit votes to accept or reject the Plan and establishes procedures related thereto (the "Solicitation Procedures").

2. The Bankruptcy Court has scheduled a hearing to consider whether to confirm the Plan beginning on **January 24, 2022 at 10:00 a.m. (Eastern Time)** (the "Confirmation Hearing"), which shall continue to the extent necessary on such dates as the Bankruptcy Court may designate. The Confirmation Hearing will be held before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, at the Bankruptcy Court, located at 824 North Market Street, Sixth Floor, Courtroom No. 2, Wilmington, Delaware 19801.

3. Pursuant to the Solicitation Procedures Order, the Bankruptcy Court approved the Solicitation Procedures, which are attached to the Solicitation Procedures Order as Exhibit 1. Holders of Claims in Class 3A (2010 Credit Facility Claims), Class 3B (2019 RCF Claims), Class 4A (2010 Bond Claims), Class 4B (2012 Bond Claims), Class 5 (Convenience Claims), Class 6 (General Unsecured Claims), Class 7 (Non-Abuse Litigation Claims), Class 8 (Direct Abuse Claims), and Class 9 (Indirect Abuse Claims) (collectively, the "Voting Classes") are entitled to receive a ballot for casting a vote on the Plan (a "Ballot"). Holders of Claims and Interests in all other Classes under the Plan are presumed to accept or are deemed to reject the Plan. For a vote to accept or reject the Plan to be counted, a Ballot must be completed and returned in accordance with the instructions provided on the **Ballot so that it is received by December 14, 2021 at 4:00 p.m. (Eastern Time)** (the "Voting Deadline").

4. Pursuant to the Plan, holders of Claims in the Voting Classes are entitled to vote on account of their respective Claims. If you have not received a Ballot and are entitled to vote on the Plan, you may request a Ballot and voting instructions from Omni Agent Solutions (the "Solicitation Agent"), by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA, and submit your Ballot as set forth above so that it is received by the Voting Deadline.

5. Pursuant to the Solicitation Procedures, all Direct and Indirect Abuse Claims in Class 8 and Class 9 of the Plan will be temporarily allowed in the amount of $1.00 in the aggregate per claimant or as otherwise ordered by the Bankruptcy Court, solely for purposes of voting to accept or reject the Plan and not for any other purpose. If you have filed a Proof of Claim that is subject to an objection other than a "reclassify" or "reduce and allow" objection that is filed with the Bankruptcy Court on or before the Solicitation Date (a "Disputed Claim") and seek to challenge the disallowance or estimation of your Disputed Claim for voting purposes, you must file with the Bankruptcy Court a motion for an order, pursuant to Bankruptcy Rule 3018(a), temporarily allowing such claim for purposes of voting to accept or reject the Plan (a "Rule 3018(a) Motion"). Any Rule 3018(a) Motion must be filed with the Bankruptcy Court and served on the Debtors on or before **November 1, 2021**. If a holder of a Disputed Claim files a timely Rule 3018(a) Motion, such holder's Ballot shall not be counted unless a Resolution Event occurs with respect to such Disputed Claim prior to **December 14, 2021** or as otherwise ordered by the Bankruptcy Court.

6. **The Plan proposes certain releases and injunctions in furtherance of the Plan. The Plan proposes a Channeling Injunction that permanently channels all Abuse Claims against the Debtors and the Protected Parties and Limited Protected Parties to a Settlement Trust established pursuant to section 105(a) of the Bankruptcy Code. In addition, the Plan proposes an injunction that permanently enjoins the pursuit of any claim against or interest in the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property to the extent such claim or interest has been discharged, released, waived, settled, or deemed satisfied in accordance with the Plan (other than the enforcement of any right pursuant to the Plan). For the specific terms and conditions of all the releases and injunctions provided for in the Plan, and the precise scope of the Claims and Demands to be channeled, please refer to the specific terms of the Plan, which can be obtained as described below.**

7. If the Plan is approved by the Bankruptcy Court, all current and future holders of Abuse Claims against the Debtors can request and receive money only from the Settlement Trust. You should read the Plan and Disclosure Statement carefully for details about how the Plan, if approved, will affect your rights.

8. The Bankruptcy Court has issued the Solicitation Procedures Order describing how to vote on the Plan, and the Disclosure Statement contains information that will help you decide how to vote. Your legal rights will be affected if the Plan is approved.

9. Under the Solicitation Procedures approved by the Bankruptcy Court, attorneys for holders of Direct Abuse Claims may vote on the Plan on behalf of their clients, if authorized by each client. If you are unsure whether your attorney is authorized to vote on your behalf, please contact your attorney.

10. If you would like to object to the Plan, you may do so by filing your objection no later than **January 7, 2022 at 4:00 p.m. (Eastern Time)** (the "Plan Objection Deadline"). Any objections or responses to confirmation of the Plan, must: (a) be in writing; (b) state the name and address of the objecting party and the nature and amount of the Claim of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (d) be filed with the Bankruptcy Court, 824 North Market Street, Third Floor, Wilmington, Delaware 19801 together with proof of service on or before **the Plan Objection Deadline**, and served so as to be actually received by the parties listed in the Confirmation Hearing Notice (the "Notice Parties") on or before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email to the Notice Parties.

**OBJECTIONS NOT TIMELY FILED AND SERVED STRICTLY AS PROVIDED HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE.**

If you would like to review the Plan, the Disclosure Statement, the Solicitation Procedures Order, or other documents related to the Plan free of charge, you may obtain these documents from the Solicitation Agent by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA. You may also access from these materials for a fee via PACER at http://www.deb.uscourts.gov/.

Dated: October 4, 2021, WHITE & CASE LLP, Jessica C. Lauria (admitted *pro hac vice*), 1221 Avenue of the Americas, New York, New York 10020, Telephone: (212) 819-8200, Email: jessica.lauria@whitecase.com -and- WHITE & CASE LLP, Michael C. Andolina (admitted *pro hac vice*), Matthew E. Linder (admitted *pro hac vice*), Laura E. Baccash (admitted *pro hac vice*), Blair M. Warner (admitted *pro hac vice*), 111 South Wacker Drive, Chicago, Illinois 60606, Telephone: (312) 881-5400, Email: mandolina@whitecase.com, mlinder@whitecase.com, laura.baccash@whitecase.com, blair.warner@whitecase.com -and- MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Derek C. Abbott (No. 3376), Andrew R. Remming (No. 5120), Paige N. Topper (No. 6470), 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347, Telephone: (302) 658-9200, Email: dabbott@morrisnichols.com, aremming@morrisnichols.com, ptopper@morrisnichols.com, *Attorneys for the Debtors and Debtors in Possession*

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Solicitation Procedures (as defined below), as applicable.

The New York Times

On campus. Out in the world.
Provide faculty and students at your school with digital access to The Times.
**Learn more at nytimes.com/oncampus**

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| In re Alpha Latam Management, LLC, *et al.*,[1] Debtors. | Chapter 11<br>Case No. 21-11109 (JKS)<br>(Jointly Administered)<br>**Re: Docket Nos. 113, 198 & 255** |
|---|---|

**NOTICE OF AUCTION, SALE, AND SALE HEARING**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On August 1, 2021, the above captioned debtors and debtors in possession (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

On September 15, 2021, the Bankruptcy Court entered the *Order: (A) Authorizing and Approving Bidding Procedures Relating to the Sale of All or Substantially All of Certain of the Debtors' Assets; (B) Scheduling Auction for, and Hearing to Approve, Sale of Certain of the Debtors' Assets; and (C) Approving Form and Manner of Notice of Sale, Auction, and Sale Hearing; and (D) Granting Related Relief* [Docket No. 198] (the "**Bid Procedures Order**"),[2] that, among other things: (a) authorized and approved the Debtors' bidding procedures (the "**Bidding Procedures**") for the proposed sale (the "**Sale**") of all, or substantially all, of certain of the Debtors' operating assets; (b) scheduled an auction of the Assets (the "**Auction**") and a final hearing for approval of the Sale (the "**Sale Hearing**"); (c) established the form and manner of notice of the Bidding Procedures, the Auction, and the Sale Hearing; (d) established procedures for the assumption and assignment of executory contracts and unexpired leases; and (e) granted related relief.

**Assets to be Auctioned.** The Debtors are offering substantially all of their operating assets for sale, which include (without limitation) their loan portfolio assets, trust rights, technology assets, employees, and any other material contracts (the "**Assets**"). All of the Debtors' right, title, and interest in and to the Assets shall, to the maximum extent permitted by section 363 of the Bankruptcy Code, be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "**Interests**"), with such Interests attaching to the net proceeds of the sale of the Assets with the same validity, force, effect, and priority as such Interests applied against the Assets before the Sale, subject to any rights, claims, and defenses of the Debtors.

