## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | Jointly Administered |

## CERTAIN INSURERS' (i) MOTION TO MODIFY THE CONFIRMATION SCHEDULING ORDER AND (ii) MOTION FOR AN EXPEDITED HEARING ON SAME

1.      The insurers listed in the signature blocks below (collectively, the "Insurers") move to continue the commencement of the confirmation hearing from January 24, 2022 to February 22, 2022 and to adjust other dates and deadlines in the Order Scheduling Certain Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization (the "Scheduling Order," Dkt. No. 6528).  Given the compressed nature of the schedule, the Insurers also request that the Court set an expedited hearing on the motion to continue the confirmation hearing and adjust the other dates.  Insurers respectfully request that an Expedited Hearing be scheduled no later than Friday, December 17, 2021, with objections to be filed in advance of or made at such hearing.  Proposed Order for Expedited Motion attached hereto as Exhibit "A".

2.      It has become apparent that, despite the Insurers' best efforts to work through the various discovery delays brought on by Debtors and the other plan supporters, the existing

---

[1]      The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, TX 75038.

schedule is simply unworkable for all parties.  Leaving the current schedule in place at this

juncture would simply perpetuate the fantasy that the massive discovery effort required because

of the plan supporters' continued insistence on unnecessary and overreaching findings unrelated

to the § 1129 factors can be accomplished in the remaining time under the original schedule.  In

addition, leaving the current schedule will preclude plan objectors from fully developing and

presenting the evidence and arguments that the Court appropriately should consider at the

confirmation hearing.  This is true for many reasons, including the following:

- Although November 5 was the deadline for substantial completion of document production, significant document production has continued unabated since then – particularly by Debtors.  As of this writing, Debtors have provided 38 volumes of document production.  Of these, 29 volumes, consisting of approximately 57% of the total pages produced by Debtors, were produced after the November 5 deadline.

- Although December 1 was the deadline for completion of fact depositions, many depositions have been taken since then, including important depositions of certain Debtor witnesses taken just last week.  More importantly, several significant fact depositions remain to be taken.  For example:

  ➢ After repeated requests from the insurers for an earlier date, Debtors have offered their 30(b)(6) witness on the development of the TDPs and the Settlement Trust, and the selection of the Settlement Trustee, perhaps the most pressing items to be addressed by the objectors and this court at confirmation, on December 20 – almost three weeks after the December 1 cutoff date for fact depositions;[2]

  ➢ The Coalition refused even to discuss scheduling its Rule 30(b)(6) witness until after the Court's December 10 ruling granting the Insurers' motion to compel – that deposition has now been scheduled for December 21;

  ➢ The TCC unilaterally cancelled its 30(b)(6) deposition, which had been scheduled for November 29, then waited weeks before scheduling the deposition to take place December 22;

  ➢ Claimants' counsel who signed hundreds (and, in some cases, thousands) of proofs of claim refused to produce documents or be deposed until after the

---

[2]    This deposition was originally set for December 8, but was postponed by the Debtors.  After Debtors disclosed that their proposed witness was addressing family issues that made him unavailable for a time, Debtors declined the Insurers' request that they identify a substitute witness.

Court granted Insurers' several motions to compel on December 2, 2021, and the Insurers are still meeting-and-conferring with such counsel to obtain document production required before the depositions can proceed; and

➢ Insurers are still waiting for courts in Montana, Texas, and California to enforce subpoenas *duces tecum* and *ad testificandum* of claims aggregators whose documents and testimony are critical to the good faith issues in this case.

➢ Motion practice is all but guaranteed to be necessary to resolve inappropriately broad assertions of privilege related to document productions, the failure to serve privilege logs, and instructions not to answer in depositions.

➢ Document and deposition discovery is required concerning information disclosed for the first time in the Plan Supplement (including investigation of issues related to the appointment of the Special Reviewer and other proposed positions in the Settlement Trust) filed November 30 – the day before the ostensible December 1 cutoff for fact discovery.

➢ It seems inevitable that there will be significant discovery about the voting process in this case, which could be followed by motions to designate large numbers of votes.

➢ To date, 15 affirmative expert reports have been filed, and many of those reports will need to be supplemented as late fact discovery continues.  Supplementation of affirmative expert reports will likely cause a cascading series of supplemental rebuttal expert reports.  Most, if not all, of these expert witnesses will need to be deposed.

3.      This discovery is more than an academic exercise; it is, in fact likely to be highly

consequential.  Insurers believe, as a substantive matter, that full discovery is necessary to

establish important facts pertaining to confirmation, including whether the Plan is the product

of collusion rather than having been proposed in good faith, whether a substantial portion of the

claims filed in the case lack the requisite indicia of truthfulness, whether solicitation or voting

improprieties impacted the final vote, whether the TDPs fail to reflect the Debtors' historical

experience in the tort system, and whether the TDPs rely on an improper methodology for

assessing and valuing that liability.  The discovery delays and obstruction outlined herein have

severely prejudiced Insurers' ability to complete the discovery necessary to fully vet these and

other important issues within the highly compressed schedule originally set by the Court. Unless the schedule is extended as requested in this Motion, the plan supporters' delays will ensure that many of the facts related to these critical questions will never see the light of day, and the Court will be forced to rule on confirmation based on a woefully deficient factual record. Indeed, such a manifestly unfair result appears to be exactly what the plan proponents seek to achieve by blocking or slow-rolling this discovery.[3]

4. In contrast to the delay tactics of the plan supporters, the Insurers have been diligent over the past two months: Insurers served deposition notices, requests for production, and interrogatories by the October 8 deadline; Insurers served their responses and objections to written discovery on time; and Insurers' document productions were substantially complete by November 5 – all in compliance with the schedule. Despite Insurers' best efforts to cooperate with other parties and comply with the schedule, Debtors' and others' failure to fully cooperate in the discovery process has severely prejudiced the Insurers' ability to prepare for trial. These other parties should not be rewarded for their failure to cooperate fully by, in effect, running out the clock.

5. Debtors contend that their cash position precludes a delay in the confirmation hearing date. At the same time, the Debtors' insistence on specific components of the TDPs and certain plan findings are largely responsible for both the litigation delays and the professionals' astronomical burn rate. Debtors should not be permitted to have it both ways: if they continue to insist on these costly provisions in the Plan, they (and the Coalition) should be willing to bear the attendant costs of defending those provisions. The Insurers should not be

---

[3] Insurers reserve their right to seek further relief from the Court should discovery and the voting results require it.

forced to accept a litigation handicap and due process infirmity simply because Debtors have deemed a fair defense of their own position too expensive.

