**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) (Jointly Administered) |
| Debtors. | **Hearing Date: January 10, 2022, at 10:00 a.m. (ET)** **Objection Deadline: January 3, 2022, at 4:00 p.m. (ET)** |

## MOTION OF JOHN DOE[1] FOR AN ORDER AUTHORIZING THE LATE FILING OF PROOF OF CLAIM

COMES NOW the Movant John Doe, by and through his undersigned counsel, and moves this Court for an Order Authorizing the Late Filing of Proof of Claim.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District for the District of Delaware (February 29, 2012).

2.     Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.     The statutory and legal foundations for the relief sought herein are § 105(a) of the U.S. Bankruptcy Code and the Federal Rule of Bankruptcy Procedure ("FRBP") 3003(c) and 9006(b)(1).

4.     The Movant consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments

---

[1]     Due to the sensitive nature of Movant's allegations, he files this motion using the pseudonym "John Doe."  Debtors and the Court will be made aware of John Doe's true identity, as necessary.

consistent with Article III of the United States Constitution, pursuant to Del. Bankr. L.R. 9013-1 (f).

### BACKGROUND

5.     On February 18, 2020 ("Petition Date"), the above-captioned debtors and debtors-in-possession ("Debtors") filed Chapter 11 bankruptcy petitions with this Court.

6.     On May 26, 2020, this Court entered an order setting November 16, 2020 as the bar date ("Bar Date") for filing proofs of claims in these cases.  Dkt. 695.

7.     The Movant, an adult, is the victim of "Sexual Abuse" in "Scouting," as those terms are defined in the Sexual Abuse Survivor Proof of Claim form.  *See* Dkt. 695, Exhibit ("Ex.") 7.

8.     Movant suffered sexual abuse in Scouting as described in the attached Exhibit 1, the operative Complaint in Movant's lawsuit in the State of Oregon, *R.A. v. Oregon Trail Council, Inc., Boy Scouts of America*, OR Circ. Ct. 21CV06190 (Lane County), filed by undersigned counsel on February 16, 2021.  Specifically, Movant was a member of Cub Scout Pack 47, out of Oceanlake, Oregon, sponsored by the Oceanlake Elks Lodge No. 1886, from approximately 1980-1990.  His pack was charted by the Oregon Trail Council.  A Cub Scout leader associated with a Cub Scout Pack out of the nearby Reedsport, Oregon or Florence, Oregon sexually abused Movant during a Cub Scout camping event at a campsite outside of Florence, Oregon in 1989 or 1990.  Movant was eight or nine years old.

9.     On November 6, 2016, Movant was involved in a serious motor vehicle collision that caused him to lose his right leg, suffer a traumatic brain injury, and suffer other serious medical injuries.  Declaration of Movant R.A. ("R.A. Decl."), filed herewith, ¶ 3.

10.      In October 2018, as Movant was healing from the November 2016 crash, he was hit by an impaired driver, which reinjured his brain and resulted in him suffering frequent seizures and other serious injuries.  *Id*. ¶ 4.

11.      During the time period from February 18, 2020 through November 16, 2020, the traumatic brain injury affected Movant's cognitive skills, including his comprehension of events and analytical and critical thinking skills.  Some days, he was unable to get out of bed, understand what was happening around him, or even tell someone how to spell his own name. *Id*. ¶ 5.

12.      Following the October 2018 incident, and continuing from February 18, 2020 through November 16, 2020, Movant suffered serious seizures that were so traumatic they sometimes required him to be flown via Life Flight to a suitable hospital.  His providers prescribed him anti-seizure medications that sedated him and caused him to be in an almost vegetal state, unable to leave bed or comprehend his surroundings.  Following the seizures, he would be confused for days.  These conditions persisted from February 18, 2020 through November 16, 2020.  *Id.* ¶ 6.

13.      The incidents also caused him to suffer damage to his pancreas, which still experiences substantial swelling and causes blood infections such as sepsis that require hospitalization.  *Id*. ¶ 7.

14.      Between the incident on November 6, 2016 and the Bar Date, Movant was in bed or in the hospital the majority of the time.  *Id.* ¶ 8.  His injuries were so severe that his providers did not expect him to live this long.  *Id*.

15.      On November 18, 2020, Movant contacted the undersigned counsel regarding representation in connection with a potential claim against Debtors and associated individuals and entities relating to his sexual abuse in Scouting and regarding this bankruptcy proceeding.

16.     Due to significant medical issues resulting from a motor vehicle collision in 2016 and being hit by an impaired driver in 2018, Movant did not become aware of this bankruptcy proceeding or the associated Bar Date until the week of November 18, 2020, shortly before contacting undersigned counsel regarding representation. *Id.* ¶ 11. Due to Movant's medical conditions, it would have caused Movant substantial hardship to contact counsel or file a Proof of Claim prior to the November 16, 2020 Bar Date. *Id.*

17.     Movant, through undersigned counsel, filed a lawsuit against the local council responsible for his abuse on February 16, 2021 and served that lawsuit on the council. Ex. 1.

