IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>                Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Re: Dkt. 7783 & 7769** |

**RESPONSE OF THE ZALKIN LAW FIRM, P.C., AND PFAU COCHRAN VERTETIS
AMALA PLLC TO THE CERTAIN INSURERS' (i) MOTION TO MODIFY
THE CONFIRMATION SCHEDULING ORDER AND (ii) MOTION FOR
AN EXPEDITED HEARING ON SAME**

The Zalkin Law Firm, P.C., and Pfau Cochran Vertetis Amala PLLC ("Zalkin and Pfau") respond to the *Certain Insurers' (i) Motion to Modify the Confirmation Scheduling Order and (ii) Motion for an Expedited Hearing on Same* [D.I. 7769] (the "Motion") filed by certain insurers (the "Insurers") in the above-captioned cases (the "Bankruptcy Cases"),[1] which seeks to continue the commencement of the confirmation hearing from January 24 to February 22, 2022.

      1.      Notwithstanding the incredibly compressed timeframe, Zalkin and Pfau are prepared for the confirmation proceedings to commence on January 24, 2022 in accordance with the Court's schedule. They understand, however, that other parties, for entirely legitimate reasons based on the nature of their plan objections, may not be able to complete their discovery in sufficient time to be able to present their case commencing on the 24th. Zalkin and Pfau write to suggest that there is a way to bridge the Debtors' stated desire to commence on a timeframe that may permit completion of the confirmation proceedings before the Debtors say they will completely run out of resources, on the one hand, with the legitimate due process concerns of others who contest the confirmability of the Plan, on the other hand.

---

[1]     Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

1

2.   The way to bridge these concerns is to bifurcate the confirmation proceedings into two phases.  Bifurcation of the confirmation proceedings into two phases would permit the Court to address discrete issues as threshold determinations with respect to which discovery could be completed or is not necessary before proceeding with the rest of the confirmation issues.

3.   Phase one of the confirmation proceedings could commence on January 24 and could address gating issues, including whether the Court has subject matter jurisdiction and statutory authority to grant the proposed non-debtor releases of local councils, chartered organizations, and settling insurers and potentially other discrete issues such as the propriety of the plan findings that are disputed by certain of the non-settling insurers.

4.   The scope of subject matter jurisdiction and statutory authority is a major dividing point between the parties.  For example, Zalkin and Pfau submit that bankruptcy jurisdiction under Article III, the relevant statutes, and applicable Third Circuit precedent does not extend to the Plan's proposed nonconsensual release of survivors' direct, non-derivative claims against the non-debtor chartered organizations and local councils or to their separate, independent insurance policies under the circumstances of this case.[2]

---

[2] It is worth noting, too, that the Plan as its exists following the version of the Hartford settlement reflected in the Plan Supplement [D.I 7515-10, Ex. J] and the term sheet for settlement with the Century Insurers [D.I. 7741] is fundamentally inconsistent with the Plan as it existed when the Disclosure Statement was approved.  As approved, the Disclosure Statement assured survivors that they could freely sue non-Participating or Contributing Chartered Organizations for pre-1976 claims.  *See* Exhibit 1, at p. 17 (Frequently Asked Questions).  That right is now purported to be eliminated as to a vast number of Chartered Organizations, including any Chartered Organization (i) that is separately insured by a Hartford insurer with respect to a non-Abuse policy that could cover Abuse Claims (*i.e.*, a comprehensive general liability policy that most entities maintain) [D.I. 7515-10 at pp.16-17], (ii) that is similarly separately insured by a Century Insurer [D.I. 7741-1, at §12] (providing that chartered organizations that are not Participating or Contributing Chartered Organizations "shall receive the benefit of the Settling Insurer Policy Injunction and the release of all Abuse Claims that are covered under insurance policies issued by the [Century] Insurers"), or (iii) that is not associated with a Methodist or Roman Catholic Church [D.I. 7741-1 at § 16] (granting *all* Chartered Organizations *other than* those associated with the Methodist or Roman Catholic Church "the full channeling injunction

5. Zalkin and Pfau respectfully submit that judicial and estate resources would be conserved, and more efficiently deployed, if the Court were to address these discrete issues first. If the Court ultimately determines it lacks subject matter jurisdiction or statutory authority to grant the proposed non-debtor releases, the parties would all be best served by obtaining that determination prior to expending what seems likely to be weeks of trial time litigating all the other issues associated with confirmation of the proposed plan. An earlier determination of subject matter jurisdiction and any other gating issues would enable the Debtors to amend the plan in time to propose a confirmable plan before their resources expire.

6. Pfau and Zalkin estimate that they need approximately two trial days to present their evidentiary case that there is not subject matter jurisdiction here, and at least one day for argument. (The length would also depend on the scope of the matter being tried.) A trial involving all parties would likely take at least five trial days, including argument by all parties.

7. A recent example of bifurcated confirmation proceedings is provided by Judge Dorsey's handling of the confirmation proceedings in the *Mallinckrodt* case. *See In re Mallinckrodt PLC*, Case No. 20-12522 (Bankr. D. Del. Nov. 23, 2021) (Docket No. 5510). Trial procedures could be negotiated that would minimize overlap between the phases and ensure an efficient confirmation proceeding that optimizes the time the Debtors say they have and balances the legitimate due process concerns of other parties such as the non-settling insurers.

8. Zalkin and Pfau respectfully suggest the parties be ordered to meet and confer on the mechanics and division of a phased trial plan to accomplish the objectives described above.

---

applicable to Abuse Claims" if the Local Councils increase their contribution by $15 million and add $25 million to the DST Note, and the applicable Chartered Organization releases its indemnity claims and agrees to assign its insurance rights to the Trust). These provisions, in addition to being beyond the permissible scope of bankruptcy jurisdiction and authority, are so diametrically at odds with the Plan as solicited as to require further updated solicitation.

DATED:  December 20, 2021	Respectfully Submitted,

                **BIELLI & KLAUDER, LLC**

By: */s/ David M. Kluader*
David M. Klauder, Esquire (No. 5769)
1204 N. King Street
Wilmington, DE 19801
Phone: (302) 803-4600
Fax: (302) 397-2557
Email: dklauder@bk-legal.com

KTBS LAW LLP
Thomas E. Patterson (p*ro hac vice*)
Daniel J. Bussel (p*ro hac vice*)
Robert J. Pfister (*pro hac vice*)
Sasha M Gurvitz (p*ro hac vice*)
1801 Century Park East, Twenty-Sixth Floor
Los Angeles, California 90067
Telephone	310-407-4000
Email:  tpatterson@ktbslaw.com;
       dbussel@ktbslaw.com
       rpfister@ktbslaw.com
       sgurvitz@ktbslaw.com

*Counsel to each of The Zalkin Law Firm, P.C., and Pfau Cochran Vertetis Amala PLLC*