## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Case No. 20-10343 (LSS) |
| Boy Scouts of America and Delaware BSA, LLC, | Chapter 11 |
| | Jointly Administered |
| Debtors.[1] | Re: D.I. 7769 |

## JOINDER OF THE ROMAN CATHOLIC AD HOC COMMITTEE TO THE CERTAIN INSURERS (I) MOTION TO MODIFY THE CONFIRMATION SCHEDULING ORDER AND (II) MOTION FOR AN EXPEDITED HEARING ON SAME

The Roman Catholic Ad Hoc Committee (the "RCAHC") hereby join (the "Joinder") Certain Insurers (I) Motion to Modify the Confirmation Scheduling Order and (II) Motion for an Expedited Hearing on Same [D.I. 7769] (the "Modification Motion").[2]

### PRELIMINARY STATEMENT

1.      In the past seven (7) days the Debtors have placed two items on the docket that materially alter the treatment of Roman Catholic Chartered Organizations; the Century and Chubb Companies Term Sheet and the Revised Plan.

2.      Under those documents, the Debtors purport, non-consensually, to compromise, waive and assign every past or present Roman Catholic Chartered Organization's rights in its own insurance policies if the policies were issued by a Settling Insurer and cover an Abuse Claim (the "Chartered Organization Insurance Rights Impairment").

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Unless otherwise defined, capitalized terms have the meanings stated in the Modification Motion or in the Debtors' Second Modified Fifth Amended Plan of Reorganization [D.I. 7832] (the "Revised Plan").

3.      In addition, the Century and Chubb Companies Term Sheet and the Revised Plan now affirmatively seek to divest all Roman Catholic Chartered Organizations of their rights as additional insureds in policies procured by the Debtors or the Local Councils from a Settling Insurer if it covers an abuse claim, without regard to when the policy was purchased, (the "Additional Insured Rights Impairment").  Both of these changes are significant departures from the prior plan that raise troubling impacts on third parties' property rights.

### The Prior Plan's Options for Chartered Organizations

4.      Under the prior plan a Chartered Organization had three options:

a.   Option #1 (Default Treatment) -  A Chartered Organization that chose Option #1[3] and did not object to the plan would retain all of its rights in the BSA Policies and Local Council Policies issued prior to January 1, 1976, while receiving a full release and channeling injunction for Abuse Claims arising January 1, 1976 forward;

b.   Option #2 – (Contributing Chartered Organization Treatment) - A Chartered Organization could negotiate a contribution to the Settlement Trust and receive a full release and channeling injunction for all Abuse Claims.  In exchange, the Chartered Organization would waive all its rights in all the BSA Policies and Local Council Policies.

c.   Option #3 (Opt-Out) A Chartered Organization that chose Option #3 and opted out by: (i) objecting to the prior plan; or (ii) informing the Debtors of an intent to opt out would not receive any release or channeling injunction.  However,

---

[3]      As defined and described in the Summary Regarding Chartered Organizations' Options (the "Chartered Organization Plain English Summary") distributed to Chartered Organizations as part of the Debtors' disclosure statement and solicitation materials.

the opting-out Chartered Organization would retain all its rights in all BSA Policies and Local Council Policies.

5.      None of those three options required that a Chartered Organization's rights in its own insurance policies would be compromised, consensually or non-consensually, that those policies would be assigned to the Settlement Trust or that a Chartered Organization would have to release its own insurance carriers from claims and rights under its own policies.

6.      It was disclosed that there could be settlements in the future with insurance carriers that could seek to impair a Chartered Organization's additional insured rights in BSA and Local Council policies.  The only settlement at the time acceptance or rejection of the Plan was solicited was the Hartford Insurance Settlement term sheet, which did not mandate a non-consensual impairment.

### The Revised Plan, the Century and Chubb Companies Term Sheet and Roman Catholic Chartered Organizations' Treatment and Options

7.      On December 13, 2021, the Debtors filed the Century and Chubb Companies Term Sheet on the docket.  On December 17, 2021, the Debtors filed the Revised Plan.  The Revised Plan incorporates a Century and Chubb Companies Settlement Agreement, which does not yet exist and is not appended to the Revised Plan.  Instead, parties are referred to Century and Chubb Companies Term Sheet.

8.      Based on the RCAHC's initial review of the Revised Plan, it appears that fundamental provisions of that term sheet (*e.g.* the impairment and assignment of Chartered Organizations' own insurance policies) are not actually set out in the plan.  Instead, those mechanisms will be tucked away in ancillary documents that do not yet exist but will be provided pursuant to a Plan Supplement.

