**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>          Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Re: D.I. 7769** |

### DEBTOR'S OBJECTION TO CERTAIN INSURERS' (I) MOTION TO MODIFY THE CONFIRMATION SCHEDULING ORDER AND (II) MOTION FOR AN EXPEDITED HEARING ON THE SAME

Boy Scouts of America ("**BSA**") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession (together, the "**Debtors**") in the above-captioned chapter 11 cases, hereby file this objection (the "**Objection**") to the *Certain Insurers' (i) Motion to Modify the Confirmation Scheduling Order and (ii) Motion for an Expedited Hearing on Same* [D.I. 7769] (the "**Motion**")[2] filed by certain insurers (the "**Insurers**").[3]   In support of the Objection, the Debtors state as follows:

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, TX 75038.

[2] The Debtors have consented to shortened notice, and the Court has scheduled a hearing, so the Debtors do not address the Insurers' request to shorten notice herein.  *See* D.I. 7783.

[3] The Insurers include: Travelers Casualty and Surety Company, Inc., St. Paul Surplus Lines Insurance Company, Gulf Insurance Company, AIG Companies, Allianz Global Risks US Insurance Company, National Surety Corporation, Interstate Fire & Casualty Company, American Zurich Insurance Company, American Insurance Company, Steadfast Insurance Company, The Continental Insurance Company, Columbia Casualty Company, Clarendon America Insurance Company, Maryland Casualty Company, Maryland American General Group, General Star Indemnity Company, Arrowood Indemnity Company, Old Republic Insurance Company, Arch Insurance Company, Liberty Mutual Insurance Company, Argonaut Insurance Company, Colony Insurance Company, Great American Assurance Company, Great American E&S Insurance Company, Gemini Insurance Company, Traders and Pacific Insurance Company, Endurance American Specialty Insurance Company, Endurance American Insurance Company, Munich

## PRELIMINARY STATEMENT

The Motion is a continuation of the effort by the Insurers to defeat the Plan through delay, knowing that delay will derail these cases and harm the estates and survivors.  Indeed, the tactic of delay is apparent even in the request to shorten the time for noticing the hearing on the Motion to less than the six days to which the Debtors' agreed.  The Insurers argued that they wanted a hearing sooner so they would know whether they needed to prepare for and schedule depositions, exactly what a party would be doing if it was diligently attempting to complete discovery, rather than to delay it.  *See* Dec. 15, 2021 Email from L. Rizzo to L. Johnson ("We strongly oppose moving the hearing to next week, as there are numerous depositions that need to be scheduled, and the parties need to understand the overall case timeline before they can properly schedule and prepare for such depositions.").

Neither the tactic, nor the content, of this latest request to delay the confirmation hearing is new.  The Insurers and other objectors have sought to defeat the Plan through delay from the outset, based on the same arguments raised now.  The objectors argued that they needed more time for discovery before the Court set the confirmation hearing to begin January 24.  The objectors then twice in October, and again in November, objected to the schedule based on the same arguments, and the Court dismissed those objections.  And now, in December, the Insurers again ask for an adjournment based on these same arguments, which have not gained merit with repetition.  The Court has remarked on the need to continue forward on the expedited schedule:

- "We're going to recognize that this debtor is burning cash, and I have no reason at all to believe that [counsel] is inaccurate in what they're saying, no reason to believe that. And I don't think that benefits anybody, so we're going to balance, clearly the due

Reinsurance America, Inc., and Indian Harbor Insurance Company on behalf of itself and as successor in interest to Catlin Specialty Insurance Company.

process rights of all parties against what's necessary in this case.  And that's where we're going to leave it." Sept. 23, 2021 Hr'g Tr. at 229:10-18.

- "[H]ere are my thoughts on – on scheduling.  We need to get this on the calendar. Parties need to get going on discovery.  There's going to need to be abbreviated time frames to determine issues . . . [b]ut this is not, as I've already said, this isn't *Imerys*. It's not *Purdue*.  Okay?  Those are very different cases.  This is case [sic] of a not-for-profit entity . . . ." Sept. 28, 2021 Hr'g Tr. at 204:21-205:5.

