**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>         Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date:  January 10, 2022 at 10:00 a.m. (ET)**<br>**Objection Deadline: January 3, 2022 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER**
**(I) APPROVING SENENTZ SETTLEMENT AGREEMENT AND**
**(II) MODIFYING THE AUTOMATIC STAY, TO THE EXTENT NECESSARY, TO**
**PERMIT PAYMENT OF SETTLEMENT AMOUNT BY APPLICABLE INSURANCE**

Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations

that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the

"Debtors"), submit this motion (this "Motion") for entry of an order, substantially in the form

attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a), 362 and 363 of

title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code), and rule

9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving the

settlement agreement, in the form attached to the Proposed Order as **Exhibit 1** (the "Settlement

Agreement"), by and between the BSA and Cherokee Area Council, Inc. of the Boy Scouts of

America (together, "Defendants"), on the one hand, and Brett Senentz and Amanda Senentz,

individually and on behalf of their minor son, Adrian Senentz (collectively, "Senentz Plaintiffs,"

and Senentz Plaintiffs, collectively with Defendants, the "Parties"), on the other hand, and (ii)

modifying the automatic stay, to the extent necessary, to permit payment of the Settlement Amount

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, Texas 75038.

(as defined below) from applicable insurance.  In support of this Motion, the Debtors submit the

declaration of Elizabeth Hanke, a Vice President at KCIC, LLC (the "Hanke Declaration"), which

serves as insurance and valuation consultant for the Debtors.  The Hanke Declaration is attached

hereto as **Exhibit B**.  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334 and the

*Amended Standing Order of Reference* from the United States District Court for the District of

Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and other bases for the relief requested herein are sections 105(a), 362

and 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a).

## BACKGROUND

4.      On February 18, 2020 (the "Petition Date"), the Debtors filed for relief under

chapter 11 of the Bankruptcy Code.

5.      On April 3, 2020, Senentz Plaintiffs filed a proof of claim against the Debtors,

Claim No. 1 (the "Proof of Claim").[2]  The Proof of Claim was filed on account of non-abuse

injuries that Adrian received on January 30, 2016, when he was severely injured by a falling tree

while participating in a Boy Scout troop service project (the "Incident").  The Incident is the

subject of a negligence lawsuit filed by Senentz Plaintiffs against Defendants in the Circuit Court

for Hamilton County, Tennessee, styled *Brett Senentz and Amanda Senentz, individually and on*

---

[2]     The Debtors filed an objection to Proof of Claim No. 1 on October 15, 2021 on the basis that Delaware BSA,
LLC is not jointly liable with the BSA for such claims.  *See Debtor's Fourth Omnibus (Non-Substantive)
Objection to Certain (I) Amended and Superseded Claims and (II) Incorrect Debtor Claims (Non-Abuse Claims)*
[D.I. 6643].  The Court sustained the objection on December 13, 2021, reassigning the Proof of Claim against the
correct Debtor, the BSA.  *See Order Sustaining Debtors' Fourth Omnibus (Non-Substantive) Objection to Certain
(I) Amended and Superseded Claims and (II) Incorrect Debtor Claims (Non-Abuse Claims)* [D.I. 7688].

*behalf of their minor son, Adrian Senentz v. Boy Scouts of America and Cherokee Area Council,*

*Inc. of The Boy Scouts of America*, Case No. 17C705 (the "Lawsuit").

6.      The Lawsuit was automatically stayed as to Defendants as of the Petition Date.

Senentz Plaintiffs have not filed a motion to lift the automatic stay.

## THE SETTLEMENT AGREEMENT

7.      To avoid incurring further litigation expenses in connection with the Lawsuit, the

Parties entered into good-faith and arm's-length settlement negotiations. As a result of those

negotiations, the Parties have entered into the Settlement Agreement, subject to Court approval.

8.      Pursuant to the Settlement Agreement, Senentz Plaintiffs agree to dismiss the

Lawsuit with prejudice and without costs.  Additionally, Mr. and Mrs. Senentz, for themselves and

for and on behalf of Adrian Senentz, fully, finally, and irrevocably release, discharge, and utterly

acquit Defendants and all employees, agents, volunteers, affiliates, representatives, officers,

directors, parent companies, subsidiaries, successors, administrators, trustees, attorneys, insurers

(including, but not limited to, Old Republic Insurance Company), and assigns associated with

Defendants (all of whom or which are collectively referred to as "Releasees"), or any of them,

from liability for any and all legal or equitable claims, demands, setoffs, defenses, accounts, debts,

liabilities, agreements, contracts, causes of action, and damages, whether known, unknown,

suspected, or claimed, now existing, that might arise, or that might have arisen relating to the

Incident or any other actual or proposed undertaking, act, omission, relationship, promise,

understanding, contract, or agreement of, by, between, or among the Parties (the "Claim(s)"),

without regard to whether such Claim was, is, or could have been asserted in the Lawsuit.  To be

clear, the intent and effect of this section of the Settlement Agreement, and of the Settlement

Agreement in its entirety, is to provide for the release, termination, and extinguishment of all

3

Claims, including dormant Claims of an unemancipated minor, Senentz Plaintiffs had, have, or

might in the future have or be able to assert against Defendants or any of the Releasees arising

from or relating to the Incident as well as Senentz Plaintiffs' relationship with Defendants or

participation in any activity or program offered under the auspices of Defendants.

