**Exhibit A**

**Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Ref. Docket No. ____ |

### ORDER (I) APPROVING SENENTZ SETTLEMENT AGREEMENT AND (II) MODIFYING THE AUTOMATIC STAY, TO THE EXTENT NECESSARY, TO PERMIT PAYMENT OF SETTLEMENT AMOUNT BY APPLICABLE INSURANCE

Upon the motion (the "Motion")[2] of Boy Scouts of America ("BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), for entry of an order (this "Order"), pursuant to sections 105(a), 362 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) approving the settlement agreement, in the form attached hereto as **Exhibit 1** (the "Settlement Agreement"), by and between the BSA and Cherokee Area Council, Inc. of the Boy Scouts of America ("Defendants"), on the one hand, and Brett Senentz and Amanda Senentz, individually and on behalf of their minor son, Adrian Senentz ("Senentz Plaintiffs," and together with Defendants, the "Parties"), on the other hand, and (ii) modifying the automatic stay, to the extent necessary, to permit payment of the settlement amount from applicable insurance; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and entry of this Order being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2);

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, Texas 75038.

[2] All capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

and the Debtors having consented to the entry of a final order by this Court under Article III of the United States Constitution; and venue of this proceeding and the Motion in this District being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and all objections to the Motion, if any, having been withdrawn, resolved or overruled; and the relief requested in the Motion being in the best interests of the Debtors' estates, their creditors and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is GRANTED as set forth herein.

2. The Settlement Agreement is APPROVED, and the Parties to the Settlement Agreement are authorized to take such action as is necessary to effectuate the terms of the Settlement Agreement.

3. To the extent necessary, the automatic stay of 11 U.S.C. § 362(a) is modified for the Parties to consummate the Settlement Agreement.

4. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry and the Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

5. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

## **Exhibit 1**

**Settlement Agreement**

## SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT (the "Agreement") is made and entered into this **9th** day of December, 2021, by, between, and among BRETT SENENTZ ("Mr. Senentz") and AMANDA SENENTZ ("Mrs. Senentz"), individually and on behalf of their minor son, ADRIAN SENENTZ ("Adrian") on the one hand and THE BOY SCOUTS OF AMERICA ("Boy Scouts") and CHEROKEE AREA COUNCIL, INC. OF THE BOY SCOUTS OF AMERICA ("the Council") on the other hand. Mr. and Mrs. Senentz and Adrian are referred to collectively in this Agreement as "the Senentzes." Boy Scouts and the Council are referred to collectively in this Agreement as "BSA." The Senentzes and BSA are referred to collectively in this Agreement as "the Parties," and the Parties are sometimes referred to individually in this Agreement as a "Party."

### Recitals

A.  Mr. and Mrs. Senentz are the biological and legal parents of Adrian.

B.  The Senentzes claim BSA is liable for personal injuries sustained by Adrian on January 30, 2016, while he was participating in a Boy Scout troop service project, and for resulting economic and non-economic damages ("the Incident").

C.  The Senentzes filed a negligence lawsuit against BSA in the Circuit Court for Hamilton County, Tennessee ("the Circuit Court"), styled *Brett Senentz and Amanda Senentz, individually and on behalf of their minor son, Adrian Senentz v. Boy Scouts of America and Cherokee Area Council, Inc. of The Boy Scouts of America*, No. 17C705 ("the Lawsuit").

D.  Boy Scouts and the Council deny the allegations made against each of them in the Lawsuit and deny liability to the Sentenzes.

20540156v2

E.  On March 24, 2020, the Lawsuit was stayed by order of the Circuit Court as a consequence of the automatic stay arising pursuant to 11 U.S.C. § 362 following Boy Scouts' filing of a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware ("the Bankruptcy Court"), which commenced the action *In re Boy Scouts of America and Delaware BSA, LLC*, No. 20-10343 (the "Bankruptcy Action"). The Lawsuit has remained stayed since that date.

F.  The Parties wish to settle this matter without further resort to litigation and without any Party admitting any wrongdoing or liability and have agreed to compromise and settle the Lawsuit and any other dispute between or among them on the following terms.

