## Exhibit A

**United Methodist Term Sheet**

EXECUTION COPY

**THIS TERM SHEET DOES NOT PURPORT TO SUMMARIZE ALL OF THE TERMS, CONDITIONS, AND OTHER PROVISIONS WITH RESPECT TO THE SETTLEMENT DESCRIBED HEREIN, WHICH SHALL BE SUBJECT TO THE COMPLETION OF DEFINITIVE DOCUMENTS INCORPORATING THE TERMS SET FORTH HEREIN. NOTHING CONTAINED IN THIS TERM SHEET SHALL BE AN ADMISSION OF FACT OR LIABILITY AND NO BINDING OBLIGATIONS WILL BE CREATED BY THIS TERM SHEET UNLESS AND UNTIL BINDING DEFINITIVE DOCUMENTS ARE EXECUTED AND DELIVERED BY ALL APPLICABLE PARTIES AND THE EFFECTIVE DATE OF THE AMENDED PLAN HAS OCCURRED. THIS TERM SHEET IS SUBJECT IN ALL RESPECTS TO MEDIATION PRIVILEGE, FEDERAL RULE OF EVIDENCE 408, AND ANY STATE LAW EQUIVALENTS.**

## Settlement Term Sheet

The United Methodist Ad Hoc Committee ("UMAHC"),[1] Boy Scouts of America and Delaware BSA, LLC, as debtors and debtors in possession (collectively, "BSA" or the "Debtors"), the Ad Hoc Committee of Local Councils (the "AHCLC"), the Coalition of Abused Scouts for Justice, solely and only in its capacity as an ad hoc committee (the "Coalition"),[2] and the Future Claimants' Representative (the "FCR" and, collectively with the UMAHC, Settling Insurers, the Debtors, the AHCLC,[3] and the Coalition, the "Parties") agree to the terms of treatment of Abuse Claims[4] against the United Methodist Entities in connection with the Chapter 11 Cases of the Debtors and the resolution of certain related disputes and other associated matters (the "United Methodist Treatment") as set forth herein, and as provided for in the terms and conditions of the Century Term Sheet,[5] as applicable. The attorneys representing holders of Direct Abuse Claims listed on Schedule 1 hereto, which reflects the number of holders of Abuse Claims represented by each firm (the "State Court Counsel") agree to support the terms of and be bound by the Agreement (as defined below). The Parties will prepare a definitive written settlement agreement consistent with this Term Sheet that will include additional material terms (the "Agreement") which Agreement will be appended to and included in the Second Modified Fifth Amended Chapter 11 Plan of

---

[1] The Parties recognize that The United Methodist Church is a connectional denomination and consistent with The United Methodist Church's *Book of Discipline*, neither the UMAHC nor any specific United Methodist Entity, other than the General Conference, may speak on behalf of The United Methodist Church. Accordingly, the UMAHC does not have the power to bind The United Methodist Church or any of its denominational units, including United Methodist Entities. For purposes of the United Methodist Treatment, the UMAHC, in connection with other offices within The United Methodist Church, shall use best efforts to persuade United Methodist Entities to commit to the terms of this Term Sheet including to commit to contribute to the United Methodist Settlement Amount.

[2] For the avoidance of doubt, no holders of Direct Abuse Claims are or shall be deemed Parties to this Term Sheet or the Agreement.

[3] Notwithstanding anything to the contrary in this Term Sheet the obligations and undertakings of the AHCLC in connection with this Term Sheet shall be no greater than the AHCLC's parallel obligations and undertakings under Section III of the Restructuring Support Agreement (including the "No Liability" subsection thereof) filed at Dkt. 5466-2.

[4] The term "Abuse Claims" is defined in the Amended Plan.

[5] Reference is made to the settlement term sheet the Debtors, the Ad Hoc Committee of Local Councils, the Future Claimants' Representative, the Coalition of Abused Scouts for Justice, solely and only in its capacity as an ad hoc committee, and the Settling Insurers (as defined in the Century Term Sheet), executed on or about December 12, 2021 (the "Century Term Sheet").

