<u>Exhibit L-2</u>

**Blackline of Form of TDP Expedited Distribution Release**

---

**<u>IMPORTANT NOTICE</u>**

**IN ADDITION TO RELEASES PROVIDED UNDER THE PLAN, PURSUANT TO THIS RELEASE, IF A HOLDER OF A DIRECT ABUSE CLAIM ELECTS TO TAKE AN EXPEDITED DISTRIBUTION, AS SET FORTH IN THE TRUST DISTRIBUTION PROCEDURES, SUCH HOLDER WILL BE REQUIRED TO VOLUNTARILY RELEASE ANY SETTLING INSURANCE COMPANY AND ALL CHARTERED ORGANIZATIONS FROM ANY AND ALL CLAIMS FOR ABUSE RELATED TO SCOUTING.**

---

**YOU MAY ACCESS FULL AND COMPLETE COPIES OF THE SETTLEMENT AGREEMENTS AND RELEASES, FREE OF CHARGE, AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA-PLANSUPPLEMENT.**

DRAFT

**EXHIBIT A[1]**

**EXPEDITED DISTRIBUTION**

**CLAIMANT RELEASE AND INDEMNIFICATION
IN CONNECTION WITH EXPEDITED DISTRIBUTION
FROM THE BOY SCOUTS OF AMERICA SETTLEMENT TRUST**

To receive payment of an Expedited Award (as defined below) from the Boy Scouts Settlement Trust (the "**Trust**"), an eligible Claimant must execute and submit to the Trustee (as defined below) this Release and Indemnification (the "**Release**"). This Release must be signed by the Claimant or the Claimant's Legal Representative (as defined below). A signature by an attorney for the Claimant or by an attorney for the Claimant's Legal Representative is not sufficient.

If you need assistance, please contact the Claims Administrator by email at [• ] or by phone toll-free at [• ]. You may also visit the BSA Abuse Survivor Website for additional information.

**DEFINITIONS[2]**

The definitions set forth above for the terms "**Trust**" and "**Release**" are specifically incorporated herein by reference as if fully set forth in this section.

All capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Chapter 11 Plan (as defined below).

"**Abuse**" means sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, indecent assault or battery, rape, pedophilia, ephebophilia, sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction, or intimidation, any other sexual misconduct or injury, contacts or interactions of a sexual nature, including the use of photography, video, or digital media, or other physical abuse or bullying or harassment without regard to whether such physical abuse or bullying is of a sexual nature, between a child and an adult, between a child and another child, or between a non-consenting adult and another adult, in each instance without regard to whether such activity involved explicit force, whether such activity involved genital or other physical contact, and whether there is or was any associated physical, psychological, or emotional harm to the child or non-consenting adult.

"**Abuse Claim**" means a liquidated or unliquidated Claim against a Protected Party or, a Limited Protected Party, or an Opt-Out Chartered Organization that is attributable to, arises from, is based upon, relates to, or results from, in whole or in part, directly, indirectly, or

---

[1] This document remainremains subject to ongoing review and material revision in all respects. The Debtors, Coalition, the
Future Claimants' Representative, the Ad Hoc Committee, the Creditors' Committee, JPM, HartfordSettling Insurance Companies, and TCJC are each continuing to review the documents that are part of the Plan Supplement, and each of their respective rights are reserved with respect to the Plan Supplement and the information contained therein, as applicable.
[2] Conform to Plan definitions.

