## Exhibit A

**Tenth Mediator's Report**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

**TENTH MEDIATOR'S REPORT**

The Court appointed Timothy V.P. Gallagher to serve as the Mediator in the above-captioned cases under the *Order (I) Appointing Mediators, (II) Referring Certain Matters to Mediation, and (III) Granting Related Relief*, dated June 9, 2020 [D.I. 812] (the "Mediation Order").[2]

With the assistance of the Mediator, on December 30, 2021, the Debtors, the Future Claimants' Representative, the Coalition of Abused Scouts for Justice, and the Ad Hoc Committee of Local Councils (collectively, the "Parties") reached an agreement in principle on settlement terms with Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company), River Thames Insurance Company Limited (as successor in interest to UnionAmerica Insurance Company Limited), and Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company) (collectively, "Clarendon"),[3] a copy

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Mediation Order, the *Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 7832] (the "Plan") or the Clarendon Term Sheet (as defined below), as applicable.

[3]   The term "Clarendon" shall not include the foregoing persons and entities in their capacities as contractual obligors under: (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from or in connection with Abuse Claims, any actions,

of which is attached hereto as **<u>Exhibit A</u>** (the "<u>Clarendon Term Sheet</u>").[4]  The Clarendon Term Sheet will be appended to and incorporated by reference in the Plan for the Debtors.  The Clarendon Term Sheet provides for a cash contribution by Clarendon to the Settlement Trust of $16,500,000.

Clarendon will be designated as Settling Insurance Company and Protected Party under the Plan, and subject to Court approval, will be entitled to all benefits thereunder as such.

Together with the contributions already committed to by the Debtors, the Local Councils, Hartford, TCJC, Century and the Chubb Companies, the United Methodist Ad Hoc Committee and the Zurich Insurers, the size of the Settlement Trust to compensate abuse survivors is now expected to exceed $2.69 billion.

The Mediator appreciates the diligence of the Parties and Clarendon in negotiating the settlement terms.  The Mediator believes, based on his participation in the negotiations of the Clarendon Term Sheet, that the settlements memorialized in this agreement is the product of good-faith, arm's-length negotiations among the Parties and Clarendon.  The Mediator expresses no view on the merits of the settlement terms or the confirmability of any plan, matters properly reserved for the Court.

This report is submitted with the consent of the Parties and Clarendon.  The mediation remains ongoing, and the Mediator is committed to work toward further settlements that maximize

---

omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise and (ii) Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from or in connection with any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise.

[4]   The summary provided in this report is for illustrative purposes only.  In the event of any inconsistency between this summary and the Clarendon Term Sheet, the terms of the Clarendon Term Sheet shall control.

the value of the estates for the benefit of creditors.  The Mediator therefore does not consider the mediation to be closed.

*[Remainder of Page Intentionally Left Blank]*

Dated:  December 30, 2021                    /s/ Timothy V.P. Gallagher
                                             Timothy V.P. Gallagher, Mediator

**<u>Exhibit A</u>**

**Clarendon Term Sheet**

*Confidential Mediation Communication*
*Subject to Mediation Privilege*
*Protected Settlement Communication*

## Settlement Term Sheet

This term sheet ("<u>Term Sheet</u>") represents the basic terms of a settlement agreement between and among Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company), River Thames Insurance Company Limited (as successor in interest to UnionAmerica Insurance Company Limited), and Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company (collectively, "<u>Clarendon</u>"),[1] Boy Scouts of America and Delaware BSA, LLC, as debtors and debtors in possession ("<u>BSA</u>" or the "<u>Debtors</u>"), the Ad Hoc Committee of Local Councils (the "<u>AHCLC</u>"),[2] the Coalition of Abused Scouts for Justice, solely and only in its capacity as an ad hoc committee (the "<u>Coalition</u>"),[3] and the Future Claimants' Representative (the "<u>FCR</u>" and, collectively with Clarendon, the Debtors, the AHCLC, the Coalition, the "<u>Parties</u>"). The attorneys representing holders of Direct Abuse Claims listed on Schedule 1 hereto, which reflects the number of holders of Abuse Claims represented by each firm (the "<u>State Court Counsel</u>") agree to support the terms of and be bound by the Agreement (as defined below). The Parties will prepare a definitive written settlement agreement consistent with this Term Sheet that will include additional material terms (the "<u>Agreement</u>"). The Agreement will be appended to and included in the *Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC,* subject to modification by the Debtors, the Coalition, and the FCR ("<u>Amended Plan</u>") located at Dkt. 7832 and the Confirmation Order (defined below). The Agreement and/or Term Sheet shall be listed on Exhibit I to the Amended Plan as an Insurance Settlement. Capitalized terms not defined in this Term Sheet shall have the definitions ascribed to such terms in the Amended Plan or the "<u>Century Term Sheet</u>" located at Dkt. No. 7745-1.

---

[1] The term "Clarendon" shall not include the foregoing persons and entities in their capacities as contractual obligors under: (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from or in connection with Abuse Claims, any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise and (ii) Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from or in connection with any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise.

[2] Notwithstanding anything to the contrary in this Term Sheet, the obligations and undertakings of the AHCLC in connection with this Term Sheet or the Agreement shall be no greater than the AHCLC's parallel obligations and undertakings under Section III of the Restructuring Support Agreement (including the "No Liability" subsection thereof) filed at Dkt. 5466-2.

[3] For the avoidance of doubt, no holders of Direct Abuse Claims are or shall be deemed Parties to this Term Sheet or the Agreement.

**CONFIDENTIAL**
**FOR MEDIATION PURPOSES ONLY**
Doc # DC/25608067v1

1. **Settlement Amount**.  In consideration of the releases and other consideration provided for herein, Clarendon shall pay in cash Sixteen Million and Five-Hundred Thousand U.S. Dollars ($16,500,000) (the "Settlement Amount") to the trust for Abuse Claims to be created under the Amended Plan (the "Trust") as provided herein.

