December 21, 2021

Honorable Laura Selber Silverstein
Justice, BSA Bankruptcy Case
824 Market St
6th Floor
Wilmington DE 19801

FILED

2022 JAN -5  AM 11: 41

CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

Re: Claim # ▮▮▮▮▮▮▮▮

Your Honor:

Please accept my apologies for another letter. I wasn't planning to write again (copy of my previous letter is enclosed as well), but I completed my ballot and there were some very significant issues with the ballot that needed to be brought to your attention. I had even considered waiting to write until after the vote results were revealed, but then an email from Eisenberg Rothweiler (herein referred to as "ER") and the Coalition was sent out besmirching the other members of the Abused in Scouting group (herein referred to as "AIS", including Tim Kosnoff, Andrew Van Arsdale, and AVA Law Group) and the Tort Claimants Committee (herein referred to as "TCC"). My apologies also on the length, but I want to be thorough in explaining my reasoning with what has transpired and attempt to avoid any omission of facts that seem to be starting to be the norm with the parties negotiating via the mediation process. Before anyone involved in the case begins to point any fingers, the thoughts and opinions expressed here are my own and only my own. I consulted my attorneys at AIS to verify certain pieces of information, but they did not know that I was writing a letter to the court or to the PA State Bar Association, who will be receiving a copy of this letter and all of the referenced documents. As I am sure it has been for Your Honor and the court, this case has been extremely difficult by dredging up old memories that most of us have attempted to put behind us. It has been exacerbated by, for lack of a better term, the games occurring with the mediation process, as I will discuss later and for which Your Honor has been forced to remedy. While I can speak for my fellow survivors, I understand that the mediation process is a bunch of give and take. The BSA, their insurers, and their charter organizations, in this case, want to emerge from this bankruptcy addressing the past mistakes that have occurred in an adequate fashion while attempting to maintain their organization and having enough resources to continue to operate. However, it is in the back and forth and the ever-increasing amounts from their first offer that makes this troubling because they appear to have entered mediation without good faith. Additionally, the horrible conflict of interest situation that they created with their recommendation, supported by ER and the Coalition, for naming one of the mediators as the special reviewer assisting the trustee in examining cases for compensation once the compensation fund and the reorganization plan is approved by the court. This has been compounded by the barrage of solicitations for a YES vote by ER and the Coalition.

As you may remember from my previous letter, ER was barraging each survivor with AIS with daily emails. This carried over to the online ballot. When a survivor logs into the ballot and their credentials are verified, they are taken to an instruction page. On that same page, is the very same email pushing for a YES vote, as well as the link to their letter containing their reasons for voting YES. I have again included copies from 2 days of the emails. I was unable to print off the instructions page from the ballot. Including a solicitation for a YES vote, while excluding all other positions, is, in my opinion, unprofessional and at the very least unethical. It would be like going to vote at your local polling place to vote for president and the people

handing out ballots wearing shirts promoting one of the candidates. It's illegal for an actual election and it should not be allowed to happen in these circumstances. It appears to me that ER was responsible and one of the main parties in getting the balloting platform set-up since they were able to insert their shameless promotion for a YES vote onto the ballot online.

The second issue with the ballot was that the wording on the online ballot concerning the Expedited Distribution Election. When I was completing my ballot, I noticed that the wording regarding the expedited distribution. On the electronic ballot, it had wording suggesting that this was the final and only distribution a survivor would receive. I had planned to go back into the ballot, as it had stated that you could go back into the ballot to only review your choices (read-only). However, the balloting platform only allows you to see a summary of the choices you made. The wording seemed different versus the sample annotated ballot posted on the TCC website. I would ask that the court please order a copy of the ballot as posted online to be compared to the hard copy ballot.

I consulted with Adam, an associate attorney at AVA Law Group following the submission of my completed ballot. Following the submission of my ballot, I received a phone call from attorney Todd Schoenhaus at ER. He did not sound very happy and sounded irritated. It was a few days after my ballot submission and a few days after I figured that my letter would have been received and copies been distributed or posted online by the court. At first, I thought they may be calling to discuss my letter about the issues from my letter. However, Adam told me that several of AVA's clients had reported that ER attorneys had contacted the survivors who voted to discuss their vote and see if they could convince them to change their vote by requesting a new ballot and having the old spoiled. I never called Mr. Schoehaus back, but kept his voicemail if it is needed at any point. That call came on 1 December at 1704.

Now we come to the biggest problem that has come about: the ER email dated 15 December, 2021. The email has the usual flash and fluff, but then proceeds to besmirch others and only tells a part of the full story. Please allow me to discuss each point.

First, the beginning of the email claims that ER has been in the room for every negotiating session. I would like to know who else has been there, as I have been told the other members of AIS and the TCC were excluded for most of these sessions. It is very difficult to claim entering mediation in good faith of your co-counsel has not been included in those sessions and the clients that they represent are not included in them, especially if those clients disagree with the assessments made by ER and the Coalition. The TCC especially should never have been excluded from ANY negotiations, as they are the primary group representing the survivors as a whole. Furthermore, ER claims that they are part of over 50 law firms representing 68,000 survivors who support a YES vote. Is this because they control the voting of their clients? Do they have evidence that supports this claim? I find it extremely hard to believe that all 68,000 of the clients they claim to represent would all be in support of this plan, unless the attorneys have been granted the power to submit votes for those clients, in which case this entire voting process is pointless, as the outcome will be known even before ballots go out.

