**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Ref. D.I. 8209 |

**DEBTORS' OBJECTION TO MOTION OF CATHOLIC MUTUAL RELIEF SOCIETY AND THE ROMAN CATHOLIC AD HOC COMMITTEE (1) FOR PROTECTIVE ORDER REGARDING CENTURY INDEMNITY COMPANY'S SUBPOENA TO CATHOLIC MUTUAL AND (2) TO QUASH THE DEBTORS' 30(b)(6) DEPOSITION NOTICE TO THE ROMAN CATHOLIC AD HOC COMMITTEE**

Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession (together, the "Debtors") in the above-captioned chapter 11 cases, hereby file this objection (the "Objection") to the *Motion of Catholic Mutual Relief Society and the Roman Catholic Ad Hoc Committee (1) for Protective Order Regarding Century Indemnity Company's Subpoena to Catholic Mutual; and (2) to Quash the Debtors' 30(b)(6) Deposition Notice to the Roman Catholic Ad Hoc Committee* [D.I. 8209] (the "Motion"), which seeks an order (i) granting a protective order with respect to a subpoena (the "Subpoena") served on Catholic Mutual by Century Indemnity Company ("Century"); and (ii) quashing the Debtors' Rule 30(b)(6) deposition notice (the "30(b)(6) Notice") to the Roman Catholic Ad Hoc Committee (the "RCAHC").

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

**PRELIMINARY STATEMENT**

In accordance with the scheduling order agreed by all parties, including the RCAHC, and entered by the Court [D.I. 7996] (the "Scheduling Order"), the Debtors served the RCAHC with targeted discovery consisting of only three document requests and one 30(b)(6) deposition notice with five topics "regarding voting and related issues." *See* Scheduling Order at 2. In response, the RCAHC has refused to produce a single document or designate a witness. The Motion addresses the 30(b)(6) Notice in only a few paragraphs, arguing that the RCAHC should not have to provide any discovery relating to voting or moving counsel's blatant conflict of interest in negotiating a settlement with the Debtors on behalf of the United Methodist Ad Hoc Committee ("UMAHC"), and now objecting to that settlement on behalf of the RCAHC. The RCAHC has no basis for avoiding this discovery, especially in light of the voluminous discovery—including 30(b)(6) deposition notices regarding voting—that it has served on multiple parties. The Motion should be denied.

**OBJECTION**

I. **The Debtors' Limited Discovery Is Reasonable And Appropriate**

   a. **The Discovery Is Relevant**

1. "Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, parties may obtain discovery of 'any matter, not privileged, which is relevant to the subject matter involved in the pending action.'" *United States v. Dentsply Int'l, Inc.*, Civil Action No. 99-5 MMS, 2000 U.S. Dist. LEXIS 6925, at *12–13 (D. Del. May 10, 2000) (quoting Fed. R. Civ. P. 26(b)(1)). "[R]elevance has been construed liberally under Rule 26(b)(1), to 'encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case.'" *Id.* (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also In re ML-Lee Acquisition Fund II*, 151 F.R.D. 37, 39 (D. Del. 1993)

2

("[D]iscovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action.") (citations omitted).

2. The Debtors' discovery requests are narrowly-tailored, targeted, and seek relevant information regarding voting in these chapter 11 cases. The RCAHC is a loosely formed, ad hoc group that communicates with and coordinates across a wide network of BSA-affiliated entities regarding, among other things, voting on the Debtors' Plan. These communications are not privileged, as the entities with which the RCAHC communicates are not its clients. Moreover, the RCAHC does not deny that its communications with these parties include instructions, representations and recommendations regarding voting. Pursuant to their obligations as fiduciaries of the estates, and in accordance with the Court's Scheduling Order, the Debtors are undertaking an ongoing review of the vote in these Chapter 11 Cases. These communications are plainly relevant, and potentially material, to that review.

### b. The RCAHC's Boilerplate Objections Are Without Merit

3. The Debtors served only three requests for production on the RCAHC, all regarding voting, the subject now scheduled for discovery. The RCAHC refuses to produce a single document in response to any of these requests. The RCAHC responds to each request with the same conclusory, one-sentence response: "In addition to its General Objections, the RCAHC objects to this request as overbroad, unduly burdensome, not relevant to any claim or defense, and not proportional to the needs of the case." *See* Ex. B at 2. These boilerplate responses are baseless. The Debtors have propounded only a handful of targeted discovery requests, so they are not "overbroad" in number or scope or "unduly burdensome."

## II. The RCAHC's Objections Lack Merit

4. The RCAHC has failed to produce any documents or designate a witness to testify to any topics, raising a variety of incorrect objections.

5. *First*, the RCAHC's complaint that three RFPS and one deposition notice with five topics are harassing is plainly incorrect and also ironic. The RCAHC is not some passive party that has kept itself from the fray of discovery. To the contrary, like the Coalition, which the Court previously ruled is subject to 30(b)(6) discovery, the RCAHC "has taken positions before this Court in innumerable filings [and] is a mediation party." Dec. 10, 2021 Hr'g Tr. at 4:8–9. Moreover, the RCAHC has served voluminous discovery on the Debtors and other plan proponents, including approximately 40 requests for production, approximately 40 interrogatories, seven deposition notices, and a staggering 4,900 requests for admission. And the RCAHC has served 30(b)(6) deposition notices regarding voting on both the Debtors and Omni—the exact type of discovery that the RCAHC argues it should not have to comply with, even as it seeks it from other parties. In any case, there is nothing harassing about three document requests and five deposition topics.

6. The Debtors have complied with all of the RCAHC's requests. Indeed, the Debtors produced certain of their witnesses for a second day of depositions, after those witnesses had already provided a full seven hours of testimony, so that the RCAHC could ask further questions. Discovery is a two-way street, and those seeking such substantial discovery should not be heard to complain about the much narrower discovery sought against them.

