

O'Melveny & Myers LLP  
Times Square Tower  
7 Times Square  
New York, NY 10036-6537

T: +1 212 326 2000  
F: +1 212 326 2061  
omm.com

File Number:  
0705810-00073

January 14, 2022

**Tancred Schiavoni**  
D: +1 212 326 2267  
tschiavoni@omm.com

**BY EMAIL/ECF**

The Honorable Laurie Selber Silverstein  
United States Bankruptcy Judge  
United States Bankruptcy Court for the District of Delaware  
824 North Market Street, 6th Floor  
Wilmington, Delaware 19801

Re:     *In Re Boy Scouts of America*

Dear Judge Silverstein:

      We are writing on behalf of Century Indemnity Company ("Century") to (a) cross-move for an order compelling the Ad Hoc Committee that calls itself the Roman Catholic Ad Hoc Committee (the "RCAHC" or the "Committee") to comply with Federal Rule of Bankruptcy Procedure 2019 ("Rule 2019") by producing the agreement or agreements that authorize the RCAHC's representatives to speak on behalf of its members and identify the dioceses on whose behalf the Catholic Mutual Relief Society of America ("Catholic Mutual") predicates its standing as a member of RCAHC; and (b) deny the *Motion of Catholic Mutual and the Catholic Ad Hoc Committee (1) For Protective Order Regarding Century Indemnity Company's Subpoena to Catholic Mutual; and (2) to Quash the Debtors' 30(b)(6) Deposition Notice to the Catholic Ad Hoc Committee* [D.I. 8209]. Compliance with Rule 2019 is a threshold issue—if the RCAHC does not follow the Rule's disclosure directives, it should not be permitted to be heard.[1]

## STATEMENT OF FACTS

*Catholic Mutual is an insurance company not a  
charity or chartered organization*

      Catholic Mutual is an insurance company. It holds itself out as being established in 1889 and having issued general liability coverage to a variety of entities as part of its business.[2] Catholic Mutual is not a religious institution. It is an insurance mutual company.[3]

---

[1] Fed. R. Bankr. P. 2019(e).

[2] *Second Amended Verified Statement of the Roman Catholic Ad Hoc Committee Pursuant to Bankruptcy Rule 2019* ("Rule 2019 Statement") [D.I. 7805], ¶ 3.

[3] The RCAHC itself recognized this, noting that "Catholic Mutual issues certificates of coverage to members that provide them with coverage for certain property and casualty risks." *Id.*

The law firm of Schiff Hardin LLP ("Schiff Hardin") serves as the long time insurance coverage counsel for Catholic Mutual. In October 2020, Catholic Mutual retained Schiff Hardin to represent it in these Chapter 11 Cases.[4] Four months later, in June 2021, Schiff Hardin and Catholic Mutual created the RCAHC and began to appear through the RCAHC in these Chapter 11 Cases.[5]

Although Catholic Mutual is not a diocese of the Catholic Church, it is identified as a member of the RCAHC in its Rule 2019 Statement.[6]

### *The Roman Catholic Ad Hoc Committee's refusal to provide basic information about itself*

The RCAHC has refused to produce the document or agreement that authorizes the RCAHC's representatives to speak on behalf of the Committee or its members, in contravention of Rule 2019(c)(4). In its Rule 2019 Statement, the RCAHC states that Catholic Mutual serves as a member because it issued insurance to certain dioceses.[7] However, the RCAHC and Catholic Mutual have also refused to disclose the dioceses that are policyholders of Catholic Mutual on which it is purporting to act.[8] This also defies the requirement of Rule 2019(c) that committees must identify the members that they represent.

A dozen individual dioceses were later identified as associated with RCAHC but none of the dioceses who the RCAHC claims, in its Rule 2019 Statement, to be policyholders of Catholic Mutual were identified.

Hence, the identity of all dioceses whose interests the Committee purports to speak on behalf of remains undisclosed, as does the document or agreement, if any, authorizing the Committee to speak on behalf of its undisclosed members.

### *In response to Requests for Admission, the RCAHC denied that it has authority to speak on behalf of anyone*

On December 29, 2021, Century propounded various written discovery requests[9] on the RCAHC, including a Request for Admission asking that the RCAHC confirm that it possesses authority to speak on behalf of its members.

