IN THE U.S.D.C. Bankruptsy Court- Delaware Court

[redacted]

FILED
2022 JAN 19 AM 10:50
CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

RE: BOY SCOUTS OF AMERICA
    ET AL-
CASE # 20-10343 (LSS)

Notice of Change of Address/
General Objection of Late
Claim-

By: [redacted]

(※ proof of service in envelope #1)

- PG. #2 -

I NEED TO CHANGE MY ADDRESS yet AGAIN. Notice to the court and All of it's AGENTS: ANY MAil ThAT you MAil or Need to send to Me, SEND to The 100 Queen ST ADDRESS ON pg. 1. DO NOT SEND TO MY JAil- For several reasons including COVID + QUArantines,lack of staff, I won't get it. I recently wrote to you telling you that my mom ▅▅▅▅ Moved bACK to her Mom's at ▅▅▅▅▅▅▅▅▅▅ CA + to send it there. This is Now MOOT+ void because she just Moved bACK per- MANantly to her husbands at the ▅▅▅▅▅▅▅▅▅▅▅▅▅▅ so send it there.

#2 The Following Are ADDitional exhibits/Notices Notifying This court That I object AGAIN (as Ive repeatedly done so on the docket) that MY CLAIM IS LATE. IT IS NOT! All of these people herein recognize My standing + that I AM Not lAte - ▅▅▅▅▅▅▅▅▅▅▅

*Received 2x From OMNI (Bcourt/their Agents)* 1

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | Ref. D.I. 2295, 2726, 4112, 5488, 6215, 6386, 6420 & 6433 |

**ORDER (I) APPROVING THE DISCLOSURE STATEMENT AND THE FORM AND MANNER OF NOTICE, (II) APPROVING PLAN SOLICITATION AND VOTING PROCEDURES, (III) APPROVING FORMS OF BALLOTS, (IV) APPROVING FORM, MANNER, AND SCOPE OF CONFIRMATION NOTICES, (V) ESTABLISHING CERTAIN DEADLINES IN CONNECTION WITH APPROVAL OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN, AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtors for entry of an order (this "Solicitation Procedures Order"), pursuant to sections 105(a), 502, 1125, 1126, 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3003, 3016, 3017, 3018, 3020, 9006, and 9008, and Local Rules 2002, 3017-1, and 9006-1, (a) approving the Disclosure Statement for the Plan, (b) approving the form and manner of the Disclosure Statement Hearing Notice in respect of the Disclosure Statement Hearing, (c) establishing the Solicitation Procedures, (d) approving the form and manner of the Abuse Claim Solicitation Notice and Abuse Survivor Plan Solicitation Directive, (e) approving the forms of Ballots, (f) approving the date, time, manner, and scope of the Confirmation Notices in respect of the Confirmation Hearing, (g) establishing certain deadlines in connection with the foregoing, and (h) granting related relief, all as more fully set forth in the

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion, the Disclosure Statement, or the Plan, as applicable.

---

Motion; and this Court having jurisdiction to consider the Motion in accordance with 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Debtors having consented to entry of a final order by this Court under Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice of and opportunity for a hearing on the Motion having been given and no other or further notice being necessary; and upon the record herein; and after due deliberation thereon; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. Notice of the Disclosure Statement Hearing, provided in the manner described in the Motion and the form of which was attached to the Motion as **Exhibit B**, was sufficient and appropriate under the circumstances and complied with the applicable requirements of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules, and no further notice is needed.

B. The Disclosure Statement, as may be modified and amended in accordance with the record at the Disclosure Statement Hearing, contains "adequate information" regarding the Plan within the meaning of section 1125 of the Bankruptcy Code. No further information is deemed necessary or required.

C. The Disclosure Statement complies with Bankruptcy Rule 3016(c) and describes, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction, exculpation, and release provisions contained in the Plan.

2

Abuse Litigation Claims), Class 8 (Direct Abuse Claims), and Class 9 (Indirect Abuse Claims) are impaired and entitled to receive distributions under the Plan. Accordingly, holders of Claims in such classes are entitled to vote on account of such Claims.

I. Ballots need not be provided to holders of Claims or Interests in the Non-Voting Classes (Classes 1, 2 and 10). Classes 1 and 2 are Unimpaired and are conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. Class 10 is Impaired and is not receiving any distribution under the Plan, and is therefore deemed to reject the Plan in accordance with section 1126(g) of the Bankruptcy Code.

