

January 24, 2022

**VIA CM/ECF**

Hon. Laurie Selber Silverstein
Chief Judge, United States Bankruptcy Court for
    the District of Delaware
824 North Market Street, 3rd Floor
Wilmington, DE 19801

Dear Judge Silverstein:

      Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company and Navigators Specialty Insurance Company (collectively, "Hartford") respectfully request that this Court enter an Order quashing the Notice of Deposition that The Roman Catholic Ad Hoc Committee ("RCAHC") served on Hartford on January 13, 2022 as well as the Second Amended Notice of Deposition that the Official Committee of Tort Claimants ("TCC") served on Hartford on January 20, 2022 (the "Notices").[1]

      Hartford previously appeared for deposition on December 2, 2021 in connection with Plan confirmation proceedings, and both RCAHC and the TCC had a full and fair opportunity to depose Hartford's witness then. The Notices seek testimony on a total of eighteen separate topics, each of which is inappropriate because (i) the topic was raised (or abandoned) during the prior deposition of Hartford; (ii) the topic is overbroad and abusive; or (iii) the topic concerns documents that Hartford had no role in preparing.[2] The Court accordingly should enter a protective order quashing the Notices in their entirety.

<u>Topics That Were the Subject of the Previous Hartford Deposition are Improper</u>.

      Many of the topics in the Notices have already been the subject of deposition. On December 2, 2021, and in response to deposition notices from the RCAHC and the TCC, Hartford presented Michael Hotaling as its Rule 30(b)(6) witness for deposition. A number of the topics are identical (or nearly so) to topics that the TCC noticed for the earlier deposition:

---

[1]     The "Notices" are attached as Exhibit 1 (RCAHC Notice [D.I. 8296]) and Exhibit 2 (TCC Notice [D.I. 8418]).

[2]     On January 17, 2022, counsel for Hartford wrote to counsel for the RHAHC objecting to the deposition topics as duplicative and/or overbroad, unduly burdensome and abusive. On January 19, 2022, Hartford met and conferred with counsel for the RCAHC.

1875 K STREET NW, SUITE 600 | WASHINGTON, DC 20006-1251 | (202) 984-1400 | WWW.RUGGERILAW.COM

> RCAHC Topic No. 3: The Hartford Settlement Agreement.[3]
>
> RCAHC Topic No. 4: The Hartford Term Sheet.[4]
>
> RCAHC Topic No. 5: Paragraphs vi, vii and viii of the Hartford Term Sheet.[5]
>
> RCAHC Topic No. 6: All BSA Insurance Policies issued by Hartford.[6]
>
> RCAHC Topic No. 7: All Local Council Insurance Policies issued by Hartford.[7]
>
> RCAHC Topic No. 10: Which BSA Insurance Policies issued by any Settling Insurer [Century Term Sheet] cover Abuse Claims against insureds and co-insureds.
>
> RCAHC Topic No. 11: Which Local Council Insurance Policies issued by any Settling Insurer [Century Term Sheet] cover Abuse Claims against insureds and co-insureds.
>
> TCC Topic No. 1: The BSA Plan Settlements, including . . . the Hartford Insurance Settlement. . . .
>
> TCC Topic No. 2: The identity of all Insurance Policies included in the BSA Plan Settlements.[8]

None of these topics is proper. With respect to the "Hartford Settlement Agreement," Hartford informed the parties at the first Hartford deposition that the parties have not yet finalized the Hartford Insurance Settlement Agreement; accordingly, there is no final agreement yet on which a witness could properly testify. That remains the case.

Mr. Hotaling did testify extensively regarding the Hartford Term Sheet, including the treatment of Chartered Organizations.[9] The RCAHC's counsel introduced the Hartford Term

