Three Embarcadero Center, 26th Floor, San Francisco, California 94111 ▪ p 415 986-2800 ▪ f 415 986-2827



Mark D Plevin
415.365.7446
202.624.2801
mplevin@crowell.com

January 27, 2022

**BY CM/ECF**

Hon. Laurie Selber Silverstein
Chief Judge, U.S. Bankruptcy Court, District of Delaware
824 North Market Street, 6th Floor
Wilmington, Delaware 19801

      Re:      *In re Boy Scouts of America*, No. 20-10343: Zurich's motion to quash and/or limit the TCC's Rule 30(b)(6) deposition notice to Zurich

Dear Judge Silverstein:

      American Zurich Insurance Company, American Guarantee and Liability Insurance Company, and Steadfast Insurance Company (collectively, "Zurich"), hereby move, pursuant to Bankruptcy Rules 7026, 7030, and 9014, Rules 26(c) and 30(d) of the Federal Rules of Civil Procedure, and Local Rule 7030-1(c), to quash a Rule 30(b)(6) deposition notice issued to them by the TCC on January 13, 2022 (the "Notice," Exhibit A hereto).

      Specifically, Zurich moves to quash Topics 4-6, 12-13, and 31 in the Notice. During meet-and-confer discussions, the TCC withdrew all of the other topics (Nos. 1-3, 7-11, 14-30, and 32).

      Zurich's motion is based on the following grounds:

      *Topic 4*: Topic 4 asks Zurich to provide testimony on "The BSA Plan Settlements, including . . . the Zurich Settlement. . . ." It is defective on several grounds. First, it fails to meet the requirement in Rule 30(b)(6) that a topic "describe ***with reasonable particularity*** the matters for examination" (emphasis added), because "[t]he BSA Plan Settlements" is too amorphous and not sufficiently specific. "An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task" and may "verg[e] on taking the deposition of counsel."[1]

      Second, this topic is overbroad, improper, unduly burdensome, and disproportionate to the needs of the case because it asks Zurich to provide testimony on settlements involving other parties, which Zurich knows nothing about.

      Third, this topic is defective because any questions asking a Zurich witness to summarize or analyze the terms of the Zurich Term Sheet, or to interpret its provisions or apply them to actual or hypothetical facts, would improperly call for legal conclusions and contention

---

[1] Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2103 (3d ed.), quoting *Reed v. Bennett*, 193 F.R.D. 689 (D. Kan. 2000).

testimony. However, as this Court ruled in *Imerys*, 30(b)(6) depositions must be "limited to facts and not legal conclusions."[2] "[D]epositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means."[3] The bar on using Rule 30(b)(6) depositions to obtain contention testimony or legal conclusions reflects the fact that such testimony would necessarily invade attorney work-product and privilege. Accordingly, Rule 30(b)(6) cannot be used "to explore opposing counsel's thought processes as to which facts support these contentions (and which do not), or what inferences can be drawn from the evidence that has been assembled so far."[4] Courts routinely grant protection against Rule 30(b)(6) topics seeking contention testimony or testimony regarding legal conclusions.[5] These principles render Topic 4 inappropriate and objectionable.

Fourth, any questioning under Topic 4 would invade various privileges. The Zurich Term Sheet was negotiated in a mediation. Zurich's discussions with the mediator or with other mediation parties are be protected from disclosure under the mediation privilege. Further, any testimony about communications between Zurich and its counsel about the Zurich Settlement would be privileged.

In short, this topic is completely improper.

*Topic 5*: This topic states, "The identity of all Insurance Policies included in the Zurich Settlement." The request for testimony on the "identity" of policies is vague, ambiguous, and overbroad because it fails to "describe with reasonable particularity the matters for examination," as required by Rule 30(b)(6).[6] In any event, Exhibit A to the Zurich Term Sheet identifies all of the known policies within the Term Sheet's definition of "Zurich Insurer Policies." Thus, no testimony is needed on this topic, making this topic unduly burdensome and

---

[2] *See* Transcript of June 22, 2021 Telephonic Hearing, *In re Imerys Talc America, Inc.*, at 241:5-7. *See also* Transcript of November 19, 2021 Hearing, *In re Boy Scouts of America*, at 132:24-133:3.

