Three Embarcadero Center, 26th Floor, San Francisco, California  94111 ▪ p415 986-2800 ▪ f415 986-2827



Mark D Plevin
415.365.7446
202.624.2801
mplevin@crowell.com

January 27, 2022

**BY CM/ECF**

Hon. Laurie Selber Silverstein
U.S. Bankruptcy Court for the District of Delaware
824 North Market Street, 6th Floor
Wilmington, Delaware 19801

        Re:    *In re Boy Scouts of America*, No. 20-10343:  Zurich's motion to compel
                the TCC to produce documents and respond to interrogatories

Dear Judge Silverstein:

      American Zurich Insurance Company, American Guarantee and Liability Insurance
Company, and Steadfast Insurance Company (collectively, "Zurich") move this Court, pursuant
to Bankruptcy Rules 7037 and 9014, Federal Rule of Civil Procedure 37(a), and Local Rule 7026-
1, to compel the Official Committee of Tort Claimants (the "TCC") to respond to
Interrogatories 1 and 2 in Zurich's First Set of Interrogatories and to produce documents
responsive to Request 6 in Zurich's First Set of Requests for Production of Documents
(collectively, the "Discovery Requests").[1]

      The TCC has not complied with the majority of the Discovery Requests.  The TCC has
indicated it will not presently produce any documents in response to nine of Zurich's 13
requests for production, and it declined to respond to any of Zurich's four interrogatories.  This
motion, however, concerns only two interrogatories and one document request.[2]

      Zurich served the Discovery Requests on the TCC on December 29, 2021.  The TCC
responded and objected on January 7, 2022, repeatedly stating that it did not author or negotiate
the Zurich Term Sheet,[3] it is taking discovery to determine if it has any objections to the

---

[1]     The TCC's responses to Zurich's interrogatories and document requests, which include the
actual discovery requests, are attached as Exhibits A and B, respectively.

[2]     Zurich and the TCC have mutually agreed to allow each other to depose any fact or expert
witnesses designated by them regarding Zurich's settlement with Debtors, the FCR, and the Coalition,
notwithstanding the January 28 deadline for such depositions.  Zurich therefore is not presently moving
with respect to its discovery requests asking the TCC to identify its fact and expert witnesses, but
reserves the right to do so later if necessary.

[3]     "Zurich Term Sheet" means the document titled "Settlement Term Sheet" docketed at Dkt. No.
7928-1.  "Zurich Settlement" refers to the settlement described in the Zurich Term Sheet.

Judge Silverstein
January 26, 2022
Page 2

settlement, and it is premature to require the TCC to disclose if it objects and why. These objections lack merit.

Whether the TCC authored or negotiated the Zurich Term Sheet is irrelevant and an improper objection to these particular requests. The TCC can state the reasons it is presently planning to object to the Zurich Settlement and can modify or supplement its responses later, as and if necessary. And given the compressed discovery schedule in this case, it was not premature for Zurich to seek this discovery when it did. These Discovery Requests were served on the deadline for serving discovery related to settlements; Zurich could not have waited any longer to serve these Discovery Requests. Had it done so, the TCC undoubtedly would have complained that the Discovery Requests were served after the deadline. Last, the TCC has not supported its privilege objections and has not provided a log supporting its claims of privilege.

Thus, Zurich respectfully requests that the Court compel the TCC to produce documents and information responsive to the Zurich Insurers' Discovery Requests and order the TCC to produce a privilege log for any documents as to which it claims privilege.

## I.    Interrogatories 1 and 2 are timely, proper, and permitted under the Federal Rules.

Interrogatory 1 asks the TCC to "State and describe in detail all of Your objections to the Zurich Settlement or the Zurich Term Sheet," and Interrogatory 2 asks the TCC, "If you contend that the Zurich Term Sheet does not satisfy the standards for 11 U.S.C. § 363 or Federal Rule of Bankruptcy Procedure 9019, state the basis for its contention(s)." The TCC objects to both interrogatories because it did not "author" and is not "proposing" the Zurich Term Sheet or Zurich Settlement and because each interrogatory "seeks legal conclusions" or "an answer to a contention interrogatory." The TCC also relies on attorney-client, common interest, and attorney work product privilege.

The objection that these interrogatories "improperly seek[ ] legal conclusions or an answer to a contention interrogatory" is a true head-scratcher. Contention interrogatories seeking legal conclusions, and the application of law to fact, are entirely proper. Rule 33(a)(2) expressly says so: "An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." Not surprisingly, courts acknowledge that contention interrogatories that "seek to clarify the basis for or scope of an adversary's legal claims" are "a perfectly permissible form of discovery, to which a response ordinarily would be required."[4] Consistent with this rule, the Delaware district court has acknowledged that "[a]n interrogatory may properly inquire into a party's contentions in the suit."[5]

---

[4]    *Starcher v. Corr. Med. Sys., Inc.*, 144 F.3d 418, 421 n.2 (6th Cir. 1998).

[5]    *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 157 (D. Del. 1977).

Judge Silverstein
January 26, 2022
Page 3

In particular, the TCC should not be permitted to evade answering Zurich's Interrogatory 2, given that the TCC served almost the exact same interrogatory on Zurich, which Zurich answered. The TCC's Interrogatory No. 2 to Zurich stated, "If you contend that the Zurich Term Sheet satisfies the standards for 11 U.S.C. § 363, Federal Rule of Bankruptcy Procedure 9019(b), and/or 11 U.S.C. §1129(a)(7), state the basis for such contention(s)." The only difference in the two interrogatories is that the TCC's interrogatory to Zurich used the words "satisfies" and "such contention(s)" while Zurich's interrogatory to the TCC used the words "does not satisfy" and "its contention(s)," and did not refer to §1129(a)(7). After asserting objections, Zurich provided a fulsome answer that spanned three pages.[6] Having propounded the mirror-image interrogatory to Zurich, the TCC should be compelled to provide an answer to Zurich's Interrogatory 2.

It is also not "premature" for the TCC to tell Zurich if it objects to the Zurich Settlement or Zurich Term Sheet and, if so, why. The Zurich Term Sheet was filed on the docket on December 22, 2021. The TCC has had over three weeks to determine if it will object. Additionally, pursuant to the Court's scheduling order,[7] Zurich timely served this discovery to the TCC on December 29, 2021—the final day to serve settlement-related discovery. Zurich could not have waited any longer to serve this discovery. Had it done so, the TCC undoubtedly would have objected that Zurich failed to serve the discovery by the applicable deadline. And with trial less than a month away, such discovery requests are surely timely now.

## II.    Document Request 6, seeking the production of documents regarding the factual basis for a claim made by the TCC's counsel in open court, must be responded to notwithstanding any claims of privilege.

Document Request 6 asks the TCC to produce "All Documents supporting the statement by Your counsel, Mr. Pachulski, that the amount of the Zurich Settlement 'is 50 percent less than we thought the settlement should have been, based on our insurance analysis and our special counsel's analysis' (Transcript of December 21, 2021 Hearing at 61:1-3)."

The TCC objected to this request on the basis that it seeks information protected by the attorney-client privilege, the attorney work-product rule, or the common interest doctrine. However, by making the quoted statement in open court, TCC counsel waived any privilege that otherwise might apply to this information. Other courts have, in similar circumstances, found that counsel's disclosure of legal advice in open court waived privilege.

For example, in *Sprint Communications*, Sprint's counsel had argued, in opening statement in another trial involving the same patents, "that Sprint believed that Vonage had infringed 43

---

[6]    *See* Exhibit C hereto.

[7]    *See* Dkt. No. 7996 at 2.

Judge Silverstein
January 26, 2022
Page 4

patents, a Sprint attorney had an outside law firm look at the issue, the law firm 'agreed.'"[8]  The district judge concluded that, "[b]y this statement, Sprint disclosed the substance of legal advice received from an outside law firm, namely that outside counsel agreed that Vonage had infringed. . . .  Thus Sprint did disclose protected information and did thereby waive the attorney-client privilege with respect to the subject matter of that information."[9]  The court thus ordered Sprint to produce all documents falling within the scope of the waiver as determined by the court.

Another example is *Munguia-Brown*, where the defendant, in opposing summary judgment, relied on a declaration that stated, "We also consulted with our outside counsel in California.  These inquiries confirmed that, under the circumstances, a 5% late fee was reasonable."[10]  The court concluded that "[t]his is a flat-out disclosure of the content of the attorney-client communications with outside counsel in California" that, "by itself, is enough to justify a subject matter waiver with respect to legal advice on the legality of the proposed late fee."[11]  The court therefore ordered the defendants "to produce all attorney-client communications within this subject that were withheld based on privilege."[12]

Mr. Pachulski's statement is a waiver under these precedents.  He told the Court that the amount of the Zurich Settlement "is 50 percent less than we thought the settlement should have been, **based on** our insurance analysis and **our special counsel's analysis**."[13]  By purposefully interjecting "special counsel's analysis" into his argument that the Zurich

---

[8]    *Sprint Comms. Co. L.P. v. Comcast Cable Comms.*, 2014 WL 3611665, at *3 (D. Kan. July 22, 2014).

