THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BOY SCOUTS OF AMERICA AND | ) | Case No. 20-10343 (LSS) |
| DELAWARE BSA, LLC,[1] | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

**Objection Deadline:  February 11, 2022 at 4:00 p.m.**
**Hearing Date:  To be scheduled if necessary**

## TWENTIETH MONTHLY APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES OF PACHULSKI STANG ZIEHL & JONES LLP, AS COUNSEL TO THE TORT CLAIMANTS' COMMITTEE FOR THE PERIOD FROM OCTOBER 1, 2021 THROUGH OCTOBER 31, 2021

| | |
|---|---|
| Name of Applicant: | Pachulski Stang Ziehl & Jones LLP |
| Authorized to Provide Professional Services to: | Tort Claimants' Committee |
| Date of Retention: | Effective *nunc pro tunc* to March 4, 2020 by order signed on or about April 11, 2020 |
| Period for which Compensation and Reimbursement is Sought: | October 1, 2021 through October 31, 2021 |
| Amount of Compensation Sought as Actual, Reasonable and Necessary: | $1,927,818.75 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary: | $    35,083.66 |

This is a:      ☒monthly      ☐ interim      ☐final application.

The total time expended for fee application preparation is approximately 3.0 hours

and the corresponding compensation requested is approximately $1,000.00.

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

## PRIOR APPLICATIONS FILED

| Date Filed | Period Covered | Requested Fees | Requested Expenses | Approved Fees | Approved Expenses |
|---|---|---|---|---|---|
| 05/14/20 | 03/14/20 – 03/31/20 | $ 776,257.50 | $ 6,064.88 | $ 776,257.50 | $ 6,064.88 |
| 06/08/20 | 04/01/20/ - 04/30/20 | $ 644,670.50 | $ 3,045.94 | $ 642,670.50[2] | $ 3,045.94 |
| 08/03/20 | 05/01/20 – 05/31/20 | $ 659,618.50 | $ 3,681.07 | $ 659,618.50 | $ 3,182.37[3] |
| 08/27/20 | 06/01/20 – 06/30/20 | $ 475,879.50 | $ 5,651.98 | $ 475,879.50 | $ 5,651.98 |
| 09/11/20 | 07/01/20 – 07/31/20 | $ 678,423.50 | $ 6,612.09 | $638,423.50[4] | $ 6,612.09 |
| 09/29/20 | 08/01/20 – 08/31/20 | $ 658,721.00 | $31,487.15 | $ 526,976.80 | $ 31,478.15 |
| 11/30/20 | 09/01/20 – 09/30/20 | $ 588,902.00 | $15,777.88 | $ 471,121.60 | $ 15,777.88 |
| 01/04/21 | 10/01/20 – 10/31/20 | $ 666,283.50 | $19,826.31 | $ 533,026.80 | $ 19,826.31 |
| 02/16/21 | 11/01/20 – 11/30/20 | $ 504,479.00 | $11,755.14 | $ 403,583.20 | $ 11,755.14 |
| 03/01/21 | 12/01/20 – 12/31/20 | $ 837,406.00 | $12,415.20 | $ 669,924.80 | $ 12,415.20 |
| 03/23/21 | 01/01/21 – 01/31/21 | $ 901,667.00 | $19,291.93 | $ 721,333.60 | $ 19,291.93 |
| 05/26/21 | 02/01/21 – 02/28/21 | $ 763,236.50 | $ 9,386.00 | $ 610,589.20 | $ 9,386.00 |
| 07/02/21 | 03/01/21 – 03/31/21 | $1,124,713.50 | $27,728.90 | $ 899,770.80 | $ 27,728.90 |
| 08/04/21 | 04/01/21 – 04/30/21 | $1,193,608.00 | $18,802.13 | $ 954,886.40 | $ 18,802.13 |
| 08/30/21 | 05/01/21 – 05/31/21 | $1,517,191.50 | $47,494.45 | $1,213,753.20 | $44,069.70[5] |
| 10/22/21 | 06/01/21 – 06/30/21 | $1,623,890.75 | $16,089.84 | $1,299,112.60 | $ 16,089.84 |
| 12/28/21 | 07/01/21 – 07/31/21 | $ 784,586.00 | $25,808.76 | $ 627,668.80 | $ 25,808.76 |
| 01/04/22 | 08/01/21 – 08/30/21 | $ 863,107.25 | $24,494.57 | $ 690,485.80 | $ 24,494.57 |
| 01/04/22 | 08/31/21 – 09/30/21 | $1,347,686.00 | $31,703.72 | $1,078,148.80 | $ 31,703.72 |

## PSZ&J PROFESSIONALS

| Name of Professional Individual | Position of the Applicant, Number of Years in that Position, Prior Relevant Experience, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate (including Changes) | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| James I. Stang | Partner 1983; Member of CA Bar since 1980 | $1,195.00 | 116.60 | $139,337.00 |

---

[2]  In the Court's Order approving the First Quarterly Fee Application, the Court approved $1,418,928.00 in fees which reflects a reduction of $2,000.00.  For the purposes of this application, we have noted the reduction in the last month of that period.

[3]  In the Court's Order approving the Second Quarterly Fee Application, the Court approved $15,446.44 in expenses which reflects a reduction of $498.70.  For the purposes of this application, we have noted the reduction in the first month of that period.

[4]  In the Court's Order approving the Second Quarterly Fee Application, the Court approved $1,773,921.50 in fees which reflects a reduction of $40,000.00.  For the purposes of this application, we have noted the reduction in the last month of that period.

[5]  This amount reflects an agreed upon reduction between the U.S. Trustee and PSZ&J LLP of $3,424.75.

| Name of Professional Individual | Position of the Applicant, Number of Years in that Position, Prior Relevant Experience, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate (including Changes) | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Robert B. Orgel | Partner 1986; Member of CA Bar since 1981 | $1,145.00 | 62.70 | $ 71,791.50 |
| Alan J. Kornfeld | Partner 1996; Member of CA Bar since 1987; Member of NY Bar since 2004 | $1,145.00 | 27.00 | $ 30,915.00 |
| Debra I. Grassgreen | Partner 1997; Member of FL Bar since 1992; Member of CA Bar since 1994 | $1,095.00 | 56.50 | $ 61,867.50 |
| James K.T. Hunter | Of Counsel 1988; Member of CA Bar since 1976 | $1,095.00 | 38.30 | $ 41,938.50 |
| Victoria A. Newmark | Of Counsel 2008, Member of CA Bar since 1996 | $1,050.00 | 56.20 | $ 59,010.00 |
| Iain A.W. Nasatir | Partner 1999; Member of NY Bar since 1983 Member of CA Bar since 1990 | $1,025.00 | 158.70 | $162,667.50 |
| Kenneth H. Brown | Partner 2001; Member of CA Bar since 1981 | $ 995.00 | 132.90 | $132,235.50 |
| Maxim B. Litvak | Partner 2004; Member of TX Bar since 1997; Member of CA Bar since 2001 | $ 950.00 | 0.30 | $      285.00 |
| James E. O'Neill | Partner 2005; Member of DE Bar since 2001; Member of PA Bar since 1985 | $ 925.00 | 141.80 | $131,165.00 |
| Malhar S. Pagay | Partner 2003; Member of CA Bar since 1997 | $ 875.00 | 220.30 | $192,762.50 |
| Nina L. Hong | Partner 2006; Member of CA Bar since 1996 | $ 875.00 | 6.00 | $   5,250.00 |
| Tavi C. Flanagan | Of Counsel 2018; Member of CA Bar since 1993 | $ 875.00 | 17.00 | $ 14,875.00 |
| Jason S. Pomerantz | Partner 2019; Member of CA Bar since 1991 | $ 850.00 | 50.50 | $ 42,925.00 |
| John W. Lucas | Partner 2014; Member of NY Bar since 2004; Member of CA Bar since 2010 | $ 825.00 | 222.10 | $179,726.25 |
| Gina F. Brandt | Of Counsel 2000; Member of CA Bar since 1976 | $ 825.00 | 16.90 | $ 13,942.50 |
| Gail S. Greenwood | Of Counsel 2009; Member of CA Bar since 1994 | $ 825.00 | 1.60 | $   1,320.00 |

