

Jeffrey L. Schulman
Partner

286 Madison Avenue, Suite 401
New York, NY  10017
JSchulman@PasichLLP.com
(212) 686-5000
PasichLLP.com

**VIA ECF**

Hon. Laurie Selber Silverstein
Chief Judge, U.S. Bankruptcy Court
District of Delaware
824 North Market Street, 6th Floor
Wilmington, Delaware 19801

        Re:    *In re Boy Scouts of America*
                  No. 20-10343

Dear Judge Silverstein:

      The Official Committee of Tort Claimants (the "TCC") writes in response to "Zurich's" two January 27, 2022, letters: (i) moving to compel the TCC to provide further responses to two interrogatories and one document request; and (ii) to quash the TCC's Rule 30(b)(6) deposition notice in its entirety.[1]  The TCC provides this omnibus response because the issues raised by Zurich are inextricably intertwined. For the reasons that follow, both motions should be denied.

**I.**      **Background**

      This Court previously adjudicated various discovery motions involving the then non-settling insurers which included quashing Rule 30(b)(6) deposition notices. At that time, Zurich was a non-settling insurer.  The non-settling insurers' motion against the TCC was not adjudicated given that the TCC and the insurers continued working toward amicable resolutions of their disputes.  However, the TCC has remained in compliance with that Order as if it were issued to the TCC. The TCC has not sought any document or deposition discovery from any non-settling insurer since the Court issued that Order.

---

[1] "Zurich" includes American Zurich Insurance Company, American Guarantee and Liability Insurance Company, and Steadfast Insurance Company.

Hon. Laurie Selber Silverstein
January 31, 2022
Page 2



As of December 22, 2021, Zurich was no longer a non-settling insurer. By way of the Ninth Mediator's Report, Zurich filed a Settlement Term Sheet purporting to provide the terms of a $52,500,000 settlement between Zurich and the BSA ("Term Sheet"). The TCC had no prior knowledge that the settlement was being considered or negotiated, nor was the TCC ever asked to consider, comment or participate in the negotiation of that purported settlement. Other than the settlement amount itself, the TCC has no knowledge or information about how Zurich considered the insurance coverage it sold to the BSA, or its obligations under those policies relative to the BSA's sexual abuse liabilities in arriving at that agreed-upon amount.

In sum, Zurich has not and cannot reconcile how the TCC can be expected to produce discovery about the reasonableness of the Zurich settlement while simultaneously claiming that it has no obligation to produce discovery about the Zurich settlement. The motion to compel should also be denied because, in the absence of discovery from Zurich about the Term Sheet, the TCC does not have the fulsome ability to evaluate the reasonableness of the settlement amount. The motion quash should be denied because, to hold otherwise, would disregard the notion that neither this Court nor the TCC should be expected to "rubber stamp" the Term Sheet (which even Zurich will acknowledge is not a final settlement agreement).

## II.    Zurich's Refusal to Produce A Corporate Designee on Any Topic, Including The Term Sheet

The TCC sought document and deposition discovery from Zurich about the Term Sheet following its publication. Several meet and confer efforts resulted in the TCC's agreement to withdraw various topics from its Rule 30(b)(6) notice. The six topics in the notice that Zurich now seeks to quash all relate to the same, fundamentally relevant and certainly discoverable topic: insurance-coverage related facts relating to the Term Sheet; how Zurich values the insurance policies it sold from which that settlement would be funded; the claims considered in reaching that amount and the values ascribed to those claims; the allocation of those amounts to Zurich policies; and Zurich's historical valuation of the sexual abuse claims made against the BSA. These are topics with respect to which Hartford—another settling insurer—stipulated to certain facts and provided deposition discovery.

Zurich raises a number of strawman arguments to advance its false narrative. First, the fact that the Term Sheet "was negotiated in a mediation" does not absolve Zurich from providing any evidence or testimony. There are, no doubt, questions that Zurich may decline to answer about its settlement communications with the BSA and its communications with its own counsel. But the TCC is entitled to know the extent to which Zurich has first-hand knowledge as compared to that



which it only knows as a result of mediation or communicating with counsel. Despite Zurich's protestations to the contrary, the TCC is not interested in "exploring opposing counsel's thought process" or "invading" any privilege.

Second, the notion that earlier drafts of the Term Sheet are not relevant because Zurich executed a "final" Term Sheet is demonstrably flawed. The Term Sheet is not a binding agreement and, although presently the operative version, earlier versions are not "superseded" as it relates to that which is discoverable in this proceeding.

Third, the TCC does not seek discovery regarding "pre-petition claims handling" which is markedly different from Zurich's pre-petition valuation of BSA's sexual abuse liability. The latter is squarely relevant as evidenced by Zurich's production of documents relative to that issue. As has already been made clear to Zurich, the TCC does not intend to depose Zurich about how pre-petition claims were handled or investigated. All contemplated questions regarding prior defense and/or indemnity payments are relevant as to how Zurich valued claims and allocated those dollars to its policies.

