

**RUGGERI PARKS WEINBERG** LLP

James P. Ruggeri
Phone: (202) 469-7752
jruggeri@ruggerilaw.com

January 31, 2022

**VIA CM/ECF**

Hon. Laurie Selber Silverstein
Chief Judge, United States Bankruptcy Court for
 the District of Delaware
824 North Market Street, 3rd Floor
Wilmington, DE 19801

Dear Judge Silverstein:

    Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company and Navigators Specialty Insurance Company (collectively, "Hartford") respectfully submit this letter in response to the *Motion of the Roman Catholic ad hoc Committee to Compel the Rule 30(b)(6) Depositions of (I) the Debtors, (II) Century, (III) Chubb, (IV) Hartford, and (V) Zurich* [D.I. 8500] ("Motion").

    The Roman Catholic Ad Hoc Committee ("RCAHC") has not identified any valid purpose to be served by a second Rule 30(b)(6) deposition of Hartford, as set forth in Hartford's January 24, 2022 *Letter to the Honorable Laurie Selber Silverstein from James P. Ruggeri* [D.I. 8455]. In its Motion, RCAHC contends that it needs discovery from *Hartford* to understand the impact that the terms of the *Century and Chubb Companies* Term Sheet ("Century Term Sheet") and the Plan, including the channeling injunction, will have on the insurance rights of Roman Catholic entities. But that is a misplaced request to make of Hartford. Even if it were a proper subject for fact discovery (which Hartford disputes), those questions should be directed to the drafters of those documents, not Hartford. While Hartford's Term Sheet includes a provision such that Hartford will obtain the benefit of any protections negotiated by other carriers, the fact remains that another carrier, not Hartford, negotiated the Century Term Sheet with BSA, the Coalition, and the FCR.

    To the extent that the Notice[1] is directed to issues regarding insurance, it is equally misplaced. Hartford's Rule 30(b)(6) witness, Mr. Michael Hotaling, testified fully with respect to many of the noticed topics at his December 2, 2021 deposition. And those that are not duplicative are not reasonably calculated to lead to relevant discovery; rather, they demand unprecedented searches for policies that might have been issued to thousands of entities over decades. Those topics would impose an enormous burden on Hartford and its witness. In

---

[1]     *See The Roman Catholic Ad Hoc Committee's Notice of Deposition to Hartford Accident and Indemnity Company* [D.I. 8296].

comparison to that extraordinary burden, the outcome would provide minimal benefit (if any) for the RCAHC, as set forth below and in Hartford's previously filed Motion to Quash. Accordingly, the Court should deny the RCAHC's request for a second deposition of Hartford.

### Hartford Responded in Full to the RCAHC's Written Discovery.

The crux of the RCAHC's Motion is that plan amendments, specifically, revisions to the channeling injunction and releases, require discovery on two issues: (1) which Abuse Claims against insureds and co-insureds are covered under Insurance Policies issued by the Settling Insurers; and (2) which insurance policies issued to Roman Catholic Entities are compromised pursuant to the Plan. *See* Motion ¶ 6. RCAHC further asserts that Hartford's deposition is necessary to explore those issues because Hartford failed to provide "substantive responses" to 2,535 requests to admit ("Requests") that RCAHC served on Hartford last month. *See* Motion ¶¶ 10, 14. Those Requests seek admissions from Hartford that all "Abuse Claims against insureds and co-insureds are covered under" various primary policies that Hartford issued to BSA.[2] The Requests thus go to issues of insurance coverage not before the Court.

In any event, even if the Requests were relevant to any issue in these Chapter 11 cases, the RCAHC's assertion that Hartford provided "no substantive responses" to the Requests is incorrect. On January 7, 2022, Hartford denied each Request but also provided an explanation for that denial. *See* Motion, Ex. C-2. Hartford's position is that some or all of the Abuse Claims are not covered for insureds or co-insureds under the policies identified in the Requests for a variety of reasons, including exhaustion of policy limits, release of certain policies and a range of other defenses to coverage that Hartford has asserted in its pending adversary proceeding against BSA. *See id.* Accordingly, Hartford denied each Request.

