**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>               Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>D.I. Ref.: 8500 |

### DEBTORS' OBJECTION TO MOTION OF THE ROMAN CATHOLIC AD HOC COMMITTEE TO COMPEL THE RULE 30(b)(6) DEPOSITION OF (I) THE DEBTORS, (II) CENTURY, (III) CHUBB, (IV) HARTFORD AND (V) ZURICH

Boy Scouts of America (the "**BSA**") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession (together, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby file this objection (the "**Objection**") to the *Motion of the Roman Catholic Ad Hoc Committee to Compel the Rule 30(b)(6) Deposition of (i) the Debtors, (ii) Century, (iii) Chubb, (iv) Hartford and (v) Zurich* [D.I. 8500] (the "**Motion**") filed by the Roman Catholic Ad Hoc Committee (the "**RCAHC**"). In support of the Objection, the Debtors state as follows:

### PRELIMINARY STATEMENT

As to the Debtors, the Motion seeks to compel an FRCP 30(b)(6) witness as to two topics concerning the interpretation of the Plan, the insurance for claims, and certain insurance policies covering Roman Catholic chartered organizations (as to which the Debtors have no knowledge). The Motion should be denied for three reasons.

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

*First*, the Motion seeks to compel testimony on topics that are not even included in the FRCP 30(b)(6) notice.  The RCAHC cannot compel the Debtors to produce a witness on topics that it has not noticed.

*Second*, the Motion seeks to require the Debtors to produce a witness to interpret certain provisions of the Plan.  The law is clear that a party does not have to produce a witness to testify to legal issues.  The RCAHC also seeks to compel the Debtors to run an analysis for it of data equally available to it and then have a witness testify to thousands of resulting points of data.  The Debtors have no obligation to run the analysis, and in any case no witness could memorize the thousands of data points, so a deposition is not the vehicle to obtain the information.  The Debtors have offered to provide information where they can, but the RCAHC elected instead to pursue this Motion.

*Third*, the Motion seeks to compel the Debtors to testify about the insurance policies that provide coverage to the Roman Catholic entities that the RCAHC purports to represent.  The Debtors lack knowledge regarding insurance policies belonging to those parties.  Moreover, even if the Debtors had this knowledge (and they do not), no witness can figure out and memorize thousands of data points.

## BACKGROUND

1.      On December 18, 2021, the Debtors filed the *Second Modified Fifth Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 7832] (the "**Plan**").[2]  Among other things, the Plan provides certain releases for chartered organizations even when they object to the Plan (the "**Opt-Out Chartered Organization**").  Specifically, with regard to any holder of an Abuse Claim against an Opt-Out Chartered Organization that is

---

[2]    Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan.

covered under an insurance policy issued by a Settling Insurance Company, the Plan provides

that:

> the sole recourse of [such] holder . . . shall be to and against the
> Settlement Trust pursuant to the Settlement Trust Documents, and
> such holder shall have no right whatsoever at any time to assert
> such [claim] against any Opt-Out Chartered Organization or any
> property or interest in property of any Opt-Out Chartered
> Organization.

Plan Art. X.F.1(d); *see also id.* Art. I.A.55 (providing for a channeling injunction with respect to

"Opt-Out Abuse Claims against the Opt-Out Chartered Organizations under any insurance policy

issued by the Settling Insurance Companies with respect to such coverage for Abuse Claims").

*Id.* Art. I.A.55.  Additionally, the Plan provides that "All Abuse Claims against insureds and co-

insureds covered under any insurance policies issued by the Settling Insurance Companies shall

be channeled . . . and released[.]"  *Id.* Art. F.2.

      2.      The RCAHC argues that it has been reasonable in seeking the information at issue

through requests for admission, and now has to pursue depositions because of the refusal of the

Debtors and the Settling Insurers to respond to them.  Initially, the RFAs did not seek the

information sought now, so there was no effort to obtain the information without testimony. In

any case, the RCAHC was not reasonable in pursuing RFAs.  To the contrary, the RCAHC has

been working hard to burden the estates, though it has declined to advise the Debtors which

Roman Catholic entities, if any, are actually directing it to litigate against the Plan.  *See* Ex. A

(emails between Jeremy Ryan and Sam Hershey).  On December 27, 2021, the RCAHC served

the Debtors with 478 requests for admission regarding various insurance policies.  *See* Motion

Ex. B-4.  These requests were in addition to the 26 requests for production, five interrogatories,

and 38 deposition topics that the RCAHC had already served on the Debtors, and the **4,900** requests for admission and other demands served on other Plan supporters.[3]

3.      Then, on January 13, 2022, the RCAHC served another 30(b)(6) deposition notice on the Debtors, this one containing 14 topics concerning the Debtors' settlement agreements with Century, Hartford and Zurich.  *See* Motion Ex. D-1.  The Debtors served responses and objections on January 25 and requested a meet-and-confer the next day.  *See* Motion Ex. J.  The RCAHC filed the Motion that evening, before the meet-and-confer had taken place.

