

Schiff Hardin LLP
233 South Wacker Drive
Suite 7100
Chicago, IL 60606

T 312.258.5500
F 312.258.5600

schiffhardin.com
Schiff Hardin LLP
233 South Wacker Drive
Suite 7100
Chicago, IL 60606

**Everett J. Cygal**
(312) 258.5783
ecygal@schiffhardin.com

Janaury 31, 2022

**Via Email and ECF**

The Honorable Laurie Selber Silverstein
United States Bankruptcy Judge
United States Bankruptcy Court For the District of Delaware
824 N. Market Street, 6th Floor
Wilmington, DE 19801

      Re:   *In re Boy Scouts of America and Delaware BSA, LLC*,
              Case No. 20-10343 (LSS)

Dear Judge Silverstein,

      We write on behalf of the Catholic Mutual Relief Society ("Catholic Mutual") and the Roman Catholic Ad Hoc Committee (the "RCAHC") (i) to reply to the objection of Century Indemnity Company ("Century") [Docket No. 8332] and the Debtors [Docket No. 8317] to the *Motion of Catholic Mutual and the Roman Catholic Ad Hoc Committee (1) for Protective Order Regarding Century Indemnity Company's Subpoena to Catholic Mutual; and (2) to Quash the Debtors' 30(b)(6) Deposition Notice to the Roman Catholic Ad Hoc Committee* [Docket No. 8209] (the "Protective Order Motion"); and (ii) in opposition to Century' cross-motion to compel the RCAHC to comply with Federal Rule of Bankruptcy Procedure 2019 (the "2019 Motion").[1]

      The thrust of the discovery disputes between Catholic Mutual and the RCAHC on the one hand, and Century and the Debtors on the other hand, is a concerted, joint effort by Century and

---

[1] On January 24, 2022 Hartford filed a Motion to Quash the Rule 30(b)(6) Subpoena that the RCAHC had issued to Hartford [Docket No. 8455]. On January 25, 2022, American Zurich filed a Motion to Quash and to Compel Responses to Discovery [Docket No. 8497]. On January 25, 2022, the RCHAHC filed a motion to compel the 30(b)(6) depositions of Hartford, American Zurich, the Debtors, Century and Chubb [Docket No. 8500].

The RCAHC rests on the rationale set forth in its motion to compel in response to the Hartford and Zurich American motions to quash. The RCAHC rests on its stated objection that American Zurich's written discovery is premature and would require the RCAHC to lay out plan objections before the deadline established by this Court. The RCAHC has informed Zurich American that any non-rebuttal witnesses related to those topics would be made available for deposition, should the RCAHC object to and present evidence on specific terms of Zurich American's settlement.



The Honorable Laurie Selber Silverstein
Janaury 31, 2022
Page 2

the Debtors to avoid having the treatment of Chartered Organizations under the Second Modified Fifth Amended Plan [Docket No. 7832] (the "Plan") challenged by the RCAHC. Rather than litigate the merits of the confirmability of the Plan, the Debtors and Century seek to silence the RCAHC by:

(i)   Belatedly challenging the standing of the RCAHC to appear and be heard in these cases;

(ii)  Scaring the RCAHC from objecting to the Plan by taking the position that any objection filed by the RCAHC would trigger a "death trap" in the Plan and deny all Roman Catholic Entities who were Chartered Organizations the benefits of the full post-1976 channeling injunction;[2] and

(iii) Seeking to disqualify the RCAHC's co-counsel, Potter Anderson & Corroon LLP ("Potter Anderson").

It is this backdrop by which the Court should judge the requests of the Debtors and Century.

## Meet and Confer Efforts

Century, in its letter, presented a very limited and one-sided record of the meet and confer communications that took place following the December 21, 2021 hearing. It is the RCAHC's position that Century did not raise any substantive Rule 2019 issues until after that hearing and then did so serially to random and inconsistent members of the RCAHC's legal team. The RCAHC offered on numerous occasions to meet and confer once Century put all of its Rule 2019 issues in a single writing so that the RCAHC would know with precision all of the issues Century wished to raise. Century never did so. The RCAHC sought to proactively meet and confer with Century on the discovery propounded by the RCAHC. Despite offering numerous dates and times, Century never indicated it would attend a meet and confer session and thus, none were had.[3]

Additionally, with respect to the RCAHC's motion to compel and related motion to seal, the RCAHC requested several times for confirmation of what was "confidential", but received no response.

