

Stamatios Stamoulis
stamoulis@swdelaw.com

**VIA CM/ECF**

January 31, 2022

The Honorable Laurie S. Silverstein
U.S. Bankruptcy Judge
U.S. Bankruptcy Court for the District of Delaware
824 N. Market Street, 6th Floor
Wilmington, DE 19801

      **Re: *In re Boy Scouts of America et al.*, Case No. 20-10343 (LSS)**

Dear Judge Silverstein:

  On behalf of Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America ("Century") and Chubb Group Holdings, Inc. ("Chubb"), we are writing **(a)** in further support of Century's motion for an order compelling the Ad Hoc Committee that calls itself the Roman Catholic Ad Hoc Committee (the "RCAHC" or the "Committee") to comply with Federal Rule of Bankruptcy Procedure 2019 ("Rule 2019") by producing the agreement or agreements that authorize the RCAHC's representatives to speak on behalf of its members and identify the dioceses on whose behalf the Catholic Mutual Relief Society of America ("Catholic Mutual") predicates its standing as a member of RCAHC [D.I. 8332]; **(b)** in support of an order denying the Motion of Catholic Mutual and the Catholic Ad Hoc Committee (1) For Protective Order Regarding Century's Subpoena to Catholic Mutual; and (2) to Quash the Debtors' 30(b)(6) Deposition Notice to the Catholic Ad Hoc Committee [D.I. 8209]; **(c)** in support of an order denying the motion filed by RCAHC on January 25, 2022 [D.I. 8502] to compel Rule 30(b)(6) depositions of Century and Chubb; and **(d)** to join the motions filed by Hartford [D.I. 8455] and Zurich [D.I. 8497] to quash the Rule 30(b)(6) deposition notices served by the RCAHC on January 13, 2022 [D.I. 8297, 8293].

**PRELIMINARY STATEMENT**

  The starting point to resolve the instant motions concerning the RCAHC is whether an Ad Hoc Committee that holds itself out as not binding its members may propound discovery. This is a pure issue of law.

  The requirements of Rule 2019 are mandatory, as it uses the word "shall," rather than "may," to command compliance.[1] Though the RCAHC submitted a Rule 2019 Statement, it did

---

[1]  *Nantucket Investors II v. California Federal Bank (In re Palms Associates)*, 61 F.3d 197, 208 (3d Cir. 1995) (use of the term "shall" imposes a requirement of mandatory, as opposed to discretionary, compliance); *In re The Muralo Company Inc.*, 295 B.R. 512, 524 & n.10 (Bankr. D.N.J. 2003) (Rule 2019 "requires entities, *including counsel*, who would represent in a chapter 11 case more than one creditor, to file a verified statement listing those creditors" and "explaining the circumstances of their agency") (quotations and citations omitted).

The Honorable Laurie S. Silverstein
January 31, 2022
Page 2

not provide the supporting documents that evidence its authority to act on behalf of anyone or anything demonstrating that its members join in opposing the Plan or the promulgation of the discovery sought in furtherance of opposing the Plan. A defining characteristic of ad hoc committees are their ability to speak on behalf of their members.[2] As Judge Walrath previously observed in *In re Washington Mutual, Inc.*, "[b]ecause membership [in an *ad hoc* committee] is at-will, an *ad hoc* committee cannot bind members absent their consent, and generally all members must agree on any position the committee takes." 419 B.R. 271, 274 (Bankr. D. Del. 2009). Here, the RCAHC admits that it speaks only on its "own behalf," however, there is nobody for the Committee to speak for besides its members.

If the Committee does not speak for its members in opposing the Plan, as the RCAHC admits in its responses to Requests for Admission, then there is no force and effect to its statements or the discovery RCAHC propounded in support of them. Indeed, it is particularly important that an ad hoc committee demonstrate the consent of its members where the discovery the Committee seeks is directed at its purported members, as it is here, with regard to the claims asserted against them and their insurance. Compliance with Rule 2019 is a threshold issue—because the RCAHC has not followed the Rule's disclosure directives, it should not be permitted to be heard.[3]

Once this purely legal issue is addressed, the arguments the RCAHC advances for the relief it seeks can be quickly dismissed.

