**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Re Docket Nos. 7832 |

**THE OFFICIAL COMMITTEE OF TORT CLAIMANTS'
*THIRD AMENDED* NOTICE OF DEPOSITION TO
THE UNITED METHODIST AD HOC COMMITTEE**

PLEASE TAKE NOTICE THAT pursuant to Rules 30(b)(6) of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable to these proceedings by Rules 9014 and 7030 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Official Committee of Tort Claimants to Boy Scouts of America and Delaware BSA, LLC (the "TCC"), by and through its undersigned counsel, shall take the deposition of the **United Methodist Ad Hoc Committee** (the "UMAHC") by the person(s) designated to testify with respect to the topics described in **Exhibit A** hereto.

The deposition will take place on **February 10, 2022 at 10:30 a.m. (Eastern Time)** or at such other date and time as the parties may agree.

The deposition will be conducted remotely.

With respect to the conduct of this remote deposition:

    1.    Counsel for the parties and their clients will be participating from various, separate locations;

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

DOCS_NY:44842.5 85353/002

2. The court reporter will administer the oath to the witness remotely;

3. Each participating attorney must be visible to all other participants, and their statements will be audible to all participants;

4. All exhibits will be provided simultaneously and electronically to the witness and all participants;

5. The court reporter will record the testimony;

6. The deposition will be videotaped; and

7. The deposition may be recorded electronically through the use of Realtime or a similar application.

Dated: February 2, 2022
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Richard M. Pachulski (CA Bar No. 90073)
(admitted *pro hac vice*)
Alan J. Kornfeld (CA Bar No. 130063)
(admitted *pro hac vice*)
Debra I. Grassgreen (CA 169978)
(admitted *pro hac vice*)
Iain A.W. Nasatir (CA Bar No. 148977)
(admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: rpachulski@pszjlaw.com
akornfeld@pszjlaw.com
dgrassgreen@pszjlaw.com
inasatir@pszjlaw.com
joneill@pszjlaw.com

*Counsel for the Tort Claimants' Committee*

**EXHIBIT A TO THE NOTICE OF DEPOSITION
OF THE UNITED METHODIST AD HOC COMMITTEE**

**DEFINITIONS**

1.  For the purposes of these Requests for Production, the following Definitions shall apply: The terms "all," "any," and "each" shall each be construed as encompassing any and all. The singular shall include the plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive; and the term "including" means "including without limitation." The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense.

2.  Capitalized terms not otherwise defined herein shall have the meaning provided in the Plan.

3.  "Abuse" shall have the meaning provided in the Amended Plan. "Abuse Claim" shall have the meaning provided in the Amended Plan but shall also include any abuse claim not directly asserted against the Debtors.

4.  "Abuse Claimant" shall mean the party asserting an Abuse Claim and its attorneys, advisors, agents, representatives, and experts.

5.  "Amended Plan" means the *Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 7832], as such Document may be amended, supplemented, or modified from time to time.

6.  "BSA Plan Settlement" means any settlement, whether incorporated into the Amended Plan or presented for approval pursuant to Bankruptcy Rule 9019, between the Debtors and any other Entity (including, but not limited to, an Insurance Company, Chartered Organization, or Local Council), including, but not limited to, the Hartford Insurance Settlement, the Century Settlement, the Zurich Settlement, and the United Methodist Term Sheet.

7. "Century" means: (a) Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America; (b) Century Indemnity Company as successor to CIGNA Specialty Insurance Company f/k/a California Union Insurance Company; (c) Insurance Company of North America; and (d) and each of their past, present and future direct or indirect parents, subsidiaries, affiliates and controlled entities, and each of their respective officers, directors, stockholders, members, partners, managers, employees, attorneys, agents, experts, consultants, predecessors, successors and assigns, each in their capacity as such.

8. "Century Settlement" means the Century and Chubb Term Sheet attached to the Seventh Mediator's Report filed with the Court on December 14, 2021 [Docket No. 7772] and any documentation of the settlement embodied therein.

9. "Chapter 11 Cases" shall mean the above-captioned chapter 11 cases of Boy Scouts of America and Delaware BSA, LLC, pending before the United States Bankruptcy Court for the District of Delaware.

10. "Chartered Organizations" shall have the meaning provided in the Amended Plan.

