**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 6443, 6445, 7515, 7832** |
| | <u>Hearing Date</u>: 2/22/22, 10:00 a.m. (ET) <u>Objection Deadline</u>: 2/4/22, 4:00 p.m. (ET) |

**<u>RESERVATION OF RIGHTS AND OBJECTION OF EVEREST NATIONAL INSURANCE COMPANY TO DEBTORS' SECOND MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION</u>**

Everest National Insurance Company ("<u>Everest</u>") files this reservation of rights and objection (the "<u>Objection</u>") to the *Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 7832] (as amended, modified, or supplemented the "<u>Plan</u>")[2] filed by Boy Scouts of America and Delaware BSA, LLC (collectively, the "<u>Debtors</u>"). In support of its Objection, Everest respectfully represents as follows:

**<u>INTRODUCTION</u>**

1. The Plan's proposed terms improperly impair, prejudice, or otherwise alter valuable rights of Everest relative to certain insurance policies. Everest issued five upper-layer excess liability policies to debtor Boy Scouts of America (the "<u>BSA</u>") (collectively, the "<u>Everest

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, TX 75038.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such term in the Plan.

Excess Policies").³ Everest objects to the Plan as it contains terms that are contrary to the duties and obligations agreed to by the BSA and Everest under the Everest Excess Policies, and improperly attempts to strip or otherwise impair non-settling insurers of valuable rights and defenses in post-confirmation litigation. Everest reserves all rights as they pertain to the terms, conditions, provisions, and exclusions of the Everest Excess Policies, and the policies underlying the Everest Excess Polices (the "Underlying Insurance").

**OBJECTION**

2.   The Plan should not be confirmed because it has a potential adverse impact on Everest's legal, equitable, and contractual rights, interests, defenses, and obligations under the Everest Excess Policies.

3.   Under 11 U.S.C. § 1129(a)(3) a plan may be confirmed "only if. . . [it] has been proposed . . . not by any means forbidden by law[,]" and meets certain other requirements under the Bankruptcy Code. This rule prohibits confirmation of any chapter 11 plan that fails to comply with contracts validly formed under state law. *See In re SPM Mfg. Corp.*, 984 F.2d 1305, 1311 (1st Cir. 1993) (noting bankruptcy courts lack authority to enter orders that "expand the contractual obligations of the parties"). Courts have specifically recognized with respect to insurers that a plan must be "insurance neutral." A plan is insurance neutral if "all contractual rights and coverage defenses [are] fully preserved." *In re Flintkote Co.*, 486 B.R. 99, 117 (Bankr. D. Del. 2012), aff'd 526 B.R. 515 (D. Del. 2014). If a plan increases insurance exposure and the likelihood of liability of carriers, it is not insurance-neutral. *See In re Thorpe Insulation Co.*, 677 F.3d 869, 885 (9th Cir. 2012); *accord In re Global Indus. Techs. Inc.*, 645 F.3d 201,

---

³ The Everest Excess Policies include, specifically: (1) Everest Policy No. 71G6000050-071 (3/1/2007 – 3/1/2008); (2) Everest Policy No. 71G6000050-081 (3/1/2008 – 3/1/2009); (3) Everest Policy No. 71G6000200-091 (3/1/2009 – 3/1/2010); (4) Everest Policy No. 71G6000050-091 (3/1/2009 – 3/1/2010); and (5) Everest Policy No. 71G6000050-101 (3/1/2010 – 3/1/2011). The Everest Excess Policies are identified in the Plan.

212 (3d Cir. 2011) (en banc). Therefore, a chapter 11 plan may not be confirmed if it would give the debtor's estate greater rights under its insurance contracts than it held prepetition or materially alter a counterparty's obligations under the contracts. *Cf.*, *In re Pittsburgh Corning Corp.*, 453 B.R. 570, 604–05 (Bankr. W.D. Pa. 2011) (finding a proposed section 524(g) plan "unconfirmable" due to "the lack of clarity regarding insurance neutrality"); *In re Crippin*, 877 F.2d 594, 598 (7th Cir. 1989) ("[B]ankruptcy courts do not have the power to rewrite contracts to allow debtors to continue to perform on more favorable terms."); *see also Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984); *In re Cajun Elec. Power Coop., Inc.*, 230 B.R. 715, 737 (Bankr. M.D. La. 1999). The Plan, however, does just that—altering in three distinct ways Everest's obligations as they existed pre-petition under the various policies.

4. First, the Plan harms Everest by, *inter alia*, changing certain pre-petition practices observed by the insurers and the Debtors. For example, the Plan potentially eliminates the role that Everest plays in defending pre-petition claims and results in accelerated and increased payment of claims. In addition, whereas the Debtors have vigorously defended against abuse claims prior to its bankruptcy filing, they have now proposed a Plan that allows the same abuse claimants to utilize an abbreviated claims-adjudication and valuation process for payment of claims under the Plan and proposed Settlement Trust.

