# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Related Docket Nos. 6443, 6445, 7832** |

**OBJECTION OF JANE DOE TO CONFIRMATION OF SECOND MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, AND NON-DEBTOR RELEASES AND INJUNCTIONS THEREIN**

Jane Doe ("**Jane Doe**"), by and through her undersigned counsel, objects (the "**Objection**")[2] to confirmation of the Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [Docket No. 7832] (the "**Fifth Amended Plan**"). In support thereof, Jane Doe respectfully states:

## PRELIMINARY STATEMENT

1. Jane Doe objects to confirmation of the Fifth Amended Plan (*as described below*), including due to the inclusion of releases of and injunctions with respect to certain non-Debtor entities, without compensation or adjudication of the rights of Jane Doe against such non-Debtor entities.

2. First, this Court lacks statutory authority to approve non-consensual releases of non-Debtor third parties as set forth in the Fifth Amended Plan. *See, In re Purdue Pharma, L.P.*,

---

[1] The debtors (collectively, the "Debtors") in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, TX 75038.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Fifth Amended Plan, as applicable.

00021806.1

2021 U.S. Dist. LEXIS 242236, *29-31, *133-34 (S.D.N.Y. Dec. 16, 2021) (holding that non-consensual third-party releases embedded in plan were not authorized by 11 U.S.C. 101-1531 (as amended the "**Bankruptcy Code**") and, therefore, bankruptcy court could not approve such releases); *see also Czyzewski v. Jevic Hold. Corp.*, 137 S. Ct. 973, 986 (2017) (holding that bankruptcy court may not act contrary to provisions of the Bankruptcy Code under its equitable powers under section 105 of the Bankruptcy Code); 11 U.S.C. § 524(e).

3. Second, assuming this Court has such authority, which it does not, any such releases, in accordance with precedent in the United States Court of Appeals for the Third Circuit (the "**Third Circuit**"), are not permissible absent findings that such releases are both necessary to the Debtors' reorganization and given in exchange for fair consideration. *See*, *e.g.*, *In re Continental Airlines*, 203 F.3d 203, 213-14 and n. 11 (3d Cir. 2000). Neither factor is satisfied here with respect to Jane Doe.

4. Third, this Court lacks constitutional authority to approve the release of Jane Doe's claims against non-Debtors as part of confirmation of the Fifth Amended Plan. As the Third Circuit has explained, even when acting within its core statutory authority under the Bankruptcy Code, a bankruptcy court exceeds its constitutional authority when it resolves matters that are not "integral to the restructuring of the debtor-creditor relationship." *In re Millennium Lab Holdings II, LLC*, 945 F.3d 126, 137 (3d Cir. 2019), *cert. denied sub nom. ISL Loan Tr. v. Millennium Lab Holdings II, LLC*, 140 S. Ct. 2805, 207 L. Ed. 2d 142 (2020). Jane Doe's claims against non-Debtors, including in particular the Town of Trumbull, Connecticut, and any parties related thereto (collectively, "**Trumbull**"), fall far short of that high bar.

5. For these reasons, as set forth more fully herein, Jane Doe objects to confirmation of the Plan, unless such impermissible third-party releases and all associated injunctions are excised from any plan approved by this Court.

6. The non-consensual third-party releases, including releases of personal injury claims of survivors of sexual abuse (like Jane Doe), and related injunctions that the Debtors seek to impose through the Fifth Amended Plan relate to non-core matters with respect to which the Court may not constitutionally enter a final order. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011); *see also In re Purdue*, *143-44; 28 U.S.C. 157(b)(2)(B). Pursuant to Rule 7012-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Jane Doe respectfully does not consent to the entry of any such final order or judgment by the Court.

## BACKGROUND

**A. BOY SCOUTS OF AMERICA AND LEARNING FOR LIFE.**

1. In 1991, the Boy Scouts of America (the "**BSA**") separated its Explorer program into a subsidiary, Learning for Life, Inc. ("**LFL**").

