**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 20-10343 (LSS) |
| BOY SCOUTS OF AMERICA AND | ) | |
| DELAWARE BSA, LLC,[1] | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Related Docket No. 7832** |

**OBJECTION OF ERIC PAI, AS ADMINISTRATOR OF THE ESTATE
OF JARRED PAI TO CONFIRMATION OF THE SECOND MODIFIED
FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION
FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC**

Eric Pai, as administrator of the Estate of Jarred Pai, a minor ("Administrator"), by and

through his undersigned counsel, objects to confirmation of the *Second Modified Fifth Amended*

*Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (the

"Plan") [Docket No. 7832] and states as follows:

## Background

### A. The State Court Action and Applicable Insurance Coverage

1.      On July 27, 2014, Jarred Pai, a minor, was a passenger in a vehicle being driven by

Coalton Godwin on their return from the Philmont Scout Ranch, in Cimarron, New Mexico, where

they both had participated in an overnight hiking and camping trip organized and hosted by BSA.

During their return trip, while driving through Colorado, the Jeep Grand Cherokee operated by

Mr. Godwin entered the median, then overcorrected to the right and overturned.  Jarred Pai suffered

severe injuries in the accident and died the same day.

2.      The Administrator initiated an action in Illinois State Court (the "State Court

Action") by filing a complaint on July 8, 2016 asserting claims against BSA for negligence by its

agent (Count I), institutional negligence (Count II), wrongful death (Count III) and survival (Count

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

IV). Count I asserts that Mr. Godwin was an agent of BSA and his negligence in causing the accident that killed Jarred Pai is attributable to BSA. Count I also alleges that other agents of BSA were negligent in the planning and supervision of the return trip from the Philmont Scout Ranch, in that Mr. Godwin and Mr. Pai undertook the return trip from New Mexico to Illinois without adequate rest and without following other BSA guidelines for such travel. Count II asserts the institutional negligence of BSA in failing to adopt, promote or enforce guidelines, rules and regulations appropriate for such travel.

3.      The Debtors' aggregate insurance coverage for the policy year March 1, 2014 through March 1, 2015, the time period covering the Administrator's claims, total $209,000,000. This amount includes a Commercial General Liability (Occurrence) Insurance Policy issued by Old Republic Insurance Company, with a per occurrence limit of $1,000,000 but no aggregate limit, and twelve excess liability policies. *See* Plan, Schedule 2.

**B.  The Bankruptcy Cases**

4.      On February 18, 2020 (the "Petition Date"), Boy Scouts of America and Delaware BSA, LLC (the "Debtors") each filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.      On October 29, 2021, this Court entered an order granting the Administrator relief from the automatic stay permitting the Administrator to liquidate his claims against the Debtors in the State Court Action. (D.I. 1601).  The claims have not been liquidated to date.

6.      The Debtors filed their initial plan of reorganization on the Petition Date. The Debtors filed the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6229] and the *Disclosure Statement for Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA,*

*LLC* (the "Disclosure Statement") [Docket No. 6231] on September 29, 2021. On September 30, 2021, The Court entered its Order approving the Disclosure Statement [Docket No. 6438]. The Debtors filed the Plan on December 18, 2021.

### C. Plan Treatment of Non-Abuse Litigation Claims

7.      The Plan classifies claims against the Debtors in ten classes. The Administrator's claim will be classified as a Class 7 Non-Abuse Litigation Claim. The Plan provides for the treatment of Class 7 Non-Abuse Litigation Claims as follows:

**Article III.B.9—Class 7 Non-Abuse Litigation Claims**

Treatment: Except to the extent that a holder of an Allowed Non-Abuse Litigation Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Non-Abuse Litigation Claim, each holder thereof shall, ***subject to*** (i) the holder's ability to elect Convenience Claim treatment as provided in the following sentence and (ii) ***the terms and conditions of Article IV.D.3*** (as applicable), retain the right to recover up to the amount of such holder's Allowed Non-Abuse Litigation Claim from (x) available insurance coverage or the proceeds of any Insurance Policy, including any Abuse Insurance Policy or Non-Abuse Insurance Policy, (y) applicable proceeds of any Insurance Settlement Agreements, and (z) co-liable non-debtors (if any) or their insurance coverage. Solely to the extent that the holder of an Allowed Non-Abuse Litigation Claim fails to recover in full from the foregoing sources on account of such Allowed Claim after exhausting its remedies in respect thereof, such holder may elect to have the unsatisfied portion of its Allowed Claim treated as an Allowed Convenience Claim and receive cash in an amount equal to the lesser of (a) the amount of the unsatisfied portion of the Allowed Non-Abuse Litigation Claim and (b) $50,000.

Plan, Article III.B.9 (emphasis added).

