IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Boy Scouts of America and Delaware BSA, LLC<br><br>    Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br>Jointly Administered |

**LIMITED OBJECTION OF CLAIMANT "I.G." TO PLAN OF REORGANIZATION**

COMES NOW I.G. ("I.G." or "Claimant") a plaintiff in a matter pending before the United States District Court for the Western District of Missouri, Southern Division styled *I.G. v. Ozark Trails Counsel, Inc. and Scott Wortman*, Case No. 6:20-cv-03059-SRB and hereby submits this limited objection (the "Objection") to the Debtors' Plan of Reorganization (the "Plan"). In furtherance of the Objection, I.G. respectfully states as follows:

**OBJECTION**

1. The Plan bars claimants from pursuing their claims against the approximately 251 non-debtor Local Councils organized as independent legal entities under separate management and control in exchange for an aggregate contribution of $600 million, pools those funds with the other Trust assets, and then allocates those funds among abuse claimants in accordance with the TDP without regard to what recourse particular individual claimants have against which Local Councils.

2. Claimants' state law rights against Local Councils and Chartered Organizations vary enormously. Many claimants—a clear majority of those proposed to be solicited—have no enforceable claim at all against these entities. These include claimants who have only a claim against the Debtors themselves and the Debtors' insurance, and claims that are time-barred under applicable non-bankruptcy law. Other claimants have rights only against the estate and a particular Local Council or Chartered Organization. Their Local Council or Chartered Organization may

1

have limited resources or responsibility under applicable law. But some claimants, including I.G, may have strong claims against financially strong or well-insured Local Councils or Chartered Organizations that have the ability to satisfy their claims in full or at least in a greater measure than they may receive under the TDP.

3. For claimants with no, or only weak claims, against third parties, or with claims against financially weak or underinsured third parties, the Plan is a boon, providing them the opportunity for some recovery where the tort system might leave them with none.

4. For claimants of the second kind, the Plan destroys their right to pursue solvent, well insured entities and compels them to share the contribution from the released entity with claimants who had no such right. The Plan ignores the range of nonbankruptcy outcomes against the nondebtors, and effects a substantive consolidation of the Debtor and the Local Councils, sharing the assets they are contributing pro rata among all claimants, without regard to the entity against which the claimant actually has claims.

5. Because the claimants hold fundamentally different economic rights against the various non-debtors, the pooling and third-party release features of the Plan violate § 1123(a)(4): creditors with superior claims against more solvent non-debtors are being compelled to relinquish those valuable claims, but are receiving the same treatment as those without such claims. *In re AOV Indus., Inc.,* 792 F.2d 1140 (D.C. Cir. 1986) is a leading case in point. There, a plan placed all unsecured creditors in a single class sharing pro rata in a fund comprised of $800,000 contributed by the debtor, and $3,000,000 to be contributed by the creditors who were sponsoring the plan. 792 F.2d at 1150. The debtor's contribution would fund an approximate 4% dividend for creditors; the creditor contribution an additional 13%. *Id*. Critically, the plan also provided that creditors could receive the 13% creditor enhancement only by executing a release in favor of the

sponsoring creditors. *Id*. For the most part, creditors had only claims derivative of the debtors' claims against the sponsoring creditors, but one creditor – Hawley Fuel Coal—objected to the plan on the basis that, alone among creditors, Hawley asserted a direct guarantee claim against one of the sponsoring creditors, a claim that was substantially more valuable than the derivative claims held by the other unsecured creditors. Id. The D.C. Circuit agreed. *Id.* at 1151-52. Noting that the "most conspicuous inequality that § 1123(a)(4) prohibits is payment of different percentage settlements to co-class members," the Court observed that the "other side of the coin of unequal payment, however, has to be unequal consideration tendered for equal payment." *Id*. at 1152. The Court explained "it is disparate treatment when members of a common class are required to tender more valuable consideration – be it their claims against specific property of the debtor or some other cognizable chose in action—in exchange for the same percentage of recovery". *Id*.

6.	In recognizing these principles, the Third Circuit has observed that § 1123(a)(4) "does not require precise equality, only approximate equality." In re W.R. Grace & Co., 729 F.3d 311, 327 (3d Cir. 2013) (quoting *In re Quigley Co., Inc*., 377 B.R. 110, 116 (Bankr. S.D.N.Y. 2007)). "Certain procedural differences, such as a delay in receipt of distributions for some claims, do not alone constitute unequal treatment." *In re W.R. Grace & Co*., 729 F.3d at 327. But, here the differences are not minor or procedural, nor is it unworkable to establish how claimants are differentially affected; instead, the differences are substantive and may profoundly alter creditor rights, conferring windfalls on some creditors and starkly prejudicing those with the strongest and most collectible claims under nonbankruptcy law.

7.	It may well be that claimants with rights against non-debtor Local Councils will agree to vote to release the Local Councils and share some or all of the amounts they contribute with other claimants who do not have such rights as part of a general pooling of assets and

liabilities. Perhaps their vote to do so as a class could bind all class members under some circumstances. But to force pooling of the proceeds of non-debtor settlements based on lumping together a small number of claimants with rights against the wealthier, better-insured settling Local Councils with vastly larger numbers of other claimants without such rights, and giving each claimant one vote on the matter, violates not only the classification and voting provisions in chapter 11, but also the equal treatment mandate of section 1123(a)(4).

WHEREFORE , it is respectfully requested that the Debtor' Plan of Reorganization be modified to insure that proper disclosure is made of the assets and liabilities of Local Councils such that direct abuse claimants can meaningfully assess whether the Plan meets the best interests of creditors test.

Date:   February 4, 2022

                                            Respectfully submitted,

                                            Gellert Scali Busenkell & Brown LLC

                                            <u>/s/ Ronald S. Gellert</u>
                                            Ronald S. Gellert (DE Bar # 4259)
                                            1201 North Orange Street, 3rd Floor
                                            Wilmington, DE 19801
                                            (302) 425-5806
                                            rgellert@gsbblaw.com

                                            Counsel for I. G.