operating without those UMC units. The BSA needs the UMC to continue sponsoring units, and since this reorganization has less than nothing to do with compensating those who've been sexually abused while in scouting, the BSA wants to give a pass to the UMC in order to guarantee that relationship continues.

Chartered sponsoring organizations which face only one [or a few] sexual abuse claims, such as those in ▬▬▬▬ case, have no reason to contribute, or if they choose to do so, there is no reason for them to make substantial contributions. Taking the facts of ▬▬▬▬ case and using the current TDPs, the total damages are roughly $2,700,000. Assuming that the local council bears 90% liability, the two chartered sponsoring organizations share 10% liability, or approximately $135,000 each. This is undoubtedly more than either has available, which means yet another insurance claim dispute. It is unreasonable to believe that the settlement trust would have any success obtaining these funds without litigation on ▬▬▬▬ behalf, the reality is that ▬▬▬▬ would have to continue his state tort action solely against these two organizations, and without the local council as a defendant, such a case becomes far more difficult to prosecute. There is simply no reason for either of these organizations to voluntarily contribute anything beyond a nominal amount, which would not be earmarked for ▬▬▬▬ in any case, thus ▬▬▬▬ claim would be reduced

in value, and the two organizations which facilitated the abuse will receive a pass.

Beyond the reality of ▓▓▓▓▓▓▓ case, one would reasonably wonder why any chartered sponsoring organization in a jurisdiction which is not one of the 12 open jurisdictions would want to be in any way involved with this Plan, except as related to the small number of claims which could conceivably be brought in the tort system. Why would such an organization which faced no potentially valid claims want to be involved? There are simply too many chartered sponsoring organizations with too many different situations for the Plan to properly apportion liability [which it clearly does not seek to do as seen with the disparate treatment of the UMC and TCJC].

## **The Plan Is Not Made In Good Faith**

The reality remains that the local councils are wholely owned and operated subsidiarities of the BSA, and as such they should be joined to the Chapter 11 action, because any other result permits the BSA to shield assets from use for adequately compensating the sexual abuse victims, but this deficiency could be cured by an honest plan of reorganization. An honest reorganization plan would consolidate the local councils to a third the current number, reduce property assets to meet the actual needs of a much smaller BSA membership, reduce the

overall number of employees, and the compensation for those employees, both within the local councils and nationally to a ratio of employees to scouts approximately equal to that in place at the time of greatest membership 60 years ago. Most corporations seeking reorganization seek to emerge from bankruptcy with a leaner and meaner structure that is more tightly focused on the corporation's core business. The BSA's by-laws provide the authority to do all of the above. The Plan put forward by the BSA seeks to maintain the same flawed organizational structure without doing any of the above. This organizational and operational structure has proven to be inadequate for 112 years.

The BSA paints a completely unrealistic picture of its path moving forward. It is delusional to believe that the constantly declining membership will suddenly begin increasing simply because the BSA emerges from bankruptcy. The BSA touts the percentage increase in female membership as if a percentage increase from a tiny number to a less tiny number is significant. The BSA seeks to blame its membership woes on the pandemic, while remaining oblivious to the fact that pre-pandemic it was already serving fewer than a third the number of kids as it did 60 years ago. Disturbingly, the BSA has no clue how it can change the factors that have resulted in the largest child sexual abuse scandal in history. It swears it has changed, but nearly 20% of all claims are from after the implementation of

the BSA's new, improved child protection protocols.

The BSA also provides no reasoning to support its unsupported claim that the inclusion of girls in scouting is going to somehow fix the problem. One should ask why any parent of a boy would want their son to be part of an organization with a 112 year track record of molesting boys, and why the parent of any girl would allow their daughter to become a part of an organization with such a long history of sexual abuse? Does anyone really believe that putting boys and girls together will make for less sexual misconduct? Not only the negative aspect of this equation, but the BSA seems to assume that the Girl Scouts of America - which has never had a similar problem - is somehow not competition that needs to be taken into account.

There is simply no basis for believing that the BSA has any plan for moving forward beyond getting rid of the nuisance of these 82,209 sex abuse claims as expeditiously as possible before going back to business as before. Without a radical restructuring and downsizing of the organization, there is next to no possibility that the BSA won't continue facing sexual abuse claims, nor is there any likelihood that it will ever redirect its focus to the welfare of the youth it claims to serve as long as it continues to maintain its attentions on acquiring and maintaining assets. Again, the Patriots' Path Council, BSA now serves fewer than

30% of the number of kids than the old Morris-Sussex Area Council, BSA served by itself 60 years ago, and it has more than 500% of the facilities it had back then. [This council is two and a half times larger than the old Morris-Sussex Area Council, BSA.] The salaries of the professional scouts employed by the council have been inflated beyond all reason to where entry level employees are compensated at a rate above the local median wage.

