# Exhibit 1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) (Jointly Administered) |
| Debtors. | <u>Re</u>: **D.I. 7832** |

**ALLIANZ INSURERS' OBJECTION TO THE SECOND MODIFIED FIFTH
AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF
AMERICA AND DELAWARE BSA, LLC AND REQUEST FOR RELIEF FROM THE
PLAN DISCHARGE AND INJUNCTION PROVISIONS**

Allianz Global Risks US Insurance Company ("<u>Allianz</u>"), National Surety Corporation

("<u>National Surety</u>"), and Interstate Fire & Casualty Company ("<u>Interstate</u>" and together with

Allianz and National Surety, the "<u>Allianz Insurers</u>") hereby file this objection to the Second

Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and

Delaware BSA, LLC [D.I. 7832] (the "<u>Plan</u>")[2] and request denial of confirmation of the Plan or,

if the Plan is confirmed over this Objection, relief from the discharge and injunction provisions of

the Plan and any Confirmation Order to pursue pending state court insurance coverage litigation

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Lane, Irving, Texas 75038.

[2] Capitalized terms used but not defined in this Objection are ascribed the definitions given to them in the Plan or the Trust Distribution Procedures (the "<u>TDPs</u>"), as applicable.

(the "Objection").  This Objection focuses on the Plan's (and TDPs') treatment of the Indirect

Abuse Claims.[3]  In support of this Objection, the Allianz Insurers respectfully state as follows:

## I.    PRELIMINARY STATEMENT

1.    As set forth in detail in the Global Insurer Confirmation Objection, the Debtors

seek to alter the Allianz Insurers' rights under their respective insurance policy contracts through

findings that are highly prejudicial and unnecessary for Plan confirmation, flawed TDPs, biased

Settlement Trust oversight, and ambiguous and conflicting Plan provisions.  The Debtors' Plan

violates well established precedent that "[w]hat ever 'limitation[s] on the debtor's property [apply]

outside of bankruptcy [ ] appl[y] inside of bankruptcy as well.  A debtor's property does not shrink

by happenstance of bankruptcy, but it does not expand, either."[4]  This includes a prohibition

against a bankruptcy plan modifying the "contractual rights of insurers."[5]

2.    The Plan's treatment of Indirect Abuse Claims is an example of the Debtors'

attempt to modify and impair the Allianz Insurers' rights.[6]  The Allianz Insurers have potential

claims for contribution, indemnity, reimbursement, and/or subrogation (known as Indirect Abuse

Claims under the Plan) against non-debtor parties, including the Settling Insurance Companies, as

well as reinsurance rights.  Typically, the Allianz Insurers' rights and claims would be preserved

---

[3] This Objection should be read in conjunction with the contemporaneously filed Objection to Confirmation of the Debtors' Chapter 11 Plan by Certain Insurers (the "Global Insurer Confirmation Objection").  The Allianz Insurers incorporate by reference, and assert as their own objections as if fully set forth herein, all of the objections stated in the Global Insurer Confirmation Objection.

[4] *Mission Prod. v. Tempnology, LLC,* 139 S.Ct. 1652, 1663 (2019) (citations and internal quotations omitted).

[5] *In re Combustion Eng'g, Inc.,* 391 F.3d 190, 209 (3d Cir. 2004).

[6] The Plan's impairment of the Allianz Insurers' rights, claims and defenses as discussed herein applies with equal force to the other Certain Insurers' rights, claims and defenses.  In that regard, as set forth in the Global Insurer Confirmation Objection, the Certain Insurers join this Objection with respect to Indirect Abuse Claims and reinsurance rights.

through appropriately drafted reservation of rights and judgment reduction provisions.[7]  The Debtor's Plan, however, strips the Allianz Insurers of these well-established rights.  The Debtors purport to achieve this result by having all Protected Parties' liability for Indirect Abuse Claims permanently channeled to the Settlement Trust.  Once channeled, the Allianz Insurers are left only with the right to assert Indirect Abuse Claims exclusively against the Settlement Trust and have such claims paid (if at all) in accordance with the TDPs, regardless of whether such claims could be asserted against the Debtors or a non-debtor Protected Party.

3.       The TDPs, in turn, impose a gauntlet of virtually impossible requirements before an Indirect Abuse Claim can be paid.  The TDPs require, among other things, the Allianz Insurers to first pay the <u>full</u> (artificially inflated) liability of the Settlement Trust to any Direct Abuse Claimant.  As excess insurers and subject to the terms of their insurance policy contracts, the Allianz Insurers would never be liable for the "full liability" of any Direct Abuse Claim.  This is an aspect of the Plan and TDPs that fundamentally increases their exposure relative to their posture in the Debtors' insurance coverage program.  Likewise, the Allianz Insurers (and the other Non-Settling Insurance Companies) whose policies are subject to a deductible or a self-insured retention ("<u>SIR</u>") would not be required to pay the full value of a Direct Abuse Claim absent the Plan's and TDPs' rewriting of the insurance policy contracts.

---

[7] Some examples include *In re Blitz U.S.A., Inc.*, Case No. 11-13603 (Bankr. D. Del.), Debtors' and Official Committee of Unsecured Creditors' First Amended Joint Plan of Liquidation at Article VI [D.I. 2007] (providing for a procedure for non-settling insurers whose contribution claims were enjoined to obtain the full economic benefit of the contribution claims) and *In re ASARCO LLC*, 420 B.R. 314, 376-78 (S.D. Tex. 2009) (providing a dollar-for-dollar judgment reduction and when the judgment reduction was not available, a right to recover contribution from the Section 524(g) trust on a dollar-for-dollar basis).

4.      The TDPs also improperly condition payment of an Indirect Abuse Claim on the filing of a claim by the Bar Date Order.  But that requirement should only apply (if at all) to claims asserted against the Debtors - not claims asserted against non-debtor parties.  And the TDPs require Indirect Abuse Claimants to establish "to the satisfaction of the Settlement Trustee" that their clams are not of a nature that would make them subject to disallowance under Section 502, a requirement that turns the Bankruptcy Code's "deemed allowed, pending objection" provision on its head.  Notably, the TDPs do not require Direct Abuse Claims to satisfy either of these requirements.

5.      The Plan is also riddled with ambiguous, conflicting provisions that purport to address the satisfaction of Indirect Abuse Claims.  Notwithstanding the treatment of Indirect Abuse Claims under the Plan and TDPs, Article X.G.5 of the Plan provides that contribution, subrogation, indemnity, and reimbursement claims of Non-Settling Insurance Companies in connection with the payment of a loss may be asserted as a defense or counterclaim against the Settlement Trust.[8] It is unclear how this provision is supposed to operate in light of the Indirect Abuse Claims being channeled to the Settlement Trust and paid (if at all) under the TDPs.[9]

6.      In addition to the conflicting treatment of Indirect Abuse Claims and the

---

[8]  Other Plan provisions conflict as to whether the Court is retaining jurisdiction to hear and determine coverage actions (which includes the State Court Actions) - a matter this Court has repeatedly stated that is does not intend to do.  *See* Hearing Transcript, November 10, 2021 at 70:11-13 ("I think everybody has heard my inclination to not preside over coverage actions where at all possible.") (Certain Insurers App. 59); *see also Green v. Mitsui Sumitomo Ins. Co (In re TK Holdings, Inc.)*, No. 17-11375, 2021 Bankr. LEXIS 3462 (Bankr. D. Del. Dec. 20, 2021) (holding that a post-confirmation insurance coverage dispute is not a core proceeding).  With respect to the Plan's retention of jurisdiction provisions, the Allianz Insurers incorporate by reference, and assert as if fully set forth herein, their objections stated in the Allianz Stay Relief Motion (as defined in fn. 10).  [D.I. 6623 & 6986] (Certain Insurers App. 19).

