# **EXHIBIT 2**

**Redline of Hartford Insurance Settlement Agreement**

## SETTLEMENT AGREEMENT AND RELEASE[1]

This Settlement Agreement and Release (hereinafter "**Agreement**") is entered into by and among Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company (collectively, "**Hartford**"), Boy Scouts of America ("**BSA**") and Delaware BSA, LLC, as debtors and debtors in possession (together, the "**Debtors**"), the Ad Hoc Committee of Local Councils of Boy Scouts of America (the "**AHCLC**"),[1] the Coalition of Abused Scouts for Justice, solely in its capacity as an ad hoc committee (the "**Coalition**"), and James L. Patton, Jr., the Future Claimants' Representative for the Settlement Trust identified in ~~Section 7.1~~Article IV.G of the Plan~~,~~ and the legal representative appointed by the Bankruptcy Court for holders of Future Abuse Claims, in his capacity as such (together with any successor serving in such capacity, the "**FCR**") (each, a "**Party**" and collectively, the "**Parties**"). The attorneys representing holders of Direct Abuse Claims who are identified on Schedule 1 and who have executed or agreed to execute, or hereafter execute ~~hereafter execute~~ or agree to execute, a joinder in the form set forth on Exhibit C (the "**Joining State Court** ~~State Court~~ **Counsel**") agree to support the terms of and be bound by this Agreement. In addition, the Local Councils that hereafter execute or agree to execute a joinder in the form set forth on Exhibit D (the "**Joining Local Councils**") agree to support the terms of and be bound by this Agreement.[2]

---

[1] ~~This document remains subject to ongoing review and material revision in all respects. The Debtors, Coalition, the Future Claimants' Representative, the Ad Hoc Committee, the Creditors' Committee, JPM, Hartford, TCJC, and the Foundation (each as defined in the Plan) are each continuing to review the documents that are part of the Plan Supplement and each of their respective rights are reserved with respect to the Plan Supplement and the information contained therein, as applicable.~~

[1] Notwithstanding anything to the contrary in this Agreement, the obligations and undertakings of the AHCLC in

connection with this Agreement shall be no greater than the AHCLC's parallel obligations and undertakings under section III of the Restructuring Support Agreement (including the "No Liability" subsection thereof) filed at D.I. 5466-2.

² Capitalized terms used but not defined in this prefatory paragraph or in the Recitals are defined below in Section I.A of this Agreement.

**RECITALS**

WHEREAS, certain Abuse Claims have been brought~~, and in the future may be brought,~~ against the Debtors~~;~~

~~WHEREAS,~~, Local Councils, and Chartered Organizations, including more than 80,000 ~~persons have asserted~~ Abuse Claims that have been asserted against the Debtors in the Bankruptcy Case ~~against the Debtors and, in some cases, included allegations against one or more Local Councils~~, and additional Abuse Claims may be brought in the future;

WHEREAS, Hartford issued or allegedly issued ~~certain liability insurance policies to the BSA (as further defined below, the "~~the Hartford BSA Policies~~") under which the BSA and certain Local Councils allege they are entitled to~~ (as defined below), which allegedly provide insurance coverage for Abuse Claims~~;~~

to the BSA and additional insureds~~WHEREAS, Hartford issued or allegedly issued certain liability insurance policies to certain Local Councils (as further defined below, the "~~**Hartford**, if any, and the Hartford Local Council Policies~~," and together with the Hartford BSA Policies~~ (as defined below), which allegedly provide insurance coverage for Abuse Claims to the Local Councils and additional insureds, if any (together, the "**Hartford Policies**")~~ under which those Local Councils allege they are entitled to insurance coverage for Abuse Claims~~;

WHEREAS, disputes have arisen as to the scope of Hartford's obligation to provide coverage for Abuse Claims under the Hartford Policies;

WHEREAS, BSA and Hartford are parties to pending Coverage Actions concerning the extent to which the Hartford BSA Policies provide coverage for Abuse Claims;

WHEREAS, on February 18, 2020, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, commencing the Bankruptcy Case before the Bankruptcy

Court;

WHEREAS, on April 15, 2021, the Debtors and Hartford executed a settlement agreement and release (the "**Prior Hartford Settlement Agreement**") to resolve, among other things, their disputes as to coverage under the Hartford Policies, including through (among other provisions)

the Debtors' agreement to sell and Hartford's agreement to purchase the Hartford BSA Policies free and clear of all interests of any Entity, and the Debtors' agreement to release Hartford from any further claims relating to (among other things) the Hartford BSA Policies or any Abuse Claims;

WHEREAS, on or about June 9, 2021, the Debtors advised Hartford that they would not seek approval by the Bankruptcy Court of the Prior Hartford Settlement Agreement in its ~~then current~~then- current form because representatives of a substantial majority of holders of Direct Abuse Claims had communicated to the Debtors that such holders would not support a plan of reorganization that included the terms of the Prior Hartford Settlement Agreement;

WHEREAS, on July 1, 2021, the Debtors filed in the Bankruptcy Case *Debtors' Motion for Entry of an Order, Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code, (I) Authorizing the Debtors to Enter Into and Perform Under the Restructuring Support Agreement, and (II) Granting Related Relief* [D.I. 5466] (the "**RSA Motion**");

WHEREAS, the RSA Motion and accompanying proposed order sought, among other things, a determination that the Debtors had no obligation to seek approval of, and had no obligations under, the Prior Hartford Settlement Agreement;

WHEREAS, on July 22, 2021, Hartford objected to the RSA Motion in *Hartford's Objection to Debtors' Motion for Entry of an Order (I) Authorizing The Debtors to Enter Into and Perform Under the Restructuring Support Agreement, and (II) Granting Related Relief (D.I. 5466)* [D.I. 5681];

WHEREAS, the Bankruptcy Court heard oral argument on the RSA Motion on August 12, 13, and 16, 2021;

WHEREAS, on August 19, 2021, the Bankruptcy Court issued an oral ruling on the RSA Motion declining to issue the requested declaration that the Debtors had no obligation to seek approval of, and had no obligations under, the Prior Hartford Settlement Agreement;

WHEREAS, following the Bankruptcy Court's ruling on the RSA Motion, the Parties, with the assistance of the Mediators, engaged in good-faith, arm's-length negotiations with respect to a full and final resolution of their disputes on terms acceptable to each of the Parties;

WHEREAS, on September 14, 2021, the Mediators caused to be filed the *Sixth Mediators' Report* [D.I. 6210], appended to which was a term sheet that set forth the principal terms of this Agreement, which were to be incorporated in a definitive agreement and amended plan of reorganization for the Debtors;

WHEREAS, the Parties wish to reach a full and final resolution of their disputes, including over the existence and scope of coverage for Abuse Claims under the Hartford Policies and over any Claim Hartford may have arising out of the Debtors' decision not to seek approval of the Prior Hartford Settlement Agreement, and to provide for the other consideration, promises, releases, and covenants set forth in this Agreement;

NOW, THEREFORE, in consideration of the foregoing, and in consideration of the other mutual considerations, promises, releases, and covenants set forth below, the sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

## I. DEFINITIONS AND RULES OF CONSTRUCTION

A. **Definitions.** The following definitions and those set out above apply to this Agreement.

1. **"2010 Hartford-BSA Settlement Agreement"** means that certain Confidential Settlement Agreement and Release between and among Twin City Fire Insurance Company and First State Insurance Company and BSA, entered November 2010.

~~Insurance Company and First State Insurance Company and BSA, entered November 2010.~~

2.  **"2011 Hartford-BSA Settlement Agreement"** means that certain Confidential Settlement Agreement and Release between Hartford Accident and Indemnity Company and BSA, entered August 2011.

3.  **"Abuse"** has the meaning set forth in the Plan.

4.  **"Abuse Claim"** has the meaning set forth in the Plan.

5.  **"Abuse Insurance Policies"** has the meaning set forth in the Plan.

6.  **"Additional Payment"** has the meaning set forth in Section IV.C of this Agreement.

7.  **"Administrative Expense Claim"** has the meaning set forth in the Plan.

8.  **"Affirmation Order"** has the meaning set forth in the Plan <u>and which order shall be in form and substance acceptable to the Debtors, the AHCLC, the Coalition, the FCR, and Hartford</u>.

9.  **"Affiliates"** means, with respect to any Entity, that Entity's past, present, and future officers, directors, partners, shareholders, employees, principals, agents, attorneys, representatives~~,~~ direct and indirect parent entities, subsidiaries, corporations owned or operated thereby, and their respective successors, transferees, and assigns (but <u>as to</u> each of the foregoing, exclusively in its capacity as such and only to <u>the</u> extent of the relevant ~~Party's~~<u>Entity's</u> right, power, and authority to bind it).

10. **"Agreed Amount"** has the meaning set forth in Section VI.~~M~~<u>N</u>.3.a.~~iii~~<u>iii</u> of this Agreement.

11. **"Allowed"** has the meaning set forth in the Plan.

12.     **"Bankruptcy Case"** means the Chapter 11 cases filed on February 18, 2020, by Boy Scouts of America and Delaware BSA, LLC in the U.S. Bankruptcy Court

for the District of Delaware, *In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-10343 (LSS) (including any adversary proceedings therein), and any appeals therefrom.

13.     **"Bankruptcy Code"** has the meaning set forth in the Plan.

14.     **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Delaware.

15.     **"Bankruptcy Rules"** has the meaning set forth in the  Plan.

16.     **"Business Day"** has the meaning set forth in the  Plan.

17.     **"Causes of Action"** has the meaning set forth in the  Plan.

18.     **"Century"** has the meaning set forth in the  Plan.

19.     ~~18.~~**"Channeling Injunction"** has the meaning set forth in the  Plan.

20.     ~~19.~~**"Chartered Organizations"** has the meaning set forth in the Plan.

21.     **"Chubb Companies"** has the meaning set forth in the Plan.

22.     ~~20.~~**"Claims"** ~~means~~has the meaning set forth in the Plan and includes any and all past, present or future claims (including any presently unknown claims), liabilities, demands, obligations, duties, complaints, cross-complaints, cross-claims, third party complaints, counterclaims, requests, administrative proceedings, directives and notices, counts, judgments, executions, attachments, debts, lawsuits, actions, direct actions, writs, liens, inquiries, rights, damages, costs, or any other causes of action, including Abuse Claims, Direct Action Claims, Extra-Contractual Claims, any "claim" as that term is defined in the Bankruptcy Code, 11 U.S.C. §101(5), and any Causes of Action.

23.     ~~21.~~**"Confirmation ~~Hearing~~"** has the meaning set forth in the  Plan.

24.     **"Confirmation Hearing"** has the meaning set forth in the  Plan.

25.     22. **"Confirmation Order"** has the meaning set forth in the Plan and which order shall be in form and substance acceptable to the Debtors, the AHCLC, the Coalition, the FCR, and Hartford.

26.     23. **"Coverage Actions"** means (a) the case bearing the caption, *Boy Scouts of America, et al. v. Hartford Accident and Indemnity Co., et al.*, Case No. DC-18-07313,

pending in the 95th Judicial District Court of Dallas County, Texas; (b) the adversary proceeding bearing the caption, *Hartford Accident and Indemnity Company and First State Insurance Company v. Boy Scouts of America, et al.*, Adv. Pro. No. 20-50601-LSS, pending in the Bankruptcy Court; and (c) the case bearing the caption, *National Surety Corporation*

*v. Boy Scouts of America, et al.*, Case No. 2017-CH-14975, pending in the Circuit Court of Cook County, Illinois, Chancery Division.

27. ~~24.~~**"Credit"** has the meaning set forth in Section ~~VI~~III.~~M~~B.~~3.b.ii~~2 of this Agreement.

28. ~~25.~~**"Direct Abuse Claim"** has the meaning set forth in the Plan.

29. ~~26.~~**"Direct Action Claim"** means any Claim asserted by an Entity holding a Direct Abuse Claim (in its capacity as such), and asserted against any Hartford Protected Party, on account of, based upon, directly or indirectly arising from, or in any way relating to any alleged right or interest of the Debtors, any Local Council, any Chartered Organization, or any alleged additional insured in any Hartford Policy or any other insurance policy issued or allegedly issued by any Hartford Protected Party providing coverage for Abuse Claims, whether arising by contract, in tort, or under the laws of any jurisdiction, including any statute that gives a third party a direct cause of action against any Hartford Protected Party on account of a Direct Abuse Claim.

30. ~~27.~~**"Disclosure Statement"** has the meaning set forth in the Plan.

31. ~~28.~~ **"District Court"** means the United States District Court for the District of Delaware.

32. ~~29.~~ **"Entity"** has the meaning set forth in the Plan and includes an individual, a corporation, a partnership, an association, a trust, or any other entity or organization, and any federal, state, or local governmental or quasi-governmental body or political subdivision or any agency, department, board, or instrumentality thereof.

33. ~~30.~~ **"Escrow Account"** has the meaning set forth in Section IV.C of this Agreement.

34. ~~31.~~ **"Escrow Costs"** has the meaning set forth in Section IV.C of this Agreement.

35. ~~32.~~ **"Estate"** has the meaning set forth in the  Plan.

36. ~~33.~~ **"Execution Date"** means the first date on which each and every Party has executed this Agreement.

37. ~~34.~~ **"Extra-Contractual Claim"** means any ~~Abuse~~ Claim <u>seeking any type of relief</u> against any Hartford Protected Party<u>,</u> other than a claim for coverage or benefits under  a  Hartford Policy<u>,</u> ~~seeking any type of relief based upon conduct of~~ <u>or other insurance policy issued or allegedly issued by</u> any Hartford Protected Party<u>, related to, arising from, or connected with any action or omission of a Hartford Protected Party occurring</u> prior to the ~~Release~~<u>Plan Effective</u> Date<u>.</u> ~~(including~~ ~~statutory, compensatory, exemplary, or punitive damages, on account of~~ alleged bad faith, failure to act in good faith, violation of any duty of good faith and fair dealing, violation of any unfair claims practices act or similar statute, regulation<u>,</u> or code, any type of alleged misconduct, or any other ~~act~~<u>action</u> or omission~~, including any Claims for economic loss, general damages, attorneys' fees, or costs related to or in connection with any~~<u>) related to any Abuse Claims, any Hartford Policy or other insurance policy issued or allegedly issued by any</u> Hartford  Protected  <u>Party concerning the Debtors or Scouting, and/or any Hartford Protected</u> Party's ~~handling of, or refusal to handle, any Abuse Claim.~~

performance of its obligations under such policy, whether for defense, settlement of claims or otherwise.

38. 35. **"Fiduciary Out"** has the meaning set forth in Section VI.~~M~~N.1 of this Agreement.

39. 36. **"Final Order"** has the meaning set forth in the Plan.

40. 37. **"Final Order Date"** means the first date on which both the Confirmation Order and the Affirmation Order have become Final Orders.

41. 38. **"Findings and Determinations"** has the meaning set forth in Section VI.~~E~~F of this Agreement.

42. ~~39.~~ **"Future Abuse Claim"** has the meaning set forth in the  Plan.

43. ~~40.~~ **"Hartford Additional Administrative Expense Claim"** has the meaning set forth in Section VI.~~M~~N.3.a.~~ii~~iii of this  Agreement.

44. ~~41.~~ **"Hartford Administrative Expense Claim"** has the meaning set forth in Section V.A of this  Agreement.

45. ~~42.~~ **"Hartford BSA Policies"** means (a) any and all ~~liability insurance policies, known and unknown,~~Abuse Insurance Policies issued or allegedly issued by any Hartford Protected Party to either of the Debtors as the first named insured, including each of the insurance policies identified on <u>Exhibit A</u>~~, and~~; (b) ~~the Debtors' Interests in any and all liability insurance policies,~~

<u>the Debtors' Interests in any and all liability insurance policies,</u> known and unknown, issued or allegedly issued by any Hartford Protected Party to any other Entity, that afford or allegedly afford one or both of the Debtors coverage with respect to Abuse Claims~~ or other Claims that are channeled to the Settlement Trust or otherwise enjoined by the Plan or Confirmation Order; *provided, however*, that "Hartford BSA Policies" shall not include (a) any portion of workers' compensation policies with respect to Claims not discharged by the Plan and unrelated to Abuse Claims or~~; and
~~(b) any portion of automobile liability policies with respect to Claims not discharged by the Plan and unrelated to Abuse Claims. The "Hartford BSA Policies" include~~c) the excess liability policy issued to BSA by Navigators Specialty Insurance Company for the period of March 1, 2013 to February 28, 2014, which policy shall be excluded from the definition of "Specified Insurance Policies" in the Plan~~.~~; *provided, however,* that

"Hartford BSA Policies" shall not include the Hartford Non-Abuse Insurance Policies, any Postpetition Insurance Policies, or any Abuse Insurance Policies issued by an Entity that is not a Party or Hartford Protected Party that are acquired or otherwise assumed by a Hartford Protected Party after the Execution Date.

46. 43. **"Hartford ~~Insurance Settlement~~BSA Policy Sale"** has the meaning set forth in ~~the Plan~~Section VI.A.1 of this Agreement.

44. **"Hartford Local Council Policies"** means (a) any and all ~~liability insurance policies, known or unknown,~~Abuse Insurance Policies issued or allegedly issued by any Hartford

Protected Party to any Local Council as the first named insured, including the policies identified on Exhibit B, and (b) any and

~~any and~~ all Interests of any Local Council in any and all liability insurance policies, known and unknown, issued or allegedly issued by any Hartford Protected Party to any other Entity, to the extent any such policy or Interest provides coverage~~, or allegedly provides coverage,~~ for Abuse Claims ~~or other Claims that are channeled to the Settlement Trust or otherwise enjoined by the Plan or Confirmation Order.~~. The Hartford Local Council Policies shall not include the Hartford Non-Abuse Insurance Policies, any Postpetition Insurance Policies, or any Abuse Insurance Policies issued by an Entity that is not a Party or Hartford Protected Party that are acquired or otherwise assumed by a Hartford Protected Party after the Execution Date.

47.    **"Hartford Local Council Policy Sale"** has the meaning set forth in Section VI.A.2.b of this Agreement.

48.    ~~45.~~ **"Hartford Non-Abuse Insurance Policies"** means (a) any portion of workers' compensation policies with respect to Claims not discharged or channeled to the Settlement Trust by the Plan and unrelated to Abuse Claims; and (b) any portion of automobile liability policies with respect to Claims not discharged or channeled to the Settlement Trust by the Plan and unrelated to Abuse Claims~~; and (c) any other insurance policy defined as a Non-Abuse Insurance Policy under the Plan, including any D&O Liability Insurance Policies, issued to the Debtors or Local Councils~~.

49. ~~46.~~ **"Hartford Policies"** means the Hartford BSA Policies and the Hartford Local Council Policies.

50. ~~47.~~ **"Hartford Protected Parties"** means (a) Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company~~, solely in their capacity as such~~,; (b) each of their ~~Affiliates.~~past, present, and future direct or indirect parents, subsidiaries, affiliated Entities, controlled Entities, officers, directors, stockholders, members, partners, managers, employees, attorneys, agents, experts, consultants, predecessors, successors and assigns (each in their capacities as such); and (c) all Representatives of each person or Entity identified in clauses (a) and

(b) (each in their capacities as such); *provided that* the Hartford Protected Parties shall not include the foregoing persons and Entities in their capacities as contractual obligors under: (i) the Hartford Non-Abuse Insurance Policies, except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from, or in connection with Abuse Claims, any actions, omissions, or positions taken in connection with the Debtors' Bankruptcy Case and related proceedings, or any Extra-Contractual Claims and (ii) any Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from, or in connection with any actions, omissions, or positions taken in connection with the Debtors' Bankruptcy Case and related proceedings or any Extra-Contractual Claims.

51. ~~48.~~ **"Indirect Abuse Claim"** has the meaning set forth in the Plan.

52. ~~49.~~ **"Initial Payment"** has the meaning set forth in Section IV.B of this Agreement.

53. 50. **"Initial Payment Trigger Date"** has the meaning set forth in Section

IV.B IV.B of this Agreement.

54. **"Insurance Action"** has the meaning set forth in the Plan.

55. 51. **"Insurance Company"** has the meaning set forth in the Plan.

56. **"Insurance Settlement Agreement"** has the meaning set forth in the Plan.

57. ~~52.~~**"Interests"** means all liens, Claims, encumbrances, interests and other rights of any nature, whether at law or in equity, and any other "interest" as such term is used in sections 363 and 1141 of the Bankruptcy Code, 11 U.S.C. §§ 363, 1141.

58. ~~53.~~**"Limited Protected Parties"** has the meaning set forth in the Plan.

59. ~~54.~~**"Local Councils"** has the meaning set forth in the Plan.

60. ~~55.~~**"Mediators"** has the meaning set forth in the Plan.

~~56. **"Modified Fifth Amended Plan"** means the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC,* dated September 30, 2021 [D.I. 6443].~~

61. ~~57.~~**"Net Additional Payment"** has the meaning set forth in Section IV.D of this Agreement.

62. ~~58.~~**"Net Unrestricted Cash and Investments"** has the meaning set forth in the Plan.

63. ~~59.~~**"~~Participating Chartered Organization Insurance Assignment~~Petition Date"** has the meaning set forth in the Plan.

~~60.~~**"Plan"** means the Third Modified Fifth Amended Plan (including all exhibits, schedules, and plan supplements thereto), as the same may be further amended or modified from time to time pursuant to section 1127 of the Bankruptcy Code, which Plan shall incorporate this Agreement, shall not reduce the protection or benefits afforded to the Hartford Protected Parties by this Agreement's terms, and shall be ~~in form (~~and ~~substance (including as to~~ any amendment or modification) thereof shall be) in form and substance reasonably acceptable to the Debtors,

the AHCLC, the Coalition, the FCR, and (except to the extent expressly provided otherwise in Section VI.~~E~~F and Section VI.~~F~~G of this Agreement) Hartford.

