# EXHIBIT 2

**Zurich Insurance Settlement Agreement**

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (this "Agreement"), dated February 14, 2022, is entered into between and among American Zurich Insurance Company, American Guarantee & Liability Insurance Company, and Steadfast Insurance Company (as defined herein and collectively, the "Zurich Insurers"), Boy Scouts of America and Delaware BSA, LLC, as debtors and debtors in possession (as defined herein and collectively, "BSA" or the "Debtors"), the Ad Hoc Committee of Local Councils (the "AHCLC"), the Coalition of Abused Scouts for Justice, solely and only in its capacity as an ad hoc committee (the "Coalition"),[1] and the Future Claimants' Representative (the "FCR" and, collectively with Zurich Insurers, the Debtors, the AHCLC, and the Coalition, the "Parties").[2]  The attorneys representing holders of Direct Abuse Claims listed on Schedule 1 hereto, which reflects the number of holders of Abuse Claims represented by each firm (the "State Court Counsel"), agree to support the terms of, and be bound by, this Agreement.

WHEREAS, on February 18, 2020, the Debtors commenced proceedings under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court;

WHEREAS, the Zurich Insurers have allegedly issued insurance policies covering or allegedly covering Claims and Causes of Action for Abuse involving Scouting that occurred prior to the Petition Date;

WHEREAS, the Parties wish to resolve disputes concerning such policies;

WHEREAS, subject to the terms and conditions set forth herein, the Zurich Insurers will pay the Settlement Amount (as defined herein) in exchange for the injunctions, releases, and other protections described below;

WHEREAS, among other things, the settlement provides for the channeling and release of all Abuse Claims against the Zurich Insurers (and against their insureds under policies issued by the Zurich Insurers that may cover such Claims) in exchange for the Settlement Amount;

WHEREAS, on December 21, 2021 (the "Term Sheet Effective Date"), the Parties executed a term sheet in the form attached hereto as Exhibit B (the "Term Sheet"), setting forth the basic terms of their settlement; and

WHEREAS, the Debtors filed their Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC (as it may subsequently be amended from time to time, the "Plan").

Capitalized terms not defined in this Agreement shall have the definitions ascribed to such terms in the Plan.

---

[1]  For the avoidance of doubt, no holders of Direct Abuse Claims are or shall be deemed Parties to this Agreement.

[2]  Notwithstanding anything to the contrary in this Agreement, the obligations and undertakings of the AHCLC in connection with this Agreement shall be no greater than the AHCLC's parallel obligations and undertakings under Section III of the Restructuring Support Agreement (including the "No Liability" subsection thereof) filed at D.I. 5466-2.

1. **Agreement Effective Date**. This Agreement shall be binding on the Parties, subject to Bankruptcy Court approval, as necessary, and Sections 27, 28, and 29 below, when the last of the Parties to execute this Agreement has executed this Agreement.

2. **Settlement Amount**. In consideration of the releases and other consideration provided for herein, the Zurich Insurers shall pay in cash Fifty-two million, five hundred thousand U.S. Dollars ($52,500,000.00) (the "Settlement Amount"), free and clear of all liens, claims, or interests, to the Settlement Trust for Abuse Claims to be created under the Plan (the "Settlement Trust" or "Trust"). No most-favored nation or similar provision will reduce the Settlement Amount to be paid by the Zurich Insurers based on any settlements that BSA may enter into with other insurers. Zurich Insurers shall be entitled to allocate the Settlement Amount in their sole discretion among any Zurich Insurer Policies, provided that (i) any such allocation shall not bind the Trust and (ii) Zurich Insurers and Zurich Affiliated Insurers will not allocate the Settlement Amount to any other insurance policy issued directly to a Chartered Organization by Zurich Insurers and Zurich Affiliated Insurers. The foregoing allocation of the Settlement Amount will not affect the extent and scope of the releases provided herein, including Sections 7 and 8 hereof.

3. **Payment and Release of the Settlement Amount**.

a) On, or as soon as reasonably practicable after the Plan Effective Date, the Zurich Insurers shall pay the Settlement Amount into an escrow account (the "Escrow Account"), to be administered by an independent escrow agent acceptable to the Parties.

b) The Settlement Amount (and all income earned thereon in the Escrow Account, minus (i) the fees of the escrow agent, and (ii) any taxes that are payable and other costs of the Escrow Account, which amounts in (i) and (ii) shall be paid from the corpus of the Escrow Account (such income (or loss) minus such amounts, the "Net Income")) shall remain in the Escrow Account until the Confirmation Order becomes a Final Order, on which date the balance of the Escrow Account, which shall include any Net Income, shall be released from the Escrow Account to the Trust (the "Release Date"); *provided, however,* that, at its election, Zurich Insurers may authorize the payment of the Settlement Amount directly to the Trust on the Effective Date or may authorize the release of the Settlement Amount (and any Net Income) from the Escrow Account to the Trust at any time thereafter before the Confirmation Order becomes a Final Order, in which event the date on which Zurich Insurers authorize the payment or release of the Settlement Amount to the Trust shall be the Release Date.

c) The Escrow Account shall be a simple interest-bearing account; the Settlement Amount shall not be invested in any manner that subjects the Settlement Amount to any risk of loss. The Debtors, Reorganized BSA, the Local Councils, and Chartered Organizations shall have no liability or obligations to Zurich Insurers or the Trust, the Trust shall have no liability or obligations to Zurich Insurers, and Zurich Insurers shall have no liability or obligations to the Trust (or any other Party), whatsoever for any loss or reduction of the Settlement Amount while it is in the Escrow Account.

d) Notwithstanding anything to the contrary herein, the Settlement Amount and any amounts in the Escrow Account, including the Net Income, shall be promptly (and no later than

seven (7) Business Days after the date of such written demand, unless otherwise agreed to by the Parties) released to Zurich Insurers upon their written demand if any of the following occur: (i) the District Court does not enter the Affirmation Order within 360 days after the entry of the Confirmation Order by the Bankruptcy Court or the District Court declines to enter the Affirmation Order (whether or not such denial constitutes a remand or a Reversal, as defined herein); (ii) the Plan is at any time withdrawn; (iii) the Plan otherwise ceases to conform to this Agreement; (iv) the Confirmation Order is reversed or vacated on appeal following the Effective Date such that the Release Date does not occur (a "Reversal"); (v) the Chapter 11 Cases have been converted or dismissed; (vi) the Parties agree to such release in writing; or (vii) an order of the Bankruptcy Court or District Court so provides. In such event, the Parties' rights and obligations under this Agreement shall be governed by Sections 26, 27, 28 and 29 herein.

4. **Protections to be Afforded to the Zurich Insurers and Zurich Affiliated Insurers**.

a) Effective as of the Release Date, Zurich Insurers and Zurich Affiliated Insurers are to be designated as Settling Insurance Companies and Protected Parties for all purposes under the Plan and granted all associated releases, injunctions (including the Settling Insurer Policy Injunction), and protections. As set forth herein, Zurich Insurers and Zurich Affiliated Insurers shall be granted such releases, injunctions, and protections as are necessary to deliver finality with respect to: all known and unknown insurance policies they issued to BSA and Local Councils covering or potentially covering Claims or Causes of Action related to, arising from, or in connection with Abuse Claims, which shall include those identified on Exhibit A and any and all policies issued on or after January 1, 1987 and any other insurance policy issued by any of the Zurich Insurers and Zurich Affiliated Insurers, including Zurich Insurer Policies, covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims; any actions, omissions, or positions taken in connection with any Abuse Claims and/or the Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date related to any Abuse Claims and/or policy issued by the Zurich Insurers or Zurich Affiliated Insurers concerning the Debtors or Scouting, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations thereunder whether for defense, settlement of claims, or otherwise. Notwithstanding anything to the contrary, the BSA, Local Councils, and Participating Chartered Organizations and Contributing Chartered Organizations are not releasing or enjoining any rights under (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) other than the right to seek coverage for and/or to pursue any Claims or Causes of Action related to, arising from, or in connection with Abuse Claims, any actions, omissions, or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings, and any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations under such policies whether for defense, settlement of claims, or otherwise, and (ii) Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from, or in connection with any actions, omissions, or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from, or connected with actions or omissions

occurring prior to the Effective Date, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations under such policies whether for defense, settlement of claims, or otherwise.

b) To preserve and promote the settlements contemplated by and provided herein and in the Plan, and to supplement, where necessary, the injunctive effect of the Discharge as provided in sections 1141 and 524 of the Bankruptcy Code and as described in Article X of the Plan, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court and the District Court under section 105(a) of the Bankruptcy Code, (i) the sole recourse of any holder of an Abuse Claim against a Zurich Insurer or Zurich Affiliated Insurer on account of such Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Zurich Insurer or Zurich Affiliated Insurer or any property or interest in property of any Zurich Insurer or Zurich Affiliated Insurer, (ii) the sole recourse of any holder of a Post-1975 Chartered Organization Abuse Claim against a Limited Protected Party on account of such Post-1975 Chartered Organization Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Post-1975 Chartered Organization Abuse Claim against any Limited Protected Party or any property or interest in property of any Limited Protected Party, (iii) the sole recourse of any holder of an Abuse Claim against a Limited Protected Party if such Abuse Claim is covered under any insurance policy issued by any Zurich Insurer or Zurich Affiliated Insurer, shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Limited Protected Party or any property or interest in property of any Limited Protected Party, (iv) the sole recourse of any holder of an Opt-Out Chartered Organization Abuse Claim against an Opt-Out Chartered Organization on account of such Opt-Out Chartered Organization Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Opt-Out Chartered Organization Abuse Claim against any Opt-Out Chartered Organization or any property or interest in property of any Opt-Out Chartered Organization. For the avoidance of doubt, the sole recourse for any holder of an Abuse Claim covered by any insurance policy issued by a Zurich Insurer or Zurich Affiliated Insurer shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents. Accordingly, on and after the Plan Effective Date, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Abuse Claim against the Protected Parties, or any of them, or any Post-1975 Chartered Organization Abuse Claim against the Limited Protected Parties, or any of them, or any Abuse Claim against the Limited Protected Parties if such Abuse Claim is covered under any insurance policy issued by any Zurich Insurer or Zurich Affiliated Insurer, or any Opt-Out Chartered Organization Abuse Claim against the Opt-Out Chartered Organizations, or any of them, shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Protected Party with respect to any such Abuse Claim, or from any Limited Protected Party with respect to any such Abuse Claim if such Abuse Claim is covered under any insurance policy issued by any Zurich Insurer or Zurich Affiliated Insurer, or from any Limited Protected Party with respect to

any such Post-1975 Chartered Organization Abuse Claim, or from any Opt-Out Chartered Organization with respect to any Opt-Out Chartered Organization Abuse Claim, other than from the Settlement Trust pursuant to the Settlement Trust Documents, including:

i) commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization, or any property or interest in property of any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization;

ii) enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any property or interest in property of any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization;

iii) creating, perfecting, or otherwise enforcing in any manner, whether directly or indirectly, any Encumbrance of any kind against any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization, or any property or interest in property of any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization;

iv) asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization, or any property or interest in property of any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization; or

v) taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Abuse Claim, Post-1975 Chartered Organization Abuse Claim, or Opt-Out Chartered Organization Abuse Claim.

c) The Plan and the Confirmation Order shall provide for a channeling injunction substantially on the terms set forth in clause (b) above (the "Channeling Injunction," as defined herein) and a full release of the Zurich Insurers and Zurich Affiliated Insurers with respect to all Claims or Causes of Action related to, arising from, or in connection with Abuse Claims (which shall be conveyed to the Debtors and/or the Trust), including but not limited to the types of claims listed in the Insurance Actions definition in the Plan and other Claims related to the Zurich Insurer Policies subject to the limitations stated in this Section 4 (as applicable to Postpetition Insurance Policies and Non-Abuse Insurance Policies). All injunctions, including the Settling Insurer Policy Injunction, shall remain in place between

the Plan Effective Date and the Release Date (and thereafter) such that any and all Claims and Causes of Action that are to be released or channeled through the Plan and this Agreement shall be continuously enjoined pending their release. The Zurich Insurers and Zurich Affiliated Insurers shall be Protected Parties under the Plan and have no fewer rights or protections than are afforded the Local Councils (other than the limited indemnity provided under Article IV.L of the Plan) or any other person or entity by virtue of their status as a Protected Party with respect to any injunctions, releases, or other protections provided thereto.

d) Solely for purposes of administering the releases and channeling injunctions provided in this Agreement, the Plan, and the Confirmation Order, and not for any other purpose, any liability insurance policies that were issued or may have been issued by the Zurich Insurers or Zurich Affiliated Insurers shall be automatically deemed to "cover" or provide "coverage" for an Abuse Claim against a Chartered Organization if (i) such policy includes the Chartered Organization as an insured or additional insured, including by referring categorically to chartered organizations, charters, sponsoring organizations, or sponsors as insureds or additional insureds, and (ii) such policy was in effect when the alleged Abuse underlying such Abuse Claim allegedly took place; provided, however, that nothing in the preceding portions of this Section 4(d) shall be offered or interpreted as an admission by the Zurich Insurers or Zurich Affiliated Insurers of any fact or issue for any purpose, and shall not be cited as a basis to impose liability on, or increase the liability of, any Zurich Insurer or Zurich Affiliated Insurer under any circumstance or any insurance policy. This Section 4(d) does not limit the assignment of the Claims and Causes of Action set forth in Section 23 of this Agreement.

e) Nothing in this Agreement will release claims for reinsurance under reinsurance contracts that the Zurich Insurers issued to other insurance companies, and the Parties agree to modify the injunction provisions in the Plan to state that such claims for reinsurance will not be enjoined.

5. **Sale of Zurich Insurer Policies**. Entry of the Confirmation Order shall be a condition precedent of this Agreement. The Confirmation Order shall provide that (a) on the Plan Effective Date and subject to the limitations set forth in this Section 5 of this Agreement, in exchange for the Settlement Amount, the Zurich Insurer Policies shall be sold by Debtors and the Debtors' Estates to Zurich Insurers free and clear of all liens, claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, of any person or entity, including those of the Debtors, the Local Councils, the Contributing Chartered Organizations, the Participating Chartered Organizations, Chartered Organizations, and their respective Representatives, creditors and interest holders in the Zurich Insurer Policies, pursuant to sections 363, 1123, and/or 1141 of the Bankruptcy Code (the "Sale"), (b) the Sale shall exclude the Postpetition Insurance Policies and Non-Abuse Insurance Policies, (c) the Sale represents a sound exercise of the Debtors' business judgment, will yield a fair and reasonable price for the assets being sold, is in the best interests of the Debtors' Estates, and otherwise complies with section 363 of the Bankruptcy Code, (d) the proceeds of such Sale shall constitute property transferred to the Trust under the Plan, (e) the Confirmation Order shall designate Zurich Insurers as good faith purchasers and shall provide that the Sale constitutes a purchase by Zurich Insurers in good faith pursuant to section 363(m) of the Bankruptcy Code, rendering the provisions

of section 363(m) applicable and affording Zurich Insurers all protections thereunder, and (f) unless the Coalition and the FCR agree otherwise, no person or entity, including a person or entity that is co-liable with the Debtors for Direct Abuse Claims or Scouting-related Abuse, shall have any right to or an interest in the Settlement Amount that would directly or indirectly prevent the Settlement Amount from being paid to the Trust for the benefit of the holders of Direct Abuse Claims, *provided, however*, nothing herein shall prevent the Trust from using the Settlement Amount in accordance with the Trust Agreement and the Trust Distribution Procedures. Without limiting the foregoing, although the Parties do not believe that the Sale would constitute a violation of the automatic stay of any Chartered Organization that is a debtor in bankruptcy and that asserts an interest in one or more Zurich Insurer Policies, to the extent the Bankruptcy Court (or other court with jurisdiction) determines that the Sale would constitute such a violation, then the Parties shall seek a determination from the Bankruptcy Court that they may proceed with the Sale or relief from such stay to effectuate the Sale.

6. **Trust Bound by Agreement**. Upon the Effective Date, the Trust shall be bound by all terms of this Agreement. Upon the Release Date, the Trust shall release Zurich Insurers and Zurich Affiliated Insurers from all Causes of Action and Claims that the Trust holds relating to the Zurich Insurer Policies, provide the other releases contained in this Agreement, and otherwise perform as required by this Agreement.

