# EXHIBIT 3

**Clarendon Insurance Settlement Agreement**

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (this "Agreement"), dated February 14, 2022, is entered into between and among Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company), River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, on its own behalf and in turn as successor to St Katherine Insurance Company Limited), and Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company (as defined herein and collectively, "Clarendon"), Boy Scouts of America and Delaware BSA, LLC, as debtors and debtors in possession (as defined herein and collectively, "BSA" or the "Debtors"), the Ad Hoc Committee of Local Councils (the "AHCLC"),[1] the Coalition of Abused Scouts for Justice, solely and only in its capacity as an ad hoc committee (the "Coalition"),[2] and the Future Claimants' Representative (the "FCR" and, collectively with Clarendon, the Debtors, the AHCLC, and the Coalition, the "Parties").  The attorneys representing holders of Direct Abuse Claims listed on Schedule 1 hereto, which reflects the number of holders of Abuse Claims represented by each firm (the "State Court Counsel") agree to support the terms of and be bound by this Agreement.

WHEREAS, on February 18, 2020, the Debtors commenced proceedings under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court;

WHEREAS, Clarendon has allegedly issued insurance policies covering or allegedly covering Claims and Causes of Action for Abuse involving Scouting that occurred prior to the Petition Date;

WHEREAS, the Parties wish to resolve disputes concerning such policies;

WHEREAS, subject to the terms and conditions set forth herein, Clarendon will pay the Settlement Amount (as defined herein) in exchange for the injunctions, releases and other protections described below;

WHEREAS, among other things, the settlement provides for the channeling and release of all Abuse Claims against Clarendon (and against their insureds under policies issued by Clarendon that may cover such Claims) in exchange for the Settlement Amount (as defined below);

WHEREAS, on December 18, 2021, the Debtors filed their Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [D.I. 7832] (as it may subsequently be amended from time to time, the "Plan");

---

[1] Notwithstanding anything to the contrary in this Agreement, the obligations and undertakings of the AHCLC in connection with this Agreement shall be no greater than the AHCLC's parallel obligations and undertakings under Section III of the Restructuring Support Agreement (including the "No Liability" subsection thereof) filed at Dkt. 5466-2.

[2] For the avoidance of doubt, no holders of Direct Abuse Claims are or shall be deemed Parties to this Agreement.

WHEREAS, on December 30, 2021 (the "Term Sheet Effective Date"), the Parties executed a term sheet in the form attached hereto as Exhibit C (the "Term Sheet"), setting forth the basic terms of their settlement; and

1. **Agreement Effective Date.** This Agreement shall be binding on the Parties, subject to Bankruptcy Court approval, as necessary, and Sections 25, 26, 27, 28, and 29 below, when the last of the Parties to execute this Agreement has executed this Agreement.

2. **Settlement Amount.** In consideration of the releases and other consideration provided for herein, Clarendon shall pay in cash Sixteen Million and Five-Hundred Thousand U.S. Dollars ($16,500,000) (the "Settlement Amount") to the trust for Abuse Claims to be created under the Plan (the "Settlement Trust" or "Trust") as provided herein. No most-favored nation or similar provision will reduce the Settlement Amount to be paid by Clarendon based on any settlements that BSA may enter into with other insurers.

3. **Payment and Release of the Settlement Amount.**

a) Clarendon shall pay Two Million, Eight Hundred and Seventy-One Thousand U.S. Dollars ($2,871,000) (17.4% of Settlement Amount) (the "Initial Payment") of the Settlement Amount to the Trust on, or as soon as reasonably practicable after, the Initial Payment Date and all conditions to the effectiveness of the Plan have been satisfied (including the entry of orders, in form and substance reasonably acceptable to the Parties, of the Bankruptcy and District Courts confirming, or affirming confirmation of, the Plan (collectively, the "Confirmation Order"), which Confirmation Order shall not be subject to any stay and shall be in full force and effect) and the Plan has gone effective (the "Plan Effective Date").

b) On, or as soon as reasonably practicable after, the Plan Effective Date, Clarendon shall pay the remaining 82.6% of the Settlement Amount (the "Additional Payment") into an escrow account (the "Escrow Account," and all payments held in such Escrow Account, the "Escrowed Payments"), to be administered by an independent escrow agent acceptable to the Parties (the "Escrow Agent"). The Additional Payment (and all income earned thereon minus (a) the fees of the Escrow Agent, and (b) any taxes that are payable and other costs of the Escrow Account, which amounts in (a) and (b) shall be paid from the corpus of the Escrow Account (such income (or loss) minus such amounts, the "Net Income")) shall remain in the Escrow Account until the Confirmation Order becomes a Final Order, on which date the Additional Payment, plus any Net Income, shall be released from the Escrow Account to the Trust on the Release Date); *provided, however,* that, at its election, Clarendon may authorize the payment of the Additional Payment directly to the Trust on the Plan Effective Date or may authorize the release of the Additional Payment (and any Net Income) from the Escrow Account to the Trust at any time thereafter before the Confirmation Order becomes a Final Order, in which event the date on which Clarendon authorizes the payment or release of the Additional Payment to the Trust shall be the Release Date.

c) The Settlement Trust shall have investment discretion with respect to the Additional Payment while it is in the Escrow Account, subject to the investment protocols applicable under the term sheet located at Docket No. 6210-1; *provided, however,* that the Trust will bear all risks associated with any such investment of the Additional Payment and that no

2

loss or failure to achieve desired investment returns on the Additional Payment while it is in the Escrow Account shall require Clarendon to increase the Settlement Amount it is paying (or increase the amount of BSA's contribution to the Trust); *provided further, however*, that the Debtors, Reorganized BSA, the Local Councils, and Chartered Organizations shall have no liability or obligations to Clarendon or the Trust, the Trust shall have no liability or obligations to Clarendon, and Clarendon shall have no liability or obligations to the Trust (or any other Party), whatsoever for any loss or failure to achieve desired investment returns on the Additional Payment while it is in the Escrow Account.

d) Notwithstanding anything to the contrary herein, the Additional Payment and any amounts in the Escrow Account, including the Net Income, shall be promptly (and no later than seven (7) Business Days after the date of such written demand unless otherwise agreed to by the Parties) released to Clarendon upon its written demand if any of the following occur: (i) the District Court does not enter the Affirmation Order within 360 days after the entry of the Confirmation Order by the Bankruptcy Court or the District Court declines to enter the Affirmation Order (whether or not such denial constitutes a remand or a Reversal, as defined herein); (ii) the Plan is at any time withdrawn; (iii) the Plan otherwise ceases to conform to this Agreement; (iv) the Confirmation Order is reversed or vacated on appeal following the Plan Effective Date such that the Release Date does not occur (a "Reversal"); (v) the Chapter 11 Cases have been converted or dismissed, (vi) the Parties agree to such release in writing; or (vii) an order of the Bankruptcy Court or District Court so provides. In such event, the Parties' rights and obligations under this Agreement shall be governed by Sections 28 and 29.

4. **Protections to be Afforded to Clarendon**.

a) Effective as of the Release Date, Clarendon will be designated as Protected Parties for all purposes under the Plan and granted all associated releases, injunctions (including the Settling Insurer Policy Injunction), and protections. As set forth herein, Clarendon shall be granted such releases, injunctions, and protections as are necessary to deliver finality with respect to all known and unknown insurance policies they issued to BSA and Local Councils covering or potentially covering Claims or Causes of Action related to, arising from or in connection with Abuse Claims, which shall include the Clarendon Policies (as defined below) and any other known or unknown insurance policy issued or allegedly issued by Clarendon covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims; any actions, omissions or positions taken in connection with any Abuse Claims and/or the Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Plan Effective Date related to any Abuse Claims and/or policy issued or allegedly issued by Clarendon concerning the Debtors or Scouting, including Clarendon's performance of its obligations thereunder whether for defense, settlement of claims or otherwise. Notwithstanding anything to the contrary herein, the BSA, Local Councils, and Chartered Organizations are not releasing or enjoining any rights under (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) other than the right to seek coverage for and/or to pursue any Claims or Causes of Action related to, arising from or in connection with Abuse Claims, any actions, omissions or positions taken in connection with the Chapter 11 Cases and related proceedings and any extra-

Doc # DC/27542496v1

contractual claims related to, arising from or connected with actions or omissions occurring prior to the Plan Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise and (ii) Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from or in connection with any actions, omissions or positions taken in connection with the Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Plan Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise.

b) To preserve and promote the settlements contemplated by and provided herein and in the Plan, and to supplement, where necessary, the injunctive effect of the Discharge as provided in sections 1141 and 524 of the Bankruptcy Code and as described in Article X of the Plan, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court and the District Court under section 105(a) of the Bankruptcy Code, (i) the sole recourse of any holder of an Abuse Claim against Clarendon on account of such Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Abuse Claim against Clarendon or any property or interest in property of Clarendon, (ii) the sole recourse of any holder of a Post-1975 Chartered Organization Abuse Claim against a Limited Protected Party on account of such Post-1975 Chartered Organization Abuse Claim, shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Post-1975 Chartered Organization Abuse Claim against Clarendon or any Limited Protected Party or any property or interest in property of Clarendon or any Limited Protected Party, (iii) the sole recourse of any holder of an Abuse Claim against a Limited Protected Party if such Abuse Claim is covered under any insurance policy issued or allegedly issued by Clarendon, shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Limited Protected Party or any property or interest in property of any Limited Protected Party, (iv) the sole recourse of any holder of an Opt-Out Abuse Claim against an Opt-Out Chartered Organization on account of such Opt-Out Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Opt-Out Abuse Claim against any Opt-Out Chartered Organization or any property or interest in property of any Opt-Out Chartered Organization. For the avoidance of doubt, the sole recourse for any holder of an Abuse Claim covered by any insurance policy issued or allegedly issued by Clarendon shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents. Accordingly, on and after the Plan Effective Date, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Abuse Claim against the Protected Parties, or any of them, or any Post-1975 Chartered Organization Abuse Claim against the Limited Protected Parties, or any of them, or any Abuse Claim against the Limited Protected Parties if such Abuse Claim is covered under any insurance policy issued or allegedly issued by Clarendon, or any Opt-Out Abuse Claim against the Opt-Out Chartered Organizations, or any of them, shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or

4

recovery from any Protected Party with respect to any such Abuse Claim, or from any Limited Protected Party with respect to any such Abuse Claim if such Abuse Claim is covered under any insurance policy issued or allegedly issued by Clarendon, or from any Limited Protected Party with respect to any such Post-1975 Chartered Organization Abuse Claim, or from any Opt-Out Chartered Organization with respect to any Opt-Out Abuse Claim, other than from the Settlement Trust pursuant to the Settlement Trust Documents, including:

i)   commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization, or any property or interest in property of any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization;

ii)   enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any property or interest in property of any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization;

iii)   creating, perfecting, or otherwise enforcing in any manner, whether directly or indirectly, any Encumbrance of any kind against any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization, or any property or interest in property of any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization;

iv)   asserting, implementing or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization, or any property or interest in property of any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization; or

v)   taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Abuse Claim or Post-1975 Chartered Organization Abuse Claim, or Opt-Out Abuse Claim.

c)   The Plan and the Confirmation Order shall provide for a channeling injunction substantially on the terms set forth in clause (b) above (the "<u>Channeling Injunction</u>") and a full release of Clarendon with respect to all Claims or Causes of Action related to, arising from or in connection with Abuse Claims (which shall be conveyed to the Debtors and/or the Trust), including but not limited to the types of claims listed in the Insurance Actions

5

definition in the Plan and other Claims related to the insurance policies issued by Clarendon subject to the limitations stated in this Section 4 (as applicable to Postpetition Insurance Policies and Non-Abuse Insurance Policies). All injunctions, including the Settling Insurer Policy Injunction, shall remain in place between the Plan Effective Date and the Release Date (and thereafter) such that any and all Claims and Causes of Action that are to be released or channeled through the Plan and this Agreement shall be continuously enjoined pending their release. Clarendon shall be a Protected Party under the Plan and have no fewer rights or protections than are afforded the Local Councils (other than the limited indemnity provided under Article IV.L of the Plan) or any other person or entity by virtue of its status as a Protected Party with respect to any injunctions, releases or other protections provided thereto.

d) Solely for purposes of administering the releases and channeling injunctions provided in this Agreement, the Plan and the Confirmation Order, and not for any other purpose, any liability insurance policies that were issued or may have been issued by Clarendon shall be automatically deemed to "cover" or provide "coverage" for an Abuse Claim against a Chartered Organization if (i) such policy includes the Chartered Organization as an insured or additional insured, including by referring categorically to chartered organizations, charters, sponsoring organizations or sponsors as insureds or additional insureds, and (ii) such policy was in effect when the alleged Abuse underlying such Abuse Claim allegedly took place; provided however, that nothing in the preceding portion of this Section 4(d) shall be offered or interpreted as an admission by Clarendon of any fact or issue for any purpose, and shall not be cited as a basis to impose liability on, or increase the liability of, Clarendon under any circumstance or any insurance policy. This Section 4(d) does not limit the assignment of the Claims and Causes of Action set forth in Section 23 of this Agreement.

e) Nothing in this Agreement will release claims for reinsurance under reinsurance contracts that Clarendon issued to other insurance companies and the Parties agree to modify the injunction provisions in the Plan to state that such claims for reinsurance will not be enjoined.

5. **Sale of Clarendon Policies**. Prior to the Plan Effective Date, the Local Councils and Clarendon shall consent to and provide for the assignment of the Local Council Insurance Policies issued by Clarendon, which include those identified on Exhibit A hereto (the "Clarendon Local Council Policies"), to the Debtors' Estates. The Confirmation Order and Plan shall provide that (a) on the Plan Effective Date, and subject to the limitations below, in exchange for the Settlement Amount, the BSA Insurance Policies issued by Clarendon which include those identified on Exhibit B hereto (the "Clarendon BSA Policies" and with the Clarendon Local Council Policies, the "Clarendon Policies")[3] and the Clarendon Local Council Policies shall be sold by Debtors and the Debtors' Estates to Clarendon free and clear of all liens, claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, of any person or entity, including those of the Debtors, the Local Councils, the Contributing Chartered Organizations, the Participating Chartered

---

[3] For the avoidance of doubt, "Clarendon Policies" shall not include policies issued on or after January 1, 1987 by Maryland Casualty Company, American General Fire & Casualty Company, Zurich American Insurance Company, and their respective affiliates.

Doc # DC/27542496v1

Organizations, Chartered Organizations, and their respective creditors and interest holders in the Clarendon Policies, pursuant to sections 363, 1123, and/or 1141 of the Bankruptcy Code (the "Sale"), (b) the assignment by the Local Councils and the Sale shall exclude any Postpetition Insurance Policies and Non-Abuse Insurance Policies, (c) the Sale represents a sound exercise of the Debtors' business judgment, will yield a fair and reasonable price for the assets being sold, is in the best interests of the Debtors' Estates, and otherwise complies with section 363 of the Bankruptcy Code, (d) the proceeds of such Sale shall constitute property transferred to the Trust under the Plan, (e) the Confirmation Order shall designate Clarendon as a good faith purchaser and shall provide that the Sale constitutes a purchase by Clarendon in good faith pursuant to section 363(m) of the Bankruptcy Code, rendering the provisions of section 363(m) applicable and affording Clarendon all protections thereunder, and (f) unless the Coalition and the FCR agree otherwise, no person or entity, including any person or entity that is co-liable with the Debtors for Direct Abuse Claims or Scouting-related Abuse, shall have any right to or an interest in the Settlement Amount that would directly or indirectly prevent the Settlement Amount from being paid to the Trust for the benefit of the holders of Direct Abuse Claims, *provided, however*, nothing herein shall prevent the Trust from using the Settlement Amount in accordance with Settlement Trust Agreement and the Trust Distribution Procedures. Although the Parties do not believe that the Sale would constitute a violation of the automatic stay applicable to any Chartered Organization that is a debtor in bankruptcy and that asserts an interest in one or more Clarendon BSA Policies, to the extent the Bankruptcy Court (or any other court with jurisdiction) determines that the Sale would constitute such a violation, then the Parties shall seek a determination from the Bankruptcy Court that they may proceed with the Sale or relief from such stay to effectuate the Sale.

6. **Trust Bound by Agreement**. Upon the Plan Effective Date, the Trust shall be bound by all terms of this Agreement. Upon the Release Date, the Trust shall release Clarendon from all Causes of Action and Claims that the Trust holds relating to the Clarendon Policies and other policies issued by Clarendon covering Abuse Claims, provide the other releases contained in this Agreement (including a release relating to Abuse Claims) and otherwise perform as required by this Agreement.

7. **Release by Clarendon**. Upon the Release Date, subject to the limitations below and those set forth in Section 14, Clarendon and its Representatives (as defined in the Plan) shall automatically, without further action on the party of any Person or Entity, release the Debtors, Reorganized BSA, the Related Non-Debtor Entities, the Local Councils, the Limited Protected Parties, other Protected Parties (including the Contributing Chartered Organizations), other Settling Insurance Companies, the FCR, the Coalition, and the Trust and each of their Representatives from all Causes of Action and Claims related to, arising from, or in connection with, in whole or in part (a) Abuse Insurance Policies (which shall include all Clarendon Policies), (b) any other insurance policy issued by Clarendon covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims, (c) the types of claims listed in the Insurance Action definition in the Plan, including extra-contractual claims relating to the Clarendon Policies and including the Debtors' performance of their obligations thereunder whether for defense, settlement of claims, or otherwise, (d) the Chapter 11 Cases and related proceedings, including the Plan and any prior plans, any Claims that were or could have been asserted by Clarendon against the Debtors or any of the Releasing Parties (to the same extent that such Released Parties have released such claims against Clarendon), or by the Debtors or any of the Releasing Parties against Clarendon, in the Chapter 11 Cases, and any actions, omissions, or positions

7

taken in the Chapter 11 Cases and related proceedings, (e) all Claims and Causes of Action alleging Abuse Claims against the Protected Parties (including such Claims and Causes of Action related to any Clarendon Policy), and (f) any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Plan Effective Date related to any policy issued by Clarendon concerning the Debtors or Scouting, including Clarendon's performance of its obligations thereunder, whether for defense, settlement of claims, or otherwise. Nothing shall preclude Clarendon from enforcing the terms of this Agreement. Furthermore, nothing in this Agreement or the Plan shall constitute a release of any Claim by Clarendon or its Representatives of any rights related to, or Claims concerning, (i) Non-Abuse Insurance Policies, (ii) reinsurance, or (iii) Postpetition Insurance Policies. The releases in this Section 7 shall be subject to and limited by Section 5 (as applicable to Postpetition Insurance Policies and Non-Abuse Insurance Policies), and shall not include any insurance policies for which Clarendon becomes responsible or acquires on or after the Term Sheet Effective Date. The Parties expressly acknowledge that there may be changes in the law and/or that they may hereafter discover facts different from, or in addition to, those that they now believe to be true with respect to any and all of the Claims or Causes of Action released in this Section 7. Nevertheless, the Parties hereby agree that the releases set forth in this Section 7 shall be and remain effective in all respects, notwithstanding any changes in the law and/or the discovery of such additional or different facts.

