# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>Debtors.[1] | **Chapter 11**<br><br>**Case No. 20-10343 (LSS)**<br><br>(Jointly Administered)<br><br>**Hearing Date: March 9, 2022 at 10:00 a.m. (ET)**<br>**Objection Deadline:  February 25, 2022[2]** |

## THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS' ("TCJC") MOTION TO EXCLUDE ANY TESTIMONY OR EVIDENCE OFFERED BY OR THROUGH MS. KATHERYN R. MCNALLY WITH RESPECT TO TCJC

The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole ("TCJC"), submits this *Motion to Exclude Any Testimony or Evidence Offered by or Through Ms. Katheryn R. McNally With Respect to TCJC* (the "Motion to Exclude"), specifically requesting that the Court preclude the Tort Claimant's Committee's ("TCC") expert, Ms. Katheryn R. McNally, from offering any testimony or evidence, including expert or any other opinions, related to the purported value of Abuse Claims[3] relating to TCJC or the adequacy and/or reasonableness of the TCJC Settlement [D.I. 6210].

---

[1]    The Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]    The sealed version of this Motion that was filed on February 10, 2022 set forth an objection deadline of February 17, 2022, and a hearing date of February 22, 2022.  On February 15, 2022, the Court entered the *Order (I) Amending and Scheduling Certain Supplemental Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization and (II) Approving a Limited Supplemental Voting Deadline for Class 8 Direct Abuse Claims and Class 9 Indirect Abuse Claims* [D.I. 8830].  Under such order, the deadline for opposition to motions *in limine* with respect to testimony and evidence of Katheryn R. McNally was extended to February 25, 2022, and the hearing was continued to March 9, 2022 at 10:00 a.m. (ET).

[3]    Capitalized terms used but not defined herein shall have the same meaning ascribed to them in the *Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 7832] (the "Plan").

McNally conceded that she was not asked to nor did she form any expert opinions whatsoever regarding the number of purported TCJC Abuse Claims, the value of such TCJC Abuse Claims, or the reasonableness of the TCJC Settlement.

This also requires excluding the ¼ of a page Ms. McNally devoted in the 56-page Expert Report of Katheryn R. McNally of the Claro Group, LLC, dated December 5, 2021 (the "Initial McNally Expert Report"[4]) referencing TCJC, as well as 3 out of the 58 pages of the Rebuttal to Expert Report of Charles E. Bates, Bates White, LLC by Katheryn R. McNally, the Claro Group, LLC dated January 5, 2022 referencing TCJC (the "McNally Rebuttal Report,"[5] and together with the Initial McNally Expert Report, the "McNally Reports").[6]

## I.    PRELIMINARY STATEMENT

1.      Ms. Katheryn R. McNally, the sole expert offered by the TCC purportedly to opine as to the value of Abuse Claims alleged to involve TCJC and the TCJC Settlement, has admitted that she has done ***no analysis as to TCJC's portion of any liability estimated, and was not asked to form any opinions as to TCJC's share of any liability***.  She also has acknowledged that she was ***not even tasked by the TCC with evaluating the TCJC Settlement***, or asked to form any opinions as to the reasonableness of the TCJC Settlement.  McNally thus must be excluded from testifying as to TCJC claims or the TCJC Settlement under both the *Daubert* standard and, because no such expert opinions have been disclosed in this case, under Rule 26 and of the Federal Rules of Civil Procedure ("Rule 26").  Allowing such testimony would be inappropriate and prejudicial.

---

[4]      The Initial McNally Expert Report is attached as Exhibit A to the Declaration of Michael J. Merchant in support of this Motion to Exclude.

[5]      The McNally Rebuttal Report is attached as Exhibit B to the Declaration of Michael J. Merchant in support of this Motion to Exclude.

[6]      Parties have proposed that expert reports be submitted in lieu of direct testimony for testifying experts.  If that is ultimately how the parties proceed with introducing expert testimony at the confirmation hearing, then TCJC objects to, and moves to exclude on the grounds cited in this Motion, all portions of the McNally Reports that relate to TCJC.

