pg. 1

IN THE U.S. Bankruptsy Court
Delaware

RE:
Boy Scouts

# 20-10343
LSS

RE: Late Notice/Claims    DATE: 1-13-22

It is not fair to me that I recieve my mail late. Even from my own lawyer! The following are examples of mail I just got today 1-13-22 4-5 months late at my Jail —

This court must give me lieniency (see previous filings) in which Ive repeatedly Addressed this issue

Aug 20th, 2021

*AVA Law Group* (handwritten)

RE:     Claim Against the Boy Scouts of America (Privileged & Confidential; Attorney-Client Communication)

Hello,

We are writing to you today with an update on your case against the Boy Scouts of America (BSA) in the U.S. Bankruptcy Court in Wilmington, Delaware. This update will be a little different as there are a lot of moving parts, but with the news that broke last night, we did want to address where things stand.

**News From August 19th**

As you may have seen or heard yesterday, the Judge in your case issued a ruling where she partially approved the Restructuring Support Agreement. The headlines the media used lead with "$850 million dollar approval from the Judge" in the BSA case. Although, technically that is accurate, it's a little misleading.

As we have been saying since the beginning, you ultimately get a vote. The Judge did rule yesterday that the BSA used adequate business judgement in deciding to enter into the RSA and between the local council's and the national organization pledge 850 million dollars towards a trust to compensate abuse survivors.

But, she cautioned her ruling means nothing in terms of whether she will approve of BSA's disclosure statement, voting procedures, or proposed plan, and I quote: "Let me emphasize the limited nature of my ruling today. I am not approving the term sheet, the Fourth Amended Plan, any disclosure statement, or anything else. The ruling I am entering today does not do so and does not suggest that I will do so."

The Judge using this language shows that she is not endorsing this proposed deal, just that the BSA has the ability to continue down this path and the merits of the plan need to be further examined and discussed at a later date.

**Where does this leave us?**

Currently there is a hearing scheduled for this Wednesday, August 25th, that was scheduled to discuss the Plan Disclosure Statement and Solicitation procedures. That is to say, the BSA's plan of reorganization, the language used to present it to you as a creditor, and the method in which the vote will ultimately be conducted for you to cast your ballot. It looks like that hearing will be pushed off until the middle of September.

We will keep you posted as we learn more about what will happen next.

**I still don't understand, what in the world is going on?**

2

Good question, the long and the short is this:

When the BSA entered bankruptcy, by virtue of the bankruptcy code, they had to adhere to the Judge's orders. They cannot spend money without her permission, and they cannot enter into deals to resolve their debt of liabilities without her permission. Therefor the Judge had to analyze how the BSA entered into the Restructuring Support Agreement. The Judge heard arguments on whether the BSA board of directors used good business judgement to create a framework for a proposed settlement in the future. Based on the Judge's ruling yesterday, they did, and they can continue moving forward through this process.

However, as stated above, this does not mean that the Judge is signing off on the reorganization plan or the proposed payment structure to creditors. Those issues still need to be discussed at a future hearing. That hearing will likely start towards the middle of September.

**Common Questions and Answers**

We have had some common questions lately, please see below as you may have been thinking along the same lines.

Q. What's the story on the Hartford settlement, the news said the Judge denied the BSA's request to withdraw from the April Agreement?
A. Yes, the BSA attempted through the RSA to get the Judge to unwind the horrible deal they entered with Hartford last April. The Judge refused to do so, but more on technicalities than actualities. The Hartford deal itself only finalizes if a supermajority of abuse survivors (you) votes to approve it, or if at the end of the day the Judge crams it down on us. She did not indicate she supported it, but she told the BSA it was improper in the way they attempted to make her unwind it and she refused to engage in further discussion about it as currently presented. (So, the deal is still hanging there, but Hartford knows there is no way it gets a yes vote from you, so in our opinion they will do more at some point in the future)

Q. How does 850 million dollars come even close to compensating 82,500 abuse survivors for what we went through?
A. It doesn't. The only way this works is if there is much more money there, it must be billions of dollars. The liability and insurance is there, we just need to get big dollars from the insurers.

Q. What about the Sponsoring Organizations like the LDS Church, Archdioceses, Methodists and others?
A. They are actively involved in mediation. Under the bankruptcy code and based on case precedent, the Court has the power to release these organizations from any future liability based on BSA related abuse for incidents that occurred before the BSA filed for bankruptcy. This is a very substantial carrot that is being dangled in front of these organizations to incentivize them to put in real money that you would approve with your vote in order to obtain the release from liability that the Bankruptcy Court can give them. It is uncertain what those contributions from each organization may be, but it is very much at the forefront of negotiations right now.

Q. How come you have not given me a breakdown of what my case may be worth under the

proposed plan?
A. It's too early, we do not know if this plan is going forward to a vote for you. The Judge needs to weigh in here and let us know if the proposed plan is going out for a vote or not. That process may start as early as Wednesday next week. If the Judge does approve it, and it is going to go out for a vote, please know we will give you a much more detailed update on exactly what it is you are voting for. This will include what the proposed plan means for your individual case in terms of money damages you may expect under the plan if approved.

Q. This is really hard, every time I see the news about it or get one of your emails, it triggers incredibly unpleasant emotions and memories. How much longer will this last?
A. If the proposed plan is approved by the Judge starting as early as next week, voting will be conducted likely in September and October will all votes due back by the end of October. After that, there will be a hearing on plan confirmation that will likely run one to two weeks sometime in November or December and if the plan is ultimately approved, the trust should be set up, funded and distributions made in 2022. If the proposed plan is rejected by the Judge or voted down by the creditors, the timeline will continue to get pushed back.

**Conclusion**

We know this is hard, we are so proud to represent you and are inspired by your courage and strength in coming forward and holding this institution accountable. Not only are we holding the 110 year old BSA institution accountable for their failure to protect you, but we are going head to head with both Chubb and Hartford, two of the largest insurers in the Country, to insure they honor the commitments they made under their policies. These companies are used to pushing people around and getting their way, because of your strength they will ultimately be held accountable.

Although it feels incredibly slow, progress is being made and we look forward to another update in the coming weeks. Please hang in there and know we are always a phone call or email away if you need to speak with us about your case. We will have another update after the next hearing and will discuss the lay of the land moving forward.

Thank you, please contact us at any time by replying to this email, emailing us at support@ava.law or calling us at 888-99-SCOUT.

Sincerely Yours,

Andrew Van Arsdale

3

# CERTIFIED TRANSCRIPT

---

## BOY SCOUTS OF AMERICA
## OFFICIAL TORT CLAIMANTS COMMITTEE TOWN HALL
## AUGUST 16, 2021

---



Court Reporting • Video
310.230.9700 • els@elitigationservices.com
www.elitigationservices.com

1  **LUCAS:** Good evening, everybody, this is John Lucas of Pachulski, Stang, Ziehl, and
2  Jones, and it's just after 5:00 Pacific, 8:00 Eastern here, and we're just going to let people log into
3  the Zoom here and get settled. Then we'll start about five minutes after the hour. Good evening,
4  everybody. People are still logging on here. We're going to give things a few minutes, until
5  about five minutes after the hour, before we get started. There's still a lot of people logging on.
6  Hey, good evening, everybody. We're just going to let everybody here get logged on. People are
7  still getting onto the Zoom, and we're going to start about five minutes after the hour. Hello,
8  everybody. We're going to get started here in just a minute. People are still logging onto the
9  Zoom. And the committee co-chairs and the committee professionals here will begin this
10 session. And I also see that a bunch of you are typing in questions, and I will either respond to
11 them here in the Q&A or we'll take note of them and we'll try to address them in the discussion
12 today.
13 **HUMPHREY:** Hey, everybody, welcome to the TCC's town hall. Doug, on a technical
14 note, you might want to have Deb get you down here instead of up there. But it's been a really
15 busy month. If you want to know what the life--a day in the life of a TCC member, while I am
16 on this town hall meeting with you, I have another computer right over there where the hearing
17 with Judge Silverstein is still going on, and they are arguing various merits of the RSA, which
18 we will discuss tonight. So, thank you for coming, appreciate you cutting out an hour out of
19 your time. We'll try to keep it to that. There are a lot of moving parts right now, and so I will let
20 you know when it gets to 9:00 p.m. Eastern standard time, or whatever time zone you are in, and
21 we will give you the option to jump off.
22 Like in past town halls, John Lucas will be looking at questions and interrupting from time to
23 time where they're relevant. If you want to remain anonymous in your question, you need to put
24 that question forth as an anonymous question. Otherwise, people will see your name. But we'll

BSOA | OFFICIAL TORT CLAIMANTS COMMITTEE TOWN HALL | eLitigation Services, Inc.    2
www.elitigationservices.com
310.230.9700 • els@elitigationservices.com



BOY SCOUTS OF AMERICA
OFFICIAL TORT CLAIMANTS COMMITTEE TOWN HALL | AUGUST 16, 2021

1
2  I hereby certify that the foregoing is a true and correct transcription of the audiotape labeled
3  GMT20210817-000034_Recording_2560x1440.
4  .
5  .
6
7
8
9  08/24/2021
10     Date                                              Printed Name
11
12
13                                                    _____
14                                                         Signature
15
16
17
18
19
20
21

BSOA | OFFICIAL TORT CLAIMANTS COMMITTEE TOWN HALL | eLitigation Services, Inc.   26
www.elitigationservices.com
310.230.9700 • els@elitigationservices.com

1  think you need to hear.  So, it is a delicate balance.  Our guys do the best they can, and we are
2  very fortunate, actually, to have professionals that speak English and can go deep.  So, with that,
3  Doug, you have anything else before we close?
4  **KENNEDY:**  The only other thing I wanted to add, John, and I think you're absolutely right, is a
5  number of people were asking about the statutes of limitation in their site--in their state, and
6  again, these are questions you should be discussing with your lawyer.  But if you go to
7  ChildUSA.org--again, ChildUSA.org--that's a really good site for keeping updated on what the
8  current and any movement is on your statute.  So, but again, these are questions best asked
9  [inaudible] lawyers, and please, stay strong, everybody.  There's going to be a lot more of these
10  town halls when John and I are going to be trying to, you know, get through the weeds with the
11  help of our--with our professionals.
12  **HUMPHREY:**       Yeah, so we'll try to do a little bit better job on the TCC-BSA, when we
13  get updates.  You can always send emails to BSASurvivors@PSZJLaw.com.  Thanks a lot for
14  your time tonight.  Have a really great Monday.  Thanks to Jim and John and Doug for being
15  with us.  We'll see you next time.
16  **KENNEDY:**  Yeah, thank you, folks.
17  **HUMPHREY:**       Bye-bye.
18
19
20
21
22
23

BSOA | OFFICIAL TORT CLAIMANTS COMMITTEE TOWN HALL | eLitigation Services, Inc.   25
www.elitigationservices.com
310.230.9700 •   els@elitigationservices.com

1
2  I hereby certify that the foregoing is a true and correct transcription of the audiotape labeled
3  GMT20210910-000037_Recording_1724x840.
4  .
5  .
6  .
7
8
9
10  09/16/2021
11
12  Date                                    Printed Name
13
14
15
16                                          Signature
17
18
19

BSOA | OFFICIAL TORT CLAIMANTS COMMITTEE TOWN HALL | eLitigation Services, Inc.  26
www.elitigationservices.com
310.230.9700 • els@elitigationservices.com

1   are the pig at breakfast, not the chicken. So with that, you guys have a nice evening. Take care.
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

BSOA | OFFICIAL TORT CLAIMANTS COMMITTEE TOWN HALL | eLitigation Services, Inc.    25
www.elitigationservices.com
310.230.9700 • els@elitigationservices.com



JWL

**Pachulski Stang Ziehl & Jones LLP**
LIMITED LIABILITY PARTNERSHIP
150 California Street, 15th Floor
San Francisco, CA 94111-4500

85353/002

T232-B-17LD





T232-B-17LD

JWL

**Pachulski Stang Ziehl & Jones LLP**
LIMITED LIABILITY PARTNERSHIP
150 California Street, 15th Floor

85353/002



Boy Scouts

SEP 24 2021

T232-B-1740

JWL
**Pachulski Stang Ziehl & Jones LLP**
LIMITED LIABILITY PARTNERSHIP
150 California Street, 15th Floor
San Francisco, CA 94111-4500

85353/002

9



Boy Scouts

T232-B-1740

JWL
**Pachulski Stang Ziehl & Jones LLP**
LIMITED LIABILITY PARTNERSHIP
150 California Street, 15th Floor
San Francisco, CA 94111-4500

85353/002

SEP 24 2021



PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES

September 9, 2021
Page 4

As to your claim, according to Omni Agent Solutions, you filed claim no. 101260 on January 26, 2021, which is after the November 16, 2020 claims bar date and an amended claim (no. 104755) on March 4, 2021.  As stated above, we are sending this letter to the attorney that you identify and state in your proofs of claim was retained by you.

Please do not hesitate to reach out with any further questions.

Very truly yours,

Robert M. Saunders

RMS
Enclosures
cc:    ▮▮▮▮▮▮▮▮▮▮▮ (without enclosures)
       Andrew Van Arnsdale, Esq.(without enclosures)



**PACHULSKI STANG ZIEHL & JONES**

LAW OFFICES
LIMITED LIABILITY PARTNERSHIP

LOS ANGELES, CA
SAN FRANCISCO, CA
WILMINGTON, DE
NEW YORK, NY
HOUSTON, TX

10100 SANTA MONICA BLVD.
13th FLOOR
LOS ANGELES
CALIFORNIA 90067

TELEPHONE: 310/277 6910
FACSIMILE: 310/201 0760

SAN FRANCISCO
150 CALIFORNIA STREET
15th FLOOR
SAN FRANCISCO
CALIFORNIA 94111-4500

TELEPHONE: 415/263 7000
FACSIMILE: 415/263 7010

DELAWARE
919 NORTH MARKET STREET
17th FLOOR
P.O. BOX 8705
WILMINGTON
DELAWARE 19899-8705

TELEPHONE: 302/652 4100
FACSIMILE: 302/652 4400

NEW YORK
780 THIRD AVENUE
34th FLOOR
NEW YORK
NEW YORK 10017-2024

TELEPHONE: 212/561 7700
FACSIMILE: 212/561 7777

TEXAS
440 LOUISIANA STREET
SUITE 900
HOUSTON
TEXAS 77002

TELEPHONE: 713/691-9385
FACSIMILE: 713/691-9407

WEB: www.pszjlaw.com

Robert M. Saunders          September 9, 2021          bsasurvivors@pszjlaw.com

<u>Via First Class Mail</u>

**LEGAL MAIL**

[redacted]

    Re:  <u>**Boy Scouts of America**</u>

Dear [redacted]

  The attorneys for the Official Committee of Tort Claimants (the "<u>TCC</u>") received your letter regarding the Boy Scouts of America ("<u>BSA</u>") bankruptcy case. Below is a general update on TCC's progress in the bankruptcy case.

  BSA reached a settlement (the "<u>Settlement</u>") with the Coalition for Abused Scouts for Justice (the "<u>Coalition</u>"), the Future Claims Representative ("<u>FCR</u>"), and the TCC regarding BSA's and the Local Councils' contributions to a trust (the "<u>Trust</u>") that will be used to fund distributions to the survivors holding valid claims. The Settlement has not yet been approved by the Bankruptcy Court and will be subject to the votes of survivors under the BSA's plan of reorganization (the "<u>Plan</u>"). The Settlement contemplates that BSA will contribute $250 million of cash and other property towards the Trust and the Local Councils are committed to raising $600 million of cash and real property.

  Please note that the Bankruptcy Court did <u>not</u> approve the Settlement during the hearings held on Aug 12-19. Instead, the Bankruptcy Court authorized BSA to enter into a "Restructuring Support Agreement" or an "RSA" that will be used as a framework for a Plan. By the RSA, BSA sought the Bankruptcy Court's authorization to abandon the agreement it reached with one of its primary insurers, Hartford. The TCC, FRC, and Coalition urged BSA to abandon the Hartford agreement because it did not provide enough cash for the claims covered by those insurance policies. The Bankruptcy Court instructed BSA that it can include or exclude the

DOCS_LA:337007.7 85353/002

10


September 9, 2021
Page 2

Hartford agreement in its Plan. The Bankruptcy Court has not approved the Hartford Agreement and the TCC will oppose the Hartford Agreement (and the Plan) if BSA intends to move forward with the Hartford Agreement in the Plan.

Separately, under the RSA, the Coalition requested that its attorneys' fees be paid by the BSA. The Bankruptcy Court refused to approve this request because the Coalition's bankruptcy attorneys did not show they had provided a "substantial contribution" or benefit to the BSA's bankruptcy process.

Importantly, the Settlement does not include BSA's insurers or Chartered Organizations (*i.e.*, the sponsoring organizations that were responsible for the formation of troops under a Local Council). At this juncture, no settlements have been reached with the insurers or Chartered Organizations, but the TCC remains in active mediation with these parties. In the event a settlement is reached with either, their contribution will be added to the Trust for the benefit of survivors with valid claims.

Payments to survivors cannot begin until after the Plan has been approved. The TCC does not expect the Plan to be approved until November or December of 2021. As discussed at a high-level in the enclosed Bankruptcy Plan 101 Presentation and Illustrative Timeline, the Plan process contains multiple steps, including (1) the approval of a disclosure statement for the Plan (the "Disclosure Statement"), which is a document that is used to described the terms of the Plan; (2) the mailing of the Plan, Disclosure Statement, ballot, and other documents to survivors or their counsel, who will then have the opportunity to vote on the Plan; and (3) the approval of the Plan itself by the Bankruptcy Court. To accommodate the continued mediation, the Court is currently scheduled to consider approval of the Disclosure Statement at a hearing on September 21, 2021.

If the Disclosure Statement is approved, the TCC expects that the hearing to consider the approval of the Plan will take place around 75 days after the September 21 hearing. Once the plan is approved and the Trust established, the Trustee will begin processing survivors' claims.

The TCC does not know how much any individual survivor might receive in compensation. At this stage, the Settlement only includes BSA and the Local Councils. If settlements are reached with insurers or Chartered Organizations, their contributions will be

DOCS_LA:337007.7 85353/002



PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES

███████

September 9, 2021
Page 3

added to the Trust. In addition, the allowance of claims will be subject to a "trust distribution procedure" or "TDP." The current form of the TDP is attached to the "RSA Motion," which is enclosed. The TDP is a set of proposed rules and procedures that outlines the process by which claims will be valued and ultimately allowed. The amounts that survivors might receive will be prescribed by the TDP and also by the amount of cash the Trust ultimately collects. The TDP has not yet been approved as it will be considered by the Court as part of the Plan. As a result, the TDP is subject to change until it is approved by the Court. After the Plan's approval, it will take some time for the settlement trustee to begin analyzing claims and making settlement proposals. In that regard, there is not a specific timeframe for when the settlement trustee will start making distributions to survivors.

Pachulski Stang Ziehl & Jones LLP is counsel to the TCC in the bankruptcy case, and we are not your individual counsel. Accordingly, we do not share an attorney-client relationship. We may provide information to you to the extent that we can, and are happy to do that for you. However, neither the TCC nor our Firm can comment on the elements of any specific claim or the methodology that might be applied to any claim under the Settlement. If you disagree with any aspect of the Settlement as embodied in the Plan or any other motion filed with the Court, you have the right to file an objection. Please consult your individual counsel regarding any such objection. We are sending this letter to the attorney that you identify and state in your proofs of claim was retained by you.

The TCC is preparing responses to "frequently asked questions" or "FAQs" regarding the Plan as part of the Disclosure Statement. The FAQs will be posted on www.pszjlaw.com/bsa after the Disclosure Statement has been approved, and will become available for mailing to you upon request by you. Additionally, the TCC will continue to hold informational Town Halls to provide continuing updates to all survivors and will post information about the Town Halls at www.pszjlaw.com/bsa.

Pursuant to your request, we are forwarding a copy of this letter (without its enclosures) to your mother at the address you provided. She may view and obtain the enclosures and other relevant materials at www.tccbsa.com. Such webpage also links to information regarding town hall meetings.

DOCS_LA:337007.7 85353/002

12



TO: US Bankruptcy Court
824 N. Market St.
Wilmington, Delaware 19801

U.S.M.S. X-RAY

LEGAL MAIL



TO: US Bankruptcy Court
824 N. Market St.
Wilmington, Delaware 19801

U.S.M.S. X-RAY

LEGAL MAIL