IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, <br><br> Debtors.[1] | Chapter 11 <br><br> Case No. 20-10343 (LSS) <br><br> (Jointly Administered) <br><br> Related Docket No. 8781 |

### THE OFFICIAL COMMITTEE OF TORT CLAIMANTS' OPPOSITION TO CERTAIN INSURERS' MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF MARK KOLMAN

The Official Committee of Tort Claimants (the "TCC") hereby objects (the "Objection") to *Certain Insurers' Motion in Limine to Exclude Opinion Testimony of the Official Committee of Tort Claimants' Witnesses Mark Kolman, Etc.* [Docket No. 8781] ("Br.").[2]  In support of the Objection, the TCC respectfully represents as follows:

### PRELIMINARY STATEMENT

1.　Certain Insurers rightfully devote little ink in their 14-page brief to their motion to exclude the testimony of Mark Kolman.  The few arguments they do make are strawman and *ad hominem* attacks on a distinguished and accomplished legal career.

2.　Claro was retained by the TCC to value, in the aggregate, the sexual abuse claims asserted against the Debtors and their related entities in these cases (the "Abuse

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of the Debtors' respective federal tax identification numbers, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Certain Insurers' motion also relates to the insurance allocation opinions of Katheryn McNally of The Claro Group, LLC ("Claro").  The deadline to object to the motion as is relates to Ms. McNally is February 25, 2022.  The TCC intends to object to the motion as it relates to the opinions of Ms. McNally.

1

Claims") and to calculate the general liability insurers' allocable shares of the Abuse Claim values under certain coverage and allocation methodology assumptions provided to them by counsel. Claro's primary focus relevant here was on allocations of its aggregate valuation with respect to the then existing "settling insurers," Hartford, Century and Zurich.

3. Claro performed specific insurance coverage calculations and allocations based upon actual, objective claims data and insurance policy particulars in order to determine each of the Certain Insurers' total contractual liability under the polices they each sold. But Claro is comprised of neither litigators nor coverage litigators and, therefore, is unable to opine on how subjective factors such as, for example, coverage defenses and litigation risk in a declaratory judgment action may reduce the Certain Insurers' coverage obligations. Mr. Kolman is a litigator and coverage litigator. He was retained ***by the TCC*** to provide that perspective, and to render an opinion about the extent to which Certain Insurers' coverage obligations ***should be reduced.*** Given that the deadline to disclose experts has passed, ***Mr. Kolman is the only individual in this case that has or can offer any such opinion***.

4. Certain Insurers do not argue that Mr. Kolman's opinions are incorrect but they also do not endorse them. Certain Insurers could have retained an expert of their own but also chose not to do that. Thus, Mr. Kolman offers the only testimony—expert or otherwise—regarding the factors that may reduce Certain Insurers' coverage obligations from their otherwise allocable shares and the extent to which they are to be reduced. However, because Mr. Kolman's analysis was primarily focused on the settling insurers, in light of the global Plan settlement, the TCC now has no present intention of

calling Mr. Kolman as a direct witness. The TCC does, however, reserve the right to call Mr. Kolman as a rebuttal witness should Certain Insurers invoke his report or testimony, or the absence thereof, at the Confirmation Hearing. Moreover, if Certain Insurers concede that they should be afforded no discounts, then Mr. Kolman's expert testimony would be rendered moot and the TCC will stipulate that no discounts are appropriate.

5.  For these reasons as discussed below, Certain Insurers' motion should be denied.

## STATEMENT OF FACTS

6.  Mr. Kolman spent 13 years of his legal career as a prosecutor which included significant litigation involving sexual abuse. Kolman Dep. Trans. 35:8-14. He also handled sexual abuse cases during an approximate "five or six years" of private practice. *Id.* Thereafter, the last 15 years of his career were spent as an insurance coverage litigator which included significant matters, in federal, state and bankruptcy courts. *See, e.g.*, *id.* at 50:7-51:17. As set forth in his report, Mr. Kolman spent approximately 45 years practicing law, during which he "served as a first-chair trial lawyer in more than 150 jury trials and more than 1,000 contested matters." Thus, Mr. Kolman is uniquely qualified to provide expert opinions regarding the discounts to be afforded to Certain Insurers from their allocated liability.

7.  Although Certain Insurers try to characterize Mr. Kolman's testimony as an irrelevant coverage opinion, he specifically testified that he is not giving "coverage opinions." *Id.* at 261:4-13. He opined on his "view of what a reasonable settlement would be with those nonsettling insurers." *Id.* at 262:7-9. He prepared a report and testified at length regarding his qualifications, experience, education, background, and

training, as well as his review and analysis of key documents in this case, all of which allowed him to formulate his opinions with a reasonable degree of certainty. The weight to be afforded his testimony is for this Court to decide. The admissibility of his testimony is unquestionable.

## ARGUMENT

I. **CERTAIN INSURERS BASE THEIR MOTION TO EXCLUDE MR. KOLMAN ON MISREPRESENTATIONS AND PERSONAL CHARACTER ATTACKS**

    A. **The Assertions of Bias are Meritless**

8. Evidencing true form over substance, Certain Insurers open their motion by suggesting that Mr. Kolman has some inherent bias or partiality because, during his legal career prior to retirement, he represented insureds (as opposed to insurers), and for a limited time was law firm partners with one of the TCC's coverage counsel.[3] Br. at 2. Not surprisingly, Certain Insurers cite no case for the proposition that a retired litigator now serving as an insurance expert must have represented both insureds and insurers during his career in order to be qualified to give expert testimony. Nor do Certain Insurers cite a case for the proposition that an expert is not qualified because he was law firm partners with one of the TCC's coverage counsel before retiring. In fact, under Delaware law, "prior retention by Plaintiff's counsel [of the same expert] is not initially relevant and admissible." *Ferrari v. Helsman Management Services, LLC*, 2020 WL 3429988, at *1-2 (Del. June 23, 2020). Thus, an expert being former partners with a lawyer associated with this case certainly is not the basis for an otherwise unsupported assertion of inherent bias and is not cause for exclusion.

    B. **Certain Insurers Misrepresent the Facts and Testimony**

---

[3] The "law-firm partner" to which Certain Insurers refer was at one of multiple offices maintained by that firm at that time and was on the opposite coast as Mr. Kolman.

9. Without a record citation, Certain Insurers state that "Mr. Kolman testified that he relied upon a set of legal assumptions that he received from the TCC's counsel." Br. at 3. Not so. The phrase "legal assumptions" is found nowhere in Mr. Kolman's 305 pages of testimony. Certain Insurers are presumably referring to the "memo" about which Mr. Kolman provided testimony. But contrary to their representation, Mr. Kolman specifically testified that he did not rely on it in forming his opinions:

> Q: Okay. And did you rely on this memo in forming your opinions, Mr. Kolman?
>
> A: **I did not rely on it in forming my opinions**. I relied on it to provide me information.
>
> Q: What information did you take from the memo in forming your opinions?
>
> A: Basically all of it. I mean, this was – this was my introduction to the case, and I read this first before I looked at coverage charts or spreadsheets or - or - policies or anything else. This was kind of an executive summary for me, **which I didn't rely on** because it's not fact, it's – it's – basically opinions of the counsel that hired me.

Kolman Dep. Trans. at 204:11-25 (emphasis added).[4]

## II. MR. KOLMAN'S OPINIONS ARE RELIABLE BECAUSE THEY ARE BASED ON PERSONAL, RELVANT EXPERIENCE

10. "An expert is qualified if 'the witness possess[es] specialized expertise. The United States Court of Appeals for the Third Circuit interprets the 'qualifications' requirements liberally, and has observed that 'a broad range of knowledge, skills, and training qualify an expert as such.'" *360Heros, Inc. v. GoPro, Inc.*, --- F. Supp. 3d ----, 2021 WL 5050879, at *2 (D. Del. Nov. 1, 2021) (citations omitted). In other words, "[t]he grounds for an expert's opinion 'merely have to be good, they do not have to be perfect'; thus, the standard for reliability is 'not that high.'" *Id.* (citation omitted).

---

[4] Mr. Kolman subsequently reaffirmed that testimony: "As I said, I did not rely on the . . . memo." *Id.* at 269:17-23.

11. Moreover, "[t]he Third Circuit and district courts within this Circuit have made clear that an expert's personal, relevant experience can serve as a foundation for reliability." *Id.* at *4 (noting that the expert's industry experience "appears to be real and multi-faceted" and that this experience was relied upon to form opinions). There is but one caveat: "If a witness is relying solely or primarily on experience, then the witness 'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for that opinion, and how that experience is reliably applied to the facts." *Integra Lifesciences Corp. v. HyperBranch Medical Technology, Inc.*, 2018 WL 1785033, at *6 (D. Del. Apr. 4, 2018) (citing Fed. R. Evid. 702 advisory committee's note to 2000 amendments).

12. The *Integra* court noted that the challenged expert provided "some explanation in his report as to why he came to this conclusion based on his personal experience, and he fleshed out additional details regarding that experience during his deposition." *Id*. In rejecting the argument that the expert's opinions were unreliable, the court concluded that, although his explanation "certainly could have been more robust, . . . concerns regarding the lack of data may be explored on cross-examination." *Id*. (citing *Figueroa v. Boston Sci. Corp.*, 254 F. Supp. 2d 361, 368-69 (S.D.N.Y. 2003) (finding that a lack of data to support an expert's opinions was not fatal to the admissibility of his testimony, where he had extensive experience, education and knowledge in the relevant field and also reviewed relevant literature, as an expert may base his opinion on experience alone and the lack of textual authority for the expert's opinion goes to the weight of the expert's testimony).

13.     So, too, in *Venator Materials Plc v. Tronox Limited*, 2022 WL 90211, at *3-5 (Del. Jan. 7, 2022), the court held that a lawyer who formerly lead the FTC's Bureau of Competition could provide expert testimony "based on his 'years of experience with the FTC.'" The court reached this conclusion notwithstanding the fact that he was not an economist, did not participate in economic modelling while at the FTC, and performed no economic modelling or analysis in reaching his opinion. *Id*. at *3.  The court further reaffirmed that the arguments supporting exclusion "ultimately go to the weight of his testimony and not to his qualifications as an expert" and because counsel is "free to highlight the weaknesses of [the expert's] analysis on cross examination, but not to exclude his testimony altogether." *Id*. at *5. *See also Personal Audio, LLC v. Google LLC*, 2021 WL 5038740, at *4 (D. Del. Oct. 25, 2021) (an expert "can surely rely upon this type of personal experience in order to draw reliable conclusions"); *Evans v. Imo Industries, Inc.*, 2019 WL 3253781, at *2 (D. Del. July 19, 2019) (qualified as an expert in Navy procurement procedures despite no experience ordering parts because witness was familiar with the process as a result of attending meetings on procurement issues); *Integra* at *6 (rejecting plaintiff's argument that an expert's opinion should be excluded because it was based on his own experience, where the expert "provided some explanation in his expert report as to why he came to this conclusion based on his personal experience").

14.     None of the purported challenges to Mr. Kolman's expert testimony are recognized under Delaware law.  He provided more than 300 pages of testimony during which he explained the opinions he rendered, the personal experience on which those opinions were formed, and all other details elicited by Certain Insurers at his deposition.  At best for Certain Insurers, all of their challenges go to the weight and not the admissibility of his testimony.

### III.    THE AUTHORITY RELIED UPON BY CERTAIN INSURERS IS INAPPOSITE

15. Certain Insurers cite authority for the general proposition that an expert should not render a legal opinion. Br. at 8 (citing *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 2167 (3d Cir. 2006). The TCC and Mr. Kolman agree. At his deposition, counsel stated that they were "not asking really for legal advice or conclusions. I'm just asking to understand what you have assumed." Kolman Dep. Trans. at 139:1-3. Mr. Kolman testified that he was neither "prepared" nor "qualified" to provide any legal conclusions and was not doing so. *Id*. at 138:23-25. *See also* 137:19-20 ("I will tell you the advice I was given but not the legal conclusion of it."). And counsel for Mr. Kolman objected to numerous deposition questions that were seemingly intended to elicit a legal conclusion. *See, e.g.*, 39:15-22; 65:3-13; 69:9-16; 88:19-24; 172:18-25.

16. Certain Insurers' argument that Mr. Kolman should be precluded from rendering a legal opinion is followed by their entirely contradictory position that he should be excluded for failing to "research or otherwise verify independently the legal assumptions provided to him." Br. at 8. *In re TMI Litig.*, 193 F.3d 613, 698 (3d Cir. 1999) on which Certain Insurers rely involved "medical summaries prepared from interviews conducted by nonprofessionals" and where the data supporting the expert opinion was specifically found to be unreliable. *Lyman v. St. Jude Med. S.C., Inc.*, 580 F. Supp. 2d 719 (E.D. Wis. 2008) involved an expert opinion based solely on summaries prepared by counsel.

17. Here, in contrast, Mr. Kolman's opinions are based in large part on his decades of personal, relevant experience which, as established above, is a proper basis on which to form expert opinions. *See also Crowley v. Chait*, 322 F. Supp. 2d 530 (D.N.J. 2004) (same).

18. The remaining cases cited by Certain Insurers also fail to support exclusion. Br. at 9 (citing *Liqwd, Inc. v. L'Oreal USA, Inc.*, 2019 WL 8014103 (D. Del. June 25, 2019) (holding

8

that the expert can testify but that if a party believes "he is testifying on any inappropriate matters that violate Rule 702 and *Daubert*, plaintiffs may make their objections at that time."); *Crawford v. George & Lynch, Inc.*, 2013 WL 6504361 (D. Del. Dec. 9, 2013) (holding that expert's report contained impermissible legal conclusions and applied no standard by which to consider discrimination policies and procedures); *McCrink v. People's Benefit Life Ins. Co.*, 2005 WL 730688 (E.D. Pa. Mar. 28, 2005) (involving "legal conclusion" and "interpretation of case law").

19.     Mr. Kolman offers no legal conclusions or analysis of case law. He relied solely on the BSA's coverage information provided to him and his decades of experience as a litigator, a litigator of sexual abuse cases, and a coverage litigator. An expert must support their conclusions with a generally accepted methodology. But courts in this Circuit routinely hold that the methodology can be based on decades of directly relevant experience such as the experience Mr. Kolman used to inform his opinions in this case.

*[Remainder of page intentionally left blank]*

**CONCLUSION**

20.    Based on the foregoing, Certain Insurers' motion should be denied in its entirety.

Date: February 17, 2022    PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Richard M. Pachulski (CA Bar No. 90073) (admitted *pro hac vice*)
Alan J. Kornfeld (CA Bar No. 130063) (admitted *pro hac vice*)
Debra I. Grassgreen (CA 169978) (admitted *pro hac vice*)
Iain A.W. Nasatir (CA Bar No. 148977) (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tele/Fax: (302) 652-4100 / (302) 652-4400
Email: rpachulski@pszjlaw.com
       akornfeld@pszjlaw.com
       dgrassgreen@pszjlaw.com
       inasatir@pszjlaw.com
       joneill@pszjlaw.com

-and-

PASICH LLP
Jeffrey L. Schulman (NY Bar No. 3903697)
(admitted *pro hac vice*)
286 Madison Avenue, Suite 401
New York, New York 10017
Telephone: (212) 686-5000
JSchulman@PasichLLP.com

*Counsel for the Tort Claimants' Committee*