## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Case No. 20-10343 (LSS) |
| Boy Scouts of America and Delaware BSA, LLC,[1] | Chapter 11 |
| Debtors. | Jointly Administered |
| | **Re: Docket No. 8823** |

### OBJECTION OF THE ROMAN CATHOLIC AD HOC COMMITTEE TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING SUPPLEMENTAL NOTICES REGARDING PLAN MODIFICATIONS

The Roman Catholic Ad Hoc Committee (the "RCAHC") hereby objects (the "Objection") to the above captioned debtors' and debtors in possession (the "Debtors") Motion for Entry of an Order Approving Supplemental Notices Regarding Plan Modifications [Docket No. 8823] (the "Material Modification Motion").  In support thereof, the RCAHC states as follows:

### INTRODUCTORY STATEMENT

1.      The Debtors have finally conceded that the serial amendments to the plan that was solicited for acceptances or rejections on September 20, 2021 (the "Solicited Plan") and which culminated in the plan currently on file, the Third Modified Fifth Amended Plan of Reorganization, filed on February 15, 2021 (the "Modified Plan"), have materially modified the Solicited Plan plan to such a degree that affected creditors, those in Classes 8 and 9, must be provided disclosure of the material modifications and a new opportunity to cast ballots accepting or rejecting the Modified Plan.

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

2.      In between those two plans, on December 18, 2021, the Debtors filed the Second

Modified Fifth Amended Plan of Reorganization (the "December 18 Plan"), for which no

disclosures were ever made to voting creditors or other non-parties whose independent rights and

property are being affected in these cases.

3.      At the February 11, 2022 hearing, the Court tentatively approved a new,

expedited schedule to move these cases to a confirmation hearing.  If all went according to plan,

creditors and non-parties would hopefully get 10 days' notice of (i) a supplemental objection

deadline, and (ii) for Class 9 Chartered Organizations, the opportunity to opt-out of the new

treatments in the Modified Plan.  In addition, Class 8 and Class 9 would get 17 days' notice of

the re-solicitation of votes.[2]

4.      That schedule was predicated on all plan and plan-related documents being filed

by midnight February 14, 2022.  The Debtors did not make that deadline.

5.      On February 15, the Court entered the order setting the new schedule.  At the

request of the RCAHC and the Certain Insurers, the order provided at paragraph 7 that "[n]othing

in this Order, nor the entry thereof, shall be construed as a finding or conclusion of the Court that

the revised deadlines set forth in this Order and notices contemplated by or issued pursuant to

this Order satisfy the Debtors' obligations under, *inter alia*, sections 1125 and 1127 of the

Bankruptcy Code and Bankruptcy Rule 2002. All parties reserve their rights to argue

compliance, or lack thereof, at the Confirmation Hearing."

---

[2]  It will never be known if Class 9 creditors originally cast their votes on the Solicited Plan or the December 18 Plan, which was materially modified to the benefit of almost all Chartered Organizations.  That makes the re-solicitation all the more important because it will be the only opportunity creditors have where one plan and one plan alone is the subject of their vote.

6.      It was the expectation of the RCAHC, and presumably the Court, that in exchange for the extremely limited time frame for supplemental objections and re-solicitation, the Debtors would immediately begin mailing out notices, the Modified Plan, and related documents following their filing, and the adequacy of notice and adequacy of disclosure would be taken up at the confirmation hearing.  See Feb. 11, 2022 Hr'g Tr. at 64:2-65:1.  Indeed, that was precisely why paragraph 7 was added to the February 15 Order—to enable the Debtors to mail everything out and reserve all parties' rights for the Confirmation Hearing.

7.      Instead, the Debtors chose to do nothing.  No notices have been sent.  Instead, they disregarded the February 15 Order, filed the Material Modification Motion and seek, on less than 72 hours' notice, the Court's prior approval of the adequacy of disclosure, adequacy of notice, and adequacy of re-solicitation procedures.

8.      This deliberate delay does not come at the expense of the estate.  It comes at the expense of the precious few days of notice Class 9 creditors and tens of thousands of non-parties had to make significant choices about plan treatment options, objections, and votes.  It comes at the expense of due process.

## OBJECTION

9.      The Court should deny the Material Modification Motion, direct the Debtors to send out whatever notice the Debtors deem appropriate in the manner the Debtors deem appropriate and then all parties' rights will be reserved for the Confirmation Hearing.  This is what the Court already ordered.

10.      To the extent that the Court is inclined to consider the Material Modification Motion, the RCAHC asserts that (i) the proposed disclosures inadequately describe the Modified Plan's treatment of Chartered Organizations; (ii) given the Debtors' delays in serving out notice,

the revised schedule is again inadequate; and (iii) the voting procedures provide too little time and are unclear.

**A.    The Proposed Disclosures are Inadequate**

11.    Any proper disclosure of the Modified Plan, in light of everything that had occurred in these cases in the last 6 months and what has been the subject of prior disclosure (the Solicited Plan) and what has not been the subject of prior disclosure (the December 18 Plan), should contain the following:

    a.  A plain English summary of the options available to Chartered Organizations under the Modified Plan.  A plain English summary that is not an advocacy piece authored to achieve the action or inaction that the Debtors desire.  Benefits, Burdens and Detriments.  For each option:

        i.  What Abuse Claims against them are being channeled;

        ii.  What releases are they being forced to give to Local Councils and Settling Insurers;

        iii.  What impact does the Modified Plan have on their independently purchased coverage and other independent property rights such as claims and causes of actions against non-debtors;

        iv.  What happens to their Indirect Abuse Claims;

        v.  The Settlement Trust will not pay claims for defense costs.

12.    The notice should fully disclose how each option has changed: from the Solicited Plan to the December 18 Plan to the Modified Plan.  Chartered Organizations, to make an informed decision about whether to support the Modified Plan, are entitled to see how the

Debtors' proposed treatment has changed over time and to come to their own conclusions over that evolving treatment.

13.     The notice should clearly state what the effect of an Opt-Out is: "**If you elect to Opt-Out, you will lose the full Post-1976 Channeling Injunction and, based on the terms of the Settling Insurer Injunction, Direct Abuse Claims against you <u>WILL NOT BE CHANNELED AND YOU WILL NOT RECEIVE A RELEASE OF THOSE CLAIMS FOR THE FOLLOWING YEARS:              .</u>**

14.     That is no longer an impossible request that requires a coverage opinion.  The Debtors have clarified to some extent the language of the Settling Insurer Injunction and the analysis only needs to be done from 1976-2020.  Representatives of the Debtors have testified that such an analysis has been done.  The Debtors have stated that this analysis is contained within the reports and charts prepared by Ms. Gutzler, their coverage expert.  All they need to do is to provide that information to those who need it most and have no access to it otherwise.

15.     Finally, the notice should disclose to Chartered Organizations that, under the Plan, the Settlement Trust and all Direct Abuse Claimants will have pre-approved authority under Bankruptcy Rule 2004 to take any discovery of Chartered Organizations they wish, without any court oversight as to the propriety of the discovery (other than perhaps protection of privileges).

**B.  The Notice Periods Are Inadequate**

16.     Unfortunately, the Debtors' deliberate delay now casts into doubt at a Constitutional, due process level, the adequacy of notice being provided to Class 9 creditors and the 30,000+ non-party Chartered Organizations affected by the Modified Plan.

17.     There can be no mistake, the Debtors' decision to file the Material Modification Motion and to seek Court approval to re-open voting is an admission that there has been a material modification something that requires re-solicitation.[3]

18.     The Court must also be cognizant that the notice package will be thousands of pages thick.  That is if the Debtors chose to include the relevant settlement agreement Exhibits that undergird and, in some cases, control, the Modified Plan.  That voluminous package will then be entrusted to the United States Postal Service with First Class Mail and no guarantee as to how timely it will be received, especially given their performance during the pandemic.

19.     Even assuming three business day service, Wednesday February 23, 2022 would be the day Chartered Organizations would actually get receive notice, if the Debtors were to mail the notices out on Friday, February 18, 2022.  And as the Court is aware, the vast majority of the 50,000+ Chartered Organizations affected by the Modified Plan are unsophisticated faith based and civic volunteers unrepresented by counsel in these cases.

20.     Chartered Organizations would then have 2 days' notice of the supplemental objection deadline and the new opt-out deadline.

21.     Class 9 Chartered Organizations would have 9 days' notice to cast ballots on the Modified Plan.

22.     Those time periods would be inadequate for large financial institutions who regularly participate in bankruptcy cases.  They are troublingly inadequate for unsophisticated non-profits who volunteered their space and time to the Debtors.  Imagine the secretary of the

---

[3]  While the Debtors say that they also move pursuant to Bankruptcy Rule 3019, that rule excuses re-solicitation and deems prior acceptances to remain acceptances when there has been no adverse change to a creditors' treatment.  The request to re-open voting is fundamentally at odds with that rule.  Moreover, once adequate information is provided, it will be beyond peradventure that Chartered Organizations are being adversely treated as compared to the Solicited Plan and the December 18 Plan.

local Kiwanis Club in Iowa who stops by Wednesday afternoon to check the mail and gets hundreds of pages of legal documents, filled with single spaced legalese.  Is it reasonable to expect that they could make an informed decision whether to object, opt-out, or vote?

### C.  The Re-Solicitation Procedures Are Inadequate

23.     For Class 9 Chartered Organizations who do wish to cast a ballot in response to the Modified Plan, the Debtors effectively silence those votes.

24.     At best, there may be 9 days to cast a vote.  No ballots are being provided.  If a Chartered Organization wants to vote it must request a new pre-populated ballot from Omni.  A self-filled out blank ballot will not be permitted.  The Debtors do not say how long it will take to make the request to Omni, much less how Omni will transmit that new ballot.

25.     There are no instructions as to how the ballot must be returned.

26.     On a related topic, it is unclear what the Debtors intend to do with votes that they have already received after the December 28, 2021 voting deadline.  Presumably ballots disregarded as late-filed will now be counted, but who is to say?

*[Remainder of Page Left Intentionally Blank]*

WHEREFORE, the RCAHC respectfully requests that the Court enter an order granting the relief requested herein, denying the Debtors' Material Modification Motion, and for such other and further relief as the Court deems just and proper.

Dated: February 17, 2022
Wilmington, Delaware

Respectfully submitted,

**POTTER ANDERSON & CORROON LLP**

/s/ *Jeremy W. Ryan*
Jeremy W. Ryan (Bar No. 4057)
Aaron H. Stulman (Bar No. 5807)
1313 N. Market Street, 6th Floor
Wilmington, DE 19801-6108
Telephone:  (302) 984-6000
Facsimile:  (302) 658-1192
Email:  jryan@potteranderson.com
astulman@potteranderson.com

- and -

**SCHIFF HARDIN LLP**

Everett Cygal, *admitted pro hac vice*
David Spector, *admitted pro hac vice*
J. Mark Fisher, *admitted pro hac vice*
Neil Lloyd, *admitted pro hac vice*
Daniel Schufreider, *admitted pro hac vice*
Jin Yan, *admitted pro hac vice*
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
Telephone:  (312) 258-5500
Facsimile:  (312) 258-5600
Email: ecygal@schiffhardin.com
dspector@schiffhardin.com
mfisher@schiffhardin.com
nlloyd@schiffhardin.com
dschufreider@schiffhardin.com
jyan@schiffhardin.com

*Counsel for the Roman Catholic Ad Hoc Committee*