# **<u>EXHIBIT A</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Ref. D.I. ____** |

## ORDER APPROVING FORM AND MANNER OF NOTICE OF
## SUPPLEMENTAL DISCLOSURE REGARDING PLAN MODIFICATIONS

Upon the motion (the "Motion")[2] of the Debtors for entry of an order (this "Order"),

pursuant to sections 105(a), 1125 and 1127(c) of title 11 of the United States Code, 11 U.S.C.

§§ 101–1532 (the "Bankruptcy Code") and rule 3019 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), approving the Supplemental Notices with respect to the

Modified Plan; and this Court having jurisdiction to consider the Motion in accordance with 28

U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court

for the District of Delaware, dated February 29, 2012; and the Court having found that this is a

core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Debtors having consented to entry of

a final order by this Court under Article III of the United States Constitution; and the Court having

found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C.

§§ 1408 and 1409; and appropriate notice of and opportunity for a hearing on the Motion having

been given and no other or further notice being necessary; and upon the record herein; and all

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

objections, if any, to the Motion having been withdrawn, resolved or overruled; and the relief requested in the Motion being in the best interests of the Debtors' estates, their creditors and other parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      The Class 8 Supplemental Notice and Chartered Organization Supplemental Notice, substantially in the forms attached hereto as **Exhibit 1** and **Exhibit 2**, respectively, are approved as containing "adequate information" within the meaning of section 1125 of the Bankruptcy Code with respect to the modified plan terms incorporated into the Modified Plan.

3.      The procedures for and manner of the distribution of the Class 8 Supplemental Notice and Chartered Organization Supplemental Notice to potentially affected creditors and acceptance of votes on or before the Limited Extended Voting Deadline, as set forth in the Motion, are approved.

4.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

5.      The Disclosure Statement Order shall remain in full force and effect; *provided*, *however*, in order for a new vote submitted in connection with the Limited Extended Voting Deadline to control and supersede a prior vote, it must be submitted pursuant to one of the approved solicitation methods set forth in the Disclosure Statement Order.

6.      The Debtors are authorized to take all action necessary or appropriate to effectuate the terms of and the relief granted in this Order without seeking further order of this Court.

7.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## <u>Exhibit 1</u>

**Class 8 Supplemental Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | Ref. D.I. [●] |

**NOTICE OF SUPPLEMENTAL VOTING DEADLINE OF**
**MARCH 4, 2022 AT 4:00 P.M. (EASTERN TIME) FOR HOLDERS OF**
**CLASS 8 DIRECT ABUSE CLAIMS AND LIMITED DISCLOSURE REGARDING**
**CHANGES IN DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On February 15, 2022, Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), filed the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 8813] (together with all exhibits, schedules and attachments thereto, the "Modified Plan")[2] with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

2.      The Modified Plan reflects the terms of a proposed settlement among the Debtors and certain other parties in interest, including the official committee representing abuse survivors (the "TCC"), Coalition of Abused Scouts for Justice, Future Claimants' Representative, Ad Hoc Committee of Local Councils, and the Pfau/Zalkin claimants [D.I. 8772] (the "TCC/Abuse Survivor Settlement"). The TCC/Abuse Survivor Settlement is further supported by numerous state court counsel for abuse survivors who are now actively recommending that their clients who voted to reject the Plan change their votes to accept the Modified Plan. As described below, other parties in interest continue to oppose confirmation of the Modified Plan. Copies of the Modified Plan and all related documents are available for review and download at no charge on the Debtors' case website at https://omniagentsolutions.com/BSA.

3.      In accordance with the *Order (I) Amending and Scheduling Certain Supplemental Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization and (II) Approving a Limited Supplemental Voting Deadline for Class 8 Direct Abuse Claims and Class 9 Indirect Abuse Claims* [D.I. 8830], the Bankruptcy Court has set a limited extended voting

---

[1]      The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Modified Plan or the Trust Distribution Procedures.

deadline of **March 4, 2022 at 4:00 p.m. (Eastern Time)** (the "Limited Extended Voting Deadline") for holders of Class 8 Direct Abuse Claims or their representatives to submit Ballots modifying their votes on the Modified Plan.  **IF YOU DO NOT WANT TO CHANGE YOUR PRIOR VOTE ON THE PLAN, YOU DO NOT NEED TO DO ANYTHING AT THIS TIME.**  Other than the Limited Extended Voting Deadline, all other Solicitation Procedures approved by the Bankruptcy Court shall remain in effect.

4.      Holders of Class 8 Direct Abuse Claims or their representatives may request a new Ballot from the Solicitation Agent, Omni Agent Solutions, at (a) bsaballots@omniagnt.com, or (b) calling the Debtors' toll-free restructuring hotline at 866-907-2721, or (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.  **For the avoidance of doubt, parties must use the pre-populated Ballot from Omni Agent Solutions containing each claimant's unique ballot ID, name, and claim number in order to submit a Ballot modifying their vote on the Modified Plan.**  All materials and instructions regarding submitting a Ballot and Modified Plan materials are available at no charge on Debtors' case website at https://omniagentsolutions.com/bsa-SAballots.

5.      Ballots must be delivered to the Solicitation Agent (a) via the electronic Ballot submission platform on the Solicitation Agent's website (the "E-Ballot Platform") by visiting https://omniagentsolutions.com/bsa-SAballots and following the instructions set forth on the website, or (b) at the address listed below.  You are highly encouraged to submit your Ballot via the E-Ballot Platform.  If you choose to submit your Ballot via the E-Ballot Platform, you should NOT submit a hard copy Ballot.

| If by E-Ballot Platform: | If by standard or overnight mail or personal delivery: |
|---|---|
| https://omniagentsolutions.com/bsa-SAballots | **Boy Scouts of America Ballot Processing**<br>**c/o Omni Agent Solutions**<br>**5955 De Soto Avenue, Suite 100**<br>**Woodland Hills, CA 91367** |

6.      The hearing to consider whether to confirm the Modified Plan will be held on **March 9, 2022 at 10:00 a.m. (Eastern Time)** (the "Confirmation Hearing") before the Honorable Laurie Selber Silverstein at the United States Bankruptcy Court for the District of Delaware. Please be advised that the Confirmation Hearing may be adjourned or continued from time to time by the Bankruptcy Court without further notice other than as indicated in any notice or agenda of matters scheduled for a particular hearing that is filed with the Bankruptcy Court or by being announced in open court.  If the Confirmation Hearing is continued, the Debtors will post the new date and time of the Confirmation Hearing at https://omniagentsolutions.com/BSA.

7.      Counsel representing holders of Class 8 Direct Abuse Claims are authorized, but not required, to modify their preferred solicitation method with respect to their clients holding Class 8 Direct Abuse Claims in accordance with the Solicitation Procedures.  Counsel must contact the Solicitation Agent at bsaballots@omniagnt.com in order to obtain Ballots or Master Ballots and to notify the Solicitation Agent of a change in the firm's chosen solicitation method.

8.    This document is intended to assist holders of Direct Abuse Claims in understanding their rights under the Modified Plan.  It is not comprehensive and does not describe every fact, issue, or consideration that may be relevant to a holder of a Direct Abuse Claim under the Modified Plan.  **You should consult with your legal counsel and read the Modified Plan and Disclosure Statement, including the "Risk Factors" in Article X of the Disclosure Statement, in their entirety.  If there are inconsistencies between this document and the terms of the Modified Plan, the Modified Plan governs.**

## SUMMARY OF MODIFIED PLAN CHANGES

9.    The following is a summary of changes to the Modified Plan with respect to Class 8 holders of Direct Abuse Claims.  Please review the Modified Plan for a full and complete description of its terms and your options and rights thereunder.

- Modifications to the Plan on account of the TCC/Abuse Survivor Settlement primarily relate to the governance of the Settlement Trust, agreements related to Youth Protection measures (Exhibit L to the Modified Plan), a modification to allow holders of Direct Abuse Claims to participate in an independent review procedure under the Trust Distribution Procedures, a modification to the scope of the releases for certain Chartered Organizations, and clarifications to certain Plan terms, such as the definition of "Abuse Claim."  A redline of the "Abuse Claims" definition that shows the changes made to this definition in the Modified Plan and that includes the new "Mixed Claims" defined term is attached hereto as **Exhibit A**.  The changes made to the definitions clarify that Claims unrelated to Scouting fall outside the scope of an "Abuse Claim" for purposes of the Modified Plan, including the Channeling Injunction and releases.  A "Mixed Claim" is a claim that makes allegations of Abuse related to or arising from Scouting as well as Abuse unrelated to or not arising from Scouting.  Any portion of a Mixed Claim that is unrelated to Scouting will not be treated as an "Abuse Claim" under the Modified Plan.

- Under the Modified Plan, the BSA will implement changes to further strengthen its Youth Protection procedures in all Scouting programs. The BSA's Youth Protection program changes, include, among others: (1) hiring a Youth Protection executive with extensive experience in prevention of childhood abuse, (2) formation of a Youth Protection Committee composed of abuse survivors, the BSA, Local Councils, and Chartered Organizations, and (3) a review and update of existing policies (e.g., background checks). The BSA will also appoint a survivor to serve on the National Executive Board of the BSA, and has recommended that a survivor be added to serve on their local council boards.

- Importantly, the Trust Distribution Procedures have been revised to provide holders of Direct Abuse Claims with the option to elect to have an independent, neutral third party determine the amount a jury might award for their claim, which will be used to determine the amount of the claim against the BSA and other Protected Parties up to a maximum of five times the maximum value associated with that category of Direct Abuse Claim under the Trust Distribution Procedures.

- As such, holders of Direct Abuse Claims can choose to liquidate their claims pursuant to the Claims Matrix previously included in the Trust Distribution Procedures, or, to the

extent they wish to do so they can choose to participate in the Independent Review Process, as is now set forth therein. In order to participate in the Independent Review Process, holders of Direct Abuse Claims must pay all costs associated with this review and post $10,000 at the time of the election, and an additional $10,000 immediately prior to the an independent, neutral third party's review to cover such costs. The Settlement Trustee will have the discretion to waive the administrative fees based on the circumstances of the claimant. The Settlement Trust will maintain a separate Excess Award Fund for the sole purpose of funding the portion of awards granted under the Independent Review Process that are greater than $1 million. The Excess Award Fund will be funded with the Settlement Trust's collection of certain insurance policy proceeds from non-settling excess insurance companies. Direct abuse claimants will have until January 1, 2023 to elect to participate in the Independent Review option.

- Funds collected from non-settling insurance companies will be allocated between the holder of a Direct Abuse Claim, the Excess Award Fund, and the general fund based on specific criteria set forth in the Trust Distribution Procedures. For example, a substantial portion (initially, 80%) of any global settlement with an excess insurance company will be contributed to the Excess Award Fund. The Debtors and other supporting parties believe that the independent review process provides a mechanism for survivors with certain significant claims and/or the Settlement Trust to pursue excess insurers that should provide coverage for such claims.

- The Modified Plan also incorporates the compromise and settlement of all claims and disputes the Debtors have, or may have, against the Tort Claimants' Committee and its Representatives, including Pachulski Stang Ziehl & Jones LLP ("PSZJ"), regarding the alleged improper transmittal of communications from Timothy Kosnoff, Esq. by PSZJ to thousands of survivors from the TCC's email address, many of whom were not clients of Mr. Kosnoff, and related actions. Upon the Effective Date (a) the TCC and its professionals shall be Exculpated Parties herein and (b) PSZJ shall (i) make a cash contribution of $1,250,000 to the Reorganized BSA to be reserved for the Youth Protection Program and (ii) writeoff $750,000 of PSZJ's fees. This modification does not impact PSZJ's statutory obligations with respect to its fees, and parties' rights related thereto.

- Class 10 is composed solely of the equity interest in Delaware BSA, a wholly-owned subsidiary of the BSA. The Modified Plan was revised to treat the BSA's equity interest in Delaware BSA as unimpaired and reinstates this equity interest to the BSA on the Effective Date. This modification provides greater optionality for the timing of the dissolution of this entity. The Debtors believe this modification is immaterial to and has no effect on claimant recoveries.

10.     The Modified Plan is opposed by certain third parties, including a group of non-settling insurers, who have opposed the Plan on several grounds, including that the Plan was not proposed in good faith by the Debtors or the other supporting parties [D.I. 8793]; the objectors believe those objections have not been resolved by the Modified Plan and, in fact, the objectors believe that the modifications made by the Modified Plan exacerbate the problems that they originally identified and raise new confirmation issues. In addition, certain Chartered

Organizations (including the Roman Catholic Ad Hoc Committee (*see* D.I. 8796), and the U.S. Trustee (*see* D.I. 8710) oppose confirmation of the Plan.  Objecting parties reserve and do not waive their right to object to confirmation of the Modified Plan and the solicitation of votes on such Plan and disclosures with respect to such solicitation.  Because the Court has not yet considered or ruled on these objections, confirmation of the Modified Plan cannot be assured.

11.    The Debtors, TCC, Coalition of Abused Scouts for Justice, Future Claimants' Representative, Ad Hoc Committee of Local Councils, and the Pfau/Zalkin claimants, as well as certain state court counsel representing a majority of holders of Direct Abuse Claims, believe these changes to the Plan, Plan Documents, and Trust Distribution Procedures are beneficial to the holders of Direct Abuse Claims. As such, each of these parties supports confirmation of the Modified Plan and encourages holders of Direct Abuse Claims to change their votes and/or to vote in favor of the Modified Plan.

Dated: February [●], 2022

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email: mandolina@whitecase.com
          mlinder@whitecase.com
          laura.baccash@whitecase.com
          blair.warner@whitecase.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@morrisnichols.com
          aremming@morrisnichols.com
          ptopper@morrisnichols.com

*Attorneys for the Debtors and Debtors in Possession*

## **Exhibit A**

**Changes to "Abuse Claims" and Addition of "Mixed Claims" Defined Terms**

"**Abuse Claim**" means a liquidated or unliquidated Claim against a Protected Party (including the Settling Insurance Companies), a Limited Protected Party, or an Opt-Out Chartered Organization or any of their respective Representatives (in their capacities as such) that is attributable to, arises from, is based upon, relates to, or results from, ~~in whole or in part,~~ directly, indirectly, or derivatively, alleged Scouting-related Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, alter ego, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based upon, or directly or indirectly related to any insurance relationship, the provision of insurance or the provision of insurance services to or by any Protected Parties, or misrepresentation, concealment, or unfair practice, breach of fiduciary duty, public or private nuisance, gross negligence, willful misconduct, or any other theory, including any theory based on or related to public policy or any act or failure to act, or failure to warn by a Protected Party, a Limited Protected Party, an Opt-Out Chartered Organization, any of their respective Representatives (in their capacities as such) or any other Person for whom any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization is alleged to be responsible (including any such Claim that has been asserted or may be amended to assert in a proof of claim alleging Abuse, whether or not timely filed, in the Chapter 11 Cases, or any such Claim that has been asserted against the Settlement Trust), including any proportionate or allocable share of liability based thereon.  Abuse Claims include any Future Abuse Claims, any Indirect Abuse Claims, any Opt-Out Chartered Organization Abuse ~~Claims,~~Claim and any other Claim that is attributable to, arises from, is based upon, relates to, or results from, alleged Scouting-related Abuse regardless of whether, as of the Petition Date, such Claim was barred by any applicable statute of limitations.  For the avoidance of doubt, ~~no~~ (i) a Claim alleging Abuse shall not be an "Abuse Claim" against a Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any of their respective Representatives if such Claim is unrelated to Scouting (except as provided in (iii) below, including the portion of any Mixed Claim that is unrelated to Scouting); (ii) a Claim alleging Abuse shall be an "Abuse Claim" against a Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any of their respective Representatives (in their capacity as such) if such Claim is ~~wholly unrelated~~related to Scouting~~; provided, further, that any~~ (including the portion of any Mixed Claim that is related to Scouting); (iii) any portion of a Mixed Claim alleging Abuse involving the Debtors, Reorganized BSA, Non-Debtor Entities, Local Councils, ~~and each of their~~TCJC, or their respective Representatives~~,~~ (in their capacities as such) is necessarily Scouting-related and shall be considered an Abuse Claim; and (iv) any Claim against the Debtors, Reorganized BSA, Non-Debtor Entities, Local Councils, or their respective Representatives (in their capacities as such) alleging Abuse is necessarily Scouting-related and shall be considered an Abuse Claim.

"**Mixed Claim**" means a claim that makes allegations of Abuse related to or arising from Scouting as well as Abuse that occurred prior to the Petition Date unrelated to or not arising from Scouting.  A claim shall not be treated as a Mixed Claim unless and until Scouting-related Abuse allegations have been asserted through a Proof of Claim, the complaint, sworn discovery or testimony (including by affidavit).

**Exhibit 2**

**Chartered Organization Supplemental Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | Ref. D.I. [●] |

**SUPPLEMENTAL DISCLOSURE REGARDING PLAN MODIFICATIONS
AND SUMMARY OF CHARTERED ORGANIZATIONS' OPTIONS UNDER THE
DEBTORS' MODIFIED CHAPTER 11 PLAN OF REORGANIZATION, OPT-OUT
ELECTION PROCEDURES FOR PARTICIPATING CHARTERED ORGANIZATIONS,
AND SUPPLEMENTAL VOTING DEADLINE OF MARCH 4, 2022 AT 4:00 P.M.
(EASTERN TIME) FOR HOLDERS OF CLASS 9 INDIRECT ABUSE CLAIMS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.    On February 15, 2022, Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), filed the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 8813] (together with all exhibits, schedules and attachments thereto, the "Modified Plan")[2] with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Modified Plan reflects the terms of a proposed settlement among the Debtors and certain other parties in interest, including the official committee representing abuse survivors (the "TCC"), the Coalition of Abused Scouts for Justice, the Future Claimants' Representative, the Ad Hoc Committee of Local Councils, and the Pfau/Zalkin claimants [D.I. 8772] (the "TCC/Abuse Survivor Settlement"). The TCC/Abuse Survivor Settlement is further supported by the agreement of numerous state court counsel for abuse survivors to recommend to their clients who voted to reject the Plan to change such clients' votes to accept the Modified Plan.

2.    This document is intended to assist Chartered Organizations in understanding their rights under the Modified Plan. It is not comprehensive and does not describe every fact, issue, or consideration that may be relevant to a Chartered Organization under the Plan. **You should consult with your legal counsel and read the Modified Plan and Disclosure Statement, including the "Risk Factors" in Article X of the Disclosure Statement, in their entirety. If**

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Modified Plan.

**there are inconsistencies between this document and the terms of the Modified Plan, the Modified Plan governs.**

3.      This document contains the following:

(a)      Summary of the terms of the Modified Plan and the three options under the Modified Plan for Chartered Organizations.

(b)      Instructions and deadlines regarding submitting supplemental objections to the Modified Plan and voting on the Modified Plan, for those parties that filed Proofs of Claim and/or previously voted on the Plan, and that would like to change their vote.

(c)      An opt-out election form, which a Chartered Organization may use to "opt-out" of becoming a "Participating Chartered Organization" under the Modified Plan (Option #3 described below).  **Please read this document, the Disclosure Statement, and the Modified Plan before you decide whether to complete the opt-out election**.

## SUMMARY OF MODIFIED PLAN CHANGES

Under the September 30, 2021 version of the Plan and the Modified Plan, the third party releases of Chartered Organizations are substantially the same.  At the time, the only Settling Insurance Company was Hartford and the only Contributing Chartered Organization was TCJC.  The Modified Plan now includes settlements with several additional insurance companies, the United Methodist Entities, the TCC, and many state court counsel.

As a result of these settlements, the insurance assignments and Channeling Injunctions in the Modified Plan now include that (i) in exchange for a broader Channeling Injunction, Participating Chartered Organizations must assign their independent insurance issued by Settling Insurance Companies covering Abuse Claims, but only to the extent such claims relate to Scouting, and (ii) the Channeling Injunction for Opt-Out Chartered Organizations will apply to Abuse Claims covered by Settling Insurance Companies, and in addition will apply to Abuse Claims covered by Settling Insurance Companies under insurance policies issued to Chartered Organizations.

Under the December 18, 2021 version of the Plan, certain supplemental contributions from the Local Councils and the BSA entitled certain Chartered Organizations to potential protections against all Scouting-related Abuse Claims as Contributing Chartered Organizations/Protected Parties under the Channeling Injunction.  These additional contributions are now being treated as consideration for the proposed extension of the preliminary injunction for Limited Protected Parties following the Effective Date of the Modified Plan for twelve months, subject to potential extension.  Chartered Organizations will be required to make a separate monetary contribution in order to become Contributing Chartered Organizations under the Modified Plan, as set forth below.

The Modified Plan continues to provide a framework for the comprehensive resolution for historical Scouting-related Abuse Claims against the BSA and the Local Councils, and certain

claims against Chartered Organizations, similar to what was included in the solicitation version of the prior Plan.  The following is a summary of changes to the Modified Plan.  Please review the Modified Plan for a full and complete description of its terms and your options and rights thereunder.

- The Modified Plan contains clarifications to certain Plan terms, such as the definition of "Abuse Claim."  A redline of the "Abuse Claims" definition that shows the changes made to this definition in the Modified Plan and that includes the new "Mixed Claims" defined term is attached hereto as **Exhibit A**.  The changes made to the definitions clarify that Claims unrelated to Scouting fall outside the scope of an "Abuse Claim" for purposes of the Plan, including the Channeling Injunction and releases.  A "Mixed Claim" is a claim that makes allegations of Abuse related to or arising from Scouting as well as Abuse unrelated to or not arising from Scouting.  Any portion of a Mixed Claim that is unrelated to Scouting will not be treated as an "Abuse Claim" under the Modified Plan.

- Under the Modified Plan, the BSA will implement changes to further strengthen its Youth Protection procedures in all Scouting programs. The BSA's Youth Protection program changes, include, among others: (1) hiring a Youth Protection executive with extensive experience in prevention of childhood abuse, (2) formation of a Youth Protection Committee composed of abuse survivors, the BSA, Local Councils, and Chartered Organizations, and (3) a review and update of existing policies (e.g., background checks). The BSA will also appoint a survivor to serve on the National Executive Board of the BSA, and has recommended that a survivor be added to serve on their local council boards.

- The Modified Plan also incorporates the compromise and settlement of all claims and disputes the Debtors have, or may have, against the Tort Claimants' Committee and its Representatives, including Pachulski Stang Ziehl & Jones LLP ("PSZJ"), regarding the alleged improper transmittal of communications from Timothy Kosnoff, Esq. by PSZJ to thousands of survivors from the TCC's email address, many of whom were not clients of Mr. Kosnoff, and related actions.  Upon the Effective Date (a) the TCC and its professionals shall be Exculpated Parties herein and (b) PSZJ shall (i) make a cash contribution of $1,250,000 to the Reorganized BSA to be reserved for the Youth Protection Program and (ii) write off $750,000 of PSZJ's fees.  This modification does not impact PSZJ's statutory obligations with respect to its fees, and parties' rights related thereto.

- Class 10 is composed solely of the equity interest in Delaware BSA, a wholly-owned subsidiary of the BSA.  The Modified Plan was revised to treat the BSA's equity interest in Delaware BSA as unimpaired and reinstates this equity interest to the BSA on the Effective Date. This modification provides greater optionality for the timing of the dissolution of this entity. The Debtors believe this modification is immaterial to and has no effect on claimant recoveries.

- Under the Modified Plan, the Settlement Trust and holders of Direct Abuse Claims are authorized pursuant to Bankruptcy Rule 2004 and/or other applicable discovery rules to obtain information from Participating and Opt-Out Chartered Organizations as set forth in the Document Appendix.  For the avoidance of doubt, the authorization of any

discovery request pursuant to this provision shall not be construed to deprive the recipient of such discovery request of any applicable privilege or immunity from discovery. The Settlement Trust and holders of Direct Abuse Claims shall be able to take whatever steps are necessary to enforce such discovery obligations of Participating and Opt-Out Chartered Organizations pursuant to Bankruptcy Rule 2004, Civil Rule 45, other court resolution processes, and under bankruptcy law and applicable non-bankruptcy law.

## SUMMARY OF OPTIONS FOR CHARTERED ORGANIZATIONS UNDER MODIFIED PLAN

In addition, there are three options for Chartered Organizations under the Modified Plan, which are summarized below. Depending on the option a Chartered Organization chooses, the following may be affected: (i) the amount of protection a Chartered Organization may receive from Abuse Claims asserted against the Chartered Organization; (ii) the scope of the releases that a Chartered Organization provides to various parties, including Settling Insurance Companies; and (iii) how a Chartered Organization's Indirect Abuse Claims, if any, are addressed. Here is a summary of these three options:

***Option #1 – Participating Chartered Organization/Limited Protected Party***: Unless a Chartered Organization affirmatively chooses Option #2 or Option #3 below (including by objecting to the Modified Plan), the Modified Plan will deem the Chartered Organizations to be a Participating Chartered Organization. The Modified Plan provides:

a. **Protection from Direct Abuse Claims**: All 1976-forward Abuse Claims against Participating Chartered Organizations will be channeled to the Settlement Trust and abuse survivors will release the Participating Chartered Organizations for such claims. Additionally, all pre-1976 Abuse Claims against Participating Chartered Organizations for which there is insurance issued by a Settling Insurance Company[3] will also be channeled to the Settlement Trust and abuse survivors will release Chartered Organizations for such claims. Abuse survivors will not be able to assert Scouting-related Abuse Claims that are channeled to the Settlement Trust directly against Participating Chartered Organizations. This does not impact claims against Participating Chartered Organizations that are unrelated to Scouting.

The Modified Plan also provides that all Participating Chartered Organizations will receive the protection of a twelve-month injunction from prosecution of Abuse Claims beginning on the Effective Date (subject to further extension) to afford Participating Chartered Organizations an opportunity to negotiate an appropriate contribution with the Settlement Trust to become a Contributing Chartered Organization.

b. **BSA and Local Council Insurance**: In exchange for all 1976-forward Abuse Claims against the Participating Chartered Organizations being channeled to the Settlement Trust and abuse survivors releasing the Participating Chartered Organizations for such claims, the Participating Chartered Organizations will voluntarily release their rights to

---

[3] The Settling Insurance Companies under the Plan, at present, include Century and the Chubb Companies, Hartford, the Hartford Protected Parties, the Zurich Insurers, the Zurich Affiliated Insurers and Clarendon.

any insurance policies issued to the BSA or Local Councils by the Settling Insurance Companies, and the Modified Plan may assign or otherwise provide for the Settlement Trust to sell those policies back to the Settling Insurance Companies.[4]  Similarly, because all Abuse Claims (pre- and post-1976) covered by policies issued by a Settling Insurance Company will be channeled to the Settlement Trust, Participating Chartered Organizations will release any rights to coverage under any insurance policies issued by a Settling Insurance Company for such Abuse Claims. Otherwise, Participating Chartered Organizations will retain whatever rights they previously had (to the extent such rights exist) in all pre-1976 BSA and Local Council insurance policies. Participating Chartered Organizations must also assign, among other things, any causes of action against non-settling insurance companies related to Abuse Claims that first occurred on or after January 1, 1976.

    c.   **Chartered Organization Insurance**: Abuse Claims against Participating Chartered Organizations will be released and channeled to the Settlement Trust if a Settling Insurance Company issued a liability policy (other than an automobile policy or director's and officer's policy) that does not specifically exclude abuse or molestation to a Participating Chartered Organization, and a claimant alleges abuse during the period of that policy.  In exchange for the benefits of this release and Channeling Injunction, Participating Chartered Organizations will voluntarily release the Settling Insurance Companies from these Abuse Claims.  Participating Chartered Organizations retain all rights for abuse claims unrelated to Scouting under policies issued by Settling Insurance Companies.  Participating Chartered Organizations retain all rights for any claims (both related and unrelated to Scouting) under independent insurance policies issued by non-settling insurance companies.

    d.   **Indirect Abuse Claims**:  In exchange for the protections of the channeling injunction, all Indirect Abuse Claims are voluntarily waived.

    ***Option #2 – Contributing Chartered Organization/Protected Party***: TCJC and United Methodist Entities have made, in the Debtors' opinion, a substantial contribution and are currently being treated as Contributing Chartered Organizations under the Modified Plan.  All other Chartered Organizations may negotiate with the BSA and abuse claimant representatives (or the Settlement Trustee after the Effective Date of the Modified Plan) to make a substantial monetary contribution to the Settlement Trust and become Contributing Chartered Organizations under the Modified Plan.  If they do so, they will receive the following protections from Scouting-related Abuse Claims:

    a.   **Protection from Direct Abuse Claims**:  All Abuse Claims against a Contributing Chartered Organization will be channeled to the Settlement Trust.  The Contributing Chartered Organization will also be released from all Abuse Claims.  Claims that are unrelated to Scouting will not be channeled or released.

---

[4]   As a result, to the extent the Participating Chartered Organizations do not have their own insurance coverage for such claims, they may have to incur defense costs to enforce the release and Channeling Injunction.

b. **Insurance**: In exchange for Abuse Claims being released and channeled to the Settlement Trust, Contributing Chartered Organizations will voluntarily release their rights to any insurance policies issued to the BSA or the Local Councils, and the Modified Plan may assign or otherwise provide for the Settlement Trust to access such insurance rights. Likewise, Contributing Chartered Organizations will release their rights to any insurance policies issued by Settling Insurance Companies with respect to coverage for Abuse Claims. Contributing Chartered Organizations' rights under insurance policies issued to them directly are preserved for claims unrelated to Scouting.

c. **Indirect Abuse Claims**: In exchange for the protections of the channeling injunction, all Indirect Abuse Claims are voluntarily waived.

*Option #3 – Opt Out*: Chartered Organizations can "opt out" from Option #1 by objecting to the Modified Plan, including by being a member of an ad-hoc group or committee that objects to the Modified Plan, or following the instructions provided below this summary. **By doing so, an Opt-Out Chartered Organization will forfeit the benefits of the releases and injunctions that are automatically provided to Participating Chartered Organizations as follows:**

a. **Protection from Direct Abuse Claims**: Opt-Out Chartered Organizations will remain liable for all Abuse Claims regardless of whether such Abuse Claims arose before or after January 1, 1976; provided, however, Abuse Claims against Opt-Out Chartered Organizations will be channeled to the Settlement Trust if a Settling Insurance Company issued a liability policy (other than an automobile policy or director's and officer's policy) that does not specifically exclude abuse or molestation (i) to the BSA or a Local Council that includes the Opt-Out Chartered Organization, or (ii) directly to the Opt-Out Chartered Organization for the period that a claimant alleges to have been abused. To allow Opt-Out Chartered Organizations to determine the non-settled insurance coverage available, the Debtors are providing information reflecting the post-1976 settled and non-settled BSA insurance policies and Local Council insurance policies, each of which include coverage to Opt-Out Chartered Organizations for Abuse Claims, at https://omniagentsolutions.com/bsa-ballots. **The Debtors' insurance expert shall hold an information session for all interested Chartered Organizations to discuss post-1976 BSA and Local Councils insurance on February 24, 2022 at 2:00 p.m. (Eastern Time) via videoconference at** https://whitecase.zoom.us/j/97250539348?pwd=VXNlQ3pkVzZtMXl5WjFYSmltam x3UT09 **(Meeting ID: 972 5053 9348, Passcode: 397772).**

b. **Insurance**: Opt-Out Chartered Organizations will retain rights in BSA and Local Council insurance policies except for any rights in insurance policies issued by any Settling Insurance Company, which policies are being sold back to the Settling Insurance Companies. **Opt-Out Chartered Organizations (and Settling Insurance Companies) are not releasing any rights under any insurance policies issued directly to Opt-Out Chartered Organizations. However, all parties may enforce and rely upon the release and channeling of Abuse Claims against the Chartered Organizations otherwise provided in the Modified Plan.**

c. **Indirect Abuse Claims**: All Indirect Abuse Claims, including against the Debtors and the Local Councils, will be preserved and channeled to the Settlement Trust.

For the avoidance of doubt, any abuse survivor that chooses to receive an Expedited Distribution (a one-time payment of $3,500 from the Settlement Trust) continues to automatically release *all* Chartered Organizations with respect to that Abuse Claim under the Modified Plan, regardless of which option a Chartered Organization chooses under the Modified Plan.  And Chartered Organizations will also still receive the benefit of this release even if they elect to "opt out" of being a "Participating Chartered Organization."

**If you would like to be treated as a Participating Chartered Organization/Limited Protected Party under the Modified Plan, you <u>do not</u> need to take any action.  Option #1 (Participating Chartered Organization/Limited Protected Party status) is the default option under the Plan.**

**If you would like to be treated as an Opt-Out Chartered Organization under Option #3, you must (a) complete and return the opt-out election form attached hereto on or before [March 4], 2022, or (b) file an objection to the Modified Plan, including by being a member of an ad-hoc group or committee that objects to the Plan,  on or before <u>February 25, 2022</u>.[5]**

**If you previously submitted an opt-out election form or provided notice in writing to the Debtors that want to opt out of the Plan, and you wish to withdraw your prior opt-out election, you <u>must</u> notify the Debtors in writing that you are withdrawing your prior opt-out and would like to be treated as a Limited Protected Party under the Modified Plan.  You may select this option on the opt-out election form attached hereto or submit a writing to the Debtors indicating that your Chartered Organization wants to be treated as a Limited Protected Party to the following:**

| <u>If by Email Submission:</u> | <u>If by standard or overnight mail or personal delivery:</u> |
|---|---|
| **BSACOoptout@OmniAgnt.com** | **BSA Chartered Organization Opt-Out Election Form c/o Omni Agent Solutions 5955 De Soto Avenue, Suite 100 Woodland Hills, CA 91367** |

**ANY OPT-OUT ELECTIONS FOR ANY CHARTERED ORGANIZATION SUBMITTED IN CONNECTION WITH ANY PRIOR VERSION OF THE PLAN WILL REMAIN IN EFFECT UNLESS THE DEBTORS RECEIVE NOTICE IN WRITING THAT A CHARTERED ORGANIZATION WISHES TO WITHDRAW ITS PRIOR**

---

[5]    Any Chartered Organization that is a debtor in  bankruptcy as of the Confirmation Date shall be treated as an Opt-Out Chartered Organization unless it advises Debtors' counsel in writing that it wishes to be a Participating Chartered Organization.

**OPT-OUT ELECTION ON OR BEFORE THE BEGINNING OF CONFIRMATION HEARING OR THEREAFTER WITH CONSENT OF THE DEBTORS.**

## OBJECTING TO THE MODIFIED PLAN

All objections to the Modified Plan must be filed on or before **February 25, 2022**.  Copies of the Modified Plan, the Plan Supplement, and other Plan-related documents may be accessed, free of charge, at https://omniagentsolutions.com/BSA.  To the extent the Debtors make further revisions, the Debtors will file further redlined copies of such revised documents on the docket in these chapter 11 cases.

The Modified Plan is opposed by certain third parties, including a group of non-settling insurers, who have opposed the Plan on several grounds, including that the Plan was not proposed in good faith by the Debtors or the other supporting parties [D.I. 8793]; the objectors believe those objections have not been resolved by the Modified Plan and, in fact, the objectors believe that the modifications made by the Modified Plan exacerbate the problems that they originally identified and raise new confirmation issues.  In addition, certain Chartered Organizations (including the Roman Catholic Ad Hoc Committee (*see* D.I. 8796), and the U.S. Trustee (*see* D.I. 8710) oppose confirmation of the Plan.  Objecting parties reserve and do not waive their right to object to confirmation of the Modified Plan and the solicitation of votes on such Plan and disclosures with respect to such solicitation.  Because the Court has not yet considered or ruled on these objections, confirmation of the Modified Plan cannot be assured.

## VOTING ON THE MODIFIED PLAN

Only those parties that filed an Indirect Abuse Claim (Class 9) had the right to vote on the Plan.  In accordance with the *Order (I) Amending and Scheduling Certain Supplemental Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization and (II) Approving a Limited Supplemental Voting Deadline for Class 8 Direct Abuse Claims and Class 9 Indirect Abuse Claims* [D.I. 8830], the Bankruptcy Court has set a limited extended voting deadline of **March 4, 2022 at 4:00 p.m. (Eastern Time)** (the "Limited Extended Voting Deadline") for holders of Class 9 Indirect Abuse Claims or their representatives to submit Ballots modifying their votes on the Modified Plan.  **IF YOU DO NOT WANT TO CHANGE YOUR PRIOR VOTE ON THE PLAN, YOU DO NOT NEED TO DO ANYTHING AT THIS TIME.**  Other than the Limited Extended Voting Deadline, all other Solicitation Procedures approved by the Bankruptcy Court shall remain in effect.

Class 9 holders of Indirect Abuse Claims or their representatives may request a new Ballot from the Solicitation Agent, Omni Agent Solutions, at (a) bsaballots@omniagnt.com, or (b) calling the Debtors' toll-free restructuring hotline at 866-907-2721, or (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.  **For the avoidance of doubt, parties must use the pre-**

**populated Ballot from Omni Agent Solutions containing each claimant's unique ballot ID, name, and claim number in order to submit a Ballot modifying their vote on the Plan.** All materials and instructions regarding submitting a Ballot and Plan materials are available at no charge on Debtors' case website at https://omniagentsolutions.com/bsa-ballots.

Ballots must be delivered to the Solicitation Agent (a) via the electronic Ballot submission platform on the Solicitation Agent's website (the "E-Ballot Platform") by visiting https://omniagentsolutions.com/bsa-ballots and following the instructions set forth on the website, or (b) at the address listed below. You are highly encouraged to submit your Ballot via the E-Ballot Platform. If you choose to submit your Ballot via the E-Ballot Platform, you should NOT submit a hard copy Ballot.

| If by E-Ballot Platform: | If by standard or overnight mail or personal delivery: |
|---|---|
| https://omniagentsolutions.com/bsa-ballots | Boy Scouts of America Ballot Processing<br>c/o Omni Agent Solutions<br>5955 De Soto Avenue, Suite 100<br>Woodland Hills, CA 91367 |

The hearing to consider whether to confirm the Modified Plan will be held on **March 9, 2022 at 10:00 a.m. (Eastern Time)** (the "Confirmation Hearing") before the Honorable Laurie Selber Silverstein at the United States Bankruptcy Court for the District of Delaware. Please be advised that the Confirmation Hearing may be adjourned or continued from time to time by the Bankruptcy Court without further notice other than as indicated in any notice or agenda of matters scheduled for a particular hearing that is filed with the Bankruptcy Court or by being announced in open court. If the Confirmation Hearing is continued, the Debtors will post the new date and time of the Confirmation Hearing at https://omniagentsolutions.com/BSA.

Dated: February [●], 2022

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: jessica.lauria@whitecase.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: mandolina@whitecase.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Email: dabbott@morrisnichols.com
aremming@morrisnichols.com
ptopper@morrisnichols.com

9

mlinder@whitecase.com
laura.baccash@whitecase.com
blair.warner@whitecase.com

**THIS OPT-OUT ELECTION FORM IS NOT A BALLOT OR A SOLICITATION OF YOUR VOTE TO ACCEPT OR REJECT THE PLAN.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

### PARTICIPATING CHARTERED ORGANIZATION OPT-OUT ELECTION FORM

Pursuant to Article V.S.1 of the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 8813] (the "Modified Plan"), you are entitled to "opt out" of being treated as a Participating Chartered Organization/Limited Protected Party[2] under the Modified Plan if you (1) object to Confirmation of the Modified Plan pursuant to the procedures set forth in the *Notice of Hearing to Consider Confirmation of Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* on or before [**February 25, 2022**] or (2) complete and submit this Opt-Out Election Form on or before [**March 4], 2022**.[3]

**If you would like to be treated as a Participating/Chartered Organization Limited Protected Party under the Plan, you do <u>not</u> need to take any action and should not complete this form.  <u>Limited Protected Party status is the default option under the Plan.</u>**

**ANY OPT-OUT ELECTIONS FOR ANY CHARTERED ORGANIZATION SUBMITTED IN CONNECTION WITH ANY PRIOR VERSION OF THE PLAN WILL REMAIN IN EFFECT UNLESS THE DEBTORS RECEIVE NOTICE IN WRITING THAT A CHARTERED ORGANIZATION WISHES TO WITHDRAW ITS PRIOR OPT-OUT ELECTION ON OR BEFORE THE BEGINNING OF CONFIRMATION HEARING OR THEREAFTER WITH CONSENT OF THE DEBTORS.**

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

[3]   Any Chartered Organization that is a debtor in bankruptcy as of the Confirmation Date shall be treated as an Opt-Out Chartered Organization unless it advises Debtors' counsel in writing that it wishes to be a Participating Chartered Organization.

**SELECT ONLY <u>ONE</u> OF THE FOLLOWING OPTIONS.**

☐    **My Chartered Organization elects <u>not</u> to be treated as a Participating Chartered Organization/Limited Protected Party under the Plan.**

   **- or -**

☐    **My Chartered Organization previously elected not to be treated as a Participating Chartered Organization/Limited Protected Party under the Plan. My Chartered Organization wishes to <u>withdraw</u> that election and be treated as a Participating Chartered Organization/Limited Protected Party.**

   **COMPLETE THE FOLLOWING INFORMATION AND SIGN YOUR OPT-OUT FORM.**

| | |
|---|---|
| Name of Chartered Organization: | _____ |
| Printed Name and Title | _____ |
| Signature: | _____ |
| Address: | _____ |
| | _____ |
| | _____ |
| Date: | _____ |

   If you elect to opt out of treatment as a Limited Protected Party under Article V.S.1 of the Plan, please complete this form and return it by email submission or first-class mail so that it is received on or before [**March 4], 2022** at one of the following:

| **<u>If by Email Submission:</u>** | **<u>If by standard or overnight mail or personal delivery</u>:** |
|---|---|
| **BSACOoptout@OmniAgnt.com** | **BSA Chartered Organization Opt-Out Election Form c/o Omni Agent Solutions 5955 De Soto Avenue, Suite 100 Woodland Hills, CA 91367** |