## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

BOY SCOUTS OF AMERICA AND
DELAWARE BSA, LLC,

Debtors.[1]

Chapter 11

Case No. 20-10343 (LSS)

(Jointly Administered)

Re: Docket No. 8772



## EMERGENCY MOTION OF PRO-SE CLAIMANT NUMBERS SA████ & SA████ FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 105, 1103, 1125, AND 1126 OF THE BANKRUPTCY CODE APPOINTING A PLAN VOTING OMBUDSPERSON AND GRANTING RELATED RELIEF

Pro-Se Claimant Numbers SA████ & SA████ (*Pro-Se Claimant*) hereby

moves (the "Motion"), for entry of an order, substantially in the form attached hereto as **Exhibit**

**A** (the "Proposed Order"), appointing a plan voting ombudsperson for the benefit of all survivor

claimants and granting related relief in the above-entitled cases (the "Bankruptcy Cases"). In

support of its Motion, the Pro-Se Claimant respectfully represents as follows:

### Preliminary Statement

1.      What has become clear – particularly as a result of recent discovery – is that even

before, the 02 February 2022, Boy Scouts of America, LLC. (20-10343) – Service of Eleventh

Mediator's Report [Docket No. 8772] due to a variety of circumstances, there was widespread

confusion and mistrust developing among survivors regarding plan voting, as further detailed

hereinafter, with aggravating the situation. To remedy this ongoing problem and to minimize the

possibility that any of these circumstances will cause further voter confusion, further voter

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

confusion, or lead to expensive plan resolicitation or efforts to designate votes, the Pro-Se

Claimant hereby moves for an order of the Court directing the Office of the United States Trustee

to appoint an independent ombudsperson (the "Voting Ombudsperson"), as a resource and

problem-solver for survivor questions and concerns that have arisen and may arise in the future in

connection with voting on the Debtors' Plan (as defined below), and for related relief.[2]

2.      Specifically, the Pro-Se Claimant seeks entry of an order pursuant to sections

105(a), 1103(c), 1125 and 1126 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the

"Bankruptcy Code") directing the Office of the United States Trustee[3] to appoint an independent

ombudsperson authorized, inter alia, to serve, as set forth in Paragraph 10 below and generally, as

a neutral resource for survivors to contact in the event they have any confusion about the plan

voting process, or are encountering difficulties obtaining a ballot or critical information they need

to make an informed decision on casting their ballot for or against the Plan.

3.      The undersigned Pro-Se Claimant also asks that the Solicitation Procedures Order

(as defined hereinafter) be modified to extend the Confirmation Hearing by a minimum of four

weeks to allow for the Voting Ombudsperson process to be implemented.(4)

---

[2] In the event the Court determines that there is insufficient statutory authority to require the Office of the United States Trustee to appointment the Voting Ombudsperson, the Pro-Se Claimant requests that the Court undertake such appointment.

[3] *See* fn. 2, infra.

[4] The Pro-Se does not intend by this Motion to foreclose parties from seeking further relief associated with Election and Plan Confusion, rather the Pro-Se Claimant is choosing to focus here on ameliorating concerns directly related to plan balloting, voting , and confirmation. To ensure the plan process stays on course, an issue of primary importance to all.

4.     The Pro-Se Claimant's goal is to minimize the risk the Plan will have to be resolicited and to ensure that no survivor is at risk of having their vote disenfranchised, particularly through no fault of their own, as a result of the demonstrable problems with the voting process.  While the Court could rely upon its powers to order a resolicitation of the plan or to designate votes, the Pro-Se Claimaint hopes that appointment of the Voting Ombudsperson will reduce these possibilities in light of the anticipated multi-million dollar cost to complete a second plan solicitation[6] and the harsh outcome vote designation would generate for survivors. As such, the relief requested herein would be beneficial and in the best interest of the survivors and the estates.  A Voting Ombudsperson will protect the integrity of the voting process, provide assistance to survivors, promote transparency and provide the Court and all parties with greater confidence in the voting result – no matter the outcome. As this Pro-Se Claimant Objects to the 02 February 2022, Boy Scouts of America, LLC. (20-10343) – Service of Eleventh Mediator's Report [Docket No. 8772]  (The TCC Term Sheet.)

5.     Several troubling aspects of the voting process have come to the Pro-Se Claimant's attention. One major area of confusion has arisen in connection with the thousands of survivors represented by attorneys operating without complete BSA Document Discovery, False Voting Tabulation and Perjured Certification. These survivors are being represented law firms that are now obviously at war with each other and advocate diametrically opposed courses of action with respect to the Plan.

6.     Indeed, a substantial number of survivors ostensibly represented by these firms are commonly experiencing confusion and frustration regarding the plan voting process generated by missing facts. Notably, survivor correspondence filed on the docket, reflects frustration with

---

[6] The Plan proponents have previously indicated that completing solicitation of the Plan cost approximately $4.2 million for the solicitation agent alone  – an enormous expense that the estates should take measures now to avoid.

voting and confusion. Survivor correspondence requesting that the Court take remedial measures to address balloting problems (e.g. issue new ballots to address ballot irregularities and related concerns).  From these communications, it is obvious that law firms have not provided a clear or collaborative communication regarding the plan vote. Beyond this, survivors have been exasperated by an "electronic ballot" (or "e-ballot") presented by one law firm to survivors which "ballot" reportedly fails to accurately record votes or other key balloting information and appears to have been dispersed without the approval of  any Court authority.

7. It is apparent that voter confusion is pervasive based on the evidence offered with this Motion. Which does not address the situation present here where multiple law firms and creditors will also be confused by the 02 February 2022, Boy Scouts of America, LLC.

(20-10343) – Service of Eleventh Mediator's Report [Docket No. 8772](8)

---

[8] *See* Model Code of Prof'l Responsibility EC 5-12 (1983) ("Inability of co-counsel to agree on a matter vital to the representation of their client requires that their disagreement be submitted by them jointly to their client for his resolution, and the decision of the client shall control the action to be taken."); *see also* Canons of Professional Ethics 7 (1969) ("When lawyers jointly associated in a cause cannot agree as to any matter vital to the interest of the client, the conflict of opinion should be frankly stated to him for his final determination.").

8.      In recent hearings, with voting now under way, the Court expressed the concern that the most important point to focus on is the integrity of the voting process. This Motion aims to eliminate concerns directly related to plan balloting and voting to ensure the plan process stays on course. However, protecting the franchise of survivors and ameliorating confusion in the voting process requires taking additional steps.

9.      Mindful of the Court's concerns, the Pro-Se Claimant puts forward further measures to remediate any voter confusion during the plan voting process. Appointing an independent Voting Ombudsperson will provide survivors with a neutral resource to contact with questions about the voting process and to clear up confusion of any kind they are experiencing. The Voting Ombudsperson also could serve generally as an "information clearinghouse" for survivors and a resource to the Court to enhance the integrity of the voting process. At the same time, ensuring the faith of survivors in the Plan approval process via the Voting Ombudsperson now will help avoid any need to resolicit votes on the plan which would be an expensive and time-consuming development.

10.     Appointing an independent Voting Ombudsperson will aid in the conduct of a more orderly voting process, and provide a sounding board for survivors with questions about their ballots and the communications they have received generally about the Plan. In particular, the Pro-Se Claimant requests as follows:

a. The Voting Ombudsperson should be directed to work with survivors issues. The Voting Ombudsperson shall immediately inform the Court of the Voting Ombudsperson's inability to achieve such cooperation from the Debtors, Debtors Counsel, OmniAgents, Secured Creditors, BSA Professionals, the TCC Counsel, Insurers, Local Councils, Charter Organizations, or Survivor Lawyers, and all other participating parties needed to resolve survivor issues.

b. The Voting Ombudsperson should be directed to send a letter to survivors to contact their legal counsel with any questions regarding the voting process and, in the event they do not have counsel, that they may contact the Voting Ombudsperson to review and discuss the voting concerns. As

c. The Voting Ombudsperson should be authorized to discuss with any survivor the voting process in the event a survivor contacts the Voting Ombudsperson.

d. The Voting Ombudsperson should be authorized and available to resolve survivor's voting concerns or confusion in the event any other party seeks relief from the Court to expand the Voting Ombudsperson's role at the direction of the Court.

11.     In this way, any confusion existing among survivors can be resolved.

### Background

12.     On February 18, 2020 (the "Petition Date"), the Debtors filed voluntary petitions in this Court commencing cases for relief under chapter 11 of the Bankruptcy Code.

13.     Also on the Petition Date, the Debtors filed a plan and associated disclosure statement. During the subsequent nearly two years, the Debtors filed a series of amended plans and disclosure statements, the most recent of which is (the "Plan") *or Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 7832].  _____

## Argument

**A.    THE APPOINTMENT OF A PLAN VOTING OMBUDSPERSON IS CLEARLY WITHIN THE COURT'S POWERS GRANTED IN SECTIONS 105, 1103, 1125 AND 1126 OF THE BANKRUPTCY CODE**

14.    Section 1103(c) of the Bankruptcy Code states in relevant part that an official committee may:

> (3) participate in the formulation of a plan, advise those represented by such committee of such committee's determinations as to any plan formulated, and collect and file with the court acceptances or rejections of a plan. …
>
> (5) perform such other services as are in the interest of those represented.

11 U.S.C. § 1103(c).

15.    Sections 1125 and 1126 of the Bankruptcy Code generally govern plan solicitation and voting issues.  In particular, section 1126 of the Bankruptcy Code spells out the requirements for plan voting and empowers the Court to designate votes. 11 U.S.C. section 1126(e).

16.    Section 105(a) of the Bankruptcy Code allows the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title . . . shall be construed to preclude the court from taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules." 11 U.S.C. § 105(a).

17.    Section 105(a) has been interpreted to expressly empower bankruptcy courts with broad equitable powers to "craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain." *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir.

8

2003) (*en banc*).  Although not limitless, this section has also been construed to give bankruptcy courts authority to provide equitable relief appropriate to assure the orderly conduct of bankruptcy proceedings. *See, e.g.*, *In re Combustion Engineering, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004).

18.    The powers granted the Court under section 105 are broadly designed to address precisely the relief sought by this Motion (*i.e.*, remedies to protect the integrity, and ensure the orderly conduct of, the plan voting process).  Absent the installation of a Voting Ombudsperson, potentially thousands of survivors will be left with unanswered questions when attempting to navigate the voting process here, and their votes are at risk of unnecessarily being designated. The appointment of a Voting Ombudsperson would go a long way towards resolving these concerns by giving all survivors a neutral resource to address their voting and balloting inquiries. In this manner, it is hoped that the Court will be able to provide all constituencies and the Court itself with the comfort that survivors are able to cast their vote on the Plan in an informed manner.

19.    The record reflects confusion among survivors regarding issues such as the identity of their counsel, what to do about electronic ballot issues,and how to proceed in the face of this conflicting 02 February 2022, Boy Scouts of America, LLC. (20-10343) – Service of Eleventh Mediator's Report [Docket No. 8772]. Absent a Voting Ombudsperson and the related relief herein requested, it is clear that survivors will be left with a voting process that fails to address their key concerns and leaves them open to a obtuse opposing factions – an outcome that has taken root here. It benefits no constituency to have a voting process hampered by confusion and potential distrust among survivors. Rather, this juncture provides an opportunity to install

an ombudsperson who can serve the interests of survivors and simultaneously ensure the integrity of the voting process.

## Notice

20.      Notice of this Motion will be provided to (a) the Debtors; (b) the Office of the United States Trustee; (c) counsel to the Official Committee of Unsecured Creditors; (d) counsel to the Future Claimants' Representative; (e) counsel to the Coalition; (f) counsel to the Ad Hoc Committee of Local Councils; and (g) all parties requesting notice in the Bankruptcy Cases pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.  The Pro-Se Claimant submits that no other or further notice is necessary under the circumstances. (Supplemental evidence exhibits to follow.)

## Conclusion

WHEREFORE, for the reasons set forth herein, the Pro-Se Claimant respectfully requests that the Court grant the relief requested herein and enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, directing the United States Trustee to appoint a Plan Voting Ombudsperson, and for such other and further relief as is just and proper under the circumstances.

Date: February 10, 2021          **PRO-SE CLAIMANT NUMBERS SA-▇▇▇ & SA▇▇▇▇**

Email: ▇▇▇▇▇▇▇▇

# **Exhibit A**

Proposed Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| | (Jointly Administered) |
| Debtors.[1] | Ref. Docket No. ____ |

## ORDER APPOINTING VOTING OMBUDSPERSON AND GRANTING RELATED RELIEF

Upon the motion (the "Motion") of Pro-Se Claimant Numbers SA-███ & SA-███ in the above-captioned chapter 11 cases, for entry of an order appointing a Voting Ombudsperson and granting related relief, as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 § 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and this Court having held a hearing to consider the relief requested in the Motion and other related issues; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors,

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is granted as set forth herein.

2.      The Office of the United States Trustee shall appoint an independent and disinterested ombudsperson (the "Voting Ombudsperson") to undertake the tasks described in the Motion including, without limitation, those described in Paragraph 10 therein.

3.      The reasonable fees billed and costs, as approved by this Court and incurred by the Voting Ombudsperson to further remediate voting confusion in respect of the Plan, shall be borne as proposed by the Debtor.

4.      The *Order (I) Scheduling Certain Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization, (II) Establishing Certain Protocols, and (III) Granting Related Relief* shall be modified to extend the Voting and Confirmation Hearing set forth therein to allow for the Voting Ombudsperson process to be implemented.

5.      The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: February_____, 2022

_____
LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY CHIEF JUDGE

2