**HOGAN♦MCDANIEL**
*ATTORNEYS AT LAW*

1311 Delaware Avenue
Wilmington, Delaware 19806

Daniel K. Hogan, Esquire
Telephone  (302) 656-7540
Facsimile   (302) 656-7599

Email: dan@dkhogan.com

February 22, 2022

**VIA CM/ECF**
Chief Judge Laurie Selber Silverstein
United States Bankruptcy Court, District of Delaware
824 North Market Street, 6th Floor
Wilmington, DE 19801

      RE:    *In re: Boy Scouts of America*, Case No. 20-10343 LSS
               Response in Opposition to Certain Insurers' Motion to Compel Eisenberg
               Rothweiler to Produce Documents filed on February 17, 2022

Dear Judge Silverstein:

      I write on behalf of Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. ("ER"), responding in opposition to the *Certain Insurers' Motion to Compel Eisenberg Rothweiler to Produce Documents*, dated February 17, 2022 [D.I. No. 8880] (the "Motion")[1]. We oppose the Certain Insurers' ("Insurers") Motion to compel ER to produce documents, withheld on the basis of privilege in response to the Insurers' subpoena dated October 26, 2021 (the "Subpoena"). The Insurers' motion seeks to compel production of ER's client files, communications with clients, internal memoranda, and particularly, interview notes with clients, which contain, in graphic detail, the horrific abuse suffered by the sexual abuse survivors (the "Survivors").

      The Insurers would have the Court rule on the Motion in a vacuum, giving no consideration to the fact that ER has detailed the materials withheld on privilege with particularity, that two ER attorneys have been extensively deposed by the Insurers, and that ER has answered all of the questions surrounding the claims generation process and ER's intake processes, the articulated purpose of this discovery. Despite this extensive discovery, the Insurers have continually pressed for more. Demanding that ER hand over all of their communications with its clients, including the details surrounding client intake procedures, communications with clients, and the work product that is manifested in the case management software utilized by ER. The harassment cannot be further countenanced by the Court and the Motion should be denied.

**BACKGROUND**

      Since the Debtors filed for bankruptcy, the Insurers have attacked the state court professionals and the law firms that represent the vast majority of Survivors. On November 5, 2021, ER served responses and objections ("R&O") to the Subpoena and asserted the attorney-client privilege and the work product doctrine. The parties engaged in extensive meet and confer

---

[1] *See* Insurers' Omnibus Motion to Compel Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C., Slater Slater Schulman LLP, Napoli Shkolnik, PLLC, Krause & Krause Law Firm, Andrews & Thornton, Attorneys at Law, and ASK LLP (the "Law Firms") to Respond to Document Requests and Interrogatories (*see* Dkt. 7239) (the "Motion to Compel").

conferences to narrow the issues. On November 17, 2021, ER served the Insurers with supplemental responses and objections, as well as with a privilege log (the "ER Initial Privilege Log"), which was predicated on the Subpoena that originally sought discovery related to all of ER's, approximately 16,000, clients who have asserted Survivor claims.[2]

At the hearing on December 2, 2021, the Court ruled that "the generation of these claims could be relevant information… So based on the plan that is in front of me for confirmation I find that information to be relevant." *See* Dec. 2, 2021 Hr'g Tr. at 70:9-12. As a result, the Court ordered ER to produce documents for samples of claims ("Sample Claims") as opposed to all claims related to the firm. *See* Dec. 2, 2021 Hr'g Tr. at 97:6-118:7. The Insurers were to identify the Sample Claims by claim number and name of claimant. At the same hearing, the Court ruled that ER should produce exemplars of each versions of the authorizations. *See* Dec. 2, 2021 Hr'g Tr. at 94:20-25.[3] Importantly, the Court also limited the Insurers to notice one (1) deposition from ER. *See* Dec. 2, 2021 Hr'g Tr. at 85:10-17. Notwithstanding the Court's ruling, on December 17, 2021, the Insurers noticed the deposition of Ken Rothweiler and on December 20, 2021 the Insurers identified Stewart Eisenberg as the representative of ER to be deposed regarding the soliciting, drafting, and submitting proofs of claims, and related subjects.

On January 22, 2022, ER served the Insurers with further supplemental responses and objections to the Subpoena. The Privilege Log was amended to include the specific documents being withheld for privilege for each POC ("ER Amended Privilege Log"). On February 9, 2022, ER served the Insurers with a further amended and supplemented Privilege Log, which added dates for each document being withheld as well as provided for additional email communications with dates.

At the January 24 hearing, the Court stated:

> "But I think I gave guidance before in terms of we're talking about the process of intake, the process of generation. If it turns out, in fact, after depositions, that that kind of information has been hampered by the failure to provide certain documents, I'll deal with it in the context, but I'm going to let the depositions -- I think the depositions will inform us of what is necessary in this case. So that's my ruling on the motion that's in front of me.

*See* Jan. 24, 2022 Hr'g Tr. at 32:16-24.

On Sunday, January 30, 2022, the Insurers deposed ER attorney Ken Rothweiler. On Monday, January 31. 2022, the Insurers deposed Stewart Eisenberg. The Insurers questioned Stewart Eisenberg extensively about ER's vetting and intake process as well as regarding the processes surrounding the generation of claims. The Insurers had the benefit of ER's Amended Privilege Log when they deposed both Mr. Rothweiler and Mr. Eisenberg. It was the Insurers'

---

[2] The Insurers' Motion fails to comply with Del. Bankr. L.R. 7026-1(b), which provides "Any discovery motion filed pursuant to Fed. R. Civ. P. 26 through 37 shall include, in the motion itself or in a memorandum, a verbatim recitation of each interrogatory, request, answer, response, or objection which is the subject of the motion or shall have attached a copy of the actual discovery document which is the subject of the motion."

[3] ER has since produced an example of each version of the authorization form or document that authorized the Attorney who signed the Claim Form, in accordance with the Court's ruling.

prerogative to take the depositions when they did and with the benefit of both ER's production and Amended Privilege Log. On February 9, 2022, ER served a further revised privilege log ("ER Further Revised Privilege Log"). The ER Further Revised Privilege Log includes dates for the items logged as privileged and supplemented the logged materials to account for additional email communications which were located by ER in their continuing efforts to locate materials responsive to the Subpoena. The ER Further Revised Privilege Log, together with ER Initial Privilege Log and ER Amended Privilege Log, are hereinafter collectively referred to as the "ER Privilege Log". ER has now provided factual work product which is largely the original proof of claim forms for the 58 unique claims contained in the Sample Claims, as well as the amended proof of claim forms for 37 of the claims which have been amended to include the signature of the claimant. Additionally, ER has supplied the Insurers with significant meta data produced as part of the as-filed proof of claims forms, as well as copies of the Survivor signed amended proofs of claim. ER's privilege log contains over 8,300 pages of documents.

## ARGUMENT

### I. ER Has Adequately Supplemented its Privilege Log.

The information sought in the Subpoena focuses on the fact that ER attorneys signed certain proof of claim forms immediately before the Bar Date.[4] The Court ordered that factual work product be produced. We have done that. As the Court well knows, the privilege log involves a cumbersome review of attorney work product We have produced thousands of pages of documents, reflecting purely factual work products that we identified in the course of our lengthy review of thousands of documents. We have produced documents that reflect factual materials gathered by lawyers and factual materials shared between lawyers and clients. We have done a great deal of work. It has taken an enormous amount of time. We have produced privilege logs that are several hundred entries long, document by document laying out the type of privilege, describing the communication and in each instance, the documents that we withheld and logged constitute core opinion work product, attorney/client privilege communications or both.

The Insurers rely on hyperbole to disparage the ER Privilege Log and to cast a shadow over the proper assertion of both the attorney-client privilege and the work product doctrine. The Insurers' Motion is littered with misstatements of key facts. In particular, the Insurers' contentions [with ER's responses] include the following:

- "*On October 26, 2021, the Insurers served on ER a Subpoena Deuces Tecum to produce documents related to 58 sample Proofs of Claim in advance of the deposition of Stewart Eisenberg regarding ER's signing of hundreds of POCs.*" In reality, the Insurers did not finally identify the list of Sample Claims until January 11, 2022.
- "*ER withheld as privileged virtually all responsive documents.*" [Motion, p. 1] In reality, ER produced the as-filed native proof of claim form for each of the 58 claims identified in

---

[4] As of the Bar Date, AIS had collectively filed with Omni approximately 4,677 attorney-signed POCs. Since that time, AIS, through both ER and AVA Law, has amended approximately 3,365 of those POCs to replace the attorney signature with the signature of the Survivor. ER actively continues to amend proof of claim forms to replace the attorney signature with the signature of the Survivor.

the Sample Claims. ER has also produced exemplars of the additional authorization forms utilized by ER and AIS for engagements with Survivors.

The Insurers justify the discovery as necessary because of the number of attorney-signed POCs that were filed just before the Bar Date. This does not mean or indicate that attorneys did not conduct a reasonable investigation to vet the claims or that they violated Bankruptcy Rule 9011. Nor does the fact that 190 POCs were filed on the same day mean that claims were not investigated or signed without attorney review or approval.[5]

## II. Insurers Seek Analysis and Communications that are Subject to Privilege.

The Insurers seeks two types of information from ER: (1) communications between ER and its Survivors clients[6] and (2) records from ER's databases. Both of these categories are protected by either the attorney-client privilege or the work product doctrine. There can be no question that communications with the Survivors must be protected. When communicating with Survivors, ER did so as the attorney for the Survivor for the purpose of obtaining the information necessary to prepare and submit POCs. For this task, ER employed a team of personnel, including investigators and para-professionals, to interview Survivors in an appropriate and comprehensive manner to gather information from claimants to prepare the proof of claim forms and assist the lawyers in preparing for litigation. *Gucci Am. Inc. v. Guess, Inc.*, 271 F.R.D. 58, 71 (S.D.N.Y. 2010) (applying attorney client privilege to protect disclosure of communications between attorney and his agent where the agent "was deputized to gather information from Gucci employees to assist in the litigation"). The Insurers attempt to sidestep this sacred protection by stating they merely seek facts surrounding the claims verification process. To the extent that the requests seek communications with a third-party, Courts, including those in the Third Circuit, have extended the attorney-client privilege to various third-party agents, including "investigators, interviewers, technical experts, accountants, physicians, patent agents, and other specialists in a variety of social and physical sciences," where those agents assist attorneys in providing legal advice. *See La. Mun. Police Employees Retirement Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 311–12 (D.N.J. 2008.

The Insurers also seek to discover material protected by the work product doctrine, such as records in the ER databases and the firm's draft POCs. Under the work-product doctrine, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (*including the other party's* attorney, consultant, surety, indemnitor, insurer, or *agent*.)" Fed. R. Civ. P 26(b)(3)(A) (emphasis added). This "protection extends beyond materials prepared by an attorney to include materials prepared by an attorney's agents and consultants." *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 662 (3d Cir. 2003). The work-product doctrine is broader than the attorney-client privilege and is only waived where work product is disclosed to an adversary or treated in a manner that substantially increases the likelihood that an adversary will come into possession of the material. *See United*

---

[5] Further, the fact that the Insurers are targeting a law firm affiliated with the Coalition and are not proposing to investigate all firms that filed attorney signed claim forms just before the Bar Date suggests that this justification is pretextual.

[6] Despite the Insurers arguments to the contrary, the details of communications between the Survivors and ER necessarily contains "intensely personal communications" the production of which would put "clients in the position of having their deepest, heartfelt trust betrayed." Jan. 24, 2022 Tr. at 31:2-6.

*States v. Veolia Environment N. Am. Operations, Inc.*, No. 13-MC-03-LPS, 2014 WL 5511398, *3 (D. Del. Oct. 31, 2014). Draft POCs, like drafts of pleadings, affidavits, and other legal documents, are quintessential work product routinely protected by the courts. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 510 n.9 (1947); *Veolia Environment N. Am. Operations, Inc.*, 2014 WL 5511398, at *8 ("Preliminary drafts of contracts are generally protected by attorney-client privilege, since [they] may reflect not only client confidences, but also legal advice and opinions of attorneys." (quoting *Andritz Sprout-Bauer, Inc. v. Beazer E., Inc.*, 174 F.R.D. 609, 633 (M.D. Pa. 1997))); *Astra Aktiebolag v. Andrx Pharm., Inc.*, 208 F.R.D. 92, 104 (S.D.N.Y. 2002) (observing that "draft pleadings, draft briefs, and other drafts or documents prepared by lawyers" in "anticipation of litigation" are "work product documents"). This privilege applies even where the drafts are not prepared by an attorney and, instead, are prepared by an attorney's agent at the attorney's direction. *See In re Grand Jury*, 138 F.3d 978, 981 (3d Cir. 1998). ER has properly logged the communications between ER and Survivors and the records from ER's case management databases.

### III. The Proposed Relief is Overly Broad and Unduly Burdensome.

The Insurers' proposed relief is overbroad, unduly burdensome, and disproportionate to the needs of these cases. The Insurers assert that their discovery requests "seek information relevant to investigating the integrity of the aggressive nationwide claims solicitation, aggregation, and submission process— a process that resulted in ER filing more than 18,000 POCs (on its own behalf and through AIS)." Motion at 1. The Insurers' motion is improper under the proportionality rules set forth in Civil Rule 26(b)(1). Under Civil Rule 26(b)(1), "requested discovery must be 'proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *In re Maxus Energy Corp.*, 617 B.R. 806, 813 (Bankr. D. Del. 2020) (quoting Civil Rule 26(b)(1), made applicable by Bankruptcy Rule 7026) (emphasis added).

### CONCLUSION

ER has made a commitment to its' clients that their trust will not be abrogated as it relates to these intensely personal communications. The argument that these intensely detailed personal communications must be disclosed because a final version of them, after vetting by the lawyers, was filed in a proof of claim, is untenable. ER respectfully requests that the Court deny the Motion and find that the attorney-client privilege and the work product doctrine, together with the privilege log produced by Eisenberg Rothweiler, precludes the relief sought by the Insurers.

Respectfully submitted,

*/s/ Daniel K. Hogan*

Daniel K. Hogan (DE Bar No. 2814)

cc: All counsel of record (via CM/ECF)