

LOS ANGELES, CA
SAN FRANCISCO, CA
WILMINGTON, DE
NEW YORK, NY
HOUSTON, TX

10100 SANTA MONICA BLVD.
13th FLOOR
LOS ANGELES
CALIFORNIA 90067-4003

**TELEPHONE:** 310.277.6910
FACSIMILE: 310.201.0760

**SAN FRANCISCO**
ONE MARKET PLAZA, SPEAR TOWER
40th FLOOR, SUITE 4000
SAN FRANCISCO
CALIFORNIA 94105-1020

**TELEPHONE:** 415.263.7000
FACSIMILE: 415.263.7010

**DELAWARE**
919 NORTH MARKET STREET
17th FLOOR
P.O. BOX 8705
WILMINGTON
DELAWARE 19899-8705

**TELEPHONE:** 302.652.4100
FACSIMILE: 302.652.4400

**NEW YORK**
780 THIRD AVENUE
34th FLOOR
NEW YORK
NEW YORK 10017-2024

**TELEPHONE:** 212.561.7700
FACSIMILE: 212.561.7777

**TEXAS**
440 LOUISIANA STREET
SUITE 900
HOUSTON
TEXAS 77002-1062

**TELEPHONE:** 713.691.9385
FACSIMILE: 713.691.9407

WEB: www.pszjlaw.com

February 24, 2022

**VIA EMAIL/ECF**
The Honorable Laurie Selber Silverstein
United States Bankruptcy Judge
United States Bankruptcy Court for the District of Delaware
824 North Market Street, 6th Floor
Wilmington, Delaware 19801

      **RE:**   **In re Boy Scouts of America and Delaware BSA, LLC (Bankr. D. Del. Case No. 20-10343 (LSS))**

Dear Chief Judge Silverstein:

We write on behalf of the Official Committee of Tort Claimants (the "TCC") in response to the *Letter to the Honorable Laurie Selber Silverstein Chief Judge re: Certain Insurers' Motion to Compel Production of Documents from Boy Scouts of America, Official Committee of Tort Claimants, Coalition of Abused Scouts for Justice, Future Claimants' Representative, Zalkin Law Firm and Pfau Cochran Vertetis Amala* [Docket No. 8924] (the "Motion"), filed on February 21, 2022, by Travelers Casualty and Surety Company, Inc., on behalf of Certain Insurers, pursuant to which the Certain Insurers seek to compel the production of documents and communications relating to material changes to the Trust Distribution Procedures ("TDP") and Settlement Trust exchanged in the course of mediation among the settling parties, notwithstanding the confidentiality protections set forth in Local Rule 9019-5(d) (as amended effective February 1, 2022).[1]

"Absent the mediation privilege, parties and their counsel would be reluctant to lay their cards on the table so that a neutral assessment of the relative strengths and weaknesses of their opposing positions could be made."[2] Local Rule 9019-5(d) states unequivocally that "[c]onfidentiality is necessary to the mediation process, and mediations shall be confidential under these rules to the fullest extent permissible under otherwise applicable law." This far-reaching protection of mediation confidentiality in this Court encompasses (i) the application of Federal Rule of Evidence 408 and any other "applicable federal or state statute, rule, common law or judicial precedent relating to the protection of settlement communications"; (ii) the preclusion of admission in any proceeding in this Court any views, suggestions, or proposals by a party or the mediator "in the course of the mediation;" (iii) the protection of information either disclosed to the mediator

---

[1] Del. Bankr. L.R. 9019-5(d). Unless otherwise noted, all references herein to the Local Rules are to the Local Rules for the United States Bankruptcy Court for the District of Delaware (Effective February 1, 2022).
[2] *Sheldone v. Pa. Turnpike Comm'n*, 104 F.Supp.2d 511, 514 (W.D. Pa. 2000) (quoting *Lake Utopia Paper Ltd. v. Connelly Containers, Inc.*, 608 F.2d 928, 930 (2d Cir. 1979).



Hon. Laurie Selber Silverstein
United States Bankruptcy Judge
Page 2

or during mediation; (iv) the prohibition on divulging submissions to the mediator; (v) the prevention of taking discovery from the mediator; (vi) the maintenance of otherwise confidential information; and (vii) the preservation of privileges notwithstanding any disclosure of privileged information to the mediator.[3] Granting the Motion would eviscerate this cornerstone of mediation—confidentiality—thereby destroying the efficacy of bankruptcy mediation itself.

The Certain Insurers rely exclusively on the Court's October 25, 2021, ruling, on the *Debtors' Motion for Protective Order and Related Relief* [Docket No. 6288] (the "Protective Relief Motion") and insist that the TCC must produce *all* documents and communications concerning the TDPs, Settlement Trust, and Claims Matrix, even those that are irrelevant to Plan confirmation. Understood in context, the Court's prior ruling, which was issued in connection with the Debtors' sweeping request for extraordinary prospective relief, is not dispositive as to the current Motion. With no parties explicitly arguing for the existence of a federal common law mediation privilege,[4] the Court interpreted the then-applicable Local Rule 9019-5(d),[5] as modified by the Mediation Order in one limited respect, and detailed two reasons that mediation confidentiality did not permit the Debtors to withhold certain documents from production.

First, the Court noted that because of the Debtors' apparent intent to use "the fact of the mediation"[6] as their primary evidence in support of good faith under section 1129(a)(3), "discovery is [not] prohibited regarding the *bona fides* of the mediation."[7] Whether or not the Debtors still intend to use the fact of the mediation as evidence of good faith,[8] as the Certain Insurers explicitly recognize,[9] it is the Debtors' "honesty and good intentions in proposing the Plan"[10] and the "fundamental fairness in dealing with the creditors"[11] that are relevant to the 1129(a)(3) inquiry. Specifically, the focus of the good faith inquiry in a mass tort bankruptcy case is whether the plan provides "a fair and equitable" resolution of personal injury claims "and maximizing the returns available to creditors and other

---

[3] *Id.* The Local Rules were recently amended and the latest iteration of Local Rule 9019-5 re-emphasizes the necessity of confidentiality in the mediation process.

[4] Numerous courts throughout the United States have recognized the existence of a federal common law mediation privilege (*see generally Sampson v. School Dist.*, 262 F.R.D. 469, 476 (E.D. Pa. 2008) (collecting cases)), including one published decision within the Third Circuit. *See Sheldone v. Pa. Turnpike Comm'n*, 104 F.Supp.2d 511, 512–13 (W.D. Pa. 2000) (applying *Jaffee v. Redmond*, 518 U.S. 1 (1996)).

[5] Transcript of Telephonic Ruling Before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, October 25, 2021, 11:00 a.m. ("Oct. 25 Tr."), at 11:6 – 23.

[6] Oct. 25 Tr. at 13:15.

[7] *Id.* at 14:2 – 3.

[8] The TCC does not know whether the Debtors still intend to do so.

[9] Motion at fn. 6.

[10] *In re W.R. Grace & Co.*, 729 F.3d 332, 349 (3d Cir. 2013).

[11] *Id.*, at 346 (quoting *In re W.R. Grace & Co.*, 475 B.R. 34, 88 (D. Del. 2012)).



Hon. Laurie Selber Silverstein
United States Bankruptcy Judge
Page 3

parties in interest." *In re Maremount Corp.*, 601 B.R. 1, 20 (Bankr. D. Del. 2019). The strongest evidence of the Plan's fundamental fairness in dealing with and maximizing the returns of survivors -- the Debtors' largest creditor body and the stated focus of the Debtors' reorganization – is the support of all major survivors groups (i.e., the TCC, Coalition, the Future Claimants' Representative and the Pfau/Zalkin claimants). This support as well as the treatment of creditors outlined in the Plan demonstrates good faith, not the contents of discussions among and documents exchanged by the survivors and other settling parties in the course of mediation.

Second, pointing to the Mediation Order's exception to the application of Local Rule 9019-5(d), the Court questioned the propriety of certain findings to be included in the Confirmation Order.[12] Notwithstanding the Certain Insurers' repeated protestations to the contrary, each of the supposedly controversial findings contained in Article IX.A.3 of the Plan are related to specific provisions of the Bankruptcy Code and applicable caselaw that must be satisfied for the Plan to be confirmed.[13] The Court's determination of whether it has the jurisdiction and power or it is otherwise appropriate to make requested findings will depend on the terms of the Plan and any evidence presented in support of such findings, not the contents of mediation discussions or documents and communications exchanged during mediation.

Moreover, the legal context has changed since the Protective Relief Motion and the Court's ruling thereon, which renders the discovery Certain Insurers are seeking irrelevant for Plan confirmation purposes.[14] On December 18, 2021, the Debtors filed their *Notice of Filing of Debtors' Second Modified Fifth Amended Chapter 11 Plan of Reorganization and Blackline Thereof* [Docket No. 7833] ("Notice of Blackline"), highlighting language added to a requested finding that:

> the right to payment that the holder of an Abuse Claim has against the Debtors or another Protected Party or a

---

[12] *Id.* at 14:4 – 25. The findings at issue are found in Article IX.A.3 of the Plan and were re-lettered from (r), (s), and (t) to (w), (x), and (y).

[13] *See generally* Docket No. 7862 at ¶ 5 (explaining that finding (w) relates to § 1141(a)); ¶ 6 (explaining that finding (j) relates to *Federal Mogul*); ¶¶ 7 – 12 (explaining that finding (y) relates to *Master Mortgage*); ¶¶ 13 – 20 (explaining that finding (x) relates to § 1123(b)(6) *et al.*); ¶¶ 21 – 29 (explaining that finding (z) relates to § 1129(a)(3)).

[14] At the time the Debtors filed the Protective Relief Motion on September 17, 2021, the operative plan was the *Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6212], filed on September 15, 2021. At the time the Court ruled on such motion, the operative plan was the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No.6443], filed on September 30, 2021. The current Plan before the Court is the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 8813], filed on February 15, 2022.



Hon. Laurie Selber Silverstein
United States Bankruptcy Judge
Page 4

> Limited Protected Party is the amount of such Abuse Claim as determined under the Trust Distribution Procedures and is not (i) the [various Contributions provided in the Plan], or any component(s) of such contributions, or (ii) the initial or supplemental payment percentages established under the Trust Distribution Procedures to make distributions to holders of Abuse Claims provided, however, that nothing herein shall determine that any insurer is obligated to pay the Debtors' or another Protected Party's or a Limited Protected Party's liability so determined under the Trust Distribution Procedures …15

The Certain Insurers ignore this language.  Their requests for confidential information regarding the TDP and related topics shared during the mediation appear to be nothing more than a tactic to delay confirmation or somehow obtain an advantage in subsequent insurance coverage-related litigation.  These are not legitimate reasons to grant the Motion.

There are broader implications if the Motion is granted.  Granting the Motion and expanding the Court's prior ruling as the Certain Insurers request would eviscerate the confidentiality necessary to effectively mediate bankruptcy-related disputes in this district.  The purpose of the mediation privilege and the confidentiality of mediation more generally[16] is "complete candor among the parties."[17]  If parties' candor in mediation could be used against them in collateral litigation, mediation would serve no purpose.[18]  Although much of the law concerning mediation may have developed out of "traditional, two-party disputes,"[19] the necessity of preserving confidentiality in mediation is equally applicable—if not more essential—in bankruptcy, especially if a single dissenting

---

[15] Notice of Blackline at 118 of 180 (emphasis added).  See Plan § IX.A.3.y. at 112.

[16] The Court may draw guidance from the federal mediation privilege, even if it declines to find one exists, "in how to distinguish between what material should and should not be discoverable from" mediation.  *N.J. Dep't of Env. Protection v. Am. Thermoplastics Corp.*, 2017 U.S. Dist. LEXIS 16743, at *53 (D. N.J. Feb. 7, 2017).

[17] *Starkman v. O'Rourke*, 2020 Del. Ch. LEXIS 24, at *5 n.14 (Del. Ch. Jan. 14, 2019) (citing *Princeton Co. v. Vergano*, 883 A.2d 44, 62 (Del. Ch. 2005)); *see also Savage & Assocs. P.C. v. K&L Gates LLP* (*In re Teligent, Inc.*), 640 F.3d 53, 59 – 60 (2d Cir. 2011) ("Were courts to cavalierly set aside confidentiality restrictions on disclosure of communications made in the context of mediation, parties might be less frank and forthcoming during the mediation process or might even limit their use of mediation altogether.").

[18] *Dietz & Watson, Inc. v. Liberty Mut. Ins. Co.*, 2015 U.S. Dist. LEXIS 9815, at *5 (E.D. Pa. Jan. 28, 2015) ("A principal purpose of the mediation privilege is to provide mediation parties protection against [the] downside risks of a failed mediation.  Participation will diminish if perceptions of confidentiality are not matched by reality.") (quoting Alan Kirtley, *The Mediation Privilege's Transition from Theory to Implementation*, 1995 J. Disp. Resol. 1, 8 – 10 (1995).

[19] Oct. 25 Tr. at 15:  12:17.



party could compel the production of documents that would have been confidential had the mediation resulted in complete unanimity.[20] Mediation has become an invaluable tool in complex and contentious chapter 11 bankruptcy cases[21] and permitting non-settling parties to invade its confidentiality—especially to further their own selfish interests unrelated to Plan confirmation—will call its utility into question. Worse, if the Motion is granted, mediators and mediation participants alike in future cases in this district may hesitate to engage productively and candidly in what would otherwise be a valuable process to resolve complex cases due to the fear that communications or documents exchanged in such mediation would be made public, notwithstanding the provisions of the Local Rules.

Finally, the Certain Insurers ask the Court proactively to rule that none of the mediation communications and other documents they are seeking may be covered by the common interest privilege. This is inappropriate and overreaching because (i) the Court's October 25, 2021, ruling on the Protective Relief Motion only addressed mediation confidentiality, not any other privilege, confidentiality or protection from disclosure;[22] and (ii) the TCC and other survivor groups promptly began to compile and review documents potentially responsive to Certain Insurers' request, which process was on-going at the time Certain Insurers refused to provide a date and time to meet and confer and filed the Motion. The TCC reserves all rights to assert any privilege, confidentiality or other protection from disclosure with respect to any documents sought by the Certain Insurers.

For all the foregoing reasons, the Motion should be denied.

                    Respectfully submitted,

                    */s/ Alan J. Kornfeld*
                    Alan J. Kornfeld

cc:    (via email)
       Participating Parties
       Richard M. Pachulski, Esq.
       Debra I. Grassgreen, Esq.
       Iain A.W. Nasatir, Esq.
       Malhar S. Pagay, Esq.
       Jeffrey L. Schulman, Esq.

---

[20] *See, e.g., In re Tribune Co.*, 464 B.R. 126, 157 n.44 (Bankr. D. Del. 2011) ("Parties, subject to the rules of mediation and the mediator, must be positioned to participate in settlement discussions uninhibited by the possibility that evidentiary consequences may ensue, whether mediation is wholly or partially successful, or fails to result in any settlement.").

[21] 1 COLLIER ON BANKRUPTCY ¶ 11.01[2] (16th ed.).

[22] Oct 25 Tr. ("… I deny debtors' motion to the extent that debtors seek to shield discovery communications, oral and written, regarding the trust distribution procedures, based on the mediation privilege. I make no ruling as to admissibility at this time.")