

1801 Century Park East
Twenty-Sixth Floor
Los Angeles, California 90067

voice: 310-407-4000
fax: 310-407-9090
www.ktbslaw.com

sgurvitz@ktbslaw.com
Direct Dial: 310-407-4032

February 24, 2022

**VIA CM/ECF**

Chief Judge Laurie Selber Silverstein
United States Bankruptcy Court, District of Delaware
824 North Market Street, 6th Floor
Wilmington, DE 19801

      Re:    Boy Scouts of America Case No. 20-10343 (LSS)
              *Certain Insurers' Motion to Compel Production of Documents* [D.I. 8924]

Dear Judge Silverstein:

      The Zalkin Law Firm, P.C. ("ZLF") and Pfau Cochran Vertetis Amala PLLC ("PCVA," and with ZLF, the "Firms") respond to the *Certain Insurers' Motion to Compel Production of Documents* [D.I. 8924] (the "Motion"), filed by the Certain Insurers.[1]  The Motion follows a February 14, 2022 letter from the Certain Insurers requesting that the Firms supplement their responses (the "Responses") to the *Propounding Insurers' First Set of Requests for Production of Documents* (the "Requests").  Specifically, the letter references the need to supplement Requests 1 through 5,[2] which seek production of documents that contain or relate to communications between the Firms, on the one hand, and (i) the BSA, (ii) any Local Council, (iii) any Chartered Organization, (iv) the FCR, or (v) the Coalition, on the other hand (or counsel to such party).[3]  The Certain Insurers served substantially similar letters on other key claimant representatives in this case, including the TCC, the FCR, and the Coalition (the "Claimant Representatives").  For the reasons set forth herein and in the responses filed by the other Claimant Representatives, the Firms respectfully submit that the Court should deny the Certain Insurers' Motion.

**A.**      **The Firms Timely Objected to the Certain Insurers' Requests and Timely Produced Substantial Non-Privileged Documents Responsive to the Requests**

      The Certain Insurers initially served their Requests on the Firms on October 8, 2021 and the Firms timely served Responses on October 18, 2021.  In their Responses, the Firms objected to

---

[1]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

[2]  The Certain Insurers did not specifically request that the Firms supplement their Response to Request 6, which seeks "All Documents that contain or relate to any Communications between You and/or Your counsel and the TCC and/or its counsel."  Communications with the TCC present other privilege issues, and the Firms reserve all rights to assert any applicable privilege or other immunity from discovery with respect to such communications.

[3]  For example, Request 1 reads: "All Documents that contain or relate to any Communications between You and/or Your counsel and the BSA and/or its counsel."  Requests 2 through 5 are identical, but reference the other parties.

the Requests on several grounds, including to the extent the Requests call for the production of documents that are protected from discovery by the attorney-client privilege, the work product doctrine, the common interest privilege, the mediation privilege, the settlement communication privilege, or any other applicable privilege and to the extent the Requests are overbroad, unduly burdensome, or impose obligations on the Firms beyond those imposed by the applicable discovery rules and orders of this Court. The Firms also objected to the Requests because they seek the production of documents from persons other than the Firms and because they impose no temporal or subject matter limit whatsoever and would therefore require production of documents that contain or relate to communications between the Firms and more than 40,000 parties that have no relevance to the Plan or these bankruptcy cases.[4] Those same objections hold true today.

The Firms timely produced documents on November 5, 2021, and made a limited supplemental production on November 19, 2021. The Certain Insurers raised no issues with the Firms' productions. Of note, although the Firms raised the mediation privilege in their Responses, that privilege was not particularly at issue because, at the time, the Firms had not, in any material manner, participated in the ongoing mediation in the Boy Scouts bankruptcy case.

**B.     There Are No Relevant Non-Privileged Responsive Documents**

As noted above, the Certain Insurers wrote to the Firms on February 14 requesting that the Firms supplement their Responses "in light of the recent Settlement Term Sheet" entered into by the Claimant Representatives, the Ad Hoc Committee of Local Councils, and the Debtors in mediation. The Firms promptly responded to the Certain Insurers, reasserting their objections to the Requests and explaining why the Firms believe those objections hold true today. The Firms also made certain supplemental disclosures, subject to the foregoing objections, to advise the Certain Insurers of the limited and mostly irrelevant universe of non-privileged documents that would be responsive to the Certain Insurers' overbroad Requests. Counsel for the Firms met and conferred in good faith with counsel for the Certain Insurers but the parties reached impasse. The Firms contend the documents sought by the Certain Insurers are either irrelevant or are protected from disclosure by the mediation privilege and/or the common interest privilege.

---

[4] An example illustrates the sheer overbreadth of the Requests: Request 3 seeks "all Documents that contain or relate to any Communications between You and/or Your counsel and any Chartered Organization and/or its counsel." ZLF and PCVA are personal injury law firms comprised of trial lawyers that have been litigating sexual abuse cases against the Boy Scouts, religious organizations, and other institutional defendants for decades. In the ordinary course of the Firms' business, they regularly communicate with defendants and potential defendants, many of whom constitute Chartered Organizations in these cases, regarding pending or potential non-bankruptcy sexual abuse litigation, only some of which is related to the Boy Scouts. The Certain Insurers' request that the Firms search their records for all time to produce "all Documents that contain or relate to any Communications" on any subject matter with any of 40,000 plus "Chartered Organizations," is guaranteed to produce scores of communications wholly unrelated to the current Plan or to these bankruptcy cases. This is not discovery "relevant to any party's claim or defense and proportional to the needs of the case," FRCP 26(b)(1); rather, this is "unreasonable" and "unduly burdensome" discovery interposed by the Certain Insurers "to harass, cause unnecessary delay, or needlessly increase the cost of litigation," FRCP 26(g)(1)(B)(ii) & (iii).

1. **The Documents Sought are Protected by the Mediation Privilege**

The heart of the parties' dispute is whether documents that contain or relate to communications between the Firms and any of the Debtors, the FCR, and/or the Coalition,[5] are protected by the mediation privilege where those documents were exchanged in connection with mediation and would not otherwise exist absent mediation. According to their February 14 letter, the Certain Insurers apparently seek only those mediation privileged documents responsive to the Requests that "potentially relate to the TDPs and/or the Settlement Trust." That the mediation privilege protects these documents from disclosure should be abundantly clear as a factual matter under the circumstances presented here, because these documents simply would not exist but for the mediation. When the Firms responded to the Requests in the fall of 2021, the Firms had not materially participated in the mediation and the Firms had no substantive communications with the Debtors, the FCR, and/or the Coalition relating to the TDPs and the Settlement Trust. Starting on or about January 3, 2022, the Firms became active participants in the mediation, and only then did the Firms begin communicating with the Debtors, the FCR, and the Coalition regarding the TDPs and the Settlement Trust – ***but solely as part of the mediation process***.

The TDPs and the Settlement Trust were among the issues that were subject to the mediation process. As we have advised the Court openly, the TDP amendments, including the introduction of the Independent Review Process, were important elements of the changes to the Plan structure that enabled the Firms to consider changing their recommendation regarding supporting the Plan. The mediator was involved in brokering compromises and building consensus between and among the Firms, the Debtors, the FCR, the TCC, the Coalition and the other mediating parties. Because of the importance of the TDP to the Plan amendments, stripping the TDP-related mediation communications of their privileged status under the circumstances presented here would have the effect of largely throwing open the doors of the mediation *in toto*. If documents exchanged in mediation concerning such a heavily mediated issue are not covered by the mediation privilege, then what is protected by the privilege and what will be the consequences of such an evisceration of the mediation privilege going forward?[6]

Moreover, there is nothing narrowly tailored about the Certain Insurers' Requests. *See, e.g.*, *supra* note 4. Even as purportedly narrowed to cover just "the TDPs and/or the Settlement Trust," the Certain Insurers' request to supplement would sweep in nearly all topics covered in the mediation that led to the TCC Term Sheet —the TDPs, Independent Review Process, Trust governance, post-effective date guardrails, future insurance settlements, the definition of Abuse Claim, the scope of releases under the Plan, the Debtors' settlement contribution, and the selection and roles of the Settlement Trustee, the STAC, and the Claims Administrators. *See* Motion,

---

[5] The Firms do not have documents containing or reflecting relevant communications with any Local Council or Chartered Organization. It is unclear whether the Certain Insurers intend to press this, but if so, it is not an issue regarding mediation privilege. The Firms' communications with Local Councils and Chartered Organizations are ministerial in nature (*e.g.*, regarding the status of state court lawsuits while the bankruptcy cases remain pending).

[6] *See, e.g.*, *In re Tribune Co.*, 464 B.R. 126, 157 n.44 (Bankr. D. Del. 2011) ("Parties, subject to the rules of mediation and the mediator, must be positioned to participate in settlement discussions uninhibited by the possibility that evidentiary consequences may ensue, whether mediation is wholly or partially successful, or fails to result in any settlement.").

Exhibit Q (version of the TCC Term Sheet highlighted by the Certain Insurers to reflect the topics they believe are not covered by the mediation privilege and should be discoverable). These topics represent the primary issues that the parties considered and discussed as part of the mediation. If documents related to these topics are discoverable, then there is no privilege.

        **2.**      **The Court's October 25, 2021 Ruling Does Not Compel a Contrary Result**

The Certain Insurers' position that these communications between the Firms, the Debtors, the FCR, and the Coalition as part of the mediation process are nevertheless not protected by the mediation privilege appears to rest solely on this Court's October 25, 2021 ruling regarding the *Debtors' Motion for Protective Order and Related Relief* [D.I. 6288] (the "Debtors' Motion"). The Firms respectfully submit that the Court's prior ruling does not control here because the concerns animating the Court's decision are not at issue with respect to the discovery sought now and because the circumstances and applicable rules have changed since the Court's prior ruling.

*First*, the Court's October 25 ruling was based largely on (i) a provision in the Mediation Order stating that "[i]f a party puts at issue any good faith finding concerning the mediation [in] any subsequent action concerning insurance coverage the parties right to seek discovery, if any, is preserved," Hr'g Tr., Oct. 25, 2021, at 2:25-4:3 (*quoting* Mediation Order [D.I. 812], ¶ 7), (ii) the Debtors' then-stated intent to "use the fact of mediation as evidence of good faith," *id.* at 13:13-14, and (iii) the Court's corresponding determination that "as such, [the Debtors] have put the mediation, at least with respect to the good faith of the TDPs, at issue," *id.* at 13:16-18. The ruling also explicitly references the Debtors but no other parties in interest. These animating concerns are simply not relevant to the discovery sought by the Certain Insurers from the Firms. Under the circumstances presented here, the Firms are not putting at issue any good faith finding concerning the mediation. Moreover, in light of the settlement reached in the TCC Term Sheet, no such finding is required. The good faith of the Debtors in proposing the Plan and TDPs can be determined on the basis of the factual record entirely outside of the mediation, including the broad support of the Claimant Representatives for the Plan. Indeed, the Third Circuit has stated that the "touchstone" of the good faith inquiry is "the plan itself and whether it will achieve a result consistent with the objectives and purposes of the Bankruptcy Code."[7] In another mass tort bankruptcy case, the Delaware Bankruptcy Court found that the focus of the good faith inquiry in that context is whether the plan provides "a fair and equitable" resolution of the personal injury claims. *In re Maremount Corp.*, 601 B.R. 1, 20 (Bankr. D. Del. 2019). The fact and/or substance of mediation with respect to TDPs is simply not part of the calculus.

*Second*, to the extent the Court's October 25 ruling was premised on certain insurance-related findings that might be sought from the Court in connection confirmation of the Plan, *see*

---

[7] *In re Frascella Enters., Inc.*, 360 B.R. 435, 446 (E.D. Pa. 2007) (quoting *In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000)); *see also, e.g., In re Am. Capital Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012) ("In analyzing whether a plan has been proposed in good faith under § 1129(a)(3), 'the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code.'") (quoting *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 247 (3d Cir. 2004)).

Hr'g Tr., Oct. 25, 2021, at 14:4-25, those findings have since been revised.[8] The terms of the revised Plan now make clear with respect to those proposed findings that "nothing herein shall determine that any insurer is obligated to pay the Debtors' or another Protected Party's or a Limited Protected Party's liability so determined under the Trust Distribution Procedures…." Plan § IX.A.3.y., at 112. Any potential prejudice that the Certain Insurers may have faced as a result of the former proposed findings is therefore no longer a basis for permitting discovery.

*Third*, the Court's October 25 ruling was also premised on perceived ambiguities in the then applicable iteration of Local Bankruptcy Rule 9019-5.5. Hr'g Tr., Oct. 25, 2021, at 3:11-4:3 & 11:9-23. Since that time, on February 1, 2022, the Court amended its Local Bankruptcy Rules, including Rule 9019-5. Those amendments clarify the protection of information shared as part of the mediation process. The revisions make clear that "[c]onfidentiality is necessary to the mediation process" and expressly mandate that "mediations shall be confidential under these rules to the fullest extent permissible under otherwise applicable law." L.R. 9019-5(d). The scope of the Local Rule invokes and encompasses the protections of Rule 408 of the Federal Rules of Evidence and any applicable statute, rule, common law, or precedent relating to settlement communications. *Id.* The Local Rule further precludes (i) admission in any proceeding in this Court of any views, suggestions, or proposals by a party or the mediator "in the course of the mediation," (ii) disclosure of information disclosed to the mediator or disclosed during the mediation, (iii) divulging of submissions to the mediator, and (iv) taking of discovery from the mediator. *Id.* Against the new backdrop of this revised Rule, there can now be no ambiguity that the mediation privilege attaches to the documents sought by the Certain Insurers.

### 3. Certain of the Documents Sought by the Certain Insurers Are Also Protected by Other Privileges, Including the Common Interest Privilege

Finally, the Court's October 25 ruling related only "to the extent that debtors seek to shield discovery communications, oral and written, regarding the trust distribution procedures, based on the mediation privilege." Hr'g Tr., Oct. 25, 2021, at 15:4-7. Accordingly, the ruling has no bearing on other privilege bases for withholding production. Here, the Claimant Representatives also seek to protect certain documents from disclosure on the basis of other privileges, including the common interest privilege. The Certain Insurers have provided no justification for their request to invade this privilege, and no such invasion should be permitted.

\*   \*   \*

For the foregoing reasons, and for the reasons set forth in the responses filed by the other Claimant Representatives, the Firms request that the Court deny the Certain Insurers' Motion.[9]

---

[8] The findings at issue are found in Article IX.A.3 of the Plan and were re-lettered in the revised Plan from (r), (s), and (t) to (w), (x), and (y).

[9] To the extent the Court determines to the grant the Motion, the Firms request more than two days' time from the entry of such an order to produce responsive documents.

Chief Judge Laurie Selber Silverstein
February 24, 2022
Page 6

Respectfully submitted,

/s/ *Sasha M. Gurvitz*
Sasha M. Gurvitz

| | |
|---|---|
| KTBS LAW LLP | BIELLI & KLAUDER, LLC |
| Thomas E. Patterson (p*ro hac vice*) | David M. Klauder, Esquire (No. 5769) |
| Daniel J. Bussel (p*ro hac vice*) | 1204 N. King Street |
| Robert J. Pfister (*pro hac vice*) | Wilmington, DE 19801 |
| Sasha M Gurvitz (p*ro hac vice*) | |
| 1801 Century Park East, Twenty-Sixth Floor | |
| Los Angeles, California 90067 | |

*Counsel to each of The Zalkin Law Firm, P.C. and Pfau Cochran Vertetis Amala PLLC*