IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 20-10343 (LSS) <br><br> (Jointly Administered) |

███████████████ OBJECTION TO CONFIRMATION OF THE SECOND MODIFIED FIFTH AMENDED PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC.

███████████████ a claimant, in the above captioned matter, objects to, confirmation of the Second Modified Fifth Amended Plan of Reorganization for Boy Scouts of America and Delaware PSA, LLC, and states as follows:

PRELIMINARY STATEMENT

It's difficult to imagine that after 2 years and $100M, how this Plan, in it's fifth amended form, twice modified, could be anything but intentional. Yet, it is still is riddled with fatal errors and must not be passed for the following reasons:
1) The Plan contains non-consensual third party releases against non-debtor parties and are in violation of rulings from the Third Circuit. 2) The Plan contain wildly broad releases of entities and individuals who are solvent, and no release if provided for under bankruptcy code. 3) The Plan violates many of the claimant's Due Process rights by disallowing claims without having a chance to be heard. 4) The Plan violates Section 1129(b)(1), the fair and equitable requirement and prohibition of unfair discrimination by segregating them based solely on their status as Sex Abuse victims, which in itself is a form of sex discrimination, and the subjects them to lesser treatment than similarly situated non-sex abuse claimants. 5) The Plan does not meet the requirements of 11 USC Section 1129(a)(7), the best interest of the creditor test. 6) The Plan offers favored treatment of TCJC by attempting to shield TCJC by forcing all sex abuse claims, both scouting-related, and those not Scouting related, through the channelling injection, something afforded to no other sponsor. The Plan also required the Trust to defend TCJC's interests by sending an attorney, presumably at the expense of the Trust, with a copy of the channeling injunction to quash the case.

7) The Plan utilizes unnecessarily complicated procedures and rules that tend to deny claims. This is incentivized by a provision that all funds in the Trust after all claims are disposed of, return to the reorganized BSA.

## STATEMENT OF FACTS

1. On February 18, 2020, The debtors filed voluntary petitions under chapter 11 of the bankruptcy code.
2. On March 5, 2020, the US trustee appointed the Creditors Committee and Tort Claimant's Committee.
3. On March 1, 2021, debtors filed an amended plan (D.E. 2293) that provided for third-party releases Adnan debtors by holders at nine abuse claims. Unlike abuse claim holders, non-abuse claim holders in voting classes were provided with the opportunity to opt out of the proposed third-party releases.
4. On September 15, 2021, the debtors filed their Fifth Amended Plan (D.E.6212). Subsequently modified, this plan was approved for solicitation on September 29, 2021.
5. On December 18, 2021, the debtors filed the Second Modified Fifth Amended Plan (D.E.7832). In the Debtors changed the definition of abuse claim to include claims for breach of fiduciary duty, gross negligence, and willful misconduct. Additionally the debtors defined "scouting related "was added as to distinguish sexual abuse that is "attributable to, arises from, is based upon, results from, or relates to, in whole or in part, directly, indirectly, or derivatively, scouting "from all other forms of sexual abuse for which an abuse claim holder might have a claim. As non-scouting related claims are excluded from the definition of abuse claim, they fall within the definition of non-abuse claim.
6. The plan gives third-party releases and channeling and junctions to many entities including: a) The Debtors, b) reorganized BSA, c) Related Non-Debtor Entiries, d) Creditor's Committee and its members, e) Tort Claimant's Committee and all its members, f) T her Future Claimant's Representative, g) The Coalition, h) JP Morgan Chase i) the Settling Insurance Companies, j) the Contributing Charter Organizations, k) the Foundation,

l) The AdHoc Committee of Local Councils and it's members, m) the Creditor Representative, n) the Mediators, o) each of the above names parties representatives.

7. Pursuant to articles by a 231 and XJ4 of the plan, each holder of a claim of any kind will release each of the released parties and their representatives but holders of non-abuse claims in voting classes may opt out. The non-abuse claims that will be released include those that are "known or unknown, foreseen or unforeseen, and existing or hereinafter arising ". See article XJ4.

8. Holders of abuse claims will release each of the release parties parentheses if they have non-abuse claims parentheses and the protected parties and limited protected parties and their "successors and assigns" (with regard to their abuse claims ), As well as those parties myriad representatives, but can only opt out of releases that are not related to sexual abuse. See articles XF, exchange .3 & XJ .4

9. The abuse claims that will be released include those that are "known or unknown... Foreseen or unforeseen, and existing or hear an after arising "see article XJ .3. Abuse claims include future abuse claims which include claims of which the holder "was not aware... As a result of "repressed memory ". See articles I point .18 & I.A.124.

10. The plan also enjoins all holders of claims subject to article XJ's release provisions from, among other things, "commencing... Continuing in any manner, and... Enforcing "any action against any released party except that non-abuse claim holders are not enjoined from taking any action arising out of, or related to any act or omission of a released party that is a criminal act or that constitutes fraud, gross negligence, or willful misconduct see article X.I.one. There is no similar carve out for abuse claim holders to take any action against protected parties or limited protected parties arriving from criminal act or an act that constitutes fraud, gross negligence, or will from misconduct

11. Article X.K of the plan, when coupled with the definitions exculpated party and article I.A.114, provides exculpation for not only a state fiduciaries but also certain Non-estate fiduciaries and has temporal scope includes prepetition periods and possibly post effective date periods.

I. STANDARD

12. A Chapter 11 plan may not be confirmed unless a plan complies with 11 U. S. C. Section 1129(a)

II. The plan cannot be confirmed because it contains nonconsensual third-party releases that violate the Claimant's Fifth Amendment Due Process rights.

13. Litigation rights against non-debtors are property interest protected by the due process clause, " no person shall be deprived of property without due process of law. "United States Constitution Amendment V."

14. Due Process requires Meaningful Notice and Right to Be Heard.

15. A Cause of Action for Damages is a Property Right and is protected under Due Process.

16. The Plan gives no notice, nor gives the claimant any Right to Be Heard

17. The plan forbids non-abuse claim holders and abuse claim holders absolutely unconditionally, irrevocably and forever stayed, restrained, prohibited, barred, and enjoined from "among other things commencing or continuing with any action "in any form "against any "release party or its property or successors or assigns ". The only exception is for non-abuse claims relating to "any act or omission of release party that is criminal act or that constitutes fraud, gross negligence, or willful misconduct. ". No such provision exist for holders of abuse claims.

18. The plans release provisions do not give claim holders proper notice nor do they allow abuse claim holders the opportunity to be heard.

III. The Plan Can Not Be Confirmed Because It Violates U.S.C. Section 1129(b)(1), the Fair and Equitable Requirement and the Prohibition of Unfair Discrimination, which the Debtors have argued, is not a cause of action.

19. The Debtors segregated the classes and chose to isolate the Abuse Victims.

20. As shown, the Plan repeatedly gives the advantage, exception, benefit to the Non-Abuse victim, and not to the Abuse Victim.

21. The Plan has attempted to settle as many Non-Abuse claims as possible.

22. The Plan forbids settling any Abuse Claims.

23. The Plan allows the Non-Abuse claims to be settle first, and at a higher rate than Abuse Victims.

24. The single factor used to justify discrimination is the claimant's status as a Sex Abuse Victim.

IV. The Plan Can Not Be Confirmed Because It Does Not Demonstrate It Meets The Requirements of Section 1129(a)(7), the Best Interest of the Creditor Test.

25. The burden of proof is on the Debtors to show the Plan is in the creditors best interest.

26. The Debtors make no meaningful attempt to adequately demonstrate that the Plan meets the provisions of this test.

V. The Plan Gives preferential treatment to TCJC in channelling all abuse claims, scouting related, and otherwise into the channelling injunction, forever barring the possibility claimants can seek Justice from TCJC. This is an abuse of U.S. Bankruptcy law.

27. The Plan provides for the Trust to defend the interests of TCJC in the event a civil action is filed against them, presumably with Trust money.

28. TCJC is not a party to this action, and is unquestionably solvent.

29. The Bankruptcy courts authority to authorize third party releases is discussed in Pacor, 743 F.2d 984.o

VI. The Plan Cannot be confirmed because it is not produced in good faith.

30. Section 1129(b) expressly required that a plan be proposed in good faith and not "be of any means forbidden by law".

31. The Plan unfairly discriminates against the Abuse Victims.

32. The Plan contains provisions that deprive Abuse Victims of Due Process.

33. In subsection P., "Disallowed Claims", The plan contains provision to convert all disallowed claims to final orders. Disallowed claims that have not been adjudicated "shall nevertheless become a final order on the effective date".

34. Plan still contains several violations of law. After 2 years and $100M we can only assume they are there by design.

## CONCLUSION

30. For the reasons set out herein, the Plan should not be confirmed.

31. Claimant reserves any and all rights, remedies, including, but not limited to, modify, withdraw, supplement, to file a motion, and conduct discovery.

WHEREFORE, The Claimant, ▮▮▮▮▮▮▮▮ respectfully requests the Court to issue an order DENYING confirmation of the plan.



# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on February 24, 2022, the Lonnie WASHBURN's Objection to Confirmation of the Second Modified Fifth Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC was served through email, and courtesy copies by email were provided to the following persons:

EMAIL

Jessica C. Lauria
White & Case LLP
jessica.lauria@whitecase.com

Michael C Andolina
White & Case LLP
mandolina@whitecase.com

Matthew E. Linder
White & Case LLP
mlinder@whitecase.com

Blair M. Warner
White & Case LLP
blair.warner@whitecase.com

Derek C. Abbott
Morris, Nichols, Arsht & Tunnell
dabbott@morrisnichols.com

Eric Moats
Morris, Nichols Arsht & Tunnell
emoats@morrisnichols.com

Paige N. Topper
Morris, Nichols Arsht & Tunnell
ptopper@morrisnichols.com

Kurt F. Gwynne
Reed Smith LLP
kgwynne@reedsmith.com

---

1 The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

1

Thomas Moers Mayer
Kramer Levin Naftalis & Frankel
tmayer@krmerlevin.com

Rachael Ringer
Kramer Levin Naftalis & Frankel
rringer@kramerlevin.com

David E. Blabey, Jr.
Kramer Levin Naftalis & Frankel
dlabey@kramerlevin.com

Jennifer R. Sharret
Kramer Levin Naftalis & Frankel
jsharret@kramerlevin.com

Megan M. Wasson
Kramer Levin Naftalis & Frankel
mwasson@kramerlevin.com

James I. Stang
Pachulski Stang Ziehl & Jones
jstang@pszjlaw.com

James E. O'Neill
Pachulski Stang Ziehl & Jones
joneill@pszjlaw.com

John W. Lucas
Pachulski Stang Ziehl & Jones
jlucas@pszjlaw.com

John A. Morris
Pachulski Stang Ziehl & Jones
jmorris@pszjlaw.com

Robert S. Brady
Young Conaway Stargatt & Taylor LLP
rbrady@ycst.com

Edwin J. Harron
Young Conaway Stargatt & Taylor LLP
eharron@ycst.com

Sharon M. Zieg
Young Conaway Stargatt & Taylor LLP
szieg@ycst.com

Louis R. Strubeck
Norton Rose Fulbright US LLP
louis.strubeck@nortonrosefulbright.com

Kristian W. Gluck
Norton Rose Fulbright US LLP
kristian.gluck@nortonrosefulbright.com

/s/ David L. Buchbinder
David L. Buchbinder, Esq.
Trial Attorney