# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>Hearing Date: March 14, 2022 at 10:00 a.m.<br>Objection Deadline: February 25, 2022 at 4:00 p.m. |

### UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION OF THE THIRD MODIFIED FIFTH AMENDED PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC

Andrew R. Vara, the United States Trustee for Region 3 ("U.S. Trustee"), through his undersigned attorneys, objects to confirmation of the Third Modified Fifth Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC (the "Plan")[2] (D.E. 8813), and states as follows:

### JURISDICTION

1. Under 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system. This oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See, e.g.*, *In re United Artists Theatre Co. v. Walton*, 315 F.3d 217, 225 (3d Cir. 2003) (holding that United States Trustees "protect the public interest by aiding bankruptcy judges in monitoring certain aspects of bankruptcy proceedings"); *U.S. Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *see also*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms shall have the same meaning given them in the Plan unless otherwise noted herein.

1

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. at 88 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6049 (United States Trustees "serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena").

2.  Under 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has the duty to monitor plans and disclosure statements filed in chapter 11 cases, and to file "in connection with hearings under [11 U.S.C. §§ 1125 and 1128] comments with respect to such plans and disclosure statements" whenever the U.S. Trustee considers it to be appropriate. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the issues raised in this pleading.

## STATEMENT OF FACTS

**General Background**

3.  On February 15, 2020, the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code. This Court subsequently entered an order jointly administering the cases. On March 5, 2020, the U.S. Trustee appointed the Creditors' Committee and Tort Claimants' Committee.

4.  On September 15, 2021, the Debtors filed their fifth amended plan (D.E. 6212). As subsequently modified, this plan was approved for solicitation on September 29, 2021.

5.  On December 18, 2021, the Debtors filed their Second Modified Fifth Amended Plan (D.E. 7832). The U.S Trustee filed his objection to that plan on February 7, 2022 (D.E. 8710). The U.S. Trustee refers to and incorporates his Objection filed February 7, 2022 as though fully set forth herein.

6.  On February 15, 2022, the Debtors filed the Plan (D.E. 8813). On February 18, 2022, the Court rescheduled the Confirmation Hearing from March 9, 2022, to March 14, 2022. The Court entered an order amending the Confirmation Hearing Schedule on February 15, 2022 (D.E. 8830). This Order provides in pertinent part: "Parties' supplemental objections shall be

strictly limited to modifications to the Plan and Plan Documents filed on February 15, 2022 and the identity of the Settlement Trustee and Claims Administrators to be disclosed on February 18, 2022." The deadline for filing objections to the plan amendments reflected in the Third Modified Fifth Amended Plan was set for February 25, 2022.

**Significant Provisions Added to the Third Modified Fifth Amended Plan**

7. The Plan now includes the "PSZJ Settlement" (Article V.S.7), which proposes to settle the controversy surrounding PJSZ's involvement in circulating a letter drafted by Timothy Kosnoff to the Tort Claimants' Committee's entire email distribution list. The PSZJ Settlement proposes to settle the "PSZJ Actions" for $2 million.[3] As drafted, the PSZJ Settlement can be read to extinguish the right of all parties in interest—not just the parties to the settlement—to object to PJSZ's final fee application under section 330 of the Bankruptcy Code.[4]

8. The Plan proposes a new Article XIII to the settlement trust's distribution procedures (the "TDPs"). New TDP Article XIII now provides for an "Independent Review Option," under which tort claimants with the most severe claims can elect to have an independent and neutral third party review the Settlement Trustee's determination of the value of their claim. The Independent Review Option is designed to "replicate to the extent possible the amount a reasonable jury might award for the Direct Abuse Claim, taking into account the relative shares of fault that may be attributed to any parties potentially responsible for the Direct Abuse Claim under applicable law and applying the same standard of proof that would apply

---

[3] The PSZJ Actions are defined in Article V.S.7 as: "all claims and disputes the Debtors have, or may have, against the Tort Claimants' Committee and its Representatives, including Pachulski Stang Ziehl & Jones LLP ('PSZJ'), regarding the alleged improper transmittal of communications from Timothy Kosnoff Esq. by PSZJ to thousands of survivors from the official Tort Claimants' Committee's email address, many of whom were not clients of Mr. Kosnoff, and related actions[.]"

[4] Counsel did not respond to the U.S. Trustee's request to clarify this aspect of the PSZJ Settlement.

under applicable law." A tort claimant must pay $20,000 in order to exercise the Independent Review Option, a significant cost barrier. The TDPs now also include provisions that purport to subordinate portions of the Direct Abuse Claims that are ultimately allowed through this independent review process.

**ARGUMENT**

**A.     The PSZJ Settlement Cannot Abrogate Parties' Right to Object to PSZJ's Fee Applications Under 11 U.S.C. § 330**

9.    The U.S. Trustee appreciates that the Debtors and the Tort Claimant's Committee have entered into the PSZJ Settlement. However, the PSZJ Settlement may not be used to foreclose the rights of all other parties in interest to review PSZJ's fee applications under section 330 of the Bankruptcy Code.

10.    Section 330 authorizes a bankruptcy court to award retained professionals "reasonable compensation for actual, necessary services …," based on various factors, including the time spent, the rate charged, and the reasonableness of the attorney's rate compared to that charged by comparably skilled practitioners in non-bankruptcy cases. In the Third Circuit, courts use the "lodestar" method to determine the reasonableness of fees under section 330. *See In re Busy Beaver Bldg. Centers, Inc.,* 19 F.3d 833, 849 n.21 (3d Cir. 1994).

11.    Bankruptcy courts have an independent duty to review fee applications, regardless of whether any party in interest, including the U.S. Trustee, objects. *Id.* at 841.

12.    In light of the foregoing, approval of the PSZJ Settlement should be without prejudice to the rights of all parties in interest, other than the Debtors and Tort Claimants Committee, to object to PSZJ's fee applications, including its final fee application, under section 330 of the Bankruptcy Code. Unless the Plan is revised to so provide, it is objectionable.

### B. The Plan's Independent Review Option Violates 11 U.S.C. § 1129(a)(3)

13. The Independent Review Option added as Article XIII of the TDPs purports to allow abuse claimants the opportunity for an additional, independent review of their claims. But the whole Independent Review Option process, including its $20,000 fee, does not meet the good faith requirement of section 1129(a)(3) of the Bankruptcy Code.

14. The Third Circuit has held that, "'[f]or purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives of the Bankruptcy Code.'" *In re Combustion Engineering*, 391 F.3d 190, 247 (3d Cir. 2004) (quoting *In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000)).

15. Article XIII of the TDPs is not designed to fairly achieve a result consistent with the objectives of the Bankruptcy Code. Although a Direct Abuse Claimant who satisfies the election criteria may elect the Independent Review Option, the provisions of Article XIII in actuality appear designed to dissuade claimants from electing it, because an electing claimant must, among other things:

- Pay a $10,000 initial fee when electing the IRO (Article XIII.G.ii);
- Pay $10,000 more when proceeding to review (Article XIII.G.ii); and
- Pay all Costs (Article XIII.F).

16. Article XIII provides that the Settlement Trustee may, after the conclusion of the Independent Review Option, reject the recommendation of the neutral third-party evaluator. Thus, it is possible for an abuse claimant to seek independent review, pay the more than $20,000 fee for the process, obtain a reviewed claim amount either higher or much higher than that

5

awarded by the Settlement Trustee—and have the Settlement Trustee nullify it all by rejecting the higher claim amount. The Independent Review Option is illusory.

17. At this time, the Plan does not provide an estimate of the average distribution an abuse claimant can expect to receive under the plan. It is therefore impossible for a claimant to determine whether the $20,000 fee for the Independent Review Option is reasonable.

18. The Debtors fail to provide any context for the excessive and burdensome fee to exercise the Independent Review Option. The TDPs contain no explanation of how the fee was calculated, the relationship between the fee and the actual cost of the Independent Review Option, the impact the fee will have as an anticipated percentage of a claimant's distribution, or a comparison between the amount of a claimant's anticipated payment with and without the Independent Review Option.

19. As Debtors have failed to provide any evidence in support of or context surrounding the fee for the Independent Review Option, Debtors cannot meet their burden of justifying or supporting it. Forcing claimants to pay more than $20,000 to elect independent review is excessive. By comparison, the fee for a debtor to file chapter 11 is currently $1,738, and the fee to file an adversary proceeding is currently $350. The $10,000 initial fee for a Direct Abuse Claimant electing the Independent Review Option would be more than five times the fee to file a chapter 11, and almost 29 times the adversary proceeding filing fee. These comparisons do not include the additional fees a claimant would incur—including the cost of retaining an expert, which is a requirement of the Independent Review Option. The Debtors provide no relevant context to justify the five-figure fees as appropriate charges, particularly if a claimant determines to not pursue the Independent Review Option after paying the $10,000 initial fee.

6

There is no good faith basis for imposing these costs on Direct Abuse Claimants who want a neutral third party to review their claim and payment amounts.

20. In addition to the excessive fees, Settlement Amounts over $1 million will now be subordinated to be paid later (Article XIII.M), and Settlement Amounts greater than five times the Maximum Matrix Value are also subordinated (Article XIII.A). Thus, claimants who elect the Independent Review Option will not only have to pay more than $20,000 but may also have their claims paid later than all other Direct Abuse Claimants. There is no good faith basis for this proposed subordination or for the ability of the Settlement Trustee to reject the result of the Independent Review Option. Thus, without significant revisions, the revised TDP provisions are objectionable and the Plan cannot be confirmed.

## CONCLUSION

21. For the reasons set forth above, the Plan cannot be confirmed.

22. The U.S. Trustee leaves the Debtors to their burden of proof, and reserves any and all rights, remedies, and obligations to, *inter alia*: complement, supplement, augment, alter, or modify this objection; file an appropriate Motion; and conduct any discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

**WHEREFORE,** the U.S. Trustee respectfully requests that this Court issue an order denying confirmation of the Plan and granting such other relief as this Court deems just.

Dated: February 25, 2022
      Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 AND 9**

By: /s/ *David L. Buchbinder*
David L. Buchbinder, Esquire
Hannah M. McCollum, Esquire
Trial Attorneys
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207 Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 (Fax)
david.l.buchbinder@usdoj.gov
hannah.m.mccollum@usdoj.gov