**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>　　　Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Re: D.I. 8672, 8813, 8815, 8816, 8907, 8908**<br><br>**Hearing Date: 3/14/22, 10:00 a.m. (ET)**<br>**Objection Deadline: 2/25/22, 4:00 p.m. (ET)** |

**SUPPLEMENTAL RESERVATION OF RIGHTS AND OBJECTION OF EVEREST NATIONAL INSURANCE COMPANY TO DEBTORS' THIRD MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

Everest National Insurance Company ("Everest") files this supplemental[2] reservation of rights and objection (the "Supplemental Objection") to the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization* [D.I. 8813] (as amended, modified, or supplemented the "Plan")[3] filed by Boy Scouts of America and Delaware BSA, LLC (collectively, the "Debtors") on February 15, 2022. This Supplemental Objection supplements the *Reservation of Rights and Objection of Everest National Insurance Company to Debtors' Second Modified Fifth Amended Chapter 11 Plan of Reorganization* [D.I. 8672] (the "Objection") filed on February 4, 2022, incorporates the Objection as if fully set forth herein, and further objects to the modification made to the Plan (the "February 15 Modifications") as follows:

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, TX 75038.

[2] Everest files this Supplemental Objection in accordance with the *Order (I) Amending and Scheduling Certain Supplemental Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization and (II) approving a Limited Supplemental Voting Deadline for Class 8 Direct Abuse Claims and Class 9 Indirect Abuse Claims* [D.I. 8830].

[3] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such term in the Plan.

**INTRODUCTION**

1.     The February 15 Modifications propose terms that improperly impair, prejudice, or otherwise alter valuable rights of Everest relative to certain insurance policies. Everest issued five upper-layer excess liability policies to Debtor Boy Scouts of America (the "<u>BSA</u>") (collectively, the "<u>Everest Excess Policies</u>").[4] Many provisions of the February 15 Modifications appear specifically designed to impair and prejudice insurers that issued excess policies, like the Everest Excess Policies, or otherwise seek to alter the contractual rights of those excess insurers. Thus, Everest objects to the February 15 Modifications as they contain terms that are contrary to the duties and obligations agreed to by the BSA and Everest under the Everest Excess Policies, and improperly attempt to strip or otherwise impair non-settling insurers of valuable rights and defenses in post-confirmation litigation. Everest reserves all rights as they pertain to the terms, conditions, provisions, and exclusions of the Everest Excess Policies, and the policies underlying the Everest Excess Polices (the "<u>Underlying Insurance</u>").

**OBJECTION**

2.     The Plan should not be confirmed because it has a potential adverse impact on Everest's legal, equitable, and contractual rights, interests, defenses, and obligations under the Everest Excess Policies.

3.     Under 11 U.S.C. § 1129(a)(3) a plan may be confirmed "only if . . . [it] has been proposed . . . not by any means forbidden by law[,]" and meets certain other requirements under the Bankruptcy Code. This rule prohibits confirmation of any chapter 11 plan that fails to comply

---

[4] The Everest Excess Policies include, specifically: (1) Everest Policy No. 71G6000050-071 (3/1/2007 – 3/1/2008); (2) Everest Policy No. 71G6000050-081 (3/1/2008 – 3/1/2009); (3) Everest Policy No. 71G6000200-091 (3/1/2009 – 3/1/2010); (4) Everest Policy No. 71G6000050-091 (3/1/2009 – 3/1/2010); and (5) Everest Policy No. 71G6000050-101 (3/1/2010 – 3/1/2011). The Everest Excess Policies are identified in the Plan.

with contracts validly formed under state law. *See In re SPM Mfg. Corp.*, 984 F.2d 1305, 1311 (1st Cir. 1993) (noting bankruptcy courts lack authority to enter orders that "expand the contractual obligations of the parties"). Courts have specifically recognized with respect to insurers that a plan must be "insurance neutral." A plan is insurance neutral if "all contractual rights and coverage defenses [are] fully preserved." *In re Flintkote Co.*, 486 B.R. 99, 117 (Bankr. D. Del. 2012), aff'd 526 B.R. 515 (D. Del. 2014). If a plan increases insurance exposure and the likelihood of liability of carriers, it is not insurance-neutral. *See In re Thorpe Insulation Co.*, 677 F.3d 869, 885 (9th Cir. 2012); *accord In re Global Indus. Techs. Inc.*, 645 F.3d 201, 212 (3d Cir. 2011) (en banc). Therefore, a chapter 11 plan may not be confirmed if it would give the debtor's estate greater rights under its insurance contracts than it held prepetition or materially alter a counterparty's obligations under the contracts. *Cf.*, *In re Pittsburgh Corning Corp.*, 453 B.R. 570, 604–05 (Bankr. W.D. Pa. 2011) (finding a proposed section 524(g) plan "unconfirmable" due to "the lack of clarity regarding insurance neutrality"); *In re Crippin*, 877 F.2d 594, 598 (7th Cir. 1989) ("[B]ankruptcy courts do not have the power to rewrite contracts to allow debtors to continue to perform on more favorable terms."); *see also Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984); *In re Cajun Elec. Power Coop., Inc.*, 230 B.R. 715, 737 (Bankr. M.D. La. 1999).

4. The February 15 Modifications, however, do just that—altering in several ways Everest's contractual obligations as they existed prepetition under the various policies. Some of those reasons are set forth below.

5. First, the February 15 Modifications seek findings by this Court as to inflated claim values. In particular, in Article IX, Section A of the Plan, the Debtors make it a Condition Precedent to Confirmation that this Court "shall have made such findings and determinations regarding the Plan," including that "the Base Matrix Values in the Trust Distribution Procedures

are based on and consistent with the Debtors' historical abuse settlements and litigation outcomes." This position appears to be at odds with the Debtors' own expert, who has opined that the TDP claim values are overstated. Any such finding may implicate consideration of coverage issues and increase Everest's potential exposure and likelihood of liability.

6. Second, Article XIII of the Plan contemplates an Independent Review Option that provides certain Direct Abuse Claimants may seek to enhance their Allowed Claim Amount following a review by a purported "Neutral" third party selected from a panel of retired judges maintained by the Settlement Trust. This process purportedly seeks to replicate "to the extent possible the amount a reasonable jury might award for the Direct Abuse Claim." This process may result in claim amounts of up to five times higher than the maximum amounts allowed under the TDP, which are already inflated.

7. The Independent Review Option goes on to provide that the sources of recovery for these enhanced claims are the Debtors' excess policies, like the Everest Excess Policies, and that the Settlement Trustee may pursue such excess carriers to pay the potentially grossly inflated claim amounts following the abbreviated, non-jury claim valuation process. The entire procedure is designed to increase insurance exposure and the likelihood of liability of excess carriers because it, among other things, increases individual claims amounts well beyond that which may have existed prepetition. Everest objects to the Independent Review Option to the extent that it impairs, prejudices, or otherwise compromises any of Everest's rights under the Everest Excess Policies as to coverage for any specific Abuse Claim that may be asserted by the Settlement Trust or any other party seeking insurance coverage for any Abuse Claim, including, but not limited to, the right to rely on any terms, provisions, exclusions and/or conditions in the Everest Excess Policies or the

Underlying Insurance and the right to apply or subtract any applicable SIR amount to the extent there is any insurance coverage available for the Abuse Claim under the Everest Excess Policies.

8. The Plan as modified by the February 15 Modifications is unconfirmable under 11 U.S.C. § 1129(a)(3) as being in contravention of the Debtors' valid contracts under state-law. Everest objects to the Plan and February 15 Modifications to the extent they do not fully preserve the above rights, and others, and to the extent it increases insurance exposure and the liability, if any, of Everest.

9. Everest further adopts the objections raised by other carriers to the February 15 Modifications, including those set forth in *Certain Insurers' Statement in Advance of the February 11, 2022 Status Conference* [D.I. 8785].

## RESERVATION OF RIGHTS

10. Everest continues to reserve all of its rights under the Everest Excess Policies and at law with respect to the terms, conditions, provisions and exclusions of the Everest Excess Policies, including its rights related to the process of resolving any coverage potentially available for any individual claim.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Everest objects to confirmation of the Debtors' Plan and requests the Court deny confirmation accordingly and grant such other and further relief as is just and proper.

Dated: February 25, 2022

Respectfully submitted,

*/s/ Nader A. Amer*
Nader A. Amer (DE Bar No. 6635)
CARLTON FIELDS, P.A.
2 MiamiCentral
700 NW 1st Avenue, Suite 1200
Miami, Florida 33136-4118
Telephone: (305) 539-7205
Facsimile:  (305) 530-0055
Email: namer@carltonfields.com

*Counsel to Everest National Insurance Company*