**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Re: D.I. 7832, 8683, 8708, 8710, 8813, 9023** |

**LUJAN CLAIMANTS' SUPPLEMENTAL OBJECTION TO THIRD MODIFIED
FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS
OF AMERICA AND DELAWARE BSA, LLC, AND JOINDER IN OBJECTIONS OF
UNITED STATES TRUSTEE AND GUAM COMMITTEE**

COME NOW the Tort Claimants represented by Lujan & Wolff LLP ("Lujan Claimants")[1]

and object to confirmation of Debtors Boy Scouts of America and Delaware BSA, LLC's

(collectively "Debtors") Third Modified Fifth Amended Chapter 11 Plan of Reorganization. On

September 30, 2021, Debtors filed the Solicitation Version of the Modified Fifth Amended Chapter

11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC (D.I. 6443), which

was sent to creditors for vote. On December 18, 2021, during the voting period and just 10 days

before the voting deadline, Debtors filed a Second Modified Fifth Amended Chapter 11 Plan of

Reorganization for Boy Scouts of America and Delaware BSA, LLC (D.I. 7832) ("Second Modified

Plan"). On February 7, 2022, Lujan Claimants filed Lujan Claimants' Objection to Second Modified

Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA,

LLC, and Joinder in Objection Filed by Guam Committee (D.I. 8708) ("Lujan Claimants' Objection"

or "Objection"). On February 15, 2022, Debtors filed a Third Modified Fifth Amended Chapter 11

Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC (D.I. 8813) ("the Plan").

Lujan Claimants hereby object to confirmation of the Plan and incorporate herein their previous

---

[1] See attached Appendix A, which lists the Sexual Abuse Survivor Proof of Claim numbers for Lujan Claimants.

1

Objection. Further, Lujan Claimants hereby join in the United States Trustee's Objection to Confirmation of the Second Modified Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC (D.I. 8710) and the Supplemental Objection of the Official Committee of Unsecured Creditors for the Archbishop of Agana (Bankr. D. Guam 19-00010) to the Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC (D.I. 9023).

## I. BACKGROUND

Debtors Boy Scouts of America ("BSA") and Delaware BSA, LLC ("Delaware BSA") filed for bankruptcy on February 18, 2020, in response to a deluge of child sexual abuse lawsuits initiated against BSA after the reopening of various state and territorial civil statutes of limitations, including in Guam. On the Petition Date, BSA faced 275 lawsuits, 70 of which were filed by Lujan Claimants. As a result of the bankruptcy filing, Lujan Claimants have been automatically stayed and enjoined from pursuing their claims against BSA and the Boy Scouts of America Aloha Council ("the Aloha Council") in the civil courts of Guam.

Lujan Claimants are 75 Survivors who were abused, molested and raped as children in Guam, during the period from 1955 to 1981. They deserve justice not only from BSA but also from other entities responsible for the loss of their innocence, like the Aloha Council, Archbishop of Agana, and insurers against whom Lujan Claimants have a statutory right of direct action.

For the past two years, Lujan Claimants have been patient. Some have died. While they have come forward in their lawsuits and the bankruptcy cases, many have continued to closely guard this terrible secret that they have held onto for decades. Broken, they are searching for healing and fair treatment. This latest Plan by Debtors will give them neither.

## II. ARGUMENT

Like the Second Modified Plan, Debtors' newly modified Plan must be denied confirmation

for continued failure to meet the requirements of the Bankruptcy Code and other applicable law, including but not limited to the reasons that follow. Lujan Claimants reserve their right to make additional arguments at the Confirmation Hearing.

## A.    THE PLAN TAKES AWAY LUJAN CLAIMANTS' RIGHTS TO RECOVER AGAINST DEBTOR ARCHBISHOP OF AGANA WITHOUT AUTHORITY AND WITHOUT ANY CONTRIBUTION.

One of the most head-scratching features of the Plan is that it provides unwarranted and unrequested benefits to a chartered organization that opts out of Limited Protected Party status. Under the Plan, Archbishop of Agana, a debtor in its own pending chapter 11 bankruptcy case in Guam, will benefit from a post-1975 release (due to the Hartford and Century and Chubb settlements) of at least all scouting-related liability, even though it is a debtor that has not given written notice that it wishes to make the Participating Chartered Organization Insurance Assignment and even though it has filed an Objection to the Plan (D.I. 8687). (Plan Art. V.G.1.e.) This benefit will be given even though none of debtor Archbishop of Agana's rights to or under the Abuse Insurance Policies shall be subject to the Participating Chartered Organization Insurance Assignment. (Plan Art. I.A.196.)

Essentially, the Plan tries to block Lujan Claimants who were first abused in 1976 or later from receiving compensation through the bankruptcy case of debtor Archbishop of Agana, where they have timely filed proofs of claim against the Archbishop for its own direct liability for child sexual abuse. The Archbishop of Agana is not only an additional insured under BSA insurance policies, but it has its own assets worth at least tens of millions of dollars. See, e.g., In re Archbishop of Agana, Bankr. Case No. 19-00010 (Second Amended Schedule A/B & Statement of Financial Affairs [D.I. 684]; Amended Schedule A/B, G, H, Statement of Financial Affairs [D.I. 148]; Ch. 11 Voluntary Petition [D.I. 1]) (D. Guam). At this time, there are two competing plans of reorganization

scheduled for a hearing on the disclosure statements.  The Archbishop of Agana clearly has its own assets to pay for its own liability to Lujan Claimants and appears willing and able to do so.

As argued in the earlier Objection, there is no jurisdiction or statutory authority to release Lujan Claimants' claims against the Archbishop of Agana.  Even if there were, the release and channeling injunction are not justified as no contribution whatsoever is being made to Lujan Claimants through Debtors' bankruptcy case herein.  Assuming a substantial contribution is made, Lujan Claimants, as the vast majority of affected creditors[2], have overwhelmingly voted to reject the Plan and therefore the release of the Archbishop from liability.  Without authority, contribution, or overwhelming support of the affected creditors, the Plan cannot be confirmed if it would release debtor Archbishop of Agana of liability and enjoin Lujan Claimants from pursuing payment including through the Archbishop's own bankruptcy case.

Additionally, the District Court of Guam has exclusive jurisdiction to determine whether to permit Lujan Claimants to recover against debtor Archbishop of Agana.  "Among the granted powers [to bankruptcy courts] are the allowance and disallowance of claims; the collection and distribution of the estates of the bankrupts and the determination of controversies in relation thereto; the rejection in whole or in part 'according to the equities of the case' of claims previously allowed; and the entering of such judgments 'as may be necessary for the enforcement of the [Bankruptcy Act].  In such respects the jurisdiction of the bankruptcy court is exclusive of all other courts."  Pepper v. Litton, 60 S. Ct. 238, 244 (1939) (citing United States Fidelity & Guaranty Co. v. Bray, 225 U.S. 205, 217 (1912)).  However, "'[i]n other matters arising in or related to title 11 cases, unless the Code provides otherwise, state courts have concurrent jurisdiction ....'"  In re Mystic Tank Lines Corp.,

---

[2] Out of approximately 76 Survivors who have identified the Archbishop of Agana as the chartered organization in their proofs of claim, about 73 of them are Lujan Claimants.  (See Local Council/Chartered Organization Final Voting Report Date posted on Omni Agent website (Feb. 21, 2022).)

544 F. 3d 524, 529 (3d Cir. 2008) (quoting <u>Sanders v. City of Brady (In re Brady Mun. Gas Corp.)</u>, 936 F. 2d 212, 218 (5th Cir. 1991)).

As the Archbishop of Agana filed for bankruptcy in the District Court of Guam, that federal court has exclusive jurisdiction over the allowance and disallowance of Survivors' claims against the Archbishop of Agana. The District Court of Guam also has exclusive jurisdiction over the collection and distribution of debtor Archbishop of Agana's estate and the determination of controversies in relation thereto.

Here, Debtors' Plan, if confirmed, wrests from the District Court of Guam control over Lujan Claimants' scouting-related abuse claims against debtor Archbishop of Agana, releases such claims (at least for post-1975 abuse), and channels them to the Settlement Trust. This is all despite the District Court of Guam having exclusive jurisdiction over allowance and disallowance of Lujan Claimants' scouting-related abuse claims against the Archbishop filed in that Court, the collection and distribution of the Archbishop's estate, and the determination of controversies related thereto. Despite the overreaching release and channeling injunction provisions of the Plan, there is no concurrent jurisdiction here, as the Court is not a state court. Debtors have cited no authority that allows this Court to effectively disallow Lujan Claimants' scouting-related abuse claims against debtor Archbishop of Agana. No plan should be confirmed which prevents Survivors from recovering against a debtor chartered organization in its own bankruptcy case, especially when the debtor chartered organization filed for bankruptcy more than one year before Debtors filed for bankruptcy herein. To confirm such a plan would also lead to an inequitable outcome since Lujan Claimants would be denied recovery from the Archbishop not because a state court with concurrent jurisdiction ruled against Lujan Claimants on the merits of their abuse claims against the Archbishop but simply because Debtors wish to proceed with low-dollar insurance policy buybacks free and clear of the Archbishop's interests as an additional insured. This does not provide a sufficient basis for

encroachment upon the District Court of Guam's exclusive jurisdiction over Lujan Claimants' filed claims against debtor Archbishop of Agana.  The Plan must be denied confirmation.

**B.      THE RECENTLY RELEASED BREAKDOWN OF THE SURVIVOR VOTE SHOWS THE TRUE EXTENT THAT DEBTORS LOST THE VOTE TO PERMIT RELEASES OF LOCAL COUNCILS, CHARTERED ORGANIZATIONS, AND OTHER ENTITIES.**

On February 21, 2022, Debtors released for the first time the breakdown of the Survivor vote showing the vote of each voting Survivor and the local councils, chartered organizations, and other entities against whom Survivors are asserting claims.  (See Local Council/Chartered Organization Final Voting Report Date posted on Omni Agent website (Feb. 21, 2022).)  Further, Debtors have committed to file herein by February 25, 2022, a summary of the breakdown by local council and chartered organization.  Debtors have also committed to filing an updated breakdown and summary based on the results of the limited extended voting deadline.

The breakdown shows that well over 93% of voting Survivors who have claims against the Archbishop of Agana voted to Reject the Plan; at least 70, or more than 95%, of the Reject votes were made by Lujan Claimants.  The chart reveals also that 197 Survivors asserted claims against the Aloha Council and of that 197, 118 voted to Reject, 63 voted to Accept, 9 Abstained, and 7 ballots were Invalid.  Thus, of the voting Survivors with claims against the Aloha Council, 65.2% voted to Reject the Plan (118/181) and 34.8% voted to Accept the Plan (63/181).  Out of the 118 Survivors who voted to Reject the Plan, 72 are Lujan Claimants and, thus, Lujan Claimants constitute 40 out of the 65.2% Reject vote.  Thus, affected creditors voted compellingly to Reject the release of claims against the Archbishop of Agana and the Aloha Council.

Although the breakdown data will undoubtedly change, given the limited extended voting deadline to vote on the newly modified Plan, the breakdown will reveal the true extent of affected creditor support and non-support for nondebtor releases.  The breakdown will reveal whether Survivors affected by the release of particular local councils, chartered organizations, and other

entities voted to Accept the Plan in an overwhelming show of support for the Plan, *i.e.,* over 90% of impacted creditors who voted, voted to approve the Plan.  Lacking overwhelming support of affected creditors to approve the Plan's release of each local council, chartered organization, and other entity, the Plan should not be confirmed to release such nondebtors of child sexual abuse liability.

**C.    THE INDEPENDENT REVIEW OPTION IMPERMISSIBLY GRANTS DIRECT ACTION RIGHTS AND PRIORITY RIGHTS TO INSURANCE PROCEEDS.**

The newly modified Plan provides a new mechanism for payment of an allowed direct abuse claim, called the Independent Review Option.  (Plan Ex. A Art. XIII.)  This Option is available to Survivors who pay the Settlement Trust at least $10,000 for review of their claim.  Survivors who opt for this process may receive awards of more than 5 times the Maximum Matrix Value in the applicable tier set forth in the Claims Matrix.  If a claim is valued at over $1 million, the first $1 million will be paid from the General Trust and amounts over $1 million will generally be paid from the Excess Award Fund, which is funded by proceeds of non-settling excess insurance and certain chartered organizations' separate insurance policies.  Survivors entitled to Excess Award Shares will receive 100% of the amounts awarded that are applicable to the expenses incurred by the Survivor in pursuing this Option or that are awarded for any bad faith claim, 100% of the amounts awarded from any policy of a Responsible Insurer that does not have applicable aggregate limits, and/or up to 80% of amounts collected in satisfaction of the Accepted Settlement Recommendation from any policy that has applicable aggregate limits.  The Excess Award Fund shall be used to pay the Excess Award Shares and, once the Excess Award Shares are paid in full, the remaining funds in the Excess Award Fund shall become General Trust funds available to pay all allowed Survivor claims.  Further, if a Neutral's Settlement Recommendation determines that a chartered organization not protected by the Channeling Injunction is responsible for all or a portion of liability for Direct Abuse Claim assigned to the Settlement Trust, the Survivor may then bring an action in any court of competent

jurisdiction against the chartered organization and its insurers to recover the allocated portion of liability and any additional damages.

In a nutshell, the Independent Review Option provides Survivors whose claims are valued at over $1 million a priority right to at least proceeds of non-settling excess insurance and certain chartered organizations' separate insurance policies. And the Option provides Survivors a right of direct action against insurers of chartered organizations. Yet, the Plan does not require that Survivors who choose to undergo the Independent Review Option have direct action rights against insurers or even that they have claims which implicate non-settling excess insurance or certain chartered organizations' separate insurance policies.

At the same time, the Plan continues to release Lujan Claimants' direct action claims against insurers (of Debtors, local councils, chartered organizations) without their consent; the Plan continues to channel Lujan Claimants' direct action claims to the Settlement Trust; the Plan continues to enjoin Lujan Claimants from directly suing insurers; and the Plan continues to sell insurance policies free and clear of Lujan Claimants' interests without providing them adequate protection and compensation.

As argued in Lujan Claimants' earlier filed Objection, Lujan Claimants, as Survivors with prejudgment direct action rights under Guam law, 22 GCA § 18305, have an interest in BSA's (and other tortfeasors') insurance policies. Prejudgment direct action claimants, like Lujan Claimants, are third party beneficiaries to insurance policies, Litton v. Ford Motor Co., 554 So. 2d 99, 103 (La. Ct. App. 1989), with rights in the policies that vest "at the time of the tort," Hayes v. New Orleans Archdiocesan Cemeteries, 805 So. 2d 320, 323 (La. Ct. App. 2001). An accrued cause of action, such as for negligence, is a vested property interest entitled to due process protection that accrues on the date of the plaintiff's injury. Matthies v. Positive Safety Mfg. Co., No. 99-0431, 2000 WL 892825, at *3 (Wis. Ct. App. July 5, 2000) (citing Hunter v. Sch. Dist. Gale-Ettrick-Trempealeau,

8

97 Wis. 2d 435, 442, 445 (1980), and Martin v. Richards, 192 Wis. 2d 156, 206 (Wis. 1995)).  The debtor must provide adequate protection to a creditor who has an interest in the debtor's property. In re Lee, 25 B.R. 135, 139 (Bankr. E.D. Pa. 1982).

However, absent policy language or a statutory provision to the contrary, a tort claimant generally possesses no interest in a tortfeasor's insurance policy and so may not sue the insurer directly to recover under the policies.  See 1 ROWLAND H. LONG, THE LAW OF LIABILITY INSURANCE § 1.06[3][a], at 1-34.2 (2007) ("The modern rule is that, in the absence of a contractual or statutory provision allowing a direct action, the claimant has no right to a direct action."); 46A C.J.S. Insurance § 1942 (2007) ("As a general rule, in the absence of policy or statutory provisions to the contrary, one who suffers an injury which comes within the provisions of a liability insurance policy is not in privity of contract with the insurance company, and cannot reach the proceeds of the policy for the payment of his or her claim by an action directly against the insurance company."); 22 ERIC MILLS HOMES, HOLMES' APPLEMAN ON INSURANCE 2d § 142.1[B][1], at 480 (2003) (stating that, where there is no direct action statute, the claimant is not a third party beneficiary under the insurance policy).  Thus, to the extent that Survivors who choose the Independent Review Option are not prejudgment direct action claimants, they lack the right to directly sue insurers for compensation and they lack an interest in the insurance policies that would require their adequate protection or compensation including through receiving a priority right to insurance proceeds.  As the Independent Review Option improperly grants these rights, the Plan is not confirmable with this Option.

Although the Independent Review Option wrongly grants direct action and priority rights in contravention of the law, this Option proves that granting particular Survivors a priority right to insurance proceeds and continued right of direct action against insurers is not offensive to a plan of reorganization of Debtors.  Lujan Claimants have previously argued that they should retain their direct action rights against insurers, maintain their interests in the insurance policies, or be adequately

protected and compensated for sales of insurance policies by having at least a priority right to insurance proceeds.  As Debtors admit that this can be done for particular Survivors, Lujan Claimants and other prejudgment direct action Survivors should be granted this relief, and without having to pay $10,000 or $20,000 or any other amount.

## D.    THE INSURANCE SETTLEMENT AGREEMENTS SHOULD BE DENIED APPROVAL.

The Plan now reveals the written settlement agreements with insurers and that they involve sales free and clear of interests in the policies and proceeds of the policies.  However, these agreements must be denied approval for reasons including but not limited to the following.

### 1.    The Proceeds of Liability Insurance Policies Are Not Property of the Bankruptcy Estate and Cannot Be Released or Enjoined.

The bankruptcy estate only includes property to which the debtor would have had a right if the debtor were solvent.  First Fidelity Bank v. McAteer, 985 F. 2d 114, 116 (3d Cir. 1993) (citing In re La. World Exposition, Inc., 832 F. 2d 1391, 1401 (5th Cir. 1987)).  Insurance policies are considered part of the property of a bankruptcy estate.  ACandS, Inc. v. Travelers Casualty & Surety Co., 435 F. 3d 252, 260 (3d Cir. 2006) (citing Estate of Lellock v. The Prudential Ins. Co. of Am., 811 F. 2d 186, 189 (3d Cir. 1987)).  The debtor's right to its insurance proceeds is property of the estate, except where the debtor does not own the insurance proceeds but just owns the policy.  In re Nutraquest, Inc., 434 F. 3d 639, 647 n.4 (3d Cir. 2006).  For example, when the debtor corporation's liability policy insured only the corporation's directors and officers (and would only pay them), the liability proceeds were not property of the bankruptcy estate.  Id. (citing In re La. World Exposition, 832 F. 2d at 1399-401).  "The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim."  Houston v. Edgeworth (In re Edgeworth), 993 F. 2d 51, 55-56 (5th Cir. 1993).  The debtor has no cognizable claim to liability insurance proceeds paid by an insurer

10

on account of a covered claim.  <u>Landry v. Exxon Pipeline Co.</u>, 260 B.R. 769, 786 (Bankr. M.D. La. 2001).

Here, while the bankruptcy estate includes BSA's interest in BSA insurance policies, the bankruptcy estate does not include the proceeds of BSA liability insurance policies since those proceeds are payable not to BSA but to injured persons, including Survivors of child sexual abuse. Not being part of the bankruptcy estate, the disposition of the liability insurance proceeds cannot be allowed free and clear of Lujan Claimants' interests under sections 363(f), 1123(a)(5)(D), or 1129(b)(2)(A)(ii) of the Bankruptcy Code.  Instead, Lujan Claimants' interests in the insurance proceeds and direct action rights against insurers cannot be released pursuant to 11 U.S.C. § 524(e).

Even if third party releases are permitted here, the release of Lujan Claimants' claims against insurers to recover payment of proceeds must satisfy the requirements for third party releases: fairness, necessity to the reorganization, specific factual findings to support these conclusions, and reasonable consideration given in exchange for the release and permanent injunction.  <u>In re Continental Airlines</u>, 203 F. 3d 203, 214-15 (3d Cir. 2000).  As argued in Lujan Claimants' previous Objection, neither these factors nor the Master Mortgage factors are satisfied to allow release of claims against insurers.  These releases are certainly not necessary to Debtors' successful reorganization since Debtors admit that they can successfully reorganize under a BSA Toggle Plan which includes no insurance policy buybacks or insurer releases.  They certainly are not necessary as Debtors have proposed other plans which do not include a Century and Chubb settlement agreement or even a Hartford settlement agreement.  There is simply no need for Debtors to sell their policies back to insurers, especially for insultingly low dollars.  The releases should be denied.

//

//

//

11

**2. The Hartford and Century and Chubb Companies Insurance Settlements for Insurance Policy Buybacks Free and Clear of Others' Interests in the Policies Are for Payment Grossly Below Policy Limits and Should Be Denied.**

The Bankruptcy Code's protection of the debtor from liability does not affect the liability of the debtor's insurers. First Fidelity Bank, 985 F. 2d at 114. Courts, relying on 11 U.S.C. § 524(e), have permitted claimants to proceed with tort claims against the debtor for the purpose of collecting from the debtor's liability insurer. Id. (citing Green v. Welsh, 956 F. 2d 30 (2d Cir. 1992); In re Jet Fla. Sys., Inc., 883 F. 2d 970 (11th Cir. 1989)). Thus, the creditor remains free to recover the full amount of the original obligation from any nondebtor party including an insurer. Id.

The general rule is that, when an insurer pays proceeds of the insurance to the person who is the proper recipient under the policy, such payment is a discharge of the liability of the insurer where the entire amount due is paid. 46A C.J.S. Insurance § 1986 (2007). Where only a partial payment of the proceeds is made to the person designated by the policy, the insurer is discharged from liability to the extent of the amount paid. Id.

It cannot be disputed by Debtors that neither settlement involves payment up to the limits of these mostly nonaggregate policies, which include yearly primary insurance policies with $500,000 per occurrence limits and yearly excess insurance of up to $2 million per occurrence. Without full payment, Survivors are free to recover the remaining payment owed under the policies from the insurers. Since the insurance settlement agreements seek the total release of Hartford and Century of all liability under the policies without payment of the entire amount due, they must be denied approval.

**3. The Sale and Settlement of Nondebtors' Separate Insurance Policies Must Be Denied.**

A bankruptcy court lacks authority to dispose of property of a nondebtor. In re Aegean Marine Petroleum Network, Inc., 599 B.R. 717, 723 (Bankr. S.D.N.Y. 2019). Despite this, both the Hartford and Century settlements attempt to release the insurers of their obligation to provide

coverage to local councils and chartered organizations under their own separate non-BSA insurance policies and the 1976 and 1977 Hartford insurance policies which were released by BSA. The releases are a shocking overreach supported by no provisions of the Bankruptcy Code or other law. Like liability insurance proceeds, non-BSA insurance policies and released BSA insurance policies are not property of the bankruptcy estate and therefore may not be disposed of free and clear under sections 363(f), 1123(a)(5)(D), or 1129(b)(2)(A)(ii) of the Bankruptcy Code.

The sale and settlement of chartered organizations' separate Hartford insurance policies are additionally problematic for the reason that, under the previous Plan, the Hartford settlement agreement did not include release of Hartford Protected Parties from liability, loss, or expense with respect to any Claim by any Chartered Organization arising out of or relating to coverage for Abuse Claims under any Hartford Policy or policy issued by any Hartford Protected Party. (See Notice of Filing of Exs. I-1 & J-1 [D.I. 8816] Ex. A at VI.D.) Further, the earlier Hartford settlement agreement did not include release of Direct Action Claims, such as Lujan Claimants' direct action claims. (Id. Ex. A at I.A.72.) Although Hartford is receiving additional consideration, it continues to pay the same, unchanged purchase price of $787 million, thus demonstrating the unfairness and unsound business judgment of Debtors in entering the deal. The sales of these non-BSA policies must not be permitted.

### E.    DEBTORS' BAD FAITH IN PROPOSING THE PLAN IS NOT NEGATED BY THEIR 11TH HOUR RESCUE OF DELAWARE BSA FROM DISSOLUTION.

Only eight (8) calendar days after Lujan Claimants' objection to the Plan based on lack of good faith, Debtors filed a Plan that breathes new life into debtor Delaware BSA. However, this new revival of Delaware BSA does not fix the problem. While it will now continue in existence past the Effective Date, Delaware BSA is still not a going concern as it has had no revenues or full-time employees, (Delaware BSA's Monthly Operating Report [D.I. 8694]), and its sole asset is a single bank account at JP Morgan that had only $9,690.60, as reflected in the Schedules, (Schedules of

Assets & Liabilities for Delaware BSA, LLC [D.I. 377]). Incorporated just 7 months before Debtors filed for bankruptcy, Delaware BSA was unmistakably born for no discernible business purpose, as Debtors planned its dissolution over and over again.[3] The abrupt change in course to continue its existence does not moot Lujan Claimants' objection to the Plan for lack of good faith. It does not change the reality that Delaware BSA was formed to provide venue outside of the Fifth Circuit and it does not do anything as a business.

**III. CONCLUSION**

Based on the foregoing, the Plan must be denied confirmation for multiple failures to comply with the Bankruptcy Code and other applicable law.

Dated: February 25, 2022.                    Respectfully submitted,

 /s/ Christopher D. Loizides
Christopher D. Loizides (No. 3968)
Loizides, PA
1225 North King Street, Suite 800
Wilmington, DE 19801
Phone: 302.654.0248
Email: Loizides@loizides.com

and

LUJAN & WOLFF LLP

 /s/ Delia Lujan Wolff
Delia Lujan Wolff
Suite 300, DNA Bldg.
238 Archbishop Flores St.
Hagatna, Guam 96910
Phone: (671) 477-8064/5
Facsimile: (671) 477-5297
Email: dslwolff@lawguam.com
*Attorneys for Lujan Claimants*

---

[3] (See Amended Ch. 11 Plan of Reorganization [D.I. 2293] Art. V.F. (Dissolution of Delaware BSA); Second Amended Ch. 11 Plan of Reorganization [D.I. 2592] Art. V.F. (Dissolution of Delaware BSA); Third Amended Ch. 11 Plan of Reorganization [D.I. 5368] Art. V.F. (Dissolution of Delaware BSA); Fourth Amended Ch. 11 Plan of Reorganization [D.I. 5484] Art. V.F. (Dissolution of Delaware BSA); Fifth Amended Ch. 11 Plan of Reorganization [D.I. 6212] Art. V.F. (Dissolution of Delaware BSA); Modified Fifth Amended Ch. 11 Plan of Reorganization (Solicitation Version) [D.I. 6443] Art. V.F. (Dissolution of Delaware BSA); Second Modified Fifth Amended Ch. 11 Plan of Reorganization [D.I. 7832] Art. V.F. (Dissolution of Delaware BSA).)

# APPENDIX A

The foregoing Lujan Claimants' Supplemental Objection to Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC, and Joinder in Objections of United States Trustee and Guam Committee was filed by the following creditors who each filed a Sexual Abuse Survivor Proof of Claim and are represented by Lujan & Wolff LLP.  The numbers below are the claim numbers for each creditor's Sexual Abuse Survivor Proof of Claim, including amendments thereto.

| | | | | |
|---|---|---|---|---|
| 248 | 2991 | 6824 | 25063 | 79403 |
| 1551 | 3051 | 7976 | 25069 | 79769 |
| 1670 | 3120 | 7977 | 33028 | 80328 |
| 1677 | 3385 | 8037 | 35352 | 80655 |
| 1746 | 3610 | 8038 | 35354 | 80982 |
| 1757 | 3612 | 10548 | 38591 | 87715 |
| 1765 | 3614 | 11250 | 40889 | 87757 |
| 1913 | 3616 | 11251 | 40890 | 96418 |
| 1953 | 4855 | 14187 | 45700 | 96419 |
| 2003 | 4857 | 15104 | 45702 | 103377 |
| 2010 | 4859 | 15139 | 48168 | 103378 |
| 2011 | 5646 | 17480 | 58317 | 4858 |
| 2394 | 5646 | 18860 | 58370 | 4860 |
| 2403 | 5648 | 18873 | 67267 | |
| 2433 | 5655 | 22872 | 67286 | |
| 2597 | 6432 | 22873 | 67293 | |
| 2840 | 6434 | 22874 | 73585 | |
| 2885 | 6823 | 23388 | 73607 | |