## Exhibit P-2

**Blackline Pages of Revised Form of Restated 2010 Bond Documents**

**You may access a full and complete copy of the Form of Restated 2010 Bond Documents, free of charge, at https://omniagentsolutions.com/bsa-plansupplement.**

PROPOSED FINAL VERSION 11/23/20213/2/2022
PRIVILEGED AND CONFIDENTIAL
FOR MEDIATION PURPOSES ONLY
SUBJECT TO F.R.E. 408

AMENDED AND RESTATED
SERIES 2010B BOND PURCHASE AND LOAN AGREEMENT


among


THE COUNTY COMMISSION OF FAYETTE COUNTY (WEST VIRGINIA),

BOY SCOUTS OF AMERICA,

ARROW WV, INC.,

and

JPMORGAN CHASE BANK, N.A.


Dated as of [●], 2022



The County Commission of Fayette County (West Virginia)
Commercial Development Revenue Bond
(Arrow WV Project), Series 2010B

TABLE OF CONTENTS

Page

ARTICLE I DEFINITIONS AND RULES OF CONSTRUCTION ................................ 2

Section 1.1.    Definitions ........................................................................ 2
Section 1.2.    Rules of Construction. ........................................................ 18
Section 1.3.    Accounting Terms; GAAP. ................................................... 18

ARTICLE II REPRESENTATIONS AND WARRANTIES ..................................... 19

Section 2.1.    Representations and Warranties of the Issuer ........................ 19
Section 2.2.    Representations and Warranties of the Borrower and Arrow WV ... 21

ARTICLE III THE BOND ........................................................................... 24

Section 3.1.    Amendment and Restatement of the Original 2010B Bond ......... 24
Section 3.2.    Terms of the Bond. ............................................................ 24
Section 3.3.    Bond to be Issued in Registered Form; Registration and Transfer. .. 25
Section 3.4.    Purchase as a Loan ........................................................... 26
Section 3.5.    Optional Redemption of the Bond and Prepayment of the Note ..... 2627
Section 3.6.    Conditions Precedent ......................................................... 27

ARTICLE IV LOAN OF PROCEEDS TO BORROWER ....................................... 29

Section 4.1.    Repayment of Loan ............................................................ 29
Section 4.2.    Amounts Payable ............................................................... 29
Section 4.3.    No Set-Off ....................................................................... 30
Section 4.4.    Prepayments .................................................................... 30
Section 4.5.    Credits Against the Note ..................................................... 30
Section 4.6.    Additional Payments upon Determination of Taxability; Excess Cash Sweep
                Prepayments. ................................................................... 30
Section 4.7.    Assignment. ..................................................................... 3132
Section 4.8.    Payments Assigned ............................................................ 3233

ARTICLE V [RESERVED] .......................................................................... 33

ARTICLE VI BORROWER'S COVENANTS .................................................... 33

Section 6.1.    Affirmative Covenants. ....................................................... 33
Section 6.2.    Negative Covenants. .......................................................... 36
Section 6.3.    Financial Covenants. .......................................................... 4142

ARTICLE VII TAX COVENANT ................................................................. 43

Section 7.1.    Tax Covenant ................................................................... 43

ARTICLE VIII EVENTS OF DEFAULT ............................................................... 4344

Section 8.1.   Events of Default .................................................................... 4344
Section 8.2.   Remedies of Holder ................................................................ 46
Section 8.3.   Payments After Default; No Waiver ....................................... 4647
Section 8.4.   No Remedy Exclusive .............................................................. 47

ARTICLE IX LIMITATION OF LIABILITY; INDEMNIFICATION ................... 47

Section 9.1.   Limitation of Issuer's Liability ................................................ 47
Section 9.2.   Indemnification by Borrower .................................................. 4748
Section 9.3.   Issuer, Commissioner, Attorneys. Officers, Employees and Agents of Issuer
              Not Liable ........................................................................... 49

ARTICLE X MISCELLANEOUS .......................................................................... 4950

Section 10.1.   Assignment. ......................................................................... 4950
Section 10.2.   Notices ................................................................................. 50
Section 10.3.   Amendments ........................................................................ 51
Section 10.4.   UCC Financing Statements ................................................... 52
Section 10.5.   No Third Party Beneficiary ................................................... 52
Section 10.6.   Miscellaneous. ..................................................................... 52
Section 10.7.   References to the Bond Ineffective After Bond Paid ............. 53
Section 10.8.   No Implied Waiver ................................................................ 53
Section 10.9.   Issuer Representative ............................................................ 53
Section 10.10. Borrower Representative ........................................................ 5354
Section 10.11. USA PATRIOT Act ................................................................ 54
Section 10.12. Maximum Rate. ..................................................................... 54
Section 10.13. No Fiduciary Duty. ................................................................ 5455
Section 10.14. Amendment and Restatement ................................................ 55
Section 10.15. Final Agreement .................................................................... 56

**THIS AMENDED AND RESTATED SERIES 2010B BOND PURCHASE AND LOAN AGREEMENT** dated as of [●], 2022, among THE COUNTY COMMISSION OF FAYETTE COUNTY (WEST VIRGINIA), acting for and on behalf of Fayette County, West Virginia, a political subdivision of the State of West Virginia (the "Issuer"), JPMORGAN CHASE BANK, N.A., a national banking association, as lender and purchaser of the Bond (the "Lender"), BOY SCOUTS OF AMERICA, a non-profit federally chartered corporation (the "Borrower"), and ARROW WV, INC., a West Virginia nonprofit corporation ("Arrow WV").

W I T N E S S E T H:

**WHEREAS**, the Issuer is authorized to exercise all the powers set forth in the Industrial Development and Commercial Development Bond Act, Chapter 13, Article 2C of the Code of West Virginia of 1931, as amended (the "Act"), to issue revenue bonds for the purpose of financing a "commercial project" as authorized by the Act;

**WHEREAS**, Arrow WV is a Subsidiary (as defined herein) of the Borrower and Arrow WV owns and operates a facility that is a "commercial project" as defined in the Act;

**WHEREAS**, the Issuer, the Borrower, Arrow WV and the Lender are parties to the Bond Purchase and Loan Agreement, dated as of November 5, 2010 (as amended by the First Amendment to Bond Purchase and Loan Agreement, dated as of March 9, 2012, the Second Amendment to Bond Purchase and Loan Agreement, dated as of March 2, 2017, and the Third Amendment to Bond Purchase and Loan Agreement, dated as of March 21, 2019, the "Original Bond Purchase and Loan Agreement"), pursuant to which the Issuer issued and sold to the Lender and the Lender purchased from the Issuer (i) the Commercial Development Revenue Bond (Arrow WV Project), Series 2010A, in the original principal amount of $50,000,000 (the "2010A Bond") and (ii) the Commercial Development Revenue Bond (Arrow WV Project), Series 2010B, in the original principal amount of $50,000,000 (the "Original 2010B Bond" and, together with the 2010A Bond, the "Original Bonds");

**WHEREAS**, the proceeds of the sale of the Original Bonds were loaned by the Issuer to the Borrower to, *inter alia*, acquire, construct, and equip the Summit Bechtel Family National Scout Reserve located in Fayette County, West Virginia and Raleigh County, West Virginia, and the Borrower agreed to repay such loan on the terms and conditions set forth in the Original Bond Purchase and Loan Agreement;

**WHEREAS**, simultaneously with the issuance of the Original Bonds, the Borrower executed and delivered to the Issuer promissory notes to evidence its obligations thereunder to make payments sufficient to pay the Original Bonds, and the Issuer assigned such promissory notes to the Lender to secure the Original Bonds;

**WHEREAS**, on November 15, 2015, all principal of and interest on and other all amounts payable in respect of the 2010A Bond were fully repaid and the promissory note in respect of the 2010A Bond was cancelled and surrendered to the Borrower;

effect as any of the foregoing) relating to such asset and (c) in the case of securities, any purchase option, call or similar right of a third party with respect to such securities.

"Liquidity" means, as of any date of determination, the sum, on a consolidated basis, without duplication, of the following: (i) the Borrower's, its Subsidiaries' and its Affiliates' cash and cash equivalents, short-term investments and other investments to the extent readily marketable which, in each case, are not subject to any Lien (other than a Lien created under the Collateral Documents or the Lien securing the Foundation Loan) and not subject to any restriction on transfer or use imposed by the applicable donor, grantor or applicable law; *plus* (ii) the Borrower's, its Subsidiaries' and its Affiliates' cash and cash equivalents, short-term investments and other investments to the extent readily marketable which are subject to a Lien securing Indebtedness of the Borrower but are otherwise not subject to any restriction on transfer or use imposed by the applicable donor, grantor or applicable law other than the payment of the Indebtedness secured thereby; provided, however, notwithstanding anything to the contrary contained in the forgoing, "Liquidity" shall not include cash or cash equivalents maintained as cash collateral for letters of credit subject to the sole dominion and control of a third party pursuant to a control agreement, collateral assignment or other agreement restricting the transfer or use thereof (for the avoidance of doubt, in the case of "springing" control agreement, only after such third party's control has been activated).

"Liquidity Coverage Ratio" has the meaning set forth in Section 6.3(a).

"Loans" means the "Loans" as defined in the Credit Agreement.

"Material Adverse Effect" means a material adverse effect on (a) the business, assets, operations or condition, financial or otherwise, of the Borrower, (b) the validity or enforceability of any Bond Document or (c) the rights of or remedies available to the Lender or the Issuer under any Bond Document.

"Material Indebtedness" means Indebtedness (other than arising in connection with the Bond Documents but including, without limitation, obligations in respect of one or more Swap Agreements) of any one or more of the Borrower and the Subsidiaries in an aggregate principal amount exceeding $1,000,000. Material Indebtedness shall specifically include the Indebtedness arising in connection with the Credit Agreement, the 2012 Bond Documents and any Subordinated Indebtedness.

"Maximum Rate" has the meaning set forth in Section 10.12(a).

"Moody's" means Moody's Investors Service, Inc. or any successor thereto.

"Mortgage" means any mortgage, deed of trust or other agreement which conveys or evidences a Lien in favor of the Collateral Agent, for the benefit of the Holder and the other secured creditors, on real property of either the Borrower or Arrow WV, including any amendment, restatement, modification or supplement thereto.

"Multiemployer Plan" means a multiemployer plan as defined in Section 4001(a)(3) of ERISA.

"Potential CDSCR Default" has the meaning set forth in Section 8.1(p).

"Potential Liquidity Default" has the meaning set forth in Section 8.1(o).

"Principal Amount" means the principal amount of the Bond outstanding from time to time.

"Project" means the development and construction of the roads, water lines, sewer lines and camp site improvements on the Summit National Scout Reserve located in Fayette County, West Virginia and Raleigh County, West Virginia which is owned by Arrow WV.

"Redetermination Date" means: (a) in relation to any December 31 Test Date, the next March 31; and (b) in relation to any June 30 Test Date, the next September 30.

"Release" means any releasing, spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, migrating, disposing or dumping of any substance into the environment.

"Requirement of Law" means, with respect to any Person, (a) the charter, articles or certificate of organization or incorporation and bylaws or operating, management or partnership agreement, or other organizational or governing documents of such Person, and (b) any statute, law (including common law), treaty, rule regulation, code, ordinance, order, decree, writ, judgment, injunction or determination of any arbitrator or court or other Governmental Authority (including Environmental Laws), in each case applicable to or binding upon such Person or any of its property or to which such Person or any of its property is subject.

"Restricted Payment" means any dividend or other distribution (whether in cash, securities or other property) with respect to any Equity Interests, or any payment (whether in cash, securities or other property), including any sinking fund or similar deposit, on account of the purchase, redemption, retirement, acquisition, cancellation or termination of any Equity Interests.

"Rolling Period" means the period of 12 consecutive calendar months ending on the last day of each June or December, as applicable.

"S&P" means S&P Global Ratings, and any successor thereof.

"Sanctioned Country" means, at any time, a country, region, or territory which is itself the subject or target of any Sanctions (at the time of this Agreement, ~~Crimea~~the so-called Donetsk People's Republic, the so-called Luhansk People's Republic, the Crimea Region of Ukraine, Cuba, Iran, North Korea and Syria).

"Sanctioned Person" means, at any time, (a) any Person listed in any Sanctions-related list of designated Persons maintained by the Office of Foreign Assets Control of the U.S. Department of the Treasury or the U.S. Department of State, the United Nations Security Council, any European Union member state, Her Majesty's Treasury of the United Kingdom or other relevant sanctions authority, (b) any Person operating, organized or resident in a Sanctioned Country, (c) any Person owned or controlled by any such Person or Persons

including any sinking fund or similar deposit, on account of the purchase, redemption, retirement, acquisition, cancellation or termination of any Indebtedness, except:

(i)      payment of Indebtedness related to the Bond Documents, the 2012 Bond Documents and the Loan Documents (as defined in the Credit Agreement);

(ii)      payment of regularly scheduled interest and principal payments as and when due in respect of any Indebtedness other than payments in respect of Subordinated Indebtedness prohibited by the subordination provisions thereof;

(iii)      payment of Indebtedness constituting pension plan liabilities arising under a Plan;

(iv)      refinancing of Indebtedness to the extent permitted by Section 6.2(a);

(v)      payment of Indebtedness under the BSA Settlement Trust Note;

(vi)      payment of Indebtedness under the Foundation Loan Agreement; and

(vii)      payment of secured Indebtedness that becomes due as a result of the voluntary sale or transfer of the property or assets securing such Indebtedness.

(i)      <u>Transactions with Affiliates</u>. The Borrower will not, nor will it permit any Subsidiary to, sell, lease or otherwise transfer any property or assets to, or purchase, lease or otherwise acquire any property or assets from, or otherwise engage in any other transactions with, any of its Affiliates, except (A) transactions are at prices and on terms and conditions not less favorable to the Borrower or such Subsidiary than could be obtained on an arm's-length basis from unrelated third parties, (B) any loan, advance, or Guarantee permitted by <u>Section 6.2(d)(v)</u> or <u>(vi)</u>, (C) any Restricted Payment permitted by <u>Section 6.2(h)</u>, (D) any incurrence of Subordinated Indebtedness owing to an Affiliate permitted by <u>Section 6.2(a)(x)</u>, and (E) the lease of the Summit Bechtel Family National Scout Reserve by Arrow WV to the Borrower.

(j)      <u>Change in Fiscal Year</u>. The Borrower will not change the manner in which either the last day of its fiscal year or the last days of the first three fiscal quarters of its fiscal year is calculated.

**Section 6.3.    <u>Financial Covenants</u>.**

(a)      <u>Minimum Liquidity</u>. Beginning with December 31, 2022, the Borrower shall not permit Liquidity as of the last day of any June or December for which quarterly or annual financial statements (as applicable) and a compliance certificate were delivered or required to be delivered pursuant to <u>Section 6.1(i)</u>, <u>(ii)</u> and <u>(iii)</u>, respectively (each a "<u>Test Date</u>"), to be less than the amount set forth in the table below opposite such Test Date.

| Test Date | Liquidity |
|---|---|
| December 31, 2022 | $~~47,000,000~~20,000,000 |
| June 30, 2023 | $~~40,000,000~~35,000,000 |

| Test Date | Liquidity |
|---|---|
| December 31, 2023 | $~~54,000,000~~47,500,000 |
| June 30, 2024 | $~~42,000,000~~35,000,000 |
| December 31, 2024 | $39,000,000 |
| June 30, 2025 | $30,000,000 |
| December 31, 2025 | $35,000,000 |
| June 30, 2026 | $25,000,000 |
| December 31, 2026 | $30,000,000 |
| June 30, 2027 | $21,000,000 |
| December 31, 2027 | $26,000,000 |
| June 30, 2028 | $16,000,000 |
| December 31, 2028 | $22,000,000 |
| June 30, 2029 | $12,000,000 |
| December 31, 2029 | $18,000,000 |
| June 30, 2030, and each Test Date occurring on June 30 thereafter | $12,000,000 |
| December 31, 2030 and each Test Date occurring on December 31 thereafter | $18,000,000 |

(b)    <u>Consolidated Debt Service Coverage Ratio</u>. Beginning with the Rolling Period ending as of December 31, 2022, the Borrower shall not permit its Consolidated Debt Service Coverage Ratio for any Rolling Period ending as of any Test Date to be less than (a) for each Test Date occurring on or before December 31, 2023, 1.00 to 1.00, (b) for the Test Dates occurring June 30, 2024 and December 31, 2024, 0.80 to 1.00, (c) for each Test Date occurring during the period from and including June 30, 2025 to and including December 31, 2027, 1.00 to 1.00 and (d) for each Test Date occurring on or after June 30, 2028, 1.20 to 1.00.

(c)    <u>Additional Financial Covenants</u>. In the event the Borrower shall enter into, assume or otherwise become bound by or obligated under any agreement creating or evidencing any Indebtedness, the terms of this Agreement shall, without any further action on the part of the Borrower, the Lender, or the Issuer, be deemed to be amended automatically to include each Additional Financial Covenant contained in such agreement; *provided*, *however*, that this Agreement shall not be amended to include any Additional Financial Covenant if Bond Counsel determines that the inclusion of such Additional Financial Covenant would adversely affect the exclusion of interest on the Bond from gross income for federal income tax purposes. The Borrower further covenants to promptly execute and deliver at its expense an amendment to this Agreement in form and substance satisfactory to the Lender evidencing the amendment of this Agreement to include such Additional Financial Covenants, *provided* that the execution and

such Indebtedness are in all respects continuing (as amended and restated hereby) as part of the Obligations and the Indebtedness under this Agreement with only the terms thereof being modified as provided herein. Each reference to the ["Agreement," the "2010 Bond Agreement," and the "2010 Bond Purchase Agreement"] in any Bond Document shall be deemed to be a reference to this Agreement as amended in the form hereof.

**Section 10.15. Final    Agreement**. THIS WRITTEN AGREEMENT REPRESENTS EMBODIES THE FINAL, ENTIRE AGREEMENT BETWEEN THE PARTIES AMONG THE PARTIES RELATING TO THE SUBJECT MATTER HEREOF AND SUPERSEDE ANY AND ALL PREVIOUS COMMITMENTS, AGREEMENTS, REPRESENTATIONS AND UNDERSTANDINGS, WHETHER ORAL OR WRITTEN, RELATING TO THE SUBJECT MATTER HEREOF AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF THE PARTIES HERETO. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN AMONG THE PARTIES HERETO.

**[The remainder of this page is intentionally left blank.]**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed in their respective names, all as of the date first above written.

<b>BOY SCOUTS OF AMERICA</b>

By _____
    [●]


By_____
    [●]



<b>ARROW WV, INC.</b>


By _____
Its _____



<b>JPMORGAN CHASE BANK, N.A.</b>, as Lender


By _____
    Todd Nordeen, Senior Vice President

SCHEDULE 1.1(a)

<u>CONSERVATION EASEMENTS</u>

[●]⁴

---

⁴ NTD: To be updated closer to the effective date of the Chapter 11 Plan.

SCHEDULE 1.1(b)

<u>DISCLOSED MATTERS</u>

[●][5]

---

[5] NTD: To be updated closer to the effective date of the Chapter 11 Plan.

SCHEDULE 1.1(b), Solo Page

SCHEDULE 2.2(m)

## SUBSIDIARIES

[●]<sup>6</sup>

---

<sup>6</sup> NTD: To be updated closer to the effective date of the Chapter 11 Plan.

SCHEDULE 2.2(m), Solo Page

SCHEDULE 6.2(a)

<u>EXISTING INDEBTEDNESS</u>

1.     Amended and Restated Promissory Note, dated as of March 21, 2019, in the original principal amount of $350,000,000, executed by Arrow WV, Inc. and payable to Boy Scouts of America.

2.     The Letters of Credit listed on the next pages of this Schedule.

3.     [●][7]

---

[7] NTD: To be updated closer to the effective date of the Chapter 11 Plan.

## BOY SCOUTS OF AMERICA
## LETTERS OF CREDIT
## AS OF [●], 2022[8]

<u>Boy Scouts of America - Trade Letters of Credit</u>

| JPM Reference Number | Tenor | Currency | Liab Outstanding Amount | L/C Available Amount | Release Date | Expiry / Maturity Date | Beneficiary Name |
|---|---|---|---|---|---|---|---|
| [●] | [●] | [●] | [●] | [●] | [●] | [●] | [●] |

<u>Boy Scouts of America - Standby Letters of Credit</u>

| JPM Ref No | Currency | LC Outstanding Amount | Release Date | Expiry / Maturity Date | Beneficiary Name | Final Expiry Date |
|---|---|---|---|---|---|---|
| [●] | [●] | [●] | [●] | [●] | [●] | [●] |

---

[8] NTD: To be updated closer to the effective date of the Chapter 11 Plan.

102821712.14
102821712.15

SCHEDULE 6.2(b)

EXISTING LIENS[9]

1.     UCC filings

| Secured Party | File Number | File Date | Subsequent Filings | Collateral | Action Required |
|---|---|---|---|---|---|
| **DEBTOR: BOY SCOUTS OF AMERICA** | | | | | |
| **Jurisdiction: Texas Secretary of State** | | | | | |
| [●] | [●] | [●] | [●] | [●] | [●] |
| **Jurisdiction: Dallas County, Texas** | | | | | |
| [●] | [●] | [●] | [●] | [●] | [●] |
| **Jurisdiction: Washington, DC** | | | | | |
| [●] | [●] | [●] | [●] | [●] | [●] |
| **DEBTOR: ARROW WV, INC.** | | | | | |
| **Jurisdiction: West Virginia Secretary of State** | | | | | |
| [●] | [●] | [●] | [●] | [●] | [●] |
| **Jurisdiction: Fayette County, West Virginia** | | | | | |
| [●] | [●] | [●] | [●] | [●] | [●] |
| **Jurisdiction: Raleigh County, West Virginia** | | | | | |
| [●] | [●] | [●] | [●] | [●] | [●] |
| **Jurisdiction: Dallas County, Texas** | | | | | |
| [●] | [●] | [●] | [●] | [●] | [●] |

2.     Liens described in the table below:

| Date | Instrument No. | Address | Amount | By | Against | Reason |
|---|---|---|---|---|---|---|
| [●] | [●] | [●] | $[●] | [●] | [●] | [●] |

---

[9] NTD: To be updated closer to the effective date of the Chapter 11 Plan.

**EXHIBIT A**

FORM OF BOND

THE PRINCIPAL OF, REDEMPTION PREMIUM, IF ANY, AND INTEREST ON THIS BOND ARE LIMITED OBLIGATIONS OF THE ISSUER PAYABLE SOLELY FROM THE SOURCES AND SPECIAL FUNDS PLEDGED FOR ITS BENEFIT. NEITHER SHALL THIS BOND NOR INTEREST THEREON BE A CHARGE AGAINST THE GENERAL CREDIT OR TAXING POWERS OF FAYETTE COUNTY, WEST VIRGINIA.

No. R-1                                                                                                    $[40,137,274]

**UNITED STATES OF AMERICA**
**STATE OF WEST VIRGINIA**

**THE COUNTY COMMISSION OF FAYETTE COUNTY (WEST VIRGINIA)**
**COMMERCIAL DEVELOPMENT REVENUE BOND**
**(ARROW WV PROJECT),**
**SERIES 2010B**

Dated: [●], 2022

THE COUNTY COMMISSION OF FAYETTE COUNTY (WEST VIRGINIA), acting for and on behalf of Fayette County, West Virginia, a political subdivision of the State of West Virginia (the "Issuer"), for value received, hereby promises to pay the principal amount of $[40,137,274] solely from the sources as hereinafter provided, to JPMORGAN CHASE BANK, N.A. (the "Bank"), with a final payment of all unpaid amounts on [●], 2032[10]. Payment of the final installment of principal shall be made only upon the presentation and surrender hereof to JPMorgan Chase Bank, N.A. in Dallas, Texas, or its successor (the "Bond Registrar").

The Issuer also promises to pay, but solely from such sources, interest on the outstanding principal amount of this bond from the date of this bond until the principal amount hereof is paid in full, at the rate of 3.22% per year (the "Fixed Rate") (calculated on the basis of a 30-day month/360-day year). Interest shall be paid in monthly installments payable on the [●] day of each month, commencing [●], 2022[11]. Principal shall be payable on the [●] day of each month in the amounts on the attached amortization schedule, commencing [●], 2024[12].

Capitalized terms used herein and not otherwise defined shall have the meanings given such terms in the Agreement (hereinafter defined).

Upon the occurrence of a Determination of Taxability (hereinafter defined), then, from and after the Date of Taxability, the interest rate used to calculate interest on this bond shall be a per annum rate equal to 1.49 times the Fixed Rate (the "Taxable Rate"). After a Determination of Taxability and upon demand of the Holder or any prior Holder of this bond, the Issuer shall pay to such Holder or prior Holder, but only from amounts provided by the Borrower pursuant to

---

[10] NTD: This will be the date that is 10 years after the effective date of the Chapter 11 Plan.

[11] NTD: This will be the date that is 1 month after the effective date of the Chapter 11 Plan.

[12] NTD: This will be the date that is 2 years after the effective date of the Chapter 11 Plan.

102821712.14 102821712.15

IN WITNESS WHEREOF, The County Commission of Fayette County (West Virginia) has caused this Bond to be signed by the manual or facsimile signature of its President, its seal to be affixed hereto or a facsimile of its seal to be printed hereon or affixed hereto and attested by its Clerk as of the dated date set forth above.

THE COUNTY COMMISSION OF
FAYETTE COUNTY (WEST VIRGINIA)

[SEAL]

By  _____
     John H. Lopez, acting President

Attest:

By:_____
                Clerk

A-1- 5

## SCHEDULE OF PRINCIPAL AMORTIZATION[13]

| Payment date | Required Principal Payment |
|---|---|
| [●]/[●]/2024 | $[●] |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| [●]/[●]/2032 | Outstanding Principal |

---

[13] NTD: To be updated. The first payment date will be the date that is 2 years after the effective date of the Chapter 11 Plan, and the final payment date will be the new maturity date.

102821712.14
102821712.15

## REGISTRATION OF BOND AND TRANSFER OF BOND

     This bond is initially registered to JPMorgan Chase Bank, N.A. who shall be the registered owner and the Bond Registrar. The transfer of this bond may be registered by the registered owner or its duly authorized attorney or legal representative upon presentation hereof to the Bond Registrar who shall make note of such transfer in the registration blank below.

| Date of Registration | Name of Registered Owner | Signature of Registrar |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

REGISTRATION OF BOND AND TRANSFER OF BOND, Solo Page

102821712.14
102821712.15

**EXHIBIT B**

AFTER THE ENDORSEMENT AND PLEDGE OF THIS NOTE AS HEREON PROVIDED, THIS NOTE MAY NOT BE ASSIGNED, PLEDGED, ENDORSED OR OTHERWISE TRANSFERRED EXCEPT TO A SUCCESSOR OR ASSIGNEE OF THE LENDER REFERRED TO IN THE AGREEMENT REFERRED TO HEREIN.

AMENDED AND RESTATED PROMISSORY NOTE

$[40,137,274]                                                              [●], 2022

  FOR VALUE RECEIVED, Boy Scouts of America, a non-profit federally chartered corporation (the "Borrower"), by this promissory note (the "Note") promises to pay the principal sum of [FORTY MILLION ONE HUNDRED THIRTY-SEVEN THOUSAND TWO HUNDRED SEVENTY-FOUR] DOLLARS ($[40,137,274]) to the order of The County Commission of Fayette County (West Virginia) (the "Issuer") as set forth herein.

  The Borrower promises to pay to the order of the Issuer accrued interest on the unpaid principal amount hereof from the date hereof until the principal amount hereof is paid in full, at the rate of 3.22% per year (the "Fixed Rate") (calculated on the basis of a 30-day month/360-day year). Interest shall be paid in monthly installments payable on the [●] day of each month, commencing [●], 2022[14]. Principal shall be payable on the [●] day of each month in the amounts on the attached amortization schedule, commencing [●], 2024[15]. All principal outstanding hereunder shall be due and payable on [●], 2032[16].

  This Note has been pledged and assigned to JPMorgan Chase Bank, N.A. (the "Lender"), and its successors and assigns as the Holder of the Issuer's Commercial Development Revenue Bond (Arrow WV Project), Series 2010B (the "Bond"). This Note is the "Note" referred to in the Amended and Restated Series 2010B Bond Purchase and Loan Agreement, dated as of [●], 2022 (the "Agreement"), among the Issuer, the Lender, the Borrower and Arrow WV, Inc., and is entitled to the benefits and subject to the conditions thereof. Capitalized terms used herein and not otherwise defined shall have the meanings given such terms in the Agreement.

  Upon the occurrence of a Determination of Taxability then, from and after the Date of Taxability, the interest rate used to calculate interest on this Note shall be the Taxable Rate. After a Determination of Taxability and upon demand of the Holder or any prior Holder of the Bond, the Borrower shall pay to such Holder or prior Holder such additional amount as shall be necessary to provide that interest on this Note shall have been payable at the Taxable Rate from the Date of Taxability.

  Upon a Determination of Taxability, the Borrower shall also pay to such Holder or to any prior Holder any taxes, interest, penalties or other charges assessed against or payable by such Holder or prior Holder and attributable to such Determination of Taxability and all reasonable administrative, out of pocket and other expenses incurred by such Holder or prior Holder which are attributable to such event, including, without limitation, the costs incurred by such Holder or

---

[14] NTD: This will be the date that is 1 month after the effective date of the Chapter 11 Plan.

[15] NTD: This will be the date that is 2 years after the effective date of the Chapter 11 Plan.

[16] NTD: This will be the date that is 10 years after the effective date of the Chapter 11 Plan.

B-1- 1

IN WITNESS WHEREOF, the Borrower has caused this Note to be executed in its corporate name by its duly authorized officer all as of the day and year first above written.

BOY SCOUTS OF AMERICA

By _____

[●]

By _____

[●]

SCHEDULE OF PRINCIPAL AMORTIZATION[17]

| Payment Date | Required Principal Payment |
|---|---|
| [●]/[●]/2024 | $[●] |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| [●]/[●]/2032 | Outstanding Principal |

[17] NTD: To be updated. The first payment date will be the date that is 2 years after the effective date of the Chapter 11 Plan, and the final payment date will be the new maturity date.

SCHEDULE OF PRINCIPAL AMORTIZATION (2010B NOTE), Page 1

**EXHIBIT C**

COMPLIANCE CERTIFICATE
for the
quarter ending _____ __, ___

To:    JPMorgan Chase Bank, N.A.
       2200 Ross Avenue, 8th Floor
       Dallas, Texas 75201

Ladies and Gentlemen:

This Compliance Certificate (the "Certificate"') is being delivered pursuant to Section 6.1(a)(iii) of the Amended and Restated Series 2010B Bond Purchase and Loan Agreement, dated as of [●], 2022 (the "Agreement"), among The County Commission of Fayette County (West Virginia) (the "Issuer"), Boy Scouts of America (the "Borrower"), Arrow WV, Inc. and JPMorgan Chase Bank, N.A. (the "Lender"). All capitalized terms, unless otherwise defined herein, shall have the same meanings as in the Agreement. All the calculations set forth below shall be made pursuant to the terms of the Agreement.

The undersigned, an authorized financial officer of the Borrower in his capacity as such financial officer and not in his individual capacity, does hereby certify to the Lender that:

1.    **DEFAULT**

No Default has occurred or, if a Default has occurred, I have described on the attached Exhibit "A" the nature thereof and the steps taken or proposed to remedy such Default.

2.    **SECTION 5.01 - Financial Statements and Records**            Compliance

       (a)    Annual audited financial statements of the        Yes    No    N/A
              Borrower on a consolidated basis within 150
              days after the end of each fiscal year end
              (together with Compliance Certificate).

       (b)    Quarterly unaudited financial statements of the   Yes    No    N/A
              Borrower within 45 days after the end of each
              fiscal quarter of each fiscal year (together with
              Compliance Certificate).

3.    **Debt**

No additional Indebtedness except:

Purchase money not to exceed: Actual outstanding:

Subordinated Indebtedness not to exceed: Actual

C- 1

102821712.14
102821712.15