**<u>Exhibit Q-2</u>**

**Blackline Pages of Revised Form of Restated 2012 Bond**

**You may access a full and complete copy of the Form of Restated 2012 Bond Documents, free of charge, at <u>https://omniagentsolutions.com/bsa-plansupplement</u>.**

PROPOSED FINAL VERSION 11/23/20213/2/2022
PRIVILEGED AND CONFIDENTIAL
FOR MEDIATION PURPOSES ONLY
SUBJECT TO F.R.E. 408

AMENDED AND RESTATED
SERIES 2012 BOND PURCHASE AND LOAN AGREEMENT


among


THE COUNTY COMMISSION OF FAYETTE COUNTY (WEST VIRGINIA),


BOY SCOUTS OF AMERICA,

ARROW WV, INC.,

and

JPMORGAN CHASE BANK, N.A.


Dated as of [_____], 2022


The County Commission of Fayette County (West Virginia)
Commercial Development Revenue Bond
(Arrow WV Project), Series 2012

# TABLE OF CONTENTS

Page

ARTICLE I DEFINITIONS AND RULES OF CONSTRUCTION ............................................. 2

Section 1.1    Definitions ............................................................................................. 2
Section 1.2    Rules of Construction ........................................................................... 18
Section 1.3    Accounting Terms; GAAP .................................................................... 18

ARTICLE II REPRESENTATIONS AND WARRANTIES ................................................... 19

Section 2.1    Representations and Warranties of the Issuer ...................................... 19
Section 2.2    Representations and Warranties of the Borrower and Arrow WV ......... 2021

ARTICLE III THE BOND .................................................................................................... 2324

Section 3.1    Amendment and Restatement of the Original Bond .............................. 2324
Section 3.2    Terms of the Bond ............................................................................... 24
Section 3.3    Bond to be Issued in Registered Form; Registration and Transfer ....... 25
Section 3.4    Purchase as a Loan ............................................................................. 26
Section 3.5    Optional Redemption of the Bond and Prepayment of the Note ........... 26
Section 3.6    Conditions Precedent ........................................................................... 27

ARTICLE IV LOAN OF PROCEEDS TO BORROWER ..................................................... 29

Section 4.1    Repayment of Loan .............................................................................. 29
Section 4.2    Amounts Payable ................................................................................. 29
Section 4.3    No Set-Off ........................................................................................... 2930
Section 4.4    Prepayments ........................................................................................ 30
Section 4.5    Credits Against the Note ...................................................................... 30
Section 4.6    Additional Payments upon Determination of Taxability; Excess Cash
               Sweep Prepayments ............................................................................. 30
Section 4.7    Assignment .......................................................................................... 31
Section 4.8    Payments Assigned ............................................................................. 32

ARTICLE V [RESERVED] ................................................................................................ 33

ARTICLE VI BORROWER'S COVENANTS ...................................................................... 33

Section 6.1    Affirmative Covenants ......................................................................... 33
Section 6.2    Negative Covenants ............................................................................ 36
Section 6.3    Financial Covenants ............................................................................ 41

ARTICLE VII TAX COVENANT ........................................................................................ 43

Section 7.1    Tax Covenant ...................................................................................... 43

ARTICLE VIII EVENTS OF DEFAULT .................................................................. 43

Section 8.1    Events of Default ................................................................... 43
Section 8.2    Remedies of Holder ............................................................... 46
Section 8.3    Payments After Default; No Waiver ....................................... 46
Section 8.4    No Remedy Exclusive ........................................................... 4647

ARTICLE IX LIMITATION OF LIABILITY; INDEMNIFICATION ........................ 47

Section 9.1    Limitation of Issuer's Liability ............................................... 47
Section 9.2    Indemnification by Borrower ................................................. 47
Section 9.3    Issuer, Commissioner, Attorneys, Officers, Employees and Agents of
               Issuer Not Liable .................................................................. 4849

ARTICLE X MISCELLANEOUS .......................................................................... 49

Section 10.1    Assignment ......................................................................... 49
Section 10.2    Notices ............................................................................... 4950
Section 10.3    Amendments ....................................................................... 51
Section 10.4    UCC Financing Statements .................................................. 51
Section 10.5    No Third Party Beneficiary ................................................... 5152
Section 10.6    Miscellaneous ..................................................................... 52
Section 10.7    References to the Bond Ineffective After Bond Paid ............... 53
Section 10.8    No Implied Waiver ............................................................... 53
Section 10.9    Issuer Representative .......................................................... 53
Section 10.10   Borrower Representative ...................................................... 53
Section 10.11   USA PATRIOT Act ............................................................... 53
Section 10.12   Maximum Rate ................................................................... 5354
Section 10.13   No Fiduciary Duty ............................................................... 54
Section 10.14   Amendment and Restatement ............................................. 55
Section 10.15   Final Agreement ................................................................. 55

**THIS AMENDED AND RESTATED SERIES 2012 BOND PURCHASE AND LOAN AGREEMENT** dated as of [_____], 2022, among THE COUNTY COMMISSION OF FAYETTE COUNTY (WEST VIRGINIA), acting for and on behalf of Fayette County, West Virginia, a political subdivision of the State of West Virginia (the "Issuer"), JPMORGAN CHASE BANK, N.A., a national banking association, as lender and purchaser of the Bond (the "Lender"), BOY SCOUTS OF AMERICA, a non-profit federally chartered corporation (the "Borrower"), and ARROW WV, INC., a West Virginia nonprofit corporation ("Arrow WV").

W I T N E S S E T H:

**WHEREAS**, the Issuer is authorized to exercise all the powers set forth in the Industrial Development and Commercial Development Bond Act, Chapter 13, Article 2C of the Code of West Virginia of 1931, as amended (the "Act"), to issue revenue bonds for the purpose of financing a "commercial project" as authorized by the Act;

**WHEREAS**, Arrow WV is a Subsidiary (as defined herein) of the Borrower and Arrow WV owns and operates a facility that is a "commercial project" as defined in the Act;

**WHEREAS**, the Issuer, the Borrower, Arrow WV and the Lender are parties to the Bond Purchase and Loan Agreement, dated as of March 9, 2012 (as amended by the First Amendment to Bond Purchase and Loan Agreement, dated as of March 2, 2017 and the Second Amendment to Bond Purchase and Loan Agreement, dated as of March 21, 2019, the "Original Bond Purchase and Loan Agreement"), pursuant to which the Issuer issued and sold to the Lender and the Lender purchased from the Issuer (i) the Commercial Development Revenue Bond (Arrow WV Project), Series 2012, in the original principal amount of $175,000,000 (the "Original Bond");

**WHEREAS**, the proceeds of the sale of the Original Bond were loaned by the Issuer to the Borrower to, *inter alia*, acquire, construct, and equip the Summit Bechtel Family National Scout Reserve located in Fayette County, West Virginia and Raleigh County, West Virginia, and the Borrower agreed to repay such loan on the terms and conditions set forth in the Original Bond Purchase and Loan Agreement;

**WHEREAS**, simultaneously with the issuance of the Original Bond, the Borrower executed and delivered to the Issuer a promissory note to evidence its obligations thereunder to make payments sufficient to pay the Original Bond, and the Issuer assigned such promissory note to the Lender to secure the Original Bond;

**WHEREAS**, on February 18, 2020, the Borrower filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

**WHEREAS**, on [_____], 2022, the Bankruptcy Court entered an order (the "Confirmation Order") approving and confirming the [_____] Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC (the "Chapter 11 Plan"), and [_____], 2022 is the effective date of the Chapter 11 Plan (the "Effective Date");

securing Indebtedness of the Borrower but are otherwise not subject to any restriction on transfer or use imposed by the applicable donor, grantor or applicable law other than the payment of the Indebtedness secured thereby; provided, however, notwithstanding anything to the contrary contained in the forgoing, "Liquidity" shall not include cash or cash equivalents maintained as cash collateral for letters of credit subject to the sole dominion and control of a third party pursuant to a control agreement, collateral assignment or other agreement restricting the transfer or use thereof (for the avoidance of doubt, in the case of "springing" control agreement, only after such third party's control has been activated).

"Liquidity Coverage Ratio" has the meaning set forth in Section 6.3(a).

"Loans" means the "Loans" as defined in the Credit Agreement.

"Material Adverse Effect" means a material adverse effect on (a) the business, assets, operations or condition, financial or otherwise, of the Borrower, (b) the validity or enforceability of any Bond Document or (c) the rights of or remedies available to the Lender or the Issuer under any Bond Document.

"Material Indebtedness" means Indebtedness (other than arising in connection with the Bond Documents but including, without limitation, obligations in respect of one or more Swap Agreements) of any one or more of the Borrower and the Subsidiaries in an aggregate principal amount exceeding $1,000,000. Material Indebtedness shall specifically include the Indebtedness arising in connection with the Credit Agreement, the 2010B Bond Documents and any Subordinated Indebtedness.

"Maximum Rate" has the meaning set forth in Section 10.12(a).

"Moody's" means Moody's Investors Service, Inc. or any successor thereto.

"Mortgage" means any mortgage, deed of trust or other agreement which conveys or evidences a Lien in favor of the Collateral Agent, for the benefit of the Holder and the other secured creditors, on real property of either the Borrower or Arrow WV, including any amendment, restatement, modification or supplement thereto.

"Multiemployer Plan" means a multiemployer plan as defined in Section 4001(a)(3) of ERISA.

"Note" means the amended and restated promissory note of the Borrower in the form of Exhibit B, issued in favor of the Issuer and assigned to the Lender pursuant to this Agreement in the original principal amount of $[145,662,101].

"Obligations" means all obligations, indebtedness, and liabilities of the Borrower and Arrow WV to the Issuer arising pursuant to any of the Bond Documents, whether now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several, including, without limitation, the obligation of the Borrower to repay the Note, interest on the Note and all fees, costs, and expenses (including attorneys' fees, costs and expenses) provided for in the Bond Documents.

(b)        investments in commercial paper maturing within 270 days from the date of acquisition thereof and having, at such date of acquisition, the highest credit rating obtainable from S&P or from Moody's;

(c)        investments in certificates of deposit, banker's acceptances and time deposits maturing within 180 days from the date of acquisition thereof issued or guaranteed by or placed with, and money market deposit accounts issued or offered by, any domestic office of any commercial bank organized under the laws of the United States of America or any State thereof which has a combined capital and surplus and undivided profits of not less than $500,000,000;

(d)        fully collateralized repurchase agreements with a term of not more than 30 days for securities described in clause (a) above and entered into with a financial institution satisfying the criteria described in clause (c) above;

(e)        money market funds that (i) comply with the criteria set forth in Rule 2a-7 under the Investment Company Act of 1940, as amended, (ii) are rated AAA by S&P and Aaa by Moody's and (iii) have portfolio assets of at least $5,000,000,000; and

(f)        other investments made in accordance with the Borrower's or a Subsidiary's investment policy which has been approved by Borrower's Executive Board of Directors or the investment committee of such board and any amendments or other modifications to any such investment policy which have been approved by the Borrower's Executive Board of Directors or the investment committee of such board.

"Person" means an individual, partnership, corporation, trust, unincorporated organization, association, joint venture, joint-stock company, or a government or political subdivision thereof.

"Plan" means any employee pension benefit plan (other than a Multiemployer Plan) subject to the provisions of Title IV of ERISA or Section 412 of the Code or Section 302 of ERISA, and in respect of which the Borrower or any ERISA Affiliate is (or, if such plan were terminated, would under Section 4069 of ERISA be deemed to be) an "employer" as defined in Section 3(5) of ERISA.

"Potential CDSCR Default" has the meaning set forth in Section 8.1(p).

"Potential CDSCR Default" has the meaning set forth in Section 8.1(p). "Potential Liquidity Default" has the meaning set forth in Section 8.1(o).

"Principal Amount" means the principal amount of the Bond outstanding from time to time.

"Project" means the development and construction of the roads, water lines, sewer lines and camp site improvements on the Summit National Scout Reserve located in Fayette County, West Virginia and Raleigh County, West Virginia which is owned by Arrow WV.

"Redetermination Date" means: (a) in relation to any December 31 Test Date, the next March 31; and (b) in relation to any June 30 Test Date, the next September 30.

"Release" means any releasing, spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, migrating, disposing or dumping of any substance into the environment.

"Requirement of Law" means, with respect to any Person, (a) the charter, articles or certificate of organization or incorporation and bylaws or operating, management or partnership agreement, or other organizational or governing documents of such Person, and (b) any statute, law (including common law), treaty, rule regulation, code, ordinance, order, decree, writ, judgment, injunction or determination of any arbitrator or court or other Governmental Authority (including Environmental Laws), in each case applicable to or binding upon such Person or any of its property or to which such Person or any of its property is subject.

"Restricted Payment" means any dividend or other distribution (whether in cash, securities or other property) with respect to any Equity Interests, or any payment (whether in cash, securities or other property), including any sinking fund or similar deposit, on account of the purchase, redemption, retirement, acquisition, cancellation or termination of any Equity Interests.

"Rolling Period" means the period of 12 consecutive calendar months ending on the last day of each June or December, as applicable.

"S&P" means S&P Global Ratings, and any successor thereof.

"Sanctioned Country" means, at any time, a country, region, or territory which is itself the subject or target of any Sanctions (at the time of this Agreement, ~~Crimea~~the so-called Donetsk People's Republic, the so-called Luhansk People's Republic, the Crimea Region of Ukraine, Cuba, Iran, North Korea and Syria).

"Sanctioned Person" means, at any time, (a) any Person listed in any Sanctions-related list of designated Persons maintained by the Office of Foreign Assets Control of the U.S. Department of the Treasury or the U.S. Department of State, the United Nations Security Council, any European Union member state, Her Majesty's Treasury of the United Kingdom or other relevant sanctions authority, (b) any Person operating, organized or resident in a Sanctioned Country, (c) any Person owned or controlled by any such Person or Persons described in the foregoing clauses (a) or (b), or (d) any Person otherwise subject of any Sanctions.

"Sanctions" means economic or financial sanctions or trade embargoes imposed, administered or enforced from time to time by (a) the U.S. government, including those administered by the Office of Foreign Assets Control of the U.S. Department of the Treasury or the U.S. Department of State, or (b) the United Nations Security Council, the European Union, any European Union member state or Her Majesty's Treasury of the United Kingdom or other relevant sanctions authority.

less favorable to the Borrower or such Subsidiary than could be obtained on an arm's-length basis from unrelated third parties, (B) any loan, advance, or Guarantee permitted by <u>Section 6.2(d)(v)</u> or <u>(vi)</u>, (C) any Restricted Payment permitted by <u>Section 6.2(h)</u>, (D) any incurrence of Subordinated Indebtedness owing to an Affiliate permitted by <u>Section 6.2(a)(x)</u>, and (E) the lease of the Summit Bechtel Family National Scout Reserve by Arrow WV to the Borrower.

(j)     <u>Change in Fiscal Year</u>. The Borrower will not change the manner in which either the last day of its fiscal year or the last days of the first three fiscal quarters of its fiscal year is calculated.

**Section 6.3     <u>Financial Covenants</u>**.

(a)     <u>Minimum Liquidity</u>. Beginning with December 31, 2022, the Borrower shall not permit Liquidity as of the last day of any June or December for which quarterly or annual financial statements (as applicable) and a compliance certificate were delivered or required to be delivered pursuant to <u>Section 6.1(i)</u>, <u>(ii)</u> and <u>(iii)</u>, respectively (each a "<u>Test Date</u>") to be less than the amount set forth in the table below opposite such Test Date.

| Test Date | Liquidity |
|---|---|
| December 31, 2022 | $~~47,000,000~~20,000,000 |
| June 30, 2023 | $~~40,000,000~~35,000,000 |
| December 31, 2023 | $~~54,000,000~~47,500,000 |
| June 30, 2024 | $~~42,000,000~~35,000,000 |
| December 31, 2024 | $39,000,000 |
| June 30, 2025 | $30,000,000 |
| December 31, 2025 | $35,000,000 |
| June 30, 2026 | $25,000,000 |
| December 31, 2026 | $30,000,000 |
| June 30, 2027 | $21,000,000 |
| December 31, 2027 | $26,000,000 |
| June 30, 2028 | $16,000,000 |
| December 31, 2028 | $22,000,000 |
| June 30, 2029 | $12,000,000 |
| December 31, 2029 | $18,000,000 |
| June 30, 2030, and each Test Date occurring on June 30 thereafter | $12,000,000 |
| December 31, 2030 and each Test Date occurring | $18,000,000 |

the Borrower by virtue of the transactions contemplated by the Bond Documents or its other relationships with the Borrower in connection with the performance by the Lender of services for other companies, and the Lender will not furnish any such information to other companies. The Borrower also acknowledges that the Lender has no obligation to use in connection with the transactions contemplated by the Bond Documents, or to furnish to the Borrower, confidential information obtained from other companies.

**Section 10.14  Amendment and Restatement.**  On the Closing Date, the Original Bond Purchase and Loan Agreement was amended and restated in its entirety in the form of this Agreement. The parties hereto acknowledge and agree that (i) this Agreement and the other Bond Documents, whether executed and delivered in connection herewith or otherwise, do not constitute a novation, payment or reborrowing, or termination of the Obligations or Indebtedness arising under the Original Bond Purchase and Loan Agreement and (ii) such Obligations and such Indebtedness are in all respects continuing (as amended and restated hereby) as part of the Obligations and the Indebtedness under this Agreement with only the terms thereof being modified as provided herein. Each reference to the "Agreement", the "2012 Bond Agreement", and the "2012 Bond Purchase Agreement" in any Bond Document shall be deemed to be a reference to this Agreement as amended in the form hereof.

**Section 10.15  Final     Agreement.**  THIS WRITTEN AGREEMENT ~~REPRESENTS~~EMBODIES THE FINAL, ENTIRE AGREEMENT ~~BETWEEN THE PARTIES~~AMONG THE PARTIES RELATING TO THE SUBJECT MATTER HEREOF AND SUPERSEDE ANY AND ALL PREVIOUS COMMITMENTS, AGREEMENTS, REPRESENTATIONS AND UNDERSTANDINGS, WHETHER ORAL OR WRITTEN, RELATING TO THE SUBJECT MATTER HEREOF AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF THE PARTIES HERETO.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS ~~BETWEEN~~AMONG THE PARTIES HERETO.

**[The remainder of this page is intentionally left blank.]**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed in their respective names, all as of the date first above written.

**BOY SCOUTS OF AMERICA**

By  _____
[●]


By_____
[●]

SCHEDULE 1.1(a)

## CONSERVATION EASEMENTS

[___][4]

---

[4] NTD: To be updated closer to the effective date of the Chapter 11 Plan.

SCHEDULE 1.1(b)

## DISCLOSED MATTERS

[___][5]

---

[5] NTD: To be updated closer to the effective date of the Chapter 11 Plan.

SCHEDULE 2.2(m)

<u>SUBSIDIARIES</u>

[___][6]

---

[6] NTD: To be updated closer to the effective date of the Chapter 11 Plan.

SCHEDULE 6.2(a)

<u>EXISTING INDEBTEDNESS</u>

1.      Amended and Restated Promissory Note, dated as of March 21, 2019, in the original principal amount of $350,000,000, executed by Arrow WV, Inc. and payable to Boy Scouts of America.

2.      The Letters of Credit listed on the next pages of this Schedule.

3.      [●][7]

---

[7] NTD: To be updated closer to the effective date of the Chapter 11 Plan.⬚

**BOY SCOUTS OF AMERICA**
**LETTERS OF CREDIT**
**AS OF [_____], 2022[8]**

Boy Scouts of America - Trade Letters of Credit

| JPM Reference Number | Tenor | Currency | Liab Outstanding Amount | L/C Available Amount | Release Date | Expiry / Maturity Date | Beneficiary Name |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Boy Scouts of America - Standby Letters of Credit

| JPM Ref No | Currency | LC Outstanding Amount | Release Date | Expiry / Maturity Date | Beneficiary Name | Final Expiry Date |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

[8] NTD: To be updated closer to the effective date of the Chapter 11 Plan.

SCHEDULE 6.2(b)

EXISTING LIENS[9]

1.    UCC filings

| Secured Party | File Number | File Date | Subsequent Filings | Collateral | Action Required |
|---|---|---|---|---|---|
| **DEBTOR: BOY SCOUTS OF AMERICA** | | | | | |
| **Jurisdiction: Texas Secretary of State** | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

---

[9] NTD: To be updated closer to the effective date of the Chapter 11 Plan.

**EXHIBIT A**

<u>FORM OF BOND</u>

THE PRINCIPAL OF, REDEMPTION PREMIUM, IF ANY, AND INTEREST ON THIS BOND ARE LIMITED OBLIGATIONS OF THE ISSUER PAYABLE SOLELY FROM THE SOURCES AND SPECIAL FUNDS PLEDGED FOR ITS BENEFIT. NEITHER SHALL THIS BOND NOR INTEREST THEREON BE A CHARGE AGAINST THE GENERAL CREDIT OR TAXING POWERS OF FAYETTE COUNTY, WEST VIRGINIA.

No. R-1                                                                     $[145,662,101]

**UNITED STATES OF AMERICA**
**STATE OF WEST VIRGINIA**

**THE COUNTY COMMISSION OF FAYETTE COUNTY (WEST VIRGINIA)**
**COMMERCIAL DEVELOPMENT REVENUE BOND**
**(ARROW WV PROJECT),**
**SERIES 2012**

Dated: [_____], 2022

THE COUNTY COMMISSION OF FAYETTE COUNTY (WEST VIRGINIA), acting for and on behalf of Fayette County, West Virginia, a political subdivision of the State of West Virginia (the "Issuer"), for value received, hereby promises to pay the principal amount of $[145,662,101] solely from the sources as hereinafter provided, to JPMORGAN CHASE BANK, N.A. (the "Bank"), with a final payment of all unpaid amounts on [_____], 2032[10]. Payment of the final installment of principal shall be made only upon the presentation and surrender hereof to JPMorgan Chase Bank, N.A. in Dallas, Texas, or its successor (the "Bond Registrar").

The Issuer also promises to pay, but solely from such sources, interest on the outstanding principal amount of this bond from the date of this bond until the principal amount hereof is paid in full, at the rate of 2.94% per year (the "Fixed Rate") (calculated on the basis of a 30-day month/360-day year). Interest shall be paid in monthly installments payable on the [___] day of each month, commencing [_____], 2022[11]. Principal shall be payable on the [___] day of each month in the amounts on the attached amortization schedule, commencing [_____], 2024[12].

Capitalized terms used herein and not otherwise defined shall have the meanings given such terms in the Agreement (hereinafter defined).

Upon the occurrence of a Determination of Taxability (hereinafter defined), then, from and after the Date of Taxability, the interest rate used to calculate interest on this bond shall be a

---

[10] NTD: This will be the date that is 10 years after the effective date of the Chapter 11 Plan.
[11] NTD: This will be the date that is 1 month after the effective date of the Chapter 11 Plan.
[12] NTD: This will be the date that is 2 years after the effective date of the Chapter 11 Plan.

## SCHEDULE OF PRINCIPAL AMORTIZATION[13]

| Payment date | Required Principal Payment |
|---|---|
| [_____]/2024 | $[_____] |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
| [_____]/2032 | Outstanding Principal |

---

[13] NTD: To be updated. The first payment date will be the date that is 2 years after the effective date of the Chapter 11 Plan, and the final payment date will be the new maturity date.

SCHEDULE OF PRINCIPAL AMORTIZATION (2012 BOND), Page  1

REGISTRATION OF BOND AND TRANSFER OF BOND

This bond is initially registered to JPMorgan Chase Bank, N.A. who shall be the registered owner and the Bond Registrar. The transfer of this bond may be registered by the registered owner or its duly authorized attorney or legal representative upon presentation hereof to the Bond Registrar who shall make note of such transfer in the registration blank below.

| Date of Registration | Name of Registered Owner | Signature of Registrar |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

REGISTRATION OF BOND AND TRANSFER OF BOND, Solo Page

**EXHIBIT B**

AFTER THE ENDORSEMENT AND PLEDGE OF THIS NOTE AS HEREON PROVIDED, THIS NOTE MAY NOT BE ASSIGNED, PLEDGED, ENDORSED OR OTHERWISE TRANSFERRED EXCEPT TO A SUCCESSOR OR ASSIGNEE OF THE LENDER REFERRED TO IN THE AGREEMENT REFERRED TO HEREIN.

<u>AMENDED AND RESTATED PROMISSORY NOTE</u>

$[145,662,101]                                                                                    [_____], ~~2021~~2022

FOR VALUE RECEIVED, Boy Scouts of America, a non-profit federally chartered corporation (the "Borrower"), by this promissory note (the "Note") promises to pay the principal sum of [ONE HUNDRED FORTY FIVE MILLION SIX HUNDRED SIXTY TWO THOUSAND ONE HUNDRED ONE] DOLLARS ($[145,662,101]) to the order of The County Commission of Fayette County (West Virginia) (the "<u>Issuer</u>") as set forth herein.

The Borrower promises to pay to the order of the Issuer accrued interest on the unpaid principal amount hereof from the date hereof until the principal amount hereof is paid in full, at the rate of 2.94% per year (the "<u>Fixed Rate</u>") (calculated on the basis of a 30-day month/360-day year). Interest shall be paid in monthly installments payable on the [___] day of each month, commencing [_____], 2022[14]. Principal shall be payable on the [___] day of each month in the amounts on the attached amortization schedule, commencing [_____], 2024[15]. All principal outstanding hereunder shall be due and payable on [_____], 2032[16].

This Note has been pledged and assigned to JPMorgan Chase Bank, N.A. (the "<u>Lender</u>"), and its successors and assigns as the Holder of the Issuer's Commercial Development Revenue Bond (Arrow WV Project), Series 2012 (the "<u>Bond</u>"). This Note is the "Note" referred to in the Amended and Restated Series 2012 Bond Purchase and Loan Agreement, dated as of [_____], 2022 (the "<u>Agreement</u>"), among the Issuer, the Lender, the Borrower and Arrow WV, Inc., and is entitled to the benefits and subject to the conditions thereof. Capitalized terms used herein and not otherwise defined shall have the meanings given such terms in the Agreement.

Upon the occurrence of a Determination of Taxability then, from and after the Date of Taxability, the interest rate used to calculate interest on this Note shall be the Taxable Rate. After a Determination of Taxability and upon demand of the Holder or any prior Holder of the Bond, the Borrower shall pay to such Holder or prior Holder such additional amount as shall be necessary to provide that interest on this Note shall have been payable at the Taxable Rate from the Date of Taxability.

Upon a Determination of Taxability, the Borrower shall also pay to such Holder or to any prior Holder any taxes, interest, penalties or other charges assessed against or payable by such

---

[14] NTD: This will be the date that is 1 month after the effective date of the Chapter 11 Plan.
[15] NTD: This will be the date that is 2 years after the effective date of the Chapter 11 Plan.
[16] NTD: This will be the date that is 10 years after the effective date of the Chapter 11 Plan.

## SCHEDULE OF PRINCIPAL AMORTIZATION[17]

| Payment Date | Required Principal Payment |
|---|---|
| [_____]/2024 | $[_____] |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| [_____]/2032 | Outstanding Principal |

---

[17] NTD: To be updated. The first payment date will be the date that is 2 years after the effective date of the Chapter 11 Plan, and the final payment date will be the new maturity date.

SCHEDULE OF PRINCIPAL AMORTIZATION (2012 NOTE), Page  1

**EXHIBIT C**

COMPLIANCE CERTIFICATE
for the
quarter ending _____ ___,_____

To:   JPMorgan Chase Bank, N.A.
      2200 Ross Avenue, 8th Floor
      Dallas, Texas 75201

Ladies and Gentlemen:

This Compliance Certificate (the "Certificate"') is being delivered pursuant to Section 6.1 of the Amended and Restated Series 2012 Bond Purchase and Loan Agreement, dated as of [_____], 2022 (the "Agreement"), among The County Commission of Fayette County (West Virginia) (the "Issuer"), Boy Scouts of America (the "Borrower"), Arrow WV, Inc. and JPMorgan Chase Bank, N.A. (the "Lender"). All capitalized terms, unless otherwise defined herein, shall have the same meanings as in the Agreement. All the calculations set forth below shall be made pursuant to the terms of the Agreement.

The undersigned, an authorized financial officer of the Borrower in his capacity as such financial officer and not in his individual capacity, does hereby certify to the Lender that:

1.   **DEFAULT**

No Default has occurred or, if a Default has occurred, I have described on the attached Exhibit "A" the nature thereof and the steps taken or proposed to remedy such Default.

2.   **SECTION 5.01 - Financial Statements and Records**          Compliance

|     | | |
|-----|-----|-----|
| (a) | Annual audited financial statements of the Borrower on a consolidated basis within 150 days after the end of each fiscal year end (together with Compliance Certificate). | Yes    No    N/A |
| (b) | Quarterly unaudited financial statements of the Borrower within 45 days after the end of each fiscal quarter of each fiscal year (together with Compliance Certificate). | Yes    No    N/A |

3.   **Debt**

No additional Indebtedness except:

Purchase money not to exceed: Actual outstanding: