**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| BOY SCOUTS OF AMERICA AND | § | Case No. 20-10343 (LSS) |
| DELAWARE BSA, LLC,[1] | § | |
| | § | (Jointly Administered) |
| Debtors. | § | |
| | § | **Docket Ref Nos. 8813** |

**STATEMENT OF JPMORGAN CHASE BANK, NATIONAL ASSOCIATION**
**IN SUPPORT OF CONFIRMATION AND JOINDER TO THE DEBTORS'**
**MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION**

JPMorgan Chase Bank, National Association ("JPM"), by and through its counsel, respectfully submits this statement in support of confirmation and joinder (this "Joinder") to the *Debtors' Memorandum of Law in Support of Confirmation of Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC and (II) Omnibus Reply to Confirmation Objections* (the "Debtors' Confirmation Brief")[2] in support of confirmation of the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 8813] (as may be amended, the "Plan") and in reply to the various objections to confirmation of the Plan submitted by parties in interest (collectively, the "Objections"). In support of this Joinder, JPM respectfully states as follows:

**PRELIMINARY STATEMENT**

1.        Given the alternatives presented by the circumstances of these Chapter 11 Cases, if the Plan meets the minimum standards of Section 1129, and applicable law, it should be confirmed. In consideration of the voluminous briefing submitted to the Court on issues of confirmation, and

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Debtors' Confirmation Brief or the Plan, as applicable.

out of respect for the Court's busy docket, JPM will not repeat the arguments made in support of

Plan confirmation by the Debtors and other Plan supporters in this Joinder. Instead, JPM files this

Joinder to support approval of the proposed settlement of potential estate claims between the

Debtors, the UCC and JPM set forth in the Plan (the "JPM Settlement") and to address certain

portions of the Objection[3] filed by the United States Trustee that are applicable to JPM. In

particular, the releases in favor of JPM are appropriate under the circumstances and the standards

articulated by the Third Circuit and courts in this District. They are consensual, sufficiently

specific, an integral part of the Plan, and were made for valid and valuable consideration.

2.      JPM also joins in the Debtors' Confirmation Brief, which responds

comprehensively to the Objections. For the reasons set herein and in the Debtors' Confirmation

Brief, JPM requests that this Court overrule the Objections and enter an order confirming the Plan.

## JOINDER AND STATEMENT IN SUPPORT

### A.      The JPM Settlement Should Be Approved

3.      The JPM Settlement embodies a hard-won, fair, equitable, and reasonable

compromise between the Debtors, JPM and the UCC, settling alleged estate causes of action in

exchange for significant contributions to the Debtors' estates from JPM, while avoiding lengthy,

costly, and unfounded litigation that would squander estate resources. Indeed, the JPM Settlement

is critical to the Debtors' emergence from bankruptcy and positions them to compensate survivors

and continue to operate as a viable going concern thereafter.

4.      The applicable legal standard is clear and not in dispute. Under Supreme Court and

Third Circuit precedent, a settlement should be approved if, in the sound discretion of the

---

[3]      *United States Trustee's Objection to Confirmation of the Second Modified Fifth Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 8710].

bankruptcy court, it is "fair, reasonable, and the interest of the estate."[4]  The extensive briefs before the Court, and the evidence to be presented at the Confirmation Hearing, more than amply demonstrate that each of the factors set forth by the Third Circuit in *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996), weighs heavily in favor of approving the JPM Settlement.[5]

**B.**     **The Plan's Release Provisions in Favor of JPM Should Be Approved**

5.     The Bankruptcy Code identifies various additional provisions that may be incorporated into a chapter 11 plan, including "any other appropriate provision not inconsistent with the applicable provisions of this title." 11 U.S.C. § 1123(b)(6). Among other discretionary provisions, the Plan includes certain releases by the Debtors and third-parties.

6.     Article I.A.215. of the Plan defines "Released Parties" as including, among other parties, JPM along with their respective related persons. Article I.A.217. of the Plan defines "Releasing Claim Holder" as including Holders of Claims that do not (i) opt out of the releases contained in the Plan or (ii) timely file an objection to the releases. Article X.J.1.a. of the Plan provides for a release of JPM, among other Released Parties, by the Debtors and their Estates (the "Debtor Release"), and Article X.J.4. (the "Third-Party Release," and together with the Debtor Release, the "Release Provisions") provides for a release with respect to certain enumerated claims of JPM, among other Released Parties, by the Releasing Claim Holders. The Release Provisions are appropriate with respect to JPM and Third Circuit law, and should be approved.[6]

---

[4]     *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 425 (1968).

[5]     *See JPMorgan Chase Bank, National Association's Objection to Joint Motion of the Official Tort Claimants' Committee and Future Claimants' Representative for Entry of an Order Granting Standing and Authorizing the Prosecution of Certain Challenge Claims on Behalf of the Bankruptcy Estates* [D.I. 2732], ¶¶ 67-80, which is incorporated by reference, for the application of the *Martin* factors and why the JPM Settlement should be approved.

[6]     Section 1123(b)(3)(A) of the Bankruptcy Code provides that a chapter 11 plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." Accordingly, pursuant to section 1123(b)(3)(A), the Debtors may release estate causes of action as consideration for concessions made by their various

7.      Among other issues raised in the Objection, the United States Trustee argues that the Third-Party Release is too broad and lacks consideration.[7]  However, with respect to JPM, this argument does not take into account, among other things, (i) that the Third-Party Release is consensual and permissible under controlling Third Circuit law, (ii) that the Third-Party Release constitutes a critical component of an extensively negotiated, comprehensive and fully integrated settlement between the Debtors, JPM and the UCC, and (iii) the substantial contribution and consideration that JPM has provided to these Chapter 11 Cases.

8.      First and foremost, the Third-Party Release is consensual because Article I.A.247. of the Plan (defining "Releasing Claim Holder") expressly provides that a holder of a Claim will not be a Releasing Claim Holder if it: (i) elects to opt out of the releases set forth in Article X.J.4. of the Plan; or (ii) files a timely objection to the releases set forth in Article X.J.4. of the Plan.[8] Thus, any party that would otherwise be a Releasing Claim Holder may opt out of the release (as many have) by simply checking a box on their ballot or opt-out form or filing an objection.  As aptly stated in the Debtors' Confirmation Brief, a creditor who receives notice of an obligation to object or opt out and does not do so is deemed to consent.[9]

---

stakeholders pursuant to the Plan.  The Debtor Release is addressed in the Debtors' Confirmation Brief, and is appropriate for the reasons set forth therein.

[7]   To the extent not addressed herein, JPM incorporates and adopts the arguments set forth in the Debtors' Confirmation Brief with respect to approval of the Third-Party Release.

[8]   To be clear, and as conceded by the United States Trustee, not all decisions have required affirmative consent. *See In re Z Gallerie,* June 13, 2019 Hr'g Tr. 48:9-11 [D.I 384] ("With respect to third-party releases I'm prepared to find that they are consensual because of the opt-out box in the ballots."); *In re Indianapolis Downs, LLC*, 486 B.R. 286, 304–05 (Bankr. D. Del. 2013); *U.S. Bank N.A. v. Wilmington Tr. Co. (In re Spansion, Inc.)*, 426 B.R. 114, 144 (Bankr. D. Del 2010). *See* Transcript Excerpts at Exhibit A.

[9]   *In re Southeastern Grocers, LLC*, No. 18-10700 (MFW) (Bankr. D. Del. May 14, 2018), May 14, 2018 Hr'g Tr. 23:13-18 [D.I. 492] ("[T]here are many instances where a party's required to file a response.  And if the party does not, that is deemed to be consent to the request.  Why is this different?  There was a notice given to all unimpaireds requiring them to object if they had an objection specifically to the releases.  Why is that not consent?").

9.      Accordingly, the Third-Party Release does not unfairly prejudice the interests of any parties because all potentially-affected parties have had ample notice and opportunity to protect any claims they do not wish to release under the Third-Party Release,[10] and parties filing the Objections related to these releases have taken the necessary steps to opt out.[11]  Courts in this jurisdiction, including this Court, have found opt-out and failure-to-object mechanisms for granting releases similar to those under the Plan to be a sufficient manifestation of consent in multiple other cases, including over objections.[12]

10.      Under applicable Third Circuit precedent, a consensual third-party release may be permissible in a plan when tested for fairness, necessity to the reorganization, whether specific factual findings support such a release, and whether reasonable consideration has been given in exchange for the release. *In re Continental Airlines,* 203 F. 3d 203, 214–15 (3d Cir. 2000). The consensual Third-Party Release satisfies this standard.

---

[10]    The proper inquiry in evaluating notice is to determine whether the means selected is "likely to inform persons affected, not whether each person actually received notice." *In re New Century TRS Holdings, Inc.*, 465 B.R. 38, 48–49 (Bankr. D. Del. 2012) (quoting *In re Charter Co.,* 113 B.R. 725, 728 (M.D. Fla. 1990) (citing *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988)). As further described in the Debtors' Confirmation Brief, the manner of notice provided in this cases provided ample opportunity for persons to elect to either opt out or object to the releases.

[11]    *In re Chaparral Energy Inc.*, No. 20-11947 (MFW) (Bankr. D. Del. Oct. 1, 2020) [D.I. 237] (confirming plan and approving third party releases by holders of claims who voted to reject or abstained from voting and did not opt out); *In re Z Gallerie, LLC*, No. 19-10488 (LSS) (Bankr D. Del. Mar. 11, 2019) [D.I. 397] (confirming plan and approving third party releases for holders of claims that voted to reject the plan and did not opt-out); *In re TK Holdings, Inc*., No. 17-11375 (BLS), 2018 Bankr. LEXIS 756, at *55 (Bankr. D. Del. Feb. 21, 2018) (same); *In re Horsehead Holding Corp.*, No. 16-10287 (CSS) (Bankr. D. Del. Sept. 9, 2016) [D.I. 1695] (same).

[12]    *See In re Indianapolis Downs*, 486 B.R. at 304–06 (holding that releases were consensual when creditors were provided the option to opt-out); *In re Spansion, Inc.*, 426 B.R. at 144  (finding unimpaired creditors deemed to accept the plan could be bound to third-party release therein because such creditors had not objected to the release, were being paid in full, and received adequate consideration for the release); *In re Coram Healthcare Corp.*, 315 B.R. 321, 336 (Bankr. D. Del. 2004) (finding that voting in favor of a plan of reorganization that provides for a third-party release indicates consent to the release, even without an explicit election option to accept the third-party release); *In re Insys Therapeutics, Inc.*, Case No. 19-11292 (JTD) (Bankr. D. Del. Jan. 16, 2020) [Docket No. 1115] (confirming plan and binding creditors who were deemed to reject and did not opt-out of third-party releases).

11.    First, the Third-Party Release is sufficiently specific, as the Plan describes the nature and type of claims released,[13] the universe of released and releasing parties,[14] and all parties in interest were to have been provided notice of the release.[15] Further, the scope of the Third-Party Release is reasonable and consistent with that of third-party releases approved in prior cases in this District.[16]

12.    Second, the Third-Party Release is the product of extensive good faith, arm's length negotiations, is an integral component of the Plan and was a material inducement for JPM to agree to the Plan.  JPM was unwilling to support the Plan and provide the consideration and contributions to the Plan without the assurance that JPM and its collateral would not be subject to post-emergence litigation or other disputes regarding the Debtors' restructuring.

13.    Third, the Third-Party Release is for ample and valid consideration, as JPM provided critical contributions to the Debtors' restructuring and to the Plan. JPM consented to the use of its Cash Collateral in these Chapter 11 Cases, which provided the liquidity necessary to fund the administration of the Debtors' Chapter 11 Cases.  JPM further agreed to support the Plan,

---

[13]    *See* Article X.J.4.

[14]    *See* Article I.A.215, 217.

[15]    *See In re EV Energy Partners*, Case No. 18-10814 (CSS) Hr'g Trans. at 212:1–25; 214:6–25 – 215:1 (finding that those claimants in classes deemed to reject received notice and an opportunity to object); *In re Southeastern Grocers, LLC*, Case No. 18-10700 (MFW) Hr'g Trans. at 37:1–25 (concluding that releases were consensual because unimpaired claimants received notice and were afforded the opportunity to file an objection to the release, thus constituting consent); *In re Remington Outdoor Co., Inc.*, Case No. 18-10684 (BLS) Hr'g Trans. at 72:14–25; 73:1–6 (finding the releases appropriate for (i) unimpaired claims (deemed to accept) and (ii) those claimants voting to reject the plan or abstaining from voting who failed to check the opt-out box on the ballot); *In re TK Holdings Inc., et al.*, Case No. 17-11375 (BLS) (Bankr. D. Del. Feb. 14, 2018) [Docket No. 2050] (order confirming plan and approving third party releases by creditors who had consented by not opting out of the release, either by abstaining from voting or by voting against the plan without affirmatively electing to opt out); *In re Horsehead Holding Corp.*, Case No. 16-10287 (CSS) (Bankr. D. Del. Sep. 9, 2016) [Docket No. 1695] (confirming plan and approving third party releases by creditors who had consented by not opting out of the release, either by abstaining from voting or by voting against the plan without affirmatively electing to opt out); *see also Notice of Filing of Debtors' Second Modified Fifth Amended Chapter 11 Plan of Reorganization and Blackline Thereof* [D.I. 7833].

[16]    *See In re Indianapolis Downs*, 486 B.R. at 304–06; *In re Spansion, Inc.*, 426 B.R. at 144.

pursuant to which JPM has agreed to accept takeback debt on account of its claims pursuant to various exit facilities. These significant contributions were absolutely critical to the efficient administration of these Chapter 11 Cases, which inured not only to the benefit of the Debtors, but also to the benefit of all stakeholders by allowing the Chapter 11 Cases to efficiently proceed and, thus, maximize the value of the Debtors' charitable mission for all stakeholders. The Release Provisions were key to JPM's willingness to enter into the exit facilities and ultimately vote for the Plan, and should be approved.

**C.    The Plan's Injunction Provisions in Favor of JPM Should Be Approved**

14.    The injunction provision set forth in Article X.L.1. of the Plan (the "Injunction Provision") merely implements the Plan's discharge and release provisions by permanently enjoining all holders of Claims from commencing or maintaining any action against JPM, among other Released Parties, on account of, or in connection with, or with respect to, any claims or interests that have been released, discharged, or settled under the Plan.  The United States Trustee has challenged the Injunction Provisions based on its Objection to the Release Provisions. Because the Release Provisions should be approved for the reasons set forth above, the related objection to the Injunction Provision in favor of JPM should likewise be overruled.

## RESERVATION OF RIGHTS

15.    JPM expressly reserves all rights with respect to the Objections to confirmation of the Plan, including the right to amend, modify or supplement this Joinder, submit additional briefing, as applicable and appropriate, and to respond to any additional objections made during the hearing on confirmation of the Plan. Nothing contained herein shall constitute a waiver of any of JPM's rights or remedies, each of which is expressly reserved.

## <u>CONCLUSION</u>

16.     For all of the foregoing reasons set forth above and in the Debtors' Confirmation Brief, JPM respectfully requests that the Court overrule the Objections and enter an order confirming the Plan.


*[Remainder of page intentionally left blank]*

Dated:  March 2, 2022
       Wilmington, Delaware

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Morgan L. Patterson*
Matthew P. Ward (DE Bar No. 4471)
Morgan L. Patterson (DE Bar No. 5388)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone:  (302) 252-4320
Facsimile:  (302) 252-4330
Email: matthew.ward@wbd-us.com
       morgan.patterson@wbd-us.com

-and-

**NORTON ROSE FULBRIGHT US LLP**
Kristian W. Gluck (admitted *pro hac vice*)
Richard S. Krumholz (admitted *pro hac vice*)
John Hammond Heath (admitted *pro hac vice*)
Sarah Brown Cornelia (admitted *pro hac vice*)
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
Email: kristian.gluck@nortonrosefulbright.com
       richard.krumholz@nortonrosefulbright.com
       john.heath@nortonrosefulbright.com
       sarah.cornelia@nortonrosefulbright.com

*Counsel to JPMorgan Chase Bank, National Association*