**EXHIBIT A**

1

1          unitUNITED STATES BANKRUPTCY COURT
                    DISTRICT OF DELAWARE
2

3                                    .   Chapter 11
   IN RE:                            .
                                     .   Case No. 18-10814 (CSS)
4  EV ENERGY PARTNERS, *et al.,*     .
                                     .   Courtroom No. 6
5                                    .   824 North Market Street
                                     .   Wilmington, Delaware 19801
6                                    .
7          Debtors.                  .   May 16, 2018
   . . . . . . . . . . . . . . . .   .   10:00 A.M.
8

9                     TRANSCRIPT OF HEARING
          BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
10              UNITED STATES BANKRUPTCY JUDGE

11 APPEARANCES:

12 For the Debtors:          Brad Weiland, Esquire
                             Jeffrey Zeiger, Esquire
13                           William Arnault, Esquire
                             Casey McGushin, Esquire
14                           Travis Bayer, Esquire
                             KIRKLAND & ELLIS
15                           300 North LaSalle
                             Chicago, Illinois 60654
16
                             - and -
17
                             Laura Davis Jones, Esquire
18                           PACHULSKI STANG ZIEHL & JONES
                             919 North Market Street
19                           Wilmington, Delaware 19801
20
   Audio Operator:           Al Lugano
21
   Transcription Company:    Reliable
22                           1007 N. Orange Street
                             Wilmington, Delaware 19801
23                           (302)654-8080
                             Email:  gmatthews@reliable-co.com
24

25 Proceedings recorded by electronic sound recording,
   transcript produced by transcription service.

2

```
 1   APPEARANCES (Cont'd):

 2

 3   For Roger Kent:              Stuart Brown, Esquire
                                  Derrick Farrell, Esquire
 4                                DLA PIPER
                                  1201 North Market Street
 5                                Wilmington, Delaware 19801

 6   For Ad Hoc Committee:        Philip Dublin, Esquire
                                  AKIN GUMP
 7                                One Bryant Park
                                  Bank of America Tower
 8                                New York, New York 10036

 9   For EnerVest:               Alan Moskowitz, Esquire
                                  GIBSON DUNN
10                                200 Park Avenue
                                  New York, New York 10166
11

12   For U.S. Trustee:           Hannan McCollum, Esquire
                                  OFFICE OF U.S. TRUSTEE
13                                844 King Street
                                  Wilmington, Delaware 19801
14

15   For JPMorgan Chase          Elisha Graff, Esquire
                                  SIMPSON THACHER
16                                425 Lexington Avenue
                                  New York, New York 10017

17

18

19

20

21

22

23

24

25
```

1                                    INDEX

2                                                    PAGE

3
Motion of Certain Equity Holders for the Appointment of an Examiner
4    Pursuant to Section 1104(c) of the Bankruptcy Code and Bankruptcy
Rule 2007.1 Filed by RK Investments, Inc., Jerry R. Kent, Selma
5    Poznanovich [Filed 5/7/18] (Docket No. 160).

6    ARGUMENT:                                      132

7    RULING:                                        189

8    Adequacy of Disclosure Statement and Confirmation of Plan: Joint
Prepackaged Chapter 11 Plan of Reorganization for EV Energy
9    Partners, L.P. and Its Debtor Affiliates [Filed 4/2/18] (Docket No.
6).
10
11   ARGUMENT:                                      198

12   RULING:                                        212

13

14   DEBTORS' WITNESS(s)

15       MR. HARDEN

16       Direct examination by Mr. Farrell            5

17       Cross examination by Mr. Zeiger             75

18       Redirect examination by Mr. Farrell        114

19   DEBTORS' WITNESS(s)

20       NICHOLAS BOBROWSKI

21       Cross-examination by Mr. Brown             120

22   EXHIBITS:                                  I.D.    REC'D

23   Debtors' Exhibits 38,39,40,41                      112

24   Exhibits 42 and 43    Articles              47

25

 1 | that was filed with the plan supplement, Your Honor.

 2 |             And just one word on the timing of the third-party

 3 | releases -- and you may hear from others -- but our clients

 4 | are giving value today in connection with confirmation of the

 5 | plan through the provision of this exit facility and we think

 6 | it's fair, Your Honor, that we get the benefit of the release

 7 | that we bargained for, as well.

 8 |             THE COURT:  Well, you didn't put that in your

 9 | plan.  I mean, you certainly get it when the plan goes

10 | effective, but if you didn't put a timeline in your plan, you

11 | don't get to just make one up at confirmation.

12 |             MR. GRAFF:  I'm sorry, Your Honor.  I meant in

13 | connection with the effectiveness of the plan, of course.

14 |             THE COURT:  Of course.

15 |             MR. GRAFF:  Thank you, Your Honor.

16 |             THE COURT:  So, do I have to pay you three times?

17 | I think you had three reasons you get paid your fees.

18 |             MR. GRAFF:  Well, four, because there's also Mr.

19 | Weiland's reasons.

20 |             THE COURT:  Oh, okay.

21 |             MR. GRAFF:  Thank you, Your Honor.

22 |             THE COURT:  Anything further?

23 |             MR. WEILAND:  Your Honor, just briefly, responding

24 | to a couple of those points.  We do have a form of

25 | confirmation order.  We've ahead a paragraph since the

1    original draft was filed.  It says:

2              "Notwithstanding anything to the contrary in the

3    plan or this confirmation order," it lists the names of the

4    party that filed objections, "shall not be released parties

5    or releasing parties under the plan."

6              And I'm happy to share this draft with Mr. Brown.

7              THE COURT:  Okay.

8              MR. WEILAND:  Taking things in reverse order, Your

9    Honor, Ms. Scheuer mentioned the related parties included in

10   the releases.  I think that's typical and it's necessary when

11   there's a shared identity of interest and indemnification

12   obligations that run from certain released parties to others.

13             If you take out the parties that are indemnified,

14   the effect may be to take out the entire release that

15   directly -- that a single party may be getting.  So, I think

16   it's pretty typical to -- and I know the list is long -- but

17   a list of representative parties and agents, as well as the

18   parties making their direct contributions.

19             THE COURT:  Thank you.

20             MR. WEILAND:  Thank you.

21             THE COURT:  All right.  I'm going to overrule it

22   with one sort of clarification.  I'm going to overrule the

23   objections to the exculpation, release, and payment

24   provisions offered by the SEC, the U.S. Trustee, and the

25   equity holders.

1        With regard to exculpation, I believe that the

2   changes that were made to limit it to estate fiduciaries and

3   their affiliates is appropriate here and I understand that

4   does mean that EnerVest will be exculpated, but in this --

5   under the facts of this case, I don't find that troubling.

6   They have provided some value to the bankruptcy in agreeing

7   to enter into the new cost sharing or services -- excuse me -

8   - services agreement.

9        And, in addition, I think it's appropriate that

10  affiliates of released parties -- excuse me -- affiliates of

11  debtors get released or get exculpated, so I don't have a

12  problem with that.  It's a little odd to include prepetition

13  activity under an exculpation provision, but in a case, in

14  particular of a pre-pack like this where all the action for

15  the most part happened prepetition, I think it's appropriate.

16       The payment of the fees is a little more

17  difficult.  I generally prefer that parties make a

18  substantial contribution case if they're going to get paid.

19  I don't think it would be hard in this instance to -- for any

20  of those parties to make a substantial contribution case and,

21  thus, get paid.  I -- in the context of a consensual

22  prepackaged plan of reorganization, I think it's acceptable

23  that they get paid outside of the normal substantial

24  contribution provisions as part of their agreement to enter

25  into the RSA, et cetera.

1          I think that in other cases where you've got a

2   lengthy case or a hotly contested case -- not that we weren't

3   hotly contested for the last two days -- that it would be

4   more appropriate to have to make a substantial contribution

5   claim, but not in this instance.

6          And with regard to the third-party releases, I

7   mean, look, I think they're consensual.  I don't think

8   they're nonconsensual.  It's very clear in the notice, you

9   know, shareholders and creditors have to read legal notices;

10  that's just the way it is.  And if you don't know that, then

11  you're proceeding at your own risk when you invest in stocks

12  and credit and bonds.

13         The -- I think the notice was adequate here.  I

14  take issue with the somehow it was a hurry-up job, that it

15  was to the disadvantage of the equity holders.  All the time

16  frames here are completely, utterly consistent with and in

17  compliance with the Federal Rules of Bankruptcy Procedure and

18  Federal Rules of Civil Procedure.  Nothing untoward has

19  happened whatsoever in connection with the notices that have

20  been given.

21         So, with regard to the release opt-out, I think

22  you do have to probably build something in, a mechanism that

23  allows people to continue to opt out until the effective

24  date, but, of course, once the effective date happens, then

25  the people that haven't opted out are going to be bound.  So,

1  that would be my only change.

2              All right.  Any other --

3              MR. WEILAND:  Thank you, Your Honor.

4              THE COURT:  Do you have any other objections, Mr.

5  Weiland, that you need to report on?

6              MR. WEILAND:  We have a few objections which I can

7  run through live.  Some we've been able to resolve.  Certain

8  of these -- and I will let Mr. Bayer describe a resolution

9  that was reached with one objecting party, as well as the

10  Justice Department when I wrap this up, but I'll just run

11  through some of the documents that we've had on the docket

12  and where things stand.

13              I'm looking at the chart that was attached to our

14  brief, but I'll run through it live for you, Your Honor.  The

15  first listed objection is filed by Ms. Poznanovich; I think

16  we've addressed that.  The second is filed by a gentleman

17  named Chris Girand, who is an individual noteholder.  He

18  objects to the debtors' plan in large part because the

19  recovery or the distribution paid to equity holders is too

20  high and warrants is -- and a warrant-only recovery is

21  enough.  He makes a couple allegations about the debtors'

22  historical equity distributions being too high and wishes

23  that they had conserved some cash.

24              We don't think any of this offers an obstacle to

25  confirmation.  We've spoken to Mr. Girand and explained the

1  facts of the case and why the plan does what it does and

2  looks the way it looks.  Mr. Girand was not satisfied to the

3  point of wanting to withdraw his objection, and we remain

4  willing to continue any discussions, but I believe that the

5  objection can be overruled and the plan confirmed over that

6  objection.

7          THE COURT:  Is that gentleman present?

8      (No verbal response)

9          THE COURT:  The objection is overruled.

10         MR. WEILAND:  Thank you, Your Honor.

11         Next -- and I'll take two at once -- we have one

12 objection at Docket Number 173 filed by a Mr. and Mrs. John

13 S. and Judith J. Kramer.  We also have at Docket Number 176,

14 an objection filed by a Mr. Steven W. Saska.

15 Both of these objections were filed by royalty owners, Your

16 Honor --

17         THE COURT:  Right.

18         MR. WEILAND:  -- individual royalty owners.  We

19 really believe, after speaking with these parties, that the

20 objection goes to a misunderstood concern about the term

21 "assumption" in the plan and a fear that the plan will divest

22 them of their royalty interests and pull that into EVEP, into

23 the debtors.

24         We've explained that that is not the case.  I

25 believe that the Kramers were generally satisfied with their

224

1          (Proceedings concluded at 5:40 p.m.)

2

3

4

5

6

7                              CERTIFICATE

8

9    We certify that the foregoing is a correct transcript from

10   the electronic sound recording of the proceedings in the

11   above-entitled matter.

12

13
     /s/Mary Zajaczkowski                    May 23, 2018
14   Mary Zajaczkowski, CET**D-531

15
     /s/William J. Garling                   May 17,2018
16   William J. Garling, CE/T 543

17
     /s/ Coleen Rand                         May 17, 2018
18   Coleen Rand

19

20

21

22

23

24

25

1          UNITED STATES BANKRUPTCY COURT
2              DISTRICT OF DELAWARE

3                           .     Chapter 11
   IN RE:                   .
4                           .     Case No. 18-10684 (BLS)
   REMINGTON OUTDOOR COMPANY, INC.,.
5  et al.,                  .
                            .     Courtroom No. 1
6                           .     824 North Market Street
                            .     Wilmington, Delaware 19801
7                           .
                Debtors.    .     May 2, 2018
8  . . . . . . . . . . . . . . . .  1:30 P.M.

9              TRANSCRIPT OF HEARING
10  BEFORE THE HONORABLE BRENDAN L. SHANNON
            UNITED STATES BANKRUPTCY JUDGE

11

12 APPEARANCES:

13 For the Debtors:          Laura Davis Jones, Esquire
                             Timothy Cairns, Esquire
14                           PACHULSKI STANG ZIEHL & JONES LLC
                             919 N. Market Street, 17th Floor
15                           P.O. Box 8705
                             Wilmington, Delaware 19899-8705
16

17

18 Audio Operator:           Dana Moore

19 Transcription Company:    Reliable
                             1007 N. Orange Street
20                           Wilmington, Delaware 19801
                             (302)654-8080
21                           Email:  gmatthews@reliable-co.com

22

   Proceedings recorded by electronic sound recording,
23 transcript produced by transcription service.

24

25

```
 1   APPEARANCES (Continued):

 2   For the Debtors:            Gregory Bray, Esquire
                                 Thomas Kreller, Esquire
 3                               Haig Maghakian, Esquire
                                 MILBANK, TWEED, HADLEY & MCCLOY LLP
 4                               2029 Century Park East, 33rd Floor
                                 Los Angeles, California 90067
 5
     For the U.S. Trustee:       Juliet Sarkessian, Esquire
 6                               UNITED STATES DEPARTMENT OF JUSTICE
                                 OFFICE OF THE U.S. TRUSTEE
 7                               844 King Street, Suite 2207
                                 Lockbox 35
 8                               Wilmington, Delaware 19801

 9   For Ad Hoc Group            Andrew Parlen, Esquire
     of Term Lenders:            O'MELVENY & MYERS LLP
10                               Times Square Tower
                                 7 Times Square
11                               New York, New York 10036

12   For the Committee:          Michael Menkowitz, Esquire
                                 FOX ROTHSCHILD LLP
13                               2000 Market Street, 20th Floor
                                 Philadelphia, Pennsylvania 19103
14
     For Third Lien             Rachel Strickland, Esquire
15   Noteholders:               WILLKIE FARR & GALLAGHER LLP
                                 787 7th Avenue
16                               New York, New York 10019

17   For the SEC:                Therese Scheuer, Esquire
                                 U.S. SECURITIES & EXCHANGE
18                               COMMISSION
                                 100 F Street, NE
19                               Washington, DC 20549

20

21

22

23

24

25
```

1                              INDEX

2                                                           PAGE

3

4   Adequacy of Disclosure Statement and Confirmation of Plan: Joint
    Prepackaged Chapter 11 Plan of Remington Outdoor Company, Inc. and
5   its Affiliated Debtors and Debtors-in-Possession [D.I. 13, 3/25/18]

6   ARGUMENT                                             4 - 101

7   RULING                                                102

8

9

10  EXHIBITS:                                      ID      Rec'd

11  Declaration of Ari Lefkovits                            8

12  Declaration of Joseph Sciametta                         8

13  Declaration of James Daloia                             9

14

15

16

17

18

19

20

21

22

23

24

25

1  those or, frankly, release and forego them within the

2  business context of the transaction that's before me.

3              But, again, as I look at this, I am satisfied that

4  the debtors have carried their burden for purposes of

5  obtaining the releases that were requested under the plan.

6  And in so ruling, I am satisfied, particularly as it relates

7  to the third-party releases, that there are substantial

8  contributions that have been made by the released parties to

9  the debtors' reorganization and I find, also, that the

10 releases are essential to the debtors' reorganization.

11             It is not lost upon me that the record here

12 clearly reflects an extensive and hard-fought and

13 comprehensive negotiation and restructuring that's embodied

14 in the RSA at the outset and in the plan that I am proposing

15 to confirm, subject to some issues remaining with the U.S.

16 Trustee.

17             In addition, I attribute great weight to the

18 support from the creditor body and the creditor suffrage

19 that's reflected in Mr. Daloia's declaration.  And, again, I

20 attribute the significance to the support articulated by the

21 official committee of unsecured creditors, having scoured the

22 plan itself, and that, as I said, was obvious from the record

23 and from the revisions that have been built into it, that the

24 committee's support for plan confirmation with these release

25 provisions is, likewise, I think, meaningful evidence that

1  the Court can consider.

2          With respect to identity of interests, again, as a

3  general proposition in the plan that is placed before us,

4  there is a meaningful prospect that a litigation against a

5  released party would ultimately rebound to litigation against

6  the debtor, either through contractual, common law, or

7  corporate indemnification obligations.

8          And then, again, I do note that this plan does

9  provide for unimpairment of general unsecured claims; a point

10 that has been, again, stressed by the creditors' committee.

11 And that's one of the considerations that the Court has --

12 that courts have applied and again, to me, is a significant

13 consideration in the evaluation.

14         But, as I said, I think the U.S. Trustee and the

15 SEC have expressed legitimate concerns with respect to the

16 extent of the scope.  I am satisfied that the structure of

17 the solicitation process, which the Court has previously

18 approved, I think, preliminarily, is sufficient and

19 consistent with the Court's previous ruling in the

20 Indianapolis Downs case, and I understand that the SEC and

21 the U.S. Trustee may not necessarily agree with that, and,

22 obviously, I have an open mind and I would be willing to

23 address concerns in that respect in the next case, but in

24 this case, I'm satisfied, again, that the solicitation has

25 been sufficient and that those parties that were afforded an

1  opportunity to vote and to exercise their suffrage rights and
2  to state their position on a release, likewise, are bound by
3  the terms of the solicitation agreement and the plan.  So, I
4  am satisfied, again, that the release and the third-party
5  releases are sufficient, subject to the revisions that I have
6  directed.

7         With respect to the exculpation, one of the things
8  that I did on the call was I actually read the Code, which I
9  do on occasion.  And I make no comment about whether
10 exculpation does or doesn't exist prior to the provision
11 date, but I would be willing to enter an order that provides
12 that exculpation is available to the fullest extent provided
13 under, I believe, it's 1125(e) of the Code, and I will leave
14 it to a subsequent discussion about whether or not it can
15 extend on a prepetition basis.  It's an interesting question
16 and I think it was well-articulated.

17        I would observe that at least in the prior case
18 where I blessed it, I believe that the language was very
19 clear that it said that it extended prepetition and I blessed
20 that in the prior one.  I have shared with you, my concerns,
21 with respect to that, but what I will do is I will authorize
22 exculpation to the fullest extent permissible under Section
23 1125(e), and, again, to the extent that we need to cross that
24 bridge with another case at another point, I would be happy
25 to do so.

1          I have not made all the Court's rulings with

2   respect to plan confirmation, because we have the two issues

3   that remain from the Office of the United States Trustee.   I

4   would also note one further point, though -- and I think the

5   U.S. Trustee does make a good point; that's the plan language

6   -- and I would require, having ruled upon and approved the

7   releases, I think that Section D on Page 60 should come out,

8   "Releases of released parties," that paragraph belongs -- and

9   I believe I've looked at the order -- that paragraph is

10  effectively in the Court's findings, but the paragraph that

11  starts, "Entry of a confirmation order ..." that's either a

12  legal conclusion or a finding of fact and not really

13  appropriate for the purposes of a plan.   It will be in the

14  confirmation order.

15          With respect to the issue, and specifically

16  Paragraph 55 that was the subject of discussion between and

17  among the SEC and the debtor, I have studied the language and

18  I've also looked at 1125 and 1126.   I'm satisfied -- and I

19  also actually looked at a few other cases that I've seen --

20  I'm satisfied that at least for purposes of this case, that

21  the language is sufficient protection for the interests and

22  regulatory authority of the SEC and I will not require

23  further changes to that.

24          But, again, I think part of the predicate for that

25  is the measure of comfort that I drew from the debtors'

1  occur in front of me, but it's not lost upon me and I commend

2  the parties on a good result to a challenging restructuring.

3          Mr. Bray, do we have anything further this

4  afternoon?

5          MR. BRAY:  No, Your Honor.

6          THE COURT:  All right.  Anything further?

7      (No verbal response)

8          THE COURT:  All right.  We'll stand in recess.  I

9  appreciate everyone's patience.  Thank you.

10         (Proceedings concluded at 4:34 p.m.)

11

12

13                    CERTIFICATE

14

15  I certify that the foregoing is a correct transcript from the

16  electronic sound recording of the proceedings in the above-

17  entitled matter.

18  /s/Mary Zajaczkowski                    May 3, 2018

19  Mary Zajaczkowski, CET**D-531

20

21

22

23

24

25

```
           IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE DISTRICT OF DELAWARE

In re:                      )   Chapter 11
                            )
SOUTHEASTERN GROCERS,       )   Case No. 18-10700 (MFW)
LLC, et al.,                )
                            )
            Debtors.        )   (Jointly Administered)

                                Wilmington, Delaware
                                May 14, 2018
                                10:30 a.m.


         TRANSCRIPT OF AN ELECTRONIC RECORDING
       BEFORE THE HONORABLE MARY F. WALRATH
          UNITED STATES BANKRUPTCY JUDGE


                  OMNIBUS/CONFIRMATION

APPEARANCES:

For the Debtors           DANIEL J. DeFRANCESCHI, ESQ.
                          BRETT M. HAYWOOD, ESQ.
                          RICHARDS LAYTON & FINGER, P.A.
                                -and-
                          RAY C. SCHROCK, ESQ.
                          SUNNY SINGH, ESQ.
                          ANDRIANA GEORGALLAS, ESQ.
                          WEIL GOTSHAL & MANGES

For The Ad Hoc            ROBERT K. MALONE, ESQ.
Committee                 PATRICK A. JACKSON, ESQ.
                          DRINKER BIDDLE & REATH LLP

FOR Deutsche Bank AG      MARGARET MANNING, ESQ.
New York Branch           FOX ROTHSCHILD, LLP
                                -and-
                          ANDREW C. AMBRUOSO, ESQ.
                          WHITE & CASE LLP

For Sun Trust Bank        IAN J. SILVERBRAND, ESQ.
                          WHITE & CASE LLP

For the Ad Hoc Group      DENNIS L. JENKINS, ESQ.
Of Noteholders            MORRISON & FOERSTER LLP
```

2

```
 1   (Appearances Cont'd:)

 2   For Ahold                 DANIEL N. BROGAN, ESQ.
     U.S.A., Inc.              BAYARD P.A.
 3
     For WSFS, as Trustee/     ERIC J. MONZO, ESQ.
 4   Agent                     MORRIS JAMES
                                       -and-
 5                             SETH H. LIEBERMAN, ESQ.
                               MATTHEW W. SILVERMAN, ESQ.
 6                             PRYOR CASHMAN LLP

 7   For Wells Fargo           MORGAN L. PATTERSON, ESQ.
                               WOMBLE BOND & DICKINSON (US) LLP
 8
     For Wells Fargo,          BENJAMIN D. FEDER, ESQ.
 9   As Indenture Trustee      KELLEY DRYE & WARREN LLP

10   For Aston Properties,     SCOTT L. FLEISCHER, ESQ.
     Inc., et al.             KELLEY DRYE & WARREN LLP
11
     For C&S Wholesale         KERRI K. MUMFORD, ESQ.
12   Grocers, Inc.             LANDIS RATH & COBB LLP

13   For Lone Star Parties     WILLIAM E. CHIPMAN, JR., ESQ.
                               CHIPMAN BROWN CICERO & COLE LLP
14                                       -and-
                               AUSTIN W. JOWERS, ESQ.
15                             KING & SPALDING

16   For Aronov Realty,        LAUREL D. ROGLEN, ESQ.
     et al.                    BALLARD SPAHR LLP
17
     For CenterPoint           STUART BROWN, ESQ.
18   Properties                JADE WILLIAMS, ESQ.
                               DLA PIPER US, LLP
19
     For Commodore Realty,     JOYCE A. KUHNS, ESQ.
20   Inc.                      FRANK E. NOYES, II, ESQ.

21   For Nature's Hope LLC     THEODORE J. TACCONELLI, ESQ.
                               FERRY JOSEPH, P.A.
22
     For Kathy Chaves,         STEPHEN B. GERALD, ESQ.
23   et al.                    WHITEFORD TAYLOR & PRESTON

24   For H&R Entities          AARON H. STULMAN, ESQ.
                               WHITEFORD TAYLOR & PRESTON
25
```



**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477

3

```
 1 | (APPEARANCES CONT'D:)

 2 | For JEM Investments,    CORY P. STEPHENSON, ESQ.
   | LLC                     BIELLI & KLAUDER, LLC
 3 |
   | For The Chubb           RICHARD W. RILEY, ESQ.
 4 | Companies               DUANE MORRIS

 5 | For Hudson Crossing      ELIHU E. ALLINSON, III, ESQ.
   | Ipanema Smokey Park      SULLIVAN HAZELTINE ALLINSON
 6 |
   | For U.S. Securities      THERESE SCHEUER, ESQ.
 7 | And Exchange Commission

 8 | For 600 Realty, LLC      JULIA B. KLEIN, ESQ.
   |                          KLEIN, LLC
 9 |
   | For Gibbs & Hensley      MONIQUE B. DiSABATINO, ESQ.
10 |                          SAUL EWING ARNSTEIN & LEHR, LLP

11 | For The Office of the    BENJAMIN HACKMAN, ESQ.
   | U.S. Trustee             ASSISTANT U.S. TRUSTEE
12 |                          - - - - -

13 |
   | AUDIO OPERATOR:          BRANDON McCARTHY
14 |
   | Transcribed by:          WILCOX & FETZER LTD.
15 |                          1330 King Street
   |                          Wilmington, Delaware  19801
16 |                          302-655-0477
   |                          www.wilfet.com
17 |

18 |        Proceedings recorded by electronic sound

19 | recording.  Transcript produced by transcriptionist.

20 |                          - - - - -

21 |        THE COURT:  Good morning.

22 |        MR. SCHROCK:  Good morning, Your Honor.  Your Honor,

23 | Ray Schrock of Weil Gotshal & Manges on behalf of the debtors.

24 | I'm here today with my colleagues, Sunny Singh, Adriana

25 | Georgallas and Gaby Smith.
```



1    MR. HACKMAN:  May it please the Court, Ben Hackman for

2  the U.S. Trustee.

3    Our office filed a confirmation objection at docket

4  item 433, and it had raised four main points:  Exculpation,

5  third-party releases, the allowance of Class 6 claims, and the

6  payment of professional fees.

7    Our exculpation objection is resolved.

8    On the third-party release issue, Article 10.6(b) of

9  the plan would cause various creditors to grant third-party

10  releases, including releases by impaired creditors who

11  abstained from voting, and unimpaired creditors who did not

12  formally object to the releases.  And based on counsel's

13  representation that creditors who were entitled to vote but

14  who did not return ballots will not be deemed to give

15  releases, I think just leaves our objection as to unimpaired

16  class, in particular Class 6.

17    We don't believe Class 6 creditors should be deemed to

18  consent to the third-party releases in the plan, simply

19  because those creditors are unimpaired.  They're poised to be

20  paid in full under the plan or to ride through based on claims

21  they have against the debtors, but it is not evident that

22  those creditors will receive consideration for releasing

23  claims they have against nondebtor third parties.

24    We referenced the SunEdison decision in New York of

25  the Bankruptcy Court for the Southern District of New York

Case 18-10700-MFW    Doc 492    Filed 05/15/18    Page 23 of 113

23

1   with respect to creditors who are entitled to vote but who did

2   not return ballots, for the proposition that under New York

3   law, silence is not consent where no duty to speak exists, and

4   where silence is not misleading or indicative of consent.  I

5   think that the reasoning of that opinion applies to unimpaired

6   creditors in this class -- in this case as well.  The plan has

7   a New York choice of law provision, and the fact that

8   creditors in Class 6 who are unimpaired had the opportunity to

9   object to the third-party releases but did not would not, by

10  itself, transform their silence into consent.

11          We're also not convinced that extraordinary

12  circumstances --

13          THE COURT:  Well, but there are many instances where a

14  party's required to file a response.  And if the party does

15  not, that is deemed to be consent to the request.  Why is this

16  different?  There was a notice given to all unimpaireds

17  requiring them to object if they had an objection specifically

18  to the releases.  Why is that not consent?

19          MR. HACKMAN:  Your Honor, because the fact that they

20  had notice and an opportunity consent did not make them duty

21  bound to file anything.  I don't believe that they were

22  required to inform the debtors that no, we reject this part of

23  the contract that's being proposed to us in order to prevent

24  the debtors from asserting that your silence is allowing the

25  contract to be formed.

1        THE COURT:  How is that different from a complaint

2   being filed and, you know, you have to file an answer, or a

3   motion being filed and if you object to the relief requested

4   in the motion, you have to answer?  How is that any different?

5        MR. HACKMAN:  Your Honor, I think in the setting of a

6   complaint being filed, the, the defendant's legal rights are

7   at issue.

8        THE COURT:  So, so are these legal rights at issue.

9        MR. HACKMAN:  I think for Class 6 the proposal is that

10  their legal rights are going to be unaffected.  The, the plan

11  would -- those creditors' rights -- their claims arise through

12  the bankruptcy.

13       THE COURT:  Except the plan does say that they're

14  releasing third parties.

15       MR. HACKMAN:  That's right, Your Honor.  We don't

16  believe that -- as we read the SunEdison decision, and we

17  recognize that there are cases in this district that have

18  reached -- that have, that have holdings that are not

19  necessarily consistent on their face with the SunEdison

20  decision.  I think it is important in this case that the plan

21  does have a New York choice of law provision in it.  And we

22  would submit that the holding in the SunEdison decision, the

23  Court's review of contract law in New York --

24       THE COURT:  So there are no Third -- Southern District

25  of New York decisions allowing third-party releases?

1    time thinking about this business plan, thinking about this

2    business and how best to set it on a path going forward to

3    success, obviously for their own pecuniary interest, but also

4    for the many employees and the people who matter as a part of

5    this business.

6         And so we -- I want to just state for the record that

7    we do disagree with the U.S. Trustee.  We are not seeking at

8    this time to have our fees allowed under 502(b), in part

9    because we don't think that's necessary.  While we believe we

10   could go and make that showing and compel those payments,

11   given all the work that's been done here, as counsel has

12   pointed out, fee letters were signed before we entered into

13   this.  It was looking at this from the front end.  These

14   noteholders knew that this would be a lot of work, a lot of

15   cost, and before they entered on this course, wanted to know

16   their fees would be paid.  The fee letters assured them of

17   that.  The RSA assured them of that, and now the plan assured

18   them of that.  And that was the global deal they entered into

19   and expected those fees to be paid, part and parcel of all the

20   work that they've been going through to get this plan to

21   confirmation for all the reasons stated in the pleading.

22        So with that, Your Honor, I'll rest.  Thank you.

23        THE COURT:  Thank you.

24        Anybody else?

25        All right, well let me make my ruling on the U.S.

 1   Trustee's objections to confirmation.

 2          First, with respect to the third-party releases, I

 3   will overrule that objection.  The unimpaired creditors were,

 4   in fact, given notice and required to object to the releases,

 5   and I deem that to be consent.  The concept of being required

 6   to take an action in order to protect one's rights is not a

 7   novel concept, either in civil litigation or in the bankruptcy

 8   context.  And I will note that many, in fact, did object, and

 9   have been carved out in accordance with the terms of the plan.

10   So I think that that is sufficient in this case.

11          Even if they had not, I do think that the Continental

12   and Zenith factors are met here with respect to third-party

13   releases.  There's overwhelming support of all the impaired

14   creditors.  Creditors are being paid in full, pursuant to the

15   Bankruptcy Code, both the impaired and the unimpaired with the

16   exception of the noteholders who have consented to taking

17   equity.

18          The releases are necessary to the plan.  There is an

19   identity of interest of all the parties in reorganizing this

20   debtor along the terms of the global settlement reached before

21   the bankruptcy.  So I think that the releases in either event

22   are appropriate in this case.

23          With respect to the payment of expenses, 503(b)(3)(D)

24   is not the only way where such expenses can be approved and

25   paid in a case.  And I think it is perfectly appropriate to

1   agree prebankruptcy to the payment of those expenses without

2   the necessity of a court having to approve them after the fact

3   in order to get the parties to come to the table and negotiate

4   what ultimately in this case is a very successful

5   reorganization of this entity.

6          So I think that the fact that the debtors agreed to

7   that prebankruptcy was perfectly appropriate, and that there

8   is no necessity that I review those expenses or otherwise

9   interfere with that agreement.

10         With respect to the allowance of the general

11  unsecured, I think that the plan language is sufficient.  I'm

12  satisfied, given the fact that over 90 percent of the trade

13  that the debtors were authorized to pay on the first day have

14  in fact been paid, quote, in the ordinary course of business,

15  and that there is a mechanism in place to resolve those if

16  need be.  There is a mechanism that allows the filing of

17  proofs of claim, that allows creditors to bring this to the

18  Court's attention if they are not in fact being paid, in their

19  view, in the ordinary course.

20         So I will overrule the U.S. Trustee's objections.

21         MR. SINGH:  Thank you, Your Honor.  Sunny Singh, Weil

22  Gotshal, on behalf of the debtors.

23         THE COURT:  Yes.

24         MR. SINGH:  Your Honor, so then that leaves us, and we

25  can turn to the remaining objections to confirmation filed by

1    /s/Julie H. Parrack          May 15, 2018
2    Julie H. Parrack

3

4

5    

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25


**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477

1               UNITED STATES BANKRUPTCY COURT

2                 DISTRICT OF DELAWARE

3                         .   Chapter 11

IN RE:                 .

4                         .   Case No. 19-10488 (LSS)

Z GALLERIE, LLC, *et al.*,      .

5                         .   Courtroom No. 2

                        .   824 North Market Street

6                         .   Wilmington, Delaware 19801

                        .

7              Debtors.   .   June 13, 2019

. . . . . . . . . . . . . . . .   10:00 A.M.

8

9        BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN

             UNITED STATES BANKRUPTCY JUDGE

10 APPEARANCES:

11 For the Debtors:           Justin R. Bernbrock, Esquire

12                     Joshua M. Altman, Esquire

                    KIRKLAND & ELLIS LLP

13                     300 North LaSalle

                    Chicago, Illinois 60654

14

                    - and -

15

                    Joshua Sussberg, Esquire

16                     601 Lexington Avenue

                    New York, New York 10022

17

                    - and -

18

19                     Domenic Pacitti, Esquire

                    KLEHR HARRISON HARVEY BRNAZBURG LLP

20                     919 N. Market Street

                    Wilmington, Delaware 19801

21

Audio Operator:          MICHAEL MILLER, ECRO

22

23 Transcription Company:   Reliable

                    1007 N. Orange Street

                    Wilmington, Delaware 19801

24                     (302)654-8080

                    Email: gmatthews@reliable-co.com

25

1   Proceedings recorded by electronic sound recording,
    transcript produced by transcription service.
2

3   _____

4   APPEARANCES (Cont'd):

5

6   For the Committee:              Sarah Carnes, Esquire
                                    COOLEY
7                                   55 Hudson Yards
                                    New York, New York 10001
8

9   For DirectBuy Home             Craig Wolfe, Esquire
    Improvement:                   MORGAN LEWIS BOCKIUS
                                   101 Park Avenue
10                                 New York, New York 10178

11
    For Excel Gardens LLC          Kelly Conlan, Esquire
12  Town Square Ventures:          CONNOLLY GALLAGHER
                                   1201 North Market Street
13                                 Wilmington, Delaware 19801

14  For KKR Credit Advisors:       Vincent Indelicato, Esquire
                                   PROSKAUER ROSE
15                                 Eleven Times Square
                                   New York, New York 10036
16

17  For KeyBank:                   Mary Caloway, Esquire
                                   BUCHANAN INGERSOLL
18                                 919 North Market Street
                                   Wilmington, Delaware 19801
19

20  For Great American:            Richard Robinson, Esquire
                                   BURR & FORMAN
                                   1201 North Market Street
21                                 Wilmington, Delaware 19801

22

23

24

25

1

<u>INDEX</u>

2

<u>Page</u>

3  #1) Debtors' Motion Seeking Entry of an Order (I) Approving
   the Debtors Key Employee Incentive Program, (II) Approving
4  the Debtors Key Employee Retention Program, and (III)
   Granting Related Relief [Docket No. 301; Filed 5/25/2019].
5

6  #2) [Solicitation Version] First Amended Joint Plan of
7  Reorganization of Z Gallerie, LLC and Z Gallerie Holding
   Company, LLC Pursuant to Chapter 11 of the Bankruptcy Code
8  [Docket No. 255; Filed 5/1/2019]

9  **RULING: Confirmation - 45**

10

   <u>EXHIBITS</u>                        <u>I.D.</u>    <u>REC'D</u>
11
   Declaration of Jason Cohen                     10
12
   Declaration of Mark Weinsten                   10
13
   Declaration of James McGuire                   10
14

15

16

17

18

19

20

21

22

23

24

25

1  someone comes forward with respect to an executory contract

2  and suggests there's a notice issue with respect to them I

3  will listen to them.  And all the parties should know that

4  because while I'm pleased to see there was notice, I'm not

5  prepared to say today it was perfect notice or adequate for

6  every single party to a counter-contract.

7         The other concern I had is with respect to this

8  interim ninety day, I'll call, limbo period and how we're

9  going to assure that those parties to the contract during

10 this extended period will be paid appropriately for the

11 services and/or goods that they have provided in that interim

12 period.

13        I'm not sure that I'm going to let the debtor off

14 the hook in the order, but my understanding, and we've had it

15 confirmed today by the buyer's counsel and the buyer is here,

16 that buyer is taking those obligations and will ensure that

17 they get paid.  The debtor is reserving its ability to

18 enforce that and I would, of course, be sympathetic to any

19 counter-contract party who themselves wants to enforce any

20 payment obligations it believes are due to it during this

21 interim period.

22        So, with those comments I'm prepared on this

23 record, which is uncontroverted -- with respect to the

24 purchaser's ability to fulfill obligations I'm prepared to

25 approve that.

Case 19-10488-KBO    Doc 384    Filed 06/14/19    Page 48 of 69

48

1          With respect to the releases, the debtor releases

2    in particular, I find, based on the proffer -- not the

3    proffer, the explanation that was made with respect to the

4    investigation that was done with the oversight, the

5    cooperation of the creditor's committee, that claims do not

6    exist, or at least claims not worth pursuing exist, with

7    respect to the released parties I am prepared to find that

8    the master mortgage factors are met.

9          With respect to third-party releases I'm prepared

10   to find that they are consensual because of the opt-out box

11   in the ballots.  I am not finding and will not find in the

12   order that there was consideration or any of the other

13   factors that one looks to.  I am simply viewing that as

14   consensual.

15         That deals with the two big issues.

16         With respect to the 1129 factors I find, based on

17   the presentation that was made in a memorandum that the

18   factors have been met, in particular the debtor has met the

19   voting requirements.  All classes have accepted the plan by

20   the appropriate ratios.  We have an accepting impaired class.

21   The plan, the liquidation analysis shows that parties

22   wouldn't be receiving more in a liquidation then here.

23         I will note there is no recovery to unsecured

24   creditors under this plan, which, again, is a hesitation for

25   why.  And I will not make any statements with respect to

1 | releases, but there has been the negotiation of a waiver of

2 | Chapter 5 causes of action.  Whether there are any valid

3 | Chapter 5 causes of action I don't know.  And I won't get

4 | into my whole thing on preference actions.  That was achieved

5 | and we have committee support.  Again, their liquidation

6 | analysis does not show any recovery for unsecured creditors

7 | in a Chapter 7.  So, that requirement is met.

8 |          I think that's the highlights of the factors and I

9 | will, again, subject to going through the order, approve the

10 | plan as modified.

11 |          So, Mr. Altman, are you back up?

12 |          MR. ALTMAN:  I am.  9th inning - 3rd inning.

13 |          THE COURT:  I wasn't going to comment on that.

14 |          I guess I should have asked; you gave me an

15 | incremental plan.  Does this plan have anything material in

16 | it that's different then what I've just approved?

17 |          MR. ALTMAN:  I don't believe so, Your Honor.  I

18 | flagged the big one with respect to language ensuring that

19 | people can enforce their rights against the debtor.

20 |          THE COURT:  Okay.  Is this a blackline of an

21 | incremental order?

22 |          MR. ALTMAN:  It is a redline.  There aren't a ton

23 | of changes.  They're mostly in the leases section and they're

24 | relatively minor.

25 |          Page 22, there is just a tweak on agency

1          THE COURT:  Okay.  Thank you.  I don't have any

2  questions.

3          Does anyone wish to be heard?

4      (No verbal response)

5          THE COURT:  Okay.  No, I don't have any questions.

6  We reviewed it.  There are no objections.  I will approve it.

7          MR. ALTMAN:  Thank you, Your Honor.

8          I believe that resolves the agenda for today.

9          THE COURT:  Okay.  Thank you.

10          MR. ALTMAN:  Thank you.

11          THE COURT:  We're adjourned.

12      (Proceedings concluded at 4:06 p.m.)

13

14

15

16                    CERTIFICATE

17

18  I certify that the foregoing is a correct transcript from the

19  electronic sound recording of the proceedings in the above-

20  entitled matter.

21
    /s/Mary Zajaczkowski_____            June 13, 2019
22  Mary Zajaczkowski, CET**D-531

23

24

25