## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
|  | **Ref. D.I. 8771** |

### DEBTORS' RESPONSE TO THE JOINT FCR AND COALITION (I) MOTION FOR ENTRY OF AN ORDER (A)(1) STRIKING PORTIONS OF BATES REBUTTAL REPORT AND THE ENTIRE BATES SUPPLEMENTAL REPORT AND (2) PRECLUDING TESTIMONY RELATED TO IMPROPER VALUATION OPINION OR (B) IN THE ALTERNATIVE, GRANTING MOVANTS LEAVE TO SUBMIT A REBUTTAL REPORT; AND (II) LIMITED OBJECTION TO CONFIRMATION OF THE PLAN

Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession (together, the "Debtors") in the above-captioned chapter 11 cases, hereby file this response (the "Response")[2] to the *Joint FCR and Coalition[3] (I) Motion for Entry of an Order (A)(1) Striking Portions of Bates Rebuttal Report and the Entire Bates Supplemental Report and (2) Precluding Testimony Related to Improper Valuation Opinion or (B) In the Alternative, Granting Movants Leave to Submit a Rebuttal Report; and (II) Limited Objection to Confirmation of the Plan* [D.I. 8771] (the "Motion").

### PRELIMINARY STATEMENT

1.      Since the outset of these chapter 11 cases, the Debtors' goal has been to timely and equitably compensate Survivors for their abuse in Scouting. *See, e.g.,* D.I. 16 at ¶ 10.  The Debtors'

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] The Movants' limited Plan objection will be addressed in connection with confirmation.

[3] Together, the "Movants".

Plan accomplishes this important goal.  As is relevant to this Motion, one of the findings that the Debtors will seek at confirmation is that the Plan provides "a mechanism for the payment of all, or substantially all," Class 8 claims, which is a *Master Mortgage* factor relating to the fairness of the third-party releases and channeling injunction. *See In re Master Mortg. Inv. Fund*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994) (noting that courts may consider whether "[t]he plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction."). Dr. Bates' expert opinions provide critical evidence to prove this matter. Remarkably, Movants are Plan supporters, yet seek to preclude this important evidence.

2.      The impetus for this Motion is a concern by the Movants that a finding that the Plan includes a mechanism for payment substantially in full is (i) "a *de facto* estimation proceeding to establish the aggregate value of Abuse Claims" (Mot. ¶ 43), and (ii) somehow would restrict the ability of the Settlement Trustee to determine the value of Abuse Claims or will bind claimants in future hypothetical insurance coverage litigation. Neither concern is warranted.

3.      The Debtors are not asking the Court to undertake a section 502(c) estimation of the Abuse Claims in connection with Plan confirmation, nor are any other parties making such a request.  To the contrary, there is no dispute that the Settlement Trust has sole authority to determine the amount of each claim presented to it. *See* Debtors' Third Modified Fifth Amended Plan [D.I. 8813], Ex. A at Articles I.D, VII.D, VIII.A. Even the Certain Insurers acknowledge that the value of each Abuse Claim will be determined post-confirmation by the Settlement Trustee. *See, e.g.,* Certain Insurers' Obj. [D.I. 8695] at ¶ 47 ("The Plan provides that the Settlement Trustee will be solely responsible for reviewing and resolving the approximately 82,200 Direct Abuse Claims[.]").  The Debtors will not ask the Court to set the value of any individual Abuse Claim at confirmation.  A finding that the Plan provides a mechanism for payment of the aggregate Abuse

Claims substantially in full is sought solely for purposes of confirmation, and no such finding under *Master Mortgage* will dictate any individual's claim amount.

4.      Likewise, any finding this Court makes as to the mechanism in the Plan for payment substantially in full is not an adjudication of any position in any hypothetical future coverage litigation that has not been filed and may never be filed. None of those issues are even justiciable here. And this Court has made clear that its decision under section 1129 in this case will be made solely for confirmation purposes. *See, e.g., In re Boy Scouts of America*, No. 20-10343 (Tr.) (May 19, 2021) at 169-170 ("[W]hatever decisions I have to make in the context of a case I make. And if I have to make a decision under 1129, I've made it in the confirmation context.  Maybe it's an adjudication of something and maybe it's not. . . . [B]ut I can't fend off every view that a state court judge has about what I did or didn't do. . . . So then I decide certain things that I have to decide in the context in which I have to decide it.  This is confirmation.").  This Court has also recognized that a finding with respect to third-party releases under *Master Mortgage* is not an adjudication of the merits of the Abuse Claims.  *In re Millennium Lab Holdings II, LLC*, 575 B.R. 252, 272-73 (Bankr. D. Del. 2017) (Silverstein, J.) ("The [*Master Mortgage*] factors compel the bankruptcy judge to examine the terms of the plan of reorganization, the outcome of the solicitation of the plan and the necessity of the injunction to the success of the plan. These factors do not ask the bankruptcy judge to examine or make rulings with respect to the many claims that may be released by virtue of the third party releases. An order confirming a plan with releases, therefore, does not rule on the merits of the state law claims being released."); *see also In re Charles St. African Methodist Episcopal Church of Bos.*, 499 B.R. 66, 99 (Bankr. D. Mass. 2013) ("To reiterate, the matter before the Court is the confirmation of a plan, a unitary omnibus civil proceeding for the reorganization of all obligations of the debtor and disposition of all its assets.

Confirmation of a plan is not an adjudication of the various disputes it touches upon . . . it is a total reorganization of the debtor's affairs in a manner available only in bankruptcy.").

5.    And the Certain Insurers should agree to eliminate the Movants' unfounded concern as the insurers in this matter have repeatedly argued that the bankruptcy court should not adjudicate insurance coverage matters.

- Counsel to Hartford: "I don't mean to cabin Your Honor and I hope this won't come off in an insulting way, but you're a bankruptcy judge. You're not a coverage judge; you're not there to decide coverage issues, you're there to decide bankruptcy issues." May 19, 2021 Hr'g Tr. at 214:21-25.

- Counsel to Chubb: "The coverage issues aren't adjudicated and aren't going to be adjudicated in this court." Aug. 30, 2021 Hr'g Tr. at 34:25-35:1.

- Insurance coverage determination "is a major contested issue and should be made by the state courts."  [D.I. 6623] at ¶ 67.

- Counsel to the Certain Insurers made a number of similar arguments at this Court's March 2, 2021 hearing, but a transcript was not available at the time of this filing.

Any contrary position now would be disingenuous.

6.    In any case, there is no basis to strike any portion of Dr. Bates' expert reports.  The opinions that the Movants challenge are proper and timely rebuttal and supplemental expert opinions.  Moreover, the Movants have failed to identify any prejudice to them based on the timing of certain of Dr. Bates opinions.  The Debtors made Dr. Bates' opinions available as soon as practicable under the circumstances, with sufficient time to prepare for deposition and confirmation.  This is not a case in which the parties flouted discovery deadlines or intentionally provided discovery materials in an attempt to sandbag an adversary.  Rather, this is a highly

expedited matter in which circumstances have been fluid and have changed as settlements have been reached.  The Debtors have worked around the clock, including through weekends and holidays, to advance to confirmation and to seek resolutions of contested issues.  The Movants did not assert any objection at the time Dr. Bates' reports were served, nor did they seek an adjournment of Dr. Bates' deposition, to further consider his opinions.  Rather, the Movants attended Dr. Bates' deposition and asked their questions.

7.      The Movants also mischaracterize Dr. Bates' analysis and opinions.  The merits of Dr. Bates' opinion is not an issue for today.  But the Debtors note that, contrary to Movants' contentions, Dr. Bates has not abandoned his valuation.  Dr. Bates' opening report set forth the analysis supporting his opinion, which was published in the Disclosure Statement, that the estimated range of aggregate liability for the Abuse Claims was between $2.4 and $7.1 billion.  Dr. Bates later issued another expert report in rebuttal to the TCC's expert, Katheryn McNally.  In his rebuttal, Dr. Bates demonstrated a fundamental error in Ms. McNally's valuation relating to the difference between one-time abuser and serial abuser claims, and also corrected the data relating to the BSA historical settlements.  Dr. Bates opined that the most likely aggregate valuation for the Abuse Claims fell within the lowest quartile of his still existing valuation range, of between $2.4 and $3.6 billion, billions of dollars lower than Ms. McNally's calculation.  In his supplemental report, Dr. Bates adjusted his own benchmark calculation based on corrected data for such claims, and further provided detailed support for his response to Ms. McNally's rebuttal.  Thus, Dr. Bates has not abandoned his initial valuation of $2.4 to $7.1 billion, he has refined his opinion as to the likely value within his range based on a correction to the data.  And Dr. Bates would be free to provide his opinion about the likely value within his long-identified range, regardless of whether

he provided any further disclosures, so as to allow objectors to better prepare for deposition and confirmation.

## ARGUMENT

### A.    Dr. Bates' Opinions Should Not Be Stricken

8.    The Court has broad discretion to consider Dr. Bates' opinions, as demonstrated by the Movants' own cases. "The permissible scope of expert testimony is quite broad, and [trial courts] are vested with broad discretion in making admissibility determinations." *Hill v. Reederei F. Laeisz G.M.B.H.*, 435 F.3d 404, 423 (3d Cir. 2006). Indeed, Movants concede this point. *See* Mot. ¶ 45 (citing *Louisiana Health Care Self Ins. Fund v. United States*, No. CIV.A. 12-766-JJB, 2014 WL 3720526, at *2 (M.D. La. July 25, 2014) ("[T]he decision of whether to allow a party to present evidence in rebuttal or surrebuttal is generally committed to the trial court's discretion.")). As the Third Circuit has held, "this court is unaware of . . . any bright line rule that every opinion by an expert must be preliminarily stated in the report, or forever be precluded." *Hill v. Reederei F. Laeisz G.M.B.H.*, 435 F.3d 404, 423 (3d Cir. 2006).

9.    Dr. Bates' opinions are in rebuttal to Ms. McNally's valuation and also as a supplement to correct for mistakes in certain data, and were properly disclosed pursuant to Rules 26(a)(2) and 26(e) of the Federal Rules of Civil Procedure.  Moreover, Movants fail to prove any prejudice from their disclosure, a driving factor in a motion to strike.

### 1.    The Bates Rebuttal Is Timely and Admissible

10.     "Rebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party." *Helios Software, LLC v. Spectorsoft Corp.*, No. 12-081-LPS, 2014 U.S. Dist. LEXIS 135379, at *7 (D. Del. Sep. 18, 2014).  Movants seek to exclude all analysis relating to Dr. Bates' conclusion that the likely aggregate value of the Abuse Claims

falls within the lowest quartile of his valuation range, *i.e.*, between $2.4 and $3.6 billion.  (Mot. ¶ 27).   Movants assert incorrectly, without citation, that Dr. Bates' rebuttal valuation opinion "is not intended to contradict or rebut any of the Non-Debtor Expert Reports[.]" (Mot. ¶ 35)  To the contrary, Dr. Bates' rebuttal explicitly rebuts Ms. McNally's opinions that (1) "[t]he low end of a reasonable range of claim value for all BSA Sexual Abuse claims in the aggregate is estimated to be between $24.76 billion and $30.41 billion," and (2) "[t]he Bates White Disclosure Statement Valuation of 2.4 billion-$7.1 billion is inconsistent with settlement amounts agreed to by BSA prior to commencement of its chapter 11 cases and is not supported by disclosed methodology." Bates Rebuttal ¶ 10.  Indeed, Dr. Bates' reports explain that this analysis was in direct response to his examination of Ms. McNally's assertions concerning the historical BSA claim resolutions.  *See* Bates Rebuttal Report ¶¶ 11-22 (explaining analysis of verdicts considered by TCC's expert and impact of that analysis on Dr. Bates' aggregate valuation); Bates Supplemental Report ¶ 16 ("In my Rebuttal Report I noted that based on my ongoing work—*and in particular based on additional information provided as part of the December 5, 2021, Expert Report of Katheryn R. McNally . . .* regarding the types of abuse cases that are successfully taken to verdict against institutional defendants—I now believe that the aggregate value of the Abuse Claims as of the Petition Date is most likely to fall in the lower quartile of my full estimation range.") (emphasis added).  Dr. Bates' rebuttal analysis directly rebuts Ms. McNally by pointing out that Ms. McNally's valuation failed to account for critical factors that dictate the valuation of Abuse Claims – the distinction between one-time and serial  abusers, by calculating the impact that this factor has on the valuation, which Ms. McNally simply missed.

11.    Thus, Dr. Bates' rebuttal report plainly falls within the "broad" rule that a rebuttal report "simply address the same topic as the affirmative report, as opposed to the same topic and

methodology the affirmative expert relied on." *FTC v. Innovative Designs, Inc*., No. 2:16-cv-01669-NBF, 2018 U.S. Dist. LEXIS 125809, at *6 (W.D. Pa. July 27, 2018) (collecting cases); *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004) ("The Third Circuit's rule does not automatically exclude anything an expert could have included in his or her original report. Such a rule would lead to the inclusion of vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing the relevant material. All that is required is for the information to repel other expert testimony[.]"); *Withrow v. Spears*, 967 F. Supp. 2d 982, 1002 (D. Del. 2013) ("[R]ebuttal and reply reports may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert.").

12.     Dr. Bates' opinions are also a proper supplement.  In fact, Dr. Bates was not only entitled, but required, to supplement his opening report to account for a correction to the underlying data.  *See* Fed. R. Civ. P. 26(e) ("A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response [] in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]").  In connection with analyzing Ms. McNally's report for purposes of rebuttal, Dr. Bates' uncovered discrepancies in the historical data on which his analysis relied. Specifically, Dr. Bates found that certain records that were initially classified as Single Abuse Claims in fact involved repeat abusers.  Bates Rebuttal Report ¶ 15.  Consequently, Dr. Bates disclosed this updated data and the impact this new data had on his valuation analysis.  Bates Rebuttal Report ¶¶ 50-52, 79; Bates Supplemental Report ¶ 3.  Rule 26(e) obligated the Debtors to disclose this information. *See Dzielak v. Whirlpool Corp.*, No. 2:12-0089 (KM)(JBC), 2017 U.S.

Dist. LEXIS 39232, at *89 (D.N.J. Mar. 17, 2017) (Rule 26(e) "authorizes (indeed, requires) correction or supplementation where the person learns that an earlier response was 'incomplete or incorrect[.]'")  Such corrective supplementation is timely so long as it is served prior to pretrial disclosures, which have yet to occur in this case. *See id.*

### 2.    Dr. Bates' Supplemental Report Is Timely And Proper

13.    Dr. Bates' supplement did not "again change[] his valuation opinions," as the Movants claim. (Mot. ¶ 22)  Rather, Dr. Bates' opinion as to the likely valuation range, and the methodology for his benchmark valuation, remained unchanged.  The Movants acknowledge as much, noting that Dr. Bates provided a new aggregate benchmark value "reflecting the re-examined and updated calculations described in the Bates Rebuttal Report[.]" (Mot. ¶ 23) (internal quotation marks omitted).  Indeed, as the Movants recognize, this benchmark value was completely consistent with the corrected opinion that Dr. Bates offered in his Rebuttal Report, and including it in the Supplemental Report was proper for the reasons identified above.  Dr. Bates' opinion is proper rebuttal and cannot be stricken because it is included a second time in the supplement.  Moreover, as Dr. Bates' supplemental report makes clear, its primary purpose is to revise his prior opinion to account for "the updated value for penetration claims involving one time abusers reflected in my Rebuttal Report."  Bates Supplemental Report ¶ 2.  The Movants offer nothing to show otherwise, and fail to explain why Dr. Bates' accounting for corrections to his opening report was improper.

14.    Additionally, in his supplemental report, Dr. Bates responded to Ms. McNally's assertion in her rebuttal report that the high-end of Dr. Bates' valuation range would be exceeded in the event that certain time-barred Abuse Claims turn out to not be time-barred.  *See* McNally Rebuttal at 44 ("If only 6% of these claims (roughly 3,760) either provide additional information

to warrant inclusion in Bates White's valuation or are in states that enact a "revival window," then Bates White's Benchmark valuation would exceed the upper end of the Bates White valuation range."). Dr. Bates' opinion is that Ms. McNally is incorrect, and that his valuation range accommodates valuing time-barred claims.    Bates Supplemental Report ¶ 5.    Dr. Bates demonstrates this through two adjustments to the aggregate benchmark value: first, as the Movants suggest, Dr. Bates "add[s] a calculation illustrating the potential value assigned to claims that Bates White determined were presumptively barred by the statute of limitations and valued at zero in the Affirmative Bates Report."  (Mot. ¶ 25)  This upward adjustment, however, cannot be made in isolation.  To account for the countervailing effects arising from including an older claims pool, Dr. Bates "incorporate[s] a 20% downward adjustment to the benchmark value for Single Survivor Cases to account for 'minus factor' one, the age of the survivor at the time they made their claim." (Mot. ¶ 24)  As Dr. Bates notes in his supplemental report, this second adjustment, which was discussed in his opening report (*see* Bates Opening Report ¶ 103) is necessary to account for the "offsetting nature of some of the plus and minus factors"—here, the fact that adding in older claims (which increases the aggregate benchmark value) also requires consideration that older claimants generally recover less value on their claims (which decreases the aggregate benchmark value). Bates Supplemental Report ¶ 12.

15.    There is nothing improper about Dr. Bates' disclosing his opinions regarding another expert's rebuttal report.  Dr. Bates could properly respond to Ms. McNally's opinions at trial.  Rebuttal experts cannot preclude responses to their criticism.  Yet rather than wait to disclose Dr. Bates' opinions on the stand, as they were entitled to do, the Debtors disclosed Dr. Bates' responsive calculations in detail – along with underlying models – long in advance of trial, and even in advance of his deposition, so that the parties would be aware of his response to Ms.

McNally and be able to prepare for any examination of this opinion.  Thus, the objectors received only a benefit from receiving a detailed preview of Dr. Bates' testimony.    Consequently, the Movants are free to ignore the disclosure, but cannot preclude Dr. Bates from proving that his opinions are correct.  Dr. Bates' supplement is proper. *See Am. Diabetes Ass'n v. Friskney Family Tr., LLC*, No. 13-3720, 2015 U.S. Dist. LEXIS 184214, at *7 (E.D. Pa. July 21, 2015) (declining to exclude reply to rebuttal report where "[a]s opposed to presenting new opinions, [the expert's] reply provides further explanation in support of his prior opinions. While [the expert] had previously provided spreadsheets listing estimates of lost revenue, his reply report explains the basis for many of these calculations, in direct response to [the opponent's expert's] rebuttal report."); *FTC v. Innovative Designs, Inc.*, No. 2:16-cv-01669-NBF, 2018 U.S. Dist. LEXIS 125809, at *12-13 (W.D. Pa. July 27, 2018) (permitting sur-rebuttal expert report because "it is appropriate to give both parties a full opportunity to present their cases," and noting that (i) topics covered by sur-rebuttal were not new and analysis related to "central issues in this case," (ii) the additional report did not present additional burden to the Court hearing the bench trial, and (iii) the parties had the chance to depose the expert following the sur-rebuttal).

### 3.      The Movants Have Not Shown Prejudice

16.      As the authority cited by Movants makes clear, there is no basis to strike expert materials absent a showing of prejudice. *See La. Health Care Self Ins. Fund v. United States*, No. 12-766-JJB-RLB, 2014 U.S. Dist. LEXIS 101686, at *6  (M.D. La. July 25, 2014) (denying motion to strike sur-rebuttal where "Plaintiff has not indicated any prejudice that will result from allowing Defendant's sur-rebuttal."). Such proof is particularly difficult where, as here, the complaining parties had the opportunity to question the expert concerning the findings made in the report.  *Id*; *see also Am. Diabetes Ass'n v. Friskney Family Tr., LLC*, No. 13-3720, 2015 U.S. Dist. LEXIS

184214, at *7 (E.D. Pa. July 21, 2015) (noting that "the opportunity to depose [the expert] on his expert reports would cure any prejudice Plaintiff might incur" from an expert report served following the close of discovery).

17.     Here, the Movants note, Dr. Bates' supplemental report was served in advance of Dr. Bates' deposition, and Dr. Bates was questioned concerning its contents, including by the Movants.  (Mot. ¶¶ 22, 24).  Specifically, the FCR participated in the deposition and questioned Dr. Bates concerning all of his reports. *See* Bates Dep. Tr. 175-209.  Neither the Movants nor any other party objected to Dr. Bates' expert disclosures at the time they were made, or at any point until the Movants filed this Motion.  And no party sought to delay Dr. Bates' deposition upon receipt of his supplemental report.

18.     The only "prejudice" the Movants are able to identify is that Dr. Bates' substantive conclusions concerning valuation impact the Movants' position in litigation and mediation.  (Mot. ¶¶ 41-42).  Notably, a number of other expert reports that were served, amended, or supplemented past the original deadline, but the only opinions that the Movants seek to strike are those with which they disagree.  Disagreement with the substance of an opinion is not prejudice.  The substance has nothing to do with the timing, particularly where, as here, the complaining party deposes the expert as to the opinion. The Movants' factual disagreements with Dr. Bates are premature and incorrect, as Dr. Bates will explain at confirmation.

**B.     There is no Basis to Grant the Movants a Rebuttal to Dr. Bates' Reports**

19.     The Movants alternatively request leave to serve a rebuttal to Dr. Bates' opinions.  The Movants had every opportunity to serve an expert report of their own concerning valuation of the Abuse Claims or rebutting Dr. Bates' opinions.  The fact that Dr. Bates corrected certain data in his analysis and refined his conclusion to conclude that the lowest quartile of his original

valuation range was "most likely" does not justify a belated rebuttal by the Movants now. Moreover, if the Movants wanted a rebuttal to Dr. Bates, they could have appended it to their Motion or otherwise delivered one by now.  Indeed, the Movants say that they have retained an expert, and note that their expert "has performed [work] for the FCR to date" and could quickly generate a rebuttal report. (Mot. ¶ 46)  Instead of serving this report, so that the other parties could examine it and take discovery, the Movants waited until the eve of confirmation to seek to disclose their analysis.   The debtors submit that Movants' alternative request to serve a rebuttal should be denied.

## <u>CONCLUSION</u>

The Debtors respectfully request that the Court (i) deny the Motion and (ii) grant such other and further relief as the Court deems just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated: March 3, 2022
       Wilmington, Delaware

/s/ Derek C. Abbott
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek Abbott (No. 3376)
Andrew Remming (No. 5120)
Paige Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 351-9314
Email: dabbott@morrisnichols.com
        aremming@morrisnichols.com
        ptopper@morrisnichols.com

WHITE & CASE LLP
Glenn M. Kurtz (admitted *pro hac vice*)
Jessica Lauria (admitted *pro hac vice*)
Andrew Hammond (admitted *pro hac vice*)
Samuel P. Hershey (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: gkurtz@whitecase.com
        jessica.lauria@whitecase.com
        ahammond@whitecase.com
        sam.hershey@whitecase.com

– and –

WHITE & CASE LLP
Michael Andolina (admitted *pro hac vice*)
Matthew Linder (admitted *pro hac vice*)
Laura Baccash (admitted *pro hac vice*)
Blair Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: mandolina@whitecase.com
        mlinder@whitecase.com
        laura.baccash@whitecase.com
        blair.warner@whitecase.com

*Counsel to the Debtors and Debtors in Possession*