# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* <br><br> BOY SCOUTS OF AMERICA and DELAWARE BSA, LLC,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 20-10343 (LSS) <br><br> Jointly Administered <br><br> Hearing Date: March 14, 2022 at 10:00 a.m. (ET) <br><br> **RE: Docket Nos.:  8981, 9015, and 9021.** |

### TORT CLAIMANTS' COMMITTEE'S (I) STATEMENT REGARDING PROPOSED CORRECTIONS TO SETTLEMENT TRUST AGREEMENT AND (II) REPLY TO CONFIRMATION OBJECTIONS TO THE THIRD MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC

The official committee of survivors of childhood sexual abuse (the "Tort Claimants' Committee") hereby files this statement regarding proposed correction to the Settlement Trust Agreement that were the subject of the *Notice of Supplement to Disclosures Regarding Settlement Trustee in Connection with the Debtors' Third Modified Fifth Amended Chapter 11 Plan of Reorganization* [Docket No. 8981] and reply to the *United States Trustee's Objection to Confirmation of the Third Modified Fifth Amended Chapter 11 Plan of Reorganization* [Docket No. 9015] (the "UST Objection") and *Limited Objection of Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. to Exculpation of Pachulski Stang Ziehl & Jones in the Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 9021] (the "Eisenberg Rothweiler Objection"), to the *Third Modified*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

1

*Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 8813] (the "Plan")[2] proposed by the Boy Scouts of America (the "BSA") and its affiliate Delaware BSA, LLC (together with the BSA, the "Debtors"). In support of this Reply, the Tort Claimants' Committee respectfully represents as follows:

1.      As the Court is aware, thousands of pages of objections and responses to those objections have been filed in connection with confirmation of the proposed Plan regarding numerous key issues raised by the Certain Insurers and other objecting parties. The Tort Claimants' Committee, as an estate fiduciary, has been collaborating and working constructively with the other "survivor side" Plan supporters, including Pfau/Zalkin, the Future Claimants' Representative, and the Coalition regarding responses to objections to the Plan. Rather than burden the Court with duplicative arguments and pleadings, the Tort Claimants' Committee has focused this pleading on proposed corrections to the Settlement Trust Agreement and replying to issues that are somewhat unique to the Tort Claimants' Committee. The Tort Claimants' Committee intends to join in all or some portion of the replies filed by the other survivor representatives that are supporting the Plan. Pursuant to the global settlement, the Tort Claimants' Committee supports confirmation of the Plan, subject to confirmation of the Plan as modified by the settlement.

A.    **Settlement Trust Agreement Dispute Resolution Procedures**

2.      The executed Tort Claimants' Committee Settlement Term Sheet (the "TCC Term Sheet") memorializes the terms of the global settlement. *See* Eleventh Mediator's Report

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the Plan.

[Docket No. 8772], Ex. A.  Among other provisions, the TCC Term Sheet provides: (a) "There will be one Settlement Trustee and two Claims Administrators." and (b) "The proposed members of the STAC and the FCR will interview all proposed Settlement Trustee and Claims Administrator candidates. The Settlement Trustee and Claims Administrators will be selected only if approved by at least five (5) members of the STAC and with the reasonable consent of the FCR." TCC Term Sheet at 11. These provisions are memorialized in Articles 4 and 5 of the BSA Settlement Trust Agreement attached as Exhibit B to the Plan.

3.  As the Court is aware, the proposed members of the STAC were not able to select a proposed Settlement Trustee because neither candidate had the support of at least five members of the proposed STAC. As a result of the impasse, on February 24, 2022, the Debtors filed a Supplemental Disclosure [Docket No. 8981] designating the Honorable Barbara Houser (Ret.) as the proposed Settlement Trustee under the Plan.

4.  In an effort to avoid any further deadlocks in the administration of the Settlement Trust, the Tort Claimants' Committee proposes that the Settlement Trust Agreement should be amended to include a dispute resolution mechanism for decisions that, in the event of a lack of supermajority STAC consent, would be crippling to the Settlement Trust. A corrective change to the Settlement Trust Agreement is critical to the effective administration of the Settlement Trust.

5.  If the Settlement Trustee is not able to obtain the necessary super-majority consent from five of the seven STAC members with respect to:  (a) Section 4.1(a) (Selection of Successor Claims Administrators); (b) Section 4.1(b) (Selection of Neutrals); (c) Section 4.7 (Selection of Claims Administrators' Professionals); (d) Section 5.15(c) (Successor and

Employment Matters); (e) Section 5.16(a) (Employment of Trustee's Professionals); and (f) Section 5.16(b) Employment of STAC Professionals),[3] the Settlement Trustee may nonetheless proceed with the proposed course of action after notice and hearing and obtaining authorization from the Court.

6. While the Settlement Trustee will benefit from consultation with the STAC members regarding the above enumerated matters, the Settlement Trustee and her administration of the Settlement Trust should not be hampered by the inability of the STAC members to reach a consensus on a super-majority basis.

**B. The United States Trustee's Objection**

7. Article V.S.7 of the Plan resolves (the "PSZJ Settlement") the Debtors' allegations that their investigation of the impact of the Kosnoff communication forwarded by Pachulski Stang Ziehl & Jones LLP ("PSZJ") caused the estate to expend fees and costs that would not have been incurred but for the distribution of that communication. By the UST Objection, the U.S. Trustee wants to insure that the PSZJ Settlement does not foreclose the rights of the U.S. Trustee or other parties from objecting to any of PSZJ's interim or final fee applications. PSZJ acknowledges that the PSZJ Settlement does not foreclose the rights of the U.S. Trustee or other parties who are not parties to the global settlement embodied in the Plan from making such objections.

8. PSZJ agrees that the proposed confirmation order be revised to reflect this clarification.

---

[3] With respect to Section 5.16(b), if the super-majority of the STAC cannot agree, a majority of the STAC should be able to seek court authorization as opposed to the Settlement Trustee.

4

C. **Eisenberg Rothweiler Objection**

9. The Eisenberg Rothweiler Objection contends that the PSZJ Settlement should be removed from the Plan because: (a) it was not part of the executed TCC Term Sheet, (b) PSZJ was representing its own interests in contravention of section 1103(b) of the Bankruptcy Code, and (c) the exculpation provisions in the Plan that now includes PSZJ on account of the PSZJ Settlement are not proposed in good faith under section 1129(a)(3) of the Bankruptcy Code. The Eisenberg Rothweiler Objection is misguided and lacks merit for the following reasons and should be overruled.

10. The United States Court of Appeal for the Third Circuit has held that "a creditors' committee, its members, and estate professionals may be exculpated under a plan for their actions in the bankruptcy case except for willful misconduct or gross negligence. *In re Washington Mutual, Inc.*, 442 B.R. 314, 350 (Bankr. D. Del. 2011) (citing *In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000)). Exculpations should be limited to fiduciaries who have served during the chapter 11 case, which include professionals, committees, and their members. *Id.* at 350-51. As discussed below, there is no evidence to suggest that PSZJ, as counsel to the Tort Claimants' Committee, should not be among the parties protected by the exculpation provision under the Plan.

11. First, PSZJ, as counsel to the Tort Claimants' Committee, negotiated the global resolution memorialized in the Plan without regard to the PSZJ Settlement. The Eisenberg Rothweiler Objection is correct that the terms of the PSZJ Settlement are not part of the TCC Term Sheet. No term in the TCC Term Sheet was conditioned on or relates to the relief the

Debtors are seeking by way of the PSZJ Settlement. PSZJ's primary and only interest when negotiating the TCC Term Sheet was its client, the Tort Claimants' Committee, and the constituency it represents.

12. The Tort Claimants' Committee had three primary goals: (a) meaningful youth protection measures; (b) a well-balanced and independent Settlement Trust, and (c) a pathway to reasonable monetary contributions to the Plan. Each of the foregoing was achieved prior to and without regard to the PSZJ Settlement. Importantly, the latter two goals involved extensive mediation with the Coalition, which included Eisenberg Rothweiler and Mr. Rothweiler.

13. Second, the changes to the Plan that included the PSZJ Settlement were made known to Eisenberg Rothweiler and Mr. Rothweiler as they are part of the Coalition whose counsel (Brown Rudnick) took on a prominent and active role in the final documentation of the Plan that was filed in the early morning hours of February 15, 2022. The Plan was finalized and filed with the full knowledge and consent of all the potentially affected parties, including Eisenberg Rothweiler.

14. Third, extensive discovery was taken after the transmission of the Kosnoff communication. Initially, there were four depositions taken of PSZJ where both the Coalition's bankruptcy counsel (Brown Rudnick) and Eisenberg Rothweiler's counsel (Hogan McDaniel) were present and asked questions. Subsequently, the Debtors took the depositions of numerous law firms that represented survivors who each overwhelmingly voted to reject the prior version of the plan. The Debtors' discovery failed to evince any confusion as a result of the transmission of the Kosnoff communication nor did it affect the outcome of the vote. For example:

> Q. We were talking previously about the Kosnoff email and attached letter that was sent by the TCC. Do you have any view as to the impact on the vote that was caused by that communication? … A. Yes. Q. What is your view? A. I don't believe it had a material impact on the vote. Q. What do you define as a "material impact"? A. I don't think it had any impact on the vote.

Transcript of the Testimony of Jason Amala, January 19, 2022 at 128:25-129:15.

> Q. Are you aware if any impact on the voting process - - A. No. Q. - - - of the Kosnoff communications? A. No. I mean, I can only speak for my clients. But I'm not aware of any clients who has communicated to my office that they got it. I have no reason to think anyone did get it.

Transcript of the Testimony of Adam Horowitz, January 27, 2022 at 100:5-14.

> Q. Are you aware of anyone changing their vote in response to this e-mail? …. A. No, that -- I'm not aware of that. I think that's -- I mean, my opinion is that that would be silliness, but I don't know.")

Transcript of the Testimony of Jennifer Laikos, February 2, 2022 at 91:7-20.

> Q. Are you aware of any impact the Kosnoff communications have had on the voting process? … A. No.

Transcript of the Testimony of Nicolas DiCarlo, February 2, 2022 at 105:20-24.

> Q. And is your testimony that you weren't concerned that the official committee in this bankruptcy case was communicating with your clients directly on behalf of Mr. Kosnoff? A. Well, it clearly to me was a mistake and one that had not particularly aggrieved or confused any of my clients once I was able to get in touch with them.· So, it sort of became a nonissue.· I wasn't ecstatic at the mistake, but it didn't really negatively impact my clients.

Transcript of Evan Smola, February 5, 2022 at 62: 4-15.

15. As reflected by the answers at those depositions, the Debtors did not uncover any evidence to support a finding that the transmission of the Kosnoff communication adversely affected the solicitation of votes.

7

16. The Debtors also took the deposition of the Tort Claimants' Committee regarding a variety of voting issues that again included questions regarding the transmission of the Kosnoff communication. Finally, the Tort Claimants' Committee took the deposition of the Debtors and the Debtors' voting agent regarding a variety of voting issues, which also included the effect, if any, that the transmission of the Kosnoff communication may have had on voting. Again, those depositions showed that the Debtors' voting agent received no more than five questions from survivors or counsel regarding the Kosnoff communication that it forwarded to Debtors' counsel to address but nothing indicating that it caused any adverse effects on the final outcome of the vote.

17. The TCC Term Sheet and the PSZJ Settlement are separate agreements that were reached independently. As a result, there is no reason the PSZJ Settlement should have been included in the TCC Term Sheet. In the end, Eisenberg Rothweiler and Mr. Rothweiler are attempting to take advantage of the TCC Term Sheet's silence with respect to the PSZJ Settlement when they were fully aware of the separate agreement that PSZJ reached with the Debtors and consented to its inclusion into the Plan prior to its filing with the Court on February 15, 2022.

18. The Plan's incorporation of the PSZJ Settlement is permitted by section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019. Compromises are favored in bankruptcy because they minimize the costs of litigation and further the parties' interests in expediting administration of a bankruptcy estate.[4] In deciding whether to approve a compromise

---

[4] *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

under Bankruptcy Rule 9019, the Bankruptcy Court must determine if the settlement is fair, reasonable, and in the interests of the estate.[5]

19. The Supreme Court has recognized that "in administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims in which there are substantial and reasonable doubts." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (applying the former Bankruptcy Act).

20. In determining the fairness of a proposed compromise, the court should:

> form an educated estimate of the complexity, expense and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of the litigation.

*Protective Comm.*, 390 U.S. at 414, 424-25.

21. The Third Circuit, applying *Protective Committee* in the context of a settlement pursuant to Bankruptcy Rule 9019(a), has set forth four factors to be considered:

(i) the probability of success in litigation;

(ii) the likely difficulties of collection;

(iii) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and

(iv) the paramount interest of the creditors.

---

[5] *See, e.g., In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) (citation omitted)).

*Martin*, 91 F. 3d at 393; *see also In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (when applying Bankruptcy Rule 9019(a), whether a court should approve a settlement depends on several factors, including the probability of success in the litigation, the complexity of the of the litigation, the attendant expense and delay, and the interests of the creditors); *In re Geller*, 74 B.R. 685, 688 (Bankr. E.D. Pa. 1987) (generally, a settlement will be approved as long as it clears a threshold of reasonableness); *Official Unsecured Creditors' Committee v. Pennsylvania Truck Lines, Inc. (In re Pennsylvania Truck Lines, Inc.)*, 150 B.R. 595, 598 (E.D. Pa. 1992), aff'd without opinion, 8 F. 3d 812 (3d Cir. 1993) (settlement must not fall below the lowest level in the range of reasonableness).

22. Other courts have held that approval of a compromise is within the "sound discretion" of the bankruptcy court. *Jeffrey v. Desmond*, 70 F. 3d 183, 185 (1st Cir. 1995). The bankruptcy court must determine whether the proposed compromise and the settlement are in the "best interests of the estate." *See In the Matter of Energy Cooperative, Inc.*, 886 F. 2d 921, 927 (7th Cir. 1989). The bankruptcy court should not substitute its judgment for that of a trustee or debtor in possession. *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F. 2d 1303, 1311 (5th Cir. 1985); *In re Curlew Valley Assocs.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). The bankruptcy court is not to decide the numerous questions of law or fact raised in the litigation, but rather should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness. *See In re Penn Trans. Co.*, 596 F. 2d 1102, 1114 (3d Cir. 1979); *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F. 2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 822 (1983).

DOCS_SF:107046.3 85353/002

23. To the extent applicable, approval of a settlement that involves property of the estate should also constitute a reasonable exercise of the debtor's business judgment under Bankruptcy Code section 363(b). This provision states that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In interpreting this provision, courts have held that a transaction involving property of the estate generally should be approved so long as the trustee can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business." *In re Continental Airlines, Inc.*, 780 F. 2d 1223, 1226 (5th Cir. 1986); *accord In re Lionel Corp.*, 722 F. 2d 1063, 1071 (2nd Cir. 1983).

24. Under any applicable standard, the PSZJ Settlement should be approved. The results of the Debtors' or other parties' efforts to correlate PSZJ's forwarding of the Kosnoff communication with widespread voter confusion and a material increase in the costs of administering the bankruptcy estates are uncertain at best, especially in light of testimony to date of the Debtors' balloting agent and counsel that directly contradicts any suggestion that voters suffered from widespread confusion. For example, OMNI's representative testified that OMNI provided no more than five (5) emails to Debtors' counsel indicating confusion potentially attributable to the Kosnoff communication, and the Debtors do not have any understanding as to whether any survivors other than Kosnoff clients voted to reject confirmation of the Plan because of the Kosnoff communication.[6] Any determination that PSZJ's involvement in the Kosnoff communication resulted in a quantifiable harm to the estate would require the time-

---

[6] Transcript of the Testimony of Catherine Nownes-Whitaker, January 20, 2022, at 115:7-18; Transcript of the Testimony of Laura Baccash, January 21, 2022, at 113:5-14.

consuming adjudication and resolution of complex factual issues regarding causation and correlation. The PSZJ Settlement requires PSZJ to make a significant cash contribution to BSA's Youth Protection Program and waive a substantial amount of its fees. This proposed resolution is in the best interests of survivors, who have expressed the steadfast concern that the Debtors should implement more robust youth protection measures: the amount funded by PSZJ will help fund and ensure just that.

**D.    Conclusion**

25.    For the foregoing reasons, the Court should overrule the objections to the extent they are not otherwise resolved by this Reply. The Tort Claimants' Committee reserves the right to file a further reply in response to objections to the Plan.

Dated:  March 2, 2022            PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Richard M. Pachulski (CA Bar No. 90073) (admitted pro hac vice)
Alan J. Kornfeld (CA Bar No. 130063) (admitted pro hac vice)
Debra I. Grassgreen (CA Bar No. 169978) (admitted pro hac vice)
James E. O'Neill (DE Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tele/Fax: (302) 652-4100 / (302) 652-4400
Email:  rpachulski@pszjlaw.com
          akornfeld@pszjlaw.com
          dgrassgreen@pszjlaw.com
          joneill@pszjlaw.com

*Counsel for the Tort Claimants' Committee*