1

<pre>
 1                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE
 2
                                  .    Chapter 11
 3    IN RE:                      .
                                  .    Case No. 20-10343 (LSS)
 4    BOY SCOUTS OF AMERICA AND   .
      DELAWARE BSA, LLC,          .
 5                                .
                                  .    Courtroom No. 2
 6                                .    824 North Market Street
                                  .    Wilmington, Delaware 19801
 7                                .
                       Debtors.   .    Tuesday, March 8, 2022
 8    . . . . . . . . . . . . . . . .  10:00 A.M.

 9                 TRANSCRIPT OF PRETRIAL CONFERENCE
            BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
10                  UNITED STATES BANKRUPTCY JUDGE

11    APPEARANCES:

12    For the Debtor:        Derek Abbott, Esquire
                             MORRIS, NICHOLS, ARSHT & TUNNELL LLP
13                           1201 North Market Street, 16th Floor
                             Wilmington, Delaware 19899
14
                             - and -
15
                             Jessica C. Lauria, Esquire
16                           Glenn Kurtz, Esquire
                             WHITE & CASE LLP
17                           1221 Avenue of the Americas
                             New York, New York 10020
18

19
      Audio Operator:        Brandon J. McCarthy
20
      Transcription Company: Reliable
21                           1007 N. Orange Street
                             Wilmington, Delaware 19801
22                           (302)654-8080
                             Email:  gmatthews@reliable-co.com
23

24    Proceedings recorded by electronic sound recording; transcript
      produced by transcription service.
25
</pre>

1  APPEARANCES (Cont'd):

2  For AIG Companies:        James Hallowell, Esquire
                            Mitchell Karlan, Esquire
3                           GIBSON DUNN & CRUTCHER LLP
                            200 Park Avenue
4                           New York, New York 10166

5
   For the U.S. Trustee:     David Buchbinder, Esquire
6                           UNITED STATES DEPARTMENT OF JUSTICE
                            OFFICE OF THE UNITED STATES TRUSTEE
7                           844 King Street, Suite 2207
                            Lockbox 35
8                           Wilmington, Delaware 19801

9
   For Jane Doe:             Mark Desgrosseilliers, Esquire
10                          CHIPMAN BROWN CICERO & COLE LLP
                            1313 North Market Street, Suite 5400
11                          Wilmington, Delaware 19801

12
   For the FCR:              Robert Brady, Esquire
13                          YOUNG CONAWAY STARGATT & TAYLOR LLP
                            Rodney Square
14                          1000 North King Street
                            Wilmington, Delaware 19801

15
   For the Roman Catholic    Neil Lloyd, Esquire
16 Ad Hoc Committee:         ARENTFOX SCHIFF LLP
                            233 South Wacker Drive, Suite 7100
17                          Chicago, Illinois 60606

18
   For Hartford:             Philip Anker, Esquire
19                          WILMERHALE
                            7 World Trade Center
20                          250 Greenwich Street
                            New York, New York 10007

21
   For Great American:       David Christian, Esquire
22                          DAVID CHRISTIAN ATTORNEYS LLC
                            105 W. Madison Street, Suite 1400
23                          Chicago, Illinois 60602

24

25

1  APPEARANCES (Cont'd):

2  For Munich Reinsurance    Thaddeus Weaver, Esquire
   America:                  DILWORTH PAXSON LLP
3                            704 North King Street
                             Wilmington, Delaware 19801
4

5  For Liberty Mutual:       Kim Marrkand, Esquire
                             MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
6                               & POPEO P.C.
                             One Financial Center
7                            Boston, Massachusetts 02111

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commence at 10:15 a.m.)

2          THE COURT:  Good morning.  This is Judge

3  Silverstein.  We're here in the Boy Scouts of America

4  bankruptcy; Case 20-10343.

5          Mr. Abbott.

6          MR. ABBOTT:  Good morning, Your Honor.  Derek

7  Abbott of Morris Nichols here for the debtors.

8          Your Honor, there were two items on the agenda.  I

9  believe the first has, effectively, been withdrawn/reserved

10  and that was Docket Item 8771.  I don't think there is

11  anything the court needs to do on that one as I understand it,

12  which would lead us right to the final pretrial conference

13  related to the confirmation hearing, Your Honor.  For that I

14  will cede the podium to Mr. Kurtz.

15          THE COURT:  Well let me ask this question before we

16  do that.  When did we know that there was nothing to do with

17  respect to the first matter?

18          MR. BRADY:  Your Honor, Robert Brady on behalf of

19  the FCR.

20          I think I can answer that.  It was when we saw the

21  debtor's response that we became comfortable that we could

22  proceed solely on the limited objection of the coalition and

23  FCR and withdrawal the motion to strike.  So that was filed on

24  Thursday, we huddled on Friday, and reached out to the debtors

25  and insurers over the weekend.

1      THE COURT:  Okay.  And this is Tuesday and nobody

2  told me.  So congratulations to everyone out there who decided

3  that this wasn't going forward, but nobody told me.  So I

4  spent my time on it.

5      Let's move on.

6      MR. BRADY:  We apologize for that, Your Honor.

7      MR. KURTZ:  Good morning, Your Honor.  Glenn Kurtz

8  on behalf of the debtors.

9      I will offer apologies as well.  I will tell you

10  that I spent my entire Sunday preparing for this motion as

11  well and I think that we did get the notice out yesterday.  So

12  hopefully it went out early enough yesterday.  I wasn't

13  positive of what would happen. I spent a little more time on

14  it yesterday, but I appreciate it would have been nice to have

15  that information a little bit earlier.

16      We are here, otherwise, on the pretrial, the last

17  pretrial conference.  I think there is not that much to

18  report.  There is something to discuss, I think.  We did get

19  in, you will recall, at the February 18th conference we talked

20  about what would be in a pretrial conference or a pretrial

21  order.  We committed to provide exhibit lists and witness

22  lists.  That has been done.

23      I think it was on March 2nd that Your Honor

24  indicated that the parties should put time, and effort, and

25  notice into the order of the witnesses.  We did that.  I will

1  come back.  I don't think other people did that, but our

2  witness list is in order subject, of course, to accommodations

3  if they are appropriate at the time based on witness schedules

4  or otherwise.

5          Most of our witnesses will be presented through

6  declaration which we hope to shorten the trial considerably.

7  I can't speak to crosses, but most of our affirmative case

8  will go in by declaration.

9          THE COURT:  I haven't seen anything, okay. I'm not

10 sure what and when things were filed, but I have seen nothing.

11 There was supposed to be a pretrial order or pretrial

12 stipulations by noon yesterday and I didn't get that.

13         MR. KURTZ:  I know that those witness lists, when I

14 saw them circulating, it was considerably afternoon maybe even

15 sometimes in the wee hours.  I assumed it had been filed and

16 we will make sure that they get to Your Honor right away for

17 those that are listening and have access to those lists.

18         THE COURT:  What attempt was there made to

19 coordinate and have one filing that gives me all the

20 witnesses, all the exhibits, and a status on each exhibit and

21 whether it's been stipulated to or not?

22         MR. KURTZ:  Well we had been trying to get at

23 stipulations which was the next subject I was going to raise.

24 We can assemble it in one, but everybody got their materials

25 in, sort of, late, I think, on the exhibits.  We have had

1  quite a back and forth over time as to what the timing would

2  be on that.  We have not reached an agreement on it when

3  people will object.  We haven't been able to get any

4  commitments on when there is going to be objections and so we

5  will continue to try to work through that.

6        It had been our hope and our proposal that all the

7  exhibits would be introduced at the start of the trial and any

8  objections that people had would be addressed as a preliminary

9  matter.  That has been rejected and so as a consequence of

10 that I think it's going to, sort of, you know, go witness by

11 witness.

12        THE COURT:  How many exhibits does the debtor have?

13        MR. KURTZ:  It's a very large number of exhibits. I

14 don't have it handy, but it includes large compilation

15 exhibits, things like proof of claims.  There is almost 82,000

16 proof of claims, that is one large compilation exhibit.  There

17 is tranche data that supports the expert reports, that is,

18 likewise, a big compilation exhibit.  We have a lot of what

19 has been already introduced throughout this case and so there

20 is quite a few exhibits.

21        I think, though, to make life easier on Your Honor

22 our intention is to annex only those exhibits that will be

23 relied on by particular witnesses with declarations so that is

24 not an exercise of searching the record for exhibits.  Some of

25 them just have to go in as an evidentiary foundation for

1  opinions and the like, but I think, Your Honor, when it comes

2  to what you will be hearing about it will be attached to

3  declarations or within a binder for a witness that goes live

4  and should be pretty easy to work with.

5          THE COURT:  Okay.  Well I have said this before and

6  I will say it in this trial, I am not going to look at

7  exhibits that are not referenced to me, specifically

8  referenced to me as part of a witness or part of an argument.

9  So don't expect that I will.

10          MR. KURTZ:  Understood, Your Honor.  That is pretty

11  consistent with, I think, what we expect and what we see in

12  all trials.  So there is some record of things that we don't

13  think will be contested.  As I mentioned, there will be a

14  record on things that we believe are required as

15  (indiscernible) support for our opinions, but won't need to be

16  evaluated separately.  We will keep Your Honor's guidance in

17  mind.

18          We spoke on February 18th about what a pretrial

19  order would have and I mentioned at the time I thought there

20  was an agreement that would have -- by the way, we did --

21  there is no requirement.  We eliminated a pretrial order from

22  the schedule.  We just went with exhibit lists and exhibits.

23          What we -- what I committed to do was to try to

24  come up with, at least, some stipulations. We didn't think

25  contentions made sense and things like that in light of the

1   extensive briefing.  I mentioned at the time I wasn't overly

2   optimistic about the ability to achieve stipulations.  I can

3   report that as of now we don't have any.  We have suggested

4   that we get stipulations on anything and everything we can in

5   terms of what we proposed as orders, findings -- excuse me,

6   findings in the confirmation order in order to narrow the

7   issues and to take issues off your plate, Your Honor.

8          We haven't gotten any, not even the rote matters or

9   the background matters as of yet.  We were told that the

10  objectors thought we should ask for less.  We don't think that

11  is appropriate.  We think we are going to prove everything in

12  the confirmation order and that we should know what they are

13  contesting.  Only they can say what they will agree to and

14  what they are contesting.  So we are hoping that they will

15  rethink that and we can come back with some stipulations.  If

16  not we will move forward on proving all the findings that

17  we're asking Your Honor to make.

18          We did have more success with plan proponents.  In

19  addition to withdrawing the motion to strike they have also

20  withdrawn their rebuttal witness with respect to Dr. Bates

21  which we think eliminates or, at least, really substantially

22  reduces the contest on the mechanism for payments

23  substantially in full which we think is progress and will

24  shorten the trial.

25          We learned on Sunday that what the objectors were

1  doing instead of maybe working on stipulations that we had

2  told the court that we would try to achieve, instead a

3  pretrial order that was not provided for in the confirmation

4  schedule and that is, we think, totally inappropriate.  They

5  put this together unilaterally.  They didn't consult us on it,

6  on any of its content.

7           We received it on Sunday and it was filed less than

8  24 hours later.  We don't think it's appropriate.  It

9  addresses a number of issues that are not ripe, that haven't

10 been discussed, that aren't appropriate in our minds for a

11 pretrial order especially when we agreed we wouldn't be having

12 one and just to offer comments somewhat randomly on what is in

13 there.

14          Well, first, as they gave themselves two extra days

15 to apprise us and the court on the order of their witnesses.

16 We have the date of the 7th for the exchange of witnesses.  We

17 understood from conversations with Your Honor it should

18 address the order.  Certainly there is nothing about the

19 debtor's order that would impact the objectors order whether

20 our witness -- any given witness goes early, middle or late

21 they're done.  So we know the objectors know what they are

22 doing.  For some reason they chose to give us an alphabetical

23 list and propose that an order that they would put there is on

24 the 9th.

25          They provided that the debtors would prepare the

1 objectors' exhibits and submit them to the court.  That is

2 inappropriate.  It is not an expense that the estate should

3 bear.  The objectors should put together their own exhibits

4 and make submissions in any way they think is appropriate.

5       The insurers' unilaterally decided when certain

6 exhibits can be offered and that is only, in this case, at the

7 conclusion of the case in chief which we think makes no sense

8 and is not a matter that will be addressed in pretrial order

9 or to be addressed unilaterally by the objectors.  The

10 objectors' order provides that witnesses can only take the

11 stand once.

12       We have setup, as an orderly presentation of

13 evidence, to have Brian Whittman testify earlier in the case

14 as a fact witness and then come back later in the case as an

15 expert on feasibility.  The objectors have no right to impact

16 the way the debtors put on their case.  I have never even

17 heard of such a provision.

18       The objectors provided for rebuttal witnesses which

19 may make sense or may not make sense depending upon it may be

20 allowed or not, depending upon what happens at the trail.

21 It's premature.  The objectors' order makes determinations as

22 to when a witness is unavailable without context or need.

23 That is a legal matter that should be addressed when and if it

24 comes up.  It contains a statement about burdens of proof

25 which is a substantive matter not a pretrial order matter.

1          There is a provision that the pretrial order

2   "controls" the subsequent course of the action unless it's

3   modified. It's this court that will control the way this

4   action proceeds.  The order unilaterally determined the amount

5   of closing time, the order of closing time, the allocation of

6   closing time.  It's something that we intend to seek guidance

7   from Your Honor on at an appropriate time, presumably after

8   we've had an opportunity to present evidence.

9          Your Honor will have heard witness after witness

10   and seen a substantial number of documents and will

11   doubtlessly have some view about what you want to hear about

12   and when you want to hear about it and how much time you're

13   going to allow us on it.  I don't think a unilateral dictation

14   by the objectors makes any sense.

15          So, in short, we think that these are not

16   appropriate matters for a pretrial order at all.  It certainly

17   wasn't appropriate to have this done unilaterally without

18   consultation and it is particular so in light of the fact that

19   we removed the provision for a pretrial order and our view is

20   that Your Honor should address these issues as they come up

21   and if they come up during the course of the trial.

22          THE COURT:  Okay.  Well I haven't seen the pretrial

23   order either that was submitted or the proposed pretrial order

24   either. It wasn't sent over to my knowledge.  So I basically

25   have nothing in front of me today for this hearing.

1          Mr. Desgrosseilliers.

2          MR. DESGROSSEILLIERS:  Your Honor, Mark

3    Desgrosseilliers on behalf of the Jane Doe, one of the

4    survivors of the abuse in this case.

5          Your Honor, I just wanted -- Your Honor asked a

6    couple of questions and I wanted to answer them from the

7    perspective of one of the objectors, but to be clear, Your

8    Honor, we are not including it in the definition that the

9    debtor's (indiscernible) objectors.  Although we have

10   attempted to get the debtors to agree to stipulated facts and,

11   in fact, sent 30 stipulated facts with respect to our limited

12   objector, my client's limited objection.  Indeed, we have not

13   reached agreement.  In fact, I just got a response today that

14   we will talk about it this afternoon.

15         With respect to coordination Your Honor asked there

16   have been, I would say, from the view of one objector

17   representing one client no attempt to coordinate in a

18   meaningful way with all of the objecting parties as oppose to,

19   what I will refer to as, major objecting parties, Your Honor.

20   So I can say that I feel a bit left in the dark.  I think

21   there may be others on the call that feel the same.  And so

22   the court is expressing its frustrations.  Those frustrations

23   are shared by the objecting parties that are not the objecting

24   insurance company.

25         So, Your Honor, I would say that I have sent

1  proposed stipulated facts that will certainly help to

2  streamline my client's more limited objection. It's an

3  "objection" but certainly not as broad as some of the

4  insurers.  And I can tell Your Honor that this process has

5  been far from smooth.

6          We have not filed our exhibit list because,

7  frankly, we need stipulated facts in the exhibits that I need.

8  It's pretty straight-forward and I was surprised that they

9  weren't agreed to and didn't find out until late yesterday

10  afternoon.

11          So in an abundance of caution unfortunately we will

12  file another exhibit list today which I think could have been

13  avoided, but Your Honor asked those questions. I wanted to

14  explain it from the perspective of one claimant trying to deal

15  with this mass of proposed evidence and thousands of

16  documents, culling through millions of pages of

17  (indiscernible).  I think it is not in due process, to say the

18  least, (indiscernible) share that view.

19          Happy to answer any questions, Your Honor, but this

20  is not a helpful process.

21          THE COURT:  Thank you, Mr. Desgrosseilliers.

22          Mr. Anker.

23          MR. ANKER:  Sorry.  My apologies, Your Honor.

24          Your Honor, I only raised my hand because I wanted

25  to -- I hear the court's frustration and I wanted to give the

1  court a head's up on an issue that I hope will not arise and

2  that is an issue I hope will not be raised with the court.

3         Last night or very late yesterday afternoon we

4  served with a witness list by the, what I will call, the Guam

5  Claimants, those represented -- I hope I'm pronouncing her

6  name correctly, Ms. Lujan Wolff.  Our co-counsel, Mr. Ruggeri,

7  was listed as a possible witness along with another potential

8  representative of Hartford.  I reached out to Ms. Lujan Wolff,

9  I don't think there is any need for any Hartford witness.  Our

10 agreement speaks for itself, but I'm happy to have a

11 conversation with her.

12        There certainly is no basis, I think, for Mr.

13 Ruggeri who is along with me lead counsel for Hartford in this

14 matter to testify. I am going to try to speak with Ms. Lujan

15 Wolff.  We have been trading emails on when we can have a meet

16 and confer, but I expect it will be later this afternoon

17 Delaware time, tomorrow Guam time.  I am hopeful that we can

18 resolve the matter, if not, Your Honor, and we do need to file

19 a motion whatever works for Your Honor.

20        I hear you loud and clear when you said people

21 should be taking issues off your plate not putting them on

22 your plate.  I pledge that we will do everything possible not

23 to have to raise this matter with the court, but I wanted to

24 give you a head's up so you weren't shocked and if we can't

25 reach agreement whatever would be most convenient for Your

1  Honor in terms of getting papers before you.  We will endeavor

2  to meet that schedule.

3          THE COURT:  Thank you.  Good luck with your

4  discussions with Ms. Lujan.

5          MR. ANKER:  Thank you, Your Honor.

6          THE COURT:  Mr. Lloyd.

7          MR. LLOYD:  Thank you, Your Honor.  Neil Lloyd on

8  behalf of Roman Catholic Ad Hoc Committee.

9          I just wanted to answer one question that Your

10  Honor posed without getting into too many details.  The list

11  that we received from the debtors very late on Wednesday the

12  2nd had 2,366 exhibits on it.  The list that we received from

13  the debtor early this morning had 1,604 exhibits on it.  I

14  understand the debtor's position that they think the trial

15  would go more efficiently if we could agree before witnesses

16  were called to the admissibility of exhibits.

17          Over the weekend we proposed that the debtors cull

18  down their list to 500 so that we could then on a rolling

19  basis attempt to go through and actually put eyes on all of

20  these exhibits and thereby on a rolling basis try to have

21  exhibits admitted.  The debtors considered the proposal, they

22  declined the proposal; that was their choice.

23          Where we are right now, Your Honor, if we spent

24  five minutes, just five minutes to go through the 1,604

25  exhibits that are on the list that would be 134 hours of

1  attorney time just to look at them and make a determination

2  about whether they're relevant and non-cumulative.  I think

3  that is an unreasonable ask and that is why we're in the

4  position that we're in, but the debtors are going to have to

5  (indiscernible).

6          Thank you, Your Honor.

7          THE COURT:  Thank you.

8          Mr. Hallowell.

9          MR. HALLOWELL:  Thank you, Your Honor.  Jim

10 Hallowell, Gibson Dunn & Crutcher, for the AIG Companies and

11 on behalf of certain insurers.

12         We have been working to engage with the debtor on

13 the exhibit list issue.  We made proposals to them last week

14 and the week before and they did not engage with us.  We

15 exchanged preliminary witness exhibit lists on the 2nd, on

16 Wednesday night, and as Mr. Lloyd reported what we got back

17 from the debtors were several thousand exhibits.  We have

18 worked to go through those exhibits to see what we can agree

19 to and what we can't agree to.

20         We met with the debtors over the weekend and the

21 lists expanded.  The debtors filed their exhibit list with

22 Your Honor at approximately 2:30 this morning, 2:30 a.m.  Mr.

23 Lloyd reports, and I think it's accurate, that the list

24 contains approximately 1,600 exhibits.  I didn't count its 66

25 pages long.

1           The debtor's exhibit list also includes broad

2    categories of additional documents including any proof of

3    claim filed in these Chapter 11 cases, any ballot, master

4    ballot or related materials, complaints, decisions, and other

5    court documents in connection with the debtor's historical

6    settlements, the debtors and local councils debt documents and

7    financial statements, the debtors and local councils formation

8    and organizational documents.

9           Your Honor, this is hundreds and hundreds of

10   thousands of documents.  We need some organization with regard

11   to the exhibits or the trial is not going to be able to move

12   forward.  We're all just going to be paralyzed.  And candidly,

13   Your Honor, we have not been able to get any cooperation from

14   the debtors with this.

15          We have proposed, for instance, that they let us

16   know now which exhibits they intend to use with their first,

17   let's call it, four, five, six witnesses.  That may be a way

18   that we can get through some of these lists and advance the

19   ball.  Right now we absolutely cannot and it's going to

20   paralyze things.

21          I do not know how we're going to present documents

22   to Your Honor to follow along with witness testimony so that

23   it can be sensible, so that you can understand what is

24   happening because even if we stick with, Your Honor, 1,600

25   documents from the debtors that is going to be, you know, 150

1  binders.  You're not going to be able -- none of us are going

2  to be able to cull through 150 binders on a witness by witness

3  basis as we try to figure out what a witness is saying.

4           So we need some other approach to organize this

5  trial and right now from an exhibit standpoint it is

6  completely disorganized and it is not the fault of the

7  insurers.

8           Your Honor, I want to talk about witnesses a little

9  bit.  We did receive --

10          THE COURT:  Mr. Hallowell, how many exhibits do the

11 certain insurers have?

12          MR. HALLOWELL:  We proposed approximately 400.

13 When we haven't been able to get any engagement from the

14 debtors we have had to expand our list.  We submitted a list

15 last night that has approximately 1,500, but we are happy to

16 work with the debtors to bring the list down and to get

17 something coherent.

18          THE COURT:  Are any of the exhibits duplicative of

19 what the debtors have listed?

20          MR. HALLOWELL:  I assume so, Your Honor, and that

21 is exactly the kind of process that the parties need to engage

22 in to attempt to come up with what are the actual exhibits in

23 this case.  We haven't had any engagement on this process.

24          THE COURT:  Don't you guys have paralegals?

25          MR. HALLOWELL:  We have people working through the

1   witness lists or the exhibit lists, but we need people on the

2   other side to do the same thing so that we can coordinate and

3   we haven't had it. It went from 2,500 on the 2nd to 82,000

4   plus over the weekend to 2:30 in the morning, 1,600 plus huge

5   categories that will bring it to hundreds of thousands of

6   documents.

7           THE COURT:  Okay.

8           MR. HALLOWELL:  So I want to talk about witness

9   lists as well.  We did receive a witness list from the debtors

10  very late last night.  I think it was filed at 11:56 p.m.  It

11  contains 19 names, it does contain an order as Mr. Kurtz said,

12  but it also -- he has also mentioned that witnesses are going

13  to proceed by declaration.  It contains no indication of who

14  is proceeding by declaration, who is proceeding by live

15  testimony or anything having to do with exhibits that might be

16  associated with those exhibits.

17          Listen, we've all been working hard.  We understand

18  that this is an expedited process, but we need -- if we're

19  going to advance on the 14th in a coherent way, we need

20  coordination on this process so that everybody knows who's

21  going to testify, in what manner are they going to testify,

22  what documents are going to be introduced with regard to the

23  testimony that they're providing, and how are we going to have

24  meaningful direct examination and cross-examination, and right

25  now, Your Honor, we don't have any of that.

1           We did submit a witness list, Your Honor.  One of

2    the things that we do want to talk about, Your Honor, is we do

3    have witnesses, we did list the witnesses that we expect to

4    testify live in alphabetical order, but we can provide an

5    order once we have some sense of where things are going.

6           We also have indicated, Your Honor, that we have

7    deposition designations.  Our belief is that we should be able

8    to submit the majority of those deposition designations to you

9    via transcript, but there are some depositions -- and we have

10   videotapes of the depositions -- there are some depositions

11   where we will want to present videotape of the depositions to

12   Your Honor.  We don't need to resolve that issue today, but I

13   want to flag that for you, and I believe that the deposition

14   designations have been submitted to the Court.

15          I want to address the proposed pretrial order, Your

16   Honor.  The pretrial order was submitted at approximately noon

17   yesterday to Your Honor, consistent with the Court's order

18   with regard to stipulations and the timing for that.  We did

19   share it with the debtors, we shared it on Sunday.  We asked

20   for input from them, we didn't get any.  They don't want to do

21   a pretrial and, if nobody wants to do a pretrial order, that's

22   fine, but we believe that a pretrial order will help to

23   streamline this case, it will help the parties to deal with

24   all of the issues that we included in our proposed pretrial,

25   including many of the things that Mr. Kurtz has flagged and

1    many of the things that I'm talking to you about right now,

2    including particularly the exhibit list.

3              And, Your Honor, I also want to mention this is, as

4    you know, a live, fast-moving case with lots of things going

5    at the same time.  We are still undertaking discovery and

6    that's because Your Honor granted our motion on Wednesday for

7    the production of documents from the Scouts and from the plan

8    proponents, they have produced those documents, but many of

9    those documents were not produced until last night.  That was

10   the agreed date for production.  We have to process those

11   documents.  We don't even know what a lot of them say yet.

12             There's still an additional deposition to be taken

13   with regard to all the changes to the plan that occurred on

14   February 14th, that deposition will have an effect on how the

15   trial goes forward, it will also have an effect on potential

16   exhibits.  We're talking about exhibits right now, but there's

17   documents we haven't even seen because they were just produced

18   that may well be exhibits in this case, Your Honor.

19             So, as we think about how to progress with this

20   case, getting it in an organized way, I do think it's

21   important to flag for Your Honor that there is still ongoing

22   and live discovery in this case.  And we're not the only ones,

23   Your Honor.  There's a deposition of Mr. Rothweiler that's

24   being taken later this week, that's being taken by the TCC, I

25   understand, not by any of the objectors.  And, Your Honor, we

1  have worked to take issues off of your plate.

2          So, for instance, as part of their settlement with

3  the TCC and while after that settlement, as you know, the BSA

4  designated a settlement trustee and proposed claims

5  administration.  After those designations were made, Your

6  Honor, it would only be prudent for the insurers to do their

7  diligence.  We filed deposition notices for the settlement

8  trustee and the claims administrator.

9          We also at the same time sought to do it in a more

10 efficient and cooperative way.  We drafted a questionnaire; we

11 sent that questionnaire over to the Scouts.  That

12 questionnaire was sent to the claims administrator and the

13 settlement trustee, they filled it out, gave us the

14 information that we needed.  And as a result, earlier this

15 week, Your Honor, we withdrew those deposition notices.

16          So all of us are working all the time on this case.

17 There are things happening that are completely outside of the

18 insurers' control.  And I'll remind everybody that the

19 schedule in this case is not the schedule that was chosen by

20 the insurers, but it's the schedule that we're working with.

21 And, Your Honor, we've done everything that we can, including

22 taking things off of your plate, while also being as

23 cooperative as we can, but we have not gotten the cooperation

24 we need with regard to exhibits, we simply haven't.  We

25 haven't gotten the cooperation that we need with respect to

1  witnesses, we simply haven't.  We got a list at 11:56 last

2  night, despite our requests prior to that for some informal

3  discussion with regard to witnesses.

4          And we're doing the best we can, but that's the

5  situation that we find ourselves in, Your Honor.

6          THE COURT:  Thank you.

7          Mr. Weaver?

8          MR. WEAVER:  Thank you, Your Honor.  Good morning,

9  Thaddeus Weaver on behalf of Nina Grey (ph).  I just wanted to

10  point out as a follow-up to Mr. Hallowell and to Mr. Lloyd in

11  connection with the 1,604 exhibits that have been designated

12  by the debtors, that 66-page document actually includes in

13  excess of 1604 documents.  Specifically, Your Honor, the first

14  19 pages contain Exhibits 1 through 13, but those first 19

15  pages have a series of sub-exhibits.  For example, you'd see

16  number 1-1 and then Exhibit 1-2.  So the actual number of

17  exhibits or discrete pieces of paper is well in excess of the

18  1604 documents.

19          But we received it, of course, late last night and,

20  you know, obviously, we're still looking through it.

21          Thank you, Your Honor.

22          THE COURT:  Thank you.

23          Mr. Kurtz.

24          MR. KURTZ:  Thank you, Your Honor.  I'll be brief.

25  I mean, on the exhibits, it really is -- in the first place,

1  the notion that we haven't been cooperative is -- it's,

2  frankly, insulting.  We provide information, we don't press

3  objections; we're incredibly cooperative.  We've been doing

4  everything we can now for more than a month to try to get

5  people on sides with what we think is traditional trial

6  practice.  It's been more than a month of us saying let's just

7  agree to get the exhibits in on day one.  And there's a lot of

8  reasons that they can't.

9          I mean, I think maybe some sense of how this works

10 is, while hearing this outrageous notion that there's 1600

11 exhibits and so the debtors aren't cooperating comes along

12 with the insurers having 1500 exhibits.

13         The exhibits are what they are.  The case is what

14 it is, the evidence is what we think we need to prove, and

15 that's not a reason to say that they're not going to put it in

16 or they're not going to get their objections in so we can get

17 it in at the beginning of trial.

18         As to the witnesses, again, the complaint is they

19 get the witness list at 11:56, but they don't mention that

20 their witness list came in at 9:00 p.m., and I'm not sure what

21 the distinction is between getting a witness list at 9:00 p.m.

22 and getting a witness list at 11:56, or what that has to do

23 with anything, other than the fact that, as discussed, our

24 witness list gave an order and theirs didn't, even though

25 there was no reason for that.

1        They complain about whether or not identified who

2   goes in by declaration.  In fact, we've never had a discussion

3   about that and we'd be happy to share that information, but

4   they didn't share that information.  So this is another time

5   they complain about something but they're not abiding by what

6   they claim to be a practice that they're complaining about.

7        The rule on the declarations is that they're

8   supposed to be provided 72 hours before the witness takes the

9   stand, and we're going to do that and we think we're going to

10  do better than that.  That's when you're supposed to see

11  declarations.  We're happy to have a reciprocal exchange of

12  who's going to be live and who's going to be reciprocal.

13       The idea of playing videos from depositions we

14  think is totally wasteful.  I don't know really many, if any,

15  bench trials that watch videos of depositions or counsel that

16  would expect courts to watch videos of depositions.

17       And, lastly, I would say, the pretrial order

18  doesn't streamline anything.  It imposes consequences and

19  rulings that are not ripe.  There's nothing that has been

20  identified that would shorten the trial at all.  The way you

21  would shorten this trial is you would have declarations going

22  and the best way to shorten a trial, you allow a record to go

23  in without a lot of contest.  And I don't believe that issues

24  have been taken off the Court because there was discovery with

25  respect to people who are unbelievably qualified for the role.

1  I don't know what discovery one needs of Judge Hauser to --

2  and the fact that it's not full bore discovery, only

3  substantial discovery, I don't think takes anything off the

4  table.

5         I don't know that there's anything else to respond

6  to Your Honor.  We'll continue to work with everybody to get

7  the exhibits in order, to get people to agree to their

8  submission, to provide information that people want, with the

9  expectation that they'll provide the same information back to

10 us.  We are an open book on this stuff; we are not trying to

11 hide anything.

12        THE COURT:  Mr. Buchbinder.

13        MR. BUCHBINDER:  Thank you, Your Honor.  Good

14 morning, Dave Buchbinder on behalf of the United States

15 Trustee.

16        Frankly, I'm appalled.  It does not appear that

17 this case after all this time is ready to go to trial.  And,

18 frankly, the biggest issue is that all of you -- the Court

19 excluded -- all of you continue to pretend that this is a case

20 about warring tranches of debt and equity; it isn't.

21        The debtor has the burden of proof.  The debtors'

22 responsibility is to put on its case, but Mr. Kurtz -- this is

23 not a bondholder or an equity case.  This isn't the case where

24 you can submit 20 declarations the day before the hearing and

25 19 of them are pro forma and no one is going to object, this

1  is a different case.  You all have to stop pretending that

2  this case isn't what it isn't.

3          Thank you.

4          THE COURT:  Okay, I need exhibits over here on

5  Friday.  Trial starts Monday, so I need them here on Friday,

6  and however many binders there are going to be.

7          And -- well, I'd like one set.  I want them de-

8  duplicated.  If you're going to give me binders for witnesses,

9  I guess those are separate, but they've got to be provided to

10 everybody in whatever way you're going to do it.  I recognize

11 on hard copy you can do it, however you're going to do it with

12 other people, whatever your arrangement is.

13         As for making the trial shorter, yeah, I suppose

14 declarations do that in a very artificial kind of way.  I

15 still have to read them, I still have to understand them;

16 people still have to cross.  So, yes, it's a way to

17 streamline, but it's -- and sometimes it's more efficient and

18 sometimes it's not and, quite frankly, I can't prejudge that.

19         Given the number of times this case has -- that the

20 start date has been postponed, I'm somewhat surprised the

21 debtor isn't here telling me we're ready to go, here's our

22 exhibits, here's everything, irrespective -- is that a word --

23 of what the objectors are doing.

24         I don't know how this is going to play out.  Quite

25 frankly, I don't know that I can impose something that's going

1  to create an environment where there's cooperation because

2  I've already imposed dates and deadlines that have been wholly

3  ignored by everybody.

4          So I'm here on Monday, I'm ready to start.  I'll be

5  as prepared as I can be to hear what you want to put in front

6  of me in an informed way, but the fact that we couldn't even

7  get stipulations over here yesterday at noon is just another

8  indication to me that the normal processes are not working.  I

9  understand there's still ongoing discovery.  That's because

10  some parties chose to object to discovery they shouldn't have

11  and it delayed things, and part of that's on the plan

12  proponents' side and part of it's on the objectors' side.

13          But discovery can still go forward.  We've got at

14  least a several-week trial and, given the lack of

15  coordination, I don't know how long it's going to be.  Sixteen

16  hundred exhibits with sub-exhibits, I don't know.  As I've

17  already said, I'm not going to be reading anything, certainly

18  not 1600 exhibits with sub-exhibits and another 1400 from the

19  certain insurers, that aren't specifically relevant to what I

20  have to determine and pointed out to me and used by witnesses

21  or in argument, pointed to me at argument, go look at X for

22  this proposition that we have to prove.

23          I'm not sure I have anything else to say.

24          Mr. Kurtz, I see your hand.  Is that up again or is

25  that a leftover?

1          MR. KURTZ:  It is up again for one point of

2    clarification.  So we are ready to go, Your Honor.  We have

3    exhibits; we'll make sure we're de-duping.  We will get you

4    binders on Friday.  But the point of clarification is there's

5    some real volume of exhibits that are, as I mentioned, more

6    foundational than something that will be actually pointed to

7    Your Honor.  For instance, 82,000 proofs of claim is a

8    foundation for expert opinion, but we will not be perusing

9    them.  If there are any individual ones we would look at, we

10   would produce that.

11         But the point of clarification -- and, likewise,

12   there are documents that have been admitted in the record and

13   they're already on the docket, and my point of clarification

14   is that do you want hard copies of documents like those or can

15   we just reference those?

16         THE COURT:  Like what?  Give me an example.

17         MR. KURTZ:  Well, like a disclosure statement.

18         THE COURT:  Why is that an exhibit and what's it

19   being used for?

20         MR. KURTZ:  Your Honor, I'm not positive of all the

21   -- I don't have control over all the witnesses, but I know

22   that we have included matters that appear on the docket.

23   People have talked about judicial notice and the like.  I

24   think it's an introduction matter.  Regardless of how or why

25   it goes in, if something is going to be addressed with the

1  witness, it's going to be either in a binder or attached to a

2  declaration.  If something is going to be addressed in a

3  closing, it will be provided as part of a closing binder.

4            And my question is, if we have other volumes of

5  documents that are large, for instance, tens of thousands of

6  proofs of claim, is that something Your Honor actually wants

7  hard copies of or would it be sufficient to have that in a

8  disk, given that you won't, I don't think, be looking at it

9  specifically.

10           THE COURT:  I guess you can have it in a disk.

11  Okay, I don't take judicial notice of a docket.  I don't even

12  know what that means when people ask me to do that and that's

13  what I say.

14           MR. KURTZ:  Right.

15           THE COURT:  What does that mean?  And what's the

16  disclosure statement going to be used for?  It exists, it was

17  filed.

18           MR. KURTZ:  I think some confirmation -- you know,

19  there's still confirmation findings relating to the adequacy

20  of disclosure, those people who I think reserved certain

21  objections to that.  So there's some --

22           THE COURT:  Okay.

23           MR. KURTZ:  -- check-the-box exercises that will

24  certainly draw upon documents that have been filed on the

25  docket, but I hear Your Honor and we'll make sure that we're

1  doing -- I don't know how anybody can object to these matters,

2  but I just wanted to raise it --

3             THE COURT:  They can object --

4             MR. KURTZ:  -- in case Your Honor had a practice.

5             THE COURT:  -- depending on what you want to use it

6  for.  I don't -- this is -- in my view, this is a self-

7  contained hearing.  This is not -- I'm not importing

8  everything that's been done for the last two years into the

9  confirmation hearing.  If there's something that's been done

10 in the last two years that needs to be part of this hearing,

11 other than the fact that it happened, then you're going to

12 have to put it in this hearing.  I don't understand until I

13 see it what it is.

14            But that's my general take on hearings, they are

15 self-contained and I don't take judicial notice of everything

16 that's occurred in the last two years.  I can maybe take

17 judicial notice of what's happening here in this hearing and

18 the cooperation or lack of cooperation, if you guys want me to

19 do that, but I don't take judicial notice of every hearing

20 we've had and import it into confirmation --

21            MR. KURTZ:  I understand, Your Honor.

22            THE COURT:  -- or every document that's been filed.

23            MR. KURTZ:  Understood.  We've tried to identify

24 only those portions of the record that we intend to use at the

25 hearing, that's on our exhibit list.  I appreciate the

1  guidance you've given me on your views otherwise and we will

2  get everything in on Friday, and we will see you on Monday and

3  we will be ready to go.  We'll also, of course, be submitting

4  declarations.  And thank you for your attention today.

5          THE COURT:  Certainly.

6          MS. MARRKAND:  Thank you, Your Honor.  Nice to see

7  you again.  Kim Marrkand for Liberty Mutual.

8          I wanted to raise one other issue, Your Honor.  The

9  certain insurers, we did follow your order with respect to

10 submitting a proposed pretrial order.  I'm not sure what the

11 snafu is that you didn't receive it and I can only imagine how

12 that adds to your frustration.  But what we tried to do, Your

13 Honor, in the pretrial order is, as Mr. Hallowell said, of

14 course we circulated it to the debtors.  We had been talking

15 to the debtors for days about the issues with the pretrial

16 order and we got absolutely no response.

17         I'm a bit -- I know Mr. Kurtz likes to use

18 adjectives, so I think I'll match him this time, that we were

19 shocked to hear him say we had not circulated it.  We would

20 never do that, frankly.  But that's neither here nor there,

21 Your Honor.  What matters and why we had to submit the order

22 without any input from the debtors is because the debtors did

23 not respond.

24         So now it really -- it's your courtroom, it's your

25 trial.  If you find the pretrial order helpful, we welcome

1   that.  And what I would ask -- and I think I can speak on

2   behalf of almost everyone but the debtors -- is we identified

3   issues for you to resolve, very mindful, as Mr. Hallowell

4   said, about taking issues off your plate.  We did not want to

5   start this trial with you on Monday, frankly, burdening you

6   with pretrial issues that should have been worked out today,

7   and instead of our being chastised for not circulating it,

8   which is not true.

9           And then apparently a strategy by the debtors today

10   to only talk about exhibits and witnesses when there are

11   serious other issues -- and I understand Mr. Kurtz's zeal to

12   not come before the Court again until we start on Monday, but

13   I would ask Your Honor to -- and we will get you a hard copy

14   of it today to review the pretrial order.  Mark it up any way

15   you want so that we have the roadmap.  Or, Your Honor, we end

16   up having those discussions with you on Monday and it would

17   just be professionally embarrassing for all of us not to have

18   worked those -- all those issues out.

19           So, thank you for hearing us.  We were stunned and

20   we were waiting as long as we could before we filed the draft

21   pretrial order in hopes that we could represent to you we had

22   comments from the debtors.  We never got that.  There was a

23   lot of discussion yesterday evening and we finally said we are

24   going to follow what Judge Silverstein said to submit the

25   pretrial order even if it's only what we prepared in good

1  faith.

2          So, thank you very much, Your Honor.  I just wanted

3  to make that suggestion.  It's up to you, obviously, and we're

4  going to do whatever you say.

5          THE COURT:  Thank you.  No, I hadn't made myself a

6  note to pull it, so I will do that and look at it.  And if

7  there's some piece of it I want to enter, I'll do that, or if

8  I want to have you guys back for a discussion, I'll do that

9  too.

10          MS. MARRKAND:  Thank you.

11          THE COURT:  Thank you.

12          Mr. Christian.

13          MR. CHRISTIAN:  Thank you, Your Honor, David

14  Christian for Great American and other excess insurers.

15          I just wanted to mention, to the extent it's of

16  interest to Your Honor, what we did when we didn't get

17  engagement from the debtor is we borrowed from the recent

18  Mallinckrodt pretrial order, another mass tort case with lots

19  of objectors and lots of documents.  And, frankly, a lot of

20  the things that Mr. Kurtz has spoken about this morning we

21  would expect to be resolved in a pretrial order, you know,

22  including things like who's calling what witnesses and so

23  forth, and that's why we used that model and that's why we

24  proposed it.

25          THE COURT:  Well, I had actually pulled that in

1  advance of Monday, thinking that I might get something like

2  the Mallinckrodt order, which I didn't get.

3            Mr. Desgrosseilliers?

4            MR. DESGROSSEILLIERS:  Your Honor, I'll be brief.

5  Just to be clear on the pretrial order, I was consulted by

6  counsel for the objecting insurers on that.  There's one

7  provision in there, Your Honor will note, we can see it,

8  opening and closing argument up to one hour for objectors

9  collectively, it's unclear to me what that means.  And, as

10 Your Honor is aware, there are a number of pro se parties.

11           As to myself, I'll try to be brief and try not to

12 speak too quickly for the transcript, but limiting it to one

13 hour and that sort of stuff here is not (indiscernible) Your

14 Honor (indiscernible) that struck me.

15           THE COURT:  Thank you.  And I will say, without

16 having yet seen the pretrial order, that I'll probably have

17 some thoughts on closing as we go through the trial and what

18 particular issues I'd like addressed, along with whatever

19 others think are important.

20           So that's probably an aspect that I will hold until

21 closer to the end of the evidence, but I will take a look at

22 it.  And, as I said, I had pulled the Mallinckrodt order and

23 had taken a look at it.

24           Anyone else?

25       (No verbal response)

1    THE COURT: Okay. Well, we're adjourned today. If

2  I want to have you back before Monday, I will let you know.

3  Thank you very much. We're adjourned.

4    (Proceedings concluded at 11:09 a.m.)

5

6

7

8                    CERTIFICATION

9    We certify that the foregoing is a correct

10  transcript from the electronic sound recording of the

11  proceedings in the above-entitled matter to the best of our

12  knowledge and ability.

13

14  /s/ Mary Zajaczkowski                March 8, 2022
    Mary Zajaczkowski, CET-531

15

16  /s/ Tracey J. Williams               March 8, 2022
    Tracey J. Williams, CET-914

17

18  Certified Court Transcriptionist
    For Reliable

19

20

21

22

23

24

25