IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br>(Jointly Administered)<br><br>Ref. Docket No. 9280 |

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE ARCHBISHOP OF AGAÑA (BANKR. D. GUAM 19-00010) TO THE DECLARATION OF BRIAN WHITTMAN IN SUPPORT OF CONFIRMATION OF THE THIRD MODIFIED FIFTH AMENDED PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC**

The Official Committee of Unsecured Creditors appointed in *In re: Archbishop of Agaña, a Corporation Sole* (Bankr. D. Guam 19-00010 (the "Guam Committee") hereby submits this limited objection (the "Objection") to the Declaration of Brian Whittman, which was filed in Support of Confirmation of the Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC (the "Declaration") [Dkt. No. 9280]. In support of its Objection, the Guam Committee respectfully states as follows:

**ARGUMENT**

Mr. Whittman's Declaration contains numerous speculative statements that appear to lack a foundation based on any direct experience, personal knowledge, or other relevant and verifiable facts or data. Under Federal Rule of Evidence 602, a witness may testify to a matter "only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602; *see also Donlin v. Philips Lighting N. Am. Corp.*,

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

CORE/3515288.0002/173168009.1

581 F.3d 73, 81-82 (3d Cir. 2009). A lay or fact witness may provide opinion testimony only if it is rationally based on the witness's perception, helpful to clearly understand the witness's testimony or to determining a fact in issue, and is not based on scientific, technical or other specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701. In particular, a lay witness cannot generally testify as to "what would have happened in a hypothetical negotiation." *AVM Technologies, LLC v. Intel Corp.*, 927 F. Supp. 2d 139, 146-47 (D. Del. 2013). Witnesses attempting to do so often go "beyond those easily verifiable facts with[in] their personal knowledge" and instead rely on "forward-looking speculation" that requires particular training. *Donlin*, 581 F.3d at 82-83.

An expert witness, on the other hand, must be qualified by knowledge, skill, experience, training or education, and then may testify in the form of an opinion only if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.[2] Expert testimony fails to meet the reliability standard under Rule 702 where it is not "based on the methods and procedures of science," but rather "on subjective belief and unsupported speculation." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 834 (3d Cir. 2020) (citing *Karlo v. Pittsburgh Glass World, LLC*, 849 F.3d 61, 80-81 (3d Cir. 2017)). The expert witness must base his opinion "on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703.

---

[2] Rule 702 applies with equal force to testimony offered in bench trials. *See UGI Sunbury LLC*, 949 F.3d at 832-33.

Mr. Whittman is purporting to provide testimony as an expert witness. (Declaration ¶ 10.) However, in portions of his Declaration, he purports to testify about the mindset of the Settling Insurance Companies and Chartered Organizations without providing any foundational basis for his claimed personal knowledge of such matters and without offering any non-conclusory or foundational facts or data in support of his statements. Mr. Whittman's statements do not appear to be based on facts or data that Mr. Whittman has learned directly or personally observed, as required under Rule 703 for expert opinion. Mr. Whittman does not even claim to have worked on behalf of insurance companies in similar circumstances, let alone provide any basis at all for his alleged insight into the intentions and motives of the Settling Insurers themselves. The speculative and subjective nature of this testimony exceeds the scope of permissible lay testimony for Mr. Whittman in light of his lack of any experience in the insurance industry. *See Donlin*, 581 F.3d at 82-83. And the speculative and subjective nature of this testimony "severs the necessary relationship to methods which have been established to be reliable" that would be required of expert testimony by Rule 702. *See UGI Sunbury, LLC*, 949 F.3d at 834.

As detailed below, Mr. Whittman offers multiple opinion statements that do not satisfy the requirements of Rule 702, multiple statements that lack any evidentiary foundation, and his testimony draws impermissible, ultimate legal conclusions. The Guam Committee objects to any such statements being entered into the record as evidence.

    A.    **Speculative Statements Concerning Insurers' Mindsets and Positions on the Terms of the Settlement Agreements Should Not Be Allowed into Evidence**

The following proposed statements by Mr. Whitmann constitute speculation and conjuncture about the mindset of the Settling Insurers. Mr. Whittman is not proposing to testify about these matters based upon his personal knowledge. Mr. Whittman is not a representative of the Settling Insurance Companies. Mr. Whittman's proposed testimony lacks any facts from

which the Court might conclude that Mr. Whittman has any direct, personal knowledge of the Settling Insurers' positions or mindsets with respect to proposed Settlement Agreements. In addition, the following portions of Mr. Whittman's testimony do not appear, in any instance, to be based on facts or data of which Mr. Whittman was made personally aware, as required by Rule 703. Further, such statements are not based on sufficient facts or data as required by Rule 702, and they are not the product of reliable principles and methods, as required by Rule 702.

Mr. Whittman is not a qualified witness with respect to the opinions he renders concerning the mindsets of the Settling Insurers or what the Settling Insurers might, or might not do with respect to any particular issue arising in complex settlement negotiations. Moreover, the conclusions drawn from these opinions about the reasonableness and necessity of the terms of the insurance settlements with the Settling Insurance Companies are impermissible ultimate legal conclusions. For these reasons, the following portions of Mr. Whittman's testimony should not be permitted into evidence:

Paragraph 106:

I do not believe Hartford would be willing to agree to the terms set forth in the Hartford Insurance Settlement, including the monetary contribution that would be provided to the Settlement Trust, absent these provisions. Thus, the releases and injunctions that would benefit Hartford are an essential condition of the Debtors (and the Settlement Trust) receiving the substantial benefits of the Hartford Insurance Settlement.

Paragraph 107:

In addition, the releases provided to Hartford are essential to obtain the significant contribution Hartford is providing under the Plan. Without these contributions, the plan of reorganization which is supported by all major creditor constituencies would not be possible.

Paragraph 133:

Absent the Century and Chubb Insurance Settlement, the Debtors or the Settlement Trust would have been required to litigate and negotiate with Century

4

and Chubb to secure insurance coverage on a case-by-case basis. Resolving these individual cases would likely have taken many years of negotiation and/or litigation, and required the Debtors to incur significant attorneys' fees, without any guarantee of recovery.

Paragraph 134:

I believe that Century and the Chubb Companies would not agree to the terms set forth in the settlement, including the monetary contribution that would be provided to the Settlement Trust, absent these injunctions. Thus, the injunctions and releases that would benefit Century and Chubb are an essential condition of the Debtors (and the Settlement Trust) receiving the substantial benefits of the Century and Chubb Companies Insurance Settlement.

Paragraph 135:

In addition, the releases provided to Century and the Chubb Companies are essential to obtain the significant contributions these parties are providing under the Plan. Without these contributions, the plan of reorganization which is supported by all major creditor constituencies would not be possible.

Paragraph 136:

I believe that Century and the Chubb Companies and the other Settling Insurance Companies would not agree to the terms set forth in their respective settlements unless all of these claims were channeled to the Settlement Trust, and that these provisions maximized the contribution provided by Century and the Chubb Companies.

Paragraph 167:

Absent the Zurich Settlement Agreement, the Debtors or the Settlement Trust would have been required to litigate and negotiate with the Zurich Insurers and the Zurich Affiliated Insurers to secure insurance coverage on a case-by-case basis. Resolving cases on a case-by-case basis would have taken many years of negotiation and/or litigation, and required the Debtors (or the Settlement Trust) to incur significant attorney's fees, without any guarantee of recovery.

Paragraph 169:

The Zurich Insurers would not be willing to agree to the terms set forth in the settlement, including the monetary contribution that would be provided to the Settlement Trust, absent these provisions. Thus, the releases and injunctions that would benefit the Zurich Insurers and the Zurich Affiliated Insurers are an essential condition of the Debtors receiving the substantial benefits of the Zurich Insurance Settlement.

5

Paragraph 170:

In addition, the releases provided to the Zurich Insurers and the Zurich Affiliated Insurers are essential to obtain the significant contributions these parties are providing under the Plan. Without such releases, it would not be possible to efficiently maximize the value of such insurance policies.

Paragraph 181:

Absent the Clarendon Insurance Settlement, the Debtors or the Settlement Trust would have been required to litigate and negotiate with Clarendon to secure insurance coverage on a case-by-case basis. Resolving these individual cases would likely have taken many years of negotiation and/or litigation and required the Debtors or the Settlement Trust to incur significant attorneys' fees, without any guarantee of recovery.

Paragraph 183:

Clarendon would not be willing to agree to the terms set forth in the settlement, including the monetary contribution that would be provided to the Settlement Trust, absent these provisions. Thus, the release and injunctions that would benefit Clarendon are an essential condition of the Debtors receiving the substantial benefits of the Clarendon Insurance Settlement.

Paragraph 184:

In addition, the releases provided to Clarendon are essential to obtain the significant contributions that Clarendon is providing under the Plan. Without such releases, it would not be possible to efficiently maximize the value of such insurance policies.

Paragraph 192:

It is unlikely that the Settling Insurance Companies would be willing to resolve coverage obligations in connection with such claims without eliminating their potential exposure, and even if they would, any such settlement would yield far less consideration for the Settlement Trust for the benefit of the Abuse Claims given the insurers continuing coverage obligations to Chartered Organizations. Indeed, the agreements with the Settling Insurance Companies demonstrate that the complete resolution of their exposure was a critical component of achieving the over $1.6 billion of insurance settlements to date. Further, the release of the Settling Insurance Companies for pre-1976 claims (and the corresponding release of Participating Chartered Organizations) was a critical component of monetizing the value of the BSA and Local Council insurance policies. Thus, the release of Chartered Organizations for Abuse Claims arising post-1975 is essential to

effectuate the transfer of insurance rights that would provide the Settlement Trust with the ability to monetize insurance policies and provide a timely payment to survivors.

**B.  Speculative Statements Concerning Chartered Organizations' Mindsets and Positions on the Terms of the Settlement Agreements and/or Plan Should Not Be Allowed into the Evidentiary Record**

Mr. Whittman also proposes to testify about the mindset and positions of Chartered Organizations, as well as unknown potential future events or likehoods in the absence of the proposed settlements with the Settling Insurance Companies. Mr. Whittman is not qualified to render any opinion about the mindsets of the Chartered Organizations. The following are speculative opinions for which Mr. Whittman lacks personal knowledge, that are not based on facts or data of which Mr. Whittman has been made personally aware under Rule 703, that are not based on sufficient facts or data as required by Rule 702, and that are not the product of reliable principles and methods, as required by Rule 702:

Paragraph 192:

Thus, the release of Chartered Organizations for Abuse Claims arising post-1975 is essential to effectuate the transfer of insurance rights that would provide the Settlement Trust with the ability to monetize insurance policies and provide a timely payment to survivors.

Paragraph 199:

Thus, for all of the Chartered Organizations there is a logical relationship between their contributions to the Settlement Trust and the releases that they are provided under the Plan. Moreover, if the Chartered Organizations do not receive releases, and only the BSA emerges from bankruptcy free of liability for Abuse Claims, the Chartered Organizations would likely face a significant number of lawsuits.

**C.    Improper Legal Conclusions & Other Inadmissible Opinions**

Mr. Whittman's purported summation of Plan terms is inadmissible as improper legal conclusions. The Plan speaks for itself. Similarly, the settlements with the Settling

7

Insurance Companies speak for themselves. Mr. Whittman's summation of those terms is likewise inadmissible.

Mr. Whittman also makes various other opinion statements that are not based on facts or data of which Mr. Whittman has been made personally aware and that have not been shown to be the product of reliable principles and methods. In addition, Mr. Whittman draws various other ultimate legal conclusions that are not the proper subjects of expert opinion testimony. The following proposed testimony is inadmisible in evidence under Rules 702 and 703.

Paragraph 104:

I believe the Hartford Insurance Settlement, and the amount of the Hartford Insurance Settlement Contribution, was reasonable because it was agreed to in arm's-length negotiations between sophisticated parties with opposing economic interests.

Paragraph 107:

Without these contributions, the plan of reorganization which is supported by all major creditor constituencies would not be possible.

Paragraph 132:

I believe the Century and the Chubb Companies Insurance Settlement, and the amount of the Century and Companies Insurance Settlement Contribution, was reasonable because it was agreed to in arm's-length negotiations between sophisticated parties with opposing economic interests.

Paragraph 135:

Without these contributions, the plan of reorganization which is supported by all major creditor constituencies would not be possible.

Paragraph 166:

I believe the Zurich Insurance Settlement, and the amount of the Zurich Insurance Settlement Contribution, was [sic] because it was agreed to in arm's-length negotiations between sophisticated parties with opposing economic interests, including the FCR and the Coalition.

Paragraph 169:

Thus, the releases and injunctions that would benefit the Zurich Insurers and the Zurich Affiliated Insurers are an essential condition of the Debtors receiving the substantial benefits of the Zurich Insurance Settlement.

Paragraph 180:

The Clarendon Insurance Settlement, and the amount of the Clarendon Insurance Settlement Contribution, was reasonable because it was agreed to in arm's-length negotiations between sophisticated parties with opposing economic interests.

Paragraph 183:

Thus, the release and injunctions that would benefit Clarendon are an essential condition of the Debtors receiving the substantial benefits of the Clarendon Insurance Settlement.

Paragraph 184:

In addition, the releases provided to Clarendon are essential to obtain the significant contributions that Clarendon is providing under the Plan.

## CONCLUSION

WHEREFORE, the Guam Committee respectfully requests that the Court decline to admit any of the foregoing portions of Brian Whittman's proposed testimony into evidence.

Dated:  March 13, 2022
        Wilmington, Delaware

Respectfully submitted,

HILLER LAW, LLC

 /s/ Adam Hiller
Adam Hiller (DE No. 4105)
300 Delaware Avenue, Suite 210, #227
Wilmington, Delaware 19801
(302) 442-7677 telephone
ahiller@adamhillerlaw.com

-and-

CORE/3515288.0002/173168009.1

Robert T. Kugler (MN #0194116)
Edwin H. Caldie (MN #0388930)
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
robert.kugler@stinson.com
ed.caldie@stinson.com

-and-

Christina D. Arnone (MO #62230)
STINSON LLP
1201 Walnut, Suite 2900
Kansas City, MO 64106
(816) 842-8600
christina.arnone@stinson.com

*Attorneys for the Guam Committee*