## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 20-10343 (LSS) <br><br> (Jointly Administered) <br><br> D.I. Ref.: 9310 |

### DEBTORS' RESPONSE TO OBJECTION OF THE ROMAN CATHOLIC AD HOC COMMITTEE TO THE DECLARATION OF BRIAN WHITTMAN

Boy Scouts of America (the "**BSA**") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession (together, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby file this response (the "**Response**") to the *Objection of the Roman Catholic Ad Hoc Committee to the Declaration of Brian Whittman* [D.I. 9310] (the "**Objection**") filed by the Roman Catholic Ad Hoc Committee (the "**RCAHC**"). In support of the Response, the Debtors state as follows:

### RESPONSE

The Objection filed by the RCAHC—which, despite its name, represents only an insurance company and a handful of dioceses representing a small fraction of the more than 2000 Catholic chartered organizations—misstates the record, and lacks merit. The Court should overrule the Objection for at least three reasons.

*First*, the assertions in the Objection are demonstrably false. The Objection argues, among other things, that "[i]n response to every question directed by the RCAHC to the Debtors'

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

designated Rule 30(b)(6) witness on what was considered in the exercise of their business judgment in entering into the settlement agreements, [Mr. Desai] was instructed not to answer on the ground that the information was protected by the attorney-client privilege." Obj. ¶ 2. This statement is untrue. Mr. Desai was designated to testify solely regarding the Debtors' business judgment in connection with five topics:

1. The Debtors' understanding of and exercise of their business judgment in agreeing to the following paragraphs of the Century Term Sheet – 9, 10, 11, 13, 14 and 15 (as it relates to Chartered Organizations). RCAHC Topic #10.

2. The Debtors' understanding of and exercise of their business judgment in including the following provisions of the February 15, 2022 Plan, including all revisions to prior versions of such provisions – Article I.A sections 42, 45, 59, 86, 177, 184, 196, 199, 215, 269 and 294; Article IV.S and W, Article V.M and S, Article X.D, F, G, H, J, the Document Appendix (as it relates to Chartered Organizations), the Trust Distribution Procedures (as it relates to Chartered Organizations). RCAHC Topic #11.

3. The Debtors understanding and exercise of their business judgment in entering into the Hartford Insurance Settlement Agreement (as it relates to Chartered Organizations), the Hartford Insurance Term Sheet (as it relates to Chartered Organizations), and the Hartford Insurance Draft Agreement (as it relates to Chartered Organizations). RCAHC Topic #12.

4. The Debtors understanding and exercise of their business judgment in entering into the Clarendon Insurance Settlement Agreement (as it relates to Chartered

2

Organizations) and the Clarendon Insurance Settlement Term Sheet (as it relates to Chartered Organizations). RCAHC Topic #13.

5. The Debtors understanding and exercise of their business judgment in entering into the Zurich Insurance Settlement Agreement (as it relates to Chartered Organizations) and the Zurich Insurance Settlement Term Sheet (as it relates to Chartered Organizations). RCAHC Topic #14.

Mr. Desai testified regarding what the Debtors considered in exercising their business judgment as to each of these topics. In many of these cases, Mr. Desai supplemented his prior testimony at the RCAHC's request. For example, among other things, Mr. Desai testified as follows:

> Q. Please explain why Debtors validly exercise[d] their business judgment in agreeing to Paragraph 9 in this release of Settling Insurers in the Century Term Sheet.
>
> A. While the negotiations were taking place with various parties, including Century/Chubb, counsel for the Debtors had provided several updates to the Bankruptcy Task Force, along with the National Executive Committee and the National Executive Board of the Boy Scouts of America and in actively providing us with real-time information, providing us with the efforts that are being made to secure agreements with various insurers prior to an upcoming plan filing deadline, and at this time, prior to a deadline on the vote that was needed for survivors of historical abuse, coupled with the various parameters that the BSA, through . . . the National Executive Committee and the National Executive Board, our counsel were instructed to continue to negotiate with insurers like Century/Chubb in order to effectuate a meaningful resolution that would allow for additional dollars to be placed into the Settlement Trust to, again, achieve one of the BSA's principal objectives, which is to equitably compensate all the victims of sexual abuse.

March 9, 2022 Desai Dep. Tr. ("Desai Tr.") at 21:13-22:13

> Q. [I]s there any information for you to share in respect to the information that the Debtors considered in exercising their business judgment to enter into the Zurich Insurance Settlement Agreement?
>
> A. The only other thing I would add, and I may have said this previously, but as we continued to evolve in the ability to build a larger settlement trust, the various settlements with insurers all have some interplay in them as it relates to the

3

> various definitions that we spent some time on today, and so the agreements needed to continually be modified and negotiated. And as you saw, there were several conversations, both with our advisors through the BTF and the NEC process, but there were also many ongoing mediation sessions that the parties engaged in, in order to achieve what we previously set out to achieve during the initial Hartford Settlement Agreement, which was to protect our Chartered Organizations and as we continued to build on the number of settlements with various insurers and the number of parties that eventually joined these agreements, the parties had to go back and certainly negotiate certain points to allow for the entry of others to come in. And so our advisors were very active in that process and in terms of the Board or the NEC or the BTF, we were kept abreast of the various updates, negotiations, real-time updates, if you will, even from our advisors as to how the agreements and the status of those negotiations were going and where parties were having some level of discussion or breakdown and what we could do in working through the mediator to help facilitate some consensus among the various parties.

*Id.* at 115:11-116:23.

> Q. And is it the Debtors' position that it validly exercised its business judgment in including this definition Paragraph 177, the limited protected party injunction date in the February 15, 2022 plan?
>
> . . .
>
> A. Again, . . . I'll defer back to my prior answers and also indicate that – in agreeing to this term, it allows for – as I described earlier, a pathway, if you will, for a contributing Charter Organization to become a full-fledged participating Charter Org by, again, providing additional compensation to the Settlement Trust for the benefit of abuse survivors.

*Id.* at 78:20-79:11 (objection to form omitted)

> Q. And beyond the information that you shared with us with respect to the Century Term Sheet, the February 2022 plan, the Hartford Insurance Settlement Agreement and the Zurich Settlement Agreement, is there anything different or additional that you have to share about the Debtors' exercise of business judgment in respect to the Clarendon Insurance Settlement Agreement?
>
> A. No, sir.

*Id.* at 118:14-22.

> Q. And with respect to the Hartford Settlement Agreement, is there anything different that you can share with us that is not mediation privileged and is not attorney-client privileged, as it respects the Hartford Insurance Settlement Agreement for the exercise of its business judgment?

4

> A. The only thing I would add is that at the time that the Hartford Insurance Settlement Agreement was entered into, it involved the support of the Coalition and the Future Claimants' Representative and during the negotiations, of course our counsel provided the BTF and NEC with the updates and positions of various parties. And eventually, the BTF and NEC authorized our advisors to negotiate to successful conclusion the Hartford Agreement and inside the agreement, one of the conditions that we were very keen on ensuring was the continued building, if you will, of additional support by various other parties, whether it's – other Chartered Organizations, whether it's other insurers, whoever, to eventually join into what I would call the initial agreement with Hartford as the first insurer to resolve the claims with us. And this document did speak to the intent and request by the parties to the agreement to allow for ongoing discussions to take place that would allow for further protections of parties who wished to join.

*Id.* at 111:24-112:35.

As shown above, Mr. Desai answered all of the RCAHC's questions on the noticed topics. Indeed, contrary to what the RCAHC argues in the Objection, the RCAHC stated ***on the record at Mr. Desai's deposition*** that Mr. Desai had testified regarding what the Debtors considered in exercising their business judgment. *See* Desai Tr. at 111:15-23 ("Q. We spoke about the Debtors' exercise of business judgment in respect to the February 15, 2022 Plan and you provided us with information about the considerations and the types of information that the Bankruptcy Task Force and the National Executive Committee considered in exercising its business judgment. Do you recall that testimony? A. Yes, sir.").

In addition, Mr. Whittman was designated as a 30(b)(6) witness to respond to questions posed on the Hartford Settlement in connection with the TCC's 30(b)(6) notice and provided ample testimony regarding the Hartford Settlement. December 7, 2021 Whittman Dep. Tr. ("Whittman Tr.") at 14:5-10 (Q. "The next topic is 7, the Hartford Insurance Settlement . . . you're prepared to testify to that topic? A. "I am.") *see also* p. 154-55; 166-68. Notably, the RCAHC did not ask a single question at the deposition.

Moreover, Mr. Desai provided testimony beyond the scope of the topics that the RCAHC noticed. Specifically, the RCAHC did not notice a topic regarding the Century settlement

5

agreement. Nonetheless, although not required to do so, the Debtors permitted the RCAHC to ask Mr. Desai questions regarding that agreement, and Mr. Desai to answer as the Debtors' 30(b)(6) corporate representative:

> Q. So my question to you is: In entering into the Century and Chubb Companies Insurance Settlement Agreement, was there additional or different information that you can share with us that the Debtors considered in exercising their business judgment?
>
> A. The only thing I would add is that by the time that this agreement materialized and finalized and filed with the Court, the Tort Claimants Committee had become a participant in the negotiations with this agreement and as a result of many, many, many settlement-related conversations, not only at the mediation itself and in Los Angeles but also elsewhere, coupled with the information that we, as a Bankruptcy Task Force and the NEC received through the various presentations and conversations with our advisors, I can tell you that the Debtor did exercise its business in fairly and thoroughly evaluating the terms and conditions of the Settlement Agreement with Chubb and Century, and as a result, authorized our advisors to move forward with it.

*Id.* at 123:18-124:16 (objection to form by counsel to Century omitted).[2]

In total, Mr. Desai's testimony in response to questions from the RCAHC spanned 115 transcript pages and lasted almost three hours.[3] The RCAHC did not ask Mr. Desai any questions regarding specific board meetings, minutes or presentations. However, those topics

---

[2] Additionally, Ms. Lujan-Wolff sought to ask Mr. Desai questions, despite having failed to serve a 30(b)(6) deposition notice or identifying any topics in advance of the deposition. Again, although not required to do so, the Debtors permitted Ms. Lujan-Wolff to ask Mr. Desai questions, and Mr. Desai to answer as the Debtors' 30(b)(6) corporate representative.

[3] This testimony is in addition to the hours of testimony that Mr. Desai provided at the hearing on the RSA, in which he robustly described the Debtors' exercise of their business judgment. *See, e.g.*, Aug. 13, 2021 Hr'g Tr. at 38:5-12 ("The BTF received materials on occasion to, obviously, review ahead of time. There were presentations made during the meetings, conversations were had between the members of the BTF and we also had robust dialog with all of our advisors; sometimes more often than not asking a lot of questions, challenging them, not necessarily agreeing with them at times, but at the end of the day, after dialog and consensus move forward."). Additionally, Mr. Desai testified regarding the Debtors' business judgment at his December 3, 2021 deposition. Counsel to the RCAHC entered an appearance at that deposition, but did not ask any questions.

are addressed in Mr. Desai's declaration [D.I. 9279], and the RCAHC can ask Mr. Desai about them on cross-examination if it chooses.

*Second*, although the Objection purports to take issue with certain answers that Mr. Desai and Mr. Whittman gave during their depositions, it does not identify a single specific answer to which the RCAHC objects. The RCAHC thus fails to identify the grounds for its objection with specificity, as required. *See Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013) ("The movant bears the burden of demonstrating that the evidence is inadmissible on any relevant ground, and the court may deny a motion *in limine* when it lacks the necessary specificity with respect to the evidence to be excluded."); *United States v. Gibbs*, 739 F.2d 838, 849 (3d Cir. 1984) (finding that Federal Rule of Civil Procedure 103(a)(1) "requires that a timely objection or motion to strike must state the specific ground of objection") (citations omitted). Additionally, the Objection fails to attach transcripts from the depositions or even excerpts from those transcripts, depriving the Court of the ability to consider the challenged testimony in context.[4]

*Third*, despite alleging that Mr. Desai was improperly instructed not to answer the RCAHC's questions, the Objection fails to identify a single privilege instruction that the RCAHC alleges was improper. To the contrary, Mr. Desai was properly instructed not to answer the RCAHC's questions regarding the legal advice that the BSA had received and the parties' positions in mediation. *See* Desai Tr. at 77:22-78:2 (objecting to RCAHC's question regarding "advice you received from your advisors, including your legal counsel"); *id.* at 71:24-72:6 (objecting to question about plan provision proposed during mediation session).

---

[4] Transcripts for Mr. Desai's and Mr. Whittman's March 2, 2022 depositions are attached.

The RCAHC offers no basis for seeking that Mr. Desai divulge privileged information. The RCAHC does not contend that Mr. Desai placed attorney-client privileged information at issue or otherwise waived the privilege. *See Parker-Hannifin Corp. v. Seiren Co.*, 2009 U.S. Dist. LEXIS 26863, at *14-15 (D. Del. Mar. 31, 2009) (denying request for additional discovery after finding that the client "did not place any privileged information at issue, did not reference any attorney-client communication, and did not claim to rely on the advice of legal counsel"). Additionally, this Court has explicitly ruled that it has not abrogated mediation privilege except with regard to (i) TDPs, (ii) the Settlement Trust Agreement and (iii) the claims matrices. *See* Nov. 19, 2021 Hr'g Tr. at 45:12-46:7 ("[T]he focus was on the TDPs in my ruling . . . [and] the claims matrices, which are embedded in the TDPs, and even the settlement trust agreement . . . I did not go beyond that in my October ruling and I don't see a basis in what I've read and heard to broaden that ruling[.]")  The RCAHC did not ask any questions regarding the TDPs, Settlement Trust Agreement or claims matrices.  It therefore has no basis for demanding that the Debtors provide mediation privileged information in response to its questions.

Moreover, the RCAHC complains that "Mr. Whittman repeatedly points to mediation discussion as a basis to support the reasonableness of various settlements." Obj. ¶ 3.  But they cite to no paragraph in Mr. Whittman's declaration that identifies "views expressed or suggestions made by a party with respect to a possible settlement of the dispute…", nor could they, because no such paragraph exists. *Cf.* Del. Bankr. L. R. 9019-5(d)(i).  Mr. Whittman merely references the fact that a mediation occurred, and does not reference any views expressed by any party in that mediation.

Additionally, long after the expiration for filing *Daubert* motions, the RCAHC has moved to exclude opinions expressed in Mr. Whittman's report for unidentified reasons. *See*

8

Scheduling Order [D.I. 7996] at 2 (providing a deadline for motions *in limine* of February 10, 2022); Obj. ¶ 4. The RCAHC objects to paragraphs 229, 233-235, and 238-239 on unidentified grounds, which are insufficient to meet the high burden for the extreme remedy of preclusion. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791–92 (3d Cir. 1994) ("[T]he exclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence.") (citations omitted). Moreover, the testimony at issue is based on opinions disclosed in Mr. Whittman's updated expert report and addressed in his deposition testimony on December 7, 2021. *See* Updated Expert Report of Brian Whittman dated March 2, 2022, at 72, 74, and 76. The RCAHC asked no questions of Mr. Whittman regarding these issues during any of the five depositions that he has provided in this case. They should not be heard to complain now.

## CONCLUSION

The Debtors request that the Court overrule the RCAHC's objections.

AMERICAS 113564771

Dated: March 14, 2022
     Wilmington, Delaware

| | |
|---|---|
| WHITE & CASE LLP<br>Jessica C. Lauria (admitted *pro hac vice*)<br>Glenn M. Kurtz (admitted *pro hac vice*)<br>Andrew Hammond (admitted *pro hac vice*)<br>Samuel P. Hershey (admitted *pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Email: jessica.lauria@whitecase.com<br>       gkurtz@whitecase.com<br>       ahammond@whitecase.com<br>       sam.hershey@whitecase.com | */s/ Paige N. Topper*<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 351-9314<br>Email: dabbott@morrisnichols.com<br>       aremming@morrisnichols.com<br>       ptopper@morrisnichols.com |

– and –

WHITE & CASE LLP

Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: mandolina@whitecase.com
       mlinder@whitecase.com
       laura.baccash@whitecase.com
       blair.warner@whitecase.com

AMERICAS 113564771