Exhibit A



*Confidential*

Transcript of the Testimony of

**DEVANG DESAI**

March 09, 2022

**IN RE BOY SCOUTS AND DELAWARE BSA**

Reliable Court Reporting

Phone – 215-563-3363

Fax – 215-563-8839

www.reliable-co.com

1    IN THE UNITED STATES BANKRUPTCY COURT
     FOR THE DISTRICT OF DELAWARE
2

3                              CASE NO. 20-10343 (LSS)

4                              (Jointly Administered)

5    IN RE: CHAPTER 11
     BOY SCOUTS OF AMERICA AND
6    DELAWARE BSA, LLC,

7           Debtors.
     _____

8

9                    ***CONFIDENTIAL***

10

11         Remote videotaped deposition of DEVANG DESAI,

12    held via videoconference on Wednesday, March 9, 2022,

13    beginning at approximately 9:30 a.m. Eastern Time,

14    the proceedings being recorded stenographically by

15    Jennifer L. Wielage, Certified Realtime Reporter,

16    Certified Court Reporter-NJ, and transcribed under

17    her direction.

18

19

20

21

22                                    ORIGINAL

23

24

25

```
 1    A P P E A R A N C E S:

 2    MORRIS, NICHOLS, ARSHT & TUNNELL
      1201 North Market Street, 18th Floor
 3    Wilmington, Delaware 19899-1347
      BY:  SOPHIE ROGERS CHURCHILL, ESQ.
 4    srchurchill@morrisnichols.com
      Attorneys for the Debtor
 5
      --and--
 6
      WHITE & CASE, LLP
 7    1221 Avenue of the Americas
      New York, New York 10020
 8    BY: MICHAEL ANDOLINA, ESQ.
      mandolina@whitecase.com
 9    BY:  MICHAEL JAOUDE, ESQ.
      Mjaoude@whitecase.com
10    Attorneys for Boy Scouts of America

11
      NORTON ROSE FULBRIGHT US LLP
12    2200 Ross Avenue
      Suite 3600
13    Dallas, Texas 75201-7932
      BY:  MICHAEL BERTHIAUME, ESQ.
14    mberthiaume@nortonrose.com
      Attorneys for J.P. Morgan Chase Bank, N.A.
15
      CROWELL & MORING LLP
16    590 Madison Ave Floor 20
      New York, New York 10022
17    (212) 223-4000
      BY:  TACIE YOON, ESQ.
18    tyoon@crowell.com
      Attorneys for Zurich Insurance Company
19

20    COZEN O'CONNOR
      1201 Market Street, Suite 1001
21    Wilmington, Delaware 19801
      (302) 295-2000
22    BY:  MARLA BENEDEK, ESQ.
      mbenedek@cozen.com
23    Attorneys for Endurance

24

25
```

Page 3

```
 1    A P P E A R A N C E S:

 2    O'MELVENY
      Times Square Tower
 3    7 Times Square
      New York, New York 10036
 4    (212) 326-2000
      BY:  TANCRED SCHIAVONI, ESQ.
 5    tschiavoni@omm.com
      Attorneys for Century

 6

 7    ARENT FOX SCHIFF
      233 South Wacker Drive
 8    Suite 7100
      Chicago, IL 60606 USA
 9    (312) 258-5500
      BY:  NEIL LLOYD, ESQ.
10    nlloyd@afslaw.com
      Attorneys for Roman Catholic Ad Hoc Committee
11
      POST & SCHELL, P.C.
12    100 Overlook Center
      Suite 200
13    Princeton, NJ 08540
      (609) 924-3333
14    BY: KATHLEEN KERNS, ESQ.
      kkerns@postschell.com
15    Attorneys for Argonaut/Colony

16    YOUNG CONAWAY STARGATT & TAYLOR, LLP
      1000 N King Street
17    Wilmington, Delaware 19801
      (302) 571-6600
18    BY:  KEN ENOS, ESQ.
      kenos@ycst.com
19    Attorneys for Future Claimants Committee

20

21    PACHULSKI STANG ZIEHL & JONES
      780 3rd Avenue
22    34th Floor
      New York, New York 10017
23    (212) 561-7700
      BY:  JEFFREY L. SCHULMAN, ESQ.
24    jschulman@PasichLLP.com
      Attorneys for Tort Claimants Committee
25
```

IN RE BOY SCOUTS AND DELAWARE BSA

```
 1   A P P E A R A N C E S:

 2
     SIMPSON THACHER & BARTLETT LLP
 3   3330 Hillview Avenue
     New York, New York 10017
 4   (650) 251-5000
     BY:  DAVID ELBAUM, ESQ.
 5   Attorneys for Federal Insurance Company and
     Westchester Fire Insurance Company
 6

 7   GIBSON DUNN & CRUTCHER, LLP
     200 Park Avenue
 8   New York, New York 10166-0193
     (212) 351-3804
 9   BY:  JAMES HALLOWELL, ESQ.
     jhallowell@gibsondunn.com
10   BY:  AMANDA GEORGE, ESQ.
     ageorge@gibsondunn.com
11   Attorneys for AIG

12   GIEGER, LABORDE & LAPEROUSE, LLC
     701 Poydras Street
13   Suite 4800
     New Orleans, Louisiana 70139
14   (504) 561-0400
     BY:  JOHN E.W. BAAY, II, ESQ.
15   jbaay@glllaw.com
     Attorneys for Gemini Insurance Co.
16

17   CHIPMAN BROWN CICERO & COLE, LLP
     1313 North Market Street
18   Suite 5400
     Wilmington, Delaware 19801
19   (646) 741-1431
     BY:  MARK DESGROSSEILLIERS, ESQ.
20   mdegross@chipmanbrown.com
     Attorneys for Survivor Jane Doe
21

22   MOUND COTTON WOLLAN & GREENGRASS LLP
     30A Vreeland Road Suite 210
23   Florham Park, NJ· 07932
     (973) 494-0603
24   BY:  PAMELA MINETTO, ESQ.
     pminetto@moundcotton.com
25   Attorneys for Indian Harbor Insurance Company
```

IN RE BOY SCOUTS AND DELAWARE BSA

Confidential
DEVANG DESAI

Page 5

```
 1    A P P E A R A N C E S:

 2    COZEN O'CONNOR
      1201 N Market Street
 3    Suite 1001, Wilmington, Delaware 19801
      (302) 295-2000
 4    BY:  MARLA BENEDEK, ESQ.
      mbenedek@cozen.com
 5    Attorneys for Traders and Pacific Insurance,
      Endurance America Abuse Claimants
 6


 7
      REGER RIZZO & DARNALL LLP
 8    1521 Concord Pike #305
      Wilmington, Delaware 19803
 9    (302) 477-7104
      BY:  MEGAN HALTER, ESQ.
10    mhalter@regerlaw.com
      Attorneys for Travelers
11


12


13    POTTER ANDERSON
      Hercules Plaza
14    1313 North Market Street, 6th Floor
      P.O. Box 951
15    Wilmington, Delaware 19801
      (302) 984.6000
16    BY:  JEREMY RYAN, ESQ.
      jryan@potteranderson.com
17    BY:  JESSE NOA, ESQ.
      jnoa@potteranderson.com
18    Attorneys for Roman Catholic Ad Hoc

19


20    LOEB & LOEB, LLP
      321 North Clark Street
21    Suite 2300
      Chicago, IL 60654
22    BY:  EMILY STONE, ESQ.
      estone@loeb.com
23    BY:  LAURA K. McNALLY, ESQ.
      lmcnally@loeb.com
24    Attorneys for CNA

25
```

```
 1   A P P E A R A N C E S:

 2   ALVAREZ & MARSAL
     600 Madison Avenue
 3   New York, New York 10022
     (212) 759-4433
 4   BY:  RYAN WALSH, ESQ.
     Attorneys for BSA
 5

 6   KTBS LAW
     1801 Century Park East
 7   26th Floor
     Los Angeles, California
 8   BY:  SASHA M. GURVITZ, ESQ.
     sgurvitz@ktbs.com
 9   Attorneys for Pfau Cochran Vertesis Amala PLLC and
     Zalkin Law Firm, P.C

10

11

12
     ALSO PRESENT:  REBEKAH ROTHSTEIN, DOCUMENT
13   TECHNICIAN, CHRIS WEISS CALHOON, VIDEOGRAPHER, CHRIS
     MEIDL, DELIA LUJAN-WOLFF, Guam Bar Association
14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    I  N  D  E  X

 2

 3
         W I T N E S S
 4
      Testimony of:
 5

 6   DEVANG DESAI                      PAGE NO.

 7
      EXAMINATION BY MR. LLOYD:          9
 8    EXAMINATION BY MS.                125
      LUJAN-WOLFF:
 9

10

11
                   E X H I B I T S
12

13    NUMBER            DESCRIPTION            PAGE

14
      Exhibit 1    Roman Catholic Ad Hoc       11
15                 Committee's 30(b)(6)
                   Notice to the Debtors
16    Exhibit 2    Debtors' Amended Notice     14
                   of Deposition
17    Exhibit 3    Century Term Sheet          19
      Exhibit 4    Notice of Filing of         68
18                 Debtors' Third Modified
                   Fifth Amended Chapter 11
19                 Plan of Reorganization
                   and Blackline Thereof
20    Exhibit 5    Hartford Settlement        110
      Exhibit 6    Zurich Insurance           114
21                 Settlement Agreement
      Exhibit 7    Clarendon Insurance        117
22                 Agreement
      Exhibit 8    Century/Chubb Settlement   119
23                 Agreement

24

25
```

```
 1           DEPOSITION SUPPORT INDEX
        DIRECTION TO WITNESS NOT TO ANSWER
 2
                   Page Line
 3
                   34    8
 4                 43    25
                   73    25
 5                 78    2
                   83    4
 6
      REQUEST FOR PRODUCTION OF DOCUMENTS
 7
                   Page  Line
 8

 9
                  STIPULATIONS
10

11                Page   Line

12

13               QUESTION MARKED

14                Page   Line

15

16

17

18

19

20

21

22

23

24

25
```

1           THE VIDEOGRAPHER:  We are now

2  recording and on the record.

3           My name is Chris Weiss-Calhoon,

4  certified legal videographer, retained by Reliable

5  Court Reporting.

6           This is a video deposition in the

7  United States Bankruptcy Court for the District of

8  Delaware.

9           Today's date is March 9th, of 2022.

10  The time on the monitor is 8:07 a.m. Eastern Time.

11  The deposition's being held virtually and we have a

12  document technician today, Rebekah Rothstein, in the

13  matter and -- we're here in the matter of In Re:  Boy

14  Scouts of America and Delaware BSA, LLC.

15           The deponent is Devang Desai and the

16  attorneys will be on the stenographic record.

17           The court reporter is Jennifer

18  Wielage and will now administer the oath.

19  DEVANG DESAI, having been first duly sworn according

20  to law, testifies as follows:

21  EXAMINATION BY MR. LLOYD:

22      Q.   Good morning, Mr. Desai.  My name is

23  Neil Lloyd, and I'll be taking the lead today.  I

24  don't think we've met before.

**25      A.   Yes, sir.  Good morning to you.**

1        Q.        Good morning.  You're the same

2   individual who's testified several times in this

3   matter; is that correct?

4        **A.        I am, yes.**

5        Q.        So I'm not going to go over a lot of

6   different ground rules, but there's two things I'd

7   appreciate just getting out there before we get into

8   the substance.

9                The first is, as we've all become

10  more familiar with Zoom, I have found that the

11  standard thing of, sort of anticipating questions and

12  anticipating answers, has become more fluid.  When we

13  were new to this technology a couple of years ago,

14  that was a little bit more challenging.

15                So I want to say that I have seen

16  that sometimes I'm not completely sure when a witness

17  has finished an answer and so I'm going to try to

18  make sure that I don't talk over you.  If I do, I'm

19  not intending to, but we'll just try to make sure

20  that that's clear.

21                The second is, because of the nature

22  of the deposition that the Court has granted us, and

23  based on the discussions we've had with the Debtors'

24  counsel, it is conceivable that in this deposition

25  with you today, there may be more than the normal, I

1    would say, situation of objections, whether based on

2    mediation privilege, attorney-client privilege,

3    litigation work product.

4                   And so, in the same vein, I'll ask my

5    question, maybe we just, you know, take a short

6    breath because Mr. Andolina will need to make his

7    record, give you whatever instructions he has, so

8    that we have a clear record for the Court.

9                   And, of course, all the other rules

10   of the deposition apply:  If you need a break, if you

11   need anything else, we'll -- you know, you can do

12   that.

13                  If you don't understand a question,

14   please, you know, I'm not interested in setting you

15   up, tricking you or anything like that.  We're just

16   trying to get information here and it's entirely

17   conceivable I'll ask a couple of bad questions in

18   this deposition and that's not intentional.

19                  All right.  With that, if the

20   reporter would please put in the chat and mark as the

21   first exhibit, the Roman Catholic Ad Hoc Committee's

22   30(b)(6) Notice to the Debtors.

23                  It's dated January 13, 2022.

24                  (Exhibit 1, Roman Catholic Ad Hoc

25        Committee's 30(b)(6) Notice to the Debtors,

1          was marked for Identification by the court

2          reporter.)

3    BY MR. LLOYD:

4          Q.     All right.  Mr. Desai, and if you

5    could please -- well, let's keep it at the first page

6    here.

7               Mr. Desai, I'm showing you a

8    four-page document.  This was -- it's filed at Docket

9    No. 8295, and it's the Roman Catholic Ad Hoc

10   Committee's Notice of Deposition to Boy Scouts of

11   America and Delaware BSA, LLC, the Debtors, in these

12   Chapter 11 cases.  And this was filed on January the

13   13th of 2022.

14               If we could please go to the third

15   page and under Deposition Topics, the first one

16   reads:  The treatment of Claims of Chartered

17   Organizations under the Plan and Trust Distribution

18   Procedures.

19               Do you see that, sir?

20   **A.     I do.**

21               MR. ANDOLINA:  Mr. Lloyd, apologies.

22   Before you continue, the document that I'm working

23   off of is a document that was served on us, I believe

24   yesterday, which is the Second Amended Notice of

25   Deposition.

1           Is there a reason you're providing an

2  earlier version here?

3           MR. LLOYD:  There is, and I'll get

4  there and will be quick about it.

5           MR. ANDOLINA:  Okay.

6           MR. LLOYD:  All right.

7  BY MR. LLOYD:

8      Q.    So, Mr. Desai, are you being

9  designated by -- is it your understanding that you're

10 being designated by the Debtors today to testify

11 about this Topic 1, the treatment of claims of

12 Chartered Organizations under the Plan and Trust

13 Distribution Procedures?

14          MR. ANDOLINA:  Objection to form.

15 We're working off of, Mr. Lloyd, the Second Amended

16 Notice of Deposition and we've negotiated the topics

17 that Mr. Desai is going to be testifying about.  So I

18 don't know why you're asking about a prior deposition

19 notice that's been superseded.

20          MR. LLOYD:  It hasn't been superseded

21 and part of the negotiations were and the Court

22 specifically ordered a deposition on this topic and

23 I'm just making a record, Mr. Andolina.

24          If Mr. Desai is not the witness who's

25 going to be prepared to testify, I think he can

1   answer the question and we can move on.

2   BY MR. LLOYD:

3        Q.      So do you understand the question,

4   sir?

5        **A.      I do understand the question.**

6        Q.      And are you the witness who's been

7   designated to testify about this topic today?

8        **A.      I have been.**

9        Q.      You can take that down and we can

10  move now to the Debtors' Amended Notice of

11  Deposition, which is dated March the 8, 2022.

12              (Exhibit 2, Debtors' Amended Notice

13          of Deposition, was marked for Identification

14          by the court reporter.)

15              THE REPORTER:  So this is 2?

16              MR. LLOYD:  This is No. 2.  Thank

17  you.

18  BY MR. LLOYD:

19       Q.      Okay.  And Mr. Desai, I'm showing you

20  what has been marked as Exhibit 2.  This is the

21  Debtors' Notice of -- Second Amended Notice of the

22  30(b)(6) Deposition of the Debtors, the RCAHC's

23  Second Amended Notice of 30(b)(6) Deposition to the

24  Debtors.

25              MR. LLOYD:  And if we could scroll,

1  please, to Topic No. 10.  Two more pages, please.

2  There we go.  Right.  That's fine.

3  BY MR. LLOYD:

4       Q.     And Mr. Desai, Topic No. 10 reads:

5  The Debtors' understanding of and exercise of their

6  business judgment in agreeing to the following

7  paragraphs of the Century Term Sheet, 9, 10, 11, 13,

8  14 and 15, paren, as it relates to Chartered

9  Organizations, closed paren.

10            Do you see that, sir?

11      **A.     I do see it, yes.**

12      Q.     And I read that correctly?

13      **A.     You have read that correctly.**

14      Q.     And do you understand that you have

15  been designated by the Debtors today to testify about

16  Topic No. 10?

17            MR. ANDOLINA:  Objection to the form

18  of the question and before the witness answers,

19  pursuant to our negotiations and my discussion with

20  counsel, Mr. Desai will be testifying today on Topics

21  10, 11, 12, 13 and 14, with respect to the Debtors'

22  exercise of their business judgment.

23            We have informed the RCAHC that we

24  will produce a different witness, to the extent there

25  are questions that relate to the Debtors', quote,

1  understanding with respect to those one, two, three,

2  four, five categories.

3            So the witness can answer but that's

4  what he's been prepared to testify on.

5       **A.     Yes.**

6  BY MR. LLOYD:

7       Q.     And subject to all appropriate

8  objections, you are prepared today to testify about

9  Topic No. 10?

10      **A.     I am.**

11      Q.     And just so the record is clear,

12  Mr. Andolina is correct, we were informed, about 7:45

13  eastern, that testimony would be limited to the

14  exercise of business judgment today and that a

15  separate witness on Friday would be testifying about

16  the Debtors' understanding.

17            Okay.  If we can move to Topic No.

18  11 -- we're still on Exhibit 2, please.  If we can

19  have that on the screen.  Thank you.

20            So that we don't have to belabor the

21  point, Mr. Desai, and I assume, given Mr. Andolina's

22  prior comment, what I'm going to do is limit my

23  question in terms of your preparation and your

24  designation for the next four that we go through,

25  that your testimony is limited to the exercise of

1  business judgment and it's not about the Debtors'

2  understanding.  All right?

3       **A.     Fair enough.**

4       Q.     Okay.  So I'm going to read the

5  question because that's going to just read it into

6  the record but we understand the limitation that

7  Counsel has made in his objection.

8            Okay.  So Topic 11 is the Debtors'

9  Understanding and Exercise of their Business

10 Judgment, including the following provisions of the

11 February 15, 2022 Plan, including all revisions to

12 prior versions of such provisions, Article I-A

13 Section 42, 45, 59, 86, 177, 184, 196, 215 and 269

14 and 294, Article IV-S, as in Sam, and W, as in water;

15 Article V, M, as in Mary and S, as in Sam, Article X,

16 D, as in David, F, as in Frank, G, as in George, H,

17 as in hot, J, as in jelly.  The Document Appendix as

18 it relates to Chartered Organizations and the Trust

19 Distribution Procedures (as it relates to Chartered

20 Organizations).

21            Do you see that, sir?

22      **A.     I do.**

23      Q.     And subject to the limitations that

24 your Counsel has put on the record, you're prepared

25 to testify today on those topics, in respect to the

1   exercise of the Debtors' Business Judgment?

**2**      A.      I am.

3      Q.      If you look at Topic 12, it reads:

4   The Debtors' understanding and exercise of their

5   business judgment in entering into the Hartford

6   Insurance Settlement Agreement as it relates to

7   Chartered Organizations, the Hartford Insurance Term

8   Sheet, as it relate is to the Chartered Organizations

9   and the Hartford Insurance Draft Agreement (as it

10  relates to Chartered Organizations).

11              Do you see that, sir?

**12**     A.      Yes.

13     Q.      And subject to the limitation that

14  your counsel has made, you're prepared today to

15  testify about the Debtors' exercise of their business

16  judgment in respect to Topic No. 12?

**17**     A.      I am.

18     Q.      We'll look at Topic No. 13.  It

19  reads:  The Debtors' understanding and exercise of

20  their business judgment in entering into the

21  Clarendon Insurance Settlement Agreement, as it

22  relates to the Chartered Organizations and the

23  Clarendon Insurance Settlement Term Sheet, as it

24  relates to Chartered Organizations.

25              Did I read that correctly, sir?

1      A.      Yes.

2      Q.      And again, subject to the limitation

3  that your counsel has put on the record, you're

4  prepared today to testify about the Debtors' exercise

5  of their business judgment in respect to Topic 13?

6      A.      I am.

7      Q.      I'm sorry.  I didn't hear your

8  answer.

9      A.      I am.

10     Q.      And finally, Topic 14 reads:  The

11  Debtors' understanding and exercise of their business

12  judgment in entering into the Zurich Insurance

13  Settlement Agreement as it relates to Chartered

14  Organizations and the Zurich Insurance Term Sheet as

15  it relates to Chartered Organizations.

16          Do you see that, sir?

17     A.      Yes.

18     Q.      And subject to the limitation your

19  counsel has put on the record, are you prepared to

20  testify today as to the exercise of the Debtors'

21  business judgment in respect to Topic No. 14?

22     A.      I am.

23          MR. LLOYD:  If can we please mark as

24  Exhibit 3, the Century Term Sheet.

25          (Exhibit 3, Century Term Sheet, was

Page 20

```
 1          marked for Identification by the court

 2          reporter.)

 3   BY MR. LLOYD:

 4          Q.     Just so you see -- to orient you,

 5   Mr. Desai, so this -- the Century Term Sheet was

 6   attached to a mediator's report and the -- so this

 7   document at the beginning says -- it has a document

 8   identification number of 7772.

 9                 We're going to scroll through,

10   although it says page 1 of 3, the Century Term Sheet

11   is an attachment.  So if we can scroll through,

12   please, a few pages.

13                 If we can just go back one page here

14   to this top exhibit where it says Exhibit A.  Okay.

15                 So Mr. Desai, you can see there's a

16   header at the top here and it's dated December 14,

17   2021.

18                 Are you with me?

19          A.     I am.

20          Q.     And it says Exhibit A, Century and

21   Chubb Companies Term Sheet.

22                 Do you see that, sir?

23          A.     Yes.

24          Q.     Okay.  If we can keep scrolling

25   through, please.
```

1                    We are going to go to Paragraph 9.

2    So this is a lengthy paragraph, but you've seen this

3    before today; is that correct, sir?

4         **A.      I have, yes.**

5         Q.      Is it the Debtor's position that in

6    agreeing to Paragraph 9, which is entitled:  Release

7    of Settling Insurers in the Century Term Sheet,

8    Debtors validly exercise their business judgment?

9                    MR. ANDOLINA:  Objection to form.

10   You can answer.

11        **A.      Yes, that is the Debtors' position.**

12   BY MR. LLOYD:

13        Q.      Please explain why Debtors validly

14   exercise their business judgment in agreeing to

15   Paragraph 9 in this release of Settling Insurers in

16   the Century Term Sheet.

17        **A.      While the negotiations were taking**

18   **place with various parties, including Century/Chubb,**

19   **counsel for the Debtors had provided several updates**

20   **to the Bankruptcy Task Force, along with the National**

21   **Executive Committee and the National Executive Board**

22   **of the Boy Scouts of America and in actively**

23   **providing us with real-time information, providing us**

24   **with the efforts that are being made to secure**

25   **agreements with various insurers prior to an upcoming**

1    plan filing deadline, and at this time, prior to a

2    deadline on the vote that was needed for survivors of

3    historical abuse, coupled with the various parameters

4    that the BSA, through the Bankruptcy Task Force, the

5    bankruptcy -- I'm sorry, the National Executive

6    Committee and the National Executive Board, our

7    counsel were instructed to continue to negotiate with

8    insurers like Century/Chubb in order to effectuate a

9    meaningful resolution that would allow for additional

10   dollars to be placed into the Settlement Trust to,

11   again, achieve one of the BSA's principal objectives,

12   which is to equitably compensate all the victims of

13   sexual abuse.

14        Q.     And are you, as you sit here today,

15   without getting into privileged communications with

16   your counsel, able to provide any additional

17   information about the information that the Bankruptcy

18   Task Force or the National Executive Committee

19   received as part of the exercise of the Debtors'

20   business judgment in agreeing to Paragraph 9?

21              MR. ANDOLINA:  Objection to form.

22        A.     On a very generic high level, without

23   getting into attorney-client related communications,

24   I can share with you that counsel for the Debtors

25   along with -- and when I say "counsel," I not only

1    mean bankruptcy counsel, but also insurance counsel

2    with Haynes and Boone along with other advisors that

3    the BSA has in this process.

4                    Furthermore, in consultation with the

5    Ad Hoc Committee on local councils headed up by

6    Mr. Mason, there were several conversations related

7    to various pros, cons, options as to what needed to

8    occur from a negotiation perspective in order to get

9    Century/Chubb to the table and how other non-settling

10    entities, such as certain Chartered Organizations

11    would be treated if they were not participating in

12    negotiations that were actively taking place at this

13    time, because as you will recall, at this juncture,

14    in December of 2021, the BSA, along with the

15    Coalition and the FCR had already effectuated a

16    resolution with the Hartford, but that resolution

17    contemplated the ability of the Debtor and other

18    settling parties to continue to work in good faith to

19    ensure adequate protection for various and, in fact,

20    all Chartered Organizations.

21                    So there were conversations related

22    to the interplay, if you will, of prior settlements,

23    the interplay and the need for continuing to

24    negotiate to secure additional dollars in order to

25    equitably compensate victims of abuse, how Chartered

IN RE BOY SCOUTS AND DELAWARE BSA

1    Orgs would be treated under this type of settlement

2    agreement and/or the terms of it that were being

3    negotiated, along with who would be a settling party

4    that would join in these discussions in order to

5    effectuate a formal settlement, what that would mean

6    to the overall timeline, if you will, for emergence

7    and/or a confirmation hearing for the BSA and how

8    this could continue to, like the Hartford Agreement,

9    serve as a building block for allowing other parties

10   to be a Settled Party.

11        Q.      If we could scroll to the next page,

12   please.

13             Mr. Desai, I'm showing you Paragraph

14   10 of Exhibit 3, which is a paragraph that carries

15   over on to the next page, but the heading here is:

16   Participating Chartered Organizations.

17             And are you familiar with this

18   paragraph of Exhibit 3 of the Century Term Sheet?

19        A.      I am generally familiar with it, yes.

20        Q.      Is it your understanding that

21   participating Chartered Organizations and Opt-Out

22   Chartered Organizations received different treatment

23   under the Century Term Sheet?

24             MR. ANDOLINA:  Objection to the form

25   as outside the scope of the 30(b)(6).  He can answer

1    in his individual capacity.

2         A.       As I understand it, the definitions

3    associated with a participating Chartered

4    Organization versus an Opt-Out Chartered Organization

5    or a contributing charter organization are different

6    and our advisors did provide us with thorough

7    information, as well as certain presentations about

8    the various differences that Chartered Orgs,

9    depending on the label you attach, whether it's

10   participating, contributing or opt-out, would receive

11   under the plan.

12                 And I also recall that Ms. Lauria

13   provided that kind of education information to the

14   Court at a hearing that I participated in via phone,

15   and I recall that there's also a PowerPoint

16   presentation that Ms. Lauria showed to the Court,

17   which helped illustrate the interim in which the

18   various Chartered Orgs would be treated depending on

19   their designation.

20        Q.       What contribution does a

21   participating Chartered Organization have to make to

22   receive the benefits in the Century Term Sheet?

23                 MR. ANDOLINA:  Objection to form.

24   Same objection with respect to scope and I'll just

25   have that as an ongoing objection to questions that

1    are beyond the business limitation.

2         A.       A Participating Chartered

3    Organization is one by its very definition as

4    indicated in the document, that does not object to

5    the Debtors' plan of reorganization and, in so doing,

6    the Participating Chartered Organization would

7    receive a release, depending on what timeframe we're

8    talking about, for claims associated with sex abuse.

9              For example, claims associated on a

10   pre-'76 timeframe, the participating Chartered

11   Organization would receive a release as it pertained

12   to Settling Insurers for Abuse Claims only and for

13   post-'76, the participating Chartered Organization

14   would receive the benefit of the channeling

15   injunction, which would provide them with the

16   release.

17        Q.       If we look in Paragraph 10 toward the

18   bottom -- and we can read as much of this as you want

19   for context -- but if we look down toward the bottom,

20   there's Romanette i, about seven lines from the

21   bottom that begins:  Romanette i, each of the

22   Participating Chartered Organization's rights.

23              Do you see that?

24   A.       I do.

25        Q.       So I'm going to read that section

1  again.  If there's more that you need for context,

2  we'll go back.

3            It says:  Each of the participating

4  Chartered Organization's rights, titles, privileges,

5  interests, claims, demands or entitlements under the

6  Settling Insurers' Policies and any other insurance

7  policy issued by the Settling Insurers with respect

8  to claims for causes of action involving abuse claims

9  concerning such coverage for Abuse Claims.

10           So -- and, you know, I'm going to

11  withdraw that question, Mr. Desai, and I apologize.

12  I'm going to try again.

13           If we go up a few more lines, it

14  says, starting "in addition."

15           Do you see where I'm reading there,

16  in the middle of the paragraph?

17     A.     Bear with me one second.  I do, yes.

18     Q.     It says:  In addition, in order to

19  obtain the benefit of 1, the Settling Insurer policy

20  injunction and 2, the full post-'75 injunction,

21  Participating Chartered Organizations shall be

22  required to make, or be deemed to make, the following

23  contribution to the Trust, defined term,

24  Participating Chartered Organization Settlement

25  Contribution, colon, A, the participating

1   organization Insurance Assignment; B, to the extent

2   of any rights, claims or interests not assigned to

3   the TRUST pursuant to the Participating Chartered

4   Organization Insurance Assignment, the waiver and

5   complete release of, i, each of the Participating

6   Chartered Organization's rights, titles, privileges,

7   interests, claims, demands or entitlements under the

8   Settling Insurers' Policies and any other insurance

9   policy issued by the settling insurers with respect

10  to claims or causes of action involving abuse claims

11  concerning such coverage for abuse claims.

12          Do you see that sir?

13      **A.      Yes, sir.**

14      Q.      And I read that correctly?

15      **A.      You have.**

16      Q.      Okay.  So Romanette i, which we've

17  talked about, lists policies for that -- it says:

18  Settling Insurer policies.

19          Do you have an understanding that

20  those policies referred to policies of the BSA and

21  the local councils?

22          MR. SCHIAVONI:  Objection to form.

23          MR. ANDOLINA:  Same objection.  I'll

24  also object on scope.

25      **A.      My understanding of a Participating**

1    Chartered Organization and what this document, as

2    you've read, indicates is that a Participating

3    Chartered Organization would receive the benefit of a

4    release or the channeling injunction for claims

5    strictly limited to abuse -- scouting-related Abuse

6    Claims and a Chartered Organization would not, does

7    not, will not, lose any of its other insurer rights

8    for any policy, for any claim that is not defined to

9    be a scouting-related Abuse Claim.

10         Q.        If we go to Romanette ii, which

11    carries over, and again, the predicate here is the

12    earlier language that said:  In addition, in order to

13    obtain the benefit of the Settling Insured policy

14    injunction and the full post-1975 injunction,

15    Participating Chartered Organizations shall be

16    required to make or be deemed to make, and then we

17    just talked about No. i.

18              Romanette ii says:  Any claim held by

19    the Participating Contributing Chartered Organization

20    that is attributable to or arises from is based upon,

21    relates to or results from -- and if we could see if

22    we can scroll a little bit so we have both that text

23    and the next:  Thank you, in whole or in part,

24    directly, indirectly, derivatively, including through

25    any insurance policy issued by the Settling Insurers,

Page 30

1    alleged abuse claims that occurred prior to the

2    petition date against the Settlement Trust, the

3    Debtors, reorganized BSA, the local councils, any

4    contributing Chartered Organization or Settling

5    Insurers.

6              So this phrase, "any other policy

7    issued by a Settling Insurer" -- "to any insurance

8    policy issued by a Settling Insurers," I beg your

9    pardon; what's your understanding of what that phrase

10   refers to?

11             MR. ANDOLINA:  Objection to form.

12             MR. SCHIAVONI:  Objection to form.

13             MR. ANDOLINA:  And it's outside the

14   scope of the witness's testimony and I'm going to

15   instruct him not to answer.

16             As I said, Mr. Lloyd, we will produce

17   a witness to answer questions or make objections to

18   questions that relate to the Debtors' understanding,

19   but this witness is a volunteer board member.  So

20   asking him the Debtors' understanding of a superceded

21   term sheet is not an effective use of anyone's time.

22   BY MR. LLOYD:

23        Q.    Is it your testimony, Mr. Desai, that

24   in entering into Paragraph 10 of the Century Term

25   Sheet, Exhibit 3, that the Debtor validly exercised

1    its business judgment?

2         A.         Absolutely.

3         Q.         Please tell us the basis for that.

4         A.         I will defer you, Mr. Lloyd, to my

5    prior answer a few months ago concerning how the

6    Debtor came to authorize the entry into this

7    agreement.

8              I would also add on to there that

9    based upon conversations with our counsel,

10   considering all of the other factors that I had

11   previously laid out and based upon various

12   conversations held by, not only the Bankruptcy Task

13   Force, our National Executive Committee and the

14   board, we felt that it was the right thing to do to

15   enter into this agreement with Century/Chubb.

16             MR. LLOYD:  If you could scroll up

17   again to the title for Paragraph 10, please, in

18   Exhibit 3.  Thank you.

19   BY MR. LLOYD:

20        Q.    So again, Mr. Desai, this title on

21   Paragraph 10 is:  Participating Chartered

22   Organizations.

23             You see that, correct?

24        A.    Yes, sir.

25        Q.    Can we agree that Paragraph 10, by

1   definition, doesn't apply to Opt-Out Chartered

2   Organizations?

3                    MR. ANDOLINA:  Objection to form.

4        **A.        I believe, just looking at this**

5   **document, it's solely discussing what a participating**

6   **Charter Org is.**

7        Q.        Are you aware of any requirement,

8   under this Term Sheet, that an Opt-Out Chartered

9   Organization, make an insurance assignment similar to

10  the insurance assignment that we were just discussing

11  for Participating Chartered Organizations?

12                    MR. ANDOLINA:  Objection to form.

13       **A.        I would ask if you could just pull**

14  **that provision up so I can look at it and be happy to**

15  **answer your question if I can.**

16       Q.        Absolutely.

17                    MR. LLOYD:  Let's scroll down,

18  please.  Couple more.  There we go, to Paragraph 13.

19  Thank you.  That's great.

20  BY MR. LLOYD:

21       Q.        Mr. Desai, I'm showing you Paragraph

22  13 of Exhibit 3, which has the title:  Opt-Out

23  Chartered Organization.

24                    You were previously discussing the

25  assignment that Paragraph 10 requires for

1  Participating Chartered Organizations and so my

2  question, again, with Paragraph 13 in front of you

3  now, for Opt-Out Chartered Organizations, are you

4  aware of any requirement that an Opt-Out Charter

5  Organization make a similar assignment of insurance?

6                  MR. ANDOLINA:  Objection to form.

7       A.       **The document doesn't speak to that at**

8  **this provision, Section 13.**

9  BY MR. LLOYD:

10      Q.       When you say the document doesn't

11 speak to it, does it say anything in Paragraph 13

12 about requirements for an Opt-Out Chartered

13 Organization to make an assignment of insurance

14 rights?

15                 MR. ANDOLINA:  Objection to form.

16      **A.       It does not say anything about an**

17 **Opt-Out Chartered Organization waiving their**

18 **insurance rights subject to the very nature of what**

19 **an Opt-Out Chartered Organization.  They're an entity**

20 **that is objecting to the Plan and the only benefit**

21 **that they are receiving, based upon negotiations from**

22 **various parties, including certain chartered**

23 **partners, is a limited release based upon what a**

24 **settled insurer is contributing and an Opt-Out**

25 **Chartered Organization is not losing any of its**

1    insurance rights as it relates to any other type of

2    claim that is not a scouting-related abuse claim.

3           Q.     Why is it necessary for Participating

4    Chartered Organizations to make the assignment of

5    independent insurance coverage?

6                  MR. ANDOLINA:  Objection to form;

7    beyond the scope, calls for a legal conclusion and

8    I'm going to instruct him not to answer.

9    BY MR. LLOYD:

10          Q.     Whose decision, Mr. Desai, was it, to

11   not ask for an assignment of Opt-Out Chartered

12   Organizations of their insurance rights?

13                 MR. ANDOLINA:  Objection to form.

14                 MR. SCHIAVONI:  I'll object to form

15   also.

16          A.     My understanding of this Agreement or

17   this Term Sheet, as you're showing me, is based upon

18   active negotiations between various parties and what

19   I can tell you is that -- as a member of the

20   bankruptcy task for, the NEC and the Board, our

21   advisors thoroughly provided us with information

22   related to the negotiations.

23                 But we, as a Bankruptcy Task Force,

24   NEC and Board, authorized our advisors to negotiate

25   in the best interest of the organization, and in an

1  effort to equitably compensate all victims of abuse,

2  such that what you see before you today in the

3  Century Term Sheet is a product of very active

4  negotiations amongst the parties to this agreement.

5       Q.      If we can go back to Paragraph 9,

6  please.  And toward the bottom, yeah, that's great.

7  Thank you.  Actually, if you can scroll up just a

8  little bit more, please.  I'm sorry, I misspoke.  If

9  you could scroll down just a little bit more, please.

10  Thank you.

11             We can agree, Mr. Desai, that

12  Paragraph 9 requires Participating Chartered

13  Organizations to release Settling Insurers, correct?

14             MR. ANDOLINA:  Objection to form.

15       A.      I believe the document indicates what

16  a participating Chartered Organization is required to

17  do.  I don't necessarily believe that the document

18  requires them to give up, broadly, all of their

19  rights for any and everything.

20       Q.      I appreciate that clarification, sir.

21             The release is for abuse policies,

22  correct?

23             MR. ANDOLINA:  Objection to form.

24       A.      The release would be for any

25  scouting-related abuse claim.

 1                    MR. LLOYD:  And if we can scroll up

 2    just a little bit more, please.  Thank you.

 3                    Just a little bit more.  Thank you.

 4          Q.        And if we look at b in the release,

 5    Mr. Desai, part of what is being released is any

 6    other insurance policy issued by the Settling

 7    Insurers covering claims or causes of action for

 8    abuse claims with respect to such coverage for Abuse

 9    Claims.

10                    Do you see that, sir?

11                    MR. ANDOLINA:  Objection to form.

**12          A.        I do see that language, yes, sir.**

13    BY MR. LLOYD:

14          Q.        And are you aware of any similar

15    requirement that an Opt-Out Chartered Organization

16    give this kind of release?

17                    MR. ANDOLINA:  Objection to form.

**18          A.        Again, I would defer to the terms of**

**19    the document.**

20    BY MR. LLOYD:

21          Q.        If we could turn to Paragraph 11,

22    please.  It's a few paragraphs down.

23                    It's entitled:  Protection

24    Afforded -- I beg your pardon, Protections Afforded

25    to Insureds and Coinsureds and it says:  On the

Page 37

1    Release Date, all abuse claims against insureds and

2    coinsureds covered under insurance policies issued by

3    the Settling Insurers shall be channeled under the

4    Settling Insurer Policy Injunction and released.

5    Pending the occurrence of the Release Date, all such

6    Abuse Claims shall be enjoined pursuant to the

7    post-petition interim injunction as provided herein.

8            Do you see that, sir?

9        A.    I do.

10        Q.    And it's the Debtors' position that

11    in agreeing to Paragraph 11 of the Century Term

12    Sheet, the Debtors validly exercised their business

13    judgment; is that correct?

14        A.    Yes, it is.

15        Q.    And I appreciate your answers in

16    respect to Paragraphs 9 and 10.

17            Do you have anything to add in

18    respect to the exercise of the Debtors' Business

19    Judgment as it respects Paragraph 11?

20        A.    No, sir.  I would defer to my prior

21    answers.

22        Q.    If we could go to Paragraph 13,

23    please.  So Paragraph 13, Mr. Desai is called:

24    Opt-out Chartered Organizations.

25            Do you see that?

1      A.      I do.

2      Q.      And is it your testimony that the

3  Debtors validly exercised their business judgment in

4  entering into Paragraph 11 -- 13 -- I beg your

5  pardon.  Let me withdraw that question.

6              Is it your testimony, sir, that the

7  Debtors validly exercised their business judgment in

8  agreeing to Paragraph 13 of the Century Term Sheet.

9      A.      Yes, it is.

10     Q.      And as with your prior answers to --

11  that we've discussed in Paragraphs 9 and 10, do you

12  have anything to add with respect to the Debtors'

13  exercise of its business judgment concerning

14  Paragraph 13?

15             MR. ANDOLINA:  Objection to form.

16     A.      The only thing I would add,

17  Mr. Lloyd, as it relates to this particular provision

18  for opt-outs is that because negotiations continued

19  well beyond the entry into the Century Term Sheet,

20  there was a pathway that was allowed for within these

21  documents, particularly the Century Term Sheet, just

22  like in the Hartford Settlement Agreement, that

23  allowed for parties to continually work in good faith

24  to ensure support for the Plan, along with providing

25  additional contributions to the Trust to equitably

1   compensate victims and if an entity was an Opt-Out

2   Chartered Org, they had a pathway available to them

3   through continuing negotiations beyond this date of

4   December 14, 2021, in which they could become a

5   contributing or a Participating Chartered Org subject

6   to the conditions that are specified in this

7   provision.

8         Q.      And what would be required for them

9   to become a Participating Chartered Organization, if

10  they had been an Opt-Out Chartered Organization?

11              MR. ANDOLINA:  Objection to form.

12        A.      As indicated here, there would need

13  to be a financial contribution as well as certain

14  assignments and releases as indicated in Sections 9

15  and 10 of this document and they would also then be a

16  party that would not be objecting to the plan of

17  confirmation as filed.

18  BY MR. LLOYD:

19        Q.      And the financial contribution that

20  you mentioned, that's something that would either

21  have to be made by the Participating Chartered

22  Organization or on its behalf?

23        A.      That would be correct.

24              MR. ANDOLINA:  Objection to the form

25  of the question.

1   BY MR. LLOYD:

2          Q.     And is it the Debtors' position that

3   the deemed assignment of additional insured rights of

4   a Participating Chartered Organization, in policies

5   issued to the local councils by Settling Insurers,

6   would be an insufficient contribution?

7              MR. ANDOLINA:  Objection to the form

8   of the question; scope.  Calls for a legal

9   conclusion.

10             MR. SCHIAVONI:  Objection to form.

11         **A.     I would answer that question,**

12   **basically, saying that if a Chartered Organization**

13   **wanted to become a participating or contributing**

14   **Chartered Org, the rights that they would be giving**

15   **up are solely limited to any settled insurer rights**

16   **pertaining to a scouting-related abuse claim.**

17         Q.     I appreciate that answer, sir.  My

18   question was a little different.

19             Is it the Boy Scout's position that

20   the additional insured rights that a Chartered

21   Organization has, excuse me, in local council

22   policies, that those rights -- I beg your pardon --

23   that those rights have no value?

24             MR. ANDOLINA:  Objection to form.

25             MR. SCHIAVONI:  Objection to form.

1          **A.      I -- I don't understand your**

2    **question, but I don't believe that is an accurate**

3    **statement.**

4    BY MR. LLOYD:

5          Q.      So the -- so the Debtors believe that

6    the additional insured rights that Chartered

7    Organizations have in local council policies have

8    value?

9                    MR. ANDOLINA:  Objection to the form;

10   beyond -- clearly beyond the scope of 30(b)(6)

11   testimony.

12                   You can answer to the extent you can

13   on an individual basis.

14        **A.      I think that any additional insured**

15   **has certain rights under a contract and I would defer**

16   **to the terms and conditions of that contract.**

17   BY MR. LLOYD:

18        Q.      Right.  Well, you previously

19   disagreed with me, sir, when I said:  Is it the

20   Debtors' position that those additional insured

21   rights have no value, and so --

22                   MR. SCHIAVONI:  Objection to form.

23                   MR. LLOYD:  I haven't finished my

24   question.

25                   MR. SCHIAVONI:  Oh, I thought you

1   were testifying.

2              MR. LLOYD:  I'll let you object.

3   Please, I'll try again.

4   BY MR. LLOYD:

5       Q.     Mr. Desai, you previously testified

6   that you disagreed that the additional insured rights

7   that Chartered Organizations have in in local council

8   policies, you disagreed that those rights had no

9   value.

10              Do you recall that testimony?

11              MR. SCHIAVONI:  Objection to form;

12   mischaracterizes the prior testimony.

13              MR. ANDOLINA:  Same objection.

14       A.     Mr. Lloyd, I don't believe I

15   specifically agreed with that statement.

16              What I said was that any Chartered

17   Organization that is an opt-out, has a pathway which

18   they can become a contributing or participating

19   organization and that the only things that they would

20   be waiving, releasing, would be their rights

21   associated with a scouting-related abuse claim.  And

22   so if you would like a -- in terms of your question

23   or statement about value, my response to that is,

24   again, there is value in the type of rights that an

25   entity would have vis-a-vis the contract.

1   BY MR. LLOYD:

2         Q.     So the sentence that I'd like to

3   focus on in Paragraph 13 of Exhibit 3 says:  No

4   Chartered Organization that is an Opt-Out Chartered

5   Organization may become a Contributing Chartered

6   organization, unless, (a), a financial contribution

7   is made by or on behalf of such Opt-Out Chartered

8   Organization.

9               Do you see that, sir?

**10        A.     Yes.**

11        Q.     And so my question to you is:  Is it

12  the Debtors' position that the foregoing of

13  additional insured rights in local council policies,

14  would count under this paragraph as a financial

15  contribution?

16              MR. ANDOLINA:  Objection to form.

17  It's an inappropriate hypothetical.  It also only

18  identifies one provision of three in the specific

19  paragraph that you're referring to.

20              MR. SCHIAVONI:  Objection to form.

21              MR. ANDOLINA:  It's also far beyond

22  the scope of this Notice.

23              THE DEPONENT:  Do you want me to

24  answer?

25              MR. ANDOLINA:  No.

1              MR. LLOYD:  You're instructing him

2  not to answer the question?

3              MR. ANDOLINA:  Can you reask the

4  question in a non-objectionable way?

5      Q.      Did you understand the question, sir?

6              MR. ANDOLINA:  Why don't you read it

7  back?  Can the court reporter, please read it back?

8              (Designated question was read back.)

9              MR. ANDOLINA:  Same objection to form

10  and scope.

11     **A.      So my -- my understanding of that**

12  **statement is that this provision specifically asked**

13  **for a financial contribution.**

14  BY MR. LLOYD:

15     Q.      And so your understanding is that a

16  financial contribution would be money above and

17  beyond any value that was placed on additional

18  insured rights that Chartered Organizations might

19  have in local council policies; is that correct?

20             MR. ANDOLINA:  Same objection.

21             MR. SCHIAVONI:  Object to the form.

22             MR. ANDOLINA:  With respect to scope

23  and form, but you can answer, on an individual basis.

24     **A.      I think you can't look at this**

25  **provision or this one -- this one word in a vacuum,**

1    Mr. Lloyd.

2                You have to consider what exactly the

3    Chartered Organization is seeking to obtain a full

4    release for, number one.

5                Number two, what timeframe the

6    Chartered Organization is seeking to receive a

7    release for.  And given that set of precursors, it

8    may be required that in addition to the rights that a

9    settling insurer is contributing to the Trust on

10   behalf of a Chartered Organization, which is also a

11   beneficiary of a release for that scouting-related

12   abuse claim, if a Chartered Organization wants to

13   receive a full and complete release for any

14   scouting-related abuse claim that is not affiliated

15   with a settling insurer, there might need to be

16   additional negotiations on terms, be it financial or

17   otherwise, that would need to be arrived at for an

18   Opt-Out Chartered Organization to obtain a free and

19   clear or full release for any liabilities associated

20   with them.

21        Q.     Can the Debtors exercise in its

22   business judgment and agreeing to entering into the

23   Century Term Sheet, if the Debtor presented with any

24   analysis that valued the additional insured rights

25   that a participating Chartered Organization would be

1    giving up by becoming a participating Chartered

2    Organization the rights in additional -- to

3    additional insurance in the local council policies?

4                    MR. ANDOLINA:  Objection to the form;

5    compound.

6                    MR. SCHIAVONI:  It's outside the

7    scope of the notice.

8                    THE REPORTER:  What's that?

9                    MR. SCHIAVONI:  I object that it's

10   outside the scope of the notice.

11        **A.       I don't understand your question,**

12   **Mr. Lloyd.  So if you wanted to reask it and/or break**

13   **it down, I'm happy to give it a try.**

14   BY MR. LLOYD:

15        Q.       Thank you, Mr. Desai.

16                 So you previously testified that

17   you've been designated by the Debtors to testify

18   about the Debtors' exercise of its business judgment

19   in agreeing to enter into the Century Term Sheet.

20                 You recall that testimony?

21   **A.       Yes, sir.**

22        Q.       And that exercise of business

23   judgment, you've testified extended to the Debtors'

24   Agreement to Paragraph 13 of Exhibit 3, the Century

25   Term Sheet; is that correct?

1                MR. ANDOLINA:  Objection to form.

2        **A.        While I didn't specifically say the**

3   **business judgment extended to a particular provision,**

4   **what I did say is that we exercised business judgment**

5   **in evaluating taking into account all the advice we**

6   **had received from our professional advisors and based**

7   **upon input from the various parties, including**

8   **Chartered Organizations and the ad hoc group of local**

9   **councils, we authorized our advisors to use their**

10  **best efforts to negotiate a resolution.**

11       Q.        And it's your testimony today, sir,

12  that the Debtors' Agreement to Paragraph 13 of the

13  Century Term Sheet was a valid exercise of the

14  Debtors' business judgment; is that correct?

15               MR. SCHIAVONI:  Objection to form.

16               MR. ANDOLINA:  Objection to form.

17       **A.        Again, taking the entire Term Sheet**

18  **into account as the total deal, yes.**

19  BY MR. LLOYD:

20       Q.        In looking at the second sentence of

21  Paragraph 13, which says that no Chartered

22  Organization is an Opt-Out Chartered Organization may

23  become a contributing Chartered Organization unless,

24  and it has three conjunctive requirements.  You need

25  to meet all three of these requirements.

1              The first is, (a), the financial

2   contribution is made by or on behalf of such Opt-Out

3   Chartered Organization.

4              Do you see that, sir?

5       **A.      Yes.**

6       Q.      So my question to you is:  In

7   receiving information that the Debtors evaluated in

8   exercising their business judgment to enter into the

9   Century Term Sheet -- to agree to the Century Term

10  Sheet, was one of the things that the Debtors

11  considered, a value of additional insured rights to

12  participate in Chartered Organizations in local

13  council policies?

14             MR. ANDOLINA:  Objection.

15             MR. SCHIAVONI:  Objection; asked and

16  answered and outside the scope.

17      **A.      As I understand it, the requirement**

18  **at Section 13(b), requires that a Chartered Org**

19  **agrees to provide the assignments and releases set**

20  **forth in Section 9 and 10 above on this document that**

21  **I'm not looking at right now.**

22             **But in order to become a Contributing**

23  **Chartered Organization, the Opt-Out Chartered**

24  **Organization under this provision would need to**

25  **assign or release their insurer rights related to**

1   scouting-related abuse claims, if there is a Settling

2   Insurer involved, because, Mr. Lloyd, as you would

3   suspect, no settling insurer would want to have

4   hanging out there a scouting-related abuse claim if

5   it's not been fully resolved by way of a settlement

6   agreement or otherwise.

7            Q.      I appreciate that clarification,

8   Mr. Desai.

9                    In exercising its business judgment

10  concerning Paragraph B of Paragraph 13, which you

11  were just pointing to:  Such chartered organization

12  agrees to provide the assignments and releases as set

13  forth in Sections 9 and 10.

14                   Did the Debtors receive any

15  information as to the value of the assignments and

16  releases that would be provided in Sections 9 and 10

17  for participating Chartered Organizations?

18                   MR. ANDOLINA:  Objection to form;

19  asked and answered; scope.

20                   MR. SCHIAVONI:  Same objection.

21           A.      Mr. Lloyd, I would defer to my prior

22  answers concerning business judgment and I would

23  also, perhaps, indicate that, in considering this

24  entire document as a whole of the Century Term Sheet,

25  we, as the Bankruptcy Task Force, we, as a National

1  Executive Committee, or we, as a National Executive

2  Board, were provided with information, presentations,

3  not only from our restructuring council but also from

4  our insurance council, in addition to our financial

5  advisors, coupled with the need to ensure protection

6  for Chartered Organizations because they are an

7  integral part of the Boy Scouts of America and to

8  continue to build upon a Settlement Trust that would

9  allow for the organization to emerge and continue to

10  exist and equitably compensate victims.

11            Considering all those things, as well

12  as all the information we were provided, we continue

13  to trust in our advisors to actively negotiate with

14  the settling parties, particularly on this agreement

15  with Century and its counsel, a resolution that was

16  adequate to everyone involved.

17       Q.     In your role as a member of the BSA

18  Bankruptcy Task Force and the Executive Board, have

19  you seen any analysis that attempted to value the

20  additional insured rights of Chartered Organizations

21  in the local council policies?

22            MR. ANDOLINA:  Objection to the form;

23  scope.

24       A.     I recalled seeing some presentations

25  concerning policies that were available, are

1   available and to whom and what timeframe in which

2   they existed, the coverages associated with those

3   policies, the types of policies they were, and aside

4   from that and ongoing conversations that surrounded

5   that presentation, I don't recall seeing anything

6   else.

7         Q.      Okay.

8                 MR. LLOYD:  Mr. Desai, we've been

9   going about an hour.  Are you doing all right?  Do

10  you want a break?  How are you feeling?

11                MR. ANDOLINA:  Let's take about --

12  can we take ten, Mr. Lloyd?

13                MR. LLOYD:  We absolutely can.

14                MR. ANDOLINA:  Thank you.

15                THE VIDEOGRAPHER:  Okay.  Going off

16  the record at 9:07 eastern time.

17                (A brief recess was taken.)

18                THE VIDEOGRAPHER:  We are back on the

19  record at 9:23 a.m. eastern time.

20  BY MR. LLOYD:

21        Q.      If we could turn, please, to

22  Paragraph 9 of Exhibit 3, which is the Century Term

23  Sheet.

24                Mr. Desai, during the time that the

25  Century Term Sheet was being negotiated, was the

1   Bankruptcy Task Force and the Executive Committee

2   provided with contemporaneous updates about the state

3   of the negotiations?

4        **A.    Yes, we were.**

5        Q.    And did those updates include the

6   bids and asks by various negotiating parties?

7              MR. ANDOLINA:  Object to the form.

8        **A.    The updates, again, at a high level,**

9   **did include what certain parties were wanting --**

10  **willing to negotiate on and what our parameters were**

11  **in response based upon several conversations with**

12  **counsel for us, amongst members of the BTF and the**

13  **NEC and the Board.**

14       Q.    And this is going to be a question

15  that's going to go back to where we were at the very

16  beginning of the deposition, so you may be able to

17  answer it and you may be allowed to answer it, and

18  you may not be.

19             So I just want to ask it, and we'll

20  take a little pause for Mr. Andolina to make whatever

21  objections or instructions he has.

22             Please tell us everything that you

23  recall, sir, about the updates that you received from

24  counsel during the negotiation of the Century Term

25  Sheet.

1                       MR. ANDOLINA:  Objection to form.

2       I'll allow Mr. Desai to testify in terms of his

3       recollection of cadence, but not with respect to

4       specific positions that may have been exchanged in

5       the mediation nor with respect to any advice provided

6       by counsel.

7                       So with those caveats, you can answer

8       to the best of his ability.

9                       MR. LLOYD:  And Mr. Andolina, just to

10      clarify, so you're invoking attorney-client and

11      mediation privilege?

12                      MR. ANDOLINA:  Correct.

13                      MR. LLOYD:  Thank you for that

14      clarification.  Go ahead, Mr. Desai.

15           A.        So at or near this timeframe, in the

16      fall/winter of 2021, the Bankruptcy Task Force, the

17      NEC, along with our advisors, met with more

18      regularity than I can recall and not only in terms of

19      meetings, but also various email exchanges with

20      counsel, coupled with phone calls amongst, not only

21      members of the Task Force and Board, but we continued

22      to receive, sometimes real-time updates on where

23      things were in terms of active negotiations, and at

24      other times, we would receive more formalized updates

25      and presentations during our meetings from our

1    advisors as to kind of where things evolved to

2    following a week or a few days of negotiations, and

3    based upon certain timeline benchmarks, either

4    established by the Court or the parties, the

5    Bankruptcy Task Force would meet regularly to engage

6    in conversation, to look at the terms, to provide

7    input to our advisors.

8                    Following that, recommendations would

9    be made and then would be voted upon by the National

10   Executive Committee and then the Board, to then allow

11   for our advisors to have negotiating parameters and

12   limits, if you will, for what the BSA, as well as

13   other parties affiliated with the BSA, could agree

14   to.

15        Q.     When you say "other parties

16   affiliated with the BSA," what do you mean by that,

17   sir?

18        A.     So --

19               MR. ANDOLINA:  Objection to form.

20   You can answer.

21        A.     I'm referring to our local councils

22   as well as we -- at this time, while these

23   negotiations with Century were taking place, you

24   know, you can't just take it into a vacuum.  I mean,

25   there were ongoing negotiations with the Catholic

1  constituency, the Methodist constituency and, you

2  know, other insurers that our advisors were working

3  with in order to effectuate more resolutions,

4  because, again, given the timeline of events, keep in

5  mind that the voting deadline was in December as well

6  as extended by the Court, so it was critically

7  important to the Debtor to continue to engage in more

8  and more resolutions to obtain more victim support

9  for the plan in order to proceed to a confirmation

10  hearing on a timely basis.

11       Q.      In addition to more victim support,

12  was it the Debtors' goal to also obtain more support

13  from Chartered Organizations?

14       A.      Absolutely.

15       Q.      If we can turn to Paragraph 10 of

16  Exhibit 13, Exhibit 3, I beg your pardon, and the

17  beginning of it.  Thank you.  We covered the middle

18  of this earlier, Mr. Desai.  I'm going to cover the

19  beginning of it briefly.

20              So after the heading Participating --

21  the title Participating Chartered Organizations,

22  Paragraph 10 reads:  Under the Amended Plan and as a

23  condition to the Effective Date, waiver of which

24  shall require the prior written consent of, among

25  others, the Settling Insurers -- I'm going to pause

Page 56

1    there.

2              Do you have an understanding of who

3    the "among others" are in that first sentence that I

4    read?

5              MR. ANDOLINA:  Objection to the form;

6    scope.

7         **A.    My understanding of who "among**

8    **others," I think it is just a description for**

9    **Settling Insurers there.  It's spelling it out and**

10   **"Settling Insurers" is a defined term and in addition**

11   **to them, it could potentially mean parties to the**

12   **Settlement Agreement here, which are Coalition, FCR,**

13   **Ad Hoc, so I would defer to the document.**

14        Q.    Thank you.  So I'm going to read

15   again:  Under the Amended Plan and as a condition to

16   the Effective Date, waiver of which shall require the

17   prior written consent of, among others, the Settling

18   Insurers.  In order to obtain the benefit of the

19   Settling Insurer Policy Injunction and to the full

20   post-1975 injunction, Participating Chartered

21   Organizations shall be required to provide or be

22   deemed to provide -- and let me just pause there --

23   it may be in your personal capacity, but do you have

24   an understanding of what the phrase "deemed to

25   provide" means in this context?

1              MR. ANDOLINA:  Objection to form and

2      scope.  You can answer in your personal capacity, if

3      you know.

4      **A.      Personally speaking, "deemed to**

5      **provide" would mean to me that an entity as being**

6      **described here, participating Chartered Org would**

7      **have to exercise some type of instrument, if you**

8      **will, that would, as the rest of the sentence goes,**

9      **allow for an assignment of their insurance price**

10     **pursuant to the terms and conditions of this**

11     **document.**

12     BY MR. LLOYD:

13             Q.      Thank you.  Shall be required to

14     provide or be deemed to provide the following

15     assignment of their insurance rights, the, quote,

16     Participating Organization Insurance Assignment,

17     unquote, as a defined term.

18                  And it continues:  And it continues:

19     Any and all of the Participating Chartered

20     Organizations' rights, titles, privileges, interests,

21     claims, demands or entitlements, as of the Effective

22     Date to any proceeds, payments, benefits, Causes of

23     Action, choses in action, defense or indemnity, now

24     existing or hereafter arising, accrued or unaccrued,

25     liquidated or unliquidated, matured or unmatured,

Page 58

1  disputed or undisputed, fixed or contingent, arising

2  under or attributable to, and then there's a listing

3  **A through F.  A is the abuse insurance policies**

4  **(including the Settling Insurers policies), B, any**

5  **other insurance policies issued by a Settling**

6  **Insurance Company that cover Abuse Claims with**

7  **respect to any coverage for Abuse Claims, C, the**

8  insurance settlement agreements (including the

9  agreement) and the claims thereunder, the proceeds

10  thereof, D, the types of claims, listed in the

11  insurance actions definition in the Plan (including

12  the respect to the insurance policies issued by the

13  settling insurers), E, the insurance action

14  recoveries (including with respect to the Settling

15  Insurers' policy) and F, the participating Chartered

16  Organizations Insurance actions.

17                 Do you see that?

18       **A.     I do.**

19       Q.      And is it your understanding that

20  that language that I just read, in Paragraph 10 of

21  Exhibit 3, the Century Term Sheet, in agreeing to

22  that language, as part of the Century Term Sheet, the

23  Debtors had validly exercised their business

24  judgment?

25                 MR. ANDOLINA:  Objection to form.

1          A.      Yes, it is.

2    BY MR. LLOYD:

3          Q.      And you had previously testified

4    about the various factors that went into the Debtors'

5    exercise of their business judgment.

6                 With respect to this first part of

7    Paragraph 10 that we were just discussing, do you

8    have anything to add to your prior testimony in

9    respect to the considerations that the Debtor made in

10   exercising its business judgment?

11         A.      No, sir.

12         Q.      Now, I think you had testified that

13   part of the -- the exercise of your business judgment

14   included being advised about various of these

15   provisions, we're focused on the Century Term Sheet,

16   in conversations, I think you mentioned Ms. Lauria

17   and other individuals from White & Case.  Do you

18   recall that?

19                 MR. ANDOLINA:  Objection to form.

20         A.      Yes.

21   BY MR. LLOYD:

22         Q.      Okay.  And here, too, we'll do the

23   little dance, if you will:  What do you recall about

24   the advice that the Debtors were specifically given

25   by their counsel in respect to entering into the

Page 60

1    Century Term Sheet?

2                    MR. ANDOLINA:  I'll allow Mr. Desai

3    to answer with the same restrictions as I previously

4    provided regarding instructing him not to provide any

5    attorney-client communication information, nor to

6    reveal mediation protected provisions.

7                    With that caveat, I think he can

8    respond.

9        A.      As indicated previously, Mr. Lloyd,

10   the Task Force, the NEC and the Board participated in

11   innumerable numbers of meetings with our advisors,

12   Haynes and Boon, on insurance-related issues and

13   certainly our structuring counsel White & Case.

14                    In terms of information outside of

15   attorney-client materials, I can tell you that the

16   BSA, the Bankruptcy Task Force, NEC and Board had

17   many conversations relative to what it would mean to

18   be a contributing Opt-Out Participating Chartered

19   Organization, recognizing the fact that the Boy

20   Scouts of America values its relationship with

21   Chartered Organizations and in order to achieve the

22   spirit that was contemplated under the Hartford

23   Agreement, where the parties would continue to work

24   in good faith to resolve and bring under the tent,

25   any and all Chartered Organizations to the extent

1   possible to release and absolve of them of any

2   scouting-related abuse claims.

3                   Having those various conversations,

4   seeing the presentations, being provided with

5   explanations on charts and PowerPoints on what it

6   means to be one of these three categories of a

7   Chartered Org and how it would interplay with prior

8   settlements, future settlements or all things that

9   were actively discussed by the Board with our

10  advisors and in totality, eventually authorizing our

11  advisors to enter into this deal with Century/Chubb.

12        Q.      As part of the information that you

13  received from your restructuring and your insurance

14  counsel, was the Bankruptcy Task Force and the

15  Executive Board given specific information about

16  particular charters in particular of the buckets that

17  you just described participating opt-out and

18  contributing?

19                  MR. ANDOLINA:  Objection to form,

20  compound and I just want to clarify, Mr. Lloyd, I

21  think you referred to the National Executive Board,

22  which, for the record, met less frequently than the

23  National Executive Committee.

24                  If you'd like him to respond with

25  respect to the BTF and the National Executive

 1   Committee, that may provide more clarity to his

 2   answer.

 3                   MR. LLOYD:  I appreciate that,

 4   Mr. Andolina.

 5   BY MR. LLOYD:

 6       Q.      So, yeah, let me rephrase the

 7   question, Mr. Desai, because I realize there are a

 8   lot of organizations and I appreciate that.

 9                   So when, as a member of the

10   Bankruptcy Task Force and the National Executive

11   Committee, you were briefed and the Debtors then were

12   briefed about, as you were just describing,

13   Participating Chartered Organizations, contributing

14   Chartered Organizations, Opt-Out Chartered

15   Organizations, as part of those briefings that you

16   received, was the Bankruptcy Task Force and the

17   National Executive Committee told which types of

18   Chartered Organizations fit within each of those

19   three buckets?

20                   MR. ANDOLINA:  Objection with respect

21   to types.  Just so we have a clear record, are you

22   talking about which specific chart -- was the BTF and

23   NEC advised of the various specific Chartered

24   Organizations that had resolved?

25                   And I don't mean to over-speak here,

1    but I just want to make sure the record's clear on

2    this.

3                    MR. LLOYD:  No, I appreciate it.

4    It's -- we'll try it a third time.

5    BY MR. LLOYD:

6         Q.    The -- like I told you, Mr. Desai, I

7    said I'd probably ask at least one bad question in

8    this.

9                    So when the Bankruptcy Task Force and

10   the National Executive Committee was briefed by its

11   insurance and restructuring advisors, was the -- was

12   the National Executive Committee and the Bankruptcy

13   Task Force told, in the -- we're here at the time Of

14   the Century Term Sheet, so in the December 2021 time

15   period, where the Chartered Organizations that had

16   been previously affiliated with the -- the TCJC, what

17   bucket they fell within?

18                   MR. ANDOLINA:  Objection to form.

19   You can answer without revealing specifics of those

20   conversations.

21        **A.    I believe I understand what you're**

22   **asking, Mr. Lloyd.  And so the answer to your**

23   **question simply is yes.**

24   BY MR. LLOYD:

25        Q.    Okay.  And do you recall which bucket

1  the TCJC fell within?

2       A.       Well, I think it depends on the time

3  frame we're talking about.  Because if you look back

4  to figure out when the TCJC effectuated a resolution,

5  they had obviously become a full-fledged contributing

6  Chartered Organization, and so around the timeframe

7  that we're talking here with Century, I previously

8  referenced that in addition to the negotiations

9  taking place with Century, our advisors were also

10 actively negotiating with the Methodist, the

11 Catholics and various other insurers.

12               And so, for example, using the

13 Catholics and the Methodists, they, at the time that

14 the Century agreement was being contemplated, were at

15 the table, actively negotiating, and could have

16 become a contributing Chartered Organization and

17 eventually, as we know, I'll fast forward the story,

18 the Methodists did effectuate a resolution, which

19 would now have -- now deemed them a contributing

20 Chartered Org and the Catholics decided to not.

21               MR. ANDOLINA:  And I would just

22 instruct Mr. Desai not to -- I think that answer does

23 not reveal any mediation communications, but I'd

24 instruct him, in answering Mr. Lloyd's questions, to

25 avoid any -- revealing anything about those

1   negotiations.

2                      MR. LLOYD:  If you -- we can turn to

3   Paragraph 13 of Exhibit 3, please.

4   BY MR. LLOYD:

5        Q.      This is, Mr. Desai, the Opt-Out

6   Chartered Organization, I beg your pardon, paragraph

7   of Exhibit 3 that we were discussing previously.

8                      And I believe you testified -- you

9   used the phrase "pathway," about providing a pathway

10  to becoming a contributing Chartered Organization.

11                     Do you recall that testimony

12  generally?

13       **A.      Yes, sir.**

14       Q.      At the time that the Century Term

15  Sheet was entered into, other than the Roman Catholic

16  entities, who else could have become a contributing

17  Chartered Organization that was not already a

18  contributing Chartered Organization?

19                     MR. ANDOLINA:  Objection to form.

20  Beyond the scope.

21                     You can answer in your individual

22  capacity.

23       **A.      Personally speaking, I can tell you**

24  **that the Boy Scouts of America has relationships with**

25  **many Chartered Organizations beyond some of the**

Page 66

1   larger ones that you just referenced.

2                   And so, by way of an example, if a

3   particular Chartered Org had either advised the

4   organization or the Court that they were going to

5   file an objection or opt-out of this process, they

6   would be one of those groups that could convert

7   themselves from an opt-out to a participating or

8   contributing, based upon the provisions in this

9   paragraph.

10          Q.      In December -- excuse me -- of 2021,

11   is it your understanding that all other Chartered

12   Organizations, besides the Roman Catholic entities,

13   were already going to be protected by the injunction?

14                  MR. ANDOLINA:  Objection to the form

15   of the question.

16          A.      I don't necessarily -- as I sit here

17   today, I probably couldn't tell you which specific

18   Chartered Organizations opted out.

19                  Obviously, we're aware of the -- of

20   certain Diocese within the Catholic church that have

21   lodged an objection and are now deemed Opt-Out

22   Chartered Organizations.

23          Q.      If we can go to Paragraph 14, please.

24   Mr. Desai, this is listed as the Post-Confirmation

25   Interim Injunction.

1              Do you see that, sir?

2      A.      I do.

3      Q.      The -- this particular provision

4  included in the Century Term Sheet, is it the

5  Debtors' position that in including this provision,

6  Paragraph 14, that the Debtors validly exercised

7  their business judgment?

8              MR. ANDOLINA:  Objection to form.

9      A.      Yes.

10  BY MR. LLOYD:

11      Q.      And with respect to Paragraph 14, do

12  you have any additional information to provide, in

13  respect to the exercise of business judgment, that

14  you have not already revealed to us in respect to the

15  prior Paragraphs 9, 10, 11, 13, that we've been

16  discussing?

17      A.      No, sir.

18      Q.      Can we turn to Paragraph 15, please.

19  This is -- Paragraph 15 of Exhibit 3, the Century

20  Term Sheet is titled:  Abuse Claims Under Policies

21  Issued to Chartered Organizations.

22              Do you see that, sir?

23      A.      Yes, sir.

24      Q.      I'm sorry.  I didn't hear your

25  answer.

1      A.     Yes, sir.

2      Q.     Okay.  Thank you.  And with respect

3  to this particular paragraph, is it the Debtors'

4  position that in agreeing to this paragraph as part

5  of the Century Term Sheet, the Debtors validly

6  exercised their business judgment?

7      A.     Yes, it is.

8      Q.     And as we were discussing previously,

9  apart from the information that you've provided to us

10  in respect to the exercise of that judgment for

11  Paragraphs 9, 10, 11, 13, do you have anything to add

12  with respect to the exercise of the Debtors' business

13  judgment as it concerns Paragraph 15?

14     A.     I do not.

15              MR. LLOYD:  Okay.  All right.  Let's

16  move to -- we're going to put in the Black Line of

17  the Third Modified Plan.  That will be Exhibit 4.

18              MR. ANDOLINA:  Can we get five

19  minutes so I can grab copies of that?

20              MR. LLOYD:  Absolutely.  Let's go off

21  the record for five.

22              MR. ANDOLINA:  Thank you.

23              THE VIDEOGRAPHER:  Okay.  Going off

24  the record at 9:49 eastern time.

25              (Exhibit 4, Notice of Filing of

Page 69

1        Debtors' Third Modified Fifth Amended Chapter

2        11 Plan of Reorganization and Blackline

3        Thereof, was marked for Identification by the

4        court reporter.)

5                    (A brief recess was taken.)

6                    THE VIDEOGRAPHER:  All right.

7    Everything is recording and we are back on the record

8    at 9:53 eastern time.

9    BY MR. LLOYD:

10        Q.     So if we could -- so Mr. Desai, what

11   I'm showing you that's been marked as Exhibit 4 and I

12   guess -- do you have a copy of this in front of you?

13        **A.     I do.**

14        Q.     Okay.  Wonderful.  So just for the

15   record -- so the record is clear, the -- this is a

16   filing that's dated February 15 of 2022 and the

17   caption is The Notice of Filing Debtors' Third

18   Modified Fifth Amended Chapter 11 Plan of

19   Reorganization and Blackline Thereof, and this is a

20   preliminary.

21                    If at any time, Mr. Desai, you would

22   prefer to do a comparison that's a side-by-side, you

23   know, with the December 18th plan and the February

24   15th plan, please just let me know.

25                    The reason I've put this document in

1   front of you is that the Debtors created it and I'm

2   really trying to be efficient in terms of talking

3   about, with you about the differences between --

4   between the two.

5               Since the Debtors created it, I

6   didn't figure there would be any controversy about

7   that, but as I say, if it gets too much reading a

8   bunch of strike-outs and highlights and things, just

9   let me know and we'll pull up some other documents.

10              So if we could please turn then to

11  Article 1A, Section 42, so it's going to be a few

12  pages down.

13              Okay.  Mr. Desai, I'm showing you --

14  this is on Page 17 to 18 of 304, there's a filing

15  identification with the Bankruptcy Court of document

16  No. 8814-1 and we're looking at Paragraph 42 that's

17  titled:  BSA Cash Sharing Amount.

18              Do you see that, sir?

19  **A.      Yes, sir.**

20      Q.      And the -- this definition appears in

21  the Third Modified Fifth Amended Plan, not in the

22  Second Modified Fifth Amended Plan, something that we

23  know because it's here in this highlighted text.

24              Are you following me?

25  **A.      Yes.**

1       Q.      Is it the Debtors' testimony that in

2   including this definition -- I beg your pardon --

3   including this definition in Paragraph 42, BSA Cash

4   Sharing Amount, in the Third Modified Fifth Amended

5   Plan, that the Debtors were validly exercising their

6   business judgment?

7               MR. ANDOLINA:  Objection to form.

8       A.      Yes.

9   BY MR. LLOYD:

10      Q.      Please tell us why that is.

11      A.      I would tell you again, reiterating

12  my prior responses, but based upon advice in

13  consultation with our financial advisors, and given

14  that, at the time that this Plan was filed, Docket

15  entry 8814-1, the parties, meaning BSA, Coalition,

16  FCR, Settled Insurers and now the TCC, were all in

17  active negotiations in order to continue to build

18  more consensus for support of this plan and to

19  provide, again -- to achieve the resolutions that the

20  BSA sought out to achieve, which were to equitably

21  compensate all victims of abuse and to emerge as an

22  ongoing organization.  We felt that this negotiated

23  term was in proper exercise of our business judgment.

24      Q.      And, again, just to make sure that

25  we're not talking over each other and Mr. Andolina

Page 72

 1   has the opportunity to make his objection, as you sit

 2   here today, are you able to tell us who first

 3   proposed this provision?

 4              MR. ANDOLINA:  Objection to form and

 5   I'm going to instruct him not to answer based on

 6   mediation confidentiality.

 7              MR. LLOYD:  If we can turn, please,

 8   to Paragraph 59, please.  We're still in the

 9   Definitions section.

10   BY MR. LLOYD:

11       Q.    Mr. Desai, I'm directing your

12   attention to Paragraph 59, which is titled:

13   Chartered Organization Contribution.

14              Do you see that, sir?

15       A.    Yes.

16       Q.    And this Paragraph 59, which appears

17   in the blue text, is new to the Third Modified Fifth

18   Amended Plan from the Second Modified Fifth Amended

19   Plan.

20              Do you see that, sir?

21       A.    Yes.

22       Q.    And is it the Debtors' position that

23   including this new definition in the February 15th,

24   2022 plan, the Debtors validly exercised their

25   business judgment?

1                    MR. ANDOLINA:  Objection to form.

2        **A.       Yes.**

3  BY MR. LLOYD:

4        Q.       And beyond the answer that you just

5  gave when we were discussing Paragraph 42, definition

6  of Exhibit 4, is there anything that you would like

7  to add in respect to the Debtors' exercise of its

8  business judgment in putting the definition that's in

9  Paragraph 59 in the Third Modified Fifth Amended

10 Plan?

11                   MR. ANDOLINA:  Objection to form.

12       **A.       The only thing I would add would be**

13 **that this was a term that was the product of active**

14 **negotiations, some of which I participated in myself**

15 **at mediation, in order to get additional parties to**

16 **become signatories to a more globalized settlement**

17 **agreement.**

18       Q.       I don't mean to belabor the point but

19 just to ask and let Mr. Andolina make his objection.

20                   As you sit here today, can you tell

21 us who first proposed this first definition that's in

22 Paragraph 59?

23                   MR. ANDOLINA:  I'm going to object on

24 mediation confidentiality and instruct the witness

25 not to answer.

1            MR. SCHIAVONI:  Can I just ask

2   whether you're waiving -- in asking that question,

3   are you offering to waive your mediation

4   confidentiality?

5            MR. LLOYD:  Mr. Schiavoni, you can

6   make your objection for the record.  The witness has

7   been instructed not to answer.

8            MR. SCHIAVONI:  Well, I think because

9   he's invoking --

10           MR. LLOYD:  Mr. Schiavoni, stop.

11  We're not going to have a colloquy on the record.

12  We're taking the 30(b)(6) deposition of the debtor.

13  The debtor is represented by counsel.

14           MR. SCHIAVONI:  I'm going to give you

15  the opportunity.  That's fine.  I object.

16           MR. LLOYD:  Thank you, Mr. Schiavoni.

17           MR. SCHIAVONI:  Thank you.

18           THE REPORTER:  May I ask you to put

19  on your camera?

20           MR. SCHIAVONI:  I'm sorry.  What?

21           THE REPORTER:  May I ask you to put

22  on your camera?

23           MR. SCHIAVONI:  Okay.  Sure.

24  BY MR. LLOYD:

25       Q.    Mr. Desai, I have another question

1    for you, which is just a yes-or-no question.

2                   So I'm not asking a question and I'm

3    not intending by my question to seek anything that is

4    mediation confidential.

5                   Do you know who asked for Paragraph

6    59?

7                   MR. ANDOLINA:  Objection to form.

8                   Outside the scope.  You can answer.

9         **A.     Yes.**

10        Q.     Let's move, please, to Paragraph

11   86 -- oh, and Mr. Desai, just a yes-or-no question.

12                  And do you know why, whichever party

13   asked for Paragraph 59, do you know why they asked

14   for it?

15                  MR. ANDOLINA:  Objection to form.

16        **A.     No, I don't.**

17   BY MR. LLOYD:

18        Q.     If we can go then to -- okay.  So

19   this is Paragraph 86, this is the definition,

20   Mr. Desai, of Contributing Chartered Organizations.

21                  Do you see that?

22        **A.     Yes.**

23        Q.     Okay.  And I'd like to direct your

24   attention to the strike-out text, which is a few

25   lines down on page 27 of 304.

1              So if you could scroll down just a

2    little bit more, please.

3              So Mr. Desai, I'm starting with the

4    word "without" that's in the red strike-out text.

5    Are you following me?

6         A.    Yes.

7         Q.    Thank you.  So the stricken text,

8    which means that this text was in the December 18

9    plan -- December 18 of 2021 Plan of Contributing

10   Chartered Organization but was removed when the

11   February 15, 2022 definition of Contributing

12   Chartered Organization was included, reads as

13   follows:  Without limiting the foregoing, subject to

14   confirmation of the Plan, and approval of the other

15   Chartered Organization Settlement by an order of the

16   Bankruptcy Court, including the Confirmation Order,

17   upon the effective date, all other Chartered

18   Organizations, initial caps, shall be designated as

19   Contributing Chartered Organizations subject to the

20   terms of the Century and Chubb Companies Insurance

21   Settlement Agreement.

22              Do you see that, sir?

23        A.    Yes.

24        Q.    And is it the Debtors' position that

25   it val -- they validly exercised their business

1   judgment in removing the language that I just read

2   from the definition of Contributing Chartered

3   Organization, when they filed the February 15, 2022

4   Plan?

5              MR. ANDOLINA:  Objection to the form

6   of the question.

7        **A.    Yes, it is.**

8   BY MR. LLOYD:

9        Q.    Can you tell us why that is, sir?

10       **A.    Again, going through my prior**

11  **testimony and based upon our ongoing conversations**

12  **with counsel, given that this document was the**

13  **subject of a heavily-negotiated period of time, and**

14  **again, deferring to the recommendations made to us as**

15  **the BTF and the NEC by our advisors, we continued to**

16  **believe and support the fact that this was a proper**

17  **exercise for our business judgment.**

18       Q.    And again, I'm not attempting to get

19  at information that is going to be the subject to an

20  objection, but I'm just going to ask the question and

21  give Mr. Andolina an opportunity to answer.

22              Please tell us the advice that you

23  received from your advisors, including your legal

24  counsel that supported your answer just now.

25              MR. ANDOLINA:  Objection to the form.

1   That calls for attorney-client privileged

2   communications and I'll instruct not to answer.

3   BY MR. LLOYD:

4         Q.      If we can turn, please, to Paragraph

5   177, Definition.

6         **A.      Okay.**

7         Q.      Mr. Desai, I'm showing you, this is

8   on page 41 of 304 and it is Paragraph 177, it says:

9   Limited Protected Party Injunction Date.

10              Do you see that, sir?

11        **A.      Yes, sir.**

12        Q.      And apart from the green text, which

13  indicates the text was moved from somewhere else,

14  this particular provision, the limited protected

15  party injunction date is a new term in the February

16  15, 2022 Plan from the December 18, 2021 plan.

17              Do you understand that, sir?

18        **A.      Yes, sir.**

19              MR. ANDOLINA:  Objection to form.

20        Q.      And is it the Debtors' position that

21  it validly exercised its business judgment in

22  including this definition Paragraph 177, the limited

23  protected party injunction date in the February 15,

24  2022 plan?

25              MR. ANDOLINA:  Objection to the form.

1          A.      Yes, it is.

2    BY MR. LLOYD:

3          Q.      Can you please tell us why that is?

4          A.      Again, other I'll defer back to my

5    prior answers and also indicate that -- in agreeing

6    to this term, it allows for -- as I described

7    earlier, a pathway, if you will, for a contributing

8    Charter Organization to become a full-fledged

9    participating Charter Org by, again, providing

10   additional compensation to the Settlement Trust for

11   the benefit of abuse survivors.

12         Q.      And is it your understanding that the

13   protection to Participating Chartered Organizations

14   under the February 15, 2022 plan, in contrast to the

15   December 18, 2021 plan, was the same, less or neutral

16   or different -- sorry.

17                 Let me rephrase that question.

18                 Is it your understanding that the

19   protections afforded to Participating Chartered

20   Organizations, under the February 15, 2022 plan, were

21   greater, less or neutral in respect to the

22   protections that participating Chartered

23   Organizations were provided under the December 18,

24   2021 plan?

25                 MR. ANDOLINA:  Objection to form.

1   Beyond the scope.  He can respond in the individual

2   capacity, but I object to the form of the question.

3          A.      I believe that this provision would

4   allow for greater protection for pre-'76 claims to a

5   Participating Chartered Organization, because it

6   would allow for them to eliminate any abuse-related

7   liability pre-'76 by way of becoming a contributing

8   charter organization.  Further -- way beyond that of

9   what was allowed for through the settling insurer

10  concept as a contributing -- I'm sorry, as a

11  Participating Chartered Organization.

12         Q.      And in respect to the Debtors'

13  exercise of its business judgment concerning

14  Paragraph 177, do you have anything to add to your

15  prior answers about the information that the Debtors

16  received and considered?

17         A.      I don't.

18              MR. LLOYD:  And Mr. Andolina, if I

19  were to inquire of the witness in respect to advice

20  that he received from his legal counsel, we're going

21  to have the same objection and instruction not to

22  answer as we did with respect to Paragraph 86.

23              MR. ANDOLINA:  Correct.

24              MR. LLOYD:  Okay.  So I appreciate

25  that and we'll try and continue to streamline as we

1  go.

2  BY MR. LLOYD:

3      Q.      If we can now move, please, to 184.

4              Mr. Desai, Paragraph 184 in the

5  Definition section of the February 15, 2022 plan

6  defines Mixed Claim.

7              Do you see that, sir?

8      **A.      Yes.**

9      Q.      And is it your testimony that the

10 Debtors validly exercised their business judgment

11 including this provision in the February 15, 2022

12 plan?

13     **A.      Yes.**

14     Q.      And do you have anything to add in

15 respect to the information that the Debtors

16 considered in the exercise of their business judgment

17 that is in addition to or different from the answers

18 that you've given me with respect to Paragraphs 42,

19 59, 86 and 177?

20     **A.      No, other than the only thing I would**

21 **add was my personal knowledge through attending a**

22 **mediation setting and not getting into the subject**

23 **matter of it, but recognizing that this was an**

24 **actively-negotiated provision amongst all the parties**

25 **to the document.**

1       Q.      And without revealing the content of

2   any particular communication, do you know, yes or no,

3   as you sit here, who first proposed this definition

4   of Mixed Claim?

5               MR. ANDOLINA:  Objection to form and

6   objection to -- it's not a yes/no question, because

7   as Mr. Desai has testified, the terms of this

8   agreement were heavily negotiated, so to suggest that

9   there is one proponent, I just think is a false

10  assumption, so I needed to note that for the record.

11      **A.      I don't have personal knowledge as to**

12  **who originated the concept or term, but again, I know**

13  **that this was an actively-negotiated definition,**

14  **which is what appears before you in 184.**

15              MR. LLOYD:  And to the extent,

16  Mr. Andolina, that I were to ask Mr. Desai to exhaust

17  his recollection about the contents of his knowledge

18  from the mediation, you'd instruct him not to answer

19  on the grounds of mediation privilege?

20              MR. SCHIAVONI:  I object and I think

21  that requires you to say whether you're waiving

22  mediation communication since you know exactly who

23  the source of this is.

24              THE REPORTER:  And I assume that was

25  Mr. Schiavoni?

1              MR. SCHIAVONI:  Yes.

2              MR. ANDOLINA:  I will instruct him

3    not to answer in terms of the substance of mediation

4    communications, that is correct.

5              MR. LLOYD:  And similarly,

6    Mr. Andolina, in respect to advice that the Debtors

7    received from their legal advisors, you would give

8    him the same instruction not to answer and divulge

9    the contents of that advice on the grounds of

10   attorney-client privilege?

11             MR. ANDOLINA:  Yes.  And I will note

12   that we have produced voluminous documentation

13   regarding the meetings of the BTF, NEC and NEB that

14   Mr. Desai participated in that includes the topics

15   that were discussed but I will not have him testify

16   as to the specific legal advice that was provided by

17   counsel.

18             MR. LLOYD:  Thank you.  I appreciate

19   that.  If we can go to Paragraph 186, please -- I beg

20   your pardon, 196.  My mistake.

21             MR. ANDOLINA:  I was hoping there was

22   186.  That would have been an easy --

23             MR. LLOYD:  Everybody is entitled to

24   a couple of softballs.

25

1    BY MR. LLOYD:

2         Q.      So for 196, Mr. Desai, this is the

3    definition of Opt-Out Chartered Organization.

4                Do you see that, sir?

5         **A.      Yes.**

6         Q.      It appears at Page 44 at 304 and goes

7    onto page 45 of 304 of Exhibit 4, the redline of the

8    February 15, 2022 plan against the December 18, 2022

9    plan.

10               And I would like to direct your

11   attention, Mr. Desai, to the second sentence and it

12   says:  For the avoidance of doubt, Romanette i,

13   Opt-Out Chartered Organizations shall receive the

14   benefit of the channeling injunction applicable to

15   abuse claims covered under any insurance policy

16   issued by the settling insurance companies, and ii,

17   Opt-Out Chartered Organizations, shall not be

18   required to provide assignments and releases with

19   respect to insurance policies issued directly to an

20   Opt-Out Chartered Organization.

21               Do you see that, sir?

22        **A.      Yes.**

23        Q.      And is it the Debtors' position that,

24   in modifying the definition to include the language

25   that I read in Paragraph 196 from the December 18th

1    Plan to the February 15th Plan, the Debtors validly

2    exercised their business judgment?

3                    MR. ANDOLINA:  Objection to form.

4         A.      Yes.

5    BY MR. LLOYD:

6         Q.      And if we were to discuss the bases

7    for the Debtors' position that it validly exercised

8    its business judgment, would those be the same

9    considerations that we had discussed in the last few

10   minutes with respect to other paragraphs that were

11   modified between the December 18th and February 15th

12   plans?

13        A.      Yes.  And I would just -- again,

14   keeping to context timeline, between December and

15   February 15th, many parties were parts of very active

16   negotiations -- I kind of referred to it as the month

17   and a half long sessions in Los Angeles, but -- and

18   as you can see, the evolution of this plan, which is

19   as a result of successful negotiations with the

20   various parties that came to a consensus and all

21   that, coupled with information provided to the

22   Bankruptcy Task Force, the NEC, by our advisors,

23   resulted in us exercising our business judgment to

24   adopt this language.

25

1    BY MR. LLOYD:

2        Q.    And just to be clear, that month and

3    a half of negotiations that you've just referred to,

4    were you personally a participant in some or -- some

5    of those negotiations?

6        **A.    Yes, sir.**

7            MR. LLOYD:  And so, Mr. Andolina, if

8    I were to ask Mr. Desai specifically in respect of

9    the changed definition of Opt-Out Chartered

10   Organization that resulted from those mediation

11   negotiations, you'd instruct him not to divulge his

12   recollection under -- on the grounds of mediation

13   privilege; is that correct?

14           MR. SCHIAVONI:  Objection.

15           MR. ANDOLINA:  Correct, with respect

16   to the parties' mediation positions, yes, I'm not

17   going to allow him to testify as to that.

18           MR. LLOYD:  Okay.  And similarly,

19   given that his testimony about -- on whom the Debtors

20   relied, to the extent that the Debtors relied on

21   advice of legal counsel in exercising their business

22   judgment in respect to Paragraph 196, you'd instruct

23   him not to answer on the grounds of the

24   attorney-client privilege.

25           MR. ANDOLINA:  Yes, with respect to

1    specific advice on specific issues, yes.

2    BY MR. LLOYD:

3         Q.       And Mr. Desai, do you have an

4    understanding about the impairment or non-impairment,

5    under this definition 196, in respect to opt-outs

6    versus other Chartered Organizations?

7                  MR. ANDOLINA:  Objection to form of

8    the question; scope; vague.

9                  MR. SCHIAVONI:  I object also to the

10   term "unimpaired"; objection to form.

11        **A.       Mr. Lloyd, I would answer by simply**

12   **telling you that the definitions of participating,**

13   **contributing and Opt-Out Chartered Orgs are specified**

14   **in this document and I defer to that.**

15                  MR. LLOYD:  Can we go to Paragraph

16   199, please?  And if we can go to the end of

17   Paragraph 199.  Thank you.

18   BY MR. LLOYD:

19        Q.       And this last sentence of Paragraph

20   199 -- are you with me, Mr. Desai?

21        **A.       Yes, sir.**

22        Q.       Okay.  It's the one that begins:  For

23   the avoidance of doubt.

24        **A.       Yes.**

25        Q.       And the language has been stricken so

1    that the paragraph -- I beg your pardon.

2                      Language has been stricken so that

3    the sentence previously read, that is to say in the

4    December 18, 2021 version of the plan for the

5    avoidance of doubt, so long as they do not object to

6    the Plan or Opt-Out all other Chartered Organizations

7    are participating Chartered Organizations and shall

8    automatically become Contributing Chartered

9    Organizations upon the Effective Date, in accordance

10   with the other settlement and shall be deemed to have

11   made the Participating Chartered Organization

12   settlement contribution.

13                      Do you see that, sir?

14                      MR. SCHIAVONI:  I got it.  I

15   forwarded it on to those other guys, okay?

16                      MR. LLOYD:  Mr. Schiavoni, your mic's

17   on.  Thank you.

18       **A.       I do see that, yes.**

19       Q.       And is it the Debtors' position that

20   it validly exercised its business judgment in

21   removing --

22                      MR. SCHIAVONI:  And I didn't hear

23   you, what were the materials you want?

24                      MR. LLOYD:  Mr. Schiavoni, we're not

25   interested in your privileged conversation either.

1          MR. SCHIAVONI:  Oh, got it.  Got it.

2          MR. LLOYD:  We're all trying to help

3     you out.

4     BY MR. LLOYD:

5          Q.      Okay.  So Mr. Desai, to rewind here;

6     so is it the Debtors' position that the definition

7     that I just read that existed in the December 18 plan

8     and that was removed from the February 22nd plan, is

9     it the Debtors' position that the change in the

10    definition was a valid exercise of the Debtors'

11    business judgment?

12         **A.      Yes.**

13         Q.      And do you have anything to add in

14    respect to the exercise of that judgment that is

15    different from or in addition to the information that

16    you've provided to us in respect to the other

17    definitions that were added or changed between the

18    December 18 and February 22nd plans that we've been

19    discussing today?

20         **A.      No, sir.**

21         Q.      And yes or no, do you know which

22    party first proposed changing this sentence?

23         MR. ANDOLINA:  Objection to form for

24    the same reasons from my previous objection.

25         **A.      I do not know.**

1            MR. LLOYD:  And Mr. Andolina, the

2   same as with respect to mediation privilege, if I

3   were to ask Mr. Desai to share with us what he

4   recalls about the negotiations in the mediation with

5   respect to the change in this last sentence of

6   Paragraph 199, you'd instruct him not to answer on

7   the grounds of mediation privilege?

8            MR. SCHIAVONI:  Objection; calls for

9   a statement of waiver by your Committee.

10           MR. ANDOLINA:  Yeah.  Our position is

11  that Mr. Desai will not testify as to specific

12  mediation positions taken in the mediation.  So yes,

13  correct.

14           MR. LLOYD:  Thank you.  And in

15  respect to legal advice, specific legal advice that

16  the Bankruptcy Task Force and the National Executive

17  Committee received from their legal advisors in

18  respect to this definition change in Paragraph 199,

19  you'd instruct him not to answer to the extent he

20  recalled anything on the grounds of the

21  attorney-client privilege?

22           MR. ANDOLINA:  Yes.

23  BY MR. LLOYD:

24      Q.    If we could turn to Paragraph -- no,

25  let's stick with this paragraph.  I beg your pardon.

1                   So now, Mr. Desai, that last sentence

2    that we were just talking about in the prior

3    definition, that is to say, the December 18, 2021

4    definition, it now says:  For the avoidance of doubt,

5    any Chartered Organization that is a member of an ad

6    hoc group or committee that objects to the

7    confirmation of the Plan shall not be a Participating

8    Chartered Organization.

9                   Do you see that?

10   **A.      I do.**

11       Q.      And is it your testimony that the

12   Debtors validly exercised their business judgment in

13   including this new definition in the last sentence of

14   Paragraph 199 in the February 15, 2021 plan?

15                  MR. ANDOLINA:  Objection to form.

16   **A.      Subject to my prior testimony, the**

17   **answer still remains yes.**

18                  MR. LLOYD:  And Mr. Andolina, to the

19   extent he has information that arises from the

20   mediation, same instruction with respect to mediation

21   privilege?

22                  MR. ANDOLINA:  Yes.

23                  MR. LLOYD:  And with respect to

24   advice that the Bankruptcy Task Force and National

25   Executive Committee considered from -- the specific

1   advice from their attorneys, same instruction in

2   respect to the attorney-client privilege?

3                  MR. ANDOLINA:  Yes.

4                  MR. SCHIAVONI:  Objection to form.

5                  MR. LLOYD:  If we can go to Paragraph

6   200, please -- let's say 215.  I beg your pardon.

7   BY MR. LLOYD:

8        Q.      I'm showing you, Mr. Desai, Paragraph

9   215 of the Definitions section of the February 15,

10  2022 Plan and it now reads:  Post-1975 Chartered

11  Organization Abuse Claims means any Abuse Claim

12  against a Participating Chartered Organization that

13  relates to Abuse alleged to have first occurred on or

14  after January 1, 1976, period.

15                  Do you see that, sir?

16  **A.      Yes.**

17       Q.      Previously in the December 18, 2021

18  Plan, the definition continued after the phrase,

19  after January 1, 1976, and stated the following:

20  Provided, however, that the term, quote, post-1975

21  Chartered Organization Abuse claims, unquote, shall

22  be limited to any claim against a Participating

23  Chartered Organization, it is attributable to, arises

24  from, is based upon, relates to, or results from

25  abuse that occurred in connection, in whole or in

```
 1    part, with the Participating Contributing Chartered

 2    Organizations or its personnels or affiliates'

 3    involvement in or sponsorship of one or more scouting

 4    units, including any such claim that has been

 5    asserted or may be amended to assert in a proof of

 6    claim alleging abuse, whether or not timely filed in

 7    the Chapter 11 cases or any such claim that has been

 8    asserted against the Settlement Trust, including any

 9    proportionate or allocable share of liability based

10    thereon and continues for the avoidance of doubt, no

11    claim alleging abuse shall be a, quote, post-1975

12    Chartered Organization Abuse Claim against a

13    Participating Chartered Organization if such Claim is

14    wholly unrelated to Scouting.

15             Do you see that, sir?

16        A.    Yes.

17        Q.    And did I read that correctly?

18        A.    You have.

19        Q.    And is it the Debtors' position that

20    it validly exercised its business judgment in

21    removing the language that I just read from the

22    February 15, 2022 definition of post-1975 Chartered

23    Organization Abuse Claims that had previously

24    appeared in the December 18, 2021 Plan?

25             MR. ANDOLINA:  Objection to the form.
```

1        A.        Yes, it is.

2        Q.        And with respect to the bases on

3    which the Debtors exercised their business judgment,

4    do you have anything to add or modify with respect to

5    the information that the Debtors considered?

6        A.        I would simply reiterate my prior

7    testimony.

8        Q.        And do you, Mr. Desai, have personal

9    knowledge about the negotiations that led to the

10    change in this definition?

11                MR. ANDOLINA:  Objection to form.

12        A.        My knowledge would come from my

13    participation at mediation sessions in Los Angeles.

14                MR. LLOYD:  And Mr. Andolina, to the

15    extent that Mr. Desai recalls information from those

16    sessions and he was asked about it, you would assert

17    mediation privilege in respect to that testimony?

18                MR. ANDOLINA:  Yes.  And Mr. Lloyd,

19    let me just note for the record that I've been -- for

20    the -- I've been asserting as a co-deponent here,

21    just to speed things along, I have not required you

22    to ask the witness the question and then have me

23    insert the objection, both with respect to mediation

24    and attorney-client privileged issues.

25                        I'd just like assurances that the

1   Roman Catholic Ad Hoc Committee does not disagree

2   with the assertions that we have made and sort of my

3   cooperation here won't be subsequently used against

4   my client.

5                MR. LLOYD:  I think we could meet and

6   confer about that.  And if you would prefer that I

7   ask the question directly, I'll ask the question

8   directly and make you assert it.

9                I've only been trying to do this to

10  expedite and be efficient.

11               MR. ANDOLINA:  Yeah.  No, I

12  appreciate that.

13               But by way of example, if your

14  position is that the indication of the mediation

15  privilege or the indication of the attorney-client

16  privilege with respect to specific advice given by

17  the Board -- or given by counsel to the Board on

18  specific issues is somehow inappropriate, I'd rather

19  have a clean record on that.  I don't think that's

20  what you're trying to do here.  But -- I think you're

21  trying to speed things up.  But I just want to avoid

22  having that conversation at a later date.

23               MR. LLOYD:  Well, I appreciate that.

24  Let me just say this for the moment.  I think that I

25  am not suggesting that your instructions to the

1  witness are, in and of themselves, improper or

2  inappropriate.

3           I think the Court has made it very

4  clear that the testimony today is subject to all

5  appropriate objections.

6           What I will say is that whether the

7  material that Mr. Desai has been instructed not to

8  testify about is, in fact, mediation privileged or

9  is, in fact attorney-client privileged, based on

10 positions that the Debtors have taken, is something

11 that we'll have to take up at a later day.

12           I hope that clarifies where we're

13 going.

14           MR. ANDOLINA:  I -- it does on some

15 level.  I'm not sure I understand that based on the

16 position -- based on the positions that the Debtor

17 has taken means and the last thing I want to do is be

18 in a position where you're -- I'm being asked to

19 reproduce Mr. Desai on a specific privilege issue.

20 That's what I'm trying to avoid.

21           MR. LLOYD:  Well, I appreciate that

22 clarification.  I think that, from our perspective,

23 Mr. Andolina, and we'll continue with the deposition,

24 we would not -- we would not anticipate having asked

25 Mr. Desai the questions that we've asked him today

1  and him having received the instructions that he's

2  received, if, in his testimony at the confirmation

3  hearing, we would not expect him to be revealing the

4  contents of communications that he was directed

5  during his deposition not to reveal, either with

6  respect to attorney-client privilege or mediation.

7            So that's what I was referring to

8  when I was referring to the Debtors' positions.

9            MR. ANDOLINA:  Okay.  Understood.

10  BY MR. LLOYD:

11      Q.    If we can turn to -- I want to go to

12  Article IV, S, as in Sam, please.  So it's a little

13  bit of a ways in because we're in Article I.

14            If we can scroll down so Mr. Desai

15  can -- I guess you've got it in front of you, sir.

16  But if you could scroll down to the -- yeah, okay,

17  great.  And if you can scroll up again.  Thank you.

18            So Mr. Desai, this particular

19  provision, which is in Article IV -- it's been

20  redesignated, Section S, it was previously Section R,

21  but the title remains the same.

22            It's Privileged Information and it

23  now reads:  The transfer or assignment of any

24  Privileged Information to the Settlement Trustee

25  shall -- and we need to scroll to the bottom -- be

1    subject to the terms of the Document Appendix.

2                    Do you see that, sir?

3        **A.      Yes.**

4        Q.      And there are several lines of

5    text -- I beg your pardon -- there are several lines

6    of text that have now been stricken to reflect that

7    this particular definition had -- let me withdraw

8    that question.

9                    If we can go up to the beginning,

10   please.

11                   So in the December 18, 2021 Plan,

12   Mr. Desai, where this was Section IV-R, Privileged

13   Information, it had several lines of additional text

14   that have now been removed in the February 15, 2022

15   definition.

16                   Do you see that?

17       **A.      Yes.**

18       Q.      And is it the Debtors' position that

19   it validly exercised its business judgment in

20   modifying this definition between the February 18 --

21   I'm sorry, between the December 18, 2021 Plan and the

22   February 15, 2022 Plan?

23       **A.      Yes, it is.**

24       Q.      And with respect to the bases upon

25   which that business judgment was exercised, do you

1    have anything to add or say differently about -- than

2    the prior answers that you've given with respect to

3    other provisions of the changes between the December

4    and February plans?

5         **A.      No, sir.**

6         Q.      Okay.

7              MR. LLOYD:  And Mr. Andolina, if I

8    were to ask Mr. Desai about the negotiated changes

9    that led to the difference between the December 18th

10   and February 15th versions of the definition -- of

11   the provision for privileged information, to the

12   extent that came out of the mediation, you'd instruct

13   him not to answer on the grounds of mediation

14   privilege?

15             MR. ANDOLINA:  Correct.

16             MR. LLOYD:  And to the extent that

17   the Debtor exercised its business judgment based upon

18   the specific advice of counsel in respect to making

19   the changes between December 18, 2021 and February

20   15, 2022, you'd instruct him not to answer on the

21   basis of attorney-client privilege?

22             MR. ANDOLINA:  That's correct.

23             MR. LLOYD:  If we can turn please to

24   Section W, as in Water, a few down.

25   BY MR. LLOYD:

IN RE BOY SCOUTS AND DELAWARE BSA

1        Q.      Section W, Mr. Desai, which is on

2   page 90 of 304, is entitled:  Settlement Trust

3   Discovery.

4                This entire section is in the blue

5   type, which indicates that it was added between the

6   December 18, 2021 Plan and the February 15, 2022

7   Plan.

8                Do you see that?

9        **A.      I do.**

10       Q.      Okay.  It reads:  Settlement Trust

11  Discovery, the Settlement Trust and holders of Direct

12  Abuse Claims are authorized pursuant to bankruptcy

13  rule 2004 and/or applicable discovery rules to obtain

14  information as set forth in Document Appendix except

15  for the avoidance of doubt to the TCJC.  For the

16  avoidance of doubt, the authorization of any

17  discovery request pursuant to this provision shall

18  not be construed to deprive the recipient of such

19  discovery request of any applicable privilege or

20  immunity from discovery.  The Settlement Trust and

21  holders of direct Abuse Claims shall be able to take

22  whatever steps are necessary to enforce such

23  discovery obligations of Chartered Organizations,

24  excluding TCJC and the United Methodists entities,

25  pursuant to Bankruptcy Rule 2004, Civil Rule 45,

1  other Court resolution processes and under bankruptcy

2  law and applicable nonbankruptcy law.

3            Do you see that, sir?

4     A.     Yes.

5     Q.     And have I read that correctly?

6     A.     Yes.

7     Q.     Do you know, based on your

8  participation in the mediation sessions between the

9  December 18, 2021 Plan and the February 15, 2022

10 Plan, do you know who first proposed this provision?

11    A.     I do not.

12    Q.     Do you recall discussions in respect

13 to this provision?

14    A.     I do.

15    Q.     Okay.

16            MR. LLOYD:  And if, Mr. Andolina, we

17 were to exhaust Mr. Desai's recollection in respect

18 to those discussions, you would invoke the mediation

19 privilege and instruct him not to answer?

20            MR. SCHIAVONI:  Objection.

21            MR. ANDOLINA:  Yes.  And to the

22 extent -- to the extent the discussions were with

23 counsel, I would invoke the attorney-client

24 privilege.

25            MR. LLOYD:  Thank you.

1            MR. ANDOLINA:  I don't think your

2   question is specific.

3            MR. LLOYD:  Right.  I hadn't gotten

4   there, but I appreciate the clarification.

5   BY MR. LLOYD:

6        Q.    And Mr. Desai, do you have anything

7   to add in respect to this provision, Article IV-W

8   Settlement Trust Discovery -- let me ask another

9   question.  I apologize.  I'll withdraw that question.

10            Is it the Debtors' position,

11   Mr. Desai, that in including this provision, Article

12   IV-W Settlement Trust Discovery in the February 15,

13   2022 Plan, the Debtors validly exercised their

14   business judgment?

15            MR. ANDOLINA:  Objection.

16        **A.    Yes, it is.**

17   BY MR. LLOYD:

18        Q.    And do you have anything to add to

19   the considerations that the Debtor made in respect to

20   including this that is different from or in addition

21   to the other changes between the December 18, 2021

22   Plan and the February 15, 2022 Plan that we've been

23   discussing today?

24        **A.    The only thing I would add is that I**

25   **have specific recollection during several Bankruptcy**

1    Task Force NEC meetings of having dialogue amongst

2    the members and our counsel relative to this

3    provision because of the negotiations taking place in

4    late January and February and in particular, I recall

5    negotiations and parties' positions, including the

6    TCC, relative to this provision, and our advisors had

7    made certain presentations, which I do believe are

8    part of the production, at or near the February 10-12

9    timeframe where the BTF NEC authorized our advisors

10   to agree to terms that they felt were appropriate to

11   be able to file an acceptable plan on or before the

12   deadline of February 15th.

13        Q.      And to the extent -- excuse me,

14   Mr. Desai -- did I understand you correctly that you

15   have a specific recollection of a position that was

16   taken in respect to Article IV-W by the TCJC?  I'm

17   not asking about what they said, but you have a

18   specific recollection about that?

19        A.      All I know is that this Provision W

20   was the subject of negotiations and it was one of the

21   points, out of several, that required more active

22   negotiation by our advisors in order to obtain

23   support from the TCC to support the Plan.

24                MR. ANDOLINA:  I'll just caution

25   Mr. Desai to avoid revealing specific positions.

1            No problem with him testifying as to

2    topics that were discussed by advisors but with

3    respect to specific mediation positions or advice

4    given by counsel, I'll just admonish him not to share

5    such information.

6    BY MR. LLOYD:

7        Q.    If we could turn, please, to Article

8    V.  Here we are, and Section M, please -- Subsection

9    M.

10            And Mr. Desai, if you look at Article

11   V-M, there are additions in blue, which indicate a

12   change from the December 18th to the February 15th

13   Plan.  I think this is just because of the way the

14   redline produced that the numbers start renumbering.

15            But if you look at the second number

16   1 that goes after No. 7 and it says 54 million --

17   actually, let me back up.  I beg your pardon.

18            So this is Section M.  It's called

19   calculation of Minimum Unrestricted Cash and

20   Investments.

21            Do you see that, sir?

22   **A.    Yes, I do.**

23       Q.    And it says:  The minimum amount Of

24   Unrestricted Cash and Investments to be retained by

25   Reorganized BSA on the Effective Date shall be -- and

1    then it has a series of amounts that correspond to a

2    series of date.

3              Do you see that, sir?

**4**    **A.    I do.**

5        Q.    And if you go down below No. 7, it

6    says -- there's a new number one, which used to be

7    number 8 and probably is new number 8, but in any

8    event, in the redline it's new No. 1 and it says:  54

9    million if the Effective Date occurs on or after

10   April 1, 2022 but before May 1, 2022.

11             Do you see that, sir?

**12**   **A.    Yes.**

13       Q.    And it then says:  43 million if the

14   Effective Date occurs on or after May 1, 2022 but

15   before June 1, 2022.

16             Do you see that, sir?

**17**   **A.    Yes.**

18       Q.    And then it says:  34 million if the

19   Effective Date occurs on or after June 1, 2022.

20             Do you see that, sir?

**21**   **A.    Yes.**

22       Q.    And is it the Debtors' position that

23   the changes that we just went over, between the

24   December 18, 2021 Plan and the February 15, 2022

25   Plan, were a valid exercise of the Debtors' business

```
 1   judgment?

 2           A.      Yes.

 3                   MR. ANDOLINA:  Objection to form.

 4   BY MR. LLOYD:

 5           Q.      And beyond the information that

 6   you've provided to us about the things that the

 7   Debtor considered in exercising its business judgment

 8   with respect to other changes that we've been

 9   discussing today, between the December 2021 Plan and

10   the February 2022 Plan, do you have anything to add

11   about the information that the Debtors considered?

12                   MR. SCHIAVONI:  Objection to form.

13           A.      No, other than I would just

14   highlight, for this particular topic, dealing with

15   unrestricted cash and investments, we relied heavily

16   on advice and input and presentations from our

17   financial restructuring advisors at Marsal Alvarez in

18   order to provide us with the necessary information

19   such that we could authorize advisors to negotiate

20   what you see before you with the parties in order to

21   garner continued support for the Plan.

22           Q.      If we could turn to S, below M.

23                   And before we get there, in terms of

24   the mantra that we had just been going through,

25   Mr. Desai, in terms of those cash numbers and the
```

1  corresponding dates, were you personally involved in

2  negotiating those numbers as part of the mediation

3  discussions between December 18 and February 15

4  Plans?

5        A.      No.

6        Q.      I'm sorry, that was a no?

7        A.      You asked me if I was personally

8  involved in negotiating the numbers, meaning, did I

9  negotiate, you know, let us keep a dollar, you keep

10  5, no.  I was not a party to that, no.

11        Q.      Were you generally involved in the

12  negotiations in respect to the ranges of numbers?

13              MR. ANDOLINA:  Objection to form.

14        A.      I would say that I was generally

15  involved, as a member of the BTF and NEC, in

16  discussing with our advisors, various numbers and

17  options and then eventually voting to provide our

18  advisors the parameters in which the organization

19  would support.

20        Q.      Okay.  And what parameters did your

21  advisors suggest?

22              MR. ANDOLINA:  Objection; calls for

23  attorney-client communications.

24  BY MR. LLOYD:

25        Q.      So Mr. Desai, I had understood that

1  you were saying that this was discussion with your

2  financial advisors.

3            Were there others, other than your

4  financial advisors, who were part of those

5  discussions?

6      **A.      Yes.**

7      Q.      Who else was involved?

8      **A.      There has not been a day where we**

9  **have not had our restructuring advisors on the phone**

10 **or in meetings participating and guiding us through**

11 **this process.  And so while these discussions were**

12 **taking place with the BTF and the NEC, I, in addition**

13 **to our financial advisors, counsel from White & Case**

14 **was always present.**

15     Q.      Okay.

16            MR. LLOYD:  So Mr. Andolina, as we've

17 been doing, so to the extent that the Bankruptcy Task

18 Force and the National Executive Committee relied on

19 advice of counsel in making the changes to Section

20 5M, you'd instruct him not to answer on

21 attorney-client privilege?

22            MR. ANDOLINA:  Correct.

23            MR. LLOYD:  Thank you.

24            Okay.  We can go to -- now if we

25 could go to V-S please.  That's not where we are.  If

```
 1   we can scroll up a little bit.  Actually, why

 2   don't -- are you -- I'm making very good progress,

 3   but do you guys want to take five or ten?

 4            MR. ANDOLINA:  Yeah, let's take ten.

 5   And do you have a sense, Mr. Lloyd, of how much

 6   you've got left?

 7            MR. LLOYD:  I sure do.  I think

 8   it's -- I think it is more than 20 and less than 40.

 9            MR. ANDOLINA:  Wow, that's one of the

10   best estimates I've heard from a lawyer.  Thank you.

11            MR. LLOYD:  You're welcome.

12            MR. ANDOLINA:  All right.  We'll go

13   off.

14            THE VIDEOGRAPHER:  All right.  Going

15   off the record at 10:53 eastern time.

16            (A brief recess was taken.)

17            THE VIDEOGRAPHER:  Everything is

18   recording and we are back on the record at 11:03 a.m.

19   eastern time.

20   BY MR. LLOYD:

21        Q.    So Mr. Desai, you can set aside the

22   blackline we've been talking about and I --

23            MR. LLOYD:  This just occurred to me.

24            So Mike, if it's easier, so I have a

25   few questions on each of the Hartford, Zurich,
```

Page 110

1  Clarendon settlements.

2             If you want to break and get those

3  forms or we can just put them up in the chat.

4             MR. ANDOLINA:  We can just put them

5  up in the chat.

6             MR. LLOYD:  That's fine.  All right.

7             So if the reporter would mark as

8  Exhibit 5 the Hartford Settlement.

9             (Exhibit 5, Hartford Settlement, was

10        marked for Identification by the court

11        reporter.)

12             THE REPORTER:  Are we on 5 or 6?

13             (A discussion was held off the

14        record.)

15             MR. LLOYD:  So if we can have as 5

16  then the Hartford Settlement.

17  BY MR. LLOYD:

18        Q.    So Mr. Desai, I'm showing you what's

19  been marked as Exhibit 5 and this bears a Docket

20  number in the Bankruptcy of 8816-1.  It's filed on

21  February 15 of 2022 and the heading says Exhibit 1,

22  Hartford Insurance Settlement Agreement.

23             Do you see that, sir?

24        **A.    Yes, sir.**

25        Q.    And in preparing for today's

1   deposition, did you become or were you generally

2   familiar with the terms and conditions of the

3   Hartford Insurance Settlement Agreement as it

4   respects to Debtors' exercise of business judgment to

5   enter into this settlement agreement?

6        A.      Yes, sir.

7        Q.      And is it the Debtors' position that

8   they validly exercised their business judgment in

9   entering into the Hartford Insurance Settlement

10  Agreement?

11       A.      Yes, it is.

12       Q.      Earlier today -- excuse me,

13  Mr. Desai.  We spoke about the Debtors' exercise of

14  business judgment concerning Century Term Sheet.

15              We spoke about the Debtors' exercise

16  of business judgment in respect to the February 15,

17  2022 Plan and you provided us with information about

18  the considerations and the types of information that

19  the Bankruptcy Task Force and the National Executive

20  Committee considered in exercising its business

21  judgment.

22              Do you recall that testimony?

23       A.      Yes, sir.

24       Q.      And with respect to the Hartford

25  Settlement Agreement, is there anything different

 1  that you can share with us that is not mediation

 2  privileged and is not attorney-client privileged, as

 3  it respects the Hartford Insurance Settlement

 4  Agreement for the exercise of its business judgment?

 5          A.        The only thing I would add is that at

 6  the time that the Hartford Insurance Settlement

 7  Agreement was entered into, it involved the support

 8  of the Coalition and the Future Claimants'

 9  Representative and during the negotiations, of course

10  our counsel provided the BTF and NEC with the updates

11  and positions of various parties.  And eventually,

12  the BTF and NEC authorized our advisors to negotiate

13  to successful conclusion the Hartford Agreement and

14  inside the agreement, one of the conditions that we

15  were very keen on ensuring was the continued

16  building, if you will, of additional support by

17  various other parties, whether it's -- other

18  Chartered Organizations, whether it's other insurers,

19  whoever, to eventually join into what I would call

20  the initial agreement with Hartford as the first

21  insurer to resolve the claims with us.  And this

22  document did speak to the intent and request by the

23  parties to the agreement to allow for ongoing

24  discussions to take place that would allow for

25  further protections of parties who wished to join.

1        Q.        Is it fair to say that the Hartford

2   Settlement Agreement, which was filed on February

3   15th of 2022, was that agreement or portions of that

4   agreement, were they negotiated as part of the

5   mediation sessions you've been talking to us about

6   today between December and February?

7        **A.        I would say yes.**

8                MR. LLOYD:  And so, Mr. Andolina, to

9   the extent that information that the Bankruptcy Task

10   Force, National Executive Committee, considered in

11   the Debtors' exercise of their business judgment that

12   arose from those mediations, you'd instruct Mr. Desai

13   not to reveal those discussions and information on

14   the basis of mediation privilege?

15                MR. ANDOLINA:  Yes, with respect to

16   specific positions taken in the mediation, but as

17   Mr. Desai has testified to the various topics that

18   were considered and as is reflected from the

19   presentation and minutes to the BTF, the NEC and NEB,

20   those are what they are in terms of the record, but

21   yes, on specific mediation communications, I'm

22   instructing him not to provide those.

23                MR. LLOYD:  And, similarly, with

24   respect to specific communications that the

25   Bankruptcy Task Force and the National Executive

Page 114

1   Committee received from restructuring and insurance

2   counsel in respect to the Hartford Insurance

3   Settlement Agreement, you'd instruct Mr. Desai not to

4   answer on the grounds of attorney-client privilege?

5                   MR. ANDOLINA:  Yes, with respect to

6   communications that reflect legal advice, that is

7   correct.

8                   MR. LLOYD:  If we can pull up the

9   next agreement, which will be the Zurich Insurance

10  Settlement Agreement.  I promise I won't say that

11  five times fast.

12  BY MR. LLOYD:

13      Q.      Mr. Desai, I'm showing you what has

14  been marked as Exhibit 6, and this is a document.  It

15  bears the reference of 8817-2, filed February 15,

16  2022 and it says Exhibit 2, Zurich Insurance

17  Settlement Agreement.

18                  Do you see this, sir?

19      **A.      Yes, sir.**

20                  (Exhibit 6, Zurich Insurance

21          Settlement Agreement, was marked for

22          Identification by the court reporter.)

23  BY MR. LLOYD:

24      Q.      And in coming to testify today about

25  the Debtors' exercise of its business judgment in

1  respect to the Zurich Insurance Settlement Agreement,

2  entering into that agreement, is it fair to say that

3  you're generally familiar with the terms and

4  conspiracy of this agreement?

5       **A.     Yes, sir.**

6       Q.     And is it the Debtors' position that

7  the Debtors validly exercised their business judgment

8  in entering into the Zurich Insurance Settlement

9  Agreement?

10       **A.     Yes.**

11       Q.     And beyond the information that you

12  have provided to us today, in respect to -- beg your

13  pardon -- the Century Term Sheet, the February 15,

14  2022 Plan and the Hartford Settlement Insurance

15  Agreement, is there any information for you to share

16  in respect to the information that the Debtors

17  considered in exercising their business judgment to

18  enter into the Zurich Insurance Settlement Agreement?

19       **A.     The only other thing I would add, and**

20  **I may have said this previously, but as we continued**

21  **to evolve in the ability to build a larger settlement**

22  **trust, the various settlements with insurers all have**

23  **some interplay in them as it relates to the various**

24  **definitions that we spent some time on today, and so**

25  **the agreements needed to continually be modified and**

1    negotiated.

2                    And as you saw, there were several

3    conversations, both with our advisors through the BTF

4    and the NEC process, but there were also many ongoing

5    mediation sessions that the parties engaged in, in

6    order to achieve what we previously set out to

7    achieve during the initial Hartford Settlement

8    Agreement, which was to protect our Chartered

9    Organizations and as we continued to build on the

10   number of settlements with various insurers and the

11   number of parties that eventually joined these

12   agreements, the parties had to go back and certainly

13   negotiate certain points to allow for the entry of

14   others to come in.  And so our advisors were very

15   active in that process and in terms of the Board or

16   the NEC or the BTF, we were kept abreast of the

17   various updates, negotiations, real-time updates, if

18   you will, even from our advisors as to how agreements

19   and the status of those negotiations were going and

20   where parties were having some level of discussion or

21   breakdown and what could we do in working through the

22   mediator to help facilitate some consensus among the

23   various parties.

24                    MR. LLOYD:  And to the extent that

25   Mr. Desai recalls and can share with us,

1  Mr. Andolina, specific positions that were taken by

2  parties in respect to the Zurich Insurance Settlement

3  Agreement, during the years in process, you would

4  instruct him not to reveal the contents of that

5  information on the basis of mediation privilege?

6                    MR. ANDOLINA:  That's correct.

7                    MR. LLOYD:  And to the extent that in

8  exercising its business judgment, the Debtors relied

9  on specific legal advice from their legal advisors in

10  exercising their business judgment to enter into the

11  Zurich Insurance Agreement, you'd instruct him not to

12  answer on the grounds of attorney-client privilege?

13                    MR. ANDOLINA:  Correct.

14                    MR. LLOYD:  If we can pull up next

15  the Clarendon Insurance Agreement, please.

16                    (Exhibit 7, Clarendon Insurance

17          Agreement, was marked for Identification by

18          the court reporter.)

19  BY MR. LLOYD:

20      Q.    Mr. Desai, I'm showing you what's

21  been marked as Exhibit 7, and this is -- bears a

22  document locator at the top of 8817-3.  It says:

23  Filed February 2nd -- I'm sorry, filed February 15,

24  2022 and it's got the Case No. 20-10343-LSS.  This is

25  filed in the Debtors' Bankruptcy and it says Exhibit

IN RE BOY SCOUTS AND DELAWARE BSA

1   3, Clarendon Insurance Settlement Agreement.

2               And in coming here today to be the

3   representative deponent of the Debtors in respect to

4   the exercise of their business judgment to enter into

5   the Clarendon Insurance Settlement Agreement, is it

6   fair to say, sir, that you are generally familiar

7   with the terms and conditions of this document?

8       **A.      Yes, sir.**

9       Q.      And is it the Debtors' position that

10  they validly exercised their business judgment in

11  deciding to enter into the Clarendon Insurance

12  Settlement Agreement?

13      **A.      Yes, sir.**

14      Q.      And beyond the information that you

15  shared with us with respect to the Century Term

16  Sheet, the February 2022 plan, the Hartford Insurance

17  Settlement Agreement and the Zurich Insurance

18  Settlement Agreement, is there anything different or

19  additional that you have to share about the Debtors'

20  exercise of the business judgment in respect to the

21  Clarendon Insurance Settlement Agreement?

22      **A.      No, sir.**

23              MR. SCHIAVONI:  Objection to form.

24              MR. LLOYD:  Mr. Andolina, to the

25  extent that the Debtors exercise of their business

 1    judgment was informed by information that they

 2    received in the context of the mediation, you'd

 3    instruct Mr. Desai not to reveal specific positions

 4    that were taken by various mediation parties on the

 5    grounds of mediation privilege?

 6                   MR. ANDOLINA:  That is correct.

 7                   MR. LLOYD:  And to the extent that

 8    the Debtors exercise of its business judgment in

 9    entering into the Clarendon Insurance Settlement

10    Agreement in which the Debtors considered the advice

11    of restructuring and insurance counsel, you would

12    instruct Mr. Desai not to answer in respect to

13    specific legal advice on the grounds of

14    attorney-client privilege?

15                   MR. ANDOLINA:  Correct.

16                   MR. LLOYD:  All right.  If we can

17    pull up the Century/Chubb Settlement.  So this is 8.

18                   (Exhibit 8, Century/Chubb Settlement

19           Agreement, was marked for Identification by

20           the court reporter.)

21    BY MR. LLOYD:

22        Q.    Mr. Desai, I'm showing you what's

23    been marked as Exhibit 8.  It bears the document

24    locator 8817-1.  It was filed February 15, 2022 and

25    it says:  Exhibit 1, Century and Chubb Companies

Page 120

1    Insurance Settlement Agreement.

2                    Do you see that, sir?

**3      A.      Yes.**

4        Q.      And in appearing today as the

5    representative deponent of the Debtors to testify

6    concerning the exercise of the Debtors' business

7    judgment to enter into the Century and Chubb

8    Insurance Companies Settlement Agreement, did you

9    become generally familiar with the terms and

10   conditions of this document?

11                   MR. SCHIAVONI:  Objection, Counselor.

12   Can you point us to which topic you're referring to?

13   Topic 10 only refers to the Century Term Sheet.  It

14   doesn't refer to the Settlement Agreement.

15                   Which topic are you representing this

16   witness is a 30(b)(6) witness on with regard to the

17   agreement itself?

18                   MR. LLOYD:  Let me pull up the

19   exhibit.

20                   I think it was embedded into Topic

21   No. 10, Mr. Schiavoni, if you're going to object, you

22   can object -- I think there will only be a short

23   number of questions.

24                   But if you're going to object, please

25   state your objection.  I think it was intended to be

1    embedded in 10.

2              MR. SCHIAVONI:  I think the Notice is

3    extremely clear when you wanted to use Agreement, you

4    use it very clearly, in 12 and 13 and 14, you

5    intentionally did not use it with regard to Century.

6    You intentionally did all your questioning about the

7    Term Sheet and not about the Settlement Agreement.

8    It's a hundred percent clear that the witness was not

9    designated on the Settlement Agreement and you didn't

10   seek a designation of the witness on the Settlement

11   Agreement.

12             So I do object that the testimony is

13   not corporate designee testimony under 10.  10 is

14   only about the term sheet.

15   BY MR. LLOYD:

16        Q.    Okay.  So Mr. Desai, you testified

17   that you generally became familiar with the terms and

18   conditions of Exhibit 8 in preparing to testify

19   today; is that correct?

20        **A.    Yes.**

21        Q.    And is it the Debtors' position that

22   in entering into the Century and Chubb Companies

23   Insurance Settlement Agreement, the Debtors validly

24   exercised their business judgment?

25             MR. SCHIAVONI:  Objection; outside

IN RE BOY SCOUTS AND DELAWARE BSA

1    the scope.

2               MR. LLOYD:  You may answer.

3         **A.        Yes, we -- yes, we did.**

4    BY MR. LLOYD:

5         Q.        Beyond the information that you've

6    provided to us today in talking about the Debtors'

7    exercise of its business judgment in entering into

8    the Century Term Sheet, the February 15, 2022 plan,

9    the Hartford settlement, the Zurich settlement, the

10   Clarendon settlement, is there any additional

11   information or different information you have to

12   provide to us concerning the Debtors' exercise of its

13   business judgment to enter into the Century and Chubb

14   Insurance Companies Settlement Agreement?

15              MR. SCHIAVONI:  Objection; outside

16   the scope of the notice and objection to form as

17   incomprehensible.

18              MR. ANDOLINA:  I'll object to the

19   form.  I will note that Mr. Schiavoni is accurate.

20   There's not a specific designation in the RCAHC

21   notice as to the Century Term Sheet.

22              With that reservation, I'll allow

23   Mr. Desai to answer questions with respect to the

24   Century -- I'm sorry, with respect to the Century

25   Settlement Agreement.  I'll allow him to answer

1   questions.

2              MR. SCHIAVONI:  In his personal

3   capacity, Mr. Andolina, or as a corporate

4   representative?

5              MR. ANDOLINA:  I think given the

6   limited number of questions that have been asked, he

7   can testify as a corporate representative.

8       **A.      I would simply -- could you reask the**

9   **question, please?**

10      Q.      Yeah, happy to.

11             So Mr. Desai, you've shared with us

12  today various types of information that the Debtors

13  considered in the exercise of their business judgment

14  in entering into various agreements that we've

15  discussed today and in making certain modifications

16  between the December 2021 Plan and the February 2022

17  Plan.

18             So my question to you is:  In

19  entering into the Century and Chubb Companies

20  Insurance Settlement Agreement, was there additional

21  or different information that you can share with us

22  that the Debtors considered in exercising their

23  business judgment?

24             MR. SCHIAVONI:  Objection to form;

25  incomprehensible and inconsequential.

1         A.         The only thing I would add is that by

2    the time that this agreement materialized and

3    finalized and filed with the Court, the Tort

4    Claimants Committee had become a participant in the

5    negotiations with this agreement and as a result of

6    many, many, many settlement-related conversations,

7    not only at the mediation itself and in Los Angeles

8    but also elsewhere, coupled with the information that

9    we, as a Bankruptcy Task Force and the NEC received

10   through the various presentations and conversations

11   with our advisors, I can tell you that the Debtor did

12   exercise its business judgment in fairly and

13   thoroughly evaluating the terms and conditions of the

14   Settlement Agreement with Chubb and Century, and as a

15   result, authorized our advisors to move forward with

16   it.

17                    MR. LLOYD:  To the extent that the

18   information that the Debtors considered involved

19   positions that were taken by parties in the mediation

20   that occurred between December of 2021 and February

21   of 2022, Mr. Andolina, you will instruct Mr. Desai

22   not to answer on the grounds of mediation privilege?

23                    MR. ANDOLINA:  That's correct.

24                    MR. LLOYD:  And to the extent that in

25   exercising its business judgment to enter into the

1   Century and Chubb Companies Insurance Settlement

2   Agreement, the Debtors relied on specific legal

3   advice from restructuring and insurance counsel,

4   you'll instruct him not to answer on the grounds of

5   attorney-client privilege?

6               MR. ANDOLINA:  That's also correct.

7               MR. LLOYD:  Mr. Desai, that's all I

8   have for you today.  I very much appreciate your time

9   and I appreciate your willingness and preparation.  I

10  know these are long documents and I appreciate your

11  being prepared on them.  Thank you.

12              THE DEPONENT:  Thank you for your

13  courtesy, Mr. Lloyd.

14              (A discussion was held off the

15      record.)

16              THE VIDEOGRAPHER:  Going off the

17  record, 11:25 eastern time.

18              MS. LUJAN-WOLFF:  Hi, this is Delia

19  Lujan-Wolff.  I have a few questions, but before we

20  get to that, can we just take a five-minute break?

21              THE VIDEOGRAPHER:  Going off the

22  record, 11:25 eastern time.

23  EXAMINATION BY MS. LUJAN-WOLFF:

24              THE VIDEOGRAPHER:  We are back on the

25  record at 11:34 eastern time.

IN RE BOY SCOUTS AND DELAWARE BSA

1          Q.       Thank you.  So Mr. Desai, this is

2    Delia Lujan-Wolff.  I represent certain survivors of

3    child sexual abuse or creditors in this bankruptcy

4    case and I just have a few questions.

5                    If we can, I believe, go back to

6    Exhibit 3, which is the Century Term Sheet and

7    specifically, I believe it was Paragraph 12.

8                    MR. ANDOLINA:  I'm just going to

9    object to this entire line of questioning.  I don't

10   believe that Ms. Wolff noticed this deposition.  I'll

11   allow her to answer -- ask questions and I'll allow

12   Mr. Desai to answer them, but this deposition was not

13   noticed by Ms. Wolff.  She's a member of the TCC and

14   we did not receive a notice with respect to any

15   categories so I'll reserve my --

16                    MS. LUJAN-WOLFF:  Yeah, well --

17                    MR. ANDOLINA:  I'll reserve my

18   specific objections for your questions.  Go ahead.

19                    MS. LUJAN-WOLFF:  I will just note

20   for the record that I am not a member of the TCC.  I

21   have a client who's on the TCC but I am not a member

22   of the TCC.  I'm counsel for survivors of abuse.

23                    MR. ANDOLINA:  I understand.

24   BY MS. LUJAN-WOLFF:

25          Q.       So just going to refer you, sir, to

Page 127

1    paragraph 12, what you see there which says:

2    Bankrupt Chartered Organizations, and are you

3    familiar, sir, with this paragraph of the Century

4    Term Sheet?

5         **A.      I have seen this before, yes.**

6    BY MS. LUJAN-WOLFF:

7         Q.      Okay.  I'm not going to go through it

8    but do you recall the Boy Scouts, the BSA, exercising

9    their reasonable business judgment in approving of

10   this term -- approving this term?

11                MR. ANDOLINA:  Objection to form.

12        **A.      We exercised our --**

13                MS. LUJAN-WOLFF:  Go ahead.

14        **A.      We exercised our business judgment in**

15   **entering into the entire document as I see before me.**

16   BY MS. LUJAN-WOLFF:

17        Q.      Okay.  Let's just go into the

18   paragraph a little bit.  Now, you see there -- I'll

19   just read it.

20                It says:  The BSA shall use best

21   efforts to work with the Roman Catholic Ad Hoc

22   Committee and the Chartered Organizations that are

23   Debtors in bankruptcy, the eight bankrupt entities

24   identified on Exhibit K to the Amended Plan, which

25   may be amended to the extent that additional

1  Chartered Organizations file for bankruptcy

2  protection prior to entry of the Confirmation Order,

3  the bankrupt chartered organization, to obtain

4  written consent for them to content to the terms

5  thereof and the Agreement.  To the extent that a

6  Bankrupt Chartered Organization will not provide

7  written consent to this Term Sheet and the Agreement,

8  the Parties will use reasonable efforts to jointly

9  resolve such non-consent which may, upon the consent

10  of the Parties, include excluding such Bankrupt

11  Chartered Organization from the protection and

12  benefits otherwise provided herein and in the

13  Agreement provided that the failure to obtain such

14  consent as it applies to the applicable Bankrupt

15  Chartered Organizations shall not be deemed a breach

16  of the Agreement by any Party or a failure to satisfy

17  conditions to the effectiveness of the Agreement or

18  the Amended Plan.  The Parties consent to the

19  foregoing provisions covering the Settling Insurers

20  to apply to any other Settling Insurance Company.

21            Now, sir, I'm sorry I had to read

22  that all, but did I read that accurately?

23       **A.    Yes, ma'am.**

24       Q.    Okay.  And now that I've read it, and

25  you've had an opportunity to hear it, let me ask

1  specifically, not for the whole document, but for

2  this Paragraph 12 of the Term Sheet, did the Debtors

3  exercise reasonable business judgment in approving

4  this paragraph?

5            MR. ANDOLINA:  Objection to the form

6  of the question.  This is also outside the scope of

7  the Notice and Ms. Wolff did not separately notice a

8  30(b)(6) deposition of Mr. Desai.  Subject to those

9  objections, he can answer.

10       **A.       We did exercise our reasonable**

11  **business judgment in entering into the entire**

12  **document which does contain Paragraph 12 as you just**

13  **read.**

14  BY MS. LUJAN-WOLFF:

15       Q.       And what is the basis for what you've

16  just said?

17       **A.       The basis for what I just said is**

18  **what I previously testified to during Mr. Lloyd's**

19  **questioning as far as what business judgment the BTF**

20  **and the NEC utilized in entering into this agreement.**

21       Q.       Okay.  And at the time that the BSA,

22  the Boy Scouts of America, approved this Paragraph

23  12, Century's settlement amount was 800 million,

24  correct?

25            MR. ANDOLINA:  Objection to the form

1    of the question.

**2         A.         I would defer to this particular**

**3    document as to what the exact dollar amount was and**

**4    if it says 800, then I would agree.**

5    BY MS. LUJAN-WOLFF:

6         Q.         Okay.  And that amount hasn't

7    changed, correct, up to the current date?

**8         A.         Not that I'm aware of.**

9         Q.         And to your knowledge, did this term

10   change, this Paragraph 12?

11                   MR. ANDOLINA:  Objection to form;

12   vague.

13   BY MS. LUJAN-WOLFF:

14        Q.         In other words, is this Paragraph 12

15   still a provision of a Century agreement?  Is this a

16   term of the agreement?

**17        A.         I would have to look at the finalized**

**18   document to be able to answer that question.**

19        Q.         Okay.  So are you aware of the BSA

20   exercising any reasonable judgment in altering this

21   term, Paragraph 12?

22                   MR. ANDOLINA:  Objection to form.

23   Same objection as to scope.  You can answer

24   individually.

**25        A.         As I indicated previously during**

1  Mr. Lloyd's questioning, the Board, meeting, the NEC

2  as well as the Bankruptcy Task Force, would have

3  relied upon the advice of counsel as well as our

4  discussions during our many conversations in meetings

5  as exhibited by the meeting minutes coupled with the

6  presentations made, as well as the party's ongoing

7  settlement discussions during mediation sessions,

8  which would have then resulted in a finalized version

9  of the Century Term Sheet into the Century Settlement

10  Agreement.

11        Q.      Okay.  So let's go to Paragraph 13,

12  which you looked at earlier with Mr. Lloyd.

13  Paragraph 13 says Opt-Out Chartered Organizations.

14              Do you recall that, sir?

15        A.      Yes, ma'am.

16        Q.      And you recall that this paragraph

17  provides that an Opt-Out Chartered Organization

18  shall -- I'm sorry -- okay.

19              It says here that -- and I'll just

20  read it again:  Under the Amended Plan and as -- as a

21  condition to the Effective Date (waiver of which

22  shall require the prior written consent of, among

23  others, the Settling Insurers) any chartered

24  organization that is not a contributing chartered

25  organization (and is not a Participating Chartered

1   Organization), an Opt-Out Chartered Organization

2   (i.e., a chartered organization that objects to the

3   Amended Plan) shall receive the benefit of the

4   Settling Insurer Policy injunction and the release of

5   all Abuse Claims that are covered under the insurance

6   policies issued by the Settling Insurers on the

7   Release Date.

8               Okay.  So -- and then it says here:

9   No Chartered Organization that is an Opt-Out

10  Chartered Organization may become a contributing

11  Chartered Organization unless a financial

12  contribution -- I'm sorry, I'm reading off my phone

13  and it's small type print, unless (a), a financial

14  contribution is made by or on behalf of such Opt-Out

15  Chartered Organizations, (b), such chartered

16  organization agrees to provide the assignments and

17  releases set forth in Section 9 and 10, and (c), if

18  and to the extent required by BSA, it agrees to

19  cooperate with Youth Protection.

20              So is it correct that in, according

21  to this Paragraph 13, in order for an Opt-Out

22  Chartered Organization to receive the benefits of

23  a -- I'm sorry -- I'm sorry.  You know, I'm just

24  going to strike that.  I'll strike that whole line of

25  questioning regarding Paragraph 13.

1                    MS. LUJAN-WOLFF:  Let's look to --

2   let's look to Exhibit 4, please, if you can pull that

3   up and go to Definitions.  I believe it was of -- it

4   was definition 196.  I'll see if I can locate that.

5   Thank you, it looks like you're doing a good job.  I

6   believe that was No. 196.

7                    MR. ANDOLINA:  Sorry, Ms. Wolff, are

8   you asking to give him --

9                    MS. LUJAN-WOLFF:  Yes, I'm sorry,

10  yes, I'm going to Definition and it's number 196.

11                   MR. ANDOLINA:  Okay.  We're losing

12  control of the screen we're on now.  We're on 3 so

13  we've got a ways to go.  There we go.  Now, we're on

14  the same page.

15                   MS. LUJAN-WOLFF:  Sorry.

16                   MR. ANDOLINA:  Are you controlling

17  that on your phone?

18                   MS. LUJAN-WOLFF:  No, I'm not doing

19  anything.  I'm trying to read things and do this all

20  on one screen.

21                   MR. ANDOLINA:  All right.  We're

22  moving in the right direction here.  Okay.  Is that

23  what you wanted?

24                   MS. LUJAN-WOLFF:  Yes, exactly.

25  Okay.

1  BY MS. LUJAN-WOLFF:

2      Q.      Now, sir, you testified earlier

3  that -- well, Mr. Lloyd questioned you earlier about

4  the changes that were made to arrive at this third

5  modified plan and you looked specifically at this

6  definition of Opt-Out Chartered Organization,

7  correct?

8              MR. ANDOLINA:  Objection to form.

9      **A.      We did discuss this, yes.**

10  BY MS. WOLFF:

11      Q.      Okay.  So I'm going to direct your

12  attention to to -- I believe it's the last sentence,

13  the last sentence that's on Page 35 there, which is

14  in green.

15              You see that it says:

16  Notwithstanding the foregoing, with respect to any

17  Chartered Organization that is a Debtor in bankruptcy

18  as of the Confirmation Date, such Chartered

19  Organization shall be treated as an Opt-Out Chartered

20  Organization and will only be treated as a

21  Participating Chartered Organization if it advises

22  the Debtors' counsel in writing that it wishes to

23  make the Participating Chartered Organization

24  insurance assignment and for the avoidance of doubt,

25  absent such written advisement, none of such

Page 135

1    Chartered Organization's rights to or under the Abuse

2    Insurance Policies shall be subject to the

3    Participating Chartered Organization Insurance

4    Assignment, provided, however, that Abuse Claims

5    against the Chartered Organizations shall be subject

6    to the injunction and release applicable to the

7    Opt-Out Chartered Organization Abuse Claims.

8                    Do you see that, sir?

9        **A.      I do.**

10       Q.      Okay.  So now you see that one of the

11   changes that's noted in this blackline is the

12   treatment of Debtor Chartered Organizations as

13   Opt-Out Chartered Organizations, correct?

14                   MR. ANDOLINA:  Objection to form and

15   to scope.

16       **A.      I see that there are modifications**

17   **that have been made to the definition of Opt-Out**

18   **Chartered Organization as of February 15, '22.**

19       Q.      Yes, okay.

20                   And again, it says there that such

21   Chartered Organization, Debtor, Chartered

22   Organization, shall be treated as an Opt-Out Charter

23   Organization.  Okay?

24                   So that is one of the changes that

25   was made and resulting in the third modified plan.

1    That's correct?

2                    MR. ANDOLINA:  Objection to the form.

3         **A.        That is one of the changes that was**

4    **inserted, that's correct.**

5                    MS. LUJAN-WOLFF:  Sorry.  If you

6    could just please scroll up a bit, please so we can

7    get to the top of the definition of Opt-Out Chartered

8    Organization.  Thank you.

9    BY MS. LUJAN-WOLFF:

10        Q.      Now, we see there, above that, the

11   sentence above that in -- in purple, it says there:

12   For the avoidance of doubt, Opt-Out Chartered

13   Organization -- Opt-Out Chartered Organizations shall

14   receive the benefit of the channeling injunction

15   applicable to the Abuse Claims covered under any

16   insurance policy issued by the Settling Insurance

17   Companies and Opt-Out Chartered Organizations shall

18   not be required to provide assignments and releases

19   with respect to insurance policies issued directly to

20   an Opt-Out Chartered Organization.

21                    You see that, correct?

22   **A.        Yes.**

23        Q.      And that is part of the blackline

24   indicating a change to the plan resulting in the

25   third modified plan, correct?

1                    MR. ANDOLINA:  Object to the form.

2          **A.       That's correct, and we're talking**

3    **about a release, as indicated in a document**

4    **applicable to any scouting-related abuse claim only.**

5          Q.       Okay.  So in the third modified plan,

6    we have here a change where a Debtor Chartered

7    Organization, a Bankrupt Chartered Organization is

8    now to receive the benefit of the channeling

9    injunction applicable to abuse claims covered under

10   any insurance policy issued by the Settling Insurance

11   Companies, correct?

12                   MR. ANDOLINA:  Objection to form;

13   calls for a legal conclusion; beyond the scope.

14         **A.       I believe that this definition at**

15   **Paragraph 196 speaks for itself and that it speaks to**

16   **any Opt-Out Charter Organization.**

17   BY MS. LUJAN-WOLFF:

18         Q.       Yes.  And so this change -- this --

19   this black -- the blackline changes here that we

20   looked at -- and we'll go first to the blackline, the

21   change regarding a Chartered Organization that is a

22   Debtor in bankruptcy as of the confirmation date.

23                   Remember, that the first sentence

24   that we looked at as part of this definition?

25                   Can you state whether the BSA

1   exercised its reasonable business judgment in

2   approving this change?

3                MR. ANDOLINA:  Objection to form;

4   beyond the scope; asked and answered.  You can

5   respond.

6        **A.      I would defer -- the answer -- the**

7   **short answer is yes and I would defer to my prior**

8   **testimony on the BSA exercising its business judgment**

9   **in entering into this modified Paragraph N, the Plan**

10  **in its totality.**

11       Q.      Yes.  And I understand that.  But I

12  don't -- just to be clear, because I don't recall

13  Mr. Lloyd's questioning to be specific as to Bankrupt

14  Chartered Organizations, and so my focus is on the

15  change relating to a Bankrupt Chartered Organization.

16               And so with that in mind, sir, can

17  you state whether the BSA exercised its reasonable

18  business judgment in approving this change?

19               MR. ANDOLINA:  Objection to form.

20       **A.      We did and I would defer to my prior**

21  **answers on the exercise of that judgment.**

22  BY MS. LUJAN-WOLFF:

23       Q.      Okay.  There are quite a few other

24  prior answers, so I just need to ask a follow-up.

25               What is the basis for your position

Page 139

1    that the BSA exercised reasonable business judgment

2    in approving this change?

3              A.       The Bankruptcy Task Force and the NEC

4    relied on advice of counsel, as well as the various

5    presentations and minutes that have been produced in

6    reference to filing the Plan that you're showing me

7    on February 15th, and based upon those conversations

8    with counsel, coupled with the fact that there were

9    very -- many parties that were actively negotiating

10   various terms to various agreements, which then

11   culminated in the overall settlements achieved,

12   including the support from the Tort Claimants

13   Committee, this Plan was modified, as you see before

14   you and based on approval by the Bankruptcy Task

15   Force and NEC upon recommendation from our advisors,

16   it was filed with the Court.

17             Q.       Do you know who proposed this

18   change --

19                      MR. ANDOLINA:  Objection.

20             Q.       -- regarding Bankrupt Chartered

21   Organizations?

22                      MR. ANDOLINA:  Objection to form.

23   You can -- you can respond to the extent you know

24   without revealing any mediation communications.

25             A.       I do not know.

1    BY MS. LUJAN-WOLFF:

2         Q.     Okay.  Do you know the reasoning

3    behind this change?  I know you testified that you

4    had advice of counsel, but this is a very specific

5    issue, the treatment of Bankrupt Chartered

6    Organizations.

7              What was the reasoning behind this

8    change?

9              MR. ANDOLINA:  Objection to form;

10   beyond the scope of the witness's testimony.

11        **A.     I would simply tell you that we**

12   **relied upon our advisors and their recommendations in**

13   **making the modifications or entering into the**

14   **modifications.**

15   BY MS. LUJAN-WOLFF:

16        Q.     Okay.  And are you -- can you testify

17   to what -- what the advice was?  I mean, you said

18   advisors and so are you able to testify to what the

19   advice was?

20             MR. ANDOLINA:  Objection to form.  He

21   did not testify that he was given specific advice on

22   this paragraph, Ms. Wolff.  As he just said, the

23   paragraph and the entirety of the agreement was

24   negotiated by numerous parties including counsel for

25   the committee on which your client serves, they were

1   heavily involved and this is a result of that

2   discussion.  So I've allowed you, without noticing

3   this deposition, to ask numerous questions.  If you

4   have anything else, please proceed, but that question

5   has been asked and answered.

6   BY MS. LUJAN-WOLFF:

7        Q.     So, sir, are you not able to provide

8   the advice because it's privileged, based on

9   attorney-client privilege?

10            MR. ANDOLINA:  Objection.

11   BY MS. LUJAN-WOLFF:

12        Q.     I'm just trying to understand if

13   you're invoking a privilege to not give a more

14   detailed response behind the reasoning, if you know

15   the reasoning?  Maybe you don't know.

16            MR. SCHIAVONI:  Objection, outside

17   the scope of the notice.

18   BY MS. LUJAN-WOLFF:

19        Q.     Go ahead.

20        **A.     I would simply answer by reiterating**

21   **my prior answer and telling you that any further**

22   **details on the substance of conversations was under**

23   **the attorney-client privilege and one which I will**

24   **not violate.**

25        Q.     Okay.

1          MS. LUJAN-WOLFF:  I have no other

2   questions.  Thank you.

3          THE DEPONENT:  Thank you.

4          MR. ANDOLINA:  I don't think anyone

5   else has questions for Mr. Desai.  So thanks,

6   everyone, for your time and we'll go off the record.

7          THE VIDEOGRAPHER:  Okay.  Going off

8   the record at 11:57 eastern time.

9          (The deposition was concluded at

10      11:57 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    C E R T I F I C A T E

 2              I, JENNIFER WIELAGE, a Notary

 3    Public and Certified Shorthand Reporter, do

 4    hereby state that prior to the commencement

 5    of the examination

 6              DAVANG DESAI

 7              was duly sworn by me to testify

 8    to the truth, the whole truth and nothing

 9    but the truth.

10              I do further state that the

11    foregoing is a true and accurate transcript

12    of the testimony as taken stenographically

13    by and before me at the time, place and on

14    the date hereinbefore set forth.

15              I do further state that I am

16    neither a relative nor employee nor attorney

17    nor counsel of any of the parties to this

18    action, and that I am neither a relative nor

19    employee of such attorney or counsel and

20    that I am not financially interested in this

21    action.

22              _____
                JENNIFER WIELAGE
23              License No. 30X100191600

24

25
```

**Exhibits**

**Exhibit 1** 7:14 11:24 110:21 119:25

**Exhibit 2** 7:16 14:12,20 16:18 114:16

**Exhibit 3** 7:17 19:24,25 24:14,18 30:25 31:18 32:22 43:3 46:24 51:22 55:16 58:21 65:3,7 67:19 117:25 118:1 126:6

**Exhibit 4** 7:17 68:17,25 69:11 73:6 84:7 133:2

**Exhibit 5** 7:20 110:8,9,19

**Exhibit 6** 7:20 114:14,20

**Exhibit 7** 7:21 117:16,21

**Exhibit 8** 7:22 119:18,23 121:18

---

**(**

**(a)** 43:6 48:1 132:13

**(b)** 132:15

**(c)** 132:17

---

**1**

**1** 11:24 13:11 20:10 27:19 92:14, 19 104:16 105:8,10,14,15,19 110:21 119:25

**10** 15:1,4,7,16,21 16:9 24:14 26:17 30:24 31:17,21,25 32:25 37:16 38:11 39:15 48:20 49:13,16 55:15,22 58:20 59:7 67:15 68:11 120:13,21 121:1,13 132:17

**10-12** 103:8

**10:53** 109:15

**11** 12:12 15:7,21 16:18 17:8 36:21 37:11,19 38:4 67:15 68:11 69:2, 18 93:7

**11:03** 109:18

**11:25** 125:17,22

**11:34** 125:25

**11:57** 142:8,10

**12** 15:21 18:3,16 121:4 126:7 127:1 129:2,12,23 130:10,14,21

**13** 11:23 15:7,21 18:18 19:5 32:18,22 33:2,8,11 37:22,23 38:4, 8,14 43:3 46:24 47:12,21 49:10 55:16 65:3 67:15 68:11 121:4 131:11,13 132:21,25

**13(b)** 48:18

**13th** 12:13

**14** 15:8,21 19:10,21 20:16 39:4 66:23 67:6,11 121:4

**15** 15:8 17:11 67:18,19 68:13 69:16 76:11 77:3 78:16,23 79:14, 20 81:5,11 84:8 91:14 92:9 93:22 98:14,22 99:20 100:6 101:9 102:12,22 105:24 107:3 110:21 111:16 114:15 115:13 117:23 119:24 122:8 135:18

**15th** 69:24 72:23 85:1,11,15 99:10 103:12 104:12 113:3 139:7

**17** 70:14

**177** 17:13 78:5,8,22 80:14 81:19

**18** 70:14 76:8,9 78:16 79:15,23 84:8 88:4 89:7,18 91:3 92:17 93:24 98:11,20,21 99:19 100:6 101:9 102:21 105:24 107:3

**184** 17:13 81:3,4 82:14

**186** 83:19,22

**18th** 69:23 84:25 85:11 99:9 104:12

**196** 17:13 83:20 84:2,25 86:22 87:5 133:4,6,10 137:15

**1976** 92:14,19

**199** 87:16,17,20 90:6,18 91:14

**1A** 70:11

---

**2**

**2** 14:12,15,16,20 16:18 27:20 114:16

**20** 109:8

**20-10343-LSS** 117:24

**200** 92:6

**2004** 100:13,25

**2021** 20:17 23:14 39:4 53:16 63:14 66:10 76:9 78:16 79:15,24 88:4 91:3,14 92:17 93:24 98:11,

21 99:19 100:6 101:9 102:21 105:24 106:9 123:16 124:20

**2022** 9:9 11:23 12:13 14:11 17:11 69:16 72:24 76:11 77:3 78:16,24 79:14,20 81:5,11 84:8 92:10 93:22 98:14,22 99:20 100:6 101:9 102:13,22 105:10,14,15,19,24 106:10 110:21 111:17 113:3 114:16 115:14 117:24 118:16 119:24 122:8 123:16 124:21

**215** 17:13 92:6,9

**22** 135:18

**22nd** 89:8,18

**269** 17:13

**27** 75:25

**294** 17:14

**2nd** 117:23

---

**3**

**3** 19:24,25 20:10 24:14,18 30:25 31:18 32:22 43:3 46:24 51:22 55:16 58:21 65:3,7 67:19 118:1 126:6 133:12

**30(b)(6)** 11:22,25 14:22,23 24:25 41:10 74:12 120:16 129:8

**304** 70:14 75:25 78:8 84:6,7 100:2

**34** 105:18

**35** 134:13

---

**4**

**4** 68:17,25 69:11 73:6 84:7 133:2

**40** 109:8

**41** 78:8

**42** 17:13 70:11,16 71:3 73:5 81:18

**43** 105:13

**44** 84:6

**45** 17:13 84:7 100:25

---

**5**

**5** 107:10 110:8,9,12,15,19

**54** 104:16 105:8

**59** 17:13 72:8,12,16 73:9,22 75:6,
13 81:19

**5M** 108:20

---

**6**

**6** 110:12 114:14,20

---

**7**

**7** 104:16 105:5 117:16,21

**7772** 20:8

**7:45** 16:12

---

**8**

**8** 14:11 105:7 119:17,18,23
121:18

**800** 129:23 130:4

**8295** 12:9

**86** 17:13 75:11,19 80:22 81:19

**8814-1** 70:16 71:15

**8816-1** 110:20

**8817-1** 119:24

**8817-2** 114:15

**8817-3** 117:22

**8:07** 9:10

---

**9**

**9** 15:7 21:1,6,15 22:20 35:5,12
37:16 38:11 39:14 48:20 49:13,16
51:22 67:15 68:11 132:17

**90** 100:2

**9:07** 51:16

**9:23** 51:19

**9:49** 68:24

**9:53** 69:8

**9th** 9:9

---

**A**

**a.m.** 9:10 51:19 109:18 142:10

**ability** 23:17 53:8 115:21

**abreast** 116:16

**absent** 134:25

**absolutely** 31:2 32:16 51:13
55:14 68:20

**absolve** 61:1

**abuse** 22:3,13 23:25 26:8,12
27:8,9 28:10,11 29:5,9 30:1 34:2
35:1,21,25 36:8 37:1,6 40:16
42:21 45:12,14 49:1,4 58:3,6,7
61:2 67:20 71:21 79:11 84:15
92:11,13,21,25 93:6,11,12,23
100:12,21 126:3,22 132:5 135:1,
4,7 136:15 137:4,9

**abuse-related** 80:6

**acceptable** 103:11

**accordance** 88:9

**account** 47:5,18

**accrued** 57:24

**accurate** 41:2 122:19

**accurately** 128:22

**achieve** 22:11 60:21 71:19,20
116:6,7

**achieved** 139:11

**action** 27:8 28:10 36:7 57:23
58:13

**actions** 58:11,16

**active** 34:18 35:3 53:23 71:17
73:13 85:15 103:21 116:15

**actively** 21:22 23:12 50:13 61:9
64:10,15 139:9

**actively-negotiated** 81:24
82:13

**ad** 11:21,24 12:9 23:5 47:8 56:13
91:5 95:1 127:21

**add** 31:8 37:17 38:12,16 59:8
68:11 73:7,12 80:14 81:14,21
89:13 94:4 99:1 102:7,18,24
106:10 112:5 115:19 124:1

**added** 89:17 100:5

**addition** 27:14,18 29:12 45:8
50:4 55:11 56:10 64:8 81:17
89:15 102:20 108:12

**additional** 22:9,16 23:24 38:25
40:3,20 41:6,14,20 42:6 43:13
44:17 45:16,24 46:2,3 48:11
50:20 67:12 73:15 79:10 98:13
112:16 118:19 122:10 123:20
127:25

**additions** 104:11

**adequate** 23:19 50:16

**administer** 9:18

**admonish** 104:4

**adopt** 85:24

**advice** 47:5 53:5 59:24 71:12
77:22 80:19 83:6,9,16 86:21 87:1
90:15 91:24 92:1 95:16 99:18
104:3 106:16 108:19 114:6 117:9
119:10,13 125:3 131:3 139:4
140:4,17,19,21 141:8

**advised** 59:14 62:23 66:3

**advisement** 134:25

**advises** 134:21

**advisors** 23:2 25:6 34:21,24
47:6,9 50:5,13 53:17 54:1,7,11
55:2 60:11 61:10,11 63:11 64:9
71:13 77:15,23 83:7 85:22 90:17
103:6,9,22 104:2 106:17,19
107:16,18,21 108:2,4,9,13 112:12
116:3,14,18 117:9 124:11,15
139:15 140:12,18

**affiliated** 45:14 54:13,16 63:16

**affiliates'** 93:2

**afforded** 36:24 79:19

**agree** 31:25 35:11 48:9 54:13
103:10 130:4

**agreed** 42:15

**agreeing** 15:6 21:6,14 22:20
37:11 38:8 45:22 46:19 58:21
68:4 79:5

**agreement** 18:6,9,21 19:13 24:2,
8 31:7,15 34:16 35:4 38:22 46:24
47:12 49:6 50:14 56:12 58:9
60:23 64:14 73:17 76:21 82:8
110:22 111:3,5,10,25 112:4,7,13,

14,20,23 113:2,3,4 114:3,9,10,17,
21 115:1,2,4,9,15,18 116:8 117:3,
11,15,17 118:1,5,12,17,18,21
119:10,19 120:1,8,14,17 121:3,7,
9,11,23 122:14,25 123:20 124:2,
5,14 125:2 128:5,7,13,16,17
129:20 130:15,16 131:10 140:23

**agreements** 21:25 58:8 115:25
116:12,18 123:14 139:10

**agrees** 48:19 49:12 132:16,18

**ahead** 53:14 126:18 127:13
141:19

**alleged** 30:1 92:13

**alleging** 93:6,11

**allocable** 93:9

**allowed** 38:20,23 52:17 80:9
141:2

**allowing** 24:9

**altering** 130:20

**Alvarez** 106:17

**amended** 12:24 13:15 14:10,12,
21,23 55:22 56:15 69:1,18 70:21,
22 71:4 72:18 73:9 93:5 127:24,
25 128:18 131:20 132:3

**America** 9:14 12:11 21:22 50:7
60:20 65:24 129:22

**amount** 70:17 71:4 104:23
129:23 130:3,6

**amounts** 105:1

**analysis** 45:24 50:19

**and/or** 24:2,7 46:12 100:13

**Andolina** 11:6 12:21 13:5,14,23
15:17 16:12 21:9 22:21 24:24
25:23 28:23 30:11,13 32:3,12
33:6,15 34:6,13 35:14,23 36:11,
17 38:15 39:11,24 40:7,24 41:9
42:13 43:16,21,25 44:3,6,9,20,22
46:4 47:1,16 48:14 49:18 50:22
51:11,14 52:7,20 53:1,9,12 54:19
56:5 57:1 58:25 59:19 60:2 61:19
62:4,20 63:18 64:21 65:19 66:14
67:8 68:18,22 71:7,25 72:4 73:1,
11,19,23 75:7,15 77:5,21,25
78:19,25 79:25 80:18,23 82:5,16
83:2,6,11,21 85:3 86:7,15,25 87:7
89:23 90:1,10,22 91:15,18,22
92:3 93:25 94:11,14,18 95:11

96:14,23 97:9 99:7,15,22 101:16,
21 102:1,15 103:24 106:3 107:13,
22 108:16,22 109:4,9,12 110:4
113:8,15 114:5 117:1,6,13 118:24
119:6,15 122:18 123:3,5 124:21,
23 125:6 126:8,17,23 127:11
129:5,25 130:11,22 133:7,11,16,
21 134:8 135:14 136:2 137:1,12
138:3,19 139:19,22 140:9,20
141:10 142:4

**Andolina's** 16:21

**Angeles** 85:17 94:13 124:7

**answering** 64:24

**answers** 10:12 15:18 37:15,21
38:10 49:22 79:5 80:15 81:17
99:2 138:21,24

**anticipate** 96:24

**anticipating** 10:11,12

**anyone's** 30:21

**apologies** 12:21

**apologize** 27:11 102:9

**appeared** 93:24

**appearing** 120:4

**appears** 70:20 72:16 82:14 84:6

**Appendix** 17:17 98:1 100:14

**applicable** 84:14 100:13,19
101:2 128:14 135:6 136:15 137:4,
9

**applies** 128:14

**apply** 11:10 32:1 128:20

**approval** 76:14 139:14

**approved** 129:22

**approving** 127:9,10 129:3 138:2,
18 139:2

**April** 105:10

**arises** 29:20 91:19 92:23

**arising** 57:24 58:1

**arose** 113:12

**arrive** 134:4

**arrived** 45:17

**Article** 17:12,14,15 70:11 97:12,
13,19 102:7,11 103:16 104:7,10

**asks** 52:6

**assert** 93:5 94:16 95:8

**asserted** 93:5,8

**asserting** 94:20

**assertions** 95:2

**assign** 48:25

**assigned** 28:2

**assignment** 28:1,4 32:9,10,25
33:5,13 34:4,11 40:3 57:9,15,16
97:23 134:24 135:4

**assignments** 39:14 48:19 49:12,
15 84:18 132:16 136:18

**assume** 16:21 82:24

**assumption** 82:10

**assurances** 94:25

**attach** 25:9

**attached** 20:6

**attachment** 20:11

**attempted** 50:19

**attempting** 77:18

**attending** 81:21

**attention** 72:12 75:24 84:11
134:12

**attorney-client** 11:2 22:23
53:10 60:5,15 78:1 83:10 86:24
90:21 92:2 94:24 95:15 96:9 97:6
99:21 101:23 107:23 108:21
112:2 114:4 117:12 119:14 125:5
141:9,23

**attorneys** 9:16 92:1

**attributable** 29:20 58:2 92:23

**authorization** 100:16

**authorize** 31:6 106:19

**authorized** 34:24 47:9 100:12
103:9 112:12 124:15

**authorizing** 61:10

**automatically** 88:8

**avoid** 64:25 95:21 96:20 103:25

**avoidance** 84:12 87:23 88:5
91:4 93:10 100:15,16 134:24
136:12

**aware** 32:7 33:4 36:14 66:19 130:8,19

**B**

**back** 20:13 27:2 35:5 44:7,8 51:18 52:15 64:3 69:7 79:4 104:17 109:18 116:12 125:24 126:5

**bad** 11:17 63:7

**bankrupt** 127:2,23 128:3,6,10,14 137:7 138:13,15 139:20 140:5

**bankruptcy** 9:7 21:20 22:4,5,17 23:1 31:12 34:20,23 49:25 50:18 52:1 53:16 54:5 60:16 61:14 62:10,16 63:9,12 70:15 76:16 85:22 90:16 91:24 100:12,25 101:1 102:25 108:17 110:20 111:19 113:9,25 117:25 124:9 126:3 127:23 128:1 131:2 134:17 137:22 139:3,14

**based** 10:23 11:1 29:20 31:9,11 33:21,23 34:17 47:6 52:11 54:3 66:8 71:12 72:5 77:11 92:24 93:9 96:9,15,16 99:17 101:7 139:7,14 141:8

**bases** 85:6 94:2 98:24

**basically** 40:12

**basis** 31:3 41:13 44:23 55:10 99:21 113:14 117:5 129:15,17 138:25

**Bear** 27:17

**bears** 110:19 114:15 117:21 119:23

**beg** 30:8 36:24 38:4 40:22 55:16 65:6 71:2 83:19 88:1 90:25 92:6 98:5 104:17 115:12

**beginning** 20:7 52:16 55:17,19 98:9

**begins** 26:21 87:22

**behalf** 39:22 43:7 45:10 48:2 132:14

**belabor** 16:20 73:18

**benchmarks** 54:3

**beneficiary** 45:11

**benefit** 26:14 27:19 29:3,13

33:20 56:18 79:11 84:14 132:3 136:14 137:8

**benefits** 25:22 57:22 128:12 132:22

**bids** 52:6

**bit** 10:14 29:22 35:8,9 36:2,3 76:2 97:13 109:1 127:18 136:6

**black** 68:16 137:19

**blackline** 69:2,19 109:22 135:11 136:23 137:19,20

**block** 24:9

**blue** 72:17 100:4 104:11

**board** 21:21 22:6 30:19 31:14 34:20,24 50:2,18 52:13 53:21 54:10 60:10,16 61:9,15,21 95:17 116:15 131:1

**Boon** 60:12

**Boone** 23:2

**bottom** 26:18,19,21 35:6 97:25

**Boy** 9:13 12:10 21:22 40:19 50:7 60:19 65:24 127:8 129:22

**breach** 128:15

**break** 11:10 46:12 51:10 110:2 125:20

**breakdown** 116:21

**breath** 11:6

**briefed** 62:11,12 63:10

**briefings** 62:15

**briefly** 55:19

**bring** 60:24

**broadly** 35:18

**BSA** 9:14 12:11 22:4 23:3,14 24:7 28:20 30:3 50:17 54:12,13,16 60:16 70:17 71:3,15,20 104:25 127:8,20 129:21 130:19 132:18 137:25 138:8,17 139:1

**BSA's** 22:11

**BTF** 52:12 61:25 62:22 77:15 83:13 103:9 107:15 108:12 112:10,12 113:19 116:3,16 129:19

**bucket** 63:17,25

**buckets** 61:16 62:19

**build** 50:8 71:17 115:21 116:9

**building** 24:9 112:16

**bunch** 70:8

**business** 15:6,23 16:14 17:1,9 18:1,5,15,20 19:5,11,21 21:8,14 22:20 26:1 31:1 37:12,18 38:3,7, 13 45:22 46:18,22 47:3,4,14 48:8 49:9,22 58:23 59:5,10,13 67:7,13 68:6,12 71:6,23 72:25 73:8 76:25 77:17 78:21 80:13 81:10,16 85:2, 8,23 86:21 88:20 89:11 91:12 93:20 94:3 98:19,25 99:17 102:14 105:25 106:7 111:4,8,14,16,20 112:4 113:11 114:25 115:7,17 117:8,10 118:4,10,20,25 119:8 120:6 121:24 122:7,13 123:13,23 124:12,25 127:9,14 129:3,11,19 138:1,8,18 139:1

**C**

**cadence** 53:3

**calculation** 104:19

**call** 112:19

**called** 37:23 104:18

**calls** 34:7 40:8 53:20 78:1 90:8 107:22 137:13

**camera** 74:19,22

**capacity** 25:1 56:23 57:2 65:22 80:2 123:3

**caps** 76:18

**caption** 69:17

**carries** 24:14 29:11

**case** 59:17 60:13 108:13 117:24 126:4

**cases** 12:12 93:7

**cash** 70:17 71:3 104:19,24 106:15,25

**categories** 16:2 61:6 126:15

**Catholic** 11:21,24 12:9 54:25 65:15 66:12,20 95:1 127:21

**Catholics** 64:11,13,20

**caution** 103:24

**caveat** 60:7

**caveats** 53:7

**Century** 15:7 19:24,25 20:5,10, 20 21:7,16 24:18,23 25:22 30:24 35:3 37:11 38:8,19,21 45:23 46:19,24 47:13 48:9 49:24 50:15 51:22,25 52:24 54:23 58:21,22 59:15 60:1 63:14 64:7,9,14 65:14 67:4,19 68:5 76:20 111:14 115:13 118:15 119:25 120:7,13 121:5,22 122:8,13,21,24 123:19 124:14 125:1 126:6 127:3 130:15 131:9

**Century's** 129:23

**Century/chubb** 21:18 22:8 23:9 31:15 61:11 119:17,18

**certified** 9:4

**challenging** 10:14

**change** 89:9 90:5,18 94:10 104:12 130:10 136:24 137:6,18, 21 138:2,15,18 139:2,18 140:3,8

**changed** 86:9 89:17 130:7

**changing** 89:22

**channeled** 37:3

**channeling** 26:14 29:4 84:14 136:14 137:8

**Chapter** 12:12 69:1,18 93:7

**chart** 62:22

**charter** 25:5 32:6 33:4 79:8,9 80:8 135:22 137:16

**chartered** 12:16 13:12 15:8 17:18,19 18:7,8,10,22,24 19:13, 15 23:10,20,25 24:16,21,22 25:3, 4,8,18,21 26:2,6,10,13,22 27:4, 21,24 28:3,6 29:1,3,6,15,19 30:4 31:21 32:1,8,11,23 33:1,3,12,17, 19,22,25 34:4,11 35:12,16 36:15 37:24 39:2,5,9,10,21 40:4,12,14, 20 41:6 42:7,16 43:4,5,7 44:18 45:3,6,10,12,18,25 46:1 47:8,21, 22,23 48:3,12,18,23 49:11,17 50:6,20 55:13,21 56:20 57:6,19 58:15 60:18,21,25 61:7 62:13,14, 18,23 63:15 64:6,16,20 65:6,10, 17,18,25 66:3,11,18,22 67:21 72:13 75:20 76:10,12,15,17,19 77:2 79:13,19,22 80:5,11 84:3,13, 17,20 86:9 87:6,13 88:6,7,8,11 91:5,8 92:10,12,21,23 93:1,12,13,

22 100:23 112:18 116:8 127:2,22 128:1,3,6,11,15 131:13,17,23,24, 25 132:1,2,9,10,11,15,22 134:6, 17,18,19,21,23 135:1,3,5,7,12,13, 18,21 136:7,12,13,17,20 137:6,7, 21 138:14,15 139:20 140:5

**charters** 61:16

**charts** 61:5

**chat** 11:20 110:3,5

**child** 126:3

**choses** 57:23

**Chris** 9:3

**Chubb** 20:21 76:20 119:25 120:7 121:22 122:13 123:19 124:14 125:1

**church** 66:20

**Civil** 100:25

**claim** 29:8,9,18 34:2 35:25 40:16 42:21 45:12,14 49:4 81:6 82:4 92:11,22 93:4,6,7,11,12,13 137:4

**Claimants** 124:4 139:12

**Claimants'** 112:8

**claims** 12:16 13:11 26:8,9,12 27:5,8,9 28:2,7,10,11 29:4,6 30:1 36:7,8,9 37:1,6 49:1 57:21 58:6,7, 9,10 61:2 67:20 80:4 84:15 92:11, 21 93:23 100:12,21 112:21 132:5 135:4,7 136:15 137:9

**Clarendon** 18:21,23 110:1 117:15,16 118:1,5,11,21 119:9 122:10

**clarification** 35:20 49:7 53:14 96:22 102:4

**clarifies** 96:12

**clarify** 53:10 61:20

**clarity** 62:1

**clean** 95:19

**clear** 10:20 11:8 16:11 45:19 62:21 63:1 69:15 86:2 96:4 121:3, 8 138:12

**client** 95:4 126:21 140:25

**closed** 15:9

**co-deponent** 94:20

**Coalition** 23:15 56:12 71:15 112:8

**coinsureds** 36:25 37:2

**colloquy** 74:11

**colon** 27:25

**comment** 16:22

**committee** 21:21 22:6,18 23:5 31:13 50:1 52:1 54:10 61:23 62:1, 11,17 63:10,12 90:9,17 91:6,25 95:1 108:18 111:20 113:10 114:1 124:4 127:22 139:13 140:25

**Committee's** 11:21,25 12:10

**communication** 60:5 82:2,22

**communications** 22:15,23 64:23 78:2 83:4 97:4 107:23 113:21,24 114:6 139:24

**companies** 20:21 76:20 84:16 119:25 120:8 121:22 122:14 123:19 125:1 136:17 137:11

**Company** 58:6 128:20

**comparison** 69:22

**compensate** 22:12 23:25 35:1 39:1 50:10 71:21

**compensation** 79:10

**complete** 28:5 45:13

**completely** 10:16

**compound** 46:5 61:20

**conceivable** 10:24 11:17

**concept** 80:10 82:12

**concerns** 68:13

**concluded** 142:9

**conclusion** 34:7 40:9 112:13 137:13

**condition** 55:23 56:15 131:21

**conditions** 39:6 41:16 57:10 111:2 112:14 118:7 120:10 121:18 124:13 128:17

**confer** 95:6

**confidential** 75:4

**confidentiality** 72:6 73:24 74:4

**confirmation** 24:7 39:17 55:9 76:14,16 91:7 97:2 128:2 134:18

137:22

**conjunctive** 47:24

**connection** 92:25

**cons** 23:7

**consensus** 71:18 85:20 116:22

**consent** 55:24 56:17 128:4,7,9, 14,18 131:22

**considerations** 59:9 85:9 102:19 111:18

**considered** 48:11 80:16 81:16 91:25 94:5 106:7,11 111:20 113:10,18 115:17 119:10 123:13, 22 124:18

**conspiracy** 115:4

**constituency** 55:1

**construed** 100:18

**consultation** 23:4 71:13

**contemplated** 23:17 60:22 64:14

**contemporaneous** 52:2

**content** 82:1 128:4

**contents** 82:17 83:9 97:4 117:4

**context** 26:19 27:1 56:25 85:14 119:2

**contingent** 58:1

**continually** 38:23 115:25

**continue** 12:22 22:7 23:18 24:8 50:8,9,12 55:7 60:23 71:17 80:25 96:23

**continued** 38:18 53:21 77:15 92:18 106:21 112:15 115:20 116:9

**continues** 57:18 93:10

**continuing** 23:23 39:3

**contract** 41:15,16 42:25

**contrast** 79:14

**contributing** 25:5,10 29:19 30:4 33:24 39:5 40:13 42:18 43:5 45:9 47:23 48:22 60:18 61:18 62:13 64:5,16,19 65:10,16,18 66:8 75:20 76:9,11,19 77:2 79:7 80:7, 10 87:13 88:8 93:1 131:24 132:10

**contribution** 25:20 27:23,25 39:13,19 40:6 43:6,15 44:13,16 48:2 72:13 88:12 132:12,14

**contributions** 38:25

**control** 133:12

**controlling** 133:16

**controversy** 70:6

**conversation** 54:6 88:25 95:22

**conversations** 23:6,21 31:9,12 51:4 52:11 59:16 60:17 61:3 63:20 77:11 116:3 124:6,10 131:4 139:7 141:22

**convert** 66:6

**cooperate** 132:19

**cooperation** 95:3

**copies** 68:19

**copy** 69:12

**corporate** 121:13 123:3,7

**correct** 10:3 16:12 21:3 31:23 35:13,22 37:13 39:23 44:19 46:25 47:14 53:12 80:23 83:4 86:13,15 90:13 99:15,22 108:22 114:7 117:6,13 119:6,15 121:19 124:23 125:6 129:24 130:7 132:20 134:7 135:13 136:1,4,21,25 137:2,11

**correctly** 15:12,13 18:25 28:14 93:17 101:5 103:14

**correspond** 105:1

**council** 40:21 41:7 42:7 43:13 44:19 46:3 48:13 50:3,4,21

**councils** 23:5 28:21 30:3 40:5 47:9 54:21

**counsel** 10:24 15:20 17:7,24 18:14 19:3,19 21:19 22:7,16,24, 25 23:1 31:9 50:15 52:12,24 53:6, 20 59:25 60:13 61:14 74:13 77:12,24 80:20 83:17 86:21 95:17 99:18 101:23 103:2 104:4 108:13, 19 112:10 114:2 119:11 125:3 126:22 131:3 134:22 139:4,8 140:4,24

**Counselor** 120:11

**count** 43:14

**couple** 10:13 11:17 32:18 83:24

**coupled** 22:3 50:5 53:20 85:21 124:8 131:5 139:8

**court** 9:5,7,17 10:22 11:8 12:1 13:21 14:14 20:1 25:14,16 44:7 54:4 55:6 66:4 69:4 70:15 76:16 96:3 101:1 110:10 114:22 117:18 119:20 124:3 139:16

**courtesy** 125:13

**cover** 55:18 58:6

**coverage** 27:9 28:11 34:5 36:8 58:7

**coverages** 51:2

**covered** 37:2 55:17 84:15 132:5 136:15 137:9

**covering** 36:7 128:19

**created** 70:1,5

**creditors** 126:3

**critically** 55:6

**culminated** 139:11

**current** 130:7

**D**

**dance** 59:23

**date** 9:9 30:2 37:1,5 39:3 55:23 56:16 57:22 76:17 78:9,15,23 88:9 95:22 104:25 105:2,9,14,19 130:7 131:21 132:7 134:18 137:22

**dated** 11:23 14:11 20:16 69:16

**dates** 107:1

**David** 17:16

**day** 96:11 108:8

**days** 54:2

**deadline** 22:1,2 55:5 103:12

**deal** 47:18 61:11

**dealing** 106:14

**debtor** 23:17 30:25 31:6 45:23 55:7 59:9 74:12,13 96:16 99:17 102:19 106:7 124:11 134:17 135:12,21 137:6,22

**Debtor's** 21:5

**Debtors** 11:22,25 12:11 13:10
14:22,24 15:15 21:8,13,19 22:24
30:3 37:12 38:3,7 41:5 45:21
46:17 48:7,10 49:14 58:23 59:24
62:11 67:6 68:5 70:1,5 71:5 72:24
80:15 81:10,15 83:6 85:1 86:19,
20 91:12 94:3,5 96:10 102:13
106:11 115:7,16 117:8 118:3,25
119:8,10 120:5 121:23 123:12,22
124:18 125:2 127:23 129:2

**Debtors'** 10:23 14:10,12,21 15:5,
21,25 16:16 17:1,8 18:1,4,15,19
19:4,11,20 21:11 22:19 26:5
30:18,20 37:10,18 38:12 40:2
41:20 43:12 46:18,23 47:12,14
55:12 59:4 67:5 68:3,12 69:1,17
71:1 72:22 73:7 76:24 78:20
80:12 84:23 85:7 88:19 89:6,9,10
93:19 97:8 98:18 102:10 105:22,
25 111:4,7,13,15 113:11 114:25
115:6 117:25 118:9,19 120:6
121:21 122:6,12 134:22

**December** 20:16 23:14 39:4 55:5
63:14 66:10 69:23 76:8,9 78:16
79:15,23 84:8,25 85:11,14 88:4
89:7,18 91:3 92:17 93:24 98:11,
21 99:3,9,19 100:6 101:9 102:21
104:12 105:24 106:9 107:3 113:6
123:16 124:20

**decided** 64:20

**deciding** 118:11

**decision** 34:10

**deemed** 27:22 29:16 40:3 56:22,
24 57:4,14 64:19 66:21 88:10
128:15

**defense** 57:23

**defer** 31:4 36:18 37:20 41:15
49:21 56:13 79:4 87:14 130:2
138:6,7,20

**deferring** 77:14

**defined** 27:23 29:8 56:10 57:17

**defines** 81:6

**definition** 26:3 32:1 58:11 70:20
71:2,3 72:23 73:5,8,21 75:19
76:11 77:2 78:5,22 81:5 82:3,13
84:3,24 86:9 87:5 89:6,10 90:18
91:3,4,13 92:18 93:22 94:10 98:7,
15,20 99:10 133:4,10 134:6
135:17 136:7 137:14,24

**definitions** 25:2 72:9 87:12
89:17 92:9 115:24 133:3

**Delaware** 9:8,14 12:11

**Delia** 125:18 126:2

**demands** 27:5 28:7 57:21

**depending** 25:9,18 26:7

**depends** 64:2

**deponent** 9:15 43:23 118:3
120:5 125:12 142:3

**deposition** 9:6 10:22,24 11:10,
18 12:10,15,25 13:16,18,22
14:11,13,22,23 52:16 74:12 96:23
97:5 111:1 126:10,12 129:8 141:3
142:9

**deposition's** 9:11

**deprive** 100:18

**derivatively** 29:24

**Desai** 9:15,19,22 12:4,7 13:8,17,
24 14:19 15:4,20 16:21 20:5,15
24:13 27:11 30:23 31:20 32:21
34:10 35:11 36:5 37:23 42:5
46:15 49:8 51:8,24 53:2,14 55:18
60:2 62:7 63:6 64:22 65:5 66:24
69:10,21 70:13 72:11 74:25
75:11,20 76:3 78:7 81:4 82:7,16
83:14 84:2,11 86:8 87:3,20 89:5
90:3,11 91:1 92:8 94:8,15 96:7,
19,25 97:14,18 98:12 99:8 100:1
102:6,11 103:14,25 104:10
106:25 107:25 109:21 110:18
111:13 113:12,17 114:3,13
116:25 117:20 119:3,12,22
121:16 122:23 123:11 124:21
125:7 126:1,12 129:8 142:5

**Desai's** 101:17

**describing** 62:12

**description** 56:8

**designated** 13:9,10 14:7 15:15
44:8 46:17 76:18 121:9

**designation** 16:24 25:19 121:10
122:20

**designee** 121:13

**detailed** 141:14

**details** 141:22

**Devang** 9:15,19

**dialogue** 103:1

**difference** 99:9

**differences** 25:8 70:3

**differently** 99:1

**Diocese** 66:20

**direct** 75:23 84:10 100:11,21
134:11

**directed** 97:4

**directing** 72:11

**direction** 133:22

**directly** 29:24 84:19 95:7,8
136:19

**disagree** 95:1

**disagreed** 41:19 42:6,8

**discovery** 100:3,11,13,17,19,20,
23 102:8,12

**discuss** 85:6 134:9

**discussed** 38:11 61:9 83:15
85:9 104:2 123:15

**discussing** 32:5,10,24 59:7 65:7
67:16 68:8 73:5 89:19 102:23
106:9 107:16

**discussion** 15:19 108:1 110:13
116:20 125:14 141:2

**discussions** 10:23 24:4 101:12,
18,22 107:3 108:5,11 112:24
113:13 131:4,7

**disputed** 58:1

**Distribution** 12:17 13:13 17:19

**District** 9:7

**divulge** 83:8 86:11

**Docket** 12:8 71:14 110:19

**document** 9:12 12:8,22,23 17:17
20:7 26:4 29:1 32:5 33:7,10
35:15,17 36:19 39:15 48:20 49:24
56:13 57:11 69:25 70:15 77:12
81:25 87:14 98:1 100:14 112:22
114:14 117:22 118:7 119:23
120:10 127:15 129:1,12 130:3,18
137:3

**documentation** 83:12

**documents** 38:21 70:9 125:10

**dollar** 107:9 130:3

**dollars** 22:10 23:24

**doubt** 84:12 87:23 88:5 91:4 93:10 100:15,16 134:24 136:12

**Draft** 18:9

**duly** 9:19

---

**E**

**earlier** 13:2 29:12 55:18 79:7 111:12 131:12 134:2,3

**easier** 109:24

**eastern** 9:10 16:13 51:16,19 68:24 69:8 109:15,19 125:17,22, 25 142:8

**easy** 83:22

**education** 25:13

**effective** 30:21 55:23 56:16 57:21 76:17 88:9 104:25 105:9, 14,19 131:21

**effectiveness** 128:17

**effectuate** 22:8 24:5 55:3 64:18

**effectuated** 23:15 64:4

**efficient** 70:2 95:10

**effort** 35:1

**efforts** 21:24 47:10 127:21 128:8

**eliminate** 80:6

**email** 53:19

**embedded** 120:20 121:1

**emerge** 50:9 71:21

**emergence** 24:6

**end** 87:16

**enforce** 100:22

**engage** 54:5 55:7

**engaged** 116:5

**enjoined** 37:6

**ensure** 23:19 38:24 50:5

**ensuring** 112:15

**enter** 31:15 46:19 48:8 61:11 111:5 115:18 117:10 118:4,11 120:7 122:13 124:25

**entered** 65:15 112:7

**entering** 18:5,20 19:12 30:24 38:4 45:22 59:25 111:9 115:2,8 119:9 121:22 122:7 123:14,19 127:15 129:11,20 138:9 140:13

**entire** 47:17 49:24 100:4 126:9 127:15 129:11

**entirety** 140:23

**entities** 23:10 65:16 66:12 100:24 127:23

**entitled** 21:6 36:23 83:23 100:2

**entitlements** 27:5 28:7 57:21

**entity** 33:19 39:1 42:25 57:5

**entry** 31:6 38:19 71:15 116:13 128:2

**equitably** 22:12 23:25 35:1 38:25 50:10 71:20

**established** 54:4

**estimates** 109:10

**evaluated** 48:7

**evaluating** 47:5 124:13

**event** 105:8

**events** 55:4

**eventually** 61:10 64:17 107:17 112:11,19 116:11

**evolution** 85:18

**evolve** 115:21

**evolved** 54:1

**exact** 130:3

**EXAMINATION** 9:21 125:23

**exchanged** 53:4

**exchanges** 53:19

**excluding** 100:24 128:10

**excuse** 40:21 66:10 103:13 111:12

**Executive** 21:21 22:5,6,18 31:13 50:1,18 52:1 54:10 61:15,21,23, 25 62:10,17 63:10,12 90:16 91:25 108:18 111:19 113:10,25

**exercise** 15:5,22 16:14,25 17:9 18:1,4,15,19 19:4,11,20 21:8,14 22:19 37:18 38:13 45:21 46:18,22

47:13 57:7 59:5,13 67:13 68:10, 12 71:23 73:7 77:17 80:13 81:16 89:10,14 105:25 111:4,13,15 112:4 113:11 114:25 118:4,20,25 119:8 120:6 122:7,12 123:13 124:12 129:3,10 138:21

**exercised** 30:25 37:12 38:3,7 47:4 58:23 67:6 68:6 72:24 76:25 78:21 81:10 85:2,7 88:20 91:12 93:20 94:3 98:19,25 99:17 102:13 111:8 115:7 118:10 121:24 127:12,14 138:1,17 139:1

**exercising** 48:8 49:9 59:10 71:5 85:23 86:21 106:7 111:20 115:17 117:8,10 123:22 124:25 127:8 130:20 138:8

**exhaust** 82:16 101:17

**exhibit** 11:21,24 14:12,20 16:18 19:24,25 20:14,20 24:14,18 30:25 31:18 32:22 43:3 46:24 51:22 55:16 58:21 65:3,7 67:19 68:17, 25 69:11 73:6 84:7 110:8,9,19,21 114:14,16,20 117:16,21,25 119:18,23,25 120:19 121:18 126:6 127:24 133:2

**exhibited** 131:5

**exist** 50:10

**existed** 51:2 89:7

**existing** 57:24

**expect** 97:3

**expedite** 95:10

**explain** 21:13

**explanations** 61:5

**extended** 46:23 47:3 55:6

**extent** 15:24 28:1 41:12 60:25 82:15 86:20 90:19 91:19 94:15 99:12,16 101:22 103:13 108:17 113:9 116:24 117:7 118:25 119:7 124:17,24 127:25 128:5 132:18 139:23

**extremely** 121:3

---

**F**

**facilitate** 116:22

**fact** 23:19 60:19 77:16 96:8,9 139:8

**factors** 31:10 59:4

**failure** 128:13,16

**fair** 17:3 113:1 115:2 118:6

**fairly** 124:12

**faith** 23:18 38:23 60:24

**fall/winter** 53:16

**false** 82:9

**familiar** 10:10 24:17,19 111:2
115:3 118:6 120:9 121:17 127:3

**fast** 64:17 114:11

**FCR** 23:15 56:12 71:16

**February** 17:11 69:16,23 72:23
76:11 77:3 78:15,23 79:14,20
81:5,11 84:8 85:1,11,15 89:8,18
91:14 92:9 93:22 98:14,20,22
99:4,10,19 100:6 101:9 102:12,22
103:4,8,12 104:12 105:24 106:10
107:3 110:21 111:16 113:2,6
114:15 115:13 117:23 118:16
119:24 122:8 123:16 124:20
135:18 139:7

**feeling** 51:10

**fell** 63:17 64:1

**felt** 31:14 71:22 103:10

**figure** 64:4 70:6

**file** 66:5 103:11 128:1

**filed** 12:8,12 39:17 71:14 77:3
93:6 110:20 113:2 114:15 117:23,
25 119:24 124:3 139:16

**filing** 22:1 68:25 69:16,17 70:14
139:6

**finalized** 124:3 130:17 131:8

**finally** 19:10

**financial** 39:13,19 43:6,14 44:13,
16 45:16 48:1 50:4 71:13 106:17
108:2,4,13 132:11,13

**fine** 15:2 74:15 110:6

**finished** 10:17 41:23

**fit** 62:18

**five-minute** 125:20

**fixed** 58:1

**fluid** 10:12

**focus** 43:3 138:14

**focused** 59:15

**follow-up** 138:24

**Force** 21:20 22:4,18 31:13 34:23
49:25 50:18 52:1 53:16,21 54:5
60:10,16 61:14 62:10,16 63:9,13
85:22 90:16 91:24 103:1 108:18
111:19 113:10,25 124:9 131:2
139:3,15

**foregoing** 43:12 76:13 128:19
134:16

**form** 13:14 15:17 21:9 22:21
24:24 25:23 28:22 30:11,12 32:3,
12 33:6,15 34:6,13,14 35:14,23
36:11,17 38:15 39:11,24 40:7,10,
24,25 41:9,22 42:11 43:16,20
44:9,21,23 46:4 47:1,15,16 49:18
50:22 52:7 53:1 54:19 56:5 57:1
58:25 59:19 61:19 63:18 65:19
66:14 67:8 71:7 72:4 73:1,11
75:7,15 77:5,25 78:19,25 79:25
80:2 82:5 85:3 87:7,10 89:23
91:15 92:4 93:25 94:11 106:3,12
107:13 118:23 122:16,19 123:24
127:11 129:5,25 130:11,22 134:8
135:14 136:2 137:1,12 138:3,19
139:22 140:9,20

**formal** 24:5

**formalized** 53:24

**forms** 110:3

**forward** 64:17 124:15

**forwarded** 88:15

**found** 10:10

**four-page** 12:8

**frame** 64:3

**Frank** 17:16

**free** 45:18

**frequently** 61:22

**Friday** 16:15

**front** 33:2 69:12 70:1 97:15

**full** 27:20 29:14 45:3,13,19 56:19

**full-fledged** 64:5 79:8

**fully** 49:5

**future** 61:8 112:8

---

**G**

**garner** 106:21

**gave** 73:5

**generally** 24:19 65:12 107:11,14
111:1 115:3 118:6 120:9 121:17

**generic** 22:22

**George** 17:16

**give** 11:7 35:18 36:16 46:13
74:14 77:21 83:7 133:8 141:13

**giving** 40:14 46:1

**globalized** 73:16

**goal** 55:12

**good** 9:22,25 10:1 23:18 38:23
60:24 109:2 133:5

**grab** 68:19

**granted** 10:22

**great** 32:19 35:6 97:17

**greater** 79:21 80:4

**green** 78:12 134:14

**ground** 10:6

**grounds** 82:19 83:9 86:12,23
90:7,20 99:13 114:4 117:12
119:5,13 124:22 125:4

**group** 47:8 91:6

**groups** 66:6

**guess** 69:12 97:15

**guiding** 108:10

**guys** 88:15 109:3

---

**H**

**half** 85:17 86:3

**hanging** 49:4

**happy** 32:14 46:13 123:10

**Hartford** 18:5,7,9 23:16 24:8
38:22 60:22 109:25 110:8,9,16,22
111:3,9,24 112:3,6,13,20 113:1
114:2 115:14 116:7 118:16 122:9

**Haynes** 23:2 60:12

**headed** 23:5

**header** 20:16

**heading** 24:15 55:20 110:21

**hear** 19:7 67:24 88:22 128:25

**heard** 109:10

**hearing** 24:7 25:14 55:10 97:3

**heavily** 82:8 106:15 141:1

**heavily-negotiated** 77:13

**held** 9:11 29:18 31:12 110:13 125:14

**helped** 25:17

**high** 22:22 52:8

**highlight** 106:14

**highlighted** 70:23

**highlights** 70:8

**historical** 22:3

**hoc** 11:21,24 12:9 23:5 47:8 56:13 91:6 95:1 127:21

**holders** 100:11,21

**hope** 96:12

**hoping** 83:21

**hot** 17:17

**hour** 51:9

**hundred** 121:8

**hypothetical** 43:17

─────────────

**I**

─────────────

**I-A** 17:12

**i.e** 132:2

**identification** 12:1 14:13 20:1,8 69:3 70:15 110:10 114:22 117:17 119:19

**identified** 127:24

**identifies** 43:18

**ii** 29:10,18 84:16

**illustrate** 25:17

**immunity** 100:20

**impairment** 87:4

**important** 55:7

**improper** 96:1

**inappropriate** 43:17 95:18 96:2

**include** 52:5,9 84:24 128:10

**included** 59:14 67:4 76:12

**includes** 83:14

**including** 17:10,11 21:18 29:24 33:22 47:7 58:4,8,11,14 67:5 71:2,3 72:23 76:16 77:23 78:22 81:11 91:13 93:4,8 102:11,20 103:5 139:12 140:24

**incomprehensible** 122:17 123:25

**inconsequential** 123:25

**indemnity** 57:23

**independent** 34:5

**indicating** 136:24

**indication** 95:14,15

**indirectly** 29:24

**individual** 10:2 25:1 41:13 44:23 65:21 80:1

**individually** 130:24

**individuals** 59:17

**information** 11:16 21:23 22:17 25:7,13 34:21 48:7 49:15 50:2,12 60:5,14 61:12,15 67:12 68:9 77:19 80:15 81:15 85:21 89:15 91:19 94:5,15 97:22,24 98:13 99:11 100:14 104:5 106:5,11,18 111:17,18 113:9,13 115:11,15,16 117:5 118:14 119:1 122:5,11 123:12,21 124:8,18

**informed** 15:23 16:12 119:1

**initial** 76:18 112:20 116:7

**injunction** 26:15 27:20 29:4,14 37:4,7 56:19,20 66:13,25 78:9,15, 23 84:14 132:4 135:6 136:14 137:9

**innumerable** 60:11

**input** 47:7 54:7 106:16

**inquire** 80:19

**insert** 94:23

**inserted** 136:4

**inside** 112:14

**instruct** 30:15 34:8 64:22,24 72:5 73:24 78:2 82:18 83:2 86:11, 22 90:6,19 99:12,20 101:19 108:20 113:12 114:3 117:4,11 119:3,12 124:21 125:4

**instructed** 22:7 74:7 96:7

**instructing** 44:1 60:4 113:22

**instruction** 80:21 83:8 91:20 92:1

**instructions** 11:7 52:21 95:25 97:1

**instrument** 57:7

**insufficient** 40:6

**insurance** 18:6,7,9,21,23 19:12, 14 23:1 27:6 28:1,4,8 29:25 30:7 32:9,10 33:5,13,18 34:1,5,12 36:6 37:2 46:3 50:4 57:9,15,16 58:3,5, 6,8,11,12,13,16 61:13 63:11 76:20 84:15,16,19 110:22 111:3,9 112:3,6 114:1,2,9,16,20 115:1,8, 14,18 117:2,11,15,16 118:1,5,11, 16,17,21 119:9,11 120:1,8 121:23 122:14 123:20 125:1,3 128:20 132:5 134:24 135:2,3 136:16,19 137:10

**insurance-related** 60:12

**insured** 29:13 40:3,20 41:6,14,20 42:6 43:13 44:18 45:24 48:11 50:20

**insureds** 36:25 37:1

**insurer** 27:19 28:18 29:7 30:7 33:24 37:4 40:15 45:9,15 48:25 49:2,3 56:19 80:9 112:21 132:4

**insurers** 21:7,15,25 22:8 26:12 27:7 28:9 29:25 30:5,8 35:13 36:7 37:3 40:5 55:2,25 56:9,15 48:25 58:4,13 64:11 71:16 112:18 115:22 116:10 128:19 131:23 132:6

**Insurers'** 27:6 28:8 58:15

**integral** 50:7

**intended** 120:25

**intending** 10:19 75:3

**intent** 112:22

**intentional** 11:18

**intentionally** 121:5,6

**interest** 34:25

**interested** 11:14 88:25

**interests** 27:5 28:2,7 57:20

**interim** 25:17 37:7 66:25

**interplay** 23:22,23 61:7 115:23

**investments** 104:20,24 106:15

**invoke** 101:18,23

**invoking** 53:10 74:9 141:13

**involved** 49:2 50:16 107:1,8,11, 15 108:7 112:7 124:18 141:1

**involvement** 93:3

**involving** 27:8 28:10

**issue** 96:19 140:5

**issued** 27:7 28:9 29:25 30:7,8 36:6 37:2 40:5 58:5,12 67:21 84:16,19 132:6 136:16,19 137:10

**issues** 60:12 87:1 94:24 95:18

**IV** 97:12,19

**IV-R** 98:12

**IV-S** 17:14

**IV-W** 102:7,12 103:16


**J**

**January** 11:23 12:12 92:14,19 103:4

**jelly** 17:17

**Jennifer** 9:17

**job** 133:5

**join** 24:4 112:19,25

**joined** 116:11

**jointly** 128:8

**judgment** 15:6,22 16:14 17:1,10 18:1,5,16,20 19:5,12,21 21:8,14 22:20 31:1 37:13,19 38:3,7,13 45:22 46:18,23 47:3,4,14 48:8 49:9,22 58:24 59:5,10,13 67:7,13 68:6,10,13 71:6,23 72:25 73:8 77:1,17 78:21 80:13 81:10,16 85:2,8,23 86:22 88:20 89:11,14

91:12 93:20 94:3 98:19,25 99:17 102:14 106:1,7 111:4,8,14,16,21 112:4 113:11 114:25 115:7,17 117:8,10 118:4,10,20 119:1,8 120:7 121:24 122:7,13 123:13,23 124:12,25 127:9,14 129:3,11,19 130:20 138:1,8,18,21 139:1

**juncture** 23:13

**June** 105:15,19


**K**

**keen** 112:15

**keeping** 85:14

**kind** 25:13 36:16 54:1 85:16

**knowledge** 81:21 82:11,17 94:9, 12 130:9


**L**

**label** 25:9

**laid** 31:11

**language** 29:12 36:12 58:20,22 77:1 84:24 85:24 87:25 88:2 93:21

**larger** 66:1 115:21

**late** 103:4

**Lauria** 25:12,16 59:16

**law** 9:20 101:2

**lawyer** 109:10

**lead** 9:23

**led** 94:9 99:9

**left** 109:6

**legal** 9:4 34:7 40:8 77:23 80:20 83:7,16 86:21 90:15,17 114:6 117:9 119:13 125:2 137:13

**lengthy** 21:2

**level** 22:22 52:8 96:15 116:20

**liabilities** 45:19

**liability** 80:7 93:9

**limit** 16:22

**limitation** 17:6 18:13 19:2,18 26:1

**limitations** 17:23

**limited** 16:13,25 29:5 33:23 40:15 78:9,14,22 92:22 123:6

**limiting** 76:13

**limits** 54:12

**lines** 26:20 27:13 75:25 98:4,5,13

**liquidated** 57:25

**listed** 58:10 66:24

**listing** 58:2

**lists** 28:17

**litigation** 11:3

**LLC** 9:14 12:11

**Lloyd** 9:21,23 12:3,21 13:3,6,7, 15,20 14:2,16,18,25 15:3 16:6 19:23 20:3 21:12 30:16,22 31:4, 16,19 32:17,20 33:9 34:9 36:1,13, 20 38:17 39:18 40:1 41:4,17,23 42:2,4,14 43:1 44:1,14 45:1 46:12,14 47:19 49:2,21 51:8,12, 13,20 53:9,13 57:12 59:2,21 60:9 61:20 62:3,5 63:3,5,22,24 65:2,4 67:10 68:15,20 69:9 71:9 72:7,10 73:3 74:5,10,16,24 75:17 77:8 78:3 79:2 80:18,24 81:2 82:15 83:5,18,23 84:1 85:5 86:1,7,18 87:2,11,15,18 88:16,24 89:2,4 90:1,14,23 91:18,23 92:5,7 94:14, 18 95:5,23 96:21 97:10 99:7,16, 23,25 101:16,25 102:3,5,17 104:6 106:4 107:24 108:16,23 109:5,7, 11,20,23 110:6,15,17 113:8,23 114:8,12,23 116:24 117:7,14,19 118:24 119:7,16,21 120:18 121:15 122:2,4 124:17,24 125:7, 13 131:12 134:3

**Lloyd's** 64:24 129:18 131:1 138:13

**local** 23:5 28:21 30:3 40:5,21 41:7 42:7 43:13 44:19 46:3 47:8 48:12 50:21 54:21

**locate** 133:4

**locator** 117:22 119:24

**lodged** 66:21

**long** 85:17 88:5 125:10

**looked** 131:12 134:5 137:20,24

**Los** 85:17 94:13 124:7

**lose** 29:7

**losing** 33:25 133:11

**lot** 10:5 62:8

**Lujan-wolff** 125:18,19,23 126:2, 16,19,24 127:6,13,16 129:14 130:5,13 133:1,9,15,18,24 134:1 136:5,9 137:17 138:22 140:1,15 141:6,11,18 142:1

---

**M**

**made** 17:7 18:14 21:24 39:21 43:7 48:2 54:9 59:9 77:14 88:11 95:2 96:3 102:19 103:7 131:6 132:14 134:4 135:17,25

**make** 10:18,19 11:6 25:21 27:22 29:16 30:17 32:9 33:5,13 34:4 52:20 63:1 71:24 72:1 73:19 74:6 95:8 134:23

**making** 13:23 99:18 108:19 109:2 123:15 140:13

**mantra** 106:24

**March** 9:9 14:11

**mark** 11:20 19:23 110:7

**marked** 12:1 14:13,20 20:1 69:3, 11 110:10,19 114:14,21 117:17, 21 119:19,23

**Marsal** 106:17

**Mary** 17:15

**Mason** 23:6

**material** 96:7

**materialized** 124:2

**materials** 60:15 88:23

**matter** 9:13 10:3 81:23

**matured** 57:25

**meaning** 71:15 107:8

**meaningful** 22:9

**means** 56:25 61:6 76:8 92:11 96:17

**mediation** 11:2 53:5,11 60:6 64:23 72:6 73:15,24 74:3 75:4 81:22 82:18,19,22 83:3 86:10,12, 16 90:2,4,7,12 91:20 94:13,17,23 95:14 96:8 97:6 99:12,13 101:8,

18 104:3 107:2 112:1 113:5,14, 16,21 116:5 117:5 119:2,4,5 124:7,19,22 131:7 139:24

**mediations** 113:12

**mediator** 116:22

**mediator's** 20:6

**meet** 54:5 95:5

**meet all** 47:25

**meeting** 131:1,5

**meetings** 53:19,25 60:11 83:13 103:1 108:10 131:4

**member** 30:19 34:19 50:17 62:9 91:5 107:15 126:13,20,21

**members** 52:12 53:21 103:2

**mentioned** 39:20 59:16

**met** 24:2 53:17 61:22

**Methodist** 55:1 64:10

**Methodists** 64:13,18 100:24

**mic's** 88:16

**middle** 27:16 55:17

**Mike** 109:24

**million** 104:16 105:9,13,18 129:23

**mind** 55:5 138:16

**minimum** 104:19,23

**minutes** 68:19 85:10 113:19 131:5 139:5

**mischaracterizes** 42:12

**misspoke** 35:8

**mistake** 83:20

**Mixed** 81:6 82:4

**modifications** 123:15 135:16 140:13,14

**modified** 68:17 69:1,18 70:21,22 71:4 72:17,18 73:9 85:11 115:25 134:5 135:25 136:25 137:5 138:9 139:13

**modify** 94:4

**modifying** 84:24 98:20

**moment** 95:24

**money** 44:16

**monitor** 9:10

**month** 85:16 86:2

**months** 31:5

**morning** 9:22,25 10:1

**move** 14:1,10 16:17 68:16 75:10 81:3 124:15

**moved** 78:13

**moving** 133:22

---

**N**

**National** 21:20,21 22:5,6,18 31:13 49:25 50:1 54:9 61:21,23, 25 62:10,17 63:10,12 90:16 91:24 108:18 111:19 113:10,25

**nature** 10:21 33:18

**NEB** 83:13 113:19

**NEC** 34:20,24 52:13 53:17 60:10, 16 62:23 77:15 83:13 85:22 103:1,9 107:15 108:12 112:10,12 113:19 116:4,16 124:9 129:20 131:1 139:3,15

**necessarily** 35:17 66:16

**needed** 22:2 23:7 82:10 115:25

**negotiate** 22:7 23:24 34:24 47:10 50:13 52:10 106:19 107:9 112:12 116:13

**negotiated** 13:16 24:3 51:25 71:22 82:8 99:8 113:4 116:1 140:24

**negotiating** 52:6 54:11 64:10,15 107:2,8 139:9

**negotiation** 23:8 52:24 103:22

**negotiations** 13:21 15:19 21:17 23:12 33:21 34:18,22 35:4 38:18 39:3 45:16 52:3 53:23 54:2,23,25 64:8 65:1 71:17 73:14 85:16,19 86:3,5,11 90:4 94:9 103:3,5,20 107:12 112:9 116:17,19 124:5

**Neil** 9:23

**neutral** 79:15,21

**non-consent** 128:9

**non-impairment** 87:4

**non-objectionable** 44:4

**non-settling** 23:9

**nonbankruptcy** 101:2

**normal** 10:25

**note** 82:10 83:11 94:19 122:19 126:19

**noted** 135:11

**notice** 11:22,25 12:10,24 13:16, 19 14:10,12,21,23 43:22 46:7,10 68:25 69:17 121:2 122:16,21 126:14 129:7 141:17

**noticed** 126:10,13

**noticing** 141:2

**Notwithstanding** 134:16

**number** 20:8 45:4,5 104:15 105:6,7 110:20 116:10,11 120:23 123:6 133:10

**numbers** 60:11 104:14 106:25 107:2,8,12,16

**numerous** 140:24 141:3

---

**O**

**oath** 9:18

**object** 26:4 28:24 34:14 42:2 44:21 46:9 52:7 73:23 74:15 80:2 82:20 87:9 88:5 120:21,22,24 121:12 122:18 126:9 137:1

**objecting** 33:20 39:16

**objection** 13:14 15:17 17:7 21:9 22:21 24:24 25:23,24,25 28:22,23 30:11,12 32:3,12 33:6,15 34:6,13 35:14,23 36:11,17 38:15 39:11,24 40:7,10,24,25 41:9,22 42:11,13 43:16,20 44:9,20 46:4 47:1,15,16 48:14,15 49:18,20 50:22 53:1 54:19 56:5 57:1 58:25 59:19 61:19 62:20 63:18 65:19 66:5,14, 21 67:8 71:7 72:1,4 73:1,11,19 74:6 75:7,15 77:5,20,25 78:19,25 79:25 80:21 82:5,6 85:3 86:14 87:7,10 89:23,24 90:8 91:15 92:4 93:25 94:11,23 101:20 102:15 106:3,12 107:13,22 118:23 120:11,25 121:25 122:15,16 123:24 127:11 129:5,25 130:11, 22,23 134:8 135:14 136:2 137:12

138:3,19 139:19,22 140:9,20 141:10,16

**objections** 11:1 16:8 30:17 52:21 96:5 126:18 129:9

**objectives** 22:11

**objects** 91:6 132:2

**obligations** 100:23

**obtain** 27:19 29:13 45:3,18 55:8, 12 56:18 100:13 103:22 128:3,13

**occur** 23:8

**occurred** 30:1 92:13,25 109:23 124:20

**occurrence** 37:5

**occurs** 105:9,14,19

**offering** 74:3

**ongoing** 25:25 51:4 54:25 71:22 77:11 112:23 116:4 131:6

**opportunity** 72:1 74:15 77:21 128:25

**opt-out** 24:21 25:4,10 32:1,8,22 33:3,4,12,17,19,24 34:11 36:15 37:24 39:1,10 42:17 43:4,7 45:18 47:22 48:2,23 60:18 61:17 62:14 65:5 66:5,7,21 84:3,13,17,20 86:9 87:13 88:6 131:13,17 132:1,9,14, 21 134:6,19 135:7,13,17,22 136:7,12,13,17,20 137:16

**opt-outs** 38:18 87:5

**opted** 66:18

**options** 23:7 107:17

**order** 22:8 23:8,24 24:4 27:18 29:12 48:22 55:3,9 56:18 60:21 71:17 73:15 76:15,16 103:22 106:18,20 116:6 128:2 132:21

**ordered** 13:22

**Org** 32:6 39:2,5 40:14 48:18 57:6 61:7 64:20 66:3 79:9

**organization** 25:4,5,21 26:3,6, 11,13 27:24 28:1,4 29:1,3,6,19 30:4 32:9,23 33:5,13,17,19,25 34:25 35:16 36:15 39:9,10,22 40:4,12,21 42:17,19 43:4,5,6,8 45:3,6,10,12,18,25 46:2 47:22,23 48:3,23,24 49:11 50:9 57:16 60:19 64:6,16 65:6,10,17,18 66:4 71:22 72:13 76:10,12,15 77:3

79:8 80:5,8,11 84:3,20 86:10 88:11 91:5,8 92:11,12,21,23 93:12,13,23 107:18 128:3,6,11 131:17,24,25 132:1,2,9,10,11,16, 22 134:6,17,19,20,21,23 135:3,7, 18,21,22,23 136:8,13,20 137:7, 16,21 138:15

**Organization's** 26:22 27:4 28:6 135:1

**organizations** 12:17 13:12 15:9 17:18,20 18:7,8,10,22,24 19:14, 15 23:10,20 24:16,21,22 27:21 29:15 31:22 32:2,11 33:1,3 34:4, 12 35:13 37:24 41:7 42:7 44:18 47:8 48:12 49:17 50:6,20 55:13, 21 56:21 58:16 60:21,25 62:8,13, 14,15,18,24 63:15 65:25 66:12, 18,22 67:21 75:20 76:18,19 79:13,20,23 84:13,17 87:6 88:6,7, 9 93:2 100:23 112:18 116:9 127:2,22 128:1,15 131:13 132:15 135:5,12,13 136:13,17 138:14 139:21 140:6

**Organizations'** 57:20

**Orgs** 24:1 25:8,18 87:13

**orient** 20:4

**originated** 82:12

**over-speak** 62:25

---

**P**

**pages** 15:1 20:12 70:12

**paragraph** 21:1,2,6,15 22:20 24:13,14,18 26:17 27:16 30:24 31:17,21,25 32:18,21,25 33:2,11 35:5,12 36:21 37:11,19,22,23 38:4,8,14 43:3,14,19 46:24 47:12, 21 49:10 51:22 55:15,22 58:20 59:7 65:3,6 66:9,23 67:6,11,18,19 68:3,4,13 70:16 71:3 72:8,12,16 73:5,9,22 75:5,10,13,19 78:4,8,22 80:14,22 81:4 83:19 84:25 86:22 87:15,17,19 88:1 90:6,18,24,25 91:14 92:5,8 126:7 127:1,3,18 129:2,4,12,22 130:10,14,21 131:11,13,16 132:21,25 137:15 138:9 140:22,23

**paragraphs** 15:7 36:22 37:16 38:11 67:15 68:11 81:18 85:10

**parameters** 22:3 52:10 54:11

107:18,20

**pardon** 30:9 36:24 38:5 40:22 55:16 65:6 71:2 83:20 88:1 90:25 92:6 98:5 104:17 115:13

**paren** 15:8,9

**part** 13:21 22:19 29:23 36:5 50:7 58:22 59:6,13 61:12 62:15 68:4 93:1 103:8 107:2 108:4 113:4 136:23 137:24

**participant** 86:4 124:4

**participate** 48:12

**participated** 25:14 60:10 73:14 83:14

**participating** 23:11 24:16,21 25:3,10,21 26:2,6,10,13,22 27:3, 21,24,25 28:3,5,25 29:2,15,19 31:21 32:5,11 33:1 34:3 35:12,16 39:5,9,21 40:4,13 42:18 45:25 46:1 49:17 55:20,21 56:20 57:6, 16,19 58:15 60:18 61:17 62:13 66:7 79:9,13,19,22 80:5,11 87:12 88:7,11 91:7 92:12,22 93:1,13 108:10 131:25 134:21,23 135:3

**participation** 94:13 101:8

**parties** 21:18 23:18 24:9 33:22 34:18 35:4 38:23 47:7 50:14 52:6, 9 54:4,13,15 56:11 60:23 71:15 73:15 81:24 85:15,20 106:20 112:11,17,23,25 116:5,11,12,20, 23 117:2 119:4 124:19 128:8,10, 18 139:9 140:24

**parties'** 86:16 103:5

**partners** 33:23

**parts** 85:15

**party** 24:3,10 39:16 75:12 78:9, 15,23 89:22 107:10 128:16

**party's** 131:6

**pathway** 38:20 39:2 42:17 65:9 79:7

**pause** 52:20 55:25 56:22

**payments** 57:22

**Pending** 37:5

**percent** 121:8

**period** 63:15 77:13 92:14

**personal** 56:23 57:2 81:21 82:11

94:8 123:2

**personally** 57:4 65:23 86:4 107:1,7

**personnels** 93:2

**perspective** 23:8 96:22

**pertained** 26:11

**pertaining** 40:16

**petition** 30:2

**phone** 25:14 53:20 108:9 132:12 133:17

**phrase** 30:6,9 56:24 65:9 92:18

**place** 21:18 23:12 54:23 64:9 103:3 108:12 112:24

**plan** 12:17 13:12 17:11 22:1 25:11 26:5 33:20 38:24 39:16 55:9,22 56:15 58:11 68:17 69:2, 18,23,24 70:21,22 71:5,14,18 72:18,19,24 73:10 76:9,14 77:4 78:16,24 79:14,15,20,24 81:5,12 84:8,9 85:1,18 88:4,6 89:7,8 91:7, 14 92:10,18 93:24 98:11,21,22 100:6,7 101:9,10 102:13,22 103:11,23 104:13 105:24,25 106:9,10,21 111:17 115:14 118:16 122:8 123:16,17 127:24 128:18 131:20 132:3 134:5 135:25 136:24,25 137:5 138:9 139:6,13

**plans** 85:12 89:18 99:4 107:4

**point** 16:21 73:18 120:12

**pointing** 49:11

**points** 103:21 116:13

**policies** 27:6 28:8,17,18,20 35:21 37:2 40:4,22 41:7 42:8 43:13 44:19 46:3 48:13 50:21,25 51:3 58:3,4,5,12 67:20 84:19 132:6 135:2 136:19

**policy** 27:7,19 28:9 29:8,13,25 30:6,8 36:6 37:4 56:19 58:15 84:15 132:4 136:16 137:10

**portions** 113:3

**position** 21:5,11 37:10 40:2,19 41:20 43:12 67:5 68:4 72:22 76:24 78:20 84:23 85:7 88:19 89:6,9 90:10 93:19 95:14 96:16, 18 98:18 102:10 103:15 105:22 111:7 115:6 118:9 121:21 138:25

**positions** 53:4 86:16 90:12 96:10,16 97:8 103:5,25 104:3 112:11 113:16 117:1 119:3 124:19

**post-'75** 27:20

**post-'76** 26:13

**post-1975** 29:14 56:20 92:10,20 93:11,22

**Post-confirmation** 66:24

**post-petition** 37:7

**potentially** 56:11

**Powerpoint** 25:15

**Powerpoints** 61:5

**pre-'76** 26:10 80:4,7

**precursors** 45:7

**predicate** 29:11

**prefer** 69:22 95:6

**preliminary** 69:20

**preparation** 16:23 125:9

**prepared** 13:25 16:4,8 17:24 18:14 19:4,19 125:11

**preparing** 110:25 121:18

**present** 108:14

**presentation** 25:16 51:5 113:19

**presentations** 25:7 50:2,24 53:25 61:4 103:7 106:16 124:10 131:6 139:5

**presented** 45:23

**previous** 89:24

**previously** 31:11 32:24 41:18 42:5 46:16 59:3 60:3,9 63:16 64:7 65:7 68:8 88:3 92:17 93:23 97:20 115:20 116:6 129:18 130:25

**price** 57:9

**principal** 22:11

**print** 132:13

**prior** 13:18 16:22 17:12 21:25 22:1 23:22 30:1 31:5 37:20 38:10 42:12 49:21 55:24 56:17 59:8 61:7 67:15 71:12 77:10 79:5 80:15 91:2,16 94:6 99:2 128:2 131:22 138:7,20,24 141:21

**privilege** 11:2 53:11 82:19 83:10 86:13,24 90:2,7,21 91:21 92:2 94:17 95:15,16 96:19 97:6 99:14, 21 100:19 101:19,24 108:21 113:14 114:4 117:5,12 119:5,14 124:22 125:5 141:9,13,23

**privileged** 22:15 78:1 88:25 94:24 96:8,9 97:22,24 98:12 99:11 112:2 141:8

**privileges** 27:4 28:6 57:20

**problem** 104:1

**Procedures** 12:18 13:13 17:19

**proceed** 55:9 141:4

**proceeds** 57:22 58:9

**process** 23:3 66:5 108:11 116:4, 15 117:3

**processes** 101:1

**produce** 15:24 30:16

**produced** 83:12 104:14 139:5

**product** 11:3 35:3 73:13

**production** 103:8

**professional** 47:6

**progress** 109:2

**promise** 114:10

**proof** 93:5

**proper** 71:23 77:16

**proponent** 82:9

**proportionate** 93:9

**proposed** 72:3 73:21 82:3 89:22 101:10 139:17

**pros** 23:7

**protect** 116:8

**protected** 60:6 66:13 78:9,14,23

**protection** 23:19 36:23 50:5 79:13 80:4 128:2,11 132:19

**protections** 36:24 79:19,22 112:25

**provide** 22:16 25:6 26:15 48:19 49:12 54:6 56:21,22,25 57:5,14 60:4 62:1 67:12 71:19 84:18 106:18 107:17 113:22 122:12 128:6 132:16 136:18 141:7

**provided** 21:19 25:13 34:21 37:7 49:16 50:2,12 52:2 53:5 60:4 61:4 68:9 79:23 83:16 85:21 89:16 92:20 106:6 111:17 112:10 115:12 122:6 128:12,13 135:4

**providing** 13:1 21:23 38:24 65:9 79:9

**provision** 32:14 33:8 38:17 39:7 43:18 44:12,25 47:3 48:24 67:3,5 72:3 78:14 80:3 81:11,24 97:19 99:11 100:17 101:10,13 102:7,11 103:3,6,19 130:15

**provisions** 17:10,12 59:15 60:6 66:8 99:3 128:19

**pull** 32:13 70:9 114:8 117:14 119:17 120:18 133:2

**purple** 136:11

**pursuant** 15:19 28:3 37:6 57:10 100:12,17,25

**put** 11:20 17:24 19:3,19 68:16 69:25 74:18,21 110:3,4

**putting** 73:8

---

**Q**

**question** 11:5,13 14:1,3,5 15:18 16:23 17:5 27:11 32:15 33:2 38:5 39:25 40:8,11,18 41:2,24 42:22 43:11 44:2,4,5,8 46:11 48:6 52:14 62:7 63:7,23 66:15 74:2,25 75:1, 2,3,11 77:6,20 79:17 80:2 82:6 87:8 94:22 95:7 98:8 102:2,9 123:9,18 129:6 130:1,18 141:4

**questioned** 134:3

**questioning** 121:6 126:9 129:19 131:1 132:25 138:13

**questions** 10:11 11:17 15:25 25:25 30:17,18 64:24 96:25 109:25 120:23 122:23 123:1,6 125:19 126:4,11,18 141:3 142:2,5

**quick** 13:4

**quote** 15:25 57:15 92:20 93:11

---

**R**

**ranges** 107:12

**RCAHC** 15:23 122:20

**RCAHC's** 14:22

**read** 15:12,13 17:4,5 18:25 26:18, 25 28:14 29:2 44:6,7,8 56:4,14 58:20 77:1 84:25 88:3 89:7 93:17, 21 101:5 127:19 128:21,22,24 129:13 131:20 133:19

**reading** 27:15 70:7 132:12

**reads** 12:16 15:4 18:3,19 19:10 55:22 76:12 92:10 97:23 100:10

**real-time** 21:23 53:22 116:17

**realize** 62:7

**reask** 44:3 46:12 123:8

**reason** 13:1 69:25

**reasonable** 127:9 128:8 129:3, 10 130:20 138:1,17 139:1

**reasoning** 140:2,7 141:14,15

**reasons** 89:24

**Rebekah** 9:12

**recall** 23:13 25:12,15 42:10 46:20 51:5 52:23 53:18 59:18,23 63:25 65:11 101:12 103:4 111:22 127:8 131:14,16 138:12

**recalled** 50:24 90:20

**recalls** 90:4 94:15 116:25

**receive** 25:10,22 26:7,11,14 29:3 45:6,13 49:14 53:22,24 84:13 126:14 132:3,22 136:14 137:8

**received** 22:19 24:22 47:6 52:23 61:13 62:16 77:23 80:16,20 83:7 90:17 97:1,2 114:1 119:2 124:9

**receiving** 33:21 48:7

**recess** 51:17 69:5 109:16

**recipient** 100:18

**recognizing** 60:19 81:23

**recollection** 53:3 82:17 86:12 101:17 102:25 103:15,18

**recommendation** 139:15

**recommendations** 54:8 77:14 140:12

**record** 9:2,16 11:7,8 13:23 16:11 17:6,24 19:3,19 51:16,19 61:22 62:21 68:21,24 69:7,15 74:6,11 82:10 94:19 95:19 109:15,18

110:14 113:20 125:15,17,22,25
126:20 142:6,8

**record's** 63:1

**recording** 9:2 69:7 109:18

**recoveries** 58:14

**red** 76:4

**redesignated** 97:20

**redline** 84:7 104:14 105:8

**refer** 120:14 126:25

**reference** 114:15 139:6

**referenced** 64:8 66:1

**referred** 28:20 61:21 85:16 86:3

**referring** 43:19 54:21 97:7,8
120:12

**refers** 30:10 120:13

**reflect** 98:6 114:6

**reflected** 113:18

**regard** 120:16 121:5

**regularity** 53:18

**regularly** 54:5

**reiterate** 94:6

**reiterating** 71:11 141:20

**relate** 15:25 18:8 30:18

**related** 22:23 23:6,21 34:22
48:25

**relates** 15:8 17:18,19 18:6,10,22,
24 19:13,15 29:21 34:1 38:17
92:13,24 115:23

**relating** 138:15

**relationship** 60:20

**relationships** 65:24

**relative** 60:17 103:2,6

**release** 21:6,15 26:7,11,16 28:5
29:4 33:23 35:13,21,24 36:4,16
37:1,5 45:4,7,11,13,19 48:25 61:1
132:4,7 135:6 137:3

**released** 36:5 37:4

**releases** 39:14 48:19 49:12,16
84:18 132:17 136:18

**releasing** 42:20

**Reliable** 9:4

**relied** 86:20 106:15 108:18 117:8
125:2 131:3 139:4 140:12

**remains** 91:17 97:21

**Remember** 137:23

**removed** 76:10 89:8 98:14

**removing** 77:1 88:21 93:21

**renumbering** 104:14

**reorganization** 26:5 69:2,19

**reorganized** 30:3 104:25

**rephrase** 62:6 79:17

**report** 20:6

**reporter** 9:17 11:20 12:2 14:14,
15 20:2 44:7 46:8 69:4 74:18,21
82:24 110:7,11,12 114:22 117:18
119:20

**Reporting** 9:5

**represent** 126:2

**representative** 112:9 118:3
120:5 123:4,7

**represented** 74:13

**representing** 120:15

**reproduce** 96:19

**request** 100:17,19 112:22

**require** 55:24 56:16 131:22

**required** 27:22 29:16 35:16 39:8
45:8 56:21 57:13 84:18 94:21
103:21 132:18 136:18

**requirement** 32:7 33:4 36:15
48:17

**requirements** 33:12 47:24,25

**requires** 32:25 35:12,18 48:18
82:21

**reservation** 122:22

**reserve** 126:15,17

**resolution** 22:9 23:16 47:10
50:15 64:4,18 101:1

**resolutions** 55:3,8 71:19

**resolve** 60:24 112:21 128:9

**resolved** 49:5 62:24

**respect** 15:21 16:1 17:25 18:16
19:5,21 25:24 27:7 28:9 36:8
37:16,18 38:12 44:22 53:3,5 58:7,
12,14 59:6,9,25 61:25 62:20
67:11,13,14 68:2,10,12 73:7
79:21 80:12,19,22 81:15,18 83:6
84:19 85:10 86:8,15,22,25 87:5
89:14,16 90:2,5,15,18 91:20,23
92:2 94:2,4,17,23 95:16 97:6
98:24 99:2,18 101:12,17 102:7,19
103:16 104:3 106:8 107:12
111:16,24 113:15,24 114:2,5
115:1,12,16 117:2 118:3,15,20
119:12 122:23,24 126:14 134:16
136:19

**respects** 37:19 111:4 112:3

**respond** 60:8 61:24 80:1 138:5
139:23

**response** 42:23 52:11 141:14

**responses** 71:12

**rest** 57:8

**restrictions** 60:3

**restructuring** 50:3 61:13 63:11
106:17 108:9 114:1 119:11 125:3

**result** 85:19 124:5,15 141:1

**resulted** 85:23 86:10 131:8

**resulting** 135:25 136:24

**results** 29:21 92:24

**retained** 9:4 104:24

**reveal** 60:6 64:23 97:5 113:13
117:4 119:3

**revealed** 67:14

**revealing** 63:19 64:25 82:1 97:3
103:25 139:24

**revisions** 17:11

**rewind** 89:5

**rights** 26:22 27:4 28:2,6 29:7
33:14,18 34:1,12 35:19 40:3,14,
15,20,22,23 41:6,15,21 42:6,8,20,
24 43:13 44:18 45:8,24 46:2
48:11,25 50:20 57:15,20 135:1

**role** 50:17

**Roman** 11:21,24 12:9 65:15
66:12 95:1 127:21

**Romanette** 26:20,21 28:16

29:10,18 84:12

**Rothstein** 9:12

**rule** 100:13,25

**rules** 10:6 11:9 100:13

---

**S**

**Sam** 17:14,15 97:12

**satisfy** 128:16

**Schiavoni** 28:22 30:12 34:14
40:10,25 41:22,25 42:11 43:20
44:21 46:6,9 47:15 48:15 49:20
74:1,5,8,10,14,16,17,20,23 82:20,
25 83:1 86:14 87:9 88:14,16,22,
24 89:1 90:8 92:4 101:20 106:12
118:23 120:11,21 121:2,25
122:15,19 123:2,24 141:16

**scope** 24:25 25:24 28:24 30:14
34:7 40:8 41:10 43:22 44:10,22
46:7,10 48:16 49:19 50:23 56:6
57:2 65:20 75:8 80:1 87:8 122:1,
16 129:6 130:23 135:15 137:13
138:4 140:10 141:17

**Scout's** 40:19

**scouting** 93:3,14

**scouting-related** 29:5,9 34:2
35:25 40:16 42:21 45:11,14 49:1,
4 61:2 137:4

**Scouts** 9:14 12:10 21:22 50:7
60:20 65:24 127:8 129:22

**screen** 16:19 133:12,20

**scroll** 14:25 20:9,11 24:11 29:22
31:16 32:17 35:7,9 36:1 76:1
97:14,16,17,25 109:1 136:6

**scrolling** 20:24

**section** 17:13 26:25 33:8 48:18,
20 70:11 72:9 81:5 92:9 97:20
98:12 99:24 100:1,4 104:8,18
108:19 132:17

**Sections** 39:14 49:13,16

**secure** 21:24 23:24

**seek** 75:3 121:10

**seeking** 45:3,6

**sense** 109:5

**sentence** 43:2 47:20 56:3 57:8
84:11 87:19 88:3 89:22 90:5 91:1,
13 134:12,13 136:11 137:23

**separate** 16:15

**separately** 129:7

**series** 105:1,2

**serve** 24:9

**served** 12:23

**serves** 140:25

**sessions** 85:17 94:13,16 101:8
113:5 116:5 131:7

**set** 45:7 48:19 49:12 100:14
109:21 116:6 132:17

**setting** 11:14 81:22

**settled** 24:10 33:24 40:15 71:16

**settlement** 18:6,21,23 19:13
22:10 24:1,5 27:24 30:2 38:22
49:5 50:8 56:12 58:8 73:16 76:15,
21 79:10 88:10,12 93:8 97:24
100:2,10,11,20 102:8,12 110:8,9,
16,22 111:3,5,9,25 112:3,6 113:2
114:3,10,17,21 115:1,8,14,18,21
116:7 117:2 118:1,5,12,17,18,21
119:9,17,18 120:1,8,14 121:7,9,
10,23 122:9,10,14,25 123:20
124:14 125:1 129:23 131:7,9

**settlement-related** 124:6

**settlements** 23:22 61:8 110:1
115:22 116:10 139:11

**settling** 21:7,15 23:18 24:3 26:12
27:6,7,19 28:8,9,18 29:13,25
30:4,7,8 35:13 36:6 37:3,4 40:5
45:9,15 49:1,3 50:14 55:25 56:9,
10,17,19 58:4,5,13,14 80:9 84:16
128:19,20 131:23 132:4,6 136:16
137:10

**sex** 26:8

**sexual** 22:13 126:3

**share** 22:24 90:3 93:9 104:4
112:1 115:15 116:25 118:19
123:21

**shared** 118:15 123:11

**Sharing** 70:17 71:4

**sheet** 15:7 18:8,23 19:14,24,25
20:5,10,21 21:7,16 24:18,23
25:22 30:21,25 32:8 34:17 35:3

37:12 38:8,19,21 45:23 46:19,25
47:13,17 48:9,10 49:24 51:23,25
52:25 58:21,22 59:15 60:1 63:14
65:15 67:4,20 68:5 111:14 115:13
118:16 120:13 121:7,14 122:8,21
126:6 127:4 128:7 129:2 131:9

**short** 11:5 120:22 138:7

**showed** 25:16

**showing** 12:7 14:19 24:13 32:21
34:17 69:11 70:13 78:7 92:8
110:18 114:13 117:20 119:22
139:6

**side-by-side** 69:22

**signatories** 73:16

**similar** 32:9 33:5 36:14

**similarly** 83:5 86:18 113:23

**simply** 63:23 87:11 94:6 123:8
140:11 141:20

**sir** 9:25 12:19 14:4 15:10 17:21
18:11,25 19:16 20:22 21:3 28:12,
13 31:24 35:20 36:10,12 37:8,20
38:6 40:17 41:19 43:9 44:5 46:21
47:11 48:4 52:23 54:17 59:11
65:13 67:1,17,22,23 68:1 70:18,
19 72:14,20 76:22 77:9 78:10,11,
17,18 81:7 84:4,21 86:6 87:21
88:13 89:20 92:15 93:15 97:15
98:2 99:5 101:3 104:21 105:3,11,
16,20 110:23,24 111:6,23 114:18,
19 115:5 118:6,8,13,22 120:2
126:25 127:3 128:21 131:14
134:2 135:8 138:16 141:7

**sit** 22:14 66:16 72:1 73:20 82:3

**situation** 11:1

**small** 132:13

**softballs** 83:24

**solely** 32:5 40:15

**sort** 10:11 95:2

**sought** 71:20

**source** 82:23

**speak** 33:7,11 112:22

**speaking** 57:4 65:23

**speaks** 137:15

**specific** 43:18 53:4 61:15 62:22,
23 66:17 83:16 87:1 90:11,15

91:25 95:16,18 96:19 99:18
102:2,25 103:15,18,25 104:3
113:16,21,24 117:1,9 119:3,13
122:20 125:2 126:18 138:13
140:4,21

**specifically** 13:22 42:15 44:12
47:2 59:24 86:8 126:7 129:1
134:5

**specifics** 63:19

**speed** 94:21 95:21

**spelling** 56:9

**spent** 115:24

**spirit** 60:22

**spoke** 111:13,15

**sponsorship** 93:3

**standard** 10:11

**start** 104:14

**starting** 27:14 76:3

**state** 52:2 120:25 137:25 138:17

**stated** 92:19

**statement** 41:3 42:15,23 44:12
90:9

**States** 9:7

**status** 116:19

**stenographic** 9:16

**steps** 100:22

**stick** 90:25

**stop** 74:10

**story** 64:17

**streamline** 80:25

**stricken** 76:7 87:25 88:2 98:6

**strictly** 29:5

**strike** 132:24

**strike-out** 75:24 76:4

**strike-outs** 70:8

**structuring** 60:13

**subject** 16:7 17:23 18:13 19:2,18
33:18 39:5 76:13,19 77:13,19
81:22 91:16 96:4 98:1 103:20
129:8 135:2,5

**Subsection** 104:8

**subsequently** 95:3

**substance** 10:8 83:3 141:22

**successful** 85:19 112:13

**suggest** 82:8 107:21

**suggesting** 95:25

**superceded** 30:20

**superseded** 13:19,20

**support** 38:24 55:8,11,12 71:18
77:16 103:23 106:21 107:19
112:7,16 139:12

**supported** 77:24

**surrounded** 51:4

**survivors** 22:2 79:11 126:2,22

**suspect** 49:3

**sworn** 9:19

---

**T**

**table** 23:9 64:15

**taking** 9:23 21:17 23:12 47:5,17
54:23 64:9 74:12 103:3 108:12

**talk** 10:18

**talked** 28:17 29:17

**talking** 26:8 62:22 64:3,7 70:2
71:25 91:2 109:22 113:5 122:6
137:2

**task** 21:20 22:4,18 31:12 34:20,
23 49:25 50:18 52:1 53:16,21
54:5 60:10,16 61:14 62:10,16
63:9,13 85:22 90:16 91:24 103:1
108:17 111:19 113:9,25 124:9
131:2 139:3,14

**TCC** 71:16 103:6,23 126:13,20,
21,22

**TCJC** 63:16 64:1,4 100:15,24
103:16

**technician** 9:12

**technology** 10:13

**telling** 87:12 141:21

**ten** 51:12 109:3,4

**tent** 60:24

**term** 15:7 18:7,23 19:14,24,25
20:5,10,21 21:7,16 24:18,23
25:22 27:23 30:21,24 32:8 34:17
35:3 37:11 38:8,19,21 45:23
46:19,25 47:13,17 48:9 49:24
51:22,25 52:24 56:10 57:17
58:21,22 59:15 60:1 63:14 65:14
67:4,20 68:5 71:23 73:13 78:15
79:6 82:12 87:10 92:20 111:14
115:13 118:15 120:13 121:7,14
122:8,21 126:6 127:4,10 128:7
129:2 130:9,16,21 131:9

**terms** 16:23 24:2 36:18 41:16
42:22 45:16 53:2,18,23 54:6
57:10 60:14 70:2 76:20 82:7 83:3
98:1 103:10 106:23,25 111:2
113:20 115:3 116:15 118:7 120:9
121:17 124:13 128:4 139:10

**testified** 10:2 42:5 46:16,23 59:3,
12 65:8 82:7 113:17 121:16
129:18 134:2 140:3

**testifies** 9:20

**testify** 13:10,25 14:7 15:15 16:4,
8 17:25 18:15 19:4,20 46:17 53:2
83:15 86:17 90:11 96:8 114:24
120:5 121:18 123:7 140:16,18,21

**testifying** 13:17 15:20 16:15
42:1 104:1

**testimony** 16:13,25 30:14,23
38:2,6 41:11 42:10,12 46:20
47:11 59:8 65:11 71:1 77:11 81:9
86:19 91:11,16 94:7,17 96:4 97:2
111:22 121:12,13 138:8 140:10

**text** 29:22 70:23 72:17 75:24
76:4,7,8 78:12,13 98:5,6,13

**thereof** 58:10 69:3,19 128:5

**thereon** 93:10

**thereunder** 58:9

**thing** 10:11 31:14 38:16 73:12
81:20 96:17 102:24 112:5 115:19
124:1

**things** 10:6 42:19 48:10 50:11
53:23 54:1 61:8 70:8 94:21 95:21
106:6 133:19

**thought** 41:25

**time** 9:10 22:1 23:13 30:21 51:16,
19,24 54:22 63:4,13,14 64:2,13
65:14 68:24 69:8,21 71:14 77:13
109:15,19 112:6 115:24 124:2

125:8,17,22,25 129:21 142:6,8

**timeframe** 26:7,10 45:5 51:1 53:15 64:6 103:9

**timeline** 24:6 54:3 55:4 85:14

**timely** 55:10 93:6

**times** 10:2 53:24 114:11

**title** 31:17,20 32:22 55:21 97:21

**titled** 67:20 70:17 72:12

**titles** 27:4 28:6 57:20

**today** 9:12,23 10:25 13:10 14:7 15:15,20 16:8,14 17:25 18:14 19:4,20 21:3 22:14 35:2 47:11 66:17 72:2 73:20 89:19 96:4,25 102:23 106:9 111:12 113:6 114:24 115:12,24 118:2 120:4 121:19 122:6 123:12,15 125:8

**today's** 9:9 110:25

**told** 62:17 63:6,13

**top** 20:14,16 117:22 136:7

**topic** 13:11,22 14:7 15:1,4,16 16:9,17 17:8 18:3,16,18 19:5,10, 21 106:14 120:12,13,15,20

**topics** 12:15 13:16 15:20 17:25 83:14 104:2 113:17

**Tort** 124:3 139:12

**total** 47:18

**totality** 61:10 138:10

**transfer** 97:23

**treated** 23:11 24:1 25:18 134:19, 20 135:22

**treatment** 12:16 13:11 24:22 135:12 140:5

**tricking** 11:15

**trust** 12:17 13:12 17:18 22:10 27:23 28:3 30:2 38:25 45:9 50:8, 13 79:10 93:8 100:2,10,11,20 102:8,12 115:22

**Trustee** 97:24

**turn** 36:21 51:21 55:15 65:2 67:18 70:10 72:7 78:4 90:24 97:11 99:23 104:7 106:22

**type** 24:1 34:1 42:24 57:7 100:5 132:13

**types** 51:3 58:10 62:17,21 111:18 123:12

---

**U**

**unaccrued** 57:24

**understand** 11:13 14:3,5 15:14 17:6 25:2 41:1 44:5 46:11 48:17 63:21 78:17 96:15 103:14 126:23 138:11 141:12

**understanding** 13:9 15:5 16:1, 16 17:2,9 18:4,19 19:11 24:20 28:19,25 30:9,18,20 34:16 44:11, 15 56:2,7,24 58:19 66:11 79:12, 18 87:4

**understood** 97:9 107:25

**undisputed** 58:1

**unimpaired** 87:10

**United** 9:7 100:24

**units** 93:4

**unliquidated** 57:25

**unmatured** 57:25

**unquote** 57:17 92:21

**unrelated** 93:14

**unrestricted** 104:19,24 106:15

**upcoming** 21:25

**updates** 21:19 52:2,5,8,23 53:22, 24 112:10 116:17

**utilized** 129:20

---

**V**

**V-M** 104:11

**V-S** 108:25

**vacuum** 44:25 54:24

**vague** 87:8 130:12

**val** 76:25

**valid** 47:13 89:10 105:25

**validly** 21:8,13 30:25 37:12 38:3, 7 58:23 67:6 68:5 71:5 72:24 76:25 78:21 81:10 85:1,7 88:20 91:12 93:20 98:19 102:13 111:8 115:7 118:10 121:23

**valued** 45:24

**values** 60:20

**vein** 11:4

**version** 13:2 88:4 131:8

**versions** 17:12 99:10

**versus** 25:4 87:6

**victim** 55:8,11

**victims** 22:12 23:25 35:1 39:1 50:10 71:21

**video** 9:6

**violate** 141:24

**virtually** 9:11

**vis-a-vis** 42:25

**voluminous** 83:12

**volunteer** 30:19

**vote** 22:2

**voted** 54:9

**voting** 55:5 107:17

---

**W**

**waive** 74:3

**waiver** 28:4 55:23 56:16 90:9 131:21

**waiving** 33:17 42:20 74:2 82:21

**wanted** 40:13 46:12 121:3 133:23

**wanting** 52:9

**water** 17:14 99:24

**ways** 97:13 133:13

**week** 54:2

**Weiss-calhoon** 9:3

**whichever** 75:12

**White** 59:17 60:13 108:13

**wholly** 93:14

**Wielage** 9:18

**willingness** 125:9

**wished** 112:25

**wishes** 134:22

**withdraw** 27:11 38:5 98:7 102:9

**witness's** 30:14 140:10

**Wolff** 126:10,13 129:7 133:7
134:10 140:22

**Wonderful** 69:14

**word** 44:25 76:4

**words** 130:14

**work** 11:3 23:18 38:23 60:23
127:21

**working** 12:22 13:15 55:2 116:21

**Wow** 109:9

**writing** 134:22

**written** 55:24 56:17 128:4,7
131:22 134:25

---

### Y

---

**years** 10:13 117:3

**yes-or-no** 75:1,11

**yes/no** 82:6

**yesterday** 12:24

**Youth** 132:19

---

### Z

---

**Zoom** 10:10

**Zurich** 19:12,14 109:25 114:9,16,
20 115:1,8,18 117:2,11 118:17
122:9