# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>D.I. Ref.: 9312 |

**DEBTORS' RESPONSE TO LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE ARCHBISHOP OF AGAÑA (BANKR. D. GUAM 19-00010) TO THE DECLARATION OF BRIAN WHITTMAN IN SUPPORT OF CONFIRMATION OF THE THIRD MODIFIED FIFTH AMENDED PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC**

Boy Scouts of America (the "**BSA**") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession (together, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby file this response (the "**Response**") to the *Limited Objection Of The Official Committee Of Unsecured Creditors For The Archbishop Of Agaña (Bankr. D. Guam 19-00010) To The Declaration Of Brian Whittman In Support Of Confirmation Of The Third Modified Fifth Amended Plan Of Reorganization For Boy Scouts Of America And Delaware BSA, LLC* [D.I. 9312] (the "**Objection**") filed by the Official Committee of Unsecured Creditors appointed in *In re: Archbishop of Agaña, a Corporation Sole* (Bankr. D. Guam 19-00010) (the "**Guam Committee**"). In support of the Response, the Debtors state as follows:

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

AMERICAS 113564771

## **RESPONSE**

The Objection filed by the Guam Committee mischaracterizes the *Declaration Of Brian Whittman In Support Of Confirmation Of The Third Modified Fifth Amended Plan Of Reorganization For Boy Scouts Of America And Delaware BSA, LLC* [D.I. 9280] (the "**Declaration**"), and otherwise lacks merit.

*First*, the Guam Committee complains that Mr. Whittman offers impermissible expert testimony with respect to the "Settling Insurers' positions or mindsets with respect to proposed Settlement Agreements." Objection at 4. For instance, the Guam Committee takes issue with Mr. Whittman's statement that "I do not believe Hartford would be willing to agree to the terms set forth in the Hartford Insurance Settlement, including the monetary contribution that would be provided to the Settlement Trust, absent . . . . the release and injunctions [provided in the Plan]." *Id.* (quoting Declaration ¶ 106). The Guam Committee asserts that these statements are "speculation," and thus constitute impermissible expert testimony under Federal Rule of Evidence 702. *See id.* at 3-4. But the Guam Committee is wrong. The testimony at issue is neither speculative nor expert testimony governed by Rule 702. This is fact testimony based on Mr. Whittman's perceptions derived from his role as the Debtors' lead financial advisor, including his role in the negotiations. The notion that Mr. Whittman, who has firsthand knowledge of such discussions is "not a qualified witness" is incorrect. To the extent that such testimony could be characterized as an opinion, it is admissible lay testimony that clearly falls within the scope of Rule 701 because:

- It is rationally based on Mr. Whittman's perceptions from his role as the Debtors' lead financial advisor.

- It is helpful to clearly understanding Mr. Whittman's testimony and determining facts in issue, including the reasonableness of the settlements with the Settling Insurers.

- It is not based on scientific, technical, or other specialized knowledge that falls within the Scope of Rule 702.

*See United States v. Savage*, 970 F.3d 217, 284 (3rd Cir. 2020) ("Federal Rule of Evidence 701 permits the introduction of lay opinion testimony that is 'rationally based on the witness's perception' and 'helpful to clearly understanding the witness's testimony or to determining a fact in issue.'"); *see also* 4 Weinstein's Federal Evidence § 701.03 (2021) (citing *United States v. Johnson*, 899 F.3d 191, 210 (3d Cir. 2018)) (explaining that common situations calling for lay opinion testimony include the situation when the lay witness is in a better position than the trier of fact to form the opinion). With respect to the third point, the concept that a party in negotiations would not expect to pay substantial consideration to resolve claims absent a release from such claims is not one that is beyond the ken of the average juror. *See McMunn v. Babcock & Wilcox Power Generation Grp., Inc.*, 869 F.3d 246, 267 (3d Cir. 2017) ("Expert evidence is generally required when an issue is beyond the ken of a lay jury."); *Oddi v. Ford Motor Co.*, 234 F.3d 136, 159 (3d Cir. 2000) (explaining that expert evidence is not necessary if the jury, as persons of "common understanding," are as capable of comprehending and of drawing correct conclusions from the primary facts of the case as are experts in the subject matter). The Guam Committee's remaining objections to Mr. Whittman's testimony regarding the likely consequences of failing to reach a settlement (*e.g.*, paragraph 133), whether the plan would have been possible absent the significant monetary contributions of the insurers (*e.g.*, paragraph 135), and the benefits of the settlement (*e.g.*, paragraph 17) are meritless as such testimony is based on Mr. Whittman's percipient first hand knowledge gained from his participation in the case. *See In re Nutritional Sourcing Corp.*, 398 B.R. 816, 834-35 (Bankr. D. Del. 2008) (admitting testimony of financial advisor regarding his views on what would have occurred absent a settlement).

AMERICAS 113564771

*Second*, and similarly, the Guam Committee protests that Mr. Whittman offers "speculative opinions" and impermissible expert testimony with respect to "the mindset and positions of Chartered Organizations, as well as unknown potential future events or likehoods [sic] in the absence of the proposed settlements with the Settling Insurance Companies." Objection at 7. Specifically, the Guam Committee takes issue with the following statements from the Declaration:

- "Thus, the release of Chartered Organizations for Abuse Claims arising post-1975 is essential to effectuate the transfer of insurance rights that would provide the Settlement Trust with the ability to monetize insurance policies and provide a timely payment to survivors." Declaration ¶ 192.

- "Thus, for all of the Chartered Organizations there is a logical relationship between their contributions to the Settlement Trust and the releases that they are provided under the Plan. Moreover, if the Chartered Organizations do not receive releases, and only the BSA emerges from bankruptcy free of liability for Abuse Claims, the Chartered Organizations would likely face a significant number of lawsuits." *Id.* ¶ 199.

First, Mr. Whittman is not offering any opinions on the "mindset and positions" of Chartered Organizations in either of the cited paragraphs. Rather, Mr. Whittman is explaining that in order for the Settlement Trust to effectively monetize insurance policies, it was necessary to obtain the insurance rights of Chartered Organizations. This is pure fact testimony. Even if it wasn't, it is at most lay opinion based on Mr. Whittman's perception as the Debtors' lead financial advisor, that is relevant to understanding his testimony and advice that was provided to the Board, and is not based on scientific, technical, or other specialized knowledge that falls within the Scope of Rule 702. *See, e.g.*, *Savage*, 970 F.3d at 284.

*Third*, the Guam Committee claims that Mr. Whittman "makes various other opinion statements that are not based on facts or data of which Mr. Whittman has been made personally aware and that have not been shown to be the product of reliable principles and methods," and is

4

thus inadmissible as expert testimony.  But all of the other statements identified by the Guam Committee concern insurance settlements for which Mr. Whittman was involved in the underlying negotiations and/or in advising the Board.  *See, e.g.*, Objection at 8 (quoting Declaration ¶ 104 ("I believe the Hartford Insurance Settlement, and the amount of the Hartford Insurance Settlement Contribution, was reasonable because it was agreed to in arm's-length negotiations between sophisticated parties with opposing economic interests.")); Declaration ¶ 132 ("I believe the Century and the Chubb Companies Insurance Settlement, and the amount of the Century and Companies Insurance Settlement Contribution, was reasonable because it was agreed to in arm's-length negotiations between sophisticated parties with opposing economic interests.").  Accordingly, these statements are admissible opinion testimony by a lay witness under Rule 701.  *See, e.g.*, *Savage*, 970 F.3d at 284.

Lastly, the Guam Committee also asserts that several of Mr. Whittman's statements constitute impermissible legal conclusions.  *See* Objection at 8-9.  But the Guam Committee fails to identify any legal conclusion offered by Mr. Whittman.  For instance, the Guam Committee asserts that Mr. Whittman's statements that certain insurance settlements were reasonable constitutes a legal conclusion, but the issue of whether a settlement is reasonable is a factual issue.  *See Fed. Ins. Co. v. Hilco Cap.*, LP, No. CIV.A. 06-02-248JRJ, 2008 WL 3021109, at *5 (Del. Super. Ct. Aug. 5, 2008) (explaining that the issue of "whether the settlement was reasonable" is a factual issue), *aff'd on other grounds*, 978 A.2d 174 (Del. 2009); *accord Trustees of Univ. of Pennsylvania v. Lexington Ins. Co.*, 815 F.2d 890, 893 (3d Cir. 1987) (concluding that the record supported the jury's determination that the settlement was reasonable); *see also In re RFE Indus., Inc.*, 283 F.3d 159, 165 (3d Cir. 2002).

AMERICAS 113564771

Accordingly, for the foregoing reasons, the Guam Committee's objections should be overruled.

## **CONCLUSION**

The Debtors request that the Court overrule the Guam Committee's objections.

*[remainder of page intentionally left blank]*

AMERICAS 113564771

Dated: March 14, 2022
      Wilmington, Delaware

| | |
|---|---|
| WHITE & CASE LLP<br>Jessica C. Lauria (admitted *pro hac vice*)<br>Glenn M. Kurtz (admitted *pro hac vice*)<br>Andrew Hammond (admitted *pro hac vice*)<br>Samuel P. Hershey (admitted *pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Email: jessica.lauria@whitecase.com<br>      gkurtz@whitecase.com<br>      ahammond@whitecase.com<br>      sam.hershey@whitecase.com | */s/ Paige N. Topper*<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 351-9314<br>Email: dabbott@morrisnichols.com<br>      aremming@morrisnichols.com<br>      ptopper@morrisnichols.com |

– and –

WHITE & CASE LLP

Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: mandolina@whitecase.com
      mlinder@whitecase.com
      laura.baccash@whitecase.com
      blair.warner@whitecase.com

AMERICAS 113564771