# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Re: D.I. 9311 |

## DEBTORS' RESPONSE TO THE CERTAIN INSURERS' EVIDENTIARY OBJECTION TO DECLARATION OF BRUCE GRIGGS

Boy Scouts of America (the "**BSA**") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession (together, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby file this response (the "**Response**") to the *Certain Insurers' Evidentiary Objections to Witness Declarations Offered In Support of Confirmation of Third Modified Fifth Amended Chapter 11 Plan of Reorganization* [D.I. 9311][2] (the "**Objection**") filed by the undersigned insurance carriers to the Response (the "**Certain Insurers**"). In support of the Response, the Debtors state as follows:

## I. PRELIMINARY STATEMENT

The Certain Insurers object to the declaration of Bruce Griggs, contending that Mr. Griggs is providing improper expert testimony or legal conclusions regarding whether the Trust Distribution Procedures ("TDP") mirror the BSA's prepetition practices for handling sexual-abuse claims. [D.I. 9311]. These objections are baseless.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] While the Objection addresses the testimony of Mr. Griggs and other witnesses, this response addresses only the objections to Bruce Griggs' declaration and his attached exhibits.

## II. BACKGROUND AND ARGUMENT

### A. Mr. Griggs's Role As National Coordinating Counsel and In Formulating the TDP

As set forth in Mr. Griggs' declaration, Mr. Griggs was the lead attorney at Ogletree Deakons Nash, Smoak & Stewart P.C. ("Ogletree") and acted as National Coordinating Counsel for the Boy Scouts of America ("BSA") with respect to sexual-abuse claims.[3] As National Coordinating Counsel, Mr. Griggs was involved in all aspects of handling any of the BSA's sexual-abuse claims from 2016 to the Petition Date.[4] This included coordinating the BSA's national strategy and evaluating both the validity and value of sexual-abuse claims.[5]

Once the BSA filed this Chapter 11 Proceeding, the Debtors' advisors worked directly with Mr. Griggs to formulate Trust Distribution Procedures ("TDP").[6] The goal of the TDP was to emulate the BSA's prepetition handling of sexual-abuse claims.[7]

### B. The Certain Insurers Avoided All Discovery Based on the Contention that Mr. Griggs' Testimony Was the Only Evidence Necessary to Evaluate the TDP

In November 2021, the Debtors and the Certain Insurers sought to resolve a discovery dispute regarding whether the Certain Insurers had to provide discovery regarding their participation in the BSA's prepetition handling of sexual-abuse claims.[8] On November 19, 2021, the Court heard argument and the Certain Insurers repeatedly represented that the only evidence necessary was the BSA's prepetition practices and how those practices aligned with the TDP: it was the Debtors who "handled all of the claims…. selected defense counsel, they litigated the

---

[3] D.I. 9273 (Griggs Decl. at ¶ 1).

[4] *Id.*

[5] *Id.* at ¶¶ 5-8; *see also* Section II.A and II.E.

[6] *Id.* at Section III.

[7] *Id.* at Section IV.

[8] *See* Letter Regarding Certain Insurers' Motion to Quash (D.I. 7206).

2

cases, they settled the cases, they took the cases to trial."[9]  The Certain Insurers even acknowledged that it would be Mr. Griggs who would be the witness to discuss prepetition practices,[10] to which the Court agreed that the Debtors would be able to testify to same.[11]  Now, in about-face, the Certain Insurers seek to exclude Mr. Griggs' testimony on this precise issue based on meritless objections.

C. **Mr. Griggs Has Personal Knowledge Regarding the Formulation of the TDP**

The Certain Insurers contend that Mr. Griggs lacks foundation and personal knowledge to make the following statement in paragraph 49:  "When the Debtors were drafting the initial version of the TDP . . . ."[12]  Presumably, the Certain Insurers are concerned that Mr. Griggs could be providing evidence that the Debtors drafted the initial TDP.  In fact, the Debtors did draft the initial TDP, but this testimony by Mr. Griggs was not intended to demonstrate that fact.  Rather, Mr. Griggs was referring to the initial TDP draft that had been delivered to him.  That clarification should satisfy the objection.

D. **Paragraphs 52 Through 65 of Mr. Griggs' Declaration Reflect His Factual Knowledge of the BSA's Prepetition Practices and His Involvement In Formulating the TDP.**

Mr. Griggs was National Coordinating Counsel for the BSA with regard to sexual-abuse claims, and handled hundreds of those claims prepetition.  He was also involved in the drafting of the TDP by providing input and consulting with Debtors' counsel.  In fact, Mr. Griggs provided information about the BSA's prepetition practices to inform the TDP.  Thus, Mr.

---

[9] Nov. 19 Hr'g Tr. at 110 (D.I. 7398).

[10] *Id.* at 114 ("And when Mr. Ogletree [Griggs who works for Ogletree Deakins]—I believe he is the Boy Scouts' 30(b)(6) witness—he's also going to talk, just as the Third Circuit did in Combustion Engineering, about liability. There has to be liability and injury that the Boy Scouts can prove.").

[11] *Id.* at 69 ("Don't the debtors know?  The debtors know whether or not the insurance company accepted their recommendation and they can testify to that, right?").

3

Griggs is speaking to his factual knowledge of (1) the BSA's prepetition practices; (2) how he utilized his experience to assist with the formulation of the TDP so that it mirrors the BSA's prepetition practices; and (3) how the TDP compare with those prepetition practices. This is not expert testimony or legal conclusions – but factual testimony as to which Mr. Griggs has first-hand, personal knowledge.

Paragraphs fifty-two (52) through sixty-five (65)[13] address that certain terms of the TDP are consistent with Mr. Griggs' prepetition practices for handling sexual-abuse claims and consistent with his involvement in formulating the TDP. For example, paragraph 58 notes:

> The TDP require an Abuse claimant to satisfy the General Criteria by a preponderance of the evidence. This is the same legal standard that would apply in the tort system to a negligence claim asserted against the BSA, a Local Council, or a Chartered Organization, and the same standard that we used in evaluating whether an Abuse claimant had a credible claim.[14]

Mr. Griggs is merely reciting the fact that the TDP mirrors his prepetition practices and Mr. Griggs was involved in both processes, as to which he has personal knowledge.

Additionally, based on his experience as National Coordinating Counsel and his involvement in providing input in the development of the TDP, Mr. Griggs can (and is permitted to) provide lay opinion testimony with respect to these matters. FED. R. EVID. 701, Comm. Notes on Rules - 2000 Amendment ("[Lay] opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business.").[15]

---

[12] D.I. 9311 at 11—objection to ¶ 49 of Declaration.

[13] *Id.* at Section IV.

[14] *Id.* at ¶ 58.

[15] *See also Ghee v. Marten Transp., Ltd.*, 570 F. App'x 228, 231 (3d Cir. 2014) (citations and quotations omitted) ("It is well-settled that the modern trend favors the admission of lay opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination. . . Where, as here, a lay witness's

Mr. Griggs has knowledge of the matters at issue based on his work as NCC and his work in advising in the formulation of the TDP. As such, the Certain Insurers' objection to that paragraphs 52 through 62 as expert testimony and legal conclusions is baseless.

### E.    Exhibit 8 Is Admissible

Exhibit 8 of Mr. Griggs' declaration is a compilation of prepetition complaints filed against the Debtors, Local Councils and Chartered Organizations. The Certain Insurers object to Exhibit 8 on the grounds that: (1) it is too voluminous—and thus, not relevant; (2) it lacks foundation and has not been properly authenticated and (3) it is inadmissible hearsay.[16] These objections have no merit.

First, neither the Federal Rules nor case law support the Certain Insurers' objection that the exhibit is "too voluminous." *United States v. Ulbridcht*, 79 F. Supp. 3d 466, 484 (S.D.N.Y. 2015) (finding that evidence is not prejudicial simply because "there is a lot of it."); *United States v. Andujar*, 209 Fed. App'x 162, 170 (3d Cir. 2006) (finding that "voluminous evidence" was properly admitted because it was admitted for a "proper purpose" and relevant to establishing an element of the case). Second, the Certain Insurers' complaint ignores that the information was produced to them in November of last year. Thus, the Certain Insurers have had the documents for nearly 4 months, more than ample time to have reviewed and raised any viable objections to the documents. Nor would there be a viable objection to the exhibits, which are either publicly filed complaints or pleadings in the underlying cases. Exhibit 8 is directly

---

opinion testimony is based on sufficient experience or specialized knowledge and a sufficient connection exists between such knowledge and experience and the lay opinion, that opinion should be admitted because it may be fairly considered to be rationally based on the perception of the witness and truly helpful to the jury.").

[16] D.I. 9311.

relevant to the Confirmation Hearing as the seminal analysis to evaluating the TDP is whether it is consistent with historical prepetition practices, including as to value.

Further, Mr. Griggs has provided the foundation for these documents as they are the underlying pleadings and other documents from the prepetition sexual abuse claims that he handled as National Coordinating Counsel. Mr. Griggs has authenticated these documents as he has personal knowledge that they are true and correct copies of pleadings and other materials from the underlying matters. Finally, the documents in Exhibit 8 are not hearsay because they are not being offered for the truth of the matter asserted and they are business records.

### III.  CONCLUSION

The Debtors request that the Court overrule the Certain Insurers' objections.

*(Remainder of Page Intentionally Left Blank)*

Dated: March 15, 2022
       Wilmington, Delaware

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
Glenn M. Kurtz (admitted *pro hac vice*)
Andrew Hammond (admitted *pro hac vice*)
Samuel P. Hershey (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com
       gkurtz@whitecase.com
       ahammond@whitecase.com
       sam.hershey@whitecase.com

*/s/ Paige N. Topper*
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 351-9314
Email: dabbott@morrisnichols.com
       aremming@morrisnichols.com
       ptopper@morrisnichols.com

– and –

WHITE & CASE LLP

Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email: mandolina@whitecase.com
       mlinder@whitecase.com
       laura.baccash@whitecase.com
       blair.warner@whitecase.com