**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) Case No. 20-10343 (LSS) |
| BOY SCOUTS OF AMERICA AND | ) |
| DELAWARE BSA, LLC, | ) Jointly Administered |
| | ) |
| Debtors. [1] | ) **Objection Deadline: Mar. 30, 2022 at 4:00 p.m. (ET)** |
| | ) **Hearing Date: To be determined** |
| | ) |

**THIRTEENTH MONTHLY AND SIXTH INTERIM APPLICATION OF BERKELEY
RESEARCH GROUP, LLC FOR COMPENSATION FOR SERVICES RENDERED
AND REIMBURSEMENT OF EXPENSES INCURRED AS FINANCIAL ADVISORS
TO THE OFFICIAL TORT CLAIMANTS' COMMITTEE FOR THE PERIOD FROM
<u>MAY 1, 2021 THROUGH JULY 31, 2021</u>**

| | |
|---|---|
| Name of Applicant: | Berkeley Research Group, LLC ("<u>BRG</u>") |
| Authorized to Provide Professional Services to: | Official Tort Claimants' Committee |
| Date of Retention: | March 6, 2020 by order entered on or about April 11, 2020 |
| Period for which Compensation and Reimbursement is Sought: | May 1, 2021 through July 31, 2021 |
| Amount of Compensation Sought as Actual, Reasonable and Necessary: | $784,414.00 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary: | $0.00 |

This is a(n):  <u> X </u> monthly     <u> X </u> interim      ___ final application.

The total time expended for fee application preparation is approximately 55.00 hours and the
corresponding compensation requested is approximately $29,178.50.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

## Attachment A – Prior Applications Filed

| Date Filed Docket No. | Period | Fees | Expenses | CNO/ Order | Paid Fees | Paid Expenses | Unpaid Balance |
|---|---|---|---|---|---|---|---|
| 6/3/20 Dkt No. 768 | 3/6/20 - 3/31/20 | $281,697.00 | $ - | 7/6/20 Dkt No. 956 | $ 281,697.00 | $ - | $0.00 |
| 8/7/20 Dkt No. 1085 | 4/1/20 - 4/30/20 | $390,313.00 | $ 513.74 | 8/24/20 Dkt No. 1139 | $ 385,630.57 | $ 513.74 | $0.00 |
| *Subtotal* | *First Interim* | *$672,010.00* | *$513.74* | *3/8/21 Dkt No. 2330* | *$ 667,327.57* | *$ 513.74* | *$0.00* |
| 10/20/20 Dkt No. 1554 | 5/1/20 - 5/31/20 | $398,111.50 | $ 33.14 | 11/11/20 Dkt No. 1646 | $ 318,489.20 | $ 33.14 | $79,622.30 |
| 11/2/20 Dkt No. 1613 | 6/1/20 - 6/30/20 | $300,701.50 | $ 48.55 | 11/30/20 Dkt No. 1755 | $ 240,561.20 | $ 48.55 | $60,140.30 |
| 11/2/20 Dkt No. 1614 | 7/1/20 - 7/31/20 | $359,632.50 | $ 17.17 | 11/30/20 Dkt No. 1757 | $ 287,706.00 | $ 17.17 | $71,926.50 |
| *Subtotal* | *5/1/20- 7/31/20* | *$1,058,445.50* | *$ 98.86* | *TBD* | *$ 846,756.40* | *$ 98.86* | *$195,891.10* |
| 3/30/21 Dkt No. 2487 | 8/1/20 - 10/31/20 | $1,206,072.00 | $ 17,520.78 | 4/14/21 Dkt No. 2604 | $ 964,857.60 | $ 17,520.78 | $241,214.40 |
| *Subtotal* | *8/1/20 - 10/31/20* | *$1,206,072.00* | *$ 17,520.78* | *TBD* | *$ 964,857.60* | *$ 17,520.78* | *$229,600.40* |
| 6/17/21 Dkt No. 5365 | 11/1/20 - 1/31/21 | $1,712,235.50 | $ 21.07 | 7/13/21 Dkt No. 5567 | $ 1,369,788.40 | $ 21.07 | $323,099.10 |
| *Subtotal* | *11/1/20 - 1/31/21* | *$1,712,235.50* | *$ 21.07* | *TBD* | *$ 1,369,788.40* | *$ 21.07* | *$323,099.10* |
| *10/1/21 Dkt No. 6467* | *2/1/21- 4/30/21* | *$1,371,709.50* | *$ -* | *TBD* | *$ -* | *$ -* | *$ 1,371,709.50* |
| **Total** | | **$6,020,472.50** | **$18,154.45** | | **$ 3,848,729.97** | **$ 18,154.45** | **$2,120,300.10** |

**Attachment B – Compensation by Professional**

## BRG PROFESSIONALS

| Name of Professional | Title & Experience | Hourly Rate | Total Hours | Total Compensation |
|---|---|---|---|---|
| R. Todd Neilson | Managing Director; Over 40 Years of Experience; BS Accountancy 1975; CPA Since 1981 | $875.00 | 49.4 | $43,225.00 |
| Vernon Calder | Managing Director; Over 38 Years Of Experience; Master Of Accountancy 1983 | $775.00 | 3.8 | 2,945.00 |
| David H. Judd | Managing Director; Over 40 Years of Experience; Master of Accountancy 1980 | $770.00 | 344.9 | 265,573.00 |
| Paul N. Shields | Managing Director; Over 33 Years of Experience; Master of Business Administration 1992; CPA Since 1991 | $750.00 | 13.9 | 10,425.00 |
| Robin Cantor | Managing Director; Over 30 Years of Experience; Ph.D. in Economics | $750.00 | 1.0 | 750.00 |
| D. Ray Strong | Managing Director; Over 26 Years of Experience; Master of Accountancy 1995; CPA Since 1997 | $705.00 | 110.8 | 78,114.00 |
| Ozgur Kan | Managing Director; Over 26 Years of Academic, Financial Services, Credit Analytics and Consulting Experience; Series 50 Municipal Advisor since 2017; Ph.D. in Finance and International Business 2001 | $660.00 | 5.0 | 3,300.00 |
| Matthew K. Babcock | Director / Associate Director; Over 23 Years of Experience; Master of Accountancy 1998; CPA Since 2000 | $655.00 | 365.3 | 239,271.50 |
| Paul Diver | Director; Over 14 Years of Experience; Ph.D. in Statistics | $570.00 | 5.5 | 3,135.00 |
| Dubravka Tosic | Director; Over 30 Years of Experience; Ph.D. in Economics | $510.00 | 3.7 | 1,887.00 |
| Leif Larsen | Associate Director; Over 20 Years of Experience; CPA | $580.00 | 0.6 | 348.00 |

| Jeffrey Shaw | Senior Managing Consultant; Over 19 Years of Experience; Master of Accountancy 2002; CPA Since 2004. | $520.00 | 109.3 | 56,836.00 |
|---|---|---|---|---|
| Karl Schleip | Senior Managing Consultant; Over 4 Years of Experience; PhD in Materials Science & Engineering | $435.00 | 4.9 | 2,131.50 |
| | Managing Consultant | $415.00 | 3.7 | 1,535.50 |
| Nicholas Zeien | Managing Consultant; Senior Manager Research Services; Over 8 Years of Experience; BBA - Finance | $340.00 | 1.0 | 340.00 |
| Christina Tergevorkian | Consultant; Over 5 Years of Experience; Master of Accountancy 2018; CPA Since 2019 | $355.00 | 10.8 | 3,834.00 |
| | Senior Associate | $315.00 | 86.9 | 27,373.50 |
| Julie Neideffer | Consultant; over 20 years of experience; Bachelors of Science | $300.00 | 4.0 | 1,200.00 |
| Shelby Chaffos | Senior Associate; Over 5 Years of Experience; Master of Accountancy 2018 | $300.00 | 45.1 | 13,530.00 |
| | Associate | $255.00 | 93.2 | 23,766.00 |
| Caroline Bates | Associate; Over 29 Years of Experience; Bachelor of Accountancy 1993; CPA | $235.00 | 2.1 | 493.50 |
| Evelyn Perry | Case Assistant Over 32 Years of Experience | $190.00 | 10.8 | 2,052.00 |
| Hannah Henritzy | Case Assistant; 1 year of experience; BA – Business Administration | $155.00 | 2.3 | 356.50 |
| Victoria Calder | Case Assistant; Over 4 Years of Experience | $120.00 | 16.6 | 1,992.00 |
| | **Blended Rate** | **$605.91** | **1,294.6** | **$784,414.00** |

**Attachment C – Compensation by Project Category (Task Code)**

### COMPENSATION BY CATEGORY

| Project Categories | Total Hours | Total Fees |
|---|---|---|
| **200.30** – Document / Data Analysis (Financial / Accounting) – People Soft Accounting System | 2.9 | $1,880.00 |
| **220.00** – Debtor Operations / Monitoring (Monthly Operating Reports) | 6.2 | 2,247.00 |
| **221.00** – Debtor Operations / Monitoring (Cash Flow Reports) | 46.3 | 21,414.50 |
| **223.00** – Debtor Operations / Monitoring (Cash Management Reports) | 8.5 | 2,356.50 |
| **224.00** – Debtor Operations / Monitoring (Shared Services Reports) | 0.8 | 204.00 |
| **301.00** – Asset Analysis (General - Debtors Restricted / Identified | 35.5 | 20,706.00 |
| **303.00** – Asset Analysis (General - Local Councils) | 436.1 | 257,763.00 |
| **310.00** – Asset Analysis (Cash / Bank Accounts - Debtors) | 6.7 | 2,952.00 |
| **333.00** – Asset Analysis (Real Property – Local Councils) | 50.8 | 27,527.50 |
| **350.00** – Asset Analysis (Insurance - Debtors) | 7.0 | 4,812.00 |
| **600.00** – Claims / Liability Analysis | 163.0 | 94,202.00 |
| **800.00** – Plan & Disclosure Statement Analysis | 271.2 | 173,075.00 |
| **1020.00** – Meeting Preparation & Attendance | 50.0 | 35,145.00 |
| **1030.00** – Mediation Preparation & Attendance | 148.4 | 106,177.00 |
| **1050.00** – Deposition Preparation & Attendance | 6.2 | 4,774.00 |
| **1060.00** – Fee Application Preparation & Hearing | 55.0 | 29,178.50 |
| **Total** | **1,294.6** | **$784,414.00** |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA<br>AND<br>DELAWARE BSA, LLC,<br><br>Debtors[1]. | Chapter 11<br>Case No. 20-10343 (LSS)<br><br>Jointly Administered<br><br>**Objection Deadline: Mar. 30, 2022 at 4:00 p.m. (ET)**<br>**Hearing Date: To be determined** |

**THIRTEENTH MONTHLY AND SIXTH INTERIM APPLICATION OF BERKELEY
RESEARCH GROUP, LLC FOR COMPENSATION FOR SERVICES RENDERED
AND REIMBURSEMENT OF EXPENSES INCURRED AS FINANCIAL ADVISORS
TO THE OFFICIAL TORT CLAIMANTS' COMMITTEE FOR THE PERIOD
<u>FROM MAY 1, 2021 THROUGH JULY 31, 2021</u>**

Berkeley Research Group, LLC ("<u>BRG</u>") financial advisor to the Official Tort Claimants' Committee (the "<u>Committee</u>" or "<u>TCC</u>") of the above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>"), hereby submits its Thirteenth Monthly and Sixth Interim Application (the "<u>Application</u>") pursuant to sections 105(a), 330 and 331 of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court of the District of Delaware (the "<u>Local Rules</u>"), the Court's *Order (I) Approving Procedures For (A) Interim Compensation And Reimbursement Of Expenses Of Related Professionals And (B) Expense Reimbursement For Official Committee Members And (II) Granting*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

*Related Relief* (the "Administative Order"), entered April 6, 2020, and the "Order Amending the Order (I) Approving Procedures for (A) Interim Compensation and Reimbursement of Expenses of Retained Professionals and (B) Expense Reimbursement for Official Committee Members and (II) Granting Related Relief," signed on or about August 6, 2021 (the "Amended Administrative Order"), and the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C § 330, effective January 30, 1996 (the "U.S. Trustee Guidelines").

By this Application, BRG seeks entry of an order approving (a) the allowance of reasonable compensation for professional services rendered by BRG to the Committee during the period from May 1, 2021 through July 31, 2021 (the "Fee Period") in the amount of $785,073.00 and (b) reimbursement of actual and necessary charges and disbursements incurred by BRG during the Fee Period in the rendition of required professional services on behalf of the Committee in the amount of $2,235.66, for a total award of $787,308.66. In support of this Application, BRG represents as follows:

## JURISDICTON

1.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Pursuant to Local Rule 9013-1(f), the Committee consents to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of

the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.      The statutory bases for the relief requested herein are sections 105(a), 330, 331, and 503(b) of the Bankruptcy Code and Bankruptcy Rule 2016 and Local Rule 2016.

## BACKGROUND

3.      On February 18, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Cases"). On February 18, 2020, the Debtors also filed certain motions and applications seeking certain "first day" orders. The factual background relating to the Debtors' commencement of these Cases is set forth in the *Declaration of Brian Whittman In Support Of The Debtors' Chapter 11 Petitions And First Day Pleadings* [Docket No. 16] (the "Whittman Declaration").

4.      The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b). No trustee or examiner has been appointed in these Cases.

5.      On March 5, 2020 (the "Committee Formation Date"), the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Tort Claimants' Committee to represent all tort claimants of the Debtors pursuant to section 1102 of the Bankruptcy Code [Docket No. 142].

6.      Following the Committee Formation Date, the Committee determined to retain, subject to Court approval, BRG as its financial advisor in these Cases. The Committee also determined to retain, subject to Court approval, Pachulski Stang Ziehl & Jones LLP ("PSZJ" or "Counsel") to serve as its counsel.

7.      On March 25, 2020, the Committee filed the *Application for Entry of an Order Authorizing the Retention and Employment of Berkeley Research Group, LLC, as Financial Advisor to the Official Tort Claimant Committee Effective as of March 6, 2020* [Docket No. 293] (the "Retention Application"). On April 11, 2020, the Court entered the *Order Authorizing And Approving The Retention Of Berkeley Research Group, LLC, As Financial Advisor To The Official Tort Claimants Committee Effective As Of March 6, 2020* [Docket No. 384] (the "Retention Order"). The Retention Order authorizes BRG to be compensated on an hourly basis and to be reimbursed for actual and necessary out-of-pocket expenses. A copy of the Retention Order is attached hereto as **Exhibit A**.

8.      On September 18, 2020, the Court entered the *Order Appointing Fee Examiner and Establishing Related Procedures for the Review of Applications of Retained Professionals*, appointing Rucki Fee Review, LLC as the Fee Examiner (the "Fee Examiner") in these Cases.

9.      BRG has filed monthly and interim compensation applications in accordance with the Interim Compensation Order as delineated in **Attachment A** above for the periods covering March 6, 2020 through April 30, 2021.

## FEE PROCEDURES ORDER

10.      On or about April 6, 2020, the Court signed the Administrative Order, authorizing certain professionals ("Professionals") to submit monthly applications for interim compensation and reimbursement for expenses, pursuant to the procedures specified therein. On or about August 6, 2021, the Court signed the Amended Administrative Order.  The Administrative Order, as amended by the Amended Administrative Order, provides, among other things, that a Professional may submit monthly fee applications.  If no objections are made within fourteen (14) days after service of the monthly fee application the Debtors are authorized

to pay the Professional eighty percent (80%) of the requested fees and one hundred percent (100%) of the requested expenses. Beginning with the period ending April 30, 2020 and at three-month intervals thereafter, each of the Professionals shall file and serve an interim application for allowance of the amounts sought in its monthly fee applications for that period. All fees and expenses paid are on an interim basis until final allowance by the Court.

## COMPENSATION PAID AND ITS SOURCE

11.     All services for which BRG requests compensation were performed for or on behalf of the Tort Claimants' Committee.

12.     BRG has received no payment and no promises for payment from any source other than the Debtors for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application. There is no agreement or understanding between BRG and any other person other than the partners / directors of BRG for the sharing of compensation to be received for services rendered in these Cases as described in Bankruptcy Rule 2016.

## SUMMARY OF SERVICES RENDERED

13.     BRG, by and through its professionals, has prepared and/or assisted in the preparation of various motions submitted to the Court for consideration, advised the Tort Claimants' Committee on a regular basis with respect to various matters in connection with the Debtors' bankruptcy case, and performed all necessary professional services which are described and narrated in detail below. BRG's efforts have been extensive due to the size and complexity of the Debtors' bankruptcy case.

14.     Attached hereto as **Exhibit B** is the schedule of BRG's time and expense records for the Fee Period. These records include daily time logs describing the time spent by each BRG

professional in these Cases organized by task code and by date incurred, including identifying the professionals who rendered services relating to each task code and the total compensation sought for each task code. At this time BRG is not requesting reimbursement for any expenses incurred during the Fee Period but reserves the right to request reimbursement therefor in the future. BRG is particularly sensitive to issues of "lumping" and, unless time was spent in one-time frame on a variety of different matters for a particular client, separate time entries are set forth in the time reports. Further, time was billed in tenths of an hour.

15.     BRG, in accordance with the Bankruptcy Rules and the Local Rules, will be charging travel time at 50% of the time incurred. To the extent it is feasible, BRG professionals work during travel.

16.     BRG's time reports are recorded contemporaneously at the time the work is performed. Further, BRG has carefully reviewed all time and expense charges to ensure they were reasonable and non-duplicative. BRG's charges for its professional services are based upon the time, nature, extent and value of such services and the cost of comparable services other than in a case under the Bankruptcy Code.

17.     Resumes that describe the education and qualifications of each BRG professional whose time constitutes a basis for this Application are attached as **Exhibit C**.

18.     **Exhibit D** is a schedule of BRG's normal hourly billing rates during the Fee Period. These were the rates charged by BRG's personnel to solvent clients where BRG ordinarily receives payment in full within less than 90 days. During January of each year, BRG revises its billing rates for new cases accepted thereafter and for pending cases in the coming year. All services included in this fee application were billed at the applicable hourly rates.

**SUMMARY OF SERVICES BY TASK CODE**

19.    The services rendered by BRG during the Fee Period can be grouped into the categories set forth below. BRG attempted to place the services provided in the category that best relates to such services. However, because certain services may relate to one or more categories, services pertaining to one category may in fact be included in another category. The general summary of the services rendered by BRG during the Fee Period based on tasks and number of hours is set forth below.

**200.30 – Document / Data Analysis (Financial / Accounting) -
PeopleSoft Accounting System**

20.    During the Fee Period, BRG continued its evaluation of the Debtors' PeopleSoft accounting system with the TCC PeopleSoft consultants. BRG coordinated with the TCC PeopleSoft consultant to develop complex queries and reports to evaluate the Debtors', Non-Debtors', and Local Councils' financial statements, financial projections, assets, general ledger transactions, and unrestricted / restricted asset designations. BRG and the TCC PeopleSoft consultant attended periodic status calls to discuss on-going assignments, issues involving the PeopleSoft data and reporting, and to coordinate additional assignments including the preparation of additional PeopleSoft queries and reports to maximize efficiency.

21.    The PeopleSoft data is vital to BRG's on-ongoing and pending analysis and allowed BRG to efficiently analyze the Debtors', Non-Debtors', and Local Councils' historic and current operations and financial activity. In addition, the PeopleSoft data assisted BRG in its identification and analysis of assets available to the Debtors' creditors. BRG continued to utilize the PeopleSoft data, involving millions of transaction records, to confirm and verify data exports, documentation, and information provided by the Debtors.

22.    BRG has expended 2.9 hours on this category for a fee of $1,880.00.

### 220.00 – Debtors Operations / Monitoring (Monthly Operating Reports)

23.    BRG evaluated and performed various analyses of monthly operating reports, including analyzing balance sheet and income statement data on a comparative basis. Further time was spent evaluating the results of aforementioned analyses with BRG professionals. BRG will continue to monitor the Debtors' operations and reporting thereon and report its findings to Counsel and the Committee.

24.    BRG has expended 6.2 hours on this category for a fee of $2,247.00.

### 221.00 – Debtors Operations / Monitoring (Cash Flow Reports)

25.    During the Fee Period, BRG updated its analysis of weekly cash flow budgets and actual results in order to continue to evaluate variances between budgeted and actual amounts as they are issued by the Debtor. The analysis included updating its rolling analysis of budgeted and actual results based on updated cash flow budgets provided by the Debtors, as well as making a comparison of actual results as compared to historical weekly actual results and monthly averages for various time periods. BRG continued its periodic comparison of updated budgets to prior budgets in order to analyze variances between budgets. Budgets reviewed by BRG covered the time period from May 2021 – October 2021. In addition, BRG developed an updated comparison of weekly actual to budgeted amounts for cash receipts, and for various cash disbursement line items for the period October 2020 through July 2021.

26.    The aforementioned analyses enable BRG to better evaluate the Debtors' financial performance as well as the Debtors' ability to forecast future financial performance. BRG will continue to monitor the Debtors' cash flows and financial performance and report its findings to Counsel and the TCC.

27.    BRG has expended 46.3 hours on this category for a fee of $21,414.50.

### 223.00 – Debtors Operations / Monitoring (Cash Management Reports)

28.     During the Fee Period, BRG continued its analysis of periodic reports provided by the Debtors regarding cash receipts and disbursements. As part of this analysis, BRG analyzed transactions occurring between April 2021 through July 2021, which included over 3,660 individual receipts totaling over $29.9 million and approximately 15,737 disbursements totaling over $78.7 million. This analysis is ongoing and allows Counsel and the TCC to monitor the Debtors' cash transactions and related activity.

29.     BRG has expended 8.5 hours on this category for a fee of $2,356.50.

### 224.00 – Debtors Operations / Monitoring (Shared Services Reports)

30.     During the Fee Period, BRG continued its analysis of reports provided by the Debtors regarding cash receipts and disbursements related to non-debtor affiliates and Local Councils. BRG analyzed transactions occurring during the April 2021 and May 2021 time period, which included over 1,797 receipts totaling over $16 million, over 1,138 disbursements totaling over $2.1 million, and 302 intercompany transfers totaling approximately $2.1 million. This analysis is ongoing and allows Counsel and the TCC to monitor the Debtors' activity in relation to the Shared Services order.

31.     BRG has expended 0.8 hours on this category for a fee of $204.00.

### 301.00 – Asset Analysis (General – Debtors Restricted / Identified)

32.     BRG continued its evaluation of the Debtors' alleged restricted assets, including analysis related to the restricted asset adversary proceeding. BRG evaluated the Debtors' mediation brief / responses and worked with Counsel on related matters. BRG also assisted in the preparation of responses to the Debtors' interrogatories and requests. BRG also examined documents produced by the Debtors (including Greybooks) which provided details related to alleged restricted assets.

33.     BRG has expended 35.5 hours on this category for a fee of $20,706.00.

### 303.00 – Asset Analysis (General – Local Councils)

34.     During the Fee Period, BRG continued its investigation into Local Council assets potentially available to the Settlement Trust. BRG continued to update and refine its master Local Council dashboard / database ("Local Council Dashboard"), which includes critical financial data going back to the early 2000's for all 252 Local Councils, including assets (including cash and investments and significant real estate holdings such as camps, services centers, scout shops, and other properties), liabilities, revenue, expenses, membership, and number and estimated value of sex abuse claims going back decades. BRG's Local Council Dashboard has and will continue to provide vital, comprehensive analysis of each Local Council (including historic trends with regard to assets, operations, and membership), an estimation of the value of sex abuse claims against each Local Council and amounts that each Local Council can contribute to creditors as part of the BSA's bankruptcy process. The Local Council Dashboard allows the TCC to efficiently analyze the assets, operations, and the ability / amounts to be contributed for each of the 252 Local Councils on an automated, timely and seamless basis. Using the Local Council Dashboard, BRG prepared reports regarding its asset analysis for presentation to the Local Council Ad Hoc Committee, Local Councils, the Debtors, and other interested parties.

35.     In addition, BRG continued its analysis of Local Council asset data obtained from the Debtors' PeopleSoft accounting system, audit reports, and Forms 990. As part of this analysis, BRG focused on identifying previously unreported Local Council foundations, trusts, etc. (including any associated assets). BRG examined balance sheets and statement of operations provided for all Local Councils and compared that data with data contained within PeopleSoft, including detailed general ledger transaction data. BRG also continued its

examination of assets identified in document productions provided by all 252 Local Councils. Documents produced by the Local Councils generally related to real estate, restricted assets and income producing assets.

36.    BRG prepared reports and presentations regarding its analysis to date on the Local Councils for Counsel and the Committee. In addition, BRG prepared and presented a presentation to all Local Councils and the Debtors regarding the ongoing Local Council ability to pay analysis. After the presentation to all Local Councils and the Debtors, BRG prepared individual dashboard packets for distribution to each of the 252 Local Councils.

37.    BRG's on-going examination of Local Council assets and related documentation has and will continue to benefit its analyses and investigations, including its identification and analysis of potential assets available to the Debtors' creditors.

38.    BRG has expended 436.1 hours on this category for a fee of $257,763.00.

### 310.00 – Asset Analysis (Cash / Bank Accounts – Debtors)

39.    During the Fee Period, BRG revised its analysis of bank account statements and bank account reconciliation files uploaded by the Debtors for over 70 bank accounts. As part of its analysis, BRG analyzed corresponding transaction data maintained in the Debtors' PeopleSoft accounting system. BRG's analysis of the Debtors' bank accounts will benefit its on-going analyses and investigations, including its identification and analysis of flow of funds and potential assets available to the Debtors' creditors.

40.    BRG has expended 6.7 hours on this category for a fee of $2,952.00.

### 333.00 - Asset Analysis (Real Property – Local Councils)

41.    BRG continued its analysis of the significant real estate holdings owned by the Local Councils. BRG's analysis has identified approximately 1,400 Local Council real properties (including camps, high adventure bases, reservations, service centers, scout shops

and other properties). As part of this analysis, BRG examined the on-going, rolling real-estate related documentation productions, investigation and analysis of data obtained from public and other sources, updating of its real estate database (in the Local Council Dashboard), and evaluation of asserted restrictions by the Local Councils.

42.     BRG continued to work with CBRE in order to obtain current market values for selected Local Council real estate to supplement the historic cost basis council-provided values. As part of the valuation process, BRG worked with the Debtors' financial advisors in order to coordinate the separate valuations of Local Council properties being conducted by JLL (the Debtors' valuation firm). BRG continued to examine hundreds of valuation reports provided by CBRE and JLL, including the analysis of underlying data and trends. Valuation data obtained from CBRE, Keen and JLL was used to update BRG's Local Council Dashboard. This valuation data continues to be critical in determining current values of real estate assets owned and the resulting settlement contributions that can be made by individual Local Councils.

43.     BRG continued to work with CBRE in order to update and refine its mapping analysis of all Local Council real estate holdings. Said mapping analysis provides invaluable details and analytics in regard to Local Council real estate, including a visual depiction of critical data points such as location, ownership, values, membership trends, etc.

44.     BRG also continued to work with Counsel regarding the ongoing legal review of the validity of restrictions (including donor-related, easement, access and other) asserted by the Local Councils on various real estate holdings. BRG supported Counsel by (a) determining if supporting documentation had been provided and (b) performing a preliminary review of said documentation.

45.     BRG continued its examination of Local Council property documentation (including regional camp evaluations and other camp reports, studies, and files) prepared by the Debtors and Local Councils, which were included in Local Council document productions. Local Council camp information gleaned from these sources (including the regional camp evaluations) allowed BRG to evaluate camp operational volume within the region, issues related to the camps (including performance, maintenance, competition, oversupply), and the resulting negative impacts on the overall programming provided by the Local Councils. The regional camp evaluations provided insight into the Debtors' strategy of reducing the number of camps in an effort to improve overall operations and programming offered by the Local Councils.

46.     Finally, BRG monitored notices of intent to sell and actual sales of Local Council properties (including the tracking and analysis of list prices and final sales proceeds).

47.     BRG's analysis of the Local Councils' real estate holdings will benefit its on-going analyses and investigations, including its identification and analysis of potential assets available to the Debtors' creditors.

48.     BRG has expended 50.8 hours on this category for a fee of $27,527.50.

### 350.00 - Asset Analysis (Insurance - Debtors)

49.     BRG continued its analysis of debt issuances and bond prospectuses of Hartford Insurance Company. In addition, BRG evaluated leverage / indebtedness benchmarks related to municipal finance issuers.

50.     BRG has expended 7.0 hours on this category for a fee of $4,812.00.

### 600.00 – Claims / Liability Analysis

51.     BRG continued its analysis of the various tranches of normalized claims data, including Tranches 4 & 5, which were provided by the Debtors' / Bates White (the Debtors' consultants) containing over 106,000 claims. As part of its services, BRG, at the request of

counsel, prepared and normalized additional claims fields, including tier, base and max claim values, insurance carrier and law firm information, which were used to further analyze and investigate the claims data. BRG also evaluated potential duplicate claims, compared raw claims data aggregated by the claims agent with the tranches of normalized data prepared by Debtors, and further investigated claims data by abuse levels, law firms filing claims, local council where abuse occurred, state where abuse occurred, insurance carrier responsible for coverage, statute of limitation criteria by state, and utilization of other statistical methodologies to address inquiries from Counsel, the Committee and insurance professionals.

52.     Pursuant to direction of Counsel, BRG investigated and evaluated claims estimation / valuation models, methodologies, and structures regarding a proposed claims estimation process to value abuse claims (including statistical and econometric approaches, evaluation of economic and non-economic related damages, and investigation of available sexual abuse settlement data).

53.     BRG prepared for and attended mediation sessions with the Debtors and mediation parties regarding the Debtors' position related to claims estimation and valuation methodologies (including examination and evaluation of their underlying assumptions and calculations).

54.     BRG assisted Counsel in preparation for the deposition of the insurance carriers' expert regarding claims estimation, as well as attending the deposition, assisting Counsel with further questioning of expert, and providing additional evaluation of the testimony offered.

55.     BRG has expended 163.0 hours on this category for a fee of $94,202.00.

**800.00 – Plan & Disclosure Statement Analysis**

56.     BRG continued its evaluation of the Debtors' various amended Plans and Disclosure Statements. As part of its analysis, BRG examined the Debtors' original and updated

5-year business plans, cash flow forecasts, projected income streams, and membership reports / forecasts. BRG also evaluated the Debtors' $75 million cash requirement / threshold proposed in the Disclosure Statement. BRG also performed a preliminary review of potential tax consequences related to elements included in the Plan and Disclosure Statement.

57.    BRG evaluated the Debtors' liquidation analyses contained in the Disclosure Statement for the Debtors and Local Councils, including sensitivity analyses using different assumptions regarding levels of assets, liabilities, and claims.

58.    BRG assisted TCC Counsel in the review of financial aspects / issues included in the Term Sheet. As part of these services, BRG met with financial advisors for the Debtors, the Coalition and the TCC.

59.    BRG updated its analysis of Local Council operations, payroll, supplies, asset additions, and capital expenditures to evaluate assumptions related to the amended Plans of Reorganization and Disclosure Statements.

60.    BRG also coordinated approval from Keen Summit and CBRE to include Local Council real estate valuation data in the Disclosure Statement.

61.    BRG has expended 271.2 hours on this category for a fee of $173,075.00.

### 1020.00 – Meeting Preparation & Attendance

62.    During the Fee Period, BRG participated in various conference calls with Counsel, TCC State Court Counsel, TCC Members, Debtors' Counsel, Debtors' Financial Advisors, SCC Counsel, SCC Financial Advisors, and/or other BRG personnel regarding various case issues and assignments.

63.    As requested by the TCC, BRG attended periodic meetings with the TCC Members and/or Counsel in order to report on its analyses and investigations and to coordinate

additional work to be performed. BRG has and continues to conduct a number of complex detailed analyses and investigations.

64.     In order to coordinate and ensure the greatest value is achieved from the complex analyses and investigations performed, BRG held periodic meetings involving certain members of its team. BRG kept these meetings to the minimum required to guarantee the benefit of its services to the creditors and to the Debtors. For example, analysis of PeopleSoft accounting data being performed by one member of BRG's team can benefit other separate analyses being conducted simultaneously by other team members (including analyses of Debtors' assets, Local Council assets, alleged asset restrictions, real estate, liabilities, claims and other critical issues). Periodic meetings between key individuals allow for communication and collaboration, thus providing the greatest value of services rendered.

65.     BRG has expended 50.0 hours on this category for a fee of $35,145.00.

### 1030.00 – Mediation Preparation & Attendance

66.     BRG prepared for and attended mediation sessions between the TCC, Debtors, Local Council Ad Hoc Committee / Local Councils, Coalition, and other parties in interest. BRG also attended regular meetings between the TCC and the Mediators and continued its evaluation of issues related to the mediation process.

67.     BRG has expended 148.4 hours on this category for a fee of $106,177.00.

### 1050.00 – Deposition Preparation & Attendance

68.     BRG attended the virtual deposition of Brian Whittman, financial advisor to the Debtor.

69.     BRG has expended 6.2 hours on this category for a fee of $4,774.00.

**1060.00 – Fee Application Preparation & Hearing**

70.     During the Fee Period, BRG prepared combined monthly fee applications for the period covering November 2020 through January 2021 (including fee application narrative and related exhibits and a review of all related time entries and expenses to ensure benefit to the estate). BRG also prepared its twelfth monthly and fifth interim fee application for period of February through April 2021 as well as its thirteenth monthly and sixth interim fee application for the period of May through July 2021.

71.     Of note, prior to filing any fee application in this matter, BRG provides it fees and expenses to the Committee for review and comment and only files a fee application after it receives Committee approval of its fees and expenses.

72.     BRG has expended 55.0 hours on this category for a fee of $29,178.50.

**ACTUAL AND NECESSARY EXPENSES**

73.     BRG incurred no actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee as summarized above, for which it is requesting reimbursement, during the Fee Period.

74.     Disbursements and expenses are incurred in accordance with BRG's normal practice of charging clients for expenses clearly related to and required by particular matters. BRG endeavors to minimize these expenses to the fullest extent possible.

75.     BRG's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals", secretarial overtime, postage, and certain other office services because the needs of each client for such services differ. BRG believes that it is fairest to charge each client only for the services actually used in performing services for each client. BRG endeavors to minimize these expenses to the fullest extent possible. BRG believes the rates charged for services such as photocopying and

facsimiles are the market rates that the majority of similar firms / providers charge clients for such services.

76.     In providing a reimbursable service such as copying or telephone, BRG does not make a profit on that service. In charging for a particular service, BRG does not include in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay. BRG bills its clients the actual amounts charged by such services, with no premium. In seeking reimbursement for service which BRG justifiably purchased or contracted for from a third party, BRG requests reimbursement only for the amount billed to BRG by such third-party vendor and paid by BRG to that vendor.

## CONCLUSION

77.     Professionals of BRG expended a total of 1,294.6 hours as financial advisors to the Tort Claimants' Committee. The nature of work performed by the BRG professionals is more fully set forth in Exhibit B attached hereto. BRG charged its standard hourly rates for work of this character for the time incurred for the services provided. The reasonable value of the services rendered by BRG for the Tort Claimants' Committee during the Fee Period is $784,414.00.

78.     In accordance with the factors enumerated in section 330 of the Bankruptcy Code, BRG respectfully submits that the fees and expenses requested are fair and reasonable given (a) the complexity of the case, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under the Bankruptcy Code. Moreover, To the best of BRG's information, knowledge, and belief, this Application complies with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and the Amended Administrative Order.

To the extent there has not been material compliance with any particular rule or guideline, BRG respectfully requests a waiver or an opportunity to cure.

**WHEREFORE,** BRG respectfully requests (a) that it be allowed on an interim basis, (i) fees in the amount of $784,414.00 for reasonable, actual, and necessary services rendered by it on behalf of the Committee during the Fee Period and (ii) reimbursement of $0.00 for reasonable, actual, and necessary expenses incurred during the Fee Period; (b) that the Debtors be authorized and directed to immediately pay any allowed unpaid fees and expenses due to BRG for the Fee Period; and (c) granting such other and further relief as the Court may deem just and proper.

Dated: March 16, 2022                    /s/ R. Todd Neilson, CPA
                                         Berkeley Research Group, LLC
                                         201 South Main Street, Suite 450
                                         Salt Lake City, Utah 84111

                                         Financial Advisor to the Official Tort
                                         Claimants' Committee

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| | ) Case No. 20-10343 (LSS) |
| BOY SCOUTS OF AMERICA AND | ) |
| DELAWARE BSA, LLC, | ) Jointly Administered |
| | ) |
| Debtors. | ) |
| | ) |

**<u>VERIFICATION</u>**

**R. Todd Neilson**, pursuant to 28 U.S.C. 1746, declares as follows:

a)  I am a Managing Director at the applicant firm, Berkeley Research Group, LLC ("<u>BRG</u>"), and am authorized to submit this verification on behalf of BRG.

b)  I have read the foregoing *Thirteenth Monthly and Sixth Interim Application of Berkeley Research Group, LLC for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Financial Advisors to the Official Tort Claimants' Committee for the Period from May 1, 2021 through July 31, 2021* (the "<u>Application</u>")[3] and know the contents thereof and am familiar with the work performed on behalf of the Committee by the professionals in the firm.

c)  I certify the facts stated therein are true of my own knowledge, except for those stated upon information and belief, which I believe to be true. If called upon I could and would testify completely thereto.

---

[3] Terms not otherwise defined herein shall have the meaning ascribed to them in the Application.

d)  I have reviewed Del. Bankr. LR 2016-2 and the Interim Order signed on April 6, 2020 and submit that the Application substantially complies with such Rule and Order.

e)  BRG has provided its fees and expenses and the Application to the Committee for review and comment and has caused the Application to be filed only after receipt of TCC approval of BRG's fees and expenses.

f)  I certify under penalty of perjury that the foregoing is true and correct.


Executed on   March 16, 2022

*/s/ R. Todd Neilson*
R. Todd Neilson
