**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**D.I. Ref.: 9368** |

**DEBTORS' RESPONSE TO THE CERTAIN INSURERS' EVIDENTIARY
OBJECTIONS TO WITNESS DECLARATIONS OFFERED IN SUPPORT
OF CONFIRMATION OF THIRD MODIFIED FIFTH AMENDED
CHAPTER 11 PLAN OF REORGANIZATION**

Boy Scouts of America (the "**BSA**") and Delaware BSA, LLC, the non-profit

corporations that are debtors and debtors in possession (together, the "**Debtors**") in the above-

captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby file this response (the "**Response**")

to the *Certain Insurers' Evidentiary Objections to Witness Declarations Offered in Support of*

*Confirmation of Third Modified Fifth Amended Chapter 11 Plan of Reorganization* [D.I. 9368]

(the "**Objection**") filed by certain of the Debtors' excess insurers (the "**Certain Insurers**"),

seeking to exclude certain exhibits submitted with the *Declaration of Makeda S. Murray in*

*Support of Confirmation of Third Modified Fifth Amended Chapter 11 Plan of Reorganization*

*for Boy Scouts of America and Delaware BSA, LLC* [D.I. 9317] (the "**Murray Declaration**").  In

support of the Response, the Debtors state as follows:

**PRELIMINARY STATEMENT**

The Debtors have repeatedly sought to engage with the Certain Insurers regarding

exhibits, as required by the Pretrial Order.  The Certain Insurers have not only failed to engage,

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax
identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The
Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

but have done the opposite, filing meritless objections without any notice or effort to resolve disputes before raising them to the Court.  This conduct violates the Pretrial Order, wastes estate and judicial resources, and causes delay.  Now, the Certain Insurers have objected to certain exhibits attached to the Murray Declaration, which offers expert testimony regarding the processing and standardization of data used by Charles Bates to reach the conclusions stated in his expert report.  The Debtors respectfully ask that the Court overrule the Objection and direct the Certain Insurers to start engaging with the Debtors in good faith to resolve any remaining objections to exhibits.

## **<u>RESPONSE</u>**

The Objection is as novel as it is frivolous.

***First***, the Objection is untimely.  The Certain Insurers filed the Objection on March 17, three days after the Murray Declaration was filed and served.  It was therefore filed a full day late.  *See* Pretrial Order at III.C ("Objections to such [witness] declarations shall be due at 9:00 a.m. (ET) 48 hours after the clock starts for such declaration").

***Second***, the Certain Insurers have breached the requirement under the Pretrial Order that the parties work in good faith to identify and resolve objections.  By way of background, the parties agreed not to include a deadline in the Pretrial Order for objections to exhibits out of concern that those exhibits might be too voluminous for parties to prepare objections within 48 hours.  Here, only 43 exhibits, most of which are simply Excel files, were attached to the Murray Declaration.  Moreover, as noted in the Murray Declaration (Murray Decl. at 5, n.7), all of the exhibits were attached to Ms. Murray's opening and rebuttal expert reports, filed on December 5, 2021 and January 5, 2022, respectively.  The Certain Insurers have thus had these exhibits for months, and have no excuse for their delay in objecting.

***Third***, the Certain Insurers took no steps to identify their objections or seek to resolve them with the Debtors prior to filing the Objection in direct violation of the Pretrial Order's requirement that parties work in good faith to resolve objections to exhibits. *See* Pretrial Order at VI ("The parties will continue to work in good faith to determine what exhibits will be admitted by consent . . . Any party objecting to exhibits will work in good faith to timely resolve the objection."). Indeed, the night before the Certain Insurers filed the Objection, counsel to the Debtors emailed the Certain Insurers and arranged a phone call to discuss a process going forward for handling and resolving objections to exhibits. Neither in the emails exchanged between counsel, nor on the resulting phone call did the Certain Insurers seek to resolve, or even mention, their objections to the exhibits attached to the Murray Declaration.

***Fourth***, the following exhibits to the Murray Declaration are each admissible:

- **<u>Ms. Murray's CV [Ex. 1]</u>**. The fact that the Certain Insurers object to the introduction of Ms. Murray's CV, an exhibit routinely admitted for experts, demonstrates the depth of their commitment to opposition. The Certain Insures argue that Ms. Murray's CV is hearsay, but the parties have agreed to proceed by declaration in lieu of live testimony, meaning that Ms. Murray's CV is no more hearsay than her declaration itself, to which the Certain Insurers do not object. The only basis for the Certain Insurers' objecting to Ms. Murray's CV is to seek to delay these proceedings by forcing Ms. Murray needlessly to testify regarding her background and qualifications. Indeed, the Certain Insurers did not object to the admission of Mr. Whittman's and Mr. Burnett's CVs, and offer no basis for treating Ms. Murray any differently.

- **The Protective Order [Ex. 5]**.  The Certain Insurers make a hearsay objection to admitting the protective order entered by this Court [D.I. 799]. As should be obvious, and as the Debtors would have explained to the Certain Insurers if they had contacted the Debtors before filing the Objection, the Debtors do not seek to rely on the protective order for the truth of the matters asserted therein. Moreover, as a Court order, the protective order is the law of the case and a public record, and therefore not hearsay.  *See* Fed. R. Evid. 803(8)(A)(iii) (public records hearsay exception); *United States v. Thomas*, 48 Fed. App'x 382, 384 (3d Cir. 2002) ("Certified copies of court documents are not hearsay . . . .").

- **Materials Relied Upon [Exs. 6 and 8]**.  The materials Ms. Murray relied upon are not being offered for their truth and therefore are not hearsay, as the Certain Insurers incorrectly claim.  Rather, the Debtors offer them because Ms. Murray considered them in forming her opinion.  The materials Ms. Murray relied upon are mainly Excel files with the proof of claim data extracts, materials on the statute of limitations, Chartered Organizations and Local Council files, and the BSA's historical settlement files.  Indeed, it would be inappropriate for the Debtors ***not*** to introduce these materials so that Ms. Murray's opinion can be properly considered and understood.  *See Inline Connection Corp. v. AOL Time Warner, Inc.*, 470 F. Supp. 2d 435, 442 (D. Del. 2007) (Federal Rule of Evidence 703 "allows experts to use evidence that would not usually be admissible, such as, hearsay, as long as it is reasonably applied or relied upon, by experts in the field for their conclusions.  Rule 703 focuses on the data underlying the opinion and permits experts to use facts, information or data, if they are of a type reasonably

4

relied upon by experts in the particular field in forming opinions."); *Wasica Finance GmbH v. Schrader Int'l*, 432 F. Supp. 448, 460 (D. Del. 2020) (allowed expert to rely on hearsay under Federal Rule of Evidence 703 because "there is no dispute that experts in this field routinely and reasonably rely on this type of information."). Indeed, the Certain Insurers make a blanket hearsay objection to the materials relied upon by Ms. Murray without distinguishing among those documents, even though some are plainly not being offered for their truth. For example, one of those documents, the Bates White data field standardization list, simply shows how Bates White processed data, and the state and country translation table simply lists state and country abbreviations that are internationally recognized.

- **<u>Relevant Chartered Organization Search Terms [Ex. 7]</u>**. It is not clear how a list of search terms can be hearsay, as the Certain Insurers wrongly assert. In any event, for the avoidance of doubt, Ms. Murray offers these terms to show how she performed a string search for terms related to the Chartered Organizations across a subset of potentially relevant fields.[2]

The Debtors renew their request that the Certain Insurers work with them to identify and resolve any further objections to the Debtors' exhibit list—now served over 10 days ago—to

---

[2] Because Ms. Murray is testifying live, the Debtors will agree to withdraw Exhibits 3 and 4 to the Murray Declaration, which are her opening and rebuttal expert reports. The Certain Insurers also object to Exhibit 2 to the Murray Declaration, the Debtor's Informational Brief [D.I. 4], which is a court-filed document that has been in the Certain Insurers' possession since the first day of this case on February 18, 2020, and the facts contained therein about the Debtors have gone years without being disputed. Nonetheless, the Debtors will discuss admission of that exhibit with the Certain Insurers and will not seek to admit it with Ms. Murray's declaration. The Debtors would have agreed to withdraw these exhibits if the Certain Insurers had contacted them before filing the Objection, as they were required to do

avoid any further waste of the Court's and the estates' resources with frivolous objections to routine and clearly admissible evidence.

## **<u>CONCLUSION</u>**

The Debtors respectfully request that the Court overrule the Objection as provided herein.

[*Remainder of Page Intentionally Left Blank*]

Dated: March 18, 2022
        Wilmington, Delaware

<div style="display:flex">

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
Glenn M. Kurtz (admitted *pro hac vice*)
Andrew Hammond (admitted *pro hac vice*)
Samuel P. Hershey (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com
        gkurtz@whitecase.com
        ahammond@whitecase.com
        sam.hershey@whitecase.com


– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email: mandolina@whitecase.com
        mlinder@whitecase.com
        laura.baccash@whitecase.com
        blair.warner@whitecase.com

MORRIS, NICHOLS, ARSHT & TUNNELL
LLP

*/s/  Tori L. Remington*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
Tori L. Remington (No. 6901)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email: dabbott@morrisnichols.com
        aremming@morrisnichols.com
        ptopper@morrisnichols.com
        tremington@morrisnichols.com

</div>