**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Objection Deadline: March 21, 2022 9:00 a.m. (ET)**<br><br>**Re Docket Nos. 9395, 9396, 9397, 9398** |

**CERTAIN INSURERS' EVIDENTIARY OBJECTIONS TO WITNESS DECLARATIONS OFFERED IN SUPPORT OF CONFIRMATION OF THIRD MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

Pursuant to the *Final Pretrial Order for the Plan Confirmation Hearing* [D.I. 9285], the undersigned insurance carriers (collectively, "Certain Insurers") hereby provide their evidentiary objections to the (I) *Declaration of James L. Patton, Jr. in Support of Confirmation of the Third Modified Fifth Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 9395]; (II) *Declaration of Aaron Lundberg in Support of Confirmation of the Third Modified Fifth Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 9396]; (III) *Declaration of Catherine Nownes-Whitaker in Support of Confirmation of the Third Modified Fifth Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 9397]; (IV) *Declaration of Nancy Gutzler* [D.I. 9398], as set forth in the attached **Exhibit A**, in connection with confirmation of the plan of reorganization in the above-referenced case.

Dated: March 21, 2022

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

*/s/Louis J. Rizzo, Jr.*
Louis J. Rizzo, Jr., Esquire (#3374)
REGER RIZZO & DARNALL LLP
1521 Concord Pike, Suite 305
Brandywine Plaza West
Wilmington, DE 19803
(302) 477-7100
Email: lrizzo@regerlaw.com

*Attorney for Defendants, Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company*

Kathleen M. Miller (No. 2898)
SMITH, KATZENSTEIN & JENKINS LLP
1000 North West Street
Suite 1501
P.O. Box 410
Wilmington, DE 19899 (courier 19801)
302-652-8400

-and-

Ronald P. Schiller (admitted pro hac vice)
Matthew A. Hamermesh (admitted pro hac vice)
Sharon F. McKee (admitted pro hac vice)
Elizabeth C. Dolce (admitted pro hac vice)
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 568 6200
(215) 568 0300 facsimile
rschiller@hangley.com
mhamermesh@hangley.com
smckee@hangley.com
edolce@hangley.com

*Attorneys for Arch Insurance Company*

David M. Fournier (DE No. 2812)
Marcy J. McLaughlin Smith (DE No. 6184)
TROUTMAN PEPPER HAMILTON SANDERS LLP
Hercules Plaza
1313 Market Street
Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: 302.777.6500
Facsimile: 302.421.8390

Harris B. Winsberg (admitted pro hac vice)
PARKER, HUDSON, RAINER & DOBBS LLP
303 Peachtree Street NE
Suite 3600
Atlanta, GA 30308
Telephone: 404.420.4313
Facsimile: 404.522.8409

-and-

Margaret H. Warner (admitted pro hac vice)
Ryan S. Smethurst (admitted pro hac vice)
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
Telephone: 202.756.8228
Facsimile: 202.756.8087

*Attorneys for Allianz Global Risks US Insurance Company*

Douglas R. Gooding (admitted pro hac vice)
Jonathan D. Marshall (admitted pro hac vice)
CHOATE HALL & STEWART, LLP
Two International Place Boston, MA 02110
Telephone: (617) 248-5000
dgooding@choate.com
jmarshall@choate.com

-and-

Kim V. Marrkand (admitted pro hac vice)
Laura Bange Stephens (admitted pro hac vice)
Alec Zadek (admitted pro hac vice)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC
One Financial Center Boston, MA 02110
Telephone: (617) 542-6000
KVMarrkand@mintz.com
LBStephens@mintz.com
AZadek@mintz.com

*Attorneys for Liberty Mutual Insurance Company*

Deirdre M. Richards (DE Bar No. 4191)
FINEMAN KREKSTEIN & HARRIS PC
1300 N. King Street
Wilmington, DE 19801
Telephone: (302) 538-8331
Facsimile: (302) 394-9228
Email: drichards@finemanlawfirm.com

-and-

Michael A. Rosenthal (admitted pro hac vice)
James Hallowell (admitted pro hac vice)
Keith R. Martorana (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
Email:mrosenthal@gibsondunn.com
jhallowell@gibsondunn.com
kmartorana@gibsondunn.com

Matthew G. Bouslog (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, California 92612
Telephone: (949) 451-3800
Facsimile: (949) 451-4220
Email: mbouslog@gibsondunn.com

-and-

Susan N.K. Gummow (admitted pro hac vice)
FORAN GLENNON PALANDECH PONZI & RUDLOFF P.C.
222 N. LaSalle St., Suite 1400
Chicago, Illinois 60601
Telephone: (312) 863-5000
Facsimile: (312) 863-5009
Email: sgummow@fgppr.com

*Attorneys for the AIG Companies*

Michael J. Joyce, Esquire (No. 4563)
JOYCE, LLC
1225 King Street, Suite 800
Wilmington, DE 19801
(302)-388-1944
mjoyce@mjlawoffices.com

-and-

Kevin Coughlin, Esquire (Pro Hac Vice)
Lorraine Armenti, Esquire (Pro Hac Vice)
Michael Hrinewski, Esquire (Pro Hac Vice)
COUGHLIN MIDLIGE & GARLAND, LLP
350 Mount Kemble Ave.
PO Box 1917
Morristown, NJ 07962
973-267-0058 (Telephone)
973-267-6442 (Facsimile)
larmenti@cmg.law
mhrinewski@cmg.law

-and-

Britton C. Lewis, Esquire (Pro Hac Vice)
CARRUTHERS & ROTH, P.A.
235 N. Edgeworth St.
P.O. Box 540
Greensboro, NC 27401
(336) 478-1146 (Telephone)
(336) 478-1145 (Facsimile)
bcl@crlaw.com

*Counsel to Arrowood Indemnity Company*

David M. Fournier (DE No. 2812)
Marcy J. McLaughlin Smith (DE No. 6184)
TROUTMAN PEPPER HAMILTON SANDERS LLP
Hercules Plaza
1313 Market Street, Suite 5100
P.O. Box 1709
Wilmington, Delaware 19899-1709
Phone: (302) 777-6500

Harris B. Winsberg (admitted pro hac vice)
PARKER, HUDSON, RAINER & DOBBS LLP
303 Peachtree Street NE
Suite 3600
Atlanta, GA 30308
Telephone: 404.420.4313
Facsimile: 404.522.8409

-and-

Todd C. Jacobs (admitted pro hac vice)
John E. Bucheit (admitted pro hac vice)
BRADLEY RILEY JACOBS PC
500 West Madison Street, Suite 1000
Chicago, Illinois 60661
Telephone: (312) 281-0295

*Attorneys for National Surety Corporation and Interstate Fire & Casualty Company*

Maria Aprile Sawczuk (No. 3320)
GOLDSTEIN & MCCLINTOCK LLLP
501 Silverside Road
Wilmington, Delaware 19809
Phone: (302) 444-6710
E-mail: marias@goldmclaw.com

-and-

Laura McNally
Emily Stone
LOEB & LOEB LLP

Bruce W. McCullough (No. 3112)
BODELL BOVÉ, LLC
1225 N. King Street, Suite 1000
Wilmington, Delaware 19801-3250
Telephone: (302) 655-6749
E-mail: bmccullough@bodellbove.com

-and-

Bruce D. Celebrezze (pro hac vice)
CLYDE & CO US LLP
Four Embarcadero Center, Suite 1350

321 N. Clark Street, Suite 2300
Chicago, Ilinois 60654
Phone: (312) 464-3155
E-mail: lmcnally@loeb.com,
estone@loeb.com

*Attorneys for The Continental Insurance Company and Columbia Casualty Company*

San Francisco, California 94111
Telephone: (415) 365-9800
Facsimile: (415) 365-9801
E-mail: bruce.celebrezze@clydeco.us

Konrad R. Krebs (pro hac vice)
CLYDE & CO US LLP
200 Campus Drive | Suite 300
Florham Park, NJ 07932
Telephone: (973) 210-6700
Facsimile: (973) 210-6701
E-mail: konrad.krebs@clydeco.us

-and-

David Christian (pro hac vice)
DAVID CHRISTIAN ATTORNEYS LLC
105 W. Madison St., Suite 1400
Chicago, Illinois 60602
Telephone: (862) 362-8605
E-mail: dchristian@dca.law

*Attorneys for Great American Assurance Company, f/k/a Agricultural Insurance Company; Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company; and Great American E&S Insurance Company*

Stephen M. Miller (No. 2610)
Carl N. Kunz, III (No. 3201)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 888-6800
Email: smiller@morrisjames.com
ckunz@morrisjames.com

-and-

Margaret M. Anderson, Esq. (admitted pro hac vice)
Ryan T. Schultz (admitted pro hac vice)
Adam A. Hachikian (admitted pro hac vice)
Kenneth M. Thomas (admitted pro hac vice)
FOX SWIBEL LEVIN & CARROLL LLP

Marla S. Benedek (No. 6638)
COZEN O'CONNOR
1201 N. Market Street, Suite 1001
Wilmington, DE 19801
Telephone: (302) 295-2024
Facsimile: (302) 250-4498
Email: mbenedek@cozen.com

*Counsel to Traders and Pacific Insurance Company, Endurance American Specialty Insurance Company, and Endurance American Insurance Company*

200 W. Madison Street, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 224-1200
Email: panderson@foxswibel.com
rschultz@foxswibel.com
ahachikian@foxswibel.com
kthomas@foxswibel.com

*Attorneys for Old Republic Insurance Company*

Paul Logan (No. 3339)
POST & SCHELL, P.C.
300 Delaware Avenue
Suite 1380
Wilmington, DE 19801
Phone: (302) 251-8856
Fax: (302) 251-8857
E-mail: plogan@postschell.com

-and-

George R. Calhoun (pro hac vice)
IFRAH PLLC
1717 Pennsylvania Ave., N.W.
Suite 650
Washington, DC 20006
Phone: (202) 840-8758
E-mail: george@ifrahlaw.com

*Attorneys for Argonaut Insurance Company and Colony Insurance Company*

Brian A. Sullivan
WERB & SULLIVAN
LEGAL ARTS BUILDING
1225 N. King Street
Suite 600
Wilmington, Delaware 19801
Telephone: (302) 652-1100
Facsimile: (302) 652-1111
Email: bsullivan@werbsullivan.com

-and-

John E.W. Baay II, Esq. (pro hac vice)
Gieger Laborde & Laperouse LLC
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-
Telephone: (504) 561-0400
Facsimile: (504) 561-0100
Email: jbaay@glllaw.com

-and-

William H. White Jr., Esq. (pro hac vice)
Kiernan Trebach LLP
1233 20th Street, NW, 8th Floor
Washington, DC 20036
Direct: 202-712-7042
Fax: 202-712-7100
Email: wwhite@kiernantrebach.com

*Attorneys for Gemini Insurance Company*

Thaddeus J. Weaver (Id. No. 2790)
DILWORTH PAXSON LLP
704 King Street, Suite 500

Kathleen M. Miller (No. 2898)
SMITH, KATZENSTEIN & JENKINS LLP
1000 West Street, Suite 1501

P.O. Box 1031
Wilmington, DE 19899-1031
(302) 571-8867 (telephone)
(302) 655-1480 (facsimile)
tweaver@dilworthlaw.com

-and-

William E. McGrath, Jr. (Admitted pro hac vice)
DILWORTH PAXSON LLP
2 Research Way, Suite 103
Princeton, NJ 08540
(609) 924-6000 (telephone)
(215) 893-8537 (facsimile)
wmcgrath@dilworthlaw.com

*Attorneys for Munich Reinsurance America, Inc., formerly known as American Re-Insurance Company*

Kathleen M. Miller (No. 2898)
Smith, Katzenstein & Jenkins LLP
1000 West Street, Suite 1501
P.O. Box 410
Wilmington, DE 19899 [Courier 19801]
Telephone: (302) 652-8400
Facsimile: (302) 652-8405
Email: kmiller@skjlaw.com

-and-

Lloyd A. Gura*
Pamela J. Minetto*
Mound Cotton Wollan & Greengrass LLP
One New York Plaza 44th Floor
New York, NY 10004
Tel: (212) 804-4282
Email: lgura@moundcotton.com
pminetto@moundcotton.com
(*Admitted pro hac vice)

*Attorneys for Indian Harbor Insurance Company, on behalf of itself and as successor in interest to Catlin Specialty Insurance Company*

Wilmington, Delaware 19801
Phone: (302) 652-8400
E-mail: kmiller@skjlaw.com

-and-

Mary E. Borja (admitted pro hac vice)
Gary P. Seligman (admitted pro hac vice)
Ashley L. Criss (admitted pro hac vice)
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
Phone: (202) 719-7000
E-mail: mborja@wiley.law, gseligman@wiley.law, acriss@wiley.law

*Attorneys for General Star Indemnity Company*

**CERTIFICATE OF SERVICE**

I, Louis J. Rizzo, hereby certify that on March 21, 2022, I caused a copy of *CERTAIN INSURERS' EVIDENTIARY OBJECTIONS TO WITNESS DECLARATIONS OFFERED IN SUPPORT OF CONFIRMATION OF THIRD MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION*, to be filed through the Court's Case Management/Electronic Case File ("CM/ECF") and served on all parties (as identified on the most current list of participating parties maintained on the Court's docket) via CM/ECF and/or electronic mail.

Dated: March 21, 2022

Respectfully submitted,

*/s/ Louis J. Rizzo, Jr.*

Louis J. Rizzo, Jr. (#3374)
REGER RIZZO & DARNALL LLP
1521 Concord Pike, Suite 305
Brandywine Plaza West
Wilmington, Delaware 19803
Phone: (302) 477-7100
Email: lrizzo@regerlaw.com

*Attorneys for Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company*

**Exhibit A**

*In re Boy Scouts of America and Delaware BSA, LLC*,
Case No. 20-10343 (LSS)

**Certain Insurers' Objections to Declaration of James Patton [D.I. 9395]**

| ¶ No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| 11 | This due diligence enabled me to evaluate the pool of assets potentially available for Abuse Claimants and the prospects that Abuse Claimants (present and future) would have absent the Plan and Channeling Injunction. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Relevance (Fed. R. Evid. 401) |
| 12 | I believe the Plan represents a reasonable resolution of the Debtors' liabilities, is fair and equitable to holders of Future Abuse Claims ("Future Abuse Claimants"), and treats Future Abuse Claimants in a manner that is substantially similar to present Abuse Claimants. The Plan is the result of extensive and often contentious negotiations spanning almost a year-and-a-half and hundreds of hours of virtual and live mediation sessions (the "Mediation"). Numerous parties with a wide variety of interests attended the Mediation, including present and future Abuse Claimants' Representatives, Debtors, the Ad Hoc Committee of Local Councils (the "AHCLC"), Chartered Organizations, Debtors' prepetition non-Abuse creditors, and Insurance Companies. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602)<br>• Relevance (Fed. R. Evid. 401) |
| 13 | In the Spring of 2021, without the involvement of any Abuse Claimants' Representatives, the Debtors reached settlements with the Creditors' Committee, JPM, (the Debtors' senior secured lender), and Hartford (one of the Debtors' largest primary insurers) (the "First Hartford Settlement"). I did not support these settlements, which were incorporated into the *Second Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* filed on April 13, 2021 [Docket No. 2592] (the "Second Amended Plan"). The other Abuse Claimants' Representatives and I were particularly frustrated with the Debtors' entry into the First Hartford Settlement, which not only provided for an insufficient "headline" payment to the Settlement Trust of just $650 million, but also contained a "most favored nations clause" that provided for a significant reduction to Hartford's payment amount depending upon how much Century paid on account of its liability to the Debtors. All Abuse Claimants' Representatives staunchly opposed the Second Amended Plan. | • Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |

*In re Boy Scouts of America and Delaware BSA, LLC*,
Case No. 20-10343 (LSS)

**Certain Insurers' Objections to Declaration of James Patton [D.I. 9395]**

| ¶ No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| 14 | The Debtors continued negotiations with all parties in interest, with a particular focus on reaching a consensus with the Abuse Claimants' Representatives. These negotiations, which included a number of in-person mediation sessions, culminated in the Restructuring Support Agreement (the "RSA"), the terms of which became embodied the *Fourth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* filed on July 2, 2021 [Docket No. 5484]. Among other things, the RSA (i) provided for contributions from the Debtors and Local Councils to the Settlement Trust of approximately $850 million and (ii) required that the Debtors abandon the First Hartford Settlement. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |
| 15 | In August 2021, the Bankruptcy Court conducted a multi-day hearing to consider approval of the RSA. At the conclusion of the hearing, the Bankruptcy Court determined, among other things, that entry into the RSA was a sound exercise of the Debtors' business judgment. However, the Bankruptcy Court declined to make a finding that the Debtors were not required to proceed with the First Hartford Settlement. Consequently, the Debtors were concerned that their abandonment of the First Hartford Settlement could expose the estates to a potentially large administrative claim. As a result, the RSA expired by its terms on August 27, 2021. Nevertheless, the parties continued negotiating in an attempt to both resolve the administrative claim issue with Hartford and also to obtain further settlements with Insurance Companies and Chartered Organizations. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |
| 16 | The Mediation continued almost on a daily basis through early September 2021. Because of these negotiations and with the assistance of the Mediators, the Debtors, the Coalition, the AHCLC, and I agreed in principle on settlement terms that achieved two significant accomplishments. First, Hartford increased its contribution to the Settlement Trust to $787 million, and that amount was not subject to reduction based on the terms of settlements with any other Insurance Company (the "Second Hartford Settlement"). | • Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |
| 18 | The negotiations over the TCJC Settlement were especially complicated because of TCJC's unique historical | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. |

*In re Boy Scouts of America and Delaware BSA, LLC*,
Case No. 20-10343 (LSS)

**Certain Insurers' Objections to Declaration of James Patton [D.I. 9395]**

| ¶ No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| | relationship with the BSA. It is my understanding that Scouting was the official activity program for TCJC youth from 1928 until 2019 when the TCJC concluded its relationship with BSA, and essentially all boys involved in TCJC also took part in Scouting. Accordingly, any TCJC-related Abuse and Scouting-related Abuse (as that term is defined in the Plan) were highly likely to be overlapping and intertwined with respect to TCJC members. Thus, we negotiated a TCJC Settlement that we believed would pay TCJC members in full for those claims. | Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |
| 19 | The TCJC and Second Hartford Settlements were incorporated into the *Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* filed on September 15, 2021 [Docket No. 6212] (the "Fifth Amended Plan"). In combination with the contribution to be made by the Debtors and Local Councils, the TCJC and Second Hartford Settlements resulted in proposed cash contributions to the Settlement Trust totaling almost $2 billion, not including the potential recovery from Insurance Policies that would be transferred to the Settlement Trust. At that point, the Settlement Trust would have already been the largest trust ever established to compensate sexual abuse survivors. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |
| 20 | The TCC asserted that the TCJC and Second Hartford Settlements did not provide adequate compensation to survivors relative to what the TCC believed Hartford's and the TCJC's total potential liability to be. The Abuse Claimants' Representatives had therefore arrived at an impasse because the Coalition and I believed the Second Hartford and TCJC Settlements were reasonable. These settlements were the result of complex and contentious negotiations among parties with a variety of interests. Moreover, the settlements provided numerous benefits to the estates and holders of Abuse Claims, including the elimination of Hartford's potential administrative claim, as well as creating momentum for additional Insurance Company and Chartered Organization settlements. The Coalition and I therefore believed the best course of action was to agree to these settlements and seize upon the momentum to obtain additional settlements, which we hoped would persuade the TCC to support the Fifth Amended Plan. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |

*In re Boy Scouts of America and Delaware BSA, LLC*,
Case No. 20-10343 (LSS)

**Certain Insurers' Objections to Declaration of James Patton [D.I. 9395]**

| ¶ No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| 21 | Negotiations and mediation sessions continued, with an aim to obtain deals with other key Insurance Companies and Chartered Organizations. Like the parties' previous efforts, these negotiations, which were conducted under the oversight of the Mediators, were lengthy, complex and contentious. However, the time spent by the parties proved to be extremely beneficial, as this round of negotiations led to the Century and Chubb Companies Insurance Settlement, which was significant in several respects. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |
| 22 | Importantly, it resulted in Century and the Chubb Companies contributing $800 million to the Settlement Trust. I believe this contribution to be substantial in any context, but it is particularly substantial (and was particularly hard-fought) here because of questions surrounding Century's financial viability. The potential for recovery against Century also had to be weighed against the likelihood of protracted future litigation. This likelihood presented a significant risk because of the uncertainty regarding both the success of collecting under the insurance policies as well as the amount of Century's assets that would remain after such litigation. The Century and Chubb Companies Insurance Settlement avoided this outcome while also providing the largest single contribution to the Settlement Trust. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Relevance (Fed. R. Evid. 401) |
| 23 | As counsel for Century made clear during the Disclosure Statement hearing, securing such an outcome required a full release from Abuse-related liability for the Century and Chubb Companies. This demand was not surprising to me, based on my experience in other cases. Insurers typically seek complete certainty and peace as part of any settlement in the mass-tort context—that is, a complete release from liability arising from any underlying tort claims. From my perspective, providing such a release in order to secure the settlement was appropriate given the risks of recovery from Century and the value the settlement would contribute to the Settlement Trust. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |
| 24 | Moreover, the Century and Chubb Companies Insurance Settlement provided a framework for addressing participation by Chartered Organizations under the Plan and resolving claims against those entities. Resolving these | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |

*In re Boy Scouts of America and Delaware BSA, LLC*,
Case No. 20-10343 (LSS)

**Certain Insurers' Objections to Declaration of James Patton [D.I. 9395]**

| ¶ No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| | issues spurred further settlements with the United Methodist Ad Hoc Committee, the Zurich Insurers, and Clarendon. | • Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |
| 25 | In addition, these further negotiations also resulted in the Debtors and Local Councils contributing tens of millions of dollars more in assets on behalf of Chartered Organizations to the Settlement Trust. In the aggregate, the various settlements resulted in proposed contributions to the Settlement Trust of approximately $2.7 billion in cash, notes and property in addition to valuable rights to pursue additional recoveries against those parties that have not yet settled. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |
| 26 | Despite what I believed to be a positive outcome, the TCC remained unpersuaded and did not support the prior version of the Plan. This presented a risk to confirmation of the prior version of the Plan. It was therefore in the interests of Abuse Claimants and all parties who supported the prior version of the Plan to win the support of the TCC. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602)<br>• Relevance (Fed. R. Evid. 401) |
| 27 | To that end, the Debtors, the AHCLC, the Coalition, and I negotiated with the TCC and certain state court counsel for Abuse Claimants. These negotiations revolved around the Settlement Trust and Trust Distribution Procedures (the "TDPs"), which are described further below. The negotiations were (again) intense, especially given the critical role the Settlement Trust and TDPs would play following confirmation. Fortunately, the parties were able to reach an agreement, which included a Settlement Trust governance structure that requires the consent of at least five (5) of the seven (7) members of the STAC and approval by the FCR to approve certain transactions. In exchange for these amendments to the Settlement Trust's governance structure and TDPs, the TCC and other certain state court counsel agreed to support the Plan that is currently before the Bankruptcy Court. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602)<br>• Relevance (Fed. R. Evid. 401) |
| 28 | The parties that presently support the Plan comprise present and future Abuse Claimants' Representatives, Debtors, the AHCLC, numerous Chartered Organizations, Debtors' prepetition non-Abuse creditors, and certain Insurance Companies. Given the number of parties involved and their | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |

*In re Boy Scouts of America and Delaware BSA, LLC*,
Case No. 20-10343 (LSS)

**Certain Insurers' Objections to Declaration of James Patton [D.I. 9395]**

| ¶ No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| | vastly divergent interests, I believe the Plan represents a monumental accomplishment. It was the result of countless hours of hard work and negotiations among the parties and their professionals, all of whom are sophisticated and passionate about achieving a fair and equitable resolution to these Chapter 11 Cases. | • Foundation: Lack of personal knowledge (Fed. R. Evid. 602)<br>• Relevance (Fed. R. Evid. 401) |
| 29 | The Plan's centerpiece is the establishment of the Settlement Trust that will assume liabilities for all Abuse Claimants, including Future Abuse Claimants. Under the Plan, the Settlement Trust will be established on the Effective Date, and it will be funded with the Settlement Trust Assets, which consist of (i) the BSA Settlement Trust Contribution; (ii) the Local Council Settlement Contribution; (iii) the Contributing Chartered Organization Settlement Contribution; (iv) the Participating Chartered Organization Settlement Contribution; (v) any and all funds, proceeds, or other consideration contributed to the Settlement Trust under the terms of any Insurance Settlement Agreement; and (vi) any income, profits, and proceeds realized, received, or derived from such assets subsequent to the transfer of such assets to the Settlement Trust. *See* Plan Art. I(A)(269) & Art. IV(A), (D). | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |
| 30 | In connection with the channeling of Abuse Claims to the Settlement Trust, Article X(F) of the Plan contemplates the issuance of the Channeling Injunction, which will enjoin all holders of present and future channeled Abuse Claims from taking any action for the purpose of directly or indirectly recovering on such Channeled Claim from the Protected Parties or Limited Protected Parties or Opt-Out Chartered Organizations, as applicable. I believe that the issuance of the Channeling Injunction under the Plan is necessary to secure the contributions by the Protected Parties to the Settlement Trust. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Relevance (Fed. R. Evid. 401) |
| 31 | The scope of the Channeling Injunction and the issue of who would be included among the Protected Parties and Limited Protected Parties were the subjects of extensive negotiations by and among the Abuse Claimants' Representatives and representatives of the entities who would ultimately become Protected Parties and Limited Protected Parties. Without the Channeling Injunction in its current form, including with respect to Participating | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |

*In re Boy Scouts of America and Delaware BSA, LLC*,
Case No. 20-10343 (LSS)

**Certain Insurers' Objections to Declaration of James Patton [D.I. 9395]**

| ¶ No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| | Chartered Organizations and Opt-Out Chartered Organizations, Settling Insurance Companies would not have entered into the Insurance Settlements. | |
| 32 | In consideration for the Channeling Injunction and related releases, Participating Chartered Organizations will make the Participating Chartered Organization Insurance Assignment (as defined in the Plan), which includes, among other things, contribution of their interests in the BSA and Local Council insurance policies with respect to coverage for Scouting- related Abuse Claims and contribution of their interests in their own insurance policies with respect to coverage for Scouting-related Abuse Claims issued by a Settling Insurance Company. Additionally, a portion of the contributions of the Settling Insurance Companies is being made on behalf of Opt-Out Chartered Organizations for the limited protections afforded to Opt-Out Chartered Organizations, including with respect to the limited Channeling Injunction for Scouting- related Abuse Claims covered by Opt-Out Chartered Organizations' own insurance policies issued by a Settling Insurance Company. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |
| 33 | The purposes of the Settlement Trust are to (i) assume all liability for the Channeled Claims (as defined in the Settlement Trust Agreement), (ii) administer the Channeled Claims and (iii) make distributions to holders of compensable Abuse Claims, in each case in accordance with the TDPs for Abuse Claims. *See* Settlement Trust Agreement § 1.2. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |
| 34 | The TDPs establish a set of procedures that the Settlement Trust will follow to review, process, and resolve the Channeled Claims. *See generally* Plan Ex. A (Trust Distribution Procedures). The TDPs are the result of a careful, iterative drafting process between and among various parties in interest, including the Debtors and Abuse Claimants' Representatives. The Debtors had originally drafted the TDPs and, as I understand, used a draft TDPs provided by Hartford, a primary insurer, as the template to formulate the Debtors' draft TDPs. I did not support the early version of the TDPs that was submitted with the prior Plans. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |
| 35 | Although the Debtors' proposed TDPs provided a foundation upon which to build, they required significant | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. |

*In re Boy Scouts of America and Delaware BSA, LLC,*
Case No. 20-10343 (LSS)

**Certain Insurers' Objections to Declaration of James Patton [D.I. 9395]**

| ¶ No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| | negotiation to create an effective trust and win claimant support, including mine. For example, the Debtors' TDPs laid a framework to evaluate claims through aggravating and mitigating factors, which was a concept the Abuse Claimants' Representatives generally supported. In this instance, the Abuse Claimants' Representatives took the language that the Debtors had already drafted and built upon it. | Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |
| 36 | But in other instances, the Abuse Claimants' Representatives proposed changes and additions. For example, the Debtors' proposed TDPs lacked certain safeguards such as auditing provisions that would maximize the Settlement's Trust's assets and protect its integrity. The Abuse Claimants' Representatives also added the concept that an Abuse Claimant's right to payment was not equivalent to any installment payments, initial payments, or payment percentages established under the TDPs or Settlement Trust Documents. And we removed a concept in which the Settlement Trustee was required to tender claims to Insurance Companies. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |
| 37 | The Abuse Claimants' Representatives and the Debtors worked through revisions such as these in a fluid process. During the revision process, the Debtors and Abuse Claimants' Representatives were often working through the TDPs and other Settlement Trust Documents together over Zoom calls. Significant input was provided by state court counsel affiliated with the Coalition and TCC who had experience litigating against the Debtors in the tort system. The Coalition's legal team functioned as a clearing house for comments from various Abuse Claimants' Representatives to the Debtors' proposed TDPs. The Settlement Trust Documents were, quite literally, living and breathing documents. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |
| 38 | The Settlement Trust Documents also were negotiated and drafted simultaneously with other critical aspects of the Plan, all of which were (and still are) interconnected. For instance, the Settlement Trust could not serve its purpose if the Channeling Injunction or releases were ineffective. Accordingly, the TDP negotiations and drafting process was undertaken concurrently with the broader Plan negotiations described in Section III(A) above. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |

**Certain Insurers' Objections to Declaration of James Patton [D.I. 9395]**

| ¶ No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| 39 | During this process, the Abuse Claimants' Representatives derived their input from other trust distribution procedures that have been developed in mass tort cases over the past several decades, including more recent precedent from diocesan sex abuse bankruptcy cases. Through extensive debates and negotiations, the parties tailored the TDPs to the facts and circumstances of these Chapter 11 Cases. This process culminated in the current version of the TDPs. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |
| 40 | Based on my involvement with the negotiating and drafting process, and for the further reasons described below, I believe the TDPs (i) are fair and equitable to Abuse Claimants; (ii) treat Future Abuse Claimants in a manner that is substantially similar to present Abuse Claimants; and (iii) accurately approximate the Debtors' historical experience in resolving Abuse Claims. I also believe that it is appropriate for the Bankruptcy Court to render findings that affirm the TDPs' propriety. My opinion is based on my own experience as the Future Claimants' Representative in these Chapter 11 Cases and others, as well as the information provided by the Debtors to all parties thus far. But the Debtors must also prove to the Bankruptcy Court that their Plan, including the TDPs, is confirmable. Absent appropriate findings from the Bankruptcy Court, as described further below, the Settlement Trust could not function properly or maximize its assets for the benefit of survivors. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602)<br>• Relevance (Fed. R. Evid. 401) |
| 41 | It is acutely important for the Settlement Trust to be in a financial position to treat all Channeled Claims in substantially the same manner. Trust distribution procedures are the primary means to achieve this objective, and they are a unique feature of mass tort bankruptcies. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |
| 42 | Unlike conventional bankruptcies, which possess much more circumscribed claims' universes (both in terms of the number of claims and their value), mass tort bankruptcies deal in uncertainty. In conventional bankruptcies not involving mass torts, the claiming and claims allowance process often has already been substantially completed prior to the trusts' existence, and conventional bankruptcies typically do not involve tens of thousands of contingent and unliquidated claims pending at confirmation. Post-confirmation trusts arising from conventional bankruptcies | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |

| ¶ No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| | also typically possess a fairly high degree of assurance regarding their asset estimates. But mass tort settlement trusts face assets and liabilities whose values are constantly in flux. Here, for example, the Settlement Trust's primary assets will be rights in unliquidated insurance policies and the Settlement Trust's primary liabilities will be over 80,000 unliquidated claims for childhood sexual abuse. Moreover, the Settlement Trust will be paying Allowed Claims on a first-in-first out basis, such that the first claims will receive payment before the Settlement Trust knows with any degree of certainty the magnitude of Abuse Claims and their values. | |
| 43 | Trusts expend their assets, which are continuously dwindling, primarily on (i) paying claimants; (ii) covering the trust's expenses associated with reviewing and liquidating claims; and (iii) further augmenting the trust's ability to pay valid claimants by liquidating otherwise illiquid trust assets, such as insurance rights or estate causes of action, through various means of recoveries. Given that mass tort settlement trusts are composed of unliquidated assets and uncertain liabilities, it is essential that a trust strike an appropriate balance between (a) prompt payment of valid claims as they are presented to the trust and (b) administering trust assets in a manner that ensures the trust remains in a position to fairly compensate claims as they are presented in the future. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |
| 44 | Settlement trustees attempt to strike this balance through various mechanisms, many of which are also present in these TDPs. Notably for my Future Abuse Claimant constituency, the TDPs and other Settlement Trust Documents provide mechanisms that will help ensure that the Settlement Trust will value and be in a financial position to pay Channeled Claims that involve similar claims in substantially the same manner. These mechanisms include structured, periodic, or supplemental payments; pro rata distributions; and periodic adjustment of the "Payment Percentage," which is a percentage applied to Allowed Abuse Claims (as defined in the TDP) and determines the amount of cash that holders of Allowed Abuse Claims receive from the Settlement Trust's available assets. Article XIV(B) of the TDPs also allows the Settlement Trustee to amend the TDPs with the consent of the STAC and FCR, | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |

*In re Boy Scouts of America and Delaware BSA, LLC*,
Case No. 20-10343 (LSS)

**Certain Insurers' Objections to Declaration of James Patton [D.I. 9395]**

| ¶ No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| | which affords the Settlement Trustee flexibility to address issues as they arise in the future.[4] *See* TDP Art. XIV(B). The Settlement Trust Agreement also permits the Settlement Trustee to establish a segregated account reserved solely for the benefit of Future Abuse Claimants.[5] *See* Settlement Trust Agreement § 3.1(c). Mechanisms such as these are critical to ensuring fair and equitable treatment for my constituency. | |
| Foot-note 4 | However, absent Bankruptcy Court or District Court approval after appropriate notice and opportunity to object, neither the Settlement Trustee nor the STAC or Future Claimants' Representative may amend the TDPs in a material manner, including (i) to provide for materially different treatment for Abuse Claims, (ii) to materially change the system for Tort Election Claimants, (iii) to add an opportunity to make an Expedited Distribution Election for a claim represented by a Chapter 11 POC after the Voting Deadline, (iv) to materially alter the Independent Review Option, or (v) in a manner that is otherwise inconsistent with the Confirmation Order or Plan. *Id.* | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |
| Foot-note 5 | Of course, if such a reserve is established, it will not otherwise modify or limit Future Abuse Claimants' rights and means of recovery. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |
| 45 | The TDPs also ensure maximum fairness and efficiency by employing objective claim eligibility criteria, clear and reliable proof requirements, and an elaborate review and evidentiary process. The criteria, requirements, and review are described further below and in the TDPs, and they regulate the Settlement Trust's three primary means of claim liquidation: (1) the Expedited Distribution; (2) the Claim Matrix Option (defined below); and (3) the Independent Review Option. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |
| 46 | The Expedited Distribution affords holders of valid Abuse Claims the ability to obtain relatively modest compensation ($3,500) while saving the Settlement Trust substantial resources. In connection with the Expedited Distribution Election, the Abuse Claimant must timely submit to the Settlement Trust a properly and substantially completed, non-duplicative Proof of Claim or Future Abuse Claim, and the Abuse Claimant must also personally sign his or her | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |

| ¶ No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| | Proof of Claim or Future Abuse Claim attesting to the truth of its contents under penalty of perjury, or supplement his or her Abuse Claim Proof of Claim to so provide such verification. *See* TDP Art. VI. | |
| 47 | I believe these safeguards to be adequate and proportional to the modest amount of compensation that Abuse Claimants will receive under the Expedited Distribution process, which will ease the Settlement Trust's administrative burden. Absent the Expedited Distribution, the Settlement Trust could incur significantly higher costs in liquidating the more than 82,000 Abuse Claims that have been filed in the Chapter 11 Cases. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602)<br>• Relevance (Fed. R. Evid. 401) |
| 48 | It is my understanding that, like other mass tort defendants, the Debtors entered into settlements with some Abuse Claimants even when the Debtors believed they possessed strong defenses. The Debtors entered into the settlements to avoid the significant costs of litigation, which are much higher than $3,500. This same rationale underlies the Settlement Trust's Expedited Distribution option, and it is critical for the Settlement Trust to be cost effective. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |
| 49 | If Abuse Claimants do not elect the Expedited Distribution, they may instead elect (i) to pursue recovery from the Settlement Trust pursuant to the TDP by submitting their Abuse Claim for allowance and potential valuation by the Settlement Trustee pursuant to the detailed requirements set forth in the TDP (the "Claim Matrix Option") or (ii) to pursue the "Independent Review Option." | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |
| 50 | The Claim Matrix Option was designed by the Debtors to mimic their abuse claim settlement and litigation efforts prior to the Chapter 11 Cases. Accordingly, the Base Matrix Values are based on the Debtors' historical abuse settlements and litigation outcomes which included releases for all BSA-related parties, including the BSA and all other putative Protected Parties to such actions. *See* Disclosure Statement Art. VII(B)(7)(b). I, along with the other Abuse Claimant Representatives, relied on the Debtors to propose truthful and accurate Base Matrix Values based on such settlements and litigation outcomes, which values are set forth in the Disclosure Statement used to solicit votes on the Plan. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |

*In re Boy Scouts of America and Delaware BSA, LLC*,
Case No. 20-10343 (LSS)

**Certain Insurers' Objections to Declaration of James Patton [D.I. 9395]**

| ¶ No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| 51 | Under the Claim Matrix Option process, Abuse Claimants will submit information regarding their claim (each, a "Trust Claim Submission") to be evaluated by the Settlement Trustee, who will have professionals assist with the review and administration of claims. In order to properly make a Trust Claim Submission, each submitting Abuse Claimant must (i) complete under oath a questionnaire to be developed by the Settlement Trustee,[6] and such signature and oath must be of the Abuse Claimant individually (or of an executor); (ii) produce all records and documents in his or her possession, custody or control related to the Abuse Claim, including all documents pertaining to all settlements, awards, or contributions already received or that are expected to be received from a Protected Party or other sources; and (iii) execute an agreement to be provided or made available by the Settlement Trust with the questionnaire (1) to produce any further records and documents in his or her possession, custody or control related to the Abuse Claim reasonably requested by the Settlement Trustee, (2) consent to and agree to cooperate in any examinations requested by the Settlement Trustee (including by healthcare professionals selected by the Settlement Trustee) (a "Trustee Interview"); and (3) consent to and agree to cooperate in a written and/or oral examination under oath if requested to do so by the Settlement Trustee. *See* TDPs at Art. VII(A). The Settlement Trustee may also obtain additional evidence from the Abuse Claimants or from other third parties including the Reorganized BSA, Local Councils, and Chartered Organizations. *Id.* | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |
| Ft. 6 | The questionnaire must be approved by the STAC and FCR, but the TDPs require the questionnaire to, at a minimum, require the Abuse Claimants to confirm his/her name, date of birth, home address, dates of abuse, frequency of abuse, and level of abuse. TDP Art. VII(A). | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |
| 52 | In valuing Abuse Claims, the Settlement Trustee is required by the terms of the Settlement Trust Documents to utilize detailed and objective criteria set forth in the TDPs. These criteria were based on the criteria that Debtors utilized in their prepetition practices of settling and/or litigating Abuse Claims. They include six "Abuse Types," which largely | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |

*In re Boy Scouts of America and Delaware BSA, LLC*,
Case No. 20-10343 (LSS)

**Certain Insurers' Objections to Declaration of James Patton [D.I. 9395]**

| ¶ No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| | mirror the five Abuse Types contained in the TDPs that the Debtors initially proposed in the Second Amended Plan. | |
| 53 | These categories of Abuse are based on the Abuse Claim's severity. Each Abuse Type receives a "Base Matrix Value," and this base value is then adjusted upwards or downwards using "Scaling Factors." *See id.* at Art. VIII. However, the values for each Abuse Type are capped at "Maximum Matrix Values." *Id.* The Abuse Types, Base Matrix Values, Maximum Matrix Values, and Scaling Factors were selected and derived based on the Debtors' prepetition experience with the intention of achieving a fair and reasonable Abuse Claim valuation range in light of the best available information, considering the settlement, verdict and/or judgments that Abuse Claimants received in the tort system against the Protected Parties absent the bankruptcy. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |
| 54 | If an Abuse Claimant disagrees with the Settlement Trustee's determination as to the allowed amount of a claim (if any) (the "<u>Allowed Claim Amount</u>"), the Abuse Claimant may seek a *de novo* determination of his or her Abuse Claim by a court of competent jurisdiction ("<u>TDP Tort Election Claim</u>"), subject to the limitations set forth in Article XII of the TDPs. *See* TDPs Art. XII(A). The Abuse Claimant must notify the Settlement Trust of his or her intention to make a TDP Tort Election Claim within thirty (30) days (the "<u>Tort Election Deadline</u>") of receiving a notice of their claim's disallowance or allowed amount, as applicable. *Id.* | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |
| 55 | Abuse Claimants may also be authorized to commence or continue a lawsuit against the Settlement Trust with the prior written approval of the Settlement Trustee (a "<u>STAC Tort Election Claim</u>" and together with a TDP Tort Election Claim, the "<u>Tort Election Claims</u>"). *See id.* at Art. XII(C). | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |
| 56 | If an Abuse Claimant is authorized to make a Tort Election Claim, the Settlement Trustee will determine whether any Non-Settling Insurance Company issued coverage that is available to respond to the lawsuit (an "<u>Insured Lawsuit</u>"). *Id.* at Art. XII(D). The Settlement Trustee will provide notice, and if applicable, seek defense, of any Insured Lawsuit to each Non- Settling Insurance Company from whom the Settlement Trustee determines insurance coverage may be available in accordance with the terms of | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |

*In re Boy Scouts of America and Delaware BSA, LLC*,
Case No. 20-10343 (LSS)

**Certain Insurers' Objections to Declaration of James Patton [D.I. 9395]**

| ¶ No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| | each applicable Insurance Policy. *Id.* All defenses (including, with respect to the Settlement Trust, all defenses that could have been asserted by the Debtors or Protected Parties, except as otherwise provided in the Plan) will be available to both sides (which may include any Non-Settling Insurance Company) at trial. *Id.* at Art. XII(F). | |
| 57 | An Abuse Claimant who pursues a Tort Election Claim will have an Allowed Claim Amount equal to zero if the litigation is dismissed. *Id.* at Art. XII(G). If the matter is litigated, the Allowed Claim Amount will be equal to the settlement or final judgment amount obtained in the tort system less any payments actually received and retained by the Abuse Claimant. *Id.* | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |
| 58 | However, the TDPs mandate that any amount of such Allowed Claim Amount for a Tort Election Claim in excess of the applicable Maximum Matrix Value will be subordinate and junior in right for distribution from the Settlement Trust to the prior payment by the Settlement Trust in full of all Direct Abuse Claims that are Allowed Abuse Claims as liquidated under the TDPs. *Id.* Moreover, with respect to STAC Tort Election Claims, fifty percent (50%) (or less if determined by the Settlement Trustee) of any amounts paid with respect to a judgment for, or a settlement of, a STAC Tort Election Claim by a Non-Settling Insurance Company, as to a policy as to which a Protected Party has assigned relevant insurance rights to the Settlement Trust, will be paid over to the Settlement Trust. *Id.* at Art. XII(C). Accordingly, even though an Abuse Claimant may successfully obtain judgment for an amount in excess of a Maximum Matrix Value, the payment they would receive from the Settlement Trust (before the non-subordinated portion of all other Direct Abuse Claims that are Allowed Abuse Claims are paid in full) is still capped. *See id.* at Art. XII(G). | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |
| 59 | During negotiations over the TDPs, certain Abuse Claimants' Representatives and state court counsel asserted that the Maximum Matrix Values were too low and did not properly compensate survivors of especially egregious Abuse. In other words, absent the bankruptcy, these survivors would reject the "settlement offer" that the Claim Matrix Option was designed to replicate, and instead would | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602)<br>• Hearsay (Fed. R. Evid. 801) |

| ¶ No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| | have sought a determination of their claim by a jury. The Debtors and Abuser Claimants' Representatives therefore determined that another option was necessary to reflect the fact that the Debtors' had and resolved especially egregious Abuse Claims at values higher than set forth in the Maximum Matrix Value, which led to the creation of the Independent Review Option. | |
| 60 | The Independent Review Option presents an opportunity for a survivor to have an independent, neutral third party (selected from a panel of retired judges with tort experience maintained by the Trust) (a "Neutral") make a determination and settlement recommendation (a "Settlement Recommendation") to the Settlement Trustee, seeking to replicate to the extent possible the amount a reasonable jury might award for the survivor's claim, taking into account the relative shares of fault that may be attributed to any parties potentially responsible for the claim under applicable law and applying the same standard of proof that would apply under applicable law. *See* TDPs at Art. XIII(A). In other words, to the extent possible, the Neutral will seek to mimic how the BSA evaluated potential jury exposure if faced with a survivor's high value claim. If accepted by the Settlement Trustee, the award (the "Independent Award") determined by the Neutral is the allowed amount of the claim against (i) the Debtors, (ii) other Protected Parties, and (iii) Chartered Organizations (that are not Protected Parties). *See id.* | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |
| 61 | The Independent Review Option affords an Abuse Claimant a chance at a higher recovery, but the claim will be subject to higher evidentiary burdens and stricter scrutiny. In connection with the Independent Review Option, Abuse Claimants are subject to a single sworn six-hour interview, mental health examination or supplemental signed and dated interrogatory responses at the discretion of the Neutral or upon the reasonable request of a Responsible Insurer (as defined in the TDP). *Id.* at Art. XIII(G)(vii). | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |
| 62 | The Insurers will also have an opportunity to participate in the Independent Review process. Among other things, the Insurers will be afforded notice of and an opportunity to participate in the dispute resolution process for claims subject to the Independent Review Process, including by | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |

*In re Boy Scouts of America and Delaware BSA, LLC*,
Case No. 20-10343 (LSS)

**Certain Insurers' Objections to Declaration of James Patton [D.I. 9395]**

| ¶ No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| | raising additional defenses to the claim or making arguments to the Neutral. *See id.* at Art. XII(K)(iii). Further, the Neutral will seek the consent of any participating insurer that may be called on to pay the award to the amount of the Independent Award prior to making their final determination. *See id.* at Art. XII(K)(iii). | |
| 63 | If the Neutral grants an Independent Award of $0 due to the statute of limitations or a finding of no liability, or because some other defense is applicable to the claim, the survivor shall receive nothing from the Trust and shall remain barred from proceeding against any Protected Party on account of their claim. *See id.* at Art. XIII(D). The Independent Award will supersede the determination of the amount of the claim as it would be valued under the TDP, whether higher or lower. *See id.* | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |
| 64 | If the Neutral grants an Independent Award less than $1 million, then the Independent Award will be paid by the Settlement Trust in accordance with the TDPs, including any applicable payment percentage. *See id.* If the Neutral grants an Independent Award of $1 million or more, then the survivor will receive (a) an allowed claim against the Settlement Trust equal to $1 million, to be paid pursuant to the TDPs and subject to any applicable payment percentage, and (b) an allowed claim against the Settlement Trust equal to the amount of the Independent Award in excess of $1 million which shall be paid solely and exclusively from a special fund created for this purpose, the Excess Award Fund. *See id.* at Art. XIII(E). Whether the Excess Award Fund has funds sufficient to pay the portion of the Independent Award in excess of $1 million is highly dependent on the preservation of the Debtors' insurance assets under the Plan. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |
| 65 | If the Settlement Trustee declines to follow the Neutral's recommendation as to the Allowed Claim Amount for an Independent Review Claim (a "Recommendation Rejection"), within forty-five (45) days after the Abuse Claimant being served notice of the Recommendation Rejection, the Abuse Claimant may commence a lawsuit in any court of competent jurisdiction against the Settlement Trust to obtain the Allowed Claim Amount. *Id.* at Art. XIII(B). If the litigation is dismissed or claim denied, the | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |

*In re Boy Scouts of America and Delaware BSA, LLC*,
Case No. 20-10343 (LSS)

**Certain Insurers' Objections to Declaration of James Patton [D.I. 9395]**

| ¶ No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| | Abuse Claimant will have an Allowed Claim Amount equal to zero. *Id.* If the matter is litigated, the Allowed Claim Amount will be equal to the settlement or final judgment amount obtained in the tort system less any payments actually received and retained by the Direct Abuse Claimant. *Id.* Notwithstanding the foregoing, any amount of an accepted Settlement Recommendation or Allowed Claim Amount for an Abuse Claim that proceeds under the Independent Review Option in excess of a multiple of five (5) times the Maximum Matrix Value in the applicable tier set forth in the Claims Matrix shall be subordinate and junior in right for distribution from the Settlement Trust to the prior payment by the Settlement Trust in full of all Direct Abuse Claims that are Allowed Abuse Claims as liquidated under the TDPs (excluding Abuse Claims liquidated as Tort Election Claims). *Id.* | |
| 66 | The exacting process required under the Independent Review Option will impose substantial burdens and costs on the Settlement Trust. Therefore, to ensure that the process is not oversubscribed by survivors whose awards are not likely to substantially exceed the awards otherwise available in their injury tier, the Independent Review Process requires the payment of $20,000 to offset the increased administrative costs, which is fully waivable by the Settlement Trustee in appropriate circumstances. *See id.* at Art. XIII(G)(ii). | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |
| 67 | In sum, the different levels of review attempt to replicate how Abuse Claims would have been resolved absent the bankruptcy while also recognizing (i) the time and resources necessary to process 80,000 claims and (ii) the reality that the Settlement Trust possesses a limited amount of funds. Each level of review provides for a certain amount of compensation, which is determined by proportionate evidentiary burdens. The Expedited Distribution, which can be analogized to an early settlement in the tort system, provides the quickest path to recovery; the Claim Matrix Option requires a more elaborate evaluation but is nevertheless more efficient and streamlined than the Independent Review Option; and the Independent Review Option offers Abuse Claimants a chance at the highest level of recovery, but it is a time- and resource-intensive exercise with the participation of various other third parties. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |

**Certain Insurers' Objections to Declaration of James Patton [D.I. 9395]**

| ¶ No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| 68 | For the reasons described above, as well as my own experience as the Future Claimants' Representative in these Chapter 11 Cases and others, I believe that the criteria and procedures included in the TDPs are appropriate and provide a fair and equitable settlement of Abuse Claims. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Relevance (Fed. R. Evid. 401) |
| 69 | Moreover, the TDPs in these Chapter 11 Cases were negotiated as part of a mediated attempt to globally resolve numerous and complex disputes among various constituencies. The Mediation, which is still ongoing, has been conducted for almost two years. It has been hard-fought, arms'-length, and contentious. Ultimately, however, it has resulted in substantial contributions to the largest sex abuse settlement trust in history from, *inter alia*, the Debtors; Local Councils; TCJC; United Methodist Entities; two of the Debtors' largest primary insurers, Hartford and Century and Chubb; and two of the Debtors' excess insurers, Zurich and Clarendon. I believe these settlements, of which the TDPs are an integral part, are fair, reasonable, and equitable to Abuse Claimants. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602)<br>• Relevance (Fed. R. Evid. 401) |
| 70 | I further believe that certain findings required in the Plan are essential to (i) ensure that Abuse Claims are treated fairly and equitably, (ii) minimize the risk that the Plan and TDPs themselves destroy the value of the insurance assets being transferred to the Settlement Trust, and (iii) prevent unnecessary depletion of Settlement Trust assets through post-confirmation re-litigation of bankruptcy issues appropriately decided by the Bankruptcy Court. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Relevance (Fed. R. Evid. 401) |
| 71 | Articles IX.A.3.x and IX.A.3.z of the Plan require findings that the Plan and TDPs are appropriate, were negotiated in good faith, and provide a fair and equitable settlement of Abuse Claims. Section 1129(a)(3) of the Bankruptcy Code requires plans to be "proposed in good faith," and Section 524(g) of the Bankruptcy Code, which guides all mass tort bankruptcies, requires courts to determine that that the channeling of claims to a trust is fair and equitable to claimants. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |
| 72 | Such findings have also appeared in the confirmation orders for many of the matters in which I have been involved over the last 30 years. I view them as particularly important in this case, as sexual abuse-based bankruptcies are relatively | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |

**Certain Insurers' Objections to Declaration of James Patton [D.I. 9395]**

| ¶ No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| | new, and the volume of Abuse Claims and complexity of liability streams in this case is unprecedented. Given this novel set of circumstances, it is especially important to me, as a fiduciary to Future Abuse Claimants, that the Plan and TDPs are fair and equitable to my constituency. In any event, the insurers have filed broad objections to the TDPs on the basis that they are unfair and inappropriate, and they have accused the Debtors and survivor groups of bad faith in negotiating them. Given that the insurers have joined the issue, it must be decided as part of confirmation. | • Foundation: Lack of personal knowledge (Fed. R. Evid. 602)<br>• Relevance (Fed. R. Evid. 401) |
| 73 | In addition, I view the findings as important because they limit the insurers' ability to misuse TDPs as a basis to escape their coverage obligations or drain trust assets by re-litigating matters more appropriately decided during confirmation. Such an outcome would be problematic in this case for several reasons. First, the Settlement Trust has limited assets to process a tremendous volume of claims. Any unnecessary litigation expenditures would reduce available recoveries to survivors. Second, the insurance assets being transferred to the Settlement Trust could potentially be worth billions of dollars. If the Plan permitted insurers to re-litigate post- confirmation—potentially many times and in many jurisdictions—the appropriateness of the values set forth in the TDPs or the processes by which the TDPs were negotiated and developed, as a predicate to denying coverage, the Debtors and survivors would no longer be able to modify those values or "re-do" the negotiation process in order to correct any purported deficiencies and preserve the value of the insurance. Any insurer concerns regarding these issues therefore must be resolved now. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602)<br>• Relevance (Fed. R. Evid. 401) |
| 74 | Article IX.A.3.y of the Plan requires a finding that the amount of a survivor's claim in this bankruptcy is not determined by the size of the asset pool available to pay the claim. This finding is consistent with my experience in other cases and the TDPs in this case, which provide that claimants' recoveries will increase if the Settlement Trust recovers additional assets. As a fiduciary to Future Abuse Claimants, I would not agree to the Plan or TDPs if they could legally limit survivors' right to payment from the Debtors to a fraction of its total value. I am not aware of any | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602)<br>• Relevance (Fed. R. Evid. 401) |

**Certain Insurers' Objections to Declaration of James Patton [D.I. 9395]**

| ¶ No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| | arguments raised by the objecting parties that this finding is legally incorrect. | |
| 75 | Article IX.A.3.w of the Plan requires a finding that the Plan, Plan Documents, and Confirmation Order are "binding on all parties in interest consistent with applicable legal doctrines, including the doctrines of *res judicata* and collateral estoppel, and section 1141 of the Bankruptcy Code (and related legal authority)." I view this finding as necessary for the reasons I already discussed. To the extent the insurers force the Settlement Trust to expend time and resources in litigating disputes, this may result in delays in distributions or a reduction in the amount of assets available to pay survivors. While I expect (based on the insurers' conduct to date in these cases) that coverage litigation very well may be necessary post-confirmation, it is important to me that the Plan include appropriate assurances that insurers cannot re-litigate matters already decided by this Bankruptcy Court, after the insurers have had ample opportunity to address them. The notion that a party could litigate a matter to conclusion, receive a determination of that issue from this Bankruptcy Court, and then assert that such a determination is not binding on them is, quite simply, non-sensical. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602)<br>• Relevance (Fed. R. Evid. 401) |
| 76 | I understand that certain insurers have objected to these findings on the basis that they purportedly require premature adjudication of coverage issues, that they somehow seek to predetermine the insurers' liability for the Abuse Claims, or that the Settlement Trustee may somehow seek to "misuse" the findings in coverage litigation. I do not agree with these arguments. It is self-evident that a "good faith" finding and a "fair and equitable" finding only establish that the TDPs are fair, equitable, and in good faith. They do not speak to the insurers' obligations to pay claims made under fair, equitable, and good faith TDPs. Similarly, the "right to payment" finding seeks a determination from this Bankruptcy Court as to the extent of the survivors' right to payment from the Debtors and Protected Parties. It does not require a finding as to the insurers' liability to pay the Abuse Claims—indeed, the finding states expressly that "nothing herein shall determine that any insurer is obligated to pay the Debtors' or another Protected Party's or a Limited Protected Party's liability so determined under the | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602)<br>• Relevance (Fed. R. Evid. 401) |

| ¶ No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| | Settlement Trust Distribution Procedures." A coverage court will decide whether and to what extent any such findings are relevant to its determinations. | |
| 77 | In sum, the findings do not predetermine coverage issues or limit the insurers' ability to raise state law-based coverage defenses, and they will advance the public policies underlying mass tort bankruptcies. Such findings are particularly appropriate here where the BSA entered bankruptcy with the express purpose "to provide equitable compensation to victims of abuse in its Scouting programs." Debtors' Informational Brief at p. 5 [Docket No. 4]. The findings will also protect the Settlement Trust's most vital assets—its rights under unliquidated insurance policies—while also preventing the unnecessary depletion of Settlement Trust assets through post-confirmation re-litigation of bankruptcy issues already and appropriately decided by the Bankruptcy Court. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |
| 79 | In the first instance, the evidence and criteria set forth in the TDPs are the principal mechanisms by which meritorious claims will be distinguished from claims lacking merit. Accordingly, it was critically important to me that the TDPs be formulated to provide for the payment of Abuse Claims based on the type of evidence that the Debtors required for payment of claims in the tort system. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |
| 80 | It was also important that the Settlement Trust Documents explicitly empowered the Settlement Trustee and Claims Administrators to police fraud. To that end, Article VII(I) of the TDPs requires "the Claims Administrators to institute auditing and other procedures to detect and prevent the allowance of Abuse Claims based on fraudulent Trust Claim Submissions. Among other things, such procedures will permit the Settlement Trustee or Claims Auditor to conduct random audits to verify supporting documentation submitted in randomly selected Trust Claim Submissions, as well as targeted audits of individual Trust Claim Submissions or groups of Trust Claim Submissions, any of which may include Settlement Trustee Interviews." | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |
| 81 | Moreover, Trust Claim Submissions must be signed under the pains and penalties of perjury and to the extent of applicable law, the submission of a fraudulent Trust Claim Submission may violate the criminal laws of the United | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37) |

*In re Boy Scouts of America and Delaware BSA, LLC*,
Case No. 20-10343 (LSS)

**Certain Insurers' Objections to Declaration of James Patton [D.I. 9395]**

| ¶ No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| | States, including the criminal provisions applicable to Bankruptcy Crimes, 18 U.S.C. § 152, and may subject those responsible to criminal prosecution in the federal courts. *See* TDP Art. VII(I). | |
| 82 | The Settlement Trustee will further be constrained by the input of the FCR post-confirmation. The Settlement Trust cannot overvalue current claims inconsistent with the strictures of the TDPs without jeopardizing the potential payment of future claims, particularly given the uncertainty as to what future insurance recoveries may be achieved. Thus, the FCR's continued involvement with the Settlement Trust will provide an additional guardrail against the payment of fraudulent or inflated claims. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Foundation: Lack of personal knowledge (Fed. R. Evid. 602) |
| 83 | Based on the foregoing, I believe that the Settlement Trust possesses strong measures to detect and prevent fraud. | • Undisclosed Non-Lay Opinions (Fed. R. Evid. 701(c); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37)<br>• Relevance (Fed. R. Evid. 401) |

*In re Boy Scouts of America and Delaware BSA, LLC*,
Case No. 20-10343 (LSS)

**Certain Insurers' Objections to Exhibits Attached to Aaron Lundberg Declaration [9396]**

| Declaration Exhibit Number | Trial Exhibit Number | Description | Certain Insurers' Objection |
|---|---|---|---|
| A | JTX 1097 | Expert Report of Aaron Lundberg, MSW | Hearsay (FRE 802) |
| A | JTX 1097 | Aaron Lundberg, MSW CV | Hearsay (FRE 802) |

*In re Boy Scouts of America and Delaware BSA, LLC,*
Case No. 20-10343 (LSS)

**Certain Insurers' Objections to Exhibits Attached to Catherine Nownes-Whitaker Declaration [D.I. 9397]**

| Declaration Exhibit Number | Trial Exhibit Number | Description | Certain Insurers' Objection |
|---|---|---|---|
| Exhibit 4 | JTX 4 | Documents from the dockets of various adversary proceedings | FRE 401: Relevance<br>FRE 602: Lack of foundation<br>FRE 802: Hearsay |
| Exhibit 5 | JTX 9-1 through JTX 9-13 | Ballots, Master Ballots and related materials submitted by voting creditors and their representatives | FRE 106: Incomplete |
| Exhibit 6 | JTX 1424 | Certain charts published by Omni regarding insurance coverage | FRE 401: Relevance<br>FRE 602: Lack of foundation<br>FRE 802: Hearsay |
| Exhibit 7 | JTX 14 | All proofs of claim submitted to Omni as the claims and noticing agent in connection with these Chapter 11 Cases | FRE 401: Relevance<br>FRE 403: Overly burdensome and cumulative evidence<br>FRE 602: Lack of foundation<br>FRE 802: Hearsay |

*In re Boy Scouts of America and Delaware BSA, LLC,*
Case No. 20-10343 (LSS)

**Certain Insurers' Objections to Declaration of Nancy Gutzler [D.I. 9398]**

| Paragraph No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| 10 | These policies would be applicable once the primary-insurance coverage was exhausted (*i.e.,* the excess policy would "attach" if the value of a claim exceeded the limits of liability available under the primary insurance policy). The vast majority of these excess policies provided per-occurrence coverage with no aggregate limit, meaning that once the primary policy's per-occurrence limit (generally $500,000) was exhausted by a claim, the excess policy attached to cover any remaining value of the claim. For policies lacking an aggregate limit or policies with an aggregate limit that does not apply to Abuse Claims, the policies can pay many times the per-occurrence limits without exhausting. | • Legal opinion outside the scope of witness expertise (Fed. R. Evid. 702) |
| 11 | Notably, just in the post-1982 period, there is approximately $3.6 billion in aggregate limits of liability available (after accounting for all settlements and prior exhaustion). | • Legal opinion outside the scope of witness expertise (Fed. R. Evid. 702) |
| 12 | Starting in 1986 and continuing through 2018, the BSA purchased primary and first-layer excess policies that have deductibles that match the policies' limits of liability, dollar for dollar. The "matching deductible" policies required the BSA pay or reimburse the deductibles before excess coverage attached to cover the remaining value of a claim to the extent it exceeded the limits of the underlying policies. I understand the BSA's position is that the primary "matching deductible" policies did not have an aggregate limit for 1986-1987 and 2009-2018, but did include an aggregate limit for 1988-2008. | • Legal opinion outside the scope of witness expertise (Fed. R. Evid. 702)<br>• Lack of foundation, if offered for the truth (Fed. R. 602) |

*In re Boy Scouts of America and Delaware BSA, LLC*,
Case No. 20-10343 (LSS)

**Certain Insurers' Objections to Declaration of Nancy Gutzler [D.I. 9398]**

| Paragraph No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| 17 | Beginning in 1971, the BSA gave Local Councils the opportunity to pay a premium such that a specific Local Council would be added as an additional insured (i.e., a party with rights to the insurance coverage) on the BSA's commercial general-liability insurance policies. That practice continued from 1971 to 1974 ….. Nonetheless, certain Local Councils opted not to be included in the BSA insurance-coverage program and continued to purchase coverage independently during this period (that insurance program is discussed below). | • Lack of foundation, if offered for the truth [Fed. R. Evid. 602) |
| 18 | Starting in 1975, all Local Councils became insureds under the BSA's insurance program . . . beginning in 1978 and continuing to the present,<br>the BSA implemented its General Liability Insurance Program ("GLIP"), whereby all Local Councils were added as named insureds under insurance policies issued to the BSA | • Lack of foundation, if offered for the truth [Fed. R. Evid. 602) |
| 19 | Starting in 1978, the BSA specifically included Chartered Organizations as insureds on its insurance policies, albeit with some variation in coverage provided by primary and excess layers | • Legal opinion outside the scope of witness expertise (Fed. R. Evid. 702)<br>• Lack of foundation, if offered for the truth (Fed. R. Evid. 602) |
| 20 | As noted above, the BSA began to include Local Councils on their insurance program beginning in 1971, with all Local Councils becoming insureds under the BSA's insurance policies in 1975 | • Lack of foundation, if offered for the truth (Fed. R. Evid. 602) |
| 21 | Likewise, New Hampshire Insurance Company ("New Hampshire") administered its Local Council insurance program through R.F Lyons Company in Santa Ana, CA ("R.F. Lyons Program"). | • Lack of foundation, if offered for the truth (Fed. R. Evid. 602) |

*In re Boy Scouts of America and Delaware BSA, LLC,*
Case No. 20-10343 (LSS)

**Certain Insurers' Objections to Declaration of Nancy Gutzler [D.I. 9398]**

| Paragraph No. | Excerpt | Certain Insurers' Objection |
|---|---|---|
| 24 | While the number of policies issued by each insurer varied, Local Councils procured insurance coverage from, among others, Travelers Insurance Companies through certain of its insurance subsidiaries (collectively, "Travelers"), Maryland Casualty Company, and CNA through certain of its insurance subsidiaries such as Continental Insurance Company (collectively "CNA Insurance Companies") | • Legal opinion outside the scope of witness expertise (Fed. R. Evid. 702)<br>• Lack of foundation, if offered for the truth (Fed. R. Evid. 602) |

*In re Boy Scouts of America and Delaware BSA, LLC,*
Case No. 20-10343 (LSS)

**Certain Insurers' Objections to Exhibits Attached to Nancy Gutzler Declaration [9398]**

| Trial Exhibit Number | Description | Certain Insurers' Objection |
|---|---|---|
| JTX 347 | Nancy Gutzler Policy Listing with Allocation Results | • Relevance (Fed. R. Evid. 401)<br>• Legal opinion outside the witness' expertise (Fed. R. Evid. 703)<br>• Hearsay if offered for the truth (Fed. R. Evid. 801)<br>• Authenticity (Fed. R. Evid. 901)<br>• Motion in Limine Ruling as to Non-Settling Insurers |
| JTX 10 | BSA and LC Insurance Policies | • Relevance (Fed. R. Evid. 401)<br>• Cumulative (Fed. R. Evid. 403)<br>• Hearsay if offered for the truth (Fed. R. Evid. 801)<br>• Authenticity (Fed. R. Evid. 901)<br>• Lack of probative value that substantially outweighs prejudicial effect (Fed. R. Evid. 703(c))<br>• Motion in Limine Ruling as to Non-Settling Insurers |
| JTX 1040 | BSA Coverage Charts | • Legal opinion outside the witness' expertise (Fed. R. Evid. 703)<br>• Relevance (Fed. R. Evid. 401)<br>• Hearsay if offered for the truth (Fed. R. Evid. 801)<br>• Authenticity (Fed. R. Evid. 901)<br>• Motion in Limine Ruling as to Non-Settling Insurers |

*In re Boy Scouts of America and Delaware BSA, LLC,*
Case No. 20-10343 (LSS)

**Certain Insurers' Objections to Exhibits Attached to Nancy Gutzler Declaration [9398]**

| Trial Exhibit Number | Description | Certain Insurers' Objection |
|---|---|---|
| JTX 1043 | Table of Policies with Prior Exhaustion Amounts | • Hearsay if offered for the truth (Fed. R. Evid. 801)<br>• Authenticity (Fed. R. Evid. 901)<br>• Motion in Limine Ruling as to Non-Settling Insurers |
| JTX 1063 | Exhaustion Report – All Policies (Excel) – As of 01.22.2021 – Riskonnect data from BSA | • Hearsay if offered for the truth (Fed. R. Evid. 801)<br>• Authenticity (Fed. R. Evid. 901)<br>• Motion in Limine Ruling as to Non-Settling Insurers |
| JTX 1044 | Prior Exhaustion (Gutzler-Opening report-Exhibit 6) | • Hearsay if offered for the truth (Fed. R. Evid. 801)<br>• Authenticity (Fed. R. Evid. 901)<br>• Motion in Limine Ruling as to Non-Settling Insurers |
| JTX 7 | Data Site Documents | • Relevance (Fed. R. Evid. 401)<br>• Cumulative (Fed. R. Evid. 403)<br>• Hearsay if offered for the truth (Fed. R. Evid. 801)<br>• Authenticity (Fed. R. Evid. 901)<br>• Lack of probative value that substantially outweighs prejudicial effect (Fed. R. Evid. 703(c))<br>• Motion in Limine Ruling as to Non-Settling Insurers |

*In re Boy Scouts of America and Delaware BSA, LLC,*
Case No. 20-10343 (LSS)

**Certain Insurers' Objections to Exhibits Attached to Nancy Gutzler Declaration [9398]**

| Trial Exhibit Number | Description | Certain Insurers' Objection |
|---|---|---|
| JTX 13-5 | Gutler Opening Materials Considered List | • Hearsay if offered for truth (Fed. R. Evid. 801)<br>• Cumulative (Fed. R. Evid. 403)<br>• Lack of probative value that substantially outweighs prejudicial effect (Fed. R. Evid. 703(c))<br>• Motion in Limine Ruling as to Non-Settling Insurers |
| JTX 1052 | Expert Report of Charles E. Bates | • Hearsay if offered for the truth (Fed. R. Evid. 801) |
| JTX 1194 | Supplemental Report of Charles E. Bates | • Hearsay if offered for the truth (Fed. R. Evid. 801) |
| JTX 1431 | Charles E. Bates Second Supplemental Expert Report | • Hearsay if offered for the truth (Fed. R. Evid. 801) |
| JTX 1058 | Bates White BSA Valuation Model (Tranche 6)) | • Hearsay if offered for the truth (Fed. R. Evid. 801) |
| JTX 1601 | Bates White BSA Trust Simulation Model (Tranche VI) | • Hearsay if offered for the truth (Fed. R. Evid. 801) |
| JTX 1602 | Bates White BSA Trust Simulation Model (Trance VI) | • Hearsay if offered for the truth (Fed. R. Evid. 801) |
| JTX 1603 | Bates White BSA Trust Simulation Model Updated (Tranche 6) | • Hearsay if offered for the truth (Fed. R. Evid. 801) |
| JTX 1045 | Policy Archeology | • Hearsay if offered for the truth (Fed. R. Evid. 801)<br>• Motion in Limine Ruling as to Non-Settling Insurers |

*In re Boy Scouts of America and Delaware BSA, LLC,*
Case No. 20-10343 (LSS)

**Certain Insurers' Objections to Exhibits Attached to Nancy Gutzler Declaration [9398]**

| Trial Exhibit Number | Description | Certain Insurers' Objection |
|---|---|---|
| JTX 1046 | BSA Local Council Insurance Archeology Guidance | • Hearsay if offered for the truth (Fed. R. Evid. 801)<br>• Motion in Limine Ruling as to Non-Settling Insurers |
| JTX 1047 | Policy Allocation Assumptions | • Hearsay if offered for the truth (Fed. R. Evid. 801)<br>• Motion in Limine Ruling as to Non-Settling Insurers |
| JTX 1050 | Claim Allocation Examples | • Hearsay if offered for the truth (Fed. R. Evid. 801)<br>• Motion in Limine Ruling as to Non-Settling Insurers |
| JTX 1186 | Policy Listing with Allocation Results | • Hearsay if offered for the truth (Fed. R. Evid. 801)<br>• Authenticity/Foundation (Fed. R. Evid. 901; 1002)<br>• Motion in Limine Ruling as to Non-Settling Insurers |
| JTX 1118 | Updated Expert Report of Brian Whittman | • Hearsay if offered for the truth (Fed. R. Evid. 801) |