# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Re: D.I. 9310, 9313** |

## DEBTORS' SUPPLEMENTAL RESPONSE TO OBJECTION OF THE ROMAN CATHOLIC AD HOC COMMITTEE TO THE DECLARATION OF BRIAN WHITTMAN

Boy Scouts of America (the "**BSA**") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession (together, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby file this supplemental response (the "**Supplemental Response**") to the *Objection of the Roman Catholic Ad Hoc Committee to the Declaration of Brian Whittman* [D.I. 9310] (the "**Objection**") filed by the Roman Catholic Ad Hoc Committee (the "**RCAHC**"),[2] which was joined by the Official Committee of Unsecured Creditors appointed in In re: Archbishop of Agaña, a Corporation Sole (Bankr. D. Guam 19-00010) (the "**Guam Committee**") and the tort claimants represented by Lujan & Wolff LLP (the "**Lujan Claimants**" and, together with the Guam Committee, the "**Guam Joiners**").[3] In support of the Supplemental Response, the Debtors state as follows:

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] The RCAHC has since withdrawn its objection as reflected in Exhibit A to the Twelfth Mediator's Report, dated March 17, 2022 [D.I. 9386-1] (the "**RCAHC Term Sheet**") and the Notice of Withdrawal [D.I. 9422]. *See* RCAHC Term Sheet ¶ 3(d); Notice of Withdrawal, No. 6.

[3] The Supplemental Response supplements the response previously filed by the Debtors regarding the Objection [D.I. 9315] (the "**Response**") and incorporates the arguments in the Response by reference. Capitalized terms

**RESPONSE**

**I.     Background**

On March 13, 2022, the RCAHC objected to 11 paragraphs in the *Declaration of Brian Whittman in Support of Confirmation of the Third Modified Fifth Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 9280] (hereafter the "**Declaration**") – namely, paragraphs 106, 107, 130, 132, 134, 135, 169, 170, 183, 184, and 238.[4] Paragraphs 106, 134, 169, and 183 are similarly structured and concern the Hartford Insurance Settlement, the Century and the Chubb Companies Settlement, the Zurich Insurance Settlement, and the Clarendon Insurance Settlement, respectively. These paragraphs state "I do not believe" that Hartford, Century and the Chubb Companies, the Zurich Insurers and the Zurich Affiliated Insurers, and Clarendon, respectively, "would be willing to agree to the terms set forth" in their respective settlement agreements absent "the releases and injunctions provided in the Plan." Paragraphs 107, 135, 170, and 184 are also similarly structured.[5] They explain that the releases under these settlements are important from a "go-forward business standpoint" and "essential to obtain the significant contributions" being provided by these insurers. Paragraphs 130 and 132 relate to the reasonableness of the Century and Chubb Companies Insurance Settlement and discuss a presentation from KCIC concerning Century's financial position that was entered into evidence,

---

   used but not defined herein have the meanings ascribed to them in the Response or the *Declaration of Brian Whittman in Support of Confirmation of the Third Modified Fifth Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 9280] (the "**Declaration**"), as applicable.

[4]   On March 14, 2022, the RCAHC notified the Debtors that it would be narrowing its objections to the paragraphs listed above. *See* Email from Jeremy Ryan to Lora Johnson and Cacia Batts, Mar. 14, 2022, which is attached as Ex. 1 to the Declaration of Andrew Hammond filed contemporaneously with this Supplemental Response (the "**Hammond Declaration**"). On March 15, 2022, the Court acknowledged that the RCAHC Objection had been narrowed to these paragraphs. *See* Mar. 15, 2022 Hr'g Tr. at 48:22-49:3.

[5]   For ease of reference, paragraphs 106, 107, 134, 135, 169, 170, 183, and 184 are collectively referred to as the "**Release Paragraphs**."

namely, JTX 975.  Lastly, paragraph 238 is part of the opinions expressed in Mr. Whittman's Updated Expert Report[6] and discusses the impact that litigation against the Local Councils would have on the Reorganized BSA.

Also on March 13, 2022, the Lujan Claimants filed *Lujan Claimants Joinder in Objections of Roman Catholic Ad Hoc Committee and Guam Committee to Declaration of Brian Whittman* [D.I. 9313] (the "**Lujan Joinder**").  Later, after the time to file objections in accordance with the Final Pretrial Order [D.I. 9285] had expired, on March 15, 2022, the Guam Committee stated on the record that it was joining in the arguments set forth in the Objection.  *See* Mar. 15, 2022 Hr'g Tr. at 27:8-31:18.[7]  The Debtors filed the Response to the Objection on March 14, 2022.

Since filing the Objection, the Debtors, the RCAHC and its individual members, the Tort Claimants' Committee, the Future Claimants' Representative, the Coalition of Abused Scouts for Justice, the Ad Hoc Committee of Local Councils, and the Settling Insurance Companies reached a settlement resolving the objections raised by the RCAHC to the Whittman Declaration.  The terms of this settlement are set forth in the RCAHC Term Sheet, JTX 2959, [D.I. 9387][8].  As part of this settlement, the RCAHC agreed to "withdraw all objections to any declarations filed in connection with confirmation of the Plan, including with respect to the objection to the Declaration

---

[6] JTX-1118 at 76-77.

[7] On March 13, 2022, the Guam Committee separately moved to exclude certain paragraphs of the Declaration in the *Limited Objection Of The Official Committee Of Unsecured Creditors For The Archbishop Of Agaña (Bankr. D. Guam 19-00010) To The Declaration Of Brian Whittman In Support Of Confirmation Of The Third Modified Fifth Amended Plan Of Reorganization For Boy Scouts Of America And Delaware BSA, LLC* [D.I. 9312] (the "**Guam Objection**"), and the Lujan Claimants joined this objection in the Lujan Joinder.  The next day, the Debtors filed a response to the Guam Objection [D.I. 9318].  The basis for the Guam Objection was that the paragraphs at issue constituted improper expert testimony.  However, the Guam Committee subsequently acknowledged on the record that Mr. Whittman is not testifying as an expert witness with respect to these paragraphs.  *See* Mar. 15, 2022 Hr'g Tr. at 27:19-23, 33:5-12.  Accordingly, the grounds identified in the Guam Objection fail to identify any legal basis on which to exclude Mr. Whittman's testimony.  For ease of reference, the Guam Committee and the Lujan Claimants are collectively referred to herein as the "Guam Joiners."

[8] JTX 2959 has been included in the revised Joint Trial Exhibit List and shared with the Participating Parties.

of Mr. Brian Whittman [D.I. 9310]." RCAHC Term Sheet ¶ 3(d). Accordingly, on March 21, 2022, the RCAHC withdrew its Objection. *See* Notice of Withdrawal [D.I. 9422], No. 6.

On March 19, 2022, the Debtors' counsel emailed counsel for the Lujan Claimants and counsel for the Guam Committee in light of the RCAHC's withdrawal of their objection to inquire whether they were continuing to press their joinder to the RCAHC Objection. *See* Email from Andrew Hammond to Delia S. Wolff and Christopher Loizades, dated March 19, 2022, attached as Ex. 2 to the Hammond Declaration; Email from Andrew Hammond to Adam Hiller, Robert Kugler, Ed Caldie, and Christina Arnone, dated March 19, 2022, attached as Ex. 3 to the Hammond Declaration. The Guam Joiners have not yet advised whether they intend to withdraw their joinders to the Objection.

**II.    The Guam Joiners Have No Grounds to Press the Objections Set Forth in the Objection**

"The exclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." *Quinn v. Consol. Freightways Corp. of Delaware*, 283 F.3d 572, 576 (3d Cir. 2002) (reversing district court decision precluding witness testimony); *Inline Connection Corp. v. AOL Time Warner, Inc*. 470 F. Supp. 2d 435, 441-42 (D. Del. 2007) ("The court, in adherence to the standards of Third Circuit, will only exclude critical evidence as an 'extreme sanction.' There is no evidence of willful deception or flagrant disregard of a court order."). None of the arguments asserted by the Guam Joiners justifies the extreme sanction of precluding Mr. Whittman's testimony.

As an initial matter, the RCAHC's Objection rested primarily on the argument that the Debtors failed to provide discovery to the RCAHC. *See, e.g.*, Objection ¶ 4. However, the RCAHC has now withdrawn the Objection. Accordingly, there is nothing for the Guam Joiners to

4

join. Accordingly, the Guam Joiners attempt to join the now-withdrawn Objection should be summarily denied.

Unlike the RCAHC, the Guam Joiners have not even attempted to identify any discovery they were precluded from obtaining that concerns the subject matter they seek to exclude from the Whittman Declaration. Indeed, neither of the Guam Joiners have identified any Requests for Production or deposition notices seeking information on the Hartford Settlement, the Century Settlement, the Zurich Settlement, the Clarendon Settlement, or other information that is challenged in the Declaration. And, the Guam Committee did not serve any discovery requests whatsoever in these Chapter 11 Cases. It is axiomatic that in order to raise a sword/shield argument, the objector must first have been precluded from obtaining the information at issue. To allow a party to raise a sword/shield argument based on discovery that a third party was purportedly precluded from obtaining would plainly violate the rule that a "litigant must assert his own legal rights and interests, and not the legal rights and interests of third parties." *Scott by Tribble v. Snider*, No. CIV. A. 91-7080, 1994 WL 396475, at *1 (E.D. Pa. July 21, 1994). As neither of the Guam Joiners have shown that they sought the information at issue in the first place, they have no grounds to object to the introduction of the testimony contained in the Whittman Declaration.

### III.    The Objection Should Be Overruled Because It Lacks Specificity

In making the Objection, the RCAHC asserted that certain paragraphs in the Whittman Declaration should be excluded because the RCAHC was "shield[ed]" from discovery on the topics discussed in these paragraphs in the depositions of Messrs. Azer and Desai. *See* Objection ¶ 4. But the RCAHC failed to cite any portions of the Desai or Azer deposition transcripts where discovery was purportedly shielded on the subject matter at issue in the Whittman Declaration, or otherwise identify any information that was in fact shielded from discovery. *See, e.g.*, *id.* ¶ 1. Nor

do the Guam Joiners provide any additional specificity in this respect. This type of barebones, conclusory argument cannot justify the exclusion of the Release Paragraphs or the other paragraphs discussed above. *See Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013) ("The movant bears the burden of demonstrating that the evidence is inadmissible on any relevant ground, and the court may deny a motion *in limine* when it lacks the necessary specificity with respect to the evidence to be excluded."). The Objection should be overruled on this ground alone.

### IV. The Objection Otherwise Fails on the Merits

Even if the Guam Joiners could clear these procedural hurdles, the Objection should be overruled on the merits as there have been no grounds identified that would justify the exclusion of the evidence in Mr. Whittman's Declaration.

*1. The Guam Joiners' Legal Conclusion and Business Judgment Arguments Fail*

As noted above, the Objection sought to exclude the Release Paragraphs. As explained at the hearing on March 15, 2022, there is no basis to exclude these paragraphs on the basis that they contain legal conclusions. As the Court recognized, paragraphs 106 and 107 do not contain any legal conclusions, *see* Mar. 15, 2022 Hr'g Tr. at 19:10-11 (the Court agreeing with the Debtors that these paragraphs do not contain legal conclusions, stating "I agree this isn't interpreting legal documents"), and the same is true with respect to the other Release Paragraphs.

Nor is there a basis to exclude the Release Paragraphs on the basis that the Debtors' 30(b)(6) witnesses refused to answer questions within the scope of the noticed topics. Mr. Desai, who was the Debtors' Rule 30(b)(6) witness on its business judgment, answered the questions he was asked on business judgment. The Guam Joiners did not seek, and were not precluded from, obtaining discovery relating to the Debtors' exercise of its business judgment at Mr. Desai's deposition that would support the exclusion of Mr. Whittman's declaration

testimony. *See* Exhibit A. And, as discussed at length in the Response, the Objection fails to identify a single privilege instruction given to Mr. Desai that is improper.[9] *See* Response at 2-7.

Second, as noted above, the Release Paragraphs that the Guam Joiners are seeking to exclude concern Mr. Whittman's knowledge that the releases provided in the various settlements are essential to the Debtors' restructuring efforts. They do not relate to the Debtors' business judgment. Nor does the cited testimony reflect that Mr. Desai was instructed not to answer questions concerning the reasonableness of the Century and the Chubb Companies Insurance Settlement (paragraphs 130 and 132) or the impact that litigation against the Local Councils would have on the Reorganized BSA (paragraph 238). Accordingly, to the extent that the Guam Joiners' rely on purported instructions given at the Desai deposition, such reliance is misplaced and their objection on such grounds should be overruled.

With respect to Mr. Azer's testimony concerning the BSA's "understanding" of certain provisions, (Obj. ¶ 1) such testimony has no relation to the testimony contained in Mr. Whittman's Declaration.[10] The Release Paragraphs are unrelated to the subject matter of Mr. Azer's testimony. Nor do the other paragraphs of the Declaration that are challenged in the Objection. As Mr. Azer's deposition testimony is unrelated to the subject matter of Mr. Whittman's Declaration, and the

---

[9] Although the Objection did not contain any specific testimony that supported its position, the RCAHC referenced pages 21 through 24, 34, 52, 63, 64, and 71 through 73 of Mr. Desai's March 9, 2022 deposition during oral argument. *See* Mar. 15, 2022 Hr'g Tr. at 38:10-40:14. As set forth above, the cited passages do not relate to Mr. Whittman's testimony and therefore do not provide a basis for excluding such testimony.

[10] Mr. Azer was designated as the Debtors' Rule 30(b)(6) representative for the following topics: (1) the treatment of claims of chartered organizations under the plan and trust distribution procedures; (2) the proposed mechanism for effectuating the "waiver" by "prior written consent" contemplated under the Plan; (3) the universe of "among others" beyond the "Settling Insurance Companies" under the Plan; (4) the reasons for including Article IX, A.4 in the Plan; (5) the reasons for removing clause (iii) in the finding in Article IX, A.3.j in the Plan; (6) the Debtors' belief of which insurance policies purchased by the Debtors from 1976 through 2020 and issued by a settling insurer do satisfy Article X.F.3; and (7) the Debtors' understanding of the Century, Hartford, Clarendon, and Zurich settlement agreements and term sheets, and the Debtors' understanding of the TDPs. Mar. 11, 2022 Azer Deposition Tr. at 237:7-240:3, attached as Ex. 4 to the Hammond Declaration.

Guam Joiners have not identified any subject matter raised in the Azer deposition that relates to the testimony that the RCAHC seeks to exclude.

Second, contrary to the RCAHC's contention that every single question asked of Mr. Azer during the deposition was "met with an objection and instruction not to answer," Mr. Azer provided over 60 pages of answers to the RCAHC's proper questions, and over 200 pages of answers to the Certain Insurers' proper questions,[11] as discussed at length in the *Debtors Response to Objection of the Certain Insurers to the Declaration of Adrian Azer*, D.I. 9348. Accordingly, no one has pointed to an instruction issued in the Azer deposition that prevented any objector from obtaining discovery regarding the subject matter of the testimony in Mr. Whittman's Declaration.

### 2. *The Guam Joiners' Mediation Privilege Arguments Fail*

The Guam Joiners also seek to exclude Mr. Whittman's testimony based on the Debtors' assertion of mediation privilege, presumably on the grounds that the testimony "contains views expressed or suggestions made by a party with respect to a possible settlement of the dispute." Objection ¶ 3. But the paragraphs that are challenged in the Whittman Declaration do not rely on any attorney-client or mediation-privileged information. Indeed, none of the statements in the Whittman Declaration reveal a view expressed by a party with respect to a possible settlement of the dispute raised during the mediation. Rather, they rely on non-privileged information that has

---

[11] For example, when discussing the TDPs, Mr. Azer was asked what it "means for a responsible insurer to be given a reasonable opportunity to participate in the independent review." *Id*. at 112:13-17. Mr. Azer provided a robust answer:

> I mean, we obviously wanted it -- we had negotiations to make sure that the insurers were involved and intimately involved in all aspects of the process. So, that broad language was meant to provide for that. This neutral can – obviously has some discretion, but we wanted to build in that there is an ability to -- for the responsible insurer to participate, consistent with how excess insurers would typically participate on a pre-petition basis.

*Id.* at 112:18-113:4.

8

nothing to do with attorney-client advice or the mediations held in this case. The fact that Mr. Whittman relies on non-privileged information does not put mediation discussions which may theoretically have touched on the same subject matter at issue. *See, e.g.*, *Aiossa v. Bank of Am., N.A.*, CV 10-01275 (JS) (ETB) 2011 U.S. Dist. LEXIS 102207, at *14 (E.D.N.Y. Sept. 12, 2011) ("'At issue' waiver is concerned with the selective disclosure of privileged material, not the disclosure of non-privileged material and redaction or withholding of privileged material."); *United States v. Chevron Corp.*, No. C-94-1885 SBA 1996 U.S. Dist. LEXIS 4154, at *12 (N.D. Cal. Mar. 12, 1996) (finding that the defendant did not "waive[] the privilege simply by disclosing non-privileged documents which are related to the same subject matter as the controverted documents."). As these paragraphs have not put any privileged information at issue, there is no basis to exclude these paragraphs on sword-and-shield grounds.

Moreover, in analogous circumstances, courts routinely allow evidence demonstrating the simple fact that a party sought and received the advice of counsel when negotiating and evaluating settlements, without putting the advice at issue. *See In re Residential Capital, LLC*, 491 B.R. 63, 72 (Bankr. S.D.N.Y. 2013) ("The attorney-client privilege is not waived if the Debtors argued that they sought the advice of counsel, among other actions, in an effort to reasonably educate themselves as to the merits of the settlement"). The same standard should apply to the fact that a settlement was reached in mediation.

Further, no party disputes that Mr. Whittman can provide testimony based on knowledge that was gained outside the scope of the mediation. *See, e.g., In re Niaspan Antitrust Litig.*, No. 13-MD-2460, 2018 U.S. Dist. LEXIS 87150, at *5 (E.D. Pa. May 23, 2018) (rejecting plaintiffs' "sword" and "shield" argument where plaintiffs failed to show that the testimony in question implicated attorney advice). As set forth below, Mr. Whittman can offer testimony to the extent

it is based on his own percipient observations based on his interactions with the parties outside of mediation as the Debtors' lead financial advisor.

Mr. Whittman's knowledge of the subject matter has been informed by his active participation and involvement in the case as the Debtors' lead financial advisor, and numerous interactions and statements made by various parties outside the mediation.[12] For instance, the Restructuring Support Agreement [D.I. 5466-2] (the "**RSA**") required the parties to "work in good faith to develop a protocol for addressing participation by Chartered Organizations in the benefits of the Channeling Injunction."[13] In its objection to the RSA, Century emphasized that it viewed the RSA as illusory as it did not provide for a full release and that absent such releases reorganization was impossible.[14]

In addition, both prior to and following the relevant settlements, insurance counsel emphasized the need for full releases during court hearings outside the context of mediation:

- **Century Counsel**: "[U]nless they get these charters out, the plan is not feasible. I mean out of the case in their entirety." JTX 2752, Sept. 21, 2021 Hr'g Tr. at 33:23-25, attached as Ex. 6 to the Hammond Declaration.

- **Century Counsel**: "And by the way, it also just creates, you know, a complete inability to resolve the case if nobody can be given a release here because all the claims can re-morph themselves back through, you know, the charters coming in because you understand like what fundamentally is happening here is, for each and every claim, you know, the assertion is that somehow, you know, all three of them are involved in the claim." JTX 1-494, Sept. 22, 2021 Hr'g Tr. at 15:7-13, attached as Ex. 7 to the Hammond Declaration.

---

[12] *See, e.g.,* Jan. 27, 2022 Whittman Deposition Tr. at 16:15-17:2 ("I would note that I've been the debtors' restructuring advisor since August of 2019 and, accordingly, have seen and reviewed thousands of documents in that capacity, the majority of which are located in a data room that's available to the constituents in the case, so my knowledge of the debtors is informed by all of those documents . . . .").

[13] JTX 1-159 [D.I. 5466-2], RSA Term Sheet at 15-16.

[14] *See* JTX-1-185 [D.I. 5707 (Sealed Version), D.I. 5723 (Redacted Version)] at 2, 16-19 ("By leaving the Chartered Organizations and Insurers out of any settlement . . . the underlying Amended Plan will lead to years of litigation at best, and more likely, the liquidation of the Debtors.").

- **Century Counsel**: "So that if the -- it's one of the reasons, Judge, in connection with the RSA you got extensive briefing from us all about how the RSA was like essentially delivering illusory relief.  So the Boy Scouts -- so you have a claim where a charter is involved, the local council is involved, and the Boy Scouts.  And the -- you know, if you only release one of them and not the other two, the whole claim gets re-pled into one or the other of them here." JTX 1-494, Sept. 22, 2021 Hr'g Tr. at 15:14-21.

- **Century Counsel:**  "*So it's an essential provision of the whole plan that needs to be addressed and needs to be more robustly described.*  And this element that's missing entirely, the suggestion that this is really driven by, you know, what the coverage program is, is completely inconsistent with everything we've heard up until, you know, this hearing." JTX 1-494, Sept. 22, 2021 Hr'g Tr. at 15:22-16:2 (emphasis added).

- **Century Counsel:**  "The notion of a Boy Scouts-only restructuring is just a shorthand for liquidation.  There's no way -- just read Mr. Ryan's expert report that he put in for the Methodists and sort of being the fundamental, you know, real brains behind the settlement that we got done here, it's essential.  And that shows up in the original local council settlement conditions their payment on a satisfactory resolution of the charter issue." JTX 1-509, Dec. 21, 2021 Hr'g Tr. at 86:1-8, attached as Ex. 8 to the Hammond Declaration.

- **Century Counsel:**  "The Hartford settlement has a most-favored-nation clause, but it was also conditioned on a satisfactory resolution of the charter issue.  *And, for us, it was essential.  There's no way people are going to make a payment only to be sued all over again.*  Your Honor had extensive briefing from us in connection with the RSA about illusory nature of releases.  *Having that was key.*  And Mr. Ryan worked with us on that to get us that release in connection with the Methodists." JTX 1-509, Dec. 21, 2021 Hr'g Tr. at 86:9-17 (emphases added).

- **Century Counsel**:  "There is no bankruptcy; *this is absolutely integral to the whole bankruptcy getting this -- getting the charters released.*" JTX 1-509, Dec. 21, 2021 Hr'g Tr. at 88:10-12 (emphasis added).

Counsel for other insurers, including Hartford and AIG, have also made clear during court hearings that full releases are critical:

- **AIG Counsel (Mr. Rosenthal)**:  "I also believe, Your Honor, that we should be discussing an additional disclosure, which is -- my client, for example, if we were to settle, if we were to decide to settle, we would want -- as Mr. Schiavoni said, *we would want a full and complete release of all of our BSA-related obligations, which might predate 1976.* . . . [T]here should be some kind of disclosure, so that we wouldn't have to resolicit for that reason; *some kind of disclosure that some of the insurers may, in fact, want or demand in any settlement, a full release of their chartered organization exposure related to BSA, which is, as Mr. Schiavoni said, what Hartford has also requested.*" JTX 1-494, Sept. 22, 2021 Hr'g Tr. at 18:19-19:6 (emphases added).

11

- **Hartford Counsel (Mr. Anker):** "But the basic proposition that *there was going to have to be peace with insurance -- with chartered organizations or some carve-out for one or two, before insurance companies were going to pay hundreds of millions of dollars is both, common sense and is something that has always been part of this plan.*" JTX 1-509, Dec. 21, 2021 Hr'g Tr. at 73:10-14 (emphasis added).

- **Hartford Counsel (Mr. Anker):** "*Does anyone really think that anyone that the local councils, the insurance companies are going to pay hundreds of hundreds of millions of dollars*, a pot of money that is now approaching $3 billion, *without obtaining complete peace of claims relating to Scouting* -- not relating -- unrelated to Scouting, but relating to Scouting? Of course not. That's not the real world. *The real world is, one way or the other, that protection has to be there*." JTX 1-509, Dec. 21, 2021 Hr'g Tr. at 74:1-9 (emphasis added).

- **Hartford Counsel (Mr. Anker):** "But *the basic notion that local councils were not going to spend 600-plus-million dollars and insurers weren't going to spend hundreds upon hundreds of millions or more, only to be sued,* continue to be sued with respect to Scouting, by all the same claimants*, that was -- has been on the table from day one and common sense would tell you that has to be the case.* There is no Boy Scout-alone plan here that makes sense and that is something that's been a reality from day one." JTX 1-509, Dec. 21, 2021 Hr'g Tr. at 75:4-12 (emphasis added).

These statements – made outside the context of mediation – all make clear that the releases were critical for the insurers and that, absent releases, insurance settlements were unlikely.

Mr. Whittman's testimony is also based on his observations gained from the terms contained in the Hartford Insurance Settlement (JTX 1-02) and the Century and the Chubb Companies Insurance Settlement (JTX 1-307). The term sheets which lead to these settlements contain releases indicating that it was essential to the Settling Insurers to be granted a full release to provide funding for the Plan. For instance, the Hartford term sheet lays out releases for Hartford in section (vii), and then states in section (viii) that "[u]nder the Plan, the Debtors, the Coalition, the FCR and the Trust shall secure an assignment to the Trust of, or otherwise resolve to the Parties' satisfaction, Chartered Organizations' rights or claims to coverage under Abuse Insurance Policies issued by Hartford. The Debtors, the Coalition and the FCR shall use their best efforts to

settle with the Chartered Organizations."[15]  This open issue with respect to Chartered Organizations was initially addressed in paragraphs 9-13 of the Century term sheet,[16] which addressed, among other things, the treatment of Participating Chartered Organizations and Opt-Out Chartered Organizations.

Further, Mr. Whittman's testimony is rationally based on Mr. Whittman's experience as a financial advisor concerning what parties would demand in connection with resolving these complex disputes.  *United States v. Shabazz*, 564 F.3d 280, 287 (3d Cir. 2009) (citing 3 Christopher B. Mueller and Laird C. Kirkpatrick, Federal Evidence § 7:1 (3d ed. 2007), at 747 ( "All testimony necessarily reflects not only facts that the witness saw, but also opinions or inferences in the form of recollection, evaluation, and thoughts about what he saw.")).  Given his role in the case, Mr. Whittman is competent to testify as to his observations as the Debtors' lead financial advisor that Hartford and Century and the Chubb Companies would not pay $787 million and $800 million, respectively, without obtaining a full release; and that other insurers would insist on receiving comparable treatment in their own settlements.  Such observations are consistent with the provisions of the Hartford Term Sheet which provides that "[i]f another Settling Insurer receives broader releases of Causes of Action and claims under its Abuse Insurance Policies than those provided to Hartford in the Agreement or Amended Plan, then Hartford shall receive the benefits of those broader releases."[17]

Mr. Whittman's testimony is also consistent with the outcome of negotiations.  There can be no doubt that the economic interests of the Coalition and the FCR were opposed to granting the

---

[15]   JTX 1-02 at 3-4.

[16]   JTX 1-307.

[17]   JTX 1-02, at (vii); *see also* Century Term Sheet, JTX 1-307, ¶ 9.

releases contained in these term sheets. As such, the rational perception of Mr. Whittman was that these parties would not have agreed to the releases sought by the insurers unless they were necessary. All of this is consistent with, and underlies, Mr. Whittman's perception that the insurers would not be willing to make the payments contemplated in the settlements absent a full release.

Finally, after objecting to Mr. Whittman's declaration testimony on these topics, the Guam Committee itself opened the door on these topics during Mr. Sugden's re-cross on March 18, 2022:

> Q. Mr. Sugden, do you have personal knowledge of your conclusion that the settling insurance companies would not have made the contribution that they are making under the plan in the absence of the releases and injunctions?
>
> A. Yes, I do.
>
> Q. What's the basis of your personal knowledge?
>
> A. Statements from their counsel, among others, made to me.

Mar. 18, 2022 Hr'g Tr. at 247:8-17. Having opened the door, they should not be heard to complain now. *See United States v. Lum*, 466 F. Supp. 328, 334 (D. Del. 1979) ("In general, when a party opens up a subject, he cannot object if the opposing party introduces evidence on the same subject.").

It should also be noted that, to the extent any parties had concerns with the basis for Mr. Whittman's testimony, they could have explored that issue on cross-examination. Instead, the parties declined to cross-examine Mr. Whittman on this matter.[18]

   3. *The Court Should Overrule the Objections as to Paragraphs 130 and 132*

The Objection failed to identify any basis to exclude paragraphs 130 and 132 of Mr. Whittman's declaration. As noted above, in paragraph 130 of the Declaration, Mr. Whittman

---

[18] If the Court has any issues with the foundational aspects of Mr. Whittman's testimony, which was not the stated basis for the Objection, the Debtors' reserve the right to recall Mr. Whittman to address such issues.

explains that the NEC was presented with certain information concerning the financial wherewithal of Century in determining the reasonableness of the Century and the Chubb Companies Insurance Settlement, including the fact that Century is in run-off and has a statutory surplus of only $25 million.[19] Mr. Whittman then cites JTX 975, a presentation from KCIC to the NEC that contains this very information. *See* JTX 975 at 7 (stating that Century "[a]llocated all run-off operations of 'old' INA" and that "Century surplus = $25 million"). Then, in paragraph 132, Mr. Whittman states that he believes "the amount of the Century and the Chubb Companies Insurance Settlement Contribution is reasonable based on the information provided by KCIC."

The Debtors produced the KCIC presentation, including the information relied on by Mr. Whittman, and such information has been admitted into evidence. In addition, the Guam Joiners did not seek a deposition of the Debtors regarding the Century Settlement so they cannot show that they were shielded from obtaining any such information. Indeed, the Guam Joiners did not ask Mr. Whittman (or any other witness) deposition questions about this presentation or the underlying subject matter of the Century Settlement, nor could they show that the Debtors instructed Mr. Whittman (or any other witness) not to answer such questions. Nor have the Guam Joiners identified any information concerning this subject matter that they were precluded from obtaining. Accordingly, there is no basis to argue that the Guam Joiners were prevented from exploring the subject matter addressed in paragraphs 130 and 132 of the Whittman Declaration. *See Pellegrino v. Wengert*, No. 15-CV-60535, 2016 WL 3690047, at *6 (S.D. Fla. July 12, 2016) (rejecting the plaintiffs' argument that they were "prejudice[d]" by a defendant's invocation of privilege during

---

[19] This information included the Century's 2020 annual statement (JTX 356) and the September 2021 quarterly statement (JTX 867) which show Century's financial status as a run-off company. In addition to these financials, Century produced nearly ten years of financial information for Century, which reflects Century's financial status as a run-off company.

15

his deposition because "[p]laintiffs have not pointed to specific discovery that they were unable to obtain" and "[p]laintiffs were free to, but did not, seek discovery" from other parties on the matter at issue).[20] As such, the Guam Joiners objection to paragraphs 130 and 132 of the Declaration should be overruled.

### 4. The Court Should Admit Paragraph 238

The Objection also sought to exclude the testimony in paragraph 238 of the Whittman Declaration which states:

> I understand that most lawsuits filed prepetition named both the BSA and a Local Council and similarly, as reflected in Ex. F to the Disclosure Statement, the majority of the Proofs of Claim also name a Local Council in addition to the BSA. If the Local Councils do not receive a release in connection with the Plan, Reorganized BSA would likely be impacted as plaintiffs would continue to pursue claims against Local Councils, which would drain the resources of the Local Councils and distract them from fulfilling their role in Scouting as described above. In addition, it is likely that a number of Local Councils would file for chapter 11 protection. The ongoing litigation would also continue to tarnish the BSA's brand image, impairing the BSA's ability to raise funds. Such litigation would likely take years to conclude and would result in additional delays in compensating survivors as compared to the global resolution provided by the Plan.

Mr. Whitman's testimony in paragraph 238 is based on opinions proffered in his Updated Expert Report. *See e.g.,* Whittman Updated Expert Report, at 76, 79 (JTX 1118). Mr. Whittman was questioned extensively on his expert reports in his January 20, and January 27, 2022 depositions. While the Guam Joiners had ample opportunity to question Mr. Whittman regarding this topic during any of the six depositions that he provided in this case, the Guam Joiners did not seek to question Mr. Whittman regarding his opinions. As the time for filing *Daubert* motions expired long before the Objection was filed, the Guam Joiners belated effort to exclude opinions expressed in Mr. Whittman's report is without basis. *See, e.g.,* Scheduling Order [D.I. 7996] at 2 (providing

---

[20] In addition, the testimony in paragraphs 130 and 132 is based on a document that has already been admitted into evidence, namely, JTX 975. To the extent the RCAHC or anyone else had an objection concerning the basis for this testimony, it is now waived. *See Christine v. Davis,* 600 F. App'x 47, 50 (3d Cir. 2015) ("[A]s Christine did not make a contemporaneous objection to introduction of the Use of Force Policy, that issue is waived.").

a deadline for motions *in limine*, including *Daubert* motions, of February 10, 2022). Lastly, at the March 18, 2022 hearing, Mr. Whittman testified live to these same topics during his direct examination on feasibility, without a single objection from the Guam Joiners:

> Q. How would the projections be impacted if you did not assume the releases would be provided under the plan?
>
> A. Absent the releases, as it relates, for example, to the local councils, I would expect there to be significant local council bankruptcy filings; and that that would place extreme pressure on membership, which in turn would reduce revenue; and, as a result, reduce the cash flow generated by the organization.

Mar. 18, 2022 Hr'g Tr. at 47:5-16. Accordingly, the Guam Joiners eleventh-hour objection is without merit.

## **CONCLUSION**

The Debtors respectfully request that the Court overrule the Guam Joiners' objections.

Dated: March 22, 2022
       Wilmington, Delaware

| WHITE & CASE LLP | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|---|---|
| Jessica C. Lauria (admitted *pro hac vice*) | |
| Glenn M. Kurtz (admitted *pro hac vice*) | */s/ Tori L. Remington* |
| Andrew Hammond (admitted *pro hac vice*) | Derek C. Abbott (No. 3376) |
| Samuel P. Hershey (admitted *pro hac vice*) | Andrew R. Remming (No. 5120) |
| 1221 Avenue of the Americas | Paige N. Topper (No. 6470) |
| New York, New York 10020 | Tori L. Remington (No. 6901) |
| Telephone: (212) 819-8200 | 1201 North Market Street, 16th Floor |
| Email: jessica.lauria@whitecase.com | P.O. Box 1347 |
|       gkurtz@whitecase.com | Wilmington, Delaware 19899-1347 |
|       ahammond@whitecase.com | Telephone: (302) 658-9200 |
|       sam.hershey@whitecase.com | Email: dabbott@morrisnichols.com |
| |        aremming@morrisnichols.com |
| – and – |        ptopper@morrisnichols.com |
| |        tremington@morrisnichols.com |
| WHITE & CASE LLP | |
| Michael C. Andolina (admitted *pro hac vice*) | |
| Matthew E. Linder (admitted *pro hac vice*) | |
| Laura E. Baccash (admitted *pro hac vice*) | |
| Blair M. Warner (admitted *pro hac vice*) | |
| 111 South Wacker Drive | |
| Chicago, Illinois 60606 | |
| Telephone: (312) 881-5400 | |
| Email: mandolina@whitecase.com | |
|       mlinder@whitecase.com | |
|       laura.baccash@whitecase.com | |
|       blair.warner@whitecase.com | |