**Exhibit 4**



*Highly Confidential*

Transcript of the Testimony of

**ADRIAN AZER**

March 11, 2022

**IN RE: BOY SCOUTS OF AMERICA and DELAWARE BSA LLC**

Reliable Court Reporting

Phone – 215-563-3363

Fax – 215-563-8839

www.reliable-co.com

IN RE: BOY SCOUTS OF AMERICA and DELAWARE BSA LLC                    Highly Confidential
ADRIAN AZER

```
 1              ***HIGHLY CONFIDENTIAL***

 2
            IN THE UNITED STATES BANKRUPTCY COURT
 3                FOR THE DISTRICT OF DELAWARE

 4    ----------------------------x
      In re:                       :Chapter 11
 5                                 :
      BOY SCOUTS OF AMERICA AND    :Case No. 20-10343(LSS)
 6    DELAWARE BSA, LLC,           :
              Debtors.             :
 7                                 :
                                   :(Jointly Administered)
 8    ----------------------------x

 9                      - - -
                   March 11, 2022
10                      - - -

11      Videotaped/Videoteleconferenced Deposition

12   of ADRIAN AZER, ESQUIRE, held remotely via

13   Zoom, by agreement of all parties, beginning

14   at 10:00 a.m., on the above date, before

15   Denise D. Bach, a Registered Professional

16   Reporter, Certified Court Reporter, License

17   No. XI0003990, and Notary Public.

18

19                     COPY

20

21

22

23

24

25
```

Reliable Court Reporting

IN RE: BOY SCOUTS OF AMERICA and DELAWARE BSA LLC                              Highly Confidential
                                                                                   ADRIAN AZER

```
                                                                        Page 2
 1   APPEARANCES:
 2        On Behalf of Debtor:
              ERNEST MARTIN, JR., ESQUIRE
 3            HAYNES AND BOONE, LLP
              Suite 700, 2323 Victory Avenue
 4            Dallas, TX 75219
                  -and-
 5        SOPHIE ROGERS CHURCHILL, ESQUIRE
              MORRIS, NICHOLS, ARSHT & TUNNELL LLP
 6            1201 North Market Street
              Wilmington, DE 19899-1347
 7
          On Behalf of Tort Claimants Committee:
 8            ALAN J. KORNFELD, ESQUIRE
              PACHULSKI STANG ZIEHL & JONES, LLP
 9            10100 Santa Monica Boulevard
              13th Floor
10            Los Angeles, CA 90067
                  -and-
11            JEFFREY SCHULMAN, ESQUIRE
              PACHULSKI STANG ZIEHL & JONES, LLP
12            Suite 401
              286 Madison Avenue
13            New York NY 10017
14   On Behalf of the Future Claimants
     Committee:
15        KEN ENOS, ESQUIRE
              YOUNG CONAWAY STARGATT & TAYLOR, LLP
16            Rodney Square
              1000 North King Street
17            Wilmington, DE 19801
                  -and-
18            MEREDITH NEELY, ESQUIRE
              GILBERT, LLP 700 Pennsylvania Ave, SE
19            Suite 400
              Washington, DC 20003
20
          On Behalf of Roman Catholic Ad Hoc
21        Committee:
              NEIL LLOYD, ESQUIRE
22            ARENTFOX SCHIFF
              233 South Wacker Drive,
23            Suite 7100
              Chicago, IL 60606
24
25
```

```
                                                                        Page 3
 1   APPEARANCES: (Continued)
 2        On Behalf of the Roman Catholic Ad Hoc
          Committee and the United Methodist Ad
 3        Hoc Committee:
              JEREMY RYAN, ESQUIRE
 4            POTTER ANDERSON & CORROON LLP
              1313 N. Market Street
 5            6th Floor
              Wilmington, DE 19801-6108
 6
          On Behalf of Federal Insurance Co. and
 7        Westchester Fire Insurance Co.:
              DAVID ELBAUM, ESQUIRE
 8            SIMPSON THACHER & BARTLETT LLP
              425 Lexington Avenue
 9            New York, NY 10017
10   On Behalf of National Surety
     Corporation and Interstate Fire &
11   Casualty Company:
              TODD C. JACOBS, ESQUIRE
12            BRADLEY RILEY JACOBS PC
              500 West Madison Avenue
13            Suite 1000
              Chicago, IL 60654
14
          On Behalf of Hartford Accident and
15   Indemnity Company, First State
     Insurance Company, Twin City Fire
16   Insurance Company and Navigators
     Specialty Insurance Company:
17            ANNETTE ROLAIN, ESQUIRE
              JOSHUA WEINBERG, ESQUIRE
18            RUGGERI PARKS WEINBERG LLP
              1875 K Street NW
19            Suite 600
              Washington, DC 20006-1251
20
21
22
23
24
25
```

```
                                                                        Page 4
 1   APPEARANCES: (Continued)
 2        On Behalf of J.P. Morgan Chase Bank, N.A.:
              MICHAEL BERTHIAUME, ESQUIRE
 3            NORTON ROSE FULBRIGHT US LLP
              2200 Ross Avenue, Suite 3600
 4            Dallas, TX 75201-7932
 5        On Behalf of CNA:
              LAURA K. McNALLY, ESQUIRE
 6            EMILY H. STONE, ESQUIRE
              LOEB & LOEB, LLP
 7            321 North Clark Street
              Suite 2300
 8            Chicago, IL 60654
 9        On Behalf of Travelers:
              MEGAN D. HALTER, ESQUIRE
10            REGER, RIZZO & DARNALL, LLP
              1521 Concord Pike, Suite 305
11            Wilmington, DE 19803
12        On Behalf of The Zalkin Law Firm, PC,
     Pfau Cochran Vertetis Amala PLLC:
13            SASHA M. GURVITZ, ESQUIRE
              KTBS LAW LLP
14            1801 Century Park East
              26th Floor
15            Los Angeles, CA 90067
16   On Behalf of Allianz Global Risks US
     Insurance Company:
17            ALEX M. SPISAK, ESQUIRE
              McDERMOTT WILL & EMERY, LLP
18            415 Mission Street
              Suite 5600
19            San Francisco, CA 94105-2533
20   On Behalf of Old Republic Insurance
     Company:
21            RYAN T. SCHULTZ, ESQUIRE
              FOX SWIBEL LEVIN & CARROLL, LLP
22            200 West Madison Street
              Suite 3000
23            Chicago, IL 60606
24
25
```

```
                                                                        Page 5
 1   APPEARANCES: (Continued)
 2        On Behalf of AIG Companies:
              RYAN APPLEBY, ESQUIRE
 3            DIANE CHAN, ESQUIRE
              GIBSON, DUNN & CRUTCHER LLP
 4            200 Park Avenue
              New York, NY 10166-0193
 5                -and-
              SUSAN N.K. GUMMOW, ESQUIRE
 6            FORAN GLENNON
              Suite 1400
 7            222 N. LaSalle Street
              Chicago, IL 60601
 8
          On Behalf of Century:
 9            TANCRED SCHIAVONI, ESQUIRE
              O'MELVENY & MYERS, LLP
10            Times Square Tower
              7 Times Square
11            New York, NY 10036
12   On Behalf of Traders and Pacific
     Insurance Company, Endurance American
13   Specialty Insurance Company and
     Endurance American Insurance Company:
14            MARLA BENEDEK, ESQUIRE
              COZEN O'CONNOR
15            1201 North Market Street
              Suite 1400
16            Wilmington, DE 19801
17   On Behalf of Liberty Mutual Insurance
     Company:
18            KIM V. MARRKAND, ESQUIRE
              MINTZ LEVIN COHN FERRIS GLOVSKY
19            AND POPEO, P.C.
              One Financial Center
20            Boston, MA 02111
21   On Behalf of Indian Harbor Insurance
     Company:
22            PAMELA J. MINETTO, ESQUIRE
              MOUND COTTON WOLLAN &
23            Grassgreen, LLP
              30A Vreeland Road
24            Florham Park, NJ 07932
25
```

Page 110

1  you negotiated this document, did you have an
2  understanding of what Section J meant?
3       MR. MARTIN:  Objection, form.
4  Calls for work product, legal conclusion.
5       MR. APPLEBY:  Yes, no?
6       THE WITNESS:  Obviously, as a
7  lawyer, I have an understanding, but are you
8  asking for my legal opinion?
9  BY MR. APPLEBY:
10      Q.  You won't provide -- you won't
11  provide your understanding at the time you
12  were negotiating this Section J.
13      Correct?
14       MR. MARTIN:  Objection, form.
15       THE WITNESS:  What I'll tell you
16  is, I don't recall any specific negotiations
17  surrounding this provision.  And I'm not
18  saying that they didn't happen, I don't have a
19  specific recollection.
20  BY MR. APPLEBY:
21      Q.  Okay.  During the independent
22  review process, is there anyone representing
23  the Boy Scouts in these claims?
24       MR. MARTIN:  Objection, form.
25       THE WITNESS:  Well, I think

Page 111

1  there's a neutral.  It's a former jurist.
2  BY MR. APPLEBY:
3      Q.  So, there's a neutral, I
4  understand that.
5      Is there, for example, is there
6  any sort of defense counsel substitute in this
7  Independent Review Option?
8       MR. MARTIN:  Objection, form.
9       THE WITNESS:  Again, there's a
10  neutral that does a process to evaluate the
11  claim.  That's how I understand it,
12  independent review.
13  BY MR. APPLEBY:
14      Q.  Were there any conversations,
15  during the negotiations of the Independent
16  Review Option, about including a defense
17  counsel substitute in the Independent Review
18  Option?
19      A.  Again, I don't -- I don't recall
20  any specific discussions about that.
21      Q.  The next section on page 195 is
22  Insurer Participation.
23      Do you see that?
24      A.  I do.
25      Q.  And you directed me to this

Page 112

1  earlier.  What is the debtors' understanding
2  in Romanette ii of what it means for a
3  responsible insurer to be given a reasonable
4  opportunity to participate in the independent
5  review?
6       MR. MARTIN:  Objection.  Calls
7  for a legal conclusion.
8       THE WITNESS:  Mr. Appleby, I'm
9  not going to -- I talked to you about the
10  negotiations.  I can't give you my legal
11  opinion.
12  BY MR. APPLEBY:
13      Q.  Okay.  So, were there any
14  conversations during the negotiations about
15  what that means for a responsible insurer to
16  be given a reasonable opportunity to
17  participate in the independent review?
18      A.  I mean, we obviously wanted it --
19  we had negotiations to make sure that the
20  insurers were involved and intimately involved
21  in all aspects of the process.  So, that broad
22  language was meant to provide for that.
23      This neutral can -- obviously has
24  some discretion, but we wanted to build in
25  that there is an ability to -- for the

Page 113

1  responsible insurer to participate, consistent
2  with how excess insurers would typically
3  participate on a pre-petition basis.
4      Q.  Did the debtors want to build in
5  for the responsible insurers' participation
6  rights anything beyond what appears in
7  subsection ii here?
8      A.  Well, just to be clear, right,
9  our goal was to be consistent with the
10  insurers' contractual rights.  And most of the
11  excess insurers have a right to associate.
12  That's typically the provision that's in their
13  insurance policies.  We were trying to protect
14  that right.
15      So, whatever rights the insurers
16  had under the right to associate, that's what
17  that first sentence is meant to encompass;
18  whatever extent.  If those rights exist, they
19  don't exist, I'm not here to judge that, and
20  that's why we struck the language that Ms.
21  Quinn inserted, but I'm trying to emulate
22  whatever that right is.
23      Q.  Got it.  So, the debtors'
24  understanding of Section K, Romanette ii, on
25  page 195, is that whatever rights the excess

Page 234

1  February 15th, 2022, plan.
2            And, Mr. Azer, are you the
3  designee for Topic No. 5?
4       A.   I am.  I think your reference to
5  the article, by the way, is incorrect.  But I
6  think it's a different -- but, yes, subject to
7  the appropriate objections.
8       Q.   And you're prepared, subject to
9  any appropriate objection, to testify on that
10 topic?
11      A.   Yes.
12      Q.   Okay.  Topic No. 6 is the reasons
13 for including clause Romanette iii in the
14 finding in Article IX, A.3.j in the
15 December 18, 2021, plan.
16           Are you the corporate designee
17 for the debtors on this topic, Mr. Azer?
18      A.   I am.
19      Q.   And subject to all appropriate
20 objections, are you prepared to testify on
21 that topic today?
22      A.   I am, subject to appropriate
23 objections.
24      Q.   Topic No. 7 is the reasons for
25 removing clause Romanette iii in the finding

Page 235

1  in Article IX, A.3.j in the February 15, 2022,
2  plan.
3            And are you the corporate
4  designee for the debtors in respect to Topic
5  No. 7?
6       A.   I am.
7       Q.   And subject to all appropriate
8  objections, are you prepared to testify about
9  that today?
10      A.   Subject to all appropriate
11 objections, yes.
12      Q.   Topic No. 8, if we can scroll
13 down a little bit, please, is the reasons for
14 including Article IX, A.4 in the February 15,
15 2022, plan, and then it quotes from Article
16 IX, A.4.
17           Are you the corporate designee
18 for Topic 8 for the debtors?
19      A.   Yes.
20      Q.   And subject to all appropriate
21 objections, are you prepared today to testify
22 in respect to Topic 8?
23      A.   Yes.
24      Q.   Topic 9 is -- states, Which
25 insurance policies purchased by the debtors

Page 236

1  from 1976 through 2020 and issued by a
2  settling insurer do debtors believe satisfy
3  Article X.F.3 of the February 15, 2022, plan.
4            Are you the corporate designee in
5  respect to Topic No. 9 for the debtors?
6       A.   Yes.
7       Q.   And subject to all appropriate
8  objections, are you prepared today to testify
9  about Topic 9?
10      A.   Yes.
11      Q.   If we can scroll down, please.
12           Topic No. 10 is the debtors'
13 understanding of and exercise of their
14 business judgment in agreeing to the following
15 paragraphs of the Century Term Sheet, 9, 10,
16 11, 13, 14 and 15 (as it relates to chartered
17 organizations).
18           With respect to the debtors'
19 understanding of those paragraphs in the
20 Century Term Sheet, are you the corporate
21 designee for the debtors?
22      A.   Yes, subject to the appropriate
23 objections.
24      Q.   And subject to appropriate
25 objections, are you prepared to testify as to

Page 237

1  the debtors' understanding of those paragraphs
2  in the Century Term Sheet?
3       A.   Yes.
4       Q.   Topic 11 --
5       A.   Sorry, just to be clear, 10 --
6  there are different terms.  12 is Hartford.
7  You just said of the Century Term Sheet.  It
8  depends on which request you're talking about.
9  But the respective settlement agreement and
10 term sheet, I'm prepared to reflect the
11 understanding, subject to objections.
12      Q.   I appreciate that.  We'll -- I'll
13 go as expeditiously as I can through them to
14 make sure -- and you can tell me this one way
15 or the other.
16      A.   Sure.
17      Q.   I can tell you that Mr. Desai
18 testified on Wednesday in respect to Topics
19 10, 11, 12, 13 and 14 concerning the debtors'
20 exercise of their business judgment.
21      A.   Correct.
22      Q.   So, I'm asking the question a
23 different way for you, because it's my
24 understanding you're the designee on
25 understanding.  Subject to appropriate

IN RE: BOY SCOUTS OF AMERICA and DELAWARE BSA LLC

Highly Confidential
ADRIAN AZER

Page 238

1  objections, but not the designee in respect to
2  business judgment.
3       A.    That's correct.
4       Q.    So, you have that same
5  understanding?
6       A.    Correct.
7       Q.    Topic 11 is the debtors'
8  understanding of and exercise of their
9  business judgment in including the following
10 provisions in the February 15, 2022, plan,
11 including all revisions to prior versions of
12 such provisions, and it has a list.
13            Are you the corporate designee
14 for the debtors concerning the debtors'
15 understanding of the provisions that we've
16 identified here in Topic 11?
17      A.    Yes, subject to appropriate
18 objections.
19      Q.    And subject to appropriate
20 objections, are you prepared to testify in
21 respect to the debtors' understanding
22 concerning Topic 11?
23      A.    Yes.
24      Q.    Okay.  Topic No. 12 is the
25 debtors' understanding and exercise of their

Page 239

1  business judgment in entering into the
2  Hartford Insurance Settlement Agreement (as it
3  relates to chartered organizations), the
4  Hartford Insurance Term Sheet (as it relates
5  to chartered organizations), and the Hartford
6  Insurance Draft Agreement (as it relates to
7  chartered organizations).
8            Is it your understanding, sir,
9  that you're the designee for the debtors'
10 understanding in respect to Topic 12?
11      A.    Yes.
12      Q.    And subject to appropriate
13 objections, are you prepared today to testify
14 in respect to the debtors' understanding
15 concerning Topic 12?
16      A.    Yes.
17      Q.    Topic 13 is the debtors'
18 understanding and exercise of their business
19 judgment in entering into the Clarendon
20 Insurance Settlement Agreement (as it relates
21 to chartered organizations) and the Clarendon
22 Insurance Settlement Term Sheet (as it relates
23 to chartered organizations).
24            And are you the corporate
25 designee, sir, for the debtors' understanding

Page 240

1  in respect to Topic 13?
2       A.    Yes.
3       Q.    And subject to all appropriate
4  objections, are you prepared today to testify
5  in respect to the debtors' understanding
6  concerning Topic 13?
7       A.    Yes.
8       Q.    Topic 14 is the debtors'
9  understanding and exercise of their business
10 judgment in entering into the Zurich Insurance
11 Settlement Agreement (as it relates to
12 chartered organizations) and the Zurich
13 Insurance Settlement Term Sheet (as it relates
14 to chartered organizations).
15            Are you the corporate designee,
16 sir, for the debtors' understanding in respect
17 to Topic 14?
18      A.    Yes.
19      Q.    And subject to all appropriate
20 objections, are you prepared to testify today
21 in respect to the debtors' understanding
22 concerning Topic 14?
23      A.    Yes.
24      Q.    If we could please then -- and
25 just as a housekeeping suggestion, not a

Page 241

1  dictate, we understand that it's entirely
2  likely that Mr. Martin may have objections and
3  instructions to you not to answer various
4  questions that I'm going to pose to you today
5  concerning either by invoking the mediation
6  privilege, by invoking work product, by
7  invoking attorney-client privilege.
8            You are familiar with the
9  documents that we've been talking about, you
10 may know the answer to my questions, and I'm
11 sure that we will try not to talk over each
12 other, but, in this instance, my suggestion
13 will be a suggestion that I also made during
14 the deposition for Mr. Desai, which is just a
15 slight pause, perhaps longer than usual, just
16 to make sure that Mr. Martin can make his
17 objection and we can have a clean record and
18 not be talking over each other.
19            We'll see how that goes, but
20 that's just my suggestion in terms of a smooth
21 flow?
22      A.    I will absolutely give time for
23 Mr. Martin to object.
24      Q.    I figured you would, and I
25 figured he wouldn't let you talk if he didn't