IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br>(Jointly Administered)<br><br>Ref. Docket No. 9445 |

**RESPONSE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE ARCHBISHOP OF AGAÑA (BANKR. D. GUAM 19-00010) TO THE DEBTORS' SUPPLEMENTAL RESPONSE TO OBJECTION OF THE ROMAN CATHOLIC AD HOC COMMITTEE TO THE DECLARATION OF BRIAN WHITTMAN**

The Official Committee of Unsecured Creditors appointed in *In re: Archbishop of Agaña, a Corporation Sole* (Bankr. D. Guam 19-00010 (the "Guam Committee") hereby submits its Reply (the "Reply") to the Debtors' Supplemental Response to Objection of the Roman Catholic Ad Hoc Committee to the Declaration of Brian Whittman, which was filed in Support of Confirmation of the Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC (the "Response") [Dkt. No. 9445]. In support of its Reply, the Guam Committee respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

1

**ARGUMENT**

I.     **Background**

     A.     **The Guam Committee's Separate Objections**

As a threshold matter, the Guam Committee separately and timely objected to various paragraphs contained in the Declaration of Brian Whittman (the "Guam Committee's prior objections") [Dkt. 9312]. The Guam Committee's prior objections raised, among other things, Federal Rules of Evidence 602 (concerning Mr. Whittman's lack of personal knowledge as to the matters asserted) and 701 (concerning Mr. Whittman's lack of the specialized knowledge that would otherwise be required to justify the statements he made).[2] The Guam Committee's prior objections targeted paragraphs 104, 106, 107, 130, 132, 134, 135, 136, 166, 167, 169, 170, 180, 181, 183, 184, 192, and 199. The Guam Committee objected to the speculative nature of Mr. Whittman's testimony generally and more specifically to (i) Mr. Whittman's lack of personal knowledge regarding the mindsets, motives, and perspectives of Settling Insurers; (ii) Mr. Whittman's lack of personal knowledge regarding the mindsets, motives, and perspectives of chartered organizations; and (iii) Mr. Whittman's provision of legal conclusions and other opinions that he is not qualified to provide, unable to provide as a non-expert witness, or both. The Guam Committee's original objections were raised as to nearly every paragraph at issue in the Roman Catholic Ad Hoc Committee's Objections to the Whittman Declaration (the "RCAHC Objections").[3]

---

[2] In its prior objections, the Guam Committee also objected to the Whittman Declaration to the extent that it purported to represent expert testimony; while the Guam Committee accepted Debtors' representations at that time that the Whittman Declaration was ***not*** offered as expert testimony, it appears the Debtors cannot make up their mind on that point. *See, e.g.,* Debtor's Response at p. 3 n. 7 (agreeing that Mr. Whittman was not being offered to provide expert testimony) and p. 16 (arguing that paragraph 238 specifically should be admitted as an expert opinion). The Debtors should be held to their representations to the Court and Mr. Whittman should not be allowed to testify as an expert.

[3] Of the paragraphs of testimony at issue in the RCAHC Objections as subsequently limited and described in the Debtors' Response, only paragraphs 130 (concerning information pertaining to "the financial wherewithal of

On March 15, 2022, the Court heard argument on both the Guam Committee's initial objections and the RCAHC Objections. With respect to the Guam Committee's initial objections, the Debtors conceded that Mr. Whittman was not being proffered as an expert, and they acknowledged that Mr. Whittman was being offered exclusively as a percipient witness to testify only as to matters within his personal knowledge based on his experience as a financial advisor and, further, to provide conclusions based on and expressing "common sense."

At the conclusion of the hearing, the Court observed in relevant part that the entry of testimony for "common sense" purposes would be inappropriate under Rule 701. While Mr. Whittman's declaration spans two hundred eighty-one paragraphs and one hundred twenty-seven pages, there is not a single sentence of testimony supporting the proposition that Mr. Whittman's held *personal knowledge* of the mindsets or internally-held positions of any party other than his client (the Debtors). Further, there is not a single sentence of testimony or line in any C.V. reflecting Mr. Whittman's capacity to analyze legal issues or to otherwise assess the costs and benefits unique to the types of hypothetical litigation that he describes and proffers as a basis for the conclusions that the Guam Committee believes constitute expert testimony (*i.e.*, opinions not based on Mr. Whittman's personal perceptions, but instead purportedly based on specialized experience or knowledge).

Despite the Court's observation with respect to "common sense," and the absence of any declaration testimony as to Mr. Whittman's personal knowledge of the objectionable content in the challenged paragraphs, the Debtors chose not to engage in *any* direct examination of Mr. Whittman. The Debtors voluntarily chose to waive their opportunity to elucidate live testimony on any issue contained in the challenged paragraphs.

---

Century") and 238 (concerning Mr. Whittman's opinions regarding the need for a release of Local Councils in connection with the reorganization of the Debtors) were not separately subject to the Guam Committee's objections under Rules 602 and 701. *See* Debtor's Response at p. 2 (listing objections); *cf.* Guam Committee's prior objections.

3

The Debtors' Supplemental Response inaccurately asserts that the Guam Committee's objections were limited to objections concerning "improper expert testimony." (Response at p. 3 n. 7) [Dkt. 9445]. This assertion is misleading. The Guam Committee's prior objections plainly assert **both** that Mr. Whittman's testimony would be improper under Rules 602 and 701 **and** that Mr. Whittman's testimony would be improper if offered as expert testimony.[4] Aside from the Debtors' mischaracterization of the Guam Committee's prior objections, the Debtors' do not address in their Response the Rule 602 and Rule 701 issues previously raised by the Guam Committee and already heard by the Court. Further, to date, the Debtors have made no effort to resolve the Guam Committee's prior objections to the Whittman Declaration.[5] To be clear, the Guam Committee continues to object to the Whittman Declaration on all grounds articulated in its relevant filings, and on all bases addressed during discussions with the Court, including through its joinder to the RCAHC Objections.

**B.     The Guam Committee Continues to Object to the Whittman Declaration Based on the Serious Concerns Raised by the RCAHC Objections**

In addition to raising its own objections to the Whittman Declaration, the Guam Committee also joined the RCAHC Objections. As counsel for the Guam Committee stated in its argument on March 15, the Guam Committee was unaware of the details surrounding discovery failures and omissions by the Debtors until those serious issues were explained by the RCAHC during oral argument. The Debtors noted that the Guam Committee was not involved in certain discovery proceedings. While this is true, the Debtors apparently believe that the Guam

---

[4] Guam Committee's prior objections, Dkt. 9312, at pp. 1-2 (citing Rules 602 and 701); 3-4 (objecting to one set of speculative statements as lacking "direct, personal knowledge"); 6 (objecting to a second set of speculative statements as lacking "personal knowledge"); and 7-8 (objecting to a third set of statements as constituting "improper legal conclusions" or otherwise reflecting opinion statements concerning facts as to which Mr. Whittman was not made personally aware).

[5] The Debtors did, in fact, reach out to the Guam Committee on March 19, 2022, but only to inquire if the Guam Committee intended to persevere on its oral joinder to the RCAHC Objection.

Committee now, as a result, lacks "grounds" to assert discovery-related objections to the Whittman Declaration. (Response at 4). This is, of course, untrue.

## II. The Guam Committee has "grounds" to object

Plan proponents bear the burden of satisfying 11 U.S.C. § 1129, and a party in interest may object to a proposed plan of reorganization on any relevant basis. *See* 11 U.S.C. § 1109(b) ("A party in interest . . . may raise and may appear and be heard on any issue in a case under this chapter."). Section 1109(b) "has been construed to create a broad right of participation in Chapter 11 cases." *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 210 (3d Cir. 2011). It is not incumbent on an objecting party to prove standing with respect to each issue that forms a basis for its plan objection. *See In re Congoleum Corp.*, No. 03-51524, 2005 WL 712540, *3 (Bankr. D.N.J. Mar. 24, 2005 (rejecting Debtors' argument "that standing must be determined on an issue by issue basis" because the plan opponent's "stake in plan confirmation includes a stake in the fundamental fairness of the Plan"). Further, a contested plan confirmation is not a two-party dispute and the Guam Committee respectfully submits that the purpose, importance, and usefulness of candor and the fulsome disclosure of relevant information in the plan confirmation context extends far beyond the narrow scope of one specific party requesting information from debtors during plan discovery. Unless they are provided all relevant information, parties in interest cannot make reasoned decisions regarding the plan proposed to them. *See, e.g., In re Blake*, 452 B.R. 1, (Bankr. D. Mass. 2011) ("The Bankruptcy Code envisions a process whereby all parties in interest have equal access to information regarding the debtor's assets, liabilities, and claims."). Thus, when a plan proponent fails to exercise candor, and fails to disclose relevant information upon its request without a valid justification for withholding such information, all parties in interest are potentially harmed. And more importantly, the confirmation process itself

5

is harmed and its legitimacy undermined. *See In re Congoleum*, 2005 WL 712540 at \*2 ("It is offensive to basic notions of due process to suggest that parties may be bound by a court's ruling but have no opportunity to be heard regarding it.")

The Guam Committee was very concerned by allegations of discovery abuse raised by the RCAHC and continues to believe that the alleged withholding of information by the Debtors is deeply relevant to the reliability of Mr. Whittman's testimony. Nothing about the Guam Committee's concerns was alleviated by the RCAHC settlement with the Debtors and its related (and likely required) withdrawal of the RCAHC Objections. The Guam Committee continues to object to the Whittman Declaration on the grounds articulated in the RCAHC Objections and respectfully requests that it be allowed to do so.

Setting aside the particulars of this hearing, no case cited by the Debtors in the Response stands for the proposition that a plan opponent does not have "grounds" to join an objection concerning testimony once the original objector subsequently withdraws the objection. Instead, the Response cites cases characterizing the propriety of exclusions of evidence generally, along with a case addressing Article III standing for "cases and controversies." None of the cases cited in this section of the Response addresses whether a plan opponent has grounds to object to the introduction of conclusory and self-serving evidence where the underlying facts that should support that evidence have been shielded from discovery.

**III.    Having invoked the mediation privilege, Debtors are precluded from eliciting testimony that relies on the facts shielded from discovery.**

The RCAHC Objection contended that the Debtors should be precluded from admitting evidence concerning conclusions drawn from representations in mediation, because the Debtors have raised the mediation privilege shields under Fed. R. Evid. 408 and Local Rule 9019-5(d)(1)(i). The Debtors contend that, while the mediation privilege may foreclose inquiry into

some subject matters, they should be permitted to present evidence concerning conclusions drawn regarding settlement prospects and negotiations so long as they do not reveal the contents of what was exchanged at mediation. (Response at p. 9-10) [Dkt. 9445].

The Debtors' Response appeals to the *In re Residential Capital* case.[6] (Response at 9). While this case addresses the impact of the invocation of the attorney-client privilege, the Debtors concede that is "analogous" to the situation placed before the Court. (Response at 9). There, the court addressed effectively the same issue: once a party invokes a privilege, can the party rely on the matters shielded by the privilege to present their case? *In re Residential Capital*, 491 B.R. at 72. And the underlying argument was similar: in support of its contention that its business decision to approve a settlement was "reasonable," the proponent of the evidence wanted to point to its reliance on its attorneys. *Id.* at 70-71. But the proponent of the evidence had steadfastly asserted privilege as to the content of those communications with its attorneys. *See id.* at 68-69. The court therefore permitted testimony concerning the **fact** of those communications—*i.e.*, that the board "sought and received the advice of counsel when negotiating and evaluating (and ultimately approving)" the settlement at issue—but excluded testimony concerning the **content** of those communications—*i.e.*, "the substance of whatever advice it sought and received in order to demonstrate that it exercised proper business judgment." *Id.* at 72.

Here, the Debtors and other plan proponents seek to introduce evidence concerning so-called personal knowledge of witnesses unaffiliated with certain insurance companies and other third parties for the truth of matters asserted concerning what was or was not necessary in negotiations with those third parties. Because the Debtors have chosen to assert the mediation privilege with respect to communications actually made during those negotiations, they are now

---

[6] 491 B.R. 63, 72 (Bankr. S.D.N.Y. 2013).

left merely rehashing legal arguments made by those third parties outside of the negotiation context. (Response at 10-12). Just as the court in *In re Residential Capital* excluded testimony as to the **content** of those negotiations—including the "substance" of the messages sought and received during those negotiations—so too should this Court exclude self-serving testimony from plan proponents as to their impressions of what third parties were or were not requiring where the Debtors and other plan proponents are preventing any inquiry into those negotiations. The Debtors "are the masters of the evidence they will present . . ., but they must accept the consequences of their tactical choice." *Id.* at 69.

The subject of the purported testimony cannot be divorced from the privileged material. At its core, the Debtors' various proffers of testimony seek to demonstrate that a third party required a term in an agreement. There is no evidence more squarely in focus on that determination than what was said by and heard from that third party during a mediation over the precise settlement at issue in the testimony. That is particularly the case here, where the case was in a near-constant state of mediation over the entire timeframe relevant to the allegations of necessity. The privilege affects the Guam Committee equally whether it is rebuked from obtaining the information it needs tomorrow or six months ago. Its joinder is valid—the testimony cannot come in.

IV.  **The Response expressly confirms that Whittman has no relevant personal knowledge**

In their Response, the Debtors flatly concede that the Guam Committee's prior objections as to personal knowledge and speculation were valid. The Debtors' Response states:

> the paragraphs that are challenged in the Whittman Declaration do not rely on any attorney-client or mediation-privileged information. Indeed, **none of the statements in the Whittman Declaration reveal a view expressed by a party with respect to a possible settlement of the dispute raised during the**

8

**mediation**. Rather, they rely on non-privileged information that has nothing to do with attorney-client advice or the mediations held in this case.[7]

This representation represents an independent reason that the Court should continue to exclude Mr. Whittman's testimony concerning the paragraphs subject to the Guam Committee's prior objections. There is no world where Mr. Whittman's testimony can be reliable without reference to mediation communications **for the settlements arising out of those mediations** with respect to:

- whether various non-Debtor parties "would be willing to agree" to terms;[8]
- whether various provisions are "essential" to those non-Debtor parties;[9] or
- whether settlements were "reasonable" because they were agreed to in arm's-length negotiations.[10]

That leaves only Mr. Whittman's testimony as to litigation and negotiation cost-benefit analysis of hypothetical tort or coverage actions.[11] These not only assume he is correct with respect to the underlying essential characterizations—an assumption unwarranted for all the reasons described above—they also revolve entirely around issues particular to the litigation and negotiation of coverage actions and underlying tort actions, respectively. Mr. Whittman cites no expertise in these matters and the Court has no reason to believe he has any. His testimony should be excluded for lack of personal knowledge—just as the Court has already ruled.

## CONCLUSION

WHEREFORE, the Guam Committee respectfully requests that the Court stand on its prior ruling with respect to the Guam Committee's prior objections and reject the Debtors'

---

[7] Response at 8-9 (emphasis added).
[8] Paragraphs 106, 134, 136, 169, 183, 192.
[9] Paragraphs 106, 107, 134, 135, 169, 170, 183, 184, 192.
[10] Paragraphs 104, 132, 166, 180.
[11] Paragraphs 133, 167, 181, 199.

request to overrule either the Guam Committee's prior objections or the Guam Committee's joinder of the RCAHC Objections.

| | |
|---|---|
| Dated: March 24, 2022<br>Wilmington, Delaware | Respectfully submitted,<br><br>HILLER LAW, LLC<br><br> /s/ **Adam Hiller**<br>Adam Hiller (DE No. 4105)<br>300 Delaware Avenue, Suite 210, #227<br>Wilmington, Delaware 19801<br>(302) 442-7677 telephone<br>ahiller@adamhillerlaw.com<br><br>-and-<br><br>Robert T. Kugler (MN #0194116)<br>Edwin H. Caldie (MN #0388930)<br>STINSON LLP<br>50 South Sixth Street, Suite 2600<br>Minneapolis, MN 55402<br>(612) 335-1500<br>robert.kugler@stinson.com<br>ed.caldie@stinson.com<br><br>-and-<br><br>Christina D. Arnone (MO #62230)<br>STINSON LLP<br>1201 Walnut, Suite 2900<br>Kansas City, MO 64106<br>(816) 842-8600<br>christina.arnone@stinson.com<br><br>*Attorneys for the Guam Committee* |

CORE/3515288.0002/173390167.1