# Exhibit 1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | Re Docket No. 8769 |

**DECLARATION OF JASON P. AMALA IN SUPPORT OF THE LIMITED OBJECTION OF THE ZALKIN LAW FIRM, P.C. AND PFAU COCHRAN VERTETIS AMALA PLLC TO TREATMENT OF TCJC IN DEBTORS' SECOND MODIFIED FIFTH AMENDED PLAN OF REORGANIZATION**

I, Jason P. Amala, declare as follows:

1.      I am over the age of eighteen years.  This declaration is based on my personal knowledge and experience and my review of relevant documents.  If called as a witness, I could and would competently testify to the facts set forth herein.

2.      I am a partner at Pfau Cochran Vertetis Amala PLLC ("PCVA"), which represents 1,139 sexual abuse claimants in the above-captioned chapter 11 cases (the "Chapter 11 Cases").  PCVA works closely with The Zalkin Law Firm, P.C. ("Zalkin"), which represents 137 sexual abuse claimants in the Chapter 11 Cases.  I submit this declaration in support of the *Limited Objection of the Zalkin Law Firm, P.C. And Pfau Cochran Vertetis Amala PLLC to Treatment of TCJC in Debtors' Second Modified Fifth Amended Plan of Reorganization* (the "Limited Objection").[2]

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]    Capitalized terms used but not otherwise defined herein have the meaning ascribed to such terms in the Limited Objection.

3.    PCVA currently has 22 lawyers.  We are one of the largest law firms in Washington State that exclusively represents individual plaintiffs – we would commonly be referred to as a "personal injury" firm, but our practice is not limited to personal injury.  I generally manage the day-to-day and week-to-week practice of most of the eleven lawyers in our Seattle office.  The vast majority of our legal work in the Seattle office is representing survivors of childhood sexual abuse.  However, we also handle other complex personal injury cases, including products liability cases, medical malpractice cases, and other cases involving catastrophic injury or death.  We are known as a "trial lawyer" law firm as we generally take multiple cases to trial a year, usually multi-week trials involving severe injury or death.  I believe PCVA has taken more Catholic child sexual abuse cases to trial than any other law firm in the country, including one that resulted in a $8 million jury verdict that arose from child sexual abuse by a Catholic priest, but such cases often settle before trial or on the eve of trial.

4.    Over the past 16 or 17 years, I have played a significant role in resolving hundreds of civil claims for child sexual abuse, and virtually all of those cases were against institutional defendants who failed to protect our clients from being sexually abused as children. The institutional defendants in those cases included the Seattle Archdiocese, the Christian Brothers, the Archdiocese of Chicago, the Diocese of Joliet, other dioceses and religious orders of the Catholic Church, the State of Washington, the Boy Scouts of America, the Chief Seattle Council, the Mt. Baker Council, other local councils of the Boy Scouts of America, the LDS Church, multiple schools and school districts, and other youth organizations.  I have personally represented approximately 20 individual plaintiffs in sexual abuse cases relating to the Boy Scouts of America.  Since 2009, PCVA has settled well over 1,000 sexual abuse cases, including more than 20 sexual abuse cases relating to the Boy Scouts of America.

5.      PCVA's history and experience in representing survivors of childhood sexual abuse is fairly unique, largely because Washington was one of the first states to reform its statute of limitations to allow adults to bring such claims more than two or three years after they reached the age of majority (the statute of limitations for negligence in most states).  As a result of that history and experience, PCVA is often asked to help other law firms when their state's statute of limitations is reformed so that abuse survivors can seek justice.  PCVA has co-counseled with law firms around the country, including in California, New York, New Jersey, Illinois, North Carolina, and Oregon.  PCVA currently represent over 500 survivors of childhood sexual abuse in New York, and three PCVA partners are licensed to practice in New York.

6.      The Zalkin firm also has extensive experience in representing survivors of child sexual abuse, sexual violence, and sexual harassment, with approximately 400 pending cases around the country.  Zalkin has been counsel of record in a large number of published opinions related to child abuse, sexual assault, and sexual harassment claims, including three in the California Supreme Court, ten in the California Court of Appeal, one in the Oregon Supreme Court, one in the Utah Supreme Court, three in the Ninth Circuit, one in the Sixth Circuit, and fourteen others in federal district courts.  Zalkin is currently Court-appointed Plaintiffs' liaison counsel for the Catholic Clergy child sexual abuse coordinated proceedings before the San Diego Superior Court.   In 2007, Irwin Zalkin was appointed claimants' liaison counsel on behalf of 144 child sexual abuse survivors in the San Diego Diocese chapter 11 case by Bankruptcy Judge Louise DeCarl Adler, which resulted in a settlement of almost $200 million for the 144 survivors, as well as the dismissal of the bankruptcy and a remand to state court to finalize the settlement.

7.      Of PCVA's 1,139 sexual abuse claimants in the Chapter 11 Case, 43 assert claims against TCJC.  Of Zalkin's 137 sexual abuse claimants in the Chapter 11 Case, 14 assert claims against TCJC.  In addition, PCVA and Zalkin have worked closely with other plaintiffs' firms in connection with this Chapter 11 Case, including firms that represent claimants asserting claims against TCJC.

8.      In connection with the Limited Objection, attached hereto as **Exhibit A** is a true and correct copy of the publicly-filed complaint in the lawsuit styled *AWKO Doe 2 v. Garden State Council, Inc., et al.*, Case No. BUR-L-002344-21, in the Superior Court of New Jersey, Burlington County.  The claimant therein ("AWKO Doe 2") is represented by Aylstock Witkin Kreis & Overholtz, PLLC, and has a timely-filed claim in the Chapter 11 Cases.

9.      The individual who filed Claim No. 32543 ("PCVA Doe 1") is a PCVA client who also has a timely-filed proof of claim in the Chapter 11 Cases.  From approximately 1987 to 1992, PCVA Doe 1 was a Boy Scout in a Troop that fell within the Grand Canyon Council in Scottsdale, Arizona.  PCVA Doe 1's Troop's charter organization was TCJC.

10.     In approximately 1987, when PCVA Doe 1 was just 9 years old, he was sexually abused by a Scout volunteer in his Troop, Robert Gene Metcalf ("Metcalf").  TCJC knew or reasonably should have known that Metcalf posed a danger to PCVA Doe 1.  In 1974, Metcalf was arrested in California for sexually abusing a minor boy.  Five years later, in 1979, Metcalf was arrested in Arizona for anally raping a 13-year-old boy.  As a result of the 1979 conviction, Metcalf was sentenced to six years in prison and was excommunicated from TCJC.  After he was released from prison, however, TCJC allowed Metcalf to return to the Spring Valley Ward (a local unit of TCJC) in Mayer, Arizona, and to serve as a Scout volunteer for one of its Scout Troops.

11.    After his release from prison, Metcalf met PCVA Doe 1's mother through the Mayer, Arizona TCJC and the two got married.  Metcalf then abused PCVA Doe 1 and his brothers in contexts wholly unrelated to Scouting, in addition to abusing PCVA Doe 1 in connection with Scouting.  Metcalf's sexual abuse of PCVA Doe 1 included fondling, masturbating, orally copulating, and digitally penetrating PCVA Doe 1.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 9th day of February, 2022, at Redmond, Washington.

_____

Jason P. Amala

**Exhibit A**

Mary Elizabeth Putnick
NJ ID 003002007
Putnick Legal, LLC, Of Counsel to
Aylstock Witkin Kreis & Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Phone: (850) 202-1010
Email: marybeth@putnicklegal.com
Attorneys for Plaintiff AWKO DOE 2

| | |
|---|---|
| Plaintiff,<br><br>AWKO DOE 2,<br><br>            vs.<br><br>Defendants,<br><br>GARDEN STATE COUNCIL, INC., BOY SCOUTS OF AMERICA; 690 BURLINGTON COUNTY COUNCIL, BOY SCOUTS OF AMERICA; THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; THE CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; JOHN DOES 1-10 | SUPERIOR COURT OF NEW JERSEY<br>BURLINGTON COUNTY<br>LAW DIVISION<br><br>DOCKET NO.<br><br>CIVIL ACTION<br><br><br>**COMPLAINT** |

Plaintiff AWKO DOE 2 ("Plaintiff"), by and through his attorneys, Aylstock, Witkin, Kreis & Overholtz, PLLC, respectfully alleges for his complaint the following:

**<u>INTRODUCTION</u>**

1.    This case arises from childhood sexual abuse and exploitation that Plaintiff suffered at the hands of the Defendants' Scout leader, Young Men's President, and volunteer, David James Borg ("Borg"), who the Defendants knew or should have known posed a danger to Plaintiff and

397171

Case 20-10343-LSS    Doc 9481-1    Filed 03/24/22    Page 9 of 40

BUR-L-002344-21   11/10/2021 12:56:57 PM  Pg 2 of 30 Trans ID: LCV20212621460
Case 20-10343-LSS    Doc 8833    Filed 02/15/22    Page 8 of 39

other children.  Despite their knowledge, the Defendants failed to take reasonable steps to protect

Plaintiff from the danger of being sexually abused by Borg.  As a result, Borg was able to use his

position as a Scout leader, Young Men's President, and volunteer with the Defendants to sexually

abuse Plaintiff.

### PARTIES

2.      Plaintiff is an adult male who currently resides in Americus, Georgia.

3.      Plaintiff is proceeding under a pseudonym pursuant to N.J.S.A. 2A:61B-1(f).

4.      While his was a minor, Plaintiff was a victim of one or more criminal sex acts in

the State of New Jersey, including sexual acts that would constitute a sexual offense that revives

Plaintiff's claim as defined by New Jersey Child Sexual Abuse Act, N.J.S.A. 2A:61B-1.

5.      At all relevant times Plaintiff was a minor participating in the Boy Scouts of

America program that was operated and controlled by Defendants Garden State Council, Boy

Scouts of America, Inc.; 690 Burlington County Council, Boy Scouts of America; The Corporation

of the President of Church of Jesus Christ of Latter-day Saints; The Corporation of the Presiding

Bishop of the Church of Jesus Christ of Latter-Day Saints; and John Does 1-10 (all Defendants are

collectively referred to herein as "the Defendants").

6.      At all relevant times Plaintiff was a minor congregant of The Church of Jesus Christ

of Latter-day Saints in Moorestown, New Jersey ("Moorestown LDS"), which is wholly owned

and operated by Defendants The Corporation of the President of Church of Jesus Christ of Latter-

day Saints and The Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-

Day Saints; and John Does 1-10 (collectively referred to herein as "the LDS Defendants").

397171

7.      Borg was a Scout leader or volunteer that the Defendants used and relied upon as a Scout leader and volunteer to serve Plaintiff and other children who participated in their Boy Scout program.

8.      Borg was a Young Men's President or volunteer that the LDS Defendants used and relied upon as a Young Men's President to serve Plaintiff and other children who participated in its Moorestown LDS youth programs.

9.      During the time that Borg served as a Scout leader or volunteer for the Defendants, he used his position as a Scout leader or volunteer to groom and to sexually abuse Plaintiff.

10.      During the time that Borg served as a Young Men's President or volunteer for the LDS Defendants, he used his position as a Young Men's President or volunteer to groom and to sexually abuse Plaintiff.

11.      At all relevant times Defendant Garden State Council, Boy Scouts of America, Inc. ("GSC") was a New Jersey nonprofit corporation organized under New Jersey law with its principal place of business in Westampton, New Jersey, that transacted business in Burlington County.

12.      Defendant GSC is a Local Council of the Boy Scouts of America ("BSA"). Over the last several decades, multiple Local Council corporations within the BSA have merged and combined with each other.  Upon information and belief, Defendant GSC is the result of mergers between Burlington County Council and Southern New Jersey Council, among other entities that were former Local Councils of the BSA. Upon information and belief, whenever such merger took place, the merged entity continued the operations of the merging entities and took possession of and control over their business, management, personnel, physical location, and general business

397171

operations of each merging entity. Under the doctrine of *de facto* merger, and based on express terms of the mergers, Defendant GSC is liable for the negligence of each former Local Council. At all material times, Plaintiff was a member of a scouting organization under the supervision, management, and oversight of Defendant GSC.

13.    At all relevant times GSC conducted business as "Garden State Council, Boy Scouts of America, Inc.," "Garden State Council, Inc., Boy Scouts of America," "Garden State Council, Boy Scouts of America," "Garden State Council, Inc.," "Garden State Council," "GS Council," "GSC," and "690 Garden State Council."

14.    To the extent that GSC was a different entity, corporation, or organization during the period of time in which Borg used his position as a Scout leader and volunteer to sexually abuse Plaintiff, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Garden State Council, Inc., Boy Scouts of America or as a "John Doe" defendant.

15.    To the extent that GSC is a successor to a different entity, corporation, or organization which existed during the period of time during which Borg used his position as a Scout leader and volunteer to sexually abuse Plaintiff, including Southern New Jersey Council of Boy Scouts of America, Inc. and other any entity, corporation, or organization that subsequently or eventually merged into GSC, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Garden State  Council, Inc., Boy Scouts of America or as a "John Doe" defendant.

16.    All such GSC-related entities, corporations, or organizations are collectively identified and referred to herein as "GSC."

397171

17.     At all relevant times Defendant 690 Burlington County Council, Boy Scouts of America ("BCC") was a New Jersey nonprofit corporation organized under New Jersey law with its principal place of business in Rancocas, New Jersey.

18.     At all relevant times BCC conducted business as "690 Burlington County Council, Boy Scouts of America", "Burlington County Council of Boy Scouts of America, Inc.," "Burlington County Council, Inc., Boy Scouts of America," "Burlington County Council, Boy Scouts of America," "Burlington County Council of Boy Scouts of America," "Burlington County Council, Inc.," "Burlington County Council," "690 Burlington County Council," and "BCC."

19.     To the extent that BCC was a different entity, corporation, or organization during the period of time in which Borg used his position as a Scout leader and volunteer to sexually abuse Plaintiff, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as 690 Burlington County Council, Boy Scouts of America, Inc. or as a "John Doe" defendant.

20.     To the extent that BCC is a successor to a different entity, corporation, or organization which existed during the period of time during which Borg used his position as a Scout leader and volunteer to sexually abuse Plaintiff, including GSC and any other entity, corporation, or organization that subsequently or eventually merged into BCC, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as 690 Burlingotn County Council, Boy Scouts of America or as a "John Doe" defendant.

21.     All such BCC-related entities, corporations, or organizations are collectively identified and referred to herein as "BCC."

397171

22.     Given their relationship, GSC and BCC are collectively referred to below as "GSC."

23.     At all relevant times Defendant The Corporation of the President of the Church of Jesus Christ of Latter-day Saints ("COP") was a not-for-profit corporation organized under Utah law, conducting business in the state of New Jersey, county of Burlington, and city of Moorestown.

24.     To the extent that COP was a different entity, corporation, or organization during the period of time in which Borg used his position as a Scout leader, Young Men's President, and volunteer to sexually abuse Plaintiff, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as the The Corporation of the President of the Church of Jesus Christ of Latter-day Saints or as a "John Doe" defendant.

25.     To the extent that COP is a successor to a different entity, corporation, or organization which existed during the period of time during which Borg used his position as a Scout leader, Young Men's President, and volunteer to sexually abuse Plaintiff, including any entity, corporation, or organization that subsequently or eventually merged into COP such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as the The Corporation of the President of the Church of Jesus Christ of Latter-day Saints or as a "John Doe" defendant.

26.     At all relevant times Defendant The Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints ("COPB") was a not-for-profit corporation organized under Utah law, conducting business in the state of New Jersey, county of Burlington, and city of Moorestown.

397171

27.     To the extent that COPB was a different entity, corporation, or organization during the period of time in which Borg used his position as a Scout leader, Young Men's President, and volunteer to sexually abuse Plaintiff, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as The Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, or as a "John Doe" defendant.

28.     To the extent that COPB is a successor to a different entity, corporation, or organization which existed during the period of time during which Borg used his position as a Scout leader, Young Men's President, and volunteer to sexually abuse Plaintiff, including any entity, corporation, or organization that subsequently or eventually merged into COPB such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as The Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, or as a "John Doe" defendant.

29.     Given their relationship, the Corporation of the President of the Church of Jesus Christ of Latter-Day Saints, The Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, and all other such LDS-related entities, corporations, or organizations are collectively identified and referred to herein as "LDS."

## VENUE

30.     Venue is proper because at all relevant times GSC was a domestic corporation authorized to transact business in New Jersey with its principal office located in Westampton, New Jersey.

397171

31.     The amount of damages sought exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## STATEMENT OF FACTS

32.     Plaintiff repeats and re-alleges the above allegations.

33.     At all relevant times GSC, through its agents, servants, and employees, managed, maintained, operated, and controlled Boy Scout Troops, Cub Scout Troops, other Scout Troops, and Boy Scout camps in New Jersey, including the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by its Scout leader and volunteer, Borg.

34.     At all relevant times GSC, through its agents, servants, and employees, managed, maintained, operated, and controlled the Scout leaders and volunteers of Boy Scout Troops, Cub Scout Troops, other Scout Troops, and Boy Scout camps in New Jersey, including the Scout leaders and volunteers of the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by one of those Scout leaders, Borg.

35.     LDS obtained a charter agreement from the Boy Scouts of America and GSC that allowed and enabled LDS to operate and control Plaintiff's Boy Scout Troop subject to the rules, regulations, and control of GSC.

36.     At all relevant times LDS, through its agents, servants, and employees, managed, maintained, operated, and controlled the Young Men's Presidents, Scout Leaders, and volunteers of LDS churches, including Moorestown LDS, that Plaintiff belonged to when he was sexually abused by one of those Young Men's Presidents, Scout Leaders, and volunteers, Borg.

397171

37.    At all relevant times the Defendants, through their agents, servants, and employees, managed, maintained, operated, and controlled the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by the Defendants' Scout leader and volunteer, Borg.

38.    At all relevant times the LDS Defendants, through their agents, servants, and employees, managed, maintained, operated, and controlled Moorestown LDS that Plaintiff belonged to when he was sexually abused by the LDS Defendants' Young Men's President, Scout Leader, and volunteer, Borg.

39.    At all relevant times the Defendants, through their agents, servants, and employees, held out their agents, servants, and employees to the public as those who managed, maintained, operated, and controlled the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by one of their Scout leaders and volunteers, Borg.

40.    At all relevant times the Defendants, through their agents, servants, and employees, held out their agents, servants, and employees to the public as those who managed, maintained, operated, and controlled Moorestown LDS that Plaintiff belonged to when he was sexually abused by one of their Young Men's Presidents, Scout leaders, and volunteers, Borg.

41.    At all relevant times the Defendants were responsible for the hiring and staffing, and did the hiring and staffing, for the Scout leaders and volunteers of the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by their Scout leader and volunteer, Borg.

42.    At all relevant times the LDS Defendants were responsible for the hiring and staffing, and did the hiring and staffing, for the Young Men's Presidents, Scout leaders, and volunteers of Moorestown LDS that Plaintiff belonged to when he was sexually abused by their Young Men's President, Scout leader and volunteer, Borg.

397171

43.     At all relevant times the Defendants were responsible for the recruitment and staffing of the Scout leaders and volunteers for the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by their Scout leader and volunteer, Borg.

44.     At all relevant times the LDS Defendants were responsible for the recruitment and staffing of the Young Men's Presidents, Scout leaders, and volunteers for Moorestown LDS that Plaintiff belonged to when he was sexually abused by their Young Men's President, Scout leader, and volunteer, Borg.

45.     At all relevant times the Defendants were responsible for supervising the Scout leaders and volunteers for the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by their Scout leader and volunteer, Borg.

46.     At all relevant times the LDS Defendants were responsible for supervising the Young Men's Presidents, Scout leaders, and volunteers for Moorestown LDS that Plaintiff belonged to when he was sexually abused by their Young Men's President, Scout leader, and volunteer, Borg.

47.     At all relevant times the Defendants held themselves out to the public as the owners of the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by their Scout leader and volunteer, Borg.

48.     At all relevant times the LDS Defendants held themselves out to the public as the owners of Moorestown LDS that Plaintiff belonged to when he was sexually abused by their Young Men's President, Scout leader, and volunteer, Borg.

49.     At all relevant times the Defendants materially benefited from the operation of the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by the Defendants' Scout

397171

Case 20-10343-LSS    Doc 9481-1    Filed 03/24/22    Page 18 of 40

BUR-L-002344-21    11/10/2021 12:56:57 PM  Pg 11 of 30 Trans ID: LCV20212621460
Case 20-10343-LSS    Doc 8833    Filed 02/15/22    Page 17 of 39

leader and volunteer, Borg, including the services of Borg and the services of those who managed and supervised Borg.

50.    At all relevant times the LDS Defendants materially benefited from the operation of Moorestown LDS that Plaintiff belonged to when he was sexually abused by their Young Men's President, Scout leader, and volunteer, Borg, including the services of Borg and the services of those who managed and supervised Borg.

51.    At all relevant times the Defendants, through their agents, servants, and employees, managed, maintained, operated, and controlled the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by the Defendants' Scout leader and volunteer, Borg, including its leaders and volunteers.

52.    At all relevant times the LDS Defendants, through their agents, servants, and employees, managed, maintained, operated, and controlled Moorestown LDS that Plaintiff belonged to when he was sexually abused by the Defendants' Young Men's President, Scout leader, and volunteer, Borg, including its leaders and volunteers.

53.    At all relevant times the Defendants, through their agents, servants, and employees, managed, maintained, operated, and controlled the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by the Defendants' Scout leader and volunteer, Borg, including its policies and procedures regarding the sexual abuse of children.

54.    At all relevant times the LDS Defendants, through their agents, servants, and employees, managed, maintained, operated, and controlled Moorestown LDS that Plaintiff belonged to when he was sexually abused by the Defendants' Young Men's President, Scout

397171

leader, and volunteer, Borg, including its policies and procedures regarding the sexual abuse of children.

55.    At all relevant times Borg was a Scout leader and volunteer of the Defendants who held the position of Scout leader of the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by Borg.

56.    At all relevant times Borg was a Young Men's President, Scout leader, and volunteer of the LDS Defendants who held the position of Young, Men's President and Scout leader of Moorestown LDS that Plaintiff belonged to when he was sexually abused by Borg.

57.    At all relevant times Borg was on the staff of, was an agent of, or served as an employee or volunteer of the Defendants.

58.    At all relevant times Borg was acting in the course and scope of his positions with the Defendants.

59.    When Plaintiff was a minor, he registered with the Defendants as a member of their Boy Scout Troop and paid them a fee to participate as a member of their Boy Scout Troop, including its meetings, camping trips, merit badge activities, and other outings.

60.    When Plaintiff was a minor, he was as a congregant of Moorestown LDS and participated in activities as a congregant of Moorestown LDS, including its sermons, youth related activites, and other church services.

61.    At all relevant times the Defendants, through their agents, servants, and employees, held Borg out to the public, to Plaintiff, and to his parents, as their agent.

397171

Case 20-10343-LSS    Doc 9481-1    Filed 03/24/22    Page 20 of 40

BUR-L-002344-21   11/10/2021 12:56:57 PM  Pg 13 of 30 Trans ID: LCV20212621460
Case 20-10343-LSS    Doc 8833    Filed 02/15/22    Page 19 of 39

62.    At all relevant times the Defendants, through their agents, servants, and employees, held Borg out to the public, to Plaintiff, and to his parents, as having been vetted, screened, and approved to serve as one of their Scout leaders and volunteers.

63.    At all relevant times the LDS Defendants, through their agents, servants, and employees, held Borg out to the public, to Plaintiff, and to his parents, as having been vetted, screened, and approved to serve as one of their Young Men's Presidents, Scout leaders, and volunteers.

64.    At all relevant times Plaintiff and his parents reasonably relied upon the acts and representations of the Defendants, through their agents, servants, and employees, and reasonably believed that Borg was one of their agents who was vetted, screened, and approved to serve as one of their Scout leaders and volunteers.

65.    At all relevant times Plaintiff and his parents reasonably relied upon the acts and representations of the LDS Defendants, through their agents, servants, and employees, and reasonably believed that Borg was one of their agents who was vetted, screened, and approved to serve as one of their Young Men's Presidents, Scout leaders, and volunteers.

66.    At all relevant times Plaintiff and his parents trusted Borg because the Defendants held him out as someone who was safe and could be trusted with the supervision, care, custody, and control of Plaintiff.

67.    At all relevant times Plaintiff and his parents believed that the Defendants would exercise such care as would a parent of ordinary prudence in comparable circumstances when those Defendants assumed supervision, care, custody, and control of Plaintiff.

397171

68.     LDS sponsored the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by the Defendants' Scout leader and volunteer, Borg.

69.     LDS sponsored the youth activities at Moorestown LDS that Plaintiff belonged to when he was sexually abused by the Defendants' Young Men's President, Scout leader, and volunteer, Borg.

70.     LDS hosted the meetings of Plaintiff's Boy Scout Troop and organized the Troop's Scouting activities and events, including meetings, camping trips, merit badge activities, and other outings.

71.     LDS hosted the meetings of the youth activities at Moorestown LDS and organized Moorestown LDS' activities and events, including meetings, camping trips, games, and other outings.

72.     The Defendants were responsible for selecting and supervising the Scout leaders and volunteers of Plaintiff's Boy Scout Troop, including the Troop's Scout leader and volunteer, Borg, when he used that position with the Defendants to sexually abuse Plaintiff.

73.     The LDS Defendants were responsible for selecting and supervising the Young Men's Presidents, Scout leaders, and volunteers at Moorestown LDS, including the Moorestown LDS' Young Men's President, Scout leader, and volunteer, Borg, when he used those positions with the LDS Defendants to sexually abuse Plaintiff.

74.     When Plaintiff was a minor, Borg used his position as the Defendants' Scout leader and volunteer to sexually abuse him.

75.     When Plaintiff was a minor, Borg used his positions as the LDS Defendants' Young Men's President, Scout leader, and volunteer to sexually abuse him.

76.     Plaintiff was sexually abused by Borg when Plaintiff was approximately 15 to 16 years old.

77.     Based on the representations of the Defendants that Borg was safe and trustworthy, Plaintiff and his parents allowed Plaintiff to be under the supervision of, and in the care, custody, and control of the Defendants, including when Plaintiff was sexually abused by Borg.

78.     Neither Plaintiff nor his parents would have allowed him to be under the supervision of, or in the care, custody, or control of the Defendants, or Borg, if the Defendants had disclosed to Plaintiff or his parents that Borg was not safe and was not trustworthy, and that he in fact posed a danger to Plaintiff in that Borg was likely to sexually abuse Plaintiff.

79.     Neither Plaintiff nor his parents would have paid the Defendants to allow him to be a member of their Boy Scout Troop, or to participate in their Scouting activities, if the Defendants had disclosed to Plaintiff or his parents that Borg was not safe and was not trustworthy, and that he in fact posed a danger to Plaintiff in that Borg was likely to sexually abuse Plaintiff.

80.     Neither Plaintiff nor his parents would have paid the LDS Defendants to allow him to participate in Moorestown LDS' youth activities, if the LDS Defendants had disclosed to Plaintiff or his parents that Borg was not safe and was not trustworthy, and that he in fact posed a danger to Plaintiff in that Borg was likely to sexually abuse Plaintiff.

81.     Neither Plaintiff nor his parents would have paid the Defendants to allow him to be a member of their Boy Scout Troop, or to participate in their Scouting activities, if the Defendants had disclosed to Plaintiff or his parents that they knew for years that sexual predators, like Borg, were using their positions as Scout leaders and volunteers to groom and to sexually abuse children.

397171

Case 20-10343-LSS    Doc 9481-1    Filed 03/24/22    Page 23 of 40

BUR-L-002344-21   11/10/2021 12:56:57 PM  Pg 16 of 30 Trans ID: LCV20212621460
Case 20-10343-LSS    Doc 8833    Filed 02/15/22    Page 22 of 39

82.     Neither Plaintiff nor his parents would have paid the LDS Defendants to allow him to participate in Moorestown LDS' youth activities, if the LDS Defendants had disclosed to Plaintiff or his parents that they knew for years that sexual predators, like Borg, were using their positions as Young Men's Presidents, Scout leaders, and volunteers to groom and to sexually abuse children.

83.     No parent of ordinary prudence in comparable circumstances would have allowed Plaintiff to be under the supervision of, or in the care, custody, or control of the Defendants or Borg if the Defendants had disclosed to Plaintiff or his parents that Borg was not safe and was not trustworthy, and that he in fact posed a danger to Plaintiff in that Borg was likely to sexually abuse him.

84.     From approximately 1983 through 1984, Borg used his position of trust and authority as a Scout leader and volunteer of the Defendants to groom Plaintiff and to sexually abuse him, including during Scout meetings, Scout camping trips and activities, when Plaintiff was under the supervision of, and in the care, custody, or control of, the Defendants.

85.     From approximately 1983 through 1984, Borg used his position of trust and authority as a Young Men's President, Scout leader, and volunteer of the LDS Defendants to groom Plaintiff and to sexually abuse him, including during Moorestown LDS' youth activities, games, meetings, camping trips, and other activities, when Plaintiff was under the supervision of, and in the care, custody, or control of, the LDS Defendants.

86.     The Defendants' Scout leader and volunteer, Borg, groomed and sexually abused Plaintiff multiple times.

397171

87.     The LDS Defendants' Young Men's President, Scout leader, and volunteer, Borg, groomed and sexually abused Plaintiff multiple times.

88.     The sexual abuse by the Defendants' Scout leader and volunteer, Borg, included, but was not limited to, Borg touching and fondling Plaintiff, Borg grinding his genitals against Plaintiff, Borg exposing Plaintiff to deviant sexual fantasies, and Borg exposing Plaintiff to deviant sexual games.

89.     The sexual abuse by the LDS Defendants' Young Men's President, Scout leader, and volunteer, Borg, included, but was not limited to, Borg touching and fondling Plaintiff, Borg exposing Plaintiff to sexual fantasies, and Borg exposing Plaintiff to sexual games.

90.     The sexual abuse by the Defendants' Scout leader and volunteer, Borg, occurred using property that was owned, operated, and/or controlled by the Defendants, including Borg's home when it was used for Scout meetings and activities, during which time Plaintiff was in the care, custody, or control of the Defendants.

91.     The sexual abuse by the LDS Defendants' Young Men's President, Scout leader, and volunteer, Borg, occurred using property that was owned, operated, and/or controlled by the Defendants, including Borg's home when it was used for Moorestown LDS' meetings, games, and other youth activities, during which time Plaintiff was in the care, custody, or control of the LDS Defendants.

92.     The sexual abuse by the Defendants' Scout leader and volunteer, Borg, occurred during activities that were sponsored by the Defendants, or directly as a result of activities that were sponsored by the Defendants, including, but not limited to, Scout meetings and physical training for scout activities.

397171

Case 20-10343-LSS    Doc 9481-1    Filed 03/24/22    Page 25 of 40

BUR-L-002344-21   11/10/2021 12:56:57 PM  Pg 18 of 30 Trans ID: LCV20212621460
Case 20-10343-LSS    Doc 8833    Filed 02/15/22    Page 24 of 39

93.    The sexual abuse by the LDS Defendants' Young Men's President, Scout leader, and volunteer, Borg, occurred during activities that were sponsored by the LDS Defendants, or directly as a result of activities that were sponsored by the LDS Defendants, including, but not limited to, Moorestown LDS' meetings, games, and youth activities.

94.    At all relevant times the Defendants, through their agents, servants, and employees, knew or should have known that Borg was a sexual abuser of children who would use his positions with them to sexually abuse Plaintiff and other children.

95.    At all relevant times the Defendants knew or should have known that Borg was likely to sexually abuse children, including Plaintiff.

96.    At all relevant times the Defendants, through their agents, servants, and employees, knew or should have known that the sexual abuse by Borg of Plaintiff was ongoing.

97.    At all relevant times it was reasonably foreseeable to the Defendants, through their agents, servants, and employees, that Borg's sexual abuse of children would likely result in injury to others, including the sexual abuse of Plaintiff and other children by Borg.

98.    Before and during the time he sexually abused Plaintiff, the Defendants, through their agents, servants, and employees, knew or should have known that Borg was sexually abusing Plaintiff and other children.

99.    The Defendants, through their agents, servants, and employees, knew or should have known before and during Borg's sexual abuse of Plaintiff that Scout leaders, volunteers, and other persons who worked with youth, including other Scout leaders and volunteers, had used their positions to groom and to sexually abuse children.

397171

100.    The LDS Defendants, through their agents, servants, and employees, knew or should have known before and during Borg's sexual abuse of Plaintiff that Young Men's Presidents, Scout leaders, volunteers, and other persons who worked with youth, including other Young Men's Presidents, Scout leaders, and volunteers, had used their positions to groom and to sexually abuse children.

101.    The Defendants, through their agents, servants, and employees, knew or should have known before and during Borg's sexual abuse of Plaintiff that such Scout leaders, volunteers, and other persons who worked with youth could not be "cured" through treatment or counseling.

102.    The LDS Defendants, through their agents, servants, and employees, knew or should have known before and during Borg's sexual abuse of Plaintiff that such Young Men's Presidents, Scout leaders, volunteers, and other persons who worked with youth could not be "cured" through treatment or counseling.

103.    The Defendants, through their agents, servants, and employees, concealed the sexual abuse of children by Borg in order to conceal their own bad acts in failing to protect children from him, to protect their reputation, and to prevent victims of such sexual abuse by him and other Scout leaders and volunteers from coming forward during the extremely limited statute of limitations prior to the enactment of the current law, despite knowing that Borg and other abusers in their ranks would continue to molest children.

104.    The LDS Defendants, through their agents, servants, and employees, concealed the sexual abuse of children by Borg in order to conceal their own bad acts in failing to protect children from him, to protect their reputation, and to prevent victims of such sexual abuse by him and other Young Men's Presidents, Scout leaders, and volunteers from coming forward during the extremely

397171

limited statute of limitations prior to the enactment of the current law, despite knowing that Borg and other abusers in their ranks would continue to molest children.

105.    The Defendants, through their agents, servants, and employees, consciously and recklessly disregarded their knowledge that Borg would use his positions with the Defendants to sexually abuse children, including Plaintiff.

106.    The Defendants, through their agents, servants, and employees, disregarded their knowledge that Borg would use his positions with them to sexually abuse children, including Plaintiff.

107.    The Defendants, through their agents, servants, and employees, acted in concert with each other and/or with Borg to conceal the danger that Borg posed to children, including Plaintiff, so that Borg could continue serving them despite their knowledge of that danger.

108.    The Defendants, through their agents, servants, and employees, knew that their negligent, reckless, and outrageous conduct would inflict severe emotional and psychological distress, as well as personal physical injury, on others, including Plaintiff, and he did in fact suffer severe emotional and psychological distress and personal physical injury as a result of their wrongful conduct.

109.    By reason of the wrongful acts of the Defendants as detailed herein, Plaintiff sustained physical and psychological injuries, including but not limited to, severe emotional and psychological distress, humiliation, fright, dissociation, anger, depression, anxiety, family turmoil and loss of faith, a severe shock to his nervous system, physical pain and mental anguish, and emotional and psychological damage, and, upon information and belief, some or all of these

397171

Case 20-10343-LSS    Doc 9481-1    Filed 03/24/22    Page 28 of 40

BUR-L-002344-21    11/10/2021 12:56:57 PM   Pg 21 of 30 Trans ID: LCV20212621460
Case 20-10343-LSS    Doc 8833    Filed 02/15/22    Page 27 of 39

injuries are of a permanent and lasting nature, and Plaintiff has and/or will become obligated to expend sums of money for treatment.

**CAUSES OF ACTION**

**FIRST COUNT**

**(Violation of New Jersey Child Sexual Abuse Act, <u>N.J.S.A.</u> 2A:61B-1)**

110.    Plaintiff repeats and re-alleges the allegations above and below.

111.    During the time that Borg was working for and serving the Defendants, his committed "sexual abuse" of Plaintiff as defined by New Jersey Child Sexual Abuse Act, <u>N.J.S.A.</u> 2A:61B-1.

112.    Each Defendant knowingly permitted and/or acquiesced in the sexual abuse of Plaintiff by Borg in violation of the New Jersey Child Sex Abuse Act.

113.    The Defendants' actions constitute malice, vindictiveness, wanton and reckless disregard, and indifference to Plaintiff's rights and safety.

114.    At all relevant times Borg was an employee or agent of the Defendants acting within the scope of his employment or agency.  As such, in addition to being directly liable under this cause of action, the Defendants are vicariously liable for the torts committed by Borg under the doctrine of *respondeat superior*.

115.    As a direct and proximate result of the acts and omissions of each Defendant, Plaintiff suffered and will continue to suffer physically, emotionally, and otherwise.

**WHEREFORE**, Plaintiff demands judgment against the Defendants for damages in an amount sufficient to compensate him for his compensatory damages, for both physical and

397171

emotional pain and suffering, for punitive damage, for costs of suit, attorney fees, and for such other relief as the Court finds equitable and just.

## SECOND COUNT

### (Negligence)

116.    Plaintiff repeats and re-alleges all of his allegations above and below.

117.    The Defendants had a duty to take reasonable steps to protect Plaintiff from foreseeable harm when he was in their care, custody, and control, including when he was a paying member of their Boy Scout Troop and when he was participarting in their Scouting activities.

118.    The LDS Defendants had a duty to take reasonable steps to protect Plaintiff from foreseeable harm when he was in its care, custody, and control, including when he was a congregant of Mooretown LDS and when he was participarting in their youth activities.

119.    The Defendants also had a duty to take reasonable steps to prevent Borg from using the tasks, premises, and instrumentalities of his position as their Scout leader and volunteer to target, groom, and sexually abuse children, including Plaintiff.

120.    The LDS Defendants also had a duty to take reasonable steps to prevent Borg from using the tasks, premises, and instrumentalities of his positions as its Young Men's President, Scout leader, and volunteer to target, groom, and sexually abuse children, including Plaintiff.

121.    The Defendants had a duty to warn, train, or educate their Scout leaders, adult volunteers, and youth members, including Plaintiff, about the danger of sexual abuse by Scout leaders and volunteers who were involved in their Scouting program and how to avoid or minimize such danger.

397171

122.    The LDS Defendants had a duty to warn, train, or educate their Young Men's Presidents, Scout leaders, adult volunteers, and youth members, including Plaintiff, about the danger of sexual abuse by Young Men's Presidents, Scout leaders, and volunteers who were involved in Moorestown LDS' youth programs and activities, and how to avoid or minimize such danger.

123.    The Defendants breached each of the foregoing duties by failing to exercise reasonable care to prevent their Scout leader and volunteer, Borg, from harming Plaintiff, including sexually abusing him.

124.    The LDS Defendants breached each of the foregoing duties by failing to exercise reasonable care to prevent their Young Men's President, Scout leader and volunteer, Borg, from harming Plaintiff, including sexually abusing him.

125.    In breaching their duties, including hiring, retaining, and failing to supervise Borg; giving him access to children; entrusting their tasks, premises, and instrumentalities to him; failing to train their personnel in the signs of sexual predation and in how to protect children from sexual abuse and other harm; failing to warn Plaintiff, his parents, and other parents of the danger of sexual abuse; and failing to create a safe and secure environment for Plaintiff and other children who were under their supervision and in their care, custody, and control, the Defendants created a foreseeable risk that Plaintiff would be sexually abused by Borg.

126.    As a direct and proximate result of the acts and omissions of the Defendants, their Scout leader and volunteer, Borg, groomed and sexually abused Plaintiff, which has caused Plaintiff to suffer general and special damages as more fully described herein.

397171

127.    As a direct and proximate result of the acts and omissions of the LDS Defendants, their Young Men's President, Scout leader and volunteer, Borg, groomed and sexually abused Plaintiff, which has caused Plaintiff to suffer general and special damages as more fully described herein.

**WHEREFORE**, Plaintiff demands judgment against the Defendants for damages in an amount sufficient to compensate him for his compensatory damages, for both physical and emotional pain and suffering, for punitive damage, for costs of suit, attorney fees, and for such other relief as the Court finds equitable and just.

### THIRD COUNT

#### (Negligent Infliction of Emotional Distress)

128.    Plaintiff repeats the allegations above as if set forth fully herein.

129.    In committing the acts described above, the Defendants and Borg acted recklessly in deliberate disregard of the high degree of probability of the emotional distress that Plaintiff would suffer.

130.    The conduct of each Defendant and Borg was so outrageous and extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

131.    At all relevant times Borg was an employee or agent of the Defendants acting within the scope of his employment or agency.  As such, the Defendants are vicariously liable for the torts committed by Borg under the doctrine of *respondeat superior*.

132.    In addition, the Defendants are directly liable based on their own reckless, extreme, and outrageous conduct by providing Borg with access to children, including Plaintiff, despite

397171

knowing that he would likely use his position to groom and to sexually abuse them, including Plaintiff. Their misconduct was so shocking and outrageous that it exceeds the reasonable bounds of decency as measured by what the average member of the community would tolerate and demonstrates an utter disregard by them of the consequences that would follow.

133. The Defendants engaged in reckless, extreme, and outrageous conduct by representing to Plaintiff and his family that Borg was safe and trustworthy, and that all of their Scout leaders, employees, and volunteers were safe and trustworthy, despite the fact that these Defendants knew that sexual predators, like Borg, were using their positions in the program to groom and to sexually abuse children. Their misconduct was so shocking and outrageous that it exceeds the reasonable bounds of decency as measured by what the average member of the community would tolerate and demonstrates an utter disregard by them of the consequences that would follow. As a result of this reckless, extreme, and outrageous conduct, Borg used his position with the Defendants to gain access to Plaintiff and to sexually abuse him.

134. The LDS Defendants engaged in reckless, extreme, and outrageous conduct by representing to Plaintiff and his family that Borg was safe and trustworthy, and that all of their Young Men's Presidents, Scout leaders, employees, and volunteers were safe and trustworthy, despite the fact that these LDS Defendants knew that sexual predators, like Borg, were using their positions in LDS churches to groom and to sexually abuse children. Their misconduct was so shocking and outrageous that it exceeds the reasonable bounds of decency as measured by what the average member of the community would tolerate and demonstrates an utter disregard by them of the consequences that would follow. As a result of this reckless, extreme, and outrageous

397171

Case 20-10343-LSS    Doc 9481-1    Filed 03/24/22    Page 33 of 40

BUR-L-002344-21    11/10/2021 12:56:57 PM  Pg 26 of 30 Trans ID: LCV20212621460
Case 20-10343-LSS    Doc 8833    Filed 02/15/22    Page 32 of 39

conduct, Borg used his positions with the LDS Defendants to gain access to Plaintiff and to sexually abuse him.

135.    The Defendants knew that the foregoing reckless, extreme, and outrageous conduct would inflict severe emotional and psychological distress, including personal physical injury, on others, and Plaintiff did in fact suffer severe emotional and psychological distress and personal physical injury as a result, including severe mental anguish, humiliation and emotional and physical distress.

136.    The conduct of each Defendant was reckless and outrageous as it pertains to the oversight, knowledge and/or acquiescence of the sexual abuse of Plaintiff and other children by Borg while within the scope of his employment with the Defendants and the services he provided to the Defendants.

137.    As a direct and proximate result of the negligent, reckless, and outrageous actions of the Defendants, Plaintiff suffered and will continue to suffer physically, emotionally, and otherwise.

**WHEREFORE**, Plaintiff demands judgment against the Defendants for damages in an amount sufficient to compensate him for his compensatory damages, for both physical and emotional pain and suffering, for punitive damage, for costs of suit, attorney fees and for such other relief as the Court finds equitable and just.

<u>**FOURTH COUNT**</u>

**(Sexual Abuse and Battery)**

138.    Plaintiff repeats the allegations above as if set forth fully herein.

397171

139.    Each instance of Borg's sexual misconduct and inappropriate physical contact with Plaintiff constitutes battery.

140.    The Defendants, by their intentional and/or reckless acts, omissions, negligence, knowing and willful failure to act affirmatively to prevent, detect, report, or investigate, thereby aided and abetted Borg in his abuse of Plaintiff.

141.    Defendants ratified or approved Borg's molestation of Plaintiff and/or other minors by, among other things, continuing to employ Borg after learning or having reason to know of Borg's molestation of Plaintiff and/or other minors; declining to contact law enforcement about Borg's molestation of Plaintiff and/or other minors; covering up Borg's acts, and protecting him from detection or punishment; withholding information from Plaintiff and/or other minors while allowing Borg continued access and a position of trust; and/or destroying documents regarding Borg's molestation of Plaintiff and/or other children.

**WHEREFORE**, Plaintiff demands judgment against the Defendants for damages in an amount sufficient to compensate him for his compensatory damages, for both physical and emotional pain and suffering, for punitive damages, for costs of suit, attorney fees, and for such other relief as the Court finds equitable and just.

### FIFTH COUNT

**(Punitive Damages)**

142.    Plaintiff repeats the allegations above as if set forth fully herein.

143.    The acts and omissions by each Defendant constitute a wanton and willful disregard of the safety of members of the general public and minors in the care of each Defendant, including Plaintiff.

397171

Case 20-10343-LSS    Doc 9481-1    Filed 03/24/22    Page 35 of 40

BUR-L-002344-21   11/10/2021 12:56:57 PM  Pg 28 of 30 Trans ID: LCV20212621460
Case 20-10343-LSS    Doc 8833    Filed 02/15/22    Page 34 of 39

144.    Plaintiff was a person who would foreseeably be harmed by such acts and omissions.

145.    Plaintiff seeks damages pursuant to N.J.S.A. 2A:15-5.9, et seq., Punitive Damages Act.

**WHEREFORE,** Plaintiff demands judgment against the Defendants herein for punitive damages, together with interest and costs of suit and other remedies.

### SIXTH COUNT

### (John Does 1-10)

146.    Plaintiff repeats the allegations above as if set forth fully herein.

147.    Defendants, John Does 1-10, are fictitious names intended to represent additional persons or legal entities that may have caused the damages referred to in the preceding paragraphs through their negligent, intentional, and/or outrageous acts, and/or who are otherwise vicariously liable for the wrongful conduct of the named Defendants.  These "John Doe" Defendants cannot be identified at this time but may be identified through the course of discovery.

148.    As a direct and proximate result of the acts and omissions of each Defendant, including Defendants John Doe 1-10, Plaintiff suffered and will continue to suffer physically, emotionally, and otherwise.

**WHEREFORE**, Plaintiff demands judgment against the Defendants herein for damages in an amount sufficient to compensate him for his injuries together with interest and costs of suit and other remedies.

### JURY DEMAND

397171

Please be advised that the above-captioned Plaintiff hereby demands a trial by jury on all issues so triable.

## TRIAL COUNSEL DESIGNATION

Pursuant to Rule 4:25-4, **Mary Elizabeth Putnick, Esq.,** has been designated as trial counsel on behalf of the Plaintiff in the above-captioned matter.

## REQUEST FOR ANSWERS TO INTERROGATORIES

PLEASE TAKE FURTHER NOTICE that a demand is made of the Defendants to provide answers to Form C Interrogatories within the time prescribed by the Rules of Court.

## DEMAND FOR INSURANCE INFORMATION

PURSUANT to Rule 4:10-2(b), demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment.

( ) Yes ( ) No

If the answer is "yes", attach a copy of each or in the alternative, state under oath or certification:

(a)    policy number;

(b)    name and address of insurer or issuer;

(c)    the inception and expiration dates;

(d)    names and addresses of all persons insured thereunder;

(e)    personal injury limits;

(f)    property damage limits;

397171

Case 20-10343-LSS    Doc 9481-1    Filed 03/24/22    Page 37 of 40

BUR-L-002344-21   11/10/2021 12:56:57 PM  Pg 30 of 30 Trans ID: LCV20212621460
Case 20-10343-LSS    Doc 8833    Filed 02/15/22    Page 36 of 39

(g)     medical payment limits;

(h)     name and address of person who has custody and possession thereof;

(I)     where and when each policy and agreement can be inspected and copied;

(j)     whether any Reservation of Rights has been asserted by the carrier and if so, attach a copy of any such reservation.

## CERTIFICATION

1.     Pursuant to Rule 4:5-1, the undersigned hereby certifies that at the time of filing of this pleading, the matter in controversy is not the subject of any other action pending in any Court and/or Arbitration proceeding.

2.     I also understand that at this time there are no other parties to my knowledge, that should be named in this lawsuit.

3.     I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  November 10, 2021

Respectfully Yours,


AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
Attorneys for Plaintiff


By Mary Elizabeth Putnick
   MARY ELIZABETH PUTNICK

397171

# Civil Case Information Statement
## (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed**

| For Use by Clerk's Office Only |
| --- |
| Payment type:  ☐ ck  ☐ cg  ☐ ca |
| Chg/Ck Number: |
| Amount: |
| Overpayment: |
| Batch Number: |

| Attorney/Pro Se Name | Telephone Number | County of Venue |
| --- | --- | --- |
| Mary Elizabeth Putnick | (850) 202-1010 | Burlington |

| Firm Name (if applicable) | Docket Number (when available) |
| --- | --- |
| Putnick Legal, LLC, Of Counsel to Aylstock Witkin Kreis & Overholtz, PLLC | |

| Office Address | Document Type |
| --- | --- |
| 17 East Main Street, Suite 200<br>Pensacola, FL 32502 | |
| | Jury Demand   ☒ Yes   ☐ No |

| Name of Party (e.g., John Doe, Plaintiff) | Caption |
| --- | --- |
| AWKO DOE 2, Plaintiff | AWKO DOE 2 v. GARDEN STATE COUNCIL, INC., et al. |

| Case Type Number<br>(See reverse side for listing)<br><br>699 | Are sexual abuse claims alleged?<br><br>☒ Yes   ☐ No | Is this a professional malpractice case?   ☐ Yes   ☒ No<br><br>If you have checked "Yes," see *N.J.S.A.* 2A:53A-27 and applicable case law regarding your obligation to file an affidavit of merit. |
| --- | --- | --- |

| Related Cases Pending?<br>☐ Yes   ☒ No | If "Yes," list docket numbers<br>BSA |
| --- | --- |

| Do you anticipate adding any parties<br>(arising out of same transaction or occurrence)?<br>☐ Yes   ☒ No | Name of defendant's primary insurance company (if known)<br><br>☐ None<br>☒ Unknown |
| --- | --- |

| **The Information Provided on This Form Cannot be Introduced into Evidence.** |
| --- |

Case Characteristics for Purposes of Determining if Case is Appropriate for Mediation

| Do parties have a current, past or recurrent relationship?<br>☒ Yes   ☐ No | If "Yes," is that relationship:<br>☐ Employer/Employee   ☐ Friend/Neighbor   ☒ Other (explain)<br>☐ Familial   ☐ Business   BSA, church, schools |
| --- | --- |

| Does the statute governing this case provide for payment of fees by the losing party?   ☐ Yes   ☐ No |
| --- |

| Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition |
| --- |
| |

| Do you or your client need any disability accommodations?<br>☐ Yes   ☒ No | If yes, please identify the requested accommodation: |
| --- | --- |
| Will an interpreter be needed?<br>☐ Yes   ☒ No | If yes, for what language? |

**I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).**

| Attorney Signature: | *[signature]* |
| --- | --- |

BUR-L-002344-21   11/10/2021 12:56:57 PM  Pg 2 of 2 Trans ID: LCV20212621460



**Side 2**

# Civil Case Information Statement
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

### Track I - 150 days discovery

| | | | |
|---|---|---|---|
| 151 | Name Change | 506 | PIP Coverage |
| 175 | Forfeiture | 510 | UM or UIM Claim (coverage issues only) |
| 302 | Tenancy | 511 | Action on Negotiable Instrument |
| 399 | Real Property (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) | 512 | Lemon Law |
| | | 801 | Summary Action |
| 502 | Book Account (debt collection matters only) | 802 | Open Public Records Act (summary action) |
| 505 | Other Insurance Claim (including declaratory judgment actions) | 999 | Other (briefly describe nature of action) |

### Track II - 300 days discovery

| | | | |
|---|---|---|---|
| 305 | Construction | 603Y | Auto Negligence – Personal Injury (verbal threshold) |
| 509 | Employment (other than Conscientious Employees Protection Act (CEPA) or Law Against Discrimination (LAD)) | 605 | Personal Injury |
| | | 610 | Auto Negligence – Property Damage |
| 599 | Contract/Commercial Transaction | 621 | UM or UIM Claim (includes bodily injury) |
| 603N | Auto Negligence – Personal Injury (non-verbal threshold) | 699 | Tort – Other |

### Track III - 450 days discovery

| | | | |
|---|---|---|---|
| 005 | Civil Rights | 608 | Toxic Tort |
| 301 | Condemnation | 609 | Defamation |
| 602 | Assault and Battery | 616 | Whistleblower / Conscientious Employee Protection Act (CEPA) Cases |
| 604 | Medical Malpractice | | |
| 606 | Product Liability | 617 | Inverse Condemnation |
| 607 | Professional Malpractice | 618 | Law Against Discrimination (LAD) Cases |

### Track IV - Active Case Management by Individual Judge / 450 days discovery

| | | | |
|---|---|---|---|
| 156 | Environmental/Environmental Coverage Litigation | 514 | Insurance Fraud |
| 303 | Mt. Laurel | 620 | False Claims Act |
| 508 | Complex Commercial | 701 | Actions in Lieu of Prerogative Writs |
| 513 | Complex Construction | | |

### Multicounty Litigation (Track IV)

| | | | |
|---|---|---|---|
| 271 | Accutane/Isotretinoin | 601 | Asbestos |
| 274 | Risperdal/Seroquel/Zyprexa | 623 | Propecia |
| 281 | Bristol-Myers Squibb Environmental | 624 | Stryker LFIT CoCr V40 Femoral Heads |
| 282 | Fosamax | 625 | Firefighter Hearing Loss Litigation |
| 285 | Stryker Trident Hip Implants | 626 | Abilify |
| 286 | Levaquin | 627 | Physiomesh Flexible Composite Mesh |
| 289 | Reglan | 628 | Taxotere/Docetaxel |
| 291 | Pelvic Mesh/Gynecare | 629 | Zostavax |
| 292 | Pelvic Mesh/Bard | 630 | Proceed Mesh/Patch |
| 293 | DePuy ASR Hip Implant Litigation | 631 | Proton-Pump Inhibitors |
| 295 | AlloDerm Regenerative Tissue Matrix | 632 | HealthPlus Surgery Center |
| 296 | Stryker Rejuvenate/ABG II Modular Hip Stem Components | 633 | Prolene Hernia System Mesh |
| 297 | Mirena Contraceptive Device | 634 | Allergan Biocell Textured Breast Implants |
| 299 | Olmesartan Medoxomil Medications/Benicar | | |
| 300 | Talc-Based Body Powders | | |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics.

Please check off each applicable category ☐ Putative Class Action        ☐ Title 59        ☐ Consumer Fraud

# Civil Case Information Statement

**Case Details: BURLINGTON | Civil Part Docket# L-002344-21**

**Case Caption:** DOE 2 AWKO  VS GARDEN STATE COUNCIL  INC

**Case Initiation Date:** 11/10/2021

**Attorney Name:** MARY ELIZABETH PUTNICK

**Firm Name:** PUTNICK LEGAL LLC

**Address:** PO BOX 797

SEWELL NJ 08080

**Phone:** 2157154119

**Name of Party:** PLAINTIFF : DOE 2, AWKO

**Name of Defendant's Primary Insurance Company**

(if known): None

**Case Type:** TORT-OTHER

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** YES

**If yes, list docket numbers:** Boy Scouts of America

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Are sexual abuse claims alleged by:** AWKO DOE 2? YES
**Plaintiff's date of birth:** 07/06/1968
**Est. date of first incident of abuse:** 01/01/1984

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
        **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
        **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** YES

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

11/10/2021                                                          /s/ MARY ELIZABETH PUTNICK
Dated                                                                          Signed