**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC<br><br>Debtors | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

**BENCH MEMO IN SUPPORT OF ADMISSION OF
SEPTEMBER 22, 2021 AND DECEMBER 21, 2021 HEARING
TRANSCRIPTS (JTX-1-494 AND JTX-1-509,)
UNDER FED. R. BANKR. P 5007(C)**

In the course of the examination of James Patton, FCR, on March 23, 2022, Mr. Patton testified about statements made by Century, Hartford and other insurers at hearings about the necessity of full releases for Scouting abuse claims being available in order for them to settle.[1] Century submits this bench memorandum in support of the admission into evidence of the transcript of the September 22, 2021, (JTX-1-494), and December 21, 2021, (JTX-1-509), hearing both of which occurred before Century executed its settlement agreement with the BSA and FCR in February 2022.

Transcripts of hearings are "admissible as prima facie evidence to establish the record." *See* Fed. R. Bankr. P. 5007(c)("ADMISSIBILITY OF RECORD IN EVIDENCE. A certified sound

---

[1] *See* Mar. 23, 2022 Hr'g Tr. at 65:21-66:1; 69:19-70:11; 71:20-72:11; 137:4-25, 179:9-19 (" Q. Did you hear with your own ears Mr. Anker's presentation that day and that he said that anyone who thinks that insurers are going to pay hundreds of millions of dollars without obtaining complete peace for claims related to Scouting is not living in the real word? You heard him say that; right? A. That certainly sounds familiar. Q. It certainly sounds like Mr. Anker, doesn't it? A. It sounds like Mr. Anker.") 202:7-21 ("Q. But, Mr. Patton, do you recall whether there were statements made at the disclosure statement hearing in September by Century about the necessity for receiving release -- full releases in order to provide funding under the plan? A. I believe you did make that point at the disclosure statement hearing. Q. And were those statements consistent with the statements that you heard during the – in connection with trying to reach a settlement with Century? A. Yes. It's consistent with almost every negotiation I've had with an insurer in a mass tort case.").

recording or a transcript of a proceeding shall be admissible as prima facie evidence to establish the record."). Courts routinely rely on statements made by counsel on the record, as reflected in hearing transcripts. For example, in *In re Sillerman*, No. 17-13633 (MKV), 605 B.R. 631, 647 (Bankr. S.D.N.Y. Oct. 8, 2019), the court held that "[t]here is ample evidence in this case that the Debtor is conflicted" in part because "Debtor's counsel has similarly conceded the Debtor's conflict of interest." *Id.* at 647 (citing "January 10, 2019 Hearing Transcript, ECF No. 258, at 41 ('[Debtor's Counsel]: 'And the Debtor is conflicted, frankly, from pursuing much of that [avoidance actions] in light of where the transfer went.')."). Similarly, in *Krakowski v. Am. Airlines, Inc. (In re AMR Corp.)*, No. 11-15463 (SHL), 2014 Bankr. LEXIS 2610 * (Bankr. S.D.N.Y. June 3, 2014), the court relied on statements made by plaintiffs' counsel in a prior hearing for purposes of identifying plaintiffs' position. *Id.* at *14 (citing hearing transcript).

The statements, as reflected in the quoted passages of the September 22 and December 21 hearing transcripts that appear below, are evidence of the statements themselves as well as the position taken by Century and the other insurers during the hearings. Century offers these statements as evidence that these statements were made and not for the true of the matter asserted.

**JTX-1-494, SEPT. 22, 2021 HEARING TRANSCRIPT**

- **Tancred Schiavoni (Century):** "And by the way, it also just creates, you know, *a complete inability to resolve the case if nobody can be given a release here because all the claims can re-morph themselves back through, you know, the charters* coming in because you understand like what fundamentally is happening here is, for each and every claim, you know, the assertion is that somehow, you know, all three of them are involved in the claim." JTX-1-494, Sept. 22, 2021 Hr'g Tr. at 15:7–13.

- **Tancred Schiavoni (Century):** "So that if the -- it's one of the reasons, Judge, in connection with the RSA you got extensive briefing from us all about how the RSA was like essentially delivering illusory relief. So the Boy Scouts -- so *you have a claim where a charter is involved, the local council is involved, and the*

- ***Boy Scouts.  And the -- you know, if you only release one of them and not the other two, the whole claim gets re-pled into one or the other of them here*****.**"  JTX-1-494, Sept. 22, 2021 Hr'g Tr. at 15:14–21.

- **Tancred Schiavoni (Century):** "***So it's an essential provision of the whole plan that needs to be addressed and needs to be more robustly described.***  And this element that's missing entirely, the suggestion that this is really driven by, you know, what the coverage program is, is completely inconsistent with everything we've heard up until, you know, this hearing."  JTX-1-494, Sept. 22, 2021 Hr'g Tr. at 15:22–16:2 (emphasis added).

- **Michael Rosenthal (AIG):** "I also believe, Your Honor, that we should be discussing an additional disclosure, which is -- my client, for example, if we were to settle, if we were to decide to settle, we would want -- as Mr. Schiavoni said, ***we would want a full and complete release of all of our BSA-related obligations, which might predate 1976***. […] there should be some kind of disclosure, so that we wouldn't have to resolicit for that reason; ***some kind of disclosure that some of the insurers may, in fact, want or demand in any settlement, a full release of their chartered organization exposure related to BSA, which is, as Mr. Schiavoni said, what Hartford has also requested***."  JTX-1-494, Sept. 22, 2021 Hr'g Tr. at 18:19–19:6 (emphasis added).

**JTX-1-509, DEC. 21, 2021 HEARING TRANSCRIPT.**

- **Tancred Schiavoni (Century):** "The notion of a Boy Scouts-only restructuring is just a shorthand for liquidation.  There's no way -- just read Mr. Ryan's expert report that he put in for the Methodists and sort of being the fundamental, you know, real brains behind the settlement that we got done here, it's essential.  And that shows up in the original local council settlement conditions their payment on a satisfactory resolution of the charter issue."  JTX-1-509, Dec. 21, 2021 Hr'g Tr. at 86:1–8.

- **Tancred Schiavoni (Century):** "The Hartford settlement has a most-favored-nation clause, but it was also conditioned on a satisfactory resolution of the charter issue.  ***And, for us, it was essential.  There's no way people are going to make a payment only to be sued all over again.***  Your Honor had extensive briefing from us in connection with the RSA about illusory nature of releases.  ***Having that was key***.  And Mr. Ryan worked with us on that to get us that release in connection with the Methodists."  JTX-1-509, Dec. 21, 2021 Hr'g Tr. at 86:9–17 (emphasis added).

- **Tancred Schiavoni (Century):** "There is no bankruptcy; ***this is absolutely integral to the whole bankruptcy getting this -- getting the charters released.***"  JTX-1-509, Dec. 21, 2021 Hr'g Tr. at 88:10–12 (emphasis added).

- **Philip Anker (Hartford):** "But the basic proposition that *there was going to have to be peace with insurance -- with chartered organizations or some carve-out for one or two, before insurance companies were going to pay hundreds of millions of dollars is both, common sense and is something that has always been part of this plan.*" JTX-1-509, Dec. 21, 2021 Hr'g Tr. at 73:10–14 (emphasis added).

In accord with the Court's instructions on March 23, 2022, Century provided Lujan & Wolf LLP, and counsel for the Guam committee, with copies of transcripts of the September 22, 2021, (JTX-1-494), and December 21, 2021, (JTX1-1-509), hearing on or before March 24 and asked that they consent to the admission of these transcripts into evidence. Century also provided the Debtors, TCC, Coalition and FCR with copies of the transcripts.

A meet and confer call took place at 1:30 pm EST on March 25, 2022, that was attended by Christina Arnone and Ed Caldie counsel for the Guam Diocese TCC. It is Century's understanding following this discussion that the Guam Diocese TCC does not object to the admission into evidence of these statements for the fact that they were made at the September 22 and December 21 hearings but reserves the right to object to the entry of the entire transcript into evidence. Century contends that the Court ought to have the transcripts in their entirety so it can assess the cited excerpts in context as it chooses.

WHEREFORE, pursuant to Fed. R. Bankr. P. 5007(c), Century moves that the Court to admit JTX-1-494 and JTX-1-509 into evidence and the Court take notice of the quoted passages above: JTX-1-494, Sept. 22, 2021 Hr'g Tr. at 15:7–13; JTX-1-494, Sept. 22, 2021 Hr'g Tr. at 15:14–21; JTX-1-494, Sept. 22, 2021 Hr'g Tr. at 15:22–16:2; JTX-1-494, Sept. 22, 2021 Hr'g Tr. at 18:19–19:6 ; JTX-1-509, Dec. 21, 2021 Hr'g Tr. at 86:1–8; JTX-1-509, Dec. 21, 2021 Hr'g Tr. at 86:9–17; JTX-1-509, Dec. 21, 2021 Hr'g Tr. at 88:10–12; JTX-1-509, Dec. 21, 2021 Hr'g Tr. at 73:10–14.

Dated:  March 25, 2022 	Respectfully Submitted,

By: */s/ Stamatios Stamoulis*
 	Stamatios Stamoulis (#4606)

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware  19801
Telephone: 	302 999 1540
Facsimile: 	302 762 1688

O'MELVENY & MYERS LLP
Tancred Schiavoni (*pro hac vice*)
Daniel Shamah (*pro hac vice*)
Times Square Tower
7 Times Square
New York, New York  10036-6537
Telephone: 	212 326 2000
Facsimile: 	212 326 2061

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America*

OMM_US:80543214.2