**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF TANCRED SCHIAVONI IN SUPPORT OF THE SETTLING INSURERS' STATEMENT IN SUPPORT OF ADMISSION OF THE DECLARATION OF BRIAN WHITTMAN**

I, **TANCRED SCHIAVONI**, declare as follows:

1.      I am an partner at the firm O'Melveny & Myers LLP.  I submit this declaration based on my knowledge of the proceedings in the Boy Scouts of America bankruptcy and review of the documents, in support of *The Settling Insurers' Statement in Support of Admission of the Declaration of Brian Whittman*.

2.      Attached hereto as **Exhibit A** is a true and correct copy of the March 9, 2022 Deposition of Devang Desai Transcript.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 25th day of March 2022 in New York, New York.


/s/ Tancred Schiavoni
Tancred Schiavoni


STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware 19801
Telephone: 302 999 1540
Facsimile:  302 762 1688

O'MELVENY & MYERS LLP
Tancred Schiavoni (*pro hac vice*)
Daniel Shamah (*pro hac vice*)
Times Square Tower
7 Times Square
New York, New York 10036-6537
Telephone: 212 326 2000
Facsimile:  212 326 2061

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America*

# EXHIBIT A



*Confidential*

Transcript of the Testimony of

**DEVANG DESAI**

March 09, 2022

**IN RE BOY SCOUTS AND DELAWARE BSA**

Reliable Court Reporting

Phone – 215-563-3363

Fax – 215-563-8839

www.reliable-co.com

1   IN THE UNITED STATES BANKRUPTCY COURT
    FOR THE DISTRICT OF DELAWARE
2

3                           CASE NO. 20-10343 (LSS)

4                           (Jointly Administered)

5   IN RE: CHAPTER 11
    BOY SCOUTS OF AMERICA AND
6   DELAWARE BSA, LLC,

7           Debtors.
    _____
8

9                  ***CONFIDENTIAL***

10

11       Remote videotaped deposition of DEVANG DESAI,

12   held via videoconference on Wednesday, March 9, 2022,

13   beginning at approximately 9:30 a.m. Eastern Time,

14   the proceedings being recorded stenographically by

15   Jennifer L. Wielage, Certified Realtime Reporter,

16   Certified Court Reporter-NJ, and transcribed under

17   her direction.

18

19

20

21

22                              **ORIGINAL**

23

24

25

IN RE BOY SCOUTS AND DELAWARE BSA

```
 1    A P P E A R A N C E S:

 2    MORRIS, NICHOLS, ARSHT & TUNNELL
      1201 North Market Street, 18th Floor
 3    Wilmington, Delaware 19899-1347
      BY:  SOPHIE ROGERS CHURCHILL, ESQ.
 4    srchurchill@morrisnichols.com
      Attorneys for the Debtor
 5
      --and--
 6
      WHITE & CASE, LLP
 7    1221 Avenue of the Americas
      New York, New York 10020
 8    BY: MICHAEL ANDOLINA, ESQ.
      mandolina@whitecase.com
 9    BY:  MICHAEL JAOUDE, ESQ.
      Mjaoude@whitecase.com
10    Attorneys for Boy Scouts of America

11
      NORTON ROSE FULBRIGHT US LLP
12    2200 Ross Avenue
      Suite 3600
13    Dallas, Texas 75201-7932
      BY:  MICHAEL BERTHIAUME, ESQ.
14    mberthiaume@nortonrose.com
      Attorneys for J.P. Morgan Chase Bank, N.A.
15
      CROWELL & MORING LLP
16    590 Madison Ave Floor 20
      New York, New York 10022
17    (212) 223-4000
      BY:  TACIE YOON, ESQ.
18    tyoon@crowell.com
      Attorneys for Zurich Insurance Company
19

20    COZEN O'CONNOR
      1201 Market Street, Suite 1001
21    Wilmington, Delaware 19801
      (302) 295-2000
22    BY:  MARLA BENEDEK, ESQ.
      mbenedek@cozen.com
23    Attorneys for Endurance

24

25
```

Page 3

```
 1    A P P E A R A N C E S:

 2    O'MELVENY
      Times Square Tower
 3    7 Times Square
      New York, New York 10036
 4    (212) 326-2000
      BY:  TANCRED SCHIAVONI, ESQ.
 5    tschiavoni@omm.com
      Attorneys for Century

 6


 7    ARENT FOX SCHIFF
      233 South Wacker Drive
 8    Suite 7100
      Chicago, IL 60606 USA
 9    (312) 258-5500
      BY:  NEIL LLOYD, ESQ.
10    nlloyd@afslaw.com
      Attorneys for Roman Catholic Ad Hoc Committee

11
      POST & SCHELL, P.C.
12    100 Overlook Center
      Suite 200
13    Princeton, NJ 08540
      (609) 924-3333
14    BY: KATHLEEN KERNS, ESQ.
      kkerns@postschell.com
15    Attorneys for Argonaut/Colony

16    YOUNG CONAWAY STARGATT & TAYLOR, LLP
      1000 N King Street
17    Wilmington, Delaware 19801
      (302) 571-6600
18    BY:  KEN ENOS, ESQ.
      kenos@ycst.com
19    Attorneys for Future Claimants Committee


20


21    PACHULSKI STANG ZIEHL & JONES
      780 3rd Avenue
22    34th Floor
      New York, New York 10017
23    (212) 561-7700
      BY:  JEFFREY L. SCHULMAN, ESQ.
24    jschulman@PasichLLP.com
      Attorneys for Tort Claimants Committee

25
```

Confidential
DEVANG DESAI

Page 4

```
 1     A P P E A R A N C E S:

 2
       SIMPSON THACHER & BARTLETT LLP
 3     3330 Hillview Avenue
       New York, New York 10017
 4     (650) 251-5000
       BY:  DAVID ELBAUM, ESQ.
 5     Attorneys for Federal Insurance Company and
       Westchester Fire Insurance Company
 6

 7     GIBSON DUNN & CRUTCHER, LLP
       200 Park Avenue
 8     New York, New York 10166-0193
       (212) 351-3804
 9     BY:  JAMES HALLOWELL, ESQ.
       jhallowell@gibsondunn.com
10     BY:  AMANDA GEORGE, ESQ.
       ageorge@gibsondunn.com
11     Attorneys for AIG

12     GIEGER, LABORDE & LAPEROUSE, LLC
       701 Poydras Street
13     Suite 4800
       New Orleans, Louisiana 70139
14     (504) 561-0400
       BY:  JOHN E.W. BAAY, II, ESQ.
15     jbaay@glllaw.com
       Attorneys for Gemini Insurance Co.
16

17     CHIPMAN BROWN CICERO & COLE, LLP
       1313 North Market Street
18     Suite 5400
       Wilmington, Delaware 19801
19     (646) 741-1431
       BY:  MARK DESGROSSEILLIERS, ESQ.
20     mdegross@chipmanbrown.com
       Attorneys for Survivor Jane Doe
21

22     MOUND COTTON WOLLAN & GREENGRASS LLP
       30A Vreeland Road Suite 210
23     Florham Park, NJ· 07932
       (973) 494-0603
24     BY:  PAMELA MINETTO, ESQ.
       pminetto@moundcotton.com
25     Attorneys for Indian Harbor Insurance Company
```

IN RE BOY SCOUTS AND DELAWARE BSA

```
 1    A P P E A R A N C E S:

 2    COZEN O'CONNOR
      1201 N Market Street
 3    Suite 1001, Wilmington, Delaware 19801
      (302) 295-2000
 4    BY:  MARLA BENEDEK, ESQ.
      mbenedek@cozen.com
 5    Attorneys for Traders and Pacific Insurance,
      Endurance America Abuse Claimants
 6


 7

      REGER RIZZO & DARNALL LLP
 8    1521 Concord Pike #305
      Wilmington, Delaware 19803
 9    (302) 477-7104
      BY:  MEGAN HALTER, ESQ.
10    mhalter@regerlaw.com
      Attorneys for Travelers
11


12


13    POTTER ANDERSON
      Hercules Plaza
14    1313 North Market Street, 6th Floor
      P.O. Box 951
15    Wilmington, Delaware 19801
      (302) 984.6000
16    BY:  JEREMY RYAN, ESQ.
      jryan@potteranderson.com
17    BY:  JESSE NOA, ESQ.
      jnoa@potteranderson.com
18    Attorneys for Roman Catholic Ad Hoc

19


20    LOEB & LOEB, LLP
      321 North Clark Street
21    Suite 2300
      Chicago, IL 60654
22    BY:  EMILY STONE, ESQ.
      estone@loeb.com
23    BY:  LAURA K. McNALLY, ESQ.
      lmcnally@loeb.com
24    Attorneys for CNA

25
```

Page 6

```
 1   A P P E A R A N C E S:

 2   ALVAREZ & MARSAL
     600 Madison Avenue
 3   New York, New York 10022
     (212) 759-4433
 4   BY:  RYAN WALSH, ESQ.
     Attorneys for BSA
 5

 6   KTBS LAW
     1801 Century Park East
 7   26th Floor
     Los Angeles, California
 8   BY:  SASHA M. GURVITZ, ESQ.
     sgurvitz@ktbs.com
 9   Attorneys for Pfau Cochran Vertesis Amala PLLC and
     Zalkin Law Firm, P.C

10

11

12
     ALSO PRESENT:  REBEKAH ROTHSTEIN, DOCUMENT
13   TECHNICIAN, CHRIS WEISS CALHOON, VIDEOGRAPHER, CHRIS
     MEIDL, DELIA LUJAN-WOLFF, Guam Bar Association
14

15

16

17

18

19

20

21

22

23

24

25
```

Page 7

```
 1                    I  N  D  E  X

 2

 3
          W I T N E S S
 4
       Testimony of:
 5

 6   DEVANG DESAI                         PAGE NO.

 7
       EXAMINATION BY MR. LLOYD:             9
 8     EXAMINATION BY MS.                  125
       LUJAN-WOLFF:
 9

10

11
                    E X H I B I T S
12

13     NUMBER              DESCRIPTION           PAGE

14
       Exhibit 1       Roman Catholic Ad Hoc      11
15                     Committee's 30(b)(6)
                       Notice to the Debtors
16     Exhibit 2       Debtors' Amended Notice    14
                       of Deposition
17     Exhibit 3       Century Term Sheet         19
       Exhibit 4       Notice of Filing of        68
18                     Debtors' Third Modified
                       Fifth Amended Chapter 11
19                     Plan of Reorganization
                       and Blackline Thereof
20     Exhibit 5       Hartford Settlement       110
       Exhibit 6       Zurich Insurance          114
21                     Settlement Agreement
       Exhibit 7       Clarendon Insurance       117
22                     Agreement
       Exhibit 8       Century/Chubb Settlement  119
23                     Agreement

24

25
```

```
 1              DEPOSITION SUPPORT INDEX
          DIRECTION TO WITNESS NOT TO ANSWER
 2
                    Page Line
 3
                    34    8
 4                  43    25
                    73    25
 5                  78    2
                    83    4
 6
      REQUEST FOR PRODUCTION OF DOCUMENTS
 7
                    Page  Line
 8

 9
                 STIPULATIONS
10

11                  Page   Line

12

13              QUESTION MARKED

14                  Page    Line

15

16

17

18

19

20

21

22

23

24

25
```

1                    THE VIDEOGRAPHER:  We are now

2    recording and on the record.

3                    My name is Chris Weiss-Calhoon,

4    certified legal videographer, retained by Reliable

5    Court Reporting.

6                    This is a video deposition in the

7    United States Bankruptcy Court for the District of

8    Delaware.

9                    Today's date is March 9th, of 2022.

10   The time on the monitor is 8:07 a.m. Eastern Time.

11   The deposition's being held virtually and we have a

12   document technician today, Rebekah Rothstein, in the

13   matter and -- we're here in the matter of In Re:  Boy

14   Scouts of America and Delaware BSA, LLC.

15                   The deponent is Devang Desai and the

16   attorneys will be on the stenographic record.

17                   The court reporter is Jennifer

18   Wielage and will now administer the oath.

19   DEVANG DESAI, having been first duly sworn according

20   to law, testifies as follows:

21   EXAMINATION BY MR. LLOYD:

22       Q.    Good morning, Mr. Desai.  My name is

23   Neil Lloyd, and I'll be taking the lead today.  I

24   don't think we've met before.

25       **A.    Yes, sir.  Good morning to you.**

IN RE BOY SCOUTS AND DELAWARE BSA

1        Q.        Good morning.  You're the same

2   individual who's testified several times in this

3   matter; is that correct?

4        **A.        I am, yes.**

5        Q.        So I'm not going to go over a lot of

6   different ground rules, but there's two things I'd

7   appreciate just getting out there before we get into

8   the substance.

9                   The first is, as we've all become

10  more familiar with Zoom, I have found that the

11  standard thing of, sort of anticipating questions and

12  anticipating answers, has become more fluid.  When we

13  were new to this technology a couple of years ago,

14  that was a little bit more challenging.

15                  So I want to say that I have seen

16  that sometimes I'm not completely sure when a witness

17  has finished an answer and so I'm going to try to

18  make sure that I don't talk over you.  If I do, I'm

19  not intending to, but we'll just try to make sure

20  that that's clear.

21                  The second is, because of the nature

22  of the deposition that the Court has granted us, and

23  based on the discussions we've had with the Debtors'

24  counsel, it is conceivable that in this deposition

25  with you today, there may be more than the normal, I

IN RE BOY SCOUTS AND DELAWARE BSA

1   would say, situation of objections, whether based on

2   mediation privilege, attorney-client privilege,

3   litigation work product.

4              And so, in the same vein, I'll ask my

5   question, maybe we just, you know, take a short

6   breath because Mr. Andolina will need to make his

7   record, give you whatever instructions he has, so

8   that we have a clear record for the Court.

9              And, of course, all the other rules

10  of the deposition apply:  If you need a break, if you

11  need anything else, we'll -- you know, you can do

12  that.

13             If you don't understand a question,

14  please, you know, I'm not interested in setting you

15  up, tricking you or anything like that.  We're just

16  trying to get information here and it's entirely

17  conceivable I'll ask a couple of bad questions in

18  this deposition and that's not intentional.

19             All right.  With that, if the

20  reporter would please put in the chat and mark as the

21  first exhibit, the Roman Catholic Ad Hoc Committee's

22  30(b)(6) Notice to the Debtors.

23             It's dated January 13, 2022.

24             (Exhibit 1, Roman Catholic Ad Hoc

25        Committee's 30(b)(6) Notice to the Debtors,

IN RE BOY SCOUTS AND DELAWARE BSA

1        was marked for Identification by the court

2        reporter.)

3   BY MR. LLOYD:

4        Q.      All right.  Mr. Desai, and if you

5   could please -- well, let's keep it at the first page

6   here.

7                Mr. Desai, I'm showing you a

8   four-page document.  This was -- it's filed at Docket

9   No. 8295, and it's the Roman Catholic Ad Hoc

10  Committee's Notice of Deposition to Boy Scouts of

11  America and Delaware BSA, LLC, the Debtors, in these

12  Chapter 11 cases.  And this was filed on January the

13  13th of 2022.

14               If we could please go to the third

15  page and under Deposition Topics, the first one

16  reads:  The treatment of Claims of Chartered

17  Organizations under the Plan and Trust Distribution

18  Procedures.

19               Do you see that, sir?

20  **A.      I do.**

21               MR. ANDOLINA:  Mr. Lloyd, apologies.

22  Before you continue, the document that I'm working

23  off of is a document that was served on us, I believe

24  yesterday, which is the Second Amended Notice of

25  Deposition.

IN RE BOY SCOUTS AND DELAWARE BSA

1              Is there a reason you're providing an

2   earlier version here?

3              MR. LLOYD:  There is, and I'll get

4   there and will be quick about it.

5              MR. ANDOLINA:  Okay.

6              MR. LLOYD:  All right.

7   BY MR. LLOYD:

8       Q.     So, Mr. Desai, are you being

9   designated by -- is it your understanding that you're

10  being designated by the Debtors today to testify

11  about this Topic 1, the treatment of claims of

12  Chartered Organizations under the Plan and Trust

13  Distribution Procedures?

14             MR. ANDOLINA:  Objection to form.

15  We're working off of, Mr. Lloyd, the Second Amended

16  Notice of Deposition and we've negotiated the topics

17  that Mr. Desai is going to be testifying about.  So I

18  don't know why you're asking about a prior deposition

19  notice that's been superseded.

20             MR. LLOYD:  It hasn't been superseded

21  and part of the negotiations were and the Court

22  specifically ordered a deposition on this topic and

23  I'm just making a record, Mr. Andolina.

24             If Mr. Desai is not the witness who's

25  going to be prepared to testify, I think he can

IN RE BOY SCOUTS AND DELAWARE BSA

1    answer the question and we can move on.

2    BY MR. LLOYD:

3           Q.       So do you understand the question,

4    sir?

5           **A.       I do understand the question.**

6           Q.       And are you the witness who's been

7    designated to testify about this topic today?

8           **A.       I have been.**

9           Q.       You can take that down and we can

10   move now to the Debtors' Amended Notice of

11   Deposition, which is dated March the 8, 2022.

12                   (Exhibit 2, Debtors' Amended Notice

13           of Deposition, was marked for Identification

14           by the court reporter.)

15                   THE REPORTER:  So this is 2?

16                   MR. LLOYD:  This is No. 2.  Thank

17   you.

18   BY MR. LLOYD:

19          Q.       Okay.  And Mr. Desai, I'm showing you

20   what has been marked as Exhibit 2.  This is the

21   Debtors' Notice of -- Second Amended Notice of the

22   30(b)(6) Deposition of the Debtors, the RCAHC's

23   Second Amended Notice of 30(b)(6) Deposition to the

24   Debtors.

25                   MR. LLOYD:  And if we could scroll,

IN RE BOY SCOUTS AND DELAWARE BSA

1   please, to Topic No. 10.  Two more pages, please.

2   There we go.  Right.  That's fine.

3   BY MR. LLOYD:

4        Q.       And Mr. Desai, Topic No. 10 reads:

5   The Debtors' understanding of and exercise of their

6   business judgment in agreeing to the following

7   paragraphs of the Century Term Sheet, 9, 10, 11, 13,

8   14 and 15, paren, as it relates to Chartered

9   Organizations, closed paren.

10               Do you see that, sir?

11       **A.       I do see it, yes.**

12       Q.       And I read that correctly?

13       **A.       You have read that correctly.**

14       Q.       And do you understand that you have

15   been designated by the Debtors today to testify about

16   Topic No. 10?

17               MR. ANDOLINA:  Objection to the form

18   of the question and before the witness answers,

19   pursuant to our negotiations and my discussion with

20   counsel, Mr. Desai will be testifying today on Topics

21   10, 11, 12, 13 and 14, with respect to the Debtors'

22   exercise of their business judgment.

23               We have informed the RCAHC that we

24   will produce a different witness, to the extent there

25   are questions that relate to the Debtors', quote,

Page 16

1    understanding with respect to those one, two, three,

2    four, five categories.

3              So the witness can answer but that's

4    what he's been prepared to testify on.

5         **A.     Yes.**

6    BY MR. LLOYD:

7         Q.     And subject to all appropriate

8    objections, you are prepared today to testify about

9    Topic No. 10?

10        **A.     I am.**

11        Q.     And just so the record is clear,

12   Mr. Andolina is correct, we were informed, about 7:45

13   eastern, that testimony would be limited to the

14   exercise of business judgment today and that a

15   separate witness on Friday would be testifying about

16   the Debtors' understanding.

17             Okay.  If we can move to Topic No.

18   11 -- we're still on Exhibit 2, please.  If we can

19   have that on the screen.  Thank you.

20             So that we don't have to belabor the

21   point, Mr. Desai, and I assume, given Mr. Andolina's

22   prior comment, what I'm going to do is limit my

23   question in terms of your preparation and your

24   designation for the next four that we go through,

25   that your testimony is limited to the exercise of

1  business judgment and it's not about the Debtors'

2  understanding.  All right?

3       A.       Fair enough.

4       Q.       Okay.  So I'm going to read the

5  question because that's going to just read it into

6  the record but we understand the limitation that

7  Counsel has made in his objection.

8                Okay.  So Topic 11 is the Debtors'

9  Understanding and Exercise of their Business

10 Judgment, including the following provisions of the

11 February 15, 2022 Plan, including all revisions to

12 prior versions of such provisions, Article I-A

13 Section 42, 45, 59, 86, 177, 184, 196, 215 and 269

14 and 294, Article IV-S, as in Sam, and W, as in water;

15 Article V, M, as in Mary and S, as in Sam, Article X,

16 D, as in David, F, as in Frank, G, as in George, H,

17 as in hot, J, as in jelly.  The Document Appendix as

18 it relates to Chartered Organizations and the Trust

19 Distribution Procedures (as it relates to Chartered

20 Organizations).

21                Do you see that, sir?

22      A.       I do.

23      Q.       And subject to the limitations that

24 your Counsel has put on the record, you're prepared

25 to testify today on those topics, in respect to the

1    exercise of the Debtors' Business Judgment?

**2**          **A.     I am.**

3          Q.     If you look at Topic 12, it reads:

4    The Debtors' understanding and exercise of their

5    business judgment in entering into the Hartford

6    Insurance Settlement Agreement as it relates to

7    Chartered Organizations, the Hartford Insurance Term

8    Sheet, as it relate is to the Chartered Organizations

9    and the Hartford Insurance Draft Agreement (as it

10   relates to Chartered Organizations).

11               Do you see that, sir?

**12**         **A.     Yes.**

13         Q.     And subject to the limitation that

14   your counsel has made, you're prepared today to

15   testify about the Debtors' exercise of their business

16   judgment in respect to Topic No. 12?

**17**         **A.     I am.**

18         Q.     We'll look at Topic No. 13.  It

19   reads:  The Debtors' understanding and exercise of

20   their business judgment in entering into the

21   Clarendon Insurance Settlement Agreement, as it

22   relates to the Chartered Organizations and the

23   Clarendon Insurance Settlement Term Sheet, as it

24   relates to Chartered Organizations.

25               Did I read that correctly, sir?

1        A.        Yes.

2        Q.        And again, subject to the limitation

3   that your counsel has put on the record, you're

4   prepared today to testify about the Debtors' exercise

5   of their business judgment in respect to Topic 13?

6        A.        I am.

7        Q.        I'm sorry.  I didn't hear your

8   answer.

9        A.        I am.

10       Q.        And finally, Topic 14 reads:  The

11   Debtors' understanding and exercise of their business

12   judgment in entering into the Zurich Insurance

13   Settlement Agreement as it relates to Chartered

14   Organizations and the Zurich Insurance Term Sheet as

15   it relates to Chartered Organizations.

16              Do you see that, sir?

17       A.        Yes.

18       Q.        And subject to the limitation your

19   counsel has put on the record, are you prepared to

20   testify today as to the exercise of the Debtors'

21   business judgment in respect to Topic No. 14?

22       A.        I am.

23              MR. LLOYD:  If can we please mark as

24   Exhibit 3, the Century Term Sheet.

25              (Exhibit 3, Century Term Sheet, was

IN RE BOY SCOUTS AND DELAWARE BSA

```
 1            marked for Identification by the court

 2            reporter.)

 3   BY MR. LLOYD:

 4            Q.      Just so you see -- to orient you,

 5   Mr. Desai, so this -- the Century Term Sheet was

 6   attached to a mediator's report and the -- so this

 7   document at the beginning says -- it has a document

 8   identification number of 7772.

 9                  We're going to scroll through,

10   although it says page 1 of 3, the Century Term Sheet

11   is an attachment.  So if we can scroll through,

12   please, a few pages.

13                  If we can just go back one page here

14   to this top exhibit where it says Exhibit A.  Okay.

15                  So Mr. Desai, you can see there's a

16   header at the top here and it's dated December 14,

17   2021.

18                  Are you with me?

19       A.      I am.

20       Q.      And it says Exhibit A, Century and

21   Chubb Companies Term Sheet.

22                  Do you see that, sir?

23       A.      Yes.

24       Q.      Okay.  If we can keep scrolling

25   through, please.
```

```
 1                    We are going to go to Paragraph 9.

 2  So this is a lengthy paragraph, but you've seen this

 3  before today; is that correct, sir?

 4        A.     I have, yes.

 5        Q.     Is it the Debtor's position that in

 6  agreeing to Paragraph 9, which is entitled:  Release

 7  of Settling Insurers in the Century Term Sheet,

 8  Debtors validly exercise their business judgment?

 9                    MR. ANDOLINA:  Objection to form.

10  You can answer.

11        A.     Yes, that is the Debtors' position.

12  BY MR. LLOYD:

13        Q.     Please explain why Debtors validly

14  exercise their business judgment in agreeing to

15  Paragraph 9 in this release of Settling Insurers in

16  the Century Term Sheet.

17        A.     While the negotiations were taking

18  place with various parties, including Century/Chubb,

19  counsel for the Debtors had provided several updates

20  to the Bankruptcy Task Force, along with the National

21  Executive Committee and the National Executive Board

22  of the Boy Scouts of America and in actively

23  providing us with real-time information, providing us

24  with the efforts that are being made to secure

25  agreements with various insurers prior to an upcoming
```

IN RE BOY SCOUTS AND DELAWARE BSA

1    plan filing deadline, and at this time, prior to a

2    deadline on the vote that was needed for survivors of

3    historical abuse, coupled with the various parameters

4    that the BSA, through the Bankruptcy Task Force, the

5    bankruptcy -- I'm sorry, the National Executive

6    Committee and the National Executive Board, our

7    counsel were instructed to continue to negotiate with

8    insurers like Century/Chubb in order to effectuate a

9    meaningful resolution that would allow for additional

10   dollars to be placed into the Settlement Trust to,

11   again, achieve one of the BSA's principal objectives,

12   which is to equitably compensate all the victims of

13   sexual abuse.

14        Q.     And are you, as you sit here today,

15   without getting into privileged communications with

16   your counsel, able to provide any additional

17   information about the information that the Bankruptcy

18   Task Force or the National Executive Committee

19   received as part of the exercise of the Debtors'

20   business judgment in agreeing to Paragraph 9?

21             MR. ANDOLINA:  Objection to form.

22        A.     On a very generic high level, without

23   getting into attorney-client related communications,

24   I can share with you that counsel for the Debtors

25   along with -- and when I say "counsel," I not only

1   mean bankruptcy counsel, but also insurance counsel

2   with Haynes and Boone along with other advisors that

3   the BSA has in this process.

4                    Furthermore, in consultation with the

5   Ad Hoc Committee on local councils headed up by

6   Mr. Mason, there were several conversations related

7   to various pros, cons, options as to what needed to

8   occur from a negotiation perspective in order to get

9   Century/Chubb to the table and how other non-settling

10  entities, such as certain Chartered Organizations

11  would be treated if they were not participating in

12  negotiations that were actively taking place at this

13  time, because as you will recall, at this juncture,

14  in December of 2021, the BSA, along with the

15  Coalition and the FCR had already effectuated a

16  resolution with the Hartford, but that resolution

17  contemplated the ability of the Debtor and other

18  settling parties to continue to work in good faith to

19  ensure adequate protection for various and, in fact,

20  all Chartered Organizations.

21                    So there were conversations related

22  to the interplay, if you will, of prior settlements,

23  the interplay and the need for continuing to

24  negotiate to secure additional dollars in order to

25  equitably compensate victims of abuse, how Chartered

IN RE BOY SCOUTS AND DELAWARE BSA

1   Orgs would be treated under this type of settlement

2   agreement and/or the terms of it that were being

3   negotiated, along with who would be a settling party

4   that would join in these discussions in order to

5   effectuate a formal settlement, what that would mean

6   to the overall timeline, if you will, for emergence

7   and/or a confirmation hearing for the BSA and how

8   this could continue to, like the Hartford Agreement,

9   serve as a building block for allowing other parties

10  to be a Settled Party.

11          Q.      If we could scroll to the next page,

12  please.

13              Mr. Desai, I'm showing you Paragraph

14  10 of Exhibit 3, which is a paragraph that carries

15  over on to the next page, but the heading here is:

16  Participating Chartered Organizations.

17              And are you familiar with this

18  paragraph of Exhibit 3 of the Century Term Sheet?

19      **A.      I am generally familiar with it, yes.**

20          Q.      Is it your understanding that

21  participating Chartered Organizations and Opt-Out

22  Chartered Organizations received different treatment

23  under the Century Term Sheet?

24              MR. ANDOLINA:  Objection to the form

25  as outside the scope of the 30(b)(6).  He can answer

IN RE BOY SCOUTS AND DELAWARE BSA

1    in his individual capacity.

2         A.    As I understand it, the definitions

3    associated with a participating Chartered

4    Organization versus an Opt-Out Chartered Organization

5    or a contributing charter organization are different

6    and our advisors did provide us with thorough

7    information, as well as certain presentations about

8    the various differences that Chartered Orgs,

9    depending on the label you attach, whether it's

10   participating, contributing or opt-out, would receive

11   under the plan.

12              And I also recall that Ms. Lauria

13   provided that kind of education information to the

14   Court at a hearing that I participated in via phone,

15   and I recall that there's also a PowerPoint

16   presentation that Ms. Lauria showed to the Court,

17   which helped illustrate the interim in which the

18   various Chartered Orgs would be treated depending on

19   their designation.

20        Q.    What contribution does a

21   participating Chartered Organization have to make to

22   receive the benefits in the Century Term Sheet?

23              MR. ANDOLINA:  Objection to form.

24   Same objection with respect to scope and I'll just

25   have that as an ongoing objection to questions that

1   are beyond the business limitation.

2        A.      A Participating Chartered

3   Organization is one by its very definition as

4   indicated in the document, that does not object to

5   the Debtors' plan of reorganization and, in so doing,

6   the Participating Chartered Organization would

7   receive a release, depending on what timeframe we're

8   talking about, for claims associated with sex abuse.

9               For example, claims associated on a

10  pre-'76 timeframe, the participating Chartered

11  Organization would receive a release as it pertained

12  to Settling Insurers for Abuse Claims only and for

13  post-'76, the participating Chartered Organization

14  would receive the benefit of the channeling

15  injunction, which would provide them with the

16  release.

17       Q.      If we look in Paragraph 10 toward the

18  bottom -- and we can read as much of this as you want

19  for context -- but if we look down toward the bottom,

20  there's Romanette i, about seven lines from the

21  bottom that begins:  Romanette i, each of the

22  Participating Chartered Organization's rights.

23               Do you see that?

24       A.      I do.

25       Q.      So I'm going to read that section

IN RE BOY SCOUTS AND DELAWARE BSA

1   again.  If there's more that you need for context,

2   we'll go back.

3              It says:  Each of the participating

4   Chartered Organization's rights, titles, privileges,

5   interests, claims, demands or entitlements under the

6   Settling Insurers' Policies and any other insurance

7   policy issued by the Settling Insurers with respect

8   to claims for causes of action involving abuse claims

9   concerning such coverage for Abuse Claims.

10             So -- and, you know, I'm going to

11  withdraw that question, Mr. Desai, and I apologize.

12  I'm going to try again.

13             If we go up a few more lines, it

14  says, starting "in addition."

15             Do you see where I'm reading there,

16  in the middle of the paragraph?

17       **A.      Bear with me one second.  I do, yes.**

18       Q.      It says:  In addition, in order to

19  obtain the benefit of 1, the Settling Insurer policy

20  injunction and 2, the full post-'75 injunction,

21  Participating Chartered Organizations shall be

22  required to make, or be deemed to make, the following

23  contribution to the Trust, defined term,

24  Participating Chartered Organization Settlement

25  Contribution, colon, A, the participating

```
 1   organization Insurance Assignment; B, to the extent

 2   of any rights, claims or interests not assigned to

 3   the TRUST pursuant to the Participating Chartered

 4   Organization Insurance Assignment, the waiver and

 5   complete release of, i, each of the Participating

 6   Chartered Organization's rights, titles, privileges,

 7   interests, claims, demands or entitlements under the

 8   Settling Insurers' Policies and any other insurance

 9   policy issued by the settling insurers with respect

10   to claims or causes of action involving abuse claims

11   concerning such coverage for abuse claims.

12              Do you see that sir?

13        A.    Yes, sir.

14        Q.    And I read that correctly?

15        A.    You have.

16        Q.    Okay.  So Romanette i, which we've

17   talked about, lists policies for that -- it says:

18   Settling Insurer policies.

19              Do you have an understanding that

20   those policies referred to policies of the BSA and

21   the local councils?

22              MR. SCHIAVONI:  Objection to form.

23              MR. ANDOLINA:  Same objection.  I'll

24   also object on scope.

25        A.    My understanding of a Participating
```

1   Chartered Organization and what this document, as

2   you've read, indicates is that a Participating

3   Chartered Organization would receive the benefit of a

4   release or the channeling injunction for claims

5   strictly limited to abuse -- scouting-related Abuse

6   Claims and a Chartered Organization would not, does

7   not, will not, lose any of its other insurer rights

8   for any policy, for any claim that is not defined to

9   be a scouting-related Abuse Claim.

10        Q.        If we go to Romanette ii, which

11  carries over, and again, the predicate here is the

12  earlier language that said:  In addition, in order to

13  obtain the benefit of the Settling Insured policy

14  injunction and the full post-1975 injunction,

15  Participating Chartered Organizations shall be

16  required to make or be deemed to make, and then we

17  just talked about No. i.

18              Romanette ii says:  Any claim held by

19  the Participating Contributing Chartered Organization

20  that is attributable to or arises from is based upon,

21  relates to or results from -- and if we could see if

22  we can scroll a little bit so we have both that text

23  and the next:  Thank you, in whole or in part,

24  directly, indirectly, derivatively, including through

25  any insurance policy issued by the Settling Insurers,

1   alleged abuse claims that occurred prior to the

2   petition date against the Settlement Trust, the

3   Debtors, reorganized BSA, the local councils, any

4   contributing Chartered Organization or Settling

5   Insurers.

6                 So this phrase, "any other policy

7   issued by a Settling Insurer" -- "to any insurance

8   policy issued by a Settling Insurers," I beg your

9   pardon; what's your understanding of what that phrase

10  refers to?

11                MR. ANDOLINA:  Objection to form.

12                MR. SCHIAVONI:  Objection to form.

13                MR. ANDOLINA:  And it's outside the

14  scope of the witness's testimony and I'm going to

15  instruct him not to answer.

16                As I said, Mr. Lloyd, we will produce

17  a witness to answer questions or make objections to

18  questions that relate to the Debtors' understanding,

19  but this witness is a volunteer board member.  So

20  asking him the Debtors' understanding of a superceded

21  term sheet is not an effective use of anyone's time.

22  BY MR. LLOYD:

23      Q.      Is it your testimony, Mr. Desai, that

24  in entering into Paragraph 10 of the Century Term

25  Sheet, Exhibit 3, that the Debtor validly exercised

1    its business judgment?

2         A.         Absolutely.

3         Q.         Please tell us the basis for that.

4         A.         I will defer you, Mr. Lloyd, to my

5    prior answer a few months ago concerning how the

6    Debtor came to authorize the entry into this

7    agreement.

8                    I would also add on to there that

9    based upon conversations with our counsel,

10   considering all of the other factors that I had

11   previously laid out and based upon various

12   conversations held by, not only the Bankruptcy Task

13   Force, our National Executive Committee and the

14   board, we felt that it was the right thing to do to

15   enter into this agreement with Century/Chubb.

16                   MR. LLOYD:  If you could scroll up

17   again to the title for Paragraph 10, please, in

18   Exhibit 3.  Thank you.

19   BY MR. LLOYD:

20        Q.         So again, Mr. Desai, this title on

21   Paragraph 10 is:  Participating Chartered

22   Organizations.

23                   You see that, correct?

24        A.         Yes, sir.

25        Q.         Can we agree that Paragraph 10, by

1   definition, doesn't apply to Opt-Out Chartered

2   Organizations?

3               MR. ANDOLINA:  Objection to form.

4       **A.      I believe, just looking at this**

5   **document, it's solely discussing what a participating**

6   **Charter Org is.**

7       Q.      Are you aware of any requirement,

8   under this Term Sheet, that an Opt-Out Chartered

9   Organization, make an insurance assignment similar to

10  the insurance assignment that we were just discussing

11  for Participating Chartered Organizations?

12              MR. ANDOLINA:  Objection to form.

13      **A.      I would ask if you could just pull**

14  **that provision up so I can look at it and be happy to**

15  **answer your question if I can.**

16      Q.      Absolutely.

17              MR. LLOYD:  Let's scroll down,

18  please.  Couple more.  There we go, to Paragraph 13.

19  Thank you.  That's great.

20  BY MR. LLOYD:

21      Q.      Mr. Desai, I'm showing you Paragraph

22  13 of Exhibit 3, which has the title:  Opt-Out

23  Chartered Organization.

24              You were previously discussing the

25  assignment that Paragraph 10 requires for

1   Participating Chartered Organizations and so my

2   question, again, with Paragraph 13 in front of you

3   now, for Opt-Out Chartered Organizations, are you

4   aware of any requirement that an Opt-Out Charter

5   Organization make a similar assignment of insurance?

6                  MR. ANDOLINA:  Objection to form.

7        **A.       The document doesn't speak to that at**

8   **this provision, Section 13.**

9   BY MR. LLOYD:

10       Q.     When you say the document doesn't

11  speak to it, does it say anything in Paragraph 13

12  about requirements for an Opt-Out Chartered

13  Organization to make an assignment of insurance

14  rights?

15                 MR. ANDOLINA:  Objection to form.

16       **A.       It does not say anything about an**

17  **Opt-Out Chartered Organization waiving their**

18  **insurance rights subject to the very nature of what**

19  **an Opt-Out Chartered Organization.  They're an entity**

20  **that is objecting to the Plan and the only benefit**

21  **that they are receiving, based upon negotiations from**

22  **various parties, including certain chartered**

23  **partners, is a limited release based upon what a**

24  **settled insurer is contributing and an Opt-Out**

25  **Chartered Organization is not losing any of its**

1    insurance rights as it relates to any other type of

2    claim that is not a scouting-related abuse claim.

3            Q.      Why is it necessary for Participating

4    Chartered Organizations to make the assignment of

5    independent insurance coverage?

6                    MR. ANDOLINA:  Objection to form;

7    beyond the scope, calls for a legal conclusion and

8    I'm going to instruct him not to answer.

9    BY MR. LLOYD:

10           Q.      Whose decision, Mr. Desai, was it, to

11   not ask for an assignment of Opt-Out Chartered

12   Organizations of their insurance rights?

13                   MR. ANDOLINA:  Objection to form.

14                   MR. SCHIAVONI:  I'll object to form

15   also.

16           A.      My understanding of this Agreement or

17   this Term Sheet, as you're showing me, is based upon

18   active negotiations between various parties and what

19   I can tell you is that -- as a member of the

20   bankruptcy task for, the NEC and the Board, our

21   advisors thoroughly provided us with information

22   related to the negotiations.

23                   But we, as a Bankruptcy Task Force,

24   NEC and Board, authorized our advisors to negotiate

25   in the best interest of the organization, and in an

Page 35

1    effort to equitably compensate all victims of abuse,

2    such that what you see before you today in the

3    Century Term Sheet is a product of very active

4    negotiations amongst the parties to this agreement.

5        Q.      If we can go back to Paragraph 9,

6    please.  And toward the bottom, yeah, that's great.

7    Thank you.  Actually, if you can scroll up just a

8    little bit more, please.  I'm sorry, I misspoke.  If

9    you could scroll down just a little bit more, please.

10   Thank you.

11               We can agree, Mr. Desai, that

12   Paragraph 9 requires Participating Chartered

13   Organizations to release Settling Insurers, correct?

14               MR. ANDOLINA:  Objection to form.

15       A.      I believe the document indicates what

16   a participating Chartered Organization is required to

17   do.  I don't necessarily believe that the document

18   requires them to give up, broadly, all of their

19   rights for any and everything.

20       Q.      I appreciate that clarification, sir.

21               The release is for abuse policies,

22   correct?

23               MR. ANDOLINA:  Objection to form.

24       A.      The release would be for any

25   scouting-related abuse claim.

IN RE BOY SCOUTS AND DELAWARE BSA

1              MR. LLOYD:  And if we can scroll up

2   just a little bit more, please.  Thank you.

3              Just a little bit more.  Thank you.

4        Q.      And if we look at b in the release,

5   Mr. Desai, part of what is being released is any

6   other insurance policy issued by the Settling

7   Insurers covering claims or causes of action for

8   abuse claims with respect to such coverage for Abuse

9   Claims.

10             Do you see that, sir?

11             MR. ANDOLINA:  Objection to form.

12       **A.      I do see that language, yes, sir.**

13  BY MR. LLOYD:

14       Q.      And are you aware of any similar

15  requirement that an Opt-Out Chartered Organization

16  give this kind of release?

17             MR. ANDOLINA:  Objection to form.

18       **A.      Again, I would defer to the terms of**

19  **the document.**

20  BY MR. LLOYD:

21       Q.      If we could turn to Paragraph 11,

22  please.  It's a few paragraphs down.

23             It's entitled:  Protection

24  Afforded -- I beg your pardon, Protections Afforded

25  to Insureds and Coinsureds and it says:  On the

1  Release Date, all abuse claims against insureds and

2  coinsureds covered under insurance policies issued by

3  the Settling Insurers shall be channeled under the

4  Settling Insurer Policy Injunction and released.

5  Pending the occurrence of the Release Date, all such

6  Abuse Claims shall be enjoined pursuant to the

7  post-petition interim injunction as provided herein.

8           Do you see that, sir?

9      A.    I do.

10     Q.    And it's the Debtors' position that

11 in agreeing to Paragraph 11 of the Century Term

12 Sheet, the Debtors validly exercised their business

13 judgment; is that correct?

14     A.    Yes, it is.

15     Q.    And I appreciate your answers in

16 respect to Paragraphs 9 and 10.

17           Do you have anything to add in

18 respect to the exercise of the Debtors' Business

19 Judgment as it respects Paragraph 11?

20     A.    No, sir.  I would defer to my prior

21 answers.

22     Q.    If we could go to Paragraph 13,

23 please.  So Paragraph 13, Mr. Desai is called:

24 Opt-out Chartered Organizations.

25           Do you see that?

1      A.      I do.

2      Q.      And is it your testimony that the

3  Debtors validly exercised their business judgment in

4  entering into Paragraph 11 -- 13 -- I beg your

5  pardon.  Let me withdraw that question.

6              Is it your testimony, sir, that the

7  Debtors validly exercised their business judgment in

8  agreeing to Paragraph 13 of the Century Term Sheet.

9      A.      Yes, it is.

10     Q.      And as with your prior answers to --

11 that we've discussed in Paragraphs 9 and 10, do you

12 have anything to add with respect to the Debtors'

13 exercise of its business judgment concerning

14 Paragraph 13?

15             MR. ANDOLINA:  Objection to form.

16     A.      The only thing I would add,

17 Mr. Lloyd, as it relates to this particular provision

18 for opt-outs is that because negotiations continued

19 well beyond the entry into the Century Term Sheet,

20 there was a pathway that was allowed for within these

21 documents, particularly the Century Term Sheet, just

22 like in the Hartford Settlement Agreement, that

23 allowed for parties to continually work in good faith

24 to ensure support for the Plan, along with providing

25 additional contributions to the Trust to equitably

1  compensate victims and if an entity was an Opt-Out

2  Chartered Org, they had a pathway available to them

3  through continuing negotiations beyond this date of

4  December 14, 2021, in which they could become a

5  contributing or a Participating Chartered Org subject

6  to the conditions that are specified in this

7  provision.

8        Q.      And what would be required for them

9  to become a Participating Chartered Organization, if

10 they had been an Opt-Out Chartered Organization?

11               MR. ANDOLINA:  Objection to form.

12       A.      As indicated here, there would need

13 to be a financial contribution as well as certain

14 assignments and releases as indicated in Sections 9

15 and 10 of this document and they would also then be a

16 party that would not be objecting to the plan of

17 confirmation as filed.

18 BY MR. LLOYD:

19       Q.      And the financial contribution that

20 you mentioned, that's something that would either

21 have to be made by the Participating Chartered

22 Organization or on its behalf?

23       A.      That would be correct.

24               MR. ANDOLINA:  Objection to the form

25 of the question.

1   BY MR. LLOYD:

2        Q.      And is it the Debtors' position that

3   the deemed assignment of additional insured rights of

4   a Participating Chartered Organization, in policies

5   issued to the local councils by Settling Insurers,

6   would be an insufficient contribution?

7              MR. ANDOLINA:  Objection to the form

8   of the question; scope.  Calls for a legal

9   conclusion.

10             MR. SCHIAVONI:  Objection to form.

11       **A.      I would answer that question,**

12  **basically, saying that if a Chartered Organization**

13  **wanted to become a participating or contributing**

14  **Chartered Org, the rights that they would be giving**

15  **up are solely limited to any settled insurer rights**

16  **pertaining to a scouting-related abuse claim.**

17       Q.      I appreciate that answer, sir.  My

18  question was a little different.

19             Is it the Boy Scout's position that

20  the additional insured rights that a Chartered

21  Organization has, excuse me, in local council

22  policies, that those rights -- I beg your pardon --

23  that those rights have no value?

24             MR. ANDOLINA:  Objection to form.

25             MR. SCHIAVONI:  Objection to form.

IN RE BOY SCOUTS AND DELAWARE BSA

1        **A.      I -- I don't understand your**

2   **question, but I don't believe that is an accurate**

3   **statement.**

4   BY MR. LLOYD:

5        Q.      So the -- so the Debtors believe that

6   the additional insured rights that Chartered

7   Organizations have in local council policies have

8   value?

9               MR. ANDOLINA:  Objection to the form;

10  beyond -- clearly beyond the scope of 30(b)(6)

11  testimony.

12              You can answer to the extent you can

13  on an individual basis.

14       **A.      I think that any additional insured**

15  **has certain rights under a contract and I would defer**

16  **to the terms and conditions of that contract.**

17  BY MR. LLOYD:

18       Q.      Right.  Well, you previously

19  disagreed with me, sir, when I said:  Is it the

20  Debtors' position that those additional insured

21  rights have no value, and so --

22              MR. SCHIAVONI:  Objection to form.

23              MR. LLOYD:  I haven't finished my

24  question.

25              MR. SCHIAVONI:  Oh, I thought you

1   were testifying.

2               MR. LLOYD:  I'll let you object.

3   Please, I'll try again.

4   BY MR. LLOYD:

5       Q.      Mr. Desai, you previously testified

6   that you disagreed that the additional insured rights

7   that Chartered Organizations have in in local council

8   policies, you disagreed that those rights had no

9   value.

10              Do you recall that testimony?

11              MR. SCHIAVONI:  Objection to form;

12  mischaracterizes the prior testimony.

13              MR. ANDOLINA:  Same objection.

14      A.      Mr. Lloyd, I don't believe I

15  specifically agreed with that statement.

16              What I said was that any Chartered

17  Organization that is an opt-out, has a pathway which

18  they can become a contributing or participating

19  organization and that the only things that they would

20  be waiving, releasing, would be their rights

21  associated with a scouting-related abuse claim.  And

22  so if you would like a -- in terms of your question

23  or statement about value, my response to that is,

24  again, there is value in the type of rights that an

25  entity would have vis-a-vis the contract.

```
 1   BY MR. LLOYD:

 2        Q.      So the sentence that I'd like to

 3   focus on in Paragraph 13 of Exhibit 3 says:  No

 4   Chartered Organization that is an Opt-Out Chartered

 5   Organization may become a Contributing Chartered

 6   organization, unless, (a), a financial contribution

 7   is made by or on behalf of such Opt-Out Chartered

 8   Organization.

 9               Do you see that, sir?

10        A.      Yes.

11        Q.      And so my question to you is:  Is it

12   the Debtors' position that the foregoing of

13   additional insured rights in local council policies,

14   would count under this paragraph as a financial

15   contribution?

16               MR. ANDOLINA:  Objection to form.

17   It's an inappropriate hypothetical.  It also only

18   identifies one provision of three in the specific

19   paragraph that you're referring to.

20               MR. SCHIAVONI:  Objection to form.

21               MR. ANDOLINA:  It's also far beyond

22   the scope of this Notice.

23               THE DEPONENT:  Do you want me to

24   answer?

25               MR. ANDOLINA:  No.
```

IN RE BOY SCOUTS AND DELAWARE BSA                    Confidential
                                                     DEVANG DESAI

Page 44

1           MR. LLOYD:  You're instructing him

2    not to answer the question?

3           MR. ANDOLINA:  Can you reask the

4    question in a non-objectionable way?

5        Q.     Did you understand the question, sir?

6           MR. ANDOLINA:  Why don't you read it

7    back?  Can the court reporter, please read it back?

8           (Designated question was read back.)

9           MR. ANDOLINA:  Same objection to form

10   and scope.

11       **A.     So my -- my understanding of that**

12   **statement is that this provision specifically asked**

13   **for a financial contribution.**

14   BY MR. LLOYD:

15       Q.     And so your understanding is that a

16   financial contribution would be money above and

17   beyond any value that was placed on additional

18   insured rights that Chartered Organizations might

19   have in local council policies; is that correct?

20          MR. ANDOLINA:  Same objection.

21          MR. SCHIAVONI:  Object to the form.

22          MR. ANDOLINA:  With respect to scope

23   and form, but you can answer, on an individual basis.

24       **A.     I think you can't look at this**

25   **provision or this one -- this one word in a vacuum,**

1   Mr. Lloyd.

2                You have to consider what exactly the

3   Chartered Organization is seeking to obtain a full

4   release for, number one.

5                Number two, what timeframe the

6   Chartered Organization is seeking to receive a

7   release for.  And given that set of precursors, it

8   may be required that in addition to the rights that a

9   settling insurer is contributing to the Trust on

10  behalf of a Chartered Organization, which is also a

11  beneficiary of a release for that scouting-related

12  abuse claim, if a Chartered Organization wants to

13  receive a full and complete release for any

14  scouting-related abuse claim that is not affiliated

15  with a settling insurer, there might need to be

16  additional negotiations on terms, be it financial or

17  otherwise, that would need to be arrived at for an

18  Opt-Out Chartered Organization to obtain a free and

19  clear or full release for any liabilities associated

20  with them.

21       Q.    Can the Debtors exercise in its

22  business judgment and agreeing to entering into the

23  Century Term Sheet, if the Debtor presented with any

24  analysis that valued the additional insured rights

25  that a participating Chartered Organization would be

1   giving up by becoming a participating Chartered

2   Organization the rights in additional -- to

3   additional insurance in the local council policies?

4                    MR. ANDOLINA:  Objection to the form;

5   compound.

6                    MR. SCHIAVONI:  It's outside the

7   scope of the notice.

8                    THE REPORTER:  What's that?

9                    MR. SCHIAVONI:  I object that it's

10  outside the scope of the notice.

11       **A.        I don't understand your question,**

12  **Mr. Lloyd.  So if you wanted to reask it and/or break**

13  **it down, I'm happy to give it a try.**

14  BY MR. LLOYD:

15       Q.        Thank you, Mr. Desai.

16                 So you previously testified that

17  you've been designated by the Debtors to testify

18  about the Debtors' exercise of its business judgment

19  in agreeing to enter into the Century Term Sheet.

20                 You recall that testimony?

21       **A.        Yes, sir.**

22       Q.        And that exercise of business

23  judgment, you've testified extended to the Debtors'

24  Agreement to Paragraph 13 of Exhibit 3, the Century

25  Term Sheet; is that correct?

IN RE BOY SCOUTS AND DELAWARE BSA

```
 1                    MR. ANDOLINA:  Objection to form.
 2          A.        While I didn't specifically say the
 3    business judgment extended to a particular provision,
 4    what I did say is that we exercised business judgment
 5    in evaluating taking into account all the advice we
 6    had received from our professional advisors and based
 7    upon input from the various parties, including
 8    Chartered Organizations and the ad hoc group of local
 9    councils, we authorized our advisors to use their
10    best efforts to negotiate a resolution.
11          Q.        And it's your testimony today, sir,
12    that the Debtors' Agreement to Paragraph 13 of the
13    Century Term Sheet was a valid exercise of the
14    Debtors' business judgment; is that correct?
15                    MR. SCHIAVONI:  Objection to form.
16                    MR. ANDOLINA:  Objection to form.
17          A.        Again, taking the entire Term Sheet
18    into account as the total deal, yes.
19    BY MR. LLOYD:
20          Q.        In looking at the second sentence of
21    Paragraph 13, which says that no Chartered
22    Organization is an Opt-Out Chartered Organization may
23    become a contributing Chartered Organization unless,
24    and it has three conjunctive requirements.  You need
25    to meet all three of these requirements.
```

1            The first is, (a), the financial

2  contribution is made by or on behalf of such Opt-Out

3  Chartered Organization.

4            Do you see that, sir?

5       A.    Yes.

6       Q.    So my question to you is:   In

7  receiving information that the Debtors evaluated in

8  exercising their business judgment to enter into the

9  Century Term Sheet -- to agree to the Century Term

10  Sheet, was one of the things that the Debtors

11  considered, a value of additional insured rights to

12  participate in Chartered Organizations in local

13  council policies?

14            MR. ANDOLINA:  Objection.

15            MR. SCHIAVONI:  Objection; asked and

16  answered and outside the scope.

17       A.    As I understand it, the requirement

18  at Section 13(b), requires that a Chartered Org

19  agrees to provide the assignments and releases set

20  forth in Section 9 and 10 above on this document that

21  I'm not looking at right now.

22            But in order to become a Contributing

23  Chartered Organization, the Opt-Out Chartered

24  Organization under this provision would need to

25  assign or release their insurer rights related to

1   scouting-related abuse claims, if there is a Settling

2   Insurer involved, because, Mr. Lloyd, as you would

3   suspect, no settling insurer would want to have

4   hanging out there a scouting-related abuse claim if

5   it's not been fully resolved by way of a settlement

6   agreement or otherwise.

7           Q.      I appreciate that clarification,

8   Mr. Desai.

9                   In exercising its business judgment

10  concerning Paragraph B of Paragraph 13, which you

11  were just pointing to:  Such chartered organization

12  agrees to provide the assignments and releases as set

13  forth in Sections 9 and 10.

14                  Did the Debtors receive any

15  information as to the value of the assignments and

16  releases that would be provided in Sections 9 and 10

17  for participating Chartered Organizations?

18                  MR. ANDOLINA:  Objection to form;

19  asked and answered; scope.

20                  MR. SCHIAVONI:  Same objection.

21          A.      Mr. Lloyd, I would defer to my prior

22  answers concerning business judgment and I would

23  also, perhaps, indicate that, in considering this

24  entire document as a whole of the Century Term Sheet,

25  we, as the Bankruptcy Task Force, we, as a National

Page 50

1   Executive Committee, or we, as a National Executive

2   Board, were provided with information, presentations,

3   not only from our restructuring council but also from

4   our insurance council, in addition to our financial

5   advisors, coupled with the need to ensure protection

6   for Chartered Organizations because they are an

7   integral part of the Boy Scouts of America and to

8   continue to build upon a Settlement Trust that would

9   allow for the organization to emerge and continue to

10  exist and equitably compensate victims.

11              Considering all those things, as well

12  as all the information we were provided, we continue

13  to trust in our advisors to actively negotiate with

14  the settling parties, particularly on this agreement

15  with Century and its counsel, a resolution that was

16  adequate to everyone involved.

17      Q.      In your role as a member of the BSA

18  Bankruptcy Task Force and the Executive Board, have

19  you seen any analysis that attempted to value the

20  additional insured rights of Chartered Organizations

21  in the local council policies?

22              MR. ANDOLINA:  Objection to the form;

23  scope.

24      A.      I recalled seeing some presentations

25  concerning policies that were available, are

1    available and to whom and what timeframe in which

2    they existed, the coverages associated with those

3    policies, the types of policies they were, and aside

4    from that and ongoing conversations that surrounded

5    that presentation, I don't recall seeing anything

6    else.

7         Q.    Okay.

8               MR. LLOYD:  Mr. Desai, we've been

9    going about an hour.  Are you doing all right?  Do

10   you want a break?  How are you feeling?

11              MR. ANDOLINA:  Let's take about --

12   can we take ten, Mr. Lloyd?

13              MR. LLOYD:  We absolutely can.

14              MR. ANDOLINA:  Thank you.

15              THE VIDEOGRAPHER:  Okay.  Going off

16   the record at 9:07 eastern time.

17              (A brief recess was taken.)

18              THE VIDEOGRAPHER:  We are back on the

19   record at 9:23 a.m. eastern time.

20   BY MR. LLOYD:

21        Q.    If we could turn, please, to

22   Paragraph 9 of Exhibit 3, which is the Century Term

23   Sheet.

24              Mr. Desai, during the time that the

25   Century Term Sheet was being negotiated, was the

Page 52

1   Bankruptcy Task Force and the Executive Committee

2   provided with contemporaneous updates about the state

3   of the negotiations?

4        **A.      Yes, we were.**

5        Q.      And did those updates include the

6   bids and asks by various negotiating parties?

7                 MR. ANDOLINA:  Object to the form.

8        **A.      The updates, again, at a high level,**

9   **did include what certain parties were wanting --**

10  **willing to negotiate on and what our parameters were**

11  **in response based upon several conversations with**

12  **counsel for us, amongst members of the BTF and the**

13  **NEC and the Board.**

14       Q.      And this is going to be a question

15  that's going to go back to where we were at the very

16  beginning of the deposition, so you may be able to

17  answer it and you may be allowed to answer it, and

18  you may not be.

19                So I just want to ask it, and we'll

20  take a little pause for Mr. Andolina to make whatever

21  objections or instructions he has.

22                Please tell us everything that you

23  recall, sir, about the updates that you received from

24  counsel during the negotiation of the Century Term

25  Sheet.

1                   MR. ANDOLINA:  Objection to form.

2    I'll allow Mr. Desai to testify in terms of his

3    recollection of cadence, but not with respect to

4    specific positions that may have been exchanged in

5    the mediation nor with respect to any advice provided

6    by counsel.

7                   So with those caveats, you can answer

8    to the best of his ability.

9                   MR. LLOYD:  And Mr. Andolina, just to

10   clarify, so you're invoking attorney-client and

11   mediation privilege?

12                  MR. ANDOLINA:  Correct.

13                  MR. LLOYD:  Thank you for that

14   clarification.  Go ahead, Mr. Desai.

15        A.      So at or near this timeframe, in the

16   fall/winter of 2021, the Bankruptcy Task Force, the

17   NEC, along with our advisors, met with more

18   regularity than I can recall and not only in terms of

19   meetings, but also various email exchanges with

20   counsel, coupled with phone calls amongst, not only

21   members of the Task Force and Board, but we continued

22   to receive, sometimes real-time updates on where

23   things were in terms of active negotiations, and at

24   other times, we would receive more formalized updates

25   and presentations during our meetings from our

1   advisors as to kind of where things evolved to

2   following a week or a few days of negotiations, and

3   based upon certain timeline benchmarks, either

4   established by the Court or the parties, the

5   Bankruptcy Task Force would meet regularly to engage

6   in conversation, to look at the terms, to provide

7   input to our advisors.

8            Following that, recommendations would

9   be made and then would be voted upon by the National

10  Executive Committee and then the Board, to then allow

11  for our advisors to have negotiating parameters and

12  limits, if you will, for what the BSA, as well as

13  other parties affiliated with the BSA, could agree

14  to.

15       Q.    When you say "other parties

16  affiliated with the BSA," what do you mean by that,

17  sir?

18       A.    So --

19            MR. ANDOLINA:  Objection to form.

20  You can answer.

21       A.    I'm referring to our local councils

22  as well as we -- at this time, while these

23  negotiations with Century were taking place, you

24  know, you can't just take it into a vacuum.  I mean,

25  there were ongoing negotiations with the Catholic

Page 55

1   constituency, the Methodist constituency and, you

2   know, other insurers that our advisors were working

3   with in order to effectuate more resolutions,

4   because, again, given the timeline of events, keep in

5   mind that the voting deadline was in December as well

6   as extended by the Court, so it was critically

7   important to the Debtor to continue to engage in more

8   and more resolutions to obtain more victim support

9   for the plan in order to proceed to a confirmation

10  hearing on a timely basis.

11          Q.      In addition to more victim support,

12  was it the Debtors' goal to also obtain more support

13  from Chartered Organizations?

14          A.      Absolutely.

15          Q.      If we can turn to Paragraph 10 of

16  Exhibit 13, Exhibit 3, I beg your pardon, and the

17  beginning of it.  Thank you.  We covered the middle

18  of this earlier, Mr. Desai.  I'm going to cover the

19  beginning of it briefly.

20                  So after the heading Participating --

21  the title Participating Chartered Organizations,

22  Paragraph 10 reads:  Under the Amended Plan and as a

23  condition to the Effective Date, waiver of which

24  shall require the prior written consent of, among

25  others, the Settling Insurers -- I'm going to pause

1    there.

2              Do you have an understanding of who

3    the "among others" are in that first sentence that I

4    read?

5              MR. ANDOLINA:  Objection to the form;

6    scope.

7        **A.      My understanding of who "among**

8    **others," I think it is just a description for**

9    **Settling Insurers there.  It's spelling it out and**

10   **"Settling Insurers" is a defined term and in addition**

11   **to them, it could potentially mean parties to the**

12   **Settlement Agreement here, which are Coalition, FCR,**

13   **Ad Hoc, so I would defer to the document.**

14       Q.      Thank you.  So I'm going to read

15   again:  Under the Amended Plan and as a condition to

16   the Effective Date, waiver of which shall require the

17   prior written consent of, among others, the Settling

18   Insurers.  In order to obtain the benefit of the

19   Settling Insurer Policy Injunction and to the full

20   post-1975 injunction, Participating Chartered

21   Organizations shall be required to provide or be

22   deemed to provide -- and let me just pause there --

23   it may be in your personal capacity, but do you have

24   an understanding of what the phrase "deemed to

25   provide" means in this context?

IN RE BOY SCOUTS AND DELAWARE BSA

1              MR. ANDOLINA:  Objection to form and

2    scope.  You can answer in your personal capacity, if

3    you know.

4         **A.        Personally speaking, "deemed to**

5    **provide" would mean to me that an entity as being**

6    **described here, participating Chartered Org would**

7    **have to exercise some type of instrument, if you**

8    **will, that would, as the rest of the sentence goes,**

9    **allow for an assignment of their insurance price**

10   **pursuant to the terms and conditions of this**

11   **document.**

12   BY MR. LLOYD:

13        Q.      Thank you.  Shall be required to

14   provide or be deemed to provide the following

15   assignment of their insurance rights, the, quote,

16   Participating Organization Insurance Assignment,

17   unquote, as a defined term.

18              And it continues:  And it continues:

19   Any and all of the Participating Chartered

20   Organizations' rights, titles, privileges, interests,

21   claims, demands or entitlements, as of the Effective

22   Date to any proceeds, payments, benefits, Causes of

23   Action, choses in action, defense or indemnity, now

24   existing or hereafter arising, accrued or unaccrued,

25   liquidated or unliquidated, matured or unmatured,

1  disputed or undisputed, fixed or contingent, arising

2  under or attributable to, and then there's a listing

3  **A through F.  A is the abuse insurance policies**

4  **(including the Settling Insurers policies), B, any**

5  **other insurance policies issued by a Settling**

6  **Insurance Company that cover Abuse Claims with**

7  **respect to any coverage for Abuse Claims, C, the**

8  insurance settlement agreements (including the

9  agreement) and the claims thereunder, the proceeds

10  thereof, D, the types of claims, listed in the

11  insurance actions definition in the Plan (including

12  the respect to the insurance policies issued by the

13  settling insurers), E, the insurance action

14  recoveries (including with respect to the Settling

15  Insurers' policy) and F, the participating Chartered

16  Organizations Insurance actions.

17             Do you see that?

18  **A.     I do.**

19     Q.     And is it your understanding that

20  that language that I just read, in Paragraph 10 of

21  Exhibit 3, the Century Term Sheet, in agreeing to

22  that language, as part of the Century Term Sheet, the

23  Debtors had validly exercised their business

24  judgment?

25             MR. ANDOLINA:  Objection to form.

1        A.        Yes, it is.

2    BY MR. LLOYD:

3        Q.        And you had previously testified

4    about the various factors that went into the Debtors'

5    exercise of their business judgment.

6                  With respect to this first part of

7    Paragraph 10 that we were just discussing, do you

8    have anything to add to your prior testimony in

9    respect to the considerations that the Debtor made in

10   exercising its business judgment?

11       A.        No, sir.

12       Q.        Now, I think you had testified that

13   part of the -- the exercise of your business judgment

14   included being advised about various of these

15   provisions, we're focused on the Century Term Sheet,

16   in conversations, I think you mentioned Ms. Lauria

17   and other individuals from White & Case.  Do you

18   recall that?

19                 MR. ANDOLINA:  Objection to form.

20       A.        Yes.

21   BY MR. LLOYD:

22       Q.        Okay.  And here, too, we'll do the

23   little dance, if you will:  What do you recall about

24   the advice that the Debtors were specifically given

25   by their counsel in respect to entering into the

IN RE BOY SCOUTS AND DELAWARE BSA

```
 1   Century Term Sheet?

 2               MR. ANDOLINA:  I'll allow Mr. Desai

 3   to answer with the same restrictions as I previously

 4   provided regarding instructing him not to provide any

 5   attorney-client communication information, nor to

 6   reveal mediation protected provisions.

 7               With that caveat, I think he can

 8   respond.

 9       A.      As indicated previously, Mr. Lloyd,

10   the Task Force, the NEC and the Board participated in

11   innumerable numbers of meetings with our advisors,

12   Haynes and Boon, on insurance-related issues and

13   certainly our structuring counsel White & Case.

14               In terms of information outside of

15   attorney-client materials, I can tell you that the

16   BSA, the Bankruptcy Task Force, NEC and Board had

17   many conversations relative to what it would mean to

18   be a contributing Opt-Out Participating Chartered

19   Organization, recognizing the fact that the Boy

20   Scouts of America values its relationship with

21   Chartered Organizations and in order to achieve the

22   spirit that was contemplated under the Hartford

23   Agreement, where the parties would continue to work

24   in good faith to resolve and bring under the tent,

25   any and all Chartered Organizations to the extent
```

1    possible to release and absolve of them of any

2    scouting-related abuse claims.

3               Having those various conversations,

4    seeing the presentations, being provided with

5    explanations on charts and PowerPoints on what it

6    means to be one of these three categories of a

7    Chartered Org and how it would interplay with prior

8    settlements, future settlements or all things that

9    were actively discussed by the Board with our

10   advisors and in totality, eventually authorizing our

11   advisors to enter into this deal with Century/Chubb.

12        Q.      As part of the information that you

13   received from your restructuring and your insurance

14   counsel, was the Bankruptcy Task Force and the

15   Executive Board given specific information about

16   particular charters in particular of the buckets that

17   you just described participating opt-out and

18   contributing?

19               MR. ANDOLINA:  Objection to form,

20   compound and I just want to clarify, Mr. Lloyd, I

21   think you referred to the National Executive Board,

22   which, for the record, met less frequently than the

23   National Executive Committee.

24               If you'd like him to respond with

25   respect to the BTF and the National Executive

1   Committee, that may provide more clarity to his

2   answer.

3                    MR. LLOYD:  I appreciate that,

4   Mr. Andolina.

5   BY MR. LLOYD:

6        Q.       So, yeah, let me rephrase the

7   question, Mr. Desai, because I realize there are a

8   lot of organizations and I appreciate that.

9                    So when, as a member of the

10  Bankruptcy Task Force and the National Executive

11  Committee, you were briefed and the Debtors then were

12  briefed about, as you were just describing,

13  Participating Chartered Organizations, contributing

14  Chartered Organizations, Opt-Out Chartered

15  Organizations, as part of those briefings that you

16  received, was the Bankruptcy Task Force and the

17  National Executive Committee told which types of

18  Chartered Organizations fit within each of those

19  three buckets?

20                    MR. ANDOLINA:  Objection with respect

21  to types.  Just so we have a clear record, are you

22  talking about which specific chart -- was the BTF and

23  NEC advised of the various specific Chartered

24  Organizations that had resolved?

25                    And I don't mean to over-speak here,

1  but I just want to make sure the record's clear on

2  this.

3            MR. LLOYD:  No, I appreciate it.

4  It's -- we'll try it a third time.

5  BY MR. LLOYD:

6       Q.    The -- like I told you, Mr. Desai, I

7  said I'd probably ask at least one bad question in

8  this.

9            So when the Bankruptcy Task Force and

10 the National Executive Committee was briefed by its

11 insurance and restructuring advisors, was the -- was

12 the National Executive Committee and the Bankruptcy

13 Task Force told, in the -- we're here at the time Of

14 the Century Term Sheet, so in the December 2021 time

15 period, where the Chartered Organizations that had

16 been previously affiliated with the -- the TCJC, what

17 bucket they fell within?

18           MR. ANDOLINA:  Objection to form.

19 You can answer without revealing specifics of those

20 conversations.

21      A.    I believe I understand what you're

22 asking, Mr. Lloyd.  And so the answer to your

23 question simply is yes.

24 BY MR. LLOYD:

25      Q.    Okay.  And do you recall which bucket

1    the TCJC fell within?

2        A.      Well, I think it depends on the time

3    frame we're talking about.  Because if you look back

4    to figure out when the TCJC effectuated a resolution,

5    they had obviously become a full-fledged contributing

6    Chartered Organization, and so around the timeframe

7    that we're talking here with Century, I previously

8    referenced that in addition to the negotiations

9    taking place with Century, our advisors were also

10   actively negotiating with the Methodist, the

11   Catholics and various other insurers.

12                  And so, for example, using the

13   Catholics and the Methodists, they, at the time that

14   the Century agreement was being contemplated, were at

15   the table, actively negotiating, and could have

16   become a contributing Chartered Organization and

17   eventually, as we know, I'll fast forward the story,

18   the Methodists did effectuate a resolution, which

19   would now have -- now deemed them a contributing

20   Chartered Org and the Catholics decided to not.

21                  MR. ANDOLINA:  And I would just

22   instruct Mr. Desai not to -- I think that answer does

23   not reveal any mediation communications, but I'd

24   instruct him, in answering Mr. Lloyd's questions, to

25   avoid any -- revealing anything about those

1  negotiations.

2            MR. LLOYD:  If you -- we can turn to

3  Paragraph 13 of Exhibit 3, please.

4  BY MR. LLOYD:

5       Q.      This is, Mr. Desai, the Opt-Out

6  Chartered Organization, I beg your pardon, paragraph

7  of Exhibit 3 that we were discussing previously.

8            And I believe you testified -- you

9  used the phrase "pathway," about providing a pathway

10  to becoming a contributing Chartered Organization.

11            Do you recall that testimony

12  generally?

13       **A.      Yes, sir.**

14       Q.      At the time that the Century Term

15  Sheet was entered into, other than the Roman Catholic

16  entities, who else could have become a contributing

17  Chartered Organization that was not already a

18  contributing Chartered Organization?

19            MR. ANDOLINA:  Objection to form.

20  Beyond the scope.

21            You can answer in your individual

22  capacity.

23       **A.      Personally speaking, I can tell you**

24  **that the Boy Scouts of America has relationships with**

25  **many Chartered Organizations beyond some of the**

1   larger ones that you just referenced.

2              And so, by way of an example, if a

3   particular Chartered Org had either advised the

4   organization or the Court that they were going to

5   file an objection or opt-out of this process, they

6   would be one of those groups that could convert

7   themselves from an opt-out to a participating or

8   contributing, based upon the provisions in this

9   paragraph.

10       Q.      In December -- excuse me -- of 2021,

11  is it your understanding that all other Chartered

12  Organizations, besides the Roman Catholic entities,

13  were already going to be protected by the injunction?

14              MR. ANDOLINA:   Objection to the form

15  of the question.

16       A.      I don't necessarily -- as I sit here

17  today, I probably couldn't tell you which specific

18  Chartered Organizations opted out.

19              Obviously, we're aware of the -- of

20  certain Diocese within the Catholic church that have

21  lodged an objection and are now deemed Opt-Out

22  Chartered Organizations.

23       Q.      If we can go to Paragraph 14, please.

24  Mr. Desai, this is listed as the Post-Confirmation

25  Interim Injunction.

1              Do you see that, sir?

**2       A.    I do.**

3       Q.    The -- this particular provision

4    included in the Century Term Sheet, is it the

5    Debtors' position that in including this provision,

6    Paragraph 14, that the Debtors validly exercised

7    their business judgment?

8              MR. ANDOLINA:  Objection to form.

**9       A.    Yes.**

10   BY MR. LLOYD:

11      Q.    And with respect to Paragraph 14, do

12   you have any additional information to provide, in

13   respect to the exercise of business judgment, that

14   you have not already revealed to us in respect to the

15   prior Paragraphs 9, 10, 11, 13, that we've been

16   discussing?

**17      A.    No, sir.**

18      Q.    Can we turn to Paragraph 15, please.

19   This is -- Paragraph 15 of Exhibit 3, the Century

20   Term Sheet is titled:  Abuse Claims Under Policies

21   Issued to Chartered Organizations.

22             Do you see that, sir?

**23      A.    Yes, sir.**

24      Q.    I'm sorry.  I didn't hear your

25   answer.

1        A.      Yes, sir.

2        Q.      Okay.  Thank you.  And with respect

3    to this particular paragraph, is it the Debtors'

4    position that in agreeing to this paragraph as part

5    of the Century Term Sheet, the Debtors validly

6    exercised their business judgment?

7        A.      Yes, it is.

8        Q.      And as we were discussing previously,

9    apart from the information that you've provided to us

10   in respect to the exercise of that judgment for

11   Paragraphs 9, 10, 11, 13, do you have anything to add

12   with respect to the exercise of the Debtors' business

13   judgment as it concerns Paragraph 15?

14       A.      I do not.

15               MR. LLOYD:  Okay.  All right.  Let's

16   move to -- we're going to put in the Black Line of

17   the Third Modified Plan.  That will be Exhibit 4.

18               MR. ANDOLINA:  Can we get five

19   minutes so I can grab copies of that?

20               MR. LLOYD:  Absolutely.  Let's go off

21   the record for five.

22               MR. ANDOLINA:  Thank you.

23               THE VIDEOGRAPHER:  Okay.  Going off

24   the record at 9:49 eastern time.

25               (Exhibit 4, Notice of Filing of

IN RE BOY SCOUTS AND DELAWARE BSA

1         Debtors' Third Modified Fifth Amended Chapter

2         11 Plan of Reorganization and Blackline

3         Thereof, was marked for Identification by the

4         court reporter.)

5                   (A brief recess was taken.)

6                   THE VIDEOGRAPHER:  All right.

7    Everything is recording and we are back on the record

8    at 9:53 eastern time.

9    BY MR. LLOYD:

10        Q.     So if we could -- so Mr. Desai, what

11   I'm showing you that's been marked as Exhibit 4 and I

12   guess -- do you have a copy of this in front of you?

13        **A.     I do.**

14        Q.     Okay.  Wonderful.  So just for the

15   record -- so the record is clear, the -- this is a

16   filing that's dated February 15 of 2022 and the

17   caption is The Notice of Filing Debtors' Third

18   Modified Fifth Amended Chapter 11 Plan of

19   Reorganization and Blackline Thereof, and this is a

20   preliminary.

21                  If at any time, Mr. Desai, you would

22   prefer to do a comparison that's a side-by-side, you

23   know, with the December 18th plan and the February

24   15th plan, please just let me know.

25                  The reason I've put this document in

IN RE BOY SCOUTS AND DELAWARE BSA

1  front of you is that the Debtors created it and I'm

2  really trying to be efficient in terms of talking

3  about, with you about the differences between --

4  between the two.

5            Since the Debtors created it, I

6  didn't figure there would be any controversy about

7  that, but as I say, if it gets too much reading a

8  bunch of strike-outs and highlights and things, just

9  let me know and we'll pull up some other documents.

10            So if we could please turn then to

11  Article 1A, Section 42, so it's going to be a few

12  pages down.

13            Okay.  Mr. Desai, I'm showing you --

14  this is on Page 17 to 18 of 304, there's a filing

15  identification with the Bankruptcy Court of document

16  No. 8814-1 and we're looking at Paragraph 42 that's

17  titled:  BSA Cash Sharing Amount.

18            Do you see that, sir?

19  **A.       Yes, sir.**

20       Q.       And the -- this definition appears in

21  the Third Modified Fifth Amended Plan, not in the

22  Second Modified Fifth Amended Plan, something that we

23  know because it's here in this highlighted text.

24            Are you following me?

25  **A.       Yes.**

Page 71

1          Q.      Is it the Debtors' testimony that in

2    including this definition -- I beg your pardon --

3    including this definition in Paragraph 42, BSA Cash

4    Sharing Amount, in the Third Modified Fifth Amended

5    Plan, that the Debtors were validly exercising their

6    business judgment?

7                  MR. ANDOLINA:  Objection to form.

8          A.      Yes.

9    BY MR. LLOYD:

10         Q.      Please tell us why that is.

11         A.      I would tell you again, reiterating

12   my prior responses, but based upon advice in

13   consultation with our financial advisors, and given

14   that, at the time that this Plan was filed, Docket

15   entry 8814-1, the parties, meaning BSA, Coalition,

16   FCR, Settled Insurers and now the TCC, were all in

17   active negotiations in order to continue to build

18   more consensus for support of this plan and to

19   provide, again -- to achieve the resolutions that the

20   BSA sought out to achieve, which were to equitably

21   compensate all victims of abuse and to emerge as an

22   ongoing organization.  We felt that this negotiated

23   term was in proper exercise of our business judgment.

24         Q.      And, again, just to make sure that

25   we're not talking over each other and Mr. Andolina

Page 72

1   has the opportunity to make his objection, as you sit

2   here today, are you able to tell us who first

3   proposed this provision?

4                   MR. ANDOLINA:  Objection to form and

5   I'm going to instruct him not to answer based on

6   mediation confidentiality.

7                   MR. LLOYD:  If we can turn, please,

8   to Paragraph 59, please.  We're still in the

9   Definitions section.

10  BY MR. LLOYD:

11      Q.      Mr. Desai, I'm directing your

12  attention to Paragraph 59, which is titled:

13  Chartered Organization Contribution.

14                  Do you see that, sir?

15      A.      Yes.

16      Q.      And this Paragraph 59, which appears

17  in the blue text, is new to the Third Modified Fifth

18  Amended Plan from the Second Modified Fifth Amended

19  Plan.

20                  Do you see that, sir?

21      A.      Yes.

22      Q.      And is it the Debtors' position that

23  including this new definition in the February 15th,

24  2022 plan, the Debtors validly exercised their

25  business judgment?

1                    MR. ANDOLINA:  Objection to form.

2          **A.      Yes.**

3    BY MR. LLOYD:

4          Q.      And beyond the answer that you just

5    gave when we were discussing Paragraph 42, definition

6    of Exhibit 4, is there anything that you would like

7    to add in respect to the Debtors' exercise of its

8    business judgment in putting the definition that's in

9    Paragraph 59 in the Third Modified Fifth Amended

10   Plan?

11                   MR. ANDOLINA:  Objection to form.

12         **A.      The only thing I would add would be**

13   **that this was a term that was the product of active**

14   **negotiations, some of which I participated in myself**

15   **at mediation, in order to get additional parties to**

16   **become signatories to a more globalized settlement**

17   **agreement.**

18         Q.      I don't mean to belabor the point but

19   just to ask and let Mr. Andolina make his objection.

20                   As you sit here today, can you tell

21   us who first proposed this first definition that's in

22   Paragraph 59?

23                   MR. ANDOLINA:  I'm going to object on

24   mediation confidentiality and instruct the witness

25   not to answer.

1            MR. SCHIAVONI:  Can I just ask

2   whether you're waiving -- in asking that question,

3   are you offering to waive your mediation

4   confidentiality?

5            MR. LLOYD:  Mr. Schiavoni, you can

6   make your objection for the record.  The witness has

7   been instructed not to answer.

8            MR. SCHIAVONI:  Well, I think because

9   he's invoking --

10            MR. LLOYD:  Mr. Schiavoni, stop.

11   We're not going to have a colloquy on the record.

12   We're taking the 30(b)(6) deposition of the debtor.

13   The debtor is represented by counsel.

14            MR. SCHIAVONI:  I'm going to give you

15   the opportunity.  That's fine.  I object.

16            MR. LLOYD:  Thank you, Mr. Schiavoni.

17            MR. SCHIAVONI:  Thank you.

18            THE REPORTER:  May I ask you to put

19   on your camera?

20            MR. SCHIAVONI:  I'm sorry.  What?

21            THE REPORTER:  May I ask you to put

22   on your camera?

23            MR. SCHIAVONI:  Okay.  Sure.

24   BY MR. LLOYD:

25        Q.    Mr. Desai, I have another question

1   for you, which is just a yes-or-no question.

2              So I'm not asking a question and I'm

3   not intending by my question to seek anything that is

4   mediation confidential.

5              Do you know who asked for Paragraph

6   59?

7              MR. ANDOLINA:  Objection to form.

8              Outside the scope.  You can answer.

9        A.    Yes.

10       Q.    Let's move, please, to Paragraph

11  86 -- oh, and Mr. Desai, just a yes-or-no question.

12             And do you know why, whichever party

13  asked for Paragraph 59, do you know why they asked

14  for it?

15             MR. ANDOLINA:  Objection to form.

16       A.    No, I don't.

17  BY MR. LLOYD:

18       Q.    If we can go then to -- okay.  So

19  this is Paragraph 86, this is the definition,

20  Mr. Desai, of Contributing Chartered Organizations.

21             Do you see that?

22       A.    Yes.

23       Q.    Okay.  And I'd like to direct your

24  attention to the strike-out text, which is a few

25  lines down on page 27 of 304.

Confidential
DEVANG DESAI

Page 76

1          So if you could scroll down just a

2    little bit more, please.

3          So Mr. Desai, I'm starting with the

4    word "without" that's in the red strike-out text.

5    Are you following me?

6    **A.     Yes.**

7         Q.      Thank you.  So the stricken text,

8    which means that this text was in the December 18

9    plan -- December 18 of 2021 Plan of Contributing

10   Chartered Organization but was removed when the

11   February 15, 2022 definition of Contributing

12   Chartered Organization was included, reads as

13   follows:  Without limiting the foregoing, subject to

14   confirmation of the Plan, and approval of the other

15   Chartered Organization Settlement by an order of the

16   Bankruptcy Court, including the Confirmation Order,

17   upon the effective date, all other Chartered

18   Organizations, initial caps, shall be designated as

19   Contributing Chartered Organizations subject to the

20   terms of the Century and Chubb Companies Insurance

21   Settlement Agreement.

22          Do you see that, sir?

23   **A.     Yes.**

24        Q.      And is it the Debtors' position that

25   it val -- they validly exercised their business

IN RE BOY SCOUTS AND DELAWARE BSA

1   judgment in removing the language that I just read

2   from the definition of Contributing Chartered

3   Organization, when they filed the February 15, 2022

4   Plan?

5            MR. ANDOLINA:  Objection to the form

6   of the question.

7        **A.     Yes, it is.**

8   BY MR. LLOYD:

9        Q.     Can you tell us why that is, sir?

10       **A.       Again, going through my prior**

11  **testimony and based upon our ongoing conversations**

12  **with counsel, given that this document was the**

13  **subject of a heavily-negotiated period of time, and**

14  **again, deferring to the recommendations made to us as**

15  **the BTF and the NEC by our advisors, we continued to**

16  **believe and support the fact that this was a proper**

17  **exercise for our business judgment.**

18       Q.     And again, I'm not attempting to get

19  at information that is going to be the subject to an

20  objection, but I'm just going to ask the question and

21  give Mr. Andolina an opportunity to answer.

22            Please tell us the advice that you

23  received from your advisors, including your legal

24  counsel that supported your answer just now.

25            MR. ANDOLINA:  Objection to the form.

Page 78

1  That calls for attorney-client privileged

2  communications and I'll instruct not to answer.

3  BY MR. LLOYD:

4       Q.     If we can turn, please, to Paragraph

5  177, Definition.

6       A.     Okay.

7       Q.     Mr. Desai, I'm showing you, this is

8  on page 41 of 304 and it is Paragraph 177, it says:

9  Limited Protected Party Injunction Date.

10              Do you see that, sir?

11      A.     Yes, sir.

12      Q.     And apart from the green text, which

13 indicates the text was moved from somewhere else,

14 this particular provision, the limited protected

15 party injunction date is a new term in the February

16 15, 2022 Plan from the December 18, 2021 plan.

17              Do you understand that, sir?

18      A.     Yes, sir.

19              MR. ANDOLINA:  Objection to form.

20      Q.     And is it the Debtors' position that

21 it validly exercised its business judgment in

22 including this definition Paragraph 177, the limited

23 protected party injunction date in the February 15,

24 2022 plan?

25              MR. ANDOLINA:  Objection to the form.

1          A.        Yes, it is.

2    BY MR. LLOYD:

3          Q.        Can you please tell us why that is?

4          A.        Again, other I'll defer back to my

5    prior answers and also indicate that -- in agreeing

6    to this term, it allows for -- as I described

7    earlier, a pathway, if you will, for a contributing

8    Charter Organization to become a full-fledged

9    participating Charter Org by, again, providing

10   additional compensation to the Settlement Trust for

11   the benefit of abuse survivors.

12         Q.        And is it your understanding that the

13   protection to Participating Chartered Organizations

14   under the February 15, 2022 plan, in contrast to the

15   December 18, 2021 plan, was the same, less or neutral

16   or different -- sorry.

17                   Let me rephrase that question.

18                   Is it your understanding that the

19   protections afforded to Participating Chartered

20   Organizations, under the February 15, 2022 plan, were

21   greater, less or neutral in respect to the

22   protections that participating Chartered

23   Organizations were provided under the December 18,

24   2021 plan?

25                   MR. ANDOLINA:  Objection to form.

1   Beyond the scope.  He can respond in the individual

2   capacity, but I object to the form of the question.

3         **A.       I believe that this provision would**

4   **allow for greater protection for pre-'76 claims to a**

5   **Participating Chartered Organization, because it**

6   **would allow for them to eliminate any abuse-related**

7   **liability pre-'76 by way of becoming a contributing**

8   **charter organization.  Further -- way beyond that of**

9   **what was allowed for through the settling insurer**

10  **concept as a contributing -- I'm sorry, as a**

11  **Participating Chartered Organization.**

12        Q.       And in respect to the Debtors'

13  exercise of its business judgment concerning

14  Paragraph 177, do you have anything to add to your

15  prior answers about the information that the Debtors

16  received and considered?

17        **A.       I don't.**

18               MR. LLOYD:  And Mr. Andolina, if I

19  were to inquire of the witness in respect to advice

20  that he received from his legal counsel, we're going

21  to have the same objection and instruction not to

22  answer as we did with respect to Paragraph 86.

23               MR. ANDOLINA:  Correct.

24               MR. LLOYD:  Okay.  So I appreciate

25  that and we'll try and continue to streamline as we

IN RE BOY SCOUTS AND DELAWARE BSA

1    go.

2    BY MR. LLOYD:

3         Q.        If we can now move, please, to 184.

4                   Mr. Desai, Paragraph 184 in the

5    Definition section of the February 15, 2022 plan

6    defines Mixed Claim.

7                   Do you see that, sir?

8    **A.        Yes.**

9         Q.        And is it your testimony that the

10   Debtors validly exercised their business judgment

11   including this provision in the February 15, 2022

12   plan?

13   **A.        Yes.**

14        Q.        And do you have anything to add in

15   respect to the information that the Debtors

16   considered in the exercise of their business judgment

17   that is in addition to or different from the answers

18   that you've given me with respect to Paragraphs 42,

19   59, 86 and 177?

20   **A.        No, other than the only thing I would**

21   **add was my personal knowledge through attending a**

22   **mediation setting and not getting into the subject**

23   **matter of it, but recognizing that this was an**

24   **actively-negotiated provision amongst all the parties**

25   **to the document.**

IN RE BOY SCOUTS AND DELAWARE BSA

```
 1        Q.      And without revealing the content of

 2   any particular communication, do you know, yes or no,

 3   as you sit here, who first proposed this definition

 4   of Mixed Claim?

 5              MR. ANDOLINA:  Objection to form and

 6   objection to -- it's not a yes/no question, because

 7   as Mr. Desai has testified, the terms of this

 8   agreement were heavily negotiated, so to suggest that

 9   there is one proponent, I just think is a false

10   assumption, so I needed to note that for the record.
```

**11        A.      I don't have personal knowledge as to**

**12   who originated the concept or term, but again, I know**

**13   that this was an actively-negotiated definition,**

**14   which is what appears before you in 184.**

```
15              MR. LLOYD:  And to the extent,

16   Mr. Andolina, that I were to ask Mr. Desai to exhaust

17   his recollection about the contents of his knowledge

18   from the mediation, you'd instruct him not to answer

19   on the grounds of mediation privilege?

20              MR. SCHIAVONI:  I object and I think

21   that requires you to say whether you're waiving

22   mediation communication since you know exactly who

23   the source of this is.

24              THE REPORTER:  And I assume that was

25   Mr. Schiavoni?
```

Page 83

1                   MR. SCHIAVONI:  Yes.

2                   MR. ANDOLINA:  I will instruct him

3    not to answer in terms of the substance of mediation

4    communications, that is correct.

5                   MR. LLOYD:  And similarly,

6    Mr. Andolina, in respect to advice that the Debtors

7    received from their legal advisors, you would give

8    him the same instruction not to answer and divulge

9    the contents of that advice on the grounds of

10   attorney-client privilege?

11                  MR. ANDOLINA:  Yes.  And I will note

12   that we have produced voluminous documentation

13   regarding the meetings of the BTF, NEC and NEB that

14   Mr. Desai participated in that includes the topics

15   that were discussed but I will not have him testify

16   as to the specific legal advice that was provided by

17   counsel.

18                  MR. LLOYD:  Thank you.  I appreciate

19   that.  If we can go to Paragraph 186, please -- I beg

20   your pardon, 196.  My mistake.

21                  MR. ANDOLINA:  I was hoping there was

22   186.  That would have been an easy --

23                  MR. LLOYD:  Everybody is entitled to

24   a couple of softballs.

25

IN RE BOY SCOUTS AND DELAWARE BSA

1  BY MR. LLOYD:

2       Q.     So for 196, Mr. Desai, this is the

3  definition of Opt-Out Chartered Organization.

4              Do you see that, sir?

5       **A.     Yes.**

6       Q.     It appears at Page 44 at 304 and goes

7  onto page 45 of 304 of Exhibit 4, the redline of the

8  February 15, 2022 plan against the December 18, 2022

9  plan.

10             And I would like to direct your

11  attention, Mr. Desai, to the second sentence and it

12  says:  For the avoidance of doubt, Romanette i,

13  Opt-Out Chartered Organizations shall receive the

14  benefit of the channeling injunction applicable to

15  abuse claims covered under any insurance policy

16  issued by the settling insurance companies, and ii,

17  Opt-Out Chartered Organizations, shall not be

18  required to provide assignments and releases with

19  respect to insurance policies issued directly to an

20  Opt-Out Chartered Organization.

21             Do you see that, sir?

22      **A.     Yes.**

23      Q.     And is it the Debtors' position that,

24  in modifying the definition to include the language

25  that I read in Paragraph 196 from the December 18th

1   Plan to the February 15th Plan, the Debtors validly

2   exercised their business judgment?

3                    MR. ANDOLINA:   Objection to form.

4        **A.      Yes.**

5   BY MR. LLOYD:

6        Q.      And if we were to discuss the bases

7   for the Debtors' position that it validly exercised

8   its business judgment, would those be the same

9   considerations that we had discussed in the last few

10  minutes with respect to other paragraphs that were

11  modified between the December 18th and February 15th

12  plans?

13       **A.      Yes.  And I would just -- again,**

14  **keeping to context timeline, between December and**

15  **February 15th, many parties were parts of very active**

16  **negotiations -- I kind of referred to it as the month**

17  **and a half long sessions in Los Angeles, but -- and**

18  **as you can see, the evolution of this plan, which is**

19  **as a result of successful negotiations with the**

20  **various parties that came to a consensus and all**

21  **that, coupled with information provided to the**

22  **Bankruptcy Task Force, the NEC, by our advisors,**

23  **resulted in us exercising our business judgment to**

24  **adopt this language.**

25

```
1   BY MR. LLOYD:

2         Q.      And just to be clear, that month and

3   a half of negotiations that you've just referred to,

4   were you personally a participant in some or -- some

5   of those negotiations?

6         A.      Yes, sir.

7                 MR. LLOYD:  And so, Mr. Andolina, if

8   I were to ask Mr. Desai specifically in respect of

9   the changed definition of Opt-Out Chartered

10  Organization that resulted from those mediation

11  negotiations, you'd instruct him not to divulge his

12  recollection under -- on the grounds of mediation

13  privilege; is that correct?

14                MR. SCHIAVONI:  Objection.

15                MR. ANDOLINA:  Correct, with respect

16  to the parties' mediation positions, yes, I'm not

17  going to allow him to testify as to that.

18                MR. LLOYD:  Okay.  And similarly,

19  given that his testimony about -- on whom the Debtors

20  relied, to the extent that the Debtors relied on

21  advice of legal counsel in exercising their business

22  judgment in respect to Paragraph 196, you'd instruct

23  him not to answer on the grounds of the

24  attorney-client privilege.

25                MR. ANDOLINA:  Yes, with respect to
```

1   specific advice on specific issues, yes.

2   BY MR. LLOYD:

3        Q.        And Mr. Desai, do you have an

4   understanding about the impairment or non-impairment,

5   under this definition 196, in respect to opt-outs

6   versus other Chartered Organizations?

7                 MR. ANDOLINA:  Objection to form of

8   the question; scope; vague.

9                 MR. SCHIAVONI:  I object also to the

10  term "unimpaired"; objection to form.

11       **A.        Mr. Lloyd, I would answer by simply**

12  **telling you that the definitions of participating,**

13  **contributing and Opt-Out Chartered Orgs are specified**

14  **in this document and I defer to that.**

15                MR. LLOYD:  Can we go to Paragraph

16  199, please?  And if we can go to the end of

17  Paragraph 199.  Thank you.

18  BY MR. LLOYD:

19       Q.        And this last sentence of Paragraph

20  199 -- are you with me, Mr. Desai?

21       **A.        Yes, sir.**

22       Q.        Okay.  It's the one that begins:  For

23  the avoidance of doubt.

24       **A.        Yes.**

25       Q.        And the language has been stricken so

Confidential
DEVANG DESAI

1    that the paragraph -- I beg your pardon.

2                    Language has been stricken so that

3    the sentence previously read, that is to say in the

4    December 18, 2021 version of the plan for the

5    avoidance of doubt, so long as they do not object to

6    the Plan or Opt-Out all other Chartered Organizations

7    are participating Chartered Organizations and shall

8    automatically become Contributing Chartered

9    Organizations upon the Effective Date, in accordance

10   with the other settlement and shall be deemed to have

11   made the Participating Chartered Organization

12   settlement contribution.

13                   Do you see that, sir?

14                   MR. SCHIAVONI:  I got it.  I

15   forwarded it on to those other guys, okay?

16                   MR. LLOYD:  Mr. Schiavoni, your mic's

17   on.  Thank you.

18        **A.      I do see that, yes.**

19        Q.      And is it the Debtors' position that

20   it validly exercised its business judgment in

21   removing --

22                   MR. SCHIAVONI:  And I didn't hear

23   you, what were the materials you want?

24                   MR. LLOYD:  Mr. Schiavoni, we're not

25   interested in your privileged conversation either.

1               MR. SCHIAVONI:  Oh, got it.  Got it.

2               MR. LLOYD:  We're all trying to help

3    you out.

4    BY MR. LLOYD:

5          Q.     Okay.  So Mr. Desai, to rewind here;

6    so is it the Debtors' position that the definition

7    that I just read that existed in the December 18 plan

8    and that was removed from the February 22nd plan, is

9    it the Debtors' position that the change in the

10   definition was a valid exercise of the Debtors'

11   business judgment?

12         A.     Yes.

13         Q.     And do you have anything to add in

14   respect to the exercise of that judgment that is

15   different from or in addition to the information that

16   you've provided to us in respect to the other

17   definitions that were added or changed between the

18   December 18 and February 22nd plans that we've been

19   discussing today?

20         A.     No, sir.

21         Q.     And yes or no, do you know which

22   party first proposed changing this sentence?

23               MR. ANDOLINA:  Objection to form for

24   the same reasons from my previous objection.

25         A.     I do not know.

1              MR. LLOYD:  And Mr. Andolina, the

2    same as with respect to mediation privilege, if I

3    were to ask Mr. Desai to share with us what he

4    recalls about the negotiations in the mediation with

5    respect to the change in this last sentence of

6    Paragraph 199, you'd instruct him not to answer on

7    the grounds of mediation privilege?

8              MR. SCHIAVONI:  Objection; calls for

9    a statement of waiver by your Committee.

10             MR. ANDOLINA:  Yeah.  Our position is

11   that Mr. Desai will not testify as to specific

12   mediation positions taken in the mediation.  So yes,

13   correct.

14             MR. LLOYD:  Thank you.  And in

15   respect to legal advice, specific legal advice that

16   the Bankruptcy Task Force and the National Executive

17   Committee received from their legal advisors in

18   respect to this definition change in Paragraph 199,

19   you'd instruct him not to answer to the extent he

20   recalled anything on the grounds of the

21   attorney-client privilege?

22             MR. ANDOLINA:  Yes.

23   BY MR. LLOYD:

24        Q.    If we could turn to Paragraph -- no,

25   let's stick with this paragraph.  I beg your pardon.

IN RE BOY SCOUTS AND DELAWARE BSA

1              So now, Mr. Desai, that last sentence

2    that we were just talking about in the prior

3    definition, that is to say, the December 18, 2021

4    definition, it now says:  For the avoidance of doubt,

5    any Chartered Organization that is a member of an ad

6    hoc group or committee that objects to the

7    confirmation of the Plan shall not be a Participating

8    Chartered Organization.

9              Do you see that?

10   **A.     I do.**

11        Q.      And is it your testimony that the

12   Debtors validly exercised their business judgment in

13   including this new definition in the last sentence of

14   Paragraph 199 in the February 15, 2021 plan?

15              MR. ANDOLINA:  Objection to form.

16   **A.      Subject to my prior testimony, the**

17   **answer still remains yes.**

18              MR. LLOYD:  And Mr. Andolina, to the

19   extent he has information that arises from the

20   mediation, same instruction with respect to mediation

21   privilege?

22              MR. ANDOLINA:  Yes.

23              MR. LLOYD:  And with respect to

24   advice that the Bankruptcy Task Force and National

25   Executive Committee considered from -- the specific

1  advice from their attorneys, same instruction in

2  respect to the attorney-client privilege?

3            MR. ANDOLINA:  Yes.

4            MR. SCHIAVONI:  Objection to form.

5            MR. LLOYD:  If we can go to Paragraph

6  200, please -- let's say 215.  I beg your pardon.

7  BY MR. LLOYD:

8      Q.    I'm showing you, Mr. Desai, Paragraph

9  215 of the Definitions section of the February 15,

10  2022 Plan and it now reads:  Post-1975 Chartered

11  Organization Abuse Claims means any Abuse Claim

12  against a Participating Chartered Organization that

13  relates to Abuse alleged to have first occurred on or

14  after January 1, 1976, period.

15            Do you see that, sir?

16  **A.    Yes.**

17      Q.    Previously in the December 18, 2021

18  Plan, the definition continued after the phrase,

19  after January 1, 1976, and stated the following:

20  Provided, however, that the term, quote, post-1975

21  Chartered Organization Abuse claims, unquote, shall

22  be limited to any claim against a Participating

23  Chartered Organization, it is attributable to, arises

24  from, is based upon, relates to, or results from

25  abuse that occurred in connection, in whole or in

Confidential
DEVANG DESAI

Page 93

1    part, with the Participating Contributing Chartered

2    Organizations or its personnels or affiliates'

3    involvement in or sponsorship of one or more scouting

4    units, including any such claim that has been

5    asserted or may be amended to assert in a proof of

6    claim alleging abuse, whether or not timely filed in

7    the Chapter 11 cases or any such claim that has been

8    asserted against the Settlement Trust, including any

9    proportionate or allocable share of liability based

10   thereon and continues for the avoidance of doubt, no

11   claim alleging abuse shall be a, quote, post-1975

12   Chartered Organization Abuse Claim against a

13   Participating Chartered Organization if such Claim is

14   wholly unrelated to Scouting.

15                 Do you see that, sir?

16        A.      Yes.

17        Q.      And did I read that correctly?

18        A.      You have.

19        Q.      And is it the Debtors' position that

20   it validly exercised its business judgment in

21   removing the language that I just read from the

22   February 15, 2022 definition of post-1975 Chartered

23   Organization Abuse Claims that had previously

24   appeared in the December 18, 2021 Plan?

25                 MR. ANDOLINA:  Objection to the form.

1        A.      Yes, it is.

2        Q.      And with respect to the bases on

3   which the Debtors exercised their business judgment,

4   do you have anything to add or modify with respect to

5   the information that the Debtors considered?

6        A.      I would simply reiterate my prior

7   testimony.

8        Q.      And do you, Mr. Desai, have personal

9   knowledge about the negotiations that led to the

10  change in this definition?

11             MR. ANDOLINA:  Objection to form.

12       A.      My knowledge would come from my

13  participation at mediation sessions in Los Angeles.

14             MR. LLOYD:  And Mr. Andolina, to the

15  extent that Mr. Desai recalls information from those

16  sessions and he was asked about it, you would assert

17  mediation privilege in respect to that testimony?

18             MR. ANDOLINA:  Yes.  And Mr. Lloyd,

19  let me just note for the record that I've been -- for

20  the -- I've been asserting as a co-deponent here,

21  just to speed things along, I have not required you

22  to ask the witness the question and then have me

23  insert the objection, both with respect to mediation

24  and attorney-client privileged issues.

25             I'd just like assurances that the

1    Roman Catholic Ad Hoc Committee does not disagree

2    with the assertions that we have made and sort of my

3    cooperation here won't be subsequently used against

4    my client.

5              MR. LLOYD:  I think we could meet and

6    confer about that.  And if you would prefer that I

7    ask the question directly, I'll ask the question

8    directly and make you assert it.

9              I've only been trying to do this to

10   expedite and be efficient.

11             MR. ANDOLINA:  Yeah.  No, I

12   appreciate that.

13             But by way of example, if your

14   position is that the indication of the mediation

15   privilege or the indication of the attorney-client

16   privilege with respect to specific advice given by

17   the Board -- or given by counsel to the Board on

18   specific issues is somehow inappropriate, I'd rather

19   have a clean record on that.  I don't think that's

20   what you're trying to do here.  But -- I think you're

21   trying to speed things up.  But I just want to avoid

22   having that conversation at a later date.

23             MR. LLOYD:  Well, I appreciate that.

24   Let me just say this for the moment.  I think that I

25   am not suggesting that your instructions to the

 1  witness are, in and of themselves, improper or

 2  inappropriate.

 3           I think the Court has made it very

 4  clear that the testimony today is subject to all

 5  appropriate objections.

 6           What I will say is that whether the

 7  material that Mr. Desai has been instructed not to

 8  testify about is, in fact, mediation privileged or

 9  is, in fact attorney-client privileged, based on

10  positions that the Debtors have taken, is something

11  that we'll have to take up at a later day.

12           I hope that clarifies where we're

13  going.

14           MR. ANDOLINA:  I -- it does on some

15  level.  I'm not sure I understand that based on the

16  position -- based on the positions that the Debtor

17  has taken means and the last thing I want to do is be

18  in a position where you're -- I'm being asked to

19  reproduce Mr. Desai on a specific privilege issue.

20  That's what I'm trying to avoid.

21           MR. LLOYD:  Well, I appreciate that

22  clarification.  I think that, from our perspective,

23  Mr. Andolina, and we'll continue with the deposition,

24  we would not -- we would not anticipate having asked

25  Mr. Desai the questions that we've asked him today

1    and him having received the instructions that he's

2    received, if, in his testimony at the confirmation

3    hearing, we would not expect him to be revealing the

4    contents of communications that he was directed

5    during his deposition not to reveal, either with

6    respect to attorney-client privilege or mediation.

7                So that's what I was referring to

8    when I was referring to the Debtors' positions.

9                MR. ANDOLINA:  Okay.  Understood.

10   BY MR. LLOYD:

11        Q.     If we can turn to -- I want to go to

12   Article IV, S, as in Sam, please.  So it's a little

13   bit of a ways in because we're in Article I.

14                If we can scroll down so Mr. Desai

15   can -- I guess you've got it in front of you, sir.

16   But if you could scroll down to the -- yeah, okay,

17   great.  And if you can scroll up again.  Thank you.

18                So Mr. Desai, this particular

19   provision, which is in Article IV -- it's been

20   redesignated, Section S, it was previously Section R,

21   but the title remains the same.

22                It's Privileged Information and it

23   now reads:  The transfer or assignment of any

24   Privileged Information to the Settlement Trustee

25   shall -- and we need to scroll to the bottom -- be

IN RE BOY SCOUTS AND DELAWARE BSA

1   subject to the terms of the Document Appendix.

2                Do you see that, sir?

3        **A.     Yes.**

4        Q.     And there are several lines of

5   text -- I beg your pardon -- there are several lines

6   of text that have now been stricken to reflect that

7   this particular definition had -- let me withdraw

8   that question.

9                If we can go up to the beginning,

10   please.

11                So in the December 18, 2021 Plan,

12   Mr. Desai, where this was Section IV-R, Privileged

13   Information, it had several lines of additional text

14   that have now been removed in the February 15, 2022

15   definition.

16                Do you see that?

17        **A.     Yes.**

18        Q.     And is it the Debtors' position that

19   it validly exercised its business judgment in

20   modifying this definition between the February 18 --

21   I'm sorry, between the December 18, 2021 Plan and the

22   February 15, 2022 Plan?

23        **A.     Yes, it is.**

24        Q.     And with respect to the bases upon

25   which that business judgment was exercised, do you

Page 99

1    have anything to add or say differently about -- than

2    the prior answers that you've given with respect to

3    other provisions of the changes between the December

4    and February plans?

5         **A.      No, sir.**

6         Q.      Okay.

7              MR. LLOYD:  And Mr. Andolina, if I

8    were to ask Mr. Desai about the negotiated changes

9    that led to the difference between the December 18th

10   and February 15th versions of the definition -- of

11   the provision for privileged information, to the

12   extent that came out of the mediation, you'd instruct

13   him not to answer on the grounds of mediation

14   privilege?

15             MR. ANDOLINA:  Correct.

16             MR. LLOYD:  And to the extent that

17   the Debtor exercised its business judgment based upon

18   the specific advice of counsel in respect to making

19   the changes between December 18, 2021 and February

20   15, 2022, you'd instruct him not to answer on the

21   basis of attorney-client privilege?

22             MR. ANDOLINA:  That's correct.

23             MR. LLOYD:  If we can turn please to

24   Section W, as in Water, a few down.

25   BY MR. LLOYD:

1          Q.          Section W, Mr. Desai, which is on

2     page 90 of 304, is entitled:  Settlement Trust

3     Discovery.

4                    This entire section is in the blue

5     type, which indicates that it was added between the

6     December 18, 2021 Plan and the February 15, 2022

7     Plan.

8                    Do you see that?

**9          A.          I do.**

10          Q.          Okay.  It reads:  Settlement Trust

11     Discovery, the Settlement Trust and holders of Direct

12     Abuse Claims are authorized pursuant to bankruptcy

13     rule 2004 and/or applicable discovery rules to obtain

14     information as set forth in Document Appendix except

15     for the avoidance of doubt to the TCJC.  For the

16     avoidance of doubt, the authorization of any

17     discovery request pursuant to this provision shall

18     not be construed to deprive the recipient of such

19     discovery request of any applicable privilege or

20     immunity from discovery.  The Settlement Trust and

21     holders of direct Abuse Claims shall be able to take

22     whatever steps are necessary to enforce such

23     discovery obligations of Chartered Organizations,

24     excluding TCJC and the United Methodists entities,

25     pursuant to Bankruptcy Rule 2004, Civil Rule 45,

1    other Court resolution processes and under bankruptcy

2    law and applicable nonbankruptcy law.

3                 Do you see that, sir?

4         A.     Yes.

5         Q.     And have I read that correctly?

6         A.     Yes.

7         Q.     Do you know, based on your

8    participation in the mediation sessions between the

9    December 18, 2021 Plan and the February 15, 2022

10   Plan, do you know who first proposed this provision?

11        A.     I do not.

12        Q.     Do you recall discussions in respect

13   to this provision?

14        A.     I do.

15        Q.     Okay.

16               MR. LLOYD:  And if, Mr. Andolina, we

17   were to exhaust Mr. Desai's recollection in respect

18   to those discussions, you would invoke the mediation

19   privilege and instruct him not to answer?

20               MR. SCHIAVONI:  Objection.

21               MR. ANDOLINA:  Yes.  And to the

22   extent -- to the extent the discussions were with

23   counsel, I would invoke the attorney-client

24   privilege.

25               MR. LLOYD:  Thank you.

IN RE BOY SCOUTS AND DELAWARE BSA

 1                    MR. ANDOLINA:  I don't think your

 2   question is specific.

 3                    MR. LLOYD:  Right.  I hadn't gotten

 4   there, but I appreciate the clarification.

 5   BY MR. LLOYD:

 6        Q.     And Mr. Desai, do you have anything

 7   to add in respect to this provision, Article IV-W

 8   Settlement Trust Discovery -- let me ask another

 9   question.  I apologize.  I'll withdraw that question.

10                    Is it the Debtors' position,

11   Mr. Desai, that in including this provision, Article

12   IV-W Settlement Trust Discovery in the February 15,

13   2022 Plan, the Debtors validly exercised their

14   business judgment?

15                    MR. ANDOLINA:  Objection.

16        A.     Yes, it is.

17   BY MR. LLOYD:

18        Q.     And do you have anything to add to

19   the considerations that the Debtor made in respect to

20   including this that is different from or in addition

21   to the other changes between the December 18, 2021

22   Plan and the February 15, 2022 Plan that we've been

23   discussing today?

24        A.     The only thing I would add is that I

25   have specific recollection during several Bankruptcy

1   Task Force NEC meetings of having dialogue amongst

2   the members and our counsel relative to this

3   provision because of the negotiations taking place in

4   late January and February and in particular, I recall

5   negotiations and parties' positions, including the

6   TCC, relative to this provision, and our advisors had

7   made certain presentations, which I do believe are

8   part of the production, at or near the February 10-12

9   timeframe where the BTF NEC authorized our advisors

10  to agree to terms that they felt were appropriate to

11  be able to file an acceptable plan on or before the

12  deadline of February 15th.

13          Q.      And to the extent -- excuse me,

14  Mr. Desai -- did I understand you correctly that you

15  have a specific recollection of a position that was

16  taken in respect to Article IV-W by the TCJC?  I'm

17  not asking about what they said, but you have a

18  specific recollection about that?

19          A.      All I know is that this Provision W

20  was the subject of negotiations and it was one of the

21  points, out of several, that required more active

22  negotiation by our advisors in order to obtain

23  support from the TCC to support the Plan.

24                  MR. ANDOLINA:  I'll just caution

25  Mr. Desai to avoid revealing specific positions.

1            No problem with him testifying as to

2    topics that were discussed by advisors but with

3    respect to specific mediation positions or advice

4    given by counsel, I'll just admonish him not to share

5    such information.

6    BY MR. LLOYD:

7        Q.      If we could turn, please, to Article

8    V.  Here we are, and Section M, please -- Subsection

9    M.

10           And Mr. Desai, if you look at Article

11   V-M, there are additions in blue, which indicate a

12   change from the December 18th to the February 15th

13   Plan.  I think this is just because of the way the

14   redline produced that the numbers start renumbering.

15           But if you look at the second number

16   1 that goes after No. 7 and it says 54 million --

17   actually, let me back up.  I beg your pardon.

18           So this is Section M.  It's called

19   calculation of Minimum Unrestricted Cash and

20   Investments.

21           Do you see that, sir?

22   **A.      Yes, I do.**

23       Q.      And it says:  The minimum amount Of

24   Unrestricted Cash and Investments to be retained by

25   Reorganized BSA on the Effective Date shall be -- and

1    then it has a series of amounts that correspond to a

2    series of date.

3              Do you see that, sir?

4    A.    I do.

5    Q.    And if you go down below No. 7, it

6    says -- there's a new number one, which used to be

7    number 8 and probably is new number 8, but in any

8    event, in the redline it's new No. 1 and it says:  54

9    million if the Effective Date occurs on or after

10   April 1, 2022 but before May 1, 2022.

11             Do you see that, sir?

12   A.    Yes.

13   Q.    And it then says:  43 million if the

14   Effective Date occurs on or after May 1, 2022 but

15   before June 1, 2022.

16             Do you see that, sir?

17   A.    Yes.

18   Q.    And then it says:  34 million if the

19   Effective Date occurs on or after June 1, 2022.

20             Do you see that, sir?

21   A.    Yes.

22   Q.    And is it the Debtors' position that

23   the changes that we just went over, between the

24   December 18, 2021 Plan and the February 15, 2022

25   Plan, were a valid exercise of the Debtors' business

1   judgment?

**2          A.      Yes.**

3                  MR. ANDOLINA:  Objection to form.

4   BY MR. LLOYD:

5          Q.      And beyond the information that

6   you've provided to us about the things that the

7   Debtor considered in exercising its business judgment

8   with respect to other changes that we've been

9   discussing today, between the December 2021 Plan and

10  the February 2022 Plan, do you have anything to add

11  about the information that the Debtors considered?

12                 MR. SCHIAVONI:  Objection to form.

**13         A.      No, other than I would just**

**14  highlight, for this particular topic, dealing with**

**15  unrestricted cash and investments, we relied heavily**

**16  on advice and input and presentations from our**

**17  financial restructuring advisors at Marsal Alvarez in**

**18  order to provide us with the necessary information**

**19  such that we could authorize advisors to negotiate**

**20  what you see before you with the parties in order to**

**21  garner continued support for the Plan.**

22         Q.      If we could turn to S, below M.

23                 And before we get there, in terms of

24  the mantra that we had just been going through,

25  Mr. Desai, in terms of those cash numbers and the

1   corresponding dates, were you personally involved in

2   negotiating those numbers as part of the mediation

3   discussions between December 18 and February 15

4   Plans?

5         A.       No.

6         Q.       I'm sorry, that was a no?

7         A.       You asked me if I was personally

8   involved in negotiating the numbers, meaning, did I

9   negotiate, you know, let us keep a dollar, you keep

10  5, no.  I was not a party to that, no.

11        Q.       Were you generally involved in the

12  negotiations in respect to the ranges of numbers?

13               MR. ANDOLINA:  Objection to form.

14        A.       I would say that I was generally

15  involved, as a member of the BTF and NEC, in

16  discussing with our advisors, various numbers and

17  options and then eventually voting to provide our

18  advisors the parameters in which the organization

19  would support.

20        Q.       Okay.  And what parameters did your

21  advisors suggest?

22               MR. ANDOLINA:  Objection; calls for

23  attorney-client communications.

24  BY MR. LLOYD:

25        Q.       So Mr. Desai, I had understood that

```
 1   you were saying that this was discussion with your

 2   financial advisors.

 3              Were there others, other than your

 4   financial advisors, who were part of those

 5   discussions?

 6        A.     Yes.

 7        Q.     Who else was involved?

 8        A.     There has not been a day where we

 9   have not had our restructuring advisors on the phone

10   or in meetings participating and guiding us through

11   this process.  And so while these discussions were

12   taking place with the BTF and the NEC, I, in addition

13   to our financial advisors, counsel from White & Case

14   was always present.

15        Q.     Okay.

16              MR. LLOYD:  So Mr. Andolina, as we've

17   been doing, so to the extent that the Bankruptcy Task

18   Force and the National Executive Committee relied on

19   advice of counsel in making the changes to Section

20   5M, you'd instruct him not to answer on

21   attorney-client privilege?

22              MR. ANDOLINA:  Correct.

23              MR. LLOYD:  Thank you.

24              Okay.  We can go to -- now if we

25   could go to V-S please.  That's not where we are.  If
```

1    we can scroll up a little bit.  Actually, why

2    don't -- are you -- I'm making very good progress,

3    but do you guys want to take five or ten?

4              MR. ANDOLINA:  Yeah, let's take ten.

5    And do you have a sense, Mr. Lloyd, of how much

6    you've got left?

7              MR. LLOYD:  I sure do.  I think

8    it's -- I think it is more than 20 and less than 40.

9              MR. ANDOLINA:  Wow, that's one of the

10   best estimates I've heard from a lawyer.  Thank you.

11             MR. LLOYD:  You're welcome.

12             MR. ANDOLINA:  All right.  We'll go

13   off.

14             THE VIDEOGRAPHER:  All right.  Going

15   off the record at 10:53 eastern time.

16             (A brief recess was taken.)

17             THE VIDEOGRAPHER:  Everything is

18   recording and we are back on the record at 11:03 a.m.

19   eastern time.

20   BY MR. LLOYD:

21        Q.    So Mr. Desai, you can set aside the

22   blackline we've been talking about and I --

23             MR. LLOYD:  This just occurred to me.

24             So Mike, if it's easier, so I have a

25   few questions on each of the Hartford, Zurich,

1   Clarendon settlements.

2                    If you want to break and get those

3   forms or we can just put them up in the chat.

4                    MR. ANDOLINA:  We can just put them

5   up in the chat.

6                    MR. LLOYD:  That's fine.  All right.

7                    So if the reporter would mark as

8   Exhibit 5 the Hartford Settlement.

9                    (Exhibit 5, Hartford Settlement, was

10          marked for Identification by the court

11          reporter.)

12                   THE REPORTER:  Are we on 5 or 6?

13                   (A discussion was held off the

14          record.)

15                   MR. LLOYD:  So if we can have as 5

16   then the Hartford Settlement.

17   BY MR. LLOYD:

18       Q.    So Mr. Desai, I'm showing you what's

19   been marked as Exhibit 5 and this bears a Docket

20   number in the Bankruptcy of 8816-1.  It's filed on

21   February 15 of 2022 and the heading says Exhibit 1,

22   Hartford Insurance Settlement Agreement.

23                   Do you see that, sir?

24       **A.    Yes, sir.**

25       Q.    And in preparing for today's

1  deposition, did you become or were you generally

2  familiar with the terms and conditions of the

3  Hartford Insurance Settlement Agreement as it

4  respects to Debtors' exercise of business judgment to

5  enter into this settlement agreement?

6       A.    Yes, sir.

7       Q.    And is it the Debtors' position that

8  they validly exercised their business judgment in

9  entering into the Hartford Insurance Settlement

10 Agreement?

11      A.    Yes, it is.

12      Q.    Earlier today -- excuse me,

13 Mr. Desai.  We spoke about the Debtors' exercise of

14 business judgment concerning Century Term Sheet.

15            We spoke about the Debtors' exercise

16 of business judgment in respect to the February 15,

17 2022 Plan and you provided us with information about

18 the considerations and the types of information that

19 the Bankruptcy Task Force and the National Executive

20 Committee considered in exercising its business

21 judgment.

22            Do you recall that testimony?

23      A.    Yes, sir.

24      Q.    And with respect to the Hartford

25 Settlement Agreement, is there anything different

1  that you can share with us that is not mediation

2  privileged and is not attorney-client privileged, as

3  it respects the Hartford Insurance Settlement

4  Agreement for the exercise of its business judgment?

5       A.     The only thing I would add is that at

6  the time that the Hartford Insurance Settlement

7  Agreement was entered into, it involved the support

8  of the Coalition and the Future Claimants'

9  Representative and during the negotiations, of course

10 our counsel provided the BTF and NEC with the updates

11 and positions of various parties.  And eventually,

12 the BTF and NEC authorized our advisors to negotiate

13 to successful conclusion the Hartford Agreement and

14 inside the agreement, one of the conditions that we

15 were very keen on ensuring was the continued

16 building, if you will, of additional support by

17 various other parties, whether it's -- other

18 Chartered Organizations, whether it's other insurers,

19 whoever, to eventually join into what I would call

20 the initial agreement with Hartford as the first

21 insurer to resolve the claims with us.  And this

22 document did speak to the intent and request by the

23 parties to the agreement to allow for ongoing

24 discussions to take place that would allow for

25 further protections of parties who wished to join.

IN RE BOY SCOUTS AND DELAWARE BSA

1       Q.      Is it fair to say that the Hartford

2   Settlement Agreement, which was filed on February

3   15th of 2022, was that agreement or portions of that

4   agreement, were they negotiated as part of the

5   mediation sessions you've been talking to us about

6   today between December and February?

7       **A.      I would say yes.**

8               MR. LLOYD:  And so, Mr. Andolina, to

9   the extent that information that the Bankruptcy Task

10  Force, National Executive Committee, considered in

11  the Debtors' exercise of their business judgment that

12  arose from those mediations, you'd instruct Mr. Desai

13  not to reveal those discussions and information on

14  the basis of mediation privilege?

15              MR. ANDOLINA:  Yes, with respect to

16  specific positions taken in the mediation, but as

17  Mr. Desai has testified to the various topics that

18  were considered and as is reflected from the

19  presentation and minutes to the BTF, the NEC and NEB,

20  those are what they are in terms of the record, but

21  yes, on specific mediation communications, I'm

22  instructing him not to provide those.

23              MR. LLOYD:  And, similarly, with

24  respect to specific communications that the

25  Bankruptcy Task Force and the National Executive

Page 114

1  Committee received from restructuring and insurance

2  counsel in respect to the Hartford Insurance

3  Settlement Agreement, you'd instruct Mr. Desai not to

4  answer on the grounds of attorney-client privilege?

5             MR. ANDOLINA:  Yes, with respect to

6  communications that reflect legal advice, that is

7  correct.

8             MR. LLOYD:  If we can pull up the

9  next agreement, which will be the Zurich Insurance

10  Settlement Agreement.  I promise I won't say that

11  five times fast.

12  BY MR. LLOYD:

13      Q.      Mr. Desai, I'm showing you what has

14  been marked as Exhibit 6, and this is a document.  It

15  bears the reference of 8817-2, filed February 15,

16  2022 and it says Exhibit 2, Zurich Insurance

17  Settlement Agreement.

18             Do you see this, sir?

19      **A.      Yes, sir.**

20             (Exhibit 6, Zurich Insurance

21             Settlement Agreement, was marked for

22             Identification by the court reporter.)

23  BY MR. LLOYD:

24      Q.      And in coming to testify today about

25  the Debtors' exercise of its business judgment in

1   respect to the Zurich Insurance Settlement Agreement,

2   entering into that agreement, is it fair to say that

3   you're generally familiar with the terms and

4   conspiracy of this agreement?

5         A.      Yes, sir.

6         Q.      And is it the Debtors' position that

7   the Debtors validly exercised their business judgment

8   in entering into the Zurich Insurance Settlement

9   Agreement?

10        A.      Yes.

11        Q.      And beyond the information that you

12  have provided to us today, in respect to -- beg your

13  pardon -- the Century Term Sheet, the February 15,

14  2022 Plan and the Hartford Settlement Insurance

15  Agreement, is there any information for you to share

16  in respect to the information that the Debtors

17  considered in exercising their business judgment to

18  enter into the Zurich Insurance Settlement Agreement?

19        A.      The only other thing I would add, and

20  I may have said this previously, but as we continued

21  to evolve in the ability to build a larger settlement

22  trust, the various settlements with insurers all have

23  some interplay in them as it relates to the various

24  definitions that we spent some time on today, and so

25  the agreements needed to continually be modified and

1   negotiated.

2              And as you saw, there were several

3   conversations, both with our advisors through the BTF

4   and the NEC process, but there were also many ongoing

5   mediation sessions that the parties engaged in, in

6   order to achieve what we previously set out to

7   achieve during the initial Hartford Settlement

8   Agreement, which was to protect our Chartered

9   Organizations and as we continued to build on the

10  number of settlements with various insurers and the

11  number of parties that eventually joined these

12  agreements, the parties had to go back and certainly

13  negotiate certain points to allow for the entry of

14  others to come in.  And so our advisors were very

15  active in that process and in terms of the Board or

16  the NEC or the BTF, we were kept abreast of the

17  various updates, negotiations, real-time updates, if

18  you will, even from our advisors as to how agreements

19  and the status of those negotiations were going and

20  where parties were having some level of discussion or

21  breakdown and what could we do in working through the

22  mediator to help facilitate some consensus among the

23  various parties.

24              MR. LLOYD:  And to the extent that

25  Mr. Desai recalls and can share with us,

Page 117

1    Mr. Andolina, specific positions that were taken by

2    parties in respect to the Zurich Insurance Settlement

3    Agreement, during the years in process, you would

4    instruct him not to reveal the contents of that

5    information on the basis of mediation privilege?

6                    MR. ANDOLINA:  That's correct.

7                    MR. LLOYD:  And to the extent that in

8    exercising its business judgment, the Debtors relied

9    on specific legal advice from their legal advisors in

10   exercising their business judgment to enter into the

11   Zurich Insurance Agreement, you'd instruct him not to

12   answer on the grounds of attorney-client privilege?

13                   MR. ANDOLINA:  Correct.

14                   MR. LLOYD:  If we can pull up next

15   the Clarendon Insurance Agreement, please.

16                   (Exhibit 7, Clarendon Insurance

17        Agreement, was marked for Identification by

18        the court reporter.)

19   BY MR. LLOYD:

20        Q.    Mr. Desai, I'm showing you what's

21   been marked as Exhibit 7, and this is -- bears a

22   document locator at the top of 8817-3.  It says:

23   Filed February 2nd -- I'm sorry, filed February 15,

24   2022 and it's got the Case No. 20-10343-LSS.  This is

25   filed in the Debtors' Bankruptcy and it says Exhibit

Page 118

1    3, Clarendon Insurance Settlement Agreement.

2                    And in coming here today to be the

3    representative deponent of the Debtors in respect to

4    the exercise of their business judgment to enter into

5    the Clarendon Insurance Settlement Agreement, is it

6    fair to say, sir, that you are generally familiar

7    with the terms and conditions of this document?

8        **A.      Yes, sir.**

9        Q.      And is it the Debtors' position that

10   they validly exercised their business judgment in

11   deciding to enter into the Clarendon Insurance

12   Settlement Agreement?

13       **A.      Yes, sir.**

14       Q.      And beyond the information that you

15   shared with us with respect to the Century Term

16   Sheet, the February 2022 plan, the Hartford Insurance

17   Settlement Agreement and the Zurich Insurance

18   Settlement Agreement, is there anything different or

19   additional that you have to share about the Debtors'

20   exercise of the business judgment in respect to the

21   Clarendon Insurance Settlement Agreement?

22       **A.      No, sir.**

23                  MR. SCHIAVONI:  Objection to form.

24                  MR. LLOYD:  Mr. Andolina, to the

25   extent that the Debtors exercise of their business

IN RE BOY SCOUTS AND DELAWARE BSA

Page 119

1   judgment was informed by information that they

2   received in the context of the mediation, you'd

3   instruct Mr. Desai not to reveal specific positions

4   that were taken by various mediation parties on the

5   grounds of mediation privilege?

6                 MR. ANDOLINA:  That is correct.

7                 MR. LLOYD:  And to the extent that

8   the Debtors exercise of its business judgment in

9   entering into the Clarendon Insurance Settlement

10  Agreement in which the Debtors considered the advice

11  of restructuring and insurance counsel, you would

12  instruct Mr. Desai not to answer in respect to

13  specific legal advice on the grounds of

14  attorney-client privilege?

15                MR. ANDOLINA:  Correct.

16                MR. LLOYD:  All right.  If we can

17  pull up the Century/Chubb Settlement.  So this is 8.

18                (Exhibit 8, Century/Chubb Settlement

19        Agreement, was marked for Identification by

20        the court reporter.)

21  BY MR. LLOYD:

22     Q.     Mr. Desai, I'm showing you what's

23  been marked as Exhibit 8.  It bears the document

24  locator 8817-1.  It was filed February 15, 2022 and

25  it says:  Exhibit 1, Century and Chubb Companies

Page 120

```
 1   Insurance Settlement Agreement.

 2                   Do you see that, sir?

 3        A.      Yes.

 4        Q.      And in appearing today as the

 5   representative deponent of the Debtors to testify

 6   concerning the exercise of the Debtors' business

 7   judgment to enter into the Century and Chubb

 8   Insurance Companies Settlement Agreement, did you

 9   become generally familiar with the terms and

10   conditions of this document?

11                   MR. SCHIAVONI:  Objection, Counselor.

12   Can you point us to which topic you're referring to?

13   Topic 10 only refers to the Century Term Sheet.  It

14   doesn't refer to the Settlement Agreement.

15                   Which topic are you representing this

16   witness is a 30(b)(6) witness on with regard to the

17   agreement itself?

18                   MR. LLOYD:  Let me pull up the

19   exhibit.

20                   I think it was embedded into Topic

21   No. 10, Mr. Schiavoni, if you're going to object, you

22   can object -- I think there will only be a short

23   number of questions.

24                   But if you're going to object, please

25   state your objection.  I think it was intended to be
```

1    embedded in 10.

2                    MR. SCHIAVONI:  I think the Notice is

3    extremely clear when you wanted to use Agreement, you

4    use it very clearly, in 12 and 13 and 14, you

5    intentionally did not use it with regard to Century.

6    You intentionally did all your questioning about the

7    Term Sheet and not about the Settlement Agreement.

8    It's a hundred percent clear that the witness was not

9    designated on the Settlement Agreement and you didn't

10   seek a designation of the witness on the Settlement

11   Agreement.

12                   So I do object that the testimony is

13   not corporate designee testimony under 10.  10 is

14   only about the term sheet.

15   BY MR. LLOYD:

16        Q.     Okay.  So Mr. Desai, you testified

17   that you generally became familiar with the terms and

18   conditions of Exhibit 8 in preparing to testify

19   today; is that correct?

20        **A.     Yes.**

21        Q.     And is it the Debtors' position that

22   in entering into the Century and Chubb Companies

23   Insurance Settlement Agreement, the Debtors validly

24   exercised their business judgment?

25                   MR. SCHIAVONI:  Objection; outside

1    the scope.

2                    MR. LLOYD:  You may answer.

3          **A.       Yes, we -- yes, we did.**

4    BY MR. LLOYD:

5          Q.       Beyond the information that you've

6    provided to us today in talking about the Debtors'

7    exercise of its business judgment in entering into

8    the Century Term Sheet, the February 15, 2022 plan,

9    the Hartford settlement, the Zurich settlement, the

10   Clarendon settlement, is there any additional

11   information or different information you have to

12   provide to us concerning the Debtors' exercise of its

13   business judgment to enter into the Century and Chubb

14   Insurance Companies Settlement Agreement?

15                   MR. SCHIAVONI:  Objection; outside

16   the scope of the notice and objection to form as

17   incomprehensible.

18                   MR. ANDOLINA:  I'll object to the

19   form.  I will note that Mr. Schiavoni is accurate.

20   There's not a specific designation in the RCAHC

21   notice as to the Century Term Sheet.

22                   With that reservation, I'll allow

23   Mr. Desai to answer questions with respect to the

24   Century -- I'm sorry, with respect to the Century

25   Settlement Agreement.  I'll allow him to answer

```
 1  questions.

 2                MR. SCHIAVONI:  In his personal

 3  capacity, Mr. Andolina, or as a corporate

 4  representative?

 5                MR. ANDOLINA:  I think given the

 6  limited number of questions that have been asked, he

 7  can testify as a corporate representative.

 8        A.      I would simply -- could you reask the

 9  question, please?

10        Q.      Yeah, happy to.

11                So Mr. Desai, you've shared with us

12  today various types of information that the Debtors

13  considered in the exercise of their business judgment

14  in entering into various agreements that we've

15  discussed today and in making certain modifications

16  between the December 2021 Plan and the February 2022

17  Plan.

18                So my question to you is:  In

19  entering into the Century and Chubb Companies

20  Insurance Settlement Agreement, was there additional

21  or different information that you can share with us

22  that the Debtors considered in exercising their

23  business judgment?

24                MR. SCHIAVONI:  Objection to form;

25  incomprehensible and inconsequential.
```

1          A.          The only thing I would add is that by

2    the time that this agreement materialized and

3    finalized and filed with the Court, the Tort

4    Claimants Committee had become a participant in the

5    negotiations with this agreement and as a result of

6    many, many, many settlement-related conversations,

7    not only at the mediation itself and in Los Angeles

8    but also elsewhere, coupled with the information that

9    we, as a Bankruptcy Task Force and the NEC received

10   through the various presentations and conversations

11   with our advisors, I can tell you that the Debtor did

12   exercise its business judgment in fairly and

13   thoroughly evaluating the terms and conditions of the

14   Settlement Agreement with Chubb and Century, and as a

15   result, authorized our advisors to move forward with

16   it.

17          MR. LLOYD:  To the extent that the

18   information that the Debtors considered involved

19   positions that were taken by parties in the mediation

20   that occurred between December of 2021 and February

21   of 2022, Mr. Andolina, you will instruct Mr. Desai

22   not to answer on the grounds of mediation privilege?

23          MR. ANDOLINA:  That's correct.

24          MR. LLOYD:  And to the extent that in

25   exercising its business judgment to enter into the

```
 1   Century and Chubb Companies Insurance Settlement

 2   Agreement, the Debtors relied on specific legal

 3   advice from restructuring and insurance counsel,

 4   you'll instruct him not to answer on the grounds of

 5   attorney-client privilege?

 6                 MR. ANDOLINA:  That's also correct.

 7                 MR. LLOYD:  Mr. Desai, that's all I

 8   have for you today.  I very much appreciate your time

 9   and I appreciate your willingness and preparation.  I

10   know these are long documents and I appreciate your

11   being prepared on them.  Thank you.

12                 THE DEPONENT:  Thank you for your

13   courtesy, Mr. Lloyd.

14                 (A discussion was held off the

15       record.)

16                 THE VIDEOGRAPHER:  Going off the

17   record, 11:25 eastern time.

18                 MS. LUJAN-WOLFF:  Hi, this is Delia

19   Lujan-Wolff.  I have a few questions, but before we

20   get to that, can we just take a five-minute break?

21                 THE VIDEOGRAPHER:  Going off the

22   record, 11:25 eastern time.

23   EXAMINATION BY MS. LUJAN-WOLFF:

24                 THE VIDEOGRAPHER:  We are back on the

25   record at 11:34 eastern time.
```

IN RE BOY SCOUTS AND DELAWARE BSA

1          Q.        Thank you.  So Mr. Desai, this is

2    Delia Lujan-Wolff.  I represent certain survivors of

3    child sexual abuse or creditors in this bankruptcy

4    case and I just have a few questions.

5                    If we can, I believe, go back to

6    Exhibit 3, which is the Century Term Sheet and

7    specifically, I believe it was Paragraph 12.

8                    MR. ANDOLINA:  I'm just going to

9    object to this entire line of questioning.  I don't

10   believe that Ms. Wolff noticed this deposition.  I'll

11   allow her to answer -- ask questions and I'll allow

12   Mr. Desai to answer them, but this deposition was not

13   noticed by Ms. Wolff.  She's a member of the TCC and

14   we did not receive a notice with respect to any

15   categories so I'll reserve my --

16                   MS. LUJAN-WOLFF:  Yeah, well --

17                   MR. ANDOLINA:  I'll reserve my

18   specific objections for your questions.  Go ahead.

19                   MS. LUJAN-WOLFF:  I will just note

20   for the record that I am not a member of the TCC.  I

21   have a client who's on the TCC but I am not a member

22   of the TCC.  I'm counsel for survivors of abuse.

23                   MR. ANDOLINA:  I understand.

24   BY MS. LUJAN-WOLFF:

25         Q.        So just going to refer you, sir, to

1   paragraph 12, what you see there which says:

2   Bankrupt Chartered Organizations, and are you

3   familiar, sir, with this paragraph of the Century

4   Term Sheet?

5          **A.       I have seen this before, yes.**

6   BY MS. LUJAN-WOLFF:

7          Q.       Okay.  I'm not going to go through it

8   but do you recall the Boy Scouts, the BSA, exercising

9   their reasonable business judgment in approving of

10  this term -- approving this term?

11                 MR. ANDOLINA:  Objection to form.

12         **A.       We exercised our --**

13                 MS. LUJAN-WOLFF:  Go ahead.

14         **A.       We exercised our business judgment in**

15  **entering into the entire document as I see before me.**

16  BY MS. LUJAN-WOLFF:

17         Q.       Okay.  Let's just go into the

18  paragraph a little bit.  Now, you see there -- I'll

19  just read it.

20                 It says:  The BSA shall use best

21  efforts to work with the Roman Catholic Ad Hoc

22  Committee and the Chartered Organizations that are

23  Debtors in bankruptcy, the eight bankrupt entities

24  identified on Exhibit K to the Amended Plan, which

25  may be amended to the extent that additional

```
1    Chartered Organizations file for bankruptcy
2    protection prior to entry of the Confirmation Order,
3    the bankrupt chartered organization, to obtain
4    written consent for them to content to the terms
5    thereof and the Agreement.  To the extent that a
6    Bankrupt Chartered Organization will not provide
7    written consent to this Term Sheet and the Agreement,
8    the Parties will use reasonable efforts to jointly
9    resolve such non-consent which may, upon the consent
10   of the Parties, include excluding such Bankrupt
11   Chartered Organization from the protection and
12   benefits otherwise provided herein and in the
13   Agreement provided that the failure to obtain such
14   consent as it applies to the applicable Bankrupt
15   Chartered Organizations shall not be deemed a breach
16   of the Agreement by any Party or a failure to satisfy
17   conditions to the effectiveness of the Agreement or
18   the Amended Plan.  The Parties consent to the
19   foregoing provisions covering the Settling Insurers
20   to apply to any other Settling Insurance Company.
21              Now, sir, I'm sorry I had to read
22   that all, but did I read that accurately?
23        A.    Yes, ma'am.
24        Q.    Okay.  And now that I've read it, and
25   you've had an opportunity to hear it, let me ask
```

1  specifically, not for the whole document, but for

2  this Paragraph 12 of the Term Sheet, did the Debtors

3  exercise reasonable business judgment in approving

4  this paragraph?

5                    MR. ANDOLINA:  Objection to the form

6  of the question.  This is also outside the scope of

7  the Notice and Ms. Wolff did not separately notice a

8  30(b)(6) deposition of Mr. Desai.  Subject to those

9  objections, he can answer.

10         **A.        We did exercise our reasonable**

11  **business judgment in entering into the entire**

12  **document which does contain Paragraph 12 as you just**

13  **read.**

14  BY MS. LUJAN-WOLFF:

15         Q.      And what is the basis for what you've

16  just said?

17         **A.        The basis for what I just said is**

18  **what I previously testified to during Mr. Lloyd's**

19  **questioning as far as what business judgment the BTF**

20  **and the NEC utilized in entering into this agreement.**

21         Q.      Okay.  And at the time that the BSA,

22  the Boy Scouts of America, approved this Paragraph

23  12, Century's settlement amount was 800 million,

24  correct?

25                    MR. ANDOLINA:  Objection to the form

1    of the question.

2         **A.       I would defer to this particular**

3    **document as to what the exact dollar amount was and**

4    **if it says 800, then I would agree.**

5    BY MS. LUJAN-WOLFF:

6         Q.       Okay.  And that amount hasn't

7    changed, correct, up to the current date?

8         **A.       Not that I'm aware of.**

9         Q.       And to your knowledge, did this term

10   change, this Paragraph 12?

11                 MR. ANDOLINA:  Objection to form;

12   vague.

13   BY MS. LUJAN-WOLFF:

14        Q.       In other words, is this Paragraph 12

15   still a provision of a Century agreement?  Is this a

16   term of the agreement?

17        **A.       I would have to look at the finalized**

18   **document to be able to answer that question.**

19        Q.       Okay.  So are you aware of the BSA

20   exercising any reasonable judgment in altering this

21   term, Paragraph 12?

22                 MR. ANDOLINA:  Objection to form.

23   Same objection as to scope.  You can answer

24   individually.

25        **A.       As I indicated previously during**

1   Mr. Lloyd's questioning, the Board, meeting, the NEC

2   as well as the Bankruptcy Task Force, would have

3   relied upon the advice of counsel as well as our

4   discussions during our many conversations in meetings

5   as exhibited by the meeting minutes coupled with the

6   presentations made, as well as the party's ongoing

7   settlement discussions during mediation sessions,

8   which would have then resulted in a finalized version

9   of the Century Term Sheet into the Century Settlement

10  Agreement.

11        Q.      Okay.  So let's go to Paragraph 13,

12  which you looked at earlier with Mr. Lloyd.

13  Paragraph 13 says Opt-Out Chartered Organizations.

14              Do you recall that, sir?

15        A.      Yes, ma'am.

16        Q.      And you recall that this paragraph

17  provides that an Opt-Out Chartered Organization

18  shall -- I'm sorry -- okay.

19              It says here that -- and I'll just

20  read it again:  Under the Amended Plan and as -- as a

21  condition to the Effective Date (waiver of which

22  shall require the prior written consent of, among

23  others, the Settling Insurers) any chartered

24  organization that is not a contributing chartered

25  organization (and is not a Participating Chartered

IN RE BOY SCOUTS AND DELAWARE BSA

Confidential
DEVANG DESAI

Page 132

1   Organization), an Opt-Out Chartered Organization

2   (i.e., a chartered organization that objects to the

3   Amended Plan) shall receive the benefit of the

4   Settling Insurer Policy injunction and the release of

5   all Abuse Claims that are covered under the insurance

6   policies issued by the Settling Insurers on the

7   Release Date.

8             Okay.  So -- and then it says here:

9   No Chartered Organization that is an Opt-Out

10  Chartered Organization may become a contributing

11  Chartered Organization unless a financial

12  contribution -- I'm sorry, I'm reading off my phone

13  and it's small type print, unless (a), a financial

14  contribution is made by or on behalf of such Opt-Out

15  Chartered Organizations, (b), such chartered

16  organization agrees to provide the assignments and

17  releases set forth in Section 9 and 10, and (c), if

18  and to the extent required by BSA, it agrees to

19  cooperate with Youth Protection.

20            So is it correct that in, according

21  to this Paragraph 13, in order for an Opt-Out

22  Chartered Organization to receive the benefits of

23  a -- I'm sorry -- I'm sorry.  You know, I'm just

24  going to strike that.  I'll strike that whole line of

25  questioning regarding Paragraph 13.

1               MS. LUJAN-WOLFF:  Let's look to --

2    let's look to Exhibit 4, please, if you can pull that

3    up and go to Definitions.  I believe it was of -- it

4    was definition 196.  I'll see if I can locate that.

5    Thank you, it looks like you're doing a good job.  I

6    believe that was No. 196.

7               MR. ANDOLINA:  Sorry, Ms. Wolff, are

8    you asking to give him --

9               MS. LUJAN-WOLFF:  Yes, I'm sorry,

10   yes, I'm going to Definition and it's number 196.

11              MR. ANDOLINA:  Okay.  We're losing

12   control of the screen we're on now.  We're on 3 so

13   we've got a ways to go.  There we go.  Now, we're on

14   the same page.

15              MS. LUJAN-WOLFF:  Sorry.

16              MR. ANDOLINA:  Are you controlling

17   that on your phone?

18              MS. LUJAN-WOLFF:  No, I'm not doing

19   anything.  I'm trying to read things and do this all

20   on one screen.

21              MR. ANDOLINA:  All right.  We're

22   moving in the right direction here.  Okay.  Is that

23   what you wanted?

24              MS. LUJAN-WOLFF:  Yes, exactly.

25   Okay.

IN RE BOY SCOUTS AND DELAWARE BSA

1   BY MS. LUJAN-WOLFF:

2        Q.      Now, sir, you testified earlier

3   that -- well, Mr. Lloyd questioned you earlier about

4   the changes that were made to arrive at this third

5   modified plan and you looked specifically at this

6   definition of Opt-Out Chartered Organization,

7   correct?

8                MR. ANDOLINA:  Objection to form.

9        **A.      We did discuss this, yes.**

10  BY MS. WOLFF:

11       Q.      Okay.  So I'm going to direct your

12  attention to to -- I believe it's the last sentence,

13  the last sentence that's on Page 35 there, which is

14  in green.

15               You see that it says:

16  Notwithstanding the foregoing, with respect to any

17  Chartered Organization that is a Debtor in bankruptcy

18  as of the Confirmation Date, such Chartered

19  Organization shall be treated as an Opt-Out Chartered

20  Organization and will only be treated as a

21  Participating Chartered Organization if it advises

22  the Debtors' counsel in writing that it wishes to

23  make the Participating Chartered Organization

24  insurance assignment and for the avoidance of doubt,

25  absent such written advisement, none of such

IN RE BOY SCOUTS AND DELAWARE BSA

Page 135

1   Chartered Organization's rights to or under the Abuse

2   Insurance Policies shall be subject to the

3   Participating Chartered Organization Insurance

4   Assignment, provided, however, that Abuse Claims

5   against the Chartered Organizations shall be subject

6   to the injunction and release applicable to the

7   Opt-Out Chartered Organization Abuse Claims.

8                   Do you see that, sir?

9        **A.     I do.**

10        Q.      Okay.  So now you see that one of the

11   changes that's noted in this blackline is the

12   treatment of Debtor Chartered Organizations as

13   Opt-Out Chartered Organizations, correct?

14                   MR. ANDOLINA:  Objection to form and

15   to scope.

16        **A.      I see that there are modifications**

17   **that have been made to the definition of Opt-Out**

18   **Chartered Organization as of February 15, '22.**

19        Q.      Yes, okay.

20                   And again, it says there that such

21   Chartered Organization, Debtor, Chartered

22   Organization, shall be treated as an Opt-Out Charter

23   Organization.  Okay?

24                   So that is one of the changes that

25   was made and resulting in the third modified plan.

1    That's correct?

2                    MR. ANDOLINA:  Objection to the form.

3         **A.        That is one of the changes that was**

4    **inserted, that's correct.**

5                    MS. LUJAN-WOLFF:  Sorry.  If you

6    could just please scroll up a bit, please so we can

7    get to the top of the definition of Opt-Out Chartered

8    Organization.  Thank you.

9    BY MS. LUJAN-WOLFF:

10        Q.        Now, we see there, above that, the

11   sentence above that in -- in purple, it says there:

12   For the avoidance of doubt, Opt-Out Chartered

13   Organization -- Opt-Out Chartered Organizations shall

14   receive the benefit of the channeling injunction

15   applicable to the Abuse Claims covered under any

16   insurance policy issued by the Settling Insurance

17   Companies and Opt-Out Chartered Organizations shall

18   not be required to provide assignments and releases

19   with respect to insurance policies issued directly to

20   an Opt-Out Chartered Organization.

21                   You see that, correct?

22   **A.        Yes.**

23        Q.        And that is part of the blackline

24   indicating a change to the plan resulting in the

25   third modified plan, correct?

1                   MR. ANDOLINA:  Object to the form.

2          **A.        That's correct, and we're talking**

3    **about a release, as indicated in a document**

4    **applicable to any scouting-related abuse claim only.**

5          Q.        Okay.  So in the third modified plan,

6    we have here a change where a Debtor Chartered

7    Organization, a Bankrupt Chartered Organization is

8    now to receive the benefit of the channeling

9    injunction applicable to abuse claims covered under

10   any insurance policy issued by the Settling Insurance

11   Companies, correct?

12                  MR. ANDOLINA:  Objection to form;

13   calls for a legal conclusion; beyond the scope.

14         **A.        I believe that this definition at**

15   **Paragraph 196 speaks for itself and that it speaks to**

16   **any Opt-Out Charter Organization.**

17   BY MS. LUJAN-WOLFF:

18         Q.        Yes.  And so this change -- this --

19   this black -- the blackline changes here that we

20   looked at -- and we'll go first to the blackline, the

21   change regarding a Chartered Organization that is a

22   Debtor in bankruptcy as of the confirmation date.

23                  Remember, that the first sentence

24   that we looked at as part of this definition?

25                  Can you state whether the BSA

IN RE BOY SCOUTS AND DELAWARE BSA

Confidential
DEVANG DESAI

Page 138

1   exercised its reasonable business judgment in

2   approving this change?

3                    MR. ANDOLINA:  Objection to form;

4   beyond the scope; asked and answered.  You can

5   respond.

6        **A.     I would defer -- the answer -- the**

7   **short answer is yes and I would defer to my prior**

8   **testimony on the BSA exercising its business judgment**

9   **in entering into this modified Paragraph N, the Plan**

10  **in its totality.**

11       Q.     Yes.  And I understand that.  But I

12  don't -- just to be clear, because I don't recall

13  Mr. Lloyd's questioning to be specific as to Bankrupt

14  Chartered Organizations, and so my focus is on the

15  change relating to a Bankrupt Chartered Organization.

16                   And so with that in mind, sir, can

17  you state whether the BSA exercised its reasonable

18  business judgment in approving this change?

19                   MR. ANDOLINA:  Objection to form.

20       **A.     We did and I would defer to my prior**

21  **answers on the exercise of that judgment.**

22  BY MS. LUJAN-WOLFF:

23       Q.     Okay.  There are quite a few other

24  prior answers, so I just need to ask a follow-up.

25                   What is the basis for your position

1    that the BSA exercised reasonable business judgment

2    in approving this change?

3           A.        The Bankruptcy Task Force and the NEC

4    relied on advice of counsel, as well as the various

5    presentations and minutes that have been produced in

6    reference to filing the Plan that you're showing me

7    on February 15th, and based upon those conversations

8    with counsel, coupled with the fact that there were

9    very -- many parties that were actively negotiating

10   various terms to various agreements, which then

11   culminated in the overall settlements achieved,

12   including the support from the Tort Claimants

13   Committee, this Plan was modified, as you see before

14   you and based on approval by the Bankruptcy Task

15   Force and NEC upon recommendation from our advisors,

16   it was filed with the Court.

17          Q.        Do you know who proposed this

18   change --

19                    MR. ANDOLINA:  Objection.

20          Q.        -- regarding Bankrupt Chartered

21   Organizations?

22                    MR. ANDOLINA:  Objection to form.

23   You can -- you can respond to the extent you know

24   without revealing any mediation communications.

25          A.        I do not know.

1    BY MS. LUJAN-WOLFF:

2         Q.      Okay.  Do you know the reasoning

3    behind this change?  I know you testified that you

4    had advice of counsel, but this is a very specific

5    issue, the treatment of Bankrupt Chartered

6    Organizations.

7               What was the reasoning behind this

8    change?

9               MR. ANDOLINA:  Objection to form;

10   beyond the scope of the witness's testimony.

**11        A.      I would simply tell you that we**

**12   relied upon our advisors and their recommendations in**

**13   making the modifications or entering into the**

**14   modifications.**

15   BY MS. LUJAN-WOLFF:

16        Q.      Okay.  And are you -- can you testify

17   to what -- what the advice was?  I mean, you said

18   advisors and so are you able to testify to what the

19   advice was?

20               MR. ANDOLINA:  Objection to form.  He

21   did not testify that he was given specific advice on

22   this paragraph, Ms. Wolff.  As he just said, the

23   paragraph and the entirety of the agreement was

24   negotiated by numerous parties including counsel for

25   the committee on which your client serves, they were

1  heavily involved and this is a result of that

2  discussion.  So I've allowed you, without noticing

3  this deposition, to ask numerous questions.  If you

4  have anything else, please proceed, but that question

5  has been asked and answered.

6  BY MS. LUJAN-WOLFF:

7       Q.     So, sir, are you not able to provide

8  the advice because it's privileged, based on

9  attorney-client privilege?

10              MR. ANDOLINA:  Objection.

11  BY MS. LUJAN-WOLFF:

12      Q.     I'm just trying to understand if

13  you're invoking a privilege to not give a more

14  detailed response behind the reasoning, if you know

15  the reasoning?  Maybe you don't know.

16              MR. SCHIAVONI:  Objection, outside

17  the scope of the notice.

18  BY MS. LUJAN-WOLFF:

19      Q.     Go ahead.

20      **A.     I would simply answer by reiterating**

21  **my prior answer and telling you that any further**

22  **details on the substance of conversations was under**

23  **the attorney-client privilege and one which I will**

24  **not violate.**

25      Q.     Okay.

Page 142

```
 1                  MS. LUJAN-WOLFF:  I have no other

 2    questions.  Thank you.

 3                  THE DEPONENT:  Thank you.

 4                  MR. ANDOLINA:  I don't think anyone

 5    else has questions for Mr. Desai.  So thanks,

 6    everyone, for your time and we'll go off the record.

 7                  THE VIDEOGRAPHER:  Okay.  Going off

 8    the record at 11:57 eastern time.

 9                  (The deposition was concluded at

10          11:57 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

IN RE BOY SCOUTS AND DELAWARE BSA

```
 1    C E R T I F I C A T E

 2              I, JENNIFER WIELAGE, a Notary

 3    Public and Certified Shorthand Reporter, do

 4    hereby state that prior to the commencement

 5    of the examination

 6              DAVANG DESAI

 7              was duly sworn by me to testify

 8    to the truth, the whole truth and nothing

 9    but the truth.

10              I do further state that the

11    foregoing is a true and accurate transcript

12    of the testimony as taken stenographically

13    by and before me at the time, place and on

14    the date hereinbefore set forth.

15              I do further state that I am

16    neither a relative nor employee nor attorney

17    nor counsel of any of the parties to this

18    action, and that I am neither a relative nor

19    employee of such attorney or counsel and

20    that I am not financially interested in this

21    action.   Jennifer L. Wielage

22              _____

23              JENNIFER WIELAGE
                License No. 30X100191600

24

25
```

IN RE BOY SCOUTS AND DELAWARE BSA

**Exhibits**

**Exhibit 1** 7:14 11:24 110:21 119:25

**Exhibit 2** 7:16 14:12,20 16:18 114:16

**Exhibit 3** 7:17 19:24,25 24:14,18 30:25 31:18 32:22 43:3 46:24 51:22 55:16 58:21 65:3,7 67:19 117:25 118:1 126:6

**Exhibit 4** 7:17 68:17,25 69:11 73:6 84:7 133:2

**Exhibit 5** 7:20 110:8,9,19

**Exhibit 6** 7:20 114:14,20

**Exhibit 7** 7:21 117:16,21

**Exhibit 8** 7:22 119:18,23 121:18

**(**

**(a)** 43:6 48:1 132:13

**(b)** 132:15

**(c)** 132:17

**1**

**1** 11:24 13:11 20:10 27:19 92:14, 19 104:16 105:8,10,14,15,19 110:21 119:25

**10** 15:1,4,7,16,21 16:9 24:14 26:17 30:24 31:17,21,25 32:25 37:16 38:11 39:15 48:20 49:13,16 55:15,22 58:20 59:7 67:15 68:11 120:13,21 121:1,13 132:17

**10-12** 103:8

**10:53** 109:15

**11** 12:12 15:7,21 16:18 17:8 36:21 37:11,19 38:4 67:15 68:11 69:2, 18 93:7

**11:03** 109:18

**11:25** 125:17,22

**11:34** 125:25

**11:57** 142:8,10

**12** 15:21 18:3,16 121:4 126:7 127:1 129:2,12,23 130:10,14,21

**13** 11:23 15:7,21 18:18 19:5 32:18,22 33:2,8,11 37:22,23 38:4, 8,14 43:3 46:24 47:12,21 49:10 55:16 65:3 67:15 68:11 121:4 131:11,13 132:21,25

**13(b)** 48:18

**13th** 12:13

**14** 15:8,21 19:10,21 20:16 39:4 66:23 67:6,11 121:4

**15** 15:8 17:11 67:18,19 68:13 69:16 76:11 77:3 78:16,23 79:14, 20 81:5,11 84:8 91:14 92:9 93:22 98:14,22 99:20 100:6 101:9 102:12,22 105:24 107:3 110:21 111:16 114:15 115:13 117:23 119:24 122:8 135:18

**15th** 69:24 72:23 85:1,11,15 99:10 103:12 104:12 113:3 139:7

**17** 70:14

**177** 17:13 78:5,8,22 80:14 81:19

**18** 70:14 76:8,9 78:16 79:15,23 84:8 88:4 89:7,18 91:3 92:17 93:24 98:11,20,21 99:19 100:6 101:9 102:21 105:24 107:3

**184** 17:13 81:3,4 82:14

**186** 83:19,22

**18th** 69:23 84:25 85:11 99:9 104:12

**196** 17:13 83:20 84:2,25 86:22 87:5 133:4,6,10 137:15

**1976** 92:14,19

**199** 87:16,17,20 90:6,18 91:14

**1A** 70:11

**2**

**2** 14:12,15,16,20 16:18 27:20 114:16

**20** 109:8

**20-10343-LSS** 117:24

**200** 92:6

**2004** 100:13,25

**2021** 20:17 23:14 39:4 53:16 63:14 66:10 76:9 78:16 79:15,24 88:4 91:3,14 92:17 93:24 98:11,

21 99:19 100:6 101:9 102:21 105:24 106:9 123:16 124:20

**2022** 9:9 11:23 12:13 14:11 17:11 69:16 72:24 76:11 77:3 78:16,24 79:14,20 81:5,11 84:8 92:10 93:22 98:14,22 99:20 100:6 101:9 102:13,22 105:10,14,15,19,24 106:10 110:21 111:17 113:3 114:16 115:14 117:24 118:16 119:24 122:8 123:16 124:21

**215** 17:13 92:6,9

**22** 135:18

**22nd** 89:8,18

**269** 17:13

**27** 75:25

**294** 17:14

**2nd** 117:23

**3**

**3** 19:24,25 20:10 24:14,18 30:25 31:18 32:22 43:3 46:24 51:22 55:16 58:21 65:3,7 67:19 118:1 126:6 133:12

**30(b)(6)** 11:22,25 14:22,23 24:25 41:10 74:12 120:16 129:8

**304** 70:14 75:25 78:8 84:6,7 100:2

**34** 105:18

**35** 134:13

**4**

**4** 68:17,25 69:11 73:6 84:7 133:2

**40** 109:8

**41** 78:8

**42** 17:13 70:11,16 71:3 73:5 81:18

**43** 105:13

**44** 84:6

**45** 17:13 84:7 100:25

**5**

**5** 107:10 110:8,9,12,15,19

**54** 104:16 105:8

**59** 17:13 72:8,12,16 73:9,22 75:6,
13 81:19

**5M** 108:20

---

**6**

**6** 110:12 114:14,20

---

**7**

**7** 104:16 105:5 117:16,21

**7772** 20:8

**7:45** 16:12

---

**8**

**8** 14:11 105:7 119:17,18,23
121:18

**800** 129:23 130:4

**8295** 12:9

**86** 17:13 75:11,19 80:22 81:19

**8814-1** 70:16 71:15

**8816-1** 110:20

**8817-1** 119:24

**8817-2** 114:15

**8817-3** 117:22

**8:07** 9:10

---

**9**

**9** 15:7 21:1,6,15 22:20 35:5,12
37:16 38:11 39:14 48:20 49:13,16
51:22 67:15 68:11 132:17

**90** 100:2

**9:07** 51:16

**9:23** 51:19

**9:49** 68:24

**9:53** 69:8

**9th** 9:9

---

**A**

**a.m.** 9:10 51:19 109:18 142:10

**ability** 23:17 53:8 115:21

**abreast** 116:16

**absent** 134:25

**absolutely** 31:2 32:16 51:13
55:14 68:20

**absolve** 61:1

**abuse** 22:3,13 23:25 26:8,12
27:8,9 28:10,11 29:5,9 30:1 34:2
35:1,21,25 36:8 37:1,6 40:16
42:21 45:12,14 49:1,4 58:3,6,7
61:2 67:20 71:21 79:11 84:15
92:11,13,21,25 93:6,11,12,23
100:12,21 126:3,22 132:5 135:1,
4,7 136:15 137:4,9

**abuse-related** 80:6

**acceptable** 103:11

**accordance** 88:9

**account** 47:5,18

**accrued** 57:24

**accurate** 41:2 122:19

**accurately** 128:22

**achieve** 22:11 60:21 71:19,20
116:6,7

**achieved** 139:11

**action** 27:8 28:10 36:7 57:23
58:13

**actions** 58:11,16

**active** 34:18 35:3 53:23 71:17
73:13 85:15 103:21 116:15

**actively** 21:22 23:12 50:13 61:9
64:10,15 139:9

**actively-negotiated** 81:24
82:13

**ad** 11:21,24 12:9 23:5 47:8 56:13
91:5 95:1 127:21

**add** 31:8 37:17 38:12,16 59:8
68:11 73:7,12 80:14 81:14,21
89:13 94:4 99:1 102:7,18,24
106:10 112:5 115:19 124:1

**added** 89:17 100:5

**addition** 27:14,18 29:12 45:8
50:4 55:11 56:10 64:8 81:17
89:15 102:20 108:12

**additional** 22:9,16 23:24 38:25
40:3,20 41:6,14,20 42:6 43:13
44:17 45:16,24 46:2,3 48:11
50:20 67:12 73:15 79:10 98:13
112:16 118:19 122:10 123:20
127:25

**additions** 104:11

**adequate** 23:19 50:16

**administer** 9:18

**admonish** 104:4

**adopt** 85:24

**advice** 47:5 53:5 59:24 71:12
77:22 80:19 83:6,9,16 86:21 87:1
90:15 91:24 92:1 95:16 99:18
104:3 106:16 108:19 114:6 117:9
119:10,13 125:3 131:3 136:4
140:4,17,19,21 141:8

**advised** 59:14 62:23 66:3

**advisement** 134:25

**advises** 134:21

**advisors** 23:2 25:6 34:21,24
47:6,9 50:5,13 53:17 54:1,7,11
55:2 60:11 61:10,11 63:11 64:9
71:13 77:15,23 83:7 85:22 90:17
103:6,9,22 104:2 106:17,19
107:16,18,21 108:2,4,9,13 112:12
116:3,14,18 117:9 124:11,15
139:15 140:12,18

**affiliated** 45:14 54:13,16 63:16

**affiliates'** 93:2

**afforded** 36:24 79:19

**agree** 31:25 35:11 48:9 54:13
103:10 130:4

**agreed** 42:15

**agreeing** 15:6 21:6,14 22:20
37:11 38:8 45:22 46:19 58:21
68:4 79:5

**agreement** 18:6,9,21 19:13 24:2,
8 31:7,15 34:16 35:4 38:22 46:24
47:12 49:6 50:14 56:12 58:9
60:23 64:14 73:17 76:21 82:8
110:22 111:3,5,10,25 112:4,7,13,

14,20,23 113:2,3,4 114:3,9,10,17,
21 115:1,2,4,9,15,18 116:8 117:3,
11,15,17 118:1,5,12,17,18,21
119:10,19 120:1,8,14,17 121:3,7,
9,11,23 122:14,25 123:20 124:2,
5,14 125:2 128:5,7,13,16,17
129:20 130:15,16 131:10 140:23

**agreements** 21:25 58:8 115:25
116:12,18 123:14 139:10

**agrees** 48:19 49:12 132:16,18

**ahead** 53:14 126:18 127:13
141:19

**alleged** 30:1 92:13

**alleging** 93:6,11

**allocable** 93:9

**allowed** 38:20,23 52:17 80:9
141:2

**allowing** 24:9

**altering** 130:20

**Alvarez** 106:17

**amended** 12:24 13:15 14:10,12,
21,23 55:22 56:15 69:1,18 70:21,
22 71:4 72:18 73:9 93:5 127:24,
25 128:18 131:20 132:3

**America** 9:14 12:11 21:22 50:7
60:20 65:24 129:22

**amount** 70:17 71:4 104:23
129:23 130:3,6

**amounts** 105:1

**analysis** 45:24 50:19

**and/or** 24:2,7 46:12 100:13

**Andolina** 11:6 12:21 13:5,14,23
15:17 16:12 21:9 22:21 24:24
25:23 28:23 30:11,13 32:3,12
33:6,15 34:6,13 35:14,23 36:11,
17 38:15 39:11,24 40:7,24 41:9
42:13 43:16,21,25 44:3,6,9,20,22
46:4 47:1,16 48:14 49:18 50:22
51:11,14 52:7,20 53:1,9,12 54:19
56:5 57:1 58:25 59:19 60:2 61:19
62:4,20 63:18 64:21 65:19 66:14
67:8 68:18,22 71:7,25 72:4 73:1,
11,19,23 75:7,15 77:5,21,25
78:19,25 79:25 80:18,23 82:5,16
83:2,6,11,21 85:3 86:7,15,25 87:7
89:23 90:1,10,22 91:15,18,22
92:3 93:25 94:11,14,18 95:11

96:14,23 97:9 99:7,15,22 101:16,
21 102:1,15 103:24 106:3 107:13,
22 108:16,22 109:4,9,12 110:4
113:8,15 114:5 117:1,6,13 118:24
119:6,15 122:18 123:3,5 124:21,
23 125:6 126:8,17,23 127:11
129:5,25 130:11,22 133:7,11,16,
21 134:8 135:14 136:2 137:1,12
138:3,19 139:19,22 140:9,20
141:10 142:4

**Andolina's** 16:21

**Angeles** 85:17 94:13 124:7

**answering** 64:24

**answers** 10:12 15:18 37:15,21
38:10 49:22 79:5 80:15 81:17
99:2 138:21,24

**anticipate** 96:24

**anticipating** 10:11,12

**anyone's** 30:21

**apologies** 12:21

**apologize** 27:11 102:9

**appeared** 93:24

**appearing** 120:4

**appears** 70:20 72:16 82:14 84:6

**Appendix** 17:17 98:1 100:14

**applicable** 84:14 100:13,19
101:2 128:14 135:6 136:15 137:4,
9

**applies** 128:14

**apply** 11:10 32:1 128:20

**approval** 76:14 139:14

**approved** 129:22

**approving** 127:9,10 129:3 138:2,
18 139:2

**April** 105:10

**arises** 29:20 91:19 92:23

**arising** 57:24 58:1

**arose** 113:12

**arrive** 134:4

**arrived** 45:17

**Article** 17:12,14,15 70:11 97:12,
13,19 102:7,11 103:16 104:7,10

**asks** 52:6

**assert** 93:5 94:16 95:8

**asserted** 93:5,8

**asserting** 94:20

**assertions** 95:2

**assign** 48:25

**assigned** 28:2

**assignment** 28:1,4 32:9,10,25
33:5,13 34:4,11 40:3 57:9,15,16
97:23 134:24 135:4

**assignments** 39:14 48:19 49:12,
15 84:18 132:16 136:18

**assume** 16:21 82:24

**assumption** 82:10

**assurances** 94:25

**attach** 25:9

**attached** 20:6

**attachment** 20:11

**attempted** 50:19

**attempting** 77:18

**attending** 81:21

**attention** 72:12 75:24 84:11
134:12

**attorney-client** 11:2 22:23
53:10 60:5,15 78:1 83:10 86:24
90:21 92:2 94:24 95:15 96:9 97:6
99:21 101:23 107:23 108:21
112:2 114:4 117:12 119:14 125:5
141:9,23

**attorneys** 9:16 92:1

**attributable** 29:20 58:2 92:23

**authorization** 100:16

**authorize** 31:6 106:19

**authorized** 34:24 47:9 100:12
103:9 112:12 124:15

**authorizing** 61:10

**automatically** 88:8

**avoid** 64:25 95:21 96:20 103:25

**avoidance** 84:12 87:23 88:5
91:4 93:10 100:15,16 134:24
136:12

**aware** 32:7 33:4 36:14 66:19 130:8,19

---

**B**

**back** 20:13 27:2 35:5 44:7,8 51:18 52:15 64:3 69:7 79:4 104:17 109:18 116:12 125:24 126:5

**bad** 11:17 63:7

**bankrupt** 127:2,23 128:3,6,10,14 137:7 138:13,15 139:20 140:5

**bankruptcy** 9:7 21:20 22:4,5,17 23:1 31:12 34:20,23 49:25 50:18 52:1 53:16 54:5 60:16 61:14 62:10,16 63:9,12 70:15 76:16 85:22 90:16 91:24 100:12,25 101:1 102:25 108:17 110:20 111:19 113:9,25 117:25 124:9 126:3 127:23 128:1 131:2 134:17 137:22 139:3,14

**based** 10:23 11:1 29:20 31:9,11 33:21,23 34:17 47:6 52:11 54:3 66:8 71:12 72:5 77:11 92:24 93:9 96:9,15,16 99:17 101:7 139:7,14 141:8

**bases** 85:6 94:2 98:24

**basically** 40:12

**basis** 31:3 41:13 44:23 55:10 99:21 113:14 117:5 129:15,17 138:25

**Bear** 27:17

**bears** 110:19 114:15 117:21 119:23

**beg** 30:8 36:24 38:4 40:22 55:16 65:6 71:2 83:19 88:1 90:25 92:6 98:5 104:17 115:12

**beginning** 20:7 52:16 55:17,19 98:9

**begins** 26:21 87:22

**behalf** 39:22 43:7 45:10 48:2 132:14

**belabor** 16:20 73:18

**benchmarks** 54:3

**beneficiary** 45:11

**benefit** 26:14 27:19 29:3,13

33:20 56:18 79:11 84:14 132:3 136:14 137:8

**benefits** 25:22 57:22 128:12 132:22

**bids** 52:6

**bit** 10:14 29:22 35:8,9 36:2,3 76:2 97:13 109:1 127:18 136:6

**black** 68:16 137:19

**blackline** 69:2,19 109:22 135:11 136:23 137:19,20

**block** 24:9

**blue** 72:17 100:4 104:11

**board** 21:21 22:6 30:19 31:14 34:20,24 50:2,18 52:13 53:21 54:10 60:10,16 61:9,15,21 95:17 116:15 131:1

**Boon** 60:12

**Boone** 23:2

**bottom** 26:18,19,21 35:6 97:25

**Boy** 9:13 12:10 21:22 40:19 50:7 60:19 65:24 127:8 129:22

**breach** 128:15

**break** 11:10 46:12 51:10 110:2 125:20

**breakdown** 116:21

**breath** 11:6

**briefed** 62:11,12 63:10

**briefings** 62:15

**briefly** 55:19

**bring** 60:24

**broadly** 35:18

**BSA** 9:14 12:11 22:4 23:3,14 24:7 28:20 30:3 50:17 54:12,13,16 60:16 70:17 71:3,15,20 104:25 127:8,20 129:21 130:19 132:18 137:25 138:8,17 139:1

**BSA's** 22:11

**BTF** 52:12 61:25 62:22 77:15 83:13 103:9 107:15 108:12 112:10,12 113:19 116:3,16 129:19

**bucket** 63:17,25

**buckets** 61:16 62:19

**build** 50:8 71:17 115:21 116:9

**building** 24:9 112:16

**bunch** 70:8

**business** 15:6,22 16:14 17:1,9 18:1,5,15,20 19:5,11,21 21:8,14 22:20 26:1 31:1 37:12,18 38:3,7, 13 45:22 46:18,22 47:3,4,14 48:8 49:9,22 58:23 59:5,10,13 67:7,13 68:6,12 71:6,23 72:25 73:8 76:25 77:17 78:21 80:13 81:10,16 85:2, 8,23 86:21 88:20 89:11 91:12 93:20 94:3 98:19,25 99:17 102:14 105:25 106:7 111:4,8,14,16,20 112:4 113:11 114:25 115:7,17 117:8,10 118:4,10,20,25 119:8 120:6 121:24 122:7,13 123:13,23 124:12,25 127:9,14 129:3,11,19 138:1,8,18 139:1

---

**C**

**cadence** 53:3

**calculation** 104:19

**call** 112:19

**called** 37:23 104:18

**calls** 34:7 40:8 53:20 78:1 90:8 107:22 137:13

**camera** 74:19,22

**capacity** 25:1 56:23 57:2 65:22 80:2 123:3

**caps** 76:18

**caption** 69:17

**carries** 24:14 29:11

**case** 59:17 60:13 108:13 117:24 126:4

**cases** 12:12 93:7

**cash** 70:17 71:3 104:19,24 106:15,25

**categories** 16:2 61:6 126:15

**Catholic** 11:21,24 12:9 54:25 65:15 66:12,20 95:1 127:21

**Catholics** 64:11,13,20

**caution** 103:24

**caveat** 60:7

**caveats** 53:7

**Century** 15:7 19:24,25 20:5,10, 20 21:7,16 24:18,23 25:22 30:24 35:3 37:11 38:8,19,21 45:23 46:19,24 47:13 48:9 49:24 50:15 51:22,25 52:24 54:23 58:21,22 59:15 60:1 63:14 64:7,9,14 65:14 67:4,19 68:5 76:20 111:14 115:13 118:15 119:25 120:7,13 121:5,22 122:8,13,21,24 123:19 124:14 125:1 126:6 127:3 130:15 131:9

**Century's** 129:23

**Century/chubb** 21:18 22:8 23:9 31:15 61:11 119:17,18

**certified** 9:4

**challenging** 10:14

**change** 89:9 90:5,18 94:10 104:12 130:10 136:24 137:6,18, 21 138:2,15,18 139:2,18 140:3,8

**changed** 86:9 89:17 130:7

**changing** 89:22

**channeled** 37:3

**channeling** 26:14 29:4 84:14 136:14 137:8

**Chapter** 12:12 69:1,18 93:7

**chart** 62:22

**charter** 25:5 32:6 33:4 79:8,9 80:8 135:22 137:16

**chartered** 12:16 13:12 15:8 17:18,19 18:7,8,10,22,24 19:13, 15 23:10,20,25 24:16,21,22 25:3, 4,8,18,21 26:2,6,10,13,22 27:4, 21,24 28:3,6 29:1,3,6,15,19 30:4 31:21 32:1,8,11,23 33:1,3,12,17, 19,22,25 34:4,11 35:12,16 36:15 37:24 39:2,5,9,10,21 40:4,12,14, 20 41:6 42:7,16 43:4,5,7 44:18 45:3,6,10,12,18,25 46:1 47:8,21, 22,23 48:3,12,18,23 49:11,17 50:6,20 55:13,21 56:20 57:6,19 58:15 60:18,21,25 61:7 62:13,14, 18,23 63:15 64:6,16,20 65:6,10, 17,18,25 66:3,11,18,22 67:21 72:13 75:20 76:10,12,15,17,19 77:2 79:13,19,22 80:5,11 84:3,13, 17,20 86:9 87:6,13 88:6,7,8,11 91:5,8 92:10,12,21,23 93:1,12,13,

22 100:23 112:18 116:8 127:2,22 128:1,3,6,11,15 131:13,17,23,24, 25 132:1,2,9,10,11,15,22 134:6, 17,18,19,21,23 135:1,3,5,7,12,13, 18,21 136:7,12,13,17,20 137:6,7, 21 138:14,15 139:20 140:5

**charters** 61:16

**charts** 61:5

**chat** 11:20 110:3,5

**child** 126:3

**choses** 57:23

**Chris** 9:3

**Chubb** 20:21 76:20 119:25 120:7 121:22 122:13 123:19 124:14 125:1

**church** 66:20

**Civil** 100:25

**claim** 29:8,9,18 34:2 35:25 40:16 42:21 45:12,14 49:4 81:6 82:4 92:11,22 93:4,6,7,11,12,13 137:4

**Claimants** 124:4 139:12

**Claimants'** 112:8

**claims** 12:16 13:11 26:8,9,12 27:5,8,9 28:2,7,10,11 29:4,6 30:1 36:7,8,9 37:1,6 49:1 57:21 58:6,7, 9,10 61:2 67:20 80:4 84:15 92:11, 21 93:23 100:12,21 112:21 132:5 135:4,7 136:15 137:9

**Clarendon** 18:21,23 110:1 117:15,16 118:1,5,11,21 119:9 122:10

**clarification** 35:20 49:7 53:14 96:22 102:4

**clarifies** 96:12

**clarify** 53:10 61:20

**clarity** 62:1

**clean** 95:19

**clear** 10:20 11:8 16:11 45:19 62:21 63:1 69:15 86:2 96:4 121:3, 8 138:12

**client** 95:4 126:21 140:25

**closed** 15:9

**co-deponent** 94:20

**Coalition** 23:15 56:12 71:15 112:8

**coinsureds** 36:25 37:2

**colloquy** 74:11

**colon** 27:25

**comment** 16:22

**committee** 21:21 22:6,18 23:5 31:13 50:1 52:1 54:10 61:23 62:1, 11,17 63:10,12 90:9,17 91:6,25 95:1 108:18 111:20 113:10 114:1 124:4 127:22 139:13 140:25

**Committee's** 11:21,25 12:10

**communication** 60:5 82:2,22

**communications** 22:15,23 64:23 78:2 83:4 97:4 107:23 113:21,24 114:6 139:24

**companies** 20:21 76:20 84:16 119:25 120:8 121:22 122:14 123:19 125:1 136:17 137:11

**Company** 58:6 128:20

**comparison** 69:22

**compensate** 22:12 23:25 35:1 39:1 50:10 71:21

**compensation** 79:10

**complete** 28:5 45:13

**completely** 10:16

**compound** 46:5 61:20

**conceivable** 10:24 11:17

**concept** 80:10 82:12

**concerns** 68:13

**concluded** 142:9

**conclusion** 34:7 40:9 112:13 137:13

**condition** 55:23 56:15 131:21

**conditions** 39:6 41:16 57:10 111:2 112:14 118:7 120:10 121:18 124:13 128:17

**confer** 95:6

**confidential** 75:4

**confidentiality** 72:6 73:24 74:4

**confirmation** 24:7 39:17 55:9 76:14,16 91:7 97:2 128:2 134:18

137:22

**conjunctive** 47:24

**connection** 92:25

**cons** 23:7

**consensus** 71:18 85:20 116:22

**consent** 55:24 56:17 128:4,7,9,
14,18 131:22

**considerations** 59:9 85:9
102:19 111:18

**considered** 48:11 80:16 81:16
91:25 94:5 106:7,11 111:20
113:10,18 115:17 119:10 123:13,
22 124:18

**conspiracy** 115:4

**constituency** 55:1

**construed** 100:18

**consultation** 23:4 71:13

**contemplated** 23:17 60:22
64:14

**contemporaneous** 52:2

**content** 82:1 128:4

**contents** 82:17 83:9 97:4 117:4

**context** 26:19 27:1 56:25 85:14
119:2

**contingent** 58:1

**continually** 38:23 115:25

**continue** 12:22 22:7 23:18 24:8
50:8,9,12 55:7 60:23 71:17 80:25
96:23

**continued** 38:18 53:21 77:15
92:18 106:21 112:15 115:20
116:9

**continues** 57:18 93:10

**continuing** 23:23 39:3

**contract** 41:15,16 42:25

**contrast** 79:14

**contributing** 25:5,10 29:19 30:4
33:24 39:5 40:13 42:18 43:5 45:9
47:23 48:22 60:18 61:18 62:13
64:5,16,19 65:10,16,18 66:8
75:20 76:9,11,19 77:2 79:7 80:7,
10 87:13 88:8 93:1 131:24 132:10

**contribution** 25:20 27:23,25
39:13,19 40:6 43:6,15 44:13,16
48:2 72:13 88:12 132:12,14

**contributions** 38:25

**control** 133:12

**controlling** 133:16

**controversy** 70:6

**conversation** 54:6 88:25 95:22

**conversations** 23:6,21 31:9,12
51:4 52:11 59:16 60:17 61:3
63:20 77:11 116:3 124:6,10 131:4
139:7 141:22

**convert** 66:6

**cooperate** 132:19

**cooperation** 95:3

**copies** 68:19

**copy** 69:12

**corporate** 121:13 123:3,7

**correct** 10:3 16:12 21:3 31:23
35:13,22 37:13 39:23 44:19 46:25
47:14 53:12 80:23 83:4 86:13,15
90:13 99:15,22 108:22 114:7
117:6,13 119:6,15 121:19 124:23
125:6 129:24 130:7 132:20 134:7
135:13 136:1,4,21,25 137:2,11

**correctly** 15:12,13 18:25 28:14
93:17 101:5 103:14

**correspond** 105:1

**council** 40:21 41:7 42:7 43:13
44:19 46:3 48:13 50:3,4,21

**councils** 23:5 28:21 30:3 40:5
47:9 54:21

**counsel** 10:24 15:20 17:7,24
18:14 19:3,19 21:19 22:7,16,24,
25 23:1 31:9 50:15 52:12,24 53:6,
20 59:25 60:13 61:14 74:13
77:12,24 80:20 83:17 86:21 95:17
99:18 101:23 103:2 104:4 108:13,
19 112:10 114:2 119:11 125:3
126:22 131:3 134:22 139:4,8
140:4,24

**Counselor** 120:11

**count** 43:14

**couple** 10:13 11:17 32:18 83:24

**coupled** 22:3 50:5 53:20 85:21
124:8 131:5 139:8

**court** 9:5,7,17 10:22 11:8 12:1
13:21 14:14 20:1 25:14,16 44:7
54:4 55:6 66:4 69:4 70:15 76:16
96:3 101:1 110:10 114:22 117:18
119:20 124:3 139:16

**courtesy** 125:13

**cover** 55:18 58:6

**coverage** 27:9 28:11 34:5 36:8
58:7

**coverages** 51:2

**covered** 37:2 55:17 84:15 132:5
136:15 137:9

**covering** 36:7 128:19

**created** 70:1,5

**creditors** 126:3

**critically** 55:6

**culminated** 139:11

**current** 130:7

**D**

**dance** 59:23

**date** 9:9 30:2 37:1,5 39:3 55:23
56:16 57:22 76:17 78:9,15,23
88:9 95:22 104:25 105:2,9,14,19
130:7 131:21 132:7 134:18
137:22

**dated** 11:23 14:11 20:16 69:16

**dates** 107:1

**David** 17:16

**day** 96:11 108:8

**days** 54:2

**deadline** 22:1,2 55:5 103:12

**deal** 47:18 61:11

**dealing** 106:14

**debtor** 23:17 30:25 31:6 45:23
55:7 59:9 74:12,13 96:16 99:17
102:19 106:7 124:11 134:17
135:12,21 137:6,22

**Debtor's** 21:5

**Debtors** 11:22,25 12:11 13:10 14:22,24 15:15 21:8,13,19 22:24 30:3 37:12 38:3,7 41:5 45:21 46:17 48:7,10 49:14 58:23 59:24 62:11 67:6 68:5 70:1,5 71:5 72:24 80:15 81:10,15 83:6 85:1 86:19, 20 91:12 94:3,5 96:10 102:13 106:11 115:7,16 117:8 118:3,25 119:8,10 120:5 121:23 123:12,22 124:18 125:2 127:23 129:2

**Debtors'** 10:23 14:10,12,21 15:5, 21,25 16:16 17:1,8 18:1,4,15,19 19:4,11,20 21:11 22:19 26:5 30:18,20 37:10,18 38:12 40:2 41:20 43:12 46:18,23 47:12,14 55:12 59:4 67:5 68:3,12 69:1,17 71:1 72:22 73:7 76:24 78:20 80:12 84:23 85:7 88:19 89:6,9,10 93:19 97:8 98:18 102:10 105:22, 25 111:4,7,13,15 113:11 114:25 115:6 117:25 118:9,19 120:6 121:21 122:6,12 134:22

**December** 20:16 23:14 39:4 55:5 63:14 66:10 69:23 76:8,9 78:16 79:15,23 84:8,25 85:11,14 88:4 89:7,18 91:3 92:17 93:24 98:11, 21 99:3,9,19 100:6 101:9 102:21 104:12 105:24 106:9 107:3 113:6 123:16 124:20

**decided** 64:20

**deciding** 118:11

**decision** 34:10

**deemed** 27:22 29:16 40:3 56:22, 24 57:4,14 64:19 66:21 88:10 128:15

**defense** 57:23

**defer** 31:4 36:18 37:20 41:15 49:21 56:13 79:4 87:14 130:2 138:6,7,20

**deferring** 77:14

**defined** 27:23 29:8 56:10 57:17

**defines** 81:6

**definition** 26:3 32:1 58:11 70:20 71:2,3 72:23 73:5,8,21 75:19 76:11 77:2 78:5,22 81:5 82:3,13 84:3,24 86:9 87:5 89:6,10 90:18 91:3,4,13 92:18 93:22 94:10 98:7, 15,20 99:10 133:4,10 134:6 135:17 136:7 137:14,24

**definitions** 25:2 72:9 87:12 89:17 92:9 115:24 133:3

**Delaware** 9:8,14 12:11

**Delia** 125:18 126:2

**demands** 27:5 28:7 57:21

**depending** 25:9,18 26:7

**depends** 64:2

**deponent** 9:15 43:23 118:3 120:5 125:12 142:3

**deposition** 9:6 10:22,24 11:10, 18 12:10,15,25 13:16,18,22 14:11,13,22,23 52:16 74:12 96:23 97:5 111:1 126:10,12 129:8 141:3 142:9

**deposition's** 9:11

**deprive** 100:18

**derivatively** 29:24

**Desai** 9:15,19,22 12:4,7 13:8,17, 24 14:19 15:4,20 16:21 20:5,15 24:13 27:11 30:23 31:20 32:21 34:10 35:11 36:5 37:23 42:5 46:15 49:8 51:8,24 53:2,14 55:18 60:2 62:7 63:6 64:22 65:5 66:24 69:10,21 70:13 72:11 74:25 75:11,20 76:3 78:7 81:4 82:7,16 83:14 84:2,11 86:8 87:3,20 89:5 90:3,11 91:1 92:8 94:8,15 96:7, 19,25 97:14,18 98:12 99:8 100:1 102:6,11 103:14,25 104:10 106:25 107:25 109:21 110:18 111:13 113:12,17 114:3,13 116:25 117:20 119:3,12,22 121:16 122:23 123:11 124:21 125:7 126:1,12 129:8 142:5

**Desai's** 101:17

**describing** 62:12

**description** 56:8

**designated** 13:9,10 14:7 15:15 44:8 46:17 76:18 121:9

**designation** 16:24 25:19 121:10 122:20

**designee** 121:13

**detailed** 141:14

**details** 141:22

**Devang** 9:15,19

**dialogue** 103:1

**difference** 99:9

**differences** 25:8 70:3

**differently** 99:1

**Diocese** 66:20

**direct** 75:23 84:10 100:11,21 134:11

**directed** 97:4

**directing** 72:11

**direction** 133:22

**directly** 29:24 84:19 95:7,8 136:19

**disagree** 95:1

**disagreed** 41:19 42:6,8

**discovery** 100:3,11,13,17,19,20, 23 102:8,12

**discuss** 85:6 134:9

**discussed** 38:11 61:9 83:15 85:9 104:2 123:15

**discussing** 32:5,10,24 59:7 65:7 67:16 68:8 73:5 89:19 102:23 106:9 107:16

**discussion** 15:19 108:1 110:13 116:20 125:14 141:2

**discussions** 10:23 24:4 101:12, 18,22 107:3 108:5,11 112:24 113:13 131:4,7

**disputed** 58:1

**Distribution** 12:17 13:13 17:19

**District** 9:7

**divulge** 83:8 86:11

**Docket** 12:8 71:14 110:19

**document** 9:12 12:8,22,23 17:17 20:7 26:4 29:1 32:5 33:7,10 35:15,17 36:19 39:15 48:20 49:24 56:13 57:11 69:25 70:15 77:12 81:25 87:14 98:1 100:14 112:22 114:14 117:22 118:7 119:23 120:10 127:15 129:1,12 130:3,18 137:3

**documentation** 83:12

**documents** 38:21 70:9 125:10

IN RE BOY SCOUTS AND DELAWARE BSA

**dollar** 107:9 130:3

**dollars** 22:10 23:24

**doubt** 84:12 87:23 88:5 91:4 93:10 100:15,16 134:24 136:12

**Draft** 18:9

**duly** 9:19

---

**E**

**earlier** 13:2 29:12 55:18 79:7 111:12 131:12 134:2,3

**easier** 109:24

**eastern** 9:10 16:13 51:16,19 68:24 69:8 109:15,19 125:17,22, 25 142:8

**easy** 83:22

**education** 25:13

**effective** 30:21 55:23 56:16 57:21 76:17 88:9 104:25 105:9, 14,19 131:21

**effectiveness** 128:17

**effectuate** 22:8 24:5 55:3 64:18

**effectuated** 23:15 64:4

**efficient** 70:2 95:10

**effort** 35:1

**efforts** 21:24 47:10 127:21 128:8

**eliminate** 80:6

**email** 53:19

**embedded** 120:20 121:1

**emerge** 50:9 71:21

**emergence** 24:6

**end** 87:16

**enforce** 100:22

**engage** 54:5 55:7

**engaged** 116:5

**enjoined** 37:6

**ensure** 23:19 38:24 50:5

**ensuring** 112:15

**enter** 31:15 46:19 48:8 61:11 111:5 115:18 117:10 118:4,11 120:7 122:13 124:25

**entered** 65:15 112:7

**entering** 18:5,20 19:12 30:24 38:4 45:22 59:25 111:9 115:2,8 119:9 121:22 122:7 123:14,19 127:15 129:11,20 138:9 140:13

**entire** 47:17 49:24 100:4 126:9 127:15 129:11

**entirety** 140:23

**entities** 23:10 65:16 66:12 100:24 127:23

**entitled** 21:6 36:23 83:23 100:2

**entitlements** 27:5 28:7 57:21

**entity** 33:19 39:1 42:25 57:5

**entry** 31:6 38:19 71:15 116:13 128:2

**equitably** 22:12 23:25 35:1 38:25 50:10 71:20

**established** 54:4

**estimates** 109:10

**evaluated** 48:7

**evaluating** 47:5 124:13

**event** 105:8

**events** 55:4

**eventually** 61:10 64:17 107:17 112:11,19 116:11

**evolution** 85:18

**evolve** 115:21

**evolved** 54:1

**exact** 130:3

**EXAMINATION** 9:21 125:23

**exchanged** 53:4

**exchanges** 53:19

**excluding** 100:24 128:10

**excuse** 40:21 66:10 103:13 111:12

**Executive** 21:21 22:5,6,18 31:13 50:1,18 52:1 54:10 61:15,21,23, 25 62:10,17 63:10,12 90:16 91:25 108:18 111:19 113:10,25

**exercise** 15:5,22 16:14,25 17:9 18:1,4,15,19 19:4,11,20 21:8,14 22:19 37:18 38:13 45:21 46:18,22

47:13 57:7 59:5,13 67:13 68:10, 12 71:23 73:7 77:17 80:13 81:16 89:10,14 105:25 111:4,13,15 112:4 113:11 114:25 118:4,20,25 119:8 120:6 122:7,12 123:13 124:12 129:3,10 138:21

**exercised** 30:25 37:12 38:3,7 47:4 58:23 67:6 68:6 72:24 76:25 78:21 81:10 85:2,7 88:20 91:12 93:20 94:3 98:19,25 99:17 102:13 111:8 115:7 118:10 121:24 127:12,14 138:1,17 139:1

**exercising** 48:8 49:9 59:10 71:5 85:23 86:21 106:7 111:20 115:17 117:8,10 123:22 124:25 127:8 130:20 138:8

**exhaust** 82:16 101:17

**exhibit** 11:21,24 14:12,20 16:18 19:24,25 20:14,20 24:14,18 30:25 31:18 32:22 43:3 46:24 51:22 55:16 58:21 65:3,7 67:19 68:17, 25 69:11 73:6 84:7 110:8,9,19,21 114:14,16,20 117:16,21,25 119:18,23,25 120:19 121:18 126:6 127:24 133:2

**exhibited** 131:5

**exist** 50:10

**existed** 51:2 89:7

**existing** 57:24

**expect** 97:3

**expedite** 95:10

**explain** 21:13

**explanations** 61:5

**extended** 46:23 47:3 55:6

**extent** 15:24 28:1 41:12 60:25 82:15 86:20 90:19 91:19 94:15 99:12,16 101:22 103:13 108:17 113:9 116:24 117:7 118:25 119:7 124:17,24 127:25 128:5 132:18 139:23

**extremely** 121:3

---

**F**

**facilitate** 116:22

**fact** 23:19 60:19 77:16 96:8,9 139:8

IN RE BOY SCOUTS AND DELAWARE BSA

**factors** 31:10 59:4

**failure** 128:13,16

**fair** 17:3 113:1 115:2 118:6

**fairly** 124:12

**faith** 23:18 38:23 60:24

**fall/winter** 53:16

**false** 82:9

**familiar** 10:10 24:17,19 111:2
115:3 118:6 120:9 121:17 127:3

**fast** 64:17 114:11

**FCR** 23:15 56:12 71:16

**February** 17:11 69:16,23 72:23
76:11 77:3 78:15,23 79:14,20
81:5,11 84:8 85:1,11,15 89:8,18
91:14 92:9 93:22 98:14,20,22
99:4,10,19 100:6 101:9 102:12,22
103:4,8,12 104:12 105:24 106:10
107:3 110:21 111:16 113:2,6
114:15 115:13 117:23 118:16
119:24 122:8 123:16 124:20
135:18 139:7

**feeling** 51:10

**fell** 63:17 64:1

**felt** 31:14 71:22 103:10

**figure** 64:4 70:6

**file** 66:5 103:11 128:1

**filed** 12:8,12 39:17 71:14 77:3
93:6 110:20 113:2 114:15 117:23,
25 119:24 124:3 139:16

**filing** 22:1 68:25 69:16,17 70:14
139:6

**finalized** 124:3 130:17 131:8

**finally** 19:10

**financial** 39:13,19 43:6,14 44:13,
16 45:16 48:1 50:4 71:13 106:17
108:2,4,13 132:11,13

**fine** 15:2 74:15 110:6

**finished** 10:17 41:23

**fit** 62:18

**five-minute** 125:20

**fixed** 58:1

**fluid** 10:12

**focus** 43:3 138:14

**focused** 59:15

**follow-up** 138:24

**Force** 21:20 22:4,18 31:13 34:23
49:25 50:18 52:1 53:16,21 54:5
60:10,16 61:14 62:10,16 63:9,13
85:22 90:16 91:24 103:1 108:18
111:19 113:10,25 124:9 131:2
139:3,15

**foregoing** 43:12 76:13 128:19
134:16

**form** 13:14 15:17 21:9 22:21
24:24 25:23 28:22 30:11,12 32:3,
12 33:6,15 34:6,13,14 35:14,23
36:11,17 38:15 39:11,24 40:7,10,
24,25 41:9,22 42:11 43:16,20
44:9,21,23 46:4 47:1,15,16 49:18
50:22 52:7 53:1 54:19 56:5 57:1
58:25 59:19 61:19 63:18 65:19
66:14 67:8 71:7 72:4 73:1,11
75:7,15 77:5,25 78:19,25 79:25
80:2 82:5 85:3 87:7,10 89:23
91:15 92:4 93:25 94:11 106:3,12
107:13 118:23 122:16,19 123:24
127:11 129:5,25 130:11,22 134:8
135:14 136:2 137:1,12 138:3,19
139:22 140:9,20

**formal** 24:5

**formalized** 53:24

**forms** 110:3

**forward** 64:17 124:15

**forwarded** 88:15

**found** 10:10

**four-page** 12:8

**frame** 64:3

**Frank** 17:16

**free** 45:18

**frequently** 61:22

**Friday** 16:15

**front** 33:2 69:12 70:1 97:15

**full** 27:20 29:14 45:3,13,19 56:19

**full-fledged** 64:5 79:8

**fully** 49:5

**future** 61:8 112:8

**G**

**garner** 106:21

**gave** 73:5

**generally** 24:19 65:12 107:11,14
111:1 115:3 118:6 120:9 121:17

**generic** 22:22

**George** 17:16

**give** 11:7 35:18 36:16 46:13
74:14 77:21 83:7 133:8 141:13

**giving** 40:14 46:1

**globalized** 73:16

**goal** 55:12

**good** 9:22,25 10:1 23:18 38:23
60:24 109:2 133:5

**grab** 68:19

**granted** 10:22

**great** 32:19 35:6 97:17

**greater** 79:21 80:4

**green** 78:12 134:14

**ground** 10:6

**grounds** 82:19 83:9 86:12,23
90:7,20 99:13 114:4 117:12
119:5,13 124:22 125:4

**group** 47:8 91:6

**groups** 66:6

**guess** 69:12 97:15

**guiding** 108:10

**guys** 88:15 109:3

**H**

**half** 85:17 86:3

**hanging** 49:4

**happy** 32:14 46:13 123:10

**Hartford** 18:5,7,9 23:16 24:8
38:22 60:22 109:25 110:8,9,16,22
111:3,9,24 112:3,6,13,20 113:1
114:2 115:14 116:7 118:16 122:9

**Haynes** 23:2 60:12

**headed** 23:5

**header** 20:16

**heading** 24:15 55:20 110:21

**hear** 19:7 67:24 88:22 128:25

**heard** 109:10

**hearing** 24:7 25:14 55:10 97:3

**heavily** 82:8 106:15 141:1

**heavily-negotiated** 77:13

**held** 9:11 29:18 31:12 110:13 125:14

**helped** 25:17

**high** 22:22 52:8

**highlight** 106:14

**highlighted** 70:23

**highlights** 70:8

**historical** 22:3

**hoc** 11:21,24 12:9 23:5 47:8 56:13 91:6 95:1 127:21

**holders** 100:11,21

**hope** 96:12

**hoping** 83:21

**hot** 17:17

**hour** 51:9

**hundred** 121:8

**hypothetical** 43:17

---

**I**

**I-A** 17:12

**i.e** 132:2

**identification** 12:1 14:13 20:1,8 69:3 70:15 110:10 114:22 117:17 119:19

**identified** 127:24

**identifies** 43:18

**ii** 29:10,18 84:16

**illustrate** 25:17

**immunity** 100:20

**impairment** 87:4

**important** 55:7

**improper** 96:1

**inappropriate** 43:17 95:18 96:2

**include** 52:5,9 84:24 128:10

**included** 59:14 67:4 76:12

**includes** 83:14

**including** 17:10,11 21:18 29:24 33:22 47:7 58:4,8,11,14 67:5 71:2,3 72:23 76:16 77:23 78:22 81:11 91:13 93:4,8 102:11,20 103:5 139:12 140:24

**incomprehensible** 122:17 123:25

**inconsequential** 123:25

**indemnity** 57:23

**independent** 34:5

**indicating** 136:24

**indication** 95:14,15

**indirectly** 29:24

**individual** 10:2 25:1 41:13 44:23 65:21 80:1

**individually** 130:24

**individuals** 59:17

**information** 11:16 21:23 22:17 25:7,13 34:21 48:7 49:15 50:2,12 60:5,14 61:12,15 67:12 68:9 77:19 80:15 81:15 85:21 89:15 91:19 94:5,15 97:22,24 98:13 99:11 100:14 104:5 106:5,11,18 111:17,18 113:9,13 115:11,15,16 117:5 118:14 119:1 122:5,11 123:12,21 124:8,18

**informed** 15:23 16:12 119:1

**initial** 76:18 112:20 116:7

**injunction** 26:15 27:20 29:4,14 37:4,7 56:19,20 66:13,25 78:9,15, 23 84:14 132:4 135:6 136:14 137:9

**innumerable** 60:11

**input** 47:7 54:7 106:16

**inquire** 80:19

**insert** 94:23

**inserted** 136:4

**inside** 112:14

**instruct** 30:15 34:8 64:22,24 72:5 73:24 78:2 82:18 83:2 86:11, 22 90:6,19 99:12,20 101:19 108:20 113:12 114:3 117:4,11 119:3,12 124:21 125:4

**instructed** 22:7 74:7 96:7

**instructing** 44:1 60:4 113:22

**instruction** 80:21 83:8 91:20 92:1

**instructions** 11:7 52:21 95:25 97:1

**instrument** 57:7

**insufficient** 40:6

**insurance** 18:6,7,9,21,23 19:12, 14 23:1 27:6 28:1,4,8 29:25 30:7 32:9,10 33:5,13,18 34:1,5,12 36:6 37:2 46:3 50:4 57:9,15,16 58:3,5, 6,8,11,12,13,16 61:13 63:11 76:20 84:15,16,19 110:22 111:3,9 112:3,6 114:1,2,9,16,20 115:1,8, 14,18 117:2,11,15,16 118:1,5,11, 16,17,21 119:9,11 120:1,8 121:23 122:14 123:20 125:1,3 128:20 132:5 134:24 135:2,3 136:16,19 137:10

**insurance-related** 60:12

**insured** 29:13 40:3,20 41:6,14,20 42:6 43:13 44:18 45:24 48:11 50:20

**insureds** 36:25 37:1

**insurer** 27:19 28:18 29:7 30:7 33:24 37:4 40:15 45:9,15 48:25 49:2,3 56:19 80:9 112:21 132:4

**insurers** 21:7,15,25 22:8 26:12 27:7 28:9 29:25 30:5,8 35:13 36:7 37:3 40:5 55:2,25 56:1 57:18 58:4,13 64:11 71:16 112:18 115:22 116:10 128:19 131:23 132:6

**Insurers'** 27:6 28:8 58:15

**integral** 50:7

**intended** 120:25

**intending** 10:19 75:3

**intent** 112:22

**intentional** 11:18

**intentionally** 121:5,6

**interest** 34:25

**interested** 11:14 88:25

**interests** 27:5 28:2,7 57:20

**interim** 25:17 37:7 66:25

**interplay** 23:22,23 61:7 115:23

**investments** 104:20,24 106:15

**invoke** 101:18,23

**invoking** 53:10 74:9 141:13

**involved** 49:2 50:16 107:1,8,11, 15 108:7 112:7 124:18 141:1

**involvement** 93:3

**involving** 27:8 28:10

**issue** 96:19 140:5

**issued** 27:7 28:9 29:25 30:7,8 36:6 37:2 40:5 58:5,12 67:21 84:16,19 132:6 136:16,19 137:10

**issues** 60:12 87:1 94:24 95:18

**IV** 97:12,19

**IV-R** 98:12

**IV-S** 17:14

**IV-W** 102:7,12 103:16

---

**J**

**January** 11:23 12:12 92:14,19 103:4

**jelly** 17:17

**Jennifer** 9:17

**job** 133:5

**join** 24:4 112:19,25

**joined** 116:11

**jointly** 128:8

**judgment** 15:6,22 16:14 17:1,10 18:1,5,16,20 19:5,12,21 21:8,14 22:20 31:1 37:13,19 38:3,7,13 45:22 46:18,23 47:3,4,14 48:8 49:9,22 58:24 59:5,10,13 67:7,13 68:6,10,13 71:6,23 72:25 73:8 77:1,17 78:21 80:13 81:10,16 85:2,8,23 86:22 88:20 89:11,14

91:12 93:20 94:3 98:19,25 99:17 102:14 106:1,7 111:4,8,14,16,21 112:4 113:11 114:25 115:7,17 117:8,10 118:4,10,20 119:1,8 120:7 121:24 122:7,13 123:13,23 124:12,25 127:9,14 129:3,11,19 130:20 138:1,8,18,21 139:1

**juncture** 23:13

**June** 105:15,19

---

**K**

**keen** 112:15

**keeping** 85:14

**kind** 25:13 36:16 54:1 85:16

**knowledge** 81:21 82:11,17 94:9, 12 130:9

---

**L**

**label** 25:9

**laid** 31:11

**language** 29:12 36:12 58:20,22 77:1 84:24 85:24 87:25 88:2 93:21

**larger** 66:1 115:21

**late** 103:4

**Lauria** 25:12,16 59:16

**law** 9:20 101:2

**lawyer** 109:10

**lead** 9:23

**led** 94:9 99:9

**left** 109:6

**legal** 9:4 34:7 40:8 77:23 80:20 83:7,16 86:21 90:15,17 114:6 117:9 119:13 125:2 137:13

**lengthy** 21:2

**level** 22:22 52:8 96:15 116:20

**liabilities** 45:19

**liability** 80:7 93:9

**limit** 16:22

**limitation** 17:6 18:13 19:2,18 26:1

**limitations** 17:23

**limited** 16:13,25 29:5 33:23 40:15 78:9,14,22 92:22 123:6

**limiting** 76:13

**limits** 54:12

**lines** 26:20 27:13 75:25 98:4,5,13

**liquidated** 57:25

**listed** 58:10 66:24

**listing** 58:2

**lists** 28:17

**litigation** 11:3

**LLC** 9:14 12:11

**Lloyd** 9:21,23 12:3,21 13:3,6,7, 15,20 14:2,16,18,25 15:3 16:6 19:23 20:3 21:12 30:16,22 31:4, 16,19 32:17,20 33:9 34:9 36:1,13, 20 38:17 39:18 40:1 41:4,17,23 42:2,4,14 43:1 44:1,14 45:1 46:12,14 47:19 49:2,21 51:8,12, 13,20 53:9,13 57:12 59:2,21 60:9 61:20 62:3,5 63:3,5,22,24 65:2,4 67:10 68:15,20 69:9 71:9 72:7,10 73:3 74:5,10,16,24 75:17 77:8 78:3 79:2 80:18,24 81:2 82:15 83:5,18,23 84:1 85:5 86:1,7,18 87:2,11,15,18 88:16,24 89:2,4 90:1,14,23 91:18,23 92:5,7 94:14, 18 95:5,23 96:21 97:10 99:7,16, 23,25 101:16,25 102:3,5,17 104:6 106:4 107:24 108:16,23 109:5,7, 11,20,23 110:6,15,17 113:8,23 114:8,12,23 116:24 117:7,14,19 118:24 119:7,16,21 120:18 121:15 122:2,4 124:17,24 125:7, 13 131:12 134:3

**Lloyd's** 64:24 129:18 131:1 138:13

**local** 23:5 28:21 30:3 40:5,21 41:7 42:7 43:13 44:19 46:3 47:8 48:12 50:21 54:21

**locate** 133:4

**locator** 117:22 119:24

**lodged** 66:21

**long** 85:17 88:5 125:10

**looked** 131:12 134:5 137:20,24

**Los** 85:17 94:13 124:7

**lose** 29:7

**losing** 33:25 133:11

**lot** 10:5 62:8

**Lujan-wolff** 125:18,19,23 126:2, 16,19,24 127:6,13,16 129:14 130:5,13 133:1,9,15,18,24 134:1 136:5,9 137:17 138:22 140:1,15 141:6,11,18 142:1

## M

**made** 17:7 18:14 21:24 39:21 43:7 48:2 54:9 59:9 77:14 88:11 95:2 96:3 102:19 103:7 131:6 132:14 134:4 135:17,25

**make** 10:18,19 11:6 25:21 27:22 29:16 30:17 32:9 33:5,13 34:4 52:20 63:1 71:24 72:1 73:19 74:6 95:8 134:23

**making** 13:23 99:18 108:19 109:2 123:15 140:13

**mantra** 106:24

**March** 9:9 14:11

**mark** 11:20 19:23 110:7

**marked** 12:1 14:13,20 20:1 69:3, 11 110:10,19 114:14,21 117:17, 21 119:19,23

**Marsal** 106:17

**Mary** 17:15

**Mason** 23:6

**material** 96:7

**materialized** 124:2

**materials** 60:15 88:23

**matter** 9:13 10:3 81:23

**matured** 57:25

**meaning** 71:15 107:8

**meaningful** 22:9

**means** 56:25 61:6 76:8 92:11 96:17

**mediation** 11:2 53:5,11 60:6 64:23 72:6 73:15,24 74:3 75:4 81:22 82:18,19,22 83:3 86:10,12, 16 90:2,4,7,12 91:20 94:13,17,23 95:14 96:8 97:6 99:12,13 101:8,

18 104:3 107:2 112:1 113:5,14, 16,21 116:5 117:5 119:2,4,5 124:7,19,22 131:7 139:24

**mediations** 113:12

**mediator** 116:22

**mediator's** 20:6

**meet** 54:5 95:5

**meet all** 47:25

**meeting** 131:1,5

**meetings** 53:19,25 60:11 83:13 103:1 108:10 131:4

**member** 30:19 34:19 50:17 62:9 91:5 107:15 126:13,20,21

**members** 52:12 53:21 103:2

**mentioned** 39:20 59:16

**met** 9:24 53:17 61:22

**Methodist** 55:1 64:10

**Methodists** 64:13,18 100:24

**mic's** 88:16

**middle** 27:16 55:17

**Mike** 109:24

**million** 104:16 105:9,13,18 129:23

**mind** 55:5 138:16

**minimum** 104:19,23

**minutes** 68:19 85:10 113:19 131:5 139:5

**mischaracterizes** 42:12

**misspoke** 35:8

**mistake** 83:20

**Mixed** 81:6 82:4

**modifications** 123:15 135:16 140:13,14

**modified** 68:17 69:1,18 70:21,22 71:4 72:17,18 73:9 85:11 115:25 134:5 135:25 136:25 137:5 138:9 139:13

**modify** 94:4

**modifying** 84:24 98:20

**moment** 95:24

**money** 44:16

**monitor** 9:10

**month** 85:16 86:2

**months** 31:5

**morning** 9:22,25 10:1

**move** 14:1,10 16:17 68:16 75:10 81:3 124:15

**moved** 78:13

**moving** 133:22

## N

**National** 21:20,21 22:5,6,18 31:13 49:25 50:1 54:9 61:21,23, 25 62:10,17 63:10,12 90:16 91:24 108:18 111:19 113:10,25

**nature** 10:21 33:18

**NEB** 83:13 113:19

**NEC** 34:20,24 52:13 53:17 60:10, 16 62:23 77:15 83:13 85:22 103:1,9 107:15 108:12 112:10,12 113:19 116:4,16 124:9 129:20 131:1 139:3,15

**necessarily** 35:17 66:16

**needed** 22:2 23:7 82:10 115:25

**negotiate** 22:7 23:24 34:24 47:10 50:13 52:10 106:19 107:9 112:12 116:13

**negotiated** 13:16 24:3 51:25 71:22 82:8 99:8 113:4 116:1 140:24

**negotiating** 52:6 54:11 64:10,15 107:2,8 139:9

**negotiation** 23:8 52:24 103:22

**negotiations** 13:21 15:19 21:17 23:12 33:21 34:18,22 35:4 38:18 39:3 45:16 52:3 53:23 54:2,23,25 64:8 65:1 71:17 73:14 85:16,19 86:3,5,11 90:4 94:9 103:3,5,20 107:12 112:9 116:17,19 124:5

**Neil** 9:23

**neutral** 79:15,21

**non-consent** 128:9

**non-impairment** 87:4

**non-objectionable** 44:4

**non-settling** 23:9

**nonbankruptcy** 101:2

**normal** 10:25

**note** 82:10 83:11 94:19 122:19 126:19

**noted** 135:11

**notice** 11:22,25 12:10,24 13:16, 19 14:10,12,21,23 43:22 46:7,10 68:25 69:17 121:2 122:16,21 126:14 129:7 141:17

**noticed** 126:10,13

**noticing** 141:2

**Notwithstanding** 134:16

**number** 20:8 45:4,5 104:15 105:6,7 110:20 116:10,11 120:23 123:6 133:10

**numbers** 60:11 104:14 106:25 107:2,8,12,16

**numerous** 140:24 141:3

---

**O**

**oath** 9:18

**object** 26:4 28:24 34:14 42:2 44:21 46:9 52:7 73:23 74:15 80:2 82:20 87:9 88:5 120:21,22,24 121:12 122:18 126:9 137:1

**objecting** 33:20 39:16

**objection** 13:14 15:17 17:7 21:9 22:21 24:24 25:23,24,25 28:22,23 30:11,12 32:3,12 33:6,15 34:6,13 35:14,23 36:11,17 38:15 39:11,24 40:7,10,24,25 41:9,22 42:11,13 43:16,20 44:9,20 46:4 47:1,15,16 48:14,15 49:18,20 50:22 53:1 54:19 56:5 57:1 58:25 59:19 61:19 62:20 63:18 65:19 66:5,14, 21 67:8 71:7 72:1,4 73:1,11,19 74:6 75:7,15 77:5,20,25 78:19,25 79:25 80:21 82:5,6 85:3 86:14 87:7,10 89:23,24 90:8 91:15 92:4 93:25 94:11,23 101:20 102:15 106:3,12 107:13,22 118:23 120:11,25 121:25 122:15,16 123:24 127:11 129:5,25 130:11, 22,23 134:8 135:14 136:2 137:12

138:3,19 139:19,22 140:9,20 141:10,16

**objections** 11:1 16:8 30:17 52:21 96:5 126:18 129:9

**objectives** 22:11

**objects** 91:6 132:2

**obligations** 100:23

**obtain** 27:19 29:13 45:3,18 55:8, 12 56:18 100:13 103:22 128:3,13

**occur** 23:8

**occurred** 30:1 92:13,25 109:23 124:20

**occurrence** 37:5

**occurs** 105:9,14,19

**offering** 74:3

**ongoing** 25:25 51:4 54:25 71:22 77:11 112:23 116:4 131:6

**opportunity** 72:1 74:15 77:21 128:25

**opt-out** 24:21 25:4,10 32:1,8,22 33:3,4,12,17,19,24 34:11 36:15 37:24 39:1,10 42:17 43:4,7 45:18 47:22 48:2,23 60:18 61:17 62:14 65:5 66:5,7,21 84:3,13,17,20 86:9 87:13 88:6 131:13,17 132:1,9,14, 21 134:6,19 135:7,13,17,22 136:7,12,13,17,20 137:16

**opt-outs** 38:18 87:5

**opted** 66:18

**options** 23:7 107:17

**order** 22:8 23:8,24 24:4 27:18 29:12 48:22 55:3,9 56:18 60:21 71:17 73:15 76:15,16 103:22 106:18,20 116:6 128:2 132:21

**ordered** 13:22

**Org** 32:6 39:2,5 40:14 48:18 57:6 61:7 64:20 66:3 79:9

**organization** 25:4,5,21 26:3,6, 11,13 27:24 28:1,4 29:1,3,6,19 30:4 32:9,23 33:5,13,17,19,25 34:25 35:16 36:15 39:9,10,22 40:4,12,21 42:17,19 43:4,5,6,8 45:3,6,10,12,18,25 46:2 47:22,23 48:3,23,24 49:11 50:9 57:16 60:19 64:6,16 65:6,10,17,18 66:4 71:22 72:13 76:10,12,15 77:3

79:8 80:5,8,11 84:3,20 86:10 88:11 91:5,8 92:11,12,21,23 93:12,13,23 107:18 128:3,6,11 131:17,24,25 132:1,2,9,10,11,16, 22 134:6,17,19,20,21,23 135:3,7, 18,21,22,23 136:8,13,20 137:7, 16,21 138:15

**Organization's** 26:22 27:4 28:6 135:1

**organizations** 12:17 13:12 15:9 17:18,20 18:7,8,10,22,24 19:14, 15 23:10,20 24:16,21,22 27:21 29:15 31:22 32:2,11 33:1,3 34:4, 12 35:13 37:24 41:7 42:7 44:18 47:8 48:12 49:17 50:6,20 55:13, 21 56:21 58:16 60:21,25 62:8,13, 14,15,18,24 63:15 65:25 66:12, 18,22 67:21 75:20 76:18,19 79:13,20,23 84:13,17 87:6 88:6,7, 9 93:2 100:23 112:18 116:9 127:2,22 128:1,15 131:13 132:15 135:5,12,13 136:13,17 138:14 139:21 140:6

**Organizations'** 57:20

**Orgs** 24:1 25:8,18 87:13

**orient** 20:4

**originated** 82:12

**over-speak** 62:25

---

**P**

**pages** 15:1 20:12 70:12

**paragraph** 21:1,2,6,15 22:20 24:13,14,18 26:17 27:16 30:24 31:17,21,25 32:18,21,25 33:2,11 35:5,12 36:21 37:11,19,22,23 38:4,8,14 43:3,14,19 46:24 47:12, 21 49:10 51:22 55:15,22 58:20 59:7 65:3,6 66:9,23 67:6,11,18,19 68:3,4,13 70:16 71:3 72:8,12,16 73:5,9,22 75:5,10,13,19 78:4,8,22 80:14,22 81:4 83:19 84:25 86:22 87:15,17,19 88:1 90:6,18,24,25 91:14 92:5,8 126:7 127:1,3,18 129:2,4,12,22 130:10,14,21 131:11,13,16 132:21,25 137:15 138:9 140:22,23

**paragraphs** 15:7 36:22 37:16 38:11 67:15 68:11 81:18 85:10

**parameters** 22:3 52:10 54:11

107:18,20

**pardon** 30:9 36:24 38:5 40:22 55:16 65:6 71:2 83:20 88:1 90:25 92:6 98:5 104:17 115:13

**paren** 15:8,9

**part** 13:21 22:19 29:23 36:5 50:7 58:22 59:6,13 61:12 62:15 68:4 93:1 103:8 107:2 108:4 113:4 136:23 137:24

**participant** 86:4 124:4

**participate** 48:12

**participated** 25:14 60:10 73:14 83:14

**participating** 23:11 24:16,21 25:3,10,21 26:2,6,10,13,22 27:3, 21,24,25 28:3,5,25 29:2,15,19 31:21 32:5,11 33:1 34:3 35:12,16 39:5,9,21 40:4,13 42:18 45:25 46:1 49:17 55:20,21 56:20 57:6, 16,19 58:15 60:18 61:17 62:13 66:7 79:9,13,19,22 80:5,11 87:12 88:7,11 91:7 92:12,22 93:1,13 108:10 131:25 134:21,23 135:3

**participation** 94:13 101:8

**parties** 21:18 23:18 24:9 33:22 34:18 35:4 38:23 47:7 50:14 52:6, 9 54:4,13,15 56:11 60:23 71:15 73:15 81:24 85:15,20 106:20 112:11,17,23,25 116:5,11,12,20, 23 117:2 119:4 124:19 128:8,10, 18 139:9 140:24

**parties'** 86:16 103:5

**partners** 33:23

**parts** 85:15

**party** 24:3,10 39:16 75:12 78:9, 15,23 89:22 107:10 128:16

**party's** 131:6

**pathway** 38:20 39:2 42:17 65:9 79:7

**pause** 52:20 55:25 56:22

**payments** 57:22

**Pending** 37:5

**percent** 121:8

**period** 63:15 77:13 92:14

**personal** 56:23 57:2 81:21 82:11

94:8 123:2

**personally** 57:4 65:23 86:4 107:1,7

**personnels** 93:2

**perspective** 23:8 96:22

**pertained** 26:11

**pertaining** 40:16

**petition** 30:2

**phone** 25:14 53:20 108:9 132:12 133:17

**phrase** 30:6,9 56:24 65:9 92:18

**place** 21:18 23:12 54:23 64:9 103:3 108:12 112:24

**plan** 12:17 13:12 17:11 22:1 25:11 26:5 33:20 38:24 39:16 55:9,22 56:15 58:11 68:17 69:2, 18,23,24 70:21,22 71:5,14,18 72:18,19,24 73:10 76:9,14 77:4 78:16,24 79:14,15,20,24 81:5,12 84:8,9 85:1,18 88:4,6 89:7,8 91:7, 14 92:10,18 93:24 98:11,21,22 100:6,7 101:9,10 102:13,22 103:11,23 104:13 105:24,25 106:9,10,21 111:17 115:14 118:16 122:8 123:16,17 127:24 128:18 131:20 132:3 134:5 135:25 136:24,25 137:5 138:9 139:6,13

**plans** 85:12 89:18 99:4 107:4

**point** 16:21 73:18 120:12

**pointing** 49:11

**points** 103:21 116:13

**policies** 27:6 28:8,17,18,20 35:21 37:2 40:4,22 41:7 42:8 43:13 44:19 46:3 48:13 50:21,25 51:3 58:3,4,5,12 67:20 84:19 132:6 135:2 136:19

**policy** 27:7,19 28:9 29:8,13,25 30:6,8 36:6 37:4 56:19 58:15 84:15 132:4 136:16 137:10

**portions** 113:3

**position** 21:5,11 37:10 40:2,19 41:20 43:12 67:5 68:4 72:22 76:24 78:20 84:23 85:7 88:19 89:6,9 90:10 93:19 95:14 96:16, 18 98:18 102:10 103:15 105:22 111:7 115:6 118:9 121:21 138:25

**positions** 53:4 86:16 90:12 96:10,16 97:8 103:5,25 104:3 112:11 113:16 117:1 119:3 124:19

**post-'75** 27:20

**post-'76** 26:13

**post-1975** 29:14 56:20 92:10,20 93:11,22

**Post-confirmation** 66:24

**post-petition** 37:7

**potentially** 56:11

**Powerpoint** 25:15

**Powerpoints** 61:5

**pre-'76** 26:10 80:4,7

**precursors** 45:7

**predicate** 29:11

**prefer** 69:22 95:6

**preliminary** 69:20

**preparation** 16:23 125:9

**prepared** 13:25 16:4,8 17:24 18:14 19:4,19 125:11

**preparing** 110:25 121:18

**present** 108:14

**presentation** 25:16 51:5 113:19

**presentations** 25:7 50:2,24 53:25 61:4 103:7 106:16 124:10 131:6 139:5

**presented** 45:23

**previous** 89:24

**previously** 31:11 32:24 41:18 42:5 46:16 59:3 60:3,9 63:16 64:7 65:7 68:8 88:3 92:17 93:23 97:20 115:20 116:6 129:18 130:25

**price** 57:9

**principal** 22:11

**print** 132:13

**prior** 13:18 16:22 17:12 21:25 22:1 23:22 30:1 31:5 37:20 38:10 42:12 49:21 55:24 56:17 59:8 61:7 67:15 71:12 77:10 79:5 80:15 91:2,16 94:6 99:2 128:2 131:22 138:7,20,24 141:21

**privilege** 11:2 53:11 82:19 83:10 86:13,24 90:2,7,21 91:21 92:2 94:17 95:15,16 96:19 97:6 99:14, 21 100:19 101:19,24 108:21 113:14 114:4 117:5,12 119:5,14 124:22 125:5 141:9,13,23

**privileged** 22:15 78:1 88:25 94:24 96:8,9 97:22,24 98:12 99:11 112:2 141:8

**privileges** 27:4 28:6 57:20

**problem** 104:1

**Procedures** 12:18 13:13 17:19

**proceed** 55:9 141:4

**proceeds** 57:22 58:9

**process** 23:3 66:5 108:11 116:4, 15 117:3

**processes** 101:1

**produce** 15:24 30:16

**produced** 83:12 104:14 139:5

**product** 11:3 35:3 73:13

**production** 103:8

**professional** 47:6

**progress** 109:2

**promise** 114:10

**proof** 93:5

**proper** 71:23 77:16

**proponent** 82:9

**proportionate** 93:9

**proposed** 72:3 73:21 82:3 89:22 101:10 139:17

**pros** 23:7

**protect** 116:8

**protected** 60:6 66:13 78:9,14,23

**protection** 23:19 36:23 50:5 79:13 80:4 128:2,11 132:19

**protections** 36:24 79:19,22 112:25

**provide** 22:16 25:6 26:15 48:19 49:12 54:6 56:21,22,25 57:5,14 60:4 62:1 67:12 71:19 84:18 106:18 107:17 113:22 122:12 128:6 132:16 136:18 141:7

**provided** 21:19 25:13 34:21 37:7 49:16 50:2,12 52:2 53:5 60:4 61:4 68:9 79:23 83:16 85:21 89:16 92:20 106:6 111:17 112:10 115:12 122:6 128:12,13 135:4

**providing** 13:1 21:23 38:24 65:9 79:9

**provision** 32:14 33:8 38:17 39:7 43:18 44:12,25 47:3 48:24 67:3,5 72:3 78:14 80:3 81:11,24 97:19 99:11 100:17 101:10,13 102:7,11 103:3,6,19 130:15

**provisions** 17:10,12 59:15 60:6 66:8 99:3 128:19

**pull** 32:13 70:9 114:8 117:14 119:17 120:18 133:2

**purple** 136:11

**pursuant** 15:19 28:3 37:6 57:10 100:12,17,25

**put** 11:20 17:24 19:3,19 68:16 69:25 74:18,21 110:3,4

**putting** 73:8

---

**Q**

**question** 11:5,13 14:1,3,5 15:18 16:23 17:5 27:11 32:15 33:2 38:5 39:25 40:8,11,18 41:2,24 42:22 43:11 44:2,4,5,8 46:11 48:6 52:14 62:7 63:7,23 66:15 74:2,25 75:1, 2,3,11 77:6,20 79:17 80:2 82:6 87:8 94:22 95:7 98:8 102:2,9 123:9,18 129:6 130:1,18 141:4

**questioned** 134:3

**questioning** 121:6 126:9 129:19 131:1 132:25 138:13

**questions** 10:11 11:17 15:25 25:25 30:17,18 64:24 96:25 109:25 120:23 122:23 123:1,6 125:19 126:4,11,18 141:3 142:2,5

**quick** 13:4

**quote** 15:25 57:15 92:20 93:11

---

**R**

**ranges** 107:12

**RCAHC** 15:23 122:20

**RCAHC's** 14:22

**read** 15:12,13 17:4,5 18:25 26:18, 25 28:14 29:2 44:6,7,8 56:4,14 58:20 77:1 84:25 88:3 89:7 93:17, 21 101:5 127:19 128:21,22,24 129:13 131:20 133:19

**reading** 27:15 70:7 132:12

**reads** 12:16 15:4 18:3,19 19:10 55:22 76:12 92:10 97:23 100:10

**real-time** 21:23 53:22 116:17

**realize** 62:7

**reask** 44:3 46:12 123:8

**reason** 13:1 69:25

**reasonable** 127:9 128:8 129:3, 10 130:20 138:1,17 139:1

**reasoning** 140:2,7 141:14,15

**reasons** 89:24

**Rebekah** 9:12

**recall** 23:13 25:12,15 42:10 46:20 51:5 52:23 53:18 59:18,23 63:25 65:11 101:12 103:4 111:22 127:8 131:14,16 138:12

**recalled** 50:24 90:20

**recalls** 90:4 94:15 116:25

**receive** 25:10,22 26:7,11,14 29:3 45:6,13 49:14 53:22,24 84:13 126:14 132:3,22 136:14 137:8

**received** 22:19 24:22 47:6 52:23 61:13 62:16 77:23 80:16,20 83:7 90:17 97:1,2 114:1 119:2 124:9

**receiving** 33:21 48:7

**recess** 51:17 69:5 109:16

**recipient** 100:18

**recognizing** 60:19 81:23

**recollection** 53:3 82:17 86:12 101:17 102:25 103:15,18

**recommendation** 139:15

**recommendations** 54:8 77:14 140:12

**record** 9:2,16 11:7,8 13:23 16:11 17:6,24 19:3,19 51:16,19 61:22 62:21 68:21,24 69:7,15 74:6,11 82:10 94:19 95:19 109:15,18

110:14 113:20 125:15,17,22,25
126:20 142:6,8

**record's** 63:1

**recording** 9:2 69:7 109:18

**recoveries** 58:14

**red** 76:4

**redesignated** 97:20

**redline** 84:7 104:14 105:8

**refer** 120:14 126:25

**reference** 114:15 139:6

**referenced** 64:8 66:1

**referred** 28:20 61:21 85:16 86:3

**referring** 43:19 54:21 97:7,8
120:12

**refers** 30:10 120:13

**reflect** 98:6 114:6

**reflected** 113:18

**regard** 120:16 121:5

**regularity** 53:18

**regularly** 54:5

**reiterate** 94:6

**reiterating** 71:11 141:20

**relate** 15:25 18:8 30:18

**related** 22:23 23:6,21 34:22
48:25

**relates** 15:8 17:18,19 18:6,10,22,
24 19:13,15 29:21 34:1 38:17
92:13,24 115:23

**relating** 138:15

**relationship** 60:20

**relationships** 65:24

**relative** 60:17 103:2,6

**release** 21:6,15 26:7,11,16 28:5
29:4 33:23 35:13,21,24 36:4,16
37:1,5 45:4,7,11,13,19 48:25 61:1
132:4,7 135:6 137:3

**released** 36:5 37:4

**releases** 39:14 48:19 49:12,16
84:18 132:17 136:18

**releasing** 42:20

**Reliable** 9:4

**relied** 86:20 106:15 108:18 117:8
125:2 131:3 139:4 140:12

**remains** 91:17 97:21

**Remember** 137:23

**removed** 76:10 89:8 98:14

**removing** 77:1 88:21 93:21

**renumbering** 104:14

**reorganization** 26:5 69:2,19

**reorganized** 30:3 104:25

**rephrase** 62:6 79:17

**report** 20:6

**reporter** 9:17 11:20 12:2 14:14,
15 20:2 44:7 46:8 69:4 74:18,21
82:24 110:7,11,12 114:22 117:18
119:20

**Reporting** 9:5

**represent** 126:2

**representative** 112:9 118:3
120:5 123:4,7

**represented** 74:13

**representing** 120:15

**reproduce** 96:19

**request** 100:17,19 112:22

**require** 55:24 56:16 131:22

**required** 27:22 29:16 35:16 39:8
45:8 56:21 57:13 84:18 94:21
103:21 132:18 136:18

**requirement** 32:7 33:4 36:15
48:17

**requirements** 33:12 47:24,25

**requires** 32:25 35:12,18 48:18
82:21

**reservation** 122:22

**reserve** 126:15,17

**resolution** 22:9 23:16 47:10
50:15 64:4,18 101:1

**resolutions** 55:3,8 71:19

**resolve** 60:24 112:21 128:9

**resolved** 49:5 62:24

**respect** 15:21 16:1 17:25 18:16
19:5,21 25:24 27:7 28:9 36:8
37:16,18 38:12 44:22 53:3,5 58:7,
12,14 59:6,9,25 61:25 62:20
67:11,13,14 68:2,10,12 73:7
79:21 80:12,19,22 81:15,18 83:6
84:19 85:10 86:8,15,22,25 87:5
89:14,16 90:2,5,15,18 91:20,23
92:2 94:2,4,17,23 95:16 97:6
98:24 99:2,18 101:12,17 102:7,19
103:16 104:3 106:8 107:12
111:16,24 113:15,24 114:2,5
115:1,12,16 117:2 118:3,15,20
119:12 122:23,24 126:14 134:16
136:19

**respects** 37:19 111:4 112:3

**respond** 60:8 61:24 80:1 138:5
139:23

**response** 42:23 52:11 141:14

**responses** 71:12

**rest** 57:8

**restrictions** 60:3

**restructuring** 50:3 61:13 63:11
106:17 108:9 114:1 119:11 125:3

**result** 85:19 124:5,15 141:1

**resulted** 85:23 86:10 131:8

**resulting** 135:25 136:24

**results** 29:21 92:24

**retained** 9:4 104:24

**reveal** 60:6 64:23 97:5 113:13
117:4 119:3

**revealed** 67:14

**revealing** 63:19 64:25 82:1 97:3
103:25 139:24

**revisions** 17:11

**rewind** 89:5

**rights** 26:22 27:4 28:2,6 29:7
33:14,18 34:1,12 35:19 40:3,14,
15,20,22,23 41:6,15,21 42:6,8,20,
24 43:13 44:18 45:8,24 46:2
48:11,25 50:20 57:15,20 135:1

**role** 50:17

**Roman** 11:21,24 12:9 65:15
66:12 95:1 127:21

**Romanette** 26:20,21 28:16

29:10,18 84:12

**Rothstein** 9:12

**rule** 100:13,25

**rules** 10:6 11:9 100:13

---

## S

**Sam** 17:14,15 97:12

**satisfy** 128:16

**Schiavoni** 28:22 30:12 34:14 40:10,25 41:22,25 42:11 43:20 44:21 46:6,9 47:15 48:15 49:20 74:1,5,8,10,14,16,17,20,23 82:20, 25 83:1 86:14 87:9 88:14,16,22, 24 89:1 90:8 92:4 101:20 106:12 118:23 120:11,21 121:2,25 122:15,19 123:2,24 141:16

**scope** 24:25 25:24 28:24 30:14 34:7 40:8 41:10 43:22 44:10,22 46:7,10 48:16 49:19 50:23 56:6 57:2 65:20 75:8 80:1 87:8 122:1, 16 129:6 130:23 135:15 137:13 138:4 140:10 141:17

**Scout's** 40:19

**scouting** 93:3,14

**scouting-related** 29:5,9 34:2 35:25 40:16 42:21 45:11,14 49:1, 4 61:2 137:4

**Scouts** 9:14 12:10 21:22 50:7 60:20 65:24 127:8 129:22

**screen** 16:19 133:12,20

**scroll** 14:25 20:9,11 24:11 29:22 31:16 32:17 35:7,9 36:1 76:1 97:14,16,17,25 109:1 136:6

**scrolling** 20:24

**section** 17:13 26:25 33:8 48:18, 20 70:11 72:9 81:5 92:9 97:20 98:12 99:24 100:1,4 104:8,18 108:19 132:17

**Sections** 39:14 49:13,16

**secure** 21:24 23:24

**seek** 75:3 121:10

**seeking** 45:3,6

**sense** 109:5

**sentence** 43:2 47:20 56:3 57:8 84:11 87:19 88:3 89:22 90:5 91:1, 13 134:12,13 136:11 137:23

**separate** 16:15

**separately** 129:7

**series** 105:1,2

**serve** 24:9

**served** 12:23

**serves** 140:25

**sessions** 85:17 94:13,16 101:8 113:5 116:5 131:7

**set** 45:7 48:19 49:12 100:14 109:21 116:6 132:17

**setting** 11:14 81:22

**settled** 24:10 33:24 40:15 71:16

**settlement** 18:6,21,23 19:13 22:10 24:1,5 27:24 30:2 38:22 49:5 50:8 56:12 58:8 73:16 76:15, 21 79:10 88:10,12 93:8 97:24 100:2,10,11,20 102:8,12 110:8,9, 16,22 111:3,5,9,25 112:3,6 113:2 114:3,10,17,21 115:1,8,14,18,21 116:7 117:2 118:1,5,12,17,18,21 119:9,17,18 120:1,8,14 121:7,9, 10,23 122:9,10,14,25 123:20 124:14 125:1 129:23 131:7,9

**settlement-related** 124:6

**settlements** 23:22 61:8 110:1 115:22 116:10 139:11

**settling** 21:7,15 23:18 24:3 26:12 27:6,7,19 28:8,9,18 29:13,25 30:4,7,8 35:13 36:6 37:3,4 40:5 45:9,15 49:1,3 50:14 55:25 56:9, 10,17,19 58:4,5,13,14 80:9 84:16 128:19,20 131:23 132:4,6 136:16 137:10

**sex** 26:8

**sexual** 22:13 126:3

**share** 22:24 90:3 93:9 104:4 112:1 115:15 116:25 118:19 123:21

**shared** 118:15 123:11

**Sharing** 70:17 71:4

**sheet** 15:7 18:8,23 19:14,24,25 20:5,10,21 21:7,16 24:18,23 25:22 30:21,25 32:8 34:17 35:3

37:12 38:8,19,21 45:23 46:19,25 47:13,17 48:9,10 49:24 51:23,25 52:25 58:21,22 59:15 60:1 63:14 65:15 67:4,20 68:5 111:14 115:13 118:16 120:13 121:7,14 122:8,21 126:6 127:4 128:7 129:2 131:9

**short** 11:5 120:22 138:7

**showed** 25:16

**showing** 12:7 14:19 24:13 32:21 34:17 69:11 70:13 78:7 92:8 110:18 114:13 117:20 119:22 139:6

**side-by-side** 69:22

**signatories** 73:16

**similar** 32:9 33:5 36:14

**similarly** 83:5 86:18 113:23

**simply** 63:23 87:11 94:6 123:8 140:11 141:20

**sir** 9:25 12:19 14:4 15:10 17:21 18:11,25 19:16 20:22 21:3 28:12, 13 31:24 35:20 36:10,12 37:8,20 38:6 40:17 41:19 43:9 44:5 46:21 47:11 48:4 52:23 54:17 59:11 65:13 67:1,17,22,23 68:1 70:18, 19 72:14,20 76:22 77:9 78:10,11, 17,18 81:7 84:4,21 86:6 87:21 88:13 89:20 92:15 93:15 97:15 98:2 99:5 101:3 104:21 105:3,11, 16,20 110:23,24 111:6,23 114:18, 19 115:5 118:6,8,13,22 120:2 126:25 127:3 128:21 131:14 134:2 135:8 138:16 141:7

**sit** 22:14 66:16 72:1 73:20 82:3

**situation** 11:1

**small** 132:13

**softballs** 83:24

**solely** 32:5 40:15

**sort** 10:11 95:2

**sought** 71:20

**source** 82:23

**speak** 33:7,11 112:22

**speaking** 57:4 65:23

**speaks** 137:15

**specific** 43:18 53:4 61:15 62:22, 23 66:17 83:16 87:1 90:11,15

91:25 95:16,18 96:19 99:18
102:2,25 103:15,18,25 104:3
113:16,21,24 117:1,9 119:3,13
122:20 125:2 126:18 138:13
140:4,21

**specifically** 13:22 42:15 44:12
47:2 59:24 86:8 126:7 129:1
134:5

**specifics** 63:19

**speed** 94:21 95:21

**spelling** 56:9

**spent** 115:24

**spirit** 60:22

**spoke** 111:13,15

**sponsorship** 93:3

**standard** 10:11

**start** 104:14

**starting** 27:14 76:3

**state** 52:2 120:25 137:25 138:17

**stated** 92:19

**statement** 41:3 42:15,23 44:12
90:9

**States** 9:7

**status** 116:19

**stenographic** 9:16

**steps** 100:22

**stick** 90:25

**stop** 74:10

**story** 64:17

**streamline** 80:25

**stricken** 76:7 87:25 88:2 98:6

**strictly** 29:5

**strike** 132:24

**strike-out** 75:24 76:4

**strike-outs** 70:8

**structuring** 60:13

**subject** 16:7 17:23 18:13 19:2,18
33:18 39:5 76:13,19 77:13,19
81:22 91:16 96:4 98:1 103:20
129:8 135:2,5

**Subsection** 104:8

**subsequently** 95:3

**substance** 10:8 83:3 141:22

**successful** 85:19 112:13

**suggest** 82:8 107:21

**suggesting** 95:25

**superceded** 30:20

**superseded** 13:19,20

**support** 38:24 55:8,11,12 71:18
77:16 103:23 106:21 107:19
112:7,16 139:12

**supported** 77:24

**surrounded** 51:4

**survivors** 22:2 79:11 126:2,22

**suspect** 49:3

**sworn** 9:19

---

## T

**table** 23:9 64:15

**taking** 9:23 21:17 23:12 47:5,17
54:23 64:9 74:12 103:3 108:12

**talk** 10:18

**talked** 28:17 29:17

**talking** 26:8 62:22 64:3,7 70:2
71:25 91:2 109:22 113:5 122:6
137:2

**task** 21:20 22:4,18 31:12 34:20,
23 49:25 50:18 52:1 53:16,21
54:5 60:10,16 61:14 62:10,16
63:9,13 85:22 90:16 91:24 103:1
108:17 111:19 113:9,25 124:9
131:2 139:3,14

**TCC** 71:16 103:6,23 126:13,20,
21,22

**TCJC** 63:16 64:1,4 100:15,24
103:16

**technician** 9:12

**technology** 10:13

**telling** 87:12 141:21

**ten** 51:12 109:3,4

**tent** 60:24

**term** 15:7 18:7,23 19:14,24,25
20:5,10,21 21:7,16 24:18,23
25:22 27:23 30:21,24 32:8 34:17
35:3 37:11 38:8,19,21 45:23
46:19,25 47:13,17 48:9 49:24
51:22,25 52:24 56:10 57:17
58:21,22 59:15 60:1 63:14 65:14
67:4,20 68:5 71:23 73:13 78:15
79:6 82:12 87:10 92:20 111:14
115:13 118:15 120:13 121:7,14
122:8,21 126:6 127:4,10 128:7
129:2 130:9,16,21 131:9

**terms** 16:23 24:2 36:18 41:16
42:22 45:16 53:2,18,23 54:6
57:10 60:14 70:2 76:20 82:7 83:3
98:1 103:10 106:23,25 111:2
113:20 115:3 116:15 118:7 120:9
121:17 124:13 128:4 139:10

**testified** 10:2 42:5 46:16,23 59:3,
12 65:8 82:7 113:17 121:16
129:18 134:2 140:3

**testifies** 9:20

**testify** 13:10,25 14:7 15:15 16:4,
8 17:25 18:15 19:4,20 46:17 53:2
83:15 86:17 90:11 96:8 114:24
120:5 121:18 123:7 140:16,18,21

**testifying** 13:17 15:20 16:15
42:1 104:1

**testimony** 16:13,25 30:14,23
38:2,6 41:11 42:10,12 46:20
47:11 59:8 65:11 71:1 77:11 81:9
86:19 91:11,16 94:7,17 96:4 97:2
111:22 121:12,13 138:8 140:10

**text** 29:22 70:23 72:17 75:24
76:4,7,8 78:12,13 98:5,6,13

**thereof** 58:10 69:3,19 128:5

**thereon** 93:10

**thereunder** 58:9

**thing** 10:11 31:14 38:16 73:12
81:20 96:17 102:24 112:5 115:19
124:1

**things** 10:6 42:19 48:10 50:11
53:23 54:1 61:8 70:8 94:21 95:21
106:6 133:19

**thought** 41:25

**time** 9:10 22:1 23:13 30:21 51:16,
19,24 54:22 63:4,13,14 64:2,13
65:14 68:24 69:8,21 71:14 77:13
109:15,19 112:6 115:24 124:2

125:8,17,22,25 129:21 142:6,8

**timeframe** 26:7,10 45:5 51:1 53:15 64:6 103:9

**timeline** 24:6 54:3 55:4 85:14

**timely** 55:10 93:6

**times** 10:2 53:24 114:11

**title** 31:17,20 32:22 55:21 97:21

**titled** 67:20 70:17 72:12

**titles** 27:4 28:6 57:20

**today** 9:12,23 10:25 13:10 14:7 15:15,20 16:8,14 17:25 18:14 19:4,20 21:3 22:14 35:2 47:11 66:17 72:2 73:20 89:19 96:4,25 102:23 106:9 111:12 113:6 114:24 115:12,24 118:2 120:4 121:19 122:6 123:12,15 125:8

**today's** 9:9 110:25

**told** 62:17 63:6,13

**top** 20:14,16 117:22 136:7

**topic** 13:11,22 14:7 15:1,4,16 16:9,17 17:8 18:3,16,18 19:5,10, 21 106:14 120:12,13,15,20

**topics** 12:15 13:16 15:20 17:25 83:14 104:2 113:17

**Tort** 124:3 139:12

**total** 47:18

**totality** 61:10 138:10

**transfer** 97:23

**treated** 23:11 24:1 25:18 134:19, 20 135:22

**treatment** 12:16 13:11 24:22 135:12 140:5

**tricking** 11:15

**trust** 12:17 13:12 17:18 22:10 27:23 28:3 30:2 38:25 45:9 50:8, 13 79:10 93:8 100:2,10,11,20 102:8,12 115:22

**Trustee** 97:24

**turn** 36:21 51:21 55:15 65:2 67:18 70:10 72:7 78:4 90:24 97:11 99:23 104:7 106:22

**type** 24:1 34:1 42:24 57:7 100:5 132:13

**types** 51:3 58:10 62:17,21 111:18 123:12

---

## U

**unaccrued** 57:24

**understand** 11:13 14:3,5 15:14 17:6 25:2 41:1 44:5 46:11 48:17 63:21 78:17 96:15 103:14 126:23 138:11 141:12

**understanding** 13:9 15:5 16:1, 16 17:2,9 18:4,19 19:11 24:20 28:19,25 30:9,18,20 34:16 44:11, 15 56:2,7,24 58:19 66:11 79:12, 18 87:4

**understood** 97:9 107:25

**undisputed** 58:1

**unimpaired** 87:10

**United** 9:7 100:24

**units** 93:4

**unliquidated** 57:25

**unmatured** 57:25

**unquote** 57:17 92:21

**unrelated** 93:14

**unrestricted** 104:19,24 106:15

**upcoming** 21:25

**updates** 21:19 52:2,5,8,23 53:22, 24 112:10 116:17

**utilized** 129:20

---

## V

**V-M** 104:11

**V-S** 108:25

**vacuum** 44:25 54:24

**vague** 87:8 130:12

**val** 76:25

**valid** 47:13 89:10 105:25

**validly** 21:8,13 30:25 37:12 38:3, 7 58:23 67:6 68:5 71:5 72:24 76:25 78:21 81:10 85:1,7 88:20 91:12 93:20 98:19 102:13 111:8 115:7 118:10 121:23

**valued** 45:24

**values** 60:20

**vein** 11:4

**version** 13:2 88:4 131:8

**versions** 17:12 99:10

**versus** 25:4 87:6

**victim** 55:8,11

**victims** 22:12 23:25 35:1 39:1 50:10 71:21

**video** 9:6

**violate** 141:24

**virtually** 9:11

**vis-a-vis** 42:25

**voluminous** 83:12

**volunteer** 30:19

**vote** 22:2

**voted** 54:9

**voting** 55:5 107:17

---

## W

**waive** 74:3

**waiver** 28:4 55:23 56:16 90:9 131:21

**waiving** 33:17 42:20 74:2 82:21

**wanted** 40:13 46:12 121:3 133:23

**wanting** 52:9

**water** 17:14 99:24

**ways** 97:13 133:13

**week** 54:2

**Weiss-calhoon** 9:3

**whichever** 75:12

**White** 59:17 60:13 108:13

**wholly** 93:14

**Wielage** 9:18

**willingness** 125:9

**wished** 112:25

**wishes** 134:22

**withdraw** 27:11 38:5 98:7 102:9

**witness's** 30:14 140:10

**Wolff** 126:10,13 129:7 133:7
 134:10 140:22

**Wonderful** 69:14

**word** 44:25 76:4

**words** 130:14

**work** 11:3 23:18 38:23 60:23
 127:21

**working** 12:22 13:15 55:2 116:21

**Wow** 109:9

**writing** 134:22

**written** 55:24 56:17 128:4,7
 131:22 134:25

---

### Y

**years** 10:13 117:3

**yes-or-no** 75:1,11

**yes/no** 82:6

**yesterday** 12:24

**Youth** 132:19

---

### Z

**Zoom** 10:10

**Zurich** 19:12,14 109:25 114:9,16,
 20 115:1,8,18 117:2,11 118:17
 122:9