**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Re: D.I. 9280, 9312, 9315, 9318,<br>9445, 9446, 9478** |

**DEBTORS' SUBMISSION IN SUPPORT OF THE**
**TESTIMONY OF BRIAN WHITTMAN**

The Boy Scouts of America (the "**BSA**") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession (together, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby file this response (the "**Whittman Response**") in support of calling Brian Whittman to testify, in connection with the *Objection of the Roman Catholic Ad Hoc Committee to the Declaration of Brian Whittman* [D.I. 9310] (the "**RCAHC Objection**")[2] filed by the Roman Catholic Ad Hoc Committee (the "**RCAHC**"),[3] which was joined by the Official Committee of Unsecured Creditors appointed in *In re: Archbishop of Agaña, a Corporation Sole* (Bankr. D. Guam 19-00010) (the "**Guam Committee**") and the tort claimants represented by Lujan & Wolff LLP (the "**Lujan Claimants**"

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]    On March 14, 2022, the RCAHC notified the Debtors that it would be narrowing its objections to certain paragraphs. *See Hammond Declaration in Support of the Debtors' Supplemental Response to Objection of the Roman Catholic Ad Hoc Committee to the Declaration of Brian Whittman* [D.I. 9446] (the "**Hammond Declaration**"), Ex. 1.  On March 15, 2022, the Court acknowledged that the RCAHC Objection had been narrowed to these paragraphs.  *See* Mar. 15, 2022 Hr'g Tr. at 48:22-49:3.

[3]    The RCAHC has since withdrawn its objection as reflected in Exhibit A to the Twelfth Mediator's Report, dated March 17, 2022 [D.I. 9386-1] (the "**RCAHC Term Sheet**").  *See* RCAHC Term Sheet ¶ 3(d).

and, together with the Guam Committee, the "**Guam Joiners**"), and the *Objection of the Guam Committee to the Declaration of Brian Whittman* [D.I. 9312] (the "**Guam Committee Objection**").[4]  Although the Debtors believe that the Declaration provides ample foundation for Mr. Whittman's testimony, in light of the objections, the Debtors propose having Mr. Whittman testify more fully as to the factual basis for his opinion.  In support of the admission of Mr. Whittman's testimony, the Debtors state as follows:

**SUBMISSION**

A.    **Mr. Whittman Would Offer Testimony Regarding The Releases**

1.    On March 13, 2022, the RCAHC and the Guam Committee filed objections to the *Declaration of Brian Whittman in Support of Confirmation of the Third Modified Fifth Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 9280] (the "**Declaration**"), seeking to exclude portions of Mr. Whittman's Declaration.  The Debtors filed timely responses to each of these objections.  *See The Debtors' Response to Objection of the RCAHC to the Declaration of Brian Whittman* [D.I. 9315]; *The Debtors' Response to Limited Objection of the Guam Committee to the Declaration of Brian Whittman* [D.I. 9318].  At the March 15, 2022 hearing, the Guam Committee stated that it was joining in the arguments set forth in the RCAHC Objection.  *See* Mar. 15, 2022 Hr'g Tr. at 27:8-31:18.  Altogether, these objections target paragraphs 104, 106, 107, 130, 132, 134, 135, 136, 166, 167, 169, 170, 180, 181, 183, 184, 192, and 199 of Mr. Whittman's Declaration (the "**Contested Paragraphs**").

2.    Through its various objections, the Guam Committee incorrectly argues that Mr. Whittman lacks sufficient personal knowledge to testify about his belief that Hartford, Century

---

[4]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Third Modified Fifth Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 8813] (as may be amended, modified, or supplemented, and together with any exhibits and schedules thereto, the "**Plan**").

and the Chubb Companies, the Zurich Insurers and the Zurich Affiliated Insurers, and Clarendon

(the "**Settling Insurers**") would not be "willing to agree to the terms set forth" in their respective

settlement agreements absent the releases and injunctions provided in the Plan. *See* Guam Obj. at

4-6; *see also* Decl. ¶¶ 106, 134, 136, 169, and 183. The Guam Committee similarly raises

foundational concerns with respect to Mr. Whittman's testimony explaining that the releases under

these settlements are important from a go-forward business standpoint and "essential to obtain the

significant contributions" being provided by these insurers. *See* Guam Obj. at 4-6; *see also* Decl.

¶¶ 107, 135, 170, and 184. To the contrary, and as explained below, Mr. Whittman's Declaration

sets forth sufficient foundation for these paragraphs. For example, in paragraphs 6, 7, and 8, Mr.

Whittman explains that his work included "supporting negotiation and mediation with counsel,"

"analysis related to settlements embodied in the Plan," and discussing the hard fought negotiations

with the Settling Insurers and the Tort Claimants' Committee (the "**TCC**") (collectively referred

to as the "**Settlements**") and the role that Mr. Whittman had in advising the Board with respect to

such Settlements. Additionally, in paragraphs 102 and 103, Mr. Whittman explains that "[a]fter

evaluating the merits of the Hartford Insurance Settlement, I supported and recommended that the

NEC approve the Hartford Insurance Settlement," and then explains why he believes the Hartford

Insurance Settlement is in the best interests of the estate. *See* Decl. ¶¶ 131 (Century), 165

(Zurich), 179 (Clarendon), and 189 (TCC). Notwithstanding the fact that Mr. Whittman's

Declaration contains ample account of his firsthand knowledge regarding his evaluation of the

settlements in his capacity as the Debtor's financial advisor, the Debtors seek to offer Mr.

Whittman to provide additional color to the substance of the Contested Paragraphs to the extent

the Court has any issues with the foundational aspects of his testimony.

3.      As addressed above, the need for releases is so obvious that the Guam Committee is providing them to any insurer that settles with it, even though it has no settlements with insurers at this time.  It is highly ironic that the Guam Committee is challenging the need for providing releases to Settling Insurers.  In the Guam Committee's Plan, even though they don't have any settling insurers, they have filed a Plan that would provide insurance companies who agree to pay a reasonable settlement a Supplemental Injunction providing that creditors, including Tort Claimants would be "permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, to assert, enforce or attempt to assert or enforce any such Interest against the Settling Insurer Entities or Policies." *See* Guam Committee Disclosure Statement, § 7.10, attached hereto as Ex. 1.  The Guam Committee further offered a Channeling Injunction for the benefit of settling insurers, among others, explaining that the Channeling Injunction is an integral part of the Plan and is essential to the Plan's consummation and implementation.  *See* Guam Committee Disclosure Statement, § 24.3.   Given that they do not even have settlements and thus no need to provide a release or injunction at this time, the Guam Committee's actions amply demonstrate the obvious fact that insurance companies require such releases in order to resolve claims.

B.      **The Court Has Broad Discretion To Recall Mr. Whittman**

4.      Under the *Final Pretrial Order For The Plan Confirmation Hearing* [D.I. 9285] (the "**Pre-Trial Order**") and Third Circuit case law, Mr. Whittman can be recalled to the stand. *First*, under Section III.F of the Pre-Trial Order, it is within this Court's discretion to permit parties to call a witness for a second time.[5]   Indeed, Section III.F is designed to prevent a party from

---

[5]     Pre-Trial Order Section III.F provides as follows:

Except as explicitly provided herein, for efficiency and witness convenience, **each witness will only take the stand once absent permission from the Court** or consent of all parties; provided, however, this rule will not prejudice parties from seeking relief to call a witness for a second time for rebuttal. A party seeking to call a

recalling an adversary's witness, not to limit a party from offering its own witness more than once. In this regard, Section III.F provides that "[o]nce one party has called a witness to the stand in its case-in-chief, *that witness may not be called back to the stand later by a different party unless ordered by the Court*, which request to call a witness a second time may be made orally at trial." (emphasis added).[6]

5.      Further, the Third Circuit allows a witness to be recalled to the stand, particularly where the party seeking relief to recall a witness has not yet closed its case-in-chief, and where there is no prejudice to adverse parties. *See United States v. Johnson*, 434 F. Supp. 2d 301, 306 (D. Del. 2006) (affirming decision to permit recall of a witness where the plaintiff had not yet closed its case and there was no prejudice to the defendant in permitting the supplemental testimony); *United States v. Coleman*, 805 F.2d 474, 482 (3d Cir. 1986) (affirming decision to permit recall of a fact witness where the defendant was afforded full opportunity to cross-examine the witness). Indeed, "[t]he matters of recalling witnesses and the scope of redirect examination rest within the sound judicial discretion of the trial judge." *In re D. S. A.*, 283 A.2d 829, 831 (D.C. 1971) (quoting *United States v. Manglona*, 414 F.2d 642,644 (9th Cir. 1969)); *Greenwood v. United States*, 659 A.2d 825, 828 (D.C. 1995) (internal citations omitted) ("Moreover, we have held that the trial judge has broad discretion concerning whether a witness may be recalled to the

---

witness that another party is calling must inform the party calling that witness at least 24 hours in advance of when that witness is scheduled to be called or at the same time as objections to that witness's declarations are served, whichever comes earlier. The party calling the witness reserves all objections as to any questions that may be asked or the propriety of another party calling that witness. Any party seeking to examine that witness, whether in its case-in-chief or solely on cross-examination, should examine the witness while he or she is the stand. Once one party has called a witness to the stand in its case-in-chief, that witness may not be called back to the stand later by a different party unless ordered by the Court, which request to call a witness a second time may be made orally at trial. (emphasis added).

6    The limitation of a witness to only testify once was not a limitation on the ability to call your own witnesses, rather it was an agreement to relieve the burden of having to produce your witness a second time in response to the request by an adverse party. That was the entire point. It was not a limitation to produce evidence as needed.

Case 20-10343-LSS    Doc 9496    Filed 03/28/22    Page 6 of 11

stand after testifying. Thus, it is well recognized that the trial judge possesses considerable discretion in responding to requests by counsel concerning the timing of a witness's appearance").[7]

6.      The Debtors offer Mr. Whittman, before the close of their case-in-chief, to supplement the record with direct testimony limited to the substance of the Contested Paragraphs. As it reserved its rights to cross-examine Mr. Whittman in the future, the Guam Committee will be able to do so now.  *See* Mar. 15, 2022 Hr'g Tr. at 56:7-57:2 (Mr. Caldie: "No, Your Honor, after hearing the remaining argument from the Catholic Ad Hoc Group and the debtors' responses and hearing the questions asked by the certain insurers' attorney, we will simply reserve our right, of course, to cross Mr. Whittman on issues that he testifies to in the future.").

7.      Additionally, the Guam Committee will not be prejudiced by Mr. Whittman's testimony.  Indeed, the Guam Committee has failed to demonstrate any prejudice, but rather incorrectly noted that "[a] cross-examination of this witness would be materially different today, very seriously different."  Mar. 25, 2022 Hr'g. Tr. at 144:8-10.  There is no difference today.  The Guam Committee was prepared to cross Mr. Whittman two weeks ago, and can do so now with only more time to prepare.  *See Johnson*, 434 F. Supp. at 306 (finding no prejudice despite defendant's objection to "another opportunity with the same witness" where plaintiff had not closed its case and the proposed testimony was relevant and not cumulative).  Moreover, the Debtors could have questioned Mr. Whittman live and the Guam Committee would have had no advance knowledge of the testimony, but now knows precisely what will be covered, so it is again not prejudiced, in fact it is advantaged.  Further, as the Guam Committee stated during the March 15 hearing, it has an interest in "[probing] the issues and to see what lies underneath, what personal

---

[7]    The Guam Committee represents about 77 claimants, which is approximately 0.08% of all claims.

perceptions lie underneath the testimony of the witness[,] and then we can revisit whether or not the declaration should come into evidence in full after that further education." Mar. 15, 2022 Hr'g. Tr. at 32:8-14. The Debtors ask that this Court exercise its discretion to permit Mr. Whittman's direct testimony to resolve any outstanding objections.

C.    **The Declaration Establishes The Foundation For Mr. Whittman's Testimony Regarding His Evaluation Of The Settlements**

8.    As set forth in Mr. Whittman's Declaration, Mr. Whittman evaluated the settlements reached with Hartford, Century, Zurich, Clarendon, and the TCC and advised the BSA's National Executive Committee (the "**NEC**") in connection with the Settlements. In this respect, the uncontroverted testimony in Mr. Whittman's Declaration provides an overview of the work that he performed in these Chapter 11 Cases as the Debtors' lead financial advisor, which includes "supporting negotiation and mediation with counsel," "analysis related to settlements embodied in the Plan," and discussing the hard fought negotiations with Hartford, Century, Zurich, Clarendon, and the TCC and the role that Mr. Whittman had in advising the Board with respect to such Settlements. *See* Decl. ¶¶ 6-8. Moreover, in these Chapter 11 Cases, Mr. Whittman has testified before this Court three times, has been deposed six times, and has submitted multiple declarations in connection with this matter involving the mediation, settlements that the Debtors have entered into, and the impact of litigation on the Debtors. *See, e.g., Declaration of Brian Whittman in Support of the BSA's Motion for a Preliminary Injunction Pursuant to Sections 105(a) and 362 of the Bankruptcy Code*, Adversary Proceeding Case Number 20-50527 [D.I. 8]. To argue that Mr. Whittman is not competent to testify as a fact witness in this case because he lacks firsthand knowledge of the Settlements is baseless.

9.    Mr. Whittman also specifically identified the meetings that he participated in that pertain to the Settlements. For example, he explains in his Declaration that "[a]fter evaluating the

merits of the Hartford Insurance Settlement, I supported and recommended that the NEC approve

the Hartford Insurance Settlement," and then explains why he believes the Hartford Insurance

Settlement is in the best interests of the estate.  *See* Decl. ¶¶ 102-03; *see also id.* ¶¶ 131 (Century),

165 (Zurich), 179 (Clarendon), and 189 (TCC).  As Mr. Whittman explained that he analyzed each

of these Settlements in connection with his work advising the NEC, the Guam Committee's

objection that Mr. Whittman lacks foundation to testify about  his analysis of the Settlements and

his belief as to why the Settlements are in the best interests of the estate is simply unfounded.  The

statements in Mr. Whittman's Declaration are plainly facts that he evaluated in connection with

his analysis of the Settlements.

   10.  Likewise, to the extent that the Guam Committee is arguing that Mr. Whittman

lacks foundation to describe his analysis as to the likely consequences of failing to reach a

settlement, which would obviously result in additional cost, delay and continued litigation, the

Guam Committee is wrong.  *See Teen-Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399, 403 (3d Cir.

1980) (allowing a company's accountant to testify as a lay witness regarding how lost profits could

be calculated and to inferences the accountant could draw based on his perception of the

company's books); *see also Carnegie Mellon Univ. v. Marvell Tech. Grp.*, No. 09-cv-290, 2001

WL 1767970, at *2 (W.D. Pa. Apr. 24, 2013) (holding admissible fact witness testimony as to a

company's potential decision-making under different circumstances because the witnesses would

have participated in the relevant decision-making and had "extensive knowledge of [the

company's] operations . . . and business strategy.").  Mr. Whittman is an experienced financial

advisor who has over twenty-five years of financial restructuring and bankruptcy experience and

who has been heavily involved in all of the Debtors' restructuring efforts.  He has observed the

Debtors' disputes with the insurers in this matter (*see, e.g.,* Decl. ¶¶ 92-93), and is more than

competent to explain the likely consequences absent a resolution of the dispute. Moreover, the testimony set forth in Mr. Whittman's Declaration is consistent with the testimony set forth in the *Declaration of Brian Whittman in Support of the BSA's Motion for a Preliminary Injunction Pursuant to Sections 105(a) and 362 of the Bankruptcy Code*, Adversary Proceeding Number 20-50527 [D.I. 8] demonstrating that these are issues that Mr. Whittman has been contemplating throughout this case.

11. Further, the Guam Committee's objections to Mr. Whittman's testimony that the Settlements were reasonable are ill-conceived. *See* Decl. ¶¶ 104, 132, 166, and 180. In fact, these same paragraphs provide foundation for Mr. Whittman's statements. Mr. Whittman explains that these Settlements were reasonable because "[they were] agreed to in arm's-length negotiations between sophisticated parties with opposing economic interests." *Id.* Given his role in this case, Mr. Whittman is more than competent to offer such testimony.

12. Moreover, the Guam Committee's objections to paragraphs 192 and 199 of Mr. Whittman's Declaration concerning releases provided to Chartered Organizations are similarly baseless. In the preceding paragraphs, Mr. Whittman explains the scope of the releases granted to Chartered Organizations. *See* Decl. ¶¶ 190-91. In paragraph 192, Mr. Whittman explains that if the Chartered Organizations did not release their rights under these insurance policies, the insurers would still have coverage obligations under the policies. The foundation for Mr. Whittman's observations are drawn from his analysis of the terms of the insurer settlements in connection with his work for the NEC and is set forth in these and the previously identified paragraphs. *See* Decl. ¶¶ 102-03, 131, 165, and 179. As explained in his Declaration, it is Mr. Whittman's observation based on the work that he performed in his capacity as the Debtors' lead financial advisor that the value of the insurers contributions would be tied to the scope of any

release, and therefore "complete resolution of their exposure was a critical component of achieving the over $1.6 billion of insurance settlements to date."  Decl. ¶ 192.  Without such resolution, any settlement would yield far less consideration for the Settlement Trust, given that they would still have coverage obligations to the Chartered Organizations.

13.    The Guam Committee's objection to paragraph 199 is likewise meritless.  In this respect, the Guam Committee objects to Mr. Whittman's observation that there "is a logical relationship" between the Chartered Organizations' contributions to the Settlement Trust and the releases that they are provided under the Plan, and that the Chartered Organizations would likely face a significant number of lawsuits if the Chartered Organizations do not receive releases.  As noted above, Mr. Whittman explains the scope of the releases provided to the Chartered Organizations and the insurance rights being contributed to the Settlement Trust.  *See* Decl. ¶¶ 190-91.  There is ample foundation for Mr. Whittman's observation that there is a logical relationship between the contributions of the Chartered Organizations and the releases that they were provided under the Plan.

## CONCLUSION

14.    For the above and foregoing reasons, the Debtors respectfully ask the Court to overrule the objections of the Guam Committee and admit Mr. Whittman's Declaration in its entirety.  Given the objection, the Debtors should be allowed to call Mr. Whittman to further explain his analysis of the Settlements that was performed in connection with his work for the NEC.

Dated: March 28, 2022
      Wilmington, Delaware

| WHITE & CASE LLP | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|---|---|
| Jessica C. Lauria (admitted *pro hac vice*) | |
| Glenn M. Kurtz (admitted *pro hac vice*) | */s/ Tori L. Remington* |
| Andrew Hammond (admitted *pro hac vice*) | Derek C. Abbott (No. 3376) |
| Samuel P. Hershey (admitted *pro hac vice*) | Andrew R. Remming (No. 5120) |
| 1221 Avenue of the Americas | Paige N. Topper (No. 6470) |
| New York, New York 10020 | Tori L. Remington (No. 6901) |
| Telephone:  (212) 819-8200 | 1201 North Market Street, 16th Floor |
| Email:  jessica.lauria@whitecase.com | P.O. Box 1347 |
|      gkurtz@whitecase.com | Wilmington, Delaware 19899-1347 |
|      ahammond@whitecase.com | Telephone:  (302) 658-9200 |
|      sam.hershey@whitecase.com | Email: dabbott@morrisnichols.com |
| |      aremming@morrisnichols.com |
| – and – |      ptopper@morrisnichols.com |
| |      tremington@morrisnichols.com |
| WHITE & CASE LLP | |
| Michael C. Andolina (admitted *pro hac vice*) | |
| Matthew E. Linder (admitted *pro hac vice*) | |
| Laura E. Baccash (admitted *pro hac vice*) | |
| Blair M. Warner (admitted *pro hac vice*) | |
| 111 South Wacker Drive | |
| Chicago, Illinois 60606 | |
| Telephone:  (312) 881-5400 | |
| Email: mandolina@whitecase.com | |
|      mlinder@whitecase.com | |
|      laura.baccash@whitecase.com | |
|      blair.warner@whitecase.com | |