**REQUEST FOR ADMISSION NO. 14: The Morris-Sussex Area Council, BSA had in its employ an individual named** ██████████████████████ **as a District Executive for the Morristown District during all or part of calendar years 1960 and 1961.**

> **DEBTORS:** The Debtors state that, after a reasonable inquiry, the Morris-Sussex Area Council, BSA employed a ████████████ as a District Executive at the time of his termination in 1963. The information known or readily obtainable is insufficient to enable the Debtors to admit or deny that ████████ was employed by the Morris-Sussex Area Council during 1960 and 1961.

> **PATRIOT'S PATH:** The Company objects to this request as it seeks information that is neither relevant to the pending bankruptcy proceeding nor likely to lead to discovery of relevant information. By way of further response, the Company notes that it has no records responsive to this request and that the requested information is unknown to the Company. Accordingly, the Request is denied.

**REPLY:** The Debtors ADMIT that the Morris-Sussex Area Council, BSA employed Schwindler's abuser as a District Executive, but they report they are unable to verify whether he was employed during 1960 and 1961, while claiming that he was terminated in 1963. Patriot's Path however, claims to know nothing about this employee. There are several points here which require follow-up discovery. From Debtor's: What is the documentary source of this information? Is it possible that ████ was relieved of his duties in 1961, but not legally terminated until 1963? Is there an investigative file associated with ████ termination? If there is documentary support for this response, why has that material not been produced? From Patriot's Path: How is it possible that the BSA National Council knows about the employment and termination of ████ but the local council has never heard of him?

**REQUEST FOR ADMISSION NO. 15: The BSA had commissioned** ████████ ████ **as a professional scouter at some time prior to his employment by the Morris-Sussex Area Council, BSA.**

> **DEBTORS:** The Debtors state that, after a reasonable inquiry, ████████████ was employed as a Local Council employee from 1955 to 1963, including his employment by the Morris-Sussex Area Council at the time of his termination in 1963.

> **PATRIOT'S PATH:** The Company objects to this request as it seeks information that is neither relevant to the pending bankruptcy proceeding nor likely to lead to discovery of relevant information. By way of further response, the Company notes that it has no records responsive to this request and that the requested information is unknown to the Company. Accordingly, the Request is denied.

**REPLY:** The Debtors ADMIT that ████ was a professional scouter [Local Council employee] from 1955 until his termination in 1963. They ignore the request to admit that ████ was commissioned as a professional scouter by the BSA. The likely explanation for this failure is the fact that such an admission implicates liability for the BSA concerning ████ sexual abuse of ████████ and probably others] while serving as a commissioned scouter. As with the follow-up discovery necessitated by response number 14, ████ believes Debtor has documentary evidence in its possession which provides a more complete picture of ████ career as a professional scouter which should have been provided in response to this request. ████████ also believes that it is unlikely that Patriot's Path doesn't also possess

discoverable documentary evidence related to ████

**REQUEST FOR ADMISSION NO. 16:** ██████████████ ~~was~~ **the professional scout executive for the Morris-Sussex Area Council, BSA during calendar years 1960 and 1961.**

> **DEBTORS:** The Debtors object to this request on the grounds that the Debtors do not have sufficient knowledge or information to enable them to admit or deny the request. The Debtors further object to this request to the extent it seeks disclosure of information not in the possession, custody or control of the Debtors, but rather in the possession, custody or control of Patriots' Path.  Subject to the foregoing General and Specific Objections, the Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request.

> **PATRIOT'S PATH:** The Company objects to this request as it seeks information that is neither relevant to the pending bankruptcy proceeding nor likely to lead to discovery of relevant information. By way of further response, the Company notes that it has no records responsive to this request and that the requested information is unknown to the Company. Accordingly, the Request is denied.

**REPLY:** The BSA says Patriot's Path has the information. Patriot's Path says it has no records responsive to the request. Both responses cannot be truthful. Debtors have admitted the employment of ████ [numbers 14 and 15], but claim to have no records about the professional scouter who hired, supervised and terminated ████ There are only two possible explanations - the BSA is not being truthful, or ████ records were kept because the BSA knew he was a child sexual abuse predator. If it is the latter, the BSA deliberately kept the information secret, and would have never admitted anything if the Court had not ordered Debtors to answer Schwindler's specific discovery requests. As discussed at Reply 23 below, there is almost no possibility that ████████████ name is not included in the documentation related to ████ As for Patriot's Path, it is inconceivable that it has no records related to the council's Chief Executive Officers.

**REQUEST FOR ADMISSION NO. 17** ████████████ **had been employed by a Local Council of the BSA located in the State of New York prior to his employment by the Morris-Sussex Area Council, BSA. [Please provide the name of that council or councils].**

> **DEBTORS:** The Debtors object to this request on the grounds that the Debtors do not have sufficient knowledge or information to enable them to admit or deny the request. Subject to the foregoing General and Specific Objections, the Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request.

> **PATRIOT'S PATH:** The Company objects to this request as it seeks information that is neither relevant to the pending bankruptcy proceeding nor likely to lead to discovery of relevant information.  By way of further response, the Company notes that it has no records responsive to  this request and that the requested information is unknown to the Company. Accordingly, the Request is denied.

**REPLY:** Debtors admit that the BSA commissioned ████ as a professional scouter in 1955, that he was employed during part of his career by the Morris-Sussex Area Council, BSA,

18

until his termination in "1963," as well as that the BSA was the sole authority for commissioning professional scouters, but claim to have no information concering which local councils he was employed by, or even precisely when he was employed by those local councils. Several follow-up questions to Debtors are in order, specifically "what records related to ████ are maintained by the BSA, and why have these records not been produced in response to ██████████ discovery requests which specified that documents necessary to fully respond should be produced?"

**REQUEST FOR ADMISSION NO. 18** ██████████████ **was the second most senior professional scouter employee of the Morris-Sussex Area Council, BSA, and was assigned as the Camp Director for Mount Allamuchy Boy Scout Camp located in Stanhope, Sussex County, New Jersey during all or parts of calendar years 1960 and 1961.**

> **DEBTORS:** The Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request.

> **PATRIOT'S PATH:** The Company objects to this request as it seeks information that is neither relevant to the pending bankruptcy proceeding nor likely to lead to discovery of relevant information. By way of further response, the Company notes that it has no records responsive to this request and that the requested information is unknown to the Company. Accordingly, the Request is denied.

**REPLY:** The BSA clearly has some records related to ████ The Debtors need to specify what those records are, and provide a copy to Schwindler. Patriot's Path's response is frivolous.

**REQUEST FOR ADMISSION NO. 19:** ████████████████ **executed an employment contract with** ████████████████ **for the position of head dishwasher for the 1961 calendar year camping season at Camp Mount Allamuchy.**

> **DEBTORS:** The Debtors object to this request on the grounds that the Debtors do not have sufficient knowledge or information to enable them to admit or deny the request. The Debtors further object to this request to the extent it seeks disclosure of information not in the possession, custody or control of the Debtors, but rather in the possession, custody or control of Patriots' Path. Subject to the foregoing General and Specific Objections, the Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request.

> **PATRIOT'S PATH:** The Company objects to this request as it seeks information that is neither relevant to the pending bankruptcy proceeding nor likely to lead to discovery of relevant information. By way of further response, the Company notes that it has no records responsive to this request and that the requested information is unknown to the Company. Accordingly, the Request is denied.

**REPLY:** Schwindler accepts these responses as reasonable.

**REQUEST FOR ADMISSION NO. 20:** **The BSA maintained exclusive control over the commissioning of individuals who the Local Councils were permitted to employ as professional scouters during 1960 and 1961.**

**DEBTORS:** Admitted.

**PATRIOT'S PATH:** The Company objects to this request as it seeks information that is neither relevant to the pending bankruptcy proceeding nor likely to lead to discovery of relevant information. The Company further objects to this request as it seeks a legal conclusion. By way of further response, the Company notes that the requested information is unknown to the Company. Accordingly, the Request is denied.

**REPLY:** ████████ accepts the response from Debtors as reasonable, but submits that Patriot's Path response is knowingly false, because the local council knows full well that all professional scouters are, and always have been commissioned by the BSA alone.

**REQUEST FOR ADMISSION NO. 21:  Individuals who served as commissioned professional scouters in 1960 and 1961 received their training from the BSA at its National Training School located at the Mortimer L. Schiff Scout Reservation in Mendham Township, Morris County, New Jersey.**

**DEBTORS:** The Debtors object to this request on the grounds that the Debtors do not have sufficient knowledge or information to enable them to admit or deny the request. Subject to the foregoing General and Specific Objections, the Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request.

**PATRIOT'S PATH:** The Company objects to this request as it seeks information that is neither relevant to the pending bankruptcy proceeding nor likely to lead to discovery of relevant information. By way of further response, the Company acknowledges that this is likely, but lacks any no specific information to confirm or deny this representation. Accordingly, the Request is denied.

**REPLY** ████████ submits that these replies are frivolous because both the BSA and Patriot's Path are well aware of the fact that the Mortimer L. Schiff Scout Reservation was the site of the BSA National Training Center from 1932 until 1979. Quoting from Wikipedia:[15]

"The original reservation comprised 400 acres (1.6 km2) near Mendham, New Jersey and was in operation from 1932-1979. It was formally dedicated on October 18, 1933. The land was purchased for the BSA by Mrs. Jacob Schiff in memory of her son, Mortimer, who died while President of the BSA in 1931. During this time it served as the BSA's National Training Center."

There is no possible way that the BSA has forgotten where it trained 100% of its leaders [both professional and volunteer - including "junior leaders"] throughout the majority of its history, and Patriot's Path cannot possibly not know that the Schiff property is less than 15 miles from its headquarters, especially since scouts from the council still camp on the grounds.[16]

---

[15] https://en.m.wikipedia.org/wiki/Mortimer_L._Schiff_Scout_Reservation

[16] https://en.m.wikipedia.org/wiki/Patriots%27_Path_Council

**REQUEST FOR ADMISSION NO. 22:** ████████████ **ceased being employed by the Morris-Sussex Area Council, BSA during calendar year 1961.**

> **DEBTORS:** The Debtors state that, after reasonable inquiry, ████████ was terminated in 1963.

> **PATRIOT'S PATH:** The Company objects to this request as it seeks information that is neither relevant to the pending bankruptcy proceeding nor likely to lead to discovery of relevant information. By way of further response, the Company notes that it has no records responsive to this request and that the requested information is unknown to the Company. Accordingly, the Request is denied.

**REPLY:** Schwindler accepts Debtor's response as reasonable, but follow up with the same questions as set forth above - "where are the documentary records supporting this response?" Patriot's Path's response is simply another unresponsive and frivolous response. How is it that the BSA knows when the local council fired its employee, but the local council never heard of him?

**REQUEST FOR ADMISSION NO. 23:** ████████████ **ceased being employed by the Morris-Sussex Area Council, BSA following revelations of inappropriate sexual conduct with a minor male, which became known shortly before the summer camping season for Camp Mount Allamuchy.**

> **DEBTORS:** The Debtors admit that ████████ was terminated following revelations of inappropriate sexual conduct. The information known or readily obtainable is insufficient to enable the Debtors to admit or deny the remainder of this request.

> **PATRIOT'S PATH:** The Company objects to this request as it seeks information that is neither relevant to the pending bankruptcy proceeding nor likely to lead to discovery of relevant information. By way of further response, the Company notes that it has no records responsive to this request and that the requested information is unknown to the Company. Accordingly, the Request is denied.

**REPLY:** ████ accepts Debtor's response with the same follow-up question as above: "Where is the documenty evidence which supports this response?" It is rather obvious that what the BSA has is some sort of summary record of ████ employment as a professional scouter, quite possibly a disciplinary type record prepared in response to an investigation into ████ sexual abuse of minors while serving as a professional scouter. It is reasonable to believe that ████████ complaint is truthful and accurate as to ████ being removed as district executive and camp director just prior to the 1961 camping season at Allamuchy, but that he was not formally terminated until sometime in 1963 so as to permit a full investigation to take place. If this is the case, the BSA must have in its possession some sort of documentation regarding that investigation. Given the fact that ████████ faced intense harrassment and retaliation from the local council during the first year following ████ removal from his active assignments, the likelihood is high that his name is mentioned in the investigation report [since he was ████ primary - and possibly sole victim in 1960 and 1961]. The relevance of this point to confirmation has do not only with the necessity of claimants needing BSA held information in order to substantiate their claims, but also as to ████████ arguments that the BSA structure is the reason for the endemic sexual abuse of minors within scouting for 112 years. Not only were the foxes guarding the henhouse, the BSA actively covered up this fact - kept ████ criminal conduct secret - never reported it to

local law enforcement - and never even advise ▮▮▮▮▮ family what it had discoved concerning ▮▮ - and has steadfastly refused to personally apologize to ▮▮▮▮ or offer to make amends for the local council's retaliation against him related to denial of his Eagle Scout Award or Order of the Arrow Vigil honors. It is also highly likely that the documentation the BSA has concerning ▮▮ identifies ▮▮▮▮ as the local council scout executive, and provides additional details which would have been responsive to ▮▮▮▮▮ discovery requests. The Patriot's Path response is frivolous and without any credibility. It is inconceivable that Patriot's Path has no records whatsoever concerning an employee who they terminated due to his being caught using his position to sexually prey on Schwindler and others. An additional follow-on discovery question which must be addressed is that everyone knows the BSA maintained "perversion files" related to adult volunteers [which it has refused to make public], does the BSA have a similar list of professional scouters who are also known or suspected child sexual abusers? If so, where is that list? This point is significant, because if the BSA has such a list, and there have been individuals placed on this list throughout the past 112 years ▮▮▮▮ objections to confirmation based upon the necessity of changing the organizational structure of the BSA must be taken into consideration.

### REQUEST FOR ADMISSION NO. 24: ▮▮▮▮▮ replaced ▮▮▮▮▮ as camp director for Camp Mount Allamuchy just prior to the camping season in calendar year 1961.

> **DEBTORS:** The Debtors object to this request on the grounds that the Debtors do not have sufficient knowledge or information to enable them to admit or deny the request. The Debtors further object to this request to the extent it seeks disclosure of information not in the possession, custody or control of the Debtors, but rather in the possession, custody or control of Patriots' Path.  Subject to the foregoing General and Specific Objections, the Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request.

> **PATRIOT'S PATH:** The Company objects to this request as it seeks information that is neither relevant to the pending bankruptcy proceeding nor likely to lead to discovery of relevant information. By way of further response, the Company notes that it has no records responsive to this request and that the requested information is unknown to the Company. Accordingly, the Request is denied.

**REPLY:** The BSA says Patriot's Path has the information. Patriot's Path says it has no records responsive to the request. Both responses cannot be truthful. While ▮▮▮▮ accepts that the responses are acceptable, the comment must be made that the lack of reasonable record keeping by the BSA and local councils indicates that this is not a well run or reasonable organization. The fact that the same organization can specify minute details related to assets as small as pen and ink drawings received 70 years ago, but can't provide any inormation related to its employees strongly supports ▮▮▮▮ contention that the true focus of the BSA and its local councils is the accumulation and management of assets, and that this is precisely what this bankruptcy action is all about.

**REQUEST FOR ADMISSION NO. 25:** **Individuals who served as camp directors at Boy Scout camps belonging to local councils in 1960 and 1961 received their training and certification from the BSA at its National Camp Leadership Training School located at the Mortimer L. Schiff Scout Reservation in Mendham Township, Morris County, New Jersey.**

> **DEBTORS:** The Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request.

> **PATRIOT'S PATH:** The Company objects to this request as it seeks information that is neither relevant to the pending bankruptcy proceeding nor likely to lead to discovery of relevant information. By way of further response, the Company notes that it has no records responsive to this request and that the requested information is unknown to the Company. Accordingly, the Request is denied.

**REPLY:** These responses are frivolous and unresponsive. The BSA and Patriot's Path know very well where the BSA conducted 100% of its Leadership Training Programs in 1960 and 1961.

**REQUEST FOR ADMISSION NO. 26:** **The Boy Scouts of America maintained liability Insurance covering the actions of its professional scouters during calendar years 1960 and 1961 which was separate from insurance covering liability for volunteers. [Please provide the name of insurer and policy number, as well as limits of coverage both aggregate and per occurrence.]**

> **DEBTORS:** The BSA has secondary evidence that Commercial General Liability Policies were issued to the BSA in 1960 and 1961. 1960 Policy: Insurance Company of North America, Policy No. CGL 122620, $250,000 per occurrence limit, no aggregate limit. 1961 Policy: Insurance Company of North America, Policy No. CGL 175782, $250,000 per occurrence limit, no aggregate limit.

> **PATRIOT'S PATH:** The Company objects to this request as it seeks information that is neither relevant to the pending bankruptcy proceeding nor likely to lead to discovery of relevant information. By way of further response, the Company notes that it has no records responsive to this request and that the requested information is unknown to the Company. Accordingly, the Request is denied.

**REPLY:** ▮▮▮▮▮▮ accepts these responses. These policies would be applicable to Gray's sexual abuse of Schwindler in his capacity as a professional scouter employed by the Morris-Sussex Area Council, BSA in calendar years 1960 and 1961.

**REQUEST FOR ADMISSION NO. 27:** **The Morris-Sussex Area Council, BSA maintained liability insurance covering the actions of its professional scouters [employees] during calendar years 1960 and 1961 which was separate from insurance covering liability for volunteers. [Please provide the name of the insurer and policy number, as well as limits of coverage both aggregate and per occurrence].**

> **DEBTORS:** Denied.

> **PATRIOT'S PATH:** The Company objects to this request as it seeks information that is neither relevant to the pending bankruptcy proceeding nor likely to lead to discovery of relevant information. By way of further response, the Company notes

that it has no records responsive to this request and no basis upon which to form an opinion regarding the truth or accuracy of the statement. Accordingly, the Request is denied.

**REPLY:** Patriot's Path's response is frivolous and unresponsive. Debtor's response is challenged as untruthful. Throughout their responses to ███████ discovery, Debtors have honestly admitted that they do not have possess records which would be properly in the possession of Patriot's Path, but they suddenly insist without any support or explanation that they ***know*** that insurance policies which ███████ had personal knowledge of at the time never existed.  The reason Schwindler had personal knowledge of the existance of these separate insurance policies covering professional scouters employed by the council is that his father was an executive with the insurance services company, the Hooper-Holmes Bureau, which provided the field inspection services related to these policies, and the existance of these policies was one of the reasons Schwindler's father permitted him to be alone with ███████ and other of the professional scouters to begin with.

**REQUEST FOR ADMISSION NO. 28: The Morris-Sussex Area Council, BSA maintained general liability insurance covering the programs and activities of scouting during calendar years 1960 and 1961 which was separate from coverage maintained by the BSA nationally. [Please provide the name of the insurer and policy number, as well as limits of coverage both aggregate and per occurrence].**

**DEBTORS:** Denied.

**PATRIOT'S PATH:** The Company objects to this request as it seeks information that is neither relevant to the pending bankruptcy proceeding nor likely to lead to discovery of relevant  information.  By way of further response, the Company notes that it has no records responsive to  this request and no basis upon which to form an opinion regarding the truth or accuracy of the  statement. Accordingly, the Request is denied.

**REPLY** ███████ makes the same reply to these responses as to number 27, and adds that between 1965 and 1967, ███████ was the individual who personally handled filling out the required insurance forms and authorizations for treatment for scouts and employees who suffered injuries at Allamuchy in his capacity as Camp Commissioner. He was the individual who drove these scouts and employees to the local hospital, and who handled all arragements while at the hospital. Because ███████ used his personal vehicle for these trips, the local council required that his personal insurance had to specifically cover the occupants of the vehicle, and the local council's policies were not to cover any injuries while in his vehicle except if such injuries occurred at Allamuchy - where his vehicle was used for delivering scouts and equipment throughout the camp. Moreover, ███████ was directly involved with local council insurance coverage following the death of an adult volunteer during a canoe trip supervised by a junior member of staff who worked for ███████ It should be noted that the Watchung Area Council which was merged with the Morris-Sussex Area Council in 1999 is reported by Debtors as having maintained its own policies in addition to those maintained by the BSA, and there is no reason to assume, as Debtors clearly are, that the Morris-Sussex Area Council, with far greater assets and potential liabilities, did not follow the same practice. [Which ███████ knows for a fact they did, and that they did throughout this period. As noted above, ███████ father was personally and professionally interested in which entity carried insurance, and for whom, from the day ███████ entered scouting with Troop 32. While most 13-year-olds have no interest in such topics, ███████ was unable to avoid his father's interest. Before ███████ was permitted to work on Troop 32's camp

trailer or Allamuchy's pick-up trucks ███████ father always made him verify insurance coverage first.]

**REQUEST FOR ADMISSION NO. 29:** **The Morris-Sussex Area Council, BSA and its insurers settled a major claim related to an injury incurred by a scout in which the scout suffered extensive injuries when a member of the Camp Allamuchy staff attempted to remove a bowie knife which the scout had in a sheath in his back pocket, and in doing so severely cut the wrist of the scout in calendar year 1960 or 1961. [Please provide the name of the insurer and policy number, as well as the [settlement] paid].**

> **DEBTORS:** The Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request.

> **PATRIOT'S PATH:** The Company objects to this request as it seeks information that is neither relevant to the pending bankruptcy proceeding nor likely to lead to discovery of relevant information. By way of further response, the Company notes that it has no records responsive to this request and no basis upon which to form an opinion regarding the truth or accuracy of the tatement. Accordingly, this request is denied.

**REPLY:** Schwindler submits that neither Debtors nor Patriot's Path are being forthright in their responses. As stated during the March 4, 2021 hearing, ███████ was a witness to this incident, and was required to provide evidence for the insurance company prior to the settlement. The incident caused the Morris-Sussex Area Council, BSA to institute a policy [at the insistance of its insurer] prohibiting scouts from using or possessing sheath knives during scouting activities associated with the council. If Debtors' national insurers have no record of this incident, and Debtors have no record of the incident, then the only possibility is that Debtor's denial at number 28 cannot be truthful, because the incident did occur ███████ did have to provide evidence, a large settlement was made because the victim suffered extensive permanent injuries, and the local council did establish its rule prohibiting sheath knives.

**REQUEST FOR ADMISSION NO. 30:** **The Morris-Sussex Area Council, BSA conducted camporees and Order of the Arrow functions at the Mortimer L. Schiff Scout Reservation during calendar years 1960 and 1961.**

> **DEBTORS:** The Debtors object to this request on the grounds that the Debtors do not have sufficient knowledge or information to enable them to admit or deny the request. Subject to the foregoing General and Specific Objections, the Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request.

> **PATRIOT'S PATH:** The Company objects to this request as it seeks information that is neither relevant to the pending bankruptcy proceeding nor likely to lead to discovery of relevant information. By way of further response, the Company notes that it has no records responsive to this request and that the requested information is unknown to the Company. Accordingly, the Request is denied.

**REPLY:** ███████ submits that Debtors or Patriot's Path are both being disingenuous in their responses to this request. The BSA surely knows who used the facilities at its own National Training Center, and Patriot's Path certainly knows that it used those facilities for

well over 50 years because the facilities at Schiff were more conveniently located than those at Allamuchy, and they were ideal for conferences and training purposes.

**REQUEST FOR ADMISSION NO. 31:** **The BSA's Mortimer L. Schiff Scout Reservation was located within the geographical limits of the Morristown District of the Morris-Sussex Area Council, BSA.**

> **DEBTORS:** The Debtors state that Mortimer L. Schiff Scout Reservation is located in Morris County, New Jersey. The information known or readily obtainable is insufficient to enable the Debtors to admit or deny the remainder of this request.
>
> **PATRIOT'S PATH:** The Company objects to this request as it seeks information that is neither relevant to the pending bankruptcy proceeding nor likely to lead to discovery of relevant information. By way of further response, the Company notes that it has no records responsive to this request and that the requested information is unknown to the Company. Accordingly, the Request is denied.

**REPLY:** Patriot's Path's response is frivolous for the same reasons as set forth at numbers 21 and 25. ▮▮▮▮▮▮▮ accepts Debtors' response, with the comment that it is unlikely that Debtors have no record of what the geographic limits were for districts within the Morris-Sussex Area Council, BSA, given the fact that they are who established those limits.

### SUMMARY

As noted throughout the above point by point discussion, not once did Patriot's Path provide a reasonable response to ▮▮▮▮▮▮▮ discovery requests in spite of the Court's March 4, 2021 order for the parties to do so. With two exceptions [the flat denials of local council insurance], the Debtors responses were generally reasonable, while repeatedly stating that the information sought was in the possession of Patriot's Path. Given the admissions by Debtors related to the professional scouter who sexually abused ▮▮▮▮▮▮▮ and the documentation of the insufficiency of Patriot's Path's responses, it is reasonable to conclude that each of his requested admissions should be found to be admitted as a matter of law. More to the point related to confirmation of the plan, the failures of Debtors and Patriot's Path to provide complete and reasonable responses, coupled with the specifics of ▮▮▮▮▮▮▮ replies to the responses supports his contention that the Plan should not be confirmed because there is no possibility that the BSA will ever be able to successfully continue in operation unless or until the organizational structure of the BSA is changed in a manner reasonably capable of

protecting scouts from sexual abuse at the hands of other scouts, adult volunteers, and professional scouters. Everything about the responses provided by the Debtors and Patriot's Path supports ███████ contention that this bankruptcy proceeding is all about the BSA's primary concern - the protection of its assets, and that the BSA has less than no interest in making available any of the information solely in its possession so as to enable any of the claimants to properly meet the requirements of the Plan as to substantiation of claims.

WHEREFORE, the Court should enter the order previously sought by ███████ as to finding each request admitted as a matter of law, and should take this pleading undr consideration in opposition to confirmation of the Plan since it is highly unlikely that the prison will be willing to arrange for ███████ to actively participate in the confirmation hearings.

The undersigned certifies copy of the within and foregoing has been served upon counsel by email addressed to:

**COUNSEL FOR DEBTORS AND DEBTORS IN POSSESSION:**
WHITE & CASE, LLP
Jessica C. Lauria
jessica.lauria@whitecase.com
Michael Andolina
mandolina@whitecase.com

MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
Derek C. Abbott
dabbott@morrisnichols.com
Paige Topper
ptopper@morrisnichols.com

**UNITED STATES TRUSTEE**
David L. Buchbinder
david.l.buchbinder@usdoj.gov
Hanna Mufson McCollum
hannah.mccollum@usdoj.gov

27

**COUNSEL FOR TORT CLAIMS COMMITTEE**
PACHULSKI, STANG, ZIEHL & JONES, LLP
James Stang
jstang@pszjlaw.com
James O'Neill
joneill@pszjlaw.com

**COUNSEL FOR PATRIOT'S PATH COUNCIL, BSA**
MCCARTER & ENGLISH, LLP
Shannon Humiston
shumiston@mccarter.com

Respectfully submitted this 13th day of March, 2022.



28

**EXHIBIT #1**