**<u>Exhibit A</u>**

**Debtors' Responses to Certain of Mr. Schwindler's Replies in the Renewed Motion**

| Request[1] | Debtors' Responses and Objections to Mr. Schwindler's Requests | Mr. Schwindler's Replies in Renewed Motion | Debtors' Responses to Mr. Schwindler's Replies in Renewed Motion[2] |
|---|---|---|---|
| 1. Boy Scout Troop 32 was sponsored by the Saint Peter's Episcopal Church as chartering organization within the Morristown District of the Morris-Sussex Area Council of the Boy Scouts of America [BSA] during calendar years 1960 and 1961. | The Debtors object to this request on the grounds that the Debtors do not have sufficient knowledge or information to enable them to admit or deny the request. The Debtors further object to this request to the extent it seeks disclosure of information not in the possession, custody or control of the Debtors, but rather in the possession, custody or control of Patriots' Path Council, BSA ("Patriots' Path"). Subject to the foregoing General and Specific Objections, the Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request. | The BSA says Patriot's Path has the information. Patriot's Path says it has no records responsive to the request. Both responses cannot be truthful. Schwindler refers the Court to the Debtor's own list of chartered sponsoring organizations included in the Plan which are impacted by this action. St. Peter's Episcopal Church is found on that list, and it has precisely one claim recorded related to it: Schwindler's. St. Peter's Episcopal Church knows that it sponsored a scout troop in 1960 and 1961, but why should it have any motivation to make a contribution to the settlement trust if the contradictory responses of the parties are | The Debtors conducted a reasonable inquiry and do not have sufficient information to admit or deny that St. Peter's Episcopal Church sponsored Troop 32 in 1960 and 1961. This type of information is typically maintained by Local Councils, but that does not mean that Patriots' Path actually possesses the relevant historical records. |

---

[1]    The Debtors have excluded responses to Request Nos. 19, 20, 22, 23, 24, 26, and 31 because Mr. Schwindler has not raised any further issue with those responses.

[2]    The Debtors reserve all rights set forth in their responses and objections to Mr. Schwindler's requests.  The responses in this chart are not intended to waive or otherwise affect any rights set forth in the Debtors' responses and objections.

|  |  | truthful? Is it reasonable to believe that Debtors and Patriot's Path know enough to list St. Peter's Episcopal Church as a chartered sponsoring organization for purposes of the Plan, but have no historical records of who has sponsored troops? The primary function of the local councils is supposed to be the identification of potential chartered sponsoring organizations, and the support of those organizations efforts on behalf of the BSA. Morristown is the largest city and seat of the county in which the office for Patriot's Path is located. The council has never been headquartered in any other county. St. Peter's Episcopal Church is one of the ten largest churches in Morristown.5 Churches sponsor most of the BSA's units. If the local council is unaware of which churches are currently sponsoring units, or have historically sponsored units, that local council must have some other focus besides maximizing participation in the scouting program. Perhaps this explains Patriot Path's more |  |
| --- | --- | --- | --- |

| | | than 500% increase in physical assets during a time it has seen a 500% drop in youth participation? | |
|---|---|---|---|
| 2. The individual listed as Scoutmaster of Boy Scout Troop 32 during calendar years 1960 and 1961 was William Dickinson. | The Debtors object to this request on the grounds that the Debtors do not have sufficient knowledge or information to enable them to admit or deny the request. The Debtors further object to this request to the extent it seeks disclosure of information not in the possession, custody or control of the Debtors, but rather in the possession, custody or control of Patriots' Path. Subject to the foregoing General and Specific Objections, the Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request. | The BSA says Patriot's Path has the information. Patriot's Path says it has no records responsive to the request. Both responses cannot be truthful. Schwindler acknowledges that it is possible that neither the BSA nor Patriot's Path has historical records which contain the names of volunteer adult scout leaders, but if this is the case, then there is no possible way for any claimant to prove a relationship between the individuals who sexually abused them and scouting, since all the BSA and its partners, including insurers, would need to do is claim that the lack of such records means they cannot be held liable. If these parties do not have these records as claimed, the question becomes "why don't those records exist, given that the BSA has known for 112 years that adult volunteers were sexually abusing boys in their charge?" | The Debtors do not possess information sufficient to admit or deny this request, which Mr. Schwindler acknowledges is possible. Again, this type of information is typically maintained by Local Councils, but that does not mean that Patriots' Path actually possesses the information sufficient to admit or deny this request. |

| | | But, we know that the BSA and local council's possess these records because we would not be in this bankruptcy case otherwise. Is it not just a tiny bit curious that the BSA and local councils say they can't make their lists of known as to suspected predators public for myriad reasons, while simultaneously claiming they don't really have any records concerning adult volunteers? In the case of Dickinson, it is inconceivable that St. Peter's Episcopal Church would not be cognizant of who the man who designed and oversaw the sculpting and installation of the statute of St. Peter in the niche above the main doors to the church, especially given his long service as a warden of the parish. | |
|---|---|---|---|
| 3. Boy Scout Troop 32 met on the premises of Saint Peter's Episcopal Church on South Street in Morristown, New Jersey during | The Debtors object to this request on the grounds that the Debtors do not have sufficient knowledge or information to enable them to admit or deny the request. The Debtors further object to this request to the extent it seeks disclosure of information not in | The BSA says Patriot's Path has the information. Patriot's Path says it has no records responsive to the request. Both responses cannot be truthful. The Court is referred to the Facebook page for BSA Troop 228 in Morristown, NJ. The | The Debtors do not possess information sufficient to admit or deny this request. The Debtors take no position on the accuracy of the information or content of the photographs Mr. Schwindler cites to. Even if it is true that a recent Boy Scout meeting took place at St. |

| calendar years 1960 and 1961. | the possession, custody or control of the Debtors, but rather in the possession, custody or control of Patriots' Path. Subject to the foregoing General and Specific Objections, the Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request. | troop met at St. Peter's Episcopal Church on South Street until a few weeks ago.6 One would think that Patriot's Path Council would know that they have a scout troop that has been meeting at St. Peter's Episcopal Church in Morristown, and that they would know that all troop numbers were changed following the mergers of various councils into the current Patriot's Path Council. It should not be a difficult matter for Patriot's Path to ascertain whether the troop which has been meeting at St. Peter's Episcopal Church is sponsored by that church, but Patriot's Path has no interest in responding honestly to discovery. As it happens, Troop 228 is not sponsored by St. Peter's Episcopal Church, but it did meet in the Parish Hall/Annex where Troop 32 once served.' There is less than no chance that Patriot's Path is not aware of this fact. | Peter's Episcopal Church, that fact is not sufficient evidence for the Debtors to admit that Troop 228 met at that same church in 1960 and 1961. St. Peter's Episcopal Church is not a party in these cases and to the Debtors' knowledge has not been served with any discovery requests in these cases. |
| 4. Boy Scout Troop 32 assisted at parish | Boy Scout Troop 32 assisted at parish functions, including serving | The BSA says Patriot's Path has the information. Patriot's Path | The Debtors do not possess information sufficient to admit or |

| | | | |
|---|---|---|---|
| functions, including serving in the kitchen of the parish hall of Saint Peter's Episcopal Church during calendar years 1960 and 1961. | in the kitchen of the parish hall of Saint Peter's Episcopal Church during calendar years 1960 and 1961. | says it has no records responsive to the request. Both responses cannot be truthful. Schwindler acknowledges that it is reasonable for the parties to no longer possess this historical information, but notes that given the fact that Patriot's Path knows that Troop 228 was meeting at St. Peter's Episcopal Church until recently, and knows that the troop assisted at various functions at the church, that it is likely that Troop 32 did so when it was meeting at the same church. Patriot's Path cannot claim to not know what activities Troop 228 engages in because that is one of the primary jobs of local district scout executives to keep up with. In this case, the troop's web site contains photographs of it engaged in activities identical to those described in Schwindler's complaint and proof of claim. | deny this request, which Mr. Schwindler acknowledges is reasonable. This type of information is typically maintained by Local Councils, but that does not mean that Patriots' Path actually possesses information sufficient to admit or deny this request. |
| 5. Gregory Thayer was listed as an Assistant Scoutmaster for Boy Scout Troop 32 | The Debtors object to this request on the grounds that the Debtors do not have sufficient knowledge or information to enable them to admit or deny the request. The | The BSA says Patriot's Path has the information. Patriot's Path says it has no records responsive to the request. Both responses cannot be truthful. As | The Debtors do not possess information sufficient to admit or deny this request, which Mr. Schwindler acknowledges is possible.   Mr. Schwindler's reply |

| | | | |
|---|---|---|---|
| within the Morristown District of the Morris-Sussex Area Council, BSA during calendar years 1959 and 1960. | Debtors further object to this request to the extent it seeks disclosure of information not in the possession, custody or control of the Debtors, but rather in the possession, custody or control of Patriots' Path. Subject to the foregoing General and Specific Objections, the Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request. | set forth at Reply 2, Schwindler acknowledges that it is possible that neither the BSA nor Patriot's Path has historical records which contain the names of volunteer adult scout leaders, but if this is the case, then there is no possible way for any claimant to prove a relationship between the individuals who sexually abused them and scouting, since all the BSA and its partners, including insurers, would need to do is claim that the lack of such records means they cannot be held liable. If these parties do not have these records as claimed, the question becomes "why don't those records exist, given that the BSA has known for 112 years that adult volunteers were sexually abusing boys in their charge?" In the case of Gregory Thayer, Schwindler has cause to believe that Thayer was involved in sexual abuse of boys associated with scouting, and Thayer's relationship with Schwindler's abuser was not simply casual. As such, it is reasonable to believe that Thayer's name | that "there is no possible way for any claimant to prove a relationship between the individuals who sexually abused them and scouting, since all the BSA and its partners, including insurers, would need to do is claim that the lack of such records mean they cannot be held liable," is unfounded. The Debtors conducted a reasonable inquiry and have no information responsive to this request.   Just because Mr. Schwindler would like a definitive response does not mean that one exists.   Moreover, the issues of whether a claimant can support his or her claim goes to the merits of the claim itself and will be addressed by the Settlement Trust under the Trust Distribution Procedures.  It is not an issue for confirmation. |

| | | should be, or once should have been listed on the BSA's records of childhood sexual predators. The fact that the parties claim to have no records related to Thayer strongly supports accusations that the BSA actively covered up child sexual abuse in order to protect the reputation and assets of the BSA. Nothing in the parties' behavior related to Schwindler indicates otherwise. | |
| 6. Frank Joseph Schwindler III was registered as a member of Boy Scout Troop 32 within the Morristown District of the Morris-Sussex Area Council, BSA during parts of calendar years 1959 and 1960. | The Debtors object to this request on the grounds that the Debtors do not have sufficient knowledge or information to enable them to admit or deny the request. The Debtors further object to this request to the extent it seeks disclosure of information not in the possession, custody or control of the Debtors, but rather in the possession, custody or control of Patriots' Path. Subject to the foregoing General and Specific Objections, the Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request. | The BSA says Patriot's Path has the information. Patriot's Path says it has no records responsive to the request. Both responses cannot be truthful. In the earliest stages of this case the BSA promised to make available all unit rosters to the parties. Someone must have provided the information to the TCC at some point, because the TCC advised claimants whose names were not found on unit rosters that their claims needed additional substantiation on this point. Schwindler was advised by the TCC that his name was included on the unit rosters to which they had access. Either | Troop rosters of record are typically maintained by the applicable Local Council. The Debtors reviewed the documents received from the Local Councils that may be relevant to this request, including New Jersey Local Councils other than Patriots' Path, and also conducted a search for any documents that reference Frank Joseph O'Regan—a name the Debtors understand has been used by Mr. Schwindler. The Debtors did not locate information sufficient to admit or deny this request. |

| | | the TCC was misadvising claimants like Schwindler that their names were recorded on unit rosters, or one of these two parties is being obstructive of the discovery process. | |
|---|---|---|---|
| 7. Boy Scout Troop 50 was sponsored by American Legion Post 59 as chartering organization within the Morristown District of the Morris-Sussex Area Council, BSA during calendar years 1960 and 1961. | The Debtors object to this request on the grounds that the Debtors do not have sufficient knowledge or information to enable them to admit or deny the request. The Debtors further object to this request to the extent it seeks disclosure of information not in the possession, custody or control of the Debtors, but rather in the possession, custody or control of Patriots' Path. Subject to the foregoing General and Specific Objections, the Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request. | The BSA says Patriot's Path has the information. Patriot's Path says it has no records responsive to the request. Both responses cannot be truthful. Schwindler refers the Court to the Debtor's own list of chartered sponsoring organizations included in the Plan which are impacted by this action. American Legion Post #59 is found on that list, and it has precisely one claim recorded related to it: Schwindler's. American Legion Post #59 knows that it sponsored a scout troop in 1960 and 1961, but why should it have any motivation to make a contribution to the settlement trust if the contradictory responses of the parties are truthful? Is it reasonable to believe that Debtors and Patriot's Path know enough to list American Legion Post #59 | The Debtors do not possess information sufficient to admit or deny this request. Mr. Schwindler indicates that the Debtors have listed American Legion Post 59 as a Chartered Organization, but that is not sufficient information to address Mr. Schwindler's request, which was that Boy Scout Troop 50 was sponsored by American Legion Post 59 in 1960 and 1961. American Legion Post 59 is not a party in these cases and to the Debtors' knowledge has not been served with any discovery requests in these cases. |

as a chartered sponsoring organization for purposes of the Plan, but have no historical records of who has sponsored troops? Even if one were to accept the possibility that Patriot's Path has no records of which organizations sponsored scout troops in 1960 and 1961, there is no possibility that it doesn't know which organizations currently sponsor such units. The primary function of the local councils is supposed to be the identification of potential chartered sponsoring organizations, and the support of those organizations efforts on behalf of the BSA. According to Patriot's Path Council's own website, American Legion Post #59 is one of the 27 chartered sponsoring organizations in the immediate Morristown area.9 The Post has sponsored a troop for over 100 years. In what can only be categorized as an embarrassment for Patriot's Path regarding its non-responses to Schwindler's requests, the SAME TROOP that until recently met at St.

| | | Peter's Episcopal Church is the troop sponsored by American Lgion Post #59.10 If the local council is unaware of which organizations are currently sponsoring units, or have historically sponsored units, that local council must have some other focus besides maximizing participation in the scouting program. Perhaps this explains Patriot's Path's more than 500% increase in physical assets during a time it has seen a 500% drop in youth participation? | |
| 8. The individual listed as Scoutmaster of Boy Scout Troop 50 during calendar years 1960 and 1961 was John J. "Uncle Jack" Hathaway. | The Debtors object to this request on the grounds that the Debtors do not have sufficient knowledge or information to enable them to admit or deny the request. The Debtors further object to this request to the extent it seeks disclosure of information not in the possession, custody or control of the Debtors, but rather in the possession, custody or control of Patriots' Path. Subject to the foregoing General and Specific Objections, the Debtors state that, after a reasonable inquiry, the information known or readily | The BSA says Patriot's Path has the information. Patriot's Path says it has no records responsive to the request. Both responses cannot be truthful. The same comments set forth at numbers 2 and 5 above apply to this request. In the case of Hathaway, this adult volunteer worked at Mt. Allamuchy BSA Camp for more than 60 years. He was the recipient of the BSA's Silver Beaver Award after 50 years in scouting. It is inconceivable that neither the Debtors nor Patriot's Path ever | The Debtors do not possess information sufficient to admit or deny this request. Mr. Schwindler's statements that Mr. Hathaway was the recipient of the BSA's Silver Beaver Award is irrelevant (whether it is true or not) to the specific request that Mr. Hathaway was the Scoutmaster of Boy Scout Troop 50 during 1960 and 1961. |

| | | | |
|---|---|---|---|
| | obtainable is insufficient to enable the Debtors to admit or deny this request. | heard of the individual who was primarily responsible for the construction of virtually every campsite and structure at Allamuchy. | |
| 9. "Uncle Jack" Hathaway served as the Maintenance Director for Morris-Sussex Area Council, BSA's Camp Mount Allamuchy during calendar years 1960 and 1961. | The Debtors object to this request on the grounds that the Debtors do not have sufficient knowledge or information to enable them to admit or deny the request. The Debtors further object to this request to the extent it seeks disclosure of information not in the possession, custody or control of the Debtors, but rather in the possession, custody or control of Patriots' Path. Subject to the foregoing General and Specific Objections, the Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request. | The BSA says Patriot's Path has the information. Patriot's Path says it has no records responsive to the request. Both responses cannot be truthful. The reply at number 9 above is directly on point. The Debtors know who they have recognized with the Silver Beaver award, and Patriot's Path knows who built most of their primary camp. | Same response as Request No. 8. Whether Mr. Hathaway was recognized with the Silver Beaver award has no bearing on whether he served as the Maintenance Director for Morris-Sussex Area Council, BSA's Camp Mount Allamuchy in 1960 and 1961. |
| 10. Boy Scout Troop 50 met on the premises of American Legion Post on Speedwell Avenue in Morristown, New Jersey during | The Debtors object to this request on the grounds that the Debtors do not have sufficient knowledge or information to enable them to admit or deny the request. The Debtors further object to this request to the extent it seeks disclosure of information not in | The BSA says Patriot's Path has the information. Patriot's Path says it has no records responsive to the request. Both responses cannot be truthful. As noted at number 7, American Legion Post #59 still sponsors a scout troop in Morristown, NJ." | The Debtors do not possess information sufficient to admit or deny this request. The Debtors take no position on the accuracy of the information or content of the social media posts Mr. Schwindler cites to. Even if it is true that American Legion Post 59 "still sponsors" a |

| calendar years 1960 and 1961. | the possession, custody or control of the Debtors, but rather in the possession, custody or control of Patriots' Path. Subject to the foregoing General and Specific Objections, the Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request. | The Legion Post no longer owns its own meeting hall, but meets at the VFW hall.'2 The meeting hall previously used on Speedwell Avenue was a former elementary school building which was condemned and subsequently demolished in the 1970s. Due to loss of membership associated with the failure of the Legion to successfully recruit Vietnam era veterans, the Post #59 opted to continue in existence without acquiring a new meeting hall. It is inconceivable that Patriot's Path was unable to provide this information. | Boy Scout troop in Morristown, New Jersey, that fact is not sufficient evidence for the Debtors to admit that Troop 50 met on the premises of American Legion Post on Speedwell Avenue in Morristown, New Jersey in 1960 and 1961. |
|---|---|---|---|
| 11. Frank Joseph Schwindler III was registered as a member of Boy Scout Troop 50 within the Morristown District of the Morris-Sussex Area Council, BSA during parts of calendar years 1960 and 1961. | The Debtors object to this request on the grounds that the Debtors do not have sufficient knowledge or information to enable them to admit or deny the request. The Debtors further object to this request to the extent it seeks disclosure of information not in the possession, custody or control of the Debtors, but rather in the possession, custody or control of Patriots' Path. Subject to the foregoing General and Specific Objections, the Debtors state that, | The BSA says Patriot's Path has the information. Patriot's Path says it has no records responsive to the request. Both responses cannot be truthful. The same reply as made above at number 6 applies. Either the information made available to the TCC was correct and based upon the troop rosters, or it was not. If the BSA provided the troop rosters as reported by the TCC, then one of these responses is false. | Troop rosters of record are typically maintained by the applicable Local Council. The Debtors reviewed the documents received from the Local Councils that may be relevant to this request, including New Jersey Local Councils other than Patriots' Path, and including documents relating to Frank Joseph O'Regan—a name the Debtors understand has been used by Mr. Schwindler. The Debtors did not locate information sufficient to admit or deny this request. |

| | after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request. | | |
|---|---|---|---|
| 12. The United States Navy Reserves Seabees regularly spent weekends working on construction and facilities at Camp Mount Allamuchy during calendar years 1960 and 1961. | The Debtors object to this request on the grounds that the Debtors do not have sufficient knowledge or information to enable them to admit or deny the request. The Debtors further object to this request to the extent it seeks disclosure of information not in the possession, custody or control of the Debtors, but rather in the possession, custody or control of Patriots' Path. Subject to the foregoing General and Specific Objections, the Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request. | The BSA says Patriot's Path has the information. Patriot's Path says it has no records responsive to the request. Both responses cannot be truthful. It is inconceivable that Patriot's Path has no idea who built the major structures at its principal camp: Mt. Allamuchy.13 Allamuchy is considered to be the best scout camp location east of the Rocky Mountains. It has by far the best facilities. The main camp office building and parking lot were the last major construction at the camp. These were completed by the U.S. Navy Reserve Seabees between 1960 and 1962. Patriot's Path knows very well who built these facilities, and when they were completed. Among other things, construction in New Jersey requires permits and subsequent registration with the local government. Beyond that, there | The Debtors do not possess information sufficient to admit or deny this request. |

| | | is no such thing as an insurance policy covering structures that doesn't require information concerning the date of construction and compliance with electrical wiring standards. The Patriot's Path own website related to the camp provides the history of the camp, and photographs of the facilities, so the refusal of Patriot's Path to truthfully respond to this request illustrates precisely the attitude of the parties related to claimants such as Schwindler. | |
|---|---|---|---|
| 13. The medical cabin at Camp Mount Allamuchy was located at the end of the parking lot nearest the red storage barn, and connected by footpath with the kitchen side of the Hartley Dodge Dining Facility during calendar years 1960 and 1961. | The Debtors object to this request on the grounds that the Debtors do not have sufficient knowledge or information to enable them to admit or deny the request. The Debtors further object to this request to the extent it seeks disclosure of information not in the possession, custody or control of the Debtors, but rather in the possession, custody or control of Patriots' Path. Subject to the foregoing General and Specific Objections, the Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable | The BSA says Patriot's Path has the information. Patriot's Path says it is "possible," but has no records responsive to the request. Both responses cannot be truthful. This failure to respond is one of the silliest [and there is no other word for it] instances of refusal to comply with discovery. The medical cabin is clearly shown at the end of the main parking lot, nearest the red maintenance barn, with a footpath to the Hartley Dodge Dining Lodge along the shore of Frenchie's Pond at Camp Allamuchy on | The Debtors do not possess information sufficient to admit or deny this request. Mr. Schwindler relies on images from Google Maps and Mapcarta to support his assertion about the location of the medical camp at Camp Mount Allamuchy. The Debtors take no position on the accuracy of the images cited by Mr. Schwindler. Even taken as accurate, modern-day map images are not sufficient evidence for the Debtors to admit or deny where a medical camp at Camp Mount Allamuchy was located in 1960 and 1961. |

| | the Debtors to admit or deny this request. | either mapcarta or google maps, and both are linked to the Patriot's Path website. Is it possible that Patriot's Path doesn't know the location of its medical cabin at its primary camp? Or is it more possible that Patriot's Path is contemptuous of the discovery process? | |
|---|---|---|---|
| 14. The Morris-Sussex Area Council, BSA had in its employ an individual named Randy [or Randolph, or Randall] Gray [or Grey] as a District Executive for the Morristown District during all or part of calendar years 1960 and 1961. | The Debtors state that, after a reasonable inquiry, the Morris-Sussex Area Council, BSA employed a Mr. Brandon Gray as a District Executive at the time of his termination in 1963. The information known or readily obtainable is insufficient to enable the Debtors to admit or deny that Mr. Brandon Gray was employed by the Morris-Sussex Area Council during 1960 and 1961. | The Debtors ADMIT that the Morris-Sussex Area Council, BSA employed Schwindler's abuser as a District Executive, but they report they are unable to verify whether he was employed during 1960 and 1961, while claiming that he was terminated in 1963. Patriot's Path however, claims to know nothing about this employee. There are several points here which require follow-up discovery. From Debtor's: What is the documentary source of this information? Is it possible that Gray was relieved of his duties in 1961, but not legally terminated until 1963? Is there an investigative file associated with Gray's termination? If | The Debtors do not have records or information sufficient to show that Mr. Gray was relieved of his scouting duties in 1961. Upon further review of the information available to the BSA, the Debtors admit that Mr. Gray was employed as a District Executive in Morristown, New Jersey during at least part of 1961. The Debtors maintain that the information known or readily obtainable after conducting a reasonable inquiry is insufficient to enable the Debtors to admit or deny that Mr. Brandon Gray was employed specifically by the Morris-Sussex Area Council during 1960 and 1961. The Debtors will not produce any further documents with respect to this request. The documents that Mr. Schwindler requests are |

| | | there is documentary support for this response, why has that material not been produced? From Patriot's Path: How is it possible that the BSA National Council knows about the employment and termination of Gray, but the local council has never heard of him? | irrelevant to his plan objection or confirmation and instead relate directly to his specific claim. Mr. Schwindler will have the opportunity to substantiate his claim in accordance with the Trust Distribution Procedures. |
|---|---|---|---|
| 15. The BSA had commissioned Mr. Gray [or Grey] as a professional scouter at some time prior to his employment by the Morris-Sussex Area Council, BSA. | The Debtors state that, after a reasonable inquiry, Mr. Brandon Gray was employed as a Local Council employee from 1955 to 1963, including his employment by the Morris-Sussex Area Council at the time of his termination in 1963. | The Debtors ADMIT that Gray was a professional scouter [Local Council employee] from 1955 until his termination in 1963. They ignore the request to admit that Gray was commissioned as a professional scouter by the BSA. The likely explanation for this failure is the fact that such an admission implicates liability for the BSA concerning Gray's sexual abuse of Schwindler [and probably others] while serving as a commissioned scouter. As with the follow-up discovery necessitated by response number 14, Schwinder believes Debtor has documentary evidence in its possession which provides a more complete picture of Gray's career as a professional scouter | The Debtors have admitted that Mr. Gray was employed as a Local Council employee from 1955 to 1963, including his employment by the Morris-Sussex Area Council at the time of his termination in 1963. Mr. Schwindler's allegations regarding the Debtors responses are unfounded. The Debtors responded based on the information available to them after reasonable inquiry into the Debtors' records. The documents that Mr. Schwindler requests are irrelevant to his plan objection or confirmation and instead relate directly to his specific claim. Mr. Schwindler will have the opportunity to substantiate his claim in accordance with the Trust Distribution Procedures. |

| | | which should have been provided in response to this request. Schwindler also believes that it is unlikely that Patriot's Path doesn't also possess discoverable documentary evidence related to Gray. | |
|---|---|---|---|
| 16. Robert Montgomery was the professional scout executive for the Morris-Sussex Area Council, BSA during calendar years 1960 and 1961. | The Debtors object to this request on the grounds that the Debtors do not have sufficient knowledge or information to enable them to admit or deny the request. The Debtors further object to this request to the extent it seeks disclosure of information not in the possession, custody or control of the Debtors, but rather in the possession, custody or control of Patriots' Path. Subject to the foregoing General and Specific Objections, the Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request. | The BSA says Patriot's Path has the information. Patriot's Path says it has no records responsive to the request. Both responses cannot be truthful. Debtors have admitted the employment of Gray [numbers 14 and 15], but claim to have no records about the professional scouter who hired, supervised and terminated Gray. There are only two possible explanations - the BSA is not being truthful, or Gray's records were kept because the BSA knew he was a child sexual abuse predator. If it is the latter, the BSA deliberately kept the information secret, and would have never admitted anything if the Court had not ordered Debtors to answer Schwindler's specific discovery requests. As discussed at Reply 23 below, | The Debtors do not have records relating to Robert Montgomery. If the Debtors had such records, that information would have been provided in the Debtors' responses, like Request Nos. 14 and 15. The Debtors deny any allegations of sexual abuse cover-ups or that they are now being untruthful. |

| | | | |
|---|---|---|---|
| | | there is almost no possibility that Montgomery's name is not included in the documentation related to Gray. As for Patriot's Path, it is inconceivable that it has no records related to the council's Chief Executive Officers. | |
| 17. Mr. Gray [or Grey] had been employed by a Local Council of the BSA located in the State of New York prior to his employment by the Morris-Sussex Area Council, BSA. [Please provide the name of that council or councils]. | The Debtors object to this request on the grounds that the Debtors do not have sufficient knowledge or information to enable them to admit or deny the request. Subject to the foregoing General and Specific Objections, the Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request. | Debtors admit that the BSA commissioned Gray as a professional scouter in 1955, that he was employed during part of his career by the Morris-Sussex Area Council, BSA, until his termination in "1963," as well as that the BSA was the sole authority for commissioning professional scouters, but claim to have no information concering which local councils he was employed by, or even precisely when he was employed by those local councils. Several follow-up questions to Debtors are in order, specifically "what records related to Gray are maintained by the BSA, and why have these records not been produced in response to Schwindler's discovery requests which specified that documents | As stated in their response to Request No. 15, the Debtors have admitted that Mr. Brandon Gray was employed as a Local Council employee from 1955 to 1963, including his employment by the Morris-Sussex Area Council at the time of his termination in 1963. Upon further review of the information available to the BSA, the Debtors admit that Mr. Gray was employed as a District Executive in Niagara Falls, New York at some point in 1958. The Debtors do not have information sufficient to admit or deny which specific Local Council employed Mr. Gray prior to the Morris-Sussex Council, BSA. Regardless, the documents that Mr. Schwindler requests are irrelevant to his plan objection or confirmation and instead relate directly to his specific claim. Mr. Schwindler will have |

| | | necessary to fully respond should be produced?" | the opportunity to substantiate his claim in accordance with the Trust Distribution Procedures. |
|---|---|---|---|
| 18. Mr. Gray [or Grey] was the second most senior professional scouter employee of the Morris-Sussex Area Council, BSA, and was assigned as the Camp Director for Mount Allamuchy Boy Scout Camp located in Stanhope, Sussex County, New Jersey during all or parts of calendar years 1960 and 1961. | The Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request. | The BSA clearly has some records related to Gray. The Debtors need to specify what those records are, and provide a copy to Schwindler. Patriot's Path's response is frivolous. | The documents that Mr. Schwindler requests are irrelevant to his plan objection or confirmation and instead relate directly to his specific claim. Mr. Schwindler will have the opportunity to substantiate his claim in accordance with the Trust Distribution Procedures. The Debtors do not have information sufficient to admit or deny this request. |
| 21. The Debtors object to this request on the grounds that the Debtors do not have sufficient knowledge or information to enable them to admit or deny the request. Subject to the foregoing General and Specific | Individuals who served as commissioned professional scouters in 1960 and 1961 received their training from the BSA at its National Training School located at the Mortimer L. Schiff Scout Reservation in Mendham Township, Morris County, New Jersey. | Schwindler submits that these replies are frivolous because both the BSA and Patriot's Path are well aware of the fact that the Mortimer L. Schiff Scout Reservation was the site of the BSA National Training Center from 1932 until 1979. Quoting from Wikipedia:[15]<br><br>"The original reservation comprised 400 acres (1.6 km2) near Mendham, | The Debtors do not have records sufficient to admit or deny that all professional scouters in 1960 and 1961 received their training at Mortimer L. Schiff Scout Reservation. Although not directly responsive to the request, the Debtors acknowledge that the Mortimer L. Schiff Scout Reservation has been used for training professionals. |

| | | | |
|---|---|---|---|
| Objections, the Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request. | | New Jersey and was in operation from 1932-1979. It was formally dedicated on October 18, 1933. The land was purchased for the BSA by Mrs. Jacob Schiff in memory of her son, Mortimer, who died while President of the BSA in 1931. During this time it served as the BSA's National Training Center." There is no possible way that the BSA has forgotten where it trained 100% of its leaders [both professional and volunteer - including "junior leaders"] throughout the majority of its history, and Patriot's Path cannot possibly not know that the Schiff property is less than 15 miles from its headquarters, especially since scouts from the council still camp on the grounds. | |
| 25. Individuals who served as camp directors at Boy Scout camps belonging to local councils in 1960 and 1961 received their training and certification from the | The Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request. | These responses are frivolous and unresponsive. The BSA and Patriot's Path know very well where the BSA conducted 100% of its Leadership Training Programs in 1960 and 1961. | Mr. Schwindler argues that "[t]he BSA and Patriot's (sic) Path know very well where the BSA conducted 100% of its Leadership Training Programs in 1960 and 1961." Mr. Schwindler offers no basis for this assertion, and his belief alone does not make it true. The Debtors maintain their response that the |

| | | | |
|---|---|---|---|
| BSA at its National Camp Leadership Training School located at the Mortimer L. Schiff Scout Reservation in Mendham Township, Morris County, New Jersey. | | | information known to the Debtors, after reasonable inquiry, is insufficient to enable the Debtors to admit that all individuals who served as camp directors at Boy Scout Local Council camps in 1960 and 1961 received their training and certification at the Mortimer L. Schiff Scout Reservation. |
| 27. The Morris-Sussex Area Council, BSA maintained liability insurance covering the actions of its professional scouters [employees] during calendar years 1960 and 1961 which was separate from insurance covering liability for volunteers. [Please provide the name of the insurer and policy number, as well as limits of coverage both aggregate and per occurrence]. | Denied. | Patriot's Path's response is frivolous and unresponsive. Debtor's response is challenged as untruthful. Throughout their responses to Schwindler's discovery, Debtors have honestly admitted that they do not have possess records which would be properly in the possession of Patriot's Path, but they suddenly insist without any support or explanation that they know that insurance policies which Schwindler had personal knowledge of at the time never existed. The reason Schwindler had personal knowledge of the existance of these separate insurance policies covering professional scouters employed by the council is that his father was an executive with the insurance services company, the | To the best of the Debtors' knowledge and after reasonable inquiry, Morris-Sussex Area Council did not have any policies or secondary evidence reflecting that it carried insurance until 1975. |

| | | Hooper-Holmes Bureau, which provided the field inspection services related to these policies, and the existance of these policies was one of the reasons Schwindler's father permitted him to be alone with Gray and other of the professional scouters to begin with. | |
|---|---|---|---|
| 28. The Morris-Sussex Area Council, BSA maintained general liability insurance covering the programs and activities of scouting during calendar years 1960 and 1961 which was separate from coverage maintained by the BSA nationally. [Please provide the name of the insurer and policy number, as well as limits of coverage both aggregate and per occurrence]. | Denied. | Schwindler makes the same reply to these responses as to number 27, and adds that between 1965 and 1967, Schwindler was the individual who personally handled filling out the required insurance forms and authorizations for treatment for scouts and employees who suffered injuries at Allamuchy in his capacity as Camp Commissioner. He was the individual who drove these scouts and employees to the local hospital, and who handled all arragements while at the hospital. Because Schwindler used his personal vehicle for these trips, the local council required that his personal insurance had to specifically | Same response as Request No. 27. |

cover the occupants of the vehicle, and the local council's policies were not to cover any injuries while in his vehicle except if such injuries occurred at Allamuchy - where his vehicle was used for delivering scouts and equipment throughout the camp. Moreover, Schwindler was directly involved with local council insurance coverage following the death of an adult volunteer during a canoe trip supervised by a junior member of staff who worked for Schwindler. It should be noted that the Watchung Area Council which was merged with the Morris-Sussex Area Council in 1999 is reported by Debtors as having maintained its own policies in addition to those maintained by the BSA, and there is no reason to assume, as Debtors clearly are, that the Morris-Sussex Area Council, with far greater assets and potential liabilities, did not follow the same practice. [Which Schwindler knows for a fact they did, and that they did throughout this period. As noted above, Schwindler's father was

| | | personally and professionally interested in which entity carried insurance, and for whom, from the day Schwindler entered scouting with Troop 32. While most 13-year-olds have no interest in such topics, Schwindler was unable to avoid his father's interest. Before Schwindler was permitted to work on Troop 32's camp trailer or Allamuchy's pick-up trucks, Schwindler's father always made him verify insurance coverage first.] | |
|---|---|---|---|
| 29. The Morris-Sussex Area Council, BSA and its insurers settled a major claim related to an injury incurred by a scout in which the scout suffered extensive injuries when a member of the Camp Allamuchy staff attempted to remove a bowie knife which the scout had in a sheath in his back pocket, and in doing | The Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request. | Schwindler submits that neither Debtors nor Patriot's Path are being forthright in their responses. As stated during the March 4, 2021 hearing, Schwindler was a witness to this incident, and was required to provide evidence for the insurance company prior to the settlement. The incident caused the Morris-Sussex Area Council, BSA to institute a policy [at the insistance of its insurer] prohibiting scouts from using or possessing sheath knives during scouting activities associated with the council. If | The Debtors do not possess information sufficient to admit or deny this request. |

| | | | |
|---|---|---|---|
| so severely cut the wrist of the scout in calendar year 1960 or 1961. [Please provide the name of the insurer and policy number, as well as the [settlement] paid]. | | Debtors' national insurers have no record of this incident, and Debtors have no record of the incident, then the only possibility is that Debtor's denial at number 28 cannot be truthful, because the incident did occur, Schwindler did have to provide evidence, a large settlement was made because the victim suffered extensive permanent injuries, and the local council did establish its rule prohibiting sheath knives. | |
| 30. The Morris-Sussex Area Council, BSA conducted camporees and Order of the Arrow functions at the Mortimer L. Schiff Scout Reservation during calendar years 1960 and 1961. | The Debtors object to this request on the grounds that the Debtors do not have sufficient knowledge or information to enable them to admit or deny the request. Subject to the foregoing General and Specific Objections, the Debtors state that, after a reasonable inquiry, the information known or readily obtainable is insufficient to enable the Debtors to admit or deny this request. | Schwindler submits that Debtors or Patriot's Path are both being disingenuous in their responses to this request. The BSA surely knows who used the facilities at its own National Training Center, and Patriot's Path certainly knows that it used those facilities for well over 50 years because the facilities at Schiff were more conveniently located than those at Allamuchy, and they were ideal for conferences and training purposes. | The Debtors do not possess information sufficient to admit or deny that the Morris-Sussex Council, BSA conducted camporees and Order of the Arrow functions specifically at the Mortimer L. Schiff Scout Reservation in 1960 and 1961. |