## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:

**BOY SCOUTS OF AMERICA AND DELAWARE BSA LLC,**

**DEBTORS.**

MOTION TO DISQUALIFY WHITE & CASE LLP, AS COUNSEL FOR THE BOY SCOUTS OF AMERICA AND DELAWARE BSA LLC. ORDER TO INCLUDE: FREEZE ALL ADMINISTRATIVE WHITE & CASE PREDATORY, DECEPTIVE BAD FAITH PRACTICED, FRAUD, BREACH, WILLFUL MISCONDUCT ETC., EXCESSIVE ESTATE CASE MANAGMENT BILLINGS & PAYMENTS. PRAYER & DEMAND FOR FEDERAL WRITS ISSUED FOR AN ESTIMATED $103B BSA ABUSE CLASS CREDITOR/CLAIMANT DAMAGES, RELIEF & EXECUTION OF SAID WRITS BY U.S. FEDERAL MARSHALS. MAKING CREDITOR/CLAIMANTS WHOLE.

Chapter 11

Case No. 20-10343 (LSS)
(Jointly Administered)

Re: 9553, 9525, 9526, 8885, 8884
8872, 8658, 8657

Public Domain Exhibits To Speak For Themselves. As We Examine And Investigate. The Moral And Ethical Falsework Of The Glen Kurtz Doctrine Of: "This Is Not How It Is Done."

**MOTION TO DISQUALIFY WHITE & CASE LLP AND DEREK ABBOTT OF MORRIS NICHOLS, AND RELATED ASSOCIATES, FOR THE BOY SCOUTS OF AMERICA. PRO-SE CLAIMANT/CREDITOR NUMBERS SA-███ & SA-███ MOTION TO DISMISS THE CHAPTER 11 BANKRUPTCY**

he Debtors in these Chapter 11 Cases, together with the last four digits of the Debtors' respective federal tax identification numbers, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038

Capitalized Terms and otherwise defined herein shall have the meanings given to them.

## **EXHIBITS**

**AUTHORITY**

**EXHIBIT - 1**   **OVERVIEW**

**EXHIBIT - 2**   **HISTORY**

**EXHIBIT - 3**   **PRO-SE CREDITOR/CLAIMANT SUSPECTED FELONIES D.O.J. REPORTING**

**EXHIBIT - 4**   **WHITE & CASE REPORTED FRAUD, ALLEGED FELONY ACTIVITY, ETHICAL MISDEEDS, LACK OF 20-10343 (LSS) CASE BSA SURVIVOR PROTECTIONS, FAILURES TO DISCLOSE INVESTIGATIONS, WILLFUL MISCONDUCT, GROSS NEGLIGENCE, PROFESSIONAL RULES AND CONDUCT VIOLATIONS**

**EXHIBITS - (5 THRU 20 ETC.) (TO FOLLOW DUE TO DELAWARE FEDERAL COURT PAGE RESTRICTIONS)**

# Relevant Statutes

Bankruptcy fraud is most commonly prosecuted under Sections 152 and 157 of Title 18 of the United States Code.[1] Each imposes a maximum statutory sentence of five years.

**18 U.S. Code § 152. Concealment of assets; false oaths and claims; bribery**[2]: In nine subparts,[3] Section 152 broadly criminalizes various actions prior to[4] and during bankruptcy proceedings, including knowingly and fraudulently[5] concealing assets, making false statements, and withholding information from the bankruptcy trustee.[6] Paragraph 7 of Section 152 specifically covers transfers or concealment by an "agent or officer" of a corporation in or contemplating bankruptcy.

**18 U.S. Code § 157. Bankruptcy fraud**[7]: Section 157 criminalizes utilization of bankruptcy proceedings to further a broader fraudulent scheme.[8]

**18 U.S. Code §§ 153 to 156**[9]: Sections 153 through 156 criminalize other less commonly prosecuted offenses—including embezzlement of bankruptcy estate assets, agreements to fix fees or compensation, and knowing disregard of bankruptcy rules and procedures.

**18 U.S. Code § 1519. Destruction, alteration, or falsification of records in Federal investigations and bankruptcy**[10]: Section 1519 imposes higher penalties—up to twenty years' imprisonment—for the destruction, alteration, or falsification of records to interfere with an investigation or bankruptcy proceeding.

**18 U.S. Code § 3057. Bankruptcy investigations**[11]: Section 3057 imposes mandatory reporting requirements on judges, receivers, and trustees who reasonably believe a legal violation has occurred, requiring that they report the possible violation to the U.S. Attorney's office.

"We can't tell you how to vote, but we can frankly tell you this plan sucks," Doug Kennedy, vice chair of the court-appointed tort claimants committee that represents abuse survivors in the bankruptcy, said at a virtual town hall Oct. 7. "That's not the legal term. That's the survivor term — it sucks."

# EXHIBIT

# 1

# Boy Scouts Victims Committee Says Claims Worth $103 Billion...
## The official committee representing child sex-abuse victims in the Boy Scouts of America bankruptcy is seeking permission to file its own reorganization plan.

By Associated Press
|
April 5, 2021, at 4:34 p.m.

By RANDALL CHASE, Associated Press

DOVER, Del. (AP) — The official committee representing child sex abuse victims in the Boy Scouts of America bankruptcy is asking a judge for permission to file its own reorganization plan, saying the plan proposed by the BSA falls woefully short of fairly compensating abuse victims while shielding local Boy Scouts councils and sponsoring organizations from liability.

The official tort claimants committee filed a motion late last week objecting to the BSA's request for the court to extend the period in which the Boy Scouts have exclusive rights to file and solicit votes on a reorganization plan.

The BSA's plan proposes a $300 million contribution by local councils to a fund for victims, about $115 million in cash and noninsurance assets from the BSA, and the assignment of BSA and local council insurance policies. In return, the 253 local councils and thousands of sponsoring organizations would be released from further liability.

The committee noted in its court filing that it had made a settlement offer to the Boy Scouts estimating the value of the roughly 84,000 sexual abuse claims filed in the bankruptcy at about $103 billion, adding that those estimates were "extremely conservative."

The committee noted that its estimate counts each claim as a single act of abuse, even though a substantial number of victims were abused repeatedly and in different ways over several years. The committee also noted that its average claim value of $811,215 is less than the average of $1.2 million per claim that the University of Southern California agreed to pay last month in an $852 million settlement with more than 700 women who accused the college's longtime campus gynecologist of sexual abuse.

The committee's objection to the BSA's exclusivity motion coincided with the final day of a three-day mediation session in which attorneys for the Boy Scouts sought to gain support for their plan from creditors, insurers and other parties.

The mediation session followed Judge Laurie Selber Silverstein's rejection of the BSA's request for an April 15 hearing to approve the disclosure statement outlining its reorganization plan. Silverstein, who instead will hold a status conference next Monday, expressed frustration about the lack of progress in the case and said BSA attorneys had not provided "some very necessary information and documents" for a disclosure hearing.

Attorneys for the victims committee also have expressed frustration about the lack of details in BSA's plan, which has been roundly criticized by attorneys representing abuse victims.

Committee attorneys said they should be permitted to file a plan that allows the debtors to reorganize "without

# Tort Claimants' Committee for Boy Scouts of America Bankruptcy Rejects Proposed Settlements

NEWS PROVIDED BY
**Pachulski Stang Ziehl & Jones →**
Dec 15, 2021, 14:44 ET

LOS ANGELES, Dec. 15, 2021 /PRNewswire/ -- On December 14, 2021, the Official Tort Claimants' Committee (TCC) in the chapter 11 bankruptcy of the Boy Scouts of America (BSA) announced that it does not support the BSA's proposed $800 million settlement with Century and Chubb insurance companies and other previously announced settlements with The Hartford Insurance Company ($787 million) and The Church of Jesus Christ of Latter-day Saints ($250 million). The TCC, represented by Pachulski Stang Ziehl & Jones LLP (PSZJ), views the settlement as grossly unfair to the 82,500 survivors who were sexually abused as children. The TCC was appointed by the Office of the United States Trustee as the official representative for all survivors of childhood sexual abuse and it will not support settlements that do not deliver the justice survivors deserve.

The TCC calls attention to major flaws contained in the proposed settlement. Century and Chubb are not paying reasonable compensation for the broad releases of the sexual abuse claims. Taken together, all of the settlements announced by the Boy Scouts yield an average of approximately $28,000 for filed child sex abuse claims. The average will be further reduced by the approximately $5 billion in estimated "future claims" asserted by the Future Claims Representative. In comparison, survivors under the recently confirmed plan for USA Gymnastics will receive an average of approximately $800,000. The TCC maintains that Century and Chubb are being handed a "get-out-of-jail card" in exchange for an unreasonably low sum.

 ∝⁰

"The Boy Scouts touts this settlement and the settlements with The Hartford and The Church of Jesus Christ of Latter-day Saints as 'historically high.' When considered from the perspective of the individual abuse survivor, these are "historically low' and the USA Gymnastics settlement underscores how pathetically low these amounts actually are," said Doug Kennedy, Co-Chair of the TCC. Dr. Kennedy added, "I cannot in good conscience support the release of a major insurance company for cents on the dollar."

The TCC originally supported a restructuring settlement agreement for a consensual plan because the BSA and the "Coalition of Abused Scouts for Justice" ("the Coalition") confirmed that the primary value for survivors would be recovered through the billions of dollars in available insurance coverage. However, over the past several months, the BSA and the Coalition have changed their course and are now seeking a quick exit from the bankruptcy case by entering into settlements, most recently with Century and Chubb, that fail to capture the billions of dollars owed to the sexual abuse survivors.

"In a case involving horrific abuse of children, average payments of approximately $28,000 do not begin to justly compensate survivors," said Richard Pachulski of PSZJ. "The Tort Claimants' Committee will oppose the Century and Chubb settlements and any other settlements that fail to compensate survivors fairly," Pachulski added.

More information on the restructuring can be found at www.tccbsa.com

SOURCE Pachulski Stang Ziehl & Jones

# WHEN DID BETRAYAL BECOME PART OF THE BOY SCOUTS OF AMERICA'S "MASS TORT" CONFIRMATION PLAN?

*Merriam-Webster Dictionary*

*10 Apr. 2022*

*BETRAYAL*

*Noun*

*be· tray· al | \ bi-ˈtrā(-ə)l , bē- \*

*plural betrayals*

*Definition of betrayal:*

*The act of betraying someone or something or the fact of being betrayed : violation of a person's trust or confidence, of a moral standard, etc.*

*The betrayal of a friend*

*The betrayal of trust*

*The betrayal of one's principles*

*A man who built his entire administration upon demanding unctuous loyalty from his allies now finds himself wounded by their shabby betrayal.— Jack Hitt*

*The double life of an informant is a peculiar one, filled at the same time with tedium and betrayal.— Karen Richardson*

*Even Jesus recognized that there was something paradoxical about his betrayal by Judas Iscariot—in three of the four canonical Gospels, with a kiss.— David Gates*

UNDER-FIRE BY WHITE & CASE AND MORRIS NICHOLS. HOW CHEAPLY "
THE COMPROMISED TCC COUNSEL & TCC-9 LEADERSHIP SOLDOUT OVER
82,000 LIVES. WE HAVE SEEN THIS THROUGHOUT WORLD HISTORY. MEN
AND WOMAN WHO WILL BETRAY TENS OF THOUSANDS TO SAVE
THEMSELVES.

IT IS (NEVER) EASY TO OVERCOME VICTIM LEADERSHIP, WHO CAVE
UNDER-PRESSURE. BUT ALAS IN THIS MOMENT, IN AMERICAN HISTORY.
WE MUST REGROUP, STATE OUR CASE AND PROCEED WITHOUT THE
WEAK AMONG US. THIS IS A MATTER OF PRINCIPAL, AND THE ONLY WAY
THAT AN APOLOGY CAN BE MEANINGFULLY REALIZED.

IS BY PAYING A SIZABLE SETTLEMENT, TO REBUILD LIVES IN THIS LATE
STAGE OF OUR LIVES. APOLOGY LETTERS FROM PAST BSA PRESIDENTS &
CEO'S WILL (NOT) PAY FOR  MEDICAL BILL, INSURANCE, LIVING EXPENSE,
OR PROVIDE RETIREMENT RELIEF. THE DAMAGE HAS BEEN DONE.

THESE CHILDHOOD INJURIES HAVE HIT THEIR MARKS, AND MANY TIMES
PRE-VAILED WITHOUT MERCY.

THE COURTS MUST NOW MAKE THIS RIGHT. REGARDLESS, OF HOW
CLEVER...WHITE & CASE AND MORRIS NICHOLS HAVE TRIED TO BE. WE
ARE MORE CONVICED BY THE LIVING, DYING, AND DEAD. THAT TELL THIS
TRAGIC TALE OF BROKEN LIVES...AND HUMAN SUFFERING WOE.

EXECUTION VERSION

IN WITNESS WHEREOF, the Parties have duly executed this Term Sheet as of the last date indicated below.

The Official Committee of Tort Claimants          BSA (as defined)

By: _John P Humphrey Jr_          By: _____

Name: John P Humphrey Jr          Name: _____

Title: Co-Chairman, TCC          Title: _____

Date: 2/9/22          Date: _____

**IS THE BOY SCOUTS OF AMERICA TRULY BANKRUPT, OR EVEN REMOTELY INSOLVENT?**

**NO!**

**NOT EVEN CLOSE. HOW MANY ORGANIZATIONS CAN ASK YOU TO DONATE UPTO $22,800,000 WITH SUCH EASE AND A SENSE OF "REAL ENTITLEMENT?"**

*A married couple has two children and four grandchildren. The couple can transfer a total of $180,000 a year to their children and grandchildren ($15,000 from husband + $15,000 from wife x 6), tax free. These gifts may be outright or in trust, and can be done every year.*

If your annual gifts exceed the annual exclusion, you have two options: 1) pay the gift tax on the excess gift over the annual gift tax exclusion, or 2) avoid the gift tax by using part of your lifetime exemption.

The annual gift tax exclusion is often an excellent way to transfer assets from one generation to another, without having to wait for your estate to do it for you.

## Lifetime Exemption

In addition, if you make gifts above the annual exclusion amount, you can also tap into your lifetime exemption. As of the 2019 tax law changes, the lifetime estate and gift exemption effectively shelters from tax the transfer of up **$11,400,000**, per person, either during life or at death.

The increased lifetime exemption presents some great opportunities for families. It means:

- A couple will likely not owe any transfer taxes, or estate taxes, regardless of who they give it to, or when, if their estate is less than $22,800,000.

- Statistically, about 99% of all estates no longer owe estate tax, because the exclusion amount exceeds the value of the estates.

- Setting up trusts for family members just to save taxes may no longer be needed. There are other good reasons to set up trusts, e.g. controlling funds for minors, special needs family members, education, etc. But saving taxes may no longer be one of them.

- It greatly increases how much you leave to family and to Scouting for the purposes you love and support, tax free.



## Presidents Leadership Council




Members of our Presidents Leadership Council receive the highest levels of personal recognition and access opportunities. These donors have made gifts of $1,000,000 or more to or through the BSA Foundation, within a five-year period, either outright or part of an advised fund or other Foundation gift structure. Even though the gifts are made to the Foundation, donors may designate the gift to benefit any council, high-adventure base, or Scouting entity of their choice.





UESTIONS? SCOUTING ANSWERS.    LINK TO TABLE OF CONTENTS    10

Boy Scouts of America Foundation | <u>GIFT ANNUITY TRANSFER INSTRUCTIONS</u>

**CASH** – Make checks payable to ***Boy Scouts of America Gift Annuity Fund***

Checks <u>Mailed</u> To:          Ms. Patricia Bourque, Charitable Asset Mgmt.
                                        State Street Global Advisors
                                        One Iron Street, 6th Floor
                                        Boston, Massachusetts  02210

Cash <u>Wired</u> To:            State Street Bank and Trust Company, Boston, MA
                                        ABA Routing # 011-000-028
                                        To A/C # 5673 – 032 -8 (recon. clearance)
                                        For A/C # 52-011265
                                        Account Name: BSA *Gift Annuity Fund*

**California Gift Annuities** should use the above information and the account name and number below:
                                        A/C # 52-011388    Account Name: BSA *California Gift Annuity Fund*

**STOCKS – WIRE TRANSFER (DTC ELIGIBLE)**

                                        DTC Participant #987
                                        State Street Corporation
                                        Charitable Asset Management
                                        FFC: BJ50
                                        A/C # 52-011265
                                        Account Name: BSA *Gift Annuity Fund*
**California Gift Annuities** should use the above information and the account name and number below:
                                        For A/C # 52-011388     Account Name: BSA *California Gift Annuity Fund*

   For transfers of mutual funds, contact the BSA Foundation in advance.

**STOCKS – PHYSICAL FORM SECURITIES (MAILING: USPS OR FED EX)**

                                        Ms. Patricia Bourque, Charitable Asset Mgmt.
                                        State Street Global Advisors
                                        One Iron Street, 6th Floor
                                        Boston, Massachusetts  02210
                                        *Attention: BSA Gift Annuity Fund*

   Send unsigned certificates, and signed stock powers, in <u>separate envelopes</u>.

FEDERAL RESERVE SECURITIES – WIRE TRANSFER

                                        STATE ST BOS/SPEC/**BJ50**/acct. # 52-011265
                                        Account Name: *Boy Scouts of America Gift Annuity Fund*
                                        ABA Routing # 011000028 (Free Delivery)

For questions, please contact Colin V. French at the BSA Foundation
(<u>colin.french@scouting.org</u>) or 972.580.2219.



BOY SCOUTS
OF AMERICA
NATIONAL FOUNDATION

Information on investment performance and portfolio mix is available from the Foundation upon request. Funds may, at the discretion of the Foundation, be commingled with the Foundation's other assets for investment purposes. Funds may be listed in the annual report of the Foundation, but may be listed anonymously upon request of the donor.

## Final Distributions

A donor may state a preference for the final distribution of the Fund when the advisory period ends. As with all distributions, the Foundation gives great weight to the donor's advice; it makes every effort to honor that request. If no final designation is made, or if no advice given as to the termination of the Fund, the Foundation may distribute the balance of the Fund at its sole discretion. When the final distribution from a named Fund is made, the Fund will be closed.

## Sample Documents and Additional Information

For more information, sample documents, or questions as to funding, distributions, advisory options, or other matters, please contact the BSA National Foundation.

BSA NATIONAL FOUNDATION
1325 W. Walnut Hill Lane
Irving, Texas 75038
972. 580. 2050

www.bsafoundation.org
colin.french@scouting.org

the fund donors, within a reasonable time and with notice, choose to add to the fund to keep it above the $10,000 threshold.  Under certain circumstances, discussed with the Foundation in advance, the advisory period may last longer than this.

## Grant Recipients

Most advised fund distributions go to BSA local councils. However, other Scouting entities, programs, or initiatives of national or international character are often requested as well – High Adventure bases, the Summit, NESA/Order of the Arrow, etc.  These may be unrestricted or designated as for a specific need, program, etc.

Charitable organizations not affiliated with Scouting are also eligible for fund distributions.  Any non-BSA organization that receives a distribution from a named Fund must be: (1) recognized as tax-exempt under IRC Section 501(c)(3); and (2) have a mission or charitable purpose similar to, or compatible with, the values, principles, and tenets of the Boy Scouts of America.  Examples of non-BSA recipients typically include numerous universities, health charities, other youth charities, and wounded veteran organizations, just to name a few.

Regardless of who the recipient is, because of IRS restrictions, distributions may not be used to satisfy a previously committed, legally enforceable obligation of the donor (such as a campaign pledge). Similarly, distributions may not go directly to a Scout pack, troop, crew, or other Scout unit (but they may be distributed to a local council and earmarked for a specific pack, troop, etc.).

## Administration of Fund

The Foundation provides all fund administration. This includes (but is not limited to) gift acknowledgement, receipts, regular fund statements, sending checks to charitable beneficiaries, and confirming distribution requests.

Management and oversight of Foundation investments are provided by an outstanding mix of financial professionals and Scout volunteers through the BSA Finance and Investment Committee, the BSA Treasury Division, and the Foundation Advisory Committee.  State Street Global Advisors provides the fund management and distribution of funds. As with other funds, trusts, and assets of the Foundation, approximately .37 percent of the principal (37 basis points) in fees are assessed against each fund to cover State Street's administration, and an additional .75 percent (75 basis points), to cover more general expenses and fundraising costs incurred by the Foundation.

3.

 BOY SCOUTS OF AMERICA
NATIONAL FOUNDATION

## GIFT TRANSFER INSTRUCTIONS

Boy Scouts of America National Foundation | **Federal Tax ID: 75-2675978**

### ELECTRONIC TRANSFERS OF STOCK (BROKER-TO-BROKER)

For direct, electronic transfers of <u>stock</u>, please have the broker transfer stock to:

> **Account Name: Boy Scouts of America**
> **DTC Clearing: # 8862**
> **Merrill Lynch Account: # 425-02802**
>
> For <u>Mutual Funds</u> the BIN number is 5300000296

> If you are making a transfer from a **Schwab account**, you may choose to use:
> Schwab Account Name:  Boy Scouts of America    *Schwab Acct. #7255 8792*

When using electronic transfers, *please* fax or email the information/form below.  Due to privacy laws, it is **NOT** always apparent who is donating the stock. The information below will make sure it is properly credited.   **Fax:** BSA Cash Management, **972.580.2108,** or email **tim.pierce@scouting.org.**

| **Stock Name, Security Symbol** | **Number of Shares** | **Transfer Date** |
| --- | --- | --- |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

Total Value of Gift (approx.): $ _____

Donor Name: _____

Donor Address: _____

City/State/Zip: _____

Donor Phone/Email: _____

If there is a specific designation or purpose of the donation, please indicate below:

_____

_____    _____
*Donor Signature*                                                      *Date Signed*

*Continue for different types of gift transfers*

December 2021

 **BOY SCOUTS OF AMERICA**
NATIONAL FOUNDATION

## GIFTS USING CREDIT CARDS

Please complete the following information. The donor will need to sign and date the credit card authorization – when completed, please send via secure fax to Patty Bowman: FAX 972-580-7870. You may also phone her with the information: **972-580-2219**. Note that credit card gifts will incur a 3% processing fee from the credit card company.

Donor Name: _____

Donor Address: _____

City/State/Zip: _____

Phone or Email: _____

**This gift is intended for the following purpose or fund at the BSA Foundation:**

_____

*Credit Card (check one):* ___ *MasterCard*     ___ *VISA*     ____ *American Express*     ____ *Discover*

Credit Card #: _____     Expiration Date: _____

**Donor Signature:** _____     **Date:** _____

December 2021


BOY SCOUTS OF AMERICA
NATIONAL FOUNDATION

### MAILING OF STOCK CERTIFICATES AND/OR CHECKS

Checks, money orders, and stock certificates should be sent to:

> *Tim Pierce, Cash Management, S401*
> *Boy Scouts of America National Foundation*
> *1325 West Walnut Hill Lane*
> *Irving, Texas  75015-2079*

If you are sending actual stock certificates, we suggest sending unsigned stock certificates **and** properly signed stock powers in separate envelopes.  Please include in the mailing a description as to the use/purpose of the funds (e.g., "to establish my new Donor Advised Fund.")

### ELECTRONIC TRANSFER OF CASH/SALES PROCEEDS FROM STOCK

Electronic transfers of cash or sales proceeds from stock sold by your broker, should go to:

> JP Morgan Chase – New York, NY
> Credit: Boy Scouts of America
> **ABA # 021000021**
> **Acct # 118687968**

When using electronic transfers, please fax or email a notice to Cash Management (email below), describing the transfer amount, the purpose for the funds, and the expected transfer date.
**Fax: BSA Cash Management, 972.580.2108, or email  tim.pierce@scouting.org.**

### GIFT TRANSFERS TO FUND BSA GIFT ANNUITIES

If you are making a gift to fund a **gift annuity** with the Boy Scouts of America, there are <u>different</u> transfer instructions.  For these gifts, please call **214.384.3247**, or email Angela.Sanchez@scouting.org.

### TRANSFERS OF REAL ESTATE TO THE BSA FOUNDATION

Please request our packet of information covering real estate transfers to the BSA Foundation.  This will include a basic questionnaire about the property, including environmental issues.  To receive a copy, or if you have questions, contact us at **972. 580. 2219**, or Patty.Bowman@scouting.org.

<div align="center">

**Please discuss all gifts, gift methods, and options with your advisors.**
**Please see page 3 if you are using a <u>credit card</u> for your gift.**

</div>

December 2021

**PROPUBLICA** TRACKING PPP

*Tracking PPP*
# Search Every Company Approved for Federal Loans

**Search for PPP loan applications by organization, lender, zip code and business type.**

"boy scouts of america"

**For example:** trucking, hospice, television, Kasowitz Benson Torres, 90210, Sole Proprietorship

## First 100 loans
If you're looking for an exact term, try adding quotes, e.g., "farm market"

Recipient
BOY SCOUTS OF AMERICA

Location
**Fort Smith, AR**

Loan Status
**Forgiven as of Sept. 14, 2021**

Loan Amount
**$143,975**

Date Approved
Jan. 30, 2021

Recipient
BOY SCOUTS OF AMERICA

Location
**ROCHESTER, MN**

Loan Status
**Forgiven as of Nov. 30, 2020**

Loan Amount
**$113,600**

Date Approved
April 14, 2020

Recipient
BOY SCOUTS OF AMERICA

Location
Birmingham, AL

Loan Status
Forgiven as of March 10, 2021

Loan Amount
$469,900

Date Approved
April 14, 2020

Recipient
BOY SCOUTS OF AMERICA

Location
PLEASANT HILL, CA

Loan Status
Forgiven as of March 22, 2021

Loan Amount
$270,500

Date Approved
April 12, 2020

Recipient
BOY SCOUTS OF AMERICA

Location
Jackson, MS

Loan Status
Forgiven as of Nov. 23, 2020

Loan Amount
$156,303

Date Approved



# Chartered Organizations and the Boy Scouts of America



**FACT SHEET**

## Overview of Chartered Organizations

- Civic, faith-based, and educational organizations operate Scouting units to deliver the programs to their youth members, as well as the community at large.
- Over 100,000 Scouting units are owned and operated by chartered organizations. Of these:
  - 71.5 percent of all units are chartered to faith-based organizations.
  - 21.3 percent of all units are chartered to civic organizations.
  - 7.2 percent of all units are chartered to educational organizations.
- Responsibilities of chartered organizations include:
  - Providing adequate meeting facilities.
  - Providing quality leadership for the Scouting unit.
  - Appointing a chartered organization representative to coordinate all Scouting unit operations within the organization.

## Faith-Based Chartered Organizations

The 25 faith-based organizations with the largest Scouting youth membership (Source: *2013 Boy Scouts of America Local Council Index*, using December 31, 2013, membership data):

| Name of Organization | Total Units | Total Youth |
|---|---|---|
| The Church of Jesus Christ of Latter-day Saints* | 37,933 | 437,160 |
| United Methodist Church* | 10,703 | 349,614 |
| Catholic Church* | 8,131 | 259,297 |
| Presbyterian Church* | 3,520 | 119,879 |
| Lutheran Church* | 3,728 | 111,483 |
| Baptist Churches* | 3,532 | 91,526 |
| Episcopal Church* | 1,180 | 41,340 |
| United Church of Christ, Congregational Church | 1,154 | 36,194 |
| Community Churches | 1,009 | 30,114 |
| Christian Church (Disciples of Christ) | 1,083 | 30,113 |
| Church of Christ* | 495 | 13,559 |
| Evangelical/independent churches | 299 | 7,740 |
| Church of God | 207 | 4,354 |
| Reformed Church in America | 124 | 3,921 |
| Church of the Nazarene | 154 | 3,841 |

Boy Scouts of America
Research & Program Innovation
1325 W Walnut Hill Lane
Irving, TX 75038
research.team@scouting.org



# Chartered Organizations and the Boy Scouts of America

**F A C T   S H E E T**

*Faith-Based Chartered Organizations (cont.)*

| Name of Organization | Total Units | Total Youth |
|---|---|---|
| Jewish synagogues and centers* | 146 | 3,268 |
| Church of the Brethren | 101 | 2,614 |
| Islam, Muslim, Masjid* | 75 | 2,226 |
| African Methodist Episcopal* | 128 | 2,053 |
| Christian Methodist Episcopal Church | 91 | 2,004 |
| The Salvation Army | 101 | 1,721 |
| Community of Christ | 66 | 1,718 |
| Buddhist Churches of America | 69 | 1,698 |
| Assemblies of God* | 74 | 1,620 |
| Other churches | 802 | 21,804 |

*Individual fact sheet available

## Civic Chartered Organizations

The 20 civic organizations or groups with the largest Scouting youth membership (Source: *2013 Boy Scouts of America Local Council Index,* using December 31, 2013, membership data):

| Name of Organization | Total Units | Total Youth |
|---|---|---|
| Groups of citizens | 2,633 | 84,497 |
| American Legion and Auxiliary | 2,477 | 64,864 |
| Lions Club International* | 2,200 | 60,671 |
| Business/industry | 2,555 | 57,266 |
| Rotary International | 1,289 | 40,996 |
| VFW*, Auxiliary, Cootie | 1,078 | 30,686 |
| Fire departments | 1,156 | 29,752 |
| Kiwanis International | 857 | 26,587 |
| Elks lodges (BPOE) | 794 | 21,892 |
| Community centers | 818 | 19,661 |
| Boys and Girls Clubs* | 547 | 16,628 |



# Chartered Organizations and the Boy Scouts of America

**F A C T   S H E E T**

*Civic Chartered Organizations (cont.)*

| Name of Organization | Total Units | Total Youth |
|---|---|---|
| Nonprofit agencies | 570 | 15,286 |
| Athletic booster clubs | 353 | 11,201 |
| Playgrounds, recreation centers | 379 | 9,561 |
| Chambers of commerce, business associations | 303 | 8,892 |
| Homeowners' associations | 242 | 8,786 |
| Optimist International* | 244 | 8,300 |
| Masons—Eastern Star | 260 | 8,018 |
| YWCA, YMCA | 257 | 7,362 |
| Other community organizations | 1,503 | 41,180 |

*Individual fact sheet available

## Educational Chartered Organizations

Source: *2013 Boy Scouts of America Local Council Index,* using December 31, 2013, membership data:

| Name of Organization | Total Units | Total Youth |
|---|---|---|
| Parent-teacher groups other than PTAs | 3,076 | 126,207 |
| Private schools | 2,579 | 91,828 |
| Parent-Teacher Associations/Parent-Teacher Organizations | 1,473 | 60,171 |

Updated March 2014

# EXHIBIT

# 2

**"The Only Thing Necessary for the Triumph of Evil is that Good Men Do Nothing..."**



COL TEDDY ROOSEVELT DROPPED THE BOMBSHELL. THE BOY SCOUTS MAINTAINED AN IV "RED FLAG LIST" OF 2,904 UNDESIRABLES BANNED FROM WORKING WITH 3.3 MILLION YOUNG BOYS IN SCOUTING .

*NEW YORK TIMES MAY 18, 1935 - "OUR RED FLAG LIST IS IN CONSTANT USE."*
*T. ROOSEVELT*

*87 YEARS LATER NOW BANKRUPT.*

117, OOO ATTEMPTED CLAIMS IN 2021.

82,000 PLUS VICTIMS NOW SCREENED IN 2022.

40,000 PLUS VICTIMS FURTHER DISQUALIFIED IN 2022.

*87 YEARS OF CRITICAL RED FLAG LIST DETAILED DISCOVERY (NOT) GIVEN.*

*EVEN USED BY CLASSIC FOOLS AS A SETTLEMENT BARTERING CHIP IN 2022.*

WITH TEARFUL CURRENT CONFESSIONS OF THE PAST BSA YOUTH PROTECTION EXECUTIVE OF GROSS NEGLIGENCE AND BOY SCOUTS SYSTEM-WIDE FAILURES IN 2021. *(WHO IS THE CURRENT YP CZAR IN 2022?) EXACTLY...THE PROBLEM. (ANOTHER SETTLEMENT BARTERING CHIP.)*

*THUS, MAKING THE 5 YEAR POST-BANKRUPTCY PLAN AND FUTURE CLAIMANTS TRUST FUND NEEDS UNKNOWABLE. TRIGGERING THE EVENTUAL MANVILLE ASBESTOS TRUST FUND-ESQUE FAILURE HIGHLY LIKELY.*

*"THOSE THAT FAIL TO LEARN FROM HISTORY, ARE DOOMED TO REPEAT IT."*
*WINSTON CHURCHILL*

"It is to our Scout Masters that we must look for the perpetuation of the high ideals which have made the Scout Movement such a potent force in boy development and community service. It will be your privilege and responsibility to help develop the character of many boys. You will be the leader and, in directing the work and play of your boys, it will be your duty to keep ever before them the Scout Oath and Law which bind us all in Scout Brotherhood."

*Yet, according to the Los Angeles Times, by at least 1919 — barely five years later — the BSA had begun maintaining "ineligible volunteer" files intended to keep sexual abusers and unfit others out of its ranks.*

*But the files were were closely held by the Boy Scouts and the issue seemed to stay buried for the first quarter-century of the organization's existence. Then at the scouts's silver jubilee meeting in Chicago in May 1935, with his distant cousin, Franklin, in the White House, Col. Roosevelt dropped a bombshell. The Boy Scouts, he announced, maintained a "Red Flag List" of 2,904 undesirables banned from working with the 3.3 million boys in Scouting.*

"Throughout the years — through our twenty-five years of existence — we have tried to safeguard ourselves in every way from men unfit to lead or to influence boys, and we intend to continue to do," the Colonel said in remarks *The New York Times* featured at the top of the front page of May 18, 1935. **"Our Red Flag List is in constant use."**

ws That's
Print."

Ehe New York

Copyright, 1935, by The New York Times

),235.

Entered as Second-Class Matter
Postoffice, New York, N. Y.

NEW YORK, SATURDAY, MAY. 18, 1935.

## Boy Scouts' 'Red Flag List' Bars Undesirables, Col. Roosevelt Says

### 'We Want to Preserve Fineness,' He Tells Jubilee Session in Chicago—Rabbi Asserts We Must Choose Between Scouts and Hoodlums—President Roosevelt Is Again Honored.

Special to The New York Times.

CHICAGO, May 17.—Disclosure that the Boy Scouts of America maintains a "red flag list" of persons regarded as undesirable influences on youth was made by Colonel Theodore Roosevelt today before the twenty-fifth anniversary meeting of the Scouts' National Council.

The "red flag list" is made up of 2,904 names and "is in constant use," according to Colonel Roosevelt, who is chairman of the division of personnel. He spoke extemporaneously at the closing session of the Scouts' silver jubilee meeting.

"The greatest bit of patriotism being done in the United States today is being done by our 1,388,810 Boy Scouts," he declared. "We Scouters are about as fine a body of men as I know anywhere, and we intend to preserve that fineness.

"Through the years—through our twenty-five years of existence—we have tried to safeguard ourselves in every way from men unfit to lead or to influence boys, and we intend to continue to do so. Our red flag list is in constant use."

Colonel Roosevelt was preceded by Dr. Louis Mann, rabbi of Sinai Temple, Chicago, whose theme was...

## CITY OFFERS TO ARM POULTRY DEALERS TO WAR ON RACKET

### Valentine Tells Merchants to Slug Thugs and He Will Aid Them to Get Revolvers.

### $10,000,000 TRIBUTE SEEN

### Morgan Reports Leaders of Industry Believe the Code Legalizes Abuses.

The city, business men and the Poultry Code Authority joined yesterday for a new onslaught on New York's poultry racket, which was revealed as having been revived at a cost to the public of almost $10,000,000 last year. Speaking for the police, Commissioner Valentine urged merchants to slug...

## RETAIL PRI... LL SIGNED BY ... AN IN SURPRI ... VE

### Trade-Mark Proposal Will Aid Small Stores a... ...ac-turers, He ...

### RIPPER MEASURES KILLED

### Farley Nassau County Legislation Lost—Governor Acted on 1,324 Bills, a Record.

Special to The New York Times.

ALBANY, May 17.—Governor Lehman signed today the Feld-Crawford "fair trade" bill in a surprise move as he completed action on 1,... bills in the final rush to dispose o...



# CHARTER

Sixty-Fourth Congress of the

United States of America

At the First Session

Begun and Held at the

City of Washington

On Monday, the Sixth Day of December

One Thousand Nine Hundred and Fifteen

## AN ACT

**To Incorporate the
Boy Scouts of America
and for Other Purposes**

### Section 1.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That Colin H. Livingstone and Ernest P. Bicknell, of Washington, District of Columbia; Benjamin L. Dulaney, of Bristol, Tennessee; Milton A. McRae, of Detroit, Michigan; David Starr Jordan, of Berkeley, California; F. L. Seely, of Asheville, North Carolina; A. Stamford White, of Chicago, Illinois; Daniel Carter Beard, of Flushing, New York; George D. Pratt, of Brooklyn, New York; Charles D. Hart, of Philadelphia, Pennsylvania; Franklin C. Hoyt, Jeremiah W. Jenks, Charles P. Neill, Frank Presbrey, Edgar M. Robinson, Mortimer L. Schiff, and James E. West, of New York, New York; G. Barrett Rich, Junior, of Buffalo, New York; Robert Garrett, of Baltimore, Maryland; John Sherman Hoyt, of Norwalk, Connecticut; Charles C. Jackson, of Boston, Massachusetts; John H. Nicholson, of Pittsburgh, Pennsylvania; William D. Murray, of Plainfield, New Jersey; and George D. Porter, of Philadelphia, Pennsylvania, their associates and successors, are hereby created a body corporate and politic of the District of Columbia, where its domicile shall be.

### Section 2.

That the name of this corporation shall be "Boy Scouts of America," and by that name it shall have perpetual succession, with power to sue and be sued in courts of law and equity within the jurisdiction of the United States; to hold such real and personal estate as shall be necessary for corporate purposes, and to receive real and personal property by gift, devise, or bequest; to adopt a seal, and the same to alter and destroy at pleasure; to have offices and conduct its business and affairs within and without the District of Columbia and in the several States and Territories of the United States; to make and adopt bylaws, rules, and regulations not inconsistent with the law of the United States of America, or any State thereof, and generally to do all such acts and things (including the establishment of regulations for the election of associates and successors) as may be necessary to carry into effect the provisions of this Act and promote the purposes of said corporation.

### Section 3.

That the purpose of this corporation shall be to promote, through organization, and cooperation with other agencies, the ability of boys to do things for themselves and others, to train them in Scoutcraft, and to teach them patriotism, courage, self-reliance, and kindred virtues, using the methods which are now in common use by Boy Scouts.

### Section 4.

That said corporation may acquire, by way of gift, all the assets of the existing national organization of Boy Scouts, a corporation under the laws of the District of Columbia, and defray and provide for any debts or liabilities to the discharge of which said assets shall be applicable; but said corporation shall have no power to issue certificates of stock or to declare or pay dividends, its object and purposes being solely of a benevolent character and not for pecuniary profit to its members.

iii

**Section 5.**

That the governing body of the said Boy Scouts of America shall consist of an executive board composed of citizens of the United States. The number, qualifications, and terms of office of members of the executive board shall be prescribed by the bylaws. The persons mentioned in the first section of this Act shall constitute the first executive board and shall serve until their successors are elected and have qualified. Vacancies in the executive board shall be filled by a majority vote of the remaining members thereof. The bylaws may prescribe the number of members of the executive board necessary to constitute a quorum of the board, which number may be less than the majority of the whole number of the board. The executive board shall have power to make and to amend the bylaws, and, by two-thirds vote of the whole board at a meeting called for this purpose, may authorize and cause to be executed mortgages and liens upon the property of the corporation. The executive board may, by resolution passed by a majority of the whole board, designate three or more of their number to constitute an executive or governing committee, of which a majority shall constitute a quorum, which committee, to the extent provided in said resolution or in the bylaws of the corporation, shall have and exercise the powers of the executive board in the management of the business affairs of the corporation, and may have power to authorize the seal of the corporation to be affixed to all papers which may require it. The executive board, by the affirmative vote of a majority of the whole board, may appoint any other standing committees, and such standing committees shall have and may exercise such powers as shall be conferred or authorized by the bylaws. With the consent in writing and pursuant to an affirmative vote of a majority of the members of said corporation, the executive board shall have authority to dispose in any manner of the whole property of the corporation.

**Section 6.**

That an annual meeting of the incorporators, their associates and successors, shall be held once in every year after the year of incorporation, at such time and place as shall be prescribed in the bylaws, when the annual reports of the officers and executive board shall be presented and members of the executive board elected for the ensuing year. Special meetings of the corporation may be called upon such notice as may be prescribed in the bylaws. The number of members which shall constitute a quorum at any annual or special meeting shall be prescribed in the bylaws. The members and executive board shall have power to hold their meetings and keep the seal, books, documents, and papers of the corporation within or without the District of Columbia.

**Section 7.**

That said corporation shall have the sole and exclusive right to have and to use, in carrying out its purposes, all emblems and badges, descriptive or designating marks, and words or phrases now or heretofore used by the Boy Scouts of America in carrying out its program, it being distinctly and definitely understood, however, that nothing in this Act shall interfere or conflict with established or vested rights.

**Section 8.**

That on or before the first day of April of each year the said Boy Scouts of America shall make and transmit to Congress a report of its proceedings for the year ending December thirty-first preceding. *

**Section 9.**

That Congress shall have the right to repeal, alter, or amend this Act at any time.

Approved 15 June 1916

Woodrow Wilson

*As amended August 30, 1964, Pub. L. 88-504, 78 Stat. 636

iv

Coding Manual-UVA Review of BSA IV Files                                    05-15-2017

## Appendix B: Ineligible Volunteer Record Sheet

### INELIGIBLE VOLUNTEER RECORD SHEET
#### BACKGROUND INFORMATION

Full name (no initials if you can possibly get full name)                                    Date   /  /

Date of birth   /  /      If no DOB approximate age       SS No:   —   —      Driver license No:

Address:                              City:                    State:                    ZIP:

Telephone (with area code) (   )                    Email address:

Weight       Height       Race/ethnicity:       Hair color:       Eye color:       Gender

Distinguishing physical characteristics       Name of parent (IV under 18)

Marital status                    Name of spouse:                    Children? ❑ Yes ❑ No ❑ Unknown

Number of children:    Names and ages:                    Any children in Scouting? ❑ Yes ❑ No ❑ Unknown

Occupation(s)                              Employer (s):

#### SCOUTING CONNECTIONS

IV registered with BSA? ❑ Yes ❑ No    If yes, Scouting position for Adult IV        If yes, Scouting program for Youth IV (<18)

Unit No.:   Council name:       Council No:   Headquarter city/state:       Region:   Area:   Date registered    Date resigned
                                                                                        /  /            /  /

Chartered organization(s)

If Adult IV, was Criminal Background Check (CBC) conducted? ❑ Yes ❑ No       Date:  /  /      Any offense(s) identified? ❑ Yes ❑ No

If yes, all offense(s) in CBC                              If yes, all date(s) in CBC

Please provide a two-to-three sentence description of the alleged incident including: what happened, under what circumstances, and how was the behavior discovered.



Any indications of similar past incidents involving the IV? ❑ Yes ❑ No       If yes, please provide description(s) and date(s) below

Date(s):  /  /      Description(s):

Any indication IV was involved in other Youth Serving Organizations? ❑ Yes ❑ No      If yes, specify below

Name:                              Location:

#### IF SEXUAL ABUSE IS ALLEGED (including child pornography)

Name of victim:       For non-specific victim only ❑ Child Pornography   ❑ Police Cyber Impersonation
                      ❑ CBC (Criminal Background Check)   ❑ SOR (Sex Offender Registry)

Date of birth  /  /      If no DOB, approximate age                Address:                City

State       ZIP       Race/ethnicity:                Gender

Parent Name       Telephone (with area code) (   )       Address:                City

State       ZIP       Victim(s) registered with BSA? ❑ Yes ❑ No   If yes, Scouting program

Did any alleged abuse occur during Scouting
activities? ❑ Yes ❑ No ❑ Unknown       If yes, where       ❑ Other-specify:       When  /  /

If yes, any of the BSA Barriers to Abuse not being upheld? ❑ Yes   ❑ No indication       If yes, please indicate all that apply

Date alleged abuse began    /  /   ❑ Unknown    Approximate duration of abuse ___ Months ___ Years ❑ Unknown

How was abuse reported?                Any prior concerns about IV adhering to BSA youth protection polices? ❑ Yes ❑ No

Law enforcement (LE) aware of incident? ❑ Yes ❑ No ❑ Unknown       Did BSA make report to LE? ❑ Yes ❑ No ❑ Unknown

BSA report date:  /  /   LE dept. name/ location                CPS informed? ❑ Yes ❑ No ❑ Unknown

#### RESOLUTION BY BSA NATIONAL OFFICE

Additional information attached/sent to                Date sent:  /  /

Indicate all information types obtained for IV file:       Incident code ( add Y if IV is youth):

If legal outcome:   ❑ Guilty ❑ Not guilty ❑ Unknown       Date all positions expired in PAS:  /  /

Reviewed by:                              Date:  /  /

Coding Manual-UVA Review of BSA IV Files                                              05-15-2017

# Appendix C: Coding Form, Continued

enforcement officer, judge, or journalist who earned Eagle Scout)
- ☐ The victim
- ☐ The parents of the victim
- ☐ The parents of some other youth involved in Scouting
- ☐ Other-specify: _____

| C.  CHARACTERISTICS OF THE ADULT IV (18 YEARS OF AGE AND OLDER) |
|---|

| C1. Is there a photo of the IV in the file? | ☐ Yes ☐ No |
|---|---|

| C2. Was the adult IV employed at the time that the file was opened? | ☐ Yes ☐ No ☐ Unknown |
|---|---|

| C3. Are there indications the adult IV was ever married? | ☐ Yes ☐ No ☐ Unknown |
|---|---|

| C4. If the adult IV had children, were they involved in Scouting or was there evidence that the children (possibly now grown) had previously been involved with Scouting? | ☐ Yes ☐ No ☐ Unknown |
|---|---|

| C5. Was there any information to indicate that the adult IV was NOT a stable member of the local community? | ☐ Yes ☐ No indication |
|---|---|

| C6. Had the adult IV been a member of Scouting as a youth?  C6a. If yes, number of years: _____ | ☐ Yes ☐ No ☐ Unknown  ☐ Unknown |
|---|---|

| C7. Had the adult IV completed BSA Youth Protection Training? | ☐ Yes ☐ No indication |
|---|---|

| C8. How many years had the adult IV been involved in Scouting as an adult when the IV file was opened?  _____ Years | ☐ Unknown |
|---|---|

| C9. Was the adult IV ever arrested for a sex crime?  C9a. If yes, were they given a sentence that involved only probation?  C9b. If yes, were they sentenced to a jail/prison term?  C9c. If yes to C9b, what was the length of the jail/prison term in years: _____  C9d. If yes, was the IV court ordered to psychiatric treatment by the courts?  C9e. If yes, were they added to a sex offender registry due to the offense? | ☐ Yes ☐ No indication  ☐ Yes ☐ No ☐ Unknown  ☐ Yes ☐ No ☐ Unknown  ☐ Unknown  ☐ Yes ☐ No indication  ☐ Yes ☐ No indication |
|---|---|

| C10. Did the sexual behavior with a Scout/youth involve another adult?  C10a. If yes, was the other adult male or female?  C10b. If the adult IV was married, was the other adult their spouse? | ☐ Yes ☐ No indication  ☐ Male ☐ Female  ☐ Yes ☐ No |
|---|---|

C11. Is there any indication that the adult IV (check all that apply):
- ☐ Suffered from some form of mental disorder-specify: _____
- ☐ Was taking some type of psychotropic medication
- ☐ Suffered from a substance abuse disorder
- ☐ Had less than a high school education
- ☐ Suffered from diagnosed or self-described pedophilia
- ☐ Described self as bisexual
- ☐ Described self as homosexual
- ☐ Displayed interest in military or paramilitary activities that involving wearing uniforms combined with role of authority (for example being in military, being a police officer/security guard, etc.)

6

# BOY SCOUTS OF AMERICA

# VOLUNTEER SCREENING DATABASE: AN EMPIRICAL REVIEW 1946–2016



University of Virginia, School of Medicine

Janet I. Warren, DSW

Professor of Psychiatry and Neurobehavioral Sciences Institute of Law, Psychiatry, and Public Policy University of Virginia

2019

**(Washington, D.C.)** – At a press conference, Michael Johnson the 10-year former Youth Protection Director for Scouts BSA (formerly the Boy Scouts of America) will speak out about the dangers that Scouts BSA pose to children right now. He will also:

> Present an open letter (attached), given to members of Congress, urging them to begin investigations and hearings immediately into the dangers that exist and the cover-up of abuse
>
> Reveal BSA policies that allow predators access to children today
>
> Expose how current Scouts BSA leadership and business model foster danger, secrecy, abuse and cover-up
>
> Disclose details on former detective refusing to sign NDA, non-disparagement agreement
>
> Demand full disclosure of hidden documents and identities of all predators, past and present
>
> Demand release of internal expert analysis that identifies known perils within BSA
>
> Demand full disclosure of the perversion files kept secret
>
> Call to action by former detective and youth protection director of BSA, Michael Johnson.

Other speakers at the event will include:

> Eagle Scout and survivor of sexual abuse who will share his experience of abuse for the first time publicly
>
> **Bridie Farrell**, Founder of America Love Kids, survivor of child sexual abuse, and former Three-Time American Record holding speed skater
>
> **Joelle Casteix**, survivor, advocate and board member of Zero Abuse Project
>
> **Victor Vieth**, Director of Training and Research at Zero Abuse Project

**WHEN:** Tuesday, October 12, 2021, at 1:30 p.m. ET

**WHERE:** National Press Club | 529 14th St NW, Washington, DC 20045

**LIVE STREAM**: The press conference will also be live-streamed via **Vimeo, Facebook, YouTube**, and in the News section of our website.

**MEDIA NOTE:** Video files will be available for download following the conclusion of the event for use by broadcast and digital media. Submit requests to **media@andersonadvocates.com.**

"NOT CUTE, MR. KURTZ. NOT BY A COUNTRY MILE."  -BSA Survivors

HERE IS YOUR WORD, MR. KURTZ. SEE HOW IT APPLIES TO WHITE & CASE AND THE DEBTOR-IN-POSSESSION:

CUTE

Adjective

\ 'kyüt \

Definition of Cute

Clever or Shrewd... often in an underhanded manner

"... he's a True Patriot and Statesman ... and a most particular cute lawyer." — Thomas C. Haliburton

-------------------------------------------------

ATTORNEY AND BOY SCOUTS OF AMERICA "MASS TORT" PHILOSOPHER

Glenn M. Kurtz (Partner) WHITE & CASE—New York

New York State Bar

US District Court for the Southern District of New York

US District Court for the Eastern District of New York

US District Court for the Western District of Michigan

US Court of Appeals for the First Circuit

US Court of Appeals for the Second Circuit

US Court of Appeals for the Third Circuit

US Court of Appeals for the Fourth Circuit

US Court of Appeals for the Sixth Circuit

US Court of Appeals for the Eighth Circuit

US Court of Appeals for the Ninth Circuit

US Court of Appeals for the Eleventh Circuit

US Supreme Court

2/6/22, 1:58 PM

Case 20-10343-LSS   Doc 9641   Filed 04/13/22   Page 40 of 224

Scouting's Commitment To Victims of Past Abuse and To the Safety of Youth in Our Programs - Scouting Wire : Scouting Wire

Share this article:

November 17, 2020

Scouting Family,

This is one of the most important and difficult moments for our Scouting Movement.

As you have likely seen in the media, tens of thousands of survivors of past abuse in Scouting have come forward in the national organization's bankruptcy case. We are devastated by the number of lives impacted by past abuse in Scouting and moved by the bravery of those who have come forward. We are heartbroken that we cannot undo their pain.

The Boy Scouts of America is taking responsibility for past failures, and we are working to support survivors through the bankruptcy process. We are also working to ensure that we continue to bring Scouting's unparalleled benefits to youth and families for many years to come – with their safety as our absolute top priority.

**I want to be clear that nothing is more important than the safety of the youth in our programs.**

Over many years, we have put in place some of the strongest youth protection policies in any youth-serving organization, which are built on safeguards informed by respected experts in child safety, law enforcement, and child psychology.

While any instance of abuse is one too many, the overwhelming majority of claims filed in the national organization's Chapter 11 case relate to allegations of abuse that occurred before our modern youth protection policies were implemented more than three decades ago. That does not in any way absolve us of what happened in the past, but I hope it demonstrates that we take youth protection extremely seriously.

Our commitment to safety is strong not only because of our policies, but also because that commitment is shared by everyone within our organization, including hundreds of thousands of volunteers who bring Scouting to life for youth and families throughout the country. As a local council volunteer, I've seen the vigilance myself. I thank you for it and urge you to continue being dedicated advocates for safety – both in Scouting and beyond.

I assure you that we are up to the challenges and opportunities we face. Scouting has prepared millions of young people to become leaders in their neighborhoods, communities, and the country. Scouting has also been an invaluable partner to millions of families, and we are as committed as ever to ensuring that our support for them never fades and that Scouting continues across the country. Together, we will meet this moment and come out on the other side prepared to serve our nation's youth for many years to come.

Yours in Scouting,

Roger Mosby

# Application for Professional Commission

**Boy Scouts of America**



I hereby apply for a commission in the professional service of the Boy Scouts of America and, in accordance with BSA qualifications and requirements, hereby subscribe to the Scout Oath or Promise, Law, and the declaration of religious principle (see below). If commissioned in the professional service, I agree to abide by the Charter, Bylaws, and Rules and Regulations of the Boy Scouts of America. I understand that commissioning by the Boy Scouts of America and employment are separate and distinct and that commissioning is required to be employed as a professional Scouter.

Signed_____ Date_____

## NOTE TO APPLICANT

For your application to be evaluated properly, it is essential that all of the following questions be answered carefully and completely. If you need more space, please attach a separate sheet. Add any additional information you feel may be helpful.

All items of inquiry on this application seek to provide background information that will be considered with your applicant's qualifications.

**An official transcript of credits from an accredited college is required.** Please request that the college registrar send an official transcript of credits directly to the Scout executive of the council processing your application for commission.

In making this application, it is understood that an investigation will be conducted that will involve inquiries about your business and personal life, including information regarding any prior criminal convictions. This information may be obtained through personal interviews with third parties, such as family members, business associates, financial sources, friends, neighbors, or others with whom you are acquainted, and by obtaining reports from credit-reporting and criminal justice agencies.

Candidates must satisfactorily complete the Professional Development basic course, Level I, prior to being commissioned.

All professional applicants must be at least the age of majority in the state in which they reside and have graduated from an accredited college/university with the minimum of a four-year bachelor's degree. Applicants with the required paraprofessional job experience must have the minimum of an associate's degree.

Commissions are issued only to those who have met the qualifications and requirements as established by the National Executive Board of the Boy Scouts of America.

### DECLARATION OF RELIGIOUS PRINCIPLE

The BSA maintains that no member can grow into the best kind of citizen without recognizing an obligation to God. In the first part of the Scout Oath or Promise the member declares, "On my honor I will do my best to do my duty to God and my country and to obey the Scout Law." The recognition of God is necessary to the best type of citizenship and is a wholesome precept in the education of the growing members. No matter what the religious faith of the members may be, this fundamental need for good citizenship should be kept before them. The Boy Scouts of America therefore recognizes the religious element in the training of the members, but it is absolutely nonsectarian in its attitude toward that religious training. Its policy is that the home and the organization or group with which the member is connected shall give definite attention to religious life.

Only persons willing to subscribe to these declarations of religious principles and the Scout Oath and Law shall be entitled to certificates of leadership in carrying out the Scouting program—*Rules and Regulations of the Boy Scouts of America,* article VIII, section 4, clause 2(c).

### Read Carefully Before Proceeding

Applicants are not required to give any information on this form that is prohibited by federal, state, or local law.

Because of their close relationship to the mission of Scouting, professional Scouters are required to accept the Boy Scouts of America's Declaration of Religious Principle, the Scout Oath, and the Scout Law.

Accordingly, in the exercise of its constitutional right to bring the values of Scouting to its youth members, the Boy Scouts of America will not employ atheists, agnostics, known or avowed homosexuals, or others as professional Scouters or in other capacities in which such employment would tend to interfere with its mission of reinforcing the values of the Scout Oath and the Scout Law in young people.

Applicants for commissioning are considered without regard to race, color, religion, sex, national origin, age, marital or veteran status, or the presence of a health problem or handicap that is unrelated to the person's ability to perform the job assigned.

**Read Carefully Before Proceeding**

Applicants are not required to give any information on this form that is prohibited by federal, state, or local law.

Because of their close relationship to the mission of Scouting, professional Scouters are required to accept the Boy Scouts of America's Declaration of Religious Principle, the Scout Oath, . and the Scout Law.

Accordingly, in the exercise of its constitutional right to bring the values of Scouting to its youth members, the Boy Scouts of America will not employ atheists, agnostics, known or avowed homosexuals, or others as professional Scouters or in other capacities in which such employment would tend to interfere with its mission of reinforcing the values of the Scout Oath and the Scout Law in young people.



Applicants for commissioning are considered without regard to race, color, religion, sex, national origin, age, marital or veteran status, or the presence of a health problem or handicap that is unrelated to the person's ability to perform the job assigned.

# Scouts Removed 1,800 Scoutmasters for Suspected Abuse Over Two Decades

STEVE GEISSINGER    October 14, 1993

SACRAMENTO, Calif. (AP) _ The Boy Scouts of America dismissed about 1,800 scoutmasters suspected of molesting boys between 1971 and 1991, but some moved on to other troops and continued to abuse Scouts, organization files show.

Sacramento lawyer Michael Rothschild, who obtained 25,000 pages of Scout documents for a lawsuit, said the organization refuses to acknowledge it is "a magnet for pedophiles," though a Scouts spokesman said it has been a leader in fighting such abuse.

The documents, recently reviewed by The Associated Press, include letters to Scout headquarters from local troops, letters from victims, newspaper clippings and dismissal notices.

In many cases, there is no indication that police or the courts were involved.

The percentage of suspected molesters is small. The Boy Scouts has about 1.15 million adult volunteers and 4.15 million members. About one in 13,000 adult volunteers is barred each year.

In recent years, the organization has used videotapes and printed material to educate youngsters, said Richard Walker, a spokesman at headquarters in Irving, Texas.

Walker said boys are not specifically warned that their own scoutmaster could be a child molester. "We do tell them it could be anybody," he said.

The organization asks applicants about criminal convictions and suggest local troops check references, but doesn't specifically urge them to perform background checks

**Crimes against humanity** are certain acts that are purposefully committed as part of a widespread or systematic policy, directed against civilians, in times of war or peace. They differ from war crimes because they are not isolated acts committed by individual soldiers but are acts committed in furtherance of a state or organizational policy.[1] The first prosecution for crimes against humanity took place at the Nuremberg trials. Initially being considered for legal use, widely in International Law, following the Holocaust a global standard of human rights was articulated in the Universal Declaration of Human Rights (1948). Political groups or states that violate or incite violation of human rights norms, as found in the Declaration, are an expression of the political pathologies associated with crimes against humanity.

Crimes against humanity have since been prosecuted by other international courts (for example, the International Criminal Tribunal for the former Yugoslavia, the International Criminal Tribunal for Rwanda and the International Criminal Court) as well as in domestic prosecutions. The law of crimes against humanity has primarily developed through the evolution of customary international law. Crimes against humanity are not codified in an international convention, although there is currently an international effort to establish such a treaty, led by the Crimes Against Humanity Initiative.

Unlike war crimes, crimes against humanity can be committed during peace or war.[2] They are not isolated or sporadic events but are part either of a government policy (although the perpetrators need not identify themselves with this policy) or of a wide practice of atrocities tolerated or condoned by a government or a *de facto* authority. War crimes, murder, massacres, dehumanization, genocide, ethnic cleansing, deportations, unethical human experimentation, extrajudicial punishments including summary executions, use of weapons of mass destruction, state terrorism or state sponsoring of terrorism, death squads, kidnappings and forced disappearances, use of child soldiers, unjust imprisonment, enslavement, torture, rape, political repression, racial discrimination, religious persecution and other human rights abuses may reach the threshold of crimes against humanity if they are part of a widespread or systematic practice.



# EXHIBIT

# 3

Next

# Delaware U.S. Attorney Criminal Referral Request For Federal Chapter 11 Public Corruption , Crimes Against Children, Obstruction Of Justice, Debtor & Creditor Attorney Fee Misappropriation Fraud, and Grand Jury Subpoena Opening NDA's & Debtor Fraudulent Concealment Of Documents.

Sent: **Wednesday, July 7, 2021 1:29 PM**

From: **MRCTLR** mrctlr@protonmail.com

To: **USTP.Bankruptcy.Fraud@usdoj.gov USTP.Bankruptcy.Fraud@usdoj.gov**

Mr. Michael Cutler - Delaware Federal Bankruptcy Creditor
240 HC 72
Ribera, NM 87560

Hercules Building
U.S. Attorney's Office
1313 N Market Street
Wilmington, DE 19801

Attn: U.S. Attorney District of Delaware Mr. David C. Weiss

Re:  Boy Scouts of America 1:20-bk-10343 Delaware Bankruptcy Court Chapter 11    Hon. Laurie Selber Silverstein

Dear Sir,

I Trust...that this Critical Letter. Will be Reviewed, and Acted Upon with all Due Timely Haste. Since, "This Subject Matter," is a matter of Utmost Importance. This Case, and Federal Bankruptcy Court, appear under your most capable jurisdiction.

"A Gross Injustice" and "Media Circus," is occurring in your District. Which is pushing along A BSA Agenda, filled "Crimes Against Children & Victim Abomination." Proper Oversight, Including Federal and State Criminal Referrals, have been beyond lacking.

Bankruptcy Attorneys & Firms, have wrongly exploited a "Criminal Professional Fee Fueled Bonanza." Costing Creditors, Tens of Millions of Dollars. Docketed Thousands of Victim Letters, Debtor Confessions of Criminal Wrongdoing have been "Presented To The Public and Chief Judge Silverstein's Court." Turning this Federal Chapter 11, Into a Massive Tort & Criminal Court Proceeding. Her Honor's Court has been reduced, to a Global Non-Profit Abuse of Children and Sexual Exploitation Obstruction Of Justice Federal Crime Empire.

The Financial Crimes, are equally beyond belief. The Cover-Up through Mediations (NDA's) and Quasi-Federal Witness but Faux Protections. Have been used against "The Victims In Spectacular Fashion." With virtually, little U.S. Trustee Sanctions & Criminal Referrals.

This "Delaware Federal Bankruptcy Court, Has Become A National Disgrace." To...The Shock of Americans far, and wide. The Federal Government has been "Used," to become a "Partner In this Criminal Activity."

I have "Reason to Believe," as do many Boy Scouts of America Childhood Victims. That among the crimes, as follows. Fall under the Direct Jurisdiction, of your "Fraud & Corruption," "Project Safe Childhood," and "Child Exploitation Delaware Sections or Divisions." Although, "This is a Global & United States Boys & Girls Club Institution." The BSA, has reported a 100 Year Sexual Perversion & Exploitation History. Which now has found its way to a Delaware Court. Withholding vast amounts of various Legal & Needed Documents. Many of which, they have reportedly and vigorously destroyed. Hence, the need for a Grand Jury Document Preservation & Evidence Protection Subpoena..."Posthaste."

I, Formally Request Your Assistance To Rectify & Add American Criminal Justice...To This Sadly Lost & Misguided Delaware Bankruptcy Case...

Here are a few areas of current immediate concern, which "Your Legal Teams," could probe:

U.S. Code Title 18. CRIMES AND CRIMINAL PROCEDURE Part I. CRIMES 18 U.S. Code CHAPTER 110—SEXUAL EXPLOITATION AND OTHER ABUSE OF CHILDREN

<u>The Blatant Perversion of The Federal Delaware Bankruptcy Court</u>

-Fraudulent Filing of Chapter 11 Federal Protections
-Fraudulent & Abusive Professional Fees
-Fraudulent Claim Documents Concealment.
-Fraudulent Conveyance of Assets Prior & During Bankruptcy
-Fraudulent Transfer During The 2 Year Look back Period
-Fraudulent Bankruptcy Plan Voting Inducement
-Debt Payment Preference Damages

## <u>Fraud & Corruption</u>

The Fraud and Public Corruption Section focuses on complex fraud, public corruption, and financial crimes that the federal government is uniquely qualified to handle. A financial analyst provides prosecutors with invaluable assistance to investigate and prosecute these cases. Cases include mortgage fraud, bank fraud, securities fraud, health care fraud, civil rights cases and many others.

### <u>Computer Crimes & Child Exploitation</u>

The Computer Crimes and Child Exploitation Section prosecutes a broad range of computer-related crimes, from cases involving the sexual exploitation of children and internet child pornography to computer intrusions, copyright and trademark violations, theft of trade secrets, identity theft, and internet fraud.

### <u>Project Safe Childhood</u>

Project Safe Childhood (PSC) aims to combat the proliferation of technology-facilitated sexual exploitation crimes against children. The threat of sexual predators soliciting children for physical sexual contact is well-known and serious; the danger of the production, distribution, and possession of child pornography is equally dramatic and disturbing. The response to these growing problems must be coordinated, comprehensive, and robust. It must aim to investigate and prosecute vigorously, and protect and assist victimized children. At the same time, it must recognize the need for a broad, community-based effort to protect our children and to guarantee to future generations the opportunities of the American dream.



Project Safe Childhood is a nationwide initiative to combat the growing epidemic of child sexual exploitation and abuse launched in May 2006 by the Department of Justice. Led by United States Attorneys' Offices and the Criminal Division's Child Exploitation and Obscenity Section (CEOS), Project Safe Childhood marshals federal, state and local resources to better locate, apprehend and prosecute individuals who exploit children via the Internet, as well as to identify and rescue victims. For more information about Project Safe Childhood, please visit www.projectsafechildhood.gov.

CyberTipLine.com

(1-800-THE-LOST) The 911 of the Internet to report cybercrimes.

MissingKids.com

Official website for the National Center for Missing & Exploited Children (NCMEC).

To This End & Return To Righteousness, In Delaware's Federal Bankruptcy Court. We Pray For This Relief, Which You Can Provide For Deserving Americans, Honorable Attorney Weiss.

Most Respectfully Submitted,

Michael Cutler
Delaware Federal Chapter 11 Bankruptcy Creditor
Note: Federal Protection Status Is In Effect.

# WHAT DOES REPORTING A SUSPECTED FELONY LOOK LIKE?

**SERIOUS ENOUGH THAT SIDLEY BUILT A BOELTER/LAURIA ETHICS WALL**

**SERIOUS ENOUGH THAT SIDLEY BUILT A BOELTER CENTURY/CHUBB ETHICS WALL**

**SERIOUS ENOUGH THAT WHITE & CASE BUILT A BOELTER ETHICS WALL**

**3 MAJOR BOELTER ETHICS WALLS BY MAJOR FIRMS –NOW IN THE LARGEST FEDERAL COURT SEXUAL ABUSE CASE IN AMERICA. NO SEXUAL MORAL ETHICS CONFLICT VICTIM NOTIFICATION KNOWLEDGE, OR INFORMED CONSENT WAS GIVEN. NO ETHICS WALL. HUMAN WEAKNESS IS THE CRITICAL DRIVER IN THIS BSA "MASS TORT" CASE.**

Even if opposing counsel has a conflict of interest, his or her client may, in some circumstances, consent to representation by that attorney. ABA Model Rule 1.7(b) sets forth the criteria for consent as follows: Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

**(2) the representation is not prohibited by law;**

**(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and**

**(4) each affected client gives informed consent, confirmed in writing. MODEL RULES OF PROF'L CONDUCT R. 1.7(b) (2009).**

**All four criteria must be met for a client to be able to consent to representation by counsel notwithstanding a conflict of interest. Although the question of when representation may be prohibited by law is a substantive legal question, that question nonetheless informs whether counsel may represent a party consistent with the rules of professional conduct.**

See MODEL RULES OF PROF'L CONDUCT R. 1.7(b)(2) (2009). Not all conflicts may be resolved with consent. See United States v. Schwarz, 283 F.3d 76, 95 (2d Cir. 2002) ("An actual or potential conflict cannot be waived if, in the circumstances of the case, the conflict is of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation.").

Debtor __Boy Scouts of America__          Case number(*if known*)_____
     Name

| 16. | Estimated liabilities |
|---|---|

| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☒ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

### Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct

Executed on __02/18/2020__
          MM / DD / YYYY

x _____          _____Steven P. McGowan_____
   Signature of authorized representative of debtor          Printed name

Title __Secretary and General Counsel__

**18. Signature of attorney**

x _____          Date ___02/18/2020___
   Signature of attorney for debtor               MM / DD / YYYY

__Derek C. Abbott__          __Jessica C.K. Boelter__
Printed name          Printed name

__Morris, Nichols, Arsht & Tunnell LLP__          __Sidley Austin LLP__
Firm name          Firm name

__1201 North Market Street__          __787 Seventh Avenue__
Address          Address

__Wilmington, DE 19899__          __New York, NY 10019__
City/State/ZIP          City/State/ZIP

__(302) 351-9314__          __(212) 839-5300__
Contact phone          

__dabbott@mnat.com__          __jboelter@sidley.com__
Email Address          Email Address

__3376 (DE)__          __5657580 (NY)__
Bar number          Bar number

We've updated our Privacy Statement. Before you continue, please read our new Privacy Statement and familiarize yourself with the terms.

# Bankruptcy judge won't kick White & Case from enviro suit after lawyer defection, romance

4/7/21 REUTERS LEGAL 01:34:01   •   Copyright (c) 2021 Thomson Reuters   •   Maria Chutchian

REUTERS LEGAL   •   April 7, 2021

(Reuters) - Argentina's state-owned oil company cannot use two lawyers' marriage to disqualify White & Case from a lawsuit related to $14 billion in environmental liabilities, a bankruptcy judge has ruled.



U.S. Bankruptcy Judge Christopher Sontchi in Wilmington, Delaware on Tuesday issued a 21-page decision rejecting a motion from YPF SA to remove White & Case from its role as counsel to YPF's adversary in the longstanding litigation.

YPF, represented by Cleary Gottlieb Steen & Hamilton, had argued that it was trying to protect its confidential information after one of its former lawyers, Jessica Lauria left Sidley Austin for White & Case, which represents a trust for creditors of a former YPF subsidiary in the environmental liabilities dispute, and married the head of the firm's bankruptcy and restructuring practice, Thomas Lauria.

YPF said in a statement that it "strongly disagrees with" and is disappointed by Sontchi's ruling.

"Under these extraordinary facts and the relevant case law, disqualification of White & Case is the only fair and adequate remedy," YPF said.

White & Case has maintained that not only does it have a screen in place to prevent this kind of information leak, but that neither Lauria is involved with the YPF case.

The litigation stems from the 2016 bankruptcy of Maxus Energy, the former YPF subsidiary. The Maxus trust, represented by White & Case, sued YPF over $14 billion in environmental liabilities in 2018. YPF says it was blindsided when Jessica Lauria, at the time Jessica Boelter, jumped to White & Case in October after years of representing it in the Maxus trust litigation. Additionally, YPF says, she never disclosed her relationship with Thomas Lauria, which became serious in 2018, while she was working for YPF. The couple married after she joined White & Case.

But Sontchi determined that White & Case had set up adequate screening procedures. The judge also rejected YPF's contention that the situation is "exceptional" because of her relationship with Thomas Lauria and that she was a key strategic advisor to the company.

We've updated our Privacy Statement. Before you continue, please read our new Privacy Statement and familiarize yourself with the terms.

they discussed the litigation.

"The example is incongruous for several reasons, not the least of which is (1) they discussed the case – what else would they discuss, they barely knew each other, and it was all they had in common, and (2) it was a cocktail party – if Mr. Casartelli believes that sharing critical confidences over drinks at a crowded cocktail party is appropriate, he needs to reexamine his thinking," Sontchi wrote.

The judge was also unpersuaded by the idea that Jessica Lauria would reveal confidential information about YPF to her husband.

"This argument is based on the proposition that married attorneys cannot help themselves from revealing client confidences over the dinner table or elsewhere. The Court refuses to presume that well-regarded married attorneys act in such a manner," he wrote.

The underlying environmental claims grew out of Maxus's and its predecessors' ownership of chemical plants that produced pesticides and herbicides, including Agent Orange. YPF denies that it is liable for the billions of dollars in environmental claims lodged against Maxus and argues that the environmental contamination occurred decades before it obtained any equity interest in the company.

The case is In re Maxus Energy Corporation, U.S. Bankruptcy Court, District of Delaware, No. 16-11501.

For the Maxus trust: Chris Shore and Matthew Nicholson of White & Case and Brian Farnan and Michael Farnan of Farnan

For YPF: Victor Hou and Howard Zelbo of Cleary Gottlieb Steen & Hamilton and Adam Landis and Matthew McGuire of Landis Rath & Cobb

**References**
CLEARY GOTTLIEB STEEN AND HAMILTON LLP; LANDIS RATH AND COBB LLP; MAXUS ENERGY CORP; SIDLEY AUSTIN LLP; WHITE AND CASE LLP; YPF SA

END OF DOCUMENT

© 2022 THOMSON REUTERS. NO CLAIM TO ORIGINAL U.S. GOVERNMENT WORKS.

Trending **companies**

MICROSOFT CORPORATION

Moskovsky Industrial, closed-end real estate unit investment fund

# Boelter Exhibit 1

# CHARACTER AND FITNESS GUIDELINES

Under Supreme Court Rule 51(c)(6), the Board of Bar Examiners conducts character investigations of all applicants for the Delaware Bar. Among other requirements for admission to the Bar, applicants have the affirmative burden to prove by clear and convincing evidence that they have good moral character and reputation, and that they possess such qualities, aptitudes and disposition as fit an applicant for the practice of law. *See Supreme Court Rule 52(a)(1)* and *Supreme Court Rule 52(aa)*. In satisfying these requirements, applicants should be persons whose record of conduct justifies the trust of clients, adversaries, courts, and others with respect to the professional duties owed to each, and demonstrates the qualities of honesty, trustworthiness, diligence, responsibility, and reliability.

The Board considers the character and fitness of the applicant to practice law and determines the applicant's compliance with the Rules of the Court and the Rules of the Board. Consistent with Board of Bar Examiners Rule 7, the Board places particular emphasis on an applicant's candor throughout the application process, which does not conclude until an applicant is admitted to the Bar. Providing false or misleading information on the bar application or failing to be entirely forthcoming and candid in the application process will have negative consequences for an applicant. Applicants should consult with their preceptors if



**SIDLEY**

SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN STREET
CHICAGO, IL 60603
+1 312 853 7000
+1 312 853 7036 FAX

AMERICA • ASIA PACIFIC • EUROPE

JCONLAN@SIDLEY.COM
+1 312 853 6890

October 3, 2018

**Privileged and Confidential**

Boy Scouts of America
Attn: Steven McGowan, General Counsel
1325 W. Walnut Hill Lane
Irving, TX 75038

Dear Mr. McGowan:

Introduction. Sidley Austin LLP ("Sidley" or "we") appreciates the opportunity to serve as your counsel. This letter, including its Attachment entitled "Additional Terms and Conditions," explains the policies and procedures that apply to this engagement. If this letter is acceptable, please sign two copies in the space provided below, retain one copy and return the other to me.

Client. The client in the matter described below will be Boy Scouts of America (the "Client" or "you"). The Client will include your subsidiaries and affiliates as well as your and their boards acting as and for you or your subsidiaries and affiliates, but will not include any of your or their respective directors, officers or employees in their individual capacity. Thus, our representation of you will not give rise to any conflict of interest if our representation of any other Sidley client is adverse to any of your or their respective directors, officers or employees.

Matter; Scope. Our representation of you is limited to strategic litigation and restructuring planning, advice and implementation (the "Matter"). We would be pleased to consider expanding the scope of this Matter, or representing you in other matters; however, we must first confirm any such expansion or other representation in writing. If we take on additional matters, each will be governed by this letter unless otherwise agreed.

Fees and Expenses. Our fees for the Matter will be based on the hourly billing rate for each attorney and paralegal (and any other relevant timekeeper) devoting time to the Matter. Our billing rates for attorneys in our United States offices currently range from $495 per hour for new associates to $1600 per hour for senior partners. Our billing rates for paralegals in those offices currently range from $245 per hour to $420 per hour. These billing rates are reviewed annually and may be changed effective January 1 of each year.



We are committed to serving you with efficient and cost-effective support systems. We will include on our bills charges for services such as document reproduction, messenger and

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

Boy Scouts of America
October 3, 2018
Page 2

overnight courier service, computerized research, travel, long-distance telephone, facsimile, document processing, search and filing fees, and internal litigation and practice support services. Fees and expenses of others (such as outside experts, consultants, other non-legal professionals, local counsel and co-counsel) will generally be billed directly to you by those others. Our website, which can be accessed at http://www.sidley.com/costrecoveryandpreadmittancebillingratepolicy/us/, includes detailed information about our expense recovery policies and procedures, which are an integral part of this letter. These policies and procedures take into account, among other things, a number of special arrangements we have with some of our vendors and service providers.

We want our clients to be satisfied with the quality and reasonableness of our services. Our usual practice is to bill monthly, and we expect payment within 30 days following your receipt of our invoice; provided, however, that we may request payment in a time period less than 30 days in accordance with the terms and conditions of the Attachment with respect to our advance payment retainer. Subject to applicable rules of professional conduct, we may suspend work on a matter or resign from a representation if satisfactory arrangements are not made for the payment of amounts outstanding and we do not receive satisfactory assurance of the payment of amounts that will become due in the future.

Retainer. You have agreed to pay an advance payment retainer of $250,000 to be governed by the applicable provision in the Attachment.

Conflicts. This letter does not create an exclusive relationship; you are free to retain other counsel of your choosing for any matter. Correspondingly, we have numerous clients that rely upon us for general representation, including clients that may be indebted to, or are creditors of you or one or more of your affiliates. In particular, Sidley has longstanding relationships with many clients. Sidley has represented, and may be currently representing, one or more of these clients in connection with many aspects of their businesses. As a result, without advance conflicts waivers from Sidley clients, conflicts of interest could arise that could deprive either you or other Sidley clients of the right to select Sidley as counsel.

In light of the foregoing, other current or future clients (collectively, the "Other Clients") may ask us to represent them in matters, such as litigation, business transactions, investigations, regulatory, insolvency, restructuring or other matters that are adverse to you and may negatively impact your interests. If we are not representing you in such a matter, and the matter in which you and an Other Client have adverse interests is not substantially related to our current or past representation of you and does not involve our use, to your disadvantage, of confidential information you have provided to us, you agree that we may represent such Other Client, you waive any conflict of interest arising from such representation, and you agree that you will not seek to disqualify or otherwise prevent us from representing such Other Client. **You acknowledge that you have had an opportunity to consult with other counsel (in-house or otherwise) and to raise any questions you may have with us before agreeing to this waiver.**

# Jessica C. Lauria (formerly Boelter)

Partner, New York

**T** +1 212 819 7097
**E** jessica.lauria@whitecase.com

## Biography

### Overview

Jessica Lauria is a partner in the Firm's Financial Restructuring and Insolvency Practice based in the New York office. Jessica represents clients in a wide variety of in court and out of court restructuring matters. Her work includes providing advice on complex questions relating to governance in the corporate restructuring context as well as, among other things, analysis, strategic advice and negotiation of all aspects of corporate restructurings including debtor-in-possession financing arrangements, cash collateral usage and exit financing facilities; formulation of legal and financial strategies for negotiating and implementing plans of reorganization; negotiating debt and equity

documents for reorganized companies; strategic advice and negotiation of sale documents and pleadings in connection with section 363 and other complex asset sales; strategic planning for debt restructuring alternatives and chapter 11 filings; preparing debtors for chapter 11 filings and structuring exit strategies for chapter 11 proceedings. Jessica also has extensive experience representing clients in connection with mass tort chapter 11 proceedings.

## Bars and Courts

New York State Bar

Illinois State Bar

US District Court for the Northern District of Illinois

## Education

JD, University of Minnesota Law School

BA in Political Science, University of Minnesota, Twin Cities

## Languages

English

# Experience

Financial Restructuring and Insolvency

**Boy Scouts of America**
Lead restructuring counsel for the Boy Scouts of America in connection with the historic non-profit's chapter 11 proceedings. Provides strategic advice to the Boy Scouts related to all aspects of the Boy Scouts' legal and financial restructuring.

**New Residential Investment Corp./Ditech Holding Corporation**
Lead counsel to New Residential Investment Corp., a publicly traded REIT, in a highly complex $1.2 billion acquisition of the forward mortgage servicing business of Ditech Holding Corporation.

**Takata Corporation**
Lead restructuring counsel for a major original equipment manufacturer in connection with the high-profile and complex  US bankruptcy cases of Takata, a related adversary proceeding and underlying litigation involving Takata and defective Takata inflators. Takata was the subject of a multitude of civil and criminal actions in the  US (and abroad) as a consequence of its distribution of defective automobile safety airbag inflators. In connection with Takata's bankruptcy proceedings,

# Bankruptcy Grifters

*Yale Law Journal, Forthcoming*

*University of Georgia School of Law Legal Studies Research Paper No. 2021-06*

66 Pages
Posted: 10 Apr 2021
Last revised: 24 Jan 2022

Lindsey Simon
University of Georgia School of Law

Date Written: April 1, 2021

## Abstract

Grifters take advantage of situations, latching on to others for benefits they do not deserve. Bankruptcy has many desirable benefits, especially for mass-tort defendants. Bankruptcy provides a centralized proceeding for resolving claims and a forum of last resort for many companies to aggregate and resolve mass-tort liability. For the debtor-defendant, this makes sense. A bankruptcy court's tremendous power represents a well-considered balance between debtors who have a limited amount of money and many claimants seeking payment.

But courts have also allowed the Bankruptcy Code's mechanisms to be used by solvent, nondebtor companies and individuals facing mass-litigation exposure. These "bankruptcy grifters" act as parasites, receiving many of the substantive and procedural benefits of a host bankruptcy, but incurring only a fraction of the associated burdens. In exchange for the protections of bankruptcy, a debtor incurs the reputational cost and substantial scrutiny mandated by the bankruptcy process. Bankruptcy grifters do not. This dynamic has become evident in a number of recent, high-profile bankruptcies filed in the wake of pending mass-tort litigation, such as the Purdue Pharma and USA Gymnastics cases.

This Article is the first to call attention to the growing prevalence of bankruptcy grifters in mass-tort cases. By charting the progression of nondebtor relief from asbestos and product-liability bankruptcies to cases arising out of the opioid epidemic and sex-abuse scandals, this Article explains how courts allowed piecemeal expansion to fundamentally change the scope of bankruptcy protections. This Article proposes specific procedural and substantive safeguards that would deter bankruptcy-grifter opportunism and increase transparency, thereby protecting victims as well as the bankruptcy process.

**Keywords:** bankruptcy, mass torts, Chapter 11, channeling injunction, third-party release, non-debtor release, Section 524(g), asbestos bankruptcy, aggregate litigation, multidistrict litigation, civil procedure, opioid crisis, sex abuse litigation, Purdue Pharma, USA Gymnastics, Boy Scouts of America

**JEL Classification:** K20, K41

Suggested Citation

entered on April 6, 2020, the Debtors are authorized to pay the amount indicated below without any further Court order.

| (1) Total Fees Requested | (2) Total Expenses Requested | (3) 80% of Requested Fees | Total Debtors are Authorized to Pay ( (2) + (3) ) |
|---|---|---|---|
| $4,723,028.50 | $104,397.84 | $3,778,422.80 | $3,882,820.64 |

WHEREFORE, White & Case respectfully requests that the Application be approved.

Dated: March 29, 2022
        New York, New York

**WHITE & CASE LLP**

*/s/ Jessica C. Lauria*

Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: jessica.lauria@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: mandolina@whitecase.com
        mlinder@whitecase.com
        laura.baccash@whitecase.com
        blair.warner@whitecase.com

ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION

2

Next

## Automatic reply: Delaware U.S. Attorney Criminal Referral Request For Federal Chapter 11 Public Corruption , Crimes Against Children, Obstruction Of Justice, Debtor & Creditor Attorney Fee Misappropriation Fraud, and Grand Jury Subpoena Opening NDA's &...

Received: **Wednesday, July 7, 2021 1:30 PM**

From: **USTP Bankruptcy Fraud USTP.Bankruptcy.Fraud@usdoj.gov**

To: **MRCTLR mrctlr@protonmail.com**

Please be advised that it is U.S. Department of Justice policy that criminal investigations may not be disclosed. Therefore, the USTP will neither confirm nor deny whether a matter may have been referred or whether it may or may not be under investigation.  This means that you will only be contacted if it is necessary to obtain further information; otherwise, the USTP will not respond to your hotline submission.

# WHAT DOES A FELONY LOOK LIKE?

Debtor __Boy Scouts of America__          Case number(*if known*)_____
        Name

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☒ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

**Request for Relief, Declaration, and Signatures**

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct

Executed on ____02/18/2020____
          MM / DD / YYYY

✗ _____          _____Steven P. McGowan_____
Signature of authorized representative of debtor          Printed name

Title _Secretary and General Counsel_

**18. Signature of attorney**

✗ _____          Date ____02/18/2020____
Signature of attorney for debtor          MM / DD / YYYY

Derek C. Abbott          Jessica C.K. Boelter
Printed name

Morris, Nichols, Arsht & Tunnell LLP          Sidley Austin LLP
Firm name

1201 North Market Street          787 Seventh Avenue
Address

Wilmington, DE 19899          New York, NY 10019
City/State/ZIP

(302) 351-9314          (212) 839-5300
Contact phone

dabbott@mnat.com          jboelter@sidley.com
Email Address

3376 (DE)          5657580 (NY)
Bar number          Bar number

Official Form 201          Voluntary Petition for Non-Individuals Filing for Bankruptcy          page 4

<table>
<tr><td>Fill in this information to identify the case:</td></tr>
</table>

Debtor name __Boy Scouts of America__

United States Bankruptcy Court for the __District of Delaware__
                                         (State)

Case number (if known) __20-__

Check if this is an
amended filing

The following is a list of the thirty (30) largest known creditors potentially holding unsecured claims against Boy Scouts of America and Delaware BSA, LLC (collectively, the "Debtors") other than holders of abuse claims (the "Consolidated Top 30 List"). Concurrently with the filing of their petitions, the Debtors have filed a motion seeking authority to file this Consolidated Top 30 List, along with a list of the twenty-five (25) law firms representing the largest numbers of holders of abuse claims against the Debtors, in lieu of a list of the twenty (20) largest unsecured creditors for each of Boy Scouts of America and Delaware BSA, LLC.

The Consolidated Top 30 List reflects estimated amounts owed by the Debtors as of the Petition Date. It was produced from the books and records of the Debtors as of the close of business on February 17, 2020. The Consolidated Top 30 List does not include any person or entity who is now, or formerly was, an "insider" of the Debtors as that term is defined in 11 U.S.C. § 101(31). The information contained herein shall not constitute an admission of liability by, nor is it binding on, the Debtors. Moreover, nothing herein shall affect the Debtors' right to challenge the amount or characterization of any claim at a later date. The Debtors' failure to list a claim as contingent, unliquidated or disputed does not constitute a waiver of the Debtors' right to contest the validity, priority and/or amount of any such claim.

Official Form 204

# Chapter 11 or Chapter 9 Cases:  List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors, other than holders of abuse claims, holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code[1] | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim[2] If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1  Williams, Roy L. Address on File | PHONE: On File | Restoration Plan | Unliquidated | | | $2,386,986.12 |
| 2  Mazzuca, Robert J. Address on File | PHONE: On File | Deferred Compensation Restoration Plan | Unliquidated | | | $1,609,662.86 |
| 3  Brock, C. Wayne Address on File | PHONE: On File EMAIL: On File | Deferred Compensation Restoration Plan | Unliquidated | | | $1,140,755.43 |
| 4  Connelly, Kenneth L. Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | *INSIDER* | | $948,559.60 |
| 5  Hoover Jr., C. Michael Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | *INSIDER* | | $915,037.28 |
| 6  Ross II, David J. Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | *INSIDER* | | $904,795.26 |
| 7  NCS Pearson, Inc. 200 Old Tappan Road Old Tappan, NJ 07675 | ATTN: Bjarne Tellmann TITLE: General Counsel and Chief Legal Officer PHONE: 201-236-5416 EMAIL: bjarne.tellmann@pearson.com | Trade Payable | | | | $714,588.00 |

[1] To protect the identities and/or personal contact information of certain individuals listed hereon, the Debtors have redacted such information from this list. The Debtors are providing an unredacted version of this list to the Court and the Office of the United States Trustee.
[2] Amounts related to Restoration Plan are based on a preliminary actuarial determination.

**SCHEDULE R**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

# Related Organizations and Unrelated Partnerships

▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 33, 34, 35b, 36, or 37.
▶ Attach to Form 990.
▶ Go to www.irs.gov/Form990 for instructions and the latest information.

OMB No. 1545-0047

## 2020

Open to Public Inspection

Name of the organization

BOY SCOUTS OF AMERICA (Debtor in Possession)

Employer identification number

22-1576300

## Part I   Identification of Disregarded Entities. Complete if the organization answered "Yes" on Form 990, Part IV, line 33.

| (a) Name, address, and EIN (if applicable) of disregarded entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Total income | (e) End-of-year assets | (f) Direct controlling entity |
|---|---|---|---|---|---|
| **(1)** BSA Asset Management LLC (26-2473220) 1325 West Walnut Hill Lane, Irving, TX 75038-3008 | General Partner/Investments | DE | 0 | 0 | N/A |
| **(2)** Atikokan Youth Ventures Inc PO Box 509, Ely, MN 55731 | High Adventure Base operation | Canada | 2,656 | 0 | N/A |
| **(3)** Atikaki Youth Ventures Inc PO Box 509, Ely, MN 55731 | High Adventure Base operation | Canada | 4,000 | 0 | N/A |
| **(4)** Association of Baptists for Scouting (74-6061216) 1325 West Walnut Hill Lane, Irving, TX 75038 | Scouting | TX | 29,795 | 419,507 | N/A |
| **(5)** Delaware BSA LLC (84-2764311) 1325 West Walnut Hill Lane, Irving, TX 75038 | Scouting | DE | 0 | 9,793 | N/A |
| **(6)** Texas BSA LLC (84-2782520) 1325 West Walnut Hill Lane, Irving, TX 75038 | Scouting | TX | 0 | 9,793 | N/A |

## Part II   Identification of Related Tax-Exempt Organizations. Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related tax-exempt organizations during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Exempt Code section | (e) Public charity status (if section 501(c)(3)) | (f) Direct controlling entity | (g) Section 512(b)(13) controlled entity? Yes | No |
|---|---|---|---|---|---|---|---|
| **(1)** Learning for Life (75-2396057) 1329 West Walnut Hill Lane, Irving, TX 75038 | Youth development. | DC | 501(c)(3) | 10 | N/A | | ✔ |
| **(2)** National Boy Scouts of America Foundation (75-2675978) 1325 West Walnut Hill Lane, Irving, TX 75038-3008 | Support Scouting | DC | 501(c)(3) | 7 | N/A | | ✔ |
| **(3)** Learning for Life Foundation. (26-2270709) 1329 West Walnut Hill Lane, Irving, TX 75038 | Support Learning for Life programs | TX | 501(c)(3) | 7 | Learning for Life | | ✔ |
| **(4)** Scout Executives Alliance (22-6069455) PO Box 152079, Irving, TX 75015-2079 | Support Scouts' employees | TX | 501(c)(9) | | N/A | ✔ | |
| **(5)** Boy Scouts of America Employee Welfare Benefits Plan (75-2347 P O Box 152079, Irving, TX 75015-2079 | Welfare Benefits Plan | TX | 501(c)(9) | | N/A | ✔ | |
| **(6)** Arrow WV Inc (27-0441319) 1325 West Walnut Hill Lane, Irving, TX 75038-3008 | Develop program & facility for Boy Scouts | WV | 501(c)(3) | 7 | Boy Scouts of America | ✔ | |
| **(7)** (Continued on Schedule R, Part VII, Statement 1) | | | | | | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 990.

Cat. No. 50135Y

Schedule R (Form 990) 2020

**Crimes against humanity** are certain acts that are purposefully committed as part of a widespread or systematic policy, directed against civilians, in times of war or peace. They differ from war crimes because they are not isolated acts committed by individual soldiers but are acts committed in furtherance of a state or organizational policy.[1] The first prosecution for crimes against humanity took place at the Nuremberg trials. Initially being considered for legal use, widely in International Law, following the Holocaust a global standard of human rights was articulated in the Universal Declaration of Human Rights (1948). Political groups or states that violate or incite violation of human rights norms, as found in the Declaration, are an expression of the political pathologies associated with crimes against humanity.

Crimes against humanity have since been prosecuted by other international courts (for example, the International Criminal Tribunal for the former Yugoslavia, the International Criminal Tribunal for Rwanda and the International Criminal Court) as well as in domestic prosecutions. The law of crimes against humanity has primarily developed through the evolution of customary international law. Crimes against humanity are not codified in an international convention, although there is currently an international effort to establish such a treaty, led by the Crimes Against Humanity Initiative.

Unlike war crimes, crimes against humanity can be committed during peace or war.[2] They are not isolated or sporadic events but are part either of a government policy (although the perpetrators need not identify themselves with this policy) or of a wide practice of atrocities tolerated or condoned by a government or a *de facto* authority. War crimes, murder, massacres, dehumanization, genocide, ethnic cleansing, deportations, unethical human experimentation, extrajudicial punishments including summary executions, use of weapons of mass destruction, state terrorism or state sponsoring of terrorism, death squads, kidnappings and forced disappearances, use of child soldiers, unjust imprisonment, enslavement, torture, rape, political repression, racial discrimination, religious persecution and other human rights abuses may reach the threshold of crimes against humanity if they are part of a widespread or systematic practice.





# WARNING -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

11. Declaration and Signature of Authorized Representative of Debtor

1a. Signature of Attorney

Official Form 201

The Debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition. I have been authorized to file this petition on behalf of the debtor. I have examined the information in this petition and have a reasonable belief that the information is true and correct.

**I declare under penalty of perjury that the foregoing is true and correct.**

**Executed on 02/18/2020**



## Derek C. Abbott (BSA Debtor Attorney)

## Morris. Nichols. Arsht & Tunnell LLP

1201 North Market Street Address Wilmington. DE 19899 (302) 351-9314

dabbott.@mnat.com

3376 /DE Bar number

## Steven P. McGowan (BSA Secretary and General Counsel)

Date 02/18/2020

## Jessica C.K. Boelter (BSA Debtor Attorney

Sidley Austin LLP

787 Seventh Avenue New York. NY 10019

(212) 839-5300

jboelter@sidley.com

5657580 (NY) Bar number

LII > U.S. Code > Title 18 > PART I > CHAPTER 9 > **§ 156**

# 18 U.S. Code § 156 - Knowing disregard of bankruptcy law or rule

U.S. Code    Notes



**(a) DEFINITIONS.—**In this section—

**(1)** the term "bankruptcy petition preparer" means a person, other than the debtor's attorney or an employee of such an attorney, who prepares for compensation a document for filing; and

**(2)** the term "document for filing" means a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under title 11.

**(b) OFFENSE.—**

If a bankruptcy case or related proceeding is dismissed because of a knowing attempt by a bankruptcy petition preparer in any manner to disregard the requirements of title 11, United States Code, or the Federal Rules of Bankruptcy Procedure, the bankruptcy petition preparer shall be fined under this title, imprisoned not more than 1 year, or both.

(Added Pub. L. 103–394, title III, § 312(a)(1)(B), Oct. 22, 1994, 108 Stat. 4140; amended Pub. L. 109–8, title XII, § 1220, Apr. 20, 2005, 119 Stat. 195.)

# EXHIBIT

# 4

**THIS IS WHAT DELAWARE FEDERAL BANKRUPTCY FRAUD AND GROSS NEGLIGENCE LOOKS LIKE...**

**THE WHITE & CASE / MORRIS NICHOLS FAILED "MASS TORT" PRE-PETITION DEBTOR RUNAWAY TRAIN MODEL IS ON GLOBAL DISPLAY.**

**STARTING OFF DAY ONE WITH SEVERAL FALSE ATTESTATIONS. RUNNING THRU FEDERAL LAW RAIL CROSSINGS, ETHICS, MORALITY PROFESSIONAL CONDUCT PERJURY RULES.**

**DISREGARDING PUBLIC TRUST AND INSTITUTIONAL LIABILITY SAFETY STOPS, UNDER FULL JUDICIAL POWER. "THE BOY SCOUTS OF AMERICA LOCOMOTIVE SCOUTING ABUSE MORAL HAZARD COASTER," THAT NO ONE WILL STOP...**

**WHY?**

entered on April 6, 2020, the Debtors are authorized to pay the amount indicated below without any further Court order.

| (1) Total Fees Requested | (2) Total Expenses Requested | (3) 80% of Requested Fees | Total Debtors are Authorized to Pay ( (2) + (3) ) |
|---|---|---|---|
| $3,606,425.00 | $85,894.09 | $2,885,140.00 | $2,971,034.09 |

WHEREFORE, White & Case respectfully requests that the Application be approved.

Dated:  April 1, 2022
       New York, New York

**WHITE & CASE LLP**

*/s/ Jessica C. Lauria*

Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: jessica.lauria@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: mandolina@whitecase.com
       mlinder@whitecase.com
       laura.baccash@whitecase.com
       blair.warner@whitecase.com

ATTORNEYS FOR THE DEBTORS AND DEBTORS
IN POSSESSION

**SUMMARY OF PRIOR PAYMENTS & OUTSTANDING AMOUNTS
DUE OMNI AGENT SOLUTIONS FOR THE FIRST INTERIM PERIOD**

| | |
|---|---|
| Total Allowed Compensation Paid to Date for the First Interim Period: | $280,256.80 |
| Total Allowed Expenses Paid to Date for the First Interim Period: | $0.00 |
| Total Amount of Fees and Expenses Due & Owing for the First Interim Period: | $266,198.70 |

This is a(n): __ Monthly Application _X_ Interim Application ___ Final Application

**SUMMARY OF MONTHLY FEE APPLICATIONS
FOR THE FIRST INTERIM PERIOD
FEBRUARY 1, 2021 THROUGH OCTOBER 31, 2021**

| Date Filed/Dkt. No. | Period | Requested Fees | Requested Expenses | Paid Fees | Paid Expenses | CNO Date/ Dkt. No. | Amount Outstanding |
|---|---|---|---|---|---|---|---|
| 5/11/21 #3588 | 2/1/21 - 3/31/21 | $71,612.00 | $0.00 | $57,289.60 | $0.00 | 7/12/21 #5544 | $14,322.40 |
| 8/31/21 #6143 | 4/1/21 - 7/31/21 | $278,709.00 | $0.00 | $222,967.20 | $0.00 | 9/17/21 #6272 | $55,741.80 |
| 11/23/21 #7416 | 8/1/21 - 10/31/21 | $196,134.50 | $0.00 | $0.00 | $0.00 | 12/22/21 #7933 | $196,134.50 |
| | TOTALS | $546,455.50 | $0.00 | $280,256.80 | $0.00 | | $266,198.70 |

2

| Information to identify the case: | | |
|---|---|---|
| Debtor **Boy Scouts of America**<br>Name | EIN    22-1576300 | |
| United States Bankruptcy Court    **District of Delaware**<br>Case number: 20-10343 (LSS) | Date case filed in chapter 11    02/18/2020<br>MM / DD / YYYY<br><br>Date case converted to chapter | |

## Official Form 309F (For Corporations or Partnerships)

# Notice of Chapter 11 Bankruptcy Case

12/17

**For the debtor listed above and each of the debtors listed below under "Jointly Administered Cases", a case has been filed under chapter 11 of the Bankruptcy Code. An order for relief has been entered.**

**This notice has important information about the case for creditors, debtors, and trustees, including information about the meeting of creditors and deadlines. Read both pages carefully.**

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtor or the debtor's property. For example, while the stay is in effect, creditors cannot sue, assert a deficiency, repossess property, or otherwise try to collect from the debtor. Creditors cannot demand repayment from the debtor by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees.

Confirmation of a chapter 11 plan may result in a discharge of debt. A creditor who wants to have a particular debt excepted from discharge may be required to file a complaint in the bankruptcy clerk's office within the deadline specified in this notice. (See line 11 below for more information.)

To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at www.pacer.gov) or at the website maintained by the Debtors' claims and noticing agent, Omni Agent Solutions, at www.omniagentsolutions.com/bsa or www.OfficialBSAclaims.com.

**The staff of the bankruptcy clerk's office cannot give legal advice.**

**Do not file this notice with any proof of claim or other filing in the case.**

**Valid Picture ID is required for access to the J. Caleb Boggs Federal Building. Additionally, Debtor(s) must also present photo ID plus original verification of his/her social security number to the Bankruptcy Trustee. If you do not have a photo ID and/or original verification of your social security number, please contact the Office of the United States Trustee's (302-573-6491).**

| 1. | **Debtor's full name** | Boy Scouts of America | | |
|---|---|---|---|---|
| 2. | **All other names used in the last 8 years** | BSA | | |
| | **Jointly Administered Cases**    Delaware BSA, LLC | | **Case No.** 20-10342 (LSS) | **Tax ID.** 84-2764311 |
| 3. | **Address** | 1325 West Walnut Hill Lane<br>Irving, TX 75038 | | |
| 4. | **Debtor's attorneys** | SIDLEY AUSTIN LLP<br>Jessica C. K. Boelter<br>787 Seventh Avenue<br>New York, New York 10019<br><br>-and-<br><br>James F. Conlan<br>Thomas A. Labuda<br>Michael C. Andolina<br>Matthew E. Linder<br>One South Dearborn Street<br>Chicago, Illinois 60603 | Telephone: (212) 839-5300<br>Email: jboelter@sidley.com<br><br><br><br>Telephone: (312) 853-7000<br>Email: jconlan@sidley.com<br>tlabuda@sidley.com<br>mandolina@sidley.com<br>mlinder@sidley.com | MORRIS, NICHOLS, ARSHT & TUNNELL LLP    Telephone: (302) 351-9314<br>Derek C. Abbott (No. 3376)    Email: dabbott@mnat.com<br>Andrew R. Remming (No. 5120)    aremming@mnat.com<br>Joseph C. Barsalona II (No. 6102)    jbarsalona@mnat.com<br>Paige N. Topper (No. 6470)    ptopper@mnat.com<br>Eric Moats (No. 6441)    emoats@mnat.com<br>1201 North Market Street, 16th Floor P.O.<br>Box 1347<br>Wilmington, Delaware 19899-1347 |
| | | Debtors' Claims and Noticing Agent:<br>If you have questions about this notice,<br>please contact Omni Agent Solutions | Telephone (toll-free): 866-907-2721<br>Email: BSAInquiries@omniagnt.com<br>Website: www.omniagentsolutions.com/bsa<br>or www.OfficialBSAclaims.com | |

| 5. | **Bankruptcy clerk's office** | | |
|---|---|---|---|
| | Documents in this case may be filed at this address. You may inspect all records filed in this case at this office or online at www.pacer.gov. | 824 Market Street, 3rd Floor Wilmington, DE 19801 | Hours open: Monday – Friday 8:00 AM – 4:00 PM Contact phone 302-252-2900 |

| 6. | **Meeting of creditors** | | |
|---|---|---|---|
| | The debtor's representative must attend the meeting to be questioned under oath. Creditors may attend, but are not required to do so. | April 15, 2020 at 1:00 p.m. (ET) The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket. | Location: **J. Caleb Boggs Federal Building 844 King Street, Room 3209 Wilmington, DE 19801** |

| 7. | **Proof of claim deadline** | Deadline for filing proof of claim: Not yet set. If a deadline is set, the court will send you another notice. | For a governmental unit: Not yet set. If a deadline is set, the court will send you another notice. |
|---|---|---|---|
| | | A proof of claim is a signed statement describing a creditor's claim. A proof of claim form may be filed either electronically or as a paper document. For more information on how to file a Proof of Claim, visit the Delaware Bankruptcy Court's website at http://www.deb.uscourts.gov/claims-information. Your claim will be allowed in the amount scheduled unless: • your claim is designated as *disputed, contingent,* or *unliquidated;* • you file a proof of claim in a different amount; or • you receive another notice. If your claim is not scheduled or if your claim is designated as *disputed, contingent,* or *unliquidated,* you must file a proof of claim or you might not be paid on your claim and you might be unable to vote on a plan. You may file a proof of claim even if your claim is scheduled. You may review the schedules at the bankruptcy clerk's office or online at www.pacer.gov. Secured creditors retain rights in their collateral regardless of whether they file a proof of claim. Filing a proof of claim submits a creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain. For example, a secured creditor who files a proof of claim may surrender important nonmonetary rights, including the right to a jury trial. | |

| 8. | **Exception to discharge Deadline** | | |
|---|---|---|---|
| | The bankruptcy clerk's office must receive a complaint and any required filing fee by the following deadline. | If § 523(c) applies to your claim and you seek to have it excepted from discharge, you must start a judicial proceeding by filing a complaint by the deadline stated below. **Deadline for filing the complaint:** ___June 15, 2020___ | |

| 9. | **Creditors with a foreign address** | | |
|---|---|---|---|
| | | If you are a creditor receiving notice mailed to a foreign address, you may file a motion asking the court to extend the deadlines in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case. | |

| 10. | **Filing a Chapter 11 bankruptcy case** | | |
|---|---|---|---|
| | | Chapter 11 allows debtors to reorganize or liquidate according to a plan. A plan is not effective unless the court confirms it. You may receive a copy of the plan and a disclosure statement telling you about the plan, and you may have the opportunity to vote on the plan. You will receive notice of the date of the confirmation hearing, and you may object to confirmation of the plan and attend the confirmation hearing. Unless a trustee is serving, the debtor will remain in possession of the property and may continue to operate its business. | |

| 11. | **Discharge of debts** | | |
|---|---|---|---|
| | | Confirmation of a chapter 11 plan may result in a discharge of debts, which may include all or part of your debt. See 11 U.S.C. § 1141(d). A discharge means that creditors may never try to collect the debt from the debtor except as provided in the plan. If you want to have a particular debt owed to you excepted from the discharge and § 523(c) applies to your claim, you must start a judicial proceeding by filing a complaint and paying the filing fee in the bankruptcy clerk's office by the deadline. | |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Hearing Date:<br>TBD<br>Objection Deadline:<br>March 31, 2022 at 4:00 p.m. (ET) |

**FIRST INTERIM FEE APPLICATION OF OMNI AGENT SOLUTIONS,**
**ADMINISTRATIVE AGENT FOR THE DEBTORS AND DEBTORS IN**
**POSSESSION, FOR ALLOWANCE OF COMPENSATION AND**
**REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM FEBRUARY 1,**
**2021 TO AND INCLUDING OCTOBER 31, 2021**

| | |
|---|---|
| **Name of Applicant:** | **OMNI AGENT SOLUTIONS** |
| **Applicant's role in case:** | **Administrative Agent to Debtors and Debtors in Possession** |
| **Date of retention order:** | **April 8, 2020** |
| **Time period covered by this Application:** | **February 1, 2021 through and including October 31, 2021** |
| **Total fees requested in this Application:** | **$546,455.50** |
| **Total expenses requested in this Application:** | **$0.00** |
| **Total fees and expenses requested in this Application:** | **$546,455.50** |
| **Blended hourly rate for fees incurred during the First Interim Period:** | **$133.59** |

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MAXUS ENERGY CORPORATION, *et al.*,<br><br>　　　　　　Debtors. | Chapter 11<br><br>Case No. 16-11501 (CSS)<br>(Jointly Administered) |
| MAXUS LIQUIDATING TRUST,<br><br>　　　　　Plaintiff,<br><br>　　-against-<br><br>YPF S.A., YPF INTERNATIONAL S.A.,<br>YPF HOLDINGS, INC., CLH HOLDINGS,<br>INC., REPSOL, S.A., REPSOL<br>EXPLORACIÓN, S.A., REPSOL USA<br>HOLDINGS CORP., REPSOL E&P USA,<br>INC., REPSOL OFFSHORE E&P USA,<br>INC., REPSOL E&P T&T LIMITED, and<br>REPSOL SERVICES CO.,<br><br>　　　　　Defendants. | Adv. Proc. No. 18-50489 (CSS) |

DECLARATION OF W. BRADLEY WENDEL

I, W. Bradley Wendel, pursuant to 28 U.S.C. § 1746, declare as follows:

<u>Introduction</u>

1.　　　　I have been retained by counsel for YPF, S.A., YPF Holdings, Inc., YPF

International S.A., and CLH Holdings, Inc. ("YPF"), to render an opinion regarding the

compliance with professional ethical duties of attorney Jessica C.K. Boelter and the law firm

White & Case LLP ("White & Case"). The conduct relates primarily to the lateral move by Ms.

Boelter from Sidley Austin LLP ("Sidley"), counsel for YPF in the matter of *The Maxus

Liquidating Trust v. YPF S.A. et al*, Case No. 18-ap-50489 (CSS) (Bankr. D. Del.) ("Maxus

1

# W. Bradley Wendel
## *Edwin H. Woodruff Professor of Law*

108 Myron Taylor Hall

Cornell Law School

Ithaca, New York 14853

(607) 255-9719

Email: wbw9@cornell.edu

SSRN Author Page: http://ssrn.com/author=247191

## EMPLOYMENT

**Cornell Law School**, Ithaca, New York.
Associate Dean for Academic Affairs, 2017-2020.
Professor of Law, 2006-2020.
Associate Professor of Law, 2004-06.

> *Regular Courses:* Professional Responsibility; Torts; Advanced Torts; Products Liability; Business Ethics (in the Cornell Law School M.S.L.S. program).

> *Occasional Courses:* Ethical Issues in Civil Litigation; Philosophical Perspectives on Legal Ethics (seminar); Ethics and Corporate Culture (co-taught behavioral ethics course for JD and MBA students); Jurisprudence/Philosophy of Law.

**Washington and Lee University School of Law**, Lexington, Virginia.
Associate Professor of Law, 2003-04.
Assistant Professor of Law, 1999-2003.

**Columbia University School of Law**, New York, New York.
Associate in Law, 1997-99.

**U.S. Court of Appeals for the Ninth Circuit,**
**Honorable Andrew J. Kleinfeld,** Fairbanks, Alaska.
Judicial Clerk, 1996-97.

**Bogle & Gates**, Seattle, Washington.
Product Liability Litigation Associate, 1994-96.

Admitted to practice in Washington State, 1994; New York, 2011.
Currently on active status in New York and inactive in Washington.

## EDUCATION

**Columbia University School of Law**, New York, New York.
J.S.D. 2002, LL.M. 1998. Concentration: Legal Philosophy.
Advisors: Jeremy Waldron, Kent Greenawalt, Bill Sage

**Duke University School of Law**, Durham, North Carolina.

W. Bradley Wendel
Page 2

J.D. with Honors 1994.

**Rice University,** Houston, Texas.
B.A. in Philosophy 1991.

PUBLICATIONS

**Books: As Author**

Ethics and the Law: An Introduction (Cambridge University Press 2014).

Lawyers and Fidelity to Law. (Princeton University Press 2010).

>    Paperback edition published 2012; Chinese translation by Prof. Chao Yin published in 2013
>    by China Renmin University Press.

Professional Responsibility: Examples and Explanations. (Wolters Kluwer, 6th ed., 2019).

**Books: As Editor**

Torts: Cases and Materials (with Aaron Twerski and James A. Henderson, Jr.) (Wolters Kluwer, 5th
ed., 2020).

The Law and Ethics of Lawyering (with Geoffrey C. Hazard, Jr., Susan P. Koniak, Roger C.
Cramton, and George M. Cohen) (Foundation Press, 6th ed., 2017).

Legal Ethics: Professional Ethics and Personal Integrity (with Tim Dare) (Cambridge Scholars Press
2010).

The Law Governing Lawyers: National Rules, Standards, and Statutes (with Susan R. Martyn and
Lawrence J. Fox) (Wolters Kluwer 2005, with annual updates through 2019-20).

**Articles and Book Chapters**

*Community, Narrative, and Virtue in Legal Ethics: Tom Shaffer's* American Lawyers and Their
Communities, in Leading Works in Legal Ethics (Julian Webb, ed.. Routledge 2021) (forthcoming).

*Fiduciary Law,* in Oxford Handbook of New Private Law at pp. 309-323 (Andrew S. Gold, John C.P.
Goldberg, Daniel B. Kelly, Emily Sherwin, and Henry E. Smith, eds., 2021).

*Should Lawyers Be Loyalty to Clients, the Law, or Both?,* 65 American Journal of Jurisprudence 19 (2020).

*Crossing the Bridge,* in Tim Dare & Christine Swanton, eds., Perspectives in Role Ethics: Virtues,
Reasons, and Obligation (Routledge 2020).

## CERTIFICATION BY COUNSEL TO BE ADMITTED *PRO HAC VICE*

Pursuant to Local Rule 9010-1, I certify that I am eligible for admission to this Court, am admitted, practicing and in good standing as a member of the Bar in the State of Illinois and submit to the disciplinary jurisdiction of this Court for any alleged misconduct which occurs in the preparation or course of this action. I also certify that I am generally familiar with this Court's Local Rules and with Standing Order for District Court Fund revised 8/31/16. I further certify that the annual fee of $25.00 has been paid to the Clerk of Court for District Court.

Dated: August 10, 2018

/s/ Jessica C. Knowles Boelter
Jessica C. Knowles Boelter
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
Email: jboelter@sidley.com

## ORDER GRANTING MOTION

IT IS HEREBY ORDERED that counsel's motion for admission *pro hac vice* is granted.

{1108.001-W0052047.}

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>Debtors. | Chapter 11<br><br>Case No. Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

### MOTION AND ORDER FOR ADMISSION *PRO HAC VICE*

Pursuant to Local Rule 9010-1 and the attached certification, counsel moves the admission *pro hac vice* of Jessica C. K. Boelter of White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020-1095 to represent the Debtors, in the above-captioned case and any related proceedings.

Dated: October 16, 2020
      Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Eric W. Moats*
Eric W. Moats (No. 6441)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1348
Telephone: (302) 658-9200

### CERTIFICATION BY COUNSEL TO BE ADMITTED *PRO HAC VICE*

Pursuant to Local Rule 9010-1, I certify that I am eligible for admission to this Court, and am admitted, practicing, and in good standing as a member of the Bar of the States of Illinois and New York. I submit to the disciplinary jurisdiction of this Court for any alleged misconduct which occurs in the preparation or course of this action. I also certify that I am generally familiar with this Court's Local Rules and with the Standing Order for District Court Fund revised 8/31/16. I further certify that the annual fee of $25.00 has been paid to the Clerk of Court for District Court.

Dated: October 16, 2020

*/s/ Jessica C. K. Boelter*
Jessica C. K. Boelter
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020-1095
Telephone: (212) 819-8200
Email: jessica.boelter@whitecase.com

### ORDER GRANTING MOTION

IT IS HEREBY ORDERED that counsel's motion for admission *pro hac vice* is granted.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MAXUS ENERGY CORPORATION, *et al.*, | Case No. 16-11501 (CSS) |
| Debtors.[1] | (Jointly Administered) |
| | |
| MAXUS LIQUIDATING TRUST, | |
| Plaintiff, | |
| v. | Adv. Proc. No. 18-50489 (CSS) |
| YPF S.A., YPF INTERNATIONAL S.A., YPF HOLDINGS, INC., CLH HOLDINGS, INC., REPSOL, S.A., REPSOL EXPLORACIÓN, S.A., REPSOL USA HOLDINGS CORP., REPSOL E&P USA, INC., REPSOL OFFSHORE E&P USA, INC., REPSOL E&P T&T LIMITED, and REPSOL SERVICES CO., | |
| Defendants. | |

## MOTION AND ORDER FOR ADMISSION *PRO HAC VICE*

Pursuant to Local Rule 9010-1 and the attached certification, counsel moves the admission *pro hac vice* of Jessica C. Knowles Boelter, Esquire of Sidley Austin LLP to represent YPF S.A., YPF International S.A., YPF Holdings, Inc. and CLH Holdings, Inc. in the above-captioned cases.

Dated: August 10, 2018
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Matthew B. McGuire, (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: mcguire@lrclaw.com

---

[1] The Debtors in the above-captioned Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Maxus Energy Corporation (1531), Tierra Solutions, Inc. (0498), Maxus International Energy Company (7260), Maxus (U.S.) Exploration Company (2439), and Gateway Coal Company (7425). The address of each of the Debtors is 10333 Richmond Avenue, Suite 1050, Houston, Texas 77042.

{1108.001-W0052047.}

[EXTERNAL MESSAGE]

I'm available next 40 minutes if we need the webex. More flexible if just a dial in.

Brian

Brian Whittman
Managing Director
Alvarez & Marsal North America LLC
540 W Madison St, Suite 1800
Chicago IL 60661
Direct: +1 312 601 4227
Mobile: +1 312 952 2991
www.alvarezandmarsal.com

**LinkedIn | Facebook | Twitter**

**From:** Andolina, Michael C. <mandolina@sidley.com>
**Sent:** Thursday, October 31, 2019 2:50 PM
**To:** Williams, Catherine <Catherine.Williams@Chubb.com>; Svirsky, Gary <gsvirsky@omm.com>; Boelter, Jessica C.K. <jboelter@sidley.com>; Whittman, Brian <BWhittman@alvarezandmarsal.com>; Ernest Martin <Ernest.Martin@haynesboone.com>
**Cc:** Schiavoni, Tancred <tschiavoni@omm.com>; Wadley, Chris <cwadley@walkerwilcox.com>; Celentano, Christopher <Christopher.Celentano@Chubb.com>
**Subject:** RE: BSA

[EXTERNAL EMAIL]

Copying the rest of the group to see if there is a time that works for all. Do you need to see Brian's Webex as well or can we just do a call?

**MICHAEL C. ANDOLINA**

**SIDLEY AUSTIN LLP**
+1 312 853 2228 (O)
+1 773 531 0712 (M)
mandolina@sidley.com

**From:** Williams, Catherine <Catherine.Williams@Chubb.com>
**Date:** Thursday, Oct 31, 2019, 3:47 PM
**To:** Svirsky, Gary <gsvirsky@omm.com>, Andolina, Michael C. <mandolina@sidley.com>, Boelter, Jessica C.K. <jboelter@sidley.com>
**Cc:** Schiavoni, Tancred <tschiavoni@omm.com>, Wadley, Chris <cwadley@walkerwilcox.com>, Celentano, Christopher <Christopher.Celentano@Chubb.com>
**Subject:** RE: BSA

I also tried to ask a call and was muted. I sent a message on the chat link to Jessica asking her a question in response to one of her comments. Thanks

**Catherine M. "Shelly" Williams**
Assistant Vice President, Long Term Exposure

10 Exchange Place, 9th Floor, Jersey City, New Jersey 07302, USA
O 201-479-6452 M 201-423-4730
E Catherine.Williams@chubb.com

Chubb. Insured

**From:** Svirsky, Gary [mailto:gsvirsky@omm.com]
**Sent:** Thursday, October 31, 2019 3:46 PM
**To:** Andolina, Michael C.; Boelter, Jessica C. Knowles (jboelter@sidley.com)
**Cc:** Schiavoni, Tancred; Wadley, Chris; Celentano, Christopher; Williams, Catherine
**Subject:** [EXTERNAL] BSA

Hi, Mike and Jessica. I walked into Tanc's office during the call and we had technical difficulties here: we tried to ask questions at the end but couldn't be heard. Would it be possible to reconvene later today or tomorrow? Sorry I don't have emails for the rest of the people on the call.

Thanks.

Gary

# O'Melveny

**Gary Svirsky**
gsvirsky@omm.com
1-212-326-4305

O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036
Website

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

This email (including any attachments) is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, and/or protected by the attorney-client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, printing, forwarding or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This e-mail is sent by a law firm and may contain information that is privileged or confidential.

**From:** Andolina, Michael C.
**Sent:** Thursday, October 31, 2019 3:04 PM
**To:** Schiavoni, Tancred <tschiavoni@omm.com>; Whittman, Brian <BWhittman@alvarezandmarsal.com>; Williams, Catherine <Catherine.Williams@Chubb.com>; Svirsky, Gary <gsvirsky@omm.com>; Boelter, Jessica C.K. <jboelter@sidley.com>; Ernest Martin <Ernest.Martin@haynesboone.com>
**Cc:** Wadley, Chris <cwadley@walkerwilcox.com>; Celentano, Christopher <Christopher.Celentano@Chubb.com>
**Subject:** RE: BSA

Pending Brian's response, all the folks on our end can do 1 pm ET tomorrow. Does that work for you?

**MICHAEL C. ANDOLINA**

**SIDLEY AUSTIN LLP**
+1 312 853 2228 (O)
+1 773 531 0712 (M)
mandolina@sidley.com

> **From:** Schiavoni, Tancred
> **Sent:** Thursday, October 31, 2019 3:02 PM
> **To:** Whittman, Brian ; Andolina, Michael C. ; Williams, Catherine ; Svirsky, Gary ; Boelter, Jessica C.K. ; Ernest Martin
> **Cc:** Wadley, Chris ; Celentano, Christopher
> **Subject:** RE: BSA
>
> Yes, when should we reconnect.
>
> **O'Melveny**
>
> **Tancred Schiavoni**
> tschiavoni@omm.com
> O: +1-212-326-2267
> ───────────────
> O'Melveny & Myers LLP
> Times Square Tower
> 7 Times Square
> New York, NY 10036
>
> *This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*
>
> **From:** Whittman, Brian <BWhittman@alvarezandmarsal.com>
> **Sent:** Thursday, October 31, 2019 3:53 PM
> **To:** Andolina, Michael C. <mandolina@sidley.com>; Williams, Catherine <Catherine.Williams@Chubb.com>; Svirsky, Gary <gsvirsky@omm.com>; Boelter, Jessica C.K. <jboelter@sidley.com>; Ernest Martin <Ernest.Martin@haynesboone.com>
> **Cc:** Schiavoni, Tancred <tschiavoni@omm.com>; Wadley, Chris <cwadley@walkerwilcox.com>; Celentano, Christopher <Christopher.Celentano@Chubb.com>
> **Subject:** RE: BSA

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | Jointly Administered |

**NOTICE OF WITHDRAWAL OF APPEARANCE AS COUNSEL AND REQUEST FOR
REMOVAL FROM ELECTRONIC AND PAPER NOTICING MATRIX**

PLEASE TAKE NOTICE that, pursuant to Rule 9010-2(b) of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware, Jessica Boelter, Michael Andolina, and Matthew E. Linder hereby withdraw as counsel

for the Debtors in the above-captioned cases. The undersigned further requests that the Clerk of

the United States Bankruptcy Court for the District of Delaware, or any claims or noticing agent

appointed in these cases, remove them from the electronic and paper noticing matrix for the

above-captioned cases.

All other current counsel of record will continue to represent the Debtors and are

not intended to be affected by this notice.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, TX 75038.

**From:** Conflictsscreens@sidley.com
**Sent:** Monday, November 4, 2019 5:13 PM
**To:**



**Cc:**
**Subject:** Screening Requirements for BSA Matters and CIC Matters (each as defined below)

As set forth below, the Firm is screening the members of the teams working separately on the following matters:
Defined name for first matter: "BSA Matters."
Formal client/matter name: Boy Scouts of America/All Matters.
Client-matter number:
Members of BSA Team:



Defined name for second matter: "CIC Matters."
Formal client/matter names: Century Indemnity Company/All Matters and The Chubb Corporation/All Matters.
Client/matter numbers:
Members of CIC Team:

The Firm represents Boy Scouts of America ("BSA") in connection with restructuring matters. These representations are referred to herein as the "BSA Matters."
The Firm also represents Century Indemnity Company ("CIC"), a Chubb affiliate, in connection with claims against certain reinsurers of CIC's primary policies with the Boy Scouts, and other, unrelated matters. These representations are referred to herein as the "CIC Matters."
Although Sidley does not represent the Boy Scouts with respect to insurance coverage issues, we believe it is prudent to establish a screen between the members of the two Teams who will be working separately on these matters.
The lawyers and paralegals currently assigned to the BSA Team include those listed above. Those lawyers and paralegals, together with any other lawyers and paralegals who work on the BSA Matters, are referred to herein as the "BSA Team."
The lawyers and paralegals currently assigned to the CIC Team include those listed above. Those lawyers and paralegals, together with any other lawyers and paralegals who work on the CIC Matters, are referred to herein as the "CIC Team."
By this email, the Firm is implementing a screen between the two Teams. Accordingly, you are hereby directed to comply with the following requirements:
• No member of the BSA Team shall work on the CIC Matters, and no member of the CIC Team shall work on the BSA Matters.
• No member of a Team shall (i) discuss the substance of such Team's Matter with any member of the other Team or (ii) disclose any confidential information about such Team's Matter to any member of the other Team.
• Each member of each Team shall take reasonable steps to ensure that the files and other materials relating to such Team's Matter will not be shared with the members of the other Team.
• No member of a Team shall obtain from any source within the Firm any confidential information relating to the other Team's Matter. For example, no member of a Team shall engage in discussions with any Firm personnel if such discussion could lead to the transmission to such member of confidential information relating to the other Team's Matter.

1

• Each member of each Team shall take reasonable steps to ensure that staff members do not share or communicate any substantive information or materials relating to one matter with those members of the Team working on the other matter.
• All communications about potential conflicts issues involving the matters subject to this screen should be directed to a member of the Committee on Professional Responsibility.

The partner-in-charge of the BSA Team is James Conlan and the partner-in-charge of the CIC Team is William Sneed. If a new member joins a Team, the partner-in-charge of the Team is hereby directed to cause the new member to comply with these screening procedures.
A violation of these screening requirements could result in serious consequences. Possible violations of a screen should be reported in accordance with the Firm's Responsibility Policy, which appears in the Lawyers' Manual and the Staff Manual.
The Records Center is hereby directed to handle the files for the Matters in a manner consistent with these screening procedures.
Members of the Committee on Legal Opinions and Audit Letters who review legal opinions or audit letters relating to the foregoing matters, but who do not work substantively on such opinions or letters, shall not thereby be deemed to be a member of either of the foregoing Teams. Such Committee Members have been advised to exercise appropriate caution to maintain the confidentiality of information contained in legal opinions or audit letters that they are asked to review in their capacity as Committee members.
If you have any questions about these requirements, members of the BSA Team should call James Conlan (ext. 36890), and members of the CIC Team should call William Sneed (ext. 37899). You can also reply to this email or reach out to the conflicts department at conflictsscreens@sidley.com.



Wall ID: 8692

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>Debtors. | Chapter 11<br><br>Case No. Case No. 20-10343 (LSS)<br><br>(Joint Administration Requested) |

### MOTION AND ORDER FOR ADMISSION *PRO HAC VICE*

Pursuant to Local Rule 9010-1 and the attached certification, counsel moves the admission *pro hac vice* of Jessica C. K. Boelter of Sidley Austin LLP, 787 Seventh Avenue, New York, NY 10019 to represent the Debtors, in the above-captioned case and any related proceedings.

Dated: February 18, 2020
Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Paige N. Topper*
Paige N. Topper (No. 6470)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1348
Telephone: (302) 658-9200

### CERTIFICATION BY COUNSEL TO BE ADMITTED *PRO HAC VICE*

Pursuant to Local Rule 9010-1, I certify that I am eligible for admission to this Court, and am admitted, practicing, and in good standing as a member of the Bar of the States of Illinois and New York. I submit to the disciplinary jurisdiction of this Court for any alleged misconduct which occurs in the preparation or course of this action. I also certify that I am generally familiar with this Court's Local Rules and with the Standing Order for District Court Fund effective 8/31/16. I further certify that the annual fee of $25.00 has been paid to the Clerk of Court for District Court.

Dated: February 18, 2020

*/s/ Jessica C.K. Boelter*
Jessica C. K. Boelter
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019
Telephone: (212)-839-5300
Facsimile: (212) 839-5599
jboelter@sidley.com

### ORDER GRANTING MOTION

IT IS HEREBY ORDERED that counsel's motion for admission *pro hac vice* is granted.

Dated: February 19th, 2020
Wilmington, Delaware

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>               Debtors. | Chapter 11<br><br>Case No. Case No. 20-10343 (LSS)<br><br>(Joint Administration Requested) |

### MOTION AND ORDER FOR ADMISSION *PRO HAC VICE*

Pursuant to Local Rule 9010-1 and the attached certification, counsel moves the admission *pro hac vice* of Jessica C. K. Boelter of Sidley Austin LLP, 787 Seventh Avenue, New York, NY 10019 to represent the Debtors, in the above-captioned case and any related proceedings.

Dated: February 18, 2020
      Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Paige N. Topper*
Paige N. Topper (No. 6470)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1348
Telephone: (302) 658-9200

### CERTIFICATION BY COUNSEL TO BE ADMITTED *PRO HAC VICE*

Pursuant to Local Rule 9010-1, I certify that I am eligible for admission to this Court, and am admitted, practicing, and in good standing as a member of the Bar of the States of Illinois and New York. I submit to the disciplinary jurisdiction of this Court for any alleged misconduct which occurs in the preparation or course of this action. I also certify that I am generally familiar with this Court's Local Rules and with the Standing Order for District Court Fund effective 8/31/16. I further certify that the annual fee of $25.00 has been paid to the Clerk of Court for District Court.

Dated: February 18, 2020

*/s/ Jessica C.K. Boelter*
Jessica C. K. Boelter
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019
Telephone: (212)-839-5300
Facsimile: (212) 839-5599
jboelter@sidley.com

### ORDER GRANTING MOTION

IT IS HEREBY ORDERED that counsel's motion for admission *pro hac vice* is granted.









**From:** Celentano, Christopher <Christopher.Celentano@Chubb.com>
**Sent:** Monday, November 25, 2019 6:30 PM
**To:** Andolina, Michael C. <mandolina@sidley.com>; Wadley, Chris (cwadley@walkerwilcox.com)
<cwadley@walkerwilcox.com>; Schiavoni, Tancred <tschiavoni@omm.com>
**Cc:** Martin, Ernest <Ernest.Martin@haynesboone.com>; Labuda, Jr., Thomas <tlabuda@sidley.com>; Boelter, Jessica C.K.
<jboelter@sidley.com>
**Subject:** RE: [EXTERNAL] RE: BSA - Confidential

Mike - we are available for a call after 1:30 pm EST tomorrow. Please let us know what time works for you and circulate
a dial-in.

Thanks,

Chris


**From:** Andolina, Michael C. [mailto:mandolina@sidley.com]
**Sent:** Monday, November 25, 2019 7:18 PM
**To:** Celentano, Christopher; Wadley, Chris (cwadley@walkerwilcox.com); Schiavoni, Tancred
**Cc:** Martin, Ernest; Labuda, Jr., Thomas; Boelter, Jessica C.K.
**Subject:** RE: [EXTERNAL] RE: BSA - Confidential

Chris, Chris, and Tanc,

offices.  Please let us know if you would like to meet at that time.  BSA and its advisors also reserve all rights.

Jessica

Sent with BlackBerry Work
([www.blackberry.com](www.blackberry.com))

**From:** Celentano, Christopher <[Christopher.Celentano@Chubb.com](Christopher.Celentano@Chubb.com)>
**Date:** Sunday, Nov 03, 2019, 3:40 PM
**To:** Andolina, Michael C. <[mandolina@sidley.com](mandolina@sidley.com)>, Boelter, Jessica C.K. <[jboelter@sidley.com](jboelter@sidley.com)>
**Cc:** '[Steve.McGowan@Scouting.org](Steve.McGowan@Scouting.org)' <[Steve.McGowan@Scouting.org](Steve.McGowan@Scouting.org)>, Schiavoni, Tancred <[tschiavoni@omm.com](tschiavoni@omm.com)>, Wadley, Chris ([cwadley@walkerwilcox.com](cwadley@walkerwilcox.com))
<[cwadley@walkerwilcox.com](cwadley@walkerwilcox.com)>, Martin, Ernest <[Ernest.Martin@haynesboone.com](Ernest.Martin@haynesboone.com)>
**Subject:** BSA - Confidential

Mr. Andolina and Ms. Boelter,

It has come to my attention that the Chubb companies (including Century Indemnity Company, as successor to Insurance Company of North America) are current and historical clients of Sidley Austin, and that Sidley Austin represents the Chubb companies in disputes arising from the direct insurance Chubb issued to BSA.  Chubb has not waived any conflicts arising from Sidley's representation of BSA.

While the Chubb companies continue to evaluate this matter, we are concerned that Sidley Austin's engagement as bankruptcy counsel for BSA has or will put it in an adverse position to us – both as a result of the positions that they have asserted on BSA's behalf, or will assert, in connection with arranging and seeking confirmation of a plan of reorganization, and claims and positions that have been or will be asserted in connection with a bankruptcy.  Under these circumstances, representing BSA in mediation of a prepackaged bankruptcy would lead to the perceived or actual compromise of Sidley Austin's duties to one or both of its clients.  Numerous courts have held that dual representation of a debtor and a party that may be liable to the debtor is an actual conflict that disqualifies the professional since it permits the possibility of favoring one client's interests over another.

Given Sidley's representation of both BSA and Chubb in related matters, it is Chubb's view that allowing the mediation session scheduled for Monday to go forward with Sidley Austin as a participant threatens to taint the entire process.  Accordingly, the Chubb companies object to Sidley Austin's participation in Monday's mediation, and we ask that the mediation session be adjourned until this conflict is resolved.

We propose that we discuss this matter with you on Monday morning. Chubb continues to reserve all rights.

Chris

<image001.png>

**Christopher J. Celentano**
Senior Vice President, Coverage & Complex Claims

3

10 Exchange Place, 9th Floor, Jersey City, NJ 07302, US
O 201.479.6398   M 201.273.3228
E christopher.celentano@chubb.com

&lt;image002.png&gt;

This email (including any attachments) is intended for the designated recipient(s) only,
and may be confidential, non-public, proprietary, and/or protected by the attorney-client
or other privilege. Unauthorized reading, distribution, copying or other use of this
communication is prohibited and may be unlawful. Receipt by anyone other than the
intended recipient(s) should not be deemed a waiver of any privilege or protection. If you
are not the intended recipient or if you believe that you have received this email in error,
please notify the sender immediately and delete all copies from your computer system
without reading, saving, printing, forwarding or using it in any manner. Although it has
been checked for viruses and other malicious software ("malware"), we do not warrant,
represent or guarantee in any way that this communication is free of malware or
potentially damaging defects. All liability for any actual or alleged loss, damage, or
injury arising out of or resulting in any way from the receipt, opening or use of this email
is expressly disclaimed.


****************************************************************************
****************************
This e-mail is sent by a law firm and may contain information that is privileged or
confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and
notify us
immediately.


****************************************************************************
****************************

Debtor   Boy Scouts of America                                    Case number (if known)
         Name

| Name of creditor and complete mailing address, including zip code[1] | Name, telephone number, and email address of creditor contact | Nature of the claim (for example trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim[2] If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 8  Stabaugh, Michael<br>Address on File | PHONE: On File<br>EMAIL: On File | Restoration Plan | Unliquidated |  INSIDER | | $699,380.64 |
| 9  Ratcliffe, Judith<br>Address on File | PHONE: On File | Restoration Plan | Unliquidated | INSIDER | | $594,295.40 |
| 10  Tuggle, Robert<br>Address on File | PHONE: On File<br>EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $589,471.08 |
| 11  American Engineers & Contractors<br>224 Datura St. Ste 1012<br>West Palm Beach, FL 33401 | ATTN: Shiv Stahl<br>TITLE: Owner<br>PHONE: 561-666-9327<br>EMAIL: shiv@aecbuild.com | Trade Payable | | | | $533,950.84 |
| 12  Olmstede, Roger A.<br>Address on File | PHONE: On File<br>EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $512,580.29 |
| 13  Varnell, Thomas<br>Address on File | PHONE: On File<br>EMAIL: On File | Deferred Compensation | | INSIDER | | $397,582.81 |
| 14  Terry, Anne<br>Address on File | PHONE: On File | Restoration Plan | Unliquidated | INSIDER | | $393,977.68 |
| 15  Lion Brothers Company Inc.<br>10246 Reisterstown Road<br>Owings Mills, MD 21117 | ATTN: Susan Ganz<br>TITLE: Chief Executive Officer<br>PHONE: 410-363-1000, EXT. 247<br>EMAIL: sganz@lionbrothers.com | Trade Payable | | | | $355,795.41 |
| 16  Fitzgibbon, Thomas H.<br>Address on File | PHONE: On File<br>EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $353,449.14 |
| 17  McChesney, Donald<br>Address on File | PHONE: On File | Restoration Plan | Unliquidated | INSIDER | | $328,739.51 |
| 18  Butler, Gary<br>Address on File | PHONE: On File<br>EMAIL: On File | Restoration Plan | Unliquidated | | | $324,387.52 |
| 19  Travis, Hugh<br>Address on File | PHONE: On File<br>EMAIL: On File | Deferred Compensation | | INSIDER | | $306,816.71 |
| 20  Fanner, Bradley<br>Address on File | PHONE: On File | Restoration Plan | Unliquidated | INSIDER | | $304,736.45 |
| 21  Stone, Kathy Sue<br>Address on File | PHONE: On File<br>EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $254,068.10 |
| 22  Hunt, Jeffrey<br>Address on File | PHONE: On File<br>EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $237,271.49 |
| 23  Harrington, Thomas<br>Address on File | PHONE: On File<br>EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $228,275.19 |
| 24  Green, John<br>Address on File | PHONE: On File | Restoration Plan | Unliquidated | INSIDER | | $224,126.37 |
| 25  Quad Graphics, Inc.<br>N61W23044 Harry's Way<br>Sussex, WI 53089-2827 | ATTN: Joel Quadracci<br>TITLE: Chairman, President & Chief Executive Officer<br>PHONE: 414-566-2200<br>EMAIL: joel.quadracci@qg.com | Trade Payable | | | | $174,600.00 |
| 26  Blackwell, Raymond L.<br>Address on File | PHONE: On File<br>EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $174,241.08 |



| Debtor | Boy Scouts of America | | | Case number (if known) | |
|--------|-----------------------|--|--|--|--|
| | Name | | | | |

| Name of creditor and complete mailing address, including zip code[1] | Name, telephone number, and email address of creditor contact | Nature of the claim (for example trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim[2]<br>If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 8  Surbaugh, Michael. Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $699,388.64 |
| 9  Ratcliffe, Judith Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $594,295.40 |
| 10  Tuggle, Robert Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $589,471.08 |
| 11  American Engineers & Contractors 224 Datura St. Ste 1012 West Palm Beach, FL 33401 | ATTN: Shiv Stahl TITLE: Owner PHONE: 561-666-932? EMAIL: shiv@aecbuild.com | Trade Payable | | | | $533,950.84 |
| 12  Ohmstede, Roger A Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $512,680.29 |
| 13  Varnell, Thomas Address on File | PHONE: On File EMAIL: On File | Deferred Compensation | | INSIDER | | $397,592.01 |
| 14  Terry, Anne Address on File | PHONE: On File | Restoration Plan | Unliquidated | INSIDER | | $393,977.68 |
| 15  Lion Brothers Company Inc. 10246 Reisterstown Road Owings Mills, MD 21117 | ATTN: Susan Gaaz TITLE: Chief Executive Officer PHONE: 410-363-1000, EXT. 247 EMAIL: sgaaz@lionbrothers.com | Trade Payable | | | | $355,795.41 |
| 16  Fitzgibben, Thomas H. Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $353,449.14 |
| 17  McChesney, Donald Address on File | PHONE: On File | Restoration Plan | Unliquidated | INSIDER | | $328,739.51 |
| 18  Butler, Gary Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $324,397.52 |
| 19  Travis, Hugh Address on File | PHONE: On File EMAIL: On File | Deferred Compensation | | INSIDER | | $306,816.71 |
| 20  Farmer, Bradley Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $304,736.45 |
| 21  Stone, Kathy Sue Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $254,068.18 |
| 22  Hunt, Jeffrey Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $237,271.49 |
| 23  Harrington, Thomas Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $228,275.19 |
| 24  Green, John Address on File | | Restoration Plan | Unliquidated | INSIDER | | $224,126.37 |
| 25  Quad Graphics, Inc. N61W23044 Harry's Way Sussex, WI 53089-2827 | ATTN: Joel Quadracci TITLE: Chairman, President & Chief Executive Officer PHONE: 414-566-2200 EMAIL: joel.quadracci@qg.com | Trade Payable | | | | $174,600.00 |
| 26  Blackwell, Raymond L. Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $174,241.08 |

Debtor   Boy Scouts of America                                    Case number (if known)
              Name

| Name of creditor and complete mailing address, including zip code[1] | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim[2] If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 8   Surbaugh, Michael Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $699,388.64 |
| 9   Ratcliffe, Judith Address on File | PHONE: On File | Restoration Plan | Unliquidated | INSIDER | | $594,295.40 |
| 10  Tuggle, Robert Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $589,471.08 |
| 11  American Engineers & Contractors 224 Datura St. Ste 1012 West Palm Beach, FL 33401 | ATTN: Shiv Shahi TITLE: Owner PHONE: 561-666-9327 EMAIL: shiv@aecbuild.com | Trade Payable | | | | $533,950.84 |
| 12  Ohnstede, Roger A. Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $512,580.29 |
| 13  Varnell, Thomas Address on File | PHONE: On File EMAIL: On File | Deferred Compensation | | INSIDER | | $397,582.81 |
| 14  Terry, Anne Address on File | PHONE: On File | Restoration Plan | Unliquidated | INSIDER | | $393,977.68 |
| 15  Lion Brothers Company Inc. 10246 Reisterstown Road Owings Mills, MD 21117 | ATTN: Susan Ganz TITLE: Chief Executive Officer PHONE: 410-363-1000, EXT. 247 EMAIL: sganz@lionbrothers.com | Trade Payable | | | | $355,795.41 |
| 16  Fitzgibbon, Thomas H. Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $353,449.14 |
| 17  McChesney, Donald Address on File | PHONE: On File | Restoration Plan | Unliquidated | INSIDER | | $328,739.51 |
| 18  Butler, Gary Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | | | $324,387.52 |
| 19  Travis, Hugh Address on File | PHONE: On File EMAIL: On File | Deferred Compensation | | INSIDER | | $306,816.71 |
| 20  Farmer, Bradley Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $304,736.45 |
| 21  Stone, Kathy Sue Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $254,068.18 |
| 22  Hunt, Jeffrey Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $237,271.49 |
| 23  Harrington, Thomas Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $228,275.19 |
| 24  Green, John Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $224,126.37 |
| 25  Quad Graphics, Inc. N61W23044 Harry's Way Sussex, WI 53089-2827 | ATTN: Joel Quadracci TITLE: Chairman, President & Chief Executive Officer PHONE: 414-566-2200 EMAIL: joel.quadracci@qg.com | Trade Payable | | | | $174,600.00 |
| 26  Blackwell, Raymond L. Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | INSIDER | | $174,241.08 |

Fill in this information to identify the case:

Debtor name Boy Scouts of America

United States Bankruptcy Court for the ___District of Delaware___
(State)

Case number (if known) __20-_____

Check if this is an
amended filing

The following is a list of the thirty (30) largest known creditors potentially holding unsecured claims against Boy Scouts of America and Delaware BSA, LLC (collectively, the "Debtors") other than holders of abuse claims (the "Consolidated Top 30 List"). Concurrently with the filing of their petitions, the Debtors have filed a motion seeking authority to file this Consolidated Top 30 List, along with a list of the twenty-five (25) law firms representing the largest numbers of holders of abuse claims against the Debtors, in lieu of a list of the twenty (20) largest unsecured creditors for each of Boy Scouts of America and Delaware BSA, LLC.

The Consolidated Top 30 List reflects estimated amounts owed by the Debtors as of the Petition Date. It was produced from the books and records of the Debtors as of the close of business on February 17, 2020. The Consolidated Top 30 List does not include any person or entity who is now, or formerly was, an "insider" of the Debtors as that term is defined in 11 U.S.C. § 101(31). The information contained herein shall not constitute an admission of liability by, nor is it binding on, the Debtors. Moreover, nothing herein shall affect the Debtors' right to challenge the amount or characterization of any claim at a later date. The Debtors' failure to list a claim as contingent, unliquidated or disputed does not constitute a waiver of the Debtors' right to contest the validity, priority and/or amount of any such claim.

## Official Form 204

# Chapter 11 or Chapter 9 Cases:  List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors, other than holders of abuse claims, holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider*, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code[1] | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim[2]<br><br>If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Williams, Roy L. Address on File | PHONE: On File | Restoration Plan | Unliquidated | | | $2,386,986.12 |
| 2 | Mazzuca, Robert J. Address on File | PHONE: On File | Deferred Compensation Restoration Plan | Unliquidated | | | $1,609,662.86 |
| 3 | Brock, C. Wayne Address on File | PHONE: On File EMAIL: On File | Deferred Compensation Restoration Plan | Unliquidated | | | $1,140,755.43 |
| 4 | Connelly, Kenneth L. Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | *INSIDER* | | $948,559.60 |
| 5 | Hoover Jr., C. Michael Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | | | $915,037.28 |
| 6 | Ross II, David J. Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | *INSIDER* | | $904,795.26 |
| 7 | NCS Pearson, Inc. 200 Old Tappen Road Old Tappan, NJ 07675 | ATTN: Bjarne Tellmann TITLE: General Counsel and Chief Legal Officer PHONE: 201-236-5416 EMAIL: bjarne.tellmann@pearson.com | Trade Payable | | *INSIDER* | | $714,588.00 |

[1] To protect the identities and personal contact information of certain individuals listed hereon, the Debtors have redacted such information from this list. The Debtors are providing an unredacted version of this list to the Court and the Office of the United States Trustee.
[2] Amounts related to Restoration Plan are based on a preliminary actuarial determination.

Fill in this information to identify the case:

Debtor name Boy Scouts of America

United States Bankruptcy Court for the ____ District of Delaware
(State)

Case number (if known) ____ 20-

Check if this is an
amended filing

The following is a list of the thirty (30) largest known creditors potentially holding unsecured claims against Boy Scouts of America and Delaware BSA, LLC (collectively, the "Debtors") other than holders of abuse claims (the "Consolidated Top 30 List"). Concurrently with the filing of their petitions, the Debtors have filed a motion seeking authority to file this Consolidated Top 30 List, along with a list of the twenty-five (25) law firms representing the largest numbers of holders of abuse claims against the Debtors, in lieu of a list of the twenty (20) largest unsecured creditors for each of Boy Scouts of America and Delaware BSA, LLC.

The Consolidated Top 30 List reflects estimated amounts owed by the Debtors as of the Petition Date. It was produced from the books and records of the Debtors as of the close of business on February 17, 2020. The Consolidated Top 30 List does not include any person or entity who is now, or formerly was, an "insider" of the Debtors as that term is defined in 11 U.S.C. § 101(31). The information contained herein shall not constitute an admission of liability by, nor is it binding on, the Debtors. Moreover, nothing herein shall affect the Debtors' right to challenge the amount or characterization of any claim at a later date. The Debtors' failure to list a claim as contingent, unliquidated or disputed does not constitute a waiver of the Debtors' right to contest the validity, priority and/or amount of any such claim.

## Official Form 204

# Chapter 11 or Chapter 9 Cases:  List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors, other than holders of abuse claims, holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider*, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| # | Name of creditor and complete mailing address, including zip code[1] | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim[2] If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Williams, Roy L. Address on File | PHONE: On File | Restoration Plan | Unliquidated | | | $2,386,986.12 |
| 2 | Mazzuca, Robert J. Address on File | PHONE: On File | Deferred Compensation Restoration Plan | Unliquidated | | | $1,609,662.96 |
| 3 | Brock, C. Wayne Address on File | PHONE: On File EMAIL: On File | Deferred Compensation Restoration Plan | Unliquidated | | | $1,140,755.43 |
| 4 | Connelly, Kenneth L. Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | | | $948,559.60 |
| 5 | Hoover Jr., C. Michael Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | | | $915,037.28 |
| 6 | Ross II, David J. Address on File | PHONE: On File EMAIL: On File | Restoration Plan | Unliquidated | | | $904,795.26 |
| 7 | NCS Pearson, Inc. 200 Old Tappen Road Old Tappan, NJ 07675 | ATTN: Bjarne Tellmann TITLE: General Counsel and Chief Legal Officer PHONE: 201-236-5416 EMAIL: bjarne.tellmann@pearson.com | Trade Payable | | | | $714,588.00 |

[1] To protect the identities and/or personal contact information of certain individuals listed hereon, the Debtors have redacted such information from this list. The Debtors are providing an unredacted version of this list to the Court and the Office of the United States Trustee.

[2] Amounts related to Restoration Plan are based on a preliminary actuarial determination.

Debtor <u>Boy Scouts of America</u>          Case number(*if known*)_____
    <small>Name</small>

**16.  Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☒ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

**Request for Relief, Declaration, and Signatures**

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17.  Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___02/18/2020___
           MM / DD / YYYY

✗ _____          ___Steven P. McGowan___
Signature of authorized representative of debtor          Printed name

Title Secretary and General Counsel

**18.  Signature of attorney**

✗ _____          Date ___02/18/2020___
Signature of attorney for debtor          MM / DD / YYYY

| | |
|---|---|
| <u>Derek C. Abbott</u> | <u>Jessica C.K. Boelter</u> |
| Printed name | |
| <u>Morris, Nichols, Arsht & Tunnell LLP</u> | <u>Sidley Austin LLP</u> |
| Firm name | |
| <u>1201 North Market Street</u> | <u>787 Seventh Avenue</u> |
| Address | |
| <u>Wilmington, DE 19899</u> | <u>New York, NY 10019</u> |
| City/State/ZIP | |
| <u>(302) 351-9314</u> | <u>(212) 839-5300</u> |
| Contact phone | |
| <u>dabbott@mnat.com</u> | <u>jboelter@sidley.com</u> |
| Email Address | |
| <u>3376 (DE)</u> | <u>5657580 (NY)</u> |
| Bar number | Bar number |

Debtor <u>Boy Scouts of America</u>               Case number(*if known*)_____
        Name

**16.  Estimated liabilities**

- ☐ $0-$50,000
- ☐ $50,001-$100,000
- ☐ $100,001-$500,000
- ☐ $500,001-$1 million

- ☐ $1,000,001-$10 million
- ☐ $10,000,001-$50 million
- ☐ $50,000,001-$100 million
- ☐ $100,000,001-$500 million

- ☒ $500,000,001-$1 billion
- ☐ $1,000,000,001-$10 billion
- ☐ $10,000,000,001-$50 billion
- ☐ More than $50 billion

## Request for Relief, Declaration, and Signatures

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17.  Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct

Executed on ___02/18/2020___
                MM / DD / YYYY

✗ _____          ___Steven P. McGowan___
Signature of authorized representative of debtor      Printed name

Title <u>Secretary and General Counsel</u>

**18.  Signature of attorney**

✗ _____          Date ___02/18/2020___
Signature of attorney for debtor                      MM / DD / YYYY

<u>Derek C. Abbott</u>                               <u>Jessica C.K. Boelter</u>
Printed name                                         Printed name

<u>Morris, Nichols, Arsht & Tunnell LLP</u>          <u>Sidley Austin LLP</u>
Firm name                                            Firm name

<u>1201 North Market Street</u>                      <u>787 Seventh Avenue</u>
Address                                              Address

<u>Wilmington, DE 19899</u>                          <u>New York, NY 10019</u>
City/State/ZIP                                       City/State/ZIP

<u>(302) 351-9314</u>                                <u>(212) 839-5300</u>
Contact phone                                        Contact phone

<u>dabbott@mnat.com</u>                              <u>jboelter@sidley.com</u>
Email Address                                        Email Address

<u>3376 (DE)</u>                                      <u>5657580 (NY)</u>
Bar number                                           Bar number

Official Form 201          Voluntary Petition for Non-Individuals Filing for Bankruptcy          page 4

# EXHIBIT

# 5

**Morris Nichols**
ARSHT & TUNNELL




## Derek C. Abbott

Partner

Wilmington, Delaware
dabbott@morrisnichols.com
t 302-351-9357
c 302-593-4729

**Derek represents Fortune 1000, local, international and other organizations as lead or Delaware counsel in bankruptcy proceedings and litigation on behalf of debtors, creditors, official and ad hoc committees and transactional case constituents.**

Derek regularly works with debtors-in-possession (DIP), DIP and exit financing lenders, as well as outside and inside counsel, turnaround professionals, independent and special committees of directors, crisis management firms, and investment and non-investment bank professionals. His recent client representations include the Boy Scouts of America, John Varvatos Enterprises, Grupo AeroMexico, Papa Gino's, AT&T Inc., General Motors Corporation, Philips International, Viacom Inc., TD Bank, and Nortel Networks. He has also served as Chapter 11 Trustee and Chapter 7 Trustee of Tough Mudder. Derek frequently serves as a mediator in matters related to insolvency and distressed businesses, including both adversary proceedings and case-dispositive matters. In addition, Derek has served as an expert witness in matters involving restructuring and bankruptcy matters both domestically and internationally.

Derek is a graduate of the US Military Academy at West Point. He has made the honor, leadership, and discipline that are the hallmarks of that institution the cornerstones of his professional career. In 2016, he was invited to join the 28th Class of Fellows of the American College of Bankruptcy. In 2018, he was presented the Delaware State Bar Association's Access to Justice Commitment Award, recognizing his sterling commitment to pro bono work throughout his career. He was also the recipient of the 2011 Caleb R. Layton III Service Award, given by

### PRACTICE AREAS

Bankruptcy & Restructuring

Complex Commercial Litigation

Financings & Structured Transactions

Mergers, Acquisitions & Divestitures

### EDUCATION

University of North Carolina School of Law, JD, with honors, 1995, *North Carolina Law Review* (Staff Member, 1993-1994 and Publication Editor, 1994-1995)

United States Military Academy, BS, 1987

### ADMISSIONS

Delaware, 1995

US District Court for the District of Delaware

US Court of Appeals for the Third Circuit

| Debtor's Name | Boy Scouts of America | | Case No | 20-10343 (LSS) |
|---|---|---|---|---|

**Part 5: Professional Fees and Expenses**
($ in thousands)

| | | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|---|
| a. | Debtor's professional fees & expenses (bankruptcy) | | Aggregate Total | $ 2,995 | $ 102,857 | $ 6,355 | $ 88,736 |
| | Itemized Breakdown by Firm | | | | | | |
| | Firm Name | | Role | | | | |
| | 1 | WHITE & CASE LLP | Counsel | - | 31,605 | 2,627 | 25,336 |
| | 2 | OMNI MANAGEMENT GROUP INC | Claims Agent | 1,234 | 22,551 | 1,338 | 22,327 |
| | 3 | ALVAREZ & MARSAL HOLDINGS LLC | Financial Advisor | 1,226 | 12,969 | 982 | 10,964 |
| | 4 | SIDLEY AUSTIN LLP | Counsel | - | 11,333 | - | 10,723 |
| | 5 | BATES WHITE LLC | Claims Advisor | - | 7,374 | 301 | 5,859 |
| | 6 | HAYNES & BOONE LLP | Insurance Advisor | - | 6,869 | - | 5,656 |
| | 7 | MORRIS NICHOLS ARSHT & TUNNELL | Local Delaware Counsel | 535 | 3,243 | 430 | 2,776 |
| | 8 | OGLETREE DEAKINS NASH SMOAK&STEWART PC | Claims Advisor | - | 3,202 | 619 | 2,627 |
| | 9 | KCIC LLC | Other | - | 1,957 | 57 | 1,570 |
| | 10 | PRICEWATERHOUSE COOPERS LLP | Auditor | - | 546 | - | 437 |
| | 11 | QUINN EMANUEL URQUHART & SULLIVAN LLP | Special Litigation Counsel | - | 1,042 | - | 193 |
| | 12 | HOTEL & LEISURE ADVISORS LLC | Appraiser | - | 99 | - | 99 |
| | 13 | FLORIDA KEYS APPRAISAL SERVICES | Appraiser | - | 25 | - | 25 |
| | 14 | JAMES F WELLES | Appraiser | - | 18 | - | 18 |
| | 15 | DAWN M POWELL APPRAISALS INC | Appraiser | - | 9 | - | 9 |
| | 16 | FI SALTER REAL ESTATE INC | Appraiser | - | 8 | - | 8 |
| | 17 | BW FERGUSON & ASSOCIATES LTD | Appraiser | - | 6 | - | 6 |

| | | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy) | | Aggregate Total | $ 213 | $ 6,013 | $ 213 | $ 6,013 |
| | Itemized Breakdown by Firm | | | | | | |
| | Firm Name | | Role | | | | |
| | 1 | FTI CONSULTING INC | Strategic Communications and Public Relations | - | 1,941 | - | 1,941 |
| | 2 | WILLIS TOWERS WATSON INC | Pension / Health & Benefits | - | 769 | - | 769 |
| | 3 | STEPTOE & JOHNSON PLLC | Corporate Counsel | 26 | 536 | 26 | 536 |
| | 4 | FOX ROTHSCHILD LLP | Counsel - IP Matters | 12 | 400 | 12 | 400 |
| | 5 | BAX ADVISORS LLC | General Counsel Advisor | 3 | 317 | 3 | 317 |
| | 6 | QUINN EMANUEL URQUHART & SULLIVAN LLP | Special Litigation Counsel | - | 199 | - | 199 |
| | 7 | WIGGIN & DANA LLP | Defense Counsel | - | 162 | - | 162 |
| | 8 | HARPER AND PEARSON | Audit and Financial Statement Preparation | - | 156 | - | 156 |
| | 9 | STITES & HARBISON PLLC | Defense Counsel | 13 | 137 | 13 | 137 |
| | 10 | JONES SKELTON & HOCHULI PLC | Defense Counsel | 20 | 127 | 20 | 127 |
| | 11 | WILSON ELSER MOSKOWITZ | Defense Counsel | 5 | 124 | 5 | 124 |
| | 12 | HECHT SPENCER & ASSOCIATES INC | Government Relations / Lobbyist | - | 115 | - | 115 |
| | 13 | LCG ASSOCIATES INC | Match Savings Plan Consulting | - | 113 | - | 113 |
| | 14 | LUNDBERG ENTERPRISES LLC | Consultant | 95 | 95 | 95 | 95 |
| | 15 | SAUL EWING LLP | Defense Counsel | 1 | 81 | 1 | 81 |
| | 16 | VERNIS & BOWLING OF THE FL KEYS | Defense Counsel | 17 | 80 | 17 | 80 |
| | 17 | LEWIS BRISBOIS BISGAARD & SMITH | Defense Counsel | 3 | 65 | 3 | 65 |
| | 18 | MCGUIRE WOODS LLP | Defense Counsel | 12 | 60 | 12 | 60 |
| | 19 | COVINGTON & BURLING | Counsel - Investigations | - | 54 | - | 54 |
| | 20 | MELICK PORTER LLP | Defense Counsel | - | 51 | - | 51 |
| | 21 | Milliman USA Inc | Actuary - Insurance Reserves | - | 41 | - | 41 |
| | 22 | DENTONS US LLP | Defense Counsel | 1 | 39 | 1 | 39 |
| | 23 | NORTON ROSE FULBRIGHT LLP | Asia Trademark Counsel | - | 38 | - | 38 |
| | 24 | SCHEPER KIM & HARRIS LLP | Defense Counsel | - | 29 | - | 29 |
| | 25 | WHITE AND WILLIAMS LLP | Defense Counsel | - | 27 | - | 27 |
| | 26 | MARKOWITZ HERBOLD GLADE AND MEHLHAF PC | Defense Counsel | 0 | 25 | 0 | 25 |
| | 27 | CIVILLE & TANG PLLC | Defense Counsel | - | 24 | - | 24 |
| | 28 | HUESTON HENNIGAN | Defense Counsel | 0 | 19 | 0 | 19 |
| | 29 | MITCHELL, WILLIAMS, SELIG, GATES | Defense Counsel | - | 18 | - | 18 |
| | 30 | CLARKE SILVERGLATE PA | Defense Counsel | - | 18 | - | 18 |
| | 31 | FREDRIKSON & BYRON PA | Defense Counsel | - | 16 | - | 16 |
| | 32 | HEPLERBROOM LLC | Defense Counsel | - | 16 | - | 16 |
| | 33 | JASON AMSEL | Counsel - IP Matters | 1 | 14 | 1 | 14 |
| | 34 | BAKER & HOSTETLER LLP | Counsel - Data Privacy | - | 14 | - | 14 |
| | 35 | MCLANE MIDDLETON PROF ASSOC | Defense Counsel | - | 13 | - | 13 |
| | 36 | FLOYD PFLUEGER & RINGER | Defense Counsel | 0 | 11 | 0 | 11 |
| | 37 | KELEHER & MCLEOD PA, ATTORNEYS AT LAW | Defense Counsel | - | 10 | - | 10 |
| | 38 | BOONE KARLBERG PC | Defense Counsel | - | 9 | - | 9 |
| | 39 | BAYS LUNG ROSE HOLMA ATTORNEYS AT LAW | Defense Counsel | - | 9 | - | 9 |
| | 40 | KIPP AND CHRISTIAN PC | Defense Counsel | 0 | 9 | 0 | 9 |
| | 41 | THE BVA GROUP LLC | Valuation Advisory Services | - | 9 | - | 9 |
| | 42 | HINSHAW & CULBERTSON LLP | Defense Counsel | - | 6 | - | 6 |
| | 43 | HAWLEY TROXELL ENNIS & HAWLEY LLP | Defense Counsel | - | 4 | - | 4 |
| | 44 | WICKER,SMITH,O'HARA,MCCOY,&FORD PA | Defense Counsel | - | 4 | - | 4 |
| | 45 | BARNES LIPSCOMB STEWARD & OTT PLLC | Counsel - Probate and Estate Administration | 0 | 4 | 0 | 4 |
| | 46 | MILLER JOHNSON SNELL & CUMMISKEY PLC | Defense Counsel | - | 3 | - | 3 |
| | 47 | KAMM & MCCONNELL LLC | Investigations Counsel | 2 | 2 | 2 | 2 |
| | 48 | STICH ANGELL KREIDLER UNKE & SCATTERGOOD | Investigations Counsel | - | 1 | - | 1 |
| | 49 | NICHOLAS W MULICK PA | Defense Counsel | - | 0 | - | 0 |
| | 50 | GREFE & SIDNEY PLC | Defense Counsel | - | 0 | - | 0 |
| c. | All professional fees and expenses (debtor & committee) | | | $ 8,282 | $ 175,076 | $ 13,922 | $ 151,519 |

## Florida Law Review

Volume 70 | Issue 2                                                          Article 4

# At Your Service: Lawyer Discretion to Assist Clients in Unlawful Conduct

Paul R. Tremblay

Follow this and additional works at: https://scholarship.law.ufl.edu/flr

Part of the Legal Ethics and Professional Responsibility Commons

Recommended Citation

Paul R. Tremblay, *At Your Service: Lawyer Discretion to Assist Clients in Unlawful Conduct*, 70 Fla. L. Rev. 251 ().
Available at: https://scholarship.law.ufl.edu/flr/vol70/iss2/4

This Article is brought to you for free and open access by UF Law Scholarship Repository. It has been accepted for inclusion in Florida Law Review by an authorized editor of UF Law Scholarship Repository. For more information, please contact kaleita@law.ufl.edu.

# AT YOUR SERVICE: LAWYER DISCRETION TO ASSIST CLIENTS IN UNLAWFUL CONDUCT

*Paul R. Tremblay**

## Abstract

The common, shared vision of lawyers' ethics holds that lawyers ought not collaborate with clients in wrongdoing. Ethics scholars caution that lawyers "may not participate in or assist illegal conduct," or "giv[e] legal services to clients who are going to engage in unlawful behavior with the attorney as their accomplice." That sentiment resonates comfortably with the profession's commitment to honor legal obligations and duties, and to remain faithful to the law.

The problem with that sentiment, this Article shows, is that it is not an accurate statement of the prevailing substantive law. The American Bar Association's (ABA) model standards governing lawyers prohibit lawyers from assisting clients with illegality, but only in certain defined categories—that is, crimes and frauds. The standards, adopted by virtually all states, do not prohibit participation by lawyers in the remaining universe of unlawful conduct. The aim of this Article is to understand the meaning and scope of this apparent acceptance of lawyers' collaboration with unlawful client action. Surprisingly, legal ethics commentary has not explored the nature of the constraints on such collaboration.

This Article offers, as orienting examples, three stories from the entrepreneurial startup world in which clients have requested legal help with activities that are unlawful but may not be criminal or fraudulent. The stories provide a base from which to explore whether all wrongdoing or illegality ultimately equates to something criminal or fraudulent. Examining the text and history of Model Rule 1.2(d), this Article demonstrates that the ABA (and, presumably, the states that adopted the language) intended the Rule's limitation to mean what it says. Some lawyer participation with unlawful action might be prohibited through the operation of "other law." In general, however, no outside authority limits a lawyer's assistance with client wrongdoing—if "unlawful" activity equates to wrongdoing. The startup stories show that "unlawful" is not always synonymous with "wrongful," although, of course, it often will be.

---

* Clinical Professor of Law and Dean's Scholar, Boston College Law School. I thank Tony Alfieri, Alicia Alvarez, Alexis Anderson, Susan Carle, Lynnise Pantin, Steven Pepper, Carl Pierce, Alicia Plerhoples, Steve Reed, Mark Spiegel, and Brad Wendel for comments and feedback on earlier versions of this Article or its ideas. I also thank Yintian Duan and Leila Souhail for their helpful research assistance, and Boston College Law School and Dean Vincent Rougeau for generous financial support for this project. I dedicate this Article to the memory of Professor Geoffrey C. Hazard, Jr., the most influential writer on this topic, who died on January 11, 2018.

251

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
<tr><td>Debtor name</td><td>Boy Scouts of America</td></tr>
<tr><td>United States Bankruptcy Court for the</td><td>District of Delaware<br>(State)</td></tr>
<tr><td>Case number (if known)</td><td>20-</td></tr>
</table>

Check if this is an
amended filing

The following is a list of the thirty (30) largest known creditors potentially holding unsecured claims against Boy Scouts of America and Delaware BSA, LLC (collectively, the "Debtors") other than holders of abuse claims (the "Consolidated Top 30 List"). Concurrently with the filing of their petitions, the Debtors have filed a motion seeking authority to file this Consolidated Top 30 List, along with a list of the twenty-five (25) law firms representing the largest numbers of holders of abuse claims against the Debtors, in lieu of a list of the twenty (20) largest unsecured creditors for each of Boy Scouts of America and Delaware BSA, LLC.

The Consolidated Top 30 List reflects estimated amounts owed by the Debtors as of the Petition Date. It was produced from the books and records of the Debtors as of the close of business on February 17, 2020. The Consolidated Top 30 List does not include any person or entity who is now, or formerly was, an "insider" of the Debtors as that term is defined in 11 U.S.C. § 101(31). The information contained herein shall not constitute an admission of liability by, nor is it binding on, the Debtors. Moreover, nothing herein shall affect the Debtors' right to challenge the amount or characterization of any claim at a later date. The Debtors' failure to list a claim as contingent, unliquidated or disputed does not constitute a waiver of the Debtors' right to contest the validity, priority and/or amount of any such claim.

## Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors, other than holders of abuse claims, holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code[1] | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim[2] If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Williams, Roy L<br>Address on File | PHONE: On File | Restoration Plan | Unliquidated | | | $2,386,986.12 |
| 2 | Mazzuca, Robert J.<br>Address on File | PHONE: On File | Deferred Compensation Restoration Plan | Unliquidated | | | $1,609,662.86 |
| 3 | Brock, C. Wayne<br>Address on File | PHONE: On File<br>EMAIL: On File | Deferred Compensation Restoration Plan | Unliquidated | | | $1,140,755.43 |
| 4 | Connelly, Kenneth L.<br>Address on File | PHONE: On File<br>EMAIL: On File | Restoration Plan | Unliquidated | | | $948,559.60 |
| 5 | Hoover Jr., C. Michael<br>Address on File | PHONE: On File<br>EMAIL: On File | Restoration Plan | Unliquidated | | | $915,037.28 |
| 6 | Ross II, David J<br>Address on File | PHONE: On File<br>EMAIL: On File | Restoration Plan | Unliquidated | | | $904,795.26 |
| 7 | NCS Pearson, Inc.<br>200 Old Tappen Road<br>Old Tappan, NJ 07675 | ATTN: Bjarne Tellmann<br>TITLE: General Counsel and Chief Legal Officer<br>PHONE: 201-236-5416<br>EMAIL: bjarne.tellmann@pearson.com | Trade Payable | | | | $714,588.00 |

---

[1] To protect the identities and/or personal contact information of certain individuals listed hereon, the Debtors have redacted such information from this list. The Debtors are providing an unredacted version of this list to the Court and the Office of the United States Trustee.

[2] Amounts related to Restoration Plan are based on a preliminary actuarial determination.

Official Form 204    Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims    page 1

# WHAT DOES PAYING FOR A FELONY LOOK LIKE?

PACER PRO

# *Boy Scouts of America*

**Delaware Bankruptcy Court**

Case no. 1:20-bk-10343 (Bankr. D. Del.)
Filed date: February 18, 2020
Docket entry no.: 2

Docket text:

Receipt of filing fee for Voluntary Petition (Chapter 11)(20-10343) [misc,volp11a] (1717.00). Receipt Number 9647566, amount $1717.00. (U.S. Treasury) (Entered: 02/18/2020)

This PDF was generated on February 08, 2022 by PacerPro for a text-only docket entry.

https://app.pacerpro.com/cases/12273178

**SHOWING ALL    50  ⌄    RESULTS OF (1)**



| DATE | SIZE | CONTACT |
|------|------|---------|
| 02/18/2020 | 0 B | |

Receipt of filing fee for Voluntary Petition (Chapter 11)(20-10343) [misc,volp11a] (1717.00). Receipt Number 9647566, amount $1717.00. (U.S. Treasury) (Entered: 02/18/2020)

《    **VIEWING PAGE    1            OF (1)**    》

**SHOWING ALL    50  ⌄    RESULTS OF (1)**

This website is not the website of the United States Bankruptcy Court. While Omni makes every effort to ensure the accuracy of the information contained herein, this website is provided as a convenience to all interested parties and should not be relied upon as a substitute for any financial, legal or other professional advice. This website does not contain the complete official record of the Bankruptcy Court. All documents filed with the Bankruptcy Court are available for inspection at office of the Clerk of the Bankruptcy Court during normal business hours or online on the Bankruptcy Court's website.



Omni is a nationally renowned Claims and Noticing Agent whose singular focus is on efficiently providing the highest quality case administration services and technology. Omni's dedication, reputation and experience make it the right choice for all of your case-administration needs.

© 2022 Omni Agent Solutions. All Rights Reserved.

# EXHIBIT

# 6

-------Message -------
On Friday, March 11, 2022 9:46 AM, MRCTLR <mrctlr@protonmail.com> wrote:

Greetings Pachulski Stang Ziehl & Jones,

Good Morning Gentlemen...

Late last night, I discovered "My Ballot Number," and the last
"Proof of Claim Number," █████████ Were missing from the
"Omni Agent Solutions,'" Final Certified Tabulation (OMNI-CEO
 Supervised Audit.)

They proclaim to have "Carefully Studied," with Multiple Persons.
That (ALL) was in "Order." Yet, the "One Person," ██████████
CREDITOR/CLAIMANT) who has a "Plan Objection and  Tabulation
& Certification Fraud Claim. From the last "BSA Abuse Claim Victim
Election." That should be "Testifying in the Upcoming Confirmation
Hearing" against Omni Agent Solutions. Is summarily missing from
the "Federal Court Docketed and Attested To Election Results."

Simply appalling, Gentlemen. That this also is happening in America.

Please explain...

Best Wishes and Regards,

████████████████

**SUBJECT: Boy Scouts of America - Case 20-10343-LSS Doc 8345-2 Filed 01/18/22 Page 37 of 69**

*"Exhibit B - Final Report of Ballots Excluded from Tabulation"*

=========================================

Class...Type of Submission   Ballot ID   Creditor Name                   Claim Number/Schedule ID...Vote...Law Firm... **Reason(s) for Exclusion**

**8        Direct Ballot**        ▮▮▮▮▮▮edacted Abuse Claimant        ▮▮▮▮▮▮▮▮        **Reject**   Pro Se
**Ballot Submitted On Account Of Claim Filed After The Bar Date.**

=========================================

**RE: *(6 ) Six Official OmniAgent BSA Election Ballot Certification (Attempted Requests) For (Claim No.101730). (Without Success!) My Ballot Was Submitted By UPS AIR (12-20-2021), To Omni Agents/California. White & Case, Also Failed To Certify My Election Results. While Acting As Apparent Counsel, To OMNIAGENTS For BSA. What Other Law Firms, Are Involved In This Grand & Epic Deception?***

6th Official OmniAgent BSA Election Ballot Certification Request For (Claim No.101730) Michael Cutler...Ballot Submitted By UPS AIR (12-20-2021) To Omni Agents/California.

Sent: **Tuesday, December 28, 2021 10:47 AM**

From: ████████████████████

To: **Tuffey, Claire** claire.tuffey@whitecase.com

CC: **Katie Nownes** knownes@OmniAgnt.com, BSAballots@omniagnt.com bsaballots@OmniAgnt.com..." (Among Other Notable Key Case Counsel)

*Greetings Ms. Tuffey,*
*Congratulations On Your Associate Posting, With White & Case. As In Scouting, The Old Timers Enjoy Seeing Young People Do Well, And Thrive In Life. Well Done...*

*I Thank You, For Your Thoughtful Letter Regarding The Election Calendar. Just So We, Don't Misunderstand Each Other. I Want To Clarify My Posture. On The BSA Plan Ballot, Voting Integrity, Certified Tabulation, Who The Election Examiner Is, And That My Personal Data Has Been Entered Correctly. Which I Need To Read...*

*Stating It In A Kind Way..."You Glossed Over." Calling All Of It "The Plan." Your Firm, And Perhaps Others Have Assembled The 22 Page Ballot. The Key Parts For Me, Are Pages Are Pages 1,5,6, 8 & 17. I Want (ALL) Of Those Details Entered Properly. Then Certified By Your Firm, And Sent Back To Me. So, I Can Verify That (All Is In Order.)*

*In, My Case. You Appear To Be A New York Attorney. Advising A California, New York & Delaware Solicitation & Noticing Firm. Being Paid By A Texas & Recently Based Delaware Boy Scouts Of America Chapter 11 Filing Non-Profit. (That's A Fair Amount Of Yarn, In A Ball. Just To Start With.)*

*We Can Assume You Are Operating Under The Good Graces & Licenses Of Attorney's. That Have Been Admitted To This Delaware Federal Bankruptcy Court Action. Hence, I Should Out Of Respect For Your New Career. Respectfully, Ask You To Forward This*

*Matter To The White & Case Attorney's Of Record. Which, I Now Request That You Do, And Thank You For It.*

*Now, As I Was Solicited In The First Place By "The Boy Scouts Of America On Television." To Come Forward, And File My Montana Claim. After Pondering, The BSA Big Ask. I Agreed, To Do So. OmniAgents Collected "The National Proof Of Claims." I Sent (2 High Definition Color Copies Of At Least 50 Pages Each.) Certified Mail, With A Pre-Paid Return Large UPS Document. (Pre-Postage Paid) For Certification & Prompt Return To Me. Both Copies Were (Lost By OmniAgents.) Then Partly Found...*

*Months Of Back & Forth, Then Took Place With OmniAgent Executives. To Thus, Secure My Claim Number & A Returned Court Stamped Copy Of My Proof Of Claim.*

*My High Definition Color Copy & Pre-Paid OmniAgent Filing. Was Never Returned To Me. I Did Receive A "Double-Sided Badly Collated, Poorly Copied Return Proof Of Claim Back From OmniAgents." Hence, My Added Concern To Quality Control At OmniAgents.*

*In Short, I Am Not Going To Go Through "That Exercise In Foolishness Again." With The Binding BSA Ballot & Federal Court Contract That OmniAgents Has Sent To Me, For BSA.*

*Yet, Here We Are Again In Part.*

*Now, As You Know. OmniAgents Is Paid By BSA. Naturally Of Course, I Have Seen Your White & Case Billing Also.*

*We Don't Have The Noticing Agent Selection Process In Hand, At The Moment. But Can Get It. Which Should Be A Competitive Process Of The Top 3, By Delaware Rules. If They Were Followed.*

*Yet, By Keeping Me Blind, And Without A Certified Copy Of My Verified Voting Data. They Have Assumed The Position Of "My UnAuthorized Agent, My Proxy Voter, My Fiduciary, And My Legally Bound Partner. In A Federal Bankruptcy Creditors Chapter 11 Election.*

*Voting Integrity Is "Simply The King Of Concerns In Elections." Show Me What You Voted For Me In Your Data Collection & My File. They Certify It..."Easy & Simple & Return It To Me." My Ballot Was Sent To California. The Case Is In Delaware. My Claim Is In Montana. Omni Is A Foreign Corporation In Some States, And A Domestic In Another. I Have Not Given Them "A Power Of Attorney," To Vote For Me Or Bind Me To A Federal Contract. I Did Not Find A*

*Blanket Bond Or Fiduciary Bond For OmniAgents On File. Are They Accountable..."You Bet." I Also Was Not Given The Name, Of The Election Sworn Examiner. As BSA Remains "The Debtor In Possession." They Are Obligated To Disclose." Or Be Compelled...*

*Because, OmniAgents Has Required Your Counsel, And White & Case Has Refused My "Good Faith & Fair Election Request." Then Has Summarily "Removed Me From Certification, And Given That To Others." Whom Of Which. We Haven't A Clue.*

*This Now Is, A "Conflict Of Interest BSA Election Dispute...Among Other Things." The TCC, The Attorney's For The TCC, And The U.S. Trustee's... Then Are Obliged By Federal Rules. To Report This...To The Federal Court. That "This Is A Disputed Chapter 11 Election."*

*Base On Several Grounds...But Highlighted By "Noticing & Solicitation Agent Incompetence Etc." Paving The Way For Attorney Generals, Of Each Involved State. To Provide Intervention, And Consumer Creditor Protection. Among Several Other State & Federal Watchdog Agencies.*

*We Have Been Repeatedly Told, That The Joint Estates Of The Boy Scouts Of America. Are Looming & On The Cliff's Of Insolvency. That BSA Intends To Sell The Settlement Estate Assets, To Continue This Injustice, Into 2022. Fair Enough! That Shows Ample Cause, For Creditor Estate Recovery Concerns. For District Court Action, DOJ Investigations, U.S. Marshal Search, Seizure, And Public Auctions Of BSA Assets. There Is A Fine Line Between. Acting In Good Faith, And Non-Profit Bankruptcy Corruption. We Are Looking It Today.*

*We Have Been Denied An Ombudsman, A Righteous Voting & Tabulation 3ʳᵈ Party Examiner, And Certification Of Our Voting Data. We Were Sent "Grossly Unreadable BSA Plan & Voting Documents." That Have Been Continually Changed.*

*The Removal Of OmniAgent's, From The Case Is Now Warranted. To Be Given To The Next Qualified Noticing Agent For A "Re-Solicitation Of A Fair & Fully Disclosed Election.*

*White & Case Has Built A Number Of Extremely Questionable Walls, During This Chapter 11 Mass Court Case. Including Mediation Issues, Which Her Honor Has Brought Forward. There Is Much, To Cause Creditor Increasing Dismay. When Relief Was Promised & Published As "The Mission."*

*Laws & Rules, Have Been Broken. The Election Is Tainted & Disputed. Serious Conflicts Of Interests, Are Now Evident & Glaring At Creditors. BSA Has Lost The Right. For Debtor In Possession Status, exclusivity Privileges. Vast Amounts Of Discovery Has Been Withheld By The Debtor Still.*

*That Concludes My Opening Remarks, To You Ms.Tuffey, And Those Who Read This. As You Have Stepped In. As "The Shield For Ms. Nownes, The Company Of OmniAgents, And The Joint BSA, And Associates.*

*Please Let Me Know How White & Case, Would Like To Resolve This Creditor Election Conflict. As Several, Other Parties Must Be Notified. To Investigate & ReTool These Issues. About 20 Months Of Posturing, And A Billion Dollars In Billing. We All See, The Writing On The Wall. It's Not Getting Better, For Scouting.*

*Best Wishes And Regards To You,*
*Michael Cutler*

*www.uscourts.gov/services-forms/bankruptcy/approved-bankruptcy-notice-providers*
**The List Of Other Noticing Agents That Can Be Vetted For Continued Service On This Case.**

*www.uscourts.gov/sites/default/files/ao030.pdf*
**You Can Use This Example With Modifications For My Certified Voting OmniAgent's Data Entry.**

*www.uscourts.gov/sites/default/files/form_b2640_0.pdf*

**In 2022, With Increasing "Bad Faith Topping The List." By BSA, And The BSA Attorneys. We Need To Get Serious About U.S Marshal Involvement & Liquidation Pre-Planning. The Oil Market Has Tanked, And Economic Fire Sales Are Rampant. All Affecting BSA Settlement**

**Figures. With BSA Attorney's Declaring Plan Assets Will Shortly Become The Financial Life-Raft. The Party In BSA Texas Is Over, Ms. Tuffey.**

**As BSA Intentions, Are Stating One Thing...But Actions On Behalf Of The Debtor. Have Increasingly Tipped The Scales Of Federal Judicial Justice, And Added Injury To The Creditors. We, The Creditors Have Not Led The BSA To Liquidation. They Have Authored & Acted Their Way...In The Liquidation Emergency Planning. But, It Is Now Time To End What Has (NOT) Been Working.**

**Claims Agents**
**Pursuant to 28 U.S.C. § 156(c), The Court may delegate various document-maintenance tasks to an Outside Agent Paid by The Estate. Under section 156(e), however, the Clerk of Court remains the Official Custodian of the Court's Records and Dockets. Of The Records when a Claims Agent is used.**

**PROTOCOL FOR THE EMPLOYMENT OF CLAIMS AND NOTICING AGENTS UNDER 28 U.S.C. 156(c)**
*https://www.deb.uscourts.gov/sites/default/files/PROTOCOL%20FOR%20THE%20EMPLOYM ENT%20OF%20CLAIMS%20AND%20NOTICING%20AGENTS%20UNDER%2028%20U.S.C.%20156 %28c%29/Claims%20Agent%20Protocol%20eff%202-1-2012.pdf*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Re Docket Nos. 6528, 7832, |

8039, 8345, 8346, 8382

**PRO-SE CLAIMANT NUMBERS SA-██████ & SA-███ DISCLOSURE**
**OF TOPICS ON WHICH CLAIMANT SUBMITS**
**IN CONNECTION WITH ITS PLAN OBJECTIONS**

Pursuant to the *Order (I) Scheduling Certain Dates and Deadlines in Connection with Confirmation of the Debtors Plan of Reorganization, (II) Establishing Certain Protocols, and (III) Granting Related Relief* [Docket No. 6528] (the "Scheduling Order"), Pro-Se Claimant Numbers SA-██████ & SA-███ in the above-captioned chapter 11 cases, hereby submits its disclosure of topics on which it submits (the "Disclosure") in support of its objections to plan confirmation.

**Topics on which Pro-Se Claimant SA-████ & SA-████ submits objections:**

    (a)    The Local Councils' ability to contribute more than $600 million to the Settlement Trust and whether they are making a substantial contribution.[2]

    (b)    The Debtors' Liquidation Analysis, including, without limitation, whether the hypothetical liquidation of the Debtors and the Local Councils would result in a larger distribution to Class 8 (Direct Abuse Claimants) than would occur under the Plan.

    (c)    The nature and amount of the claim of the Pension Benefit Guarantee Corporation, including, without limitation, whether the Local Councils are

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of the Debtors' respective federal tax identification numbers, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized Terms not otherwise defined herein shall have the meanings given to them in the *Amended Disclosure Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 7832]

liable on the claim.

(d)     The value and limits of the insurance policies available with respect to the Abuse Claims, the appropriate manner to assess the value and limits, and the reasonableness of settlements with Hartford, any other insurers, TCJC and other Chartered Organizations.

(e)     The valuation of Direct Abuse Claims, including valuation methodology and analyses of the factors and considerations relating to such valuation.

(f)     The feasibility of the Plan, including, without limitation, the Debtors' ability to achieve the financial projections set forth in the Disclosure Statement and to satisfy the BSA Settlement Trust Note.

(g)     Evaluation of the adequacy and efficacy of the Debtors' current youth protection program recommendations for replacement/modification of the Debtors' current youth protection program and management/governance structure to enhance the adequacy and efficacy of the Debtors' youth protection program.

(h)     The Claims Allowance Process in the Trust Distribution Procedures.

(i)     Any other subject raised in support of or in opposition to the plan that is appropriate.

(j)     *THIS PRO-SE CLAIMANT ALLEGES, OBJECTS, AND DISPUTES THE FINAL CERTIFICATION TABULATION RESULTS AS FALSE, AND DECLARATION OF CATHERINE NOWNES-WHITAKER OF OMNI AGENT SOLUTIONS REGARDING THE SOLICITATION OF VOTES AND FINAL TABULATION OF BALLOTS CAST TO BE ALSO FALSE, ON THE SECOND MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC*

(k)     *THE ELECTION RESULTS ARE DISPUTED. THE UNITED STATES TRUSTEES, DEBTORS COUNSEL, COURT CLERK, OMNI AGENT SOLUTIONS, THE TCC, PACHULSKI STANG ZIEHL & JONES LLP, AND DOJ FRAUD DIVISION HAVE BEEN ELECTONICALLY NOTIFIED. TO THE SPECIFICS OF THE DISPUTE. THE PLAN IS UNCONFIRMABLE. AS THE RESULTS OF THE ELECTION ARE ALLEGED ON GROUNDS, TO BE FRAUDULENT.*

Pro-Se Claimant No. *SA-*▮▮▮ *& SA* ▮▮▮

Dated:  February 2, 2022          ▮▮▮▮▮▮

Email ▮▮▮▮▮▮▮▮

Exhibit A
Final Tabulation Summary – Class 8 and Class 9

Debtor: Boy Scouts of America
Case No. 20-10343
Ballot Summary Results

**Class 8 Summary:** Voting Outcome: Accepted
Direct Abuse Claims

| | Total Valid | All | | Master Ballots | | Direct Ballots | |
|---|---|---|---|---|---|---|---|
| | | Accepted | Rejected | Accepted | Rejected | Accepted | Rejected |
| # Votes: | 58,536 | 49,463 | 8,073 | 6,262 | 3,823 | 42,201 | 4,250 |
| Vote %: | | 85.72% | 14.28% | 62.09% | 37.91% | 90.85% | 9.15% |
| Amount: | $56,536.00 | $48,463.00 | $8,073.00 | $6,262.00 | $3,823.00 | $42,201.00 | $4,250.00 |
| Amount %: | | 85.72% | 15.82% | 62.09% | 37.91% | 90.85% | 9.15% |
| Elect Expedited Distribution: | 7381[1] | 6,729 | 505 | | | | |
| Elect Expedited Distribution %: | 13.06% | 13.68% | 7.25% | | | | |
| # Opt Out Elections: | 22,004 | | | | | | |

**Class 9 Summary:** Voting Outcome: Accepted
Indirect Abuse Claims

| | Total Valid | Accepted | Rejected |
|---|---|---|---|
| # Votes: | 7,239 | 5,966 | 1,273 |
| Vote %: | | 82.41% | 17.59% |
| Amount: | $7,239.00 | $5,966.00 | $1,273.00 |
| Amount %: | | 82.41% | 17.59% |
| # Opt Out Elections: | 5505 | | |

Debtor: Delaware BSA, LLC
Case No. 20-10342
Ballot Summary Results

**Class 9 Summary:** Voting Outcome: Accepted
Indirect Abuse Claims

| | Total Valid | Accepted | Rejected |
|---|---|---|---|
| # Votes: | 775 | 628 | 147 |
| Vote %: | | 81.03% | 18.97% |
| Amount: | $775.00 | $628.00 | $147.00 |
| Amount %: | | 81.03% | 18.97% |
| # Opt Out Elections: | 609 | | |

[1] Omni received 70 Class 8 Ballots in which the holder made the Expedited Distribution Election but did not vote to accept or reject the Plan, which are included in this total.

Next

# Boy Scouts of America Claim Upload Confirmation

Received: **Friday, November 6, 2020 2:01 PM**

From: **documentsend@omniagnt.com**

Your Sexual Abuse Survivor Proof of Claim in the matter of Boy Scouts of America (Case # 20-10343) has been successfully submitted.

Claim Identifier: 11-06-2020-1976-13

You will receive a second email with your claim number within seven (7) calendar days.

As the designated claims agent in this matter, Omni Agent Solutions is responsible for maintaining the official court docket. Pursuant to the Bar Date Order [Docket No. 695], Sexual Abuse Survivor Proofs of Claim will not be available to the public on the court docket unless you have elected on your claim form to publicly release your identity and your Sexual Abuse Survivor Proof of Claim.

If you or someone you know did not initiate this claim submittal, or if you have questions about the handling or processing of your claim, you should contact us at contact@omniagnt.com.

Click here to submit another claim.

Omni Agent Solutions

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

GENERAL ORDER – Order Setting Proof Of )
Claim Bar Dates in All Cases Under )
Subchapter V of Chapter 11 )

  **AND NOW,** this 14th day of September 2020, it is hereby

  **ORDERED,** that this Standing Order governs all chapter 11 reorganization cases where

the debtor elects to have subchapter V of Chapter 11 apply and no bar date has otherwise been

specifically set by the Court; and it is further

  **ORDERED,** that under Federal Rule of Bankruptcy Procedure ("FRBP") 3003(c)(3), and

subject to FRBP 3003(b), an unsecured creditor or an equity security holder whose claim or

interest is not scheduled or is scheduled as disputed, contingent, or unliquidated, has a proof of

claim timely filed if it is filed not later than sixty (60) days after the date of the order for relief in

each case, except that a proof of claim filed by a governmental unit is timely filed if it is filed not

later than one-hundred eighty (180) days after the date of the order for relief.

Dated: September 14, 2020

_____
Chief Judge Christopher S. Sontchi

"THE MORMON EXTERMINATION ORDER," LEGAL IN MISSOURI FOR 138 YEARS...BEGS THIS PRESENT DELAWARE "MASS TORT" QUESTION?

WILL WE STAND FOR A FORCED MARCH TO A BSA CHANNELING ORDER, BASED ON A "DISPUTED ELECTION," AND TRULY FAULTY BATES STUDY?

NO, YOUR HONOR. THIS WILL NOT STAND.

ARE MORMON SCOUTING VICTIMS FAMILIAR WITH EXTREME PRESSURE, HATRED, ATTEMPTED MURDER, RAPE, CRIMES AGAINST HUMANITY, CRIMINAL ASSAULT, TORTURE, KIDNAPPING, RELIGIOUS PERSECUTION, LOSS OF CONSTITUTIONAL & CIVIL RIGHTS, AND LOSS OF PEACE, HOPE & HAPPINESS.

INCLUDING BE THREATED AT EVERY LEVEL OF THE HUMAN EXPERIENCE.

EVEN IN OUR BELOVED UNITED STATES OF AMERICA. IN THE VERY STATE OF MISSOURI. THE HEARTLAND OF THIS LOVED NATION. MORMONS LIVED WITH "THE EXTERMINATION ORDER." WHICH WAS ON THE BOOKS FOR 138 YEARS. SINCE 1938, IT WAS LEGAL IN MISSOURI TO EXTERMINATE A MORMON LEGALLY. DECLARED BY LILBURN BOGGS, GOVERNOR OF MISSOURI BY EXECUTIVE ORDER.

RAISING AN ARMY OF 500 SOLDIERS TO KILL & EXTERMINATE MORMONS AT WILL. WHICH WAS IMMEDIATELY DONE. MORMONS ARE TAUGHT, AND TRAINED FROM A YOUNG AGE. THAT WE MUST ALWAYS BE AWARE OF TRAITORS. TO BE MINDFUL OF THOSE WHO MEAN US HARM. WHOEVER, THEY MIGHT BE. EVEN OUR DEARLY RESPECTED UNITED STATES GOVERNMENT CAN TURN AGAINST THE INNOCENT.

FOR THIS CAUSE...THIS PRO-SE CREDITOR/CLAIMANT WILL BE STANDING FAST. UNTIL RELIEF, PEACE, JUSTICE, AND SATISFACTION CAN BE REALIZED.

THE PRICE HAS BEEN HEAVY, AND THE BURDEN REAL. HER HONOR HAS THE POWER, AND AUTHORITY TO HEAL A MULTITUDE OF SINS. COMMITTED BY SCOUTING PEDOPHILES AND THE BOY SCOUTS OF AMERICA NATIONAL, LOCAL COUNCILS, CHARTER ORGANIZATIONS, AND INSURERS.

IT IS TIME FOR RELIEF...ON BEHALF OF SCOUTING ABUSE CHILDHOOD VICTIMS.

the same point for the purpose of intercepting the retreat of the Mormons to the north. They have been directed to communicate with you by express, you can also communicate with them if you find it necessary. Instead therefore of proceeding as at first directed to reinstate the citizens of Daviess in their homes, you will proceed immediately to Richmond and then operate against the Mormons. Brig. Gen. Parks of Ray, has been ordered to have four hundred of his brigade in readiness to join you at Richmond. The whole force will be placed under your command.

I am very respectfully, yr obt st [your obedient servant],

L. W. Boggs, Commander-in-Chief.[14]

# EXHIBIT

# 7

**WHAT A CHURCHILL PLAN LOOKS LIKE. THE AMERICAN WAR FIGHTING GENERATIONS, THAT WERE DEEPLY AFFECTED BY THIS WW2 EFFORT. STILL LIVE WITH THE MEMORIES AND STORIES OF OUR FAMILY MEMBERS WHO FOUGHT.**

**DID THE BOY SCOUTS OF AMERICA MULTI-DISTRICT LITIGATION (MDL) WAR PLANNERS. THINK MANY OF THE SCOUTING ABUSE SURVIVORS, WOULDN'T REMEMBER WHAT A...**

**"CHURCHILL INSPIRED WAR PLAN LOOKS LIKE?"**

**(THINK AGAIN)**

**-AIRBORNE DROP**

**-DECEPTION**

**-AERIAL ATTACK**

**-NAVAL ATTACK**

**-INVASION**

**-2022 CHANNELING INJUCTION...RIGHT!**





**Churchill Plan Restructure of Councils by National Service Territories**

**Council Name Listing**

182 councils

---

### NST 1 — 14
- Great Alaska (C200/G2)
- Baltimore Area (C600/G1)
- Oregon Trail (C200/G3)
- Denver Lab (C200/G2)
- Tropical (C200/G3)
- Midnight Sun (C200/G3)
- Grand Teton (C200/G3)
- Montana (C200/G3)
- Fair Lakes (C200/G3)
- Cascade Pacific (C200/G2)
- Inland Northwest (C200/G2)
- Pacific Harbors (C200/G3)
- Grand Columbia (C200/G2)

### NST 2 — 14
- Great Southwest (C200/G2)
- Greater Wyoming (C200/G3)
- Pikes Peak (C200/G2)
- Denver Area (C200/G2)
- Verdugo Hills (C200/G2)
- Long Beach Area (C200/G3)
- Las Vegas Area (C200/G3)
- Greater Los Angeles Area (C200/G3)
- Rocky Mountain (C200/G2)
- California Inland Empire (C200/G2)
- Nevada Area (C200/G3)
- San Diego-Imperial (C200/G2)
- Grand Canyon (C200/G3)
- Catalina (C200/G2)

### NST 3 — 20
- Southern Sierra (C200/G3)
- Pacific Skyline (C200/G3)
- Sequoia (C200/G2)
- Chippewa Valley (C200/G3)
- Silicon Valley Monterey Bay (C200/G2)
- Northern Star (C300/G3)
- Las Palmas (C200/G3)
- Orange County (C200/G3)
- Western Los Angeles County (C100/G2)

### NST 4 — 15
- Hawkeye Area (C200/G2)
- Santa Fe Trail (C200/G3)
- Central Illinois (C200/G2)
- Rainbow (C600/G3)
- Cornhusker (C200/G2)
- Three Harbors (C200/G3)
- Coronado Area (C600/G1)
- Ozark Trails (C200/G2)
- Black Hills Area (C600/G1)
- Greater St. Louis Area (C200/G2)
- Jayhawk Area (C600/G1)
- Quivira (C600/G1)

### NST 5 — 12
- Great Rivers (C200/G2)
- Ozark (C600/G2)
- Heart of America (C200/G2)
- Pony Express (C600/G2)
- W.D. Boyce (C200/G2)
- Mississippi Valley (C600/G2)
- Buckeye Area (C200/G3)
- Evangeline Area (C200/G3)
- Three Fires (C200/G3)
- Southwest Illinois (C200/G3)
- Seminole (C600/G2)

### NST 6 — 14
- Bay-Lakes (C200/G2)
- Prairielands (C200/G2)
- Rainbow (C600/G3)
- Three Rivers (C200/G3)
- South Texas (C200/G2)
- Bay Area (C200/G2)
- Chisholm (C200/G2)
- Sam Houston Area (C200/G3)
- Capitol Area (C200/G3)
- Louisiana Purchase (C600/G1)
- Caddo Area (C600/G1)
- Tukabatchee (C600/G2)
- Norwela (C600/G1)

### NST 7 — 16
- Texas Trails (C600/G2)
- Circle Ten (C200/G3)
- De Soto Area (C600/G1)
- Crossroads of the West (C200/G2)
- Longhorn (C200/G3)
- Alamo Area (C200/G3)
- Mobile Area (C600/G2)
- Gulf Coast (C200/G2)
- Greater Tampa Bay Area (C200/G2)
- South Georgia (C600/G2)

### NST 8 — 15
- Golden Spread (C600/G2)
- Southwest Florida (C200/G2)
- Gulf Coast (C200/G2)
- Alabama-Florida (C200/G3)
- Flint River (C600/G1)
- Heart of Florida (C200/G2)
- North Florida (C200/G2)
- Central Florida (C200/G2)
- Gulf Stream (C200/G2)
- Suwannee River Area (C600/G2)

### NST 9 — 17
- Hoosier Trails (C600/G1)
- Greater Niagara Frontier (C200/G3)
- Buffalo Trace (C600/G1)
- Theodore Roosevelt (C200/G3)
- Suffolk County (C200/G3)
- Greater New York (C100/G2)
- Seneca Waterways (C200/G3)
- Greater Hudson Valley (C200/G3)
- Longhouse (C200/G3)
- Leatherstocking (C600/G2)

### NST 10 — 14
- Twin Rivers (C200/G2)
- Iroquois Trail (C600/G2)
- Baden-Powell (C600/G1)
- Allegheny Highlands (C600/G1)
- Five Rivers (C200/G3)
- Connecticut Yankee (C200/G3)
- Green Mountain (C600/G1)

### NST 11 — 15
- Katahdin Area (C600/G1)
- Transatlantic (C600/G3)
- Housatonic (C600/G1)
- Narragansett (C200/G3)
- Del-Mar-Va (C200/G3)
- Heart of New England (C600/G3)
- Mayflower (C200/G3)
- Western Massachusetts (C200/G3)
- Spirit of Adventure (C200/G3)
- Cape Cod and Islands (C600/G2)

### NST 12 — 15
- National Capital Area (C100/G3)
- Shenandoah Area (C600/G2)
- Monmouth (C200/G3)
- Northern New Jersey (C200/G3)
- New Birth of Freedom (C200/G3)
- Patriots' Path (C200/G3)
- Chester County (C200/G3)
- Minsi Trails (C200/G3)
- Garden State (C200/G3)
- Ohio River Valley (C600/G1)
- Susquehanna (C200/G3)

### NST 13 — 18
- Columbia-Montour (C600/G2)
- Washington Crossing (C200/G3)
- Cradle of Liberty (C100/G2)
- Laurel Highlands (C200/G3)
- Chief Cornplanter (C600/G1)
- Buckeye (C200/G3)
- Juniata Valley (C600/G1)
- Jersey Shore (C600/G1)
- Middle Tennessee (C200/G3)
- Pennsylvania Dutch (C200/G3)

### NST 14 — 20
- Northeast Georgia (C200/G3)
- Atlanta Area (C200/G2)
- Greater Alabama (C200/G3)
- Cherokee Area (TN) (C600/G1)
- Westark Area (C600/G1)
- Piedmont (NC) (C200/G3)
- Old North State (C200/G3)
- Blue Grass (C200/G3)
- Central Georgia (C200/G3)

### NST 15 — 20
- Central North Carolina (C200/G3)
- Coastal Carolina (C200/G2)
- East Carolina (C600/G1)
- Pee Dee Area (C600/G1)
- Tuscarora (C600/G1)
- Blue Ridge Mountains (C200/G3)
- Palmetto (C200/G3)
- Indian Waters (C200/G3)
- Old Hickory (C200/G2)

### NST 16 — 15
- Alabama-Florida (C200/G3)
- Pine Burr Area (C600/G1)
- Andrew Jackson (C600/G1)
- Yocona Area (C600/G2)
- Pushmataha Area (C600/G1)

---

**Legend**
Cit/Gr = Council Class/Grade

**Key Factors of Restructuring**
1. Respect of council cultures and its volunteers, communities, state boundaries and natural geographic territories
2. Business commerce, traffic/highway patterns, and future growth trends
3. Optimize the level of service and support to local councils



**(https://scoutingwire.org/)**

HOME (HTTPS://SCOUTINGWIRE.ORG)  >  VOLUNTEERS (HTTPS://SCOUTINGWIRE.ORG/VOLUNTEERS/)

 >  ACTIVITIES (HTTPS://SCOUTINGWIRE.ORG/TOPIC_VOLUNTEER/YOUTH-PROTECTION/)

 >  UNDERSTANDING THE CHURCHILL PLAN AND WHAT IT MEANS FOR SCOUTING

# UNDERSTANDING THE CHURCHILL PLAN AND WHAT IT MEANS FOR SCOUTING

Share this article:

July 17, 2020

In 2019, the National Executive Committee (NEC) of the BSA asked six teams of volunteers and professionals from the local, area, regional and national level – including current or recent youth members and subject-matter experts – to develop plans on how to optimize the BSA for success in key areas based on input provided by more than 1,100 local, area, region and national volunteers and professionals, including:

- Youth Safety: *How do we keep young people safe?*
- Program: *Are the BSA programs aligned with today's young people?*

- Communications and Marketing: *How can National Council improve communication with stakeholders?*
- Organizational Structure: *Do we have the most effective organizational structure?*
- National Council Effectiveness: *Are there changes that would make the National Council more effective?*
- Financial Health: *How do we build a solid financial path forward?*

Since the fall of last year, these six groups convened to assess their designated areas and determine opportunities for growth and improvement in the future as we look to bring Scouting to youth of all backgrounds – regardless of race, faith, nationality, gender or economic circumstances. While the groups were encouraged to think broadly and considered various inputs from interviews and ongoing research, all efforts were anchored in ensuring the delivery of our proven programs in a safe manner grounded in the Scout Oath and Law.

In June 2020, the six groups presented the National Executive Committee (NEC) with proposed recommendations they believed would be needed to strengthen Scouting so that our next century is even stronger than our legacy.

**What are the Next Steps for the Churchill Proposed Recommendations?**

In the next phase of this effort, the National Executive Committee has asked the National Management Team to facilitate the evaluation of the proposed recommendations (noted below) and, as appropriate, develop corresponding action plans that would be executed should the NEC decide to move forward with the respective recommendations. It is important to underscore that the proposals of the six Churchill study groups remain recommendations, are now under review by the National Management Team and appropriate committees, and have not yet been approved by the NEC.

Members of the Scouting family are welcome to provide input to aid in the assessment. Click here to provide feedback (http://scouting.co1.qualtrics.com/jfe/form/SV_eeMmv4fWZ1dlh9X) about any of the proposed recommendations.

After their deliberation, the Management Team and the appropriate committees will recommend to the NEC whether the individual proposed recommendations should be adopted, amended, delayed, or declined given interests of the organization.

In the fall of 2020, the NEC will review and weigh these recommendations with the corresponding proposed action plans to decide how to move forward, including deciding whether to accept the recommendation, how to implement, and against what timeframe.

**The Importance of Embracing Change**

Meaningful change is rarely easy. However, it is a process that is necessary to grow and succeed, which is a shared goal we all have for Scouting, whether you are a Scout, a volunteer, a professional, a parent, or a donor. Our commitment to the mission of Scouting will continue to guide this effort, and that commitment will also be crucial in guiding the bold steps needed to ensure future generations can benefit from Scouting even more than those that trekked before them.

*The 26 Proposed RECOMMENDATIONS Being Considered:*

- Reinvigorate the on-boarding program for new Scout families and members, with a continuing key focus on "Safe Scouting" and "Keeping Young People Safe."
- Streamline all Safe Scouting Resources and consolidate in one location.
- Insure mature and timely reporting, sharing, enforcement and transparency of safety incidents.
- Provide tools/resources for councils to deliver Youth Protection/Safety Seminars.
- Hire a youth adolescence expert on the national level to guide program development.
- Combine Sea Scouting into Exploring as an aquatic focused career path.
- Sunset Learning for Life in-school program/curriculum.
- Evaluate program methods and age parameters to provide an engaging option that enables youth members to transition to adult leadership roles and remain active in Scouting with an ongoing commitment to safety.
- Establish a volunteer corps for young adults ages 18-29.
- Streamline the unit rechartering process.
- Prioritize National BSA strategic communications and marketing and make additional investments in related efforts.
- Establish a national Chief Communications and Marketing Officer.
- Update and enforce BSA's national brand standards.
- Consolidate local and national websites into a single unified web platform.
- Leverage High Adventure bases in overall marketing communications strategy.
- Combine National Annual Business and the Top Hands meetings.
- Establish minimum standards to be considered a council.
- National should focus on providing councils with support pertaining to program standards, legal, insurance, IT, brand/PR management, HR, and asset management.
- Replace Areas and Regions with one streamlined organization support structure that is focused on council sustainability and effectiveness.
- Establish a fee-based structure for councils in place of BSA National collecting membership fees.
- Create a membership executive position within councils focused on growth and paid on performance.
- Greater council flexibility in operating within brand standards.
- Create a membership category for youth and families with no advancement programs.
- Greater reliance on volunteers to offset national staff reductions.
- Rotate national volunteers back to local councils or new intermediate organization.
- Transition to digital merit badge resources.

Click here to provide feedback (http://scouting.co1.qualtrics.com/jfe/form/SV_eeMmv4fWZ1dlh9X) about any of the proposed recommendations.
()

(https://scoutingwire.org/author/BSA Admin/)



# Comments

**REACH OUT**

24

Upon this battle depends the
   survival of Christian civilization.

Upon it depends our own British life
   and the long continuity of our
   institutions, and our Empire.

The whole fury and might of the enemy
   must very soon be turned on us.

Hitler knows that we will hv to break
   us in this Island, or lose the war.

If we can stand up to him,
   all Europe may be freed,
      and the life of the world
         may move forward into the
            broad and sunlit uplands.

But if we fail,
   then the whole world,
      including the United States,
         and all that we have known and
                           cared for,
      will sink into the abyss of a
         new Dark Age
            made more sinister and
               perhaps more prolonged by
                  the lights of perverted
                     Science.

Let us therefore brace ourselves to
   our duty, and so bear ourselves that
      if the British Empire and
         Commonwealth lasts for a
            thousand years, men will still
               say,

   'This was their finest hour'.

# EXHIBIT

# 8

INSIDER BOY SCOUTS OF AMERICA PRESIDENT MICHAEL SURBAUGH...WHO LIED TO THE WORLD, AND CONGRESS REGARDING EMPLOYING PEDOPHILES IN THE BSA. SHOCKED A NATION OF SCOUTS & PARENTS. HE HAS A 100% CLAIM UNDER THE BSA RESTORATION PLAN FOR ONLY...

$699.388.64.

SIMPLY DISGRACEFUL YOUR HONOR.

WITH THAT LEVEL OF BROKEN PUBLIC TRUST...AND LOSS OF FAITH IN BSA EXECUTIVE LEADERSHIP. WE STAND IN DISBELIEF, THAT THIS IS WHAT AMERICA HAS BECOME UNDER THE REAL CORRUPTION OF "MASS TORT BANKRUPTCY."

IS THIS PLAN EVEN REMOTELY A REFLECTION OF AMERICAN VALUES & LAW?

WE HOPE NOT.

Case 20-10343-LSS   Doc 9041   Filed 04/13/22   Page 136 of 224

Share this article:

April 24, 2019

Fellow Scouters,

The tragedy of child abuse, be it physical, sexual, or emotional is one that is truly heartbreaking.

Painfully, there have been incidents of abuse that occurred in our program, and we sincerely apologize that some despicable individuals used their positions in Scouting to harm children.

First and foremost, the Boy Scouts of America believes victims. To those who were harmed – we grieve with you, we respect you, and we want to help you heal. Over the years, Scouting has provided counseling for victims, no questions asked, for as long as they needed it. Our commitment and responsibility to victims is in keeping with the tenets of the Scout Oath and Law – it's at the core of everything we stand for. That means we want victims to receive fair compensation, and we are committed to finding the best way to do that.

We are also committed to fulfilling our duty to serve the millions of youth and families currently in our programs. Those Scouts and families count on us to deliver life-changing character and leadership opportunities provided by the outdoor adventure methods of Scouting. And, the safety of the youth in our programs is paramount.

I want to be clear – the Boy Scouts of America has never knowingly allowed those who have committed inappropriate acts with children to remain in our program.   *FALSE*

Long before there were smart phones, email, fax machines, the internet, criminal databases or other modern methods available to identify or track predators, the BSA kept records to ensure that anyone seen as unfit to be a leader – even those not charged or convicted of any crime, would be banned forever from our program.

The BSA never covered up the fact that it kept that database. In fact, that database has been the subject of various public news reports over the years.   *FALSE*

The creation of that database was just the first step in the BSA's development of a comprehensive set of strategies designed to provide the best possible youth protection system. Today, record-keeping or databases such as ours are now recommended by experts as an important step in protecting children.

In addition to other protective measures, all participants in Scouting are considered Mandatory Reporters, and as such, are required to report any suspected abuse to the appropriate state child protection authorities. We fully cooperate with law enforcement and wholeheartedly support the prosecution and punishment of convicted individuals.

And while the BSA's database of those banned from Scouting has been used against the organization and made us more vulnerable to lawsuits, if we could go back in time to the 1920s when these records were first created, we would decide to keep them again and again because we firmly believe that doing so has protected millions of kids who have been in our program over the last century.

Scouting is always premised on helping others.

I ask every member of our Scouting family to continue upholding his or her duty to others and to our country by standing up for victims. Believe victims. Support victims on their journey to becoming survivors.

Be outspoken and be advocates for youth protection and prevention of child abuse – in and outside of Scouting.

WIKIPEDIA

# Michael B. Surbaugh

**Michael B. Surbaugh** was the 13th Chief Scout Executive of the Boy Scouts of America (BSA), having succeeded the retiring Wayne Brock on October 1, 2015. He was previously Group Director of HR, Innovation, Exploring and Learning for Life for the BSA. Surbaugh first joined the organization as a professional scouter in 1983.[2]

In November 2019, Surbaugh took a notable medical leave of absence.[3]

On December 29, 2019, Surbaugh's retirement was announced via an email to BSA volunteers. He was succeeded by Roger Mosby.

## Background

Surbaugh earned his Eagle Scout award in Troop 360 in Bethel Park, Pennsylvania in 1976[2] and served on the summer camp staff of the Allegheny Trails Council, the predecessor of the Laurel Highlands Council. He is a graduate of Salem College in West Virginia.[2]

Surbaugh has been met with criticism and praise for his changes in the BSA's admission policies.[3] During his administration, the Executive Board of the Boy Scouts of America has removed the ban against homosexual adult membership, changed the membership application to allow youth to include the gender they identify with instead of requiring the gender on their birth certificate, and has started accepting girls into the Cub Scout and Boy Scout (now renamed Scouts BSA) programs.[4]

### Michael B. Surbaugh



Michael Surbaugh, 13th Chief Scout Executive, Boy Scouts of America

| 13th Chief Scout Executive | |
|---|---|
| **In office** | |
| October 1, 2015 – December 29, 2019 | |
| **Preceded by** | Wayne Brock |
| **Succeeded by** | Roger C. Mosby |
| **Personal details** | |
| **Spouse(s)** | Lisa[1] |
| **Education** | Salem University |

## References

1. "Chief Scout Executive" (https://www.scoutingnewsroom.org/about-the-bsa/national-leadership/chief-scout-executive). *About the BSA*. Boy Scouts of America. Retrieved 2019-09-17.
2. "Local Boy Scouts get new top administrator" (http://www.post-gazette.com/breaking/2007/10/16/Local-Boy-Scouts-get-new-top-administrator/stories/200710160188). *Pittsburgh Post-Gazette*. 2007-10-16. Retrieved 2015-05-29.
3. "At Stressful Time, Boy Scouts Top Boss Goes on Medical Leave" (https://www.nytimes.com/aponline/2019/11/05/us/ap-us-boy-scouts-leader.html). *New York Times*. 2019-11-05. Retrieved 2019-11-08.
4. "Family Scouting" (https://www.scouting.org/familyscouting). *Boy Scouts of America*. Retrieved 2018-04-06.

Boy Scouts of America Appoints Michael Johnson as Youth Protection Director
August 4, 2010
Share this story
Irving, Texas

The Boy Scouts of America announced today that, as part of its commitment to youth protection, it has created the new full-time position of Youth Protection director. Michael "Mike" Johnson, an internationally recognized expert on child abuse detection and prevention, has joined the BSA as Youth Protection director effective July 24, 2010. Johnson will report to Assistant Chief Scout Executive Jim Terry.

"Protection of our youth is at the very heart of Scouting and our most essential goal," said Chief Scout Executive Robert Mazzuca. "The Boy Scouts has long sought continuing improvement in our Youth Protection program in order to provide the safest possible environment for our young people. We are confident that Mike, working in close coordination with other experts in law enforcement, psychiatry and other disciplines, will build upon existing policies to further enhance Scouting's educational and training programs and continue to improve our existing policies and procedures."

"Throughout its history, the Boy Scouts of America has been at the forefront of youth protection," Johnson stated. "I believe in the organization's commitment to youth protection, I am encouraged by the continued progress the Scouts have made, and I will do everything in my power to ensure that Scouting is as safe as possible for all of our members."

Johnson has conducted hundreds of trainings for law enforcement and child services professionals worldwide. A native of San Antonio, Texas, Johnson most recently served in the juvenile division of the Plano (Texas) Police Department. He joined the department in September 1982 and began working in the criminal investigations division devoted to investigating child abuse cases in 1986. He is a founding member of the Collin County Children's Advocacy Center, and in 1996 he was named the center's Child Advocate of the Year. He holds a bachelor's degree in criminal justice with a minor in psychology from Southwest Texas State University in San Marcos, Texas.

Johnson has served on the National Board of Directors for the American Professional Society on the Abuse of Children (APSAC) and was president of the APSAC Texas State Chapter. He has served on numerous other national boards and task forces, including the National Network of Children's Advocacy Centers, the Law Enforcement Subcommittee for several of APSAC's national colloquiums, and the working group for the establishment of the National Center on the Sexual Behavior of Youth. And, he has been instrumental in helping shape state laws to protect children from child abuse.

About the Boy Scouts of America

Serving nearly 2.8 million young people between 7 and 20 years of age at more than 290 councils throughout the United States and its territories, the Boy Scouts of America is the nation's foremost youth program of character development and values-based leadership training.

Media contact: Deron Smith, 214-505-8341

## Washington Examiner

Member Log In Log In | Subscribe Now



# Boy Scouts admit letting sex predators return to scouting, misleading Congress

by Paul Bedard, Washington Secrets Columnist | ✉ | June 04, 2019 02:28 PM

Despite an earlier denial to Congress, the Boy Scouts of America have now admitted that sexual predators were allowed to return to scouting "decades ago" even after "credible accusations of sexual abuse."

In a new letter to Congress, Michael B. Surbaugh, chief Scout executive, said he was "incorrect" in an earlier letter denying that leaders suspected of abuse were allowed to return to scouting.

"When I sent my response to your November 20, 2018 letter, I believed in good faith, and with deeply felt conviction, that BSA would never have knowingly allowed a sexual predator to work with youth," he wrote in a May 28 letter to California Democratic Rep. Jackie Speier, D-Calif., who is leading a probe into Boy Scout abuse claims.

Since then, however, Boy Scouts records dating back 100 years were released and showed that 12,254 children were allegedly abused by 7,819 Scout leaders.

In his new letter, Surbaugh acknowledged that report.

"Since then, I have learned that my response was incorrect," he wrote in the letter provided to Secrets and confirmed by the Boy Scouts of America. It is shown below.

"I have reviewed information that now makes clear to me that decades ago BSA did, in at least some instances, allow individuals to return to Scouting even after credible accusations of sexual abuse. I am devastated that this ever occurred. On behalf of BSA, I sincerely apologize to the individuals affected by this practice," added Surbaugh.

He also said that the Scouts are taking the issue seriously and has hired a law firm to help sort through the charges.

"Nothing is more important than our obligation to Scouts and their parents to provide a safe environment for Scouting. I personally take this matter extremely seriously, and I speak for BSA in assuring you that we fully appreciate the gravity of the issues you have raised," he wrote to Speier.

In a separate statement to Secrets, the Scouts said, "First and foremost, we care deeply about all victims of abuse and sincerely apologize to anyone who was harmed during their time in Scouting. We are outraged that there have been times when individuals took advantage of our programs to abuse innocent children. We believe victims, we support them, we pay for counseling by a provider of their choice, and we encourage them to come forward. It is BSA policy that all incidents of suspected abuse are reported to law enforcement."

It added, "We remove individuals from Scouting based on any allegation of abuse. We steadfastly believe that one incident of abuse is one too many

abuse. This is precisely why we fully support and advocate for the creation of a national registry overseen by a governmental entity, similar to the national sex offender registry, of those who are suspected of abuse or inappropriate behavior with a child, thereby allowing all youth-serving organizations to share and access such information. We call upon Congress and other youth-serving organizations to support this initiative."

Critics of the Scouts, and victims of alleged sex abuse, are comparing the crisis to the Catholic Church's abuse scandal.

The organization is also following the church's campaign to lobby against efforts in states to make suing the Boy Scouts of America easier, according to reports.

Speier and other lawmakers have accused the Boy Scouts of America of not being transparent about the abuse cases or its effort to protect children and Surbaugh made sure to address that in his letter.

"We believe that today we have a robust set of policies and practices to help ensure a safe environment for Scouts, ranging from mandatory training programs to incident reporting systems. But we understand that we must provide transparency regarding BSA's past practices, including those instances in which we did not immediately and permanently remove individuals who had engaged in sexual abuse from access to youth," he wrote.

**Just In...**

IEA announces coordinated release of 60M barrels of oil to buttress US effort

Stay silent or double down: What Hunter Biden intel letter signees are doing now

A UN mandate should provide troops to protect Kyiv and Odessa

'Butcher of Bucha' unmasked by volunteer Ukraine group

Arizona Supreme Court strikes down GOP push to end early voting

# Congress of the United States
## Washington, DC 20515

November 20, 2018

Mr. Michael Surbaugh
Chief Scout Executive, Boy Scouts of
America
10210 Holmes Road
Kansas City, MO 64131-4212

Ms. Ellie Morrison
National Commissioner, Boy Scouts of
America
10210 Holmes Road
Kansas City, MO 64131-4212

Mr. Jim Turley
National Chair, Boy Scouts of America
10210 Holmes Road
Kansas City, MO 64131-4212

Dear Mr. Surbaugh, Ms. Morrison and Mr. Turley:

As Members of Congress responsible for the oversight of congressionally chartered organizations, we write with concerns regarding recent reports that the Boy Scouts of America (BSA) has been advocating against efforts to reduce barriers for victims of child sexual abuse to report decades old abuse.[1] We are also troubled by the implications of these reports for the safety and well-being of former, current, and future members of your organization. Since the Boys Scouts of America announced it will change its name in February 2019 to Scouts BSA, and in anticipation of opening the organization to young women and girls that started with the Cub Scouts this past summer, we write to request a detailed account of the safety procedures and reporting mechanisms you have and will put in place to keep current and future members safe.[2]

We recognize and support the mission of the BSA and the benefits scouting provides to children and young adults. Indeed, many of the signatories of this letter are themselves Girl and Boy Scout alumni, adult volunteers, or both. Historically, BSA has instilled in countless boys and young men the importance of service to others and the self-confidence to succeed in academics and the workforce. Former Boy Scouts have gone on to become leaders in their communities and beyond thanks to the values that BSA taught them. That is why reports of coverups of child sexual abuse,

---

[1] Statute-of-Limitation Laws Can Leave Few Choices for Child Sex-Abuse Victims. That's Why These People Are Trying to Change Them. (2018, September 13). *Time*. Retrieved from http://time.com/5394927/statute-of-limitations-changes/
[2] Boy Scouts Will Drop the 'Boy' in Its Namesake Program, as It Welcomes Girls Next Year. (2018, May 2). *The New York Times*. Retrieved from https://www.nytimes.com/2018/05/02/us/boy-scouts-girls.html

and efforts to stymie the passage of state laws to allow survivors to seek justice, is so concerning from an organization that prides itself on building young people up.[3]

According to recent reports, BSA has allegedly engaged in attempts to shield volunteers it knew to be child predators and worked to advocate against proposals in states such as Georgia, Michigan, and New York that would make is easier for survivors of child sex abuse to come forward. Specifically, these bills would create a "look back window" – a short period of time where victims of child abuse can retroactively file suit despite a state's statute-of-limitations. Other state proposals seek to expand the statute of limitations by increasing the age to which victims of child sex abuse may file new cases and/or eliminating the statute-of-limitations for some felonies related to criminal allegations of child sex abuse altogether.[4] Unfortunately, BSA is on record saying they only support such efforts "on a prospective basis".[5] As BSA prepares to welcome girls and young women into its programs, we are concerned about what your position means for the safety and well-being of these future recruits.

Over the last year, stories detailing the horrific accounts of pervasive sexual abuse in youth organizations, such as U.S.A. gymnastics, have made it crystal clear that we need to conduct extensive oversight into these issues.[6] As a congressionally chartered organization, pursuant to 36 U.S.C. § 30901 et seq., BSA is under an obligation to comply with certain reporting requirements.[7] In recent years, BSA has traveled to Washington to present its annual report to the speaker of the U.S. House of Representatives as part of its "report to the nation." This report includes details about your organization, the programs and initiatives it supports, and major accomplishments and contributions over the past year.[8] We take these reporting requirements seriously and as such respectfully request a detailed account of the safety procedures and reporting mechanisms currently in place to ensure the safety of the young people in BSA's care. Additionally, in response to BSA's expansion of membership to include girls and young women, we want to know what additional safety procedures you are putting into place to make certain that all the individuals in your scouting program are protected from harm.

The well-being of all scouts is of the highest priority. As BSA enters a new chapter of programing for girls and young women, and continues to serve boys and young men, we look forward to working with you to ensure that scouts can safely continue to experience the adventure, excitement, and leadership opportunities that BSA has to offer.

---

[3] Boy Scouts lobby in states to stem the flow of child abuse lawsuits. (2018, May 9). *The Washington Post.* Retrieved from https://www.washingtonpost.com/powerpost/boy-scouts-lobby-in-states-to-stem-the-flow-of-child-abuse-lawsuits/2018/05/08/0eee0a44-47d8-11e8-827e-190efaf1flee_story.html?utm_term=.6cb0fd27cccc

[4] Statute-of-Limitation Laws Can Leave Few Choices for Child Sex-Abuse Victims. That's Why These People Are Trying to Change Them. (2018, September 13). *Time.* Retrieved from http://time.com/5394927/statute-of-limitations-changes/

[5] Boy Scouts lobby in states to stem the flow of child abuse lawsuits. (2018, May 9). *The Washington Post.* Retrieved from https://www.washingtonpost.com/powerpost/boy-scouts-lobby-in-states-to-stem-the-flow-of-child-abuse-lawsuits/2018/05/08/0eee0a44-47d8-11e8-827e-190efaf1flee_story.html?utm_term=.6cb0fd27cccc

[6] USA Gymnastics CEO provides no answers in congressional hearing to discuss sexual abuse. (2018, May 23). *USA Today.* https://www.usatoday.com/story/sports/olympics/2018/05/23/usa-gymnastics-ceo-provides-no-answers-hearing-sexual-abuse/639071002/

[7] Boy Scouts of America, 36 U.S.C. §§ 30901-30908 (1998)

[8] Report to the Nation. (2018, February 26). Retrieved October 16, 2018, from https://www.scoutingnewsroom.org/key-topics/report-to-the-nation/

Thank you in advance for your attention to this critical matter. We look forward to your timely response.

Sincerely,

Jackie Speier

Debbie Dingell

Lucille Roybal-Allard

Wm. Lacy Clay

Alcee L. Hastings

Darren Soto

Sheila Jackson Lee

Robert A. Brady

Bobby L. Rush

# Rep Speier Leads Call for BSA to Detail Steps Taken to Protect Child Sexual Abuse Survivors and to Prevent Future Instances of Abuse

**November 20, 2018**

**Washington, DC** – Today, Congresswoman Jackie Speier (CA-14) and eight of her congressional colleagues sent a letter to the Boy Scouts of America (BSA) requesting detailed information on the reporting mechanics in place for scouts who have survived child sexual abuse and the safety measures BSA has put into place to prevent any future instances of abuse, particularly in light of BSA continuing to open its ranks to girls and young women.

The letter also calls on BSA to include this information as part of their annual report to Congress – which they are required to submit as a Congressionally Chartered Organization. Additionally, the letter expresses serious concerns with recent reports of coverups of child sexual abuse as well as efforts to stymie the passage of state laws that allow survivors to seek justice, especially from an organization that prides itself on preparing young people for today – and for life.

"As Members of Congress responsible for the oversight of congressionally chartered organizations, we write with concerns regarding recent reports that the Boy Scouts of America (BSA) has been advocating against efforts to reduce barriers for victims of child sexual abuse to report decades old abuse. We are also troubled by the implications of these reports for the safety and well-being of former, current, and future members of your organization," **the Members wrote.** "Since the Boys Scouts of America announced it will change its name in February 2019 to Scouts BSA, and in anticipation of opening the organization to young women and girls that started with the Cub Scouts this past summer, we write to request a detailed account of the safety procedures and reporting mechanisms you have and will put in place to keep current and future members safe."

**Click here** for a copy of the letter signed by Representatives Debbie Dingell (MI-12), Lucille Roybal-Allard (CA-40), Wm. Lacy Clay (MO-01), Alcee L. Hastings (FL-20), Darren Soto (FL-09), Sheila Jackson Lee (TX-18), Robert A. Brady (PA-01), and Bobby L. Rush (IL-01).



BOY SCOUTS OF AMERICA·
NATIONAL COUNCIL

May 28, 2019

The Honorable Jackie Speier
U.S. House of Representatives
Washington, D.C. 20515

Dear Representative Speier,

I write in response to your May 23, 2019 letter, and to address my response to your earlier
November 20, 2018 letter, both of which concerned the handling of sexual abuse allegations
by Boy Scouts of America ("BSA") throughout its history.

I have been involved with BSA practically my entire life, and I've served as a BSA professional
employee for almost my entire professional career. I have the highest respect for this
organization and the vital role that it plays in American life. When I sent my response to your
November 20, 2018 letter, I believed in good faith, and with deeply felt conviction, that BSA
would never have knowingly allowed a sexual predator to work with youth. I told you that in
my response. Since then, I have learned that my response was incorrect. I have reviewed
information that now makes clear to me that decades ago BSA did, in at least some instances,
allow individuals to return to Scouting even after credible accusations of sexual abuse. I am
devastated that this ever occurred. On behalf of BSA, I sincerely apologize to the individuals
affected by this practice.

BSA has taken significant steps over many years to ensure that we respond aggressively and
effectively to reports of sexual abuse, as described in my prior letter to you. For example, in
the 1980s, BSA created a Youth Protection Task Force and issued its first Youth Protection
Guidelines. In 1991, BSA prohibited one-on-one adult and youth activities. In 2003, BSA
began supplementing its screening process by conducting computerized criminal background
checks on all new adult volunteer applicants. In 2011, we created a hotline, ScoutHelp, to take
calls from those calling to report having been a victim of abuse while registered in Scouting.

We believe that today we have a robust set of policies and practices to help ensure a safe
environment for Scouts, ranging from mandatory training programs to incident reporting
systems. But we understand that we must provide transparency regarding BSA's past practices,
including those instances in which we did not immediately and permanently remove
individuals who had engaged in sexual abuse from access to youth.

Nothing is more important than our obligation to Scouts and their parents to provide a safe
environment for Scouting. I personally take this matter extremely seriously, and I speak for
BSA in assuring you that we fully appreciate the gravity of the issues you have raised. BSA's
National Executive Committee ("NEC") has retained Covington & Burling LLP as outside
counsel to assist the NEC in reviewing available information concerning past and present BSA

1325 West Walnut Hill Lane
P.O. Box 152079
Irving, TX 75015-2079
972-580-2000
www.scouting.org



Prepared. For Life.





## BOY SCOUTS OF AMERICA
NATIONAL COUNCIL

practices regarding sexual abuse, in order to facilitate a timely, complete, and accurate response to your inquiry. I wholeheartedly support this decision. Covington will report directly to the non-executive members of the NEC. They have instructed Covington to contact your staff immediately to facilitate a response to the questions posed in your May 23, 2019 letter and any other questions that you may have.

Sincerely,

Michael B. Surbaugh
Chief Scout Executive

cc: The Honorable Judy Chu
    The Honorable David N. Cicilline
    The Honorable Debbie Dingell
    The Honorable Anna G. Eshoo
    The Honorable Alcee L. Hastings
    The Honorable Ann Kirkpatrick
    The Honorable Doris Matsui
    The Honorable Gwen Moore
    The Honorable Lucille Roybal-Allard
    The Honorable Bobby Rush
    The Honorable Dina Titus

Prepared. For Life.




# Chartered organizations

*There are more than **100,000** chartered organizations*

## Faith-based organizations

## Civic organizations

## Educational organizations





SOURCE: scoutingnewsroom.org

DESERET NEWS GRAPHIC

Share this article:

December 12, 2018

I am writing to you today in anticipation of news reports that will speculate about the BSA's financial position. We have an important duty, and an incredible opportunity, to focus as an organization on keeping children safe, supported and protected, and preparing youth for their futures through our nation's foremost program of character development and values-based leadership training.

To do so in perpetuity, we are working with experts to explore all options available to ensure that the local and national programming of the Boy Scouts of America continues uninterrupted.    We have a social and moral responsibility to fairly compensate victims who suffered abuse during their time in Scouting, and we also have an obligation to carry out our mission to serve youth, families and local communities through our programs.

We care deeply about all victims of child sex abuse and we are steadfast in our belief that one incident of child abuse is one too many. We sincerely apologize to anyone who was harmed during their time in our programs.  As you all know, we have always taken care of victims – we believe them, we believe in fairly compensating them and we have paid for unlimited counseling, by a provider of their choice, regardless of the amount of time that has passed since an instance of abuse. Throughout our history we have taken proactive steps to help victims heal and prevent future abuse. I want to stress that at no time in our history have we knowingly allowed a sexual predator to work with youth, and we always seek to act swiftly when alerted to abuse allegations.

Please know that these matters continue to have the full attention of the highest levels of our organization, and we will communicate transparently as there are developments or updates to share.   I wanted to update you today due to the news speculation, and I want to assure you that our daily mission will continue and that there are no imminent actions or immediate decisions expected.

Thank you for your continued support of the Boy Scouts of America.


Sincerely,

Mike Surbaugh

BSA Chief Scout Executive

This is Google's cache of https://gothamist.com/news/boy-scouts-refusal-to-conduct-background-checks-led-to-staggering-amount-of-sexual-abuse (https://gothamist.com/news/boy-scouts-refusal-to-conduct-background-checks-led-to-staggering-amount-of-sexual-abuse). It is a snapshot of the page as it appeared on Mar 17, 2022 02:37:01 GMT. The current page (https://gothamist.com/news/boy-scouts-refusal-to-conduct-background-checks-led-to-staggering-amount-of-sexual-abuse) could have changed in the meantime. Learn more. (http://support.google.com/websearch/bin/answer.py?hl=en&p=cached&answer=1687222)

Full version     Text-only version (http://webcache.googleusercontent.com/search?q=cache:-zVuY-RfDM8J:https://gothamist.com/news/boy-scouts-refusal-to-conduct-background-checks-

Tip: To quickly find your search term on this page, press Ctrl+F or ⌘-F (Mac) and use the find bar.

NEWS (/NEWS)

# Boy Scouts' Refusal To Conduct Background Checks Led To Staggering Amount Of Sexual Abuse

BY CHRISTOPHER ROBBINS (/STAFF/CHRISTOPHER-ROBBINS)

PUBLISHED DECEMBER 2, 2012  |  MODIFIED DECEMBER 2, 2012



The LA Times continues to analyze the cache of files released by the Boy Scouts of America in September (http://laist.com/2012/09/17/report_homophobic_boy_scouts_were_a_safe_haven.php) that document allegations of sexual misconduct from 1970 to 1991, and finds that the organization's refusal to conduct criminal background checks on its scoutmasters (http://www.latimes.com/news/local/la-me-scouts-screening-20121202,0,3619516.story) led to a staggering amount of sexual abuse. The BSA did not require background checks for volunteers until 2008, more than 20 years after organizations like Big Brothers Big Sisters ordered them. From 1985 to 1991 alone, more than 230 men with criminal histories of sex crimes against children were admitted to scouting, and were responsible for the molestation of around 400 Boy Scouts.

The BSA pushed to defeat state legislation that would require background checks, and promised to properly vet volunteers without it—in part through the 1,900 "perversion files" kept on suspected child abusers that were previously shrouded in secrecy before being released in September. The files also contain warnings from parents and scout leaders who plead with the BSA to conduct due diligence on when selecting volunteers.

"BSA is only creating an illusion of performing what they claim," one Scout chairman wrote to headquarters in 1989. "It becomes quite clear that BSA is more concerned in 'passing the buck' than in accepting responsibility for those who are its adult leaders." In 1994, when the Boy Scouts begun mandating checks for all employees but not volunteers, a spokesman noted they couldn't afford the $41 million it would cost to vet them: "We don't have that." That year, the BSA took in $486 million.

It wasn't until 2004 that checks became mandatory on all volunteers, but the BSA still refused to conduct them on those who were already in the organization. Soon after, a longtime scoutmaster was convicted of fondling a scout, and it was revealed that he had "sexually assaulted juvenile males in every area of the country he has lived in during the last 40 years." In 2008, the BSA required checks for everyone.

A spokesman for the BSA responded to the LA Times' report: "Numerous independent experts have recognized that our programs for protecting Scouts from abuse (http://www.scouting.org/sitecore/content/BSAYouthProtection/BSA_Communications/Q_and_A.aspx) are among the best in the youth-serving community."

**NYC news never sleeps. Get the Gothamist Daily newsletter and don't miss a moment.**

your@email.com

By submitting your information, you're agreeing to receive communications from New York Public Radio in accordance with our Terms (https://www.wnyc.org/terms/).

#BOY SCOUTING [/TAGS/BOY-SCOUTING]   #BSA [/TAGS/BSA]

#PEDOPHILES [/TAGS/PEDOPHILES]   #SEXUAL ABUSE [/TAGS/SEXUAL-ABUSE]

**Do you know the scoop?**   Comment (/news/boy-scouts-refusal-to-conduct-background-checks-led-to-staggering-amount-of-sexual-abuse#comments) below or Send us a Tip (mailto:tips@gothamist.com)

# Ex-Boy Scouts official blasts child-protection efforts

By RANDALL CHASE    October 12, 2021

DOVER, Del. (AP) — The former youth protection director for the Boy Scouts of America said Tuesday the organization is not doing enough to protect children from sexual abuse and is still trying to maintain a veil of secrecy over decades of past abuse.

In a speech at the National Press Club, Michael Johnson urged Congress to investigate the BSA's efforts to cover-up decades of past abuse, as well as the dangers he said the organization still poses to children.

"The Boy Scouts of America is not safe for kids. It is safer, but it is not safe for kids," he said.

"We failed you. I failed you," a tearful Johnson added in remarks aimed at abuse survivors.

Johnson was terminated in December in what the Boy Scouts described as a financial restructuring. He refused to sign non-disclosure and non-disparagement agreements in exchange for a severance payment.

"I'm fed up with people telling me in that organization what to say, how to say it, and what to believe," said Johnson, who was hired in 2010 as the BSA's first youth protection director.

ADVERTISEMENT

A spokesperson for the Boy Scouts said there was no attempt to buy Johnson's silence and the terms in the severance package were the same as those for other eligible employees who were terminated.

## WORLD NEWS

Diplomatic shuttle: Macron heads to Kyiv after Putin talks

EXPLAINER: How China got blue skies in time for Olympics

Ex-president takes lead in Costa Rica vote;

No handshakes: Philippine presidency

The Boy Scouts issued a statement Tuesday expressing appreciation for Johnson's dedication to youth safety and for the effect he had on the organization.

"We are disappointed to hear Mr. Johnson's characterization of the program he spearheaded and the concerns he raised, especially given his past public support for the robust measures the BSA instituted at his recommendation," the statement read.

"Today, Scouting is safer than ever before," the statement adds, citing many policies that have been implemented in recent years.

"While any instance of abuse is one too many, it's important to know that the vast majority of claims in the BSA's Chapter 11 case predate our modern youth protection policies. Specifically, 85% or more of the claims allege a first instance of abuse prior to 1990, and 50% or more of the claims allege a first instance of abuse prior to 1974."

In an Oct. 6 letter to Congress, Johnson urged lawmakers to begin investigations and hearings into the "high risk of child sexual abuse that exists within Scouts BSA."

Scouts BSA is the traditional Scouting experience for children in fifth grade through high school, according to the BSA's website.

In the letter, Johnson touted several improvements in youth protection policies during his tenure but nevertheless described them as "drop in the bucket" better suited for "low-risk" organizations, not "high-risk" organizations such as the Boy Scouts.

"Throughout my time at Scouts BSA, I witnessed decisions being made that showed the top priority of the organization was not the safety of children, but the preservation of the reputation and brand of the institution and its top sponsoring organizations," Johnson wrote.

By way of example, Johnson said more than half of reported sexual abuse incidents in the Boy Scouts were perpetrated by other youth, which he blamed on lack of adult supervision and the large age range at many events.

He also said BSA lacked proper screening procedures and reference checks for adult volunteers and leaders, and that known offenders are still volunteering and still have access to children because of a lack of accountability by troop sponsoring organizations such as churches and civic groups.

Johnson proposed a dozen "action steps" in his letter to Congress, including a review of the BSA's federal charter and an independent task force to study youth-on-youth sexual abuse. He also called for the public release of information regarding decades-old "ineligible volunteer files" or "perversion files," listing Scout leaders and volunteers suspected or convicted of abusing children.

Asked why he decided to step forward now, Johnson said he began to sense in recent years that the Boy Scouts were becoming less receptive to needed reforms.

"All of the sudden, I wasn't able to make the changes that were needed, and there were excuses and omissions.... I felt, naively, that I could make change within the organization, and there were some successes, but it wasn't nearly enough," he said.

Johnson's decision to speak out comes amid a key point in the Boy Scouts of American bankruptcy case, as ballots are being distributed to tens of thousands of men who say they were molested as children by scoutmasters and others to vote on whether to approve the BSA's reorganization plan.

The Boy Scouts, based in Irving, Texas, sought bankruptcy protection in Delaware in February 2020, seeking to halt hundreds of individual lawsuits and create a fund for men who say they were sexually abused as children. Although the organization was facing 275 lawsuits at the time, it's facing more than 82,000 sexual abuse claims in the bankruptcy case.

In an article published in August 2019, just six months before the bankruptcy filing, Johnson defended efforts by the Boy Scouts to protect children from sexual abuse.

ADVERTISEMENT

"Contrary to many inaccurate reports, our youth protection policies are in line with — and sometimes even ahead of — society's knowledge of abuse and best practices for preventing abuse," he wrote. "We actively share and continually improve these policies through our mandatory youth protection training, our ongoing collaborations with groups such as the Centers for Disease Control and youth-serving organizations, and continuous engagement with survivors of abuse and top experts in this area."

"The child safety policies and procedures we utilize are among the most advanced and comprehensive of any youth-serving organization today," he added.

**NEWS**

# Boy Scouts of America weighed down by red ink, high pay for execs before bankruptcy

## Local councils say the national bankruptcy won't affect them, but attorneys for sex abuse victims say otherwise



Boy Scouts carry Huntington Beach's Historic "Freedom Flag" as the start of the 113th annual 4th of July Parade on Tuesday, July 4, 2017. (Photo by Jeff Gritchen, Orange County Register/SCNG)



As the Boy Scouts of America hurtled toward its historic bankruptcy over the past several years, signs of financial distress abounded:

The national organization operated in the red — spending more than it took in — for five of the past six years. Membership fell 21 percent. Fundraising expenses doubled. The cost of outside legal consultants nearly tripled. And more than 5 percent of its net assets disappeared.

All the while, pay for Boy Scouts' top brass jumped more than 14 percent, with then-top Scout Michael B. Surbaugh paid $873,927 in total compensation in 2017, according to the national council's most recent tax returns.

Boy Scout Director Mark Logemann received total compensation of $625,016, while Bradley Farmer got $602,874. Eight other executives earned more than $400,000, and another four made more than $335,000.

First-class travel — necessary so employees can discuss business during flights, according to its filings — cost $382,490 over the six years examined by the Southern California News Group. Travel for spouses — "critical" to furthering the family-oriented organization's mission and business purpose — cost $187,696 over those years, while membership in airline clubs cost $20,667.

The iconic, national Boy Scouts of America filed for bankruptcy this month as hundreds of lawsuits piled up from men who said they were sexually abused as Scouts. The national organization wants to use bankruptcy to carve out a victim compensation fund, while also ensuring that programs will continue, officials said.

It also hopes to protect local Boy Scout councils — such as the ones in Los Angeles and Orange counties and the Inland Empire — from liability for sexual abuse, allowing them to retain a vast real estate empire worth hundreds of millions of dollars for future generations of Scouts. That land is owned by the local councils, not the national organization.



Local Boy Scout councils in L.A., Orange and the Inland Empire stress that *they*

# EXHIBIT

# 9

LICENSED TO LIE IN DELAWARE FEDERAL BANKRUPTCY COURT? WE QUESTION "THE KURTZ DOCTRINE," OF FILING FALSE PRE-PETITION PAPERWORK. MANUFACTURING VENUE. FRAUDULENT CONVEYANCE OF ASSETS. WILLFUL MISCONDUCT. INSTITUTIONAL LIABILITY. MORAL HAZARD. BAD FAITH. IGNORING WHISTLE-BLOWERS. FUNDING A SCOUTING SURVIVOR TRUST WITH DANGEROUS EPA "SUSPECTED BROWNFIELD OR POSSIBLE ENVIRONMENTAL OIL & GAS LEASED AND OWNED SUPER-FUND SITES. SUBJECTING "THE VICTIM TRUST TO BILLIONS OF DOLLARS OF SPECIALIZED HAZARD WASTE CLEAN-UP, POISONOUS GAS, PUBLIC GROUND, WILDLIFE, LIVESTOCK GROUND POTABLE WATER FROM ABANDONED WELL EXPOSURE AND LIABILITIES." FRAUDULENT CONCEALMENT. DELAYED DISCOVERY. VIOLATING THE 2 YEAR LOOK BACK PERIOD. VIOLATING OF DUE PROCESS. CRIMINALLY IMPLICATING THE FORMER PRESIDENT OF EXXON & SECRETARY OF STATE...THE FORMER C.I.A. DIRECTOR & SEC. OF DEFENSE...THE ENTIRE MORMON, CATHOLIC, METHODIST, LUTHERAN & OTHER CHURCHES. MULTIPLE CIVIC & EDUCATIONAL ORGS (EST-100K)...INCLUDING THE UNITED STATES OF AMERICA. THE UNITED STATES WILL (NOT) BE A WHITE & CASE PARTNER. ESPECIALLY FOR A FORMER VICE PRESIDENT OF ENRON AND NOW C.E.O. OF THE BANKRUPT BOY SCOUTS OF AMERICA. IN ONE PHONE CALL, ANY OF THE PAST BSA OIL & GAS EXECUTIVE INSIDERS COULD HAVE SOLD BSA OIL & GAS HOLDINGS PORTFOLIO. NONE! OF THEM DID...WHY? WE KNOW WHY. THE BSA OIL & GAS PORTFOLIO IS AN ENVIRONMENTAL HAZARDOUS WASTE NIGHTMARE. THAT WOULD EASILY BANKRUPT THE BSA ABUSE VICTIMS TRUST.

*"The Story of Enron Corp. depicts a company that reached dramatic heights only to face a dizzying fall. The fated company's collapse affected thousands of employees and shook Wall Street to its core. At Enron's peak, its shares were worth $90.75; just prior to declaring bankruptcy on Dec. 2, 2001, they were trading at $0.26.1*

*To this day, many wonder how such a powerful business—at the time one of the largest companies in the United States—disintegrated almost overnight. Also difficult to fathom is how its leadership managed to fool regulators for so long with fake holdings and off-the-books accounting."*

SINCE OUR CURRENT BSA C.E.O., WORKED FOR ENRON FOR NEARLY A REPORTED 12 YEARS. ONE COULD SAY "THE MAN TOOK HIS ENRON COLLAPSE LEAVE A LITTLE TOO SLOWLY. WITH STAGGERING FRAUD SURROUNDING HIM 360 DEGREES. WHICH IN TEXAS ONE COMPARES THAT TO..."THE LITTLE WHITE SPOT IN CHICKEN MANURE. OFTEN NOTED THAT THAT WHITE SPOT IS CHICKEN MANURE TOO."

IN NEW YORK THEY MAY CALL ALL OF THE ABOVE STATED "CUTE." IN MONTANA, WE CALL IT "CRIMINAL & PRISON-TIME."

YET...HOW OFTEN WE HAVE HEARD. (CAPS ARE FOR EMPHASIS -NOT YELLING.)

"THAT IS NOT THE WAY IT IS DONE YOUR HONOR. WE AREN'T TRYING TO BE CUTE HERE YOUR HONOR."
"WE HAVE A MELTING ICE CUBE YOUR HONOR."    -Glen M. Kurtz

# SCHEDULE 4

# OIL AND GAS INTERESTS

*SOLICITATION VERSION*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

## MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR
## BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: jessica.lauria@whitecase.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: mandolina@whitecase.com
      mlinder@whitecase.com
      laura.baccash@whitecase.com
      blair.warner@whitecase.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Email: dabbott@morrisnichols.com
      aremming@morrisnichols.com
      ptopper@morrisnichols.com

*Attorneys for the Debtors and Debtors in Possession*

Dated: September 30, 2021
      Wilmington, Delaware

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, TX 75038.

Case 20-10343-LSS    Doc 6443    Filed 09/30/21    Page 323 of 413

| State | County | Legal Description | Interest Type | Status |
|---|---|---|---|---|
| MICHIGAN | CLARE | CLARE CO MI MI<br>SEC 30-20N-6W: S/2<br>SEC 31-20N-6W: N/2<br>WINTERFIELD #2-31 .0035888 RI | ROYALTY INTEREST | PRODUCING |
| MICHIGAN | CLARE | CLARE CO MI MI<br>SEC 7-20N-5W: W/2<br>SEC 12-20N-6W: E/2<br>STATE WINTERFIELD 1-12REG# 8550 | ROYALTY INTEREST | PRODUCING |
| MICHIGAN | CLARE | CLARE CO MI MI<br>SEC 19-20N-6W: SE/4 SE/4, 40 ACS<br>SEC 29-20N-6W: W/2, W/2 NE/4,<br>SEC 31-20N-6W: ALL, EXC SW/4 SW/4,<br>SEC 20-20N-6W: SW, SWSE,<br>SEC 30-20N-6W:ALL,<br>SEC 32-20N-6W: W/2 W/2<br>WINTERFIELD TOWNSHIP,<br>WINTERFIELD RICHFIELD UNIT | MINERAL INTEREST | PRODUCING |
| MICHIGAN | CLARE | CLARE CO MI MI<br>SEC 12-20N-6W: NE/4, 160 ACS<br>H TOPE #4 .002927 RI | ROYALTY INTEREST | PRODUCING |
| MICHIGAN | CLARE | CLARE CO MI MI<br>SEC 1,2,11,12-T20-R6W: WINTERFIELD TOWNSHIP<br>CRANBERRY LAKE RICHFIELD UNIT .00046112 RI | MINERAL INTEREST | PRODUCING |
| MICHIGAN | MIDLAND | MIDLAND CO MI MI<br>SEC 28-15N-2E: NW/4 NE/4, 40 ACS<br>WASKEVICH 1-28 E .0131844 RI | ROYALTY INTEREST | PRODUCING |
| MICHIGAN | MISSAUKEE | MISSAUKEE CO MI MI<br>SEC 35-22N-6W: N/2, BUNING A UNIT<br>SEC 26-22N-6W: S/2 SW/4, REAMES UNIT<br>SEC 26-22N-6W: SW/4 SE/4, WING UNIT<br>UNITIZED INTO PROSPER DUNDEE UNIT .0167808 RI | ROYALTY INTEREST | PRODUCING |
| MICHIGAN | MISSAUKEE | MISSSAUKEE CO MI, MI<br>SEC 36; T22N-R6W, SE/4 NW/4 &<br>SEC 26; T22N-R6W, SW/4 SE/4<br>AETNA TOWNSHIP<br>WING 2, .01996874 RI | ROYALTY INTEREST | PRODUCING |

2

Case 20-10343-LSS    Doc 6443    Filed 09/30/21    Page 413 of 413

| State | County | Legal Description | Interest Type | Status |
|-------|--------|-------------------|---------------|--------|
| TEXAS | YOAKUM | YOAKUM CO TX MI<br>SEC 788 JOHN H GIBSON SVY, 640 ACS<br>SEC 854 JOHN H GIBSON SVY, 640 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | YOAKUM | YOAKUM CO TX MI<br>SEC 756 BLK D JOHN H GIBSON SVY: E/2, 320 ACS | MINERAL INTEREST | NON PRODUCING |
| TEXAS | ZAVALA | ZAVALA CO TX NPRI SVY NO 386, SVY NO 387, SVY NO<br>388, SVY NO 389, SVY NO 390, SVY NO 391, SVY NO 392,<br>DEWITT LANGFORD ET UX, 2,213.315 ACS | ROYALTY INTEREST | NON PRODUCING |

92

A conservative estimate of the cleanup cost?
Almost $1 billion. And that doesn't consider the
environmental fallout.

# Waves of Abandonment

The Permian Basin is ground zero for a billion-dollar surge of
zombie oil wells.

**By Clayton Aldern, Christopher Collins, and Naveena Sadasivam**

Grist

Donate

# In the hole

## Current projections of abandoned well plugging costs underestimate the coming financial toll



Source: Grist and Texas Observer analysis of Texas, New Mexico, and federal data. *Clayton Aldern / Grist*

Initially, the Railroad Commission seemed to agree, ordering Jenex to plug

Donate

more potent than carbon dioxide. A nascent but growing body of research suggests that these sorts of leaks make oil and gas wells significant contributors to climate change — especially if they're not plugged. Leaking wells also have the potential to poison sources of drinking water.

Oil companies are legally required to "plug" their abandoned wells to prevent exactly these sorts of hazards. Drilling a well involves puncturing through layers of dirt, rock, and water to reach oil and gas deposits. The walls of the well are reinforced with steel casing and cement, but as they age — or if they were improperly drilled — cracks may form in the cement and the casings could corrode. This increases the risk of methane seeping into the air and oil migrating into the surrounding groundwater. For this reason, an operator is supposed to plug a spent well by pouring concrete into the well and also clean up the surrounding area by removing wellheads, tanks, pipes, and other unused equipment that could endanger humans or wildlife.

7S plugged one leaking well on the Briggs ranch, but took no other significant action, Laura said. In fact, the company filed for bankruptcy in 2019 after federal authorities claimed in a civil suit that Gilligan Sewell and 7S defrauded investors of nearly $7 million. In a phone interview, Sewell denied defrauding investors but refused to answer specific questions about the case, claiming he signed a confidentiality agreement. The wells are still scattered across the ranch, and though they've changed hands, they remain largely unplugged.

The situation isn't much better elsewhere in the Permian Basin. Texas and New Mexico have already identified about 7,000 abandoned wells that were once operated by over 1,000 companies. State officials estimate these will cost $335 million to plug. The states define wells as "orphaned" if

**Grist**

Donate

# EXHIBIT

# 10



An official website of the United States government
Here's how you know



This is archived content from the U.S. Department of Justice website. The information here may be outdated and links may no longer function. Please contact webmaster@usdoj.gov if you have any questions about the archive site.

# 940. 18 U.S.C. SECTION 1341—ELEMENTS OF MAIL FRAUD

"There are two elements in mail fraud: (1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use of the mail for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)." *Schmuck v. United States*, 489 U.S. 705, 721 n. 10 (1989); *see also Pereira v. United States*, 347 U.S. 1, 8 (1954) ("The elements of the offense of mail fraud under . . . § 1341 are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme."); Laura A. Eilers & Harvey B. Silikovitz, *Mail and Wire Fraud*, 31 Am. Crim. L. Rev. 703, 704 (1994) (cases cited).

[cited in JM 9-43.100]

‹ 939. Investigative Authority                    up                    941. 18 U.S.C. 1343—Elements of Wire Fraud ›

*Updated January 21, 2020*

Omni Agent Solutions
5955 De Soto Avenue, Suite 100
Woodland Hills, CA 91367

**Please forward to President, Legal Department, or Addressee**

NID-7079-7-SA101730
Cutler

PRESORTED
FIRST CLASS MAIL
U S POSTAGE
PAID
HICKSVILLE, NY
PERMIT NO 14

NID-7079-7-SA101730
CUTLER



Omni Agent Solutions
5955 DeSoto Ave., Suite 100
Woodland Hills, CA 91367

LEGAL NOTICE- Please forward to President, Legal Department, or Addressee

**Exhibit A**

**Clarendon Term Sheet**

*Confidential Mediation Communication*
*Subject to Mediation Privilege*
*Protected Settlement Communication*

**Settlement Term Sheet**

This term sheet ("Term Sheet") represents the basic terms of a settlement agreement between and among Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company), River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited), and Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company (collectively, "Clarendon"),[1] Boy Scouts of America and Delaware BSA, LLC, as debtors and debtors in possession ("BSA" or the "Debtors"), the Ad Hoc Committee of Local Councils (the "AHCLC"),[2] the Coalition of Abused Scouts for Justice, solely and only in its capacity as an ad hoc committee (the "Coalition"),[3] and the Future Claimants' Representative (the "FCR" and, collectively with Clarendon, the Debtors, the AHCLC, the Coalition, the "Parties"). The attorneys representing holders of Direct Abuse Claims listed on Schedule 2 hereto, which reflects the number of holders of Abuse Claims represented by each firm (the "State Court Counsel") agree to support the terms of and be bound by the Agreement (as defined below). The Parties will prepare a definitive written settlement agreement consistent with this Term Sheet that will include additional mutual terms (the "Agreement"). The Agreement will be appended to and included in the *Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, subject to modification by the Debtors, the Coalition, and the FCR ("Amended Plan") located at Dkt. 7832 and the Confirmation Order (defined below). The Agreement and/or Term Sheet shall be listed on Exhibit I to the Amended Plan as an Insurance Settlement. Capitalized terms not defined in this Term Sheet shall have the definitions ascribed to such terms in the Amended Plan or the "Century Term Sheet" located at Dkt. No. 7745-1.

[1] The term "Clarendon" shall not include the foregoing persons and entities in their capacities as contractual obligors under: (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from or in connection with Abuse Claims, any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise and (ii) Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from or in connection with any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise.

[2] Notwithstanding anything to the contrary in this Term Sheet, the obligations and undertakings of the AHCLC in connection with this Term Sheet or the Agreement shall be no greater than the AHCLC's parallel obligations and undertakings under Section III of the Restructuring Support Agreement (including the "No Liability" subsection thereof) filed at Dkt. 5466-2.

[3] For the avoidance of doubt, no holders of Direct Abuse Claims are or shall be deemed Parties to this Term Sheet or the Agreement.

[illegible] consideration of the releases and other consideration provided for [illegible] Million and Five-Hundred Thousand U.S. Dollars [illegible] to the trust for Abuse Claims to be created under the [illegible] basis.

[illegible] Amount. Clarendon shall pay Two Million, Eight [illegible] U.S. Dollars ($2,871,000)(17.4% of Settlement Amount) [illegible] Amount to the Trust on, or as soon as reasonably [illegible] Payment Date") all conditions to the effectiveness of [illegible] (including the entry of orders, in form and substance [illegible] of the Bankruptcy and District Courts confirming, or [illegible] Plan (collectively, the "Confirmation Order"), which [illegible] subject to any stay and shall be in full force and effect) and [illegible] effective (the "Effective Date"). On, or as soon as reasonably [illegible] the Effective Date, Clarendon shall pay the remaining 82.6% of the [illegible] (the "Additional Payment") into an escrow account (the "Escrow [illegible] acceptable to the Parties. The [illegible] the fees of the escrow agent, and [illegible] and other costs of the Escrow Account, which amounts in (a) and [illegible] the corpus of the Escrow Account (such income (or loss) minus such [illegible]") shall remain in the Escrow Account until the Confirmation Order [illegible] on which date the Additional Payment, plus any Net Income, shall be [illegible] Account to the Trust (the "Release Date"); *provided, however*, that, [illegible] may authorize the payment of the Additional Payment directly to the [illegible] may authorize the release of the Additional Payment (and any [illegible] the Escrow Account to the Trust at any time thereafter before the [illegible] Final and Non-Appealable, in which event the date on which [illegible] the payment or release of the Additional Payment to the Trust shall be [illegible]. The Settlement Trust shall have investment discretion with respect to the [illegible] Payment while it is in the Escrow Account, subject to the investment protocols [illegible] the term sheet located at Docket No. 6219-1 [illegible term sheet]; *provided*, [illegible] the Trust will bear all risks associated with any such investment of the Additional [illegible] that no loss or failure to achieve desired investment returns on the Additional [illegible] in the Escrow Account shall require Clarendon to increase the Settlement [illegible] paying (or increase the amount of BSA's contribution to the Trust); *provided* [illegible] however, that the Debtors, Reorganized BSA, the Local Councils, and Chartered [illegible] shall have no liability or obligations to Clarendon or the Trust, the Trust shall [illegible] liability or obligations to Clarendon, and Clarendon shall have no liability or [illegible] to the Trust (or any other Party), whatsoever for any loss or failure to achieve [illegible] return on the Additional Payment while it is in the Escrow Account.

[illegible] to be Afforded to Clarendon. Effective as of the Release Date, Clarendon is to [illegible] Protected Parties for all purposes under the Amended Plan and granted all [illegible] releases, injunctions (including the Settling Insurer Policy Injunction), and [illegible]. As set forth herein, Clarendon shall be granted such releases, injunctions,

protections as are necessary to deliver finality with respect to all known and unknown policies they issued to BSA and Local Councils covering or potentially covering Claims or Causes of Action related to, arising from or in connection with Abuse Claims, which shall include the Clarendon Policies (as defined below) and any other insurance policy issued by Clarendon covering Claims or Causes of Action for Abuse Claims with respect to such coverage for Abuse Claims; any actions, omissions or positions taken in connection with any Abuse Claims and/or the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date related to any Abuse Claims and/or policy issued by Clarendon concerning the Debtors or Scouting, including Clarendon's performance of its obligations thereunder whether for defense, settlement of claims or otherwise. Notwithstanding anything to the contrary, the BSA, Local Councils, and Chartered Organizations are not releasing, enjoining, or protecting any rights under (i) Non-Abuse Insurance Policies (including but not limited to D&O Liability Insurance Policies) except to the extent of a request for coverage and/or any Claims or Causes of Action related to, arising from or in connection with Abuse Claims, any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise and (ii) Postpetition Insurance Policies, except for any Claims or Causes of Action related to, arising from or in connection with any actions, omissions or positions taken in connection with the Debtors' Chapter 11 Cases and related proceedings and any extra-contractual claims related to, arising from or connected with actions or omissions occurring prior to the Effective Date, including Clarendon's performance of its obligations under such policies whether for defense, settlement of claims or otherwise. The Agreement, the Amended Plan, and the Confirmation Order shall provide for a channeling injunction and full release of Clarendon with respect to all Claims or Causes of Action related to, arising from or in connection with Abuse Claims (which shall be conveyed to the Debtors and/or the Trust), including but not limited to the types of claims listed in the Insurance Actions definition in the Amended Plan and other Claims related to the insurance policies issued by Clarendon subject to the limitations stated in this Section 3 (as applicable to Postpetition Insurance Policies and Non-Abuse Insurance Policies) and Section 4. All injunctions, including the Settling Insurer Policy Injunction, shall remain in place between the Effective Date and the Release Date (and thereafter) such that any and all Claims and Causes of Action that are to be released or channeled through the Amended Plan and the Agreement shall be continuously enjoined pending their release. Clarendon shall be Protected Parties under the Amended Plan and have no fewer rights or protections than are afforded the Local Councils (other than the limited indemnity provided under Article IV.M of the Amended Plan) or any other person or entity by virtue of their status as a Protected Party with respect to any injunctions, releases or other protections provided thereto.

4. Sale of Clarendon Policies. Prior to the Effective Date, the Local Councils and Clarendon shall consent to and provide for the assignment of the Local Council Insurance Policies issued by Clarendon, which include those identified on Exhibit A (the "Clarendon Local Council Policies"), to the Debtors' Estates. The Confirmation Order and Amended Plan shall provide

# WHAT DOES A DELAWARE FEDERAL 3RD PARTY CONTRACTOR...HIRED BY THE DEBTOR FOR PURPOSES OF SOLICITATION, NOTICING, TABULATION, ELECTION FALSIFYING WHISTLEBLOWER CLAIM LOOK LIKE?



FILED

2022 FEB 23 AM 9: 17

CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

February 17, 2022

Hon. Laurie Selber Silverstein
U.S. Bankruptcy Court
824 North Market St, 6th fl.
Wilmington, DE 19801



Re: Case No.: 20-10343 (Boy Scouts of America)

Hello Honorable Silverstein,

How are you? I feel that I need to share with you the concerns regarding the Boy Scouts abuse case. I am a former employee at Omni Agent Solutions, and have found fraud in this case. It looks like Omni Agent Solutions is overcharging Boy Scouts for their services and are giving titles to people that do Data Entry.

There are several workers on the BSA ballots that are only being paid $16-$20 an hour as a temp, but Omni is charging BSA between $80-$125 an hour. I have highlighted the names of the people that I work with that are making between $16-$20 an hour. It seems that Omni is charging 4 to 5 more times for their services and putting titles that are incorrect.

Omni may also be falsifying the ballot count because they seem to be unable to give a correct count of the ballots that they received due to their mishandling of this case. This bothers me because these claimants are looking to get compensated for the abuse that they suffered and Omni is trying to get rich off them.

Omni hired over 30 temporary workers, with the majority of them not doing anything and charged BSA for services. The handling of this case should focus on making sure all survivors are taken care of and provided the information to make sure that their ballots are handled appropriately. Omni states that their "focus is on efficiently providing the highest quality case administration services..., but the reality is that Omni Agent Solutions is a dishonest company who charges exorbitant fees if they can get away with it.

Your Honor, help me to make sure that Omni Agent Solutions does not receive these exorbitant fees. The COO Catherine Knowes has attested that the ballot count was correct but Omni has mismanaged this case and I know that the ballot count is incorrect. This is not the first client that have charged exorbitant fees to, USA Gymnastics. But there are many. Some of their clients that received their invoices and informed them that there were charging for services they didn't request, Omni had to reduce the fees on the invoice. There usual practice, overcharge and hope not no one notices it.



# EXHIBIT

# 11

**WHAT DOES AN ACTUAL FORMER BSA NATIONAL YOUTH PROTECTION EXECUTIVE FELON, LISTED IN THIS VERY "MASS TORT" CASE...AS A 100% PAID CREDITOR LOOK LIKE?**

*But wait...there is more. Here Mr. Smith is again, in "This Delaware BSA Chapter 11!"*
*With a 100% Pension & Medical Benefit BSA (White & Case) (Morris Nichols) Claim Payout?*
*Isn't It Great To Be A BSA National Executive Youth Safety Pedophile & Felon....Outstanding! Thank*
*You Again, BSA CEO Roger Mosby.*

*https://casedocs.omniagentsolutions.com/cmsvol2/pub_47373/821821_729.pdf*

*Case 20-10343-LSS Doc 729-2 Filed 05/29/20 Page 51 of 63*

## *Deferred Compensation and Restoration Plan Participants*

*Alan Lambert*
*Alfred D Morin*
*John Andrews*
*Anne Terry*
*Bonnie H Bishop*
*Bradford C Allen*
*Bradley Farmer*
*C. Wayne Brock*
*C Michael Hoover Jr*
*C Wayne Brock*
*Pamela E. Carroll*
*Danny R. Clifton*
*John A. Coyle*
*David J Ross Ii*
*Donald McChesney*



## *Douglas S Smith Jr.*



*Erik L Nystrom*
*Erin Eisner*
*Frances Lynne Park*
*Frederick Wallace*
*Gary Butler*
*Jeffrie A. Herrmann*

Mark Holtz
J Carey Keane
Jeffrey Hunt
John Green
John Mosby
Joseph S Coco
Judith Ratcliffe
Justin McCarthy
Kathy Sue Stone
Kendrick Miller
Kenneth L Connelly
Randall Kopsa
Albert Kugler
Lawrence F Potts
Lawrence L Otto
Mark Logemann
Robert J. Mazzuca
Michael Ashline
Michael Kaufman
Michael Surbaugh
Alfred D Morin
Patrick Sterrett
Ponciano Duran
John Primrose
Raymond L Blackwell
Richard J Mathews
Robert J Mazzuca
Robert Tuggle
Roger A Ohmstede
Ron Oats
Ronald K Hegwood
Roy L Williams
Steven P. McGowan
Michael Surbaugh
Thomas H Fitzgibbon
Thomas Harrington
Hugh Travis
Thomas Varnell
Harold Watson
Willie Iles Jr.

*INSIDER*

*INSIDER*

*INSIDER*

*INSIDER*

*(Ok! Who else on that "BSA Pension List. Is a Pedophile, Classic Fool, or Enabler," and part of this Delaware Chapter 11?)*



# Former Boy Scout safety director freed from federal prison

**Jason Sickles**

January 3, 2013

DALLAS - The Boy Scouts of America have banned thousands of pedophiles and other undesirables from working as volunteers.

But one name on their rejection list stands out: Douglas Sovereign Smith Jr. The BSA's former national director for youth protection was released from prison last week after serving nearly seven years behind bars.

He was in charge of Scout safety programs in 2005 when police discovered hundreds of images of child pornography and videos on his home computer. Some included prepubescent boys exposing themselves and engaging in sexual acts.

"Heart-wrenching and gut-tearing," a prosecutor said at the time.

Smith reenters public life at a time when the Scouts are being heavily scrutinized for their past handling of alleged child sex abuse at the hands of staff and troop leaders.

None of Smith's 520 photos were of Scouts and he was never accused of molesting children, but his case is a disturbing reminder that people in positions of power can lead double lives that put children at enormous risk.

"It certainly shows that the people supervising him didn't have their eyes wide open," said Patrick Boyle, author of "Scout's Honor: Sexual Abuse in America's

Most Trusted Institution."

An Eagle Scout who spent 39 years rising through the ranks as a BSA employee, is now a registered sex offender and must report to a probation officer for life. The 69-year-old grandfather can't access the Internet or possess a smartphone or camera.

While hardly a completely free man, he doesn't leave prison empty-handed either.

According to a videotaped court deposition he gave while in prison, Smith said that he submitted his retirement letter as soon as his house was raided in 2005, making him eligible for the Boy Scouts' pension and medical benefits.

"Are you kidding me? That's absurd," said John Buckland, a Scout who was molested by his troop leader in 1984. "We've got to basically beg them to take care of therapy. That's crazy."

Spokesman Deron Smith said the 103-year-old organization has established a toll-free number and email address for Scouts and their families who suffered past abuse by a Scout leader or adult volunteer and that money is available for counseling, with specifics decided on a case-by-case basis.

The Scouts declined to discuss Smith's employment or ongoing benefits package. Nor would they comment on his criminal case or allow Yahoo News to see their confidential file on him.

"Because this is a personnel matter we can't discuss the details," spokesman Deron Smith said in an email. "But I can say at the time of his arrest, Mr. Smith was permanently removed from the Scouting program."

An attorney familiar with employment laws said denying Smith's pension and benefits would violate the federal Employee Retirement Income Security Act.

"They are very strict in protecting employee rights to what has been paid in," said Rogge Dunn, a veteran Dallas attorney. "Having committed certain crimes is one of

those things that the statute doesn't address, but should probably be addressed in the future."

This past October, against the Scouts' wishes, 14,500 pages of the organization's confidential ineligible volunteer files from 1965 to 1985 were made public. Since then, reporters and attorneys have been scouring the more than 1,200 alleged predators in the files. The findings are horrific: Some alleged abusers were allowed to resign quietly, while others were merely put on membership probation, where they were able to violate children again.

"Unfortunately child sex abuse, of any kind, is a societal problem that we must all be concerned with which is why we have continuously enhanced our multi-tiered Youth Protection policies and procedures to ensure we are in line with and, where possible, ahead of society's knowledge of abuse and best practices for prevention," the spokesman wrote in his email.

Ironically, Smith himself reported suspected bad seeds to the confidential files when he led councils in Ohio, Illinois, Michigan and Oregon before being promoted in 1996 to the national office in Texas.

Smith's fall from BSA safety educator to federal inmate is baffling.

"I didn't begin by seeking it," Smith said of his porn addiction at his sentencing. "But I eventually accepted it in emails and sent it on to others."

While Smith did not return calls from Yahoo News, his wife, Judith Smith, told us that her husband was a respected and model inmate. "He's been running the 12-step programs in the prison for sex offenders," she said two days before his release.

Boyle, who also researches and writes about youth issues for a national advocacy group, said he's hopeful that Smith's prison sentence has given him time to reflect and better understand his actions.



# Texas Public Sex Offender Registry

Printed: 4/5/2022 8:18:55 PM



# SMITH,DOUGLAS SOVEREIGN JR

| | |
|---|---|
| **SID** | 04862356 |
| **Risk Level** | NOT REPORTED |
| **Ending Registration Date (Projected)** | LIFETIME |
| **Verification Requirement** | ANNUALLY |
| **Sex** | Male |
| **Race** | White |
| **Ethnicity** | Non-Hispanic |
| **Height** | 5'8" |
| **Weight** | 153 lbs |
| **Hair Color** | BROWN |
| **Eye Color** | HAZEL |
| **Shoe Size** | 08.0 |
| **Shoe Width** | D |

Photo Reported
05/19/2021

## Name(s)

SMITH,DOUGLAS SOVEREIGN JR (PRIMARY)

SMITH,DOUGLAS S JR

## Birth Date(s)

06/05/1943 (PRIMARY)



Photo Reported - 06/26/2013



Photo Reported - 03/01/2006



Photo Reported - 02/09/2006

DocuSign Envelope ID: 410FD895-6B1B-4EF6-B01D-7DD2DB445857

**Michael Johnson**
**Child and Youth Safety Consultant**
**Dallas, Texas**

October 6, 2021

The Honorable Members of Congress
United States Senate
United States House of Representatives
Washington, DC

Dear Honorable Members of Congress:

My name is Michael Johnson and for the past ten-and-one-half years, I served as the Director of Youth Protection for Scouts BSA, formerly the Boy Scouts of America. I left my position in December 2020.

The purpose of this letter is to urge you, pursuant to Scouts BSA's role as a congressionally chartered organization under 36 U.S.C. § 30901 et seq, to commence a robust congressional investigation and hearings into the past, present, and continuing high risk of child sexual abuse that exists within Scouts BSA.

## My Background

I am a former Plano, Texas, Police detective with almost 30 years' experience investigating child abuse cases—primarily sexual abuse, assault, and exploitation. I established the first Child Advocacy Center (CAC) in Plano, Texas, and was one of the early pioneers of the use of CACs and multi-disciplinary teams (MDTs) in the investigation and prosecution of crimes against children. Since 1992, I have conducted trainings for MDTs and first responders nationwide and internationally in forensic interviewing, perpetrator interrogation, child sexual abuse and exploitation, and other crimes against children.

In the summer of 2010, I was recruited by Scouts BSA (then the Boy Scouts of America) to be the first Director of Youth Protection. They hired me because of my breadth of experience and acumen in investigating crimes and implementing programs, policies, procedures, and training to prevent, recognize, and respond to child sexual abuse and other forms of child maltreatment.

During my time with Scouts BSA, I was able to implement many programs of which I am proud, including establishing the Scouts First response; revising policy to no longer allow 18- to 21-year-old adults to participate in overnight programs with youth as young as 14; mandatory reporting of child abuse and serious policy violations; removal of a discriminatory policy which banned LGBTQ+ youth and leaders; implementing training programs and information for volunteers, youth, staff and parents informing parents of reported crimes committed against their children; and numerous policy enhancement protocols.

DocuSign Envelope ID: 410FD895-6B1B-4EF6-B01D-7DD2DB445857

October 6, 2021
Page 2

These improvements occurred by using non-BSA experts from outside of the organization. Unfortunately, these programs are just a "drop in the bucket" for all the reforms needed. They served to bring the organization closer to a standard of care required for low-risk organizations, but came far short in meeting the acceptable standard of care for a high-risk organization such as Scouts BSA. Up until the time I left Scouts BSA, I was working to make the needed changes to ensure youth safety from sexual abuse and maltreatment in the program.

<u>The Ongoing Risk to Child Safety in Scouts BSA</u>

In my professional opinion, **the truth is clear: no child is safe in Scouts BSA programs. The institution, as it stands today, continues to be a HIGH-RISK[1] organization for child sexual abuse, due to the accessibility and opportunity the program presents to a range of sex offenders.** Scouts BSA's continued disregard for needed safety reforms, the organization's long-established business and program model, and decades-long lack of transparency (at the highest level of the organization) with parents, experts, and courts. Throughout my time at Scouts BSA, I witnessed decisions being made that showed the top priority of the organization was not the safety of children, but the preservation of the reputation and brand of the institution and its top sponsoring organizations.

Scouts BSA and its other youth programs present unique risks and challenges for the commission of child sexual abuse and overall child safety that are not addressed in the standard child safety protocol used by other youth-serving organizations, and **Scouts BSA does not meet an acceptable standard of care to assure parents and communities that children in the organization are safe from sexual abuse.**

**I repeat: Scouts BSA fails to meet the minimum standard of care for such a high-risk organization. Until stronger safeguards are put in place, no child is safe in Scouts BSA.**

Some examples of this standard of care failure include:

- More than 50% of the reported sexual abuse incidents into Scouts BSA are perpetrated by youth in the program. This is due to a lack of adult supervision and vigilance on the part of Scouts BSA including: lack of screening of youth; the large range of ages of youth at many events; and the lack of diligence to inform parents, youth, and leaders of the risk.
- Lack of proper screening procedures for adult volunteers and leaders (per CDCs "Preventing Child Sexual Abuse Within Youth-serving Organizations" and the Non-Profit Risk Management Center document on screening volunteers).
- Known offenders are still volunteering in Scouts BSA and continue to have access to youth. This is because of a lack of accountability by chartering organizations, lack of access to chartering organizations' internal lists of known offenders, and religious beliefs in some chartering organizations that allow access to scouting youth by those accused of abuse.

---

[1] Lanning, K., 2010, *Child Molesters: A Behavioral Analysis for Professionals Investigating the Sexual Exploitation of Children*, Fifth Edition; National Center for Missing and Exploited Children.

DocuSign Envelope ID: 410FD895-6B1B-4EF6-B01D-7DD2DB445857

October 6, 2021
Page 3

- Lack of reference checks for volunteers, lack of an interview to determine a potential volunteer's fitness, and decades-long inadequate criminal background screening. Studies show that less than 10% of child predators are arrested throughout their lifetime and less than one in five who are arrested are prosecuted.[2] Reference checks and interviews are vital for protection against the vast majority of those who prey on children.
- Against my recommendations, Scouts BSA installed a policy – the "72-Hour Rule" - that is inconsistent with ALL research for adults involved with youth, especially during overnight programming (camping). This "rule" continues to effectively allow ANYONE to accompany scouts on overnight trips without any proper screening — *as long as the adult leaves prior to the elapse of 72 hours*. If the trip or campout is shorter, this policy effectively allows unvetted adults access and opportunity to scouting youth. It is of note this policy became effective at about the time girls were introduced into the Scouts BSA program.
- BSA continues to minimize the significance of child sexual abuse risk in the program.
- There is no expert in child and adolescent development or youth protection currently employed in the national Scouts BSA office to direct its child sexual abuse prevention efforts.
- When I left the organization, I was asked to sign a non-disclosure/non-disparagement agreement in exchange for a large sum of money. I refused.

These are just a few examples. There are many more.

## Recent Congressional Action and Scouts BSA Responses

In 2018, members of Congress, led by Rep. Jackie Speier, wrote a letter to Scouts BSA asking for a complete outline of their protocols to keep children safe in the organization and their rationale for spending lobbying dollars to prevent statute of limitation reform for survivors (Attachment 1). The response Scouts BSA provided (Attachment 2) listed programs for standard, low-risk, youth-serving organizations. Their response made no mention of the unique needs of this high-risk group. In fact, Scouts BSA had to write a correction letter (Attachment 3) once more news about their ineligible volunteer (IV) files were made public.

## Necessary Action Steps

Because of the lack of any ability of Scouts BSA to implement the necessary child protection measures to address their status as a high-risk and unsafe organization - as well as their current culture of institutional protection over child safety - I am asking the following:

1. Congress should begin immediate hearings and an investigation into the scope and breadth of child sexual abuse, predatory grooming, and the cover-up of crimes against children in Scouts BSA. The investigation should include specific dangers to female and LGBTQ+

---

[2] Block, S. and Williams L.; *The Prosecution of Child Sexual Abuse: A Partnership to Improve Outcomes*, U.S. Department of Justice (2019).

DocuSign Envelope ID: 410FD895-6B1B-4EF6-B01D-7DD2DB445857

October 6, 2021
Page 4

youth, the issue of preventable youth-on-youth sexual violence, and the institutional disregard for the plight of survivors and their families. The investigation should include a review of the misuse of the U.S. Bankruptcy Code to subvert the exposure of sex crimes against children.

2.  Congress should review the Scouts BSA federal charter and consider revising any and all federal charters and protections due to immediate threats to child safety and the cover-up of sexual abuse.

3.  Similar to what has recently been done in the Olympics,[3] Scouts BSA should work with independent non-scouting researchers and experts to conduct a baseline study to assist in determining the extent of child abuse within the organization, the manner in which offenses were carried out, the leadership structure and decision-making process, and the effectiveness or lack of effectiveness of various responses. Without this baseline information, it will be impossible to determine the extent of abuse within Scouts BSA and whether or not current or future policies are effective in protecting children from abuse.

4.  Given the large number of youth-on-youth sexual abuse within scouting, a non-scouting independent task force of experts on problematic sexual behaviors of children[4] should be created to evaluate past and current risks to scouts in all scouting programs. This task force should include experts on the emergence of pedophilic thoughts in adolescence,[5] other sexually deviant behaviors, and develop and recommend a robust plan to prevent youth-on-youth sexual abuse. The report, results and recommendations from this task force should be provided to the National Executive Board by the Youth Protection Director and the recommendations of the task force must be a public document.

5.  Scouts BSA employees and volunteers should have a recurring background and reference check every two years that exceed the recognized Standard of Care recommended by the CDC.

6.  Scouts BSA should actively collaborate with other Youth Serving Organizations and congress in creating a system of sharing lists of individuals banned or removed from the organizations for abuse, serious policy or code of conduct violations against program youth—even if these violations fall short of the required threshold that triggers an investigation by law enforcement. This should be in addition to creating low-cost background checks that will benefit children in every youth-serving organization.

7.  No unvetted adults should be allowed to lead or accompany scouts on trips/overnight campouts of any duration.

---

[3] U.S. CENTER FOR SAFESPORT, 2020 ATHLETE CULTURE & CLIMATE SURVEY (July 14, 2021).
[4] Victor I. Vieth, *Recognizing and Responding to Developmentally Appropriate and Inappropriate Sexual Behaviors of Children: A Primer for Parents, Youth Serving Organizations, Schools, Child Protection Professionals, and Courts,* in ROBERT GEFFNER, ET AL (EDS), HANDBOOK OF INTERPERSONAL VIOLENCE ACROSS THE LIFESPAN (2021).
[5] Jill S. Levenson & Melissa D. Grady, *Preventing Sexual Abuse: Perspectives of Minor-Attracted Persons About Seeking Help,* 31(8) SEXUAL ABUSE 991 (2019).

DocuSign Envelope ID: 410FD895-6B1B-4EF6-B01D-7DD2DB445857

October 6, 2021
Page 6

Your immediate action on this matter is an urgent need for children who are currently members of Scouts BSA and the more than 80,000 brave survivors who have come forward to say that they were sexually abused while a Boy Scout.

**In that light, I invite you to attend as I speak to the media and public on this matter this coming Tuesday, October 12, 2021, at 1:30 pm (Eastern Daylight Time) at the National Press Club in Washington, D.C.**

America needs the ideals that Scouts BSA upholds—both for our youth and our future.

This call to action is not meant to end scouting. We must instead create the independent accountability and oversight necessary for a safer scouting program in the future. The organization as it now stands fails to meet this ideal: it fails our nation, and it knowingly fails the children in the program.

Sincerely,

Michael V. Johnson

Michael Johnson
Former Youth Protection Director
Scouts BSA

All inquiries and responses to this letter should be directed to Jeff Anderson:

Jeff Anderson
Jeff Anderson & Associates
366 Jackson Street, Suite 100
St. Paul, MN 55101

(651) 227-9990 office
(612) 817-8665 mobile

# EXHIBIT

# 12

WHERE DID THE FRAUDULENT TRANSFER & CONVEYANCE CHURCHILL PLAN WAR CHEST BACKSTOP FUNDING COME FROM, TO FIGHT SCOUTING ABUSE VICTIMS AND SCOUTING ABUSE SURVIVOR ATTORNEYS? WHO KNEW FULL WELL...THAT BSA WAS SWIMMING IN (MDL) CHILD SEXUAL ABUSE RAPE, CRIMINAL ASSAULT, KIDNAPPING, TORTURE, EXTREME BULLYING, AND VARIOUS CRIMES AGAINST HUMANITY? kNOWING ALL TOO WELL FROM THE BROKEN AND VIOLATED BODIES COMING FROM MEXICO, AND AMERICA. THAT VICTIMS OF CHILD SEXUAL ASSAULT, NEED TO BE SILENCED, ENSLAVED OR HIDDEN.

THE BOY SCOUTS OF AMERICA CAMP SITES, HAVE (NOT) BEEN CLEARED BY "EXPERT RECOVERY TEAMS & CADAVER DOGS." TO MAKE SURE THAT THE FAMILIAR SCOUT LEADER PEDOPHILE PATTERNS, HUNTING & LIKELY KILLING FIELDS. HAVE (NOT) BURIED LOST, MISSING, AND EXPLOITED CHILDREN IN LOCAL SCOUTING COUNCILS CAMPGROUNDS. CLOUDING AND CREATING DEFECTS ON REAL PROPERTY TITLE. WHICH BSA HAS A LEGAL DUTY TO PROVIDE AMPLE & CERTIFIED DISCLOSURE.

ASSURING THAT VICTIMS OF CHILD EXPLOITATION ARE (NOT) BURIED ACROSS THE UNITED STATES IN HUNDREDS OF BOY SCOUT CAMPS. WHERE THEY CAN BE EASILY HIDDEN FROM VIEW, BY THE UNHOLY SHIELDING OF THE SYMBOLS AND PROTECTION OF BSA MANAGEMENT. WE HAVE SADLY LEARNED. THAT SERIAL AND ONE TIME PEDOPHILES HAVE JOINED AND GRAVITATE TO ALL AREAS OF SCOUTING AS VOLUTEERS, EMPLOYEES, AND EXECUTIVES.

JPMORGAN CHASE & CO., WHO CAN AFFORD TO PAY $30 BILLION DOLLARS IN STATE AND FEDERAL FINES SINCE 2000. CAN STILL OPERATE "BEING TOO BIG TO FAIL," WITH A D.O.J. CRIMINAL DEFERRED PROSECUTION AGREEMENT AND UNDERSTANDING. THAT THE VERY WORST IN HUMANITY, HAVE BEEN DEEPLY INVOLVED IN SCOUTNG. LARGELY

ENGAGED IN INSTITUTIONAL NEGLIGENCE. YET, JPMORGAN CHASE & CO.,
FUNDED "THE CHURCHILL PLAN WAR," PUT UP TENS OF MILLIONS OF
DOLLARS. WITH THIS PUBLIC KNOWLEDGE.

WHY?



UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT



UNITED STATES OF AMERICA

v.                                              CRIMINAL NO.   3:20-cr-00175 - RNC

JPMORGAN CHASE & CO.

## DEFERRED PROSECUTION AGREEMENT



Defendant JPMorgan Chase & Co. (the "Company"), pursuant to authority granted by the Company's Board of Directors reflected in Attachment B, and the United States Department of Justice, Criminal Division, Fraud Section, and the United States Attorney's Office for the District of Connecticut (collectively, the "Fraud Section and the Office"), enter into this deferred prosecution agreement (the "Agreement"). The Company's subsidiaries, JPMorgan Chase Bank, N.A. ("JPMC"), and J.P. Morgan Securities LLC ("JPMS") (together, the "Related Entities"), also agree, pursuant to the authority granted by their respective Boards of Directors, also reflected in Attachment B, to certain terms and obligations of the Agreement as described below. The terms and conditions of this Agreement are as follows:

### Criminal Information and Acceptance of Responsibility

1.       The Company acknowledges and agrees that the Fraud Section and the Office will file the attached two-count criminal Information in the United States District Court for the District of Connecticut charging the Company with two counts of wire fraud, in violation of Title 18, United States Code, Section 1343. In so doing, the Company: (a) knowingly waives any right it may have to indictment on these charges, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b); and (b) knowingly waives any objection with respect

-1-

# Violation Tracker Parent Company Summary

**Parent Company Name:** JPMorgan Chase

**Ownership Structure:** publicly traded (ticker symbol NYSE: JPM) 

**Headquartered in:** New York

**Major Industry:** financial services

**Specific Industry:** banking & securities

**Penalty total since 2000: $38,051,437,155**

**Number of records:** 193



| Top 5 Offense Groups (Groups Defined) | Penalty Total | Number of Records |
|---|---|---|
| financial offenses | $31,970,667,306 | 113 |
| competition-related offenses | $1,840,419,125 | 12 |
| consumer-protection-related offenses | $953,651,750 | 18 |
| government-contracting-related offenses | $614,000,000 | 1 |
| employment-related offenses | $521,282,027 | 41 |

| Top 5 Primary Offense Types | Penalty Total | Number of Records |
|---|---|---|
| toxic securities abuses | $13,450,500,000 | 5 |
| investor protection violation | $6,210,421,206 | 73 |
| mortgage abuses | $5,362,675,000 | 5 |
| banking violation | $4,262,350,341 | 14 |
| anti-money-laundering deficiencies | $2,161,000,000 | 2 |

**Notes:**

Parent-subsidiary linkages are based on relationships current as of the latest revision listed in the Update Log, which may vary from what was the case when a violation occurred. The penalty totals are adjusted to account for the fact that the individual entries below may include both agency records and settlement announcements for the same case; or else a penalty covering multiple locations may be listed in the individual records for each of the facilities. The totals are also adjusted to reflect cases in which federal and state or local agencies cooperated and issued separate announcements of the outcome. Duplicate or overlapping penalty amounts are marked with an asterisk in the list below.

**Links:**

For an overview of this company's accountability track record, read its Corporate Rap Sheet here.

Subsidy Tracker data on financial assistance to this company by federal, state and local government agencies can be found here.

Violation Tracker UK data on for this company can be found here.

## Individual Penalty Records:

Click on the company or penalty amount for more information on each case.

**Download results as** CSV or XML (maximum 10,000; for access to larger downloads contact Phil Mattera)

| Company | Primary Offense Type | Year | Agency | Penalty Amount |
|---|---|---|---|---|
| JPMorgan Chase | toxic securities abuses | 2013 | DOJ | $13,000,000,000 |
| JPMorgan Chase & Co. | mortgage abuses | 2012 | DOJ | $5,333,600,000 |
| JP Morgan Chase & Co. | investor protection violation | 2008 | MULTI-AG | $3,525,000,000 |

**Department of Justice**

Office of Public Affairs

FOR IMMEDIATE RELEASE                                                                 Tuesday, September 29, 2020

## JPMorgan Chase & Co. Agrees To Pay $920 Million in Connection with Schemes to Defraud Precious Metals and U.S. Treasuries Markets

JPMorgan Chase & Co. (JPMorgan), a New York, New York-based global banking and financial services firm, has entered into a resolution with the Department of Justice to resolve criminal charges related to two distinct schemes to defraud: the first involving tens of thousands of episodes of unlawful trading in the markets for precious metals futures contracts, and the second involving thousands of episodes of unlawful trading in the markets for U.S. Treasury futures contracts and in the secondary (cash) market for U.S. Treasury notes and bonds.

JPMorgan entered into a deferred prosecution agreement (DPA) in connection with a criminal information filed today in the District of Connecticut charging the company with two counts of wire fraud.  Under the terms of the DPA, JPMorgan will pay over $920 million in a criminal monetary penalty, criminal disgorgement, and victim compensation, with the criminal monetary penalty credited against payments made to the Commodity Futures Trading Commission (CFTC) under a separate agreement with the CFTC being announced today and with part of the criminal disgorgement credited against payments made to the Securities Exchange Commission (SEC) under a separate agreement with the SEC being announced today.

"For over eight years, traders on JP Morgan's precious metals and U.S. Treasuries desks engaged in separate schemes to defraud other market participants that involved thousands of instances of unlawful trading meant to enhance profits and avoid losses," said Acting Assistant Attorney General Brian C. Rabbitt of the Justice Department's Criminal Division.  "Today's resolution — which includes a significant criminal monetary penalty, compensation for victims, and requires JP Morgan to disgorge its unlawful gains — reflects the nature and seriousness of the bank's offenses and represents a milestone in the department's ongoing efforts to ensure the integrity of public markets critical to our financial system."

"JPMorgan engaged in two separate years-long market manipulation schemes," said U.S. Attorney John H. Durham of the District of Connecticut.  "Not only will the company pay a substantial financial penalty and return money to victims, but this agreement requires JPMorgan to self-report violations of the federal anti-fraud laws and cooperate in any future criminal investigations.  I thank the FBI for its dedication in investigating these deceptive trading practices and other sophisticated financial crimes."

"For nearly a decade, a significant number of JP Morgan traders and sales personnel openly disregarded U.S. laws that serve to protect against illegal activity in the marketplace," said Assistant Director in Charge William F. Sweeney Jr. of the FBI's New York Field Office.  "Today's deferred prosecution agreement, in which JP Morgan Chase and Co. agreed to pay nearly one billion dollars in penalties and victim compensation, is a stark reminder to others that allegations of this nature will be aggressively investigated and pursued."

According to admissions and court documents, between approximately March 2008 and August 2016, numerous traders and sales personnel on JPMorgan's precious metals desk located in New York, London, and Singapore engaged in a scheme to defraud in connection with the purchase and sale of gold, silver, platinum, and palladium futures contracts (collectively, precious metals futures contracts) that traded on the New York Mercantile Exchange Inc. and Commodity Exchange Inc., which are commodities exchanges operated by the CME Group Inc. In tens of thousands of instances, traders on the precious metals desk placed orders to buy and sell precious metals futures contracts with the intent to cancel those orders before execution, including in an attempt to profit by deceiving other market participants through injecting false and misleading information concerning the existence of genuine supply and demand for precious metals futures contracts.  In addition, on certain occasions, traders on the precious metals desk engaged in trading activity that was intended to deliberately trigger or defend barrier options held by JPMorgan and thereby avoid losses.

One of the traders on the precious metals desk, John Edmonds, 38, of Brooklyn, New York, pleaded guilty on Oct. 9, 2018, to one count of commodities fraud and one count of conspiracy to commit wire fraud, commodities fraud, commodities price manipulation, and spoofing, and his sentencing, at this time, has not been scheduled before U.S. District Judge Robert N. Chatigny of the District of Connecticut. Another one of the traders on the precious metals desk, Christian Trunz, 35, of New York, New York, pleaded guilty on Aug. 20, 2019, to one count of conspiracy to engage in spoofing and one count of spoofing in connection with his precious metals futures contracts trading at JPMorgan and another financial services firm, and his sentencing is scheduled for Jan. 28, 2021, before U.S. District Judge Sterling Johnson of the Eastern District of New York.

Finally, as part of the investigation, the department obtained a superseding indictment on Nov. 15, 2019 against three former JPMorgan traders, Gregg Smith, Michael Nowak, and Christopher Jordan, and one former salesperson, Jeffrey Ruffo, in the Northern District of Illinois that charged them for their alleged participation in a racketeering conspiracy and other federal

crimes in connection with the manipulation of the precious metals futures contracts markets. An indictment is merely an allegation and all defendants are presumed innocent until proven guilty beyond a reasonable doubt in a court of law.

Also according to admissions and court documents, between approximately April 2008 and January 2016, traders on JPMorgan's U.S. Treasuries desk located in New York and London engaged in a scheme to defraud in connection with the purchase and sale of U.S. Treasury futures contracts that traded on the Chicago Board of Trade, which is a commodities exchange operated by the CME Group Inc., and of U.S. Treasury notes and bonds traded in the secondary cash market (the U.S. Treasury futures, notes, and bonds, collectively, U.S. Treasury Products). In thousands of instances, traders on the U.S. Treasuries desk placed orders to buy and sell U.S. Treasury Products with the intent to cancel those orders before execution, including in an attempt to profit by deceiving other market participants through injecting false and misleading information concerning the existence of genuine supply and demand for U.S. Treasury Products.

As part of the DPA, JPMorgan, and its subsidiaries JPMorgan Chase Bank, N.A. (JPMC) and J.P. Morgan Securities LLC (JPMS) have agreed to, among other things, continue to cooperate with the Fraud Section and the U.S. Attorney's Office for the District of Connecticut in any ongoing or future investigations and prosecutions concerning JPMorgan, JPMC, JPMS, and their subsidiaries and affiliates, and their officers, directors, employees and agents. As part of its cooperation, JPMorgan, JPMC, and JPMS are required to report evidence or allegations of conduct which may constitute a violation of the wire fraud statute, the anti-fraud, anti-spoofing and/or anti-manipulation provisions of the Commodity Exchange Act, the securities and commodities fraud statute, and federal securities laws prohibiting manipulative and deceptive devices. In addition, JPMorgan, JPMC, and JPMS have also agreed to enhance their compliance program where necessary and appropriate, and to report to the government regarding remediation and implementation of their enhanced compliance program.

The department reached this resolution with JPMorgan based on a number of factors, including the nature and seriousness of the offense conduct, which spanned eight years and involved tens of thousands of instances of unlawful trading activity; JPMorgan's failure to fully and voluntarily self-disclose the offense conduct to the department; JPMorgan's prior criminal history, including a guilty plea on May 20, 2015, for similar misconduct involving manipulative and deceptive trading practices in the foreign currency exchange spot market (FX Guilty Plea); and the fact that substantially all of the offense conduct occurred prior to the FX Guilty Plea.

JPMorgan received credit for its cooperation with the department's investigation and for the remedial measures taken by JPMorgan, JPMC, and JPMS, including suspending and ultimately terminating individuals involved in the offense conduct, adopting heightened internal controls, and substantially increasing the resources devoted to compliance. Significantly, since the time of the offense conduct, and following the FX Guilty Plea, JPMorgan, JPMC, and JPMS engaged in a systematic effort to reassess and enhance their market conduct compliance program and internal controls. These enhancements included hiring hundreds of new compliance officers, improving their anti-fraud and manipulation training and policies, revising their trade and electronic communications surveillance programs, implementing tools and processes to facilitate closer supervision of traders, taking into account employees' commitment to compliance in promotion and compensation decisions, and implementing independent quality assurance testing of non-escalated and escalated surveillance alerts. Based on JPMorgan's, JPMC's and JPMS' remediation and the state of their compliance program, the department determined that an independent compliance monitor was unnecessary.

Today, the CFTC announced a separate settlement with JPMorgan, JPMC, and JPMS in connection with a related, parallel proceeding. Under the terms of that resolution, JPMorgan agreed to pay approximately $920 million, which includes a civil monetary penalty of approximately $436 million, as well as restitution and disgorgement that will be credited to any such payments made to the department under the DPA. Also, the SEC announced today a separate settlement with JPMS in connection with a related, parallel proceeding regarding trading activity in the secondary cash market for U.S. Treasury notes and bonds. Under the terms of that resolution, JPMS agreed to pay $10 million in disgorgement and a civil monetary penalty of $25 million.

The FBI's New York Field Office investigated this case. Assistant Chief Avi Perry and Trial Attorney Matthew F. Sullivan of the Fraud Section and Assistant U.S. Attorney Jonathan Francis of the District of Connecticut prosecuted the case.

Individuals who believe that they may be a victim in this case should visit the Fraud Section's Victim Witness website at https://www.justice.gov/criminal-vns/case/jpmorgan-dpa or call (888) 549-3945.

The year 2020 marks the 150th anniversary of the Department of Justice. Learn more about the history of our agency at www.Justice.gov/Celebrating150Years.

---

**Attachment(s):**
Download JPM Deferred Prosecution Agreement
Download JPM Information

**Topic(s):**
Securities, Commodities, & Investment Fraud

## JPMorgan Chase & Co.



## JPMORGAN CHASE & CO.

| | |
|---|---|
| **Type** | Public |
| **Traded as** | NYSE: JPM |
| | DJIA component |
| | S&P 100 component |
| | S&P 500 component |
| **ISIN** | US46625H1005 |
| **Industry** | Financial services |
| **Predecessors** | The Bank of the Manhattan Company (founded on September 1, 1799) Chemical Bank J.P. Morgan & Co. Chase National Bank |
| **Founded** | December 1, 2000 |
| **Founders** | Aaron Burr (The Bank of the Manhattan Company) Balthazar P. Melick (Chemical Bank) John Pierpont Morgan (J.P. Morgan & Co.) John Thompson (Chase National Bank) |
| **Headquarters** | New York City, New York, U.S. |
| **Area served** | Worldwide |
| **Key people** | Jamie Dimon (Chairman & CEO) Daniel E. Pinto (Co-President & COO) |

# EXHIBIT

# 14



**STATE BAR of TEXAS**



## STEVEN 'STEVE' MCGOWAN

**Eligible to Practice in Texas**

### BOY SCOUTS OF AMERICA

*Bar Card Number:* 24089313
*TX License Date:* 01/27/2014

*Primary Practice Location:* Irving , Texas

PO BOX 152079
1325 W WALNUT HILL LN
Irving, TX 75015-2079

*Practice Areas:* Law Office Management, Non-Profits

*Statutory Profile Last Certified On:* 05/06/2021

### PRACTICE INFORMATION

*Firm:* Boy Scouts of America

*Firm Size:* 2 to 5

*Occupation:* In-House/Corporate Counsel

*Practice Areas: Law Office Management, Non-Profits*

*Services Provided:*
Deaf/Hard of Hearing Translation: Not Specified
ADA-accessible client service: Not Specified
Language translation: Not Specified

*Fee Options Provided:* 🌐
None Reported By Attorney

### CONTACT INFORMATION

**Tel: 972-580-7847** 📞

### COURTS OF ADMITTANCE

*Federal:*
US Supreme Court
Fourth Circuit Court of Appeals
West Virginia Northern District Court
West Virginia Southern District Court

*Other Courts:*
None Reported By Attorney

*Other States Licensed:*
West Virginia

We use cookies to analyze our traffic and enhance functionality. **More Information**

*client. The State Bar of Texas is not responsible for payment*
*arrangements between an attorney and his/her client.*

*status can only be certified by the appropriate*
*court or licensing entity.*

### Foreign Language Assistance:
None Reported By Attorney

## LAW SCHOOL

**School**
**Degree earned**

West Virginia University
Doctor of Jurisprudence/Juris Doctor (J.D.)

**Graduation Date**    05/1981

## PUBLIC DISCIPLINARY HISTORY

**State of Texas**
No Public Disciplinary History

**Other States**
None Reported By Attorney

Sanctions that indicate a judgment is on appeal are still in effect but are not final and subject to change. To request a copy of a disciplinary judgment that is not available online or for more information about a specific disciplinary sanction listed above, please contact the Office of the chief Disciplinary Counsel at (877) 953-5535.

The Texas Attorney Profile provides basic information about Attorneys licensed to practice in Texas. Attorney profile information is provided as a public service by the State Bar of Texas as outlined in Section 81.115 of the Texas Government Code. The information contained herein is provided "as is" with no warranty of any kind, express or implied. Neither the State Bar of Texas, nor its Board of Directors, nor any employee thereof may be held responsible for the accuracy of the data. Much of the information has been provided by the attorney and is required to be reviewed and updated by the attorney annually. The information noted with an asterisk (*) is provided by the State Bar of Texas. Access to this site is authorized for public use only. Any unauthorized use of this system is subject to both civil and criminal penalties. This does not constitute a certified lawyer referral service.

We use cookies to analyze our traffic and enhance functionality. More Information

AGREE



# Attorney Profile

## Steven Paul McGowan

### Contact Information

Boys Scouts of America
P.O. Box 152079
Irving , TX , 75015
Phone Number: (972) 580-7847

### Email Address

Please login to view

### Membership

Admission Date: 05/15/1984
Status: Inactive

### WV Bar ID

### User Login

Email Address*

Password *

Request new
password

Fill in this information to identify the case:

United States Bankruptcy Court for the District of Delaware

Case number (*if known*): _____ Chapter 11 _____

☐ Check if this is an amended filing

## Official Form 201
# Voluntary Petition for Non-Individuals Filing for Bankruptcy   04/16

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | Boy Scouts of America |
| 2. | **All other names debtor used in the last 8 years** <br> Include any assumed names, trade names, and *doing business as* names | BSA <br> ~~*FALSE*~~ |
| 3. | **Debtor's federal Employer Identification Number (EIN)** | 22-1576300 |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| 1325 West Walnut Hill Lane <br> Number    Street | Number    Street |
| Irving        TX    75038 <br> City        State    ZIP Code | City        State    ZIP Code |
| Dallas <br> County | **Location of principal assets, if different from principal place of business** <br> ~~*FALSE*~~  Number    Street <br> City    State    ZIP Code |

5. **Debtor's website (URL)**    www.scouting.org

6. **Type of debtor**
☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
☐ Partnership (excluding  LLP)
☐ Other. Specify: _____

**DATE OF CRIME**

| Information to identify the case: | | | |
|---|---|---|---|
| Debtor | **Boy Scouts of America** <br> Name | EIN | 22-1576300 |
| United States Bankruptcy Court | **District of Delaware** | Date case filed in chapter 11 | 02/18/2020 <br> MM / DD / YYYY |
| Case number: 20-10343 (LSS) | | Date case converted to chapter | |

## Official Form 309F (For Corporations or Partnerships)

## Notice of Chapter 11 Bankruptcy Case                                          12/17

**For the debtor listed above and each of the debtors listed below under "Jointly Administered Cases", a case has been filed under chapter 11 of the Bankruptcy Code. An order for relief has been entered.**

**This notice has important information about the case for creditors, debtors, and trustees, including information about the meeting of creditors and deadlines. Read both pages carefully.**

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtor or the debtor's property. For example, while the stay is in effect, creditors cannot sue, assert a deficiency, repossess property, or otherwise try to collect from the debtor. Creditors cannot demand repayment from the debtor by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees.

Confirmation of a chapter 11 plan may result in a discharge of debt. A creditor who wants to have a particular debt excepted from discharge may be required to file a complaint in the bankruptcy clerk's office within the deadline specified in this notice. (See line 11 below for more information.)

To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at www.pacer.gov) or at the website maintained by the Debtors' claims and noticing agent, Omni Agent Solutions, at www.omniagentsolutions.com/bsa or www.OfficialBSAclaims.com.

**The staff of the bankruptcy clerk's office cannot give legal advice.**

**Do not file this notice with any proof of claim or other filing in the case.**

**Valid Picture ID is required for access to the J. Caleb Boggs Federal Building. Additionally, Debtor(s) must also present photo ID plus original verification of his/her social security number to the Bankruptcy Trustee. If you do not have a photo ID and/or original verification of your social security number, please contact the Office of the United States Trustee's (302-573-6491).**

| | | | |
|---|---|---|---|
| **1.** | **Debtor's full name** | Boy Scouts of America | |
| **2.** | **All other names used in the last 8 years** | BSA | |
| | **Jointly Administered Cases** | Delaware BSA, LLC | **Case No.** 20-10342 (LSS)   **Tax ID.** 84-2764311 |
| **3.** | **Address** | 1325 West Walnut Hill Lane <br> Irving, TX 75038 | **DEREK ABBOTT** |

**J. LAURIA/SIDLEY**

| | |
|---|---|
| **4.** | **Debtor's attorneys** |

**SIDLEY AUSTIN LLP**
Jessica C. K. Boelter
787 Seventh Avenue
New York, New York 10019

Telephone: (212) 839-5300
Email: jboelter@sidley.com

-and-

James F. Conlan
Thomas A. Labuda
Michael C. Andolina
Matthew E. Linder
One South Dearborn Street
Chicago, Illinois 60603

Telephone: (312) 853-7000
Email: jconlan@sidley.com
tlabuda@sidley.com
mandolina@sidley.com
mlinder@sidley.com

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**  Telephone: (302) 351-9314
Derek C. Abbott (No. 3376)              Email: dabbott@mnat.com
Andrew R. Remming (No. 5120)                   aremming@mnat.com
Joseph C. Barsalona II (No. 6102)              jbarsalona@mnat.com
Paige N. Topper (No. 6470)                     ptopper@mnat.com
Eric Moats (No. 6441)                          emoats@mnat.com
1201 North Market Street, 16th Floor P.O.
Box 1347
Wilmington, Delaware 19899-1347

**Debtors' Claims and Noticing Agent:**
If you have questions about this notice,
please contact Omni Agent Solutions

Telephone (toll-free): 866-907-2721
Email: BSAInquiries@omniagnt.com
Website: www.omniagentsolutions.com/bsa
or www.OfficialBSAclaims.com

Debtor <u>Boy Scouts of America</u>                    Case number *(if known)*_____
          Name

**11. Why is the case filed in *this* district?**

*FALSE*

Check all that apply:

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

*FALSE*

☒ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention? (Check all that apply.)**

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard?_____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
                              Number    Street

                         _____

                         _____    _____    _____
                         City                     State        ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

          Contact        _____

          Phone          _____

---

**Consolidated statistical and administrative information**

**13. Debtors' estimation of available funds**

*FALSE*

Check one:

☒ Funds will be available for distribution to ~~unsecured~~ creditors.

☐ ~~After any administrative expenses are p...~~ *FALSE* ...will be available for distribution to unsecured

*TRUE*

**14. Estimated number of creditors**

☐ 1-49
☐ 50-99
☐ 100-199
☐ 200-999

☒ 1,000-5,000
☐ 5,001-10,000
☐ 10,001-25,000

☐ 25,001-50,000
☐ 50,001-100,000
☐ More than 100,000

**15. Estimated assets***

☐ $0-$50,000
☐ $50,001-$100,000
☐ $100,001-$500,000
☐ $500,001-$1 million

☐ $1,000,001-$10 million
☐ $10,000,001-$50 million
☐ $50,000,001-$100 million
☐ $100,000,001-$500 million

☐ $500,000,001-$1 billion
☒ $1,000,000,001-$10 billion
☐ $10,000,000,001-$50 billion
☐ More than $50 billion

_____
* Includes donor restricted and core assets.

Official Form 201        Voluntary Petition for Non-Individuals Filing for Bankruptcy        page 3

| 5. | **Bankruptcy clerk's office** | | |
|----|----|----|----|
| | Documents in this case may be filed at this address. You may inspect all records filed in this case at this office or online at www.pacer.gov. | 824 Market Street, 3rd Floor Wilmington, DE 19801 | Hours open: Monday – Friday 8:00 AM – 4:00 PM<br><br>Contact phone 302-252-2900 |

| 6. | **Meeting of creditors** | | |
|----|----|----|----|
| | The debtor's representative must attend the meeting to be questioned under oath. Creditors may attend, but are not required to do so. | April 15, 2020 at 1:00 p.m. (ET)<br><br>The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket. | Location:<br>**J. Caleb Boggs Federal Building<br>844 King Street, Room 3209<br>Wilmington, DE 19801** |

| 7. | **Proof of claim deadline** | Deadline for filing proof of claim: Not yet set. If a deadline is set, the court will send you another notice. | For a governmental unit: Not yet set. If a deadline is set, the court will send you another notice. |
|----|----|----|----|
| | | A proof of claim is a signed statement describing a creditor's claim. A proof of claim form may be filed either electronically or as a paper document. For more information on how to file a Proof of Claim, visit the Delaware Bankruptcy Court's website at http://www.deb.uscourts.gov/claims-information. | |
| | | Your claim will be allowed in the amount scheduled unless:<br>• your claim is designated as *disputed, contingent,* or *unliquidated*;<br>• you file a proof of claim in a different amount; or<br>• you receive another notice. | |
| | | If your claim is not scheduled or if your claim is designated as *disputed, contingent,* or *unliquidated*, you must file a proof of claim or you might not be paid on your claim and you might be unable to vote on a plan. You may file a proof of claim even if your claim is scheduled. | |
| | | You may review the schedules at the bankruptcy clerk's office or online at www.pacer.gov. | |
| | | Secured creditors retain rights in their collateral regardless of whether they file a proof of claim. Filing a proof of claim submits a creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain. For example, a secured creditor who files a proof of claim may surrender important nonmonetary rights, including the right to a jury trial. | |

| 8. | **Exception to discharge Deadline** | If § 523(c) applies to your claim and you seek to have it excepted from discharge, you must start a judicial proceeding by filing a complaint by the deadline stated below. | |
|----|----|----|----|
| | The bankruptcy clerk's office must receive a complaint and any required filing fee by the following deadline. | **Deadline for filing the complaint:**    June 15, 2020 | |

| 9. | **Creditors with a foreign address** | If you are a creditor receiving notice mailed to a foreign address, you may file a motion asking the court to extend the deadlines in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case. | |
|----|----|----|----|

| 10. | **Filing a Chapter 11 bankruptcy case** | Chapter 11 allows debtors to reorganize or liquidate according to a plan. A plan is not effective unless the court confirms it. You may receive a copy of the plan and a disclosure statement telling you about the plan, and you may have the opportunity to vote on the plan. You will receive notice of the date of the confirmation hearing, and you may object to confirmation of the plan and attend the confirmation hearing. Unless a trustee is serving, the debtor will remain in possession of the property and may continue to operate its business. | |
|----|----|----|----|

| 11. | **Discharge of debts** | Confirmation of a chapter 11 plan may result in a discharge of debts, which may include all or part of your debt. See 11 U.S.C. § 1141(d). A discharge means that creditors may never try to collect the debt from the debtor except as provided in the plan. If you want to have a particular debt owed to you excepted from the discharge and § 523(c) applies to your claim, you must start a judicial proceeding by filing a complaint and paying the filing fee in the bankruptcy clerk's office by the deadline. | |
|----|----|----|----|

# Filing Information

 Please note that this form CANNOT be submitted in place of your Annual Report.

| Name | **National Boy Scouts of America Foundation** | | |
|------|------|------|------|
| **Filing ID** | **2007-000528932** | | |
| Type | Nonprofit Corporation | Status | Active |

## Most Recent Annual Report Information

| Type | Original | | | AR Year | 2021 |
|------|----------|------|------|------|------|
| License Tax | $25.00 | AR Exempt | N | AR ID | 06045532 |
| AR Date | 12/31/2020 1:03 PM | | | | |
| Web Filed | Y | | | | |

## Officers / Directors

| Type | Name / Organization / Address |
|------|------|
| Director | B. Howard Bulloch  1325 W. Walnut Hill Lane, Irving, TX  75038-3008 |
| Director | Bradley D. Tilden  1325 W. Walnut Hill Lane, Irving, TX  75038-3008 |
| Director | Craig E. Fenneman  1325 W. Walnut Hill Lane, Irving, TX  75038-3008 |
| Director | Dr. Robert M. Gates  1325 W. Walnut Hill Lane, Irving, TX  75038-3008 |
| Director | Jack D. Furst  1325 W. Walnut Hill Lane, Irving, TX  75038-3008 |
| Director | James S. Turley  1325 W. Walnut Hill Lane, Irving, TX  75038-3008 |
| Director | Randall L. Stephenson  1325 W. Walnut Hill Lane, Irving, TX  75038-3008 |
| Director | Thomas C. Edwards  1325 W. Walnut Hill Lane, Irving, TX  75038-3008 |
| Director | Wayne M. Perry  1325 W. Walnut Hill Lane, Irving, TX  75038-3008 |
| President | Roger C. Mosby  1323 W. Walnut Hill Lane, Irving, TX  75038-3008 |
| Secretary | Cicely Nelson  1325 W. Walnut Hill Lane, Irving, TX  75038-3008 |
| Treasurer / Director | Michael A. Ashline  1325 W. Walnut Hill Lane, Irving, TX  75038-3008 |

**Principal Address**

1325 W. Walnut Hill Lane
Irving, TX 75038-3008

**Mailing Address**

1325 W. Walnut Hill Lane
Ste S406
Irving, TX 75038-3008

## Annual Report History

| Num | Status | Date | Year | Tax |
|------|------|------|------|------|
| 00832816 | Original | 12/10/2007 | 2008 | $25.00 |
| 00950713 | Original | 12/08/2008 | 2009 | $25.00 |
| 01092729 | Original | 12/22/2009 | 2010 | $25.00 |
| 01256085 | Original | 12/17/2010 | 2011 | $25.00 |
| 01446359 | Original | 12/13/2011 | 2012 | $25.00 |
| 01630307 | Original | 12/11/2012 | 2013 | $25.00 |
| 01943154 | Original | 12/09/2013 | 2014 | $25.00 |

Principal Address 1 Changed  From: 1325 W. Walnut Hill Ln  To: 1325 W. Walnut Hill Lane
Principal Address 3 Changed  From: No value  To: 1325 W. Walnut Hill Lane

# STATE OF WYOMING ✶ SECRETARY OF STATE
## EDWARD A. BUCHANAN
## BUSINESS DIVISION

Herschler Bldg East, Ste.100 & 101, Cheyenne, WY 82002-0020
Phone 307-777-7311
Website: https://sos.wyo.gov · Email: business@wyo.gov

## Filing Information

 Please note that this form CANNOT be submitted in place of your Annual Report.

| | | | |
|---|---|---|---|
| Name | **National Boy Scouts of America Foundation** | | |
| **Filing ID** | **2007-000528932** | | |
| Type | Nonprofit Corporation | Status | Active |

## General Information

| | | | |
|---|---|---|---|
| Old Name | | Sub Status | Current |
| Fictitious Name | | Standing - Tax | Good |
| | | Standing - RA | Good |
| Sub Type | | Standing - Other | Good |
| Formed in | District Of Columbia | Filing Date | 01/09/2007 12:00 AM |
| Term of Duration | Perpetual | Delayed Effective Date | |
| | | Inactive Date | |

**Principal Address**

1325 W. Walnut Hill Lane
Irving, TX 75038-3008

**Mailing Address**

1325 W. Walnut Hill Lane
Ste S406
Irving, TX 75038-3008

**Registered Agent Address**

Capitol Corporate Services, Inc.
1720 Carey Ave Ste 400
Cheyenne, WY 82001

**Parties**

| Type | Name / Organization / Address |
|---|---|

**Notes**

| Date | Recorded By | Note |
|---|---|---|

# Filing Information

 Please note that this form CANNOT be submitted in place of your Annual Report.

| Name | **National Boy Scouts of America Foundation** | | | | |
|---|---|---|---|---|---|
| **Filing ID** | 2007-000528932 | | | | |
| Type | Nonprofit Corporation | | | Status | Active |
| 02131780 | Original | 11/20/2014 | 2015 | $25.00 | |
| 02350557 | Original | 11/03/2015 | 2016 | $25.00 | |
| 02665097 | Original | 12/12/2016 | 2017 | $25.00 | |
| 03084641 | Original | 10/17/2017 | 2018 | $25.00 | |
| 04008950 | Original | 12/04/2018 | 2019 | $25.00 | |
| 05288923 | Original | 12/04/2019 | 2020 | $25.00 | |
| 06045532 | Original | 12/31/2020 | 2021 | $25.00 | |

## Amendment History

| ID | Description | Date |
|---|---|---|
| See Filing ID | Initial Filing | 01/09/2007 |

DUNS Number 032875506

Boy Scouts America Nat Council
Boy Scouts Of America
Boy Scouts Of America Corporation
Boy Scouts Of America National Council
Boy Scouts Of America National Council, A U.S.A. Corporation
Boy Scouts Of America- Southwest Florida Scout Shop
Boy Scouts Of America, Corp.
Boy Scouts Of America-Jacksonville Scout Shop
Alternate Company Names

Boy Scouts Of America - Knoxville Scout Shop
Boy Scouts Of America-Johnson City Scout Shop
Boy Scouts Of America-Little Rock Scout Shop
Boy Scouts Of America-Memphis Scout Shop
Boy Scouts Of America-Summit Trading Post

BOY SCOUTS OF AME NE REGTR FN
DUNS Number 967672861

Boy Scouts Of Ame Ne Regtr Fn
Alternate Company Names

Boy Scouts Of America
BOY SCOUTS OF AMERICA
DUNS Number 001902220

Boy Scouts Of America
Boy Scouts Of America - Idaho Falls Scout Shop
Boy Scouts Of America Ore-Ida Scout Shop
Alternate Company Names

Boy Scouts Of America - Blue Ridge Mountains Scoutshop (Roanoke Ci)
BOY SCOUTS OF AMERICA
DUNS Number 005963066
Primary Company Names

Boy Scouts Of America
Boy Scouts Of America (Corp)
Order Of Arrow Boyscouts Amer
Order Of Arrow Boyscouts Of America
Alternate Company Names

Boyscouts Of America
BOY SCOUTS OF AMERICA
DUNS Number 045756702
Primary Company Names

Boy Scouts Of America
BOY SCOUTS OF AMERICA
DUNS Number 048019630
Primary Company Names

Boy Scouts Of America
BOY SCOUTS OF AMERICA
DUNS Number 130263346
Primary Company Names

Boy Scouts Of America
BOY SCOUTS OF AMERICA

DUNS Number 164428757
Primary Company Names

Boy Scouts Of America
BOY SCOUTS OF AMERICA - LA-NO-CHE SCOUT SHOP
DUNS Number
?
Primary Company Names

Boy Scouts Of America - La-No-Che Scout Shop
BOY SCOUTS OF AMERICA - PENSACOLA-GULF COAST SCOUT SHOP
DUNS Number 032875506
Primary Company Names

Boy Scouts Of America - Pensacola-Gulf Coast Scout Shop
BOY SCOUTS OF AMERICA - TAMPA BAY SCOUT SHOP
DUNS Number
?
Primary Company Names

Boy Scouts Of America - Tampa Bay Scout Shop
BOY SCOUTS OF AMERICA- CENTRAL FLORIDA SCOUT SHOP
DUNS Number
?
Primary Company Names

Boy Scouts Of America- Central Florida Scout Shop
BOY SCOUTS OF AMERICA MASTER PENSION TRUST
DUNS Number 079913833
Primary Company Names

Boy Scouts Of America Master Pension Trust
BOY SCOUTS OF AMERICA- ME RINKER SCOUT SHOP
DUNS Number
?
Primary Company Names

Boy Scouts Of America- Me Rinker Scout Shop
BOY SCOUTS OF AMERICA SOUTHERN REGION TRUST FUND
DUNS Number
?

967743274
Primary Company Names

Boy Scouts Of America Southern Region Trust Fund
BOY SCOUTS OF AMERICA-BREVARD SCOUT SHOP
DUNS Number
?
Primary Company Names

Boy Scouts Of America-Brevard Scout Shop
BOY SCOUTS OF AMERICA-PINE TREE SCOUT SHOP
DUNS Number
?
Alternate Company Names

Boy Scouts Of America-Pine Tree Scout Shop
BOY SCOUTS OF AMERICA-SIOUX PREMIER SCOUT SHOP
DUNS Number 602308843
Primary Company Names

Boy Scouts Of America-Sioux Premier Scout Shop
BOYS' LIFE MAGAZINE
DUNS Number 835636288
Primary Company Names

Boys' Life Magazine
BOYS SCOUTS OF AMERICA
DUNS Number 156481301
Primary Company Names

Boys Scouts Of America
BOYSCOUTS OF AMERICA - MIAMI SCOUT SHOP
DUNS Number
?
Primary Company Names

Boyscouts Of America - Miami Scout Shop
BROOKS ELECTRICAL CONTRACTORS, INC.
DUNS Number 013041749
Primary Company Names

Brooks Electrical Contractors, Inc.
BSA
DUNS Number 602308843
Primary Company Names

Bsa
BSA ASSET MANAGEMENT, LLC
DUNS Number
?
Primary Company Names

Bsa Asset Management, LLC
BSA COMMINGLED ENDOWMENT FUND, LP
DUNS Number 965773620
Primary Company Names

Bsa Commingled Endowment Fund, Lp
BSA ENDOWMENT MASTER TR
DUNS Number 965773620
Primary Company Names

Bsa Endowment Master Tr
BSA SIOUX SCOUT SHOP
DUNS Number
?
Primary Company Names

Bsa Sioux Scout Shop
COUNCIL BSA
DUNS Number 114995868
Primary Company Names

Council Bsa
DELAWARE BSA, LLC
DUNS Number 117425394
Primary Company Names

Delaware Bsa, LLC
INTERAMERICAN SCOUT FOUNDATION

Case 20-10343-LSS    Doc 6443    Filed 09/30/21    Page 233 of 413

Arrow WV, Inc.
Atikaki Youth Ventures Inc.
Atikokan Youth Ventures Inc.
BSA Asset Management, LLC
BSA Endowment Master Trust
Learning for Life
National Boy Scouts of America Foundation

LII  > U.S. Code  > Title 18  > PART I  > CHAPTER 9  **> § 156**

# 18 U.S. Code § 156 - Knowing disregard of bankruptcy law or rule

U.S. Code     Notes

    **(a) DEFINITIONS.—**In this section—

        **(1)** the term "bankruptcy petition preparer" means a person, other than the debtor's attorney or an employee of such an attorney, who prepares for compensation a document for filing; and

        **(2)** the term "document for filing" means a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under title 11.

    **(b) OFFENSE.—**
If a bankruptcy case or related proceeding is dismissed because of a knowing attempt by a bankruptcy petition preparer in any manner to disregard the requirements of title 11, United States Code, or the Federal Rules of Bankruptcy Procedure, the bankruptcy petition preparer shall be fined under this title, imprisoned not more than 1 year, or both.

(Added Pub. L. 103–394, title III, § 312(a)(1)(B), Oct. 22, 1994, 108 Stat. 4140; amended Pub. L. 109–8, title XII, § 1220, Apr. 20, 2005, 119 Stat. 195.)

Fill in this information to identify the case and this filing:

Debtor Name  Boy Scouts of America

United States Bankruptcy Court for the:  ___ District of Delaware ___
                                              (State)

Case number (*If known*): _____

## Official Form 202
## Declaration Under Penalty of Perjury for Non-Individual Debtors

12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☐ *Schedule H: Codebtors* (Official Form 206H)

☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐ *Amended Schedule* ___

☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☒ Other document that requires a declaration __List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders; Corporate Ownership Statement; List of Equity Security Holders; List of 25 Law Firms with the Largest Number of Representations of Holders of Abuse Claims__

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  __02/18/2020__
         MM / DD / YYYY

X _____
Signature of individual signing on behalf of debtor

Steven P. McGowan
Printed name

Secretary and General Counsel
Position or relationship to debtor

LII  > U.S. Code  > Title 18  > PART I  > CHAPTER 9  **> § 154**

# 18 U.S. Code § 154 - Adverse interest and conduct of officers

U.S. Code     Notes

A person who, being a custodian, trustee, marshal, or other officer of the court—

**(1)** knowingly purchases, directly or indirectly, any property of the estate of which the person is such an officer in a case under title 11;

**(2)** knowingly refuses to permit a reasonable opportunity for the inspection by parties in interest of the documents and accounts relating to the affairs of estates in the person's charge by parties when directed by the court to do so; or

**(3)** knowingly refuses to permit a reasonable opportunity for the inspection by the United States Trustee of the documents and accounts relating to the affairs of an estate in the person's charge,

shall be fined under this title and shall forfeit the person's office, which shall thereupon become vacant.

(June 25, 1948, ch. 645, 62 Stat. 690; Pub. L. 95–598, title III, § 314(a)(2), (e)(1), (2), Nov. 6, 1978, 92 Stat. 2676, 2677; Pub. L. 103–322, title XXXIII, § 330016(1)(G), Sept. 13, 1994, 108 Stat. 2147; Pub. L. 103–394, title III, § 312(a)(1)(A), Oct. 22, 1994, 108 Stat. 4139; Pub. L. 104–294, title VI, § 601(a)(1), Oct. 11, 1996, 110 Stat. 3497.)



### BOY SCOUTS OF AMERICA
### NATIONAL EXECUTIVE BOARD

## RESOLUTIONS APPROVING CHAPTER 11 FILING AND RELATED MATTERS

### February 17, 2020

**WHEREAS**, the National Executive Board (the "**Board**") of the Boy Scouts of America, a non-profit corporation chartered by an Act of Congress (the "**Corporation**"), consulted with, considered presentations made by, and reviewed and had the opportunity to ask questions about the materials presented by, the senior leadership of the Corporation and the legal and financial advisors to the Corporation regarding the liabilities, liquidity, and prospects of the Corporation, the strategic alternatives available to the Corporation, and the impact of the foregoing on the Corporation's capability to carry out the mission of Scouting;

**WHEREAS**, the Board consulted with the senior leadership of the Corporation and the legal and financial advisors to the Corporation and has fully considered each of the Corporation's strategic alternatives; and

**WHEREAS**, the Board desires to approve the following resolutions.

### Commencement of Chapter 11 Case and Filing of Plan of Reorganization

**NOW, THEREFORE, BE IT RESOLVED**, that, in the judgment of the Board, it is desirable and in the best interests of the Corporation, its creditors, and other stakeholders, and in furtherance of the Corporation's mission, that the Corporation file a petition for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"); and be it further

**RESOLVED**, that each duly appointed officer or duly authorized signatory of the Corporation (each, an "**Authorized Person**" and, collectively, the "**Authorized Persons**") be, and each of them hereby is, authorized and empowered, in the name of the Corporation, to execute and verify a petition for relief under chapter 11 of the Bankruptcy Code and to cause such petition to be filed in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), such petition to be filed at such time as the Authorizing Person executing the petition shall determine and to be in the form approved by the Authorized Person executing such petition, such approval to be conclusively evidenced by the execution, verification, and filing thereof; and be it further

**RESOLVED**, that each of the Authorized Persons be, and hereby is, authorized and empowered, in the name of the Corporation, to execute a chapter 11 plan of reorganization (as such plan may be amended, modified or supplemented from time to time, the "**Plan**"), the form of which has been presented to the Board, which has considered and had the opportunity to ask questions of the senior leadership of the Corporation and the legal and financial advisors to the Corporation regarding the Plan, and to cause the Plan to be filed in the Bankruptcy Court at such time as the Authorizing Person executing the Plan shall determine; and be it further

**RESOLVED**, that each of the Authorized Persons be, and hereby is, authorized, empowered, and directed, in the name of the Corporation, with full power of delegation, to execute, verify, and cause to be filed all petitions, schedules, statements, lists, motions, applications, pleadings, affidavits, declarations, reports, exhibits, and other papers or documents (and any amendments, modifications, and supplements thereto), and to perform such further actions and execute, verify, and cause to be filed such further documentation that such Authorized Person deems necessary, appropriate, or desirable in connection with the Corporation's chapter 11 case (the "**Chapter 11 Case**") and in accordance with these resolutions; and be it further

## Retention of Advisors

**RESOLVED**, that each of the Authorized Persons be, and hereby is, authorized, empowered, and directed to retain and employ, in the name of the Corporation, subject to Bankruptcy Court approval: (i) the law firm of Sidley Austin LLP, as general bankruptcy counsel; (ii) the law firm of Morris, Nichols, Arsht & Tunnell LLP, as Delaware bankruptcy counsel; (iii) the financial advisory firm of Alvarez & Marsal North America, LLC, as financial advisor; (iv) the legal case administration firm of Omni Agent Solutions, as noticing, claims and solicitation agent; and (v) any other legal counsel, accountants, financial advisors, restructuring advisors, investment bankers, public relations professionals, or other professionals any of the Authorized Persons deems necessary, appropriate, or advisable; each to represent and assist the Corporation in carrying out its duties and responsibilities and exercising its rights under the Bankruptcy Code; and in connection therewith, each of the Authorized Persons be, and hereby is, authorized, empowered, and directed, in the name of the Corporation, in accordance with the terms and conditions hereof, to execute appropriate retention agreements, pay appropriate retainers, fees, indemnities, and expenses, and to cause to be filed appropriate applications for authority to retain such services in the Chapter 11 Case; and be it further

## General Authorization and Ratification

**RESOLVED**, that each of the Authorized Persons be, and hereby is, authorized, empowered, and directed to take, or cause to be taken, in the name of the Corporation, any and all further actions (including, without limitation, (i) executing, delivering, certifying, filing and/or recording, and performing any and all documents, agreements, instruments, motions, affidavits, declarations, applications for approvals or rulings of governmental or regulatory authorities, or certificates, and (ii) paying fees and expenses in connection with the transactions contemplated by the foregoing resolutions) and to take any and all steps deemed by any such Authorized Person to be necessary, advisable, or desirable to carry out the purpose and intent of each of the foregoing resolutions, and all actions heretofore taken by any such Authorized Person or the Board in furtherance thereof are hereby ratified, confirmed, and approved in all respects; and it is further

**RESOLVED**, that all acts, actions, and transactions relating to the matters contemplated by the foregoing resolutions done in the name of and on behalf of the Corporation, which acts would have been approved by the foregoing resolutions except that such acts were taken before the adoption of these resolutions, are hereby in all respects approved and ratified as the true acts and deeds of the Corporation, with the same force and effect as if each such acts, actions, and transactions had been specifically authorized in advance by resolution of the Board; and it is further

**RESOLVED,** that the omission from these resolutions of any agreement, document, or other arrangement contemplated by any of the agreements, documents, or instruments described in the foregoing resolutions or any action to be taken in accordance with any requirement of any of the agreements or instruments described in the foregoing resolutions shall in no manner derogate from the authority of the Authorized Persons to take all actions necessary, desirable, advisable, or appropriate to consummate, effectuate, carry out, or further the transactions contemplated by, and the intent and purposes of, the foregoing resolutions; and it is further

**RESOLVED,** that the Board has received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as required by the governance documents of the Corporation, or hereby waives any right to have received such notice.

*[Signature page follows]*

3

**IN WITNESS WHEREOF,** the undersigned, being the duly elected and qualified Secretary of the Corporation, hereby certifies that the foregoing resolutions were duly adopted by the Board of the Corporation as of the date first written above.

**BOY SCOUTS OF AMERICA**

By:    Steven P. McGowan
Title: Secretary

**Fill in this information to identify the case and this filing:**

Debtor Name __Boy Scouts of America__

United States Bankruptcy Court for the: ___District of Delaware___
                                                                    (State)

Case number (*if known*): _____

# Official Form 202
# Declaration Under Penalty of Perjury for Non-Individual Debtors                12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING — Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☐ *Schedule H: Codebtors* (Official Form 206H)

☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐ *Amended Schedule* ____

☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☒ Other document that requires a declaration    __List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders; Corporate Ownership Statement; List of Equity Security Holders; List of 25 Law Firms with the Largest Number of Representations of Holders of Abuse Claims__

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    __02/18/2020__          x _____
                  MM / DD / YYYY             Signature of individual signing on behalf of debtor

                                           Steven P. McGowan
                                           Printed name

                                           Secretary and General Counsel
                                           Position or relationship to debtor

Debtor Names: Boy Scouts of America and Delaware BSA, LLC                         Case number: 20-10343 (LSS)

```
Fill in this information to identify the case:
```

**Debtor Name: Boy Scouts of America and Delaware BSA, LLC** [1]

**United States Bankruptcy Court for the District of Delaware**

**Case number: 20-10343 (LSS)**

## Official Form 426

# Periodic Report Regarding Value, Operations, and Profitability of Entities in Which the Debtor's Estate Holds a Substantial or Controlling Interest

12/17

This is the *Periodic Report* as of April 8, 2022 on the value, operations, and profitability of those entities in which the Boy Scouts of America (the "BSA") and Delaware BSA, LLC (together, the "Debtors") each hold, or both Debtors together hold, a substantial or controlling interest (a "Controlled Non-Debtor Entity"), as required by rule 2015.3 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). For purposes of this form, "Debtor" shall include the estate of such Debtor.

The Debtors hold a substantial or controlling interest in the following Controlled Non-Debtor Entities:

| ID | Name of Controlled Non-Debtor Entity | Interest of the Debtors |
|----|--------------------------------------|-------------------------|
| 3220 | BSA Asset Management, LLC | 100% |
| 4514 | BSA Commingled Endowment Fund, LP [2] | 37.29% |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Boy Scouts of America (6300) and Delaware BSA, LLC (4311).

[2] The BSA's percentage interest in the BSA Commingled Endowment Fund, LP fluctuates daily based on contributions and withdrawals. The current interest percentage listed is as of February 28, 2022.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA,<br><br>          Debtor. | Chapter 11<br><br>Case No. 20-_____ (___)<br><br>(Joint Administration Requested) |

## CORPORATE OWNERSHIP STATEMENT

There are no entities to report under rule 7007.1 of the Federal Rules of Bankruptcy Procedure, as the above-captioned debtor and debtor in possession is a non-profit, non-stock tax exempt organization with no equity ownership.



**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA, | Case No. 20-_____ (___) |
| Debtor. | (Joint Administration Requested) |

<u>**LIST OF EQUITY SECURITY HOLDERS**</u>

There are no entities to report under rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure, as the above-captioned debtor and debtor in possession is a non-profit, non-stock tax exempt organization with no equity ownership.



# Supreme Court of the United States

## APPLICATION FOR ADMISSION TO PRACTICE

(Please do not submit attachments unless instructed to do so)

Fill out form online and print

**Name as you want shown on your Certificate:**

| First Name: | | Last Name: | |
| Middle Name: | | Suffix: | 0 |

Firm Name:

Address:

| City: | | State: | 0 | Zip Code: | |

| Office Phone: | | Alternate Phone: | |

☐ Check this box if you want the alternate Certificate described in the instructions.

Email Address:

1. **City and state you want shown on your Certificate.**   City: _____   State: 0

2. Date of birth: _____   3. Birth City: _____   4. Birth State/Country: _____

5. Residence Address: _____

   City: _____   State: 0   Zip Code: _____

6. Name of parents:   (a) _____
                      (b) _____

7. State court(s) of last resort to which you are admitted to practice, and date(s) of admission.

| State Court | Date of Admission | | State Court | Date of Admission |
|---|---|---|---|---|
| 0 | | | 0 | |
| 0 | | | 0 | |

8. Are you engaged in the practice of the law?  ○ Yes  ○ No  State the nature of your practice, whether by self, in partnership, or associated with or employed by others, giving the name of the firm or employer.

9. List firms or other entities with which you have been formerly associated, or by which you have been employed, as a lawyer.

10. Undergraduate and legal education and when and where degrees received.

| School | Degree | Location | Date Received |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

11. Have you ever changed your name or been known by any name or surname other than those appearing on this application?  ○ Yes  ○ No
    If so, state and give details.

12. (a) Have you ever been disciplined, disbarred, sanctioned, or suspended from practice before any court, department, bureau, or commission of the United States, or of any State, Commonwealth, Territory, Possession, or the District of Columbia, or have you received any public or private  ○ Yes  ○ No reprimands from any such entity pertaining to your conduct as a member of the bar?

    (b) Are there any disciplinary proceedings presently pending against you?  ○ Yes  ○ No

    (c) Have you been denied admission to the bar of this Court or the bar of any entity described in (a) above?  ○ Yes  ○ No

    (d) Have you been convicted of a crime? (other than a minor traffic violation)  ○ Yes  ○ No

    (e) If you answered "yes" to any of the questions in this paragraph you must provide a detailed explanation on a separate sheet and attach any relevant documentation concerning your answer.

**COMPLETE CERTIFICATION ON FOLLOWING PAGE**

## CERTIFICATION

I certify that I have read the foregoing questions and have answered them fully and frankly.  The answers are complete and are true to my own knowledge.

_____                    _____
Date                                                    (Applicant's Signature)

## STATEMENT OF SPONSORS

We, | 0 |                          |                |                 | 0 |         | and
Title                              First Name        Last Name        Middle Initial   Suffix

| 0 |                          |                |                 |           |
Title                              First Name        Last Name        Middle Initial   Suffix

being members of the Bar of the Supreme Court of the United States and not related to the applicant, state that the applicant is personally known to us, that the applicant possesses all the qualifications required for admission to the Bar of the Supreme Court of the United States, and that we have examined the applicant's personal statement and believe it to be correct, and we affirm that the applicant's moral and professional character and standing are good.

_____                    _____
(Signature)                                            (Signature)

Office Address: _____                    Office Address: _____

City: _____                                    City: _____

State: | 0 |    Zip Code: _____                    State: | 0 |    Zip Code: _____

## OATH OF ADMISSION

_____ , do solemnly swear (or affirm) that as an attorney and as a counselor of this Court I will conduct myself uprightly and according to the law, and that I will support the Constitution of the United States.

_____                    _____
Date                                                    (Applicant's Signature)

---

### COMPLETE THE FOLLOWING ONLY IF ADMISSION IS ON WRITTEN MOTION (NOT IN OPEN COURT)

## MOTION FOR ADMISSION

_____ , a member of the Bar of the Supreme  Court of
(Movant's name is to be entered as it appears on movant's Certificate of Admission to this Court)

the United States, hereby move the admission of _____

to the Bar of the Supreme Court of the United States.  I am satisfied the applicant possesses the necessary qualifications.

_____                    _____
Date                                                    (Movant's Signature)

| Print Form |    | Save |

ER-0079-5-07

[Congressional Record (Bound Edition), Volume 159 (2013), Part 6]
[Senate]
[Page 7657]
[From the U.S. Government Publishing Office, www.gpo.gov]

## CONGRATULATING STEVE McGOWAN

Mr. MANCHIN. Mr. President, today I wish to congratulate my friend Steve McGowan for receiving this year's Silver Buffalo Award from the Boy Scouts of America. This is the highest commendation Scouting extends to individuals for their distinguished service to the organization, and I am so proud that the Boy Scouts have honored Steve for his extraordinary efforts on their behalf.

Steve McGowan is a very successful lawyer in Charleston, WV, with the law firm of Steptoe & Johnson. And even though his law practice is demanding, Steve has devoted countless hours to the Boy Scouts of America as a volunteer. This should come as no surprise to anyone who knows Steve. He was, after all, an Eagle Scout long before he ever was a lawyer.

The Boy Scouts of America inaugurated the Silver Buffalo Award in 1926, and in its 87-year history only 732 awards have been presented. This year, Steve is one of 12 Americans chosen to receive the award-- and the first ever from West Virginia to be so honored. And in receiving the Silver Buffalo Award, Steve now holds all three of the Boy Scouts highest commendations for adult Scout leaders and volunteers, having already been awarded the Silver Beaver and Silver Antelope Awards.

Steve's background in Scouting was one of the reasons I reached out to him in 2007 when the Boy Scouts decided to move their National Jamboree from a Virginia military base to a permanent location. As Governor, I assembled a team of government officials and private volunteers to identify the best site in West Virginia and market it to the Boy Scouts. I called the group the West Virginia Project Arrow Task Force, and it was headed by Steve McGowan.

The competition with other States was tough. Proposals were submitted for 82 sites in 28 States. But with Steve as its chief, the West Virginia Project Arrow Task Force hit the bull's eye. The Boy Scouts chose a home in West Virginia--a 10,600-acre site in the New River Gorge, with easy access to whitewater rafting, hiking, bicycling and rock climbing.

And this July, this permanent new home for the National Jamboree, the Summit Bechtel National Family Scout Reserve, will welcome more than 40,000 Boy Scouts and their leaders from all across the country to their 10-day long gathering of Scouts. This is going to be a wonderful experience for the Scouts. But it's also going to be an unprecedented opportunity for the entire world to see West Virginia hospitality at its best.

Steve McGowan helped to make all of this happen. And on Friday, when he accepts his Silver Buffalo Award at the Boy Scouts of America National Annual Meeting in Dallas, I hope he will take a well-deserved bow for all his contributions to Scouting. The Boy Scouts oath begins with a promise to do one's best and to do one's duty to God and country, and that is a promise Steve McGowan has kept every day.

Again, I extend my sincerest congratulations to him on being honored with the Silver Buffalo Award, and I thank him for all he has done for the Boy Scouts of America, for God and country and for the great State of West Virginia.

### **PRAYER**

|___ This Pro-Se Claimant Creditor concludes, (1) that the Bankruptcy Case should be dismissed as to the BSA and DELAWARE BSA LLC. Because the BSA is clearly using the equitable remedy of bankruptcy as a litigation tactic; (2) the BSA is attempting to circumvent statutory requirements for dissolution; and (3) the BSA (and DELAWARE BSA LLC., is not insolvent nor experiencing financial hardship.

|___ In the alternative to dismissal, Pro-Se Claimant Creditor further concludes. That the BSA cannot serve as the debtor-in-possession. Because The BSA is unable to manage the estate, in the best interest of its creditors. In compliance with its fiduciary duties as evidenced by (1) the allegations and evidence against the BSA. In the various underlying cases concerning the BSA, and its executives' mismanagement and (2) BSA management is subjecting all BSA Members and BSA Delaware Chapter 11 Creditors to this costly manipulation tactic of the Federal Bankruptcy System.

WHEREFORE, Pro-Se Claimant Creditor respectfully requests the Court enter an Order, substantially in the form attached hereto as the Dismissal Exhibit, dismissing the Bankruptcy Case based upon a finding of bad faith under 11 U.S.C. § 1112(b), and/or based upon a finding of fraud in violation of 11 U.S.C. § 157; or in the alternative, authorizing the appointment of a chapter 11 trustee. The Court should also grant such other and further relief to which Pro-Se Claimant Creditor may be entitled.

Respectfully Submitted,

Date: ___ 12, 2022

PRO-SE CLAIMANT NUMBERS SA-███ & SA-███