# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>　　　　　Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Re: Docket Nos. 8763 & 8813 |

### STATEMENT REGARDING CLOSING ARGUMENT OF LIBERTY MUTUAL INSURANCE COMPANY IN SUPPORT OF ITS JOINDER AND OBJECTION TO THE THIRD MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC

Consistent with the agreement stated on the record[1] at the April 14, 2022 hearing, Liberty Mutual Insurance Company, together with its affiliates and subsidiaries (collectively, "Liberty"), by and through its undersigned counsel, hereby submits this statement in support of Liberty's joinder and objection (the "Liberty Objection") [Docket No. 8763] to the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 8813] (the "Plan"),[2] as supplemented, filed by the Boy Scouts of America ("BSA") and Delaware BSA, LLC (together with BSA, the "Debtors").

### STATEMENT

1. Over the past several weeks, Liberty has worked constructively to resolve its confirmation objections with representatives of the Debtors, the Tort Claimants' Committee

---

[1] On Tuesday, April 12, 2022, Liberty and the Plan Proponents agreed that, to the extent they could not resolve each of Liberty's independent confirmation objections, Liberty and the Plan Proponents (collectively) each would file a brief summary of the closing arguments that they would have delivered at the confirmation hearing on whatever issues remain outstanding. The parties agreed that each filing would be no more than ten (10) pages and would be filed on or before 4:00 p.m. (ET) on April 18, 2022. By agreement of the Court, that deadline was extended to April 21, 2022 at 4:00 p.m. (ET).

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan.

("TCC"), the Future Claimants' Representative ("FCR"), and the Coalition of Abused Scouts for Justice (the "Coalition" and, together with the Debtors, TCC, and FCR, the "Plan Proponents"). Liberty is pleased to report that those efforts have been productive, with two of Liberty's three independent confirmation objections now being resolved.[3] The Plan Proponents have agreed to revise the TDPs to clarify that: (i) the issue of whether Liberty has an obligation to advance amounts within the deductible under its fronting policies (where the deductible matches the limit of liability) will be a matter decided in subsequent coverage litigation; and (ii) Liberty's right to exercise setoff and recoupment against the Settlement Trust is preserved to the same extent it existed prepetition against BSA and any Protected Party, including the Local Councils (against whom Liberty has independent, contractual rights of reimbursement for deductible advances).

2.  Liberty continues to work in good faith with the Plan Proponents to resolve its remaining independent confirmation objection to the treatment of Class 9 Indirect Abuse Claims. As recently as April 20, 2022, the Plan Proponents, Liberty, and Allianz exchanged drafts of proposed revisions to the TDPs that address objections to the allowance of Class 9 Indirect Abuse Claims. In the afternoon of April 20, Allianz, on behalf of itself and Liberty, circulated a draft proposal to the Plan Proponents (attached hereto as **Exhibit A**), who then provided a counterproposal (attached hereto as **Exhibit B**) to Liberty that same evening. The Plan Proponents

---

[3] As set forth in the Liberty Objection, Liberty was a signatory to the *Certain Insurers' Objection to Confirmation of Debtors' Chapter 11 Plan* [Docket No. 8695] (the "Original Insurer Objection") and joined, in part, the *Allianz Insurers' Objection to the Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC and Request for Relief from the Plan Discharge and Injunction Provisions* [Docket No. 8696] (the "Allianz Objection"). Liberty also was a signatory to the *Certain Insurers' Supplemental Objection to Confirmation of Debtors' Chapter 11 Plan* [Docket No. 9033] (the "Supplemental Insurer Objection" and, together with the Liberty Objection, Original Insurer Objection, and the Allianz Objection, the "Insurer Objections"). This closing argument highlights only those issues raised in the Insurer Objections that specifically impact Liberty and remain unresolved. To the extent not otherwise raised herein, Liberty expressly reserves all other arguments that it asserted or joined in through the Insurer Objections.

requested that Liberty cite to the relevant portions of the draft that they circulated the evening of April 20. For the convenience of the Court, a copy of the draft that the Plan Proponents circulated and requested that Liberty cite—marked against the April 20 draft circulated earlier that day by Allianz on behalf of itself and Liberty—is attached hereto as **Exhibit C**.

3. Despite the parties' good faith efforts, there still exist fundamental disagreements on the allowance process for Class 9 Claims. As Mr. Winsberg noted in his presentation on behalf of Allianz, the TDPs—which are the result of a settlement among the Plan Proponents to which no Class 9 Claimant was a party—prejudice Class 9 Indirect Abuse Claimants.[4] The TDPs are a settlement among the Coalition, TCC, and FCR regarding how to allocate among holders of Direct Abuse Claims and Future Abuse Claims those assets that are being transferred to the Settlement Trust. As Certain Insurers noted in the Original Insurer Objection, Bankruptcy Rule 9019 is merely a procedural mechanism that cannot alter the substantive rights of non-consenting parties. Pursuant to 28 U.S.C. § 2075, which implements the Bankruptcy Rules, no Bankruptcy Rule can "abridge, enlarge, or modify any substantive right."[5] That prohibition extends to any abridgment of a creditor's rights under Section 502.[6]

4. Even if there were a way to bind Class 9 Claimants to the terms of the settlement

---

[4] Liberty filed a secured, contingent, and unliquidated proof of claim.

[5] *Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 351 n.4 (3d Cir. 1999). Courts have held that a settlement is not "fair and equitable under Rule 9019 when those parties whose rights were severely adversely impacted were not afforded meaningful participation in the negotiations." *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 836-37 (Bankr. D. Del. 2008); *see id.* at 838 ("I have a duty to ensure ['creditors who were not afforded meaningful participation in the negotiation'] are not injured to the benefit of other creditors.").

[6] "Nowhere within the Rules and Official forms, however, does it state that a claim should be disallowed in its entirety solely because a creditor has not attached the writing evidencing its claim. Quite to the contrary, the Rules cannot 'abridge, enlarge, or modify any substantive right.' 28 U.S.C. § 2075. Instead, the Bankruptcy Code, in particular, § 502(b), sets out the exclusive exceptions for disallowance of a claim. These exceptions do not include disallowance based on a lack of documentation." *In re Moreno*, 341 B.R. 813, 817 (Bankr. S.D. Fla. 2006).

that is embodied in the TDPs, the proposed allowance procedures for Class 9 Claimants contained therein violate Section 502 of the Bankruptcy Code and Bankruptcy Rule 3001(f), meaning the Plan fails to comply with Section 1129(a)(1) of the Bankruptcy Code. A claim that is properly filed is deemed allowed unless and until a party in interest objects.[7] Furthermore, Bankruptcy Rule 3001(f) provides that "a proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim." Where a party properly files a proof of claim, that claim is presumptively valid, and "the burden is on the objectant to overcome the presumption."[8]

5. The TDPs turn this concept on its head. Rather than having a presumptively valid Claim, the TDPs require that any Indirect Abuse Claimant affirmatively prove its validity.[9] Among other things, a party seeking to assert a Class 9 Indirect Abuse Claim:

> must have an Indirect Abuse Claim that is not subject to (a) disallowance under section 502 of the Bankruptcy Code, including subsection (e) thereof, (subject to the right of the holder of the Indirect Abuse Claim to seek reconsideration by the Settlement Trustee under section 502(j) of the Bankruptcy Code), or is not otherwise legally invalid, or (b) subordination under sections 509(c) or 510 of the Bankruptcy Code, or otherwise under applicable law;[10]

Under the TDPs, the Indirect Abuse Claimant therefore must prove—in order to have an allowed Class 9 Indirect Abuse Claim—that its claim is not "subject to (a) disallowance under section 502

---

[7] 11 U.S.C. § 502(a); *see Scott v. Aegis Mortg. Corp. (In re Aegis Mortg. Corp.)*, Case No. 07-11119 (BLS), 2008 Bankr. LEXIS 1519, at *17-18 (Bankr. D. Del. May 22, 2008) ("A proof of claim is deemed allowed unless a party in interest objects in a timely fashion. 11 U.S.C. § 502(a). Pursuant to 11 U.S.C. § 502(b), if a party makes such an objection, the court must determine the allowed amount of the contested claim after notice and a hearing. 11 U.S.C. § 502(b)."). "One of the core fundamentals in bankruptcy is a creditor's right to file a proof of claim, which is presumed to be *prima facie* valid until an objection is filed. It is an efficient process that gives all sides an opportunity to assert their position." *Pariseau v. Asset Acceptance, LLC (In re Pariseau)*, 395 B.R. 492, 495 (Bankr. M.D. Fla. 2008).

[8] *Shearer v. Calderon Joint Venture (In re Shearer)*, 542 B.R. 718, 720 (Bankr. M.D. Pa. 2015).

[9] TDPs, Art. IV.B.

[10] *Id*. at Art. IV.B.2 (as revised).

. . . otherwise legally invalid, or (b) subordination[.]" This shifting of the burden from the Settlement Trust to the Claimant simply is not authorized by the Bankruptcy Code.

6. Other allowance provisions violate the Bankruptcy Code's requirement that a claim be deemed presumptively valid unless and until a party objects to such claim. For example, the Indirect Abuse Claimant must prove that "the Indirect Abuse Claim is not otherwise subject to a valid defense[.]"[11] An Indirect Abuse Claimant should not be required to "establish to the satisfaction of the Settlement Trustee" that there is no "valid defense" to its Indirect Abuse Claim. That is the role of the Settlement Trustee, who should retain whatever rights she has under the Bankruptcy Code to object to a presumptively valid Indirect Abuse Claim. Similarly, the TDPs' prohibition on "any Indirect Abuse Claimant hav[ing] any rights against the Settlement Trust superior to the rights that the Direct Abuse Claimant to whose claim the Indirect Abuse Claim relates[ ] would have against the Settlement Trust"[12] seeks to predetermine what rights a Non-Settling Insurance Company asserting an Indirect Abuse Claim may have. There is no basis for the TDPs to extinguish any contractual, legal, or equitable rights that such insurer may have against the Settlement Trust simply because the corresponding Direct Abuse Claimant lacks such rights.

7. Compounding these problems, a party asserting an Indirect Abuse Claim "must establish to the satisfaction of the Settlement Trustee" that each and every element of Article IV.B.3 of the TDPs is satisfied. As Dr. Jack Williams testified, there is a "mismatch of fiduciary duties"[13] that requires the Settlement Trustee to oversee the allowance of *all* Abuse Claims but remain beholden to the STAC members who are focused on payment of their clients' Direct Abuse

---

[11] *Id.* at Art. IV.B.3.c (as revised).

[12] *Id.* at Art. IV.B (as revised).

[13] *See* Mar. 30, 2022 Hr'g Tr., at 66:1-67:18.

5

Claims, notwithstanding that the STAC is required to "serve in a fiduciary capacity representing current holders of Abuse Claims" (*i.e.*, both Direct and Indirect Abuse Claims).[14]  But the composition of the STAC proves that there is an irreconcilable difference between treatment of the Class 8 Direct Abuse Claimants—who are the clients of the STAC members—and Class 9 Indirect Abuse Claimants—whose claims will justifiably deplete the corpus of the Settlement Trust.  Not only will distributions to Class 8 Direct Abuse Claimants be reduced through the *pari passu* distributions on Class 9 Indirect Abuse Claims, but so, too, will the contingency fees collected by members of the STAC in their capacity as counsel to the Class 8 members.

8. Furthermore, the many requirements under the TDPs that must be satisfied before a Class 9 Claim will even be allowed (let alone paid) do not apply to Direct Abuse Claims or Future Abuse Claims.[15]  Such Claimants need do little more than complete a questionnaire to be developed by the STAC and submit documents in their possession (if any) to the Settlement Trustee.  The TDPs then require all Direct Abuse Claims to be allowed even if they cannot meet the requirements of section 502 of the Bankruptcy Code for any number of reasons, including if the claim is barred by the applicable statute of limitations or the claimant cannot show that any Protected Party was at least negligent for the injuries suffered by such claimant.  That is telling, given that representatives of such Claims both (i) were the primary parties negotiating the TDPs and (ii) will populate the STAC that controls the actions of the Settlement Trustee (including the claims allowance process for Class 9).

---

[14] Settlement Trust Agreement, § 6.2.

[15] For example, an insurer, under applicable non-bankruptcy law, may be entitled to seek reimbursement from its insured for defense costs incurred in defending noncovered claims.  The Plan Proponents' Class 9 language appears to require an insurer pay "the Claim holder's total share of the liability" as a condition to any recovery of defense costs even if the claims are noncovered, thereby modifying an insurer's rights.

9. Discussion over treatment of Class 9 Indirect Abuse Claims under the TDPs continues. Liberty remains committed to working with the Plan Proponents to reach resolution on this issue as it has been able to do with its other confirmation objections. To the extent the parties are unable to reach a mutual resolution, Liberty rests on the arguments raised herein and in the Insurer Objections, and it joins in the arguments made by Mr. Winsberg on behalf of Allianz.

| | |
|---|---|
| Dated: April 21, 2022<br>Wilmington, Delaware | SEITZ, VAN OGTROP & GREEN, P.A.<br><br>/s/ R. Karl Hill<br>R. Karl Hill (Del. Bar No. 2747)<br>222 Delaware Avenue<br>Suite 1500<br>Wilmington, Delaware 19801<br>Telephone: (302) 888-0600<br>Email: khill@svglaw.com<br><br>-and-<br><br>Douglas R. Gooding (admitted *pro hac vice*)<br>Jonathan D. Marshall (admitted *pro hac vice*)<br>Samuel N. Rudman (admitted *pro hac vice*)<br>CHOATE HALL & STEWART, LLP<br>Two International Place<br>Boston, MA 02110<br>Telephone: (617) 248-5000<br>dgooding@choate.com<br>jmarshall@choate.com<br>srudman@choate.com<br><br>-and-<br><br>Kim V. Marrkand (admitted *pro hac vice*)<br>Laura Bange Stephens (admitted *pro hac vice*)<br>MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC<br>One Financial Center<br>Boston, MA 0211<br>Telephone: (617) 542-6000<br>KVMarrkand@mintz.com<br>LBStephens@mintz.com<br><br>*Counsel to Liberty Mutual Insurance Company* |

# Exhibit A

**April 20, 2022 Proposal by Allianz and Liberty**

**Exhibit B**

**April 20, 2022 Counterproposal by Plan Proponents**

# Exhibit C

**Comparison of Proposal by Allianz and Liberty
Marked Against Counterproposal by Plan Proponents**

**ALL EDITS IN BLUE AND RED ARE COMMENTS MADE BY PLAN PROPONENTS**