

PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES
LIMITED LIABILITY PARTNERSHIP

WILMINGTON, DE
LOS ANGELES, CA
SAN FRANCISCO, CA
NEW YORK, NY
HOUSTON, TX

919 NORTH MARKET STREET
17th FLOOR
P.O. BOX 8705
WILMINGTON
DELAWARE 19899-8705

**TELEPHONE: 302.652.4100**
FACSIMILE: 302.652.4400

**LOS ANGELES**
10100 SANTA MONICA BLVD.
13th FLOOR
LOS ANGELES
CALIFORNIA 90067-4003

**TELEPHONE: 310.277.6910**
FACSIMILE: 310.201.0760

**SAN FRANCISCO**
ONE MARKET PLAZA, SPEAR TOWER
40th FLOOR, SUITE 4000
SAN FRANCISCO
CALIFORNIA 94105-1020

**TELEPHONE: 415.263.7000**
FACSIMILE: 415.263.7010

**NEW YORK**
780 THIRD AVENUE
34th FLOOR
NEW YORK
NEW YORK 10017-2024

**TELEPHONE: 212.561.7700**
FACSIMILE: 212.561.7777

**TEXAS**
440 LOUISIANA STREET
SUITE 900
HOUSTON
TEXAS 77002-1062

**TELEPHONE: 713.691.9385**
FACSIMILE: 713.691.9407

WEB: www.pszjlaw.com

James E. O'Neill

April 21, 2022

302.778.6407
joneill@pszjlaw.com

**Via Email and ECF**

Honorable Laurie Selber Silverstein
Chief Judge
United States Bankruptcy Court
824 North Market Street, 6th Floor
Wilmington, DE 19801

Re:  Boy Scouts of America and Delaware BSA, LLC Case No. 20-10343 (LSS)

Dear Judge Silverstein,

At the Debtors' confirmation hearing, your Honor permitted the Survivor Group (consisting of the Tort Claimants' Committee, Future Claimants' Representative, the Coalition and Pfau/Zalkin), the Debtors, and Liberty Mutual Insurance Company ("Liberty") (the Survivor Group, the Debtors, and Liberty collectively, the "Parties") to attempt to resolve Liberty's Objection [D.I. 8698] ("Objection") after the hearing concluded or to file a post-confirmation letter of up to 10 pages regarding their positions.  While the Parties have successfully resolved nearly all of Liberty's concerns, they have been unable to resolve one issue—the appropriateness of the TDPs' treatment of Indirect Abuse Claims.  The purpose of this letter is to address that issue.

As you may recall, Liberty differs in certain fundamental ways from the other Certain Insurers because of the unusual nature of its insurance policies, which are characterized as "fronting policies" with matching liability limits and deductibles.  Liberty asserted in its objection that the Plan's Insurance Assignment prejudices Liberty's rights under its policies by purportedly (i) requiring Liberty to front deductible amounts, "only to receive a Class 9 Indirect Abuse Claim that will be paid in an 'unknown' amount while purportedly cutting

DOCS_DE:239028.1 85353/002



PACHULSKI

STANG

ZIEHL

JONES

LAW OFFICES

Honorable Laurie Selber Silverstein
April 21, 2022
Page 2

off Liberty's setoff and recoupment rights," and (ii) cutting off Liberty's alleged "right" to look to non-debtor Local Councils to guarantee reimbursement. Objection ¶¶ 2-3. According to Liberty, this would violate the "rule" that the Insurance Assignment must be made *cum onere*—which, in Liberty's view, means that the Settlement Trust must assume both the benefits and the burdens of the relevant Insurance Policies. *Id.* ¶ 3.

At the outset, it bears emphasis that the *cum onere* principle has no relevance here. Both concepts—*cum onere* assumption and "benefits and burdens"—are found in case law applying section 365(a) of the Bankruptcy Code to the assumption of an executory contract.[1] The insurers, of course, have never asserted that their policies are executory contracts subject to section 365(a) of the Bankruptcy Code. The Debtors and the Local Councils are purporting to transfer certain rights under their policies consistent with section 1123(a) of the Bankruptcy Code and the Third Circuit's decision in *In re Federal-Mogul Global Inc.*, 684 F.3d 355, 374 (3d Cir. 2012). The Debtors and the Local Councils are not purporting to assume their contracts.[2]

---

[1] *See, e.g., N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) (stating debtor must assume executory contract "*cum onere*."); *Cinicola v. Scharffenberger*, 248 F.3d 110, 119 (3d Cir. 2001) ("If the trustee meets the assumption requirements under § 365, it must assume the executory contract entirely."); *City of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1226 (6th Cir. 1995) ("When the debtor assumes the lease or the contract under § 365, it must assume both the benefits and the burdens of the contract."); *Richmond Leasing Co. v. Capital Bank., N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) ("[T]he often-repeated statement that the debtor must accept the contract as a whole means only that the debtor cannot choose to accept the benefits of the contract and reject its burdens to the detriment of the other party to the agreement."); *In re GP Express Airlines, Inc.*, 200 B.R. 222, 227 (Bankr. D. Neb. 1996) ("A debtor must assume an executory contract *cum onere* ...."); *In re Village Rathskeller, Inc.*, 147 B.R. 665, 671 (Bankr. S.D.N.Y. 1992) ("[W]hen the executory contract or lease is assumed, it is said to be assumed cum *onere*.").

[2] In fact, the assignment of insurance policy rights to the Settlement Trust does not include the insurance policies themselves, except in the case of Settling Insurers. *See* Plan at Article I.A, ¶ 157 (BSA defining the assignment of insurance right to the Settlement Trust as "excluding the policies themselves"); *Id.* at ¶ 181 (definition of "Local Council Settlement Contribution" includes (i) the BSA Insurance Policies, the Insurance Settlement Agreements, and claims thereunder and proceeds thereof (but not the policies themselves)." The insurers failed to offer any statutory or legal explanation as to why or how their *cum onere* argument works in this context.



PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES

Honorable Laurie Selber Silverstein
April 21, 2022
Page 3

Putting this issue aside, the Parties have engaged in successful mediation sessions and have agreed upon language in the Plan Documents clarifying that key "Liberty-specific" issues—the complex advancement, set-off, and recoupment issues relating to the matching deductible provisions of the Liberty policies—should be deferred to future coverage litigation between Liberty and the Settlement Trust, with all rights and defenses under applicable law reserved on both sides.

That deferral, however, does not extinguish the possibility that Liberty may ultimately be determined to be the holder of a Class 9 Indirect Abuse Claim. Liberty therefore remains subject to resolution of the more general outstanding issues relating to the treatment of Indirect Abuse Claims under Article IV.B of the TDPs raised both by Liberty and the Certain Insurers, in whose objection Liberty has joined. Our understanding is that this issue is the sole remaining dispute between Liberty and the Debtors and Survivor Group.
The treatment of Indirect Abuse Claims was a hotly contested issue when the Restructuring Support Agreement was negotiated back in June of 2021. The Survivor Group's position was that no Indirect Abuse Claims should be channeled to the Settlement Trust and that, under no circumstances, should the holders of Indirect Abuse Claims compete with Survivors for the recovery of limited trust assets.

The Survivor Group ultimately agreed to support a Plan structure under which Indirect Abuse Claims would be channeled to the Settlement Trust, but subject to the carefully negotiated provisions in Article IV.B of the TDPs. This was a material issue. And it should be noted that both holders of Direct Abuse Claims and Indirect Abuse Claims voted in substantial margins to accept a Plan that includes these provisions.

Liberty is a member of a class that accepted the Plan and is opposed to the treatment afforded to Indirect Abuse Claims under the Plan. Liberty, therefore, is not entitled to the protections afforded by section 1129(b) of the Bankruptcy Code to members of an impaired rejecting class. Nor has Liberty argued that the Plan does not provide for the "same treatment" for each Class 9 Indirect Abuse Claim under section 1123(a)(4) of the Bankruptcy Code. As to Indirect Abuse Claims against non-debtors, the Debtors already offered abundant evidence as to the appropriateness of channeling claims and granting nonconsensual third-party releases under Third Circuit precedent. It



PACHULSKI
STANG
ZIEHL
JONES

L A W   O F F I C E S

Honorable Laurie Selber Silverstein
April 21, 2022
Page 4

is unclear to the Survivor Group what confirmation issues are currently in dispute.

The sole focus of Liberty at present appears to be Article IV.B of the TDPs (attached hereto as Exhibit 1, with the Debtors' and Survivor Group's proposed revisions to the prior filed version [D.I. 8813] in red). As to Article IV.B's use of the term "applicable law," the Court heard argument at the Confirmation Hearing. Pre-judging what law is applicable is unnecessary and inappropriate, and the requests made by the insurers at the hearing to refer to "applicable non-bankruptcy law" were transparent attempts to gain an advantage in coverage litigation.

Still, as to other issues, the Survivor Group and the Debtors have agreed to modify Article IV.B of the TDPs and propose to do so now with care to address only bona fide objections (in that Survivors have voted to support a Plan that includes the current provisions). Thus, the Survivor Group and the Debtors propose to make the following changes to the Indirect Abuse Claims provisions of the TDPs to address concerns raised by Liberty and the other Certain Insurers.

**First**, the Survivor Group changed the language regarding the application of the Bar Date Order to Indirect Abuse Claims in Article IV.B.(1). The Survivor Group believes that the existing language was clear in that it could only apply to Indirect Abuse Claims which are subject to the requirement of the Bar Date Order. Nonetheless, to eliminate any potential ambiguity, the Survivor Group added the phrase "to the extent applicable" to the end of Article IV.B.(1). Thus, if an Indirect Abuse Claim is not subject to the requirements of the Bar Date Order, Article IV.B.(1) is not applicable to whether the holder of such claim is entitled to receive compensation from the Settlement Trust.

**Second**, the Survivor Group changed the language in Article IV.B.(2) to clarify that the disallowance provisions in section 502(e) and the subordination provisions in sections 509(c) and 510 of the Bankruptcy Code only apply to Indirect Abuse Claims that are subject to these provisions. Again, the Survivor Group believes that the existing language was already clear on this point. As to Indirect Abuse Claims that



are not subject to specific provisions in the Bankruptcy Code (*i.e.*, because they are against non-debtors), the Survivor Group added clarifying language as to the fact that such Indirect Abuse Claims may be subject to disallowance because the claims are "otherwise legally invalid" or subordination "under applicable law"—concepts which are equally applicable to claims against a debtor and a non-debtor. The language, as revised, is fully consistent with the Bankruptcy Code and applicable law on these issues.

The Survivor Groups submit that that the insurers may have an ulterior motive to water down Article IV.B.(2) by removing all references to "subordination" and/or section 509(c) of the Bankruptcy Code. During the confirmation hearing, the insurers argued for the first time that section 509(c) of the Bankruptcy Code can only apply in situations involving co-defendants (or joint tortfeasors) and therefore, could never apply to their claims. This is inaccurate.

As the holding in *In re Dow Corning Corp.*, 244 B.R. 705, 714-15 (Bankr. E.D. Mich. 1999) shows, section 509(c) applies outside the context of joint tortfeasors and the phrase "liable with" can include entities that are otherwise legally obligated to pay (or reimburse) when a tortfeasor has caused personal injury. The insurers appear to be asking the Court to pre-judge this issue as well without the benefit of any briefing. This is particularly inappropriate given that the subordination language in Article IV.B.(2) has been in place since July of 2021 and was not challenged by the insurers at any point until now.

**<u>Third</u>**, the Survivor Group changed the language in Article IV.B.(3)(a) to make it possible for the holder of an Indirect Abuse Claim to assert such claim upon the payment of its obligation in full (as opposed to the full liability and/or obligation of the Settlement Trust). The TDP language on this issue was ambiguous and has now been clarified so that the holder of an Indirect Abuse Claims can assert such claim without paying the full liability of the Settlement Trust. Under the revised language, the holder of an Indirect Abuse Claim need only pay its "total share" of the liability of the Settlement Trust to the Direct Abuse Claimant and not the entire obligation owed by the Settlement Trust to the Direct Abuse Claimant.



PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES

Honorable Laurie Selber Silverstein
April 21, 2022
Page 6

**Fourth**, the Survivor Group modified the language in Article IV.B.(3)(c) so that it includes all defenses, and not just a statute of limitation defense. And, given this change, the Survivor Group was able to and has eliminated Article IV.B.(3)(d) since Article IV.B.(3)(c) preserves the defense of recoupment. The Survivor Group notes that it is ironic that the insurers object to the application of a statute of limitation defense to their claims given their position before the Court that any Direct Abuse Claim that is subject to a statute of limitations defense must be disallowed (even if the Survivor could plead around such defense in the tort system and obtain a substantial recover). Indeed, some of the BSA's largest settlements involved facially time barred claims where courts disagreed with the BSA's position that the statute of limitation applied. The Survivor Group believes that it is clearly appropriate for the Settlement Trustee to take possible defenses into account when determining Indirect Abuse Claims and that the insurers' position to the contrary is nonsensical.

**Finally**, although the Survivor Group has trouble seeing how defense costs would ever be payable by a Protected Party (as suggested by the insurers for the first time during argument at the Confirmation Hearing), to avoid prejudging that issue, the last paragraph in Article IV.B has been modified to clarify that the holder of an Indirect Abuse Claim may assert an Indirect Abuse Claim for defense costs solely to the extent permitted under applicable law.

Liberty's remaining objections to this revised TDP provision should be overruled. The holders of Class 9 Indirect Abuse Claims and Class 8 Direct Abuse Claims have agreed to a structure that limits the ability of Class 9 holders to compete directly with Class 8 holders in accordance with all applicable law, including both bankruptcy law and non-bankruptcy law. For these reasons, the Survivor Group does not believe that a more extensive re-writing of the TDPs to address the concerns as to Indirect Abuse Claims is necessary. Again, it was with great reluctance that Indirect Abuse Claims are even channeled to the Settlement Trust. The fragile Plan structure providing for the resolution of Abuse Claims cannot tolerate the insurers' ongoing attempts to obtain favorable coverage determinations from this Court,



Honorable Laurie Selber Silverstein
April 21, 2022
Page 7

or to elevate their claims in a manner inconsistent with the Bankruptcy Code, to the Survivors' detriment.

Respectfully submitted,

*/s/ James E. O'Neill*
James E. O'Neill (DE Bar No. 4042)
Pachulski Stang Ziehl & Jones LLP
*Counsel to Tort Claimants' Committee*

*/s/ Robert S. Brady*
Robert S. Brady, Esq.
Young Conaway Stargatt & Taylor LLP
*Counsel to the Future Claimants'*
*Representative*

*/s/ Eric Goodman*
Eric Goodman
Brown Rudnick LLP
*Counsel to the Coalition of Abused Scouts for*
*Justice*

*/s/ Emily P. Grim*
Emily P. Grim
Gilbert LLP
*Counsel to the Future Claimants'*
*Representative*

*/s/ Thomas Patterson*
Thomas Patterson
KTBS Law
*Counsel to Pfau Cochran Vertetis Amala*
*PLLC and Zalkin Law Firm, P.C.*