# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>     Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

### SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER CONFIRMING THE THIRD MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION (WITH TECHNICAL MODIFICATIONS) FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC

Boy Scouts of America (the "BSA") and Delaware BSA, LLC ("Delaware BSA"), the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"),[2] having:

 a. filed the *Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 20], dated February 18, 2020 (the "Petition Date"), which the Debtors revised on March 1, 2021 [D.I. 2293], on April 13, 2021 [D.I. 2592], on June 18, 2021 [D.I. 5368], on July 2, 2021 [D.I. 5484], on September 15, 2021 [D.I. 6212], on September 27, 2021 [D.I. 6377], on September 29, 2021 [D.I. 6416, 6429], and on September 30, 2021 [D.I. 6443] (as so revised and supplemented, the "Solicitation Plan" and, as revised pursuant to the Second Modified Fifth Amended Plan, the Third Modified Fifth Amended Plan (each as defined herein), the *Notice of Errata Regarding Certain Provisions in the Debtors' Third Modified Fifth Amended Chapter 11 Plan of Reorganization* [D.I. 8910], filed on February 18, 2022, the technical modifications to and resolutions in the Third Modified Fifth Amended Plan [D.I. 9696], filed on April 22, 2022, the Plan Addendum [D.I. 10188, Ex. B], the further technical modifications to and resolutions in the Third Modified Fifth Amended Plan [D.I. [10262]], filed on August 29, 2022, and the further technical modifications to and resolutions in the Third Modified Fifth Amended Plan [D.I. 10296], filed on September 6, 2022, and as may be further

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan, Disclosure Statement, or the Disclosure Statement Order (each as defined herein), as applicable. The rules of interpretation set forth in Article I.B of the Plan shall apply to this Order. A copy of the Plan is attached hereto as **Exhibit A** and incorporated herein by reference.

amended, supplemented, or modified in accordance with the terms thereof, and together with the Plan Supplement and all Plan Documents, the "Plan");

b.    filed the *Disclosure Statement for the Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 21], dated as of the Petition Date, which the Debtors revised on March 1, 2021 [D.I. 2294], on April 14, 2021 [D.I. 2594], on June 18, 2021 [D.I. 5371], on July 2, 2021 [D.I. 5485], on September 15, 2021 [D.I. 6213], on September 28, 2021 [D.I. 6383], on September 29, 2021 [D.I. 6419, 6431], and on September 30, 2021 [D.I. 6445], and supplemented on October 8, 2021 by the *Typographical Correction for the Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 6547] (as so revised, the "Disclosure Statement"), and further supplemented on February 18, 2022 by the *Notice of Supplemental Voting Deadline of March 7, 2022 at 4:00 p.m. (Eastern Time) for Holders of Class 8 Direct Abuse Claims and Limited Disclosure Regarding Changes in Debtors' Chapter 11 Plan of Reorganization* [D.I. 8905] and the *Supplemental Disclosure Regarding Plan Modifications and Summary of Chartered Organizations' Options Under the Debtors' Modified Chapter 11 Plan of Reorganization, Opt-Out Election Procedures for Participating Chartered Organizations, and Supplemental Voting Deadline of March 7, 2022 at 4:00 p.m. (Eastern Time) for Holders of Class 9 Indirect Abuse Claims* [D.I. 8904], as approved by the Court's order approving the same [D.I. 8894];

The United States Bankruptcy Court for the District of Delaware (the "Court") having:

a.    entered the *Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation and Voting Procedures, (III) Approving Forms of Ballots, (IV) Approving the Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief* [D.I. 6438], dated September 30, 2021 (the "Disclosure Statement Order"), and the *Order Approving Form and Manner of Notice of Supplemental Disclosure Regarding Plan Modifications* [D.I. 8894], dated February 18, 2022;

b.    approved, pursuant to the Disclosure Statement Order, among other things, (i) the Disclosure Statement, and (ii) the transmission to holders of Claims against the Debtors' Estates of the Solicitation Plan, the Disclosure Statement, the Solicitation Procedures, and related notices, forms, and Ballots in compliance with chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"); and

c.    set, pursuant to the *Revised Order (I) Amending and Scheduling Certain Supplemental Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization and (II) Approving a Limited Supplemental Voting Deadline for Class 8 Direct Abuse Claims and Class 9 Indirect Abuse*

*Claims* [D.I. 9150], March 14, 2022 at 10:00 a.m. (prevailing Eastern Time) as the date and time for the commencement of the hearing to consider Confirmation of the Plan (the "Confirmation Hearing");

The Debtors having:

a.      timely and properly solicited the Plan and Disclosure Statement and provided due notice of the Confirmation Hearing, all in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order, as evidenced by, among other things, the *Affidavit of Service* [D.I. 7999] filed on December 28, 2021, the *Affidavit of Supplemental Service* [D.I. 8378] filed on January 19, 2022, and the *Affidavit of Service* [D.I. 9074] filed on March 1, 2022 (together, the "Solicitation Affidavits");

b.      timely and properly filed and served, on November 30, 2021 [D.I. 7515], on December 23, 2021 [D.I. 7953], on January 29, 2022 [D.I. 8567], on February 3, 2022 [D.I. 8647], on February 15, 2022 [D.I. 8815, 8816, 8817], and on March 2, 2022 [D.I. 9097], notices of filing of Plan Supplement and additional Plan Documents (such Plan Supplement and Plan Documents, collectively, as may be amended or supplemented from time to time, the "Plan Supplement");

c.      filed, (i) on December 17, 2021, the *Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 7832] (the "Second Modified Fifth Amended Plan"), (ii) on February 15, 2022, the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 8813], (iii) on April 22, 2022 and on August 29, 2022, the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC* [D.I. 9696, 10262, 10296] (the "Third Modified Fifth Amended Plan");

d.      caused notice of the Confirmation Hearing to be published as evidenced by the proofs of publication filed on December 14, 2021 [D.I. 7761] (the "Publication Declaration"), and the *Declaration of Shannon R. Wheatman, Ph.D Regarding Implementation of Publication Notice Plan to Provide Supplemental Notice of the Voting Deadline* [D.I. 8056], filed on December 30, 2021 (the "Supplemental Confirmation Hearing Notice Plan" and together with the Publication Declaration, the "Confirmation Publication Declarations");

e.      submitted, on January 17, 2022, the *Final Declaration of Catherine Nownes-Whitaker of Omni Agent Solutions Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 8345], and the *Notice of Solicitation Changes in Connection with Declaration of Catherine Nownes-Whitaker of Omni Agent Solutions Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 8346], as supplemented by the *Notice of Solicitation Changes in Connection with*

3

*Declaration of Catherine Nownes-Whitaker of Omni Agent Solutions Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 8346], the *Supplemental Declaration of Catherine Nownes-Whitaker of Omni Agent Solutions Regarding the Submission of Votes and Final Tabulation of Ballots Cast in Connection with the Limited Extended Voting Deadline for Holders of Claims in Class 8 and Class 9 on the Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 9275], and the *Notice of Filing of Solicitation Changes in Connection with Supplemental Declaration of Catherine Nownes-Whitaker of Omni Agent Solutions Regarding the Submission of Votes and Final Tabulation of Ballots Cast in Connection with the Limited Extended Voting Deadline for Holders of Claims in Class 8 and Class 9 on the Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 9276], (together, as may be further amended, modified, or supplemented, the "Voting Report"); and

f.    filed, on March 2, 2022, the *Debtors' (I) Memorandum of Law in Support of Confirmation of Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC and (II) Omnibus Reply to Plan Confirmation Objections* (the "Confirmation Brief").

The Court having:

a.    found that the notice provided regarding the Confirmation Hearing, and the opportunity for any party in interest (including, without limitation, any Releasing Claim Holder) to object to Confirmation of the Plan and the releases, assignments, and injunctions therein, have been adequate and appropriate under the circumstances and no further notice is required;

b.    held the Confirmation Hearing;

c.    considered the entire record of the Confirmation Hearing, including, but not limited to,

    i.    the Plan (including, without limitation, the Plan Supplement), the Disclosure Statement, and the Disclosure Statement Order,

    ii.    the Solicitation Affidavits and Voting Report,

    iii.    the objections, reservations of rights, and other responses submitted with respect to the Plan (collectively, the "Objections"), including the following: D.I. 6266, D.I. 6948, D.I. 7664, D.I. 7920, D.I. 8375, D.I. 8639, D.I. 8658, D.I. 8672, D.I. 8674, D.I. 8675, D.I. 8676, D.I. 8677, D.I. 8679, D.I. 8683, D.I. 8684, D.I. 8685, D.I. 8686, D.I. 8687, D.I. 8688, D.I. 8690, D.I. 8692, D.I. 8695, D.I. 8696, D.I. 8698, D.I. 8699, D.I. 8700, D.I. 8703, D.I. 8708, D.I. 8709, D.I. 8710, D.I. 8735, D.I. 8744, D.I. 8745, D.I. 8748, D.I. 8761, D.I. 8768, D.I. 8769, D.I. 8771, D.I. 8973, D.I. 9007, D.I. 9015, D.I. 9017,

4

D.I. 9018, D.I. 9020, D.I. 9021, D.I. 9023, D.I. 9028, D.I. 9031, and D.I. 9033,

iv.    the Solicitation Affidavits, the Confirmation Publication Declarations, the Voting Report, and declarations and testimony submitted in support of confirmation,

v.    the Confirmation Brief and other submissions and joinders in support of Confirmation of the Plan, including the following: D.I. 9096, D.I. 9098, D.I. 9100, D.I. 9106, D.I. 9107, D.I. 9108, D.I. 9109, D.I. 9111, D.I. 9112, D.I. 9113, D.I. 9115, D.I. 9156, D.I. 9164, D.I. 9190, D.I. 9194, D.I. 9201, and D.I. 9321,

vi.    arguments of counsel and the evidence proffered, adduced, and/or presented in connection with the Confirmation Hearing, and

d.    made certain findings of fact and conclusions of law as set forth in the Court's Opinion [D.I. 10136], dated July 29, 2022 (the "Confirmation Opinion"), and

e.    held hearings on September 1, 2022 at 11:00 a.m. (prevailing Eastern Time) and September 7, 2022 at 10:00 a.m. (prevailing Eastern Time) and considered the entire record of such hearings; and

after due deliberation thereon and good cause appearing therefor,

## II.    SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY FOUND, DETERMINED, AND CONCLUDED, that:

A.    **Supplemental Findings of Fact and Conclusions of Law**.  The findings of fact and conclusions of law set forth herein supplement the Court's findings of fact and conclusions of law set forth in the Confirmation Opinion and shall constitute findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52, made applicable in contested matters by Bankruptcy Rules 7052 and 9014(c).  To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such.  To the extent that any of the conclusions of law constitute findings of fact, they are adopted as such.

B.    **Adequate Notice**.  All necessary service and notice with respect to confirmation of the Plan, including all releases and injunctions thereunder, on all known and unknown creditors and other parties in interest was adequate and sufficient under the circumstances of the Chapter 11

Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice is necessary or shall be required.

C.    **Plan Modifications**.    The amendments and modifications to the Third Modified Fifth Amended Plan since the filing thereof, including as reflected herein, and incorporated into and reflected in the Plan are approved in accordance with section 1127(a) of the Bankruptcy Code and Rule 3019(a) of the Bankruptcy Rules.

D.    **Plan Compliance with the Bankruptcy Code.**    As set forth in the Confirmation Opinion, the Debtors and the Plan have complied with all applicable provisions of the Bankruptcy Code, including section 1129(a) of the Bankruptcy Code. The Plan has been proposed in good faith and not by any means forbidden by law. This Order has not been procured by fraud, and satisfies the Bankruptcy Code's requirements for confirmation.

E.    **Implementation of the Plan (11 U.S.C. § 1123(a)(5))**.    Article V of the Plan and the other provisions of the Plan as well as the exhibits and schedules to the Plan, the various documents and agreements set forth in the Plan Supplement, and the terms of this Order provide adequate and proper means for the implementation of the Plan.

F.    **Assumption and Rejection of Executory Contracts and Unexpired Leases**.    The Debtors' assumption, assumption and assignment, or rejection of each executory contract and unexpired lease under the Plan satisfies the requirements of section 365(b) of the Bankruptcy Code and, therefore, the requirements of section 1123(b)(2) of the Bankruptcy Code.

G.    **PSZJ Settlement**.    Notwithstanding Section VI.B of the Confirmation Opinion, the PSZJ Settlement represents a sound exercise of the Debtors' business judgment, is in the best interest of the Debtors' estates, complies with section 1123 of the Bankruptcy Code, and is approved pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 without prejudice to the rights of all parties in interest to object to any fees of PSZJ pursuant to 11 U.S.C.

§ 330, and subject to this Court's review and authority to impose any appropriate non-monetary sanctions, if any.

H.    **Injunctions and Releases**.

1.    The Court, having considered the Confirmation of the Plan, finds and determines that all such provisions are consistent with the provisions of the Bankruptcy Code. The injunctions as set forth in Article X of the Plan are to be implemented in connection with the Settlement Trust, shall be in full force and effect on and after the Effective Date, and shall not be subject to any additional exceptions or limitations and shall apply to any claim or cause of action by any person or entity concerning the Abuse Insurance Policies issued by the Settling Insurance Companies, other policies issued by the Settling Insurance Companies covering Abuse Claims, and such respective policies' proceeds. Pursuant to the Insurance Settlement Agreements and Article X of the Plan, the Post-Confirmation Interim Injunction stays and enjoins any claim that would be released under the Plan or subject to any of the injunctions in the Plan, including the Channeling Injunction and the Insurance Entity Injunction.

2.    As a result of the injunctions and releases provided under the Plan, the Archbishop of Agaña will receive the benefit of the releases, injunctions, and the insurance policy buyback in the Plan, notwithstanding the automatic stay in the Archbishop of Agaña's bankruptcy case. The automatic stay in the Archbishop of Agaña's bankruptcy case does not prevent the sale of the Abuse Insurance Policies, as provided in the Confirmation Opinion, and the issuance and enforcement of each of the releases and injunctions set forth or preserved in the Plan with respect to the Archbishop of Agaña. Through the combination of the injunctions and releases under the Plan and the Insurance Settlement Agreements, the Settling Insurance Companies will receive a complete release of liability for Abuse Claims and an injunction against any claims under the Insurance Entity Injunction.

I.    **Findings Required by Plan**.

1.    Findings a–i, m–o, and u–v set forth in <u>Article IX.A.3</u> of the Plan are made, approved, and hereby incorporated herein in their entirety.

2.    Finding j set forth in <u>Article IX.A.3</u> of the Plan is modified as follows:

(a)    The Plan's transfer of rights under BSA Insurance Policies (the "<u>Debtor Policy Assignment</u>") is authorized and permissible notwithstanding any terms of any policies or provisions of applicable law that are argued to prohibit the assignment or transfer of such rights.

(b)    The Plan's transfer of rights under Local Council Insurance Policies issued by the Settling Insurance Companies (the "<u>Consensual Policy Assignment</u>") is authorized and permissible.

(c)    The Plan's transfer of rights under any insurance policies, other than BSA Insurance Policies, issued by Non-Settling Insurance Companies (the "<u>Non-Debtor Policy Assignment</u>"), subject to the savings clause set forth in <u>Article V.S.1</u>, is authorized to the extent permitted under state law, and the enforceability of such transfer of rights shall be determined under the state law applicable to each such policy.

(d)    With respect to any rights transferred to the Settlement Trust pursuant to (a), (b) or (c) above, the Settlement Trust (1) is a proper defendant for Abuse Claims to assert the liability of the Protected Parties, and (2) is a proper defendant for Post-1975 Chartered Organization Abuse Claims to assert the liability of the Limited Protected Parties.

(e)    The Settlement Trust's rights under any insurance policies issued by Non-Settling Insurance Companies, including the effect of any failure to satisfy conditions precedent or obligations under such policies (other than, in the case of the BSA Insurance Policies, the terms of any policies or provisions of applicable law that are argued to prohibit the assignment or transfer of such rights), shall be determined under the law applicable to each such policy in subsequent litigation.

(f)    For the avoidance of doubt, the term "Insurance Assignment," as defined in the Plan or any Plan Document, shall be and hereby is modified to the extent required to be consistent with the provisions of this paragraph.

3.    Findings k, p, q, r, and s set forth in <u>Article IX.A.3</u> of the Plan are made, approved, and hereby incorporated herein in their entirety, except as modified in the Confirmation

Opinion, to provide that the sale of the applicable Abuse Insurance Policies shall be free and clear of all liens, claims, encumbrances, interests and rights of any nature, whether at law or in equity, of any Person or Entity, *except* solely with respect to the interests, if any, of the Archbishop of Agaña.

4.    Finding y set forth in <u>Article IX.A.3</u> of the Plan is modified as follows:

The allowed amount of any Direct Abuse Claim shall be the amount therefor as determined under the Trust Distribution Procedures. Such allowed amount shall be legally enforceable against the Settlement Trust. For the avoidance of doubt, the amount of any installment payments, initial payments, or payments based on payment percentages established under the Trust Distribution Procedures or the Settlement Trust Agreement, as determined or as actually paid by the Settlement Trust, are not the equivalent of any Abuse Claimant's allowed amount of its channeled Direct Abuse Claim. For the further avoidance of doubt, nothing herein determines whether or not any insurer is obligated to pay the amount determined under the Trust Distribution Procedures for an allowed Direct Abuse Claim.

J.    **Direct Abuse Claims**.

1.    The Court's determination of the likely aggregate valuation of Direct Abuse Claims for purposes of Confirmation does not establish: (a) the actual amount of any individual Direct Abuse Claim; or (b) the actual aggregate amount of Direct Abuse Claims.

2.    The allowed amount of Direct Abuse Claims, either individually or in the aggregate, will be determined pursuant to the Trust Distribution Procedures.

K.    **Insurance Settlement Agreements**.

1.    The Insurance Settlement Agreements are approved as set forth in the Confirmation Opinion, and the Hartford Protected Parties, the Century and Chubb Companies, the Zurich Affiliated Insurers and the Zurich Insurers, and Clarendon are each designated as a Settling Insurance Company. Pursuant to and subject to the terms of the Hartford Insurance Settlement Agreement, upon Hartford's payment of the Initial Payment (as defined in the Hartford Insurance Settlement Agreement) to the Settlement Trust, the Debtors or Reorganized BSA, as applicable,

and the Debtors' Estates shall irrevocably release the Prepetition Hartford Claims, even if this Order is reversed or vacated on appeal following the Effective Date.  Pursuant to and subject to the terms of the Century and Chubb Companies Settlement, upon the payment of the Initial Payment (as defined in the Century and Chubb Companies Settlement) to the Settlement Trust, the Debtors or Reorganized BSA, as applicable, and the Debtors' Estates shall irrevocably release the Pre-Petition Century/Chubb Claims, even if this Order is reversed or vacated on appeal following the Effective Date.

2.    Notwithstanding anything to the contrary herein, for all purposes, including the Plan, this Order, and the Insurance Settlement Agreements, "Affirmation Order" shall mean an order of the District Court on appeal, in form and substance acceptable to each of the Settling Insurance Companies, the Debtors, the Ad Hoc Committee, the Coalition, the Tort Claimants' Committee, the Future Claimants' Representative, and, in accordance with their respective consent rights under the JPM / Creditors' Committee Term Sheet, the Creditors' Committee and JPM, that (a) affirms this Order, including, as to each Settling Insurance Company, the injunctions and releases in Article X of the Plan and each other provision of this Order required in the Insurance Settlement Agreement for that Settling Insurance Company to be included in this Order and to be affirmed in the Affirmation Order (provided, however, that, consistent with this Order, the Affirmation Order need not provide for the sale of policies of a Settling Insurance Company free and clear of the interests, if any, of the Archbishop of Agaña, so long as the Affirmation Order affirms (i) the injunctions and releases in Article X of the Plan, including the provisions in this Order and the Plan providing that any Abuse Claims asserted by any claimants against the Archbishop of Agaña that would be covered under any policy issued by a Settling Insurance Company (and, in the case of Hartford, by any of the Hartford Protected Parties) to the Debtors or any of the Local Councils will be channeled exclusively to the Settlement Trust and may not be

asserted against the Archbishop of Agaña or the Settling Insurance Companies (or any of the Hartford Protected Parties) and their Representatives, and (ii) the other provisions in the Plan and this Order related to the Archbishop of Agaña and the rights of the Settling Insurance Companies (the foregoing proviso, "Agaña Proviso")), (b) does not reverse, remand, or vacate this Order, or otherwise modify this Order or require any modifications to the Plan, each in a manner that affects the Settling Insurance Companies (subject to the Agaña Proviso), and (c) does not dismiss any appeal of this Order taken by any appellant under the doctrine of equitable mootness; provided, however, that if no such appeal is taken, or all such appeals from this Order are dismissed for any reason other than equitable mootness or withdrawn for any reason whatsoever, any requirement of an Affirmation Order set forth in this Order, any Insurance Settlement Agreement, and the Plan shall be, and shall be deemed to be, satisfied or waived in accordance with the terms of this Order, such Insurance Settlement Agreement, and the Plan.

3.      Neither the Initial Payment Date nor the Initial Payment Trigger Date (as each such term is used in the Hartford, Century and Chubb Companies, and Clarendon Insurance Settlement Agreements) shall occur, or shall be deemed to have occurred, until (a) the District Court shall have entered the Affirmation Order (as defined above) or no appeal is timely taken from this Order, or all such appeals from this Order are dismissed for any reason other than equitable mootness or withdrawn for any reason whatsoever, (b) no stay of this Order or the Affirmation Order (if applicable) shall be in effect, and (c) all of the other conditions precedent set forth in each Settling Insurance Settlement Agreement, as applicable, to the occurrence of the Initial Payment Date or the Initial Payment Trigger Date, and to any obligation by the Settling Insurance Company to pay or deposit any or all of its Settlement Amount (as specified in its respective Insurance Settlement Agreement), in each case subject to the definitional change above of "Affirmation Order," shall have been satisfied.

L.     **Buy-Back of Settling Insurance Company Insurance Policies**.   Except as modified by the Confirmation Opinion solely with respect to the interests, if any, of the Archbishop of Agaña, the Abuse Insurance Policies sold to the Settling Insurance Companies through the Insurance Settlement Agreements (including the Hartford Policies, Century and Chubb Companies Policies, Zurich Insurer Policies, and Clarendon Policies) may be sold free and clear of liens, claims, encumbrances, interests, or other rights as provided for and described in the Confirmation Opinion, this Order and the applicable Insurance Settlement Agreement (which sale related provisions are incorporated by reference hereby).   The Settling Insurance Companies are each good faith purchasers for value within the meaning of section 363(m) of the Bankruptcy Code.

M.     **Additional Provisions Related to the Insurance Settlement Agreements**.  The following terms shall apply concerning the Insurance Settlement Agreements.   Without limiting or modifying any other terms or conditions of the Insurance Settlement Agreements or the Plan, each of the Insurance Settlement Agreements is modified to provide that the voluntary waiver of the condition set forth therein that the Settling Insurance Company shall purchase the Abuse Insurance Policies issued by it free and clear of the interests, if any, of the Archbishop of Agaña shall be effective only so long as:

1.     The injunctions provided in Article X of the Plan (including the Channeling Injunction, the Insurance Entity Injunction and Post-Confirmation Interim Injunction) at all times continue to enjoin and bar all Persons, including the Archbishop of Agaña, its bankruptcy estate, and any successor(s) or assign(s) thereto from asserting any claims or causes of action against the Settling Insurance Companies (and the Hartford Protected Parties) or their respective Representatives based upon, attributable to, arising out of, or in any way connected with any Abuse Insurance Policy or other insurance policy issued by a Settling Insurance Company covering Abuse Claims;

2.      In any settlement or other resolution of claims occurring after the Confirmation Hearing between and among the Debtors or the Settlement Trust on the one hand, and the Archbishop of Agaña, its bankruptcy estate, and any successor(s) or assign(s) thereto and/or claimants holding claims against the Archbishop of Agaña, on the other hand, the Debtors or the Settlement Trust shall include a release of any claims or causes of action against the Settling Insurance Companies (and the Hartford Protected Parties) and their respective Representatives concerning or related to the Abuse Insurance Policies issued by the Settling Insurance Companies and satisfy all of the terms provided in the Insurance Settlement Agreements, including Section 33 of the Century and Chubb Companies Insurance Settlement; *provided* that the foregoing shall not prohibit the Settlement Trust from fixing (but not paying) the allowed amount of Abuse Claims in accordance with the Trust Distribution Procedures (or from paying any portion of any such amount provided that the claimant provides the releases required under the Plan);

3.      The Debtors and the Settlement Trustee shall coordinate with the Century and the Chubb Companies, and the other Settling Insurance Companies to the extent the Debtors or the Settlement Trustee are requested to do so, regarding (a) positions taken and filings made by them in the Archbishop of Agaña's bankruptcy case and (b) any settlement discussions and negotiations with representatives of the Archbishop of Agaña, its bankruptcy estate, and any successor(s) or assign(s) (other than with respect to the fixing of the allowed amount of Direct Abuse Claims in accordance with the Trust Distribution Procedures) and will further share information reasonably requested by the Century and the Chubb Companies (and the other Settling Insurance Companies to the extent the Debtors or the Settlement Trustee are requested to do so) concerning the foregoing matters, subject to, as reasonably determined to be appropriate by the Settlement Trustee, the execution of confidentiality agreements provided by the Settlement Trustee with reasonably appropriate terms by, as relevant, Century, the Chubb Companies and their

13

respective Representatives (and the other Settling Insurance Companies), and provided that the Settlement Trustee shall have authority to make to Century, the Chubb Companies and their respective Representatives, and the other Settling Insurance Companies, disclosures as appropriate to permit the Settlement Trustee's satisfaction of the obligations of this paragraph;

4.     The Archbishop of Agaña, its bankruptcy estate, or any successor(s) or assign(s) shall not have been relieved from the terms of the Plan, the Confirmation Opinion, this Order or any injunctions and releases provided or authorized thereby without the consent of the Settling Insurance Companies; and

5.     At the time when any Settling Insurance Company otherwise would be obligated to pay, or consent to the release from escrow of, any portion of its Settlement Amount, such obligations shall be conditioned on this Order at such respective times containing the matters required by paragraphs M.1 through M.4 above.

N.     **JPM / Creditors' Committee Settlement**.  As set forth in finding m of Article IX.A.3 of the Plan, the JPM / Creditors' Committee Settlement represents a sound exercise of the Debtors' business judgment, is in the best interest of the Debtors' Estates, complies with section 1123 of the Bankruptcy Code, and is approved pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in accordance with the findings of fact and conclusions of law made by the Court pursuant to this Order.

O.     **United Methodist Settlement**.  As set forth in finding u of Article IX.A.3 of the Plan, the United Methodist Settlement is approved in accordance with sections 105, 363, 1123, and/or 1141 of the Bankruptcy Code, Bankruptcy Rule 9019, and the findings of fact and conclusions of law made by the Court pursuant to this Order.  Notwithstanding the reference to fundraising efforts in subsection (ii) of Section II.C.4 of the Confirmation Opinion, which are no longer part of the United Methodist Settlement Agreement, the United Methodist Settlement

Contribution, together with the non-monetary benefits, as set forth in the United Methodist Settlement Agreement, provides a substantial contribution to the Debtors' reorganization.

P.    **Proceeds of Sale of Abuse Insurance Policies**.  The proceeds of any sale of any Abuse Insurance Policies, including the full settlement amount, shall be contributed to the Settlement Trust "free and clear" of all liens, claims, encumbrances, any other rights of any nature, whether at law or in equity, and other "interest," under sections 363 and 1141 of the Bankruptcy Code, of any additional insured or any other person or Entity in such Abuse Insurance Policies. Notwithstanding anything to the contrary and for the avoidance of doubt, the Abuse Insurance Policies shall be sold by the Debtors to the applicable Settling Insurance Companies free and clear of all liens, claims, encumbrances, interests, or other rights (*except* solely with respect to the interests, if any, of the Archbishop of Agaña) on the Effective Date on the terms and as provided in the applicable Insurance Settlement Agreements.

Q.    **Resolution of Roman Catholic Entities' Objection**.

1.    The "Roman Catholic Entities" are defined herein as each and every (i) Roman Catholic parish, school, diocese, archdiocese, association of religious or lay Persons in the United States or its territories that sponsored, promoted, hosted, was involved with, or provided any support in connection with Scouting activities in any way, including as a social service organization, ministry, camping ministry, or by the use of a camp facility, camp, retreat, or other facilities in connection with Scouting activities, regardless of whether any of the foregoing entities is or was a Chartered Organization at any time or whether such facilities were owned or leased by any of such entities or a third party, (ii) all entities listed or eligible to be listed in the Official Catholic Directory since January 1910, and (iii) all Representatives of the foregoing, including their attorneys, any affiliates and the RCAHC.  However, no Perpetrator is or shall be a Roman

Catholic Entity.[3]

2.      The Roman Catholic Entities, other than those that have specifically opted out of such treatment (and do not withdraw such opt-out) and other than those that are debtors in bankruptcy as of the Confirmation Date that have not advised the Debtors' counsel in writing that they wish to make the Participating Chartered Organization Insurance Assignment, shall be treated as Participating Chartered Organizations.  For the avoidance of doubt, all debtors in bankruptcy that are part of the RCAHC and all Chartered Organizations set forth on Exhibit K to the Plan other than the Archbishop of Agaña shall be treated as Participating Chartered Organizations for all purposes.

## III.   <u>ORDER</u>

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      **<u>Confirmation</u>**.  As set forth in the Confirmation Opinion and this Order, all requirements for the Confirmation of the Plan have been satisfied. Accordingly, the Plan, as modified by the Confirmation Opinion and this Order, in its entirety, is **CONFIRMED** pursuant to section 1129 of the Bankruptcy Code.  Any failure to specifically describe, include, or refer herein to any particular article, section, or provision of the Plan (or any Plan Document) in this Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Court that the Plan (including all Plan Documents) be approved and confirmed in its entirety.  The Plan, as attached hereto as **<u>Exhibit A</u>**, complies with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  The conclusions of law set forth in the Confirmation Opinion are incorporated except as expressly modified herein.

---

[3]     The Channeling Injunction and releases provided to the Chartered Organizations not affiliated with the Roman Catholic Church (including other faith-based institutions) and their related entities shall be consistent with the foregoing scope.

2.    **Settlements**.    The Debtors are hereby authorized and directed to enter into settlements described in Article V.S of the Plan under sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019.   The settlement of the Pre-Petition Century/Chubb Claims is approved and shall be the subject of the separate Pre-Petition Century/Chubb Claims Order, as defined and described in the Century and Chubb Companies Insurance Settlement.  The Hartford Administrative Expense Claim is Allowed in accordance with section 503(b) of the Bankruptcy Code, as described in the Hartford Settlement Agreement.

3.    **Implementation of the Plan**.  Pursuant to section 1123(a)(5)(D) of the Bankruptcy Code on, prior to the Effective Date, or as soon as thereafter as is reasonably practicable, the Debtors or Reorganized BSA, as applicable, and any applicable non-Debtor parties, may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to implement the provisions of the Plan.  All Persons are prohibited from taking any action to adversely affect or interfere with the Debtors, Reorganized BSA, and any applicable non-Debtor parties to any transaction described in, approved by, contemplated by, or necessary to implement the provisions of the Plan.

4.    **Approval of Buy-Back of Settling Insurance Company Insurance Policies**.  The sale of the Century and Chubb Companies Policies, Hartford Policies, Zurich Insurer Policies, and the Clarendon Policies in accordance with the corresponding Insurance Settlement Agreements, except as modified by the Confirmation Opinion solely with respect to the exclusion of the interests, if any, of the Archbishop of Agaña, from the "free and clear" aspect of the sale of such policies is hereby approved pursuant to sections 363, 1123, and/or 1141 of the Bankruptcy Code.  Such sales shall be free and clear of all liens, claims, encumbrances, interests and other rights of any nature, whether at law or in equity, of any person or entity, including those of the Debtors, the Local Councils, the Contributing Chartered Organizations, the Participating Chartered

Organizations, the Opt-Out Chartered Organizations, and the holders of Abuse Claims (and, in each case, their respective creditors and interest holders) in the Century and Chubb Companies Policies, Hartford Policies, Zurich Insurer Policies, and the Clarendon Policies pursuant to sections 363, 1123 and/or 1141 of the Bankruptcy Code, except as modified by the Confirmation Opinion solely with respect to the interests, if any, of the Archbishop of Agaña.  Each Settling Insurance Company shall be entitled to the protections of section 363(m) of the Bankruptcy Code with respect to such sale. Unless, prior to the Effective Date, the Coalition, Tort Claimants' Committee, and the Future Claimants' Representative, and from and after the Effective Date, the Settlement Trustee, agree otherwise, no person or entity, including any person or entity that is co-liable with the Debtors for Direct Abuse Claims or Scouting-related Abuse, shall have any right to be paid from the settlement amounts set forth in the Insurance Settlement Agreements that would directly or indirectly prevent the settlement amounts from being paid to the Settlement Trust and/or the holders of Direct Abuse Claims; *provided, however*, nothing herein shall prevent the Settlement Trust from using the settlement amounts set forth in the Insurance Settlement Agreements in accordance with the Settlement Trust Agreement and the Trust Distribution Procedures.  Neither the Insurance Settlement Agreements nor the transactions contemplated thereby are subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law.  For the avoidance of doubt, the modification of these free and clear sales with respect to the interests, if any, of the Archbishop of Agaña, as set forth in the Confirmation Opinion (and in the corresponding provisions of the Plan and this Order implementing such modifications), does not diminish and has no impact whatsoever on the injunctions and related releases in Article X of the Plan, which are approved in their entirety and are applicable to all Abuse Claims against or relating to the Archbishop of Agaña, including the channeling and release under Articles X.F, X.J.3, and X.J.6 of the Plan of all Abuse Claims against the Protected Parties and all Opt-Out Chartered

Organization Abuse Claims against the Opt-Out Chartered Organizations. In the event any Holder of Abuse Claims (including the Lujan Claimants) pursues Abuse Claims against an Opt-Out Chartered Organization (including the Archbishop of Agaña) that are not subject to the Channeling Injunction and released pursuant to the Plan and this Order, no Holder of an Abuse Claim or the Archbishop of Agaña shall recover on account of such Abuse Claim from an insurance policy issued by a Settling Insurance Company. In the event that any litigation in any forum is filed by or on behalf of the Archbishop of Agaña naming a Settling Insurance Company as a defendant, asserting an Abuse Claim or seeking a recovery against an Abuse Insurance Policy in violation of the injunctions provided in Article X of the Plan, the Settlement Trust shall, upon receipt of reasonable and written notice, at the request of such Settling Insurance Company, use commercially reasonable efforts to cooperate in any action before the Bankruptcy Court to assist such Settling Insurance Company in obtaining entry of an order enforcing the injunctions provided in Article X of the Plan (including the Channeling Injunction and the Insurance Entity Injunction), including by appearing and filing a pleading enforcing the injunctions provided in Article X of the Plan (including the Channeling Injunction and Insurance Entity Injunction); *provided*, *however*, that the Settlement Trust's performance or non-performance of such obligation(s) shall not, in any circumstance, constitute a breach of any Insurance Settlement Agreement or excuse the performance of any Settling Insurance Company under any Insurance Settlement Agreement.

5.    **RCAHC Restructuring Expenses**. On or as soon as reasonably practicable after the Effective Date, and subject to the Bankruptcy Court granting a motion filed pursuant to sections 363(b), 1129(a)(4) and 503(b) of the Bankruptcy Code, Bankruptcy Rule 9019, or otherwise applicable bankruptcy and non-bankruptcy law, Reorganized BSA shall reimburse the RCAHC amounts they have paid to its counsel, ArentFox Schiff LLP and Potter Anderson & Corroon LLP, and their advisor, Mackinac Partners (the "RCAHC Professionals") for, reasonable, documented,

and contractual professional advisory fees and expenses incurred by the RCAHC Professionals (the "RCAHC Restructuring Expenses"); *provided*, *however*, that, without limiting the foregoing, the RCAHC Restructuring Expenses shall be in an aggregate amount not to exceed $1,500,000, any award of such fees shall be payable by Reorganized BSA over the course of the twenty four (24) month period following the Effective Date of the Plan in four equal installments with the first installment due six (6) months following the Effective Date of the Plan. Notwithstanding anything to the contrary in the Plan, the RCAHC Restructuring Expenses shall be subject to the terms of Article II.A.2 of the Plan, with the following modifications: (x) RCAHC Professionals shall comply with the procedures and processes set forth in Article II.A.2 of the Plan by filing final fee application(s), which, for attorneys or law firms who are RCAHC Professionals, shall include time entry detail, which may be redacted for privilege; and (y) payment or reimbursement of RCAHC Restructuring Expenses shall be subject to the review and procedure of the Fee Examiner. The requirement that a separate motion be filed with the Court shall not in any way prejudice or limit the payment of the RCAHC Restructuring Expenses under the Plan, or determine what standard should be applied to determine approval of the RCAHC Restructuring Expenses; *provided*, *however*, that nothing in this Order makes any findings of fact or conclusions of law regarding whether the RCAHC Restructuring Expenses should be approved.

6.     **Professional Fee Claims**.    As set forth in Article II.A.2 of the Plan, all Professionals or other Persons requesting the final Allowance and payment of compensation and/or reimbursement of expenses pursuant to sections 328, 330, 331 and/or 503(b) or under Article V.T of the Plan as described therein, for services rendered during the period from the Petition Date to and including the Effective Date shall file and serve final applications for Allowance and payment of Professional Fee Claims on counsel to the Debtors and the United States Trustee no later than the first Business Day that is forty-five (45) days after the Effective Date. Objections to any

Professional Fee Claim must be filed and served on Reorganized BSA and the applicable Professional within twenty-one (21) calendar days after the filing of the final fee application that relates to the Professional Fee Claim (unless otherwise agreed by the Debtors or Reorganized BSA, as applicable, and the Professional requesting Allowance and payment of a Professional Fee Claim). The Fee Examiner shall continue to act in its appointed capacity unless and until all Professional Fee Claims have been approved by order of the Court, and Reorganized BSA shall be responsible to pay the fees and expenses incurred by the Fee Examiner in rendering services after the Effective Date.

7. **Modifications to the Plan**. All modifications made to the Plan and Plan Documents following the solicitation of votes thereon satisfy the requirements of section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and do not adversely affect the treatment of any Claims and, accordingly, neither require additional disclosure under section 1125 of the Bankruptcy Code nor resolicitation of votes on the Plan under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims be afforded an opportunity (or, for some, a further opportunity) to change previously cast acceptances or rejections of the Plan.

8. **Effectuating Documents and Further Transactions**. The Chief Executive Officer and President, the Chief Financial Officer, and the General Counsel of the BSA are authorized to execute, deliver, file or record such contracts, instruments, releases, indentures, and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan in the name of and on behalf of Reorganized BSA, without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant to the Plan.

9. **Executory Contracts and Unexpired Leases**. Entry of this Order shall constitute approval of the assumption or rejection, as applicable, of Executory Contracts or Unexpired Leases

pursuant to the Plan, pursuant to sections 365 and 1123 of the Bankruptcy Code and as set forth in the Plan.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or a Final Order of the Court shall re-vest in and be fully enforceable by Reorganized BSA in accordance with its terms, except as such terms may have been modified by the provisions of the Plan, this Order, or any Final Order of the Court authorizing and providing for its assumption.

10.    **Rejection Damages Claims**.  Pursuant to <u>Article VI.B</u> of the Plan, except as otherwise ordered by the Court, all Proofs of Claim for Rejection Damages Claims, if any, shall be filed within thirty (30) days after the latest to occur of: (1) the date of entry of an order of the Bankruptcy Court (including this Order) approving such rejection; (2) the effective date of the rejection of such Executory Contract or Unexpired Lease; or (3) the Effective Date (as applicable, the "<u>Rejection Damages Bar Date</u>").

11.    **Restated Debt and Security Documents and Foundation Loan Documents**.  The Court hereby (a) approves (i) the Restated Debt and Security Documents and all transactions contemplated thereby and thereof, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Debtors or Reorganized BSA, as applicable, contemplated thereby, including all related guaranty, security, intercreditor, and other agreements (the "<u>Related Agreements</u>") and (ii) the Foundation Loan Agreement and all related guaranty, security, intercreditor, and other agreements (collectively, the "<u>Foundation Loan Documents</u>") and (b) authorizes the Debtors and Reorganized BSA, as applicable, without further notice to or action, order, or approval of this Court and without the need for any further corporate or shareholder action, to enter into, deliver, and fully perform its obligations under the Restated Debt and Security Documents and Related Agreements and the Foundation Loan Documents.  Upon entry of this Order, the Debtors and Reorganized BSA, as applicable, are authorized and empowered, without further approval of the Court or any other party, to take such actions and perform such acts as may

be necessary, convenient, desirable, or appropriate to execute and deliver the Restated Debt and Security Documents and the Foundation Loan Documents, and to execute and deliver all documents relating thereto, including the Related Agreements, and to perform all of their obligations thereunder.  On the Effective Date, the Restated Debt and Security Documents and Related Agreements and the Foundation Loan Documents shall constitute legal, valid, binding, and authorized obligations of Reorganized BSA, enforceable in accordance with their terms, and such obligations shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under applicable law, the Plan, or this Order.  On the Effective Date, all Liens and security interests granted or continued pursuant to, or in connection with, the Restated Debt and Security Documents and Related Agreements and the Foundation Loan Documents shall (i) be reaffirmed and ratified by Reorganized BSA and continue in full force and effect pursuant to the Restated Debt and Security Documents and Related Agreements and the Foundation Loan Documents, and (ii) be deemed granted by Reorganized BSA pursuant to the Restated Debt and Security Documents and Related Agreements and the Foundation Loan Documents.  On the Effective Date, all Liens and security interests granted pursuant to, or in connection with the Restated Debt and Security Documents and Related Agreements and the Foundation Loan Documents (1) shall be valid, binding, perfected, enforceable Liens and security interests in the property subject to a security interest granted by Reorganized BSA pursuant to the Restated Debt and Security Documents and Related Agreements and the Foundation Loan Documents, and (2) shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under any applicable law, the Plan, or this Order.

12.     **Establishment of the Settlement Trust**.  This Order authorizes the Settlement Trust to be established in accordance with the Settlement Trust Agreement and Trust Distribution Procedures (as supplemented by any other applicable Plan Documents).  The Settlement Trust may

be established prior to the Effective Date to the extent necessary, desirable, or appropriate to effectuate the Plan. The Settlement Trust shall be established as a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code, with respect to which Reorganized BSA shall timely make an election to treat the Settlement Trust as a "grantor trust" for U.S. federal income tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes.

13.   **Settlement Trustee**. Hon. Barbara J. Houser (Ret.) or Barbara J. Houser LLC (as applicable) is hereby appointed as the Settlement Trustee effective simultaneously with the establishment of the Settlement Trust as set forth in the Plan.

14.   **Claims Administrators**. Hon. Michael Reagan (Ret.) and Hon. Diane Welsh (Ret.) are hereby appointed as the Claims Administrators effective simultaneously with the establishment of the Settlement Trust as set forth in the Plan.

15.   **Appointment of the STAC**. The following persons are hereby appointed to serve as the initial STAC members: (a) Coalition Appointees: (1) Adam Slater; (2) Sean Higgins; (3) Kenneth M. Rothweiler; (b) Tort Claimants' Committee Appointees: (1) Jordan Merson; (2) Paul Mones; (3) Christopher Hurley; and (c) the Pfau/Zalkin Appointee: (1) Irwin Zalkin. The alternate STAC members are: (1) Deborah Levy (Coalition); (2) Peter Janci (Committee); and (3) Michael Pfau (Pfau/Zalkin). The STAC members shall serve in accordance with the Plan.

16.   **Appointment of the Future Claimants' Representative**. James L. Patton, Jr. is hereby appointed to serve as the initial Future Claimants' Representative for the Settlement Trust effective as of the establishment of the Settlement Trust. The Future Claimants' Representative shall serve in accordance with the Plan.

17.   **Formation of Chartered Organization Advisory Group**. Representatives of Participating or Contributing Chartered Organizations, with the cooperation of the Settlement

Trustee, may form a three-member "Chartered Organization Advisory Group" to advise the Settlement Trustee about Chartered Organizations' concerns as to any future insurance settlements and other issues. The Chartered Organization Advisory Group may also advise the Settlement Trustee regarding coordination of claims information and settlement negotiations with Chartered Organizations. The group shall be entirely advisory in nature, shall have no fiduciary duties, and shall not have the authority to bind or control the Settlement Trustee (who shall have no duties to such group), any Chartered Organization or other party. A representative of the Roman Catholic Ad Hoc Committee shall be a member of the Chartered Organization Advisory Group so long as such a person is available to serve. The size of the Chartered Organization Advisory Group may be altered with the approval of the Chartered Organization Advisory Group.

18. **U.S. Federal Income Tax Treatment of the Settlement Trust**. The Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code. Reorganized BSA shall make a "grantor trust" election under Treasury Regulation section 1.468B-1(k) with respect to the Settlement Trust for U.S. federal income tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes. All parties shall report consistently with such grantor trust election. The Settlement Trust shall file (or cause to be filed) statements, returns, or disclosures relating to the Settlement Trust that are required by any Governmental Unit. The Settlement Trustee shall be responsible for the payment of any taxes imposed on the Settlement Trust or the Settlement Trust Assets, including estimated and annual U.S. federal income taxes in accordance with the terms of the Settlement Trust Agreement.

19. **Audit Program**. Consistent with the Confirmation Opinion, by one-hundred twenty (120) days after the Effective Date, the Settlement Trustee shall propose procedures to the Court to identify fraudulent claims, taking into account factors the Settlement Trustee deems

appropriate (and which may include a cost/benefit analysis). These procedures shall be presented to the Court for approval, after notice and, if necessary, a hearing, and the STAC and the Future Claimants' Representative shall have no consent rights or veto rights with respect to the proposed procedures. In addition to disallowance of a claim, penalties may include seeking the prosecution of the claimant or claimant's attorney for presenting a fraudulent claim in violation of 18 U.S.C. § 152 and seeking sanctions from the Court.

20.     **TCJC**.  In accordance with the Plan as modified by the Plan Addendum, TCJC is not a Contributing Chartered Organization, and shall be a Participating Chartered Organization and shall have all of the rights and obligations associated therewith.

21.     **Approval of the Document Appendix**.

(a)     The Document Appendix is hereby approved and shall govern the matters as set forth therein (other than as provided in subparagraph (b)–(d) below), provided that the Document Appendix does not afford the Settlement Trustee or holders of Direct Abuse Claims a means of compelling a Non-Settling Insurance Company or its Representatives to provide information, documents or other discovery. Notwithstanding the foregoing, nothing in the Plan or Plan Documents shall prevent or limit the Settlement Trustee or holders of Direct Abuse Claims from seeking to compel such discovery (including filing a motion for an order under Bankruptcy Rule 2004) by any lawful means.

(b)     Solely with respect to the RCAHC, its members and Roman Catholic Entities, the Settlement Trustee and holders of Direct Abuse Claims may issue subpoenas hereunder under the authority of Bankruptcy Rule 2004 solely for the purpose of pursuing Direct Abuse Claims filed with the Settlement Trust (whether pursuant to the general procedures in Article V or VII of the Trust Distribution Procedures or the Independent Review Option in Article XIII of the Trust Distribution Procedures); <u>provided</u> that, the holder of a Direct Abuse Claim shall

obtain the written approval of the Settlement Trustee that the proposed discovery is for the purpose of administering Direct Abuse Claims in the Settlement Trust before issuing a subpoena; and provided further, that nothing herein shall prejudice the rights of the holder of a Direct Abuse Claim to seek any discovery by lawful means (including filing a motion for an order under Bankruptcy Rule 2004) if the Settlement Trustee does not grant the requested approval.

(c)     The ad hoc committee for the United Methodist Entities or its designee (the "UM Designee") will cooperate in good faith with the Settlement Trust in connection with any Abuse Claims involving a Chartered Organization that is also one of the United Methodist Entities (a "UM Chartered Organization"). The UM Designee will serve as a clearinghouse for such document and deposition requests to assist the Settlement Trust's function in these cases and seek to facilitate the provision of non-privileged/protected information relevant to determining the value of any such Abuse Claim.   The following provisions shall constitute an amendment to the Document Appendix as applied to any UM Chartered Organization.

(i)     The Settlement Trustee and holders of Direct Abuse Claims may seek the formal production of documents from UM Chartered Organizations pursuant to Section 9 of the Document Appendix solely for the purpose of supporting claimants' or the Settlement Trust's valuation of Direct Abuse Claims filed with the Settlement Trust pursuant to the Trust Distribution Procedures; *provided that*, before seeking such production, the holder of a Direct Abuse Claim shall (a) provide copies of the document requests to the UM Designee and engage in one or more meet-and-confer sessions in good faith with the UM Designee to attempt to resolve the document requests consensually, and (b) obtain the written approval of the Settlement Trustee that the proposed discovery is for the sole purpose of valuing Direct Abuse Claims in the Settlement Trust.

(ii)     In addition, following the receipt of documents, the Settlement

Trustee and holders of Direct Abuse Claims may provide the UM Chartered Organization with a notice of deposition by written questions, and any such questions must be relevant to the valuation of Direct Abuse Claims. The costs and fees incurred by the UM Chartered Organization in responding to each deposition by written questions shall be compensated by the Settlement Trust up to $2,000. After reviewing the responses to the deposition by written questions and for good cause shown, the Settlement Trustee may request a deposition of a representative of the UM Chartered Organization. The costs and fees incurred by the UM Chartered Organization in appearing for the deposition shall be compensated by the Settlement Trust up to $3,500.

(iii)    Before requesting any such deposition (either the (1) deposition by written questions or (2) the notice of deposition), the holder of a Direct Abuse Claim shall (a) provide copies of the deposition requests to the UM Designee and engage in one or more meet-and-confer sessions in good faith with the UM Designee to attempt to resolve the deposition request consensually, and (b) obtain the written approval of the Settlement Trustee that the proposed deposition is for the sole purpose of valuing Direct Abuse Claims in the Settlement Trust.

(iv)    Nothing in this subsection shall prejudice the rights of the holder of a Direct Abuse Claim to seek the document discovery by lawful means (including filing a motion for an order under Bankruptcy Rule 2004) if the Settlement Trustee does not grant the requested approval or the meet-and-confer process described above does not result in a satisfactory resolution. Nor does anything in this subsection prejudice any rights to contest such discovery.

(v)    Without prejudice to the rights of any UM Chartered Organization, the UM Designee may assert any applicable rights, claims, defenses, privileges or protections on behalf of any United Methodist Entity and shall have standing to appear and be heard on any dispute regarding discovery sought from any UM Chartered Organization.

(d)    In accord with paragraph 18 of the Document Appendix, as Settling

Insurance Companies, nothing in the Document Appendix or this Order shall be construed as requiring or authorizing discovery of the Settling Insurance Companies or their employees.

22.    **Historical Insurance Policy Information**.  The Settlement Trust shall maintain the data room of policy documentation and the Excel spreadsheets that identify the historic Boy Scouts and Local Council insurance policies for five (5) years after the Effective Date of the Plan. Access to this information shall be provided to Chartered Organizations and plaintiffs' counsel who want to determine if the injunction or releases contained in the Plan and this Order bar suit from being filed against a Chartered Organization.  Local Councils shall use reasonable best efforts to search for insurance policies and evidence of insurance policies on request of a Chartered Organization that has been named or may be named in a claim or lawsuit.

23.    **Local Council Escrow Account**.

(a)    The Debtors are authorized to establish an escrow account (the "Local Council Escrow Account") with a third party financial institution to receive the Local Council Cash Contribution (as defined in Exhibit F to the Plan) upon the Confirmation Date.  The Debtors shall consult with the Ad Hoc Committee regarding the terms of the agreement governing the Local Council Escrow Account.

(b)    Neither the Local Council Escrow Account nor funds therein are property of the Debtors' estates, and nothing in this Order, any proceedings before the Bankruptcy Court, or otherwise shall be construed as providing any creditor of the Debtors the right to access the funds in the Local Council Escrow Account.

(c)    The Debtors shall provide written notice to all Local Councils of wire transfer instructions for the Local Council Escrow Account within a reasonable amount of time following the establishment the Local Council Escrow Account.  Local Councils may wire funds into Local Council Escrow Account at any time after entry of this Order.

(d)     As close to the date upon which satisfaction or waiver of the conditions to the Effective Date set forth in Article IX.B of the Plan is known, the Debtors shall provide written notice of the proposed Effective Date (the "Closing Date Notice") to the Local Councils.  Before the proposed Effective Date, each Local Council shall wire its cash contribution to the Local Council Escrow Account.

(e)     On or about the Effective Date, the escrow agent shall transfer all funds in the Local Council Escrow Account to the Settlement Trust (subject to the terms of the agreement governing the Local Council Escrow Account), provided that all conditions precedent to the Effective Date in Article IX.B of the Plan must have been satisfied or waived pursuant to Article IX.C of the Plan, and a channeling injunction and releases in form and substance reasonably acceptable to the Ad Hoc Committee are contained in the confirmed Plan and the Affirmation Order, to the extent applicable, before any such transfer may occur.

(f)     If the Effective Date does not occur within the Closing Period (as defined below), the Debtors shall return the Local Council cash contributions, plus interest earned thereon, to the relevant Local Councils.  The "Closing Period" means either (i) the period ending sixty (60) days immediately following the Closing Date Notice, subject to an additional thirty (30)-day extension in the Debtors' discretion upon consultation with the Ad Hoc Committee, and another thirty (30)-day extension upon this Court's approval, or (ii) the period ending one hundred and twenty (120) days following entry of this Order, subject to additional extensions in the Debtors' discretion in consultation with the Ad Hoc Committee.

24.    **Specified Insurance Policies and Non-Abuse Litigation Claims**.

(a)     For the avoidance of doubt, no consent of the Settlement Trust shall be required (i) for a court of competent jurisdiction to award a non-consent judgment that is not a default judgment in the underlying lawsuit on a Non-Abuse Litigation Claim, (ii) to trigger the

obligation of the Settlement Trust to pay a judgment on a Non-Abuse Litigation Claim to the extent provided in subparagraph (b) below (provided that notice of any such judgment obtained shall be provided as set forth in the first sentence of subparagraph (c) below of this section), or (iii) for Entities other than the Settlement Trust to enter into any post-Effective Date settlement of a Non-Abuse Litigation Claim unless any portion of the recovery under such settlement is contended or sought to be payable from the proceeds of any settled Specified Insurance Policy(ies); *provided*, *however*, that a condition of (i) the payment of any judgment by the Settlement Trust as to a Non-Abuse Litigation Claim or (ii) the payment of any settlement of a Non-Abuse Litigation Claim, shall be a release by the holder of such Non-Abuse Litigation Claim of the Debtors, the Local Councils, and any other insureds under applicable Specified Insurance Policies.

(b)    Before the Settlement Trust settles any Specified Insurance Policy(ies) under which the holder of a Non-Abuse Litigation Claim is seeking to recover, the holder of a Non-Abuse Litigation Claim may recover up to the full amount of such Claim in the first instance from any such unsettled Specified Primary Insurance Policy(ies) or unsettled Specified Excess Insurance Policy(ies). If and when the Settlement Trust settles one or more Specified Insurance Policies under which the holder of a Non-Abuse Litigation Claim is seeking to recover: (a) the holder of such Non-Abuse Litigation Claim shall remain entitled to recover up to $1,000,000 of such Claim under and payable from (i) any unsettled Specified Primary Insurance Policy(ies) or (ii) from the Settlement Trust in the event that the Settlement Trust has settled the Specified Primary Insurance Policy(ies), subject to the Settlement Trustee's consent as to any settlement as set forth in this section; and (b) any amounts exceeding the remaining limits of liability of the applicable Specified Primary Insurance Policy shall be recoverable from (i) any unsettled Specified Excess Insurance Policy(ies) or (ii) from the Settlement Trust in the event that the Settlement Trust has settled the Specified Excess Insurance Policy(ies) that would otherwise be

31

liable, subject to the Settlement Trustee's consent as to any settlement as set forth in this section; *provided*, *however*, that the Settlement Trust shall pay amounts referenced in (a)(ii) or (b)(ii) immediately above only to the extent that a settlement or judgment entitles the holder of the Non-Abuse Litigation Claim to recover from the proceeds of any Specified Insurance Policies up to applicable policy limits and shall have consent rights over any settlement referenced in (a)(ii) or (b)(ii) immediately above (such consent not to be unreasonably withheld). For the avoidance of doubt, to the extent that the Settlement Trust settles a Specified Insurance Policy that was defending against a Non-Abuse Litigation Claim, the Settlement Trust has the right to assume the defense of such Non-Abuse Litigation Claim.

(c)    Any holder of a Non-Abuse Litigation Claim who has obtained a judgment implicating a settled Specified Insurance Policy shall serve the Settlement Trust's counsel with a copy of the judgment. Only with respect to a proposed settlement where the Settlement Trust has consent pursuant to subparagraph (b) immediately above of such Non-Abuse Litigation Claim, the Settlement Trust shall have 30 days following receipt of the proposed settlement to object to the proposed settlement. If the Settlement Trust does not object to the proposed settlement within 30 days following such receipt, the Settlement Trust will be deemed to have consented to the settlement. If the Settlement Trust does not consent to any settlement of a Non-Abuse Litigation Claim as to which its consent may not be unreasonably withheld, the holder of the Non-Abuse Litigation Claim may file a motion with the Bankruptcy Court seeking a determination regarding whether the Settlement Trust unreasonably withheld its consent to the proposed settlement. To the extent that the Bankruptcy Court determines that consent was not unreasonably withheld by the Settlement Trust, then the Non-Abuse Litigation Claim may recommence in the tort system.

(d)    The Settlement Trustee shall have a duty to treat Direct Abuse Claims and Non-Abuse Litigation Claims that implicate the Specified Insurance Policies fairly and equally.

In negotiating any settlements involving Specified Insurance Policies, the Settlement Trustee shall bear in mind the interests of both Direct Abuse Claims and Non-Abuse Litigation Claims in structuring any settlement and use best efforts to maximize recoveries for both constituencies.

25.    Notwithstanding anything to the contrary in the Plan, with respect to any Non-Abuse Litigation Claim that has been asserted or could be asserted against any Local Council, notice of which is provided to the Debtors, the Coalition, the Tort Claimants' Committee, and the Future Claimants' Representative prior to the Effective Date, the rights of the Local Council to recover from the applicable insurer for such Non-Abuse Litigation Claim under the Specified Insurance Policies up to the applicable coverage limits shall be preserved; *provided*, *however*, that if the holder of a Non-Abuse Litigation Claim provides a full and complete written release of any claims that such holder of a Non-Abuse Litigation Claim may have against the Local Council related to the Non-Abuse Litigation Claim, then the Local Council will be deemed to have waived any rights it may have against the Specified Insurance Policy with respect to such Non-Abuse Litigation Claim.

26.    **Corporate Action**.  As of the Effective Date, all actions contemplated by the Plan that require corporate action of the Debtors, or either of them, including actions requiring a vote of the National Executive Board or the National Executive Committee of the BSA or the sole member of Delaware BSA, and execution of all documentation incident to the Plan, shall be deemed to have been authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by the Bankruptcy Court, members, officers, or directors of the Debtors, Reorganized BSA, or any other Person.

27.    **Cancellation of Liens**.  Except as otherwise provided in the Plan, on the Effective Date, any Lien securing any Allowed Secured Claim (other than a Lien securing any Allowed Secured Claim that is Reinstated pursuant to the Plan, including, for avoidance of doubt, the liens

securing the Restated Debt and Security Documents) shall be deemed released and the holder of such Allowed Secured Claim shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral) held by such holder and to take such actions as may be requested by the Debtors (or Reorganized BSA, as the case may be) to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases as may be requested by the Debtors (or Reorganized BSA, as the case may be). A copy of this Order may be filed with the appropriate clerk and/or recorded in order to cancel any Liens, although such recordation shall not be required in order to effectuate the provisions of the Plan.

28.     **Approval of Releases, Injunctions, and Exculpations**. As set forth in the Confirmation Opinion, the releases, settlements, injunctions, and exculpations set forth in the Plan, including those set forth in Article X thereof, (i) are appropriate and consistent with the Bankruptcy Code and applicable law, (ii) are hereby approved and authorized in all respects, and (iii) shall be immediately effective and binding on all Persons and Entities on and after the Effective Date, to the extent provided in the Plan, without further order or action of this Court or any other party.

29.     **Post-Confirmation Interim Injunctions and Stays**. As set forth in Article X.D of the Plan:

> **All injunctions and stays in effect in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code that are in existence on the Confirmation Date shall remain in full force and effect until the latest to occur of, as applicable: the Effective Date, the Release Date (as defined in the applicable Insurance Settlement Agreement or other settlement agreement), and the Limited Protected Party Injunction Date (which Limited Protected Party Injunction Date shall be no later than one (1) year following the Effective Date except as provided in the Settlement Trust Agreement). To the extent not otherwise in place, pending the occurrence of the Release Date (as defined in the applicable Insurance Settlement Agreement), the United Methodist Release Effective Date (as defined in the United Methodist Settlement Agreement), or other release date set forth in any other settlement agreement, any Claim that would be released or subject to the Channeling Injunction upon the occurrence of conditions set forth in the Plan and in any applicable settlement agreement (including the occurrence of the Release Date or similar defined term (as**

defined in the applicable settlement agreement)) shall be stayed and enjoined pending satisfaction of such conditions. To the extent not otherwise in place, until the occurrence of the Limited Protected Party Injunction Date, any Claim against a Participating Chartered Organization shall be stayed and enjoined pending satisfaction of such conditions. The Post-Confirmation Interim Injunction shall permit the filing, but not the prosecution, of the Abuse Claims. The injunctions and stays referenced in Article X.D of the Plan include the preliminary injunction imposed by the *Consent Order Pursuant to 11 U.S.C. §§ 105(a) and 362 Granting the BSA's Motion for a Preliminary Injunction* entered by the Court on March 30, 2020 (Adv. Pro. No. 20-50527, Docket No. 54). Solely with respect to the United Methodist Entities, the Post-Confirmation Interim Injunction shall remain in full force and effect until the earliest to occur of (i) the United Methodist Release Effective Date, or (ii) the United Methodist Release Termination Date (as those terms are defined in the United Methodist Settlement Agreement).

30.   **Discharge of the Debtors**. As set forth in Article X.E.1 of the Plan:

Except as expressly provided in the Plan or the Confirmation Order, the treatment of Claims under the Plan shall be in exchange for, and in complete satisfaction, settlement, termination and release of, all Claims and Interests of any nature whatsoever against or in the Debtors or any of their assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are discharged pursuant to the terms of the Plan, and, as of the Effective Date, each of the Debtors shall be deemed discharged and released, and each holder of a Claim or Interest and any successor, assign, and affiliate of such holder shall be deemed to have forever waived and released each of the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights and liabilities, and all debts of the kind specified in section 502 of the Bankruptcy Code, based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, in each case whether or not (a) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (c) a Claim based upon such debt is or has been Disallowed by order of the Court, or (d) the holder of a Claim based upon such debt is deemed to have accepted the Plan. Notwithstanding the foregoing, nothing in Article X.E of the Plan shall be construed to modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Abuse Litigation Claim to recover on account of such Allowed Claim in accordance with Article III.B.9 and Article IV.D.3 of the Plan.

31.   **Discharge Injunction**. As set forth in Article X.E.2 of the Plan:

From and after the Effective Date, except as expressly provided in the Plan or the Confirmation Order, all holders of Claims or Interests of any nature

whatsoever against or in the Debtors or any of their assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date shall be precluded and permanently enjoined from taking any of the following actions on account of, or on the basis of, such Claims and Interests: (a) commencing or continuing any action or other proceeding of any kind against the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property; (b) enforcing, attaching, collecting, or recovering by any manner or means of judgment, award, decree or other against the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property; (c) creating, perfecting or enforcing any Lien or Encumbrance of any kind against the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property; or (d) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. The foregoing injunction shall extend to the successors and assigns of the Debtors (including Reorganized BSA) and its and their respective properties and interests in property.

32.    **Channeling Injunction**. As set forth in Article X.F of the Plan:

(a)    **Terms**. Notwithstanding anything to the contrary in the Plan or the Confirmation Order, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Abuse Claims Settlement, the Insurance Settlements, and the United Methodist Settlement, and to supplement, where necessary, the injunctive effect of the Discharge as provided in sections 1141 and 524 of the Bankruptcy Code and as described in Article X of the Plan, pursuant to the exercise of the equitable jurisdiction and power of the Court and the District Court under section 105(a) of the Bankruptcy Code, (a) the sole recourse of any holder of an Abuse Claim against a Protected Party on account of such Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Protected Party or any property or interest in property of any Protected Party, (b) the sole recourse of any holder of a Post-1975 Chartered Organization Abuse Claim against a Limited Protected Party on account of such Post-1975 Chartered Organization Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Post-1975 Chartered Organization Abuse Claim against any Limited Protected Party or any property or interest in property of any Limited Protected Party, (c) the sole recourse of any holder of an Abuse Claim against a Limited Protected Party if such Abuse Claim is covered under any insurance policy issued by any Settling Insurance Company shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Limited Protected Party or any property or interest in property of

any Limited Protected Party, (d) the sole recourse of any holder of an Opt-Out Chartered Organization Abuse Claim against an Opt-Out Chartered Organization on account of such Opt-Out Chartered Organization Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Opt-Out Chartered Organization Abuse Claim against any Opt-Out Chartered Organization or any property or interest in property of any Opt-Out Chartered Organization.  For the avoidance of doubt, the sole recourse for any holder of an Abuse Claim covered by any insurance policy issued by a Settling Insurance Company shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents. Accordingly, on and after the Effective Date, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Abuse Claim against the Protected Parties, or any of them, or any Post-1975 Chartered Organization Abuse Claim against the Limited Protected Parties, or any of them, or any Abuse Claim against the Limited Protected Parties (or any of them) if such Abuse Claim is covered under any insurance policy issued by any Settling Insurance Company, or any Opt-Out Chartered Organization Abuse Claim against the Opt-Out Chartered Organizations, or any of them, shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Protected Party with respect to any such Abuse Claim, or from any Limited Protected Party with respect to any such Abuse Claim if such Abuse Claim is covered under any insurance policy issued by any Settling Insurance Company, or from any Limited Protected Party with respect to any such Post-1975 Chartered Organization Abuse Claim, or from any Opt-Out Chartered Organization with respect to any Opt-Out Chartered Organization Abuse Claim, other than from the Settlement Trust pursuant to the Settlement Trust Documents, including:

(i)     commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization, or any property or interest in property of any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization;

(ii)    enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any property or interest in property of any Protected Party,

Limited Protected Party, or Opt-Out Chartered Organization;

(iii)    creating, perfecting, or otherwise enforcing in any manner, whether directly or indirectly, any Encumbrance of any kind against any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization, or any property or interest in property of any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization;

(iv)    asserting, implementing or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization, or any property or interest in property of any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization; or

(v)    taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Abuse Claim, Post-1975 Chartered Organization Abuse Claim, Pre-1976 Chartered Organization Abuse Claim, or Opt-Out Chartered Organization Abuse Claim.

(b)    **Limited Protected Party Injunction**. The injunction set forth in **Article X.F.2** of the Plan and this subparagraph (the "**Limited Protected Party Injunction**") shall stay the prosecution of any Abuse Claim that was commenced prior to or after the Effective Date against a Chartered Organization through the later of (i) forty-five (45) days after the resolution of the Abuse Claim that is subject to the Independent Review under the Trust Distribution Procedures or (ii) the Limited Protected Party Injunction Date.

(c)    **Protections for Insureds and Co-Insureds of Settling Insurance Companies**. As set forth in Article X.F.3 of the Plan:

All Abuse Claims against insureds and co-insureds covered under any insurance policies issued by the Settling Insurance Companies shall be channeled under

Article X.F.1 and released under Article X.J.6 of the Plan as provided in the Insurance Settlement Agreements. Solely for purposes of administering the Channeling Injunctions and releases in the Plan and in the Confirmation Order, and not for any other purpose, any liability insurance policy (other than an automobile policy or director's and officer's policy) that was issued by the Settling Insurance Companies shall be automatically deemed to "cover" or provide "coverage" for an Abuse Claim against a Chartered Organization if (i) such policy includes the Chartered Organization, by name or by referring to Chartered Organizations categorically as chartered organizations, charters, sponsoring organizations, or sponsors, as insureds or additional insureds, (ii) such policy was in effect when the alleged Abuse underlying such Abuse Claim allegedly took place; and (iii) such policy does not specifically exclude all abuse or molestation, regardless of state of mind; *provided, however*, that nothing in the qualifications for coverage specified in subsections (i), (ii) and (iii) of this subparagraph and in subsections (i), (ii) and (iii) of Article X.F.3 of the Plan shall be offered or interpreted as an admission by the Settling Insurance Companies of any fact or issue for any purpose in any other proceeding or litigation or dispute, and shall not be cited as a basis to impose liability on, or increase the liability of, any Settling Insurance Company under any circumstance or any insurance policy. For the avoidance of doubt, nothing in the Plan or the Confirmation Order prevents a Settling Insurance Company or its insureds from seeking to establish that other insurance policies cover Abuse Claims for purposes of applying the Channeling Injunction and Releases.

(d)      The protections provided under Article X.F.3 of the Plan shall apply, without limitation, to all insureds and co-insureds covered under insurance policies that are sold back to the Settling Insurance Companies pursuant to the terms of the Plan or an Insurance Settlement Agreement.

(e)      **Reservations. As set forth in Article X.F.4 of the Plan, notwithstanding anything to the contrary in Article X.F, the Channeling Injunction shall not enjoin:**

(i)      **the rights of holders of Abuse Claims to assert such Abuse Claims against the Settlement Trust in accordance with the Trust Distribution Procedures, including the ability to pursue the Settlement Trust in the tort system as described in Article XII of the Trust Distribution Procedures;**

(ii)      **the rights of holders of Abuse Claims to assert such an Abuse Claim against (i) a Limited Protected Party for Abuse Claims that arose prior to January 1, 1976, and are not covered by any insurance policy issued by a Settling Insurance Company and (ii) an Opt-Out Chartered Organization to the extent such Abuse Claim is not covered by any insurance policy issued by a Settling Insurance Company;**

(iii)      **the rights of holders of Abuse Claims that are not Opt-Out**

Chartered Organization Abuse Claims to assert such Abuse Claims against any Opt-Out Chartered Organization (unless such Opt-Out Chartered Organization becomes a Protected Party under **Article IV.J** of the Plan);

(iv)   the rights of holders of Abuse Claims to assert such Abuse Claims against the Settlement Trust (as to any Abuse Claim) or against the United Methodist Entities (as to any Abuse Claim other than Pre-1976 Chartered Organization Abuse Claims and Post-1975 Chartered Organization Abuse Claims) prior to the United Methodist Release Effective Date (as that term is defined in the United Methodist Settlement Agreement), in each case for the sole purpose of preserving the statute of limitations. For the avoidance of doubt, such actions shall be limited to the commencement of an action against, and serving, as applicable, the Settlement Trust, to which such Claims have been channeled, or the United Methodist Entities;

(v)   the rights of any Person to assert any Claim, debt, obligation or liability for payment of Settlement Trust Expenses solely against the Settlement Trust in accordance with the Settlement Trust Documents;

(vi)   the Settlement Trust from enforcing its rights under the Plan and the Settlement Trust Documents;

(vii)   the rights of the Settlement Trust to prosecute any action against any Non-Settling Insurance Company based on or arising from Abuse Insurance Policies that are not the subject of an Insurance Settlement Agreement, subject to any Insurance Coverage Defenses;

(viii)   the rights of the United Methodist Entities against the Settlement Trust to enforce the terms of the Channeling Injunction as set forth in the United Methodist Settlement; or

(ix)   the rights of the Settling Insurance Companies to enforce the terms of the Channeling Injunction as otherwise set forth in the Plan or this Order and in the Insurance Settlement Agreements.

33.   **Local Council Insurance Rights, Contributing Chartered Organization Insurance Rights or Participating Chartered Organization Insurance Rights.** Consistent with the reservations set forth in Article X.F.4.g. regarding the rights of the Settlement Trust to pursue insurance rights, if the savings clause under Article V.S.1.a-c under the Plan (referenced at page

255 of the Confirmation Opinion) is utilized, nothing in the Confirmation Opinion, Plan, or this Order, including, without limitation, the injunctions and releases provided in Article X of the Plan shall impact (i) the rights of Local Councils, Contributing Chartered Organizations, or Participating Chartered Organizations to prosecute any action against any Non-Settling Insurance Company based on or arising from Abuse Insurance Policies that are not the subject of an Insurance Settlement Agreement, subject to any Insurance Coverage Defenses; or (ii) the legal liability of the Local Council, Contributing Chartered Organization, or Participating Chartered Organization, for purposes of pursuing insurance rights for the benefit of the Settlement Trust.

34.    **Abuse Claims Under Policies Issued to Chartered Organizations**. As set forth in Article X.G.1 of the Plan, the release by the Participating Chartered Organizations and Contributing Chartered Organizations of the Settling Insurance Companies from all the Claims and Causes of Action as set forth in each of the Insurance Settlement Agreements (and corresponding rights of the Settling Insurance Companies) are subject to the following:[4]

(a)    Such Chartered Organizations are not barred from seeking defense and indemnification for claims that are not Abuse Claims under insurance policies issued by the Settling Insurance Companies directly to such Chartered Organizations, with all parties reserving their rights as to whether such insurance policies apply and to what extent. All supporting parties to the Plan, as applicable, agree to cooperate to enforce the Post-Confirmation Interim Injunction and the Channeling Injunction to eliminate all or a portion of the Mixed Claims against the applicable Chartered Organizations.

---

[4]    As set forth in Article V.S.1.g(v) of the Plan, the insurance policies issued directly to the BSA and the Local Councils were, by definition, not issued to the Chartered Organizations and are not subject to Article X.G.1 of the Plan.

(b)    Such Chartered Organizations are not barred from seeking defense and indemnification for that portion of Mixed Claims unrelated to Scouting under insurance policies issued by the Settling Insurance Companies directly to such Chartered Organizations, with all parties reserving their rights as to whether such insurance policies apply and to what extent. All Parties agree to cooperate to enforce the Post-Confirmation Interim Injunction and the Channeling Injunction to eliminate all or a portion of the Mixed Claims against the applicable Chartered Organizations.

(c)    Such Chartered Organizations are not barred from seeking defense and indemnification under insurance policies issued by the Settling Insurance Companies directly to such Chartered Organizations pending determination by a court of competent jurisdiction as to whether a Claim is a channeled Abuse Claim, with all parties reserving their rights as to whether such insurance policies apply and to what extent.

(d)    To the extent a court determines that a claim against such Chartered Organizations is not an Abuse Claim or is not subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Plan, such Chartered Organizations may seek defense and indemnification of that claim under insurance policies issued by the Settling Insurance Companies directly to such Chartered Organizations, with all parties reserving their rights as to whether such insurance policies apply and to what extent.

(e)    To the extent a court determines that a claim against such Chartered Organizations is subject to the Post-Confirmation Interim Injunction or the Channeling Injunction in the Plan, the Settling Insurance Companies shall have no further obligations with respect to such claim. For the avoidance of doubt, and consistent with Article X.G.1.c of the Plan, Participating Chartered Organizations and Contributing Chartered Organizations retain the right to seek coverage from the Settling Insurance Companies under policies issued directly to such Chartered

42

Organizations for defense costs incurred in connection with the enforcement of the injunction with respect to an Abuse Claim until the time the Abuse Claim is determined to be an Abuse Claim by a court.

(f)     The Settlement Trust shall cooperate with any efforts by such Chartered Organizations and/or the Settling Insurance Companies to establish that the Post-Confirmation Interim Injunction, the Insurance Entity Injunction, and the Channeling Injunction apply.

(g)     The Settling Insurance Companies reserve all rights under their policies with respect to any Claim that is not an Abuse Claim (including the non-Scouting component of any Mixed Claim), none of which rights are waived or released hereunder.

35.    **Enforcement of the Injunctions**.  Any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization may enforce the Channeling Injunction as a defense to any Claim (in whole or in part) brought against such Protected Party, Limited Protected Party, or Opt-Out Chartered Organization that is enjoined under the Plan as to such Protected Party, Limited Protected Party, or Opt-Out Chartered Organization and may seek to enforce such injunction in this Court or another court of competent jurisdiction.  The Settling Insurance Companies are beneficiaries of all the injunctions as set forth in Article X of the Plan, including the Channeling Injunction, the Insurance Entity Injunction and the Post-Confirmation Interim Injunction, and have standing to enforce them.  All Claims that will be released or enjoined under any provision of Article X of the Plan upon the occurrence of the Release Date are and shall be stayed and enjoined pending the satisfaction of the conditions to the Release Date (as set forth in the Plan and as defined in the respective Insurance Settlement Agreements).  The Protected Parties (including the Settling Insurance Companies) have and shall retain standing under the Plan to object to any Claims filed in the Chapter 11 Cases by or on behalf of any Opt-Out Chartered Organization being adjudicated by the Bankruptcy Court.  Such Opt-Out Chartered Organizations have received the benefits of

the Channeling Injunction and release of Abuse Claims to the extent covered by insurance policies issued by a Settling Insurance Company as provided in the Plan and the Insurance Settlement Agreements.

36.  **Insurance Entity Injunction**.

(a)  **Purpose**.  As set forth in Article X.H.1 of the Plan:

**To facilitate the Insurance Assignment (as modified by paragraph II.I.2 of this Order), protect the Settlement Trust, and preserve the Settlement Trust Assets, pursuant to the equitable jurisdiction and power of the Court and the District Court under section 105(a) of the Bankruptcy Code, the Bankruptcy Court shall issue the injunction set forth in Article X.H of the Plan (the "Insurance Entity Injunction"); provided, however, that the Insurance Entity Injunction is not issued for the benefit of any Non-Settling Insurance Company, and no Non-Settling Insurance Company is a third-party beneficiary of the Insurance Entity Injunction, except as otherwise specifically provided in any Insurance Settlement Agreement.**

(b)  **Terms Regarding Claims against Insurance Companies**.  As set forth in Article X.H.2 of the Plan:

**Subject to the terms of Article X.E and Article X.F of the Plan, except for Opt-Out Chartered Organizations with respect to Non-Settling Insurance Companies and Participating Chartered Organizations with respect to Non-Settling Insurance Companies coverage for Abuse Claims that arose prior to January 1, 1976, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any claim or cause of action (including any Abuse Claim or any claim for or respecting any Settlement Trust Expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Abuse Insurance Policy or other insurance policy issued by a Settling Insurance Company covering Abuse Claims, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such claim or cause of action, including:**

(i)  **commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such claim, demand, or cause of action against any Insurance Company, or**

against the property of any Insurance Company, with respect to any such claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such claim, demand, or cause of action against any Insurance Company);

(ii)    enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such claim or cause of action;

(iii)    creating, perfecting, or enforcing in any manner, directly or indirectly, any Lien or Encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such claim or cause of action; and

(iv)    except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such claim or cause of action;

provided, however, that: (i) the injunction set forth in Article X.H of the Plan shall not impair in any way any (a) actions brought by the Settlement Trust against any Non-Settling Insurance Company, (b) actions brought by Local Councils in connection with any Local Council Reserved Rights, (c) any actions brought by any Chartered Organization relating to an Abuse Claim against a Non-Settling Insurance Company that is not channeled to the Settlement Trust, (d) actions brought by holders of Non-Abuse Litigation Claims consistent with Article IV.D.3 of the Plan, (e) the rights, if any, of any Opt-Out Chartered Organization under any Abuse Insurance Policy that was issued by a Non-Settling Insurance Company, or (f) except as provided in any applicable Insurance Settlement Agreement, the rights of any co-insured of the Debtors (x) under any Non-Abuse Insurance Policy and (y) as specified under any Final Order of the Bankruptcy Court approving an Insurance Settlement Agreement; and (ii) the Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction set forth in Article X.H with respect to any Non-Settling Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Non-Settling Insurance Company, except that the Settlement Trust shall not have any authority to terminate, reduce or limit the scope of the injunction in the Plan or this Order with respect to any Settling Insurance Company.

(c)     <u>Reservations</u>.  As set forth in <u>Article X.H.3</u> of the Plan:

**Notwithstanding anything to the contrary in <u>Article X.H</u>, the Insurance Entity Injunction shall not enjoin:**

(i)     **the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of holders of Abuse Claims to assert such Claims, as applicable, in accordance with the Trust Distribution Procedures, and the rights of holders of Non-Abuse Litigation Claims to assert such Claims, as applicable in accordance with <u>Article IV.D.3</u> of the Plan;**

(ii)    **the rights of any Person to assert any claim, debt, obligation, cause of action or liability for payment of Settlement Trust Expenses against the Settlement Trust;**

(iii)   **the rights of the Settlement Trust to prosecute any action based on or arising from Abuse Insurance Policies, except to the extent otherwise released;**

(iv)    **the rights of any Person to assert or prosecute (a) an Abuse Claim against an Opt-Out Chartered Organization to the extent that such Claim is not covered under an insurance policy issued by a Settling Insurance Company, or (b) an Abuse Claim against a Limited Protected Party for Abuse Claims that arose prior to January 1, 1976, and is not covered by any insurance policy issued by a Settling Insurance Company;**

(v)     **the rights of the Settlement Trust to assert any claim, debt, obligation, cause of action or liability for payment against a Non-Settling Insurance Company based on or arising from the Abuse Insurance Policies;**

(vi)    **the rights of any Insurance Company to assert any claim, debt, obligation, cause of action or liability for payment against any Non-Settling Insurance Company;**

(vii)   **the claims for reinsurance under reinsurance contracts or claims under retrocessional contracts between and among the Settling Insurance Companies and other insurance companies; or**

(viii)  **the rights of any Insurance Company to assert any claims for contribution, subrogation, indemnification or other similar Cause of Action against the Settlement Trust for the Settling Insurance Companies' alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or**

indemnity obligation for any Abuse Claim, or for any Cause of Action released in any Insurance Settlements, subject in all circumstances to the limitations set forth in paragraph 51 of this Order.

37. **Injunction Against Interference with Plan**. In accordance with **Article X.I** of the Plan, upon entry of this Order, all holders of Claims and Interests shall be precluded and enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

38. **Releases by the Debtors and the Estates of the Released Parties**. As set forth in Article X.J.1 of the Plan:

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the actions of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the Abuse Claims Settlement, the JPM / Creditors' Committee Settlement, the Insurance Settlements, and the United Methodist Settlement as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Insurance Settlements, the United Methodist Settlement, or any related agreements, instruments, and other documents

created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in <u>Article X.J.1</u> of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of such Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

39.    <u>**Releases by the Debtors and the Estates of Certain Avoidance Actions.**</u>  As set forth in <u>Article X.J.1</u> of the Plan:

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the actions of Creditors' Committee and its members in their respective capacities as such in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Abuse Litigation Claims, and Convenience Claims of and from any and all Avoidance Actions.

40.    <u>**Releases by the Debtors and the Estates of the Local Councils, the Contributing Chartered Organizations, the Participating Chartered Organizations, the Opt-Out Chartered Organizations and the Settling Insurance Companies.**</u>  As set forth in <u>Article X.J.2</u> of the Plan:

In furtherance of the Abuse Claims Settlement, on the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, on their own behalf and as representatives of their respective Estates, and Reorganized BSA, are deemed to irrevocably and unconditionally, fully, finally, and forever waive, release, acquit, and discharge each and all of the Local Councils, the Contributing Chartered Organizations, the Participating Chartered Organizations, the Opt-Out Chartered Organizations, and the Settling Insurance Companies of and from any and all claims, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements,

promises, damages, judgments, executions and demands whatsoever, of whatever kind or nature (including those arising under the Bankruptcy Code), whether known or unknown, suspected or unsuspected, in law or in equity, which the Debtors, their Estates, or Reorganized BSA have, had, may have, or may claim to have: (a) against any of the Local Councils and Contributing Chartered Organizations with respect to any Abuse Claims, (b) against any of the Participating Chartered Organizations with respect to any Post-1975 Chartered Organization Abuse Claims, (c) against any of the Participating Chartered Organizations with respect to any Pre-1976 Chartered Organization Abuse Claims, (d) against any of the Opt-Out Chartered Organizations with respect to any Opt-Out Chartered Organization Abuse Claims, and (e) against any Settling Insurance Company with respect to any coverage for Abuse Claims and all other claims and causes of action specified in the applicable Insurance Settlement Agreements  (collectively, the "<u>Scouting Released Claims</u>").  For the avoidance of doubt, the rights of Settling Insurance Companies that are assigned to the Settlement Trust are not released.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in <u>Article X.J.2</u> of the Plan shall not, and shall not be construed to release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.  For the avoidance of doubt, in the event of any conflict or inconsistency between <u>Article X.J.2</u> and the preceding <u>Article X.J.1</u>, <u>Article X.J.2</u> of the Plan shall control.

41.    <u>Releases by Holders of Abuse Claims</u>.  As set forth in <u>Article X.J.3</u> of the Plan:

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the actions of the Protected Parties and the Limited Protected Parties to facilitate and implement the reorganization of the Debtors, including the settlements embodied in the Plan, including the Abuse Claims Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all holders of Abuse Claims shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release  (a) each and all of the Protected Parties and their respective property and successors and assigns of and from all Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Abuse Claims; (b) each and all of the Limited Protected Parties and their respective property and successors and assigns of and from all Post-1975 Chartered

Organization Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Post-1975 Chartered Organization Abuse Claims; (c) each of the Participating Chartered Organizations with respect to any Pre-1976 Chartered Organization Abuse Claims and their respective property and successors and assigns of and from all Pre-1976 Chartered Organization Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Pre-1976 Chartered Organization Abuse Claims; and (d) each and all of the Opt-Out Chartered Organizations and their respective property and successors and assigns of and from all Opt-Out Chartered Organization Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Opt-Out Chartered Organization Abuse Claims; provided, however, that the releases set forth in Article X.J.3 of the Plan shall not, and shall not be construed to: (i) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (ii) modify, reduce, impair or otherwise affect the ability of any holder of an Abuse Claim to recover on account of such Claim in accordance with Article III.B.10 or Article III.B.11 of the Plan, as applicable. For the avoidance of doubt, holders of Abuse Claims covered by any insurance policy issued by a Settling Insurance Company shall, and shall be deemed to, release and discharge the Settling Insurance Companies for such Claims. The releases in Article X.J.4 of the Plan shall not, and shall not be deemed to, limit the releases in Article X.J.3 of the Plan.

42.    **Releases by Holders of Claims.** As set forth in Article X.J.4 of the Plan:

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the actions of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the JPM / Creditors' Committee Settlement, the Insurance Settlements, and the United Methodist Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law,

as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Insurance Settlements, the United Methodist Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; **provided, however,** that the releases set forth in **Article X.J.4** of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of such Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Abuse Litigation Claim to recover on account of such Allowed Claim in accordance with **Article III.B.9** of the Plan. Notwithstanding the foregoing or anything to the contrary in the Plan or the Confirmation Order, (i) with respect to holders of Allowed General Unsecured Claims or Allowed Non-Abuse Litigation Claims, nothing in the Plan or the release set forth in **Article X.J.4** of the Plan shall, or shall be construed to, release any such claims or Causes of Action against any Local Council, Chartered Organization, or Insurance Company (subject to **Article IV.D.3**) and (ii) nothing in the Plan or the release set forth in **Article X.J.4** of the Plan shall, or shall be construed to, release any claims or Causes of Action asserted by Century and Chubb Companies against Sidley Austin LLP ("**Sidley**") related to Sidley's representation of the Debtors and/or Century and Chubb Companies.

43.    **Releases Among Contributing Chartered Organizations and Settlement**

**Parties.** Article X.J.5 of the Plan, as modified herein, provides:

(a)    **In furtherance of the Abuse Claims Settlement, as of the date that the Confirmation Order becomes a Final Order, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Confirmation Order, and the terms of the United Methodist Settlement Agreement, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Contributing Chartered Organizations, including the United Methodist Entities, shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge the Debtors, Reorganized BSA, the Related Non-Debtor Entities, the Local Councils, the other Protected Parties, the Limited Protected Parties, the Settling Insurance Companies, the Future Claimants' Representative, the Coalition, the Tort Claimants' Committee, the Settlement Trust, and each of its and their respective Representatives (collectively, the "Settlement Parties"), of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the date that the Confirmation Order becomes a Final Order (including before the Petition Date) in connection with or related to (i) Abuse Claims, (ii) the Chapter 11 Cases, (iii) the Plan, or (iv) any Claims relating to the Debtors or the Related Non-Debtor Entities that were or could have been asserted by the Contributing Chartered Organizations against the Settlement Parties or any of them.**

(b)    **In furtherance of the Abuse Claims Settlement, as of the date that the Confirmation Order becomes a Final Order, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Confirmation Order, and the terms of the United Methodist Settlement Agreement, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Settlement Parties shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each of the Contributing Chartered Organizations, including the United Methodist Entities, of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any**

52

act, omission, transaction, event, or other circumstance taking place or existing on or before the date that the Confirmation Order becomes a Final Order (including before the Petition Date) in connection with or related to (i) Abuse Claims, (ii) the Chapter 11 Cases, (iii) the Plan, or (iv) any Claims relating to the Debtors or the Related Non-Debtor Entities that were or could have been asserted by the Settlement Parties against the Contributing Chartered Organizations or any of them.

44.    **Releases Relating to Settling Insurance Companies**. As set forth in Article X.J.6

of the Plan:

> Notwithstanding anything to the contrary, the releases of Settling Insurance Companies and certain other parties, and the releases by Settling Insurance Companies, each as set forth in the Insurance Settlement Agreements, are incorporated by reference as if fully set forth in the Plan or the Confirmation Order, and control and supplement any release otherwise contained in the Plan or the Confirmation Order. Nothing in the Plan or the Confirmation Order shall reduce the scope of any such releases as set forth in the Insurance Settlement Agreements. In addition, nothing in the Plan or the Confirmation Order will release claims under reinsurance contracts or retrocessional contracts between or among the Settling Insurance Companies and other insurance companies.

45.    **Releases Relating to the United Methodist Entities**. As set forth in Article X.J.8

of the Plan:

> The releases to the United Methodist Entities, and the releases by the United Methodist Entities, each as set forth in the United Methodist Settlement Agreement, are incorporated by reference as if fully set forth in the Plan and the Confirmation Order and shall not be interpreted as limiting any release, injunction, or similar benefit to the United Methodist Entities set forth in the Plan and/or the Confirmation Order.

46.    **Exculpation**.[5] As set forth in Article X.K of the Plan:

From and after the Effective Date, none of the Exculpated Parties[6] shall have or

---

[5]    The Debtors have addressed the Court's three concerns set forth in the Confirmation Opinion with respect to exculpation.

[6]    "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) the Creditors' Committee; (c) the members of the Creditors' Committee in their capacities as such; (d) the Tort Claimants' Committee; (e) the members of the Tort Claimants' Committee in their capacities as such; (f) the Future Claimants' Representative; (g) all of the Debtors' current officers and directors, and former officers and directors who served in such capacity during any portion of the Chapter 11 Cases; and (h) each of the Debtors', Creditors' Committee's, Tort Claimants' Committee's or Future Claimants' Representative's employees, volunteers, agents, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals (each in their capacity as such); *provided, however*, that no such Person described in the foregoing clause (i) shall be an

incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or after the Petition Date up to and including the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the JPM / Creditors' Committee Settlement, the Insurance Settlements, the United Methodist Settlement Agreement, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence. Notwithstanding the foregoing or any provision of the Plan to the contrary, Sidley shall not be an Exculpated Party with respect to any claims by Century and Chubb Companies against Sidley related to Sidley's representation of the Debtors and/or Century and Chubb Companies.

47.  **Injunction Related to Releases and Exculpation**.

(a)  **Injunction Related to Releases.** As set forth in <u>Article X.L.1</u> of the Plan:

**As of the Effective Date, all holders of Claims that are the subject of <u>Article X.J</u> of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under <u>Article X.E</u> of the Plan or released under <u>Article X.J</u>; <u>provided</u>, <u>however</u>, that the injunctions set forth in <u>Article X.L.1</u> of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is only the subject of <u>Article X.J.4</u> (and no other release set forth in <u>Article X.J</u> of the Plan including <u>Articles X.J.6</u> and <u>X.J.7</u>) from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.**

Exculpated Party unless such Person was employed or engaged in such capacity on or after the Petition Date or, in the case of any professional, was retained in these Chapter 11 Cases by order of the Bankruptcy Court.

(b)    **Injunction Related to Exculpation.**  As set forth in Article X.L.2 of the

Plan:

**As of the Effective Date, all holders of Claims that are the subject of Article X.K of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; and/or (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; provided, however, that the injunctions set forth in Article X.L.2 of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of Article X.K of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct. Notwithstanding anything set forth in this paragraph, any set off right with respect to an assumed Executory Contract or Unexpired Lease shall be governed by applicable law, including the terms of such assumed Executory Contract or Unexpired Lease.**

48.    **Insurance Provisions.**  Article X.M of the Plan, as modified herein, provides:

(a)    Except for the Insurance Assignment (and subject to paragraph II.I.2 of this

Order), or as otherwise provided in the Bankruptcy Code, applicable law, the findings made by

this Court in the Confirmation Order, nothing in the Plan shall modify, amend, or supplement, or

be interpreted as modifying, amending, or supplementing, the terms of any Insurance Policy issued

by a Non-Settling Insurance Company or rights or obligations under such Insurance Policy to the

extent such rights and obligations are otherwise available under applicable law, and the rights and

obligations, if any, of any Non-Settling Insurance Company relating to or arising out of the Plan

Documents, including the Plan, the Confirmation Order, or any provision thereof, shall be

determined pursuant to the terms and provisions of the Insurance Policies and applicable law.

(b)    No provision of the Plan, other than those provisions contained in the applicable Injunctions contained in Article X of the Plan, shall be interpreted to affect or limit the protections afforded to any Settling Insurance Company by the Channeling Injunction and the Insurance Entity Injunction.

(c)    Nothing in Article X.M of the Plan is intended or shall be construed to preclude otherwise applicable principles of *res judicata* or collateral estoppel from being applied against any Person.

49.    **Reservation of Rights**.  As set forth in Article X.O of the Plan:

Notwithstanding any other provision of the Plan to the contrary, no provision of Article X of the Plan shall be deemed or construed to satisfy, discharge, release or enjoin claims by the Settlement Trust, Reorganized BSA, or any other Person, as the case may be, against (a) the Settlement Trust for payment of Abuse Claims in accordance with the Trust Distribution Procedures, (b) the Settlement Trust for the payment of Settlement Trust Expenses, or (c) any Insurance Company that has not performed under an Insurance Policy (to the extent such Insurance Policy is not the subject of an Insurance Settlement Agreement) or an Insurance Settlement Agreement.

50.    **Reinsurance**.    Notwithstanding any terms or provisions in the Plan, Plan Documents, Insurance Settlements, Settlement Trust Documents (including the Trust Distribution Procedures), this Order, any finding of fact and/or conclusion of law with respect to Confirmation of the Plan (including any other provision that purports to be preemptory or supervening), (i) no Insurance Company's claims for reinsurance under reinsurance contracts or claims under retrocessional contracts against any other Insurance Company shall be affected, impaired, enjoined, channeled, or released, and (ii) no Insurance Company shall be required to file or have filed a proof of claim or sought a recovery from the Settlement Trust as a condition to pursuing, enforcing or otherwise collecting on claims against any other Insurance Company under any such reinsurance or retrocessional contracts.

51.    **Claims by Non-Settling Insurance Companies With Respect to Coverage Provided by Settling Insurance Companies**.

(a)      Notwithstanding any terms or provisions in the Plan, Plan Documents, Insurance Settlements, Settlement Trust Documents (including the Trust Distribution Procedures), this Order, any finding of fact and/or conclusion of law with respect to Confirmation of the Plan (including any other provision that purports to be preemptory or supervening), any right, claim or cause of action for contribution, subrogation, equitable subrogation, indemnification, allocation, reimbursement or offset relating to one or more Abuse Claims that a Non-Settling Insurance Company is or may have been entitled to assert against any Settling Insurance Company but for the Channeling Injunction, the Insurance Entity Injunction or other protections in the Plan shall be channeled to and become a right, claim or cause of action solely against the Settlement Trust (or to the extent the saving clause in Article V.S.1 applies, the Protected Party or Limited Protected Party) and not against the Settling Insurance Company in question, and the sole recourse of the Non-Settling Insurance Company asserting such claim against the Settlement Trust (or to the extent the saving clause in Article V.S.1 applies, the Protected Party or Limited Protected Party) shall be by means of judgment reduction as provided herein. Such right, claim or cause of action may be asserted in any Insurance Action against the Settlement Trust (or to the extent the saving clause in Article V.S.1 applies, the Protected Party or Limited Protected Party) even though the Settling Insurance Company in question is not a party thereto and regardless of whether such right, claim or cause of action relates to the cost of defending or indemnifying, or both, one or more Abuse Claims.

(b)      If a Non-Settling Insurance Company obtains a final and non-appealable judicial determination or binding arbitration award in any Insurance Action, that it would have been entitled to recover a sum certain on its right, claim or cause of action against a Settling Insurance Company for contribution, subrogation, equitable subrogation, indemnification, allocation, reimbursement or offset relating to one or more Abuse Claims, or the Settlement

57

Trustee (or to the extent the saving clause in Article V.S.1 applies, the Protected Party or Limited Protected Party) agrees to such entitlement to such sum certain, upon such determination or award in the Insurance Action, the liability for such sum certain or such agreement shall be satisfied solely by the Settlement Trust (or to the extent the saving clause in Article V.S.1 applies, the Protected Party or Limited Protected Party) reducing or limiting any claim, cause of action or judgment it has against the Non-Settling Insurance Company for recovery on any Abuse Claim that gave rise to such right, claim or cause of action for contribution, subrogation, equitable subrogation, indemnification, allocation, reimbursement or offset. The Settlement Trust (or to the extent the saving clause in Article V.S.1 applies, the Protected Party or Limited Protected Party) shall not seek to enforce any judicial determination or binding arbitration award it has obtained against a Non-Settling Insurance Company that is seeking such reduction until the Settlement Trust's (or to the extent the saving clause in Article V.S.1 applies, the Protected Party's or Limited Protected Party's) judgment or award becomes final and non-appealable. Post-judgment interest shall not accrue with respect to the portion of any such claim that is so reduced by a Final Order as a result of a claim for contribution, subrogation, equitable subrogation, indemnification, allocation, reimbursement or offset relating to one or more Abuse Claims.

(c)    **Pursuant to the Channeling Injunction, the Insurance Entity Injunction and the other protections in the Plan, and except to the extent the saving clause in Article V.S.1.a-c concerning Local Councils and Chartered Organizations applies, the Protected Parties, including the Settling Insurance Companies, shall not be made parties to any Insurance Action.**

52.    **Participating Chartered Organizations**.  Notwithstanding anything to the contrary, nothing in the Plan or this Order shall affect a Participating Chartered Organization's rights in and to Insurance Policies issued by a Non-Settling Insurance Company (at least unless

and until it becomes a Settling Insurance Company) that relate to, or provide coverage for, Abuse Claims that relate to Abuse alleged to have first occurred prior to January 1, 1976 (if any such rights exist), and all such rights shall be preserved.

53.    **Chartered Organization Liability**.  Nothing in the Plan, this Order, the Trust Distribution Procedures, any related documents, or in the allowance of Direct Abuse Claims under the Trust Distribution Procedures constitutes a determination of any kind (including as to liability or amount) with respect to the liability of a Chartered Organization with respect to a claim (or any portion of a claim) that is not subject to a Channeling Injunction.

54.    **Prepetition Insurance Coverage Actions Stay**. As set forth in the Confirmation Opinion, any of the Non-Settling Insurance Companies and/or the Settlement Trustee may only resume the prepetition Insurance Coverage Actions ninety (90) days or more after the Effective Date, *provided* that in accordance with the applicable Insurance Settlement Agreement, nothing in this provision shall permit an Insurance Coverage Action to proceed by or against a Settling Insurance Company.

55.    **Pension Plan**.  Notwithstanding any provision in this Order to the contrary, no provision contained in the Plan, this Order, the Bankruptcy Code (including section 1141 of the Bankruptcy Code), or any other document filed or order entered in the Chapter 11 Cases shall be construed to exculpate, discharge, release or relieve the Debtors, the Local Councils, or any other party, in any capacity, from any liability or responsibility to any Person with respect to the Pension Plan under any law, governmental policy, or regulatory provision.  The Pension Plan shall not be enjoined or precluded from enforcing any such liability or responsibility as a result of any of the provisions of the Plan (including those provisions providing for exculpation, satisfaction, and release of Claims against the Debtors), this Order, the Bankruptcy Code (including section 1141

of the Bankruptcy Code), or any other document filed or order entered in the Chapter 11 Cases. The Settlement Trust shall not have any liability to any Person on account of the Pension Plan.

56.    As of the Effective Date, Reorganized BSA shall assume and continue the Pension Plan to the extent of its obligations under the Pension Plan and applicable law, including, as applicable, (1) satisfaction of the minimum funding requirements under 26 U.S.C. §§ 412 and 430 and 29 U.S.C. §§ 1082 and 1083, (2) payment of all required Pension Benefit Guaranty Corporation premiums in accordance with 29 U.S.C. §§ 1306 and 1307, and (3) administration of the Pension Plan in all material respects in accordance with the applicable provisions of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301 et seq., and the Internal Revenue Code. Notwithstanding the foregoing, Reorganized BSA reserves all of its rights under the Pension Plan. All Proofs of Claim filed by the Pension Benefit Guaranty Corporation with respect to the Pension Plan shall be deemed withdrawn on the Effective Date.

57.    **Scouting University**. In accordance with the Purchase and Sale Agreement dated May 17, 2021 with respect to the sale of Scouting University, which was approved by the Court pursuant to the *Order, Pursuant to Section 363 of the Bankruptcy Code, Authorizing the Sale of Certain Real Property Located in Westlake Texas* on June 14, 2021 [D.I. 5326], entry of this Order shall constitute the Court's further approval of the Purchase and Sale Agreement. The Debtors are authorized to release the net proceeds of the sale from the segregated account, which will comprise part of the calculation of Net Unrestricted Cash and Investments, as set forth in the Plan.

58.    **Texas Taxing Authorities**. Notwithstanding anything in the Plan or this Order to the contrary, any Allowed Claims of Anderson County, Texas, Denton County, Texas, Harrison Central Appraisal District, Harrison County, Texas, Henderson County, Texas, Midland Central Appraisal District, Texas, Milam County, Texas, Terry County Appraisal District, Texas, and Williamson County, Texas (collectively, the "Texas Taxing Authorities" and such claims, the

"Texas Taxing Authorities Claims"), to the extent they are validly Secured under the Texas Tax Code or other applicable law, shall be classified as "Other Secured Claims" and Reorganized BSA shall pay the Texas Taxing Authorities Claims, to the extent such claims are not contested, otherwise settled, or Disallowed, in full in cash on the later of (a) within ten business days of the Effective Date, or as soon as is reasonably practical thereafter, and (b) when such amounts become due and owing under applicable law (subject to any applicable extensions, grace periods, or similar rights under applicable law). The Texas Taxing Authorities Claims shall include all accrued interest properly charged under applicable non-bankruptcy law through the date of payment, to the extent the Texas Taxing Authorities Claims are Secured and to the extent that the Texas Tax Code provides for such interest; *provided* that, the Debtors' and Reorganized BSA's defenses and rights to object to such claims or to the inclusion of such interest are fully preserved. The prepetition and post-petition tax liens, if any, of the Texas Taxing Authorities, to the extent they are entitled to such liens, shall be expressly retained in accordance with applicable non-bankruptcy law until the applicable taxes are paid in full. Any post-petition ad valorem tax liabilities incurred by the Debtors or Reorganized BSA after the Petition Date shall be paid by the Debtors or Reorganized BSA in the ordinary course of business in accordance with applicable law subject to the Debtors' or Reorganized BSA's rights to contest any such post-petition taxes. All rights of the Texas Taxing Authorities are reserved with respect to any failure of the Debtors or Reorganized BSA to pay the Texas Taxing Authorities Claims. All rights and defenses of the Debtors and Reorganized BSA under applicable law are reserved and preserved with respect to such claims and the Debtors reserve all their defenses and rights to object to any of the Texas Taxing Authorities Claims.

59.     In the event of a default in payment of the Texas Taxing Authorities Claims, the Texas Taxing Authorities shall provide notice to counsel for Reorganized BSA, who shall have thirty (30) days from the date of such notice to cure the default. If the default is not cured, the

Texas Taxing Authorities shall be entitled to pursue collection of all amounts owed pursuant to state law outside this Court.  To the extent the tax amounts for 2022 are not yet final as of any applicable bar date, if one is set, the Texas Taxing Authorities may amend their claims without having to receive prior authorization to do so; *provided* that the Texas Taxing Authorities shall have Filed a timely Proof of Claim by such applicable bar date for the current year's taxes.

60.    **Ponil Ranch Adversary Proceeding**.  Neither this Order, the Plan, any of the Plan Documents, nor the consummation of the Plan shall in any way affect, prejudice or interfere with the claims and defenses asserted by the parties in Adversary Proceeding No. 21-51185, captioned *Ponil Ranch, L.P. v. Boy Scouts of America* (the "Ponil Ranch Adversary Proceeding").  Any rights, claims and defenses of the parties to the Ponil Ranch Adversary Proceeding are fully preserved in every respect.  Further, neither this Order, the Plan, any of the Plan Documents, nor the consummation of the Plan shall in any way affect, prejudice or interfere with any rights of Ponil Ranch, L.P. or the BSA under any non-bankruptcy law in the event the Court grants the *Boy Scouts of America's Motion to Abstain or, in the Alternative, to Transfer Venue* (Adv. Pro. No. 21-51185, Docket No. 18), filed by the BSA in the Ponil Ranch Adversary Proceeding.

61.    ***Jane Doe v. Town of Trumbull***.  Notwithstanding anything to the contrary in the Plan or this Order, (i) the proof of claim filed by Jane Doe against BSA and the claims asserted by Jane Doe against Learning for Life in the Connecticut Action (as defined herein) shall be treated as Mixed Claims under the Plan and (ii) the litigation filed by Jane Doe, styled as *Jane Doe v. Town of Trumbull, Learning for Life Inc., Boy Scouts of America Corporation, William Ruscoe, Thomas Kiely, Timothy Fedor*, pending in the Fairfield Judicial Superior Court for the State of Connecticut, No. FBT CV 19 5039311 S (the "Connecticut Action"), shall proceed against each of the Town of Trumbull, William Ruscoe, Thomas Kiely, and Timothy Fedor to judgment and collection on any such judgment.

62.    ***McCalister v. Boy Scouts of America***.  The litigation styled *McCalister v. Boy Scouts of America, Alamo Area Counsel Inc.* ("Alamo Local Council") and John Doe, District Court, Bexar County, Texas, Cause No. 2022-CI-04169, (hereinafter, the "McCalister Litigation") shall remain stayed for ninety (90) days following the Effective Date of the Plan.  Thereafter, the applicable stays and injunctions contained in the Plan shall be lifted and the McCalister Litigation shall be allowed to continue for the limited purpose of pursuing discovery as to the Alamo Local Council and the Reorganized BSA (collectively the "BSA Parties") and to allow Mr. McCalister to pursue any and all rights he may have against Mr. John Doe.  Immediately upon the close of discovery in the McCalister Litigation, or upon the satisfaction of Mr. McCalister's concerns pursuant to the Reorganized BSA's internal reinstatement process, whichever comes first, the Alamo Local Council shall be dismissed from the McCalister Litigation with prejudice.  Mr. McCalister agrees that he shall at all times be enjoined from seeking any monetary relief from the BSA Parties, or any of its related organizations, in the McCalister Litigation or in any other litigation or proceeding.

63.    **Revocation or Withdrawal of the Plan**.  The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date.  If the Plan has been revoked or withdrawn prior to the Effective Date, or if Confirmation of the Plan or the occurrence of the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan, including the Settlement Trust Documents, shall be deemed null and void (except that the Insurance Settlement Agreements shall remain in full force and effect to the extent provided in such agreements in accordance with their terms); and (3) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim

against, or any Interest in, the Debtors or any other Person; (ii) prejudice in any manner the rights of the Debtors or any other Person; or (iii) constitute an admission of any sort by the Debtors or any other Person.

64.    **The Official Committees and the Future Claimants' Representative**. Except as otherwise described in the Settlement Trust Documents with respect to the Future Claimants' Representative, the Official Committees and the Future Claimants' Representative shall continue in existence until the Effective Date, and after the Effective Date for the limited purposes of prosecuting requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date.   The Debtors shall pay the reasonable fees and actual and necessary expenses incurred by the Official Committees and the Future Claimants' Representative up to the Effective Date, and after the Effective Date solely for the purposes set forth in the preceding sentence, in accordance with the Compensation Procedures Order, the Fee Examiner Order, and the terms of the Plan, including Article II of the Plan.  As of the Effective Date, **subject to continuation of the Official Committees for the limited purposes described above as to Professional Fee Claims and unless extended by order (which may be sought by motion),** the members of the Official Committees shall be released and discharged from all further authority, duties, responsibilities, liabilities, and obligations involving the Chapter 11 Cases, and the Official Committees shall be dissolved.  Neither the Debtors nor Reorganized BSA have any obligation to pay fees or expenses of any Professional retained by the Official Committees or the Future Claimants' Representative that are earned or incurred before the Effective Date to the extent such fees or expenses (or any portion thereof) qualify as Settlement Trust Expenses, in which case such fees and expenses (or the applicable portion thereof) shall be paid by the Settlement Trust in accordance with the Settlement Trust Documents.

65.    **Notice of Confirmation Date and Effective Date**.  The Notice and Claims Agent

may serve notice of the entry of this Order on (a) all known creditors and interest holders, and (b) those other parties on whom the Plan, Disclosure Statement, and related documents were served, in the same or similar manner as service of solicitation. The Debtors shall also post the notice of Confirmation Date on the website maintained by the Notice and Claims Agent, at https://omniagentsolutions.com/BSA. Such service constitutes adequate and sufficient notice pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c). This notice, in the Debtors' discretion, may be combined with the Notice of Effective Date (as defined below). On the Effective Date, or as soon thereafter as is reasonably practicable, the Debtors shall file with the Court a "Notice of Effective Date" (the "Notice of Effective Date") and shall mail or cause to be mailed by first-class mail to holders of Claims a copy of the Notice of Effective Date; *provided*, *however*, that the Debtors shall not be required to transmit the Notice of Effective Date to any Holders of Claims or Interest for which applicable Solicitation Materials were returned to the Debtors' Claims and Solicitation Agent as undeliverable.

66. **Objections Overruled**. All unresolved objections, statements, and reservations of rights raised in connection with confirmation of the Plan are hereby overruled on the merits.

67. ***Vacatur* of this Order; Non-Occurrence of Effective Date**. If this Order is vacated or the Effective Date does not occur within 180 days after entry of this Order (subject to extension by the Debtors in their sole discretion), the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall (1) constitute a waiver or release of any Causes of Action by or Claims against or Interests in the Debtors or any Person; (2) prejudice in any manner the rights of the Debtors, any holders of a Claim or Interest or any other Person; (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders of a Claim or Interest, or any other Person in any respect; or (4) be used by the Debtors or any other Person as evidence (or in any other way) in any litigation, including with respect to

the strengths and weaknesses of positions, arguments or claims of any of such parties.

68.    **Headings**.  The headings contained within this Order are used for the convenience of the parties and shall not alter or affect the meaning of the text of this Order.

69.    **Non-Severability of Plan Provisions**.  This Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with Article XII.E of the Plan, is (1) valid and enforceable pursuant to its terms, (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors or Reorganized BSA (as the case may be), and (3) nonseverable and mutually dependent.

70.    **Service of Documents**.  Any pleading, notice, request, demand, or other document required by the Plan to be served on the Debtors shall be served pursuant to the terms of Article XII.F of the Plan.

71.    **Governing Law**.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement or any other Plan Document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof; *provided, however*, that governance matters relating to Reorganized BSA shall be governed by the laws of the District of Columbia.

72.    **Final Order**.  This Order is a final, appealable order and the period in which an appeal must be filed shall commence upon the entry hereof.

73.    **Conflicts with This Order; Controlling Document**.  In the event of any conflict between the terms and provisions in the Plan (without reference to the Plan Supplement), on the one hand, and the terms and provisions in the Disclosure Statement, the Plan Supplement, any

other instrument or document created or executed pursuant to the Plan, or any order (other than the Confirmation Opinion and this Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), on the other hand, the Plan (without reference to the Plan Supplement) shall govern and control; *provided*, *however*, that (a) in the event of a conflict between the Confirmation Opinion, on the one hand, and the Plan or any of the other Plan Documents, on the other hand, the Confirmation Opinion shall govern and control in all respects, (b) in the event of a conflict between this Order, on the one hand, and the Plan or any of the other Plan Documents, on the other hand, this Order shall govern and control in all respects, (c) in the event of a conflict between the terms and provisions of the Plan, the Disclosure Statement, the Plan Supplement, or any other Plan Document, on the one hand, and the terms and provisions of any Insurance Settlement Agreement, on the other hand, the terms and provisions of the applicable Insurance Settlement Agreement shall control, (d) in the event of a conflict between the terms and provisions of any Insurance Settlement Agreement, on the one hand, and the terms and provisions of the Confirmation Opinion, on the other hand, the terms and provisions of the Confirmation Opinion shall control, (e) in the event of a conflict between the terms and provisions of any Insurance Settlement Agreement, on the one hand, and the terms and provisions of this Order, on the other hand, the terms and provisions of this Order shall control, and (f) in the event of a conflict between the terms and provisions of the Confirmation Opinion and this Order (except as set forth in paragraphs II.G and II.O of this Order explicitly indicating it is superseding the Confirmation Opinion), the terms and provisions of the Confirmation Opinion shall govern and control.

74.    **Bankruptcy Court Jurisdiction**.    Notwithstanding the entry of this Order or the occurrence of the Effective Date, except as otherwise provided in the Plan or herein, the Court retains exclusive jurisdiction over all matters arising from and relating to the Chapter 11 Cases,

the Plan including without limitation the injunctions and releases set forth in <u>Article X</u> of the Plan, the Confirmation Opinion, and this Order to the fullest extent permitted under the Bankruptcy Code.

**Dated: September 8th, 2022**
**Wilmington, Delaware**