# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 20-10343 (LSS) <br><br> (Jointly Administered) <br><br> **Re: D.I. 11010** <br><br> Hearing Date: March 23, 2023 at 11:00 a.m. (ET) |

### DUMAS & VAUGHN CLAIMANTS' OBJECTION TO MOTION
### TO AUTHORIZE ADVANCEMENT OF FUNDING AND PREPARATORY WORK

Dumas & Vaughn Claimants ("D&V Claimants") file this objection to the *Joint Motion of the Debtors, TCC, FCR, and Coalition, Pursuant to §§ 105(A) and 363(B), for Entry of an Order Authorizing Advancement of Funding and Preparatory Work* [Docket No. 11010] ("Motion"). D&V Claimants respectfully submit as follows:

### PRELIMINARY STATEMENT

1. This case is now on appeal in the District Court. It may be subject to further appeal. While the moving parties believe they will succeed on appeal and the Plan will go into effect as is, it may not. It is too soon to say. Yet BSA asks this court to authorize spending close to $4 million to get the plan ready to go. That is $4 million straight out of abuse victims' pockets if this Plan is ultimately not confirmed.

2. No one wants to see abuse survivors compensated as soon as possible more than the D&V Claimants. But they also voted against an underfunded plan that will pay them a fraction of even the Tort Distribution Procedure value of their claims in exchange for releases of their

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

1

valuable claims against nondebtor third parties. Their frustration mounts higher and higher as BSA continues to spend money in pursuit of this inferior plan, including paying dozens of attorneys over $1,000 an hour. BSA has now spent more to administer this bankruptcy than they are contributing to the Settlement Trust to pay abuse survivors. To see debtors once again come to this Court asking to spend more money on administrative expenses – without even telling the Court how much time this advanced work will save – is another blow to abuse survivors.

## BACKGROUND

3. This Court is well aware of the background of this case. D&V Claimants have provided factual background regarding the case and their claims in previous filings objecting to the plan. They incorporate those pleadings by reference as if set forth in full. D&V Claimants summarize here facts relevant to the pending Motion and their objection.

4. On July 29, 2022, this Court issued a confirmation opinion, concluding, among other things, that the channeling injunction and nonconsensual third-party releases were fair and necessary to the reorganization (D.I. 10136, Opinion, at 129-168), and that the assignment of BSA's insurance rights was permissible (*Id*. at 248-253). BSA made certain changes in response to the opinion, and the Court confirmed the plan. (D.I. 10316, Order). D&V Claimants and others filed timely appeals.

5. On appeal, D&V Claimants argue, among other things, that the channeling injunction and non-consensual third-party releases are impermissible and that the plan does not treat current abuse claimants fairly and equitably. The Lujan Claimants make these and additional arguments. (Dkt. 40, 41, 110, 113.) The Certain Insurers argue that the plan was not proposed in good faith and that it impermissibly purports to abrogate their contracts. (Dkt. 45, 109.) The

Liberty and Allianz Insurers argue that the claim allowance process violates the Bankruptcy Code and that the judgment reduction language is improper and prejudicial. (Dkt. 43, 111.)

6. Following extensive appellate briefing, the District Court held two days of oral argument on February 9 and 10, 2023. (Dkt. Minute Entries 2/9-2/10/2023). The appeals are fully submitted, and the parties await the District Court's ruling.

7. On February 28, 2023, BSA and other plan supporters moved for an order authorizing advancement of just under $4 million for "preparatory work" on the Settlement Trust that is subject to the District Court's ruling.

8. The movants argue that this would further BSA's interests in "expeditiously exiting bankruptcy" by ensuring "that the Effective Date occurs as swiftly as possible." Mot. at 11-13. However, nowhere in the Motion or the proposed Budget is there a timeline, calendar, list of deadlines, or any statement of how much time this preparatory work will save. There is one sentence hinting it might save weeks or months. (Motion at 12, "For the Settlement Trust to make any significant progress within the weeks (if not months) following the Effective Date, the proposed professionals need to engage service providers and prepare such infrastructure to commence operations.") Other than this vague hint, the moving parties do not justify the need for this money right now by telling the Court how much time the work will actually save.

## ARGUMENT

### THE COURT SHOULD DENY THE MOTION

9. Because this case is on appeal to the District Court, this Court does not have jurisdiction over matters that are the subject of the appeals. This Court only retains limited jurisdiction over matters in the bankruptcy case that are outside the scope of the appeals. *In re Ponton*, 46 F. App'x 427, 429 (3d Cir. 2011) ("[W]hen a notice of appeal has been filed in a

bankruptcy case, the bankruptcy court retains jurisdiction to address elements of the bankruptcy proceeding that are ***not*** the subject of that appeal." Emphasis added.) BSA argues that it is seeking to "expedite" implementation of the plan." Motion at 6. But the plan is exactly the subject of the appeals that are now under the jurisdiction of the District Court, not this Court. *See also*, *In re Transtexas Gas Corp.*, 303 F.3d 571, 579-80 (5th Cir. 2002) (court lacked authority to restate provisions of plan on appeal).

10. BSA may argue that this Court has jurisdiction to grant this Motion because it is unrelated to confirmation of the Plan. Even if that were so, which D&V Claimants dispute, movants have not met their burden to show that the Motion should be granted. "In determining whether to authorize the use, sale or lease of property of the estate under [Section 363], courts require the debtor to show that a ***sound*** business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (emphasis added). Courts consider various factors in evaluating whether the debtor's proffered business purpose is "sound," including the likelihood that a plan of reorganization will be "confirmed in the near future," the "effect of the proposed disposition on future plans of reorganization," the "proceeds to be obtained from the disposition," and "most importantly perhaps, whether the asset is increasing or decreasing in value." *Id*. at 153-54 (quotation marks omitted).

11. Here, BSA has failed to demonstrate a *sound* business purpose for advancing close to $4 million dollars for work on a trust that may never exist. At this point, no one knows whether the Plan will go into effect at all, or certainly not in its exact current form. Yet the moving parties want to spend money on things like building a website that reflects the Plan, the Trust, and TDPs as they exist right now. How much time will this "preparatory work" save if it has to be redone anyway if something in the Plan changes after the appeals? Rather than potentially wasting up to

$4 million, it seems better judgment to wait to see what the final plan will look like, even if that means it will take some time to get up to speed when a plan goes into effect.

12. BSA claims that "'[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task.'" Motion at 11 (quoting *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005), a corporate case, not a bankruptcy case). BSA is wrong when it comes to bankruptcy cases. The presumption in Delaware corporate law is that directors generally believe they are acting in the interests of the corporation. Under Delaware corporate law, a plaintiff challenging a board's action first bears the burden to plead facts to overcome the business judgment rule's protection of the board's decision. *In re McDonald's Corp. S'hold Deriv. Litg.*, 2023 WL 2293575, at *22 (Del. Ch. Mar. 1, 2023). If successful, the burden shifts to the defendant-directors to prove that their decision was entirely fair. *Id*. at *23. This corporate law does not apply in bankruptcy cases. The "business judgment test" under 11 U.S.C. § 363(b) "differs from the general corporate law business judgment rule, which protects corporate directors from liability." 3 Collier on Bankruptcy ¶ 363.02[4] (16th ed. 2022).

13. In the context of a Section 363 motion, the Court reviews the debtor's judgment "to determine ***independently*** whether the judgment is a reasonable one." *Id*. (emphasis added); *see also*, *Montgomery Ward*, 242 B.R. at 152-53 (the "bankruptcy court has considerable discretion" with respect to Section 363(b) motions); *Id*. at 154 ("Section 363(b) should be interpreted liberally to provide a bankruptcy judge with 'substantial freedom to tailor [her] orders to meet differing circumstances' and to avoid 'shackl[ing] [the judge] with unnecessarily rigid rules ….'" (citation omitted)). Under the law governing this motion, this Court need not defer to BSA's judgment. Instead, the Court must determine for itself whether BSA has "carrie[d] the burden" of demonstrating a sound business purpose "in light of the particular facts and circumstances of [the]

case." *Montgomery Ward*, 242 B.R. at 154-55.  Given the pending appeal in the District Court, the uncertainty of this Plan going into effect at all or in its current form, and the failure of movants to even define how much time this work will save, the need to preserve assets for abuse victims is a far more sound exercise of business judgment than spending close to $4 million right now.

14. BSA argues that there will be no wasted funds if the plan does not become effective because in that circumstance the "disbursed portion" of funds "shall thereafter be recharacterized" as a payment by the Debtors "on account of claims asserted by the applicable creditors pursuant to Section 502 or 506(b) of the Bankruptcy Code."  Motion at 14 (providing that "the rights of all parties to object to such characterization shall be preserved").  This argument makes no sense.  If this Plan is not confirmed on appeal and BSA has spent close to $4 million in vain, that money will have been wasted.  It does not stop being "waste" simply by changing the label on it to "payment to abuse claimants" who receive no benefit from the wasted spending.

15. It is not clear BSA even means that the disbursed funds would be recharacterized as payments to abuse claimants. Sections 502 and 506(b) of the Bankruptcy Code provide for the allowance of prepetition claims and payment of certain interest and costs on over-secured claims, which arguably may not apply to most abuse claimants.  Again, it is hard to see how abuse claimants would ever benefit from spending $4 million now if the plan does not go into effect.

16. BSA also relies on this Court's equitable powers under 11 U.S.C. § 105(a), but those powers so not give this Court authority to grant this Motion.  "[T]he equitable powers authorized by § 105(a) are not without limitation, and courts have cautioned that this section 'does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law.'"  *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) (citations omitted).  Thus, the "general grant of equitable power contained in § 105(a) cannot trump specific

provisions of the Bankruptcy Code, and must be exercised within the parameters of the Code itself," such that when the Bankruptcy Code "provides a specified means for a debtor to obtain a specific form of equitable relief"—as does Section 363—"those standards and procedures must be observed." *Id*. In any event, the moving parties have failed to show that advancing close to $4 million to ramp up for a Plan that may never exist is "necessary" or "appropriate" to "carry out [any] provision[]" of chapter 11, including confirmation of a plan that requires precisely the opposite. 11 U.S.C. § 105(a).

17.  That other courts, in other cases and different circumstances, have issued orders authorizing funding or preparatory work in advance of an effective date is not relevant to whether BSA has met its burden of demonstrating entitlement to the requested relief in this case. As this Court has repeatedly explained, "[o]rders are just that—orders. Without knowing the context, whether the finding was contested and if so, the reasoning of the judge in including the [relevant provisions], an Order is no assistance." Opinion at 177-78 ("The authority cited in this section of the Statement of the Coalition once again includes many Orders, which are neither authoritative nor helpful."); *Id*. at 183 ("Once, again, however, the Coalition cites me to confirmation orders, not opinions.").

18.  Finally, D&V Claimants further object to any suggestion – now or in the future – that this Motion, any advanced funding, or preparatory work may prejudice their appellate rights. If this Court should grant the Motion, which D&V Claimants argues it should not, this Court should make clear that any advance funding and preparatory work is not the Court's approval to consummate the plan, will not render the plan "substantially consummated," or otherwise does not factor into the "equitable mootness" doctrine in the pending or further appeals. *In re Exide*

*Holdings*, 2021 WL 3145612, at *5 (D. Del. 2021). If and when plan supporters raise equitable mootness arguments, D&V Claimants reserve every right and ground to challenge such arguments.

## JOINDER

19. D&V Claimants join in the objections and arguments filed by Certain Insurers, the Lujan Claimants, any other appellants, and other objectors and incorporate those objections and arguments as if set forth in full herein.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion.

Dated: March 14, 2023

GELLERT SCALI BUSENKELL & BROWN LLC

/s/ *Charles J. Brown, III*
Charles J. Brown, III, Esquire (No. 3368)
1201 N. Orange St., 3rd Floor
Wilmington, DE 19801
Phone: (302) 425-5813
Email: cbrown@gsbblaw.com

- and -

DUMAS & VAUGHN, LLC

/s/ *Gilion C. Dumas*
Dumas & Vaughn, LLC., *admitted pro hac vice*
3835 NE Hancock Street, Suite GLB
Portland, OR 97212
Telephone: (503) 616-5007
Email: gilion@dumasandvaughn.com

*Counsel to D & V Claimants*