## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| | (Jointly Administered) |
| Debtors. | **Re: D.I. 11010** |

**LUJAN CLAIMANTS' OBJECTION TO JOINT MOTION OF THE DEBTORS, OFFICIAL COMMITTEE OF TORT CLAIMANTS, FUTURE CLAIMANTS' REPRESENTATIVE, AND COALITION OF ABUSED SCOUTS FOR JUSTICE, PURSUANT TO 11 U.S.C. §§ 105(A) AND 363(B), FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO ADVANCE FUNDING TO FACILITATE THE ESTABLISHMENT OF THE SETTLEMENT, TRUST, (II) AUTHORIZING THE PSZJ FIRM TO ADVANCE FUNDING UNDER THE PSZJ CONTRIBUTION TO FACILITATE THE ESTABLISHMENT OF THE SETTLEMENT TRUST, (III) AUTHORIIZNG THE FUTURE SETTLEMENT TRUSTEE AND CLAIMS ADMINISTRATORS TO BEGIN PREPARATORY WORK, AND (IV) GRANTING RELATED RELIEF; JOINDER IN OBJECTION OF D&V CLAIMANTS**

COME NOW the Tort Claimants represented by Lujan & Wolff LLP ("Lujan Claimants")[1] and object to the Joint Motion of the Debtors, Official Committee of Tort Claimants, Future Claimants' Representative, and Coalition of Abused Scouts for Justice, Pursuant to 11 U.S.C. §§ 105(a) and 363(b), for Entry of an Order (I) Authorizing the Debtors to Advance Funding to Facilitate the Establishment of the Settlement Trust, (II) Authorizing the PSZJ Firm to Advance Funding under the PSZJ Contribution to Facilitate the Establishment of the Settlement Trust, (III) Authorizing the Future Settlement Trustee and Claims Administrators to Begin Preparatory Work, and (IV) Granting Related Relief (D.I. 11010) ("Motion"), which was filed on February 28, 2023.  Further, Lujan Claimants join in the Objection to the Motion filed by Dumas & Vaughn Claimants.

---

[1] See attached Appendix A, which lists the Sexual Abuse Survivor Proof of Claim numbers for Lujan Claimants.

1

The Motion should be denied because this Court lacks jurisdiction to grant the relief requested therein. Movants have failed to show that the Court has jurisdiction to grant the motion while there are appeals to the Confirmation Opinion, Plan, and Confirmation Order pending before the District Court. "[W]hen a notice of appeal has been filed in a bankruptcy case, the bankruptcy court retains jurisdiction to address elements of the bankruptcy proceeding *that are not the subject of that appeal*." In re Ponton, 46 F. App'x 427, 429 (3d Cir. 2011) (emphasis added). Movants claim that they are seeking to "expedite" implementation of the plan because "the Confirmation Order specifically authorizes the Debtors and third parties . . . to take actions necessary and appropriate to effectuate the Plan." (Mot. at 6, 8-10.) But the Confirmation Order and the Plan are presently the subject of appeals by Lujan Claimants, D&V Claimants, and Certain Insurers, so there is no jurisdiction for this Court to authorize the Plan's effectuation based on its terms. See In re Transtexas Gas Corp., 303 F. 3d 571, 579-80 (5th Cir. 2002) (court lacked authority to restate provisions of plan on appeal). The plan proponents could have sought authorization for advance funding and implementation work in the challenged Plan before it was appealed, but they did not do so. See In re Bialac, 694 F.2d 625, 627 (9th Cir. 1982) (court may not vacate or modify order while appeal is pending).

As this Motion is made while Lujan Claimants have a pending appeal, Lujan Claimants object to any suggestion that the Motion and any relief granted may prejudice their appellate rights. Movants have not argued that the relief they seek would moot any appeals or prevent appellate courts from reviewing confirmation of the Plan. If the Court is inclined to grant the Motion, it should make clear that any authorization to begin advance funding and implementation of the trust does not constitute an approval to consummate the Plan, render the Plan "substantially consummated," or otherwise factor into application of the "equitable mootness" doctrine to the pending or further appeals. In re Exide Holdings, Civil No. 20-1402-RGA, 2021 WL 3145612, at *5 (D. Del. July 26, 2021). Lujan Claimants reserve every right and ground to challenge any argument that their appeals

are equitably moot if and when such an argument is made.  Any order granting the Motion should make very clear that the order does not affect the appeals, which could impact the proposed trust and challenged Plan, and that any relief granted is not in furtherance of confirmation or Plan consummation.

The Motion should also be denied as Movants have failed to show a sound business purpose for the relief requested.  "In determining whether to authorize the use, sale or lease of property of the estate under [Section 363], courts require the debtor to show that a sound business purpose justifies such actions."  In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999).  In evaluating whether the debtor's proffered business purpose is sound, courts consider various factors, including the likelihood that a plan of reorganization will be "confirmed in the near future," the "effect of the proposed disposition on future plans of reorganization," the "proceeds to be obtained from the disposition," and "most importantly perhaps, whether the asset is increasing or decreasing in value."  Id. at 153-54 (quotation marks omitted).

Here, Debtors have failed to demonstrate a sound business purpose for advancing millions of dollars in funds and beginning preparatory work on a trust that may never exist.  Given the considerable briefing and two full days of argument in the pending appeals (including as to the issue of nonconsensual third party releases, where there is a split among the circuit courts of appeal), there is at the very least significant doubt as to whether the Plan will be effectuated in any particular form.  Movants themselves acknowledge that Debtors do not guarantee their ability or willingness to consummate the Plan.  (See Mot. at 14 (conceding that even after the Advance Funding Amount "has been disbursed," BSA may still "become unwilling or unable to consummate the Plan … such that the Effective Date does not occur").)

Movants claim that "*[m]inimizing estate expenses is critical* to ensuring a successful reorganization because the Debtors have limited options available to generate additional liquidity."

(Mot. at 13 (emphasis added).)  But if that is true, the sound course is to minimize expenses by refraining from premature attempts to fund a trust that is at the center of the consolidated appeals. Debtors have already spent millions more on professional fees than they propose to contribute to Survivors of child sexual abuse under the Plan.  Instead of spending millions more on administrative fees and expenses to effectuate and implement a Plan that may be struck down on appeal, Debtors should be conserving their funds while the appeals proceed.

Citing case law governing the presumption under Delaware corporate law (not bankruptcy law) that directors generally believe they are acting in the interests of the corporation, Movants claim that "'[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task.'"  (Mot. at 11 (quoting In re Tower Air, Inc., 416 F. 3d 229, 238 (3d Cir. 2005)).  Under Delaware corporate law, a plaintiff challenging a board's action first bears the burden to plead facts to overcome the business judgment rule's protection of the board's decision.   In re McDonald's Corp. Stockholder Deriv. Litg., C.A. No. 2021-0324-JTL, 2023 WL 2293575, at *22 (Del. Ch. Mar. 1, 2023).  If successful, the burden shifts to the defendant-directors to prove that their decision was entirely fair.  Id. at *23.  But that law has no application here:  the "'business judgment' test" under 11 U.S.C. § 363(b) "differs from the general corporate law business judgment rule, which protects corporate directors from liability." 3 *Collier on Bankruptcy* ¶ 363.02[4] (16th ed. 2022).

In the context of a Section 363 motion, the Court reviews the debtor's judgment "to *determine independently* whether the judgment is a reasonable one."  Id. (emphasis added); see also Montgomery Ward, 242 B.R. at 152-53 (the "bankruptcy court has considerable discretion" with respect to Section 363(b) motions); id. at 154 ("Section 363(b) should be interpreted liberally to provide a bankruptcy judge with 'substantial freedom to tailor [her] orders to meet differing circumstances' and to avoid 'shackl[ing] [the judge] with unnecessarily rigid rules ....'" (citation omitted)).  Under the law governing this Motion, the Court need not defer to BSA's determinations;

instead, it must determine for itself whether BSA has "carrie[d] the burden" of demonstrating a sound business purpose "in light of the particular facts and circumstances of [the] case." Montgomery Ward, 242 B.R. at 154-55.  Given the District Court's impending decision, Debtors have failed to meet that burden here.

Movants suggest that there will be no wasted funds if the Plan does not become effective because in that circumstance this Court perhaps could simply "recharacterize" any "disbursed portion" of funds as a payment by Debtors "on account of claims asserted by the applicable creditors pursuant to Section 502 or 506(b) of the Bankruptcy Code."  (Mot. at 14 (providing that "the rights of all parties to object to such characterization shall be preserved").)  It is not at all clear what Movants mean by this suggestion, let alone why Sections 502 and 506(b) would be relevant.

Movants cannot remedy the failure to satisfy the requirements of Section 363(b) by invoking this Court's equitable powers under 11 U.S.C. § 105(a).  "[T]he equitable powers authorized by § 105(a) are not without limitation, and courts have cautioned that this section 'does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law.'" In re Combustion Eng'g, Inc., 391 F. 3d 190, 236 (3d Cir. 2004) (citations omitted).  Thus, the "general grant of equitable power contained in § 105(a) cannot trump specific provisions of the Bankruptcy Code, and must be exercised within the parameters of the Code itself," such that when the Bankruptcy Code "provides a specified means for a debtor to obtain a specific form of equitable relief"—as does Section 363—"those standards and procedures must be observed." Id.  In any event, there has been no showing that advancing millions of dollars to fund a trust that may not exist is "necessary" or "appropriate" to "carry out [any] provision[]" of chapter 11, including confirmation of a plan that requires precisely the opposite.  11 U.S.C. § 105(a).

Contrary to Movants' assertions, (see Mot. at 14-15), the mere fact that other courts, in other cases and different circumstances, have issued *orders* that authorize funding or preparatory work in

5

advance of an effective date says little about whether Movants have met their burden of demonstrating entitlement to the requested relief in *this* case.  As this Court has repeatedly explained, "[o]rders are just that—orders.  Without knowing the context, whether the finding was contested and if so, the reasoning of the judge in including the [relevant provisions], an Order is no assistance." (Op. at 177; <u>see</u> Op. at 178 ("The authority cited in this section of the Statement of the Coalition once again includes many Orders, which are neither authoritative nor helpful."); Op. at 183 ("Once, again, however, the Coalition cites me to confirmation orders, not opinions.").

Further, the Motion should be denied because Movants have failed to prove a sound business purpose in paying $657,750, based on astounding rates nearing $2,000 per hour, as "Future Trustee Compensation" for preliminary work such as document review.  Notably, the Plan provides a Base Matrix Value of $600,000 for Survivors who suffered anal or vaginal penetration by an adult perpetrator.  (Plan TDP Art. VIII.)  There is no explanation of how expenditure of these funds for such work is sound or reasonable.  There is also no explanation of how it is sound or reasonable to spend $200,000 for "the services of a consultant to advise the Future Trustee and the Future Claims Administrators on matters important to the understanding and analysis of sexual abuse matters." (Mot. Ex. B at 3.)  Movants have failed to show it is reasonable to spend $200,000 for education on sexual abuse matters, especially when the average cost of obtaining a private law school education over three years is about $160,000.    <u>See</u> https://www.usnews.com/education/best-graduate-schools/top-law-schools/articles/law-school-cost-starting-salary.    The preparatory amounts requested by Movants may seem minuscule in light of the $2.5 billion contributed to the Trust, but they are eye-popping to Survivors who may expect an average payout of less than $30,000, not factoring the Trust expenses, to compensate them for sexual abuse they endured as children and that has continued to impact their lives decades later as adults.

Also, Movants propose to spend the PSZJ Contribution in a way that is contrary to the Plan they support.  Under the Plan, the Trustee has discretion to spend money from the PSZJ Contribution to compensate Survivors who made a positive impact before, during, and after the bankruptcy.  For instance, Lujan Claimants include 70 Survivors who had prepetition lawsuits against BSA.  However, the Budget proposed in the Motion does not include use of any of the PSZJ funds for this purpose.  As not a single Survivor claim has been reviewed under the Plan, there can be no proper exercise of discretion to not use the PSZJ Contribution to compensate Survivors for their positive impact.

For these reasons, the Motion should be denied.  Lujan Claimants reserve all rights.

Dated:  March 14, 2023.

Respectfully submitted,

 /s/ Christopher D. Loizides (No. 3968)
Loizides, PA
1225 North King Street, Suite 800
Wilmington, DE 19801
Phone: 302.654.0248
Email: Loizides@loizides.com

and

LUJAN & WOLFF LLP

 /s/ Delia Lujan Wolff
Delia Lujan Wolff
Suite 300, DNA Bldg.
238 Archbishop Flores St.
Hagatna, Guam 96910
Phone: (671) 477-8064/5
Facsimile: (671) 477-5297
Email:  dslwolff@lawguam.com
*Attorneys for Lujan Claimants*

# APPENDIX A

The foregoing Lujan Claimants' Objection to Joint Motion of the Debtors, Official Committee of Tort Claimants, Future Claimants' Representative, and Coalition of Abused Scouts for Justice, Pursuant to 11 U.S.C. §§ 105(a) and 363(b), for Entry of an Order (I) Authorizing the Debtors to Advance Funding to Facilitate the Establishment of the Settlement Trust, (II) Authorizing the PSZJ Firm to Advance Funding under the PSZJ Contribution to Facilitate the Establishment of the Settlement Trust, (III) Authorizing the Future Settlement Trustee and Claims Administrators to Begin Preparatory Work, and (IV) Granting Related Relief was filed by the following creditors who each filed a Sexual Abuse Survivor Proof of Claim and are represented by Lujan & Wolff LLP.  The numbers below are the claim numbers for each creditor's Sexual Abuse Survivor Proof of Claim, including amendments thereto.

| | | | | |
|---|---|---|---|---|
| 248 | 2991 | 6824 | 25063 | 79403 |
| 1551 | 3051 | 7976 | 25069 | 79769 |
| 1670 | 3120 | 7977 | 33028 | 80328 |
| 1677 | 3385 | 8037 | 35352 | 80655 |
| 1746 | 3610 | 8038 | 35354 | 80982 |
| 1757 | 3612 | 10548 | 38591 | 87715 |
| 1765 | 3614 | 11250 | 40889 | 87757 |
| 1913 | 3616 | 11251 | 40890 | 96418 |
| 1953 | 4855 | 14187 | 45700 | 96419 |
| 2003 | 4857 | 15104 | 45702 | 103377 |
| 2010 | 4859 | 15139 | 48168 | 103378 |
| 2011 | 5646 | 17480 | 58317 | 4858 |
| 2394 | 5646 | 18860 | 58370 | 4860 |
| 2403 | 5648 | 18873 | 67267 | |
| 2433 | 5655 | 22872 | 67286 | |
| 2597 | 6432 | 22873 | 67293 | |
| 2840 | 6434 | 22874 | 73585 | |
| 2885 | 6823 | 23388 | 73607 | |