IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Ref. D.I. 11010, 11030, 11032, 11033<br>Hearing Date: April 19, 2023 at 10:00 a.m. (ET) |

**OMNIBUS REPLY OF OFFICIAL COMMITTEE OF TORT CLAIMANTS, FUTURE CLAIMANTS' REPRESENTATIVE, AND COALITION OF ABUSED SCOUTS FOR JUSTICE IN SUPPORT OF JOINT MOTION OF THE DEBTORS, OFFICIAL COMMITTEE OF TORT CLAIMANTS, FUTURE CLAIMANTS' REPRESENTATIVE, AND COALITION OF ABUSED SCOUTS FOR JUSTICE, PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b), FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO ADVANCE FUNDING TO FACILITATE THE ESTABLISHMENT OF THE SETTLEMENT TRUST, (II) AUTHORIZING THE PSZJ FIRM TO ADVANCE FUNDING UNDER THE PSZJ CONTRIBUTION TO FACILITATE THE ESTABLISHMENT OF THE SETTLEMENT TRUST, (III) AUTHORIZING THE FUTURE SETTLEMENT TRUSTEE AND CLAIMS ADMINISTRATORS TO BEGIN PREPARATORY WORK, AND (IV) GRANTING RELATED RELIEF**

The Official Committee of Tort Claimants (the "TCC"), Future Claimants' Representative (the "FCR"), and Coalition of Abused Scouts for Justice (the "Coalition" and, together with the Debtors, TCC, and FCR, the "Movants"),[2] in the above-captioned chapter 11 cases, submit this omnibus reply (the "Reply") (i) to the objections filed by the objecting parties (the "Objectors"),[3]

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession (together, the "Debtors") are not a party to this Reply but if the Court grants the Motion the BSA will fund $1 million as contemplated in the Motion.

[3] The Objectors include: (i) the Certain Insurers (as defined in the objection) [D.I. 11030], (ii) the D&V Claimants (as defined in the objection) [D.I. 11032], and (iii) the Lujan Claimants (as defined in the objection) [D.I. 11033] (collectively, the "Objections"). In addition to the Objections, the Debtors also received informal comments from the U.S. Trustee regarding the Proposed Order, which the Debtors have resolved through the addition of language in the revised proposed order attached hereto as **Exhibit A** (the "Revised Proposed Order"), and which is blacklined against the version of the Proposed Order filed with the Motion in **Exhibit B** attached hereto.

and (ii) in further support of the Motion [D.I. 11010],[4] the Movants respectfully state as follows:

## PRELIMINARY STATEMENT

1. The relief requested in the Motion does not rely on the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC* [D.I. 10296] (the "Plan") or this Court's *Supplemental Findings of Facts and Conclusions of Law and Order Confirming the Plan* [D.I. 10316] (the "Confirmation Order"). Instead, the relief requested by the Movants independently relies on sections 105(a) and 363(b) of the Bankruptcy Code. Paragraph 16 of the Motion provides:

> By this Motion, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Movants request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Debtors to fund the Debtors' Advance Funding Amount in accordance with the Proposed Budget set forth on **Exhibit B** hereto, (b) authorizing the PSZJ Firm to fund the PSZJ Advance Funding Amount in accordance with the Proposed Budget set forth on **Exhibit B** hereto, (c) authorizing the Future Trustee and Claims Administrators to begin their preparatory work with respect to the Effective Date of the Plan and establishment of the Settlement Trust, including incurring and satisfying expenses from the Advance Funding Amount in accordance with the Proposed Budget, and (d) granting related relief.

Motion at Para. 16.

2. As reflected above, the Motion seeks authorization for (a) the Debtors to use $1,000,000 of property of the estate and (b) authority for the Future Trustee to use $2,912,750 that is being provided by the PSZJ Firm for the expenses arising from the preparatory work that will eventually enable the Future Trustee to establish the Settlement Trust.

---

[4] Capitalized terms that are used but not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

3. Expenses are routinely incurred by parties in chapter 11 cases taking the necessary steps in contemplation of a proposed plan becoming effective. For example, a debtor in possession may reject leases and contracts that will be unnecessary to its reorganized, post-confirmation enterprise or it may expend resources to seek, negotiate, and document exit financing that will be transacted only upon the effective date of a proposed plan. In fact, in these cases, under the Plan the Debtors are restructuring their long-term debt obligations. Nobody is requiring the Debtors to wait until after the effective date of the Plan for the Debtors to take the necessary steps (*i.e.*, draft and prepare revised loan documentation) to be in a position to close their exit financing. Funding the expenses incurred by the Future Trustee and Claim Administrators is no different.

4. The Debtors' chapter 11 cases were filed on February 18, 2020, over three years ago. The confirmation hearing began in March 2022, over a year ago. This Court entered the Confirmation Order on September 8, 2022, over five months ago. On March 28, 2023, the District Court issued a 155-page opinion affirming the Confirmation Order[5] (the "Affirmation Order") in all respects. Now, in an attempt to further delay the implementation of the Plan, now approved by two courts, on March 31 and April 1, 2023, the Objectors filed emergency motions with the District Court, seeking the entry of a stay pending appeal. However, on April 11, 2023, the District Court issued its order declining to impose a stay, finding, among other things, that the Objectors "failed to make a 'better than negligible' showing that they are likely to prevail on the merits of their appeal[s]."[6]

5. On April 10, 2023, the Objectors appealed the Affirmation Order to the United States Court of Appeals for the Third Circuit and, again, moved on an emergency basis for a stay

---

[5] As defined in the Plan.
[6] *Memorandum Order* [District Court D.I. 193] ¶ 7 at 5.

3

pending appeal. The following day, the Court of Appeals issued a temporary stay [CTA D.I. 17] (the "Stay Order") "for the sole purpose of allowing the Court an opportunity to review the requests for a stay pending appeal."[7]

6. Bankruptcy Rule 8025(c) provides that

> If the district court or BAP enters a judgment affirming an order, judgment, or decree of the bankruptcy court, a stay of the district court's or BAP's judgment automatically stays the bankruptcy court's order, judgment, or decree for the duration of the appellate stay.

Bankruptcy Rule 8025(c).

7. The stay of the Affirmation Order by the Court of Appeals is of no consequence -- even if it stays the Confirmation Order pending the disposition of the appeal -- because the relief requested by the Movants neither relies on the Confirmation Order nor implements the terms of the Plan. Consistent with Bankruptcy Rule 8007(e), the relief requested, if granted by the Court, is nothing more than a mechanism for the parties supporting the Plan to take the necessary steps so they are able to implement the Plan at the time the Stay Order is vacated or the Affirmation Order is affirmed by the Court of Appeals.

8. In opposing the Motion, the Objectors continue their efforts to prevent Movants from taking the preparatory steps that will enable them to cause the Plan to become effective after the conditions permit. The Objectors' arguments are meritless and should be overruled. Each of the Objections covers three topics: (a) whether the bankruptcy court has jurisdiction to grant the relief requested in the Motion, (b) whether the relief requested is an exercise of the Debtors' sound business judgment, and (c) whether the relief requested prejudices the Objectors' appellate rights. As set forth below in detail, it is readily apparent that the relief requested is a sound exercise of

---

[7] Stay Order at 2.

the Debtors' business judgment and that this Court has jurisdiction to authorize the relief requested as this is nothing more than a motion under sections 105 and 363 of the Bankruptcy Code.

9.      Specifically, the relief requested in the Motion would, if granted, not modify the Confirmation Order, Confirmation Opinion, or Plan, and therefore, the Court has jurisdiction to adjudicate the Motion. Similarly, it is a sound use of estate assets by providing the funds necessary to allow the Future Trustee to begin her preparatory work that will enable her to establish the Settlement Trust when the Plan becomes effective. The Debtors' estates are only providing one-quarter of the Advance Funding Amount ($1 million), while the PSZJ Advance Funding Amount makes up the bulk of the funding (approximately $2.9 million). As this Motion was never intended to prejudice any party's appellate arguments, the Objectors' concerns are easily resolved by clarifying language that the Movants propose to add to the Revised Proposed Order, as set forth below. The Movants respectfully request that the Court overrule the Objections and enter the Revised Proposed Order.

**REPLY**

**I.      The Court Has Jurisdiction to Grant the Motion.**

10.     The Motion requests a routine exercise of this Court's jurisdiction: overseeing the proposed use of estate resources outside the ordinary course. By the Motion, the Movants are asking the Debtors to spend approximately $1 million of estate resources so that neither survivors nor the estates will suffer any further prejudice from unnecessary delays to the occurrence of the Effective Date. Through the Motion, the Movants are asking the Debtors to expend the minimum funds needed to <u>prepare</u> to implement the Plan.

11.     The Objectors argue that this Court lacks jurisdiction to grant the relief requested in the Motion because the Confirmation Order is currently on appeal. Certain Insurers Obj. at 4;

D&V Obj. at 3-4; Lujan Obj. at 2.  In so arguing, the Objectors overstate and mischaracterize the scope of the divestment (or divestiture) doctrine.  The relief requested in the Motion seeks authority for parties to prepare for the implementation of the Plan, not modify Plan, and are unrelated to the appeal.

12.    As recognized by the Objectors, "when a notice of appeal has been filed in a bankruptcy case, the bankruptcy court retains jurisdiction to address elements of the bankruptcy proceeding *that are not the subject of that appeal*."  *In re Ponton*, 446 F. App'x 427, 429 (3d Cir. 2011) (emphasis added) (quoting *Transtexas Gas Corp. v. Transtexas Gas (In re Transtexas Gas Corp.)*, 303 F.3d 571, 580 n.2 (5th Cir. 2002)).  The bankruptcy court is divested of jurisdiction of "'those aspects of the case involved in the appeal,' not over any matters that may arise in the matter."  *In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 583 (Bankr. S.D.N.Y. 2001) (quoting *In re Allen-Main Assocs., Ltd. P'ship*, 243 B.R. 606, 608–09 (D. Conn. 1998)).  "[M]atters that are uniquely separable from and collateral to the merits of the appeal" stay within the jurisdiction of the bankruptcy court.  *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Brown (In re Brown)*, No. 07-316 (GAP), 2007 WL 3326684, at *1 (M.D. Fla. Nov. 6, 2007) (finding no divestment of jurisdiction where the bankruptcy court's "modified" confirmation order that followed a pending appeal of the "original" confirmation order "accomplished one thing" that "ha[d] no impact on any of the issues raised in the original appeal"); *see Hopewell*, 258 B.R. at 583.  The principle that the court may continue to decide issues collateral to the appeals is particularly important in ensuring the orderly and timely administration of chapter 11 cases, which usually involve "the court's issuance of innumerable orders involving a myriad of issues, one or more of which may be on appeal at any given moment."  *In re Prudential Lines, Inc.*, 170 B.R. 222, 244 (S.D.N.Y. 1994).  In fact, the rule divesting bankruptcy courts of jurisdiction over aspects

6

of a case implicated by an appeal is "a judge-made doctrine designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time." *In re Brown*, 2007 WL 3326684, at *1 (citing *In re Padilla*, 222 F.3d 1184, 1190 (9th Cir. 2000)).

13. No such confusion exists here. There is no overlap between the confirmation issues on appeal and the relief requested in the Motion. The confirmation appeals raise issues regarding the good faith proposal of the Plan, the assignment of insurance contractual rights and obligations, judgment reduction, Indirect Abuse Claims, nonconsensual third-party releases, the Insurance Settlements, the best interests test, the automatic stay, classification, equal treatment, and notice of Plan modifications. The ability to engage in preparatory work to implement the Plan is not at issue in the appeals just as the Debtors are engaging in the preparatory work related to other aspects of the Plan. See, for example, *Order (I) Granting Relief from the Automatic Stay to Permit JPMorgan Chase Bank, N.A. to Apply Collateral Account Funds to Reimburse Cash Collateralized Letter of Credit Disbursements and (II) Granting Related Relief*. [D.I. 10639] and *Order Modifying the Automatic Stay on a Limited Basis Solely to the Extent Necessary to Facilitate Local Council Settlement Contributions to the Settlement Trust Under the Plan* [D.I. 7114], both of which were entered in contemplation of the Plan becoming effective but wholly independent of the Plan itself.

14. The Objectors argue that a bankruptcy court cannot modify provisions of a confirmation order that are subject to a pending appeal. That argument is irrelevant. Nothing in the Motion seeks to modify the Confirmation Order. Rather, the Motion seeks authority to use estate resources (and non-estate resources) for the preparatory efforts necessary to implement the parts of the Plan when conditions exist for the Plan to become effective.

15. In particular, by the Motion, Movants are seeking authorization to fund the expenses arising from Future Trustee's actions to (a) undertake the review of documents that will

7

be required to be executed on the Effective Date, (b) engage in diligence tasks for the Effective Date, such as the establishment of bank accounts and the identification and retention of a Delaware trustee for the Settlement Trust, that will be necessary to receive contributions on the Effective Date, (c) prepare to take over the necessary record-keeping related to Abuse Claims and communications with the holders of Abuse Claims from the Debtors on the Effective Date, and (d) make plans related to the actual start-up of the Settlement Trust on the Effective Date, including the design and establishment of a Settlement Trust website and claims portal, the design of procedures to identify fraudulent claims, and the engagement of other professionals such as a claim processor and other key advisors for when the Settlement Trust is put into effect.

16. The Future Trustee and Claim Administrators should be in a position to hit the ground running when the Plan becomes effective. Like the Debtors who have been undertaking the necessary preparatory work to implement that Plan on the Effective Date, the Future Trustee and Claims Administrators are in the same position so they are able to take possession of assets to be contributed to the Settlement Trust and immediately assume the duties that will arise under the administration of over 82,000 Abuse Claims.

17. As a motion under sections 105 and 363 of the Bankruptcy Code, and not dependent on the Confirmation Order, this Court has jurisdiction to grant the requested relief, which is independent of the Plan and nothing more than a funding mechanism to permit the steps necessary to cause the Plan to become effective after those conditions are satisfied. In addition, the relief requested is unrelated to the issues on appeal.

II. **Authorization to Advance Funds in Accordance with the Proposed Budget Under Sections 363(b) and 105(a).**

18. As set forth in the Motion, Movants are asking the Debtors to advance funds in accordance with the Proposed Budget pursuant to sections 363(b) and 105(a) of the Bankruptcy

Code, under which a debtor may "after notice and a hearing . . . use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To use property of the estate outside the ordinary course of business, courts in this jurisdiction require only that the debtor "show that a sound business purpose justifies" the proposed use of property. *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also In re Mallinckrodt PLC*, No. 21-167 (LPS), 2022 WL 906458, at *6 (D. Del. Mar. 28, 2022) ("The legal standard applicable to both §§ 363(b) and 365(a) is the business judgment test, under which a bankruptcy court will authorize debtor-initiated actions if the debtor shows that 'a sound business purpose justifies' such actions.") (citations omitted); *Computer Sales Int'l, Inc. v. Fed. Mogul Global, Inc. (In re Fed. Mogul Global, Inc.)*, 293 B.R. 124, 126 (Bankr. D. Del. 2003) ("As applied in the Third Circuit, a court should approve a debtor's use of assets outside the ordinary course of business if the debtor can demonstrate a sound business justification for the proposed transaction.").

19.    Moreover, "[i]n evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a 'business judgment test.'"[8] *Montgomery Ward*, 242 B.R. at 153 (citation omitted). Further, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Filene's Basement, LLC*, No. 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) (citing *Johns-Manville*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986)).

---

[8]    The Objectors criticize the Movants for purportedly conflating a debtor's requirement to show a "sound business purpose" under section 363(b) of the Bankruptcy Code with the "reasonable basis" a debtor must demonstrate under the Delaware business judgment rule. Mot. ¶ 18; Certain Insurers' Obj. at 5 n.3; D&V Obj. at 5; Lujan Obj. at 4. This argument is meritless. Courts have explained that the "Delaware business judgment rule principles have 'vitality by analogy' in Chapter 11." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (citation omitted); *see also Filene's Basement*, 2014 WL 1713416, at *12.

20. The Objectors assert that the Movants have failed to show that the relief requested in the Motion is "necessary" or "appropriate" to carry out any provision of chapter 11 under section 105(a) of the Bankruptcy Code. *See* D&V Obj. ¶ 16; Certain Insurers Obj. ¶ 15; Lujan Obj. at 5. But the relief requested in the Motion is designed to assure the orderly conduct of these chapter 11 cases and to facilitate the necessary groundwork for the establishment of the Settlement Trust after the Plan becomes effective. *See, e.g.*, *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) ("[Section 105(a)] has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings.") The limited advance funding to the Future Trustee will benefit the Debtors' interests in being able to expeditiously exit bankruptcy by permitting the Future Trustee and Claims Administrators to prepare for the occurrence of the Effective Date (just as the Debtors are already doing with respect to other aspects of the Plan). *See* Whittman Decl., Mot. Ex. C ¶¶ 3–8. The preparatory work ensures that upon the occurrence of the Effective Date the Debtors, Future Trustee, and Claims Administrators will be able to implement the Plan as contemplated by a confirmation process that lasted over a year. Thus, section 105(a), in addition to section 363(b), gives this Court the powers necessary to provide the relief requested in the Motion.

21. The Objectors also argue that there is no "sound business purpose" under section 363(b) for advancing funds because: (a) the Debtors should conserve their funds while the confirmation appeals proceed, (b) it is not certain whether the Plan will be consummated and the Settlement Trust will be established, (c) sections 502 and 506(b) are not relevant to the Motion, and (d) it is not reasonable to spend the budgeted amounts on the Future Trustee's compensation and education on sexual abuse matters. *See* Certain Insurers Obj. ¶¶ 11–16; D&V Obj. ¶¶ 11–17; Lujan Obj. at 3–6. Each of these arguments lacks merit.

### A. The Unrebutted Evidence Shows That the Debtors Have Demonstrated a Sound Business Purpose for the Requested Relief.

22. As evidenced by the Whittman Declaration, the Movants have articulated a sound business purpose justifying the decision to advance funds to the Future Trustee. *See generally* Whittman Decl. By contrast, the Objectors have not produced *any* evidence controverting Mr. Whittman's testimony. That alone is reason to overrule the Objections. *See Montgomery Ward*, 242 B.R. at 155 (holding that "an objectant is required to produce some evidence supporting its objections" and the bankruptcy court therefore did not abuse its discretion in granting debtors' section 363(b) motion where the debtors' evidence was undisputed and the objectors failed to produce any evidence).

23. The unrefuted evidence presented by the Movants is ample. First, time is of the essence. The relief requested "will benefit the Debtors and their estates because it will facilitate the occurrence of the Effective Date (once the various conditions to the Effective Date are satisfied) and the handover of assets and duties of the Debtors" and "will enable the Future Trustee's completion of the preparation and groundwork related to the Plan Documents in order for the Effective Date to occur as expeditiously as possible, to the benefit of the Debtors and abuse survivors." Whittman Decl. ¶ 5. In part, it is critical for the Effective Date to occur as soon as possible because "[t]he longer the Debtors stay in bankruptcy, the more that their objective of ensuring that the BSA has the ability to continue its charitable mission is threatened." Whittman Decl. ¶ 6. The evidence shows that the publicity surrounding these chapter 11 cases has created a "public relations overhang on the Debtors' organizational operations and has impacted the Debtors' ability to successfully recruit new members, solicit donations, and continue efforts to modernize the BSA organization." *Id.*

24. Further, by preparing for the Effective Date will also help avoid additional administrative cost and expense. By preparing for the occurrence of the Effective Date, all stakeholders will benefit because "[e]ach day that passes before the Plan goes effective also brings with it additional administrative cost and expense" and the Debtors "have limited options available to generate additional liquidity." Whittman Decl. ¶ 6. Therefore, whatever steps that can be taken to any avoid a delay in the ability of the Plan to go effective necessarily "helps the Debtors fulfill the mission of Scouting." *Id.*

25. The requested relief would help avoid any delay in the distribution of funds to survivors, many of whom have waited decades to receive compensation. *Id.* Indeed, the Court has acknowledged the importance of providing long-overdue compensation to abuse claimants. *See* Confirmation Op. at Introduction ("These boys—now men—seek and deserve compensation for the sexual abuse they suffered years ago."); *id.* at 158 ("Many survivors have been waiting for thirty, forty, or even fifty years to tell their stories and receive a meaningful recovery."). Testimony at the Confirmation Hearing and the thousands of letters that this Court and the District Court have received from abuse survivors illustrate the need to begin compensating these individuals as soon as possible. *See, e.g.*, D.I. 10275 ("Many survivors don't have time on their hands . . . ."); D.I. 5635 ("I am 70 years old . . . ."). Clearly it is an appropriate to address these concerns and expend what is comparatively a moderate amount of estate resources to make the necessary arrangements to go effective and avoid needless further delay in the future.

26. The Objectors argue that the Debtors should "wait to see what the final plan will look like, even if that means it will take some time to get up to speed when a plan goes into effect" and the "sound course" is to minimize expenses by refraining from efforts to fund the trust. *See* D&V Obj. ¶ 11; Certain Insurers Obj. ¶ 13; Lujan Obj. at 3-4. This delay for delay's sake has

nothing to do with balancing legitimate objectives against the minimal cost to the estates to act now and everything to do with the Objectors simply trying to prevent what happens in all cases after confirmation and prior to the effective date. The requested relief "balances the Debtors' goals of providing an equitable, streamlined, and certain process by which abuse survivors may obtain compensation and ensuring that the BSA has the ability to continue its charitable mission." Whittman Decl. ¶ 7. Moreover, some of the tasks that will be supported by the Advance Funding Amount are necessary for the Debtors to go effective. *See* Whittman Decl. ¶¶ 3-4.

27.  The purpose of the Motion is further evidenced by the broad-based support for the Motion. The TCC, FCR, and Coalition all support the requested relief. This Court should not permit insurance carriers, who do not represent the interests of survivors, and a small minority of abuse survivors representing less than 0.2% of the 82,200 abuse survivors to hamstring critical efforts overwhelmingly supported by representatives of the vast majority of survivors in these chapter 11 cases.

B.  **The Requested Relief Is Necessary and Appropriate Regardless of the Outcome of the Appeals.**

28.  The Objectors argue that the Motion should be denied because there is a risk that the Plan will not be effectuated given the pending appeals. *See* Certain Insurers Obj. ¶ 13; D&V Obj. ¶¶ 13-15; Lujan Claimants Obj. at 3-4. This argument ignores that, regardless of what happens in the appeals, a settlement trust will almost certainly need to be established to administer the more than 80,000 abuse claims, either pursuant to the Plan or a subsequent plan. In other words, the preparatory work the Future Trustee and Claims Administrators are able to accomplish in advance of the Effective Date now will be useful regardless of the disposition of the

Confirmation Order.[9] For example, each of the following may be relevant in any trust scenario: reviewing documents that will be required to be executed to establish the Settlement Trust; conducting diligence for the establishment of bank accounts; establishing infrastructure to support communications with holders of Abuse Claims; and planning related to the start-up of the Settlement Trust and initial claims processing preparatory work.

### C. Sections 502 and 506(b) Are Relevant to the Requested Relief.

29. Bankruptcy Code sections 502 and 506(b) apply to the relief requested in the Motion. Specifically, if the Debtors were to become unable to consummate the Plan after the full or partial disbursement of the Advance Funding Amount, the Debtors have requested that such disbursements be recharacterized as payments to creditors on account of their claims under section 502 or 506(b). The Objectors may not believe that this is the correct remedy if the Plan is not consummated (*see* Lujan Obj. at 5; Certain Insurers Obj. ¶ 14; D&V Obj. ¶ 14), but the Motion provides that the rights of all parties to object to such recharacterization in the future are expressly preserved, and the proposed order granting the Motion has been revised accordingly. *See* Revised Proposed Order ¶ 8. Moreover, as set forth herein, the Advance Funding Amount is proposed to cover costs that would likely need to be undertaken under any plan and will reduce the costs to set up any trust. The Objectors' recharacterization objections are therefore premature and not ripe at this juncture.

---

[9] In criticizing the Proposed Budget for failing to provide a "timeline, calendar, list of deadlines, or statement of how much time this preparatory work will save," the D&V Claimants do not explain why this is necessary when parties will be kept apprised of the Future Trustee's work and expenditures. D&V Obj. at 3. The Future Trustee will file an accounting with the Court with respect to the Advance Funding Amount on a monthly basis within 30 days after month-end. *See* Proposed Budget, Mot. Ex. B; Revised Proposed Order ¶ 5. The fact is that *any* work done in the interim between now and the Effective Date will save time and money.

14

**D.     Costs Included in the Proposed Budget Are Reasonable and There Is No Evidence to the Contrary.**

30.     As noted in the Proposed Budget attached as **Exhibit C** to the Motion, the rates listed for the Future Trustee and Claims Administrators are their respective standard billing rates. *See* Proposed Budget at 2-3. The Proposed Budget is also the product of arm's-length negotiations. *See* Whittman Decl. ¶ 7 ("[T]he Proposed Budget is the result of extensive good faith, arm's-length discussions among the Movants and the Future Trustee."). Moreover, Judge Houser's unrebutted testimony is that the requested relief is indeed necessary and appropriate. *See* Houser Decl., Mot. Ex. D ¶ 8 ("I have reviewed the Proposed Budget and believe the tasks outlined therein are necessary and appropriate.").

31.     Lujan Claimants argue that the professional fees and costs associated with the requested relief are unreasonable. Lujan Obj. at 6. But Lujan Claimants failed to object when these rates were first disclosed in connection with confirmation. Debtors' Confirmation Br. [D.I. 9114] ¶ 489 (disclosing the Settlement Trustee's 2022 rates). Accordingly, Lujan Claimants' objection in this regard is untimely and should be overruled.[10]

---

[10]     The Objectors overlook the fact that the PSZJ Advance Funding Amount constitutes about three-quarters of the Advance Funding Amount. Further, contrary to the Lujan Claimants' assertions (Lujan Obj. at 7), the portion of Advance Funding Amount that the PSZJ Firm is proposing to contribute is not the same as the $1,250,000 contribution earmarked for the Youth Protection Program under the PSZJ Settlement, as set forth in the Plan, *see* Plan Art. V.S.7. Instead, the portion of the Advance Funding Amount contributed by the PSZJ Firm was disclosed and approved in connection with the retention of PSZJ as counsel to the TCC at the beginning of these cases and relates to a 10% holdback of fees from the PSZJ Firm. That holdback has been held in escrow since the beginning of the cases. *See Application of the Official Tort Claimants' Committee for Entry of an Order, Pursuant to 11 U.S.C §§ 328 and 1103, Fed. R. Bankr. P. 2014 and Local Rule 2014-1, Authorizing and Approving the Employment and Retention of Pachulski Stang Ziehl & Jones LLP as Counsel to the Tort Claimants Committee Effective as of March 4, 2020* ¶ 9 (filed March 25, 2020) [D.I. 292]; *Order Authorizing and Approving the Retention of Pachulski Stang Ziehl & Jones LLP as Counsel to the Additional Tort Claimants' Committee Effective as of March 4, 2020* (Apr. 11, 2020) [D.I. 398]. As such, the portion of the Advance Funding Amount contributed by the PSZJ Firm is wholly unrelated to the Confirmation Order, Confirmation Opinion, or Plan.

### III. The Relief Requested Will Not Render the Objectors' Appeal of the Confirmation Order Equitably Moot.

32. The requested relief will not impact the Objectors' appeals. The Objectors argue that the requested relief could prejudice their pending appeals by supporting arguments that the appeals should be dismissed on equitable mootness grounds. Certain Insurers Obj. at 7; D&V Obj. at 7-8; Lujan Obj. at 2-3. The Objectors' concerns are unfounded.

33. "Equitable mootness is a narrow doctrine by which an appellate court deems it 'prudent for practical reasons to forbear deciding an appeal when to grant the relief requested will undermine the finality and reliability of consummated plans of reorganization.'" *In re Tribune Media Co.*, 799 F.3d 272, 299 (3d Cir. 2015). In analyzing issues of equitable mootness in the context of a plan of reorganization, courts employ a two-step analysis: "(1) whether a confirmed plan has been substantially consummated; and (2) if so, whether granting the relief requested in the appeal will (a) fatally scramble the plan and/or (b) significantly harm third parties who have justifiably relied on plan confirmation." *Id.* at 278 (citing *In re SemCrude, L.P.*, 728 F.3d 314, 321 (3d Cir. 2013). The Bankruptcy Code defines "substantial consummation" as: "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan." 11 U.S.C. § 1101(2).

34. Under the Plan, substantial consummation will not (and could not) happen until the Effective Date. First, advancing approximately $4 million to the Settlement Trust (only $1 million of which will come from the Debtors) for certain administrative tasks in furtherance of the establishment of the Settlement Trust does not constitute "substantial consummation" of the Plan. In comparison to the contributions that will be transferred to the Settlement Trust on the Effective

Date of the Plan, the Advance Funding Amount is approximately 0.16% of the total proposed corpus of the Settlement Trust (excluding unliquidated insurance proceeds and future contributions from Chartered Organizations, which would make it even smaller). Under any test, the Advance Funding Amount is not "all or substantially all of the property proposed by the plan to be transferred." 11 U.S.C. § 1101(2)(A).

35. Second, while the Advance Funding Amount will be used, in part, to prepare for establishment of the Settlement Trust, the actual establishment of the Settlement Trust will not occur until the Effective Date. Accordingly, because the entity that will be vested with the property to be contributed under the Plan will not exist until the Effective Date, there can be no "assumption . . . by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan." 11 U.S.C. § 1101(2)(B).

36. Third, there can be no "commencement of distribution under the plan" to claimants, including survivors, prior to the Effective Date. 11 U.S.C. § 1101(2)(C).

37. Because the transfer of the Advance Funding Amount and actions taken based on that relief will not result in substantial consummation of the Plan, there is no need to engage in the second step of the equitable mootness analysis. However, even if analysis of the second step is undertaken, it is clear that the relief requested would not lead any court to determine that granting the relief requested in the Objectors' appeals would (a) fatally scramble the Plan and/or (b) significantly harm third parties who have justifiably relied on the Plan's confirmation such that a finding of equitable mootness could be entered. *See In re Tribune Media Co.*, 799 F.3d at 278.

38. Still, to provide further comfort to the Objectors, the Debtors have incorporated language in the Revised Proposed Order, attached hereto as **Exhibit A**, to clarify that the requested relief will not prejudice the Objectors' appellate arguments. Following the filing of the Motion,

the U.S. Trustee provided the Debtors with an informal comment intended to preserve parties' rights with respect to their appeals of the Confirmation Order, which have been incorporated in the Revised Proposed Order.[11] To further clarify the point, the following provision has been added to the Revised Proposed Order:

> The Court's entry of this Order and any action taken by the Debtors or any other plan supporter based on the relief granted herein shall not prejudice the rights of any party in interest to argue that the doctrine of equitable mootness should not be applied to dismiss any appeal of the Confirmation Order, Confirmation Opinion or Plan.

Revised Proposed Order ¶ 10.

39. For all of these reasons, the Objectors' arguments that requested relief would prejudice their arguments on appeal lack merit.

[*Remainder of page intentionally left blank*]

---

[11] "Notwithstanding anything contained in the Motion or this Order, approval of the relief herein shall not affect or otherwise prejudice the rights of any parties in the pending appeal of the Confirmation Order." Revised Proposed Order ¶ 9.

**CONCLUSION**

The Movants respectfully request that the Court overrule the Objections and enter the Revised Proposed Order, substantially in the form attached hereto, granting the relief requested in the Motion and any further relief as the Court may deem just and proper.

Dated: April 14, 2023
Wilmington, Delaware

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ James E. O'Neill*
Richard M. Pachulski (CA Bar No. 90073) (admitted *pro hac vice*)
Alan J. Kornfeld (CA Bar No. 130063) (admitted *pro hac vice*)
Debra I. Grassgreen (CA Bar No. 169978) (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tele/Fax: (302) 652-4100 / (302) 652-4400
Email:   rpachulski@pszjlaw.com
            akornfeld@pszjlaw.com
            dgrassgreen@pszjlaw.com
            joneill@pszjlaw.com

*Counsel for the Official Tort Claimants' Committee*

**MONZACK MERSKY AND BROWDER, PA**

*/s/ Rachel B. Mersky*
Rachel B. Mersky (No. 2049)
1201 North Orange Street, Suite 400
Wilmington, Delaware 19801
Telephone:    (302) 656-8162
Facsimile:      (302) 656-2769
Email:            RMersky@Monlaw.com

– and –

**BROWN RUDNICK LLP**
David J. Molton, Esq.
Eric Goodman, Esq.
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Email: DMolton@BrownRudnick.com

– and –

Sunni P. Beville, Esq. (admitted *pro hac vice*)
Tristan G. Axelrod, Esq. (admitted *pro hac vice)*
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
Email: SBeville@BrownRudnick.com
         TAxelrod@BrownRudnick.com

*Counsel to the Coalition of Abused Scouts for Justice*

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Robert S. Brady*
Robert S. Brady (No. 2847)
Edwin J. Harron (No. 3396)
Jared W. Kochenash (No. 6557)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimilie: (302) 571-1253
Email:    rbrady@ycst.com
          eharron@ycst.com
          jkochenash@ycst.com

*Counsel to the Future Claimants' Representative*