# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| BOY SCOUTS OF AMERICA and DELAWARE BSA, LLC, et al.,[1] | Case No. 20-10343 (LSS) (Jointly Administered) |
| Debtors. | |

## MOTION FOR AN ORDER DEEMING PREVIOUSLY FILED PROOFS OF CLAIM TO BE DEEMED TIMELY FILED

COMES NOW, the Movants, KH on behalf of decedent AH (Washington), ZM (Alabama/Florida), and DT (Kansas),[2] by and through their undersigned counsel, Conaway-Legal LLC, and hereby submits this *Motion for an Order Deeming Previously Filed Proof of Claim to be Deemed Timely Filed* (hereinafter "Motion") and respectfully moves this Court under § 105(a) of the BANKRUPTCY CODE and the FEDERAL RULES OF BANKRUPTCY PROCEDURE 3003(c) and 9006(b)(1), for an Order authorizing the above referenced Movants, to file a late proof of claim. In support thereof, the Movants respectfully assert as follows:

### I.    JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these cases and this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District for the District

---

[1] The Debtors of the Chapter 11 cases, together with the last four digits of the Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtor's mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] The Movants previously and confidentially disclosed their identity to Debtors' counsel, consistent with Court protocols for keeping their identity out of the public record.

of Delaware, dated February 29, 2012.

2. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3. The statutory and legal foundations for the relief sought herein are § 105(a) of the BANKRUPTCY CODE and the FEDERAL RULES OF BANKRUPTCY PROCEDURE 3003(c) and 9006(b)(1) (hereafter "BANKRUPTCY RULES").

4. The Movants "consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution." DEL. BANKR. L.R. 9013-1(f).

## II. BACKGROUND

5. On February 18, 2020, (the "Petition Date"), the above-captioned debtors and debtors-in-possession (the "Debtors") filed their chapter 11 bankruptcy petitions with this Court.

6. On May 26, 2020, this Court entered an order that set November 16, 2020, (hereafter "Bar Date") as the bar date for filing proofs of claim in these cases [DK 695].

7. Movants, who are all adults, are the victims of "Sexual Abuse" in "Scouting," as those terms are described in the Sexual Abuse Survivor Proof of Claim form.

### i. Movant KH, on Behalf of Decedent AH

8. The sexual abuse of Movant KH's deceased father AH, occurred in approximately 1976, while AH was a minor participating in Scouting, and living in Seattle, Washington.

9. At all times relevant hereto, decedent AH, then approx. 10 years old, was enrolled in the Boy Scouts of America, Troop 357, in Seattle, Washington. Two scout masters abused him multiple times. As a direct and proximate cause of that sexual abuse, decedent AH suffered, injuries and damages.

10. Shortly before the Bar Date, on or about September 5, 2020, Decedent executed a fee agreement with Krause and Kinsman, LLC. Decedent AH passed away on October 1, 2022, however, his daughter, KH, intends to pursue claims on her father's behalf.

11. Krause and Kinsman, LLC recently learned that OMNI does not have record of Decedent's POC.

12. Accordingly, through no fault of Decedent, his Proof of Claim was not timely filed and/or OMNI has no record of his POC. Specifically, AH shares the same name with another client of Krause and Kinsman, LLC. During the filing process, the other client's POC was filed, and mistaken for AH's POC. As such, AH's POC was marked as filed, but it was later discovered that no claim form had been filled out by AH.

13. Since AH passed on October 1, 2022, his daughter, KH, completed AH's POC based on information we had obtained from AH before his passing, and supplemented by AH's journal entries, and letters to our firm which AH shared before his passing.

14. As a direct and proximate cause of the sexual abuse and the highly traumatic nature of his experience, the Movant KH's father suffered, injuries and damages.

### ii. Movant ZM

15. The sexual abuse of Movant ZM occurred between approximately 1991 and 1994, while ZM was a minor participating in Scouting and living in Mobile, Alabama.

16. At all times relevant hereto, Movant ZM, then approx. 9-12 years old, was enrolled in the Boy Scouts of America, in Mobile, Alabama. His scout master, and the scout master's son abused him multiple times. The abuse occurred at a school in Alabama, and on a beach trip to Florida. As a direct and proximate cause of that sexual abuse, Movant suffered, and continues to suffer injuries and damages.

17. Sixteen days before the Bar Date, on or about November 1, 2020, Movant ZM executed a fee agreement with Krause and Kinsman, LLC.

18. Krause and Kinsman, LLC recently learned that OMNI does not have record of claimant's POC.

19. Accordingly, through no fault of Movant ZM, his Proof of Claim was not timely filed and/or OMNI has no record of his POC. Specifically, ZM's case number was entered incorrectly in the Smart Advocate software utilized by our firm to manage these cases. As a result, no POC was filed because ZM was not on any of the reports. ZM subsequently called our firm for an update, and it was discovered that we did not have anything on file for him. As such, we corrected his information, and had ZM complete a POC to be filled.

20. As a direct and proximate cause of the sexual abuse and the highly traumatic nature of his experience, the Movant ZM suffered, and continues to suffer injuries and damages.

### iii. Movant DT

21. The sexual abuse of Movant DT occurred in approximately 1973-1975, while DT was a minor participating in Scouting and living in Overland Park, Kansas.

22. At all times relevant hereto, Movant DT, then approx. 12-15 years old, was enrolled in the Boy Scouts of America, Troop 16, in Overland Park, Kansas. One scout master abused him and others multiple times while showering, and on a camping trip. As a direct and proximate cause of that sexual abuse, Movant DT, suffered, injuries and damages.

23. Shortly before the Bar Date, on November 7, 2020, Movant DT executed a fee agreement with Krause and Kinsman, LLC.

24. Krause and Kinsman, LLC recently learned that OMNI does not have record of claimant's POC.

25. Accordingly, through no fault of Movant DT, his Proof of Claim was not timely filed and/or OMNI has no record of his POC. Specifically, DT's name was labeled on another claimant's POC leaving DT without a POC of his own being filed.

26. As a direct and proximate cause of the sexual abuse and the highly traumatic nature of his experience, Movant DT suffered, and continues to suffer injuries and damages.

### iv. Previously Filed Proofs of Claim

27. As requested by Debtors' counsel, the Movants each filed a proof of claim with Omni in advance of filing the Motion. The claims filing information appears in the chart below:

| Date Received by Omni | SA Claim No | Claimant Identifier | Movant |
|---|---|---|---|
| 03/15/2023 01:53 | 130609 | 2013087 | DT (Kansas) |
| 03/15/2023 01:54 | 130608 | 2202520 | ZM (Alabama/Florida) |
| 03/21/2023 21:01 | 130745 | 2007191 | KH on behalf of decedent AH (Washington) |

## II. RELIEF REQUESTED

28. The Movants respectfully requests the entry of an Order consistent with § 105(a) of the BANKRUPTCY CODE and BANKRUPTCY RULES 3003(c) and 9006(b)(1), authorizing the filing of a proof of claim and acceptance by the Debtors and its claims agent to accept that filing.

## IV. NOTICE

29. Subject to DEL. BANKR. L. R. 5005-4(c) and 9036-1, the Movants will provide notice of this Motion to: (i) Office of the United States Trustee for the District of Delaware; (ii) counsel to the Debtors; and (iii) all parties entitled to notice of this Motion pursuant to BANKRUPTCY RULE 2002.

## V. NO PRIOR MOTION

30. The Movants filed no prior Motion for the relief sought in this Motion with this Court or any other court.

## VI. THE MOVANTS FAILURE TO TIMELY A PROOF OF CLAIM WAS THE RESULT OF EXCUSABLE NEGLECT

31. In a chapter 11 case, if a creditor's proof of claim is late due to "excusable neglect," then under BANKRUPTCY RULE 9006(b)(1) as applied to BANKRUPTCY RULE 3003(c)(3), the court has discretionary authority to allow that creditor to file a POC beyond the claims bar date. Specifically, BANKRUPTCY RULE 9006(b)(1) provides in

pertinent part:

> **when an act is required or allowed to be done at or within a specified period by these rules** or by a notice given thereunder or by order of court, **the court for cause shown may at any time in its discretion** (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) **on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect**.

32. The meaning of excusable neglect as used in BANKRUPTCY RULE 9006(b)(1) was addressed by the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993). The Supreme Court found that "[b]ecause Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable,' . . . the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id*. at 395. To that end, the Supreme Court approved a flexible, four-part[3] analytical Framework to support a finding of excusable neglect: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay (including whether it was within the reasonable control of the Movants); and (4) whether the Movants acted in good faith. *Id*. (referring to factors considered by the Court of Appeals and District Court, *In re Pioneer Inv. Services Co.*, 943 F. 2d 673, 677 (6th Cir. 1991)). "All [of the *Pioneer*] factors must be considered and balanced; no one factor trumps the others." *Hefta v. Off'l Comm. Of Unsecured Creditors (In re American Classic Voyages Co.)*, 405 F.3d 127, 133 (3rd Cir. 2005).

---

[3] The *Pioneer* court identified four factors but acknowledged that equity might compel evaluation of other factors.

33. After that, in *Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl Energy, Inc.)*, 188 F.3d 116 (3rd Cir. 1999), the Third Circuit addressed the excusable neglect concept in RULE 9006(b)(1) using the *Pioneer* framework.

*A. The Pioneer Factor Analysis*

*i. Prejudice to the Debtor*

34. As for the danger of prejudice to the debtor, the *O'Brien* court followed two precepts flowing from *Pioneer*. First, the court held that "prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence." *Id.* at 127; *see also Toscano v. The RSH Liquidating Trust (In re RS Legacy Corp.)*, 577 B.R. 134, 140-41(3rd Cir. 2017) (citing to *O'Brien*).

35. Secondly, the *O'Brien* court discussed considerations addressing prejudice to the debtor: (i) whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated; (ii) whether the payment of the claim would force the return of amounts already paid out under the confirmed plan or affect the distribution to creditors; (iii) whether the payment of the claim would jeopardize the success of the debtor's reorganization; (iv) whether allowance of the claim would adversely impact the debtor; and (v) whether allowance of the claim would open the floodgates to other late claims. *O'Brien,* 188 F.3d at 126-28 (internal citations omitted).

36. None of the prejudice factors identified by *O'Brien* inure to the Debtors' benefit. Specifically:

    a. The Debtors cannot claim surprise at the existence or filing of the Movants' claims as it is one of approximately 82,500 other sexual abuse claims pending against the Debtors. Indeed, it was the prospect of litigating these sexual abuse claims that prompted, in

part, the Debtors to seek relief in this Court. *See Debtors' Informational Brief*, at p. 5 ("The BSA cannot continue to address abuse litigation in the tort system on a case-by-case basis."). *DK 4.*

b. A reorganization plan was confirmed. Nonetheless, the prospect that Movants' claims will be the sole cause of unwinding prior transactions, payments, distributions, or orders is implausible.

c. The payment of the Movants' claims, standing alone, cannot jeopardize the success of the Debtors' reorganization. Moreover, the Debtors and others can still defend against the merits of Movants' claims.

d. The fact that the Debtor did not account for the Movants' claims would be insufficient to show prejudice under *Pioneer*.

e. The Movants' claims will not open the flood gates to other late claims because their claims are consistent with other abuse claims, i.e., they do not represent a new class or type of claim. Nor is there any evidence that the Movant's claim will prompt any mass, late-filed proof of claims. The facts underlying the Movants' late filing are unique to him.

37. In sum, case law does not support a finding under *Pioneer*, or its progeny, that these Debtors are prejudiced by the late filing of the Movants' proof of claim.

ii. *Length of the Delay and Impact on Judicial Proceedings*

38. The length of the delay and the impact of that delay on judicial proceedings necessarily requires the court to examine the parties' conduct causing delay relative to the stage of the bankruptcy process itself. *Pioneer,* 507 U.S. at 388. Hence, even though the actual time of delay is notable, the more significant concern is how that delay derailed, if at all, the reorganization process. *O'Brien*, 188 F.3d at 130. From that perspective, the Movants' delay is inconsequential. *In re EFH Corp.*, 522 B.R. 520, 531 (Bankr. D. Del. 2015). The claims bar date was more than two (2) years ago. That amount of time notwithstanding, the Movants' late filings did not, and will not, delay or otherwise

impact the timeliness of the Debtors' reorganization or this judicial proceeding. The Movants' delay is not a material factor bearing on the progress of the Debtors' bankruptcy case.

### iii. Reason for the Delay and Movants' Good Faith

39. The Movants' proof of claim was late because of a clerical error during the processing/filing stage. Movants brought their claims to an attorney(s) prior to the expiration of the November 16, 2020, Bar Date.

40. The addition of the Debtors' bankruptcy to the Movants' claim adds a complex layer of legal process and procedure not typical of personal injury cases. No matter how it happened, the failure to timely file the Movants' Proof of Claim was neglect by counsel and/or the Vendor and is absent of any indicia of bad intent. More importantly, this is the kind of "carelessness" constituting excusable neglect that *O'Brien* contemplated. *O'Brien*, 188 F.3d at 125.

41. The Movants always acted in good faith.

*[Remainder of Page Left Intentionally Blank]*

WHEREFORE, for the foregoing reasons, the Movants respectfully requests that the Court enter an order deeming the Movants previously filed a Proofs of Claim, to be timely filed, and granting such other and further relief as the Court deems just and proper.

DATED: May 10, 2023
          Wilmington, Delaware

Respectfully Submitted,

**CONAWAY LEGAL, LLC**

*/s/ Bernard G. Conaway*
Bernard G. Conaway, Esquire (DE 2856)
1007 North Orange Street, Ste. 400
Wilmington, DE 19801
Phone: (302) 428-9350
Facsimile: (844) 364-0137
Email: *bgc@conaway-legal.com*

*Counsel for the Movants KH on behalf of Decedent AH, ZM, and DT*