# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | : | Case No. 20-10343 (LSS) |
| Debtor. | : | (Jointly Administered) |
| | : | **Hearing Date: September 12, 2023 at 10:00 a.m. (ET)** |
| | : | **Obj. Deadline: July 17, 2023 at 5:00 p.m. (ET)** |

## PRELIMINARY MOTION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, A UTAH CORPORATION SOLE, TO ENFORCE THE CONFIRMATION ORDER AND PLAN

The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole ("***Movant***" or "***TCJC***"), files this motion (this "***Motion***") for entry of an order, substantially in the form attached hereto as Exhibit A (the "***Proposed Order***"), enforcing the *Supplemental Findings of Fact and Conclusions of Law and Order Confirming the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (With Technical Modifications) For Boy Scouts of America and Delaware BSA, LLC* [Docket No. 10316] (the "***Confirmation Order***"),[2] confirming the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 10296] (the "***Plan***")[3] and the injunction and releases contained therein. In support of the Motion, TCJC hereby asserts the following:

---

[1] The Debtors ("***Debtors***" or "***BSA***") in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] A copy of the Confirmation Order is attached hereto as Exhibit B.

[3] Capitalized terms used but not otherwise defined in this Statement shall have the meanings ascribed to them in the Plan, a copy of which is attached hereto as Exhibit C.

## PRELIMINARY STATEMENT

1. Movant, or TCJC,[4] has become subject to a Complaint (defined below) in the State of California that, on information and belief, is subject to the channeling injunction and releases set forth in the Plan and Confirmation Order. Movant brings this Motion to enforce the channeling injunction and releases set forth in the Plan and Confirmation Order. The question presented by this Motion of whether the filed lawsuit is a Mixed Claim (as defined in the Plan) that is partially exempted from the Plan injunction and releases is not a hypothetical scenario, nor should it be decided based on artful pleading by each plaintiff. This question can only be properly decided based on the facts. Simultaneously with the filing of this Motion, Movant is seeking limited discovery necessary to resolving the Motion, and Movant reserves the right to supplement this Motion following such discovery.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a), and the Confirmation Order and Plan entered in the Bankruptcy Case. The Plan and Confirmation Order expressly reserve this Court's jurisdiction over all matters arising from and relating to the Chapter 11 Cases, including, without limitation, the injunction and releases set forth in Article X of the Plan and the Confirmation Order:

> Notwithstanding the entry of this Order or the occurrence of the Effective Date, except as otherwise provided in the Plan or herein, the Court retains exclusive jurisdiction over all matters arising from and relating to the Chapter 11 Cases, the Plan including without limitation the injunctions and releases set forth in Article X of the Plan, the Confirmation Opinion, and this Order to the fullest extent permitted under the Bankruptcy Code.

---

[4] TCJC is defined in the Plan as "The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole, ***including any affiliates or personnel***" (emphasis added). This definition is being used in connection with this Motion and any actions related to the BSA's Chapter 11 Cases (as defined below) and is not an admission that service was proper for any of the named defendants in the California Action (as defined below).

*See* Confirmation Order, ¶ 74.[5] It is well-settled that courts have authority to interpret and enforce a confirmation order. *See, e.g.*, *In re E. W. Resort Dev. V, L.P., L.L.L.P.*, No. 10-10452 (BLS), 2014 WL 4537500, at *9 (Bankr. D. Del. Sept. 12, 2014) ("It is self-evident that a court has the authority to enforce its own orders"); *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 326 (Bankr. D. Del. 1999), aff'd sub nom. *In re Cont'l Airlines, Inc.*, 279 F.3d 226 (3d Cir. 2002) ("In the bankruptcy context, courts have specifically, and consistently, held that the bankruptcy court retains jurisdiction, inter alia, to enforce its confirmation order.").

3. This action is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (I), (L), and (O). Venue is proper pursuant to 28 U.S.C. § 1409. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), TCJC consents to the entry of a final judgment or order with respect to this motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

4. The statutory predicates for the requested relief are sections 105, 524, and 1141 of title 11 of the United States Code (the "**Bankruptcy Code**").

## BACKGROUND

I. **Channeling Injunction and Releases for Participating Chartered Organizations**

5. On February 18, 2020 (the "**Petition Date**"), the BSA commenced chapter 11 cases (the "**Chapter 11 Cases**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"). On September 8, 2022, this Court entered the Confirmation Order

---

[5] *See also* Plan, Art. XI.C, in relevant part: "[t]he Bankruptcy Court shall retain jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan, including jurisdiction to [. . .] enforce and interpret the terms and conditions of the Plan [and] enter in aid of implementation of the Plan such orders as are necessary, including the implementation and enforcement of the Injunctions, Releases, and Discharges described herein, including the Channeling Injunction."

3

confirming the Plan. Following entry of the Confirmation Order, the District Court for the District of Delaware heard various appeals and ultimately entered an order affirming the Confirmation Order (the "**Affirmation Order**") [Case No. 22-01237, Docket No. 151]. The Plan subsequently went effective on April 19, 2023 [Docket No. 11119].

6. Under the Plan and Confirmation Order, TCJC is a Participating Chartered Organization and is entitled to the protection of the Channeling Injunction as a Limited Protected Party.[6] In particular, the Plan provides that (a) the sole recourse for any holder of a Post-1975 Chartered Organization Abuse Claim[7] against a Limited Protected Party is the Settlement Trust, and (b) the sole recourse for any holder of an Abuse Claim against a Limited Protected Party if such Abuse Claim is covered under any insurance policy issued by any Settling Insurance Company is the Settlement Trust. Thus, under the Plan, any holder of a Post-1975 Chartered Organization Abuse Claim or Abuse Claim is permanently enjoined from asserting such claim against a Limited Protected Party, including Participating Chartered Organization like TCJC.

7. In turn, "Abuse Claim" is broadly defined under the Plan to include any claim that is "attributable to, arises from, is based upon, relates to, or results from, directly, indirectly, or derivatively, alleged *Scouting-related* Abuse that occurred prior to the Petition Date" (emphasis added).[8] The Plan further defines "Scouting-related" to mean "anything that is attributable to,

---

[6] *See* Confirmation Order, ¶ 20 ("In accordance with the Plan as modified by the Plan Addendum, TCJC is not a Contributing Chartered Organization, and shall be a Participating Chartered Organization and shall have all of the rights and obligations associates therewith.").

[7] *See* Plan, Art. I.A-215 (Post-1975 Chartered Organization Abuse Claims means "any Abuse Claim against a Participating Chartered Organization that relates to Abuse alleged to have first occurred on or after January 1, 1976.")

[8] *See* Plan, I.A-18 (Abuse Claim "means a liquidated or unliquidated Claim against a Protected Party (including the Settling Insurance Companies), a Limited Protected Party, or an Opt-Out Chartered Organization or any of their respective Representatives (in their capacities as such) that is attributable to, arises from, is based upon, relates to, or results from, directly, indirectly, or derivatively, alleged Scouting-related Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, alter ego, respondeat superior, conspiracy, fraud, including fraud

4

arises from, is based upon, results from, or relates to, in whole or in part, directly, indirectly, or derivatively, Scouting" (emphasis added).[9]

8. The term "Scouting" is defined under the Plan to include:

> any and all programs, activities and services of any kind in any way, directly or indirectly, associated with, arising from or related to the BSA or the BSA's, any Local Council's, any Related Non-Debtor Entity's, or any Chartered Organization's (including their personnel and their affiliates') participation in, involvement in, or sponsorship of, any units or programs offered or previously offered pursuant to the charter of the BSA, including activities such as formal or informal scout meetings, troop activities, jamborees, or interactions of any kind between scouts and other scouts or scout leaders in their capacities as such.[10]

---

in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based upon, or directly or indirectly related to any insurance relationship, the provision of insurance or the provision of insurance services to or by any Protected Parties, or misrepresentation, concealment, or unfair practice, breach of fiduciary duty, public or private nuisance, gross negligence, willful misconduct, or any other theory, including any theory based on or related to public policy or any act or failure to act, or failure to warn by a Protected Party, a Limited Protected Party, an Opt-Out Chartered Organization, any of their respective Representatives (in their capacities as such) or any other Person for whom any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization is alleged to be responsible (including any such Claim that has been asserted or may be amended to assert in a proof of claim alleging Abuse, whether or not timely filed, in the Chapter 11 Cases, or any such Claim that has been asserted against the Settlement Trust), including any proportionate or allocable share of liability based thereon. Abuse Claims include any Future Abuse Claims, any Indirect Abuse Claims, any Opt-Out Chartered Organization Abuse Claim, any Post-1975 Chartered Organization Abuse Claim and Pre-1976 Chartered Organization Abuse Claim and any other Claim that is attributable to, arises from, is based upon, relates to, or results from, alleged Scouting-related Abuse regardless of whether, as of the Petition Date, such Claim was barred by any applicable statute of limitations. For the avoidance of doubt, (i) a Claim alleging Abuse shall not be an "Abuse Claim" against a Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any of their respective Representatives if such Claim is unrelated to Scouting (except as provided in (iii) below, including the portion of any Mixed Claim that is unrelated to Scouting); (ii) a Claim alleging Abuse shall be an "Abuse Claim" against a Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any of their respective Representatives (in their capacity as such) if such Claim is related to Scouting (including the portion of any Mixed Claim that is related to Scouting); (iii) any portion of a Mixed Claim alleging Abuse involving the Debtors, Reorganized BSA, Related Non-Debtor Entities, Local Councils, or their respective Representatives (in their capacities as such) is necessarily Scouting-related and shall be considered an Abuse Claim; and (iv) any Claim against the Debtors, Reorganized BSA, Related Non-Debtor Entities, Local Councils, or their respective Representatives (in their capacities as such) alleging Abuse is necessarily Scouting-related and shall be considered an Abuse Claim.")"

[9] *See* Plan, Art. I.A-262.

[10] *See* Plan, Art. I.A-261.

The Channeling Injunction and Releases, therefore, permanently enjoin and release any and all claims alleging Abuse[11] against a Limited Protected Party that are attributable to, arise from, or relates to, in whole or in part, "Scouting" as that term is defined in the Plan, provided that the claim also relates to Abuse alleged to have first occurred on or after January 1, 1976 or is covered under any insurance policy issued by any Settling Insurance Company.

9. The Plan contains a limited carve out for "Mixed Claims" that include "allegations of Abuse related to or arising from Scouting as well as Abuse that occurred prior to the Petition Date unrelated to or not arising from Scouting."[12] Stated differently, those claims that do not relate to or arise from "Scouting" are excluded from the Channeling Injunction and Releases contained in the Plan. The conclusion of whether a claim is "Scouting-related" will ultimately depend on the facts and circumstances of each case.

## II. California Complaint

10. On December 13, 2022, Plaintiffs John Roe DZ 20, John Roe DZ 21, and John Roe DZ 22 (the "***Plaintiffs***") filed a complaint for damages (the "***Complaint***")[13] against TCJC's local congregation and certain affiliated defendants (the "***TCJC Parties***") in the Superior Court of the State of California for the County of Santa Clara (the "***California Court***"), Case Number 22-CV-408645 (the "***California Action***"). The Complaint alleges various theories of liability including,

---

[11] *See* Plan, Art. I.A-17 (Abuse "means sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, indecent assault or battery, rape, pedophilia, ephebophilia, sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction, or intimidation, any other sexual misconduct or injury, contacts or interactions of a sexual nature, including the use of photography, video, or digital media, or other physical abuse or bullying or harassment without regard to whether such physical abuse or bullying is of a sexual nature, between a child and an adult, between a child and another child, or between a non-consenting adult and another adult, in each instance without regard to whether such activity involved explicit force, whether such activity involved genital or other physical contact, and whether there is or was any associated physical, psychological, or emotional harm to the child or non-consenting adult.")

[12] *See* Plan, Art. I.A-184.

[13] A true and correct copy of the Complaint is attached hereto as <u>Exhibit D</u>.

among other things, negligence, negligent supervision, failure to warn, negligent hiring and retention, and sexual battery in connection with alleged abuse committed by an individual who served as a BSA troop leader and was a member of a local TCJC congregation. *See* Complaint, ¶¶ 9–10.

11. Upon service, the TCJC Parties have an affirmative duty under the California Rules of Court (the "*California Rules*") to notify the California Court of the existence of a stay.[14] The California Rules do not provide a mechanism for a defendant to reserve its rights to file a notice of stay at a later time.[15] Thus, in order to preserve its rights under the California Rules and the Confirmation Order, it is necessary for the TCJC affiliated defendant to file a notice of stay in the California Court and for TCJC to move in this Court to enforce the Confirmation Order.

12. Upon information and belief, the Plaintiffs filed proofs of claim in the Chapter 11 Cases.

## **RELIEF REQUESTED**

13. By this Motion, Movant seeks entry of the Proposed Order, attached hereto as Exhibit A, enforcing the terms of the Plan and Confirmation Order, and enjoining Plaintiffs from pursuing the claims set forth in the Complaint, and directing Plaintiffs to immediately dismiss the California Action as against all TCJC entities.

---

[14] *See* CRC 3.650(a) (Duty to notify court and others of stay) ("The party who requested or caused a stay of a proceeding must immediately serve and file a notice of the stay and attach a copy of the order or other document showing that the proceeding is stayed.); *In re Guido*, No. AP 21-90004-LT, 2021 WL 2226613, at *7 (Bankr. S.D. Cal. June 1, 2021) (concluding that "the confluence of the California Rules of Court and the Rules of Professional Conduct mandate that an attorney representing a party in a state court action pending when its client files bankruptcy must file the State Court Rule 3.650 Notice" (emphasis added)); *Sino Century Dev. Ltd. v. Farley*, 211 Cal. App. 4th 688, 683 (Cal. Ct. App. 2012) (imposing sanctions against debtor who failed to file the Rule 3.650 notice and notify the court and opposing party of his bankruptcy filing until the day before the state court trial). All rights are reserved as to whether service of the Complaint upon TCJC was proper.

[15] *Id.*

## BASIS FOR RELIEF

14. As a Participating Chartered Organization, claims against TCJC that meet the criteria set forth in the Plan are permanently channeled and released pursuant to the Confirmation Order.[16] In particular, as a Limited Protected Party, Abuse Claims against TCJC are subject to the Channeling Injunction and Releases contained in Article X of the Plan, and the sole recourse of any holder of an Abuse Claim against a Limited Protected Party is against the Settlement Trust.[17]

15. As set forth above, a determination of whether a claim is enjoined and released under the Plan will require a court to apply the Plan to the facts and circumstances of the relevant case. This is a fact intensive inquiry that will depend on whether the claim in question constitutes an "Abuse Claim" under the Plan, which, in turn, will depend on whether the claim is attributable to, arises from, or relates to "Scouting-related" abuse. This determination cannot be made without appropriate factual inquiry into the facts and circumstances of the abuse alleged and the context in which the alleged abuse occurred. In the absence of factual discovery, plaintiffs could undermine the Channeling Injunction and Releases through artful pleading and conclusory allegations that claims are, or are not, Scouting-related. This type of pleading would deprive TCJC of the protection of the Plan and Confirmation Order that TCJC obtained in exchange for consensually contributing substantial insurance rights as a Participating Chartered Organization under the Plan.

16. Indeed, upon information and belief, the Plaintiffs also filed proofs of claim in the Chapter 11 Cases. TCJC seeks limited and targeted discovery to develop a factual record for this Court to determine whether the claims in question arise from or relate to Scouting.

---

[16] *See* Plan, Art. X.F.

[17] *See* Plan, Art. X.F and X.J.2.

17. Given the importance of the Channeling Injunction to all Chartered Organizations, and the Court's retention of exclusive jurisdiction with respect to the Plan and Confirmation Order, TCJC requests that this Court interpret the Channeling Injunction and Releases after the parties have an opportunity to develop an appropriate factual record through discovery. As noted above, it is well-settled that a court possesses the inherent authority to enforce its own orders. *In re E. W. Resort Dev. V, L.P., L.L.L.P.*, No. 10-10452 (BLS), 2014 WL 4537500, at *9 (Bankr. D. Del. Sept. 12, 2014) (citing *In re Cont'l Airlines, Inc.*, 236 B.R. 328, 325-26 (Bankr. D. Del. 1999). Further, "where a motion seeks to prevent the prosecution of causes of action expressly prohibited by the confirmation order, it would be difficult to identify judicial acts that are any more critical to the orderly functioning of the bankruptcy process or more closely tethered to core bankruptcy jurisdiction." *In re Residential Capital, LLC*, 508 B.R. 838, 849 (Bankr. S.D.N.Y. 2014) (internal quotation marks and citations omitted).

## NOTICE

18. Notice of this Motion has been given to (a) counsel to the Debtors, (b) counsel to the Settlement Trust, (c) the Office of the United States Trustee for the District of Delaware; (d) counsel to Plaintiffs; and (e) those persons who have formally appeared in these cases and requested service pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Movant submits that no additional notice need be given. No prior request for the relief requested herein has been made to this or any other court.

Dated: June 20, 2023
Wilmington, Delaware                    */s/ Michael J. Merchant*

**RICHARDS, LAYTON & FINGER, P.A.**
Michael J. Merchant (No. 3854)
One Rodney Square
920 North King Street
Wilmington, DE  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
E-mail:  merchant@rlf.com

- and -

**LATHAM & WATKINS LLP**

Jeffrey E. Bjork (admitted *pro hac vice*)
Deniz A. Irgi (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
E-mail:  jeff.bjork@lw.com
         deniz.irgi@lw.com

- and -

Adam J. Goldberg (admitted *pro hac vice*)
Robert J. Malionek (admitted *pro hac vice*)
Madeleine C. Parish (admitted *pro hac vice*)
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020-1401
Telephone: (212) 906-1200
E-mail: adam.goldberg@lw.com
        robert.malionek@lw.com
        madeleine.parish@lw.com

*Counsel to The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole*