FILED

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

2023 JUL 24  PM 2: 17

CLERK
BANKRUPTCY COURT

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| | § | Case No. 20-10343 (LSS) |
| | § | |
| BOY SCOUTS OF AMERICA AND | § | (Jointly Administered) |
| DELAWARE BSA, LLC | § | |
| | § | Hearing Date: August 2, 2023 |
| Reorganized Debtors, | § | at 2:00 p.m. (ET) |
| | § | Response Deadline: July 24, |
| | § | 2023 at 4:00 p.m. (ET) |

**CREDITOR, KAREN COOLEY IZEN, (CLAIM NO. C343-5286) RESPONSE TO
REORGANIZED DEBTORS' EIGHT OMNIBUS (SUBSTANTIVE) OBJECTION TO
CERTAIN (1) NO LIABILITY CLAIMS AND (2) PENSION CLAIMS**

TO THE PRESIDING BANKRUPTCY JUDGE FOR THE DISTRICT OF DELAWARE:

COMES NOW, Creditor and Claimant, Karen Lee Cooley Izen, ("COOLEY") (Claim No. C343-5286) and files this her Response to REORGANIZED DEBTORS' EIGHT OMNIBUS (SUBSTANTIVE) OBJECTION TO CERTAIN (1) NO LIABILITY CLAIMS AND (2) PENSION CLAIMS and would show this Court the following:

**P. 9, ¶ 24, ii.  NAME OF CLAIMANT, CLAIM NUMBER, AND
DESCRIPTION OF THE BASIS FOR THE AMOUNT OF THE CLAIM**

I.

1.   Name of Claimant: Karen Lee Cooley Izen.

2.   Claim No. C343-5286.

3.   Basis for Amount of Claim:

The basis for the Proof of Claim is the benefit the Boy Scouts of America ("BSA") received in occupying the creditor's 533 Zoe Street property in Houston, Texas and using that property and its improvements to conduct Boy Scout meetings and activities.  The amount of the Proof of Claim is calculated as follows:

3.1.  Unpaid ad valorem taxes representing yearly rent:

Tax Year 2015                                    $  966.00

1

| | |
|---|---|
| Tax Year 2016 | S   970.70 |
| Tax Year 2017 | $   883.05 |
| Tax Year 2018 | $   682.69 |

| | |
|---|---|
| 3.2.   Mowing and maintenance of the property: | $1,152.56 |
| Second grass lien, Check 7577 | $   730.37 |

| | |
|---|---|
| Total | $5,385.37 |

**P. 9, ¶ 24, iii.   SPECIFIC FACTUAL BASIS AND SUPPORTING LEGAL ARGUMENT UPON WHICH THE CLAIMANT WILL RELY IN OPPOSING THIS OBJECTION:**

II.

**SPECIFIC RESPONSE TO DEBTOR'S OBJECTION TO CREDITOR'S PROOF OF CLAIM:**

1.   Creditor and Claimant Cooley specifically responds to the material allegations set out in the debtors' Eighth Omnibus (Substantive) Objection to Certain (1) No Liability Claims and (2) Pension Claims (non-abuse claims) as follows:

**DEBTORS' CONTENTION:**

2.   Reason:   According to the Debtors' books and records, the Debtors have no liability on the asserted claim.   Liability on this claim, if any, belongs to various non-debtor Local Councils:   Schedule 1, P. 1, No. 5 Creditor Karen Cooley Izen.

**CREDITOR'S RESPONSE:**

3. The Boy Scouts of America paid the ad valorem taxes it owed creditor Cooley directly to the taxing authorities through the Harris County Tax Assessor's office as rent for decades. The records of the Harris County Tax Assessor's office reflect and identify the Boy Scouts of America as the Payor of the ad valorem taxes which BSA owed to the creditor as a property owner of 533 Zoe Street in Houston, Texas which BSA was using for its Boy Scouts meetings and activities.

2

Further, the creditor did not receive any notice of limited liability from the Debtor Boy Scouts of America when it entered into the oral lease agreement and continued the oral lease agreement while the Boy Scouts of America occupied the Zoe Street property.

**"IMPROPER BENEFIT" - Objection, P. 7 ¶ 18.**

**CREDITOR'S RESPONSE:**

4.   The Debtor Boy Scouts of America's claim that creditor Cooley should not be paid under the oral lease agreement allowing BSA to conduct Boy Scout meetings and activities on 533 Zoe Street, Houston, Texas because that would be payment of an "improper benefit" to the creditor is false and such allegation is denied.  BSA was allowed to occupy the property and use it in its scouting activities and should be required to pay its debts.

If Debtor BSA cannot afford to pay for benefits actually received by it which enhanced or made possible its scouting activities and meetings, its plan of reorganization should be rejected and/or disapproved.

**SPECIFIC FACTUAL BASIS FOR CREDITOR'S PROOF OF CLAIM:**

1.   Beginning in tax year 1952 Debtor BSA entered into a year-to-year oral lease agreement with creditor Cooley's grandmother, Annie Lucinda Norsworthy, to occupy the creditor's 533 Zoe Street property in Houston, Texas, to use the land and building located there for its Boy Scouts meetings and activities, and to pay a yearly rental of the ad valorem taxes as the yearly rent under the oral lease as the ad valorem taxes on said property accrued.  BSA as a tenant also agreed to mow the property and to

3

maintain the building which was being used by BSA for its scout meetings and scout activities as part of its rental obligations. See Cooley Declaration, P. 2, ¶ 4.

2.   BSA went into possession of the 533 Zoe Street property under the oral lease agreement and occupied it for decades from 1952 through the date of Annie Lucinda Norsworthy's death in 1976 and, thereafter, through the date of the filing of the Chapter 11 bankruptcy by Debtor BSA, See Cooley Declaration, P. 3, ¶5.

3.   The records of the Harris County Tax Assessor's office prove that the Boy Scouts of America, the Chapter11 debtor in this case, paid the ad valorem taxes on the 533 Zoe Street property for many decades from 1952 through 2014.   See Cooley Declaration P. 4, ¶ 6.

4.   The year to year lease under the oral agreement was never terminated by BSA prior to the filing of this Chapter 11 bankruptcy in 2020 because BSA never gave proper notice as required by the terms of the oral lease agreement,   See Cooley Declaration P. 5, ¶ 8.

5.   Creditor Cooley received her title interest to the Zoe Street property by inheritance from Annie Lucinda Norsworthy. Claimant Cooley continued to honor the terms of the oral lease agreement entered into by her grandmother, Annie Lucinda Norsworthy and the Boy Scouts of America because that was the intent of her grandmother.

6.   In 2018 Creditor Cooley received a letter from the attorney for the local taxing authorities threatening to sue her for payment of ad valorem taxes which were due on the 533 Zoe

4

Street property for tax years 2015, 2016, 2017, and 2018.    See Cooley Declaration P. 4, ¶ 5; 5, ¶ 8.

7.    Creditor Cooley never received notice from debtor BSA that the oral lease agreement for use of the 533 Zoe Street property had been rejected by the Debtor.  See Cooley Declaration P 5, ¶ 8.

8.    Debtor BSA never properly terminated the year to year oral lease agreement.  Creditor Cooley paid the ad valorem taxes for tax years 2015 - 2018 in the amount of $3,502.44 and the City of Houston's grass / weed cutting liens in the amount of $1,152.56 in order to avoid being sued by the local taxing authorities in a tax foreclosure suit.  See Cooley Declaration P. 5, ¶ 8.  Creditor Cooley also paid another grass mowing lien in the amount of $730.37.  See Cooley Declaration, P. 5, ¶ 8.

9.    Debtor BSA never provided the creditor any notice that it was not liable for the rental debts incurred as the result of its Boy Scout meetings and activities on property rented for that specific purpose.  See Cooley Declaration P. 6. ¶ 10.

10.    Creditor Cooley's oral lease agreement with BSA provided a benefit to the Debtor BSA in its pre-Chapter 11 filing business and/or charitable activities.  BSA received the benefit of the occupation of the leased 533 Zoe Street property for many decades prior to its filing of its current Chapter 11 bankruptcy proceeding.  BSA generated prepetition debt which was part of its operations and part of the carrying out of its stated purpose as well as activities and meetings.

11.    Debtor BSA falsely denied that it received any benefit

from the use of Creditor's property pre-petition.  It was
necessary for the Creditor Cooley to retain the services of a
bankruptcy attorney in order to prepare and file her Response to
the Debtor BSA's objection to her Proof of Claim and to prepare
her Declaration and proof and evidence, in the form of Exhibits,
which have been filed in this contested proceeding.

**LEGAL ARGUMENT SUPPORTING CREDITOR'S PROOF OF CLAIM AND PLEAS IN
AVOIDANCE:**

**TEXAS LAW GOVERNS THE DEBTOR BSA'S LIABILITY FOR THE UNPAID
RENTAL UNDER THE 533 ZOE STREET PROPERTY ORAL LEASE:**

The oral lease agreement described in creditor Cooley's
Declaration which is the basis for creditor Cooley's Proof of
Claim involved the lease of real property located in the County
of Harris and State of Texas. The oral lease contract was per-
formable under its terms "in whole or in part" in the State of
Texas. Debtor BSA's activities including Boy Scout meetings which
were made possible by the oral lease agreement took place wholly
within the State of Texas.

Under these facts Texas is the state with the "most signif-
icant relationship" with this controversy and claim and the law
of the State of Texas should be applied in determining debtor
BSA's liability under the terms of the oral lease agreement.  See
*Red Roof Inns v. Murat Holdings, L.L.C.*, 223 S.W.3d 676, 684-685
(Tex. App. 2007):

> Which state's law governs a substantive issue is a
> question of law, which we must resolve de novo. Minn.
> Mining & Mfg. Co. v. Nishika, Ltd., 955 S.W.2d 853, 856
> (Tex.1996). Texas  courts use the "most significant
> relationship" test to decide choice of law issues.
> *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205
> (Tex.2000); see also RESTATEMENT (SECOND) OF CONFLICT
> OF LAWS  6, 145 (1971). Under that test, a court must

6

consider which state's law has the most significant relationship "to the particular substantive issue to be resolved." *Hughes Wood Prods., Inc.*, 18 S.W.3d at 205. The Restatement sets out the following general principles relevant in a choice of law analysis:

(a) the needs of the interstate and international systems;

(b) the relevant policies of the forum;

(c) the relevant policies of the other interested states and the relative interests of those states in determination of the particular issue;

(d) the protection of justified expectations;

(e) the basic policies underlying the particular field of law;

(f) certainty, predictability, and uniformity of result; and

(g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS  6(2) (1971); see also *Hughes Wood Prods., Inc.*, 18 S.W.3d at 205. Section 145 states that the following contacts are to be taken into account when applying the principles of section 6 to determine the law applicable to a particular issue:

(a) the place where the injury occurred;

(b) the place where the conduct causing the injury occurred;

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and

(d) the place where the relationship, if any, between the parties is centered.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS  145(2) (1971). These contacts are to be evaluated according to their relative importance with respect to the particular issue. Id. Furthermore, the number of contacts with a state is not determinative. *Doctor v. Pardue*, 186 S.W.3d 4, 10 (Tex. App.-Houston [1st Dist.] 2006, pet. denied). Rather, a court must evaluate the contacts in light of the state policies underlying the particular substantive issue. Id.

The most significant relationship test when applied to this controversy requires application of Texas law to resolve the creditor's claim against Debtor BSA for unpaid rent under the oral lease agreement.

**ORAL LEASE AGREEMENTS FOR OCCUPATION OF REAL PROPERTY ENFORCEABLE IN TEXAS:**

Texas recognizes oral lease agreements for rentals of real property for a period of term of tenancy not to exceed one year. An oral lease agreement may be extended by agreement of the parties with notice prior to expiration of each succeeding one-year term.  Texas law holding oral lease agreements are enforce-able is exhaustively discussed in *Stovall v. Hibbs Fin. Ctr., Ltd.,* 409 S.W.3d 790, 8-3-804 (Tex. App. 2013):

> In its second issue, Stovall contends the trial court erred in awarding "unreasonable" attorney's fees to HFC because no enforceable contract existed upon which HFC could sue for breach. We generally review a trial court's decision to award attorney's fees for an abuse of discretion. *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998). Section 38.001 of the Texas Civil Practice and Remedies Code permits the recovery of reasonable attorney's fees in a suit on an oral or written con-tract. Tex. Civ. Prac. & Rem.Code Ann. 38.001(8) (West 2008). To recover attorney's fees in a suit based on a contract, a party must prevail on the cause of action and recover damages. *Ochoa v. Craig,* 262 S.W.3d 29, 33 (Tex.App.-Dallas 2008, pet. denied). While the trial court has the discretion to set the amount of an attor-ney's fees, it has no discretion to deny the fees if they are proper under section 38.001. *Smith v. Patrick W.Y. Tam Trust,* 296 S.W.3d 545, 547 (Tex.2009); *RM Crowe Prop. Servs. Co., L.P. v. Strategic Energy, L.L.C.,* 348 S.W.3d 444, 452 (Tex.App.-Dallas 2011, no pet.); *Hassell Constr. Co. v. Stature Commercial Co.,* 162 S.W.3d 664, 668 (Tex.App.-Houston [14th Dist.] 2005, no pet.). It is presumed that usual and customary attorney's fees are reasonable, but this presumption may be rebutted. *Hassell Constr. Co.,* 162 S.W.3d at 668.

> By rendering summary judgment in favor of HFC, the

trial court rejected Stovall's statute-of-frauds de-
fense and determined that in addition to the signed
lease, there were oral agreements to lease the addi-
tional suites. HFC was awarded unpaid rent in the
amount of $25,136.83 for Stovall's breach of those
agreements. Because HFC prevailed on its claim for
unpaid rent, the trial court did not err in awarding
attorney's fees for breach of contract. See *Ochoa*, 262
S.W.3d at 33.

The issue of the amount of attorney's fees was tried to
the bench. HFC's attorney submitted his resume, the
September 14, 2010 presentment letter to Stovall, and
the billing records for the representation. He sought
$38,250 in fees through trial and testified the fees
sought were reasonable based on the time and labor
involved, the skill required, the customary fee
charged, the amount involved and the results, and his
experience, reputation, and ability. Stovall did not
cross-examine HFC's attorney; rather, it objected that
there was no basis for attorney's fees because "there
ha[d] been no contract proven." The trial court reduced
HFC's request "slightly" and awarded $35,000 in attor-
ney's fees through trial plus amounts if HFC prevailed
on appeal. The trial court acknowledged that it was
"awfully loath" to award attorney's fees in excess of
the actual damages, but it stated, "the record in this
matter overall will reflect that it was seriously
contested, [and] that there was a certain amount of
dilatory and obstructive behavior on the part of
[Stovall]."

Without citation to any authority, Stovall argues the
award of attorney's fees, which was "in excess of the
actual judgment is not customary or reasonable for a
breach of contract case." We disagree, and after re-
viewing the record, we conclude the trial court did not
abuse its discretion in awarding $35,000 in attorney's
fees to HFC. We overrule Stovall's second issue

Under Texas law not only are oral lease agreements enforceable
but, also, attorney's fees must be awarded to a party such as the
creditor here who successfully enforces an oral lease agreement
under Texas Civil Practice and Remedies Code §38.001.

Unsurprisingly, Texas Bankruptcy Courts have approved proofs
of claim asserting debts against a debtor for unpaid rent due
under lease agreements. *In re Perry*, Case No. 08-32362-H4-11

(Bankr. S.D. Tex. 8/26/2009) (Bankr. S.D. Tex. 2009).

**CREDITOR COOLEY SHOULD RECOVER HER ATTORNEY'S FEES UNDER TEXAS CIVIL PRACTICE AND REMEDIES CODE SECT. 38.001**

Debtor BSA was presented with a proof of claim for payment of the ad valorem taxes and other costs for maintaining the 533 Zoe Street which it was required to pay under the oral lease agreement. Debtor BSA, instead of paying the relatively modest amount, with the Proof of Claim decided to act in a disruptive and dilatory manner by contesting the creditor's claim with a declaration of Stephanie Phillips based not on fact but on "belief" of the declarant.

Creditor Cooley should be awarded the reasonable and necessary attorney's fees she has incurred in pursuing this claim against Debtor BSA which clearly and without doubt on the record already presented by this Creditor's Response and Creditor's proof of claim proves that Debtor BSA received benefits from the creditor Cooley in the form of occupation of Cooley's property and use of such property by the BSA for carrying out its Boy Scout meetings and activities which are, ostensively, the stated purpose of the debtor itself and constitute its "charitable or fraternal activities" which it must perform in order to be entitled to its exempt charter. See *Stovall* at P. 804.

**APPARENT OR OSTENSIBLE AGENCY AND ESTOPPEL DEFEAT DEBTOR BSA's CLAIM THAT SOME OTHER ENTITY OR PERSONS ARE RESPONSIBLE FOR CARRYING OUT BSA's ACTIVITIES AND INCURRING DEBTS TO DO SO:**

Debtor BSA's actions, representations, and activities carried out through its representatives led the Creditor's grandmother, Annie Lucinda Norsworthy, and then creditor into believing that they were dealing with the Boy Scouts of America

10

and that the Boy Scouts of America would honorably pay the debts incurred for carrying out its Boy Scout meetings and activities including those involving the rental and maintenance of the 533 Zoe Street property so that property could be used to further debtor BSA's activities.  Apparent, ostensible, or implied agency is a form of estoppel.  Estoppel binds a party who attempts to avoid the consequences of its prior representations, actions, and inactions, which reasonably lead a victimized party to believe that the representatives of an opposing party have the power and authority to make agreements, incur debts, and carry out the business, or in this case, the charitable activities of any undisclosed principal.  In this case the Declaration of Stephanie Phillips makes no allegation whatsoever that the persons or entities renting the creditor's premises and using it under the name of the debtor BSA were acting independently and that BSA would not be liable for the ad valorem taxes which were to be paid for the yearly rental under the oral lease agreement.

Debtor BSA's actions -- allowing its scout masters and Boy Scouts to use the creditor's premises while leading the creditor to believe they were doing so under BSA's authority and for BSA's benefit, without any disclosure of limited liability exonerating debtor BSA from any claim by the creditor for the benefit of the creditor's land estops BSA from taking the position in this case that its scout masters and Boy Scouts were independent contractors, agents, parties, or invitees, which had no power to incur debts on debtor BSA's behalf.

Further, debtor BSA claims in its fund raising activities,

both present and past, that it fosters and participates in nationwide fraternal and charitable activities described euphemistically for a period of over a hundred years as "boy scouting." An entity such as debtor BSA which purports to operate nationwide is deemed for legal purposes to have a nation-wide vision of the nature and extent of its own activities. By allowing its name, Boy Scouts of America, to be listed with the Harris County Tax Assessor's office as the party responsible for paying the ad valorem real estate taxes on Account No. 012-076-000-0017 and the 533 Zoe Street property for decades, debtor BSA led the creditor Cooley, who relied on the Harris County Tax Assessor's records, to reasonably believe and rely on the fact that the debtor BSA was honoring the oral lease agreement for occupation of the creditor's property. See Cooley Declaration P. 4, ¶ 6. The Texas law of apparent, ostensible, or implied agency stating the elements of proof required is set out in the recent case of *Strucsure Home Warranty, LLC v. 2rh Bros. Props.* (Tex. App. 2023) (no pet.):

> An agent is a person authorized to transact business for a principal and is subject to the principal's control. *Reliant Energy Servs., Inc. v. Cotton Valley Compression,* L.L.C., 336 S.W.3d 764, 782-83 (Tex. App.-Houston [1st Dist.] 2011, no pet.). Authorization to act and control of the action are the two essential elements of agency. Id. Authority to act may be actual or apparent. *Gaines v. Kelly,* 235 S.W.3d 179, 182 (Tex. 2007). Apparent agency, also called apparent authority, is based on the concept of estoppel and imposes liabi-lity when the principal's conduct should equitably prevent a person from denying the existence of an agency relationship. *Baptist Mem'l Hosp. Sys. v. Samp-son,* 969 S.W.2d 945, 947 & n.2 (Tex. 1998). In deter-mining whether an agent has apparent authority, "only the conduct of the principal is relevant," and we examine the reasonableness of the third party's assump-tion about authority. *Sunergon Oil, Gas & Mining Grp.,*

12

*Inc. v. Cuen,* No. 01-19-00998-CV, 2021 WL 3775589, at
\*5 (Tex. App.-Houston [1st Dist.] Aug. 26, 2021, no
pet.) (mem. op.).   The question of whether an agency
relationship exists is usually a fact issue. *Jarvis v.
K&E Re One, LLC,* 390 S.W.3d 631, 639 (Tex. App.-Dallas
2012, no pet.).

The creditor Cooley asserts both apparent agency and estoppel as
a plea in avoidance against debtor BSA's claim that some other
party or entity associated with or having connection with debtor
BSA is liable for the debt incurred under the creditor's oral
lease agreement which has been presented to this Court as a proof
of claim.   An undisclosed principal who uses agents to put over
its business activities or, here, alleged charitable and frater-
nal activities -- becomes liable for the debts incurred by the
agent acting on the undisclosed principal's behalf when it rati-
fies the agent's actions by accepting the benefits.   See *Hydra-
Rig, Inc. v. ETF Corp.,* 707 S.W.2d 288, 290 (Tex. App. 1986)
(writ refd n.r.e):

> Hydra-Rig urges that, at the very least, an apparent
> agency relationship existed between OHWC and ETF for
> the repairs and renovations which form the basis of
> this suit.
>                          .   .   .
>
> Also, Hydra-Rig asserts that the undisclosed principal,
> ETF, in retaining the benefits accruing to it by virtue
> of the renovation and repairs made by Hydra-Rig, became
> liable to Hydra-Rig for its work in this case. See *N.K.
> Parrish, Inc. v. Southwest Beef Industries Corp.,* 638
> F.2d 1366, 1371-72 (5th Cir.), cert. denied, 454 U.S.
> 1047, 102 S.Ct. 587, 70 L.Ed.2d 488 (1981)

*Hydra-Rig* stands for the proposition of Texas law that even
if a claim of apparent agency fails, the debtor BSA is estopped
by ratification and retention of benefits from receiving unjust
enrichment by failing to pay the rent due creditor under the oral
lease agreement.   A claim by debtor BSA that it was unaware that

13

its scouting activities and meetings were being carried out on the 533 Zone Street property for over six decades is not credible.

**STATUTE OF FRAUDS INAPPLICABLE TO ORAL LEASE AGREEMENT SUBSTANTI-ALLY PERFORMED OVER MANY DECADES:**

Nor does the statute of frauds provide any refuge from liability to debtor BSA for its unfair and inequitable occupation and use of the creditor's real property without paying the consideration debtor BSA agreed to pay and which is due under the oral lease agreement. The purpose of the statute of frauds is not to bar fully performed agreements or partially performed agreements which have been substantially performed and which, if not enforced, would work the very fraud the statute of frauds was enacted to prevent. An exception to the statute of frauds exists where contracts such as oral lease agreements have been fully performed or partially and substantially performed. An example of these rules in Texas appears in *Austin Capital Collision, LLC v. Pampalone* (Tex. App. 2016) (mem.op).:

> Viewing the evidence in the light most favorable to the verdict, we therefore further conclude that there was more than a scintilla of evidence to support the trial court's findings that ACC assumed GP's debt on the loan from Pampalone and partially performed. See *Thomas v. Miller,* No. 06-15-00095-CV, 2016 Tex. App. LEXIS 8322, at *20-21 (Tex. App.- Texarkana Aug. 4, 2016, no pet.) (concluding that partial performance exception was met where contract for
> Page 14
> sale of land did not contain sufficient property description and therefore failed to meet statute of frauds but buyer moved into home, made monthly payments to bank for five years, paid property taxes, and made repairs with seller's knowledge and consent); *Aguirre v. Pompa*, No. 11-14-00168-CV, 2016 Tex. App. LEXIS 5312, at *7-10 (Tex. App.-Eastland May 19, 2016, no pet.) (mem. op) (concluding that partial performance exception applied where evidence showed purchaser paid

purchase price, took possession of land, and moved personal property onto land, and seller provided receipts showing full payment); *Stovall*, 409 S.W.3d at 801 (holding that partial performance removed oral lease agreement from statute of frauds where lessee occupied property and paid rent for more than one year, and email communications reflected lessor accepted rent and provided maintenance services);   *Cottman Transmission Sys., L.L.C. v. FVLR Enters., L.L.C.*, 295 S.W.3d 372, 378-79 (Tex. App.-Dallas 2009, pet. denied) (concluding that payment of rent was "good indication" that party was assuming lease and holding that there was partial performance so as to remove lease from statue of frauds where party took other actions consistent with assumption of lease, including entering into management agreement he had no authority to enter unless he had assumed lease and placing manager at and securing utilities for premises); *Spinks*, 873 S.W.2d at 74, 76 (concluding that there was legally sufficient evidence to support jury's finding that joint venture, created after closing on sale of property, agreed to pay indebtedness underlying note where joint venture signed no written agreement to pay debt but assumed benefits of note by actively managing property, including making permanent improvements, listing it as asset on tax returns, and making payments to sellers); *Estate of Kaiser v. Gifford*, 692 S.W.2d 525, 525-26 (Tex. App.-Houston [1st Dist.] 1985, writ ref'd n.r.e.) **(noting rule that "where one party fully performs a contract, the**
Page 15
**Statute of Frauds is unavailable to the other who knowingly accepts benefits and partly performs").**

The statute of frauds exceptions -- full performance and partial or substantial performance -- like a apparent agency principles are forms of estoppel just as unjust enrichment, another plea in avoidance, which is applicable here in the creditor's favor discussed below.

Parties like debtor BSA who lead the public including here, creditor Cooley, to believe that parties or entities acting in their behalf and carrying out their activities cannot allow themselves to be listed as the party responsible for paying ad valorem taxes on a property for decades and then claim that they

have no liability for the payment of such taxes under the oral lease agreement or other agreement under which they pay the taxes of third party creditors in exchange for receipt of benefits and economic consideration.

**UNJUST ENRICHMENT ALSO BARS DEBTOR BSA's CLAIM OF NO LIABILITY:**

Creditor Cooley also asserts the plea in avoidance of unjust enrichment. Application of the unjust enrichment theory in the bankruptcy context to prevent a debtor's trustee's from obtaining approval of a reorganization plan and then denying liability for payment of the just debts arising out of the debtors' pre-Chapter 11 petition financial activities including, as here, debts incurred in charitable fund raising and in carrying out the alleged and stated fraternal or charitable purpose of the debtor. The Third Circuit in *Stendardo, In re*, 991 F.2d 1089, 1093, 1099 (3rd Cir. 1992) applied the unjust enrichment theory to prevent a debtor from being unjustly enriched.

> In the alternative, the bankruptcy court held that even if such a merger occurred, FNMA could include the Post-Judgment Expenses in its secured claim under a theory of unjust enrichment because FNMA's payments clearly conferred benefits upon the Debtors who retained an independent legal obligation to pay these costs. Id. at 840-41.
>
> . . .
>
> FNMA finally argues that it is entitled to recover the Post-Judgment Expenses from the Debtors on a theory of unjust enrichment. In order to succeed on this claim, FNMA must show, inter alia, enrichment to the Debtors and an injustice to it if recovery for that enrichment is denied. *Visor Builders, Inc. v. Devon E. Tranter, Inc.*, 470 F.Supp. 911, 924 (M.D.Pa.1978) (citing *Meehan v. Cheltenham Township*, 410 Pa. 446, 189 A.2d 593 (1963)); see *Wolf v. Wolf*, 356 Pa.Super. 365, 514 A.2d 901, 905-06 (1986) (elements of unjust enrichment are benefits conferred on, and accepted by, defendant that it would be inequitable for defendant to retain the benefit without payment for their value); see also

16

*Sachs v. Continental Oil Co.*, 454 F.Supp. 614, 619 (E.D.Pa.1978) (person who has been unjustly enriched at expense of another is required to make restitution) (citing *Binns v. First Nat'l Bank*, 367 Pa. 359, 80 A.2d 768, 776 (1951)).

Texas law of estoppel is in accord with the Third Circuit's view expressed in *Stendardo*.

**P. 9, ¶ 24, iv. ALL DOCUMENTATION AND OTHER EVIDENCE IN SUPPORT OF THE CLAIM, NOT PREVIOUSLY FILED WITH THE COURT OR THE CLAIMS AND NOTICING AGENT, UPON WHICH THE CLAIMANT WILL RELY IN OPPOSING THIS OBJECTION:**

III.

Creditor relies on the following evidence in support of the validity of her proof of claim.

1.   Proof of Claim filed November 12, 2020, Claim No. C343-5286.

2.   Declaration of Creditor and Claimant Karen Lee Cooley Izen, In Support of Creditor's Response to Reorganized Debtors' Eighth Omnibus (Substantive) Objection to Certain (1) No Liability Claims and (2) Pension Claims and its attached Exhibits A through C.

3.   The admissions of debtor, BSA in its Reorganized Debtors' Eighth Omnibus (Substantive) Objection to Certain (1) No Liability Claims and (2) Pension Claims (Non-Abuse Claims) and the Declaration of Stephanie Phillips in Support of Reorganized Debtors' Eighth Omnibus (Substantive) Objection to Certain (1) No Liability Claims and (2) Pension Claims (Non-Abuse Claims).

**CREDITOR'S OBJECTION TO DEBTORS' EVIDENCE / DECLARATION OF STE-PHANIE PHILLIPS:**

IV.

Creditor and Claimant Karen Cooley Izen objects to the

17

Declaration of Stephanie Phillips and all of its contents and moves to strike such Declaration on the grounds that such Declaration is not based on the personal knowledge of the Declaration Stephanie Phillips. A declaration of facts in the objection to proof of claim which is based on "belief" and not personal knowledge is conclusory and does not rebut the allegations of the proof of claim which are prima facie evidence of the validity of the claim without rebuttal or impeachment by the debtor based on personal knowledge.

## CONCLUSION

WHEREFORE Claimant and Creditor Karen Cooley Izen requests that this Court entertain this Response to Reorganized Debtors' Eighth Omnibus (Substantive) Objection to Certain (1) No Liability Claims and (2) Pension Claims (Non-Abuse Claims) along with the creditor's proof of claim, Claim No. C343-5286, and that after due consideration of same that this Court enter a final order or judgment: (1) allowing and awarding creditor and claimant Cooley's proof of claim in the amount of $5,385.37 as a valid debt which must be paid by the Chapter 11 debtor BSA; (2) awarding creditor and claimant Cooley her reasonable and necessary fees and costs expended by her in the successful preparation, presentation and litigation of her proof of claim against Debtor BSA pursuant to Texas Civil Practice and Remedies Code § 38.001; (3) awarding creditor and claimant Cooley her attorney's fees reasonably and necessarily incurred in any appeal to the United States District Court for the District of Delaware and/or any appeal to the United States Court of Appeals for the Third

18

Circuit to which creditor or claimant is the successful party; and (4) awarding creditor and claimant Cooley such other and further relief, both in law and in equity to which she may show herself to be justly entitled.

Respectfully submitted,

/s/ Joe Alfred Izen, Jr.

Joe Alfred Izen, Jr.
Attorney for Creditor and
Claimant Karen Cooley Izen
Texas Bar Card # 10443500
Member of the Bar of the Southern
District of Texas
5526 McKnight Street
Houston, Texas 77035
(713) 668-8815
(713) 668-9402 FAX
jizen@comcast.net

Appearing for Creditor and Clai-
mant Pursuant to Local Rule 9010-
1(e)(iii) of the U.S. Bankruptcy
Court for the District of Dela-
ware

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was sent to the following parties and/or attorneys by ECF transmission and/or email on July 24, 2023:

WHITE & CASE LLP
Jessica C. Lauria
1221 Avenue of the Americas
New York, NY 10020
jessica.lauria@whitecase.com

Michael C. Andolina
Matthew E. Linder
Laura E. Baccash
Blair M. Warner
111 South Wacker Drive
Chicago, IL 60606
mandolina@whitecase.com
mlinder@whitecase.com
laura.baccash@whitecase.com
blair.wamer@whitecase.com

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
Derek C. Abbott
Andrew R. Remming
Paige N. Topper
1201 North Market St, 16th Floor
Wilmington, DE 19801
dabbott@morrisnichols.com
aremming@morrisnichols.com
ptopper@morrisnichols.com

/s/ Joe Alfred Izen, Jr.
_____
Joe Alfred Izen, Jr.

COOLBOYS.RSP/TK523

20