**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re<br><br>BOY SCOUTS OF AMERICA<br>AND DELAWARE BSA, LLC[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>**Re: D.I. 11221, 11289, 11293, 11296, 11297, 11298,<br>11300, 11301, 11302, 11309, 11316, 11317, & 11319** |

**UNITED STATES TRUSTEE'S OMNIBUS OBJECTION TO FINAL PROFESSIONAL
FEE APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT OF
EXPENSES**

Andrew R. Vara, the United States Trustee for Region 3 ("U.S. Trustee"), through his

undersigned attorneys, hereby files his Omnibus Objection to the Final Professional Fee

Applications for Compensation and Reimbursement of Expenses (the "Omnibus Objection").[2]

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] The U.S. Trustee objects to the following Final Fee Applications, organized by estate party that retained the professional, in alphabetical order of the professional (a corresponding Exhibit identifying the fees subject of this Omnibus Objection is also attached hereto as described below):

Debtors' Professionals –

(A) *Final Fee Application of Alvarez & Marsal North America, LLC for Allowance of Compensation and Reimbursement of Expenses for the Period From February 18, 2020 to and Including April 19, 2023* (D.I. 11289) (the "A&M Final Fee App."); Attached as Exhibit A hereto is the fee detail subject of this Omnibus Objection;

(B) *Combined Thirty-Sixth Monthly Application (for the Period March 1, 2023 Through April 19, 2023) and Final Application of Bates White, LLC for Allowance of Compensation and for Reimbursement of All Actual and Necessary Expenses Incurred for the Period February 18, 2020 Through April 19, 2023* (D.I. 11319) (the "Bates White Final Fee App."); Attached as Exhibit B hereto is the fee detail subject of this Omnibus Objection;

(C) *Combined Thirty-First Monthly (for the Period April 1, 2023 Through April 19, 2023), Tenth Interim (for the Period May 1, 2022 Through July 31, 2022), Eleventh Interim (for the Period August 1, 2022 Through November 30, 2022), Twelfth Interim (for the Period December 1, 2022 Through March 31, 2023), and Final Application of Haynes and Boone, LLP, as Special Insurance Counsel for the Debtors and Debtors In Possession, for Allowance of Compensation and Reimbursement of Expenses Incurred for the Period From February 18, 2020 Through and Including April 19, 2023* (D.I. 11302) (the "Haynes Boone Final Fee App."); Attached as Exhibit C hereto is the fee detail subject of this Omnibus Objection;

(D)  *Combined Twenty-Sixth Monthly (for the Period August 1, 2022 Through April 19, 2023) and Final Fee Application of KCIC LLC for Allowance of Compensation and Reimbursement of Expenses for the Period From February 18, 2020 to and Including April 19, 2023* (D.I. 11297) (the "<u>KCIC Final Fee App.</u>"); Attached as Exhibit D hereto is the fee detail subject of this Omnibus Objection;

(E)  *Thirteenth Interim Fee Application (for the Period February 1, 2023 Through April 19, 2023) and Final Application of Morris, Nichols, Arsht & Tunnell LLP, As Bankruptcy Co-Counsel for the Debtors and Debtors In Possession, for Allowance of Compensation and for Reimbursement of All Actual and Necessary Expenses Incurred for the Period February 18, 2020 Through April 19, 2023*(D.I. 11317) (the "<u>MNAT Final Fee App.</u>"); Attached as Exhibit E hereto is the fee detail subject of this Omnibus Objection; and

(F)  *Eleventh Interim and Final Application of White & Case LLP, as Attorneys for the Debtor and Debtor In Possession, for Allowance of Compensation and Reimbursement of Expenses* (D.I. 11316) (the "<u>White & Case Final Fee App.</u>"); Attached as Exhibit F hereto is the fee detail subject of this Omnibus Objection;

<u>The Future Claims Representative and Professionals</u> –

(G)  *Twelfth Interim and Final Application of Gilbert LLP, Insurance Counsel to the Future Claimants' Representative, for Allowance of Compensation and Reimbursement of Expenses* (D.I. 11298) (the "<u>Gilbert Final Fee App.</u>"); Attached as Exhibit G hereto is the fee detail subject of this Omnibus Objection; and

(H)  *Combined Thirty-Seventh Monthly and Final Application of James L. Patton, Jr. as the Legal Representative for Future Claimants and Young Conaway Stargatt & Taylor, LLP as Counsel to the Legal Representative for Future Claimants for Allowance of Compensation and Reimbursement of Expenses for the Interim Period From April 1, 2023 to April 19, 2023 and the Final Period From February 18, 2020 to April 19, 2023* (D.I. 11296) (the "<u>FCR and YCST Final Fee App.</u>"); Attached as Exhibit H hereto is the fee detail subject of this Omnibus Objection;

<u>The Committee of Tort Claimants' Professionals</u> –

(I)  *Tenth Interim and Final Application of Berkeley Research Group, LLC for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Financial Advisors to the Official Tort Claimants' Committee for the Period from March 6, 2020 through April 19, 2023* (D.I. 11309) (the "<u>BRG Final Fee App.</u>"); Attached as Exhibit I hereto is the fee detail subject of this Omnibus Objection;

(J)  *Final Fee Application of The Claro Group, LLC as Expert Consultants to the Official Tort Claimants' Committee for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred for the Final Period from September 1, 2021 Through and Including March 31, 2022* (D.I. 11301) (the "<u>Claro Final Fee App.</u>"); Attached as Exhibit J hereto is the fee detail subject of this Omnibus Objection;

(K)  *Final Application for Compensation and Reimbursement of Expenses of Pachulski Stang Ziehl & Jones LLP, As Counsel to the Tort Claimants' Committee for the Period From March 4, 2020 Through April 19, 2023* (D.I. 11300) (the "<u>PSZJ Final Fee App.</u>"); Attached as Exhibit K hereto is the fee detail subject of this Omnibus Objection;

(L)  *Sixteenth Monthly (for the Period January 1, 2023 Through April 19, 2023), Ninth Interim (for the Period September 1, 2022 Through April 19, 2023), and Final Application for Compensation and Reimbursement of Expenses of Pasich LLP, As Insurance Counsel for the Tort Claimants' Committee for the Period From May 12, 2020 Through April 19, 2023* (D.I. 11221) (the "<u>Pasich Final Fee App.</u>"); Attached as Exhibit L hereto is the fee detail subject of this Omnibus Objection; and

(M)  *Final Application for Compensation and Reimbursement of Expenses of Rock Creek Advisors LLC, Pension Financial Advisors to the Tort Claimants' Committee for the Period From November 20, 2020 Through May 31, 2023* (D.I. 11293) (the "<u>Rock Creek Final Fee App.</u>"); Attached as Exhibit M hereto is the fee detail subject of this Omnibus Objection.

The Omnibus Objection identifies issues with compensation requests of professionals for which final allowance and, to the extent unpaid, payment is sought in the final fee applications identified in Footnote 2.  The objectionable fees are identified in the exhibits attached hereto with respect to (i) approval of the Restructuring Support Agreement (primarily from April to September of 2021) and (ii) time spent at confirmation seeking findings that the Court identified it could not make and did not make in the confirmation opinion (from March 14, 2022 through March 31, 2022).  Additionally, the Omnibus Objection addresses objectionable fees relating to the improper transmittal of information by counsel to the TCC on behalf of Mr. Timothy Kosnoff.  For the reasons stated below, the U.S. Trustee requests the Court deny approval of such fees.

## PRELIMINARY STATEMENT

Under 28 U.S.C. §586(a)(1)(A)(i) and (ii), the U.S. Trustee is charged with reviewing fee applications in bankruptcy cases, and, if appropriate, filing objections to them. This duty is independent of any appointed fee examiner's review of such fee applications, but the U.S. Trustee works with appointed fee examiners to avoid duplicate requested write-offs or reductions.  There are 23 retained and estate-compensated professionals whose employment was not approved under the "ordinary course professionals" motion in these cases.  This Omnibus Objection seeks relief with respect to 13 of those estate-compensated professionals.[3]  Under the Bankruptcy Code, a retained professional is entitled to reasonable compensation for work that professional did that benefited the bankruptcy estate.  Based on information provided at previous

---

[3] This does not include professionals for the Coalition for Abused Scouts for Justice (the "Coalition"), as the *Motion of the Coalition of Abused Scouts for Justice for Entry of an Order Approving the Debtors' Proposed Payment of the Coalition Restructuring Expenses* (D.I. 10808) (the "Coalition Substantial Contribution Request") is still under advisement with the Court. The U.S. Trustee reserves all rights to raise similar objections to the Coalition's fees sought should the Court grant that relief.

hearings, the U.S. Trustee understands that, after $900,000.00 of funds are available to satisfy the minimum unrestricted cash and investments threshold under the Plan, the Reorganized Debtors and Settlement Trust will evenly share the next $14 million of administrative savings from the Professional Fee Reserve, with amounts greater than $14.9 million remitted solely to the Settlement Trust.

The U.S. Trustee has identified two areas of significant concern to which the professionals that are the subject of this objection billed time but which did not provide an actual and necessary benefit to the estate. They are: (1) the professionals' pursuit of approval of the Restructuring Support Agreement; and (2) unnecessary and inappropriate confirmation findings, discussed in greater detail in sections II and III of this Omnibus Objection. The fees associated with these issues should be reduced or written off.  The U.S. Trustee also seeks further write-offs or reductions from counsel to the TCC, Pachulski Stang Ziehl & Jones LLP ("PSZJ"), as a result of its role in the improper transmittal of attorney communications during the Plan solicitation period from Mr. Timothy Kosnoff (the "Kosnoff Communications") to members of the TCC's constituency and others.  This issue is addressed in more detail in section IV of the argument.

***The Parties' Pursuit of Approval of the Restructuring Support Agreement***

From April to September 2021, the Debtors and other parties sought Bankruptcy Court approval of the Restructuring Support Agreement (the "RSA"). The parties revised the RSA multiple times, and the Court held numerous and lengthy hearings to consider it. Although the Court indicated it would approve the RSA, subject to further modifications, the parties never submitted an order for entry. In other words, although the Court had ruled that the Debtors were authorized to enter into the RSA, no order was entered to that effect. The absence of any entered order approving the RSA is compelling evidence that the parties to the RSA did not need Court

approval of the RSA to advance the progress of the bankruptcy cases or to protect their clients' interests.  While the professionals whose fees are the subject of this Omnibus Objection may argue such a reduction relies on "hindsight," the U.S. Trustee believes the factual circumstances here sufficiently distinguish these fees from others that have been awarded over objections in other matters.  In view of these unusual circumstances, the U.S. Trustee asks the Court to deny fees for any time directly related to the RSA approval process for the professionals identified in this Omnibus Objection. The RSA fees did not provide an actual and necessary benefit to the estates because parties were forced to spend time and expense engaged in vigorous motion practice, multiple revisions to key documents, and many hours of hearings with no resulting order.  At the time it was filed, the RSA Motion acknowledged that the parties to it were fully aware of the strategic limitations imposed by prior agreements of the Debtors.  But, rather than extricate themselves as a precursor to seeking approval of the RSA, they sought the Court's authority to abandon one bargain without consequences to move forward with another.

*Unnecessary and Inappropriate Confirmation Findings*

The U.S. Trustee likewise objects to certain fees sought in connection with hearing time at confirmation geared towards establishing findings related to the trust distribution procedures (the "TDPs") that did not provide an actual and necessary benefit to the estates.  Throughout the run up to the Confirmation trial, the Court expressed serious concerns about certain findings in the plan, questioning both the findings' necessity and the Court's ability to make them.  In the Confirmation Opinion, the Court detailed these items and noted its struggle with their necessity and legal basis.  The U.S. Trustee focuses on trial time spanning from March 14, 2022 through March 31, 2022 as not representing reasonable fees, excluding time spent on March 18, 23, 25, and 28.  The parties spent ten evidentiary trial days substantially devoted to discussions of the

TDPs.  While a lengthy and vigorously-contested confirmation trial was expected in these cases, spending those ten days was cumulative and duplicative, and therefore not actually necessary, especially when the Court's preliminary guidance put the parties on notice of the Court's skepticism that it could make the requested findings.  Given the numerous other trial days, the professionals have been adequately compensated for their work at confirmation, and denying the request for fees for this identified period strikes an appropriate balance in promoting savings for the estates while disincentivizing cumulative and duplicative work across numerous estate-compensated professionals.

### PSZJ Further Sanction for the Kosnoff Communications

While PSZJ settled issues with the Debtors regarding the Kosnoff Communications as part of the Plan, the U.S. Trustee's rights were fully reserved, along with the Court's ability to further address the issue.  The U.S. Trustee requests additional write offs or fee reductions relating to this issue, centered on two items where PSZJ's fees are either (1) not reasonable, (2) reflect increased costs to the estates that would not have been incurred but for the Kosnoff Communications, or (3) otherwise require further action.  The U.S. Trustee identifies (1) fees incurred by PSZJ in seeking a "Voting Ombudsperson" as not reasonable and unnecessary to the estate; and (2) a proposed further reduction of John W. Lucas's fees as part of his direct involvement in the Kosnoff Communications.

### The Court Has Discretion to Impose Fee Reductions Beyond Those Identified Herein

The U.S. Trustee additionally suggests that the Court's broad "discretionary authority" with respect to reasonable compensation provides a separate avenue for denying the fees subject of this Omnibus Objection.  The fees relating to the RSA and TDP findings represent approximately 2.32% of those billed by professionals whose final fee requests are the subject of

the Omnibus Objection.[4]  The Court in its discretion can impose material reductions when faced

with issues of vagueness, lumping, or block billing, and here the Court can rely on its experience

and expert judgment to target reductions at these serious issues of administrative cost that

outstretch typical or ordinary fee application problems.  Such reductions are appropriate even

when combined with any reductions previously made and agreed with the Fee Examiner, and

with any billing judgment exercised by the professional in preparing its fee applications that

prospectively reduced objectionable material.  When faced with issues smaller in scope than

those identified in this Omnibus Objection, several courts have imposed 10-15% fee reductions

for a given professional on an aggregate basis, and the U.S. Trustee here seeks relief on a

targeted basis as to discrete issues.  The professionals all have adequate notice of the objection to

the fees, and the Court may exercise its discretion in denying the fees in the amounts identified,

or even greater amounts if the Court's experience and judgment require such a result.

## JURISDICTION AND STANDING

1.      Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative

oversight of the bankruptcy system in this District.  Such oversight is part of the U.S. Trustee's

overarching responsibility to enforce the laws as written by Congress and interpreted by the

courts.  *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems,*

*Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest

standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v.*

*Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S.

Trustee as a "watchdog").

---

[4] Again, this excludes any additional amounts that may be subject of further objection from the U.S. Trustee,
pending decision on the Coalition Substantial Contribution Request.  Including the PSZJ Kosnoff Communications
items, the U.S. Trustee presently objects to 2.59% of the aggregate final fee requests for these professionals.

2.     Under 28 U.S.C. § 586(a)(3)(A), the United States Trustee is authorized, in every chapter 11 bankruptcy case, to "revie[w] . . . applications for compensation and reimbursement filed under section 330 of title 11," and to "fil[e] with the court comments to such application, and, if the United States Trustee considers it to be appropriate, objections to such application." 11 U.S.C. § 586(a)(3)(A)(i),(ii).  The United States Trustee performs this statutory duty in all cases, even when a fee examiner or other fee review entity has been appointed.

3.     Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the issues raised in this Omnibus Objection.

## STATEMENT OF FACTS

4.     On February 18, 2020 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code.  The Bankruptcy Court entered an order jointly administering the cases for administrative purposes.  On March 5, 2020, the U.S. Trustee appointed an Official Committee of Unsecured Creditors ("UCC") and a Committee of Tort Claimants ("TCC").

5.     On April 6, 2020, the Court entered its *Order (I) Approving Procedures for (A) Interim Compensation and Reimbursement of Expenses of Retained Professionals and (B) Expense Reimbursement for Official Committee Members and (II) Granting Related Relief* (D.I. 341, "Interim Compensation Order"), as amended by the *Order Amending the Order (I) Approving Procedures for (A) Interim Compensation and Reimbursement of Expenses of Retained Professionals and (B) Expense Reimbursement for Official Committee Members and (II) Granting Related Relief* (D.I. 5899) (together, the "Compensation Procedures Order").

6.      On the Debtors' motion, the Court entered an order on April 24, 2020 appointing James L. Patton, Jr., ("Mr. Patton" or the "FCR") as the legal representative for Future Claimants.  (D.I. 486).

7.      On September 18, 2020, the Court entered the *Order Appointing Fee Examiner and Establishing Related Procedures for the Review of Applications of Retained Professionals*. (D.I. 1342) (the "Fee Examiner Order").

**A.    The Professionals Subject of This Omnibus Objection and Their Final Fee Applications**

### *i.    The Debtors' Professionals and Final Fee Applications*

8.      On April 7, 2020, the Court authorized the Debtors to retain and employ Alvarez & Marsal North America, LLC ("A&M") as their financial advisor, *nunc pro tunc* to the Petition Date, pursuant to the *Order Authorizing the Retention and Employment of A&M as Financial Advisor for the Debtors and Debtors in Possession,* Nunc Pro Tunc *to the Petition Date* (D.I. 355).  The A&M Final Fee App. was filed June 2, 2023. (D.I. 11289).[5]

9.      Also on April 7, 2020, the Court authorized the Debtors to retain and employ Bates White LLP ("Bates White") as their abuse claims consultant and advisor, *nunc pro tunc* to the Petition Date, pursuant to the *Order Authorizing the Retention and Employment of Bates White, LLC Abuse Claims Consultant for the Debtors and Debtors in Possession,* Nunc Pro Tunc *to the Petition Date* (D.I. 353). The Bates White Final Fee App. was filed June 5, 2023. (D.I. 11319).[6]

---

[5] As noted in Footnote 2, attached as Exhibit A hereto is the A&M fee detail that is the subject of this Omnibus Objection.

[6] As noted in Footnote 2, attached as Exhibit B hereto is the Bates White fee detail that is the subject of this Omnibus Objection.

10.    On April 20, 2020, the Court authorized the Debtors to retain and employ Haynes and Boone, LLP ("Haynes Boone") as special insurance counsel pursuant to the *Order Authorizing the Retention and Employment of Haynes and Boone, LLP as Special Insurance Counsel for the Debtors and Debtors in Possession, Nunc Pro Tunc to the Petition Date* (D.I. 463). The Haynes Boone Final Fee App. was filed June 5, 2023. (D.I. 11302).[7]

11.    On April 6, 2020, the Court authorized the Debtors to retain and employ KCIC, LLC ("KCIC") as their insurance and valuation consultant, nunc pro tunc to the Petition Date, pursuant to the *Order Authorizing the Retention and Employment of KCIC, LLC as their Insurance and Valuation Consultant for the Debtors and Debtors in Possession, Nunc Pro Nunc to the Petition Date* (D.I. 340). The KCIC Final Fee App. was filed on June 5, 2023. (D.I. 11297).[8]

12.    On April 6, 2020, the Court authorized the Debtors to retain and employ Morris, Nichols, Arst & Tunnell LLP ("MNAT") as bankruptcy co-counsel pursuant to the *Order Authorizing the Retention and Employment of Morris, Nichols, Arsht & Tunnell LLP as Bankruptcy Co-Counsel for the Debtors Nunc Pro Tunc to the Petition Date* (D.I. 339). The MNAT Final Fee App. was filed on June 5, 2023. (D.I. 11317).[9]

13.    On October 8, 2020, White & Case LLP ("White & Case") entered its appearance in this case. (D.I. 1452). On the same date Jessica Boelter (Lauria), Michael Andolina and Matthew E. Linder, withdrew as counsel for the Debtors. (D.I. 1451). On October 23, 2020, the

---

[7] As noted in Footnote 2, attached as Exhibit C hereto is the Haynes & Boone fee detail that is the subject of this Omnibus Objection.

[8] As noted in Footnote 2, attached as Exhibit D hereto is the KCIC fee detail subject of this Omnibus Objection.

[9] As noted in Footnote 2, attached as Exhibit E hereto is the MNAT fee detail that is the subject of this Omnibus Objection.

Debtors filed an application seeking to retain White & Case as counsel for the Debtors "effective as of September 23, 2020." (D.I. 1571, "White & Case Retention Application").  The White & Case Retention Application disclosed that the attorneys who had been representing the Debtors at Sidley Austin LLP ". . . began transitioning their practices to White & Case from Sidley Austin LLP."  (D.I. 1571 at p. 4).  On November 18, 2020, the Court approved the retention of White & Case. (D.I. 1698).  On June 5, 2023, the White & Case Final Fee App. was filed. (D.I. 11316).[10]

### ii.  The FCR and FCR's Professionals' Final Fee Applications

14.     Mr. Patton was appointed as FCR on April 24, 2020.  (D.I. 486).  On May 11, 2020, the Court authorized the FCR to retain and employ Young Conaway Stargatt & Taylor, LLP ("YCST") as counsel pursuant to the *Order Authorizing the Proposed Future Claimants' Representative to Retain and Employ Young Conaway Stargatt & Taylor, LLP As His Attorneys, Effective as of the Petition Date*. (D.I. 604).  The FCR and YCST Final Fee App. was filed on June 5, 2023.  (D.I. 11296).[11]

15.     The FCR also retained Gilbert LLP as special insurance counsel, pursuant to the *Order Authorizing the Retention and Employment of Gilbert LLP as Special Insurance Counsel to the Future Claimants Representative Effective as of March 19, 2020*. (D.I. 690).  The Gilbert Final Fee App. was filed on June 5, 2023. (D.I. 11298).[12]

### iii.  The TCC's Professionals and Final Fee Applications

---

[10] As noted in Footnote 2, attached as Exhibit F hereto is the White & Case fee detail that is the subject of this Omnibus Objection.

[11] As noted in Footnote 2, attached as Exhibit H hereto is the FCR and YCST fee detail that is the subject of this Omnibus Objection.

[12] As noted in Footnote 2, attached as Exhibit G hereto is the Gilbert fee detail that is the subject of this Omnibus Objection.

16.     On April 11, 2020, the Court authorized the TCC to retain and employ PSZJ as counsel pursuant to the *Order Authorizing and Approving the Retention of Pachulski Stang Ziehl & Jones LLP as Counsel to the Additional Tort Claimants' Committee Effective as of March 4, 2020*. (D.I. 398). The PSZJ Final Fee App. was filed June 5, 2023. (D.I. 11300).[13]

17.     Also on April 11, 2020, the Court authorized the TCC to retain and employ Berkeley Research Group, LLC ("BRG") as its financial advisor pursuant to the *Order Authorizing and Approving the Retention of Berkeley Research Group, LLC, as Financial Advisor to the Official Tort Claimants Committee Effective as of March 6, 2020*. (D.I. 384).  The BRG Final Fee App. was filed June 5, 2023. (D.I. 11309).[14]

18.     On June 17, 2020, the Court authorized the TCC to retain and employ Pasich, LLP ("Pasich") as insurance counsel pursuant to the *Order Pursuant to Sections 328 and 1103 of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure and Local Rule 2014-1 Authorizing the Employment and Retention of Pasich LLP as Insurance Counsel for the Official Tort Claimants' Committee Effective as of May 12, 2020*. (D.I. 862).  The Pasich Final Fee App. was filed May 16, 2023. (D.I. 11221).[15]

19.     On January 11, 2021, the Court authorized the TCC to retain and employ Rock Creek Advisors, LLC ("Rock Creek") as pension financial advisors pursuant to the *Order Authorizing and Approving the Retention of Rock Creek Advisors LLC, as Pension Financial Advisors to the Tort Claimants' Committees Request for Entry of an Order Under 11 U.S.C. §§*

---

[13] As noted in Footnote 2, attached as Exhibit K hereto is the PSZJ fee detail that is the subject of this Omnibus Objection.

[14] As noted in Footnote 2, attached as Exhibit I hereto is the BRG detail that is the subject of this Omnibus Objection.

[15] As noted in Footnote 2, attached as Exhibit L hereto is the Pasich fee detail that is the subject of this Omnibus Objection.

*1103(A) And 328(A) and Fed. R. Bankr. P. 2014(A) Authorizing Retention of Rock Creek*

*Advisors LLC as Pension Financial Advisor as of November 20, 2020*. (D.I. 1918).  The Rock

Creek Final Fee App. was filed on June 5, 2023. (D.I. 11293).[16]

20.    On October 8, 2021, the Court authorized the TCC to retain and employ the Claro

Group, LLC ("Claro") as expert consultants pursuant to the *Order Authorizing and Approving*

*the Tort Claimants' Committee's Application for Entry of an Order Under 11 U.S.C. §§ 1103(a)*

*and 328(a) and Fed. R. Bankr. P. 2014(a) Authorizing Retention of The Claro Group LLC as*

*Expert Consultant on Sexual Abuse and Expert Witness Effective as of September 1, 2021*. (D.I.

6527).  The Claro Final Fee App. was filed June 5, 2023.  (D.I. 11301).[17]

> ### iv.    *Extension of Objection Deadlines for the U.S. Trustee and Fee Hearing*

21.    The U.S. Trustee requested extensions of the applicable objection deadlines from

those running 21 days from filing of the final fee applications, which were granted.

22.    The Debtors identified September 4, 2023 as the final deadline for the U.S.

Trustee to interpose an objection to final fee applications.  The Court has set a hearing on the

final fee applications for October 5, 2023.

## B.    Relevant Background Regarding the Plan

23.    With their petitions, the Debtors filed a plan and disclosure statement (D.I. 20 and

21) which provided that the Debtors, Chartered Organizations, Insurers, and Local Councils

would fund a trust for the payment of holders of "Abuse Claims"—a class of unsecured creditors

with claims related to sexual abuse against not only the Debtors, but also against various non-

---

[16] As noted in Footnote 2, attached as Exhibit M hereto is the Rock Creek fee detail that is the subject of this Omnibus Objection.

[17] As noted in Footnote 2, attached as Exhibit J hereto is the Claro fee detail that is the subject of this Omnibus Objection.

debtor third parties. The Debtors proposed that, in exchange for their contributions to the trust, the contributing parties would receive releases and be protected by a channeling injunction. *See id.*

24.     Between March 2021 and May 2021, the Debtors filed three amended plans. Each contained additional information and disclosures, such as the proposed settlement trust agreement and trust distribution procedures, and memorialized settlements. *See* (D.I. 2293; D.I. 2592; D.I. 4108). In March 2021, the Debtors settled with JPMorgan Chase and the Unsecured Creditors Committee. *See* (D.I. 2293) at p. 1 n. 2 (describing the *First Mediators' Report* at (D.I. 2292) resolving issues between the Debtors, JP Morgan Chase, and the UCC). In April 2021, the Debtors proposed a $1,500 "expedited distribution" option that allowed claimants to receive a quick distribution in exchange for a full release of the Debtors and all protected parties, and the Debtors also settled with Hartford Insurance Company for a payment of $650 million. (D.I. 2592) at p. 17 (defining "Expedited Distribution" and discussing the *Second Mediators' Report* (D.I. 2624) disclosing the Debtors' entry into the Hartford Settlement).

25.     By May 2021, more than 100 parties had filed objections to the Debtors' various amended plans. *See* (D.I. 4105) (collecting objections and joinders filed as of May 16, 2021 in exhibit A thereto).

26.     On June 18, 2021, the Debtors filed the *Third Amended Chapter 11 Plan of Reorganization* ("Third Amended Plan") (D.I. 5368) and accompanying Disclosure Statement (D.I. 5369). In the Third Amended Plan, the Debtors (i) increased the contribution from the Local Councils, (ii) materially revised the TDPs, (iii) added "Coalition Restructuring Expenses" as a new defined term, and (iv) stated (in a footnote) that the Court may conclude that the Debtors are not obligated to pursue approval of their settlement with Hartford. *See* (D.I. 5368).

### C.      The Parties Seek Approval of the RSA

27.      On July 1, 2021, the Debtors filed their *Motion for Entry of an Order, Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code, (I) Authorizing the Debtors to Enter into and Perform under the Restructuring Support Agreement, and (II) Granting Related Relief* ("RSA Motion") (D.I. 5466), along with an accompanying Motion to Shorten (D.I. 5468) requesting that the matter be heard on July 20, 2021. In the RSA Motion, the Debtors (i) asked for authority to enter into a restructuring support agreement with the TCC, the Coalition, and the FCR and (ii) sought a ruling that the Debtors were not obligated to seek approval of their settlement with Hartford. RSA Mot. ¶¶ 13 & 15.

28.      A day later, July 2, 2021, the Debtors filed a *Fourth Amended Chapter 11 Plan of Reorganization* (D.I. 5485) and accompanying disclosure statement (D.I. 5485), which proposed to (i) replace the Hartford settlement with the terms of the RSA, (ii) increase the expedited distribution to $3,500 per claimant, and (ii) pay the fees and expenses of the Coalition. (D.I. 5484).

29.      After holding a status conference on the RSA Motion on July 7, 2021, the Court held another one on July 27, 2021, to discuss the timing of arguments on the RSA Motion, as the parties agreed that the RSA Motion's treatment of the Hartford settlement was a gating issue. Initially, the Court told the parties that the hearings on July 29 and 30 would go forward, even though the Debtors had additional discovery to produce.[18] Debtors' counsel then advised the Court that the RSA would expire the next day—July 28—and the parties had not agreed on an extension. Upon hearing that, the Court said:

---

[18] The Court indicated at the July 27 status conference that, "if I determine that the witnesses are now testifying about topics from which they were precluded from testifying at deposition I am unlikely to hear that testimony." (Hearing July 27, 2021 Tr. 25:13-15) (D.I. 5803).

Okay. I changed my mind. We're not going forward with the RSA hearing on Thursday. If the parties – the parties haven't agreed to extend the deadline. I am not having people prepare. I am not having people take depositions. I am not having people continue to discuss. So that hearing is canceled and if the debtors want to re-notice that hearing they can ask for permission to do so. I am not going to make parties who are not party to the RSA to continue to prepare for a hearing that may be meaningless.

Hearing July 27, 2021, Tr. 26:25-27:8. (D.I. 5803).

30.    On July 29, 2021, the Debtors announced that the RSA parties had agreed to an extension of the RSA termination date. The Court then set the RSA Motion for hearing on August 12, and 13, 2021, with the Disclosure Statement hearing to follow on August 24, 2021.

31.    On August 12, 13, and 16, 2021, the Court heard argument on the RSA Motion, and on August 19, 2021, the Court—with two important exceptions—granted the RSA Motion in an oral ruling. *See* Hearing August 19, 2021 Tr. 28:8 – 29:12 (D.I. 6098). The Court concluded that it would approve the RSA but would not make findings with respect to the Hartford settlement and would not approve payment of the fees and expenses of the Coalition's professionals. *Id.*

32.    Neither the Debtors nor any other party ever submitted an order approving the RSA.

33.    On September 15, 2021, the Debtors filed their *Fifth Amended Chapter 11 Plan of Reorganization* ("Fifth Amended Plan") (D.I. 6212) and accompanying Disclosure Statement (D.I. 6213). The Fifth Amended Plan: (i) contained a revised Hartford Settlement; (ii) retained the material terms of the RSA, including the requirement to pay the fees and expenses of the Coalition's professionals; (iii) added a settlement with The Church of Jesus Christ of Latter Day Saints ("TCJC") in the amount of $250 million; and (iv) included new provisions affecting

Chartered Organizations, including the scope and extent of releases applicable to them. *See* (D.I. 6212).

**D.      The Court Cautions the Parties with Respect to Proposed Confirmation Findings**

34.      On September 29, 2021, after five days of hearings beginning on September 21, 2021, the Court approved the *Modified Fifth Amended Chapter 11 Plan of Reorganization* (D.I. 6443) for solicitation.[19]

35.      The Court during the hearing on the Disclosure Statement and Modified Fifth Amended Chapter 11 Plan of Reorganization provided caution on a number of the findings that would be sought at confirmation.  Hearing September 28, 2021 Tr. 139:14 – 146:12 (D.I. 6436). Specifically:

- I do have some thoughts because I think these findings have clearly been a focus of many hearings before me, and they are a focus of the parties and not -- in terms of sending the plan out, not in the sense that a plan would be patently unconfirmable as a matter of law without these findings, but that people are telling me that -- people, the -- the -- in particular, I guess, I'm hearing it from the coalition, the FCR, are telling me that these findings are necessary for their clients to support the settlement.

  That's what I'm hearing. It's not hearing as a matter of law there's some patently unconfirmable plan in front of me but that these findings are necessary. Tr. 140:1-12.

- The first one, and I am looking in the plan, Article 9, paragraph 3, J was the first condition precedent. The insurance assignment is authorized as provided in the plan, notwithstanding any terms of the policy or provisions of non-bankruptcy law and that the settlement trust is a proper defendant for abuse claims to assert the liability of the protected parties to trigger, I guess that's an insurance concept, such insurance rights, et cetera. Tr. 140:16-23.

- I'm going to skip down to T. The plan and the trust distribution procedures were proposed in good faith and sufficient to satisfy the requirements of 1129(a)(3). I'm going to apply 1129(a)(3) in accordance with Third Circuit law. Whether you can swee[p] the trust distribution procedures into that or not, I don't know. But I'm not sure I should be doing that. It's the -- the -- the requirement of 1129(a)(3) is with respect to -- let me make sure I'm right, the plan, which might encompass a lot of things. Tr. 142:6-14.

---

[19] The modifications accounted for changes agreed to by parties in interest or directed to be made by the Court during the five-day disclosure statement hearing.

- Finding or condition precedent R, the procedures included in the trust distribution procedures pertaining to the allowance of abuse claims, and the criteria, et cetera, are fair and reasonable. I'm still not sure what this falls under in terms of a plan confirmation standard.

  If I have to find because it's contested, if it is, that the trust distribution procedures or the claims amounts in the matrices are appropriate, acceptable, I don't know, part of a negotiation.

  I don't know what I'm going to find out there, I may make that kind of a finding. But it's certainly going to be constrained by the type of hearing that I have and the purpose of the hearing. And that's the context in which I will make any such findings. I don't know if fair and reasonable is the standard, nor, quite frankly, do I know how that could possibly impact anybody -- any insurance company's obligations under a plan -- under their policies. I don't know if those are magic words or not magic words. I suspect they are not the words in the policy. Tr. 143:9 - 144:2.

- With respect to condition precedent S, the right to payment that the holder of an abuse claim has against the debtors, or another protected party, is the allowed value of such abuse claim, as liquidated in accordance with the distribution procedures, and is not the initial or supplemental payment percentage or the contributions made by the debtors. Again, I don't know what standard this would fall within, but I think there's some general things we can say about this.

  A claimant's right to payment, and that does come, someone said this, right from the definition of a claim. Somebody has a claim. There are other contexts in which we look at what their claim is, which might be analogous here, I don't know. But if someone is adjudicated to have a claim for $1,000 and there's a bankruptcy distribution of 10 cents on the dollar, it doesn't mean their claim is $100. Their claim is still $1,000. Whether they will be ever able to collect that amount from anybody else is a different issue. Maybe there's a guarantor who will pay them the other $900. Maybe that guarantor doesn't have to pay them the other $900 because their contract of guarantee limits it.

  But we know that there are bank -- we know that rarely do creditors receive 100 cents. They get some sort of bankruptcy distribution, and I think anybody looking at a bankruptcy distribution would not say that that person didn't have a claim for the full amount of their claim, whatever it is. I would hope that's not controversial.

  What I think is controversial about this paragraph is how can -- is -- is -- how does that work in the insurance coverage context? What does a policy provide for? What does it say it covers? What product did the debtors buy? And so this paragraph is probably the one I find most concerning in terms of not knowing how it might be used later on down the line, but I think there's some -- ought to be some fundamental universal first principles about claims that I think parties could probably agree to.

18

And then some other court looks at it and applies it to particular contracts and a particular context. But I will say that that paragraph S to the extent it has to be in the form that is in this condition precedent is something that I might not feel comfortable with in the way it's written. And, as I said, the most troubling in that regard, and I don't think anyone should be surprised by this, are condition precedent R and S. But I think that there are some fundamental principles behind some of this, particularly S, that parties presumably could agree on. Tr. 144:3 – 145:23.

36.    The Court set the confirmation hearing for January 24, 2022, with a December 14, 2021 voting deadline.  The Debtors extended the voting deadline to December 28, 2021 (D.I. 7608) and, on December 18, 2021, filed a further amended plan containing another $940 million in guaranteed trust funding from settlements, along with the potential for an additional $100 million in funding and material revisions to the treatment of Chartered Organizations. (D.I. 7832).  At a hearing on December 21, 2021, the Court heard the request of certain insurers to modify the confirmation schedule as result of the multiple amended plans with significant amendments, resulting unanticipated and unbriefed legal issues, and the large amount of still-uncompleted discovery. The Debtors also announced an additional $99 million in additional settlements that would have to be documented. The Court agreed and adjourned confirmation from January 24, 2022, to February 22, 2022, but did not extend the December 28, 2021 voting deadline. (D.I. 7910).

37.    The Debtors submitted two voting declarations, one on January 4, 2022 and one on January 17, 2022.[20]  On February 10, 2022, three days after the February 7, 2022 plan

---

[20] *Declaration of Catherine Nownes-Whitaker of Omni Agent Solutions Regarding the Solicitation of Votes and Preliminary Tabulation of Ballots Cast on the Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (the "Preliminary Voting Report") (D.I. 8141) with respect to the solicitation of votes and the preliminary tabulation of Ballots cast on the Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC (D.I. 7832) (as subsequently amended on February 15, 2022, D.I. 8813) and *Declaration of Catherine Nownes-Whitaker of Omni Agent Solutions Regarding the Solicitation of Votes and Final Tabulation of Ballots Cast on the Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (D.I. 8345) (the "Original Final Voting Report").

objection deadline, the Debtors filed the Eleventh Mediator's Report (D.I. 8772), which disclosed settlements with the TCC and others.  At a hearing on February 11, 2022, the Debtors also disclosed that, in addition to documenting the new settlements and incorporating them into the plan, they also had further material plan revisions, including: (i) significant modification to the treatment of Chartered Organizations; (ii) the addition of a "Independent Review Option" to the TDPs; (iii) revisions to the definition of Abuse Claim; (iv) overhaul of the BSA Youth Protection Program; and (v) agreement by the Debtors and TCC to not object to up to $3.5 million in substantial contribution fees to the Pfau/Zalkin claimants.  Hearing February 11, 2022 Tr. 6:21- 14:21; 41:24 – 42:6 (D.I. 8819). The Debtors proposed adjourning the Confirmation Hearing to March 1, 2022, to give creditors an opportunity to change their vote. On February 15, 2022, the Court adjourned the Confirmation Hearing to March 9, 2022 and set February 25, 2022, as the deadline for filing supplemental confirmation objections.  (D.I. 8830). The Debtors then filed their *Third Modified Fifth Amended Chapter 11 Plan of Reorganization* (the "Third Modified Fifth Amended Plan"), on February 15, 2022 (D.I. 8813) as well.

38.    At a hearing held at the Debtors' request on February 18, 2022, the Court adjourned the Confirmation Hearing from March 9, 2022, to March 14, 2022, because the Debtors had delayed service of the plan revisions that they had announced on February 11, 2022. On March 10, 2022, the Debtors filed a supplemental voting declaration reflecting the final status of votes in Classes 8 and 9.[21]

39.    The confirmation trial began on March 14, 2022, and continued through April 18, 2022, for a total of 22 days of trial. From March 14, 2022 through March 31, 2022, multiple

---

[21] *Supplemental Declaration of Catherine Nownes-Whitaker of Omni Agent Solutions Regarding the Submission of Votes and Final Tabulation of Ballots Cast in Connection with the Limited Extended Voting Deadline for Holders of Claims In Class 8 and Class 9 on the Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (D.I. 9275).

parties presented testimony and evidence. In reviewing the transcripts of hearings during that

period the U.S. Trustee identifies in summary fashion the following:

| Date | Transcript Scope | TDP Used | Hearing Duration |
|------|------------------|----------|------------------|
| 3.14.22 | Tr. 105:3 – 189:2 | 35 times | 10am-6:47pm |
| 3.15.22 | Tr. 51:18 – 216:20 | 86 times | 10am-4:46pm |
| 3.16.22 | Tr. 41:19 – 261:12 | 165 times | 10am-5:28pm |
| 3.17.22 | Tr. 19:16 – 305:21 | 229 times | 10am-6:41pm |
| 3.18.22 | Not subject of this Omnibus Objection | | |
| 3.21.22 | Tr. 49:7 – 55:24 & 95:6 – 271:25 | 56 times | 10:00am-6:16pm |
| 3.22.22 | Tr. 12:5 – 78:5 & 78:11 – 100:12 | 88 times | 10:00am-5:15pm |
| 3.23.22 | Not subject of this Omnibus Objection | | |
| 3.24.22 | Tr. 41:8 – 194:13 | 45 times | 10:07am-5:58pm |
| 3.25.22 | Not subject of this Omnibus Objection | | |
| 3.28.22 | Not subject of this Omnibus Objection, notwithstanding TDP used 12 times in transcript. | | |
| 3.29.22 | Tr. 14:20 – 238:3 | 101 times | 10:00am-5:54pm |
| 3.30.22 | Tr. 24:3 – 180:5 | 68 times | 10:02am-5:37pm |
| 3.31.22 | Tr. 11:18 - 290:25 | 243 times | 10:01am-7:00pm |

40.    At the conclusion of the confirmation trial, the Court took confirmation of the

Plan under advisement. On July 29, 2022, the Court issued an extensive confirmation opinion

(D.I. 10136), reported as *In re BSA*, 642 B.R. 504 (Bankr. D. Del. 2022) (the "Confirmation

Opinion").

41.     Within the Confirmation Opinion, the Court restated concerns regarding the

parties' requested findings and declined to make them for similar reasons as those the Court had

expressed almost a year earlier in September of 2021 when solicitation was approved.

Specifically:

- I have questioned the necessity for and the legal basis of the Findings in the context of confirmation since they were first proposed and there was a robust discussion of the Findings at the Disclosure Statement hearing . . .
  *In re BSA*, 642 B.R. 504, 623 (Bankr. D. Del. 2022).

- Much ink and much trial time was taken up trying to justify the Findings, substantially all of which relate, directly or indirectly, to the TDP. Accordingly, I will first address the general question I have posed in this case for some time: how does one evaluate trust distribution procedures, if at all? And, if one does evaluate trust distribution procedures, what standard applies?

  *Id.*

- None of the Coalition's rationales require me to find that the Claims Matrix, Base Matrix Values, Maximum Matrix Values, and Scaling Factors "are appropriate and provide for a fair and equitable settlement of Abuse Claims" in order to confirm the Plan. I decline to do so.

  *Id.* at 629.

- The allowed amount of a claim does not necessarily correlate to what an insurer is "obligated to pay" or what a "loss" is under its insurance policy and Finding y does not equate the two. Whether an insurance coverage court will find any relevance to Finding y is for that court to consider. A modified version of Finding y may be included in any Order confirming the Plan.

  *Id.* at 632 (footnotes omitted).

42.     On March 28, 2023, the District Court filed its Opinion and Order affirming the

Confirmation Opinion.  (D.I. 11057); *Nat'l Union Fire Ins. v. BSA (In re BSA)*, 650 B.R. 87 (D.

Del. 2023).  In affirming the Confirmation Opinion, the District Court indicated: "The

Bankruptcy Court correctly determined not to adjudicate future breaches that had not occurred,

and might not occur." 650 B.R. at 127 (citing 642 B.R. at 656).  The District Court also

favorably cited the Court's analysis regarding Finding y:

> I find no support for the contention that the Plan requires Insurers to pay future
> inflated awards. Indeed, the Bankruptcy Court held that Certain Insurers would
> not necessarily be bound by the awards issued by the Settlement Trust: "the
> allowed amount of a claim does not necessarily correlate to what an insurer is
> 'obligated to pay' or what 'a loss' is under its insurance policy and 'a finding in
> the plan' does not equate the two."

650 B.R. at 215-16.

**E.    PSZJ's Involvement in the Kosnoff Communications**

43.    At a hearing held on November 10, 2021 (D.I. 7172), it was disclosed that on

November 6, 2021, the TCC caused a letter allegedly directed to the clients of Mr. Kosnoff to be

transmitted to thousands of abuse survivors that he did not represent, as well as other, unrelated,

parties (the "Kosnoff Communications").[22]  The TCC's transmittal of the Kosnoff

Communications caused all parties in interest to expend significant amounts of time investigating

the underlying facts. The matter was the only material subject of discussion at hearings on

November 12, 2021 (D.I. 7207) and November 17, 2021 (D.I. 7321), and the parties took

depositions during the entire week of Thanksgiving, 2021.[23]

44.    TCC's counsel, who had actually been the party to electronically transmit the

letter, attempted to mitigate the harm it had caused by this transmission.  Two members of PSZJ

who had been acting as lead counsel for the TCC, James I. Stang ("Mr. Stang") and John W.

Lucas ("Mr. Lucas"), stepped back from the case and other members of PSZJ took over the lead

counsel role, with Richard M. Pachulski ("Mr. Pachulski") serving in Mr. Stang's place as lead

---

[22] Mr. Kosnoff's firm was one of three law firms comprising an ad hoc association known as Abuse in Scouting ("AIS").  Retainer agreements with AIS indicated a client was retaining all three firms.  *See* (D.I. 2143).  The firms sent inconsistent recommendations to their clients which appeared to create confusion resulting in publication of the letter by the TCC.  *See Status Report Regarding Debtors' Emergency Motion (I) Enforcing the Solicitation Procedures Order, (II) Enforcing Section 1103 of the Bankruptcy Code Against the Tort Claimants' Committee, and (III) Granting Related Relief* (D.I. 7250).

[23] The letter was edited by counsel for the TCC.  At a hearing on November 17, 2021, the Court observed:  "And I will tell you that I am surprised to learn Mr. Lucas edited Mr. Kosnoff's letter…Based on what has been said in court, that surprises me."  Hearing November 17, 2021 Tr. 42:18-42:23 (D.I. 7321).

TCC attorney.  *Compare Eighth Quarterly Application for Compensation and Reimbursement of Expenses of Pachulski Stang Ziehl & Jones LLP, as Counsel to the Tort Claimants Committee for the period November 1, 2021 to January 31, 2022* (D.I. 10013) p.4 (including 431.20 hours and $687,764.00 for Mr. Pachulski) *with Seventh Quarterly Application for Compensation and Reimbursement of Expenses of Pachulski Stang Ziehl & Jones LLP, as Counsel to the Tort Claimants Committee for the period from August 1, 2021 Through October 31, 2021* (D.I. 8720) p. 4 (containing no time for Mr. Pachulski); *see also, e.g.*, (D.I. 8719) (*Sixth Quarterly Application of PSZJ*) & (D.I. 6173) (*Fifth Quarterly Application of PSZJ*).

45.      Notwithstanding his diminished role in the case, Mr. Lucas continued to bill time to the engagement after November of 2021.  *See* Ex. K at p. 27-33 (identifying Mr. Lucas's time at the confirmation trial). The PSZJ Final Fee App. contains $4,364,316.00 of non-travel fees for Mr. Lucas.  *See* (D.I. 11300).

46.      PSZJ and the TCC's involvement in the Kosnoff Communications is discussed at length in multiple items filed on the record in these cases.  After several hearings and nearly a week of depositions, it became clear that Mr. Lucas had been very involved with transmission of the Kosnoff Communications.  *See Status Report Regarding Debtors' Emergency Motion (I) Enforcing the Solicitation Procedures Order, (II) Enforcing Section 1103 of the Bankruptcy Code Against the Tort Claimants' Committee, and (III) Granting Related Relief* (D.I. 7250) at ¶¶ 3-4 (identifying Mr. Lucas's communications with Mr. Kosnoff, and assistance in transmission and preparation of the email).

47.      On November 24, 2021, despite numerous parties, including the U.S. Trustee's, indications that they opposed this proposed action, the TCC filed the *Emergency Motion of the Official Committee of Tort Claimants for Entry of an Order Pursuant to Sections 105, 1103,*

*1125, and 1126 of the Bankruptcy Code Appointing a Plan Voting Ombudsperson and Granting*

*Related Relief* (the "Voting Ombudsperson Motion"). (D.I. 7447).  As indicated in its pre-filing

discussions with the TCC, the U.S. Trustee filed his *Objection to Emergency Motion of the*

*Official Committee of Tort Claimants for Entry of an Order Shortening the Notice and Objection*

*Periods for Emergency Motion of the Official Committee of Tort Claimants for Entry of an*

*Order Pursuant to Sections 105, 1103, 1125 and 1126 of the Bankruptcy Code Appointing a*

*Plan Voting Ombudsperson and Granting Related Relief.*  (D.I. 7450).  The attached fee detail

shows 74.70 hours spent for $83,765.50 in fees relating to the Voting Ombudsperson relief.  *See*

(D.I. 10013); *see also* Ex. K at p. 34-39.

48.     The Plan includes the PSZJ Settlement, which was intended, in part, to address

PSZJ's inappropriate conduct in connection with the Kosnoff Communications. PSZJ has agreed

to contribute $1,250,000 to the Youth Protection Program and to reduce its fee by $750,000. *See*

(D.I. 10316) (including Supplemental Finding of Fact and Conclusion of Law G., reserving

parties in interest right to object to any PSZJ fees under Section 330 and the Court's "authority to

impose any appropriate non-monetary sanctions, if any" and attaching the Plan, including Article

V.S.7. "PSZJ Settlement"). At a hearing on September 1, 2022, the court identified its concerns

with Supplemental Finding of Fact and Conclusion of Law G., indicating the settlement would

be approved, "subject to [the Court's] ability to impose any appropriate non-monetary sanction."

Hearing September 1, 2022 Tr. 18:13 – 19:12 (D.I. 10288).

**F.      Statements Regarding the Flow of Funds Relating to Fee Reductions**

49.     As stated by counsel to the Coalition at the April 19, 2023 Hearing, after

$900,000.00 of funds are available to satisfy the minimum unrestricted cash and investments

threshold under the Plan, the Reorganized Debtors and Settlement Trust will then share the next

$14 million of administrative savings from the Professional Fee Reserve evenly, with amounts

greater than $14.9 million remitted solely to the Settlement Trust.  *See* Hearing April 19, 2023

Tr. 23:23-25:13 (D.I. 11131).  To aid the Court in considering this Omnibus Objection, the U.S.

Trustee also attaches as Exhibit N, a summary chart identifying information regarding the fees at

issue by professional, aggregated by party, and aggregated for all professionals.  The U.S.

Trustee requests that the Court deny $5,048,807.10 in aggregate fees for all items that are the

subject of this Omnibus Objection.  That figure, when evaluated against the $194,909,688.77 of

final fees requested for approval by the 13 professionals that are the subject of this Omnibus

Objection, represents only 2.59% of the fees sought for final approval by these professionals.

## ARGUMENT

## I.    PROFESSIONAL COMPENSATION STANDARDS AND APPLICABLE LAW

50.    11 U.S.C. § 330(a)(1) provides that after notice and a hearing, the court may

award to a professional person employed under 11 U.S.C. § 327 "reasonable compensation for

actual, necessary services rendered" by such a professional person.  *See* 11 U.S.C. § 330(a)(1).

51.    In assessing the reasonableness of compensation, Section 330 of the Bankruptcy

Code sets forth six (6) factors that are to be considered.  *See* 11 U.S.C. § 330.  These factors,

focusing on the nature, extent, and value of the services provided by the professionals at the time

incurred, include:

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or
> beneficial at the time at which the service was rendered toward the
> completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*See* 11 U.S.C. §§ 330(a)(3); s*ee also In re Northwest Airlines Corp.*, 400 B.R. 393, 398 (Bankr. S.D.N.Y. 2009).

52.     The standards set forth in section 330 of the Bankruptcy Code have been interpreted to provide that, "[t]he court may award 'reasonable compensation for actual, necessary services rendered' by . . . professionals 'based on (i) nature of the services, (ii) extent of the services, (iii) value of the services, (iv) time spent on the services, and (v) the cost of comparable services in non-bankruptcy cases.'" *In re Channel Master Holdings, Inc.*, 309 B.R. 855, 861 (Bankr. D. Del. 2004) (quoting *In re Busy Beaver Bldg Centers, Inc.*, 19 F.3d 833, 840 (3d Cir. 1994)); s*ee also In re Fleming Cos.*, 304 B.R. 85, 89 (Bankr. D. Del. 2003) (quoting same).  A bankruptcy court, however, "'should not allow compensation for (i) unnecessary duplication of services; or (ii) services that were not (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case.'" *In re Fleming Cos.*, 304 B.R. at 89 (quoting 11 U.S.C. § 330(a)(4)(A)).

53.     A court may not award professional fees unless and until the applicant shows that those fees provided a benefit to the estate.  *See* 11 U.S.C. § 330(a)(4)(A)(ii).  In addition, the fees must be reasonable and necessary.  Thus, benefit to the estate and necessity are the critical threshold issues that must be addressed before the court may award any compensation.  *See* 11

U.S.C. § 330(a)(4)(A)(ii); s*ee also In re Lederman Enterprises*, 997 F.2d 1321, 1322-23 (10th Cir. 1993) (holding that the disallowance of fees for services which were not necessary or beneficial to the estate should not be considered a penalty but rather a statutory imperative). The burden rests squarely with the party seeking compensation to prove that the compensation and expenses sought were reasonable and necessary.  *See Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 260 (3d Cir. 1995); *In re Engel*, 124 F.3d 567, 573 (3d Cir. 1997) (citing *In re Ark. Co.*, 798 F.2d 645, 650 (3d Cir. 1986) (other citation omitted)); *Johnson v. Holiday Express Inc.,* 488 F.2d 714 (6th Cir. 1974).

54.    In analyzing whether a movant has satisfied its burden for approval of compensation, a bankruptcy court should evaluate the "two-tier[ed] test for determining whether and in what amount to compensate professionals. . . [f]irst, the court must be satisfied that the professionals performed actual and necessary services. . . [s]econd, the court must assess a reasonable value for those services." *Channel Master*, 309 B.R. at 861 (internal quotation omitted); *see also In re Fleming Cos.*, 304 B.R. at 90.

55.    Section 331 authorizes the bankruptcy court, in its discretion, to award debtor or committee professionals interim compensation.  *In re Am. Int'l Airways, Inc.*, 47 B.R. 716, 722 (Bankr. E.D. Pa. 1985).  Courts may permit professionals to seek interim compensation more frequently than every 120 days where the circumstances warrant.  *In re Fitzsimmons Trucking, Inc.*, 124 B.R. 556, 561 (Bankr. D. Minn. 1991).  However, any compensation received in the interim is subject to adjustment (including disgorgement) at any time during the pendency of the case.  *See, e.g.*, *In re Taxman Clothing Co.*, 49 F.3d 310, 312, 314 (7th Cir. 1995); *Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Charles N. Wooton, Ltd.* (*In re Evangeline Ref. Co.*), 890 F.2d 1312, 1321 (5th Cir. 1989).

## II.    RSA APPROVAL WAS NOT AN ACTUAL AND NECESSARY COST OF THE ADMINISTRATION OF THE ESTATE

56.    Seeking approval of the RSA was not necessary to the administration of these cases as required under Section 330(a)(3).   At the time the services were rendered, the parties locked themselves into a situation that required the Court to invalidate the Hartford Settlement. The original Hartford Settlement did not include a clear fiduciary out or other termination mechanism. Rather than breaching that agreement and facing the resulting consequences, the parties chose instead to avoid them altogether by seeking entry of an RSA approval order which declared, effectively, that such a breach had no consequences, even though the Hartford Settlement had not previously been approved and was not properly before the Court as part of the RSA.

57.    In order to obtain the consent of several key parties to the RSA, including the TCC, the FCR, and the Coalition, the Debtors agreed to seek judicial invalidation of the Hartford Settlement through a procedurally-improper vehicle.  When faced the Court's refusal to invalidate the Hartford Settlement as part of the RSA, the parties declined to memorialize the RSA in any fashion with an order. It was not reasonable at the time the RSA was pending to expect the Court to alter rights between the Debtors and a party that was not a signatory to the RSA. While the case dynamics were challenging for the parties, the RSA held illusory value given the conditions precedent to it effectively binding the parties.

58.    A failure to "objectively and impartially evaluate the merits or the risk of loss to the estate" can support denial of fees for estate compensated professionals.  *See Crawford v. Riley Law Gp. LLP (In re Wolverine, Proctor & Schwartz, LLC)*, 527 B.R. 809, 842 (D. Mass. 2015).  If "'a reasonable lawyer would have abandoned the lawsuit,' a professional may be penalized by a fee reduction for not doing so." *Id.* at 842-43 (quoting *In re Taxman Clothing*

*Co.*, 49 F.3d 310, 315 (7th Cir. 1995)).  While it is attractive to view reductions as a penalty,

consistent with the Tenth Circuit's analysis in *Lederman Enterprises*, it is statutorily imperative

to deny compensation for work that is not reasonable or actually necessary to the bankruptcy

cases.  997 F.2d at 1322-23.

59.    The RSA Motion on its face identifies that each of the parties now subject to this

Omnibus Objection went in with open eyes as to the dynamics in play.  Those professionals

should equally bear the burden of not being compensated for time spent that did not advance the

objectives of these cases.  While the U.S. Trustee expects the professionals to argue that this

Omnibus Objection proposes a "hindsight" analysis, the Court -- on the record before it -- can

conclude that it was not reasonable to proceed with the RSA Motion at the time it was proposed

in 2021 when the fees were generated.  *See In re Value City Hldgs., Inc.*, 436 B.R. 300, 306

(Bankr. S.D.N.Y. 2010).  A reasonable lawyer would not have spent months seeking approval of

an RSA, only to substantially prevail and then not submit an order to memorialize the support of

the signatories.  *See id.* (citing *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 72 (2d Cir. 1996).

60.    By failing to seek an order approving the RSA after the Court's ruling, the parties

essentially concede that the entirety of the RSA exercise was not necessary to reach

confirmation. This is borne out by the fact that there were numerous items that required further

settlement and agreement, which developed only after the RSA Motion.  Unlike in *Value City*,

this Omnibus Objection is not seeking to impose a post hoc requirement that certain recovery

milestones are meant to permit fees. Instead, consistent with *Engel,* the U.S. Trustee seeks a

determination on the issue of "benefit to the estate" on these specific facts.  *Compare In re Value

City Hldgs., Inc.*, 436 B.R. 300, 307 (Bankr. S.D.N.Y. 2010) (seeking to tie fees to outcomes for

unsecured creditors), *with In re Engel*, 124 F.3d 567, 575 (3d Cir. 1997) (identifying on facts

relating to post-conviction relief sought by the debtor, that "'benefit-to-the-estate' has thus been put to rest). It is worth noting that, even during the RSA approval litigation, the RSA parties attempted to proceed forward with a hearing knowing that the RSA would expire, but were willing to foist the time and expense of preparing for the hearing on other parties in interest. The Court expressed its disapproval of that tactic at the time by cancelling the July 29, 2021 hearing to approve what would then have been a terminated RSA. (D.I. 5803). In *Fleming Companies*, this Court held that it may reduce fees relating to activities that are "improper or appear[] to be designed to frustrate the legitimate rights of the other parties in [the] case." 304 B.R. at 90.

## III.   UNNECESSARY AND INAPPROPRIATE CONFIRMATION FINDINGS WERE SOUGHT RESULTING IN ADDITIONAL TIME SPENT AT TRIAL

61.   As with the RSA, the fees at issue regarding the findings discussed in this Omnibus Objection were not necessary to the administration of these cases as required under Section 330(a)(3). "Much ink and much trial time was taken up trying to justify the Findings, substantially all of which relate, directly or indirectly, to the TDP." *In re BSA*, 642 B.R. 504, 623 (Bankr. D. Del. 2022). This Omnibus Objection identifies 10 trial days where the TDPs were a primary focus of the confirmation hearing, and requests the Court deny approval of fees for the hearing time spent. "[A] bankruptcy judge's experience with fee petitions and his or her expert judgment pertaining to appropriate billing practices, founded on an understanding of the legal profession, will be the *starting point* for any analysis." *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 258 (3d Cir. 1995) (quoting *Busy Beaver*, 19 F.3d at 854). Given the Court's repeated cautions about what the Bankruptcy Code would permit the Court to find at confirmation, it was not a reasonable exercise for the parties supporting the Plan to devote so much time to an issue that was not capable of being resolved as they requested. *See Wolverine*, 527 B.R. at 842-43 (quoting *In re Taxman Clothing Co.*, 49 F.3d 310, 315 (7th Cir. 1995)).

62.     The Court in *In re Keene Corp.*, recognized the analogy that "Michelangelo should not charge Sistine Chapel rates, to paint a barn" and added that "he should not employ the entire Florentine school on the project" when addressing overstaffing issues. *In re Keene Corp.*, 205 B.R. 690, 708-09 (Bankr. S.D.N.Y. 1997) (citing *In re S.T.N. Enters., Inc.*, 70 B.R. 823, 842 (Bankr. D. Vt. 1987)). A further corollary to that analogy is applicable here, which is that Michelangelo should not devote time to details of a project that he's already been cautioned to avoid.

63.     To the extent that the time spent seeking these findings is duplicative or cumulative, then the fees cannot be approved. *See In re Fleming Cos.*, 304 B.R. at 89 (quoting 11 U.S.C. § 330(a)(4)(A)) (stating that the Court "should not allow compensation for (i) unnecessary duplication of services; or (ii) services that were not (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case."). The amount of time actually spent, and the amount of time reasonably spent, are not necessarily the same. *See In re Great Sweats, Inc.*, 113 B.R. 240, 242 (Bankr. E.D. Va. 1990); *In re Eckert*, 414 B.R. 404, 410 (Bankr. N.D. Ill. 2009).

64.     These unnecessary and inappropriate findings and the time spent devoted to seeking them differs from the issues with the RSA, in that the ultimate outcome of the activity was still a confirmed plan, as opposed to an RSA unsupported by an entered order. The U.S. Trustee recognizes that result and difference, but regardless of the outcome on confirmation or appeal, the amount of time at trial devoted to this issue was not reasonable. While the professionals may seek to apportion blame among the various parties supporting the plan that insisted on pursuing these findings, addressing the issue with respect to each professional that

seeks fees fairly addresses the problem, and ensures that the estates do not bear the costs of unreasonably lengthy hearings.

## IV.    PSZJ's FEES REQUIRE FURTHER WRITE OFF OR REDUCTION TO ADDRESS THE KOSNOFF COMMUNICATIONS

65.    During the month of November 2021, substantial time was expended by many of the estate professionals in investigating the facts and circumstances surrounding the cooperation and participation of the TCC and PSZJ in transmitting the Kosnoff Communications.  The PSZJ Settlement included a consensual fee reduction of $750,000, along with a contribution of $1.25 million to the Youth Protection Fund.  While that addressed items from the Debtors' perspective with respect to PSZJ and the Kosnoff Communications, the ability to object to fees, and the Court's right to impose a non-monetary sanction, were preserved.

66.    In seeking further redress for the harm caused by the Kosnoff Communications, the U.S. Trustee objects to PSZJ's fees as unreasonable and of no benefit to the estate.  The TCC's attempted mitigation of the issues -- the Voting Ombudsperson Motion -- simply imposed additional administrative expenses on the estate and did nothing to cure the concern as to the propriety of votes from abuse survivors caused by PSZJ's involvement in the Kosnoff Communications.  Many parties, including the U.S. Trustee, informed the TCC that they would object to the Voting Ombudsperson Motion if the TCC filed it, and, when it was filed, did exactly that.  There was no basis under the Bankruptcy Code to seek the appointment of a Voting Ombudsperson, many parties informed the TCC of that at the time, and as a result there was no benefit to the estate from that action.  Also, PSZJ did not objectively or impartially evaluate the merits of this proposed Voting Ombudsperson, given the culpability the firm faced by facilitating the Kosnoff Communications.  *See In re Engel*, 124 F.3d at 575; *see also Wolverine*, 527 B.R. at 842.

67.     The U.S. Trustee also objects to the PSZJ Final Fee App. to the extent that a further reduction on account of Mr. Lucas's direct conduct is not addressed.  As will be discussed in more detail below, discretionary reductions by the Court of 10% even in light of previous 10-15% reductions, are within the sound discretion of the Court.  *See In re SC SJ Hldgs. LLC*, No. 21-10549 (JTD), 2023 Bankr. LEXIS 1729, at *26 (Bankr. D. Del. July 11, 2023) ("Taking into account that Pillsbury's hourly rates have already been reduced by 15%, I find that an additional 10% reduction in fees is appropriate.").  While the Court's rights to impose further non-monetary sanction regarding PSZJ's Kosnoff Communications role are preserved, the U.S. Trustee contends that the additional reduction of $434,431.60, or of 10% of Mr. Lucas's requested fees, is sufficient to address the issue.

## V.    THE COURT HAS DISCRETION TO REDUCE THE REQUESTED FEES

68.     While the U.S. Trustee believes the Court can sustain this Omnibus Objection on the above grounds, the Court in the alternative could deny the fees at issue as an exercise of its discretionary authority as is well established in applicable case law.  The recently-issued opinion by Judge Dorsey in the *In re SC SJ Holdings LLC* case provides a recitation of some of those cases:

> "In employing the fee setting criteria of Section 330(a), the bankruptcy judge is accorded wide discretion." *Financial Corp. of Am.*, 114 B.R. 221, 224 (9th Cir. B.A.P. 1990); *see also In re C & A Enterprises, Inc.*, 132 B.R. 303, 307 (Bankr. W.D. Pa. 1991) ("The bankruptcy court has the independent authority and responsibility to determine the reasonableness of compensation."). "At [least in part, the bankruptcy court's broad discretion is due to the fact that 'no matter how close the court comes to an objective determination of a reasonable fee, [the fee determination] is still, in the final analysis, a substantially subjective exercise.'" *Staiano v. Cain (In re Lan Assocs. XI, L.P.)*, 192 F.3d 109, 122 (3d Cir. 1999) (quoting *In re Garland Corp.*, 8 B.R. 826, 831 (Bankr. D. Mass. 1981)). "On its own initiative, the court may 'award compensation that is less than the amount of compensation that is requested.'" *In re Klika*, No. 05-10707 (MFW), 2008 Bankr. LEXIS 462, at *16 (Bankr. D. Del. Feb. 29, 2008) (quoting 11 U.S.C. § 330(a)(2)).

*In re SC SJ Hldgs. LLC*, No. 21-10549 (JTD), 2023 Bankr. LEXIS 1729, at *10-11 (Bankr. D. Del. July 11, 2023).  After taking into account proposed reductions of 15% of counsel's fees in *SC SJ*, Judge Dorsey exercised his discretion to impose an additional 10% reduction in fees.  *Id.* at *26. The issues in *SC SJ* included lack of delegation to lower billing timekeepers, overstaffing (particularly of senior-level attorneys), lumped entries, vague entries, and other inefficiencies.  *Id.* at *11-16 & *24-26.  While those types of items have been addressed by the Fee Examiner's work in these cases, the Court's ability to exercise discretion applies with equal force to the issues identified in this Omnibus Objection.

69.    Bankruptcy courts have an independent duty to review fee applications.  *Busy Beaver*, 19 F.3d at 841.  "[T]he bankruptcy court must protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors."  *Id.* at 844.  The Bankruptcy Court "should review a fee application to ensure that the applicant exercises the same 'billing judgment' as do non-bankruptcy attorneys by, for example, writing off . . . redundant costs precipitated by overstaffing . . . ."  *Id.* at 856. "Professionals who decline to consider that their fees and expenses will be paid from a *bankruptcy estate* and who refuse to exercise any billing discretion in that regard may 'drain [the estate] of wealth which by right should inure to the benefit of unsecured creditors.'"  *In re GSC Group, Inc.*, 502 B.R. 673, 749 (Bankr. S.D.N.Y. 2013) (emphasis in original, quoting *In re Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997)).  The professionals seeking allowance of compensation for RSA approval and the confirmation findings seek payment of fees apparently posit that no reductions for the unnecessary work are appropriate.  The Court may exercise its discretion to reduce allowed compensation for such unnecessary work to ensure that

increased funds are available to the Reorganized Debtors, to promote the goals and mission of the Boy Scouts of America, and to ensure additional funds are in place to compensate the survivors of abuse.

70.     Section 330(a) of the Bankruptcy Code incorporates the concept of billing judgment.  *See In re Village Apothecary, Inc.*, 586 B.R. 430, 433-34 (Bankr. E.D. Mich. 2018). The Third Circuit Court of Appeals has held that, under Section 330(a), "the court should review a fee application to ensure the applicant exercises the same 'billing judgment' as do non-bankruptcy attorneys by, for example, writing off [fees] . . . for which analogous non-bankruptcy clients typically decline to pay." *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 855-56 (3d Cir. 1994) (*quoting In re Manoa Fin. Co.*, 853 F.2d 687, 690 (9th Cir. 1988)); *see also id.* at 849-50 (legislative history of Section 330, which "repeatedly refers to the billing practices of nonbankruptcy professionals," expresses "unambiguous policy" that bankruptcy professionals should earn same as their non-bankruptcy counterparts).  In practical terms, the Court reviews fee applications "much as a sophisticated non-bankruptcy client would review a legal bill." *Id.* at 848.

71.     Given the significance of the issues the U.S. Trustee targets as part of this Omnibus Objection, the Court's authority to award lesser compensation than sought by the professionals is appropriate, and supported by determinations by numerous Circuit Court Appellate decisions. *See, e.g.*, *In re Beverly Mfg. Corp.*, 841 F.2d 365, 371 (11th Cir. 1988); 11 U.S.C. § 330(a)(2) ("The court may . . . award compensation that is less than the amount of compensation that is requested."); *see also Zolfo*, 50 F.3d at 262-63 (affirming lower court's denial of improperly-documented and inadequately-detailed expenses).

**WHEREFORE,** the U.S. Trustee respectfully requests that this Court deny the fees identified in the attached exhibits and issue an order accordingly.

Dated: September 1, 2023
      Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**Regions 3 and 9**

By: */s/ Timothy J. Fox*
Timothy J. Fox, Jr., Esq. (DE Bar No. 6737)
Hannah M. McCollum, Esq.
Trial Attorneys
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 (Fax)
Timothy.Fox@usdoj.gov