## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| | (Jointly Administered) |
| Debtors.[1] | **Re Docket Nos. 11376, 11413** |

## REPLY TO OBJECTION AND OPPOSITION OF J.F.H. TO MOTION OF THE HONORABLE BARBARA J. HOUSER (RET.), IN HER CAPACITY AS TRUSTEE OF THE BSA SETTLEMENT TRUST, TO ENFORCE THE CONFIRMATION ORDER AND PLAN

---

[1] The Reorganized Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Reorganized Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

DOCS_DE:244661.1 85355/001

## TABLE OF CONTENTS

**Page**

Preliminary Statement ................................................................................................ 1

Argument ...................................................................................................................... 2

I.     The Trustee Is Not Asking the Court to Invalidate a State Court Judgment. ................... 2

       A.     The *Rooker-Feldman* Doctrine Does Not Apply ................................... 2

       B.     J.F.H.'s Collateral Estoppel Argument Fails ......................................... 3

       C.     Permissive Abstention Is Not Appropriate ............................................. 4

II.    J.F.H. Received Sufficient Notice of the Bankruptcy Proceeding................................... 6

III.   The Plain Language of the Insurance Entity Injunction Bars J.F.H.'s Claims. ............... 6

IV.    J.F.H. Is Not Entitled to Relitigate Confirmation Issues. ................................................ 9

Conclusion ................................................................................................................. 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Boy Scouts of Am. and Delaware BSA, LLC*,
  642 B.R. 504 (Bankr. D. Del. 2022), *aff'd*, 650 B.R. 87 (D. Del. 2023)......................6, 10, 12

*In re Boy Scouts of Am. and Delaware BSA, LLC*,
  650 B.R. 87 (D. Del. 2023) .....................................................................................................12

*In re Boy Scouts of Am.*,
  No. 20-10343 (Bankr. D. Del. Sept. 6, 2022), ECF No. 10296......................................1, 8, 12

*Cooperative Home Care, Inc. v. City of St. Louis*,
  514 S.W.3d 571 (Mo. 2017) ....................................................................................................4

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
  544 U.S. 280 (2005)..................................................................................................................3

*In re Federal-Mogul Global Inc.*,
  No. 01-10578, 2007 WL 4180545 (Bankr. D. Del. Nov. 16, 2007) ........................................11

*In re Federal-Mogul Global Inc.*,
  No. 01-10578 (Bankr. D. Del Nov. 5, 2007), ECF No. 13649, available at
  https://www.sec.gov/Archives/edgar/data/34879/000115752307011273/a5541
  998ex2_1.txt; ..........................................................................................................................12

*In re Flintkote Co.*,
  No. 04-11300, 2015 WL 4762580 (Bankr. D. Del. Aug. 12, 2015) ................................11, 12

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*,
  615 F.3d 159 (3d Cir. 2010)......................................................................................................3

*J.F.H. v. Travelers Indemn. Co.*,
  No. 4:21-cv-00123 (W.D. Mo. Feb. 26, 2021), ECF No. 5 .....................................................6

*In re Kaiser Aluminum Corp.*,
  No. 02-10429, 2006 WL 616243 (Bankr. D. Del. Feb. 6, 2006)............................................11

*In re Kaiser Aluminum Corp.*,
  No. 02-10429 (Bankr. D. Del. Sept. 7, 2005), ECF No. 7312, available at
  https://www.sec.gov/Archives/edgar/data/811596/000095012905009169/h287
  30exv99w2.htm.........................................................................................................................12

*In re Moran*,
  413 B.R. 168 (Bankr. D. Del. 2009) .........................................................................................4

DOCS_DE:244661.1 85355/001

*In re Penson Worldwide*,
    587 B.R. 6 (Bankr. D. Del. 2018) ............................................................5

*In re Residential Cap., LLC*,
    508 B.R. 838 (Bankr. S.D.N.Y. 2014) ....................................................5

*In re SCH Corp.*,
    569 F. App'x 119 (3d Cir. 2014) ..............................................................5

*In re Tonopah Solar Energy, LLC*,
    No. 20-11844, 2022 WL 958117 (D. Del. Mar. 30, 2022) ......................5

*Travelers Indemnity Company v. Bailey*,
    557 U.S. 137 (2009) ............................................................................10, 11

*In re W.R. Grace & Co.*,
    13 F.4th 279 (3d Cir. 2021) ................................................................10, 11

*In re W.R. Grace & Co.*,
    900 F.3d 126 (3d Cir. 2018) ....................................................................11

**Statutes**

Bankruptcy Code §§ 105(a), 1123(a)(5) and 1123(b)(6) ............................................12

DOCS_DE:244661.1 85355/001

The Honorable Barbara J. Houser (Ret.) (the "Trustee"), in her capacity as trustee of the

BSA Settlement Trust (the "Settlement Trust"), submits this reply to J.F.H.'s Objection and

Opposition (the "Objection") to the Motion for an order enforcing the provisions of the

Confirmation Order and Plan (the "Motion").[2]

### PRELIMINARY STATEMENT

1.        In the Motion, the Trustee established that the plain language of the Insurance

Entity Injunction operated to bar J.F.H.'s claims against the Insurers.  The Plan enjoins "any

claim or cause of action . . . against any Insurance Company based upon, attributable to, arising

out of, or in any way connected with any Abuse Insurance Policy . . . whether sounding in tort,

contract, warranty, or any other theory of law, equity, or admiralty."  Third Modified Fifth Am.

Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of Am. and

Delaware BSA, LLC (the "Plan") at Art. X.H.2, *In re Boy Scouts of Am.*, No. 20-10343 (Bankr.

D. Del. Sept. 6, 2022), ECF No. 10296.  J.F.H.'s claims for equitable garnishment, negligence,

breach of fiduciary duties, and bad faith against two Insurers who issued Abuse Insurance

Policies to the Boy Scouts of America and Heart of America Council clearly fall within the

scope of the injunction.  As such, they cannot be permitted to proceed.

2.        In the Objection, J.F.H. raises a number of arguments in opposition, none of

which have merit.  He asserts that enforcing the Plan and Confirmation Order would invalidate

his state court judgment against a perpetrator, though this judgment is completely unrelated to

the Motion.  He states that he never had notice of the bankruptcy proceedings, despite the fact

that his claims against the Insurers were stayed due to this very bankruptcy.  He asserts that the

Insurance Entity Injunction cannot be enforced as to his claims, but never once attempts to

---

[2] All capitalized terms have the meaning ascribed in the Motion unless otherwise noted.

1

argue that his claims do not fall within plain language of the Injunction.

3.       The Trustee is sympathetic to J.F.H.'s plight, and to his efforts to obtain additional compensation for the trauma he has suffered beyond his prior settlement with BSA. Ultimately, however, none of J.F.H.'s arguments can overcome the express language of the Insurance Entity Injunction, which prohibits J.F.H. (and the perpetrator that assigned his purported "rights" under the Abuse Insurance Policies to J.F.H.) from pursuing claims against BSA's insurers. The purpose of the Insurance Entity Injunction is to preserve the value of the Trust's insurance assets for equitable distribution to *all* survivors with compensable Abuse Claims—not just those survivors who are able to retain creative counsel. The Trustee respectfully requests that the Court enforce the Confirmation Order and Plan and enjoin these claims from proceeding.

## ARGUMENT

### I.       The Trustee Is Not Asking the Court to Invalidate a State Court Judgment.

4.       J.F.H. argues several times throughout the Objection that this Court cannot invalidate his state court judgment against Mr. Mackey, the perpetrator of his abuse. In so doing, he fundamentally misunderstands the nature of both his state court judgment and the scope of the Insurance Entity Injunction.

### A.       The *Rooker-Feldman* Doctrine Does Not Apply.

5.        J.F.H. first argues that the *Rooker-Feldman* doctrine bars the Trustee's requested relief. Obj. ¶¶ 62–63, ECF No. 11413 (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). However, *Rooker-Feldman* bars a claim only when four requirements are satisfied: first, "the federal plaintiff lost in state court;" second, "the plaintiff complains of injuries caused by the state-court judgments;" third, "those judgments were rendered before the federal suit was filed;" and fourth, "the plaintiff is inviting

2

the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (alterations omitted); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (holding that the *Rooker-Feldman* doctrine is "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments").

6.      *Rooker-Feldman* does not apply here.  Neither the Trustee nor the Insurers are "state-court losers," as neither was a party to J.F.H.'s original state court action against the perpetrator.  J.F.H. has a judgment only against Mackey.  The Trustee is not "complain[ing] of injuries" caused by this judgment.  Obj. ¶ 63.  The Trustee is not asking the Court to review or reject this judgment.  Enforcing the Insurance Entity Injunction to bar J.F.H. from pursuing his claims against the Insurers has no bearing on his judgment against Mackey.

7.      J.F.H. argues that enforcing the Insurance Entity Injunction would invalidate the factual finding in his state court judgment that the Insurers denied Mackey's coverage demands in bad faith.  Obj. ¶¶ 38, 63.  But this factual finding is not a judgment against the Insurers.  If it were, J.F.H. would not need to bring the Underlying Action against the Insurers to recover.  The Insurers' liability for equitable garnishment, negligence, breach of fiduciary duties, and bad faith was never litigated in the state court action.  Nor, for that matter, was the claim at issue here: whether the Plan and Confirmation Order prohibit J.F.H. from pursuing claims that belong to the Trust.  *Rooker-Feldman* does not prevent this Court from granting the Trustee's requested relief.

**B.      J.F.H.'s Collateral Estoppel Argument Fails.**

8.      The Court is not collaterally estopped from enforcing the Insurance Entity Injunction, as J.F.H. next argues.  *See* Obj. ¶¶ 65–67.  Collateral estoppel requires that four

3

factors are satisfied:  first, the "issue decided in the prior adjudication was identical to the issue presented in the present action;" second, "the prior adjudication resulted in a judgment on the merits;" third, "the party against whom estoppel is asserted was a party or was in privity with a party to the prior adjudication;" and fourth, "the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." *Cooperative Home Care, Inc. v. City of St. Louis*, 514 S.W.3d 571, 581 (Mo. 2017); *see also In re Moran*, 413 B.R. 168, 180–81 (Bankr. D. Del. 2009) (providing that "where a party seeks to rely on a state court judgment to preclude relitigation of the same issues in federal court, a federal court must look to state law" to determine whether collateral estoppel bars the claim).  J.F.H. does not satisfy those factors here.  The issue adjudicated in the state action was *Mackey's* liability, which is not under consideration here.  The Trustee was not a party to the state court action, nor is she in privity with Mackey.  The Trustee did not have a full and fair opportunity to litigate *any* issues in the prior dispute, because that dispute was between a survivor and perpetrator, in which a judgment was rendered years before the Trust existed.

9.      J.F.H. seems to argue that the Insurers are collaterally estopped from challenging the factual finding of bad faith.  Obj. ¶ 66.  The Trustee takes no position on the validity of this argument, but it is ultimately irrelevant.  The Trustee's Motion is not attempting to relitigate that issue here.  Collateral estoppel simply does not apply to the present dispute.

**C.      Permissive Abstention Is Not Appropriate.**

10.     J.F.H. also argues that this Court should permissively abstain from deciding the Motion.  *See* Obj. ¶¶ 68–69.  A bankruptcy court has discretion to abstain from a hearing a proceeding after consideration of twelve factors:

> (1) the effect or lack thereof on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the

4

difficulty or unsettled nature of the applicable state law; (4) the presence of a
related proceeding commenced in state court or other non-bankruptcy court;
(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of
relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the
substance rather than the form of an asserted "core" proceeding; (8) the feasibility
of severing state law claims from core bankruptcy matters to allow judgments to
be entered in state court with enforcement left to the bankruptcy court; (9) the
burden on the court's docket; (10) the likelihood that the commencement of the
proceeding in bankruptcy court involves forum shopping by one of the parties;
(11) the existence of a right to a jury trial; and (12) the presence in the proceeding
of non-debtor parties.

*In re Tonopah Solar Energy, LLC*, No. 20-11844, 2022 WL 958117, at *9 (D. Del. Mar. 30,

2022).  Some factors are more important than others, and "[o]f particular importance are the

effect on the administration of the estate, whether the proceeding is core or non-core, and

whether the claim involves only state law issues."  *Id.*

11.      Permissive abstention "is the exception, not the rule.  It rarely should be

invoked."  *In re Penson Worldwide*, 587 B.R. 6, 22 (Bankr. D. Del. 2018).  Here, there is no

reason for this Court to abstain in order to let the Underlying Action proceed.  The Motion

presents a question about the interpretation of the confirmed Plan, which is vital to the

administration of the Debtors' estate.  The Trustee has requested that this Court interpret and

enforce its own order; "it would be difficult to identify judicial acts that are any more critical to

the orderly functioning of the bankruptcy process or more closely tethered to core bankruptcy

jurisdiction."  *In re Residential Cap., LLC*, 508 B.R. 838, 849 (Bankr. S.D.N.Y. 2014) (internal

quotation marks and citation omitted).  J.F.H. has not challenged that this is a core proceeding.

Further, this Motion concerns issues of bankruptcy law, not Missouri state law.  The Missouri

court—whether the state court or the federal court in front of which the Underlying Action is

currently pending—is far less equipped than this Court to determine whether J.F.H.'s claims

can proceed in light of the Insurance Entity Injunction.  "Federal courts have a virtually

unflagging obligation to exercise the jurisdiction conferred on them," *In re SCH Corp.*, 569 F.

5

App'x 119, 121 (3d Cir. 2014), and this Court should not abstain from exercising its jurisdiction here.

## II.    J.F.H. Received Sufficient Notice of the Bankruptcy Proceeding.

12.    J.F.H. asserts that this Court cannot exercise jurisdiction over him because the Motion does not establish that he was a creditor in the BSA bankruptcy proceeding, nor that he received notice of the bankruptcy.  Obj. ¶ 64.  J.F.H. does not explain why his status as a creditor (or not) is relevant to the Motion.  As for notice, there can be no dispute that J.F.H. received sufficient notice of the bankruptcy.  As this Court recognized, the Debtors engaged in "an extensive supplemental noticing campaign" in 2020 to inform potential claimants, like J.F.H., of the bankruptcy and the bar date.  *In re Boy Scouts of Am. and Delaware BSA, LLC*, 642 B.R. 504, 533 (Bankr. D. Del. 2022), *aff'd*, 650 B.R. 87 (D. Del. 2023).  Further, both Travelers and the Debtors filed a notice of BSA's bankruptcy in the Underlying Action on February 26, 2021, and March 5, 2021, respectively—nearly a year in advance of the Plan objection deadline.  *See* Suggestion of Bankruptcy, *J.F.H. v. Travelers Indemn. Co.*, No. 4:21-cv-00123 (W.D. Mo. Feb. 26, 2021), ECF No. 5; Suggestion of Bankruptcy, *J.F.H. v. Travelers Indemn. Co.*, No. 4:21-cv-00123 (W.D. Mo. Mar. 5, 2021), ECF No. 16.  The Underlying Action was stayed by agreement of the parties during the pendency of the bankruptcy.  *See, e.g.*, Stipulation for Stay, *J.F.H. v. Travelers Indemn. Co.*, No. 4:21-cv-00123 (W.D. Mo. Mar. 23, 2021), ECF No. 22.  J.F.H. had ample time to appear in the bankruptcy proceedings and challenge the Insurance Entity Injunction if he wished to do so; he did not.

## III.    The Plain Language of the Insurance Entity Injunction Bars J.F.H.'s Claims.

13.    Despite the multitude of other arguments raised by J.F.H., he never once disputes that the plain language of the Insurance Entity Injunction bars his claims against the Insurers.  This is not surprising, as the language of the Insurance Entity Injunction is both broad

6

and clear:

> *[A]ll Persons that that have held or asserted*, that hold or assert, or that may in the future hold or assert *any claim or cause of action* (including any Abuse Claim or any claim for or respecting any Settlement Trust Expense) *against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Abuse Insurance Policy* or other insurance policy issued by a Settling Insurance Company covering Abuse Claims, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, *whether sounding in tort,* contract, warranty, *or any other theory of law*, equity, or admiralty, *shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such claim or cause of action, including*:
>
>> a. commencing, conducting, or *continuing, in any manner*, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to *any such claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company,* with respect to any such claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such claim, demand, or cause of action against any Insurance Company) . . . .

Plan at Art. X.H.2 (emphases added).  This injunction was included in the Plan to "facilitate the Insurance Assignment, protect the Settlement Trust, and preserve the Settlement Trust Assets." *Id.* at Art. X.H.1.

      14.     J.F.H. argues that his claim for bad faith is extra-contractual and therefore it should be permitted to proceed.  Obj. ¶ 77.  The Insurance Entity Injunction, however, is clear that it bars *all* claims "in any way connected with" an insurance policy covering Abuse Claims, "whether sounding in tort, contract, warranty, or any other theory of law."  Plan at Art. X.H.2. Because all of J.F.H.'s claims, including the claim for bad faith, fall within the scope of the injunction, they are barred.[3]

---

[3] J.F.H. also claims that "[u]nder Judge Grate's order, J.F.H. has owned and has been entitled to receive and keep certain insurance proceeds since 2017[.]"  Obj. ¶ 74.  It is worth repeating that the Insurers have not been found

15.     The broad range of claims enjoined by the Insurance Entity Injunction was not by accident.  Such a wide-reaching scope is necessary to protect the insurance assets for the benefit of the Trust—including from dilution by J.F.H.'s bad faith claims.  If J.F.H. were to prevail on his bad faith claim, any compensatory damages award undoubtedly would include amounts that the Insurers otherwise would have paid under their policies in connection with J.F.H.'s suit against Mackey had the Insurers complied with their duty of good faith.  The Insurers, in turn, undoubtedly would seek to reduce the limits of their respective policies by such amount.  Worse, Liberty may assert that *the Trust* is responsible for paying (or reimbursing Liberty) for such amounts.  Liberty argued during the bankruptcy that the Trust is obligated to pay or reimburse Liberty for amounts Liberty pays under its "matching deductibles" policies.[4]  If Liberty prevails on that argument, the Trust could be required to pay Mackey, a perpetrator, or reimburse Liberty, an insurer, 100 cents on the dollar for their claims—while potentially paying survivors pennies on the dollar absent additional insurance recoveries by the Trust.  While the Trust does not agree that an Insurer would be entitled to reduce limits based on a tort damages award, nor with Liberty's interpretation of its fronting policies, the Trust still may have to expend substantial assets litigating this issue with the Insurers, when those assets could otherwise be distributed to survivors.  The Insurance Entity Injunction is intended to prevent this from happening.

---

liable for bad faith or any other claim, and no court has determined that Mackey (or J.F.H., as Mackey's assignee) has any right to the insurance proceeds.

[4] *See* Joinder and Obj. of Liberty Mut. Ins. Co. to the Second Modified Fifth Am. Chapter 11 Plan of Reorganization for Boy Scouts of Am. and Delaware BSA, LLC, at 2-3, *In re Boy Scouts of Am.*, No. 20-10343 (Bankr. D. Del. Feb. 4, 2022) ECF No. 8698 (arguing that under its policies, "BSA (not Liberty) paid any and all defense and indemnity costs," and BSA and other "named insureds" (such as Local Councils) were "obligated to promptly reimburse Liberty for any advanced amounts," and concluding that "the Settlement Trust standing in the shoes of non-debtor third parties must be subject to all rights, claims and defenses of Liberty, including recoupment and setoff rights.").

16.     J.F.H. argues that permitting his claims to move forward would "not open a Pandora's Box of similar claims." Obj. ¶ 81. Not so. If J.F.H. were permitted to pursue Mackey's tort claims against BSA's Insurers, then *any* perpetrator in litigation who is denied coverage for Scouting-related abuse claims (of which there would be many, since the plain language of the Abuse Insurance Policies bars coverage for perpetrators for liabilities stemming from such conduct) could potentially seek to assert a bad faith claim against BSA's insurers, again diluting Trust assets that would otherwise benefit survivors.

17.     Such an outcome also could have wide-ranging implications on the Trust's ability to maximize recoveries under the Abuse Insurance Policies. The Insurers likely would assert that they are entitled to significant settlement discounts if the Trust cannot provide a full release of their policies, including for claims like those at issue here. This would enable *perpetrators* to limit the Trust's ability to recover the full value of the Abuse Insurance Policies. This cannot have been the intent of a Plan that was approved on the basis that it provided a mechanism for payment of abuse survivors in full. The plain language of the Insurance Entity Injunction makes clear that it was not.

## IV.     J.F.H. Is Not Entitled to Relitigate Confirmation Issues.

18.     Unable to argue that the express text of the Insurance Entity Injunction does not apply to his claims, J.F.H. instead argues that the Insurance Entity Injunction cannot apply to his claims against the Insurers because they are not derivative of the Debtors' liability. Obj. ¶ 80.

19.     J.F.H. is not entitled to attack the Plan and Confirmation Order, six months after affirmation by the District Court and more than a year and a half after the Confirmation proceedings. Both the U.S. Court of Appeals for the Third Circuit and the U.S. Supreme Court have barred such challenges unequivocally.

9

20.     As the Third Circuit ruled in *In re Arctic Glacier Int'l, Inc.*:

> When a bankruptcy court enters a confirmation order, it renders a final judgment.  That judgment, like any other judgment, is res judicata.  It bars all challenges to the plan that could have been raised.  Challengers must instead raise any issues beforehand by objecting to confirmation.  A plan's preclusive effect is a principle that anchors bankruptcy law:  "A confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation."

901 F.3d 162, 166 (3d Cir. 2018) (quoting *Donaldson v. Bernstein*, 104 F.3d 547, 554 (3d Cir. 1997)).

21.     The U.S. Supreme Court rejected a similar post-confirmation challenge against an insurance injunction in *Travelers Indemnity Company v. Bailey*, 557 U.S. 137, 154 (2009). There, plaintiffs asserted that the plan's insurance injunction could not bar their tort claims against the insurers.  *Id.* at 143−45.  The court rejected this argument, concluding that it was a collateral attack on the bankruptcy court's subject matter jurisdiction to confirm the plan, and that it "cannot be squared with res judicata and the practical necessity served by that rule."  *Id.*

22.     It bears emphasis that several parties came forward during the bankruptcy proceedings to challenge the treatment of insurance policies under the Plan.  *See In re Boy Scouts of Am.*, 642 B.R. at 569 ("[The Lujan Claimants and the Guam Committee] argue that the buyback of the Abuse Insurance Policies is not permitted free and clear of the Archbishop's rights as an additional insured under any BSA policy[.]"); *id.* at 585 ("[T]he Lujan Claimants argue that the Insurance Policies cannot be sold free and clear of their direct-action rights under § 363(f)."). J.F.H. did not.  Neither the Bankruptcy Code nor principles of equity or judicial efficiency allow him to sit back during the bankruptcy, allow an unambiguous Plan to be confirmed, then seek to re-litigate the issue a year and a half later.

23.     J.F.H. relies on *In re W.R. Grace & Co.*, 13 F.4th 279, 285 (3d Cir. 2021)

10

("*W.R. Grace II*") to argue that the Plan cannot enjoin his claims. *W.R. Grace* does not support

J.F.H.'s attempt to re-open and re-litigate issues already decided at confirmation. Unlike the

Insurance Entity Injunction at issue here, the relevant injunction in *W.R. Grace* enjoined only

"Asbestos PI Claims" and was not specific to insurance. Thus, the court had to look outside the

four corners of the plan to determine whether the claims at issue (tort claims against the

debtor's insurers for failure to warn the public of the dangers of asbestos) fell within the scope

of "Asbestos PI Claims" enjoined by the Plan pursuant to § 524(g). *In re W.R. Grace & Co.*,

900 F.3d 126, 132 (3d Cir. 2018) ("*W.R. Grace I*"). Here, in contrast, J.F.H.'s claims are

clearly barred by the text of the injunction itself, and re-litigating this Court's approval of the

injunction thus is not appropriate, as the Supreme Court ruled unequivocally in *Bailey*.

24.     Even if J.F.H. could reopen the confirmation proceedings to relitigate the Plan,

this Court was well within its authority to issue the Insurance Entity Injunction. Such

injunctions have been incorporated into numerous plans of reorganization over the last three

decades. *See, e.g.*, *In re Flintkote Co.*, No. 04-11300, 2015 WL 4762580, at *6 (Bankr. D. Del.

Aug. 12, 2015) (approving similar Insurance Entity Injunction and finding it "essential to the

Plan and the Debtors' reorganization efforts"); *In re Federal-Mogul Global Inc.*, No. 01-10578,

2007 WL 4180545, at *34 (Bankr. D. Del. Nov. 16, 2007) ("The issuance of the Asbestos

Insurance Entity Injunction is necessary to facilitate the Plan's provisions for the treatment of

Asbestos Personal Injury Claims and demands and, accordingly, the Asbestos Insurance Entity

Injunction is appropriate under section 105(a) of the Bankruptcy Code."); *In re Kaiser*

*Aluminum Corp.*, No. 02-10429, 2006 WL 616243, at *19 (Bankr. D. Del. Feb. 6, 2006)

("Absent the Channeled PI Insurance Entity Injunction, individual claimants could separately

assert claims against PI Insurance Companies, thereby depleting the available insurance that

must be shared among the PI Trusts and impeding the Funding Vehicle Trusts' ability to

negotiate settlements.").[5]  The Insurance Entity Injunction is necessary to preserve the Abuse

Insurance Policies and the proceeds thereunder, both of which this Court ruled are assets of the

estate.  *See In re Boy Scouts of Am.*, 642 B.R. at 570.

25.    The injunctions set forth in the Plan, including those in the Insurance Entity

Injunction, were an appropriate exercise of the Bankruptcy's Court's "inherent equitable power

consistent with §§ 105(a), 1123(a)(5) and 1123(b)(6) of the Bankruptcy Code."  *In re Boy*

*Scouts of Am.*, 642 B.R. at 594–595; *see also In re Boy Scouts of Am. and Delaware BSA, LLC*,

650 B.R. 87, 135 (D. Del. 2023).  This Court and the District Court found that this Court was

well within its authority to issue the Insurance Entity Injunction; J.F.H. cannot challenge that

conclusion now.

26.    The Trustee is sympathetic to J.F.H.'s plight.  Ultimately, however, the Plan

language is clear:  he cannot pursue his claims against BSA's insurers.  The Plan, hard-fought

and negotiated among dozens of parties for the benefit of tens of thousands of survivors just

like J.F.H., prohibits these claims in order to benefit all holders of Abuse Claims.  The Plan and

Confirmation Order should be enforced as written, and J.F.H.'s claims should not be permitted

to proceed.

## CONCLUSION

For the reasons set forth above, the Trustee respectfully requests that this Court grant the

---

[5] *See* Am. Joint Plan of Reorganization in Respect of The Flintkote Co. and Flintkote Mines Ltd. (as Modified
Feb. 9, 2015), *In re Flintkote Co.*, No. 04-11300 (Bankr. D. Del. Feb. 9, 2015), ECF No. 8706; Fourth Am. Joint
Plan of Reorganization, *In re Federal-Mogul Global Inc.*, No. 01-10578 (Bankr. D. Del Nov. 5, 2007), ECF No.
13649, available at https://www.sec.gov/Archives/edgar/data/34879/000115752307011273/a5541998ex2_1.txt;
Second Am. Joint Plan of Reorganization of Kaiser Aluminum Corp., Kaiser Aluminum & Chemical Corp. and
Certain of Their Debtor Affiliates, *In re Kaiser Aluminum Corp.*, No. 02-10429 (Bankr. D. Del. Sept. 7, 2005), ECF
No. 7312, available at
https://www.sec.gov/Archives/edgar/data/811596/000095012905009169/h28730exv99w2.htm.

Motion to Enforce the Confirmation Order and Plan.


Dated:  September 8, 2023
Wilmington, Delaware

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ James E. O'Neill*
Richard M. Pachulski (CA Bar No. 90073)
Debra I. Grassgreen (CA Bar No. 169978)
John W. Lucas (CA Bar No. 271038)
James E. O'Neill (DE Bar No. 4042)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email: rpachulski@pszjlaw.com
　　　dgrassgreen@pszjlaw.com
　　　jlucas@pszjlaw.com
　　　joneill@pszjlaw.com

– AND –

**GILBERT LLP**
Kami E. Quinn (admission *pro hac vice*)
W. Hunter Winstead (admission *pro hac vice*)
Emily P. Grim (admission *pro hac vice*)
Rachel H. Jennings (admission *pro hac vice*)
Sarah A. Sraders (admission *pro hac vice*)
700 Pennsylvania Avenue, SE
Suite 400
Washington, DC 20003
Telephone:  (202) 772-2200
Facsimile:  (202) 772-3333
Email: quinnk@gilbertlegal.com
　　　winsteadh@gilbertlegal.com
　　　grime@gilbertlegal.com
　　　jenningsr@gilbertlegal.com
　　　sraderss@gilbertlegal.com


*Attorneys for the Honorable Barbara J. Houser
(Ret.), in her capacity as Trustee of the BSA
Settlement Trust*

13