# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>                  Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>Jointly Administered<br><br>**Re: Docket Nos. 11443, 11444, 11445, 11462, 11463, and 11464** |

**Objection Deadline: September 15, 2023, at 4:00 p.m. (ET)**
**Hearing Date: September 26, 2023, at 2:00 p.m. (ET)**

### SETTLEMENT TRUSTEE'S OMNIBUS RESPONSE TO THE OBJECTIONS OF CERTAIN INSURERS AND LUJAN CLAIMANTS AND THE OBJECTION OF LUJAN CLAIMANTS TO THE MOTION TO SEAL AUDIT PROTOCOL

The Honorable Barbara J. Houser (Ret.), Trustee (the "**Settlement Trustee**") of the BSA Settlement Trust (the "**Settlement Trust**"), created by the BSA Settlement Trust Agreement, dated as of April 19, 2023 (the "**Settlement Trust Agreement**"), implemented pursuant to the *Third Modified Firth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 10296] (the "**Plan**"), confirmed in the above-captioned chapter 11 cases, hereby files this reply in further support of the *Motion for Entry of an Order Approving an Audit Program Regarding the Identification of Potential Fraudulent Survivor Claims* [Docket No. 11443] (the "**Audit Program Motion**") and the Declaration of Hon. Barbara J. Houser (Ret.)(the "**Houser Declaration**") and in response to the *Certain Insurers' Limited Objection to the Motion for Entry an Order Approving an Audit Program Regarding the Identification of Potential Fraudulent Survivor Claims* [Docket No. 11464] (the "**Certain Insurer Objection**"), Tort Claimants

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

represented by Lujan & Wolff LLP (the "**Lujan Claimants**") *Limited Objection and Reservation of Rights with Respect to the Settlement Trust's Motion for Entry of an Order Approving an Audit Program Regarding the Identification of Potential Fraudulent Survivor Claims* [Docket No. 11462] (the "**Lujan Objection**" and together with the Certain Insurer Objection, the "**Objections**"), and the Lujan Claimants' *Objection to the Motion to Seal Exhibit Related to the Settlement Trust's Motion for Entry of an Order Approving an Audit Program Regarding the Identification of Potential Fraudulent Survivor Claims* [Docket No. 11463] (the "**Sealing Objection**"), and respectfully states as follows:

## Preliminary Statement

1. In the Audit Program Motion, the Settlement Trustee demonstrated that she developed a robust set of procedures and tools that should detect and root out potentially fraudulent and invalid Abuse Claims. The Claim Questionnaire, created under the direction of the Settlement Trustee, requires Survivors and their counsel to submit, under penalty of perjury, a host of information that includes the Survivor's identity; description of the abuse; the type of the abuse; dates and location of the abuse; name, description, and role of the abuser; the impact of the abuse on the Survivor (mentally, physically, socially, vocationally, legally, and academically), along with documentation that supports the Abuse Claim. As reflected by the Claim Questionnaire, the information required to be submitted is comprehensive, specific, and provides the Settlement Trust with sufficient information to detect potentially fraudulent Abuse Claims pursuant to the Audit Program as applied by the Investigative Workflow Procedures. The Settlement Trustee also has the power to interview any Survivor who submits an Abuse Claim that is flagged as potentially fraudulent. If a Survivor refuses to sit for an interview, the Settlement Trustee has the power to disallow the Abuse Claim.

2.      The purpose of the Audit Program is not to measure the impact of abuse or to otherwise evaluate the Abuse Claim. The Court already approved the Trust Distribution Procedures, which contain a very detailed list of requirements that outline how claims are evaluated and how the Settlement Trust will ultimately determine the value of each Abuse Claim in accordance with the range of values under the Court approved Trust Distribution Procedures after application of mitigating and aggravating factors.

3.      By their limited objection, the Certain Insurers are collaterally attacking the Trust Distribution Procedures and seeking to require the Settlement Trustee to evaluate the Abuse Claims in ways not contemplated by the Court-approved Trust Distribution Procedures. The Certain Insures maintain that the Settlement Trustee should be required to randomly interview a statistically significant number of Survivors (even if the Abuse Claims are well supported and do not trigger any fraud alarms) for the purpose of identifying potentially fraudulent Abuse Claims. However, the Certain Insurer's own expert admits that interviews do not detect fraudulent or invalid claims. The testing discussed in the Certain Insurers' expert's testimony goes to the impact of the abuse, which is not the subject of the Audit Program.

4.      The Lujan Claimants contend they and other Survivors should be provided the Investigative Workflow Procedures. The Settlement Trustee disagrees. The Audit Program is designed to benefit all Survivors so that (i) only valid and meritorious Abuse Claims receive distributions from the Settlement Trust, and (ii) those distributions are not diluted by fraudulent or invalid Abuse Claims. The public disclosure of how the Settlement Trustee intends to apply the tools and processes pursuant to the Audit Program and Investigative Workflow Procedures to detect potentially fraudulent Abuse Claims will only serve to undermine the program.

5. For the reasons set forth herein, and in the Audit Program Motion, the Houser Declaration, this Omnibus Response, and the arguments at the hearing, the Settlement Trustee requests that the Court approve the Audit Program Motion and overrule the Objections and Sealing Objection.

### A. The Claim Questionnaire Provides Sufficient Information to Enable the Settlement Trust to Search for and Detect Potentially Fraudulent Abuse Claims

6. The factual data submitted through the Claim Questionnaire serves two purposes: (i) to provide information and supporting documentation (under oath) to the Settlement Trust as part of the Settlement Trust's evaluation of the Abuse Claim pursuant to the Trust Distribution Procedures, and (ii) to screen for potentially fraudulent and invalid Abuse Claims. The detailed information[2] required by the Claim Questionnaire is far-reaching, and the Settlement Trust's analysis of such information pursuant to the Audit Program and the Investigative Workflow Procedures provides a robust framework that will enable the Settlement Trustee and her staff to root out potentially fraudulent Abuse Claims so that only valid claims receive distributions.

7. The chart below shows that the information required to be submitted by Survivors pursuant to the Claim Questionnaire includes substantially all of the information the Certain Insurers are seeking and provides sufficient information for the Settlement Trust to analyze the validity of the claims.

| Certain Insurer Proposed Change | Claim Questionnaire Info Request | Questionnaire Section |
|---|---|---|
| **Verification of Information** | | |
| Require attorneys to personally swear that the records and claim forms submitted to the Trust are true and correct to the best of their knowledge and belief | Survivor and his/her attorney, if represented, is required to sign the Claim Questionnaire under oath and penalty of perjury. | Section A |
| | Survivor must declare under penalty of perjury that the information is true and correct. | Section P |

---

[2] The required information is reflected on the Claim Questionnaire by the red asterisks.

4

| Certain Insurer Proposed Change | Claim Questionnaire Info Request | Questionnaire Section |
|---|---|---|
| and that the attorneys are unaware of any other responsive documents or information relevant to the claim at issue that have not been submitted to the trust. Certain Insurer Objection, ¶¶ 10, 12, and 13. | Knowingly false statements will be referred for criminal prosecution that may result in up to 20 years in prison and a fine up to $250,000. | |
| | Attorney must swear to that he or she conducted due diligence to investigate the Claim, and, based upon that investigation, has no reason to believe that the information provided by the Claimant is incorrect. Additionally, the attorney must represent that the narrative responses included in Sections C, K, and M are written in the Claimant's own words, unaltered by counsel (although the attorney may have refreshed the Claimant's recollection based on prior conversations with the Claimant). | Section P |
| **Designate all Claims as Presumptively Fraudulent if Attorney Submits a Fraudulent Claim** | | |
| After determining an attorney has submitted fraudulent claims or claims records to the Trust, require heightened scrutiny to all other claims submitted from that attorney and their law firm, and delay processing of any claim suspected to be fraudulent to permit more time to investigate the suspected fraud. Certain Insurer Objection, ¶¶ 10 and 13. | Neither the Trust Distribution Procedures nor the Audit Program automatically label all of the claims submitted by an attorney if such attorney submits one or more claims that are identified as fraudulent.

The Settlement Trustee believes that it would be unfair to Survivors (who have no control over their counsel's conduct with respect to other clients) to penalize them for the conduct of their counsel if they did not take part in the attorney's formulation and submission of a fraudulent Abuse Claim.

The Audit Program and the Workflow Investigative Procedures are designed to detect potentially fraudulent and invalid claims regardless of who submitted the claim. As a result, the Settlement Trust should not reflexively treat all claims submitted by a specific attorney as presumptively fraudulent if the claims are otherwise sufficiently supported.

Plus, automatically designating all claims involving a specific attorney and moving | n/a |

DOCS_SF:109563.3 85355/001

| Certain Insurer Proposed Change | Claim Questionnaire Info Request | Questionnaire Section |
|---|---|---|
| | them to the end of the line would modify the "first in, first out" procedure that is already part of the Court approved Trust Distribution Procedures. | |
| **Information Regarding Other Recoveries or Settlements of the Abuse Claims** | | |
| Expressly require claimants to provide the Trust with all records concerning the claimant regarding: (a) other abuse litigation; (b) other settlements of filed or unfiled abuse claims; (c) other bankruptcy trust claim records concerning the claimant (*e.g.*, diocesan bankruptcies); (d) relevant medical/psychological records; (e) three years of W-2s; and (f) three years of 1099s. Certain Insurer Objection, ¶¶ 10 and 16. | Already requires information regarding any other litigation, settlement regarding the Abuse Claim.<br><br>Already requires information regarding any other recovery for the Abuse Claim.<br><br>Other requests are unnecessarily burdensome and not designed to assist the Settlement Trustee in detecting fraudulent or invalid claims. | Section G<br><br>Section H |
| **Unilaterally Authorize Trust to Obtain Information Not Submitted by Survivor** | | |
| Require claimants at the outset of the claim submission process to authorize the Trust to obtain any and all documents related to the claimant's medical, psychological, other Chapter 11 Trust, employment, financial/tax, school, military credit history, and criminal background records. Certain Insurer Objection, ¶¶ 10 and 16. | It would be inefficient and likely not feasible for the Settlement Trustee to request and obtain information timely from third parties that is generally private and confidential (*e.g.*, medical history, other chapter 11 trusts (as they are generally protected by court ordered confidentiality), employment, taxes, school, military, and criminal background. It will impose unnecessary costs on the Settlement Trust without a corresponding benefit in the detection of a fraudulent or invalid claim.<br><br>The Claim Questionnaire already requires the Survivor to submit documentation and information for the following: | |
| | Military service | Section E |
| | Medical Treatment for the Abuse | Section E |
| | Mental and Physical Impact and Treatment | Section M |
| | Medical Bills and Records | Section M |
| | Medical Treatment Records | Section M |
| | Interpersonal Impact and Treatment | Section M |
| | Vocational Impact | Section M |

| Certain Insurer Proposed Change | Claim Questionnaire Info Request | Questionnaire Section |
|---|---|---|
| | Academic Impact | Section M |
| | Other supporting documents | Section O |
| **Require Narrative Answers** | | |
| Data analytics will not stop a hypothetical, fraudulent claimant that answers the questionnaire only through use of the "check the box and drop-down menus." The Trustee should be sure to require at least some narrative answers from every Claimant. | The Claim Questionnaire classifies Abuse Claims into seven categories. If the Survivor's Claim Questionnaire reflects that his/her abuse fell into any of the classifications, then they must provide narrative answers in response to approximately 15 questions for each classification of abuse. If, for example, a Survivor's Abuse Claim includes penetration and oral contact, then the Survivor would be required to submit approximately 30 narrative responses, and more for any other separate classifications of abuse. For example: | Section K |
| | Identify state in which abuse occurred | Section K, p. 18 |
| | Identify city in which abuse occurred | Section K, p. 18 |
| | Abuse start and end dates | Section K, p. 19 |
| | Description about the abuse start and end dates | Section K, p. 19 |
| | Age at time of first abuse | Section K, p. 19 |
| | Age at time of last abuse | Section K, p. 19 |
| | Description of abuse that involved threats, force, violence, coercion, or stalking. | Section K, p. 20 |
| | Description of exploitation of child pornography | Section K, p. 20 |
| | Description of the associated scouting activity | Section K, p. 20 |
| | Explanation of who the abuse was reported to. | Section K, p. 20 |
| | Identification of witnesses | Section K, 21 |
| | Survivor may also supply general narrative summary of the abuse that must be in the Survivor's own words. | Section K, p. 16 |
| | Identity of abuser | Section L |
| | Description of abuser | Section L |
| | Job or role of the abuser | Section L |
| | Abuser's relationship with Scouting, troop number. | Section L |
| | Information regarding abuse of other Survivors | Section L |
| | Description of relationship with abuser outside of Scouting | Section L |
| | Description of how Survivor met abuser | Section L |
| | Description of abuse inside and outside of Scouting | Section L |

7

8. In addition to the above, the Certain Insurers contend that the Audit Program should require the Settlement Trustee to undertake objective testing and interviewing of a statistically valid sample of Survivors without regard to any of the supporting information and other documents that might raise a red flag that the Abuse Claim is invalid or fraudulent. Certain Insurer Objection, ¶¶10, 11, 14, and 16.

9. However, even the Certain Insurers' expert, Dr. Treacy, admitted at the confirmation hearing that interviews are not a viable means to detect fraudulent or invalid claims. As reflected in the testimony annexed to the Certain Insurer Objection, Dr. Treacy testified as follows.

Page 308

BY MR. STONER:

20· Q.· ·Dr. Treacy, I believe that you were

21· asked questions during your redirect regarding

22· the potential for false claims in this sample

23· set.

24· Do you recall that?

25· A.· Yes, I do.

Page 309

1· · Q.· The clinical interviews that you've

·2· ·recommended be incorporated into the TDP are

·3· ·not able to determine whether or not something

·4· ·is a false claim, correct?

·5· ·A.· ·Oh, you can pretty much say if

8

·6· ·something is or is not consistent with sexual

·7· ·abuse.· My report -- my line in my report, it's

·8· ·my expert opinion that, if I'm dealing with a

·9· ·child, the child's statements, behavior, and

10· ·affect are consistent with sexual abuse or are

11· ·not consistent with sexual abuse.

12· ·So we do get to consistency with

13· ·sexual abuse, which is reliability.

14· ·**Q.· ·Yes.· But you testified that you**

15· **·cannot state whether or not the abuse occurred**

16· **·through a clinical interview, correct?**

17· ·**A.· ·That's correct.**

18· · Q.· ·And you cannot use the testing to

19· ·determine whether or not a claim is fraudulent,

20· ·correct?

21· · A.· ·Well, you can use the testing for

22· ·that if you have the validity scales indicating

23· ·that somebody is malingering.

24· ·**Q.· ·Whether or not somebody is**

25· **·malingering does not address whether or not the**

1· **·abuse, in fact, occurred, correct?**

·2· **A.· ·It does not -- no, it does not have a**

·3· **one-to-one with that.· You're correct.**

·4· ·Q.· ·I believe that you testified that --

·5· ·in your deposition that the basis for your view

·6· ·that there may be false claims in this sample

·7· ·was based on the existence of secondary

·8· ·motive -- secondary financial gain motive and

·9· ·the volume of claims.

10· Does that sound correct?

11· A.· ·I don't think I said "the value of

12· ·claims."

13· ·Q.· ·I'm sorry.· The volume of claims.

14· ·A.· I'm sorry.· Yes, that is correct.

15· ·Q.· ·And did you not consider any other

16· ·factors for that opinion, correct?

17· ·A.· ·Well, I considered that there were a

18· ·couple of thousand claims before the

19· ·bankruptcy, and then there was 82,000 claims

20· ·with the bankruptcy.· I considered that.

21· ·**Q.· ·And you have not been -- you have not**

22· ·**analyzed whether any specific claims are**

23· ·**fraudulent in this case, correct?**

24· ·**A.· ·That's correct.**

25· · **Q.· ·And you have not identified any**

1 **specific claims that are fraudulent in this**

2 **case, correct?**

3 **A.· ·That's correct.**

4 Q.· ·And you have never -- have you ever

5 ·been involved in any scouting cases involving

6 ·sexual abuse?

7 ·A.· ·No.· This is the first case that I

8 ·had involving the Boy Scouts.·But, as I said,

9 ·I don't do a lot of civil work.

Conf. Hr'g. Day 12, 308:19-25 – 311:1-9 (emphasis added).

10. As reflected above, Dr. Treacy testified that clinical interviews, as proposed by the Certain Insurers, cannot determine whether or not abuse actually occurred. Dr. Treacy also admits that clinical interviews help identify the impact abuse might have had on a Survivor, not whether the Survivor is telling the truth about the claim. In the end, through their objection, the Certain Insurers are attempting to modify the Trust Distribution Procedures, which already contain Court approved aggravating and mitigating scaling factors that are used to evaluate the Abuse Claim. Mandating clinical interviews for randomly selected Abuse Claims will cause the Settlement Trust to incur substantial costs with no corresponding benefit even when the Settlement Trustee and Claim Administrator have already determined that an Abuse Claim is otherwise valid. The Settlement Trustee is empowered to require interviews when she believes it appropriate. The Settlement Trustee's discretion, which is clearly contemplated by the Court-approved process, should not be replaced by statistical sampling interviews when there is no

evidence suggesting that such interviews will assist in the detection of fraudulent or invalid claims.

11. Specifically, if the information and other documents (or the lack thereof) submitted by a Survivor to the Settlement Trust trigger red-flags or other warnings detected by the Audit Program, the Settlement Trustee has the discretion to <u>require</u> Survivors to submit to an interview. The Claim Questionnaire provides that:

> If the Trustee asks you to participate in an interview, and/or to answer further questions in writing, and/or to participate in an examination (for example, by a healthcare professional), you must agree to the request.

Claim Questionnaire, Section A. If the Survivor refuses to submit to an interview the Survivor's Direct Abuse Claim will not be allowed and the Survivor will not receive a distribution from the Settlement Trust on his/her claim.

12. Requiring the Settlement Trust to randomly interviews statistically significant number of Survivors is a waste of the Settlement Trust's resources, especially if there is no basis to question the Survivor's Abuse Claim. Moreover, the Certain Insurers fail to provide any information regarding the number of Survivor interviews that would be a statistically valid sample. Plus, there is no information regarding the cost arising from conducting the interview, preparing the report for each interview, and the time and expense of having the Settlement Trust analyze the report. As set forth in the Plan and Confirmation Order, the Settlement Trust may take into consideration the cost/benefit of undertaking certain actions when developing the Audit Program and its implementation. Requiring interviews (that do not detect fraud or invalid claims) is a poor use of the Settlement Trust's limited resources and the cost certainly outweighs any potential benefit.

### B. Lujan Claimants' Objection and Sealing Objection Should be Overruled Because It Seeks to Undermine the Very Purpose of the Audit Program

13. Surprisingly, the Lujan Claimants criticize the Audit Program because:

> . . . . it fails to fully disclose to Survivors of child sexual abuse how their claims will be audited and investigated for fraud. Effectively, **Survivors are not being told how their claims will be treated**.

Lujan Objection, p. 1 (emphasis added).

14. The Settlement Trustee fully acknowledges that she is unwilling to disclose the exact procedure(s) she and the Settlement Trust will use to audit and investigate potentially fraudulent Abuse Claims. If the Settlement Trustee disclosed the inner workings of the Audit Program, or the Investigative Workflow Procedures, she would enable Survivors and their counsel to potentially package information and documents supporting their Abuse Claims in ways that undermine the detection of fraud. The Settlement Trust hopes that all Survivors and counsel would agree that the Settlement Trust should not aid or help Survivors and their counsel to evade the Settlement Trust's mandate of rooting out any and all fraudulent Abuse Claims.

15. Contrary to the assertions in the Lujan Objection, Survivors are "being told how their claims will be treated." All Direct Abuse Claims are being treated in accordance with the Trust Distribution Procedures, which applies, among other factors, various aggravating and mitigating scaling factors derived from the information submitted by Survivors, and their counsel, via the Claim Questionnaire. The treatment of claims under the Trust Distribution Procedures was heavily litigated and ultimately approved by this Court and affirmed on appeal by the District Court. The steps the Settlement Trustee will take to identify and safeguard against potentially fraudulent Direct Abuse Claims cannot and should not be disclosed because that would undermine the very purpose of detecting fraud, which is separate and apart from the treatment or evaluation of an Abuse Claim.

## Conclusion

16. For the reasons set forth in the Audit Motion, the Houser Declaration, and evidence and argument at the hearing, the Audit Motion should be approved, and the Objections and the Sealing Objection denied and overruled.

Dated: September 21, 2023

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Richard M. Pachulski (CA Bar No. 90073)
Alan J. Kornfeld (CA Bar No. 130063)
Debra I. Grassgreen (CA Bar No. 169978)
James E. O'Neill (DE Bar No. 4042)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tel / Fax: (302) 652-4100 / (302) 652-4400
Email: rpachulski@pszjlaw.com
   akornfeld@pszjlaw.com
   dgrassgreen@pszjlaw.com
   joneill@pszjlaw.com

*Co-Counsel for the Honorable Barbara J. Houser (Ret.), Trustee, in her capacity as Trustee of the BSA Settlement Trust*

-and-

**GILBERT LLP**
Kami E. Quinn (admission *pro hac vice*)
Emily P. Grim (admission *pro hac vice*)
700 Pennsylvania Avenue, SE
Suite 400
Washington, DC 20003
Tel/Fax: (202) 772-2200/ (202) 772-3333
Email: quinnk@gilbertlegal.com
   grime@gilbertlegal.com

*Attorneys for the Honorable Barbara J. Houser (Ret.), in her capacity as Trustee of the BSA Settlement Trust*