# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

**DECLARATION OF THE HONORABLE BARBARA J. HOUSER (RET.), IN HER CAPACITY AS TRUSTEE OF THE BSA SETTLEMENT TRUST, IN SUPPORT OF HER CONSOLIDATED RESPONSE IN OPPOSITION TO (1) SURVIVOR CLAIMANT D.S.'S MOTION TO CHANGE ELECTION TO OPT INTO EXPEDITED PAYMENT/CONVENIENCE CLASS, D.I. 11532; AND (2) MOTION TO CHANGE ELECTION TO OPT INTO EXPEDITED PAYMENT/CONVENIENCE CLASS, D.I. 11552**

I, Barbara J. Houser, declare as follows:

1. I am the trustee (the "Trustee") of the BSA Settlement Trust (the "Settlement Trust" or the "Trust").

2. I am over the age of eighteen years. This declaration (the "Declaration") is based on my personal knowledge and experience, my review of relevant documents, and my supervision of various people who report to me as Trustee of the Settlement Trust. If called as a witness, I could and would competently testify to the facts set forth herein. As Trustee of the Settlement Trust, I am duly authorized to make this Declaration.

3. The Trust was created by the BSA Settlement Trust Agreement, dated as of April 19, 2023 (the "Settlement Trust Agreement") and pursuant to the *Third Modified Fifth*

---

[1] The Reorganized Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Reorganized Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

*Amended Chapter 11 Plan of Reorganization (with Technical Modifications)* for Boy Scouts of America and Delaware BSA, LLC [Docket No. 10296] (the "Plan").

4. Pursuant to the Plan and Trust Distribution Procedures ("TDP"), the Trust is tasked with reviewing, processing, and paying claims submitted to the Trust. The TDP allowed a claimant to elect an "Expedited Distribution," whereby a claimant receives a one-time payment of $3,500 in exchange for providing a full and final release of the Trust and other parties. More than 7,300 claimants selected Expedited Distribution on their ballots when voting whether to accept the Plan.

5. Claimants who selected Expedited Distribution are required to complete a questionnaire on the Trust's website, scoutingsettlementtrust.com. After completing the questionnaire, claimants will receive a qualification notice and a release form to sign before they receive payment. To date, more than 4,500 Expedited Distribution claimants have submitted the questionnaire and received qualification notices. Of those, 515 have returned an executed release; 276 of those claimants have already received payment, and I have initiated the payment process for the remaining 239 claimants.

6. The Trust has received approximately 500 inquiries from claimants seeking to select Expedited Distribution when they did not so elect on their ballot, or seeking to rescind their selection of Expedited Distribution after they opted for this treatment on their ballot. I have not granted any such request, as I do not believe that the Plan and related documents permit me to do so.

7. If the Court allows D.S. and the AVA Law's clients to change their elections of Expedited Distribution to the Matrix or Independent Review options, I will have no grounds to deny similar changes requested by other claimants, which number in the hundreds.

8.     As I described above, the Trust is far along in processing Expedited Distributions, and some claimants—including some who may have requested to change their election and were denied—may have already executed releases and received payment from the Trust. It would be extraordinarily difficult for the Trust to allow those claimants to rescind their election of Expedited Distribution. I would need to determine whether these claimants would need to return the money to the Trust before proceeding with review of their Abuse Claim. I would also need to determine the legal consequences of the releases executed by these claimants.

9.     Even if the Trust were able to resolve any issues with respect to claimants who have already received Expedited Distributions, the costs of implementing these changes would be significant. The Trust would need to manually change each Expedited Distribution claim in the claims processing system, cancel the Expedited Distribution questionnaire, replace this with a standard questionnaire, and communicate this to the claimant—hundreds, or potentially thousands, of times.

10.    I would need to inform all claimants of the ability to change the Expedited Distribution selection, which would undoubtedly result in confusion among individuals who believed their prior selection to be final. I believe I would need to create new deadlines for election amendments, which could potentially impact the pending deadline for claimants to select the Independent Review Option. I would also need to create a system for changing all of these claims and clearly explain to tens of thousands of claimants their new claim processing options.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 27th day of October, 2023 at Santa Fe, NM.

_____
Hon. Barbara J. Houser (Ret.)

4