**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | **)** | Case No. 20-10343 (LSS) |
| | **)** | |
| BOY SCOUTS OF AMERICA AND | **)** | Chapter 11 |
| DELAWARE BSA, LLC,[1] | **)** | (Jointly Administered) |
| | **)** | |
| Debtors. | **)** | Hearing Date: **TBD** |
| | | Objection Deadline: November 20, 2023 |

**MOTION TO CORRECT ELECTION FROM THE EXPEDITED PAYMENT OPTION TO THE TRUST ("MATRIX") CLAIMS PROCESS OR INDEPENDENT REVIEW OPTION - ROBERT PAHLKE LAW GROUP**

COMES NOW, the Movant, The Robert Pahlke Law Group, on behalf of certain of its clients (the "Claimants") by and through undersigned counsel, hereby moves (the "Motion") this Honorable Court for entry of an order allowing the Claimants to correct their election from the expedited payment option to the trust ("matrix") claims process or independent review option.  In support of this Motion, the Claimants respectfully state as follows:

## FACTS

1.      Claimants are sexual abuse survivors, each of whom filed Sexual Abuse Survivor Proof of Claim in these bankruptcy proceedings before the November 16, 2020, bar date. The proofs of claims are sealed with each Claimants' proof of claim assigned claim numbers as identified as follows:

- SST- 905751:    Claim I.D. No,   48034

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC(4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 7503.

- SST- 901144:    Claim I.D. No.'s 47926 and 241474.

2.    Ballots were filed without the Claimants' knowledge or authorization for Class 8 (Direct Abuse Claims).  In each such instance, someone other than the Claimant checked a box indicating an election to receive an expedited distribution of a one-time cash payment from the Settlement Trust of $3,500.00.

3.    The Claimants did not intend to elect to receive the expedited distribution of $3,500.00 as full satisfaction of their claims, and they have not received nor accepted the $3,500.00 expedited distribution.

4.    The Claimants have waited decades to secure some measure of accountability and semblance of justice. These men, represented by the Robert Pahlke Law Group, are also beseeching the Court for the chance to put their truth, their narrative, and their tragic story in front of the trust and are looking for equitable compensation, accountability, and justice that reflects their abuse.

5.    As detailed herein, the Claimants, along with The Robert Pahlke Law Group, have done everything in their power to correct this injustice.[2]

### RELIEF SOUGHT

---

[2] Attached hereto as **Exhibit D** is the *Affidavit of Marilyn Y. Pahlke*.  Ms. Pahlke's affidavit documents the efforts of The Robert Pahlke Law Group to rectify the erroneous election from the expedited payment option to the trust ("matrix") claims process or independent review option.  That effort began on August 8, 2023. **Exhibit D**, page 1, at ¶ 4.  Ms. Pahlke's affidavit delineates substantial effort to rectify the matter. *Id.* at ¶ 5.

Ultimately, despite her efforts, Ms. Pahlke confirms that she has "not received a decision, positive or negative, regarding Claimants SST-905751 and SST 901144." *Id.* at ¶ 7.

6.      The Claimants request that this Honorable Court allow them to rescind or retract the election, which limits their claims to $3,500, and further to excuse each Claimant from any and all obligations concerning or related to the election to receive the $3,500 expedited cash payment as a full and final settlement of their sexual abuse survivor claims.  In lieu thereof, the Claims seek an order allowing their claims to be processed as a Standard Claim or the Independent Review Option.

## ARGUMENT - Claimant No. SST-905751

7.      Claimant No. SST-905751 was incarcerated at the Noble Correction Institute of the Ohio Department of Rehabilitation & Correction from October 1, 2021, and released on February 10, 2022.  During incarceration, Claimant did not have access to any internet options, including his phone, emails, and social media. The Claimant's incarceration was during the time the ballot campaign was occurring, and information was sent out by email correspondence, and the Claimant had no way of knowing about the ballot process. A hard copy of the ballot was then sent to the Claimant's address of record. A person residing at that address, without the Claimant's knowledge or authorization, completed the ballot and checked the Expedited Pay box to receive the $3,500.00, and mailed the ballot to the ballot processing center in the enclosed self-addressed envelope.

8.      The Claimant learned about the election for the Expedited Payment category when the Scouting Settlement Trust made the portal available to Counsel and Claimants, and counsel was able to contact him and notify him of the same.  The Claimant stated he would have never chosen the Expedited Payment option if he had

been presented with the ballot and given the choice.  Attached hereto and made a part

hereof **as Exhibit A** is an Affidavit of the Claimant SST 905751 with attachments

supporting his statement, including a Certification of Incarceration from the Ohio

Department of Rehabilitation & Correction confirming the dates of his incarceration.

The Scouting Settlement Trust was notified of this error by email as early as August 8,

2023, along with follow-up calls and emails. *See Email String to Scouting Settlement Trust*

attached hereto as **Exhibit A.1**.  As of this writing, the Settlement Trust has not

addressed the  Claimant's request for relief. **Exhibit D** at page 2, at ¶ 7.

### ARGUMENT - Claimant No. SST- 901144

9.      Claimant No. SST- 901144 stated he had never received a ballot to vote on

the Plan and that if he had received a ballot, he would not have chosen the $3,500.00

early payout option. During the ballot campaign, Claimant's email and social media

accounts were hacked, and he was locked out of those accounts. The Claimant's phone

was also disconnected, and he could not receive calls or electronic notifications of the

ballot process.  A hard copy of the ballot was then mailed to the address on file;

however, Claimant had moved and was no longer living at that address. The resident

who then occupied the mailing address opened the Claimant's mail, voted, checked the

$3,500.00 expedited payout option, and mailed the ballot to the ballot process center in

the enclosed self-addressed envelope.

10.     The Claimant learned about being placed into the Expedited Payment

category when the Settlement Trust portal became available to Counsel and Claimants.

Counsel contacted him and notified him of the same.  The Claimant stated he would

have never chosen the Expedited Payment option if he had been presented with the ballot and given the choice.

11.    Attached hereto and made a part hereof as **Exhibit B** is an Affidavit of the Claimant with attachments supporting his statement.  The Scouting Settlement Trust was notified of this error by email in early August 2023, along with follow-up calls and emails.  *See Email String to Scouting Settlement Trust* attached hereto as **Exhibit B.1**.  Also attached as **Exhibit B.2** is a letter from Claimant SST-901144 to the Scouting Settlement Trust reinforcing his request to be removed from the Expedited Payment category and transferred into the general Matrix.  As of this writing, the Settlement Trust has not addressed the  Claimant's request for relief.

## ARGUMENT – As to Both Claimants

12.    The relevant legal standard for evaluating the requested relief is excusable neglect under FED. R. BANKR. P. 9006(b)(1) as applied to RULE 3003(c)(3).

13.    In a Chapter 11 case, if a claimant's election was made in error, then under an "excusable neglect" analysis, the court has discretionary authority to allow that creditor to correct their election – especially when that change has no impact upon the confirmation of the plan.  Specifically, RULE 9006(b)(1) provides in pertinent part:

> **when an act is required or allowed to be done at or within a specified period by these rules** or by a notice given thereunder or by order of court, **the court for cause shown may at any time in its discretion** (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) **on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect**.

14.    The meaning of excusable neglect as used in RULE 9006(b)(1) was addressed

by the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993). The Supreme Court found that "[b]ecause Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable,' . . . the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id*. at 395. To that end, the Supreme Court approved a flexible, four-part analytical[3] Framework to support a finding of excusable neglect: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay (including whether it was within the reasonable control of the Movant); and (4) whether the Movant acted in good faith. *Id*. (referring to factors considered by the Court of Appeals and District Court, *In re Pioneer Inv. Services Co.*, 943 F. 2d 673, 677 (6ᵗʰ Cir. 1991)). "All [of the *Pioneer*] factors must be considered and balanced; no one factor trumps the others." *Hefta v. Off'l Comm. Of Unsecured Creditors (In re American Classic Voyages Co.)*, 405 F.3d 127, 133 (3rd Cir. 2005).

15.    After that, in *Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl Energy, Inc.)*, 188 F.3d 116 (3ʳᵈ Cir. 1999), the Third Circuit addressed the excusable neglect concept in RULE 9006(b)(1) using the *Pioneer* framework.

A.    *The Pioneer Factor Analysis*

i.    *Prejudice to the Debtor*

16.    As for the danger of prejudice to the debtor, the *O'Brien* court followed two precepts flowing from *Pioneer*. First, the court held that "prejudice is not an imagined or

---

[3] The *Pioneer* court identified four factors but acknowledged that equity might compel evaluation of other factors.

hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence." *Id.* at 127; *see also Toscano v. The RSH Liquidating Trust (In re RS Legacy Corp.),* 577 B.R. 134, 140-41(3rd Cir. 2017) (citing to *O'Brien*).

17.     Secondly, the *O'Brien* court discussed considerations addressing prejudice to the debtor: (i) whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated; (ii) whether the payment of the claim would force the return of amounts already paid out under the confirmed plan or affect the distribution to creditors; (iii) whether the payment of the claim would jeopardize the success of the debtor's reorganization; (iv) whether allowance of the claim would adversely impact the debtor; and (v) whether allowance of the claim would open the floodgates to other late claims. *O'Brien,* 188 F.3d at 126-28 (internal citations omitted).

18.     None of the prejudice factors identified by *O'Brien* favor the Trustee. Specifically:

a.      The Trustee cannot claim surprise at the existence of a claim.  The problem here is not a late-filed claim. Instead, the issue is a misclassification or mistaken election. In the face of 80,000 claims, it should be expected that some errors occurred. In this instance, the Claimants represent an infinitesimally small percentage of all claims. Indeed, it was the prospect of litigating these sexual abuse claims that prompted, in part, the Debtors to seek relief in this Court. *See Debtors' Informational Brief,* at p. 5 ("The BSA cannot continue to address abuse litigation in the tort system on a case-by-case basis."). **DK** 4.

b.      A reorganization plan was confirmed; however, granting the Claimants' relief will not cause an unwinding of prior transactions, payments, distributions, or orders.

c.      The reorganization has already occurred.   Hence, reclassifying the Claimants' claims, standing alone or in combination with other such claims, cannot jeopardize the success of the Debtors' reorganization. Significantly, nothing about reclassification impacts the Trustee's ability to challenge against the merits of claims.

d.      It is unclear how, if at all, the Trustee might be prejudiced by reclassifying the claims.  The Plan and resulting settlement trust were established for the benefit of the claimants as recompense for horrible acts.  The Trustee may be burdened by whatever administrative actions result from the reclassification, but that inconvenience is insufficient to show prejudice under *Pioneer*.

In sum, *Pioneer* and its progeny weigh heavily in favor of the Claimants. Moreover, the Trustee cannot identify tangible prejudice if the claims are reclassified.

          ii.      *Length of the Delay and Impact on Judicial Proceedings*

19.      There is no delay here.  The Settlement Trust portal came online in the last few months.  The Claimants, through counsel, exerted considerable effort to resolve the election issues. *See* **Exhibit D**. Setting aside that effort for a moment; the Trustee cannot point to a process or other delay caused or likely to be caused. *Pioneer,* 507 U.S. at 388; *O'Brien*, 188 F.3d at 130.  The bottom line here is that even if there is a delay, it otherwise is inconsequential. *In re EFH Corp.*, 522 B.R. 520, 531 (Bankr. D. Del. 2015).

          iii.      *Reason for the Delay and Movant's Good Faith*

20.      Again, there is no delay.  Claimant's counsel, The Robert Pahlke Law Group, acted promptly.  The Claimants always acted in good faith.  When the Claimants became aware of the misclassification, they acted promptly.  If there was a delay, that delay was limited to the time when the portal opened and the filing of this motion.  In sum, the Movant always acted in good faith.

        B.      *Comporting with the Plan and Fixing the Problem*

21.      By email, the Claimants' Counsel again asked the Scouting Settlement Trust to reconsider the Claimants' claims that they did not vote for, nor did they choose to be placed in the Expedited Payment category.  That email is attached hereto and

marked as **Exhibit C.**  The quandary is that the Trustee's website indicates that if a

Claimant believes this is an error, a Claimant cannot submit their claims. It reads:

> "**READ BEFORE COMPLETING THIS FORM.** This form is intended to be completed by Claimants who elected Expedited Distribution or attorneys of represented Claimants who elected Expedited Distribution. If you believe that you or your client has NOT elected Expedited Distribution, do not proceed. Please reach out to info@scoutingsettlementtrust.com for additional information."

22.    The November 2, 2023, Deadline is fast approaching, and we still have no

resolution. The Settlement Trust website states that if a claimant requests that he be

removed from the general Matrix category and be transferred to the Expedited Payment

category, that it cannot be allowed.  However, the Trust did not address whether one

could be removed from the Expedited payment category and transferred into the general

Matrix category.

23.    Claimants believe that their claims are worth far more than the $3,500.00. It

would be grossly unfair and unjust to prevent them from choosing either the Standard

Option or the Independent Review Option, where it is believed that the Claimants would

receive an amount in excess of $3,500.00.  Not granting this Motion and forcing Claimants

to accept $3,500.00 in full and final satisfaction of their claims, as opposed to allowing the

Claimants to move through the claims review process because someone fraudulently and

maliciously completed the form and checked the Expedited Payment option without their

knowledge or authorization, will significantly reduce the amount of compensation they

will receive.

24.    In reviewing the Plan, one of the primary purposes of the Plan is to

provide adequate compensation to sexual abuse survivors like the Claimants.  Forcing

the Claimants to accept a smaller distribution based on a fraudulent ballot election flies in the face of the Plan's intended purpose to look out for men like the Claimants, causing great prejudice to the Claimants while the Trustee and Debtors would suffer no prejudice if the Claimants' ballot elections were changed.  No distributions have been made, and there will be no harm in allowing the Claimants to move through the claim reconciliation process.  *See In re Richard Roberts Lexington Assocs., Ltd.*, 171 B.R. 546, 548 (Bankr. W.D. Va. 1994) ("Although timely filing requirements are intended to promote desired finality in bankruptcy proceedings, in some circumstances, fairness and equity require that strict adherence to deadlines be relaxed and that filing of amended proofs of claims be permitted. Bankruptcy courts, as courts of equity, have allowed the filing of amended proofs of claim after the expiration of the bar date." (citation omitted)); *see also In re Intern. Horizons, Inc.*, 751 F.2d 1213 (11th Cir. 1985) (holding that "amendments to claims should be freely allowed to cure a defect or to more fully explain a claim").

25.    No distributions have been made to claimants, and there will be no harm in allowing these Claimants to move through the claim reconciliation process.  *See In re Richard Roberts Lexington Assocs., Ltd.*, 171 B.R. 546, 548 (Bankr. W.D. Va. 1994) ("Although timely filing requirements are intended to promote desired finality in bankruptcy proceedings, in some circumstances, fairness and equity require that strict adherence to deadlines be relaxed and that filing of amended proofs of claims be permitted. Bankruptcy courts, as courts of equity, have allowed the filing of amended proofs of claim after the expiration of the bar date." (citation omitted); *see also In re Intern. Horizons, Inc.*, 751 F.2d 1213 (11th Cir. 1985) (holding that "amendments to claims

should be freely allowed to cure a defect or to more fully explain a claim").

26.    The Trustee indicates hardship in transitioning claimants wrongly placed into the Expedited Payment Option into the general Matrix category.    The Trustee continues to describe the hardships as being further delayed, changing claim forms electronically to accommodate the claimants' status, and possibly affecting other deadlines, thereby disrupting a process The Scouting Settlement Trust thought they had in place.  However, the hardship suffered by these two claimants over the years, wrestling with and dealing with the humiliation of being victimized as young boys, struggling into adulthood, subsequently making questionable choices in life, and suffering severe consequences for those choices, far exceed the hardship described by the Trustee.  The Claimants were already "down and out," and this is another devastating blow that can be avoided with the exercise of the Court's equitable powers. There have been many, many delays in the process of compensation for the injured Scouts in general, for wrong and right reasons.  If any delay occurred on behalf of these two Claimants, we believe it would be minimal and for the right reason.

27.    As the Trustee pointed out in her recent Consolidated Response to Survivors' Motions to change their election from the Expedited Payment Option into the General Matrix, the Plan and Solicitation Order does not permit the Trustee to allow changes to the Expedited Distribution Elections.[4] However, we plead with the Court to correct this injustice and reconsider granting this remedy to the following Claimants:

- SST- 905751:    Claim I.D. No.  48034 and

---

[4] *See* Faction Background, Paragraph 6 of Trustee's Consolidated Response, Case No. 20-10343(LSS) Doc.11565.

- SST- 901144:     Claim I.D. No.'s 47926 and 241474

due to the ballots being fraudulently submitted without the claimants' knowledge or

authorization.

   **WHEREFORE**, the Claimants respectfully request that the Claimants be permitted

to modify their ballots to opt out of the $3,500.00 expedited payment/convenience and

provide such other and further relief as is just and proper.

**Dated**: November 2, 2023                             Respectfully Submitted,

                                                  **CONAWAY LEGAL, LLC**

**OF COUNSEL**

                                                  /s/ Bernard G. Conaway
Robert G. Pahlke, Esquire (NSBA# 13201)           Bernard G. Conaway, Esquire (DE 2856)
Cole J. Retchless, Esquire (NSBA# 27917)          1007 North Orange Street, Ste. 400
THE ROBERT PAHLKE LAW GROUP                       Wilmington, DE 19801
2425 Circle Drive, Suite 200                      Phone: (302) 428-9350
Scottsbluff, Nebraska 69363-1224                  Email: bgc@conaway-legal.com
Phone (308) 633-4444
Email: PahlkeLawGroup@pahlkelawgroup.com

                                                  Counsel to Certain Clients of The Robert Pahlke
                                                  Law Group