**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

**RESPONSE OF THE HONORABLE BARBARA J. HOUSER (RET.), IN HER CAPACITY AS TRUSTEE OF THE BSA SETTLEMENT TRUST, IN OPPOSITION TO THE MOTION TO COMPEL APPROPRIATE RELIEF OF E.C., D.I. 11547**

The Honorable Barbara J. Houser (Ret.) (the "Trustee"), in her capacity as trustee of the BSA Settlement Trust (the "Trust"), hereby submits this opposition (the "Opposition") to Movant E.C.'s ("Movant") motion to change his election of expedited payment and to receive separate compensation for his claims (the "Motion").[2] In support thereof, the Trustee respectfully states and alleges as follows:

**PRELIMINARY STATEMENT**

1.  Movant has repeatedly raised with the Trust various questions regarding the processing of his abuse claims and the method by which he will be compensated. Although the Trust has diligently endeavored to answer Movant's questions, the Motion suggests that the Trust has not done so to his satisfaction. Movant's primary concern seems to stem from the fact that

---

[1] The Reorganized Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Reorganized Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.
[2] On page 3 of the Motion, Movant lists other forms of requested relief, including ordering the Trust to confirm if Expedited Distribution is the same as the "Opt Out Option," and to provide him a copy of the "Settlement Matrix." The Trust can confirm that the election of Expedited Distribution is not the same as the election to Opt Out of the third-party releases. The Trust will also mail a copy of the Matrix to Movant.

he suffered multiple incidents of abuse, but his claim is processed as a single claim. In the Motion, Movant asserts that he has filed two abuse claims and is entitled to separate compensation for each claim. *Id*. at 1. He further asserts that he selected the option to receive a $3,500 "Expedited Distribution" payment for "one of his two claims." Mot. at 1, 2.[3] He now seeks to cancel that election, presumably to allow his claim to be considered under the Standard or Independent Review options. *Id*. at 1.

2.      While the Trustee is sympathetic to Movant, the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC*, D.I. 10296 (the "Plan")[4] and its supporting documents provide for a single resolution for each survivor, regardless of the number of incidents of abuse suffered by that individual. Because Movant elected Expedited Distribution on the ballot that he submitted during these bankruptcy proceedings, he will receive the Expedited Distribution as compensation for his claim. He cannot now change his election of Expedited Distribution, for the reasons set forth more fully in the *Trustee's Consolidated Response in Opposition to (1) Survivor Claimant D.S.'s Motion to Change Election to Opt into Expedited Payment/Convenience Class, D.I. 11532, and (2) Motion to Change Election to Opt into Expedited Payment/Convenience Class, D.I. 11522* [D.I. 11565] (the "First Consolidated Opposition"), which the Trustee incorporates herein.

---

[3] Movant uses the term "opt out" and "Expedited Distribution" interchangeably. *See, e.g.*, Summary of Trust's Communication with [Movant], attached as Ex. B to the Declaration of the Honorable Barbara J. Houser (Ret.) ("Houser Decl."), hereto as **Exhibit 1**, at ID#3 (referring to the "expedited the $3500 opt out option"); Mot. at 3 (requesting clarification as to whether the "EXPEDITED SETTLEMENT OPTION" is the same as the "'OPT OUT OPTION' (A FIXED $3500.00 AMOUNT)"). The Trustee understands the relief he seeks to relate to his election of Expedited Distribution and has addressed it accordingly.

[4] All capitalized, undefined terms used throughout this Opposition have the meaning ascribed to them in the Plan.

## FACTUAL BACKGROUND

**A.     Proof of Claim Forms for Sexual Abuse Survivors.**

3.     On May 26, 2020, this Court entered an order approving the Sexual Abuse Survivor Proof of Claim Form.  Order, Pursuant to 11 U.S.C. § 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-1(e), 3001-1, and 3003-1, (I) Establishing Deadlines for Filing Proofs of Claim, (II) Establishing the Forms and Manner of Notice Thereof, (III) Approving Procedures for Providing Notice of Bar Date and Other Important Information to Abuse Survivors, and (IV) Approving Confidentiality Procedures for Abuse Survivors, ECF No. 695 (Bankr. D. Del. May 26, 2020) (the "Bar Date Order").  The proof of claim form authorized for "Sexual Abuse Survivors" provides a single claim form to address *all* incidents of sexual abuse suffered by a survivor.  *See, e.g.*, Sexual Abuse Survivor Proof of Claim, Ex. 7 to Bar Date Order ECF No. 695-7, at 5 ("Were you sexually abused by more than one person?" "Were you sexually abused in more than one state?"), 6 ("When did the first act of sexual abuse take place?" "About how many times were you sexually abused?").

4.     Movant submitted three proofs of claim—Nos. 4576, 23219, and 71836.  Mot. at 7, 11; *see also* Summary of Trust's Communication with [Movant], Ex. B to Houser Decl., at 1. In the Motion, he explains that he suffered two incidents of abuse, and filed a separate proof of claim for each one.  Mot. at 2, 11.  The third proof of claim was intended to clarify his previous assertions, but does not refer to a separate incident.  *Id.* at 3 (referring to this proof of claim as an amendment).

**B.     Election of Expedited Distribution.**

5.     On September 30, 2021, this Court entered an order approving the Plan Solicitation Procedures and the voting ballots, among other documents.  *See* Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Forms of Ballots,

(III) Approving Forms of Ballots, (IV) Approving Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief (the "Solicitation Procedures Order"), ECF No. 6438.  The ballot for Class 8 (Direct Abuse Claims) instructed claimants that they "**MUST COMPLETE FOUR (4) ITEMS ON THIS BALLOT**," one of which was to "**DECIDE WHETHER TO MAKE THE OPTIONAL $3,500 EXPEDITED DISTRIBUTION ELECTION.**"  Ex. 2–5 to Solicitation Procedures Order (capitalization and emphasis in original).

6. The Solicitation Procedures set forth procedures regarding the counting of ballots, and provide, "[i]f . . . the Solicitation Agent receives more than one Ballot from or on behalf of the holder of a single Direct Abuse Claim on or before the Voting Deadline, the effective vote shall be the last Ballot actually received by the Solicitation Agent before the Voting Deadline."  Solicitation Procedures, Ex. 1 to Solicitation Procedures Order, ECF No. 6438-1, § IV.F.1; *see also id.* § V.D.5 ("If the Debtors timely receive more than one Ballot from or on behalf of the holder of a single Claim, the effective vote shall be the Ballot last received by the Solicitation Agent . . . If more than one Ballot voting the same Claim is received prior to the Voting Deadline, the latest received, properly executed Ballot . . . will supersede and revoke any prior Ballot.").

7. The original deadline to submit a ballot, the "Voting Deadline," was December 14, 2021.  Solicitation Procedures Order at 6.  This deadline was extended several times, ultimately to March 7, 2022.  *See* Notice of Supplemental Voting Deadline of March 7, 2022 at 4:00 PM (Eastern Time) for Holders of Class 8 Direct Abuse Claims and Limited Disclosure Regarding Changes in Debtors' Chapter 11 Plan of Reorganization, ECF No. 8905 (Feb. 18, 2022).

8.     Movant submitted a Class 8 Ballot on December 13, 2021, on which he elected Expedited Distribution. *See* Voting Record, Ex. A to Houser Decl. He did not submit a subsequent ballot or otherwise seek to cancel, rescind, or otherwise change this election until April 2023, when he contacted Omni Agent Solutions ("Omni"), and asked to cancel his election of Expedited Distribution. *See* Mot. at 4; Summary of Trust's Communication with [Movant], Ex. B to Houser Decl., at 9; E-Mail from Movant, Ex. C to Houser Decl., at 1; Amended Ballot, Ex. D to Houser Decl. On August 29, 2023, Movant sent the Trust an email stating that he selected Expedited Distribution because he "INITIALLY DECIDED [that] [he] NEED[ED] THE $3,500 IMMEDIATELY AND TO LESSEN BURDEN ON SCOUTS." *See* Summary of Trust's Communication with [Movant], Ex. B to Houser Decl., at 3. He could not recall which of his two claims he had elected Expedited Distribution for, but he claimed that he nonetheless rejected the $3,500.00 option for that claim after initially agreeing. *Id.*

**C.     The Trust Has Consistently Endeavored to Respond to Movant's Questions and Resolve His Concerns Regarding His Proofs of Claim and Expedited Distribution Election.**

9.     Movant has emailed the Trust on thirty-nine (39) occasions regarding the questions that he raises in his Motion. *See generally* Summary of Trust's Communication with [Movant], Ex. B to Houser Decl. Movant's initial inquiries stemmed from: (1) concerns over his proof of claim numbers being consolidated into one "SST" (Scouting Settlement Trust) number; (2) confusion over the election of Expedited Distribution for his consolidated SST claim compared to potential "Opt Outs" for two of his three proofs of claim; (3) questions about his portal username and password; and (4) how to access and fill out the Claims Questionnaire. *Id.* at 1. The Trust replied to Movant with clarifications on his ballot elections for Expedited Distribution, an explanation that his documents were processed as one claim, instructions on how to access the portal with his registered username and password, and offered assistance in

explaining how to access the Claims Questionnaire. *Id.* The Trust also communicated that the Expedited Distribution election is not the same as the Opt In/Opt Out election. *Id.* at 9.

10. Specifically, with respect to his election of Expedited Distribution, the Trust informed Movant that his Expedited Distribution election was final. *Id.* at 4, 9. The Trust acknowledged that Movant had requested a cancellation of his Expedited Distribution, but because this was made after the March 7, 2022, deadline, the Trust explained that this cancellation could not be accepted. *Id*. at 9.

**RELIEF REQUESTED**

11. The Trustee seeks an Order from the Court (i) denying Movant's request to rescind his election of an Expedited Distribution of $3,500 as a full and final settlement of his Direct Abuse Claim, and (ii) denying Movant's request to have two claims with separate distributions.

**BASIS FOR RELIEF**

12. Although Movant submitted three proof of claim forms, his claims all concern sexual abuse suffered in the course of Boys Scouts of America's scouting programs. Therefore, he is only considered to have submitted one claim, which was amended several times. The Plan and Trust Distribution Procedures ("TDP") contemplate that Direct Abuse Claimants shall submit a single Abuse Claim for compensation. An "Abuse Claim" is defined based on harm allegedly caused by the Debtor, and does not contemplate separate claims for the same harm. *See* Plan, Art. I.18 (defining an "Abuse Claim" as a "Claim . . . that is attributable to, arises from, is based upon, relates to, or results from, directly, indirectly, or derivatively, alleged Scouting-related Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever"); I.17 (defining "Abuse" as "sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation,

indecent assault or battery, rape, pedophilia, ephebophilia, sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction, or intimidation . . ."). The TDP specifically accounts for multiple incidents of Abuse as an "aggravating factor" that may increase a survivor's award. *See* TDP Art. VIII.C.1 (noting that a "base case scenario . . . would involve a single incident of Abuse with a single perpetrator," but allowing the Trustee to increase an award where there is "[e]xtended duration and/or frequency of the Abuse" or "[m]ultiple perpetrators involved in sexual misconduct," among other reasons). The Solicitation Procedures similarly contemplated that holders of Direct Abuse Claims were each entitled to submit one vote on the Plan. *See* Solicitation Procedures, § IV.F.1 (noting that the Debtors will make "reasonable efforts to ensure that only one Solicitation Package (including one Ballot) is distributed on account of each holder of a Direct Abuse Claim who has filed duplicative Abuse Claims and/or on account of Abuse Claims that have been amended and superseded by later filed Abuse Claims").

13.     Movant was therefore entitled to (and did) submit a single ballot voting on the Plan. He elected Expedited Distribution. Although he later sought to cancel this election, he did so well after the deadline.

14.     The Plan, TDP, and Solicitation Procedures make clear that the election regarding Expedited Distribution was to be made at the time of the ballot vote on the Plan. A more detailed overview of the relevant language, the Trust's process for evaluating claims, and the consequences of permitting a claimant to change his election of Expedited Distribution at this stage of the process is set forth more fully in the First Consolidated Opposition.

15. Because Movant elected Expedited Distribution for resolution of his claim, he will receive a one-time payment of $3,500.00. He cannot now change this election, or have this election apply to only part of his claim.

## CONCLUSION

For the reasons set forth above, the Trustee respectfully requests that this Court deny the Motion.

Dated: November 13, 2023

Wilmington, Delaware

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ James E. O'Neill*
Richard M. Pachulski (CA Bar No. 90073)
Debra I. Grassgreen (CA Bar No. 169978)
James E. O'Neill (DE Bar No. 4042)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400
Email: rpachulski@pszjlaw.com
          dgrassgreen@pszjlaw.com
          joneill@pszjlaw.com

– AND –

**GILBERT LLP**
Kami E. Quinn (admission *pro hac vice*)
Emily P. Grim (admission *pro hac vice*)
Sarah A. Sraders (admission *pro hac vice*)
700 Pennsylvania Avenue, SE
Suite 400
Washington, DC  20003
Telephone: (202) 772-2200
Facsimile:  (202) 772-3333
Email: quinnk@gilbertlegal.com
          grime@gilbertlegal.com
          sraderss@gilbertlegal.com
*Attorneys for the Honorable Barbara J. Houser (Ret.), in her capacity as Trustee of the BSA Settlement Trust*