IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Debtors. | Case No. 20-10343<br><br>Chapter 11<br>(Jointly Administered) |

**REPLY OF SURVIVOR CLAIMANT J.D. TO CONSOLIDATED RESPONSE OF THE HONORABLE BARBARA J. HOUSER (RET.), IN HER CAPACITY AS TRUSTEE OF THE BSA SETTLEMENT TRUST, IN OPPOSITION TO MOTIONS TO CHANGE ELECTIONS OF EXPEDITED DISTRIBUTION**

J.D., ("Movant"), by and through his undersigned counsel, hereby files his Reply to the Consolidated Response of the Honorable Barbara J. Houser (Ret.), in her capacity as Trustee of the BSA Settlement Trust, in opposition to Motions to Change Elections of Expedited Distribution.

**FACTS**

1. Movant (Claimant SST# 908123) mistakenly elected expedited payment when he submitted his ballot voting on the Boy Scouts Plan of Reorganization (the "Plan"). On November 1, 2023, he filed his Motion to Change that election (the "Motion"). D.I. 11570. Similar motions have been filed by Class 8 claimants/sexual abuse survivors.

2. On November 10, 2023, the Honorable Barbara J. Houser (Ret.), in her capacity as trustee of the BSA Settlement Trust (the "Trustee"), filed her Consolidated Response in Opposition to the Motion and other motions (the "Response"). D.I. 11600. Similar Consolidation Responses were filed in opposition to motions filed by other Class 8 sexual abuse survivors seeking to change their election for expedited payment (the "Election").

3. In the Response and the Trustee's other responses, the Trustee opposes the relief sought for various reasons. Boiled down to their essence, the Trustee's arguments are:

{C1291161.1}    1

  a. The language of the Plan, the Trust Distribution Procedures ("TDP") and Solicitation Procedures (collectively the "Plan Documents") do not permit claimants to change their elections.

  b. Logistical problems and administrative burden to the Trust would be "enormous".

 4. In support of the argument regarding the Plan Documents, the Trustee cites to TDP Article XIV(B) that specifically states that "…neither the Settlement Trustee nor the STAC or Future Claimants' Representative may amend these TDP in a material manner…", including, among other things, the ability to add the opportunity to make an expedited election after the voting deadline. Movant agrees that the TDP does not allow for a claimant to later select expedited distribution.  This argument is consistent with the September 28, 2021 hearing transcript cited by the Trustee as well. However, the Trustee left out the qualifier that proceeds the direct quote which makes it clear that the Bankruptcy Court does have the ability to alter a claimant's election. Article XIV(B) states "absent Bankruptcy Court or District Court approval after appropriate notice and opportunity to object, neither the Settlement Trustee nor the STAC or Future Claimants' Representative may amend these TDP in a material manner…"

 5. Movant's position is that a mistakenly expedited distribution election should be allowed to be changed, and the Trustee has put forth no evidence to the contrary.  The true parties-in-interest with a real stake in this case had no concerns with regard to allowing survivors to change their Election and, in fact, supported the concept.

 6. The topic of expedited distributions and the Election was discussed extensively at hearings held on September 28 and 29, 2021 (the "September 2021 Hearings") which occurred as the parties were finalizing terms of the Debtors' Disclosure Statement and Solicitation Procedures.

Ultimately, it was decided that the only opportunity to make the Election would be through the balloting process. September 28, 2021 Hr'g Tr., Pgs. 210-235.

7. At the time that the discussion about the Election occurred (which was in the context of finalizing the Disclosure Statement and Solicitation Procedures),[1] there was concern raised that counsel for the Class 8 claimants would be unable to fully advise their clients to make an informed decision on their options under the Plan, including the Election, when it was unclear what assets would ultimately be available in the Trust for distribution to survivors. September 28, 2021 Hr'g Tr., Pg. 232 ¶19-25; September 29, 2021 Hr'g Tr., Pg. 92 ¶24 – Pg. 95 ¶15. Having already concluded that the decision on opting in to the Election was required to be made on the ballot, the parties concluded that Class 8 claimants should have the ability to opt-out of the Election after the voting deadline. At the conclusion of the discussion on the issue at the September 29, 2021 Hearing, the following exchange occurred:

> THE COURT: So I am not revisiting the election on the ballot. If the parties want to add an opt-in—and I think there's unanimous—I'm not hearing anybody object to that—they're saying it in different ways, but I'm not hearing anyone object to that—then—
>
> MISS GRASSGREEN: Excuse me, opt out, Your Honor; opt out.
>
> MR. PATTERSON: Opt out, Your Honor, opt out.
>
> THE COURT: Well, I'm sorry, an opt out. I'm not hearing anyone object to that.

September 29, 2021 Hr'g Tr., Pg. 102 ¶2-23.

8. The final versions of the Plan Documents provided that the only opportunity that Class 8 Claimants had to make the Election was by doing so as part of the balloting process.

---

[1] The Order approving the Disclosure Statement and Solicitation Procedures was issued on September 30, 2021. D.I. 6438.

However, the Plan Documents were silent with regard to the ability to opt-out of the Election following the voting deadline.

9. Further, at the September 28, 2021 Hearing, counsel for the TCC estimated that "…possibly as many as 25,000 people (Class 8 claimants) might be m aking that election… that's about how many people it might make sense to make that election." September 28, 2021 Hr'g Tr., Pg. 224 ¶2-7. In contrast, the Trustee reports that the actual number of claimants making the Election was only 7,300.  D.I. 11565.

10. Movant acted as promptly as possible to remedy the Election error once it was discovered. The portal showing Movant's Election opened on August 17, 2023. Due to many technical difficulties, Movant's counsel was unable to access the Trust's portal successfully until sometime in early September. Once Movant's erroneous Election was confirmed by the portal, Movant's counsel immediately contacted the Settlement Trust in an effort to determine if a mistaken ballot had been submitted.  They were informed by the Settlement Trust that the question had been escalated to the Trust's ballot department for further investigation.  After more than six weeks and after repeated emails and telephone calls to the Trust and its counsel, the Trust sent to Movant's counsel a copy of Movant's ballot confirming the mistaken Election. With the November 2, 2023 deadline for filing expedited distribution questionnaires rapidly approaching, Movant's counsel had no choice but to prepare and file the Motion.

## ARGUMENT

11. The concerns of the parties-in-interest raised at the September 2021 Hearings with regard to the Election were legitimate. While the parties were rushing to finalize the Disclosure Statement and Solicitation Procedures, the Plan and the Trust were far from complete packages. Deals were not finalized and what assets the Trust ultimately would include were far from decided.

Class 8 claimants were not in a position to make an informed decision about which option to choose concerning their claims. Therefore, as the parties agreed at the September 2021 Hearings, the Class 8 claimants should have the ability to opt-out or change their Election. This is especially true in cases such as this one, where the Election was a clear mistake given the magnitude of Movant's abuse and the value of his claim.

12. Granted, the ability to change the Election is not specifically set forth in the Plan Documents. The Trustee argues that omission is a reason to deny the relief sought by the Movant and others. Her argument is incorrect and contrary to the wishes of the true parties-in-interest. It is not clear exactly why the ability to change the Election is not in the documents. However, the record from the September 2021 Hearings is clear that the parties believed that Class 8 claimants should have the ability to change their Election, and nothing exists in the record in this case to indicate that the parties changed their views on the matter. To the contrary, the fact that the documents are silent on the right to change the Election while being very specific about when the Election had to be made supports the argument that survivors should be able to change their Election. If the drafters wanted to prevent Class 8 claimants from the ability to make the change, they certainly could have done so. The only effect of the right not being specifically set forth is that, instead of being an automatic right under the Plan Documents, it is something that the Court has the power to approve.

13. The Trustee serves as a fiduciary. As such, the Trustee should perform her duties in the best interest of the beneficiaries of the Trust, including the survivors. As stated by the parties at the September 2021 Hearings, providing Class 8 claimants with the ability to change their Election now that they have a clearer picture of the nature of the Trust is in their best interests.

14. The fact that providing Class 8 claimants with the ability to change their Election might cause some logistical problems for the Trustee or might be administratively burdensome are not reasons to deny the relief sought. At the time that decisions were being made in September of 2021, some estimates were that as many as 25,000 Class 8 claimants might make the election. Despite that, the parties believed that those claimants should have the ability to change their Election. Further, no one has doubted that administering the Trust would involve logistical and administrative challenges and that has proven to be true. The fact that those challenges might increase is not a basis for doing what is right for survivors. Moreover, the actual number of claimants making the Election (approximately 7,300) is substantially less than the original estimates.

15. The Bankruptcy Code allows for the concept of excusable neglect in certain situations to prevent a miscarriage of justice. The "excusable neglect" standard of Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases. The reasoning behind allowing excusable neglect in Chapter 11 cases is due to the oversight of the bankruptcy courts and being "entrusted with broad equitable powers to balance the interests of the affected parties, guided by the overriding goal of ensuring the success of the reorganization." *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership* 507 U.S. 380, 389 (1993). This context suggests that Rule 9006's allowance for late filings due to "excusable neglect" entails a correspondingly equitable inquiry. *Id*. at 385.

16. The Supreme Court in *Pioneer* discussed the meaning of excusable neglect at length. The Court laid out a four-part test to support a finding of excusable neglect: 1) the danger of prejudice to the debtor, 2) the length of the delay and its potential impact on judicial proceedings,

3) the reason for the delay (including whether it was within the reasonable control of the movant), and 4) whether the movant acted in good faith. *Id*.

17. In the instant case, there is no prejudice to the Trust as the amount of funds set aside for the Trust will not change based on a change to Movant's Election. Additionally, no release has been signed and no payment has been made to Movant. Further, allowing Movant's Election error to be corrected would not delay any judicial proceedings as this correction would merely channel his claim into either the Standard Review Process or the Independent Review Option. There is currently no deadline for the Standard Review Process, and the Independent Review Option is February 16, 2024. Movant will have ample time to timely proceed under either option. Further, there has been no delay to date on the part of Movant, or his counsel. As soon as Movant's discovered the fact that the portal reflected that Movant checked the box making the Election, they attempted to verify it, and as soon as the Election was confirmed, they prepared and filed the Motion. Finally, Movant's good faith cannot be questioned.

18. Balancing the equities, the Motion should be granted. Movant and other survivors have suffered for many years, and they should be fairly compensated. Denying the relief sought by the Movant and others would undermine the stated goal of the Plan to attempt to give adequate compensation for the grievous suffering of Movant (and other similarly situated survivors) and would be contrary to the wishes of the true parties-in-interest. On the other hand, the Trustee and Plan Proponents would suffer no harm if Movant were to obtain his requested relief.

19. Finally, even if the Court should not find the above arguments persuasive as to all Class 8 claimants, Movant should be permitted to pursue the Standard Review or the Independent Review Option. Movant mistakenly checked the box for the Election while completing the long, complicated ballot. Movant endured horrific abuse over forty years ago and has suffered from that

abuse ever since. As a result, he has a claim of the highest value (a Tier One claim). As outlined in his Declaration and that of his attorney (attached to the Motion), he never considered or discussed making the Election and never would have done so. To punish him for a mistake in filling out the Ballot would be a monumental injustice.

WHEREFORE, Movant requests that he be permitted to modify his ballot where he mistakenly opted into the $3,500.00 expedited payment/convenience class to retract that election in order to fully participate in the Standard Review or the Independent Review Option available under the Plan and provide Movant such other relief as is just and proper.

Dated: November 15, 2023

**CAMPBELL & LEVINE, LLC**

*/s/ Katherine L. Hemming*
Katherine L. Hemming (No. 5496)
222 Delaware Ave, Suite 1620
Wilmington, DE 19801
(302) 426-1900
khemming@camlev.com

-and-

Joel M. Walker, Esq. (PA Bar #26515)
Nye, Stirling, Hale, Miller, & Sweet, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
(412) 443-4145
jmwalker@nshmlaw.com
(Appearing Pro Hac Vice)

*Counsel for Movant J.D., Claimant # 908123*