IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>          Debtors. | Chapter 11<br>(Jointly Administered)<br><br>Case No. 20-10343 (LSS)<br><br>Re: Dkt. 11575, 11578, 11586, 11591, 11602<br><br>Hearing Date: November 20, 2023 at 10:00 a.m. ET) Objection Deadline: November 16, 2023 |

**REPLY TO RESPONSE OF THE HONORABLE BARBARA J. HOUSER (RET.) IN HER CAPACITY AS TRUSTEE OF THE BSA SETTLEMENT TRUST, IN OPPOSITION TO MOTIONS TO CHANGE ELECTIONS OF <u>EXPEDITED DISTRIBUTION</u>**

Babin Law, LLC ("Babin Law"), on behalf of two of its clients, SST-902574 and SST-907529 (collectively, the "Claimants"), by and through the undersigned counsel, hereby files this Consolidated Reply to the Response of the Honorable Barbara J. Houser, (Ret.), in her Capacity as Trustee of the BSA Settlement Trust, in Opposition to Motions to Change Elections of Expedited Distribution (D.I. 11602). In opposition to the Trustee's Response, and in support of Claimant's Motion, the Claimants respectfully state as follows:

**I.    INTRODUCTION**

Claimants K.S. [2] and J.H. [3] faced one of the world's greatest injustices at the hands of the Boy Scouts of America – child sex abuse. Although no amount of money can ever repair the damage

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.
[2] K.S. is referred to as "Claimant 1" in Babin Law's previous motion. (D.I. 11567)
[3] J.H. is referred to as "Claimant 2" in Babin Law's original motion. *Id.*

1

this abuse has had on Claimants' lives, the justice system offers a way to hold wrongdoers accountable.

Seeking some recompense for the horrific abuse they suffered, Claimants filed Proof of Claim forms in the Boy Scouts bankruptcy. Claimants were hopeful that BSA would finally pay for turning a blind eye to sex abuse in its ranks. However, Claimants' hopes of justice have been compromised by an error they did not commit. As a result of this error, Claimants are being forced to accept an expedited payout that they did not elect, rather than having the opportunity to go through the standard recovery process that they did elect, as they were entitled to do under the Bankruptcy Plan.

Babin Law, therefore, is requesting narrow, targeted relief to correct this error and to allow both Claimants to proceed through the Standard Trust Distribution Process. The Settlement Trustee has opposed Babin's request, but nothing prevents the Court from granting such relief. Additionally, no parties will be prejudiced. This Court should allow Claimants K.S. and J.H. to receive a full recovery.

**II. FACTS**

Babin Law represents two Claimants who suffered child sex abuse while they participated in the Boy Scouts of America. Each Claimant timely filed Proof of Claims forms in the BSA Bankruptcy.[4] Over two years ago, K.S. and J.H. voted on the BSA Bankruptcy Plan, and, at first, mistakenly selected the Expedited Distribution Option – K.S. first voted on November 10, 2023 (Ballot ID No. 227620) and J.H. first voted on December 7, 2021 (Ballot ID No. 215722).

Both Claimants recognized well before any deadline that their elections had been mistaken, and that they wished, instead, to proceed through the Standard Trust Distribution Process. Babin

---

[4] The claim numbers are SST-902574 for K.S. and SST-907529 for J.H.

Law reached out to the voting platform E-Ballot to cancel Claimants' mistaken ballots, and E-Ballot responded and acknowledged that these ballots were "canceled" and invalidated.

On November 16, 2021, K.S. re-voted and did not elect the Expedited Distribution. OMNI received this vote on December 10, 2021. (Ballot No. 227621). J.H. did not cast a new vote, understanding that he would proceed with the standard review process by default by not voting.

Shortly before the submission deadline, E-Ballot delivered to Babin Law a bulk upload file containing nearly 1,000 ballots. This file, which was submitted to OMNI at the end of December 2021 to meet the impending deadline, included Claimants' earlier ballots which E-Ballot had confirmed had been cancelled. The Trustee believes that these cancelled ballots are the operative ballots for Claimants and that she has no authority under the settlement procedures to remove them.

After communicating with the Trust and OMNI regarding this issue, Babin Law filed a Motion To Change Election To Opt Into Expedited Payment/Convenience Class (the "Motion") on October 31, 2023 (D.I. 11567). Several similar Motions regarding Expedited Distribution Elections were filed before and after Babin Law's Motion. This Court subsequently set an omnibus hearing date on Babin Law's and other motions for November 20, 2023. (D.I. 11585) The Settlement Trustee filed a Motion in opposition to Babin Law's Motion on November 10, 2023. (D.I. 11602).

### III.    ARGUMENT

Contrary to the Settlement Trustee's arguments, Claimants are not seeking to circumvent the requirements of the Third Amended Bankruptcy Plan ("Plan"), the Trust Distribution Procedures ("TDP"), or the Solicitation Procedures (*See* D.I. 11565 and D.I. 11602). The Claimants are only requesting very narrow relief from this Court to correct a clear error.

Put simply, the "operative" ballots received by OMNI were invalid because Claimants had cancelled them. Claimants never intended to elect the Expedited option and took all necessary steps to make this clear prior to any deadline so that they could, instead, proceed through the Standard Trust Distribution Process. Now, Claimants are being forced to accept a $3,500 payment for their claims that are worth significantly more, based on a ballot they cancelled. Babin Law is simply asking this Court to prevent this unjust result and grant the Claimants the limited, equitable relief of correcting their election.

The Trustee's argument relies on one rule in the Solicitation Procedures: "[i]f . . . the Solicitation Agent receives more than one Ballot from or on behalf of the holder of a single Direct Abuse Claim on or before the Voting Deadline, the effective vote shall be the last Ballot actually received by the Solicitation Agent before the Voting Deadline". (D.I. 11602 at 2, *citing* Solicitation Procedures Order, § IV.F.1). However, the rules as written do not anticipate every circumstance, and it is appropriate to seek relief from the Court when a strict and blind adherence to a rule leads to an unjust or prejudicial result. Simply put, a Claimant's cancelled ballot should never be his controlling ballot.

The Trustee, herself, has made several changes to the administration of the Plan in the interest of fairness to the sex-abuse victims in this case, including extending deadlines for the Independent Review Option and Expedited Questionnaire submission. These changes demonstrate that the Trustee appreciates the need to adjust the terms of the Plan in select circumstances when justice calls for it. Claimants face just such a situation here.

The Trustee's Response to Claimant's Motion cites several additional TDP provisions that are irrelevant to Claimants' request for relief. For instance, she notes that "[a] Direct Abuse Claimant who does not make the Expedited Distribution Election . . . in accordance with the deadlines and

4

procedures established by the Settlement Trust may not later elect to receive the Expedited Distribution." (D.I. 11565 at 3 *citing* Plan, Art. VI). But Claimants are not now attempting to elect the Expedited Distribution after the fact; they never elected it at all, and simply want those elections honored.

Similarly, the Trustee argues the language of the TDP prohibits her from adding "an opportunity to make an Expedited Distribution Election for a claim by a Chapter 11 POC after the voting deadline." (D.I. 11565 at 3 *citing* TDP, Art. XIV.B). But, again, this language does not address the Claimants' situation or the relief they are seeking. Rather, it is a narrow provision that only prevents the Trustee from allowing a later selection of this option. (D.I. 11565 at 3). The Plan and the TDP are both silent regarding the relief requested by these Claimants. And, even if the Trustee does not have the authority to grant Claimants their requested relief, this Court does.

When considering a request to correct a mistake, bankruptcy courts typically rely on the *Pioneer* standard. *Pioneer Inv. Services v. Brunswick Associates*, 507 U.S. 380, 395 (1993). To determine if actions constitute "excusable neglect" within the meaning of Fed. R. Bankr. P. 9006(b)(1), bankruptcy courts consider the following factors: "danger of prejudice to debtor, the length of delay and its potential impact on judicial proceedings, the reason for delay, including whether it was within the reasonable control of movant, and whether movant acted in good faith." *Id.* at 382. These factors weigh in favor of this Court allowing Claimants to proceed through the Standard Trust Distribution Process, and the Trustee has not argued otherwise.

First, the debtor in this bankruptcy, Boy Scouts of America – together with its sponsoring organizations, local councils, and insurers – has not objected to Claimants' Motion. Only the Trustee has raised an objection. The Trustee would suffer no prejudice if the Court granted Claimants' requested relief. Claimants have not signed a release form or accepted any payments

5

of the Expedited Distribution.[5] The Trustee, in general opposition to various similar motions that have been filed, claims she will face several challenges should Claimants relief be granted, including: re-opening the Expedited Distribution questionnaire, updating all claimants on the changes, changing deadlines, and making drastic alternations to the claims processing portal. But none of these "parade of horribles" outcomes would result from granting Claimants the narrowly tailored relief they are seeking to correct the injustice of their specific circumstances. Claimants' Motion only asks this Court to grant individualized relief to these particular Claimants, and doing so will not affect any of the 7,300 Claimants who actually did elect the Expedited Distribution option. The relief is simple and straightforward – the Trustee would only have to "click a button" to change the Claimants' Questionnaires to the Standard Trust Distribution on the claims processing portal.

Given the ease of correcting this error, any delay caused would be negligible. This is especially true considering the Independent Review deadline is still months away, and no deadline at all has been established to submit the Standard Trust Distribution Claim. As such, all factors of the *Pioneer* standard weigh in favor of this Court granting Claimants' requested relief.

## IV.    CONCLUSION

Forcing Claimants to accept a smaller distribution based on mistaken elections made on cancelled ballots is directly at odds with the Plan's intended purpose to protect survivors. Such a result would cause great prejudice to the Claimants, whereas the Trustee and Debtors would suffer no prejudice at all if the Claimants' ballot elections were corrected to reflect their intentions. No

---

[5] Out of an abundance of caution, Babin Law has submitted the Expedited Distribution Questionnaires for both Claimants. Babin Law felt it necessary to preserve the Claimants' chance to receive some compensation for their claims if this Motion is denied. If this Motion is granted, however, Babin Law will promptly withdraw the Expedited Distribution Questionnaires. Claimants have not executed a release for the Expedited Payment, nor received payment.

distributions have yet been made and there will be no harm in allowing the Claimants to move through the claim reconciliation process. Claimants are requesting very narrow relief from this Court to correct a mistake and allow them to make a full and fair recovery on their claim as they are entitled to under the Plan. Canceled ballots should not be controlling ballots.

WHEREFORE, Babin Law respectfully requests that the Court instruct the Trustee to (1) reset both Claimants' Questionnaires to the Standard Trust Distribution Questionnaires; and disregard the cancelled ballots (being Ballot ID No. 227620 and Ballot ID No. 215722), with the results being (2) that Ballot ID No. 227621 be treated as K.S.'s operative ballot and (3) that J.H. be permitted to proceed through the Standard Trust Distribution Procedures by default (having submitted no valid ballot), and that the Court provide such other and further relief as is just and proper.

Date:  November 16, 2023	BY:	*/s/ David Crumplar*
David Crumplar (#5876)
Jacobs & Crumplar, P.A.
750 Shipyard Dr., Suite 200
Wilmington, DE 19801
Phone: (302) 656-5445
Email: Davy@jcdelaw.com

Kristina Aiad-Toss (0101336)
Babin Law, LLC
65 E. State St. Suite 1300
Columbus, OH 43215
Ph: (614)-982-0067
Kristina.aiad-toss@babinlaws.com

## CERTIFICATE OF SERVICE

I, David T. Crumplar, hereby certify that, on this 16th day of November, 2023, and in addition to the service provided under the Court's CM/ECF system, I caused copies of the foregoing *Reply To Response Of The Honorable Barbara J. Houser (Ret.) In Her Capacity As Trustee Of The Bsa Settlement Trust, In Opposition To Motions To Change Elections Of Expedited Distribution* to be served upon the parties listed on the attached service list by email.

*/s/ David Crumplar*
David Crumplar (#5876)
Jacobs & Crumplar, P.A.
750 Shipyard Dr., Suite 200
Wilmington, DE 19801
Phone: (302) 656-5445
Email: Davy@jcdelaw.com

**SERVICE LIST**

Derek C. Abbott, Esquire Andrew R. Remming, Esquire Paige N. Topper, Esquire MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
dabbott@morrisnichols.com
aremming@morrisnichols.com
ptopper@morrisnichols.com

Glenn Kurtz, Esquire

Jessica C. Lauria, Esquire

Andrew Hammond, Esquire
Samuel P. Hershey, Esquire
WHITE & CASE LLP
1221 Avenue of the Americas New York, New York 10020
gkurtz@whitecase.com
jessica.lauria@whitecase.com
ahammond@whitecase.com
sam.hershey@whitecase.com

Richard M. Pachulski, Esquire
James E. O'Neill, Esquire
PACHULSKI STANG STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor Wilmington, DE 19801
rpachulski@pszjlaw.com
joneill@pszjlaw.com

Office of The United States Trustee Attn: David Buchbinder, Esquire
J. Caleb Boggs Federal Building 844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801
David.L.Buchbinder@usdoj.gov

Office of The United States Trustee
Attn: David Buchbinder, Esquire
J. Caleb Boggs Federal Building 844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801
David.L.Buchbinder@usdoj.gov

Michael C. Andolina, Esquire Matthew E. Linder, Esquire Laura E. Baccash, Esquire Blair M. Warner, Esquire WHITE & CASE LLP
111 South Wacker Drive Chicago, Illinois 60606 mandolina@whitecase.com
mlinder@whitecase.com
laura.baccash@whitecase.comblair.warner@whitecase.com

Kurt F. Gwynne, Esquire Mark W. Eckard, Esquire
 REED SMITH LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801
kgwynne@reedsmith.com
meckard@reedsmith.com

Thomas Moers Mayer, Esquire
Rachael Ringer, Esquire
Jennifer R. Sharret, Esquire
Megan M. Wasson, Esquire
KRAMER LEVIN NAFTALIS & FRANKEL LLP
177 Avenue of the Americas
New York, NY 10036
tmayer@kramerlevin.com
rringer@kramerlevin.com
jsharret@kramerlevin.com
mwasson@kramerlevin.com