# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA and<br>DELAWARE BSA, LLC,[1]<br><br>　　　　Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>RE:  D.I. 11635<br>Hearing Date: TBD<br>Obj. Deadline: December 11, 2023 at 4:00 p.m. (ET) |

## SUPPLEMENTAL BRIEFING ON STANDARD OF REVIEW IN SUPPORT OF MOTION TO CORRECT ELECTION BY CLAIMANT P.T.

Per this Court's instructions at oral argument on November 20, 2023, and prior to the Scouting Settlement Trust being required to file a response on the *Motion to Correct Election from the Expedited Review Option to the Settlement Trust Review Process by Claimant P.T.* ("P.T. Motion") (D.I. 11635) (filed as the hearing commenced), the claimant identified herein as P.T. (SST-907267)—through the undersigned counsel—submits the following supplemental memorandum of legal authority regarding the standard of review and scope of this Court's power to rectify manifest error in the furtherance of fairness and justice, pursuant to its authority as a court of equity as well as under the auspices of Bankruptcy Code Section 105 and caselaw interpreting the scope of the bankruptcy court's power.

## LEGAL ARGUMENT

1. During oral argument on similar motions before this Court on November 20, 2023, the Court inquired what the proper standard of review should be in crafting relief requested by the wide range of motions seeking to correct, revise, or substitute prior votes from claimants who were

---

[1] The Reorganized Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

{GFM-01979060.DOCX-}　　　　　　　　　　　1

recorded as selecting the $3,500 Expedited Payment option to resolve their claims, as provided in Article VI of the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization*. *See* D.I. 10296, Exhibit A, Trust Distribution Procedures at 8-9 (pdf page 161-62 of 498). Pursuant t that instruction, this memorandum only addresses the scope of the court's authority, and does not further discuss the merits of P.T.'s underlying motion. In doing so, P.T. is not waiving his right to file a reply to the any response the Trust files in opposition to his Motion.

2. In P.T.'s Motion to Correct his erroneous and fully unintended election of the $3,500 expedited review option during the voting on the first version of Debtor's Plan of Reorganization, P.T. argued:

> "A bankruptcy court is a court of equity which may, in its discretion, … grant relief upon some condition dictated by equitable principles." In re G-I Holdings, Inc., 2005 WL 1714297 (Bankr. D.N.J. July 12, 2005) *In re Waldron*, 785 F.2d 936, 941 (11th Cir. 1986). ("The cornerstone of the bankruptcy courts has always been the doing of equity"). Notably, "[t]he Bankruptcy Code permits courts to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Code]'. 11 U.S.C. § 105(a). The Third Circuit has construed this provision to give bankruptcy courts 'broad authority' to provide appropriate equitable relief to assure the orderly conduct of reorganization proceedings, *See*, e.g., *In re Combustion Eng'g, Inc.,* 391 F.3d 190, 236 (3d Cir.2004), and to 'craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain.' *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery,* 330 F.3d 548, 568 (3d Cir.2003) (en banc)." *In re Nortel Networks, Inc.*, 2015 WL 2374351 (Bankr. D. Del. May 12, 2015). The Code plainly favors" the interests of justice, and fairness to creditors." *See In re Michael S. Goldberg, L.L.C.*, 2012 WL 71594, at *2 (Bankr. D. Conn. Jan. 10, 2012).

P.T. Motion at 9-10. Claimant P.T. stands by this articulation of the scope of this Court's power to correct obvious errors in voting or tabulation based on technicalities of timing, fraud, or proven lack of intent—particularly (as here) where it implicates fundamental fairness and the claimant provides an incontrovertible factual showing that justifies this Court's use of its broad equitable powers.

3. The source of this Court's authority lies in the Court's continuing jurisdiction over the Plan of Reorganization, common law principles of a court's power when functioning in equity, the broad sweep of Section 105, and the purpose of the Code to provide justice and fairness to creditors whose property interests are being altered, limited, and in some cases eliminated by the operation of bankruptcy law.

4. As the Court and counsel noted at the November 20 hearing, there do not appear to be any reported cases specifically involving the reformation/rectification/correction of a vote on a plan of reorganization or caselaw directly on point with respect to correcting a recorded plan vote from a claimant when caused by inadvertent, yet manifest error in the claimant's casting of the vote. Indeed, the Supreme Court held that "[i]t is hornbook law that § 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.'" *Law v. Siegel*, 571 U.S. 415, 421 (2014). But that limitation poses no barrier to the relief sought here. Nothing in the Code prohibits the reformation of a vote on a Plan in light of evidence it was simply in error. As set out in the P.T. Motion, the selection of the Expedited Review here was not done knowingly, and not ascertainable until the claim was unlocked on the Zalkin dashboard.

5. While authority to affirmatively change a vote based on fairness, the Code does make clear that it is within the Court's power to disregard—or designate—votes that were secured in bad faith. "Votes must be designated [under Section 1126(e)] when the court determines that the creditor has cast his vote with an ulterior purpose aimed at gaining some advantage to which he would not otherwise be entitled in his position. *In re Gilbert,* 104 B.R. at 216; *see also Insinger Machine Co. v. Federal Support Co. (In re Federal Support Co.),* 859 F.2d 17 (4th Cir.1988)." *In re Allegheny Int'l, Inc.*, 118 B.R. 282, 290 (Bankr. W.D. Pa. 1990) (internal quotation marks omitted). So the power to deal with votes certainly does lie with the

Court generally, but the P.T. Motion here does not implicate allowing a vote that should be otherwise designated.  Therefore, there is no prohibition to the Court exercising its power to remedy P.T.'s mistake under the terms of *Law v. Siegel*.

6. The recognized power of the Court to reject votes entirely for malfeasance would, by logical necessity, encompass the lesser form of relief of modifying past votes for reasonable and justifiable mistake.  *Cf*, *In re Adelphia Communications Corp.,* 359 B.R. 54, 61 (Bankr.S.D.N.Y.2006) (voting is a "fundamental right of creditors" so designation is "is the exception, not the rule" and subject to a "heavy burden of proof"); *In re Kovalchick,* 175 B.R. 863, 875 (Bankr.E.D.Pa.1994) (creditor voting is critical feature of Chapter 11); *see also, 7 Collier on Bankruptcy* ¶ 1126.06 (16th ed. 2009).  Yet even such "heavy handed" remedies as designation are acceptable where they are "sufficiently tied to maximizing creditor recoveries[.]" *Adelphia*, 359 B.R. at 63.  Thus, the question for this Court is not whether it has the power to afford the relief Claimant P.T. requests, but whether he has factually shown that he deserves the exercise of this Court's power.

7. The imposition of harsh technical rules to not only destroy P.T.'s personal chance at recovery, but also to hamstring the Trust by eliminating a high-value claim from any potential future unsettled insurance action brought by the Trust to further fund recoveries for all claimants makes no sense in light of the goals of maximizing the assets of the estate and ensuring a fair recovery to creditors promoted by the Code.  *See* Plan Art IV.B.1; TDP, Article I.A., at 1; TDP, Article X, at 24 (purpose of Plan and TDP is to maximize the assets of the estate and the recovery to survivors).

8. Therefore, while it may at first glance appear shallow or even trite to insist that the bankruptcy court, sitting in equity inherently has the power to remedy manifest mistakes in

voting, sometimes the simple answers really are the best ones. Voting, like any other technical aspect of the Chapter 11 process, falls entirely under the purview of this Court in the cases before it. While this Court cannot ignore or contradict clear mandates of the Code in carrying out those technical operations (*e.g.*, it could not modify a vote shown to be cast in bad faith or because of improper solicitation), the Court can certainly act where (as here) there remains "play in the joints" concerning application of technical rules. Such exercise of equitable power is especially warranted where the technical rules at issue are those found in the Plan and created by order of the court, and would otherwise resort in injustice not only to the claimant, but also to the survivor constituency at large. *See In re Indianapolis Downs, LLC*, 486 B.R. 286, 296 (Bankr. D. Del. 2013) (pre-petition negotiations resulting in a Restructuring Support Agreement Chapter 11 proceeding would not be considered improper "solicitation" of votes, and court would not disqualify them), citing *In re Heritage Organization, L.L.C.*, 376 B.R. 783 (Bankr. N.D. Tex. 2007) (Judge Houser approving plan based on negotiated RSA, construing "solicitation" narrowly to effectuate a confirmable plan). *See* TDP, Article XIV.B., at 35 (court can approve requests to amend terms of Plan or TDP). Refusing to allow Claimant P.T. to correct a documented and factually supported, entirely inadvertent error in P.T. completing what he—due to his severe dyslexia—did not even know was a ballot, let alone understand to be an election that severely limited his otherwise very valuable claim, would elevate form over substance in contravention of the purposes of the Code and the Plan in this case.

9. Following P.T. counsel's consultation with Mr. Richman, counsel for the Mary Alexander Claimants (*see* D.I. 11599), and Mr. Walker, counsel for J.D., Claimant # 908123 (*see* D.I. 11570), Claimant P.T. hereby adopts and incorporates by reference the legal arguments made

in their respective supplemental memoranda - to be filed contemporaneously with this memorandum—in lieu of restating those arguments in full herein.

Dated: December 8, 2023.        **GORDON FOURNARIS & MAMMARELLA, P.A.**

        */s/ William Kelleher*
        William Kelleher (No. 3961)
        Christopher P. Clemson (No. 6539)
        1925 Lovering Avenue
        Wilmington, DE 19806
        Tel: 302-652-2900
        Email:  bkelleher@gfmlaw.com
        Email:  cclemson@gfmlaw.com

        and

        Irwin Zalkin, Esq. (*admitted pro hac vice*)
        Devin Storey, Esq. (*admitted pro hac vice*)
        Kristian Roggendorf, Esq. (*admitted pro hac vice*)
        **THE ZALKIN LAW FIRM, P.C.**
        10590 W Ocean Air Dr. #125
        San Diego, CA 92130
        Tel:  858-259-3011
        Email:  irwin@zalkin.com
        Email:  devin@zalkin.com
        Email:  kristian@zalkin.com

        *Counsel for Claimant P.T.*