IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | (Jointly Administered) |
| | ) | |
| BOY SCOUTS OF AMERICA AND | ) | Case No. 20-10343 (LSS) |
| DELAWARE BSA, LLC,[1] | ) | |
| | ) | **Related Docket Nos: Dkt. 11567; 11621** |
| Debtors. | ) | |
| | ) | |
| | ) | |
| | ) | |

**SUPPLEMENT BRIEF IN SUPPORT OF CLAIMANTS'
MOTION TO CHANGE ELECTION**

Babin Law, LLC ("Babin Law"), on behalf of its clients SST-902574 and SST-907529 ("Claimants"), hereby files this Supplemental Brief in support of its Original Motion (D.I. 11567) and Reply (D.I. 11621), as requested by this Honorable Court during the November 20, 2023 Omnibus Hearing on various Motions to Change Expedited Distribution Elections. The Claimants respectfully request this Court withdraw or modify Claimants' operative ballots, and allow Claimants to proceed through the standard trust distribution process. This Court has the authority to grant this relief under Rule 3018, the Solicitation Procedures, Section 502(j), the *Pioneer* standard for "excusable neglect," and Rule 60 of the Federal Rule of Civil procedures.

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

1

**1. The Court has the authority to grant the requested relief under Rule 3018 and the Solicitation Procedures.**

Claimants have shown good cause, as required by the Solicitation Procedures and Article V(D)(8) and under Fed. R. Bankr. P. 3018(a) ("Rule 3018"), for this Court to withdraw or modify the canceled ballots mistakenly received by OMNI and the Trustee.[2]

Under Article V(D)(8) of the Solicitation Procedures, this Court has the express authority to withdraw or amend ballots: "After the Voting Deadline, a Ballot may only be withdrawn or modified pursuant to an order of the Bankruptcy Court authorizing such withdrawal or modification. Any such withdrawal or modification shall be detailed in the Voting Report filed by the Solicitation Agent." This provision mirrors the language of, and should be read in tandem with, Rule 3018(a), which governs procedures for approving a plan: "For cause shown, the court after notice and hearing may permit a creditor or equity security holder to change or withdraw an acceptance or rejection."

Here, Claimants seek to remedy canceled ballots mistakenly received by OMNI approving the Third Amended Bankruptcy Plan ("Plan"). The Solicitation Procedures and Rule 3018 expressly allow changes, modifications, and withdrawals of such ballots. To correct the record consistent with the Claimants' intentions and to allow the Claimants to proceed through the Standard Trust Distribution Process, this Court has the choice of two remedies. It can *withdraw* the canceled ballots, or it can *modify* the canceled ballots to remove the Expedited Distribution Election from them. Both scenarios are within the grant of authority prescribed by the Solicitation Procedures and Rule 3018, and either would result in the Claimants being able to proceed through the Standard Trust Distribution Process, as they intended.

---

[2] See the Facts as detailed in Babin Law's original Motion (D.I. 11567).

Regarding whether Claimants have shown cause to change or withdraw their ballots as required by Rule 3018, one unpublished opinion addresses the applicable standard: *In re Imerys Talc Am., Inc.*, No. 19-10289 (LSS), 2021 Bankr. LEXIS 2852, at *15-16 (Bankr. D. Del. Oct. 13, 2021). It holds that, because neither the Bankruptcy Code nor the Bankruptcy Rules define "cause," it is for judges to determine "based on the context and to grant or deny a motion at their discretion." *Id.* (citing *In re MPM Silicones, LLC,* No. 14-22503-rdd, 2014 Bankr. LEXIS 4062, at *5 (Bankr. S.D.N.Y. Sep. 17, 2014) and *In re J.C. Householder Land Trust # 1*, 502 B.R. 602 (Bankr. M.D. Fla. 2013).

This Court articulated five general principles analyzed in *In re MPM Silicones*:

> First, the "for cause" standard should not be hard to meet. "As long as the reason for the vote change is not tainted, the change of vote should usually be permitted." *In re Dow Corning Corp.*, 237 B.R. 374, 377 (Bankr. E.D. Mich. 1999) (citing 9 Collier on Bankruptcy ¶ 3018[4] (15th ed. Rev. 1999)). Second, human error is "cause" to change a vote. Human error occurs when there is (i) a breakdown in communications at the voting entity; (ii) a misreading of the plan terms; or (iii) the execution of a ballot by one without authority corrected by one with authority. *MPM Silicones* *2 (citing *In re Kellogg Square Partnership*, 160 B.R. 332, 334 (Bankr. D. Minn 1993)). Third, courts look unfavorably on votes changes made to enhance an objector's leverage in situations such as to force a cram down. *Id.* * 2 (citing *In re Eastern Systems, Inc.,* 118 B.R. 223 (Bankr. S.D.N.Y. 1990) (denying motion), *In re Windmill Durango Office, LLC,* 481 B.R. 51 (B.A.P. 9th Cir. 2012) (denying motion)). Fourth, cause should be "more than a mere change of heart". *Id.* (citing *Windmill Durango*, 481 B.R. at 66). Fifth, where plan proponents support the vote change in furtherance of a consensual resolution, cause likely exists unless there is some extra consideration being offered for the vote change.

*In re Imerys Talc Am., Inc.*, 2021 Bankr. LEXIS 2852, *15-16.

Typically, motions brought under Rule 3018 are denied where the creditor believes the change in the vote will benefit it, based on new facts. *See e.g. In re MPM Silicones, LLC,* 2014 Bankr. LEXIS 4062, *5-6; *In re Eastern Systems, Inc.,* 118 B.R. 223 (Bankr. S.D.N.Y. 1990) (denying motion), *In re Windmill Durango Office, LLC,* 481 B.R. 51 (B.A.P. 9th Cir. 2012) (denying motion). In contrast, Courts find cause is shown under the 3018 when "the vote could be changed

in order to allow the voting entity to 'intelligently express its will.'" *In re Mcorp Fin., Inc.,* 137 B.R. 237, 238 (Bankr. S.D. Tex. 1992). For example, *In re Imerys Talc. Am., Inc.,* this Court found good cause to change a creditor's vote when the creditor was in negotiations with a debtor to approve the plan and, out of caution, voted to reject the plan before the deadline. However, this vote was cast at the same time the voting deadline was extended by this Court. After taking affirmative action based on assurances in the plan, the creditor moved to change his vote. The Court found cause in this situation.

In a similar vein, cause for changing or withdrawing a vote can be found "if the vote did not express the creditor's desires at the time the vote was cast." 8 Collier on Bankruptcy, P3018.3[4], at 3018-10 (15th ed. 1990). *See also In re MCorp Financial, Inc*., 137 B.R. 237, 238-9 (Bankr. S.D. Tex. 1992); *In re Kellogg Square Partnership*, 160 B.R. 332 (Bankr. D. Minn. 1993); *In re OBT Partners, Ltd. Pshp*., 214 B.R. 863, 869.[3]

Here, the evidence that Claimants intended to cancel, and did cancel, the mistaken ballots is undisputed. These canceled ballots did not "express the [Claimants'] desires at the time the vote was cast." *See* 8 Collier on Bankruptcy, *supra*. They were inadvertently submitted to the Trustee because of human error; namely, a "breakdown in communications at the voting entity". *See In re Imerys Talc Am., Inc., supra.* And their withdrawal or modification would "allow the [Claimants'] to 'intelligently express [their] will.'" *See In re MCorp Fin., Inc*., *supra*. For all of these reasons, the cause shown is good and proper, and this Court may grant the requested relief.

---

[3] Although these cases were decided before plan confirmation, and Rule 3018 is traditionally not used after confirmation, nothing in the plain language states that it cannot be used after plan confirmation. Courts typically consider whether confirmation will be delayed or materially affected by a Rule 3018 motion. *See e.g. In re Harmony Holdings,* LLC, 395 B.R. 350, 351 (Bankr. D.S.C. 2008). Here, granting the requested relief will have no impact on confirmation. It will only affect which procedures of the Plan specifically apply to Claimants.

4

**2. The Court has the authority to reconsider the Claimants' claims for cause shown.**

Section 502(j) of the Bankruptcy Code grants bankruptcy courts the power to reconsider, for cause, a claim that has been allowed or disallowed. 11 U.S.C. § 502(j). *Debtor v. IRS ( In re Galluzzo),* Civil Action No. 18-13435 (ES), 2021 U.S. Dist. LEXIS 261904, at *14 (D.N.J. Oct. 25, 2021). The "for cause" standard of this section is identical to that of 3018.

Under Article IV of the TDP, the Trustee must decide if a claim is "allowed" or "disallowed." (D.I. 8813 p. 158). Under that provision, she has determined that Claimants' claims are "Allowed Abuse Claims" entitled to the Expedited Distribution under the Plan. These claims, therefore, fall under the scope of Section 502(j) and can be reconsidered by this Court.

The Court may use Section 502(j) to change the value and class of a claim as long as it does not also modify the terms of the Plan.[4] As discussed above, the Claimants have shown cause for this Court to reconsider their claims. Further, the requested change will not alter the terms of the Plan or the TDP. Claimants will simply move from Expedited Claims to Standard Trust Distribution "Matrix" Claim. The funds set aside by the Boy Scouts of America will not change; only the amount allocated to Claimants will change. The requested relief is consistent with and does not contravene the terms of the Plan.[5] Thus, the Court should reconsider this claim in light of the evidence presented that the Claimants canceled their ballots and took affirmative actions to proceed through the standard process.

---

[4] *See United States Dep't of the Treasury - Internal Revenue Serv. v. EB Holdings II, Inc.*, No. 2:20-cv-01311-GMN, 2021 U.S. Dist. LEXIS 27381, 2021 WL 535467, at *4 (D. Nev. Feb. 11, 2021) (affirming bankruptcy court's conclusion that adjusting a claim under § 502(j) is distinct from modifying a plan under § 1127); *In re Disney,* 386 B.R. 292, 303 (Bankr. D. Colo. 2008) (allowing post-confirmation reclassification of claim and corresponding modification of treatment of that claim under chapter 13 plan); *In re Davis,* 404 B.R. 183, 188 (Bankr. S.D. Tex. 2009) (same); *In re Van Dyke,* 286 B.R. 858, 861 (Bankr. C.D. Ill. 2001) (granting reconsideration of order disallowing claim — after consummation of a chapter 11 plan - because creditor never received notice of objection to its claim).

[5] As discussed previously in the Claimants' reply, nothing in the Plan prohibits granting the requested relief. *See* D.I. 11621 at 4-5.

### 3. The Court has the authority to grant the requested relief under the *Pioneer* standard.

When considering a request to correct a mistake, bankruptcy courts typically rely on the *Pioneer* standard.[6] *Pioneer Inv. Services v. Brunswick Associates*, 507 U.S. 380, 395 (1993). To determine if actions constitute "excusable neglect," bankruptcy courts consider the following factors: "danger of prejudice to debtor, the length of delay and its potential impact on judicial proceedings, the reason for delay, including whether it was within the reasonable control of movant, and whether movant acted in good faith." *Id.* at 382.

These factors weigh in favor of this Court allowing Claimants to proceed through the standard trust distribution process, as detailed in the Claimants' Reply Brief to the Trustee's Omnibus Response. (D.I. 11621 at 5-6). While *Pioneer* considered excusable neglect in the context of a late-filed proof of claim form, the standard from *Pioneer* has been applied in many different contexts.[7]

Perhaps the most similar case to the Claimants' is the *Pioneer* standard as applied under Rule 3008 Motion. *See Pro-Tec Services, LLC v. Inacom Corp.*, 2004 LEXIS 20822 (Dist. Del. 2004). In *Pro-tec Services,* a creditor failed to reply to a debtor's objection, and the court disallowed the creditor's proof of claim form. The Court found excusable neglect even when the mistake was "that the delay was due to [the creditor's] lack of care" because the rule "clearly anticipates neglect on the part of the party seeking to be excused." *Pro-Tec Servs.*, LLC, 2004 U.S. Dist. LEXIS 20822, at *24. Similarly, the oversight of E-Ballot in this case was due to their lack of care, and

---

[6] The Third Circuit Court of Appeals has extended the excusable neglect standard set forth in *Pioneer Inv. Servs. Co.* to motions made under Federal Rule of Civil Procedure 60(b)(1). *See George Harms Constr. Co., Inc. v. Chao*, 371 F.3d 156, 163-64 (3d Cir. 2004) (*citing Pioneer Inv. Servs. Co.*, 507 U.S. at 395).
[7] *See Pro-Tec Services, LLC v. Inacom Corp.*, 2004 LEXIS 20822 (Dist. Del. 2004) (allowing or disallowing a bankruptcy claim); *Drippe v. Tobelinski*, 604 F.3d 778, 784 (3d Cir. 2010) (untimeliness when filing a motion); day *Cmty. Fin. Serv. Bank v. Edwards (In re Edwards)*, 748 F. App'x 695, 697 (6th Cir. 2019) (failure to request extension of deadline); *Symbionics Inc. v. Ortlieb,* 432 F. App'x 216, 217 (4th Cir. 2011) (excusable neglect found for failure to comply with a deadline due to lack of technical understanding); *Eagle Bus Mfg. v. Rogers,* 62 F.3d 730, 732 (5th Cir. 1995) (excusable neglect found when warning of deadline was not conspicuous enough)*; ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.),* 450 F.3d 996, 997 (9th Cir. 2006) (excusable neglect found when other party's communications were misleading).

Babin Law promptly moved to appeal to the Trustee, and thereafter the Court once the error was discovered. Additionally, there was no neglect by Claimants, who took affirmative action to ensure they would be in the standard trust distribution process. For these reasons, and the reasons discussed in Claimants' Reply to the Trustee (D.I. 11621 at 5-6), this Court should grant the relief requested under the *Pioneer* standard.

**4. The Court has the authority to grant the requested relief under 11 U.S.C. § 105(a)**

Rule 105(a) of the U.S. Bankruptcy Code authorizes a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Supreme Court has described Section 105(a) bankruptcy court's "residual authority" to produce plans that enable "successful and value-maximizing reorganizations," including relief not specifically authorized elsewhere in the Bankruptcy Code." *See United States v. Energy Res. Co.,* 495 U.S. 545, 549, 110 S. Ct. 2139, 109 L. Ed. 2d 580 (1990). The Third Circuit has also interpreted this provision to give bankruptcy courts "broad authority" to provide equitable relief. See, e.g., *In re Combustion Engineering, Inc.,* 391 F.3d 190, 236 (3d Cir. 2004)

In *Energy Resources*, the Supreme Court held that the bankruptcy court had the authority under §§ 105(a) and 1123(b)(6), even though the Bankruptcy Code did not explicitly so provide, to reallocate the debtor's tax liabilities "if the bankruptcy court determines that this [reallocation] is necessary to the success of a reorganization plan." *Nat'l Union Fire Ins. v. BSA (In re BSA)*, 650 B.R. 87, 136 (D. Del. 2023) citing *United States v. Energy Resources,* 495 U.S. at 549.

Here, the Court may determine that the relief Claimants are requesting does not fit squarely within any other provision of the Bankruptcy Code. If so, Section 105(a) is applicable. The "residual authority" of this Court can be used to grant the requested relief, actualizing the Claimants intentions to proceed through the Standard Distribution Process. Such a result is

consistent with the overall letter and spirit of the Plan and the TDP, which were designed for qualifying Direct Abuse Claimant to receive the recovery they are entitled to under the terms agreed to by all Parties in this bankruptcy. It is also consistent with a number of provisions of the Bankruptcy Code, including 3018, 502(j), and 3008, among others, as well as the "residual authority" of the Court to promote "successful and value-maximizing reorganizations."

As is the case here, Relief under 105(a) has been granted in many unique situations where other provisions of the Bankruptcy Code do not squarely apply.[8] This is particularly true in mass tort cases, which often generate novel, complex situations that do not fit neatly within the existing provisions of the Bankruptcy Code.[9] (For example, in this case, the Court has already used its authority under Section 105(a) to amend the provisions of the TDP and extend the deadline to elect the Independent Review Option. *See* D.I. 11537).

Here, the relief requested by Claimants – to withdraw or modify canceled ballots and to allow the Claimants to proceed through the Standard Trust Distribution Process – is unique. As such, it may not fit squarely within any provision of the Bankruptcy Rules or Bankruptcy Code. While Sections 3018, 3008, and 502(j) provide possible avenues for relief, as discussed above, the Court may also simply apply its residual authority under 105(a), to grant the Claimants' requested relief.

5. **The Court has the authority to grant the requested relief pursuant to Fed. R. Civ. Proc. 60(b).**

---

[8] *MSGI Liquidation Tr. v. Modell (In re Modell's Sporting Goods, Inc.)*, Nos. 20-14179 (VFP), 22-1076 (VFP), 2023 Bankr. LEXIS 1031, at *4 (Bankr. D.N.J. Apr. 14, 2023) (using Section 105(a) to suspend lease obligations during the COVID-19 pandemic); *In re Naartjie Custom Kids, Inc.,* 534 B.R. 416, 425-26 (Bankr. D. Utah 2015) (approving a structured dismissal); *Adelphia Communications Corp. v. Rigas (In re Adelphia Communications Corp.)*, No. 02-Civ, 8495 GBD.02-41729 REG, 2003 WL 21297258, at *4 (S.D.N.Y. June 4, 2003) (granting an asset freeze injunction); *In re Vascular Access Centers, L.P.*, No. 19-17117 (AMC), 2022 WL 17366463 (Bankr. E.D. Pa. Dec. 1, 2022) (ordering sanctions on a third party).

[9] *See e.g. Roman Cath. Diocese of Rockville Ctr. v. Ark320 Doe (In re Roman Cath. Diocese of Rockville Ctr.),* 651 B.R. 622, 637 (Bankr. S.D.N.Y. 2023) (invoking 105(a) to grant a channeling injunction); *See In re BSA,* 650 B.R. 87.

As another alternative, this Court could consider Fed. R. Civ. Proc. 60(b) when analyzing the Claimant's Motion. Under Rule 60(b), which is incorporated by Bankruptcy Rule 9024, "the court may relieve a party or its legal representative from a final judgment, order, or proceeding." In the Claimants' particular situation, the Court can turn to either Rule 60(b)(1), which permits the Court to grant the requested relief based on "mistake, inadvertence, surprise, or excusable neglect", or Rule 60(b)(6), which permits the Court to grant Claimants' Motion for "any other reason that justifies relief."

### i. Rule 60(b)(1).

Rule 60(b)(1) has been applied in many different circumstances.[10] It applies to not only orders and judgments but also to "proceedings." The Rules themselves do not define this term, but, according to Black's Law Dictionary, a "proceeding" includes "all acts and events between the time of commencement and the entry of judgment" and "[a]n act or step that is part of a larger action." Proceeding, Black's Law Dictionary (10th ed. 2014). Pursuant to this Court's orders empowering the Plan, the Trustee has been given the express authority to conduct proceedings and make final decisions regarding specific Claimants.[11]

Because relief under Rule 60(b)(1) must be requested within one year of the "final judgment, order, or proceeding" (Fed. R. Civ. P. 60(c)(1)), the first key question is which "final judgment, order, or proceeding" locked the Claimants into the Expedited Distribution option? The

---

[10] West v. WRH Energy Partners LLC (In re Noram Res., Inc.), 2011 Bankr. LEXIS 5183, *24, (applied to a sale order of the bankruptcy court); Sportsman's Warehouse, Inc. v. McGillis/Eckman Invs.-Billings, LLC (In re Sportsman's Warehouse, Inc.), 457 B.R. 372, 395 (assumption order for a party to assume a lease); Otis v. Chesapeake Appalachia, LLC, 2012 U.S. Dist. LEXIS 66252, *2 (arbitration order); Debtor v. IRS ( In re Galluzzo), 2021 U.S. Dist. LEXIS 261904, *1-2 (confirmation order and order to enforce plan); In re Dematteo, 2022 Bankr. LEXIS 2909, *1 (order approving waiver of debtor's discharge).

[11] Under the Plan and the attached Trust Distribution Procedures (TDP), the Trustee has the ability to make a number of decisions that are final, including whether a claim is allowed or disallowed, whether a claim meets the initial qualification, and ultimately what relief, if any, a Claimant is entitled to under the terms of the TDP.

9

Trustee's decisions, which are acts (or events or steps) in this action and have full binding effect on the Claimants' recovery, should be considered "proceedings" under the plain language of Rule 60(b)(1), and two of them are critical here.

First, the Trustee decided, based on Claimants' canceled ballots, that the Claimants fell into the Expedited Distribution, and she placed them into the claims processing portal as part of that category in August 2023. Only because of this proceeding – wherein the Trustee sorted the Claimants into a category they had never intended to select. Second, after Babin Law sought reconsideration of this categorization from the Trust, the Trustee decided on October 30, 2023, that she lacked the authority to grant the relief requested. Because of this second proceeding, the Claimants filed the pending Motion. Because both of these proceedings occurred less than one year ago, the Claimants' request for relief from them under Rule 60(b)(1) has been timely made.

Because Rule 60(b)(1) applies to "final" judgments, orders, or proceedings (*Penn West Associates, Inc. v. Cohen,* 371 F.3d 118, 124 (3d Cir. 2004)), the next question is whether the above proceedings are "final". When it comes to the question of finality in bankruptcy cases, the Courts consider: "(1) whether the order leaves additional work to be done by the Bankruptcy Court, (2) whether the order implicates purely legal issues, (3) the impact of the Bankruptcy Court's order upon the assets of the debtor's estate, (4) the necessity for further fact-finding on remand to the Bankruptcy Court, (5) the preclusive effect of the District Court's decision on the merits of subsequent litigation; and (6) the furtherance of judicial economy." *Kaiser Group Int'l, Inc. v. Ostrava* (In re Kaiser Group Int'l, Inc.), 400 B.R. 140, 143.

The Trustee's "proceedings" are a final resolution of the Claimants' claims against the Boy Scouts of America for $3,500. Under these factors, the Trustee's decisions qualify as "final proceedings." First, after the Trustee placed Claimants into the Expedited Distribution, no

10

subsequent action remains to be completed by the Bankruptcy Court. Second, the Trustee's decision is a legal determination based on her reading of the TDP. Third, her decision has no impact on the debtor's estate; the funds for the Claimants have already been set aside, and the Trustee's decision only affects how that money is allocated among all Claimants. Fourth, the need for further fact-finding is minimal; the record is clear and undisputed from the exhibits and declarations submitted by Claimants, and the Court only needs to consider the evidence presented. Fifth, the relief requested is narrowly targeted and concerns only these two Claimants' unique situation. Sixth and finally, because the relief requested is only applicable to these two Claimants, it will have no impact on the judicial economy in other cases.

When considering a request to correct a mistake under 60(b)(1), bankruptcy courts typically rely on the *Pioneer* standard. *Pioneer Inv. Services v. Brunswick Associates*, 507 U.S. 380, 395 (1993). Claimants' Reply Brief to the Trustee's Omnibus Response, as well as the discussion above, outlines why these factors support this Court granting the requested relief.

    ii.    **Rule 60(b)(6).**

If the Court finds that Rule 60(b)(1) does not apply, or that relief under the rule is time-barred due to 60(c)(1), this Court can also turn to Rule 60(b)(6), claims under which must be brought within "a reasonable time." Rule 60(b)(6) permits the Court to grant Claimants' Motion for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Relief under this catch-all provision has been characterized as "a grand reservoir of equitable power to do justice in a particular case." *Hesling v. CSX Transp., Inc.,* 396 F.3d 632, 642 (5th Cir. 2005). *SB Liquidation Trust v. Preferred Bank* (In re Syntax-Brillian Corp.), 2013 Bankr. LEXIS 194, *21-22. While this power should be used only when necessary, a Bankruptcy Court may exercise it to "accomplish

justice" or to deal with "unforeseen contingencies." *Vision Metals, Inc. v. SMS Demag, Inc.* (In re Vision Metals, Inc.), 311 B.R. 692, 698.

Here, because the situation is an outlier, even among the other Motions to change Expedited Distribution elections now pending, the Court could turn to this Rule. The Claimants' intentions were clear before the voting deadline. It is only because of inadvertence that invalid, canceled ballots, which should have been destroyed, became the Claimants' operative ballots. This is exactly the "unforeseen contingency" the rule speaks to. Thus, the Court could utilize its "grand reservoir of equitable power" to grant the relief requested here. If the relief is not granted, an "unforeseen justice" will result if Claimants are forced to accept the $3500 Option when their claims are worth much more.

## ALTERNATIVE ARGUMENT

As alternative argument, Movant joins in and adopts the legal arguments of the other movants as if fully set forth herein. Further, Movant asserts all arguments made in his prior pleadings as if they were set forth herein.

## CONCLUSION

Claimants have waited nearly 40 years to receive recompense for their suffering and the impact it continues to have on their lives to this day. Claimants took all necessary steps to do so. They filed Proof of Claims in the Boy Scouts Bankruptcy. Claimants understood their claims were valued at hundreds of thousands up to a million under the standard claims resolution process, and took necessary steps to ensure they would receive a full and fair recovery under the Plan. As it stands today, Claimants face one barrier to receiving the justice they are entitled to: Claimants are being held to ballots they canceled before the voting deadline, and are unjustly being forced to accept a 3500 payment by no fault of their own. This Court has the authority to grant the relief

requested by Claimants under the Solicitation Procedures, Rule 3018, Section 502(j), the *Pioneer* standard, and the Federal Rule of Civil Procedure 60.

WHEREFORE, Babin Law respectfully requests that the Court withdraw or modify Claimants' ballots and permit them to proceed through the standard Trust Distribution Procedures and provide such other and further relief as is just and proper.

**Date:** December 8, 2023    **BY:**    */s/ David Crumplar*
David Crumplar (#5876)
Jacobs & Crumplar, P.A.
750 Shipyard Dr., Suite 200
Wilmington, DE 19801
Phone: (302) 656-5445
Email: Davy@jcdelaw.com

Kristina Aiad-Toss (0101336)
Babin Law, LLC
65 E. State St. Suite 1300
Columbus, OH 43215
Ph: (614)-982-0067
Kristina.aiad-toss@babinlaws.com

**CERTIFICATE OF SERVICE**

I, David T. Crumplar, hereby certify that, on this 8th day of December 2023, and in addition to the service provided under the Court's CM/ECF system, I caused copies of the foregoing *Supplement Brief In Support Of Claimants' Motion To Change Election* to be served upon the parties listed on the attached service list by email.

*/s/ David Crumplar*
David Crumplar (#5876)
Jacobs & Crumplar, P.A.
750 Shipyard Dr., Suite 200
Wilmington, DE 19801
Phone: (302) 656-5445
Email: Davy@jcdelaw.com

**SERVICE LIST**

Derek C. Abbott, Esquire Andrew R. Remming, Esquire Paige N. Topper, Esquire MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
dabbott@morrisnichols.com
aremming@morrisnichols.com
ptopper@morrisnichols.com

Glenn Kurtz, Esquire

Jessica C. Lauria, Esquire

Andrew Hammond, Esquire
Samuel P. Hershey, Esquire
WHITE & CASE LLP
1221 Avenue of the Americas New York, New York 10020
gkurtz@whitecase.com
jessica.lauria@whitecase.com
ahammond@whitecase.com
sam.hershey@whitecase.com

Richard M. Pachulski, Esquire
James E. O'Neill, Esquire
PACHULSKI STANG STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor Wilmington, DE 19801
rpachulski@pszjlaw.com
joneill@pszjlaw.com

Office of The United States Trustee Attn: David Buchbinder, Esquire
J. Caleb Boggs Federal Building 844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801
David.L.Buchbinder@usdoj.gov

Office of The United States Trustee
Attn: David Buchbinder, Esquire
J. Caleb Boggs Federal Building 844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801
David.L.Buchbinder@usdoj.gov

Michael C. Andolina, Esquire Matthew E. Linder, Esquire Laura E. Baccash, Esquire Blair M. Warner, Esquire WHITE & CASE LLP
111 South Wacker Drive Chicago, Illinois 60606 mandolina@whitecase.com
mlinder@whitecase.com
laura.baccash@whitecase.comblair.warner@whitecase.com

Kurt F. Gwynne, Esquire Mark W. Eckard, Esquire
 REED SMITH LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801
kgwynne@reedsmith.com
meckard@reedsmith.com

Thomas Moers Mayer, Esquire
Rachael Ringer, Esquire
Jennifer R. Sharret, Esquire
Megan M. Wasson, Esquire
KRAMER LEVIN NAFTALIS & FRANKEL LLP
177 Avenue of the Americas
New York, NY 10036
tmayer@kramerlevin.com
rringer@kramerlevin.com
jsharret@kramerlevin.com
mwasson@kramerlevin.com