**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| In re: | |
|---|---|
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| | Chapter 11 (Jointly Administered) |
| Debtors. | **RE: D.I. 11532** |

**SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION TO CHANGE ELECTION TO OPT INTO EXPEDITED PAYMENT/CONVENIENCE CLASS OR OTHER NECESSARY RELIEF ON BEHALF OF SURVIVOR CLAIMANT D. S.**

D.S., ("<u>Movant</u>"), by and through his undersigned counsel, hereby submits this supplemental response in support of his motion (the "<u>Motion</u>") for entry of an order allowing Movant to change his election to opt into the expedited payment/convenience class.  In support of the Motion, the Movant respectfully states as follows:

**<u>INTRODUCTION</u>**

On October 11, 2023, D.S. filed his initial Motion.  The Motion was filed shortly after the Trustee opened a portal to be used by claimants to submit materials in support of their claims. Once the Trustee opened the portal, counsel for D.S. discovered for the first time that D.S.'s claim was classified as an expedited payment or convenience class claim limiting the total amount that D.S. would receive for his claim (potentially valued at more than a million dollars) to $3,500.00.

As set forth in the declarations of D.S. and his counsel that were filed in support of his Motion, counsel for D.S. did not advise D.S. to opt into the $3,500.00 convenience/expedited payment class, and D.S. did not intend to opt into that class.  When counsel for D.S. notified the Trustee that D.S. did not intend to be in the convenience/expedited payment class, the Trustee informed him that the Trustee did not have the power to change his classification.  The Trustee's position that it does not have the power to change anything regarding the trust without Bankruptcy

Court approval is consistent with the position that the Trustee took when the Trustee filed a motion with this Court on October 2, 2023, to extend certain deadlines that the Trustee was otherwise obligated to operate under.

D.S. filed his Motion when he did because there were a number of other deadlines that were approaching, and D.S. felt the need to present the issue to the Court as quickly as possible. Notwithstanding the Trustee's own motion to extend certain deadlines under the Trust, on October 27, 2023, the Trustee filed an objection to the Motion of D.S. not only asserting that the Trustee could not unilaterally alter the classification of D.S.'s claim but also asserting that the Trust would somehow be prejudiced by allowing D.S. to correct his mistake of apparently opting into the convenience/expedited payment class when he submitted his ballot to vote on the proposed plan. D.S. filed a reply (the "Reply") in support of his Motion in which he asserted that the Court should evaluate his Motion under the *Pioneer* standard and that the balancing of equities under the *Pioneer* factors weighed heavily in favor of allowing D.S. to correct any mistake made in opting into the convenience/expedited payment class when he submitted his ballot. A hearing was held on November 20, 2023, and at the end of the hearing the Court invited additional briefing.

Presently there is no order adjudicating any aspect of the claim of D.S. However, D.S. did timely file a proof of claim. The current classification of D.S.'s claim is the result of him apparently checking the box opting into the convenience/expedited payment class on the ballot by mistake. While this Court did enter an order approving the form of the ballot on September 30, 2021, and while the ballot did contain a provision allowing claimants to opt into a convenience/expedited payment class, the order approving the form of the ballot was just that (and only that). It approved the form of the ballot and did not adjudicate the rights of any specific claimant. The Confirmation Order also did not adjudicate the rights of any specific claimant. The

Confirmation Order did, however, contain a provision that the Bankruptcy Court retained jurisdiction over all aspects of the case, which would obviously include jurisdiction to adjudicate any specific issue with any claim.

D.S. and the other similarly situated claimants are not sophisticated creditors that are accustomed to advocating for their rights in a bankruptcy proceeding. The claimants suffered unspeakable sexual abuse as children at a time in their lives when they were powerless to prevent it. While almost all of the claimants who are presently before the Court on this issue were represented by counsel, it was generally recognized throughout the confirmation process that the ability of the claimants to cast their own ballots would be an empowering act that could to a certain degree allow claimants to heal and regain some of the power that was taken from them as children.

The ballot, the primary purpose of which was to vote to accept or reject the proposed plan of reorganization, was 23 pages long. The ballot, in addition to containing a provision to vote to accept or reject the plan of reorganization, contained a provision that allowed a claimant to opt into a convenience or expedited payment class and benefit from an early distribution of $3,500.00 without having to undergo a more extensive and intrusive review process. The ballot contained information stating that if one wanted to take advantage of the benefit of the early payment, there was a deadline to opt into the convenience class. There was no language in the ballot stating or implying that an election to opt into the convenience class was final and irrevocable. There was, however, express language in the ballot that allowed a claimant who missed the deadline to opt into the convenience/expedited payment class to later opt into that class provided that court approval was obtained.

**ARGUMENT**

**UNDER THE CANONS OF CONSTRUCTION, D.S. HAS AN ABSOLUTE RIGHT TO CHANGE HIS ELECTION AND OPT OUT OF THE CONVENIENCE/EXPEDITED PAYMENT CLASS**

The goal in construing any writing is to determine the intent of the drafter or the intent of the parties. In this case, the written instrument that requires the Court's interpretation is the ballot. While the ballot that was approved in this case is not a contract per se, it was approved by the Court following negotiations among various constituencies in the bankruptcy case such that the canons for construing contracts would be most appropriate to evaluate the language. The principal canon of construction for any writing is that in attempting to determine the parties' intent one first looks to express or plain language of the instrument. Other relevant canons one looks to are that the contract should be interpreted as a whole and that one should reject any interpretation that leads to absurd results. For the canon of construction that one reads the contract as a whole, *see Kuhn Const., Inc. v. Diamond State Port Corp.,* 990 A.2d 393, 396-97 (Del. 2010) ("We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage."). S*ee also* Restatement (Second) Of Contracts § 203 ("In the interpretation of a promise or agreement or a term thereof, the following standards of preference are generally applicable: (a) an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.") and cmt. b ("Since an agreement is interpreted as a whole, it is assumed in the first instance that no part of it is superfluous.").

For the canon that one would reject an interpretation that leads to an absurd result, *see Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010) ("An unreasonable interpretation [of a contract

is one that] produces an absurd result or one that no reasonable person would have accepted when entering the contract.").

Before looking at the plain language or express language that was used in the ballot, it is important to also consider the context. This is a bankruptcy proceeding, and the issue involves the classification of Movant's claim. Generally, in a bankruptcy proceeding, once a creditor or claimant has timely filed a proof of claim, that creditor or claimant can later amend the proof of claim without restriction.

The plain or express language that was used in the court-approved ballot was that there was a deadline to opt into the convenience/expedited payment class. If one missed that deadline, one could not opt into the convenience/expedited payment class "**UNLESS THE COURT APPROVES OTHERWISE**". *See* pages 3 and 20 of the ballot. In other words, if a claimant wanted to get the benefit of an early distribution, and if the claimant missed the deadline for opting into the convenience/expedited payment class, the claimant could still receive the benefit of an expedited payment, but the claimant would have to petition the Court for leave to be allowed to receive the benefit of an early payment despite missing the deadline.[1]

Additionally, page 20 of the ballot provides as follows:

3. Other instructions for Completing the Ballots:

a.      The Ballot does not constitute and shall not be deemed to be a Proof of Claim or Interest or an assertion or admission of a Claim or Interest.

b.      The Ballot is not a letter of transmittal and **may not be used for any purpose other than to vote to accept or reject the Plan**. (Emphasis added.)

---

[1]   The ballot does not suggest what standard the Court would consider if presented with a request to opt in at a later date, but it is respectfully submitted that the appropriate standard would involve an analysis of the *Pioneer* factors.

The above quoted language suggests that the purpose of the ballot was, just as its title suggests, a ballot to vote to accept or reject the Plan and that its purpose was not to classify claims.  The ballot, by the express language in the instructions, was designed for the sole purpose of voting to accept or reject the plan.  If one wanted to preserve one's right to opt into convenience/expedited payment, one could do so, but the purpose of the ballot, according to this language, was not to determine anything regarding claims.

The court-approved ballot contained no express language preventing a party who timely opted into the convenience class from later opting out, nor did the ballot contain any express language indicating that an election to opt into the convenience class was final and irrevocable. Indeed, the express language in the court-approved ballot does not preclude someone from knowingly opting into the convenience class for the purpose of preserving their right to do so and later opting out.  D.S. did not deliberately opt into the convenience/expedited payment class for the purpose of preserving his right to be in that class.  Instead, the apparent election by D.S. to opt into the expedited payment class was a mistake from the inception.  Nevertheless, the fact remains that the express language in the court-approved ballot does not preclude a claimant's ability to later opt out of that classification even if there was previously a deliberate attempt to opt in.  The silence in the court-approved ballot about the right to later opt out is significant when one considers the fact that there is normally an absolute right to amend one's proof of claim throughout a bankruptcy case.  It is also significant that court approval is required if one wanted to opt into the convenience/expedited payment class at a later date after having missed the deadline set forth in the ballot.

Not only is there no express language in the court-approved ballot that in any way limits one's ability to opt out of the convenience/expedited payment class, it is significant that it would

6

be an exceptionally harsh and absurd result for someone with a claim potentially worth several million dollars to be locked into selecting a $3,500.00 payment in satisfaction of a significant claim, especially if the election to opt in was made by mistake.

Moreover, the ability to opt into a convenience or expedited payment class can only be viewed as a *benefit* to the claimants. The ability of a claimant to opt into this class can only be done by an affirmative act, and the claimants opting into this classification get the benefit of an early distribution and the benefit of going through a less onerous, less intrusive, and less expensive review process. This would explain why there was a deadline to opt into the convenience class and why there is silence as to opting out of the convenience class. If claimants wanted the benefit of an early distribution, they would have to affirmatively select it, but if they did not want the benefit, nothing was required. If nothing is required to not be in the convenience/expedited payment class, there would be no need for the court-approved ballot to contain any express language about opting out because it would not be necessary. Logically, if a claimant does not want the benefits that come from being in the convenience/expedited payment class, all that claimant should have to do is confirm that they do not want to be in the convenience/expedited payment class, even if at an earlier point in time they indicated otherwise. Moreover, it would be an absurd result for a claimant who inadvertently checked a box to receive a *benefit* to forever be precluded from pursuing the true value of his claim, especially when the claimant communicates that he does not want that benefit. It would also be an absurd result to find that the election at the time that the ballot was submitted of any claimant to opt into the convenience/expedited payment class was final and irrevocable when the claimants still needed to take further steps to obtain the $3,500.00 payment such as executing an actual release. The effect of checking the box expressing a desire to receive the $3,500.00 expedited distribution did serve the purpose of informing the

Trustee of those parties that the Trustee needed to contact in order to obtain a release and other documents needed to complete the expedited payments but should not be construed to as a final and irrevocable election.

## THE BANKRUPTCY COURT HAS BOTH THE JURISDICTION AND THE AUTHORITY TO RENDER EQUITABLE RELIEF

The Bankruptcy Court clearly has subject matter jurisdiction over the Motion, as paragraph 74 of the Confirmation Order expressly provides that this Court retains jurisdiction over all aspects of the bankruptcy case and the Plan. Additionally, this Court, as any other court, also has inherent equitable powers to render justice in this matter. *See Gumbel v. Pitkin*, 124 U.S. 131 (1888) ("So the equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustice, are inherent and equally extensive and efficient, as is also their power to protect their own jurisdiction and officers in the possession of property that is in the custody of the law."). While this Court does have inherent equitable powers to render justice in this matter, D.S. is not suggesting and has never suggested that this Court or any other court should arbitrarily make up a new standard in an effort to render justice.  There is no need to create some kind of new standard when *Pioneer* establishes the factors that one considers when one is balancing the equities in a bankruptcy proceeding to determine whether equitable relief is appropriate.

## THE COURT SHOULD APPLY THE *PIONEER* FACTORS IN BALANCING THE EQUITIES

In *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380 (1993), the Supreme Court held that a creditor who missed the proof of claim bar date should be allowed to file a late proof of claim because the creditor had established excusable neglect.  While this case does not involve a late-filed proof of claim (as D.S. did timely file a proof of claim), and

while D.S. submits that, based upon a review of the language in the ballot, he has an absolute right to correct the mistake of opting into the convenience/expedited payment class and opt out of that class, the factors of *Pioneer* are relevant to any balancing of equities in a bankruptcy proceeding.

Not only are the factors that the Supreme Court considered in *Pioneer* relevant for balancing the equities, but some of the specific facts of *Pioneer* are also relevant to the analysis that is now required.  As an initial matter, it should be noted that the election to opt into the convenience/expedited payment class was provided for in a document that was entitled "BALLOT FOR CLASS 8 (DIRECT ABUSE CLAIMS)" with instructions that read: "The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan."  While D.S. was represented by counsel at the time, the ballot was completed personally by D.S. and not his counsel.  D.S. is not a sophisticated creditor but rather is a survivor of sexual abuse.  It was generally acknowledged throughout the process that it was psychologically and emotionally important for all survivors to be able to personally cast their own ballot to assist, to the extent possible, in their healing process.  By casting a ballot to vote on the acceptance or rejection of the Plan, D.S. did not intend to opt into the convenience/expedited payment class and certainly did not intend to limit his recovery to $3,500.00.  D.S.'s confusion over the ballot in this case is analogous to the facts in *Pioneer* where the creditor's attorney misread a notice and failed to see the deadline for filing proof of claims.  The Supreme Court noted:

> [The] Court of Appeals also found 'it significant that the notice containing the bar date was incorporated in a document entitled "Notice for Meeting of Creditors."' 'Such a designation,' the court explained, 'would not have put those without extensive experience in bankruptcy on notice that the date appended to the end of this notice was intended to be the final date for filing proof of claims.' Indeed, based on a comparison between the notice in this case and the model notice set out in Official Bankruptcy Form 16, the court concluded that the notice given respondents contained a 'dramatic ambiguity,' which could well have confused 'even persons experienced in bankruptcy.'

*Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship.*, 507 U.S. at 386-87.

Under a *Pioneer* analysis, "omissions caused by carelessness" constitute neglect, and an equitable determination should be made to consider excusable neglect looking at all relevant circumstances. *Id.* at 388. Under the Supreme Court's four-part test to determine excusable neglect, the Court is to look at "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the control of the movant, and whether the movant acted in good faith." *Id.* at 395. D.S. submits that those same factors are the factors that any bankruptcy court would consider in determining whether to award equitable relief under an excusable neglect standard, a Rule 60 standard, or any other standard.

**SEEKING RELIEF FROM INADVERTENTLY CHECKING THE OPT-IN BOX IN THE BALLOT, RESULTING IN THE CLASSIFICATION OF A POTENTIALLY VERY VALUABLE CLAIM TO A SIGNIFICANTLY REDUCED AMOUNT OF $3,500.00, IS ANALOGOUS TO SEEKING RELIEF FROM AN ORDER DISALLOWING A CLAIM UNDER BANKRUPTCY RULE 3008**

D.S. is unable at this time to bring a motion under Bankruptcy Rule 3008 for relief from an order disallowing his claim for the simple reason that there is no order disallowing, reclassifying, reducing, or otherwise adjudicating his claim in any fashion. Without casting any aspersions on the Trustee, what D.S. is seeking relief from is a determination made by the Trustee that D.S.'s claim should be classified as a convenience/expedited payment class claim that is limited to a recovery of $3,500.00 and that the Trustee does not have the authority to allow D.S. to change this election.

As set forth above, D.S. believes that he has an absolute right to have his claim reclassified and that it is improper to limit his recovery to $3,500.00 regardless of how the ballot was completed, just like he has a right to amend a timely filed proof of claim. D.S. also believes that

even if he does not have an absolute right to reclassify his claim, he is entitled to equitable relief

from this Court to correct a mistake he made in opting into the convenience/expedited payment

class when he was completing to his ballot to vote on the acceptance or rejection on the Plan.

But for the fact that there is no court order disallowing, reclassifying, reducing, or

otherwise limiting his claim, seeking equitable relief to correct a mistake in completing a ballot

which the Trustee has determined is an irrevocable decision that limits one's recovery to $3,500.00

is analogous to seeking relief from order disallowing a claim under Bankruptcy Rule 3008.

As undersigned counsel noted at the prior hearing, seeking relief from an order disallowing

a claim involves a *Pioneer* analysis.  *See Pro-Tec Services, LLC v. Inacom Corp*., 2004 LEXIS

20822 (D. Del. 2004).  In *Pro-Tec*, Judge Sleet allowed a claim that had been disallowed to be

reinstated using the excusable neglect standard (and notably rejecting a hypothetical "floodgates"

argument).  To be clear, the parties in *Pro-Tec* both took the position that the analysis should be

undertaken using the excusable neglect standard, and the court found that the claimant had

established excusable neglect.  Other courts have held that the standard to be used under Rule 3008

should be a less onerous standard.  In *In re Cassell*, 206 B.R. 853 (Bankr. W. Dist. Va. 1997), the

court held that a movant merely had to establish "cause" as opposed to excusable neglect:

> The "cause" standard of § 502(j) is not identical to the more stringent "excusable
> neglect" standard of Fed. R. Civ. P. 60(b). <u>Thompson v. E.I. DuPont De Nemours
> & Co.</u>, 76 F.3d 530, 532-34 (4th Cir. 1996). Nevertheless, the factors considered in
> an excusable neglect analysis "are likely applicable to a cause analysis." <u>Cassell v.
> Shawsville Farm Supply, Inc.</u>, 208 Bankr. 380, 1996 U.S. Dist. LEXIS 20801, *9,
> No. 96-0002-R, (W.D. Va. May 16, 1996).

*Id.* at 856.

While the *Cassell* court found that the claimant was not required to establish excusable

neglect, it nevertheless, without citing directly to *Pioneer*, looked to the *Pioneer* factors in

determining whether the movant had established "cause" considering the following factors: "(1)

whether granting the delay will prejudice the debtor or other creditors; (2) the length of the delay and its impact on efficient court administration; (3) whether the delay was beyond the reasonable control of the person whose duty it was to perform; (4) whether the creditor acted in good faith; (5) whether clients should be penalized for their counsel's mistake or neglect; and (6) whether the claimant has a meritorious claim." *Id.* (quoting *In Re Resources Reclamation Corp. of America*, 34 B.R. 771 (B.A.P. 9th Cir. 1983)).

In *In re Leroux,* 216 B.R. 459 (Bankr. D. Mass. 1997), the court noted that various courts have adopted slightly different standards when presented with a motion under Rule 3008 to reconsider an order disallowing claims, noting further that some courts have adopted a slightly more lenient standard if the motion to file is made within ten days of entry of the order disallowing the claim:

> Many courts have held that although there is no deadline for filing a motion for reconsideration under § 502, if the motion is filed within 10 days of the order, it should be decided pursuant to the standards under Fed. R. Bank. P. 9023. *Abraham v. Aguilar (In re Aguilar)*, 861 F.2d 873 (5th Cir. 1988); *Tandy Credit Corp. v. Martinez (In re Martinez)*, 179 B.R. 90, 27 Bankr. 601 (Bankr. N.D. Ill. 1994). *But see In re Farley Inc.*, 211 B.R. 889, 892 (Bankr. N.D. Ill. 1997)(treating motion for reconsideration filed after 10 days under Rule 9023); *In re Excello Press, Inc.*, 83 B.R. 539, 541 (Bankr. N.D. Ill. 1988)(Rule 60 and not 59 applies to reconsideration of claims). That rule provides that "Rule 59 F.R.Civ.P. applied to cases under the Code, except as provided in Rule 3008." The applicable portion of Rule 59 of the Fed. R. Civ. P. provides as follows:
>
> > (a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues . . . (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States….
>
> Fed. R. Civ. P. 59(a).
>
> Likewise, courts have held that if the motion for reconsideration is filed after 10 days of the order then the motion must be decided under Fed. R. Bankr. P. 9024. *In re FERCO Fabricators, Inc.*, 153 B.R. 40 (Bankr. E.D. Mo. 1993); *In re Wash. County Broad. Inc.*, 39 B.R. 77 (Bankr. D. Me. 1984). *But see United States v. Motor Freight Exp. (In re Motor Freight Express)*, 91 B.R. 705 (Bankr. E.D. Penn. 1988)("We believe that B. Rule 9023 applies generally to motions to reconsider

claims, and that the only effect of the language added in B. Rule 9023 is to eliminate the 10-day limitation period for serving such a motion included therein.").

*Id.* at 463.

Ultimately, the *Leroux* court took a pass in determining what the correct standard should be under a Rule 3008 motion, finding that the movants in that case had met the most exacting standard under Rule 60(b):

> I find that by applying even the strictest standard, Fed. R. Civ. P. 60(b), reconsideration is warranted. I will start by applying Fed. R. Civ. P. 60(b)(1) and decide whether the Creditors' failure to respond to the Amended Objection was the result of excusable neglect.

> The Supreme Court has cited the following five factors with approval in determining whether excusable neglect is present: (1) danger of prejudice to the debtor; (2) the length of delay and it potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; (4) whether the movant acted in good faith; and (5) whether the clients should be penalized for the mistakes of their counsel. *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 395, 123 L. Ed. 2d 74, 113 S. Ct. 1489 (1993). The Court further cautioned that "we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the parties omission. *Id.*

*Id.* at 464.

Again, while D.S. cannot bring his request under Rule 3008 because at the present time there is no court order classifying, reclassifying, reducing, or otherwise limiting his claim, there has been a determination made by the Trustee that D.S.'s claim must be limited to $3,500.00 and treated as a convenience/expedited payment, which at this point in time has the same practical effect as an order disallowing or reducing his claim to $3,500.00. As such, unless the Court were to agree that D.S. has an absolute right to change the election to opt into the convenience/expedited payment class just like he would generally have a right to amend his timely filed proof of claim, a Rule 3008 analysis is an appropriate analysis.

Without deciding what is the correct standard to use under Rule 3008, the *Leroux* Court found that the movants had met the most exacting standard of excusable neglect. D.S. submits

13

that like the movants in *Leroux*, he has met the most exacting standard of excusable neglect. Looking to the factors that were set forth in *Pioneer* needed to establish excusable neglect, starting with the danger of prejudice to the Debtor, simply stated, the arguments that the Trustee has proffered regarding prejudice demonstrate no prejudice whatsoever.  A similar argument was made in *Leroux* regarding a potential dilution of funds available to pay other creditors and was rejected:

> The Debtor contends, however, that reconsideration will greatly prejudice other creditors by causing additional administrative expense in litigating the claims of the Creditors and by diverting money away from creditors who adequately defended their claims. I disagree. The Creditors' claims are being resolved by this decision. Further, while it is true that other creditors would receive a greater distribution were it not for these claims, they have not filed any pleadings on their own behalf and in fact, the Committee supports reconsideration. **Moreover, there was no distribution at the time of the filing of the motions for reconsideration**. Lastly, as was pointed out by the court in *Resources Reclamation*,
>
>> Where no dividends have been paid, the **mere fact that allowance of a claim would dilute dividends which would otherwise be paid is not the type of injury that should result in disallowance of the claim . . . '[if reconsideration is not allowed] other creditors will receive a windfall to which they are not entitled on the merits. If [reconsideration is allowed], the Bank will receive no more than its fair and proper share pari passu with the other unsecured creditors**.' *In re Resources Reclamation Corp. Of America*, 34 B.R. 771, 773 (B.A.P. 9th Cir. 1983)(citing *In re Gibralter Amusements, Ltd.*, 315 F.2d 210 (2nd Cir. 1963).

*Id.* at 465 (emphasis added).

The other *Pioneer* factors similarly weigh in favor of D.S.  The length of delay in attempting to correct the mistake of opting into the convenience/expedited payment class has no real impact on these proceedings.  No distributions had been made at the time that the Motion was filed, and if D.S. is allowed to opt out of the convenience/expedited payment class, he would simply be treated as every other claimant who is participating in the claims reconciliation process. Moreover, none of the claimants who are seeking relief from inadvertent opting into the convenience class have had their claims reviewed for approval by the Trustee at this time.  The

resetting of Price Waterhouse's system and the Trustee's team's review of a regular claim form instead of processing an expedited payment is not prejudice under the rationale that the *Leroux* court adopted and to the extent that is somehow prejudicial it does not overcome the prejudice to which these claimants will be subjected should a ballot used to vote for or against a plan now be used to lock them into an expedited claim.

While the ballot was submitted years ago, it was only recently discovered that D.S. had mistakenly opted into the convenience/expedited payment class.  It was not possible for D.S. to have discovered this earlier because the Trustee only just recently opened the portal.  D.S. acted promptly upon discovering the mistake.

D.S. has acted in good faith.  To the extent that the Court finds that a decision to opt into the convenience/expedited payment class should be viewed as a final and irrevocable decision, D.S. should not be penalized for making a mistake given that there was no express language informing D.S. of the finality or irrevocability of his election in the ballot, and if the ballot is interpreted in such a way, then the ballot is confusing.  Moreover, D.S. should not be penalized for completing the ballot himself as opposed to having counsel complete the ballot on his behalf.  D.S. and the other abuse claimants are not typical or sophisticated creditors.  They are victims of sexual abuse, and the act of having each claimant complete their own ballot was intended to be part of the healing process as opposed to a trap for the unwary.  If D.S. is denied the opportunity to rescind the decision to opt into the convenience/expedited payment class, the magnitude of his punishment would be very severe.  Counsel for D.S. values his claim to be worth several million dollars and it would be inequitable in the extreme for D.S. to now have his claim limited to $3,500.00 based upon his confusion in competing a ballot, which ballot expressly stated that it was for the sole purpose of voting on the plan.

15

**D.S. JOINS IN AND ADOPTS THE ARGUMENT OF OTHER CLAIMANTS SEEKING SIMILAR RELIEF**

D.S. joins in the arguments raised by other similarly situated survivor claimants and incorporate by reference those arguments herein.

## <u>CONCLUSION</u>

When counsel was first advised that D.S. needed to petition the Court for expedited relief to correct a mistake that D.S. made in completing his ballot to vote whether to accept or reject the plan, the approach was to request that this Court grant D.S. relief from that mistake and to do so as quickly as possible. In hindsight and upon further review of the language used in the ballot, D.S. submits that even though he did make a mistake in completing the ballot, he has an absolute right to change his election just like he would have the right to amend a timely filed proof of claim. The ballot does not state that the election to opt in is final and irrevocable. The ballot does provide that there is a deadline to opt into the convenience/expedited payment class and that if one were to miss the deadline to receive this benefit, then one would have to get court approval to opt in at a later date. Taken as a whole, the ballot cannot be read to make the inadvertent decision to opt in final and irrevocable, and it would be an absurd result to allow a party to seek court approval for a late request to receive the benefit of an early distribution but not permit relief to allow a claimant to opt out. To the extent that court approval is needed in order for a claimant to opt out, this Court should balance the equities and consider, among other things, the *Pioneer* factors. Balancing the equities and a consideration of the *Pioneer* factors mandates that D.S. not be punished for making a mistake in completing his ballot and attempting to correct that mistake before any distributions were made.

WHEREFORE, Movant requests that he be permitted to modify his ballot, in which he mistakenly opted into the $3,500.00 expedited payment/convenience class, in order to retract that

election and fully participate in the Standard Review or the Independent Review Option available under the Plan and to provide Movant such other relief as is just and proper.

Dated:  December 8, 2023

GELLERT SCALI BUSENKELL & BROWN LLC

*/s/ Charles J. Brown, III*
Charles J. Brown, III (DE 3368)
1201 N. Orange Street, 3rd Floor
Wilmington, DE 19801
Phone: 302-425-5813
Fax: 302-425-5814
Email: cbrown@gsbblaw.com

*Counsel for D.S.*

*Of Counsel:*

Tyler H. Fox, Esq.
(MA BBO #176860)
135 Antrim Street, Suite #2
Cambridge, MA 02139
Phone: (857-260-3105)