## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Re: D.I. 11552 |

### SUPPLEMENT TO MOTION TO CHANGE ELECTION TO OPT INTO EXPEDITED PAYMENT/CONVENIENCE CLASS

AVA Law Group, Inc. ("AVA"), on behalf of certain of its clients (the "Claimants") identified in AVA's previously filed 2019 statement [D.I. 7447], by and through undersigned counsel, hereby submits this supplement in support of its *Motion to Change Election to Opt Into Expedited Payment/Convenience Class* [Docket No. 11552] (the "Motion") and respectfully states as follows:

1.　As more fully described in the Motion, Claimants are sexual abuse survivors, all of whom filed Sexual Abuse Survivor Proofs of Claim in these bankruptcy proceedings prior to the bar date, and mistakenly checked a box indicating an election to receive an expedited distribution of a one-time cash payment from the Settlement Trust in the amount of $3,500.00.

2.　On November 20, 2023, the Court held a hearing on the Motion, as well as several similar motions filed on behalf of similarly situated claimants. At the conclusion of the hearing, the Court indicated that it would allow parties to provide additional legal argument in support of their positions and in response to the Court's questions at the hearing.

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

3.  As was evident at the hearing, the situation at hand is unique and there is limited authority to guide the Court in determining whether it has the ability to allow claimants to change their convenience class election. However, the Court could look to Section 105, Rule 60, or the relevant plan documents to aid it in making its decision.

## THE PLAN DOCUMENTS

4.  As an initial matter, we can disregard the Trustee's argument that she does not have authority to change the elections as the Claimants are seeking authority from the Court which does have such authority. The Trust Distribution Procedures for Abuse Claims ("TDP"), adopted pursuant to the Settlement Trust Agreement and the Debtors' Third Modified Fifth Amended Chapter 11 Plan or Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC (the "Plan") [Doc 10296], provide express and unequivocal authority for the Court to amend the TDP procedures in a manner which would provide the relief requested by the Claimants.

5.  The TDP authorizes the Court, after appropriate notice and a hearing, to make changes to the Trust Distribution procedures, including authorizing Expedited Distribution elections to be rescinded, revoked or changed. Both the TDP and the Plan provide for amendments and modifications to be made to the TDP, which (where material) may be made at the direction of the Court following notice and an opportunity to object. See TDP, Article XIV(B) ("Notwithstanding the foregoing, absent Bankruptcy Court or District Court approval after appropriate notice and opportunity to object notwithstanding the foregoing," the TDP may be amended.)

6.  The Plan proponents expressly contemplated that a change to the Expedited Distribution procedure might be necessitated by unfairness or injustice associated with the ballot

deadline. In their illustrative and *non-exclusive* list of changes that might be considered "material" for purposes of Court approval, they included "to add an opportunity to make an Expedited Distribution Election for a claim represented by a Chapter 11 POC after the Voting Deadline additional election opportunities to parties after the ballot deadline had passed." *Id*.

7.  The Claimants therefore submit that their Motion and the related notice constitute the requisite "notice and opportunity to object" for TDP amendment purposes, and that the Court may and should direct amendment of the TDP in order to permit Claimants to revoke and rescind their ballot elections of an Expedited Distribution so that they can instead be treated under the normal, non-expedited procedures.  The purpose of the expedited procedure election was to provide a benefit to the Claimants, who are now being punished for accidentally choosing such benefit which they seek to revoke.  In furtherance of their intended goal, they filed the Motion, the Trustee objected, and the Court held a hearing.  Thus, under the TDP, the Court has authority to make the requested change.

## FEDERAL RULE OF CIVIL PROCEDURE 60

8.  Under Federal Rule of Civil Procedure 60(b), the Court can grant the relief requested by the Claimants due to mistake, inadvertence, surprise, or excusable neglect or "*any other reason that justifies relief.*"  The extraordinary circumstances of this case warrant relief under either rule 60(b)(1) or rule 60(b)(6) and section 105.

9.  A motion for relief from an order or judgment pursuant to Rule 60(b) is within the discretion of the court. *Nemaizer v. Baker,* 793 F.2d 58, 61-62 (2nd Cir. 1986). "Properly applied, *Rule 60(b)* strikes a balance between serving the ends of justice and the preserving the finality of judgments." *Id.* at 61; *see* also *Paddington Partners v. Econocom,* 34 F.3d 1132, 1144 (2nd Cir. 1994) (Rule 60(b) "preserves a balance between serving the ends of justice and ensuring that

litigation reaches an end within a finite period of time"); *In re AL & LP Realty Co., 164 B.R. 231, 234 (*Bankr. S.D.N.Y. 1994) (Rule 60(b) is "intended to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done"). Further, the grounds for granting relief under Rule 60(b) include "the need to correct clear error of law *or to prevent manifest injustice.*" *See Procter & Gamble Co. v. Paragon Trade Brands, Inc*., 15 F. Supp. 2d 406, 409 (D. Del. 1998) (emphasis added).

10. At the November 20th hearing, the Court asked whether or not the intended irrevocable nature of the Expedited Distribution election was stated clearly, such that Claimants should have known of it at the time of their elections. While it is true that the contemplated irrevocability of the election can be found in the voluminous Plan and Disclosure Statement, there is no reference whatsoever to irrevocability in the 32-page long Ballot. The word "irrevocable" does not appear at all. The Ballot refers to the Expedited Distribution election as an option, and it provides elsewhere that the option would be conditioned upon a release (the language of which was not set forth in the Ballot). The Ballot, the essential document on which the Claimants acted, did not state or even imply that the election would be, or was intended to be, irrevocable. So, even if the Claimants knew of their mistake prior to the one-year period proscribed by Rule 60, there was no way for them to know of the irrevocability of their decision until they were informed of same by the Trustee.[2]

11. As Claimants' counsel indicated at the hearing, even if some claimants knew about their mistaken election, since there was no clear indication that such election was irrevocable, there was no reason for the Claimants to know that they could not change their election until they were

---

[2] Equitable tolling applies to Rule 60(b) motions when there is "some other extraordinary grounds for relief." *See Seitzinger v. Reading Hosp. & Med Ctr.,* 165 F.3d 236, 240 (3d Cir. 1999).

told so by the Trustee. In fact, Claimants counsel reached out to the Trustee several times prior to filing the Motion to enquire about how the election could be changed but did not receive a timely response. *See* Declaration of Andrew Van Arsdale in Support of Motion to Change Election to Opt Into Expedited Payment/Convenience Class, attached hereto as Exhibit A. So, the facts support a finding that the one-year limitation under rule 60(b)(1) should be held to have been equitably tolled until the Settlement Trustee distributed the questionnaires through the Trust portal in or about September 2023.

### 11 U.S.C. § 105

12.  Section 105 of the U.S. Bankruptcy Code, titled "Power of Court," is often cited and used as a "catch-all" provision when requesting certain relief or when a bankruptcy court enters an order granting (or denying) certain relief not prescribed by a particular provision of the Bankruptcy Code. That section provides that a "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title . . . [and nothing shall] preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent abuse of process." 11 U.S.C. § 105(a).

13.  Bankruptcy courts are courts of equity and, as such, may exercise general equitable powers in a manner consistent with the Bankruptcy Code. See United States v. Energy Res. Co., Inc., 495 U.S. 545, 549 (1990) (noting the "traditional understanding that bankruptcy courts [are] … courts of equity"); Katchen v. Landy, 382 U.S. 323, 336 (1966) ("[T]he proceedings of bankruptcy courts are inherently proceedings in equity."); Pepper v. Litton, 308 U.S. 295, 305 (1939) (bankruptcy courts' equitable powers "have been invoked to the end that fraud will not

prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done").

14.     Congress, moreover, expressly granted bankruptcy courts the broad power to issue "any order … that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. 105(a).  That role is consistent with the historical understanding that, "[i]n the exercise of its equitable jurisdiction the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate." Pepper v. Litton, 308 U.S. 295, 307-308 (1939).  See also 2 Collier on Bankruptcy, supra, ¶ 105.01[2], at 105-8.1 ("The equitable origins of the bankruptcy power suggest substantial leeway to tailor solutions to meet the diverse problems facing bankruptcy courts. Section 105 gives the bankruptcy court the power to fill in gaps and further the statutory mandates of Congress in an efficient manner.").

15.     Here, the Claimants did not intend to elect to receive the expediated distribution of $3,500 as full satisfaction of their claims and they have not received nor accepted the $3,500 expedited distribution.

16.     These Claimants have waited decades to get to this point of accountability and some semblance of justice.  These men are begging for the chance to put their truth, their narrative, their tragic story in front of the trust.  These Claimants each recognized their error, contacted AVA at the time, signed an affidavit saying they did not intend to elect that option, and are looking for equitable compensation for what they are eligible to receive.  These Claimants have done everything in their power to correct their errors – errors that were caused by a long and confusing ballot.  If the Claimants are limited to a $3,500 distribution, they will be greatly prejudiced and the Court should exercise its equitable powers to avoid this injustice.

17. It is also important to observe that the relief requested by Claimants would not materially prejudice the Trustee or the overall implementation of the Plan and the TDP. The Plan's consummation is in its infancy and the minimal administrative burdens associated with the requested change are substantially outweighed by the enormous benefits of correcting injustice and assuring fairness in the treatment of the sexual abuse survivors. The Claimants recognize that the Trustee is a fiduciary and is attempting to meet her fiduciary duties, but she also has a duty to the Claimants and fighting the Claimants' efforts to fix their mistakes does not benefit anyone.

## JOINDER

18. AVA respectfully joins in and incorporates the arguments made by all other similarly situated claimants to the extent that they do not conflict with AVA's arguments herein.

WHEREFORE, AVA respectfully requests that the Claimants be permitted to modify their ballots to opt out of the $3,500 expedited payment/convenience and provide such other and further relief as is just and proper.

Dated:  December 8, 2023

**CROSS & SIMON, LLC**

*/s/ Kevin S. Mann*
Kevin S. Mann (No. 4576)
Christopher P. Simon (No. 3697)
1105 North Market Street, Suite 901
Wilmington, DE 19801
Telephone:  (302) 777-4200
csimon@crosslaw.com
kmann@crosslaw.com

*Counsel for AVA Law Group, Inc.*