IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>Debtors. | Case No. 20-10343<br><br>Chapter 11<br>(Jointly Administered)<br><br>**Related Docket Nos.: 11570, 11616** |

**BRIEF IN SUPPORT OF MOTION TO CHANGE ELECTION FROM EXPEDITED
PAYMENT/CONVENIENCE CLASS AND OTHER
<u>NECESSARY RELIEF ON BEHALF OF SURVIVOR CLAIMANT J.D.</u>**

J.D. ("Movant"), by and through his undersigned counsel, hereby respectfully files his Brief in Support of his Motion to Change Election from Expedited Payment/Convenience Class and Other Necessary Relief (the "Motion").

<u>**BACKGROUND**</u>

Movant is a sexual abuse survivor who filed a Sexual Abuse Survivor Proof of Claim on or about November 12, 2020, and was designated as Claimant SST# 908123. He has Tier 1 claim (the highest value claims under the Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America Effective April 19, 2023 (the "Plan")). After applying the Plan's scaling factors, it is expected that his allowed claim will be among the highest valued survivor claims.

The Plan provides Class 8 Claimants (sexual abuse survivors) with three options for determining their allowed claims. First, they could elect to receive a $3,500 expedited distribution by checking one box on the twenty-three page ballot for Class 8 (the "Election"). Second, they could proceed with the Settlement Trust's Standard Review. Finally, they could choose the Independent Review Option which involves a mini-trial conducted by a neutral former judge. The

{C1293650.1}                                                   1

latter two options were not part of the ballot that Movant electronically submitted on November 27, 2021. See, Ex. 1 to Movant's Motion to Change Election (D.I. 11570).

The ballot provided to Class 8 Claimants is a complex document consisting of twenty-three (23) pages. Ex.1 at D.I. 11570. Movant electronically filed the Class 8 ballot himself via the E-Ballot Platform identified in the Solicitation Procedures approved on September 30, 2021. He did not utilize the master ballot process. On his ballot, Movant checked a box in which he voted to accept the Plan offered at that time for a vote, but he also mistakenly checked a box in which he made the Election.

Movant did not intend to make the Election. It simply was a mistake given the complexity of the ballot. He and his counsel discussed the fact that his claim had an expected high value. They never discussed the $3,500 expedited distribution or the Election. Movant's counsel never advised Movant to elect the expedited distribution, nor would he ever have done so given the high value of Movant's claim. See, Declaration of Movant (Ex. 2 at D.I. 11570) and Declaration of Timothy C. Hale, Esq. (Ex. 3 at D.I. 11570). Movant has neither received nor accepted the $3,500 expedited distribution. Furthermore, Movant has not filled out the Trust's Expedited Distribution Claims Questionnaire for expedited distribution claimants.

Given his electronic ballot submission, neither Movant nor his attorneys were aware of the possibility of the mistaken Election until his attorneys gained access to the Settlement Trust's portal. As soon as counsel learned that the Trust listed Movant as having made the Election, they sought verification of the mistaken Election from the Trust. After six weeks, they finally received the verification and promptly filed the Motion.

The topic of the expedited distributions and the Election was discussed extensively at hearings held on September 28 and 29, 2021 (the "September 2021 Hearings") which occurred as

the parties were finalizing terms of the Debtors' Disclosure Statement and Solicitation Procedures. Ultimately, it was decided that the only opportunity to make the Election would be through the balloting process. September 28, 2021 Hr'g Tr. Pgs. 210-235.  Also at the September 2021 Hearings, the parties agreed that Class 8 Claimants should be given the ability to opt-out of the Election after the voting deadline.  At a minimum, no one objected to the concept.  September 29, 2021 Hr'g Tr. Pgs. 102:2-23.  Ultimately the final versions of the Plan, Disclosure Statement, Settlement Trust Agreement and Trust Distribution Procedures (collectively, the "Plan Documents") are silent on the ability of Class 8 Claimants to change their Election.  Nothing in the record of the case explains why those provisions are not in the Plan Documents or indicates any parties had changed their minds about the fairness of such a provision.

In her various oppositions to the Motion and similar motions filed by Class 8 Claimants, the Trustee argues that: (a) the Plan Documents do not permit Class 8 Claimants to change the Election, (b) she does not have the authority to change the Election, and (c) allowing survivors to change their Election will create logistical problems and administrative burdens for the Trust.

**RELIEF SOUGHT**

Movant respectfully requests that this Honorable Court exercise its jurisdiction under the Confirmation Order and the Plan and its authority under Section 105(a) of the Bankruptcy Code to enter an order of Court either: (a) allowing Movant to rescind or retract the Election and pursue his claim through the Standard Review Process or the Independent Review Option or (b) directing the Trustee to amend the Trust Distribution Procedures (the "TDP") to allow Class 8 Claimants to rescind or retract their Elections and pursue their claims through the Standard Review Process or the Independent Review Option.

**ARGUMENT**

In addition to jurisdiction authorized by statute, this Court has broad jurisdiction with regard to the issues at hand as set forth in the Plan and the Supplemental Findings of Fact and Conclusions of Law and Order Confirming the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (the "Confirmation Order"). The Confirmation Order at paragraph 74 provides that "the Court retains exclusive jurisdiction over all matters arising from and relating to the Chapter 11 Cases, the Plan…, the Confirmation Order to the fullest extent permitted under the Bankruptcy Code."

Article XI of the Plan specifically addresses the retention of jurisdiction by this Court, stating that "the Bankruptcy Court shall retain the fullest and most extensive jurisdiction that is permissible, including the jurisdiction necessary to ensure the purposes and intent of the Plan are carried out." Art. XI.A. Additionally, the Plan notes that "the Bankruptcy Court shall also retain jurisdiction for the purpose of classification of any Claims and the re-examination of Claims." Art. XI.B. Furthermore, the Plan provides that, "**the Bankruptcy Court shall retain jurisdiction** over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan, **including jurisdiction to** . . . modify the Plan after Confirmation pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules" and **"correct any defect, cure any omission,** reconcile any inconsistency **or make any other necessary changes or modifications in or to the Plan, the Trust Documents or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan[.]"** Plan, Art. XI.C.1, 2 (e*mphasis added*).

As stated above, this Court specifically retains jurisdiction to correct any defects, cure any omission and/or make any other necessary changes or modifications to the Plan Documents (including the TDP) or the Confirmation Order. Moreover, the Plan specifically gives this Court

jurisdiction over the classification and re-examination of claims. Arguably, the failure to include the ability for Class 8 Claimants to change their Election is an omission in the Plan Documents. As noted, the true parties-in-interest were either in favor of the opt-out option or had no objection to it. For some reason, that provision did not make it into the Plan Documents while nothing in the record in this case reflects a change in position by any parties-in-interest.

However, even if it cannot be firmly established that the absence of the opt-out is an omission, the Court still has jurisdiction to "make any changes or modifications necessary to carry out the purposes of the Plan [.]" The Debtors made it clear throughout the case that one of their two primary objectives was to maximize compensation for survivors. This is consistent with the solicitation version of the Debtors' Amended Disclosure Statement which states that "(t)he Plan has been designed to maximize and expedite recoveries to Abuse Survivors." D.I. 6445 at page 8. In fact, maximizing recoveries for survivors had been one of the two stated priorities of BSA since the beginning of bankruptcy case. The Informational Brief filed by the Debtors on the Petition Date states "the Debtors are committed to supporting victims by designing and executing a value-maximizing global resolution of abuse claims in these chapter 11 cases". D.I. 4 at page 9.

The Trustee echoed these sentiments in her August 4, 2023 letter to claimants, "I want you to know that my team and I understand that the experience of survivors of childhood sexual abuse is heartbreaking, tragic, and life-altering. Every member of this team is committed to working on your behalf to maximize the funds available for compensation and to evaluate every claim with compassion and integrity while ensuring your privacy throughout this process. We cannot undo the harm you suffered, but we are resolute in helping you achieve some measure of justice." Hon. Barbara J. Houser (Ret.), Processing Portal Launched for Initial Claims, www.scoutingsettlementtrust.com.

The Court has broad jurisdiction to deal with the issues raised here, and Section 105(a) provides the Court with the specific statutory authority to do so. Section 105 permits courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Code]." 11 U.S.C. § 105(a). The Third Circuit has construed this provision to give bankruptcy courts "broad authority" to provide equitable relief. See, e.g., *In re Combustion Engineering, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) and to "craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain," *Official Committee of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery,* 330 F.3d 548, 568 (3d Cir. 2003) (en banc). Bankruptcy courts are courts of equity, therefore, they may exercise general equitable powers in a manner consistent with the Bankruptcy Code. *United States v. Energy Res. Co., Inc.*, 495 U.S. 545, 549 (1990).

Granting the relief sought is necessary and appropriate to carry out the provisions of the Bankruptcy Code. Chapter 11 is designed to provide a mechanism for confirmation of a plan in accordance with the stated intent and purpose of the debtor. Here, the Plan was proposed by the Debtors for the purpose of maximizing recoveries to survivors of sexual abuse. Not allowing survivors to change their Election creates a situation where their claims will be reduced exponentially simply because of a mistake in filling out a lengthy, confusing ballot. Such a result would not only be contrary to the intent and purpose of the Plan but would constitute a grave injustice. *In re Dunckle Assocs., Inc.*, 19 B.R. 481, 486 (Bankr. E.D. Pa. 1982) (Section 105(a) "should be exercised only where it is necessary or appropriate to implement the provisions of the Bankruptcy Code *or where equity and substantial justice requires*.") (internal footnote omitted).

The TDP provides additional authority for the Court to grant Class 8 Claimants the ability to change their Election. In support of her argument regarding her lack of authority to allow

survivors to change their Election, the Trustee cites to the TDP as follows: "…neither the Settlement Trustee nor the STAC or Future Claimants' Representative may amend these TDP in a material manner …" TDP, Art. XIV.B. However, the Trustee neglected to include the preamble to that sentence of TDP, which states **"[a]bsent Bankruptcy Court or District Court approval after appropriate notice and opportunity to object**, neither the Trustee nor the STAC or the Future Claimants' Representative may amend these TDP in a material manner…" TDP, Art. XIV.B. (*emphasis added*). This provision makes it clear that the TDP can be amended with Bankruptcy Court approval. Under these circumstances, the Trustee should be directed to amend the TDP to allow Class 8 Claimants to change their Election.

The Trustee's arguments in opposition to the Motion are not persuasive. First, Movant is not arguing that he has the ability to change his Election absent an order from this Court. Second, the Trustee argues that she does not have the ability to authorize changes to the Election. Meanwhile, she has the ability to come to this Court and seek authority through amendment to the TDP or otherwise and already has done so once.[1] Third, her argument that allowing claimants to change their Election will create administrative burdens and logistical issues rings hollow. No one disputes that the Trustee's task is monumental and complex. However, the burdens for the Trust if relief is granted would be minimal. This is particularly true because over 5,000 claimants (out of 7,300 that originally made the Election) already have submitted their questionnaires essentially declaring their Election for the second time. The odds of them changing their mind at this stage are extremely remote. Further, to date, fewer than 350 claimants have filed requests to change

---

[1] *See* Motion of the Honorable Barbara Houser (Ret.), in her Capacity as Trustee for the BSA Settlement Trust, for Amendment of Trust Distribution Procedure (seeking authority to amend TDP to extend deadline relative to the Independent Review Option). D.I .11514.

{C1293650.1 }                                              7

their Election. Finally, it is important to note that the Trustee has not argued that the relief sought is inconsistent with the intent and purposes of the Plan, nor could she.

Contrary to the Trustee's position, there is nothing in the Confirmation Order or Plan Documents which expressly prohibits a claimant's ability to alter their Election. If such language existed, the Trustee would have raised that in her papers or at oral argument. Instead, she points the Court to Plan sections which state that a claimant may not later elect to receive Expedited Distribution and that claimants shall not receive a further a distribution after the Expedited Distribution. Neither of those are circumstances in dispute in this matter.

Penalizing a survivor for having made a mistake in filling out the complicated ballot would be contrary to the stated purpose of the Plan and general principles of the Bankruptcy Code. As a result of the horrific abuse that he suffered, Movant has a very high value claim. If his Election is not changed, he will receive $3,500 instead of potentially millions. The Plan Documents provide that Tier 1 Claims like the Movant's have a base value of $600,000 and are capped at $2,700,000. Claimants that proceed with the Independent Review Option have the potential for allowed claims which are a multiple of those numbers. Clearly, failure to grant Movant (and others similarly situated) the ability to change the Election will not serve the purpose of maximizing recovery to claimants.

Balancing the equities, the Motion should be granted. Forcing Movant to accept $3,500.00 in full and final satisfaction of his claim because he made a mistake in completing a lengthy and complicated form will greatly reduce the amount of compensation he will receive. It would also undermine the spirit and stated purpose of the Plan of maximizing compensation for the grievous suffering of Movant (and other similarly situated survivors). On the other hand, the Trustee and Plan Proponents would suffer no harm if Movant were to obtain his requested relief.

Movant should be permitted to pursue the Standard Review or the Independent Review Option. He was abused over forty (40) years ago and has suffered from that terrible abuse ever since. To punish him further for the mistake in filling out the Ballot would be a monumental injustice.

## ALTERNATIVE ARGUMENT

As alternative argument, Movant joins in and adopts the legal arguments of the other movants as if fully set forth herein. Further, Movant asserts all arguments made in his prior pleadings as if they were set forth herein.

## CONCLUSION

The Court has the necessary jurisdiction and authority to permit the Class 8 Claimants to change their Election. Equity and justice will be served by doing so. Failure to do so not only will greatly prejudice the Movant for a simple mistake in filling out the complex ballot, it would be contrary to the stated purpose and intent of the Debtors' Plan. Movant respectfully requests that order be entered either (a) permitting him to change his Election or (b) directing the Trustee to amend the TDP to allow Class 8 Claimants to change their Elections.

[SIGNATURES ON NEXT PAGE]

Dated: December 8, 2023

                Respectfully submitted,

**CAMPBELL & LEVINE, LLC**

*/s/ Katherine L. Hemming*
Katherine L. Hemming (No. 5496)
222 Delaware Ave, Suite 1620
Wilmington, DE 19801
(302) 426-1900
khemming@camlev.com

-and-

Joel M. Walker, Esq. (PA Bar #26515)
Nye, Stirling, Hale, Miller, & Sweet, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
(412) 443-4145
jmwalker@nshmlaw.com
(Admitted Pro Hac Vice)

*Counsel for Movant J.D., Claimant # 908123*