**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| | (Jointly Administered) |
| BOY SCOUTS OF AMERICA AND | |
| DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | **Supp. To Doc. 11599** |

**SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO AUTHORIZE
REVOCATION OF EXPEDITED DISTRIBUTION ELECTIONS
ON THE GROUNDS OF MISTAKE, INADVERTENCE AND INJUSTICE**

Fourteen clients (the "**Claimants**") of Mary Alexander & Associates, P.C. ("**MAA**"), by and through undersigned counsel, filed on November 10, 2023 their Motion to Authorize Revocation of Expedited Distribution Elections on the Grounds of Mistake, Inadvertence and Injustice [Doc. 11599] (the "**Motion**") for entry of an order pursuant to 11 U.S.C. § 105, and Fed. R. Civ. P. 60(a) and (b), as made applicable to these bankruptcy cases by Fed. R. Bankr. P. 9024. At a hearing held on the Motion (and other similar motions) on November 20, 2023, the Court invited parties to submit supplemental briefs further addressing the question of the Court's authority to grant the requested relief.

As shown below, in this Supplemental Brief of the Claimants, in addition to the precedents shown and arguments previously made under Fed. R. Civ. P. 60(a) and (b), as made applicable to these bankruptcy cases by Fed. R. Bankr. P. 9024, and 11 U.S.C. § 105 (and further supplemented below), the Trust Distribution Procedures for Abuse Claims ("**TDP**"), adopted pursuant to the Settlement Trust Agreement dated as of the effective date of the Debtors' Third Modified Fifth Amended Chapter 11 Plan or Reorganization (With Technical Modifications) for Boy Scouts of

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

America and Delaware BSA, LLC (the "Plan") [Doc. 10296], provide express and unequivocal

authority for the Court to amend the TDP procedures in a manner which would provide the relief

requested by Claimants.

## ARGUMENT

I. **The TDP expressly and unequivocally authorizes the Court, after appropriate notice and hearing, to direct amendments to the Trust Distribution procedures, including authorizing Expedited Distribution elections to be rescinded, revoked or changed.**

The TDP, Article XIV, paragraph B, provides as follows:

> **B. Amendments**. Except as otherwise provided herein, the Settlement Trustee may not amend, modify, delete, or add to any provisions of these TDP without the written consent of the STAC and the Future Claimants' Representative, as provided in the Settlement Trust Agreement, including amendments to modify the system for Tort Election Claims. Nothing herein is intended to preclude the STAC and/or the Future Claimants' Representative from proposing to the Settlement Trustee, in writing, amendments to these TDP. Notwithstanding the foregoing, absent Bankruptcy Court or District Court approval after appropriate notice and opportunity to object, neither the Settlement Trustee nor the STAC or Future Claimants' Representative may amend these TDP in a material manner, including (i) to provide for materially different treatment for Abuse Claims, (ii) to materially change the system for Tort Election Claimants, (iii) to add an opportunity to make an Expedited Distribution Election for a claim represented by a Chapter 11 POC after the Voting Deadline, (iv) to materially alter the Independent Review Option, or (v) in a manner that is otherwise inconsistent with the Confirmation Order or Plan. Notwithstanding the foregoing, neither the Settlement Trustee nor the STAC or the Future Claimants' Representative may amend any of the forms of release set forth in Article IX.D without the consent of Reorganized BSA, or remove the requirement of a release in connection with an Expedited Distribution.

TDP, Article XIV – Miscellaneous Provisions, B. Amendments.

Additionally, Article I of the Plan defines the TDP as follows:

> 289. "Trust Distribution Procedures" means the Boy Scouts of America Trust Distribution Procedures for Abuse Claims, substantially in the form attached hereto as Exhibit A, *as the same may be amended or modified* from time to time in accordance with the terms thereof, which shall be acceptable to (a) the Debtors, the Ad Hoc Committee, the Coalition, the Tort Claimants' Committee, and the Future Claimants' Representative and (b)

the Creditors' Committee with respect to the treatment of Non-Abuse
Litigation Claims.

Plan, Article I. Definitions and Rules of Interpretation, A. Definitions, No. 289 (emphasis
supplied).

As a matter of contract interpretation, the unambiguous language of the Plan and the TDP

quoted above gives the Court the power to authorize material amendments or modifications to the

TDP after appropriate notice and hearing. *See Rhone—Poulenc Basic Chems. Co. v. Am. Motorists

Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992) ("Under general principles of contract law, a contract

should be interpreted in such a way as to not render any of its provisions illusory or meaningless.")

First, both the TDP and the Plan provide for amendments and modifications to be made to

the TDP, some of which may be made by the Settlement Trustee at the behest of the STAC or the

Future Claimants' Representative ("**FCR**"), and others of which (where material) may be made at

the direction of the Court following notice and an opportunity to object, as here.

Second, there is no "standing" limitation on who may seek Court authority for

modifications to the TDP. The TDP states only that the STAC and the FCR are not precluded from

proposing amendments *to the Settlement Trustee*. Thus, any party in interest may seek Court

approval for amendments to the TDP: "Notwithstanding the foregoing, absent Bankruptcy Court

or District Court approval after appropriate notice and opportunity to object notwithstanding the

foregoing," the STAC and the FCR may amend these TDP in a material manner. TDP, Article

XIV, paragraph B above.

Third, the parties expressly contemplated that a change to the Expedited Distribution

procedure might be necessitated by unfairness or injustice associated with the ballot deadline. In

their illustrative and *non-exclusive* list of changes that might be considered "material" for purposes

of Court approval, they included "to add an opportunity to make an Expedited Distribution

Election for a claim represented by a Chapter 11 POC after the Voting Deadline." *Id.*

The Claimants therefore submit that their Motion and the related notice constitute the

requisite "notice and opportunity to object" for TDP amendment purposes, and that the Court may

and should direct amendment of the TDP in order to permit Claimants to revoke and rescind their

ballot elections of an Expedited Distribution, and instead to elect to be treated under other

provisions of the TDP, for the cause and grounds shown in the Motion, at the November 20

hearing, and in this Supplemental Brief.

## II.    The Court has the authority, pursuant to F.R.C.P. 60(b) and 11 U.S.C. § 105 to grant the relief requested by the Claimants.

To the extent that the TDP does not provide a complete legal basis for the relief sought, the

Bankruptcy Court may grant the relief under Rule 9024, incorporating Federal Rule of Civil

Procedure 60, and Section 105 of the Bankruptcy Code. These provisions, as well as the Court's

inherent equitable power with respect to the chapter 11 estate and the Plan, provide the Court with

overriding, statutory and equitable authority to grant the relief requested by the Claimants.

Rule 60(b) provides, in relevant part:

> (b) GROUNDS FOR RELIEF FROM A FINAL JUDGMENT, ORDER, OR PROCEEDING. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

*(6) any other reason that justifies relief.*

Fed. R. Civ. P. 60(b) (emphasis added).

In their Motion, and at the November 20 hearing, Claimants argued that the extraordinary circumstances of this case warranted relief under either rule 60(b)(1) or rule 60(b)(6), and section 105. Counsel for the Settlement Trustee argued that the "any other reason that justifies relief" provision under rule 60(b)(6) could not be used to "end run" the one-year statute of limitations (rule 60(c)) for grounds otherwise within rule 60(b)(1) (like mistake and inadvertence). The order from which Claimants seek relief is the Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Forms of Ballots, (III) Approving Forms of Ballots, (IV) Approving Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief (the "**Solicitation Order**") entered by the Court on September 30, 2021 [Doc 6438], more than a year ago. In reply, Claimants argued that the one-year limitations period for relief on the grounds of mistake or inadvertence could be considered tolled where, as here, Claimants were not aware of the intended irrevocable nature of the Expedited Distribution election until they received questionnaires from the Settlement Trustee via the Trust portal shortly before the Motion was brought.

The Court asked whether or not the intended irrevocable nature of the Expedited Distribution election was stated clearly, such that Claimants should have known of it at the time of their elections. A review of the applicable documents in response to the Court's query and in preparation for this Supplemental Brief revealed that while the contemplated irrevocability of the election can be found at several places in the voluminous Plan and Disclosure Statement, there is

no reference whatsoever to intended irrevocability in the Ballot. The word "irrevocable" does not

appear at all. The Ballot refers to the Expedited Distribution election as an option, and it provides

elsewhere that the option would be conditioned upon a release (the language of which was not set

forth in the Ballot, in a context suggesting it would be open for future consideration). The Ballot,

the essential document on which the Claimants acted, did not state or even imply that the election

would be, or was intended to be, irrevocable.

The facts therefore support a finding that the one-year limitation under rule 60(b)(1) should

be held to have been equitably tolled until the Settlement Trustee distributed the questionnaires

through the Trust portal in or about September 2023. A motion for relief from an order or judgment

pursuant to Rule 60(b) is within the discretion of the court. *Nemaizer v. Baker,* 793 F.2d 58, 61-62

(2nd Cir. 1986). "Properly applied, *Rule 60(b)* strikes a balance between serving the ends of justice

and preserving the finality of judgments." *Id.* at 61. The grounds for granting relief under Rule

60(b) include "the need to correct clear error of law *or to prevent manifest injustice*." *See Procter*

*& Gamble Co. v. Paragon Trade Brands, Inc*., 15 F. Supp. 2d 406, 409 (D. Del. 1998) (emphasis

added). *See* also *Paddington Partners v. Econocom,* 34 F.3d 1132, 1144 (2nd Cir. 1994) (Rule

60(b) "preserves a balance between serving the ends of justice and ensuring that litigation reaches

an end within a finite period of time"); *In re AL & LP Realty Co., 164 B.R. 231, 234 (*Bankr.

S.D.N.Y. 1994) (Rule 60(b) is "intended to strike a proper balance between the conflicting

principles that litigation must be brought to an end and that justice must be done").

Fed. R. Civ. P. 60(b)(6) is a catch-all provision, and relief is appropriate under Fed. R. Civ.

P. 60(b)(6) ".... when it offends justice to deny such relief[.]" *Woods v. Kenan (In re Woods)*, 173

F.3d 770, 780 (10th Cir. 1999) (quoting *Cashner v. Freedom Stores, Inc.,* 98 F.3d 572, 580 (10th

Cir. 1996)). Rule 60(b)(6) gives a court "a grand reservoir of equitable power to do justice in a

particular case." *See Lyons v. Jefferson Bank & Trust,* 994 F.2d 716, 729 (10th Cir. 1993). Courts have found that relief under Rule 60(b)(6) is reserved for "extraordinary circumstances' that justify 'extraordinary' relief." *See Roman v. Carrion (In re Rodriguez Gonzalez),* 396 B.R. 790, 803 (B.A.P. 1st Cir. 2008) (quoting *Valley Citizens for a Safe Environment v. Aldridge*, 969 F.2d 1315, 1317 (1st Cir.1992)). Courts have generally found that "extraordinary circumstances warranting relief under Rule 60(b)(6) [exist] where the movant was not at fault in his predicament, and was unable to take steps to prevent the judgment from which relief is sought." *Roman v. Carrion,* 396 B.R. at 803 (citing 12 James Wm. Moore, Moore's Federal Practice 60.48[3][c] (3d ed.2005)). That is exactly the case here.

In ordinary cases, the grounds for Rule 60(b)(6) relief should be considered "mutually exclusive" from the grounds of other Rule 60(b) motions, such that parties who knowingly failed to take timely action to seek relief for mistake and inadvertence should not be permitted to resort to subsection (6) to avoid the one-year limit. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993); see also *Kemp v. United States*, 596 U.S. , , 142 S. Ct. 1856, 1861, 213 L. Ed. 2d 90 (2022) ("This last option is available…when Rules 60(b)(1) through (b)(5) are inapplicable."). But this is not an ordinary case. *Aikens v. Ingram*, 652 F.3d 496, 500 (4th Cir. 2011) (*en banc*). A party is not able to seek relief from an order for mistake unless and until they know that a mistake was made. The one-year period should be deemed to have been equitably tolled, and not to have commenced until Claimants learned of the intended consequences of their election through the questionnaires uploaded to the Trust portal by the Settlement Trustee. The Claimants cannot be said to have "failed to take timely action" where they were not on notice of the essential facts that would warrant such action.

Equitable tolling has been applied when a claimant filed his claim too late. *See Santos ex rel. Beato v. United States, 559* F.3d 189, 197 (3d Cir. 2009) ("Equitable tolling, if available, can rescue a claim otherwise barred as untimely by a statute of limitations . . . .").  Courts in the Third Circuit have also invoked equitable tolling "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the [claimant] in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *See United Sates v. Midgley*, 142 F.3d at 174, *179* (3rd Cir. 1998); *see also Miller v. New Jersey State Dep't of Corrections,* 145 F.3d 616, 618 (3rd Cir. 1998) (finding that equitable tolling would be an appropriate remedy when principles of equity would make a rigid application of a statute of limitations unfair).

The United States Court of Appeals for the Third Circuit has held that equitable tolling applies to Rule 60(b) motions where, as here, there are also "some other extraordinary grounds for relief." *See Seitzinger v. Reading Hosp. & Med Ctr.,* 165 F.3d 236, 240 (3rd Cir. 1999).  The facts and circumstances surrounding the solicitation of Claimants' Ballots and their request for relief are extraordinary, and fit squarely in the second category under *Midgley,* that the Claimants were effectively prevented from asserting their rights because of the complex and confusing nature of the Ballots. This is not the kind of "garden variety claim of excusable neglect," where courts resist such relief. It is not neglect at all. It is instead the "rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice." *See Alvarez-Machain v. United States*, 96 F.3d 1246, 1251 (9th Cir. 1996) (tolling two-year limitation period for actions against the U.S. under the Federal Tort Claims Act where the plaintiff, a foreign national, was incarcerated in the United States for over two years); *Lewis v. United States*, 985 F. Supp. 654, 657 (S.D. W. Va. 1997) (finding circumstances "'sufficiently extraordinary' to warrant equitable tolling

of a one-year statute of limitations for relief under 28 U.S.C. § 2255 where the information charging defendant was 'negligently and carelessly prepared' and the government delayed other remedial action").

For Rule 60(b)(6) purposes, and given the gross injustice that would be worked on Claimant sexual abuse survivors if they are held to have elected a $3,500 distribution in lieu of the hundreds of thousands of dollars – to millions of dollars – to which they would otherwise be entitled, these are "extraordinary circumstances" which justify the "extraordinary relief" for equitable tolling of Rule 60(c). Claimants were not at fault. They were confused by the complexity of the Ballot and the information provided on the Ballot regarding the Expedited Distribution election. The Claimants did not knowingly relinquish or intend to release their potentially substantial Class 8 claims. These Claimants have waited many years to be compensated for the abuse they suffered. It is simply not credible that they would have intentionally and knowingly given up the entirety of their Class 8 claims.

None of the Claimants had any inkling that they made a mistake in electing a distribution meant to be exclusive and irrevocable and otherwise as a complete relinquishment of their full claims from the time they submitted their ballots in 2021, until the Settlement Trustee uploaded to the portal the questionnaire in September 2023 that made that determination clear. The complexity of the Ballots prevented the Claimants from properly exercising their rights to be fully compensated for the damages they suffered.

Moreover, the Claimants themselves did not create the Ballot confusion, they were not neglectful, and as asserted by the Claimants in their Declarations, they were extremely diligent in seeking relief from their elections as soon as they discovered their mistakes. These factors should weigh heavily in favor of the equitable tolling of Rule 60(b) as applicable. *See Seitzinger*, 165 F.3d

at 241; *see also Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990)  (courts have been more forgiving of late filings where claimant exercised due diligence in preserving his rights); *New Castle County v. Halliburton NUS Corp.,* 111 F.3d 1116, 1126 (3ʳᵈ Cir. 1997) (finding that to invoke equitable tolling, a party must show that she exercised reasonable diligence in investigating and bringing her claims).

It is also an important consideration that the relief requested by Claimants would not materially prejudice other claimants or parties or the overall implementation of the Plan and the TDP.  During the passage of time since the Ballots were submitted, no material Plan distributions have been made. The distribution process has barely begun. There will be some administrative burdens needed to accommodate the revocation of mistaken elections by a limited universe of Claimants, but any such burdens are substantially outweighed by the enormous benefits of correcting injustice and assuring fairness in the treatment of the sexual abuse survivors.

Finally, Section 105 of the Bankruptcy Code clearly expresses the statutory equitable authority for the Court to take any action, including an action to correct injustice, to grant the Claimants relief from their unintended elections. *See In re Oil Brasil Holdings Cooperatief U.A.,* 578 B.R. 169, 201 (Bankr. S.D.N.Y. 2017) (Section 105(a) is "understood as providing courts with discretion to accommodate the unique facts of a case consistent with the policies or directives set by the other applicable substantive provisions of the Bankruptcy Code."); see also *Sears, Roebuck & Co. v. Spivey*, 265 B.R. 357, 371 (E.D.N.Y. 2001) ("Section 105 of the Bankruptcy Code bestows on bankruptcy courts a specific equitable power to act in accordance with principles of justice and fairness."). Section 105 is clearly applicable where, as here, the Claimants could not reasonably have discovered their mistakes until the TDP was being implemented, and the Trust

Administrator contacted them with questionnaires that first alarmed them with language suggesting their election had been final and irrevocable.

**CONCLUSION**

WHEREFORE, it is respectfully requested that the Court direct that the TDP be amended and modified to permit Claimants to revoke or rescind their unintended elections of $3,500 expedited distributions, and through Mary Alexander & Associates PC, to file either the Standard Claim or the Independent Review Option, and grant such other relief as is just and proper.

Dated: December 8, 2023                    **CROSS & SIMON, LLC**

*/s/ Kevin S. Mann*
Kevin S. Mann (No. 4576)
1105 North Market Street
Suite 901
Wilmington, DE 19801
(302) 777-4200
kmann@crosslaw.com

-and-

Michael P. Richman, Esq.
**RICHMAN & RICHMAN, LLC**
122 W. Washington Avenue, Suite 850
Madison, WI 53703
(608) 630-8990
mrichman@RandR.law

*Counsel to Mary Alexander & Associates, P.C*