**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| Debtors.[1] | (Jointly Administered) |

**SUPPLEMENTAL RESPONSE OF THE HONORABLE BARBARA J. HOUSER (RET.),
IN HER CAPACITY AS TRUSTEE OF THE BSA SETTLEMENT TRUST, IN SUPPORT
OF HER OPPOSITIONS TO MOTIONS TO ALLOW CHANGES TO CLAIMANT
ELECTIONS OF EXPEDITED DISTRIBUTION
[D.I. 11565, 11600, 11602, 11608, 11612, AND 11624]**

The Honorable Barbara J. Houser (Ret.) (the "Trustee"), in her capacity as trustee of the

BSA Settlement Trust (the "Settlement Trust" or the "Trust"), hereby submits this supplemental

brief (the "Supplemental Brief") in support of her oppositions to claimants' (the "Movants")

motions to allow changes to their elections of Expedited Distribution [D.I. 11565, 11600, 11602,

11608, 11612, and 11624], pursuant to the Court's direction at the November 20, 2023 omnibus

hearing.

The Trustee is sympathetic to those claimants who made a mistake and elected a form of

recovery that they have now decided they do not want.  However, the Trustee is bound to

administer the Plan that was agreed upon by the Debtors and the creditor constituencies and

confirmed by this Court.  The Movants agree that neither the Plan nor its supporting documents

permit the Trustee to change the process for the election of Expedited Distribution.  Nor does the

law permit this Court to grant the Movants' requests and allow them to change their elections of

---

[1] The Reorganized Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Reorganized Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

Expedited Distribution more than two years after these elections were made.

The appropriate standard under which the Court should analyze the relief requested by the Movants is the standard set forth in Bankruptcy Rule 9024 for seeking relief from a final order. Under this standard, which allows a Court to grant relief on grounds of "mistake," a movant must file a motion within one year of the relevant order—here, the September 30, 2021 *Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation and Voting Procedures, (III) Approving Forms of Ballots, (IV) Approving Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief*, D.I. 6438 (the "Solicitation Procedures Order").

Because Movants did not seek relief from the Solicitation Procedures Order within the time allowed by Bankruptcy Rule 9024, and no other authority permits the Court to order the relief requested by Movants, their motions (the "Motions") must be denied.  In support of her Supplemental Brief, the Trustee respectfully states and alleges as follows:

## ARGUMENT

### A.    Under the Standard Set Forth in Rule 60, Movants Cannot Obtain Relief

Rule 60 of the Federal Rules of Civil Procedure, made applicable to this proceeding through Rule 9024 of the Federal Rules of Bankruptcy Procedure, provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1)    Mistake, inadvertence, surprise, or excusable neglect;

(2)    Newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3)    Fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

2

(4)     The judgment is void;

(5)     The judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6)     Any other reason that justifies relief.

Fed. R. Civ. P. 60(b). A motion seeking relief under Rule 60(b) "must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).

Here, the relief sought by Movants fits squarely within prong (1)—they want to be relieved from the requirements of the Solicitation Procedures Order on the grounds of mistake.[2] A "mistake" under Rule 60(b)(1) is broad, encompassing both factual and legal errors, made by judges and parties alike. *See Kemp v. United States*, 596 U.S. 528, 536 (2022) (further noting that "the words surrounding 'mistake' in Rule 60(b)(1) [also] do not connote exclusively non-legal or non-judicial errors"). Therefore, whether the Movants argue that it was a mistake on behalf of the claimants in electing Expedited Distribution on their ballots that warrants relief from the order (*see, e.g.*, D.I. 11532, ¶ 4 (claimant "mistakenly checked a box in which he elected to receive the expedited distribution")), or that it was a mistake for this Court to issue the Solicitation Procedures Order approving the ballots (*see, e.g.*, D.I. 11562, ¶ 10 ("The ballot was faulty, ambiguous, misleading or otherwise confusing . . ."); D.I. 11599, ¶ 9 ("The Ballots are enormously complex and confusing . . .")), this prong of Rule 60(b) governs the Motions.

Because Movants' requested relief falls within Rule 60(b)(1), their motions were required to have been brought "no more than a year after the entry of the judgment or order." Fed. R. Civ.

---

[2] The Solicitation Procedures Order approved the form of the ballots, set forth the procedures to determine how ballots are counted, established a deadline to submit ballots, and required that claimants make an election regarding Expedited Distribution on the ballot. *See generally* Solicitation Procedures, Ex. 1 to Solicitation Procedures Order.

P. 60(c)(1).  The Solicitation Procedures Order was entered on September 30, 2021—more than two years before the first motion seeking to change the election of Expedited Distribution was filed.  *See* D.I. 11532 (filed October 11, 2023).  Even if the Movants argue that the Court's supplemental orders revising the deadlines to the Solicitation Procedures Order are the relevant orders here, the last of those orders was issued in February 2022.  The Motions are, therefore, time-barred.

Movants cannot evade the requirements of Rule 60(c) by arguing that their requested relief instead falls within the parameters of Rule 60(b)(6), which is not subject to the one-year limitation. Relief under Rule 60(b)(6) "is available only when Rules 60(b)(1) through (b)(5) are inapplicable," *Kemp*, 596 U.S. at 533, which is not the case here.  *See also Richards v. Ctr. Cnty. Transp. Auth.*, 540 F. App'x 83, 85 (3d Cir. 2013) ("Rule 60(b)(6) cannot be used 'as a means by which the time limitations of 60(b)(1)-(3) may be circumvented.'") (quoting *Stradley v. Cortez*, 518 F.2d 488, 493 (3d Cir. 1975));  *Boney v. United States*, No. CR 11-55-CFC, 2023 WL 4686050, at *3 (D. Del. July 21, 2023) ("Notably, the Rule 60(b)(6) catch-all provision is to be utilized when the requested relief is not available in the enumerated categories of (b)(1)-(3).  When the requested relief falls into one of three sub-categories, the catch-all provision is not available.") (citing *Walsh v. United States*, 639 F. App'x 108, 111 (3d Cir. 2016)).  Because Movants seek relief on the grounds of mistake, they are bound by Rule 60(c)'s one-year time period in which to file their motions.

Mary Alexander & Associates ("MAA") raises two arguments as to why the one-year limitation period should not apply.  First, MAA contends that this period should be tolled until the time that each claimant discovered that he had elected Expedited Distribution.  D.I. 11599, ¶ 14. "Assuming equitable tolling applies to Rule 60(b) motions"—MAA has cited no authority so stating—such tolling would require "deceit or some other extraordinary grounds for relief," which

are not present here. *DeMatthews v. The Hartford Ins. Co.*, 402 F. App'x 686, 689 n.4 (3d Cir. 2010) (quoting *George Harms Constr. Co. Inc. v. Chao*, 371 F.3d 156, 162 (3d Cir. 2004)). There are no allegations of any deceit here. Nor are there "extraordinary grounds" for tolling, particularly where claimants, or their counsel, could have reached out to Omni at any time to clarify the votes that they made; they did not need to wait until the Trust opened the claims portal to do so. Second, MAA argues that the purported "manifest injustice" that would result here if the Court did not allow claimants to change their elections requires analyzing the requested relief under subsection (b)(6). D.I. 11599, ¶ 14. But this is simply an attempt to avoid the one-year time limitation of subsection (b)(1) which, as discussed, is not permitted.

Lastly, even if Rule (b)(6) were applicable here, and even if Movants had a "reasonable time" to seek relief, they have not acted within a reasonable time. *See Boney*, 2023 WL 4686050, at *4 (concluding that "a Rule 60(b)(6) motion, with a filing deadline predicated on reasonableness but also not usually longer than one year," was "untimely" when filed two years after the order challenged); *see also Moolenaar v. Gov't of V.I.*, 822 F.2d 1342, 1348 (3d Cir. 1987) (Rule 60(b)(6) motion filed almost two years after judgment was not made within a reasonable time). All parties have an interest in finality, which is not served by allowing changes to the Solicitation Procedures Order more than two years later, after the Plan has been confirmed and hundreds of survivors have already executed irrevocable releases and received their Expedited Distribution. The Motions cannot be granted under Bankruptcy Rule 9024.

## B.    No Other Standard Can Be Applied to Provide the Relief Requested by Movants

Movants have proposed several other standards that they argue govern their requested relief. However, as set forth in detail below, none of these standards applies here, and none would allow this Court to grant the Motions.

### 1. *Pioneer* Is Not Applicable Here

Many of the Movants argued in their motions or replies that the "excusable neglect" standard of Bankruptcy Rule 9006(b)(1), as analyzed by the Supreme Court in *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993), governs their motions.[3]  *See* D.I. 11577, 11603, 11605, 11606, 11616.  This is not the appropriate standard. *Pioneer* deals with a party's failure to comply with a deadline, as Rule 9006(b)(1) "grants a reprieve to out-of-time filings that were delayed by 'neglect.'"  *Pioneer*, 507 U.S. at 388.  That is not what happened here.  Movants did not miss a deadline; to the contrary, they timely submitted ballots on which they affirmatively elected Expedited Distribution.  There was no deadline that was neglected by these Movants, and therefore no need to consider whether such neglect was excusable.  *Pioneer* simply does not fit with the issues currently before the Court.

If this Court is nonetheless inclined to analyze Movants' requested relief under an excusable neglect standard, *Pioneer* demonstrates that the Motions should be denied.  *Pioneer* requires analysis of four factors to determine whether an untimely filing was due to "excusable neglect":  (1) "the danger of prejudice to the debtor" (here, as the non-movant, the Trust),[4] (2) "the length of the delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant," and (4) "whether the

---

[3] During the November 20, 2023 omnibus hearing, Charles Brown, counsel for Claimants D.S., B.B., D.M., M.G., and R.N., argued that the excusable neglect standard had been applied in contexts other than those involving an untimely proof of claim, which was at issue in *Pioneer*.  *See* Nov. 20, 2023 Hr'g Tr. at 35–36.  Mr. Brown cited *Pro-Tec Services, LLC v. Inacom Corp.(In re Inacom Corp.)*, No. 00–2426 (PJW), 2004 WL 2283599 (D. Del. Oct. 4, 2004), where the court examined the "excusable neglect" standard of Rule 60(b)(1) in light of *Pioneer*, as applied to an untimely motion for reconsideration.  To the extent that Movants argue that the Court should analyze excusable neglect under Rule 60(b)(1) rather than Bankruptcy Rule 9006(b)(1), the Motions would be time-barred by the one-year limit set forth in Rule 60(c).  *See Pioneer*, 507 U.S. at 393 (noting that Rules 60(b)(1) and 60(b)(6) "are mutually exclusive, and thus a party who failed to take timely action due to 'excusable neglect' may not seek relief more than a year after the judgment by resorting to subsection (6)").

[4] When the debtor is not the relevant non-movant, courts have evaluated the danger of prejudice to the non-movant instead.  *See, e.g.*, *Eady v. Tapfury LLC*, No. 22-2619, 2023 WL 3376541, at *1 (3d Cir. 2023) (listing the first *Pioneer* facto as "the danger of prejudice to the non-movant") (alterations omitted); *Raguette v. Premier Wines & Spirits*, 691 F.3d 315, 319 (3d Cir. 2012) (same).

movant acted in good faith." *Pioneer*, 507 U.S. at 395.  These factors show that the Motions, if analyzed under *Pioneer*, should not be granted.

### a.  Prejudice to the Trustee

First, the Trust would be prejudiced if the Motions are granted.  The Third Circuit in *In re O'Brien Environmental Energy, Inc.*, 188 F.3d 116 (3d Cir. 1999), set forth relevant factors for analysis of prejudice, which include:

> whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated; whether the payment of the claim would force the return of amounts already paid out under the confirmed Plan or affect the distribution to creditors; whether payment of the claim would jeopardize the success of the debtor's reorganization; whether allowance of the claim would adversely impact the debtor actually or legally; and whether allowance of the claim would open the floodgates to other future claims.

*In re Inacom,* 2004 WL 2283599, at *4 (citing *O'Brien*, 188 F.3d at 126–28).  These factors show the prejudice to the Trust that will result if the Motions are granted.

The Trustee was caught unaware by the Movants' requests to change their elections of Expedited Distribution.  As set forth in further detail below, the Plan and its supporting documents do not envision any changes to a claimant's election regarding Expedited Distribution.  Since the Effective Date, the Trustee has expected that the number of claimants electing Expedited Distribution was fixed and has administered the Trust accordingly.  *See generally Declaration of the Honorable Barbara J. Houser (Ret.), in her Capacity as Trustee of the BSA Settlement Trust, in Support of Her Consolidated Response in Opposition to (1) Survivor Claimant D.S.'s Motion to Change Election to Opt Into Expedited Payment/Convenience Class, D.I. 11532; and (2) Motion to Change Election to Opt Into Expedited Payment/Convenience Class, D.I. 11552*, D.I. 11565-1 (the "Trustee Declaration").  The Trust developed a process for payment of these Expedited Distribution claims and completely separate processes for claimants who elected the Matrix or Independent Review Option.  The Trust did not envision any sort of procedure that would allow

claimants to change their election of Expedited Distribution, because the Plan documents do not provide for this.

Further, allowing the Movants to change their elections risks upsetting the distribution to creditors, including those who have already been paid. As stated in the Trustee Declaration, many claimants previously asked the Trustee to change their elections, and she denied those requests. Trustee Decl. ¶¶ 6, 8. Those claimants may have already executed releases and received payments from the Trust. *Id.* ¶ 8. Had those claimants known that they could have changed their elections, they may have not executed the releases or accepted the payments. The Trustee cannot identify any reasonable grounds to justify binding these claimants to their elections when other similarly situated claimants are not. At the same time, allowing *those* claimants to change their elections, when they have already received payment and released the relevant parties from liability, presents even more difficulties for the Trust. *Id.*

Additionally, requiring the Trust to change the Movants' elections alone would be costly and time-consuming. *Id.* ¶¶ 9–10. "The Trust would need to manually change each Expedited Distribution claim in the claims processing system, cancel the Expedited Distribution questionnaire, replace this with a standard questionnaire, and communicate this to the claimant," hundreds of times. *Id.* ¶ 9. This process would cost the Trust time and money that would otherwise be spent processing claims from the tens of thousands of other survivors, whose payments will now be diminished, and their receipt of those payments delayed.

As for the final *O'Brien* factor, it is difficult to imagine that allowing the Movants to change their elections would not open the floodgates for other similar requests. As noted at the November 20, 2023 hearing, nearly 5,000 claimants who elected Expedited Distribution on their ballots received a qualification notice from the Trust but have not yet executed the releases that

would allow them to receive payment.  Nov. 20, 2023 Hr'g Tr., 76:7–14; *see also Supp. Decl. of the Honorable Barbara J. Houser (Ret.), in her Capacity as Trustee of the BSA Settlement Trust, in Support of her Consolidated Responses in Opp. to Mots. to Allow [D.I. 11565, 11600, 11602, 11608, 11612]*, D.I. 11626, ¶ 4.  It is reasonable to conclude that many of these claimants are waiting to see how the Court resolves the Motions before deciding whether they, too, want to try to change their elections.  Even during the November 20 hearing itself, an additional claimant filed a motion seeking to change his election, *see* D.I. 11635, and on December 5, 2023, yet another claimant filed a similar motion, *see* D.I. 11651.  It is unrealistic to think that Movants represent the entire universe of claimants who would like to change their elections.  Requiring the Trust to evaluate and respond to each of these claimants will only further deplete resources that would otherwise be used to compensate survivors.

For all of these reasons, the Trust, as well as the tens of thousands of survivors who are not seeking to change their elections, will be prejudiced if the Motions are granted.

### b. Delay

The second and third *Pioneer* factors concern delay.  The delay here was well over two years which, as discussed *supra*, is generally not considered a reasonable time for a party or claimant to delay in taking action.  This length of time is particularly unreasonable in the case of the claimants represented by AVA Law Group, Inc., who executed declarations stating that they did not intend to elect Expedited Distribution in early 2022, before the deadline to vote on the Plan had passed, but did not submit amended ballots or otherwise take any action to remedy their mistaken elections until October 2023.  *See* D.I. 11552.  Further, Movants do not explain why they were incapable of verifying their elections with Omni at any point prior to the Trust's opening of the claims portal in late summer 2023.  The delay was too long, and it was not reasonable.  These factors weigh against granting the Motions.

### c. Whether the Movant Acted in Good Faith

The final *Pioneer* factor examines whether the Movants acted in good faith.  The vast majority of the Movants were represented by counsel during the bankruptcy proceedings—counsel that was certainly capable of reviewing the Solicitation Procedures Order and the ballot and advising their clients accordingly.  Many of the errors described in the Motions were due to counsel, whether because counsel recognized that their clients may later wish to change their election but did not instruct them to file an amended ballot, *see* D.I. 11552, because counsel did not verify that the ballots they submitted to Omni contained accurate voting records, *see* D.I. 11567, or because counsel did not find it necessary to advise their clients on whether to elect Expedited Distribution on the ballot, *see* D.I. 11599; Nov. 20, 2023 Hr'g Tr., 68:13–69:8.  The Trustee is reluctant to deny relief to survivors based on the actions of their counsel, but *Pioneer* is clear that, "in determining whether respondents' failure to file . . . was excusable, the proper focus is upon whether the neglect of respondents *and their counsel* was excusable."  *Pioneer*, 507 U.S. at 397 (emphasis in original).  Unfortunately, counsel's errors here are not excusable.

In sum, while the Trustee does not believe that *Pioneer*'s "excusable neglect" standard is applicable here, it would not provide a basis for granting the Motions even if it were.

### 2. General Principles of Equity Do Not Allow the Court to Make These Changes When No Other Authority Permits It

Some Movants have argued that this Court is permitted to grant their requested relief as part of its equitable powers as a bankruptcy court.  However, "[w]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."  *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988).  Where no other authority would allow this Court to grant the relief that Movants request, the Court cannot simply rely on

"equity" to do so.[5]

### C.    The Plan Language Is Clear

As set forth above, the Movants' disagreement is with the Solicitation Procedures Order, which instructed them to make their elections as to Expedited Distribution at the time of voting on the Plan, and governed how those ballots were counted.  However, it is worth emphasizing that the Plan itself is consistent with the Solicitation Procedures Order—it envisions claimants electing whether to receive an Expedited Distribution at the time of voting on the Plan and does not provide for any mechanism by which a claimant may change this election after the March 7, 2022 deadline. The Plan is clear and unambiguous, and provides no basis to grant the Motions.

Interpretation of the Plan is governed by general contract principles.  *In re Shenango Grp. Inc.*, 501 F.3d 338, 344–45 (3d Cir. 2007) ("In construing a confirmed plan of reorganization, we apply contract principles.").  The Plan is governed by Delaware law.  Third Modified Fifth Am. Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA*, LLC at Art. XII.H, D.I. 10296 (the "Plan").

> A court applying Delaware law to interpret a contract is to effectuate the intent of the parties.  Accordingly, the Court must first determine whether a contract is unambiguous as a matter of law.  If the language of the contract is unambiguous, the Court interprets the contract based on the plain meaning of the language contained on the face of the document.  A contract is ambiguous only if it is fairly or reasonably susceptible to different interpretations . . . .  Delaware principles of contract interpretation also require the Court to read a contract as a whole and give each provision and term effect, so as not to render any part of the contract mere surplusage.

*In re SS Body Armor I, Inc.*, No. 10-11255(CSS), 2021 WL 2315177, at *5 (Bankr. D. Del. June 7,

---

[5] During the November 20, 2023 hearing, Babin Law, LLC suggested that Federal Rule of Bankruptcy Procedure 3018 could be used to modify the Expedited Distribution elections.  This Rule provides in relevant part that, "[f]or cause shown, the court after notice and a hearing may permit a creditor . . . to change or withdraw an acceptance or rejection." Fed. R. Bankr. P. 3018(a).  Putting aside that Movants do not seek to change or withdraw their acceptance or rejection of the Plan, Rule 3018 is intended for use *prior* to confirmation—not more than a year after.  The Rule cannot be, and is not, intended to allow creditors to change their votes at this time.

2021) (quoting *JFE Steel Corp. v. ICI Americas, Inc.*, 797 F. Supp. 2d 452, 469 (D. Del. 2011) (cleaned up)).

The Plan is not, as Movants have argued, ambiguous.  There is simply no mechanism that allows claimants to change their elections after having made them.  Instead, every reference to the election of Expedited Distribution indicates that it is a final decision that must be made on the ballot:

- "Direct Abuse Claimants who have properly made the Expedited Distribution Election . . . shall be entitled to receive their Expedited Payment upon executing an appropriate release, which shall include a release of the Settlement Trust, the Protected Parties, and all Chartered Organizations. . . . A Direct Abuse Claimant who does not make the Expedited Distribution Election and a Future Abuse Claimant who does not elect to receive the Expedited Distribution in accordance with the deadlines and procedures established by the Settlement Trust may not later elect to receive the Expedited Distribution."  Trust Distribution Procedures, Ex. A to Plan ("TDP"), Art. VI.B.

- "A Direct Abuse Claimant who makes the Expedited Distribution Election . . . shall have no other remedies with respect to any Direct Abuse Claim he or she has against the Settlement Trust, Protected Parties, Chartered Organizations, or any Non-Settling Insurance Company.  Direct Abuse Claimants that make the Expedited Distribution Election . . . will not be eligible to receive any further distribution on account of their Direct Abuse Claim pursuant to these TDP."  *Id.*

- "Each Abuse Claimant that does not make the Expedited Distribution Election may instead elect (1) to pursue recovery from the Settlement Trust pursuant to these TDP must submit his or her Abuse Claim for allowance and potential valuation and determination of insurance status by the Settlement Trustee pursuant to the requirements set forth herein (each, a 'Trust Claim Submission') or (2) to pursue the Independent Review Option, as set forth therein."  *Id.* Art. VII.A.

Nothing in the TDP suggests that claimants can later change their election of Expedited Distribution.  Although Article VI.B references "deadlines and procedures" to be established by the Settlement Trust regarding the Expedited Distribution election for Future Claimants, there is no similar reference to any deadline or procedure for claimants who elected Expedited Distribution

to change that election.  Instead, the claimants who elected Expedited Distribution are to execute a release, receive their payments, and are not eligible to receive any other distributions.  TDP, Art. VI.B.  Claimants who did not elect Expedited Distribution may choose between the other two forms of recovery.  *Id.* Art VII.A.  The Plan is subject to only one interpretation—that the election regarding Expedited Distribution is final.

If the Court determines, however, that the Plan language is ambiguous, the Court may consider extrinsic evidence.  *Nw. Nat. Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996) ("Courts consider extrinsic evidence to interpret the agreement only if there is an ambiguity in the contract.").  Here, the extrinsic evidence supports the Trustee's interpretation of the Plan.  At the September 28 and 29, 2021 hearings regarding the Solicitation Procedures Order, the parties discussed whether claimants who elected Expedited Distribution on their ballots could later opt out of this election.  Ultimately, the Court stated, with respect to an option to opt out, "If that's the plan that people want to put in front of me, that's fine."  Sept. 29, 2021 Hr'g Tr., 102:25–103:1.  The parties did not put such a plan in front of the Court.  The plan that was submitted in connection with the Disclosure Statement on September 30, 2021 did not contain any language indicating that a claimant who elected Expedited Distribution on his ballot could later opt out of this decision.  *See* Modified Fifth Am. Chapter 11 Plan of Reorganization for Boy Scouts of Am. and Delaware BSA, LLC, D.I. 6443 (Sept. 30, 2021).  The plan was also revised on September 29, 2021 to add language to the TDP stating that, absent Bankruptcy Court approval, the Trustee could not materially amend the TDP "to add an opportunity to make an Expedited Distribution Election for a claim represented by a Chapter 11 POC after the Voting Deadline."  *See* Notice of Filing of Redline of Modified Fifth Am. Chapter 11 Plan of Reorganization for the Boy Scouts of Am. and Delaware BSA, LLC, D.I. 6430 (attaching as Exhibit 1 a redline comparison between the Modified

13

Fifth Amended Plan filed on September 29 and the Revised Modified Fifth Amended Plan filed later on September 29).

The Solicitation Procedures filed by the Debtors on September 30, 2021 similarly did not contain any indication that a claimant could change his election. *See* Notice of Filing of Revised Proposed Solicitation Procedures Order, D.I. 6433 (Sept. 30, 2021) (attaching as Exhibit B a redline comparison between the Proposed Solicitation Procedures Order filed on September 29 and the version filed on September 30). To the contrary, the new version of the Proposed Solicitation Procedures Order *added* language stating, "If selecting the $3,500 Expedited Distribution, you must indicate this on the Ballot. A holder of a Direct Abuse Claim will not be able to choose this option at a later date unless the Bankruptcy Court approves otherwise." *Id.*, Ex. B, § IV.D (redline showing this change). Given that the parties considered allowing claimants to opt out of an election of Expedited Distribution, but ultimately took no action to revise the Plan or the Solicitation Procedures to provide for such an opt out procedure, the Trustee has concluded that, absent other evidence to the contrary, the omission was intentional.

### D.    A Preponderance of the Evidence Standard Applies to the Forgery Claims

Finally, as to the two motions which argue that the claimants' signatures on their ballots were forged, the claimants must show, by a preponderance of the evidence, that their signatures were forged. *See Clymer v. DeGirolano*, No. 2021-0004-SEM, 2023 WL 4613036, at *11 (Del. Ch. July 5, 2023), *adopted in relevant part*, 2023 WL 6275067 (Del. Ch. 2023) ("[A]lleged forgery in the civil context operates as a fraud claim. The burden of proof in any fraud claim is on the party claiming fraud."); *see also Outdoor Techs. Inc. v. Allfirst Fin., Inc.*, No. 99C-09-151-JRS, 2001 WL 541472, at *3 (Del. Super. Ct. Apr. 12, 2001) ("Delaware courts require proof of fraud

to be made by a preponderance of the evidence.").[6]  For the reasons set forth at the November 20, 2023 hearing, the Trustee is unable to conclude that the evidence put forth by these claimants shows, by a preponderance of the evidence, that their signatures were forged.

### E.    The Trustee Respectfully Requests Guidance from the Court

If the Court is nonetheless inclined to grant some or all of the Motions, the Trustee respectfully requests that the Court provide clear guidance by which she can evaluate any similar requests from claimants in the future and clarify whether the Trustee is authorized to grant any such request without involvement from this Court.  Even in the short time that has elapsed since the November 20 hearing, additional claimants have already filed motions seeking similar relief from the Court.  In the hopes of reducing the burden on the Trust in responding to similar requests, and for the benefit of the claimants and the Trustee alike, the Trustee respectfully requests that the Court provide guidance regarding when a change of election can be made and whether that change has any bearing on any other deadlines (including the deadline for claimants to file claims for the Independent Review Option).

<u>**CONCLUSION**</u>

For the reasons set forth above, the Trustee respectfully requests that this Court deny the Motions.

---

[6] The Plan provides that it shall be governed by, construed and enforced in accordance with laws of the State of Delaware.  Art. XII.H.

Dated:  December 8, 2023
Wilmington, Delaware

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ James E. O'Neill*
Richard M. Pachulski (CA Bar No. 90073)
Debra I. Grassgreen (CA Bar No. 169978)
James E. O'Neill (DE Bar No. 4042)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400
Email: rpachulski@pszjlaw.com
         dgrassgreen@pszjlaw.com
         joneill@pszjlaw.com

– AND –

**GILBERT LLP**
Kami E. Quinn (admission *pro hac vice*)
Emily P. Grim (admission *pro hac vice*)
Sarah A. Sraders (admission *pro hac vice*)
700 Pennsylvania Avenue, SE
Suite 400
Washington, DC  20003
Telephone:  (202) 772-2200
Facsimile:   (202) 772-3333
Email: quinnk@gilbertlegal.com
         grime@gilbertlegal.com
         sraderss@gilbertlegal.com

*Attorneys for the Honorable Barbara J. Houser*
*(Ret.), in her capacity as Trustee of the BSA*
*Settlement Trust*