**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>Debtors. | Case No. 20-10343 (LSS)<br><br>Chapter 11<br>(Jointly Administered)<br><br>**Related to Docket Nos. 11532 and 11665** |

**ADDITIONAL SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION TO CHANGE ELECTION TO OPT INTO EXPEDITED PAYMENT/CONVENIENCE CLASS OR OTHER NECESSARY RELIEF ON BEHALF OF SURVIVOR CLAIMANT D. S.**

D.S. ("Movant"), by and through his undersigned counsel, hereby submits this Additional Supplemental Briefing in support of his Motion to allow him to change his election and opt out of the convenience/expedited payment class. In support of the Motion, the Movant respectfully states as follows:

**INTRODUCTION**

On December 8, 2023, D.S. filed his Supplemental Response in support of his Motion to change the mistaken election made when he submitted his Ballot to vote on the Plan of reorganization. In his Supplemental Response, D.S. focused on the language of the Ballot which D.S. believes provides for an absolute right to change his election regardless of whether that election was mistaken or deliberate[1]. D.S. files this Additional Supplemental Response to address the Trustee's supplemental briefing, which did not focus on the language in the Ballot but instead

---

[1] To be clear, the election was a mistake. D.S. did not intend to waive his claim in exchange for a $3,500.00 payment and was not advised to do so. D.S. completed his ballot using his smart phone. Significant time has passed since the Ballot was submitted, and D.S. cannot recall the exact circumstances of completing the Ballot. Because he did not intend to waive his claim in exchange for a $3,500.00 payment, the election could have been the result of confusion and misunderstanding the language in the Ballot or it could have been the result of simply being clumsy in operating his smart phone.

focused on the language of the Trust Distribution Procedures ("TDP").  D.S. submits that the language in the TDP (as well as in the Solicitation Procedures Order), like the language in the Ballot, confirms that D.S. has an absolute right to change his mistaken election on his Ballot.  The language in the TDP establishes that there was no election that could be classified as an Expedited Distribution Election until a claimant signs a release.  The mandatory and permissive language that was used in the TDP further support the notion that D.S., as of this date, has an absolute right to not be classified as an Expedited Distribution claimant notwithstanding his apparent error in completing his Ballot.

## ARGUMENT

**1.  60(b) Analysis is not the appropriate standard to use.**

In his Supplemental Response, D.S. already addressed why The Trustee's proposed  Rule 60(b) analysis of the Solicitation Procedures Order was  not an appropriate analysis for addressing a claimant's mistaken election.  This analysis was faulty because that Order did not adjudicate any claims but, as the name suggests, the "Solicitation Procedures Order" was mainly concerned with the Court approving the nature and form of plan solicitations procedures as well as deadlines for creditors to vote on a Plan **which would ultimately be approved by the Court**.  Therefore, later, *after* the Solicitation Procedures Order was entered, when D.S. was completing the twenty-three page ballot on his phone to vote to accept or reject the Proposed Plan, and he mistakenly checked a box indicating that he wanted to receive an Expedited Distribution, this decision by D.S. was not a final decision or Order of this Court.  Accordingly, contrary to the Trustee's arguments, Rule 60(b) is  not apt or helpful in assisting the Court to make its decision here. Moreover, as shown below, the express language in the Solicitation Procedures Order makes clear that a claimant's election for the Expedited Distribution Option  did not become effective at the time that the Ballot

was completed.  A final decision or election of this option   required a claimant to later execute a release in final satisfaction of all his claims.

> **2. The clear language of the Solicitation Procedures Order shows that the checking of the box in the Ballot was not intended to be nor was it a final or complete step in electing the Expedited Distribution.**

In reviewing the Trustee's argument regarding the language of the TDP, one has to focus on the term "Expedited  Distribution Election."  When one focuses on the term, it is apparent that while selecting the option to receive such a distribution on the Ballot is the first and necessary step to make an Expedited Distribution Election, the election is not complete at that stage.  There is no language in the TDP- or the Ballot, Plan and/or Confirmation Order- that states that the selection on the Ballot is a final and irrevocable election for the simple reason that checking the box was not intended to be a final decision at that time.

Page 13 of the Solicitation Procedures Order provides:

> D. **Expedited Distribution Election.** Each holder of a properly completed non-duplicative proof of claim asserting a Direct Abuse Claim who filed such Claim by the Bar Date or was permitted by a Final Order of the Bankruptcy Court to file a late claim may elect only on his or her Ballot or Master Ballot to receive an Expedited Distribution, which, as specified in the Plan, is a one-time Cash payment from the Settlement Trust in the amount of $3,500.00, *conditioned upon satisfaction of the criteria set forth in the Trust Distribution Procedures*, in exchange for a full and final release in favor of the Settlement Trust, the Protected Parties, and the Chartered Organizations. *The Settlement Trust shall make the Expedited Distributions* on or as soon as reasonably practicable after the latest to occur of (a) the Effective Date, (b) *the date the applicable holders of Direct Abuse Claims who have elected to receive an Expedited Distribution have satisfied the criteria set forth in the Trust Distribution Procedures*, and (c) the date upon which the Settlement Trust has sufficient Cash to fund the full amount of the Expedited Distributions while retaining sufficient Cash reserves to fund applicable Settlement Trust Expenses, as determined by the Settlement Trustee. **If selecting the $3,500 Expedited Distribution, you must indicate this on the Ballot. A holder of a Direct Abuse Claim will not be able to choose this option at a later date unless the Bankruptcy Court approves otherwise.**  (Emphasis added with italics.)

Based on that language in the Solicitation Procedures Order, in order for a claimant to qualify to receive an Expedited Distribution, a claimant must not only make this election on the Ballot but must *also* satisfy the criteria set forth in the TDP. The TDP requires a claimant to sign a release and complete and sign, under the penalty of perjury, other forms. As signing other forms, including a release of all claims was intended to come later, no documents, such as a release, that had to be signed by the Claimant under the penalty of perjury, were included with or in the Ballot. Accordingly, simply checking the box was not intended to be nor should it be interpreted as a final and binding decision to receive ONLY the Expedition Distribution (Option)!

3. **The specific language in the TDP that shows that the decision to check the box on the Ballot was not intended to be a final decision .**

The TDP provides:

### ARTICLE VI

### EXPEDITED DISTRIBUTIONS

A. Minimum Payment Criteria. A Direct Abuse Claimant who meets the following criteria *may* elect to resolve his or her Direct Abuse Claim for an expedited distribution of $3,500 (the "Expedited Distribution"): (i) the ***Direct Abuse Claimant elects to resolve his or her Direct Abuse Claim for the Expedited Distribution in accordance with the Plan[2] and Confirmation Order (the "Expedited Distribution Election")***; (ii) in connection with the Expedited Distribution Election, the Direct Abuse Claimant has timely submitted to the Settlement Trust a properly and substantially completed, non-duplicative Chapter 11 POC or Future Abuse Claim; and (iii) the Direct Abuse Claimant has personally signed his or her Proof of Claim or Future Abuse Claim attesting to the truth of its contents under penalty of perjury, or supplements his or her Abuse Claim Proof of Claim to so provide such verification. ***Direct Abuse Claimants that make the Expedited Distribution Election will not have to submit any additional information to the Settlement Trust to receive payment of the Expedited Distribution from the Settlement Trust.***

B. Process and Payment of Expedited Distributions. Direct Abuse Claimants *who have properly made the Expedited Distribution Election* and who met the criteria

---

[2] The TDP is a Plan exhibit and therefore part of the Plan.

set forth in Article VI.A(ii) and (iii) above, ***shall be entitled to receive their Expedited Payment upon executing an appropriate release, which shall include a release of the Settlement Trust, the Protected Parties, and all Chartered Organizations***. The form of release agreement that a Direct Abuse Claimant who makes the Expedited Distribution Election must execute is attached as Exhibit A. A Direct Abuse Claimant who does not make the Expedited Distribution Election and a Future Abuse Claimant who does not elect to receive the Expedited Distribution in accordance with the deadlines and procedures established by the Settlement Trust may not later elect to receive the Expedited Distribution.[3] ***A Direct Abuse Claimant who makes the Expedited Distribution Election*** (or Future Abuse Claimant who elects to receive the Expedited Distribution*) **shall have no other remedies with respect to any Direct Abuse Claim he or she has against the Settlement Trust, Protected Parties, Chartered Organizations, or any Non-Settling Insurance Company.*** Direct Abuse Claimants that make the Expedited Distribution Election (or Future Abuse Claimant who elects to receive the Expedited Distribution) will not be eligible to receive any further distribution on account of their Direct Abuse Claim pursuant to these TDP.

(Emphasis added). The TDP references the terms "Expedited Distribution" and "Expedited Distribution Election" but does not mention the Ballot. The Solicitation Procedures Order does, however, define the term "Expedited Distribution Election," which required both making the selection on the Ballot and satisfying the criteria in the TDP, which, as set forth above, requires a claimant to sign a release and complete other documents which are to be signed by the claimant under penalty of perjury.

The use of the mandatory "shall" and the permissive "may" in the TDP further supports the notion that the mistaken election in the Ballot was not final and irrevocable. *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 823-23 (Del. 1991) provides:

> It is an elementary canon of contract construction that the intent of the parties must be ascertained from the language of the contract.
>
> […]
>
> The General Corporation Law of Delaware expressly allows a corporation to advance the costs of defending a suit to a director. 8 Del. C. § 145(e). The authority

---

[3] This is not completely consistent with either the Ballot or the Solicitation Procedures Order, both of which allow for a claimant to make a late election with Court approval.

> conferred is permissive. The corporation "*may*" pay an officer or director's expenses in advance. The Agreement, on the other hand, renders the corporation's duty mandatory in providing that expenses *shall* be paid in advance. Under the Agreement, Citadel is required to advance to Roven the costs of defending suits, rather than merely permitting it to make such advances as provided in the statute. The use of the word "*shall*" therefore simply reflects the parties' intention to provide Roven expanded protection.

(Emphasis added). The TDP references the expedited payment option and states that a claimant "*may*" elect to receive the expedited payment if the claimant met the criteria of timely opting in, completing the questionnaire, and signing a release. It states that if a claimant has met this criteria, the claimant "*shall*" be entitled to receive the expedited distribution. The permissive and the mandatory language in the TDP is further support for the proposition that a claimant has an absolute right to amend a claim at any time once a timely proof of claim was filed and an absolute right to amend any election on a Ballot until such time that the Expedited Distribution Election has been completed and the Claimant has signed a release and completed and signed, under the penalty of perjury, the other forms that the Trustee requires. The express language in the TDP stating that after timely opting in a claimant "may" still elect to receive the $3,500.00 suggests that he may also elect NOT to receive the $3,500.00. If a claimant were to elect not to receive the $3,500.00, it would be absurd to find that this should mean that he gets nothing. A much more logical and reasoned interpretation is that if a claimant elects not to receive the $3,500.00, he gets to fully prosecute his claim under the TDP. The only restriction on the right to either opt in or opt out is the express restriction in the Ballot and Solicitation Procedures Order, which was that one may only opt into the convenience or expedited distribution class after missing the deadline if the claimant is able to obtain Court approval. (It is also instructive that, as in the Ballot itself, there is no specific language in the TDP that states that checking the box indicating that a claimant wanted an Expedited Distribution Option was a "final" and irrevocable decision!)

6

## **CONCLUSION**

The Trustee is wrong in arguing that that the Solicitation Procedures Order established a deadline under Rule 60 for evaluating a claimant's mistake in completing the Ballot; the mistake occurred *after* the Solicitation Procedures Order was entered, and the Order did not actually adjudicate any part or all of D.S.'s claim What the Solicitation Procedures Order did establish was that no Expedited Distribution Election would be effective until a claimant fully satisfied the obligations set forth in the Plan and the TDP requiring a signed release and a form to be completed and signed under the penalty of perjury. Contrary to the Trustee's arguments in her Response, appropriate construction of the relevant portions of all of the three governing documents - the Solicitation Procedures Order, the Ballot and the TDP, clearly leads to the conclusion that the election on the Ballot by D.S. was never specifically intended, agreed, or ordered by the Court to be a final decision which would not allow D.S. to subsequently amend that election.

Dated: December 18, 2023            GELLERT SCALI BUSENKELL & BROWN LLC

*/s/ Charles J. Brown, III*
Charles J. Brown, III (DE 3368)
1201 N. Orange Street, 3rd Floor
Wilmington, DE 19801
Phone: 302-425-5813
Fax: 302-425-5814
Email: cbrown@gsbblaw.com

*Counsel for D.S.*

*Of Counsel:*

Tyler H. Fox, Esq.
135 Antrim Street, Suite #2
Cambridge, MA 02139
Phone: 857-260-3105