**RECEIVED**

**2024 JAN 12   AM 11: 46**

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
|  | (Jointly Administered) |
| Debtors. |  |

## MOTION OF "JOHN DOE" TO PERMIT
## FILING OF PROOF OF CLAIM AFTER BAR DATE

"John Doe"[1] ("**Movant**") files this motion (the "**Motion**") to permit filing of proof of claim after bar date.

### JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the standing order of reference to this Court.

2.     This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.     Pursuant to 28 U.S.C. § 1409, venue of this Motion is proper in this Court.

4.     Pursuant to Del. Bankr. L.R. 9013-1(f), Movant does consent to the entry of final orders or judgments by the Court with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

---

[1] Due to the highly personal nature of the background of Movant's claim, he is being referred to in this filing as "John Doe." Movant of course will disclose his identity as required subject to appropriate protocols to keep his identity off of the public record.

## FACTUAL BACKGROUND

### A.   Movant's Sexual Abuse by the Boy Scouts

5.     Movant is 71 years of age and a resident of Colorado, but grew up in Iowa.

6. The sexual abuse by the scoutmaster and a scout member of the troop occured around 1962 while the Movant was a minor, living in Des Moines, Iowas with his parents. At all relevant times, the Movant was enrolled in the Boy Scouts of America. Movant was a member of Troop 23 of the Tall Corn Council, sponsored by the Westminster Presbyterian Church in Des Moines, Iowa.

7.     The Scoutmaster invited the Movant to lunch and was followed by a private tour of a computer room. There was closeness, touching, rubbing and confidential conversation. Movant has no memory of the remainder of the day, or even how he got home.

8.     There was also abuse on other multiple occasions by a scout member.

9.     The Movant may have suffered from repressed memory concerning the abuse.

10.    The Movant is slowly becoming more aware of these repressed memories from the triggering effect of learning about the BSA lawsuit and bankruptcy.

### B.   The Boy Scouts' Bankruptcy Case

11.    On February 18, 2020 (the "**Petition Date**"), the above-captioned debtors and debtors-in-possession (the "**Debtors**") filed their chapter 11 bankruptcy petitions with this Court.

12.    On May 26, 2020, the Court entered an order (the "**Original Bar Date Order**", D.I. 695) which established November 16, 2020 as the bar date for filing proofs of claim in these cases (the "**Bar Date**"). The Bar Date appears to apply to holders "Sexual Abuse Claims" which appear to be claims that arise out of "Sexual Abuse" (as defined or described in section "IV" of the form of notice attached as Exhibit "1" to the Original Bar date Order) in "Scouting" (which is defined or described as including "Cub Scouts, Boy Scouts, Exploring Scouts, Sea Scouts and Venturing" in the form "Sexual Abuse Proof of Claim" attached as Exhibit "7" to the Original Bar Date Order).

2

13.     Movant was a victim of "Sexual Abuse" in "Scouting" as such terms are
described and/or defined above. In addition, Movant was under eighteen (18) years of age at the
time of the sexual abuse but as of the Petition Date was an adult.

14.     In the Original Bar Date Order, the Court found that the notice procedures approved
therein were appropriate as to "unknown" claims, including "unknown" holders of Sexual Abuse
Claims. Original Bar Date Order, ¶19.

15.     As a direct and proximate cause of that sexual abuse, Movant suffered injuries and
damages that continue today. However, that does not necessarily imply that Movant was an
"unknown" creditor. Debtors may have some record (or access to records) of Movant's
participation in Scouting. Moreover, it is at least plausible that the Scoutmaster and scout in
question abused other victims and that Debtors may have been able to ascertain Movant's identity
by investigating the Scoutmaster's conduct.

16.     Movant has no record or recollection of receiving any notice of the Debtors'
bankruptcy cases or of the Bar Date. For much of 2015, Movant was caring full time for his
terminally ill spouse. Movant has suffered from prolonged and complicated grief after her death
and was somewhat disconnected from "normal" life for some time.

17.     Movant first became aware of the BSA bankrupctcy and lawsuit in the summer of
2023 and promptly submitted a Proof of Claim ( claim id SST-332165) which was accepted. This
was followed by a request from the Trust for a Claims Questionnaire to be submitted. Movant
submitted the Questionnaire and it, too, was accepted. Movant now needs the court to allow his
claim to proceed, as the Trust now will disallow the claim due to the missed bar date without it.

18.     On September 16, 2020, the Court entered a "supplemental" bar date order (D.I.
1331). That Order appears to relate exclusively to attorney advertising and solicitation. On
October 20, 2020, the Court entered an Order  (D.I. 1551) permitting holders of Sexual Abuse
Claims to file proofs of claim using Official Form 10 but did not otherwise alter the Original Bar

Date Order.  A further Order of clarification was entered on November 30, 2020 (D.I. 1752)
related to certain definitions.

19.      The latest proposed disclosure statement notes that there are approximately
95,200 pending or asserted Abuse Claims against the Debtors.  Amended Disclosure Statement
(D.I. 5485) at 55 n. 57.

20.      But for a handfull of motions, it does not appear that other claimants have filed
motions to file claims after the Bar Date.

### C.      Movant's Retention of Counsel

22.      Movant proceeds through this process Pro Se.

23.      Due to the traumatic nature of his experience, Movant has never revealed the
particulars of his experience to anyone and is still reluctant to seek an attorney.

## RELIEF REQUESTED AND REASONS THEREFOR

### I.    MOVANT IS NOT BOUND BY THE BAR DATE ORDER AS HE DID NOT RECEIVE NOTICE OF SAME.

26.    The sufficiency of notice to a creditor depends on whether the creditor's identity

is "known" or "unknown." As to "known" creditors "due process entitl[es] them to actual

notice of the bankruptcy proceedings." Chemetron Corp. v. Jones, 72 F.3d 341, 345-46 (3d Cir.

1995). As to "unknown" creditors, notice by publication may be "sufficient to satisfy the

requirements of due process . . . " Id.

27.    A known creditor --

is one whose identity is either known or "reasonably ascertainable by the debtor." Tulsa
Professional Collection Serv., Inc. v. Pope, 485 U.S. 478, 490, 99 L. Ed. 2d 565, 108 S. Ct.
1340 (1988). An "unknown" creditor is one whose 'interests are either conjectural or future or,
although they could be discovered upon investigation, do not in due course of business come to
knowledge [of the debtor].'" Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306,
317, 94 L. Ed. 865, 70 S. Ct. 652 (1950). A creditor's identity is "reasonably ascertainable" if
that creditor can be identified through "reasonably diligent efforts." Mennonite Bd. of Missions
v. Adams, 462 U.S. 791, 798 n.4, 77 L. Ed. 2d 180, 103 S. Ct. 2706 (1983).

Chemetron Corp. v. Jones, 72 F.3d at 346.

28.     Movant may be a "known" creditor under these standards.  In light of the fact that it is at least plausible that the Scoutmaster in question was a serial abuser, the Debtors may have actual knowledge of Movant's identity from other investigations.  For similar reasons, Movant's identity may have been "reasonably ascertainable" by the Debtors.

29.     To the extent that Movant is a known creditor, Movant's rights cannot be affected by the Bar Date because Movant was never served with notice of the Bar Date.  The affidavits of service do not reflect service on Movant and Movant has no record of receiving notice of the Bar Date.  Accordingly, fundamental principles of due process require that the Bar Date not be binding on Movant.  In re Dewey Beach Enters., Inc., 110 B.R. 681, 684 (Bankr. D. Del. 1990) (Balick, J.) ("In those instances where no prior notice of the bar date has been given, enlargement of the time period may be constitutionally required. In re Harbor Tank Storage Co., 385 F.2d 111, 114 (3d Cir. 1967)").

30.     To the extent that Movant is an "unknown" creditor, while the Court held that publication notice as to unknown creditors was appropriate as to notice of the Bar Date, that *ex parte* finding is not binding on Movant.  As to the actual effectiveness of Debtors' notice program, Movant did not learn about the Bar Date from that program.  Rather, after reading an article in the local newspaper, he began his own investigation of the lawsuit.

31.     Movant stresses that he did not learn of the Bankruptcy or Bar Date until well after it had passed and had no actual notice or knowledge of same until spring of 2023.

## II. IN THE ALTNERNATIVE, MOVANT DID NOT FILE A PROOF OF CLAIM DUE TO EXCUSEABLE NEGLECT.

32.     To the extent that the Court holds that the Bar Date was binding on Movent,

Movant asserts that his not filing a proof of claim by the Bar Date was due do excusable neglect.

33.     Fed. R. Bankr. P. 9006(b)(1)(2) provides that, except as to certain circumstances

not present here, "when an act is required or allowed to be done at or within a specified period by

these rules or by a notice given thereunder or by order of court, the court for cause shown

may . . . on motion made after the expiration of the specified period permit the act to be done

where the failure to act was the result of excusable neglect."

34.     The Supreme Court in Pioneer Investment Services Company v. Brunswick

Associates Limited Partnership, 507 U.S. 380 (1993) articulated a test for determining whether

"excusable neglect" exists under Rule 9006(b):

> Because Congress has provided no other guideposts for determining what sorts of
> neglect will be considered "excusable," we conclude that the determination is at
> bottom an equitable one, taking account of all relevant circumstances surrounding
> the party's omission. These include, as the Court of Appeals found, the danger of
> prejudice to the debtor, the length of the delay and its potential impact on judicial
> proceedings, the reason for the delay, including whether it was within the
> reasonable control of the movant, and whether the movant acted in good faith.

Pioneer Investments Services, 507 U.S. at 395.

35.     Following Pioneer, the Court of Appeals for the Third Circuit in In re O'Brien

Environmental Energy, Inc., 188 F.3d 116 (3d Cir. 1999) reversed the decisions of the

Bankruptcy Court and District Court that held that an administrative claimant had not shown

"excusable neglect."

36.     In reaching this decision, the Court held that the mere fact that the debtor had not

accounted for the claim at issue was insufficient to show prejudice under Pioneer. The Court

held that "prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a

conclusion based on facts in evidence." In re O'Brien, 188 F.3d at 127.

37.     In determining whether prejudice exists, the Court looked to "the size of the claim with respect to the rest of the estate; whether allowing the late claim would have an adverse impact on the judicial administration of the case; whether the plan was filed or confirmed with knowledge of the existence of the claim; the disruptive effect that the late filing would have on the plan or upon the economic model upon which the plan was based; and whether allowing the claim would open the floodgates to other similar claims."

38.     The Court in O'Brien then went on to analyze the concept of excusable neglect. The Court reasoned that the concept included actions that involved a lack of care on the part of the claimant. Id. at 128. See also In re The Grand Union Company, 204 B.R. 864 (Bankr. D. Del. 1997) (Walsh, C.J.) (excusable neglect found where claimants did not effectively communicate with their counsel concerning the bar date notice).

39.     Application of the standards in Pioneer shows that Movant should be permitted to file a proof of claim after the Bar Date.

### 1.   There is Zero Danger of Prejudice to the Debtors or their Estates.

40.     The first factor that courts should consider when determining whether to allow a late filed claim is the danger of prejudice to the debtor. Id.  When assessing this factor, a debtor is *not* prejudiced by a late filed claim simply because it did not account for such claim in the funding of its plan of organization or liquidation. In re O'Brien, 188 F.3d at 126 (citing In re R.H. Macy & Co., 166 B.R. 799, 802 (S.D.N.Y. 1994) (the depletion of resources otherwise available for timely filed claims does not constitute prejudice).

41.     In this case, the authorized filing of a proof of claim will not prejudice the Debtors or their estates because  (i) as it appears there are

approximately 95,200 other sexual abuse claims against the Debtors, the addition of one more

would not, in light of the magnitude of the Debtors' cases, measurably dilute distributions to

other creditors; and (ii) Debtors would still have the ability to defend against the merits of the

claim.

42.     The Debtors may offer a "floodgates" argument.  The Court should view any such

argument with skepticism.  Thus far, with the exception of a handfull of litigants, the docket does

not reflect that other creditors have moved for the right to file claims after the Bar Date.  In any

case, any other such motions may be addressed if and when they are filed on a case-by-case basis.

### 2.     The Length of Delay Is Not Material.

43.     The second factor that courts consider is the length of delay and the effect that the

filing will have on judicial proceedings.  Pioneer, 407 U.S. at 395.

44.     In this case, the Movant's delay is not significant in view of the stage of the

Distribution. Distribution is just beginning for the Expedited Claims, while the distribution of the

Matrix Claims have not begun. Since the Movant is filing a Matrix Claim, the  delay in not

material.

### 3.     The Reason for the Delay Is Excusable.

45.     The third factor that courts consider is the reason for the delay.  Pioneer, 407 U.S.

at 395.  When assessing whether a creditor's failure to timely file a claim is based upon

excusable neglect, courts have acknowledged that "the mere use of the word neglect encompasses

omissions caused by carelessness." In re O'Brien, 188 F.3d at 125. When determining whether such

carelessness is "excusable," courts should take into account all of the relevant circumstances

surrounding the party's omission. Id. (citing Pioneer, 407 U.S. at 395 – "Chapter 11 provides for

reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors.").

46.     In In re Texas Tamale Co., 219 B.R. 732 (Bankr. S.D. Tex. 1998), the court did not allow a late proof of claim filing when the creditor acted in bad faith by deliberately waiting to assert his claim in order to destroy the debtor's chances of completing its confirmed plan and to harass the debtor.

47.     Here, Movant did not deliberately wait to file. Movant was not even aware of the bankruptcy cases until well after the Bar Date. And he did not become aware of the Bar Date until recently. As Movant did not receive actual notice of the Bar Date, any "neglect" here was minimal and fully excused.

### 4.     Movant Has Always Acted in Good Faith

48.     Finally, Movant has always acted in good faith. Movant had absolutely no reason to delay this matter.

49.     In filing this Motion, Movant reserves all of his rights.

WHEREFORE, for all of these reasons, Movant requests that the Court enter an order permitting Movant's proof of claim to proceed, deeming such claim to be timely filed, and granting such other and further relief as the Court deems just and proper.

DATED: January 10, 2024



RECEIVED

2024 JAN 12  AM 11: 46

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

In re:

BOY SCOUTS OF AMERICA AND
DELAWARE BSA, LLC,

Debtors.

Chapter 11

Case No. 20-10343 (LSS)

(Jointly Administered)

## NOTICE OF MOTION OF "JOHN DOE" TO PERMIT FILING OF PROOF OF CLAIM AFTER BAR DATE

"John Doe" ("Movant") has filed the attached Motion to Permit Filing of Proof of Claim after Bar Date (the "Motion") which seeks the following relief: authority to file a proof of claim for childhood sexual abuse after the bar date, with such claim to be deemed timely filed.

A HEARING ON THE MOTION WILL BE HELD BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN                                        AT THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 MARKET STREET, 6TH FLOOR, COURTROOM #2, WILMINGTON, DE 19801.

You are required to file a response to the Motion on or before

At the same time you must also serve a copy of the response upon Movant's attorney at the address listed below. **FAILURE TO TIMELY FILE AND SERVE A RESPONSE MAY RESULT IN AN ORDER GRANTING THE RELIEF REQUESTED IN THE MOTION.**



To the United States Bankruptcy Court for the District of Delaware

I am filing a motion Pro Se and hope I have provided everything that is necessary for you to proceed with this motion. I did the best that I could.

I have also included a Notice of Motion. I did not understand how to account for hearing dates, times or responses, so those are left blank. Should I wait until these times are set before notifying the Scouting Settlement Trust, or should I send them this notice as is?

Thank you.



Align top of FedEx Express® shipping label here.

SHIP DATE: 10JAN24
ACTWGT: 0.20 LB
CAD: 6995849/SSF02460

BILL CREDIT CARD

TO **ATTN—CACIA BATTS**
**US BANKRUPTCY COURT DISTRICT OF DEL**
**824 MARKET ST N 3RD FLR**

**WILMINGTON DE 19801**
(302) 526-2923    REF:





**FedEx**
Express

**E**

REL#
3785346

TRK# 7747 5974 6264
[0201]

FRI – 12 JAN 5:00P
** 2DAY **

**SS ZWIA**

19801
PHL

DE-US





C
6
17:00

6264
01.12