RECEIVED

2024 JAN 31 AM 11: 52

CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ▮▮▮▮▮▮

Civil Action No 20 - 10343 (LSS)

▮▮▮▮▮▮,
    Plaintiff,

In re: Boy Scouts of America and
Deleware BSA, LLC

v.

    Defendant.

CLASS MEMBER REQUEST FOR ORDER OF THE
COURT TO REQUIRE THE SCOUTING SETTLEMENT
TRUST TO PROCESS PLAINTIFFS TRUST CLAIM

   Plaintiff requests an ORDER from the Court
requiring the Scouting settlement Trust to
process class member (Plaintiff) claim
for the following:

1) Plaintiff suffered physical and sexual abuse by a Scout Master when he was a minor.

2) The physical and sexual abuse Plaintiff suffered has been devastating to his growth and well-being. It has significantly impacted his life.

3) Plaintiff mailed his class member claim timely to Omni Agent Solutions. Such claim was mailed via legal mail by plaintiff from the Colorado state Penitentiary in October, 2020. Such proof of the claim being mailed is on file with the Colorado State Penitentiary's mail room "Outgoing Legal Mail" file.

4) Omni Agent Solutions failed to enter such claim into their system/database until November 17, 2020 (See Exhibit A - Scouting Settlement Trust Letter).

5) Per the "mailbox rule," plaintiff filed his claim timely. The failure of Omni Agent Solutions to enter plaintiffs claim into their database (by a period of less than 24 hours nonetheless) timely, isn't plaintiffs fault.

6) Plaintiff lacks access to the internet, and therefore his only method to file his claim was through the U.S.P.S. mail system.

7) Plaintiff was provided a claim number by Omni Agent Solutions.

8) Plaintiff participated in the entirety of the case.

9) Plaintiff was provided a ballot - to vote on the proposed settlement (Plaintiff voted to accept the settlement and opted for the $3500.⁰⁰ Expedited Claim Settlement).

10) It is beyond absurd that although plaintiff participated in all phases of the case, that Omni Agent Solutions now claims that plaintiff filed his claim less than 1 day beyond the deadline. If the assertions were true by Omni Agent Solutions, plaintiff wouldn't have been provided a claim number, or a ballot.

11) Plaintiff is not represented by counsel, and he believes such is why Omni Agent Solutions now

refuses to pay plaintiff his settlement he voted on.

12) Plaintiff asserts under penalty of perjury that all the claims herein are true.

13) Plaintiff encloses other documents to prove to the Court that he was a class member in this case all along (see enclosed documents with the herein Motion...).

WHEREFORE, plaintiff respectfully requests that this Honorable Court issue its' ORDER requiring the Settlement Trust to process plaintiff's claim. Please provide plaintiff and the Trust with a copy of such ORDER.

Respectfully submitted this 1st day of January 2024.

* Clerk of Court:
Please mail plaintiff a copy of all forms herein with the response from the Court (as these are plaintiff's only copies).

**Scouting Settlement Trust**
P.O. Box 50157
McLean, VA 22102
Scoutingsettlementtrust.com

Thank you for contacting the Scouting Settlement Trust.

Upon review, we are unable to identify a timely Proof of Claim form associated with the Claimant. The Proof of Claim on file was filed on 11/17/2020 (which is later than the deadline of 11/16/2020). Please kindly provide a timely filed PoC copy to proceed with your request.

Regards,
Scouting Settlement Trust Team

Ⓐ RCVD 12/5/23
Ⓑ Response 12/6/23

C204

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments.
Misuses may be a violation of federal law. This package is not for resale. EP14 © U.S. Postal Service; July 2022; All rights reserved.

PRIORITY MAIL
POSTAGE REQUIRED





P

US POSTAGE & FEES PAID
1 LB PRIORITY MAIL RATE
ZONE 6 NO SURCHARGE
ComBasPrice

062S0014950559
10689786
FROM 22102

stamps
endicia
12/21/2023

# USPS PRIORITY MAIL ®

SETTLEMENT TRUST
PO BOX 50157
MC LEAN VA 22102

0003

SHIP
TO:





## USPS TRACKING #



9405 5112 0620 4415 2618 59

CONFIDENTIAL



VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

Visit **ups.com** for details on our privacy practices.

AT USPS.COM®
SUPPLIES ONLINE

171604  3/18 BP

DuPont™ Tyvek®
Protect What's Inside.™

how2recycle.info
PLASTIC BAG

**Scouting Settlement Trust**
P.O. Box 50157
McLean, VA 22102
Scoutingsettlementtrust.com

Thank you for contacting the Scouting Settlement Trust. We have updated our record to reflect your change in address.

During review of your claim, we have a requirement that for claims to be "allowable" the Claimant must have filed a timely Proof of Claim with Omni Data Solutions. It was noted that the Trust obtained data that you did not timely file your bankruptcy Proof of Claim form. This form should have been filed / received on or before the bankruptcy bar date of November 16, 2020.

If you believe your Proof of Claim form was timely filed with the bankruptcy court, we need you to provide us with proof of that. Acceptable forms of evidence include, but are not limited to email verification, receipt, or another form of confirmation with a date or timestamp from a company called Omni Agent Solutions, that your Proof of Claim form was filed timely and received before the deadline.

If you cannot provide evidence that your bankruptcy Proof of Claim was timely filed, and you do not obtain an order from the bankruptcy judge allowing for submission of your Trust claim, the Trust is unable to proceed and process your claim submission and it will be Disallowed.

Regards,
Scouting Settlement Trust Team

Info@scoutingsettlementtrust.com                                                    1-833-961-6495

Omni Agent Solutions

20-10343

U.S. Dist. Ct. Deleware
Hon. Laurie Silverstein
844 N. King St., Unit 18
Wilmington, Deleware
19801

**Office of Trustee**
Honorable Barbara J. Houser (Ret.)
Scouting Settlement Trust
Scoutingsettlementtrust.com

August 17, 2023

Dear

I am pleased to announce that the Scouting Settlement Trust (the "Trust") is now accepting Trust Distribution Abuse Claims. To process your claim, we will need you to complete a Claims Questionnaire and submit it to the Trust.

Our records indicate that you do not have an attorney representing you. You are not required to have an attorney for your claim to be processed. If you are being represented by an attorney, though, please notify the Trust and work with your attorney to submit your Claims Questionnaire. Your claim will be evaluated and determined under the terms of the Trust Distribution Procedures for Abuse Claims without regard to whether you are represented by an attorney.

The Trust Distribution Procedures for Abuse Claims are complex. If you decide to retain an attorney to represent you, you should complete the Scouting Settlement Trust Change of Attorney form which can be found at www.scoutingsettlementtrust.com. Please note that the Trust is not authorized to practice law and cannot provide you with legal advice. The Trust cannot recommend an attorney or law firm.

A claims processing portal has been established at www.scoutingsettlementtrust.com to facilitate the submission of your Claims Questionnaire and the processing of your claim. While we do not have an email address for you on file, if you do have an email address and would like to use the online Claims Processing Portal to submit your Claims Questionnaire to the Trust, please contact us at info@scoutingsettlementtrust.com and we will assist you with setting up your account.

Enclosed is a paper version of the Claims Questionnaire, along with instructions on how to complete it. Also enclosed is a pre-paid return envelope. If you do not wish to use the Claims Processing Portal, please use this envelope to return your Paper Claims Questionnaire.

There currently is no deadline to complete the Trust Claims Questionnaire, but we will notify all Claimants or their counsel when we establish a deadline. Once we make that notification, Claimants will have 120 days to submit their completed claims questionnaires to the Trust. **However, if you would like to participate in the Independent Review Option ("IRO"), you must elect to participate and complete and submit the Trust Claims Questionnaire to the Trust by October 19, 2023 (six months after the Effective Date).**

As part of the Trust's commitment to transparency and open dialogue, it will host an hourlong Town Hall for claimants on Tuesday, Aug. 29 at 8 p.m. EDT / 5 p.m. PDT. Trustee Barbara Houser and claims administrator Randi Ilyse Roth will present an overview of the process and answer questions. An announcement will be posted on www.scoutinsettlementtrust.com for more information about how to register. This will be first of what is planned to be regular meetings to keep claimants informed and up to date.

If you have any questions or need help establishing and/or accessing your account in the Claims Processing Portal, please contact us at info@scoutingsettlementtrust.com or +1 833-961-6495. Thank you.

 Sincerely,

/s/ Barbara J. Houser

Hon. Barbara J. Houser (Ret.), Trustee

# Scouting Settlement Trust ("Trust")
# Trust Claims Questionnaire
# (Blue Form)

## A. Welcome & Instructions

**Please read all the information carefully before submitting the Claims Questionnaire**

If you elected Expedited Distribution (sometimes called, "Quick Pay"), **do not fill out this Questionnaire.** Instead, write to info@scoutingsettlementtrust.com and request the Expedited Claims Questionnaire.

Do you have an attorney? – If you are represented by a lawyer in connection with this Claim, **do not fill out this Questionnaire.** When a Claimant is represented by a lawyer, the lawyer fills out the Questionnaire based on the information the Claimant provides to the lawyer. Please have your lawyer contact us at info@scoutingsettlementtrust.com. Once we connect with your lawyer, your lawyer will complete this Questionnaire on your behalf with your input.

Throughout this Questionnaire, where it says "settlement rules," or "settlement papers," it is referring to the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC; Trust Distribution Procedures for Abuse Claims; BSA Settlement Trust Agreement Pursuant to the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC; and the Confirmation Order Approving the Plan. All of these papers are available at this web link: https://www.scoutingsettlementtrust.com/s/news-and-key-links

### Welcome
Welcome to the process of submitting your detailed Trust Claims Questionnaire. We understand that it is very difficult to revisit and write about memories of abuse. We are sensitive to that difficulty, and we are only asking for the information that we absolutely need to evaluate your Claim. The Frequently Asked Questions (FAQ) page at www.scoutingsettlementtrust.com has information that may be helpful to you as you fill out the Questionnaire.

### Deadline
A submission deadline has not been established. The Trust will establish a deadline. As soon as the deadline is established, the Trust will notify Claimants and attorneys of the deadline. The submission deadline will be communicated at least 120 days in advance, providing time for Claimants and attorneys to complete and submit the Claims Questionnaire.

### Confidentiality
This Claims Questionnaire asks for information that is very personal and private. The Trustee understands that it may be very difficult to revisit these memories and provide this information. Your information will be held in the strictest confidence; we will only use this information as required by the settlement papers and as outlined below.

TO SUBMIT YOUR CLAIM ONLINE VISIT www.scoutingsettlementtrust.com
This Questionnaire is only for use by Claimants or their attorney to facilitate submitting a claim to the Scouting Settlement Trust. Any other use, reproduction, or distribution of this Questionnaire is prohibited.

## Other Requirements in this Process

There are a few technical requirements in this claims process.   When we say, "you" below, "you" refers to the Claimant (the person who experienced childhood sexual abuse).

- **Election**
  You must elect which part of the claims process you would like to participate in. That is explained in the next section, Section B, below.

- **Complete Questionnaire and Sign Under Oath and Penalty of Perjury**
  You (or the person legally authorized to represent you, for example, the person who holds your effective Power of Attorney) must individually sign the Questionnaire under oath and under penalty of perjury. If you are represented by an attorney, your attorney must sign too.

- **Provide Documents**
  You must agree to produce for the Trustee all the documents and records in your possession relating to this Abuse Claim.

- **Interviews/Exams**
  If the Trustee asks you to participate in an interview, and/or to answer further questions in writing, and/or to participate in an examination (for example, by a healthcare professional), you must agree to the request.

- **Release**
  If your Claim is allowed, you will be notified of your Allowed Claim Amount. To receive any payment on your Allowed Claim, you will need to sign a release. The form of release agreement that Trust Claim Submission Claimants must execute is included in the Trust Distribution Procedures ("TDP") as Exhibit D. You can view a copy of the release through the "News and Key Links" page of the Trust website (www.scoutingsettlementtrust.com) by clicking on "Trust Distribution Procedures for Abuse Claims ("TDP")".

- **Information May be Shared with Insurers**
  You must agree that all information that you provide in this Questionnaire may be provided to insurers, Chartered Organizations, or other entities that may have payment obligations in connection with your Claim, solely to the extent necessary to pursue or obtain payment for your Claim and subject to appropriate confidentiality protections. ("Chartered Organizations" means any civic, faith-based, educational, business, or governmental entity or organization or any group of people that is or was authorized by the Boy Scouts of America to operate, sponsor, or otherwise support one or more Scouting units.)

- **Health Information May be Used to Resolve Liens**
  Health insurance providers that may have paid for medical care related to the harm you suffered may have a legal right to be repaid out of your award for the expenses they paid. They may have a "lien" on your award. In those cases, the Trust cannot pay the Claim unless we provide certain information to those insurance providers. By signing this Questionnaire, you acknowledge that the Bankruptcy Court has entered an Order (available on the Trust website) authorizing the Trust to confidentially exchange information with applicable health insurance providers.

### How to Submit Questionnaire
To submit your completed and signed Questionnaire, you must complete the following:
- Carefully read these instructions.
- Complete the required sections of this Questionnaire.
- Collect and attach all the documents and records in your possession related to this Abuse Claim.
- Sign and submit the Questionnaire.

When submitting this Questionnaire, please keep the following in mind:
- Required fields will be indicated with an asterisk (*).
- Please complete all required questions before submitting this Questionnaire. Please note that in order to properly make a Trust Claim Submission, the Trust Claims Questionnaire must be fully completed.
- If you need additional space, please attach additional pages to this Questionnaire with your responses.
- Upon submission of the Questionnaire, you are required to provide your signature under penalty of perjury. If you are represented by an attorney, your attorney is also required to sign this Questionnaire.
- You should maintain a copy of your Questionnaire submission for your records.
- If you are having trouble completing the Questionnaire and need assistance, please call us toll-free at 1-833-961-6495 or email info@scoutingsettlementtrust.com.

Please attach and submit all relevant documents for your Abuse Claim with this Questionnaire. After the Questionnaire has been submitted, additional documents submitted at a later date will not be considered, unless additional documentation or clarification is requested by the Trustee.

Note that the Questionnaire is not complete until you have signed it under penalty of perjury. If you are represented by a lawyer, the Questionnaire is not complete until the lawyer has also signed it. Refer to *Section P. Signature Under Penalty of Perjury*.

Please submit your completed and signed Questionnaire by following the steps below:
- Enclose the Questionnaire in the pre-paid envelope provided.
- Ensure the envelope is appropriately sealed. If you are concerned that the envelope may open in transit, place tape over the seal of the envelope.
- Send your completed and signed Questionnaire to the following address:

TO SUBMIT YOUR CLAIM ONLINE VISIT www.scoutingsettlementtrust.com
This Questionnaire is only for use by Claimants or their attorney to facilitate submitting a claim to the Scouting Settlement Trust. Any other use, reproduction, or distribution of this Questionnaire is prohibited.

Scouting Settlement Trust
P.O. Box 50157
McLean, VA 22102

If you would prefer to submit this Questionnaire electronically through the online claims processing portal, please contact the Trust at info@scoutingsettlementtrust.com for additional information.

## B. Election: Which process would you like to use to resolve your Claim?

### Elect Which Claims Process to Use
There are two options.

*Option #1* is called **Trust Claim Submission**. Claimants who elect this option will have their Claim valued by the Trustee in accordance with the range of values that are defined in the settlement papers. Claims that are allowed by the Trustee could be valued at amounts between $3,500 to $2,700,000 according to criteria that are spelled out in detail in the settlement papers. Claimants who choose this option must fully complete this Questionnaire.

*Option #2* is called **Independent Review Option**. Claimants who elect this option will have an independent, neutral third party (a retired judge with tort experience) make a settlement recommendation to the Trustee after participating in a fact-finding process (like a trial). Claimants who elect this option must pay a fee to participate in this process: they must pay $10,000 at the time they elect the option, and an additional $10,000 immediately before the neutral's review process begins. Claimants who choose this option must fully complete this Questionnaire and pay the fees. **The deadline to select this option (Independent Review Option) is October 19, 2023.**

Which option do you choose? *

☑ **Trust Claim Submission**
☐ **Independent Review Option**

Note that under either Option #1 or Option #2, a Claimant may not receive payment of the full value that the Trustee assigns to his/her Abuse Claim. This is because the settlement documents require that all Claimants receive the same percentage recovery on their Allowed Abuse Claims. In turn, the percentage of each Allowed Abuse Claim that will be paid depends on the amount of available funds in the Trust and the aggregate amount of all Allowed Abuse Claims.

### Do not fill out this Questionnaire if you elected Expedited Distribution
If you elected Expedited Distribution on the Direct Abuse Claims Ballot, do not fill out this Questionnaire. (Some people call the Expedited Distribution option "Quick Pay.") Expedited Distribution Abuse Claims are reviewed in a different process. Please send an email to info@scoutingsettlementtrust.com to request an Expedited Claims Questionnaire (Black Form). If you did not elect Expedited Distribution on your Ballot, you cannot choose Expedited Distribution now.

**Scouting Settlement Trust – Trust Claims Questionnaire**

TO SUBMIT YOUR CLAIM ONLINE VISIT www.scoutingsettlementtrust.com

This Questionnaire is only for use by Claimants or their attorney to facilitate submitting a claim to the Scouting Settlement Trust. Any other use, reproduction, or distribution of this Questionnaire is prohibited.

**brown**rudnick



September 30, 2021

**To:** Holders of Direct Abuse Claims Against the Boy Scouts of America
**From:** Coalition of Abused Scouts for Justice and Court-Appointed Future Claimants' Representative

## RE:    RECOMMENDATION THAT SEXUAL ABUSE VICTIMS VOTE TO ACCEPT THE BOY SCOUTS OF AMERICA REORGANIZATION PLAN

The **Coalition of Abused Scouts for Justice** (the "**Coalition**") and **James Patton, the Future Claims Representative** (the "**FCR**") appointed in the chapter 11 cases of the Boy Scouts of America (the "**BSA**"), together and jointly urge survivors to *vote to ACCEPT the reorganization Plan* (the "Plan") proposed and negotiated between the BSA and these survivor representatives, the Coalition and the FCR.

The Coalition is an ad hoc committee that represents survivors of sexual abuse suffered in connection with Scouting. The Coalition's members – approximately 18,000 survivors – are represented by over two dozen law firms that collectively represent over 60,000 survivors. The Coalition was formed to negotiate on behalf of its substantial survivor constituency, maximize the recovery available to all survivors, and minimize the time and expense to achieve those recoveries. The FCR was appointed by the Bankruptcy Court to be the official advocate for the interests of future claimants, including current minors and survivors suffering from repressed memories of their abuse.

The Coalition and the FCR have worked tirelessly on behalf of survivors to negotiate the terms of the Plan, which will provide *over $1.7 billion* (likely more) to be paid to survivors. It also provides the framework for substantial future settlements that will increase the recovery for survivors. The Plan is currently supported by representatives of approximately 70,000 survivors.

**The Plan represents the only assured path to recover and pay billions of dollars to survivors of sexual abuse in the BSA's programs. The only other path for survivors likely involves years of litigation and significant risk that survivors will receive much less than they are assured of receiving under the Plan. In our view, the settlement embodied in the Plan represents the best possible outcome for sexual abuse survivors. It will result in meaningful distributions of over a billion dollars in value (likely more) to survivors following confirmation, without lengthy, expensive and harmful litigation of individual abuse claims. A very brief description of the Plan terms, as pertaining to you and your recoveries, is contained below.**

### I.    What You Will Receive Under the Plan

If the Plan is confirmed, a newly formed Settlement Trust will be established. Your claim against BSA, as well as any Local Council, and certain other "Protected Parties," will be transferred to and paid from the Settlement Trust. The Settlement Trust will assess your claim in accordance with its Trust Distribution Procedures (TDP) and value the claim based on the type and extent of abuse suffered and other factors. Based on these factors, most claims will be valued between $3,500 and $2,700,000. If you do not wish to undergo the full claims evaluation process, you will be able to elect to receive a one-time payment of $3,500, prior to the start of that process.

28647764.2

**Brown Rudnick LLP** | brownrudnick.com | 7 Times Square, New York, NY, 10036 | 1.212.209.4800

The Settlement Trust will collect funds from the BSA, its Local Councils, their insurers, and chartered organizations, and distribute available funds to survivors. To date, there are settlements that will provide over $1.8 billion (likely more) in initial funding to the Settlement Trust. The actual amount of your recovery, unless you select the one-time $3,500 payment, will depend on both the specifics of your claim and the amounts contributed to the Settlement Trust by, among others, insurance companies and chartered organizations in the future.

## II. What the Boy Scouts and Their Affiliates And Insurers Are Contributing to the Plan

**To date, the Coalition and FCR have negotiated commitments of approximately $1.8 billion to the Settlement Trust. The Coalition and FCR expect that number to grow significantly in coming months given this amount only includes financial contributions from one (1) insurer settlement and one (1) Chartered Organization settlement to date, with potentially many insurer and Charter Organization financial contribution settlements to come.**

**Of the over $1.8 billion that we have negotiated to date, these contributions include:**

- **The BSA itself will contribute assets worth approximately $220 million to the Settlement Trust, along with potentially billions of dollars' worth of insurance rights.** The exact amount depends on certain timing factors and the prices of non-liquid assets which will have to be monetized. The Coalition and FCR believe this is the maximum amount that could be contributed by the BSA by law without forcing the organization into liquidation or years-long litigation, either of which would diminish assets available to abuse survivors.

- **The BSA's Local Councils will contribute assets valued at approximately $600 million to the Settlement Trust, along with potentially billions of dollars' worth of insurance rights.** While this may leave some Local Councils with significant assets, BSA's own insurance polices cannot be unlocked without the Local Councils' rights to those policies. Moreover, not every Local Council faces the same abuse liability, and many of the Local Councils with the most property and assets are located in jurisdictions that do not have favorable statutes of limitations for survivors. Additionally, many Local Councils take the position that most of their property is legally restricted and cannot be used to pay survivors. While the Coalition and FCR do not necessarily agree with all (or many) of the positions being taken by the Local Councils, we believe that in the absence of an agreed settlement like the one represented by the BSA Plan, many of these Local Councils may not have an incentive to contribute insurance rights. The settlement that we have negotiated with Local Councils – for $600 million in the aggregate – is very substantial. Indeed, some Local Councils under the settlement may be paying more than they would likely have to pay in the absence of a settlement. The settlement also avoids the likelihood that some or many Local Councils would be forced to liquidate, which would make it more challenging to recover assets for survivors.

- The Hartford insurance company will contribute $787 million to the Settlement Trust. You may remember that BSA announced a settlement with Hartford in April 2021 that BSA claimed was for $650 million. The Coalition and FCR opposed that settlement vigorously. We thought that it did not make Hartford pay enough to survivors and it contained a provision through which Hartford could have paid substantially less, potentially $400 million or below. Survivors face a significant risk that the Bankruptcy Court might enforce this earlier settlement agreement with these unfavorable terms that might allow Hartford to pay only a fraction of its exposure.



To: Holders of Direct Abuse Claims Against the Boy Scouts of America
September 30, 2021
Page 3



The Coalition and FCR led negotiations to correct these problems with the original Hartford settlement. The deal in the Plan does this. Through the work of the Coalition and the FCR, Hartford has agreed to increase its contribution to $787 million. That amount is not subject to reduction. And it is only available through the Plan. In the Coalition and FCR's view this settlement amount, the assurance that it will be received under the Plan, and the elimination of the risk that Hartford might pay substantially less make this revised settlement with Hartford fair.

- **The Church of Jesus Christ of Latter-Day Saints ("TCJC") will contribute $250 million to the Settlement Trust, along with potentially billions of dollars' worth of insurance rights.** The Coalition and FCR believe that this amount represents a substantial portion of the aggregate liability for sex abuse claims related to the TCJC (for which it is co-liable with the BSA, Local Councils, and insurers such as Hartford, who will also contribute to survivor recoveries, as noted above). The Coalition and FCR believe that this commitment is reasonable and provides an excellent recovery for survivors of abuse related to the TCJC's scouting programs.

- **The Coalition and the FCR will continue to negotiate with dozens of other insurers and sponsoring "chartered organizations" to make significant additional contributions to the Settlement Trust for the benefit of survivors.** The Plan provides a framework to allow the Coalition and the FCR to continue to negotiate additional settlements for the benefit of survivors. The substantial amounts that will be available to survivors in the Settlement Trust on Day One represent the payments of only one insurer and one chartered organization (in addition to the BSA and Local Councils). There are literally dozens of insurers and chartered organizations with whom we are continuing to negotiate. Many of the BSA's insurers have disputed that they are obligated to honor their coverage obligations. Some have gone so far as to allege widespread fraud by survivors and their representatives in the filing of claims. The Plan is designed to reduce their ability to continue to shirk their coverage obligations. We believe it will force them to honor their promises to pay, and make significant financial contributions for the benefit of survivors and the Settlement Trust. We believe that with continued negotiation (or, if necessary, litigation), insurers and chartered organizations will, over time, significantly increase the amounts they will pay to compensate survivors.

### III.    The Plan Provides a Fair and Equitable Recovery for the Harm You Suffered, and Allows the Boy Scouts to Continue Their Charitable Mission

We strongly believe that the Plan represents fair value for those who suffered abuse in connection with BSA programs. In fact, if the Bankruptcy Court does not find that the Plan will provide you a fair and reasonable recovery, the Plan cannot be confirmed. The Coalition, FCR and the BSA believe that the Plan will indeed provide a substantial recovery, and much more quickly than if the parties choose litigation.

Moreover, **the Plan will allow the BSA to continue into the future, while requiring the BSA to implement even stronger protections against sexual abuse for future participants.** The Coalition and FCR understand that abuse survivors may or may not support the continuation of the BSA's charitable mission. However, the BSA's survival is important for two reasons:

- If the BSA were to terminate its programs and liquidate its assets, it is very unlikely that abuse survivors would receive greater recoveries than under the Plan. This is because, among other things, the BSA and Local Councils would likely incur over a billion dollars in priority pension liability, and insurers would be incentivized to deny and litigate coverage obligations on an individual-by-individual basis.



To: Holders of Direct Abuse Claims Against the Boy Scouts of America
September 30, 2021
Page 4



- The BSA and the Local Councils have made financial commitments to make ongoing contributions to the Settlement Trust depending on its financial performance. In other words, the more youths that choose to participate in BSA programs in future, the more likely it is that the BSA will be able to honor its obligations under the Plan.

**The Coalition and FCR believe that any alternative to confirmation of the Plan will result in extensive delays, increased administrative expenses, and the termination of the valuable settlements that have been negotiated in the Plan. Each of these occurrences would, in turn, result in significantly smaller distributions to abuse survivors.**

**We believe the Plan maximizes the achievable recovery for survivors. Therefore, the Coalition and FCR strongly recommend that you timely vote to accept the Plan in accordance with the procedures that have been established by the Bankruptcy Court.**

### IV.    When, How and Why to Vote

You have been provided with a ballot to vote to accept or reject the Plan. In order to have your vote counted, you must complete and return the ballot by **December 14, 2021 at 4:00 p.m. (Eastern Time)** as the deadline to vote to accept or reject the Plan (the "Voting Deadline").

Your timely vote is important. The Plan cannot be confirmed without the broad consent of abuse survivors.

*THE FOREGOING IS NOT INTENDED AS A SUBSTITUTE FOR THE PLAN AND DISCLOSURE STATEMENT. ALL SURVIVORS SHOULD READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY, AND SPEAK TO THEIR LAWYER OR OTHER ADVISOR TO THE EXTENT THEY WISH TO DO SO.*

If you have any questions as to this recommendation, you may contact the Coalition at BSACoalition@brownrudnick.com and the FCR at BSA-FCR@ycst.com.

Sincerely,

For the Coalition,
BROWN RUDNICK LLP

For the FCR,
YOUNG CONAWAY STARGATT & TAYLOR, LLP

Robert S. Brady

David J. Molton

64166782 v1-WorkSiteUS-036293/0001

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

BOY SCOUTS OF AMERICA AND
DELAWARE BSA, LLC,[1]

Debtors.

Chapter 11

Case No. 20-10343 (LSS)

(Jointly Administered)

## SOLICITATION PROCEDURES

**PLEASE TAKE NOTICE THAT** on September 30, 2021, the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") entered an order in the above-captioned chapter 11 cases [D.I. 6438] (the "**Solicitation Procedures Order**") (a) approving the *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (the "**Disclosure Statement**"); (b) establishing the Voting Record Date, Voting Deadline, and other related dates in connection with confirmation of the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (as may be modified, amended, or supplemented from time to time, the "**Plan**");[2] (c) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan; and (d) approving the form and manner of notice and other related documents as they relate to the Debtors; and (e) granting related relief.

The Solicitation Procedures set forth in this document are supplemented by the instructions accompanying the Ballots included in the Solicitation Packages that will be sent to those holders of Claims entitled to vote to accept or reject the Plan. Reference should be made to those instructions in addition to this document; however, in the case of a conflict, the terms of the Ballots control.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Debtors' Motion for Entry of an Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation and Voting Procedures, (III) Approving Forms of Ballots, (IV) Approving the Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief* [D.I. 1295] (the "**Solicitation Procedures Motion**"), the Plan, the Disclosure Statement, or the Order, Pursuant to 11 U.S.C. § 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-1(e), 3003-1, and 3003-1, (I) Establishing Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, (III) Approving Procedures for Providing Notice of Bar Date and Other Important Information to Abuse Survivors, and (IV) Approving Confidentiality Procedures for Abuse Survivors [D.I. 695], as applicable.

---

2

## I.    VOTING RECORD DATE

The Bankruptcy Court has established **October 1, 2021** as the record date for purposes of determining which holders of Claims in Class 3A (2010 Credit Facility Claims), Class 3B (2019 RCF Claims), Class 4A (2010 Bond Claims), Class 4B (2012 Bond Claims), Class 5 (Convenience Claims), Class 6 (General Unsecured Claims), Class 7 (Non-Abuse Litigation Claims), Class 8 (Direct Abuse Claims), and Class 9 (Indirect Abuse Claims) are entitled to vote on the Plan (the "**Voting Record Date**").

## II.    VOTING DEADLINE

The Bankruptcy Court has approved **December 14, 2021 at 4:00 p.m. (Eastern Time)** as the deadline to vote to accept or reject the Plan (the "**Voting Deadline**"). Subject to Section VI, the Debtors may extend the Voting Deadline upon notice to parties in interest. To be counted as a vote to accept or reject the Plan, each Ballot or Master Ballot (each, generally referred to herein as a "**Ballot**") must be properly executed, completed, and delivered by (1) the electronic Ballot submission platform on the Solicitation Agent's website (the "**E-Ballot Platform**"), (2) mail, (3) overnight delivery, or (4) personal delivery, so that it is *actually received* in each case, by the Solicitation Agent no later than the Voting Deadline. Specifically, each Ballot must be returned through the E-Ballot Platform at (a) https://omniagentsolutions.com/bsa-SAballots for Direct Abuse Claim Ballots and Master Ballots or (b) https://omniagentsolutions.com/bsa-ballots for all other Ballots,[3] by mail using the envelope included in the Solicitation Package, as applicable, or by overnight or personal delivery to the following address:

> Boy Scouts of America Ballot Processing
> c/o Omni Agent Solutions
> 5955 De Soto Avenue, Suite 100
> Woodland Hills, CA 91367

Only one Ballot may be submitted on account of each Claim. Holders of Claims that submit a Ballot via the E-Ballot Platform should not also submit a paper Ballot. If a holder of a Claim submits a Ballot using the E-Ballot Platform and a paper Ballot, the last Ballot actually received by the Solicitation Agent before the Voting Deadline shall be deemed to be the effective vote. Delivery of a Ballot to the Solicitation Agent by facsimile or electronic means other than through the E-Ballot Platform shall not be valid.

---

[3] Exhibits to Master Ballots may only be submitted in Excel format via the E-Ballot Platform or, if the Master Ballot is being mailed, by USB drive—they may not be printed out and submitted in hard copy format. Votes provided on any Exhibit submitted in a format other than the Excel Exhibit provided by the Solicitation Agent shall not be counted. The Exhibit must be submitted together with the Master Ballot. Parties shall endeavor to submit Ballots through the proper E-Ballot Platform. In the event that a party, for example, submits a Direct Abuse Claim Ballot through the general E-Ballot Platform, such Ballot shall be counted in accordance with the procedures set forth herein.

---

2

formatting errors or omissions, and (b) make conforming changes to the Plan, the Disclosure Statement, and any other materials in the Solicitation Packages before distribution.

40.    Nothing in this Solicitation Procedures Order shall be construed as a waiver of the right of the Debtors or other party in interest, as applicable, to object to a Proof of Claim after the Voting Record Date.

41.    All time periods set forth in this Solicitation Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

42.    Notwithstanding any applicable Bankruptcy Rule, the terms and conditions of this Solicitation Procedures Order shall be immediately effective and enforceable upon its entirety;

43.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

44.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Solicitation Procedures Order.

Dated: September 30th, 2021
Wilmington, Delaware

LAURIE SELBER SILVERSTEIN
17   UNITED STATES BANKRUPTCY JUDGE

---

**Exhibit 1**

**Solicitation Procedures**

## Unique and Timely Abuse Claim Count by Local Council
Rows in white list Abuse Claims against individual Local Councils. Rows in blue (with the exception of "UNKNOWN" and "MISSING") list Abuse Claims against more than one Local Council.

| Local Council # (1) | Local Council | All Unique & Timely Abuse Claims (2)* | All Unique, Timely & Not-Barred Abuse Claims (3)* | Count of Pending Lawsuits (4) |
|---|---|---|---|---|
| 001 | GREATER ALABAMA | 445 | 13 | 0 |
| 003 | ALABAMA-FLORIDA | 65 | 2 | 0 |
| 004 | MOBILE AREA | 132 | 4 | 0 |
| 005 | TUKABATCHEE AREA | 124 | 1 | 0 |
| 006 | BLACK WARRIOR | 73 | 1 | 0 |
| 010 | GRAND CANYON | 544 | 522 | 115 |
| 011 | CATALINA | 218 | 215 | 69 |
| 013 | DE SOTO AREA | 30 | 29 | 0 |
| 016 | WESTARK AREA | 115 | 112 | 1 |
| 018 | QUAPAW AREA | 392 | 378 | 3 |
| 023 | GOLDEN GATE AREA | 759 | 736 | 0 |
| 027 | SEQUOIA | 260 | 251 | 0 |
| 030 | SOUTHERN SIERRA | 156 | 150 | 0 |
| 031 | PACIFIC SKYLINE | 109 | 106 | 0 |
| 032 | LONG BEACH AREA | 165 | 159 | 0 |
| 033 | GREATER LOS ANGELES | 1,328 | 1,300 | 2 |
| 035 | MARIN | 35 | 34 | 0 |
| 039 | ORANGE COUNTY | 402 | 390 | 0 |
| 041 | REDWOOD EMPIRE | 66 | 65 | 1 |
| 042 | PIEDMONT 042 | 7 | 7 | 0 |
| 045 | CALIFORNIA INLAND EMPIRE | 508 | 494 | 2 |
| 047 | GOLDEN EMPIRE | 467 | 453 | 2 |
| 049 | SAN DIEGO - IMPERIAL COUNCIL | 443 | 430 | 2 |
| 051 | WESTERN LOS ANGELES COUNTY | 273 | 267 | 2 |
| 053 | LOS PADRES | 91 | 87 | 0 |
| 055 | SILICON VALLEY MONTEREY BAY | 321 | 313 | 1 |
| 057 | VENTURA COUNTY | 97 | 95 | 0 |
| 058 | VERDUGO HILLS | 75 | 75 | 0 |
| 059 | GREATER YOSEMITE | 215 | 210 | 0 |
| 060 | PIKES PEAK | 101 | 94 | 0 |
| 061 | DENVER AREA | 370 | 333 | 1 |
| 062 | LONGS PEAK COUNCIL | 124 | 94 | 0 |
| 063 | ROCKY MOUNTAIN | 83 | 69 | 0 |
| 066 | CONNECTICUT RIVERS | 307 | 39 | 4 |
| 067 | GREENWICH | 4 | 1 | 0 |
| 069 | HOUSATONIC | 10 | 3 | 0 |
| 070 | OLD NORTH STATE | 177 | 171 | 4 |
| 072 | CONNECTICUT YANKEE | 249 | 40 | 13 |
| 081 | DEL-MAR-VA | 140 | 24 | 0 |
| 082 | NATIONAL CAPITAL AREA | 630 | 160 | 5 |
| 082 | DIRECT SERVICE | 13 | 2 | 0 |
| 083 | CENTRAL FLORIDA | 321 | 14 | 1 |
| 084 | SOUTH FLORIDA COUNCIL | 553 | 11 | 0 |
| 085 | GULF STREAM | 177 | 3 | 0 |
| 087 | NORTH FLORIDA | 307 | 14 | 2 |
| 088 | SOUTHWEST FLORIDA | 125 | 4 | 0 |
| 089 | GREATER TAMPA BAY AREA | 487 | 19 | 0 |
| 091 | CHATTAHOOCHEE | 126 | 0 | 0 |
| 092 | ATLANTA AREA | 470 | 26 | 0 |
| 093 | GEORGIA-CAROLINA | 89 | 3 | 0 |
| 095 | FLINT RIVER | 72 | 6 | 0 |
| 096 | CENTRAL GEORGIA | 94 | 3 | 0 |
| 098 | SOUTH GEORGIA | 90 | 6 | 0 |
| 099 | COASTAL GEORGIA | 128 | 6 | 1 |
| 100 | NORTHWEST GEORGIA | 44 | 1 | 0 |
| 101 | NORTHEAST GEORGIA | 119 | 12 | 10 |
| 104 | ALOHA | 196 | 188 | 85 |
| 106 | MOUNTAIN WEST | 143 | 5 | 1 |
| 107 | GRAND TETON | 84 | 4 | 0 |
| 117 | PRAIRIELANDS | 83 | 10 | 0 |
| 127 | THREE FIRES | 149 | 18 | 0 |
| 129 | NORTHEAST ILLINOIS | 108 | 11 | 0 |
| 133 | ILLOWA | 126 | 9 | 0 |
| 138 | W.D. BOYCE | 151 | 18 | 0 |
| 141 | MISSISSIPPI VALLEY | 40 | 3 | 0 |
| 144 | ABRAHAM LINCOLN | 53 | 6 | 0 |
| 145 | HOOSIER TRAILS | 79 | 3 | 0 |
| 156 | BUFFALO TRACE | 113 | 3 | 0 |
| 157 | ANTHONY WAYNE AREA | 103 | 3 | 0 |
| 160 | CROSSROADS OF AMERICA | 442 | 12 | 0 |
| 162 | SAGAMORE | 117 | 5 | 0 |
| 165 | LASALLE | 130 | 3 | 0 |
| 172 | HAWKEYE AREA | 59 | 3 | 2 |
| 173 | WINNEBAGO | 61 | 1 | 0 |
| 177 | MID-IOWA | 159 | 3 | 0 |
| 178 | NORTHEAST IOWA COUNCIL | 28 | 2 | 0 |
| 192 | CORONADO AREA | 67 | 4 | 0 |
| 194 | SANTA FE TRAIL | 19 | 2 | 0 |
| 197 | JAYHAWK AREA | 41 | 1 | 0 |
| 198 | QUIVIRA | 275 | 10 | 1 |
| 204 | BLUE GRASS | 207 | 7 | 0 |
| 205 | LINCOLN HERITAGE | 429 | 13 | 8 |

## Unique and Timely Abuse Claim Count by Allegation

| Most Severe Allegation | Unique & Timely Abuse Claim Count | Percent of Total |
|---|---:|---:|
| 1. Penetration | 24,539 | 30% |
| 2. Oral Sex | 18,856 | 23% |
| 3. Masturbation | 13,022 | 16% |
| 4. Groping | 17,138 | 21% |
| 5. Touching-Unclothed | 1,879 | 2% |
| 6. Touching-Clothed | 1,294 | 2% |
| 7. Unknown/Unconfirmed | 3,817 | 5% |
| 8. Missing | 1,664 | 2% |
| **Total** | **82,209** | **100%** |

| Penetration Claim | | | | |
|---|---|---|---|---|
| Base Claim Amount: $600,000 | | | | |
| % Of Base Claim Payment: 9.63% | | | | |
| Payment Range: $3,177 - $57,771 | | | | |
| Base Payment After Statute Of Limitation Adjustments | | | | |
| Closed $3,177 | Gray 3 $10,110 | Gray 2 $21,664 | Gray 1 $34,663 | Open (or in-statute in any State) $57,771 |

| Oral Sex Claim | | | | |
|---|---|---|---|---|
| Base Claim Amount: $450,000 | | | | |
| % Of Base Claim Payment: 9.63% | | | | |
| Payment Range: $2,383 - $43,328 | | | | |
| Base Payment After Statute Of Limitation Adjustments | | | | |
| Closed $2,383 | Gray 3 $7,582 | Gray 2 $16,248 | Gray 1 $25,997 | Open (or in-statute in any State) $43,328 |

| Masturbation Claim | | | | |
|---|---|---|---|---|
| Base Claim Amount: $300,000 | | | | |
| % Of Base Claim Payment: 9.63% | | | | |
| Payment Range: $1,589 - $28,886 | | | | |
| Base Payment After Statute Of Limitation Adjustments | | | | |
| Closed $1,589 | Gray 3 $5,055 | Gray 2 $10,832 | Gray 1 $17,331 | Open (or in-statute in any State) $28,886 |

| Touching Unclothed Claim | | | | |
|---|---|---|---|---|
| Base Claim Amount: $150,000 | | | | |
| % Of Base Claim Payment: 9.63% | | | | |
| Payment Range: $794 - $14,443 | | | | |
| Base Payment After Statute Of Limitation Adjustments | | | | |
| Closed $794 | Gray 3 $2,527 | Gray 2 $5,416 | Gray 1 $8,666 | Open (or in-statute in any State) $14,443 |

| Touching Clothed Claim | | | | |
|---|---|---|---|---|
| Base Claim Amount: $75,000 | | | | |
| % Of Base Claim Payment: 9.63% | | | | |
| Payment Range: $397 - $7,221 | | | | |
| Base Payment After Statute Of Limitation Adjustments | | | | |
| Closed $397 | Gray 3 $1,264 | Gray 2 $2,708 | Gray 1 $4,333 | Open (or in-statute in any State) $7,221 |

| Non-Touching Claim | | | | |
|---|---|---|---|---|
| Base Claim Amount: $3,500 | | | | |
| % Of Base Claim Payment: 9.63% | | | | |
| Payment Range: $19 - $337 | | | | |
| Base Payment After Statute Of Limitation Adjustments | | | | |
| Closed $19 | Gray 3 $59 | Gray 2 $126 | Gray 1 $202 | Open (or in-statute in any State) $337 |

| Max Claim Amount | | | | | | | | | | | $ | 8,500 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10% Recovery | $ | 47 | $ | 149 | $ | 319 | $ | 510 | $ | 850 |
| 63% Recovery | $ | 295 | $ | 937 | $ | 2,008 | $ | 3,213 | $ | 5,355 |
| 100% Recovery | $ | 468 | $ | 1,488 | $ | 3,188 | $ | 5,100 | $ | 8,500 |

**2. Tort Claimants' Committee's Illustrative Direct Abuse Claim Recoveries under the Trust Distribution Procedures**

The Tort Claimants' Committee has a different view than the Debtors about the value of Abuse Claims. The Tort Claimants' Committee also took the known value being contributed to the Settlement Trust, excluding the TCJC Settlement Contribution, as of September 23, 2021 ($1.604 billion) less estimated costs to operate the Settlement Trust (projected at 10%). After adjustment for administrative expenses, $1.444 billion would be distributable to the holders of Allowed Abuse Claims.

The Tort Claimants' Committee calculated the range of values of all asserted Abuse Claims is $13.5 billion to $73.2 billion taking into account the Base and Maximum Claim values under the Trust Distribution Procedures and the range of statute of limitations discounts. For purposes of this illustration, the Tort Claimants' Committee estimated the total claims amount assuming *all* the Abuse Claims are allowed at the base value in the Trust Distribution Procedures. The Abuse Claims were then adjusted using the median of the statutes of limitations discount range.[46] This results in an estimated recovery of 9.63%. The Tort Claimants' Committee did not discount for lack of information in the claim filings, in part because claimants will have the opportunity to supplement that information.

The chart below sets forth the projected recovery on a base claim by Abuse type after applying the median discounts for statutes of limitations required under the Trust Distribution Procedures based on the applicable state law. *These amounts will be further reduced on account of recoveries for holders of Future Abuse Claims, which claims have been estimated by the Future Claimants' Representative to be approximately $5 billion or approximately 21% of the total value of Direct Abuse Claims as calculated by Ankura applying the procedures and criteria set forth in the Trust Distribution Procedures dated July 2, 2021.*

---

[46] The references in the chart below to "closed" "Grey 1-3" and "open" are references to the tiers for statute of limitations adjustments in the Trust Distribution Procedures as noted above and as set forth on Schedule 1 to the Trust Distribution Procedures.

|  | Closed (5.5%) | Gray 3 (17.5%) | Gray 2 (37.5%) | Gray 1 (60%) | Open (100%) |
|---|---|---|---|---|---|
| **Base Claim Amount** |  |  |  |  | **$ 300,000** |
| 10% Recovery | $ 1,650 | $ 5,250 | $ 11,250 | $ 18,000 | $ 30,000 |
| 63% Recovery | $ 10,395 | $ 33,075 | $ 70,875 | $ 113,400 | $ 189,000 |
| 100% Recovery | $ 16,500 | $ 52,500 | $ 112,500 | $ 180,000 | $ 300,000 |
| **Max Claim Amount** |  |  |  |  | **$ 1,350,000** |
| 10% Recovery | $ 7,425 | $ 23,625 | $ 50,625 | $ 81,000 | $ 135,000 |
| 63% Recovery | $ 46,778 | $ 148,838 | $ 318,938 | $ 510,300 | $ 850,500 |
| 100% Recovery | $ 74,250 | $ 236,250 | $ 506,250 | $ 810,000 | $ 1,350,000 |

| **Touching Unclothed Claim** | | | | | |
|---|---|---|---|---|---|
| Recovery Range | Out-of-Statute Claims | | | | In-Statute in Any State |
|  | Closed (5.5%) | Gray 3 (17.5%) | Gray 2 (37.5%) | Gray 1 (60%) | Open (100%) |
| **Base Claim Amount** |  |  |  |  | **$ 150,000** |
| 10% Recovery | $ 825 | $ 2,625 | $ 5,625 | $ 9,000 | $ 15,000 |
| 63% Recovery | $ 5,198 | $ 16,538 | $ 35,438 | $ 56,700 | $ 94,500 |
| 100% Recovery | $ 8,250 | $ 26,250 | $ 56,250 | $ 90,000 | $ 150,000 |
| **Max Claim Amount** |  |  |  |  | **$ 675,000** |
| 10% Recovery | $ 3,713 | $ 11,813 | $ 25,313 | $ 40,500 | $ 67,500 |
| 63% Recovery | $ 23,389 | $ 74,419 | $ 159,469 | $ 255,150 | $ 425,250 |
| 100% Recovery | $ 37,125 | $ 118,125 | $ 253,125 | $ 405,000 | $ 675,000 |

| **Touching Clothed Claim** | | | | | |
|---|---|---|---|---|---|
| Recovery Range | Out-of-Statute Claims | | | | In-Statute in Any State |
|  | Closed (5.5%) | Gray 3 (17.5%) | Gray 2 (37.5%) | Gray 1 (60%) | Open (100%) |
| **Base Claim Amount** |  |  |  |  | **$ 75,000** |
| 10% Recovery | $ 413 | $ 1,313 | $ 2,813 | $ 4,500 | $ 7,500 |
| 63% Recovery | $ 2,599 | $ 8,269 | $ 17,719 | $ 28,350 | $ 47,250 |
| 100% Recovery | $ 4,125 | $ 13,125 | $ 28,125 | $ 45,000 | $ 75,000 |
| **Max Claim Amount** |  |  |  |  | **$ 337,500** |
| 10% Recovery | $ 1,856 | $ 5,906 | $ 12,656 | $ 20,250 | $ 33,750 |
| 63% Recovery | $ 11,694 | $ 37,209 | $ 79,734 | $ 127,575 | $ 212,625 |
| 100% Recovery | $ 18,563 | $ 59,063 | $ 126,563 | $ 202,500 | $ 337,500 |

| **Non-Touching Claim** | | | | | |
|---|---|---|---|---|---|
| Recovery Range | Out-of-Statute Claims | | | | In-Statute in Any State |
|  | Closed (5.5%) | Gray 3 (17.5%) | Gray 2 (37.5%) | Gray 1 (60%) | Open (100%) |
| **Base Claim Amount** |  |  |  |  | **$ 3,500** |
| 10% Recovery | $ 19 | $ 61 | $ 131 | $ 210 | $ 350 |
| 63% Recovery | $ 121 | $ 386 | $ 827 | $ 1,323 | $ 2,205 |
| 100% Recovery | $ 193 | $ 613 | $ 1,313 | $ 2,100 | $ 3,500 |

| | | | | |
|---|---|---|---|---|
| Utah | Maryland | Pennsylvania | Massachusetts | Hawaii |
| Wyoming | Michigan | South Carolina | New Mexico | Louisiana |
| Unknown / Federal | Mississippi | Tennessee | Oregon | Maine |
| | Missouri | West Virginia | Washington | Montana |
| | Nebraska | | | New Jersey |
| | Nevada | | | New York |
| | Rhode Island | | | North Carolina |
| | Texas | | | Vermont |
| | Virgin Islands | | | |
| | Virginia | | | |
| | Wisconsin | | | |

## Debtors Illustrative Distribution Examples By Type of Direct Abuse Claim

### Penetration Claim

| Recovery Range | Out-of-Statute Claims | | | | In-Statute in Any State |
|---|---|---|---|---|---|
| | Closed (5.5%) | Gray 3 (17.5%) | Gray 2 (37.5%) | Gray 1 (60%) | Open (100%) |
| **Base Claim Amount** | | | | | $ 600,000 |
| 10% Recovery | $ 3,300 | $ 10,500 | $ 22,500 | $ 36,000 | $ 60,000 |
| 63% Recovery | $ 20,790 | $ 66,150 | $ 141,750 | $ 226,800 | $ 378,000 |
| 100% Recovery | $ 33,000 | $ 105,000 | $ 225,000 | $ 360,000 | $ 600,000 |
| **Max Claim Amount** | | | | | $ 2,700,000 |
| 10% Recovery | $ 14,850 | $ 47,250 | $ 101,250 | $ 162,000 | $ 270,000 |
| 63% Recovery | $ 93,555 | $ 297,675 | $ 637,875 | $ 1,020,600 | $ 1,701,000 |
| 100% Recovery | $ 148,500 | $ 472,500 | $ 1,012,500 | $ 1,620,000 | $ 2,700,000 |

### Oral Sex Claim

| Recovery Range | Out-of-Statute Claims | | | | In-Statute in Any State |
|---|---|---|---|---|---|
| | Closed (5.5%) | Gray 3 (17.5%) | Gray 2 (37.5%) | Gray 1 (60%) | Open (100%) |
| **Base Claim Amount** | | | | | $ 450,000 |
| 10% Recovery | $ 2,475 | $ 7,875 | $ 16,875 | $ 27,000 | $ 45,000 |
| 63% Recovery | $ 15,593 | $ 49,613 | $ 106,313 | $ 170,100 | $ 283,500 |
| 100% Recovery | $ 24,750 | $ 78,750 | $ 168,750 | $ 270,000 | $ 450,000 |
| **Max Claim Amount** | | | | | $ 2,025,000 |
| 10% Recovery | $ 11,138 | $ 35,438 | $ 75,938 | $ 121,500 | $ 202,500 |
| 63% Recovery | $ 70,166 | $ 223,256 | $ 478,406 | $ 765,450 | $ 1,275,750 |
| 100% Recovery | $ 111,375 | $ 354,375 | $ 759,375 | $ 1,215,000 | $ 2,025,000 |

### Masturbation Claim

| Recovery Range | Out-of-Statute Claims | In-Statute in Any State |
|---|---|---|

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF**
**BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC**

| TO: | All Holders of General Unsecured Claims, Non-Abuse Litigation Claims, and Convenience Claims against Boy Scouts of America and Delaware BSA, LLC (the "**Debtors**") |
|---|---|
| FROM: | The Official Committee of Unsecured Creditors of Boy Scouts of America and Delaware BSA, LLC (the "**Creditors' Committee**")[1] |

On September 29, 2021, the Bankruptcy Court for the District of Delaware approved the Disclosure Statement for the Debtors' Fifth Amended Chapter 11 Plan (the "**Disclosure Statement**" and "**Plan**," respectively, Dkt. Nos. 6445, 6443)[2] in the Debtors' bankruptcy cases. You are receiving this letter because you are an unsecured creditor of Boy Scouts of America or Delaware BSA, LLC and entitled to vote on the Plan. The Disclosure Statement explains the distributions that will be made to creditors under the Plan.

The Creditors' Committee represents the interests of all unsecured creditors other than holders of Abuse Claims. The Creditors' Committee supports the confirmation and consummation of the Plan.

Accordingly, the Creditors' Committee recommends that you vote to *ACCEPT* the Plan by marking the official Ballot that was enclosed with the Disclosure Statement as follows:

    ☑    **ACCEPT (vote FOR) the Plan**

and sending in your Ballot in the manner provided in the Solicitation Package and the instructions accompanying your Ballot.

**Your Ballot must be received by December 14, 2021 at 4:00 p.m. (Prevailing Eastern Time) to be counted**.

Please read the Disclosure Statement and the materials in your Solicitation Package carefully. These materials contain instructions for completing and submitting your Ballot, and they describe the Plan and its terms.

The following summarizes the distributions that will be made to general unsecured creditors under the Plan and the Creditors' Committee's investigation of certain matters that are

---

[1] The current members of the Creditors' Committee are: (i) Girl Scouts of the United States of America, (ii) Pension Benefit Guaranty Corporation, (iii) Roger A. Ohmstede, (iv) Pearson Education, Inc. and (v) Lion Brothers Company, Inc.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Plan or the Disclosure Statement, as applicable.

settled under the Plan. It is qualified in its entirety by reference to the Disclosure Statement. Each capitalized term in this letter is defined in the Disclosure Statement or the Plan.

## I.    The Plan

As described in detail in the Disclosure Statement, the Plan embodies a settlement between many of the major creditor constituencies in these chapter 11 cases, which was achieved after extensive arm's-length negotiations among (i) the Debtors, (ii) JPMorgan Chase Bank, N.A. ("**JPM**"), (iii) the Creditors' Committee, (iv) the Coalition of Abused Scouts for Justice, (v) Hartford, (vi) The Church of Jesus Christ of Latter-day Saints, (vii) certain state court counsel to holders of Abuse Claims, (viii) the Future Claimants' Representative, and (ix) the Ad Hoc Committee of Local Councils. The Creditors' Committee took an active role in certain of these negotiations. The settlement provides significant value to the holders of General Unsecured Claims and Non-Abuse Litigation Claims (including creditors who opt to receive Convenience Claim treatment), provides the Debtors with more favorable terms under the restated debt facilities provided by JPM under the Restated Debt and Security Documents, and provides for procedures to compensate holders of Abuse Claims asserted against the Debtors in a manner that will be supported by a substantial majority of such claimants. The settlement also ensures that the Pension Plan shall continue and will not be impacted by the bankruptcy filing or the Plan.

The Creditors' Committee's goal was to maximize value for unsecured creditors, and the Creditors' Committee focused on, among other things: (a) ensuring the best possible outcome for holders of claims arising from the Boy Scouts of America Retirement Benefit Restoration Plan ("**Restoration Plan**") and the Boy Scouts of America 457(b) Plan (the "**Deferred Compensation Plan**"); (b) providing holders of Non-Abuse Litigation Claims with the right to receive a full recovery from insurance proceeds; (c) providing unsecured creditors with the ability to opt into a convenience class and receive up to $50,000; (d) ensuring that the Boy Scouts will continue to operate, providing an ongoing benefit to trade creditors; and (e) providing for holders of General Unsecured Claims to receive significant value in exchange for releasing potential claims against JPM.

The Plan provides for significant recoveries to unsecured creditors that the Creditors' Committee believes exceed recoveries unsecured creditors would receive in a liquidation or under any available alternative plan of reorganization. Accordingly, the Creditors' Committee believes that confirmation of the Plan is in the best interests of all unsecured creditors. Moreover, the Creditors' Committee believes that the settlement of the various issues embodied in the Plan constitutes a reasonable compromise of complex disputes, and will avoid the expense and delay that would have been incurred had certain of the disputed issues been litigated.

## II.    Unsecured Creditors' Plan Consideration

The Plan provides for three separate classes of unsecured claims that are unrelated to Abuse Claims: (i) General Unsecured Claims; (ii) Non-Abuse Litigation Claims; and (iii) Convenience Claims. As discussed herein, as part of the integrated settlement, the Plan also settles issues relating to the allocation and distribution of value among holders of secured claims, unsecured claims, and abuse claims, thereby avoiding complex, protracted, and costly litigation of these

issues that would have otherwise reduced the available distributions for all creditors.  Based on this settled allocation of value, estimated claims in each creditor class, and the valuation of the Debtors, the Disclosure Statement includes estimates of projected recoveries for each class members' allowed claims.  The distributions provided under the Plan will be in full and final satisfaction, release, discharge, and settlement of such claims against the Debtors.   More specifically, the Disclosure Statement projects the following estimated percentage recoveries for each class of unsecured claims:

| Class | Estimated Recovery |
|---|---|
| Class 5 – Convenience Claims | 100% |
| Class 6 – General Unsecured Claims | 75-95% |
| Class 7 – Non-Abuse Litigation Claims | 100% |

Article VI.E of the Disclosure Statement contains a detailed description of the treatment of each class of claims.  Please reference the Disclosure Statement for a more detailed summary of the mechanics for distributions to unsecured creditors under the Plan, the facts and assumptions behind these predictions and projections, and for information relating to the Debtors and these Chapter 11 Cases.  Each estimate and projection in this letter is taken from the Disclosure Statement and qualified by all of the information in the Disclosure Statement.

A.      **Class 5 Convenience Claims**

Holders of General Unsecured Claims or Non-Abuse Litigation Claims (after first seeking to recover from insurance, and having exhausted all remedies with respect to such applicable insurance policy or policies) that have an Allowed Claim of $50,000 or less may elect to have their claims treated as Convenience Claims, which are paid by Reorganized BSA in full, using Cash on hand, on the Effective Date of the Amended Plan or, if such Claim becomes Allowed after the Effective Date, as soon as reasonably practicable after Allowance.  Any holder of a General Unsecured Claim or Non-Abuse Litigation Claim that is Allowed in an amount greater than $50,000 may elect to have its claim treated as a Convenience Claim and receive payment of $50,000 in Cash in full and final satisfaction of such Claim; **please note that this election is irrevocable and must be made on a timely and validly submitted Ballot**.

B.      **Class 6 General Unsecured Claims**

Holders of Allowed General Unsecured Claims (including holders of Claims under the Restoration Plan, the Deferred Compensation Plan, holders of trade Claims, and holders of Rejection Damages Claims) will receive, on account of such Claims, their Pro Rata Share of the Core Value Cash Pool, which shall be funded by reorganized BSA in four semi-annual installments of $6,250,000 (for a total of $25,000,000), beginning 180 days after the Effective Date and concluding two years after the Effective Date.  Any Cash remaining in the Core Value Cash Pool after all Allowed General Unsecured Claims have been satisfied in full (including interest), shall be first used to fund any shortfall in payments from the BSA's available insurance and co-liable non-Debtors on account of any Non-Abuse Litigation Claims, and then be transferred to and vest in Reorganized BSA.

C. **Class 7 Non-Abuse Litigation Claims**

Holders of Non-Abuse Litigation Claims will, upon the liquidation of such Non-Abuse Litigation Claims following the Effective Date, be satisfied solely from the BSA's available insurance and from any non-Debtor party or parties that may be determined to be co-liable with the Debtors on account of such Non-Abuse Litigation Claims. No holder of an allowed Non-Abuse Litigation Claim shall be entitled to recover from the Core Value Cash Pool on account of such Claim, unless and until all allowed General Unsecured Claims have been paid in full. Solely in the event any Non-Abuse Litigation Claim is not covered by applicable BSA insurance or there is a shortfall in BSA's applicable insurance for such Non-Abuse Litigation Claim, following the exhaustion of remedies with respect to applicable insurance and any co-liable non-Debtor, the holder of an Allowed Non-Abuse Litigation Claim may elect to have such Claim treated as a Convenience Claim and receive Cash in an amount equal to the lesser of (a) the amount of the unsatisfied portion of its Allowed Non-Abuse Litigation Claim and (b) $50,000.

The abuse Settlement Trust will have the right to settle certain of the insurance policies that cover Non-Abuse Litigation Claims. To the extent that the abuse Settlement Trust has settled the applicable insurance policy with respect to a Non-Abuse Litigation Claim, such claimant will be able to recover on account of its claim from the abuse Settlement Trust. The abuse Settlement Trust will have reasonable consent rights over certain settlements of Non-Abuse Litigation Claims.

To the extent a Non-Abuse Litigation Claim is asserted against a Local Council as well as the Debtors, the holder of the Non-Abuse Litigation Claim must release its claim against the Local Council in order to receive payment from the abuse Settlement Trust.

III. **Committee Investigations**

After the Debtors filed for bankruptcy, the Creditors' Committee launched a comprehensive investigation into a number of prepetition transactions consummated prior to the commencement of the Chapter 11 Cases, including, but not limited to, the following:

- The incurrence of substantial secured obligations;

- The grant of additional security interests on the eve of bankruptcy (and in the face of a wave of substantial liability stemming from sexual abuse claims); and

- The creation, capitalization and financing of non-debtor Arrow WV, Inc. ("**Arrow**") along with various related transfers and transactions; and

While the Creditors' Committee believed it could develop significant causes of actions related to these issues, the Creditors' Committee also recognized the risks inherent in any litigation. Accordingly, the Creditors' Committee engaged in extensive arm's-length negotiations that resulted in significant recoveries for general unsecured creditors and avoided the uncertainties and expense of further litigation. The Creditors' Committee believes that confirmation of the Plan is in the best interests of all unsecured creditors.

Moreover, the Creditors' Committee believes that the settlement constitutes a reasonable compromise of complex disputes, will avoid the significant expense and delay that would have been incurred had any of the disputed issues been litigated, and will allow the Debtors to exit bankruptcy efficiently and without the uncertainty attendant to litigation of these disputes.

**IV.   Important Deadlines**

The Disclosure Statement also contains a number of important ***record dates*** and ***deadlines***, including (but not limited to) the following:

- **October 1, 2021** is the ***record date for purposes of determining which claimants are entitled to vote to accept or reject the Plan***.  You can only vote claims you held in a voting class as of **October 1, 2021**.

- **December 14, 2021, at 4:00 p.m. (Prevailing Eastern Time)** is the ***deadline*** for the Debtors' solicitation agent to receive Ballots from all creditors.

- **January 24, 2022 at 10:00 a.m. (Prevailing Eastern Time)** is the proposed date for the ***hearing on the confirmation*** of the Plan.

Please review your Solicitation Package and the Disclosure Statement for other dates and deadlines that may be important to you.

**V.   Conclusion**

The Creditors' Committee recommends each holder of a claim receiving this letter vote to **ACCEPT** the Plan and return its Ballot indicating such acceptance in accordance with the voting instructions described in the Disclosure Statement and Ballot.  Your vote is important and all unsecured creditors are encouraged to vote in favor of the Plan.

You should carefully read the Disclosure Statement and the Plan in their entirety and may wish to consult your own legal or financial advisors.  This letter is not offered as legal advice as to any specific claim or treatment under the Plan.  It is for informational purposes only.

This letter does not purport to reflect the views of the Bankruptcy Court and does not constitute findings of facts or conclusions of law endorsed by the Bankruptcy Court; nor does it necessarily reflect the views of any individual Creditors' Committee member, which reserve any and all of their rights.

If you have questions or require additional information, please visit boyscoutsucc.com or contact the Creditors' Committee at BSAUCCinquiry@kramerlevin.com.

Very truly yours,

The Official Committee of Unsecured Creditors of Boy Scouts of America and Delaware BSA, LLC

THE CREDITORS' COMMITTEE'S RECOMMENDATION THAT UNSECURED CREDITORS VOTE TO ACCEPT THE PLAN SHOULD NOT SERVE AS A SUBSTITUTE FOR EACH UNSECURED CREDITOR'S OWN CAREFUL READING AND CONSIDERATION OF THE DISCLOSURE STATEMENT, PLAN, AND RELATED DOCUMENTS DISSEMINATED THEREWITH, AND CONSULTATION WITH COUNSEL OR OTHER PROFESSIONAL ADVISORS.

THIS LETTER MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN THE CREDITORS' COMMITTEE'S VIEWS ON HOW TO VOTE ON THE PLAN, AND THE INFORMATION CANNOT BE RELIED UPON FOR ANY OTHER PURPOSE. THE CREDITORS' COMMITTEE DOES NOT GUARANTEE ANY PARTICULAR RESULT IN THE DEBTORS' BANKRUPTCY CASES.

THE BANKRUPTCY COURT'S APPROVAL OF THIS SOLICITATION LETTER TO BE INCLUDED AS PART OF THE SOLICITATION PACKAGE DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE MERITS OF THE PLAN OR THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THIS COMMUNICATION DOES NOT CONSTITUTE, AND SHALL NOT BE CONSTRUED AS, A SOLICITATION BY THE CREDITORS' COMMITTEE OR BY ANY INDIVIDUAL MEMBER OF THE CREDITORS' COMMITTEE.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>              Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Ref. Docket No. 6445** |

**TYPOGRAPHICAL CORRECTION FOR THE AMENDED DISCLOSURE
STATEMENT FOR THE MODIFIED FIFTH AMENDED CHAPTER 11 PLAN OF
REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC**

NOTICE IS HEREBY GIVEN THAT a typographical correction must be made to the chart on page 253 of the Disclosure Statement [Docket No. 6445], which is in Section IX.D (*Best Interests of Creditors / Liquidation Analysis*), to change the "Estimated Amount" under the column titled "Estimated Recovery in Chapter 7" from "3.16 million" to "316 million," as set forth below:

| Class | Designation | Estimated Amount and Approximate Percentage Recovery | Estimated Recovery in Chapter 7 |
|---|---|---|---|
| 6 | General Unsecured Claims | Estimated Amount: $26.5 million – $33.5 million<br><br>Estimated Percentage Recovery: 75 – 95% | Estimated Amount: $3.16 million<br><br>Estimated Percentage Recovery: 8 – 21% |

to be replaced by:

| Class | Designation | Estimated Amount and Approximate Percentage Recovery | Estimated Recovery in Chapter 7 |
|---|---|---|---|
| 6 | General Unsecured Claims | Estimated Amount: $26.5 million – $33.5 million<br><br>Estimated Percentage Recovery: 75 – 95% | Estimated Amount: $316 million<br><br>Estimated Percentage Recovery: 8 – 21% |

Except as set forth above, the Disclosure Statement remains unchanged.

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

Dated: October 8, 2021

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: jessica.lauria@whitecase.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: mandolina@whitecase.com
        mlinder@whitecase.com
        laura.baccash@whitecase.com
        blair.warner@whitecase.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Email: dabbott@morrisnichols.com
        aremming@morrisnichols.com
        ptopper@morrisnichols.com

*Attorneys for the Debtors and Debtors in Possession*

$ 3,500.00 [Expedited Release Payment]



BOY SCOUTS OF AMERICA'
NATIONAL COUNCIL

The comprehensive restructuring of the Debtors proposed in the Plan is the product of agreements reached among the BSA, the other Supporting Parties, JPM (the Debtors' senior secured lender), Hartford, and The Church of Jesus Christ of Latter-day Saints ("TCJC"), which provides the framework for global resolution of Abuse Claims against the Debtors, Related Non-Debtor Entities, and Local Councils, as well as any other Contributing Chartered Organizations, Participating Chartered Organizations, and Settling Insurance Companies that may become party to the restructuring settlements after the date of this letter, in exchange for contributions by such parties to the Settlement Trust for the benefit of survivors of Abuse (collectively, "Abuse Survivors"). The Plan has been designed to maximize and expedite recoveries to Abuse Survivors, resulting in substantial recoveries, as set forth in the recovery chart in the Disclosure Statement. The Debtors and the other Supporting Parties strongly encourage all holders of Claims in the Voting Classes, including Direct Abuse Claims, to vote in favor of the Plan.

The Plan, which incorporates a settlement with Hartford for $787 million and a settlement with TCJC for $250 million, as well as the JPM / Creditors' Committee Settlement, provides for a mechanism to channel to the Settlement Trust all Abuse Claims asserted against the Debtors and certain non-debtor third parties, including the Local Councils, Participating Chartered Organizations, Contributing Chartered Organizations (including TCJC), and Settling Insurance Companies (including Hartford) that make contributions to the Settlement Trust for the benefit of Abuse Survivors. If the Plan is approved, the Settlement Trust will exclusively administer and resolve the Abuse Claims. In exchange for channeling all Abuse Claims to the Settlement Trust, as described in the Disclosure Statement, the BSA will make a substantial contribution to the Settlement Trust of approximately $220 million assuming an Effective Date of December 31, 2021. The BSA will also assign and transfer to the Settlement Trust all of its insurance rights under the BSA's insurance policies, thereby providing the potential for substantial insurance recoveries to holders of Direct Abuse Claims.

Additionally, Local Councils will make a substantial contribution to the Settlement Trust to resolve the Abuse Claims that may be asserted against them in exchange for being included as Protected Parties under the Plan and receiving the benefits of the Channeling Injunction, consisting of (a) $500 million, comprised of at least $300 million in Cash with the balance in property, exclusive of insurance rights, (b) the DST Note, a $100 million interest-bearing variable-payment obligation note issued to the Settlement Trust by a Delaware statutory trust on or as soon as practicable after the Effective Date, and (c) the assignment and transfer to the Settlement Trust of all Local Council insurance rights under the BSA's and Local Councils' liability insurance policies that provide coverage for Abuse Claims, thereby providing the potential for substantial insurance recoveries to holders of Direct Abuse Claims.

The Plan also provides a mechanism by which Chartered Organizations can become Participating Chartered Organizations (unless they elect not to or are chapter 11 debtors in their own restructuring cases) through the assignment and transfer to the Settlement Trust of all of their post-1975 insurance rights under BSA and Local Council policies that provide coverage for Abuse Claims in exchange for being included as a Limited Protected Party under the Plan, resulting in the potential for substantial additional insurance recoveries for holders of Abuse Claims. Insurance Companies may also make substantial contributions and Chartered Organizations may also make further substantial contributions to the Settlement Trust in exchange for becoming


BOY SCOUTS OF AMERICA
NATIONAL COUNCIL

Protected Parties under the Plan and receiving the comprehensive benefits of the Channeling Injunction.

Additionally, the Plan also provides for the BSA's assumption of its prepetition Pension Plan and specifies the treatment of holders of Allowed Convenience Claims, Allowed General Unsecured Claims and Allowed Non-Abuse Litigation Claims, resulting in substantial recoveries, as set forth in the recovery chart in the Disclosure Statement. The treatment of all classes of Claims entitled to vote is described more fully in the Plan and the Disclosure Statement.

The Debtors and the Supporting Parties support confirmation of the Plan and urge all claimants to vote in favor of the Plan. **The Debtors and the Supporting Parties believe that the Plan will offer the highest and best recovery for all creditors and that the Plan will provide more certain recoveries to survivors of Abuse and other creditors than any other alternative. The Debtors and the Supporting Parties also believe that the Plan will provide those recoveries more quickly than would any alternative, including by avoiding time-consuming and costly litigation.**

If the Plan cannot be confirmed by the Bankruptcy Court, or if an insufficient number of voting claimants vote in favor of the Plan, (i) the Debtors may be required to liquidate and/or voluntarily convert these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed or elected to liquidate the Debtors' assets for distribution in accordance with the priorities established by the Bankruptcy Code, (ii) the Debtors may seek approval of a revised plan of reorganization that provides for less favorable treatment for creditors, or (iii) other parties may submit an alternate plan to reorganize BSA. **The Debtors believe that all of these alternatives would result in significantly reduced recoveries for Abuse Survivors, and would significantly delay the date by which Abuse Survivors can begin expecting payments from the Settlement Trust.**

**To Chartered Organizations that Hold Indirect Abuse Claims Under the Plan:** Thank you for your support of the Scouting movement. Millions of young men and women have passed through your doors, and our joint mission to serve them has helped countless youth become prepared for life. Your support for the Plan is essential for the mission of Scouting, and the success of the BSA's bankruptcy case depends your support for the Chartered Organization settlement framework set forth in the Plan. The BSA urges you to support the survival and continuation of Scouting by voting your Indirect Abuse Claim in favor of the Plan.

**Please read the Plan carefully. In particular, please review the injunction, release, and exculpation provisions provided in Article X of the Plan. If you vote to accept or reject the Plan, you will be releasing the Released Parties from any and all Claims/Causes of Action to the extent provided in Article X.J.4 of the Plan unless you "opt-out" of such releases. If you decide to opt out of the release in Article X.J.4 of the Plan, please do so by checking the appropriate box on your ballot.**

**If you are the holder of an Abuse Claim, then regardless of whether you opt out of the releases in Article X.J.4 of the Plan, if the Plan is confirmed, you will be bound by the releases and Channeling Injunction set forth in Article X.J.3 and Article X.F of the Plan.**



BOY SCOUTS OF AMERICA®
NATIONAL COUNCIL

The Debtors and other Supporting Parties believe that the Plan constitutes a good-faith compromise and settlement of all Claims and controversies based upon the unique circumstances of these chapter 11 cases, and will provide the maximum recovery for creditors. The Debtors and other Supporting Parties believe that the acceptance of the Plan by holders of Claims entitled to vote to accept or reject the Plan is in the best interests of holders of Claims against the Debtors. Moreover, the Debtors and other Supporting Parties believe that any alternative other than Confirmation of the Plan may result in, among other risks, delays and significantly increased administrative expenses, and significantly diminished distributions on account of Allowed Claims.

---

**THE DEBTORS AND OTHER SUPPORTING PARTIES STRONGLY URGE YOU TO TIMELY SUBMIT YOUR BALLOT CASTING A VOTE TO ACCEPT THE PLAN IN ACCORDANCE WITH THE INSTRUCTIONS IN YOUR BALLOT.**

**THE VOTING DEADLINE IS DECEMBER 14, 2021 AT 4:00 P.M. (EASTERN TIME).**

---

For the reasons set forth herein and in the Disclosure Statement, the Debtors and other Supporting Parties recommend that all persons or entities entitled to vote on the Plan vote to accept the Plan by timely submitting a properly completed ballot. Instructions for casting your vote on the Plan are provided on your ballot. You are strongly encouraged to submit your ballot online via the E-Ballot Platform on the Solicitation Agent's website. In order to have your vote to accept or reject the Plan counted, your Ballot must **actually be received** by the Solicitation Agent on or before **December 14, 2021 at 4:00 p.m. (Eastern Time)**.

If you would like electronic copies of any of the materials enclosed herein, or any other filings in the Debtors' chapter 11 cases, they can be accessed at the Debtors' restructuring website free of charge at https://omniagentsolutions.com/BSA.

If you have any questions, or need to obtain additional solicitation materials, you may contact the Solicitation Agent by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/bsa. Please note that the Solicitation Agent is not authorized to, and will not, provide legal advice to you. If you need legal advice, please consult with your attorney.

Sincerely,

*Boy Scouts of America and Delaware BSA, LLC*

1325 West Walnut Hill Lane
P.O. Box 152079
Irving, TX 75015-2079
972-580-2000
www.scouting.org

**Prepared. For Life.®**



[This Page Intentionally Left Blank]

This injunction is an implementation of the settlement discussed above. In addition, as described above, the Plan provides for a separate injunction barring direct claims of survivors against Insurance Companies.

## DESCRIPTION OF THE SURVIVOR CLAIM DETERMINATION AND PAYMENT PROCESS[4]

There are three options for survivors to establish the value of their claims:

A.     Expedited Distribution Election of $3,500 (election must be made on the Ballot and in accordance with TDP);[5]

B.     Trust claim submission under the Trust Distribution Procedures; or

C.     Settlement Trustee authorization to pursue the claim in court through the tort system.

### A.     Expedited Distribution Election

A survivor (other than a Future Abuse Claimant) may elect on their Ballot to resolve his or her Abuse Claim for an Expedited Distribution of $3,500, if the survivor has submitted a proper and substantially completed Proof of Claim that has been signed personally by the survivor under penalty of perjury, or supplements his or her Proof of Claim to provide such verification. In the case of holders of a Future Abuse Claim, they need to make a submission to the Settlement Trustee to be eligible for the Expedited Distribution. Survivors that elect to receive the Expedited Distribution will not have to submit any additional information to the Settlement Trust to receive payment of the Expedited Distribution from the Settlement Trust provided that their proof of claim form is substantially completed and is signed by the survivor attesting to the truth of its contents under penalty of perjury. Payment will be sent upon the survivor's submission of a release, a form of which is attached as Exhibit A to the TDP. **Your election for an Expedited Distribution must be made on your Ballot[6]**.

### B.     Trust Distribution Procedures

If a survivor elects not to receive an Expedited Distribution of $3,500, the survivor must complete a Trust Claim Submission (a form in addition to the Proof of Claim form that you already submitted, as defined in the TDP) so that the Settlement Trustee can review the merits of the survivor's claim. This submission will occur later, after the Plan is confirmed and you will be provided instructions at that time. To properly make a Trust Claim Submission, a survivor must (i) complete a questionnaire; (ii) produce all records and documents related to the Abuse Claim, including all documents pertaining to settlements, awards, or contributions already received or that are expected to be received from any source; and (iii) execute an agreement

---

[4] For the avoidance of doubt, the actual terms of the Trust Distribution Procedures shall control and the Coalition and the FCR urge each survivor (or their respective counsel) to review the TDP for the full requirements and procedures associated with the review and payment of Abuse Claims under the TDP.

[5] Ballot election is not applicable to holders of Future Abuse Claims.

[6] Ballot election is not applicable to holders of Future Abuse Claims. Future Claimants may make a Trust Submission to elect the Expedited Distribution.

***It is important to consult with your attorney if you believe you have a claim against, and are considering suing, a Chartered Organization because the issues are very complicated.***

- **Youth Protection**

The Plan also obligates the Boy Scouts to continue to improve on its youth protection practices by taking the following steps: (i) form a Child Protection Committee consisting of survivors and members of the Boy Scouts and Local Councils, (ii) implement an analysis of its current Youth Protection Program, (iii) work with the Child Protection Committee and an unaffiliated expert in the prevention of youth sexual abuse to develop and recommend improvements to the Youth Protection Program, and (iv) work with the Child Protection Committee to consider a protocol for the review and publication of information contained in the Boy Scouts' Volunteer Screening Database and Rosters for those credibly accused of abuse while involved with the Boy Scouts.

- **Trust Distribution Procedures**

The Boy Scouts and the Coalition and the FCR have negotiated procedures for the efficient review and payment of the approximately 82,500 non-duplicative, timely claims. The procedures are called "Trust Distribution Procedures" or "TDP." The TDP will provide for the submission of additional information about your claim and the value of your individual Abuse Claim will be determined in accordance with the TDP based on a "claims matrix," which means being assigned a dollar amount based on the following guiding principles:

1. Abuse Claim eligibility criteria;

2. proof requirements;

3. administrative transparency;

4. a review and evidentiary process that requires the Settlement Trustee to determine allowed claim amounts;

5. prevention and detection of any fraud; and

6. independence of the Settlement Trust and Settlement Trustee.

The procedures set forth in the TDP are described in more detail below.

- **Channeling Injunction**

In exchange for the contributions to the Settlement Trust and other consideration provided under the Plan, the Court will issue a permanent channeling injunction (a) releasing, among others, the Boy Scouts, the newly Reorganized BSA, Contributing Local Councils, Contributing Chartered Organizations (*e.g.*, TCJC), Participating Chartered Organizations, and Insurance Companies that contribute to the Settlement Trust (*e.g.*, Hartford) (collectively, the "Protected Parties"), from Abuse Claims; (b) transferring responsibility for Abuse Claims against such parties to the Settlement Trust, to be processed and paid under the TDP; and (c) barring Holders of Abuse Claims from pursuing the Protected Parties on account of the Abuse Claims.

(1) to produce any further records and documents reasonably requested by the Settlement Trustee; (2) consent to and agree to cooperate in any examinations requested by the Settlement Trustee; and (3) consent to and agree to cooperate in a written and/or oral examination under oath if requested to do so by the Settlement Trustee. A survivor's breach or failure to comply with the commitments required by a Trust Claim Submission is grounds for the disallowance of or significant reduction to the amount or value of the Abuse Claim.

### 1.    Initial Evaluation

The Settlement Trustee will perform an Initial Evaluation of the Submitted Abuse Claim to determine whether (a) the Abuse Claimant's Proof of Claim or Trust Claim Submission is substantially and substantively completed and signed under penalty of perjury; (b) the Abuse Claim was timely submitted; and (c) the Submitted Abuse Claim had not previously been resolved by litigation and/or settlement involving a Protected Party. If any of these criteria are not met, then the Submitted Abuse Claim shall be disallowed, and the Settlement Trustee will send the survivor a Disallowed Claim Notice.

### 2.    Review of General Criteria

If a Submitted Abuse Claim is not disallowed after the Initial Evaluation, the Settlement Trustee will determine if the submitted evidence supports the Abuse Claim, taking into account certain general criteria, including the survivor's (a) identification of acts of abuse suffered; (b) identification or description of the alleged abuser(s); (c) provision of information showing the connection of the abuse to scouting; (d) specification of the timing of such abuse and the survivor's age at the time of such abuse; and (e) identification of the location of the abuse. If the Settlement Trustee determines that the materials provided in connection with a Submitted Abuse Claim do not meet the criteria, the Settlement Trustee may request additional materials from the survivor or disallow the Abuse Claim. If the Settlement Trustee determines that a Submitted Abuse Claim is a Disallowed Claim, the Settlement Trustee will provide written notice to the survivor or counsel of that determination, subject to reconsideration (as described below).

### 3.    Claims Evaluation

If the Settlement Trustee determines that the Submitted Abuse Claim should be an Allowed Claim, the Settlement Trustee will evaluate the claim using certain Abuse Types, Scaling Factors, Base Matrix Values, and Maximum Matrix Values set forth in the TDP. The values and adjustment factors were selected and derived with the intention of achieving a fair and reasonable Abuse Claim valuation range in light of the best available information, considering the settlement, verdict and/or judgments that Abuse Claimants have received in the courts through lawsuits against the Protected Parties.

The TDP establishes six tiers of Abuse Types and provides the range of potential Allowed Claim Amounts in each tier. If an Allowed Abuse Claim would fall into more than one tier, it will be placed in the highest applicable tier. An Abuse Claimant cannot have multiple Allowed Abuse Claims assigned to different tiers. Under the TDP there are six possible valuation tiers based on the nature of the abuse: (1) Anal or Vaginal Penetration by Adult Perpetrator; (2) Oral Contact by Adult Perpetrator or Anal or Vaginal Penetration by a Youth Perpetrator; (3) Masturbation by Adult Perpetrator or Oral Contact by a Youth Perpetrator; (4) Masturbation

by Youth Perpetrator or Touching of the Sexual or Other Intimate Parts (unclothed) by Adult Perpetrator, Touching of the Sexual or Other Intimate Parts (clothed), regardless of who is touching whom and not including masturbation, or exploitation for child pornography; (5) Touching of the Sexual or Other Intimate Parts (unclothed) by a Youth Perpetrator; and (6) Sexual Abuse – No Touching or Adult Abuse Claims.  A chart regarding these tiers can be found in Article VIII of the TDP.

The Base Matrix Value for each tier represents the minimum Allowed Claim Amount for a claim assigned to a given tier *before any adjustments are applied*.  The adjustments are called Scaling Factors and are described below.  The Maximum Claims Matrix value for each tier represents the maximum Allowed Claim Amount for a claim assigned to a given tier *after adjustments (i.e., Scaling Factors) are applied*.  The Settlement Trustee may *increase* the amount of an Allowed Abuse Claim (up to the Maximum Matrix Value) by taking into account (a) the nature and circumstances of the abuse, (b) multiple accusations of abuse against a perpetrator; and (c) the impact of the abuse on the survivor's mental and physical health, interpersonal relationships, work or academic difficulties, and other circumstances.  The Settlement Trustee may *decrease* the amount of an Allowed Abuse Claim by taking into account (a) the existence of a familial or maintenance of a non-scouting relationship between the survivor and perpetrator or the existence of a responsible non-Protected Party, (b) amounts received and likely to be received by the survivor from other non-Protected Party sources, (c) the impact of a statute of limitations or statute of repose and (d) the failure of the survivor to submit a timely claim against the Boy Scouts or another Protected Party.  The Settlement Trustee will send the survivor an Allowed Claim Notice after making a determination of a survivor's Allowed Claim Amount.

4.      **Reconsideration**

A survivor may request reconsideration either of the disallowance of a Submitted Abuse Claim or of the Allowed Claim Amount of the survivor's claim proposed by the Settlement Trustee (a "Reconsideration Request") within thirty (30) days after receiving a Disallowed Claim Notice or an Allowed Claim Notice.  The failure to timely submit a Reconsideration Request will mean the survivor has consented to the Settlement Trustee's determination regarding the survivor's claim. Each Reconsideration Request must be accompanied by (a) a check or money order for $1,000 as an administrative fee for reconsideration; and (b) any further evidence in support of the Submitted Abuse Claim.  The Settlement Trustee will have sole discretion whether to grant the Reconsideration Request.  The decision to grant the Reconsideration Request does not guarantee that the Settlement Trustee will reach a different result after reconsideration.

a.      **Reconsideration Denied**

If the Reconsideration Request is denied, the administrative fee will not be returned, and the Settlement Trustee will notify the survivor within thirty (30) days of receiving the request that it will not reconsider the Submitted Abuse Claim.  If the Reconsideration Request is granted, the Settlement Trustee will provide the Abuse Claimant written notice within thirty (30) days of receiving the Reconsideration Request that it is reconsidering the Abuse Claimant's Submitted Abuse Claim.

LEGAL MAIL

COLORADO DEPARTMENT OF CORRECTIONS
STERLING CORRECTIONAL FACILITY
INMATE MAIL

United States District C
Attn: Hon. Laurie Selber
844 North King Street
Wilmington, Delaware
19801



Denver, CO P&DC
WED 03 JAN 2024 AM

US POSTAGE

