### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BOY SCOURTS OF AMERICA AND | ) | Case No. 20-10343 (LSS) |
| DELAWARE BSA, LLC, | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Re: Docket Nos. 11376, 11413, 11457 |
| | ) | |
| | ) | |

### MEMORANDUM AND ORDER

The Trustee of the BSA Settlement Trust seeks to preclude J.F.H. from continuing a lawsuit against Liberty Mutual Insurance Company and Travelers Indemnity Company d/b/a St. Paul Surplus Lines Insurance Company and Gulf Insurance Company (the "Insurers") pending in the United States District Court for the Western District of Missouri ("Missouri Action"). Prior to bringing the Missouri Action, J.F.H. sued Boy Scouts of America ("Debtor"), Heart of America Council ("HOAC") and his abuser, Joseph Mackey. Prepetition, J.F.H. settled with Debtor and HOAC. He also obtained a judgment against Mackey. As permitted by Missouri law, prior to obtaining that judgment, J.F.H. and Mackey entered into an agreement by which Mackey's rights against the Insurers (as an alleged co-insured under relevant policies) were assigned to J.F.H. In the Missouri Action, J.F.H. seeks to satisfy his judgment against Mackey by suing the Insurers in equitable garnishment and for bad faith in failing to defend Mackey in the underlying action.

By her Motion,[1] Trustee seeks an order requiring J.F.H. to dismiss the Missouri Action. She asserts that the continuation of the Missouri Action is a violation of the

---

[1] Mot. of the Hon. Barbara J. House (Ret.), in her Capacity as Trustee of the BSA Settlement Trust, to Enforce the Confirmation Order and Plan, ECF No. 11376.

Insurance Entity Injunction (set out below) in the Confirmation Order[2] and Debtor's confirmed Plan.[3]  Pursuant to the Plan, Debtor's rights and the rights of the 250 Local Councils under policies issued by Non-Settling Insurance Companies[4] (which includes the Insurers) were assigned to the Trust for pursuit or settlement by the Trustee.  The Insurance Entity Injunction protects Trustee's ability to maximize the value of those insurance policies and, with certain exceptions, prohibits any person from suing the Non-Settling Insurance Companies.  J.F.H. contends for multiple reasons that he is not bound by the Insurance Entity Injunction.

For the reasons set forth below, I conclude that because Trustee did not prove that J.F.H. received actual notice of Debtor's request for the Insurance Entity Injunction, he is not bound by it.  The Motion, therefore, is denied.

**Procedural Posture**

Boy Scouts of America and Delaware BSA, LLC filed voluntary petitions under chapter 11 of the United States Bankruptcy Code on February 18, 2020.  The Confirmation

---

[2]  Suppl. Findings of Fact and Conclusions of Law and Order Confirming the Third Modified Fifth Am. Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA, LCC, ECF 10316.

[3]  Third Modified Fifth Am. Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA, LCC, ECF No. 10316-1.

[4]  Non-Settling Insurance Companies is defined in the Plan, but essentially, it means any insurance company that has not entered into a settlement agreement with Boy Scouts.  Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.

Order was entered on September 8, 2022 and affirmed on March 28, 2023.[5] The Plan went effective on April 19, 2023.[6]

On July 6, 2023, the Trustee filed the Motion seeking to enforce the Confirmation Order and the Insurance Entity Injunction. On July 27, 2023, J.F.H. filed his Objection[7] together with multiple filings in or related to the Missouri Action.[8] The Trustee's Reply[9] was filed on September 8, 2023.

A hearing was held on September 12, 2023. The parties agreed that the matter could be decided on the papers and argument. The matter, therefore, is ripe for decision.

---

[5] *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Boy Scouts of America (In re Boy Scouts of America)*, 650 B.R. 87 (D. Del. 2023), *appeal docketed*, No. 23-1664 (Lead Case) (3d Cir. Apr. 11, 2023).

[6] Notice of Entry of Confirmation Order and Occurrence of Effective Date of Third Modified Fifth Am. Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC, ECF No. 11119.

[7] Obj. & Opp'n of J.F.H. to the Mot. (Doc 11376) of the Hon. Barbara J. Houser (Ret.), in Her Capacity as Trustee of the BSA Settlement Trust, to Enforce the Confirmation Order & Plan, ECF No. 11413.

[8] Decl./Aff. of Randall L. Rhodes, ECF No. 11413-1; Pl. Pet. for Damages, *J.F.H. v. Mackey*, Case No. 1616-CV00705 (Mo. Cir. Ct. Jan. 13, 2016), ECF No. 11413-2 ("Mackey Compl."); 07/13/2017 Liberty Mutual Insurance Coverage Position Letter, ECF No. 11413-3; 07/18/2017 Travelers Coverage Position Letter, ECF No. 11413-4; Confidential Agreement to Limit Recovery to Specified Assets Pursuant to R.S.Mo. § 537.065, ECF No. 11413-5; Findings of Fact, Conclusions of Law and Judgment, *J.F.H. v. Mackey*, Case No. 1616-CV00705 (Mo. Cir. Ct. Oct. 5, 2017) (Grate, J.), ECF No. 11413-6; Pl. Pet. for Damages, *J.F.H. v. Liberty Mutual Ins. Co.*, Case No. 2116-CV01378 (Mo. Cir. Ct. Jan. 21, 2021), ECF No. 11413-7 ("Insurers Compl."); *Allen v. Bryers*, 512 S.W.3d 17 (Mo. App. Ct. 2016) (modified April 4, 2017), ECF No. 11413-8.

[9] Reply to Obj. & Opp'n of J.F.H. to Mtn. of the Hon. Barbara J. Houser (Ret.), in her Capacity as Trustee of the BSA Settlement Trust, to Enforce the Confirmation Order & Plan ¶ 12, ECF No. 11457.

**Background[10]**

On January 13, 2016, J.F.H. sued Debtor, HOAC and Mackey, his former

Scoutmaster and the HOAC medical director, alleging that he had been abused as a scout.[11]

J.F.H. settled with Debtor and HOAC.

J.F.H. did not settle with Mackey.  Rather, prior to trial, on August 6, 2017, J.F.H.

and Mackey entered into that certain Confidential Agreement to Limit Recovery to

Specified Assets Pursuant To R.S.Mo. § 537.065.  Under the terms of that agreement, the

parties agreed to proceed by a way of a bench trial, Mackey agreed not to object to J.F.H.'s

evidence and not to seek judgment as a matter of law or file any post-petition motions or

appeals.  Further, "Mackey agree[d] to assign any and all rights and causes of action he may

have against any insurance company and/or policy of insurance"[12] to J.F.H. in exchange for

J.F.H.'s agreement not to execute against any of Mackey's assets "other than any

contractual insurance coverage and extra-contractual obligations" assigned under the

agreement.[13]  On October 5, 2017, the Missouri state court entered a judgment against

Mackey and awarded J.F.H. $20 million in compensatory damages and $100 million in

punitive damages.[14]  In his Findings of Fact, Judge Grate found that Mackey had "made

---

[10]  This Background section comes from the parties' filings.

[11]  Mackey Compl. ¶ 2.

[12]  Excepting certain insurance policies not relevant here.

[13]  Confidential Agreement to Limit Recovery to Specified Assets Pursuant to R.S.Mo. § 537.065 ¶ 5.

[14]  Findings of Fact, Conclusions of Law and Judgment 12.

demands on [Debtor] and [HOAC]'s insurers . . . demanding a defense and indemnity."[15] Judge Grate further found "[t]hose demands were all denied in bad faith."[16]

On January 21, 2021, J.F.H. filed suit against the Insurers and Mackey commencing the Missouri Action.[17] In his Complaint, J.F.H., as Mackey's assignee, alleges equitable garnishment, negligence, breach of fiduciary duties and bad faith against the Insurers.[18] J.F.H. further asserts that the Insurers are estopped from challenging Judge Grate's Findings of Fact, Conclusions of Law and Judgment and are liable for the $120 million judgment.[19]

Travelers removed the Missouri Action to the United States District Court for the Western District of Missouri on February 26, 2021. On that same day, Travelers filed a Suggestion of Bankruptcy.[20] On March 5, 2021, Debtor filed its own Suggestion of Bankruptcy.[21] "[O]n March 23, 2021, the parties agreed to a stipulation staying the case pending resolution of the application of the automatic bankruptcy stay to the claims in this lawsuit."[22] The Missouri action was subsequently stayed until further order of the District Court.[23]

---

[15] *Id.* at ¶ 11.

[16] *Id.*

[17] Mackey was named as a necessary and proper party defendant pursuant to R.S.Mo. § 379.200. Insurers Compl. ¶ 2.

[18] Insurers Compl. ¶¶ 22-47.

[19] *Id.* at ¶¶ 17-20 (citing *Allen v. Bryers*, 512 S.W.3d 17 (Mo. Banc 2016)).

[20] Reply ¶ 12.

[21] *Id.*

[22] *Id.*

[23] Obj. ¶ 47.

On September 8, 2022, this court entered the Confirmation Order. The Plan established the Trust to assume liability for Abuse Claims, maximize and administer the assets assigned to it and process, liquidate and pay Abuse Claims in accordance with approved Trust Distribution Procedures.[24] Part of the assets assigned to the Trust are claims against Non-Settling Insurance Companies (including claims for conduct constituting "bad faith" or giving rise to extra-contractual damages) as well as Debtor's and Local Councils' rights under their respective insurance policies.[25]

To preserve the Trust assets for the benefit of the Trust, the Confirmation Order and Plan also include the Insurance Entity Injunction, which is the subject of the dispute here. It provides, in relevant part:

> *[A]ll Persons that have held or asserted, that hold or assert,* or that may in the future hold or assert *any claim or cause of action* (including any Abuse Claim or any claim for or respecting any Settlement Trust Expense) *against any Insurance Company* based upon, attributable to, arising out of, or *in any way connected with any Abuse Insurance Policy* or other insurance policy issued by a Settling Insurance Company covering Abuse Claims, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, *whether sounding in tort,* contract, warranty, or any other theory of law, equity, or admiralty, *shall be* stayed, restrained, and *enjoined from* taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such claim or cause of action, including:
>
> > i.      commencing, conducting, or *continuing, in any matter, directly or indirectly, any suit, action, or other proceeding of any kind* (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such claim, demand, or cause of action *against any Insurance Company, or against the property of any Insurance Company,* with respect to any such claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such claim, demand, or cause of action against any Insurance Company).

---

[24] Plan, Art. IV.B.

[25] Plan, Art. I A.155, 157; Plan, Art. IV.D.1.

*provided, however*, that: (i) *the injunction* set forth in Article X.H. of the Plan *shall not impair in any way . . . (f) except as provided in any applicable Insurance Settlement Agreement, the rights of any co-insured of the Debtor . . . (y) as specified under any Final Order of the Bankruptcy Court approving an Insurance Settlement Agreement . . . .*[26]

The Insurance Entity Injunction is for the benefit of the Trust (and its beneficiaries). By the express terms of the Confirmation Order and Plan, Non-Settling Insurance Companies, including the Insurers, are not third-party beneficiaries of the Insurance Entity Injunction.[27]

**Discussion**

## I.    Preliminary Issues

Before addressing the merits of the Motion, J.F.H. raises multiple preliminary issues which he contends (and the Trustee denies) prevent me from hearing the Motion.  I will address these in turn.

### A.    Jurisdiction

#### (i)    Bankruptcy Jurisdiction Exists Over This Core Matter

Notwithstanding that subject matter jurisdiction narrows post-confirmation, it is black letter law in the Third Circuit that proceedings "to construe and enforce provisions of a plan" and matters affecting the "interpretation, implementation, consummation, execution or administration of a confirmed plan" satisfy the close nexus test for post-confirmation 'related to' jurisdiction.[28]  As the Trustee seeks to enforce the Insurance Entity

---

[26] Confirmation Order ¶ 36 (italics added).

[27] *Id.* at ¶ 36(a).

[28] *Binder v. Price Waterhouse & Co., LLP (In re Resorts Intern., Inc.)*, 372 F.3d 154, 167, 168-69 (3d Cir. 2004).

Injunction included in the Confirmation Order and Plan, at least 'related to' jurisdiction exists.[29]

J.F.H. seeks to avoid this conclusion by arguing that the *Rooker-Feldman* doctrine precludes the court from exercising jurisdiction as the Motion seeks relief related to a state court judgment.[30] The Trustee responds that the *Rooker-Feldman* doctrine is inapplicable because this matter does not meet the four criteria for applying the doctrine established in *Great Western Mining*.[31]

The *Rooker-Feldman* doctrine bars federal courts other than the Supreme Court from exercising subject matter jurisdiction in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[32] The doctrine applies where: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments."[33] In other words, the *Rooker Feldman* doctrine precludes a federal court from second-guessing a state court and acting to effectively reverse a state court decision.

---

[29] *Id.*

[30] Obj. ¶¶ 3, 62-63.

[31] Reply ¶¶ 5-7 (citing *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010)).

[32] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

[33] *Great W. Mining*, 615 F.3d at 166 (alteration in original) (quoting *Exxon Mobil*, 544 U.S. at 284).

Walking quickly through the elements: the Trustee was not a party to either of the lawsuits in Missouri and has not lost a state court action. While the state court judgment was rendered pre-petition, the Trustee does not complain of injuries caused by it. Rather, the Trustee seeks to enforce the Insurance Entity Injunction against J.F.H. to prevent depletion of Trust resources.[34] Further, the Trustee is not asking me to review any judgment of the Missouri state court. It is true that granting the Motion would preclude J.F.H. from pursuing the Missouri Action, thus impacting his ability to collect on his judgment against Mackey, but granting that relief does not disturb the judgment itself.

The relief sought in the Motion does not cause the court to second-guess a state court judgment or reverse any decision by the Missouri court. J.F.H.'s judgment against Mackey remains in place. Whether it has collateral estoppel effect in the Missouri Action, a decision that has not yet been made by the presiding judge, is not before me. While granting the relief sought in the Motion would prevent the collection of the $120 million judgment through the Missouri Action, J.F.H. cites no case for the proposition that cutting off an avenue for collection of a state court judgment comes within the purview of the *Rooker-Feldman* doctrine.[35] Accordingly, I may exercise subject matter jurisdiction.

J.F.H. also "denies" that the contested matter is a core proceeding on which a bankruptcy judge can enter a final order and does not consent to the entry of final orders if it is ultimately determined the matter is non-core. J.F.H. does not expand on or cite legal

---

[34] Mot. ¶¶ 16-19.

[35] The Missouri Action is, in essence, a collection action. *See Allen v. Bryers*, 512 S.W.3d 17, 30 (Mo. Ct. App. 2016) (citing *Johnston v. Sweany*, 68 S.W.3d 398, 403 (Mo. banc 2002)) ("There are two avenues for a judgment creditor to collect money from an insurance company: (1) a traditional garnishment under section 525.240 and Rule 90 or (2) a direct action against the insurer authorized by section 379.200."). The Missouri Action falls into the latter category.

authority for his position.  The Trustee cites *Residential Capital*,[36] in which the court ruled

that a request to enforce a third-party release and plan injunction constitutes a core matter.

I agree.  This is a core matter.[37]

### (ii)    Personal Jurisdiction Over J.F.H is in Question

J.F.H. also asserts that the court lacks personal jurisdiction over him on two

grounds: (i) that he is not "listed as a creditor in the BSA bankruptcy proceeding," and (ii)

that it has not been established that he "received notice of the bankruptcy."[38]  The Trustee

argues that J.F.H's creditor status (or lack thereof) is irrelevant.[39]  The Trustee further asserts

that J.F.H. received sufficient notice of the bankruptcy, highlighting Debtor's supplemental

noticing campaign, the Suggestions of Bankruptcy filed in the Missouri Action and J.F.H.'s

agreement to stay the Missouri Action for the pendency of the bankruptcy.[40]

Neither party has done the correct analysis.  The question of jurisdiction over a

person begins with the question of service of the matter at issue.[41]  Rule 9014 provides that

---

[36] *In re Residential Capital, LLC*, 508 B.R. 838, 849-50 (Bankr. S.D.N.Y. 2014) (quoting *In re Charter Commc'ns*, No. 09-11435, 2010 WL 502674 at * 4 (Bankr. S.D.N.Y. Feb. 8, 2010)) ("[W]here a motion seeks to 'prevent the prosecution of causes of action expressly prohibited by the confirmation order,' it would be 'difficult to identify judicial acts that are any more critical to the orderly functioning of the bankruptcy process of more closely tethered to core bankruptcy jurisdiction.'").

[37] *See also Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1989) (establishing a two part test: (x) whether the proceeding is enumerated in § 157(b) and (y) whether the proceeding invokes a substantive right provided by title 11 or that could only arise in the context of a bankruptcy case.).  The Insurance Entity Injunction in the Plan invokes substantive rights under title 11 and arises in the context of title 11.

[38] Obj. ¶ 64.

[39] Reply ¶ 12.

[40] *Id.*

[41] *See Klingher v. Salci (In re Tandycrafts, Inc.)*, 317 B.R. 287, 289 (Bankr. D. Del. 2004) (citing *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)).

service of motions commencing contested matters are to be served like a summons and complaint under Rule 7004.[42]  Rule 7004 provides for service to the residence or the person's regular place of business by first class mail if the person is located within the United States.[43]  If proper service is made, then the party served need only have minimum contacts with the United States for the court to exercise jurisdiction over that person.[44]

Here, the certificate of service attached to the Motion reflects that J.F.H. was only served through counsel by email.  There is no evidence in the record that J.F.H. was served with the Motion by first class mail, or any other type of permitted service.  Nor is there any evidence that counsel for J.F.H. agreed to accept service of the Motion on behalf of J.F.H. by email or otherwise.  Accordingly, I cannot conclude on the current record that the court has personal jurisdiction over J.F.H. for purposes of the Motion.  Given my ruling on the merits, however, it is not necessary that this be driven to ground.

### B.    Collateral Estoppel Does Not Preclude Hearing the Motion

J.F.H. argues that the doctrine of collateral estoppel prevents consideration of the Motion.  J.F.H. and the Trustee agree that a party cannot relitigate issues already determined in a prior proceeding.  The parties also agree that Missouri state law applies.[45]  When asked to apply collateral estoppel, Missouri courts consider four factors:

---

[42]  Fed. R. Bankr. P. 9014(b).

[43]  Fed. R. Bankr. P. 7004(b)(1).

[44]  *Tandycrafts*, 317 B.R. at 289; *see also* Fed. R. Bankr. P. 7004(f).

[45]  *Crowe v. Moran (In re Moran)*, 413 B.R. 168, 180-81 (Bankr. D. Del. 2009) (citing *Bailey v. Ness*, 733 F.2d 279, 281 (3d Cir. 1984)) ("[W]here a party seeks to rely on a state court judgment to preclude relitigation of the same issues in federal court, a federal court must look to state law and its assessment of the collateral estoppel doctrine to determine the extent to which the state would give its own judgment collateral estoppel effect.").

(1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom estoppel is asserted was a party or was in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.[46]

Offensive collateral estoppel is disfavored under Missouri law and will not be applied if the four factors are not met.[47]

J.F.H.'s argument is that: "[u]nder Missouri law, even though they declined to indemnify Mackey with respect to the judgment, the Insurers were in privity with Mackey. So too is the Trustee, to the extent she seeks to protect the Insurers from a valid and enforceable Missouri judgment that was final before this Chapter 11 case was initiated."[48] The Trustee pointedly takes no position on whether the Insurers can challenge the factual finding of bad faith made in the lawsuit against Mackey. Rather, she argues that issue is irrelevant as she is not attempting to litigate the Insurers' liability to Mackey or J.F.H. in the present Motion.

I agree with the Trustee. The issue before me—whether the Insurance Entity Injunction prevents J.F.H. from continuing the Missouri Action against the Insurers—was not and is not the subject of any litigation in Missouri. The issue decided in Missouri was whether Mackey was liable to J.F.H. Judge Grate found that he was. That issue is not presented by the Motion, and like the Trustee, I take no position on whether the Insurers can attack the findings made by Judge Grate. Further, while J.F.H. did receive a judgment

---

[46] *Cooperative Home Care, Inc. v. City of St. Louis*, 514 S.W.3d 571, 581 (Mo. 2017) (quoting *James v. Paul*, 49 S.W.3d 678, 682 (Mo. banc 2001)).

[47] *Id.*

[48] Obj. ¶ 66 (citation omitted).

on the merits in his lawsuit against Mackey, the Trustee was not a party to the litigation and, again, there was no opportunity to litigate the application of the Insurance Entity Injunction to any lawsuit that might be subsequently brought against the Insurers. Indeed, the Trust was not established and the Trustee was not appointed until years after judgment was entered in J.F.H.'s lawsuit against Mackey.

Collateral estoppel does not prevent consideration of the Motion.

### C.    Permissive Abstention is Not Appropriate

Alternatively, J.F.H. requests that I exercise my discretion and abstain from hearing the Motion.[49] Bankruptcy courts have broad discretion to abstain from hearing a proceeding within their jurisdiction.[50] Courts may exercise their discretion "in the interest of justice, or in the interest of comity with State courts or respect for State law."[51] Discretionary abstention may be appropriate when jurisdiction in the federal court is proper and mandatory abstention does not apply. Abstention, however, is "the exception, not the rule."[52] It "rarely should be invoked."[53]

---

[49] Obj. ¶ 69.

[50] 28 U.S.C. § 1334(c)(1); *Tonopah Solar Energy, LLC v. CMB Export, LLC (In re Tonopah Solar Energy)*, No. 20-11844, 2022 WL 958117, at *9 (D. Del. Mar. 30, 2022). *But see In re SCH Corp.*, 569 F.App'x 119, 121 (3d Cir. 2014) (quoting *In re Semcrude, L.P.*, 728 F.3d 314, 320 (3d Cir. 2013)) ("Federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction conferred on them.'") (internal quotation omitted).

[51] 28 U.S.C. § 1334(c)(1)).

[52] *Gwynedd Props., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1199 (3d Cir. 1992) (abrogated on other grounds) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)).

[53] *Id.* (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992)).

Many factors guide courts in evaluating a request for discretionary abstention. In this district, courts often look to these factors:

> (1) the effect or lack thereof on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than section 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence of non-debtor parties.[54]

These factors are not mathematically applied, rather they are applied flexibly.[55]

J.F.H. contends "[t]he substance of the controversy is that the Trustee seeks to have this Court invalidate and render uncollectable a valid, final Missouri judgment that predates the filing of this bankruptcy action. There is no reason this Court should be tasked with enforcing this judgment because it is easily enforced in Missouri."[56] Framed this way, J.F.H. argues that the state court has greater interest in the proceeding than does this court and that state law issues predominate.

---

[54] *See e.g.*, *Tonopah Solar Energy*, 2022 WL 958117 at *9 (citing *Continental Airlines, Inc. v. Allen (In re Continental Airlines, Inc.)*, 156 B.R. 441, 443 (Bankr. D. Del. 1993)); *LaRoche Industries, Inc. v. Orica Nitrogen LLC (In re LaRoche Industries, Inc.)*, 312 B.R. 249, 253-54 (Bankr. D. Del. 2004).

[55] *Tonopah Solar Energy*, 2022 WL 958117 at *9.

[56] Obj. ¶ 69. While I make no ruling on this, J.F.H. appears to be conflating the judgment issued by Judge Grate against Mackey with a judgment he anticipates obtaining against the Insurers in the Missouri Action if the matter is not enjoined by virtue of the Insurance Entity Injunction. But, based on his filings, at the moment, J.F.H. has one judgment.

But, framed the proper way, it is clear that state and state law interests do not predominate. What the Trustee is asking me to do is to interpret the Insurance Entity Injunction—an injunction imposed in a confirmed plan of reorganization to safeguard assets transferred to a settlement trust pursuant to order of this court. While enforcement of the Insurance Entity Injunction will obviously have an impact on the Missouri Action and J.F.H's ability to collect on his judgment against Mackey, interpretation of the Confirmation Order and Plan does not require me to address state law.

In terms of the factors, (1), (2), (3), (6), (7) and (8) each support maintaining the case here. While there is no longer an estate, per se, the Trustee is administering the Settlement Trust created by order of this court and the interpretation of the Plan and Confirmation Order (which I have already been called upon to do) is a matter of importance to the bankruptcy. Further, as properly framed, the Motion does not implicate state law issues and there are no such issues to be severed. Indeed the matter is purely a bankruptcy issue, integrally related to the Plan and is core.[57]

As usually applied, factors (4), (5), (11) and possibly (12) arguably favor abstention. The Missouri Action is a related proceeding commenced in state court. But, again, the Motion does not require me to adjudicate any of the issues in the Missouri Action. This matter has no jurisdictional basis other than § 1334, but given the nature of the requested relief in the Motion, there would be no other basis. J.F.H. has requested a jury trial in the

---

[57] J.F.H. argued that if the Missouri Action were permitted to proceed, the Trustee's offensive use of J.F.H.'s claims for extra-contractual damages in other insurance litigation may result in benefits to the Trust. Hr'g Tr. 24:9-24; 25:15-20. The administration of the Trust is in the purview of the Trustee, not the court.

Missouri Action, but is not entitled to one here. And, both the Trustee and J.F.H. are non-debtors.

The final two factors, (9) and (10), are neutral. Neither the Trustee nor J.F.H. has been engaged in forum shopping. And, while I have a significant caseload, I have no evidence regarding the Missouri District Court's docket.

Fundamentally, this contested matter involves a request to interpret and enforce a provision of the Confirmation Order and Plan. While other courts could interpret the Insurance Entity Injunction, because the Confirmation Order was issued by this court, and may need to be interpreted in the future, this court is best situated to interpret its provisions. None of the factors that arguably favor abstention convince me that, in this case, the interests of justice merit a different outcome. I decline to abstain.

## II. J.F.H. Is Not Bound by the Insurance Entity Injunction

The Trustee contends that the plain language of the Insurance Entity Injunction enjoins J.F.H. from continuing to prosecute the Missouri Action. J.F.H. does not provide any alternative reading. In the main, and without considering the exceptions, I agree with the parties. The Insurance Entity Injunction prohibits all persons from suing a Non-Settling Insurance Company for any claim "based upon, attributable to, arising out of, or in any way connected with any Abuse Insurance Policy."[58]

---

[58] Confirmation Order ¶ 36(b). The relevant exception is a large one. Neither party discussed the proviso that the Insurance Entity Injunction "shall not impair in any way . . . (f) except as provided in any applicable Insurance Settlement Agreement, the rights of any co-insured of the Debtor . . . (y) as specified under any Final Order of the Bankruptcy Court approving an Insurance Settlement Agreement." Confirmation Order ¶ 36(b). Accordingly, even if my conclusion is incorrect, I would not order J.F.H. to dismiss the Missouri Action at this time. I would instead order that it continue to be held in abeyance pending any request by the Trustee to settle with the Insurers which must be noticed out on appropriate parties.

The question then becomes whether the Insurance Entity Injunction binds J.F.H. The Trustee cites *Travelers v. Bailey*[59] for the proposition that it does. In *Travelers*, the Supreme Court ruled that a final bankruptcy court order cannot be collaterally attacked years after it was entered even if the order exceeded the court's authority in the first instance.[60] But the Court remanded for a determination of whether the petitioner was given constitutionally sufficient notice of the bankruptcy court order such that it was bound by it.[61] As applied here, even if the Insurance Entity Injunction was improvidently granted,[62] J.F.H. cannot collaterally attack it. But he is not bound by it if he did not receive constitutionally sufficient notice.

Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[63] The Trustee asserts that J.F.H.'s due process rights were satisfied on several fronts. First, the Trustee contends that Debtor's extensive noticing campaign in 2020 to advise "potential claimants, like J.F.H. of the bankruptcy and the bar date"[64] provided notice (presumably, constructive notice) to J.F.H. Second, the Trustee

---

[59] *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137 (2009).

[60] *Id.* at 153.

[61] *Id.* at 155.

[62] For example, J.F.H. argues that the Insurance Entity Injunction was improperly granted or cannot cover the proceeds of the Insurers' policies (as opposed to the policies themselves) because J.F.H. asserts he "has owned and has been entitled to receive and keep certain insurance proceeds since 2017." Obj. ¶ 74.

[63] *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).

[64] Reply ¶ 12.

contends that J.F.H. had actual knowledge of the bankruptcy case because of the Suggestions of Bankruptcy filed in the Missouri Action by both Travelers and Debtor as well as J.F.H.'s agreement to stay the Missouri Action during the course of the bankruptcy case.[65] These uncontested facts, however, beg the question of what process J.F.H. is due in these circumstances (i.e. form and of what). As J.F.H. points out, he settled his claims against Debtor prior to the petition date and, as such, is not a creditor in the Boy Scouts bankruptcy case. Moreover, the Trustee nowhere asserts that Debtor sent actual notice to J.F.H. of the bar date or the commencement of the bankruptcy, much less of the request for entry of the Insurance Entity Injunction.

Cases addressing the sufficiency of notice often occur in the context of bar dates for filing proofs of claim and known/unknown creditors. In the Third Circuit, the law is clear that known creditors are entitled to actual notice of the bar date; publication notice will not suffice.[66] A known creditor is "one whose identity is either known or reasonably ascertainable by the debtor . . . through reasonably diligent efforts."[67] Inadequate notice to a known creditor can serve as a basis for permitting the creditor to file a late claim and take part in the bankruptcy claims process or for the court to declare that the discharge and the § 524(a) injunction does not bind the creditor and he may proceed in a non-bankruptcy forum on his claim.[68] In a corporate case, actual knowledge of the bankruptcy case does not

---

[65] *Id.*

[66] *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995).

[67] *Id.*

[68] *In re Rental Car Intermediate Holdings, LLC*, Case No. 20-11247, 2022 WL 2760127, at *12 (Bankr. D. Del. July 14, 2022).

neutralize or otherwise cure a debtor's failure to provide actual notice because lack of actual

notice deprives known creditors of the opportunity not only to make objections, but to

participate in the plan process.[69]

---

[69] *See id.* at *13. *See also In the matter of Harbor Tank Storage Co., Inc.*, 385 F.2d 111, 115 (3d Cir. 1967) (Bankruptcy Act case) (citing *City of New York v. New York, N.H. & H. R. R.*, 344 U.S. 293 (1953)) (requiring actual notice of claims bar date); *Rental Car Intermediate Holdings*, at * 12 (alteration in original) (quoting *Paging Network, Inc. v. Nationwide Paging, Inc. (In re Arch Wireless, Inc.)*, 534 F.3d 76, 87 (1st Cir. 2008)) ("The caselaw is clear that '[i]nadequate notice is a defect which precludes discharge of a claim in bankruptcy.'"). *See also In re Arch Wireless, Inc.*, 534 F.3d at 83 (requiring actual notice to creditor for discharge injunction to be binding); *Fogel v. Zell*, 221 F.3d 955, 964 (7th Cir. 2000) (requiring actual notice of settlement enjoining actions by third parties against defendant in an adversary action) ; *Levin v. Maya Constr. (In re Maya Constr. Co.)*, 78 F.3d 1395, 1399 (9th Cir. 1996) (requiring formal notice and remanding for further determination); *Dalton Dev. Project #1 v. Unsecured Creditors Committee (In re Unioil)*, 948 F.2d 678, 684 (10th Cir. 1991) (finding creditor not bound by confirmed plan where it did not receive formal notice of the bar date or confirmation hearing); *In re Spring Valley Farms, Inc.*, 863 F.2d 832, 835 (11th Cir. 1989) (requiring formal notice of claims bar date for claimants to be bound by discharge in confirmed plan); *But see Sequa Corp. v. Christopher (In re Christopher)*, 28 F.3d 512, 517 (5th Cir. 1994) (distinguishing *City of New York*, 344 U.S. 293, as having been decided on statutory grounds under the Bankruptcy Act and declining to require actual notice to creditors).

The outcome may not be the same in individual debtor cases. *See e.g. In re Ditech Holding Corp.*, Case No. 19-10412, 2021 WL 28072, at *10 (Bankr. S.D.N.Y Jan. 2, 2021). As discussed in detail in *Ditech*, section 523(a)(3) provides:

(a) A discharge under section 727, 141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

(3) neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt owed, in time to permit–

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or *actual knowledge of the case in time for such timely filing*; or
(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, *unless such creditor had a notice or actual knowledge of the case in time for such timely filing and request.*

11 U.S.C. § 523(a)(3) (emphasis added). This "constructive notice clause" built into the statute has been held to mean that in an individual debtor case, creditors with actual knowledge of the bankruptcy filing cannot assume that they will receive formal notice and must act to protect their rights. *Ditech*, 2021 WL 28072, at *7-9.

To the extent one uses this case law by analogy, J.F.H. is a "known non-creditor." The very Suggestion of Bankruptcy Debtor filed in the Missouri Action one year prior to the confirmation hearing establishes Debtor's knowledge of J.F.H.'s identity. In other words, a reasonable search of Debtor's files would show that J.F.H. asserted claims against the Insurers. If Debtor, therefore, intended the Insurance Entity Injunction to enjoin the Missouri Action, due process required that Debtor send J.F.H. notice of the confirmation hearing and a copy of the disclosure statement and plan.[70]

I also conclude that notice of the bankruptcy case, generally, was not sufficient notice to satisfy J.F.H.'s due process rights in the context of this matter. Rule 2002(b) requires notice for filing objections to and considering a disclosure statement and confirmation of a plan.[71] Rule 3017(d) requires service of the plan and disclosure statement as well as a notice of the confirmation hearing.[72] These rules, which specify the process creditors are due cannot be sidestepped simply because a party-in-interest is a non-creditor if its rights are impacted by the plan. Further to the point, Rule 3016(c) requires a plan and disclosure statement to describe in "specific and conspicuous language (bold, italic or underlined text)" any injunction of actions not enjoined by operation of the Bankruptcy Code.[73] Similarly,

---

[70] Indeed, at the disclosure statement hearing, I ruled that the solicitation materials must be sent to Chartered Organizations, alleged to be non-creditors, because of the asserted impact of the plan on their rights as additional insureds under insurance policies. *See* 9/23/2021 Hr'g Tr. 124:15-127:3.

[71] Fed. R. Bankr. P. 2002(b).

[72] Fed. R. Bankr. P. 3017(d).

[73] Fed. R. Bankr. P. 3016(c) ("If the plan provides for an injunction against conduct not otherwise enjoined by the Code, the plan and disclosure statement shall describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined and identify the entities that would be subject to the injunction").

Rule 2002(c)(3) requires that the notice of hearing on the confirmation of a plan containing such an injunction "(A) include in conspicuous language (bold, italic, or underlined text) a statement that the plan proposes an injunction; (B) describe briefly the nature of the injunction; and (C) identify the entities that would be subject to the injunction."[74] These requirements are directed specifically at injunctions, like the Insurance Entity Injunction, that enjoin assertions of claims against non-debtors and are intended to ensure that adequate notice is provided to those whose conduct would be enjoined.[75] The Rules, thus, provide for the notice that must be accorded to parties when a third-party injunction is requested. Non-creditors, who have less reason to vigilantly observe the course of the bankruptcy case for actions which might impact their rights, cannot be owed any less notice.

As the Movant, the Trustee bears the burden of proof. The Trustee has established only that J.F.H. had actual knowledge of the bankruptcy case but has failed to provide evidence indicating that he received actual notice of the confirmation hearing or the Insurance Entity Injunction. J.F.H.'s actual knowledge of the bankruptcy case does not satisfy the requirements of constitutional due process. Therefore, J.F.H. is not bound by the Insurance Entity Injunction.

---

[74] Fed. R. Bankr. P. 2002(c)(3).

[75] Advisory Committee Note-(2001), Fed. R. Bankr. P. 3016; Advisory Committee Note-(2001), Fed. R. Bankr. P. 2002.

## ORDER

**WHEREFORE**, for the foregoing reasons, the Trustee's Motion to Enforce the Confirmation Order and Plan is **DENIED**.

Dated: March 11, 2024

Laurie Selber Silverstein
United States Bankruptcy Judge

22