

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

Laurie Selber Silverstein
Chief Judge

824 N. Market Street
Wilmington, DE 19801
(302) 252-2900

March 14, 2024

**VIA CM/ECF**

Daniel K. Hogan, Esq.
Hogan♦McDaniel
1311 Delaware Avenue
Wilmington, DE 19806

Bernard G. Conaway, Esq.
Conway Legal, LLC
1007 North Orange Street, Ste. 400
Wilmington, DE 19801

Mitchell A. Toups, Esq.
Weller, Green, Toups & Terrell, LLP
P.O. Box 350
Beaumont, Texas 77704

Robert G. Pahlke, Esq.
Cole J. Retchless, Esq.
The Robert Pahlke Law Group
2425 Circle Drive, Suite 200
Scottsbluff, Nebraska 69363

James E. O'Neill, Esq.
Pachulski Stang Ziehl & Jones LLP
919 N. Market Street, 17th Floor
Wilmington, DE 19899-8705

Emily P. Grim, Esq.
Sarah A. Sraders, Esq.
Gilbert LLP
700 Pennsylvania Avenue, SE, Suite 400
Washington, DC 20003

Re: **Boy Scouts of America and Delaware BSA, LLC, 20-10343 (LSS)**

Motion to Correct Election from the Expedited Payment Option to the Trust (Matrix) Claims Process, ECF No. 11575

Motion to Correct Election from the Expedited Payment Option to the Trust ("Matrix") Claims Process or Independent Review Option – Robert Pahlke Law Group, ECF No. 11577

Dear Counsel:

This letter is my ruling on two Motions[1] by three claimants seeking entry of orders directing the Trustee to process each movant's claim under the standard Trust Distribution

---

[1] Mot. to Correct Election from the Expedited Payment Option to the Trust ("Matrix") Claims Process, ECF. No. 11575; Mot. to Correct Election from the Expedited Payment Option to the Trust ("Matrix") Claims Process or Independent Review Option – Robert Pahlke Law Group, ECF No. 11577.

Boy Scouts of America, LLC.
March 14, 2024
Page 2

Procedures or the Independent Review Option. Movants allege that forged ballots were submitted in their names electing the Expedited Distribution treatment for their claims. The Trustee objected to both Motions.[2] Only Claimant SST-907550 (M.M.) filed a reply.[3]

The Motions were heard on November 20, 2023 together with numerous other motions seeking relief related to the election of the Expedited Distribution treatment.[4] Prior to the hearing, Movants and the Trustee agreed that the declarations and documents accompanying their respective written submissions would be admitted into evidence and that there would be no cross-examination.[5] No party presented any additional evidence at the hearing. Post-trial submissions were permitted on legal issues only.[6]

Having reviewed and considered the admitted evidence and the arguments of counsel in their submissions and at the November 20, 2023 hearing, I conclude that each of the three movants has proven by a preponderance of the evidence that the signature on the ballot attributed to him is a forgery.

*Discussion*

Under Delaware law, the party asserting forgery (in the civil context) bears the burden of proving his claim by a preponderance of the evidence.[7] "Proof by a

---

[2] Consolidated Resp. of the Hon. Barbara J. Houser (Ret.), in her Capacity as Trustee of the BSA Settlement Trust, in Opp'n to Mots. To Change Elections of Expedited Distribution [D.I. 11564, 11567, 11575, 11577, 11578, 11579] ¶20, ECF 11602 ("Trustee Response").

[3] Consolidated Reply to Resp. of the Hon. Barbara J. Houser (Ret.), in her Capacity as Trustee of the BSA Settlement Trust, in Opp'n to Mots. To Change Elections of Expedited Distribution (D.I. 11602) With Regard to Motions to Change Elections of Expedited Distribution (D.I. 11575 and 11578), ECF 11607.

[4] On February 5, 2024, I issued an Opinion resolving certain motions that were the subject of the November 20, 2023 hearing. Opinion, ECF 11789. The Motions were specifically excluded. Opinion 2 n.7.

[5] 11/20/2023 Hr'g Tr. 7:16-8:15.

[6] Only the Trustee made a supplemental filing that addressed issues regarding forgery. Suppl. Resp. of the Hon. Barbara J. Houser (Ret.) in her Capacity as Trustee of the BSA Settlement Trust, in Opp'n to Mots. to Change Elections of Expedited Distribution [D.I. 11564, 11567, 11575, 11577, 11578, 11579], ECF No. 11669.

[7] While there appears to be some caselaw to the contrary, I will apply the preponderance of the evidence standard. That standard was adopted by the Chancery Court in its recent decision in *Clymer v. DeGirolano*, 2023 WL 4613036, at *10 (Del. Ch. July 5, 2023) (Molina, M.), *adopted in pertinent part*, 2023 WL 6275067 (Del. Ch. Sept. 25, 2023) (Laster, V.C.). While the focus of the court's discussion was whether a heightened standard of review should be applied to notarized

Boy Scouts of America, LLC.
March 14, 2024
Page 3

preponderance of the evidence means proof that something is more likely than not. It means that certain evidence, *when compared to the evidence opposed to it*, has the more convincing force and makes you believe that something is more likely true than not."[8]

Where the party bearing the burden provides direct testimony that the signature on a document is not his (whether by testimony or by way of a declaration or affidavit) and the opposing party provides no evidence to the contrary, the proponent has met his burden.[9]

Based on the evidence submitted, I find that:

Claimant SST-907550 (M.M.) did not sign the ballot attributed to him. In his declaration, M.M. testifies that he "never signed a ballot in the voting process" and he did not sign the ballot ascribed to him by Omni.

Claimant SST-905751 (A.M.) did not sign the ballot attributed to him. A.M. was incarcerated at the Ohio Department of Rehabilitation & Corrections from October 1, 2021 through February 10, 2022, which includes the solicitation period.[10] While incarcerated, A.M. did not have access to phone, emails or social media. A.M.'s counsel could not reach A.M. during the voting period and so sent a hard copy of the ballot to the physical address counsel had on file at the time. The ballot attributed to A.M. was received by Omni through the mail, not electronically. A.M. does not make a simple declarative statement in his affidavit that he did not sign the ballot attributed to him. Based on my findings, however, I conclude that he could not have signed a ballot he did not receive.

Claimant SST-901144 (T.D.) did not sign the ballot attributed to him. In his affidavit, T.D. states that he did not receive a ballot to vote on the Plan. Again, a person cannot have signed a document he never received.

---

documents, the court surveyed existing law on forgery and adopted the lower standard. *See also Robinson v. Oakwood Village, LLC*, 2017 WL 1548549, at *21 (Del. Ch. Apr. 28, 2017) (Glasscock, V.C.) (applying preponderance of the evidence standard). *But see In re Estate of Hammond*, 2012 WL 3877799, at *2 (Del. Ch. Aug. 30, 2012) ("When a will is challenged as a forgery, the challenger has the burden of proving such forgery in a clear, direct, precise, and convincing manner.") (internal quotation omitted). Further, in her Supplemental Response, the Trustee cites to Delaware law for the appropriate standard, which she contends is preponderance of the evidence.

[8] *Clymer*, 2023 WL 4613036, at *10 (quoting *Del. Express Shuttle, Inc. v. Older*, 2002 WL 31458243, at *17 (Del. Ch. Oct. 23, 2002)) (emphasis added).

[9] *See Tuggle v. American Finance System, Inc.*, 1978 WL 21995, at *1 (Del. Ch. June 22, 1978) ("I hold that Mrs. Tuggle did sustain the burden of proof at trial by showing that [her shares] were transferred by American Finance as a result of a forgery of the signature of Mrs. Tuggle. Indeed there was no contraevidence.") (Harnett, V.C.).

[10] A.M.'s period of incarceration is substantiated by the custodian of records of the Ohio Department of Rehabilitation & Correction.

Boy Scouts of America, LLC.
March 14, 2024
Page 4

      At the hearing, Trustee's counsel argued that movants' submissions raise questions about where hard copies of the ballots were mailed and the similarity or lack thereof of the signature exemplars submitted by each movant.[11] While there may be questions with respect to the physical ballot or signatures, the questions raised are not evidence and were not explored through deposition or cross-examination. Under the circumstances of these Motions, including how the parties decided to present the matter to the court, I do not find counsel's questions sufficient to defeat each movants' sworn statements and supporting evidence.[12] There is simply nothing to put any of the movant's credibility at issue.[13]

      Separate orders will issue.

Very truly yours,

Laurie Selber Silverstein

LSS/cmb

---

[11] At the time of the response deadline, Trustee had access only to redacted versions of the exhibits attached to the Motion. Trustee represented in her response that she was "unable to verify whether [Claimant's] assertions regarding forgery of [his] signature on [his] ballot [is] valid." Trustee Response ¶20. Trustee received a copy of the unredacted documents prior to the hearing, but Trustee was still not in a position to make the determination. 11/20/2023 Hr'g Tr. 97:22-99:10.

[12] *Tuggle*, 1978 WL 21995, at *1; *Hammond*, 2012 WL 3877799, at *2.

[13] *Compare Clymer* 2023 WL 4613036, at *12 (after finding opposing handwriting experts credible and knowledgeable and neither more convincing than the other, finding testimony of signatory and her son that signatory's signature was forged to be not credible); Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: [. . .] (3) grant summary judgment if the motion and supporting materials–including facts considered undisputed–show that the movant is entitled to it.").