

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

Laurie Selber Silverstein
Judge

824 N. Market Street
Wilmington, DE 19801
(302) 252-2900

December 16, 2024

<u>**VIA CM/ECF**</u>

Charles J. Brown, III, Esq.
Gellert Seitz Busenkell & Brown, LLC
1201 North Orange Street, Suite 300
Wilmington, DE 19801

Mark T. Hurford, Esq.
A.M. Saccullo Legal, LLC
27 Crimson King Drive
Bear, DE 19701

Emily Grim, Esq.
Michael B. Rush, Esq.
Gilbert LLP
700 Pennsylvania Avenue, SE, Suite 400
Washington, DC 20003

Re:   **Boy Scouts of America and Delaware BSA, LLC, 20-10343 (LSS)**
      <u>**Motion of J.C. to Allow Late-Filed Proof of Claim, ECF No. 12046**</u>

Dear Counsel:

This letter is my ruling on J.C.'s Motion to Allow Late-Filed Proof of Claim ("Motion").[1] J.C. seeks allowance of his late-filed claim under Bankruptcy Rules 3003(c) and 9006(b)(1). Trustee objects, alleging J.C. has not offered a reasonable justification for his failure to timely file his proof of claim.[2] J.C. filed a Reply as well as his Declaration.[3]

---

[1] ECF No. 12046.

[2] Opp'n of the Hon. Barbara J. Houser (Ret.), in her Capacity as Trustee of the BSA Settlement Trust, to the Motion of J.C. to Allow Late-Filed Proof of Claim [D.I. 12046], ECF No. 12127 ("Opp'n").

[3] Reply of J.C. in Support of Motion to Allow Late-Filed Proof of Claim, ECF No. 12303; Decl. J.C., ECF No. 12303-1 ("Decl.").

Boy Scouts of America
December 16, 2024
Page 2

The Motion was heard at the July 10, 2024 omnibus hearing.  Neither party presented testimony nor submitted additional evidence.  Trustee objected to the consideration of the Reply and the Declaration of J.C. as untimely filed.  I ruled from the bench that I would permit the late filing of the Reply and Declaration and I offered Trustee the opportunity to provide supplemental briefing and/or to continue the matter to allow cross-examination of J.C.  Trustee declined my offer.  Accordingly, I concluded the hearing and took this matter under advisement.

In considering the matter post-argument, I wrote to the parties on November 1, 2024 and asked whether Article IV.A(ii) of the Trust Distribution Procedures ("TDP") has any bearing on the Motion.[4]  My reading of this provision suggested that the failure to file a timely proof of claim was not necessarily a barrier to recovery from the Settlement Trust.  The parties addressed Article IV.A(ii) at a continued argument on December 11, 2024.

---

[4] Article IV.A(ii) provides:

    A.    **Direct Abuse Claims.**  To be eligible to potentially receive compensation from the Settlement Trust on account of a Direct Abuse Claim, a Direct Abuse Claimant, other than holders of Future Abuse Claims must:

        (1)    have a Direct Abuse Claim;

        (2)    have timely submitted an Abuse Claim Proof of Claim or Trust Claim Submission to the Settlement Trust as provided below; and

        (3)    submit supporting documentation and evidence to the Settlement Trust as provided below.

Direct Abuse Claims can only be timely submitted as follows:

                        *        *        *

    (ii)    a Direct Abuse Claim alleging abuse against a Local Council (a) for which, as of the time the Claim is submitted to the Settlement Trust in accordance with the Settlement Trustee's designated procedures, a pending state court action had been timely filed under state law naming the Local Council as a defendant or (b) which is submitted to the Settlement Trust at a time when the Claim would be timely under applicable state law if a state court action were filed against the Local Council on the date on which the Direct Abuse Claim is submitted to the Settlement Trust, shall be deemed a timely submitted Abuse Proof of Claim to the Settlement Trust; or . . .

Boy Scouts of America
December 16, 2024
Page 3

*Discussion*

     J.C. contends that: (i) the balance of the *Pioneer* factors favor allowing his late-filed claim, (ii) it would be more judicially efficient to have his claim administered through this bankruptcy case and the Trust rather than through a separate lawsuit against third parties in the state court system and (iii) his claims against third parties are not barred by the Plan,[5] but, if they are, that fact should be considered in the *Pioneer* analysis.[6] Trustee counters that: (i) even considering the Declaration, J.C. fails to offer a reasonable explanation for his delay, (ii) the length of J.C.'s delay was excessive, (iii) granting J.C.'s Motion would open the floodgates to similar motions and (iv) the third-party releases in the Plan should not factor into the *Pioneer* analysis because it would result in any potential claimant prejudiced by the releases being allowed to file a late proof of claim.[7]

     The parties agree I review the Motion under *Pioneer's* excusable neglect standard. The Supreme Court articulated four non-exclusive factors to consider when evaluating claims of excusable neglect: (1) "the danger of prejudice to the debtor," (2) "the length of delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant," and (4) "whether the movant acted in good faith."[8] "The determination whether a party's neglect of a bar date is 'excusable' is essentially an equitable one, in which courts are to take into account all relevant circumstances surrounding a party's failure to file."[9] "All factors must be considered and balanced; no one factor trumps the others."[10]

---

[5] July 10, 2024 Hr'g Tr. 88:10-90:12. Third Modified Fifth Amended Plan of Reorganization (with Technical Modifications) for the Boy Scouts of America and Delaware BSA, LLC, ECF No. 10316-1.

[6] 7/10/2024 Hr'g Tr. 97:4-98:6.

[7] 7/10/2024 Hr'g Tr. 93:14-95:21.

[8] *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'Ship*, 507 U.S. 380, 394-95 (1993).

[9] *Jones v. Chemetron Corp.*, 72 F.3d 341, 349 (3d Cir. 1995) (quoting *Pioneer,* 507 U.S. at 389).

[10] *In re Tribune Co.*, Case No. 08-13141 (KJC), 2013 WL 5966885, at *4 (Bankr. D. Del. Nov. 8, 2013) (quoting *Hefta v. Off'l Comm. Of Unsecured Creditors (In re American Classic Voyages Co.)*, 405 F.3d 127, 133 (3d Cir. 2005)).

Boy Scouts of America
December 16, 2024
Page 4

*Prejudice to the Trustee*[11]

      Prejudice "does not refer to an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on the facts in evidence." [12] Here, Trustee argues a specific type of prejudice: the Trust will be inundated with claimants seeking allowance of late-filed claims because they erroneously believed a third-party was responsible for filing a proof of claim form on their behalf.[13] Trustee has submitted no evidence to support her concern. While the basis of several similar motions has been the inability to retain or communicate with counsel, J.C.'s Motion appears to be unique. There is no evidence that this fact scenario will open the floodgates to similar motions. In any event, each motion to file a late-filed claim will be analyzed on its own facts and merits.

      Moreover, because of the provisions in the TDP there is no prejudice to the Trustee based on a "floodgates" argument. At the December 11, 2024 argument, Trustee's counsel confirmed that the filing of a timely Proof of Claim by a holder of a Direct Abuse Claim is not a prerequisite to seeking recovery from the Settlement Trust. A holder of a Direct Abuse Claim who did not file a Proof of Claim may still make a Trust Claim Submission (as defined in the TDP) seeking recovery on account of a claim against a Local Council or a Protected Party in accordance with TDP Article IV.A(ii) and/or (iii). The inclusion of Article IV.A(ii) and (iii) in the TDP supports J.C.'s position on the lack of prejudice asserted here because the TDP expressly contemplate that claimants can come forward in the future, i.e. there are no gates that can be flooded.

*Length of the Delay*

      Trustee next points out that the Motion was filed three and a half years after the Abuse Claim Bar Date and over a year after the Trust was established.[14] I agree that this delay is substantial.[15] Much like *Tribune*, however, the potential impact on this case is

---

[11] The Trustee, as the relevant non-movant, replaces the debtor for the analysis. *See e.g.*, *Eady v. Tapfury LLC*, No. 22-2619, 2023 WL 3376541, at *1 (3d Cir. May 11, 2023).

[12] *Tribune*, 2013 WL 5966885, at *5 (citing *Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envt'l Energy, Inc.)*, 188 F.3d 116, 127 (3d Cir. 1999)). Relevant factors include whether the debtor was aware of the claim, whether paying the claim would require the return of plan distributions, whether the paying the claim would jeopardize debtor's reorganization, whether the claim would adversely impact the debtor, and whether "allowance of the claim would open the floodgates to other late claims." *Id.* (internal citations omitted).

[13] Opp'n 5.

[14] *Id.* at 4.

[15] *Compare Tribune*, 2013 WL 5966885, at *6 (denying motion to allow late-filed claim filed two-years after the bar date for other reasons, noting minimal impact on the case from the delay) *with O'Brien*, 188 F.3d at 130 (finding two-month delay significant because the plan became effective in the intervening time); *Toscano v. RSH Liquidating Trust (In re RS Legacy Corp.)*, 577 B.R. 134, 141

Boy Scouts of America
December 16, 2024
Page 5

small.[16]  There are over 82,000 Abuse Claims filed in this case.  The Motion represents one more.  Even taking all the requests to allow late-filed claims made to date in the aggregate, I find that they would not have made a meaningful impact on the course of this bankruptcy case.  The lateness of J.C.'s claim is, therefore, offset by its limited impact.

*The reason for the delay*

Trustee asserts that the reason for J.C.'s delay cannot form the basis for excusable neglect.  In particular, Trustee contends that J.C. should have been in communication with the law firm who he thought filed his proof of claim.  As he was not, Trustee argues, the failure to timely file a proof of claim was not outside J.C.'s control.

Based on the unrefuted evidence, I make the following findings of fact.  Prior to the Bar Date, J.C. received a solicitation from ASK LLP seeking to represent him and other abuse claimants in the BSA bankruptcy case.  J.C. responded to the solicitation and ASK telephonically interviewed J.C. for approximately an hour to vet his claim.  During the interview, J.C. disclosed substantial details of the abuse he suffered as a Boy Scout.[17]  Based on the interview process, J.C. believed "that ASK filed all the forms that were necessary to preserve [his] claim."[18]  Based on his belief that the necessary forms had been filed, J.C. also declined to engage the firm representing his brother in the bankruptcy case.  After confirmation of the Plan, J.C. discovered that ASK did not submit a proof of claim on his behalf.[19]

I conclude based on these facts that there is a basis for J.C. to have believed that ASK filed a proof of claim for him and that he intended that to happen.  He was solicited by a law firm, participated in an hour-long vetting call with a law firm in which he described the abuse he suffered.  Had he not believed that the paperwork was filed, he may have chosen to speak with his brother's law firm.  At the very least, J.C.'s confusion about whether he was represented is a sufficient excuse for purposes of the *Pioneer* analysis.[20]

---

(Bankr. D. Del. 2017) (finding delay of 11 months after claimant had notice and knowledge of her potential claim weighed against excusable neglect).

[16] *Tribune*, 2013 WL 5966885, at *6.

[17] Decl. ¶ 3.

[18] *Id.* at ¶ 4.

[19] *Id.* at ¶ 5.

[20] Mar. 8, 2024 Hr'g Tr. 31:2-6 ("While all the factors must be considered and balanced, and no one factor trumps the others, the excusable neglect standard is based on the premise that there is an excuse.").

Boy Scouts of America
December 16, 2024
Page 6

*Good faith*

Nothing in the record indicates J.C. acted in bad faith and Trustee has made no argument to that effect.

*Other factors / considerations*

J.C. asserts that I should also factor into my *Pioneer* analysis the existence of the third-party releases in the Plan, arguing that if they are applicable to him, he not only has no claim against the Trust, but he cannot pursue his claims against the Longhorn Council. J.C. argues that even if he was aware of the need to file a proof of claim to pursue a claim against the Boy Scouts, he was not on notice that failure to do so would ultimately result in him being unable to pursue a recovery against the Longhorn Council.[21] J.C. also points out that the bar date of November 16, 2020 was approximately two years before the Plan containing the third-party releases was confirmed on September 8, 2022. Trustee again responds that considering this type of prejudice opens the floodgates and that "any person with a potential claim against a third party could continue to file or seek late claims no matter how late they were."[22]

At heart, whether a claimant should be permitted to file a late proof of claim is an equitable determination.[23] Courts have discretion to include a wide variety of "relevant circumstances" in the *Pioneer* analysis, but these circumstances appear to be focused on the reason for failure to make the appropriate filing, not the damage done if a request to file a late claim is denied.[24] It is therefore not clear that I should consider the existence of the third-party releases. Given the balance of the factors articulated in *Pioneer*, however, I need not do so here.

*Conclusion*

While the length of the delay is substantial, given the lack of evidence of actual prejudice as well as the provisions in the TDP, I find minimal, if any, prejudice to the Trust. Further, J.C.'s reason for the delay is understandable—he thought he had engaged ASK to

---

[21] July 10, 2024 Hr'g Tr. 89:11-22.

[22] July 10, 2024 Hr'g Tr. 95:5-7. At no time did Trustee suggest that J.C. could seek recovery from the Settlement Trust for his claim against the Longhorn Council under Article IV.A(ii) of the TDP even though he had not timely filed a Proof of Claim.

[23] *Pioneer*, 507 U.S. at 395.

[24] *E.g.*, *Pioneer*, 507 U.S. at 398 (discussing the "unusual form of notice" employed); *Linder v. Trump's Castle Assocs.*, 155 B.R. 102, 108 (D.N.J. 1993) (considering that notice was sent to a claimant's counsel in a personal injury action rather than bankruptcy counsel or the claimant herself).

Boy Scouts of America
December 16, 2024
Page 7

protect him in the Boy Scouts bankruptcy case and did not know that ASK failed to file a proof of claim on his behalf.  Further, it was clearly J.C.'s intention that ASK file a proof of claim for him.  Finally, there is no evidence to suggest J.C. did not act in good faith.  For these reasons and having considered and balanced all of the above factors in light of the evidence presented, I will grant the Motion.

A separate order will issue.

Very truly yours,

Laurie Selber Silverstein

LSS/cmb