

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

Laurie Selber Silverstein  
Judge

824 N. Market Street  
Wilmington, DE 19801  
(302) 252-2900

May 8, 2025

<u>VIA CM/ECF</u>

Kimberly A. Dougherty, Esq.  
Martha Carol, Esq.  
Justice Law Collaborative  
210 Washington Street  
North Easton, MA 02356

Kami E. Quinn, Esq.  
Emily P. Grim, Esq.  
Michael B. Rush, Esq.  
Gilbert LLP  
700 Pennsylvania Avenue, SE, Suite 400  
Washington, DC 20003

Tiffany A. Poole, Esq.  
Poole, Mensinger, Cutrona & Ellsworth-Aults  
2710 Centerville Road, Suite 101  
Wilmington, DE 19801

Mark T. Hurford, Esq.  
A.M. Saccullo Legal, LLC  
27 Crimson King Drive  
Bear, DE 19701

Re: **Boy Scouts of America and Delaware BSA, LLC, 20-10343 (LSS)**  
**Motion to Deem Claims Identified as Late by the Trust as Timely Filed, ECF No. 12144**

Dear Counsel:

This is my ruling on G.J.'s Motion to Deem Claims Identified as Late by the Trust as Timely Filed ("Motion").[1] In support of his Motion, G.J. attached his Sexual Abuse

---

[1] ECF No. 12144.

Survivor Proof of Claim filed October 27, 2021 ("Proof of Claim").[2] Trustee filed an objection.[3]

I heard the Motion at the August 7, 2024 omnibus hearing. Neither party presented testimony nor submitted additional evidence beyond G.J.'s Proof of Claim. At the conclusion of oral argument, I took the matter under advisement.

*Facts*

Boy Scouts of America filed its bankruptcy petition on February 18, 2020. The Bar Date for filing proofs of claim was November 16, 2020.[4] The Order confirming the Boy Scouts' Plan was entered on September 8, 2022.

G.J. filed his Proof of Claim between the Bar Date and the entry of the Confirmation Order, in October 2021. In his Proof of Claim, G.J. alleges that he was abused by his Scout leader in the 1970s and provides details of that abuse. G.J. asserts that he filed his claim late because he did not know that he was abused until after the Bar Date. Specifically, G.J. states that he had repressed his memories of the abuse but recovered them after the Bar Date. He then contacted counsel and worked with counsel to promptly file his Proof of Claim, which he signed under penalty of perjury.

*Discussion*

G.J. contends that his failure to timely file a proof of claim due to his repressed memories constitutes excusable neglect and he seeks relief under Bankruptcy Rules 3003(c) and 9006(b)(1) and *Pioneer*.[5] Trustee argues that G.J. is the holder of a Future Abuse Claim as that term is defined in the Plan. Based upon that, she argues that G.J.'s "only path to compensation . . . is if he meets the eligibility requirements for Future Abuse Claims in

---

[2] Ex. A. to Mot., ECF No. 12144-4. G.J. indicated that he also filed proofs of claim on October 13, 2021 and November 30, 2021. Counsel represented that the multiple filings were due to difficulties with the filing system.

[3] Resp. of the Hon. Barbara J. Houser (Ret.), in Her Capacity as Trustee of the BSA Settlement Trust, in Opp'n to the Mot. to Deem Claims Identified as Late by the Trust as Timely Filed [D.I. 12144], ECF No. 12357.

[4] Capitalized terms not defined herein shall have the meaning provided in the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC ("Plan"), including the attached Trust Distribution Procedures ("TDP"), ECF No. 10316-1.

[5] *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'Ship*, 507 U.S. 380 (1993).

Article IV.C of the TDP."[6] In other words, Trustee contends that G.J. may not seek relief under *Pioneer*. In the alternative, Trustee argues G.J. has failed to meet his burden of establishing excusable neglect.[7]

   *A. G.J. can avail himself of the excusable neglect standard.*

Initially, I conclude that I can address the Motion under *Pioneer*. Turning to the Plan, Trustee is correct that G.J.'s claim falls into the definition of Future Abuse Claim[8] (i.e., his abuse occurred prepetition and he was not aware of his claim on the day before the Petition Date). And, as Trustee references, Article IV of the TDP determines the eligibility requirements for holders of Abuse Claims to receive compensation from the Trust. Citing Art. IV.A, she states that holders of "current" claims (i.e., Direct Abuse Claims which are not Future Abuse Claims) can seek to file late claims based on excusable neglect. Trustee then argues that holders of Future Abuse Claims do not have that option because Art. IV.C. sets out different eligibility criteria for Future Abuse Claims. Trustee, thus, draws an immutable line between what she calls "current" claimants and future claimants, contending only the former can seek to file a late claim based on excusable neglect.

---

[6] Resp. 4.

[7] *Id.* at 5 n.3.

[8] Plan art. I.A.134 provides that:
"Future Abuse Claim" means any Direct Abuse Claim against any Protected Party, Limited Protected Party, or an Opt-Out Chartered Organization that is attributable to, arises from, is based upon, relates to, or results from, in whole or part, directly, indirectly, or derivatively, alleged Abuse that occurred prior to the Petition Date but which, as of the date immediately preceding the Petition Date, was held by a Person who, as of such date, (a) had not attained eighteen (18) years of age, or (b) was not aware of such Direct Abuse Claim as a result of "repressed memory," to the extent the concept of repressed memory is recognized by the highest appellate court of the state or territory where the claim arose; provided further, however, that with respect to any Participating Chartered Organization, the term "Future Abuse Claim" shall be limited to Post-1975 Chartered Organization Abuse Claims and Pre-1976 Chartered Organization Abuse Claims that satisfy either (a) or (b), and with respect to any Opt-Out Chartered Organization, the term "Future Abuse Claim" shall be limited to Opt-Out Chartered Organization Abuse Claims that satisfy either (a) or (b). For the avoidance of doubt, no Claim alleging Abuse shall be a "Future Abuse Claim" against a Contributing Chartered Organization, a Participating Chartered Organization, or an Opt-Out Chartered Organization if such Claim is wholly unrelated to Scouting.

I disagree. While Trustee's negative implication argument has some appeal, it does not comport with the text of the TDP. Art. IV.C(4) provides that for the holder of a Future Abuse Claim to be eligible for compensation under the Trust, he "must not have filed a Chapter 11 POC." The term "Chapter 11 POC" includes late filed claims that the Court deems timely.[9] The use of this defined term in the eligibility criteria for compensation of Future Abuse Claims contemplates that that holders of such claims might seek permission to file a late proof of claim and enables the Court to grant such relief. To conclude otherwise would read out the words "or if determined timely by the Bankruptcy Court" from the definition of "Chapter 11 POC." Thus, G.J. has options and is within his rights to ask for the relief sought in the Motion.[10]

Further, this reading of the TDP is not absurd. The date a plan is confirmed is the natural line of demarcation for holders of unknown claims.[11] A legal representative is appointed in a bankruptcy case to represent those who do not yet know they have a claim. Once the claimant becomes aware of his claim, he can—and should—assert his own rights.[12] Here, G.J. took steps to assert his rights—he filed his Proof of Claim. The question is whether I should grant G.J.'s request where he did not take the further step of filing the Motion until after Confirmation. That is an excusable neglect question.

---

[9] TDP Art. IV.A(i) ("Direct Abuse Claims can only be timely submitted as follows: (i) a Direct Abuse Claim for which a Proof of Claim was filed in the Chapter 11 Cases before the Bar Date or if determined timely by the Bankruptcy Court (each a "**Chapter 11 POC**") shall, without any further action by the Abuse Claimant, be deemed a timely submitted Abuse Proof of Claim to the Settlement Trust. . . . ").

[10] At argument, Trustee contended that the word "timely" must be inserted into Art. IV.C(4), so that it reads "have not filed a timely Chapter 11 POC." Aug. 7, 2024 Hr'g Tr. 24:11-25:10, ECF No. 12418. This contention results in a redundancy as the concept of timeliness is already built into the definition of Chapter 11 POC.

[11] Compare § 524(g)(4)(B), which requires the appointment of a future claims representative in order to enforce the supplemental injunction permitted in asbestos cases and provides that "such injunction shall be valid and enforceable with respect to a demand of such kind made, after such plan is confirmed." 11 U.S.C. § 524(g)(4)(B).

[12] The Plan was confirmed two and one-half years after the Petition Date. It was reasonable to assume that some victims would recover their memories during this time frame. Had such a claimant recovered his memories before the Bar Date and timely filed a proof of claim, his claim would technically be a Future Abuse Claim. If, however, he did not mention in his proof of claim that his memories had been repressed, his claim would be processed as a "current" claimant.

*B. G.J. has shown excusable neglect.*

In *Pioneer*, the Supreme Court articulated four non-exclusive factors to consider when evaluating claims of excusable neglect: (1) "the danger of prejudice to the debtor," (2) "the length of delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant," and (4) "whether the movant acted in good faith."[13] "The determination whether a party's neglect of a bar date is 'excusable' is essentially an equitable one, in which courts are to take into account all relevant circumstances surrounding a party's failure to file."[14] "All factors must be considered and balanced; no one factor trumps the others."[15] "The party seeking relief bears the burden of proving excusable neglect by a preponderance of the evidence."[16]

*(i) Prejudice to the Trustee*[17]

Prejudice "does not refer to an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on the facts in evidence."[18] Trustee advances two arguments that she is prejudiced, both systemic rather than particular to the Motion. First, Trustee asserts that she is prejudiced by the possibility that Future Abuse Claimants could improperly circumvent "the specific framework set up for potential Future Abuse Claims in the Plan and TPD."[19] If any such prejudice exists, it is caused by the Plan.

---

[13] *Pioneer*, 507 U.S. at 394-95.

[14] *Jones v. Chemetron Corp.*, 72 F.3d 341, 349 (3d Cir. 1995) (quoting *Pioneer*, 507 U.S. at 389).

[15] *In re Tribune Co.*, Case No. 08-13141 (KJC), 2013 WL 5966885, at *4 (Bankr. D. Del. Nov. 8, 2013) (quoting *Hefta v. Off'l Comm. Of Unsecured Creditors (In re American Classic Voyages Co.)*, 405 F.3d 127, 133 (3d Cir. 2005)).

[16] *In re Goody's Family Clothing, Inc.*, 443 B.R. 5, 15 (Bankr. D. Del. 2010) (citing *Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000)).

[17] The Trustee, as the relevant non-movant, replaces the debtor for the analysis. *See, e.g., Eady v. Tapfury LLC*, No. 22-2619, 2023 WL 3376541, at *1 (3d Cir. May 11, 2023).

[18] *Tribune*, 2013 WL 5966885, at *5 (citing *Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envt'l Energy, Inc.)*, 188 F.3d 116, 127 (3d Cir. 1999)). Relevant factors include whether the debtor was aware of the claim, whether paying the claim would require the return of plan distributions, whether the paying the claim would jeopardize debtor's reorganization, whether the claim would adversely impact the debtor, and whether "allowance of the claim would open the floodgates to other late claims." *Id.* (internal citations omitted).

[19] Resp. 5 n.3.

Boy Scouts of America
May 8, 2025
Page 6

Second, at oral argument Trustee's counsel contended that by considering a motion in this posture under Bankruptcy Rule 9006(b)(1) I risk permitting individuals whose Future Abuse Claim was denied by the Trust to "come back to this Court for a second bite at the apple."[20] Essentially, a slippery slope argument. G.J.'s counsel responded that such a situation would be "a fundamentally different analysis under the *Pioneer* factors."[21] I agree. The fact that a party tried and failed to obtain a disbursement from the Trust through other means can be evaluated in the context of the enumerated *Pioneer* factors and, to the extent it does not fit neatly into those factors, would be a "relevant circumstance surrounding the party's omission."[22] In any event, facially similar motions can be appropriately addressed as and when filed.

*(ii) Length of Delay*

Trustee has not presented any opposing argument regarding length of delay. Consistent with my prior decisions on similar motions I find that the delay, while substantial, has little, if any, impact given the facts of this case.[23]

*(iii) Reason for Delay*

The reason for delay here is simple: G.J. claims to have repressed traumatic memories. Upon recovering his memories he obtained counsel and filed his Proof of Claim with the claims agent. Trustee asserts that G.J. has not provided any evidence of his repressed memory, but that is not correct. G.J.'s statement in his Proof of Claim, made under penalty of perjury and attached to his Motion, is evidence.[24] Although it may be less evidence than the Trustee would prefer, it is the only evidence presented to me. In the absence of any contrary evidence and for this analysis only, the scales tip in favor of G.J.[25]

---

[20] Aug. 7, 2024 Hr'g Tr. 27:24-28:17.

[21] *Id.* at 28:18-22.

[22] *Pioneer*, 507 U.S. at 394-95 (cleaned up).

[23] *Tribune*, 2013 WL 5966885, at *6.

[24] Proof of Claim § P.

[25] Under the preponderance of the evidence standard, the asserted fact must be "more likely than not so. To say it differently: if you were to put the evidence favorable to [the party seeking relief] and the evidence favorable to [the party opposing relief] on opposite sides of the scales, [the party seeking relief] would have to make the scales tip somewhat to its side." Third Circuit Model Civil Jury Instructions 1.10 - Preponderance of the Evidence (Sept. 2024),

Trustee also cites to *In re Tronox* for the premise that a claimant's lack of actual knowledge that he had a claim against a debtor "is not enough, by itself, to show that a movant's delays were beyond the movant's reasonable control."[26] The premise may be correct, but *Tronox* is factually distinguishable and, as the *Tronox* court acknowledges, context matters. Unlike in *Tronox*, G.J. was not even aware that he had suffered the injury (i.e., abuse) giving rise to his claim before the Bar Date. The claimants in *Tronox* had, at least, been diagnosed with illnesses that were a direct result of their exposure to Tronox's products. They were aware of their injury, if not necessarily the source of that injury. Accordingly, I do not find *Tronox* persuasive in this instance.

---

https://www.ca3.uscourts.gov/sites/ca3/files/chapters%201_2_3_%20after%20fall%202024%20meeting.pdf (last accessed May 5, 2025).

[26] 626 B.R. 688, 731 (Bankr. S.D.N.Y. 2021). The passage in which the quoted language occurs is as follows:
> In this case, movants may have elected not to investigate the possible causes of their injuries, or may have elected not to investigate potential legal claims they might have, but those were decisions that were within movants' control. A movant's lack of actual knowledge of the bar date, or of the causes of the movant's injuries, or of the movant's potential claims, is a relevant factor, but it is not enough, by itself, to show that a movant's delays were beyond the movant's reasonable control. *See Chemetron*, 212 F.3d at 205; *Peabody Energy*, 579 B.R. at 219-220; *see also In re Gordian Med., Inc.*, 499 B.R. 793, 798 (Bankr. C.D. Cal. 2013) (IRS sought permission to file late claim, alleging it did not know that the debtor was a successor in interest to another company, finding that the delay "was in the reasonable control" of the IRS because with reasonable diligence it could have easily discovered the link between the two companies); *US Airways*, No. 04-13819, 2005 WL 3676186 at *8 (Bankr. E.D. Va. Nov. 21, 2005) ("the court is unable to find that failure to keep up with the news is a reasonable excuse for the lengthy delay in seeking to file a claim in this case.") I sympathize with movants who were surprised to learn that the bankruptcy claims process had produced such large recoveries. However, given the widespread availability of information, and the prejudice to other claimants and the long delays and costs that late-filed claims will pose, something more than a mere actual lack of knowledge is required to justify relief on grounds of excusable neglect. I conclude that under the governing case law and the circumstances of this case, given the very long delays and the prejudice to other claimants that would result from the allowance of large numbers of late-filed claims, that movants should be required to demonstrate not merely that they lacked an actual awareness of the process but also that it was not reasonably within their control to identify and to pursue their claims. In all but a very few cases the movants have failed to do so.

*(iv) Good Faith*

Trustee also asserts that good faith weighs against G.J. Trustee faults him for not providing information about "the extent of his repressed memory or any detail regarding when he became aware that he may have a claim."[27] Trustee also seeks "legal analysis as to whether the law of any applicable jurisdiction even recognizes the concept of repressed memory."[28] It is unclear to me how each of these relate to good faith. Rather, it appears that Trustee seeks to impose the requirements of the Future Abuse Claims process on G.J. through the Bankruptcy Rule 9006-1(b)(1) analysis. I do not consider the lack of detailed information about G.J.'s repressed memory or legal analysis about the viability of his claim under state law relevant to G.J.'s good faith.

On the evidence presented, G.J. is an abuse survivor who repressed his traumatic memories. Upon regaining his memories, he obtained counsel and submitted a claim against Boy Scouts before Confirmation. Nothing suggests G.J. acted in anything other than good faith.

**Conclusion**

Having considered and balanced all the above factors, I will grant the Motion. A separate order will issue.

Very truly yours,

Laurie Selber Silverstein

LSS/cmb

---

[27] Resp. 5 n.3.

[28] *Id.*