## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------ x
                                                       :
In re:                                                 :    Chapter 11
                                                       :
BOY SCOUTS OF AMERICA AND                              :    Case No. 20-10343 (LSS)
DELAWARE BSA, LLC,¹                                    :
                                                       :    (Jointly Administered)
                       Reorganized Debtors.            :
                                                       :    Hearing Date: July 16, 2025 at 10:00 a.m. (ET)
                                                       :    Obj. Deadline: June 17, 2025 at 4:00 p.m. (ET)
------------------------------------------------------ x
```

## MOTION OF THE CHURCH OF JESUS
## CHRIST OF LATTER-DAY SAINTS, A UTAH CORPORATION
## SOLE, TO ENFORCE THE CONFIRMATION ORDER AND PLAN

The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole ("***Movant***" or

"***TCJC***"),² files this motion (this "***Motion***") for entry of an order, substantially in the form attached

hereto as <u>Exhibit A</u> (the "***Proposed Order***"), enforcing the *Supplemental Findings of Fact and*

*Conclusions of Law and Order Confirming the Third Modified Fifth Amended Chapter 11 Plan of*

*Reorganization (With Technical Modifications) For Boy Scouts of America and Delaware BSA,*

*LLC* [Docket No. 10316] (the "***Confirmation Order***"),³ confirming the *Third Modified Fifth*

*Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*

---

¹ The Reorganized Debtors ("***Reorganized Debtors***" or "***BSA***") in these chapter 11 cases, together with the last four digits of each Reorganized Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

² TCJC is defined in the Plan as "The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole, ***including any affiliates or personnel***" (emphasis added).  This definition is being used in connection with this Motion and any actions related to the BSA's Chapter 11 Cases (as defined below) and is not an admission that service was proper for any of the named defendants in the ██████ Action (as defined below).

³ A copy of the Confirmation Order is attached hereto as <u>Exhibit B</u>.

[Docket No. 10296] (the "***Plan***")[4] and the injunction and releases contained therein.  In support of the Motion, TCJC hereby asserts the following:

## PRELIMINARY STATEMENT

1.      Movant has been named as a defendant in a lawsuit in ██████████████ (the "████████ ***Action***") that alleges ████████████████████████████████████████. The ████████ Action is exactly the type of proceeding that should be subject to the channeling injunction and releases set forth in the Plan and Confirmation Order.  The Plaintiff in the ████████ Action ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████ that are unquestionably subject to the channeling injunction contained in the Plan. ██████████████████████ ████████████████████████████████████████ Accordingly, Plaintiff's sole recourse for those claims is through the Settlement Trust.

2.      ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████ and should not now be permitted to pursue claims against TCJC—a Limited Protected Party—for ████████████ in violation of the Plan.  Any further prosecution of such claims against TCJC should be permanently enjoined through straightforward application of the injunctions contained in the Plan and Confirmation Order issued by this Court in consideration of TCJC's consensual release of valuable insurance rights as a means to enhance recoveries for all survivors, including the Plaintiff, through the Settlement Trust.

---

[4] Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the Plan, a copy of which is attached hereto as <u>Exhibit C</u>.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and

157(a), and the Confirmation Order and Plan entered in the Bankruptcy Case.  The Plan and

Confirmation Order expressly reserve this Court's *exclusive jurisdiction* over all matters arising

from and relating to the Chapter 11 Cases, including, without limitation, the injunction and releases

set forth in Article X of the Plan and the Confirmation Order:

> Notwithstanding the entry of this Order or the occurrence of the Effective
> Date, except as otherwise provided in the Plan or herein, the Court retains
> *exclusive jurisdiction* over all matters arising from and relating to the
> Chapter 11 Cases, the Plan including without limitation the injunctions and
> releases set forth in Article X of the Plan, the Confirmation Opinion, and
> this Order to the fullest extent permitted under the Bankruptcy Code.

*See* Confirmation Order, ¶ 74 (emphasis added).[5]  It is well-settled that bankruptcy courts have

authority to interpret and enforce their own confirmation orders.  *See, e.g.*, *In re E. W. Resort Dev.*

*V, L.P., L.L.L.P.*, No. 10-10452 (BLS), 2014 WL 4537500, at *9 (Bankr. D. Del. Sept. 12, 2014)

("It is self-evident that a court has the authority to enforce its own orders"); *In re Cont'l Airlines,*

*Inc.*, 236 B.R. 318, 326 (Bankr. D. Del. 1999), aff'd sub nom. *In re Cont'l Airlines, Inc.*, 279 F.3d

226 (3d Cir. 2002) ("In the bankruptcy context, courts have specifically, and consistently, held that

the bankruptcy court retains jurisdiction, inter alia, to enforce its confirmation order.").

4.     This action is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (I), (L),

and (O).  Venue is proper pursuant to 28 U.S.C. § 1409.  Pursuant to Rule 9013-1(f) of the Local

Rules of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"),

TCJC consents to the entry of a final judgment or order with respect to this motion if it is

---

[5]  *See also* Plan, Art. XI.C, in relevant part: "[t]he Bankruptcy Court shall retain jurisdiction over all matters arising
out of, or relating to, the Chapter 11 Cases and the Plan, including jurisdiction to [. . .] enforce and interpret the
terms and conditions of the Plan [and] enter in aid of implementation of the Plan such orders as are necessary,
including the implementation and enforcement of the Injunctions, Releases, and Discharges described herein,
including the Channeling Injunction."

3

determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

5.      The statutory predicates for the requested relief are sections 105, 524, and 1141 of title 11 of the United States Code (the "***Bankruptcy Code***").

## **BACKGROUND**

### I.    **Channeling Injunction and Releases for Participating Chartered Organizations**

6.      On February 18, 2020 (the "***Petition Date***"), the BSA commenced chapter 11 cases (the "***Chapter 11 Cases***") in the U.S. Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***").  On September 8, 2022, this Court entered the Confirmation Order confirming the Plan.  Following entry of the Confirmation Order, the U.S. District Court for the District of Delaware (the "***District Court***") heard various appeals and ultimately entered an order affirming the Confirmation Order [Case No. 22-01237, Docket No. 151].

7.      The Plan subsequently went effective on April 19, 2023 [Docket No. 11119].

8.      On May 13, 2025, the U.S. Court of Appeals for the Third Circuit affirmed the Confirmation Order in all respects relevant to this motion.  *In re Boy Scouts of Am.*, -- F.4th --, 2025 WL 1377408 (3d Cir. May 13, 2025).

9.       In the meantime, the Plan's execution has proceeded for over two years.  In its most recent monthly report, the Settlement Trust indicated that as of May 1, 2025, it has disbursed over $138 million to nearly 20,000 claimants.[6]

10.     Under the Plan and Confirmation Order, TCJC is a Participating Chartered Organization and is entitled to the protection of the Channeling Injunction as a Limited Protected

---

[6] *See Scouting Settlement Trust – Monthly Program Statistics (Program to Date as of May 1, 2025)* [Docket No. 12802].

Party.[7]    The definition of "Limited Protected Party" includes the Participating Chartered Organization and "all of such Persons' Representatives when acting in such representative capacity; provided, however, that no Perpetrator is or shall be a Limited Protected Party."[8]    A "Representative" includes "current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, consultants, representatives, and other professionals . . . ."[9]

11.    Among its protections for Limited Protected Parties, the Plan provides that (a) the sole recourse for any holder of a Post-1975 Chartered Organization Abuse Claim[10] against a Limited Protected Party is the Settlement Trust, and (b) the sole recourse for any holder of an Abuse Claim against a Limited Protected Party if such Abuse Claim is covered under any insurance policy issued by any Settling Insurance Company is the Settlement Trust.    Thus, under the Plan, any holder of such Abuse Claims is permanently enjoined from asserting those claims against a Limited Protected Party, including Participating Chartered Organizations like TCJC.

12.    "Abuse Claim" is broadly defined under the Plan to include any claim that is "attributable to, arises from, is based upon, relates to, or results from, directly, indirectly, or derivatively, alleged ***Scouting-related*** Abuse that occurred prior to the Petition Date" (emphasis added).[11]    The Plan further defines "Scouting-related" to mean "anything that is attributable to,

---

[7]    *See* Confirmation Order ¶ 20 ("In accordance with the Plan as modified by the Plan Addendum, TCJC is not a Contributing Chartered Organization, and shall be a Participating Chartered Organization and shall have all of the rights and obligations associates therewith.").

[8]    Plan, Art. I.A.176.

[9]    *Id.*, Art. I.A.249.

[10]    *See id.*, Art. I.A-215 (Post-1975 Chartered Organization Abuse Claims means "any Abuse Claim against a Participating Chartered Organization that relates to Abuse alleged to have first occurred on or after January 1, 1976.").

[11]    *See id.*, Art. I.A-18.

arises from, is based upon, results from, or relates to, *in whole or in part*, *directly, indirectly, or derivatively*, Scouting."[12]

13.     The term "Scouting" is defined under the Plan to include:

> any and all programs, activities and services *of any kind in any way*, directly or indirectly, associated with, arising from or related to the BSA or the BSA's, any Local Council's, any Related Non-Debtor Entity's, or any Chartered Organization's (including their personnel and their affiliates') *participation in, involvement in, or sponsorship of, any units or programs offered or previously offered* pursuant to the charter of the BSA, including activities such as formal or informal scout meetings, troop activities, jamborees, or *interactions of any kind between scouts and other scouts or scout leaders* in their capacities as such.[13]

The Channeling Injunction and Releases, therefore, permanently enjoin and release any and all claims alleging Abuse[14] against a Limited Protected Party that are attributable to, arise from, or relates to, *in whole or in part*, *directly, indirectly, or derivatively*, "Scouting" as that term is defined in the Plan, provided that the claim also relates to Abuse alleged to have first occurred on or after January 1, 1976 or is covered under any insurance policy issued by any Settling Insurance Company.

14.     The Plan contains a limited carve out for "Mixed Claims" that include "allegations of Abuse related to or arising from Scouting as well as Abuse that occurred prior to the Petition Date unrelated to or not arising from Scouting."[15]  Stated differently, only those claims that do not

---

[12]   *See id.*, Art. I.A-262 (emphasis added).

[13]   *See id.*, Art. I.A-261 (emphasis added).

[14]   *See id.*, Art. I.A-17 (Abuse "means sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, indecent assault or battery, rape, pedophilia, ephebophilia, sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction, or intimidation, any other sexual misconduct or injury, contacts or interactions of a sexual nature, including the use of photography, video, or digital media, or other physical abuse or bullying or harassment without regard to whether such physical abuse or bullying is of a sexual nature, between a child and an adult, between a child and another child, or between a non-consenting adult and another adult, in each instance without regard to whether such activity involved explicit force, whether such activity involved genital or other physical contact, and whether there is or was any associated physical, psychological, or emotional harm to the child or non-consenting adult.").

[15]   *See id.*, Art. I.A-184.

RLF1 33065070v.1

relate to or arise from "Scouting" are excluded from the Channeling Injunction and Releases contained in the Plan.

## II.    Plaintiff's Claims

### A.    Plaintiff's ██████████████████████████████████t

15.    On █████████████, Plaintiff filed a ████████████ proof of claim in the Chapter 11 Cases, █████████████ ("***Plaintiff Proof of Claim***").[16]  In his proof of claim, ████████



On ██████████, in ████████████████████████████████

16.    Plaintiff testified that ███████████████████████████







17.    On ███████████████████████████

████████████████████████████████ ████████████

███████████████████████████████████

███████████████████████████████ Plaintiff signed ██████████████ under

penalty of perjury and had his attorney sign and submit the ████████████████████

████. Before submitting it, his attorney attested that it was "written in the Claimant's own words,"

RLF1 33065070v.1

that the attorney had conducted "due diligence" and an investigation, that the attorney had "no reason to believe that the information provided by the Claimant is incorrect."[27]

18.    In connection with





RLF1 33065070v.1

21.    The Scouting Settlement Trust subsequently ███████████████████████████
████████████████████████████████████████

22.    Plaintiff's submissions ████████████████████████████████████████████████
████████████████████████████    The Trust Distribution Procedures[33] include "mitigating Scaling Factors," such as Non-Scouting Relationships,[34] Other Responsible Non-Protected Party,[35] and Other Settlements, Awards, Contributions, or Limitations,[36] that result in the material reduction of a Survivor's Proposed Allowed Claim Amount. ████████████████████

---

█ ████████████████████████████████████████████████████████████████████████████
████████████████████████

[33] The Trust Distribution Procedures are attached as Exhibit A to the Plan.

[34] *See* Trust Distribution Procedures, Art. VIII.D.(i)(b) ("Protected Party's responsibility for a perpetrator may be factually or legally attenuated or mitigated where the perpetrator also maintained a non-familial relationship with the Abuse Claimant through a separate affiliation, such as a school, or a religious organization, even if the perpetrator was an employee, agent or volunteer of a Protected Party, or the Abuse occurred in settings where a Protected Party did not have the ability or responsibility to exercise control. Factors to consider include how close the relationship was between the perpetrator and the victim outside of their Scouting-related relationship, whether Abuse occurred and the extent of such Abuse outside of their Scouting relationship, and applicable law related to apportionment of liability. In such event, the Settlement Trustee shall determine and apply a mitigating Scaling Factor that accounts for such other relationship and the related Abuse. By way of example, if the Settlement Trustee determines after evaluation of an Allowed Abuse Claim and application of all of the other Scaling Factors that the perpetrator, who was an employee, agent or volunteer of a Protected Party for BSA-related Scouting, also was the primary teacher (at a non-Protected Party entity or institution) of the Abuse Claimant outside of BSA-related Scouting, and if numerous incidents of Abuse occurred outside of Scouting before one incident of BSA-related Scouting Abuse occurred, the Settlement Trustee shall apply a mitigating Scaling Factor as a material reduction of the Proposed Allowed Claim Amount.").

[35] *See id.*, Art. VIII.D.(i)(c) ("The Abuse Claimant may have a cause of action under applicable law for a portion of his or her Direct Abuse Claim against a responsible entity, such as a Chartered Organization, that is not a Protected Party. By way of example, if the Settlement Trustee determines after evaluation of a Submitted Abuse Claim that (i) a Chartered Organization that is not a Protected Party is responsible under applicable law for a portion of the liability and (ii) a Protected Party(ies) are not also liable for the same portion of the liability (taking into account the relevant jurisdiction's prevailing law on apportionment of damages), the Settlement Trustee shall apply a final Scaling Factor to account for such non-Protected Party's portion of the liability.").

[36] *See id.*, Art. VIII.D.(ii) ("The Settlement Trustee may consider any further limitations on the Abuse Claimant's recovery in the tort system. The Settlement Trustee also should consider the amounts of any settlements or awards already received by the Abuse Claimant from other, non-Protected Party sources as well as agreed and reasonably likely to be received contributions from other, non-Protected Party sources that are related to the Abuse. By way of example, the Settlement Trustee should assign an appropriate Scaling Factor to Allowed Abuse Claims capped by charitable immunity under the laws of the jurisdiction where the Abuse occurred. Notwithstanding the foregoing, where an Abuse Claimant has obtained a recovery based on the independent liability of a third party for separate instances of Abuse that occurred without connection to Scouting activities, or on the Non-Scouting portion of a Mixed Claim, no mitigating factor or reduction in value will be applied based on that recovery.").

█████████████████████████████████████████████████████████████

████████████████████████████████████████████

**B.**    **The** ███████ **Action**

23.    On ███████████, Plaintiff filed a Complaint for damages against TCJC, including certain of its personnel,[37] in ████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████

24.    The Amended Complaint alleges ████████████████████████████

█████████████████████████████████ ██████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

█████████████████████████████████ ██████████████████████████

██████████████████████████████████████████████████████████████

████████████

25.    Plaintiff █████████████████████ In ███████████ Plaintiff ███████████

██████████████████████████████████████████████████████████████

██████████████████████████████████

█ ████████████████████████████████████████████████████

██████████████████████████████

███████████████████████████████████

_____

█ ████████████████████████████████████████████████████
█ ██████████████████████████████████████████████████████████████
█ █████████████████████████
█ ██████████
█ ███████████████████████
█ ████████████████████████

RLF1 33065070v.1



RLF1 33065070v.1



## RELIEF REQUESTED

27.     By this Motion, Movants seek entry of the Proposed Order, attached hereto as Exhibit A, enforcing the terms of the Plan and Confirmation Order, enjoining Plaintiff from ███████████████████████████████████, and directing Plaintiff to dismiss the ████████ Action as against TCJC immediately.

## BASIS FOR RELIEF

### I.    Plaintiff's Claims Are Channeled Because ████████████████

28.     As a Participating Chartered Organization, Abuse Claims against TCJC that are related to or arise from Scouting and meet the other criteria set forth in the Plan are permanently channeled and released pursuant to the Confirmation Order.[49] In particular, as a Limited Protected Party, Abuse Claims against TCJC are subject to the Channeling Injunction and Releases contained in Article X of the Plan, and the sole recourse of any holder of an Abuse Claim against a Limited Protected Party is against the Settlement Trust.[50] This protection is essential for TCJC as the fundamental basis for its agreement to release valuable insurance rights pursuant to the Plan.[51]

---



[49]  *See* Plan, Art. X.F.

[50]  *See id.*, Arts. X.F and X.J.2.

[51]  In order to qualify as a Participating Chartered Organization, a Chartered Organization must make a "Participating Chartered Organization Settlement Contribution," which includes, among other things, "(i) each of the Participating Chartered Organization's rights, titles, privileges, interests, claims, demands or entitlements under the Settling Insurance Companies' Abuse Insurance Policies and any Settling Insurer Policy Rights; (ii) any Claim held by the Participating Chartered Organization that is attributable to, arises from, is based upon, relates to, or results from, in whole or part, directly, indirectly, or derivatively (including through any insurance policy issued by the Settling Insurance Companies), alleged Abuse Claims that occurred prior to the Petition Date against the

Permitting the continued adjudication of Plaintiff's claims would deprive TCJC of the protection

of the Plan and Confirmation Order that TCJC obtained in exchange for consensually contributing

substantial insurance rights as a Participating Chartered Organization under the Plan in a manner

designed to maximize recoveries for holders of Abuse Claims.



29.

30.

Settlement Trust, the Debtors, Reorganized BSA, the Local Councils, any Contributing Chartered Organization or Settling Insurance Companies." Plan, Art. I.A.203.b.

RLF1 33065070v.1

## II.    The Channeling of Plaintiff's Claims Is Consistent with the Broad Insurance Coverage Under the BSA's Policies TCJC Contributed to the Settlement Trust

31.



---

55 *See* Confirmation Opinion at 110 ("Beginning in 1976, BSA also amended its policies to provide coverage to Chartered Organizations.").

■ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

All of these policies (together, the "**BSA Policies**") name Chartered Organizations as "insureds":

> The unqualified word, "insured" includes:
>
> (b)     Scout Professionals and employees; units; chartered organizations or certified organizations; and all volunteer workers participating in an official Scouting activity and in the scope of their duties as such, whether or not registered with the Boy Scouts of America . . . .[58]

33.     The BSA Policies do not contain any language limiting the scope of coverage for insured Chartered Organizations.  Under Texas law, which governs the BSA's policies issued in Texas, without such limiting language, the additional insured is covered as if the policy were issued directly to it.  *See, e.g.*, *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 665-66 (Tex. 2008).  TCJC is covered under those policies, then, by virtue of its status as a Chartered Organization alone.  There are no other requirements.



35.     The Settlement Trust is funded in large part by settlements paid by the companies that issued these policies to the BSA and coextensively insured TCJC. ▬▬▬▬▬▬▬▬

---

■ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
■ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

RLF1 33065070v.1

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████ Allowing Plaintiff

to recover for ████████████ in both forums would allow a double recovery for Plaintiff at the

expense of TCJC and conflict with Plaintiff's ████████████████████. The

Settlement Trust is funded by valuable insurance coverage to which TCJC was entitled before the

Plan was confirmed. Now, that coverage belongs to the Trust for the benefit of survivors, and

TCJC cannot pursue defense or indemnity under those policies for the ███████ Action. It is both

legally required in accordance with the Plan and equitable to have Plaintiff's claims channeled and

released based on Plaintiff's ████████████ and TCJC's contributions of its insurance

coverage for the benefit of the Settlement Trust and thereby all survivors.

## III.    Plaintiff Is Bound by ████████████████████████████

36. ████████████████████████████████████████

████████████████████ The District Court found that filing a proof of claim

against the BSA based on overlapping or joint conduct involving a Chartered Organization or other

entity demonstrates that the claim is Scouting-related.[60] In fact, the District Court was clear in its

opinion affirming the Confirmation Order that claims that allege an "interconnected relationship"

or "vertical integration" between TCJC and BSA suggest that the claims are inextricably related

---

[59] *See supra* ¶¶ 15–25.

[60] *See* District Court Opinion [Case No. 22-01237, Docket No. 150] at 49–50 (Rejecting "independent liability" and finding that "[c]laimants filed proofs of claims asserting BSA bears responsibility for Scouting-related Abuse and identifying both Local Councils and Chartered Organizations for the same liabilities attributable to BSA . . .").  A copy of the District Court Opinion is attached hereto as <u>Exhibit O</u>.

to Scouting.[61]  Furthermore, the District Court observed that a joint selection of leaders was another indication of a Scouting-related claim.[62]

37.     What is more, the Plaintiff's ███████████████████████████████████ ███████████████████████████████████████  *See In re SemCrude, L.P.*, 436 B.R. 317, 322 (Bankr. D. Del. 2010) (holding that courts in the Third Circuit treat a party's statements of fact as judicial admissions) (quoting *In re Pittsburgh Sports Assocs. Holding Co.*, 239 B.R. 75, 81 (Bankr. W.D. Pa. 1999)).  Included below is a grid (i) summarizing the elements that must be present for the Channeling Injunction to apply to a claim and (ii) ████████████████████ █████████████████████████████

| Injunction Element | ███████████████ |
|---|---|
| Claim against a Protected Party, a Limited Protected Party, or an Opt-Out Chartered Organization or any of their respective Representatives. | • ████████████████████████ |
| Related or attributable to Scouting-related Abuse. | • ████████████████████████ |
|  | • ████████████████████████ |
|  | • ████████████████████████ |
|  | • ████████████████████████ |

███████████████████████

| Injunction Element | | | |
|---|---|---|---|
| | ███████ | ██ | ███ |
| Abuse alleged to have first occurred prior to the Petition Date (i) on or after January 1, 1976 or (ii) is covered under any insurance policy issued by any Settling Insurance Company. | • ███████████ ███████ | | |
| No facts support any allegations of non-Scouting-related Abuse. | ████████████████ ████████████████ ████████████████ ████████████████ | | |

38.   ████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████nd the Court should apply those representations to find that the ████████

Action is squarely subject to the Channeling Injunction.[71]



---

[71]   *See In re SemCrude, L.P.*, 436 B.R. 317, 322 (Bankr. D. Del. 2010) (holding that courts in the Third Circuit treat facts as judicial admissions) (quoting *In re Pittsburgh Sports Assocs. Holding Co.*, 239 B.R. 75, 81 (Bankr. W.D. Pa. 1999)).

RLF1 33065070v.1

**CONCLUSION**

39.     TCJC requests that this Court enforce the Channeling Injunction and Releases and find that both are applicable to the ███████ Action.  It is well-settled that a court possesses the inherent authority to enforce its own orders, and in this case, the Court should exercise that authority to enforce the terms of the Plan, ensure TCJC receives the benefit of the Channeling Injunction that it was induced to rely upon in exchange for consensual release of valuable insurance rights, and to provide guidance to parties in other pending cases.  *In re E. W. Resort Dev. V, L.P., L.L.L.P.*, No. 10-10452 (BLS), 2014 WL 4537500, at \*9 (Bankr. D. Del. Sept. 12, 2014) (citing *In re Cont'l Airlines, Inc.*, 236 B.R. 328, 325-26 (Bankr. D. Del. 1999)).  Further, "where a motion seeks to prevent the prosecution of causes of action expressly prohibited by the confirmation order, it would be difficult to identify judicial acts that are any more critical to the orderly functioning of the bankruptcy process or more closely tethered to core bankruptcy jurisdiction." *In re Residential Capital, LLC*, 508 B.R. 838, 849 (Bankr. S.D.N.Y. 2014) (internal quotation marks and citations omitted).

**NOTICE**

40.     Notice of this Motion has been given to (a) counsel to the Reorganized Debtors, (b) counsel to the Settlement Trust, (c) the Office of the United States Trustee for the District of Delaware; (d) counsel to Plaintiff; and (e) those persons who have formally appeared in these cases and requested service pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Movant submits that no additional notice need be given.  No prior request for the relief requested herein has been made to this or any other court.

Dated: May 29, 2025
Wilmington, Delaware

/s/  Michael J. Merchant

**RICHARDS, LAYTON & FINGER, P.A.**

Michael J. Merchant (No. 3854)
One Rodney Square
920 North King Street
Wilmington, DE  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
E-mail:  merchant@rlf.com

- and -

**LATHAM & WATKINS LLP**

Jeffrey E. Bjork (admitted *pro hac vice*)
Deniz A. Irgi (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
E-mail:  jeff.bjork@lw.com
           deniz.irgi@lw.com

- and -

Adam J. Goldberg (admitted *pro hac vice*)
Robert J. Malionek (admitted *pro hac vice*)
Madeleine C. Parish (admitted *pro hac vice*)
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020-1401
Telephone: (212) 906-1200
E-mail: adam.goldberg@lw.com
          robert.malionek@lw.com
          madeleine.parish@lw.com

*Counsel to The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole*