**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| Debtors.[1] | (Jointly Administered) |

**RESPONSE OF THE HONORABLE BARBARA J. HOUSER (RET.), IN HER
CAPACITY AS TRUSTEE OF THE BSA SETTLEMENT TRUST, TO LETTERS FILED
BY G.F. [D.I. 13151/13152, 13197/13198, 13225/13226]**

The Honorable Barbara J. Houser (Ret.) (the "Trustee"), in her capacity as trustee of the

BSA Settlement Trust (the "Trust"), hereby submits this response to Claimant G.F.'s *Letter Dated*

*September 29, 2025 Regarding Settlement* [D.I. 13151/13152], *Letter Dated October 22, 2025*

*Regarding Settlement* [D.I. 13197/13198], and *Letter Dated November 3, 2025 Regarding*

*Settlement* [D.I. 13225/13226] (collectively, the "Letters") and respectfully states and alleges as

follows.

**FACTUAL BACKGROUND**

**I.     G.F.'s Interactions with the Trust and Status of Claim.**

Claimant G.F. ("G.F.") is an incarcerated *pro se* claimant.  G.F. originally filed his Claims

Questionnaire on September 27, 2023.  Certain sections of G.F.'s Claims Questionnaire were

incomplete, so the Trustee requested that G.F. submit information to complete the Claims

Questionnaire.  Due to the difficulties of communicating with incarcerated claimants and the

prison mail system, the Trust made repeated requests to G.F. for information.  In March 2024, G.F.

---

[1] The Reorganized Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Reorganized Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

submitted a letter to the Court alleging that the Trust was harassing and revictimizing him by repeatedly requesting information. *See* D.I. 11874/11875. In response, the Trust explained that the multiple rounds of communication were due to the challenges of corresponding by mail with Claimant, who had transferred correctional facilities during his Trust application process. *See* D.I. 12204. The Trust further explained that its communications with G.F. were consistent with the Trust Distribution Procedures ("TDP") and the manner in which the Trust communicates with all other claimants. *Id.* Following the July 10, 2024 Omnibus Hearing, the Trust submitted a letter dated July 22, 2024 to the Court confirming that it had received G.F.'s Claims Questionnaire and had conducted its initial review of G.F.'s Claims Questionnaire to determine "whether the Claims Questionnaire 'is substantially and substantively completed and signed under penalty of perjury.'" *See* D.I. 12322 at 1. The Trust also advised that all claims are reviewed on a first-in-first-out basis and would follow up with G.F. to the extent additional information is required. *Id.*

On February 5, 2025, the Trust issued an Additional Information Request form to G.F. to clarify discrepancies between G.F.'s Proof of Claim form and Claims Questionnaire regarding the number and identities of abusers involved, the types of alleged acts of abuse suffered, and G.F.'s relationship to the abuser. *See* Exhibit A. The Trust received G.F.'s response to the Additional Information Request form on February 27, 2025. Due to remaining unanswered discrepancies in G.F.'s claim file, the Trust determined that an interview with G.F. was required for the Trust to evaluate the allowability of G.F.'s claim.

As described in a prior submission regarding G.F., the Trust encountered significant challenges when trying to schedule a video interview with G.F. due to his incarcerated status and prison restrictions on inmates' abilities to appear on video calls. *See* D.I. 12988 at 3. Ultimately,

however, the Trust was able to conduct a video interview with G.F. on September 22, 2025.  *See* D.I. 13135.

Following the interview, the Trust expressed some concerns to G.F. regarding his ability to establish certain elements of his Abuse Claim.  In response, G.F. indicated there were three categories of documents that he believed would help support his claim: 1) certain medical records that were contemporaneous with the abuse; 2) police interview transcripts regarding the abuse; and 3) court transcripts regarding the abuse.

On October 8, 2025, the Trust sent G.F. an additional information request for the documents G.F. had described and allowed him 60 days to obtain the documents and submit them to the Trust.  G.F. has until December 7, 2025 to provide the requested documents.  If he is unable to provide any additional documents, the Trust will evaluate his claim on the record G.F. has previously established.

## II.    G.F.'s New Letters.

Pending before the Court are three additional letters G.F. has submitted.  In the first, G.F. acknowledges the Trust's September interview of him and then seeks an order from the Court requiring the Oklahoma Department of Corrections to "give his medical records" to the Trust. D.I. 13151/13152.

In the second letter, G.F. acknowledges receipt of the Trust's October 8, 2025 additional information request.  In his "Prayer for Relief," Claimant appears to seek an order requiring: a) the Trust to produce all records from all abuse victims submitted to the Trust;[2] b) some unspecified

---

[2] "ASK settlement trust for all records as these from all victims in these cases."  13197/13198 at 2.

attorney to produce letters G.F. sent him in connection with his request for additional records;[3] and, c) an Oklahoma court to provide certain requested records.[4]

In his third letter, titled a "Request for Forfeiture," G.F. seeks an order awarding him $2,700,000, which he asserts is the full value of the award to which he is entitled, and that a "full forfeiture be done against the boy scouts settlement trust and this court order a new group be given the job of overseeing all victims get their settlements."  D.I. 13225/13226.

## RESPONSE

The Trust interprets G.F.'s letters as seeking three discrete types of relief.  First, G.F. seeks an order requiring various parties to produce certain documents.  Second, G.F. seeks an order from this Court allowing his claim and determining his award amount.  Third, G.F. seeks a ruling removing all of the Trust officers and claims processing firm from their respective roles in managing the claims evaluation and determination process and replacing them with unspecified individuals and firms.

Each of these areas of relief are addressed below.

### I.    G.F.'s Requests That the Court Require Certain Entities to Produce Documents.

With one exception, the Trustee takes no position as to whether the Court should order certain entities to produce documents addressed in G.F.'s Motion.  The Trust does not control the Oklahoma entities or the unnamed lawyer addressed in G.F.'s Motion.

To the extent G.F. is requesting that the Trust be required to produce all documents related to all Claimants who have submitted claims with the Trust, the Court must deny that request.  G.F.

---

[3] "ASK Lawyer for my letters months ago I wrote about these records I believe I requested them to get or help me get them."  13197/13198 at 2.

[4] "Requests Haskell County-Stigler OK. At Haskell County Courthouse…for them old records and or my (2) two request for these records."  13197/13198 at 2-3.

provides no explanation for why he needs these documents or why he is entitled to them. Furthermore, as G.F. is well aware, documents submitted by Claimants are extremely sensitive and confidential.  There is no basis for G.F. to have access to other Claimant's confidential submissions.

**II.     G.F.'s Request That the Court Determine His Claim Should Be Denied.**

G.F.'s request that the Court enter an order allowing his Claim and awarding him the maximum value for a Tier 1 claim must be denied.

The Plan and TDP provide the Trustee with sole discretion and authority to evaluate Abuse Claims under the Claims Matrix process in the first instance. See Order Regarding P.H. [D.I. 12377] ("Additionally, under the terms of the Plan and Trust Distribution Procedures, the Trustee is tasked with evaluating Abuse Claims under the Claims Matrix in the first instance.").

Neither the Plan nor the TDP permits claimants to obtain a determination of the allowability of their Abuse Claim from this Court.  Accordingly, to the extent that Claimant is seeking a court order determining or valuing his Abuse Claim, the Court must deny his request.

**III.    G.F.'s Request That the Court Remove the Trust Officers and Claims Processing Firm Should Be Denied.**

Without argument or explanation, G.F. argues that the Court should remove the Trust officers and claims processing firm and replace them with some unspecified individuals and/or firms.  The Court should reject G.F.'s request, as he lacks standing to seek this relief and there are no valid grounds to remove any of them.

Section 5.2(c) of the Trust Agreement sets forth the circumstances under which the Trustee can be removed from her position:

> The Trustee may be removed by consent of (i) at least two/thirds (2/3) majority of the STAC and (ii) the FCR, in the event that the Trustee becomes unable to

discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence or for other good cause, provided the Trustee has received reasonable notice and an opportunity to be heard.  Other good cause shall mean fraud, self-dealing, intentional misrepresentation, willful misconduct, indictment for or conviction of a felony in each case whether or not connected to the Trust, any substantial failure to comply with the administration of the Trust or a consistent pattern of neglect and failure to perform or participate in performing the duties of the Trustee hereunder.  For the avoidance of doubt, any removal of the Trustee pursuant to this Section 5.2(c) shall require the approval of the Bankruptcy Court and shall take effect at such time as the Bankruptcy Court shall determine.

Trust Agreement, Section 5.2(c).[5]

Here, none of the requirements of Section 5.2(c) have been met.  First, the requisite super majority of the STAC and the FCR have not consented to the removal of the Trustee.  Second, there is no "good cause" to remove the Trustee under Section 5.2(c).  Indeed, G.F. does not identify any reasons why the Trustee should be removed.  The Trustee assumes that G.F. is upset at the speed at which his claim is being resolved.  While the Trustee understands G.F.'s frustration, the delays are largely due to G.F.'s incarcerated status and the challenges his facility has imposed on the Trust's communications with him.  This is not a reason under the Trust Agreement that would justify the Trustee's removal.

Turning to the Claims Administration overseeing the Matrix process, Ms. Roth was selected by the STAC and FCR following interviews with several candidates.  While the Trust Agreement does not address a basis upon which she may be removed, no grounds exist for her removal as well.

---

[5] As the Trust is a Delaware statutory trust, under 12 Del. C. § 3327, upon motion to the Delaware Court of Chancery, the Court of Chancery may remove a trustee for certain enumerated acts of misconduct, but that statute has no applicability here.

Finally, the claims processing firm retained by the Trust is PriceWaterhouseCoopers ("PWC"), a global professional services firm.  Similar to Ms. Roth, while the Trust Agreement does not address a basis upon which PWC may be removed, no grounds exist for its removal either (nor does Claimant specify any supposed grounds).

For these reasons, the Court should deny G.F.'s motion to remove the Trustee or any other party involved in the evaluation and determination of Abuse Claims..

## **<u>CONCLUSION</u>**

As noted above, the Trustee takes no position with respect to G.F.'s pursuit of an order requiring third parties to produce certain documents.  For the reasons set forth above, the Trustee respectfully requests that this Court deny the additional requested relief in G.F.'s Letters.

Dated:  December 2, 2025
       Wilmington, DE

**A.M. SACCULLO LEGAL, LLC**

*/s/Mary E. Augustine*
Mark T. Hurford (DE Bar No. 3299)
Mary E. Augustine (DE Bar No. 4477)
27 Crimson King Drive
Bear, DE  19701
Telephone:  (302) 836-8877
Facsimile:  (302) 836-8787
Email:   mark@saccullolegal.com
         meg@saccullolegal.com

- AND -

**GILBERT LLP**
Kami E. Quinn (admission *pro hac vice*)
Emily P. Grim (admission *pro hac vice*)
Michael B. Rush (admission *pro hac vice*)
Sarah A. Sraders (admission *pro hac vice*)
700 Pennsylvania Avenue, SE
Suite 400
Washington, DC  20003
Telephone:  (202) 772-2200
Facsimile:  (202) 772-3333
Email:   quinnk@gilbertlegal.com
        grime@gilbertlegal.com
        rushm@gilbertlegal.com
        sraderss@gilbertlegal.com

*Attorneys for the Honorable Barbara J. Houser
(Ret.), in her capacity as Trustee of the BSA
Settlement Trust*