# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

————————

No. 20-2171

————————

IN RE: W.R. GRACE & CO., et al.,
Reorganized Debtors

CONTINENTAL CASUALTY COMPANY; TRANSPORTATION INSURANCE
COMPANY,
Appellants

v.

JEREMY B. CARR; JULIE L. GIFFORD; GLORIA G. HARRIS; JOYCE LUNDVALL;
EDWARD D. STEFANATZ; FRED O. BACHE; JACK L. JENSEN; MELBA C.
WESTON; RUBY R. HAGNER; KERRY L. BEASLEY; WILLIAM G. CORBETT;
AMANDA K. FOSS; TAMMY SUE LANG; WILLIAM E. DESHAZER; JOHNNY G.
JELLESED; LORRAINE B. SICHTING; MARTIN H. KREBS; KENNETH B.
NEUBAUER; L. VINSON; LAURIE A. WALLER; SHIRLINE E. ALMEIDA;
IGNACIO C. ALMEIDA; THOMAS F. ERICKSON; RUSSELL S. BARNES;
SANDRA L. BARNES; PHYLLIS A. HAUGEN; DENNIS L. WELCH

————————

On Appeal from the United States Bankruptcy Court
for the District of Delaware
(No. 01-BK-01139)
Bankruptcy Judge: The Honorable Ashely M. Chan

————————

Argued:  March 17, 2021

————————

Before: KRAUSE, PHIPPS, and FUENTES, *Circuit Judges*.

————————

JUDGMENT

————————

This cause came to be heard on appeal from the United States Bankruptcy Court for the District of Delaware and was argued on March 17, 2021.

After consideration of all the contentions raised, it is ADJUDGED and ORDERED that the judgment of the Bankruptcy Court entered on September 23, 2019 is hereby VACATED and the case REMANDED. All of the above in accordance with the opinion of this Court. The parties to bear their own costs.

ATTEST:


s/ Patricia S. Dodszuweit
Clerk


Dated: September 15, 2021

OFFICE OF THE CLERK

**PATRICIA S. DODSZUWEIT**

**CLERK**



Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇꜱ Cᴏᴜʀᴛ ᴏғ Aᴘᴘᴇᴀʟꜱ

FOR THE THIRD CIRCUIT
21400 UNITED STATES COURTHOUSE
601 MARKET STREET
PHILADELPHIA, PA 19106-1790
Website: www.ca3.uscourts.gov

TELEPHONE

215-597-2995

September 15, 2021

Mark A. Behrens, Esq.
Shook Hardy & Bacon
1800 K Street, NW
Suite 1000
Washington, DC 20006

Brian T. Burgess, Esq.
Goodwin Procter
1900 N Street, N.W.
Washington, DC 20036

Michael Busenkell, Esq.
Gellert Scali Busenkell & Brown
1201 North Orange Street
Suite 300
Wilmington, DE 19801

Gerard J. Cedrone, Esq.
Goodwin Procter
100 Northern Avenue
Boston, MA 02210

Daniel C. Cohn, Esq.
Murtha Cullina
99 High Street
20th Floor
Boston, MA 02110

Taruna Garg, Esq.
Murtha Cullina
107 Elm Street
Suite 1101, Four Stamford Plaza
Stamford, CT 06902

Michael S. Giannotto, Esq.
Goodwin Procter

1900 N Street, N.W.
Washington, DC 20036

Robert M. Horkovich, Esq.
Anderson Kill
1251 Avenue of the Americas
42nd Floor
42-154W
New York, NY 10020

Edward J. Longosz II, Esq.
Eckert Seamans Cherin & Mellott
1717 Pennsylvania Avenue, N.W.
12th Floor
Washington, DC 20006

Allan M. McGarvey, Esq.
345 1st Avenue East
Kalispell, MT 59901

Evan T. Miller, Esq.
Bayard
600 North King Street
Suite 400
Wilmington, DE 19801

Jeffrey C. Wisler, Esq.
Connolly Gallagher
1201 North Market Street
20th Floor
Wilmington, DE 19801


RE: In re: WR Grace & Co, et al
Case Number: 20-2171
District Court Case Number: 01-bk-01139
District Court Case Number: 15-ap-50766
District Court Case Number: 1-19-cv-01871


<u>ENTRY OF JUDGMENT</u>

Today, **September 15, 2021** the Court entered its judgment in the above-captioned matter pursuant to Fed. R. App. P. 36.

If you wish to seek review of the Court's decision, you may file a petition for rehearing. The procedures for filing a petition for rehearing are set forth in Fed. R. App. P. 35 and 40, 3rd Cir. LAR 35 and 40, and summarized below.

Time for Filing:
14 days after entry of judgment.
45 days after entry of judgment in a civil case if the United States is a party.

Form Limits:
3900 words if produced by a computer, with a certificate of compliance pursuant to Fed. R. App. P. 32(g).
15 pages if hand or type written.

Attachments:
A copy of the panel's opinion and judgment only.
Certificate of service.
Certificate of compliance if petition is produced by a computer.
No other attachments are permitted without first obtaining leave from the Court.

Unless the petition specifies that the petition seeks only panel rehearing, the petition will be construed as requesting both panel and en banc rehearing. Pursuant to Fed. R. App. P. 35(b)(3), if separate petitions for panel rehearing and rehearing en banc are submitted, they will be treated as a single document and will be subject to the form limits as set forth in Fed. R. App. P. 35(b)(2). If only panel rehearing is sought, the Court's rules do not provide for the subsequent filing of a petition for rehearing en banc in the event that the petition seeking only panel rehearing is denied.

A party who is entitled to costs pursuant to Fed.R.App.P. 39 must file an itemized and verified bill of costs within 14 days from the entry of judgment. The bill of costs must be submitted on the proper form which is available on the court's website.

A mandate will be issued at the appropriate time in accordance with the Fed. R. App. P. 41.

Please consult the Rules of the Supreme Court of the United States regarding the timing and requirements for filing a petition for writ of certiorari.

Very truly yours,
Patricia S. Dodszuweit, Clerk


By: s/James/AMR
Case Manager
267-299-4958

Cc: John A. Cerino

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2171
_____

IN RE: W.R. GRACE & CO, et al.,
Reorganized Debtors

CONTINENTAL CASUALTY COMPANY;
TRANSPORTATION INSURANCE COMPANY,
Appellants

v.

JEREMY B. CARR; JULIE L. GIFFORD; GLORIA G.
HARRIS; JOYCE LUNDVALL; EDWARD D.
STEFANATZ; FRED O. BACHE; JACK L. JENSEN;
MELBA C. WESTON; RUBY R. HAGNER; KERRY L.
BEASLEY; WILLIAM G. CORBETT; AMANDA K. FOSS;
TAMMY SUE LANG; WILLIAM E. DESHAZER;
JOHNNY G. JELLESED; LORRAINE B. SICHTING;
MARTIN H. KREBS; KENNETH B. NEUBAUER; L.
VINSON; LAURIE A. WALLER; SHIRLINE E.
ALMEIDA; IGNACIO C. ALMEIDA; THOMAS F.
ERICKSON; RUSSELL S. BARNES; SANDRA L.
BARNES; PHYLLIS A. HAUGEN; DENNIS L. WELCH

_____

On Appeal from the United States Bankruptcy Court
for the District of Delaware
(No. 01-BK-01139)
Bankruptcy Judge: The Honorable Ashely M. Chan

_____

Argued:  March 17, 2021

_____

Before: KRAUSE, PHIPPS, and FUENTES, *Circuit Judges*.

(Filed: September 15, 2021)

Brian T. Burgess **[ARGUED]**
Michael S. Giannotto
Goodwin Procter LLP
1900 N Street, Northwest
Washington, DC 20036

Gerard Justin Cedrone
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210

Evan T. Miller
Bayard, PA
600 N. King Street
Suite 400
Wilmington, DE 19801

*Counsel for Appellants*

Daniel C. Cohn **[ARGUED]**
Murtha Cullina
99 High Street
20th Floor
Boston, MA 02110

Taruna Garg
Murtha Cullina
177 Broad Street
16th Floor
Stamford, CT 06901

Michael Busenkell
Gellert Scali Busenkell & Brown, LLC
1201 N. Orange Street
Suite 300
Wilmington, DE 19801

Allan M. McGarvey
McGarvey, Heberling, Sullivan & Lacey, PC
345 First Avenue East
Kalispell, MT 59901

   *Counsel for Appellees*

Mark A. Behrens
Shook, Hardy & Bacon LLP
1800 K Street NW
Suite 1000
Washington, D.C. 20006

   *Counsel for Amicus American Casualty Insurance Association*

Jeffrey C. Wisler
Connolly Gallagher LLP
1201 N. Market Street
20th Floor
Wilmington, DE 19801

Edward J. Longosz, II
Eckert Seamans Cherin & Mellott, LLC
1717 Pennsylvania Avenue NW
Suite 1200
Washington, DC 20006

     *Counsel for Amicus Maryland Casualty Company*

Robert M. Horkovich
Anderson Kill, PC
1251 Avenue of the Americas
New York, NY 10020

     *Counsel for Amicus WRG Asbestos Personal Injury Trust*

_____

OPINION OF THE COURT

_____

FUENTES, *Circuit Judge*.

     Because of the long latency period of asbestos disease, debtor companies in asbestos-related bankruptcies face a large

and uncertain pool of future claimants.[1]  This raises two related problems: first, debtor companies may not be able to emerge from bankruptcy without a true sense of their future liabilities; and second, if these companies cannot emerge from bankruptcy, future claimants may not have access to redress for asbestos-related harm.[2]  Section 524(g) of the Bankruptcy Code attempts to solve both of these problems.  It enables bankruptcy courts to establish a trust for future claimants as part of a debtor company's reorganization plan, and, through the resulting channeling injunction, diverts all claims against the debtor to the trust.[3]  This ensures both that future claimants are assured restitution, and that debtor companies can survive bankruptcy without the threat of future asbestos suits.[4]

Largely in order to encourage contributions to the trust, certain third parties may also benefit from a § 524(g)

---

[1] *See In re W.R. Grace & Co.*, 729 F.3d 311, 323 (3d Cir. 2013); H.R. Rep. No. 103-835, at 40 (1994) ("Asbestos-related disease has a long latency period—up to 30 years or more—and many of the exposures from the 1940's, when asbestos was in widespread use as an insulating material, [became] the personal injury lawsuits of the 1970's and 1980's.").

[2] *See* H.R. Rep. No. 103-835, at 40-41.

[3] *Id.*

[4] *See Grace*, 729 F.3d at 315; *In re Combustion Eng'g Inc.*, 391 F.3d 190, 234 (3d Cir. 2004); *In re Plant Insulation Co.*, 734 F.3d 900, 906 (9th Cir. 2013); *In re Quigley Co., Inc.*, 676 F.3d 45, 48 (2d Cir. 2012).

channeling injunction.[5]   However, these protections do not
extend to all claims brought against third parties.  In order to
conform with the statute, (1) these claims must be "directed
against a third party who is identifiable from the terms of such
injunction" and (2) the third party must be "alleged to be
directly or indirectly liable for the conduct of, claims against,
or demands on the debtor"; in addition, (3) "such alleged
liability" must arise "by reason of" one of four statutory
relationships, including, as is relevant here, "the third party's
provision of insurance to the debtor or a related party."[6]  These
requirements strike a balance between providing contributing
third parties freedom from "continued exposure to indirect
asbestos claims," and "ensur[ing] fairness" for future
claimants.[7]

        Only the second and third requirements, referred to as
the "derivative liability" and "statutory relationship"
requirements, respectively, are at issue in this case.  In *In re
W.R. Grace & Co.* ("*Grace I*"),[8] we instructed the Bankruptcy
Court on the appropriate analysis for determining whether
these requirements were met.  Because we conclude that the
Bankruptcy Court misapplied our guidance, we vacate the
decision below.  We hold that the claims at issue meet the

---

[5] *Quigley*, 676 F.3d at 59; *see Grace*, 729 F.3d at 325.

[6] 11 U.S.C. § 524(g)(4)(A)(ii).

[7] *In re W.R. Grace & Co.*, 900 F.3d 126, 130-31 (3d Cir. 2018)
[hereinafter *Grace I*].

[8] *Id.*

derivative liability requirement, but that we cannot, on the record before us, determine whether they meet the statutory relationship requirement.  Accordingly, we again remand to the Bankruptcy Court for the limited purpose of developing the record on this point so that it can determine in the first instance whether the required statutory relationship exists here.  This panel will retain jurisdiction over any future appeals.

## I.

This case stems from the confirmed Chapter 11 bankruptcy plan of W.R. Grace & Co. ("Grace").  Grace's troubles have been well-documented in the Federal Reporters,[9] so we will only recite the facts necessary for the resolution of this appeal.

Grace operated an asbestos mining and processing facility in Libby, Montana from 1963 until 1990.  Faced with thousands of asbestos-related suits, Grace filed for Chapter 11 bankruptcy.  When it emerged, its reorganization plan provided for a several-billion-dollar asbestos personal-injury trust to compensate existing and future claimants.  Pursuant to § 524(g)(4), all asbestos-related personal injury claims against Grace were to be enjoined and channelled through the trust (the "Grace Injunction").

---

[9] *See id.* at 131-32; *Grace*, 729 F.3d at 335-39; *In re W.R. Grace & Co.*, 532 F. App'x 264, 265-66 (3d Cir. 2013); *In re W.R. Grace & Co.*, 591 F.3d 164, 167-70 (3d Cir. 2009); *In re W.R. Grace & Co.*, 316 F. App'x 134, 135-36 (3d Cir. 2009); *In re W.R. Grace & Co.*, 115 F. App'x 565, 566-67 (3d Cir. 2004).

Appellants (collectively, "CNA") provided general liability, workers' compensation, employers' liability, and umbrella insurance policies to Grace at the Libby mine from 1973 to 1996.  As part of its insurance contracts with Grace, CNA was granted the right to inspect the Libby operation and to make loss-control recommendations.  After twenty-six years of litigation regarding the scope of CNA's coverage of Grace's asbestos liabilities, Grace and CNA entered into a settlement agreement, the terms of which ensured that CNA would be protected by Grace's channeling injunction.  In return, CNA agreed to contribute $84 million to the trust.  The terms of the settlement also provided that the trust would indemnify CNA for up to $13 million if it was held liable for certain asbestos-related claims, including tort claims premised on CNA's alleged failure to warn third parties about the mine's dangers.

Appellees (collectively, the "Montana Plaintiffs") are a group of individuals who worked at the Libby mine and now suffer from asbestos disease.  They sued several defendants in Montana state court, asserting various tort claims including negligence against CNA (the "Montana Claims").  The Montana Claims are based on allegations that CNA was aware of the asbestos exposure at the Libby operation and the dangers associated with it, and that it incurred a duty to protect and warn the Libby workers of these dangers when it undertook to provide them with "industrial hygiene services," as well as when it inspected the mine.[10]  By failing to fulfill this duty,

---

[10] JA 143-45.

CNA allegedly caused the Montana Plaintiffs' asbestos-related injuries.[11]

In response to the Montana suit, CNA filed an adversary complaint in Bankruptcy Court seeking a declaration that the Montana Plaintiffs' claims were barred by the Grace Injunction. The Montana Plaintiffs filed a motion to dismiss, and CNA filed for summary judgment. The Bankruptcy Court denied the Montana Plaintiffs' motion and granted CNA's.[12] The Montana Plaintiffs appealed, and we affirmed in part, vacated in part, and remanded. In *Grace I*, we concluded that the Grace Injunction, by its own terms, barred the Montana Claims. However, we declined to decide whether these claims met § 524(g)'s derivative liability and statutory relationship requirements, in part because we had not been fully briefed on what law to apply. Instead, we remanded the case back to the Bankruptcy Court with instructions on how to analyze these requirements. On remand, the Bankruptcy Court entered summary judgment in favor of the Montana Plaintiffs (the "Bankruptcy Decision"). CNA timely filed the instant appeal.

---

[11] CNA maintains that "[o]ver 1,500 similar claims have been asserted against CNA [and] . . . are being held in abeyance pending the outcome of this adversary action." CNA Br. at 10 n.1.

[12] *In re W.R. Grace & Co.*, No. 01-01139 (KG), 2016 WL 6068092, *1 (Bankr. D. Del. Oct. 17, 2016), *aff'd in part, vacated in part*, *Grace I*, 900 F.3d 126.

## II.

The Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. We have jurisdiction to review a direct appeal from the Bankruptcy Court pursuant to 28 U.S.C. § 158(d)(2).[13] We review the Bankruptcy Court's grant of summary judgment *de novo*.[14]

---

[13] Of note, in *Grace I*, we held that the Bankruptcy Court had jurisdiction to enforce the injunction in this case under the settlement agreement's indemnification provision. 900 F.3d at 138-39. Because that provision meant that the claims against CNA, if successful, would affect the assets of the bankruptcy estate, the Bankruptcy Court had "related to" jurisdiction. *Id.* at 139. "Related to" jurisdiction exists where "the outcome of [a] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* (internal quotation marks omitted) (citing *Combustion Eng'g*, 391 F.3d at 226). Specifically, "'[r]elated to' jurisdiction exists over actions against non-debtors involving contractual indemnity obligations between the debtor and non-debtor that automatically result in indemnification liability against the debtor." *Id.* (internal quotation marks and alterations omitted) (citing *Combustion Eng'g*, 391 F.3d at 226). Though the Bankruptcy Court opined that our holding was "inherently conflicting" and did not "make any sense," JA 863, 874, it properly recognized that it is bound by that holding, which we reaffirm today.

[14] *In re AE Liquidation, Inc.*, 866 F.3d 515, 522 (3d Cir. 2017).

## III.

On appeal, CNA maintains that the Montana Claims satisfy both the derivative liability and statutory relationship requirements. While we agree with the former, the record is currently insufficient to decide the latter. We will therefore remand to the Bankruptcy Court for the limited purposes of developing the record and making an initial determination as to whether the statutory relationship requirement is met.

### A. Derivative Liability

We begin our analysis where we left off in 2018. In *Grace I*, the Montana Plaintiffs argued that their claims were not derivative because they were based on CNA's own misconduct, and, therefore, did not seek to recover from CNA's insurance policies for Grace's liabilities.[15] CNA argued that the claims were derivative because Grace's asbestos was indisputably the "but-for" cause of the Montana Plaintiffs' injuries.[16] We rejected both proposed frameworks, finding "the former [to be] overly narrow and the latter [to be] overly broad."[17]

With respect to the Montana Plaintiffs' argument, we noted that while actions for insurance proceeds were surely "attempt[s] to hold the insurer 'directly liable' for claims

---

[15] *Grace I*, 900 F.3d at 135-36.

[16] *Id.* at 136.

[17] *Id.*

against its insured . . . nothing in the statute's text supports *indirect* insurer liability only where a claimant seeks to recover from insurance proceeds."[18]  Moreover, "that a third party is alleged to have engaged in some wrongdoing is not enough to render a claim against it independent if its liability depends on the debtor's liability."[19]

With respect to CNA's argument, the mere fact "that a debtor's product caused a plaintiff's injury is not enough to render a third party liable 'for the conduct of, claims against, or demands on the debtor' . . . [because] [s]uch a rule, . . . has the potential to include third-party liability that is wholly separate from a debtor's liability."[20]  While "[t]he involvement of the debtor's asbestos is relevant, . . . [it] is not dispositive."[21]  We elaborated on this point with the following example:

> [T]here may be cases in which the involvement of the debtor's product is only incidental (for example, if a piece of building material containing Grace asbestos in a CNA office fell and struck someone).  There . . . the presence of

---

[18] *Id.* (emphasis added).

[19] *Id.*

[20] *Id.* at 137.

[21] *Id.*

the debtor's asbestos would not render the third-party's liability derivative.[22]

As such, we concluded that neither approach comported with the requirements of § 524(g).

Instead, we held that, "[t]he proper inquiry is to review the law applicable to the claims being raised against the third party (and when necessary to interpret state law) to determine whether the third-party's liability is wholly separate from the debtor's liability or instead depends on it."[23]  We were clear that this approach "does not require the reviewing court to decide state-law claims on the merits.  It does, however, require it to ascertain what liability under the relevant law demands."[24]

_____

[22] *Id*.

[23] *Id.*

[24] *Id.*  Because the Bankruptcy Court had not determined whether, under the relevant state law, CNA's alleged duty to Plaintiffs would arise under common law or under the Restatement (Second) of Torts, we vacated this portion of the underlying decision and remanded for it to make this determination.  On remand, the Bankruptcy Court instead developed its own framework, relying in large part on a line of Second Circuit cases—known as the *Johns-Manville* cases—which we had distinguished in *Grace I.  See id.* at 136 n.4.  Applying this framework, the Bankruptcy Court declined to decide whether CNA's alleged duty to plaintiffs arose under Montana common law or the Restatement.  Instead, it found that under either, "CNA owes a duty to the plaintiffs which is entirely independent of CNA's contractual duties to Grace

Throughout this litigation, both parties have maintained that Montana law applies, and we agree. To show negligence in Montana, the Montana Plaintiffs must show that: (1) CNA owed them a legal duty; (2) CNA breached that duty; (3) the breach caused the Montana Plaintiffs harm; and (4) they suffered damages.[25] This case hinges exclusively on the first element—CNA's alleged legal duty to the Montana Plaintiffs.

Under Montana law, there is generally no duty "to protect others from risks of harm directly caused or created by third parties."[26] However, there are certain exceptions to this rule. One potential exception lies in § 324A of the Restatement (Second) of Torts, which deals with liability to third persons other than the intended beneficiary of the undertaking. Section 324A states that:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is

---

under the CNA policies." JA 7. Because the Montana Plaintiffs' right to sue CNA was not based on Grace's right to sue CNA, it concluded that the Montana Claims were not derivative. But in reaching this conclusion, the Bankruptcy Court relied on reasoning we had explicitly rejected as inconsistent with the statute. *See Grace I*, 900 F.3d at 136.

[25] *Krieg v. Massey*, 781 P.2d 277, 278-79 (Mont. 1989).

[26] *Maryland Cas. Co. v. Asbestos Claims Ct.*, 460 P.3d 882, 895 (Mont. 2020) (hereinafter *Hutt*).

subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.[27]

Stated otherwise:

[A] party owes a special duty of care to protect others from foreseeable harms caused or created by a third party beyond the first party's control if: (1) the first party, gratuitously or for consideration, affirmatively undertakes to render aid or services to the third party; (2) the first party reasonably should recognize that such aid or services are necessary under the circumstances for the protection of other persons or property; and (3) one or more of the following special circumstances exist:

(A) the failure of the first party to use reasonable care in the performance of the undertaking increases the preexisting risk of harm at issue;

---

[27] Restatement (Second) of Torts § 324A.

> (B) the first party affirmatively assumes the third party's responsibility to perform a preexisting legal duty of care owed by the third party to the other(s) at issue; or

> (C) harm occurs because the other(s), or the third party, relied on the first party to competently perform the subject undertaking.[28]

Until recently, it was unclear whether Montana law recognized this exception. However, after the Bankruptcy Decision but before briefing in this appeal, the Montana Supreme Court adopted § 324A in a similar case brought against another of Grace's insurers, MCC ("*Hutt*").[29] There, the Court held that MCC owed Grace workers an independent duty of care under § 324A based on its "knowledge of conditions and circumstances in and about Grace facilities and operations, and its own conduct, wholly independent of its independent contract duty to Grace, Grace's independent common law duty

---

[28] *Hutt*, 460 P.3d at 897 (2020) (citing Restatement (Second) of Torts § 324A). The claims in *Hutt* were not barred by the Grace Injunction because they were premised on insurance policies not included in Grace's reorganization plan. *See In re W.R. Grace & Co.*, No. 01-01139 (KG), 2016 WL 6137275, at *13-14 (Bankr. D. Del. Oct. 17, 2016). In contrast, in *Grace I*, we held that the claims at issue in this case were covered by the Injunction's terms. *See Grace I*, 900 F.3d at 134-35.

[29] *Hutt*, 460 P.3d at 897-98.

to its workers, or any act or omission by either in breach thereof."[30]

All parties agree that, as in *Hutt*, any alleged duty CNA owed to the Montana Plaintiffs arises under § 324A.  The relevant inquiry, then, is whether CNA's liability pursuant to § 324A is dependent on Grace's liability or is instead "wholly separate" from it.[31]  CNA argues that its liability is dependent on Grace's because § 324A only applies if the Montana Plaintiffs can show that CNA "render[ed] services" to Grace and "should have recognized those services as necessary for the protection of [the Montana Plaintiffs]."[32]  According to the Montana Plaintiffs, however, Grace's "sole role" under § 324A is to "provid[e] the context for CNA's liability to third persons," meaning that Grace's "role in creating the hazard CNA undertook to address is irrelevant."[33]  Because CNA may still be liable for "circumstances beyond its control," regardless of whether the harm was caused by Grace, the Montana Plaintiffs argue that the claims are not derivative because "[t]heir legal basis under Montana law does not *require* that Grace be liable in order for CNA to be liable."[34]

---

[30] *Id.* at 907.

[31] *Grace I*, 900 F.3d at 137.

[32] CNA Br. at 37 (internal quotation marks and alterations omitted) (quoting *Hutt*, 460 P.3d at 897).

[33] Montana Pls. Br. at 25-26.

[34] *Id.* at 32 (emphasis added).

CNA has the better argument. Here, as in *Hutt*, it is indisputable that the injuries alleged in the Montana Claims were caused by Grace's actions. For example, the Montana Plaintiffs allege that the Grace mine "generated substantial airborne dust containing asbestos," and that the Montana Plaintiffs were ultimately harmed by this asbestos.[35] They even concede that "Grace was clearly a cause, and arguably even a primary cause, of [their] injuries."[36] They argue, however, that "what establishes the heightened standard [under § 324A] is not that Grace caused the hazard, just 'circumstances beyond [CNA's] control.'"[37] While it may be true that, in a different case, "those circumstances happen to result from God, . . . another entity, or a butterfly flapping its wings in the Amazonian jungle," here, they result from Grace.[38] We decline to apply the law with a willful ignorance to the facts of this case.

It therefore cannot be that, as the Montana Plaintiffs argue, Grace's only role in a § 324A analysis is to "provid[e] the context for CNA's liability to third persons,"[39] or that, more generally, duties owed to third parties cannot satisfy the

---

[35] JA 119, 148.

[36] Montana Pls. Br. at 32.

[37] *Id.*

[38] *Id.*

[39] *Id.* at 26.

derivative liability requirement. For a duty to even exist under §324A, there must be some "foreseeable risks of harms caused or created by a third party beyond the first party's control."[40] And here, if Grace had not "caused or created" at least some foreseeable harm through its asbestos operations, the Montana Plaintiffs would not have the benefit of § 324A at all. CNA's liability, then, cannot be "wholly independent" of Grace's. To the contrary, the Montana Plaintiffs cannot make out a case under § 324A without directly implicating Grace's wrongdoing.[41]

Because they rely on § 324A, which in turn, only applies in this case because of Grace's risk-creating conduct, the Montana Claims depend on Grace's wrongdoing and therefore meet the derivative liability requirement.

---

[40] *Hutt*, 460 P.3d at 897.

[41] The Montana Plaintiffs' argument that our decision necessarily creates a "but-for" causation requirement—which we disavowed in *Grace I*—is unavailing. There are many situations where Grace's asbestos may cause injury that would not trigger a duty under § 324A. One need look no further than our decision in *Grace I*, in which we described an example of a piece of Grace's asbestos falling on someone on CNA's premises. While the asbestos would no doubt be the "but-for" cause of any claims against CNA in that scenario, CNA's duty would not arise under § 324A and would therefore likely be non-derivative. Here, however, it is not merely the case that the Montana Plaintiffs' injuries were caused by Grace's asbestos; rather, they were caused by Grace's *wrongdoing*.

## B. Statutory Relationship

We next turn to § 524(g)'s statutory relationship requirement.  In considering this requirement, *Grace I* directed the Bankruptcy Court to "examine the elements necessary to make the Montana Claims under the applicable law (here, state law), and determine whether CNA's provision of insurance to Grace is relevant legally to those elements."[42]  The Bankruptcy Court interpreted this guidance as imposing a legal elements test and found that this requirement was not satisfied because "none of the [tort] elements reference insurance at all."[43]  Instead, it reasoned that "liability is imposed on a third party, under certain circumstances, when the third party renders *services* to another," but these services need not be insurance-related.[44]  The Bankruptcy Court therefore concluded that "CNA's provision of insurance to Grace has no relevance to CNA's alleged liability to the Montana Plaintiffs under either the Restatement or the Common Law Standards."[45]

We disagree with this interpretation.  Here, it is clear from the complaint that CNA *did* provide some services to Grace, including, as is most relevant here, inspecting the Libby mine and providing industrial hygiene services to its workers.  That the legal elements of the relevant state law torts do not

---

[42] *Grace I*, 900 F.3d at 138.

[43] JA 57.

[44] *Id.*

[45] *Id.* at 57-58.

require these services to be insurance-related is irrelevant to the analysis at hand. Instead, the appropriate question is whether the Montana Plaintiffs have made a *prima facie* case that CNA's provision of insurance was legally relevant to its allegedly negligent undertaking of industrial hygiene and medical monitoring services. Or, put another way, whether they have shown that the services allegedly provided by CNA were incidental to its provision of insurance.

CNA urges that we answer this question in the affirmative. It directs us back to § 324A, under which "an undertaking to provide services to another is a threshold requirement to establish a legal duty to protect,"[46] and argues that, because its alleged undertakings arose solely due to its insurance relationship with Grace, its provision of insurance is therefore legally relevant for purposes of the statutory relationship inquiry. But that would be true only if Montana law took into consideration the basis (here, the provision of insurance) for the alleged undertaking. Instead, it requires only that CNA, "affirmatively undertakes to render aid or services to the third party" and that it "should recognize that such aid or services are necessary under the circumstances for the protection of other persons."[47] In other words, § 324A is unconcerned with *why* CNA undertook to render services; only that it did so. Thus, while the insurance relationship is a but-

---

[46] CNA Br. at 48.

[47] *Hutt*, 460 P.3d at 897.

for cause of CNA's undertaking, it is not necessarily legally relevant to it.[48]

CNA also draws our attention to a footnote in *Grace I* where we stated that a "'legal consequence' connection" exists where an insurer's "alleged duty . . . derives directly from its provision of insurance."[49]  In that footnote, we merely sought to explain that although CNA had styled its argument as calling for a "but-for" causation requirement, it had actually described and advocated for a "legal consequence" connection. We did not mean to suggest—as CNA argues—that the presence of an insurance relationship alone is sufficient to meet the statutory relationship requirement.  Accepting CNA's approach would collapse the derivative and statutory relationship inquiries.  This result is overbroad and would potentially encompass even claims like those at issue in *Hutt*, which alleged that the insurer went far above and beyond its insurance relationship and therefore assumed independent

---

[48] This is consistent with the Second Circuit's conclusion in *In re Quigley*, which we explicitly stated "comports" with our framework.  *Grace I*, 900 F.3d at 137 n.7.  There, the Court held that although Pfizer's ownership of the debtor was the reason why it had branded the debtor's products as its own, only the branding—not the reason for it—was legally relevant to establishing apparent-manufacturer liability under Restatement § 400.  *See* 676 F.3d at 62.

[49] *Grace I*, 900 F.3d at 138 n.8.

duties to the Grace workers.[50]  Again, we decline to adopt such a categorical approach to § 524(g).

But we are similarly unpersuaded by the Montana Plaintiffs' argument that these services cannot be incidental to the "provision of insurance" because "Montana law does not recognize a claim against an insurer based solely on inspections and risk-management services an insurer might customarily supply incident to its insurance policy."[51]  As we have previously noted, our analysis does not require us "to decide state-law claims on the merits,"[52] and so the potential viability of the Montana Claims is irrelevant.

The problem for this Court, however, is that we cannot, on the record before us, say whether the services allegedly provided by CNA were within the scope of its provision of insurance to Grace because we have little to no information about what providing that kind of insurance entailed in the context of this particular insurance policy as interpreted under Montana law.  In spite of CNA's urging, we have no evidence that "[i]nspections and loss-control recommendations are [generally] central to insurance underwriting and risk management."  Nor do we know that inspections and

---

[50] Because these particular claims are not before us, we express no opinion as to whether, under different circumstances, they would be barred by § 524(g)'s channeling injunction.  We only leave open the possibility that this might be the case.

[51] Montana Pls. Br. at 48-49.

[52] *Grace I*, 900 F.3d at 137.

industrial-hygiene services of the type alleged "were standard insurance-related services."[53]  More importantly, even if we did, the record here reflects nothing about whether such services were within the scope of the provision of insurance *in this case*,[54] and the policy itself indicates only that "[CNA] . . . shall . . . be permitted but not obligated to inspect at any reasonable time the workplaces, operations, machinery and equipment covered by this policy."[55]  As the Montana Plaintiffs rightly point out, "[t]he statute refers to 'provision of insurance,' not 'provision of whatever services insurers customarily provide.'"[56]

We therefore remand to the Bankruptcy Court for the limited purpose of making factual findings as to what services were included in CNA's provision of insurance to Grace, and whether the Montana Plaintiffs have made a *prima facie* showing under Montana law that CNA provided services beyond these.  If that is the case, then the Montana Claims do not meet the statutory relationship requirement; if not,

---

[53] Montana Pls. Br. at 51.

[54] We do not mean to suggest that industry practice can never be dispositive in this context, only that, based on the allegations before us, we do not know the role that it played here.  The role of this evidence will necessarily differ based on the individual facts of each case.

[55] 900 F.3d at 131 (citation omitted).

[56] Montana Pls. Br. at 48.

however, then the claims at issue meet all of the requirements of § 524(g) and are barred by the channeling injunction.

## IV.

For the foregoing reasons, we vacate the decision below and remand to the Bankruptcy Court for further proceedings in accordance with this Opinion. This panel will retain jurisdiction over any future appeals.