After marketing the Assets, Alpha Capital S.A.S. and Vive Créditos Kusida S.A.S. (collectively, the "**Sellers**") have entered into an asset purchase agreement (the "**Stalking Horse APA**") with Cerberus South American Investments, LLC (or such affiliates as it may designate in writing), on behalf of certain funds and accounts managed by its affiliates and their direct and indirect subsidiaries (collectively, "**Cerberus**" or the "**Stalking Horse Bidder**") for the sale of specified loan portfolio assets and certain related contracts (the "**Stalking Horse Package**"), subject to higher or better bids for the Assets. The Stalking Horse APA was filed with the Court at Docket No. 255-1 and has the support of the Ad Hoc Group, including the DIP Note Purchasers.[3]

On October 1, 2021, the Bankruptcy Court entered an *Order (I) Authorizing and Approving Entry Into Stalking Horse Agreement and Related Bid Protections in Connection with the Sale of All or Substantially All of Certain of the Debtors' Assets, (II) Modifying Bidding Procedures, and (II) Granting Related Relief* [Docket No. 255] (the "**Stalking Horse Order**") that, among other things, authorized and approved (a) the Debtors' designation of Cerberus as the Stalking Horse Bidder for the Assets, (b) Sellers' entry into the Stalking Horse APA and performance of certain obligations thereunder, (c) related Bid pursuant to the terms and conditions of the Stalking Horse APA, (d) the modification of the Bidding Procedures and Bid Procedures Order including (i) extending the IOI Deadline (as defined below) from September 30, 2021, to October 8, 2021, (ii) extending the deadline for the Debtors to file and serve this revised notice from September 24, 2021, to October 4, 2021, and (iii) approving the form and manner of service of this notice, and (e) related relief. Having announced the selection and approval of the Stalking Horse Bidder, the Debtors will proceed with conducting the Auction to obtain the highest and/or otherwise best bid for the Assets, including the Stalking Horse Package.

**Key Dates and Deadlines**

**IOI Deadline**. In order to potentially be designated as a Qualified Bidder and participate in the Auction, a person or entity must first submit a non-binding indication of interest (each an "**IOI**") in accordance with the Bidding Procedures **by October 8, 2021 at 4:00 p.m.** (prevailing Eastern Time) to (a) counsel to the Debtors, White & Case LLP, 200 South Biscayne Boulevard, Suite 4900, Miami, FL 33131 Attn: John Cunningham (jcunningham@whitecase.com), Richard Kebrdle (rkebrdle@whitecase.com), Amanda Parra Criste (aparracriste@whitecase.com), and White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020 Attn: Philip Abelson (philip.abelson@whitecase.com) and John Ramirez (john.ramirez@whitecase.com); and (b) the Debtors' investment banker, Rothschild & Co, Campos Eliseos, 345 - 8 piso, Mexico City 11550, Mexico Attn: Victor Leclercq (victor.leclercq@rothschildandco.com), Andres Marquez (andres.marquez@rothschildandco.com), and Ismael Ortiz (ismael.ortiz@rothschildandco.com) (collectively, the "**Bid Submission Parties**").

**Bid Deadline.** To be eligible to participate in the Auction, a person or entity must submit a Qualified Bid, in writing and in accordance with the Bidding Procedures, so as to be **actually received** by the Bid Submission Parties **on or before October 26, 2021 at 4:00 p.m.** (prevailing Eastern Time) (the "**Bid Deadline**").

**Auction.** If one or more Qualified Bids (in addition to any Stalking Horse Bid approved by the Court) are received by the Bid Deadline, the Debtors will conduct the Auction to determine the highest or otherwise best Qualified Bid **on or before October 28, 2021 at 10:00 a.m.** (prevailing Eastern Time) in a virtual room hosted by the Debtors' counsel, or such other place and time as the Debtors shall notify all Qualified Bidders and the Consultation Parties. Except as otherwise determined by the Debtors, only (i) the Debtors, (ii) the Consultation Parties, (iii) the United States Trustee, (iv) any Stalking Horse Bidder that is approved by the Court, (v) any Qualified Bidder, (vi) any creditor of the Debtors that at least five (5) Business Days prior to the Auction delivers to Debtors' counsel a written request to attend the Auction (by email to lilian.marques@whitecase.com), and (vii) in each case, along with their representatives and counsel, shall attend the Auction (such attendance to be virtual); provided, that the Debtors may, in their sole discretion, establish a reasonable limit on the number of advisors that may appear on behalf of each party. Only Qualified Bidders will be entitled to make any Bids at the Auction.

**Sale Objection Deadline.** Any objections to the Sale, including the sale of any Assets free and clear of Interests pursuant to section 363(f) of the Bankruptcy Code to a Successful Bidder(s) and/or a Backup Bidder(s), as applicable, and the entry of any Sale Order (the "**Sale Objection**"), must be in writing and specify the nature of such objection, (b) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of this Court, and (c) be filed with the Court and served **so as to be actually received by** counsel to the Debtors, White & Case LLP, 200 South Biscayne Boulevard, Suite 4900, Miami, FL 33131 Attn: John Cunningham (jcunningham@whitecase.com), Richard Kebrdle (rkebrdle@whitecase.com), Amanda Parra Criste (aparracriste@whitecase.com) and White & Case LLP, 1221 Avenue of the Americas, Attn: Philip M. Abelson (philip.abelson@whitecase.com) and John Ramirez (john.ramirez@whitecase.com); (ii) counsel to the DIP Note Purchasers and Ad Hoc Group at jjonas@brownrudnick.com and upinelo@brownrudnick.com; and (iii) counsel to the Indenture Trustee at kgwynne@reedsmith.com and meckard@reedsmith.com (collectively, the "**Objection Notice Parties**") **by November 5, 2021 at 4:00 p.m. (prevailing Eastern Time) (the "Sale Objection Deadline")**.

**Sale Hearing.** The Sale Hearing is currently scheduled to take place on **November 16, 2021 at 1:00 p.m. (prevailing Eastern Time)**, before the Honorable J. Kate Stickles, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street North, 3rd Floor, Courtroom 7, Wilmington, Delaware 19801, or conducted consistent with the procedures established pursuant to the Bankruptcy Court's standing orders regarding remote hearings in bankruptcy cases due to the COVID-19 pandemic. At the Sale Hearing, the Debtors will present the results of the Auction and certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that: (1) the Auction (if held) was conducted, and the Successful Bidder(s) and Backup Bidder(s) was selected, in accordance with the Bidding Procedures; (2) the Auction (if held) was fair in substance and procedure; (3) the Successful Bid(s) and Backup Bid(s) were each a Qualified Bid(s) as defined in the Bidding Procedures; and (4) consummation of any Sale as contemplated by the Successful Bid(s) or Backup Bid(s) in the Auction will provide the highest or otherwise best offer for the Assets subject to such Successful Bid(s) or Backup Bid(s) and is in the best interests of the Debtors and their estates. **The Sale Hearing may be continued to a later date by the Debtors by filing a notice of adjournment prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party.**

**Submitting a Bid and Obtaining Additional Information.** In order to receive access to diligence materials and submit an IOI or Bid, parties must submit to the Debtors (i) an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors, and (ii) reasonable evidence demonstrating the party's financial capability to consummate a sale transaction for the Assets as determined by the Debtors, after consultation with the Consultation Parties. Any party interested in submitting an IOI and Bid for the Assets should review the Bidding Procedures and Bid Procedures Order carefully and contact the Debtors or their advisors. **Failure to abide by the Bidding Procedures and the Bid Procedures Order may result in the rejection of your Bid.**

Copies of the Bid Procedures Motion, the Bid Procedures Order, the Bidding Procedures, the Stalking Horse Motion, the Stalking Horse Order, the Stalking Horse APA, and all other documents filed with the Court may be obtained from the Debtors' claims agent, Prime Clerk LLC, by (i) visiting the case website at http://cases.primeclerk.com/alphalatam, (ii) writing to alphainfo@primeclerk.com, or (iii) calling 877-379-2808 (toll-free in the U.S.) or 929-203-3303 (for parties outside the U.S.), or 01-800-5189924 (toll-free in Colombia). Spanish translations of several of these documents are available on the case website at http://cases.primeclerk.com/alphalatam.

**Consequences of Failing to Object. ANY PERSON OR ENTITY WHO FAILS TO FILE AND SERVE AN OBJECTION TO THE PROPOSED SALE TRANSACTION IN ACCORDANCE WITH THE BID PROCEDURES ORDER AND THIS NOTICE BY THE SALE OBJECTION DEADLINE, ABSENT FURTHER ORDER OF THE COURT, MAY BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE PROPOSED SALE AND TRANSFER OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL INTERESTS.**

**No Successor Liability. THE SALE WILL BE FREE AND CLEAR OF, AMONG OTHER THINGS, ANY CLAIM ARISING FROM ANY CONDUCT OF THE DEBTORS PRIOR TO THE CLOSING OF THE SALE, WHETHER KNOWN OR UNKNOWN, WHETHER DUE OR TO BECOME DUE, WHETHER ACCRUED, ABSOLUTE, CONTINGENT OR OTHERWISE, SO LONG AS SUCH CLAIM ARISES OUT OF OR RELATES TO EVENTS OCCURRING PRIOR TO THE CLOSING OF THE SALE. ACCORDINGLY, AS A RESULT OF THE SALE, ANY SUCCESSFUL BIDDER WILL NOT BE A SUCCESSOR TO ANY OF THE DEBTORS BY REASON OF ANY THEORY OF LAW OR EQUITY, AND THE SUCCESSFUL BIDDER WILL HAVE NO LIABILITY, EXCEPT AS EXPRESSLY PROVIDED IN THE SUCCESSFUL BIDDER'S ASSET PURCHASE AGREEMENT, FOR ANY LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AGAINST OR IN ANY OF THE DEBTORS UNDER ANY THEORY OF LAW, INCLUDING SUCCESSOR LIABILITY THEORIES.**

Dated: October 4, 2021, */s/ J. Zachary Noble*, **RICHARDS, LAYTON & FINGER, P.A.,** Mark D. Collins (No. 2981), John H. Knight (No. 3848), Brendan J. Schlauch (No. 6115), J. Zachary Noble (No. 6689), One Rodney Square, 920 North King Street, Wilmington, DE 19801, Telephone: (302) 651-7700, Facsimile: (302) 651-7701, collins@rlf.com, knight@rlf.com, schlauch@rlf.com, noble@rlf.com, *Co-Counsel to Debtors and Debtors in Possession* -and- **WHITE & CASE LLP,** John K. Cunningham (admitted *pro hac vice*), Richard S. Kebrdle (admitted *pro hac vice*), Amanda A. Parra Criste (admitted *pro hac vice*), 200 South Biscayne Boulevard, Suite 4900, Miami, FL 33131, Telephone: (305) 371-2700, jcunningham@whitecase.com, rkebrdle@whitecase.com, aparracriste@whitecase.com -and- Philip M. Abelson (admitted *pro hac vice*), John J. Ramirez (admitted *pro hac vice*), Brett L. Bakemeyer (admitted *pro hac vice*), 1221 Avenue of the Americas, New York, NY 10020, Telephone: (212) 819-8200, philip.abelson@whitecase.com, john.ramirez@whitecase.com, brett.bakemeyer@whitecase.com, *Co-Counsel to Debtors and Debtors in Possession*

[1] The Debtors in these cases, along with the last four digits of each Debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Alpha Latam Management, LLC (4610); Acsa Atento S.A.S. (766-6); Alpha Capital S.A.S. (717-5); AlphaCredit Latam S.A.S. (326-5); AlphaCredit Sudamérica, S. de R.L. (7287); AlphaDebit, S.A. de C.V. (3FI4); and Vive Créditos Kusida S.A.S. (013-4). Alpha Latam Management, LLC's registered address is 1209 N Orange Street, Wilmington, DE 19801. The main address of the other Debtors is Carrera 14 No. 94 – 81, Bogotá, Colombia.

[2] Capitalized terms not otherwise defined herein have the meanings ascribed in the Bid Procedures Order or the Stalking Horse Order (as defined below), as applicable.

[3] The Ad Hoc Group is a group of holders of senior notes due 2022 and 2025 represented by Brown Rudnick LLP. The DIP Note Purchasers are certain members of the Ad Hoc Group that provided a senior secured superpriority facility of US$45 million pursuant to a certain Secured Superpriority Debtor-in-Possession Note Purchase Agreement approved by the Bankruptcy Court.

# **EXHIBIT D**

## AFFIDAVIT

**STATE OF NEW JERSEY )**
**) ss:**
**CITY OF MONMOUTH JUNCTION, in the COUNTY OF MIDDLESEX )**

I, Tan Lo, being duly sworn, depose and say that I am the Advertising Clerk of the Publisher of THE WALL STREET JOURNAL, a daily national newspaper of general circulation throughout the United States, and that the notice attached to this Affidavit has been regularly published in THE WALL STREET JOURNAL for National distribution for

1 insertion(s) on the following date(s): OCT-08-2021;

ADVERTISER: BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC;

and that the foregoing statements are true and correct to the best of my knowledge.

TanL

Sworn to before me this
8 day of October 2021

Notary Public




ADVERTISEMENT

# The Marketplace

To advertise: 800-366-3975 or WSJ.com/classifieds

## CLASS ACTION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

SEB INVESTMENT MANAGEMENT AB, individually and on behalf of all others similarly situated
Plaintiffs,
v.
SYMANTEC CORPORATION and GREGORY S. CLARK,
Defendants.

Case No. 3:18-cv-02902-WHA
ECF CASE
Dept.: Courtroom 12, 19th Floor
Judge: Honorable William Alsup

**SUMMARY NOTICE OF (I) PROPOSED SETTLEMENT AND PLAN OF ALLOCATION; (II) SETTLEMENT HEARING; AND (III) MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

**To: All persons and entities that, during the period from May 11, 2017 to August 2, 2018, inclusive (the "Class Period"), purchased or otherwise acquired shares of the publicly traded common stock of Symantec Corporation ("Symantec") and were damaged thereby (the "Class").[1]**

**PLEASE READ THIS NOTICE CAREFULLY; YOUR RIGHTS WILL BE AFFECTED BY THE SETTLEMENT OF A CLASS ACTION LAWSUIT PENDING IN THIS COURT.**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Northern District of California, that the Court-appointed Class Representative, SEB Investment Management AB, on behalf of itself and the Court-certified Class, in the above-captioned securities class action (the "Action") has reached a proposed settlement of the Action with defendants Symantec Corporation, now known as NortonLifeLock Inc. ("Symantec") and Gregory S. Clark (collectively, "Defendants") for $70,000,000 in cash that, if approved, will resolve all claims in the Action.

A hearing will be held on February 10, 2022 at 11:00 a.m. Pacific Time, before the Honorable William Alsup, either in person at the United States District Court for the Northern District of California, San Francisco Courthouse, Courtroom 12 - 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, or by telephone or videoconference (in the discretion of the Court) to determine: (i) whether the proposed Settlement should be approved as fair, reasonable, and adequate; (ii) whether the Action should be dismissed with prejudice against Defendants, and the releases specified and described in the Stipulation and Agreement of Settlement dated June 8, 2021 should be granted; (iii) whether the proposed Plan of Allocation should be approved as fair and reasonable; and (iv) whether Lead Counsel's application for an award of attorneys' fees and payment of expenses should be approved.

Lead Counsel, which has been prosecuting the Action on a wholly contingent basis, has not received any payment of attorneys' fees for their representation of the Class and have advanced the funds to pay expenses necessarily incurred to prosecute the Action. Lead Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed 19% of the Settlement Fund, or $13.3 million, plus interest. In addition, Lead Counsel will apply for payment of Litigation Expenses in connection with the institution, prosecution, and resolution of the Action in an amount not to exceed $2.5 million. The total Notice and Administration Costs are estimated to be $415,000. Any fees and expenses awarded by the Court will be paid from the Settlement Fund. Class Members are not personally liable for any such fees or expenses. If the Court approves Lead Counsel's fee and expense application, and based on the current estimate of Notice and Administration Costs, the portion of the Settlement Fund that will be distributed to Class Members will be approximately $53,785,000, plus interest accrued.

**If you purchased or otherwise acquired Symantec common stock during the Class Period and are a member of the Class, your rights will be affected by the pending Action and the Settlement, and you may be entitled to share in the Net Settlement Fund**. If you have not yet received the full printed Notice of (I) Proposed Settlement and Plan of Allocation; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses (the "Settlement Notice") and the Claim Form, you may obtain copies of these documents by contacting the Claims Administrator at *Symantec Securities Litigation*, c/o A.B. Data, P.O. Box 173106, Milwaukee, WI 53217, 1-800-949-0206, info@SymantecSecuritiesLitigation.com. Copies of the Settlement Notice and Claim Form can also be downloaded from the website for the Action, www.SymantecSecuritiesLitigation.com.

If you are a Class Member, in order to be eligible to receive a payment under the proposed Settlement, you must submit a Claim Form ***online or postmarked*** **no later than 28 days after the Court approves the Settlement. The deadline may be as early as March 10, 2022**. The Settlement website, www.SymantecSecuritiesLitigation.com, will be updated to inform Class Members of the approval of the Settlement, if and when that occurs. If you are a Class Member and do not submit a proper Claim Form, you will not be eligible to share in the distribution of the net proceeds of the Settlement but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

If you are a member of the Class and wish to exclude yourself from the Class, you must submit a request for exclusion such that it is ***received*** **no later than January 13, 2022 at midnight**, in accordance with the instructions set forth in the Notice. If you properly exclude yourself from the Class, you will not be bound by any judgments or orders entered by the Court in the Action and you will not be eligible to share in the proceeds of the Settlement or object to the Settlement.

Any objections to the proposed Settlement, the proposed Plan of Allocation, and/or Class Counsel's application for attorneys' fees and payment of expenses, must be filed with the Court and delivered to Class Counsel and counsel for Defendants such that they are ***received*** **no later than January 13, 2022 at midnight**, in accordance with the instructions set forth in the Settlement Notice.

**Please do not contact the Court, the Clerk's office, Symantec, any other Defendants in the Action, or their counsel regarding this notice. All questions about this notice, the proposed Settlement, or your eligibility to participate in the Settlement should be directed to the Claims Administrator or Class Counsel.**

Requests for the Settlement Notice and Claim Form should be made to:

*Symantec Securities Litigation*
c/o A.B. Data, Ltd.
P.O. Box 173106
Milwaukee, WI 53217
1-800-949-0206
info@SymantecSecuritiesLitigation.com
www.SymantecSecuritiesLitigation.com

Inquiries, other than requests for the Settlement Notice and Claim Form, may be made to Class Counsel:

**Bernstein Litowitz Berger & Grossmann LLP**
Jeremy P. Robinson, Esq.
1251 Avenue of the Americas
New York, NY 10020
1-800-380-8496
settlements@blbglaw.com

By Order of the Court

[1] Certain persons and entities are excluded from the Class by definition and others are excluded pursuant to request. The full definition of the Class including a complete description of who is excluded from the Class is set forth in the full Settlement Notice referred to below.

## BANKRUPTCIES

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

In re: BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]
Debtors.

Chapter 11
Case No. 20-10343 (LSS)
(Jointly Administered)

**Hearing Date: January 24, 2022, at 10:00 a.m. (ET)**
**Objection Deadline: January 7, 2022 at 4:00 p.m. (ET)**

**NOTICE OF (I) DEADLINE FOR CASTING VOTES TO ACCEPT OR REJECT PROPOSED MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, (II) HEARING TO CONSIDER CONFIRMATION OF PLAN, AND (III) RELATED MATTERS**

**PLEASE TAKE NOTICE THAT** on September 30, 2021, the above-captioned debtors and debtors-in-possession (together, the "Debtors") filed:

- the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 6443] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan");[2] and
- the *Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 6445] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").

The Plan contains releases of the Debtors and certain third parties and related injunction provisions. These provisions could release and prohibit holders of Abuse Claims from filing lawsuits and asserting such claims against the BSA and certain non-debtor third parties, including Local Councils, Contributing Chartered Organizations, including TCJC, Settling Insurance Companies, including Hartford, and Participating Chartered Organizations, solely with respect to Post-1975 Chartered Organization Abuse Claims. Chartered Organizations are organizations that sponsored a Scouting unit, such as a troop or pack. The Plan provides a mechanism by which Abuse Claims against the BSA and certain-debtor third parties, including the Local Councils, Contributing Chartered Organizations, including TCJC, Settling Insurance Companies, including Hartford, and Participating Chartered Organizations, solely with respect to Post-1975 Chartered Organization Abuse Claims, will be channeled to a trust established pursuant to section 105(a) of the Bankruptcy Code.

Each Chartered Organization will automatically be deemed to be a Participating Chartered Organization under the Plan unless it (1) submits the opt out election form on or before the Plan Objection Deadline, (2) objects to confirmation of the Plan in accordance with the *Notice of Hearing to Consider Confirmation of Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, attached as Exhibit 3 to the Solicitation Procedures Order and available at https://omniagentsolutions.com/BSA on or before the Plan Objection Deadline, or (3) is a debtor in bankruptcy as of the date of confirmation of the Plan. Participating Chartered Organizations shall receive certain limited protections under the Channeling Injunction, including the channeling of all Abuse Claims against such Participating Chartered Organizations that relate to Abuse alleged to have first occurred on or after January 1, 1976, in exchange for contribution to the Settlement Trust of Participating Chartered Organizations' rights under Abuse Insurance Policies issued on or after January 1, 1976.

Confirmation of the Plan is supported by the Debtors, the Future Claimants' Representative, the Creditors' Committee, the Coalition, and the Ad Hoc Committee of Local Councils. You should carefully review the Plan and the applicable release, injunction, and related provisions at https://omniagentsolutions.com/BSA.

**PLEASE TAKE FURTHER NOTICE THAT:**

1. On September 30, 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. 6438] (the "Solicitation Procedures Order") approving the Disclosure Statement. The Solicitation Procedures Order, among other things, authorizes the Debtors to solicit votes to accept or reject the Plan and establishes procedures related thereto (the "Solicitation Procedures").

2. The Bankruptcy Court has scheduled a hearing to consider whether to confirm the Plan beginning on **January 24, 2022 at 10:00 a.m. (Eastern Time)** (the "Confirmation Hearing"), which shall continue to the extent necessary on such dates as the Bankruptcy Court may designate. The Confirmation Hearing will be held before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, at the Bankruptcy Court, located at 824 North Market Street, Sixth Floor, Courtroom No. 2, Wilmington, Delaware 19801.

3. Pursuant to the Solicitation Procedures Order, the Bankruptcy Court approved the Solicitation Procedures, which are attached to the Solicitation Procedures Order as Exhibit 1. Holders of Claims in Class 3A (2010 Credit Facility Claims), Class 3B (2019 RCF Claims), Class 4A (2010 Bond Claims), Class 4B (2012 Bond Claims), Class 5 (Convenience Claims), Class 6 (General Unsecured Claims), Class 7 (Non-Abuse Litigation Claims), Class 8 (Direct Abuse Claims), and Class 9 (Indirect Abuse Claims) (collectively, the "Voting Classes") are entitled to receive a ballot for casting a vote on the Plan (a "Ballot"). Holders of Claims and Interests in all other Classes under the Plan are presumed to accept or are deemed to reject the Plan. For a vote to accept or reject the Plan to be counted, a Ballot must be completed and returned in accordance with the instructions provided on the **Ballot so that it is received by December 14, 2021 at 4:00 p.m. (Eastern Time)** (the "Voting Deadline").

4. Pursuant to the Plan, holders of Claims in the Voting Classes are entitled to vote on account of their respective Claims. If you have not received a Ballot and are entitled to vote on the Plan, you may request a Ballot and voting instructions from Omni Agent Solutions (the "Solicitation Agent"), by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA, and submit your Ballot as set forth above so that it is received by the Voting Deadline.

5. Pursuant to the Solicitation Procedures, all Direct and Indirect Abuse Claims in Class 8 and Class 9 of the Plan will be temporarily allowed in the amount of $1.00 in the aggregate per claimant or as otherwise ordered by the Bankruptcy Court, solely for purposes of voting to accept or reject the Plan and not for any other purpose. If you have filed a Proof of Claim that is subject to an objection other than a "reclassify" or "reduce and allow" objection that is filed with the Bankruptcy Court on or before the Solicitation Date (a "Disputed Claim") and seek to challenge the disallowance or estimation of your Disputed Claim for voting purposes, you must file with the Bankruptcy Court a motion for an order, pursuant to Bankruptcy Rule 3018(a), temporarily allowing such claim for purposes of voting to accept or reject the Plan (a "Rule 3018(a) Motion"). Any Rule 3018(a) Motion must be filed with the Bankruptcy Court and served on the Debtors on or before **November 1, 2021**. If a holder of a Disputed Claim files a timely Rule 3018(a) Motion, such holder's Ballot shall not be counted unless a Resolution Event occurs with respect to such Disputed Claim prior to **December 14, 2021** or as otherwise ordered by the Bankruptcy Court.

6. **The Plan proposes certain releases and injunctions in furtherance of the Plan. The Plan proposes a Channeling Injunction that permanently channels all Abuse Claims against the Debtors and the Protected Parties and Limited Protected Parties to a Settlement Trust established pursuant to section 105(a) of the Bankruptcy Code. In addition, the Plan proposes an injunction that permanently enjoins the pursuit of any claim against or interest in the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property to the extent such claim or interest has been discharged, released, waived, settled, or deemed satisfied in accordance with the Plan (other than the enforcement of any right pursuant to the Plan). For the specific terms and conditions of all the releases and injunctions provided for in the Plan, and the precise scope of the Claims and Demands to be channeled, please refer to the specific terms of the Plan, which can be obtained as described below.**

7. If the Plan is approved by the Bankruptcy Court, all current and future holders of Abuse Claims against the Debtors can request and receive money only from the Settlement Trust. You should read the Plan and Disclosure Statement carefully for details about how the Plan, if approved, will affect your rights.

8. The Bankruptcy Court has issued the Solicitation Procedures Order describing how to vote on the Plan, and the Disclosure Statement contains information that will help you decide how to vote. Your legal rights will be affected if the Plan is approved.

9. Under the Solicitation Procedures approved by the Bankruptcy Court, attorneys for holders of Direct Abuse Claims may vote on the Plan on behalf of their clients, if authorized by each client. If you are unsure whether your attorney is authorized to vote on your behalf, please contact your attorney.

10. If you would like to object to the Plan, you may do so by filing your objection no later than **January 7, 2022 at 4:00 p.m. (Eastern Time)** (the "Plan Objection Deadline"). Any objections or responses to confirmation of the Plan, must: (a) be in writing; (b) state the name and address of the objecting party and the nature and amount of the Claim of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (d) be filed with the Bankruptcy Court, 824 North Market Street, Third Floor, Wilmington, Delaware 19801 together with proof of service **on or before the Plan Objection Deadline**, and served so as to be actually received by the parties listed in the Confirmation Hearing Notice (the "Notice Parties") on or before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email to the Notice Parties.

**OBJECTIONS NOT TIMELY FILED AND SERVED STRICTLY AS PROVIDED HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE.**

If you would like to review the Plan, the Disclosure Statement, the Solicitation Procedures Order, or other documents related to the Plan free of charge, you may obtain these documents from the Solicitation Agent by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA. You may also access from these materials for a fee via PACER at http://www.deb.uscourts.gov/.

Dated: October 8, 2021, WHITE & CASE LLP, Jessica C. Lauria (admitted *pro hac vice*), 1221 Avenue of the Americas, New York, New York 10020, Telephone: (212) 819-8200, Email: jessica.lauria@whitecase.com -and- WHITE & CASE LLP, Michael C. Andolina (admitted *pro hac vice*), Matthew E. Linder (admitted *pro hac vice*), Laura E. Baccash (admitted *pro hac vice*), Blair M. Warner (admitted *pro hac vice*), 111 South Wacker Drive, Chicago, Illinois 60606, Telephone: (312) 881-5400, Email: mandolina@whitecase.com, mlinder@whitecase.com, laura.baccash@whitecase.com, blair.warner@whitecase.com -and- MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Derek C. Abbott (No. 3376), Andrew R. Remming (No. 5120), Paige N. Topper (No. 6470), 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347, Telephone: (302) 658-9200, Email: dabbott@morrisnichols.com, aremming@morrisnichols.com, ptopper@morrisnichols.com, *Attorneys for the Debtors and Debtors in Possession*

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Solicitation Procedures (as defined below), as applicable.

## BUSINESS OPPORTUNITIES

**Napa Valley Brand**
Iconic / Est. 20 Years
Includes All Trademarks
Wine / Food / Merchandise
Owners Retiring
Cash Flow $830K
Asking $1.725M
Gary.Wofford@raincatcher.com

**REDUCE YOUR TAX BY ONE HALF**
I have $6 Million in loss carryforward for sale which will reduce your tax in half.
Utilize Part or All 6 million!
Your income must come from a LLC or a PLLC.
For more info: Call Dave at 702-985-1707

## PUBLIC NOTICES

**ADVERTISEMENT OF HEARING OF ORIGINATING NOTICE OF MOTION**

**THE HIGH COURT OF IRELAND**
**COMMERCIAL**
**Record No. 2021/245 COS**

**IN THE MATTER OF DOLE PLC**

**AND IN THE MATTER OF THE COMPANIES ACT 2014**

**AND IN THE MATTER OF A PROPOSED REDUCTION OF CAPITAL PURSUANT TO SECTIONS 84 TO 86 OF THE COMPANIES ACT 2014**

**NOTICE IS HEREBY GIVEN** that an Originating Notice of Motion issued out of the High Court of Ireland (the **"Court"**) on 29 September 2021, seeking the Court's confirmation of the special resolution of Dole plc (the **"Company"**) passed on 2 July 2021 approving the reduction of the company capital of the Company by the cancellation of the amount of US$428,197,201.38 standing to the balance of the Company's share premium account, being the amount recorded as share premium in the company capital of the Company as a consequence of the ordinary shares which were issued in accordance with the terms and conditions set forth in the transaction agreement dated 16 February 2021 (as amended) by and among Total Produce plc, Total Produce USA Holdings Inc., the Company, TP-Dole Merger Sub, LLC, DFC Holdings, LLC, The Murdock Group, LLC, Dolicious Corporation and Castle & Cooke Holdings, Inc. (including the share premium resulting from the initial public offering of the Company's ordinary shares on the New York Stock Exchange), or such lesser amount as the Court may determine, is directed to be heard in the Commercial List of the Court, sitting at the Four Courts, Inns Quay, Dublin 7, Ireland at 2:00 p.m. (Irish time) on 1 November 2021 (the **"Hearing"**).

Any creditor or shareholder of the Company wishing to support or oppose the making of any order at the Hearing (an **"Interested Party"**) that wishes to obtain a copy of the Originating Notice of Motion and grounding affidavit should contact the Solicitors for the Company at the address or email addresses below. Any Interested Party may appear at the Hearing personally or be represented by a solicitor or by counsel. Any Interested Party intending to so appear should give notice in writing to the Solicitors for the Company by no later than 5:30 p.m. (Irish time) on 28 October 2021, and any affidavit in support of any such appearance should be filed with the Central Office of the Court, and served on the Solicitors for the Company, by no later than 5:30 p.m. (Irish time) on 28 October 2021.

8 October 2021

**ARTHUR COX LLP**
Solicitors for the Company
10 Earlsfort Terrace
Dublin 2
D02 T380
Ireland
Email: connor.manning@arthurcox.com / domhnall.breatnach@arthurcox.com
(Ref: C2M/DTB)

**ADVERTISEMENT OF HEARING OF ORIGINATING NOTICE OF MOTION**

**THE HIGH COURT OF IRELAND**
**COMMERCIAL**
**Record No. 2021/246 COS**

**IN THE MATTER OF FLUTTER ENTERTAINMENT PLC**

**AND IN THE MATTER OF THE COMPANIES ACT 2014**

**AND IN THE MATTER OF A PROPOSED REDUCTION OF CAPITAL PURSUANT TO SECTIONS 84 TO 86 OF THE COMPANIES ACT 2014**

**NOTICE IS HEREBY GIVEN** that an Originating Notice of Motion issued out of the High Court of Ireland (the **"Court"**) on 29 September 2021, seeking the Court's confirmation of the special resolution of Flutter Entertainment plc (the **"Company"**) passed at the annual general meeting of the Company held on 29 April 2021 approving the reduction of the company capital of the Company by the cancellation of the sum of £10,000,000,000 of undenominated capital standing to the credit of the Company's share premium account, or such lesser amount as the Court may determine, is directed to be heard in the Commercial List of the Court, sitting at the Four Courts, Inns Quay, Dublin 7, Ireland at 11:00 a.m. (Irish time) on 3 November 2021 (the **"Hearing"**).

Any creditor or shareholder of the Company wishing to support or oppose the making of any order at the Hearing (an **"Interested Party"**) that wishes to obtain a copy of the Originating Notice of Motion and grounding affidavit should contact the Solicitors for the Company at the address or email addresses below. Any Interested Party may appear at the Hearing personally or be represented by a solicitor or by counsel. Any Interested Party intending to so appear should give notice in writing to the Solicitors for the Company by no later than 5:30 p.m. (Irish time) on 29 October 2021, and any affidavit in support of any such appearance should be filed with the Central Office of the Court, and served on the Solicitors for the Company, by no later than 5:30 p.m. (Irish time) on 29 October 2021.

8 October 2021

**ARTHUR COX LLP**
Solicitors for the Company
10 Earlsfort Terrace
Dublin 2
D02 T380
Ireland
Email: david.vos@arthurcox.com / domhnall.breatnach@arthurcox.com
(Ref: DV/DTB)

**THE HIGH COURT OF IRELAND**
**COMMERCIAL**
**2021 No. 225 COS**

**IN THE MATTER OF STRONGBRIDGE BIOPHARMA PLC**

**AND IN THE MATTER OF THE COMPANIES ACT 2014**

**AND IN THE MATTER OF A PROPOSAL FOR A SCHEME OF ARRANGEMENT PURSUANT TO PART 9, CHAPTER 1 OF THE COMPANIES ACT 2014**

**AND IN THE MATTER OF THE IRISH TAKEOVER PANEL ACT 1997**

**NOTICE IS HEREBY GIVEN** that an Order of the High Court of Ireland (the "Court") made on 5 October 2021 (the "Order") sanctioning a scheme of arrangement between Strongbridge Biopharma plc (the "Company") and its shareholders (the "Scheme"), and confirming a special resolution approving the reduction of the company capital of the Company, by the reduction of the issued capital of the Company by cancelling and extinguishing all the Cancellation Shares (as defined in the Scheme) but without thereby reducing the authorised share capital of the Company, together with the minute approved by the Court, was registered by the Registrar of Companies on 5 October 2021. This notice is given in compliance with the Order.

8 October 2021

**ARTHUR COX LLP**
Solicitors for the Company
Ten Earlsfort Terrace
Dublin 2
D02 T380
Ireland

THE WALL STREET JOURNAL.
THE MARKETPLACE
ADVERTISE TODAY
(800) 366-3975
For more information visit:
wsj.com/classifieds

© 2021 Dow Jones & Company, Inc. All Rights Reserved.
DOW JONES

# BUSINESS WATCH

ROYAL DUTCH SHELL

## Company Details Hit From Hurricane Ida

**Royal Dutch Shell** PLC detailed Hurricane Ida's impact to its operations and said it expects a cash boost from high global energy prices in the third quarter.

The Anglo-Dutch energy giant said Hurricane Ida is expected to cause losses of around $400 million to its adjusted earnings and cash flow from operations in the third quarter.

The hurricane damaged a platform which transfers oil and natural gas from Shell's Mars corridor to onshore terminals. Repairs are expected to keep the platform offline until the end of the year, the company says, which has a knock-on impact to production from the facilities it connects to.

Shell also said it expects its cash flow from Integrated Gas operations will be boosted by "large variation margin inflows on the back of the prevailing gas and electricity price environment."

*—Sabela Ojea*

HELEN OF TROY

## Profit Falls but Tops Analyst Expectations

**Helen of Troy** Ltd. said its profit fell in the fiscal second quarter as sales in its health and home segment declined because of packaging compliance concerns from the U.S. Environmental Protection Agency and related stop-shipment actions.

Shares of the company rose 5.9% Thursday as its results and raised outlook surpassed analyst expectations.

Helen of Troy, which makes household and personal-care products, on Thursday posted earnings of $51.3 million in the three months ended Aug. 31, compared with $87.3 million in the year-ago period.

Revenue fell to $475.2 million from $530.9 million, hurt in part by the sale of the North American personal-care business in the quarter, the company said.

Helen of Troy said it booked additional compliance costs of $3 million in the quarter after it was in discussions with the EPA regarding the compliance of packaging claims on certain products in the air and water filtration categories and some humidifier products that are sold in the U.S.

The company said it largely resolved the matter with changes to product labeling and implemented repackaging plans for the bulk of affected products.

*—Dave Sebastian*

UNITED AIRLINES HOLDINGS

## Carrier to Expand Its Flight Schedule

**United Airlines Holdings** Inc. will expand its flight schedule closer to pre-pandemic levels to meet demand for holiday travel, the Chicago-based airline said Thursday.

In December, United will fly more than 3,500 domestic flights daily, about 91% of its domestic capacity from 2019.

"We're seeing a lot of pent-up demand in our data," United planning executive Ankit Gupta said.

The airline plans to expand flying from the Midwest, adding flights to Las Vegas and Phoenix from Cleveland and a route between Indianapolis and Orlando.

There will also be resumed service to Fort Myers, Fla., from four Midwestern cities, which will include Columbus, Ohio and Milwaukee.

Adding to its ski-destination business, United will introduce flights to Aspen, Colo., from Orange County, Calif.

*—Matt Grossman*

TILRAY

## Loss Widens as Sales Of Cannabis Climb

**Tilray** Inc. on Thursday posted a wider loss in its latest quarter as cannabis sales improved.

The company reported a loss of $34.6 million in the fiscal first quarter, compared with $21.7 million a year earlier. Higher transaction and amortization costs contributed to the wider loss, the company said.

Revenue rose 43% to $168 million.

Net revenue from cannabis climbed 38% to $70 million, the company said. Tilray also posted $15 million in alcohol net sales and $15 million in revenue from its wellness business.

*—Matt Grossman*

CARNIVAL

## Cruise Line Lays Out More Restart Plans

**Carnival** Corp.'s flagship line laid out restart plans that would bring its U.S.-based operations to 90% of its U.S.-based capacity while at the same time canceling certain cruises.

Carnival Cruise Line says Carnival Sunshine will restart from Charleston, S.C., on Jan. 13 and Carnival Liberty from Port Canaveral, Fla., on Feb. 11.

The cruise line says it plans to return its entire U.S. fleet to operation by spring 2022. Nearly 100 cruises and 237,000 passengers have sailed since July, it says.

The line says 17 ships are scheduled to be operating by year-end, and that cruises on its three remaining U.S.-based ships—Carnival Ecstasy from Jacksonville, Fla.; Carnival Paradise from Tampa, Fla.; and Carnival Valor from Mobile, Ala.—have been canceled through February.

In Australia, the brand says it is also canceling Carnival Splendor from Sydney through Feb. 7, and Carnival Spirit from Brisbane through Feb. 20.

*—Dave Sebastian*

E. JASON WAMBSGANS/TNS/ZUMA PRESS

**United plans to expand capacity to meet demand for holiday travel.**

# Motus Gets Added Backing

By LAURA COOPER

Workforce expense reimbursement software provider **Motus LLC** will get an additional private-equity owner as **Permira** joins longtime investor **Thoma Bravo** in backing the company.

Motus, which focuses on mobile workforces, has seen an uptick in sales as more people work from home and offices adopt hybrid work models. Although Permira and Thoma Bravo wouldn't disclose a value of the deal, they said that Motus generates annual recurring revenue of more than $120 million.

Boston-based Motus offers software that helps companies manage expenses around the use of vehicles, mobile devices and computers, as well as reimbursements for outlays tied to remote work, relocation, travel and temporary assignments.

The company was founded in 2004 and serves over 280,000 users for clients including Papa John's International Inc., Coca-Cola Bottling Co., United Airlines Holdings Inc. and Kellogg Co.

Thoma Bravo invested in Motus in 2018, merging it with competitor Runzheimer. Since then, the combined entity has doubled its revenue growth through cross-selling new products and gaining customers, according to A.J. Rohde, a senior partner at Thoma Bravo.

After three years of investment, Thoma decided to find a fellow private-equity partner to help it continue expanding the company, Mr. Rohde said. He added that Thoma Bravo's investment sits in an older fund, and that Motus needed a larger capital base to help it expand organically and through mergers and acquisitions.

# EXHIBIT E

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND | Case No. 20-10343 (LSS) |
| DELAWARE BSA, LLC, | (Jointly Administered)<br>**Hearing Date: January 24, 2022, at 10:00 a.m. (ET)** |
| Debtors. | **Objection Deadline: January 7, 2022 at 4:00 p.m. (ET)** |

# CERTIFICATE OF PUBLICATION

I, Chris Bailey, being duly sworn, hereby certify that (a) I am a representative of *Prison Legal News*, and (b) that the advertisement of which the annexed is a copy was published in:

***Prison Legal News*** for full circulation in the **November, 2021** issue

I certify under penalty of perjury that the foregoing is true and correct to the best of information, knowledge and belief.

Executed on 11/15/2021 at Lake Worth Beach, FL
(date) (city, state)

X Christine Bailey
(Signature)

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| In re: BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] Debtors. | Chapter 11<br>Case No. 20-10343 (LSS)<br>(Jointly Administered) |
|---|---|

**Hearing Date: January 24, 2022, at 10:00 a.m. (ET)**
**Objection Deadline: January 7, 2022 at 4:00 p.m. (ET)**

**NOTICE OF (I) DEADLINE FOR CASTING VOTES TO ACCEPT OR REJECT PROPOSED MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, (II) HEARING TO CONSIDER CONFIRMATION OF PLAN, AND (III) RELATED MATTERS**

**PLEASE TAKE NOTICE THAT** on September 30, 2021, the above-captioned debtors and debtors-in-possession (together, the "Debtors") filed:

- the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 6443] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan");[2] and
- the *Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 6445] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").

The Plan contains releases of the Debtors and certain third parties and related injunction provisions. These provisions could release and prohibit holders of Abuse Claims from filing lawsuits and asserting such claims against the BSA and certain non-debtor third parties, including Local Councils, Contributing Chartered Organizations, including TCJC, Settling Insurance Companies, including Hartford, and Participating Chartered Organizations, solely with respect to Post-1975 Chartered Organization Abuse Claims. Chartered Organizations are organizations that sponsored a Scouting unit, such as a troop or pack. The Plan provides a mechanism by which Abuse Claims against the BSA and certain-debtor third parties, including the Local Councils, Contributing Chartered Organizations, including TCJC, Settling Insurance Companies, including Hartford, and Participating Chartered Organizations, solely with respect to Post-1975 Chartered Organization Abuse Claims, will be channeled to a trust established pursuant to section 105(a) of the Bankruptcy Code.

Each Chartered Organization will automatically be deemed to be a Participating Chartered Organization under the Plan unless it (1) submits the opt out election form on or before the Plan Objection Deadline, (2) objects to confirmation of the Plan in accordance with the *Notice of Hearing to Consider Confirmation of Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, attached as Exhibit 3 to the Solicitation Procedures Order and available at https://omniagentsolutions.com/BSA on or before the Plan Objection Deadline, or (3) is a debtor in bankruptcy as of the date of confirmation of the Plan. Participating Chartered Organizations shall receive certain limited protections under the Channeling Injunction, including the channeling of all Abuse Claims against such Participating Chartered Organizations that relate to Abuse alleged to have first occurred on or after January 1, 1976, in exchange for contribution to the Settlement Trust of Participating Chartered Organizations' rights under Abuse Insurance Policies issued on or after January 1, 1976.

Confirmation of the Plan is supported by the Debtors, the Future Claimants' Representative, the Creditors' Committee, the Coalition, and the Ad Hoc Committee of Local Councils. You should carefully review the Plan and the applicable release, injunction, and related provisions at https://omniagentsolutions.com/BSA.

**PLEASE TAKE FURTHER NOTICE THAT:**

1. On September 30, 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. 6438] (the "Solicitation Procedures Order") approving the Disclosure Statement. The Solicitation Procedures Order, among other things, authorizes the Debtors to solicit votes to accept or reject the Plan and establishes procedures related thereto (the "Solicitation Procedures").

2. The Bankruptcy Court has scheduled a hearing to consider whether to confirm the Plan beginning on **January 24, 2022 at 10:00 a.m. (Eastern Time)** (the "Confirmation Hearing"), which shall continue to the extent necessary on such dates as the Bankruptcy Court may designate. The Confirmation Hearing will be held before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, at the Bankruptcy Court, located at 824 North Market Street, Sixth Floor, Courtroom No. 2, Wilmington, Delaware 19801.

3. Pursuant to the Solicitation Procedures Order, the Bankruptcy Court approved the Solicitation Procedures, which are attached to the Solicitation Procedures Order as Exhibit 1. Holders of Claims in Class 3A (2010 Credit Facility Claims), Class 3B (2019 RCF Claims), Class 4A (2010 Bond Claims), Class 4B (2012 Bond Claims), Class 5 (Convenience Claims), Class 6 (General Unsecured Claims), Class 7 (Non-Abuse Litigation Claims), Class 8 (Direct Abuse Claims), and Class 9 (Indirect Abuse Claims) (collectively, the "Voting Classes") are entitled to receive a ballot for casting a vote on the Plan (a "Ballot"). Holders of Claims and Interests in all other Classes under the Plan are presumed to accept or are deemed to reject the Plan. For a vote to accept or reject the Plan to be counted, a Ballot must be completed and returned in accordance with the instructions provided on the **Ballot so that it is received by December 14, 2021 at 4:00 p.m. (Eastern Time)** (the "Voting Deadline").

4. Pursuant to the Plan, holders of Claims in the Voting Classes are entitled to vote on account of their respective Claims. If you have not received a Ballot and are entitled to vote on the Plan, you may request a Ballot and voting instructions from Omni Agent Solutions (the Solicitation Agent"), by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA, and submit your Ballot as set forth above so that it is received by the Voting Deadline.

5. Pursuant to the Solicitation Procedures, all Direct and Indirect Abuse Claims in Class 8 and Class 9 of the Plan will be temporarily allowed in the amount of $1.00 in the aggregate per claimant or as otherwise ordered by the Bankruptcy Court, solely for purposes of voting to accept or reject the Plan and not for any other purpose. If you have filed a Proof of Claim that is subject to an objection other than a "reclassify" or "reduce and allow" objection that is filed with the Bankruptcy Court on or before the Solicitation Date (a "Disputed Claim") and seek to challenge the disallowance or estimation of your Disputed Claim for voting purposes, you must file with the Bankruptcy Court a motion for an order, pursuant to Bankruptcy Rule 3018(a), temporarily allowing such claim for purposes of voting to accept or reject the Plan (a "Rule 3018(a) Motion"). Any Rule 3018(a) Motion must be filed with the Bankruptcy Court and served on the Debtors on or before **November 1, 2021**. If a holder of a Disputed Claim files a timely Rule 3018(a) Motion, such holder's Ballot shall not be counted unless a Resolution Event occurs with respect to such Disputed Claim prior to **December 14, 2021** or as otherwise ordered by the Bankruptcy Court.

6. **The Plan proposes certain releases and injunctions in furtherance of the Plan. The Plan proposes a Channeling Injunction that permanently channels all Abuse Claims against the Debtors and the Protected Parties and Limited Protected Parties to a Settlement Trust established pursuant to section 105(a) of the Bankruptcy Code. In addition, the Plan proposes an injunction that permanently enjoins the pursuit of any claim against or interest in the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property to the extent such claim or interest has been discharged, released, waived, settled, or deemed satisfied in accordance with the Plan (other than the enforcement of any right pursuant to the Plan). For the specific terms and conditions of all the releases and injunctions provided for in the Plan, and the precise scope of the Claims and Demands to be channeled, please refer to the specific terms of the Plan, which can be obtained as described below.**

7. If the Plan is approved by the Bankruptcy Court, all current and future holders of Abuse Claims against the Debtors can request and receive money only from the Settlement Trust. You should read the Plan and Disclosure Statement carefully for details about how the Plan, if approved, will affect your rights.

8. The Bankruptcy Court has issued the Solicitation Procedures Order describing how to vote on the Plan, and the Disclosure Statement contains information that will help you decide how to vote. Your legal rights will be affected if the Plan is approved.

9. Under the Solicitation Procedures approved by the Bankruptcy Court, attorneys for holders of Direct Abuse Claims may vote on the Plan on behalf of their clients, if authorized by each client. If you are unsure whether your attorney is authorized to vote on your behalf, please contact your attorney.

10. If you would like to object to the Plan, you may do so by filing your objection no later than **January 7, 2022 at 4:00 p.m. (Eastern Time)** (the "Plan Objection Deadline"). Any objections or responses to confirmation of the Plan, must: (a) be in writing; (b) state the name and address of the objecting party and the nature and amount of the Claim of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (d) be filed with the Bankruptcy Court, 824 North Market Street, Third Floor, Wilmington, Delaware 19801 together with proof of service **on or before the Plan Objection Deadline**, and served so as to be actually received by the parties listed in the Confirmation Hearing Notice (the "Notice Parties") on or before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email to the Notice Parties.

**OBJECTIONS NOT TIMELY FILED AND SERVED STRICTLY AS PROVIDED HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE.**

If you would like to review the Plan, the Disclosure Statement, the Solicitation Procedures Order, or other documents related to the Plan free of charge, you may obtain these documents from the Solicitation Agent by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA. You may also access from these materials for a fee via PACER at http://www.deb.uscourts.gov/.

Dated: October 8, 2021, WHITE & CASE LLP, Jessica C. Lauria (admitted *pro hac vice*), 1221 Avenue of the Americas, New York, New York 10020, Telephone: (212) 819-8200, Email: jessica.lauria@whitecase.com -and- WHITE & CASE LLP, Michael C. Andolina (admitted *pro hac vice*), Matthew E. Linder (admitted *pro hac vice*), Laura E. Baccash (admitted *pro hac vice*), Blair M. Warner (admitted *pro hac vice*), 111 South Wacker Drive, Chicago, Illinois 60606, Telephone: (312) 881-5400, Email: mandolina@whitecase.com, mlinder@whitecase.com, laura.baccash@whitecase.com, blair.warner@whitecase.com -and- MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Derek C. Abbott (No. 3376), Andrew R. Remming (No. 5120), Paige N. Topper (No. 6470), 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347, Telephone: (302) 658-9200, Email: dabbott@morrisnichols.com, aremming@morrisnichols.com, ptopper@morrisnichols.com, *Attorneys for the Debtors and Debtors in Possession*

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Solicitation Procedures (as defined below), as applicable.

tion. "Again, detention officers used force against Simmons as they handcuffed him and escorted him out of the cell block. At this time, Simmons suffered multiple blows to his head." None of the officers documented the use of force.

Simmons had cuts on his face. The storm had caused a power outage, so the nurse ordered an X-ray be taken once power was restored. Once the power was back on, X-rays were never done.

The subsequent investigation found that no hourly checks were done as required by the sheriff. By noon the next day, Simmons was found unresponsive in his cell. He was taken to a hospital where he was declared dead.

The following guards were fired: Garland Barrett, Patricia Brummett, Joshua Dixon, Alysheia Mallety, Israel Martinez, Eric Morales, Jacob Ramirez, Alfredo Rodriguez, Daniel Rodriguez, Dana Walker, and Chadwick Westmoreland.

The suspensions include: Antonio Barrera, suspended for 10 days and will serve 180 days probation; Benny Galindez, suspended for three days and will serve 90 days probation; Jeremy McFarland, suspended for five days and will serve 180 days probation; Alexandra Saucier, suspended for three days and will serve 90 days probation; Ralph Tamayo, suspended for five days and will serve 180 days probation; Rene Villaloboz, suspended for three days and is on probation for 90 days.

The Simmons family is being represented by Lee Merritt, well-known civil rights attorney who filed the civil suit against police for the death of Ahmaud Arbery in Georgia. Merritt issued the following statement:

"The treatment of Jaquaree Simmons was both inhumane and unconstitutional. It reflects a bigger crisis in our criminal justice system when our most vulnerable commit a crime and are treated as second-class citizens instead of protected. The Simmons family is grateful for Sheriff Gonzalez's action in holding the individuals responsible for Jaquaree Simmons death. Our office will work to make sure these individuals will be held accountable civilly and criminally and we will fight to address and reform the policies and practices that foster and environment of regular abuse."

Source: *abc13.com*

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| In re: BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] Debtors. | Chapter 11<br>Case No. 20-10343 (LSS)<br>(Jointly Administered) |
|---|---|

**Hearing Date: January 24, 2022, at 10:00 a.m. (ET)**
**Objection Deadline: January 7, 2022 at 4:00 p.m. (ET)**

**NOTICE OF (I) DEADLINE FOR CASTING VOTES TO ACCEPT OR REJECT PROPOSED MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, (II) HEARING TO CONSIDER CONFIRMATION OF PLAN, AND (III) RELATED MATTERS**

**PLEASE TAKE NOTICE THAT** on September 30, 2021, the above-captioned debtors and debtors-in-possession (together, the "Debtors") filed:

- the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 6443] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan");[2] and
- the *Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 6445] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").

The Plan contains releases of the Debtors and certain third parties and related injunction provisions. These provisions could release and prohibit holders of Abuse Claims from filing lawsuits and asserting such claims against the BSA and certain non-debtor third parties, including Local Councils, Contributing Chartered Organizations, including TCJC, Settling Insurance Companies, including Hartford, and Participating Chartered Organizations, solely with respect to Post-1975 Chartered Organization Abuse Claims. Chartered Organizations are organizations that sponsored a Scouting unit, such as a troop or pack. The Plan provides a mechanism by which Abuse Claims against the BSA and certain-debtor third parties, including the Local Councils, Contributing Chartered Organizations, including TCJC, Settling Insurance Companies, including Hartford, and Participating Chartered Organizations, solely with respect to Post-1975 Chartered Organization Abuse Claims, will be channeled to a trust established pursuant to section 105(a) of the Bankruptcy Code.

Each Chartered Organization will automatically be deemed to be a Participating Chartered Organization under the Plan unless it (1) submits the opt out election form on or before the Plan Objection Deadline, (2) objects to confirmation of the Plan in accordance with the *Notice of Hearing to Consider Confirmation of Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, attached as Exhibit 3 to the Solicitation Procedures Order and available at https://omniagentsolutions.com/BSA on or before the Plan Objection Deadline, or (3) is a debtor in bankruptcy as of the date of confirmation of the Plan. Participating Chartered Organizations shall receive certain limited protections under the Channeling Injunction, including the channeling of all Abuse Claims against such Participating Chartered Organizations that relate to Abuse alleged to have first occurred on or after January 1, 1976, in exchange for contribution to the Settlement Trust of Participating Chartered Organizations' rights under Abuse Insurance Policies issued on or after January 1, 1976.

Confirmation of the Plan is supported by the Debtors, the Future Claimants' Representative, the Creditors' Committee, the Coalition, and the Ad Hoc Committee of Local Councils. You should carefully review the Plan and the applicable release, injunction, and related provisions at https://omniagentsolutions.com/BSA.

**PLEASE TAKE FURTHER NOTICE THAT:**

1. On September 30, 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. 6438] (the "Solicitation Procedures Order") approving the Disclosure Statement. The Solicitation Procedures Order, among other things, authorizes the Debtors to solicit votes to accept or reject the Plan and establishes procedures related thereto (the "Solicitation Procedures").

2. The Bankruptcy Court has scheduled a hearing to consider whether to confirm the Plan beginning on **January 24, 2022 at 10:00 a.m. (Eastern Time)** (the "Confirmation Hearing"), which shall continue to the extent necessary on such dates as the Bankruptcy Court may designate. The Confirmation Hearing will be held before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, at the Bankruptcy Court, located at 824 North Market Street, Sixth Floor, Courtroom No. 2, Wilmington, Delaware 19801.

3. Pursuant to the Solicitation Procedures Order, the Bankruptcy Court approved the Solicitation Procedures, which are attached to the Solicitation Procedures Order as Exhibit 1. Holders of Claims in Class 3A (2010 Credit Facility Claims), Class 3B (2019 RCF Claims), Class 4A (2010 Bond Claims), Class 4B (2012 Bond Claims), Class 5 (Convenience Claims), Class 6 (General Unsecured Claims), Class 7 (Non-Abuse Litigation Claims), Class 8 (Direct Abuse Claims), and Class 9 (Indirect Abuse Claims) (collectively, the "Voting Classes") are entitled to receive a ballot for casting a vote on the Plan (a "Ballot"). Holders of Claims and Interests in all other Classes under the Plan are presumed to accept or are deemed to reject the Plan. For a vote to accept or reject the Plan to be counted, a Ballot must be completed and returned in accordance with the instructions provided on the **Ballot so that it is received by December 14, 2021 at 4:00 p.m. (Eastern Time)** (the "Voting Deadline").

4. Pursuant to the Plan, holders of Claims in the Voting Classes are entitled to vote on account of their respective Claims. If you have not received a Ballot and are entitled to vote on the Plan, you may request a Ballot and voting instructions from Omni Agent Solutions (the "Solicitation Agent"), by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA, and submit your Ballot as set forth above so that it is received by the Voting Deadline.

5. Pursuant to the Solicitation Procedures, all Direct and Indirect Abuse Claims in Class 8 and Class 9 of the Plan will be temporarily allowed in the amount of $1.00 in the aggregate per claimant or as otherwise ordered by the Bankruptcy Court, solely for purposes of voting to accept or reject the Plan and for no other purpose. If you have filed a Proof of Claim that is subject to an objection other than a "reclassify" or "reduce and allow" objection that is filed with the Bankruptcy Court on or before the Solicitation Date (a "Disputed Claim") and seek to challenge the disallowance or estimation of your Disputed Claim for voting purposes, you must file with the Bankruptcy Court a motion for an order, pursuant to Bankruptcy Rule 3018(a), temporarily allowing such claim for purposes of voting to accept or reject the Plan (a "Rule 3018(a) Motion"). Any Rule 3018(a) Motion must be filed with the Bankruptcy Court and served on the Debtors on or before **November 1, 2021**. If a holder of a Disputed Claim files a timely Rule 3018(a) Motion, such holder's Ballot shall not be counted unless a Resolution Event occurs with respect to such Disputed Claim prior to **December 14, 2021** or as otherwise ordered by the Bankruptcy Court.

6. **The Plan proposes certain releases and injunctions in furtherance of the Plan. The Plan proposes a Channeling Injunction that permanently channels all Abuse Claims against the Debtors and the Protected Parties and Limited Protected Parties to a Settlement Trust established pursuant to section 105(a) of the Bankruptcy Code. In addition, the Plan proposes an injunction that permanently enjoins the pursuit of any claim against or interest in the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property to the extent such claim or interest has been discharged, released, waived, settled, or deemed satisfied in accordance with the Plan (other than the enforcement of any right pursuant to the Plan). For the specific terms and conditions of all the releases and injunctions provided for in the Plan, and the precise scope of the Claims and Demands to be channeled, please refer to the specific terms of the Plan, which can be obtained as described below.**

7. If the Plan is approved by the Bankruptcy Court, all current and future holders of Abuse Claims against the Debtors can request and receive money only from the Settlement Trust. You should read the Plan and Disclosure Statement carefully for details about how the Plan, if approved, will affect your rights.

8. The Bankruptcy Court has issued the Solicitation Procedures Order describing how to vote on the Plan, and the Disclosure Statement contains information that will help you decide how to vote. Your legal rights will be affected if the Plan is approved.

9. Under the Solicitation Procedures approved by the Bankruptcy Court, attorneys for holders of Direct Abuse Claims may vote on the Plan on behalf of their clients, if authorized by each client. If you are unsure whether your attorney is authorized to vote on your behalf, please contact your attorney.

10.If you would like to object to the Plan, you may do so by filing your objection no later than **January 7, 2022 at 4:00 p.m. (Eastern Time)** (the "Plan Objection Deadline"). Any objections or responses to confirmation of the Plan, must: (a) be in writing; (b) state the name and address of the objecting party and the nature and amount of the Claim of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (d) be filed with the Bankruptcy Court, 824 North Market Street, Third Floor, Wilmington, Delaware 19801 together with proof of service **on or before the Plan Objection Deadline**, and served so as to be actually received by the parties listed in the Confirmation Hearing Notice (the "Notice Parties") on or before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email to the Notice Parties.

**OBJECTIONS NOT TIMELY FILED AND SERVED STRICTLY AS PROVIDED HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE.**

If you would like to review the Plan, the Disclosure Statement, the Solicitation Procedures Order, or other documents related to the Plan free of charge, you may obtain these documents from the Solicitation Agent by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA. You may also access from these materials for a fee via PACER at http://www.deb.uscourts.gov/.

Dated: October 8, 2021, WHITE & CASE LLP, Jessica C. Lauria (admitted *pro hac vice*), 1221 Avenue of the Americas, New York, New York 10020, Telephone: (212) 819-8200, Email: jessica.lauria@whitecase.com -and- WHITE & CASE LLP, Michael C. Andolina (admitted *pro hac vice*), Matthew E. Linder (admitted *pro hac vice*), Laura E. Baccash (admitted *pro hac vice*), Blair M. Warner (admitted *pro hac vice*), 111 South Wacker Drive, Chicago, Illinois 60606, Telephone: (312) 881-5400, Email: mandolina@whitecase.com, mlinder@whitecase.com, laura.baccash@whitecase.com, blair.warner@whitecase.com -and- MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Derek C. Abbott (No. 3376), Andrew R. Remming (No. 5120), Paige N. Topper (No. 6470), 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347, Telephone: (302) 658-9200, Email: dabbott@morrisnichols.com, aremming@morrisnichols.com, ptopper@morrisnichols.com, *Attorneys for the Debtors and Debtors in Possession*

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Solicitation Procedures (as defined below), as applicable.