6.      Separately, Debtors' position contemplates no change to their staggering level of professional fees charged to the Estate, including, among others, a congressional lobbyist, and an $18 million voluntary payment to the Coalition for its own professional fees (fees that are solely the obligation of Coalition plaintiffs' firms – not the claimants themselves).  Insurers, on the other hand, have been forced to pay their own legal fees without reimbursement – and remain willing to do so as needed to obtain a full and fair judicial determination of the proposed Plan.  Insurers ask that when weighing the competing values here, the Court prioritize a full and fair process over the claims of the dozens and dozens of legal, accounting and other professionals who are every month shrinking the Debtors' cash position.

7.      When the Court set the January 24 start date for the confirmation hearing, the Court acknowledged that the schedule was highly compressed and could work only with the cooperation of all parties.  The Court also indicated an openness to adjusting the schedule if necessary.  The schedule now needs to be modified, and the start of the confirmation hearing needs to be delayed.

8.      In the schedule set forth below, the Insurers propose to adjourn the start of the confirmation hearing by four weeks, to February 22, 2022.  That proposed date is later than Debtors wanted, but it is much sooner than the Insurers or the TCC requested back in September.  The adjournment is now undeniably necessary.

**Background**

***The Scheduling Order***

9.      In connection with the disclosure statement hearing, the Court received briefing

from various parties regarding the confirmation schedule.  During the September 28 hearing, the

Court agreed with Debtors that the confirmation hearing should begin on January 24, 2021.  In

choosing that date, the Court overruled objections by the Insurers and the TCC.[4]  The parties

then met-and-conferred on interim pretrial dates, resulting in the schedule adopted in the

Scheduling Order.

10.      The Insurers told the Court that they were "prepared to work as hard as possible

to complete the work necessary to start the confirmation hearing on January 24," but that "the

January 24 date can hold only with the utmost cooperation of all parties."[5]  The Court stated

that it believed the schedule was "a doable schedule with cooperation."[6]

### *Late production of documents*

11.      The Scheduling Order set November 5, 2021 as the date for substantial

completion of document production.  By that deadline, Debtors had produced 89,925

documents over seven volumes, containing 679,151 pages.

|  | Documents | Pages | Size (GB) | Date and Time Produced |
|---|---|---|---|---|
| BSA-PLAN _VOL001 | 41,561 | 518,641 | 41.2 | 10/31/2021 at 8:58 p.m. ET |
| BSA-PLAN _VOL002 | 17,432 | 32,014 | 1.5 | 11/5/2021 at 11:44 p.m. ET |

---

[4]      *See* Scheduling Order at ¶ 2:  "The Insurers and the TCC objected, and continue to object, to the January 24, 2022 start date for the Confirmation Hearing and, by definition, all interim dates proposed by the Debtors.  Nevertheless, the Insurers and the TCC met-and-conferred in good faith with the Debtors and others and do not object to the form of the proposed scheduling order based on the Court's having previously ordered that the Confirmation Hearing will start on January 24. For the avoidance of doubt, all objections to the Debtors' proposed interim dates are overruled. Century's objections to the confirmation schedule, its start date and the schedule within the start date are overruled."

[5]      Certain Insurers' Statement Concerning the Revised Proposed Confirmation Schedule, Dkt. 6473.

[6]      Transcript of September 28, 2021 Hearing at 206:13-14.

| BSA-PLAN _VOL003 | 357 | 2,392 | 0.19 | 11/1/2021 at 7:06 p.m. ET |
|---|---|---|---|---|
| BSA-PLAN _VOL004 | 20,083 | 59,445 | 7.4 | 11/5/2021 at 11:44 p.m. ET |
| BSA-PLAN _VOL006 | 5,894 | 53,829 | 2.86 | 11/5/2021 at 11:44 p.m. ET |
| BSA-PLAN _VOL007 | 4,531 | 12,580 | 1.1 | 11/5/2021 at 11:44 p.m. ET |
| BSA-PLAN _VOL008 | 67 | 250 | 0.04 | 11/5/2021 at 11:44 p.m. ET |
| TOTAL | 89,925 | 679,151 | 54.29 | |

12.     Once the Insurers reviewed Debtors' production, however, the Insurers concluded that Debtors had withheld from production documents that should have been produced following the Court's ruling that TDP-related materials are not subject to mediation privilege.[7]  The Insurers thus moved to compel.[8]  On November 19, 2021, the Court granted the Insurers' motion to compel.  This resulted in the production of substantially more documents, well after the November 5 deadline for substantial completion of document production.

13.     Since November 5, 2021, Debtors have produced 31 additional volumes of documents, amounting to approximately 73,038 additional documents containing approximately 986,653 pages.  In other words, since the November 5 deadline, Debtors have produced over 300,000 more pages of documents than they produced before the deadline – or, more than 59.22% of their total production.  Thus, the majority of Debtors' documents were produced well after the November 5 substantial completion deadline.[9]

---

[7]     *See* Transcript of October 25, 2021 Hearing at 15:4-7 (ruling that Debtors cannot "shield [from] discovery communications, oral and written, regarding the trust distribution procedures, based on the mediation privilege");

[8]     Letter Requesting That The Court Compel Debtors To Comply With The Court's October 25, 2021 Order, Dkt. No. 7198.

[9]     Admittedly, some of Debtors' document production was appropriately produced after November 5 – such as Volume 36, containing backup materials for the report of one of Debtors' affirmative experts, and Volumes 37 and 38, containing ballots that the voting agent has so far received.  But the fact that some of Debtors' late production is explicable does not justify the vast majority of Debtors' post-November 5 production.

### *Late depositions*

14.     The fact discovery cutoff was December 1, 2021, meaning that all fact depositions should have been taken by that date.  However, many fact depositions were taken after December 1, and many fact depositions – including some that are critical to development of the Insurers' plan confirmation objections – have not even been scheduled.

15.     Since the deadline to complete depositions of fact witnesses passed on December 1, 2021, seven additional depositions were taken, including multiple depositions taken on the same day, with at least 13 more depositions scheduled or needing to be scheduled.  So far, the seven depositions taken after December 1 are:

> ➢ December 2, 2021:  Hartford's Rule 30(b)(6) witness;
>
> ➢ December 2, 2021:  Todd Allen for the Debtors;
>
> ➢ December 2, 2021:  Boy Scouts of America Hawaii and Guam Chapter;
>
> ➢ December 3, 2021:  Devang Desai, a member of Debtors' Bankruptcy Task Force;
>
> ➢ December 7, 2021:  Brian Whittman of Alvarez & Marsal, Debtors' 30(b)(6) witness on certain topics (this deposition will be resumed on December 13);
>
> ➢ December 9, 2021:  Jeff Hunt, Debtors' Rule 30(b)(6) witness on certain topics; and
>
> ➢ December 9, 2021:  Alison Schuler, chair of Debtors' Bankruptcy Task Force.

### *Depositions that still need to be taken or scheduled*

16.     Notwithstanding the December 1 cutoff date for fact depositions, many depositions – including key depositions noticed in early November – still remain to be taken or scheduled.  Moreover, recent developments in the case have created a need for additional fact depositions that need to be scheduled.

17.    For example, Debtors have not yet produced a witness on certain 30(b)(6) topics set forth in the Insurers' November 5 deposition notice, including critical topics related to the negotiation and development of the TDPs and the Settlement Trust, and the selection of the proposed Settlement Trustee, Eric Green.  Debtors have also confirmed that this witness will testify regarding the selection of Mr. Carey as the initial Special Reviewer.  As explained above, this deposition had been scheduled for December 8, but at Debtors' request was adjourned to December 20.

18.    On November 10, the Insurers served the TCC with a Rule 30(b)(6) deposition notice.  The parties then scheduled that deposition for November 29.  On November 26, however, the TCC unilaterally cancelled its Rule 30(b)(6) deposition, citing issues relating to the Kosnoff letter distributed by the TCC.  The Insurers diligently followed up to get a new date on the schedule, but the TCC did not respond to the Insurers' communications.  Finally, on December 13, the TCC agreed to appear for the deposition on December 22 – three weeks after the ostensible fact discovery cutoff.

19.    The Coalition refused to discuss scheduling of its Rule 30(b)(6) deposition until after the Court's December 10 bench ruling ordering the Coalition to sit for that deposition. The Coalition has now scheduled its deposition to take place on December 21.

20.    There are also a large number of fact depositions the Insurers want to take, and have been diligently trying to take, but which have not been scheduled.  These depositions include:

a.    Depositions of lawyers from seven law firms who signed large numbers of proofs of claim and are subject to the Court's December 2, 2021 ruling that attorneys who signed proofs of claim must respond to document

requests and appear for depositions;[10]

    b.    Depositions of lawyers from six additional six law firms, all located more than 100 miles from the Court, who have been notified by Insurers that this Court's December 2, 2021 ruling also applies to them, and that they must produce documents and appear for deposition;[11] and

    c.    Depositions of several claims aggregators, including Verus, LLC, which was the subject of a December 6 ruling by the Court that its contracts and statements of work are not privileged and must be produced.[12]

21.    Further, additional discovery is likely because of the Kosnoff letter circulated by TCC counsel and other voting-related matters.  The Coalition has said that it may seek to designate all no votes from the group of Abuse Claimants who received the Kosnoff letter.[13] Counsel for one plan opponent has said that it is "almost inevitable" that vote designation motions will be filed by those who lose the vote.[14]  The TCC has acknowledged a risk that votes could be designated because of the Kosnoff letter.[15]  Apart from the Kosnoff communication, there are allegations – which have not yet been the subject of discovery – that ballots have not been sent to claimants, that an "e-ballot" being used by the Eisenberg Rothweiler firm to record

---

[10]    Transcript of December 2, 2021 Hearing at 69:5-71:3.  The seven firms are:  Andrews & Thornton; ASK LLP; Eisenberg Rothweiler; Kosnoff Law; Krause & Kinsman; Napoli Shkolnik PLLC; and Slater Slater Schulman.

[11]    The six firms are: Babin Law LLC; Baily Cowan Heckaman PLLC; D. Miller & Associates; Junell & Associates PLLC; Marc Bern & Partners LLP; and Paglialunga & Harris, which apparently has closed.  As to all of the firms listed in this footnote and the preceding footnote, Insurers anticipate that there may be a need for further motion practice before documents are produced and depositions can be taken.

[12]    Transcript of December 6, 2021 Hearing at 39:16-40:1 ("And I am holding right now that the full contract needs to be provided, no redactions").  Insurers are still awaiting document production from Verus.

[13]    Transcript of November 10, 2021 at 15:4-5 ("we reserve the right for other remedies and some of them may be designation of votes of no votes") (statement of Mr. Molton).

[14]    Transcript of November 29, 2021 Hearing at 66:12 (statement of Mr. Patterson).

[15]    Transcript of November 29, 2021 Hearing at 31:1-4 ("There is a risk . . . that votes will be designated because of what has gone in with the conflicting letters") (statement of Mr. Pachulski).

votes is not properly recording "reject" votes, and that claimants who vote to reject the Plan are being pressured to change their votes.[16]  Moreover, Omni disregarded at least three firms' elections to use a master ballot rather than individual ballots for their clients, leading to confusion.  It is possible that there will be depositions and designation motions because of the issues surrounding the Kosnoff communications and the voting process.

22.      There will also be discovery arising from the Plan Supplement filed on November 30.[17]  The Plan Supplement named Kevin J. Carey, a mediator in this case, as the initial Special Reviewer.  When the Court terminated Mr. Carey's appointment as a mediator because he "now has a stake in the outcome of the mediation," which potentially affects "the neutrality of the mediation,"[18] the need for discovery into the selection process of the Special Reviewer became apparent, particularly since Debtors and other plan supporters have suggested they want to rely on the mere existence of the mediation to help prove that Debtors proposed the Plan in good faith as required by Bankruptcy Code § 1129(a)(3).  Indeed, this Court has already ruled that "[i]t cannot be the case that if a party is relying on the very fact of mediation to meet its standard of proof, that discovery is prohibited regarding the *bona fides* of the mediation."[19]  There now appears to be evidence that the plan proponents may have themselves corrupted the mediation process by promising a mediator post-confirmation employment without Court approval or the consent of the mediation parties, in direct violation of the

---

[16]      Transcript of November 17, 2021 Hearing at 44:4-22 (statement of Ms. Grassgreen); Transcript of November 29, 2021 Hearing at 66:5-17 (statement of Mr. Patterson); *id.* at 52:17-54:2 (statement of Mr. Wilks).

[17]      Notice of Filing of Plan Supplement to Modified Fifth Amended Chapter 11 Plan of Reorganization for Debtors, Dkt. 7515.

[18]      Transcript of December 7, 2021 Hearing at 13:1-8, 14:12-14.

[19]      Transcript of October 25, 2021 Hearing at 13:25-14:3.

mediation order.  Whether and the extent to which this occurred is critical to any determination

of whether the Plan has been proposed in good faith within the meaning of § 1129(a)(3).  This is

particularly important where, as here, "it appears that the fact of mediation may be the primary

evidence debtors will [introduce] to meet the good faith standard."[20]

23.    The Plan Supplement also named five lawyers affiliated with the Coalition –

including Mr. Slater, whose law firm colleagues signed proofs of claim, and Mr. Rothweiler,

whose firm promulgated the E-ballot that purportedly does not record "reject" votes and whose

law firm colleagues are allegedly pressuring clients who voted to reject the Plan to change their

votes – as proposed members of the Settlement Trust Advisory Committee.  Discovery of these

lawyers is also appropriate.  Insurers are going to serve subpoenas on Ms. Andrews, Mr. Slater,

and Mr. Rothweiler seeking production of documents related to the matters mentioned in this

paragraph as well as depositions once the documents are produced.

24.    Last, there will be further motion practice by the Insurers regarding discovery.

Right before the deposition of Alison Schuler, chair of Debtors' Bankruptcy Task Force,

Debtors produced approximately 600 pages of Ms. Schuler's handwritten notes.  These notes

should have been produced last summer in connection with the RSA hearing, and certainly by

the November 5 substantial completion deadline.  Moreover, Debtors also redacted the vast

majority of the notes on the grounds of attorney-client privilege and attorney work-product, but

the notes can't possibly record attorney advice and work product, since Ms. Schuler

acknowledged during her deposition that she did not, during her service on the Bankruptcy Task

Force, act as an attorney.  The Insurers plan to move to compel production of Ms. Schuler's

---

[20]    *Id.* at 13:13-18.

handwritten notes in unredacted form and to compel her to resume her deposition once those

unredacted notes are produced.  Also, in meeting-and-conferring with the Coalition about its

30(b)(6) deposition, now scheduled for December 21, it became clear that privilege issues and

other issues may arise that would have to be addressed by the Court.

25.      By consent, Debtors sought to extend the Voting Deadline by two weeks and the

deadlines for the voting agent, Omni, to file its preliminary and final voting reports, but all other

dates were left as-is.  Those dates include the plan objection deadline, which continues to be

January 10, 2022 (for Participating Parties), even though the final voting report deadline now is

not due until January 17.  During the meet-and-confer on these extensions, Insurers and the

TCC reserved their rights to seek further extensions of other dates and deadlines within the

Scheduling Order.

26.      With the late document productions, late depositions, key fact depositions still

being scheduled or taken, and anticipated forthcoming discovery on voting and issues raised by

the Plan Supplement, the remaining deadlines do not provide sufficient time for the parties to

complete the discovery needed to permit an orderly and just confirmation hearing.

## <u>Argument</u>

I.      **The existing confirmation schedule is unworkable and should be modified.**

A.      **Written discovery, document production, and depositions have not
progressed as planned and are incomplete.**

27.      Debtors requested the existing, highly-compressed schedule, but they largely have

not met the schedule's interim deadlines.

28.      Notably, Debtors' document production was not substantially complete on

November 5.  By that date, Debtors had produced seven volumes consisting of 89,925

documents and 679,151 pages.  Since that deadline, Debtors have produced 31 additional

volumes of documents, containing 73,038 additional documents totaling 986,653 pages.  In other words, since the November 5 deadline, Debtors have produced more than 300,000 more pages of documents than they produced **before** the deadline – or, more than 59% of their total production.

29.       Debtors produced the following documents by the November 5 deadline for substantial completion of document production:

| | Documents | Pages | Size (GB) | Date and Time Produced |
|---|---|---|---|---|
| BSA-PLAN _VOL001 | 41,561 | 518,641 | 41.2 | 10/31/2021 at 8:58 PM ET |
| BSA-PLAN _VOL002 | 17,432 | 32,014 | 1.5 | 11/5/2021 at 11:44 PM ET |
| BSA-PLAN _VOL003 | 357 | 2,392 | 0.19 | 11/1/2021 at 7:06 PM ET |
| BSA-PLAN _VOL004 | 20,083 | 59,445 | 7.4 | 11/5/2021 at 11:44 PM ET |
| BSA-PLAN _VOL006 | 5,894 | 53,829 | 2.86 | 11/5/2021 at 11:44 PM ET |
| BSA-PLAN _VOL007 | 4,531 | 12,580 | 1.1 | 11/5/2021 at 11:44 PM ET |
| BSA-PLAN _VOL008 | 67 | 250 | 0.04 | 11/5/2021 at 11:44 PM ET |
| TOTAL | 89,925 | 679,151 | 54.29 | |

30.       Debtors produced the following documents **after** the November 5 deadline for substantial completion of their document production:

| | Documents | Pages | Size (GB) | Date and Time Produced |
|---|---|---|---|---|
| BSA-PLAN _VOL005 | 1,183 | 31,101 | 2 | 11/13/2021 at 2:05 AM ET |
| BSA-PLAN _VOL009 | 7,517 | 47,390 | 3.8 | 11/9/2021 at 12:19 AM ET |
| BSA-PLAN _VOL010 | 463 | 245,725 | 56.5 | 11/9/2021 at 12:19 AM ET |
| BSA-PLAN _VOL011 | 6,079 | 22,143 | 1.8 | 11/9/2021 at 11:36 PM ET |
| BSA-PLAN _VOL012 | 484 | 3,075 | 0.23 | 11/10/2021 at 11:48 PM ET |
| BSA-PLAN _VOL013 | 2,017 | 7,475 | 0.45 | 11/11/2021 at 8:54 PM ET |
| BSA-PLAN _VOL014 | 1,064 | 6,327 | 0.39 | 11/11/2021 at 8:54 PM ET |
| BSA-PLAN _VOL015 | 2,413 | 46,355 | 3.52 | 11/13/2021 at 2:05 AM ET |
| BSA-PLAN _VOL016 | 28,318 | 174,795 | 16.6 | 11/13/2021 at 9:57 AM ET |
| BSA-PLAN _VOL017 | 1,822 | 7,311 | 1.02 | 11/13/2021 at 2:05 AM ET |
| BSA-PLAN _VOL018 | 9,445 | 78,295 | 7.43 | 11/13/2021 at 11:38 AM ET |
| BSA-PLAN _VOL019 | 3,155 | 19,277 | 1.9 | 11/14/2021 at 11:38 PM ET |

| BSA-PLAN _VOL020 | 266 | 2,703 | 0.18 | 11/16/2021 12:42 AM ET |
| BSA-PLAN _VOL021 | 296 | 3,427 | 0.26 | 11/16/2021 at 11:18 PM ET |
| BSA-PLAN _VOL022 | 4,291 | 249,687 | 16.9 | 11/17/2021 at 2:35 AM ET |
| BSA-PLAN _VOL023 | 265 | 5,790 | 0.419 | 11/21/2021 at 10:07 PM ET |
| BSA-PLAN _VOL024 | 56 | 1,595 | 0.2 | 11/26/2021 at 11:52 PM ET |
| BSA-PLAN _VOL025 | 10 | 238 | 0.017 | 11/26/2021 at 11:52 PM ET |
| BSA-PLAN _VOL026 | 11 | 95 | 0.005 | 11/26/2021 at 11:52 PM ET |
| BSA-PLAN _VOL027 | 26 | 126 | 0.008 | 11/29/2021 at 1:44 AM PM |
| BSA-PLAN _VOL028 | 248 | 3,796 | 0.32 | 11/30/2021 at 12:10 AM ET |
| BSA-PLAN _VOL029 | 3 | 188 | 0.011 | 12/1/2021 at 1:19 AM ET |
| BSA-PLAN _VOL030 | 22 | 273 | 0.018 | 12/2/2021 at 12:00 AM ET |
| BSA-PLAN _VOL031 | 270 | 6,578 | 1.6 | 12/6/2021 at 12:27 AM ET |
| BSA-PLAN _VOL032 | 4 | 4 | 0.008 | 12/6/2021 at 12:27 AM ET |
| BSA-PLAN _VOL033 | 4 | 4 | 0.067 | 12/6/2021 at 12:27 AM ET |
| BSA-PLAN _VOL034 | 54 | 1,950 | 0.13 | 12/6/2021 at 12:27 AM ET |
| BSA-PLAN _VOL035 | 3 | 516 | 0.014 | 12/6/2021 at 11:35 PM ET |
| BSA-PLAN_VOL036 | 2,377 | 7,047 | 4.8 | 12/10/2021 at 6:54 PM ET |
| BSA-PLAN_VOL037 | 805 | 17,363 | 1.7 | 12/10/2021 at 6:54 PM ET |
| BSA-PLAN_VOL038 | 1,250 | 27,105 | 2.6 | 12/11/2021 at 3:59 PM ET |
| TOTAL | 73,038 | 986,653 | 122.897 | |

31.     By no measure could one conclude that Debtors' document production was substantially complete by November 5 when close to 60% of Debtors' production was sent after that deadline.

32.     Debtors' late productions delayed the Insurers' efforts to schedule depositions, since the Insurers needed time to review and analyze the late-produced documents before they could take depositions.

33.     The fact deposition schedule also has been beset with delays and failures to produce witnesses.  Despite Insurers' best efforts, the December 1 deadline to complete fact depositions was not met.  Indeed, it is unlikely that all outstanding fact depositions will be completed before Christmas because of several factors:  Debtors' inability to produce their 30(b)(6) witness on the development and negotiations of the TDPs and the Settlement Trust

and the selection of the Settlement Trustee and the Special Reviewer; the TCC's unilateral, last-minute cancellation of its Rule 30(b)(6) deposition, which had been scheduled for November 29, coupled with its failure to propose a substitute date until today for the deposition despite diligent follow-up by the Insurers; the Coalition's refusal to schedule its 30(b)(6) deposition, or even to discuss the topics for that deposition, until after the Court's December 10 ruling ordering the Coalition to produce a 30(b)(6) witness; and organized resistance by law firms and lawyers who signed proofs of claim, all or most of whom are affiliated with the Coalition, to produce documents or sit for depositions, until after the Court's December 2 and 6 rulings granting Insurers' motions to compel (as to these depositions, numbering at least 13, the Insurers are negotiating document productions that must take place before the depositions can proceed); and the Insurers are still working to have certain claims aggregators appear for depositions.

### B. Voting and Plan Supplement discovery will also require additional time.

34.    Because of the recent case events mentioned above, none attributable to the Insurers, there will be discovery on three topics that could not have been foreseen by the Court prior to setting the December 1 fact discovery cutoff:  (i) specific problems with the voting process; (ii) the proposed appointment, in the Plan Supplement, of one of the mediators as the initial Special Reviewer; and (iii) the proposed appointment as members of the Settlement Trust Advisory Committee of persons whose firms signed proofs of claim, used an allegedly defective E-ballot that may not be properly recording "reject" votes, and/or allegedly pressured clients to vote in favor of the Plan.  This discovery was not contemplated when the Court adopted the existing confirmation schedule. Insurers anticipate that discovery into these new topics will include written discovery and depositions.

35.     Discovery on these topics is crucial to the confirmation process and to protect the plan opponents' due process rights.  The Court has made clear that "we're going to balance, clearly the due process rights of all parties against what's necessary in this case."[21]  This necessary discovery should take place before plan confirmation objections are due, so that the parties can present their arguments based on these facts, and others still emerging, to the Court in their briefs objecting to, or supporting, confirmation of the Plan.

**C.      Expert discovery will be more complex and time-consuming than contemplated by the current schedule.**

36.     Insurers' inability to take all necessary depositions, despite unquestioned diligence, before affirmative expert reports were due has deprived the Insurers' affirmative experts of access to relevant evidence they should have had a chance to consider in preparing their reports.  Once the missing depositions of Debtors, the Coalition, the TCC, lawyers who signed proofs of claim, aggregators, and those involved in the selection of the proposed initial Special Reviewer are taken, supplemental affirmative expert reports may be appropriate in some instances.  This may lead to a need for supplemental rebuttal expert reports, depending on when the missing depositions are taken relative to the deadline to serve rebuttal expert reports.  It seems almost certain that expert reports will not all be in before plan objections are due, under the current schedule.

37.     The compressed deposition schedule for expert discovery is also unworkable. The parties have so far served 15 affirmative expert reports.  As a practical matter, only four business days are available for expert depositions under the present schedule – January 4

---

[21]     Transcript of September 23, 2021 Hearing at 229:16-17.

through January 7.  Assuming all 15 experts were deposed, the parties would have to average

four expert depositions per day.  And if there are separate rebuttal experts, the parties will need

even more time for those expert depositions.  It is neither reasonable nor appropriate to require

four or more expert depositions per day.

### Relief Requested

38.    The existing schedule is not workable.  It does not provide plan opponents due

process.  It will require confirmation objections to be served before fact or expert discovery is

complete.    That means the Court will suffer because the parties will not be able to present a full

picture of their objections, and responses thereto, before the start of the confirmation hearing.

39.    The Insurers therefore seek a short, but necessary, one-month extension of

certain dates in the Scheduling Order.  The new schedule proposed by the Insurers is as follows:

| EVENT | DATE |
|---|---|
| Deadline to Serve Written Discovery | October 8, 2021 |
| Deadline to Serve Responses & Objections to Written Discovery | October 18, 2021 |
| Document Production Substantially Complete | November 5, 2021 |
| Deadline for parties to identify the topics on which they intend to submit expert reports (other than rebuttal expert reports) | November 15, 2021 |
| Affirmative expert reports due | December 5, 2021 |
| Deadline for parties to identify expert witnesses who will submit rebuttal expert reports | December 22, 2021 |
| Voting Deadline | December 28, 2021 at 4:00 p.m. (Eastern Time) |
| Preliminary Voting Report Deadline | January 4, 2022 |
| Supplemental Claim and Discovery Report Deadline | January 6, 2022 |

| EVENT | DATE |
|---|---|
| Deadline to Complete Depositions of Fact Witnesses on issues other than voting[22] | January 10, 2022 |
| Rebuttal Expert Reports Due | January 10, 2022 |
| Final Voting Report Deadline | January 17, 2022 |
| Deadline to Complete Depositions of Expert Witnesses | January 28, 2022 |
| Deadline to complete discovery, including fact depositions, relating to voting | January 31, 2022 |
| Deadline to Exchange Deposition Designations and File Motions *in Limine* | February 4, 2022 |
| Plan Objection Deadline | February 7, 2022 |
| Deadline to Exchange Deposition Counter-Designations | February 8, 2022 |
| Deadline to Submit Joint Pretrial Order, Witness and Exhibit Lists, Oppositions to Motions *in Limine*, and for Objections to Deposition Counter-Designations | February 14, 2022 |
| Confirmation Brief / Plan Reply Deadline | February 16, 2022 |
| Final Pretrial Conference | February 18, 2022 at 10:00 a.m. (Eastern Time) |
| Confirmation Hearing | February 22, 2022 at 10:00 a.m. (Eastern Time) |

40.    This proposed schedule is necessary to respect the plan opponents' due process rights and to ensure an orderly and fair confirmation hearing for which the Court can reasonably prepare.  Given all the problems noted above, including the active resistance of plan supporters to discovery that is being reasonably pursued by the plan opponents, the proposed one-month delay in the confirmation hearing is the minimum needed to protect the rights of the plan

---

[22]    This deadline applies to (a) fact depositions noticed before December 1, 2021, including the Rule 30(b)(6) deposition of the TCC, the Rule 30(b)(6) deposition of Debtors, and the Rule 30(b)(6) deposition of the Coalition, (b) the depositions of certain lawyers and law firms that signed or submitted proofs of claims, and of aggregators such as Verus and Reciprocity, and private equity entities such as Catalur that were noticed before the date of this Order, (c) depositions concerning the selection of the Independent Special Reviewer, the STAC, and the Settlement Trustee under the Plan, and (d) any other depositions limited to the provisions of the Plan Supplement.  This deadline does not apply to voting-related depositions, for which the deadline shall be January 26, 2022.

opponents.

## Conclusion

41.     The Court should modify the confirmation hearing schedule as requested herein.

With a little over a month until the presently scheduled start of the confirmation hearing on

January 24, the existing schedule is unworkable and the parties require more time to complete

discovery and adequately prepare for trial.  Proposed Order for Motion to Modify attached

hereto as Exhibit "B".

DATED:  December 14, 2021                    Respectfully submitted,


                                             /s/ Louis J. Rizzo, Jr.
                                             Louis J. Rizzo, Jr. (#3374)
                                             REGER RIZZO & DARNALL LLP
                                             1521 Concord Pike, Suite 305
                                             Brandywine Plaza West
                                             Wilmington, Delaware  19803
                                             Phone:  (302) 477-7100
                                             Email:  lrizzo@regerlaw.com

                                             Attorneys for Travelers Casualty and Surety
                                             Company, Inc. (f/k/a Aetna Casualty & Surety
                                             Company), St. Paul Surplus Lines Insurance
                                             Company and Gulf Insurance Company


                                             Deirdre M. Richards (DE Bar No. 4191)
                                             FINEMAN KREKSTEIN & HARRIS PC
                                             1300 N. King Street
                                             Wilmington, Delaware  19801
                                             Telephone:      (302) 538-8331
                                             Email: drichards@finemanlawfirm.com

                                             Susan N.K. Gummow (admitted *pro hac vice*)
                                             FORAN GLENNON PALANDECH PONZI
                                                & RUDLOFF P.C.
                                             222 N. LaSalle St., Suite 1400

Chicago, Illinois  60601
Telephone:     (312) 863-5000
Email: sgummow@fgppr.com

Michael A. Rosenthal (admitted *pro hac vice*)
James Hallowell (admitted *pro hac vice*)
Keith R. Martorana (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone:     (212) 351-4000
Email: mrosenthal@gibsondunn.com
jhallowell@gibsondunn.com
kmartorana@gibsondunn.com

Matthew G. Bouslog (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, California  92612
Telephone:     (949) 451-3800
Email: mbouslog@gibsondunn.com

Attorneys for the AIG Companies


David M. Fournier (DE No. 2812)
Marcy J. McLaughlin Smith (DE No. 6184)
TROUTMAN PEPPER HAMILTON SANDERS LLP
Hercules Plaza
1313 Market Street, Suite 5100
P.O. Box 1709
Wilmington, Delaware  19899-1709
Phone:  (302) 777-6500

Harris B. Winsberg (admitted pro hac vice)
TROUTMAN PEPPER HAMILTON SANDERS LLP
Bank of America Plaza
600 Peachtree Street NE, Suite 3000
Atlanta, Georgia  30308-2216
Phone:  (404) 885-3000

Margaret H. Warner (admitted pro hac vice)
Ryan S. Smethurst (admitted pro hac vice)

MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
Phone:  (202) 756-8228

Attorneys for Allianz Global Risks US Insurance
Company

David M. Fournier (DE No. 2812)
Marcy J. McLaughlin Smith (DE No. 6184)
TROUTMAN PEPPER HAMILTON SANDERS LLP
Hercules Plaza
1313 Market Street, Suite 5100
P.O. Box 1709
Wilmington, Delaware  19899-1709
Phone:  (302) 777-6500

Harris B. Winsberg (admitted pro hac vice)
TROUTMAN PEPPER HAMILTON SANDERS LLP
Bank of America Plaza
600 Peachtree Street NE, Suite 3000
Atlanta, Georgia  30308-2216
Phone:  (404) 885-3000

Todd C. Jacobs (admitted pro hac vice)
John E. Bucheit (admitted pro hac vice)
BRADLEY RILEY JACOBS PC
500 West Madison Street, Suite 1000
Chicago, Illinois  60661
Telephone:  (312) 281-0295

Attorneys for National Surety Corporation and
Interstate Fire & Casualty Company

Robert D. Cecil, Jr. (No. 5317)
TYBOUT, REDFEARN & PELL
501 Carr Road, Suite 300
Wilmington, Delaware  19899-2092
Phone:  (302) 658-6901
E-mail:  rcecil@trplaw.com

Mark D. Plevin (admitted *pro hac vice*)
Kevin D. Cacabelos (admitted *pro hac vice*)
CROWELL & MORING LLP

Three Embarcadero Center, 26th Floor
San Francisco, California  94111
Phone:  (415) 986-2800
E-mail:  mplevin@crowell.com, kcacabelos@crowell.com

Toni Michelle Jackson (admitted *pro hac vice*)
Tacie H. Yoon (admitted *pro hac vice*)
Rachel A. Jankowski (admitted *pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C.  20004
Phone:  (202) 624-2500
E-mail:  tjackson@crowell.com, tyoon@crowell.com, rjankows

Attorneys for American Zurich Insurance Company, American
Insurance Company, and Steadfast Insurance Company

Maria Aprile Sawczuk (No. 3320)
GOLDSTEIN & MCCLINTOCK LLLP
501 Silverside Road
Wilmington, Delaware  19809
Phone:  (302) 444-6710
E-mail:  marias@goldmclaw.com

Laura McNally
Emily Stone
LOEB & LOEB LLP
321 N. Clark Street, Suite 2300
Chicago, Ilinois  60654
Phone:  (312) 464-3155
E-mail: lmcnally@loeb.com,
estone@loeb.com

Attorneys for The Continental Insurance

Company and Columbia Casualty Company

Matthew G. Summers (DE No. 5533)
Chantelle D. McClamb (DE No. 5978)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801-3034
Telephone: (302) 252-4428
E-mail: summersm@ballardspahr.com,
mcclambc@ballardpshar.com

Harry Lee*
John O'Connor*
Brett Grindrod*
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC  20036
Telephone: (202) 429-8078
Facsimile: (202) 429-3902
E-mail: hlee@steptoe.com,
joconnor@steptoe.com,
bgrindrod@steptoe.com
(*Admitted *pro hac vice*)

Attorneys for Clarendon America Insurance
Company, Maryland Casualty Company, Maryland
American General Group, American General Fire
& Casualty Company

Kathleen M. Miller (No. 2898)
SMITH, KATZENSTEIN & JENKINS LLP
1000 West Street, Suite 501
P.O. Box 410
Wilmington, Delaware  19899
Phone: (302) 652-8400
E-mail:  kmiller@skjlaw.com

Gary P. Seligman (admitted *pro hac vice*)
Ashley L. Criss (admitted *pro hac vice*)
WILEY REIN LLP
1776 K Street, N.W.
Washington, DC  20006
Phone: (202) 719-7000
E-mail:  gseligman@wiley.law,

acriss@wiley.law

Attorneys for General Star Indemnity Company


Michael J. Joyce (No. 4563)
JOYCE, LLC
1225 King Street, Suite 800
Wilmington, Delaware 19801
Phone: (302) 388-1944
E-mail: mjoyce@mjlawoffices.com

Kevin Coughlin (admitted *pro hac vice*)
Lorraine Armenti (admitted *pro hac vice*)
Michael Hrinewski (admitted *pro hac vice*)
COUGHLIN MIDLIDGE & GARLAND LLP
350 Mount Kemble Ave.
PO Box 1917
Morristown, New Jersey 07962
Phone: (973) 267-0058
E-mail: larmenti@cmg.law, mhrinewski@cmg.law

Britton C. Lewis, Esquire (*Pro Hac Vice*)
CARRUTHERS & ROTH, P.A.
235 N. Edgeworth St.
P.O. Box 540
Greensboro, North Carolina 27401
Phone: (336) 478-1146
E-mail: bcl@crlaw.com

Attorneys for Arrowood Indemnity Company


Bruce W. McCullough (No. 3112)
BODELL BOVÉ, LLC
1225 N. King Street, Suite 1000
Wilmington, Delaware 19801-3250
Telephone: (302) 655-6749
E-mail: bmccullough@bodellbove.com

Bruce D. Celebrezze (pro hac vice)
CLYDE & CO US LLP
Four Embarcadero Center, Suite 1350
San Francisco, California 94111
Telephone: (415) 365-9800
Facsimile: (415) 365-9801

E-mail: bruce.celebrezze@clydeco.us

Konrad R. Krebs (pro hac vice)
CLYDE & CO US LLP
200 Campus Drive | Suite 300
Florham Park, NJ 07932
Telephone: (973) 210-6700
Facsimile: (973) 210-6701
E-mail: konrad.krebs@clydeco.us

David Christian (pro hac vice)
DAVID CHRISTIAN ATTORNEYS LLC
105 W. Madison St., Suite 1400
Chicago, Illinois  60602
Telephone: (862) 362-8605
E-mail: dchristian@dca.law

Attorneys for Great American Assurance
Company, f/k/a Agricultural Insurance Company;
Great American E&S Insurance Company,
f/k/a Agricultural Excess and Surplus Insurance
Company; and Great American E&S Insurance
Company

Brian A. Sullivan (DE No. 2098)
WERB & SULLIVAN
Wilmington, Delaware  19801
Telephone: (302) 652-1100
Email: bsullivan@werbsullivan.com

William H. White Jr., Esq.
KIERNAN TREBACH LLP
1233 20th Street, NW, 8th Floor
Washington, DC  20036
Telephone: 202-712-7042
wwhite@kiernantrebach.com

John E.W. Baay II, Esq.
GIEGER LABORDE & LAPEROUSE LLC
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-
Telephone: (504) 561-0400
Facsimile: (504) 561-0100
Email: jbaay@glllaw.com

Attorneys for Gemini Insurance Company

Marla S. Benedek (No. 6638)
COZEN O'CONNOR
1201 N. Market Street, Suite 1001
Wilmington, Delaware 19801
Telephone:  (302) 295-2024
Email:  mbenedek@cozen.com

Attorneys for Traders and Pacific Insurance
Company, Endurance American Specialty
Insurance Company, and Endurance American
Insurance Company

Thaddeus J. Weaver (No. 2790)
DILWORTH PAXSON LLP
704 King Street, Suite 500
P.O. Box 1031
Wilmington, Delaware  19899-1031
(302) 571-8867 (telephone)
(302) 655-1480 (facsimile)
tweaver@dilworthlaw.com

William E. McGrath, Jr. (admitted *pro hac vice*)
DILWORTH PAXSON LLP
2 Research Way, Suite 103
Princeton, New Jersey  08540
(609) 924-6000 (telephone)
(215) 893-8537 (facsimile)
wmcgrath@dilworthlaw.com

Attorneys for Munich Reinsurance America, Inc.,
formerly known as American Re-Insurance
Company

Kathleen M. Miller (No. 2898)
SMITH, KATZENSTEIN & JENKINS LLP
1000 West Street, Suite 1501
P.O. Box 410
Wilmington, Delaware  19899 [Courier 19801]
Telephone: (302) 652-8400
Email: kmiller@skjlaw.com

Lloyd A. Gura*
Pamela J. Minetto*
MOUND COTTON WOLLAN & GREENGRASS LLP

One New York Plaza 44th Floor
New York, NY 10004
Tel: (212) 804-4282
Email: lgura@moundcotton.com
pminetto@moundcotton.com
(*Admitted pro hac vice)

Attorneys for Indian Harbor Insurance Company,
on behalf of itself and as successor in interest to
Catlin Specialty Insurance Company

Stephen M. Miller (No. 2610)
Carl N. Kunz, III (No. 3201)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware  19801
Telephone: (302) 888-6800
Email:   smiller@morrisjames.com
ckunz@morrisjames.com

Margaret M. Anderson, Esq. (admitted *pro hac vice*)
Ryan T. Schultz (admitted *pro hac vice*)
Adam A. Hachikian (admitted *pro hac vice*)
Kenneth M. Thomas (admitted *pro hac vice*)
FOX SWIBEL LEVIN & CARROLL LLP
200 W. Madison Street, Suite 3000
Chicago, Illinois  60606
Telephone: (312) 224-1200
Email:   panderson@foxswibel.com
rschultz@foxswibel.com
ahachikian@foxswibel.com
kthomas@foxswibel.com

Attorneys for Old Republic Insurance Company

Paul Logan (No. 3339)
POST & SCHELL, P.C.
300 Delaware Avenue
Suite 1380
Wilmington, Delaware  19801
Phone:  (302) 251-8856
Fax:  (302) 251-8857
E-mail:  plogan@postschell.com

IFRAH PLLC
George R. Calhoun (*pro hac vice*)
1717 Pennsylvania Ave., N.W.
Suite 650
Washington, DC  20006
Phone:  (202) 840-8758
E-mail:  george@ifrahlaw.com

Attorneys for Argonaut Insurance Company and
Colony Insurance Company


R. Karl Hill (Del. Bar No. 2747)
SEITZ, VAN OGTROP & GREEN, P.A.
222 Delaware Avenue
Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 888-0600
Email: khill@svglaw.com

-and-


Douglas R. Gooding (admitted *pro hac vice*)
Jonathan D. Marshall (admitted *pro hac vice*)
Samuel N. Rudman (admitted *pro hac vice*)
CHOATE HALL & STEWART, LLP Two
International Place
Boston, MA 02110
Telephone: (617) 248-5000
dgooding@choate.com
jmarshall@choate.com

and-

Kim V. Marrkand (admitted *pro hac vice*)
Laura Bange Stephens (admitted *pro hac vice*)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO PC
One Financial Center
Boston, MA 0211
Telephone: (617) 542-6000
KVMarrkand@mintz.com
LBStephens@mintz.com

Attorneys for Liberty Mutual Insurance Company

Kathleen M. Miller (No. 2898)
SMITH, KATZENSTEIN & JENKINS LLP
1000 North West Street
Suite 1501
P.O. Box 410
Wilmington, Delaware  19899 (courier 19801)
Telephone:  302-652-8400

Ronald P. Schiller (admitted *pro hac vice*)
Matthew A. Hamermesh (admitted *pro hac vice*)
Sharon F. McKee (admitted *pro hac vice*)
Elizabeth C. Dolce (admitted *pro hac vice*)
HANGLEY ARONCHICK SEGAL PUDLIN &
SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103
Telephone:  (215) 568 6200
E-mail:  rschiller@hangley.com,
mhamermesh@hangley.com,
smckee@hangley.com, edolce@hangley.com

Attorneys for Arch Insurance Company


-and-

Stephen M. Miller (No. 2610)
Carl N. Kunz, III (No. 3201)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware  19801
Telephone: (302) 888-6800
Email:  smiller@morrisjames.com
ckunz@morrisjames.com

Margaret M. Anderson, Esq. (admitted *pro hac vice*)
Ryan T. Schultz (admitted *pro hac vice*)
Adam A. Hachikian (admitted *pro hac vice*)
Kenneth M. Thomas (admitted *pro hac vice*)
FOX SWIBEL LEVIN & CARROLL LLP
200 W. Madison Street, Suite 3000
Chicago, Illinois  60606
Telephone: (312) 224-1200
Email:   panderson@foxswibel.com
rschultz@foxswibel.com
ahachikian@foxswibel.com
kthomas@foxswibel.com

Attorneys for Old Republic Insurance Company