18.     Movant has, at all times, acted in good faith and not for the purpose of delay or causing prejudice to Debtors.

19.     Movant's state court counsel, Dumas & Vaughn, LLC, are civil litigation attorneys with significant experience representing sexual assault survivors in tort lawsuits. Declaration of Ashley L. Vaughn ("Vaughn Decl."), filed herewith, ¶ 2. They do not practice or specialize in bankruptcy law. Until recently, they were unaware that they could request relief for a late-filed proof of claim for Movant. Additionally, the necessity of this recourse did not become fully apparent until the finalization of the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC, Dkt. 6443, which does not adequately address how claims such as R.A.'s will be valued or resolved under the Trust Distribution Procedures, including for survivors like R.A. who filed lawsuits against the local councils and sponsoring organizations associated with their troops. His counsel filed this motion as soon as they understood it may be necessary to preserve his rights. *Id.* Movant's counsel has, at all times, acted in good faith and not for the purpose of delay or causing prejudice to Debtors.

**RELIEF REQUESTED**

20.     Movant respectfully requests the entry of an Order consistent with § 105(a) of the

Bankruptcy Code and FRBP 3003(c) and 9006(b)(1), authorizing the filing of a proof of claim

and requiring acceptance of that filing by the Debtors and their claims agent.

**NOTICE**

21.     Subject to Del. Bankr. L. R. 5005-4(c) and 9036-1, the Movant will provide

notice of this Motion to: (i) Office of the United States Trustee for the District of Delaware; (ii)

counsel to the Debtors; and (iii) all parties entitled to notice of this Motion pursuant to

Bankruptcy Rule 2002.

**NO PRIOR MOTION**

22.     The Movant filed no prior motion for the relief sought in this Motion with this

Court or any other court.

**THE MOVANT'S FAILURE TO TIMELY FILE A PROOF OF CLAIM WAS THE
RESULT OF EXCUSABLE NEGLECT**

23.     Movant requests that this Court allow him to file a late proof of claim because his

failure to file a proof of claim prior to the Bar Date was due to excusable neglect.  Under FRBP

9006(b)(1), as applied to FRBP 3003(c)(3), the court has discretion to allow a creditor to file a

late proof of claim if the lateness is due to "excusable neglect."  FRBP 9006(b)(1) provides in

pertinent part:

> [W]hen an act is required or allowed to be done at or within a specified
> period by these rules or by a notice given thereunder or by order of court,
> the court for cause shown may at any time in its discretion (1) with or
> without motion or notice order the period enlarged if the request therefor
> is made before the expiration of the period originally prescribed or as
> extended by a previous order or (2) on motion made after the expiration
> of the specified period permit the act to be done where the failure to act was the
> result of excusable neglect.

In *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395, 113 S. Ct. 1489 (1993), the Supreme Court addressed the meaning of "excusable neglect" as used in FRBP 9006(b)(1).  The Supreme Court found that "[b]ecause Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable,' . . . the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."  *Id.* at 395.  The Supreme Court approved four factors to help determine whether excusable neglect exists, also recognizing that equity may compel the consideration of additional factors: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay (including whether it was within the reasonable control of the movant); and (4) whether the movant acted in good faith.  *Id.* (referring to factors considered by the Court of Appeals in *In re Pioneer Inv. Services Co.*, 943 F. 2d 673, 677 (6th Cir. 1991)).  No factor is determinative.  *Hefta v. Off'l Comm. of Unsecured Creditors (In re American Classic Voyages Co.)*, 405 F.3d 127, 133 (3rd Cir. 2005).  The Third Circuit then applied and elaborated upon these factors in *Manus Corp. v. NRG Energy, Inc.* (*In re O'Brien Envtl Energy, Inc.*), 188 F.3d 116 (3rd Cir. 1999).

### A.  There is no prejudice to Debtors.

24.     There is no prejudice to Debtors in allowing Movant R.A.'s claim.  Any alleged prejudice must be based on actual evidence—it cannot be an "imagined or hypothetical harm[.]" *Id.* at 127.  The *O'Brien* court discussed considerations regarding prejudice to the debtor: (i) whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated; (ii) whether the payment of the claim would force the return of amounts already paid out under the confirmed plan or affect the distribution to creditors; (iii) whether the payment of the claim would jeopardize the success of the debtor's reorganization; (iv) whether allowance of the claim would adversely impact the debtor; and (v) whether allowance of the claim would open

the floodgates to other late claims. *Id*. at 126-28. None of these factors weigh in favor of Debtors.

25.     Movant R.A.'s sexual abuse claim is one of over 82,000 other sexual abuse claims pending against the Debtor. Debtor cannot plausibly cannot claim surprise at the existence of or filing of one additional claim, especially considering that interested parties, including the Tort Claimants Committee, have expressed significant concerns during the course of this case that the Bar Date did not allow survivors sufficient time to file claims. A reorganization plain is not yet confirmed, therefore Movant's claim will not be the cause of unwinding transactions or payments. The payment of Movant's claim, standing alone, will not jeopardize the success of the Debtors' reorganization. Debtors and insurers will still have an opportunity to defend against the merits of Movant's claim. The fact that the Debtor did not account for Movant's claim is insufficient to establish prejudice under *Pioneer*. Finally, Movant's claim will not open the floodgates to other late claims because the facts underlying the reason for his late-filed claim are unique and rare. Further, the facts underlying his claim are consistent with those of other abuse claims—it does not represent a new class or type of claim.

**B. There is no negative impact on judicial proceedings due to the length of delay.**

26.     The length of the delay and the impact of that delay on judicial proceedings requires the court to examine the party's conduct causing delay relative to the stage of the bankruptcy process. *Pioneer*, 507 U.S. at 388. Even though the length of the delay here is notable, it has not and will not negatively impact the reorganization process. *See O'Brien*, 188 F.3d at 130 (noting length of delay takes on significance depending on its impact on proceedings.) From that perspective, the Movant's delay is inconsequential.

27.     The Bar Date was approximately thirteen months ago, however the current Modified Fifth Amended Chapter 11 Plan of Reorganization was not filed until September 29,

2021 and the Order Approving the Disclosure Statement was not entered until September 30, 2021. Debtors continue to amend that Plan—they filed a Plan Supplement as recently as November 30, 2021—and the parties continue to engage in negotiations. Given these developments, Movant's late filing did not and will not delay or otherwise impact the timeliness of the Debtors' reorganization or this judicial proceeding. The Movant's delay is not a material factor bearing on the progress of the Debtors' bankruptcy case.

**C. The delay is justified, and Movant is acting in good faith.**

28.    Movant did not file a proof of claim prior to the Bar Date because he was medically incapacitated for much of the time between February 18, 2020 and November 16, 2020, incapable without substantial hardship of retaining counsel, gathering the information necessary to complete a proof of claim, or filing a proof of claim *pro se*. His significant medical injuries prevented him from even being aware that Debtors had filed for bankruptcy and that there was a Bar Date by which he had to file a claim. He retained counsel as soon as practicable and took steps necessary to preserve his claim against the local council. Movant's medical injuries account for his inability to file a proof of claim prior to the Bar Date, and he has, at all times, acted in good faith and not for the purpose of delay or causing prejudice to Debtors.

29.    Movant's state court counsel's neglect accounts for the amount of time that passed between the Bar Date and the present. His state court counsel are civil litigation attorneys who do not generally practice bankruptcy law. Until recently, they were unaware that they could request relief for a late-filed proof of claim for Movant. Additionally, the necessity of this recourse did not become fully apparent until the finalization of the current Plan, which does not adequately address how claims such as R.A.'s will be valued or resolved under the Trust Distribution Procedures. His counsel filed this motion as soon as they understood it may be necessary to preserve his rights. Admittedly, under ideal circumstances, Movant's counsel

would have filed this Motion sooner, but this is the type of "excusable neglect" the *O'Brien* court contemplated, and for which equitable relief is available.  188 F.3d at 125 (citing *Pioneer* for the concept that the "mere use of the word 'neglect' encompassed 'omissions caused by carelessness'").  Movant should not be penalized.  Movant's counsel has also acted in good faith and not for the purpose of delay or causing prejudice to Debtors.

WHEREFORE, for the foregoing reasons, Movant respectfully requests that this Court enter an order permitting Movant to file a proof of claim and deeming such claim as timely filed, and granting such other and further relief as the Court deems just and proper.

DATED:  December 17, 2021                Respectfully Submitted,

**BIELLI & KLAUDER, LLC**

By:  */s/ David M. Klauder*
David M. Klauder, Esquire (No. 5769)
1204 N. King Street
Wilmington, DE 19801
Phone: (302) 803-4600
Fax: (302) 397-2557
Email: dklauder@bk-legal.com

and

**DUMAS & VAUGHN, LLC**

Ashley L. Vaughn, Esquire, *admitted pro hac vice*
3835 NE Hancock St., Ste. GLB
Portland, OR 97212
Phone: (503) 616-5007
Facsimile: (503) 616-5007
Email: ashley@dumasandvaughn.com

*Counsel to John Doe*