3

9.      What the RCAHC can determine is that the options for Roman Catholic Chartered

Organizations are:

a.  Object to the Revised Plan – in this scenario (as opposed to the prior Opt-Out

Option) a Roman Catholic Chartered Organization would receive a release and

channeling injunction for all Abuse Claims if there is coverage under a policy

issued by a Settling Insurer to the Debtors, the Local Councils or that particular

Roman Catholic Chartered Organization.  If there is no policy issued by a

settling insurer that covers the claim, then there is no release and channeling

injunction.  However, that Roman Catholic Chartered Organization would be

forced into Chartered Organization Insurance Rights Impairment and the

Additional Insured Rights Impairment without any information regarding its

insurance rights at issue.  Even with an objection, a Roman Catholic Chartered

Organization would get its own, unique patchwork quilt of releases and

channeling injunctions with unknown holes in it.

b.  Do Not Object to the Revised Plan – in this scenario, if a Roman Catholic Entity

does not object to the Revised Plan it also gets a full blanket channeling

injunction for all Abuse Claims arising after January 1, 1976.  The pre-1976

patchwork quilt remains as does the forced Chartered Organization Insurance

Rights Impairment and the Additional Insured Rights Impairment

c.  Pay to be a Contributing Chartered Organization– under this scenario a Roman

Catholic Chartered Organization can get a full release and channeling

injunction for all time in exchange for consenting to the Chartered Organization Insurance Rights Impairment and the Additional Insured Rights Impairment.[4]

**Information Needed to Decide Whether to Object to the Revised Plan**

10.    These options are fundamentally different than the options presented under the prior plan.  To make an informed choice as to whether to object, not object or settle, each Roman Catholic entity needs to know the following, all of which is in the possession or control of the Debtors, the Local Councils, Century, the Chubb Companies or Hartford:

    a.  What BSA Policies issued by Century, the Chubb Companies and Hartford provide coverage to Roman Catholic Chartered Organizations as additional insureds for present or future Abuse Claims?

    b.  For each Roman Catholic Chartered Organization, what Local Council Policies issued by Century, the Chubb Companies and Hartford provide coverage to a particular Roman Catholic Chartered Organization for present or future Abuse Claims?

    c.  For each Roman Catholic Chartered Organization, what non-BSA Policies and non-Local Council Policies provide coverage to that Chartered Organization for present or future Abuse Claims?  Is it a policy procured directly by the Roman Catholic Chartered Organization?  Is it a policy procured by a diocese or archdiocese or other entity but under which that Roman Catholic Chartered Organization is an additional insured or otherwise has rights to coverage?

---

[4]    This is a special burden imposed on Roman Catholic and United Methodist Chartered Organizations since the Local Councils and Chubb/Century Settlements are paying for all Other Chartered Organizations to be fully protected as Contributing Chartered Organizations.  Upon information and belief, the United Methodist Ad Hoc Committee is close to an agreement in principle which would result in all United Methodist Chartered Organizations becoming Contributing Chartered Organizations.

       d.   Which present Abuse Claims are covered by each of the categories above?

11.      Only with this information can a Roman Catholic Chartered Organization know where the holes are — and how big those holes are — in the patchwork quilt of releases.  Only with this information can a Roman Catholic Chartered Organization understand the impact of the Chartered Organization Insurance Rights Impairment on their own insurance policies.  Only with this information can a Roman Catholic Chartered Organization make an informed decision whether to object to the Revised Plan.

12.      None of this information is in the disclosure materials or the Plan Supplement.

13.      The RCAHC needs to take targeted discovery to obtain this information.  The discovery will require discrete interrogatories, requests for production, and 30(b)(6) depositions for the areas of inquiry outlined above.

14.      The RCAHC recognizes that while targeted, the requests are not insubstantial given that the Revised Plan provides a set of releases and impairments to each Roman Catholic Chartered Organization.  But that is by the design of the Debtors, the Coalition, the FCR, Century, the Chubb Companies, and Hartford.

15.      If Century wants to be released from a Roman Catholic Chartered Organization's own policy and have a portion of that policy assigned to the Settlement Trust, they must identify the policy and state that it provides coverage for abuse claims.

16.      It is public record that counsel for Century just entered their appearance in the Diocese of Buffalo bankruptcy case.  Century did so not because they insured the diocese, but instead because they insured many of the parishes within the diocese for many years.  There are 161 parishes in that diocese and the record before this Court shows Century has been writing policies to charitable organizations for 70 or 80 years at least.  Even if only ten percent (10%) of

those parishes bought policies for ten (10) years, that implicates 161 policies.  There are more than 200 dioceses and archdioceses in the United States. It is no exaggeration to assume that there could be tens of thousands of policies issued to local parishes, dioceses, or archdioceses by Century, for which Century is demanding to be released from for Abuse Claims and have the polices assigned to the Settlement Trust, though Century has never identified or produced those policies.

17.     In addition, neither Century, the Chubb Companies, nor Hartford has produced a 30(b)(6) witness on these topics.

18.     Hartford did produce a 30(b)(6) witness for the Hartford Term Sheet on December 2, 2021.  However, there was no hint that Hartford was seeking to force anything like the Chartered Organization Insurance Rights Impairment in the Hartford Term Sheet.  It was not until November 30, 2021, when the Debtors filed their Plan Supplement containing a purported Hartford Insurance Settlement Agreement that there was any hint that Hartford might do so. *See* Plan Supplement, D. I. No. 7515-10, Exhibit J.

19.     However, the deposition of Hartford's own 30(b)(6) designee made clear that the settlement agreement included in the Plan Supplement was not an *actual* settlement agreement because it was only an unsigned draft. *See* Exhibit 3 to 12/2/201 Deposition of Michael Hotaling, 30(b)(6) Designee of Hartford Insurance Company; Deposition of Michael Hotaling, 30(b)(6) Designee of Hartford Insurance Company, pp. 20- 29. This designee was instructed not to answer or did not answer certain questions about the draft settlement agreement because he had never seen it. *Id.* at 21-22, 26-29. It was not until December 17, 2021 when the Revised Plan was filed that it became clear the Hartford was seeking to force the Chartered Organization Insurance Impairment onto Roman Catholic Chartered Organizations.

## An Extension of the Confirmation Schedule is Needed

20.     The need for this information did not arise three months ago in September 2021,

when the plan confirmation process got underway with the disclosure statement hearings.  The

need arose **within in the past week and over the past weekend**, as the Debtors put on the docket

documents that fundamentally alter the treatment of Roman Catholic Chartered Organizations and

their options under the Revised Plan.  Three months into this process and only three weeks before

objections to the Revised Plan are due on January 10, 2022.

21.     This is on top of and in addition to the litany of discovery, fact and expert, outlined

in the Modification Motion that remains outstanding.

22.     There is simply no way that the RCAHC's new discovery can be answered,

documents produced, and witnesses deposed in time for a proper evaluation of whether to object

and to prepare an objection before January 10, 2022.  All discovery was supposed to have closed

after months of effort, on January 5, 2022.  That would leave just eight (8) business days after the

hearing on the Modification Motion to begin and finish this newly necessitated discovery.

23.     It would be manifestly unjust for the Debtors, and others, to seek to hold this Court

and the RCAHC to the existing schedule in this case when the Revised Plan so clearly violates that

schedule.  The Plan Supplement was due on November 30, 2021.  That deadline was not an

accident.  For due process to be present in a confirmation process, parties need to receive

information with enough time to process it, take necessary discovery, evaluate their voting

decisions, and decide whether to object to a plan.

24.     Yet nearly three weeks after that deadline, the Debtors filed the Revised Plan, a

plan that is still incomplete because there is no final, executed Century and Chubb Companies

Insurance Settlement Agreement or Hartford Insurance Settlement.  Instead, as best as RCAHC

can tell, the Revised Plan states that those documents will be provided later, in another Plan Supplement, at a date to be determined.

25.     If there is one thing that experience teaches parties in this case related to insurance settlements is there can be enormous and prejudicial changes between a term sheet and just a draft settlement agreement included in a Plan Supplement.  Nor will such a draft be necessarily the final word on what the actual settlement might contain.  Indeed, the parties still await the Hartford Settlement Agreement and the Revised Plan points to the Hartford Term Sheet filed late in the summer, not the draft settlement agreement contained in the timely Plan Supplement.

26.     If the Debtors are going to insist on having a confirmation trial on the Revised Plan, so be it. That is their right under the Bankruptcy Code.  But it is not their right to unfairly prejudice parties who might oppose that plan by denying them due process.  The RCAHC agrees with the Certain Insurers that March is likely not enough time, especially considering the fundamental changes in the Revised Plan filed just days ago.  But the RCAHC is willing to try to meet that timeline.  It will take the openness and cooperation of parties in discovery matters to move with all reasonable speed to do so.

**WHEREFORE,** for these reasons, and the reasons set forth in Modification Motion, the RCAHC respectfully requests that the Court grant the Modification Motion and direct that the Debtors, the Local Councils, Century and the Chubb Companies, and Hartford fully cooperate with all discovery issued by the RCAHC in connection with the Revised Plan.

*(Remainder of page intentionally left blank)*

Dated: December 20, 2021
Wilmington, Delaware

Respectfully submitted,

**POTTER ANDERSON & CORROON LLP**

/s/ *Jeremy W. Ryan*
Jeremy W. Ryan (Bar No. 4057)
D. Ryan Slaugh (Bar No. 6325)
1313 N. Market Street, 6th Floor
Wilmington, DE 19801-6108
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
Email:  jryan@potteranderson.com
        rslaugh@potteranderson.com

- and -

**SCHIFF HARDIN LLP**

Everett Cygal, *admitted pro hac vice*
David Spector, *admitted pro hac vice*
J. Mark Fisher, *admitted pro hac vice*
Neil Lloyd, *admitted pro hac vice*
Daniel Schufreider, *admitted pro hac vice*
Jin Yan, *admitted pro hac vice*
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
Telephone: (312) 258-5500
Facsimile: (312) 258-5600
Email: ecygal@schiffhardin.com
        dspector@schiffhardin.com
        mfisher@schiffhardin.com
        nlloyd@schiffhardin.com
        dschufreider@schiffhardin.com
        jyan@schiffhardin.com

*Counsel to the Roman Catholic Ad Hoc Committee*