- "I understand that certain insurers and the TCC are still not thrilled with the January 24 confirmation start, but that's what we're going with[.]" Oct. 5, 2021 Hr'g Tr. at 8:23-9:1.

The Insurers have more than they need to continue to present their objections.  The parties have been grappling with these issues for months, and objectors to the Plan have had ample opportunity to conduct discovery of relevant parties.  Even with regard to the recently announced Century settlement, parties have been able to, and did, serve requests on Century for months. Nothing new impedes Insurers' ability to present complete and informed objections or otherwise warrants delay.  Indeed, the Insurers and other objectors have claimed from the outset of this case that they had inadequate time to prepare for a hearing, then went on to present comprehensive objections.

## OBJECTION

### A.    Delay Will Derail These Cases And Harm Survivors

The confirmation schedule was set in large part because the Debtors' financial position required it.  Specifically, delay reduces recoveries to survivors and threatens to completely derail these cases.  The delay requested by the Insurers will reduce the Debtors' cash contribution to the Trust to zero, eliminating $25 million of value to survivors.  Further delay would likely require the Debtors to sell assets that otherwise would be transferred to the Trust, again damaging the survivors.  The Insurers are aware of this Court's concern about the impact of delay on the cases, yet continue to demand delay anyway.

The objectors' scorched-earth litigation strategy is largely the cause of the Debtors' financial deterioration, including their demands for large amounts of unnecessary discovery and their baseless motions, like the motion to appoint a voting ombudsman, the motion to require AIS counsel to advise clients in a joint communication, and this Motion.  But the Insurers ignore that fact, and instead try to blame the cash burn on "an $18 million voluntary payment to the Coalition for its own professional fees."  Motion at 5.  The Court will make a determination on any fees to the Coalition, but that potential obligation does not change the harm to the estates and to the survivors.  If the Court awards the fees, then the circumstances are exactly as presented.  If the Court does not award fees, then the survivors will receive the benefit of the reserved $18 million, and will still lose $25 million based on delay.  The Insurers also cite to a Congressional lobbyist, but the projected spend is $10,000 a month, and that cost will decrease monies to the Trust if confirmation is delayed.

**B.**    **The Debtors Have Complied In All Material Respects With The Scheduling Order**

The objectors have done virtually everything they could do to tax the schedule to support a request for delay, which has only created more financial reason not to delay.  In response to the TCC's argument in October that there was insufficient time for them to complete discovery, this Court stated: "Well, I think that just counsels toward being selective in the discovery that you take and making certain that the discovery that you propound—and 'you' meaning every party—propound, is really necessary and proportional and appropriate."  Oct. 19, 2021 Hr'g Tr. at 135:7-11.  The objectors chose to disregard this Court's counsel, and instead propounded overbroad and unnecessary discovery, serving 379 Requests for Production, including 67 subparts, 138 Interrogatories, including 20 subparts and 139 Requests for Admission, covering an extremely

broad scope of topics that were not necessary to support their objections.[4]  The objectors also

noticed 12 personal depositions of the Debtors' professionals and employees, and over 110 topics

for the Debtors' 30(b)(6) witnesses.    Notwithstanding the associated burden, the Debtors

substantially complied with the *Order (I) Scheduling Certain Dates and Deadlines in Connection*

*with Confirmation of the Debtors' Plan of Reorganization, (II) Establishing Certain Protocols,*

*and (III) Granting Related Relief* [D.I. 6528] (the "**Scheduling Order**" or "**Confirmation**

**Schedule**"), as addressed below.

**C.**    **The Insurers Have No Valid Grounds For Delaying, And Misstate The Record**

The Insurers have raised no new ground for delay, misstated the record, and otherwise

relied on customary (and cooperative) scheduling issues to try to derail these cases.

**1.**    **The Insurers Misstate That They Complied With The Discovery Schedule**

The Insurers' representation that the "Insurers' document production was substantially

complete by November 5—all in compliance with the schedule" is false.  Motion at 4.  To the

contrary, several Insurers, including Insurers who have moved to extend the schedule based on the

Debtors' purported delay, produced ***no*** documents by November 5, while others produced only 30

pages.  For instance, by November 5, Liberty Mutual had only produced 1% of its production, and

Indian Harbor, Munich Reinsurance, and Old Republic, among others, had produced nothing.  *See*

Nov. 19, 2021 Hr'g Tr. at 8:21-29:13.  In stark contrast, the Debtors quickly moved to meet all the

deadlines and produced nearly one hundred thousand documents by the November 5 deadline.

---

[4] This figure includes requests submitted by Plan objectors AIG, Allianz Global Risks U.S. Insurance Company, American Zurich Insurance Company, Argonaut Insurance Company, Great American Assurance Company, Interstate Fire & Casualty Company, Liberty Mutual Insurance Company, Munich Reinsurance America, Inc., National Surety Corporation, Pfau Cochran Vertetis Amala PLLC, The Roman Catholic Ad Hoc Committee, the Tort Claimants' Committee, tort claimants represented by Lujan & Wolff LLP, Travelers Casualty and Surety Company, Inc., The United Methodist Ad Hoc Committee, The Zalkin Law Firm, and pro se claimants.  This figure also includes written discovery served by Century and the Kentucky Creditors, which at the time were plan objectors but have since settled.  It does not include the written discovery served on the Debtors' professionals.

2.    **The Objectors Have Been Seeking Delay From The Outset**

Even before this Court entered the Scheduling Order, the Insurers' strategy was clear: delay the confirmation hearing as long as possible to financially drain the Debtors.  The first step was to prevent a confirmation hearing date from being set in the first place.  As early as September 22, two weeks before the Scheduling Order, this Court rejected an argument by the Plan objectors that a confirmation hearing cannot happen without all of the chartered organizations having a release. *See* Sept. 22, 2021 Hr'g Tr. at 20:10-17 ("I understand the uncertainty.  But if . . . we wait . . . to get a deal with everyone, that will be 25 years from now.  I mean, I think that we have to move, if – and listen, the plan will be confirmable or it won't.  But there's no way we can wait until – maybe not 25 years, but next year, and we may not have a deal with every single charter.").  Then, on September 23, certain Insurers urged this Court to wait to schedule the confirmation hearing date until all discovery arguments were heard.  *See* Sept. 23, 2021 Hr'g Tr. at 219:10-17 (MR. PLEVIN: "I would ask you not to pre-judge at this point when the confirmation hearing is going to be until you hear the arguments about the discovery that's needed and the sequencing of events . . . so we can argue to you how much time we need and why.").

Once it was clear a hearing date would be set, the Insurers tried to push it out as far as possible.  First, the Insurers pushed to have the hearing delayed until 217 days after the Court approved the disclosure statement, i.e., May 2022 at earliest.  *See* D.I. 6060 at 10.  Then, when it became clear the Court would not accept such an extreme delay, the Insurers continued to push for the hearing to begin in late March or early April.  *See* D.I. 6367 at 3; Sept. 28, 2021 Hr'g Tr. at 192:5-7 (Counsel to Zurich arguing that the Confirmation Hearing should be at the end of March); *see also id.* at 199:3-11 (counsel to the TCC arguing that "it's just not humanly possible to do what needs to be done in this very complex case with multiple issues in anything that resembles a competent way in the timeframe that the debtor is proposing.").

Again, on October 5, just one week after the Court proposed January 24, the Insurers once again objected to the schedule, and insisted on noting that fact in the proposed Scheduling Order to preserve their ability to appeal. *See* D.I. 6494-1 at 3 ("The Insurers and the TCC objected, and continue to object, to the January 24, 2022 start date for the Confirmation Hearing and, by definition, all interim dates proposed by the Debtors . . . For the avoidance of doubt, all objections to the Debtors' proposed interim dates are overruled. Century's objections to the confirmation schedule, its start date and the schedule within the start date are overruled."). The Court dismissed the objections. *See* Oct. 5, 2021 Hr'g Tr. at 8:21-9:2 ("I understand that certain insurers and the TCC are still not thrilled with the January 24 confirmation start, but that's what we're going with[.]"). Even then, the Insurers continued to seek delay, emailing the Debtors to request that "the deadline for serving written discovery be modified to say initial written discovery . . . on October 18." *See* October 7, 2021 Email from T. Schiavoni to M. Andolina.

On October 8, this Court entered the Scheduling Order. Despite this Court's solidification of January 24 as the confirmation hearing, the Insurers continued to complain that the schedule was unworkable. *See* Nov. 10, 2021 Hr'g Tr. at 53:5-11; 54:24-55:2 (counsel to National Surety arguing that "the parties will have to squeeze 58 depositions into 11 business days" and will have "an average of more than five depositions per day . . . [W]e are headed to the litigation equivalent of a demolition derby . . . taking 8 or 10 depositions a day or more in the few days between Thanksgiving and December 2."); Nov. 17, 2021 Hr'g Tr. at 58:22-59:13 (counsel to Zurich arguing that "the schedule, as you know and as I've argued to the Court before, is very compressed" and "makes it almost impossible to have expert reports due on December 5"); Nov. 19, 2021 Hr'g Tr. at 51:24-52:3 (counsel to Liberty Mutual arguing that "[t]he debtors, the same debtors who have asked the Court for an expedited confirmation hearing and a highly compressed

confirmation litigation schedule, have created the situation . . . trying to cram a years-long coverage litigation into a few short weeks[.]"); Dec. 14, 2021 Hr'g Tr. at 19:23-20:10 (counsel to AIG arguing that "the existing schedule is simply unworkable" because it precludes "plan objectors from fully developing and presenting the evidence and arguments that the Court appropriately should consider at the confirmation hearing."). In addition to these verbal requests to change the schedule, the Insurers filed a letter on November 16 requesting a 10-day continuance of the November 19 hearing with respect to certain discovery matters, in addition to an extension of the fact discovery cut-off. *See* D.I. 7253. Neither request for delay was granted.

### 3.    The Debtors' Document Productions Do Not Support Delay

The Debtors have produced over 175,000 documents, totaling nearly 2 million pages, in response to confirmation discovery. Virtually all of the material documents were produced by November 5. The Insurers rely on the volume of certain productions made after November 5.

Some of the later productions were to provide information that did not exist earlier, including voting ballots requested by parties, or were documents experts relied upon. The Insurers admit that some later productions were appropriate, though they relegate the point to a footnote. Motion at 7, n.9. Additionally, it is not the number of pages that matters, it is the importance of the materials in the production. Some of the later productions were lengthy local council charters demanded by the Propounding Insurers (*See* Propounding Insurers' First RFPs Directed to Debtors, No. 67), which comprised over 245,000 pages, but are duplicative and largely irrelevant to any issue in this case, and took days just to upload since they were voluminous PDFs received as scanned pages. Later productions also consisted of files with sensitive information, such as the names of abuse survivors and alleged abusers, which the Debtors could not produce by the November 5 deadline since this Court's decision as to whether these names required redactions was not yet rendered. Notably, the Insurers already briefed and argued this objection at the

November 19 hearing, the Debtors addressed it, and the Court rejected it.  Indeed, since the November 19 hearing, over 93% of the documents the Debtors have produced are ballots and documents related to expert discovery, which the Insurers acknowledge were not untimely.  The remaining documents produced since November 19 were mostly documents reflecting survivor names that the Debtors could not produce before the Court ruled on November 12, and constitute only .2% of the Debtors' total document production.

The Insurers have not identified a single document from any later production that requires testimony not obtained or is in any way material to the objections.  Indeed, the Debtors have cooperated beyond any requirements in supplying data and written answers to the requests of objectors, but no objector has asked for any information relating to the documents in the later productions.  Further, add-on productions are commonplace, especially in cases with compressed schedules, as even the objectors have admitted. July 27, 2021 Hr'g Tr. at 19:4-7 (counsel to Century stating that late document production "happens in every litigation. We understand that."); *see also* Nov. 19, 2021 Hr'g Tr. at 46:19-24 (THE COURT: "But what you can do, and you have done, the insurance companies have done is say, Oh, there's an attachment here and we don't have it.  So, clearly, that's missing.  And in response to that, the debtors have responded and produced. And I really think that's all that can happen here.").

4.    **Virtually All Of The Depositions Are Completed**

The Insurers claim delay in depositions, but the scheduling of all the depositions was on a consensual basis that accommodated the schedules of the witnesses and counsel, including the Insurers.  Moreover, only one party deposition will remain past the hearing date on this Motion.[5]

---

[5] The Insurers also filed 10 non-party deposition notices and served 23 non-party subpoenas.  The Insurers should have to live with their own decision to delay in subpoenaing out-of-state, non-party witnesses, with full knowledge that taking such discovery takes time.  The Insurers again disregarded this Court's repeated counsel months ago, as early as August, not to delay in seeking discovery.  *See* Aug. 30, 2021 Hr'g Tr. at

Indeed, most of the depositions raised by the Insurers were taken within two days of the confirmation schedule date, and almost two months before the confirmation hearing. The Insurers have not explained what prejudice they suffer from the scheduling of these depositions, especially given that none of these depositions is relevant to experts and therefore do not need to be completed before the filing of expert reports. Moreover, the Insurers had more time because they have not had to produce a single witness.

Additionally, there is nothing unusual about accommodating the schedules of witnesses and counsel outside of an existing schedule. Indeed, the Debtors have repeatedly announced the ability to be flexible as to interim dates, so long as those accommodations did not endanger the confirmation hearing date. *See* Nov. 17, 2021 Hr'g Tr. at 55:9-14 (MR. KURTZ: "What we care about, as Your Honor knows, is that we hold our confirmation hearing date. And we do think that there is some room to allow some movement in the dates if it allows parties more time to resolve disputes and if it allows more time for people to take the discovery, appropriate discovery that they seek."); *id.* at 60:24-61:20 (MR. KURTZ: "I just wanted to make sure we were really clear here that we're amenable to working with parties in a reasonable way to ensure that the work can be performed in a way that they want, without prejudice to our confirmation date, obviously. If Mr. Plevin thinks that there's a particular deposition that needs to take place . . . then that deposition should be scheduled . . . The ability to accommodate to some extent people's schedules, which is sometimes a witness' schedule, to fit something in is of course without prejudice to our schedule . . . and I just don't want anybody to leave this hearing having set up any argument that, by reason

---

46:24-47:3 (THE COURT:"I would ask the parties at the appropriate time . . . to think about how discovery is going to conducted to promptly get us to a confirming hearing."); Sept. 23, 2021 Hr'g Tr. at 170:15-20 (THE COURT: "I don't think you need my permission to proceed with confirmation discovery. So you should proceed with it, and if parties have problems, they can file a motion for a protective order. I want it all brought on quickly, and I'll deal with it[.]").

of our cooperation on dates now, that we have in some way compromised our ability to hold our confirmation hearing date.") (emphasis added); *see also id.* at 62:1-5 (THE COURT: "[T]he schedule is what it is, but what I hear is what I think to be a reasonable offer to work with parties by the debtors on some interim dates to see – to accommodate where people can be accommodated, but we're on schedule."). And the objectors themselves have repeatedly asked for, and received, extensions.[6]

The Insurers point out this Court's remark that it believed "the schedule was 'a doable schedule with cooperation,'" and that is exactly what has happened. Motion at 6. The one outstanding deposition after the hearing on the Motion is of the TCC, a Plan objector. The Insurers note that "the TCC unilaterally cancelled its 30(b)(6) deposition," but one Plan objector seeking delay cannot rely on the delay of another Plan objector also seeking delay. The Insurers also complain about a single Debtor witness that the Insurers state "was adjourned until December," but that deposition was always going forward in December, albeit earlier, and the witness, Adrian Azer of Haynes & Boone, had a sudden family emergency. Mr. Azer's deposition will be complete on December 20, more than a month before the confirmation hearing. It is common to accommodate witnesses that have family emergencies, nor does a brief delay to accommodate a single witness warrant delay.[7] The Insurers argue about a third witness, this one from the

---

[6] Among other things, the TCC requested an extension of its 30(b)(6) deposition from November 29 until December 22, to which the Debtors agreed. The Debtors also deferred the depositions of three of their witnesses based on requests from the TCC. Additionally, the Debtors gave the Catholics and Methodists multiple extensions in connection with the deadline to file their expert report regarding feasibility, ultimately extending the deadline by almost two weeks. The Debtors also gave Century a parallel extension for its expert reports, which were not filed because it settled.

[7] The Insurers' suggestion that the Debtors should have designated a substitute witness ignores the fact that Mr. Azer has personal knowledge of the negotiations at issue and will be testifying at trial, so the Insurers would have deposed him anyway on December 20. So, the Insurers' suggestion would not have allowed for earlier completion of depositions, but instead would simply would have added an additional and totally unnecessary one.

Coalition, which was not complete before December 1 because this Court did not order the deposition until December 10. That deposition is taking place on December 21, more than a month before the confirmation hearing. The Insurers noticed this deposition and consented to the date.

### 5. __Voting Discovery Was Always Contemplated__

The Insurers also ask for delay by falsely stating that discovery relating to voting "could not have been foreseen." Motion at 16. To the contrary, the Insurers stated their intention to take significant discovery about the voting process before the schedule was set, and the parties specifically accommodated that discovery in the Scheduling Order entered on October 8. *See* Scheduling Order ¶ 7 ("Notwithstanding the deadlines set forth in paragraph 6(a) with respect to voting issues, (i) the Debtors will make reasonable efforts to work with the voting agent to produce interim status information concerning ballots that have been processed, and (ii) in accordance with paragraph 8, the Participating Parties retain all rights to seek discovery regarding such interim reports and other materials regarding voting[.]"). Moreover, voting discovery was discussed extensively at the Disclosure Statement hearing. *See* Sept. 28, 2021 Hr'g Tr. at 191:16-21 (MR. PLEVIN: "There's no explicit time in our proposal for voting-related discovery, which – which could happen. It may be necessary as – as I heard the colloquys [sic] last week a lot of the issues about the voting are going to be decided at the back end. So it's reasonable to think you may need some time for discovery of voting issues.").

Additionally, as recently as two weeks ago, the Insurers acknowledged that voting discovery would need to take place on a separate timeline and agreed to conduct that discovery within the existing confirmation schedule. Specifically, at the December 6 hearing, the Debtors proposed to extend the voting deadline by two weeks. At the request of the Plan objectors, the Debtors agreed that "to the extent that there is voting-related discovery that extends past that January 4 or January 10 objection deadline, and parties discover new issues or new information in

connection with voting-related discovery, they should be able to supplement their objection." Dec. 6, 2021 Hr'g Tr. at 9:19-23. The Court opened the floor to objections and, hearing none, permitted the extension of voting deadlines and related dates while maintaining the confirmation hearing date. *Id.* at 13:21-14:1 (THE COURT: "Does anyone wish to be heard with respect to the deadlines and the agreements that Ms. Lauria has set out? Okay. I hear no one. I will permit the extension of the voting deadline and related dates[.]"). Having voiced no objection, and having been aware of the need for voting discovery since before the Scheduling Order was entered, the Insurers cannot now use voting discovery as a basis for delay.[8]

### 6.   Expert Depositions Were Always Contemplated, And Most Of The Experts Were Designated By Objectors

The Insurers also argue for delay because there will be expert depositions, but that too is not new. The parties always understood that there would be expert depositions, and negotiated the time for such depositions in the Confirmation Schedule. Indeed, the schedule for expert depositions was a negotiated point among the parties, with the Debtors agreeing, at the Insurers' request, to extend the deadline for expert depositions from January 6 to January 9. The Insurers note that there are 15 experts, but fail to disclose that 9 of those experts have been designated by Plan objectors, so they again seek to leverage the objectors' litigation conduct for delay.[9]

The Insurers also misstate that there are only four days for expert depositions. Contrary to the Insurers' claim, the schedule provides ***16 days*** for expert depositions. *See* Scheduling Order ¶ 6. To the extent the Insurers are referencing intervening holidays, their statement would still be false, and those holidays existed at the time that the parties agreed to the schedule. There are no

---

[8] The Insurers also argue that delay is warranted on the basis of additional discovery that other parties may seek regarding the Kosnoff letter. Hypothetical discovery conducted by other parties does not support the Insurers' request for delay.

[9] Indeed, after the Motion was filed, the Catholics and Methodists submitted another expert report, bringing the total number of expert reports submitted by the Plan objectors to 10.

changed circumstances to justify a change in the schedule, though the Debtors will cooperate if reasonable accommodations need to be made that do not impact the January 24 confirmation hearing date.

       **7.**        **The Insurance-Related Findings Are Not New Facts Supporting A Delay**

The Insurers repeatedly suggest that the cause of the delay is insurance-related findings, but those findings pre-existed the Confirmation Schedule, so again these are not new facts to justify an adjournment.  Moreover, those findings are not causing delay because they are largely legal in nature, and the Insurers need little discovery to continue advancing the same arguments they have been advancing from the outset.  And the Debtors have already provided discovery on the subject in any case.[10]

Moreover, the Insurers have made several requests after the written discovery cut-off for documents that are voluminous in nature and require substantial time and effort to produce. Among other things, the Insurers have requested production of unencrypted versions of all 82,000 proofs of claim, requiring the Debtors to locate and gather original files for all the proofs of claim and load them to a separate website where the Insurers can access them.  Additionally, at the Insurers' request, the Debtors are in the process of producing all ballots as they come in, which requires substantial time and resources in addition to the already burdensome process of tallying over 80,000 ballots.  The Debtors have agreed to comply with these requests despite their being made after the written discovery cut-off.

---

[10] The Debtors long ago heard this Court's remarks about the findings, and will continue to work with the Coalition to address the matter, but the Debtors' view is that this Court can make each of the findings for purposes of Section 1129(a) without making any findings whatsoever concerning future coverage litigation. Nonetheless, the Debtors continue to work on this issue.

8.      **<u>The Proposal For Special Reviewer Does Not Support Delay</u>**

The Insurers also seek delay based on a proposal for Kevin Carey to serve as the Special Reviewer for the Trust, but little or no discovery is required to address that fact, and the Debtors are timely providing that discovery in any case.  Specifically, on December 8, the Propounding Insurers asked the Debtors to produce a witness with respect to the subject, and the Debtors agreed to designate Mr. Azer to address it at his December 20 deposition, even though it was not included in the topics the Insurers originally noticed for deposition.  Moreover, the Insurers' late request for a witness on this topic, and their agreement to have Mr. Azer testify on it, belies their argument that they are prejudiced by Mr. Azer's deposition being scheduled in December.

<u>CONCLUSION</u>

These estates do not have the luxury of time to accommodate the Insurers' efforts to defeat the Plan through delay.  The Debtors respectfully ask the Court to deny the Motion.

Dated: December 20, 2021
      Wilmington, Delaware

*/s/ Paige N. Topper*
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek Abbott (No. 3376)
Andrew Remming (No. 5120)
Paige Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 351-9314
Email: dabbott@morrisnichols.com
      aremming@morrisnichols.com
      ptopper@morrisnichols.com

WHITE & CASE LLP
Glenn M. Kurtz (admitted *pro hac vice*)
Jessica Lauria (admitted *pro hac vice*)
Andrew Hammond (admitted *pro hac vice*)
Samuel P. Hershey (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: gkurtz@whitecase.com
      jessica.lauria@whitecase.com
      ahammond@whitecase.com
      sam.hershey@whitecase.com

– and –

WHITE & CASE LLP
Michael Andolina (admitted *pro hac vice*)
Matthew Linder (admitted *pro hac vice*)
Laura Baccash (admitted *pro hac vice*)
Blair Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: mandolina@whitecase.com
      mlinder@whitecase.com
      laura.baccash@whitecase.com
      blair.warner@whitecase.com

*Counsel to the Debtors and Debtors in Possession*