9.      In exchange for the releases described above, Defendants will pay Senentz

Plaintiffs $6,500,000 from available insurance (the "Settlement Amount").  The Settlement

Amount will be paid by Old Republic Insurance Company ("Old Republic"), which issued general

liability insurance policies to the BSA that provide coverage for the subject matter of the Lawsuit

during the relevant time period.  The Cherokee Area Council, Inc. of the Boy Scouts of America

is a co-insured under the applicable Old Republic insurance policies.

10.     The Settlement Agreement will become effective upon (a) entry of an order of the

Bankruptcy Court (i) approving the Settlement Agreement pursuant to Bankruptcy Rule 9019 and

(ii) authorizing Old Republic to pay the Settlement Amount; and (b) such order becoming final

and non-appealable (the "Effective Date").  The Settlement Amount will be paid within thirty (30)

days of the Effective Date.

## RELIEF REQUESTED

11.     By this Motion, the Debtors request entry of the Proposed Order, substantially in

the form attached hereto as **Exhibit A**, (i) approving the Settlement Agreement and (ii) modifying

the automatic stay, to the extent necessary, to permit Old Republic to pay the Settlement Amount.

## BASIS FOR RELIEF REQUESTED

**I.      Legal Standard**

**A.      Approval of Settlements**

12.     Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 authorize the

Court to approve settlements of claims.  Section 105(a) provides, in relevant part, that the Court

"may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Bankruptcy Rule 9019 provides that, upon notice and a hearing, the Court "may approve a compromise or settlement." FED. R. BANKR. P. 9019(a).

13.    Settlements and compromises are favored in bankruptcy proceedings as a means of "minimiz[ing] litigation and expedit[ing] the administration of a bankruptcy estate." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006).  The Court should exercise its discretion to approve a settlement or compromise where it is "fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).  The Court need only "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonable." *In re W.R. Grace & Co.*, 475 B.R. 34, 78 (D. Del. 2012).  In determining whether a settlement or compromise should be approved, courts consider a number of factors, including "(1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d at 393.

## B.    The Automatic Stay

14.    Upon the filing of a bankruptcy case, section 362 of the Bankruptcy Code automatically stays, among other things, the commencement or continuation of any proceeding against the debtor "to recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a).  The automatic stay serves a number of important purposes that protect both debtor and creditor interests, including, among other things, "to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it" and "to avoid interference with the orderly liquidation or rehabilitation of the debtor." *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (quotations omitted).

15.     Section 362(d) authorizes the Court to grant relief from the automatic stay for cause.  11 U.S.C. § 362(d).  Although the Bankruptcy Code does not define "cause," courts in this District often consider whether (i) the debtor will suffer "any great prejudice" from the "continuation of the civil suit," (ii) the prejudice to the non-bankrupt party by maintenance of the stay considerably outweighs the prejudice to the debtor if the stay is lifted, and (iii) the non-bankrupt party "has a probability of prevailing on the merits."  *Id.*; *see also In re Scarborough St. James Corp.*, 535 B.R. 60, 67–68 (Bankr. D. Del. 2015).

## II.     Argument

16.     The Settlement Agreement should be approved because it fairly and efficiently resolves the claims against Defendants related to the Incident. As noted above, the Settlement Amount will be paid solely from proceeds of the Old Republic primary and excess policies for the 2015–16 policy year.  The settlement, moreover, will permit Defendants to avoid the uncertainty and expense of litigation relating to the Lawsuit and eliminate the potential for additional expenses and the risk of an unfavorable judgment.  In addition, under the Settlement Agreement the Defendants will receive a full and complete release from all liability in connection with the subject matter of the Lawsuit, thereby eliminating any liability under the Debtors' plan of reorganization. Accordingly, the Debtors submit that the Settlement Agreement is reasonable and in the best interests of the Debtors' estates, creditors and other parties in interest.  *See In re Louise's, Inc.*, 211 B.R. at 801.

17.     The Settlement Agreement should also be approved because it affords the same treatment to the Senentz Plaintiffs that is proposed to be afforded to holders of other "Non-Abuse Litigation Claims" under the Debtors' proposed plan of reorganization.  Specifically, the plan provides that holders of Non-Abuse Litigation Claims may recover up to the full amount of such claims in the first instance from available insurance, and if such holder is unable to recover the full

amount from such insurance, then the unpaid amounts shall be submitted to the Settlement Trust, which, subject to the Settlement Trustee's review and reasonable consent, shall pay any unpaid amounts up to applicable policy limits.[3]  This treatment is the result of extensive negotiations among the Debtors, the Ad Hoc Committee of Local Councils, the Creditors' Committee, the Tort Claimants' Committee, the Coalition of Abused Scouts for Justice, and the Future Claimants' Representative.

18.    Additionally, the automatic stay should be modified, to the extent necessary, to permit Old Republic to pay the Settlement Amount.  To the extent the automatic stay applies, cause exists under these circumstances to permit Old Republic to pay the Settlement Amount.

19.    First, as noted in Old Republic's motion for relief from the automatic stay, the BSA and certain other named insureds (including the co-defendant in the Lawsuit, Cherokee Area Council, Inc. of the Boy Scouts of America) are covered under certain general liability policies issued by Old Republic, including primary and excess insurance policies for the 2015–16 policy year.[4]  The Old Republic primary policy provides coverage up to a limit of $1.0 million per occurrence with no aggregate limits.  Hanke Decl. at ¶ 4.  The Old Republic excess policy provides coverage up to an aggregate limit of $9.0 million.  *Id.*  Here, approximately $100,000 of the primary policy has been exhausted in connection with the Lawsuit, leaving approximately $900,000 of primary coverage available.  *Id.* at ¶ 5.  The balance of the Settlement Amount falls within the aggregate limit of the Old Republic excess policy.  *See id.* at ¶ 5-6.  Therefore, 100% of the Settlement Amount falls within the limits of Old Republic's primary and excess policies.  *Id.*

---

3    *See Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 7832] at Art. IV.D.3.

4    *See Old Republic Insurance Company's Motion Pursuant to Sections 105(a) and 362 of the Bankruptcy Code and Bankruptcy Rule 4001 for an Order Modifying the Automatic Stay to Permit Payments of Claims Against Non-Debtor Insureds and Related Defense Costs Under Insurance Policies* [D.I. 678]; *see also* Hanke Decl. at ¶ 4.

at ¶ 6.  After payment of the Settlement Amount, approximately $1,532,000 of the aggregate limits

of the Old Republic excess policy will remain.  *Id.*  Moreover, for the 2015–16 policy year, there

is approximately $200,000,000 of available excess insurance coverage under the excess policies

that attach above the Old Republic umbrella layer.[5]  *Id.*

20.     Second, the Settlement Agreement will fully and finally resolve all claims against

the BSA related to the Incident and avoid the uncertainty and expense of litigation and the risk of

an unfavorable judgment that could exceed the Settlement Amount.  *In re Almonacy*, Case No. 10-

37235 DHS, 2011 WL 13659, at *3 (Bankr. D.N.J. Jan. 4, 2011) ("When an action seeks to recover

from a debtor's insurance policy and the debtor is represented by the insurer, courts routinely grant

stay relief because the burden on the estate is likely to be outweighed by the hardship on the

plaintiff if the action is not permitted to continue.").  Additionally, Old Republic, and not the

Debtors, will fund the Settlement Amount.

21.     For the foregoing reasons, there is comparatively little prejudice, and indeed

material benefit, to the Debtors if the Parties are permitted to enter into the Settlement Agreement

and the stay is modified, to the extent necessary, to permit Old Republic to pay the Settlement

Amount.

### NOTICE

22.     Notice of this Motion will be provided to (i) the U.S. Trustee; (ii) counsel to the

Creditors' Committee; (iii) counsel to the Tort Claimants' Committee; (iv) counsel to the Future

Claimants' Representative; (v) counsel to the Ad Hoc Committee of Local Councils; (vi) counsel

---

[5]     In terms of Direct Abuse Claims that could compete against the same insurance, the Debtors note that there are twenty-two (22) timely filed, non-duplicative proofs of claims filed asserting Direct Abuse Claims (i) on account of Abuse alleged to have first occurred during the 2015–16 policy year (March 1, 2015 to February 29, 2016), (ii) that are not presumptively barred by applicable statutes of limitation and (iii) that name an abuser, either in full or in part.

to JPMorgan Chase Bank, National Association; (vii) counsel to the Senentz Plaintiffs; (viii) Cherokee Area Council, Inc. of the Boy Scouts of America; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (i) approving the Settlement Agreement, (ii) modifying the automatic stay, to the extent necessary, to permit Old Republic to pay the Settlement Amount and (iii) granting such other relief as is just and proper.

Dated: December 20, 2021
       Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Paige N. Topper*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Email:  dabbott@morrisnichols.com
      aremming@morrisnichols.com
      ptopper@morrisnichols.com

– and –

**WHITE & CASE LLP**
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: jessica.lauria@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (212) 881-5400
Email: mandolina@whitecase.com
      mlinder@whitecase.com
      laura.baccash@whitecase.com
      blair.warner@whitecase.com

ATTORNEYS FOR THE DEBTORS AND DEBTORS
IN POSSESSION