## Agreement

For and in consideration of the payments, mutual promises, releases, and agreements contained in this Agreement, and for other good and valuable consideration, the adequacy and sufficiency of which are acknowledged, the Parties agree as follows:

**Section 1.    PAYMENT.** Within thirty (30) days after the Effective Date, BSA or its agents, by and through their insurers, will pay to the Senentzes or their designee Six Million Five Hundred Thousand Dollars ($6,500,000.00) (the "Settlement Amount") in full and complete satisfaction and settlement of all claims and causes of action asserted or that could have been asserted in the Lawsuit; that could be asserted against BSA arising from the Incident; that the Parties have or might have against one another arising from or relating to Adrian's participation in any activity or program offered under the auspices of BSA; and any other act, omission, undertaking, agreement, understanding, contract, or relationship of, by, between, or among the Parties, as further described in Section 2 of this Agreement.

Section 2.    **GENERAL RELEASE.**  In consideration of the payment of the Settlement Amount, the promises and agreements contained in this Agreement, and the other good and valuable consideration described in this Agreement, Mr. and Mrs. Senentz, for themselves and for and on behalf of Adrian, hereby fully, finally, and irrevocably release, discharge, and utterly acquit BSA and all employees, agents, volunteers, affiliates, representatives, officers, directors, parent companies, subsidiaries, successors, administrators, trustees, attorneys, insurers (including, but not limited to, Old Republic Insurance Company), and assigns associated with BSA (all of whom or which are collectively referred to as "Releasees"), or any of them, from liability for any and all legal or equitable claims, demands, setoffs, defenses, accounts, debts, liabilities, agreements, contracts, causes of action, and damages, whether known, unknown, suspected, or claimed, now existing, that might arise, or that might have arisen relating to the Incident or any other actual or proposed undertaking, act, omission, relationship, promise, understanding, contract, or agreement of, by, between, or among the Parties (the "Claim(s)"), without regard to whether such Claim was, is, or could have been asserted in the Lawsuit.  To be clear, the intent and effect of this section of the Agreement, and of this Agreement in its entirety, is to provide for the release, termination, and extinguishment of all Claims, including dormant Claims of an unemancipated minor, the Senentzes had, have, or might in the future have or be able to assert against BSA or any of the Releasees arising from or relating to the Incident as well as the Senentzes' relationship with BSA or participation in any activity or program offered under the auspices of BSA.

Section 3.    **COURT APPROVAL OF SETTLEMENT AFTER EXECUTION; EFFECTIVE DATE.**  Within fifteen (15) days after complete execution of this Agreement, the Parties will present this Agreement to the Circuit Court for approval pursuant to Tenn. Code

Ann. § 29-34-105. Within fifteen (15) days after the Settlement Agreement is approved by the Circuit Court, the Parties will present this Agreement to the Bankruptcy Court for approval pursuant to the provisions of Chapter 11 of Title 11 of the United States Code. This Agreement will become effective upon: (a) entry of an order of the Bankruptcy Court pursuant to 11 U.S.C. § 362, (i) approving this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and (ii) authorizing Old Republic Insurance Company to pay the Settlement Amount; and (b) such order becoming final and non-appealable (the "Effective Date"). If this Agreement is not approved by either the Circuit Court or the Bankruptcy Court, this Agreement will be null and void and of no further effect.

**Section 4.** **DISMISSAL OF THE LAWSUIT WITH PREJUDICE.** Within ten (10) days after receipt of the Settlement Amount by the Senentzes or their designee, the Senentzes will file with the Circuit Court a notice of voluntary dismissal of the Lawsuit with prejudice and a proposed order dismissing the Lawsuit with prejudice. The Senentzes will prepare and submit to the Circuit Court any other documentation and will take any other action necessary to ensure the dismissal with prejudice of the Lawsuit and all claims asserted in the Lawsuit.

**Section 5.** **TAX CONSEQUENCES.** The Parties make no representations, warranties, or undertakings to one another regarding the tax consequences of the payment of the Settlement Amount. The Parties agree and expressly acknowledge that they are individually responsible for the payment of any local, state, federal, or other taxes, excises, or duties that may be due and owing on the sums received or paid under the terms of this Agreement and any related penalties or assessments.

**Section 6.** **SUBROGATION INTERESTS; FUTURE OBLIGATIONS; INDEMNIFICATION.** Any subrogation rights, liens, or other claims for reimbursement which have been or may be claimed in favor of any person or entity, whether under an insurance policy, any Medicare, Medicaid, Tenncare, or other government program, or otherwise, arising from or related to the Incident or any damages related to the Incident and asserted in the future will be the sole obligation of the Senentzes to resolve or discharge, including the payment of any associated court costs and attorneys' fees.

Any rights and interests that the Centers for Medicare and Medicaid Services ("CMS"), Medicare, Medicaid, Tenncare, or any other government program might have in connection with this Agreement have been adequately considered and protected. This Agreement is intended solely to resolve disputed claims and liabilities, and no share of the Settlement Amount is paid, claimed, earmarked, or designated specifically for future medical care. The Senentzes freely enter into this Agreement believing that all such future rights and interests are adequately protected. Nevertheless, the Senentzes understand it is possible that CMS, Medicare, Medicaid, Tenncare, or another government program might not or will not pay for or reimburse expenses for future medical treatment deemed to be related to the Incident. Accordingly, if any subrogation rights, liens, or other claims for reimbursement are asserted by CMS, Medicare, Medicaid, Tenncare, or any other government program after the Effective Date, it will be the Senentzes sole responsibility to satisfy such claims.

The Senentzes agree to defend, indemnify, and hold harmless BSA and the releasees identified in Section 2 of this Agreement from any cause of action or claim, including any related costs, expenses, and attorneys' fees, arising from or related to (i) any alleged loss of Medicare, Medicaid, Tenncare, Social Security, or other government benefits, or (ii) the recovery of any

amount, including interest and penalties, allegedly due to any third party, including, but not limited to, CMS, Medicare, Medicaid, Tenncare, any government program, or any insurer, for any past, present, or future debts, accounts, liabilities, liens, subrogation rights, or damages. The Senentzes agree to waive their rights to bring any future claims or causes of actions against BSA under any federal or state law, including the Medicare Secondary Payer Statute. Should CMS, Medicare, Medicaid, Tenncare, any government program, or any insurance company seek reimbursement for any past medical expenses or conditional amounts paid for medical care or treatment related to the Incident, the Senentzes agree to be responsible for the reimbursement.

The Senentzes warrant and represent that as of the Effective Date, all benefits received from CMS, Medicare, Medicaid, or Tenncare have been disclosed to BSA. The Senentzes will reimburse CMS, Medicare, Medicaid, or Tenncare from the Settlement Amount for any payments made related to the Incident.

**Section 7.** **CONFIDENTIALITY.** The Parties agree that the terms of this Agreement, including, but not limited to, the terms of Section 1 of this Agreement, are to remain forever confidential and are not to be disclosed to any person or entity not a party to this Agreement unless disclosure is (1) required under compulsion of legal process or court order, pursuant to applicable rules of written discovery in a legal action, or in order to obtain court approval of this Agreement; or (2) necessary to obtain professional advice from a Party's attorney, accountant, or other professional adviser, so long as said attorney, accountant, or other professional adviser agrees to abide by the confidentiality obligations of this Section. If, following the Effective Date, a Party is served with legal process, a court order, or discovery requests that would require disclosure any of the terms of this Agreement, the Party must promptly provide notice to counsel for the other Parties, in writing, of the service of such

requests and provide, via electronic mail or overnight delivery service, copies of the papers served. Each Party agrees to provide the other Party with a reasonable opportunity to object to the process, order, or requests before making such disclosure.

Section 8. **NOTICES.** Any notices or documents required to be exchanged or delivered under this Agreement are to be provided to counsel for the Parties as follows:

| | |
|---|---|
| If to BSA: | Miller & Martin PLLC<br>Attn: Zachary H. Greene<br>1200 Volunteer Building<br>832 Georgia Avenue<br>Chattanooga, Tennessee 37402<br>zac.greene@millermartin.com |
| If to the Senentzes: | Chambliss, Bahner & Stophel, PC<br>Attn: Jeffrey G. Granillo<br>1700 Liberty Tower<br>605 Chestnut Street<br>Chattanooga, Tennessee 37450<br>jgranillo@chamblisslaw.com |

Section 9. **EXPENSES, COSTS, AND ATTORNEYS' FEES.** Each Party is responsible for his, her, or its own costs, attorneys' fees, and other expenses arising out of or relating to the Lawsuit, this Agreement, or any other agreement or relationship between or among the Parties, including the released Claims. No Party will seek to recover any discretionary costs from any other Party. The court costs for the Lawsuit will be paid by BSA.

Section 10. **WARRANTY OF NON-ASSIGNMENT OF CLAIMS, REMEDIES, OR DEFENSES.** Each Party warrants and represents that he, she, or it has not sold, pledged, assigned, transferred, conveyed, or otherwise disposed of any Claims relating to the Lawsuit or any other subject matter of this Agreement, and that any and all such Claims will be released and extinguished in accordance with the terms of this Agreement.

7

Section 11. **AMENDMENT; MANNER OF EXECUTION.** This Agreement may be amended or modified only by a writing signed by the Parties. This Agreement may be executed in one or more counterparts, each of which will be deemed an original copy of this Agreement, and all of which, taken together, will be deemed to constitute one single, identical Agreement. Electronic signatures and electronic images of signature pages are valid and sufficient and are to be considered competent evidence of the execution of this Agreement.

Section 12. **CONSTRUCTION OF THIS AGREEMENT.** In any construction of this Agreement, the Agreement should not be construed for or against any party, but rather should be given a fair and reasonable interpretation based on the plain language of the Agreement and the expressed intent of the Parties. Further, should it be determined by any court, administrative body, or other tribunal interpreting or construing this Agreement that any specific provision of this Agreement is offensive to any law, statute, or constitution, such provision should be severed from this Agreement, and this Agreement will continue in full force and effect absent such provision, and the remainder of this Agreement should be interpreted consistently with the specific intent of this Agreement as set forth in this Agreement.

Section 13. **GOVERNING LAW; FORUM SELECTION.** All matters pertaining to the validity, construction, interpretation, enforcement, or effect of this Agreement are to be governed exclusively by the laws of the State of Tennessee, without regard to conflicts of law principles. Any action or proceeding to enforce the terms of this Agreement must be brought in the Bankruptcy Court. The Parties irrevocably consent to the personal jurisdiction of such court for the purpose of enforcing this Agreement.

Section 14. **FULLY INFORMED.** The Parties expressly warrant and represent to one another that each Party fully informed himself, herself, or itself of the terms, contents,

conditions, and effect of this Agreement before executing it; that no promises or representations of any kind have been made to any Party except as expressly stated in this Agreement; that each Party has relied solely on his, her, or its own judgment in entering into this Agreement; and that each Party had the opportunity to consult with counsel prior to entering into this Agreement.

Section 15.    **PARTIES AFFECTED.**  No person or entity other than the Parties and the Releasees are intended to be bound by or have any rights or obligations under this Agreement.

Section 16.    **ENTIRE AGREEMENT.**  This Agreement, of which the Recitals are an integral and material part, sets forth the entire agreement and understanding of the Parties, and all previous discussions, understandings, representations, negotiations, and agreements with respect to the matters included in this Agreement are merged and integrated into this Agreement.

**IN WITNESS WHEREOF,** the Parties have entered into and executed this Agreement as of the date written above.

*(signatures on the following 3 pages)*

Case 20-10343-LSS   Doc 7878-2   Filed 12/20/21   Page 14 of 17

_____
**BRETT SENENTZ,**
for himself and on behalf of his minor son,
**ADRIAN SENENTZ**

STATE OF __TN__       )
                      )
COUNTY OF __Hamilton__ )

    Before me, a Notary Public of the state and county aforesaid, personally appeared the person identified above, with whom I am personally acquainted (or whose identity was proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself or herself to be such person and set his or her hand above.

    Witness my hand and seal this __8__ day of __December__, 2021.

_____
Notary Public

My Commission Expires: __01/22/2024__

10

20540156v2

_Amanda Senentz_
**AMANDA SENENTZ,**
for herself and on behalf of her minor son,
**ADRIAN SENENTZ**

STATE OF __TN__ )
)
COUNTY OF __Hamilton__ )

    Before me, a Notary Public of the state and county aforesaid, personally appeared the person identified above, with whom I am personally acquainted (or whose identity was proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself or herself to be such person and set his or her hand above.

    Witness my hand and seal this __8__ day of __December__, 2021.

_Jennifer Ball_
Notary Public

My Commission Expires: _____

*[Notary Seal: JENNIFER BALL, STATE OF TENNESSEE, NOTARY PUBLIC, My Commission Expires on 01/22/2024, HAMILTON COUNTY]*

11

20540156v2

**BOY SCOUTS OF AMERICA**

By: _____

Name: Joseph Zirkman

Title: Deputy General Counsel


**CHEROKEE AREA COUNCIL, INC. OF THE BOY SCOUTS OF AMERICA**

By: _____

Name: _____

Title: _____

12

**BOY SCOUTS OF AMERICA**

By: _____

Name: _____

Title: _____

**CHEROKEE AREA COUNCIL, INC. OF THE BOY SCOUTS OF AMERICA**

By: _____*[signature]*_____

Name: _____**Jared Pickens**_____

Title: _____**Scout Executive / CEO**_____

12