Reorganization for Boy Scouts of America and Delaware BSA, LLC [D.I. 7832] (the "<u>Amended Plan</u>"), which Agreement and Amended Plan shall be fully consistent with this Agreement and otherwise in form and substance reasonably acceptable to the Parties. Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Amended Plan, as the same may be amended, modified, or supplemented from time to time in accordance with section 1127 of the Bankruptcy Code, as applicable.[6]

1.  The term "<u>United Methodist Entities</u>" shall mean each and every (i) United Methodist local church, federated, or union church, including any Federated Church or Union Church that includes a historically United Methodist Church congregation, that sponsored, promoted, hosted, or provided any support in connection with Scouting activities, regardless of whether such local, union, or federated church is or was a Chartered Organization at any time; (ii) church currently federated or yoked, and which current federated or yoked church includes a current or former United Methodist Church congregation that sponsored, promoted, hosted or provided any support in connection with Scouting activities; (iii) other United Methodist related or affiliated organizations that sponsored, promoted, hosted, or provided any support in connection with Scouting activities, including any social service organization, ministry, camping ministry, camp facility, camp, retreat, or other facilities in the nature of a camp or retreat; (iv) any camp, retreat, or other facility in the nature of a camp or retreat that is not United Methodist related or affiliated, but otherwise promoted, hosted, or provided any support in connection with Scouting Activities for an entity described in (i), (ii) or (iii); (v) all organizations affiliated or related to (i) (ii),  (iii) or (iv), including, but not limited to, the UMAHC, each district, annual conference, and jurisdictional conference of The United Methodist Church, the general, annual conference, district, and local church agencies of The United Methodist Church, the Council of Bishops of The United Methodist Church, and the non-jural bodies commonly referred to as "The United Methodist Church," the "Judicial Council of The United Methodist Church," and the "General Conference of The United Methodist Church"; and (vi) all Representatives of the foregoing. However, no Perpetrator is or shall be a United Methodist Entity.

2.  The Amended Plan will provide for the channeling of Abuse Claims against the United Methodist Entities to the Settlement Trust. The United Methodist Entities shall be treated as Contributing Chartered Organizations and Protected Parties under the Amended Plan, provided that they shall be deemed to have made contributions and releases required of Participating Chartered Organizations as set forth in the Amended Plan. In consideration of such treatment and the channeling of Abuse Claims against the United Methodist Entities under the Amended Plan, the UMAHC will:

    a.  will, or will recommend, to the United Methodist Entities that they, as applicable:

        i.  Collectively contribute $30 million in Cash (the "<u>United Methodist Settlement Amount</u>"), free and clear of any liens, claims, interests, or rights of any kind to the

---

[6] The *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 6443] (the "<u>Plan</u>" and as amended to include the United Methodist Treatment, the "<u>Amended Plan</u>") shall incorporate the United Methodist Treatment.

Settlement Trust on the terms set forth herein;

ii.  Consent to the waiver and release of any claim against the Settling Insurance Companies for any portion of the United Methodist Settlement Amount to be paid to the Settlement Trust;

iii.  Consent to the waiver, release, and expungement of any claims or causes of action against the Debtors filed by any United Methodist Entity;

iv.  Act in accordance with Section 8 of this Term Sheet;

v.  Consent to make a contribution to the Settlement Trust in form and substance equivalent to the Participating Chartered Organization Settlement Contribution (as such term is defined in the Amended Plan));

vi.  vote to accept the Amended Plan (including changing any votes that have been cast); and

vii.  cooperate with Youth Protections efforts, including, but not limited to:
1.  recommend participation as a member of the Survivors Working Group which currently includes Survivors, and representatives of the BSA and AHCLC;
2.  recommend and encourage that all United Methodist U.S. Congregations and Entities involved with youth programming review and follow all safe sanctuary/ministry safe policies and procedures and consider all recommendations from the Survivors Working Group regarding best practices for youth protection;
3.  recommend and encourage that all United Methodist Entities take any and all actions, with input from the Survivors Working Group to be necessary for enhancement of youth protection at United Methodist Entities engaged in Scouting;
4.  recommend and encourage that United Methodist News Service and U.S. Annual Conferences publish a series of articles about the BSA bankruptcy and the sexual abuse of young people in denominational resources (including on-line and in print), so as to reach the broadest possible audience among all U.S. United Methodist Entities;
5.  recommend and encourage all United Methodist Entities to provide each survivor who was a part of a United Methodist chartered Boy Scout Troop or Cub Pack to share their experience and suggestions and recommendations for the church with a United Methodist Leader.  Leaders will be trained to listen, receive the survivors' experience and suggestions and recommendations for the church.  These suggestions and recommendations will be shared with the United Methodist BSA

bankruptcy leadership team to review for incorporation in United Methodist practices and procedures to make Scouting and other ministries safe for young people; and

6. lead Annual Conferences in reviews of their and local church's child safety policies and update as appropriate.

b. Support the approval of the United Methodist Treatment and the making of findings of fact and conclusions of law reasonably necessary to achieve the United Methodist Treatment;

c. Withdraw all discovery served in connection with the Plan or Amended Plan;

d. Not object to the confirmation of the Amended Plan and the approval of the Plan Documents, including the making of all findings of fact and conclusions of law reasonably necessary to achieve the United Methodist Treatment;

e. Recommend to The Council of Bishops that it withdraw its letter concerning BSA;

f. Withdraw the expert report submitted in the chapter 11 cases on December 17, 2021, as to the United Methodist Entities;

g. Recommend that the General Commission on United Methodist Men (GCUMM) continue to: work with the BSA and the Local Councils to improve scouting, particularly in the area of scout safety, and grow scouting ministry; carry out its duties relating to scouting ministries as mandated by The United Methodist Book of Discipline and Book of Resolutions; and propose legislation and resolutions to the General Conference at least through the year 2036 to strengthen and grow partnerships through scouting ministries. Because of United Methodist polity, nothing in this statement shall bind a conference or local church; and

h. Recommend that the United Methodist BSA leadership team agree to lead in collaboration with the BSA and AHCLC a fundraising effort with a goal to raise an additional $100 million for the Settlement Trust from other Chartered Organizations (with any such fundraising to reduce the Settlement Growth Payment Cap (defined in the Century Term Sheet) dollar for dollar), provided that any failure to reach the $100 million goal shall not result in the denial of the benefits of the United Methodist Treatment, including the channeling injunctions and releases in the Plan and as set forth herein, for the benefit of all United Methodist Entities.

3. **Payment of the United Methodist Settlement Amount to Escrow Accounts for the Benefit of the Settlement Trust**. The UMAHC shall recommend that the United Methodist Entities pay the United Methodist Settlement Amount into an escrow account (the "United Methodist Escrow Account") to be administered by an independent escrow agent acceptable to the

UMAHC and the Settlement Trust. Within 180 days of the Effective Date of the Amended Plan, and such Amended Plan and Confirmation Order is not stayed or otherwise subject to an injunction, at least $2 million (the "Initial Methodist Payment") shall be deposited into the United Methodist Escrow Account. The Initial Methodist Payment shall be fully refunded to the United Methodist Entities that paid such amounts if the Confirmation Order is overturned on appeal, or if the United Methodist Settlement Amount is otherwise refunded pursuant to the terms of this Term Sheet. On or before the third anniversary of the Effective Date, the United Methodist Entities, or other individuals or organizations on their behalf, shall make payments to the United Methodist Escrow Account so that the total amount of $27.5 million is paid to the Escrow Accounts for payment to the Settlement Trust. A total of $2.5 million of the United Methodist Settlement Amount shall be reserved and not paid to the United Methodist Escrow Account, but shall be available for any United Methodist Entity's legal fees, costs, and expenses associated with defending the post-confirmation interim injunction, the Channeling Injunction in connection with any Abuse Claim brought against a United Methodist Entity in violation of the terms of the Amended Plan and the Channeling Injunction provided therein (the "Reserved Amount"),[7] provided further that any portion of the Reserved Amount, to the extent not depleted by the date that is the six (6) year anniversary of the Effective Date of the Plan, shall be paid to the United Methodist Escrow Account and released to the Settlement Trust if the $27.5 million in funds has been released to the Settlement Trust as set forth herein. The Settlement Trust will be provided a semi-annual accounting of any distributions from the Reserved Amount. All income earned on any escrowed funds in the United Methodist Escrow Account minus (a) the fees of the escrow agent, and (b) any taxes that are payable and other costs of the United Methodist Escrow Account, which amounts in (a) and (b) shall be paid from the corpus of the United Methodist Escrow Account (such income (or loss) minus such amounts, the "Net Income")) shall remain in the United Methodist Escrow Account until $27.5 million has been paid into the United Methodist Escrow Account and the Confirmation Order has become a Final Order (as defined in the Amended Plan), at which time the $27.5 million plus Net Income shall be released to the Settlement Trust; provided, however, that, at its election, the UMAHC may authorize the payment of the United Methodist Settlement Payment directly to the Settlement Trust on the Effective Date or may authorize the release of the United Methodist Settlement Payment from the United Methodist Escrow Account to the Settlement Trust at any time thereafter before the Confirmation Order becomes a Final Order. The Settlement Trust will have investment discretion with respect to the Methodist Settlement Payment while it is in the United Methodist Escrow Account, subject to the UMAHC or its Successor's reasonable approval of the investment protocol under which contributions to the United Methodist Settlement Amount may be invested by the Settlement Trust. No loss or failure to achieve desired investment returns on the United Methodist Settlement Amount in the United Methodist Escrow Account shall require the United Methodist Entities to increase the portion of the United Methodist Settlement Amount they are paying; provided further, however, that the Debtors, Reorganized BSA, the Local Councils and the Chartered

---

[7] For the avoidance of doubt, in no circumstances shall the Reserve Amount be used to pay any legal fees, costs, and expenses associated with defending the merits of any Abuse Claim. Nor shall the Settlement Trust be required to indemnify the United Methodists Entities for any legal fees, costs, and expenses associated with defending the merits of any Abuse Claim or any loss arising from such Abuse Claim. The Reserve Amount shall only be used to enforce and defend the post-confirmation interim injunction and the Channeling Injunction.

Organizations shall have no liability or obligations to the United Methodist Entities, or the Settlement Trust, and the Settlement Trust shall have no liability or obligations to the United Methodist Entities, whatsoever for any loss or failure to achieve desired investment returns on the payments towards the United Methodist Settlement Amount while they are in the United Methodist Escrow Account.  If the United Methodist Release Effective Date fails to occur for any reason, including without limitation because the United Methodist Entities fail to contribute the full amount of the United Methodist Settlement Payment (less the Reserved Amount as set forth herein) to the Settlement Trust or the United Methodist Escrow Account on or before the date that is the three (3) year anniversary of the Effective Date of the Plan, such that the United Methodist Entities are not Protected Parties, then any amounts held in the United Methodist Escrow Account or the Settlement Trust shall be returned to the United Methodists Entities that paid the monies into the United Methodist Escrow Account or the Settlement Trust.  Should the Confirmation Order or Affirmation Order be overturned on appeal then any amounts held in the United Methodist Escrow Account or the Settlement Trust shall be returned to the United Methodists Entities that paid the monies into the United Methodist Escrow Account or the Settlement Trust.  Should the Settling Insurers demand the return of their Settlement Payment, including without limitation as set forth in Sections 4 or 32 of the Century Term Sheet, and if such payments are returned to the Settling Insurers, then any payments towards the United Methodist Settlement Amount shall also be promptly released and returned to the United Methodist Entities that made any contribution to the United Methodist Settlement Amount in the amount of such contribution.

4.  **Effective Date for Release and Channeling Injunction Protections With Respect To United Methodist Entities.**  The releases for the benefit of the United Methodist Entities associated with being treated as Contributing Chartered Organizations and the benefits of the Channeling Injunction and any and all related releases under the Plan (not including the releases and protections provided to Participating Chartered Organizations) shall not be effective unless and until (i) the Effective Date of the Plan has occurred, and (ii) the full amount of the United Methodist Settlement Payment (less any payments from the Reserved Amount) has been paid or released to the Settlement Trust (whether from the United Methodist Escrow Account or otherwise) as provided herein (the "Under Methodist Release Effective Date"). However, if (x) the Initial Methodist Payment is not timely paid as set forth herein, (y) $27.5 million is not contributed to the Escrow Account on or before the date that is the three (3) year anniversary of the Effective Date of the Plan, or (z) the Reserve Amount remaining after the payment of any United Methodist Entity's legal fees, costs, and expenses as set forth herein is not deposited in the United Methodist Escrow Account by the date that is six (6) years after the Effective Date, then the United Methodist Entities shall not be treated as Protected Parties as a result of this Term Sheet or the Agreement and the settlements set forth herein (the "United Methodist Release Termination Date").  The Settlement Trust shall give written notice of the occurrence of any termination event to the designated representative of the United Methodist Entities and ten (10) days to cure.  The occurrence of the United Methodist Release Termination Date shall not deprive any United Methodist Entities of the benefits of being Participating Chartered Organizations under the Amended Plan; provided that they shall remain deemed to have given the Participating Chartered Organization Settlement Contribution under the Amended Plan.  In particular, as a result of the United Methodist Entities providing the Participating Chartered Organization Settlement Contribution (as such

term is defined in the Century Term Sheet), they shall have the benefit of all protections under the Amended Plan provided to Participating Chartered Organizations regardless of whether the United Methodist Settlement Payment is made or any failure to comply with any other terms of this Term Sheet or the Agreement.

5. **Post-Confirmation Interim Injunction**.  The Plan and Confirmation Order shall provide that a post-confirmation interim injunction, as contemplated in Section 14 of the Century Term Sheet, shall remain in full force and effect for the benefit of the United Methodist Entities until the earlier to occur of (i) all Abuse Claims against the United Methodist Entities are subject to the Channeling Injunction or (ii) the United Methodist Release Termination Date.

6. **Releases**. The United Methodist Entities shall receive and give reciprocal releases, commensurate and consistent with those set forth in the Century Term Sheet.  The Amended Plan will also include the releases in Article X.J.3 of the Amended Plan, the Amended Plan's Channeling Injunction provisions, and the terms of the Trust Distribution Procedures, each of which do not exclude gross negligence or willful misconduct.  On the United Methodist Release Effective Date, (i) the Debtors, Reorganized BSA, Related Non-Debtor Entities, Local Councils, other Protected Parties, Settling Insurance Companies, the FCR, the Coalition, the Settlement Trust, and all parties that accept the Plan, or do not accept the Plan and do not opt-out of releases, shall waive and release the United Methodist Entities from any and all Abuse Claims against the United Methodist Entities, and (ii) the Debtors, Reorganized BSA, Related Non-Debtor Entities, Local Councils, other Protected Parties, Settling Insurance Companies, the FCR, the Coalition, and the Settlement Trust agree to not file or assert any Claim or Cause of Action against the United Methodist Entities from any act or omission of the United Methodist Entities on or prior to the Effective Date except in accordance with the Plan.

7. **United Methodist Entities to Enjoy Benefits of Protected Parties and Contributing Chartered Organizations**.  Within two days of execution of this Term Sheet the UMAHC shall give the Debtors a list of the United Methodist Entities that shall be promptly added to the list of parties that may potentially become Contributing Chartered Organizations at https://omniagentsolutions.com/bsa-SAballotshttps://omniagentsolutions.com/bsa-SAballots (the "Potential Protected Party List").  As set forth herein, under the Amended Plan and Confirmation Order, and notwithstanding any contrary definitions or other provisions in the Amended Plan, the United Methodist Entities on the Potential Protected Party List and their Representatives[8] shall have the full benefit of (i) the Channeling Injunction, releases, and all other similar Plan protections to the same extent provided to any Protected Party, (ii) the post-confirmation interim injunction set forth in Section 14 of the Century Term Sheet for so long as is necessary to ensure that all Abuse Claims against any United Methodist Entities are stayed pending the occurrence of the date on which all such Abuse Claims are subject to the Channeling Injunction; and (iii) the right to seek coverage for claims under insurance policies issued directly by Settling Insurers as provided in Section 15 of the Century Term Sheet.

---

[8] The Parties believe that the term "Representatives" is broad and covers the United Methodist Entities and the Settlement Trust shall be prohibited from contending otherwise.

8. **Century Term Sheet**. A prerequisite to the protections afforded to the United Methodists Entities is that UMAHC shall not object to the Century Term Sheet, the Century settlement, any provision thereof, or any additional settlements with Insurance Companies that include the same or similar terms or provisions, or take any action in support of any party that objects to the Century Term Sheet or the Amended Plan, the Century settlement, any provision thereof, or any additional settlements with Insurance Companies or other Chartered Organizations that include the same or similar terms or provisions. Any conflict between this Term Sheet and the Century Term Sheet shall be governed by the Century Term Sheet. Notwithstanding anything to the contrary herein, the UMAHC may object to any additional settlements with Insurance Companies or any other parties in interest that are contrary to the terms of this Term Sheet or any of the rights or benefits of the United Methodist Entities or Chartered Organizations set forth herein or in the Amended Plan.

9. **Fiduciary Out by the Debtors and FCR**. Notwithstanding anything else in this Term Sheet or the Century Term Sheet to the contrary, no term or condition of this Term Sheet shall require BSA or the FCR to take or refrain from taking any action that it determines would be inconsistent with its fiduciary duties under applicable law.

10. **Findings and Orders.** The Amended Plan and the Confirmation Order shall state that the Findings and Orders and Trust Distribution Procedures are not binding on the United Methodist Entities to the extent that the United Methodist Settlement Amount is released to the Trust, provided that the United Methodist Entities may rely on all such Findings and Orders. The Amended Plan and Confirmation Order shall further provide that the UMAHC's agreement to settle does not indicate the UMAHC's or United Methodist Entities' support for or acceptance of the Trust Distribution Procedures or any findings and orders made in connection with them in any proceeding, which procedures, findings and order shall not be applicable to the United Methodist Entities. Without limiting the generality of the foregoing, the findings and determinations set forth in Article IX.A.3.j, Article IX.A.3.p, Article IX.A.3.r, Article IX.A.3.s and Article IX.A.3.t of the Amended Plan shall not be binding on the United Methodist Entities to the extent that the transactions contemplated in the Agreement, including the release of the United Methodist Settlement Amount to the Trust, are fully consummated. The UMAHC's agreement herein to recommend that the United Methodist Entities not object to entry of such findings and determinations in the Confirmation Order does not indicate the UMAHC's or any United Methodist Entity's support for such findings and determinations, and no party shall argue that any United Methodist Entity agreed to or acquiesced in such findings and determinations in any proceeding. Rather, the United Methodist Entities are designated as a Contributing Chartered Organizations and Protected Parties under the Amended Plan, and as a result, the UMAHC and United Methodist Entities take no position on such findings and determinations or on the Trust Distribution Procedures. The Confirmation Order and all other orders issued by any appellate court that exercises jurisdiction over such orders, if any, shall approve the terms and provisions of this Term Sheet and the Agreement. Notwithstanding anything to the contrary herein, nothing will require the UMAHC or any United Methodist Entity to take any position that would impair their ability to pursue objections to any plan in the event that this Term Sheet or the Agreement is terminated. Subject to the foregoing, the UMAHC and the Debtors will (i) take reasonable positions in court supporting the settlement provided herein and the Amended Plan provisions that effectuate the Term Sheet and the

Agreement; (ii) take reasonable positions in court supporting approval of such terms through the Confirmation Order and (iii) will not assist any party in its opposition to the foregoing.

11. **Trust Distribution Procedures**. Subject to modification in a manner not inconsistent with the Term Sheet and the Agreement by the Debtors, the Coalition, and the FCR, the Trust Distribution Procedures may be in the form attached to the Amended Plan, provided that the United Methodist Entities shall be included as a releasee in any form of release attached to the Trust Distribution Procedures to the broadest extent that BSA, any Local Council or any other Protected Parties are released, which release shall be consistent with this Term Sheet and the Agreement. The Trust Distribution Procedures shall further provide that the Settlement Trustee shall require holders of Claims related to, arising from or in connection with Abuse Claims who receive payment from the Trust to release any Claim related to, arising from or in connection with Abuse Claims against the United Methodist Entities. The UMAHC shall not object to the Trust Distribution Procedures but may add a statement in the Amended Plan that the United Methodist Entities are Contributing Chartered Organizations and, as a result, take no position on the Trust Distribution Procedures. The UMAHC shall not object to the selection of the Settlement Trustee. The UMAHC shall not participate in or otherwise interfere with the administration of the Trust.

12. **Consent Rights; Conditions to Term Sheet and Agreement**. The UMAHC will have good faith consent rights with respect to any modifications to the Amended Plan, the Settlement Trust Documents, and the Confirmation Order relating to the Channeling Injunction, releases by holders of Abuse Claims, and related definitional terms including, for the avoidance of doubt, "Abuse," "Abuse Claim," "Abuse Insurance Policy," "Chartered Organization," "Contributing Chartered Organizations," "Non-Abuse Insurance Policy," and "Protected Parties," but only to the extent that such modifications would adversely affect the United Methodist Entities. The UMAHC's obligations under this Term Sheet are expressly conditioned upon the Amended Plan, as it may be amended by the Court or the Debtors, being confirmed and including the definition of "Abuse Claim" as currently set forth in the Amended Plan.

13. **Plan Support**. So long as the United Methodist Entities, are included as Protected Parties, receive the benefits of the injunctions and releases described above and in the Century Term Sheet, and the Plan is otherwise consistent with the terms of this Term Sheet, the UMAHC will recommend to the United Methodist Entities that they should vote in favor of the Amended Plan and not object to the confirmation of the Plan and the approval of the Plan Documents, including the making of all findings of fact and conclusions of law reasonably necessary to achieve the United Methodist Treatment. The parties acknowledge and agree that the UMAHC does not control any United Methodist Entities, and an objection to the Plan by a party that may fit within the definition of United Methodist Entity shall not be deemed a breach or default under this Term Sheet and shall not impair the rights of any United Methodist Entities to the United Methodist Treatment provided herein; provided however, that the UMAHC shall work in good faith with the Debtors to encourage any such objecting party to immediately withdraw any objection to the Amended Plan or Plan Documents; provided further however, to the extent such objection is not withdrawn, such Entity shall receive the treatment under the Plan for Opt-Out Chartered Organizations. In consideration of the compromises and settlements set forth

herein, the parties to the Century Term Sheet will (i) support all United Methodist Entities becoming Protected Parties subject to the protection of the Channeling Injunction and the beneficiaries of all releases benefitting Contributing Chartered Organizations under the Amended Plan, (ii) support the Amended Plan and any modifications thereto as described herein, (iii) recommend to all holders of Abuse Claims entitled to vote on the Plan to vote to accept the Amended Plan as amended in accordance with this Term Sheet (provided, however, the AHCLC shall not be required to make any recommendations to holders of Claims, and shall not be bound by this subsection), and (iv) will recommend to all holders of Abuse Claims entitled to vote on the Plan to support the releases in favor of (x) Chartered Organizations, as set forth in the Amended Plan; and (y) all United Methodist Entities as defined herein.

14. **Definitive Documents**.  The Plan, the Confirmation Order, the Affirmation Order, the Plan Documents, the Plan Supplement, any motions or pleadings filed by the Debtors in the Chapter 11 Cases seeking approval or confirmation of the foregoing, and any exhibits, appendices, schedules, supplements, or additional documents contemplated by the foregoing (the "Definitive Documents") shall be consistent in all respects with this Term Sheet, and the provisions regarding implementation of the United Methodist Settlement in the Definitive Documents shall be in form and substance reasonably acceptable to the Parties.

15. **Public Statements**.  Parties to cooperate with each other to coordinate on timing and substance of public statements of settlement, including press releases, court filings and in-court statements.

16. **Authority**.  The persons signing this Term Sheet on behalf of the UMAHC represent that they have authority to enter into this Term Sheet on behalf of the UMAHC.  Each State Court Counsel represents and warrants to the Parties that, as of the date hereof, it represents the number of holders of Direct Abuse Claims who filed timely Direct Abuse Claims in the Chapter 11 Cases that is listed next to its name on Schedule 1 hereto.

17. **Counterpart Execution**.  This Term Sheet may be executed in one or more counter parts that, when exchanged and complied by email or other means shall constitute one single, effective summary of the parties' agreements.

*[Signature Pages Follow]*

**EXECUTION COPY**

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**The United Methodist Ad Hoc Committee**     **BSA (as defined)**

By: _____          By: _____

Name: _Geor̄ge K. Anding, Jr_            Name: _____

Title: _Chairperson_                     Title: _____

Date: _12 - 20 - 2021_                   Date: _____

*[Signature Page to Term Sheet]*

12

*[Signature Pages Follow]*

18 = 184868-0904-5767.14880-0754-5863.34868-0904-5767.1

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**The United Methodist Ad Hoc Committee**   **BSA (as defined)**

By: _____   By: _____   *Roger C. Mosby*

Name: _____   Name: _____   Roger C. Mosby

Title: _____   Title: _____   President & CEO

Date: _____   Date: _____   12-20-2021

**FUTURE CLAIMANTS REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: 12/20/21

**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

*[Signature Page to Term Sheet]*

12

**FUTURE CLAIMANTS REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____
       David J. Molton
Dated: ___December 21, 2021___

**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

*[Signature Page to Term Sheet]*

**FUTURE CLAIMANTS REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____, its chair

Dated: __12/20/21__

*[Signature Page to Term Sheet]*

12

EXECUTION COPY

## STATE COURT COUNSEL

**Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C.**

By: /s/ _Kenneth M. Rothweiler_

Name: _Kenneth M. Rothweiler_

Title: _Coalition member_

Date: _12/20/21_

**Slater Slater & Schulman LLP**

By: /s/ _____

Name: _____

Title: _____

Date: _____

**Andrews & Thornton**

By: /s/ _____

Name: _____

Title: _____

Date: _____

**ASK LLP**

By: /s/ _____

Name: _____

Title: _____

Date: _____

*[Signature Page to Term Sheet]*

13

EXECUTION COPY

## STATE COURT COUNSEL

**Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C.**

By: /s/ _____

Name: _____

Title: _____

Date: _____

**Slater Slater & Schulman LLP**

By: /s/ _Alan P. Slater_

Name: Alan P. Slater

Title: Partner

Date: 12/20/21

**Andrews & Thornton**

By: /s/ _____

Name: _____

Title: _____

Date: _____

**ASK LLP**

By: /s/ _____

Name: _____

Title: _____

Date: _____

*[Signature Page to Term Sheet]*

13

## STATE COURT COUNSEL

**Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C.**

By: _/s/_____

Name: _____

Title: _____

Date: _____


**Slater Slater & Schulman LLP**

By: _/s/_____

Name: _____

Title: _____

Date: _____


**Andrews & Thornton**

By: _/s/_____

Name: _Anne Andrews_____

Title: _Managing Partner_____

Date: _December 20, 2021_____


**ASK LLP**

By: _/s/_____

Name: _____

Title: _____

Date: _____


*[Signature Page to Term Sheet]*

13

## STATE COURT COUNSEL

**Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C.**

By: _/s/_

Name: _____

Title: _____

Date: _____

**Slater Slater & Schulman LLP**

By: _/s/_

Name: _____

Title: _____

Date: _____

**Andrews & Thornton**

By: _/s/_

Name: _____

Title: _____

Date: _____

**ASK LLP**

By: _/s/_

Name: _Joseph L. Steinfeld, Jr._

Title: _Managing Partner_

Date: _December 20, 2021_

*[Signature Page to Term Sheet]*

13

## Schedule 1

## State Court Counsel

| FIRM | NOTICE ADDRESS | CLAIMS |
|------|----------------|--------|
| Slater Slater Schulman LLP | Attn: Adam P. Slater (aslater@sssfirm.com) 488 Madison Avenue 20th Floor New York, NY 10022 | 14170 |
| ASK LLP | Attn: Joseph Steinfeld (jsteinfeld@askllp.com) 151 West 46th Street, 4th Floor New York, NY 10036 | 3277 |
| Andrews & Thornton, AAL, ALC | Andrews & Thornton Attn: Anne Andrews (aa@andrewsthornton.com) 4701 Von Karman Ave., Suite 300 Newport Beach, CA 92660 | 3009 |
| Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. | Attn: Stewart J. Eisenberg (stewart@erlegal.com) 1634 Spruce Street Philadelphia, PA 19103 | 16869 |
| Junell & Associates PLLC | Attn: Deborah Levy (dlevy@junell-law.com) 3737 Buffalo Speedway, Ste. 1850 Houston, TX 77098 | 2918 |
| Reich & Binstock LLP | Attn: Dennis Reich (dreich@reichandbinstock.com) 4265 San Felipe St. #1000 Houston, TX 77027 | 336 |
| Krause & Kinsman Law Firm | Attn: Adam W. Krause (adam@krauseandkinsman.com) 4717 Grand Avenue #300 Kansas City, MO 64112 | 5981 |

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| Bailey Cowan Heckaman PLLC | Attn: Aaron Heckaman (aheckaman@bchlaw.com) 5555 San Felipe St., Ste. 900 Houston, TX 77056 | 1026 |
| Jason J. Joy & Associates, PLLC | Attn: Jason Joy (jason@jasonjoylaw.com) 909 Texas St., Ste. 1801 Houston, TX 770022 | 690 |
| Motley Rice LLC | Attn: Daniel Lapinski (dlapinski@motleyrice.com) 210 Lake Drive East, Suite 101 Cherry Hill, NJ 08002 | 343 |
| Weller Green Toups & Terrell LLP | Attn: Mitchell Toups (matoups@wgttlaw.com) 2615 Calder Ave. #400 Beaumont, TX 77702 | 974 |
| Colter Legal PLLC | Attn: John Harnishfeger (john.harnishfeger@colterlegal.com) 1717 K St. NW, Suite 900 Washington D.C. 20006 | 162 |
| Christina Pendleton & Associates, PLLC | Attn: Staesha Rath (sr@cpenlaw.com) 1506 Staples Mill Rd., Suite 101 Richmond, VA 23230 | 309 |
| Forman Law Offices, P.A. | Attn: Theodore Forman (ted@formanlawoffices.com) 238 NE 1st Ave. Delray Beach, FL 33444 | 125 |
| Danziger & De Llano LLP | Attn: Rod de Llano (rod@dandell.com) 440 Louisiana St., Suite 1212 Houston, TX 77002 | 1707 |
| Swenson & Shelley | Attn: Kevin Swenson | 175 |

| FIRM | NOTICE ADDRESS | CLAIMS |
|------|----------------|--------|
| | (kevin@swensonshelley.com)<br>107 South 1470 East, Ste. 201<br>St. George, UT 84790 | |
| Cohen Hirsch LP (formerly Brooke F. Cohen Law, Hirsch Law Firm) | Attn: Brooke F. Cohen<br>(brookefcohenlaw@gmail.com)<br>Attn: Andrea Hirsch<br>(andrea@thehirschlawfirm.com)<br>4318 Glenwick Lane<br>Dallas, TX 75205 | 64 |
| Damon J. Baldone PLC | Attn: Damon J. Baldone<br>(damon@baldonelaw.com)<br>162 New Orleans Blvd.<br>Houma, LA 70364 | 471 |
| Cutter Law, P.C. | Attn: Brooks Cutter<br>(bcutter@cutterlaw.com)<br>4179 Piedmont Ave., 3rd Fl.<br>Oakland, CA 94611 | 358 |
| Linville Johnson & Pahlke Law Group | Attn: Robert Pahlke<br>(rgp@pahlkelawgroup.com)<br>2425 Circle Dr., Ste. 200<br>Scottsbluff, NE 69361 | 71 |
| Porter & Malouf P.A. | Attn: Timothy Porter<br>(tporter@portermalouf.com)<br>825 Ridgewood Rd.<br>Ridgeland, MS 39157 | 86 |
| The Moody Law Firm | Attn: Will Moody Jr.<br>(will@moodyrrlaw.com)<br>500 Crawford St., Ste. 200<br>Portsmouth, VA 23704 | 677 |
| Levin Papantonio Thomas Mitchell Rafferty & Procter P.A. | Attn: Cameron Stephenson<br>(cstephenson@levinlaw.com)<br>316 South Baylen St. | 44 |

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| | Pensacola, FL 32502 | |
| Marc J Bern & Partners LLP | Attn: Joseph Cappelli (jcappelli@bernllp.com) 60 East 42nd St., Ste. 950 New York, NY 10165 | 5893 |

64322465 v2-WorkSiteUS-036293/0001

17