~~DRAFT~~

derivatively, alleged Scouting-related Abuse that occurred prior to the Petition Date ~~(and in the case of Limited Protected Parties, on or after January 1, 1976)~~, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, alter ego, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based ~~on misrepresentation concealment, or unfair practice or any act or failure to act by a Protected Party, a Limited Protected Party or any other Person for whom any Protected Party or Limited Protected Party is alleged to be responsible; provided, however, that with respect to any Contributing Chartered Organization or its personnel or affiliates, the term "Abuse Claim" shall be limited to any such Claim that is attributable to, arises from, is based upon, or results from, in whole or in part, directly, indirectly, or derivatively, alleged Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability,~~ ~~*respondeat superior*~~~~, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention~~upon, or directly or indirectly related to any insurance relationship, the provision of insurance or the provision of insurance services to or by any Protected Parties, or misrepresentation, concealment, or unfair practice, breach of fiduciary duty, public or private nuisance, gross negligence, willful misconduct, or any other theory, including any theory based on or related to public policy or any act or failure to act, or failure to warn by a Protected Party, a Limited Protected Party, an Opt-Out Chartered Organization or any other Person for whom any Protected Party ~~or~~, Limited Protected Party, or Opt-Out Chartered Organization is alleged to be responsible~~, in connection, in whole or in part, with the Contributing Chartered Organization's or its personnel's or affiliates' involvement in, or sponsorship of, one or more Scouting units~~ (including any such Claim that has been asserted or may be amended to assert in a proof of claim alleging Abuse, whether or not timely filed, in the Chapter 11 Cases, or any such Claim that has been asserted against the Settlement Trust), including any proportionate or allocable share of liability based thereon~~; provided further, however, that with respect to any Participating Chartered Organization, the term "Abuse Claim" shall be limited to Post-1975 Chartered Organization Abuse Claims~~. Abuse Claims include any Future Abuse Claims, any Indirect Abuse Claims, any Opt-Out Abuse Claims, and any Claim that is attributable to, arises from, is based upon, relates to, or results from, alleged Scouting-related Abuse regardless of whether, as of the Petition Date, such Claim was barred by any applicable statute of limitations. For the avoidance of doubt, no Claim alleging Abuse shall be an "Abuse Claim" against a ~~Contributing~~Protected Party, Limited Protected Party, or Opt-Out Chartered Organization ~~or a Participating Chartered Organization~~ if such Claim is wholly unrelated to Scouting~~.~~; provided, further, that any Claim alleging Abuse involving the Debtors, Reorganized BSA, Non-Debtor Entities, Local Councils, and each of their Representatives, is necessarily Scouting-related and shall be considered an Abuse Claim.

"**Abuse Insurance Policies**" means, collectively, the BSA Insurance Policies and the Local Council Insurance Policies. Abuse Insurance Policies do not include Non-Abuse Insurance Policies or Postpetition Insurance Policies.

DRAFT

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware, having subject matter jurisdiction over the Chapter 11 Cases and, to the extent of any reference withdrawal made under section 157(d) of title 28 of the United States Code, the District Court.

"**BSA Insurance Policies**" means any and all known and unknown contracts, binders, certificates or Insurance Policies currently or previously in effect at any time on or before the ~~Effective~~Petition Date naming the Debtors, or either of them, or any predecessor, subsidiary, or past or present Affiliate of the Debtors, as an insured (whether as the primary or an additional insured), or otherwise alleged to afford the Debtors insurance coverage, upon which any claim could have been, has been, or may be made with respect to any Abuse Claim, including the policies listed on Schedule 2 to the Chapter 11 Plan. ~~For the avoidance of doubt~~Notwithstanding the foregoing, BSA Insurance Policies shall not include: (a) any policy providing reinsurance to any ~~Settling~~ Insurance Company; (b) any Non-Abuse Insurance Policy; ~~or~~ (c) any Local Council Insurance Policy; or (d) any Postpetition Insurance Policy.

"**Channeling Injunction**" means the permanent injunction provided for in Article X.F.~~.~~ of the Chapter 11 Plan with respect to (a) Abuse Claims ~~that was~~ against the Protected Parties, (b) Post-1975 Chartered Organization Abuse Claims against the Limited Protected Parties, and (c) Abuse Claims against the Limited Protected Parties that are covered under any insurance policy issued by the Settling Insurance Companies with respect to such coverage for Abuse Claims, (d) Opt-Out Abuse Claims against the Opt-Out Chartered Organizations under any insurance policy issued by the Settling Insurance Companies with respect to such coverage for Abuse Claims, to be issued pursuant to~~, and included in, the order confirming the Chapter 11 Plan~~ the Confirmation Order.

"**Chapter 11 Cases**" means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on the Petition Date in the Bankruptcy Court and currently styled *In re Boy Scouts of America and Delaware BSA, LLC*, Bankruptcy Case No. 20-10343 (LSS) (Jointly Administered).

"**Chapter 11 Plan**" means the *Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* dated ~~September 29~~December 17, 2021, filed in the Chapter 11 Cases (as the same may be amended or modified) and confirmed by the Bankruptcy Court.

"**Chartered Organizations**" means each and every ~~civil~~civic, faith-based, educational or business organization, governmental entity or organization, other entity or organization, or group of individual citizens, in each case presently or formerly authorized by the BSA to operate, sponsor or otherwise support one or more Scouting units.

"**Claimant**" means the holder of ~~a Direct~~an Abuse Claim who (i) elected to resolve his or her ~~Direct~~ Abuse Claim for the Expedited Distribution in accordance with the Chapter 11 Plan and Confirmation Order, (ii) timely submitted to the Trust a properly and substantially completed, non-duplicative proof of claim or Future Abuse Claim, and (iii) personally signed his or her proof of claim or Future Abuse Claim attesting to the truth of its contents under penalty of perjury, or supplemented his or her proof of claim to so provide such verification.

DRAFT

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to (a) the Debtors, the Ad Hoc Committee, the Coalition, the Future Claimants' Representative, the Settling Insurance Companies (in accordance with their respective Insurance Settlement Agreement), and TCJC (in accordance with the TCJC Settlement Agreement) and (b) the Creditors' Committee and JPM in accordance with their respective consent rights under the JPM / Creditors' Committee Term Sheet, as incorporated by reference in Article I.D of the Chapter 11 Plan.

"**Contributing Chartered Organization**" means the current or former Chartered Organizations listed on Exhibit D to the Chapter 11 Plan, including any Chartered Organization made a Protected Party under a Post-Effective Date Chartered Organization Settlement approved by the Bankruptcy Court in accordance with Article IV.I of the Chapter 11 Plan.; provided, however, no Other Chartered Organization shall become a Contributing Chartered Organization if it (a) objects to confirmation of the Plan or (b) informs Debtors' counsel in writing on or before the confirmation objection deadline that it does not wish to make the Participating Chartered Organization Insurance Assignment.  No Participating Chartered Organization shall be considered a Contributing Chartered Organization based solely on the Participating Chartered Organization Insurance Assignment.  Without limiting the foregoing, subject to Confirmation of the Plan and approval of the TCJC Settlement Agreement by an order of the Bankruptcy Court (including in the Confirmation Order), TCJC is a Contributing Chartered Organization and shall be designated as such in the Confirmation Order and the Affirmation Order.  Without limiting the foregoing, subject to Confirmation of the Plan and approval of the Other Chartered Organization Settlement by an Order of the Bankruptcy Court (including the Confirmation Order), upon the Effective Date all Other Chartered Organizations shall be designated as Contributing Chartered Organizations, subject to the terms of the Century and Chubb Companies Insurance Settlement Agreement.  Notwithstanding the foregoing, with respect to any Chartered Organization that is a debtor in bankruptcy as of the Confirmation Date, such Chartered Organization shall be treated as a Contributing Chartered Organization only if it advises the Debtors' counsel in writing that it wishes to make the Participating Chartered Organization Insurance Assignment, and, for the avoidance of doubt, absent such written advisement, none of such Chartered Organization's rights to or under the Abuse Insurance Policies shall be subject to the Participating Chartered Organization Insurance Assignment, provided, however, that Abuse Claims against such Chartered Organizations shall be subject to the injunction and release applicable to Opt-Out Abuse Claims.  A list of Chartered Organizations that are debtors in bankruptcy as of the Confirmation Date is attached to the Chapter 11 Plan as Exhibit K.  No Chartered Organization shall be a Contributing Chartered Organization unless it provides or is deemed to provide the assignments and releases as set forth in Sections 9 and 10 of the Century and Chubb Companies Insurance Settlement Agreement.

"**Debtors**" means Boy Scouts of America and Delaware BSA, LLC, the debtors and debtors-in-possession in the Chapter 11 Cases.

"**Direct Abuse Claim**" means an Abuse Claim that is not an Indirect Abuse Claim—*i.e.*, is not a liquidated or unliquidated Abuse Claim for contribution, indemnity, reimbursement, or subrogation, whether contractual or implied by law (as those terms are defined by the applicable non-bankruptcy law of the relevant jurisdiction), and any other derivative Abuse Claim of any

4

DRAFT

kind whatsoever, whether in the nature of or sounding in contract, tort, warranty or any other theory of law or equity whatsoever, including any indemnification, reimbursement, hold-harmless or other payment obligation provided for under any prepetition settlement, insurance policy, program agreement or contract; *provided*, *however*, that any retrospective premiums and self-insured retentions arising out of any Abuse Claims under the Abuse Insurance Policies shall not constitute an Indirect Abuse Claim.

"**District Court**" means the United States District Court for the District of Delaware, having jurisdiction in the Chapter 11 Cases.

"**Expedited Award**" means the compensation a Claimant receives on behalf of the Claimant's ~~Direct~~ Abuse Claim as a result of the election to receive the Expedited Distribution in accordance with the Plan and Confirmation Order.

~~"**Hartford Insurance Settlement Agreement**" means that certain settlement agreement, which remains subject to definitive documentation, by and between Hartford, the Debtors, the Ad Hoc Committee, the Coalition, the Future Claimants' Representative, and certain state court counsel to holders of Direct Abuse Claims, as such agreement is described in the term sheet appended to the Sixth Mediators' Report [D.I. 6210] filed on September 14, 2021, and as such agreement may be subsequently set forth in a definitive written settlement agreement that is consistent with such term sheet and executed by all of the parties thereto (and any additional parties that execute a joinder thereto). Upon its execution by all of the parties thereto, the Hartford Insurance Settlement Agreement shall be filed with the Plan Supplement and attached to the Plan as Exhibit I-1.~~

"**Insurance Settlement Agreement**" means~~:~~ (a) ~~the Hartford Insurance Settlement Agreement; (b) any other~~any settlement agreement entered into after the Petition Date and before the Effective Date by and among (i) any Insurance Company, on the one hand, and (ii) one or more of the Debtors and/or any other Protected Party or Limited Protected Party, on the other hand, under which an Insurance Policy and/or the Debtors' and/or other Protected Parties' or Limited Protected Parties' rights thereunder with respect to Abuse Claims or Non-Abuse Litigation Claims are, subject to Confirmation of the Plan and the entry of a Final Order approving such settlement agreement (which order may be the Confirmation Order), released; and (~~c~~b) any Post-Effective Date Insurance Settlement entered into during the Insurance Settlement Period by and between (i) any Insurance Company, on the one hand, and (ii) the Settlement Trustee (or the Settlement Trustee and any other Protected Party), on the other hand, under which an Insurance Policy that is subject to the Insurance Assignment and/or the Settlement Trustee's and/or Protected Parties' or Limited Protected Parties' rights thereunder with respect to Abuse Claims or Non-Abuse Litigation Claims are released. All Insurance Settlement Agreements entered into before the Effective Date related to Specified Primary Insurance Policies that release the applicable Insurance Company from liability arising from Non-Abuse Litigation Claims must be acceptable to the Creditors' Committee in accordance with the terms of the JPM / Creditors' Committee Term Sheet; provided, however, that with respect to proposed settlements of any Specified Excess Insurance Policy entered into before the Effective Date, the Creditors' Committee shall have consultation rights.

DRAFT

"**Legal Representative**" means a personal representative, guardian, conservator, parent (on behalf of a minor), executor of an estate or a similar representative who has been appointed by a court or has other legal authorization to file a proof of claim and/or ~~a Direct~~an Abuse Claim and execute this Release on behalf of the Claimant.

"**Local Council Insurance Policies**" means any and all known and unknown contracts, binders, certificates or insurance policies currently or previously in effect at any time on or before the ~~Effective~~Petition Date naming the Local Councils, or any of them, or any predecessor, subsidiary, or past or present Affiliate of any Local Council, as an insured (whether as the primary or an additional insured), or otherwise alleged to afford any Local Council insurance coverage, upon which any claim could have been, has been or may be made with respect to any Abuse Claim, including the policies identified on Schedule 3 to the Chapter 11 Plan. Notwithstanding the foregoing, Local Council Insurance Policies shall not include: (a) any policy providing reinsurance to any Settling Insurance Company~~.  For the avoidance of doubt, Local Council~~; (b) any Non-Abuse Insurance ~~Policies do not include~~Policy; (c) any BSA Insurance Policy~~ or any insurance policy issued at any time to any of the Local Councils for directors', managers', and officers' liability (including any "tail policy" or run off coverage) or any agreements, documents, or instruments relating thereto.~~; or (d) any Postpetition Insurance Policy.

"**Perpetrator**" means any individual who personally committed or is alleged to have personally committed an act of Abuse that forms the basis for an Abuse Claim; provided for the avoidance of doubt that the term "Perpetrator" shall only include natural persons and not The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole.  The term "Perpetrator" does not include any individual who did not personally commit or is not alleged to have personally committed an act of Abuse that forms the basis for an Abuse Claim, against whom an Abuse Claim is nevertheless asserted or may be asserted, including by virtue of such individual's position or service as an employee or volunteer of the Debtors or as a Scout participant, or by virtue of such individual's position or service as an employee or volunteer of a Local Council or a Chartered Organization or as a Scout participant.

"**Protected Parties**" means the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Contributing Chartered Organizations~~, including TCJC~~; (f) the Settling Insurance Companies~~, including Hartford~~; and (g) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Protected Party.  Notwithstanding the foregoing, a Contributing Chartered Organization shall be a Protected Party with respect to Abuse Claims only as set forth in the definition of "Abuse Claim."

"**Released Parties**" means the Trust, the Trustee, the STAC, the Claims Administrator, the Protected Parties, the Chartered Organizations, including all Chartered Organizations that are not Protected Parties or Limited Protected Parties, and each of their respective predecessors, successors, assigns, assignors, representatives, members, officers, employees, agents, consultants, lawyers, advisors, professionals, trustees, insurers, beneficiaries, administrators, and any natural, legal, or juridical person or entity acting on behalf of or having liability in respect of the Trust, the Trustee, the STAC, the Claims Administrator, the Protected Parties, or the Chartered Organizations.

DRAFT

"**Scouting-related**" means anything that is attributable to, arises from, is based upon, results from, or relates to, in whole or in part, directly, indirectly, or derivatively, Scouting.

"**Settling Insurance Company**" means, solely with respect to Abuse Insurance Policies that are the subject of an Insurance Settlement Agreement, any Insurance Company that contributes funds, proceeds or other consideration to or for the benefit of the Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by (a) an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order or the Affirmation Order or (b) the Settlement Trust. Without limiting the foregoing, subject to Confirmation of the Plan and approval of the Hartford Insurance Settlement AgreementAgreements by an order or orders of the Bankruptcy Court (including in the Confirmation Order), Hartford is athe Insurance Companies listed on Exhibit I to the Chapter 11 Plan (which list is attached hereto and incorporated herein) are each Settling Insurance CompanyCompanies and shall be designated as such in the Confirmation Order and the Affirmation Order.

"**STAC**" means the Settlement Trust Advisory Committee appointed to oversee the Trust in accordance with the Chapter 11 Plan and the Trust Agreement.

"**TCJC**" means The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole, including any affiliates or personnel.

"**TCJC Settlement Agreement**" means that certain settlement agreement by and between TCJC, the Debtors, the Ad Hoc Committee, the Coalition, the Future Claimant' Representative, and certain state court counsel to holders of Direct Abuse Claims, as such agreement has been filed with the Plan Supplement on November 30, 2021.

"**TDP**" means the Boy Scouts of America Trust Distribution Procedures for Abuse Claims, substantially in the form attached as Exhibit A to the Chapter 11 Plan filed in the Chapter 11 Cases on September 2930, 2021, and as may be amended and supplemented thereafter from time to time.

"**Trust Agreement**" means the Settlement Trust Agreement dated as of the Effective Date, substantially in the form attached to the Chapter 11 Plan as Exhibit B, as the same may be amended or modified from time to time in accordance with the terms thereof.

"**Trustee**" means Eric D. Green or any other person appointed to serve as trustee under and in accordance with the Trust Agreement.

## RELEASE AND INDEMNIFICATION

A.    In consideration of the benefit of an Expedited Award from the Trust, and without limiting any of the Releases or Injunctions in the Plan, which remain in full force and effect in favor of the Protected Parties and, the Limited Protected Parties, and Opt-Out Chartered Organizations (as set forth in the Plan), I, on my own behalf and on behalf of my respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, trustees, insurers, heirs, next of kin, estates, beneficiaries, executors, administrators, and any natural, legal, or

7

DRAFT

juridical person or entity to the extent he, she, or it is entitled to assert any claim on my behalf, including, but not limited to, a Legal Representative, (hereafter "**I**", "**my**" or "**me**"), do hereby voluntarily, intentionally, knowingly, absolutely, unconditionally ~~and~~, irrevocably, and fully waive, release, remit, acquit, forever discharge, and covenant not to sue the Released Parties, or any of them, from and with respect to any and all claims, including, but not limited to, all claims as defined in section 101(5) of the Bankruptcy Code, charges, complaints, demands, obligations, causes of action, losses, expenses, suits, awards, promises, agreements, rights to payment, right to any equitable remedy, rights of any contribution, indemnification, reimbursement, subrogation or similar rights, demands, debts, liabilities, express or implied contracts, obligations of payment ~~of~~or performances, rights of offset or recoupment, costs, expenses, attorneys' and other professional fees and expenses, compensation or other relief, and liabilities of any nature whatsoever whether present or future, known or unknown, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, absolute or contingent, direct or derivative and whether based on contract, tort, statutory, or any other legal or equitable theory of recovery (collectively, "**Released Claims**") arising from, relating to, resulting from or in any way connected to, in whole or in part, my ~~Direct~~ Abuse Claim (solely to the extent asserted against any of the Protected Parties and the Chartered Organizations) and the discharge of the Released Parties' duties and responsibilities under the Trust Agreement, including any agreement, document, instrument or certification contemplated by the Trust Agreement, the TDP, the Chapter 11 Plan, the formulation, preparation, negotiation, execution or consummation of the Trust Agreement, the TDP and the Chapter 11 Plan, and any and all other orders of the District Court or Bankruptcy Court relating to the Released Parties and/or their duties and responsibilities, from the beginning of time through the execution date of this Release. I covenant and agree that I will honor the release as set forth in the preceding sentence and, further, that I will not (i) institute a lawsuit or other action against any Released Party based upon, arising out of, or relating to any Released Claims released hereby, (ii) participate, assist, or cooperate in any such action, or (iii) encourage, assist and/or solicit any third party to institute any such action.

B.    Without limiting the foregoing, and notwithstanding anything to the contrary in this Release, in consideration of the benefit of the contribution made by each Settling Insurance Company ~~(including Hartford)~~ to the Trust pursuant to an Insurance Settlement Agreement ~~(including the Hartford Insurance Settlement Agreement)~~ and the payment by the Trust to me of the Expedited Award, I do hereby voluntarily, intentionally, knowingly, absolutely, unconditionally, irrevocably, and fully waive, release, remit, acquit, forever discharge, and covenant not to sue (i) each Settling Insurance Company ~~(including Hartford)~~ and (ii) any insured, co-insured or other third party (including any Local Council, any other Protected Party, any Limited Protected Party, and any other Chartered Organization) ~~to the extent and scope of such party's right or claim for coverage~~ under any Abuse Insurance Policy issued by any Settling Insurance Company ~~(including Hartford)~~ or any other insurance policy issued by any Settling Insurance Company ~~(including Hartford)~~, including a policy issued to a Chartered Organization (any such third party, an "**Insured Party Releasee**"), ~~from or~~in the case of (i) or (ii) from and with respect to ~~my Direct~~any Abuse Claim ~~or any other Claim of Abuse relating, in whole or in part, to Scouting (including any Claim of Abuse that occurred prior to the Petition Date, whether before, on or after January 1, 1976)~~.

C.    I, as assignor, hereby transfer and assign to the Trust, as assignee, any rights to pursue and release any rights, claims, benefits, or Causes of Action under the Abuse Insurance Policies (and any other insurance policy issued by a Settling Insurance Company covering Abuse

DRAFT

Claims) for my Abuse Claim for the full amount of the liability that any of the Released Parties may have for my Abuse Claim.

D.      I hereby acknowledge that, pursuant to the Chapter 11 Plan, the Channeling Injunction, and the ~~order confirming the Chapter 11 Plan~~Confirmation Order, the Debtors have been fully and completely discharged and released, including their respective property and successors and assigns, from any and all liability arising from or related to ~~any Direct~~my Abuse ~~Claims asserted~~Claim.

E.      I hereby acknowledge that, pursuant to the Chapter 11 Plan, the Channeling Injunction, and the ~~order confirming the Chapter 11 Plan~~Confirmation Order, the sole recourse of any holder of ~~a Direct~~an Abuse Claim against a Protected Party (or any holder of a Post-1975 Chartered Organization Abuse Claim against a Limited Protected Party) on account of such ~~Direct~~ Abuse Claim shall be to and against the Trust and such holder shall have no right whatsoever at any time to assert such ~~Direct~~ Abuse Claim against any Protected Party or any property or interest in property of any Protected Party (or to assert ~~such~~any Post-1975 Chartered Organization Abuse Claim against a Limited Protected Party or any property or interest in property of any Limited Protected Party).

F.      I hereby acknowledge that, pursuant to this Release, I am voluntarily providing a release to all <u>Insured Party Releasees and</u> Chartered Organizations, including all Chartered Organizations that are not Protected Parties or Limited Protected Parties, and I shall have no remedies with respect to my ~~Direct~~ Abuse Claim against any Chartered Organizations, including those that are not Protected Parties and Limited Protected Parties.

G.      In further consideration of the benefit of an Expedited Award, I shall indemnify and forever hold harmless, and pay all final judgments, damages, costs, expenses, fines, penalties, interest, multipliers, or liabilities in whatsoever nature, including costs of defense and attorneys' fees of, the Trust, the Trustee, the STAC, and the Claims Administrator arising from my failure to comply with the terms of this Release.

H.      I acknowledge that the Trust is not providing any tax advice with respect to the receipt of the Expedited Award or any component thereof, and I understand and agree that I shall be solely responsible for compliance with all tax laws with respect to the Expedited Award, to the extent applicable.

Claimant or Legal Representative Printed Name:      _____

Claimant or Legal Representative Signature:      _____

Date:   _____

9