2. **Payment and Release of the Settlement Amount**.  Clarendon shall pay Two Million, Eight Hundred and Seventy-One Thousand U.S. Dollars ($2,871,000)(17.4% of Settlement Amount) (the "Initial Payment") of the Settlement Amount to the Trust on, or as soon as reasonably practicable after, the date (the "Initial Payment Date") all conditions  to the effectiveness of the Amended Plan have been satisfied (including the entry of orders, in form and substance reasonably acceptable to the Parties, of the Bankruptcy and District Courts confirming, or affirming confirmation of, the Amended Plan (collectively, the "Confirmation Order"), which Confirmation Order shall not be subject to any stay and shall be in full force and effect) and the Amended Plan has gone effective (the "Effective Date").  On, or as soon as reasonably practicable after, the Effective Date, Clarendon shall pay the remaining 82.6% of the Settlement Amount (the "Additional Payment") into an escrow account (the "Escrow Account"), to be administered by an independent escrow agent acceptable to the Parties.  The Additional Payment (and all income earned thereon minus (a) the fees of the escrow agent, and (b) any taxes that are payable and other costs of the Escrow Account, which amounts in (a) and (b) shall be paid from the corpus of the Escrow Account (such income (or loss) minus such amounts, the "Net Income")) shall remain in the Escrow Account until the Confirmation Order becomes a Final Order, on which date the Additional Payment, plus any Net Income, shall be released from the Escrow Account to the Trust (the "Release Date"); *provided, however,* that, at its election, Clarendon may authorize the payment of the Additional Payment directly to the Trust on the Effective Date or may authorize the release of the Additional Payment (and any Net Income) from the Escrow Account to the Trust at any time thereafter before the Confirmation Order becomes Final and Non-Appealable, in which event the date on which Clarendon authorizes the payment or release of the Additional Payment to the Trust shall be the Release Date.  The Settlement Trust shall have investment discretion with respect to the Additional Payment while it is in the Escrow Account, subject to the investment protocols applicable under the term sheet located at Docket No. 6210-1 [Hartford term sheet]; *provided, however,* that the Trust will bear all risks associated with any such investment of the Additional Payment and that no loss or failure to achieve desired investment returns on the Additional Payment while it is in the Escrow Account shall require Clarendon to increase the Settlement Amount it is paying (or increase the amount of BSA's contribution to the Trust); *provided further, however*, that the Debtors, Reorganized BSA, the Local Councils, and Chartered Organizations shall have no liability or obligations to Clarendon or the Trust, the Trust shall have no liability or obligations to Clarendon, and Clarendon shall have no liability or obligations to the Trust (or any other Party), whatsoever for any loss or failure to achieve desired investment returns on the Additional Payment while it is in the Escrow Account.

3. **Protections to be Afforded to Clarendon**.  Effective as of the Release Date, Clarendon is to be designated Protected Parties for all purposes under the Amended Plan and granted all associated releases, injunctions (including the Settling Insurer Policy Injunction), and protections.  As set forth herein, Clarendon shall be granted such releases, injunctions,

2

**CONFIDENTIAL**
**FOR MEDIATION PURPOSES ONLY**

protections as are necessary to deliver finality with respect to all known and unknown policies they issued to BSA and Local Councils covering or potentially covering Claims or Causes of Action related to, arising from or in connection with Abuse Claims, which shall include the Clarendon Policies (as defined below) and any other insurance policy issued by Clarendon covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims; any actions, omissions or positions taken in connection with any Abuse Claims and/or the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date related to any Abuse Claims and/or policy issued by Clarendon concerning the Debtors or Scouting, including Clarendon's performance of its obligations thereunder whether for defense, settlement of claims or otherwise. Notwithstanding anything to the contrary, the BSA, Local Councils, and Chartered Organizations are not releasing, enjoining, or protecting any rights under (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from or in connection with Abuse Claims, any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise and (ii) Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from or in connection with any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise. The Agreement, the Amended Plan, and the Confirmation Order shall provide for a channeling injunction and full release of Clarendon with respect to all Claims or Causes of Action related to, arising from or in connection with Abuse Claims (which shall be conveyed to the Debtors and/or the Trust), including but not limited to the types of claims listed in the Insurance Actions definition in the Amended Plan and other Claims related to the insurance policies issued by Clarendon subject to the limitations stated in this Section 3 (as applicable to Postpetition Insurance Policies and Non-Abuse Insurance Policies) and Section 4. All injunctions, including the Settling Insurer Policy Injunction, shall remain in place between the Effective Date and the Release Date (and thereafter) such that any and all Claims and Causes of Action that are to be released or channeled through the Amended Plan and the Agreement shall be continuously enjoined pending their release. Clarendon shall be Protected Parties under the Amended Plan and have no fewer rights or protections than are afforded the Local Councils (other than the limited indemnity provided under Article IV.M of the Amended Plan) or any other person or entity by virtue of their status as a Protected Party with respect to any injunctions, releases or other protections provided thereto.

4. **Sale of Clarendon Policies**.  Prior to the Effective Date, the Local Councils and Clarendon shall consent to and provide for the assignment of the Local Council Insurance Policies issued by Clarendon, which include those identified on Exhibit A (the "<u>Clarendon Local Council Policies</u>"), to the Debtors' Estates. The Confirmation Order and Amended Plan shall provide

3

CONFIDENTIAL
FOR MEDIATION PURPOSES ONLY

that (a) on the Effective Date, and subject to the limitations below, in exchange for the Settlement Amount, the BSA Insurance Policies issued by Clarendon which include those identified on Exhibit B (the "BSA Clarendon Policies" and with the Clarendon Local Council Policies, the "Clarendon Policies")[4] and the Clarendon Local Council Policies shall be sold by Debtors and the Debtors' Estates to Clarendon free and clear of all liens, claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, of any person or entity, including those of the Debtors, the Local Councils, the Contributing Chartered Organizations, the Participating Chartered Organizations, Chartered Organizations, and their respective creditors and interest holders in the Clarendon Policies, pursuant to sections 363, 1123, and/or 1141 of the Bankruptcy Code (the "Sale"), (b) the assignment by Local Councils and the Sale shall exclude the Postpetition Insurance Policies and Non-Abuse Insurance Policies, (c) the Sale represents a sound exercise of the Debtors' business judgment, will yield a fair and reasonable price for the assets being sold, is in the best interests of the Debtors' Estates, and otherwise complies with section 363 of the Bankruptcy Code, (d) the proceeds of such Sale shall constitute property transferred to the Trust under the Amended Plan, (e) the Confirmation Order shall designate Clarendon as a good faith purchaser and shall provide that the Sale constitutes a purchase by Clarendon in good faith pursuant to section 363(m) of the Bankruptcy Code, rendering the provisions of section 363(m) applicable and affording Clarendon all protections thereunder, and (f) unless the Coalition and the FCR agree otherwise, no person or entity, including a person or entity that is co-liable with the Debtors for Direct Abuse Claims or Scouting-related Abuse, shall have any right to or an interest in the Settlement Amount that would directly or indirectly prevent the Settlement Amount from being paid to the Trust for the benefit of the holders of Direct Abuse Claims, *provided, however*, nothing herein shall prevent the Trust from using the Settlement Amount in accordance with Trust Agreement and the Trust Distribution Procedures.  The Agreement will contain a representation that Clarendon and BSA have each conducted a reasonable, good faith search of its respective records and that it has located no evidence of any BSA Insurance Policies issued by Clarendon other than the policies identified on Exhibit B or any Local Council Insurance Policies issued by Clarendon other than the policies identified on Exhibit A, and that based on such searches, neither Party believes that any additional policies or secondary evidence of such policies exists, and that to the extent any policy is subsequently identified that, had its existence been known as of the date hereof, would have been included on Exhibit A or Exhibit B, such policy shall be treated as if such policy were included on Exhibit A or B, as applicable.  Without limiting the foregoing, although the Parties do not believe that the Sale would constitute a violation of the automatic stay of any Chartered Organization that is a debtor in bankruptcy and that asserts an interest in one or more BSA Clarendon Policies, to the extent the Bankruptcy Court (or other court with jurisdiction) determines that the Sale would constitute such a violation, then the Parties shall seek a determination from the Bankruptcy Court that they may proceed with the Sale or relief from such stay to effectuate the Sale.

---

[4] For the avoidance of doubt, "Clarendon Policies" shall not include policies issued on or after January 1, 1987 by Maryland Casualty Company, American General Fire & Casualty Company, Zurich American Insurance Company, and their respective affiliates.

4

CONFIDENTIAL
FOR MEDIATION PURPOSES ONLY

5. **Trust Bound by Agreement**. Upon the Effective Date, the Trust shall be bound by all terms of this Term Sheet and the Agreement. Upon the Release Date, the Trust shall release Clarendon from all Causes of Action and Claims that the Trust holds relating to the Clarendon Policies and other policies issued by Clarendon covering Abuse Claims, provide the other releases contained in the Agreement and otherwise perform as required in the Agreement.

6. **Release by Clarendon**. Upon the Release Date, subject to the limitations below, Clarendon and its Representatives (as defined in the Amended Plan) shall release the Debtors, Reorganized BSA, Related Non-Debtor Entities, Local Councils, Limited Protected Parties, other Protected Parties (including the Contributing Chartered Organizations), other Settling Insurance Companies, the FCR, the Coalition, and the Trust and each of their Representatives from all Causes of Action and Claims related to, arising from, or in connection with, in whole or in part (a) Abuse Insurance Policies (which shall include all Clarendon Policies), (b) any other insurance policy issued by Clarendon covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims, (c) the types of claims listed in the Insurance Actions definition in the Amended Plan, including extra-contractual claims relating to the Clarendon Policies and including the Debtors' performance of their obligations thereunder whether for defense, settlement of claims, or otherwise, (d) the Debtors' Chapter 11 Cases and related proceedings, including the Debtors' Plan, the Amended Plan and any prior plans, any Claims that were or could have been asserted by Clarendon against the Debtors or by any of the Releasing Parties against Clarendon, in the Debtors' Chapter 11 Cases, and any actions, omissions, or positions taken in the Debtors' Chapter 11 Cases and related proceedings, (e) all Claims and Causes of Action alleging Abuse Claims against the Protected Parties (including such Claims and Causes of Action related to any Clarendon Policy), and (f) any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date related to any policy issued by Clarendon concerning the Debtors or Scouting, including Clarendon's performance of its obligations thereunder, whether for defense, settlement of claims, or otherwise. Nothing shall preclude Clarendon from enforcing the terms of the Agreement. Furthermore, nothing in this Term Sheet, the Agreement, or the Amended Plan shall constitute a release of any Claim by Clarendon or its Representatives of any rights related to, or Claims concerning, (i) Non-Abuse Insurance Policies, (ii) reinsurance, or (iii) Postpetition Insurance Policies.

7. **Release of Clarendon**. Upon the Release Date, the Debtors, Reorganized BSA, Related Non-Debtor Entities, Local Councils, Limited Protected Parties, other Protected Parties (including the Contributing Chartered Organizations), other Settling Insurance Companies, the FCR, the Coalition, the Trust, and all such Persons' or Entities' Representatives (the "Releasing Parties") shall release Clarendon and its Representatives from all Causes of Action and Claims related to, arising from, or in connection with, in whole or in part (a) Abuse Insurance Policies (which shall include all Clarendon Policies), (b) any other insurance policy issued by Clarendon covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims, (c) the types of claims listed in the Insurance Actions definition in the Amended Plan and other Claims related to Clarendon's performance of its obligations thereunder whether for defense, settlement of claims or otherwise, including extra-contractual claims relating to the Clarendon Policies (d) the Debtors' Chapter 11 Cases and related

CONFIDENTIAL
FOR MEDIATION PURPOSES ONLY

Doc # DC/25608067v1

proceedings, including the Debtors' Plan, the Amended Plan and any prior plans, any Claims that were or could have been asserted by Clarendon against the Debtors or any of the Releasing Parties, or by the Debtors or any of the Releasing Parties against Clarendon, in the Debtors' Chapter 11 Cases, and any actions, omissions or positions taken in the Debtors' Chapter 11 Cases and related proceedings, (e) all Claims and Causes of Action alleging Abuse Claims against the Protected Parties (including such Claims and Causes of Action related to any Clarendon Policy), and (f) any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date related to any policy issued by Clarendon concerning the Debtors or Scouting, including Clarendon's performance of its obligations thereunder, whether for defense, settlement of claims, or otherwise. If another Settling Insurance Company receives broader releases or protections concerning Causes of Action and Claims related to its policies (including its Abuse Insurance Policies) than those provided to Clarendon in the Agreement or Amended Plan, then Clarendon shall receive the benefit of those broader releases and protections automatically and without the necessity of further actions by the Parties. The Agreement will provide that the release of Clarendon shall not affect claims against other insurance companies, subject to the limitation that Clarendon shall not assert claims (other than potential reinsurance claims) against other Settling Insurance Companies. Nothing shall preclude the Releasing Parties from enforcing the terms of the Agreement and the Amended Plan. For the avoidance of doubt, the term "Releasing Parties" shall include (1) all of such parties' respective past, present, and future direct or indirect parents, subsidiaries, affiliates, and controlled entities, and each of their respective officers, directors, stockholders, members, partners, managers, employees, attorneys, agents, experts, consultants, volunteers, predecessors, successors, and assigns, each in their capacity as such (including any of the foregoing who is an alleged Perpetrator), and (2) to the extent of any party's right, power and authority to do so, any and all other persons or entities entitled to assert rights to coverage under any of the Clarendon Policies or any policy of insurance issued to or for the benefit of such releasing party related to Abuse Claims.[5] Nothing in this Term Sheet, the Agreement, or the Amended Plan shall constitute a release of any Claim by the Releasing Parties of any rights related to, or Claims concerning, (i) Non-Abuse Insurance Policies or (ii) Postpetition Insurance Policies, and shall not include any insurance policies for which Clarendon becomes responsible or acquire on or after the date the Term Sheet has been executed.[6]

8. **Chartered Organizations**. Clarendon shall (a) receive the same releases and the same protections of the channeling injunction as Century Indemnity Company with respect to Chartered Organizations and (b) provide the same releases as Century Indemnity Company with respect to Chartered Organizations, consistent with the Century Term Sheet, including the release by the Participating Chartered Organizations and Contributing Chartered

---

[5] For the purposes of clarity, the releases in this Section 7 do not include personal insurance policies issued directly to individuals who are releasing parties or to directors and officers liability policies issued in connection with their affiliations with entities other than BSA, the Local Councils or Chartered Organizations.

[6] The releases provided in this Term Sheet and the Agreement, including to Clarendon, shall be no broader and no narrower than those provided in the Century Term Sheet to the "Settling Insurers" as defined in the Century Term Sheet.

CONFIDENTIAL
FOR MEDIATION PURPOSES ONLY

Organizations for coverage for Abuse Claims under insurance policies issued directly by Clarendon to such Chartered Organizations. Clarendon shall be entitled to all the rights and benefits of the Century Term Sheet as implemented in the Amended Plan.

9. **Finality**. Subject to the other terms of this Term Sheet, and so long as this Term Sheet and the Agreement remain in full force and effect and/or are not terminated, the Parties agree that (a) the Settlement Amount is the total amount Clarendon will be obligated to pay under the Clarendon Policies, and (b) the Confirmation Order shall provide that on and after the Release Date and payment of the Settlement Amount, Clarendon shall be released from and shall not be obligated to make any additional payments to any Person (including, but not limited to, the BSA, Local Councils, any Chartered Organization and any entity actually or allegedly covered under insurance policies issued by Clarendon) for Abuse Claims, including those relating to or arising out of the Clarendon Policies and the other Claims and Causes of Action released hereunder, subject to the limitations in Section 3 (as applicable to Postpetition Insurance Policies and Non-Abuse Insurance Policies).

10. **Judgment Reduction**. In the event that any other insurer obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from Clarendon as a result of a Cause of Action for contribution, subrogation, indemnification or other similar Cause of Action against Clarendon for Clarendon's alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation for any Abuse Claim or for any Cause of Action released in this Agreement, the Trust shall voluntarily reduce its judgment or Cause of Action against, or settlement with, such other insurer(s) to the extent necessary to eliminate such contribution, subrogation, indemnification or other similar Cause of Action against Clarendon. To ensure that such a reduction is accomplished, Clarendon shall be entitled to assert this paragraph as a defense to any action against it for any such portion of the judgment or Cause of Action and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect Clarendon from any liability for the judgment or Cause of Action. To the extent any other insurer asserts a claim for contribution, subrogation, indemnification or other similar claim against Clarendon, Clarendon may assert any defense to such claim notwithstanding any of the releases contained herein.

11. **Findings and Orders**. The Amended Plan and the Confirmation Order shall state that the Findings and Orders are not binding on Clarendon to the extent that Clarendon is a Settling Insurance Company and the transactions contemplated herein, including the release of the Settlement Amount to the Trust, are fully consummated. The Amended Plan and Confirmation Order shall further provide that Clarendon's agreement herein not to object to the entry of said Findings and Orders in the Confirmation Order does not indicate Clarendon's support for said Findings and Orders, and no party shall argue that Clarendon agreed to or acquiesced in such Findings and Orders in any proceeding.

12. **Trust Distribution Procedures**. Subject to modification in a manner not inconsistent with this Term Sheet and the Agreement by the Debtors, the Coalition, and the FCR, the Trust Distribution Procedures may be in the form attached to the *Modified Fifth Amended Chapter*

7

**CONFIDENTIAL**
**FOR MEDIATION PURPOSES ONLY**

*11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* dated September 29, 2021, filed at Dkt. 6443, *provided* that Clarendon shall be included as a releasee, with respect to any Clarendon Policies, in any form of release attached to the Trust Distribution Procedures to the same extent that BSA, Local Councils and other Protected Parties are released, which release shall be consistent with the Century Term Sheet.  The Trust Distribution Procedures shall further provide that the Settlement Trustee shall require holders of Claims related to, arising from or in connection with Abuse Claims who receive payment from the Trust to release any Claim related to, arising from or in connection with Abuse Claims against  (a) Clarendon and (b) any insured or co-insured, under the Clarendon Policies or other policies issued by Clarendon covering or allegedly covering Claims or Causes of Action for Abuse claims, solely to the extent of and scope of any remaining coverage rights (if any) thereunder.  Clarendon shall not object to the Trust Distribution Procedures but may add a statement in the Amended Plan or the Disclosure Statement that Clarendon is a Settling Insurance Company and, as a result, takes no position on the Trust Distribution Procedures. Clarendon shall not object to the selection of the Settlement Trustee as provided in the Amended Plan and Settlement Trust Agreement.  Clarendon shall not participate in or otherwise interfere with the administration of the Trust.

13. **Objections to and the Amended Plan**.  Clarendon shall not object to the Amended Plan, the Settlement Trust Agreement, or the Trust Distribution Procedures (and shall withdraw any pending objections) so long as Clarendon is included as a Protected Party in the Amended Plan and the Amended Plan are otherwise consistent with the terms of this Term Sheet and the Agreement.

14. **Discovery**.  Upon the execution of the Term Sheet, all Parties shall as soon as practicable withdraw any pending discovery requests directed at each other and shall not seek additional discovery from each other.  Clarendon shall as soon as practicable withdraw any pending discovery requests directed at any holder of an Abuse Claim, representatives of such holders, funders, vendors utilized by representatives of such holders, the Coalition (including law firms and attorneys associated therewith), and the FCR.  Clarendon shall not seek or direct any additional discovery from such parties, the BSA, or the Local Councils, or any other party in interest in the Chapter 11 Cases or any proceedings related to the Chapter 11 Cases. Notwithstanding the foregoing, Clarendon shall cooperate and comply with any information requests, including prior BSA-related settlement and verdict information, from the BSA, the Coalition, and the FCR to the extent such information is not protected from disclosure and reasonably necessary in support of the confirmation of the Amended Plan; *provided*, *however*, that if the results of this process do not resolve and satisfy said information requests, the BSA, the Coalition, or the FCR shall have the right to submit the dispute to one or both of Mediators Gallagher and Carey, and the Parties agree to be bound by the Mediator's/Mediators' decision regarding such dispute.

15. **Public Statements**.  The Parties and State Court Counsel shall cooperate with each other to coordinate on timing and substance of public statements regarding settlement, including press releases, court filings and in-court statements.  Clarendon shall make no statements about holders of Abuse Claims or any representative thereof; *provided*, *however*, that Clarendon may

8

make statements to protect its rights in the Chapter 11 Cases, including statements in response to objections or statements by holders of Abuse Claims and its representatives concerning Clarendon.

16. **Termination by Clarendon**.  The Agreement shall contain the same termination provisions as those set forth in the TCJC Settlement Agreement.

17. **Termination Event by the Debtors, the Coalition, and the FCR**.  The Agreement shall contain a termination event that shall permit the Debtors, the Coalition, or the FCR to terminate the Agreement if Class 8 (Direct Abuse Claims) (as currently constituted or as it may be reconstituted per order of the Bankruptcy Court) votes to not accept the Amended Plan under section 1126 of the Bankruptcy Code and as a result the Amended Plan is withdrawn.  Subject to the foregoing sentence, pending entry of the Confirmation Order and the occurrence of the Release Date, the Debtors, the Coalition, and the FCR will not take any action inconsistent with this Term Sheet and, at all times, will (a) use their best efforts to secure prompt entry of the Confirmation Order consistent with this Term Sheet, including the provisions constituting the approval of all of the terms and conditions hereof, and the Agreement, and (b) defend this Term Sheet and the Agreement.

18. **Fiduciary Out by the Debtors and the FCR**.  Notwithstanding anything in this Term Sheet and Agreement to the contrary, no term or condition of this Term Sheet and Agreement shall require BSA or the FCR to take or refrain from taking any action that it determines in would be inconsistent with its fiduciary duties under applicable law, and further, in the event that either the FCR or the Debtors determine that in the proper exercise of their respective fiduciary duties under applicable law they cannot proceed with this Term Sheet or the Agreement, the Term Sheet or Agreement may be terminated at any time prior to the entry of a Final Order confirming the Amended Plan as to that party, *provided, however,* that the Debtors and the FCR each understands that the TCC is not a party to this Term Sheet and that the TCC and claimants represented by various plaintiff firms may object to the Agreement and the Debtors and the FCR acknowledge and represent that their entry into this Term Sheet and the Agreement is consistent with their fiduciary duties as of the effective date of the Term Sheet, *provided, further* that following the entry of the Confirmation Order by the Bankruptcy Court nothing herein shall exempt the Debtors or the FCR from the doctrines of finality, repose, or otherwise applicable doctrines of *res judicata*, collateral estoppel, limitations on appellate jurisdiction or applicable deadlines pursuant to the Bankruptcy Code, Bankruptcy Rules, court orders and local rules or any similar doctrine(s); *provided further* that if the FCR exercises its fiduciary right to terminate the Agreement, such termination shall be with respect to the FCR only and not otherwise affect the Agreement or the other Parties' rights and obligations thereunder.  Each of BSA and the FCR believe that, as of the date hereof, entering into this Term Sheet is an appropriate exercise of its fiduciary duty.

19. **Effect of Reversal of Confirmation Order Following the Effective Date.**  In the event that the Confirmation Order is reversed or vacated on appeal following the Effective Date, such that the Release Date does not occur (a "Reversal"), the Parties and State Court Counsel agree that Clarendon shall be entitled to a credit against any liability Clarendon may have under any

9

Abuse Insurance Policies issued to BSA or any Local Council, which credit shall be equal to the amount of the Initial Payment plus, if Clarendon has authorized the payment or release of the Additional Payment to the Trust, the amount of the Additional Payment (the "Credit"); *provided, however,* that if Clarendon has not authorized the payment or release of the Additional Payment, then the Additional Payment and all Net Income accrued thereon in the Escrow Account (or, if there is a loss as a result of investment of the Additional Payment, then the funds remaining in the Escrow Account) shall be released from the Escrow Account to Clarendon promptly following the Reversal (or any exercise of a Fiduciary Out by BSA). The provisions of this Section 19 shall survive any Reversal, any exercise of any Fiduciary Out, and any termination of the Agreement. Nothing in this Section or elsewhere in this Term Sheet or the Agreement shall bar any of the Parties or State Court Counsel from arguing that any appeal from the Confirmation Order should be dismissed on grounds of statutory or equitable mootness or otherwise.

20. **Other Settlements**. To the extent that the Debtors or any other Person formed to assume the Debtors' liability for Abuse Claims, including the Settlement Trust, has settled or hereafter settles Claims arising out of Claims alleging Abuse Claims with any other Insurance Company, Chartered Organization or other Person, the Debtors or other Person formed to assume the Debtors' liability for Abuse Claims and Claims alleging Abuse Claims, shall obtain a waiver of that other Insurance Company, Chartered Organization or other Person's Claims against Clarendon based upon, arising out of or in any way attributable to such Claims and/or their settlement and they shall further provide the releases set forth in Section 7 (and the assignment and releases in Sections 7 and 8 in the case of a Chartered Organization). Such waiver may be accomplished by an assignment of such Claims to the Settlement Trust, whereupon such Claims will be released.

21. **State Court Counsel**. Each State Court Counsel represents and warrants to the Parties that, as of the date hereof, it represents the number of holders of Direct Abuse Claims who filed timely Direct Abuse Claims in the Chapter 11 Cases that is listed next to its name on Schedule 1 hereto.

22. **Abuse Claims Under Policies Issued to Chartered Organizations**. The release by the Participating Chartered Organizations and Contributing Chartered Organizations of the right to seek coverage for Abuse Claims under insurance policies issued directly by Clarendon to such Chartered Organizations[7] does not include the following:

(a) Such Chartered Organizations are not barred from tendering claims that are not Abuse Claims to such insurance policies, with all parties reserving their rights as to whether such insurance policies applies and to what extent;

(b) Such Chartered Organizations are not barred from tendering Mixed Claims to such insurance policies, with all parties reserving their rights as to whether such insurance policies apply and to what extent. All Parties agree to cooperate to enforce the Post-

---

[7] This does not include policies issued by Clarendon to the BSA or the Local Councils.

CONFIDENTIAL
FOR MEDIATION PURPOSES ONLY

Doc # DC/25608067v1

Confirmation Interim Injunction (as set forth in Section 14 of the Century Term Sheet) and the Channeling Injunction to eliminate all or a portion of the Mixed Claims against the applicable Chartered Organizations;

(c) Such Chartered Organizations may seek coverage and tender claims under such insurance policies pending determination by a court of competent jurisdiction as to whether a Claim is a channeled Abuse Claim, subject to all parties' contractual rights;

(d) To the extent a court determines that a claim against such Chartered Organizations is not an Abuse Claim or is not subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Amended Plan, such Chartered Organizations may seek defense and indemnification of that claim from such insurance policies, subject to all parties' contractual rights;

(e) To the extent a court determines that a claim against such Chartered Organizations is subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Amended Plan, Clarendon shall have no further obligations with respect to such claim; and

(f) The Settlement Trust shall cooperate with any ongoing efforts by such Chartered Organizations and/or Clarendon to establish that the Post-Confirmation Interim Injunction and the Channeling Injunction apply.

23. **Plan**.  The Plan has been amended to incorporate the Century Term Sheet, the material terms of which have been incorporated herein with respect to Settling Insurance Companies.  The protections given to Clarendon, and to their respective Affiliates and Representatives, as Protected Parties shall not be less than that afforded to any other Protected Parties under (i) the Amended Plan (other than the limited indemnity provided to the Local Councils under the Amended Plan) or (ii) any other plan unless the Agreement has been validly terminated prior to the filing of such plan.  The Amended Plan shall be subject to the inclusion of the Agreement as a condition to entry of the Confirmation Order and the occurrence of the Effective Date. The inclusion of the Agreement in the Amended Plan shall not be waivable as a condition to entry of the Confirmation Order or the occurrence of the Effective Date absent the prior written consent of Clarendon.

*[Remainder of Page Intentionally Left Blank]*

11

CONFIDENTIAL
FOR MEDIATION PURPOSES ONLY

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**

By: _Roger C. Mosby_

Name: _Roger C. Mosby_

Title: _President & CEO_

Date: _12-29-2021_

**Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company)**

By: _____

Name: _____

Title: _____

Date: _____

**River Thames Insurance Company Limited (as successor in interest to UnionAmerica Insurance Company Limited)**

By: _____

Name: _____

Title: _____

Date: _____

**CONFIDENTIAL**
**FOR MEDIATION PURPOSES ONLY**
Doc #  DC/25608067v1

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**

By: _____ .

Name: _____ .

Title: _____ .

Date: _____ .


**Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company)**

By: _____

Name:     Robert Redpath

Title:     Senior Vice President

Date:     12/29/2021


**River Thames Insurance Company Limited (as successor in interest to UnionAmerica Insurance Company Limited)**

By: _____

Name: _____

Title: _____

Date: _____

**CONFIDENTIAL**
**FOR MEDIATION PURPOSES ONLY**
Doc #  DC/25608067v1

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**

By: _____ .

Name: _____ .

Title: _____ .

Date: _____ .

**Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company)**

By: _____

Name: _____

Title: _____

Date: _____

**River Thames Insurance Company Limited (as successor in interest to UnionAmerica Insurance Company Limited)**

By: _____Truman_____

Name: _____Darren Truman_____

Title: _____Director_____

Date: _____29th December 2021_____

**CONFIDENTIAL**
**FOR MEDIATION PURPOSES ONLY**
Doc # DC/25608067v1

**Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company)**

By: _____

Name:   James B. Dolan, Jr. _____

         Vice President – Sr. Litig. and Coverage Counsel

Title:   Enstar (US) Inc., authorized Claims Administrator for Zurich American Ins. Co.

Date:   29 December 2021 _____

## FUTURE CLAIMANTS' REPRESENTATIVE

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

## COALITION OF ABUSED SCOUTS FOR JUSTICE

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

## AD HOC COMMITTEE OF LOCAL COUNCILS

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

**Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company)**

By: _____

Name: _____

Title: _____

Date: _____


## FUTURE CLAIMANTS' REPRESENTATIVE

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: ___ 12/30/21 _____


## COALITION OF ABUSED SCOUTS FOR JUSTICE

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


## AD HOC COMMITTEE OF LOCAL COUNCILS

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

Doc #  DC/25608067v1

**Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company)**

By: _____

Name: _____

Title: _____

Date: _____


## FUTURE CLAIMANTS' REPRESENTATIVE

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


## COALITION OF ABUSED SCOUTS FOR JUSTICE

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____12/30/2021_____


## AD HOC COMMITTEE OF LOCAL COUNCILS

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

2

**Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company)**

By: _____

Name: _____

Title: _____

Date: _____


## FUTURE CLAIMANTS' REPRESENTATIVE

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


## COALITION OF ABUSED SCOUTS FOR JUSTICE

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


## AD HOC COMMITTEE OF LOCAL COUNCILS

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

2

**Schedule 1**

**State Court Counsel**

| FIRM | NOTICE ADDRESS | CLAIMS |
|------|----------------|--------|
| Slater Slater Schulman LLP | Attn: Adam P. Slater (aslater@sssfirm.com)<br>488 Madison Avenue<br>20th Floor<br>New York, NY 10022 | 14170 |
| ASK LLP | Attn: Joseph Steinfeld (jsteinfeld@askllp.com)<br>151 West 46th Street, 4th Floor<br>New York, NY 10036 | 3277 |
| Andrews & Thornton, AAL, ALC | Andrews & Thornton<br>Attn: Anne Andrews (aa@andrewsthornton.com)<br>4701 Von Karman Ave., Suite 300<br>Newport Beach, CA 92660 | 3009 |
| Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. | Attn: Stewart J. Eisenberg (stewart@erlegal.com)<br>1634 Spruce Street<br>Philadelphia, PA 19103 | 16869 |
| Junell & Associates PLLC | Attn: Deborah Levy (dlevy@junell-law.com)<br>3737 Buffalo Speedway Ste. 1850<br>Houston, TX 77098 | 2918 |
| Reich & Binstock LLP | Attn: Dennis Reich (dreich@reichandbinstock.com)<br>4265 San Felipe St. #1000<br>Houston, TX 77027 | 336 |
| Krause & Kinsman Law Firm | Attn: Adam W. Krause (adam@krauseandkinsman.com)<br>4717 Grand Avenue #300<br>Kansas City, MO 64112 | 5981 |
| Bailey Cowan Heckaman PLLC | Attn: Aaron Heckaman (aheckaman@bchlaw.com)<br>5555 San Felipe St. Ste. 900<br>Houston, TX 77056 | 1026 |
| Jason J. Joy & Associates, PLLC | Attn: Jason Joy (jason@jasonjoylaw.com)<br>909 Texas St, Ste 1801 | 690 |

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
|  | Houston, TX 770022 |  |
| Motley Rice LLC | Attn: Daniel Lapinski (dlapinski@motleyrice.com) 210 Lake Drive East Suite 101 Cherry Hill, NJ 08002 | 343 |
| Weller Green Toups & Terrell LLP | Attn: Mitchell Toups (matoups@wgttlaw.com) 2615 Calder Ave. #400 Beaumont, TX 77702 | 974 |
| Colter Legal PLLC | Attn: John Harnishfeger (john.harnishfeger@colterlegal.com) 1717 K St. NW Suite 900 Washington D.C. 20006 | 162 |
| Christina Pendleton & Associates, PLLC | Attn: Staesha Rath (sr@cpenlaw.com) 1506 Staples Mill Rd. Suite 101 Richmond, VA 23230 | 309 |
| Forman Law Offices, P.A. | Attn: Theodore Forman (ted@formanlawoffices.com) 238 NE 1st Ave. Delray Beach, FL 33444 | 125 |
| Danziger & De Llano LLP | Attn: Rod de Llano (rod@dandell.com) 440 Louisiana St. Suite 1212 Houston, TX 77002 | 1707 |
| Swenson & Shelley | Attn: Kevin Swenson (kevin@swensonshelley.com) 107 South 1470 East, Ste. 201 St. George, UT 84790 | 175 |
| Cohen Hirsch LP (formerly Brooke F. Cohen Law, Hirsch Law Firm) | Attn: Brooke F. Cohen (brookefcohenlaw@gmail.com) Attn: Andrea Hirsch (andrea@thehirschlawfirm.com) 4318 Glenwick Lane Dallas, TX 75205 | 64 |
| Damon J. Baldone PLC | Attn: Damon J. Baldone (damon@baldonelaw.com) 162 New Orleans Blvd. | 471 |

Doc # DC/25608067v1

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| | Houma LA 70364 | |
| Cutter Law, P.C. | Attn: Brooks Cutter (bcutter@cutterlaw.com) 4179 Piedmont Ave. 3rd Fl. Oakland, CA 94611 | 358 |
| Linville Johnson & Pahlke Law Group | Attn: Robert Pahlke (rgp@pahlkelawgroup.com) 2425 Circle Dr., Ste. 200 Scottsbluff NE 69361 | 71 |
| Porter & Malouf P.A. | Attn: Timothy Porter (tporter@portermalouf.com) 825 Ridgewood Rd. Ridgeland, MS 39157 | 86 |
| The Moody Law Firm | Attn: Will Moody Jr. (will@moodyrrlaw.com) 500 Crawford St., Ste. 200 Portsmouth, VA 23704 | 677 |
| Levin Papantonio Thomas Mitchell Rafferty & Procter P.A. | Attn: Cameron Stephenson (cstephenson@levinlaw.com) 316 South Baylen St. Pensacola, FL 32502 | 44 |
| Marc J Bern & Partners LLP | Attn: Joseph Cappelli (jcappelli@bernllp.com) 60 East 42nd St. Ste. 950 New York, NY 10165 | 5893 |

Doc #  DC/25608067v1

**Exhibit A**

**Known and Alleged Local Council Insurance Policies Issued by Clarendon**

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Maryland Casualty Company | 05-829567 | 1/1/1968 – 1/1/1969 | Unknown | Alamo Area (583): Alamo Area (583) |
| Maryland Casualty Company | Unknown | 1/1/1970 – 1/1/1971 | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | Unknown | 1/1/1971 – 1/1/1972 | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | Unknown | 1/1/1972 – 1/1/1973 | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | Unknown | 1/1//1973 – 1/1/1974 | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | Unknown | 1/1/1974 – 1/1/1975 | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | Unknown | 1/1/1974 – 1/1/1975 | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | 3830-72-95 | 7/1/1975 – 7/1/1976 | Columbia Pacific Council, Boy Scouts of America | Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) |

**CONFIDENTIAL**
**FOR MEDIATION PURPOSES ONLY**
Doc # DC/25608067v1

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Maryland Casualty Company | 3830-72-95 | 7/1/1976 – 7/1/1977 | Columbia Pacific Council, Boy Scouts of America | Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) |
| Maryland Casualty Company | 3830-72-95 | 7/1/1977 – 7/1/1978 | Columbia Pacific Council, Boy Scouts of America | Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) |
| Maryland Casualty Company | 96-224611 | 1/1/1963 – 1/1/1964 | Unknown | Chickasaw (558): Chickasaw 1916- (558) |
| Maryland Casualty Company | Unknown | 1/1/1964 – 1/1/1965 | Unknown | Chickasaw (558): Chickasaw 1916- (558) |
| Maryland Casualty Company | Unknown | 1/1/1965 – 8/1/1965 | Unknown | Chickasaw (558): Chickasaw 1916- (558) |
| American General Fire & Casualty Company | Unknown | 1/1/1975 – 1/1/1976 | Unknown | Circle Ten (571): Circle Ten 1913- (571) |
| Maryland Casualty Company | Unknown | 1/1/1974 – 1/1/1975 | Unknown | Mason-Dixon (221): Mason-Dixon 1956- (221) |
| Maryland Casualty Company | Unknown | 1/1/1975 – 1/1/1976 | Unknown | Mason-Dixon (221): Mason-Dixon 1956- (221) |

2

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Maryland Casualty Company | Unknown | 1/1/1976 – 1/1/1977 | Unknown | Mason-Dixon (221): Mason-Dixon 1956-(221) |
| Maryland Casualty Company | Unknown | 7/24/1977 – 7/24/1978 | Unknown | Mason-Dixon (221): Mason-Dixon 1956-(221) |
| Maryland Casualty Company | Unknown | 7/24/1978 – 7/24/1979 | Unknown | Mason-Dixon (221): Mason-Dixon 1956-(221) |
| Maryland Casualty Company | Unknown | 7/24/1979 – 7/24/1980 | Unknown | Mason-Dixon (221): Mason-Dixon 1956-(221) |
| Maryland Casualty Company | 31-086767 | 7/7/1957 – 7/7/1958 | Unknown | Northeast Iowa (178): Northeast Iowa (178) |
| Maryland Casualty Company | Unknown | 7/1/1958 – 7/1/1959 | Unknown | Northeast Iowa (178): Northeast Iowa (178) |
| Maryland Casualty Company | Unknown | 3/1/1977 – 1/1/1978 | Unknown | Washington Crossing (777): Bucks County 1927-2015 (777) |
| Zurich Insurance Company | 80-39-959 | 7/16/1960 – 7/19/1961 | Unknown | Western Los Angeles County (051): San Fernando Valley 1923-1972 (050) |

**Exhibit B**

**Known and Alleged BSA Insurance Policies Issued by Clarendon**

| Writing Company | Policy No. | Policy Period |
|---|---|---|
| Clarendon America Insurance Company | XLX 39306224 | 3/1/2003 – 3/1/2004 |
| Clarendon America Insurance Company | XLX 00310351 | 3/1/2004 – 3/1/2005 |
| Clarendon America Insurance Company | XLX 00311014 | 3/1/2005 – 3/1/2006 |

UnionAmerica Insurance Company, Ltd.
Policy No. 151351/01/76
Participation:  1.439640%
Period:  9/17/1976 – 9/17/1977

UnionAmerica Insurance Company, Ltd.
Policy No. 151352/01/76
Participation: 5.771890%
Period:  9/17/1976 – 9/17/1977

UnionAmerica Insurance Company, Ltd.
Policy No. 833938/01/76
Participation: 3.808000%
Period:  9/17/1976 – 9/17/1977

UnionAmerica Insurance Company, Ltd.
Policy No. 833939/01/76
Participation: 3.808000%
Period:  9/17/1976 – 9/17/1977

Note that for the UnionAmerica coverage, the percentages shown are UnionAmerica's percentage participation in $5 million in aggregate limits, excess of $10 million in underlying insurance.  As regards UnionAmerica, the sale referenced in section 3 of the term sheet refers only to Union America's participation in the policies listed above.

**CONFIDENTIAL**
**FOR MEDIATION PURPOSES ONLY**
Doc #  DC/25608067v1