Second, the Hartford Settlement (#2 in the ER email). The financial analysis conducted shows that the potential liability for Hartford Insurance could be $8 billion. I certainly know that I and believe that others are not trying to run anyone out of business. However, how would any such grievous situation be allowed to settle for less than 10% of analyzed liability?    Additionally, ER and the Coalition go after the TCC and the other members of AIS. They say that the TCC rejected the offer of $787 million and could not increase

the amount any higher. They further go on to discussed how Mr Kosnoff used inaccurate numbers and did not offer any other suggestion. First, it is difficult to offer any alternative or negotiate when you are shut out of the mediation negotiations. Mediation is supposed to require that both sides enter into the negotiations in good faith. However, ER and the Coalition have effectively shut out the other members of AIS and the TCC from those meetings. Obviously, ER and the Coalition would not be amenable to introducing any other plan since it is not their own. Ass for the old numbers issue, of course his letter is using old numbers! The letter is dated 18 October, 2021. By ER's own admission, the newest updates came very recently. Can ER or the Coalition show that any of the other parties have sent out another letter since those new numbers were revealed that were not correct? The fact that ER and the Coalition shut out the other members of AIS and the TCC in addition to falsely accusing them of spreading disinformation (when the information for the date of the releases were correct) shows a misrepresentation that is aimed at gaining them votes from the BSA survivors. The last comment in that section discusses the Trust Distribution Protocol (herein referred to as "TDP). I will reserve issues with that until later, as it would be more appropriate to discuss individually.

Third, the Century Settlement (#3 in the ER email). As mentioned previously, ER revealed in its own email that the Century settlement had just occurred. Enough was said about the timing and the inappropriate comments against TCC and Mr Kosnoff. There are many issues with the proposed Century settlement. First, the insurance policies covered by Century relate to the highest number of claims. If the possible total liability for Hartford resides in the neighborhood of $8 billion, then Century's maximum liability would be much higher. For purposes of discussion, let's say that the maximum liability from policies covered by Century is $10 billion (I tried to ascertain the possible maximum liability for Century, but those analyses were much more convoluted than expected and I'll admit I was lost trying to follow them). If the max is $10 billion, then the $800 million preposed settlement is only about 8% of their maximum liability. If a jury were to be considering this, is there any jury anywhere that would believe that 8% of the policy is fair or equitable? Again, we are not here to destroy a company, only to seek justice. There is no magic number that will erase what has happened and make each survivor whole again. However, 8% would be considered ridiculous by any reasonable person. Also with the Century financials, where is the $800 million coming from? At the beginning of this process, Century reported that they only had $100 million to pay claims. However, they now are offering $800 million? Century is a subsidiary company of Chubb, an international property liability company with upwards of $375 billion in assets. Is Chubb planning now to back-up its subsidiary company with financial assistance? If so, why wasn't this shared with ALL of the participants in the proceedings? Again, the other members of AIS and the TCC were shut out of these negotiations, so they were not privy to this information. With the initial analysis, Century claimed only $100 million for claim payments. Entering into the mediation process, by claiming only $100 million available means that they entered into these negotiations NOT in good faith if they knew their parent company would provide financial backing as the process dragged on. One of the bigger questions is when ER and the Coalition discovered this fact and if they questioned where the money was coming from, was there more money involved for negotiation, or did they simply accept the amount in order to arrive at a settlement? We don't know because that information has been withheld by ER and the Coalition. Lastly, with regards to Century, I was not able to find anything in the plan that allowed for additions to the settlement plan once the plan went to a vote. Did I miss that? If the plan being voted on does not have a provision for including additional settlements in the plan, is the vote even able to be certified? I would submit that the late announcement of another increase in the trust will not be able to be voted upon by those who have already voted. If the survivors had ALL of the information regarding the new settlement (total potential exposure, where the money is coming from, etc.), just as we should have had with the earlier settlements (such as Hartford), some

people may have voted differently.  Having worked in the medical field, we are required to fully disclose every piece of information to a patient regarding a procedure or a treatment, no matter how small.  In this case, there are huge pieces of information missing that could matter to the survivors, such as potential max liability, the percentage of the max liability that is the settlement, who was in the negotiations, etc.).

Fourth, the Chartered Organizations (#4 in the ER email).  This section deals primarily with the settlement with the LDS Church.  ER and the Coalition tout the $250 million as part of the entire settlement trust.  However, as Paul Harvey would have said, Now you need to know the rest of the story.  The settlement with the LDS Church is $250 million, BUT that money may only be used for compensating survivors of abuse that involved a member of the LDS Church or a troop chartered by the LDS Church.  As such, most of the survivors will NOT be eligible for consideration in receiving any of these funds.  Yet, the amount is touted to be a part of the total compensation trust.  Once again, only a half-truth disseminated by ER and the Coalition.  Once again, some people's votes may have changed if all the information had been disclosed as required by professional standards and ethics.

Fifth, ER and the Coalition, in conjunction with Century, have engaged in a smear campaign against Mr. Kosnoff.  His letter urging a NO vote dated 18 October 2021 (copy enclosed)m was claimed to be incorrect and full of half-truths and incorrect information.  However, I have reviewed his letter, the entire reorganization plan, and all of the financial analyses.  Perhaps the only thing I found incorrect may have been when he stated that the motivation of ER and the Coalition is greed (not a good idea to use that unless you have evidence of them telling someone that they want a quick payday).  However, that is his opinion.  Since that occurred, Century, ER, and the Coalition had him sit for a deposition to assist the court in determining if he was spreading incorrect information.  I arrived at the same conclusions as those of Mr. Kosnoff before his letter was sent out via email.  Having spoken with other survivors, they have also reached the same conclusions or had questions raised by some of the same issues discussed here and previously that they wanted clarified.

Sixth and last: the process of mediation.  Mediation is supposed to be entered into in good faith by all of the parties.  As has been discussed, some of the parties have attempted to shield the true amount of their assets available for negotiation and some of them have been shut out of the negotiation sessions.  Of the three mediators appointed by the court, one still remains to handle the remaining negotiations.  One resigned several weeks ago, pointing out that there were too numerous philosophies in play that could not be sufficiently resolved.  What does this mean?  Could this be that the representatives of the survivors have too many differences on their side?  Or is it that ER and the Coalition were working for their best interests with BSA in order to reach a quick settlement?  Those questions can only be answered by the former mediator.  The other mediator had to be removed by Your Honor for a serious conflict of interest.  The fact that BSA had named that mediator as the special claim reviewer to assist the Trustee for the Settlement Trust Fund.  The fact that the court had to act without as much as a peep from ER and the Coalition once they had seen the filing in question seems to suggest that they supported the naming of former judge Kevin Carey.  If they did in fact support this appointment, would the settlement amounts to survivors represented by ER and the Coalition be influenced to be a little higher than the claims of those attorneys who opposed the settlement or the members of the TCC?  It is a valid question, but now moot since Your Honor made the move to remove Judge Carey.  However, it raises the question of whether or not BSA, the insurance companies, ER, and the Coalition have begun the process of mediation in good faith?  I would submit that the answer is NO, especially when other attorneys, such as the other members of AIS, and the TCC members have been shut out of the negotiation sessions.  Additionally, the fact that there is only mediator left of the original 3,

I would like to ask Your Honor to please consider abandoning the mediation process or, especially if the reorganization plan is voted down, select 3 new mediators who are completely independent of the case and selected by the court to help guide the process.

Your Honor, again, my apologies for the length of this letter. However, I wanted to thorough in presenting my analysis and include everything, unlike how some parties to this suit have approached the dissemination of information to people that they purport to represent and do so with the best interests of the client at heart. I would submit that the actions of ER and the Coalition have tainted this entire process and they have acted in conjunction with BSA and the insurance companies to reach a settlement that best benefits BSA, the insurance companies, ER, and the Coalition. I would ask Your Honor to please order a copy of the online ballot or at least access to the online ballot to see the fact that ER placed it solicitation for a YES vote on the ballot instructions page and that the wording for the Expedited Distribution was different from the sample ballot. I would also ask that Your Honor please invalidate this vote and order new negotiations that are more in line with what a reasonable person would award if this case was being adjudicated by a jury that is punitive enough, but not so big that it destroys a company or an organization completely. Lastly, I would request that Your Honor either issue sanctions against ER for violating professional rules of conduct and ethics for attacking other attorneys and for not disclosing the complete information as previously discussed, as well as submitting this to the Pennsylvania State Bar Association for investigation and possible sanction(s). I intend to submit a copy of this information to the Pennsylvania State Bar Association as well, as The Rules of Conduct 8.4 (c) states that "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;…". I would submit that ER has been deceitful and misrepresentative in how they characterize many things dealing with this case. Omission of facts that would be pertinent to the decision made by survivors is misrepresentation and their besmirching of Mr Kosnoff and the other members of AIS is deceitful. Your Honor, thank you again for handling this case as professional as you have and ensuring that it is resolved as quickly as possible, while still being fair to the survivors.

Sincerely,



**Vote Yes to Approve The Plan**

Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. <info@erlegal.com>

Wed 12/15/2021 10:03 AM

To

*For Life's Toughest Trials™  |  (866) 569-3400  |  info@erlegal.com*

# RECENT $840 MILLION SETTLEMENT BRINGS SURVIVORS' COMPENSATION FUND TO $2.62 BILLION

## VOTE YES TO APPROVE THE PLAN

As you know, we are one of the three law firms that represents you in your Boy Scouts case along with AVA Law and Kosnoff Law. The three firms have differing views on the Plan and Voting. While we support the Plan, Mr. Kosnoff does not. This letter is being written to supplement the Eisenberg Rothweiler letter to you dated October 15, 2021 and responds to Mr. Kosnoff's assertions about the Plan and Voting.

By way of background, both Stewart Eisenberg and Ken Rothweiler have over 80 years of combined legal experience representing the severely injured including extensive experience representing survivors of sexual abuse. They have a national reputation having received some of the largest jury verdicts on behalf of the severely injured. They have both served as President of the Philadelphia Trial Lawyers Association and the Pennsylvania Association for Justice.

Over a decade ago, Eisenberg Rothweiler represented a sexually abused former Boy Scout and secured the largest settlement of any single case against the Boy Scouts. Thereafter, they successfully settled many more cases against the Boy Scouts for sexual abuse. In this bankruptcy, Eisenberg Rothweiler has been one

of three law firms leading the negotiations for the Coalition since the filing of the bankruptcy in February 2020. In the last 22 months, Eisenberg Rothweiler has been in the room negotiating in EVERY Mediation session (over 20) with MANY insurance companies and MANY chartered organizations.

**For the reasons set forth in this letter, Eisenberg Rothweiler unequivocally advises you to vote "YES" to Approve the Plan. You should have received your Ballot in an e-mail or in the mail. If you have not, please call us at 1-888-99-SCOUT.**

At the outset, you should be aware that over 50 law firms across the country representing more than 68,000 survivors support voting "YES TO APPROVE THE PLAN".

The Coalition, a group of 9 law firms committed to Survivors, was formed to achieve the largest compensation fund for survivors. The Coalition has negotiated a total survivors' compensation fund of **$2.62 billion to date**. The important words are "to date". The negotiations are ongoing daily with all of the parties.

The following are the key facts on which we base our recommendation that you vote YES TO APPROVE THE PLAN:

## WHY VOTE YES

### 1. BSA and Local Council Settlements

The two groups representing survivors, The Torts Claims Committee and The Coalition of Abused Scouts for Justice, once both supported the settlements with the BSA for $220 million and with the local councils for $600 million. The Coalition has pressed the BSA to their financial breaking point even acquiring their treasured Norman Rockwell Paintings Collection. While we have acquired some real estate from the local councils that effort has been frustrating as a result of the deed restrictions on many of the land parcels. The TCC has spent a great deal of money on appraisals of the local councils' properties. Approximately $400 million of the $600 million will be a cash payment from the collective councils which will go into the Survivor's Fund.

## 2. Hartford Settlement

It is necessary to explain the Hartford Settlement from the perspective of negotiations that occurred in the room rather than speculation from outside the room. The progression of the negotiations provides important context. After months of hard-fought negotiations, the insurer (Hartford) and the insured (BSA) came to an agreement to settle for $650 million dollars. When the Coalition examined the details of the deal it revealed that the $650 million came with strings attached that would most likely reduce the settlement to around $400 million. Eisenberg Rothweiler along with the two other negotiating law firms immediately and unequivocally rejected that settlement as grossly insufficient. The Coalition continued to negotiate with Hartford with the understanding that Hartford's intention was to put the settlement before the court for court approval.

However, after months of intense negotiations, the Coalition was able to secure a $787 million settlement. The Coalition effectively raised the settlement amount by approximately $387 million from what would have been a likely net of $400 million to the benefit of all survivors. The negotiators are confident that continued negotiations would not have yielded a larger settlement amount. Faced with the option of many years of litigation and appeals, the Coalition's goal of amassing the largest possible survivor's fund that would start paying out as soon as possible was realized. With the understanding that no amount of money could adequately compensate the survivors, the Coalition still endeavored to achieve the goal of establishing the largest compensation fund.

The Torts Claimants' Committee (TCC) rejected the offer of $787 million but were unsuccessful in their attempts to raise the offer by any dollar amount.

Furthermore, the amounts per survivor quoted in Mr. Kosnoff's letter are misleading and inaccurate for 2 reasons. First, his calculation is based on $1.857 billion. With the recent Century settlement and additional money from the local councils, the fund for survivors has been increased to $2.62 billion. To reiterate, our negotiations with dozens of insurance companies and chartered organizations continue and are ongoing. If settlements cannot be achieved, the rights to bring lawsuits against the insurers will vest with the Trustee of the survivors' fund. The downside to litigation will be the length of time (multiple years) it will take for the resolution with no guarantee of success. Second, every survivor will be individually evaluated and will not receive the same compensation from the

Trustee. The criteria for your individual award were set out in your solicitation package in the description of the Trust Distribution Protocol (TDP). Three of the main areas of evaluation by the Trustee are:

1. The severity of the abuse
2. The duration of the abuse
3. The state where the abuse occurred (Consideration of the statute of limitations)

Objectors have said NO to the Hartford settlement but they have NO Plan, NO Insurance Settlements and NO Chartered Organization settlements.

### 3. Century Settlement

After months of negotiations, a settlement was recently reached with Century Insurance Company for $800 million. The local councils will also contribute an additional $40 million.

### 4. Chartered Organizations

We continue to negotiate with Chartered Organizations. Negotiations with the LDS Church resulted in a quarter of a Billion dollars ($250 million) settlement. Negotiators were intimately involved with both the analysis of the LDS cases and the negotiations. The negotiators support the LDS settlement.

Those opposed to the Plan predict that rejection of the Plan will result in the BSA and the insurers coming "quickly" back to the negotiating table to presumably offer a lot more. No one has a crystal ball, but based on the BSA's precarious financial position it is much more likely that the BSA will go into liquidation, triggering a potential billion dollar pension lien. It is also very likely that local councils that are sued in the tort system will also file for bankruptcy which is another long and winding road. The most devastating effect of the Plan being voted down is the potential of the insurers taking their settlement money off the table and retreating. Understand that the insurance companies make their money by holding onto their money. Litigating in the tort system will take years followed by appeals. All the while, the insurance companies hold onto their money. The prediction that an insurance company will offer more money, when holding onto their money is financially more beneficial to them, is not a risk that we recommend taking in your case. Eisenberg Rothweiler has negotiated with insurance companies for the last 40 years. Insurance companies always make the

decision which is best for them. We believe if the plan is rejected the insurers will retreat and survivors only option will be to go out to the tort system. The tort system involves additional investigations, depositions, trial and appeals. Litigation means time, time and more time. Time is not a friend of Survivors. There is also no guarantee of a win in a courtroom. No outcome of the bankruptcy will be perfect but a possible outcome that doesn't give survivors finality will just continue the nightmare survivors have suffered for decades.

## 5. Depleting BSA Assets

The cost of a bankruptcy is enormous. The legal costs monthly are exorbitant. A recent monthly billing from the TCC was $1.5 million. The amount of money available to survivors depletes month after month. It is estimated that the TCC has already charged fees in excess of $35 million which amount will continue to grow month by month as long as the bankruptcy continues. It is imperative to halt the legal expenses so that more money can be distributed to survivors.

For all of the above stated reasons, Eisenberg Rothweiler strongly recommends that you vote **YES TO APPROVE THE PLAN.**

Stewart J. Eisenberg, Esquire

Kenneth M. Rothweiler, Esquire

Joshua B. Schwartz, Esquire

info@erlegal.com                         www.erlegal.com

*For Free Consultation Contact ER Legal*

**Toll Free: 866 569-3400  |  Local: 215 546-6636**

**Philadelphia PA Office:** 1634 Spruce Street, Philadelphia, PA 19103  | (215) 546-6636

**Cherry Hill NJ Office:** 1930 Route 70 E, Q-42, Cherry Hill, NJ 08003 | (856) 751-6652

**Share this email:**

emma

   

Manage your preferences | Opt out using TrueRemove™

Got this as a forward? Sign up to receive our future emails.

View this email online.

1634 Spruce Street
Philadelphia, PA | 19103 US

This email was sent to ▇▇▇▇▇▇▇▇▇▇▇▇▇
*To continue receiving our emails, add us to your address book.*

**KOSNOFF LAW PLLC.**

A PROFESSIONAL SERVICE CORPORATION

7001 Seaview Ave N.W.

SEATTLE, WASHINGTON 98117

**TELEPHONE: (425) 837-9690**

Mail Forwarding Service: 1321 Upland Drive, PMB 4685, Houston, TX 77043

**Timothy D. Kosnoff**
Direct: 425-830-8201

E-mail: tim@kosnoff.com

# KOSNOFF LAW RECOMMENDS THAT ABUSED IN SCOUTING CLIENTS <u>VOTE TO REJECT</u> THE BOY SCOUT PLAN

Dear Clients,

I am the founder of a movement known informally as Abused in Scouting. I have represented child abuse survivors in civil litigation since 1996. I have successfully litigated in state courts on behalf of men abused as scouts in courts throughout the country and have tried seven child sexual abuse civil jury trials, five to verdict. In short, no attorney in the country has more experience in representing victims like you than I have.

My firm recruited Eisenberg Rothweiler law firm and AVA law firm in 2019 to join me in an effort to reach out to men abused as boys in the Boy Scouts of America when I learned that the BSA intended to permanently extinguish the legal rights of men abused in scouting for over a century. We are co-counsel for all of you.

The Boy Scouts' bankruptcy case has reached an important juncture. You need to decide whether to vote for or against the Boy Scouts' reorganization plan that would define your rights going forward. As your attorneys, it is our job to give you the best advice we can based on our experience and a true and accurate explanation of the facts. But this decision is yours to make.

My advice to you is the **opposite** of the advice that the Eisenberg Rothweiler law firm has given you. **I strongly urge you to VOTE NO**. Let me explain why I fervently disagree with my co-counsel and the group of six law firms that supports the Boy Scout's plan and calls itself the Coalition. The reasons for my disagreement with them are numerous and are based on my analysis of the objective facts and my decades of experience in exactly this kind of case.

A U.S. Senator once said, "You are entitled to your own opinions, but you are not entitled to your own facts." The supporters of the BSA Plan are telling you their opinions. But those opinions are not supported by the facts or the truth. Here are the facts and the conclusions I have drawn from them after considering how the BSA Plan will affect you.

**KOSNOFF LAW**

October 18, 2021
Page 2

- **The BSA Plan will not compensate survivors fairly**.

    While $1.854 billion is an enormous amount of money, the number of sexual abuse claims filed in the Boy Scout's case sadly makes $1.854 billion a very small amount of money. The settlement trust expenses (which must be paid first) could be as high as 10%, which reduces the average payment per survivor to approximately $17,000. If some survivors are paid more, that means most of the other survivors will receive much less or nothing at all. Under your engagement letter with AIS, your payment will be reduced by 40% to pay for the attorneys' share of the payment.

- **Why are the numbers so low**?

    There are law firms that do not specialize in this type of work who borrowed millions of dollars from Wall Street hedge funds to run TV ad campaigns and finance the cost of their collection of claims from survivors. These are the same firms you see running ads for other injury cases like asbestos, opioids, vaginal mesh, baby powder talc, etc. Those law firms came into the Boy Scout's bankruptcy case and have treated survivors like "inventories" for the sole purpose of collecting their contingency fee. While you and other survivors might not receive large or meaningful payments, the "mass tort" lawyers will because they will take a piece of your payment which under the current $1.854 billion settlement fund will total more than $425 million.

    The Boy Scouts, Local Councils, and Hartford Insurance Company ("Hartford") negotiated with the "mass tort" lawyers instead of the Official Tort Claimants' Committee (the "TCC") because the "mass tort" lawyers were willing to accept much less as compensation for your claims.

- **Why was the Hartford Insurance settlement a cheap deal?**

    Hartford, the only settling insurer to date, has agreed to pay $787 million to settle with all of you.  That amount is a tiny fraction of the coverage it is contractually obligated to pay. For example, let's consider only penetration claims in states where the statute of limitations is not a barrier to recover.  The face value of Hartford's insurance coverage for the year 1972 *alone* is more than $800 million.  And yet, the Coalition and Eisenberg Rothweiler want you to vote for a plan that pays less than that amount without taking into account the thousands of other claims in the same year and the many other thousands in 1971, 1973, 1974, 1975, and all the other years Hartford provided insurance coverage.

    Making matters even worse, the $787 million dollar settlement would not be dedicated to the specific survivor claims that trigger Hartford's policies.  Instead, the $787 million will be used to pay all survivors even if their claims did not trigger a Hartford policy.

**KOSNOFF LAW**

October 18, 2021
Page 3

After all is said and done, the Hartford settlement would only yield approximately $8,500 per survivor after accounting for trust expenses and overhead. I cannot support a plan that is so generous to an insurance company and provides such a meager recovery for all of you. I urge you to reject it.

- **The BSA Plan cuts a cheap deal with the BSA local councils which are legally separate entities in exchange for complete legal immunity from separate claims you have against the local council in which you were abused.**

Eisenberg Rothweiler and the Coalition offered to settle with the Local Councils before undertaking any review of the claims or financial analysis of the Local Councils. In short, the Coalition blindly offered to settle for $600 million when the TCC demonstrated to the Coalition that the Local Councils had the ability to pay more than three times that amount without endangering their Scouting mission.

I find the Coalition's agreement (and Eisenberg Rothweiler's support of it) to be outrageous. The Plan releases the Local Councils from responsibility for the harm they caused you and requires them to pay far less than they can afford.

- **The Chartered Organizations that founded and ran your troop, including churches, schools, civic organizations, YMCA, etc. are getting a release for free for all claims after 1975 for not objecting to the Plan.**

Under the terms of BSA's Plan, Chartered Organizations do not pay a cent, but nevertheless receive broad releases for more than 40 years of sexual abuse claims (1976-2020). Instead, Chartered Organizations receive a release of their sexual abuse liability in exchange for a transfer of their interests in insurance policies purchased by the BSA and Local Councils. You might ask how that can possibly be fair to you. It cannot be and, in fact, is terribly unfair to you.

- **BSA's Plan includes a $250 million settlement with the Mormon Church (TCJC) which had direct involvement in every aspect of the Scouting program for 100 years. The $250 million settlement is tiny in comparison to the Church's legal exposure and its available assets which are in the billions of dollars.**

The $250 million is not only far below the level of its culpability for abuse in TCJC wards, but it will only be distributed to survivors who have claims against the Mormon Church. Therefore, most of you will not benefit at all from this arrangement.

- **Rejection of the Plan does not mean many more years of waiting. It means the BSA and the other entities will quickly come back to the negotiating table and finally be serious**

# KOSNOFF LAW

October 18, 2021
Page 4

**about fairly compensating survivors. A YES vote would likely mean years of appeals and probable rejection of the Plan by a higher court.**

The Boy Scout's "melting ice cube" defense is a hoax. The Boy Scouts hold hundreds of millions in cash and other assets that it designates as "restricted" and not available to pay you. It is hard to understand how that money is not available to pay you when the money was made available to provide the framework that led to your sexual abuse. In the end, the Boy Scouts are ready and willing to cut any deal they can, because they will be protected by a bankruptcy discharge while your claims will be left to the "mass tort" lawyers to take their share then leave you with crumbs.

- **There are grave *legal* problems with the BSA Plan even assuming it does receive the required two-thirds of the survivors' votes. Those problems will delay this case for years. That is why it is critical that each and every one of you vote and that you vote NO**.

Under the BSA Plan, the Boy Scouts and the Coalition are trying to remove the insurance companies' contractual rights. It is unclear if that effort will be successful, but it is sure to delay payments to survivors, because the insurance companies will surely keep the case tied up in appeals and many years of litigation over their rights and obligations to provide any coverage.

Insurance coverage issues create other huge legal problem with the BSA Plan. For example, the insurance companies will dispute they have to provide coverage to sexual abuse claims. The bankruptcy judge has acknowledged that she will not determine insurance coverage issues. Under the Plan, the Trust Distribution Procedures provides for the appointment of a Settlement Trustee who would evaluate all the survivor claims and make awards that would be legally binding on the insurance companies to pay. There is absolutely no legal support that would permit this and **ample law that says it cannot be done.** The insurance companies will appeal this and stretch your claims out for years to come.

- The TCC is made up of 9 survivors of scout leader abuse, just like you. They have served tirelessly for 20 months. They are not paid for their service. They have a fiduciary duty to all the survivors to advocate for your best interests. The TCC urges survivors to **REJECT** the BSA Plan. There is nothing in it for them except the pride that comes from doing their best for you.

- **The TCC was shut out of the backrooms where these cheap, foolhardy deals were cut by the Coalition and Eisenberg Rothweiler.**

The TCC has its own Plan. For many months, it has been forbidden by the court to file its own Plan or to even talk about it until now. The TCC has the legal right to file its own bankruptcy plan starting next week. I don't know what it contains or if I will eventually support it but I want

**KOSNOFF LAW**

October 18, 2021
Page 5

to see it, because the BSA Plan is a disaster for all survivors. We can only go up from here. But first survivors must send a resounding message to all the players that the BSA Plan is a big fat **NO!**

**CONCLUSION**

Your claims deserve fair compensation paid by those who are responsible for your pain and anguish. The Boy Scouts, Local Councils and Chartered Organizations are at fault and have the resources to compensate you adequately. The insurance companies have contractual obligations and the resources to live up to their contracts. The BSA Plan shortchanges you and lets responsible parties off the hook. That Plan compensates mass tort lawyers and paper pushers without adequately providing for you.

The BSA Plan is unacceptable. I urge you, therefore, to vote NO on the BSA Plan.

As always, please feel free to contact me at any time with your questions and comments. Thank you for the honor of representing you.

Very truly yours,

*Timothy D. Kosnoff*

TIMOTHY D. KOSNOFF

November 12, 2021

Honorable Laura Selber Silverstein
Justice, BSA Bankruptcy Case
824 Market St
6th Floor
Wilmington DE 19801

Re: Claim # ▉▉▉▉▉▉▉

Your Honor:

My name is ▉▉▉▉▉▉▉ I am writing to you today with regards to the balloting and voting currently taking place in the bankruptcy case involving the Boy Scouts of America. I have received my ballot and will be submitting my vote soon. However, I am writing today to report to you what I consider to be a violation of legal ethics and a violation of the spirit of the pending vote.

The law firm of Eisenberg Rothweiler PC sent out the ballots for the vote on the reorganization plan that was referred to the creditors by Your Honor on 9 November 2021 (copy attached). Since that date, we have received a daily email reminder with the same email (another copy attached). While I support Eisenberg Rothweiler's right to send out their opinions on the matter, the method in which they are doing so is questionable, at best, and in my opinion violates legal and professional ethics.

The format of these emails to me is troubling. First, I understand that they represent some of the creditors/survivors of BSA abuse. However, as they have included in the email, I am not one of their clients. I am represented by Mr Andrew Van Arsdale and Mr Timothy Kosnoff. They have sent out similar emails regarding their opinions and positions on the proposed reorganization plan. However, they are not constantly bombarding us with emails with their viewpoints. I will concede that the email does include a link to receive no further emails. However, why should a ballot, that is supposed to be impartial, require us to opt out from further emails? I have been in contact with both of my attorneys regarding this letter, their advice on its wording, and if it should be sent. They advised me that they could not offer advice on the content since another attorney is mentioned and that if I felt the need to write to you and express my views, then it is solely up to me. I have heard from the TCC legal counsel about a hearing regarding comments that Mr. Kosnoff has made and whether or not he has misled his clients or misrepresented the proposed reorganization plan. I too have read the plan in totality and have reached the same conclusions that Mr. Kosnoff has shared, prior to his sharing those opinions. As a client, I can assure you that he has not misled anyone. I am not an attorney, but have been involved with the drafting of ordinances and statutes and the local, state, and federal level. For me to independently come to the same conclusions that were later shared with me by Mr. Kosnoff can not be a coincidence.

The last point I'll make is that the method Eisenberg Rothweiler has used in politics is called electioneering, where people work at a polling place, may be handing out campaign material, where they make one last effort to sway a voter to their candidate or to vote for /against a ballot measure. I have worked on numerous campaigns and every state has laws regarding this practice at polling places. Usually, the requirement is that any person engaged in electioneering must be at least 75 feet away from the polling place and they are not allowed to hand out anything of value, such as food or money, to sway the voters. Essentially, what Eisenberg

Rothweiler has done equates to a person working in the polling place handing out ballots, while also wearing a shirt advocating for a certain candidate. They have a captive audience that must look at the information that they are providing.

Your Honor, this case has been tiring for everyone involved. However, I am concerned that the actions of Eisenberg Rothweiler, via their less than impartial ballot emails, may sway the vote one way or another. I am not asking you to invalidate this vote unless these blatant actions warrant it. I am not an attorney and do not know the intricacies of the statutes in this type of matter. However, I do have a degree in business and business ethics and know that these actions violate most standards of professional and legal ethics. As such, I would kindly ask that you reprimand and sanction the team from Eisenberg Rothweiler PC as allowed by your court and also refer the matter to the appropriate state bar association for investigation and sanction. I would also ask that they be required to amend their email with the ballot information and remove any partisan information so that the process may proceed without bias. If any further votes are required in the future, I would request that a more impartial law firm take the reins of the balloting process. I know that the official Tort Claimant's Committee is being guided by the law firm of Pachulski, Stand, Ziehl, and Jones. Perhaps they can be trusted to handle this situation if another vote arises? The actions of Eisenberg Rothweiler suggest that they are more concerned with the recovery of damages and the accompanying pay day. My letter has little to do with a disagreement over positions on the reorganization plan. Rather, it has to do with the violation of ethical practice, as well as what could amount to legal malpractice if they have jeopardized this vote and potentially invalidated the process already underway.

Your Honor, I appreciate you taking the time to read this letter about my concerns and consider the requests that I have made. If necessary, I am more than willing to appear via Zoom with the parties in attendance to discuss this matter. I also have no problem with my name being made public, although I was a minor when my case took place. I would prefer it could be kept confidential from the media, if at all possible, as I have been involved in a few endeavors in the past with regards to reforms to DUI laws across the country and I know my name becoming public would set off a media storm. Again, thank you for your efforts to move this process along and for listening to the many voices that have had to endure cover-ups and non-recognition of the horrors that we have faced in the past.

Sincerely,



**Eisenberg Rothweiler, P.C.: Boy Scouts of America Bankruptcy - Plan Voting**

Eisenberg Rothweiler PC <noreply@votenet.com>

Fri 11/5/2021 5:47 PM

To: █████████████████████

Dear Client:

The time has come to place your vote on the Boy Scouts of American Plan of Reorganization. Voting is open now and will remain open until December 10, 2021, at 11:59 PM Eastern.

**For the reasons set forth in the Coalition's letter and in <u>Eisenberg Rothweiler's attached letter</u>, it is Eisenberg Rothweiler's strong recommendation that you vote YES to approve the Plan.**

Voting is quick and easy, please read all the instructions below and then click the link to begin the process.


To vote Click Here

If you have any trouble with the link above, please use the credentials below:
URL: https://eballot.app/BSA
Username: █████████
Password: █████
The system will ask you to enter your Username and Password (listed above). Online voting should take you less than 10 minutes.  Note the online ballot can be accessed from any smartphone or device that has full browser capabilities.

All your choices are held in a secure database. No one except for your attorneys have access to the choices you made. The system will give you a confirmation number. This number is proof to you that your vote has been successfully transmitted to EBallot's secure database.


Thank you for your participation.

---

To receive no further e-mails, please click here

### Eisenberg Rothweiler, P.C.: Boy Scouts of America Bankruptcy - Plan Voting

Eisenberg Rothweiler PC <noreply@votenet.com>

Tue 11/9/2021 10:26 AM

To: █████████████████████████████

Dear Client:

The time has come to place your vote on the Boy Scouts of American Plan of Reorganization. Voting is open now and will remain open until December 10, 2021, at 11:59 PM Eastern.

**For the reasons set forth in the Coalition's letter and in <u>Eisenberg Rothweiler's attached letter</u>, it is Eisenberg Rothweiler's strong recommendation that you vote YES to approve the Plan.**

Voting is quick and easy, please read all the instructions below and then click the link to begin the process.

To vote Click Here

If you have any trouble with the link above, please use the credentials below:
URL: https://eballot.app/BSA
Username █████
Password: █████
The system will ask you to enter your Username and Password (listed above). Online voting should take you less than 10 minutes.  Note the online ballot can be accessed from any smartphone or device that has full browser capabilities.

All your choices are held in a secure database. No one except for your attorneys have access to the choices you made. The system will give you a confirmation number. This number is proof to you that your vote has been successfully transmitted to EBallot's secure database.

Thank you for your participation.

---

To receive no further e-mails, please click here

# THE DISCIPLINARY BOARD OF THE SUPREME COURT OF PENNSYLVANIA

## FILING A COMPLAINT AGAINST AN ATTORNEY

Enclosed is a *Complaint Form* for your use in filing a formal complaint against an attorney. Also enclosed is the *Expectations* sheet.

### COMPLAINT FORM

Complaints may be filed on the Disciplinary Board's website at www.padboard.org or on paper using the enclosed form. Be certain to thoroughly complete all sections of the form. You will receive acknowledgment of the receipt of your complaint from the Office of Disciplinary Counsel and appropriate steps will be taken to determine if a violation of the Rules of Professional Conduct and/or the Rules of Disciplinary Enforcement has occurred.

All paper complaints should be sent to the District Office in which the attorney maintains an office.



| District I | District II | District III | District IV |
|---|---|---|---|
| 1601 Market St. | 820 Adams Ave. | 601 Commonwealth Ave. | 437 Grant St. |
| Suite 3320 | Suite 170 | Suite 5800 | Suite 1300 |
| Philadelphia, PA 19103 | Trooper, PA 19403 | P.O. Box 62675 | Pittsburgh, PA 15219 |
| (215) 560-6296 | (610) 650-8210 | Harrisburg, PA 17106-2675 | (412) 565-3173 |
| | | (717) 772-8572 | |

### DOCUMENTATION

You should provide copies of ALL documents to support your *Statement of Complaint*, which may include:

- Fee or Retainer Agreement and any payments made to the attorney
- Bank statements, if appropriate
- Correspondence, including letters, emails, and/or text messages
- Notes of conversations
- Court filings, including docket number and the court of jurisdiction

If you are unable to provide copies, please send original documents with a request to have the originals returned.