7. *Second*, the RCAHC's argument that the discovery is inappropriate because the "Chartered Organizations were entitled to vote in Class 9, a voting class that did not accept the Plan, as more than one-third of Class 9 Creditors of Boys Scouts of America voted to reject it" is wrong. Motion at ¶ 18. More than two-thirds of the Class 9 Creditors have voted to accept the

Plan, as the Debtors noted in their status report response [D.I. 8234] and will be reflected in the Debtors' final voting report to be filed on January 17.

8.      ***Third***, the RCAHC incorrectly argues that the permissible scope of voting-related discovery is "limited to the question of law firms casting ballots on behalf of their clients (directly or through a master ballot), and concerns about whether the law firms have the authority to cast such ballots and whether survivors have been adequately informed of, and consent to, the votes their attorneys are casting on survivors' behalf." *See* Motion ¶ 16.  The RCAHC does not, and cannot, offer any support for its incorrect position.  Voting discovery has been contemplated at least since the original scheduling order entered by the Court, and was never limited to master ballot issues.  Rather, the initial scheduling order provided that "the Participating Parties retain ***all rights*** to seek discovery regarding . . . materials regarding voting" and "voting issues."  *See* D.I. 6528 ¶ 7 (emphasis added).  And the current Scheduling Order likewise provides a "deadline for written discovery regarding . . . voting and related issues," a "deadline to serve responses and objections to discovery regarding . . . voting and related issues," a deadline for "document production regarding . . . voting and related issues," and a "deadline to complete depositions of fact witnesses regarding . . . voting and related issues." *See* Scheduling Order at 2.

9.      ***Fourth,*** the RCAHC tries to avoid its obligations by arguing that "no other faith based or secular organization whose members were Chartered Organizations has received this discovery." Motion ¶ 18.  It is not a defense to discovery that the Debtors are being targeted, rather than overbroad, in their approach.  Nor is the fact that the Debtors are taking only limited discovery grounds for eliminating the Debtors' right to obtain material evidence for confirmation.  Indeed, the Debtors are not aware of other faith-based groups besides the RCAHC engaging in similar coordination and mass communication regarding voting, which is the subject of the Debtors'

discovery on the RCAHC.  Moreover, the Debtors are entitled to focus their discovery on parties opposing the Plan, just as parties opposing the Plan are taking discovery of Plan proponents. Indeed, the RCAHC has served substantial discovery on the Debtors, their agent Omni Agent Solutions, and various Plan proponents, including Century Indemnity Company, Chubb Group Holdings, Inc., American Zurich Insurance Company, Clarendon America Insurance Company, and Hartford Accident and Indemnity Company.  The RCAHC has not served discovery on a single Plan opponent.

10. *Fifth*, The RCAHC claims that the Debtors' fifth deposition topic, which concerns the composition, governance and operation of the RCAHC, does not relate to voting and, therefore, is untimely.  *See* Motion ¶¶ 9-11.  The RCAHC is wrong.  This topic seeks information regarding the ways in which the Committee's internal operations, composition and decision-making processes affected the advice and recommendations it communicated to its constituents regarding voting on the Plan.

### III. Discovery Regarding Moving Counsel's Conflict Of Interest Is Appropriate

11. Moving counsel represented the UMAHC in negotiating and documenting a settlement of all of their claims and liabilities.  Moving counsel now represents the RCAHC in opposing that settlement and the Plan.  *See, e.g.*, Dec. 21, 2021 Hr'g Tr. at 77:19–23 ("Your Honor, the plan has changed . . . the fundamental architecture has changed, because they are reaching into the coffers of charters and rewriting their own insurance policies for funding to the trusts."). Moving counsel's representation of the UMAHC in structuring a settlement agreement with the Debtors, and his conflicting representation of the RCAHC in seeking to undermine that same settlement, plainly prejudices the Debtors, including by potentially allowing moving counsel to "utilize the knowledge he acquired" from the Debtors in settlement negotiations to undermine the

UMAHC settlement, the other settlements that build off it, and the Plan. *In re Howrey LLP*, 2014 Bankr. LEXIS 4424 at 17.

12. In light of these facts, the Debtors believe that discovery regarding moving counsel's conflict is appropriate. Nonetheless, the Debtors have determined that the most efficient use of estate resources is to focus their efforts on voting discovery, and will defer to Century regarding discovery in connection with moving counsel's conflict.

## **CONCLUSION**

13. The Debtors respectfully request that the Court (i) deny the relief requested in the Motion and (ii) grant such other and further relief as the Court deems just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated: January 14, 2022
Wilmington, Delaware

*/s/ Paige N. Topper*
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek Abbott (No. 3376)
Andrew Remming (No. 5120)
Paige Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 351-9314
Email: dabbott@morrisnichols.com
aremming@morrisnichols.com
ptopper@morrisnichols.com

WHITE & CASE LLP
Glenn M. Kurtz (admitted *pro hac vice*)
Jessica Lauria (admitted *pro hac vice*)
Andrew Hammond (admitted *pro hac vice*)
Samuel P. Hershey (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: gkurtz@whitecase.com
jessica.lauria@whitecase.com
ahammond@whitecase.com
sam.hershey@whitecase.com

– and –

WHITE & CASE LLP
Michael Andolina (admitted *pro hac vice*)
Matthew Linder (admitted *pro hac vice*)
Laura Baccash (admitted *pro hac vice*)
Blair Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: mandolina@whitecase.com
mlinder@whitecase.com
laura.baccash@whitecase.com
blair.warner@whitecase.com

*Counsel to the Debtors and Debtors in Possession*