---

[4] *Id.* ¶ 2.

[5] *Id.* ¶ 4.

[6] *Id.*, Ex. A.

[7] *Id.* ¶¶ 4–5.

[8] In its Rule 2019 Statement, the RCAHC claims that it "is a party in interest and has a Claim against BSA to the extent BSA fails to honor its obligations to indemnify and provide primary liability coverage for Abuse Claims that now or in the future may be asserted against Catholic Mutual's members . . . and to the extent those members seek coverage under the certificates issued to them by Catholic Mutual." *Id.* ¶ 6.

[9] *Declaration of Lauren Casale in Support of Century's Motion to Compel the Roman Catholic Ad Hoc Committee to Comply with Rule 2019* ("Casale Decl."), Ex. 1 (Century's Requests for Production directed to the

In response, the RCAHC unequivocally denied that it may speak in any way on behalf of its members:

> **REQUEST FOR ADMISSION NO. 2.** Admit that the Committee in asserting an objection in the Chapter 11 Cases is speaking on behalf of its members.
>
> **RESPONSE:** In addition to the General Objections, the RCAHC objects to this request as confusing because the request is not tied to any specific filing that could be the subject of an objection and it is unclear what Century means by "speaking on behalf of its members." Subject to these objections, ***the RCAHC denies this request and admits only that in asserting any objection in the Chapter 11 Cases, it is speaking on its own behalf.***
>
> **REQUEST FOR ADMISSION NO. 3.** Admit that the Committee in asserting an objection in the Chapter 11 Cases does not speak on behalf of any of its members or other claimants.
>
> **RESPONSE:** In addition to the General Objections, the RCAHC objects to this request as confusing because the request is not tied to any specific filing that could be the subject of an objection and it is unclear what Century means by "speaking on behalf of its members or other claimants." Subject to these objections, ***the RCAHC admits only that in asserting any objection in the Chapter 11 Cases, it is speaking on its own behalf.***[10]

The Committee has no claim or rights against BSA or anyone else in these Chapter 11 Cases. It only has standing if it is in fact authorized to act on behalf of its members and is doing so.

### *The Unprecedented Volume of Discovery Served Under the Auspices of the Ad Hoc Committee*

The RCAHC was used by Catholic Mutual as the vehicle to serve over 1,800 written discovery requests for discovery on Century and Chubb Holdings over the course of Christmas week.[11] These requests included 1,827 Requests for Admission, 16 Interrogatories, and 2

---

Roman Catholic Ad Hoc Committee, dated December 29, 2021); Ex. 2 (Century's Requests for Admission directed to the Roman Catholic Ad Hoc Committee, dated December 29, 2021); Ex. 3 (Century's Interrogatories directed to the Roman Catholic Ad Hoc Committee, dated December 29, 2021).

[10] Casale Decl., Ex. 5 (Roman Catholic Ad Hoc Committee's Responses and Objections to Century's Requests for Admissions, dated January 7, 2022) (emphasis added).

[11] *See* RCAHC's Interrogatories to Chubb Companies (Del. Bankr. 20-10343, D.I. 7868 (Notice of Service)); *see* RCAHC's Request for Production to Chubb Companies (Del. Bankr. 20-10343, D.I. 7869 (Notice of Service)); RCAHC's Interrogatories to Century (Del. Bankr. 20-10343, D.I. 7870 (Notice of Service)); *see* RCAHC's Request for Production to Century (Del. Bankr. 20-10343, D.I. 7871 (Notice of

Requests for Production.[12] The RCAHC was also used to serve over 2,500 discovery requests on Hartford[13] and over 30 on Zurich in the run-up to December 29.[14] In addition, Catholic Mutual has used the RCAHC over the last two days to issue multiple Rule 30(b)(6) deposition notices seeking corporate representative witnesses on an incredibly broad array of topics – including 13 noticed topics to Century, 13 noticed topics to Hartford, and 13 noticed topics to Zurich.[15]

While Century has endeavored to respond to this discovery, Catholic Mutual and the RCAHC have refused to provide any discovery, invoking blanket objections to essentially all requests.[16] For example, the RCAHC refused to respond to a single Request for Production and declined to answer each Interrogatory.[17]

The RCAHC was also used as a vehicle to sponsor two experts and their reports. Again, the RCAHC declined to confirm whether the positions of the experts were offered on behalf of the individual members of the Committee, or any group of them.

### *Catholic Mutual Refuses to Respond to*
### *Century's Narrowly Drafted Document Requests*

On December 29, 2021, Century served a subpoena on Catholic Mutual in accordance with the Scheduling Order.[18] The Requests for Production sought documents in three general categories related to confirmation: (1) the Abuse Claims against RCAHC's members and the claims tendered

---

Service)); *see* RCAHC's Requests for Admission to Century and the Chubb Companies Company (Del. Bankr. 20-10343, D.I. 8045 (Notice of Service)).

[12] *See* RCAHC's Interrogatories to Chubb Companies (Del. Bankr. 20-10343, D.I. 7868 (Notice of Service)); *see* RCAHC's Request for Production to Chubb Companies (Del. Bankr. 20-10343, D.I. 7869 (Notice of Service)); RCAHC's Interrogatories to Century (Del. Bankr. 20-10343, D.I. 7870 (Notice of Service)); *see* RCAHC's Request for Production to Century (Del. Bankr. 20-10343, D.I. 7871 (Notice of Service)); *see* RCAHC's Requests for Admission to Century and the Chubb Companies Company (Del. Bankr. 20-10343, D.I. 8045 (Notice of Service)).

[13] *See* RCAHC's Requests for Admission to Hartford Accident & Indemnity (Del. Bankr. 20-10343, D.I. 8044 (Notice of Service)).

[14] *See* RCAHC's Requests for Admission to Zurich Insurers (Del. Bankr. 20-10343, D.I. 8049 (Notice of Service)); RCAHC's Requests for Production to Zurich Insurers (Del. Bankr. 20-10343, D.I. 8047 (Notice of Service)); RCAHC's Interrogatories to Zurich Insurers (Del. Bankr. 20-10343, D.I. 8048 (Notice of Service)).

[15] *See* RCAHC's Notice of Deposition to Century Indemnity Co. [D.I. 8293]; RCAHC's Notice of Deposition to Hartford Accident & Indemnity Co. [D.I. 8296]; RCAHC's Notice of Deposition to American Zurich Insurance Co., American Guarantee & Liability Insurance Co., and Steadfast Insurance Co. [D.I. 8294].

[16] *See* Casale Decl., Ex. 4 (Roman Catholic Ad Hoc Committee's Responses and Objections to Century's Requests for Production, dated January 7, 2022); Ex. 5 (Roman Catholic Ad Hoc Committee's Responses and Objections to Century's Requests for Admissions, dated January 7, 2022); Ex. 6 (Roman Catholic Ad Hoc Committee's Responses and Objections to Century's Interrogatories, dated January 7, 2022).

[17] Casale Decl., Ex. 4 (Roman Catholic Ad Hoc Committee's Responses and Objections to Century's Requests for Production, dated January 7, 2022); Ex. 6 (Roman Catholic Ad Hoc Committee's Responses and Objections to Century's Interrogatories, dated January 7, 2022).

[18] *See* Motion, Ex. B (Catholic Mutual Subpoena).

to Catholic Mutual that are the source of Catholic Mutual's objections to the Plan, RFP Nos. 1–3, 12–31; (2) Plan voting and related issues, RFP Nos. 4–9; and (3) the identity of all the Dioceses on whose behalf the RCAHC purports to act and its authority to act on their behalf, RFP Nos. 10–11.

The subpoena was drafted narrowly to focus on Catholic Mutual, its role in the objections to the Plan and whether and to what extent the RCAHC is speaking on behalf of its members.

- *Request No. 10* – "All Documents and Communications Concerning formation of the Catholic Ad Hoc Committee."

- *Request No. 11* – "All Documents and Communications granting the Catholic Ad Hoc Committee authority to speak on behalf of or bind the individual members of the Catholic Ad Hoc Committee in these Chapter 11 Cases (*i.e.*, the Boy Scouts bankruptcy case)."

- *Request No. 27* – "All Documents and Communications Concerning Proofs of Claim that name a Catholic Entity that are insureds of Catholic Mutual."

- *Request No 30* – "All Documents and Communications that Catholic Mutual received from its members concerning Abuse Claims."

Catholic Mutual has not agreed to produce any documents and instead seeks a protective order that would allow Catholic Mutual to avoid all discovery.

### *Century's Efforts to Meet And Confer with the RCAHC*

Century reached out to the RCAHC nearly every day from the last hearing through the New Year to request that the RCAHC meet and confer with it regarding Century's request that the RCAHC provide disclosures regarding its authority to speak for the Committee and its members. Schiff Hardin refused to take a single call or to schedule a call to discuss any of these compliance with Rule 2019.[19] Century's efforts to attempt to solicit cooperation on these points is supported by a voluminous record of requests.[20]

---

[19] *See, e.g.*, Casale Decl., Exs. 5–17 (Correspondence between Century's counsel and the Roman Catholic Ad Hoc Committee's Counsel).

[20] *See, e.g.*, Casale Decl., Exs. 5–17 (Correspondence between Century's counsel and the Roman Catholic Ad Hoc Committee's Counsel).

# ARGUMENT

## POINT I

### RULE 2019 REQUIRES THE RCAHC TO PRODUCE THE AGREEMENT EVIDENCING ITS AUTHORITY TO ACT ON BEHALF OF ITS MEMBERS.

The RCAHC should be compelled to produce the document or agreement that memorializes its authority to act on behalf of its members pursuant to Rule 2019. The straightforward wording of Rule 2019 requires that "a verified statement setting forth the information specified in subdivision (c) of this rule *shall* be filed by *every* group or committee that consists of or represents . . . multiple creditors or equity security holders that are (A) acting in concert to advance their common interests, and (B) not composed entirely of affiliates or insiders of one another."

As part of their Rule 2019 verified statements, committees such as the RCAHC must provide "a copy of the instrument, if any, authorizing the entity, group, or committee to act on behalf of creditors or equity security holders." Fed. R. Bankr. P. 2019(c)(4). The Committee Notes to this provision clarify that Rule 2019(c)(4) "requires the attachment of any instrument authorizing the filer of the verified statement to act on behalf of the creditors or equity security holders."[21] Pursuant to this directive, the RCAHC must provide the documents or agreements conveying its authority to speak on behalf of its members. The requirements of Rule 2019 are mandatory, as it uses the word "shall," rather than "may," to command compliance.[22] Though the RCAHC submitted a Rule 2019 Statement, it did not provide the supporting documents that evince its authority to act on behalf of anyone. A defining characteristic of ad hoc committees are their ability to speak on behalf of their members.[23]

Other entities subject to Rule 2019 in these Chapter 11 Cases have fulfilled their duties under this provision and provided a copy of their retention agreements. For example, both the Coalition and the three firms that comprise Abused in Scouting provided copies of their retention agreements with their Rule 2019 statements. Further, the Court previously required each plaintiffs' law firm that voted via master ballot to submit their retention agreements.

---

[21] Fed. R. Bankr. P. 2019(c)(4) advisory committee's note to 2011 amendment.

[22] *Nantucket Investors II v. California Federal Bank (In re Palms Associates)*, 61 F.3d 197, 208 (3d Cir. 1995) (use of the term "shall" imposes a requirement of mandatory, as opposed to discretionary, compliance); *In re The Muralo Company Inc.*, 295 B.R. 512, 524 & n.10 (Bankr. D.N.J. 2003) (Rule 2019 "requires entities, *including counsel*, who would represent in a chapter 11 case more than one creditor, to file a verified statement listing those creditors" and "explaining the circumstances of their agency") (quotations and citations omitted).

[23] *In re Northwest Airlines Corp.*, 363 B.R. 701, 703 (Bankr. S.D.N.Y. 2007) ("*Ad hoc* or unofficial committees play an important role in reorganization cases. By appearing as a 'committee' of shareholders, the members purport to speak for a group and implicitly ask the court and other parties to give their positions a degree of credibility appropriate to a unified group with large holdings.").

Providing this basic information is especially important in mass tort cases. At its core, Rule 2019 is a disclosure provision.[24] The purpose of Rule 2019 is to ensure that all matters in a Chapter 11 reorganization process are "done openly and are subject to scrutiny."[25] Courts have interpreted the scope of Rule 2019 to be "on its face . . . extremely broad."[26] Particularly in mass tort situations, courts applying Rule 2019 have emphasized the need to avoid conflicts of interest and to protect the integrity of the bankruptcy process.[27] Relying on Third Circuit authority, the District of New Jersey held that "in the absence of unusual circumstances, the fact of a retainer, the identity of the client, the conditions of employment and the amount of the fee do not come within the privilege of the attorney-client relationship."[28] Such information is "critical" to the administration of a bankruptcy.[29]

The RCAHC's failure to provide Century and other parties with this basic form of disclosure is especially concerning in light of the RCAHC's responses to Century's Requests for Admission. Century's Request for Admission No. 2 stated: "Admit that the Committee in asserting an objection in the Chapter 11 Cases is speaking on behalf of its members."[30] In response, the RCAHC objected and stated that it "denies this request and admits only that in asserting any objection in the Chapter 11 Cases, it is speaking on its own behalf.[31] Century needs copies of the RCAHC's retention agreements to adduce the entities for which the RCAHC is acting and speaking. And, if RCAHC, is not authorized to speak on behalf of its members, it should not be heard as it has no standing independent of its members.

Further, the RCAHC's responses to Century's Requests for Admission highlight the duplicity of its statements. As Judge Walrath previously observed in *In re Washington Mutual, Inc.*, "[b]ecause membership [in an *ad hoc* committee] is at-will, an *ad hoc* committee cannot bind members absent their consent, and generally all members must agree on any position the committee takes. Otherwise, dissenting members will simply leave the committee." 419 B.R. 271, 274 (Bankr. D. Del. 2009). The RCAHC claims that it speaks only on its "own behalf," however there is nobody for the Committee to speak for besides its members. If the Committee truly does not speak for its members, then there is no force and effect to its statements. Accordingly, the RCAHC's members must have consented to the Committee speaking on its

---

[24] *See In re Oklahoma P.A.C. First Ltd. P'ship*, 122 B.R. 387, 392–93 (Bankr. D. Ariz. 1990).

[25] *Id.* (emphasis added); *see also In the Matter of F&C Int'l, Inc.*, 1994 Bankr. LEXIS 274, *8 (Bankr. S.D. Ohio Feb. 18, 1994) (absent compliance with Rule 2019, there is a danger that "parties purporting to act on another's behalf may not be authorized to do so and may receive distributions to which they are not entitled")

[26] *Oklahoma P.A.C*, 122 B.R. at 390.

[27] *Baron & Budd, P.C. v. Unsecured Asbestos Claimants*, 321 B.R. 147, 168 (D.N.J 2005) (internal citations and quotations omitted)

[28] *Id.* at 168 (quoting *In re Semel*, 411 F.2d 195, 197 (3d Cir.1969)).

[29] *Id.*

[30] Casale Decl., Ex. 2 (Century's Requests for Admission directed to the Roman Catholic Ad Hoc Committee, dated December 29, 2021).

[31] Casale Decl., Ex. 5 (Roman Catholic Ad Hoc Committee's Responses and Objections to Century's Requests for Admissions, dated January 7, 2022).

behalf. The discovery that Century seeks—of the instruments evidencing the RCAHC's authority—go to the heart of this issue.

## POINT II

### CATHOLIC MUTUAL MUST IDENTIFY THE DIOCESES ON WHICH IT PREDICATES ITS STANDING TO SERVE AS A MEMBER OF THE RCAHC.

Furthermore, Catholic Mutual should be directed to identify the dioceses that it claims are its members pursuant to Rule 2019. In addition to the requirements of Rule 2019(e), Rule 2019(c) plainly states:

> (c) Information required. The verified statement **shall include**:
>
> > (1) the pertinent facts and circumstances concerning:
> > (A) with respect to a group or committee, other than a committee appointed under § 1102 or § 1114 of the Code . . . the formation of the group or committee, including the name of each entity at whose instance the group or committee was formed or for whom the group or committee has agreed to act;
> > (B) with respect to an entity, the employment of the entity, including the ***name of each creditor or equity security holder*** at whose instance the employment was arranged;
> >
> > (2) if not disclosed under subdivision (c)(1), with respect to an entity, and ***with respect to each member of a group or committee***:
> > (A) ***name and address***;
> > (B) the ***nature and amount of each disclosable economic interest***[32] held in relation to the debtor as of the date the entity was employed or the group or committee was formed;
> >
> > . . .
> >
> > (3) if not disclosed under subdivision (c)(1) or (c)(2), ***with respect to each creditor or equity security holder represented by an entity, group, or committee***, other than a committee appointed under § 1102 or § 1114 of the Code [11 USCS § 1102 or 1114]:
> > (A) ***name and address***; and
> > (B) the ***nature and amount of each disclosable economic interest*** held in relation to the debtor as of the date of the statement.[33]

---

[32] Rule 2019 defines "disclosable economic interest" as any claim, interest, pledge, lien, option, participation, derivative instrument, or any other right or derivative right granting the holder an economic interest that is affected by the value, acquisition, or disposition of a claim or interest." Fed. R. Bankr. P. 2019(a)(1).

[33] Fed. R. Bankr. P. 2019(c) (emphasis added).

Though the RCAHC's Rule 2019 Statement identifies Catholic Mutual as a member, Catholic Mutual contends it has standing only to the extent that it issued coverage to a diocese. Yet, Catholic Mutual and RCAHC refuse to identify the dioceses through which it contends it has standing. In the RCAHC's Rule 2019 Statement, it claims that "Catholic Mutual counts 112 of the 195 United States Catholic archdioceses and dioceses among its members."[34] Since Catholic Mutual is an insurance company—not an organized district of the Catholic Church—these 112 dioceses allegedly serve as the sole basis for Catholic Mutual's membership in the RCAHC.

Catholic Mutual has put the identities of these dioceses at issue in these proceedings, by predicating its standing to act through the RCAHC on the connection between these dioceses and the Debtors. Specifically, the RCAHC claims that the dioceses that Catholic Mutual insures "have parishes, schools and other catholic organizations within their geographical boundaries that are Chartered Organizations that sponsor scouting activities and that participate in coverage against abuse claims under certificates issued by Catholic Mutual."[35] Despite affirmatively linking Catholic Mutual's membership in the RCAHC to these 112 dioceses for whom Catholic Mutual provided coverage, nowhere in the RCAHC Rule 2019 Statement are these dioceses identified.

Catholic Mutual's concealment of the dioceses for whom it claims standing to act is especially concerning because Catholic Mutual and the RCAHC purport to speak on their behalf while refusing to produce the instrument demonstrating that they have authority to do so. Though the RCAHC claims that "Catholic Mutual's members . . . are representative of the United States Catholic dioceses and archdioceses and the Catholic Chartered Organizations within them," there is no way for Century or other parties to confirm the veracity of this statement.[36] Without knowing which dioceses Catholic Mutual provides insurance coverage for, it is impossible to understand whose interests Catholic Mutual and the RCAHC truly represent. By obscuring this information, Catholic Mutual and the RCAHC are plainly flouting the letter and the spirit of Rule 2019, which is designed to promote disclosure and candor.[37]

This disclosure is also particularly important in this context because the dioceses and Catholic Mutual have very different interests with regard to the Plan. The dioceses benefit from the releases provided to non-objecting parties under the Plan, while Catholic Mutual is solely at risk for the periods for which it issued insurance coverage as well as for periods in which it did not issue insurance coverage but nevertheless provides relief payments according to its website. Other Chartered Organizations, unburdened by this conflict, advocated in favor of the Plan and have joined in support. The degree to which the RCAHC is controlled by Catholic Mutual is

---

[34] D.I. 7805, ¶ 3.

[35] *Id.*

[36] *Id.*, ¶ 4.

[37] *See In re Oklahoma P.A.C. First Ltd. P'ship*, 122 B.R. 387, 392–93 (Bankr. D. Ariz. 1990); *see also In the Matter of F&C Int'l, Inc.*, 1994 Bankr. LEXIS 274, *8 (Bankr. S.D. Ohio Feb. 18, 1994) (absent compliance with Rule 2019, there is a danger that "parties purporting to act on another's behalf may not be authorized to do so and may receive distributions to which they are not entitled")

generating a different dynamic. This is precisely the type of issue that the disclosure requirements of Rule 2019 is intended to flush out.

Furthermore, the RCAHC—including the undisclosed dioceses that Catholic Mutual is representing—have propounded an exorbitant number of discovery requests on Century and other insurers. Given the volume of this discovery, Century and the other recipients of these discovery requests are entitled to know the parties on whose behalf the RCAHC is acting and the interests of these parties.

POINT III

THE RCAHC'S MOTION TO QUASH
SHOULD BE DENIED.

A.  **Century's requests seek factual information in accordance with the Court's Scheduling Order.**[38]

The discovery that Catholic Mutual seeks to quash relates generally to three categories of information: (1) the Abuse Claims against the RCAHC's members and the claims tendered to Catholic Mutual that are the source of Catholic Mutual's objections to the Plan; (2) Plan voting and related issues; and (3) the identity of the Dioceses on whose behalf the RCAHC purports to act and its authority to act on their behalf. Each of the requests seek information relevant to RCAHC and Catholic Mutual's objections to the Plan and the topics of which its designated experts are being offered to testify, the claims asserted in proofs of claim by members of the RCAHC, interest that Catholic Mutual has in claims asserted against BSA, and whether Catholic entities have authorized RCAHC to opt out any of its members under the Plan. Specifically, Requests Nos. 1-3, 12-30 are relevant to Abuse Claims against the RCAHC's members and the rebuttal of contentions made by the RCAHC's expert concerning insurance coverage; Requests Nos. 4-9 are relevant to Plan voting and related issues; and Requests No. 10-11 are relevant to the identity of the Dioceses on whose behalf the RCAHC purports to act and its authority to act on their behalf.

Catholic Mutual is the Chair of the RCAHC. Century timely served a subpoena on Catholic Mutual in accordance with the Court's Scheduling Order on December 29, 2021, the deadline for written discovery and requested responses by January 7, 2022, the deadline for responses and objections. The fact that certain of these requests also relate to confirmation-related issues with regard to the settlements does not mean that such requests do not also fall within the discovery that parties were entitled to seek until December 29, 2021—discovery regarding solicitations, settlements, voting, and related issues. The requests that cover Plan voting and related issues clearly fall within the scope of discovery. The requests concerning the Abuse Claims and the tenders associated with respect to them are tied to confirmation of the settlements and contentions made by RCAHC's experts. And, information covering the

---

[38]  Under Federal Rules of Civil Procedure 26(b), "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." The Federal Rules of Civil Procedure apply to these bankruptcy proceedings. Fed. R. Bankr. P. 7026, 9014.

composition of the RCAHC and its authority to act relate to its standing to be heard while also impacting solicitation and voting-related issues. Each of Century's requests are related to the allowed discovery topics and should not be barred.

Catholic Mutual's claim that Requests Nos. 4-9 are premature is meritless. Catholic Mutual is in an entirely different position in evaluating the Plan from the dioceses. It is responsible for the Abuse Claims it insured. It also claims on its website that it makes relief payments for its policyholders who are uninsured for a claim. To the extent that RCAHC and/or Catholic Mutual communicated with other entities concerning objections to the Plan, voting on the Plan, and whether to opt out of the Plan, these topics fall withing permissible discovery.

Moreover, all of the requested information provides the factual basis for Catholic Mutual's objections and its interest in claims asserted in the BSA bankruptcy case. The discovery sought is also essential to explain the authority the RCAHC has to speak on behalf of Catholic Mutual, its policyholders and RCAHC's other members. To date, the RCAHC has failed to answer questions related to these issues. The only information provided is set forth in the *Second Amended Verified Statement of the Roman Catholic Ad Hoc Committee Pursuant to Bankruptcy Rule 2019* [D.I. 7805] – the RCAHC was formed to protect and advance the common interest of Catholic Mutual and certain of its member dioceses and archdioceses. That does not clarify whether the RCAHC has authority to speak on behalf of any of its members, including Catholic Mutual.

The factual information that Century requests falls within the discovery allowed under the Scheduling Order. It is proper and relevant to solicitation, settlement, voting and related issues and should not be limited by any protective order.

### B. The information that Century requests is far narrower and more targeted than the unprecedented 3,000 requests served by RCAHC.

Catholic Mutual cannot in good faith claim that these requests are irrelevant. The RCAHC is seeking much more expansive information from Century. In fact, the requests that Century include in its subpoena are significantly narrower and more targeted than the blunderbust requests for information that RCAHC's served on Century. For example, Century Request for Production Nos. 23-25, 28-29 seek targeted information concerning the Abuse Claims asserted against the entities on whose behalf RCAHC purports to speak.

The protective order Catholic Mutual seeks by the Motion is also overly broad. If approved, it would not allow any of Century's discovery. Catholic Mutual should not be entitled to a blanket protection against all discovery. The Court should deny Catholic Mutual's request and ensure its prompt response to Century's subpoena.

The RCAHC served discovery requests on Century that are unprecedented in the number and scope. The RCAHC cannot argue that Century's requests—which are less than one percent in number to the RCAHC's requests—are oppressive or improper when it propounded nearly 3,200 requests. In its requests for admission alone, the RCAHC propounded over 1,800 requests. Catholic Mutual's objections about the timing of the requests is also misplaced. The Court's Scheduling Order established December 29, 2021 as the deadline to serve written discovery and

January 7, 2022 as the deadline to respond. Century followed that directive. Equally important, Century did not have any indication of RCAHC's position on the Century settlement until RCAHC served its rebuttal expert reports.

Catholic Mutual is asserting that Century's discovery is both premature (in that Century should wait until it states its objection to the Century settlement when its confirmation objection is due) and too late (in that Century should have guessed in October that Catholic Mutual would object).

   C. **Century is entitled to basic information it seeks to rebut RCAHC's experts and blunderbuss objections.**

As discussed above, Century's requests are appropriately related to the discovery permitted until December 29, 2021. But, relying on its assertion that Century's requests are untimely, Catholic Mutual seeks an expansive protective order that provides blanket protection against *any* discovery that Century served. Under the proposed order, Catholic Mutual would be entirely excused from responding to Century's subpoena. Despite Catholic Mutual's claims, the following categories of requests clearly fall within discovery regarding solicitations, settlements, voting and related issues and, therefore, were timely:

- *Requests Nos. 1-3* – Century seeks information concerning the tender of Scouting-related abuse claims. RCAHC's expert contends that the BSA and Local Council policies provide broad insurance to certain charted insurers. Century ought to be permitted to rebut this testimony – assuming it is permitted at all – with evidence that there were no tenders to these policies or only a few.

- *Requests Nos. 10-11* – Century seeks information concerning the formation of the RCAHC and what authority, if any, RCAHC has to speak on anyone's behalf. These requests relate to standing, solicitations, settlements, and voting-related issues.

- *Requests Nos. 12-17* – Century seeks information related to the policies that were issued by Catholic Mutual and the coverage for Scouting-related abuse claims. These request relate to settlements.

- *Requests Nos. 18-19* – Century seeks information related to communications concerning Scouting-related abuse claims. These request relate to settlements and voting-related issues.

- *Requests Nos. 20-21, 25, 27* – Century seeks information concerning communications related to proofs of claim filed in the BSA bankruptcy case. These request relate to solicitations, confirmation and voting-related issues.

- *Requests Nos. 22-24, 26, 28-31* – Century seeks information related to Catholic Mutual's relief payment practices, analysis, communications, and identification of abuse claims. These request relate to settlements.



By their terms, all of these requests seek purely factual information about matters that relate to solicitation, settlements, voting and related issues. Accordingly, Catholic Mutual has not met its burden of proof to show that a protective order is appropriate to shield either it from Century's discovery.

## CONCLUSION

Pursuant to Rule 2019, Century respectfully requests that this Court enter an order, substantially in the form attached hereto as **Exhibit A**, compelling the RCAHC to amend its Rule 2019 Statement to produce their retention agreements as required by Rule 2019(c)(4) and to identify the dioceses that Catholic Mutual insures as required by Rule 2019(c). Century further respectfully requests that the Court deny Catholic Mutual's request for a protective order.

Respectfully submitted,

*/s/ Tancred Schiavoni*
Tancred Schiavoni
of O'MELVENY & MYERS LLP