J. The form of Non-Voting Status Notice, substantially in the form attached hereto as **Exhibit 5**, complies with Bankruptcy Rule 3017(d) and, together with the Confirmation Hearing Notice, provide adequate notice to the holders of Claims and Interests in the Non-Voting Classes (or other holders of Claims or Interests that are otherwise deemed not entitled to vote to accept or reject the Plan) of their non-voting status. No further notice is deemed necessary or required.

K. The form of Summary Regarding Chartered Organizations' Options Under the BSA's Chapter 11 Plan (the "Chartered Organization Notice") and the form of Plan Summary and Frequently Asked Questions (the "Abuse Survivor Plan Summary"), substantially in the forms attached hereto as **Exhibit 12** and **Exhibit 13**, respectively, comply with Bankruptcy Rule 3017(d) and, together with the Confirmation Hearing Notice, provide adequate notice to the Chartered Organizations and to holders of Direct Abuse Claims regarding the Plan. No further notice is deemed necessary or required.

L. The period during which the Debtors may solicit votes on the Plan is a reasonable and adequate period of time for holders of Claims entitled to vote on the Plan to make an informed

4

D. The Solicitation Procedures attached hereto as **Exhibit 1** provide a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code and the applicable Bankruptcy Rules.

E. The contents of the Solicitation Packages and other notices, as set forth in the Motion and the Solicitation Procedures, comply with Bankruptcy Rules 2002 and 3017 and constitute sufficient notice to all interested parties of the Record Date, the Voting Deadline, the Plan Objection Deadline, the Confirmation Hearing, the Plan, the procedures described to solicit votes to accept or reject the Plan and related matters to all interested parties.

F. With respect to holders of Direct Abuse Claims, the proposed procedures for the distribution of the Solicitation Packages, including the Abuse Claim Solicitation Notice and Abuse Survivor Plan Solicitation Directive, substantially in the form attached hereto as **Exhibit 11**, the Master Ballot, the procedures for the submission of votes to accept or reject the Plan by Firms representing multiple holders of Direct Abuse Claims, and the related procedures for the solicitation of votes to accept or reject the Plan from the holders of Direct Abuse Claims comply with Bankruptcy Rule 3017 and are adequate under the circumstances.

G. The forms of Ballots, substantially in the forms attached hereto as **Exhibits 2-1, 2-2, 2-3, 2-4, 2-5, 2-6, and 2-7**, including all instructions provided therein (i) are sufficiently consistent with Official Form No. 314 to be approved, (ii) adequately address the particular needs of these Chapter 11 Cases, and (iii) are appropriate for the Voting Classes of Claims entitled to vote to accept or reject the Plan. No further information or instructions are necessary.

H. Pursuant to the Plan, the holders of Claims in Class 3A (2010 Credit Facility Claims), Class 3B (2019 RCF Claims), Class 4A (2010 Bond Claims), Class 4B (2012 Bond Claims), Class 5 (Convenience Claims), Class 6 (General Unsecured Claims), Class 7 (Non-

3

2

Page 6 of 6

| # | Local Council Name | LC State | Total Claims (Count) | Total Claims (Base Matrix Low Value) | Total Claims (Max Matrix High Value) | Total LC Contribution (DS Ex C) | Unrestricted Net Assets (DS Ex D / Ex 1) | Contribution / Base Low | Unrestricted Net Assets / Base Low | Contribution / Max High | Unrestricted Net Assets / Max High |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 251 | Transatlantic | ZZ | 139 | 1,569,070 | 28,081,700 | 447,138 | 966,036 | 28.50% | 61.57% | 1.59% | 3.44% |
| 252 | Far East | ZZ | 50 | 808,570 | 12,084,200 | 778,355 | 2,886,174 | 96.26% | 356.95% | 6.44% | 23.88% |
|  |  |  | 41,750 | $ 7,646,294,995 | $ 41,069,210,100 | $ 519,588,545 | $ 1,870,754,935 | 6.80% | 24.47% | 1.27% | 4.56% |

★ Documents I further recieved from the cart's it's agents. These documents address contributions by local counsels. Luckily I live in California - L.A. County and the injuries also occured in L.A. County - California where the statute of limitations are not barred or closed + the window to file + have filed is open $ is open on the TDP/scaling factor maximizing my %/$ claims, unlike other states.

- Also, that is another reason I am not late in filing.

#2 I also noticed

See next page →

that alot of claimants (including myself) listed chartered organizations that hosted/sponsored the troop $ should be held accountable $ wise. I preserve my claims against them herein

Docume ↓MB  which also extends my time limits/statutes

#3 pg. 423 local counsels contributed $ for unknown/missing troops ("IE IF It cant find mine, etc.)

## EXHIBIT G-1

## DEBTORS' RESPONSE TO TORT CLAIMANTS' COMMITTEE'S LOCAL COUNCIL ABUSE CLAIMS VALUATIONS

---

**The Debtors disagree with the accuracy and relevance of the Tort Claimants' Committee's Local Council Abuse Claims valuations and believe that there are misleading elements of such presentation. For the reasons set forth below, the Debtors do not believe that creditors voting on the Plan should rely on Exhibit G in making their decision to vote to accept or reject the Plan.**

The Debtors do not believe that the claims against each Local Council can be valued at this time. Moreover, the Debtors do not believe that such claims need to be valued in order to provide adequate disclosure to holders of Direct Abuse Claims or to satisfy the standards to obtain non-consensual third-party releases in favor of the Local Councils. The Debtors **do not** believe that Exhibit G, which was prepared by the Tort Claimants' Committee and purports to show the liability of each Local Council, is accurate, nor do the Debtors believe that the comparison of such liability to the contributions being made by each Local Council and the assets of each Local Council is factually accurate or presents a full and accurate picture on which any decisions could be made by a holder of a Direct Abuse Claim voting on the Plan. In particular, the Debtors note the following:

1. The Tort Claimants' Committee agreed to a $600 million contribution from the Local Councils prior to the expiration of the Restructuring Support Agreement.

2. The amount of the Local Council Settlement Contributions does not include the value of their insurance (both their own policies and their interests as an insured under the BSA Insurance Policies), which the Tort Claimants' Committee itself has indicated could be worth billions of dollars, and the Debtors believe, when combined with the Debtors' rights in such policies, may be sufficient to result in payment of up to 100% to holders of Abuse Claims. The Settlement Trust's ability to monetize the Abuse Insurance Policies and disburse such proceeds to Abuse Claimants could be significantly reduced without these Local Council insurance rights.

3. The Tort Claimants' Committee's numbers inaccurately attribute BSA and Chartered Organization liability to the Local Councils. The Debtors' estimate of the value of Abuse Claims is $2.4 to $7.1 billion in the aggregate,[1] a range which certain of the Debtors' Insurance Companies believe inflates the aggregate value of Abuse Claims. The Tort Claimants' Committee appears to simply take the Trust Distribution Procedures' base and maximum values by tier of Abuse and apply them to Direct Abuse Claims against Local Councils without taking into account whether such claims are valid, which claims may take the Expedited Distribution, or the various factors set forth in the Trust Distribution Procedures that would increase or decrease the value of such claims (including to levels below the base amount), other than the statute of limitations factors in the Trust Distribution Procedures. Regardless, the amounts reflected appear to be the value of the total claim rather than the portion of the liability that relates to a

---

[1] As noted in Section V.N of the Disclosure Statement, the Coalition and Future Claimants' Representative (and Tort Claimants' Committee) believe that the value of the Abuse Claims is higher than the Debtors' estimate. Nonetheless, the Coalition and Future Claimants' Representative are supporting the settlements proposed in the Plan because they believe that the settling parties are paying the maximum amounts that they would pay absent complicated, expensive and protracted litigation.

3

**Unique and Timely Abuse Claim Count* by Top-20 Most Common Chartered Organizations**

| Chartering Organization Group | Count** |
|---|---|
| METHODIST CHURCH | 3,886 |
| BAPTIST CHURCH | 3,274 |
| CATHOLIC CHURCH | 3,213 |
| CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS | 2,481 |
| PRESBYTERIAN CHURCH | 1,687 |
| LUTHERAN CHURCH | 1,474 |
| ARMED FORCES*** | 704 |
| EPISCOPAL CHURCH | 597 |
| AMERICAN LEGION | 496 |
| YMCA | 488 |
| VFW | 410 |
| SALVATION ARMY | 252 |
| ELKS LODGE | 240 |
| LIONS CLUB | 224 |
| BOYS AND GIRLS CLUBS | 205 |
| KNIGHTS OF COLUMBUS | 181 |
| BOYS CLUB | 139 |
| KIWANIS CLUB | 121 |
| ROTARY CLUB | 95 |
| MOOSE LODGE | 88 |
| OTHER | 20,996 |
| UNKNOWN | 36,378 |
| MISSING | 4,928 |
| **Total** | **82,557** |

*Handwritten annotations:* M [bracket next to top rows] — Vine Street W. Covina, CA / Vine/Hacienda / My troop was sponsored held at a Methodist/Presbyterian/Misc church —

\* The total Abuse Claim count in this table is slightly higher than the total count of unique and timely Abuse Claims to account for claimants that named multiple organizations.

\*\* The abuse claim count listed in this column is based on the claimants' responses to Part 4.H. on the Sexual Abuse Proof of Claim Form and does not account for references to the Chartered Organization that may be located elsewhere in the proof of claim. The abuse claim count listed above also does not reflect any other analysis conducted by the Debtors to approximate the total number of abuse claims that implicate the Chartered Organization.

\*\*\* Abuse Claims flagged as "Armed Forces" named one of the following groups: Army, Navy, Marines, Air Force, Coast Guard, National Guard, or the generic US Military or US Armed Forces.

**Unique and Timely Abuse Claim Count by Local Council & Allegation**

Rows in white list Abuse claims against individual Local Councils. Rows in blue (with the exception of "UNKNOWN" and "MISSING") list Abuse claims against more than one Local Council.

| Local Council # (1) | Local Council | Penetration | Oral Sex | Masturbation | Groping | Touching-Unclothed | Touching-Clothed | Unknown/Unconfirmed | Missing | All Unique & Timely Claims (2)* |
|---|---|---|---|---|---|---|---|---|---|---|
| Multiple | SENECA WATERWAYS; WESTCHESTER-PUTNAM | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Multiple | SENECA WATERWAYS; WESTMORELAND-FAYETTE | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 |
| Multiple | SEQUOIA; WESTERN LOS ANGELES COUNTY | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Multiple | SILICON VALLEY MONTEREY BAY; WESTERN LOS ANGELES COUNTY | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Multiple | SIMON KENTON; TECUMSEH | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 |
| Multiple | SOUTH FLORIDA COUNCIL; SOUTH GEORGIA | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Multiple | SOUTH FLORIDA COUNCIL; SOUTHWEST FLORIDA | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 1 |
| Multiple | SOUTH PLAINS; TEXAS SOUTHWEST | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Multiple | SOUTHEAST LOUISIANA; WEST TENNESSEE AREA | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 |
| Multiple | SOUTHERN SIERRA; VENTURA COUNTY | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Multiple | SOUTHERN SIERRA; VERDUGO HILLS | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Multiple | SPIRIT OF ADVENTURE; TRANSATLANTIC | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 1 |
| Multiple | SPIRIT OF ADVENTURE; TWIN RIVERS | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Multiple | SPIRIT OF ADVENTURE; YOCONA AREA | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Multiple | SUFFOLK COUNTY; TWIN RIVERS | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Multiple | SUSQUEHANNA; WESTERN MASSACHUSETTS | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Multiple | THEODORE ROOSEVELT; WASHINGTON CROSSING | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 1 |
| Multiple | THREE FIRES; TWIN RIVERS | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Multiple | THREE HARBORS; THREE RIVERS | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Multiple | THREE HARBORS; YUCCA | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Multiple | TUKABATCHEE AREA; WESTMORELAND-FAYETTE | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Multiple | WEST TENNESSEE AREA; YOCONA AREA | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 |
| N/A | CENTRAL NEW JERSEY (2) | 9 | 4 | 7 | 9 | 1 | 0 | 4 | 0 | 34 |
| N/A | CENTRAL ESCARPMENT (3) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| N/A | GREATER TORONTO (3) | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| N/A | UNKNOWN | 8,859 | 4,494 | 2,887 | 4,101 | 538 | 406 | 1,004 | 87 | 19,156 |
| N/A | MISSING | 1,910 | 1,807 | 1,025 | 2,011 | 334 | 161 | 1,631 | 1,479 | 10,358 |
| Total | | 24,539 | 18,856 | 13,022 | 17,138 | 1,879 | 1,294 | 3,817 | 1,664 | 82,209 |

**Footnotes:**

(1) Local Council # reflects merger activity through 2/28/2021. DIRECT SERVICE is a subsidiary of #082 NATIONAL CAPITAL AREA, and #374 HUDSON VALLEY merged with #388 WESTCHESTER-PUTNAM effective 1/1/2021 to form #388 GREATER HUDSON VALLEY.

(1a) CENTRAL NEW JERSEY was dissolved in 2014 and did not merge with any other Local Council.

(1b) CENTRAL ESCARPMENT and GREATER TORONTO are Local Councils of Scouts Canada and not BSA.

(2) The term "unique" with respect to Proofs of Claim accounts for the fact that some Abuse survivors filed multiple Proofs of Claim in these Chapter 11 Cases. To account for duplicative Proofs of Claim, Bates White considered claimant personal identifying information on the Proofs of Claim, including name, last four digits of Social Security number, birth month and year, as well as zip code, email address and cell phone number. On the basis of this information, Bates White consolidated duplicative claims into one comprehensive Claim.

Timely Proofs of Claim are Proofs of Claim that were submitted on or before the Bar Date, as established by the Bar Date Order [D.I 695]. For Abuse Survivors who made at least one timely submission, Bates White incorporated information from amendments or supplemental submissions whether filed before or after the Bar Date and consolidated that information such that the submissions count as one unique Claim.

* The abuse claim count listed in these columns is based on the claimants' responses to Part 4.I. on the Sexual Abuse Proof of Claim Form and does not account for references to the Local Council that may be located elsewhere in the proof of claim. The abuse claim count listed above also does not reflect any other analysis conducted by the Debtors to approximate the total number of abuse claims that implicate the Local Council.

p/ex. 5

[This Page Intentionally Left Blank]

THE Following PAGES Are Documents 3-4 seperate. I recieved From the court + its AGENTS. Ive been INVolved IN this case Diligently & heavily & with effort. Most, IF NOT All oF the cart/cart AGENTS recognize this & Me as a Diligent party & claimant. ThAt is why I Object to any claims by anyone That My claims are "lAte" & thus barred.
Ive been Diligent & an active participant Since DAY ONe & Other parties agree, but one.

> **THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT THE SOLICITATION AGENT VIA ONE OF THE METHODS SPECIFIED ABOVE. PLEASE NOTE THAT THE SOLICITATION AGENT MAY NOT PROVIDE LEGAL ADVICE. IF YOU NEED LEGAL ADVICE, PLEASE CONSULT WITH YOUR ATTORNEY.**

Dated: September 30, 2021

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: jessica.lauria@whitecase.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: mandolina@whitecase.com
       mlinder@whitecase.com
       laura.baccash@whitecase.com
       blair.warner@whitecase.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Email: dabbott@morrisnichols.com
       aremming@morrisnichols.com
       ptopper@morrisnichols.com

*Attorneys for the Debtors and Debtors in Possession*



| Deadline to File Confirmation Briefs and Replies | January 17, 2022 |
|---|---|
| Confirmation Hearing | January 24, 2022, at 10:00 a.m. (Eastern Time) |

13. Please be advised that the Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code. Additionally, Article X of the Plan contains certain release, injunction, and exculpation provisions, which will become effective if the Plan is approved and described in Article VI.Q of the Disclosure Statement. Such provisions include the following:

 a. **Discharge Injunction. From and after the Effective Date, except as expressly provided in the Plan or the Confirmation Order, all holders of Claims or Interests of any nature whatsoever against or in the Debtors or any of their assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are discharged pursuant to the terms of the Plan shall be precluded and permanently enjoined from taking any of the following actions on account of, or on the basis of, such discharged Claims and Interests: (a) commencing or continuing any action or other proceeding of any kind against the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property; (b) enforcing, attaching, collecting, or recovering by any manner or means of judgment, award, decree or other against the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property; (c) creating, perfecting or enforcing any Lien or Encumbrance of any kind against the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property; or (d) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. The foregoing injunction shall extend to the successors and assigns of the Debtors (including Reorganized BSA) and its and their respective properties and interests in property. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge or termination of all Claims, Interests and other debts and liabilities against or in the Debtors pursuant to sections 105, 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time to the extent such judgment relates to a discharged Claim or Interest.**

 b. **Releases by the Debtors and the Estates.**

 **Releases by the Debtors and the Estates of the Released Parties.** As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[3] to facilitate and implement the

---

[3] "Released Parties" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Creditors' Committee; (e) the members of the Creditors' Committee in their capacities as such; (f) the Tort Claimants' Committee; (g) the members of the Tort Claimants' Committee in their capacities as such; (h) the Future Claimants' Representative; (i) the Coalition; (j) JPM; (k) the Settling Insurance Companies, including Hartford; (l) the Contributing Chartered Organizations, including TCJC; (m) the Foundation, in its capacity as lender under the

reorganization of the Debtors and the settlements embodied in the Plan, including the Abuse Claims Settlement, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement,[4] and the TCJC Settlement, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article X.J.1 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

**Releases by the Debtors and the Estates of Certain Avoidance Actions.** As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of Creditors' Committee and its members in their respective capacities as such in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Abuse Litigation Claims, and Convenience Claims of and from any and all Avoidance Actions.

---

Foundation Loan Agreement; (n) the Ad Hoc Committee; (o) the members of the Ad Hoc Committee in their capacities as such; (p) the Creditor Representative; (q) the Mediators; and (r) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Released Party; provided further, that the definition of "Released Parties" shall in all instances be subject to Article X.J of the Plan.

[4] "Hartford Insurance Settlement" has the meaning ascribed to such term in Article V.S.4 of the Plan.