---

[3] *Compare* Ex. 1, RCAHC Notice Topic No. 3 *with* The Official Committee of Tort Claimants' *Second Amended* Notice of Deposition Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure of Hartford Accident and Indemnity Company, First State Insurance Company, and Twin City Insurance Company [D.I. 7258, 7258-1] (the "First TCC Dep. Notice") Topic No. 6 (attached as Exhibit 3).
[4] *See id.*
[5] *See id.*
[6] *Compare* Ex. 1, RCAHC Notice Topic No. 6 *with* Ex. 3, First TCC Dep. Notice Topic No. 11.
[7] *See id.*
[8] To the extent this topic is aimed at testimony regarding policies issued by other insurers, it is also grossly overbroad, for the reasons explained below.
[9] *Compare* Ex. 1, RCAHC Notice Topic Nos. 4, 5 *with* Deposition Transcript of Michael Hotaling (Dec. 2, 2021) ("Hotaling Tr.") (relevant excerpts attached as Exhibit 4) at 11-20 (discussing settlement payment and treatment of Chartered Organizations); 181-187 (drafting and negotiation of the Term Sheet); 189-201 (buyback of Hartford Policies); 194-199 (discussion of terms relating to releases regarding Chartered Organizations, judgment reduction provisions, and administrative claims).

Sheet into evidence and asked Mr. Hotaling about it.[10]

Mr. Hotaling also testified extensively concerning the policies Hartford issued to BSA and the Local Councils. Mr. Hotaling testified regarding whether Hartford policies provided primary or excess coverage as well as about who is an insured, the policy limits, and how those limits might apply to abuse claims.[11]

Moreover, the TCC and RCAHC have already been provided extensive evidence of Hartford's known policies that are covered by its settlement. Hartford produced its known policies issued to BSA or the Local Councils in October 2021. In addition, prior to the deposition, Hartford and the TCC reached agreement on a stipulation that identified the policies that Hartford issued (or allegedly issued) to BSA and the Local Councils, as well as the essential terms of the known Hartford policies.[12] The parties had a full opportunity to ask questions regarding which Hartford policies provide coverage for Abuse Claims, or any other issues concerning the Hartford policies. There is no basis for Hartford to present a witness on these topics a second time.

<u>Topics Seeking Testimony Concerning All Policies Issued to Roman Catholic Entities are Oppressive and Unduly Burdensome</u>.

A number of other topics in the Notices would be oppressive, if not impossible, for Hartford to present for deposition because they would require Hartford to perform an impossibly broad search, and then to educate a witness regarding the results of that search:

<u>RCAHC Topic No. 8</u>: All policies of insurance issued to Roman Catholic Entities.

<u>RCHAC Topic No. 12</u>: Which policies of insurance issued by any Settling Insurer [Century Term Sheet] to any Roman Catholic Entity cover Abuse Claims against insureds and co-insureds.

The search and preparation that would be required to prepare a witness far outweighs the relevance – if any – of these topics. The Plan defines "Roman Catholic Entities" to mean "each

---

[10] *See* Ex. 4, Hotaling Tr. 10-29.
[11] *Compare* Ex. 1, RCAHC Notice Topic Nos. 6, 7, 10 and 11 *with* Ex. 4, Hotaling Tr. 86-88 (discussing whether policies provided primary or excess coverage and whether policies were subject to aggregate limits); 91-93 (discussing per person and per occurrence policy limits); 113-115 (discussing exhaustion of policy limits); 124-125 (discussing alleged additional unconfirmed policies); 144-146 (discussing insureds under certain policies); 151-159 (discussing policy limits, including aggregate limits); 265-267 (discussing aggregate limits and number of occurrences).
[12] The stipulation was introduced as an exhibit at Mr. Hotaling's deposition. For convenience of the parties, the stipulation identified, by Bates range, where to locate each of the known Hartford policies in Hartford's document production. *See* Stipulation Between the Official Committee of Tort Claimants and Hartford Regarding the Existence and Terms and Conditions of the Hartford Policies and Related Matters (attached as Exhibit 5).

and every (i) Roman Catholic parish, school, diocese, archdiocese, association, of religious or lay persons in the United States or its territories that . . . provided any support in connection with Scouting activities in any way . . . ; (ii) all entities listed or eligible to be listed in the Official Catholic Directory since 1910; (iii) all Representatives of the foregoing, including their attorneys and the Roman Catholic Ad Hoc Committee."[13]  Today there are more than 190 Catholic dioceses, 17,000 Catholic parishes and thousands of Catholic schools.  It would be prohibitive to search for policies for even a small percentage of these entities, and searching back over a century to locate policies issued to predecessors or former entities is obviously not possible. Nor has the RCAHC offered any plausible basis for creating such a burden.

    Topic No. 9 is equally overbroad and abusive:

> RCAHC Topic No. 9:  Which Abuse Claims against insureds and co-insureds covered under insurance policies issued by any Settling Insurer [as made applicable by paragraph 5 of the Century Term Sheet] will be channeled under the Settling Insurer Policy Injunction or the Channeling Injunction [as defined in the Plan].

To prepare to respond to Topic No. 9, a witness would need to know: (i) the facts of every Abuse Claim, (ii) the terms of all BSA Insurance Policies issued by any insurer, not just Hartford, and (iii) the operation of the Channeling Injunction (which was not drafted by Hartford).  Hartford is not obligated to produce a witness to testify on a topic that is so abusively overbroad.

<u>Topics Concerning Plan Documents and Settlements That Hartford Did Not Negotiate or Prepare are Not Properly Directed to Hartford.</u>

    The Notice is also improper because a number of topics seek testimony concerning documents that Hartford had no role in drafting or preparing:

> RCAHC Topic No. 2:  The treatment of Claims of Chartered Organizations under the Plan and Trust Distribution Procedures.

> RCAHC Topic No. 13:  The scope of the Channeling Injunction for claims against Participating Chartered Organizations. . . .

> TCC Topic No. 1:  The BSA Plan Settlements, including the Century and Chubb Companies Term Sheet, the TCJC Settlement, the Hartford Insurance Settlement, the Zurich Settlement and the United Methodist Settlement.

---

[13]    *See* Second Modified Firth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC, Art. I, Def. 241 [D.I. 7832].

Hartford had no role in preparing the Plan (including the Channeling Injunction) or the TDPs. Nor did Hartford have any role in negotiating or preparing the TCJC Settlement, the Century Term Sheet, the Zurich Settlement or the Methodist Settlement.

Hartford consequently has no knowledge regarding facts concerning the Plan, its treatment of Chartered Organizations, the scope of the Channeling Injunction or the various settlement agreements beyond Hartford's understanding from reading the same publicly-filed versions of these documents that are equally available to RCAHC and the TCC. If the RHAHC or the TCC has questions concerning these topics, they should be directed to the parties involved in drafting them. But, with respect to Hartford, these topics are not reasonably calculated to lead to the discovery of admissible or otherwise relevant evidence and should be stricken.

<u>The Remaining Topics in the TCC Notice Are Privileged, Not Relevant and the TCC Previously Agreed Not to Pursue Them</u>.

The remaining topics in the TCC Notice are equally improper:

<u>TCC Topic No. 3</u>: All drafts of any settlement agreement relating to the Plan Settlements, whether final, signed or not.

<u>TCC Topic No. 4</u>: Any Indirect Abuse Claim asserted against the Debtors, including, but not limited to, the value or amount of such Indirect Abuse Claim.

<u>TCC Topic No. 5</u>: Your determination Concerning who would testify on Your behalf in response to this Deposition Notice.

All of these are topics that the TCC previously agreed it would not pursue. As part of the consideration for the pre-deposition stipulation between Hartford and the TCC, the TCC expressly agreed that its deposition of Hartford would be limited to agreed-upon topics following the parties' meet and confer discussions.[14] Each of these topics was part of the TCC's initial notice, and the TCC agreed not to pursue them in response to Hartford's objections.[15]

But these topics would be improper in any event. With respect to Topic No. 3, Hartford has informed the TCC (and the TCC has acknowledged) that any drafts of the Hartford Term Sheet (or settlement) were exchanged in mediation, and are protected by privilege. And Hartford was not involved in negotiating any other settlement agreement. Topic No. 4 is not relevant because Hartford is releasing its Indirect Abuse Claim as part of the settlement (and Hartford is not a proper party for discovery on Indirect Abuse Claims that others might assert). And finally, as Hartford has previously informed the TCC, Topic No. 5 seeks information that is privileged

---

[14] *See* Ex. 5, Stipulation ¶ 6.
[15] *See* Ex. 3, First TCC Dep Notice Topic Nos. 6, 7, and 35.

because Hartford's determination was made through communications with counsel (and is not relevant in any event).

Hartford respectfully requests that the Court enter an order quashing the Notices and determining that Hartford need not appear for a second deposition regarding Plan confirmation issues.

Respectfully submitted,

James P. Ruggeri