[3] *JP Morgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002).

[4] *FTC v. Cyberspy Software, LLC*, 2009 WL 2386137, at *4 (M.D. Fla. July 31, 2009).

[5] *See, e.g.*, *Kinetic Concepts, Inc. v. Convatec Inc.*, 268 F.R.D. 255 (M.D.N.C. 2010) (granting motion for protective order as to Rule 30(b)(6) deposition topic seeking contention testimony); *Captain Shontel Nicholas v. City of New York*, 2009 U.S. Dist. LEXIS 4366, at *1-2 (E.D.N.Y. Jan. 22, 2009) (eliciting support for contentions "is not the purpose of Rule 30(b)(6), which is to discover facts, not contentions or legal theories"); *King Pharmaceuticals, Inc. v. Eon Labs, Inc.*, 2008 WL 5111005, at *1 (E.D.N.Y. Dec. 4, 2008) (seeking elaboration on legal issues "is an improper use of Rule 30(b)(6) depositions, which 'are designed to discover facts, not contentions or legal theories'").

[6] *See, e.g.*, *Unzicker v. A.W. Chesterton Co.*, 2012 WL 1966028, at *5-6 (E.D. Pa. May 31, 2012) (quashing a Rule 30(b)(6) deposition notice because the topics were not presented "with reasonable particularity" and were "overbroad").

Judge Silverstein
January 27, 2022
Page 3

not proportional to the needs of the case.

*Topic 6*: This topic seeks testimony on "All drafts of any settlement agreement relating (sic) the Zurich Settlement, whether final, signed or not." Because all drafts of the Zurich Term Sheet are protected by mediation privilege, this topic is improper. It is also not relevant; the TCC has the final, executed Zurich Term Sheet, which by its terms (*see* ¶ 26(a)) supersedes any drafts.

*Topic 12*: This topic requests testimony on "Any actual or proposed settlements of Your coverage obligations under the Applicable Insurance Policies." During the meet-and-confer, the TCC advised that it was narrowing this topic from "Applicable Insurance Policies" to "Zurich policies." Even so, this topic is also overbroad because it fails to "describe with reasonable particularity the matters for examination." Further, any questions to a Zurich witness on this topic would necessarily invade mediation privilege.

*Topic 13*: Topic 13 seeks information on "[p]ayments (or lack thereof) for defense costs and/or indemnity that You made Concerning any Abuse Claims." This topic has no conceivable relevance to whether Zurich's settlement meets the requirements of Rule 9019 and § 363(b) and (f), and it is not proportional to the needs of the case. This topic squarely focuses on Zurich's pre-petition claim handling, a subject this Court has repeatedly held, in this case and in *Imerys*, is not a proper subject of discovery from insurers. In *Imerys*, this Court ruled that deposition discovery of insurers regarding their pre-petition claims handling was improper.[7] The Court reiterated that point in granting Zurich's earlier motion to quash in this case, noting that testimony from insurers' employees about their pre-petition claims-handling has "minimal, minimal relevant evidence, if any."[8]

*Topic 31*. Topic 31, which asks Zurich to provide testimony concerning its determination regarding who would testify in response to the Notice, seeks protected attorney work-product and privileged communications, pure and simple. Zurich should not be required to post a witness on this topic.

\*   \*   \*

For these reasons, Zurich requests that the Court quash the Notice.

---

[7] Transcript of June 22, 2021 Telephonic Hearing, *In re Imerys Talc America, Inc.*, at 237:20-22 (emphasis added) (the Court, stating: "I think if the insurance company has paid claims **and the debtor doesn't have that information for some reason**, you can get that information" from the insurance company), 237:24-238:3 (the Court, stating: "the topic of handling is a huge – is a huge topic. . . . **I'm not going to permit that**") (emphasis added).

[8] *See* Transcript of November 19, 2021 Hearing, *In re Boy Scouts of America*, at 132:19-21


Sincerely yours,

*/s/ Mark D. Plevin*

Mark D. Plevin
CROWELL & MORING LLP


*/s/ Robert D. Cecil, Jr.*
Robert D. Cecil, Jr. (No. 5317)
TYBOUT, REDFEARN & PELL
501 Carr Road, Suite 300
Wilmington, Delaware 19809
Phone: (302) 658-6901
E-mail: rcecil@trplaw.com


906453981.02


## Local Rule 7026-1 (d) Certification

I hereby certify that a reasonable effort was made to reach agreement with the opposing parties on the matters set forth in the motion, through an exchange of e-mails between January 18 and 27, 2022, in a January 18, 2022 telephone call, and in a hybrid in-person and telephonic meeting on January 19, 2022.

*/s/ Mark D. Plevin*
Mark D. Plevin
CROWELL & MORING LLP


*/s/ Robert D. Cecil, Jr.*
Robert D. Cecil, Jr. (No. 5317)
TYBOUT, REDFEARN & PELL

Judge Silverstein
January 27, 2022
Page 5

**Exhibit 1 – Topics at Issue**

Topic 4: "The BSA Plan Settlements, including the Century and Chubb Companies Term Sheet, the TCJC Settlement, the Hartford Insurance Settlement, the Zurich Settlement and the United Methodist Settlement."[9]

Topic 5: "The identity of all Insurance Policies included in the Zurich Settlement."

Topic 6: "All drafts of any settlement agreement relating the Zurich Settlement, whether final, signed or not."

Topic 12: "Any actual or proposed settlements of Your coverage obligations under the Applicable Insurance Policies."

Topic 13: "Payments (or lack thereof) for defense costs and/or indemnity that You made Concerning any Abuse Claims."

Topic 31: "Your determination Concerning who would testify on Your behalf in response to this Deposition Notice."

---

[9] Topic 4 in the TCC's October, 2021 notice to the Zurich Insurers stated: "The BSA Plan Settlements, including the TCJC Settlement and the Hartford Insurance Settlement."

EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Re Docket Nos. 2618, 6438, 6443, 6445 |

**THE OFFICIAL COMMITTEE OF TORT CLAIMANTS' NOTICE OF
DEPOSITION PURSUANT TO RULE 30(b)(6) OF THE FEDERAL RULES
OF CIVIL PROCEDURE OF AMERICAN ZURICH INSURANCE COMPANY;
AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY; AND
STEADFAST INSURANCE COMPANY RELATED**

PLEASE TAKE NOTICE THAT pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable to these proceedings by Rules 9014 and 7030 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Official Committee of Tort Claimants (the "TCC") to Boy Scouts of America and Delaware BSA, LLC (the "Debtors") shall take the deposition of American Zurich Insurance Company; American Guarantee and Liability Insurance Company; and Steadfast Insurance Company (collectively, "Zurich") by the person(s) most qualified to testify on Zurich's behalf with respect to the topics described in **Exhibit A** hereto.

The deposition will take place on January 21, 2022 at 9:00 a.m. Eastern Time or at such other date and time as the parties may agree. The deposition will proceed remotely, subject to the following guidelines:

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

1. Counsel for the parties and their clients will be participating from various, separate locations;

2. The court reporter will administer the oath to the witness remotely;

3. The witness will be required to provide government-issued identification satisfactory to the court reporter, and this identification must be legible on camera;

4. Each participating attorney may be visible to all other participants, and their statements will be audible to all participants;

5. All exhibits will be provided simultaneously and electronically to the witness and all participants;

6. The court reporter will record the testimony;

7. The deposition may be recorded electronically; and

8. Counsel for all parties will be required to stipulate on the record:

    a. Their consent to this manner of deposition; and

    b. Their waiver of any objection to this manner of deposition, including any objection to the admissibility at trial of this testimony based on this manner of deposition.

   *[Remainder of page intentionally left blank]*

Dated: January 13, 2022

        PACHULSKI STANG ZIEHL & JONES LLP

        */s/ James E. O'Neill*
        Richard M. Pachulski (CA Bar No. 90073)
        (admitted *pro hac vice*)
        Alan J. Kornfeld (CA Bar No. 130063)
        (admitted *pro hac vice*)
        Debra I. Grassgreen (CA 169978)
        (admitted *pro hac vice*)
        Iain A.W. Nasatir (CA Bar No. 148977)
        (admitted *pro hac vice*)
        James E. O'Neill (DE Bar No. 4042)
        919 North Market Street, 17th Floor
        P.O. Box 8705
        Wilmington, DE 19899-8705 (Courier 19801)
        Telephone: (302) 652-4100
        Facsimile: (302) 652-4400
        Email: rpachulski@pszjlaw.com
        akornfeld@pszjlaw.com
        dgrassgreen@pszjlaw.com
        inasatir@pszjlaw.com
        joneill@pszjlaw.com

        -and-

        PASICH LLP

        Kirk Pasich (CA Bar No. 94242) *(admitted pro hac vice)*
        10880 Wilshire Boulevard, Suite 2000
        Los Angeles, California 90024
        Telephone: (424) 313-7850
        KPasich@PasichLLP.com

        -and-

        Jeffrey L. Schulman (NY Bar No. 3903697) *(admitted pro hac vice)*
        286 Madison Avenue, Suite 401
        New York, New York 10017
        Telephone: (212) 686-5000
        JSchulman@PasichLLP.com

        *Counsel for the Official Committee of Tort Claimants*

B029.001/362064.1

# EXHIBIT A TO THE NOTICE
# OF DEPOSITION OF ZURICH

## **DEFINITIONS**

For the purposes of this Notice of Deposition, the following Definitions shall apply:

1. The terms "<u>all</u>," "<u>any</u>," and "<u>each</u>" shall each be construed as encompassing any and all. The singular shall include the plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive; and the term "including" means "including without limitation." The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense.

2. Capitalized terms not otherwise defined herein shall have the same meanings set forth in the Plan.

3. "<u>Abuse</u>" shall have the meaning provided in the Plan.

4. "<u>Abuse Claim</u>" means a liquidated or unliquidated Claim against one or more Abuse Parties that is attributable to, arises from, is based upon, relates to, results from, or is otherwise Concerned with, in whole or in part, directly, indirectly, or derivatively, alleged Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based on misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory, including any theory based on public policy or any act or failure to act by an Abuse Party or any other Person for whom any Abuse Party is alleged to be responsible. The term "Abuse Claim" includes Direct Abuse Claims and Indirect Abuse Claims.

5. "Abuse Claimant" shall mean the party asserting an Abuse Claim and their attorneys, advisors, agents, representatives, and experts.

6. "Abuse Party" means, individually and collectively, (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Chartered Organizations; (f) Insurance Companies; or (g) all of any of the foregoing's Persons' Representatives.

7. "Applicable Insurance Policies" shall mean (a) any Insurance Policy that You sold to the Debtors and (b) any Insurance Policy that You sold to any Abuse Party that provides, may provide, or has been alleged to provide coverage for any Abuse Claim.

8. "BSA Plan Settlement" means any settlement, whether incorporated into the Plan or presented for approval pursuant to Bankruptcy Rule 9019, between the Debtors and any other Entity (including, but not limited to, an Insurance Company, Chartered Organization, or Local Council), including, but not limited to, the Hartford Insurance Settlement, the Century Settlement, the Zurich Settlement, the TCJC Settlement and the United Methodist Settlement.

9. "Century and Chubb Companies Term Sheet" shall mean Exhibit A to the Seventh Mediator's Report [Docket No. 7741], filed on December 13, 2021.

10. "Century Settlement" means the Century and Chubb Term Sheet attached to the Seventh Mediator's Report filed with the Court on December 14, 2021 [Docket No. 7772] and any documentation of the settlement embodied therein.

11. "Chapter 11 Cases" shall mean the above-captioned chapter 11 cases of Boy Scouts of America and Delaware BSA, LLC pending before the United States Bankruptcy Court for the District of Delaware.

12. "Chartered Organization" shall have the meaning provided in the Plan.

13. "Claim" means any "claim," as defined in section 101(5) of the Bankruptcy Code.

14. "Concerning" means relating to, evidencing, supporting, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, referencing, discussing, indicating, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

15. "Debtors" means, collectively or individually, as context requires and to encompass responsive documents Boy Scouts of America and Delaware BSA, LLC, and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

16. "Documents" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all Documents and information in Your possession, custody, or control, and includes: all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda, transcripts, tapes, or other voice recordings, and all other Documents and tangible things, including booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, print- outs, and all other data, whether recorded by electronic or other means, and all drafts thereof. If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on

any of the pages thereof, then each such non-identical copy is a separate Document and must be produced. "Documents" always includes Communications.

17. "Hartford Insurance Settlement" shall have the meaning provided in the Amended Plan.

18. "Indirect Abuse Claim" shall have the meaning provided in the Amended Plan.

19. "Insurance Company" shall have the meaning provided in the Plan.

20. "Insurance Policy" shall have the meaning provided in the Plan, including all rights and benefits thereunder, and the proceeds thereof.

21. "IV Files" shall mean any Documents that identify individuals associated with the Debtors accused of Abuse, including those records and files referred to as "ineligible volunteer" or "perversion" files.

22. "Local Councils" shall have the meaning provided in the Plan.

23. "Perpetrator" shall have the meaning provided in the Plan.

24. "Petition Date" shall mean February 18, 2020.

25. "Plan" shall mean the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6443], as such Document may be amended, supplemented, or modified from time to time.

26. "Prepetition" shall mean occurring prior to the Petition Date.

27. "Proof of Claim" shall have the meaning provided in the Plan.

28. "Settlement" shall mean any Prepetition settlement or other resolution of an Abuse Claim.

29. "Settlement Trust" shall have the meaning provided in the Plan.

30. "TCC" shall mean the Official Committee of Tort Claimants to Boy Scouts of America and Delaware BSA, LLC.

31. "TCJC Settlement" shall have the meaning provided in the Plan.

32. "Trust Distribution Procedures" shall have the meaning provided in the Amended Plan.

33. "Verdict" shall mean any Prepetition verdict, judgment, award or decision of a court, arbitrator, mediator or similar tribunal Concerning an Abuse Claim.

34. "You" or "Your" and variants thereof mean Zurich.

35. "Zurich" means American Zurich Insurance Company; American Guarantee and Liability Insurance Company; and Steadfast Insurance Company, individually and collectively, and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

36. "Zurich Policies" shall mean all Insurance Policies sold by Zurich to the Debtors.

37. "Zurich Settlement" means the term sheet attached as Exhibit A to the Ninth Mediator's Report [Docket No. 7928], filed with the Court on December 22, 2021 and any documentation of the Settlement embodied therein.

## TOPICS

**Topic No. 1.**

The Plan, including, but not limited to, the effect of the Plan on Your rights or obligations (including without limitation inter-insurer contribution claims).

**Topic No. 2.**

The Settlement Trust, including, but not limited to, the effect of the Settlement Trust on Your rights or obligations (including without limitation inter-insurer contribution claims).

**Topic No. 3.**

The Trust Distribution Procedures.

**Topic No. 4.**

The BSA Plan Settlements, including the Century and Chubb Companies Term Sheet, the TCJC Settlement, the Hartford Insurance Settlement, the Zurich Settlement and the United Methodist Settlement.

**Topic No. 5.**

The identity of all Insurance Policies included in the Zurich Settlement.

**Topic No. 6.**

All drafts of any settlement agreement relating the Zurich Settlement, whether final, signed or not.

**Topic No. 7.**

The Abuse Claims, including, but not limited to, (a) all Analyses of Abuse Claims; (b) the value of Abuse Claims; (c) all estimates of the numbers of Survivors and/or Perpetrators; and (d) insurance coverage for Abuse Claims.

**Topic No. 8.**

Any Indirect Abuse Claim You assert or may assert against the Debtors, including, but not limited to, the value or amount of such Indirect Abuse Claim.

**Topic No. 9.**

All Insurance Policies that provide, potentially provide, or have been alleged to provide coverage for Abuse Claims, including, but not limited to, the Applicable Insurance Policies.

**Topic No. 10.**

Reinsurance for the Applicable Insurance Policies.

**Topic No. 11.**

Your Liabilities Concerning each Insurance Policy that the Debtors are proposing or may propose to contribute to the Settlement Trust under the Plan.

**Topic No. 12.**

Any actual or proposed settlements of Your coverage obligations under the Applicable Insurance Policies.

**Topic No. 13.**

Payments (or lack thereof) for defense costs and/or indemnity that You made Concerning any Abuse Claims.

**Topic No. 14.**

Your denial or reservation of rights under any Applicable Insurance Policies Concerning any Abuse Claims, including, but not limited to, (a) reasons and bases for Your decision to deny coverage or reserve rights for the Abuse Claims and (b) facts upon which You based Your decision to deny coverage or reserve rights for the Abuse Claims.

**Topic No. 15.**

Settlements of Abuse Claims.

**Topic No. 16.**

Verdicts in favor of Abuse Claimants.

**Topic No. 17.**

Verdicts in favor of the Defense Concerning Abuse Claims.

**Topic No. 18.**

Any reserves that You contemplated, established, set, maintained, and/or changed Concerning Abuse Claims.

**Topic No. 19.**

The Zurich Policies, including, but not limited to, (a) any obligation You may have to indemnify any liabilities arising under the Zurich Policies; and (b) payment, *vel non*, of liabilities arising under the Zurich Policies.

**Topic No. 20.**

Any Claims You assert against the Debtors, including any Claims described in any Proof of Claim.

**Topic No. 21.**

Your handling, processing, adjusting, review, investigation, evaluation, acceptance, denial, reservation of rights, or other response to sexual abuse claims, including the Abuse Claims, under any Insurance Policy.

**Topic No. 22.**

Your policies, practices, and procedures Concerning valuing or evaluating sexual abuse claims, including Abuse Claims, that were filed after the expiration of any applicable statute of limitations or were filed in jurisdictions where the statute of limitations with respect to sexual abuse claims may change.

**Topic No. 23.**

All discussions of the Debtors, the Insurance Policies sold by You to the Debtors, Abuse Claims, or the Debtors' claims for insurance coverage under Insurance Policies (whether or not regarding the Abuse Claims) of Your board of directors or managers, any committee or subcommittee thereof, any task force or working group thereof, or any of Your other executive task forces or working groups.

**Topic No. 24.**

Your interpretation of the Insurance Policies You sold to the Debtors and application thereof to claims for coverage for Abuse Claims.

**Topic No. 25.**

Your investigation, supervision, adjustment, and handling of Abuse Claims, including the existence or scope of insurance coverage for the Abuse Claims.

**Topic No. 26.**

The underwriting of the Insurance Policies You sold to the Debtors.

**Topic No. 27.**

The negotiations and drafting of (a) the Insurance Policies You sold to the Debtors and (b) any predecessor Insurance Policies issued by any of Your affiliates.

**Topic No. 28.**

The drafting of the forms used in drafting the Insurance Policies You sold to the Debtors or any predecessor Insurance Policies issued by any of Your affiliates.

**Topic No. 29.**

Your interpretation of any terms or conditions of the Insurance Policies You sold to the Debtor.

**Topic No. 30.**

All Documents that You produced to the TCC or any other Person in connection with the Bankruptcy Cases.

**Topic No. 31.**

Your determination Concerning who would testify on Your behalf in response to this Deposition Notice.

**Topic No. 32.**

Your document retention, storage, filing, and destruction procedures in effect from January 1, 2010 through the present.