[9]    *Id.*

[10]    *Munguia-Brown v. Equity Residential*, 2020 WL 3057502, at *2 (N.D. Cal. June 9, 2020).  The court also pointed to other disclosures of privileged information by the defendant, but thought the one quoted in the text was the most "direct."

[11]    *Id.*

[12]    *Id.* at *4.  *See also In re Welded Constr., L.P.*, 2021 WL 537406, at *6 (Bankr. D. Del. Feb. 15, 2021) ("Defendants cannot use [a] report as both a sword and a shield – Defendants cannot place the Audit at issue and claim that the Audit 'revealed wrongdoing' and then not give [Debtor] the requisite information to test the validity of those statements"); *CP Kelco U.S., Inc. v. Pharmacia Corp.*, 213 F.R.D. 176, 179 (D. Del. 2003) ("Having chosen to use the information offensively, any privilege [the party] might have claimed to defend the information from disclosure is, and remains, waived."); *In re Unitrin, Inc. Shareholders Litig.*, 1994 WL 507859, at *2 (Del. Ch. Sept. 7, 1994) (when parties "have introduced into the record the actual advice given to them on" an issue, "presumably to bolster their argument," it "would be unfair to allow [them] to select those parts of its communications with counsel that can be used in these proceedings, while at the same time invoking the attorney-client privilege to thwart" another party's efforts).

[13]    Transcript of December 21, 2021 Hearing at 61:1-3 (emphasis added).

Judge Silverstein
January 26, 2022
Page 5

settlement amount is low, any privilege attaching to special counsel's analysis was waived.[14]  In fairness, the TCC should be obliged to produce documents supporting the factual basis for the statement its counsel made in open court, notwithstanding any claim of privilege.

Zurich has asked the TCC for a privilege log that identifies these purportedly privileged documents, but TCC has not provided any such log.

## III.    The TCC is required to provide a privilege log to support its claims for privilege and work product protections.

The TCC has not provided any privilege log.  The Rules, however, require the TCC to provide a privilege log that is sufficient to allow Zurich "to assess the claim(s)" for privilege.[15] Thus, the Court should order the TCC to produce a log listing all documents withheld from production on the grounds of privilege.

*        *        *

For the foregoing reasons, Zurich requests that the Court grant this motion to compel and order the TCC to produce an appropriate privilege log.

---

[14]    *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 94 (W.D.N.Y. 2011) (internal quotations marks omitted) (it is "fundamental that voluntary disclosure by or on behalf of a party during judicial proceedings may waive the privilege as to the disclosed information as well as all the otherwise privileged information relating to the same subject-matter of the disclosed information"); *Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 152 (D.C. Cir. 1997) (party waived attorney-client privilege over redacted portions of its documents because it used the documents to support its claims).

[15]    *See* Fed. R. Civ. P. 26; Fed. R. Bankr. P. 7026.

Judge Silverstein
January 26, 2022
Page 6

Sincerely yours,

*/s/ Mark D. Plevin*
Mark D. Plevin
CROWELL & MORING LLP


*/s/ Robert D. Cecil, Jr.*
Robert D. Cecil, Jr. (No. 5317)
TYBOUT, REDFEARN & PELL
501 Carr Road, Suite 300
Wilmington, Delaware 19809
Phone: (302) 658-6901
E-mail: rcecil@trplaw.com

Judge Silverstein
January 26, 2022
Page 7

### *Local Rule 7026-1 (d) Certification*

I hereby certify that a reasonable effort was made to reach agreement with the opposing party on the matters set forth in the motion, through an exchange of e-mails between January 19 and 26, 2022.

/s/ *Robert D. Cecil, Jr.*
Robert D. Cecil, Jr. (No. 5317)
TYBOUT, REDFEARN & PELL

906460174.1

EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Re Docket Nos. 2295, 6215, 6443, 6445 |

**THE OFFICIAL COMMITTEE OF TORT CLAIMANTS'
OBJECTIONS AND RESPONSES TO ZURICH INSURERS' FIRST SET OF
INTERROGATORIES TO THE OFFICIAL COMMITTEE OF TORT CLAIMANTS**

Pursuant to Federal Rules of Bankruptcy Procedure 7026, 7033 and 9014 ("Bankruptcy Rules") and Federal Rules of Civil Procedure 26 and 33 ("Civil Rules"), and pursuant to the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware ("Local Rules") the Official Committee of Tort Claimants (the "TCC") of Boy Scouts of America and Delaware BSA, LLC (the "Debtors"), by and through its undersigned counsel, hereby objects and responds (the "Response") to *Zurich Insurers' First Set of Interrogatories to the Official Committee of Tort Claimants* (the "Interrogatories").

**GENERAL OBJECTIONS**

1.      The following General Objections apply to and are incorporated in the TCC's Responses to each of the Interrogatories, below, whether or not expressly incorporated by

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of the Debtors' respective federal tax identification numbers, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

reference in each such Response. The failure to specify any General Objection in the Responses

to the Interrogatories is not intended to waive that General Objection. Any additional objections

provided in the Responses should be construed as supplementing, and not superseding, these

General Objections.

2.     The specific Responses set forth below are based upon information

presently available to the TCC. The TCC expressly reserves the right to revise, correct, add to,

clarify, amend, or supplement these Responses as necessary. Failure to object in these Responses

shall not constitute a waiver of any objection that the TCC may later interpose, including as to

future supplemental Responses.

3.     The Responses are subject to the *Order Approving Confidentiality and

Protective Order* entered in these cases [Docket No. 799] (the "Stipulated Protective Order"). If

the TCC provides any information to American Zurich Insurance Company, American Guarantee

and Liability Insurance Company, and Steadfast Insurance Company (collectively, the "Zurich

Insurers") in response to the Interrogatories, it shall be subject to the terms of the Stipulated

Protective Order.

4.     The Responses have been prepared in accordance with the Civil Rules, the

Bankruptcy Rules, and the Local Rules. The TCC objects to the Interrogatories to the extent that

they purport to impose obligations on the TCC beyond those imposed by the Civil Rules, the

Bankruptcy Rules, the Local Rules, or any other applicable laws and rules.

5.     The TCC objects to the Interrogatories to the extent that they seek

information that is protected from disclosure by the attorney-client privilege, the attorney work

product doctrine, the common interest privilege, or any other applicable privilege, immunity, or protection (whether based upon statute, rule, order, agreement, or common law). The TCC does not intend to produce information or documents that are privileged or otherwise protected from discovery. Any production of such information is not intended to constitute a waiver of any applicable privilege or protection, nor is it intended to waive any objection to the admissibility of such information. The TCC reserves all rights with respect to the mediation privilege.

6.      The TCC objects to the Interrogatories to the extent that they seek the disclosure of information that would violate the privacy rights of any individual or entity, breach any confidentiality agreement, contravene any court order restricting the disclosure of information, or otherwise result in the release of any confidential or proprietary commercial, financial, or trade secret information of non-parties. The TCC further objects to the Interrogatories to the extent that they seek information designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY" pursuant to the Stipulated Protective Order to the extent any of the Zurich Insurers are not parties to the Stipulated Protective Order**.**

7.      The TCC objects to the Interrogatories to the extent that they seek information that is not in the TCC's possession, custody, or control; is already contained in the public record; or may otherwise be obtained without substantial burden to the Zurich Insurers. The TCC will respond based on information in its possession only.

8.      The TCC objects to the Interrogatories to the extent that they seek information that is not relevant to the issues in this contested matter.

9.       The TCC objects to the Interrogatories to the extent that they require unreasonably costly or time-consuming measures to locate and produce responsive information, to the extent that such information exists. The TCC will construe the Interrogatories to require only a search for reasonably accessible information, including by using search terms, in locations where the TCC would reasonably expect to find information responsive to the Interrogatories, to the extent that such information exists.

10.       Any statement that the TCC will produce non-privileged information or documents responsive to a particular Interrogatory is not a representation that such information or documents exist and/or are in the possession, custody, or control of the TCC, but rather that such information or documents will be produced if they are located in the course of a reasonable search.

11.       The TCC's disclosure of information or production of documents in response to the Interrogatories does not constitute an admission by the TCC that such information or documents are relevant or admissible; and is without prejudice to the TCC's right to contend at any trial or hearing, or any other proceeding that the information and documents are inadmissible, irrelevant, immaterial, privileged, or otherwise objectionable.

12.       The TCC objects to any factual assumptions, implications, and explicit or implicit characterizations of facts, events, circumstances, or issues in the Interrogatories. The Responses and any productions shall not be construed as admissions of or agreements with any such assumption, implication, or characterization.

13.       The TCC objects to Definition No. 6 on the grounds that the definition of "You" and "Your" is overbroad, unduly burdensome, including (without limitation) insofar as it

includes any person or entity that is not the TCC. The TCC will only respond on behalf of the

TCC.

## RESPONSES TO INTERROGATORIES

All of the following Responses are made without waiving, and subject to, the General

Objections.

INTERROGATORY NO. 1:

State and describe in detail all of Your objections to the Zurich Settlement or the Zurich Term Sheet.

## RESPONSE TO INTERROGATORY NO. 1:

The TCC did not author the Zurich Settlement or Zurich Term Sheet, is not a party to the Zurich Settlement or Zurich Term Sheet, and is not proposing the Zurich Settlement or Zurich Term Sheet be approved by the Court. Therefore, the TCC objects to this Interrogatory to the extent it seeks attorney-client privileged information or attorney work product. The TCC further objects to this Interrogatory on the grounds that it seeks information protected by the attorney-client privilege, attorney work product doctrine, and/or a common interest privilege. The TCC further objects to this Interrogatory on the grounds that it calls for legal conclusions; is an improper contention interrogatory; and is premature. In particular, without limiting the foregoing, the TCC notes that it did not draft the Zurich Settlement or the Zurich Term Sheet and were not consulted concerning the terms of the Zurich Settlement or Zurich Term Sheet, and thus this Interrogatory regarding the interpretation of the provisions of the Zurich Settlement or Zurich Term Sheet improperly seeks legal conclusions or an answer to a contention interrogatory. Moreover, the TCC is presently taking discovery to determine what objections, if any, the TCC has to the Zurich Settlement or the Zurich Term Sheet.

INTERROGATORY NO. 2:

If you contend that the Zurich Term Sheet does not satisfy the standards for 11 U.S.C. §363 or Federal Rule of Bankruptcy Procedure 9019, state the basis for such contention(s).

## RESPONSE TO INTERROGATORY NO. 2:

The TCC did not author the Zurich Settlement or Zurich Term Sheet, is not a party to the Zurich Settlement or Zurich Term Sheet, and is not proposing the Zurich Settlement or Zurich Term Sheet be approved by the Court. Therefore, the TCC objects to this Interrogatory to the extent it seeks attorney-client privileged information or attorney work product. The TCC further objects to this Interrogatory on the grounds that it seeks information protected by the attorney-

client privilege, attorney work product doctrine, and/or a common interest privilege. The TCC further objects to this Interrogatory on the grounds that it calls for legal conclusions; is an improper contention interrogatory; and is premature. In particular, without limiting the foregoing, the TCC notes that it did not draft the Zurich Settlement or the Zurich Term Sheet and were not consulted concerning the terms of the Zurich Settlement or Zurich Term Sheet, and thus this Interrogatory regarding the interpretation of the provisions of the Zurich Settlement or Zurich Term Sheet improperly seeks legal conclusions or an answer to a contention interrogatory. Moreover, the TCC is presently taking discovery to determine what objections, if any, the TCC has to the Zurich Settlement or the Zurich Term Sheet.

INTERROGATORY NO. 3:

Identify each and every fact witness whom You will call or anticipate calling to testify at the confirmation hearing on the Plan and, for each such fact witness, describe in detail the subject matter of the person's anticipated testimony. The TCC's investigation in this matter is ongoing, and the TCC reserves the right to amend this response upon the completion of fact and expert discovery, and/or at the time for filing objections to confirmation.

**RESPONSE TO INTERROGATORY NO. 3:**

The TCC objects to this Interrogatory on the grounds that it is premature as the deadlines to complete fact discovery and exchange witness lists as set forth in the Modified Confirmation Scheduling Order [Docket No. 7973] (the "Scheduling Order") has not yet passed. The TCC's investigation in this matter is ongoing, and the TCC reserves the right to amend this response upon the completion of fact and expert discovery, and/or at the time for exchanging witness lists.

INTERROGATORY NO. 4:

Identify each and every expert witness whom You will call or anticipate calling to testify at the confirmation hearing on the Plan and, for each such expert witness, describe in detail the subject matter of the person's anticipated testimony.

[remainder of page left intentionally blank]

## RESPONSE TO INTERROGATORY NO. 4:

The TCC objects to this Interrogatory on the grounds that it is premature as the deadlines to complete expert discovery as set forth in the Scheduling has not yet passed. The TCC's investigation in this matter is ongoing, and the TCC reserves the right to amend this response upon the completion of fact and expert discovery, and/or at the time for exchanging witness lists.

Dated:  January 7, 2022
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

/s/      Iain A.W. Nasatir
Richard M. Pachulski (CA Bar No. 90073)
(admitted *pro hac vice*)
Alan J. Kornfeld (CA Bar No. 130063)
(admitted *pro hac vice*)
Debra I. Grassgreen (CA 169978)
(admitted *pro hac vice*)
Iain A.W. Nasatir (CA Bar No. 148977)
(admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: rpachulski@pszjlaw.com
akornfeld@pszjlaw.com
dgrassgreen@pszjlaw.com
inasatir@pszjlaw.com
joneill@pszjlaw.com

*Counsel for the Official Committee of Tort Claimants*

# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>                    Debtors. | Chapter 11<br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Re Docket Nos. 6443, 6445 |

**THE OFFICIAL COMMITTEE OF TORT**
**CLAIMANTS' OBJECTIONS AND RESPONSES**
**TO ZURICH INSURERS' FIRST SET OF REQUESTS TO THE OFFICIAL**
**COMMITTEE OF TORT CLAIMANTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Federal Rules of Bankruptcy Procedure 7026, 7034, and 9014  ("Bankruptcy Rules") and Federal Rules of Civil Procedure 26 and 34 ("Civil Rules"), and pursuant to the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware ("Local Rules"), the Official Committee of Tort Claimants (the "TCC") to Boy Scouts of America and Delaware BSA, LLC (the "Debtors"), by and through the TCC's undersigned counsel, hereby objects and responds (the "Responses") to *Zurich Insurers First Set of Requests to the Official Committee of Tort Claimants for Production of Documents*, dated December 29, 2021 (the "Document Requests").

**GENERAL OBJECTIONS**

1.       The following General Objections apply to and are incorporated in the TCC's Responses to each of the Document Requests below, whether or not expressly incorporated by reference in each such Response. The failure to specify any General Objection in the Responses to the Document Requests is not intended to waive that General Objection. Any additional

---

[1]  The Debtors in these Chapter 11 Cases, together with the last four digits of the Debtors' respective federal tax identification numbers, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

objections provided in the Responses should be construed as supplementing, and not superseding, these General Objections.

2.       The specific Responses set forth below are based upon information presently available to the TCC. The TCC expressly reserves the right to revise, correct, add to, clarify, amend, or supplement these Responses as necessary. Failure to object in these Responses shall not constitute a waiver of any objection that the TCC may later interpose, including as to future supplemental Responses.

3.       The Responses are subject to the *Order Approving Confidentiality and Protective Order* entered in these cases [Docket No. 799] (the "Stipulated Protective Order"). The TCC objects to the Document Requests to the extent that they seek the disclosure of information that would violate the privacy rights of any individual or entity, breach any confidentiality agreement, contravene any court order restricting the disclosure of information, or otherwise result in the release of any confidential or proprietary commercial, financial, or trade secret information of non-parties. The TCC further objects to the Document Requests to the extent that they seek information designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY" pursuant to the Stipulated Protective Order**.** If the TCC provides any information in response to the Document Requests, it shall be subject to the terms of such order.

4.       The Responses have been prepared in accordance with the Civil Rules, the Bankruptcy Rules, and the Local Rules. The TCC objects to the Document Requests to the extent

that they purport to impose obligations on the TCC beyond those imposed by the Civil Rules, the

Bankruptcy Rules, the Local Rules, or any other applicable laws and rules.

5.      The TCC objects to the Document Requests to the extent that they seek

information that is protected from disclosure by the attorney-client privilege, the attorney work

product doctrine, the common interest privilege, or any other applicable privilege, immunity, or

protection (whether based upon statute, rule, order, agreement, or common law). The TCC does

not intend to produce information or documents that are privileged or otherwise protected from

discovery. Any production of such information or documents is not intended to constitute a waiver

of any applicable privilege or protection, nor is it intended to waive any objection to the

admissibility of such information. The TCC reserves all rights with respect to the mediation

privilege.

6.      The TCC objects to the Document Requests to the extent that they seek

information that is not in the TCC's possession, custody, or control; is already contained in the

public record; or may otherwise be obtained without substantial burden to the Insurers. The TCC

will respond based on information in its possession only, and it will not produce documents that

were produced to it by the Debtors or the Mediation Parties (as that term is defined in *the Order*

*(I) Scheduling Certain Dates and Deadlines In Connection With Confirmation of the Debtors'*

*Plan of Reorganization, (II) Establishing Certain Protocols, and (III) Granting Related Relief*

[Docket No. 6528] (the "Scheduling Order"), entered in the Debtors' above-captioned chapter 11

cases).

7.      The TCC objects to the Document Requests to the extent that they seek documents that are already in the possession of American Zurich Insurance Company, American Guarantee and Liability Insurance Company, and/or Steadfast Insurance Company (collectively, the "Zurich Insurers") or that the Zurich Insurers could obtain equally or more readily from another source.

8.      The TCC objects to the Document Requests to the extent that they seek information that is not relevant to the issues in this contested matter.

9.      The TCC objects to the Document Requests to the extent that they require the TCC to search for responsive documents and materials in places, locations, and files, or from custodians other than those where responsive information, materials, and documents would be expected to be retained in the ordinary course of business, to the extent that such information, materials, and documents exist, on the grounds that such a search would be oppressive and/or cause unreasonable expense or burden.

10.     The TCC will construe the Document Requests to require only a search for reasonably accessible information, including by using search terms, in locations where the TCC would reasonably expect to find documents responsive to the Document Requests, to the extent that such information exists.

11.     Any statement that the TCC will produce non-privileged documents responsive to a particular Document Request is not a representation that such documents exist and/or are in the possession, custody, or control of the TCC, but rather that such information or documents will be produced if they are located in the course of a reasonable search.

12.     The TCC's disclosure of information or production of documents in response to the Document Requests does not constitute an admission by the TCC that such information or documents are relevant or admissible; and is without prejudice to the TCC's right to contend at any trial, hearing, or any other proceeding that the documents are inadmissible, irrelevant, immaterial, privileged, or otherwise objectionable.

13.     The TCC objects to any factual assumptions, implications, and explicit or implicit characterizations of facts, events, circumstances, or issues in the Document Requests. The TCC's Responses and any productions shall not be construed as admissions of or agreements with any such assumption, implication, or characterization.

14.     The TCC objects to the disclosure of documents falling within any of its General Objections or the specific Responses and Objections set forth below. In the event any documents falling within one or more of these objections is disclosed in these Responses, or otherwise produced, the disclosure is inadvertent and shall not constitute a waiver of the objections. This is in addition to, and not instead of, the TCC's right to claw back inadvertently produced documents in accordance with Federal Rule of Evidence 502, Civil Rule 26, and Bankruptcy Rule 9014.

## RESPONSES AND SPECIFIC OBJECTIONS

All of the following Responses are made without waiving, and subject to, the General Objections.

## REQUEST FOR PRODUCTION NO. 1:

All Documents that are mentioned, discussed, or referred to, directly or indirectly, in Your responses to the Interrogatories.

### RESPONSE TO DOCUMENT REQUEST NO. 1

Subject to, and without waiving its objections, the TCC responds as follows: There are no documents "mentioned, discussed, or referenced to, directly or indirectly," in the TCC's responses to Interrogatories.

## REQUEST FOR PRODUCTION NO. 2:

All Documents Concerning the Zurich Term Sheet.

### RESPONSE TO DOCUMENT REQUEST NO. 2

The TCC did not author the Zurich Term Sheet, is not a party to the Zurich Term Sheet, and is not proposing the Zurich Term Sheet be approved by the Court. Therefore, the TCC objects to this Document Request to the extent it seeks attorney-client privileged information or attorney work product. The TCC further objects to this Document Request on the grounds that it seeks information protected by the attorney-client privilege, attorney work product doctrine, and/or a common interest privilege. The TCC further objects to this Document Request on the grounds that it calls for legal conclusions and is premature. In particular, without limiting the foregoing, the TCC notes that it was not consulted concerning the terms of the Zurich Term Sheet.  Moreover, the TCC is presently taking discovery to determine what objections, if any, the TCC has to the Zurich Term Sheet.

## REQUEST FOR PRODUCTION NO. 3:

All Documents Concerning the Zurich Settlement.

### RESPONSE TO DOCUMENT REQUEST NO. 3

The TCC did not author the Zurich Settlement, is not a party to the Zurich Settlement, and is not proposing the Zurich Settlement be approved by the Court. Therefore, the TCC objects to this Document Request to the extent it seeks attorney-client privileged information or attorney work product. The TCC further objects to this Document Request on the grounds that it seeks information protected by the attorney-client privilege, attorney work product doctrine, and/or a common interest privilege. The TCC further objects to this Document Request on the grounds that it calls for legal conclusions and is premature. In particular, without limiting the foregoing, the TCC notes that it was not consulted concerning the terms of the Zurich Settlement.  Moreover, the TCC is presently taking discovery to determine what objections, if any, the TCC has to the Zurich Settlement.

## REQUEST FOR PRODUCTION NO. 4:

All Documents Concerning Your actual or potential objections to the Zurich Settlement or the Zurich Term Sheet.

### RESPONSE TO DOCUMENT REQUEST NO. 4

The TCC did not author the Zurich Settlement or Zurich Term Sheet, is not a party to the Zurich Settlement or Zurich Term Sheet, and is not proposing the Zurich Settlement or Zurich Term Sheet be approved by the Court. Therefore, the TCC objects to this Document Request to the extent it seeks attorney-client privileged information or attorney work product. The TCC

further objects to this Document Request on the grounds that it seeks information protected by the attorney-client privilege, attorney work product doctrine, and/or a common interest privilege. The TCC further objects to this Document Request on the grounds that it calls for legal conclusions and is premature. In particular, without limiting the foregoing, the TCC notes that it was not consulted concerning the terms of the Zurich Settlement or Zurich Term Sheet. Moreover, the TCC is presently taking discovery to determine what objections, if any, the TCC has to the Zurich Settlement or Zurich Term Sheet.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents Concerning the factual basis or bases for Your actual or potential objections to the Zurich Settlement or the Zurich Term Sheet.

**RESPONSE TO DOCUMENT REQUEST NO. 5**

The TCC did not author the Zurich Settlement or Zurich Term Sheet, is not a party to the Zurich Settlement or Zurich Term Sheet, and is not proposing the Zurich Settlement or Zurich Term Sheet be approved by the Court. Therefore, the TCC objects to this Document Request to the extent it seeks attorney-client privileged information or attorney work product. The TCC further objects to this Document Request on the grounds that it seeks information protected by the attorney-client privilege, attorney work product doctrine, and/or a common interest privilege. The TCC further objects to this Document Request on the grounds that it calls for legal conclusions and is premature. In particular, without limiting the foregoing, the TCC notes that it was not consulted concerning the terms of the Zurich Settlement or Zurich Term Sheet. Moreover, the TCC is presently taking discovery to determine what objections, if any, the TCC has to the Zurich Settlement or Zurich Term Sheet.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents supporting the statement by Your counsel, Mr. Pachulski, that the amount of the Zurich Settlement "is 50 percent less than we thought the settlement should have been, based on our insurance analysis and our special counsel's analysis" (Transcript of December 21, 2021 Hearing at 61:1-3).

**RESPONSE TO DOCUMENT REQUEST NO. 6**

The TCC objects to this Document Request on the grounds that it seeks information protected by the attorney-client privilege, attorney work product doctrine, and/or a common interest privilege. The TCC further objects to this Document Request on the grounds that it is overbroad, unduly burdensome, and premature, to the extent that it seeks documents concerning the TCC's contentions or positions regarding legal or factual issues in this matter, because discovery is not yet complete, fact witnesses have not all testified, experts have not yet submitted all reports or been deposed, and objections to plan confirmation are not yet due. The TCC's investigation in this matter is ongoing, and the TCC reserves the right to amend this response upon the completion of fact and expert discovery, and/or at the time for filing objections to confirmation.

**REQUEST FOR PRODUCTION NO. 7:**

All expert reports that do or may support Your actual or potential objections to the Zurich Settlement or the Zurich Term Sheet.

**RESPONSE TO DOCUMENT REQUEST NO. 7**

The TCC objects to this Document Request on the grounds that it seeks information protected by the attorney-client privilege, attorney work product doctrine and/or a common interest privilege. The TCC further objects to this Document Request on the grounds that it is overbroad, unduly burdensome, and premature, to the extent that it seeks documents concerning the TCC's contentions or positions regarding legal or factual issues in this matter, because discovery is not yet complete, fact witnesses have not all testified, experts have not yet submitted all reports or been deposed, and objections to plan confirmation are not yet due. The TCC's investigation in this matter is ongoing, and the TCC reserves the right to amend this response upon the completion of fact and expert discovery, and/or at the time for filing objections to confirmation.

**REQUEST FOR PRODUCTION NO. 8:**

All Communications between You and any other person or entity, including the Roman Catholic Ad Hoc Committee and/or its counsel, Concerning (a) the Zurich Settlement and/or the Zurich Term Sheet or (b) potential or actual objections to the Zurich Settlement and/or the Zurich Term Sheet.

**RESPONSE TO DOCUMENT REQUEST NO. 8**

The TCC objects to this Document Request on the grounds that it seeks information protected by the attorney-client privilege, attorney work product doctrine, and/or a common interest privilege. The TCC further objects to this Document Request on the grounds that it is overbroad unduly burdensome. Subject to these objections and the General Objections and without waiving the same, the TCC will produce all non-privileged documents responsive to this Document Request, to the extent there are any.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents that You have exchanged with any other person or entity, including the Roman Catholic Ad Hoc Committee and/or its counsel, Concerning (a) the Zurich Settlement and/or the Zurich Term Sheet or (b) potential or actual objections to the Zurich Settlement and/or the Zurich Term Sheet.

**RESPONSE TO DOCUMENT REQUEST NO. 9**

The TCC objects to this Document Request on the grounds that it seeks information protected by the attorney-client privilege, attorney work product doctrine, and/or a common interest privilege. The TCC further objects to this Document Request on the grounds that it is overbroad unduly burdensome. Subject to these objections and the General Objections and without waiving the same, the TCC will produce all non-privileged documents responsive to this Document Request, to the extent there are any.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents that You produce in response to any requests for production of documents served on You by Century Indemnity Company, Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, or Navigators Specialty Insurance Company.

**RESPONSE TO DOCUMENT REQUEST NO. 10**

Subject to, and without waiving any of the TCC's objections, the TCC has and will continue to produce to Zurich any documents produced to the insurers identified in this Document Request.

**REQUEST FOR PRODUCTION NO. 11:**

All responses and objections served by You in response to any discovery served on You by Century Indemnity Company, Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, or Navigators Specialty Insurance Company.

**RESPONSE TO DOCUMENT REQUEST NO. 11**

Subject to, and without waiving any of the TCC's objections, the TCC has and will continue to produce to Zurich any responses and objections produced to the insurers identified in this Document Request.

**REQUEST FOR PRODUCTION NO. 12:**

If you contend that the Zurich Term Sheet does not satisfy the standards for 11 U.S.C. § 363 or Federal Rule of Bankruptcy Procedure 9019, all Documents that Concern such contention.

**RESPONSE TO DOCUMENT REQUEST NO. 12**

The TCC objects to this Document Request on the grounds that it seeks information protected by the attorney-client privilege, attorney work product doctrine, and/or a common interest privilege. The TCC further objects to this Document Request on the grounds that it is overbroad, unduly burdensome, and premature, to the extent that it seeks documents concerning the TCC's contentions or positions regarding legal or factual issues in this matter, because discovery is not yet complete, fact witnesses have not all testified, experts have not yet submitted all reports or been deposed, and objections to plan confirmation are not yet due. The TCC's investigation in this matter is ongoing, and the TCC reserves the right to amend this response upon the completion of fact and expert discovery, and/or at the time for filing objections to plan confirmation.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents that You intend to or may rely on at the Confirmation Hearing or any other hearing to support any objection to the Zurich Settlement or the Zurich Term Sheet.

## RESPONSE TO DOCUMENT REQUEST NO. 13

The TCC objects to this Document Request on the grounds that it is premature, because discovery is not yet completed, fact witnesses have not all testified, and experts have not yet submitted all reports or been deposed. Subject to, and without waiving any of the foregoing objections, the TCC states that it will identify documents that it intends to introduce as exhibits at the Confirmation Hearing by the deadline set by the Court for parties to submit their exhibit lists or such earlier time as agreed by the parties.

Dated:  January 7, 2022
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/      Iain A.W. Nasatir*
Richard M. Pachulski (CA Bar No. 90073)
(admitted *pro hac vice*)
Alan J. Kornfeld (CA Bar No. 130063)
(admitted *pro hac vice*)
Debra I. Grassgreen (CA 169978)
(admitted *pro hac vice*)
Iain A.W. Nasatir (CA Bar No. 148977)
(admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: rpachulski@pszjlaw.com
akornfeld@pszjlaw.com
dgrassgreen@pszjlaw.com
inasatir@pszjlaw.com
joneill@pszjlaw.com

*Counsel for the Official Committee of Tort Claimants*

# EXHIBIT C

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10410343 (LSS) |
| | Jointly Administered |
| Debtors. | |

### ZURICH INSURERS' RESPONSES AND OBJECTIONS TO THE TCC's INTERROGATORIES TO THE ZURICH INSURERS (SET ONE)

American Zurich Insurance Company, American Guarantee and Liability Insurance Company, and Steadfast Insurance Company (collectively, the "Zurich Insurers") hereby submit the following responses and objections to the Official Committee of Tort Claimants to Boy Scouts of America and Delaware BSA, LLC's Interrogatories to the Zurich Insurers (Set One) (the "Interrogatories").

### Preliminary Statement

1. These responses and objections are by the Zurich Insurers only. These responses and objections are not by, and do not concern, any other party or entity.

2. Many of the Interrogatories seek information that is not relevant to any issue properly presented in the proceedings concerning whether to confirm the Plan, but instead are relevant, if at all, only to insurance coverage disputes that are not at issue during the confirmation proceedings. The Court has repeatedly stated that it does not intend to try or resolve insurance coverage disputes during the confirmation proceedings.

3. Certain of these responses may identify persons. All persons identified in these responses who are current employees of the Zurich Insurers or any company affiliated

with the Zurich Insurers, or any such former employees who agree to representation provided

by the Zurich Insurers, may be contacted only through the Zurich Insurers' counsel in this

action.

4.     The Zurich Insurers have given the most complete responses they can at

this time.  The Zurich Insurers reserve the right to amend and/or supplement these responses if

and to the extent they learn of additional or different information.  In particular, and without

limiting the generality of the foregoing, the Zurich Insurers reserve the right to amend and/or

supplement their responses based on information learned as discovery and their own investigation

of the facts proceeds.

5.     Capitalized terms not defined herein that are defined in Debtors' Second

Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and

Delaware BSA LLC (the "Plan," Dkt. No. 7832), have the meaning ascribed to them in the Plan.

## General Objections

The Zurich Insurers object generally to each and every Interrogatory on the

following grounds.  These General Objections are set forth here to avoid excessive duplication,

and are incorporated by reference into each and every one of the Zurich Insurers' responses

herein.

1.     The Zurich Insurers object to each Interrogatory to the extent it seeks

information protected by the attorney-client privilege, the attorney work-product rule, or any

other judicially-recognized privilege or protection.  In responding to these Interrogatories, the

Zurich Insurers do not waive or intend to waive, but rather intend to preserve and are

preserving, all of their rights under the attorney-client privilege, the attorney work-product rule,

and every other judicially recognized privilege or protection with respect to all information and

documents subject thereto.  Confidential, privileged, or protected information that may be responsive to a particular Interrogatory is not provided in these responses and will not be provided in future responses.

2.    The Zurich Insurers' responses to the Interrogatories are and will be based upon information available to the Zurich Insurers after reasonable and diligent investigation, including but not limited to a diligent search of records considered reasonably likely to contain information responsive to these Interrogatories.  However, the Zurich Insurers have not searched, and will not search, each and every record in their possession, custody, or control, and have not interviewed, and will not interview, all of their current and former employees, as such an investigation would be unreasonable, burdensome, harassing, and oppressive under the circumstances, and not proportional to the needs of the case.  To the extent the Interrogatories purport to require the Zurich Insurers to conduct more than a reasonable and diligent investigation such as described above, the Zurich Insurers object that they are overbroad, unduly burdensome, harassing and oppressive.

3.    The Zurich Insurers object to the Interrogatories to the extent they seek to impose burdens and obligations exceeding those imposed by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, or the Local Rules of this Court.  The Zurich Insurers will respond to these Interrogatories in accordance with the requirements of the aforementioned Rules, subject to all applicable objections and protections.

4.    The Zurich Insurers object to each Interrogatory as overbroad, unduly burdensome, harassing, oppressive, and not proportional to the needs of the case to the extent it seeks information which is not reasonably available to the Zurich Insurers or within their possession, custody, or control.

5.      The Zurich Insurers object to each Interrogatory to the extent it seeks information concerning legal contentions and supporting facts which are not reasonably ascertainable or available at this stage of the proceedings, on the ground that each such Interrogatory is overbroad, unduly burdensome, harassing, oppressive, and premature.  The Zurich Insurers reserve the right to amend or supplement their response to any such Interrogatory.

6.      The Zurich Insurers object to each Interrogatory that seeks disclosure of the mental impressions, opinions, conclusions, or legal theories of the Zurich Insurers, or their counsel or other representatives, or other counsel with whom the Zurich Insurers and their counsel have a common legal interest.

7.      The Zurich Insurers object to each Interrogatory that purports to describe the Zurich Insurers' contentions or positions to the extent that such Interrogatory misstates or mischaracterizes the Zurich Insurers' contentions or positions, on the grounds that each such Interrogatory is vague, ambiguous, harassing, and oppressive.

8.      The Zurich Insurers object to each Interrogatory to the extent that it is vague, ambiguous, overbroad, unduly burdensome, harassing, oppressive, seeks information neither relevant to the subject matter of the Plan confirmation proceedings nor reasonably calculated to lead to the discovery of admissible evidence, seeks information equally available to the TCC from other sources, is not proportional to the needs of the case, or is improper for any reason.

9.      The Zurich Insurers object to each Interrogatory to the extent it requests information that would violate any constitutional, statutory, or common law privacy interest of any current or former employee or representative of the Zurich Insurers, any current or former

policyholder of the Zurich Insurers, or any other person or entity.

        10.    The Zurich Insurers object to each Interrogatory to the extent it seeks information concerning a time period other than the one that is appropriate to the particular Interrogatory in question on the grounds that it is overbroad, unduly burdensome, harassing, oppressive, not proportional to the needs of the case, and seeks information neither relevant to the subject matter of the Plan confirmation proceedings nor reasonably calculated to lead to the discovery of admissible evidence.

        11.    The Zurich Insurers object to each and every Interrogatory that specifies no time period on the grounds that each such Interrogatory is vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case.

        12.    The Zurich Insurers object to each Interrogatory to the extent it seeks information concerning trade secrets or proprietary or other confidential business information.

        13.    The Zurich Insurers object to each Interrogatory that purports to seek "any" or "all" document(s), information, communication(s), correspondence(s), file(s), material(s) or similar terms on the ground that to the extent such Interrogatories seek to require the Zurich Insurers to use more than reasonable diligence to locate responsive information based on an examination of those files that reasonably may be expected to possess responsive information, such Interrogatories are vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case.

        14.    The Zurich Insurers object to definition 8, "Zurich Administrative Expense Claim," as harassing because the Zurich Term Sheet does not provide a meaning for that term, nor is that term mentioned in the Zurich Term Sheet.

        15.    In providing these responses, the Zurich Insurers do not waive or intend

to waive, but rather intend to preserve and are preserving, each of the following:  (a) all objections to competency, relevancy, materiality, authenticity, and admissibility of any information, including, but not limited to, information provided herein and any documents produced in response to the Interrogatories; (b) all rights to object on any ground to the use, in any proceedings, in this bankruptcy case or otherwise, of any information, including, but not limited to, information provided herein and any documents produced in response to the Interrogatories; and (c) all rights to object on any grounds to any further interrogatories or requests for production, or other discovery requests.

16.      These General Objections are applicable to and incorporated into each of the Zurich Insurers' responses below, as if specifically stated therein.  The stating of specific objections to a particular Interrogatory shall not be construed as a waiver of the Zurich Insurers' General Objections.  Unless otherwise specified, the Zurich Insurers' objections to each of the Interrogatories apply to the entire Interrogatory, including each and every subsection and/or subpart thereof.

## Specific Objections and Responses to Interrogatories

The Zurich Insurers incorporate the foregoing General Objections into each of the following responses to individual interrogatories, and into each amendment, supplement, or modification to these responses that the Zurich Insurers may later provide.  By making these separate responses, the Zurich Insurers do not waive or intend to waive any of their General Objections, but rather intend to preserve and assert, and are preserving or asserting, each of their General Objections.

## INTERROGATORY NO. 1:

Identify all persons who have any knowledge Concerning the Zurich Term Sheet

including, but not limited to, the drafting and/or negotiation of the Zurich Term Sheet and any

Insurance Policy referred or incorporated therein.

### Response to Interrogatory No. 1:

The Zurich Insurers incorporate by reference their General Objections as if

stated here in full.  In addition to their general objections, the Zurich Insurers also make the

following specific objections:

The Zurich Insurers object to this Interrogatory on the grounds that it is

overbroad and unduly burdensome, to the extent that it asks the Zurich Insurers to identify "all

persons who have any knowledge Concerning the Zurich Term Sheet."  Because the Zurich

Term Sheet has been publicly filed on the docket of the Chapter 11 Cases (*see* Dkt No. 7928), it

is not possible for the Zurich Insurers to identify every person who may have viewed the Zurich

Term Sheet by downloading it from Omni or CM/ECF.  More broadly, the Zurich Insurers

cannot possibly identify every person who may have read the Zurich Term Sheet, or had its

terms described to them.

In addition, the Zurich Insurers object to this Interrogatory on the grounds that it

is vague, ambiguous, overbroad and unduly burdensome, to the extent that it asks the Zurich

Insurers to identify "all persons who have any knowledge Concerning . . . the drafting and/or

negotiation of . . . any Insurance Policy referred or incorporated" into the Zurich Term Sheet.

Further, the Zurich Insurers object to this Interrogatory on the basis that any discovery

concerning the insurance policies issued by the Zurich Insurers to Debtors was due on October

4, 2021, making this Interrogatory almost three months late.

Subject to, and without waiving any of the foregoing objections, the Zurich

Insurers identify the following specific individuals whom the Zurich Insurers believe have

knowledge Concerning the drafting and/or negotiation of the Zurich Term Sheet:

1.    **Mediator**: Timothy Gallagher, Esq.

2.    **Zurich Insurers**:  Robert Koscielniak; Bryan Feldscher, Esq.; Mark D. Plevin, Esq.  Mr. Feldscher and Mr. Koscielniak are employees of Zurich North America and any contact with them must be through the Zurich Insurers' counsel.

3.    **Debtors**: Ronald Gorsich, Esq.; Michael Andolina, Esq.

4.    **Coalition**:  Gabe LeChevallier, Esq.; Eric Goodman, Esq.; David Molton, Esq.

5.    **Future Claimants' Representative**: Kami Quinn, Esq.; Robert Brady, Esq.; James L. Patton, Jr.

6.    **State court counsel**: Kenneth Rothweiler, Esq.; Adam Slater, Esq.

## INTERROGATORY NO. 2:

If you contend that the Zurich Term Sheet satisfies the standards for 11 U.S.C. § 363, Federal Rule of Bankruptcy Procedure 9019(b), and/or 11 U.S.C. §1129(a)(7), state the basis for such contention(s).

### Response to Interrogatory No. 2:

The Zurich Insurers incorporate by reference their General Objections as if stated here in full.  In addition to their general objections, the Zurich Insurers also make the following specific objections:

The Zurich Insurers object to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product rule (including, without limitation, the mental impressions, opinions, conclusions or legal theories of the Zurich Insurers or their counsel), or any other applicable privileges or protections.

The Zurich Insurers further object to this Interrogatory on the grounds that it is vague and ambiguous, in that it is not apparent what the TCC means when it asks the Zurich Insurers to state whether they contend that the Zurich Term Sheet satisfies the standards for 11 U.S.C. § 363, Federal Rule of Bankruptcy Procedure 9019(b), and/or 11 U.S.C. §1129(a)(7)." Rule 9019(b) deals with a "class or classes or controversies," and does not appear to apply to the Zurich Term Sheet; and § 1129(a)(7) concerns the requirements for confirmation of a debtor's Chapter 11 plan, not a settlement such as that described in the Zurich Term Sheet

Subject to, and without waiving any of the foregoing objections, the Zurich Insurers state as follows:

The Zurich Insurers contend that the Zurich Term Sheet satisfies the standards of 11 U.S.C. § 363 and Rule 9019(b). The Third Circuit has stated that § 363 of the Bankruptcy Code is the substantive provision requiring a hearing and court approval of settlements, while Bankruptcy Rule 9019 establishes the procedure by which such approval may be secured. *See In re Martin*, 91 F.3d 389, 395 n.2 (3d Cir. 1996).

In determining whether to approve a settlement pursuant to § 363 and Rule 9019, the Third Circuit has instructed that a bankruptcy court should "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Id.* at 393, citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). In making this determination, a court should consider: (1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and related expense and inconvenience; and (4) the interests of the creditors. *Id. See also in re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (citing the *TMT Trailer* factors as controlling whether settlement should be approved).

The ultimate inquiry is whether the compromise is "fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

In ruling on a proposed compromise, the bankruptcy court should not substitute its own judgment for that of the debtor-in-possession. *See In re Nat'l Org. For Children, Inc.*, 2007 WL 1577753, at *7 (Bankr. E.D. Pa. May 31, 2007). Nor is the court required to determine whether the settlement was the best that the trustee could have obtained. *See In re W.T. Grant*, 699 F.2d 599, 608, 613 (2d Cir. 1982), *cert. denied*, 464 U.S. 822 (1983). Rather, the court should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Id.* at 608; *In re Bell & Beckwith*, 87 B.R. 472, 474 (N.D. Ohio 1987). In determining whether to approve a compromise, a bankruptcy court is not required to conduct a "mini-trial" on the merits of the underlying cause of action. *U.S. v. Alaska Nat'l Bank of the North (In the Matter of Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982); *In re Blair*, 538 F.2d 849, 851-52 (9th Cir. 1976).

Taking into account the *TMT Trailer* standards, the $ 1 million per-occurrence SIR underlying the Zurich Insurers' policies, the very high attachment points of certain of the Zurich Policies, the total limits of the Zurich Policies, the pre-petition erosion of those limits, the uncertainty as to the amount of Abuse Claims and the severity mix of those claims, potential coverage defenses and other coverage issues, and other factors, the Zurich Insurers believe that the settlement set forth in the Zurich Term Sheet satisfies the standards for approval under § 363 and Rule 9019(a) because the settlement, which was negotiated at arms' length with the assistance of a mediator, is fair and does not "fall below the lowest point in the range of reasonableness."

The Zurich Insurers do not understand the TCC's reference to Rule 9019(b) or § 1129(a)(7), neither of which the Zurich Insurers understand to be relevant to whether the settlement set forth in the Zurich Term Sheet should be approved.

**INTERROGATORY NO. 3:**

If you contend that the Zurich Administrative Expense Claim satisfies the standards for allowance as administrative expense claims under the Bankruptcy Code, including under 11 U.S.C. § 503(b), state the basis for such contention(s).

**Response to Interrogatory No. 3:**

The Zurich Insurers incorporate by reference their General Objections as if stated here in full.  In addition to their general objections, the Zurich Insurers also make the following specific objections:

The Zurich Insurers object to this Interrogatory on the grounds that, as stated, it is vague, ambiguous, and unintelligible.  The Zurich Insurers do not understand the reference to "Zurich Administrative Expense Claim."  The definition provided in the Interrogatories defines the term as having "the meaning provided in the Zurich Term Sheet," but the Zurich Term Sheet does not define, or even use, the term "Zurich Administrative Expense Claim."  Thus, the Zurich Insurers do not understand what the TCC is asking by this Interrogatory.

Accordingly, the Zurich Insurers do not provide any information in response to this Interrogatory.

**INTERROGATORY NO. 4:**

Identify all Local Councils who have been issued Local Council only policies (where BSA is not an insured) who are being released under the Zurich Term Sheet.

**Response to Interrogatory No. 4:**

The Zurich Insurers incorporate by reference their General Objections as if stated here in full.  In addition to their general objections, the Zurich Insurers also make the following specific objections:

The Zurich Insurers object to this Interrogatory as overbroad, unduly burdensome, harassing, oppressive, and not proportional to the needs of the case to the extent it seeks information that is not reasonably available to the Zurich Insurers or within their possession, custody, or control.

In addition, the Zurich Insurers object to this Interrogatory to the extent that it is vague, ambiguous, overbroad, unduly burdensome, harassing, oppressive, seeks information neither relevant to the subject matter of the Plan confirmation proceedings nor reasonably calculated to lead to the discovery of admissible evidence, is not proportional to the needs of the case, or is improper for any reason.

Subject to, and without waiving any of the foregoing objections, the Zurich Insurers state as follows:  The Zurich Insurers are not responsible for any "Local Council only" policies.  All of the policies that the Zurich Insurers are responsible for that are related to Scouting were issued to Boy Scouts of America.  Local Councils were additional insureds under such policies.  Because the Zurich Insurers are not responsible for any "Local Council only" policies, there are no Local Councils to be identified in response to this Interrogatory.

**INTERROGATORY NO. 5:**

For each Local Council identified in response to Interrogatory Number 4, identify: the policy number, the coverage year, the coverage limits, whether coverage has been settled or exhausted, and the Abuse Claims that have been asserted with respect to such policies.

### Response to Interrogatory No. 5:

The Zurich Insurers incorporate by reference their General Objections as if stated here in full.

This Interrogatory is not applicable because the Zurich Insurers did not identify any Local Councils in response to Interrogatory No. 4.

## INTERROGATORY NO. 6:

Identify the aggregate number of Local Council only policies (where BSA is not an insured) that are being bought-back or otherwise settled under the Zurich Term Sheet.

### Response to Interrogatory No. 6:

The Zurich Insurers incorporate by reference their General Objections as if stated here in full. In addition to their general objections, the Zurich Insurers also make the following specific objections:

The Zurich Insurers object to this Interrogatory as overbroad, unduly burdensome, harassing, oppressive, and not proportional to the needs of the case to the extent it seeks information that is not reasonably available to the Zurich Insurers or within their possession, custody, or control.

In addition, the Zurich Insurers object to this Interrogatory to the extent that it is vague, ambiguous, overbroad, unduly burdensome, harassing, oppressive, seeks information neither relevant to the subject matter of the Plan confirmation proceedings nor reasonably calculated to lead to the discovery of admissible evidence, is not proportional to the needs of the case, or is improper for any reason.

Subject to, and without waiving any of the foregoing objections, the Zurich Insurers state as follows: The Zurich Insurers are not responsible for any "Local Council only"

policies.  All of the policies that the Zurich Insurers are responsible for that are related to

Scouting were issued to Boy Scouts of America.  Local Councils were additional insureds under

such policies.  Because the Zurich Insurers are not responsible for any "Local Council only"

policies, it is the Zurich Insurers' understanding that no Local Council only policies (where BSA

is not an insured) are being bought-back or otherwise settled under the Zurich Term Sheet.

**INTERROGATORY NO. 7:**

Identify all Chartered Organizations released under the Zurich Term Sheet who

are insured under (i) a policy where BSA is a named insured; and (ii) a policy where BSA is not

an insured.

### Response to Interrogatory No. 7:

The Zurich Insurers incorporate by reference their General Objections as if

stated here in full.  In addition to their general objections, the Zurich Insurers also make the

following specific objections:

The Zurich Insurers object to this Interrogatory as overbroad, unduly

burdensome, harassing, oppressive, and not proportional to the needs of the case to the extent it

seeks information which is not reasonably available to the Zurich Insurers or within their

possession, custody, or control.

In addition, the Zurich Insurers object to this Interrogatory to the extent that it is

vague, ambiguous, overbroad, unduly burdensome, harassing, oppressive, seeks information

neither relevant to the subject matter of the Plan confirmation proceedings nor reasonably

calculated to lead to the discovery of admissible evidence, is not proportional to the needs of the

case, or is improper for any reason.

Further, the Zurich Insurers object to this Interrogatory to the extent that it

purports to ask the Zurich Insurers to identify "all Chartered Organizations released under the Zurich Term Sheet who are insured under . . . a policy where BSA is not an insured." Responding to this Interrogatory would impose an undue burden on the Zurich Insurers.  The Zurich Insurers understand that there are tens of thousands of Chartered Organizations.  In order to determine if the Zurich Insurers issued any insurance policies to any Chartered Organizations, someone would have to provide the Zurich Insurers with a list of the specific Chartered Organizations at issue, and Zurich would then have to conduct a policy search to determine if the Zurich Insurers issued any policies to such Chartered Organizations.  Given the very large number of Chartered Organizations, such a policy search would impose an undue burden on the Zurich Insurers.  Specifically, there is no way such a policy search could be completed before the end of the confirmation hearing in this case.  Once a search were completed, the Zurich Insurers, with the assistance of counsel, would have to review each policy to determine whether the policy also insured BSA.  In sum, this Interrogatory is overbroad, unduly burdensome, and not proportional to the needs of the case.

Subject to, and without waiving any of the foregoing objections, the Zurich Insurers state as follows:

Under the Zurich Term Sheet, the Zurich Insurers would release claims they might have against, *inter alia*, Limited Protected Parties and other Protected Parties (including the Contributing Chartered Organizations).  Because the policies issued by the Zurich Insurers to BSA included BSA's Chartered Organizations as additional insureds under such policies, then all Chartered Organizations who would be released by the Zurich Insurers under the terms of the Zurich Term Sheet would be insureds under the policies issued by the Zurich Insurers to BSA. Because of the objectionable undue burden, the Zurich Insurers have not made any effort to

identify whether they issued any separate coverage to any of BSA's Chartered Organizations.

**INTERROGATORY NO. 8:**

For each Chartered Organization identified in response to Interrogatory Number 7, identify: the policy number, the coverage year, the coverage limits, whether coverage has been settled or exhausted, and the Abuse Claims that have been asserted with respect to such policies.

### Response to Interrogatory No. 8:

The Zurich Insurers incorporate by reference their General Objections as if stated here in full. In addition to their general objections, the Zurich Insurers also make the following specific objections:

The Zurich Insurers object to this Interrogatory as overbroad, unduly burdensome, harassing, oppressive, and not proportional to the needs of the case to the extent it seeks information that is not reasonably available to the Zurich Insurers or within their possession, custody, or control.

In addition, the Zurich Insurers object to this Interrogatory to the extent that it is vague, ambiguous, overbroad, unduly burdensome, harassing, oppressive, seeks information neither relevant to the subject matter of the Plan confirmation proceedings nor reasonably calculated to lead to the discovery of admissible evidence, is not proportional to the needs of the case, or is improper for any reason.

Subject to, and without waiving any of the foregoing objections, the Zurich Insurers state as follows:

Set forth below is a chart showing, for each policy listed in Exhibit A to the Zurich Term Sheet (Dkt. No. 7928-1, page 23 of 23), the policy number, the coverage year, the

coverage limits, and the extent of erosion of policy limits:

| POLICY NO., ISSUING CO. | POLICY PERIOD | LIMITS OF LIABILITY, ATTACHMENT POINT, AND SIRs | EROSION |
|---|---|---|---|
| CEO 6371780-00 (American Zurich) | 3/1/89-3/1/90 | $5M occ./agg. x/s $28M occ./agg. x/s $1M/occ. SIR | $0 |
| AUO 3657270-00 (American Zurich) | 3/1/96-3/1/97 | $10M occ./agg. p/o $15M occ./agg. x/s $2M occ./agg. x/s $1M/occ. SIR | $0 |
| AUO 3657270-01 (American Zurich) | 3/1/97-3/1/98 | $15M occ./agg. x/s $2M occ./agg. x/s $1M "each and every" SIR | $2,810,829.27 |
| AUO 3657270-02 | 3/1/98-3/1/99 | $12M occ./agg. x/s $5M occ./agg. x/s $1M "each and every" SIR | $12,005,858.83 |
| EUO 3657270-03 (American Zurich) | 3/1/99-3/1/00 | $12M occ./agg. x/s $5M occ./agg. x/s $1M "each and every" SIR | $1,072,006.38 |
| EUO 3657270-03 (American Zurich) | 3/1/00-3/1/01 | $12M occ./agg. x/s $5M occ./agg. x/s $1M "each and every" SIR | $0 |
| AEC 3657270 04 (AGLIC) | 3/1/01-3/1/02 | $12M occ./agg. x/s $7M occ./agg. x/s $1M/occ. SIR | $0 |
| AEC 9278457 00 (AGLIC) | 3/1/01-3/1/02 | $20M occ./agg. x/s $98M occ./agg. x/s $1M/occ. SIR | $0 |
| AEC 3657270 05 (AGLIC) | 3/1/02-3/1/03 | $12M occ./agg. x/s $8M occ./agg. x/s $1M/occ. SIR | $3,965,780.71 |
| AEC 9278457 01 (AGLIC) | 3/1/02-3/1/03 | $20M occ./agg. p/o $45M occ./agg. x/s $98M occ./agg. x/s $1M/occ. SIR | $0 |
| AEC 3657270 06 (AGLIC) | 3/1/03-3/1/04 | $20M occ./agg. p/o $20M occ./agg. x/s $18M occ./agg. x/s $1M/occ. SIR | $0 |
| AEC 9278457 02 (AGLIC) | 3/1/03-3/1/04 | $25M occ./agg. x/s $78M occ./agg. x/s $1M/occ. SIR | $0 |
| AEC 3657270 07 (AGLIC) | 3/1/04-3/1/05 | $20M occ./agg. x/s $18M occ./agg. x/s $1M/occ. SIR | $0 |
| AEC 9278457 03 (AGLIC) | 3/1/04-3/1/05 | $25M occ./agg. x/s $78M occ./agg. x/s $1M/occ. SIR | $0 |
| AEC 3657270 08 (AGLIC) | 3/1/05-3/1/06 | $20M occ./agg. x/s $18M occ./agg. x/s $1M/occ. SIR | $0 |
| AEC 3657270 09 (Steadfast) | 3/1/06-3/1/07 | $20M occ./agg. x/s $19M occ./agg. x/s $1M/occ. SIR | $0 |

With respect to an identification of "Abuse Claims that have been asserted with respect to such policies," pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, the Zurich Insurers direct the TCC to the claims files produced by the Zurich Insurers earlier in this case.

## INTERROGATORY NO. 9:

Identify the aggregate number of Chartered Organization only policies (where BSA is not an insured) that are being bought-back or otherwise settled under the Zurich Term Sheet.

**Response to Interrogatory No. 9:**

The Zurich Insurers incorporate by reference their General Objections as if stated here in full.  In addition to their general objections, the Zurich Insurers also make the following specific objections:

The Zurich Insurers object to this Interrogatory as overbroad, unduly burdensome, harassing, oppressive, and not proportional to the needs of the case to the extent it seeks information which is not reasonably available to the Zurich Insurers or within their possession, custody, or control.

In addition, the Zurich Insurers object to this Interrogatory to the extent that it is vague, ambiguous, overbroad, unduly burdensome, harassing, oppressive, seeks information neither relevant to the subject matter of the Plan confirmation proceedings nor reasonably calculated to lead to the discovery of admissible evidence, is not proportional to the needs of the case, or is improper for any reason.

Further, the Zurich Insurers object to this Interrogatory to the extent that it purports to ask the Zurich Insurers to identify "the aggregate number of Chartered Organization only policies (where BSA is not an insured) that are being bought-back or otherwise settled under the Zurich Term Sheet."  Responding to this Interrogatory would impose an undue burden on the Zurich Insurers.  The Zurich Insurers understand that there are tens of thousands of Chartered Organizations.  In order to determine if the Zurich Insurers issued any insurance policies to any Chartered Organizations, someone would have to provide the Zurich Insurers with a list of the specific Chartered Organizations at issue, and Zurich would then have to conduct a policy search to determine if the Zurich Insurers issued any policies to such Chartered Organizations.  Given the very large number of Chartered

Organizations, such a policy search would impose an undue burden on the Zurich Insurers. Specifically, there is no way such a policy search could be completed before the end of the confirmation hearing in this case. Once a search were completed, the Zurich Insurers, with the assistance of counsel, would have to review each policy to determine whether the policy also insured BSA. In sum, this Interrogatory is overbroad, unduly burdensome, and not proportional to the needs of the case.

Subject to, and without waiving any of the foregoing objections, the Zurich Insurers refer the TCC to the Zurich Insurers' response to Interrogatory No. 7, which the Zurich Insurers incorporate here by this reference.

**<u>INTERROGATORY NO. 10:</u>**

Identify the aggregate number of Chartered Organization only policies where BSA is a named insured that are being bought-back or otherwise settled under the Zurich Term Sheet.

**<u>Response to Interrogatory No. 10:</u>**

The Zurich Insurers incorporate by reference their General Objections as if stated here in full. In addition to their general objections, the Zurich Insurers also make the following specific objections:

The Zurich Insurers object to this Interrogatory as overbroad, unduly burdensome, harassing, oppressive, and not proportional to the needs of the case to the extent it seeks information which is not reasonably available to the Zurich Insurers or within their possession, custody, or control.

In addition, the Zurich Insurers object to this Interrogatory to the extent that it is vague, ambiguous, overbroad, unduly burdensome, harassing, oppressive, seeks information

neither relevant to the subject matter of the Plan confirmation proceedings nor reasonably

calculated to lead to the discovery of admissible evidence, is not proportional to the needs of the

Further, the Zurich Insurers object to this Interrogatory to the extent that it purports to ask the

Zurich Insurers to identify "the aggregate number of Chartered Organization only policies

where BSA is a named insured that are being bought-back or otherwise settled under the Zurich

Term Sheet." Responding to this Interrogatory would impose an undue burden on the Zurich

Insurers. The Zurich Insurers understand that there are tens of thousands of Chartered

Organizations. In order to determine if the Zurich Insurers issued any insurance policies to any

Chartered Organizations, someone would have to provide the Zurich Insurers with a list of the

specific Chartered Organizations at issue, and Zurich would then have to conduct a policy

search to determine if the Zurich Insurers issued any policies to such Chartered Organizations.

Given the very large number of Chartered Organizations, such a policy search would impose an

undue burden on the Zurich Insurers. Specifically, there is no way such a policy search could be

completed before the end of the confirmation hearing in this case. Once a search were

completed, the Zurich Insurers, with the assistance of counsel, would have to review each policy

to determine whether the policy also insured BSA. In sum, this Interrogatory is overbroad,

unduly burdensome, and not proportional to the needs of the case.

Subject to, and without waiving any of the foregoing objections, the Zurich

Insurers refer the TCC to the Zurich Insurers' response to Interrogatory No. 7, which the

Zurich Insurers incorporate here by this reference.

[remainder of this page intentionally left blank]

DATED: January 7, 2022

    /s/ Robert D. Cecil, Jr.
Robert D. Cecil, Jr.
TYBOUT, REDFEARN & PELL
501 Carr Road, Suite 300
Wilmington, Delaware 19809
Phone: (302) 658-6901
E-mail: rcecil@trplaw.com

Mark D. Plevin (admitted *pro hac vice*)
Warrington S. Parker  (admitted *pro hac vice*)
Kevin D. Cacabelos (admitted *pro hac vice*)
CROWELL & MORING LLP
Three Embarcadero Center, 26th Floor
San Francisco, California 94111
Phone: (415) 986-2800
E-mail:  mplevin@crowell.com,
wparker@crowell.com,
kcacabelos@crowell.com

Toni M. Jackson  (admitted *pro hac vice*)
Tacie H. Yoon (admitted *pro hac vice*)
Rachel A. Jankowski (admitted *pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Phone: (202) 624-2500
Email: tjackson@crowell.com,
tyoon@crowell.com, rjankowski@crowell.com

Attorneys for American Zurich Insurance
Company, American Guarantee and Liability
Insurance Company, and Steadfast Insurance
Company

906428694.02

- 21 -

## **VERIFICATION**

I, Elizabeth Titus, am a Claim Specialist/Mass Litigation, Latent &
Environmental Claims, at Zurich American Insurance Company, and I am authorized to provide
this verification on behalf of American Zurich Insurance Company, American Guarantee and
Liability Insurance Company, and Steadfast Insurance Company.  I believe, based on reasonable
inquiry, that the foregoing answers are true and correct to the best of my knowledge,
information and belief.

I verify under penalty of perjury that the foregoing is true and correct.  Executed
on January 6, 2022 at Schaumburg, Illinois

_____ */s/ Elizabeth Titus* _____