| Name of Professional Individual | Position of the Applicant, Number of Years in that Position, Prior Relevant Experience, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate (including Changes) | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Robert M. Saunders | Of Counsel 2001; Member of NY Bar since 1984; Member of FL Bar since 1995; Member of CA Bar since 2003 | $ 825.00 | 78.30 | $ 64,597.50 |
| Beth E. Levine | Of Counsel 2002; Member of NY Bar since 1992 | $ 825.00 | 142.70 | $117,727.50 |
| Gillian N. Brown | Of Counsel 2016; Member of CA Bar since 1999; Member of Washington D.C. Bar since 2008; Member of NY Bar since 2010 | $ 795.00 | 165.00 | $131,175.00 |
| William L. Ramseyer | Of Counsel 1989; Member of CA Bar since 1980 | $ 795.00 | 24.10 | $ 19,159.50 |
| Miriam P. Manning | Of Counsel 2008; Member of CA Bar since 1995 | $ 795.00 | 120.00 | $ 95,400.00 |
| Cia H. Mackle | Of Counsel 2007; Member of FL Bar since 2006 | $ 675.00 | 1.00 | $       675.00 |
| Steven W. Golden | Associate 2016; Member of NY and MD Bars since 2015; Member of TX Bar since 2016 | $ 625.00 | 200.40 | $125,250.00 |
| Kerri L. LaBrada | Paralegal | $ 460.00 | 5.90 | $    2,714.00 |
| Leslie A. Forrester | Law Library Director 2003 | $ 450.00 | 13.40 | $    6,030.00 |
| Patricia J. Jeffries | Paralegal 1999 | $ 425.00 | 13.20 | $    5,610.00 |
| Karina K. Yee | Paralegal 2000 | $ 425.00 | 41.50 | $ 17,637.50 |
| Patricia E. Cuniff | Paralegal 2000 | $ 425.00 | 0.60 | $       255.00 |
| Beth D. Dassa | Paralegal 2006 | $ 425.00 | 0.30 | $       127.50 |
| Elizabeth C. Thomas | Paralegal 2016 | $ 425.00 | 0.80 | $       340.00 |
| Cheryl A. Knotts | Paralegal 2000 | $ 395.00 | 2.70 | $    1,066.50 |
| Chuck M. Curts | Other | $ 395.00 | 1.80 | $       711.00 |
| Mike A. Matteo | Paralegal 2001 | $ 395.00 | 79.80 | $ 31,521.00 |
| Diane H. Hinojosa | Paralegal Assistant | $ 395.00 | 20.20 | $    7,979.00 |
| Myra Kulick | Other | $ 395.00 | 14.20 | $    5,609.00 |
| Sophia L. Lee | Other | $ 395.00 | 18.00 | $    7,110.00 |
| Andrea R. Paul | Case Management Assistant | $ 350.00 | 0.50 | $       175.00 |
| Charles J. Bouzoukis | Case Management Assistant | $ 350.00 | 2.70 | $       945.00 |
| Karen S. Neil | Case Management Assistant | $ 350.00 | 11.40 | $    3,990.00 |

**Grand Total:  $1,927,818.75**
**Total Hours:        2,283.90**
**Blended Rate:       $844.09**

## COMPENSATION BY CATEGORY

| Project Categories | Total Hours | Total Fees |
|---|---|---|
| Bankruptcy Litigation | 36.20 | $ 22,854.00 |
| Case Administration | 37.00 | $ 14,655.00 |
| Claims Admin./Objections | 37.20 | $ 18,856.50 |
| Compensation of Professional | 9.40 | $ 6,702.00 |
| Compensation of Prof./Others | 3.30 | $ 1,887.50 |
| General Creditors Comm. | 284.10 | $ 224,634.00 |
| Hearings | 26.10 | $ 25,179.50 |
| Insurance Coverage | 3.90 | $ 4,082.50 |
| Mediation | 70.20 | $ 73,877.00 |
| Non-Working Travel | 8.50 | $ 3,506.25 |
| Plan & Disclosure Statement | 1,766.10 | $1,530,126.00 |
| Retention of Prof/Others | 0.90 | $ 582.50 |
| Stay Litigation | 1.00 | $ 876.00 |

## EXPENSE SUMMARY

| Expense Category | Service Provider (if applicable)[6] | Total Expenses |
|---|---|---|
| Attorney Service | Nationwide Legal | $ 3,939.25 |
| Auto Travel | KLS Worldwide Transportation; Uber; Elite Transportation | $ 1,144.60 |
| Bloomberg | | $ 262.69 |
| Conference Call | AT&T Conference Call | $ 14.20 |
| Federal Express | | $ 115.51 |
| Filing Fee | USBC | $ 75.00 |
| Hotel Expense | Lotte NY Palace | $ 1,493.34 |
| Legal Research | Lexis/Nexis | $ 1,708.69 |
| Outside Services | Zoom; Horowitz Agency; Shai Creates; Everlaw | $21,139.05 |
| Court Research | Pacer | $ 869.80 |
| Postage | US Mail | $ 426.13 |
| Reproduction Expense | | $ 78.60 |
| Reproduction/Scan Copy | | $ 3,336.80 |
| Transcript | Reliable | $ 480.00 |

---

[6] PSZ&J may use one or more service providers.  The service providers identified herein below are the primary service providers for the categories described.

THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BOY SCOUTS OF AMERICA AND | ) | Case No. 20-10343 (LSS) |
| DELAWARE BSA, LLC,[1] | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

**Objection Deadline:  February 11, 2022 at 4:00 p.m.**
**Hearing Date:  To be scheduled if necessary**

### TWENTIETH MONTHLY APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES OF PACHULSKI STANG ZIEHL & JONES LLP, AS COUNSEL TO THE TORT CLAIMANTS' COMMITTEE FOR THE PERIOD FROM OCTOBER 1, 2021 THROUGH OCTOBER 31, 2021

Pursuant to sections 330 and 331 of Title 11 of the United States Code (the

"Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (collectively,

the "Bankruptcy Rules"), the "Order (I) Approving Procedures for (A) Interim Compensation

and Reimbursement of Expenses of Retained Professionals and (B) Expense Reimbursement for

Official Committee Members and (II) Granting Related Relief," signed on or about April 6, 2020

[Docket No. 341] (the "Administrative Order") and the "Order Amending the Order (I)

Approving Procedures for (A) Interim Compensation and Reimbursement of Expenses of

Retained Professionals and (B) Expense Reimbursement for Official Committee Members and

(II) Granting Related Relief," signed on or about August 6, 2021 [Docket No. 5899] (the

"Amended Administrative Order"), Pachulski Stang Ziehl & Jones LLP ("PSZ&J" or the

"Firm"), Counsel to the Tort Claimants' Committee (the "Committee"), hereby submits its

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

Twentieth Monthly Application for Compensation and for Reimbursement of Expenses for the

Period from October 1, 2021 through October 31, 2021 (the "Application").

By this Application PSZ&J seeks a monthly interim allowance of compensation

in the amount of $1,927,818.75 and actual and necessary expenses in the amount of $35,083.66

for a total allowance of $1,962,902.41 and payment of $1,542,255.00 (80% of the allowed fees)

and reimbursement of $35,083.66 (100% of the allowed expenses) for a total payment of

$1,577,338.66 for the period October 1, 2021 through October 31, 2021 (the "Interim Period").

In support of this Application, PSZ&J respectfully represents as follows.

## Background

1.      On February 18, 2020 (the "Petition Date"), the Debtors commenced their

Chapter 11 cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy

Code.  The Debtors have continued in possession of their property and continued to operate and

manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.  No trustee or examiner has been appointed in the Debtors' chapter 11 cases.

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3.      On or about April 6, 2020, the Court signed the Administrative Order,

authorizing certain professionals ("Professionals") to submit monthly applications for interim

compensation and reimbursement for expenses, pursuant to the procedures specified therein.  On

or about August 6, 2021, the Court signed the Amended Administrative Order.  The

Administrative Order, as amended by the Amended Administrative Order, provides, among other

things, that a Professional may submit monthly fee applications.  If no objections are made

within fourteen (14) days after service of the monthly fee application the Debtors are authorized

to pay the Professional eighty percent (80%) of the requested fees and one hundred percent

(100%) of the requested expenses.  Beginning with the period ending April 30, 2020 and at

three-month intervals thereafter, each of the Professionals shall file and serve an interim

application for allowance of the amounts sought in its monthly fee applications for that period.

All fees and expenses paid are on an interim basis until final allowance by the Court.

       4.     The retention of PSZ&J, as counsel to the Tort Claimants' Committee,

was approved effective as of March 4, 2020 by this Court's "Order Authorizing and Approving

the Retention of Pachulski Stang Ziehl & Jones LLP as Counsel to the Additional Tort

Claimants' Committee Effective as of March 4, 2020," signed on or about April 11, 2020 (the

"Retention Order").  The Retention Order authorized PSZ&J to be compensated on an hourly

basis and to be reimbursed for actual and necessary out-of-pocket expenses.

### PSZ&J's APPLICATION FOR COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES

#### Compensation Paid and Its Source

       5.     All services for which PSZ&J requests compensation were performed for

or on behalf of the Committee.

       6.     PSZ&J has received no payment and no promises for payment from any

source other than the Debtors for services rendered or to be rendered in any capacity whatsoever

in connection with the matters covered by this Application.  There is no agreement or

understanding between PSZ&J and any other person other than the partners of PSZ&J for the

sharing of compensation to be received for services rendered in these cases. As set forth in its employment application, PSZ&J has agreed to contribute ten percent (10%) of the total amount of fees it bills in these cases to the fund established in these cases to compensate survivors of sexual abuse. PSZ&J did not receive a retainer in this matter.

## Fee Statements

7.      The fee statements for the Interim Period are attached hereto as Exhibit A. These statements contain daily time logs describing the time spent by each attorney and paraprofessional during the Interim Period. To the best of PSZ&J's knowledge, this Application complies with sections 330 and 331 of the Bankruptcy Code and the Bankruptcy Rules. PSZ&J's time reports are initially handwritten by the attorney or paralegal performing the described services. The time reports are organized on a daily basis. PSZ&J is particularly sensitive to issues of "lumping" and, unless time was spent in one time frame on a variety of different matters for a particular client, separate time entries are set forth in the time reports. PSZ&J's charges for its professional services are based upon the time, nature, extent and value of such services and the cost of comparable services other than in a case under the Bankruptcy Code. PSZ&J has reduced its charges related to any non-working "travel time" to fifty percent (50%) of PSZ&J's standard hourly rate. To the extent it is feasible, PSZ&J professionals attempt to work during travel.

## Actual and Necessary Expenses

8.      A summary of actual and necessary expenses incurred by PSZ&J for the Interim Period is attached hereto as part of Exhibit A. PSZ&J customarily charges $0.10 per

page for photocopying expenses related to cases, such as this one, arising in Delaware.  PSZ&J's photocopying machines automatically record the number of copies made when the person that is doing the copying enters the client's account number into a device attached to the photocopier.  PSZ&J summarizes each client's photocopying charges on a daily basis.

9.      PSZ&J charges $.25 per page for out-going facsimile transmissions.  There is no additional charge for long distance telephone calls on faxes.  The charge for outgoing facsimile transmissions reflects PSZ&J's calculation of the actual costs incurred by PSZ&J for the machines, supplies and extra labor expenses associated with sending telecopies and is reasonable in relation to the amount charged by outside vendors who provide similar services.  PSZ&J does not charge the Committee for the receipt of faxes in these cases.

10.      With respect to providers of on-line legal research services (e.g., LEXIS and WESTLAW), PSZ&J charges the standard usage rates these providers charge for computerized legal research.  PSZ&J bills its clients the actual amounts charged by such services, with no premium.  Any volume discount received by PSZ&J is passed on to the client.

11.      PSZ&J believes the foregoing rates are the market rates that the majority of law firms charge clients for such services.  In addition, PSZ&J believes that such charges are in accordance with the American Bar Association's ("ABA") guidelines, as set forth in the ABA's Statement of Principles, dated January 12, 1995, regarding billing for disbursements and other charges.

## Summary of Services Rendered

12.     The names of the partners and associates of PSZ&J who have rendered

professional services in these cases during the Interim Period, and the paralegals and case

management assistants of PSZ&J who provided services to these attorneys during the Interim

Period, are set forth in the attached Exhibit A.

13.     PSZ&J, by and through such persons, has prepared and assisted in the

preparation of various motions and orders submitted to the Court for consideration, advised the

Committee on a regular basis with respect to various matters in connection with the Debtors'

bankruptcy cases, and performed all necessary professional services which are described and

narrated in detail below.  PSZ&J's efforts have been extensive due to the size and complexity of

the Debtors' bankruptcy cases.

## Summary of Services by Project

14.     The services rendered by PSZ&J during the Interim Period can be grouped

into the categories set forth below.  PSZ&J attempted to place the services provided in the

category that best relates to such services.  However, because certain services may relate to one

or more categories, services pertaining to one category may in fact be included in another

category.  These services performed, by categories, are generally described below, with a more

detailed identification of the actual services provided set forth on the attached Exhibit A.  Exhibit

A identifies the attorneys and paraprofessionals who rendered services relating to each category,

along with the number of hours for each individual and the total compensation sought for each

category.

A.    **Bankruptcy Litigation**

15.    This category relates to work regarding motions and adversary proceedings in the Bankruptcy Court.  During the Interim Period, the Firm, among other things: (1) performed work regarding an objection to the Debtors' motion for protective order; (2) attended to preliminary injunction and confidentiality issues; (3) reviewed and analyzed issues regarding an extension of the preliminary injunction stipulation; (4) reviewed and analyzed, and responded to, BSA's proposed changes to the sixth stipulation regarding an extension of preliminary injunction; (5) reviewed and analyzed issues regarding discovery deadlines; (6) reviewed and analyzed pleadings in the Washburn matter; (7) performed work regarding notices of service of discovery to insurers, the Future Claims Representative ("FCR"), The Church of Jesus Christ of Latter-day Saints ("TCJC"), and the Debtors; (8) performed work regarding the service of subpoenas; (9) performed work regarding a notice of withdrawal of Bankruptcy Rule 2004 motion; (10) performed work regarding exhibits to notices of service regarding subpoenas; (11) performed work regarding notices of service of discovery to Case Works and Reciprocity; (12) reviewed and analyzed the BSA reply relating to motion for protective order; (13) performed work regarding a motion to dismiss in the Washburn matter; (14) performed work regarding notices of service relating to responses to Debtors, insurers', Coalition's, and TCJC's discovery requests; (15) reviewed and analyzed Plan discovery, document review, and search issues; and (16) corresponded and conferred regarding litigation issues.

Fees:  $22,854.00;      Hours:  36.20

**B.    Case Administration**

16.    This category relates to work regarding administration of these cases. During the Interim Period, the Firm, among other things:  (1) performed work regarding Agenda Notices and Hearing Binders; (2) maintained document control; (3) maintained a memorandum of critical dates; (4) performed work regarding a notice of withdrawal of Bankruptcy Rule 2004 motion; (5) maintained service lists; (6) performed work regarding *pro hac vice* motions; and (7) performed work regarding subpoena issues.

Fees:  $14,655.00;        Hours:  37.00

**C.    Claims Admin/Objections**

17.    This category relates to work regarding claims administration and claims objections.  During the Interim Period, the Firm, among other things:  (1) reviewed and analyzed issues regarding PBGC claim discovery; (2) performed work regarding a statute of limitations chart; (3) performed work regarding an overlay for existing BSA settlements and judgements and reviewed and analyzed claims data regarding statute of limitations issues for claims settled to date; (4) reviewed and analyzed filed claims for duplicate claims filed in other bankruptcy cases; (5) reviewed and analyzed abuse issues in other bankruptcy cases for comparison purposes; (6) responded to claimant inquiries; (7) reviewed and analyzed claim objections filed in the BSA case; and (8) corresponded regarding claim issues.

Fees:  $18,856.50;        Hours:  37.20

**D.      Compensation of Professionals**

18.      This category relates to work regarding compensation of the Firm.  During the Interim Period, the Firm, among other things, performed work regarding its June and July 2021 monthly, and Fifth quarterly, fee applications.

Fees:  $6,702.00;         Hours:  9.40

**E.      Compensation of Professionals--Others**

19.      This category relates to work regarding compensation of professionals, other than the Firm.  During the Interim Period, the Firm, among other things:  (1) performed work regarding BRG, Rock Creek and Pasich fee applications; (2) performed work regarding a joinder to request to clarify ruling on Coalition's expenses; and (3) corresponded regarding compensation of professionals issues.

Fees:  $1,887.50;         Hours:  3.30

**F.      General Creditors Committee**

20.      This category relates to general creditors committee issues.  During the Interim Period, the Firm, among other things:  (1) prepared for and participated in telephonic conferences with State Court Counsel and Committee members regarding case issues; (2) performed work regarding a Committee website; (3) reviewed and responded to correspondence and calls from survivors and their counsel; (4) performed work regarding a general response to survivors and counsel regarding case status and Plan and Disclosure Statement issues; (5) prepared for and attended Town Hall conferences; (6) reviewed and analyzed statute of limitations issues; (7) reviewed and analyzed issues regarding a motion to

dismiss a complaint filed by a survivor against the Committee; (8) responded to media inquiries; (9) reviewed and analyzed claims issues; (10) performed work regarding a press release; (11) prepared for and attended a press conference; (12) maintained a tracking chart regarding survivor correspondence; (13) performed work regarding a motion to dismiss pro se adversary proceeding filed against the Committee; (14) performed research; (15) reviewed and analyzed issues regarding the sale of artwork; and (16) corresponded and conferred regarding general creditors committee issues.

Fees:  $224,634.00;        Hours:  284.10

### G.    Hearings

21.    This category relates to issues regarding preparing for and attending Court hearings.  During the Interim Period, the Firm, among other things:  (1) prepared for and attended a confirmation scheduling hearing on October 5, 2021; and (2) prepared for and attended Omnibus hearings on October 19 and 25, 2021.

Fees:  $25,179.50;        Hours:  26.10

### H.    Insurance Coverage

22.    This category relates to insurance coverage issues.  During the Interim Period, the Firm, among other things:  (1) reviewed and analyzed settlement letters to insurers; (2) reviewed and analyzed issues regarding Zurich and Enstar demands; (3) reviewed and analyzed Zenith settlement issues; and (4) corresponded and conferred regarding insurance issues.

Fees:  $4,082.50;        Hours:  3.90

### I.        Mediation

23.        This category relates to mediation issues.  During the Interim Period, the Firm, among other things:  (1) prepared for and attended a mediation session in New York on October 1, 2021; (2) reviewed and analyzed issues regarding offers to insurers; (3) reviewed and analyzed mediation strategy issues; (4) attended to scheduling issues; (5) performed work regarding mediation agenda issues; (6) prepared for and attended mediation sessions in Los Angeles on October 26, 27 and 28, 2021; and (7) corresponded and conferred regarding mediation issues.

Fees:  $73,877.00;        Hours:  70.20

### J.        Non-Working Travel

24.        During the Interim Period, the Firm incurred travel time while working on case matters.  Such time is billed at one-half the normal rate.

Fees:  $3,506.25;        Hours:  8.50

### K.        Plan and Disclosure Statement

25.        This category relates to work regarding a Plan of Reorganization ("Plan") and Disclosure Statement.  The Disclosure Statement was approved on September 30, 2021 after a five day hearing. Immediately after the approval of the Disclosure Statement, as counsel to the Tort Claimants' Committee, PSZ&J's efforts turned to the confirmation process, which included drafting approximately fifty requests for documents and requires for depositions, meetings with the Members of the Tort Claimants' Committee and/or their counsel multiple times a week, and

weekly town hall meetings so that the Tort Claimants' Committee could provide regular updates to its constituency per sections 1102(b) and 1103(c) of the Bankruptcy Code.

26.    The confirmation schedule approved by the Court was extremely compressed. *See Order (I) Scheduling Certain Dates And Deadlines In Connection With Confirmation Of The Debtors Plan Of Reorganization, (II) Establishing Certain Protocols, And (III) Granting Related Relief* [Docket Nos. 6528 and 7996] ("**Confirmation Scheduling Order**"). As set forth in the Confirmation Scheduling Order, the deadlines to propound discovery, object, and complete productions were very short. As a result, PSZ&J was required to devote more attorneys and paraprofessionals to complete the various work-streams within the specified deadlines. The extensive work undertaken by PSZ&J on behalf of the Tort Claimants' Committee is set forth in detail in the attached time records.

27.    In addition to the above, PSZ&J the following also generally describes the work during the Interim Period:  (1) reviewed and analyzed Plan discovery issues; (2) drafted document production requests to the Debtors; (3) reviewed and analyzed Plan strategy as related to discovery issues; (4) performed work regarding a litigation chart; (5) reviewed and analyzed issues regarding a protective order; (6) performed work regarding document production requests to Hartford; (7) reviewed and analyzed Plan objection issues; (8) performed work regarding subpoenas relating to Century; (9) maintained a discovery chart; (10) performed work regarding an objection to the Debtors' motion for protective order; (11) reviewed and analyzed discovery logistics issues; (12) reviewed and analyzed issues regarding potential Plan objections; (13) reviewed and analyzed transcripts regarding Restructuring Support Agreement motion

depositions; (14) performed work regarding a Plan objection list; (15) reviewed and analyzed issues regarding a Committee letter concerning the Plan; (16) performed work regarding a Plan confirmation issues outline; (17) reviewed and analyzed the Purdue case regarding third party release issues; (18) prepared for and attended a telephonic conference with State Court counsel on October 1, 2021 regarding Plan issues; (19) drafted requests to the Debtors for production of documents regarding Plan issues; (20) prepared for and attended a telephonic conference on October 2, 2021 with representatives of the Debtors and insurers regarding a scheduling order; (21) reviewed and analyzed a proposed scheduling order; (22) drafted document requests to the FCR; (23) performed work regarding requests for production of documents to the Debtors regarding solicitation issues; (24) reviewed and analyzed solicitation issues; (25) performed work regarding a scheduling order for Plan discovery; (26) reviewed and analyzed meet and confer issues; (27) reviewed and analyzed insurance coverage issues relating to Plan confirmation; (28) prepared for and attended a meet and confer with the Debtors' and insurers' counsel; (29) performed work regarding insurer-related requests for production of documents related to Plan confirmation; (30) performed work regarding proposed Plan discovery procedures; (31) performed work regarding a joinder to an insurers' group statement relating to discovery deadlines; (32) performed work regarding division of work and coordination of assignments relating to Plan discovery tasks; (33) reviewed and analyzed issues regarding evidence at the confirmation hearing; (34) reviewed and analyzed issues regarding model discovery to insurers and BSA; (35) reviewed and analyzed issues regarding depositions; (36) reviewed and analyzed an insurers' proposed statement regarding scheduling order; (37) attended

to valuation analysis issues; (38) reviewed and analyzed a stipulation regarding the use of summaries; (39) reviewed and analyzed the responses to discovery from the Debtors and the Coalition of Abused Scouts for Justice ("Coalition") and updated a discovery chart; (40) performed work regarding valuation discovery issues; (41) reviewed and analyzed discovery issues relating to Bates White; (42) reviewed and analyzed portions of the Disclosure Statement relating to Bates White analysis; (43) reviewed and analyzed expert valuation issues; (44) reviewed and analyzed Century's propounded discovery requests; (45) reviewed and analyzed issues regarding deposition notices; (46) drafted requests for production of documents to claims aggregators; (47) reviewed and analyzed a mediation parties list; (48) reviewed and analyzed lists of insurers; (49) reviewed and analyzed an AIG settlement; (50) performed work regarding insurance discovery; (51) reviewed and analyzed major themes for Plan objections and relationship to discovery; (52) reviewed and analyzed issues regarding a pensions memoranda; (53) reviewed and analyzed the Debtors' response to insurers' statement on scheduling; (54) performed work regarding requests for production of documents to TCJC; (55) reviewed and analyzed the insurers' opposition to Debtors' motion for protective order; (56) reviewed and analyzed issues regarding deposition subpoenas; (57) reviewed and analyzed privilege log issues; (58) reviewed and analyzed channeling injunction issues; (59) reviewed and analyzed issues regarding solicitation packages; (60) reviewed and analyzed issues regarding discovery needed for the best interest test; (61) reviewed and analyzed Rule 30(b)(6) notice issues; (62) reviewed and analyzed insurer discovery on third parties; (63) drafted a notice of Eric Green deposition; (64) drafted requests to Eric Green for production of documents; (65) reviewed and analyzed

pleadings relating to the Coalition; (66) reviewed and analyzed issues regarding a Plan-related discovery timeline; (67) performed work regarding a Town Hall presentation regarding Plan and Disclosure Statement issues; (68) performed work regarding Rule 30(b)(6) notices relating to the PBGC claim; (69) reviewed and analyzed issues regarding non-consensual releases and insurance neutrality; (70) monitored the status of Plan discovery; (71) reviewed and analyzed issues regarding service parties and service requirements regarding discovery; (72) reviewed and responded to inquiries from survivors and survivor counsel; (73) reviewed and analyzed voting issues; (74) performed work regarding service on registered agents; (75) performed work regarding Century requests for production of documents; (76) reviewed and analyzed proof of claim questions for Century; (77) reviewed and analyzed discovery issues relating to Liberty Mutual; (78) reviewed and analyzed the Disclosure Statement; (79) reviewed and analyzed Plan confidentiality issues; (80) reviewed and analyzed issues regarding the scope of Plan discovery; (81) performed work regarding a template for insurer discovery; (82) reviewed and analyzed abuse claims issues; (83) reviewed and analyzed Zalkin/Pfau discovery requests; (84) reviewed and analyzed privilege issues; (85) reviewed and analyzed declassification issues; (86) reviewed and analyzed issues regarding Green and Resolutions discovery; (87) reviewed and analyzed issues regarding defined terms; (88) reviewed and analyzed issues regarding a potential settlement trustee; (89) reviewed and analyzed issues regarding attorney voting protocol; (90) performed work regarding a Committee Disclosure Statement; (91) reviewed and analyzed Local Council confidentiality issues; (92) reviewed and analyzed discovery requests to the Committee, and considered issues raised by attorney client and mediation privileges;

(93) reviewed and analyzed Committee Plan and Disclosure Statement structure issues;

(94) performed work regarding an inbound discovery memorandum; (95) reviewed and analyzed

issues regarding objections and responses to discovery propounded to the Committee relating to

Plan confirmation; (96) performed work regarding a press release related to Plan solicitation

issues; (97) reviewed and analyzed issues regarding correspondence between the FCR and

Coalition relating to settlement demands; (98) reviewed and analyzed issues regarding Scout

protection programs; (99) reviewed and analyzed issues regarding retention of an expert for best

interest test analysis; (100) reviewed and analyzed the protocol for de-designation of summaries

and dashboards pursuant to Sixth Stipulation; (101) reviewed and analyzed issues regarding

Archer's refusal to produce records; (102) performed work regarding a privilege contact chart;

(103) performed work regarding Disclosure Statement-related issues; (104) performed work

regarding Stratos Legal and withdrawal of a Bankruptcy Rule 2004 motion; (105) reviewed and

analyzed issues regarding a chart of incoming discovery on the Committee; (106) reviewed and

analyzed responses to interrogatories; (107) reviewed and analyzed issues regarding Rule

30(b)(6) topics for insurers; (108) reviewed and analyzed solicitation issues with a

communications consultant; (109) reviewed and analyzed indemnity issues; (110) reviewed and

analyzed the Century objection to motion to quash KLS subpoena; (111) performed work

regarding responses to Century, other insurers', and Coalition discovery related to Plan issues;

(112) performed work regarding responses to Century interrogatories; (113) performed work

regarding the organization of a virtual file room regarding discovery; (114) performed work

regarding the Committee Plan and Chartered Organization issues; (115) performed work

regarding the Committee Plan and Trust Distribution Procedures ("TDP") issues; (116) reviewed and analyzed issues regarding Local Council dashboards; (117) reviewed and analyzed third party discovery compliance issues; (118) performed work regarding a Bankruptcy Rule 2019 statement to be filed with ballot submissions; (119) performed work regarding a summary of solicitation process for the Committee and State Court Counsel; (120) performed work regarding claim analysis issues; (121) performed work regarding an amended subpoena and requests for production of documents directed to Archer Systems; (122) reviewed and analyzed motions to quash Century subpoenas; (123) drafted objections and responses to Debtors' interrogatories propounded on the Committee; (124) reviewed and analyzed common interest issues; (125) reviewed and analyzed issues regarding the Hartford settlement history; (126) attended to common interest issues with the Coalition and FCR; (127) performed work regarding claims valuation issues; (128) reviewed and analyzed issues regarding the retention of experts for Plan confirmation; (129) reviewed and analyzed issues regarding potential Plan expert witness testimony; (130) reviewed and analyzed issues regarding the Committee Plan TDP; (131) performed work regarding revisions to the Committee Plan; (132) reviewed and analyzed de-designation notice issues; (133) attended to issues regarding Nationwide services relating to document production; (134) performed work regarding responses to propounding insurers interrogatories and requests for production of documents; (135) prepared for and attended telephonic conferences regarding claim valuation, expert witness, Plan and Disclosure Statement, and discovery issues; (136) performed work regarding objections and drafted responses to the Debtors' interrogatories propounded on the Committee; (137) performed work regarding

questions for Committee members and professionals regarding documents responsive to the Debtors' document production requests; (138) reviewed and analyzed severity charts in other abuse cases; (139) reviewed and analyzed issues regarding data related to Liberty and ORIC; (140) reviewed and analyzed issues regarding insurance settlements; (141) reviewed and analyzed issues regarding non-monetary settlement terms for insurance carriers; (142) reviewed and analyzed issues regarding discovery protocols; (143) updated the organization of discovery in the virtual file room and updated a tracking chart; (144) reviewed and analyzed issues regarding a Plan confirmation brief; (145) reviewed and responded to questions from survivors and counsel regarding voting issues; (146) reviewed and analyzed issues regarding deposition protocols; (147) performed work regarding the drafting of proposed deposition protocols; (148) reviewed and analyzed issues regarding expert reports; (149) reviewed and analyzed issues regarding a term sheet with insurers; (150) reviewed and analyzed mediation privilege issues; (151) organized subpoenas in the virtual file room and updated the discovery tracking chart; (152) performed work regarding sending de-designation notices to all BSA Local Councils; (153) attended to issues regarding a time extension for Legal Conversion relating to subpoena; (154) reviewed and analyzed confirmation discovery-related pleadings, including a lift stay motion; (155) attended to time extension issues regarding a subpoena to KLS Legal; (156) reviewed and analyzed CAMG objections and responses to subpoena; (157) drafted objections and responses to the Debtors' requests for production of documents directed to the Committee; (158) performed work regarding answering common interest interrogatories and drafting objections; (159) performed work regarding preparation for a hearing on a motion for

protective order; (160) reviewed and analyzed issues regarding partial mediation privilege

waiver notice; (161) performed work regarding comparing the Committee Plan to the BSA

version; (162) attended a Coalition Town Hall; (163) performed work regarding an outline of

arguments in opposition to the protective order motion; (164) reviewed and analyzed the

Debtors' reply brief in support of protective order and proposed order; (165) reviewed and

revised Committee responses to discovery, including responses to Century and other insurers,

TCJC, the Debtors, and the Coalition; (166) reviewed and analyzed pending issues and revised

the Committee Disclosure Statement; (167) reviewed and revised the Committee Plan and TDP

and compared them to the Debtors' versions; (168) performed work regarding a draft solicitation

procedures motion; (169) performed work regarding scheduling tasks relating to Plan

confirmation; (170) reviewed and analyzed issues regarding scope of testimony and need for

coverage expert; (171) performed work regarding drafting of common interest language;

(172) reviewed and analyzed issues regarding ballot access; (173) reviewed and analyzed the

Fortress objection to subpoena; (174) reviewed and analyzed issues regarding Plan alternatives;

(175) attended to staffing issues regarding Plan discovery; (176) reviewed and revised the

Committee Disclosure Statement in light of the Committee Plan; (177) reviewed and analyzed

Green & Resolutions document production; (178) reviewed and analyzed FSIC document

production; (179) performed work regarding document production logs; (180) reviewed and

finalized discovery responses for Debtors' discovery requests; (181) reviewed and finalized

responses and objections to discovery promulgated by TCJC; (182) reviewed and finalized

discovery responses for discovery promulgated by the Coalition; (183) reviewed and finalized

responses and objections to discovery promulgated by certain insurers; (184) performed work regarding notices of deposition for Resolutions; (185) reviewed and analyzed issues regarding electronically stored information retrieval and searching; (186) reviewed and analyzed issues regarding email retrieval; (187) reviewed and analyzed Continental discovery responses to the Committee; (188) reviewed and analyzed discovery responses of AIG; (189) reviewed and analyzed Century and Chubb discovery responses to the Committee; (190) performed work regarding an updated potential Plan confirmation objections outline; (191) reviewed and analyzed conflicts issues; (192) performed work regarding search terms and identification of documents in response to requests for production; (193) performed work regarding an outline of TCJC issues; (194) reviewed and analyzed responses to de-designation notices; (195) performed work regarding a document production chart for insurers' requests for production;

(196) reviewed and analyzed Allianz discovery responses to the Committee; (197) reviewed and analyzed issues regarding enforcing discovery requests; (198) performed work regarding an outline concerning legal and factual issues related to discovery; (199) reviewed and analyzed portions of the Disclosure Statement relevant to multiple discovery issues; (200) performed work regarding a chart regarding de-designation responses; (201) reviewed and analyzed potential custodians of documents; (202) reviewed and analyzed issues regarding the J.P. Morgan settlement; (203) reviewed and analyzed the Allianz relief from stay motion; (204) reviewed and analyzed document production issues relating to Rockcreek and CBRE; (205) corresponded and conferred with representatives of Local Councils regarding de-designation notices;

(206) reviewed and analyzed retirement plan issues; (207) reviewed and analyzed Green

production and related court filings; (208) performed work regarding a revised Green deposition

notice and related subpoena; (209) reviewed and analyzed updated Plan confirmation litigation

strategy issues; (210) performed work regarding retrieval of documents from BRG potentially

responsive to document requests propounded on the Committee; (211) reviewed and analyzed

issues regarding the classification of dashboards; (212) performed work regarding Plan

solicitation issues; (213) performed work regarding meet and confer requests to certain insurers;

(214) reviewed and summarized Hartford responses to the Committee's requests for production

of documents; (215) reviewed and analyzed common interest privileged communications relating

to insurance issues; (216) reviewed and analyzed mediation materials and prepared a narrative

regarding good faith mediation issues; (217) reviewed and analyzed mediation communications

for potential production; (218) reviewed and analyzed expert report and liquidation analysis

issues; (219) reviewed and analyzed issues regarding BSA interests in Local Council assets;

(220) performed work regarding discovery review parameters; (221) attended to issues regarding

a BRG expert report; (222) prepared for and attended meet and confers with Century, ORIC and

Hartford representatives; (223) reviewed and analyzed issues regarding an interim ballot report;

(224) reviewed and analyzed meet and confer issues relating to mediation privilege;

(225) reviewed and finalized 27 notices of deposition for insurers; (226) reviewed and analyzed

FCR and Ankura discovery responses; (227) prepared for and attended meet and confer calls

regarding San Diego Imperial, Orange County and Buffalo Trail Local Councils; (228) prepared

for and attended a meet and confer with Liberty Mutual; (229) reviewed and analyzed valuation

materials; (230) prepared for and attended telephonic conferences with Century, TCJC and

Allianz representatives regarding discovery issues; (231) reviewed and analyzed false claims issues; (232) performed work regarding an objection to liquidation analysis; (233) reviewed and analyzed issues regarding production of Committee member communications; (234) prepared for and attended a meet and confer with FFIC; (235) attended to deposition scheduling issues; (236) reviewed and analyzed a common interest agreement between the Committee, the Coalition and the FCR; (237) prepared for and participated in meet and confers with CNA, Travelers and AIG; (238) reviewed and analyzed the Debtors' objection to the Allianz relief from stay motion; (239) reviewed and analyzed a summary of Allianz discovery responses; (240) reviewed and analyzed Hartford interrogatories and requests for admission; (241) reviewed and analyzed Rockcreek and CBRE work product issues; (242) reviewed and analyzed mediation parties' positions regarding preservation of privilege; (243) reviewed and analyzed issues regarding sexual abuse verdicts; (244) performed work regarding meet and confer follow-up issues; (245) reviewed and analyzed documents for potential production; (246) reviewed and analyzed background information and documents, and reviewed procedures in preparation of document review projection; (247) reviewed and analyzed electronically stored information relating to Plan confirmation; (248) reviewed and analyzed the Hartford response to Rule 30(b)(6) notice; (249) reviewed and analyzed issues regarding Chartered Organization releases; (250) performed work regarding a memorandum relating to mediation bad faith issues; and (251) conferred and corresponded regarding Plan and Disclosure Statement issues.

Fees: $1,530,126.00;    Hours: 1,766.10

**L.      Retention of Professionals--Others**

28.      This category relates to work regarding retention of professionals, other than the Firm.  During the Interim Period, the Firm, among other things, performed work regarding the Claro retention application.

Fees:  $582.50;            Hours:  0.90

**M.      Stay Litigation**

29.      This category relates to work regarding the automatic stay and relief form stay motions.  During the Interim Period, the Firm, among other things, reviewed and analyzed the BSA motion regarding Local Council stay relief for contributions, and reviewed and analyzed the Debtors' opposition to insurers' motion for relief from stay.

Fees:  $876.00;            Hours:  1.00

<u>**Valuation of Services**</u>

30.      Attorneys and paraprofessionals of PSZ&J expended a total 2,283.90 hours in connection with their representation of the Committee during the Interim Period, as follows:

| Name of Professional Individual | Position of the Applicant, Number of Years in that Position, Prior Relevant Experience, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate (including Changes) | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| James I. Stang | Partner 1983; Member of CA Bar since 1980 | $1,195.00 | 116.60 | $139,337.00 |
| Robert B. Orgel | Partner 1986; Member of CA Bar since 1981 | $1,145.00 | 62.70 | $ 71,791.50 |
| Alan J. Kornfeld | Partner 1996; Member of CA Bar since 1987; Member of NY Bar since 2004 | $1,145.00 | 27.00 | $ 30,915.00 |

| Name of Professional Individual | Position of the Applicant, Number of Years in that Position, Prior Relevant Experience, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate (including Changes) | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Debra I. Grassgreen | Partner 1997; Member of FL Bar since 1992; Member of CA Bar since 1994 | $1,095.00 | 56.50 | $ 61,867.50 |
| James K.T. Hunter | Of Counsel 1988; Member of CA Bar since 1976 | $1,095.00 | 38.30 | $ 41,938.50 |
| Victoria A. Newmark | Of Counsel 2008, Member of CA Bar since 1996 | $1,050.00 | 56.20 | $ 59,010.00 |
| Iain A.W. Nasatir | Partner 1999; Member of NY Bar since 1983 Member of CA Bar since 1990 | $1,025.00 | 158.70 | $162,667.50 |
| Kenneth H. Brown | Partner 2001; Member of CA Bar since 1981 | $  995.00 | 132.90 | $132,235.50 |
| Maxim B. Litvak | Partner 2004; Member of TX Bar since 1997; Member of CA Bar since 2001 | $  950.00 | 0.30 | $       285.00 |
| James E. O'Neill | Partner 2005; Member of DE Bar since 2001; Member of PA Bar since 1985 | $  925.00 | 141.80 | $131,165.00 |
| Malhar S. Pagay | Partner 2003; Member of CA Bar since 1997 | $  875.00 | 220.30 | $192,762.50 |
| Nina L. Hong | Partner 2006; Member of CA Bar since 1996 | $  875.00 | 6.00 | $    5,250.00 |
| Tavi C. Flanagan | Of Counsel 2018; Member of CA Bar since 1993 | $  875.00 | 17.00 | $ 14,875.00 |
| Jason S. Pomerantz | Partner 2019; Member of CA Bar since 1991 | $  850.00 | 50.50 | $ 42,925.00 |
| John W. Lucas | Partner 2014; Member of NY Bar since 2004; Member of CA Bar since 2010 | $  825.00 | 222.10 | $179,726.25 |
| Gina F. Brandt | Of Counsel 2000; Member of CA Bar since 1976 | $  825.00 | 16.90 | $ 13,942.50 |
| Gail S. Greenwood | Of Counsel 2009; Member of CA Bar since 1994 | $  825.00 | 1.60 | $    1,320.00 |
| Robert M. Saunders | Of Counsel 2001; Member of NY Bar since 1984; Member of FL Bar since 1995; Member of CA Bar since 2003 | $  825.00 | 78.30 | $ 64,597.50 |
| Beth E. Levine | Of Counsel 2002; Member of NY Bar since 1992 | $  825.00 | 142.70 | $117,727.50 |

| Name of Professional Individual | Position of the Applicant, Number of Years in that Position, Prior Relevant Experience, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate (including Changes) | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Gillian N. Brown | Of Counsel 2016; Member of CA Bar since 1999; Member of Washington D.C. Bar since 2008; Member of NY Bar since 2010 | $ 795.00 | 165.00 | $131,175.00 |
| William L. Ramseyer | Of Counsel 1989; Member of CA Bar since 1980 | $ 795.00 | 24.10 | $ 19,159.50 |
| Miriam P. Manning | Of Counsel 2008; Member of CA Bar since 1995 | $ 795.00 | 120.00 | $ 95,400.00 |
| Cia H. Mackle | Of Counsel 2007; Member of FL Bar since 2006 | $ 675.00 | 1.00 | $ 675.00 |
| Steven W. Golden | Associate 2016; Member of NY and MD Bars since 2015; Member of TX Bar since 2016 | $ 625.00 | 200.40 | $125,250.00 |
| Kerri L. LaBrada | Paralegal | $ 460.00 | 5.90 | $ 2,714.00 |
| Leslie A. Forrester | Law Library Director 2003 | $ 450.00 | 13.40 | $ 6,030.00 |
| Patricia J. Jeffries | Paralegal 1999 | $ 425.00 | 13.20 | $ 5,610.00 |
| Karina K. Yee | Paralegal 2000 | $ 425.00 | 41.50 | $ 17,637.50 |
| Patricia E. Cuniff | Paralegal 2000 | $ 425.00 | 0.60 | $ 255.00 |
| Beth D. Dassa | Paralegal 2006 | $ 425.00 | 0.30 | $ 127.50 |
| Elizabeth C. Thomas | Paralegal 2016 | $ 425.00 | 0.80 | $ 340.00 |
| Cheryl A. Knotts | Paralegal 2000 | $ 395.00 | 2.70 | $ 1,066.50 |
| Chuck M. Curts | Other | $ 395.00 | 1.80 | $ 711.00 |
| Mike A. Matteo | Paralegal 2001 | $ 395.00 | 79.80 | $ 31,521.00 |
| Diane H. Hinojosa | Paralegal Assistant | $ 395.00 | 20.20 | $ 7,979.00 |
| Myra Kulick | Other | $ 395.00 | 14.20 | $ 5,609.00 |
| Sophia L. Lee | Other | $ 395.00 | 18.00 | $ 7,110.00 |
| Andrea R. Paul | Case Management Assistant | $ 350.00 | 0.50 | $ 175.00 |
| Charles J. Bouzoukis | Case Management Assistant | $ 350.00 | 2.70 | $ 945.00 |
| Karen S. Neil | Case Management Assistant | $ 350.00 | 11.40 | $ 3,990.00 |

**Grand Total:  $1,927,818.75**
**Total Hours:       2,283.90**
**Blended Rate:      $844.09**

31.    The nature of work performed by these persons is fully set forth in Exhibit

A attached hereto.  These are PSZ&J's normal hourly rates for work of this character.  The

reasonable value of the services rendered by PSZ&J for the Committee during the Interim Period is $1,927,818.75.

32.    In accordance with the factors enumerated in section 330 of the Bankruptcy Code, it is respectfully submitted that the amount requested by PSZ&J is fair and reasonable given (a) the complexity of the case, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under the Bankruptcy Code.  Moreover, PSZ&J has reviewed the requirements of Del. Bankr. LR 2016-2, the Administrative Order and the Amended Administrative Order, and believes that this Application complies with such Rule and Orders.

WHEREFORE, PSZ&J respectfully requests that the Court enter an order providing that, for the period of October 1, 2021 through October 31, 2021, an interim allowance be made to PSZ&J for compensation in the amount of $1,927,818.75 and actual and necessary expenses in the amount of $35,083.66 for a total allowance of $1,962,902.41 and payment of $1,542,255.00 (80% of the allowed fees) and reimbursement of $35,083.66 (100% of the allowed

expenses) be authorized for a total payment of $1,577,338.66; and for such other and further

relief as this Court deems proper.

Dated:  January 28, 2022           PACHULSKI STANG ZIEHL & JONES LLP

                                   */s/ James E. O'Neill*
                                   Richard M. Pachulski (CA Bar No. 90073)
                                   Alan J. Kornfeld (CA Bar No. 130063)
                                   Debra I. Grassgreen (CA 169978)
                                   Iain A.W. Nasatir (CA Bar No. 148977)
                                   James E. O'Neill (DE Bar No. 4042)
                                   919 North Market Street, 17th Floor
                                   P.O. Box 8705
                                   Wilmington, DE  19899-8705 (Courier 19801)
                                   Telephone:  (302) 652-4100
                                   Facsimile:  (302) 652-4400
                                   Email:   rpachulski@pszjlaw.com
                                            akornfeld@pszjlaw.com
                                            dgrassgreen@pszjlaw.com
                                            inasatir@pszjlaw.com
                                            joneill@pszjlaw.com

                                   *Counsel for the Tort Claimants' Committee*

## **DECLARATION**

STATE OF DELAWARE    :
                               :
COUNTY OF NEW CASTLE  :

James E. O'Neill, after being duly sworn according to law, deposes and says:

a)      I am a partner with the applicant law firm Pachulski Stang Ziehl & Jones LLP, and have been admitted to appear before this Court.

b)      I am familiar with many of the legal services rendered by Pachulski Stang Ziehl & Jones LLP as counsel to the Tort Claimants' Committee.

c)      I have reviewed the foregoing Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief.  Moreover, I have reviewed Del. Bankr. LR 2016-2, the Administrative Order signed on or about April 6, 2020, and the Amended Administrative Order signed on or about August 6, 2021, and submit that the Application substantially complies with such Rule and Orders.

*/s/ James E. O'Neill*
James E. O'Neill