### III. Zurich's Simultaneous Demand that the TCC Produce Discovery About the Term Sheet

As noted, Zurich is unwilling to produce documents or provide deposition testimony about the reasonableness of the settlement amount it achieved as reflected in the Term Sheet. The term sheet does not allow the TCC, the Court or any other stranger to the Term Sheet to understand how Zurich evaluated claims and coverage to arrive at that amount.[2] Thus, Zurich must surely understand that no member of the TCC has an educated opinion about the reasonableness of the settlement other than what they may be told by counsel. Zurich's purported concern about invading privilege is multiplied if the TCC were compelled to produce a witness because, at a minimum, Zurich drafted and negotiated the Term Sheet— not the TCC or any individual member. The only individuals on behalf of the TCC who potentially have documents and/or first-hand knowledge of any Term Sheet analysis are counsel and there is no basis in law or fact to support compelling the production of any such discovery.

Zurich also demands documents supporting Mr. Pachulski's statement to this Court that the settlement amount "is 50 percent less than we thought the settlement should have been, based on our insurance analysis and our special

---

[2] Zurich effectively asks the TCC and this Court to "rubber stamp" the Term Sheet which "a bankruptcy court cannot" do and the TCC should not be expected to do. *In re Woodberry*, 629 B.R. 239, 243 (E.D. Mich. 2021).

Hon. Laurie Selber Silverstein
January 31, 2022
Page 4



counsel's analysis." Once again, Zurich continues to withhold all discovery about how it achieved the settlement sum and is certainly unwilling to produce that information based on its "counsel's analysis."[3] As Mr. Pachulski states, the TCC's special insurance counsel believes that the Zurich settlement should be higher. Zurich's contention that this statement results in a subject matter privilege waiver is flawed for numerous reasons.

First, Zurich has known since September 2021 that the TCC believes Zurich's contribution should be at least double the settlement amount in the Term Sheet. In fact, the TCC, FCR and Coalition were all in agreement just a few months prior to the filing of the Term Sheet and communicated that to Zurich. Because the demand was made in the context of mediation, the TCC does not append that demand letter to this filing but will promptly provide it to the Court with Zurich's consent. The TCC can conclusively state, however, that Zurich was provided with a writing confirming the TCC's belief that a $92,500,000 settlement is woefully insufficient by at least 50% and "special counsel's analysis" supporting that belief.

Second, the authority relied upon by Zurich is plainly inapplicable. It cites no case for the proposition that communications between bankruptcy counsel and special insurance counsel for a committee of tort claimants is discoverable under any circumstances. There are no arguable circumstances here warranting a deviation from that rule. Thus, Zurich primarily relies on a case from the District of Kansas in which "the substance of a privileged communication between attorney and client" (the attorney being "an outside law firm") in one case was revealed in the opening statement in another case.[4] This case does not involve any communication between lawyer and client; does involve a communication and analysis already in Zurich's possession; does not involve any substantive communication whatsoever; and Mr. Pachulski's statement was not made in trial. Mr. Pachulski told this Court on December 21, 2021 what Zurich was previously told (and the detailed basis for its conclusion) on September 15, 2021.[5]

---

[3] Zurich is using the "shield and sword" in the very same way it wrongly accuses the TCC of utilizing.

[4] *Sprint Comms. Co. L.P. v. Comcast Cable Comms.*, 2014 WL 3611665, at *3 (D. Kan. July 22, 2014).

[5] The other authority cited by Zurich only further supports the TCC's argument. *Munguia-Brown v. Equity Residential*, 2020 WL 3057502, at *2 (N.D. Cal. June 9, 2020) involved evidence in the form of a declaration in opposition to a summary judgment motion. The court reaffirmed the well-settled rule that a subject matter waiver is only found in "those unusual situations in which fairness requires a further disclosure of related, protected information . . . to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Zurich must acknowledge that the statement in question here did not involve any "presentation of evidence" and amounted only to advocacy during a status conference. Moreover, there is no issue of fairness or advantage because, as noted, Zurich already has the document evidencing Mr. Pachulski's statement

Case 20-10343-LSS    Doc 8581    Filed 01/31/22    Page 5 of 5

Hon. Laurie Selber Silverstein
January 31, 2022
Page 5



IV.     Conclusion

      Based on the foregoing, the TCC respectfully requests that this Court deny Zurich's motions in their entirety, and compel Zurich to produce a corporate designee as soon as possible.

Respectfully submitted,

Jeffrey L. Schulman

JLS/cj

---

that, according to coverage counsel, Zurich's purported settlement is insufficient and the basis for that conclusion. *See also In re Welded Constr., L.P.*, 2021 WL 537406 (Bankr. D. Del. Feb. 15, 2021) (a party cannot rely on an audit; claim that it is independent and represent that it "revealed wrongdoing" while not disclosing it because a party "cannot disclose as much . . . as it pleases and then claim privilege to the rest."); *CP Kelco U.S. Inc. v. Pharmacia Corp.*, 213 F.R.D. 176, 179 (D. Del. 2003) (impermissible to use "allegedly privileged documents to arm its expert for testimony.").