That denial was entirely appropriate, given the scope of the Requests, and Hartford's explanation went further than the rules require. Prior to filing this Motion, the RCAHC has never informed Hartford that its response to these Requests was incomplete, inadequate or deficient in any way. Nor did the RCAHC seek to meet and confer or issue follow-up Requests. Hartford's responses have been clear, unequivocal and, as RCAHC alleges, limpid. The RCAHC's contention that Hartford failed to respond to the Requests is simply a pretext for seeking onerous and unnecessary deposition testimony.

---

[2] The Requests have little, if anything, to do with the effect of the channeling injunction on Chartered Organizations. Notably, nowhere did any of the Requests mention coverage under any stand-alone policy issued to any Roman Catholic Entity. The Requests simply seek admissions that the referenced policies issued to BSA provide coverage for "Abuse Claims."

Hon. Laurie Selber Silverstein
January 31, 2022
Page 3 of 5

**There is no Basis for Re-Deposing Hartford on Topics That Have Already Been Addressed or That Concern Operation of Provisions Hartford Had No Role in Drafting.**

Many of the thirteen exceedingly broad topics in the Notice were previously covered at Mr. Hotaling's December 2 deposition, including topics pertaining to the Hartford Term Sheet and the terms of Hartford policies issued to BSA and the Local Councils.[3] The Motion never explains why those topics are relevant or necessary for a second deposition.[4]

Other topics in the Notice seek to depose Hartford on plan provisions to support the RCAHC's contention that the channeling injunction and certain releases found in the Century agreement compromise insurance rights held by Roman Catholic Entities under non-BSA, non-Local Council policies.[5] *See* Motion ¶ 4. But Hartford had no role in drafting these plan provisions or settlements. As an outsider to those provisions, Hartford has no *facts* regarding them that are not already available to the RCAHC and is not a proper witness to provide fact witness testimony concerning the impact that the Plan or other insurer settlements may have on Roman Catholic Entities' insurance rights.[6] Questions concerning the interpretation or construction of these provisions seek legal opinions, not fact witness testimony, but to the extent that RCAHC has appropriate questions concerning the operation of the Plan or the settlement agreements with other carriers, those should be directed to the parties that drafted them, not Hartford.

---

[3] The topics already covered include the Hartford Term Sheet (Topics #4-5), the BSA Insurance Policies issued by Hartford (Topic #6) and Local Council Policies issued by Hartford (Topic #7), as well as the terms of the BSA and Local Council policies with respect to Abuse Claims (Topics #10-11).

[4] Hartford respectfully refers the Court to its January 24, 2022 Motion to Quash for further discussion of the repetitive nature of the topics contained in the Notice, including reference to Mr. Hotaling's extensive testimony on a number of those topics.

[5] This includes topics concerning the treatment of Chartered Organizations under the Plan and the TDPs (Topic #2), and the scope of the Channeling Injunction (Topics #9 and #13).

[6] Indeed, while Hartford can read the Plan and the Century Term Sheet, Hartford is not aware of any adverse impact that the Plan, as currently structured, has on the Roman Catholic Entities' insurance rights with respect to Abuse Claims (or non-Abuse Claims). The Century Term Sheet does provide that Chartered Organizations release their rights under policies issued by any Settling Insurer, but only to the extent of that policy's coverage for Abuse Claims. *See, e.g.*, Seventh Mediator's Report, Ex. A., Century and Chubb Companies Term Sheet § 5 [D.I. 7745-1] ("[T]he Settling Insurers shall be granted such releases, injunctions, protections as are necessary to deliver finality with respect to . . . any other insurance policy issued by the Settling Insurers covering Claims or Causes of Action for Abuse Claims *with respect to such coverage for Abuse Claims*." (emphasis added)). Under the Plan, a Chartered Organization has no obligation for any such Abuse Claims, because the Channeling Injunction expressly provides that all Abuse Claims covered by any policy issued by a Settling Insurer (including a policy issued to a Roman Catholic Entity) are channeled to the Settlement Trust. *See* Plan Art. X.F.2 [D.I. 7832]. Hartford is not aware of anything in the Century Term Sheet – or elsewhere – that purports to effect a release of rights for non-Abuse Claims, or under policies issued by Non-Settling Insurers.

**The Attempts to Force Hartford to Produce a Witness to Testify Regarding All Policies Issued to Any Roman Catholic Entity Are Burdensome and Improper.**

The other focus of the Notice (and the Motion) is that the RCAHC seeks to require Hartford to educate and prepare a witness concerning (i) every policy that it (or any other Settling Insurer) issued to any Roman Catholic Entity over the entire 100-plus year life of the BSA, and (ii) whether every such policy provides coverage for Abuse Claims. RCAHC then seeks to compel Hartford to provide its legal analysis of whether -- under the terms of the Plan that Hartford did not draft -- each such policy (a) covers Abuse Claims and (b) is released, with Abuse Claims covered thereunder channeled to the Settlement Trust. *See, e.g.,* Notice at Topic #8 ("All policies of insurance issued to Roman Catholic Entities."); Topic #12 ("Which policies of insurance issued by any Settling Insurer [Century Term Sheet] cover Abuse Claims against insureds and co-insureds.").

The burden of these topics cannot be overstated and greatly outweighs the value (if any) that they could have for these plan confirmation proceedings. As Hartford repeatedly explained to the RCAHC, and has set forth in its Motion to Quash, it would be impossible to perform a search for "All Policies issued to Roman Catholic Entities," even if Hartford had months to conduct such a search. That includes nearly 200 dioceses, more than 17,000 parishes nationwide and thousands of religious schools and diocesan organizations and dates back more than a century.[7] Even if a search could be run for all of these organizations and it were possible to sort liability policies (which might provide coverage) from other types of policies that would not apply, it would take months, if not longer, and substantial expense to find, assemble, produce and prepare for a deposition on all such policies, and to ascertain what material is private policyholder information that is properly withheld or redacted.

It also would not be practical or meaningful to conduct a deposition on these topics even if searches for responsive documents could be completed. It is not possible to educate a witness to testify regarding every policy issued (by any Settling Insurer, not just Hartford) to a Roman Catholic Entity as it pertains to any Abuse Claim about which the RCAHC might elect to inquire. Nor is it practical (or appropriate) to use a deposition for the purpose of ambushing a witness to make spot determinations as to whether a particular insurance policy provides coverage for an Abuse Claim. Nearly every question would require a witness to consult numerous documents including policies, settlement agreements, exhaustion information and documents pertaining to individual Abuse Claims. And questions concerning Hartford's legal analysis of the Plan or its effect on policy obligations, of course, would almost surely infringe privilege. No meaningful testimony could come from such a deposition.

---

[7] In response to Hartford's request for a narrowed list of search terms, the RCAHC insisted that Hartford run nearly equally burdensome searches for terms such as "Bishop," "Parish," "Diocese," "Archdiocese," and "Catholic" which not only could produce thousands of policies (liability and otherwise), but which likely would produce just as many false positives (i.e., policies issued to persons or secular entities).

Hon. Laurie Selber Silverstein
January 31, 2022
Page 5 of 5

      Not only would this exercise be unprecedented, but it would be unnecessary in any event. If the RCAHC wants a stipulation with Hartford that Hartford cannot identify how many policies it issued to Roman Catholic Entities, or how many such policies would be released (in part) under the provisions of the Plan, then the RCAHC and Hartford may be able to reach such a stipulation (just as Hartford and the TCC resolved a number of their evidentiary and documentation issues). But there is no requirement to identify every policy or policy release that is being released or enjoined pursuant to a plan of reorganization in a mass tort case.[8]

      To the contrary, courts commonly approve broad releases and injunctions for both known and unknown insurance policies as consideration for settlement in mass tort cases under multiple provisions of the Bankruptcy Code, including free and clear sales of policies under § 363(f). The RCAHC has not cited any case where it was necessary to identify each and every policy interest that might be affected by Plan releases or injunctions as a precondition to confirmation, nor would such a requirement be feasible in any event. The limitless requests for policy information in the Notice are not a proper way to conduct discovery on this issue.

      Hartford respectfully requests that the Court deny the RCAHC's Motion.

                                          Respectfully submitted,

                                          James P. Ruggeri

cc:    All counsel of record (via CM-ECF)

---

[8] Moreover, any benefit to these proceedings that such a cumbersome deposition would have is minimal at best. Hartford's determination as to coverage, or the scope of a potential release, would be anything but determinative, given the limited factual information that likely would be provided to any witness. And RCAHC provides no basis as to how such a determination might help the Court resolve issues at plan confirmation.