4.      The next day, the Debtors and the RCAHC had a meet-and-confer.  The RCAHC stated that the 14 topics in the deposition notice were meant to "cover the waterfront," but the RCAHC was interested in only three topics: (1) the scope of the channeling injunction under the Plan as it pertains to the parties represented by the RCAHC; (2) the effect of the releases under the Plan on the insurance policies that provide coverage to the parties represented by the RCAHC; and (3) the consideration that the BSA gave to topics 1 and 2 when entering into the Hartford, Century, and Zurich term sheets.  *See* Ex. A.  The first two topics are limited to interpreting unambiguous legal documents.  Moreover, the topics were not included in the deposition notice.  Nonetheless, the Debtors agreed to produce a witness on the third topic. *See id.*

5.      The Motion now pursues "two main questions: a. What is the scope of Channeling Injunction with respect to Roman Catholic Chartered Organizations?  In other words, which Abuse Claims against Insurers and Co-Insurers are covered under Insurance Policies issued by the Settling Insurers?  b. What Insurance Policies issued to Roman Catholic entities, not to the

---

[3]     The Debtors worked with the RCAHC to provide information resolving the requests for admission. *See* Motion Ex. C-4.

Debtors or Local Councils, are being compromised pursuant to the Plan?"  *See* Motion ¶ 6.

Those topics were not included in the deposition notice.  Nonetheless, the Debtors offered to

work with the RCAHC to provide the information sought.[4]

## ARGUMENT

### A.  THE MOTION SHOULD BE DENIED FOR THREE REASONS

#### 1.  The Deposition Notice Does Not Include The Topics Raised In The Motion

6.      The deposition notice that the RCAHC served on the Debtors includes 14 topics,

but the Motion makes no mention of any of them and no argument to compel a witness to testify

on them. Further, the topics at issue here were not included in the deposition notice.

Consequently, the Motion should be denied.[5]  Indeed, counsel to the RCAHC recently opposed a

motion to compel in another case where the movants improperly sought to "expand the scope of

their discovery requests through arguments in a motion to compel."  *See In re Anderson News,*

*LLC*, Case No. 11-53811-CSS (Bankr. D. Del. 2020), Dkt. No. 336 at 15, n.11.  Judge Sontchi

---

[4]     Oddly, the RCAHC have told the Debtors that "[i]f BSA can agree that the RCAHC is not a Chartered Organization under the Plan . . . we can greatly narrow the discovery we are seeking[.]" *See Ex. A.*  The RCAHC later clarified that it sought this information to confirm that the RCAHC's "objection to the Plan does not trigger the Opt-Out mechanism since that applies only to Chartered Organizations that file objections." *Id.*  The Debtors responded that although the RCAHC is not a chartered organization, it has standing to object to the Debtors' Plan only if a Roman Catholic entity directs it do so. *Id.*  Accordingly, any objection that the RCAHC makes to the Debtors' plan will be attributed to the chartered organizations directing that objection, with all of the attendant consequences under the Plan. *Id.*  The Debtors asked the RCAHC who was instructing to litigate against the Plan, and the RCAHC declined to respond, stating only that "it is the province of the Court, not a litigant, to decide questions of standing." *Id.*

[5]     The Debtors reserve the right to oppose any request by the RCAHC to compel them to produce a witness to testify on the 14 topics in the RCAHC's deposition notice.  As the Debtors stated in their responses and objections (Mot. Ex. J), many of the topics in the deposition notice, such as "The Century and Chubb Companies Term Sheet" and "BSA Insurance Policies," are so broad that the Debtors could not possibly prepare a witness to testify on them.  Other topics, such as "Which BSA Insurance Policies cover Abuse Claims against insureds and co-insureds," call for legal conclusions and would require the Debtors' witness to memorize information regarding potentially thousands of insurance policies.

agreed with counsel to the RCAHC that the movants were improperly "attempting to expand the reach of their requests" through the motion to compel, and denied the motion as to those requests. *In re Anderson News, LLC*, 615 B.R. 45, 56 (Bankr. D. Del. 2020).

### 2. The Motion Should Be Denied Because The Topics Call For Legal Conclusions

7.      The two topics identified in the Motion seek legal conclusions.  Specifically, the scope of the channeling injunction is set forth in the Plan, a legal document which speaks for itself and is unambiguous:

> '<u>Channeling Injunction</u>' means the permanent injunction provided for in <u>Article X.F</u> with respect to (a) Abuse Claims against the Protected Parties, (b) Post-1975 Chartered Organization Abuse Claims against the Limited Protected Parties, and (c) Abuse Claims against the Limited Protected Parties that are covered under any insurance policy issued by the Settling Insurance Companies with respect to such coverage for Abuse Claims, (d) Opt-Out Abuse Claims against the Opt-Out Chartered Organizations under any insurance policy issued by the Settling Insurance Companies with respect to such coverage for Abuse Claims, to be issued pursuant to the Confirmation Order.

Plan Art. I.A.55.

8.      It is well-established that 30(b)(6) deposition topics that require the witness to interpret legal documents or offer legal conclusions are improper. *See, e.g.*, *Shreves v. Frontier Rail Corp.*, 2021 WL 6206635, at *4 (E.D. Wash. Mar. 23, 2021) (granting protective order regarding 30(b)(6) deposition notice upon finding that "a Rule 30(b)(6) deposition [is] an improper vehicle for taking discovery into legal contentions"); *Zeleny v. Newsom*, No. 17-CV-07357-RS (TSH), 2020 WL 3057467, at *2 (N.D. Cal. June 9, 2020) (denying motion to compel 30(b)(6) deposition because "oral testimony in which the witness has to answer questions on the spot about a party's legal contentions is an improper use of a deposition"); *Cardinal Aluminum Co. v. Cont'l Cas. Co.*, 2015 U.S. Dist. LEXIS 86162, at *9 (W.D. Ky. July 1, 2015) (granting

protective order upon finding that "questions as to legal conclusions exceed the scope of permissible discovery and are not appropriate for a 30(b)(6) deposition"); *see also Byrd v. Wal-Mart Transp.*, No. CV609-014, 2009 U.S. Dist. LEXIS 87356, at *5 (S.D. Ga. Sep. 23, 2009) (denying motion to compel 30(b)(6) deposition testimony because "plaintiffs' question did not seek unprotected facts.  Instead, it invited the deponent to testify as to mental impressions[.]"). Although it is hard to credit that the RCAHC does not understand the Plan, the Debtors have offered to work with the RCAHC to answer appropriate questions.

9.      The RCAHC also seeks the identification of every claim channeled, but is just as able as the Debtors to map the proof of claims to the Settling Insurance.  The RCAHC has no right to compel the Debtors to perform that analysis, educate a witness on the analysis, then produce the witness to testify to it, where the data is equally available to it.  Moreover, no witness could memorize the information mapping 82,000 claims to approximately 1,900 policies, so a deposition is inappropriate.  The information can only be conveyed through a writing, and the RCAHC served no interrogatory for the information.  Indeed, the RCAHC never before even asked the Debtors for this information.

### 3. The Motion Should Be Denied Because The Debtors Do Not Have The Information Sought

10.      The Debtors do not have the information sought about Roman Catholic insurance policies.  It is the Roman Catholic entities that know their own insurance programs.  The Debtors do not have access to such information.  Additionally, if the Debtors had the information, and they do not, the subject would be inappropriate for deposition.  Again, the Debtors would need to map 82,000 claims to the unknown number of Roman Catholic insurance policies, and no witness could memorize that data.

## **CONCLUSION**

The Debtors request that the Court deny the Motion and grant such other relief as the Court deems just and proper.

Dated: January 31, 2022
       Wilmington, Delaware

|  | */s/ Paige N. Topper*_____ |
|---|---|
| WHITE & CASE LLP | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| Jessica C. Lauria (admitted *pro hac vice*) | Derek C. Abbott (No. 3376) |
| Glenn M. Kurtz (admitted *pro hac vice*) | Andrew R. Remming (No. 5120) |
| Andrew Hammond (admitted *pro hac vice*) | Paige N. Topper (No. 6470) |
| Samuel P. Hershey (admitted *pro hac vice*) | 1201 North Market Street, 16th Floor |
| 1221 Avenue of the Americas | P.O. Box 1347 |
| New York, New York 10020 | Wilmington, Delaware 19899-1347 |
| Telephone:  (212) 819-8200 | Telephone:  (302) 351-9314 |
| Email:  jessica.lauria@whitecase.com | Email: dabbott@morrisnichols.com |
|      gkurtz@whitecase.com |      aremming@morrisnichols.com |
|      ahammond@whitecase.com |      ptopper@morrisnichols.com |
|      sam.hershey@whitecase.com | |

– and –

WHITE & CASE LLP

Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email: mandolina@whitecase.com
     mlinder@whitecase.com
     laura.baccash@whitecase.com
     blair.warner@whitecase.com