---

[2] *See* email chain between S. Hershey and J. Ryan dated January 28, 2022, attached hereto as **Exhibit A**.

[3] The RCAHC has chosen not to burden the Court with the full record of communications with Century because it believes it is in all parties' interests to focus on the merits of the disputes. If the Court believes a full record should be before the Court, the RCAHC will produce for the Court every communication between the RCAHC and Century related to discovery from December 21 through the present.



The Honorable Laurie Selber Silverstein
Janaury 31, 2022
Page 3

### The Discovery Sought by Century and the Debtors is Untimely

As explained in more detail in the Protective Order Motion, the opposition of the RCAHC to the Plan has been well known since at least July 2021, when the RCAHC filed an objection to approval of the Disclosure Statement. The opportunity to take written discovery with respect to confirmation of the Plan and related issues closed on October 8, 2021 under the Court's original Scheduling Order [Docket No. 6528]. Similarly, fact witness depositions needed to be noticed by November 24, 2021 to comply with the Local Rules and the Scheduling Order's original deadline to complete all fact depositions by December 1, 2021. After the Debtors and Century materially modified the Plan with Century's settlement (uniquely hostile to Roman Catholic Chartered Organizations), the Court amended the Scheduling Order to allow for new written discovery regarding "solicitations, settlements, voting and related issues." This discovery needed to be completed by January 14, 2022 with related depositions to be completed by January 28, 2022. *See* Docket No. 7996.

The inescapable fact is that all discovery, other than discovery related to the Century settlement (and other insurer settlements) or voting issues, needed to be served or noticed in October and November of 2021. Both BSA and Century made tactical decisions not to request **any discovery** of the RCAHC and Catholic Mutual.

### The Debtors Have No Need for Voting Discovery

The Debtors' own objection to the Protective Order Motion reveals that couching discovery as voting related is nothing more than a pretext to attack the RCAHC's standing. Tellingly, the Debtors' objection offers not a single word explaining why they need voting discovery of the RCAHC.

Unlike Class 8, where the Debtors and others have undertaken a furious strategy to litigate a class's fatal rejection into an acceptance, no similar objective is present in Class 9. The Debtors admit that Class 9, the class in which Roman Catholic Chartered Organizations voted, has accepted the plan. *See* Docket No. 8317 at pp. 4-5. Their final voting report, Docket No. 8382, confirms that Class 9 voted in excess of 69% in favor of the plan. The Court should ask what legitimate purpose does the Debtors' discovery try to achieve when they already have an accepting class under section 1126 of the Bankruptcy Code.

### The RCAHC Has Complied with Bankruptcy Rule 2019

The RCAHC has complied with Rule 2019 and no additional disclosures are required under Rule 2019. The RCAHC filed its *Notice of Appearance* [Docket No. 5420] and its *Verified Statement of the Roman Catholic Ad Hoc Committee Pursuant to Bankruptcy Rule 2019* [Docket No. 5421] on June 25, 2021 (the "2019 Statement"). Amended verified statements



under Rule 2019 were filed on July 29, 2021 [Docket No. 5825] (the "<u>Amended 2019 Statement</u>") and December 17, 2021 [Docket No. 7805] (the "<u>Second Amended 2019 Statement</u>" and together with the 2019 Statement and the Amended 2019 Statement, the "<u>2019 Statements</u>"). As disclosed in the Second Amended 2019 Statement, the RCAHC is currently compromised of Catholic Mutual and the 13 dioceses listed therein.

With respect to the RCAHC's 2019 Statements, Century complains (i) that the RCAHC must produce the agreement evidencing its authority to act on behalf of its members, (ii) that Catholic Mutual must identify the dioceses on which it predicates its standing to serve as a member of the RCAHC. Rule 2019(c)(4) requires a verified statement to include "a copy of the instrument, *if any*, authorizing the entity, group or committee to act on behalf of creditors or equity security holders." Fed. R. Bankr. P. 2019(c)(4) (emphasis added). The plain language of the Rule clearly recognizes that not all committees will have instruments authorizing them to act on behalf of creditors. *Id.* Indeed, in an opinion issued prior to amendments leading to the current version of Rule 2019, Judge Walrath, discussing the nature of ad hoc committees, specifically noted "the at-will nature of committee membership is one of the defining characteristics of ad hoc committees…. Because membership is at-will, an ad hoc committee cannot bind members absent their consent and generally all members must agree on any position the committee takes." *In re Washington Mut., Inc.*, 419 B.R. 271, 274-75 (Bankr. D. Del. 2009). The Court in *Washington Mutual* also noted: "[o]f course, ad hoc committees may voluntarily agree to formalize their relationship through committee bylaws…." *Id.* at 275, n.6. Here, the RCAHC has formalized its relationship through bylaws and a copy of those bylaws was produced to Century on January 27, 2022.

Century takes issue with the fact that the RCAHC's responses to Century's Requests for Admission provide that the RCAHC speaks only on its "own behalf" and not for each of its members. This ignores the practical reality of many ad hoc committees. The counsel representing an ad hoc group often may not represent the individual members with respect to their individualized issues. Instead, the group may come together and hire counsel to take positions in the case based on their aligned interests and each member of the committee may have its own counsel handling its own individual issues, such as ballots or proofs of claim.

The plain language of Rule 2019 does not require that a Committee "represent" multiple creditors: "In a chapter 9 or 11 case, a verified statement . . . shall be filed by every group or committee that *consists of or represents,* multiple creditors . . ." Fed. R. Bankr. P. 2019(b)(1) (emphasis added). Moreover, as noted in the 2019 Statements, the RCAHC was formed by its members "to protect and advance their common interests in the Chapter 11 Cases." *See* Rule 2019 Statements.

The RCAHC is a committee that "consists of" Catholic Mutual and the 13 dioceses listed on the Second Amended 2019 Statement who are "acting in concert to advance their common


The Honorable Laurie Selber Silverstein
Janaury 31, 2022
Page 5

interests." The RCAHC's ability to speak "on its own behalf" is not inconsistent with Rule 2019 or Judge Walrath's discussion of ad hoc committees in *Washington Mutual*. Indeed, members of the RCAHC have their own individual counsel that speak for those individual members with respect to their individual issues, including claims and ballots, many of whom have filed separate notices of appearance in these cases. *See, e.g.*, *Notice of Appearance filed by the Archdiocese of New York* [Docket No. 5624]; *Notice of Appearance filed by The Norwich Roman Catholic Diocesan Corporation* [Docket No. 5980]; *Notice of Appearance filed by The Archdiocese of Galveston-Houston* [Docket No. 6333]; *Notice of Appearance filed by The Roman Catholic Diocese of Dallas* [Docket No. 6339].

Century points to the fact that the Coalition and other law firms representing multiple plaintiffs have provided copies of their retention agreements and demands that Potter Anderson and Schiff Hardin do the same. Those groups are different from the RCAHC because the Coalition or the law firm is purporting to represent each of the members in its group. As noted above, Potter Anderson and Schiff Hardin are not purporting to represent any of the members of the RCAHC in their individual capacities, other than Catholic Mutual which representation was disclosed to and consented to by all other RCAHC members. Instead, they are representing the RCAHC in the positions that it takes as a group of parties-in-interest acting in concert. Thus, their engagement letters are not required to be disclosed because they are not "instrument[s] . . . authorizing the [RCAHC] to act on behalf of creditors or equity security holders."

Next, Century argues that Catholic Mutual must disclose the dioceses on which predicates its standing to serve as a member of the RCAHC. Setting aside that Century does not have grounds to assert who can or cannot be a member of the RCAHC (only the RCAHC and its members can decide with whom they will act in concert with to advance their common interests), the Rule 2019 Statements clearly described Catholic Mutual's role and claims in the Chapter 11 Cases. *See* Rule 2019 Statements. That the 2019 Statements disclose that "Catholic Mutual counts 112 of the 195 United States Catholic archdioceses and dioceses among its members" does not mean that Catholic Mutual "represents" those entities and is required to file its own Rule 2019 statement or otherwise disclose its members pursuant to Rule 2019. As clearly noted in the Rule 2019 Statements, Catholic Mutual "is a party in interest and has a Claim against BSA to the extent BSA fails to honor its obligations to indemnify and provide primary liability coverage for Abuse Claims that now or in the future may be asserted against Catholic Mutual's members . . . ." Nonetheless, Catholic Mutual provided to Century a list of its member archdiocese and dioceses on January 27, 2022.

The RCAHC has fully complied with its disclosure obligations under Rule 2019. It has provided the information required by each subjection of Rule 2019(c) as set forth in the chart below:



The Honorable Laurie Selber Silverstein
Janaury 31, 2022
Page 6

| **Provision of Rule 2019** | **Compliance by RCAHC** |
|---|---|
| (c)(1)(A) with respect to a group or committee, other than a committee appointed under § 1102 or § 1114 of the Code, the formation of the group or committee, including the name of each entity at whose instance the group or committee was formed or for whom the group or committee has agreed to act. | *See* Rule 2019 Statements, at ¶4 ("In June 2021, representatives of Catholic Mutual and certain of its member dioceses and archdioceses formed the Committee to protect and advance their common interests in the Chapter 11 Cases.") |
| (c)(1)(B) with respect to an entity, the employment of the entity, including the name of each creditor or equity security holder at whose instance the employment was arranged; | To the extent the RCAHC is an "entity", *see* 2019 Statement, at ¶4 |
| (c)(2)(A)/(c)(3)(A) name and address; | *See* 2019 Statements, Ex. A |
| (c)(2)(B) the nature and amount of each disclosable economic interest held in relation to the debtor as of the date the entity was employed or the group or committee was formed; and | *See* 2019 Statement at ¶5-6 ("Each of the Catholic dioceses and archdioceses and their respective Chartered Organizations represented by a member of the Committee is a party in interest and holds a Claim against BSA arising from BSA's obligation to indemnify and hold Chartered Organizations harmless for any injuries or damages arising out of official scouting activities or arising out of BSA membership standards, including, but not limited to, Abuse Claims that now or in the future may be asserted against such entities by scouts or other persons. Each of these Catholic entities also is a party in interest and holds a Claim against BSA arising out of BSA's obligation to provide Chartered Organizations primary general liability insurance to cover Chartered Organizations and related entities with respect to Claims arising out of official scouting activities, including, but not limited to, insurance coverage for Abuse Claims that now or in the future may be asserted against such entities by scouts or other persons. |



| | |
|---|---|
| | Finally, each of these Catholic entities have valuable property rights as additional insureds entitled to defense and indemnity obligations under BSA Insurance Policies and Local Council Insurance Policies that will be affected by the Plan and other proceedings in these Chapter 11 Cases. As of the date of this filing, the date, number, and amount of each Claim held by these Catholic entities is unknown. |
| | Catholic Mutual is a party in interest and has a Claim against BSA to the extent BSA fails to honor its obligations to indemnify and provide primary liability coverage for Abuse Claims that now or in the future may be asserted against Catholic Mutual's members, including Catholic entities represented by members of the Committee, as discussed above, and to the extent those members seek coverage under the certificates issued to them by Catholic Mutual. As of the date of this filing, the date, number, and amount of Catholic Mutual's Claim is unknown.") |
| (c)(2)(C) with respect to each member of a group or committee that claims to represent any entity in addition to the members of the group or committee, other than a committee appointed under § 1102 or § 1114 of the Code, the date of acquisition by quarter and year of each disclosable economic interest, unless acquired more than one year before the petition was filed; | *See* 2019 Statement at ¶5-6 |
| (c)(3)(B) if not disclosed under subdivision (c)(1) or (c)(2), with respect to each creditor or equity security holder represented by an entity, group or committee, other than a committee appointed under § 1102 or § 1114 of the Code: . . . the nature and amount of each disclosable economic interest held in | *See* 2019 Statement at ¶5-6 |



| | |
|---|---|
| relation to the debtor as of the date of the statement; | |
| (c)(4) a copy of the instrument, if any, authorizing the entity, group, or committee to act on behalf of creditors or equity security holders. | *See supra* at 5. No such instrument is required to exist. To the extent the RHAC bylaws constitute such an instrument, a copy of those bylaws was produced on January 27, 2022. |

Century is attempting to conflate the disclosure obligations under Rule 2019 with standing in these cases and the ability of the RCAHC to bind its members individually or Catholic Mutual's ability to bind the individual dioceses that comprise its membership. As set forth in the Rule 2019 Statements, the members of the RCAHC "formed the Committee to protect and advance their common interests in the Chapter 11 Cases." *See* Rule 2019 Statements at ¶4. While Rule 2019 contemplates that an entity, group or committee may "represent" others and actually defines "represent" (*see* Rule 2019(a)(2)), Rule 2019 does not require a group or committee to "represent" others. *See* Rule 2019(b).

It is entirely permissible for the RCAHC to act in concert, as a group consisting of multiple creditors, to advance their common interest.

### **The RCAHC Has Standing in these Cases**

The Rule 2019 discovery is an attempt to somehow demonstrate that either the RCAHC does not have standing or, as the Debtors contend, it can only have standing if it can bind its members and all Roman Catholic Chartered Organizations.

As noted, the RCAHC is comprised of Catholic Mutual and 13 archdioceses and dioceses. It has been an active participant and opponent of the Debtors since it first appeared. If there were any standing arguments, they were forfeited long ago:

1. The RCAHC was an active litigant in opposition to the RSA during July and August 2021, filing objections, examining witnesses and making arguments before the Court.

2. The RCAHC is a mediation party, which required the consent of the Debtors and Century.

3. The RCAHC was an active participant in the Disclosure Statement hearing. And, as the Court will recall, the responsibility for ensuring that adequate, plan English disclosures of the contents of the then Plan were delegated by the Debtors and the

Case 20-10343-LSS   Doc 8594   Filed 01/31/22   Page 9 of 13



Court to the RCAHC and UMAHC. *See, e.g.*, Sept. 21, 2021 Hr'g Tr. 59, 169; Sept. 22, 2021 Hr'g Tr. 16, 42, 46, 55; Sept. 23, 2021 Hr'g Tr. 104-106.

The Court does not need reminding of the numerous other hearings at which the RCAHC appeared and where no standing issues were raised.

There also can be no doubt that the members of the RCAHC are parties-in-interest in these cases and thus, the RCAHC has standing to be heard on all issues in these cases. The Debtors' Plan makes it clear. Each and every archdiocese and dioceses that is a member of the RCAHC is listed on the Debtors' Notice of Current and Potential Protected Parties and Limited Protected Parties maintained on the website of the Debtors' claims and noticing agent, Omni. *See* Notice of Current and Potential Protected Parties and Limited Protected Parties, dated September 30, 2021.[4]

That notice explicitly told the RCAHC members that they were "**ADVISED TO CONSULT WITH YOUR ATTORNEY REGARDING HOW THE DESIGNATION OF ADDITIONAL PROTECTED PARTIES OR LIMITED PROTECTED PARTIES MAY AFFECT YOUR RIGHTS.**" (capitalization and bolding in original).

Moreover, the express provisions of the current Plan and the Century Term Sheet intend to affect the insurance rights that archdioceses and dioceses procured on their own behalf. Paragraphs 9 and 10 of the Century Term Sheet, which is incorporated into the Plan, seek to effectuate non-consensual releases and forced assignment of rights any insurance policy ever issued to any party, including RCAHC members, to the extent they cover Abuse Claims.

If a plan that (i) expressly says it is affecting a party's rights; (ii) seeks to impose non-consensual releases on that party; and (iii) forcibly transfers the party's own property does not confer standing on that party or an ad hoc committee comprised of those parties, then the RCAHC is at a loss to comprehend what does confer standing.

### Any Assertion that An Ad Hoc Committee Can Only Have Standing if it Can Bind its Members Is Belied by the Conduct of the Ad Hoc Committee of Local Councils

Implicit in the Debtors' and Century's discovery and explicit in the Debtors' January 28, 2022 email (attached hereto as **Exhibit A**) is that the RCAHC can only have standing if it can bind its members (archdioceses and dioceses) and its members constituent parishes (those which are the Roman Catholic Chartered Organizations). The purpose of this assertion is transparent.

---

[4] https://casedocs.omniagentsolutions.com/cmsvol2/pub_47373/57922e1c-30f6-4f05-9919-9ba0fc99f4d2_BSA_Current_and_Potential_Protected_Parties_and_Limited_Protected_Parties_011422.pdf



The Honorable Laurie Selber Silverstein
Janaury 31, 2022
Page 10

The Debtors want to silence the RCAHC by threatening that an objection to the Plan by the RCAHC will trigger the "deathtrap" in the Plan and take away the full post-1976 injunction for all Roman Catholic Chartered Organizations. They do this because the deathtrap, as plainly written, is only triggered by a Chartered Organization objection. *See* Plan at Sections I.A.57 and 182 (definitions of Chartered Organization and Opt-Out Chartered Organization).

The Debtors' contention on this point is pure hypocrisy when compared to their embrace of the Ad Hoc Committee of Local Councils (the "AHCLC") as a party-in-interest in these cases. The AHCLC demanded and the Debtors agreed, in section III.B. of the Restructuring Support Agreement, that the AHCLC had the right to appear as a party-in-interest in the Debtors' cases notwithstanding the fact that "**the AHCLC is not a fiduciary for and cannot bind Local Councils**." (emphasis added). The AHCLC has been a signatory to each and every settlement the Debtors have entered since and each and every settlement agreement has had a footnote that referenced that section of the RSA.[5]

### Discovery on the Ethics of Potter Anderson Is Unwarranted.

While claiming that their discovery requests are related to "solicitations, settlements, voting and related issues," Century and the Debtors both quickly reveal their true objective: to fuel a challenge to the professional ethics of Jeremy Ryan, one of Catholic Mutual's and RCAHC's attorneys. They suggest that Mr. Ryan has a conflict of interest because of his representation of the United Methodist Ad Hoc Committee (UMAHC). *See* Docket. 8317 at 6; Docket. 8332 at 6-7. The Court should reject this suggestion for two fundamental reasons: consent and lack of standing.

    A.    **Consent negates any supposed conflict issue.**

UMAHC has expressly consented to Mr. Ryan's representation of RCAHC (including its member Catholic Mutual). On December 30, 2021 (the day before the Debtors' Rule 30(b)(6) notice), Mr. Gallagher, the mediator, informed All BSA Mediation Parties as follows:

> The Mediator has been advised and requested by the United Methodist Ad Hoc Committee (UMAHC) on December 26th to advise all parties to the Bankruptcy

---

[5] *See also* Ad Hoc Committee of Local Council's Statement in Support of Fifth Amended Disclosure Statement and Related Filings and Objection to TCC's Motion to Adjourn Hearing [Docket No. 6245] at n.2 ("The Ad Hoc Committee consists of eight Local Councils: the Andrew Jackson Council, the Atlanta Area Council, the Crossroads of America Council, the Denver Area Council, the Grand Canyon Council, the Greater New York Councils, the Mid-America Council, and the Minsi Trails Council. For the avoidance of doubt, this Statement is submitted on behalf of the Ad Hoc Committee and not on behalf of any individual member. The undersigned represent only the Ad Hoc Committee and not any of its members individually. The Ad Hoc Committee does not represent (and this Statement should not be construed as a statement on behalf of) any individual Local Council.").

proceeding



The Honorable Laurie Selber Silverstein
Janaury 31, 2022
Page 11

> proceeding that Mr. Jeremy Ryan's representation of the UMAHC ended early the week of December 20th, and that they consent to his continuing representation of the Roman Catholic Ad Hoc Committee (RCAHC).

*See* email dated December 30, 2021 and attachment, attached hereto as **Exhibit B**. Since the UMAHC has expressly consented, there is no issue about Mr. Ryan's representation of RCAHC and Catholic Mutual. *See, e.g.*, *In re IH 1, Inc.,* 441 B.R. 742, 746 (Bankr. D. Del. 2011) ("A client may consent to conflicts, whether present or future, by signing a waiver.").

The applicable conflict-of-interest rules are the ABA Model Rules of Professional Conduct.[6] These rules confirm that, with consent, a lawyer may represent even current clients with divergent interests. Rule 1.7 of the ABA Model Rules states:

> Rule 1.7. Conflict of interest: Current clients
> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. . . .
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
> > (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> > (2) the representation is not prohibited by law;
> > (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> > (4) each affected client gives informed consent, confirmed in writing.

And Rule 1.9 of the ABA Model Rules similarly states that a former client (like UMAHC here) may consent to its lawyer's representation of another client with divergent interests. The courts so recognize. *See, e.g.*, *In re Yarn Processing Pat. Validity Litig.,* 530 F.2d 83, 89 (5th Cir. 1976) ("A former client may consent to the employment of the attorney by an adverse party even where the former client is involved in the case as a party.").

The sole case the Debtors rely on (Docket No. 8317 at 7) — *In re Howrey LLP*, No. BR 11-31376DM, 2014 WL 5311258 (Bankr. N.D. Cal. Oct. 17, 2014), *aff'd sub nom. McGrane v. Howrey*, LLP, No. 14-CV-05111-JD, 2015 WL 6126792 (N.D. Cal. Oct. 19, 2015), *aff'd sub*

---

[6] District of Delaware Local Rule 83.6(d) provides that attorneys practicing before this Court "shall be governed by the Model Rules of Professional Conduct of the American Bar Association ("Model Rules"), as amended from time to time."



The Honorable Laurie Selber Silverstein
Janaury 31, 2022
Page 12

*nom. In re Howrey LLP*, 698 F. App'x 881 (9th Cir. 2017) — only confirms this rule. *Howrey* noted that, under the parallel California rule, an attorney may not "represent[] a client with interests that are adverse to a former client from whom the attorney has obtained confidential information *unless the attorney obtains the written consent of the former client*." 2014 WL 5311258 at *6 (emphasis added). In *Howrey* (unlike here), the former client did not consent.

      **B.**    **The Debtors and Century lack standing to raise this issue.**

In any event, Century and the Debtors have no standing to challenge Mr. Ryan's representation of the RCAHC and its member Catholic Mutual. The Debtors suggest that Mr. Ryan is in a conflict-of-interest position on the ground that he has represented both the UMAHC and the RCAHC, which have divergent positions regarding settlement. Docket No. 8317 at 6-7. Even apart from the UMAHC's consent, the Debtors and Century have no standing to raise this issue, which belongs only to Mr. Ryan's clients.

Paragraph 20 of the Preamble to ABA Model Rules expressly states that opposing parties in litigation do not have standing to seek to enforce the professional conduct rules:

> [20] Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. In addition, violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation. . . . Furthermore, *the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule.*

(Emphasis added); *see also Dawson v. City of Bartlesville,* 901 F. Supp. 314, 315 (N.D. Okla. 1995) (discussing parallel state rule and commentary; no standing to object to opponent's counsel's asserted conflict).

Many cases recognize the general rule that only the lawyer's former or current client, and not an opponent, has standing to assert that the lawyer has a conflict of interest. *See, e.g.*, *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88-90 (5th Cir. 1976) (cited by many other cases for this principle); *O'Hanlon v. AccessU2 Mobile Solutions, LLC*, No. 18-cv-00185-RBJ-NYW, 2018 WL 3586395, *4 (D. Colo. July 26, 2018); *Ellison v. Chartis Claims, Inc.*, 35 N.Y.S.3d 922, 923 (App. Div. 2016) (a party who "is neither a present nor a former client of the subject law firm" lacks standing to assert firm's conflict); *In re Technicool Sys., Inc.*, 896 F.3d 382 (5th Cir. 2018) (standing is especially strict in bankruptcy cases).



The Honorable Laurie Selber Silverstein
Janaury 31, 2022
Page 13

     Again, the *Howrey* case relied on by the Debtors is instructive. There, the challenged lawyer's former client (the Committee), which had not consented to the lawyer's representation of a party with adverse interests, was the party that raised the ethical issue. 2014 WL 5311258 at *1. As the former client, that party had standing to do so.  Here, the Debtors and Century do not have standing.[7]


Respectfully,

*/s/ Everett J. Cygal*
Everett J. Cygal


CC:    Tancred Schiavoni, Esq.
          Stamatios Stamoulis, Esq.
          Derek C. Abbott, Esq.
          Michael C. Andolina, Esq.
          Jeremy W. Ryan, Esq.

---

[7] When Century and the Debtors have sought to constrain the future conduct of a settling party, they have done so explicitly.  For example, it was a condition of the settlement with the UMAHC that it withdraw its support for the December 17, 2021 expert report of Melissa Kibler in respect to feasibility.  The UMAHC did so, so that report is now sponsored only by the RCAHC.  But it was never a condition of any party participating in the mediation that if that mediation party shared counsel with another mediation party that a condition of settlement would be that the non-settling party would lose its counsel.