Most notably, the RCAHC's notices for Rule 30(b)(6) depositions of Century and Chubb come on the heels of its unprecedented discovery campaign that impose burdens that are out of all proportion to the needs of the case. In just the last six weeks, Century and Chubb have responded to over **two thousand** requests for production, interrogatories, and requests for admission from the RCAHC alone. For example, on December 27, 2021, the RCAHC served 1,827 separate requests for admission on Century and Chubb that required an extraordinary amount of time, effort and resources over a short period to review and analyze massive amounts of data and documents. Century and Chubb provided detailed, substantive responses to those and other requests. Our research has not revealed any case in the District of Delaware that has held discovery served on this scale is proportionate to the needs of a case.

In contrast, the RCAHC refused to respond to any of Century's discovery requests and has, in fact, moved to quash, across the board, the narrow discovery requests served by which Century is seeking to determine the entities that the RCAHC purports to represent and the Scouting-related abuse claims that they face. [D.I. 8209] Ironically, the RCAHC has refused to provide any information about the abuse claims its members may face while simultaneously seeking to depose Century and Chubb about the impact of their settlement on those claims. The disparity between

---

[2] *In re Northwest Airlines Corp.*, 363 B.R. 701, 703 (Bankr. S.D.N.Y. 2007) ("*Ad hoc* or unofficial committees play an important role in reorganization cases. By appearing as a 'committee' of shareholders, the members purport to speak for a group and implicitly ask the court and other parties to give their positions a degree of credibility appropriate to a unified group with large holdings.").

[3] Fed. R. Bankr. P. 2019(e).

Century's and Chubb's substantive responses to the RCAHC's requests and the RCAHC's blanket refusal to respond is self-evident.

## SUPPLEMENTAL STATEMENT OF FACTS

The RCAHC has not produced the agreement or other instrument that set out the authority for the RCAHC to object to the Amended Plan and opt out individual dioceses from the protections afforded by the Amended Plan. The RCAHC provided a "bylaws" as a settlement communication but this document does not address the scope of the Committee's membership or its authority to speak for its members.

No diocese or other Catholic entity that we are aware of has indicated a desire to opt out of the protections afforded by the Plan.

Indeed, various Dioceses have advised the Settling Insurers and Debtors that the RCAHC does not speak for them. *See, e.g.*, Jan. 26, 2022 email from W. Martin to T. Schiavoni (Our client . . . is not a part of the Ad Hoc Committee.") (Exhibit E).

On January 21, 2022, the RCAHC produced its "insurance expert" for deposition. That "expert," Mr. Averill, admitted that he is paid by Catholic Mutual. He was asked to produce his retention agreement but has not done so.

The interests of Catholic Mutual are different from those of individual Catholic Dioceses and Methodist churches. Among other things, Catholic Mutual is responsible for providing insurance for periods not covered by the Settled Insurers.

## REPLY ARGUMENT

**A. The RCAHC should not be permitted to invoke this Court's processes without first complying with the Rule 2019.**

Century and Chubb have a right to know which entities this Ad Hoc Committee represents, those parties' interests in the proceedings, and whether those parties have in fact given the RCAHC the authority to speak on their behalf in these proceedings. The RCAHC has not identified a single Diocese for which it speaks. The RCAHC should not be permitted to invoke this Court's processes without first complying with the Rule 2019.[4]

---

[4] In addition, the RCAHC filed its motion without having any discussions with counsel for Century and Chubb about a potential deposition. Counsel for Century and Chubb had offered to meet and confer, and on January 25, the RCAHC's counsel indicated they were available on January 26. The RCAHC filed the motion without a meet and confer.

The Honorable Laurie S. Silverstein
January 31, 2022
Page 4

### B. The RCAHC's 30(b)(6) notices are impermissibly overbroad and improperly call for contentions and legal conclusions.

The RCAHC served Rule 30(b)(6) deposition notices on January 13, 2022 (*see* Exhibits A and B). Century's and Chubb's written responses to these notices (*see* Exhibits C and D), in which Century and Chubb explicitly objected with respect to the 2019 issue, stated that they would meet and confer about designating a witness on properly-focused topics about the Settlement Term Sheet, but the actual topics in the notices were impermissibly overbroad and improperly called for contentions or legal conclusions, including interpretations of the Term Sheet. *See* Rule 30(b)(6) (deposition notices must "describe with reasonable particularity the matters for examination"); Tr. of June 22, 2021 Tel. Hr'g, *In re Imerys Talc Am., Inc.*, at 241:5-7 (Rule 30(b)(6) depositions of insurers must be "limited to facts and not legal conclusions"). Instead of engaging with counsel, the RCAHC ran to Court with its motion to compel without conferring.

The RCAHC claims that its discovery is motivated by two "main questions": (1) "the scope of the Channeling Injunction with respect to Roman Catholic Chartered Organizations" (*i.e.*, "which Abuse Claims against insureds and co-insureds are covered under Insurance Policies issued by the Settling Insurers") and (2) "what Insurance Policies issued to Roman Catholic Entities . . . are being compromised pursuant to the Plan." D.I. 8502-1 at ¶ 6. Neither of these "questions" requires a Rule 30(b)(6) deposition.

As to the first question, the Plan and the Term Sheet speak for themselves. A Rule 30(b)(6) deposition of Century and Chubb is not necessary or proportionate to the needs of the case. All parties, including the RCAHC, can read the plain statement that Abuse Claims will be channeled under the injunction—and released as against insureds and co-insureds—if they are covered under the Settling Insurers' Policies. D.I. 8502-1 at ¶ 6 (quoting Term Sheet ¶ 11). Those determinations will be made in the context of specific claims against specific insureds or co-insureds when they are presented in the future. A Rule 30(b)(6) deposition is not an appropriate venue to explore, in a vacuum, whether a hypothetical claim would be covered, and thus enjoined, without knowing a range of relevant facts, such as the dates of the alleged abuse, the Charter Organization involved, the Local Council with which the Charter is affiliated, and whether the claimant asserts that the Claim arose in the context of Scouting. The Term Sheet is clear that, if there is a dispute about the application of the injunction to a specific claim, the parties can seek a court ruling. *See* Term Sheet ¶ 15(c) ("Chartered Organizations may seek coverage and tender claims under such insurance policies pending determination by a court of competent jurisdiction as to whether a Claim is a channeled Abuse Claim"). The Term Sheet further provides that in the event the injunction does not apply, all parties' rights under any relevant insurance policies are preserved. *Id.* ¶ 15(d). Against this backdrop, the RCAHC's purported uncertainty and confusion is no basis for a deposition seeking legal conclusions or contentions about hypothetical claims.

As to the second question, there is no "impairment" of policies owned by any Roman Catholic Chartered Organization. Indeed, when counsel for the RCAHC made this suggestion at the December 21, 2021 hearing, Century's counsel and Debtor's counsel stated in response to the Court's questions that all Chartered Organizations can continue to look to their own policies for coverage of non-Scouting related claims. *See, e.g.*, Hr'g Tr., Dec. 21, 2021 at 93:15-94. And as to objecting parties like the RCAHC (which are defined in the Term Sheet as "Opt-Out Chartered

The Honorable Laurie S. Silverstein
January 31, 2022
Page 5

Organizations"), their own insurance policies will not be "impaired" even as to Scouting-related Abuse Claims. *See* Term Sheet ¶¶ 9–10 (limiting voluntary waivers and assignments concerning Chartered owned policies to Participating Chartered Organizations and Contributing Chartered Organizations).

The assertion that Charters are somehow being *compelled* to waive or assign rights under policies they own is demonstrably false.

- Pursuant to the Term Sheet, *all* of the Chartered Organizations insured by Century or a Chubb company, including the members of the RCAHC, will receive a release of Scouting-related Abuse Claims that are covered by Century policies as a result of Century's settlement payment. *See* Term Sheet ¶ 11. No waiver or assignment of anything is required by Charters to receive this benefit. *Id*.

- Chartered Organizations *other than the RCAHC* have voluntarily elected to waive or assign certain of their own insurance rights by accepting the additional benefits afforded to them under the Plan and choosing not to object. These Chartered Organizations are defined as either Participating Chartered Organizations or Contributing Chartered Organizations depending upon the level of contribution they make.[5] In exchange for exercising either of those options, those Contributing Chartered Organizations and Participating Chartered Organizations will obtain additional releases, even for Scouting-related Abuse Claims that do not implicate Century insurance. *See id.* ¶¶ 9–10 (providing for assignments and waivers by Contributing Chartered Organizations and Participating Chartered Organizations, but not by Opt-Out Chartered Organizations); ¶¶ 8, 10 (providing additional protections and releases for these Chartered Organizations).

- In contrast, those Chartered Organizations, including any of the RCAHC's members, that decide on their own not to waive or contribute any insurance rights may object to the Plan and become Opt-Out Chartered Organizations. *Id*. ¶ 13. The Opt-Out Chartered Organizations do not waive or transfer their own insurance policies under Paragraphs 9 and 10 of the Century Settlement. If there is any perceived ambiguity on that point (and Century believes there is not), Century and Chubb will further clarify the issue in the final Settlement Agreement.

- As noted above, however, even if they choose to become an Opt-Out Chartered Organization, the RCAHC nevertheless will obtain the benefits of the channeling injunctions and releases that Century and Chubb have secured for all of its insured Chartered Organizations for Scouting-related Abuse Claims in return for the

---

[5] In addition to the releases for Abuse Claims covered by Century insurance, Participating Chartered Organizations receive the benefits of the Full Post-1975 Injunction (covering post-1975 Abuse Claims) in exchange for not objecting to the Plan. Contributing Chartered Organizations receive all of the foregoing benefits, and also receive a full release for Abuse Claims arising prior to 1976 in exchange for an additional economic contribution.

    $800,000,000 payment. *Id*. ¶¶ 11, 13. That is a benefit to Opt-Out Chartered Organizations. And it costs the Opt-Out Chartered Organization *nothing*.

- The Opt-Out Chartered Organizations also retain their coverage under their own insurance policies for claims that are not Scouting-related Abuse Claims, since they are not making *any* assignments or giving *any* waivers concerning those policies *whatsoever*. *Id*. ¶¶ 9, 10, 13.

- In fact, *no* Chartered Organization is giving up its rights under its own insurance policies for claims that are not Scouting-related Abuse Claims, even those that agree to be Contributing Chartered Organizations or Participating Chartered Organizations. *Id*. ¶ 15. The Century/Chubb Term Sheet unambiguously states that such "Chartered Organizations are not barred from tendering claims that are not Abuse Claims to such insurance policies, with all parties reserving their rights as to whether such insurance policies applies and to what extent" and that "Chartered Organizations may seek coverage and tender claims under such insurance policies pending determination by a court of competent jurisdiction as to whether a Claim is a channeled Abuse Claim, subject to all parties' contractual rights." *Id*. ¶ 15.

- As a further benefit to the Chartered Organizations, Century and Chubb have agreed that they will not allocate any of the Settlement Amount it is paying to insurance policies issued directly to the Chartered Organizations, thereby avoiding any potential impairment of the policy limits for such coverage. *Id.* ¶ 3.

Thus, under no set of circumstances is the RCAHC or any Chartered Organization being *compelled* to assign rights related to insurance policies issued directly to any Chartered Organization. Rather, all Chartered Organizations will receive a significant benefit to the extent they are Century insureds, whether or not they choose to participate. Those who choose to participate and not object will receive significant additional benefits in exchange for their contributions, but that is for them to decide.

**C. Each of the 13 topics in the deposition notices served by the RCAHC on Century and Chubb is objectionable and should be quashed.**

On a more granular level, each of the 13 topics in the deposition notices served on Century and Chubb is objectionable and should be quashed:[6]

- Topics 2–13 (contention and legal conclusion testimony): The RCAHC improperly asks Century and Chubb to provide testimony concerning contentions and legal conclusions on numerous issues ranging from interpretation of the Term Sheet, the Plan and Trust Distribution Procedures, and insurance policies. Rule 30(b)(6) is not a mechanism to obtain deposition testimony akin to contention interrogatory responses

---

[6] These 13 topics are identical to those the RCAHC propounded on Zurich and Hartford, except that they reference the Chubb/Century settlement instead of the Zurich and Hartford settlements, and are objectionable for the same reasons described in these insurers' motions to quash [D.I. 8497, 8455].

or concerning legal conclusions, attorney work product or thought processes. *See, e.g.*, *JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002) ("depositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means"). Topics 2–13 directly violate this rule.

- Topics 2, 6–13 (insurance coverage and contract interpretation testimony): The RCAHC improperly seeks testimony on insurance coverage issues and irrelevant matters of policy and Term Sheet interpretation. For example, the RCAHC seeks testimony on the "treatment of Claims of Chartered Organizations under the Plan and Trust Distribution Procedures" (Topic 2) and "which policies of insurance issued by any Settling Insurer [Century Term Sheet] to any Roman Catholic Entity Cover Abuse Claims against insureds and co-insureds" (Topic 12). Throughout this case, the Court has repeatedly stated that insurance coverage issues will not be addressed or determined. *See, e.g.*, Hr'g. Tr. Sept. 28, 2021 at 74:7-14 ("[The Court does not] anticipate making any coverage decisions, and [does not] intend to make any decisions that are properly decided in a coverage action."). The meaning of a policy or the Term Sheet is a question of law, not a question of fact for a deposition. *See, e.g.*, *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 286 (Del. 2001) ("[T]he interpretation of contractual language, including that of insurance policies, is a question of law.").

- Topics 1–8, 10–13 (broad and non-particularized testimony): The RCAHC improperly seeks Century's and Chubb's testimony on overbroad, impermissibly broad and non-specific topics like "All BSA Insurance Policies." Rule 30(b)(6) requires that topics be described with "reasonable particularity," which courts have interpreted to require "painstaking specificity." *See E.E.O.C. v. Thorman & Wright Corp.*, 243 F.R.D. 421, 426 (D. Kan. 2007) ("To allow the Rule to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute.").

- Topics 2, 8–13 (testimony to which the RCAHC is otherwise not entitled): Finally, the RCAHC improperly seeks testimony "All Policies of insurance issued to Roman Catholic Entities," and "policies of insurance issued by any Settling Insurer" (*e.g.*, Topics 2, 8–13). This is wildly broad; the term "Roman Catholic Entities" is defined in the Plan as *every* Roman Catholic entity that was involved in Scouting in any way (and all of their representatives) since 1910. *See* Plan [D.I. 7832] at art. I(A)(241). Determining whether any Chubb or Century entity issued policies to these entities over the past century-plus and finding those policies (and providing testimony about them) is simply not possible over the next few weeks. Century and Chubb further note that its policyholders consider their insurance information to be highly confidential and proprietary, particularly when those policyholders are the target of ongoing tort litigation. There is no basis for the RCAHC, which has refused to articulate the exact parameters of its constituency, to obtain testimony about the potential insurance available to Roman Catholic entities it does not represent.

The Honorable Laurie S. Silverstein
January 31, 2022
Page 8

As noticed, the RCAHC notices are objectionable and should be quashed.

## CONCLUSION

Pursuant to Rule 2019, Century respectfully requests that this Court enter an order, substantially in the form attached as **Exhibit A to Century's initial letter brief [D.I. 8332]**, compelling the RCAHC to amend its Rule 2019 Statement to comply with the Rule.

Century and Chubb further respectfully requests that the Court deny Catholic Mutual's request for a protective order.

Finally, Century and Chubb respectfully request that the Court deny the RCAHC's motion to compel Rule 30(b)(6) depositions of Century and Chub and quash the RCAHC's Rule 30(b)(6) deposition notices.

Respectfully Submitted,

Stamatios Stamoulis (#4606)
of Stamoulis & Weinblatt LLC

Cc:  All Counsel of Record (via CM/ECF)