11. "Church Records" means any Document maintained by the UMAHC and/or the United Methodist Entities Concerning the United Methodist Entities, including the United Methodist Entities' membership records, "red flag" records, membership file "annotations," and similar Documents.

12. "Communications" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, correspondence, memoranda, emails, facsimile transmissions, or other form of verbal,

2

written, mechanical, or electronic disclosure, in Your actual or constructive control or custody or in the control or custody of any current or former affiliates, representatives or advisors.

13. "Coalition" shall mean the Coalition of Abused Scouts for Justice, an ad hoc committee that filed a notice of appearance in the Chapter 11 Cases on July 24, 2020 at Docket No. 1040, and its members, agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, representatives, affiliates, subsidiaries, predecessors and/or successors.

14. "Concerning" means relating to, evidencing, supporting, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, referencing, discussing, indicating, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

15. "Debtors" means, collectively or individually, as context requires and to encompass responsive documents Boy Scouts of America and Delaware BSA, LLC, and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

16. "Disclosure Statement" shall mean the *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6445].

17. "Documents" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all Documents and information in Your possession, custody, or control, and includes: all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda,

3

transcripts, tapes, or other voice recordings, and all other Documents and tangible things, including booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, print-outs, and all other data, whether recorded by electronic or other means, and all drafts thereof.  If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on any of the pages thereof, then each such non-identical copy is a separate Document and must be produced.  When examples of categories or types of Documents are given in a particular Request for Production by use of phrases such as "including," this shall always be interpreted as being for illustrative purposes only (*i.e.*, to be understood as "including without limitation") and in no way limits or narrows the scope of any Request for Production. "Documents" always includes Communications, whether so stated in a particular Request for Production or not.

18.     "Entity" shall have the meaning ascribed to it in the Bankruptcy Code.

19.     "FCR" shall mean James L. Patton, Jr., the legal representative appointed by the Bankruptcy Court for holders of Future Abuse Claims, or any successor legal representative appointed by the Bankruptcy Court, and his agents, accountants, financial advisors, employees, experts, attorneys, representatives, affiliates, predecessors and/or successors.

4

20. "Hartford Insurance Settlement" shall have the meaning provided in the Amended Plan.

21. "Hartford Insurance Settlement Agreement" shall have the meaning provided in the Amended Plan.

22. "Identify" when referring to a person means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this definition, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person. When referring to documents, "to identify" means to give, to the extent known, the (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s), and recipient(s).

23. "Insurance Company" shall have the meaning provided in the Amended Plan.

24. "Insurance Policy" shall have the meaning provided in the Amended Plan, including all rights and benefits thereunder, and the proceeds thereof.

25. "Local Councils" shall have the meaning provided in the Amended Plan.

26. "Other Insurance Policy" means any Insurance Policy other than a United Methodist Entity Insurance Policy that does or may provide coverage for damages alleged by a United Methodist Entity Abuse Claimant for an Abuse Claim, including, but not limited to, all Insurance Policies for which a Local Council and/or Chartered Organization associated with a United Methodist Scouting Unit is a named or additional insured.

27. "Perpetrator" shall have the meaning provided in the Amended Plan.

28. "Petition Date" means February 18, 2020.

29. "Prepetition" shall mean occurring prior to the Petition Date.

30. "Proof of Claim" shall have the meaning provided in the Amended Plan.

31. "RCAHC" means the Roman Catholic Ad Hoc Committee, an ad hoc committee that filed a notice of appearance in the Chapter 11 Cases on June 25, 2021, 2021 at Docket No. 5420, and its members, agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, representatives, affiliates, subsidiaries, predecessors and/or successor

32. "Scouting Unit" means an entity that conducts scouting for a Chartered Organization, including but not limited to a pack, den, troop, Sea Explorers, Air Explorers, Learning for Life, Explorers, Venturing, crew, ship, chapter, and any associations that were predecessor associations of the foregoing.

33. "Settlement" shall mean any Prepetition settlement or other resolution of an Abuse Claim.

34. "Settlement Trust" shall have the meaning provided in the Amended Plan.

35. "Survivor" means a survivor of Abuse in scouting, including Abuse Claimants.

36. "TCJC Settlement" has the meaning ascribed to it in the Amended Plan.

37. "UMAHC" means the United Methodist Ad Hoc Committee, an ad hoc committee that filed a notice of appearance in the Chapter 11 Cases on January 6, 2021 at Docket No. 1904, and its members, agents, accountants, financial advisors, employees, experts, attorneys, officers, directors, representatives, affiliates, subsidiaries, predecessors and/or successors.

38. "United Methodist Entities" shall have the meaning provided in the Amended Plan.

39. "United Methodist Entity Abuse Claimant" means an Abuse Claimant who identifies a United Methodist Entity as the sponsor of their Scouting Unit in a Proof of Claim or is otherwise known to You to have been a member of a United Methodist Scouting Unit.

40. "United Methodist Entity Insurance Policy" means any Insurance Policy that does or may provide coverage for damages alleged by a United Methodist Entity Abuse Claimant for an Abuse Claim, including, but not limited to, all Insurance Policies in which any United Methodist Entity is a named or additional insured.

41. "United Methodist Scouting Unit" means a Scouting Unit sponsored by any United Methodist Entity.

42. "United Methodist Participating Charter Contribution" means the contribution to the Settlement Trust contemplated by Section 2.a.v of the United Methodist Term Sheet.

43. "United Methodist Term Sheet" means the term sheet attached as Exhibit A to the Eighth Mediator's Report [Docket No. 7884] filed with the Court on December 21, 2021 and any documentation of the settlement embodied therein.

44. "Verdict" shall mean any Prepetition verdict, judgment, award or decision of a court, arbitrator, mediator or similar tribunal Concerning an Abuse Claim.

45. "You" or "Your" and variants thereof means UMAHC.

46. "Zurich Settlement" means the term sheet attached as Exhibit A to the Ninth Mediator's Report [Docket No. 7928] filed with the Court on December 22, 2021 and any documentation of the settlement embodied therein.

## TOPICS

**Topic No. 1:**

The governance structure of the UMAHC.

**Topic No. 2:**

The authority, if any, of the UMAHC to bind the United Methodist Entities in connection with the UMAHC Settlement.

7

**Topic No. 3:**

Your contention, if you so contend, that the UMAHC Settlement satisfies the standards for 11 U.S.C. § 363, Federal Rule of Bankruptcy Procedure 9019(b), or 11 U.S.C. § 1129(a)(7).

**Topic No. 4:**

Communications with any of the Debtors, the FCR, the Coalition, Century, or the RCAHC Concerning the Amended Plan, the Hartford Insurance Settlement, the Hartford Insurance Settlement Agreement, the Century Settlement, the TCJC Settlement, the Zurich Settlement, or the UMAHC Settlement

**Topic No. 5:**

Church Records Concerning every Perpetrator named or referenced in any Proof of Claim.

**Topic No. 6:**

The Hartford Insurance Settlement.

**Topic No. 7:**

The Hartford Insurance Settlement Agreement.

**Topic No. 8:**

The TCJC Settlement.

**Topic No. 9:**

The TCJC Settlement Agreement.

**Topic No. 10:**

Church Records Concerning every Perpetrator named or referenced in any Proof of Claim.

**Topic No. 11:**

Church Records Concerning United Methodist Entity Abuse Claimants.

8

**Topic No 12:**

Documents maintained by Your Director of Risk Management Division Concerning allegations of Abuse suffered by or perpetrated by Your members involved in any way with any Scouting Unit or scouting activity.

**Topic No. 13:**

The Identity of adults and youth who participated in any United Methodist Scouting Unit identified (whether by unit number or description) in any Proof of Claim.

**Topic No. 14:**

The United Methodist Entity Insurance Policies.

**Topic No. 15:**

The Other Insurance Policies.

**Topic No. 16:**

The value of the contribution of the United Methodist Participating Charter Contribution.

**Topic No. 17:**

The facts and circumstances that Concern Your Contention, if you so contend, that that the United Methodist Participating Charter Contribution would constitute a "substantial contribution" or otherwise support the issuance of a channeling injunction under the Plan in Your favor.

**Topic No. 18:**

The complaints and statements of claim associated with the Settlements and Verdicts.

**Topic No. 19:**

The Abuse Claims.

9

**Topic No. 20:**

Communications with the Debtors and/or Bates White Concerning the Abuse Claims.

**Topic No. 21:**

Estimates or approximations of the number of Perpetrators and/or the number of Survivors.

**Topic No. 22:**

Valuations of any Abuse Claims.

**Topic No 23:**

The BSA Plan Settlements.

**Topic No. 24:**

The source(s) of any payments contemplated by the UMAHC Settlement.