5. The Plan provides that, if the Settlement Trustee finds that a Submitted Abuse Claim is an Allowed Abuse Claim, the Settlement Trustee will utilize certain procedures set forth in the Plan to determine the Claims Matrix tier and Scaling Factors for such Abuse Claim. *See* Plan at Art. VII § E. The range of values of the Abuse Claims, set forth in the Claims Matrix in the Plan, are unreasonable and inconsistent with the appropriate value of Abuse Claims. *See* Plan at Art. VIII. Thus, the proposed procedures in the Plan are prejudicial to Everest and

impairs its rights under its policy contracts because it increases the claims amounts beyond that which Everest would have had to provide prepetition. Accordingly, Everest objects to any assertion that the procedures, including the valuation set forth in the Plan's Claims Matrix or Scaling Factors, are binding on Everest. Further, Everest objects to the Plan to the extent that it impairs, prejudices, or otherwise compromises any of Everest's rights under the Everest Excess Policies as to coverage for any specific Abuse Claim that may be asserted by the Trust or any other party seeking insurance coverage for any Abuse Claim, including, but not limited to, the right to rely on any terms, provisions, exclusions and/or conditions in the Everest Excess Policies or the Underlying Insurance and the right to apply or subtract any remaining policy SIR amount to the extent there is any insurance coverage available for the Abuse Claim under the Everest Excess Policies.

6. Second, the Plan seeks to treat the Debtors' SIR, in part, as a deductible, which is improper because the two obligations function differently. *See* Amended Disclosure Statement [D.I. 6445] at 68–69, 279–280.[4] The Amended Disclosure Statement describes the SIR "issue" as merely being a coverage defense asserted by the carriers that has "no merit," essentially dismissing the impact the SIR[5] will have on the ability to fund the payment of Abuse Claims from insurance proceeds. *See* Amended Disclosure Statement [D.I. 6445] at 279. Therefore, the Plan alters Everest's payment obligation and deprives it of a defense that existed under Everest's contracts pre-petition. Everest objects to the Plan to the extent that it seeks to impair any of

---

[4] A SIR functions as a condition precedent to coverage; an insured (such as the BSA) must satisfy, or pay, the full amount of applicable SIR as a condition to accessing coverage sitting above the SIR. Failure to do so precludes recovery under all policies that are excess to the SIR(s).

[5] Upon information and belief, the first layer of each insurance tower in which Everest participates consists of a $1 million-each-and-every-occurrence SIR that must be satisfied before the insured can access the insurance sitting above the SIR, including but not limited to, the Everest Excess Policies.

4

Everest's legal, equitable, contractual or other rights, defenses, and interests in connection with the Debtors' SIR obligations or requirements.

7. Third, as set forth in the Plan and Amended Disclosure Statement, Debtors have "entered into settlement agreements pertaining to certain policies that may limit the extent of coverage available." Amended Disclosure Statement [D.I. 6445] at 69. The Everest Excess Policies, however, apply excess of certain underlying insurance and other insurance available to the BSA, including, but not limited to certain scheduled underlying insurance (i.e. the Underlying Insurance). Pursuant to the terms, conditions and provisions of the Everest Excess Policies, all applicable Underlying Insurance, other insurance and/or retentions/deductibles must be fully exhausted or satisfied before the Everest Excess Policies potentially apply to any particular covered Abuse Claim. Thus, again, the Plan seeks to alter Everest's rights and expand its obligations under prepetition insurance contracts. To the extent any settling carrier issued any policy(ies) that constitutes Underlying Insurance under any Everest Excess Policy, Everest reserves all rights with respect to its obligations, if any, under the Everest Excess Policies including, but not limited to, all rights to the extent that any Underlying Insurance is not fully exhausted or satisfied due to a settlement, and Everest objects to the Plan to the extent that it seeks to impair, prejudice, or otherwise harm such rights.

8. In sum, Everest asserts that the Plan is uncofirmable under 11 U.S.C. § 1129(a)(3) as being in contravention of the Debtors' valid contracts under state-law because it increases Everest's financial obligations for the claims through the claims procedures established, deprives Everest of certain defenses and rights under the Excess Policies, and increases its potential liability for the claims by removing Underling Insurance exhaustion requirements. Thus, Everest

objects to the Plan to the extent it does not fully preserve the above rights, and others, and to the extent it increases insurance exposure and the liability, if any, of Everest.

## **RESERVATION OF RIGHTS**

9. Everest continues to reserve all of its rights under the Everest Excess Policies and at law with respect to the terms, conditions, provisions and exclusions of the Everest Excess Policies, including its rights related to the process of resolving any coverage potentially available for any individual claim.

10. Everest also reserves the right to join in, and adopt as its own, any objections to the Plan filed by any other person or entity. In particular, but without limitation, Everest reserves the right to join in objections filed by other insurers to the extent the arguments set forth in those objections are applicable to Everest.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Everest objects to confirmation of the Debtors' Plan and requests the Court deny confirmation accordingly and grant such other and further relief as is just and proper.

Dated: February 4, 2022                             Respectfully submitted,

        */s/ Nader A. Amer*
        Nader A. Amer (DE Bar No. 6635)
        CARLTON FIELDS, P.A.
        2 MiamiCentral
        700 NW 1st Avenue, Suite 1200
        Miami, Florida 33136-4118
        Telephone: (305) 539-7205
        Facsimile:  (305) 530-0055
        Email: namer@carltonfields.com

        *Counsel to Everest National Insurance Company*