2. In 1999, LFL became its own entity and an affiliate of the BSA. The affiliation continues today. LFL is not, as of the date of filing this Objection, a debtor in these or any other bankruptcy cases. LFL is, however, included in the list of Related Non-Debtor Entities that are Protected Parties under the terms of the Fifth Amended Plan. *See* Fifth Amended Plan Art.I.A.221, 227, Ex. H.

**B. JANE DOE'S ABUSE AND RELATED STATE COURT LAWSUIT.**

7. Jane Doe was at the time of her repeated sexual assaults, a minor and a resident of the State of Connecticut.

8. At the end of 2012, Jane Doe enrolled as a cadet in the Trumbull Police Cadets Post 659 (the "**Explorer Program**"). The BSA and LFL jointly promoted, facilitated, and administered Explorer programs throughout the country, including the Explorer Program sponsored and controlled by the Town of Trumbull.[3]

9. By 2012, the BSA and LFL were aware that children, mostly females, had been sexually molested nationally while participating in Explorer programs. Because of this knowledge, LFL created policies known as the *Youth Practice Guidelines*. The BSA conducted training for adult participants in the Explorer programs and that training is mandatory for all adult supervisors. LFL was aware that police departments were not following the agreed policies, but took no action to correct these violations.

10. From approximately March, 2013 until September, 2013, Jane Doe was sexually assaulted, sexually battered, and sexually exploited by her supervisor for the Explorer Program, a police officer employed by the Town of Trumbull.

11. On January 18, 2019, prior to the commencement of these bankruptcy cases, Jane Doe filed a complaint (the "**Original Connecticut Complaint**") in the Fairfield Judicial Superior Court for the State of Connecticut (the "**Connecticut State Court**") styled *Jane Doe v. Town of Trumbull, Learning for Life Inc., Boy Scouts of America Corporation, William Ruscoe, Thomas Kiely, Timothy Fedor*, No. FBT CV 19 5039311 S. Jane Doe subsequently revised the Original Connecticut Complaint on May 24, 2019, and again on June 27, 2019 (as amended, the "**Amended Connecticut Complaint**"). Through the Amended Connecticut Complaint, Jane Doe sought

---

[3] As set forth herein, certain questions have arisen regarding whether the Town of Trumbull was, in fact, a chartered organization at the time of the abuse suffered by Jane Doe. *See infra* ¶ 13.

compensation for the repeated sexual assaults she suffered while a minor and a member of the Explorer Program.

12.  Due to the reckless, wanton, and willfully improper acts of negligence, Jane Doe's claims seek to impose liability on the named defendants in the Amended Connecticut Complaint, including the Boy Scouts of America. In the Connecticut State Court action, Jane Doe asserted several claims under state law, including claims for monetary damages for her pain, suffering, personal injuries and humiliation, punitive damages and exemplary damages.

13.  Prior to the Petition Date, Jane Doe received discovery responses from certain of the defendants including LFL. Among other things, in its responses to interrogatories, which were verified by an authorized representative of LFL, LFL stated that "[t]he defendant Town of Trumbull, through the Trumbull Police Department, became a Sponsoring Organization of a Police Explorer Post on or about March 3, 2003, and ended that sponsorship on December 31, 2012." *See* LFL's Response to Interrogatories, dated June 19, 2019, true and correct copies of relevant portions of which are attached hereto as **Exhibit A**. As of the Petition Date (as defined herein), Jane Doe's Amended Connecticut Complaint remained pending and the parties to such litigation were proceeding with discovery.

**C. The Bankruptcy Cases and the Injunction Order.**

14.  On February 18, 2020 (the "**Petition Date**"), Boy Scouts of America, along with its affiliate Delaware BSA, LLC, filed for bankruptcy protection under chapter 11 of 11 U.S.C. §§ 101-1532 (as amended and applicable hereto, the "**Bankruptcy Code**"), thereby instituting the above-captioned, jointly administered bankruptcy cases (collectively, the "**Bankruptcy Cases**").

15.  On that same date, the Debtors filed a verified complaint [Adv. Docket No. 1] (the "**Sealed Complaint**") styled *Boy Scouts of America v. A.A., et. al.*, Adv. Pro. No. 20-50527 (LSS).

The BSA subsequently filed a redacted version of the Sealed Complaint [Adv. Docket No. 14] (the "**Redacted Complaint**").

16. On March 30, 2021, the Court entered an order [Adv. Docket No. 54] (the "**Injunction Order**"). The injunction in the Injunction Order was extended five times, in accordance with the terms of such order. The injunction has been extended through and including the date of the first omnibus hearing after the Bankruptcy Court issues its decision confirming or denying confirmation of the Plan.

17. By its terms and from the date it was first entered by this Court, such order has permitted the Connecticut State Court action to proceed against all of the defendants named therein except BSA, a Debtor, and LFL, a proposed Protected Party. *See* Injunction Order Schedule 1, row 8. Now, through confirmation of the Fifth Amended Plan, it appears that the Debtors seek to obtain what they could not achieve through adversary proceeding or in accordance with the Bankruptcy Code and applicable law in this Circuit, *i.e.*, the release of certain non-Debtor parties named in the Amended Connecticut Complaint, including, in particular, the Town of Trumbull and its employees (other than the Perpetrator), and a permanent injunction improperly denying survivors, like Jane Doe, of their day in court against such non-Debtor entities and persons.

18. On March 5, 2020, the Office of the United States Trustee appointed the Official Committee of Tort Claimants (the "**TCC**").

19. On May 26, 2020, the court entered an order [Docket No. 695] (the "**Bar Date Order**") setting the deadline for filing, among other claims, claims by survivors of sexual abuse in scouting. Prior to the applicable bar date, and in accordance with the Bar Date Order, Jane Doe filed a proof of claim setting forth in detail the nature the of the abuse she survived and the damages she has incurred and continues to incur as a result of this abuse.

### D. THE FIFTH AMENDED PLAN AND SOLICITATION OF SUCH PLAN.

20. On the Petition Date, the Debtors filed a Plan of Reorganization [Docket No. 20] (the "**Original Plan**") and accompanying disclosure statement [Docket No. 21].

21. The Original Plan was amended numerous times prior to the filing of the Fifth Amended Plan. *See* Docket Nos. 2293, 2592, 5368, 5484, 6212, 6377, 6416, 6429, and 6443.

22. On September 30, 2021, the Court entered its order [Docket No. 6438] (the "**Solicitation Procedures Order**") approving the Debtors' solicitation of the prior iteration of the Fifth Amended Plan [Docket No. 6443] and the accompanying disclosure statement [Docket No. 6445]. Among other things, the Solicitation Procedures Order provided a voting deadline of December 14, 2021, at 4:00 p.m. (Eastern). That deadline was extended through and including December 28, 2021, at 4:00 p.m. (Eastern) (as extended, the "**Voting Deadline**"). Prior to the Voting Deadline, Jane Doe submitted her ballot rejecting the Fifth Amended Plan and opting out of the releases therein, to the extent applicable.

23. On December 18, 2021, only ten days prior to the Voting Deadline, the Debtors filed the Fifth Amended Plan, which included numerous and substantial modifications to the plan and disclosure statement approved for solicitation by this Court. The Debtors did not re-solicit the Fifth Amended Plan and accompanying disclosure statement.

24. Critically, for purposes of the Objection, the Fifth Amended Plan defines claims like that held by Jane Doe as "Post-1975 Chartered Organization Abuse Claims." *See* Fifth Amended Plan Art. I.A. 202, at 36. With respect to those brave individuals who survived abuse after January 1, 1976, the Fifth Amended Plan provides that such individuals shall be compelled to release all non-Perpetrators and that their claims shall be channeled to a Settlement Trust. *See id.* Art. X.F., G., H., J.3. L. Specifically, the Fifth Amended Plan provides for a broad release of

and channeling injunction for, among others, those non-debtor entities defined as "Protected Parties" and "Limited Protected Parties," *see* Fifth Amended Plan Art.I.A.164, 221.

25. Protected Parties under the Fifth Amended Plan are:

> (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Contributing Chartered Organizations; (f) the Settling Insurance Companies; and (g) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Protected Party. Notwithstanding the foregoing, a Contributing Chartered Organization shall be a Protected Party with respect to Abuse Claims only as set forth in the definition of "Abuse Claim."

*Id*.

26. "Limited Protected Parties" means "Participating Chartered Organizations." In order to obtain the broad involuntary releases in the Fifth Amended Plan by, among others holders of Post-1975 Chartered Organization Abuse Claims, and the even broader benefits of the Channeling Injunction, *i.e.*, in order to become a "Participating Chartered Organization" a Chartered Organization must not (i) "object to confirmation of the [Fifth Amended] Plan" or (ii) "inform Debtors' counsel in writing on or before the confirmation objection deadline that it does not wish to make the Participating Chartered Organization Insurance Assignment." *Id.* Art.I.A.187. Chartered Organizations, in turn, include "each and every civic, faith-based, educational or business organization, governmental entity or organization, other entity or organization, or group of individual citizens, in each case presently or formerly authorized by the BSA to operate, sponsor or otherwise support one or more Scouting units." *Id.* Art.I.A.57.[4]

**27.** After parsing through the various definitions in the Fifth Amended Plan, it becomes apparent that the Debtors propose to obtain from this Court the extraordinary remedies of broad non-consensual third-party releases and an equally broad channeling injunction for non-Debtor

---

[4] "BSA" is defined as "Boy Scouts of America, a congressionally chartered non-profit corporation under title 36 of the United States Code." *Id.* Art.I.A.41.

entities that have provided no consideration (other than not objecting to confirmation and not specifically requesting to be excluded from the otherwise involuntary assignment of the purported rights, if any, such Chartered Organizations (or former Chartered Organizations), and such entities' employees, may have to insurance provided by or available to the Debtors). This the Court cannot do.

## CONFIRMATION STANDARD

28. Section 1129(a) of the Bankruptcy Code provides that "[t]he court shall confirm a plan only if it complies with all" of the requirements of section 1129(a). 11 U.S.C. § 1129(a). Among other requirements, section 1129(a) mandates that "[t]he Plan complies with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(1). The Debtors, as plan proponents, bear the burden of proof with respect to the confirmation requirements by a preponderance of the evidence. *Heartland Fed. Savs. & Loan, Ass'n v. Briscoe Enters. (In re Briscoe Enters.)*, 994 F.2d 1160, 1165 (5th Cir. 1993). Consistent with these standards, Jane Doe objects to confirmation of the Fifth Amended Plan to the extent that such plan prohibits Jane Doe from proceeding against any of the non-Debtors named in the Amended Connecticut Complaint, including but not limited to the Town of Trumbull, its current and former employees (other than the Perpetrator) and LFL.

## OBJECTION

I. **THE FIFTH AMENDED PLAN CANNOT BE CONFIRMED BECAUSE THE COURT LACKS STATUTORY AUTHORITY TO RELEASE JANE DOE'S STATE LAW CLAIMS AGAINST NON-DEBTORS AND TO ENJOIN FURTHER PROSECUTION OF SUCH CLAIMS.**

29. A bankruptcy court is a court of limited jurisdiction and "a creature of statute." *In re Purdue*, at \*144. Because the Bankruptcy Code provides no authorization for non-consensual releases of non-debtors (outside of the limited non-debtors permitted releases in bankruptcy cases involving the manufacture and sale of asbestos in accordance with section 524(g) of the Bankruptcy Code), this Court cannot approve such releases and the corresponding Channeling

Injunction in the Fifth Amended Plan. Indeed, Bankruptcy Code section 524(e) expressly provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e).

30. In *Purdue*, the United States District Court for the Southern District of New York (the "**New York District Court**") recently determined that the bankruptcy court in that case exceeded the bounds of its statutory authority in approving non-consensual releases of direct claims held by creditors against non-debtors in a plan, invalidated such releases and vacated the bankruptcy court's order approving such releases. *See id.* at 228. In reaching this decision, the New York District Court noted that only one section of the Bankruptcy Code authorized such releases, section 524(g) of the Bankruptcy Code, and that such authorization was expressly limited to "cases involving injuries arising from the manufacture and sale of asbestos." *Id.* at *166-67. The Bankruptcy Code, as the New York District Court noted, otherwise was silent with respect to such releases; however, the New York District Court could not, and would not, conclude that "Congressional 'silence' should be deemed consent to an expansion of Section 524(g)." *Id.* at *220.[5]

31. In this case, following the reasoning in *Purdue* (and notwithstanding Judge Dorsey's recent decision in *In re Mallinckrodt*, the facts of which, including the specifics of the proposed release, are distinguishable), the Court should deny confirmation of the Fifth Amended Plan to the extent that such confirmation provides for non-consensual third-party releases and the

---

[5] The New York District Court's review of relevant Third Circuit rulings in this context is also instructive. Specifically, as the New York District Court noted, "[o]n those occasions when the Third Circuit did address a bankruptcy court's *statutory* authority to impose non-debtor releases, it overturned bankruptcy court orders granting them" *Id.* at 199; *but see In re Mallinckrodt, PLC*, Case No. 20-12522 (JTD), D.I. 6347 at 30 (Bankr. D. Del. Fem 3, 2022) (noting that "the Third Circuit . . . has recognized that bankruptcy courts do have statutory and constitutional authority to approve a plan of reorganization that contains non-consensual third-party releases, *albeit*, only in extraordinary cases.").

Channeling Injunction presently in such plan. There is no statutory basis for such approval and, absent any express provision in the Bankruptcy Code authorizing such releases and corresponding injunctions, this Court lacks the power to grant such releases.

II. **THE FIFTH AMENDED PLAN CANNOT BE CONFIRMED BECAUSE THE RELEASE OF JANE DOE'S STATE-LAW CLAIMS VIOLATES THE BANKRUPTCY CODE.**

    A. **The Release of Jane Doe's Claims Does Not Meet the Third Circuit's "Exacting Standards" for Nonconsensual Third-Party Releases.**

32. Even if this Court were empowered by the Bankruptcy Code to approve non-consensual releases of non-debtors, which it is not, such releases could not be approved under applicable Third Circuit precedent. Indeed, the Third Circuit has held that nonconsensual third-party releases in bankruptcy reorganization plans may only be approved in "exceptional" circumstances and cautioned courts considering such releases to do so "with caution." *In re Millennium Lab Holdings II, LLC*, at 139. As the Court elaborated in *Millennium Lab Holdings*:

> Consistent with prior decisions, we are not broadly sanctioning the permissibility of nonconsensual third-party releases in bankruptcy reorganization plans. Our precedents regarding nonconsensual third-party releases and injunctions in the bankruptcy plan context set forth exacting standards that must be satisfied if such releases and injunctions are to be permitted[.]

*Id*. at 139 (citing *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 206 (3d Cir. 2011) (*en banc*); and *In re Continental Airlines, Inc.*, at 214.

33. "The hallmarks of permissible non-consensual releases [are] fairness, necessity to the reorganization, and specific factual findings to support these conclusions." *In re Continental Airlines, Inc.*, at 214; *see also id.*, n. 11 (not deciding "whether there are circumstances under which we might validate a non-consensual release that is both necessary and given in exchange for fair consideration"). Applying *Continental Airlines*, this Court has set forth certain conditions that might support such non-consensual third-party releases in rare occasions, including both that

"the releasees have provided a critical financial contribution to the debtor's plan" and also that "the non-consenting creditors received reasonable compensation in exchange for the release." *In re Spansion, Inc.*, 426 B.R. 114, 144 (D. Del. 2010). None of these requirements are satisfied with regard to the non-consensual release of Jane Doe's claims against non-Debtors through the Fifth Amended Plan.

34.     First, neither the Town of Trumbull nor any of the other non-Debtors named in the Amended Connecticut Complaint and proposed to be released under the Fifth Amended Plan, have provided any financial contribution, let alone a contribution "critical" to the Fifth Amended Plan.

35.     In *In re Global Indus. Techs., Inc.*, the Third Circuit explained that "[in] practical terms," to show that a release or injunction was "necessary to the reorganization" required the Debtor to show that the "liability [at issue] was sufficiently onerous to jeopardize the debtors' reorganization if not resolved [in accordance with the Plan]." 645 F.3d at 206. The release of Jane Doe's claims against such non-Debtors is not necessary to the success of the plan proposed by the Debtors. Indeed, in light of the position taken by LFL in Jane Doe's ongoing state court litigation that the Town of Trumbull ceased being a chartered organization prior to the abuse suffered by Jane Doe, and the fact that the Town of Trumbull does not currently sponsor her former Explorer troop, the Town of Trumbull appears completely irrelevant to any reorganization by the Debtors.

36.     Second, the Fifth Amended Plan is not fair with respect to Jane Doe. Although Jane Doe will be able to receive some compensation from the Settlement Trust if her claim against the BSA is ultimately allowed, she will receive no compensation on account of her claims, which are still proceeding to trial, in accordance with the Injunction Order, against the Town of Trumbull and the other defendants that are "Limited Protected Parties." This appears to be so, notwithstanding the position of LFL in the pending state court action that the Town of Trumbull

was not even a sponsoring organization at the time of the abuse suffered by Jane Doe, and notwithstanding that the Town of Trumbull has different insurance carriers than those that appear to have settled with the Debtors. Indeed, in light of the expected minimal recoveries for survivors with valid claims from the Settlement Trust, it would seem that Jane Doe would be better served by a Chapter 7 bankruptcy case that would, at least, permit her to continue to seek compensation from the non-Debtor entities she has sued, especially the Town of Trumbull. Thus, the Fifth Amended Plan does not comply with the Bankruptcy Code with respect to Jane Doe. *See* 11 U.S.C. §1129(a)(7).

37. The facts in *In re Continental Airlines*, in particular the attempt to incorporate provisions of a settlement with insurers into a plan providing for third-party releases of non-debtors covered by such policies, are similar to the primary issues at play in these bankruptcy cases and motivating the improper third-party release and related injunctions in the Fifth Amended Plan. In *Continental*, shareholders objected to confirmation of a plan that released the Debtor's current and former directors and officers and permanently enjoined shareholder lawsuits against such released non-Debtors. 203 F.3d 203, 205-208. As with the non-Debtors that Jane Doe has sued and that the Fifth Amended Plan would release, the officers and directors in *Continental* made no financial contribution to the bankruptcy plan. *Id*. The debtor had, however, entered a settlement with both the directors and officers and the D&O liability insurers under which the insurers contributed $5 million to the debtor's estate in return for mutual releases. *Id*. The debtors then sought to incorporate those releases in its reorganization plan. *Id*.

38. Although the Third Circuit ultimately declined to establish a "blanket rule" with respect to such extraordinary third-party releases, it did so because the facts fell so far short of justifying such releases:

> Considering the instant appeal in the context of the case law we have reviewed we conclude that the provision in the Continental Debtors' plan releasing and permanently enjoining Plaintiffs' lawsuits against the non-debtor D&O defendants does not pass muster under even the most flexible tests for the validity of non-debtor releases. The hallmarks of permissible non-consensual releases—fairness, necessity to the reorganization, and specific factual findings to support these conclusions—are all absent here.

*Id*. at 214 (emphasis added); *see also id.*, n. 11 ("Because the release and permanent injunction of Plaintiffs' claims are so clearly invalid under any standard," the Court chose not to speculate on the circumstances that might validate a non-consensual release).

39. As in *Continental*, Jane Doe will "receive. . . no consideration in exchange for having [her lawsuit against the Town of Trumbull and LFL] permanently enjoined." *Id*. at 215. And there is no basis "to even imply that the success of the . . . Debtors' reorganization bore any relationship to the release and permanent injunction of [the State's] action[]." *Id*. Here again, there is no evidence of a "critical financial contribution" from the non-debtor Chartered Organizations, and certainly not from the Town of Trumbull or its employees that are defendants in Jane Doe's pending lawsuit, in particular, in exchange for the releases and injunctions in the Fifth Amended Plan. Nor does the prospect of potential claims by such non-Debtor released parties make the proposed releases necessary. As the Third Circuit held in *Continental*, "[e]ven if the D&O defendants' obligations culminating from Plaintiffs' class actions were indemnifiable, the fact that the reorganized Continental Airlines might face an indemnity claim sometime in the future, in some unspecified amount, does not make the release and permanent injunction of Plaintiff['s] claims 'necessary' to ensure the success of the . . . reorganization." *Id*. at 216.

40. Jane Doe does not consent to the proposed release of the non-Debtors named in the Amended Connecticut Complaint. Nor does any release of such entities rise to the "exacting standards" applied in this Circuit to justify a non-consensual third-party release in connection with a bankruptcy reorganization. To the extent that such non-Debtor entities have made any

contribution to Fifth Amended Plan, and they have not, there is nothing "exceptional" about such contribution. In short, the Fifth Amended Plan provides no compensation to Jane Doe in return for its extraordinary non-debtor releases and associated injunctions, and such releases and injunctions are in no way necessary to the success of the reorganization of the Debtors. For these reasons, the Court should not confirm the Fifth Amended Plan.

> **B.** **The Fifth Amended Plan Also Violates the "Best Interest of Creditors" Test by Failing to Account for Jane Doe's Claims Against the Debtors in its Liquidation Analysis.**

41. Section 1129(a)(7)(A) of the Bankruptcy Code, requires a plan proponent seeking confirmation to establish that:

> (7) With respect to each impaired class of claims or interests
> (A) each holder of a claim or interest of such class—
>  i. has accepted the plan; or
>  ii. will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. § 1129(a)(7)(A). The best interests of creditors test "is designed to protect individual dissenting members of an impaired, accepting class, establishing the minimum that they must receive or retain under the plan." *In re Quigley Co., Inc.*, 437 B.R. 102, 143-44 (Bankr. S.D.N.Y. 2010).

42. When a debtor proposes non-debtor releases as in the Fifth Amended Plan, the best interests of creditors test requires such debtor to establish that the creditors who are forced to release their claims would receive more under the plan than they would receive if they were permitted to pursue their released claims against the non-debtors, which they would be permitted to do in a hypothetical chapter 7 case. *Id*. at 144-45. As this Court explained in *In re Washington Mut., Inc.*: "[T]here is no mechanism under chapter 7 to grant third party releases to non-debtors. . . .

In a case where claims are being released under the chapter 11 plan but would be available for recovery in a chapter 7 case, the released claims must be considered as part of the analysis in deciding whether creditors fare at least as well under the chapter 11 plan as they would in a chapter 7 liquidation." 442 B.R. 314, 359-60 (Bankr. D. Del. 2011) (emphasis added).

43. The liquidation analysis prepared by the Debtors, included with the Disclosure Statement [Docket No. 6445] at Exhibit D (the "**Liquidation Analysis**"), fails to meet this requirement with respect to Jane Doe's claims against the non-Debtor defendants in the Connecticut State Court action and the claims of other survivors of abuse in scouting. Initially, and without providing any authority beyond the prohibition of an involuntary conversion of these bankruptcy cases under Bankruptcy Code section 1112(c) generally, the Debtors assert that as non-profits seeking non-consensual third-party releases through the Fifth Amended Plan, they are not required to satisfy the best interests of creditors test in connection with confirmation of such plan. *See* Disclosure Statement Art. IX.D. at 251. Although there does not appear to be any decision by any court to date on this fine point of law, the case law regarding such non-consensual releases, as noted above, suggests otherwise. Moreover, the Debtors admit in the Disclosure Statement that such an analysis would be "helpful to holders of Claims as they evaluate their proposed treatment under the [Fifth Amended] Plan." *Id*.

44. Although the Debtors ultimately did attach the Liquidation Analysis to the Disclosure Statement, the Debtors limit their analysis of recoveries for holders of Direct Abuse Claims to recoveries from the BSA itself, the Local Councils, and Hartford (through the proposed settlement with Hartford). *See id.* at fn. 120, at 254. Moreover, in calculating the potential recoveries under a hypothetical Chapter 7 bankruptcy case for survivors of abuse, like Jane Doe, the debtors excluded any insurance recoveries "as such recoveries are uncertain and are expected

to be lower in a liquidation due to the difficulty of obtaining insurance recoveries in such a scenario because, in large part, many of the BSA's Insurance Policies are subject to the rights of co-insured, non-Debtors, including Local Councils, under those policies and because obtaining recoveries would likely require significant litigation." *Id.* fn.122. Moreover, even though the terms of the Fifth Amended Plan, if approved by this Court, would expressly deny any recovery from survivors, like Jane Doe, against Limited Protected Parties, the Debtors make no attempt in the Liquidation Analysis to account for such recoveries. By failing to conduct a proper liquidation analysis, the Debtors have failed to satisfy the requirements of 11 U.S.C. § 1129(a)(7)(A), which do, in fact, apply to the Debtors in this instance. For this reason, as well, the Fifth Amended Plan should not be confirmed.

III. **THIS COURT LACKS CONSTITUTIONAL AUTHORITY TO APPROVE THE RELEASE OF JANE DOE'S CLAIMS AGAINST NON- DEBTORS BECAUSE THEY ARE NOT ESSENTIAL TO THE FIFTH AMENDED PLAN.**

45. This Court also lacks constitutional authority to approve the Reorganization Plan containing the non-consensual release of Jane Doe's claims against, among others, the Town of Trumbull and LFL. In *In re Millennium Lab Holdings II, LLC*, the Third Circuit considered whether the Bankruptcy Court could confirm a Chapter 11 reorganization plan containing such releases "without running afoul of Article III of the Constitution," under the principles articulated by the U.S. Supreme Court in *Stern v. Marshall*, 564 U.S. 462 (2011). 945 F.3d 126, at 129. The Court concluded that it could under the "exceptional facts of [that] case," but only because there the releases and accompanying injunctions were "integral to the restructuring of the debtor-creditor relationship." *Id.*; *see also id*. at 135 ("a bankruptcy court is within constitutional bounds when it resolves a matter that is integral to the restructuring of the debtor-creditor relationship"). Nevertheless, the Third Circuit cautioned that "we are not broadly sanctioning the permissibility of nonconsensual third-party releases in bankruptcy reorganization plans." *Id*. at 139.

46. As set forth above, the release of Jane Doe's claims against the Town of Trumbull and LFL is not "integral to the restructuring of the debtor-creditor relationship." Confirmation of a plan that includes that release, therefore, even in the context of a "core" bankruptcy proceeding, would exceed this Court's constitutional authority under Article III. For this reason, as well, the Fifth Amended Plan cannot be confirmed in its present form.

### RESERVATION OF RIGHTS AND JOINDER

47. In light of the extensive ongoing discovery in these bankruptcy cases in connection with the proposed confirmation of the Fifth Amended Plan, and the failure of the Debtors to date to disclose the final definitive settlement agreements with various insurance carriers that the Debtors purport to make part of the Fifth Amended Plan, Jane Doe reserves all of her rights to join in any other objections to confirmation of the Fifth Amended Plan that may be filed, to amend or otherwise supplement this Objection, and to present additional arguments at the hearing on confirmation of the Fifth Amended Plan.

# CONCLUSION

**WHEREFORE**, Jane Doe respectfully requests that the Court deny confirmation of the Fifth Amended Plan and grant her such other and further relief as is just and proper under the circumstances.

Dated: February 4, 2022
       Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ Mark L. Desgrosseilliers*

Mark L. Desgrosseilliers (No. 4083)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:    (302) 295-0191
Email:    desgross@chipmanbrown.com

    -and-

Cindy L. Robinson
Doug Mahoney
**ROBINSON MAHONEY PLLC**
1210 Post Road
Fairfield, Connecticut 06824
Telephone:    (203) 692-2186
Email:    crobinson@robinsonmahoney.com
           dmahoney@robinsonmahoney.com

*Counsel to Jane Doe*