8.      Article IV.D.3.a of the Plan provides that

**Article IV.D.3—Specified Insurance Policies and Non-Abuse Litigation Claims.**

a. ***The Settlement Trust shall have consent over any post-Effective Date settlement of any Non-Abuse Litigation Claim (such consent not to be unreasonably withheld) that is entitled to a recovery from the proceeds of Specified Insurance Policies. A condition of payment of a Non-Abuse Litigation Claim by the Settlement Trust from a Specified Insurance Policy shall be a release by the holder of such Non-Abuse Litigation Claim of the Debtors, the Local Councils, and any other insureds under applicable Specified Insurance Policies.*** Before the Settlement Trust settles any Specified Insurance Policy(ies) under which the holder of a Non-Abuse Litigation Claim is seeking to recover, the

holder of a Non-Abuse Litigation Claim may recover up to the full amount of such Claim in the first instance from any such available unsettled Specified Primary Insurance Policy(ies) or unsettled Specified Excess Insurance Policy(ies). *If and when the Settlement Trust settles one or more Specified Insurance Policies under which the holder of a Non-Abuse Litigation Claim is seeking to recover: (a) the holder of such Non-Abuse Litigation Claim shall remain entitled to recover up to $1,000,000 of such Claim under any such Specified Primary Insurance Policy(ies); and (b) any amounts exceeding $1,000,000 shall be recoverable in the first instance from any such available unsettled Specified Excess Insurance Policies. Subject to a review of the details concerning a Non-Abuse Litigation Claim by the Settlement Trustee, to the extent that the holder of a Non-Abuse Litigation Claim cannot, as a result of the Settlement Trust's release of such Specified Insurance Policy(ies), recover the full amount of any judgment or settlement of such Claim consented to by the Settlement Trust (such consent not to be unreasonably withheld) from any Specified Insurance Policy(ies) under which the holder of a Non-Abuse Litigation Claim is seeking to recover, then any unpaid amounts (up to applicable policy limits) shall be submitted to the Settlement Trust, which shall pay such amounts out of the proceeds of the Specified Insurance Policies.*

Plan, Article IV.D.3.a (emphasis added). "'Specified Insurance Policy' means any BSA Insurance Policy with an inception date of March 1, 2013 to the present, except for the excess liability policy issued to the BSA by Navigators Specialty Insurance Company for the period from March 1, 2013 to February 28, 2014." Plan Article I.A.243.

**D. The Settlement Trust**

9.      The Settlement Trust is a trust organized under the laws of the state of Delaware and established under Article IV [of the Plan] and the Settlement Trust Agreement.[2] Plan Article I.A.233. "The purposes of the Trust are to (i) assume all liability for the Channeled Claims, (ii) administer the Channeled Claims and (iii) make distributions to holders of compensable Abuse Claims, in each case in accordance with the Trust Distributions Procedures for Abuse Claims (the "**TDP**"). In connection therewith, the Trust shall hold, manage, protect and monetize the Trust Assets (as defined in Section 1.3 below) in accordance with the terms of the Trust Documents for the benefit of the Beneficiaries (as defined in Section 1.6(a) below). Settlement Trust Agreement

---

[2] A copy of the Settlement Trust Agreement is attached as Exhibit B to the Fifth Amended Plan.

Section 1.2. The Beneficiaries of the Settlement Trust are holders of Abuse Claims. Settlement Trust Agreement Section 1.6(a). Neither the Settlement Trust Agreement nor the TDP mentions holders of Non-Abuse Litigation Claims.

### Objection

10.     The Administrator objects to confirmation of the Plan for four reasons. First, Article IV.D.3.a of the Plan impairs the Administrator's right to recover from proceeds of applicable insurance policies in violation of Bankruptcy Code Section 524(e).

11.     Second, Article IV.D.3.a of the Plan grants the Settlement Trust, a fiduciary for holders of Abuse Claims but not for holders of Non-Abuse Litigation Claims, consent rights over (i) the settlement of any Non-Abuse Litigation Claim that is entitled to recovery from the Proceeds of Specified Insurance Policies and (ii) the payment of any unsatisfied amounts of Non-Abuse Litigation Claims from the proceeds of Specified Insurance Policies.

12.     Third, the Debtors cannot establish that the Plan is in the best interest of creditors holding Class 7 Non-Abuse Litigation Claims because the Plan limits the ability of holders of such claims to satisfy a judgment from applicable insurance proceeds that would be available in a Chapter 7 liquidation.

13.     And fourth, the Plan prohibits the payment of a Class 7 Non-Abuse Litigation Claim from the proceeds of Specified Insurance Policies unless the holder of such Non-Abuse Litigation Claim releases its claim against the Local Councils.

**A. The Plan Impairs the Administrator's to Pursue Recovery from Proceeds of Specified Insurance Policies in Violation of His Rights Under Bankruptcy Code Section 524(e)**

14.    The Plan, with one exception, designates BSA Insurance Policies with an inception date of March 1, 2013 to the present as Specified Insurance Policies. *See* Plan Article I.A.243. The Specified Insurance Policies will become assets of the Settlement Trust for the benefit of holders of Class 8 Abuse Claims. Presumably, the Debtors did this to shift the proceeds of more recent policies in order to provide funds to distribute to Abuse Claimants with claims covered by decades-old insurance policies, with coverage limits likely to be exhausted or nearly exhausted.

15.    Article IV.D.3.a of the Plan significantly limits the ability of holders of Class 7 Non-Abuse Litigation Claims. Specifically, Article IV.D.3.a prohibits a Non-Abuse Litigation Claimant from recovering proceeds of any settled Specified Insurance Policy above the $1 million per occurrence available under the primary insurance coverage. The Administrator does not know which of the twelve excess liability polices providing coverage for applicable policy period are or may become settled Specified Insurance Policies. This is problematic given that proceeds of any unsettled Specified Insurance Policy will not be available until the coverage under all the prior excess liability policies has been exhausted. *See* Plan Article IV.D.3.a. Any Non-Abuse Litigation Claimant that exhausts its remedies may either (i) have the remainder of the claim treatment as an Allowed Convenience Class Claim and receive a payment of up to $50,000 on account of the unsatisfied amount of the allowed claim (Article III.B.9) or (ii) submit the claim to the Settlement Trust and, with the Settlement Trust's consent, receive payment from the proceeds of the applicable Specified Insurance Policies Article IV.D.3.a.

16.    The proposed treatment of Class 7 Non-Abuse Litigation Claims impairs the Administrator's rights under Bankruptcy Code Section 524(e). While the Bankruptcy Code Section 524(a) discharge injunction generally enjoins creditors from pursuing their claims against a debtor, it does not alter the right of a creditor to recover from a non-debtor. *First Fidelity Bank*

*v. McAteer,* 985 F.2d 114, 118 (3d Cir. 1993); Rather, Section 524(e) of the Bankruptcy Code limits the effect of the discharge solely to the debtor. *See id.* Specifically, Section 524(e) provides as follows:

> Except as provided in subsection (a)(3) of this section,[3] discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

11 U.S.C. §524(e).

17.    The Third Circuit has interpreted this to mean that section 524(e) "assures creditors that the discharge of a debtor will not preclude them from collecting the full amount of a debt from co-debtors or other liable parties." *First Fidelity Bank,* 985 F.2d at 118. "Furthermore, the protection from liability afforded the debtor under the Code does not affect the liability of the debtor's insurers. Courts, relying on 11 U.S.C. § 524(e), have allowed claimants to proceed with tort claims against the debtor for the purpose of collecting from the debtor's liability insurer." *Id.* (citations omitted). "Thus, the creditor remains free to collect the full amount of the original obligation from any non-debtor party such as a guarantor or insurer."[4] A bankruptcy court may not order the confirmation of a Plan of Reorganization that purports to be in full settlement of all claims a creditor may have against a guarantor who is not a party to the Chapter 11 proceeding. *Id.* "'While the Bankruptcy Code expressly alters the contractual obligations of the bankrupt, it does not contemplate the same effect on the obligations and liabilities of third parties to a creditor.'" *Id.* (quoting *Mellon Bank v. M.K. Siegel,* 96 B.R. 505 (E.D. Pa. 1989). Moreover, Bankruptcy Code Section 1129(a) provides that a court may only confirm a plan if the plan complies with applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1).

---

[3] Subsection (a)(3) of section 542 addresses community claims and, accordingly, is not applicable here.

[4] S*ee also In re Continental Airlines*, 203 F.3d. 203, 211 (3d Cir. 2000) ("Section 524(e) of the Bankruptcy Code makes clear that the bankruptcy discharge of a debtor, by itself, does not operate to relieve non-debtors of their liabilities."); *In re Weiand Automotive Industries*, 612 B.R. 824, 859 (Bankr. D. Del. 2020) ("[T]he Plan discharge does not affect the liability of non-debtor third parties, including a debtor's insurer.")

18.    The Plan impairs the Administrator's rights under Section 524(e) of the Bankruptcy Code because it significantly limits the Administrator's ability to recover from the proceeds of settled Specified Insurance Policies that provide coverage for the Administrator's claims. In addition to standing in line to recover proceeds from these settled Specified Insurance Policies with holders of Abuse Claims not covered by these policies, the Administrator's ability to recover proceeds under these polices is also subject to the Settlement Trust's consent. As a result, the Plan deprives Non-Abuse Litigation Claimants of the assurance provided by Section 524(e) that the discharge of the Debtors will not preclude them from collecting the full amount of their claims against the Debtors' insurers. *See First Fidelity Bank,* 985 F.2d at 118.

19.    Moreover, the Plan does not satisfy Bankruptcy Code Section 1129(a)(1) because it nullifies Section 524(e) of the Bankruptcy Code. Accordingly, the Court should not confirm the Plan.

**B.    The Plan Improperly Requires the Consent of the Settlement Trust Before Holders of Non-Abuse Claims May Recover from the Proceeds of Specified Insurance Policies**

20.    The Settlement Trust is a fiduciary for the trust's beneficiaries—holders of Abuse Claims. As such, the Settlement Trust is obligated to maximize distributions to holders of allowed Abuse Claims. However, despite the Settlement Trust's conflict with holders of Non-Abuse Litigation Claims, who may be competing with Abuse Claimants for available insurance proceeds, the Plan requires the consent of the Settlement Trust to (i) the settlement of any Non-Abuse Litigation Claim that is entitled to a recovery from the proceeds of Specified Insurance Policies and (ii) the payment of any unsatisfied amounts of Non-Abuse Litigation Claims from the proceeds of Specified Insurance Policies.

21.    To be clear, Article IV.D.3.a requires that the Settlement Trust's consent "not be unreasonably withheld" and Article IV.D.3.b requires the Settlement Trustee to treat Abuse Claimants and Non-Abuse Claimants fairly and equally. But these requirements do not cleanse the

obvious conflict created by the Settlement Trust's fiduciary duties to Abuse Claimants.

Accordingly, the Court should not confirm a plan that requires the Settlement Trust's consent with

respect to the Non-Abuse Litigation Claimants' settlements or distributions from insurance

proceeds.

### C. The Debtors Cannot Establish that the Plan Satisfies the Best Interest of Creditors Test.

22.     Section 1129(a)(7)(A) of the Bankruptcy Code provides that

With respect to each impaired class of claims or interests—

(A) each holder of a claim or interest of such class—

(i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date ….

11 U.S.C. § 1129(a)(7)(A). The burden of establishing compliance with section 1129(a)(7) is on

the proponent of the plan. *In re Global Ocean Carriers, LTD* 251 B.R. 31, 46 (Bankr. D. Del.

2020).

23.     The Debtors cannot establish that the Administrator will receive or retain under the

Plan on account of his claims property of a value that is not less than he would receive or retain if

the Debtors were liquidated under Chapter 7. In a Chapter 7 liquidation, the Administrator would

retain all his rights under Bankruptcy Code Section 524(e) to recover from all $211 million of

proceeds available under the applicable insurance policies. But, as discussed above, the Plan

impairs the Administrator's Section 524(e) rights to recover proceeds from any applicable

Specified Insurance Policies by, among other things, providing that the proceeds of applicable

Specified Insurance Policies be made available to pay Abuse Claims not otherwise covered by

such policies, (ii) restraining the Administrator's ability to seek recovery of such proceeds in the

State Court Action, (iii) requiring the Settlement Trust's consent to settle the State Court Action,

and (iv) requiring the Settlement Trust's consent to receive proceeds from the Specified Insurance Policies. Accordingly, the Court should deny confirmation of the Plan because it does not satisfy the best interest of creditors test.

**D. The Administrator Should not be Required to Release His Claims Against Local Councils in Order to Receive Payment.**

24.     The complaint in the State Court Action names certain Local Councils. Article IV.D.3.a would require the Administrator to release his claims against the Local Councils as a condition to payment from the proceeds of applicable Specified Insurance Policies. There is no basis for requiring such a release unless and until the Administrator receives payment in full of any judgment against or settlement with all defendants in the State Court Action. The Court should deny confirmation of any plan containing this release requirement.

<u>**Conclusion**</u>

WHEREFORE, for the foregoing reasons, the Administrator respectfully requests that this Honorable Court deny confirmation of the Plan and grant to the Administrator such other and further relief as is just and proper.

Dated: February 4, 2022          **SULLIVAN · HAZELTINE · ALLINSON LLC**
      Wilmington, Delaware

    */s/ William A. Hazeltine*
    William D. Sullivan (No. 2820)
    William A. Hazeltine (No. 3294)
    919 North Market Street, Suite 420
    Wilmington, DE 19801
    Tel: 302.428.8191
    Fax: 302.428.8195
    Email: bsullivan@sha-llc.com
          whazeltein@sha-llc.com

    *Attorneys for Eric Pai, Administrator of the Estate of Jarred Pai, a minor*