Not only is nothing about the Plan submitted by the BSA and Coalition made in good faith, the probability is high that the BSA is doomed as an organization because of the failure to radically downsize and restructure to meet the reality of today's world. 2022 is not 1962. Scouting requires a significant commitment in time and effort by its members. A scout spends hours a week outside of unit meetings in order to learn skills and advance in rank. Regular activities such as hikes and camping trips are required. In 1962, boys were not faced with unlimited athletic opportunities, cellphones, social media, specialized interest activities and camps. There was scouting, and very little else to occupy a boy's time. Television and various sources of entertainment were limited. Even athletics were restricted to a few hours a week. Scouting is no longer the only game in town. The BSA doesn't seem to comprehend this fact. Youth in 2022 do not have the free time to commit to scouting like they did in 1962. That is simply

reality, and nothing the BSA says or does is likely to change the reality. A realistic plan would take this reality into consideration and include it as part of the focus going forward. Retaining excess assets is the precise opposite of what is necessary to respond to reality.

## The Proposed Trust Is Not Sufficiently Independent

One of the clearest indictions of the improper relationship between the BSA and the Coalition is the proposed appointment of Coalition lawyer Kenneth Rothweiler to the proposed trust oversight committee. ▮ submits that an attorney who represents any of the parties to this case has no business being on any committee associated with carrying out the Plan. Everyone knows that the trust is going to be a huge money-maker for those involved with operating it. That is the nature of trusts, but that doesn't mean that the Court can't require that the trust be absolutely independent, and require that it maximize payment of claims while keeping operating costs to a minimum.

## THE PLAN SHOULD NOT BE CONFIRMED

For the reasons set forth above, ▮ objects to confirmation of the Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [D.I. 7832].

I certify that I have served copy of the within and above ▮▮▮▮▮ ▮▮▮▮▮ Objections to Confirmation of Debtor's Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [D.I. 7832] upon the parties by emailing same as follows:

**COUNSEL FOR DEBTORS AND DEBTORS IN POSSESSION:**
WHITE & CASE, LLP
Jessica C. Lauria
jessica.lauria@whitecase.com
Michael Andolina
mandolina@whitecase.com
MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
Derek C. Abbott
dabbott@morrisnichols.com
Paige Topper
ptopper@morrisnichols.com

**UNITED STATES TRUSTEE**
David L. Buchbinder
david.l.buchbinder@usdoj.gov
Hanna Mufson McCollum
hannah.mccollum@usdoj.gov

**COUNSEL FOR TORT CLAIMS COMMITTEE**
PACHULSKI, STANG, ZIEHL & JONES, LLP
James Stang
jstang@pszjlaw.com
James O'Neill
joneill@pszjlaw.com

This 1st day of February 2022.



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>RE: D.I. 7832 |

## NOTICE OF FILING ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ OBJECTIONS TO CONFIRMATION OF DEBTOR'S SECOND MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC

**COMES NOW** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *pro se*, and GIVES NOTICE OF FILING ▮▮▮▮▮▮▮▮▮▮ *Objections to Confirmation of Debtor's Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 7832] (together with all schedules and

---

[1] The Debtors in the chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, TX 75038.

[2] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is Claimant #▮▮. He was originally claimant #▮▮ on the BSA's list.

exhibits thereto, and as modified, amended, or supplemented, the "Plan").

I certify that I have served copy of the within and above ▮▮▮ ▮▮▮ Objections to Confirmation of Debtor's Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [D.I. 7832] upon the parties by emailing same as follows:

**COUNSEL FOR DEBTORS AND DEBTORS IN POSSESSION:**
WHITE & CASE, LLP
Jessica C. Lauria
jessica.lauria@whitecase.com
Michael Andolina
mandolina@whitecase.com
MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
Derek C. Abbott
dabbott@morrisnichols.com
Paige Topper
ptopper@morrisnichols.com

**UNITED STATES TRUSTEE**
David L. Buchbinder
david.l.buchbinder@usdoj.gov
Hanna Mufson McCollum
hannah.mccollum@usdoj.gov

**COUNSEL FOR TORT CLAIMS COMMITTEE**
PACHULSKI, STANG, ZIEHL & JONES, LLP
James Stang
jstang@pszjlaw.com
James O'Neill
joneill@pszjlaw.com

This 31st day of January, 2022.