[9]  Expert Report of Professor Scott Harrington at pp.24-25 (Certain Insurers App. 33).

impairment of Allianz Insurers' rights, claims and defenses under their respective excess liability insurance contracts, the Plan impermissibly impairs the reinsurance rights of Non-Settling Insurance Companies against non-debtor parties, including the Settling Insurance Companies. The Allianz Insurers' reinsurance rights (and the other Non-Settling Insurance Companies' reinsurance rights) arise under contractual arrangements to which the Debtors are not parties. The Court, therefore, has no subject matter jurisdiction to alter those reinsurance rights.

7.      Put simply, the Plan cannot be confirmed without ensuring that all rights, claims and defenses of the Allianz Insurers - whether by contribution, indemnity, subrogation, reimbursement, setoff, recoupment, allocation, failure to exhaust, failure to pay SIRs, reinsurance, or otherwise - are expressly preserved, including any such rights and claims against the Protected Parties and the Settlement Trust.

8.      Finally, if the Court confirms the Plan (although it should not), the Allianz Insurers request relief from the discharge and injunction provisions contained in Articles X.D, X.E, X.F, and X.H of the Plan, and any similar provisions of any Confirmation Order, to continue prosecuting the State Court Actions,[10] which seek to determine what coverage, if any, is available under the Allianz Insurers' policies with respect to certain Direct Abuse Claims. The Plan bases, in part, recoveries to Direct Abuse Claimants on the Settlement Trust being successful against Non-Settling Insurance Companies in coverage actions. However, the availability of insurance coverage under the Allianz Insurers' policies, as well as policies issued by other Non-Settling Insurance Companies, and the amount of any such coverage, if any, is a hotly contested issue. The

---

[10] Defined in the *Allianz Insurers' Motion for Relief from the Automatic Stay* [D.I. 6623] (the "Allianz Stay Relief Motion") (Certain Insurers App. 19).

issue is one that must be decided by the state courts.  Indeed, this Court has on multiple occasions noted that it does not intend to make insurance coverage decisions.  And most recently, at the November 10, 2021 hearing on the Allianz Stay Relief Motion, the Court stated that if any parties requested relief from the discharge and injunction provisions in the Plan to continue coverage litigation, such requests may be addressed at confirmation.[11]

9.    For these reasons, and as more fully set forth below, the Allianz Insurers respectfully request the Court (a) enter an order sustaining this Objection and denying confirmation of the Plan, or (b) if the Court confirms the Plan, grant the Allianz Insurers relief from the discharge and injunctive provisions to continue prosecuting the State Court Actions to conclusion.

## II.    FACTUAL BACKGROUND AND RELEVANT PLAN PROVISIONS

### A.    The Allianz Policies and Pending State Court Coverage Litigation.

10.    The Allianz Insurers issued to BSA certain excess liability insurance policies.  A discussion of the Allianz Insurers' respective excess liability policies is set forth in the Allianz Stay Relief Motion and, for brevity, is incorporated but not restated herein.

11.    Prior to the Petition Date, BSA settled litigation alleging significant compensatory and punitive damages related to alleged abuse by a former scout leader, Thomas Hacker (referred to in the Allianz Stay Relief Motion as the "Hacker Litigation").  As a result of the Hacker Litigation and certain settlements reached therein, BSA made demand on Allianz and National Surety for coverage under the Allianz Policy and National Surety Policies.  Due to the nature of

---

[11]  Hearing Transcript November 10, 2021, 83:16-21 ("When and if a plan is confirmed, the automatic stay will no longer apply, and that's the same as it is in every case. And litigation can go forward, really depending on the discharge injunction and -- and if someone needs relief from that, I guess I'll deal with that at that point in time.") (Certain Insurers App. 59).

the allegations in the Hacker Litigation and under the terms of the Allianz Policy and National Surety Policies, Allianz and National Surety dispute that BSA is entitled to coverage under the Allianz Policy and National Surety Policies for the Hacker Litigation and/or any resulting settlements. The Hacker Litigation coverage dispute led to two duplicative lawsuits, both of which are pending.

12.     The first suit was filed by National Surety, *National Surety Corporation v. BSA,* et al. (Case No. 2017-CH-14975) (the "Illinois Coverage Action"), in the Circuit Court of Cook County, Illinois on November 9, 2017.[12]  Through the Illinois Coverage Action, National Surety seeks, among other things, a declaration that no coverage exists under its policies with respect to the Hacker Litigation or, assuming coverage otherwise exists, allocation of liability among all potentially responsible parties.

13.     Allianz's answer and counterclaim filed in the Illinois Coverage Action seeks, among other things, declaratory relief regarding its obligations to defend or indemnify BSA with respect to certain abuse claims or, alternatively, equitable contribution and subrogation against certain of BSA's other insurers, including Century and Hartford, in the event Allianz is found to owe indemnity to BSA or to the Chicago Area Council.[13]

14.     As with National Surety, Allianz does not seek damages against BSA or the Chicago Area Council in the Illinois Coverage Action.  The Illinois Coverage Action had advanced materially prior to the Petition Date, including seventeen of the insurer-defendants, having filed

---

[12]  Declaration of Todd C. Jacobs in Support of the Allianz Insurers' Motion for Relief form the Automatic Stay at Exhibit B [D.I. 6625] (Certain Insurers App. 20).

[13]  *Id.* at Exhibit A, Counterclaim Counts V & VI.  In addition to Allianz's counterclaims for equitable subrogation and contribution, the Allianz excess liability policy contains a contractual subrogation provision.

answers and affirmative defenses to National Surety's complaint, discovery requests having been served and responded to by BSA and multiple other parties, and the court denying two motions by BSA to dismiss the case.

15.     The second and later suit was filed by BSA in the District Court of Dallas County, Texas, contemporaneously with BSA's (later denied) second motion to dismiss the Illinois Coverage Action (the "Texas Coverage Action").    The Texas Coverage Action is entirely duplicative of BSA's counterclaims against National Surety in the first-filed Illinois Coverage Action, and also asserts claims against Allianz for breach of contract.    On October 1, 2018, National Surety filed a plea in abatement in the Texas Coverage Action and later sought to stay it, in each instance due to the first-filed (and more extensive) Illinois Coverage Action.    The request was denied by the Dallas County Court and, subsequently, National Surety filed a writ petition and emergency motion to stay the Texas Coverage Litigation in the Court of Appeals for the Texas Fifth Judicial District (the "Writ Proceeding").    The emergency stay motion was granted by the appellate court over BSA's objection, and the parties were awaiting a ruling on the pending writ on the Petition Date.

16.     Given the material advancement of the State Court Actions prior to the Petition Date, the need for such coverage disputes to be adjudicated in the appropriate forum, and related comments by this Court that it does not intend to decide insurance coverage issues, the Allianz Insurers filed the Allianz Stay Relief Motion, which was heard on November 10, 2021.    While the Court denied the requested relief without prejudice, it made clear that issues relating to the continuation of coverage litigation, including relief from the jurisdictional and discharge

injunction provisions of the Plan, may be addressed in connection with the confirmation proceedings.[14]

### B.    The Plan's and TDPs' Treatment of Indirect Abuse Claims.

### i.    Class 9 Plan Treatment of Indirect Abuse Claims

17.    The Plan proposes to channel each Indirect Abuse Claim to the Settlement Trust. Class 9 of the Plan provides in part:

> Pursuant to the Channeling Injunction set forth in Article X.F, each holder of an Indirect Abuse Claim shall have such holder's Indirect Abuse Claim against the Protected Parties (and each of them) permanently channeled to the Settlement Trust, and such Indirect Abuse Claim shall thereafter be asserted exclusively against the Settlement Trust and processed, liquidated, and paid in accordance with the terms, provisions, and procedures of the Settlement Trust Documents.  Holders of Indirect Abuse Claims shall be enjoined from prosecuting any outstanding, or filing any future litigation, Claims or Causes of Action arising out of or related to such Abuse Claims against any of the Protected Parties and may not proceed in any manner against the Protected Parties in any forum whatsoever …, and are required to pursue such Indirect Abuse Claims solely against the Settlement Trust as provided in the Settlement Trust Documents.[15]

18.    Under the Plan, Abuse Claim is broadly defined to include any liquidated or unliquidated Claim against a Protected Party "that is attributable to, arises from, is based upon, related to, or results from…alleged Scouting-related Abuse that occurred prior to the Petition

---

[14]  Hearing Transcript, November 10, 2021, 83: 10-21 ("I appreciate that the motion was brought and I understand why the motion was brought, but I'm going to deny it.  That's without prejudice to any argument that the insurance companies may have with respect to plan confirmation, the jurisdictional provisions, the discharge injunction, et cetera…when and if the plan is confirmed, the automatic stay will no longer apply, and that's the same as it is in every other case.  And litigation can go forward really depending on the discharge injunction and -- if someone needs relief from that, I guess I'll deal with it at that point and time.") (Certain Insurers App. 59).

[15]  Plan Article III.B.11; Plan Article X.F.1(d) (enjoining Persons from "asserting, implementing or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, direct or indirectly, against any obligation due to any Protected Party … or any property or interest in property of any Protected Party…."); Plan Article X.F.3(f) (providing that the channeling injunction shall not enjoin the Settlement Trust from prosecuting an action against Non-Settling Insurance Companies subject to any Insurance Coverage Defenses, which coverage defenses are defined to be impaired by the findings in Article IX.A.3 of the Plan as well as defined to exclude the defenses that the Plan or TDPs fail to comply with the Bankruptcy Code); Plan Article I.A.149 (defining Insurance Coverage Defenses).

Date…."[16]  An Indirect Abuse Claim, in turn, is defined as any liquidated or unliquidated Abuse

Claim for "contribution, indemnity, reimbursement, or subrogation, whether contractual or implied

by law…including any indemnification, reimbursement, hold-harmless or other payment

obligation provided for under any…insurance policy…."[17]  And the TDPs make clear that Indirect

Abuse Claims include "claims for the payment of defense costs, deductibles, or indemnification

obligations."[18]  The definition is so broad that it may capture reinsurance rights, which arise from

contracts between non-debtors.[19]

19.    Thus, under the Plan's Class 9 treatment, the Indirect Abuse Claims, including the

Allianz Insurers' rights and claims asserted in the State Court Actions, are channeled to the

Settlement Trust and paid in accordance with the TDPs.  The Allianz Insurers are enjoined from

pursuing any Claim or Cause of Action against Protected Parties, which includes the Settling

Insurance Companies.[20]  And the identity of all of the Settling Insurance Companies will remain

unknown for some time even after the Effective Date.[21]

---

[16]  Plan Article I.A.18.

[17]  Plan Article I.A.142.  Notably, an Indirect Abuse Claim does not include SIRs arising out of any Abuse Claims under the Abuse Insurance Policies.  Under the Plan, the SIRs are treated in accordance with Article IV.D.1, which provides that the "Settlement Trust shall satisfy, to the extent required under the relevant policies and applicable law, and in accordance with the [TDPs], any … [SIRs] arising out of any Abuse Claims under Abuse Insurance Policies." The TDPs' improper treatment of SIRs and deductibles is set forth in Section II(c)(ii) of the Global Insurer Confirmation Objection.

[18]  TDPs Article IV.B n.1.

[19]  Expert Report of Professor Scott Harrington at p. 25 ("[T]his language raises the possibility that the Plan would inappropriately interfere with contractual rights and obligations under such reinsurance.") (Certain Insurers App. 33).

[20]  Plan Article I.A.221 (defining Protected Parties to include Settling Insurance Companies).

[21]  A Non-Settling Insurance Company has up to twelve (12) months after the Effective Date to enter into an Insurance Settlement Agreement with the Settlement Trustee to become a Settling Insurance Company and a Protected Party. Plan Article IV.J.1-2.

20. The injunction even purports to extend to the Allianz Insurers' (and other Non-Settling Insurance Companies') rights to assert the defenses of setoff and/or recoupment against any claim that the Settlement Trustee may assert against them.[22] It may also enjoin contractual reinsurance rights and obligations between non-debtor Insurance Companies.[23]

### ii.    The TDPs' Treatment of Indirect Abuse Claims

21. Once channeled to the Settlement Trust, the TDPs set forth a number of criteria that Indirect Abuse Claimants must satisfy, including: (a) filing a proof of claim by the Bar Date, (b) not being subject to disallowance under Section 502, or subordination under Sections 509(c) or 510 of the Bankruptcy Code (in stark contrast to Class 8), (c) having first paid in full any obligation of the Settlement Trust to a Direct Abuse Claimant to whom the Settlement Trust would have otherwise had an obligation under the TDPs (thus purporting to bind Indirect Abuse Claimants to the TDP determinations of Direct Abuse Claims as well as purporting to void provisions in insurance contracts, including but not limited to, concerning SIRs and underlying limits of liability), and (d) having no obligation to indemnify the Debtors or the Settlement Trust for the liability so satisfied.[24]

22. Accordingly, the Allianz Insurers' Indirect Abuse Claims are permanently channeled to the Settlement Trust,[25] and effectively gutted under the TDPs unless, as discussed

---

[22] Plan Article X.F.1(d) & X.F.3(f) (allowing the Settlement Trust to pursue an action against Non-Settling Insurance Companies subject to any Insurance Coverage Defenses, which coverage defenses fail to specifically include the defenses of setoff and recoupment).

[23] Plan Article X.F.1(d); Plan Article X.H.2 & X.H.3(f) (enjoining all Persons from pursuing a claim against a Settling Insurance Company arising out of an Abuse Insurance Policy but permitting an Insurance Company to assert a claim for payment against any Non-Settling Insurance Company).

[24] TDPs Article IV.B.

[25] Plan Article X.F.

above, they first pay any corresponding Direct Abuse Claims for which the Settlement Trust is liable (regardless of whether they would be liable for the full amount of such claims under their insurance contracts), among other limitations.[26] And the Allianz Insurers are permanently enjoined from pursuing any of their rights and claims, or potentially asserting certain defenses, against the Protected Parties, including the Allianz Insurers' claims and causes of action against non-debtor parties asserted in the State Court Actions.[27]

### iii.    Contribution Rights for Non-Settling Insurance Companies

23.    The Plan also provides that a Non-Settling Insurance Company[28] may assert contribution, indemnity or subrogation rights against the Settlement Trust that it has against a Settling Insurance Company[29] relating to a Non-Settling Insurance Company's "payment of loss."[30] The contribution, indemnity and subrogation rights referenced in this Plan provision fit within the definition of Indirect Abuse Claims. However, the Plan and TDP provisions governing the treatment of Indirect Abuse Claims appear to conflict with this provision because they require, among other things, that an Indirect Abuse Claimant first pay the full liability of the Settlement Trust to any Direct Abuse Claimant before it may obtain a recovery from the Settlement Trust. Notably, the Plan and TDP provisions addressing Indirect Abuse Claims fail to provide any mechanism for this Plan provision to operate within the framework of the Plan's and TDPs' treatment of Class 9 claims. As it stands, it is unclear how this Plan provision is supposed to

---

[26]  TDPs Article IV.B.

[27]  Plan Article III.B.11.

[28]  Plan Article I.A.175.

[29]  Plan Article I.A.258.

[30]  Plan Article X.G.5.

operate, if at all, in connection with the treatment of Indirect Abuse Claims.[31]

### iv.    The Insurance Assignment

24.     Under the Plan, the Debtors' and certain non-debtors' insurance rights are transferred to the Settlement Trust.  Specifically, all "other rights, claims, benefits, or Causes of Action of the Debtors, Related Non-Debtor Entities, Local Councils, or Contributing Chartered Organizations under or with respect to an Abuse Insurance Policy (but not the policies themselves)" are assigned to the Settlement Trust.[32]  Notably, the Insurance Assignment does not provide that the transfer of rights to the Settlement Trust is subject to the rights, claims and defenses, including, without limitation, any contribution, indemnity, reimbursement, subrogation, setoff or recoupment rights of the Allianz Insurers.[33]  Instead, the Insurance Assignment purports to transfer only those portions of the insurance policies that may prove favorable to the estate (e.g., a right to seek coverage for an Abuse Claim) while jettisoning those contractual provisions and state law rights that provide protections for Non-Settling Insurance Companies (e.g., the right to exercise contribution, indemnity, reimbursement, subrogation, lack of exhaustion, setoff and/or recoupment rights).[34]

---

[31]  The Plan and TDP provisions also fail to provide a mechanism for the judgment reduction provision in Article X.N to operate within the framework of the Plan's and TDPs' treatment of Indirect Abuse Claims.

[32]  Plan Article I.A.146; Article IX.A.3(j).

[33]  The Debtors' assignment of insurance policy rights (to the extent it is even permissible) should be *in toto*.  *See, e.g., Fed. Ins. Co. v. SKMDV Holdings, Inc. (In re Green Jacobson P.C.)*, No. 15-41404-705, 2017 Bankr. LEXIS 2059, at *14 (Bankr. E.D. Mo. 2017) ("[n]either the Court nor the parties can rewrite the Policy."); *Jones v. GE Capital Mortg. Co. (In re Jones)*, 179 B.R. 450, 455 (Bankr. E.D. Pa. 1995) ("the owner of an insurance policy cannot obtain greater rights to the proceeds of that policy than he would have under state law by merely filing a bankruptcy petition.").

[34]  TDPs Article V.C ("Nothing in these TDP shall modify, amend, or supplement, or be interpreted as modifying, amending, or supplementing, the terms of any Insurance Policy or rights and obligations under an Insurance Policy assigned to the Settlement Trust to the extent such rights and obligations are otherwise available under applicable law and subject to the Plan and Confirmation Order.") (emphasis supplied).

25.     Abuse Insurance Policies is defined to include the BSA Insurance Policies and Local Council Insurance Policies.[35]  BSA Insurance Policies, in turn, is defined to include Insurance Policies currently or previously in effect at any time on or before the Effective Date naming the Debtors as an insured with respect to an Abuse Claim.[36]  And the Local Council Insurance Policies is defined similarly with one critical distinction.[37]  The BSA Insurance Policies definition excludes any policy providing reinsurance to any <u>Insurance Company</u>, but the Local Council Insurance Policies definition only excludes any policy providing reinsurance to any <u>Settling Insurance Company</u>.

26.     The Plan's Insurance Assignment, therefore, appears to purport to assign reinsurance rights between non-debtor parties, and to impair contractual and state law rights of the Allianz Insurers against non-debtor parties, despite the absence of any subject matter jurisdiction to do so.

### v.    The Insurance Settlements

27.     The Debtors' settlements with Hartford,[38] Century,[39] Zurich,[40] and Clarendon[41] preserve the Settling Insurance Companies' rights with respect to third parties, including the Non-

---

[35]  Plan Article I.A.20.

[36]  Plan Article I.A.43.

[37]  Plan Article I.A.165.

[38]  Hartford Term Sheet, Exhibit A to Sixth Mediators' Report [D.I. 6210] (Certain Insurers App. 15).

[39]  Century and Chubb Term Sheet, Exhibit A to Seventh Mediators' Report [D.I. 7745-1] (Certain Insurers App. 21).

[40]  Zurich Term Sheet, Exhibit A to Ninth Mediators' Report [D.I. 7928-1] (Certain Insurers App. 24).

[41]  Clarendon Term Sheet, Exhibit A to Tenth Mediators' Report [D.I. 8095-1] (Certain Insurers App. 26).

Settling Insurance Companies.[42]  These Insurance Settlements include (a) judgment reduction provisions requiring the Settlement Trust to voluntarily reduce its judgment or claim against another insurer in the event such an insurer obtains a judicial determination or arbitration award that it is entitled to a sum certain from a Settling Insurance Company,[43] and (b) reservation of rights for the Settling Insurance Companies to assert and recover claims against their reinsurers.[44]

28.     Unlike these rights provided to the Settling Insurance Companies, the Plan fails to preserve the Allianz Insurers' rights, claims, and defenses including, but not limited to, any contribution, indemnity, reimbursement, subrogation, and reinsurance rights.[45] As currently drafted, the Plan therefore treats these rights and defenses not as contractually and statutorily preserved rights and defenses, but as benefits bestowed only upon Settling Insurance Companies.

## III.    ARGUMENT AND CITATION TO AUTHORITY

### A.    The Plan Impermissibly Seeks to Modify the Insurance Policies and Reinsurance Agreements.

29.     The Plan fails to provide for the proper treatment of the Indirect Abuse Claims due to their discriminatory treatment under the TDPs and fails to recognize and preserve contractual reinsurance rights.  Under Third Circuit precedent, a chapter 11 plan must neither increase the

---

[42]  As noted above (*see* fn.21), the Plan allows the Settlement Trustee to enter into Insurance Settlement Agreements with Non-Settling Insurance Companies for up to twelve (12) months after the Effective Date.  Once a Non-Settling Insurance Company enters into such a settlement, "it shall be deemed to be a Settling Insurance Company and a Protected Party for all purposes …" and shall have the benefits of the Channeling Injunction even though it was not a Protected Party as of the Effective Date.  Plan Article IV.J.1-2.

[43]  Hartford Term Sheet at ¶(ix); Century and Chubb Term Sheet at ¶20; Zurich Term Sheet ¶10; Clarendon Term Sheet ¶10.

[44]  Century and Chubb Term Sheet at ¶8; Zurich Term Sheet ¶21(b); Clarendon Term Sheet ¶6.

[45]  The final versions of the Insurance Settlement Agreements have not been filed with the Court.

insurers' pre-petition obligations nor impair their pre-petition contractual rights.[46]  As such, a bankruptcy plan must protect the prepetition rights and obligations of both the debtor and the insurers by preserving for "any Entity . . . any and all claims, defenses, rights or causes of action under subject insurance policies and settlements."[47]

30.    The Debtors cannot bypass this recognized protection through the Insurance Assignment, which purports to sever from the insurance policies the Allianz Insurers' rights and defenses while transferring to the Settlement Trust certain alleged rights of the Debtors and non-debtor Protected Parties.  Regardless of whether the Debtors are seeking to assume and assign the insurance policies or instead seeking only to transfer rights thereunder, such assignment must be done *cum onere*.[48]  This is in keeping with the long-standing principle that debtors cannot use the chapter 11 process to rewrite prepetition contracts to the detriment of non-debtor counterparties.[49]

31.    The rule unquestionably applies to pre-petition insurance policies. "The filing of a bankruptcy petition does not alter the scope or terms of a debtor's insurance policy,"[50] or permit an insured to "obtain greater rights to the proceeds of [an insurance] policy."[51] "[T]he rights and obligations of the Debtor and [its insurer] under the [insurance] policy are not altered because of

---

[46]  *In re Global Indus. Techs.*, 645 F.3d 201, 212 n.27 (3d Cir. 2001), *cert. denied*, 565 U.S. 1014 (2011).

[47]  *In re Combustion Eng'g*, 391 F.3d at 218.

[48]  "[T]he cum onere principle applies equally to the transfer of rights and obligations under a non-executory contract pursuant to § 363 of the Bankruptcy Code as to the assumption and assignment of contracts and leases pursuant to § 365."  *In re Am. Home Mortg. Holdings, Inc.*, 402 B.R. 87, 98 (Bankr. D. Del. 2009).

[49]  *See, e.g. In re SPM Mfg. Corp.*, 984 F.2d 1305, 1311 (1st Cir. 1993) (bankruptcy courts lack authority to enter orders that "expand the contractual obligations of the parties"); *Matters of Crippin*, 877 F.2d 594, 598 (7th Cir. 1989); *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984); *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 769 F. Supp. 671, 707 (D. Del. 1991), *aff'd*, 988 F.2d 414 (3d Cir. 1993).

[50]  *In re MF Glob. Holdings Ltd.*, 469 B.R. 177, 194 (Bankr. S.D.N.Y. 2012).

[51]  *In re Denario*, 267 B.R. 496, 499 (Bankr. N.D.N.Y. 2001) (quotation omitted).

the Debtor's Chapter 11 filing."[52] Thus, "insurance contracts cannot be re-written" in bankruptcy.[53] And a bankruptcy court cannot confirm a plan that "excise[s]" provisions of an insurance policy "because doing so would rewrite the [insurance] [p]olicies and expand the Debtors' rights under them," and "the Court cannot modify those rights pursuant to the Bankruptcy Code."[54]

32.     Furthermore, a chapter 11 plan cannot extinguish a creditor's setoff and recoupment rights if the creditor objects to a plan provision seeking to impair those rights.[55]  "Both doctrines have subsequently been adopted in bankruptcy proceedings: setoff by statute, see 11 U.S.C. § 553, and recoupment by decision, *see In re Monongahela Rye Liquors*, 141 F.2d 864 (3d Cir. 1944)."[56] Setoff rights are to be treated as secured claims that cannot be extinguished by operation of the Plan.[57] Likewise, "defenses to enforcement, such as recoupment, cannot be extinguished in bankruptcy—whether through a sale or discharged under a plan—because they are neither 'claims' nor 'debts,' nor 'interests.'"[58]

33.     Under these guiding principles, the Plan's and TDPs' provisions purporting to alter the contractual terms of the Allianz Insurers' excess liability policies are prohibited as a matter of

---

[52]  *In re Amatex Corp.*, 107 B.R. 856, 865-66 (E.D. Pa. 1989), *aff'd*, 908 F.2d 961 (3d Cir. 1990).

[53]  *In re Lloyd E. Mitchell, Inc.*, No. 06-13250, 2012 Bankr. LEXIS 5531, at *20 (Bankr. D. Md. Nov. 29, 2012).

[54]  *MF Glob. Holdings*, 469 B.R. at 193.

[55]  United States v. Cont'l Airlines (In re Cont'l Airlines), 134 F.3d 536, 541-42 (3d Cir. 1998).

[56]  *Miller v. Zurich Am. Ins. Co. (In re WL Homes LLC)*, 563 B.R. 512, 516 (Bankr. D. Del. 2017) (holding that the affirmative defense of recoupment could apply to offset a return premium owing to the debtor against amounts that the debtor otherwise would owe under a self-insured retention because "[t]o allow [the debtor] to enjoy the benefits of the Return Premiums and relieve it of the burden of the SIR would be inequitable.").

[57]  *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984) ("Setoff, in effect, elevates an unsecured claim to secured status, to the extent that the debtor has a mutual, pre-petition claim against the creditor.")

[58]   *In re Ditech Holdings Corp.*, 606 B.R. 544, 596 (Bankr. S.D.N.Y. 2019) ("[D]efenses to enforcement, such as recoupment, cannot be extinguished in bankruptcy—whether through a sale or discharged under a plan—because they are neither 'claims' nor 'debts,' nor 'interests.'") (citation omitted).

law. Under the Plan, the Allianz Insurers' rights and claims against Protected Parties are channeled to the Settlement Trust, treated as Indirect Abuse Claims, and paid (if at all) according to criteria and procedures set forth in the TDPs. And the Allianz Insurers are permanently enjoined from pursing their rights and claims, not only against the Debtors, but also against non-debtor Protected Parties.[59] This injunction extends to their claims asserted against certain Settling Insurance Companies in the State Court Actions.

34. Moreover, the Plan's channeling injunction could be read to modify or otherwise impair Insurance Companies' contractual rights under reinsurance agreements, including without limitation, the Non-Settling Insurance Companies' reinsurance rights with respect to the Settling Insurance Companies. The Debtors, of course, are not parties to such reinsurance contracts, and this Court does not have subject matter jurisdiction to modify or otherwise impair the Non-Settling Insurance Companies' reinsurance rights.[60] Reinsurance contracts between Insurance Companies, all of which are non-debtors, do not fall within this Court's "arising in," "arising under," or "related to" jurisdiction.

35. Recognizing these principles and to prevent the elimination of their rights to pursue reinsurance rights, the Settling Insurance Companies provided in their Settlement Agreements that their right to pursue reinsurance is not impacted by the Settlement Agreements. Notably, this reservation of rights is silent as to any reinsurance obligations owed by any Settling Insurance

---

[59] The Debtors now claim that Class 8 Direct Abuse Claims will be paid in full. Recovery for Class 9 remains "unknown." As set forth more fully in the Global Insurer Confirmation Objection, neither Class 8 nor Class 9 voted "overwhelmingly" to accept the Plan. This is especially true for Class 9, which barely cleared the threshold for acceptance by a class under Section 1126.

[60] *Stern v. Marshall*, 564 U.S. 462, 473 (2011) ("Congress has divided bankruptcy proceedings in three categories: those that 'aris[e] under title 11'; those that 'aris[e] in' a Title 11 case; and those that are 'related to a case under title 11.'").

Companies to any Non-Settling Insurance Companies. Any impairment of reinsurance rights, whether asserted by or against any Settling Insurance Company, is impermissible and not within this Court's subject matter jurisdiction.[61]

36. While the elimination of the Allianz Insurers' claims directly against non-debtor parties would, standing alone, be impermissible,[62] the Plan goes further. To realize any value on their Indirect Abuse Claims, the Allianz Insurers must first pay in full any obligation of the Settlement Trust to a Direct Abuse Claimant to whom the Settlement Trust would have otherwise have an obligation under the TDPs. That condition is imposed on the Allianz Insurers regardless of the terms, conditions and exclusions in the Allianz Insurers' excess liability policies, including, but not limited to, contractual terms concerning underlying insurance and SIRs.

37. The Allianz Insurers' rights and claims against non-debtor parties are further diminished under the TDPs which require that they make a showing that: (a) the claims are not subject to disallowance under Section 502 or subordination under Sections 509(c) or 510 of the Bankruptcy Code, (b) the claims complied with the Bar Date Order,[63] and (c) the Allianz Insurers have no obligation to indemnify the Debtors or the Settlement Trust for the liability so satisfied.[64] The imposition of factors (a) and (b) with respect to Indirect Abuse Claims stands in stark contrast

---

[61] *Id.*

[62] The Bankruptcy Code does not permit the discharge of third-party rights. 11 U.S.C. § 524(e). In other contexts when contribution rights are being enjoined, the courts issuing the injunction usually in connection with a settlement must take steps to ensure that the non-settling parties will be able to rely on an effective judgment reduction provision as a substitute. *See, e.g., Eichenholtz v. Brennan*, 52 F.3d 478, 483-84 (3d Cir. 1995) (affirming the use of a proportionate judgment reduction method to ensure non-settling defendants are only responsible for their portion of the liability as a substitute for their contribution claims).

[63] Neither (a) the Allianz Insurers' (and the other Non-Settling Insurance Companies') claims against non-debtor Protected Parties, nor (b) the rights of Insurance Companies under reinsurance agreements are "claims" against the Debtors subject to the Bar Date Order.

[64] TDPs Article IV.B.1-3.

to the treatment for Direct Abuse Claims, which are not required to make such a showing.[65]

38.    Additionally, each of these factors (except compliance with the Bar Date Order) is subject to the satisfaction of the Settlement Trustee.  It is not clear from the TDPs what is required to "establish to the satisfaction of the Settlement Trustee" whether an Indirect Abuse Claim is subject to disallowance (given that claims are presumptively valid) or subject to subordination under Bankruptcy Code Sections 509(c) or 510 of the Bankruptcy Code.[66]  Notably, the TDPs do not appear to provide a mechanism for judicial review of the Settlement Trustee's decisions with respect to Indirect Abuse Claims,[67] as compared to the tort system alternative available to Direct Abuse Claimants.[68]

39.    The Settlement Trustee's discretion is particularly concerning because of his close connections with the FCR and Coalition counsel and his testimony that he does not have to be a

---

[65]  TDPs Article IV.A.  Direct Abuse Claims (unlike Indirect Abuse Claims) do not have to satisfy the requirements of the Bar Date Order.  *See* TDPs Article IV.A.2 ("… a Direct Abuse Claimant must . . . have timely submitted an Abuse Claim Proof of Claim or Trust Claim Submission to the Settlement Trust as provided below . . ."); TDPs Article IV.A.i-iii.

[66]  The Coalition argued, in connection with approval of the Restructuring Support Agreement, that "[j]oint tortfeasors' contingent claims for reimbursement or contribution must be disallowed under section 502(e)(1) of the Bankruptcy Code.  Such claims, when non-contingent and liquidated, must be subordinated under section 509(e) of the Bankruptcy Code until the tort victims who have claims against both tortfeasors are paid in full."  [D.I. 5760 at ¶ 75] (Certain Insurers App. 12).  Although the Non-Settling Insurance Companies are not "tortfeasors" and certainly not "joint tortfeasors" with the Debtors, the Coalition cites to Section 502(c)(1), 509(a), and 509(c) for the proposition that claims of "an entity that is liable with the debtor" must be disallowed or subordinated.  *Id.* at ¶ 74.  Prior versions of the Plan and TDPs provided that *all* Indirect Abuse Claims would be subordinated until the payment in full of *all* Direct Abuse Claims.  There is no basis in law for the Settlement Trust to subordinate an Indirect Abuse Claim that may be asserted by a Non-Settling Insurance Company, nor is there a basis to shift the burden onto the Non-Settling Insurance Companies to affirmatively prove "to the satisfaction of the Settlement Trustee" that such claim is *not* subject to disallowance or subordination.  *See* 11 U.S.C. § 502(a) (providing that a claim "is deemed allowed, unless a party in interest . . . objects.").

[67]  TDPs Article XI.A ("To be eligible to receive compensation from the Settlement Trust, the holder of an Indirect Abuse Claim must satisfy Article IV.B hereof.").

[68]  TDPs Article XII (setting forth the procedure for a Direct Abuse Claimant to seek a *de novo* determination of its Direct Abuse Claim by a court of competent jurisdiction).

neutral like a judge or arbitrator.[69]  And while the Settlement Trust Agreement provides that its

beneficiaries include Direct Abuse Claims and Indirect Abuse Claims,[70] the FCR believes that the

insurers are not beneficiaries of the Settlement Trust.[71]  Of course, Indirect Abuse Claimants are

not contemplated to be members of the Settlement Trust Advisory Committee ("STAC") or

otherwise have a governance role with the Settlement Trust.[72]

       40.      The Plan and TDPs thus completely re-write and impair the Allianz Insurers' rights

under their respective excess liability insurance contracts and disregard fundamental principles of

bankruptcy law.  The Allianz Insurers' intra-insurer claims directly against Settling Insurance

Companies [73] and other claims against other non-debtor Protected Parties are effectively

extinguished.  Moreover, to have any hope of obtaining a recovery, the Allianz Insurers effectively

are being required to "drop down" and/or provide coverage from "dollar one" by first having to

---

[69]  Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC, Exhibit H Connections with Proposed Settlement Trustee [D.I. 6445] (Certain Insurers App. 18); Green Dep. at 135:9-22 ("That's a good question.It's different from a judge, an arbitrator, or a mediator where you would truly be in the middle between adversarial parties.  So it's not neutral in that sense of the word.  So it's a little different than that use of the word, "neutral". So it's a long answer, Mr. Hallowell. I can't give it a yes or no.  It's clearly different, and the fiduciary duties run to the beneficiaries of the trust, and that's certainly different than when one is a mediator or arbitrator or judge.  You really don't have fiduciary duties to those parties.  So I think it's different, that's – in answer to your question.") (Certain Insurers App. 44).

[70]  Plan Exhibit B Settlement Trust Agreement, Recitals (B) & Article 1.6.

[71]  Patton Dep. at 102:16-25 & 103:1-2 ("That the beneficiaries of the trust are the ones -- and -- and/or the settlor but principally the beneficiaries of the trust are the ones whose voice matter; and the insurers who are the ones who objected before who represent an asset of the trust, not a beneficiary, should have little or no say. So I -- I didn't take the concerns they had raised in the context of Professor Green serving as a mediator as being relevant to the selection by the beneficiaries of the trust of Professor Green as the trustee.") (Certain Insurers App. 48).

[72] Plan Exhibit B Settlement Trust Agreement n.2 (STAC will consist of Coalition and TCC appointees); Article 5.13 & 5.14 (matters requiring consultation or consent of STAC & FCR); Article 7.1 ("There shall be one FCR for the Trust.").

[73] This may include Insurance Companies that are currently Non-Settling Insurance Companies.  Plan Article IV.J.1-2.

satisfy the full (and inflated) liability of the Settlement Trust to Direct Abuse Claimants.[74]  It is difficult to imagine a more fundamental alteration of an Insurance Company's contractual and equitable rights because, for example, excess insurers are never otherwise contractually responsible for the "full liability" of a Direct Abuse Claim.[75]

41.     As noted above, the Plan is also rife with ambiguous and/or conflicting provisions, such as (a) the applicability of the contribution rights of Non-Settling Insurance Companies under Article X.G.5 as opposed to the Plan's and TDPs' treatment of Indirect Abuse Claims, (b) the applicability of Non-Settling Insurance Companies' rights under the judgment reduction provision under Article X.N as opposed to the Plan's and TDPs' treatment of Indirect Abuse Claims, and (c) the ability of Non-Settling Insurance Companies to assert their reinsurance rights against all Insurance Companies, including the Settling Insurance Companies.

42.     For the Plan to be confirmable, reasonable minds cannot differ as to what the conflicting insurance provisions of the Plan mean and which control.[76]  In its current form, the

---

[74] To the extent that the Allianz Insurers have claims against Settling Insurance Companies receiving the benefit of an insurance policy buy back under Section 363(f) of the Bankruptcy Code, such claims, at a minimum, should attach to the proceeds of the sale.  11 U.S.C. §363(e); *Folger Adam Sec., Inc. v. Dematteis/MacGregor, JV*, 209 F.3d 252, 257 (3d Cir. 2000) ("[T]he holdings of the courts suggest that any interest in property that can be reduced to a money satisfaction constitutes a claim for purposes of section 363(f) and, therefore, attaches to the proceeds of the sale.") (internal citations omitted); *MacArthur Co. v. Johns-Manville*, 837 F.2d 89, 93 (2d Cir. 1988); *In re Penn Cent. Transp. Co.*, 383 F. Supp. 1128, 1130 (E.D. Pa. 1974) (power of a reorganization court to transfer interests in debtor's property to the proceeds of a sale is well established).

[75] Excess insurers are not required to "drop down" and pay for losses sustained by a policyholder in cases where the primary insurer is unable to pay or the policyholder is unwilling or unable to pay.  *See, e.g., Premcor USA, Inc. v. Am. Home Assur. Co.,* 2004 WL 1152847 (N.D. Ill. May 21, 2004), *aff'd*, 400 F.3d 523 (7th Cir. 2005) (insurer not responsible for gaps in underlying coverage); *In re Amatex Corp.*, 107 B.R. 856 (E.D. Pa. 1989), *aff'd*, 908 F.2d 961 (3d Cir. 1990) (excess insurer not liable to pay until the SIR was satisfied and was not required to pay the SIR amount).  Indeed, Non-Settling Insurance Companies whose policies are subject to an underlying limit of liability issued by another insurer, a deductible or a SIR would not be required to pay the full value of a Direct Abuse Claim absent rewriting material terms of their respective insurance policy contracts.

[76] *In re Pittsburg Corning Corp.*, 453 B.R. 570, 589 (Bankr. W.D.Pa. 2011).

Plan impairs the Allianz Insurers' rights, claims and defenses under their excess liability insurance policies and applicable law as well as leaving open for debate their rights under reinsurance agreements. The Plan cannot be confirmed as currently proposed.

**B.      Should the Court Confirm the Plan, Relief from the Discharge and Injunction Provisions is Warranted.**

43.      The Allianz Insurers also seek relief from the discharge and injunction provisions of the Plan to continue pursuing the pending State Court Actions. That pending litigation, which was substantially underway prior to the Petition Date, concerns what insurance coverage, if any, is available under the Allianz Insurers' policies with respect to certain Abuse Claims. It also includes subrogation claims asserted by the Allianz Insurers against two of the Settling Insurance Companies that are treated as Indirect Abuse Claims under the Plan and TDPs.

44.      Under Section 105(a) of the Bankruptcy Code, "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the title." Moreover, Section 1141, which is incorporated by reference under Section 524, generally provides that a confirmed plan discharges certain debts of a Chapter 11 debtor. Finally, Bankruptcy Rule 3020 provides a court with jurisdiction following confirmation of a plan to "issue any other order necessary to administer the estate."[77]

45.      These provisions, in combination, provide the requisite authority for the Court to modify injunctive and discharge-related provisions of a plan or confirmation order concurrently with or following confirmation of a plan.[78]

---

[77] Fed. R. Bankr. P. 3020(d).

[78] *See In re CareMatrix Corp.,* 306 B.R. 478, 485 (Bankr. D. Del. 2004); *In re Continental Airlines, Inc.,* 236 B.R. 318, 326-27 n.11 (Bankr. D. Del. 1999), *aff'd, In re Continental Airlines, Inc.,* 279 F.3d 226 (3d Cir. 2002).

46.     The Court's analysis regarding whether to lift the automatic stay or modify the discharge injunction is indistinguishable.[79] Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that "on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section . . . for cause."[80] The term "cause" is not defined in section 362(d)(1).  Courts determine "what constitutes cause based on the totality of the circumstances of each particular case."[81]

47.     Courts in Delaware employ a three-factor test to determine whether cause exists to allow a movant to proceed with litigation in another forum.[82]  The three factors are whether: (a) great prejudice will result from continuation of the litigation; (b) the hardship to the non-bankrupt party considerably outweighs the hardship to the debtor; and (c) the creditor has a probability of success on the merits if the stay is lifted.[83]

48.     Here, the three factors are easily met.[84]  First, the Debtors will suffer no prejudice if the State Court Actions continue following confirmation of the Plan because the Debtors will no

---

[79] *See, e.g., In re F-Squared Inv. Mgmt., LLC*, 546 B.R. 538, 547 n.55 (Bankr. D. Del. 2016) (holding that the court would analyze whether to modify the plan injunction using the same analysis it would use when deciding whether to lift the automatic stay); *In re Gibellino-Schultz*, 446 B.R. 733, 739 (Bankr. E.D. Pa. 2011) (treating motion for relief from stay as motion for modification of discharge injunction where § 362 stay expired while relief from stay motion was pending because debtor was granted discharge).

[80] 11 U.S.C. § 362(d)(1).

[81] *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997).

[82] *Matter of Rexene Prod. Co.*, 141 B.R. 574, 576-77 (Bankr. D. Del. 1992); *Am. Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 152 B.R. 420, 425 (D. Del. 1993); *In re Scarborough St. James Corp.*, 535 B.R. 60, 68 (Bankr. D. Del. 2015).

[83] *In re F-Squared Inv. Mgmt., LLC*, 546 B.R. 538, 548 (Bankr. D. Del. 2016); *see also In re The SCO Group, Inc.*, 395 B.R. 852, 857 (Bankr. D. Del. 2007).

[84] The Allianz Insurers incorporate by reference, and assert as if fully set forth herein, their arguments and evidence submitted in favor of lifting the automatic stay to continue the State Court Actions at the November 10, 2021 hearing. [D.I. 6623, 6625 & 6986] (Certain Insurers App. #19-20).

longer be occupied with the Plan confirmation process.  In addition, the Allianz Insurers are not

seeking any monetary award from the Debtors.

49.     Second, the hardship to the Allianz Insurers considerably outweighs any hardship

to the Debtors.  The Allianz Insurers are harmed by the State Court Actions continuing to be stayed

with the uncertainty of the Plan's potential impact on the Allianz Insurers' rights and claims (as

demonstrated above), which stay and uncertainty could potentially deprive the Allianz Insurers of

their choice of forum for such disputes.[85]  The parties will also benefit by having a better

understanding of the insurance coverage matters.  The sooner the coverage matters are resolved,

the sooner the parties will know whether, and how much, insurance proceeds may be available to

pay certain Direct Abuse Claims asserted against the Debtors.

50.     The insurance coverage matters need to be resolved, and the State Court Actions

represent the only appropriate forum for such coverage issues to be adjudicated, as recognized by

both this Court and the Debtors previously.[86]

51.     Third, the Allianz Insurers have already established that they have a probability of

prevailing on the merits as this Court previously found at the November 10, 2021 hearing.[87]  For

these reasons, if the Court confirms the Plan, cause exists to grant the Allianz Insurers relief from

---

[85] *See In re Dallas*, No. 10-12141, 2011 Bankr. LEXIS 4777, at *8 (Bankr. S.D. Ga. Nov. 29, 2011) (finding hardship to the movant outweighed the hardship to the debtor, noting "[movant] is being denied its day in court to have its declaratory action resolved in the forum of its choosing.").

[86] *See* Hearing Transcript, May 19, 2021, 241:22 ("no coverage issue is going to be adjudicated"), 242:10-11 ("I can tell everyone right now that I can't imagine I would decide a coverage issue.") (Certain Insurers App. 52); *See also Defendants the Boy Scouts of America's and the Local Councils' Motion to Dismiss Plaintiffs' Complaint*, Adv. Pro. No. 20-50601 (LSS) (Debtors arguing in a motion to dismiss that state law coverage issues should be decided in state court) [Adv. Pro. D.I. 22].

[87] Hearing Transcript, November 10, 2021, 69:16-20 ("you know, on the third factor, if that were all I were looking at, I would say, sure, there's enough of a probability of success on the merits, that is a slight – that test is slight – motions to dismiss have been denied several times.") (Certain Insurers App. 59).

the discharge and injunction provisions of the Plan and any Confirmation Order to continue prosecuting the State Court Actions to conclusion.

WHEREFORE, the Allianz Insurers respectfully request that this Court: (a) sustain this Objection and, if the Court confirms the Plan, grant the Allianz Insurers relief from the discharge and injunction provisions of the Plan and any Confirmation Order to pursue to conclusion the pending State Court Actions, and (b) grant such other and further relief as is just and proper.

Dated: February 4, 2022
Wilmington, Delaware

TROUTMAN PEPPER HAMILTON SANDERS LLP

By: */s/ David M. Fournier*
    David M. Fournier (DE No. 2812)
    Hercules Plaza, Suite 5100
    1313 Market Street
    P.O. Box 1709
    Wilmington, DE 19899-1709
    Telephone:  302.777.6500
    Facsimile:  302.421.8390
*-and-*
    Harris B. Winsberg (admitted *pro hac vice*)
    PARKER, HUDSON, RAINER & DOBBS
    303 Peachtree Street NE
    Suite 3600
    Atlanta, GA  30308
    Telephone:  404.420.4313
    Facsimile:  404.522.8409

*-and-*

TROUTMAN PEPPER HAMILTON SANDERS LLP

By: */s/ David M. Fournier*
    David M. Fournier (DE No. 2812)
    Hercules Plaza, Suite 5100
    1313 Market Street
    P.O. Box 1709
    Wilmington, DE 19899-1709
    Telephone:  302.777.6500
    Facsimile:  302.421.8390
*-and-*
    Harris B. Winsberg (admitted *pro hac vice*)
    PARKER, HUDSON, RAINER & DOBBS
    303 Peachtree Street NE
    Suite 3600
    Atlanta, GA  30308
    Telephone:  404.420.4313
    Facsimile:  404.522.8409

*-and-*

MCDERMOTT WILL & EMERY LLP
Margaret H. Warner (admitted *pro hac vice*)
Ryan S. Smethurst (admitted *pro hac vice*)
Alex M. Spisak (admitted *pro hac vice*)
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
Telephone:   202.756.8228
Facsimile:    202.756.8087

*Attorneys for Allianz Global Risks US Insurance Company*

BRADLEY RILEY JACOBS PC
Todd C. Jacobs (admitted *pro hac vice*)
John E. Bucheit (admitted *pro hac vice*)
Paul J. Esker
500 West Madison Street
Suite 1000
Chicago, IL 60661
Telephone:   312.281.0295

*Attorneys for National Surety Corporation and Interstate Fire & Casualty Company*