64. ~~61.~~ **"Plan Effective Date"** has the same meaning as the term "Effective Date" as defined in the Plan.

65. ~~62.~~ ~~**"Post-1975 Chartered Organization Abuse Claims**~~**Post-Confirmation Interim Injunction"** has the meaning set forth in the Plan.

66. **"Postpetition Insurance Policies"** means any insurance policies issued by Hartford to the Debtors, or the Local Councils, and effective on or after the Petition Date covering Claims and Causes of Action first arising after the Petition Date.

67. **"Prepetition Hartford Claims"** means all Claims, known or unknown, that have been or could be asserted by the Debtors or either of them against any Hartford Protected Party for payment of defense and indemnity costs allegedly owed as of the Petition Date.

68. ~~63.~~ **"Protected Parties"** has the meaning set forth in the Plan.

69. ~~64.~~ **"Related Non-Debtor Entities"** has the meaning set forth in the Plan.

70. ~~65.~~ **"Release Date"** has the meaning set forth in Section IV.D of this Agreement.

71. **"Released Claims"** means any and all Claims related to or arising from or in connection with, in whole or in part, (a) Abuse Insurance Policies, including all Hartford Policies; (b) coverage for Abuse Claims under any other insurance policies issued or allegedly issued by the Hartford Protected Parties to any Entity, including any Chartered Organization, (c) any Claim related to any Hartford Protected Party's performance of any alleged obligation under any Hartford Policy or other insurance policy that covers Abuse

66. **"Released** Claims**"** means any and all Claims arising from or relating to (a) the Hartford Policies, (b), including the types of Claims included in the definition of "Insurance Action" in the Plan; (d) the Bankruptcy Case, (c) the Plan, (d) and related proceedings, including the Debtors' Plan and any prior plans, the Prior Hartford Settlement Agreement, (e) the 2010 BSA-Hartford Settlement Agreement, (f) the 2011 BSA-Hartford Settlement Agreement, (g)(1) Abuse Claims against the Protected Parties and (2) Post-1975 Chartered Organization Abuse Claims against the Limited Protected Parties, (h) any Claims asserted any Claims that were or could have been asserted in the Bankruptcy Case by Hartford and its Affiliates against the Debtors or any of the other Parties, Protected Parties, or Limited Protected Parties, or by the Debtors or any of the other Parties, Protected Parties, or Limited Protected Parties against any Hartford, Protected Party, and any actions, omissions, or positions taken in the Bankruptcy Case, (i) the negotiation of this and related proceedings; (e) any Abuse Claims; (f) any Direct Action Claims; (g) any Extra- Contractual Claims; (h) the 2010 BSA-Hartford Settlement Agreement, and/or (j) any Extra-Contractual Claims arising from or relating to acts or omissions related to the Hartford Policies before the Release Date. For the avoidance of doubt, this release does not release Hartford from any extra-contractual claims that the Debtors or Local Councils may have related to the Hartford Non-Abuse Insurance Policies, whether before or after the Release Date. i) the 2011 BSA-Hartford Settlement Agreement.

72. 67. **"Reorganized BSA"** has the meaning set forth in the Plan.

73. **"Representatives"** has the meaning set forth in the  Plan.

74. ~~68.~~**"Reversal"** has the meaning set forth in Section VI.~~N~~O.1 of this Agreement.

75. ~~69.~~**"Sale"** has the meaning set forth in Section VI.A.1.a of this   Agreement.

~~70. "Scouting" has the meaning set forth in the  Plan.~~

76. ~~71.~~**"Settlement Amount"** has the meaning set forth in Section IV.A of

this Agreement.

77. ~~72.~~**"Settlement Trust"** has the meaning set forth in the Plan.

78. ~~73.~~**"Settlement Trustee"** has the meaning set forth in the  Plan.

79. ~~74.~~**"Settlement Trust Agreement"** has the meaning set forth in the Plan.

80. ~~75.~~**"Settling Insurance Company"** has the meaning set forth in the   Plan.

~~76.~~**"Solicitation Procedures Order"** means the *Order (I) Approving the*

*Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation*

*and Voting Procedures, (III) Approving Forms of Ballots, (IV) Approving Form, Manner,*

*and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection*

*with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI)*

*Granting Related Relief* [D.I. 6438].

81.    77.**"Specified Action"** has the meaning set forth in Section

VI.MN.3.a of this Agreement.

82.    **"Third Modified Fifth Amended Plan"** means the *Third Modified*

*Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and*

*Delaware BSA, LLC*, dated February 14,  2022.

83.    78.**"Tort Claimants' Committee"** has the meaning set forth in the
Plan.

84.    79.**"Trust Distribution Procedures"** has the meaning set forth in the
Plan.

85.    80.**"Trust Payee"** has the meaning set forth in Section II.B.2.e of this

Agreementshall mean any holder of an Abuse Claim who receives any payment or

distribution from the Settlement  Trust.

86.    81. **"Unrestricted Cash and Investments"** has the meaning set forth in the

Plan.

B.    **Rules of Construction.** In this Agreement, the singular form of a word includes the plural and vice versa; "or" is not exclusive; all pronouns apply to the male, female and neutral genders; the word "any" includes the word "all" and vice versa; the word "including" means including without limitation; and the past tense of a word includes the present tense and vice versa.

## II.    EFFECTIVENESS AND CONDITIONS PRECEDENT

A.    **Effective Date.** This Agreement and all of its provisions shall become effective on the Execution Date, subject ~~only~~ to the conditions precedent to specific obligations of the Parties set out in Sections II.B, II.C, and II.D below and to satisfying the requirements of Bankruptcy Rule 9019 to the extent those requirements are applicable.

B.     **Conditions Precedent to Settlement Payment.** ~~Notwithstanding anything to the contrary in this~~ , ~~any Party may terminate the Agreement, on or before the later of the Release Date or Final Order Date, if one of~~ Hartford's obligation to make the Initial Payment, set out in Section IV.B below, and its obligation to put the Additional Payment into the Escrow Account, set out in Section IV.C below, shall not arise until the following conditions precedent ~~is not~~have been satisfied ~~and is not~~or waived in writing by ~~all Parties.~~Hartford:

1.     As set forth in Section VI.C below, each current Local Council, including those listed on Exhibit G to the Modified Fifth Amended Plan, has become a Joining Local Council.

2.     The Bankruptcy Court has entered a Confirmation Order confirming the Plan; the Confirmation Order has not been stayed and is in full force and effect; the Confirmation Order and Plan are each reasonably acceptable in form and substance to the Parties, including Hartford; and the Confirmation Order and Plan each provides that:

a.     ~~The Hartford Insurance Settlement and~~This Agreement, its terms and conditions, and the settlement embodied in this Agreement are approved pursuant to sections 363, 503(b), 507(a)(2), 1123, and/or 1141 of the Bankruptcy Code and Bankruptcy Rule 9019, as applicable.

b. The ~~Sale by the Debtors to Hartford of the~~ Hartford BSA ~~Policies free and clear of all Interests of any Entity in~~ Policy Sale as set out in Section VI.A.1 of this Agreement (and, if applicable, the Hartford ~~BSA Policies~~ Local Council Policy Sale as set out in Section VI.A.2 of this Agreement) is approved and (i) the Sale represents a sound exercise of the Debtors' business judgment, will yield a fair and reasonable price for the assets being sold, and otherwise complies with sections 363 and 1123 of the Bankruptcy Code, (ii) the Sale meets the requirements for a sale of Estate property free and clear of any and all Interests of any Entity in such property pursuant to sections 363(f) and 1141 of the Bankruptcy Code, ~~and all such Interests, if any, shall attach to the proceeds of the Sale,~~ (iii) the Sale constitutes a

~~b.~~purchase by Hartford in good faith pursuant to section 363(m) of the Bankruptcy Code, rendering the provisions of section 363(m) applicable and affording Hartford all protections thereunder, <u>and</u> (iv) the proceeds of such Sale, including the Settlement Amount, ~~constitute property~~<u>will be</u> transferred to the Settlement Trust under the Plan.

   c.  Subject to all of the other terms and conditions of the Plan and this Agreement, ~~which terms and conditions shall control,~~ including Hartford's payment of the Initial Payment and the Additional Payment, the Hartford Protected Parties are Settling Insurance Companies ~~under the Plan and are entitled to all benefits, protections, releases, and injunctive relief afforded to Settling Insurance Companies as~~<u>and</u> Protected Parties ~~under the Plan, including the~~<u>entitled to the</u> protection of the Channeling Injunction, ~~which shall permanently channel~~ <u>for</u> all Abuse Claims against any <u>Hartford</u> Protected Party and ~~all Post-1975 Chartered Organization~~<u>to releases, injunctions, and other protections, including injunctions and releases of</u> Abuse Claims against any ~~Limited Protected Party to the Settlement Trust, and pursuant to which any holder of an Abuse Claim or Post-1975 Chartered Organization Abuse Claim~~<u>insured or additional insured covered by any insurance policy issued by any Hartford Protected Party, that are equal in breadth to the broadest releases, injunctions, and other protections afforded to any other Settling Insurance Company under the Plan as confirmed by the Bankruptcy Court, the Confirmation Order, and/or any applicable Insurance Settlement Agreement approved by the Bankruptcy Court.</u>

~~shall be permanently and forever stayed, restrained, barred, and enjoined from taking any action against any Protected Party or Limited Protected Party, respectively, for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment of, on, or with respect to any Abuse Claim or Post-1975 Chartered Organization Abuse Claim, respectively.~~

~~d.Subject to all of the terms and conditions of the Plan and as set forth in Section        of this Agreement, the terms of which shall control, including~~ <u>d.</u> ~~Hartford's payment of the Initial Payment and the Additional Payment,~~ <u>Subject to all of the terms and conditions of the Plan and this Agreement, the Debtors shall irrevocably and unconditionally release and be deemed to release the Hartford Protected Parties from the Prepetition Hartford Claims;</u> the Parties (other than Hartford), the Debtors' Estates, Reorganized BSA, the Settlement Trust, the Local Councils, and the other Protected Parties and Limited Protected Parties shall irrevocably and unconditionally release and be deemed to release the Hartford Protected Parties from all Released Claims~~,~~<u>;</u> and

Hartford ~~Protected Parties~~and its Affiliates shall irrevocably and unconditionally release and be deemed to release the other Parties, the Debtors' Estates, Reorganized BSA, the Settlement Trust, the Local Councils, and the other Protected Parties and Limited Protected Parties from all Released Claims, in each case as and to the extent set forth in Section VII of this Agreement.

e.       Under the Plan and Trust Distribution Procedures~~, the terms of which shall control~~, the Hartford Protected Parties shall receive and shall be deemed to receive a full and final release and protections from each ~~holder of either~~

~~(i) an Abuse Claim (ii) or Post-1975 Chartered Organization Abuse Claim who (in the case of (i) or (ii)) receives payment from the Settlement Trust (each such holder, a "Trust Payee")~~ ~~that will be at least as broad as~~Trust Payee, as set forth in Section VII.F of this Agreement, that are equal in breadth to the broadest release and protections ~~received~~ granted by Trust Payees to the Debtors, any Local Council, ~~or~~ any Chartered Organization, or any other Settling Insurance Company under the Plan as confirmed by the Bankruptcy Court, the Confirmation Order, and/or any applicable Insurance Settlement Agreement approved by the Bankruptcy Court.

f.      ~~Organization from Trust Payees and that will ensure that no Claim that arises out of or relates to any Trust Payee's~~ ~~Claim for Abuse relating in whole or in part to Scouting may be asserted by any Entity, including any Chartered Organization, against any~~The Hartford Protected ~~Party in connection with any Hartford Policy. Without limiting the foregoing, as a precondition to receiving any payment from the Settlement Trust, each Trust Payee shall release and be deemed to release any Entity, including any Chartered Organization,~~Parties are protected against any liability, loss, or expense with respect to any Claim ~~for Abuse by the Trust Payee relating~~ ~~in whole or in part~~ ~~to Scouting if such Entity would be entitled to any coverage from any~~by any Chartered Organization arising out of or relating to coverage for Abuse Claims under any Hartford Policy or any other insurance policy issued or allegedly issued by any Hartford Protected Party ~~on account of that Claim for Abuse, including under a Hartford Policy or an insurance policy issued to the Entity,~~ as set forth in Section VI.D of this Agreement.

f. ~~Under the Plan, the Debtors, the Coalition, the FCR, and/or the Settlement Trust shall secure an assignment to the Settlement Trust of, and then release, any and all present and future Claims by Chartered Organizations against any Hartford Protected Party arising out of or relating in any way to coverage issued or allegedly issued by any Hartford Protected Party for Claims for Abuse relating, in whole or in part, to Scouting or shall otherwise resolve such Claims by Chartered Organizations in accordance with applicable law to the Parties' satisfaction in a manner that ensures that the Hartford Protected Parties are~~

~~protected, via release or otherwise, against any liability, loss, or expense with~~ ~~respect to any~~ ~~and all such Claims.~~

g.     The Hartford Administrative Expense Claim is Allowed in the amount of $2,000,000.00 as an Administrative Expense Claim of the Debtors'

Estates pursuant to sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and shall be paid to Hartford in full, in cash, on or as soon as reasonably practicable after the Plan Effective Date, as set forth in Section V.A of this Agreement.

h. ~~As set forth in Section , the terms of which shall control, if~~If the Debtors ~~exercise a Fiduciary Out or~~ take ~~another~~a Specified Action ~~after the Confirmation Date~~, unless such action is due to the enactment of congressional legislation prohibiting non-debtor releases (and such prohibition is not explicitly applicable only to bankruptcy cases filed after the enactment of such legislation), Hartford may assert, and the other Parties, the Joining State Court Counsel, and the Joining Local Councils may not object to the assertion of, the Hartford Additional Administrative Expense Claim in the Agreed Amount (unless they reasonably contend no Specified Action has occurred), as set forth in Section VI.N.3 of this Agreement.

i. If this Agreement is terminated for any reason, or if there is a Reversal of the Confirmation Order or Affirmation Order ~~following the Plan Effective Date~~, Hartford shall be entitled to retain the payment of the Hartford Administrative Expense Claim and shall be entitled to the Credit, as set forth in Sections III.B, V.A, VI.N and VI.O.

3. The District Court has entered an Affirmation Order affirming the Confirmation Order and each provision of the Confirmation Order set out in Section II.B.2 above, the Affirmation Order is reasonably acceptable to the Parties, including Hartford, in form and substance, and the Affirmation Order has not been stayed and is in full force and effect.

4. The Debtors have notified Hartford that the Plan Effective Date has occurred.

5. The Debtors have paid the Hartford Administrative Expense Claim in full, in cash, to Hartford.

C. **Conditions Precedent to Release of Net Additional Payment and Release of Claims by Hartford.** Hartford's obligation to cause the Net Additional Payment to be released

~~C.~~ from the Escrow Account to the Settlement Trust, as set out in ~~Sections IV.C and~~ Section IV.D below, and its obligation to release the Released Claims, as set out in Section VII.B below, shall not arise until all of the following conditions have occurred or their occurrence has been waived in writing by Hartford: (1) all of the conditions precedent set out in Section II.B above have occurred; and (2) the Final Order Date has occurred. Further, said obligations of Hartford shall be conditioned on the simultaneous effectuation of the Sale, as set out in Section VI.A below, and release of the Released Claims against the Hartford Protected Parties, as set out in Section VII.A below, unless waived in writing by Hartford.

D.     **Conditions Precedent to Sale and Release of Claims Against Hartford Protected Parties.** The Debtors' ~~obligation to effectuate~~ and Local Councils' obligations with respect to the Sale, set out in Section VI.A below, and the Parties' and Local Councils' obligations to release the Released Claims against the Hartford Protected Parties, set out in Section VII.~~B~~A below, shall not arise until all of the following conditions have occurred or their occurrence has been waived in writing by all Parties: (1) all of the conditions precedent set out in Section II.B above have occurred; (2) Hartford has made the Initial Payment; (3) Hartford has put the Additional Payment into the Escrow Account; and (4) the Final Order Date has occurred. Further, said obligations shall be conditioned on Hartford's simultaneous release of the Net Additional Payment to the Settlement Trust, as set out in ~~Sections~~

~~IV.C~~ Section IV.~~and IV.~~D below, and release of the Released Claims, as set out in Section VII.B below, unless waived in writing by all Parties.

## III. TERMINATION AND EFFECT THEREOF

### A. Termination.

1. Any of the Parties may terminate this Agreement (for the Coalition, FCR, and AHCLC, such termination shall be effective as to itself only) if ~~one~~any of the following events occurs on or before the later of the Release Date or Final Order Date:

   a. The entry of a Confirmation Order or Affirmation Order confirming or affirming a plan of reorganization in the Bankruptcy Case, if such plan, Confirmation Order, or Affirmation Order does not contain the provisions set out in Section II.B.2 of this Agreement.

   b. The entry by the Bankruptcy Court or District Court of a Final Order (including following any Reversal) denying approval of ~~the Hartford Insurance Settlement,~~ this Agreement~~,~~ or any provision ~~of the Hartford Insurance Settlement or this~~set out in Section II.B.2 of this Agreement, or ~~holding~~denying confirmation of the Plan on the ground that any provision ~~of the Plan (as it pertains to the Hartford Insurance Settlement or this Agreement), the Hartford Insurance Settlement, or this~~set out in Section II.B.2 of this Agreement is unlawful.

   c. The entry by the Bankruptcy Court, before the Plan Effective Date, of a Final Order converting the Bankruptcy Case into a case under Chapter 7 of the Bankruptcy Code or dismissing the Bankruptcy Case.

2. Hartford may terminate this Agreement if: (a) ~~(i)~~ any Party breaches its obligations to Hartford under this Agreement in any material respect~~; (ii)~~, including by the Debtors ~~do not~~' failure to seek confirmation of the Plan or to have the Plan Effective Date occur~~;~~ or ~~(iii) the Debtors do not~~to take all reasonable actions to defend

confirmation of the Plan against any appeals or other challenges; *provided* that, as set forth in Section VI.N.3 of this Agreement, and such breach or failure remains uncured (to the

extent curable) for a period of fifteen (15) business days following the

applicable Party's receipt of notice thereof served in accordance with Section XIV.K of this Agreement; (b) the FCR exercises a Fiduciary Out; or (c) the Coalition, FCR, or AHCLC terminates the Agreement as to itself in accordance with Section III.A.1 ~~above~~ or Section ~~III.A.4 or Section III.A.5 below.~~

III.A.4 of this Agreement.

      3.      The Debtors may terminate this Agreement if (a) any Party breaches its obligations to the Debtors under this Agreement in any material respect and such breach remains uncured (to the extent curable) for a period of fifteen (15) business days following the Party's receipt of notice thereof served in accordance with Section XIV.K of this Agreement; (b) the FCR exercises a Fiduciary Out; or (c) the Coalition, FCR, or AHCLC terminates the Agreement as to itself in accordance with Section III.A.1 or Section III.A.4 of this Agreement.

      4.      The Coalition, FCR, or AHCLC may terminate this Agreement, with respect to itself only, if any Party breaches its obligations to the Coalition, FCR, or AHCLC, respectively, under this Agreement in any material respect and such breach remains uncured (to the extent curable) for a period of fifteen (15) business days following the Party's receipt of notice thereof served in accordance with Section XIV.K of this Agreement.

      5.      This Agreement shall terminate automatically if the Debtors exercise a Fiduciary Out.

B.    **Effect of Termination.**  In the event of a termination of this Agreement in accordance with Section III.A above~~, each~~:

      1.      Each of the Parties (other than the remaining Parties to the Agreement, if

any, in the event of a termination under Section III.A.1 or Section III.A.4 above) shall, to

the fullest extent possible, be restored to the position it was in (and shall have all the rights it had) before entering into this Agreement and shall (except as provided below) be released from any prospective

commitments, undertakings, and agreements under or related to this Agreement, other than obligations under Sections V.C, VI.N, VI.O, VI.P, VII.C and X of this Agreement and any other provisions of this Agreement that by their terms expressly survive termination; *provided, however,* that (1).

2.      If the Agreement is terminated after Hartford has made the Initial Payment pursuant to Section IV.B of this Agreement, Hartford shall be entitled to a credit against any liability any Hartford Protected Party may have for defense costs or indemnity under any Hartford Policies on account of any Abuse Claim, including any Prepetition Hartford Claim, which credit shall be equal to the amount of the Initial Payment made by Hartford plus, if Hartford has caused the payment of the Additional Payment or caused the release of the Net Additional Payment to the Settlement Trust pursuant to Section IV.D of this Agreement, the amount of the Additional Payment (such credit in such amount, the **"Credit"**), such that Hartford shall be deemed to have satisfied any such liability on a dollar-for-dollar basis in an amount equal to the Credit.  If Hartford has paid the Additional Payment into the Escrow Account pursuant to Section IV.C of this Agreement but has not caused the release of the Net Additional Payment to the Settlement Trust, then the Net Additional Payment shall be released from the Escrow Account to Hartford.

3.      Notwithstanding anything to the contrary herein, termination of this Agreement shall not relieve any Party of any liability on account of any material breach hereof and (2) if this Agreement is terminated after the Plan Effective Date, the provisions of Sections V.C, VI.

4. .M, VI.N, VI.O and X of this Agreement shall apply. Any statutes of limitations or repose or other time-related limitations otherwise applicable to the assertion of any Released Claim that is subject to the stand down and stay of litigation set forth in Section VI.GH.1.c and Section VI.GH.1.d of this Agreement shall be deemed to have been tolled for the period from the Execution Date through the date on which this Agreement is terminated in accordance with its terms, and no such statute of limitations or repose shall be asserted as a defense to the assertion of any such Released Claim that is timely asserted, after taking into account such tolling.

## IV. SETTLEMENT AMOUNT AND PAYMENT TERMS

A. **Settlement Amount.** In consideration of the releases and other consideration provided for herein, and subject to the terms and conditions set forth in this Agreement, Hartford shall pay the total amount of seven hundred eighty-seveneighty-seven million dollars in cash ($787,000,000.00) (the "**Settlement Amount**") in cashfree and clear of all liens, claims, or interests to the Settlement Trust as set forth below. The Settlement Amount shall not be reduced based on any settlements that the Debtors or the Settlement Trust may enter into with other insurers.

B. **Initial Payment.** Subject to the conditions precedent set forth in Section II.B of this Agreement, Hartford shall pay one hundred thirty-seven million dollars ($137,000,000.00) of the Settlement Amount (the "**Initial Payment**") to the Settlement Trust on, or as soon as reasonably practicable after, the later of (1) the date that the Debtors notify Hartford that the Plan Effective Date has occurred and (2) the date that the Debtors, the FCR and/or the Coalition

provides Hartford with payment instructions for payment to the Settlement Trust (the "**Initial Payment Trigger Date**").

C.    ~~On~~**Additional Payment.** Subject to the conditions precedent set forth in Section II.B of this Agreement, on, or as soon as reasonably practicable after, the Initial Payment Trigger Date,

~~C.~~ Hartford shall pay six hundred fifty million dollars ($650,000,000.00) of the Settlement Amount (the "**Additional Payment**") into an escrow account (the "**Escrow Account**") to be administered by an independent escrow agent acceptable to the Parties. The fees of the escrow agent, any taxes that are payable, and all other costs of the Escrow Account (such fees, taxes, and costs, collectively, the "**Escrow Costs**") shall be paid from the corpus of the Escrow Account.

D.      ~~On~~**Release Date.** Subject to the conditions precedent set forth in Section II.C of this Agreement, on, or as soon as reasonably practicable after, the Final Order Date, Hartford shall cause the Additional Payment, including any income earned or net of any losses incurred through investment of the Additional Payment while held in the Escrow Account, and net of the Escrow Costs (the "**Net Additional Payment**"), to be released from the Escrow Account to the Settlement Trust (the date on which such release occurs, the "**Release Date**"); *provided, however*, that, at its election, Hartford may (1) cause the payment of the Additional Payment directly to the Settlement Trust on, or as soon as reasonably practicable after, the Initial Payment Trigger Date or (2) cause the release of the Net Additional Payment from the Escrow Account to the Settlement Trust at any time after the Additional Payment has been made to the Escrow Account and before the Final Order Date, in which event the date on which Hartford causes the payment of the Additional Payment or release of the Net Additional Payment to the Settlement Trust shall be the Release Date.

E.      **Investment of Additional Payment.** The Settlement Trust shall have investment discretion with respect to the Additional Payment while it is in the Escrow Account, subject to Hartford's reasonable approval of the investment protocol under which the Additional Payment may be invested by the Settlement

Trust; *provided, however,* that the Settlement Trust will bear all risks associated with any such investment of the Additional Payment and that no loss or failure

to achieve desired investment returns on the Additional Payment while it is in the Escrow Account shall require Hartford to increase the Settlement Amount (or increase the amount of the BSA's contribution to the Settlement Trust under the Plan); *provided further, however*, that the Debtors, Reorganized BSA, the Local Councils, and the Chartered Organizations shall have no liability or obligations to Hartford or the Settlement Trust, the Settlement Trust shall have no liability or obligations to Hartford, and Hartford shall have no liability or obligations to the Settlement Trust (or any other Party or Entity), whatsoever for any loss or failure to achieve desired investment returns on the Additional Payment while it is in the Escrow Account.

F. **Additional Payment Terms.** The Settlement Amount shall be paid in United States currency, via wire transfer or other acceptable means at Hartford's discretion. In the event payment is due on a date that is not a Business Day, the payment shall be due on the first Business Day thereafter.

G. **Settlement Amount Is In Addition To Previous Payments.** Hartford's payment of the Settlement Amount is in addition to any and all payments that may have been paid by Hartford to or for the benefit of the Debtors prior to the Execution Date. Any and all payments made by Hartford under, arising out of, related to, or involving the Hartford BSA Policies are deemed final and irrevocable payments, except as provided for in Section III.B, Section VI.~~M~~N.3.b.ii, and Section VI.~~N~~O.1.b of this Agreement.

H. **No Reduction of Settlement Amount.** The Settlement Amount shall not be reduced by any Claims for deductions, setoffs, or charge-backs by Hartford of any kind, including Claims involving recoupment or deductibles, contribution, self-insured retentions, additional premiums, or retrospective or reinstatement premiums under the Hartford BSA Policies.

V.  **PRIOR HARTFORD SETTLEMENT AGREEMENT AND HARTFORD ADMINISTRATIVE EXPENSE CLAIM**

A.  **Payment by the Debtors of Hartford Administrative Expense Claim**. In compromise of its claims against the Debtors' Estates and in consideration of the releases and other consideration it is providing, Hartford shall be granted under the Plan an Allowed Administrative Expense Claim in the Bankruptcy Case in the amount of two million dollars ($2,000,000.00) (the "**Hartford Administrative Expense Claim**") on account of Hartford's alleged damages under or relating to the Prior Hartford Settlement Agreement. The Debtors shall pay the Hartford Administrative Expense Claim in full in cash to Hartford on, or as soon as reasonably practicable after, the Plan Effective Date. Fifty percent ($1,000,000.00) of the Hartford Administrative Expense Claim shall be treated as an Administrative Expense Claim in the calculation of the Net Unrestricted Cash and Investments under the Plan; the other fifty percent ($1,000,000.00) shall reduce the Unrestricted Cash and Investments reserved for Reorganized BSA upon its emergence from bankruptcy on the Plan Effective Date.

B.  **Termination of Prior Hartford Settlement Agreement**. Upon the later of (1) the Plan Effective Date and (2) payment by the Debtors of the Hartford Administrative Expense Claim, the Prior Hartford Settlement Agreement shall be deemed terminated, null, void, and of no further force and effect; *provided, however*, that in the event that the Debtors ~~exercise a Fiduciary Out or~~ take ~~another~~a Specified Action, the Prior Hartford Settlement Agreement shall remain in effect solely to the extent necessary to permit Hartford to assert ~~its~~the Hartford Additional Administrative Expense Claim (as set forth in  Section ~~B.~~VI.~~M~~N.3.a below).

C.  **Release of Certain Administrative Expense Claims.** Upon the Plan Effective Date, Hartford shall release the Debtors and their Estates from any Administrative Expense Claim

arising out of the Debtors' failure to seek approval of, or otherwise relating to, the Prior Hartford

Settlement Agreement, ~~and the Prior Hartford Settlement Agreement shall be deemed terminated, null, void, and of no further force and effect,~~ except for (1) the Hartford Administrative Expense Claim and (2) in the event that the Debtors take a Specified Action, as set forth in Section VI.~~M~~N of the Agreement, the Hartford Additional Administrative Expense Claim. Said release shall survive any Reversal and any termination of the Agreement~~.~~ in accordance with its terms. For the avoidance of doubt, and notwithstanding anything to the contrary contained in this Agreement, if the Plan Effective Date does not occur, and in the absence of the Debtors' taking a Specified Action, nothing in this Agreement shall release or limit (i) any right that Hartford may otherwise have to assert an Administrative Expense Claim or other claim against the Debtors and their Estates (in any such dollar amount as Hartford may conclude is justified) arising out of the Debtors' failure to seek approval of, or otherwise relating to, the Prior Hartford Settlement Agreement or on any other basis, and (ii) the Debtors' right to object on any grounds, including on the basis that the Debtors fully complied with all obligations under both the Prior Hartford Agreement and this Agreement and have no liability for any Administrative Expense Claim or other claim.

## VI. BANKRUPTCY-RELATED OBLIGATIONS

### A. Sale of Hartford ~~BSA~~ Policies

#### 1. Sale of Hartford BSA Policies

a. ~~1.~~On the Release Date, in exchange for the Settlement Amount and other consideration provided by Hartford under this Agreement, the Debtors and their Estates shall sell the Hartford BSA Policies to Hartford under the Plan pursuant to sections 363, 1123, and/or 1141 of the Bankruptcy Code (the "**Hartford BSA Policy Sale**" and, together with the Hartford Local Policy Sale as

defined in Section VI.A.2 below, the "**Sale**").

b.    2.  The ~~Sale by the Debtors to Hartford of the~~ Hartford BSA ~~Policies~~Policy Sale shall be free and clear of all Interests of any additional insured or any other Entity in the Hartford BSA Policies pursuant to section 363(f) and 1141 of the Bankruptcy Code, and the Confirmation Order and Affirmation Order shall so provide. Hartford shall be designated in the Confirmation Order as a good-faith purchaser of the Hartford BSA Policies, with all the protections afforded such a purchaser under section 363(m) of the Bankruptcy Code. The proceeds of such Sale, including the Settlement Amount, shall ~~constitute property~~be transferred to the Settlement Trust under the Plan.

c.    Without limiting the foregoing, although the Parties do not believe that the Hartford BSA Policy Sale free and clear of all Interests of any Entity in such Policies would constitute a violation of the automatic stay of any Chartered Organization that is a debtor in bankruptcy and that asserts an Interest in one or more Hartford BSA Policies, to the extent the Bankruptcy Court (or other court with jurisdiction) determines that the Sale would constitute such a violation, then the Parties shall seek a determination from the Bankruptcy Court (or other court with jurisdiction) that they may proceed with the Sale or relief from such stay to effectuate the Sale.

**2.    Assignment and Sale of Hartford Local Council Policies**

a.    To the extent the Plan, as confirmed, or any Insurance Settlement Agreement approved by the Bankruptcy Court provides that the Local Councils will assign Local Council Insurance Policies issued by any Settling Insurance Company to the Debtors' Estates and that the Debtors and their Estates will sell such

Policies to such Settling Insurance Company free and clear of all Interests of any

Entity in

such Policies, and to the maximum extent permitted by applicable law, the Local Councils and Hartford consent to the assignment of the Hartford Local Council Policies to the Debtors' Estates, and the Local Councils shall assign the Hartford Local Council Policies to the Debtors' Estates prior to the Plan Effective Date.

b.    To the extent such assignment of the Hartford Local Council Policies occurs, the Debtors and their Estates shall sell the Hartford Local Council Policies, along with the Hartford BSA Policies, to Hartford on the Release Date, in exchange for the Settlement Amount and other consideration provided by Hartford under this Agreement, pursuant to sections 363, 1123, and/or 1141 of the Bankruptcy Code (the **"Hartford Local Council Policy Sale"**).

c.    The Hartford Local Council Policy Sale shall be free and clear of all Interests of any additional insured or any other Entity in the Hartford Local Council Policies pursuant to section 363(f) and 1141 of the Bankruptcy Code, and the Confirmation Order and Affirmation Order shall so provide. Hartford shall be designated in the Confirmation Order as a good-faith purchaser of the Hartford Local Council Policies, with all the protections afforded such a purchaser under section 363(m) of the Bankruptcy Code. The proceeds of the Sale, including the Settlement Amount, shall be transferred to the Settlement Trust under the Plan.

3. Without limiting the foregoing, although the Parties do not believe that the Hartford Local Council Policy Sale of the Hartford BSA Policies free and clear of all Interests of any Entity in such Policies would constitute a violation of the automatic stay of any Chartered Organization that is a debtor in bankruptcy and that asserts an Interest in one or more Hartford BSA Local Council Policies, to

the extent the Bankruptcy    Court

(or other court with jurisdiction) determines that the Sale would constitute such a violation, then the Parties shall seek a determination

from the Bankruptcy Court (or other court with jurisdiction) that they may proceed with the Sale or relief from such stay to effectuate the Sale.

B. **Releases.** Upon the Release Date, the Parties shall receive the benefit of the releases of and by the Parties, the Debtors' Estates, Reorganized BSA, the Settlement Trust, the Local Councils, and the other Protected Parties and Limited Protected Parties, as set forth in ~~Sections~~Section VII below; *provided, however,* that the Hartford Protected Parties shall receive the benefit of the Debtors' release of the Prepetition Hartford Claims when Hartford makes the Initial Payment.

~~A. and VII.B below.~~

C. **Local Councils.** The Debtors and AHCLC shall ensure that, within thirty (30) calendar days of the Execution Date, ~~any~~each current Local Council, including those listed on Exhibit G to the Modified Fifth Amended Plan, becomes a Joining Local Council by executing a joinder to this Agreement in the form attached as Exhibit D.

D. **Chartered Organizations**. ~~Under the Plan, the Debtors, the Coalition, the FCR and the Settlement Trust shall secure an~~ The Hartford Protected Parties shall be protected under the Plan and Confirmation Order against liability, loss, or expense with respect to any Claim by any Chartered Organization arising out of or relating to coverage for Abuse Claims under any Hartford Policy or any other insurance policy issued or allegedly issued by any Hartford Protected Party to the extent provided under the Plan, whether through the Channeling Injunction, other injunctive protection, assignment of such Claims to the Settlement Trust ~~of~~, ~~or otherwise resolve to~~releases, and/or any other method in accordance with applicable law and agreed to by the Parties~~' satisfaction~~, as incorporated into the Plan; *provided, however*, that the rights of any Opt-Out Chartered Organizations~~' rights or claims to coverage under the Hartford Policies. The Debtors, the Coalition, and the FCR shall use their best efforts to settle with the~~ provided under

insurance policies issued directly to any Opt-Out Chartered Organizations. are preserved, and

provided further that the Hartford Protected Parties and the Opt-Out Chartered Organizations may enforce and rely upon the channeling and release of Abuse Claims against an Opt-Out Chartered Organization as and to the extent provided for in the Plan, including under the Channeling Injunction. For the avoidance of doubt, nothing herein or in the Plan shall require an Opt-Out Chartered Organization to provide an assignment or release with respect to its rights under insurance policies issued directly to such Opt-Out Chartered Organization. Without limiting the foregoing, the Hartford Protected Parties shall receive protections against such Claims by Chartered Organizations equal in breadth to the broadest protections received by any other Settling Insurance Company under the Plan as confirmed by the Bankruptcy Court, the Confirmation Order, or any Insurance Company Settlement approved by the Bankruptcy Court. Abuse Claims under insurance policies issued directly to Chartered Organizations shall be handled in accordance with Article X.G.1 of the Plan.

E. **Judgment Reduction**. In the event that any other insurer obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from any Hartford Protected Party as a result of a Claim for contribution, subrogation, indemnification or other similar Claim for any Hartford Protected Party's alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation for any Abuse Claim or for any Released Claim, the Settlement Trust shall voluntarily reduce its judgment or Claim against, or settlement with, such other insurer(s) to the extent necessary to eliminate such contribution, subrogation, indemnification or other similar Claim against any Hartford Protected

Party. To ensure that such a reduction is accomplished, any Hartford Protected Party shall be entitled to assert this paragraph as a defense to any action against it for any such portion of the judgment or Cause of Action and shall be entitled to have the court or appropriate tribunal issue

such orders as are necessary to effectuate the reduction to protect any Hartford Protected Party from any liability for the judgment or Claim.

F. **Findings and Determinations**. Subject to modification by the Debtors, the Coalition, and the FCR, the Plan and/or Confirmation Order may include each of the findings and determinations set forth in Article IX.A.3.j, Article IX.A.3.~~q~~l, Article IX.A.3.~~r~~w, Article IX.A.3.~~s~~x, Article IX.A.3.y, Article IX.A.3.z, and Article IX.A.3.~~t~~aa of the Third Modified Fifth Amended Plan (as the same may be amended or modified from time to time, the "**Findings and Determinations**"). Hartford shall not object to, or take any action in support of any Entity that objects to, the Findings and Determinations. The Plan and/or the Confirmation Order shall state that the Hartford ~~is a~~Protected Parties are Settling Insurance ~~Company~~Companies and shall further state that the Findings and Determinations are not binding on any Hartford Protected Party. The Plan and Confirmation Order shall also provide that Hartford's agreement herein not to object to the entry of the Findings and Determinations does not indicate Hartford's support for the Findings and Determinations, and no party shall argue in any proceeding that any Hartford Protected Party agreed to or acquiesced in the Findings and Determinations.

G. **Trust Distribution Procedures**. Subject to modification by the Debtors, the Coalition, and the FCR, the Trust Distribution Procedures may be in the form attached as Exhibit A to the Third Modified Fifth Amended Plan.~~Except as otherwise consented to by the parties, the form of release attached to the~~; *provided that* the Trust Distribution Procedures ~~as Exhibit A, Exhibit B, Exhibit C, and Exhibit D shall be in the form attached hereto as Exhibit F-1, Exhibit F-2, Exhibit F-3, and Exhibit F-4~~shall require each Trust Payee to release and grant protections to the Hartford Protected Parties as set out in Section VII.F below. Hartford shall not object to the Trust Distribution Procedures but may add a statement in the

Plan (or request that a statement be included in the Confirmation Order) that Hartford is a Settling Insurance Company and, as a result, takes no position on the Trust Distribution Procedures. Hartford shall not object to the selection of the Settlement Trustee as

provided in the Plan and Settlement Trust Agreement. Hartford shall not participate in or otherwise interfere with the administration of the Settlement Trust.

**H.** **Cooperation and Agreement to Stand Down from Litigation Prior To Release Date.**

1.  **Obligations of Parties.**

a. The Parties, Joining State Court Counsel, and Joining Local Councils shall cooperate in good faith to ensure that the Plan, Confirmation Order, and Affirmation Order contain the provisions set forth in Section II.B.2 above; are in form and substance acceptable to the Parties as they pertain to this Agreement; are entered by the Bankruptcy Court (in the case of the Confirmation Order) and the District Court (in the case of the Affirmation Order); and become Final Orders.

b. The Debtors shall not file, and the Parties, Joining State Court Counsel, and Joining Local Councils shall not support, any bankruptcy plan of reorganization that does not contain the provisions set forth in Section II.B.2 of this Agreement or is otherwise inconsistent with the terms of this Agreement.

c. The Debtors, their Estates, the other Parties, Reorganized BSA, the Settlement Trust, the Joining State Court Counsel, and the Joining Local Councils shall not pursue or seek to enforce or directly or indirectly recover or obtain payment on any Released Claim against any Hartford Protected Party and, prior to

64

the Release Date, shall cooperate in obtaining a stay of any pending litigation relating to any Released Claim against any Hartford Protected Party.

d.     Hartford shall not pursue or seek to enforce or directly or indirectly recover or obtain payment on any Released Claim against the Debtors, their Estates,

~~d~~any other Party, Reorganized BSA, the Settlement Trust, the Joining State Court Counsel, or the Local Councils, and, prior to the Release Date, shall cooperate in obtaining a stay of any pending litigation relating to any Released Claim against the Debtors, their Estates, any other Party, Reorganized BSA, the Settlement Trust, or the Local Councils.

2.       **Effective Date of Obligations Under This Section.** Without limiting the effectiveness of any other provision of this Agreement, the obligations of the Parties, Joining State Court Counsel, and Joining Local Councils under this Section VI.~~G~~H shall become effective on the Execution Date and shall be binding on such Parties (including the Debtors), Joining State Court Counsel, and Joining Local Councils from and after such date (or, with respect to Joining State Court Counsel or Joining Local Councils that executed a joinder to this Agreement after the Execution Date, from and after the date of execution of such joinder) unless and until this Agreement is terminated in accordance with its terms, and such obligations shall not be contingent on entry of a Confirmation Order or other order of the Bankruptcy Court approving this Agreement.

I.       **Bankruptcy Notices**. ~~In addition to any other service that may be required, the~~The Debtors ~~shall serve~~represent and warrant that (1) they have served by mail notice of the Plan and the Confirmation Hearing in the manner specified in the Solicitation Procedures Order~~.~~ ~~In addition, the Debtors shall publish~~; (2) they have published notice of the Confirmation Hearing in *The New York Times*, *The Wall Street Journal*, *USA Today*, and in certain

other print publications and via online advertising. The Debtors shall also serve; and (3) they have served by mail the Plan Supplement Notice, which shall provideprovided notice of this Agreement and the subject matter thereof (in form and substance reasonably acceptable to Hartford), on all Entities that have requested notice in the Bankruptcy Case under Bankruptcy Rule 2002 and on all holders of Claims entitled to vote on the Plan (and any additional parties identified

by Hartford). The Debtors may, in their discretion, and Hartford may require the Debtors to, further provide actual and publication notice of this Agreement and the subject matter thereof in connection with providing notice of the Plan Effective Date on parties in interest or otherwise. All capitalized terms used but not otherwise defined in this Section VI.HI shall have the meanings ascribed to such terms in the Solicitation Procedures Order.

J.      **Objections to Plan**. Hartford shall not object to the Plan, the Plan documents, the Settlement Trust Agreement, or the Trust Distribution Procedures (and shall withdraw any pending objections) so long as the Hartford Protected Parties are included as Protected Parties, in their capacity as Settling Insurance Companies, in the Plan, and the Plan and all documents, exhibits, and schedules attendant thereto (including the Settlement Trust Agreement and the Trust Distribution Procedures) are otherwise consistent with the terms of this Agreement.

K.      **Voting**.   Hartford agrees to (1) timely vote its Indirect Abuse Claim (Claim   No. 8176 filed by First State Insurance Company) and any other Claims held by it or its affiliates to accept the Plan and not change or revoke its votes (subject to Hartford's receipt of a Bankruptcy Court-approved Disclosure Statement for the Plan) and (2) not "opt out" of the third-party releases contained in the Plan, so long as the Hartford Protected Parties are included as Protected Parties, in their capacity as such as Settling Insurance Companies, in the Plan, and the Plan (including the

Settlement Trust Agreement and the Trust Distribution Procedures)~~, are~~ is otherwise consistent with the terms of this Agreement.

L. **Discovery**. All other Parties shall as soon as practicable withdraw any pending discovery requests directed at Hartford and, so long as the Agreement has not been terminated, shall not seek additional discovery from Hartford. Hartford shall as soon as practicable withdraw any pending discovery requests directed at any holder of an Abuse Claim represented by a Party

~~L.~~ or the Joining State Court Counsel, representatives of such holders that are a Party or Joining State Court Counsel, funders or vendors utilized by representatives of such holders that are a Party or Joining State Court Counsel, the Coalition (including law firms and attorneys associated therewith), and the FCR, and so long as the Agreement has not been terminated in accordance with its terms, Hartford shall not seek any additional discovery from such parties, the Debtors, the AHCLC, or the Local Councils without the consent of the Debtors, the AHCLC, the Coalition, and the FCR to such additional discovery. Notwithstanding the foregoing, Hartford shall cooperate and comply with any information requests from the Debtors, the Coalition, and the FCR to the extent such information is not protected from disclosure and is reasonably necessary in support of confirmation of the Plan; *provided, however*, that if the results of this process do not resolve and satisfy said information requests, the Debtors, the Coalition, or the FCR shall have the right to submit the dispute to ~~one or both of Mediators Hon. Kevin J. Carey (Ret.) and Timothy V.P. Gallagher~~<u>mediation</u>, and the Parties agree to be bound by such ~~Mediator's or Mediators'~~<u>mediator's</u> decision regarding such dispute.

M.     **Public Statements**. The Parties, Joining State Court Counsel, and Joining Local Councils shall cooperate with each other in good faith to coordinate on the timing and substance of public statements regarding the settlement set forth in this Agreement, including press releases,

court filings, and in-court statements. Hartford shall make no statements about holders of Abuse Claims or any representative thereof; *provided, however*, that Hartford may make statements in the Bankruptcy Case (or otherwise) to protect its rights, including statements in response to objections or statements asserted in the Bankruptcy Case (or otherwise) by holders of Abuse Claims and their representatives concerning Hartford.

N. **Fiduciary Obligations; Exercise and Consequences of Fiduciary Out**.

1. **Fiduciary Obligations of the Debtors and FCR.** Notwithstanding anything in this Agreement to the contrary, no term or condition of this Agreement shall require the Debtors (following consultation with the FCR and the Coalition) or the FCR to take or refrain from taking any action that it or they determine in good faith would be inconsistent with its or their respective fiduciary duties under applicable law (the right to take or refrain from taking any such action, a **"Fiduciary Out"**). If the FCR exercises a Fiduciary Out, this Agreement does not terminate (unless Hartford or the Debtors elect to terminate this Agreement pursuant to Section III.A above), and the other Parties may continue to perform under the Agreement.

2. **Opposition of Tort Claimants' Committee.** The Debtors and the FCR each (a) understands that the Tort Claimants' Committee is not a party to this Agreement and may object to the Agreement or Plan or may seek to file a competing plan of reorganization that is inconsistent with this Agreement and the Plan and (b) nevertheless believes, as of the Execution Date, that entering into the Agreement is an appropriate exercise of its respective fiduciary duties under applicable law.

3. **Consequences of Exercise of a Specified Action.**

a. If, before or after the Plan Effective Date, the Debtors (1) exercise a Fiduciary Out; (2) fail to seek ~~or support~~ confirmation of the Plan or the entry of the

Confirmation Order or Affirmation Order, or to seek to have the Plan Effective Date occur; or

(3) (3) fail to take all reasonable actions to defend confirmation of the

Plan against any appeals or other challenges (provided that such reasonable actions

shall not include initiating an appeal or otherwise seeking review of any   decision

denying (or reversing) confirmation or affirmation of the Plan, or precluding the Plan Effective Date from occurring, beyond the United States Court of Appeals for the Third Circuit) and, with respect to a failure described in clause (2) or (3) of this sentence, such failure remains uncured (to the extent curable) for a period of fifteen (15) business days following the Debtors' receipt of notice thereof served in accordance with Section XIV.K of this Agreement (each such action or inaction described in clause (1), (2), or (3) of this sentence, a "**Specified Action**"), then:

    i. If the Debtors exercise a Fiduciary Out, the Agreement shall terminate automatically as provided in Section III.A.5 of this Agreement;

    ii. ~~i.The Agreement shall terminate automatically as provided in Section III.A.6 if~~If the Debtors ~~exercise~~take a Specified Action other than exercising a Fiduciary Out~~or~~, the Agreement may be terminated by Hartford as provided in Section III.A.2 ~~if the Debtors take any other Specified Action.~~of this Agreement; and

    ~~ii.Whether or not the Agreement is terminated in accordance with Section III.A~~If the Debtors take any Specified Action, , Hartford may assert an Administrative Expense Claim (in addition to the Hartford Administrative Expense Claim) of twenty-three million, six hundred ten thousand dollars ($23,610,000.00) (the "**Agreed Amount**," with such claim being the "**Hartford Additional Administrative Expense Claim**"), which shall be reserved for prior to distributions to unsecured creditors. The other Parties, Joining State Court Counsel, and Joining Local Councils shall not object to the Hartford Additional Administrative Expense Claim or argue

that such Claim should be allowed in an amount less than the Agreed Amount unless they reasonably contend that no Specified Action has occurred (and each of the Debtors, Hartford, the other Parties, Joining State

Court Counsel, and Joining Local Councils reserve all rights and defenses with respect to whether a Specified Action has occurred); *provided, however*, that if the occurrence of a Specified Action is due to the enactment of congressional legislation prohibiting non-debtor releases (and such prohibition is not explicitly applicable only to bankruptcy cases filed after the enactment of such legislation), Hartford may not assert the Hartford

Additional Administrative Expense Claim. ~~If the Debtors take a Specified Action,~~ Hartford shall not assert <u>any claim</u> against the Debtors or their Estates ~~any claim~~<u>on account of the Debtors' taking a Specified Action</u> other than the Hartford Additional Administrative Expense Claim ~~(and the Hartford Administrative Expense Claim),~~ and shall not seek the Hartford Additional Administrative Expense Claim in an amount greater than the Agreed Amount<u>, provided that Hartford's assertion of the Hartford Additional Administrative Expense Claim shall not affect Hartford's entitlement to receive or retain the Hartford Administrative Expense Claim</u>.

b.	Notwithstanding anything to the contrary contained in this Agreement, if~~, after the Plan Effective Date,~~ the Debtors take a Specified Action~~,~~ and ~~Hartford terminates~~ the Agreement <u>is terminated</u> due to such Specified Action, then:

i.	Hartford shall nevertheless be entitled to <u>receive or</u> retain<u>, as applicable,</u> the payment by the Debtors' Estates to Hartford of the Hartford Administrative Expense Claim; and

ii.	Hartford shall be entitled to ~~a credit against any liability~~<u>any Hartford Protected Party may have under any Hartford Policies on account of any Claim for Abuse relating in whole or in part to Scouting, which credit shall be equal to the amount of the Initial Payment plus, if Hartford has caused the payment of the Additional Payment or caused the release of~~the~~<u>the Credit and, if applicable, shall receive</u> the Net Additional Payment ~~to the~~

~~Settlement Trust, the amount of the Additional Payment (such credit in such amount, the **"Credit"**), such that Hartford shall be deemed to have satisfied any such liability on a dollar-for-dollar basis in an amount equal to the Credit. If Hartford has paid the Additional Payment into~~<u>from</u> the Escrow Account ~~but has not caused the~~<u>as set forth in Section III.B.2 above.</u>

release of the Net Additional Payment to the Settlement Trust, then the Net Additional Payment shall be released from the Escrow Account to Hartford.

4.    **Cooperation.** The ~~Parties, the~~ Settlement Trust, the Joining State Court Counsel, and the Joining Local Councils shall cooperate in good faith and use best efforts to ensure that Hartford may obtain the benefit of the Hartford Administrative Expense Claim and the Credit and the release of the Net Additional Payment from the Escrow Account to Hartford~~.~~, if applicable, including by supporting (if reasonably requested by Hartford) the entry of orders of the Bankruptcy Court, in addition to the Confirmation Order, approving and enforcing or giving effect to the Hartford Administrative Expense Claim, the Credit, and such release of the Net Additional Payment.

5.    **Survival**. The provisions of this Section VI.~~M~~N shall survive any Reversal, the Debtors' taking of any Specified Action, and any ~~resulting~~ termination of this Agreement, and shall be binding on the Parties, the Joining State Court Counsel, the Joining Local Councils, the Debtors' Estates, the Settlement Trust, and any trustee or other representative of the Debtors or their Estates (or of any estates of the Debtors under Chapter 7 of the Bankruptcy Code if the Bankruptcy Case is converted into a case under Chapter 7 of the Bankruptcy Code).

**O.**    **Effect of Reversal of Confirmation Order or Affirmation Order ~~Following the Plan Effective Date~~.**

1.    In the event that the Confirmation Order or Affirmation Order is reversed or vacated on appeal ~~following the Plan Effective Date,~~ in whole or in material part (including with respect to the terms of the Agreement identified as conditions precedent in Section II of this Agreement), either before the Release Date or (if the Release Date occurs

before the Final Order Date) after the Release Date (a **"Reversal"**), then:

a.      Hartford shall nevertheless be entitled to receive or retain, as applicable, the payment by the Debtors' Estates to Hartford of the Hartford Administrative Expense Claim; and

b.      Hartford shall be entitled to the Credit and, if applicable, shall receive the Net Additional Payment from the Escrow Account as set forth in Section ~~VI.M.3.b.ii above.~~

III.B.2 above.

2.      The Parties, Joining State Court Counsel, and Joining Local Councils shall cooperate in good faith to ensure that Hartford may obtain the benefit of the <u>Hartford Administrative Expense Claim and the </u>Credit and the release of the Net Additional Payment from the Escrow Account to Hartford, if applicable, ~~as set forth in Section VI.M.3.b.ii above.~~<u>including by supporting (if reasonably requested by Hartford) the entry of orders of the Bankruptcy Court approving and enforcing or giving effect to the Hartford Administrative Expense Claim, the Credit, and such release of the Net Additional Payment.</u>

3.      Nothing in this Section or elsewhere in this Agreement shall bar any of the Parties, Joining State Court Counsel, or Joining Local Councils from arguing that any appeal from the Confirmation Order or Affirmation Order should be dismissed on grounds of statutory or equitable mootness or otherwise.

4.      ~~Survival.~~ The provisions of this Section VI.~~N~~<u>O</u> shall survive any Reversal, the Debtors~~'~~<u>"</u> taking of any Specified Action, and any ~~resulting~~ termination of this Agreement, and shall be binding on the Parties, the Joining State Court Counsel, the Joining Local Councils, the Debtors' Estates, the Settlement Trust, and any trustee or other representative of the Debtors or their Estates (or of any estates of the Debtors under Chapter 7 of the Bankruptcy Code if the Bankruptcy Case is converted into a case under Chapter 7 of the Bankruptcy Code).

P.  **Transfer of Rights and Obligations to Settlement Trust.** On the Plan Effective Date, the rights and obligations of the Debtors and their Estates under this Agreement shall be deemed to have been assigned and transferred to the Settlement Trust without need of further action by any Entity, and the Settlement Trust shall be bound by all of the provisions of this Agreement. Reorganized BSA

shall continue to be bound by this Agreement and shall retain the obligations and benefits expressly provided for hereunder to the extent consistent with the Plan.

## VII. RELEASES

A. **Release of Hartford.** Upon the Release Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, their Estates, Reorganized BSA, the Settlement Trust, the AHCLC, the Joining Local Councils, the Coalition, the FCR and each of the foregoing Entities' Affiliates shall each (1) fully and forever release and discharge and be deemed to release and discharge the Hartford Protected Parties from any and all Released Claims; *provided, however,* that that the foregoing release of the Hartford Protected Parties shall not apply with respect to Claims by Chartering Organizations that opt out of being designated a Participating Chartered Organization in accordance with the Plan, and (2) withdraw, or be deemed to have withdrawn, any and all requests, demands, or tenders for defense or indemnity related to any Released Claims and previously submitted to any Hartford Protected Party. Furthermore, the Confirmation Order shall provide that, on the Release Date, all other Protected Parties and Limited Protected Parties shall fully and forever release and discharge and be deemed to release and discharge the Hartford Protected Parties from any and all Released Claims to the maximum extent permitted by law and to the same extent such other Protected Parties and Limited Protected Parties release and discharge or are deemed to release and discharge any other Settling Insurance Company under the confirmed Plan, the Confirmation Order, or any applicable Insurance Settlement Agreement approved by the Bankruptcy Court. Except as otherwise provided in this Agreement, the release of the Hartford Protected Parties shall not affect any Claims of the Debtors, their Estates, Reorganized BSA, the Settlement Trust, the AHCLC, the

A. Joining Local Councils, the Coalition, the FCR, other Protected Parties, the Limited Protected Parties, the Coalition, and the FCRor Chartered Organizations against other Insurance Companies or with respect to the Hartford Non-Abuse Insurance Policies.

B. **Release by Hartford.** Upon the Release Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Hartford Protected Partiesand its Affiliates shall fully and forever release and discharge and be deemed to release and discharge each of the Debtors, their Estates, Reorganized BSA, the Settlement Trust, the AHCLC, the Joining Local Councils, the Coalition, the FCR, and each of the foregoing Entities' Affiliates from any and all Released Claims. Furthermore, the Plan shall provide that, on the Release Date, Hartford shall release the Protected Parties (including the Local Councils, the Related Non-Debtor Entities, the Settling Insurance Companies, the Contributing Chartered Organizations, and all, and Hartford and its Affiliates shall fully and forever release and discharge and be deemed to release and discharge any other Protected Parties) and the

Party or

Limited Protected ~~Parties from the Released~~ Party of any Released Claims to the same extent that such other Protected Party or Limited Protected Party releases and discharges or is deemed to release and discharge the Hartford Protected Parties of such Released Claims; *provided, however,* that ~~the foregoing release by the Hartford Protected Parties shall not apply with respect to Claims by Chartering Organizations that opt out of being designated a Participating Chartered Organization in accordance with the Plan, and *provided, further,* that~~ nothing herein shall release Hartford's right to payment of the Hartford Administrative Expense Claim or the Hartford Additional Administrative Expense Claim pursuant to the terms of this Agreement.

C.      **Release by Debtors of Prepetition Hartford Claims.** Simultaneously with Hartford's making the Initial Payment, the Debtors and their Estates shall fully and forever release and discharge and be deemed to release and discharge the Prepetition Hartford Claims. Notwithstanding anything to the contrary in this Agreement, once the Initial Payment has been made, such release shall be irrevocable even in the case of a termination of this Agreement or a Reversal of the Confirmation Order; *provided, however,* that the release of the Prepetition Hartford Claims shall not bar the Debtors from taking the position, if Hartford is otherwise entitled to the Credit, that a portion of the Credit should be applied to the Prepetition Hartford Claims, in which

event both the Debtors (or any successor or assignee) and Hartford shall reserve all rights as to the amount of the Credit, if any, to be applied to the Prepetition Hartford Claims and the appropriate forum, including a court of competent jurisdiction, for the resolution of any dispute between the Debtors and Hartford as to that amount. Such settlement and release of the Prepetition Hartford Claims, as well as the approval of the Hartford Administrative Expense Claim and the Credit, is a severable agreement in case of a Reversal and will be approved both by the Confirmation Order and, if requested by Hartford, a separate order that shall survive independently in the event of a Reversal.

D. ~~C.~~ **Incorporation into Plan**. The releases contained in ~~Paragraph~~this Section VII.~~A. and VII.B.~~ shall be incorporated into the Plan ~~in full~~by reference and shall supplement, and not supersede or restrict, any other releases contained in the Plan.

E. ~~D.~~ **Dismissal of Claims in Coverage Actions.** Within five (5) Business Days after the Release Date, the Debtors, their Estates, Reorganized BSA, the Settlement Trust, and the Local Councils shall each dismiss any and all Claims (if any) they have asserted against any Hartford Protected Party in the Coverage Actions, and Hartford shall dismiss any and all Claims (if any) it has asserted against the Debtors, their Estates, Reorganized BSA, the Settlement Trust, and the Local Councils in the Coverage Actions. Such dismissals shall be with prejudice, with each party to bear its own fees and costs. For the avoidance of doubt, the dismissal of Claims against the Hartford Protected Parties pursuant to this Section VII.~~C~~E shall not require the dismissal of any other Claims asserted in the Coverage Actions that are permitted to be asserted in accordance with Section VII.A of this Agreement against any other Insurance Company or Entity that is not a party to this Agreement.

F. ~~E.~~ **Releases to Be Provided by Trust Payees**. Under the Plan and the Trust Distribution Procedures, the Hartford Protected Parties shall receive and shall be deemed to receive a full and final release and protections from each Trust Payee (which release and protections shall be executed by each Trust Payee as a precondition to receiving any payment from the Settlement Trust) that (1) will be equal in breadth to the broadest release and protections received by the Debtors, any Local Council, any Chartered Organization, or any other Settling Insurance Company from Trust Payees under the Plan as confirmed by the Bankruptcy Court, the Confirmation Order, or any applicable Insurance Settlement Agreement approved by the Bankruptcy Court and (2) will ensure that no Entity, including any Chartered Organization, may assert a Claim that arises out of or relates to any Trust Payee's Abuse Claim against any Hartford Protected Party in connection with (a) any Hartford Policy, or (b) any other policy issued or allegedly issued by any Hartford Protected Party that covers Abuse Claims, including a policy issued to a Chartered Organization. Without limiting the foregoing, as a precondition to receiving any payment from the Settlement Trust, each Trust Payee shall release and be deemed to release any Entity, including any Chartered Organization, with respect to any Abuse Claim to the extent such Entity is or claims to be entitled to coverage from any Hartford Protected Party for such Abuse Claim, including under a Hartford Policy or an insurance policy issued or allegedly issued to the Entity. Except as otherwise consented to by the ~~parties,~~ Parties, such Trust Payee Releases shall be in the form ~~of release~~ attached to the Trust Distribution Procedures as Exhibit A, Exhibit B, Exhibit C, and Exhibit D ~~shall be in the form attached hereto as Exhibit F-1, Exhibit F-2, Exhibit F-3, and Exhibit F-4.~~

G. ~~F.~~ **Unknown or Future Claims.** The Parties and the Joining Local Councils expressly acknowledge that there may be changes in the law and/or that they may hereafter

discover facts different from, or in addition to, those that they now believe to be true with respect to any and all of the Claims released in this Section VII. Nevertheless, the Parties and the Joining

Local Councils hereby agree that the releases set forth in this Section VII shall be and remain effective in all respects, notwithstanding any changes in the law and/or the discovery of such additional or different facts. In addition, the Parties and the Joining Local Councils acknowledge that they have been advised by their respective legal counsel and are familiar with the provisions of Section 1542 of the California Civil Code, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

H. ~~G.~~ **Liberalization of Releases.** ~~If another Settling Insurance Company receives broader releases of or protections against Claims under its Abuse Insurance Policies than those provided to the~~ **and Other Protections**. The Hartford Protected ~~Parties in the Agreement or the Plan, then the Hartford Protected~~ Parties shall receive releases of, ~~and~~ injunctive and other protections against ~~Claims under the Hartford Policies that are at least as broad as the~~ Abuse Claims and any other Claims by any Entity relating to any Hartford Protected Party's provision of insurance covering Abuse Claims, that are equal in breadth to the broadest releases and injunctive and other protections ~~of Claims under that~~ afforded to any other Settling Insurance ~~Company's Abuse~~ Company under the confirmed Plan, Confirmation Order, or any applicable Insurance ~~Policies~~ Settlement Agreement approved by the Bankruptcy Court.

I. ~~H.~~ **Agreement Rights and Obligations Not Affected.** The releases set forth in this Agreement are not intended to, shall not, and shall not be deemed to, extend to or otherwise release or discharge any rights, privileges, benefits, duties, or obligations of the Parties or the Joining Local Councils by reason of, or otherwise arising under, this Agreement, the Plan, the

Confirmation Order, or the Affirmation Order.

J.    ~~I.~~ This Agreement resolves the disputes raised in BSA's August 26, 2021 letter, sent by Jessica Lauria, counsel for BSA, to James P. Ruggeri, counsel for Hartford, and Hartford's August 27, 2021 response to BSA, sent by Mr. Ruggeri to Ms. Lauria.

## VIII. CONTRIBUTION CLAIMS

A.    Except as otherwise provided in this Agreement, Hartford agrees that it will not assert or file a Claim, and will dismiss any pending Claim upon the Release Date, seeking contribution, indemnity, and/or defense against another Entity in order to recover any portion of the Settlement Amount to be paid by Hartford under this Agreement, or other amounts previously paid by one of the Hartford Protected Parties to or on behalf of the Debtors, Chartered Organizations, or Joining Local Councils under or with respect to the Hartford Policies, or with respect to the Released Claims.

B.    However, nothing herein shall preclude a Hartford Protected ~~Parties~~Party from filing, asserting or continuing to pursue ~~such~~ a Claim seeking contribution, indemnity~~,~~ or defense in the event another insurer or other Entity asserts or has asserted a Claim for contribution or indemnity against a Hartford Protected Party, provided that, to the extent that a Hartford Protected Party recovers from that other insurer or that other Entity, the proceeds of such recovery shall be paid by such Hartford Protected Party per the instruction of the Settlement Trust or, if no Settlement Trust has been formed, the Debtors, after such Hartford Protected Party is reimbursed from such proceeds for its reasonable fees and costs incurred ~~after the Approval Date~~ in defending the Claim asserted against such Hartford Protected Party and prosecuting its Claim against that other insurer or that other Entity.

C.    Notwithstanding the foregoing, nothing contained in this Agreement shall be construed to prohibit Hartford from making a Claim against any reinsurer (with respect to the

Settlement Amount or otherwise) or from pursuing recovery from any reinsurer in its capacity as such, regardless of the identity or affiliation of the reinsurer.

D.      To the extent that the Debtors, their Estates, or any assignee, successor, or any other Entity formed to assume the Debtors' liability for Abuse Claims ~~or Post-1975 Chartered Organization Abuse Claims~~, including the Settlement  Trust,

~~D.~~ settles Claims arising out of Released Claims with any other Insurance Company or other Entity, the Debtors, their Estates, or any such assignee, successor, and/or other Entity, including the Settlement Trust, shall use its or their best efforts to obtain a waiver of that other Insurance Company's or Entity's Claims seeking contribution, indemnity, and/or defense costs from any of the Hartford Protected Parties based upon, arising out of, or in any way related to such Claims. Such waiver may be accomplished by an assignment of such Claims to the Settlement Trust, whereupon such Claims will be subject to the releases set forth in Section VII herein.

## IX.    NO BENEFIT TO THIRD PARTIES

~~Except with respect to terms of this Agreement that are incorporated into the Plan, this~~<ins>This</ins> Agreement is intended to confer rights and benefits only on the Parties to the Agreement, the Hartford Protected Parties, Joining State Court Counsel, and Joining Local Councils.     No other Entity shall have any legally enforceable rights or benefits under this Agreement, except for the Parties' respective successors and assigns as permitted hereunder, including the Settlement Trust. Except as provided herein, no Party, Joining State Court Counsel, or Joining Local Council may assign this Agreement or any of its rights, benefits, or obligations hereunder without the prior written consent of all other Parties hereto, which consent shall not    be unreasonably withheld.

## X.    NO ADMISSIONS AND NON-ADMISSIBILITY OF THE AGREEMENT

Nothing contained in this Agreement, or in any negotiations, discussions, correspondence or other materials of any kind relating to this Agreement or relating to the negotiation of this Agreement, shall be deemed to be an admission on the part of the Parties, the Hartford Protected Parties, Joining State Court Counsel, or Joining Local Councils with respect to any matter or any factual or legal issue of any kind. Except as may be necessary to enforce the terms of this Agreement, or except as may be necessary or useful in the pursuit by Hartford of a reinsurance

recovery for sums to be paid under this Agreement, neither this Agreement itself, nor any negotiations, discussions, correspondence, or other materials of any kind relating to this Agreement or relating to the negotiation of this Agreement, shall be discoverable or admissible in any legal or equitable proceeding of any kind, including any lawsuit, mediation, arbitration, administrative proceeding or action, or any other proceeding or action of any kind.

## XI.  BINDING EFFECT OF AGREEMENT

All terms and provisions of this Agreement shall be binding on, and shall inure to the benefit of, the Parties, Joining State Court Counsel, and Joining Local Councils and their respective successors and assigns, including the Settlement Trust.

## XII.  DISPUTE RESOLUTION

If any dispute should arise concerning the terms, meaning, or implementation of this Agreement, ~~or if a precondition set forth in Section occurs,~~ the Parties, Joining State Court Counsel, and Joining Local Councils agree to use their best efforts to reach a prompt resolution of such dispute. If the Parties, Joining State Court Counsel, and Joining Local Councils are unable to reach an agreement, they shall proceed to mediation ~~before the Mediators Hon. Kevin J. Carey (Ret.) and Timothy V.P. Gallagher~~. Any Party, Joining State Court Counsel, or Joining Local Council may initiate litigation in the Bankruptcy Court to the extent the Bankruptcy Court has

subject-matter jurisdiction, or to the extent it does not, in any other appropriate forum, but no Party, Joining State Court Counsel, or Joining Local Council may initiate litigation until forty-five (45) calendar days after a mediation has commenced. All of the Parties, Joining State Court Counsel, and Joining Local Councils consent to personal jurisdiction in any federal court (including the Bankruptcy Court) or state court in the State of Delaware for purposes of resolving any dispute concerning the terms, meaning, or implementation of this Agreement.

## XIII. CONSTRUCTION OF AGREEMENT

A.     The Parties, Joining State Court Counsel, and Joining Local Councils represent and acknowledge that they have participated in the preparation and drafting of this Agreement or have each given their approval to all of the language contained in this Agreement, and it is expressly agreed and acknowledged that if any of the Parties, Joining State Court Counsel or Joining Local Councils later asserts that there is an ambiguity in the language of this Agreement, such asserted ambiguity shall not be presumptively construed for or against any other Party, Joining State Court Counsel, or Joining Local Council on the basis that one Party, Joining State Court Counsel, or Joining Local Council drafted the language of this Agreement or played a greater role in the drafting of the language.

B.     The headings of this Agreement are asserted for convenience and are not part of the provisions hereof and shall have no force or effect.

C.     If any provision of this Agreement or application thereof is held to be invalid or unenforceable, the remainder of this Agreement shall remain in effect and be interpreted so as best to reasonably give effect to the intent of the Parties. Notwithstanding the foregoing, Sections I, II, III, IV, V, VI, VII, and the injunctions to be set forth in the Confirmation Order and/or the Affirmation Order shall not be severable from this Agreement.

## XIV. REPRESENTATIONS, WARRANTIES, AND OTHER MISCELLANEOUS PROVISIONS

A. Each Party, Joining State Court Counsel, and Joining Local Council represents and warrants that it has taken all necessary corporate and legal action required to duly approve the making and performance of this Agreement and, subject only to satisfaction or waiver of the applicable conditions precedent set forth in Section II of this Agreement with respect to certain obligations under this Agreement, that no further action is necessary to make any obligation of

~~A.~~ any Party, Joining State Court Counsel, or Joining Local Council under this Agreement binding and legally enforceable.

B.    Each Party, Joining State Court Counsel, and Joining Local Council represents and warrants that, to the best of its knowledge and belief, the making and performance of this Agreement will not violate any provision of law or any of its respective articles of incorporation or by-laws or any contract or agreement by which it is  bound.

C.    Each Party, Joining State Court Counsel, and Joining Local Council represents and warrants that it is the owner of the rights and Claims to be compromised and released by it under this Agreement and it has not assigned or transferred to any Entity any Claim or other matter to be compromised and released herein. Furthermore, the Debtors represent and warrant that they have not assigned or transferred any right, title, or Interest under the Hartford   Policies.

D.    Each Party, Joining State Court Counsel, and Joining Local Council represents and warrants that this Agreement has been entered into in good faith, as a result of arm's-length negotiations, with advice of counsel, and that this Agreement represents a fair, reasonable, proportionate, and good-faith compromise of disputed Claims, disputed liabilities and disputed issues.

E.    This Agreement is not intended to be, nor shall it be construed, as an admission by any Party, Joining State Court Counsel, or Joining Local Council regarding the existence or scope of any duties, rights, or obligations arising under the Hartford Policies or any other insurance policies.  This Agreement shall not be used in any court or dispute resolution proceeding to create, prove, or interpret the rights or obligations of the Parties, Joining State Court Counsel, or Joining Local Councils under the Hartford Policies or any other insurance policies.

F.  Hartford and the Debtors each represent and warrant that they have conducted a reasonable, good faith search of their respective records and have located no evidence of any ~~Hartford  BSA~~Abuse Insurance Policies issued by the Hartford Protected Parties to the BSA as the first named insured other than the policies identified on Exhibit A or any ~~Hartford Local~~Abuse Insurance Policies issued by the Hartford Protected Parties to a Local Council ~~Policies~~as the first named insured other than the policies identified on Exhibit B, and that they are not aware of any such policy, secondary evidence of any such policy, or any reason to believe any such policy exists.

G.  Each Joining State Court Counsel represents and warrants to the Parties that, as of the date of its joinders, it represents the number of holders of Direct Abuse Claims who filed timely Direct Abuse Claims in the Bankruptcy Case that is listed on its respective Exhibit C.

H.  Each Party, Joining State Court Counsel, and Joining Local Council represents and warrants that it has read this Agreement in its entirety, that it fully understands all of the Agreement's terms and the consequences thereof, and that the person signing this Agreement on its behalf has full and complete authority and competency to legally bind it to all terms and consequences of this Agreement.

I.  Each Party, Joining State Court Counsel, and Joining Local Council represents and warrants that this Agreement is supported by valid and lawful consideration sufficient to make all aspects of this Agreement legally binding and enforceable.

J.      This Agreement sets forth the entire agreement between the Parties, Joining State Court Counsel, and Joining Local Councils as to its subject matter, and supersedes any and all prior or contemporaneous statements, agreements, negotiations, or understandings, whether written or oral, except that the Agreement should be read *in pari materia* with the Plan.

K.      All notices, demands, or other communications to be provided pursuant to this Agreement shall be in writing and sent by electronic mail and overnight mail (or United States first-class mail, postage prepaid), to the Parties, the Joining State Court Counsel, and the Joining Local Councils at the addresses set forth in Exhibit E and the joinders of State Court Counsel and Joining Local Councils, or to such other persons or addresses as the Parties, Joining State Court Counsel, or Joining Local Councils may designate in writing from time to time.

L.      This Agreement may be amended only by a writing signed by or on behalf of each Party.

M.      Each Party may sign an e-mail copy of this Agreement, in counterparts, with the same effect as if each Party had signed an original of the same   document.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

The Debtors (as defined)                    Hartford (as defined)

By:_____        By:_____        _____

Coalition (as defined)                      FCR (as defined)

By:_____        By:_____        _____

AHCLC (as defined)
By:_____        _____        _


Date:_____        _____

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

The Debtors (as defined)                          Hartford (as defined)

By:      */s/ Roger C. Mosby*_____        By:      _____

Name:       Roger C. Mosby_____        Name: _____

Title:                              President and CEO_____        Title: _____

Date:                        February 14, 2022_____        Date: _____


Coalition (as defined)                          FCR (as defined)

By:      _____        By:      _____

Name: _____        Name: _____

Title: _____        Title: _____

Date: _____        Date: _____


AHCLC (as defined)

By:      _____

Name: _____

Title: _____

Date: _____

**IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.**

The Debtors (as defined)                    Hartford (as ~~i~~ a ~~ned~~)

By: _____          Nar
                                                          By: _____ _ _ _ _
Title: _____
                                                          Name: _John Kramer_____
Date: _____
                                                          Title: _EVP_____

                                                          _2/14/22_____

Coalition (as defined)                       FCR (as defined)

By: _____          By: _____

Name: _ _ _ _ _ _ _ _ _ _ _ _    Name: _ _ _ _ _ _ _ _ _ _ _ _
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _                                            _
Title:   Date: _____      Title:_____ Date: _____

AHCLC (as defined)

By: _____

Name: _ _ _ _ _ _ _ _ _ _ _

Title:   Date: _____

*Signature Page to Settlement Agreement and Release*

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

The Debtors (as defined)                    Hartford (as defined)

By: _____                By: _____

Name: _ _ _ _ _   _ _   _                   Name: _ _ _ _ _ _ _ _   _ _

Title: _____ Date: _____          Title: _____ Date: _____


Coalition (as defined)                       FCR (as defined)

By: **C204:** _____                      By: _____

Name: C;-,(, Goo&-W'AQ.(\                     Name:
                                             _ _ _ _ _ _ _ _ _ _ _

Title: ℓ'QA,huA,                             Title: _____ Date: _____

(Add) 2-14-2022


AHCLC (as defined)

By: _____

Name:
_ _ _ _ _ _ _ _ _ _ _

Title: _____ Date: _____

55

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

The Debtors (as defined)                    Hartford (as defined)

By:    _____              By:    _____

Name:  _____    Name:  _____

Title:  _____    Title:  _____

Date:  _____    Date:  _____



Coalition (as defined)                       FCR (as defined)

By:    _____              By:    _____

Name:  _____    Name:  _____

Title:  _____    Title:  _____

Date:  _____    Date:  _____


AHCLC (as defined)

By:    _____

Name:  _____

Title:  _____

Date:  _____


*Signature Page to Settlement Agreement and Release*

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

The Debtors (as defined)                        Hartford (as defined)

By: _____        By: _____

Name: _____        Name: _____

Title: _____       Title: _____

Date: _____        Date: _____


Coalition (as defined)                           FCR (as defined)

By: _____        By: _____

Name: _____        Name: _____

Title: _____       Title: _____

Date: _____        Date: _____


AHCLC (as defined)

By: _R_G_Mason_____

Name: _Richa_G_(_____ (Add

Title: _____a_r_____

Date: _2 |4 22_____ Ch      d

*Signature Page to Settlement Agreement and Release*

**Schedule 1**

**Joining State Court Counsel**

| FIR | NOTICE ADDRESS | CLAIM |
|---|---|---|
| Slater Slater Schulman LLP | Attn: Adam P. Slater (aslater@sssfirm.com) 488 Madison Avenue 20th Floor New York, NY 10022 | 14170 |
| ASK LLP | Attn: Joseph Steinfeld (jsteinfeld@askllp.com) 2600 Eagan Woods Drive, Ste 400 Saint Paul, MN 55121 | 3277 |
| Andrews & Thornton, AAL, ALC | Andrews & Thornton Attn: Anne Andrews (aa@andrewsthornton.com) 4701 Von Karman Ave., Suite 300 Newport Beach, CA 92660 | 3009 |
| Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. | Attn: Stewart J. Eisenberg (stewart@erlegal.com) 1634 Spruce Street Philadelphia, PA 19103 | 16869 |
| Junell & Associates PLLC | Attn: Deborah Levy (dlevy@junell-law.com) 3737 Buffalo Speedway Ste. 1850 Houston, TX 77098 | 2918 |
| Reich & Binstock LLP | Attn: Dennis Reich (dreich@reichandbinstock.com) 4265 San Felipe St. #1000 Houston, TX 77027 | 336 |
| Krause & Kinsman Law Firm | Attn: Adam W. Krause (adam@krauseandkinsman.com) 4717 Grand Avenue #300 Kansas City, MO 64112 | 5981 |

| FIR | NOTICE ADDRESS | CLAIM |
|---|---|---|
| Bailey Cowan Heckaman PLLC | Attn: Aaron Heckaman (aheckaman@bchlaw.com) 5555 San Felipe St. Ste. 900 | 1026 |
| Motley Rice LLC | Attn: Daniel Lapinski (dlapinski@motleyrice.com) 210 Lake Drive East Suite 101 Cherry Hill, NJ 08002 | 343 |
| Weller Green Toups & Terrell LLP | Attn: Mitchell Toups (matoups@wgttlaw.com) 2615 Calder Ave. #400 Beaumont, TX 77702 | 974 |
| Colter Legal PLLC | Attn: John Harnishfeger (john.harnishfeger@colterlegal.com) 1717 K St. NW Suite 900 Washington D.C. 20006 | 162 |
| Christina Pendleton & Associates, PLLC | Attn: Staesha Rath (sr@cpenlaw.com) 1506 Staples Mill Rd. Suite 101 Richmond, VA 23230 | 309 |
| Forman Law Offices, P.A. | Attn: Theodore Forman (ted@formanlawoffices.com ) 238 NE 1st Ave. Delray Beach, FL 33444 | 125 |
| Danziger & De Llano LLP | Attn: Rod de Llano (rod@dandell.com) 440 Louisiana St. Suite 1212 Houston, TX 77002 | 1707 |
| Swenson & Shelley | Attn: Kevin Swenson (kevin@swensonshelley.com ) 107 South 1470 East, Ste. 201 St. George, UT 84790 | 175 |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of coverage for Direct Abuse Claims.

| FIR | NOTICE ADDRESS | CLAIM |
|---|---|---|
| ~~Swenson & Shelley~~ | ~~Attn: Kevin Swenson (kevin@swensonshelley.com) 107 South 1470 East, Ste. 201 St. George, UT 84790~~ | ~~175~~ |
| Cohen Hirsch LP (formerly Brooke F. Cohen Law, Hirsch Law Firm) | Attn: Brooke F. Cohen (brookefcohenlaw@gmail.com) Attn: Andrea Hirsch (andrea@thehirschlawfirm.com) 4318 Glenwick Lane Dallas, TX 75205 | 64 |
| Damon J. Baldone PLC | Attn: Damon J. Baldone (damon@baldonelaw.com) 162 New Orleans Blvd. | 471 |
| Cutter Law, P.C. | Attn: Brooks Cutter (bcutter@cutterlaw.com) 4179 Piedmont Ave. 3rd Fl. Oakland, CA 94611 | 358 |
| Linville Johnson & Pahlke Law Group | Attn: Robert Pahlke (rgp@pahlkelawgroup.com) 2425 Circle Dr., Ste. 200 Scottsbluff NE 69361 | 71 |
| Porter & Malouf P.A. | Attn: Timothy Porter (tporter@portermalouf.com) (ssmith@portermalouf.com) (susan@portermalouf.com) 825 Ridgewood Rd. | 86 |
| The Moody Law Firm | Attn: Will Moody Jr. (will@moodyrrlaw.com) 500 Crawford St., Ste. 200 | 677 |

| | | |
|---|---|---|
| Levin Papantonio Thomas Mitchell Rafferty & Procter P.A. | Attn: Cameron Stephenson (cstephenson@levinlaw.com) 316 South Baylen St. Pensacola, FL 32502 | 44 |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of coverage for Direct Abuse Claims.

| FIR | NOTICE ADDRESS | CLAIM |
|---|---|---|
| ~~The Moody Law Firm~~ | ~~Attn: Will Moody Jr. (will@moodyrrlaw.com) 500 Crawford St., Ste. 200~~ | ~~677~~ |
| ~~Levin Papantonio Thomas Mitchell Rafferty & Procter P.A.~~ | ~~Attn: Cameron Stephenson (cstephenson@levinlaw.com) 316 South Baylen St. Pensacola, FL 32502~~ | ~~44~~ |
| Marc J Bern & Partners LLP | Attn: Joseph Cappelli (jcappelli@bernllp.com) 60 East 42nd St. Ste. 950 New York, NY 10165 | 5893 |
| D. Miller and Assocaites, PLLC | Attn: Rochelle Guiton (bsa@dmillerlaw.com) 2610 W. Sam Houston | 3008 |
| Hilliard Martinez Gonzales LLP | Attn: Robert C. Hilliard and Rudy Gonzales, Jr. (hmgservice@hmglawfirm.com) 719 South Shoreline Blvd. Corpus Christi, TX 78411 | 289 |
| McDonald Worley, P.C. | Attn: Don Worley 1770 St. James Place, Ste. 100 Houston, TX 77056 | 140 |
| TorHoerman Law, LLC | Attn: Eric Terry (eric@thlawyer.com) 210 S. Main St. Edwardsville, IL 62025 | 125 |
| Gibbs Law Group | Attn: Karen Barth Menzies (kbm@classlawgroup.com) 505 14th St. Suite 1110 | 179 |

| | | |
|---|---|---|
| Paluch Law, LLC | Attn: Jessica Paluch Hoerman (Jess@simplyconvert.com) 210 S. Main St. | 139 |
| Philadelphia Lawyers Group | Attn: Alan Zibelman 1500 JFK Blvd. Ste. 1020 | 135 |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of coverage for Direct Abuse Claims.

| FIR | NOTICE ADDRESS | CLAIM |
|---|---|---|
| ~~Gibbs Law Group~~ | ~~Attn: Karen Barth Menzies (kbm@classlawgroup.com) 505 14th St. Suite 1110~~ | ~~179~~ |
| ~~Paluch Law, LLC~~ | ~~Attn: Jessica Paluch Hoerman (Jess@simplyconvert.com) 210 S. Main St.~~ | ~~139~~ |
| ~~Philadelphia Lawyers Group~~ | ~~Attn: Alan Zibelman 1500 JFK Blvd. Ste. 1020~~ | ~~135~~ |
| Carlson Law Firm | Attn: Craig Carlson 100 E Central Texas Expy Killeen, TX 76541 | 191 |
| IPG Law Firm | Attn: Chip Winneker 133 W Main St. | 122 |
| Douglas & London P.C. | Attn: Kristin Padden (kpadden@douglasandlondon.com) 59 Maiden Lane, 6th Floor New York, NY 10038 | 60 |
| The Webster Law Firm | Attn: Jason C. Webster (jwebster@thewebsterlawfirm.com) 6200 Savoy Suite 150 Houston, TX 77036 | 20 |
| Freese & Goss, PLLC | Attn: Peter de la Cerda (peter@freeseandgoss.com) 3500 Maple Ave., Ste. 1100 | 458 |

| | | |
|---|---|---|
| Brent Coon & Assocaites | Attn: Brent Coon (Brent@bcoonlaw.com) 300 Fannin, Suite 200 Houston, TX 77002 | 69 |
| DiCello Levitt Gutzler | Attn: Adam J. Levitt (alevitt@dicellolevitt.com) Ten North Dearborn Street Sixth Floor Chicago, IL 60602 | 112 |
| Davis Bethune Jones | Attn: Grant Davis and Ted Ruzicka (gdavis@dbjlaw.net) (truzicka@dbjlaw.net) 1100 Main Street # 2930 Kansas City, MO | 1054 |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of coverage for Direct Abuse Claims.

| FIR | NOTICE ADDRESS | CLAIM |
|---|---|---|
| ~~Brent Coon &~~ ~~Assocaites~~Mary Alexander and | ~~Attn: Brent Coon~~ ~~(Brent@bcoonlaw.com~~ ~~) 300 Fannin, Suite~~ ~~200~~ ~~Houston, TX 77002~~Attn: Mary Alexander, Esq. | ~~69~~74 |
| ~~DiCello~~ ~~Levitt~~ ~~Gutzler~~ | ~~Attn: Adam J. Levitt~~ ~~(alevitt@dicellolevitt.co~~ ~~m) Ten North Dearborn~~ ~~Street Sixth Floor~~ ~~Chicago, IL 60602~~ | ~~112~~ |
| ~~Davis Bethune~~ ~~Jones~~ | ~~Attn: Grant Davis and Ted~~ ~~Ruzicka (gdavis@dbjlaw.net)~~ ~~(truzicka@dbjlaw.net)~~ ~~1100 Main Street #~~ ~~2930 Kansas City, MO~~ | ~~1054~~ |
| ~~Mary Alexander and~~ Associates, P.C. | ~~Attn: Mary Alexander, Esq.~~ (malexander@maryalexanderlaw.com) 44 Montgomery Street, Ste. 1303 San Francisco, CA 94104 ~~74~~ | |

~~An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of coverage for Direct Abuse Claims.~~

Exhibit A

**Known and Alleged Hartford ~~BSA~~ Policies Issued to BSA**

| Insurance | Policy Number | Start Date | End Date | Occurrence | Aggregate Limit | Attachment |
|---|---|---|---|---|---|---|
| Hartford Accident and Indemnity Company | 10 HUA 43300 | 5/1/1971 | 5/1/1972 | $2,000,000.00 | $2,000,000.00 | $500,000.00 |
| Hartford Accident and Indemnity Company | 10 HUA43301 (*CANCELLED* | 1/1/1971 | 1/1/1972 | $2,000,000.00 | $2,000,000.00 | $500,000.00 |
| Hartford Accident and Indemnity Company | 10CA43315* | 9/21/1971 | 1/1/1972 | $1,000,000.00 | Unknown | |
| Hartford Accident and Indemnity Company | 10CA43304* | 1/1/1972 | 1/1/1974 | $1,000,000.00 | $1,000,000.00 | |
| Hartford Accident and Indemnity Company | 10CA43303 | 1/1/1972 | 1/1/1974 | $500,000.00 | $500,000.00 | |
| ~~Hartford Accident and Indemnity~~ | ~~10HUA43302~~ | ~~1/1/1972~~ | ~~1/1/1974~~ | ~~$2,000,000.00~~ | ~~$2,000,000.00~~ | ~~$500,000.00~~ |
| ~~Hartford Accident and Indemnity~~ | ~~10HUA43303*~~ | ~~1/1/1973~~ | ~~5/1/1974~~ | ~~$5,000,000.00~~ | ~~$5,000,000.00~~ | ~~$1,000,000.00~~ |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

| Insuranc | Policy Number | Start Date | End Date | Occurrence | Aggregate Limit | Attachment |
|---|---|---|---|---|---|---|
| ~~Hartford Accident and Indemnity~~ | ~~10CA43324*~~ | ~~1/1/1974~~ | ~~1/1/1975~~ | ~~$1,000,000.00~~ | ~~$1,000,000.00~~ | |
| ~~Hartford Accident and Indemnity~~ | ~~10CA43329~~ | ~~1/1/1974~~ | ~~1/1/1975~~ | ~~$500,000.00~~ | ~~$500,000.00~~ | |
| Hartford Accident and Indemnity Company | ~~10HUA43331~~10HUA43302 | ~~1/1/1974~~1/1/1972 | ~~1/1/1975~~1/1/1974 | $2,000,000.00 | $2,000,000.00 | $500,000.00 |
| Hartford Accident and Indemnity Company | ~~10HUA43335~~10HUA43303* | ~~5/1/1974~~1/1/1973 | ~~1/1/1975~~5/1/1974 | $5,000,000.00 | $5,000,000.00 | $1,000,000.00 |
| Hartford Accident and Indemnity Company | ~~10CA43342E~~10CA43324* | ~~1/1/1975~~1/1/1974 | ~~1/1/1976~~1/1/1975 | $~~500,000.00~~1,000,000.00 | $~~500,000.00~~1,000,000.00 | |
| Hartford Accident and | | | | | | |

<u>An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.</u>

| | | | | | | |
|---|---|---|---|---|---|---|
| Indemnity Company | ~~10CA43349E~~<u>10CA43329</u> | ~~1/1/1976~~<u>1/1/1974</u> | ~~1/1/1977~~<u>1/1/1975</u> | $500,000.00 | $500,000.00 | |
| Hartford Accident and Indemnity Company | ~~10CA43359E~~<u>10HUA43331</u> | ~~1/1/1977~~<u>1/1/1974</u> | ~~1/1/1978~~<u>1/1/1975</u> | ~~$1,000,000.00~~<u>2,000,000.00</u> | ~~$0 (policy released)~~<u>$2,000,000.00</u> | <u>$500,000.00</u> |
| ~~Hartford Accident and Indemnity~~ | ~~10JPA43360E~~ | ~~1/1/1977~~ | ~~1/1/1978~~ | ~~$1,000,000.00~~ | ~~$0 (policy released)~~ | |

~~An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of coverage for Direct Abuse Claims.~~

<u>An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.</u>

3

| Insuranc | Policy Number | Start Date | End Date | Occurrence | Aggregate Limit | Attachment |
|---|---|---|---|---|---|---|
| First State Insurance Hartford Accident and Indemnity Company | 90895410HUA43335* | 1/1/19785/1/1974 | 1/1/1979 1/1/1975 | $10,000,000.005,000,000.00 | $10,000,000.005,000,000.00 | $1,000,000.00 |
| First State Insurance Hartford Accident and Indemnity Company | 92761610CA43342E | 1/1/1979 1/1/1975 | 1/1/1980 1/1/1976 | $5,000,000.00500,000.00 | $5,000,000.00500,000.00 | $10,500,000.00 |
| First State Insurance Hartford Accident and Indemnity Company | 93125510CA43349E | 1/1/19811/1/1976 | 1/1/1983 1/1/1977 | $3,900,000.00500,000.00 | $3,900,000.00500,000.00 | $5,500,000.00 |
| First State Insurance Hartford Accident and Indemnity Company | 93125710CA43359E | 1/1/18811/1/1977 | 1/1/1983 1/1/1978 | $5,500,000.001,000,000.00 | $5,500,000.00$0 (policy released) | $11,150,000.00 |
| Twin City Fire Insurance Hartford Accident and | | | | | | $500,000.00 |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

4

| Company | Policy number | Start | End | Limit 1 | Limit 2 | Limit 3 |
|---|---|---|---|---|---|---|
| Indemnity Company | ~~TXU 100325~~10JPA43360E | ~~1/1/1982~~1/1/1977 | ~~1/1/1983~~1/1/1978 | $~~5,000,000.00~~1,000,000.00 | $0 (policy released) | |
| First State Insurance Company | ~~EU 006921~~908954 | ~~3/1/1988~~1/1/1978 | ~~3/1/1989~~1/1/1979 | $~~5,000,000.00~~10,000,000.00 | $~~5,000,000.00~~10,000,000.00 | $~~34,000,000.00~~1,000,000.00 |
| ~~Navigators Specialty Insurance~~ | ~~CH12EXC747034IC~~ | ~~3/1/2012~~ | ~~3/1/2013~~ | ~~$15,000,000.00~~ | ~~$15,000,000.00~~ | ~~$195,000,000.00~~ |
| ~~Navigators Specialty Insurance~~ | ~~CH13EXC747034IC~~ | ~~3/1/2013~~ | ~~3/1/2014~~ | ~~$15,000,000.00~~ | ~~$15,000,000.00~~ | ~~$195,000,000.00~~ |

~~An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of coverage for Direct Abuse Claims.~~

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

| Insuranc | Policy Number | Start Date | End Date | Occurrence | Aggregate Limit | Attachment |
|---|---|---|---|---|---|---|
| First State Insuranc | 927616 | 1/1/1979 | 1/1/1980 | $5,000,000.00 | $5,000,000.00 | $10,500,000.00 |
| First State Insuranc | 931255 | 1/1/1981 | 1/1/1983 | $3,900,000.00 | $3,900,000.00 | $5,500,000.00 |
| First State Insuranc | 931257 | 1/1/1981 | 1/1/1983 | $5,500,000.00 | $5,500,000.00 | $11,150,000.00 |
| Twin City Fire Insurance Company | TXU 100325 | 1/1/1982 | 1/1/1983 | $5,000,000.00 | $ 0 (policy | $500,000.00 |
| First State Insuranc | EU 006921 | 3/1/1988 | 3/1/1989 | $5,000,000.00 | $5,000,000.00 | $34,000,000.00 |
| Navigators Specialty Insurance | CH12EXC747034IC | 3/1/2012 | 3/1/2013 | $15,000,000.00 | $15,000,000.00 | $195,000,000.00 |
| Navigators Specialty Insurance | CH13EXC747034IC | 3/1/2013 | 3/1/2014 | $15,000,000.00 | $15,000,000.00 | $195,000,000.00 |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of coverage for Direct Abuse Claims.

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

**Exhibit B**

**Known and Alleged Hartford ~~Local Council~~ Policies <u>Issued to Local Councils</u>**

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| <u>Hartford</u> ~~Hartford~~ Fire ~~Insurance Company~~ | ~~30 CBP 104757*~~ | ~~1/1/1970~~ | ~~1/1/1971~~ | ~~Unknown~~ | ~~Unknown~~ | | <u>Baltimore</u> ~~Baltimore Area (220):~~ ~~Baltimore Area (220)~~ |
| ~~Hartford Fire~~ Insurance ~~Company~~ | ~~30 CBP 108939~~ | ~~1/1/1971~~ | ~~1/1/1974~~ | | | | ~~Baltimore Area (220):~~ Baltimore ~~Area (220)~~ |
| <u>Company</u> | <u>30 CBP 104757*</u> | <u>1/1/1970</u> | <u>1/1/1971</u> | <u>Unknown</u> | <u>Unknown</u> | | <u>Area (220)</u> |
| <u>Hartford Fire Insurance Company</u> | <u>30 CBP 108939</u> | <u>1/1/1971</u> | <u>1/1/1974</u> | | | | <u>Baltimore Area (220): Baltimore Area (220)</u> |
| | | *1/1/1971* | *5/1/1973* | $2,500,000.0 | $2,500,000.0 | | |

~~An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of coverage for Direct Abuse Claims.~~

| | | 5/1/1973 | 1/1/1974 | $300,000.00 | $300,000.00 | | |
|---|---|---|---|---|---|---|---|
| Hartford Fire Insurance Company | 30 CBP 115631 | 1/1/1974 | 1/1/1977 | | | | Baltimore Area (220): Baltimore Area (220) |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of coverage for Direct Abuse Claims.

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford Fire Insurance Company | 30 CBP 115631 | 1/1/1974 | 1/1/1977 | | | | Baltimore Area (220): Baltimore Area (220) |
| | | *1/1/1974* | *1/1/1976* | $300,000.00 | $300,000.00 | | |
| | | *1/1/1976* | *1/1/1977* | $500,000.00 | $500,000.00 | | |
| Hartford ~~Hartford~~ Fire ~~Insurance Company~~ Insurance Company | ~~30 CBP 115827~~ 30 CBP 115827 | ~~1/1/1977~~ 1/1/1977 | ~~1/1/1980~~ 1/1/1980 | ~~$500,000.00~~ $500,000.00 | ~~$500,000.00~~ $500,000.00 | | Baltimore ~~Baltimore~~ Area (220): ~~Baltimore Area (220)~~ Baltimore Area (220) |
| Hartford ~~Accident and Indemnity Company~~ Accident and Indemnity ~~Hartford Fire Insurance~~ Company | ~~45 CBP 130782*~~ ~~20 SBM US207345~~ CBP 130782* | ~~3/26/1975~~ ~~5/23/1975~~ ~~1/1/2007~~3/ 26/1975 | ~~3/26/1978~~ ~~12/31/1977~~ ~~1/1/2008~~3/ 26/1978 | $500,000.00 ~~$1,000,000.00~~ | Unknown ~~$2,000,000.00~~ | | ~~Black Swamp Area (449): Put-Han-Sen Area 1930-1992 (449)~~Black Swamp Area (449): Put-Han-Sen Area 1930- ~~Coastal Georgia (99): Coastal Empire -2014~~1992 |

|  |  |  |  |  |  |  | (99449) |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

2

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| | | *5/23/1975* | *12/31/1977* | $500,000.00 | Unknown | | |
| Hartford Fire Insurance Company | 20 SBM US2073 | 1/1/2007 | 1/1/2008 | $~~2,000,000.00~~1,000,000.00 | $2,000,000.00 | ~~$2,000,000.00~~ | Coastal Georgia (99): Coastal Empire -2014 (99) |
| Hartford Fire Insurance Company | 20 SBM US2073 (*CANCELLED FLAT*) | ~~1/1/2008~~1/1/2007 | ~~1/1/2009~~1/1/2008 | $~~1,000,000.00~~2,000,000.00 | $2,000,000.00 | $2,000,000.00 | Coastal Georgia (99): Coastal Empire -2014 (99) |
| Hartford ~~Accident and Indemnity~~Fire Insurance Company | 20 SBM US2073 (*CANCELLED* ~~Unknown*~~*FLAT*) | ~~1/1/1975~~1/1/2008 | ~~1/1/1976~~1/1/2009 | ~~Unknown~~$1,000,000.00 | ~~Unknown~~$2,000,000.00 | | Coastal Georgia (99): Coastal Empire -2014 ~~Evangeline Area (212): Evangeline Area (212)~~(99) |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford Accident and Indemnity Company | Unknown* | 1/1/1975 | 1/1/1976 | Unknown | Unknown | | Evangeline Area (212): Evangeline Area (212) |
| Hartford Fire Insurance ~~Hartford Fire Insurance~~ Company | 01 UEC FN2321 | 10/28/1991 | 11/8/1992 | $1,000,000.00 | $1,000,000.00 | | Five Rivers (375): Sullivan Trail 1947- ~~Five Rivers (375): Sullivan Trail 1947 1991~~ 1991 (375) |
| Hartford Accident ~~Hartford Accident~~ and ~~Indemnity Company~~ Indemnity Company | ~~714239*~~ 714239* | 12/15/1961 ~~12/15/1961~~ 12/15/1961 | 12/15/1962 ~~12/15/1962~~ 12/15/1962 | ~~Unknown~~ Unknown | ~~Unknown~~ Unknown | | Gateway Area ~~Gateway Area~~ (624): ~~Gateway Area (624)~~ Gateway Area (624) |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of <u>the policy and/or</u> coverage for Direct Abuse Claims.

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford Accident | | | | | | | Gateway Area |
| ~~Hartford Accident~~ and ~~Indemnity Company~~ | ~~715173*~~ | ~~12/15/1962~~ | ~~12/15/1963~~ | ~~Unknown~~ | ~~Unknown~~ | | ~~Gateway Area~~ (624): ~~Gateway Area (624)~~ |
| Indemnity | | | | | | | Gateway Area |
| ~~Hartford Accident and Indemnity~~ Company | ~~716126~~715173* | ~~12/15/1963~~12/15/1962 | ~~12/15/1964~~12/15/1963 | Unknown | Unknown | | ~~Gateway Area (624):~~ ~~Gateway Area~~ (624) |
| Hartford Accident | | | | | | | Gateway Area |
| ~~Hartford Accident~~ and ~~Indemnity Company~~ | ~~717220*~~ | ~~12/15/1964~~ | ~~12/15/1965~~ | ~~Unknown~~ | ~~Unknown~~ | | ~~Gateway Area~~ (624): ~~Gateway Area (624)~~ |
| Indemnity Company | 716126* | 12/15/196 | 12/15/196 | Unknown | Unknown | | Gateway Area (624) |
| Hartford Accident | | | | | | | Gateway Area |
| ~~Hartford Accident~~ and ~~Indemnity Company~~ | ~~86C718423*~~ | ~~12/15/1965~~ | ~~12/15/1966~~ | ~~Unknown~~ | ~~Unknown~~ | | ~~Gateway Area~~ (624): ~~Gateway Area (624)~~ |
| Indemnity Company | 717220* | 12/15/196 | 12/15/196 | Unknown | Unknown | | Gateway Area (624) |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford Accident ~~Hartford Accident~~ and ~~Indemnity Company~~ | ~~86C718423*~~ | ~~12/15/1966~~ | ~~12/15/1967~~ | ~~Unknown~~ | ~~Unknown~~ | | Gateway Area ~~Gateway Area~~ (624): ~~Gateway Area (624)~~ |
| Indemnity Company | 86C718423* | 12/15/196 | 12/15/196 | Unknown | Unknown | | Gateway Area (624) |
| Hartford Accident and Indemnity Company | 86C718423* | 12/15/196 | 12/15/196 | Unknown | Unknown | | Gateway Area (624): Gateway Area (624) |
| Hartford Accident and Indemnity Company | 86C718423* | 12/15/196 | 12/15/196 | Unknown | Unknown | | Gateway Area (624): Gateway Area (624) |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford Accident | | | | | | | Gateway Area |
| ~~Hartford Accident~~ and ~~Indemnity Company~~ | ~~86C718423*~~ | ~~12/15/1967~~ | ~~12/15/1968~~ | ~~Unknown~~ | ~~Unknown~~ | | ~~Gateway Area~~ (624): ~~Gateway Area (624)~~ |
| Indemnity | | | | | | | Gateway Area |
| ~~Hartford Accident and Indemnity~~ Company | 86C807701* | 12/15/1968 | 12/15/1969 | Unknown | Unknown | | ~~Gateway Area (624): Gateway Area~~ (624) |
| Hartford Accident | | | | | | | Gateway Area |
| ~~Hartford Accident~~ and ~~Indemnity Company~~ | ~~86C807701*~~ | ~~12/15/1969~~ | ~~12/15/1970~~ | ~~Unknown~~ | ~~Unknown~~ | | ~~Gateway Area~~ (624): ~~Gateway Area (624)~~ |
| Indemnity | | | | | | | Gateway Area |
| ~~Hartford Accident and Indemnity~~ Company | 86C807701* | ~~12/15/1970~~12/15/1969 | ~~12/15/1971~~12/15/1970 | Unknown | Unknown | | ~~Gateway Area (624): Gateway Area~~ (624) |
| Hartford ~~Accident and Indemnity Company~~ | ~~54 C 990478~~ | ~~7/1/1972~~ | ~~7/1/1975~~ | ~~$1,000,000.00~~19 | ~~$1,000,000.00~~ | | ~~Golden Empire (47): Golden Empire 1937 (47)~~ |
| Accident and | | | | | | | Gateway Area (624): |

| | | | | | | |
|---|---|---|---|---|---|---|
| Indemnity Company | 86C807701* | 12/15/197 | 12/15/197 | Unknown | Unknown | | Gateway Area (624) |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

7

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford Accident and Indemnity Company | 54 C 990478 | 7/1/1972 | 7/1/1975 | $1,000,000.0 | $1,000,000.0 | | Golden Empire (47): Golden Empire 1937-(47) |
| Hartford Accident and Indemnity ~~Hartford Accident and Indemnity~~ Company | 45 CBP 132079 | 8/1/1981 | 8/1/1984 | $500,000.00 | $500,000.00 | | Great Trail (433): Northeast Ohio 1929- ~~Great Trail (433): Northeast Ohio 1929-1993~~ 1993 (463) |
| Hartford Fire Insurance ~~Hartford Fire Insurance~~ Company | 02 SMP 111101* | 1/20/1976 | 1/20/1979 | $500,000.00 | $500,000.00 | | Greater Hudson Valley (388): Washington Irving 1951- ~~Greater Hudson Valley (388): Washington Irving 1951-1973~~ 1973 (388) |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

| **Insurance Company** | **Policy Number** | **Start Date** | **End Date** | **Occurrence Limit** | **Aggregate Limit** | **Attachment Point** | **Alleged Insured Local Council Per** |
|---|---|---|---|---|---|---|---|
| Hartford Fire Insurance ~~Hartford Fire Insurance~~ Company | 02 SMP 117538* | 1/20/1979 | 1/20/1982 | $500,000.00 | $500,000.00 | | Greater Hudson Valley (388): Washington Irving 1951- ~~Greater Hudson Valley (388): Washington Irving 1951-1973~~ 1973 (388) |
| Hartford Casualty Insurance ~~Hartford Casualty Insurance~~ Company | 02 SMP 118672* | 1/20/1982 | 1/20/1983 | $500,000.00 | $500,000.00 | | Greater Hudson Valley (388): Washington Irving 1951- ~~Greater Hudson Valley (388): Washington Irving 1951-1973~~ 1973 (388) |
| Hartford Casualty Insurance Company | 02 SMP 118672* | 1/20/1983 | 1/20/1984 | $500,000.00 | $500,000.00 | | Greater Hudson Valley (388): Washington Irving 1951-1973 (388) |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford ~~Casualty Insurance Company~~ | ~~02 SMP 118672*~~ | ~~1/20/1983~~ | ~~1/20/1984~~ | ~~$500,000.00~~ | ~~$500,000.00~~ | | Greater Hudson Valley ~~Greater Hudson Valley~~ (388): ~~Washington Irving 1951-1973 (388)~~ |
| Casualty Insurance ~~Hartford Casualty Insurance~~ Company | 02 SMP 118672* | 1/20/1984 | 1/20/1985 | Unknown | Unknown | | Washington Irving 1951- ~~Greater Hudson Valley (388): Washington Irving 1951-1973~~ 1973 (388) |
| Hartford Casualty Insurance ~~Hartford Casualty Insurance~~ Company | 02 SMP WC7495* | 1/20/1984 | 1/20/1985 | $500,000.00 ~~25~~ | $500,000.00 | | Greater Hudson Valley (388): Washington Irving 1951- ~~Greater Hudson Valley (388): Washington Irving 1951-1973~~ 1973 (388) |
| Hartford | | | | | | | Greater Hudson Valley (388): |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Casualty Insurance Company | 02 UUC NW2936 | 1/20/1985 | 1/20/1986 | $500,000.00 | $500,000.00 | | Washington Irving 1951-1973 (388) |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

10

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| ~~Hartford~~ ~~Casualty Insurance Company~~ <u>Accident and Indemnity</u> ~~Hartford Accident and Indemnity~~ Company | ~~02 UUC NW2936~~ | ~~1/20/1985~~ 4/26/1975 | ~~1/20/1986~~ 1/1/1977 | ~~$500,000.00~~ Unknown | ~~$500,000.00~~ Unknown | | <u>Greater Tampa</u> ~~Greater Hudson Valley (388): Washington Irving 1951-1973~~ <u>Bay Area (</u>~~388~~<u>89):</u> <u>Pinellas Area 1970-1978</u> ~~Greater Tampa Bay Area~~ (89)~~: Pinellas Area 1970-1978 (89)~~ |
| <u>Hartford Fire Insurance</u> ~~Hartford Fire Insurance~~ Company | 39 CBP 109170 | 10/29/1970 | 10/29/1973 | $500,000.00 | $500,000.00 | | <u>Hawk Mountain (528): Hawk Mountain</u> ~~Hawk Mountain (528): Hawk Mountain~~ 1970- (528) |
| <u>Twin City Fire Insurance</u> ~~Twin City Fire Insurance~~ | 39 CBP 161610 | 10/29/1973 | 10/29/1976 | $500,000.00 | $500,000.00 | | <u>Hawk Mountain (528): Hawk Mountain</u> ~~Hawk Mountain (528): Hawk Mountain~~ |

| Company | | | | | | | 1970- (528) |
|---|---|---|---|---|---|---|---|

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

11

28

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Twin City Fire Insurance ~~Twin City Fire Insurance~~ Company | 44 CBP 448087 | 10/29/1976 | 10/29/1979 | | | | Hawk Mountain (528): Hawk Mountain ~~Hawk Mountain (528): Hawk Mountain~~ 1970- (528) |
| | | *10/29/1976* | *12/31/1977* | $500,000.00 | $500,000.00 | | |
| Hartford ~~Casualty Insurance Company~~ | ~~14 UUC CZ6576*~~ | ~~6/9/1998~~ | ~~6/9/1999~~ | ~~$1,000,000.00~~ | ~~$2,000,000.00~~ | | Heart of ~~Heart of~~ Virginia (602): ~~Robert E. Lee 1953-2003 (602)~~ |
| Casualty Insurance ~~Hartford Casualty Insurance~~ Company | 14 UUC CZ6576* | ~~6/9/1999~~6/ 9/1998 | ~~6/9/2000~~6/ 9/1999 | $1,000,000.0 0 | $2,000,000.0 0 | | Robert E. Lee 1953-2003 ~~Heart of Virginia (602): Robert E. Lee 1953-2003~~ (602) |
| | | | ~~29~~ | | | | |
| Hartford Casualty Insurance ~~Hartford~~ | 14 UUC CZ6576* | ~~6/9/2000~~6/ | ~~6/9/2001~~6/ | $1,000,000.0 | $2,000,000.0 | | Heart of Virginia (602): Robert E. Lee 1953-2003 ~~Heart of~~ |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ~~Casualty Insurance~~ Company | | ~~9/1999~~ | ~~9/2000~~ | 0 | 0 | | ~~Virginia (602): Robert E. Lee 1953-2003~~ (602) |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of ~~the policy and/or~~ coverage for Direct Abuse Claims.

12

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| <u>Hartford Casualty Insurance Company</u> | <u>14 UUC CZ6576*</u> | <u>6/9/2000</u> | <u>6/9/2001</u> | <u>$1,000,000.0</u> | <u>$2,000,000.0</u> | | <u>Heart of Virginia (602): Robert E. Lee 1953-2003 (602)</u> |
| <u>Hartford Casualty Insurance</u> ~~Hartford Casualty Insurance~~ Company | 14 UUC CZ6576* | 6/9/2001 | 6/9/2002 | $1,000,000.00 | $2,000,000.00 | | <u>Heart of Virginia (602): Robert E. Lee 1953-2003</u> ~~Heart of Virginia (602): Robert E. Lee 1953-2003~~ (602) |
| <u>Twin City</u> ~~Twin City~~ Fire ~~Insurance~~ ~~Company~~ <u>Insurance</u> | ~~736 CBP 109458*~~ | ~~4/1/1973~~ | ~~4/1/1974~~ | ~~Unknown~~ | ~~Unknown~~ | | <u>Hoosier Trails</u> ~~Hoosier Trails~~ (145): Hoosier ~~Trails 1973-~~ ~~(145)~~ <u>Trails 1973-</u> |
| ~~Twin City Fire Insurance~~ Company | 736 CBP 109458* | ~~4/1/1974~~<u>4/1/1973</u> | ~~4/1/1975~~<u>4/1/1974</u> | Unknown | Unknown | | ~~Hoosier Trails (145): Hoosier Trails 1973-~~ (145) |

<u>An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for</u>

Direct Abuse Claims.

13

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Twin City Fire Insurance ~~Twin City Fire Insurance~~ Company | 736 CBP 109458* | ~~4/1/1975~~4/1/1974 | ~~4/1/1976~~4/1/1975 | Unknown | Unknown | | Hoosier Trails (145): Hoosier Trails 1973- ~~Hoosier Trails (145): Hoosier Trails 1973-~~ (145) |
| Twin City Fire Insurance Company | 736 CBP 109458* | 4/1/1975 | 4/1/1976 | Unknown | Unknown | | Hoosier Trails (145): Hoosier Trails 1973- (145) |
| Twin City ~~Twin City~~ Fire ~~Insurance~~ ~~Company~~ | ~~36 CBP 185443~~ | ~~4/1/1976~~ | ~~4/1/1979~~ | ~~$500,000.00~~ | ~~$500,000.00~~ | | Hoosier Trails ~~Hoosier Trails~~ (145): Hoosier ~~Trails 1973-~~ ~~(145)~~ |
| Insurance Company | 36 CBP 185443 | 4/1/1976 | 4/1/1979 | $500,000.00 | $500,000.00 | | Trails 1973- (145) |
| Hartford Accident and Indemnity Company | 32 C 715130* | 1/1/1975 | 1/1/1976 | Unknown | Unknown | | Iroquois Trail (376): Lewiston Trail 1937-1994 (385) |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims. ~~33~~

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford Hartford Accident and Indemnity Company and Indemnity | 32 C 715130* | 1/1/1975 | 1/1/1976 | Unknown | Unknown |  | Iroquois Trail Iroquois Trail (376): Lewiston Trail 1937-1994 (385) Lewiston Trail 1937-1994 |
| Hartford Accident and Indemnity Company | 32 HU 360257 | 3/10/1975 | 1/1/1976 |  |  |  | Iroquois Trail (376): Lewiston Trail 1937-1994 (385) |
|  |  | 3/10/1975 | 4/8/1975 | $1,000,000.0 | $1,000,000.0 | $500,000.00 |  |
|  |  | 4/8/1975 | 1/1/1976 | $2,000,000.0 | $2,000,000.0 | $500,000.00 |  |
| Hartford Accident and Indemnity Company Accident and Indemnity Company | 32C719701* 32C719701* | 1/1/1977 1/1/1977 | 1/1/1978 1/1/1978 | Unknown Unknown | Unknown Unknown |  | Iroquois Trail (376): Lewiston Trail 1937-1994 (385) (376): Lewiston Trail 1937-1994 (385) |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for

Direct Abuse Claims.

15

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford Accident and Indemnity ~~Hartford Accident and Indemnity~~ Company | 30 CBP 109015* | 6/1/1972 | 6/1/1973 | Unknown | Unknown | | Laurel Highlands (527): Potomac 1938-2014 ~~Laurel Highlands (527): Potomac 1938-2014~~ (757) |
| Hartford Accident and Indemnity ~~Hartford Accident and Indemnity~~ Company | 30 CBP 109015* | 6/1/1973 | 6/1/1974 | Unknown | Unknown | | Laurel Highlands (527): Potomac 1938-2014 ~~Laurel Highlands (527): Potomac 1938-2014~~ (757) |
| Hartford Accident and Indemnity ~~Hartford Accident and Indemnity~~ Company | 30 CBP 109015* | 6/1/1974 | 6/1/1975 | Unknown | Unknown | | Laurel Highlands (527): Potomac 1938-2014 ~~Laurel Highlands (527): Potomac 1938-2014~~ (757) |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| ~~Hartford Accident and Indemnity Company~~ | ~~30 CBP 115715*~~ | ~~6/1/1975~~ | ~~6/1/1978~~ | | | | Laurel ~~Highlands (527): Potomac 1938-2014 (757)~~ |
| Hartford Accident and Indemnity Company | 30 CBP 115715* | 6/1/1975 | 6/1/1978 | | | | Highlands (527): Potomac 1938-2014 (757) |
| | | *6/1/1975* | *1/1/1976* | $300,000.00 | $300,000.00 | | |
| | | *1/1/1976* | *12/31/1977* | $500,000.00 | $500,000.00 | | |
| Hartford Fire Insurance Company | Unknown* | 7/27/1961 | 7/27/1962 | Unknown | Unknown | | Longhorn (662): Longhorn - 2001 (582) |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford<br><br>~~Hartford~~ Fire ~~Insurance Company~~ Insurance<br>~~Hartford Fire Insurance~~ Company | ~~Unknown*~~<br><br>Unknown* | ~~1/1/1976~~<br>~~7/27/1961~~<br><br>7/27/1962 | ~~6/1/1978~~<br>~~7/27/1962~~<br><br>7/27/1963 | ~~$500,000.00~~<br>~~Unknown~~<br><br>Unknown | ~~$500,000.00~~<br>~~Unknown~~<br><br>Unknown | | Longhorn<br><br>~~Longhorn~~ (662): ~~Longhorn -2001 (582)~~<br>Longhorn -<br>~~Longhorn (662): Longhorn -2001~~2001 (582) |
| Hartford<br>~~Hartford~~ Fire ~~Insurance Company~~ Insurance<br>~~Hartford Fire Insurance~~ Company | ~~Unknown*~~<br><br>Unknown* | ~~7/27/1963~~<br><br>~~7/27/1964~~7/27/1963 | ~~7/27/1964~~<br><br>~~1/1/1965~~7/27/1964 | ~~Unknown~~<br><br>Unknown | ~~Unknown~~<br><br>Unknown | | Longhorn<br>~~Longhorn~~ (662): ~~Longhorn -2001 (582)~~<br>Longhorn -<br>~~Longhorn (662): Longhorn -2001~~2001 (582) |
| Hartford Fire Insurance Company | Unknown* | 7/27/1964 | 1/1/1965 | Unknown | Unknown | | Longhorn (662): Longhorn -2001 (582) |
| Hartford Accident<br>~~Hartford Accident and Indemnity~~ | ~~34UUVIS5513*~~ | ~~6/20/2007~~ | ~~6/20/2008~~ | ~~Unknown~~ | ~~Unknown~~ | | Mayflower<br>~~Mayflower~~ (251): Knox ~~Trail 1996-2017~~ |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ~~Company~~ and Indemnity Company | 34UUVIS5513* | 6/20/2007 | 6/20/2008 | Unknown | Unknown | | | ~~(244)~~ Trail 1996-2017 (244) |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

18

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford Accident ~~Hartford Accident and Indemnity Company~~and Indemnity Company | ~~34UUVIS5513*~~ 34UUVIS5513* | ~~6/20/2008~~ 6/20/2008 | ~~6/20/2009~~ 6/20/2009 | ~~Unknown~~ Unknown | ~~Unknown~~ Unknown | | Mayflower ~~Mayflower (251): Knox Trail 1996-2017 (244)~~ Trail 1996-2017 (244) |
| Hartford Accident ~~Hartford Accident and Indemnity Company~~and Indemnity Company | ~~34UUVIS5513*~~ 34UUVIS5513* | ~~6/20/2009~~ 6/20/2009 | ~~6/20/2010~~ 6/20/2010 | ~~Unknown~~ Unknown | ~~Unknown~~ Unknown | | Mayflower ~~Mayflower (251): Knox Trail 1996-2017 (244)~~ Trail 1996-2017 (244) |
| Hartford Accident ~~Hartford Accident and Indemnity Company~~and Indemnity Company | ~~34UUVIS5513*~~ 34UUVIS5513* | ~~6/20/2010~~ 6/20/2010 | ~~6/20/2011~~ 6/20/2011 ~~41~~ | ~~Unknown~~ Unknown | ~~Unknown~~ Unknown | | Mayflower ~~Mayflower (251): Knox Trail 1996-2017 (244)~~ Trail 1996-2017 (244) |
| ~~Hartford Fire Insurance~~ Company | ~~13 UUN CY4185~~34UUVIS5513* | ~~4/5/1999~~6/20/2010 | ~~4/5/2000~~6/20/2011 | ~~$1,000,000.00~~Unknown | ~~$2,000,000.0 0~~Unknown | | ~~Northern New Jersey (333):~~ |

| | | | | | | | Northern New Jersey 1999-2017 (333244) |
|---|---|---|---|---|---|---|---|---|

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford Fire Insurance Company | 13 UUN CY4185* | 4/5/1999 | 4/5/2000 | $1,000,000.00 | $2,000,000.0 | | Northern New Jersey (333): Northern New Jersey 1999- (333) |
| Hartford Fire Insurance ~~Hartford Fire Insurance~~ Company | 13 UUN CY4185* | 4/5/2000 | 4/5/2001 | $1,000,000.00 | $2,000,000.00 | | Northern New Jersey (333): Northern New Jersey 1999- ~~Northern New Jersey (333): Northern New Jersey 1999-~~ (333) |
| Hartford Fire Insurance ~~Hartford Fire Insurance~~ Company | 13 UUN CY4185 (*CANCELLED* ~~13 UUN CY4185 (CANCELLED~~ *FLAT*) | 4/5/2001 | 4/5/2002 | $1,000,000.00 | $2,000,000.00 | | Northern New Jersey (333): Northern New Jersey 1999- ~~Northern New Jersey (333): Northern New Jersey 1999-~~ (333) |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford ~~Accident and Indemnity Company~~ <u>Fire Insurance Company</u> | ~~20 SMP 267512*~~ <u>20 SMP 267512*</u> | ~~1/21/1976~~ <u>1/21/1976</u> | ~~1/21/1978~~ <u>1/21/1978</u> | | | | Northwest ~~Georgia (100): Northwest Georgia (100)~~ <u>Georgia (100): Northwest Georgia (100)</u> |
| | | *1/21/1976* | *3/9/1976* | $500,000.00 | $500,000.00 | | |
| | | *3/9/1976* | *1/21/1978* | $500,000.00 | $500,000.00 | | |
| <u>Hartford Accident and</u> ~~Hartford Accident and~~ Indemnity ~~Company~~ <u>Company</u> | ~~Unknown*~~ <u>Unknown*</u> | ~~1/1/1959~~ <u>1/1/1959</u> | ~~1/1/1960~~ <u>1/1/1960</u> | ~~Unknown~~ <u>Unknown</u> | ~~Unknown~~ <u>Unknown</u> | | <u>Old Hickory</u> ~~Old Hickory (427): Old~~ (427): Old ~~Hickory (427)~~ <u>Hickory (427)</u> |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of <u>the policy and/or</u> coverage for Direct Abuse Claims. ~~45~~

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford Accident and | | | | | | | Old Hickory |
| ~~Hartford Accident and~~ Indemnity ~~Company~~ ~~Hartford Accident and Indemnity~~ Company | ~~Unknown*~~ Unknown* | ~~1/1/1960~~ ~~1/1/1961~~1/1/1960 | ~~1/1/1961~~ ~~1/1/1962~~1/1/1961 | ~~Unknown~~ Unknown | ~~Unknown~~ Unknown | | ~~Old Hickory~~ (427): Old ~~Hickory (427)~~ ~~Old Hickory (427): Old~~ Hickory (427) |
| Hartford Accident and | | | | | | | Old Hickory |
| ~~Hartford Accident and~~ Indemnity ~~Company~~ Company | ~~Unknown*~~ Unknown* | ~~1/1/1962~~ 1/1/1961 | ~~1/1/1963~~ 1/1/1962 | ~~Unknown~~ Unknown | ~~Unknown~~ Unknown | | ~~Old Hickory~~ (427): Old ~~Hickory (427)~~ Hickory (427) |
| Hartford Accident and | | | | | | | Old Hickory |
| ~~Hartford Accident and~~ Indemnity ~~Company~~ Company | ~~Unknown*~~ Unknown* | ~~1/1/1963~~ 1/1/1962 | ~~1/1/1964~~ 1/1/1963 | ~~Unknown~~ Unknown | ~~Unknown~~ Unknown | | ~~Old Hickory~~ (427): Old ~~Hickory (427)~~ Hickory (427) |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford Accident and ~~Hartford Accident and~~ Indemnity ~~Company~~ Company | ~~Unknown*~~ Unknown* | ~~1/1/1964~~ 1/1/1963 | ~~1/1/1965~~ 1/1/1964 | ~~Unknown~~ Unknown | ~~Unknown~~ Unknown | | Old Hickory ~~Old Hickory~~ (427): Old ~~Hickory (427)~~ Hickory (427) |
| Hartford Accident and Indemnity Company | Unknown* | 1/1/1964 | 1/1/1965 | Unknown | Unknown | | Old Hickory (427): Old Hickory (427) |
| Hartford Accident and Indemnity Company | Unknown* | 1/1/1965 | 1/1/1966 | Unknown | Unknown | | Old Hickory (427): Old Hickory (427) |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| <u>Hartford Accident and</u> ~~Hartford Accident and~~ Indemnity ~~Company~~ ~~Hartford Accident and Indemnity~~ Company | ~~Unknown*~~ Unknown* | ~~1/1/1965~~ 1/1/1966 | ~~1/1/1966~~ 1/1/1967 | ~~Unknown~~ Unknown | ~~Unknown~~ Unknown | | <u>Old Hickory</u> ~~Old Hickory~~ (427): Old ~~Hickory (427)~~ ~~Old Hickory (427): Old~~ Hickory (427) |
| <u>Hartford Accident and Indemnity</u> ~~Hartford Accident and Indemnity~~ Company | 39 SMP 110975 | 5/16/1977 | 1/1/1980 | $500,000.00 | $500,000.00 | | <u>George Washington</u> ~~George Washington~~ Council Inc. |
| Hartford ~~Accident and Indemnity Company~~ | ~~13 C 718232*~~ | ~~9/20/1979~~ | ~~9/20/1980~~ | ~~$300,000.00~~ | ~~Unknown~~ | | ~~Pack 61 George Washington Council~~ |
| <u>Accident and Indemnity</u> ~~Hartford Accident and~~ | 13 C ~~BF1880~~<u>718232*</u> | ~~9/20/1980~~<u>9/20/1979</u> | ~~9/20/1981~~<u>9/20/1980</u> | $300,000.00 | Unknown | | <u>Pack 61 George Washington</u> ~~Pack 61 George~~ |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ~~Indemnity~~ Company | | | | | | | | ~~Washington~~ Council |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

24

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford Accident and Indemnity Company | 13 C BF1880 | 9/20/1980 | 9/20/1981 | $300,000.00 | Unknown | | Pack 61 George Washington Council |
| Hartford Accident and Indemnity ~~Hartford Accident and Indemnity~~ Company | 13 C DK2266* | 9/20/1981 | 9/20/1982 | $300,000.00 | Unknown | | Pack 61 George Washington ~~Pack 61 George Washington~~ Council |
| Hartford Accident and Indemnity ~~Hartford Accident and Indemnity~~ Company | 13 C DK2266* | 9/20/1982 | 9/20/1983 | $300,000.00 | Unknown | | Pack 61 George Washington ~~Pack 61 George Washington~~ Council |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford Accident and Indemnity ~~Hartford Accident and Indemnity~~ Company | 13 C DK2266* | 9/20/1983 | 9/20/1984 | $300,000.00 | Unknown | | Pack 61 George Washington ~~Pack 61 George Washington~~ Council |
| Hartford Accident and Indemnity ~~Hartford Accident and Indemnity~~ Company | 13 ~~UEK~~UEC KC9259* | 9/20/1984 | 9/20/1985 | $300,000.00 | Unknown | | Pack 61 George Washington ~~Pack 61 George Washington~~ Council |
| Hartford Accident and Indemnity ~~Hartford Accident and Indemnity~~ Company | 13 ~~UEK~~UEC KC9259* | 9/20/1985 | 9/20/1986 | $300,000.00 | Unknown | | Pack 61 George Washington ~~Pack 61 George Washington~~ Council |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| ~~Hartford Accident and Indemnity~~ Hartford Accident and Indemnity Company | 13 ~~UEK~~UEC KC9259* | 9/20/1986 | 9/20/1987 | $300,000.00 | Unknown | | Pack 61 George Washington ~~Pack 61 George Washington~~ Council |
| ~~Hartford Accident and Indemnity~~ Hartford Accident and Indemnity Company | 13 ~~UEK~~UEC KC9259* | 9/20/1987 | 9/20/1988 | $300,000.00 | Unknown | | Pack 61 George Washington ~~Pack 61 George Washington~~ Council |
| ~~Hartford Accident and Indemnity~~ Hartford Accident and Indemnity Company | 13 ~~UEK~~UEC KC9259* | 9/20/1988 | 9/20/1989 | $300,000.00 | Unknown | | Pack 61 George Washington ~~Pack 61 George Washington~~ Council |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

| ~~Hartford Accident and Indemnity Company~~ Insuring Company | ~~13 UEK KC9259*~~ Policy Number | ~~9/20/1989~~ Start Date | ~~9/20/1990~~ End Date | ~~$300,000.00~~ Occurrence Limit | ~~Unknown~~ Aggregate Limit | Attachment Point | ~~Pack 61 George Washington Council~~ Alleged Insured Local Council Per BSA |
|---|---|---|---|---|---|---|---|
| Hartford Accident and Indemnity Company | 13 UEC KC9259* | 9/20/1989 | 9/20/1990 | $300,000.00 | Unknown | | Pack 61 George Washington Council |
| Hartford Accident and Indemnity ~~Hartford Accident and Indemnity~~ Company | 13 ~~UEK~~UEC KC9259* | 9/20/1990 | 9/20/1991 | $300,000.00 | Unknown | | Pack 61 George Washington ~~Pack 61 George Washington~~ Council |
| Hartford Accident and Indemnity Company | 13 UEC KC9259 | 9/20/1991 | 9/20/1992 | $400,000.00 | $1,000,000.0 | | Pack 61 George Washington Council |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford ~~Accident and Indemnity Company~~ ~~Hartford~~ Accident ~~and Indemnity Company and Indemnity~~ ~~Hartford Accident and Indemnity~~ Company | ~~13 UEK KC9259~~ ~~13 UEK KC9259~~ 13 ~~UEK~~UEC KC9259 | ~~9/20/1991~~ ~~9/20/1992~~ ~~9/20/1993~~9/20/1992 | ~~9/20/1992~~ ~~9/20/1993~~ ~~9/20/1994~~9/20/1993 | ~~$400,000.00~~ ~~$400,000.00~~ $400,000.00 | ~~$1,000,000.00~~ ~~$1,000,000.00~~ $1,000,000.00 | | ~~Pack 61 George Washington Council~~ Pack 61 ~~George Washington Council~~ George Washington ~~Pack 61 George Washington~~ Council |
| Hartford Accident and Indemnity ~~Hartford Accident and Indemnity~~ Company | 13 ~~UEK~~UEC KC9259 | ~~9/20/1994~~9/20/1993 | ~~9/20/1995~~9/20/1994 | $400,000.00 | $1,000,000.00 | | Pack 61 George Washington ~~Pack 61 George Washington Council~~ Council |
| Hartford Accident and Indemnity ~~Hartford Accident and~~ | 13 ~~UEK~~UEC KC9259 | ~~9/20/1995~~9/20/1994 | ~~9/20/1996~~9/20/1995 | $400,000.00 | $1,000,000.00 | | Pack 61 George Washington ~~Pack 61 George~~ |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ~~Indemnity~~ Company | | | | | | | | ~~Washington~~ Council |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

29

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford Accident and Indemnity Hartford Accident and Indemnity Company | 13 ~~UEK~~UEC KC9259 | ~~9/20/1996~~9/20/1995 | ~~9/20/1997~~9/20/1996 | $400,000.00 | $1,000,000.00 | | Pack 61 George Washington ~~Pack 61 George Washington~~ Council |
| Hartford Accident and Indemnity Hartford Accident and Indemnity Company | 13 ~~UEK~~UEC KC9259 | ~~9/20/1997~~9/20/1996 | ~~9/20/1998~~9/20/1997 | $400,000.00 | $1,000,000.00 | | Pack 61 George Washington ~~Pack 61 George Washington~~ Council |
| Hartford Accident and Indemnity Hartford Accident and Indemnity Company | 13 ~~UEK~~UEC KC9259 | ~~9/20/1998~~9/20/1997 | ~~9/20/1999~~9/20/1998 | $400,000.00 | $1,000,000.00 | | Pack 61 George Washington ~~Pack 61 George Washington~~ Council |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford Accident and Indemnity ~~Hartford Accident and Indemnity~~ Company | 13 ~~UEK~~UEC KC9259 | ~~9/20/1999~~9/20/1998 | ~~9/20/2000~~9/20/1999 | $400,000.00 | $1,000,000.00 | | Pack 61 George Washington ~~Pack 61 George Washington~~ Council |
| Hartford Accident and Indemnity ~~Hartford Accident and Indemnity~~ Company | 13 ~~UEK~~UEC KC9259 | ~~9/20/2000~~9/20/1999 | ~~9/20/2001~~9/20/2000 | $400,000.00 | $1,000,000.00 | | Pack 61 George Washington ~~Pack 61 George Washington~~ Council |
| Hartford Accident and Indemnity Company | 13 UEC KC9259 | 9/20/2000 | 9/20/2001 | $400,000.00 | $1,000,000.0 | | Pack 61 George Washington Council |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.  ~~62~~

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford Accident and Indemnity | | | | | | | Pack 61 George Washington |
| Hartford Accident and Indemnity Company | 13 UEKUEC KC9259 | 9/20/2001 | 9/20/2002 | $400,000.00 | $1,000,000.00 | | Pack 61 George Washington Council |
| Hartford Accident and | | | | | | | Pine Tree |
| Hartford Accident and Indemnity Company | 04 C 154949* | 1/25/1973 | 1/25/1974 | Unknown | Unknown | | Pine Tree (218): Pine Tree (218) |
| Company | 04 C 154949* | 1/25/1973 | 1/25/1974 | Unknown | Unknown | | Tree (218) |
| Hartford Accident and | | | | | | | Pine Tree |
| Hartford Accident and Indemnity Company | 04 C 157992 | 1/25/1974 | 1/25/1975 | $300,000.00 | $300,000.00 | | Pine Tree (218): Pine Tree (218) |
| Company | 04 C 157992 | 1/25/1974 | 1/25/1975 | $300,000.00 | $300,000.00 | | Tree (218) |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for

Direct Abuse Claims.

32

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford Accident and ~~Hartford Accident and~~ Indemnity ~~Company~~ Company | ~~04 C 161230~~ 04 C 161230 | ~~1/25/1975~~ 1/25/1975 | ~~1/25/1976~~ 1/25/1976 | | | | Pine Tree ~~Pine Tree~~ (218): Pine ~~Tree (218)~~ Tree (218) |
| | | *1/25/1975* | *4/25/1975* | $300,000.00 | $300,000.00 | | |
| | | *4/25/1975* | *1/25/1976* | $500,000.00 | $500,000.00 | | |
| Hartford Accident and Indemnity Company | 04 C 161099 | 1/25/1976 | 1/25/1977 | $500,000.00 | $500,000.00 | | Pine Tree (218): Pine Tree (218) |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford Accident and Indemnity | 04 C 161099 | 1/25/1976 | 1/25/1977 | $500,000.00 | $500,000.00 | | Pine Tree (218): |
| Hartford Accident and Indemnity | 04 C 163132 | 1/25/1977 | 1/25/1978 | $500,000.00 | $500,000.00 | | Pine Tree (218): Pine |
| Hartford Accident and Indemnity | 82 C 282090* | 1/1/1975 | 1/1/1976 | Unknown | Unknown | | Rainbow (702): |
| Hartford Accident and Indemnity | 82 HU 580155 | 1/16/1975 | 1/16/1976 | $2,000,000.0 | $2,000,000.0 | $500,000.00 | Rainbow (702): |
| Hartford Accident and Indemnity | 03 C 804621* | 4/27/1973 | 4/27/1974 | Unknown | Unknown | | Seneca Waterways (397): Finger Lakes 1924-2009 |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford Accident and Indemnity Company | 03 C ~~807376~~804621* | ~~4/27/1974~~4/27/1973 | ~~4/27/1975~~4/27/1974 | ~~$500,000.00~~Unknown | ~~$500,000.00~~Unknown | | Seneca Waterways (397): Finger Lakes 1924-~~1924 2009~~2009 (391) |
| Hartford Accident and Indemnity Company | 03 C ~~809631~~807376 | ~~4/27/1975~~4/27/1974 | ~~4/27/1976~~4/27/1975 | $500,000.00 | $500,000.00 | | Seneca Waterways (397): Finger Lakes 1924-~~1924 2009~~2009 (391) |
| Hartford Accident and Indemnity Company | 03 C ~~811730~~809631 | ~~4/27/1976~~4/27/1975 | ~~4/27/1977~~4/27/1976 | $500,000.00 | $500,000.00 | | Seneca Waterways (397): Finger Lakes 1924-~~1924 2009~~2009 (391) |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

~~67~~

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford Accident and Indemnity Company | 03 C ~~814173~~811730 | ~~4/27/1977~~4/27/1976 | ~~4/27/1978~~4/27/1977 | $500,000.00 | $500,000.00 | | Seneca Waterways (397): Finger Lakes 1924-~~1924 2009~~2009 (391) |
| Hartford Accident and Indemnity Company | ~~CBP 800237*~~03 C 814173 | ~~1/1/1977~~1/27/1977 | ~~1/1/1978~~4/27/1978 | ~~Unknown~~$500,000.00 | ~~Unknown~~$500,000.00 | | Seneca Waterways (397): ~~Otetiana~~Finger ~~1943-2009~~Lakes 1924-2009 (~~397~~391) |
| Hartford ~~Casualty Insurance~~Accident and Indemnity Company | ~~46 IC 632582~~CBP 800237* | ~~2/16/1973~~1/1/1977 | ~~2/16/1974~~1/1/1978 | Unknown | Unknown | | ~~South Plains (694~~Seneca Waterways (397): ~~South~~Otetiana 1943-~~Plains (694~~2009 (397) |

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford Casualty<br>~~Hartford Casualty~~ Insurance ~~Company~~<br>Company | ~~46 IC 632582*~~<br>46 IC 632582* | ~~2/16/1974~~<br>2/16/1973 | ~~2/16/1975~~<br>2/16/1974 | ~~Unknown~~<br>Unknown | ~~Unknown~~<br>Unknown | | South Plains<br>~~South Plains (694):~~ South ~~Plains (694)~~<br>Plains (694) |
| Hartford Casualty<br>~~Hartford Casualty~~ Insurance ~~Company~~<br>Company | ~~46 IC 632582*~~<br>46 IC 632582* | ~~2/16/1975~~<br>2/16/1974 | ~~2/16/1976~~<br>2/16/1975 | ~~Unknown~~<br>Unknown | ~~Unknown~~<br>Unknown | | South Plains<br>~~South Plains (694):~~ South ~~Plains (694)~~<br>Plains (694) |
| Hartford Casualty Insurance Company | 46 IC 632582* | 2/16/1975 | 2/16/1976 | Unknown | Unknown | | South Plains (694): South Plains (694) |
| Hartford Casualty Insurance Company | 46 TMP 100576* | 2/16/1976 | 2/16/1979 | $500,000.00 | $500,000.00 | | South Plains (694): South Plains (694) |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment Point | Alleged Insured Local Council Per |
|---|---|---|---|---|---|---|---|
| Hartford ~~Casualty Insurance Company~~ | ~~46 TMP 100576*~~ | ~~2/16/1976~~ | ~~2/16/1979~~ | ~~$500,000.00~~ | ~~$500,000.00~~ | | ~~South Plains (694):~~ ~~South Plains (694)~~ |
| Accident | | | | | | | Suffolk |
| ~~Hartford Accident~~ and ~~Indemnity Company~~ | ~~12 CPP 500098*~~ | ~~6/1/1969~~ | ~~6/1/1972~~ | ~~$300,000.00~~ | ~~$300,000.00~~ | | ~~Suffolk~~ County (404): ~~Suffolk County (404)~~ |
| Indemnity Company | 12 CPP 500098* | 6/1/1969 | 6/1/1972 | $300,000.00 | $300,000.00 | | Suffolk County (404) |
| Hartford Accident | | | | | | | Suffolk |
| ~~Hartford Accident~~ and ~~Indemnity Company~~ | ~~12 SMP 304687*~~ | ~~6/1/1972~~ | ~~6/1/1975~~ | ~~$300,000.00~~ | ~~Unknown~~ | | ~~Suffolk~~ County (404): ~~Suffolk County (404)~~ |
| Indemnity Company | 12 SMP 304687* | 6/1/1972 | 6/1/1975 | $300,000.00 | Unknown | | Suffolk County (404) |
| Hartford Accident | | | | | | | Suffolk |
| ~~Hartford Accident~~ and ~~Indemnity Company~~ | ~~12 CBP 400297*~~ | ~~6/1/1974~~ | ~~6/1/1977~~ | | | | ~~Suffolk~~ County (404): ~~Suffolk County (404)~~ |

| Indemnity Company | 12 CBP 400297* | 6/1/1974 | 6/1/1977 | | | | Suffolk County (404) |
|---|---|---|---|---|---|---|---|
| | | *6/1/1974* | *1/1/1976* | $300,000.00 | $300,000.00 | | |
| | | *1/1/1976* | *6/1/1977* | $500,000.00 | $500,000.00 | | |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and/or coverage for Direct Abuse Claims.

38

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attach |
|---|---|---|---|---|---|---|
| ~~Hartford Accident and Indemnity Company~~ | ~~12 CBP 400656~~ | ~~6/1/1977~~_1/1/1976_ | ~~6/1/1980~~_6/1/1977_ | $500,000.00 | $500,000.00 | |
| Hartford Accident and Indemnity Company | 12 CBP 400656 | 6/1/1977 | 6/1/1980 | $500,000.00 | $500,000.00 | |
| Hartford Accident and Indemnity ~~Hartford Accident and Indemnity~~ Company | 21 SMP 118708* | 9/15/1975 | 1/1/1978 | $500,000.00 | $500,000.00 | |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and Direct Abuse Claims.

39

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Attachment |
|---|---|---|---|---|---|---|
| Hartford Accident and Indemnity ~~Hartford Accident and Indemnity~~ Company | 82 UUN PN2419* | 6/1/1985 | 6/1/1986 | $25,000.00 | Unknown | |
| Hartford Accident and Indemnity ~~Hartford Accident and Indemnity~~ Company | 83 UUN PN2419 (*CANCELLED* ~~82 UUN PN2419~~*FLAT)* | 6/1/1986 | 6/1/1987 | $25,000.00 | Unknown | |
| Hartford Accident and Indemnity Company | 01 C 530923* | 5/1/1972 | 5/1/1973 | Unknown | Unknown | |

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of the policy and Direct Abuse Claims.

*[Link-to-previous setting changed from on in original to off in modified.].*

| Insurance Company | Policy Number | Start Date | End Date | Occurrence Limit | Aggregate Limit | Atta... |
|---|---|---|---|---|---|---|
| ~~Hartford Accident and Indemnity~~ | ~~01 C 530923*~~ | ~~5/1/1972~~ | ~~5/1/1973~~ | ~~Unknown~~ | ~~Unknown~~ | |
| Hartford Accident and Indemnity Company | 01 C 531176* | 5/1/1972 | 5/1/1973 | Unknown | Unknown | |
| Hartford Accident and Indemnity Company | 01 HU 300166 | 12/15/1972 | 12/15/1975 | $2,000,000.00 | $2,000,000.00 | Unk... |

~~75~~

An asterisk (*) denotes a policy (or alleged policy) for which the Parties dispute the existence of <u>the policy</u> Direct Abuse Claims.

*[Link-to-previous setting changed from on in original to off in modified.].*

## Exhibit C

### Joinder of State Court Counsel

By execution hereof, the law firm identified below ("Firm") joins the Settlement Agreement and Release dated as of_____(the "Agreement") between and among Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, Navigators Specialty Insurance Company, Boy Scouts of America and Delaware BSA, LLC, the Ad Hoc Committee of Local Councils of the Boy Scouts of America, the Coalition of Abused Scouts for Justice, solely and only in its capacity as an ad hoc committee, and James L. Patton, Jr., the legal representative appointed by the Bankruptcy Court for holders of future Abuse Claims, as a "Joining State Court Counsel," as such term is defined in the Agreement. The Firm avers that it has read the Agreement in full, understands the Agreement, and acknowledges its obligations to support the terms of and be bound by the Agreement.

By: _____

Authorized
Representative: _____

Firm: _____

Notice Address: _____

Date: _____

## Exhibit D

### Joinder of Local Council

By execution hereof, the Local Council of the Boy Scouts of America identified below ("Local Council") joins the Settlement Agreement and Release dated as of_____(the "Agreement") between and among Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, Navigators Specialty Insurance Company, Boy Scouts of America and Delaware BSA, LLC, the Ad Hoc Committee of Local Councils of the Boy Scouts of America, the Coalition of Abused Scouts for Justice, solely and only in its capacity as an ad hoc committee, and James L. Patton, Jr., the legal representative appointed by the Bankruptcy Court for holders of future Abuse Claims, as a "Joining Local Council," as such term is defined in the Agreement. The Local Council avers that it has read the Agreement in full, understands the Agreement, and acknowledges its obligations to support the terms of and be bound by the Agreement, including the provisions of the Agreement requiring the Local Council to fully and forever release and discharge the Hartford Protected Parties (as defined in the Agreement) from any and all Released Claims (as defined in the Agreement).


By: _____

Authorized
Representative: _____


Local Council: _____


Notice Address: _____

Date: _____

## Exhibit E

## Notice Addresses

| | |
|---|---|
| For Hartford: | With a copy to: |
| | |
| Monica M. Curtis | James P. |
| Deputy General Counsel, Head of | Ruggeri Joshua |
| Litigation The Hartford | Weinberg |
| One Hartford Plaza | Shipman & Goodwin |
| Hartford, CT | LLP 1875 K Street, Suite |
| 06155 | 600 |
| (860) 547-3846 | Washington, DC 20006 |
| monica.melchionni@thehartford.com | (202) 469-7750 |
| | jruggeri@goodwin.co |
| | |
| | m and |
| | |
| | Philip D. Anker |
| | Wilmer Cutler Pickering Hale and Dorr |
| | LLP 7 World Trade Center |
| | 250 Greenwich St. |
| | New York, New York |
| | |
| For the Debtors: | With a copy to: |
| | |
| Steven P. McGowan | Jessica C. Lauria |
| General Counsel | White & Case LLP |
| Boy Scouts of America | 1221 Avenue of the Americas |
| 1325 West Walnut Hill Lane | New York, NY 10020 |
| Irving, TX 75038 | (212) 819-8200 |
| (972) 580-7847 | jessica.lauria@whitecase.com |
| steve.mcgowan@scouting.org | |
| | Michael C. Andolina |
| | Matthew E. Linder |
| | White & Case LLP |
| | 111 South Wacker Drive |
| | Chicago, IL 60606 |
| | (312) 881-5400 |
| | mandolina@whitecase.com |
| | |
| | For the Coalition: |
| | |
| | David J. Molton |
| | Eric R. Goodman |
| | Coalition of Abused Scouts for Justice |
| | c/o Brown Rudnick LLP |

~~Seven Times Square New York, NY (212) 209-4800 dmolton@brownrudnick.com egoodman@brownrudnick.com sbeville@brownrudnick.com taxelrod@brownrudnick.com~~

~~For the FCR:~~

~~James L. Patton Robert S. Brady Edwin J. Harron c/o Young Conaway Stargatt & Taylor, LLP Rodney Square 1000 North King Street Wilmington, Delaware 19801 jpatton@ycst.com~~

~~For AHCLC:~~

~~Richard G. Mason Joseph C. Celentino Ad Hoc Committee of Local Councils c/o Wachtell, Lipton, Rosen & Katz 51 West 52nd Street New York, New York 10019 (212) 403-1000 RGMason@wlrk.com JCCelentino@wlrk.com~~

With a copy to:

James P. Ruggeri
Joshua Weinberg
Ruggeri Parks Weinberg LLP 1875 K Street, Suite 600
Washington, DC 20006
(202) 984-1400
jruggeri@ruggerilaw.com
jweinberg@ruggerilaw.com

and

Philip D. Anker
Wilmer Cutler Pickering Hale and Dorr LLP 7 World Trade Center
250 Greenwich St.
New York, New York 10007 (212) 230-8890
Philip.Anker@Wilmerhale.com

For Hartford:

Monica M. Curtis
Deputy General Counsel, Head of Litigation
The Hartford
One Hartford Plaza
Hartford, CT 06155
(860) 547-3846
monica.melchionnicurtis@thehartford.com

For the Debtors:

Steven P. McGowan General Counsel
Boy Scouts of America 1325 West

Walnut Hill Lane Irving, TX 75038
(972) 580-7847
steve.mcgowan@scouting.org

With a copy to:

Jessica C. Lauria
White & Case
LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200
jessica.lauria@whitecase.com

Michael C.
Andolina
Matthew E.
Linder White &
Case LLP
111 South Wacker Drive
Chicago, IL 60606
(312) 881-5400
mandolina@whitecase.com
mlinder@whitecase.com

For the Coalition:

David J. Molton
Eric R. Goodman
Coalition of Abused Scouts for Justice
c/o Brown Rudnick LLP
Seven Times Square
New York, NY
(212) 209-4800
dmolton@brownrudnick.com
egoodman@brownrudnick.com
sbeville@brownrudnick.com
taxelrod@brownrudnick.com

For the FCR:

James L. Patton
Robert S. Brady
Edwin J. Harron
c/o Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
jpatton@ycst.com
rbrady@ycst.com
eharron@ycst.com

For AHCLC:

Richard G. Mason
Joseph C. Celentino
Ad Hoc Committee of Local Councils
c/o Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York 10019
(212) 403-1000
RGMason@wlrk.com
JCCelentino@wlrk.com

2