7. **Release by Zurich Insurers and Zurich Affiliated Insurers**. Upon the Release Date, subject to the limitations below and those set forth in Section 14, Zurich Insurers and Zurich Affiliated Insurers and their Representatives shall automatically, without further action on the part of any Person or Entity, release the Debtors, Reorganized BSA, the Related Non-Debtor Entities, the Local Councils, Limited Protected Parties, other Protected Parties (including the Contributing Chartered Organizations), other Settling Insurance Companies, the FCR, the Coalition, the Trust, and each of their Representatives from all Causes of Action and Claims related to, arising from, or in connection with, in whole or in part (a) Abuse Insurance Policies (which shall include all Zurich Insurer Policies), (b) any other insurance policy issued by Zurich Insurers and Zurich Affiliated Insurers covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims, (c) the types of claims listed in the Insurance Actions definition in the Plan, including extra-contractual claims relating to the Zurich Insurer Policies and including the Debtors' performance of their obligations thereunder, whether for defense, settlement of claims, or otherwise, (d) the Chapter 11 Cases and related proceedings, including the Plan and any prior plans, any Claims that were or could have been asserted by Zurich Insurers and Zurich Affiliated Insurers against the Debtors or any of the Releasing Parties, or by the Debtors or any of the Releasing Parties against Zurich Insurers and Zurich Affiliated Insurers, in the Debtors' Chapter 11 Cases, or any actions, omissions, or positions taken in the Chapter 11 Cases and related proceedings; (e) all Claims and Causes of Action alleging Abuse Claims against the Protected Parties (including such Claims and Causes of Action related to any Zurich Insurer Policy), and (f) any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date related to any policy issued by Zurich Insurers and Zurich Affiliated Insurers concerning the Debtors or Scouting, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations thereunder, whether for defense, settlement of claims, or otherwise. Nothing shall preclude Zurich Insurers and Zurich Affiliated Insurers from enforcing the terms of this Agreement. Furthermore, nothing in this Agreement or the Plan shall constitute a release of any Claim by Zurich Insurers or Zurich Affiliated Insurers or their

Representatives or any rights related to, or Claims concerning, (i) Non-Abuse Insurance Policies, (ii) reinsurance, or (iii) Postpetition Insurance Policies, and shall not include any insurance policies for which the Zurich Insurers or Zurich Affiliated Insurers become responsible or acquire on or after the Term Sheet Effective Date. The Parties expressly acknowledge that there may be changes in the law and/or that they may hereafter discover facts different from, or in addition to, those that they now believe to be true with respect to any and all of the Claims or Causes of Action released in this Section 7. Nevertheless, the Parties hereby agree that the releases set forth in this Section 7 shall be and remain effective in all respects, notwithstanding any changes in the law and/or the discovery of such additional or different facts.

8. **Release of Zurich Insurers and Zurich Affiliated Insurers**. Upon the Release Date, subject to the limitations below and those set forth in Section 14, the Debtors, Reorganized BSA, the Related Non-Debtor Entities, the Local Councils, Limited Protected Parties (including Participating Chartered Organizations), other Protected Parties (including the Contributing Chartered Organizations), other Settling Insurance Companies, the FCR, the Coalition, the Trust, and all such Persons' or Entities' Representatives (the "Releasing Parties") shall automatically, without further action on the part of any Person or Entity, release Zurich Insurers and Zurich Affiliated Insurers and each of their Representatives from all Causes of Action and Claims related to, arising from, or in connection with, in whole or in part (a) Abuse Insurance Policies (which shall include all Zurich Insurer Policies), (b) any other insurance policy issued by Zurich Insurers or Zurich Affiliated Insurers covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims, (c) the types of claims listed in the Insurance Actions definition in the Plan and other Claims relating to the Zurich Insurer Policies and including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations thereunder, whether for defense, settlement of claims, or otherwise, including extra-contractual claims relating to the Zurich Insurer Policies, (d) the Chapter 11 Cases and related proceedings, including the Plan and any prior plans, any Claims that were or could have been asserted by Zurich Insurers and Zurich Affiliated Insurers against the Debtors or any of the Releasing Parties, or by the Debtors or any of the Releasing Parties against Zurich Insurers and Zurich Affiliated Insurers, in the Chapter 11 Cases, or any actions, omissions, or positions taken in the Chapter 11 Cases and related proceedings, (e) all Claims and Causes of Action alleging Abuse Claims against the Protected Parties (including such Claims and Causes of Action related to any Zurich Insurer Policy), and (f) any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date related to any policy issued by Zurich Insurers and Zurich Affiliated Insurers concerning the Debtors or Scouting, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations thereunder whether, for defense, settlement of claims, or otherwise. If another Settling Insurance Company receives broader releases or protections concerning Causes of Action and Claims related to its policies (including its Abuse Insurance Policies) than those provided to Zurich Insurers or Zurich Affiliated Insurers in this Agreement or the Plan, then Zurich Insurers and Zurich Affiliated Insurers shall receive the benefit of those broader releases and protections automatically and without the necessity of further actions by the Parties. The release of Zurich Insurers and Zurich Affiliated Insurers shall not affect claims against other insurance companies, subject to the limitation that Zurich Insurers and Zurich Affiliated Insurers shall not assert claims against other Settling Insurance Companies. Nothing shall preclude the Releasing Parties from enforcing the terms of this Agreement and the Plan. For the avoidance of doubt, the term "Releasing Parties" shall include (1) all of such parties' respective past,

present, and future direct or indirect parents, subsidiaries, affiliates, and controlled entities, and each of their respective officers, directors, stockholders, members, partners, managers, employees, attorneys, agents, experts, consultants, volunteers, predecessors, successors, and assigns, each in their capacity as such (including any of the foregoing who is an alleged Perpetrator), and (2) to the extent of any party's right, power, and authority to do so, any and all other persons or entities entitled to assert rights to coverage under any of the Zurich Insurer Policies or any policy of insurance issued to or for the benefit of such releasing party related to Abuse Claims. The releases in this Section 8 shall be subject to and limited by Section 5 (as applicable to Postpetition Insurance Policies and Non-Abuse Insurance Policies), and shall not include any insurance policies for which the Zurich Insurers or Zurich Affiliated Insurers become responsible or acquire on or after the Term Sheet Effective Date.[3] The Parties expressly acknowledge that there may be changes in the law and/or that they may hereafter discover facts different from, or in addition to, those that they now believe to be true with respect to any and all of the Claims or Causes of Action released in this Section 8. Nevertheless, the Parties hereby agree that the releases set forth in this Section 8 shall be and remain effective in all respects, notwithstanding any changes in the law and/or the discovery of such additional or different facts.

9. **Participating Chartered Organizations**. Under the Plan and as a condition to the Plan Effective Date (waiver of which shall require the prior written consent of, among others, the Zurich Insurers), in order to obtain the benefit of (1) the Settling Insurer Policy Injunction and (2) the Full Post-1975 Injunction, Participating Chartered Organizations shall be required to provide, or be deemed to provide, the following assignment of their insurance rights (the "Participating Chartered Organization Insurance Assignment"): any and all of the Participating Chartered Organizations' rights, titles, privileges, interests, claims, demands, or entitlements, as of the Plan Effective Date, to any proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, arising under, or attributable to (a) the Abuse Insurance Policies issued by the Zurich Insurers and any other Abuse Insurance Policies covering Abuse Claims alleging Abuse to have first occurred on or after January 1, 1976, (b) any other insurance policies issued by a Settling Insurance Company that cover Abuse Claims but only with respect to such coverage for Abuse Claims, (c) the Insurance Settlement Agreements (including this Agreement) and claims thereunder and proceeds thereof, (d) the types of claims listed in the Insurance Actions definition in the Plan (including with respect to the insurance policies issued by the Zurich Insurers), (e) the Insurance Action Recoveries (including with respect to the Zurich Insurer Policies), and (f) the Participating Chartered Organization Insurance Actions. In addition, in order to obtain the benefit of (i) the Settling Insurer Policy Injunction and (ii) the Full Post-1975 Injunction, Participating Chartered Organizations shall be required to make, or be deemed to make, the following contribution to the Trust ("Participating Chartered Organization Settlement Contribution"): (A) the Participating Chartered Organization Insurance Assignment; (B) to the extent of any rights, claims, or interests not assigned to the Trust

---

[3] For the avoidance of doubt, Zurich Insurers and Zurich Affiliated Insurers shall (a) receive the same releases and the same protections of the Channeling Injunction as Century Indemnity Company and Chubb Group Holdings, Inc. with respect to Chartered Organizations, including the release by the Participating Chartered Organizations and Contributing Chartered Organizations of coverage for Abuse Claims under insurance policies issued directly by Zurich Insurers and Zurich Affiliated Insurers to such Chartered Organizations, and (b) provide the same releases as Century Indemnity Company and Chubb Group Holdings, Inc. with respect to Chartered Organizations.

pursuant to the Participating Chartered Organization Insurance Assignment, the waiver and complete release of (I) each of the Participating Chartered Organization's rights, titles, privileges, interests, claims, demands, or entitlements under the Zurich Insurer Policies and any other insurance policy issued by the Zurich Insurers with respect to Claims or Causes of Action involving Abuse Claims, concerning such coverage for Abuse Claims; (II) any Claim held by the Participating Chartered Organization that is attributable to, arises from, is based upon, relates to, or results from, in whole or part, directly, indirectly, or derivatively (including through any insurance policy issued by the Zurich Insurers), alleged Abuse Claims that occurred prior to the Petition Date against the Settlement Trust, the Debtors, Reorganized BSA, the Local Councils, any Contributing Chartered Organization, or the Zurich Insurers; and (III) any and all Claims that have been asserted in the Chapter 11 Cases by or on behalf of any Participating Chartered Organization, including any Indirect Abuse Claims, without any further notice or action, order, or approval of the Bankruptcy Court, which Claims shall be expunged from the Claims Register, and the agreement of each Participating Chartered Organization not to (y) file or assert any Claim or Claims against the Trust, the Debtors, or Reorganized BSA arising from any act or omission of the Debtors, the Local Councils, any Contributing Chartered Organization, or any Participating Chartered Organization on or prior to the Confirmation Date and (z) file or assert any rights or interests in any property transferred to the Trust under the Plan, including the proceeds of any settlements paid by an Settling Insurance Company; and (C) the assignment to the Trust of any and all Perpetrator Indemnification Claims held by the Participating Chartered Organizations. Other than the TCJC and the United Methodist Entities, no Chartered Organization may become a Contributing Chartered Organization without making a contribution in form and substance equivalent to the Participating Chartered Organization Settlement Contribution and agreeing to be bound by the terms and conditions of this Agreement.

10. **Protections Afforded to Insureds and Co-Insureds**.  On the Release Date, all Abuse Claims against insureds and co-insureds covered under insurance policies issued by the Zurich Insurers or Zurich Affiliated Insurers, including the Zurich Insurer Policies, shall be channeled and enjoined under the Settling Insurer Policy Injunction and released. Pending the occurrence of the Release Date, all such Abuse Claims shall be enjoined pursuant to the Post-Confirmation Interim Injunction, as provided herein.

11. **Bankrupt Chartered Organizations**.  The BSA shall use its best efforts to work with the Roman Catholic Ad Hoc Committee and the Chartered Organizations that are debtors in bankruptcy (the eight bankrupt entities identified on Exhibit K to the Plan, which may be amended to the extent that additional Chartered Organizations file for bankruptcy protection prior to entry of the Confirmation Order, each a "Bankrupt Chartered Organization") to obtain written consent for such Bankrupt Chartered Organization to consent to the terms of this Agreement.  To the extent that a Bankrupt Chartered Organization does not agree to provide written consent to the terms of this Agreement, the Parties will use reasonable efforts to jointly resolve such non-consent, which may, upon the consent of the Parties, include excluding such Bankrupt Chartered Organization from the protections and benefits otherwise provided herein, provided that the failure to obtain such consent as it applies to the applicable Bankrupt Chartered Organizations shall not be deemed a breach of this Agreement by any Party or a failure to satisfy a condition to the effectiveness of the Plan.  The Zurich Insurers reserve all rights and defenses they have under policies issued to Bankrupt Chartered Organizations that do not consent to the terms of this Agreement.

12. **Opt-Out Chartered Organizations**.

a) Opt-Out Chartered Organizations by definition are not Participating Chartered Organizations, Limited Protected Parties, or Contributing Chartered Organizations. The term "Opt-Out Chartered Organization," on the one hand, and the terms Participating Chartered Organizations, Limited Protected Parties, and Contributing Chartered Organizations, on the other hand, are mutually exclusive.

b) Under the Plan and as a condition to the Plan Effective Date (waiver of which shall require the prior written consent of, among others, the Zurich Insurers), on the Release Date, any Opt-Out Chartered Organization shall receive the benefit of the Settling Insurer Policy Injunction and the release of all Abuse Claims that are covered under insurance policies issued by Zurich Insurers and Zurich Affiliated Insurers, including the Zurich Insurer Policies.

c) For the avoidance of doubt, nothing herein or in the Plan shall require an Opt-Out Chartered Organization to provide an assignment or release with respect to its rights under insurance policies issued directly to such organization, including the releases set forth in Sections 7 and 8 hereof. The rights of the Opt-Out Chartered Organizations provided under insurance policies issued directly to such organization are preserved, provided that the Zurich Insurers, Zurich Affiliated Insurers, and the Opt-Out Chartered Organizations may enforce and rely upon the channeling and release of Abuse Claims against an Opt-Out Chartered Organization as set forth in Section 10 hereof for all purposes. All rights and defenses of the Zurich Insurers and Zurich Affiliated Insurers under insurance policies issued directly to an Opt-Out Chartered Organization are preserved. The foregoing provision will be added to the Plan, including the channeling injunction.

d) If, however, a Chartered Organization that is an Opt-Out Chartered Organization wants to become a Contributing Chartered Organization, (i) a financial contribution must be made by or on behalf of such Opt-Out Chartered Organization, (ii) such Chartered Organization must agree to provide the assignments and releases set forth in Sections 7 and 8, and (iii) if and to the extent required by BSA, such Chartered Organization must agree to cooperate with the Child Protection Committee.

e) By definition, the Zurich Policies (including those set forth on Exhibit A) were issued directly to the BSA and were not issued directly to the Chartered Organizations.

13. **Post-Confirmation Interim Injunction**. The Plan and Confirmation Order shall provide that all injunctions and stays arising under or entered during the Chapter 11 Cases, whether under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date (the "Post-Confirmation Interim Injunction"), shall remain in full force and effect until the Release Date, any final injunctions are issued, or upon a Reversal or other condition that results in the return of the Escrowed Payments to the Zurich Insurers and Zurich Affiliated Insurers. To the extent not otherwise in place, the Plan shall provide that pending the occurrence of the Release Date and thereafter, any Claim that would be released or subject to a channeling injunction upon the occurrence of conditions set forth herein (including the occurrence of the Release Date) shall be stayed and enjoined pending

satisfaction of such conditions. Such injunction shall permit the filing, but not the prosecution, of the Abuse Claims against such Chartered Organizations.

14. **Abuse Claims Under Policies Issued to Chartered Organizations**. Notwithstanding the release by the Participating Chartered Organizations and Contributing Chartered Organizations of the right to seek coverage for Abuse Claims under insurance policies issued directly by Zurich Insurers or Zurich Affiliated Insurers to such Chartered Organizations:[4]

(a) Such Chartered Organizations are not barred from seeking defense and indemnification for claims that are not Abuse Claims under insurance policies issued by the Zurich Insurers or Zurich Affiliated Insurers directly to such Chartered Organizations, with all parties reserving their rights as to whether such insurance policies apply and to what extent.

(b) Such Chartered Organizations are not barred from seeking defense and indemnification for that portion of Mixed Claims unrelated to Scouting under such insurance policies, with all parties reserving their rights as to whether such insurance policies apply and to what extent. All Parties agree to cooperate to enforce the Post-Confirmation Interim Injunction and the Channeling Injunction to eliminate all or a portion of the Mixed Claims against the applicable Chartered Organizations.

(c) Such Chartered Organizations are not barred from seeking defense and indemnification under such insurance policies pending determination by a court of competent jurisdiction as to whether a Claim is a channeled Abuse Claim, with all parties reserving their rights as to whether such insurance policies apply and to what extent.

(d) To the extent a court determines that a claim against such Chartered Organizations is not an Abuse Claim or is not subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Plan, such Chartered Organizations may seek defense and indemnification of that claim from such insurance policies, with all parties reserving their rights as to whether such insurance policies apply and to what extent.

(e) To the extent a court determines that a claim against such Chartered Organizations is subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Plan, Zurich Insurers and Zurich Affiliated Insurers shall have no further obligations with respect to such claim.

(f) The Settlement Trust shall cooperate with any ongoing efforts by such Chartered Organizations and/or Zurich Insurers and Zurich Affiliated Insurers to establish that the Post-Confirmation Interim Injunction and the Channeling Injunction apply.

(g) The Zurich Insurers and Zurich Affiliated Insurers reserve all rights under their policies with respect to any Claim that is not an Abuse Claim (including the non-

---

[4] This provision does not apply to policies issued by the Zurich Insurers or Zurich Affiliated Insurers to the BSA, including those set forth on Exhibit A.

Scouting component of any Mixed Claim), none of which rights are waived or released hereunder.

15. **Contributing Chartered Organizations.** No Chartered Organization shall be a Contributing Chartered Organization unless it agrees to provide the assignments and releases set forth in Sections 7 and 8 of this Agreement.

16. **Finality**. Subject to the other terms of this Agreement, and so long as this Agreement remains in full force and effect and/or is not terminated, the Parties agree that (a) the Settlement Amount is the total amount that the Zurich Insurers and Zurich Affiliated Insurers will be obligated to pay under the Zurich Insurer Policies and (b) the Confirmation Order shall provide that on and after the Release Date and payment of the Settlement Amount (and subject to the limitations in Section 5 (as applicable to Postpetition Insurance Policies and Non-Abuse Insurance Policies), the Zurich Insurers and Zurich Affiliated Insurers shall be released from and shall not be obligated to make any additional payments to any Person (including, but not limited to, the BSA, the Local Councils, any Chartered Organization, and any entity actually or allegedly covered under insurance policies issued by the Zurich Insurers or Zurich Affiliated Insurers) for Abuse Claims, including those relating to or arising out of the Zurich Insurer Policies and the other Claims and Causes of Action released hereunder, subject to the limitations in Section 5 (as applicable to Postpetition Insurance Policies and Non-Abuse Insurance Policies).

17. **Judgment Reduction and Contribution**.

a) Zurich Insurers and Zurich Affiliated Insurers will not assert or file a Claim, and will dismiss without prejudice any pending Claims, seeking contribution, indemnity, and/or defense against another Entity in order to recover any portion of the Settlement Amount to be paid by Zurich Insurers under this Agreement. The Settlement Amount shall not be subject to any Claims for deductions, setoffs, or charge-backs by the Zurich Insurers or Zurich Affiliated Insurers of any kind, including Claims involving recoupment of deductibles, contribution, self-insured retentions, additional premiums, or retrospective or reinstatement premiums. For the avoidance of doubt, the Zurich Insurers and Zurich Affiliated Insurers shall maintain (i) an unfettered right to advise their reinsurers and retrocessionaires with respect to all matters related to this settlement, as well as the right to assert and recover claims against their reinsurers and retrocessionaires in their capacities as such, (ii) all rights with respect to any Claim that is not an Abuse Claim (including the non-Scouting component of a Mixed Claim) related to their policies as provided in Section 14 hereof, and (iii) claims against Bankrupt Chartered Organizations that do not consent to this Agreement and provide the releases and assignments set forth in Sections 7 and 8 hereof.

b) In the event that any other insurer obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from Zurich Insurers or Zurich Affiliated Insurers as a result of a Cause of Action for contribution, subrogation, indemnification, or other similar Cause of Action against Zurich Insurers or Zurich Affiliated Insurers for Zurich Insurers' or Zurich Affiliated Insurers' alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation for any Abuse Claim or for any Cause of Action released in this Agreement, the Trust shall voluntarily

reduce or limit its judgment or Cause of Action against, or settlement with, such other insurer(s) to the extent necessary to eliminate such contribution, subrogation, indemnification, or other similar Cause of Action against Zurich Insurers or Zurich Affiliated Insurers. To ensure that such a reduction is accomplished, Zurich Insurers and Zurich Affiliated Insurers shall be entitled to rely upon or assert this paragraph as a defense to any action against them for any such portion of the judgment or Cause of Action and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction described in this paragraph to protect Zurich Insurers and Zurich Affiliated Insurers from any liability for the judgment or Cause of Action.

c) To the extent any other insurer asserts a claim for contribution, subrogation, indemnification, or other similar Claim against the Zurich Insurers or Zurich Affiliated Insurers, nothing herein shall preclude the Zurich Insurers or Zurich Affiliated Insurers from asserting any defense to such claim, or from filing, asserting, or continuing to pursue a Claim seeking contribution, indemnity, or defense from that other insurer, provided that, (i) Zurich Insurers or Zurich Affiliated Insurers will provide timely notice to the Trust of the assertion of any Claims and Causes of Action assigned pursuant to Section 23 of this Agreement, (ii) Zurich Insurers or Zurich Affiliated Insurers shall obtain the consent of the Trust, which shall not be unreasonably withheld, to settle any such Claims and Causes of Action assigned pursuant to Section 23 of this Agreement, and (iii) to the extent that the Zurich Insurers or Zurich Affiliated Insurers recover from that other insurer, the proceeds of such recovery shall be paid by the Zurich Insurers or Zurich Affiliated Insurers per the instruction of the Trust or, if no Trust has been formed, the Debtors, after the Zurich Insurers or Zurich Affiliated Insurers are reimbursed from such proceeds for reasonable fees and costs they incurred after the date the Confirmation Order becomes a Final Order in defending the Claim asserted against the Zurich Insurers or Zurich Affiliated Insurers or prosecuting their Claim against that other insurer. For the avoidance of doubt, the Zurich Insurers and Zurich Affiliated Insurers shall maintain (i) an unfettered right to advise their reinsurers and retrocessionaires with respect to all matters related to this settlement, as well as the right to assert and recover claims against their reinsurers and retrocessionaires in their capacities as such, (ii) all rights with respect to the non-Scouting component of any Mixed Claims related to their policies as provided in Section 14 hereof, and (iii) claims against Opt-Out Chartered Organizations and Bankrupt Chartered Organizations that do not consent to this Agreement.

18. **Findings and Orders**.

a) The Plan and the Confirmation Order shall state that the Findings and Orders and Trust Distribution Procedures of the Plan are not binding on Zurich Insurers or Zurich Affiliated Insurers to the extent that Zurich Insurers or Zurich Affiliated Insurers are Settling Insurance Companies and the transactions contemplated herein, including the payment of the Settlement Amount to the Trust, are fully consummated. The Plan and Confirmation Order shall further provide that Zurich Insurers' and Zurich Affiliated Insurers' agreement herein not to object to the entry of said Findings and Orders in the Confirmation Order does not indicate Zurich Insurers' or Zurich Affiliated Insurers' support for or acceptance of the Trust Distribution Procedures or any findings and orders made in connection with them in any proceeding, which Findings and Orders and Trust Distribution Procedures shall not be

applicable to Zurich Insurers or Zurich Affiliated Insurers, and no party shall argue that Zurich Insurers or Zurich Affiliated Insurers agreed to or acquiesced in such Findings and Orders or Trust Distribution Procedures in any proceeding.

b) The Confirmation Order and all other orders issued by any appellate court that exercises jurisdiction over such orders, if any, shall approve the terms and provisions of this Agreement. For the avoidance of doubt, nothing herein shall cause any Zurich Insurer or Zurich Affiliated Insurer to be liable for any policy issued by or any obligation of any nature or kind owed by another Zurich Insurer or Zurich Affiliated Insurer (including any Zurich Insurer Policy issued by such other Zurich Insurer or Zurich Affiliated Insurer), person or entity other than itself.

c) Notwithstanding anything to the contrary herein, nothing will require the Zurich Insurers to take any position that would impair their ability to pursue objections to any plan in the event that this Agreement is terminated under Section 26 or 27. Subject to the foregoing, the Zurich Insurers and the Debtors will (i) take reasonable positions in court supporting the settlement provided herein and the Plan provisions that effectuate this Agreement, (ii) take reasonable positions in court supporting approval of such terms through the Confirmation Order, and (iii) will not assist any party in its opposition to the foregoing.

19. **Trust Distribution Procedures**. Subject to modification in a manner not inconsistent with this Agreement by the Debtors, the Coalition, and the FCR, the Trust Distribution Procedures may be in the form attached to the Plan, *provided that* Zurich Insurers and Zurich Affiliated Insurers shall be included as releasees, with respect to any Zurich Insurer Policies issued on or after January 1, 1987, in any form of release attached to the Trust Distribution Procedures to the same extent as BSA, Local Councils, or any other Protected Parties are released. The Trust Distribution Procedures shall further provide that the Settlement Trustee shall require holders of Abuse Claims who receive payment from the Trust to release any Abuse Claims against (a) the Zurich Insurers and Zurich Affiliated Insurers and (b) any insured or co-insured under the Zurich Insurer Policies or other policies issued by the Zurich Insurers or Zurich Affiliated Insurers covering or allegedly covering Claims or Causes of Action for Abuse Claims. The Zurich Insurers shall not object to the Trust Distribution Procedures but may add a statement in the Plan that the Zurich Insurers are Settling Insurance Companies and, as a result, take no position on the Trust Distribution Procedures. The Zurich Insurers shall not object to the selection of the Settlement Trustee. The Zurich Insurers shall not participate in or interfere with the administration of the Trust and shall have no responsibility or liability whatsoever in connection with the administration of the Trust.

20. **Objections to the Plan**. Zurich Insurers and Zurich Affiliated Insurers shall not object to the Plan, the Settlement Trust Agreement, the Trust Distribution Procedures, the selection of the Settlement Trustee, or any other document or instrument that comprises the Plan (and upon execution of this Agreement, shall withdraw any pending objections) so long as Zurich Insurers and Zurich Affiliated Insurers are included as Protected Parties in the Plan, and the Plan is consistent with the terms of this Agreement.

21. **Discovery**. Upon the execution of the Term Sheet, (i) Zurich Insurers and Zurich Affiliated Insurers on the one hand, and (ii) the Debtors, Coalition, FCR, AHCLC, and State Court Counsel on the other hand, adjourned without date their pending discovery requests

directed at each other and agreed not to seek additional discovery from each other, and (ii) Zurich Insurers and Zurich Affiliated Insurers withdrew any pending discovery requests directed at any holder of an Abuse Claim, representatives of such holders, and funders or vendors utilized by representatives of such holders. The Parties shall not seek or direct any additional discovery or objections at each other and the Zurich Insurers shall not assert objection(s) in the Chapter 11 Cases or any proceedings related to the Chapter 11 Cases, nor shall Zurich Insurers or Zurich Affiliated Insurers cooperate with any other insurer's or putative objector's discovery requests in the Chapter 11 Cases or any proceedings related to the Chapter 11 Cases. Notwithstanding the foregoing, Zurich Insurers and Zurich Affiliated Insurers shall cooperate and comply with any information requests, including prior BSA-related settlement and verdict information, from the BSA, the Coalition, and the FCR to the extent such information is not protected from disclosure and reasonably necessary in support of the confirmation of the Plan; *provided*, *however*, that if the results of this process do not resolve and satisfy said information requests, the BSA, the Coalition, or the FCR shall have the right to submit the dispute to the Court appointed mediator, and the Parties agree to be bound by such mediator's decision regarding such dispute.

22. **Public Statements**. The Parties and State Court Counsel shall cooperate with each other to coordinate on timing and substance of public statements regarding this Agreement, including press releases, court filings, and in-court statements. Zurich Insurers and Zurich Affiliated Insurers shall make no statements about holders of Abuse Claims or any representative thereof; *provided*, *however*, that Zurich Insurers and Zurich Affiliated Insurers may make statements to protect their rights in the Chapter 11 Cases, including statements in response to objections or statements by holders of Abuse Claims and their representatives concerning Zurich Insurers and Zurich Affiliated Insurers.

23. **Assignment**.

a) The Parties will not assign, transfer, or sell (i) this Agreement or any of their rights, benefits, or obligations hereunder without the prior written consent of all other Parties, which consent shall not be unreasonably withheld, or (ii) except as set forth below, any Cause of Action or Claim related to the Abuse Insurance Policies or in connection with the matters otherwise released against the Zurich Insurers or the Zurich Affiliated Insurers pursuant to this Agreement. The Parties agree that they will not assist any other person in the establishment of a Claim or Cause of Action against the Zurich Insurers or the Zurich Affiliated Insurers relating to the Abuse Insurance Policies or the matters released pursuant to this Agreement. Nothing in the foregoing will prohibit the Parties or any Protected Party from transferring and assigning to the Trust all rights under this Agreement, or from assisting the Trust in pursuing any Claim arising out of or under same against anyone other than the Zurich Insurers or Zurich Affiliated Insurers.

b) Upon the Release Date, Zurich Insurers and Zurich Affiliated Insurers shall assign to the Settlement Trust all Claims and Causes of Action for contribution, subrogation, indemnification, and similar claims and theories of liability arising from or in connection with (i) Abuse Insurance Policies (which shall include all Zurich Insurer Policies) and (ii) any other insurance policy issued by the Zurich Insurers, Zurich Affiliated Insurers, or other Settling Insurers covering Claims or Causes of Action for Abuse Claims against (1) any Non-Settling Insurance Company and (2) any non-settling insurance company, insurance syndicate, coverholder, insurance broker or syndicate insurance broker, guaranty

association, or any other Entity that has issued, or that has any actual, potential, demonstrated, or alleged liabilities, duties, or obligations under or with respect to, any contracts, binders, certificates, or insurance policies currently or previously in effect at any time on or before the Petition Date that covers, allegedly covers, or potentially covers Abuse Claims, including the Scouting-related portions of Mixed Claims.

c) The assignment in Section 23(b) shall not preclude Zurich or Zurich Affiliated Insurers from pursuing Claims and Causes of Action (1) relating to non-Scouting Claims and the non-Scouting-related portions of Mixed Claims, (2) against their reinsurers and retrocessionaires in their capacities as such, (3) relating to Postpetition Insurance Policies and Non-Abuse Insurance Policies, and (4) against Opt-Out Chartered Organizations and Bankrupt Chartered Organizations that do not consent to this Agreement and do not provide the releases and assignments set forth in Sections 11 and 12 hereof. Section 7 of this Agreement shall not impair the Settlement Trust's Claims and Causes of Action against (i) any Non-Settling Insurance Company, (ii) any non-settling insurance company, insurance syndicate, coverholder, insurance broker or syndicate insurance broker, guaranty association, or any other Entity that has issued, or that has any actual, potential, demonstrated, or alleged liabilities, duties, or obligations under, or with respect to, any contracts, binders, certificates, or insurance policies currently or previously in effect at any time on or before the Petition Date that covers, allegedly covers, or potentially covers Abuse Claims, including the Scouting-related portions of Mixed Claims, or (iii) any Entity, other than a Limited Protected Party (to the extent of its protected party status) or Protected Party, that allegedly is liable for Abuse Claims, including the Scouting-related portions of Mixed Claims.

d) To the extent any other insurer asserts a claim for contribution, subrogation, indemnification, or other similar Claim against the Zurich Insurers or Zurich Affiliated Insurers, nothing herein shall preclude the Zurich Insurers or Zurich Affiliated Insurers from asserting any defense to such claim, or from filing, asserting, or continuing to pursue a Claim seeking contribution, indemnity, or defense from that other insurer, provided that, (1) Zurich Insurers or Zurich Affiliated Insurers will provide timely notice to the Trust, (2) the Zurich Insurers or Zurich Affiliated Insurers shall obtain the consent of the Trust, which shall not be unreasonably withheld, to settle any such Claims and Causes of Action assigned pursuant to this Section 23, and (3) to the extent that the Zurich Insurers or Zurich Affiliated Insurers recover from that other insurer, the proceeds of such recovery shall be paid by the Zurich Insurers or Zurich Affiliated Insurers per the instruction of the Trust or, if no Trust has been formed, the Debtors, after the Zurich Insurers or Zurich Affiliated Insurers are reimbursed from such proceeds for reasonable fees and costs they incurred after the date the Confirmation Order becomes a Final Order in defending the Claim asserted against the Zurich Insurers or Zurich Affiliated Insurers or prosecuting their Claim against that other insurer.

e) Nothing in the foregoing will prohibit the Parties or any Protected Party from transferring and assigning to the Trust all rights under this Agreement, or from assisting the Trust in pursuing any Claim arising out of or under same against anyone other than the Zurich Insurers or Zurich Affiliated Insurers.

24. **Governing Law**. This Agreement shall be governed by Delaware law.

25. **Bankruptcy Proceedings.**

a) The Parties agree to use their best reasonable efforts to effectuate this Agreement and to obtain entry of the Confirmation Order.

b) If the Confirmation Order is not entered, or is entered but does not become a Final Order, all of the Parties' rights with respect to the Zurich Insurer Policies shall be preserved exactly as they existed before the authorized representatives of the Parties signed this Agreement.

26. **Termination Event by the Debtors, the Coalition, and the FCR**. Subject to the provisions of Section 28, the Debtors, the Coalition, or the FCR may terminate this Agreement if Class 8 (Direct Abuse Claims) (as currently constituted or as it may be reconstituted per order of the Bankruptcy Court) votes to not accept the Plan under section 1126 of the Bankruptcy Code and as a result the Plan is withdrawn. Subject to the foregoing sentence and Section 27, pending entry of the Confirmation Order and the occurrence of the Release Date, the Debtors, the Coalition, and the FCR will not take any action inconsistent with this Agreement and, at all times, will (a) use their best efforts to secure prompt entry of the Confirmation Order consistent with this Agreement, including the provisions constituting the approval of all of the terms and conditions hereof, and (b) defend this Agreement.

27. **Fiduciary Out by the Debtors and the FCR**. Notwithstanding anything else in this Agreement to the contrary, no term or condition of this Agreement shall require Debtors or the FCR to take or refrain from taking any action that they determine would be inconsistent with their fiduciary duties under applicable law, and further, in the event that either the FCR or the Debtors determine that in the proper exercise of their respective fiduciary duties under applicable law they cannot proceed with this Agreement, this Agreement may be terminated at any time prior to the entry of a Final Order confirming the Plan as to that party (the "Fiduciary Out"), *provided, however,* that the Debtors and the FCR each understands that the Tort Claimants Committee is not a party to this Agreement and that the Tort Claimants Committee and claimants represented by various plaintiff firms may object to this Agreement and the Debtors and the FCR acknowledge and represent that their entry into this Agreement is consistent with their fiduciary duties as of the effective date of this Agreement, *provided further* that following the entry of the Confirmation Order by the Bankruptcy Court nothing herein shall exempt the Debtors or the FCR from the doctrines of finality, repose, or otherwise applicable doctrines of *res judicata*, collateral estoppel, limitations on appellate jurisdiction or applicable deadlines pursuant to the Bankruptcy Code, Bankruptcy Rules, court orders, and local rules or any similar doctrine(s); *provided further* that if the FCR exercises its fiduciary right to terminate this Agreement, such termination shall be with respect to the FCR only and not otherwise affect this Agreement or the other Parties' rights and obligations thereunder.

28. **Effect of Termination or Failure of Conditions to Occur**. In the case of any termination described in Sections 26 or 27 above by the Debtors or any other situation where this

Agreement does not proceed (including as a result of the failure of any condition thereto to occur or failure to obtain entry of the Confirmation Order), then (a) absent the consent of the Zurich Insurers, the Zurich Insurers shall be (i) afforded an opportunity to interpose all objections to any plan that does not afford them the protections and rights provided hereunder, notwithstanding any prior deadlines, law of the case, or any determination made in the intervening period after execution of this Agreement, (ii) afforded adequate additional time and relief from any deadline to prepare and present such objections including any expert reports and additional discovery, and (iii) able to assert any and all positions in opposition to such plan and hearing schedule, none of which are waived or affected hereby,; and (b) the Zurich Insurers and Zurich Affiliated Insurers, the Debtors, the Coalition, the FCR, and State Court Counsel shall have no further obligations hereunder. For the avoidance of doubt, the approval of this Agreement and settlement provided herein shall be a condition to the entry of the Confirmation Order, entry of the Affirmation Order, and the Effective Date of the Plan, which condition may only be waived with the consent of each of the Parties.

29. **Effect of Reversal, Exercise of Fiduciary Out, or Termination on Net Income in the Escrow Account**.  In the event that the Release Date does not occur because of (a) a Reversal, (b) any exercise of a Fiduciary Out by the Debtors, or (c) any termination of this Agreement described in Section 26 hereof, the Parties and State Court Counsel agree that the Settlement Amount and all Net Income accrued thereon in the Escrow Account shall be released from the Escrow Account to Zurich Insurers promptly following the Reversal, exercise of a Fiduciary Out by the Debtors, or any termination of this Agreement as described in Section 26 hereof.  The provisions of this Section 29 shall survive any Reversal, any exercise of any Fiduciary Out, and any termination of this Agreement. Nothing in this Section 29 or elsewhere in this Agreement shall bar any of the Parties or State Court Counsel from arguing that any appeal from the Confirmation Order should be dismissed on grounds of statutory or equitable mootness or otherwise.

30. **State Court Counsel**.  Each State Court Counsel represents and warrants that, as of the date hereof, it represents the number of holders of Direct Abuse Claims who filed timely Direct Abuse Claims in the Chapter 11 Cases that is listed next to its name on Schedule 1 hereto.

31. **Conditions.**

a) If the Bankruptcy Court, or any other court with jurisdiction, issues an order (a) dismissing the Chapter 11 Cases or converting them to cases under Chapter 7 or (b) confirming a plan that does not identify the Zurich Insurers and Zurich Affiliated Insurers as Protected Parties who are entitled to the benefit of the Channeling Injunction, the Agreement will be null and void, and the Settlement Amount and all Net Income accrued thereon in the Escrow Account shall promptly be released from the Escrow Account to Zurich Insurers.

b) As a condition precedent to this Agreement, the FCR (subject to Section 27 herein), the Coalition, and the AHCLC must consent to, and agree to be bound by, all of the terms of this Agreement.

c) This Agreement shall bind the Settlement Trust to an agreement not to terminate the Channeling Injunction provided in the Plan, or any other injunction contained in the Plan, that bars or limits claims of any kind against Settling Insurance Companies.

32. **Plan**. The Debtors shall ensure that the Plan is consistent with this Agreement. Subject to all of the terms and conditions of the Plan and this Agreement, including the Zurich Insurers' payment of the Settlement Amount, the Zurich Insurers and the Zurich Affiliated Insurers shall be designated as Settling Insurance Companies and Protected Parties under the Plan, entitled to the protection of the Channeling Injunction. The protections given to the Zurich Insurers and the Zurich Affiliated Insurers as Protected Parties shall not be less than those afforded to any other Protected Parties under (i) the Plan (other than the limited indemnity provided to the Local Councils under Article IV.L of the Plan) or (ii) any other plan, unless this Agreement has been validly terminated under Section 26 or 27 prior to the filing of such plan, subject to Section 28(i)-(iii) hereof. The Plan shall provide that the execution and delivery of this Agreement is a condition to entry of the Confirmation Order and the occurrence of the Plan Effective Date. The inclusion of this Agreement in the Plan shall not be waivable as a condition to entry of the Confirmation Order or the occurrence of the Plan Effective Date absent the prior written consent of the Zurich Insurers or Zurich Affiliated Insurers.

33. **Medicare Reporting**. To the extent the payment of claims by the Trust triggers reporting to Medicare under 42 U.S.C. § 1395y, *et seq*., commonly referred to as the Medicare, Medicaid, and SCHIP Extension Act of 2007, and any related rules, regulations, or guidance issued in connection therewith or relating thereto (collectively, "MMSEA"), the Parties agree that the Trust is the Responsible Reporting Entity and the Zurich Insurers and the Zurich Affiliated Insurers are not subject to any reporting requirements or obligations under MMSEA.

34. **Waivers.** The Parties acknowledge that they have been advised by their respective legal counsel with respect to the substance of this Agreement, including, without limitation, the releases set forth herein, and expressly waive all protections under any state or common law similar to those provided in section 1542 of the California Civil Code, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

The Parties further acknowledge and agree that the release of unknown claims was separately negotiated and material to this Agreement.

35. **Representations and Warranties**.

a) Each Party and State Court Counsel represents and warrants that it has taken all necessary corporate and legal action required to duly approve the making and performance of this Agreement and, subject only to Section 1 of this Agreement with respect to certain obligations under this Agreement, that no further action on their part is necessary to make any obligation of any Party or State Court Counsel under this Agreement binding and legally enforceable.

b) Each Party and State Court Counsel represents and warrants that, to the best of its knowledge and belief, the making and performance of this Agreement will not violate any provision of law, any of its respective articles of incorporation or by-laws, or any contract or agreement by which it is bound.

c) Each Party represents and warrants that it is the owner of the rights and Claims to be compromised and released by it under this Agreement and it has not assigned or transferred to any Entity any Claim or other matter to be compromised and released herein. Furthermore, the Debtors represent and warrant that they have not assigned or transferred any right, title, or Interest under the Zurich Insurers' Policies.

d) Each Party and State Court Counsel represents and warrants that this Agreement has been entered into in good faith, as a result of arm's-length negotiations with the assistance and supervision of the court-appointed mediator, and with advice of counsel, and that this Agreement represents a fair, reasonable, proportionate, and good-faith compromise of disputed Claims, disputed liabilities, and disputed issues.

e) Each Party and State Court Counsel represents and warrants that it has read this Agreement in its entirety, that it fully understands all of the Agreement's terms and the consequences thereof, and that the person signing this Agreement on its behalf has full and complete authority and competency to legally bind it to all terms and consequences of this Agreement.

f) Each Party and State Court Counsel represents and warrants that this Agreement is supported by valid and lawful consideration sufficient to make all aspects of this Agreement legally binding and enforceable.

g) The Zurich Insurers and BSA represent that (i) have each conducted a reasonable, good faith search of their respective records and they have located no evidence of any BSA Insurance Policies issued by Zurich Insurers or Zurich Affiliated Insurers after January 1, 1987 other than the policies identified on Exhibit A, and (ii) have no reason to believe that Zurich Insurers or Zurich Affiliated Insurers issued any Local Council Insurance Policies after January 1, 1987, and neither Party is aware of any additional policies. To the extent any policy is subsequently identified that, had its existence been known as of the date hereof, would have been included on Exhibit A, such policy shall be treated as if such policy were included on Exhibit A.

h) Zurich Insurers and Zurich Affiliated Insurers represent that they are no longer responsible for Abuse Insurance Policies issued by Zurich Insurers and Zurich Affiliated Insurers before January 1, 1987.

36. **Bankruptcy Notices**.  If not already performed, in addition to any other service that may be required, Debtors shall provide direct notice of this Agreement and the subject matter thereof to all parties in interest in the bankruptcy case (including all known claimants against Debtors), and appropriate broad notice by publication and otherwise, to ensure that the injunctions protecting the Zurich Insurers and the Zurich Affiliated Insurers against Abuse Claims shall be effective as against all persons who assert, have asserted, or may in the future assert, Abuse Claims.

37. **No Admissions and Non-Admissibility of this Agreement**.  Nothing contained in this Agreement, or in any negotiations, discussions, mediation proceedings, correspondence, or other materials of any kind relating to this Agreement or relating to the negotiation of this Agreement, shall be deemed to be an admission on the part of the Parties or State Court Counsel with respect to any matter or any factual or legal issue of any kind.

38. **Binding Effect of Agreement.**  All terms and provisions of this Agreement shall be binding on, and shall inure to the benefit of, the Parties and the State Court Counsel and their respective successors and assigns, including the Settlement Trust.

39. **Dispute Resolution**.  If any dispute should arise concerning the terms, meaning, or implementation of this Agreement, the Parties and State Court Counsel agree to use their best efforts to reach a prompt resolution of such dispute.  If the Parties and State Court Counsel are unable to reach an agreement, they shall proceed to mediation before the Court appointed mediator.  Any Party or State Court Counsel may initiate litigation in the Bankruptcy Court to the extent the Bankruptcy Court has subject-matter jurisdiction, or to the extent it does not, in any other appropriate forum, but no Party or State Court Counsel may initiate litigation until forty-five (45) calendar days after a mediation has commenced. All of the Parties and State Court Counsel consent to personal jurisdiction in any federal court (including the Bankruptcy Court) or state court in the State of Delaware for purposes of resolving any dispute concerning the terms, meaning, or implementation of this Agreement.

40. **Construction of Agreement.**

a) The Parties and State Court Counsel represent and acknowledge that they have participated in the preparation and drafting of this Agreement and have each given their approval to all of the language contained in this Agreement, and it is expressly agreed and acknowledged that if any of the Parties or State Court Counsel later asserts that there is an ambiguity in the language of this Agreement, such asserted ambiguity shall not be presumptively construed for or against any other Party or State Court Counsel on the basis that one Party or State Court Counsel drafted the language of this Agreement or played a greater role in the drafting of the language.

b) The headings of this Agreement are inserted for convenience and are not part of the provisions hereof and shall have no force or effect.

41. **Miscellaneous.**

a) This Agreement sets forth the entire agreement between the Parties and State Court Counsel as to its subject matter, and supersedes any and all prior or contemporaneous statements, agreements, negotiations, or understandings, whether written or oral.

b) All notices, demands, or other communications to be provided pursuant to this Agreement shall be in writing and sent by electronic mail and overnight mail (or United States first-class mail, postage prepaid), to the Parties and State Court Counsel at the addresses set forth in Exhibit C hereto, or to such other persons or addresses as the Parties or State Court Counsel may designate in writing from time to time.

c) This Agreement may be amended only by a writing signed by or on behalf of each Party, and, if after the Effective Date, the Zurich Insurers and the Settlement Trust.

d) Each Party may sign an e-mail or PDF copy of this Agreement, in counterparts, with the same effect as if each Party had signed an original of the same document.

42. **Definitions**: The capitalized terms used in this Agreement shall have the respective meanings set forth below.

"**Abuse**" has the meaning ascribed to it in the Plan.

"**Abuse Claims**" means a liquidated or unliquidated Claim against a Protected Party (including the Settling Insurance Companies), a Limited Protected Party, or an Opt-Out Chartered Organization or any of their respective Representatives (in their capacities as such) that is attributable to, arises from, is based upon, relates to, or results from, directly, indirectly, or derivatively, alleged Scouting-related Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, alter ego, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based upon, or directly or indirectly related to any insurance relationship, the provision of insurance or the provision of insurance services to or by any Protected Parties, or misrepresentation, concealment, or unfair practice, breach of fiduciary duty, public or private nuisance, gross negligence, willful misconduct, or any other theory, including any theory based on or related to public policy or any act or failure to act, or failure to warn by a Protected Party, a Limited Protected Party, an Opt-Out Chartered Organization, any of their respective Representatives (in their capacities as such) or any other Person for whom any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization is alleged to be responsible (including any such Claim that has been asserted or may be amended to assert in a proof of claim alleging Abuse, whether or not timely filed, in the Chapter 11 Cases, or any such Claim that has been asserted against the Settlement Trust), including any proportionate or allocable share of liability based

thereon. Abuse Claims include any Future Abuse Claims, any Indirect Abuse Claims, any Opt-Out Chartered Organization Abuse Claim and any other Claim that is attributable to, arises from, is based upon, relates to, or results from, alleged Scouting-related Abuse regardless of whether, as of the Petition Date, such Claim was barred by any applicable statute of limitations. For the avoidance of doubt, (i) a Claim alleging Abuse shall not be an "Abuse Claim" against a Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any of their respective Representatives if such Claim is unrelated to Scouting (except as provided in (iii) below, including the portion of any Mixed Claim that is unrelated to Scouting); (ii) a Claim alleging Abuse shall be an "Abuse Claim" against a Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any of their respective Representatives (in their capacity as such) if such Claim is related to Scouting (including the portion of any Mixed Claim that is related to Scouting); (iii) any portion of a Mixed Claim alleging Abuse involving the Debtors, Reorganized BSA, Non-Debtor Entities, Local Councils, TCJC, or their respective Representatives (in their capacities as such) is necessarily Scouting-related and shall be considered an Abuse Claim; and (iv) any Claim against the Debtors, Reorganized BSA, Non-Debtor Entities, Local Councils, or their respective Representatives (in their capacities as such) alleging Abuse is necessarily Scouting-related and shall be considered an Abuse Claim.

"**Abuse Insurance Policies**" has the meaning ascribed to it in the Plan.

"**Affirmation Order**" shall have the meaning set forth in the Plan and shall be in all respects, in form and substance acceptable to the Parties.

"**Agreement**" has the meaning ascribed to it in the opening section of this Agreement.

"**AHCLC**" has the meaning ascribed to it in the opening section of this Agreement.

"**Bankrupt Chartered Organization**" has the meaning ascribed to it in section 12 of this Agreement.

"**Bankruptcy Code**" has the meaning ascribed to it in the Plan.

"**Bankruptcy Court**" has the meaning ascribed to it in the Plan.

"**Bankruptcy Rules**" has the meaning ascribed to it in the Plan.

"**BSA**" has the meaning ascribed to it in the opening section of this Agreement.

"**BSA Insurance Policies**" has the meaning ascribed to it in the Plan.

"**Business Day**" has the meaning ascribed to it in the Plan.

"**Channeling Injunction**" has the meaning ascribed to it in the Plan.

"**Chapter 11 Cases**" has the meaning ascribed to it in the Plan.

"**Chartered Organizations**" has the meaning ascribed to it in the Plan.

"**Child Protection Committee**" has the meaning ascribed to it in the Plan.

"**Claim**" has the meaning ascribed to it in the Plan.

"**Coalition**" has the meaning ascribed to it in the opening section of this Agreement.

"**Confirmation**" has the meaning ascribed to it in the Plan.

"**Confirmation Date**" has the meaning ascribed to it in the Plan.

"**Confirmation Hearing**" has the meaning ascribed to it in the Plan.

"**Confirmation Order**" shall have the meaning set forth in the Plan and be in form and substance acceptable to the Parties confirming and approving the Plan including each and every term of this Agreement and the settlement provided herein.

"**Contributing Chartered Organizations**" has the meaning ascribed to it in the Plan.

"**D&O Liability Insurance Policies**" has the meaning ascribed to it in the Plan.

"**Debtors**" has the meaning ascribed to it in the Plan.

"**Direct Abuse Claims**" has the meaning ascribed to it in the Plan.

"**Discharge**" has the meaning ascribed to it in the Plan.

"**District Court**" has the meaning ascribed to it in the Plan.

"**DST Note**" has the meaning ascribed to it in the Plan.

"**Escrow Account**" has the meaning ascribed to it in section 4(a) of this Agreement.

"**Entity**" has the meaning ascribed to it in the Plan.

"**Estates**" has the meaning ascribed to it in the Plan.

"**FCR**" has the meaning ascribed to it in the opening section of this Agreement.

"**Final Order**" has the meaning ascribed to it in the Plan.

"**Findings and Orders**" means the findings and determinations set forth in Article IX.A.3.j, Article IX.A.3.k, Article IX.A.3.r, Article IX.A.3.s, Article IX.A.3.t, Article

IX.A.3.u, Article IX.A.3.v, and Article IX.A.3.aa of the Plan, as the same may be amended or modified from time to time.

"**Full Post-1975 Injunction**" means the channeling injunction applicable to Abuse Claims alleging first Abuse on or after January 1, 1976.

"**Future Claimants' Representative**" has the meaning ascribed to it in the Plan.

"**Indirect Abuse Claims**" has the meaning ascribed to it in the Plan.

"**Insurance Actions**" has the meaning ascribed to it in the Plan.

"**Insurance Action Recoveries**" has the meaning ascribed to it in the Plan.

"**Insurance Policies**" has the meaning ascribed to it in the Plan.

"**Insurance Settlement Agreement**" has the meaning ascribed to it in the Plan.

"**Limited Protected Party**" has the meaning ascribed to it in the Plan.

"**Local Councils**" has the meaning ascribed to it in the Plan.

"**Mixed Claim**" means a claim that makes allegations of Abuse related to or arising from Scouting as well as Abuse that occurred prior to the Petition Date unrelated to or not arising from Scouting. A claim shall not be treated as a Mixed Claim unless and until Scouting-related Abuse allegations have been asserted through a Proof of Claim, the complaint, sworn discovery or testimony (including by affidavit).

"**MMSEA**" has the meaning ascribed to it in section 38 of this Agreement.

"**Net Income**" has the meaning ascribed to it in section 4(b) of this Agreement.

"**Non-Abuse Insurance Policies**" has the meaning ascribed to it in the Plan.

"**Non-Scouting Abuse**" has the meaning ascribed to it in the definition of "Mixed Claim" of this Agreement.

"**Non-Settling Insurance Company**" has the meaning ascribed to it in the Plan.

"**Opt-Out Chartered Organization Abuse Claim**" has the meaning ascribed to it in the Plan.

"**Opt-Out Chartered Organization**" has the meaning ascribed to it in the Plan.

"**Participating Chartered Organization**" has the meaning ascribed to it in the Plan.

"**Participating Chartered Organization Insurance Action**" has the meaning ascribed to it in the Plan.

"**Participating Chartered Organization Insurance Assignment**" has the meaning ascribed to it in the Plan.

"**Participating Chartered Organization Settlement Contribution**" has the meaning ascribed to it in the Plan.

"**Parties**" has the meaning ascribed to it in the opening section of this Agreement.

"**Perpetrator**" has the meaning ascribed to it in the Plan.

"**Perpetrator Indemnification Claims**" has the meaning ascribed to it in the Plan.

"**Person**" has the meaning ascribed to it in the Plan.

"**Plan**" has the meaning ascribed to it in the recitals of this Agreement.

"**Plan Effective Date**" or "**Effective Date**" means the first Business Day on which the Plan becomes effective or is consummated in accordance with its terms.

"**Post-1975 Chartered Organization Abuse Claim**" has the meaning ascribed to it in the Plan.

"**Post-Confirmation Interim Injunction**" has the meaning ascribed to it in section 14 of this Agreement.

"**Postpetition Insurance Policies**" has the meaning ascribed to it in the Plan as such term applies to the Zurich Insurers and Zurich Affiliated Insurers.

"**Protected Parties**" has the meaning ascribed to it in the Plan.

"**Related Non-Debtor Entities**" has the meaning ascribed to it in the Plan.

"**Release Date**" shall have the meaning ascribed to it in Section 3(b) of this Agreement.

"**Releasing Parties**" has the meaning ascribed to it in Section 9 of this Agreement.

"**Reorganized BSA**" has the meaning ascribed to it in the Plan.

"**Representatives**" has the meaning ascribed to it in the Plan.

"**Reversal**" has the meaning ascribed to it in Section 4(d) of this Agreement.

"**Sale**" has the meaning ascribed to it in Section 6 of this Agreement.

"**Scouting**" has the meaning ascribed to it in the Plan.

"**Settlement Amount**" has the meaning ascribed to it in Section 3 of this Agreement.

"**Settlement Trust**" or "**Trust**" has the meaning ascribed to it in Section 3 of this Agreement.

"**Settlement Trust Agreement**" has the meaning ascribed to it in the Plan.

"**Settlement Trust Documents**" has the meaning ascribed to it in the Plan.

"**Settlement Trustee**" has the meaning ascribed to it in the Plan.

"**Settling Insurance Companies**" has the meaning ascribed to it in the Plan.

"**Settling Insurer Local Council Policies**" has the meaning ascribed to it in section 6 of this Agreement.

"**Settling Insurer Policy Injunction**" means the Channeling Injunction applicable to Abuse Claims covered under any insurance policy issued by the Zurich Insurers and Zurich Affiliated Insurers.

"**State Court Counsel**" has the meaning ascribed to it in the opening section of this Agreement.

"**TCJC**" means The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole, including any affiliates or personnel.

"**Term Sheet Effective Date**" has the meaning ascribed to it in the opening section of this Agreement.

"**Tort Claimants' Committee**" has the meaning ascribed to it in the Plan.

"**Trust Agreement**" has the meaning ascribed to it in the Plan.

"**Trust Distribution Procedures**" has the meaning ascribed to it in the Plan.

"**United Methodist Entities**" means each and every (i) United Methodist local church, federated, or union church, including any Federated Church or Union Church that includes a historically United Methodist Church congregation, that sponsored, promoted, hosted, or provided any support in connection with Scouting activities, regardless of whether such local, union, or federated church is or was a Chartered Organization at any time; (ii) church currently federated or yoked, and which current federated or yoked church includes a current or former United Methodist Church congregation that sponsored, promoted, hosted or provided any support in connection with Scouting activities; (iii) other United Methodist

related or affiliated organizations that sponsored, promoted, hosted, or provided any support in connection with Scouting activities, including any social service organization, ministry, camping ministry, camp facility, camp, retreat, or other facilities in the nature of a camp or retreat; (iv) any camp, retreat, or other facility in the nature of a camp or retreat that is not United Methodist related or affiliated, but otherwise promoted, hosted, or provided any support in connection with Scouting Activities for an entity described in (i), (ii) or (iii); (v) all organizations affiliated or related to (i) (ii), (iii) or (iv) including, but not limited to, the United Methodist ad hoc committee, each district, annual conference, and jurisdictional conference of The United Methodist Church, the general, annual conference, district, local church agencies of The United Methodist Church, the Council of Bishops of The United Methodist Church, and the non-jural bodies commonly referred to as "The United Methodist Church," the "Judicial Council of The United Methodist Church," and the "General Conference of The United Methodist Church"; and (vi) all Representatives of the foregoing. However, no Perpetrator is or shall be a United Methodist Entity.

"**Zurich Affiliated Insurers**" means all Zurich North America-affiliated underwriting companies and includes, without limitation, Zurich Insurers and Maryland Casualty Company, American General Fire & Casualty Company, and Zurich American Insurance Company, but only with respect to policies issued on or after January 1, 1987. A list of Zurich North America-affiliated underwriting companies is attached to the Zurich Insurance Settlement Agreement. Zurich Insurers, Zurich Affiliated Insurers, and their Representatives and Released Parties (as defined herein) shall not include such persons and entities in their capacities as contractual obligors under: (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from, or in connection with Abuse Claims, any actions, omissions, or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings, and any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations under such policies whether for defense, settlement of claims, or otherwise, and (ii) Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from, or in connection with any actions, omissions, or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings, and any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations under such policies whether for defense, settlement of claims, or otherwise.

"**Zurich Insurer Policies**" means the BSA Abuse Insurance Policies issued by Zurich Insurers, including those identified on Exhibit A. For the avoidance of doubt, "Zurich Insurer Policies" shall not include policies issued before January 1, 1987 by Maryland Casualty Company, American General Fire & Casualty Company, and Zurich American Insurance Company.

"**Zurich Insurers**" means American Zurich Insurance Company, American Guarantee & Liability Insurance Company, and Steadfast Insurance Company; provided that the term

"Zurich Insurers" shall not include such persons and entities in their capacities as contractual obligors under: (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from, or in connection with Abuse Claims, any actions, omissions, or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings, and any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date, including the Zurich Insurers' performance of their obligations under such policies whether for defense, settlement of claims, or otherwise, and (ii) Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from, or in connection with any actions, omissions, or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings, and any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date, including the Zurich Insurers' performance of their obligations under such policies whether for defense, settlement of claims, or otherwise.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**BSA (as defined)**                              **AMERICAN ZURICH INSURANCE COMPANY**

By: _____     By: _____

Name: Roger C. Mosby                 Name: _____

Title: President and CEO             Title: _____

Date: February 14, 2022              Date: _____


**AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY**

By: _____

Name: _____

Title: _____

Date: _____

**STEADFAST INSURANCE COMPANY**

By: _____

Name: _____

Title: _____

Date: _____


**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants' Representative, I consent to the Debtors' execution of this Agreement and entry into the Settlement.

By: _____

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**BSA (as defined)**

By: _____

Name: _____

Title: _____

Date: _____

**AMERICAN ZURICH INSURANCE COMPANY**

By: _____

Name: _____ _Robert Koscielniak_

Title: _____

Date: _____

Digitally signed by Robert Koscielniak
DN: cn=Robert Koscielniak, o=Zurich North America, ou=Latent & Environmental Claims, email=Robert.Koscielniak@zurichna.com, c=US
Date: 2022.02.14 16:33:42 -06'00'
Adobe Acrobat version: 2015.006.00000

**AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY**

By: _____ _____

Name: _____

Title: _____ _____

Date: _____

Digitally signed by Robert Koscielniak
DN: cn=Robert Koscielniak, o=Zurich North America, ou=Latent & Environmental Claims, email=Robert.Koscielniak@zurichna.com, c=US
Date: 2022.02.14 16:34:08 -06'00'
Adobe Acrobat version: 2015.006.00000

**STEADFAST INSURANCE COMPANY**

By: _____

Name: _____

Title: _____

Date: _____

Digitally signed by Robert Koscielniak
DN: cn=Robert Koscielniak, o=Zurich North America, ou=Latent & Environmental Claims, email=Robert.Koscielniak@zurichna.com, c=US
Date: 2022.02.14 16:34:31 -06'00'
Adobe Acrobat version: 2015.006.00000

**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants' Representative, I consent to the Debtors' execution of this Agreement and entry into the Settlement.

By: _____

Dated: _____


**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of this Agreement and entry into the Settlement.

By: _____

Dated: _____


**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of this Agreement and entry into the Settlement.

By: _____

Dated: _____

**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants' Representative, I consent to the Debtors' execution of this Agreement and entry into the Settlement.

By: _____

Dated: _____


**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of this Agreement and entry into the Settlement.

By: *Eric Goodman*

Dated: 2-14-2022


**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of this Agreement and entry into the Settlement.

By: _____

Dated: _____

**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants' Representative, I consent to the Debtors' execution of this Agreement and entry into the Settlement.

By: _____

Dated: _____

**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of this Agreement and entry into the Settlement.

By: _____

Dated: _____

**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of this Agreement and entry into the Settlement.

By: _Rich Mason, its chair_

Dated: _2/14/22_

## Schedule 1

### State Court Counsel

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| Slater Slater Schulman LLP | Attn: Adam P. Slater (aslater@sssfirm.com) 488 Madison Avenue 20th Floor New York, NY 10022 | 14170 |
| ASK LLP | Attn: Joseph Steinfeld (jsteinfeld@askllp.com) 151 West 46th Street, 4th Floor New York, NY 10036 | 3277 |
| Andrews & Thornton, AAL, ALC | Andrews & Thornton Attn: Anne Andrews (aa@andrewsthornton.com) 4701 Von Karman Ave., Suite 300 Newport Beach, CA 92660 | 3009 |
| Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. | Attn: Stewart J. Eisenberg (stewart@erlegal.com) 1634 Spruce Street Philadelphia, PA 19103 | 16869 |
| Junell & Associates PLLC | Attn: Deborah Levy (dlevy@junell-law.com) 3737 Buffalo Speedway, Ste. 1850 Houston, TX 77098 | 2918 |
| Reich & Binstock LLP | Attn: Dennis Reich (dreich@reichandbinstock.com) 4265 San Felipe St. #1000 Houston, TX 77027 | 336 |
| Krause & Kinsman Law Firm | Attn: Adam W. Krause (adam@krauseandkinsman.com) 4717 Grand Avenue #300 Kansas City, MO 64112 | 5981 |

| | | |
|---|---|---|
| Bailey Cowan Heckaman PLLC | Attn: Aaron Heckaman (aheckaman@bchlaw.com) 5555 San Felipe St., Ste. 900 Houston, TX 77056 | 1026 |
| Jason J. Joy & Associates, PLLC | Attn: Jason Joy (jason@jasonjoylaw.com) 909 Texas St., Ste. 1801 Houston, TX 770022 | 690 |
| Motley Rice LLC | Attn: Daniel Lapinski (dlapinski@motleyrice.com) 210 Lake Drive East, Suite 101 Cherry Hill, NJ 08002 | 343 |
| Weller Green Toups & Terrell LLP | Attn: Mitchell Toups (matoups@wgttlaw.com) 2615 Calder Ave. #400 Beaumont, TX 77702 | 974 |
| Colter Legal PLLC | Attn: John Harnishfeger (john.harnishfeger@colterlegal.com) 1717 K St. NW, Suite 900 Washington D.C. 20006 | 162 |
| Christina Pendleton & Associates, PLLC | Attn: Staesha Rath (sr@cpenlaw.com) 1506 Staples Mill Rd., Suite 101 Richmond, VA 23230 | 309 |
| Forman Law Offices, P.A. | Attn: Theodore Forman (ted@formanlawoffices.com) 238 NE 1st Ave. Delray Beach, FL 33444 | 125 |
| Danziger & De Llano LLP | Attn: Rod de Llano (rod@dandell.com) 440 Louisiana St., Suite 1212 Houston, TX 77002 | 1707 |
| Swenson & Shelley | Attn: Kevin Swenson (kevin@swensonshelley.com) 107 South 1470 East, Ste. 201 St. George, UT 84790 | 175 |

| | | |
|---|---|---|
| Cohen Hirsch LP (formerly Brooke F. Cohen Law, Hirsch Law Firm) | Attn: Brooke F. Cohen (brookefcohenlaw@gmail.com) Attn: Andrea Hirsch (andrea@thehirschlawfirm.com) 4318 Glenwick Lane Dallas, TX 75205 | 64 |
| Damon J. Baldone PLC | Attn: Damon J. Baldone (damon@baldonelaw.com) 162 New Orleans Blvd. Houma, LA 70364 | 471 |
| Cutter Law, P.C. | Attn: Brooks Cutter (bcutter@cutterlaw.com) 4179 Piedmont Ave., 3rd Fl. Oakland, CA 94611 | 358 |
| Linville Johnson & Pahlke Law Group | Attn: Robert Pahlke (rgp@pahlkelawgroup.com) 2425 Circle Dr., Ste. 200 Scottsbluff, NE 69361 | 71 |
| Porter & Malouf P.A. | Attn: Timothy Porter (tporter@portermalouf.com) 825 Ridgewood Rd. Ridgeland, MS 39157 | 86 |
| The Moody Law Firm | Attn: Will Moody Jr. (will@moodyrrlaw.com) 500 Crawford St., Ste. 200 Portsmouth, VA 23704 | 677 |
| Levin Papantonio Thomas Mitchell Rafferty & Procter P.A. | Attn: Cameron Stephenson (cstephenson@levinlaw.com) 316 South Baylen St. Pensacola, FL 32502 | 44 |
| Marc J Bern & Partners LLP | Attn: Joseph Cappelli (jcappelli@bernllp.com) 60 East 42nd St., Ste. 950 New York, NY 10165 | 5893 |

**Exhibit A**

**Known and Alleged BSA Insurance Policies Issued by Zurich Insurers**

| Writing Company | Policy No. | Policy Period |
|---|---|---|
| American Zurich Insurance Company | CEO 6371780-00 | March 1, 1989 - March 1, 1990 |
| American Zurich Insurance Company | AUO 3657270-00 | March 1, 1996 - March 1, 1997 |
| American Zurich Insurance Company | AUO 3657270-01 | March 1, 1997 - March 1, 1998 |
| American Zurich Insurance Company | EUO 3657270-02 | March 1, 1998 - March 1, 1999 |
| American Zurich Insurance Company | EUO 3657270-03 | March 1, 1999 - March 1, 2001 |
| American Guarantee & Liability Insurance Company | AEC 3657270-04 | March 1, 2001 - March 1, 2002 |
| American Guarantee & Liability Insurance Company | AEC 9278457-00 | March 1, 2001 - March 1, 2002 |
| American Guarantee & Liability Insurance Company | AEC 3657270-05 | March 1, 2002 - March 1, 2003 |
| American Guarantee & Liability Insurance Company | AEC 9278457-01 | March 1, 2002 - March 1, 2003 |
| American Guarantee & Liability Insurance Company | AEC 3657270-06 | March 1, 2003 - March 1, 2004 |
| American Guarantee & Liability Insurance Company | AEC 9278457-02 | March 1, 2003 - March 1, 2004 |
| American Guarantee & Liability Insurance Company | AEC 3657270-07 | March 1, 2004 - March 1, 2005 |
| American Guarantee & Liability Insurance Company | AEC 9278457-03 | March 1, 2004 - March 1, 2005 |
| American Guarantee & Liability Insurance Company | AEC 3657270-08 | March 1, 2005 - March 1, 2006 |
| Steadfast Insurance Company | AEC 3657270-09 | March 1, 2006 - March 1, 2007 |

**Settlement Term Sheet**

This term sheet ("Term Sheet") represents the basic terms of a settlement agreement between and among American Zurich Insurance Company, American Guarantee & Liability Insurance Company, and Steadfast Insurance Company (collectively, "Zurich Insurers"),[1] the Boy Scouts of America and Delaware BSA, LLC, as debtors and debtors in possession ("BSA" or the "Debtors"), the Ad Hoc Committee of Local Councils (the "AHCLC"),[2] the Coalition of Abused Scouts for Justice, solely and only in its capacity as an ad hoc committee (the "Coalition"),[3] and the Future Claimants' Representative (the "FCR" and, collectively with Zurich Insurers, the Debtors, the AHCLC, and the Coalition, the "Parties"). This Term Sheet will be binding on the Parties. The attorneys representing holders of Direct Abuse Claims listed on Schedule 1 hereto, which reflects the number of holders of Abuse Claims represented by each firm (the "State Court Counsel") agree to support the terms of and be bound by the Agreement (as defined below). The Parties will prepare a definitive written settlement agreement, to be signed by the parties' respective authorized representatives, that will be consistent with this Term Sheet and will include additional material terms (the "Agreement"). The Agreement will be appended to and included in the *Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, filed at Dkt. 7832, subject to modification by the Debtors, the Coalition, and the FCR ("Amended Plan"). Capitalized terms not defined in this Term Sheet shall have the definitions ascribed to such terms in the Amended Plan and in the "Century Term Sheet" located at Dkt. No. 7745-1.

1.  **Settlement Amount**. In consideration of the releases and other consideration provided for herein, Zurich Insurers shall pay in cash Fifty-two million, five hundred thousand U.S. Dollars ($52,500,000.00) (the "Settlement Amount") to the trust for Abuse Claims to be created under the Amended Plan (the "Trust") as provided herein.

2.  **Payment and Release of the Settlement Amount**. On, or as soon as reasonably practicable after, the date all conditions to the effectiveness of the Amended Plan have been

---

[1] "Zurich Insurers" shall not include such persons and entities in their capacities as contractual obligors under: (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from, or in connection with Abuse Claims, any actions, omissions, or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings, and any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date, including the Zurich Insurers' performance of their obligations under such policies whether for defense, settlement of claims, or otherwise, and (ii) Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from, or in connection with any actions, omissions, or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings, and any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date, including the Zurich Insurers' performance of their obligations under such policies whether for defense, settlement of claims, or otherwise.

[2] Notwithstanding anything to the contrary in this Term Sheet, the obligations and undertakings of the AHCLC in connection with this Term Sheet or the Agreement shall be no greater than the AHCLC's parallel obligations and undertakings under Section III of the Restructuring Support Agreement (including the "No Liability" subsection thereof) filed at Dkt. 5466-2.

[3] For the avoidance of doubt, no holders of Direct Abuse Claims are or shall be deemed Parties to this Term Sheet or the Agreement.

satisfied (including the entry of orders, in form and substance reasonably acceptable to the Parties, of the Bankruptcy and District Courts confirming, or affirming confirmation of, the Amended Plan (collectively, the "Confirmation Order"), which Confirmation Order shall not be subject to any stay and shall be in full force and effect) and the Amended Plan has gone effective (the "Effective Date"), Zurich Insurers shall pay the Settlement Amount into an escrow account (the "Escrow Account"), to be administered by an independent escrow agent acceptable to the Parties. The Settlement Amount (and all income earned thereon in the Escrow Account, minus (a) the fees of the escrow agent, and (b) any taxes that are payable and other costs of the Escrow Account, which amounts in (a) and (b) shall be paid from the corpus of the Escrow Account (such income (or loss) minus such amounts, the "Net Income")) shall remain in the Escrow Account until the Confirmation Order shall become final and no longer subject to any further appeal or petition for rehearing or certiorari ("Final and Non-Appealable"), on which date the balance of the Escrow Account, which shall include any Net Income, shall be released from the Escrow Account to the Trust (the "Release Date"); *provided, however,* that, at its election, Zurich Insurers may authorize the payment of the Settlement Amount directly to the Trust on the Effective Date or may authorize the release of the Settlement Amount (and any Net Income) from the Escrow Account to the Trust at any time thereafter before the Confirmation Order becomes Final and Non-Appealable, in which event the date on which Zurich Insurers authorize the payment or release of the Settlement Amount to the Trust shall be the Release Date. The Escrow Account shall be a simple interest-bearing account; the Settlement Amount shall not be invested in any manner that subjects the Settlement Amount to any risk of loss. The Debtors, Reorganized BSA, the Local Councils, and Chartered Organizations shall have no liability or obligations to Zurich Insurers or the Trust, the Trust shall have no liability or obligations to Zurich Insurers, and Zurich Insurers shall have no liability or obligations to the Trust (or any other Party), whatsoever for any loss or reduction of the Settlement Amount while it is in the Escrow Account.

3.  **Sale of Zurich Insurer Policies.** Entry of the Confirmation Order shall be a condition precedent of the Agreement. The Confirmation Order shall provide that (a) on the Effective Date, and subject to the limitations set forth in this section of the Term Sheet, in exchange for the Settlement Amount, the BSA Insurance Policies issued after January 1, 1987 by Zurich Insurers and Zurich Affiliated Insurers,[4] which include, but are not limited to, those

---

[4] "Zurich Affiliated Insurers" means all Zurich North America-affiliated underwriting companies and includes, without limitation, Zurich Insurers and Maryland Casualty Company, American General Fire & Casualty Company, and Zurich American Insurance Company, but only with respect to policies issued on or after January 1, 1987. A list of Zurich North America-affiliated underwriting companies will be attached to the final settlement agreement. Zurich Insurers, Zurich Affiliated Insurers, and their Representatives and Released Parties (as defined herein) shall not include such persons and entities in their capacities as contractual obligors under: (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from, or in connection with Abuse Claims, any actions, omissions, or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings, and any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations under such policies whether for defense, settlement of claims, or otherwise, and (ii) Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from, or in connection with any actions, omissions, or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings, and any extra-contractual

identified on Exhibit A (collectively, the "Zurich Insurer Policies"),[5] shall be sold by Debtors and the Debtors' Estates to Zurich Insurers free and clear of all liens, claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, of any person or entity, including those of the Debtors, the Local Councils, the Contributing Chartered Organizations, the Participating Chartered Organizations, Chartered Organizations, and their respective creditors and interest holders in the Zurich Insurer Policies, pursuant to sections 363, 1123, and/or 1141 of the Bankruptcy Code (the "Sale"), (b) the Sale shall exclude the Postpetition Insurance Policies and Non-Abuse Insurance Policies, (c) the Sale represents a sound exercise of the Debtors' business judgment, will yield a fair and reasonable price for the assets being sold, is in the best interests of the Debtors' Estates, and otherwise complies with section 363 of the Bankruptcy Code, (d) the proceeds of such Sale shall constitute property transferred to the Trust under the Plan, (e) the Confirmation Order shall designate Zurich Insurers as good faith purchasers and shall provide that the Sale constitutes a purchase by Zurich Insurers in good faith pursuant to section 363(m) of the Bankruptcy Code, rendering the provisions of section 363(m) applicable and affording Zurich Insurers all protections thereunder, and (f) unless the Coalition and the FCR agree otherwise, no person or entity, including a person or entity that is co-liable with the Debtors for Direct Abuse Claims or Scouting related Abuse, shall have any right to or an interest in the Settlement Amount that would directly or indirectly prevent the Settlement Amount from being paid to the Trust for the benefit of the holders of Direct Abuse Claims, provided, however, nothing herein shall prevent the Trust from using the Settlement Amount in accordance with Trust Agreement and the Trust Distribution Procedures. The Agreement will contain a representation that Zurich Insurers and BSA (a) have each conducted a reasonable, good faith search of their respective records and that they have located no evidence of any BSA Insurance Policies issued by Zurich Insurers or Zurich Affiliated Insurers after January 1, 1987 other than the policies identified on Exhibit A, and (b) have no reason to believe that Zurich Insurers or Zurich Affiliated Insurers issued any Local Council Insurance Policies after January 1, 1987, and that neither Party is aware of any additional policies. To the extent any policy is subsequently identified that, had its existence been known as of the date hereof, would have been included on Exhibit A, such policy shall be treated as if such policy were included on Exhibit A. Zurich Insurers and Zurich Affiliated Insurers shall further represent that they are no longer responsible for Abuse Insurance Policies issued before January 1, 1987. Without limiting the foregoing, although the Parties do not believe that the Sale would constitute a violation of the automatic stay of any Chartered Organization that is a debtor in bankruptcy and that asserts an interest in one or more Zurich Insurer Policies, to the extent the Bankruptcy Court (or other court with jurisdiction) determines that the Sale would constitute such a violation, then the Parties shall seek a determination from the Bankruptcy Court that they may proceed with the Sale or relief from such stay to effectuate the Sale.

---

claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations under such policies whether for defense, settlement of claims, or otherwise.

[5] For the avoidance of doubt, "Zurich Insurer Policies" shall not include policies issued before January 1, 1987 by Maryland Casualty Company, American General Fire & Casualty Company, and Zurich American Insurance Company.

4. **Protections to be Afforded to the Zurich Insurers and Zurich Affiliated Insurers**. Effective as of the Release Date, Zurich Insurers and Zurich Affiliated Insurers are to be designated as Settling Insurance Companies and Protected Parties for all purposes under the Amended Plan and granted all associated releases, injunctions (including the Settling Insurer Policy Injunction), and protections. As set forth herein, Zurich Insurers and Zurich Affiliated Insurers shall be granted such releases, injunctions, protections as are necessary to deliver finality with respect to: all known and unknown policies they issued to BSA and Local Councils covering or potentially covering Claims or Causes of Action related to, arising from, or in connection with Abuse Claims, which shall include those identified on Exhibit A and any and all policies issued on or after January 1, 1987 and any other insurance policy issued by the Zurich Insurers and Zurich Affiliated Insurers, including Zurich Insurer Policies, covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims; any actions, omissions, or positions taken in connection with any Abuse Claims and/or the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date related to any Abuse Claims and/or policy issued by the Zurich Insurers and Zurich Affiliated Insurers concerning the Debtors or Scouting, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations thereunder whether for defense, settlement of claims, or otherwise. Notwithstanding anything to the contrary, the BSA, Local Councils, and Chartered Organizations are not releasing, enjoining, or protecting any rights under (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from, or in connection with Abuse Claims, any actions, omissions, or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings, and any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations under such policies whether for defense, settlement of claims, or otherwise, and (ii) Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from, or in connection with any actions, omissions, or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations under such policies whether for defense, settlement of claims, or otherwise. The Agreement, the Amended Plan, and the Confirmation Order shall provide for a channeling injunction and full release of the Zurich Insurers and Zurich Affiliated Insurers with respect to all Claims or Causes of Action related to, arising from, or in connection with Abuse Claims (which shall be conveyed to the Debtors and/or the Trust), including but not limited to the types of claims listed in the Insurance Actions definition in the Plan and other Claims related to the Zurich Insurer Policies subject to the limitations stated in this Section 4 (as applicable to Postpetition Insurance Policies and Non-Abuse Insurance Policies). All injunctions, including the Settling Insurer Policy Injunction, shall remain in place between the Effective Date and the Release Date (and thereafter) such that any and all Claims and Causes of Action that are to be released or channeled through the Amended Plan and the Agreement shall be continuously enjoined pending their release. The Zurich

Insurers and Zurich Affiliated Insurers shall be Protected Parties under the Amended Plan and have no fewer rights or protections than are afforded the Local Councils (other than the limited indemnity provided under Article IV.M of the Amended Plan) or any other person or entity by virtue of their status as a Protected Party with respect to any injunctions, releases or other protections provided thereto.

5. **Release by Zurich Insurers and Zurich Affiliated Insurers**. Upon the Release Date, subject to the limitations below, Zurich Insurers and Zurich Affiliated Insurers and their Representatives shall release the Debtors, Reorganized BSA, Related Non-Debtor Entities, Local Councils, Limited Protected Parties, other Protected Parties (including the Contributing Chartered Organizations), other Settling Insurance Companies, the FCR, the Coalition, and the Trust and each of their Representatives from all Causes of Action and Claims related to, arising from, or in connection with, in whole or in part (a) Abuse Insurance Policies (which shall include all Zurich Insurer Policies), (b) any other insurance policy issued by Zurich Insurers and Zurich Affiliated Insurers covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims, (c) the types of claims listed in the Insurance Actions definition in the Plan, including extra-contractual claims relating to the Zurich Insurer Policies and including the Debtors' performance of their obligations thereunder, whether for defense, settlement of claims, or otherwise, (d) the Debtors' Chapter 11 Cases and related proceedings, including the Debtors' Plan, the Amended Plan and any prior plans, any Claims that were or could have been asserted by Zurich Insurers and Zurich Affiliated Insurers against the Debtors or by any of the Releasing Parties against Zurich Insurers and Zurich Affiliated Insurers, in the Debtors' Chapter 11 Cases, and any actions, omissions, or positions taken in the Debtors' Chapter 11 Cases and related proceedings, (e) all Claims and Causes of Action alleging Abuse Claims against the Protected Parties (including such Claims and Causes of Action related to any Zurich Insurer Policy), and (f) any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date related to any policy issued by Zurich Insurers and Zurich Affiliated Insurers concerning the Debtors or Scouting, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations thereunder, whether for defense, settlement of claims, or otherwise. Nothing shall preclude Zurich Insurers and Zurich Affiliated Insurers from enforcing the terms of the Agreement. Furthermore, nothing in this Term Sheet, the Agreement, or the Amended Plan shall constitute a release of any Claim by Zurich Insurers or Zurich Affiliated Insurers or their Representatives of any rights related to, or Claims concerning, (i) Non-Abuse Insurance Policies, (ii) reinsurance, or (iii) Postpetition Insurance Policies.

6. **Release of Zurich Insurers and Zurich Affiliated Insurers**. Upon the Release Date, the Debtors, Reorganized BSA, Related Non-Debtor Entities, Local Councils, Limited Protected Parties, other Protected Parties (including the Contributing Chartered Organizations), other Settling Insurance Companies, the FCR, the Coalition, the Trust, and all such Persons' or Entities' Representatives (the "Releasing Parties") shall release Zurich Insurers and Zurich Affiliated Insurers and each of their Representatives from all Causes of Action and Claims related to, arising from, or in connection with, in whole or in part (a) Abuse Insurance Policies (which shall include all Zurich Insurer Policies), (b) any other insurance policy issued by Zurich Insurers and Zurich Affiliated Insurers covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims, (c)

the types of claims listed in the Insurance Actions definition in the Plan and other Claims related to the Zurich Insurer Policies and including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations thereunder whether for defense, settlement of claims or otherwise, including extra-contractual claims relating to the Zurich Insurer Policies, (d) the Debtors' Chapter 11 Cases and related proceedings, including the Debtors' Plan, the Amended Plan and any prior plans, any Claims that were or could have been asserted by Zurich Insurers and Zurich Affiliated Insurers against the Debtors or any of the Releasing Parties, or by the Debtors or any of the Releasing Parties against Zurich Insurers and Zurich Affiliated Insurers, in the Debtors' Chapter 11 Cases, and any actions, omissions or positions taken in the Debtors' Chapter 11 Cases and related proceedings, (e) all Claims and Causes of Action alleging Abuse Claims against the Protected Parties (including such Claims and Causes of Action related to any Zurich Insurer Policy), and (f) any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date related to any policy issued by Zurich Insurers and Zurich Affiliated Insurers concerning the Debtors or Scouting, including the Zurich Insurers' and Zurich Affiliated Insurers' performance of their obligations thereunder whether for defense, settlement of claims, or otherwise. If another Settling Insurance Company receives broader releases or protections concerning Causes of Action and Claims related to its policies (including its Abuse Insurance Policies) than those provided to Zurich Insurers or Zurich Affiliated Insurers in the Agreement or Amended Plan, then Zurich Insurers and Zurich Affiliated Insurers shall receive the benefit of those broader releases and protections automatically and without the necessity of further actions by the Parties. The Agreement will provide that the release of Zurich Insurers and Zurich Affiliated Insurers shall not affect claims against other insurance companies, subject to the limitation that Zurich Insurers and Zurich Affiliated Insurers shall not assert claims against other Settling Insurance Companies. Nothing shall preclude the Releasing Parties from enforcing the terms of the Agreement and the Amended Plan. For the avoidance of doubt, the term "Releasing Parties" shall include (1) all of such parties' respective past, present, and future direct or indirect parents, subsidiaries, affiliates, and controlled entities, and each of their respective officers, directors, stockholders, members, partners, managers, employees, attorneys, agents, experts, consultants, volunteers, predecessors, successors, and assigns, each in their capacity as such (including any of the foregoing who is an alleged Perpetrator), and (2) to the extent of any party's right, power, and authority to do so, any and all other persons or entities entitled to assert rights to coverage under any of the Zurich Insurer Policies or any policy of insurance issued to or for the benefit of such releasing party related to Abuse Claims. The releases in this Section 6 shall be subject to and limited by Section 4 (as applicable to Postpetition Insurance Policies and Non-Abuse Insurance Policies), and shall not include any insurance policies for which the Zurich Insurers or Zurich Affiliated Insurers become responsible or acquire on or after the Term Sheet Effective Date.[6]

7.  **Protections Afforded to Chartered Organizations**. On the Release Date, all Abuse Claims against insureds and co-insureds covered under insurance policies issued by the

---

[6] For the avoidance of doubt, the releases, protections, and limitations provided in this Term Sheet and the Agreement, including to Zurich Insurers and Zurich Affiliated Insurers, shall be no broader and no narrower than those provided in the Century Term Sheet to the "Settling Insurers" as defined in the Century Term Sheet.

Zurich Insurers or Zurich Affiliated Insurers, including the Zurich Insurer Policies, shall be channeled under the Settling Insurer Policy Injunction and released. Pending the occurrence of the Release Date, all such Abuse Claims shall be enjoined pursuant to the Post-Petition Interim Injunction, as provided in the Century Term Sheet.

8.  **Trust Bound by Agreement**.  Upon the Effective Date, the Trust shall be bound by all terms of this Term Sheet and the Agreement.  Upon the Release Date, the Trust shall release Zurich Insurers and Zurich Affiliated Insurers from all Causes of Action and Claims that the Trust holds relating to the Zurich Insurer Policies, provide the other releases contained in the Agreement, and otherwise perform as required in the Agreement.

9.  **Chartered Organizations**.  The terms of the Century Term Sheet with respect to Chartered Organizations are incorporated herein.  Zurich Insurers and Zurich Affiliated Insurers shall (a) receive the same releases and the same protections of the channeling injunction as Century Indemnity Company with respect to Chartered Organizations, including the release by the Participating Chartered Organizations and Contributing Chartered Organizations for coverage for Abuse Claims under insurance policies issued directly by Zurich Insurers and Zurich Affiliated Insurers to such Chartered Organizations, and (b) provide the same releases as Century Indemnity Company with respect to Chartered Organizations.  The Agreement shall contain such provisions, including such provisions from the Century Term Sheet or the "Agreement" referred to in that term sheet, as are necessary and appropriate to accomplish the goals of the first sentence of this paragraph.

10. **Judgment Reduction**.  In the event that any other insurer obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from Zurich Insurers as a result of a Cause of Action for contribution, subrogation, indemnification, or other similar Cause of Action against Zurich Insurers for Zurich Insurers' alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation for any Abuse Claim or for any Cause of Action released in this Agreement, the Trust shall voluntarily reduce its judgment or Cause of Action against, or settlement with, such other insurer(s) to the extent necessary to eliminate such contribution, subrogation, indemnification, or other similar Cause of Action against Zurich Insurers.  To ensure that such a reduction is accomplished, Zurich Insurers shall be entitled to assert this paragraph as a defense to any action against them for any such portion of the judgment or Cause of Action and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect Zurich Insurers from any liability for the judgment or Cause of Action.  To the extent any other insurer asserts a claim for contribution, subrogation, indemnification, or other similar claim against Zurich Insurers or Zurich Affiliated Insurers, Zurich Insurers or Zurich Affiliated Insurers may assert any defense to such claim notwithstanding any of the releases contained herein.

11. **Findings and Orders**.  The Amended Plan and the Confirmation Order shall state that the Findings and Orders (as described in paragraph 21 of the Century Term Sheet) and Trust Distribution Procedures of the Plan are not binding on Zurich Insurers or Zurich Affiliated Insurers to the extent that Zurich Insurers or Zurich Affiliated Insurers are Settling Insurance Companies and the transactions contemplated herein, including the payment of the Settlement Amount to the Trust, are fully consummated.  The Amended Plan and

Confirmation Order shall further provide that Zurich Insurers' and Zurich Affiliated Insurers' agreement herein not to object to the entry of said Findings and Orders in the Confirmation Order does not indicate Zurich Insurers' or Zurich Affiliated Insurers' support for or acceptance of the Trust Distribution Procedures or any findings and orders made in connection with them in any proceeding, which Findings and Orders and Trust Distribution Procedures shall not be applicable to Zurich Insurers or Zurich Affiliated Insurers, and no party shall argue that Zurich Insurers or Zurich Affiliated Insurers agreed to or acquiesced in such Findings, and Orders and Trust Distribution Procedures in any proceeding.

12. **Trust Distribution Procedures**.  Subject to modification in a manner not inconsistent with this Term Sheet and the Agreement by the Debtors, the Coalition, and the FCR, the Trust Distribution Procedures may be in the form attached to the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* dated September 29, 2021, filed at Dkt. 6443, *provided that* Zurich Insurers and Zurich Affiliated Insurers shall be included as releasees, with respect to any Zurich Insurer Policies issued on or after January 1, 1987, in any form of release attached to the Trust Distribution Procedures to the same extent as BSA, Local Councils, and Chartered Organizations are released.  The Trust Distribution Procedures shall further provide that the Settlement Trustee shall require holders of Abuse Claims who receive payment from the Trust to release any Abuse Claim against Zurich Insurers or Zurich Affiliated Insurers under the Zurich Insurer Policies.  The Trust Distribution Procedures shall also provide that the Settlement Trustee shall require holders of Abuse Claims who receive payment from the Trust to release any such Abuse Claim against any insured, co-insured, or additional insured under the Zurich Insurer Policies to the extent of any remaining rights (if any) under the Zurich Insurer Policies.  Zurich Insurers and Zurich Affiliated Insurers shall not object to the Trust Distribution Procedures but may add a statement in the Amended Plan that Zurich Insurers and Zurich Affiliated Insurers are Settling Insurance Companies and, as a result, take no position on the Trust Distribution Procedures.  Zurich Insurers and Zurich Affiliated Insurers shall not object to the selection of the Settlement Trustee as provided in the Amended Plan and Settlement Trust Agreement.  Zurich Insurers and Zurich Affiliated Insurers shall not participate in or otherwise interfere with the administration of the Trust.

13. **Objections to Plan**.  Zurich Insurers and Zurich Affiliated Insurers shall not object to the Amended Plan, the Settlement Trust Agreement, or the Trust Distribution Procedures (and shall withdraw any pending objections) so long as Zurich Insurers and Zurich Affiliated Insurers are included as Protected Parties in the Amended Plan, and the Amended Plan is otherwise consistent with the terms of this Term Sheet and the Agreement.

14. **Discovery**.  Upon the execution of the Term Sheet, all Parties shall as soon as practicable withdraw any pending discovery requests directed at each other and shall not seek additional discovery from each other.  Zurich Insurers shall as soon as practicable withdraw any pending discovery requests directed at any holder of an Abuse Claim, representatives of such holders, funders, vendors utilized by representatives of such holders, the Coalition (including law firms and attorneys associated therewith), and the FCR.  Zurich Insurers and Zurich Affiliated Insurers shall not seek or direct any additional discovery from such

parties, the BSA, or the Local Councils, or any other party in interest in the Chapter 11 Cases or any proceedings related to the Chapter 11 Cases, nor shall Zurich Insurers and Zurich Affiliated Insurers cooperate with any other insurer's or putative objector's discovery requests in the Chapter 11 Cases or any proceedings related to the Chapter 11 Cases. Notwithstanding the foregoing, Zurich Insurers and Zurich Affiliated Insurers shall cooperate and comply with any information requests, including prior BSA-related settlement and verdict information, from the BSA, the Coalition, and the FCR to the extent such information is not protected from disclosure and reasonably necessary in support of the confirmation of the Amended Plan; *provided*, *however*, that if the results of this process do not resolve and satisfy said information requests, the BSA, the Coalition, or the FCR shall have the right to submit the dispute to Mediator Gallagher, and the Parties agree to be bound by the Mediator's decision regarding such dispute.

15. **Public Statements**. The Parties and State Court Counsel shall cooperate with each other to coordinate on timing and substance of public statements regarding settlement, including press releases, court filings, and in-court statements. Zurich Insurers and Zurich Affiliated Insurers shall make no statements about holders of Abuse Claims or any representative thereof; *provided*, *however*, that Zurich Insurers and Zurich Affiliated Insurers may make statements to protect their rights in the Chapter 11 Cases, including statements in response to objections or statements by holders of Abuse Claims and their representatives concerning Zurich Insurers and Zurich Affiliated Insurers.

16. **Termination Event by the Debtors, the Coalition, and the FCR**. Subject to the provisions of Section 18, the Agreement shall contain a termination event that shall permit the Debtors, the Coalition, or the FCR to terminate the Agreement if Class 8 (Direct Abuse Claims) (as currently constituted or as it may be reconstituted per order of the Bankruptcy Court) votes to not accept the Amended Plan under section 1126 of the Bankruptcy Code and as a result the Amended Plan is withdrawn. Subject to the foregoing sentence and Section 17, pending entry of the Confirmation Order and the occurrence of the Release Date, the Debtors, the Coalition, and the FCR will not take any action inconsistent with this Term Sheet and, at all times, will (a) use their best efforts to secure prompt entry of the Confirmation Order consistent with this Term Sheet, including the provisions constituting the approval of all of the terms and conditions hereof, and the Agreement, and (b) defend this Term Sheet and the Agreement.

17. **Fiduciary Out by the Debtors and the FCR**. Notwithstanding anything in this Term Sheet or the Agreement to the contrary, no term or condition of this Term Sheet or the Agreement shall require Debtors or the FCR to take or refrain from taking any action that it determines would be inconsistent with its fiduciary duties under applicable law, and further, in the event that either the FCR or the Debtors determine that in the proper exercise of their respective fiduciary duties under applicable law they cannot proceed with this Term Sheet or the Agreement, the Term Sheet or Agreement may be terminated at any time prior to the entry of a Final Order confirming the Amended Plan as to that party, *provided, however,* that the Debtors and the FCR each understands that the TCC is not a party to this Term Sheet and that the TCC and claimants represented by various plaintiff firms may object to the Agreement and the Debtors and the FCR acknowledge and represent that their entry into this Term Sheet and the Agreement is consistent with their fiduciary duties as of

the effective date of the Term Sheet, *provided further* that following the entry of the Confirmation Order by the Bankruptcy Court nothing herein shall exempt the Debtors or the FCR from the doctrines of finality, repose, or otherwise applicable doctrines of *res judicata*, collateral estoppel, limitations on appellate jurisdiction or applicable deadlines pursuant to the Bankruptcy Code, Bankruptcy Rules, court orders, and local rules or any similar doctrine(s); *provided further* that if the FCR exercises its fiduciary right to terminate the Agreement, such termination shall be with respect to the FCR only and not otherwise affect the Agreement or the other Parties' rights and obligations thereunder. Each of Debtors and the FCR believe that, as of the date hereof, entering into this Term Sheet is an appropriate exercise of its fiduciary duty.

18. **Effect of Termination or Failure of Conditions to Occur**.  In the case of any termination described in Sections 16 or 17 above by the Debtors or any other situation where the Agreement does not proceed (including as a result of the failure of any condition thereto to occur or failure to obtain entry of the Confirmation Order), absent the consent of the Zurich Insurers, the Zurich Insurers shall be (i) afforded an opportunity to interpose all objections to any plan that does not afford them the protections and rights provided hereunder, notwithstanding any prior deadlines, law of the case, or any determination made in the intervening period after execution of this Term Sheet, (ii) afforded adequate additional time and relief from any deadline to prepare and present such objections including any expert reports and additional discovery, and (iii) able to assert any and all positions in opposition to such plan and hearing schedule, none of which are waived or affected hereby. For the avoidance of doubt, the approval of the Agreement and settlement provided herein shall be a condition to the entry of the Confirmation Order, entry of the Affirmation Order, and the Effective Date of the Amended Plan, which condition may only be waived with the consent of each of the Parties.

19. **Effect of Reversal of Confirmation Order Following the Effective Date.**  In the event that the Confirmation Order is reversed or vacated on appeal following the Effective Date, such that the Release Date does not occur (a "Reversal"), the Parties and State Court Counsel agree that the Settlement Amount and all Net Income accrued thereon in the Escrow Account shall be released from the Escrow Account to Zurich Insurers promptly following the Reversal (or any exercise of a Fiduciary Out by BSA).  The provisions of this Section 19 shall survive any Reversal, any exercise of any Fiduciary Out, and any termination of the Agreement.  Nothing in this Section or elsewhere in this Term Sheet or the Agreement shall bar any of the Parties or State Court Counsel from arguing that any appeal from the Confirmation Order should be dismissed on grounds of statutory or equitable mootness or otherwise.

20. **State Court Counsel**.  Each State Court Counsel represents and warrants to the Parties that, as of the date hereof, it represents the number of holders of Direct Abuse Claims who filed timely Direct Abuse Claims in the Chapter 11 Cases that is listed next to its name on Schedule 1 hereto.

21. **Contribution Claims.**

   a. Zurich Insurers and Zurich Affiliated Insurers will not assert or file a Claim, and will dismiss any pending Claims, seeking contribution, indemnity, and/or defense against another Entity in order to recover any portion of the Settlement Amount to be paid by Zurich Insurers under the Agreement or with respect to claims released under the Agreement.

   b. Notwithstanding the foregoing, Zurich Insurers shall maintain an unfettered right to advise their reinsurers and retrocessionaires with respect to all matters related to this settlement, as well as the right to assert and recover claims against their reinsurers and retrocessionaires in their capacities as such.

   c. To the extent that the Debtors, their Estates, or any assignee, successor, or any other Entity formed to assume the Debtors' liability for Abuse Claims, including the Settlement Trust, settles Claims arising out of claims released by the Agreement with any other Insurance Company or other Entity, the Debtors, their Estates, or any such assignee, successor, and/or other Entity, including the Settlement Trust, shall use its or their best efforts to obtain a waiver of that other Insurance Company's or Entity's Claims seeking contribution, indemnity, and/or defense costs from any Zurich Insurer or Zurich Affiliated Insurer based upon, arising out of, or in any way related to such Claims. Such waiver may be accomplished by an assignment of such Claims to the Settlement Trust, whereupon such Claims will be subject to the releases set forth in Section 5 herein.

22. **Conditions.**

   a. If the Bankruptcy Court, or any other court with jurisdiction, issues an order (a) dismissing Debtors' bankruptcy cases or converting them to cases under Chapter 7 or (b) confirming a plan that does not identify the Zurich Insurers as Protected Parties who are entitled to the benefit of the Channeling Injunction, the Agreement will be null and void.

   b. The Agreement will include as a condition precedent that the FCR (subject to Section 17 herein), the Coalition, and the AHCLC must consent to, and agree to be bound by, all of the terms of the Agreement.

   c. The Agreement shall bind the Settlement Trust to an agreement not to terminate the Channeling Injunction provided in the Plan, or any other injunction contained in the Plan, that bars or limits claims of any kind against Settling Insurance Companies.

23. **Bankruptcy Proceedings.**

   a. The Parties agree to use their best reasonable efforts to effectuate the Agreement and to obtain entry of the Confirmation Order.

b. If the Confirmation Order is not entered, or is entered but does not become a Final Order, all of the Parties' rights with respect to the Zurich Insurer Policies shall be preserved exactly as they existed before the authorized representatives of the Parties signed the Agreement.

24. **Bankruptcy Provisions.**

    a. <u>Channeling Injunction</u>. Subject to all of the terms and conditions of the Plan and the Agreement, including the Zurich Insurers' payment of the Settlement Amount, the Zurich Insurers and the Zurich Affiliated Insurers shall be designated as Settling Insurance Companies and Protected Parties under the Plan, entitled to the protection of the Channeling Injunction.

    b. <u>Notice</u>. In addition to providing direct notice to all parties in interest in the bankruptcy case (including all known claimants against Debtors), Debtors shall provide appropriate broad notice by publication and otherwise to ensure that the injunctions protecting the Zurich Insurers and the Zurich Affiliated Insurers against Abuse Claims shall be effective as against all persons who assert, have asserted, or may in the future assert, Abuse Claims.

    c. <u>Incorporation Of This Settlement Into A Further Amended Plan</u>. The Parties will discuss the extent to which any settlement between them must be incorporated into a further amended Plan.

25. **Abuse Claims Under Policies Issued to Chartered Organizations**. Notwithstanding the release by the Participating Chartered Organizations and Contributing Chartered Organizations of the right to seek coverage for Abuse Claims under insurance policies issued directly by Zurich Insurers or Zurich Affiliated Insurers to such Chartered Organizations:[7]

(a) Such Chartered Organizations are not barred from tendering claims that are not Abuse Claims to such insurance policies, with all parties reserving their rights as to whether such insurance policies apply and to what extent;

(b) Such Chartered Organizations are not barred from tendering Mixed Claims to such insurance policies, with all parties reserving their rights as to whether such insurance policies apply and to what extent. All Parties agree to cooperate to enforce the Post-Confirmation Interim Injunction (as set forth in Section 14 of the Century Term Sheet) and the Channeling Injunction to eliminate all or a portion of the Mixed Claims against the applicable Chartered Organizations;

(c) Such Chartered Organizations may seek coverage and tender claims under such insurance policies pending determination by a court of competent jurisdiction as to whether a Claim is a channeled Abuse Claim, subject to all parties' contractual rights;

---

[7] This does not include policies issued by Zurich Insurers and Zurich Affiliated Insurers to the BSA or the Local Councils.

(d) To the extent a court determines that a claim against such Chartered Organizations is not an Abuse Claim or is not subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Plan, such Chartered Organizations may seek defense and indemnification of that claim from such insurance policies, subject to all parties' contractual rights;

(e) To the extent a court determines that a claim against such Chartered Organizations is subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Plan, Zurich Insurers and Zurich Affiliated Insurers shall have no further obligations with respect to such claim; and

(f) The Settlement Trust shall cooperate with any ongoing efforts by such Chartered Organizations and/or Zurich Insurers and Zurich Affiliated Insurers to establish that the Post-Confirmation Interim Injunction and the Channeling Injunction apply.

26. **Other Terms.**

    a. Mutually agreeable terms for non-admission, no use, integration, no assignment, notice, and other standard terms.

    b. Zurich Insurers may allocate the Settlement Amount in their sole discretion among any Zurich Insurer Policies, provided that (i) any such allocation shall not bind the Trust and (ii) Zurich Insurers and Zurich Affiliated Insurers will not allocate the Settlement Amount to any insurance policy issued directly to a Chartered Organization by Zurich Insurers and Zurich Affiliated Insurers.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**                           **Zurich Insurers (as defined)**

By: _Roger C. Mosby_                           By: _____

Name: _Roger C. Mosby_                         Name: _____

Title: _President & CEO_                       Title: _____

Date: _12-21-2021_                             Date: _____


**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**                **Zurich Insurers (as defined)**

By: _____        By: _____

Name: _____        Name: _____ *Robert Koscielniak*    Digitally signed by Robert Koscielniak
DN: cn=Robert Koscielniak, o=Zurich North America, ou=Latent & Environmental Claims, email=Robert.Koscielniak@zurichna.com, c=US
Date: 2021.12.21 16:48:23 -06'00'
Adobe Acrobat version: 2015.006.00000

Title: _____        Title: _____

Date: _____        Date: _____

**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**                    **Zurich Insurers (as defined)**

By: _____          By: _____

Name: _____          Name: _____

Title: _____          Title: _____

Date: _____          Date: _____


**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: 12/21/21


**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**                    **Zurich Insurers (as defined)**

By: _____            By: _____

Name: _____            Name: _____

Title: _____           Title: _____

Date: _____           Date: _____


**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____
      David J. Molton

Dated: _____
      December 22, 2021


**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**                                **Zurich Insurers (as defined)**

By: _____          By: _____

Name: _____          Name: _____

Title: _____          Title: _____

Date: _____          Date: _____


**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____*RS Mason, its chair*_____

Dated: _____*12/21/21*_____

## <u>Schedule 1</u>

### State Court Counsel

| FIRM | NOTICE ADDRESS | CLAIMS |
|------|----------------|--------|
| Slater Schulman LLP | Attn: Adam P. Slater (aslater@sssfirm.com) 488 Madison Avenue 20th Floor New York, NY 10022 | 14170 |
| ASK LLP | Attn: Joseph Steinfeld (jsteinfeld@askllp.com) 151 West 46th Street, 4th Floor New York, NY 10036 | 3277 |
| Andrews & Thornton, AAL, ALC | Andrews & Thornton Attn: Anne Andrews (aa@andrewsthornton.com) 4701 Von Karman Ave., Suite 300 Newport Beach, CA 92660 | 3009 |
| Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. | Attn: Stewart J. Eisenberg (stewart@erlegal.com) 1634 Spruce Street Philadelphia, PA 19103 | 16869 |
| Junell & Associates PLLC | Attn: Deborah Levy (dlevy@junell-law.com) 3737 Buffalo Speedway Ste. 1850 Houston, TX 77098 | 2918 |
| Reich & Binstock LLP | Attn: Dennis Reich (dreich@reichandbinstock.com) 4265 San Felipe St. #1000 Houston, TX 77027 | 336 |
| Krause & Kinsman Law Firm | Attn: Adam W. Krause (adam@krauseandkinsman.com) 4717 Grand Avenue #300 Kansas City, MO 64112 | 5981 |
| Bailey Cowan Heckaman PLLC | Attn: Aaron Heckaman (aheckaman@bchlaw.com) 5555 San Felipe St. Ste. 900 Houston, TX 77056 | 1026 |
| Jason J. Joy & Associates, PLLC | Attn: Jason Joy (jason@jasonjoylaw.com) 909 Texas St, Ste 1801 | 690 |

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| | Houston, TX 770022 | |
| Motley Rice LLC | Attn: Daniel Lapinski (dlapinski@motleyrice.com) 210 Lake Drive East Suite 101 Cherry Hill, NJ 08002 | 343 |
| Weller Green Toups & Terrell LLP | Attn: Mitchell Toups (matoups@wgttlaw.com) 2615 Calder Ave. #400 Beaumont, TX 77702 | 974 |
| Colter Legal PLLC | Attn: John Harnishfeger (john.harnishfeger@colterlegal.com) 1717 K St. NW Suite 900 Washington D.C. 20006 | 162 |
| Christina Pendleton & Associates, PLLC | Attn: Staesha Rath (sr@cpenlaw.com) 1506 Staples Mill Rd. Suite 101 Richmond, VA 23230 | 309 |
| Forman Law Offices, P.A. | Attn: Theodore Forman (ted@formanlawoffices.com) 238 NE 1st Ave. Delray Beach, FL 33444 | 125 |
| Danziger & De Llano LLP | Attn: Rod de Llano (rod@dandell.com) 440 Louisiana St. Suite 1212 Houston, TX 77002 | 1707 |
| Swenson & Shelley | Attn: Kevin Swenson (kevin@swensonshelley.com) 107 South 1470 East, Ste. 201 St. George, UT 84790 | 175 |
| Cohen Hirsch LP (formerly Brooke F. Cohen Law, Hirsch Law Firm) | Attn: Brooke F. Cohen (brookefcohenlaw@gmail.com) Attn: Andrea Hirsch (andrea@thehirschlawfirm.com) 4318 Glenwick Lane Dallas, TX 75205 | 64 |
| Damon J. Baldone PLC | Attn: Damon J. Baldone (damon@baldonelaw.com) 162 New Orleans Blvd. | 471 |

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| | Houma LA 70364 | |
| Cutter Law, P.C. | Attn: Brooks Cutter (bcutter@cutterlaw.com) 4179 Piedmont Ave. 3rd Fl. Oakland, CA 94611 | 358 |
| Linville Johnson & Pahlke Law Group | Attn: Robert Pahlke (rgp@pahlkelawgroup.com) 2425 Circle Dr., Ste. 200 Scottsbluff NE 69361 | 71 |
| Porter & Malouf P.A. | Attn: Timothy Porter (tporter@portermalouf.com) 825 Ridgewood Rd. Ridgeland, MS 39157 | 86 |
| The Moody Law Firm | Attn: Will Moody Jr. (will@moodyrrlaw.com) 500 Crawford St., Ste. 200 Portsmouth, VA 23704 | 677 |
| Levin Papantonio Thomas Mitchell Rafferty & Procter P.A. | Attn: Cameron Stephenson (cstephenson@levinlaw.com) 316 South Baylen St. Pensacola, FL 32502 | 44 |
| Marc J Bern & Partners LLP | Attn: Joseph Cappelli (jcappelli@bernllp.com) 60 East 42nd St. Ste. 950 New York, NY 10165 | 5893 |

**Exhibit A**

**Known and Alleged BSA Insurance Policies Issued by Zurich Insurers**

| Writing Company | Policy No. | Policy Period |
|---|---|---|
| American Zurich Insurance Company | CEO 6371780-00 | March 1, 1989 - March 1, 1990 |
| American Zurich Insurance Company | AUO 3657270-00 | March 1, 1996 - March 1, 1997 |
| American Zurich Insurance Company | AUO 3657270-01 | March 1, 1997 - March 1, 1998 |
| American Zurich Insurance Company | EUO 3657270-02 | March 1, 1998 - March 1, 1999 |
| American Zurich Insurance Company | EUO 3657270-03 | March 1, 1999 - March 1, 2001 |
| American Guarantee & Liability Insurance Company | AEC 3657270-04 | March 1, 2001 - March 1, 2002 |
| American Guarantee & Liability Insurance Company | AEC 9278457-00 | March 1, 2001 - March 1, 2002 |
| American Guarantee & Liability Insurance Company | AEC 3657270-05 | March 1, 2002 - March 1, 2003 |
| American Guarantee & Liability Insurance Company | AEC 9278457-01 | March 1, 2002 - March 1, 2003 |
| American Guarantee & Liability Insurance Company | AEC 3657270-06 | March 1, 2003 - March 1, 2004 |
| American Guarantee & Liability Insurance Company | AEC 9278457-02 | March 1, 2003 - March 1, 2004 |
| American Guarantee & Liability Insurance Company | AEC 3657270-07 | March 1, 2004 - March 1, 2005 |
| American Guarantee & Liability Insurance Company | AEC 9278457-03 | March 1, 2004 - March 1, 2005 |
| American Guarantee & Liability Insurance Company | AEC 3657270-08 | March 1, 2005 - March 1, 2006 |
| Steadfast Insurance Company | AEC 3657270-09 | March 1, 2006 - March 1, 2007 |

**Exhibit C**

**Notice Addresses**

| For Zurich: | With a copy to: |
|---|---|
| Robert Koscielniak<br>Director, Latent & Environmental Claims<br>Zurich North America<br>1299 Zurich Way<br>Schaumburg, IL  60196-1056<br>robert.koscielniak@zurichna.com | Mark D. Plevin<br>Crowell & Moring LLP<br>3 Embarcardero Center<br>26th Floor<br>San Francisco, CA 94111<br>(415) 365-7446<br>mplevin@crowell.com |
| For the Debtors:<br><br>Steven P. McGowan<br>General Counsel<br>Boy Scouts of America<br>1325 West Walnut Hill Lane<br>Irving, TX 75038<br>(972) 580-7847<br>steve.mcgowan@scouting.org | With a copy to:<br><br>Jessica C. Lauria<br>White & Case LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>(212) 819-8200<br>jessica.lauria@whitecase.com<br><br>Michael C. Andolina<br>White & Case LLP<br>111 South Wacker Drive<br>Chicago, IL 60606<br>(312) 881-5400<br>mandolina@whitecase.com |
| For the Coalition:<br><br>David J. Molton<br>Eric R. Goodman<br>Coalition of Abused Scouts for Justice<br>c/o Brown Rudnick LLP<br>Seven Times Square<br>New York, NY<br>(212) 209-4800<br>dmolton@brownrudnick.com<br>egoodman@brownrudnick.com | |

| | |
|---|---|
| For the FCR:<br><br>James L. Patton<br>Robert S. Brady<br>Edwin J. Harron<br>c/o Young Conaway Stargatt & Taylor, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>jpatton@ycst.com<br>rbrady@ycst.com<br>eharron@ycst.com | With a copy to:<br><br>Kami E. Quinn<br>Gilbert LLP<br>700 Pennsylvania Avenue SE<br>Suite 400<br>Washington, DC 20003<br>(202) 772-2336<br>quinnk@gilbertlegal.com |
| For AHCLC:<br><br>Richard G. Mason<br>Joseph C. Celentino<br>Ad Hoc Committee of Local Councils<br>c/o Wachtell, Lipton, Rosen & Katz<br>51 West 52nd Street<br>New York, New York  10019<br>(212) 403-1000<br>RGMason@wlrk.com<br>JCCelentino@wlrk.com | |
| For State Court Counsel:<br><br>See Schedule 1 hereto | |

# Exhibit D

**Current P&C underwriting companies**

Zurich American Insurance Company
American Guarantee and Liability Insurance Company
American Zurich Insurance Company
Colonial American Casualty and Surety Company
Empire Fire and Marine Insurance Company
Empire Indemnity Insurance Company
Fidelity and Deposit Company of Maryland
Steadfast Insurance Company
Universal Underwriters Insurance Company
Universal Underwriters of Texas Insurance Company
Zurich American Insurance Company of Illinois

**Sold, dissolved, merged underwriting companies**

Assurance Company of America
Maine Bonding and Casualty Company
Maryland Casualty Company
Maryland Insurance Company f/k/a American General Fire and Casualty Company
Maryland Lloyd's
National Standard Insurance Company
Northern Insurance Company of New York
Valiant Insurance Company
Zurich American Lloyds
Zurich Insurance Company (US Branch)