8. **Release of Clarendon**. Upon the Release Date, subject to the limitations below and those set forth in Section 14, the Debtors, Reorganized BSA, the Related Non-Debtor Entities, the Local Councils, the Limited Protected Parties (including Participating Chartered Organizations), other Protected Parties (including the Contributing Chartered Organizations), other Settling Insurance Companies, the FCR, the Coalition, the Trust, and all such Persons' or Entities' Representatives (the "Releasing Parties") shall automatically, without further action on the part of any Person or Entity, release Clarendon and its Representatives from all Causes of Action and Claims related to, arising from, or in connection with, in whole or in part (a) Abuse Insurance Policies (which shall include all Clarendon Policies), (b) any other insurance policy issued by Clarendon covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims, (c) the types of claims listed in the Insurance Actions definition in the Plan and other Claims related to Clarendon's performance of its obligations thereunder whether for defense, settlement of claims or otherwise, including extra-contractual claims relating to the Clarendon Policies (d) the Chapter 11 Cases and related proceedings, including the Plan and any prior plans, any Claims that were or could have been asserted by Clarendon against the Debtors or any of the Releasing Parties, or by the Debtors or any of the Releasing Parties against Clarendon, in the Chapter 11 Cases, and any actions, omissions or positions taken in the Chapter 11 Cases and related proceedings, (e) all Claims and Causes of Action alleging Abuse Claims against the Protected Parties (including such Claims and Causes of Action related to any Clarendon Policy), and (f) any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Plan Effective Date related to any policy issued by Clarendon concerning the Debtors or Scouting, including Clarendon's performance of its obligations thereunder, whether for defense, settlement of claims, or otherwise. If another Settling Insurance Company receives broader releases or protections concerning Causes of Action and Claims related to its policies (including its Abuse Insurance Policies) than those provided to Clarendon in this Agreement or Plan, then Clarendon shall receive the benefit of those broader releases and protections automatically and without the necessity of further actions by the Parties. The

Doc # DC/27542496v1

release of Clarendon shall not affect claims against other insurance companies, subject to the limitation that Clarendon shall not assert claims (other than potential reinsurance claims) against other Settling Insurance Companies. Nothing shall preclude the Releasing Parties from enforcing the terms of this Agreement and the Plan. For the avoidance of doubt, the term "Releasing Parties" shall include (1) all of such parties' respective past, present, and future direct or indirect parents, subsidiaries, affiliates, and controlled entities, and each of their respective officers, directors, stockholders, members, partners, managers, employees, attorneys, agents, experts, consultants, volunteers, predecessors, successors, and assigns, each in their capacity as such (including any of the foregoing who is an alleged Perpetrator), and (2) to the extent of any party's right, power and authority to do so, any and all other persons or entities entitled to assert rights to coverage under any of the Clarendon Policies or any policy of insurance issued to or for the benefit of such releasing Party related to Abuse Claims.[4] The releases in this Section 8 shall be subject to and limited by Section 4 concerning, (i) Non-Abuse Insurance Policies or (ii) Postpetition Insurance Policies, and shall not include any insurance policies for which Clarendon becomes responsible or acquires on or after the Term Sheet Effective Date.[5] The Parties expressly acknowledge that there may be changes in the law and/or that they may hereafter discover facts different from, or in addition to, those that they now believe to be true with respect to any and all of the Claims or Causes of Action released in this Section 8. Nevertheless, the Parties hereby agree that the releases set forth in this Section 8 shall be and remain effective in all respects, notwithstanding any changes in the law and/or the discovery of such additional or different facts.

9. **Participating Chartered Organizations**. Under the Plan and as a condition to the Plan Effective Date (waiver of which shall require the prior written consent of, among others, Clarendon), in order to obtain the benefit of (1) the Settling Insurer Policy Injunction, and (2) the Full Post-1975 Injunction, Participating Chartered Organizations shall be required to provide, or be deemed to provide, the following assignment of their insurance rights (the "Participating Chartered Organization Insurance Assignment"): any and all of the Participating Chartered Organizations' rights, titles, privileges, interests, claims, demands or entitlements, as of the Plan Effective Date, to any proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, arising under or attributable to (a) the Abuse Insurance Policies issued by Clarendon and any other Abuse Insurance Policies covering Abuse Claims alleging Abuse to have first occurred on or after January 1, 1976, (b) any other insurance policies issued by a Settling Insurance Company that cover Abuse Claims but only with respect to such coverage for Abuse Claims, (c) the Insurance Settlement Agreements (including this Agreement) and claims thereunder and proceeds thereof, (d) the types of claims listed in the Insurance Actions definition in the Plan (including with respect to the insurance policies issued by Clarendon), (e) the Insurance Action Recoveries

---

[4] For the purposes of clarity, the releases in this Section 8 do not include personal insurance policies issued directly to individuals who are releasing parties or to directors and officers liability policies issued in connection with their affiliations with entities other than BSA, the Local Councils or any Chartered Organizations.

[5] For the avoidance of doubt, Clarendon shall (a) receive the same releases and the same protections of the Channeling Injunction as Century Indemnity Company and Chubb Group Holdings, Inc. with respect to Chartered Organizations, including the release by the Participating Chartered Organizations and Contributing Chartered Organizations for coverage for Abuse Claims under insurance policies issued directly by Clarendon to such Chartered Organizations, and (b) provide the same releases as Century Indemnity Company and Chubb Group Holdings, Inc. with respect to Chartered Organizations.

Doc #  DC/27542496v1

(including with respect to the Clarendon Policies), and (f) the Participating Chartered Organization Insurance Actions. In addition, in order to obtain the benefit of (i) the Settling Insurer Policy Injunction, and (ii) the Full Post-1975 Injunction, Participating Chartered Organizations shall be required to make, or be deemed to make, the following contribution to the Trust ("Participating Chartered Organization Settlement Contribution"): (A) the Participating Chartered Organization Insurance Assignment; (B) to the extent of any rights, claims or interests not assigned to the Trust pursuant to the Participating Chartered Organization Insurance Assignment, the waiver and complete release of (I) each of the Participating Chartered Organization's rights, titles, privileges, interests, claims, demands or entitlements under the Clarendon Policies and any other insurance policy issued or allegedly issued by Clarendon with respect to Claims or Causes of Action involving Abuse Claims concerning such coverage for Abuse Claims; (II) any Claim held by the Participating Chartered Organization that is attributable to, arises from, is based upon, relates to, or results from, in whole or part, directly, indirectly, or derivatively (including through any insurance policy issued or allegedly issued by Clarendon), alleged Abuse Claims that occurred prior to the Petition Date against the Settlement Trust, the Debtors, Reorganized BSA, the Local Councils, any Contributing Chartered Organization or Clarendon; and (III) any and all Claims that have been asserted in the Chapter 11 Cases by or on behalf of any Participating Chartered Organization, including any Indirect Abuse Claims, without any further notice or action, order, or approval of the Bankruptcy Court, which Claims shall be expunged from the Claims Register, and the agreement of each Participating Chartered Organization not to (y) file or assert any Claim or Claims against the Trust, the Debtors, or Reorganized BSA arising from any act or omission of the Debtors, the Local Councils, any Contributing Chartered Organization, or any Participating Chartered Organization on or prior to the Confirmation Date; and (z) file or assert any rights or interests in any property transferred to the Trust under the Plan, including the proceeds of any settlements paid by an Settling Insurance Company; and (C) the assignment to the Trust of any and all Perpetrator Indemnification Claims held by the Participating Chartered Organizations. Other than the TCJC and the United Methodist Entities, no Chartered Organization may become a Contributing Chartered Organization without making a contribution in form and substance equivalent to the Participating Chartered Organization Settlement Contribution and agreeing to be bound by the terms and conditions of this Agreement.

10. **Protections Afforded to Insureds and Co-Insureds**. On the Release Date, all Abuse Claims against insureds and co-insureds covered under insurance policies issued by Clarendon shall be channeled and enjoined under the Settling Insurer Policy Injunction and released. Pending the occurrence of the Release Date, all such Abuse Claims shall be enjoined pursuant to the Post-Confirmation Interim Injunction, as provided herein.

11. **Bankrupt Chartered Organizations**. The BSA shall use its best efforts to work with the Roman Catholic ad hoc committee and the Chartered Organizations that are debtors in bankruptcy (the eight bankrupt entities identified on Exhibit K to the Plan, which may be amended to the extent that additional Chartered Organizations file for bankruptcy protection prior to entry of the Confirmation Order, each a "Bankrupt Chartered Organization") to obtain written consent for such Bankrupt Chartered Organization to consent to the terms this Agreement. To the extent that a Bankrupt Chartered Organization does not agree to provide written consent to the terms of this Agreement, the Parties will use reasonable efforts to jointly resolve such non-consent, which may, upon the consent of the Parties, include excluding such Bankrupt Chartered Organization from the protections

10

and benefits otherwise provided herein, provided that the failure to obtain such consent as it applies to the applicable Bankrupt Chartered Organizations shall not be deemed a breach of this Agreement by any Party or a failure to satisfy a condition to the effectiveness of the Plan. The Parties consent to the foregoing provisions covering Clarendon to apply to any other Settling Insurance Company. Clarendon reserves all rights and defenses they have under policies issued to Bankrupt Chartered Organizations that do not consent to the terms of this Agreement.

12. **Opt-Out Chartered Organizations**.

a) Opt-Out Chartered Organizations by definition are not Participating Chartered Organizations, Limited Protected Parties or Contributing Chartered Organizations. The term "Opt-Out Chartered Organization," on the one hand, and the terms Participating Chartered Organizations, Limited Protected Parties and Contributing Chartered Organizations, on the other hand, are mutually exclusive.

b) Under the Plan and as a condition to the Plan Effective Date (waiver of which shall require the prior written consent of, among others, Clarendon), any Opt-Out Chartered Organization shall receive the benefit of the Settling Insurer Policy Injunction and the release of all Abuse Claims that are covered under insurance policies issued by Clarendon.

c) For the avoidance of doubt, nothing herein or in the Plan shall require an Opt-Out Chartered Organization to provide an assignment or release with respect to its rights under insurance policies issued directly to such organization, including those set forth in Sections 8 and 9 hereof. The rights of the Opt-Out Chartered Organizations provided under insurance policies issued directly to such organization are preserved. Clarendon reserves all rights and defenses they have under such policies. Clarendon and the Opt-Out Chartered Organizations may enforce and rely upon the channeling and release of Abuse Claims against an Opt-Out Chartered Organization as provided in Section 10 hereof for all purposes. All rights and defenses of Clarendon under insurance policies issued directly to an Opt-Out Chartered Organization are preserved. The foregoing provision will be added to the Plan, including the channeling injunction.

d) If, however, a Chartered Organization that is an Opt-Out Chartered Organization wants to become a Contributing Chartered Organization, (i) a financial contribution must be made by or on behalf of such Opt-Out Chartered Organization, (ii) such Chartered Organization must agree to provide the assignments and releases set forth in Sections 8 and 9, and (iii) if and to the extent required by BSA, such Chartered Organization must agree to cooperate with the Child Protection Committee.

e) By definition, the Clarendon Policies (including those set forth on Exhibits A and B) were issued directly to the BSA and the Local Councils and were not issued directly to the Chartered Organizations.

13. **Post-Confirmation Interim Injunction**. The Plan and Confirmation Order shall provide that all injunctions and stays arising under or entered during the Chapter 11 Cases, whether under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date (the "<u>Post-Confirmation Interim Injunction</u>"), shall remain in full force

and effect until the Release Date, any final injunctions are issued, or upon a Reversal or other condition that results in the return of the Escrowed Payments to Clarendon. To the extent not otherwise in place, the Plan shall provide that pending the occurrence of the Release Date and thereafter, any Claim that would be released or subject to the Channeling Injunction upon the occurrence of conditions set forth herein (including the occurrence of the Release Date) shall be stayed and enjoined pending satisfaction of such conditions. Such injunction shall permit the filing, but not the prosecution, of the Abuse Claims against such Chartered Organizations.

14. **Abuse Claims Under Policies Issued to Chartered Organizations**. The release by the Participating Chartered Organizations and Contributing Chartered Organizations of Clarendon from all the Claims and Causes of Action set forth in Section 8 of this Agreement[6] are subject to the following:

(a) Such Chartered Organizations are not barred from seeking defense and indemnification for claims that are not Abuse Claims under insurance policies issued by Clarendon directly to such Chartered Organizations, with all parties reserving their rights as to whether such insurance policies apply and to what extent.

(b) Such Chartered Organizations are not barred from seeking defense and indemnification for that portion of Mixed Claims unrelated to Scouting under such insurance policies, with all parties reserving their rights as to whether such insurance policies apply and to what extent. All Parties agree to cooperate to enforce the Post-Confirmation Interim Injunction and the Channeling Injunction to eliminate all or a portion of the Mixed Claims against the applicable Chartered Organizations.

(c) Such Chartered Organizations are not barred from seeking defense and indemnification under such insurance policies pending determination by a court of competent jurisdiction as to whether a Claim is a channeled Abuse Claim, with all parties reserving their rights as to whether such insurance policies apply and to what extent.

(d) To the extent a court determines that a claim against such Chartered Organizations is not an Abuse Claim or is not subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Plan, such Chartered Organizations may seek defense and indemnification of that claim from such insurance policies, with all parties reserving their rights as to whether such insurance policies apply and to what extent.

(e) To the extent a court determines that a claim against such Chartered Organizations is subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Plan, Clarendon shall have no further obligations with respect to such claim.

(f) The Settlement Trust shall cooperate with any ongoing efforts by such Chartered Organizations and/or Clarendon to establish that the Post-Confirmation Interim Injunction and the Channeling Injunction apply.

---

[6] The insurance policies issued directly to the BSA and Local Councils were, by definition, not issued to the Chartered Organizations and are not subject to this provision.

Doc #  DC/27542496v1

(g)     Clarendon reserves all rights under their policies with respect to any Claim that is not an Abuse Claim (including the non-Scouting component of any Mixed Claim), none of which are waived or released hereunder.

15. **Contributing Chartered Organizations.**   No Chartered Organization shall be a Contributing Chartered Organization unless it agrees to provide the assignments and releases set forth in Sections 8 and 9 of this Agreement.

16. **Finality**.   Subject to the other terms of this Agreement, and so long as this Agreement remains in full force and effect and/or is not terminated, the Parties agree that (a) the Settlement Amount is the total amount that Clarendon will be obligated to pay under the Clarendon Policies, and (b) the Confirmation Order shall provide that on and after the Release Date and payment of the Settlement Amount, Clarendon shall be released from and shall not be obligated to make any additional payments to any Person (including, but not limited to, the BSA, the Local Councils, any Chartered Organization and any entity actually or allegedly covered under insurance policies issued by Clarendon) for Abuse Claims, including those relating to or arising out of the Clarendon Policies and the other Claims and Causes of Action released hereunder, subject to the limitations in Section 5 (as applicable to Postpetition Insurance Policies and Non-Abuse Insurance Policies).

17. **Judgment Reduction and Contribution**.

a)   Clarendon will not assert or file a Claim, and will dismiss without prejudice any pending Claims, seeking contribution, indemnity, and/or defense against another Entity in order to recover any portion of the Settlement Amount to be paid by Clarendon under this Agreement or with respect to claims released under this Agreement.  Subject to Section 3(d) and the provisions related to termination, the Settlement Amount shall not be subject to any Claims for deductions, setoffs, or charge-backs by Clarendon of any kind, including Claims involving recoupment or deductibles, contribution, self-insured retentions, additional premiums, or retrospective or reinstatement premiums.  For the avoidance of doubt, Clarendon shall maintain (i) an unfettered right to advise its reinsurers and retrocessionaires with respect to all matters related to this settlement, as well as the right to assert and recover claims against its reinsurers and retrocessionaires in their capacities as such, (ii) all rights with respect to any Claim that is not an Abuse Claim (including the non-Scouting component of a Mixed Claim) related to their policies as provided in Section 14 hereof, and (iii) claims against Bankrupt Chartered Organizations that do not consent to this Agreement and provide the releases and assignments set forth in Sections 8 and 9 hereof.

b)   To the extent that the Debtors, their Estates, or any assignee, successor, or any other Entity formed to assume the Debtors' liability for Abuse Claims, including the Settlement Trust, has settled or hereafter settles Abuse Claims arising out of claims released by this Agreement with any other Insurance Company, Chartered Organization, Person, or other Entity, the Debtors, their Estates, or any such assignee, successor, and/or other Person or Entity, including the Settlement Trust, shall obtain a waiver of that other Insurance Company's, Chartered Organization's or other Person's or Entity's Claims against Clarendon based upon, arising out of or in any way attributable to such Abuse Claims, including Abuse Claims seeking contribution, indemnity, and/or defense costs from

13

Clarendon based upon, arising out of, or in any way related to such Abuse Claims released by this Agreement. Such waiver may be accomplished by an assignment of such Abuse Claims to the Settlement Trust, whereupon such Abuse Claims will be subject to the releases set forth in Section 8 herein.

c) In the event that any other insurer or Person obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from Clarendon as a result of a Cause of Action for contribution, subrogation, indemnification, or other similar Cause of Action against Clarendon for Clarendon's alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation for any Abuse Claim or for any Cause of Action released in this Agreement, the Trust shall voluntarily reduce or limit its judgment or Cause of Action against, or settlement with, such other insurer(s) to the extent necessary to eliminate such contribution, subrogation, indemnification, or other similar Cause of Action against Clarendon. To ensure that such a reduction is accomplished, Clarendon shall be entitled to rely upon or assert this paragraph as a defense to any action against them for any such portion of the judgment or Cause of Action and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction described in this paragraph to protect Clarendon from any liability for the judgment or Cause of Action. To the extent any other insurer asserts a claim for contribution, subrogation, indemnification or other similar claim against Clarendon, Clarendon may assert any defense to such claim notwithstanding any of the releases contained herein.

d) To the extent any other insurer asserts a claim for contribution, subrogation, indemnification or other similar Claim against Clarendon, nothing herein shall preclude Clarendon from asserting any defense to such claim, or from filing, asserting, or continuing to pursue a Claim seeking contribution, indemnity, or defense from that other insurer, provided that, (i) Clarendon will provide timely notice to the Trust of the assertion of any Claims and Causes of Action assigned pursuant to Section 23 of this Agreement, (ii) Clarendon shall obtain the consent of the Trust, which shall not be unreasonably withheld, to settle any such Claims and Causes of Action assigned pursuant to Section 23 of this Agreement,, and (iii) to the extent that Clarendon recovers from that other insurer, the proceeds of such recovery shall be paid by Clarendon per the instruction of the Trust or, if no Trust has been formed, the Debtors, after Clarendon is reimbursed from such proceeds for reasonable fees and costs they incurred after the date the Confirmation Order becomes a Final Order in defending the Claim asserted against Clarendon or prosecuting their Claim against that other insurer. For the avoidance of doubt, Clarendon shall maintain (i) an unfettered right to advise its reinsurers and retrocessionaires with respect to all matters related to this settlement, as well as the right to assert and recover claims against its reinsurers and retrocessionaires in their capacities as such, (ii) all rights with respect to the non-Scouting component of any Mixed Claims related to their policies as provided in Section 14 hereof, and (iii) claims against Opt-Out Chartered Organizations and Bankrupt Chartered Organizations that do not consent to this Agreement.

Doc # DC/27542496v1

18. **Findings and Orders**.

a) The Plan and the Confirmation Order shall state that the Findings and Orders are not binding on Clarendon to the extent that Clarendon is a Settling Insurance Company and the transactions contemplated herein, including the release of the Settlement Amount to the Trust, are fully consummated. The Plan and Confirmation Order shall further provide that Clarendon's agreement herein not to object to the entry of said Findings and Orders in the Confirmation Order does not indicate Clarendon's support for said Findings and Orders, and no party shall argue that Clarendon agreed to or acquiesced in such Findings and Orders in any proceeding.

b) The Confirmation Order and all other orders issued by any appellate court that exercises jurisdiction over such orders, if any, shall approve the terms and provisions of this Agreement.

c) Notwithstanding anything to the contrary herein, nothing will require Clarendon to take any position that would impair their ability to pursue objections to any plan in the event that this Agreement is terminated under Section 27 or 28. Subject to the foregoing, Clarendon and the Debtors will (i) take reasonable positions in court supporting the settlement provided herein and the Plan provisions that effectuate this Agreement; (ii) take reasonable positions in court supporting approval of such terms through the Confirmation Order and (iii) will not assist any party in its opposition to the foregoing.

19. **Trust Distribution Procedures**. Subject to modification in a manner not inconsistent with this Agreement by the Debtors, the Coalition, and the FCR, the Trust Distribution Procedures may be in the form attached to the Plan, *provided* that Clarendon shall be included as a releasee in any form of release attached to the Trust Distribution Procedures to the same extent that BSA, Local Councils and other Protected Parties are released, which release shall be consistent with this Agreement. The Trust Distribution Procedures shall further provide that the Settlement Trustee shall require holders of Abuse Claims who receive payment from the Trust to release any Abuse Claim against (a) Clarendon and (b) any insured or co-insured under the Clarendon Policies or other policies issued by Clarendon covering or allegedly covering Claims or Causes of Action for Abuse Claims, solely to the extent of and scope of any remaining coverage rights (if any) thereunder. Clarendon shall not object to the Trust Distribution Procedures but may add a statement in the Plan that Clarendon is a Settling Insurance Company and, as a result, takes no position on the Trust Distribution Procedures. Clarendon shall not object to the selection of the Settlement Trustee. Clarendon shall not participate in or interfere with the administration of the Trust and shall have no responsibility or liability whatsoever in connection with the administration of the Trust.

20. **Objections to the Plan**. Clarendon shall not object to the Plan, the Settlement Trust Agreement, the Trust Distribution Procedures or the selection of the Settlement Trustee (and shall withdraw any pending objections) or any other document or instrument that comprises the Plan so long as Clarendon is included as a Protected Party in the Plan and the Plan is consistent with the terms of this Agreement. For the avoidance of doubt, the foregoing agreement not to object shall include any objections with respect to any evidence proffered by the Debtors in connection with the confirmation and approval of the Plan, the

Doc # DC/27542496v1

Settlement Trust Agreement, the Trust Distribution Procedures or the selection of the Settlement Trustee or any other document or instrument that comprises the Plan.

21. **Discovery**. So long as this Agreement has not been terminated, (i) Clarendon, on the one hand, and (ii) the Debtors, Coalition, FCR, AHCLC, and Joining State Court Counsel on the other hand, shall not seek or direct any discovery at each other in the Chapter 11 Cases or any proceedings related to the Chapter 11 Cases, nor shall Clarendon cooperate with any other insurer's or putative objector's discovery requests in the Chapter 11 Cases or any proceedings related to the Chapter 11 Cases; provided, however, that Clarendon shall comply with any requirements imposed by the rules of court and any judicial orders. Notwithstanding the foregoing, Clarendon shall cooperate and comply with any information requests, including prior BSA-related settlement and verdict information, from the BSA, the Coalition, and the FCR to the extent such information is not protected from disclosure and is reasonably necessary in support of the confirmation of the Plan; *provided*, *however*, that if the results of this process do not resolve and satisfy said information requests, the BSA, the Coalition, or the FCR shall have the right to submit the dispute to mediation, and the Parties agree to be bound by such mediator's decision regarding such dispute.

22. **Public Statements**. The Parties and State Court Counsel shall cooperate with each other to coordinate on timing and substance of public statements regarding this Agreement, including press releases, court filings and in-court statements. Clarendon shall make no statements about holders of Abuse Claims or any representative thereof; *provided*, *however*, that Clarendon may make statements to protect its rights in the Chapter 11 Cases, including statements in response to objections or statements by holders of Abuse Claims and its representatives concerning Clarendon.

23. **Assignment**.

a) The Parties will not assign, transfer, or sell (i) this Agreement or any of their rights, benefits, or obligations hereunder without the prior written consent of all other Parties which consent shall not be unreasonably withheld, or (ii) except as set forth below, any Cause of Action or Claim related to the Abuse Insurance Policies or in connection with the matters otherwise released against Clarendon pursuant to this Agreement. The Parties agree that they will not assist any other person in the establishment of a Claim or Cause of Action against Clarendon relating to the Abuse Insurance Policies or the matters released pursuant to this Agreement.

b) Upon the Release Date, Clarendon shall assign to the Settlement Trust all Claims and Causes of Action for contribution, subrogation, indemnification and similar claims and theories of liability arising from or in connection with (i) Abuse Insurance Policies (which shall include all Clarendon Policies) and (ii) any other insurance policy issued by Clarendon covering Claims or Causes of Action for Abuse Claims. against (1) any Non-Settling Insurance Company, (2) any non-settling insurance company, insurance syndicate, coverholder, insurance broker or syndicate insurance broker, guaranty association, or any other Entity that has issued, or that has any actual, potential, demonstrated, or alleged liabilities, duties, or obligations under, or with respect to, any contracts, binders, certificates, or insurance policies currently or previously in effect at any time on or before the Effective Date that covers, allegedly covers, or potentially covers Abuse Claims,

16

including the Scouting-related portions of Mixed Claims, that relate to or arise out of Abuse Claims, including the Scouting-related portion of Mixed Claims.

c) The assignment in Section 23(b) shall not preclude Clarendon from pursuing Claims and Causes of Action (1) relating to non-Scouting Claims and the non-Scouting-related portions of Mixed Claims, (2) against their reinsurers and retrocessionaires in their capacities as such), and (3) against Opt-Chartered Organizations and Bankrupt Chartered Organizations that do not consent to this Agreement and provide the releases and assignments set forth in Sections 11 and 12 hereof. Section 7 of this Agreement shall not impair the Settlement Trust's Claims and Causes of Action against (i) any Non-Settling Insurance Company, (ii) any non-settling insurance company, insurance syndicate, coverholder, insurance broker or syndicate insurance broker, guaranty association, or any other Entity that has issued, or that has any actual, potential, demonstrated, or alleged liabilities, duties, or obligations under, or with respect to, any contracts, binders, certificates, or insurance policies currently or previously in effect at any time on or before the Petition Date that covers, allegedly covers, or potentially covers Abuse Claims, including the Scouting-related portions of Mixed Claims, or (iii) any Entity, other than a Limited Protected Party (to the extent of its protected party status) or Protected Party, that allegedly is liable for Abuse Claims, including the Scouting-related portions of Mixed Claims.

d) To the extent any other insurer asserts a claim for contribution, subrogation, indemnification or other similar Claim against Clarendon, nothing herein shall preclude Clarendon from asserting any defense to such claim, or from filing, asserting, or continuing to pursue a Claim seeking contribution, indemnity, or defense from that other insurer, provided that, (1) Clarendon will provide timely notice to the Trust of the assertion of any Claims and Causes of Action assigned herein, (2) Clarendon shall obtain the consent of the Trust, which shall not be unreasonably withheld, to settle any such Claims and Causes of Action assigned pursuant to this Section 27, and (3) to the extent that Clarendon recover from that other insurer, the proceeds of such recovery shall be paid by Clarendon per the instruction of the Trust or, if no Trust has been formed, the Debtors, after Clarendon is reimbursed from such proceeds for reasonable fees and costs they incurred after the date the Confirmation Order becomes a Final Order in defending the Claim asserted against Clarendon or prosecuting their Claim against that other insurer.

e) Nothing in the foregoing will prohibit the Parties or any Protected Party from transferring and assigning to the Trust all rights under this Agreement, or from assisting the Trust in pursuing any Claim arising out of or under same against anyone other than Clarendon.

24. **Governing Law**. This Agreement shall be governed by Delaware law.

25. **Termination by Clarendon**. Clarendon may terminate this Agreement if: (a) any Party breaches its obligations to Clarendon under this Agreement in any material respects; *provided* that such breach or failure remains uncured (to the extend curable) for a period of fifteen (15) business days following the applicable Party's receipt of notice thereof served in accordance with this Agreement; (b) the FCR exercises a Fiduciary Out (as defined herein); (c) the Coalition or FCR terminates this Agreement as to itself in

17

accordance with Section 26 below; or (d) the Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [D.I. 7832] is not modified to incorporate the terms of this Agreement or in Clarendon's reasonable judgment the definitions or provisions of that plan are materially altered to negatively impact Clarendon's rights and interests.

26. **Termination Event by the Debtors, the Coalition, and the FCR**.  Subject to the provisions of Section 28, the Debtors, the Coalition, or the FCR may terminate this Agreement if Class 8 (Direct Abuse Claims) (as currently constituted or as it may be reconstituted per order of the Bankruptcy Court) votes to not accept the Plan under section 1126 of the Bankruptcy Code and as a result the Plan is withdrawn.  Subject to the foregoing sentence and Section 27 hereof, pending entry of the Confirmation Order and the occurrence of the Release Date, the Debtors, the Coalition, and the FCR will not take any action inconsistent with this Agreement and, at all times, will (a) use their best efforts to secure prompt entry of the Confirmation Order consistent with this Agreement, including the provisions constituting the approval of all of the terms and conditions hereof, and (b) defend this Agreement.

27. **Fiduciary Out by the Debtors and the FCR**.  Notwithstanding anything else in this Agreement to the contrary, no term or condition of this Agreement shall require the Debtors or the FCR to take or refrain from taking any action that it determines would be inconsistent with its fiduciary duties under applicable law, and further, in the event that either the FCR or the Debtors determine that in the proper exercise of their respective fiduciary duties under applicable law they cannot proceed with this Agreement, this Agreement may be terminated at any time prior to the entry of a Final Order confirming the Plan as to that party (the "Fiduciary Out"), *provided, however,* that the Debtors and the FCR each understands that the TCC is not a party to this Agreement and that the TCC and claimants represented by various plaintiff firms may object to this Agreement and the Debtors and the FCR acknowledge and represent that their entry into this Agreement is consistent with their fiduciary duties as of the effective date of this Agreement, *provided, further* that following the entry of the Confirmation Order by the Bankruptcy Court nothing herein shall exempt the Debtors or the FCR from the doctrines of finality, repose, or otherwise applicable doctrines of *res judicata*, collateral estoppel, limitations on appellate jurisdiction or applicable deadlines pursuant to the Bankruptcy Code, Bankruptcy Rules, court orders and local rules or any similar doctrine(s); *provided further* that if the FCR exercises its fiduciary right to terminate this Agreement, such termination shall be with respect to the FCR only and not otherwise affect this Agreement or the other Parties' rights and obligations hereunder.  Each of the Debtors and the FCR believe that, as of the date hereof, entering into this Agreement is an appropriate exercise of its fiduciary duty.

28. **Effect of Termination or Failure of Conditions to Occur**.  In the case of any termination described in Sections 26 or 27 above by the Debtors or any other situation where this Agreement does not proceed (including as a result of the failure of any condition thereto to occur or failure to obtain entry of the Confirmation Order), then (a) absent the consent of Clarendon, Clarendon shall be (i) afforded an opportunity to interpose all objections to any plan that does not afford them the protections and rights provided hereunder, notwithstanding any prior deadlines, law of the case, or any determination made in the intervening period after execution of this Agreement, (ii) afforded adequate additional time and relief from any deadline to prepare and present such objections including any expert

18

reports and additional discovery, and (iii) able to assert any and all positions in opposition to such plan and hearing schedule, none of which are waived or affected hereby; and (b) Clarendon, the Coalition, the FCR, and State Court Counsel shall have no further obligations hereunder. For the avoidance of doubt, the Bankruptcy Court's approval of this Agreement under, among other things, Bankruptcy Rule 9019, and settlement provided herein shall be a condition to the entry of the Confirmation Order, entry of the Affirmation Order, and the Plan Effective Date, which condition may only be waived with the consent of each of the Parties.

29. **Effect of Reversal of Confirmation Order Following the Plan Effective Date.** In the event of a Reversal, the Parties and State Court Counsel agree that Clarendon shall be entitled to a credit against any liability Clarendon may have under any Abuse Insurance Policies issued to BSA or any Local Council, which credit shall be equal to the amount of the Initial Payment plus, if Clarendon has authorized the payment or release of the Additional Payment to the Trust, the amount of the Additional Payment (the "Credit"); *provided, however,* that if Clarendon has not authorized the payment or release of the Additional Payment, then the Additional Payment and all Net Income accrued thereon in the Escrow Account (or, if there is a loss as a result of investment of the Additional Payment, then the funds remaining in the Escrow Account) shall be released from the Escrow Account to Clarendon promptly following the Reversal (or any exercise of a Fiduciary Out by BSA). The provisions of this Section 29 shall survive any Reversal, any exercise of any Fiduciary Out, and any termination of this Agreement. Nothing in this Section or elsewhere in this Agreement shall bar any of the Parties or State Court Counsel from arguing that any appeal from the Confirmation Order should be dismissed on grounds of statutory or equitable mootness or otherwise.

30. **State Court Counsel**. Each State Court Counsel represents and warrants that, as of the date hereof, it represents the number of holders of Direct Abuse Claims who filed timely Direct Abuse Claims in the Chapter 11 Cases that is listed next to its name on Schedule 1 hereto.

31. **Plan**. The Debtors shall ensure that the Plan is consistent with this Agreement and the Plan shall be modified to incorporate this Agreement, to the extent it has not already been modified to do so. The protections given to Clarendon, and to their respective Affiliates and Representatives, as Protected Parties shall not be less than that afforded to any other Protected Parties under (i) the Plan (other than the limited indemnity provided to the Local Councils under Article IV.L of the Plan) or (ii) any other plan unless this Agreement has been validly terminated under Sections 25, 26, or 27 prior to the filing of such plan subject to Section 28 hereof. The Plan shall provide that the execution and delivery of this Agreement is a condition to entry of the Confirmation Order and the occurrence of the Plan Effective Date and this Agreement shall be appended to and included in the Plan and Confirmation Order and this Agreement shall be listed on Exhibit I to the Plan as an Insurance Settlement. The inclusion of this Agreement in the Plan shall not be waivable as a condition to entry of the Confirmation Order or the occurrence of the Plan Effective Date absent the prior written consent of Clarendon.

32. **Medicare Reporting**. To the extent the payment of claims by the Trust triggers reporting to Medicare under 42 U.S.C. § 1395y, *et seq.*, commonly referred to as the Medicare, Medicaid, and SCHIP Extension Act of 2007, and any related rules, regulations, or

guidance issued in connection therewith or relating thereto  (collectively, "MMSEA"), the Parties agree that the Trust is the Responsible Reporting Entity and Clarendon is not subject to any reporting requirements or obligations under MMSEA.

33. **Waivers.**  The Parties acknowledge that they have been advised by their respective legal counsel with respect to the substance of this Agreement, including, without limitation, the releases set forth herein, and expressly waive all protections under any state or common law similar to those provided in Section 1542 of the California Civil Code, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

The Parties further acknowledge and agree that the release of unknown claims was separately negotiated and material to this Agreement.

34. **Representations and Warranties**.

a) Each Party and State Court Counsel represents and warrants that it has taken all necessary corporate and legal action required to duly approve the making and performance of this Agreement and, subject only to Section 1 of this Agreement with respect to certain obligations under this Agreement, that no further action on their part is necessary to make any obligation of any Party or State Court Counsel under this Agreement binding and legally enforceable.

b) Each Party and State Court Counsel represents and warrants that, to the best of its knowledge and belief, the making and performance of this Agreement will not violate any provision of law, any of its respective articles of incorporation or by-laws, or any contract or agreement by which it is bound.

c) Each Party represents and warrants that it is the owner of the rights and Claims to be compromised and released by it under this Agreement and it has not assigned or transferred to any Entity any Claim or other matter to be compromised and released herein. Furthermore, the Debtors represent and warrant that they have not assigned or transferred any right, title, or Interest under the Clarendon Policies.

d) Each Party and State Court Counsel represents and warrants that this Agreement has been entered into in good faith, as a result of arm's-length negotiations with the assistance and supervision of the court-appointed mediator, and with advice of counsel, and that this Agreement represents a fair, reasonable, proportionate, and good-faith compromise of disputed Claims, disputed liabilities and disputed issues.

e) Each Party and State Court Counsel represents and warrants that it has read this Agreement in its entirety, that it fully understands all of this Agreement's terms and the consequences

thereof, and that the person signing this Agreement on its behalf has full and complete authority and competency to legally bind it to all terms and consequences of this Agreement.

f) Each Party and State Court Counsel represents and warrants that this Agreement is supported by valid and lawful consideration sufficient to make all aspects of this Agreement legally binding and enforceable.

g) Clarendon and BSA have each conducted a reasonable, good faith search of its respective records and have located no evidence of any BSA Insurance Policies issued by Clarendon other than the policies identified on Exhibit B hereto or any Local Council Insurance Policies issued by Clarendon other than the policies identified on Exhibit A hereto. Based on such searches, neither Party believes that any additional policies or secondary evidence of such policies exists. To the extent any policy is subsequently identified that, had its existence been known as of the date hereof, would have been included on Exhibit A or Exhibit B, such policy shall be treated as if such policy were included on Exhibit A or B, as applicable.

35. **Bankruptcy Notices**.  If not already performed, in addition to any other service that may be required, the Debtors shall provide appropriate notice of this Agreement and the subject matter thereof to ensure that the injunctions protecting Clarendon against Abuse Claims shall be effective as against all persons who assert, have asserted, or may in the future assert, Abuse Claims.

36. **No Admissions and Non-Admissibility of this Agreement**.  Nothing contained in this Agreement, or in any negotiations, discussions, mediation proceedings, correspondence or other materials of any kind relating to this Agreement or relating to the negotiation of this Agreement, shall be deemed to be an admission on the part of the Parties or State Court Counsel with respect to any matter or any factual or legal issue of any kind.

37. **Binding Effect of Agreement.**  All terms and provisions of this Agreement shall be binding on, and shall inure to the benefit of, the Parties and the State Court Counsel and their respective successors and assigns, including the Settlement Trust.

38. **Dispute Resolution**.  If any dispute should arise concerning the terms, meaning, or implementation of this Agreement, the Parties and State Court Counsel agree to use their best efforts to reach a prompt resolution of such dispute.  If the Parties and State Court Counsel are unable to reach an agreement, they shall proceed to mediation before Timothy V.P. Gallagher. Any Party or State Court Counsel may initiate litigation in the Bankruptcy Court to the extent the Bankruptcy Court has subject-matter jurisdiction, or to the extent it does not, in any other appropriate forum, but no Party or State Court Counsel may initiate litigation until forty-five (45) calendar days after a mediation has commenced. All of the Parties and State Court Counsel consent to personal jurisdiction in any federal court (including the Bankruptcy Court) or state court in the State of Delaware for purposes of

Doc #  DC/27542496v1

resolving any dispute concerning the terms, meaning, or implementation of this Agreement.

39. **Construction of Agreement.**

a) The Parties and State Court Counsel represent and acknowledge that they have participated in the preparation and drafting of this Agreement and have each given their approval to all of the language contained in this Agreement, and it is expressly agreed and acknowledged that if any of the Parties or State Court Counsel later asserts that there is an ambiguity in the language of this Agreement, such asserted ambiguity shall not be presumptively construed for or against any other Party or State Court Counsel on the basis that one Party or State Court Counsel drafted the language of this Agreement or played a greater role in the drafting of the language.

b) The headings of this Agreement are asserted for convenience and are not part of the provisions hereof and shall have no force or effect.

c) If any provision of this Agreement or application thereof is held to be invalid or unenforceable, the remainder of this Agreement shall remain in effect and be interpreted so as best to reasonably effect the intent of the Parties. Notwithstanding the foregoing, the provisions in this Agreement regarding Payment (Section 3), Sale (Section 5, Channeling Injunction and Other Protections (Section 4), and Releases (Section 7 and 8) and the definitions of the defined terms that appear in those provisions shall not be severable from this Agreement.

**Miscellaneous.**

d) This Agreement sets forth the entire agreement between the Parties and State Court Counsel as to its subject matter, and supersedes any and all prior or contemporaneous statements, agreements, negotiations, or understandings, whether written or oral.

e) All notices, demands, or other communications to be provided pursuant to this Agreement shall be in writing and sent by electronic mail and overnight mail (or United States first-class mail, postage prepaid), to the Parties and State Court Counsel at the addresses set forth in Exhibit D hereto, or to such other persons or addresses as the Parties or State Court Counsel may designate in writing from time to time.

f) This Agreement may be amended only by a writing signed by or on behalf of each Party, and, if after the Plan Effective Date, Clarendon and the Settlement Trust.

g) Each Party may sign an e-mail or PDF copy of this Agreement, in counterparts, with the same effect as if each Party had signed an original of the same document.

40. **Definitions**: The capitalized terms used in this Agreement shall have the respective meanings set forth below. Capitalized terms not defined in this Agreement shall have the definitions ascribed to such terms in the Plan.

“**Abuse**” has the meaning ascribed to it in the Plan.

Doc # DC/27542496v1

"**Abuse Claim**" means a liquidated or unliquidated Claim against a Protected Party (including the Settling Insurance Companies), a Limited Protected Party, or an Opt-Out Chartered Organization or any of their respective Representatives (in their capacities as such) that is attributable to, arises from, is based upon, relates to, or results from, directly, indirectly, or derivatively, alleged Scouting-related Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, alter ego, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based upon, or directly or indirectly related to any insurance relationship, the provision of insurance or the provision of insurance services to or by any Protected Parties, or misrepresentation, concealment, or unfair practice, breach of fiduciary duty, public or private nuisance, gross negligence, willful misconduct, or any other theory, including any theory based on or related to public policy or any act or failure to act, or failure to warn by a Protected Party, a Limited Protected Party, an Opt-Out Chartered Organization, any of their respective Representatives (in their capacities as such) or any other Person for whom any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization is alleged to be responsible (including any such Claim that has been asserted or may be amended to assert in a proof of claim alleging Abuse, whether or not timely filed, in the Chapter 11 Cases, or any such Claim that has been asserted against the Settlement Trust), including any proportionate or allocable share of liability based thereon. Abuse Claims include any Future Abuse Claims, any Indirect Abuse Claims, any Opt-Out Abuse Claim and any other Claim that is attributable to, arises from, is based upon, relates to, or results from, alleged Scouting-related Abuse regardless of whether, as of the Petition Date, such Claim was barred by any applicable statute of limitations. For the avoidance of doubt, (i) a Claim alleging Abuse shall not be an "Abuse Claim" against a Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any of their respective Representatives if such Claim is unrelated to Scouting (except as provided in (iii) below, including the portion of any Mixed Claim that is unrelated to Scouting); (ii) a Claim alleging Abuse shall be an "Abuse Claim" against a Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any of their respective Representatives (in their capacity as such) if such Claim is related to Scouting (including the portion of any Mixed Claim that is related to Scouting); (iii) any portion of a Mixed Claim alleging Abuse involving the Debtors, Reorganized BSA, Non-Debtor Entities, Local Councils, TCJC, or their respective Representatives (in their capacities as such) is necessarily Scouting-related and shall be considered an Abuse Claim; and (iv) any Claim against the Debtors, Reorganized BSA, Non-Debtor Entities, Local Councils, or their respective Representatives (in their capacities as such) alleging Abuse is necessarily Scouting-related and shall be considered an Abuse Claim.

"**Abuse Insurance Policies**" has the meaning ascribed to it in the Plan.

"**Affirmation Order**" shall have the meaning set forth in the Plan and shall be in all respects, in form and substance acceptable to the Parties.

23

"**Agreement**" has the meaning ascribed to it in the opening section of this Agreement.

"**AHCLC**" has the meaning ascribed to it in the opening section of this Agreement.

"**Bankrupt Chartered Organization**" has the meaning ascribed to it in section 12 of this Agreement.

"**Bankruptcy Code**" has the meaning ascribed to it in the Plan.

"**Bankruptcy Court**" has the meaning ascribed to it in the Plan.

"**Bankruptcy Rules**" has the meaning ascribed to it in the Plan.

"**BSA**" has the meaning ascribed to it in the opening section of this Agreement.

"**BSA Insurance Policies**" has the meaning ascribed to it in the Plan.

"**Business Day**" has the meaning ascribed to it in the Plan.

"**Channeling Injunction**" has the meaning ascribed to it in the Plan.

"**Chapter 11 Cases**" has the meaning ascribed to it in the Plan.

"**Chartered Organizations**" has the meaning ascribed to it in the Plan.

"**Child Protection Committee**" has the meaning ascribed to it in the Plan.

"**Claim**" has the meaning ascribed to it in the Plan.

"**Clarendon**" means Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company), River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, on its own behalf and in turn as successor to St Katherine Insurance Company Limited) , and Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company. "Clarendon" shall not include the foregoing persons and entities in their capacities as contractual obligors under: (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from or in connection with Abuse Claims, any actions, omissions or positions taken in connection with the Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Plan Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise and (ii) Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from or in connection with any actions, omissions or positions taken in connection with the Chapter 11 Cases and related proceedings and any extra-

contractual claims related to, arising from or connected with actions or omissions occurring prior to the Plan Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise.

"**Clarendon BSA Policies**" has the meaning ascribed to it in Section 5 of this Agreement**.**

"**Clarendon Local Council Policies**" has the meaning ascribed to it in Section 5 of this Agreement.

"**Clarendon Policies**" has the meaning ascribed to it in Section 5 of this Agreement.

"**Coalition**" has the meaning ascribed to it in the opening section of this Agreement.

"**Confirmation**" has the meaning ascribed to it in the Plan.

"**Confirmation Date**" has the meaning ascribed to it in the Plan.

"**Confirmation Hearing**" has the meaning ascribed to it in the Plan.

 "**Confirmation Order**" shall have the meaning set forth in the Plan and be in form and substance acceptable to the Parties confirming and approving the Plan including each and every term of this Agreement and the settlement provided herein.

"**Contributing Chartered Organizations**" has the meaning ascribed to it in the Plan.

"**D&O Liability Insurance Policies**" has the meaning ascribed to it in the Plan.

"**Debtors**" has the meaning ascribed to it in the Plan.

"**Direct Abuse Claims**" has the meaning ascribed to it in the Plan.

"**Discharge**" has the meaning ascribed to it in the Plan.

"**District Court**" has the meaning ascribed to it in the Plan.

"**DST Note**" has the meaning ascribed to it in the Plan.

"**Escrow Account**" has the meaning ascribed to it in section 3(b) of this Agreement.

"**Entity**" has the meaning ascribed to it in the Plan.

"**Estates**" has the meaning ascribed to it in the Plan.

"**FCR**" has the meaning ascribed to it in the opening section of this Agreement.

"**Final Order**" has the meaning ascribed to it in the Plan.

Doc #  DC/27542496v1

"**Findings and Orders**" means the findings and determinations set forth in Article IX.A.3.j, Article IX.A.3.l, Article IX.A.3.w, Article IX.A.3.x, Article IX.A.3.y, Article IX.A.3.z, and Article IX.A.3.aa of the Plan, as the same may be amended or modified from time to time.

"**Full Post-1975 Injunction**" means the Channeling Injunction applicable to Abuse Claims alleging first Abuse on or after January 1, 1976.

"**Future Claimants' Representative**" has the meaning ascribed to it in the Plan.

"**Indirect Abuse Claims**" has the meaning ascribed to it in the Plan.

"**Initial Payment Date**" shall mean the earliest date on which all of the following conditions precedent have occurred, provided, however, that any of the following conditions precedent may be waived pursuant to a writing signed by each Party:

1.      Each Party has executed the Agreement;

2.      Clarendon has received a fully executed Local Council Joinder on behalf of each Local Council;

3.      The Bankruptcy Court has entered the Confirmation Order which has been affirmed by the District Court through the Affirmation Order, both in form and substance acceptable to Clarendon, Debtors, Coalition, and FCR as it pertains to this Agreement, which shall serve as the order approving this Agreement and shall include all necessary and appropriate findings and conclusions in relation thereto;

4.      The Confirmation Order provides for a release and channeling injunction for the benefit of the Clarendon, the Local Councils, and the Contributing Chartered Organizations consistent with this Agreement;

6.      The BSA has provided written notice to Clarendon that the Effective Date has occurred; and

7.      The Confirmation Order is effective and not stayed or otherwise subject to an injunction.

"**Insurance Actions**" has the meaning ascribed to it in the Plan.

"**Insurance Action Recoveries**" has the meaning ascribed to it in the Plan.

"**Insurance Policies**" has the meaning ascribed to it in the Plan.

"**Insurance Settlement Agreement**" has the meaning ascribed to it in the Plan.

"**Limited Protected Party**" has the meaning ascribed to it in the Plan.

"**Local Councils**" has the meaning ascribed to it in the Plan.

"**Local Council Joinder**" means that certain joinder to this Agreement executed by the Local Councils active as of the Effective Date, listed on Exhibit G to the Plan.

Doc #  DC/27542496v1

"**Mixed Claim**" means a claim that makes allegations of Abuse related to or arising from Scouting as well as Abuse that occurred prior to the Petition Date unrelated to or not arising from Scouting. A claim shall not be treated as a Mixed Claim unless and until Scouting-related Abuse allegations have been asserted through a Proof of Claim, the complaint, sworn discovery or testimony (including an affidavit).

"**MMSEA**" has the meaning ascribed to it in section 32 of this Agreement.

"**Net Income**" has the meaning ascribed to it in section 3(b) of this Agreement.

"**Non-Abuse Insurance Policies**" has the meaning ascribed to it in the Plan.

"**Non-Scouting Abuse**" has the meaning ascribed to it in the definition of "Mixed Claim" of this Agreement.

"**Non-Settling Insurance Company**" has the meaning ascribed to it in the Plan.

"**Opt-Out Abuse Claim**" has the meaning ascribed to it in the Plan.

"**Opt-Out Chartered Organization**" has the meaning ascribed to it in the Plan.

"**Other Chartered Organization Payment Date**" has the meaning ascribed to it in section 16 of this Agreement.

"**Other Chartered Organization**" has the meaning ascribed to it in the Plan.

"**Participating Chartered Organization**" has the meaning ascribed to it in the Plan.

"**Participating Chartered Organization Insurance Action**" has the meaning ascribed to it in the Plan.

"**Participating Chartered Organization Insurance Assignment**" has the meaning ascribed to it in the Plan.

"**Participating Chartered Organization Settlement Contribution**" has the meaning ascribed to it in the Plan.

"**Parties**" has the meaning ascribed to it in the opening section of this Agreement.

"**Perpetrator**" has the meaning ascribed to it in the Plan.

"**Perpetrator Indemnification Claims**" has the meaning ascribed to it in the Plan.

"**Person**" has the meaning ascribed to it in the Plan.

Doc # DC/27542496v1

"**Plan**" has the meaning ascribed to it in the recitals of this Agreement.

"**Plan Effective Date**" or "**Effective Date**" means the first Business Day on which the Plan becomes effective or is consummated in accordance with its terms.

"**Post-1975 Chartered Organization Abuse Claim**" has the meaning ascribed to it in the Plan.

"**Post-Confirmation Interim Injunction**" has the meaning ascribed to it in section 13 of this Agreement.

"**Postpetition Insurance Policies**" has the meaning ascribed to it in the Plan as such term applies to Clarendon.

"**Protected Parties**" has the meaning ascribed to it in the Plan.

"**Related Non-Debtor Entities**" has the meaning ascribed to it in the Plan.

"**Release Date**" shall mean the earliest date on which all of the following conditions precedent have occurred, provided however, that any of the following conditions precedent may be waived pursuant to a writing signed by each Party:

    1.      Each Party has executed the Agreement;

    2.      Clarendon has received a fully executed Local Council Joinder on behalf of each Local Council;

    3.      The Bankruptcy Court has entered the Confirmation Order which has been affirmed by the District Court through the Affirmation Order, both in form and substance acceptable to Clarendon, Debtors, Coalition, and FCR as it pertains to this Agreement, which shall serve as the order approving this Agreement and shall include all necessary and appropriate findings and conclusions in relation thereto;

    4.      The Confirmation Order provides for a release and channeling injunction for the benefit of the Clarendon, the Local Councils, and the Contributing Chartered Organizations consistent with this Agreement;

    6.      The BSA has provided written notice to Clarendon that the Effective Date has occurred; and

    7.      The Confirmation Order is a Final Order.

"**Releasing Parties**" has the meaning ascribed to it in Section 8 of this Agreement.

"**Reorganized BSA**" has the meaning ascribed to it in the Plan.

"**Representatives**" has the meaning ascribed to it in the Plan.

"**Reversal**" has the meaning ascribed to it in Section 3(d) of this Agreement.

"**Sale**" has the meaning ascribed to it in Section 5 of this Agreement.

Doc #  DC/27542496v1

"**Scouting**" has the meaning ascribed to it in the Plan.

"**Settlement Amount**" has the meaning ascribed to it in Section 3 of this Agreement.

"**Settlement Trust**" or "**Trust**" has the meaning ascribed to it in Section 2 of this Agreement.

"**Settlement Trust Agreement**" has the meaning ascribed to it in the Plan.

"**Settlement Trust Documents**" has the meaning ascribed to it in the Plan.

"**Settlement Trustee**" has the meaning ascribed to it in the Plan.

"**Settling Insurance Companies**" has the meaning ascribed to it in the Plan.

"**Settling Insurer Policy Injunction**" means the Channeling Injunction applicable to Abuse Claims covered under any insurance policy issued by Clarendon.

"**State Court Counsel**" has the meaning ascribed to it in the opening section of this Agreement.

"**TCJC**" means The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole, including any affiliates or personnel.

"**Term Sheet Effective Date**" has the meaning ascribed to it in the opening section of this Agreement.

"**Trust Agreement**" has the meaning ascribed to it in the Plan.

"**Trust Distribution Procedures**" has the meaning ascribed to it in the Plan.

"**United Methodist Entities**" means each and every (i) United Methodist local church, federated, or union church, including any Federated Church or Union Church that includes a historically United Methodist Church congregation, that sponsored, promoted, hosted, or provided any support in connection with Scouting activities, regardless of whether such local, union, or federated church is or was a Chartered Organization at any time; (ii) church currently federated or yoked, and which current federated or yoked church includes a current or former United Methodist Church congregation that sponsored, promoted, hosted or provided any support in connection with Scouting activities; (iii) other United Methodist related or affiliated organizations that sponsored, promoted, hosted, or provided any support in connection with Scouting activities, including any social service organization, ministry, camping ministry, camp facility, camp, retreat, or other facilities in the nature of a camp or retreat; (iv) any camp, retreat, or other facility in the nature of a camp or retreat that is not United Methodist related or affiliated, but otherwise promoted, hosted, or provided any support in connection with Scouting activities for an entity described in (i), (ii) or (iii); (v) all organizations affiliated or related to (i), (ii), (iii) or (iv) including, but

29

not limited to, the UMAHC, each district, annual conference, and jurisdictional conference of The United Methodist Church, the general, annual conference, district, local church agencies of The United Methodist Church, the Council of Bishops of The United Methodist Church, and the non-jural bodies commonly referred to as "The United Methodist Church," the "Judicial Council of The United Methodist Church," and the "General Conference of The United Methodist Church"; and (vi) all Representatives of the foregoing. However, no Perpetrator is or shall be a United Methodist Entity.

[Remainder of page intentionally left blank]

Doc #  DC/27542496v1

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**BSA (as defined)**

By: _Roger C. Mosby_

Name: Roger C. Mosby

Title: President and CEO

Date: February 14, 2022


**Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company)**

By: _____

Name: _____

Title: _____

Date: _____


**River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, on its own behalf and in turn as successor to St Katherine Insurance Company Limited), )**

By: _____

Name: _____

Title: _____

Date: _____

Doc # DC/27542496v1

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**BSA (as defined)**

By: _____ .

Name: _____ .

Title: _____ .

Date: _____ .


**Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company)**

By: _____

Name:    Robert Redpath

Title:    Senior Vice President

Date:    2/14/2022


**River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, on its own behalf and in turn as successor to St Katherine Insurance Company Limited)**

By: _____

Name: _____

Title: _____

Date: _____

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**BSA (as defined)**

By: _____                                    .

Name: _____                                    .

Title: _____                                    .

Date: _____                                    .


**Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company)**

By: _____

Name: _____

Title: _____

Date: _____


**River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, on its own behalf and in turn as successor to St Katherine Insurance Company Limited)**

By: _____

Name: _____Darren Truman_____

Title: _____Director_____

Date: _____14th February 2022_____

**Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company)**

By: _____

Name: _James B. Dolan, Jr._____

Title: _Vice President - Sr. Litig. and Coverage Counsel_
_Enstar (US) Inc., authorized claims administrator for Zurich American Ins. Co._

Date: _14 February 2022_____

## FUTURE CLAIMANTS' REPRESENTATIVE

In my capacity as Future Claimants' Representative, I consent to the Debtors' execution of the Agreement and entry into the Settlement.

By: _____

Dated: _____

## COALITION OF ABUSED SCOUTS FOR JUSTICE

The Coalition consents to the Debtors' execution of the Agreement and entry into the Settlement.

By: _____

Dated: _____

## AD HOC COMMITTEE OF LOCAL COUNCILS

The AHCLC consents to the Debtors' execution of the Agreement and entry into the Settlement.

By: _____

Dated: _____

Doc # DC/27546620v1

**Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company)**

By: _____

Name: _____

Title: _____

Date: _____


**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants' Representative, I consent to the Debtors' execution of the Agreement and entry into the Settlement.

By: _____

Dated: 2/14/22


**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Agreement and entry into the Settlement.

By: _____

Dated: _____


**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Agreement and entry into the Settlement.

By: _____

Dated: _____

**Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company)**

By: _____

Name: _____

Title: _____

Date: _____

## FUTURE CLAIMANTS' REPRESENTATIVE

In my capacity as Future Claimants' Representative, I consent to the Debtors' execution of the Agreement and entry into the Settlement.

By: _____

Dated: _____


## COALITION OF ABUSED SCOUTS FOR JUSTICE

The Coalition consents to the Debtors' execution of the Agreement and entry into the Settlement.

By: _Em Goodman_____

Dated: _2-14-2022_____


## AD HOC COMMITTEE OF LOCAL COUNCILS

The AHCLC consents to the Debtors' execution of the Agreement and entry into the Settlement.

By: _____

Dated: _____

**Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company)**

By: _____

Name: _____

Title: _____

Date: _____

## FUTURE CLAIMANTS' REPRESENTATIVE

In my capacity as Future Claimants' Representative, I consent to the Debtors' execution of the Agreement and entry into the Settlement.

By: _____

Dated: _____

## COALITION OF ABUSED SCOUTS FOR JUSTICE

The Coalition consents to the Debtors' execution of the Agreement and entry into the Settlement.

By: _____

Dated: _____

## AD HOC COMMITTEE OF LOCAL COUNCILS

The AHCLC consents to the Debtors' execution of the Agreement and entry into the Settlement.

By: _~~al Mom~~_ , its chair

Dated: _~~2/14/22~~_

# Exhibit A

## Known and Alleged Local Council Insurance Policies Issued by Clarendon

The only Clarendon insurer alleged in the Local Council Insurance Schedule attached to the Amended Chapter 11 Plan of reorganization of BSA (the "BSA Schedule") to have issued a liability insurance policy or policies to a Local Council as the named insured is Zurich American Insurance Company, through its underwriting companies Maryland Casualty Company, Maryland American General Insurance Company, or Zurich Insurance Company. Clarendon has conducted a reasonable search and located certain relevant documentation relating to some of the alleged policies, as well as copies of certain policies which were not alleged on the BSA Schedule (collectively, for purposes of this Exhibit A, the "Located Policies"). The chart below lists the alleged policies that were included on the BSA Schedule and/or which were alleged in correspondence from certain Local Councils, the TCC, or KCIC (which was acting on behalf of BSA)(collectively, for purposes of this Exhibit A, the "Alleged Policies"). The footnotes/endnotes set forth the information in Clarendon's possession, custody or control as of the Effective Date regarding the Located Policies, as well as contradictory or complementary information that Clarendon has located regarding the Alleged Policies. Clarendon does not represent or warrant that any of the information regarding the Alleged Policies in the chart below is authentic or accurate. Clarendon does not concede that any of the documentation regarding or constituting the Alleged Policies and/or the Located Policies obligates Clarendon to provide insurance benefits to any Local Council, BSA or any other alleged insured for Abuse Claims or otherwise. Clarendon also does not concede that any of the Alleged Policies referenced below were issued, or are complete. The information summarized in the chart below regarding the Alleged Policies comes from various sources, nearly all of which are outside of Clarendon's control. As a result, the trustworthiness of the information cannot be known. The information contained within this Exhibit A does not necessarily represent the views of the Coalition, FCR, Tort Claimants' Committee, AHCLC, the Settlement Trust, or the Settlement Trustee, and does not bind those parties in any respect; provided, however, that all Parties agree, consistent with Section 34(g) of the Agreement, that to the extent any policy is subsequently identified that, had its existence been known as of the date hereof, would have been included on Exhibit A, such policy shall be treated as if such policy were included on Exhibit A. Subject to the terms of this Settlement Agreement, the Parties (and the Settlement Trustee) do not waive and continue to reserve all rights under the Alleged Policies, the Located Policies, and at law.

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Maryland Casualty Company | 05-829567 (alleged; not located) | 1/1/1968 – 1/1/1969 | Unknown | Alamo Area (583): Alamo Area (583) |

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Maryland Casualty Company | Unknown (alleged; not located) | 1/1/1970 – 1/1/1971[7] | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | Unknown (alleged; not located) | 1/1/1971 – 1/1/1972[8] | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | Unknown (alleged; not located) | 1/1/1972 – 1/1/1973[9] | Unknown | Atlanta Area (092): Atlanta Area (092) |

[7] Clarendon has not located any policies allegedly issued to the Atlanta Area Council with January 1 anniversary dates, and has not located any policies allegedly issued for the successive periods January 1, 1970 to January 1, 1975 as alleged on the BSA Schedule. Instead, Clarendon has located documentation constituting or regarding policy 31-540468, issued for the period November 1, 1970 to November 1, 1971, which states that it is a renewal of policy 31-261458, which has not been located. The documentation states that the named insured under policy 31-540648 is "Atlanta Area Council Boy Scouts of America," with an endorsement stating that the policy "applies to any of the following as an additional insured: any officer, employee, scout master, assistant scout master, committee man or district and council or any other volunteer for the operations of the Named Insured, while such person is acting within the scope of his duties as such." The documentation further provides that the policy limits for policy 31-540648 are $500,000 per person and per occurrence and $500,000 in the aggregate.

[8] Clarendon has located documentation constituting or relating to Maryland Casualty Company policy number 31-569552, with a policy period 11/1/1971 – 11/1/1972. The documentation states that the named insured under policy 31-569552 is "Atlanta Area Council Boy Scouts of America," with an endorsement stating that the policy "applies to any of the following as an additional insured: any officer, employee, scout master, assistant scout master, committee man or district and council or any other volunteer for the operations of the Named Insured, while such person is acting within the scope of his duties as such." The documentation further provides that the policy limits for policy 31-569552 are $500,000 per person and per occurrence and $500,000 in the aggregate.

[9] Clarendon has located documentation constituting or relating to Maryland Casualty Company policy number 31-622595, with a policy period 11/1/1972 – 11/1/1973. The documentation states that the named insured under policy 31-622595 is "Atlanta Area Council Boy Scouts of America," with an endorsement stating that the policy "applies to any of the following as an additional insured: any officer, employee, scout master, assistant scout master, committee man or district and council or any other volunteer for the operations of the Named Insured, while such person is acting within the scope of his duties as such." The documentation further provides that the policy limits for policy 31-622595 are $500,000 per person and per each occurrence and $500,000 in the aggregate combined single limit.

Doc #  DC/27542496v1

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Maryland Casualty Company | Unknown (alleged, not located) | 1/1//1973 – 1/1/1974 | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | Unknown (alleged; not located) | 1/1/1974 – 1/1/1975 | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | 3830-72-95[10] | 7/1/1975 – 7/1/1976 | Columbia Pacific Council, Boy Scouts of America | Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) |
| Maryland Casualty Company | 3830-72-95 | 7/1/1976 – 7/1/1977 | Columbia Pacific Council, Boy Scouts of America | Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) |
| Maryland Casualty Company | 3830-72-95 | 7/1/1977 – 7/1/1978 | Columbia Pacific Council, Boy Scouts of America | Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) |

---

[10] Clarendon has located documentation constituting or relating to Maryland Casualty Company policy number GL 38307295 issued to the Columbia Pacific Council (whose name later changed to Cascade Pacific Council), for the policy period 7/1/1975 – 7/1/1978, whose termination date was amended, by endorsement, to 1/1/1978. The policy number does not contain the hyphens used in three of the entries on the BSA Schedule. The documentation regarding policy GL 38307295 states that the "Insured" under policy GL 38307295 includes "[t]he sponsoring organizations, committeemen, scoutmasters, assistance scoutmasters … registered under the charter and by laws of the Boy Scouts of America, and such other persons who may participate in activities of a scouting nature, while acting within their capacity as such." The documentation contains a "Single Limit of Liability Endorsement" stating that the policy limits of policy GL 38307295 are $500,000 each occurrence and $500,000 in the aggregate. In addition to the entries regarding alleged Maryland Casualty Company policy 3830-72-95, the BSA Schedule contains three entries regarding an alleged Maryland Casualty Company policy number 36307295 issued to the Columbia Pacific Council for the successive periods 7/1/1975 – 7/1/1978. No such policies have been located by Clarendon.

4

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Maryland Casualty Company | 96-224611 (alleged; not located) | 1/1/1963 – 1/1/1964 | Unknown | Chickasaw (558): Chickasaw 1916- (558)[11] |
| Maryland Casualty Company | Unknown (alleged; not located) | 1/1/1964 – 1/1/1965 | Unknown | Chickasaw (558): Chickasaw 1916- (558)[12] |
| Maryland Casualty Company | Unknown (alleged, not located) | 1/1/1965 – 8/1/1965 | Unknown | Chickasaw (558): Chickasaw 1916- (558)[13] |
| American General Fire & Casualty Company[14] | Unknown (alleged; not located) | 1/1/1975 – 1/1/1976 | Unknown | Circle Ten (571): Circle Ten 1913- (571) |

[11] In a schedule labeled "Attachment 2" to a March 5, 2021 letter to Zurich American Insurance Company from KCIC on behalf of the Chickasaw Council, KCIC lists the limits for this alleged MCC policy as $300,000 "per person or per occurrence." Clarendon has not located any documentation constituting or regarding this Alleged Policy.

[12] In a schedule labeled "Attachment 2" to a March 5, 2021 letter to Zurich American Insurance Company from KCIC on behalf of the Chickasaw Council, KCIC lists the limits for this alleged MCC policy as $500,000 "per person or per occurrence." Clarendon has not located any documentation constituting or regarding this Alleged Policy.

[13] This Alleged Policy is not included in the schedule labeled "Attachment 2" to a March 5, 2021 letter to Zurich American Insurance Company from KCIC on behalf of the Chickasaw Council.

[14] Based on corporate research, Clarendon believes that "American General Fire & Casualty Company," which is listed on the BSA Schedule as the alleged issuer of a policy to the Circle Ten Local Council, is not an underwriting company of Zurich American Insurance Company. It appears possible that the listing on the BSA Schedule was intended to identify "Maryland American General Insurance Company," which was an underwriting company associated with Zurich American Insurance Company. The secondary evidence of this Alleged Policy that was provided to Zurich American Insurance Company by KCIC is comprised of the minutes of a February 7, 1975 meeting of the Netseo Trails Council, No. 580, attaching a listing of insurance policies approved for purchase at that meeting, including one described as "Council Liability $500,000 CSL", with the handwritten entry "Amer Gen" next to that typed line. KCIC affixed Bates numbers "CIRCLETEN BSA 00019 – 00021" to the secondary evidence produced

Doc # DC/27542496v1

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Maryland Casualty Company | Unknown (alleged; not located) | 1/1/1974 – 1/1/1975[15] | Unknown | Mason-Dixon (221): Mason-Dixon 1956-(221)[16] |
| Maryland Casualty Company | Unknown (alleged; not located) | 1/1/1975 – 1/1/1976 | Unknown | Mason-Dixon (221): Mason-Dixon 1956-(221)[17] |

to Zurich American Insurance Company. In an abundance of caution, without conceding that any such Alleged Policy was issued by an underwriting company affiliated with Zurich American Insurance Company, this Alleged Policy is included in this chart.

[15] Clarendon has not located any policies allegedly issued to the Mason-Dixon Council with January 1 anniversary dates, and has not located any policies allegedly issued for the successive periods January 1, 1974 to January 1, 1977 as alleged on the BSA Schedule and on the schedule labeled "Attachment 2" to the March 5, 2021 letter issued to Zurich American Insurance Company by KCIC on behalf of the Mason Dixon Council. Instead, Clarendon has located documentation constituting and/or relating to Maryland Casualty Company policy 41-210101 issued to the "Mason-Dixon Council, Boy Scouts of America, Inc." for the period 7/24/1971-7/24/1974. Policy 41-210101 states that it is a renewal of policy 41-156975, which has not been located. A change endorsement effective 10/25/1973 states that coverage under Section II of policy 41-210101 is extended to include "Boy or Girl Scout Councils – excluding camps – Code 0374-255." The documentation further provides that the policy limits for policy 41-210101 initially were $300,000 per occurrence and $300,00 in the aggregate; effective 2/4/1972, the limits were $500,000 per occurrence and $500,000 in the aggregate.

[16] In a schedule labeled "Attachment 2" to a March 5, 2021 letter to Zurich American Insurance Company from KCIC on behalf of the Mason-Dixon Council, KCIC lists the limits for this alleged MCC policy as $2,500,000 "per person or per occurrence." By email dated May 27, 2021, KCIC provided Zurich American Insurance Company with alleged secondary evidence of the Alleged Policy, consisting of a charter renewal application for the year starting July 1, 1975, in which the Mason-Dixon Council entered "Maryland Casualty Companies" in response to Section VII, Question Q as being the insurer from which the Local Council had allegedly purchased broad form comprehensive general liability coverage of $2.5 million. Clarendon has not located any documentation constituting and/or relating to this Alleged Policy.

[17] In a schedule labeled "Attachment 2" to a March 5, 2021 letter to Zurich American Insurance Company from KCIC on behalf of the Mason-Dixon Council, KCIC lists the limits for this alleged MCC policy as $2,500,000 "per person or per occurrence." By email dated May 27, 2021, KCIC provided Zurich American Insurance Company with alleged secondary evidence of the Alleged Policy, consisting of a charter renewal application for the year starting July 1, 1976,

Doc # DC/27542496v1

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Maryland Casualty Company | Unknown (alleged; not located) | 1/1/1976 – 1/1/1977[18] | Unknown | Mason-Dixon (221): Mason-Dixon 1956-(221)[19] |

in which the Local Council identified "The Maryland Casualty Companies" as the insurer with which it had the required minimum coverage of $2.5 million in comprehensive general liability insurance. Clarendon has not located any documentation constituting and/or relating to this Alleged Policy.

[18] Clarendon has located documentation constituting and/or relating to MCC policy GL-67387918 issued to "Mason-Dixon Council Boy Scouts of America, Inc." for the period 2/28/1976 to 2/28/1977. Policy GL-67387918 states on the declarations page that it is a renewal of policy number GL-68304148, which has not been located. An endorsement in policy GL-67387918 states that "National Council, Boy Scouts of America" is an insured under that policy. The documentation further provides that policy GL-67387918 has a combined single limit of $500,000 per occurrence, $500,000 aggregate.

[19] In a schedule labeled "Attachment 2" to a March 5, 2021 letter to Zurich American Insurance Company from KCIC on behalf of the Mason-Dixon Council, KCIC lists the limits for this alleged Maryland Casualty Company policy as $2,500,000 "per person or per occurrence." KCIC subsequently provided Zurich American Insurance Company with alleged secondary evidence of the Alleged Policy, consisting of a charter renewal application for the year commencing July 1, 1977, in which the Local Council stated that with respect to the required $2.5 million broad form comprehensive general liability coverage, it had $500,000 with "The Maryland Casualty Co.," and the remaining $2 million with "National Council Package". Clarendon has not located any documentation constituting and/or relating to this Alleged Policy.

Doc #  DC/27542496v1

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Maryland Casualty Company | Unknown (alleged; not located)[20] | 7/24/1977 – 7/24/1978[21] | Unknown | Mason-Dixon (221): Mason-Dixon 1956-(221)[22] |
| Maryland Casualty Company | Unknown (alleged; not located) | 7/24/1978 – 7/24/1979 | Unknown | Mason-Dixon (221): Mason-Dixon 1956-(221)[23] |

---

[20] Clarendon has located documentation constituting and/or relating to Maryland Casualty Company policy number GL-67408988 issued to "Mason-Dixon Council Boy Scouts of America, Inc." for the period 2/28/1977 to 2/28/1978. An endorsement in policy GL-67408988 states that "National Council, Boy Scouts of America" is an insured under that policy. The documentation further provides that policy GL-67408988 has a combined single limit of liability of $500,000 per occurrence, $500,000 aggregate.

[21] The BSA Schedule lists three separate Alleged Policies for the successive periods 7/24/1977 to 7/24/1980, while Attachment 2 to the March 5, 2021 KCIC letter lists a single Alleged Policy with a policy period of 7/24/1977 to 7/24/1980, with alleged limits of $500,000 "per person or per occurrence." Clarendon has located documentation constituting and/or relating to Maryland Casualty Company policy SM 17355398, with a policy period of 7/24/1977 – 7/24/1980 and limits of $500,000 per occurrence and aggregate, as having been issued to the Mason-Dixon Council. The declarations page of policy SM 17355398 states that it is a renewal of policy SM 36562377, which has not been located. The documentation demonstrates that policy number SM 17355398, which is a Special Multi-Peril policy, was cancelled effective January 1, 1978.

[22] Clarendon has located documentation constituting and/or relating to Maryland Casualty Company policy number GL 37433436 issued to "Mason-Dixon Council Boy Scouts of America, Inc." for the period 2/28/1978 – 2/28/1979. An endorsement in policy GL 37433436 states that "National Council, Boy Scouts of America" is an insured under that policy. The documentation further provides that policy GL 37433436 has a combined single limit of liability of $500,000 per occurrence, $500,000 aggregate. The documentation appears to demonstrate that the general liability coverage under policy GL 37433436 was cancelled effective 2/28/1978.

[23] *See supra* n.22.

Doc # DC/27542496v1

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Maryland Casualty Company | Unknown (alleged; not located) | 7/24/1979 – 7/24/1980 | Unknown | Mason-Dixon (221): Mason-Dixon 1956-(221)[24] |
| Maryland Casualty Company | 31-086767 (alleged; not located) | 7/7/1957 – 7/7/1958 | Unknown | Northeast Iowa (178): Northeast Iowa (178) |
| Maryland Casualty Company | Unknown (alleged; not located) | 7/1/1958 – 7/1/1959 | Unknown | Northeast Iowa (178): Northeast Iowa (178) |
| Maryland Casualty Company | Unknown[25] | 3/1/1977 – 1/1/1978 | Unknown | Washington Crossing (777): Bucks County 1927-2015 (777) |

---

[24] *See supra* n.22.

[25] Clarendon has located documentation constituting and/or relating to alleged Maryland Casualty Company policy number GL 47422951, for the period of 2/28/1977 – 1/1/1978, and with alleged combined single limits of $500,000 per person and per occurrence. The documentation states that the named insured under policy GL 47422951 is "Bucks County Council Boy Scout [sic] of America," including under "Coverages A and B, all units of the Bucks County Boy Scouts Council, any executive officers, executive member of the council, troop committee members, directors, supervisors and leaders, whether volunteer or paid staff; chartered institutions; auxiliary organizations and members individually or collectively in respect of Liability arising out of the performance of their duties as such."

Doc #  DC/27542496v1

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Zurich Insurance Company[26] | 80-39-959 (alleged; not located) | 7/16/1960 – 7/19/1961 | Unknown | Western Los Angeles County (051): San Fernando Valley 1923-1972 (050)[27][28] |

[26] Although the BSA Schedule lists "Zurich Insurance Company" as the alleged issuer of this Alleged Policy, Clarendon reserves all rights as to whether Zurich Insurance Company was an underwriting company of Zurich American Insurance Company as of the July, 1960 to July, 1961 time period at which the Alleged Policy was purportedly issued.

[27] Based on information set forth on the BSA Schedule and/or in a letter to Zurich American Insurance Company dated February 1, 2021 from the Three Rivers Council, there appear to be allegations that Maryland American General Insurance Company may have issued the following Alleged Policies to the Three Rivers Council: (1) alleged policy number CGA 682849 for policy period 11/18/1964 – 11/18/1965, with alleged policy limits of $100,000 per person; (2) policies with unknown numbers for the successive alleged policy periods of 11/18/65 – 11/18/68, and the alleged policy period 11/18/1968 – 3/16/69; 3) alleged policy number 31-480583 for policy period 3/16/1969 – 3/16/1970, with alleged policy limits of $250,000; (4) alleged policy number 31-818323 for policy period 3/16/1969 – 3/16/1970, with alleged policy limits of $100,000 (note that this alleged policy is also alleged to have been issued to Trinity-Neches Local Council—*see* fn. 28, infra); (6) alleged policy number 31-476201 for policy period 3/16/1971 – 3/16/1972, with alleged limits of $500,000; (7) alleged policy number 31-480583 for policy period 3/16/1972 – 6/25/1972, with alleged limits of $500,000; (8) alleged policy number 7186226 for policy period 6/25/1972 – 6/25/1973 with alleged limits of $500,000; and (9) alleged policy number 542TD5947 for policy period 1/10/1975 – 1/10/1976. Clarendon has not located any documentation concerning these Alleged Policies, other than documentation constituting and/or relating to the following Maryland American General Insurance Company policies issued to "Three Rivers Council – Boy Scouts of America, Inc.": (1) policy number 31-476201 for policy period 3/16/1971 – 3/16/1972, with policy limits of $100,000 per person and $300,000 per occurrence and in the aggregate; and (2) policy number 31-480583, for policy period 3/16/1972 – 3/16/1973, which was cancelled flat effective 3/16/1972, with alleged policy limits of $100,000 per person and $300,000 per occurrence and in the aggregate.

[28] Based on information set forth on the BSA Schedule there are allegations that Maryland American General Insurance Company may have issued the following Alleged Policies to the Trinity-Neches Local Council: (1) alleged policy number 31-818323, for policy period 3/16/1969 – 3/16/1970, with unknown alleged limits; and (2) alleged policy number 31-471819, for policy period 3/16/1970 – 3/16/1971, with alleged policy limits of $100,000 per occurrence. Clarendon has located documentation constituting and/or relating to a declarations page bearing Maryland American General Insurance Company policy number 31-471819 issued

Doc #  DC/27542496v1

**Known and Alleged BSA Insurance Policies Issued by Clarendon**

| Writing Company | Policy No. | Policy Period |
|---|---|---|
| Clarendon America Insurance Company | XLX 39306224 | 3/1/2003 – 3/1/2004 |
| Clarendon America Insurance Company | XLX 00310351 | 3/1/2004 – 3/1/2005 |
| Clarendon America Insurance Company | XLX 00311014 | 3/1/2005 – 3/1/2006 |

Unionamerica Insurance Company Limited (St Katherine)
Policy No. L76-10-08-02 (151351/01/76)
Participation: 1.439640% (being 4.32% of 33.325%)
Period: 9/17/1976 – 9/17/1977

Unionamerica Insurance Company Limited (St Katherine)
Policy No. L76-10-08-02 (151352/01/76)
Participation: 5.771890% (being 17.32% of 33.325%)
Period: 9/17/1976 – 9/17/1977

Unionamerica Insurance Company Limited
Policy No. L76-10-08-02 (833938/01/76)
Participation: 3.808000%
Period: 9/17/1976 – 9/17/1977

Unionamerica Insurance Company Limited
Policy No. L76-10-08-02 (833939/01/76)
Participation: 3.808000%
Period: 9/17/1976 – 9/17/1977

---

to "Trinity-Neches Council, Boy Scouts of America 565 et al. (*See* End. No. 1)." The declarations page states that policy 31-471819 is a renewal of policy 31-818323, with "3/16/69 – 70" handwritten above the typed policy number. Clarendon has not located documentation constituting or relating to alleged policy 31-818323. The declarations page of policy 31-471819 lists limits of $100,000 each person, $300,000 each occurrence, and $300,000 aggregate.

[29] The information contained within this Exhibit B does not necessarily represent the views of the Coalition, FCR, Tort Claimants' Committee, AHCLC, the Settlement Trust, or the Settlement Trustee, and does not bind those parties in any respect; provided, however, that all Parties agree, consistent with Section 34(g) of the Agreement, that to the extent any policy is subsequently identified that, had its existence been known as of the date hereof, would have been included on Exhibit B, such policy shall be treated as if such policy were included on Exhibit B. Subject to the terms of this Settlement Agreement, the Parties (and the Settlement Trustee) do not waive and continue to reserve all rights and defenses.

Doc #  DC/27542496v1

Note that for the Unionamerica coverage, the percentages shown are Unionamerica's percentage participation in $5 million in aggregate limits, excess of $10 million in underlying insurance. As regards Unionamerica, the sale referenced in Section 5 of the Agreement refers only to Unionamerica's participation in the policies listed above.

<u>**Exhibit C**</u>

*Confidential Mediation Communication*
*Subject to Mediation Privilege*
*Protected Settlement Communication*

<u>**Settlement Term Sheet**</u>

This term sheet ("<u>Term Sheet</u>") represents the basic terms of a settlement agreement between and among Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company), River Thames Insurance Company Limited (as successor in interest to UnionAmerica Insurance Company Limited), and Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company (collectively, "<u>Clarendon</u>"),[1] Boy Scouts of America and Delaware BSA, LLC, as debtors and debtors in possession ("<u>BSA</u>" or the "<u>Debtors</u>"), the Ad Hoc Committee of Local Councils (the "<u>AHCLC</u>"),[2] the Coalition of Abused Scouts for Justice, solely and only in its capacity as an ad hoc committee (the "<u>Coalition</u>"),[3] and the Future Claimants' Representative (the "<u>FCR</u>" and, collectively with Clarendon, the Debtors, the AHCLC, the Coalition, the "<u>Parties</u>"). The attorneys representing holders of Direct Abuse Claims listed on Schedule 1 hereto, which reflects the number of holders of Abuse Claims represented by each firm (the "<u>State Court Counsel</u>") agree to support the terms of and be bound by the Agreement (as defined below). The Parties will prepare a definitive written settlement agreement consistent with this Term Sheet that will include additional material terms (the "<u>Agreement</u>"). The Agreement will be appended to and included in the *Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC,* subject to modification by the Debtors, the Coalition, and the FCR ("<u>Amended Plan</u>") located at Dkt. 7832 and the Confirmation Order (defined below). The Agreement and/or Term Sheet shall be listed on Exhibit I to the Amended Plan as an Insurance Settlement. Capitalized terms not defined in this Term Sheet shall have the definitions ascribed to such terms in the Amended Plan or the "<u>Century Term Sheet</u>" located at Dkt. No. 7745-1.

---

[1] The term "Clarendon" shall not include the foregoing persons and entities in their capacities as contractual obligors under: (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from or in connection with Abuse Claims, any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise and (ii) Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from or in connection with any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise.

[2] Notwithstanding anything to the contrary in this Term Sheet, the obligations and undertakings of the AHCLC in connection with this Term Sheet or the Agreement shall be no greater than the AHCLC's parallel obligations and undertakings under Section III of the Restructuring Support Agreement (including the "No Liability" subsection thereof) filed at Dkt. 5466-2.

[3] For the avoidance of doubt, no holders of Direct Abuse Claims are or shall be deemed Parties to this Term Sheet or the Agreement.

1. **Settlement Amount**.  In consideration of the releases and other consideration provided for herein, Clarendon shall pay in cash Sixteen Million and Five-Hundred Thousand U.S. Dollars ($16,500,000) (the "Settlement Amount") to the trust for Abuse Claims to be created under the Amended Plan (the "Trust") as provided herein.

2. **Payment and Release of the Settlement Amount**.  Clarendon shall pay Two Million, Eight Hundred and Seventy-One Thousand U.S. Dollars ($2,871,000)(17.4% of Settlement Amount) (the "Initial Payment") of the Settlement Amount to the Trust on, or as soon as reasonably practicable after, the date (the "Initial Payment Date") all conditions to the effectiveness of the Amended Plan have been satisfied (including the entry of orders, in form and substance reasonably acceptable to the Parties, of the Bankruptcy and District Courts confirming, or affirming confirmation of, the Amended Plan (collectively, the "Confirmation Order"), which Confirmation Order shall not be subject to any stay and shall be in full force and effect) and the Amended Plan has gone effective (the "Effective Date").  On, or as soon as reasonably practicable after, the Effective Date, Clarendon shall pay the remaining 82.6% of the Settlement Amount (the "Additional Payment") into an escrow account (the "Escrow Account"), to be administered by an independent escrow agent acceptable to the Parties.  The Additional Payment (and all income earned thereon minus (a) the fees of the escrow agent, and (b) any taxes that are payable and other costs of the Escrow Account, which amounts in (a) and (b) shall be paid from the corpus of the Escrow Account (such income (or loss) minus such amounts, the "Net Income")) shall remain in the Escrow Account until the Confirmation Order becomes a Final Order, on which date the Additional Payment, plus any Net Income, shall be released from the Escrow Account to the Trust (the "Release Date"); *provided, however,* that, at its election, Clarendon may authorize the payment of the Additional Payment directly to the Trust on the Effective Date or may authorize the release of the Additional Payment (and any Net Income) from the Escrow Account to the Trust at any time thereafter before the Confirmation Order becomes Final and Non-Appealable, in which event the date on which Clarendon authorizes the payment or release of the Additional Payment to the Trust shall be the Release Date.  The Settlement Trust shall have investment discretion with respect to the Additional Payment while it is in the Escrow Account, subject to the investment protocols applicable under the term sheet located at Docket No. 6210-1 [Hartford term sheet]; *provided, however,* that the Trust will bear all risks associated with any such investment of the Additional Payment and that no loss or failure to achieve desired investment returns on the Additional Payment while it is in the Escrow Account shall require Clarendon to increase the Settlement Amount it is paying (or increase the amount of BSA's contribution to the Trust); *provided further, however*, that the Debtors, Reorganized BSA, the Local Councils, and Chartered Organizations shall have no liability or obligations to Clarendon or the Trust, the Trust shall have no liability or obligations to Clarendon, and Clarendon shall have no liability or obligations to the Trust (or any other Party), whatsoever for any loss or failure to achieve desired investment returns on the Additional Payment while it is in the Escrow Account.

3. **Protections to be Afforded to Clarendon**.  Effective as of the Release Date, Clarendon is to be designated Protected Parties for all purposes under the Amended Plan and granted all associated releases, injunctions (including the Settling Insurer Policy Injunction), and protections.  As set forth herein, Clarendon shall be granted such releases, injunctions,

2

protections as are necessary to deliver finality with respect to all known and unknown policies they issued to BSA and Local Councils covering or potentially covering Claims or Causes of Action related to, arising from or in connection with Abuse Claims, which shall include the Clarendon Policies (as defined below) and any other insurance policy issued by Clarendon covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims; any actions, omissions or positions taken in connection with any Abuse Claims and/or the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date related to any Abuse Claims and/or policy issued by Clarendon concerning the Debtors or Scouting, including Clarendon's performance of its obligations thereunder whether for defense, settlement of claims or otherwise. Notwithstanding anything to the contrary, the BSA, Local Councils, and Chartered Organizations are not releasing, enjoining, or protecting any rights under (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from or in connection with Abuse Claims, any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise and (ii) Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from or in connection with any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise.  The Agreement, the Amended Plan, and the Confirmation Order shall provide for a channeling injunction and full release of Clarendon with respect to all Claims or Causes of Action related to, arising from or in connection with Abuse Claims (which shall be conveyed to the Debtors and/or the Trust), including but not limited to the types of claims listed in the Insurance Actions definition in the Amended Plan and other Claims related to the insurance policies issued by Clarendon subject to the limitations stated in this Section 3 (as applicable to Postpetition Insurance Policies and Non-Abuse Insurance Policies) and Section 4. All injunctions, including the Settling Insurer Policy Injunction, shall remain in place between the Effective Date and the Release Date (and thereafter) such that any and all Claims and Causes of Action that are to be released or channeled through the Amended Plan and the Agreement shall be continuously enjoined pending their release.  Clarendon shall be Protected Parties under the Amended Plan and have no fewer rights or protections than are afforded the Local Councils (other than the limited indemnity provided under Article IV.M of the Amended Plan) or any other person or entity by virtue of their status as a Protected Party with respect to any injunctions, releases or other protections provided thereto.

4. **Sale of Clarendon Policies**.  Prior to the Effective Date, the Local Councils and Clarendon shall consent to and provide for the assignment of the Local Council Insurance Policies issued by Clarendon, which include those identified on Exhibit A (the "<u>Clarendon Local Council Policies</u>"), to the Debtors' Estates.  The Confirmation Order and Amended Plan shall provide

3

that (a) on the Effective Date, and subject to the limitations below, in exchange for the Settlement Amount, the BSA Insurance Policies issued by Clarendon which include those identified on Exhibit B (the "BSA Clarendon Policies" and with the Clarendon Local Council Policies, the "Clarendon Policies")[4] and the Clarendon Local Council Policies shall be sold by Debtors and the Debtors' Estates to Clarendon free and clear of all liens, claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, of any person or entity, including those of the Debtors, the Local Councils, the Contributing Chartered Organizations, the Participating Chartered Organizations, Chartered Organizations, and their respective creditors and interest holders in the Clarendon Policies, pursuant to sections 363, 1123, and/or 1141 of the Bankruptcy Code (the "Sale"), (b) the assignment by Local Councils and the Sale shall exclude the Postpetition Insurance Policies and Non-Abuse Insurance Policies, (c) the Sale represents a sound exercise of the Debtors' business judgment, will yield a fair and reasonable price for the assets being sold, is in the best interests of the Debtors' Estates, and otherwise complies with section 363 of the Bankruptcy Code, (d) the proceeds of such Sale shall constitute property transferred to the Trust under the Amended Plan, (e) the Confirmation Order shall designate Clarendon as a good faith purchaser and shall provide that the Sale constitutes a purchase by Clarendon in good faith pursuant to section 363(m) of the Bankruptcy Code, rendering the provisions of section 363(m) applicable and affording Clarendon all protections thereunder, and (f) unless the Coalition and the FCR agree otherwise, no person or entity, including a person or entity that is co-liable with the Debtors for Direct Abuse Claims or Scouting-related Abuse, shall have any right to or an interest in the Settlement Amount that would directly or indirectly prevent the Settlement Amount from being paid to the Trust for the benefit of the holders of Direct Abuse Claims, *provided, however*, nothing herein shall prevent the Trust from using the Settlement Amount in accordance with Trust Agreement and the Trust Distribution Procedures.  The Agreement will contain a representation that Clarendon and BSA have each conducted a reasonable, good faith search of its respective records and that it has located no evidence of any BSA Insurance Policies issued by Clarendon other than the policies identified on Exhibit B or any Local Council Insurance Policies issued by Clarendon other than the policies identified on Exhibit A, and that based on such searches, neither Party believes that any additional policies or secondary evidence of such policies exists, and that to the extent any policy is subsequently identified that, had its existence been known as of the date hereof, would have been included on Exhibit A or Exhibit B, such policy shall be treated as if such policy were included on Exhibit A or B, as applicable.  Without limiting the foregoing, although the Parties do not believe that the Sale would constitute a violation of the automatic stay of any Chartered Organization that is a debtor in bankruptcy and that asserts an interest in one or more BSA Clarendon Policies, to the extent the Bankruptcy Court (or other court with jurisdiction) determines that the Sale would constitute such a violation, then the Parties shall seek a determination from the Bankruptcy Court that they may proceed with the Sale or relief from such stay to effectuate the Sale.

---

[4] For the avoidance of doubt, "Clarendon Policies" shall not include policies issued on or after January 1, 1987 by Maryland Casualty Company, American General Fire & Casualty Company, Zurich American Insurance Company, and their respective affiliates.

4

CONFIDENTIAL
FOR MEDIATION PURPOSES ONLY

5. **Trust Bound by Agreement**. Upon the Effective Date, the Trust shall be bound by all terms of this Term Sheet and the Agreement. Upon the Release Date, the Trust shall release Clarendon from all Causes of Action and Claims that the Trust holds relating to the Clarendon Policies and other policies issued by Clarendon covering Abuse Claims, provide the other releases contained in the Agreement and otherwise perform as required in the Agreement.

6. **Release by Clarendon**. Upon the Release Date, subject to the limitations below, Clarendon and its Representatives (as defined in the Amended Plan) shall release the Debtors, Reorganized BSA, Related Non-Debtor Entities, Local Councils, Limited Protected Parties, other Protected Parties (including the Contributing Chartered Organizations), other Settling Insurance Companies, the FCR, the Coalition, and the Trust and each of their Representatives from all Causes of Action and Claims related to, arising from, or in connection with, in whole or in part (a) Abuse Insurance Policies (which shall include all Clarendon Policies), (b) any other insurance policy issued by Clarendon covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims, (c) the types of claims listed in the Insurance Actions definition in the Amended Plan, including extra-contractual claims relating to the Clarendon Policies and including the Debtors' performance of their obligations thereunder whether for defense, settlement of claims, or otherwise, (d) the Debtors' Chapter 11 Cases and related proceedings, including the Debtors' Plan, the Amended Plan and any prior plans, any Claims that were or could have been asserted by Clarendon against the Debtors or by any of the Releasing Parties against Clarendon, in the Debtors' Chapter 11 Cases, and any actions, omissions, or positions taken in the Debtors' Chapter 11 Cases and related proceedings, (e) all Claims and Causes of Action alleging Abuse Claims against the Protected Parties (including such Claims and Causes of Action related to any Clarendon Policy), and (f) any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date related to any policy issued by Clarendon concerning the Debtors or Scouting, including Clarendon's performance of its obligations thereunder, whether for defense, settlement of claims, or otherwise. Nothing shall preclude Clarendon from enforcing the terms of the Agreement. Furthermore, nothing in this Term Sheet, the Agreement, or the Amended Plan shall constitute a release of any Claim by Clarendon or its Representatives of any rights related to, or Claims concerning, (i) Non-Abuse Insurance Policies, (ii) reinsurance, or (iii) Postpetition Insurance Policies.

7. **Release of Clarendon**. Upon the Release Date, the Debtors, Reorganized BSA, Related Non-Debtor Entities, Local Councils, Limited Protected Parties, other Protected Parties (including the Contributing Chartered Organizations), other Settling Insurance Companies, the FCR, the Coalition, the Trust, and all such Persons' or Entities' Representatives (the "Releasing Parties") shall release Clarendon and its Representatives from all Causes of Action and Claims related to, arising from, or in connection with, in whole or in part (a) Abuse Insurance Policies (which shall include all Clarendon Policies), (b) any other insurance policy issued by Clarendon covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims, (c) the types of claims listed in the Insurance Actions definition in the Amended Plan and other Claims related to Clarendon's performance of its obligations thereunder whether for defense, settlement of claims or otherwise, including extra-contractual claims relating to the Clarendon Policies (d) the Debtors' Chapter 11 Cases and related

5

CONFIDENTIAL
FOR MEDIATION PURPOSES ONLY

proceedings, including the Debtors' Plan, the Amended Plan and any prior plans, any Claims that were or could have been asserted by Clarendon against the Debtors or any of the Releasing Parties, or by the Debtors or any of the Releasing Parties against Clarendon, in the Debtors' Chapter 11 Cases, and any actions, omissions or positions taken in the Debtors' Chapter 11 Cases and related proceedings, (e) all Claims and Causes of Action alleging Abuse Claims against the Protected Parties (including such Claims and Causes of Action related to any Clarendon Policy), and (f) any extra-contractual claims related to, arising from, or connected with actions or omissions occurring prior to the Effective Date related to any policy issued by Clarendon concerning the Debtors or Scouting, including Clarendon's performance of its obligations thereunder, whether for defense, settlement of claims, or otherwise.  If another Settling Insurance Company receives broader releases or protections concerning Causes of Action and Claims related to its policies (including its Abuse Insurance Policies) than those provided to Clarendon in the Agreement or Amended Plan, then Clarendon shall receive the benefit of those broader releases and protections automatically and without the necessity of further actions by the Parties.  The Agreement will provide that the release of Clarendon shall not affect claims against other insurance companies, subject to the limitation that Clarendon shall not assert claims (other than potential reinsurance claims) against other Settling Insurance Companies.  Nothing shall preclude the Releasing Parties from enforcing the terms of the Agreement and the Amended Plan.  For the avoidance of doubt, the term "Releasing Parties" shall include (1) all of such parties' respective past, present, and future direct or indirect parents, subsidiaries, affiliates, and controlled entities, and each of their respective officers, directors, stockholders, members, partners, managers, employees, attorneys, agents, experts, consultants, volunteers, predecessors, successors, and assigns, each in their capacity as such (including any of the foregoing who is an alleged Perpetrator), and (2) to the extent of any party's right, power and authority to do so, any and all other persons or entities entitled to assert rights to coverage under any of the Clarendon Policies or any policy of insurance issued to or for the benefit of such releasing party related to Abuse Claims.[5]  Nothing in this Term Sheet, the Agreement, or the Amended Plan shall constitute a release of any Claim by the Releasing Parties of any rights related to, or Claims concerning, (i) Non-Abuse Insurance Policies or (ii) Postpetition Insurance Policies, and shall not include any insurance policies for which Clarendon becomes responsible or acquire on or after the date the Term Sheet has been executed.[6]

8. **Chartered Organizations**.  Clarendon shall (a) receive the same releases and the same protections of the channeling injunction as Century Indemnity Company with respect to Chartered Organizations and (b) provide the same releases as Century Indemnity Company with respect to Chartered Organizations, consistent with the Century Term Sheet, including the release by the Participating Chartered Organizations and Contributing Chartered

---

[5] For the purposes of clarity, the releases in this Section 7 do not include personal insurance policies issued directly to individuals who are releasing parties or to directors and officers liability policies issued in connection with their affiliations with entities other than BSA, the Local Councils or Chartered Organizations.

[6] The releases provided in this Term Sheet and the Agreement, including to Clarendon, shall be no broader and no narrower than those provided in the Century Term Sheet to the "Settling Insurers" as defined in the Century Term Sheet.

6

CONFIDENTIAL
FOR MEDIATION PURPOSES ONLY

Organizations for coverage for Abuse Claims under insurance policies issued directly by Clarendon to such Chartered Organizations. Clarendon shall be entitled to all the rights and benefits of the Century Term Sheet as implemented in the Amended Plan.

9. **Finality**. Subject to the other terms of this Term Sheet, and so long as this Term Sheet and the Agreement remain in full force and effect and/or are not terminated, the Parties agree that (a) the Settlement Amount is the total amount Clarendon will be obligated to pay under the Clarendon Policies, and (b) the Confirmation Order shall provide that on and after the Release Date and payment of the Settlement Amount, Clarendon shall be released from and shall not be obligated to make any additional payments to any Person (including, but not limited to, the BSA, Local Councils, any Chartered Organization and any entity actually or allegedly covered under insurance policies issued by Clarendon) for Abuse Claims, including those relating to or arising out of the Clarendon Policies and the other Claims and Causes of Action released hereunder, subject to the limitations in Section 3 (as applicable to Postpetition Insurance Policies and Non-Abuse Insurance Policies).

10. **Judgment Reduction**. In the event that any other insurer obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from Clarendon as a result of a Cause of Action for contribution, subrogation, indemnification or other similar Cause of Action against Clarendon for Clarendon's alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation for any Abuse Claim or for any Cause of Action released in this Agreement, the Trust shall voluntarily reduce its judgment or Cause of Action against, or settlement with, such other insurer(s) to the extent necessary to eliminate such contribution, subrogation, indemnification or other similar Cause of Action against Clarendon. To ensure that such a reduction is accomplished, Clarendon shall be entitled to assert this paragraph as a defense to any action against it for any such portion of the judgment or Cause of Action and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect Clarendon from any liability for the judgment or Cause of Action. To the extent any other insurer asserts a claim for contribution, subrogation, indemnification or other similar claim against Clarendon, Clarendon may assert any defense to such claim notwithstanding any of the releases contained herein.

11. **Findings and Orders**. The Amended Plan and the Confirmation Order shall state that the Findings and Orders are not binding on Clarendon to the extent that Clarendon is a Settling Insurance Company and the transactions contemplated herein, including the release of the Settlement Amount to the Trust, are fully consummated. The Amended Plan and Confirmation Order shall further provide that Clarendon's agreement herein not to object to the entry of said Findings and Orders in the Confirmation Order does not indicate Clarendon's support for said Findings and Orders, and no party shall argue that Clarendon agreed to or acquiesced in such Findings and Orders in any proceeding.

12. **Trust Distribution Procedures**. Subject to modification in a manner not inconsistent with this Term Sheet and the Agreement by the Debtors, the Coalition, and the FCR, the Trust Distribution Procedures may be in the form attached to the *Modified Fifth Amended Chapter*

**CONFIDENTIAL**
**FOR MEDIATION PURPOSES ONLY**

11 *Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* dated September 29, 2021, filed at Dkt. 6443, *provided* that Clarendon shall be included as a releasee, with respect to any Clarendon Policies, in any form of release attached to the Trust Distribution Procedures to the same extent that BSA, Local Councils and other Protected Parties are released, which release shall be consistent with the Century Term Sheet. The Trust Distribution Procedures shall further provide that the Settlement Trustee shall require holders of Claims related to, arising from or in connection with Abuse Claims who receive payment from the Trust to release any Claim related to, arising from or in connection with Abuse Claims against (a) Clarendon and (b) any insured or co-insured, under the Clarendon Policies or other policies issued by Clarendon covering or allegedly covering Claims or Causes of Action for Abuse claims, solely to the extent of and scope of any remaining coverage rights (if any) thereunder. Clarendon shall not object to the Trust Distribution Procedures but may add a statement in the Amended Plan or the Disclosure Statement that Clarendon is a Settling Insurance Company and, as a result, takes no position on the Trust Distribution Procedures. Clarendon shall not object to the selection of the Settlement Trustee as provided in the Amended Plan and Settlement Trust Agreement. Clarendon shall not participate in or otherwise interfere with the administration of the Trust.

13. **Objections to and the Amended Plan**. Clarendon shall not object to the Amended Plan, the Settlement Trust Agreement, or the Trust Distribution Procedures (and shall withdraw any pending objections) so long as Clarendon is included as a Protected Party in the Amended Plan and the Amended Plan are otherwise consistent with the terms of this Term Sheet and the Agreement.

14. **Discovery**. Upon the execution of the Term Sheet, all Parties shall as soon as practicable withdraw any pending discovery requests directed at each other and shall not seek additional discovery from each other. Clarendon shall as soon as practicable withdraw any pending discovery requests directed at any holder of an Abuse Claim, representatives of such holders, funders, vendors utilized by representatives of such holders, the Coalition (including law firms and attorneys associated therewith), and the FCR. Clarendon shall not seek or direct any additional discovery from such parties, the BSA, or the Local Councils, or any other party in interest in the Chapter 11 Cases or any proceedings related to the Chapter 11 Cases. Notwithstanding the foregoing, Clarendon shall cooperate and comply with any information requests, including prior BSA-related settlement and verdict information, from the BSA, the Coalition, and the FCR to the extent such information is not protected from disclosure and reasonably necessary in support of the confirmation of the Amended Plan; *provided*, *however*, that if the results of this process do not resolve and satisfy said information requests, the BSA, the Coalition, or the FCR shall have the right to submit the dispute to one or both of Mediators Gallagher and Carey, and the Parties agree to be bound by the Mediator's/Mediators' decision regarding such dispute.

15. **Public Statements**. The Parties and State Court Counsel shall cooperate with each other to coordinate on timing and substance of public statements regarding settlement, including press releases, court filings and in-court statements. Clarendon shall make no statements about holders of Abuse Claims or any representative thereof; *provided*, *however*, that Clarendon may

8

make statements to protect its rights in the Chapter 11 Cases, including statements in response to objections or statements by holders of Abuse Claims and its representatives concerning Clarendon.

16. **Termination by Clarendon**.  The Agreement shall contain the same termination provisions as those set forth in the TCJC Settlement Agreement.

17. **Termination Event by the Debtors, the Coalition, and the FCR**.  The Agreement shall contain a termination event that shall permit the Debtors, the Coalition, or the FCR to terminate the Agreement if Class 8 (Direct Abuse Claims) (as currently constituted or as it may be reconstituted per order of the Bankruptcy Court) votes to not accept the Amended Plan under section 1126 of the Bankruptcy Code and as a result the Amended Plan is withdrawn.  Subject to the foregoing sentence, pending entry of the Confirmation Order and the occurrence of the Release Date, the Debtors, the Coalition, and the FCR will not take any action inconsistent with this Term Sheet and, at all times, will (a) use their best efforts to secure prompt entry of the Confirmation Order consistent with this Term Sheet, including the provisions constituting the approval of all of the terms and conditions hereof, and the Agreement, and (b) defend this Term Sheet and the Agreement.

18. **Fiduciary Out by the Debtors and the FCR**.  Notwithstanding anything in this Term Sheet and Agreement to the contrary, no term or condition of this Term Sheet and Agreement shall require BSA or the FCR to take or refrain from taking any action that it determines in would be inconsistent with its fiduciary duties under applicable law, and further, in the event that either the FCR or the Debtors determine that in the proper exercise of their respective fiduciary duties under applicable law they cannot proceed with this Term Sheet or the Agreement, the Term Sheet or Agreement may be terminated at any time prior to the entry of a Final Order confirming the Amended Plan as to that party, *provided, however,* that the Debtors and the FCR each understands that the TCC is not a party to this Term Sheet and that the TCC and claimants represented by various plaintiff firms may object to the Agreement and the Debtors and the FCR acknowledge and represent that their entry into this Term Sheet and the Agreement is consistent with their fiduciary duties as of the effective date of the Term Sheet, *provided, further* that following the entry of the Confirmation Order by the Bankruptcy Court nothing herein shall exempt the Debtors or the FCR from the doctrines of finality, repose, or otherwise applicable doctrines of *res judicata*, collateral estoppel, limitations on appellate jurisdiction or applicable deadlines pursuant to the Bankruptcy Code, Bankruptcy Rules, court orders and local rules or any similar doctrine(s); *provided further* that if the FCR exercises its fiduciary right to terminate the Agreement, such termination shall be with respect to the FCR only and not otherwise affect the Agreement or the other Parties' rights and obligations thereunder.  Each of BSA and the FCR believe that, as of the date hereof, entering into this Term Sheet is an appropriate exercise of its fiduciary duty.

19. **Effect of Reversal of Confirmation Order Following the Effective Date.**  In the event that the Confirmation Order is reversed or vacated on appeal following the Effective Date, such that the Release Date does not occur (a "Reversal"), the Parties and State Court Counsel agree that Clarendon shall be entitled to a credit against any liability Clarendon may have under any

9

CONFIDENTIAL
FOR MEDIATION PURPOSES ONLY

Abuse Insurance Policies issued to BSA or any Local Council, which credit shall be equal to the amount of the Initial Payment plus, if Clarendon has authorized the payment or release of the Additional Payment to the Trust, the amount of the Additional Payment (the "Credit"); *provided, however,* that if Clarendon has not authorized the payment or release of the Additional Payment, then the Additional Payment and all Net Income accrued thereon in the Escrow Account (or, if there is a loss as a result of investment of the Additional Payment, then the funds remaining in the Escrow Account) shall be released from the Escrow Account to Clarendon promptly following the Reversal (or any exercise of a Fiduciary Out by BSA). The provisions of this Section 19 shall survive any Reversal, any exercise of any Fiduciary Out, and any termination of the Agreement. Nothing in this Section or elsewhere in this Term Sheet or the Agreement shall bar any of the Parties or State Court Counsel from arguing that any appeal from the Confirmation Order should be dismissed on grounds of statutory or equitable mootness or otherwise.

20. **Other Settlements**. To the extent that the Debtors or any other Person formed to assume the Debtors' liability for Abuse Claims, including the Settlement Trust, has settled or hereafter settles Claims arising out of Claims alleging Abuse Claims with any other Insurance Company, Chartered Organization or other Person, the Debtors or other Person formed to assume the Debtors' liability for Abuse Claims and Claims alleging Abuse Claims, shall obtain a waiver of that other Insurance Company, Chartered Organization or other Person's Claims against Clarendon based upon, arising out of or in any way attributable to such Claims and/or their settlement and they shall further provide the releases set forth in Section 7 (and the assignment and releases in Sections 7 and 8 in the case of a Chartered Organization). Such waiver may be accomplished by an assignment of such Claims to the Settlement Trust, whereupon such Claims will be released.

21. **State Court Counsel**. Each State Court Counsel represents and warrants to the Parties that, as of the date hereof, it represents the number of holders of Direct Abuse Claims who filed timely Direct Abuse Claims in the Chapter 11 Cases that is listed next to its name on Schedule 1 hereto.

22. **Abuse Claims Under Policies Issued to Chartered Organizations**. The release by the Participating Chartered Organizations and Contributing Chartered Organizations of the right to seek coverage for Abuse Claims under insurance policies issued directly by Clarendon to such Chartered Organizations[7] does not include the following:

(a) Such Chartered Organizations are not barred from tendering claims that are not Abuse Claims to such insurance policies, with all parties reserving their rights as to whether such insurance policies applies and to what extent;

(b) Such Chartered Organizations are not barred from tendering Mixed Claims to such insurance policies, with all parties reserving their rights as to whether such insurance policies apply and to what extent. All Parties agree to cooperate to enforce the Post-

---

[7] This does not include policies issued by Clarendon to the BSA or the Local Councils.

**CONFIDENTIAL**
**FOR MEDIATION PURPOSES ONLY**

Doc # DC/25608067v1

Confirmation Interim Injunction (as set forth in Section 14 of the Century Term Sheet) and the Channeling Injunction to eliminate all or a portion of the Mixed Claims against the applicable Chartered Organizations;

(c) Such Chartered Organizations may seek coverage and tender claims under such insurance policies pending determination by a court of competent jurisdiction as to whether a Claim is a channeled Abuse Claim, subject to all parties' contractual rights;

(d) To the extent a court determines that a claim against such Chartered Organizations is not an Abuse Claim or is not subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Amended Plan, such Chartered Organizations may seek defense and indemnification of that claim from such insurance policies, subject to all parties' contractual rights;

(e) To the extent a court determines that a claim against such Chartered Organizations is subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Amended Plan, Clarendon shall have no further obligations with respect to such claim; and

(f) The Settlement Trust shall cooperate with any ongoing efforts by such Chartered Organizations and/or Clarendon to establish that the Post-Confirmation Interim Injunction and the Channeling Injunction apply.

23. **Plan**. The Plan has been amended to incorporate the Century Term Sheet, the material terms of which have been incorporated herein with respect to Settling Insurance Companies. The protections given to Clarendon, and to their respective Affiliates and Representatives, as Protected Parties shall be not less than that afforded to any other Protected Parties under (i) the Amended Plan (other than the limited indemnity provided to the Local Councils under the Amended Plan) or (ii) any other plan unless the Agreement has been validly terminated prior to the filing of such plan. The Amended Plan shall be subject to the inclusion of the Agreement as a condition to entry of the Confirmation Order and the occurrence of the Effective Date. The inclusion of the Agreement in the Amended Plan shall not be waivable as a condition to entry of the Confirmation Order or the occurrence of the Effective Date absent the prior written consent of Clarendon.

*[Remainder of Page Intentionally Left Blank]*

11

CONFIDENTIAL
FOR MEDIATION PURPOSES ONLY

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**

By: _____

Name: _____

Title: _____

Date: _____

**Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company)**

By: _____

Name: _____

Title: _____

Date: _____

**River Thames Insurance Company Limited (as successor in interest to UnionAmerica Insurance Company Limited)**

By: _____

Name: _____

Title: _____

Date: _____

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**

By: _____                          .

Name: _____                        .

Title: _____                       .

Date: _____                        .


**Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company)**

By: _____

Name:     Robert Redpath _____

Title:     Senior Vice President _____

Date:     12/29/2021 _____


**River Thames Insurance Company Limited (as successor in interest to UnionAmerica Insurance Company Limited)**

By: _____

Name: _____

Title: _____

Date: _____

**CONFIDENTIAL
FOR MEDIATION PURPOSES ONLY**
Doc #  DC/25608067v1

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

**BSA (as defined)**

By: _____ .

Name: _____ .

Title: _____ .

Date: _____ .

**Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company)**

By: _____

Name: _____

Title: _____

Date: _____

**River Thames Insurance Company Limited (as successor in interest to UnionAmerica Insurance Company Limited)**

By: _____

Name: Darren Truman _____

Title: Director _____

Date: 29th December 2021 _____

**CONFIDENTIAL**
**FOR MEDIATION PURPOSES ONLY**
Doc #  DC/25608067v1

**Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company)**

By: _____

Name:   James B. Dolan, Jr. _____

Title:    Vice President – Sr. Litig. and Coverage Counsel
        Enstar (US) Inc., authorized Claims Administrator for Zurich American Ins. Co.

Date:   29 December 2021 _____


**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

**Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company)**

By: _____

Name: _____

Title: _____

Date: _____


**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

2

**Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company)**

By: _____

Name: _____

Title: _____

Date: _____


**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____12/30/2021_____


**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

2

**Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company)**

By: _____

Name: _____

Title: _____

Date: _____


**FUTURE CLAIMANTS' REPRESENTATIVE**

In my capacity as Future Claimants Representative, I consent to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


**COALITION OF ABUSED SCOUTS FOR JUSTICE**

The Coalition consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____


**AD HOC COMMITTEE OF LOCAL COUNCILS**

The AHCLC consents to the Debtors' execution of the Term Sheet and entry into the Settlement.

By: _____

Dated: _____

2

**Schedule 1**

**State Court Counsel**

| FIRM | NOTICE ADDRESS | CLAIMS |
|------|----------------|--------|
| Slater Slater Schulman LLP | Attn: Adam P. Slater (aslater@sssfirm.com)<br>488 Madison Avenue<br>20th Floor<br>New York, NY 10022 | 14170 |
| ASK LLP | Attn: Joseph Steinfeld (jsteinfeld@askllp.com)<br>151 West 46th Street, 4th Floor<br>New York, NY 10036 | 3277 |
| Andrews & Thornton, AAL, ALC | Andrews & Thornton<br>Attn: Anne Andrews (aa@andrewsthornton.com)<br>4701 Von Karman Ave., Suite 300<br>Newport Beach, CA 92660 | 3009 |
| Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. | Attn: Stewart J. Eisenberg (stewart@erlegal.com)<br>1634 Spruce Street<br>Philadelphia, PA 19103 | 16869 |
| Junell & Associates PLLC | Attn: Deborah Levy (dlevy@junell-law.com)<br>3737 Buffalo Speedway Ste. 1850<br>Houston, TX 77098 | 2918 |
| Reich & Binstock LLP | Attn: Dennis Reich (dreich@reichandbinstock.com)<br>4265 San Felipe St. #1000<br>Houston, TX 77027 | 336 |
| Krause & Kinsman Law Firm | Attn: Adam W. Krause (adam@krauseandkinsman.com)<br>4717 Grand Avenue #300<br>Kansas City, MO 64112 | 5981 |
| Bailey Cowan Heckaman PLLC | Attn: Aaron Heckaman (aheckaman@bchlaw.com)<br>5555 San Felipe St. Ste. 900<br>Houston, TX 77056 | 1026 |
| Jason J. Joy & Associates, PLLC | Attn: Jason Joy (jason@jasonjoylaw.com)<br>909 Texas St, Ste 1801 | 690 |

3

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| | Houston, TX 770022 | |
| Motley Rice LLC | Attn: Daniel Lapinski (dlapinski@motleyrice.com) 210 Lake Drive East Suite 101 Cherry Hill, NJ 08002 | 343 |
| Weller Green Toups & Terrell LLP | Attn: Mitchell Toups (matoups@wgttlaw.com) 2615 Calder Ave. #400 Beaumont, TX 77702 | 974 |
| Colter Legal PLLC | Attn: John Harnishfeger (john.harnishfeger@colterlegal.com) 1717 K St. NW Suite 900 Washington D.C. 20006 | 162 |
| Christina Pendleton & Associates, PLLC | Attn: Staesha Rath (sr@cpenlaw.com) 1506 Staples Mill Rd. Suite 101 Richmond, VA 23230 | 309 |
| Forman Law Offices, P.A. | Attn: Theodore Forman (ted@formanlawoffices.com) 238 NE 1st Ave. Delray Beach, FL 33444 | 125 |
| Danziger & De Llano LLP | Attn: Rod de Llano (rod@dandell.com) 440 Louisiana St. Suite 1212 Houston, TX 77002 | 1707 |
| Swenson & Shelley | Attn: Kevin Swenson (kevin@swensonshelley.com) 107 South 1470 East, Ste. 201 St. George, UT 84790 | 175 |
| Cohen Hirsch LP (formerly Brooke F. Cohen Law, Hirsch Law Firm) | Attn: Brooke F. Cohen (brookefcohenlaw@gmail.com) Attn: Andrea Hirsch (andrea@thehirschlawfirm.com) 4318 Glenwick Lane Dallas, TX 75205 | 64 |
| Damon J. Baldone PLC | Attn: Damon J. Baldone (damon@baldonelaw.com) 162 New Orleans Blvd. | 471 |

4

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| | Houma LA 70364 | |
| Cutter Law, P.C. | Attn: Brooks Cutter (bcutter@cutterlaw.com) 4179 Piedmont Ave. 3rd Fl. Oakland, CA 94611 | 358 |
| Linville Johnson & Pahlke Law Group | Attn: Robert Pahlke (rgp@pahlkelawgroup.com) 2425 Circle Dr., Ste. 200 Scottsbluff NE 69361 | 71 |
| Porter & Malouf P.A. | Attn: Timothy Porter (tporter@portermalouf.com) 825 Ridgewood Rd. Ridgeland, MS 39157 | 86 |
| The Moody Law Firm | Attn: Will Moody Jr. (will@moodyrrlaw.com) 500 Crawford St., Ste. 200 Portsmouth, VA 23704 | 677 |
| Levin Papantonio Thomas Mitchell Rafferty & Procter P.A. | Attn: Cameron Stephenson (cstephenson@levinlaw.com) 316 South Baylen St. Pensacola, FL 32502 | 44 |
| Marc J Bern & Partners LLP | Attn: Joseph Cappelli (jcappelli@bernllp.com) 60 East 42nd St. Ste. 950 New York, NY 10165 | 5893 |

**Exhibit A**

**Known and Alleged Local Council Insurance Policies Issued by Clarendon**

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Maryland Casualty Company | 05-829567 | 1/1/1968 – 1/1/1969 | Unknown | Alamo Area (583): Alamo Area (583) |
| Maryland Casualty Company | Unknown | 1/1/1970 – 1/1/1971 | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | Unknown | 1/1/1971 – 1/1/1972 | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | Unknown | 1/1/1972 – 1/1/1973 | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | Unknown | 1/1//1973 – 1/1/1974 | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | Unknown | 1/1/1974 – 1/1/1975 | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | Unknown | 1/1/1974 – 1/1/1975 | Unknown | Atlanta Area (092): Atlanta Area (092) |
| Maryland Casualty Company | 3830-72-95 | 7/1/1975 – 7/1/1976 | Columbia Pacific Council, Boy Scouts of America | Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) |

CONFIDENTIAL
FOR MEDIATION PURPOSES ONLY
Doc # DC/25608067v1

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Maryland Casualty Company | 3830-72-95 | 7/1/1976 – 7/1/1977 | Columbia Pacific Council, Boy Scouts of America | Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) |
| Maryland Casualty Company | 3830-72-95 | 7/1/1977 – 7/1/1978 | Columbia Pacific Council, Boy Scouts of America | Cascade Pacific (492): Columbia-Pacific 1966-1993 (492) |
| Maryland Casualty Company | 96-224611 | 1/1/1963 – 1/1/1964 | Unknown | Chickasaw (558): Chickasaw 1916- (558) |
| Maryland Casualty Company | Unknown | 1/1/1964 – 1/1/1965 | Unknown | Chickasaw (558): Chickasaw 1916- (558) |
| Maryland Casualty Company | Unknown | 1/1/1965 – 8/1/1965 | Unknown | Chickasaw (558): Chickasaw 1916- (558) |
| American General Fire & Casualty Company | Unknown | 1/1/1975 – 1/1/1976 | Unknown | Circle Ten (571): Circle Ten 1913- (571) |
| Maryland Casualty Company | Unknown | 1/1/1974 – 1/1/1975 | Unknown | Mason-Dixon (221): Mason-Dixon 1956- (221) |
| Maryland Casualty Company | Unknown | 1/1/1975 – 1/1/1976 | Unknown | Mason-Dixon (221): Mason-Dixon 1956- (221) |

2

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Maryland Casualty Company | Unknown | 1/1/1976 – 1/1/1977 | Unknown | Mason-Dixon (221): Mason-Dixon 1956-(221) |
| Maryland Casualty Company | Unknown | 7/24/1977 – 7/24/1978 | Unknown | Mason-Dixon (221): Mason-Dixon 1956-(221) |
| Maryland Casualty Company | Unknown | 7/24/1978 – 7/24/1979 | Unknown | Mason-Dixon (221): Mason-Dixon 1956-(221) |
| Maryland Casualty Company | Unknown | 7/24/1979 – 7/24/1980 | Unknown | Mason-Dixon (221): Mason-Dixon 1956-(221) |
| Maryland Casualty Company | 31-086767 | 7/7/1957 – 7/7/1958 | Unknown | Northeast Iowa (178): Northeast Iowa (178) |
| Maryland Casualty Company | Unknown | 7/1/1958 – 7/1/1959 | Unknown | Northeast Iowa (178): Northeast Iowa (178) |
| Maryland Casualty Company | Unknown | 3/1/1977 – 1/1/1978 | Unknown | Washington Crossing (777): Bucks County 1927-2015 (777) |
| Zurich Insurance Company | 80-39-959 | 7/16/1960 – 7/19/1961 | Unknown | Western Los Angeles County (051): San Fernando Valley 1923-1972 (050) |

3

**Exhibit B**

**Known and Alleged BSA Insurance Policies Issued by Clarendon**

| Writing Company | Policy No. | Policy Period |
|---|---|---|
| Clarendon America Insurance Company | XLX 39306224 | 3/1/2003 – 3/1/2004 |
| Clarendon America Insurance Company | XLX 00310351 | 3/1/2004 – 3/1/2005 |
| Clarendon America Insurance Company | XLX 00311014 | 3/1/2005 – 3/1/2006 |

UnionAmerica Insurance Company, Ltd.
Policy No. 151351/01/76
Participation: 1.439640%
Period: 9/17/1976 – 9/17/1977

UnionAmerica Insurance Company, Ltd.
Policy No. 151352/01/76
Participation: 5.771890%
Period: 9/17/1976 – 9/17/1977

UnionAmerica Insurance Company, Ltd.
Policy No. 833938/01/76
Participation: 3.808000%
Period: 9/17/1976 – 9/17/1977

UnionAmerica Insurance Company, Ltd.
Policy No. 833939/01/76
Participation: 3.808000%
Period: 9/17/1976 – 9/17/1977

Note that for the UnionAmerica coverage, the percentages shown are UnionAmerica's percentage participation in $5 million in aggregate limits, excess of $10 million in underlying insurance. As regards UnionAmerica, the sale referenced in section 3 of the term sheet refers only to Union America's participation in the policies listed above.

**CONFIDENTIAL**
**FOR MEDIATION PURPOSES ONLY**
Doc #  DC/25608067v1

**Exhibit D**

**Notice Addresses**

| For Clarendon: | With a copy to: |
|---|---|
| Dawn Ballin<br>Senior Vice President and Head of Claims<br>Enstar (US) Inc.<br>Harborside 5<br>185 Hudson Street, Suite 2600<br>Jersey City, NJ 07311<br>(201) 743-7765<br>dawn.ballin@enstargroup.com | Harry Lee<br>Steptoe & Johnson LLP<br>1330 Connecticut Avenue, N.W.<br>Washington, D.C. 20036<br>(202) 429-8112<br>hlee@steptoe.com |
| For the Debtors:<br><br>Steven P. McGowan<br>General Counsel<br>Boy Scouts of America<br>1325 West Walnut Hill Lane<br>Irving, TX 75038<br>(972) 580-7847<br>steve.mcgowan@scouting.org | With a copy to:<br><br>Jessica C. Lauria<br>White & Case LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>(212) 819-8200<br>jessica.lauria@whitecase.com<br><br>Michael C. Andolina<br>White & Case LLP<br>111 South Wacker Drive<br>Chicago, IL 60606<br>(312) 881-5400<br>mandolina@whitecase.com |
| For the Coalition:<br><br>David J. Molton<br>Eric R. Goodman<br>Coalition of Abused Scouts for Justice<br>c/o Brown Rudnick LLP<br>Seven Times Square<br>New York, NY<br>(212) 209-4800<br>dmolton@brownrudnick.com<br>egoodman@brownrudnick.com | |
| For the FCR:<br><br>James L. Patton | |

| | |
|---|---|
| Robert S. Brady<br>Edwin J. Harron<br>c/o Young Conaway Stargatt & Taylor, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>jpatton@ycst.com<br>rbrady@ycst.com<br>eharron@ycst.com | |
| For AHCLC:<br><br>Richard G. Mason<br>Joseph C. Celentino<br>Ad Hoc Committee of Local Councils<br>c/o Wachtell, Lipton, Rosen & Katz<br>51 West 52nd Street<br>New York, New York  10019<br>(212) 403-1000<br>RGMason@wlrk.com<br>JCCelentino@wlrk.com | |
| For State Court Counsel:<br><br>See Schedule 1 hereto | |

Doc #  DC/27542496v1