The fact that this is a bench trial does not matter given that the complete absence of any expert opinions by McNally would make any testimony or evidence offered through her on these subjects unduly prejudicial, nonsensical, and a complete waste of the Court's time and the parties' resources.

2.      Each of McNally's Reports includes a short but ambiguous (and unexplained) reference to TCJC, but neither Report contains any expert opinions whatsoever on the subjects discussed above.  The references, by definition, are meaningless, and certainly do not meet the standards under the Federal Rules or even common sense.  Indeed, at her deposition,[7] McNally conceded that:

- The values presented in the McNally Reports as the TCJC Sexual Abuse Claims "are the claim values *for all BSA related entities' share*" of liability, and that she made "no assumptions or assertions as to what portion of those amounts may be TCJC's responsibility share for those claims." (Ex. C at 399:21-25 (emphasis added).)

- She had not conducted an analysis to determine "the claims value that would be . . . apportioned specifically to TCJC." (*Id.* at 399:2-10.)

- She did not know if TCJC would be responsible for "50%", "33%", "25%", or even "1%" of claim values.  (*Id*. at 400:1-22.)

- She did not perform "any independent analysis to determine the number of TCJC sex abuse claims allege[d] in the BSA bankruptcy." (*Id.* at 381:1- 382:25; *see also id.* at 383:8-384:1 (testifying that she "wasn't asked to" do any analysis to determine if there were any potential TCJC abuse claims); *id.* at 396:1-18.)

- She did not perform "any analysis with respect to whether or not the potential TCJC abuse claims of 7,716 was . . . . a correct amount . . . . potentially related to TCJC." (*Id.* at 402:19-403:7.)

- She did not form, nor was she even asked to form, any opinions whatsoever with regard to the TCJC Settlement, the reasonableness of the TCJC Settlement, or whether the TCJC Settlement represents a substantial contribution to the Settlement Trust:

---

[7]      A transcript of Katheryn R. McNally's deposition in the above-captioned matter, dated February 3, 2022, is attached as Exhibit C to the Declaration of Michael J. Merchant in support of this Motion to Exclude.

Q: . . . you don't say anything about being asked to analyze or assess the reasonableness of the TCJC settlement. Am I right? . . .

A. Correct; I was not asked to do that.

. . .

Q. Do you have any opinions on whether the TCJC settlement is a reasonable settlement?

A. I have no opinion on that.

[…]

Q. Okay. Do you have any opinions as to whether the TCJC settlement represents a substantial contribution to the settlement trust?

A. I have no opinion on that.

(*Id*. at 370:6 – 371:4.)

3.     Based on her clear and unambiguous admissions as to the scope of what she was asked to do (and what she *wasn't* asked to do), and what work she did (and what she *didn't* do), McNally does not meet the applicable standard under Third Circuit precedent to offer expert testimony and opinions regarding TCJC, Abuse Claims allegedly related to TCJC, or the TCJC Settlement.  Any such opinions, if offered, would plainly run afoul of the requirement that the methodology underlying an expert's testimony must be scientifically valid and properly applied to the facts at issue. Because she has not offered *any* opinions related to TCJC, Rules 26 and 37 of the Federal Rules of Civil Procedure preclude her from offering these opinions at confirmation. Accordingly, the TCC and any objecting party to the Plan should be prohibited from offering any testimony or statement from McNally concerning TCJC, whether set forth in the McNally Reports or otherwise.

## II.     RELEVANT FACTUAL BACKGROUND

4.     On November 15, 2021, the TCC submitted its *Disclosure of Topics on Which It May Submit Expert Reports in Connection with Its Plan Objections* [D.I. 7236], which included a

disclosure that it intended to offer expert reports concerning "the appropriate manner to assess the value and limits, and the reasonableness of settlements with . . . TCJC." (*Id.* at 2.)

5.      On December 5, 2021, the TCC served the Initial McNally Expert Report, which included a four-sentence section entitled "TCJC Sexual Abuse Claims," and – in cursory and conclusory fashion – purported to ascribe a value to such claims.  (*See* Ex. A at 34.)  The Initial McNally Expert Report does not describe any methodology employed in reaching the conclusions with regard to TCJC set forth therein.

6.      On January 5, 2022, the TCC served the McNally Rebuttal Report, which included a brief section purporting to rebut the Debtors' expert's analysis with regard to TCJC.  (*See* Ex. A at 55-56.)  Again, in the McNally Rebuttal Report, McNally ascribed a value to "Potential TCJC Abuse Claims" but set forth no analysis or description of her methodology.

7.      On February 3, 2022, McNally was deposed.  During her deposition, she failed to identify any methodology employed in reaching the conclusions specific to TCJC set forth in the McNally Reports.  And she conceded, among other things, that she did not do any analysis as to what share of TCJC-related Abuse Claims would be appropriate to attribute to TCJC, and was not even asked by the TCC to evaluate the reasonableness of the TCJC Settlement.  (*See* Ex. C at 366:5-9, 370:6-371:4.)

## III.     APPLICABLE LEGAL STANDARD

### A.      The *Daubert* Standard

8.      Rule 702 of the Federal Rules of Evidence, made applicable to these proceedings pursuant to Rule 9017 of the Federal Rules of Bankruptcy Procedure, "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit."  *Reger v. A.I. DuPont Hosp. for Children of Nemours Found.,* 259 Fed. Appx. 499, 500 (3d Cir. 2008) (quoting *Schenider v. Fried,* 320 F.3d 396, 404 (3d Cir. 2003)).  Under *Daubert* and its progeny, a trial judge must ensure that

8

(1) the witness is qualified as an expert by virtue of knowledge, training, education, skill and experience; and (2) the expert testimony or evidence admitted is relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) (applying the standard set forth in *Daubert* to all expert testimony). The party proffering the expert witness has the burden of meeting these criteria. *In re Nellson Nutraceutical, Inc.*, 356 B.R. 364, 372 (Bankr. D. Del. 2006).

### B.    Disclosure Requirements

9.      Under Rule 26 of the Federal Rules of Civil Procedure,[8] an expert witness who provides a written report must include, *inter alia*, "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; and (ii) the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B); *see Wood v. Showers*, 822 Fed. Appx. 122 (3d Cir. 2020) (upholding district court's exclusion of a portion of an expert's testimony for failing to meet procedural requirements under Rule 26 and substantive requirements under *Daubert*). If a party fails to provide the information required under Rule 26(a), it is not allowed to use that information at trial unless this failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1); *see also Parallel Networks Licensing, LLC v. Int'l Bus. Machines Corp.,* No. CV 13-2072 (KAJ), 2017 WL 1405155, at *1 (D. Del. Apr. 17, 2017).

---

[8]      Section 11 of the Order (I) Scheduling Certain Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization, (II) Establishing Certain Protocols, and (III) Granting Related Relief [D.I. 6528] ("Scheduling Order") requires an expert to submit "a report that satisfies the requirements of Fed. R. Civ. P. 26(a)(2)(B)." (*Id.* at 7.)

## IV.    ARGUMENT

### A.    McNally's Statements From Her Reports And Testimony Related To TCJC Are Unreliable Because She Does Not Offer Any Opinions Concerning The Value Of TCJC Abuse Claims Or The Reasonableness Of The TCJC Settlement

10.     Assuming *in arguendo* that McNally is qualified as an expert,[9] *Daubert* establishes that her testimony is admissible only if "the reasoning or methodology underlying the testimony is scientifically valid and . . . that reasoning or methodology properly can be applied to the facts in issue."  509 U.S. at 592-93.  McNally's statements and testimony related to TCJC are both unreliable and irrelevant because her opinions are not set forth in either of the McNally Reports and, in fact, she admits to having formed none.

11.     McNally's TCJC-related references—including her statements related to the number of Abuse Claims that implicate TCJC—rely on speculation and information provided by counsel rather than any articulated methodology.  The "lack of familiarity with methods and the reasons underlying . . . projections virtually preclude[] any assessment of the validity of the projections through cross-examination."  *Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*, 350 F. Supp. 2d 582, 592 (D. Del. 2004) (internal quotations and citations omitted).  In her own words, McNally did not identify or analyze the number of Abuse Claims that implicate TCJC because she "was not asked to do any [analysis], and [] did none."  (Ex. C at 381:15-20, 382:14-17, 395:15-20 (admitting that she has no "specific knowledge of which claimants in the BSA bankruptcy are affiliated with the TCJC . . . other than the list of 2,404 claims that was provided to [her] by TCC counsel"); *id.* at 402:19-403:7 (admitting that she did no "analysis with respect to whether or not the potential TCJC abuse claims of 7,716 [] is a correct amount related to TCJC").)

---

[9]     Notably, McNally has never been accepted as an expert by any court on any subject and, to the extent McNally seeks to offer an expert opinion related to TCJC—which she has not yet done—TCJC reserves the right to object based on her qualifications.  (*See* Ex. C at 10:17-11:1, 366: 5-9, 370:6-371:4.)

The limitations of the McNally Reports and references to TCJC therein are not confined to the number of Abuse Claims—McNally also unequivocally confirmed that she had no opinion regarding: (1) the reasonableness of the TCJC settlement; (2) the value of the TCJC Settlement; (3) whether the TCJC Settlement represents a substantial contribution to the Settlement Trust; (4) how much of the share of each of the TCJC Sexual Abuse Claims could be ascribed to TCJC; or (5) what portion of those amounts may be TCJC's responsibility share for those Abuse Claims. (*Id.* at 366:5-9, 370:6-371:4, 399:21-25.)  McNally's methods are not simply unreliable, they are non-existent.  It is, therefore, impossible to cross-examine McNally on the methods by which she valued TCJC-related claims because she did not even identify the TCJC-related claims.  *See Chemipal*, 350 F. Supp. 2d at 592.

12.    McNally's references to TCJC also fail to satisfy the relevance standard under *Daubert* because they are speculative and will not assist the trier of fact.  "If the factual basis of an expert's opinion is so fundamentally unsupported because the expert fully relies on altered facts and speculation, or fails to consider relevant facts in reaching a conclusion, the expert's opinion can offer no assistance to the trier of fact, and is not admissible on relevance grounds."  *In re Nellson Nutraceutica, Inc.*, 356 B.R. at  373; *In re W.R. Grace & Co.*, 355 B.R. 462, 481-82 (Bankr. D. Del. 2006) (holding that a doctor's opinion regarding exposure to asbestos was unreliable because it failed to consider relevant portions of the case studies it analyzed).  McNally's statements and testimony related to TCJC fall squarely into this camp.  For example, although McNally purports to offer an opinion regarding the value of TCJC-related Abuse Claims, she admitted during her deposition that the values presented in the Initial McNally Expert Report represent "the claim values *for all BSA related entities' share*."  (Ex. C at 398:18-399:25.) (emphasis added).  This aggregate figure does not represent the claim value apportioned to TCJC.

11

In fact, McNally testified that she made "no assumptions or assertions as to what portion of those amounts may be TCJC's responsibility share for those claims." (Ex. C at 399:20-25.) These statements that purportedly relate to TCJC are merely extrapolations from her general Abuse Claim valuation analysis that do not even attempt to apportion liability to TCJC specifically.

13.      Where, as here, the expert has professed that she does not have an informed opinion about a specific, limited subject matter, such expert's statements about that subject is inadmissible under the Federal Rules of Evidence, regardless of whether a jury is involved. *See, e.g., In re Nellson Neutraceutical, Inc.*, 356 B.R. at 37; *In re W.R. Grace & Co.*, 355 B.R. 462. At bottom, McNally could not articulate any basis for her statements or testimony related to TCJC, and thus any testimony by her on these subjects is inadmissible at confirmation.

**B.      Because McNally Has Not Offered Any Opinions Related To TCJC, Any Opinions Or Testimony That She Attempts To Offer At Trial Violate Rule 26 And Should Be Excluded.**

14.      McNally has failed to articulate any opinions related to the TCJC. Any testimony or opinions that McNally offers at trial on this subject are barred because such an opinion would violate the disclosure requirements of Rule 26 of the Federal Rules of Civil Procedure as applied to these proceedings by Section 11 of the Scheduling Order. Under Rule 26, expert witnesses must submit a written report outlining both "the basis and reasons" for forming their opinions and the underlying "facts or data" they considered. Fed. R. Civ. P. 26(a)(2)(i)(ii). Where an expert has failed to comply with Rule 26, her testimony is properly excluded unless this failure "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also TQ Delta, LLC v. Adtran, Inc.*, No. CV 14-954-RGA, 2020 WL 4529865, at *1 (D. Del. July 31, 2020) (precluding portions of an expert's declaration for failing to timely disclose new opinions formed); *Bridgestone Sports Co. v. Acushnet Co.*, No. CIVA 05-132 JJF, 2007 WL 521894, at *4 (D. Del. Feb. 15, 2007) (granting motion to preclude evidence based on disclosures made after the passing of the expert

discovery deadline).  Here, McNally has provided no explanation for her failure to adequately articulate opinions related to TCJC and any opinions that the TCC or any party seeks to offer at trial in contravention of the stipulated Scheduling Order should be excluded.

15.    In the Initial McNally Expert Report, McNally devoted four sentences to the discussion of her analysis of TCJC-related Abuse Claims.  (Ex. A at 34.)  If the brevity of the TCJC sections in this Report suggested a cursory approach to these opinions, her deposition left no doubt—the McNally Reports contain conclusory references to TCJC that lack the relevant bases necessary to test her opinions on claim valuation via cross-examination.  *See supra* § IV.A.

16.    McNally's failure to adequately disclose either the factual basis or rationale for her statements that relate to TCJC precludes meaningful review of her analysis and runs afoul of Rule 26 and the Scheduling Order.  McNally nor the TCC have made any effort to explain how such an error was substantially justified or harmless under Rule 37(c)(1).  *See Parallel Networks Licensing, LLC* 2017 WL 1405155, at *1 ("Together, Rules 26 and 37 provide trial courts with discretion to exclude opinions that are not disclosed in expert reports.") (citation omitted).  Nor can they.  TCJC expended significant resources rebutting the Initial McNally Expert Report only to discover during her deposition that she had not even attempted to accurately and reliably estimate TCJC's liability for Abuse Claims in the tort system.  Rather, she relied on speculation and subjective opinions provided by counsel and her statements related to TCJC should not be admitted as a result.

## V.    CONCLUSION

McNally has expressly disavowed forming any opinions regarding the valuation of TCJC-related Abuse Claims or the reasonableness of the TCJC Settlement and this Court should exclude any and all of her opinions or testimony concerning TCJC offered as evidence at confirmation.

Dated: February 15, 2022
    Wilmington, Delaware

_/s/ Michael J. Merchant_____

**RICHARDS, LAYTON & FINGER, P.A.**
Michael J. Merchant (No. 3854)
One Rodney Square
920 North King Street
Wilmington, DE  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
E-mail:  merchant@rlf.com

- and -

**LATHAM & WATKINS LLP**

Jeffrey E. Bjork (admitted *pro hac vice*)
Deniz A. Irgi (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
E-mail:  jeff.bjork@lw.com
       deniz.irgi@lw.com

- and -

Adam J. Goldberg (admitted *pro hac vice*)
Robert J. Malionek (admitted *pro hac vice*)
Madeleine C. Parish (admitted *pro hac vice*)
Benjamin A. Dozier (admitted *pro hac vice*)
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020-1401
Telephone: (212) 906-1200
E-mail: adam.goldberg@lw.com
      robert.malionek@lw.com
      madeleine.parish@lw.com
      benjamin.butzin-dozier@lw.com

*Counsel to The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole*